Karen Michele Rozier
7957 Dahlia Circle
Buena Park, CA 90620
(410) 458-3773



# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re RESIDENTIAL CAPITAL, LLC et. al, <br><br> Debtors. | ) Judge Hon. Martin Glenn, Presiding <br> ) <br> ) Case No. 12-12020 (MG) <br> ) <br> ) Chapter 11 <br> ) <br> ) **Re Claim No. 4738, KAREN MICHELE** <br> ) **ROZIER'S REQUEST FOR PAYMENT** <br> ) **FROM GMAC MORTGAGE, LLC** <br> ) |

**TO THE HONORABLE MARTIN GLENN, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL INTERESTED PARTIES:**

In accordance with Appendix 3 Notice of the Deadline and Procedures for Filing Certain Administrative Claims (page 89 of 92) on the Notice of Filing of Revised Proposed Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors filed on12/10/2013, KAREN MICHELE ROZIER hereby requests payment of her unopposed claim. Claimant made her initial demand as per the original claims deadline schedule and was requested to provide a final demand with justification in the June 2012 timeframe. Claimant provided her answer entitled LEGAL AND FACTUAL REASONS IN SUPPORT OF CLAIMANTS PROOF OF CLAIM AND DEMAND, a true and correct

copy of the filing without exhibits is attached hereto as EXHIBIT (1). The exhibits are available upon request. Claimant has spoken with Mr. Brian Powers of Silverman Acampo and Mr. Joshua Wilson of KCC during December 2013 and assured that her claim remains unopposed. Claimant has also reviewed fifty-one omnibus objections and has not seen her claim listed. Demand is made for the amounts as follows:

1) Lost salary as Chief Engineer, Air-to-Ground Missiles, U.S. Navy plus retirement for the reasons delineated in my multiple legal action against you commencing October 28, 2008: $8,952,530;

2) Money wrongfully collected pretending I signed a note on December 23, 2005 under the name Karen Michelle Rozier knowing that I signed my note on June 1, 2006 under my real name, Karen Michele Rozier: $49,850.55 plus interest (est $66,600);

3) Intentional Infliction of Emotional Harm for the 6-6-6 closing date: $666,000;

4) RESPA violations: $7500;

5) Additional student loan interest: $111,000 (payable to Sallie Mae)

6) Second Deed of Trust pay down $142,000 plus interest plus full reconveyance (payable to whoever claims it has a junior interest in 7957 Dahlia Circle Buena Park, CA 90620;

7) Unclean Hands: 9* ($8,952,530+$66,600 +$666,000+$7500) = $87,233,670

8) Expenses = 1000 (estimated)

Total demand made on July 21, 2013 = $96,927,309.00

**30.1% = $29,175,120.01 TOTAL DEMAND**

Dated: December 16, 2013

Executed in Buena Park, California

*Karen Michele Rozier*
Karen Michele Rozier



# Direct Deposit Set-Up Form

## CUSTOMER INFORMATION

**Customer**
KAREN M ROZIER

**Address**
7957 DAHLIA CIR

**City**          **State**          **Zip**
BUENA PARK        CA                 90620-1901

**Social Security**


---

## ACCOUNT INFORMATION

**Chase Routing Number**
322271627

**Account Number**
3060085718

**Deposit To:**
    Checking
   X Savings



JPMorgan Chase Bank, N.A. Member FDIC
© 2008 JPMorgan Chase & Co.

**CHASE**

Karen M. Rozier
7957 Dahlia Circle
Buena Park, CA 90620
(714) 512-5740

| | |
|---|---|
| Karen M. Rozier, ) | |
| In Pro Per    Claimant, ) | Claim No. 4738 |
| vs. ) | [Submitted concurrently with claim 5632] |
| GMAC Mortgage, LLC ) | |
|         Debtor ) | LEGAL AND FACTUAL REASONS IN SUPPORT |
| ) | OF CLAIMANTS PROOF OF CLAIM AND |
| ) | DEMAND |

Claimant, Karen M. Rozier, on personal information and belief states the following:

## BACKGROUND

Claimant Karen M. Rozier accuses Debtor GMAC Mortgage, LLC (GMACM) of violating California and Federal law from June 2006, and claims that these violations are on-going. This dispute is centered around a property commonly described at 7957 Dahlia Circle Buena Park, located in the County of Orange, California with zip code 90620, herein referred to as "subject property". Claimant is still in possession of her real property.

The following related cases are material to this action and were provided with Claimant's initial Proof of Claim:

a. Case No 30-2008 00217056, Rozier vs. GMAC Mortgage and Mortgage Electronic Registration System, Inc. filed in Orange County Superior Court, California on October 28, 2008;

b. Case SA CV 8:09-00961-DOC-RNB, California case removed from California Court by GMAC Mortgage to United States District Court Southern District of California;

c. Independent Foreclosure Review Request;

d. Consumer Financial Protection Bureau Case number 120918-000231 filed on September 18, 2012;

e. Case No 30-21012 00601301, Rozier vs Bank of America, Residential Funding Company and US Bank, filed in Orange County Superior Court, California on September 27, 2012. A true and correct copy of the Second Amended and Third Amended complaints is attached hereto as **Exhibits (1) and (2)** respectively. Although the Third Amended Complaint, (herein referred to as "TAC") is the current version, it was amended to exclude GMAC Mortgage and ETS specific crimes since those entities invoked Bankruptcy protection by and through their attorneys, Severson and Werson, APC.

1. The dispute centers on a rescinded note [TAC Exhibit 2] and Debtor GMACM's enforcement, collection, and subsequent transfer of that rescinded note by and through its wholly owned subsidiary, co-Debtor Executive Trustee Services, LLC dba ETS Services, LLC (or "ETS").[1] Other key facts include a declared default [TAC Exhibit 3] that was later rescinded [TAC Exhibits 51 and 5], and a cancelled sale. [**Exhibit 3 Notice of Temporarily Halting of Foreclosure Sale**] By its actions Debtors ruined Claimant's reputation and ability to renew a military security clearance [TAC Exhibit 52], a requirement for her to perform her job as Chief Engineer, Air-to-Ground Missiles, aka a Navy rocket scientist. Debtors' harm is irreversible and substantial. As Claimant's high-paying job [TAC Exhibit 12] (with excellent benefits and tremendous growth potential, as well as the honor of being a Black female rocket scientist in charge of all the other rocket scientists!) was rescinded and considering Claimant's young age and health, Debtor has deprive Claimant of 30-years of income plus the retirement that income would have generated, estimated at **$8,952,530**. That number

---

[1] Debtors and their co-conspirators (Debtor GMACM's secured creditors U.S. Bank NA and Bank of America NA) have repeatedly insulted Claimant claiming that she is screaming "Show me the note" when in fact she has been quite clear that this is a case of *"That's not my note. You have a rescinded note and unless and until you produce the Deed of Trust that is secured by the June 1, 2006 note, you [GMACM/Ocwen/MERS/USB/BANA] are illegally attempting to steal my property."*

was calculated as follows: Salary with value of benefits (SVB) assuming a reasonable 5% income in growth for 30-years PLUS Retirement at 50% SVB with 2% growth for 20-years.

2. Additionally, GMACM owes Claimant for the monies it improperly collected, plus interest and treble damages for being such jerks. That amount is **$49,850.55**, plus interest.

3. Also, GMACM owes Claimant for intentional infliction of emotional duress caused by their repeated negligent acts. Claimant demands **$666,000** in damages. GMACM had evidence that the true note closed on **6-6-6** [TAC Exhibits 34, 35] but they hid that fact and attempted to foreclose on Claimant's real property using the rescinded December 23, 2005 note and voidable DOT.

4. The violations of law hereinafter described have been and are now being committed within and from the County of Orange and elsewhere within the State of California:

   a. Fraud

   b. Conspiracy to Commit Fraud

   c. Predatory Lending/ Bad Faith

   d. Violations of Fair Credit and Reporting Act (FCRA)

   e. Intentional Infliction of Emotional Duress

   f. Wrongful Foreclosure

   g. Unclean Hands

**CLAIMANT**

5. Claimant Karen M. Rozier, an individual and American citizen by birth, is and at all times herein mentioned an individual residing in the City of Buena Park, County of Orange, California. Claimant formerly was employed by General Motors Hughes Electronics. Additionally, Claimant's mother was one of the first female production assembly line

workers at the General Motors Corporation Baltimore plant and Claimant's brother Kevin T. Chapman worked his entire 25-year career with GMAC Financial or one of its spinoffs.

**DEBTOR**

6. Debtor GMAC Mortgage, LLC is a Delaware limited liability company. GMAC Mortgage, LLC was active in the state of California under number 200613210204, except when they were suspended in the state. Debtor had a Pennsylvania address of 1100 Virginia Drive Fort Washington, PA 19034, with its agent of service as CSC-Lawyers Incorporating Service (C15292199). During Claimant's litigation against them, their attorney of record for service was Severson and Werson, A Professional Law Corporation, herein referred to as "SWA".

7. SWA presently represents Debtor Residential Funding Company and Claimant's active litigation against Bank of America, NA and U.S. Bank, NA, but SWA has invoked bankruptcy protection even though the offenses committed took place after the stay was lifted.

8. Debtor is the business entity that directed co-Debtor ETS in a non-judicial foreclosure proceeding to proceed under a power of sale to foreclose on Claimant's real property (the "subject property") using a rescinded note, claiming that it secured against the Claimant's property, all while hiding the true nature of their relationship.

9. Although many GMACM employees were involved in the fraud and attempted cover-up as explained though-out this claim, Claimant was misled or deliberately lied to by the following GM employees:

   a. Latina Dawn, beginning on December 4, 2007; [see Case 30-2008 00217056 Rozier v. GMAC Mortgage, LLC and Mortgage Electronic Registration Systems, Complaint for Declaratory Relief, General Allegations]

   b. Anna Schneider on 28 October, 10-11 November 2008;

   c. Attorney David Hagens [**Exhibit 4** Letter dated January 27, 2011];

## GENERAL ALLEGATIONS

10. Between December 4, 2007 and February 26, 2008 Claimant contacted Debtor GMAC Mortgage, LLC several times by telephone and twice by mail, attempting to work in earnest with the Loan Loss Mitigator, Ms. Latina Dawn. After informing Claimant that she would not work with her unless she was 90-days late, Ms. Dawn failed to return any of Claimant's phone calls. A true and correct copy of Claimant's letter to GMAC documenting the conversation is attached hereto as **Exhibit 5**.[2]

11. On or about February 26, 2008 Claimant sent a payment to GMAC Mortgage LLC, which was returned by GMAC Mortgage in early March. Debtor declared default and returned Claimant's monies after instructing her to stop making. Debtors' account show that the payment was first credited on February 28, 2008 and then debited the next month.

12. On March 4, 2008 Debtors recorded a Notice of Default and Election to Sell under Deed of Trust (NOD) as instrument No. 2008-98586. [TAC Exhibit 3] This notice referred only to the voidable Deed of Trust executed on December 23, 2005.

13. Between March 25, 2008 and June 22, 2008, Claimant contacted by telephone, facsimile and mail Debtor GMAC Mortgage, LLC, and its agent Executive Trustee Services, LLC several times attempting to negotiate in good faith and provided notice of defects in the NOD.

14. Debtor offered Claimant a forbearance. Claimant had sufficient funds in her checking account to bring the account current. Debtor tried to bully and intimidate Claimant into admitting default instead of negotiating in good faith,. Claimant refused their offer. A true and correct copy of that refusal is attached hereto as **Exhibit 6**.

---

[2] It is clear that Claimant is not jumping on the "but they told me to default" band wagon as Claimant documented their conversation in February 2008, long before the bandwagon had wheels.

15. The Notice of Trustee's Sale was recorded as instrument 2008000272617 at 11:00am on 06/06/08 in the Official Records, Orange County with a date of sale for 6/27/2008. A true and correct copy which is attached hereto as **Exhibit 7**. The NOD in support of the sale was rescinded on December 22, 2009. [TAC Exhibit 5]

16. On or about October 25, 2008, it became apparent to Claimant that Debtor GMAC Mortgage, LLC was attempting to foreclosure in violation of California Civil Code as described in Claimant's Second Amended Complaint.

17. Claimant notified co-Debtor ETS of the fraud and requested that the Trustee, in her official capacity, file for a judicial proceeding to ascertain the true holder of the note. At the time, Claimant wrongly believed that ETS was an independent third-party Trustee. Claimant's allegations against ETS are being submitted concurrently with this claim and should be viewed as a part of this claim, though the damages against ETS are for their part in the scheme to defraud.

18. Debtors failed to respond Claimant filed suit on October 28, 2008.

19. Defendant GMACM moved the case to Federal Court consistent with the strategy taught by their attorney, Severson and Werson, APC (or SWA). SWA created a tutorial to assist other lawyers to help its client defraud the American public and courts by skillfully preventing judges from being able to evaluate cases on the merits, a true and correct copy of their presentation which is attached hereto as **Exhibit 8**.

## SPECIFIC ALLEGATIONS
### [Active/ Fraudulent Concealment and Fraud]

20. In a contracts' setting, active concealment refers to the situation where a party conceal any information which they have a duty to disclose. Active concealment may occur if the party goes out of their way to hide information or obstruct the other party's access to it.

21. The Debtors GMACM and ETS misrepresented their relationship intending to either force Claimant to pay large sums of money to Debtor GMACM to which they were not entitled under the law, or for Claimant to her abandon property to foreclosure sale.

22. Debtor, in committing the acts alleged in this and other cases was engaging in a pattern of unlawful activity. In pursuing non-judicial foreclosure, Debtor GMAC Mortgage represented that it had the right to payment under a valid note, payment of which was secured by a valid security instrument. The true facts are that the Debtor was using a void note and voidable Deed of Trust. GMACM knew that the loan originator WMC Mortgage engaged in illegal and predatory behavior, as did its parent company GE Money when it shut WMC down. As the Debtor GMAC Mortgage, LLC was not enforcing a valid note as described by Commercial Code §§ 3301 and 3009, they were proceeding to foreclose non-judicially without right under the law. GMACM also knew that they had wrongfully declared default after unsuccessfully attempting to induce Claimant into default.

23. GMACM did not compensate Claimant for the clear harm they caused but instead profited from their wrong-doing by selling or transferring the void note and voidable DOT to Ocwen Loan Servicing, Inc., who immediately began attempting to collect on the rescinded note and to foreclose using the voidable DOT. As per Ragland vs. US Bank [California, September 2012] Debtors are not allowed to profit from their own bad acts.

24. Debtor(s) ETS and GMACM concealed their relationship, had knowledge that the most likely outcome of their cover-up was that the general public would wrongly conclude that ETS was an independent Trustee, that Claimant could not easily obtain that information (especially in light of their failure to register in the state of California), that ETS and GMACM suppressed and concealed their relationship with the intention and that Claimant, general public, and Orange County Clerk Recorder be misled as to the true identity of ETS.

25. Claimant is entitled to monetary damages.

**[Fraud and Conspiracy to Commit Fraud]**

26. All Debtors engaged in behavior in violation of U.S.C. Title 18, Part I, Chapter 19 § 371. Conspiracy to commit offense or to defraud United States and California Penal Code § 182, paragraph (4) against Claimant.

27. In all of the wrongful acts described herein, the Debtors utilized the United States mail in furtherance of their pattern of conduct to unlawfully collect on negotiable instruments when they were not entitled under the law to do so, and assuming *arguendo* that they do have the right to proceed to foreclose under the note, to profit from those actions in amounts greater than their rights under the note to do so, a violation of U.S.C. Title 18, Part I, Chapter 63 § 1341. Frauds and Swindles.

28. By and through their acts, Debtor made Claimant afraid to get her mail.

29. Under California Civil Code 2934 Debtors GMAC Mortgage, LLC had no interest in property until such time Debtors recorded a true beneficial interest in the County Recorder's Office. Debtor initiated non-judicial foreclosing proceedings using a void note, voidable DOT, and fraudulent/ fake/ robo-signed documents that were wrongfully recorded by their subsidiary and co-Debtor, ETS. [See Claim 5632 paragraphs 5, 8-10, 13, 17-20, and 42.]

30. Debtor violated US Code Title 18 Part I: CHAPTER 95 § 1951. Interference with commerce by threats or violence: Debtor used the threats of foreclosure and homelessness against Claimant to coerce her into waiving her legal rights and remedies. According the Federal Bureau Investigation's Financial Crimes Report to the Public in 2008, *"Today's common equity skimming schemes involve the use of corporate shell companies, corporate identity theft, and the use or threat of bankruptcy/foreclosure to dupe homeowners and investors."*

31. Claimant wrote Debtor on March 27, 2009 [**Exhibit 9.** Letter dated 27 March 2009 and again on January 3, 2011 with her demands. [**Exhibit 10.** Letter dated 3 January 2011]

Debtor's in-house attorney Mr. David Hagens rejected her demands claiming there her arguments lacked merit. [**Exhibit 4**] Mr. Hagens was in possession of Claimant's loan file and claimed that he reviewed said file. He was therefore aware of the forgery [TAC Exhibit 36], predatory lending [TAC Exhibit 43 ], and new loan [TAC Exhibit 34, 35 ] but hid those facts in the course of his duties. Claimant immediately responded to GMAC Mortgage, on February 4, 2011 [**Exhibit 11.** Letter to GMAC Mortgage, LLC ATTN David Hagens dated February 4, 2011 and **Exhibit 12**. Letter to GMAC Mortgage, LLC Customer Care dated February 4, 2011] and shortly thereafter Debtor assigned/ transferred/ sold beneficial interest in the voidable DOT from MERS to BANA.

32. Claimant was and remains entitled to punitive damages.

### [Predatory Lending Bad Faith]

33. The underlying transaction and the June 1, 2006 met the definition of a mortgage under TILA § 103. Paragraph (aa)(1).

34. Debtor GMAC Mortgage, LLC violated of § 226.31 General rules, paragraph (c)(i) Change in Terms and Section § 226.35 Prohibited acts or practices in connection with higher-priced mortgage loans, paragraph (b)(3) Escrows.

35. In September 2008 attorneys for Debtor offered Claimant a loan modification at usurious terms while the US tax-payers were bailing them out and the banks were borrowing money at negative interest rates. Claimant rejected their offer.

36. The next month on October 16, 2008, Debtor[3] offered Claimant another Foreclosure Repayment Agreement again referring to the rescinded and thus void note, the subsequently rescinded default, and the promise that even if Claimant made 100% of the payments on time, they most likely would still proceed with the foreclosure. **Debtor used**

---

[3] "Tricia"

**the threat of foreclosure and homelessness to induce Claimant into accepting this illegal and usurious loan product.**

37. Unlike millions of American who foolishly trusted their Servicer or Lender, Claimant refused to provide Debtor with her signature, convinced that they was all they wanted since they clearly did not want her money or resolution.

38. Claimant is entitled to monetary damages and would have prevailed at trial.

### [Violation of Real Estate Settlement Practices Act, § 6]

39. Section 6 of RESPA provides borrowers with consumer protections relating to the servicing of their loans. If a borrower sends a "qualified written request" to her loan servicer concerning the servicing of the loan, the servicer must provide a written acknowledgment within 20 business days of receipt of the request. Not later than 60 business days after receiving the request, the servicer must make any appropriate corrections to the borrower's account, and must provide a written clarification regarding any dispute. During this 60-day period, the servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

40. Claimant has sent servicer GMAC Mortgage, LLC several different qualified written requests in accordance with RESPA Title 12 Chapter 27 Sec. 2605 (B) between December 2007 through January 2008, and servicer has failed to act on or respond to any requests in the time prescribed by law, in violation of law.

    a. On 13 February 2008, Claimant sent a qualified written request, to GMAC, Mortgage, LLC to which they failed to respond. **[Exhibit 5]**

    b. On 25 March 2008 Claimant sent a qualified written request, which was received by GMAC Mortgage, LLC on Mar 28, 2008 as evidenced by **[Exhibit 13]**

    i. GMAC Mortgage, LLC failed to respond until 04/29/2008, well past the twenty-day requirement.

    ii. Claimant delivered a handwritten exception to Debtor by facsimile, to which they failed to respond.

    iii. Debtor responded on 05/08/08. **[Exhibit 14]**

  c. On 10 November 2008, Claimant sent a qualified written request requesting a copy of the promissory note via facsimile and mail.

41. Debtor ignored every written request. Claimant is entitled to monetary damages according to statue, but not less than $7,500.

**[Violation of Fair Credit and Reporting Act § 623. Responsibilities of furnishers of information to consumer reporting agencies]**

42. Debtor violated the FCRA by reporting Claimant as being in default when she was not, causing her financial harm including making it impossible for her to obtain credit. **[Exhibit 15** Letter from GMAC Mortgage dated May 20, 2011**]**

43. This false reporting of negative information was a direct and proximate cause of Claimant losing her SECRET security clearance which was a prerequisite of her job. It also prevented her from being eligible for a TOP SECRET clearance. As Ms. Rozier was a missile engineer, she is limited in employment options. She has no desire to work for a foreign government or hostile customer and is unwilling to work as a Walmart greeter.

44. As a direct and proximate result of their false reporting, Ms. Rozier was driven into default on her student loans and these loans have continued to accrue interest. Debtor should be required to pay Sallie Mae Servicing $111,000 in interest toward Claimant's account.

**[Wrongful Foreclosure]**

45. Debtor was desperate to perfect its crime/ clean up its mess, and in its haste, committed a rush and fraudulent foreclosure. On February 4, 2011, Claimant wrote Debtor's in-house lawyers and demanded that they "quiet my title or be sued" and outlined the reasons why. **[Exhibit 11, 12]** The next month on March 9, 2011, co-Debtor ETS recorded an Assignment of Deed of Trust purportedly transferring beneficial interest from Mortgage Electronic Registration Systems, Inc. to Bank of America, National Association as successor by merger to LaSalle Bank National Association as Trustee for RAMP 2007RP1. [TAC Exhibit 21]

46. Debtor and co-Debtor Residential Funding Company conducted a trustee sale on 9/24/12. [TAC Exhibit 7]. The sale was rescinded on 10/4/12. [TAC Exhibit 9]

47. When Claimant sued Debtor, they claimed they were immune from liability due to their Chapter 11 bankruptcy. A true and correct copy is attached hereto as **[Exhibit 16]**.

48. Claimant objected, but her objections were ignored by the California state court. A true and correct copy of that objection is attached hereto as **[Exhibit 17]**

**[Unclean Hands]**

49. Debtor GMAC Mortgage does not get to "walk away". Their co-conspirators do not get to divvy up the assets they stole and pretend as though it's alright. The government does not get to pretend as though it is doing its job by placing the burdens caused by this major clear criminal enterprise on the American people, as if we – specifically Claimant, did something wrong. It is bad enough that they changed their name to "Ally Financial", trying to dupe the general public into accepting them as "allies". They don't get to transfer their toxic assets to Ocwen Loan Servicing, walk away from the liabilities, and then have their co-conspirator Ocwen attempt to perfect their crime.

50. Debtor GMAC Mortgage, LLC was and is not entitled to any remedy because Debtor acted in bad faith first by their failure to accept Claimant's payment and in fact returning her

payments, then by their repeated failure to negotiate with Claimant in good faith, and finally by them "selling" this toxic asset to Ocwen Loan Servicing knowing that it was a void note and voidable deed of trust, as well as all other violations alleged herein.

51. Claimant made a good faith offer that would have resolved this mess on October 28, 2008 **[Exhibit 18]** Rather than accept the offer – which was higher than the face value of the alleged note, Debtor GMAC withdrew their offer for short sale. Claimant had negotiated a $142,000 reduction on her second mortgage, but due to Debtor's withdrawal, Claimant is now at risk for that **$142,000**. Debtor should be required to pay that plus accrued interest. Claimant initiated her litigation against Debtor two days later on October 28, 2008. [TAC Exhibit 4]

52. Claimant submitted a request for Independent Foreclosure Review in good faith. [TAC Exhibit 27] Claimant spent time creating her claim and incurred expense copying and mailing that claim. She is entitled to monetary reimbursement.

53. A few days after the illegal and wrongful foreclosure, on September 26, 2012, GMACM agent Meghan Shingo lied to the Buena Park Police and claimed that she was Claimant's spouse with a rifle across his chest. A true and correct copy of that report is attached hereto as **[Exhibit 19]** Claimant owned a legally registered 9mm handgun at the time, and a 9mm handgun cannot be mistaken for a rifle. Claimants are African-American, and African-Americans make up less than 2% of Buena Park. According to recent FBI data, African Americans living in Orange County are disproportionately targeted for hate crimes, so much so that the Orange County Human Relations Commission commenced a series of Hate Forums beginning in December 2012 to reduce the attacks on African Americans. The GMACM employee could see the race of the Claimant and presumably is familiar with race history of America and their false accusation should be viewed in the most harsh light – as an attempt to have Ms. Rozier murdered in order to silence her claims.

54. A few weeks later, Defendant then used this false police report to encourage nine Buena Park SWAT officers to accompany them while they posted a Notice of Trustee Sale, at gunpoint. A true and correct copy of that report is attached hereto as [Exhibit 20] Claimant's life and the life of her family was threatened by a racist police force with a recent history or murdering Brown and Black civilians and then paying "hush" money, most recently the multi-million dollar settlement of Juan Herrera, who was shot and killed by Buena Park Police officer Furtado. That settlement is listed as one of the Top 1,000 Cases of Police Brutality OF ALL TIMES. Right here in my neighborhood and during my lifetime ... that is who Debtor lied to and set after me, with guns and after casting Claimant in the most negative and violent light.

55. Claimant and her spouse have lost their 2nd Amendment constitution rights and their lives have been place in danger. Claimant's son's life was previously threatened simply because he is Black boy. A true and correct copy of that Restraining Order is attached hereto as [Exhibit 21] At the time, the Buena Park police refused to investigate the crime, and Claimant filed a complaint against the Buena Park police, one of many, all with merit. The aggressive – Ms. Alfreda King – was eventually institutionalized for two years, not due to any efforts whatsoever from the BPPD who were content to allow this woman to harass Claimant's minor special need's son. Claimant's son has cerebral palsy, is visually impaired and has chronic respiratory distress. This battle has robbed him of 1/3rd of his precious childhood. Now that Claimant and her spouse were forced to give up their guns based on the lies of Debtor's attorneys, Claimant and her family are "sitting ducks" in hostile territory. **Claimant is entitled to nine times the amount of this claim as punitive damages.**

56. Claimant filed a formal complaint with the Federal Bureau of Investigation, accusing the banks and GMAC Mortgage of colluding with the Buena Park police to "solve" their "common problem". The investigating officer is F.B.I Agent Luis Altamirano of the Orange,

California office, phone number (714) 939-8699. There is nothing like waking up to F.B.I. agents knocking on your front door.

57. Claimant is entitled to compensation and reimbursement.

## SUMMARY

58. Claimant is entitled to relief as follows retroactive to March 2008 as follows:

   a. Lost salary plus retirement [para 1] $8,952,530;

   b. Money wrongfully collected [para 2]: $49,850.55 plus interest

   c. Intentional Infliction of Emotional Harm [para 3]: $666,000

   d. RESPA violations [para 41]: $7500

   e. Additional student loan interest [para 44]: $111,000

   f. Second Deed of Trust pay down [para 51]: $142,000 plus accrued interest.

   g. Unclean Hands [para 55]: 9-times (a+b+c+d)

   h. Expenses as per the attached, Attachment 1.

Dated this 21st day of July, 2013

                                                    Karen M. Rozier, Claimant in Pro Per

**Exhibits**

| | |
|---|---|
| Exhibit 1 | Second Amended |
| Exhibit 2 | Third Amended complaint |
| Exhibit 3 | Notice of Temporarily Halting Sale |
| Exhibit 4 | David Hagens Letter dated January 27, 2011 and Claimant's response |
| Exhibit 5 | Claimant's letter to GMAC dated 13 February 2008 |
| Exhibit 6 | Rejection of Foreclosure Repayment Agreement dated 4/29/08. |
| Exhibit 7 | June 2008 Notice of Sale |
| Exhibit 8 | "Defending Your Company Against Individual Claims" by Severson and Werson, APC |
| Exhibit 9 | Letter to GMAC Mortgage attorneys', dated 27 March 2009 |
| Exhibit 10 | Letter to GMAC Mortgage, aka Ally Financial Customer Collections dated 3 Jan 2011 |
| Exhibit 11 | Letter to GMAC Mortgage, LLC ATTN David Hagens dated February 4, 2011 |
| Exhibit 12 | Letter to GMAC Mortgage, LLC Ally Financial Customer Care dated February 4, 2011 |
| Exhibit 13 | Letter dated 25 March 08 |
| Exhibit 14 | GMACM response dated 05/08/08. |
| Exhibit 15 | GMAC letter dated May 20, 2011 |
| Exhibit 16 | Defendants GMAC Mortgage, LLC's and Executive Trustee Services, LLC dba ETS Services, LLC's Notice of Bankruptcy and Suggestion of Automatic Stay in Response |
| Exhibit 17 | Claimant's objection to bankruptcy immunity |
| Exhibit 18 | Counter Usher offer |
| Exhibit 19 | BP police report 12-333126 |
| Exhibit 20 | BP police report12-35733 |
| Exhibit 21 | Restraining Order After Hearing to Stop Harassment |

**TAC Exhibits**

| Claim | TAC Exhibits |
|---|---|
| Para 1. | 2, 3, 51, 5, 52, 12 |
| Para 3. | 34, 35 |
| Para 12. | 3 |
| Para 15 | 5 |
| Para 31. | 34, 35, 36, 43 |
| Para 45. | 21 |
| Para 46. | 7, 9 |
| Para 51. | 4 |
| Para 52. | 27 |