| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: January 9, 2014<br>Hearing Time: 10:00 a.m. |

------------------------------------------------------- x
                                            :
In re                                        :           Chapter 11
                                            :
RESIDENTIAL CAPITAL, LLC,              :           Case No. 12-12020 (MG)
                                            :
                    Debtors.      :           Jointly Administered
                                            :
------------------------------------------------------- x

**OBJECTION OF THE UNITED STATES TRUSTEE TO
DEBTORS' MOTION FOR ENTRY OF AN ORDER
APPROVING PAYMENT OF SUCCESS FEE TO DEBTORS'
<u>CHIEF RESTRUCTURING OFFICER, LEWIS KRUGER</u>**

                              WILLIAM K. HARRINGTON
                              UNITED STATES TRUSTEE, REGION 2

          By:    Michael T. Driscoll
                Brian S. Masumoto
                Trial Attorneys
                Office of the United States Trustee
                201 Varick Street, Suite 1006
                New York, NY 10014
                Tel. No. (212) 510-0500

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

I.     PRELIMINARY STATEMENT .......................................................................................1

II.    STATEMENT OF FACTS ................................................................................................3
       A.      General Background .................................................................................................3
       B.      The CRO Retention Motion .....................................................................................4
       C.      The Amended CRO Motion .....................................................................................5
       D.      The Success Fee Motion ..........................................................................................6
       E.      The CRO's Total Compensation ..............................................................................6

III.   OBJECTION ......................................................................................................................8
       A.      The Hearing on the Success Fee Motion Should Be Adjourned
             to the Date that the Court Considers the Final Fee Applications of
             the Retained Professionals .......................................................................................8
       B.      Alternatively, the Debtors Have Not Met Their Burden that the
             Success Fee is Reasonable Under Section 330 .......................................................9
           1.     The Award of the Success Fee to the CRO Would Result
                 in an Exceptionally High Effective Hourly Rate .......................................10
           2.     The Monthly Fee Statements Do Not Support the Debtors'
                 Contention that the CRO Has Been Serving in the
                 Capacity of a CEO ......................................................................................11

IV.   CONCLUSION ................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

In re Beverly Mfg. Corp., 841 F.2d 365 (11th Cir. 1988). ...........................................................10
In re CCT Commc'ns, Inc., No. 07–10210 (SMB), 2010 WL 3386947
    (Bankr. S.D.N.Y. Aug. 24, 2010) .........................................................................................10
In re Engel, 124 F.3d 567 (3d Cir. 1997). ......................................................................................9
In re Enron Corp., 01-16034 (ALG), 2006 WL 1030421
    (Bankr. S.D.N.Y. Apr. 12, 2006) ..........................................................................................10
In re Lederman Enter., Inc., 997 F.2d 1321 (10th Cir. 1993) .........................................................9
In re Value City Holdings, Inc., 436 B.R. 300 (Bankr. S.D.N.Y. 2010) .......................................10
Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19
    (2d Cir. B.A.P. 1997) ............................................................................................................10

**Statutes and Rules**

11 U.S.C. § 330............................................................................................................... *passim*
11 U.S.C. § 331.....................................................................................................................4
Bankruptcy Rule 2002 ............................................................................................................9

TO:   THE HONORABLE MARTIN GLENN,
      UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), respectfully submits this objection (the "Objection") to the "Debtors' Motion for Entry of an Order Approving Payment of Success Fee to Debtors' Chief Restructuring Officer, Lewis Kruger" (the "Success Fee Motion"). ECF Doc. No. 6172. In support of the Objection, the United States Trustee respectfully states as follows:

## I. PRELIMINARY STATEMENT

The Debtors seek authority to pay their chief restructuring officer, Lewis Kruger (the "CRO"), a success fee of $2 million, which sum is above and beyond the $1.2 million in compensation that has already been paid – or will be paid . The Debtors sought to retain the CRO – an attorney with vast restructuring experience – in order for him to resolve significant disputes with the Debtors' major stakeholders, lead the Debtors through complex restructuring issues, spearhead the plan process, provide assistance during the ongoing mediation process, and to assist the Debtors' remaining employees and management, who, despite vast institutional knowledge that made them intrinsically invaluable and irreplaceable to the administration and ultimate disposition of these cases, lacked experience with complex restructuring issues. The CRO's compensation of $895 per hour was approved because of the scope of the services to be provided and the vast experience of the CRO. The CRO has performed the very work for which he was retained and paid at the rate of $895 per hour. Payment to the CRO for his services at the rate of $2,300 per hour – more than double the hourly rate for which he was retained – is not reasonable. However, if the Court approves the Success Fee Motion, the $2,300 per hour rate is exactly what the Court will be approving.

1

The Debtors' argument that in addition to his hourly compensation, the CRO should also be awarded a success fee of $2 million because his duties were expanded in May 2013 to include duties that are traditionally performed by a Chief Executive Officer ("CEO"), is not compelling.  An analysis of the hours spent by the CRO on these cases after the departure of the Debtors' former CEO on May 3, 2013, does not support a finding that the CRO spent an extraordinary number of hours managing the Debtors' day-to-day businesses.  In fact, as shown below, the CRO spent less than 15% of the total time that he worked on these cases on estate management duties or on average less than ten hours per week, and, with the exception of the month of June 2013, the CRO spent more time on estate management duties before the former CEO departed in May 2013.

Similarly, the Debtors' argument that the proposed success fee to the CRO is consistent with success fees granted to restructuring officers or crisis managers in comparable cases filed in this Court must be rejected.  Although specific details regarding these comparable cases was not provided, a review of the ten cases relied upon by the Debtors reveals that where success fees were awarded, the CRO or Crisis Manager did not receive the success fee individually.  Rather, unlike the circumstances herein, the success fee was paid to the firm which had staffed the engagement with many employees who had worked collectively on the engagement for many hours.  In contrast, during the approximately ten months that the CRO worked on these cases, he spent less than 1,400 hours in total and, on average, worked less than forty hours each week as CRO.  Based on these facts, the cases relied upon by the Debtors as support for the payment of a success fee to the CRO are neither compelling nor persuasive.

Finally, in considering whether to grant the Success Fee Motion, the Court must review the motion in accordance with Section 330.  This is the same reasonableness standard under

2

which the final fee applications of all retained professionals will be reviewed. Accordingly, the United States Trustee requests that this motion be adjourned to the same date that the Court considers all final fee applications.

Therefore, to the extent that the Court declines to adjourn the relief sought, the United States Trustee objects to the Success Fee Motion.

## II. STATEMENT OF FACTS

**A.  General Background**

1. On May 14, 2012, Residential Capital, LLC and certain of its direct and indirect subsidiaries (collectively, the "Debtors") each filed petitions for relief under Chapter 11 of the Bankruptcy Code. ECF Doc. No. 1.

2. On May 16, 2012, pursuant to Section 1102 of the Bankruptcy Code, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in these cases. ECF Doc. No. 102.

3. On July 5, 2013, the Debtors and the Committee filed the Joint Chapter 11 Plan (together with two subsequent amendments, the "Joint Chapter 11 Plan"). ECF Doc. Nos. 4153, 4819, and 5993.

4. On December 11, 2013, the Court entered an order confirming each of the Debtors' cases. ECF Doc. No. 6065.

5. On December 17, 2013, the Debtors filed a notice of occurrence of the Effective Date, as defined by the Joint Chapter 11 Plan. ECF Doc. No. 6137.

**B.    The CRO Retention Motion**

6. On February 11, 2013, the Debtors filed the "Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Authorizing the Debtors to Appoint Lewis Kruger as Chief Restructuring Officer" (the "CRO Retention Motion"). ECF Doc. No. 2887.

7. In support of the CRO Retention Motion, the Debtors attached an engagement letter dated February 11, 2013 between the Debtors and the CRO (the "Engagement Letter"). See id., Ex. 4.

8. Pursuant to the CRO Retention Motion, the Debtors sought to retain the CRO to perform the following services:

- Communicate and negotiate with major stakeholders;
- Participate in plan mediation, plan-related negotiations and provide assistance in all aspects of the plan process;
- Participate in negotiations with AFI;
- Provide advice regarding the allocation of any AFI Settlement;
- Assist the management team with the resolution, settlement and/or litigation of large disputed claims against the Debtors;
- Work with creditors to resolve interdebtor and intercreditor disputes; and
- Report directly to the Board.

Id. at ¶ 26.

9. The Debtors proposed to pay the CRO an hourly rate of $895, plus reimbursement of all reasonable and necessary expenses. Id. at ¶ 28.

10. In addition to the hourly rates, the Debtors proposed to pay the CRO a success fee in an amount that was not yet determined by the Debtors' board of directors. Id. at ¶ 29. The Debtors indicated that such a success fee would require separate Court approval and would be subject to determination under a "reasonableness standard." Id. at ¶ 29, n.3.

11. On March 5, 2013, the Court entered an order (the "CRO Retention Order") approving the CRO Retention Motion. ECF Doc. No. 3103.

4

12.     Pursuant to the CRO Retention Order, the CRO was not required to file fee applications pursuant to Sections 330 and 331. Id. at ¶ 6. The CRO was required to file reports, on at least a quarterly basis, of compensation earned and expenses incurred. Id. at ¶ 6.

**C.     The Amended CRO Retention Motion**

13.     On September 27, 2013, the Debtors filed the "Motion Pursuant to Sections 105(a) And 363(b) of the Bankruptcy Code for an Order Approving Amendment to Engagement Letter with Debtors' Chief Restructuring Officer, Lewis Kruger" (the "Amended CRO Retention Motion"). ECF Doc. No. 5227.

14.     According to the Debtors, the CRO's duties expanded with the resignation of the Debtors' CEO, Thomas Marano, on May 3, 2013. Id. at ¶ 29.

15.     Pursuant to the Amended CRO Retention Motion, Section 2(d) of the Engagement Letter was to be amended to allow a $2 million success fee as follows:

> Success Fee: In addition to the CRO's hourly compensation, the Company agrees that Mr. Kruger will be entitled to a success fee in the amount of $2,000,000 (the "Success Fee") as compensation for (x) leading key parties to achieve significant milestones in the Chapter 11 Cases in an expeditious manner, and (y) assuming the additional responsibilities of the Company's Chief Executive Officer following the resignation of Thomas Marano, effective May 3, 2013.
>
>   i.   The Success Fee shall be payable upon the effective date of the Chapter 11 plan filed with the Bankruptcy Court [Docket No. 4153] (the "Plan"), as such Plan may be amended by the Plan Proponents, namely, the Debtors and the Official Committee of Unsecured Creditors (the "Creditors' Committee"), in these Chapter 11 Cases.
>
>   ii.  The Company's Board of Directors, which consulted with the Creditors' Committee in determining the Success Fee, has the sole discretion to approve the amount and the appropriateness of the Success Fee. The parties acknowledge that any Success Fee would require appropriate notice and ultimately Bankruptcy Court approval.

Id. at ¶ 17.

5

16.     On October 9, 2013, the Court entered an order (the "Amended CRO Retention Order") approving the CRO Amended Retention Motion. ECF Doc. No. 5318.

17.     The Amended CRO Retention Order stated in pertinent part:

> The Debtors, and any successors thereof, shall pay and distribute to Mr. Kruger the Success Fee, the allowance of which shall be based upon an application for allowance (a) served in accordance with the Case Management Order on not less than fourteen (14) days' notice and (b) <u>subject to a reasonableness standard consistent with section 330 of the Bankruptcy Code</u> . . . .

Id. at ¶ 6 (emphasis added).

**D.     The Success Fee Motion**

18.     On December 23, 2013, the Debtors filed the Success Fee Motion. ECF Doc. No. 6172. In support of the Success Fee Motion, the Debtors attached the declarations of John Dempsey and William J. Nolan (the "Nolan Declaration") as Exhibits 2 and 3, respectively. Id., Ex. 2, 3.

19.     Pursuant to the Success Fee Motion, the Debtors seek approval to pay the CRO a $2 million success fee (the "Success Fee"). Id. at ¶ 18.

**E.     The CRO's Total Compensation**

20.     As stated above at Paragraph 12, the CRO Retention Order required the CRO to file reports, on at least a quarterly basis, of compensation earned and expenses incurred. CRO Retention Order at ¶ 6.

21.     To date, the CRO has filed eleven such reports (the "Monthly Fee Statements"). See ECF Doc. Nos. 3159, 3407, 3604, 3941, 4192, 4647, 4999, 5274, 5613, 6027, and 6189.

22.     According to the Monthly Fee Statements, as depicted on the chart below, the CRO has earned $1,215,857.50, totaling 1,358.5 hours, charged at $895 per hour:

| CRO Monthly Fee Statements | Hours | Rate | Value | Approx. Average Hours per Week |
|---|---|---|---|---|
| 1st Statement - February 2013: 2/10-2/28 | 75.5 | $895.00 | $67,572.50 | 27.82 |
| 2nd Statement - March 2013 | 116.5 | $895.00 | $104,267.50 | 26.31 |
| 3rd Statement - April 2013 | 169.0 | $895.00 | $151,255.00 | 39.43 |
| 4th Statement - May 2013 | 140.0 | $895.00 | $125,300.00 | 31.61 |
| 5th Statement - June 2013 | 153.0 | $895.00 | $136,935.00 | 35.70 |
| 6th Statement - July 2013 | 115.0 | $895.00 | $102,925.00 | 25.97 |
| 7th Statement - August 2013 | 128.0 | $895.00 | $114,560.00 | 28.90 |
| 8th Statement - September 2013 | 107.5 | $895.00 | $96,212.50 | 25.08 |
| 9th Statement - October 2013 | 165.5 | $895.00 | $148,122.50 | 37.37 |
| 10th Statement - November 2013 | 160.5 | $895.00 | $143,647.50 | 37.45 |
| 11th Statement - December 2013: 12/1-12/17[1] | 28.0 | $895.00 | $25,060.00 | 11.53 |
| Statement Totals | 1,358.5 | | $1,215,857.50 | |

23.    Each of the Monthly Fee Statements provides a brief statement of services rendered in each of the following project categories: 1) Plan Mediation; 2) Plan – General; 3) RMBS Settlement; 4) Claims Management; 5) Hearings; and 6) Estate Management.

24.    As depicted on the chart below, the CRO charged the following for his services in each of the project categories.

| CRO Project Categories | Hours | % of Total Hours | Rate | Value |
|---|---|---|---|---|
| 1 - Plan Mediation | 270.0 | 19.87% | $895.00 | $241,650.00 |
| 2 - Plan - General | 551.5 | 40.59% | $895.00 | $493,592.50 |
| 3 - RMBS Settlement | 15.0 | 1.10% | $895.00 | $13,425.00 |
| 4 - Claims Management | 135.5 | 9.97% | $895.00 | $121,272.50 |
| 5 - Hearings | 184.5 | 13.58% | $895.00 | $165,127.50 |
| 6 - Estate Management | 202.0 | 14.86% | $895.00 | $180,790.00 |
|  | 1,358.5 | | | $1,215,857.50 |

---

[1] The December 2013 Monthly Fee Statement erroneously indicated that the CRO worked 18.0 hours. See ECF Doc. No. 6189 at p.6. The correct number of hours is 28.0.

7

25. As depicted on the chart below, the CRO devoted the following hours per month for his services in each of the project categories.

|  | Feb. | Mar. | Apr. | May | June | July | Aug. | Sept. | Oct. | Nov. | Dec. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 - Plan Mediation | 9.0 | 0.5 | 100.0 | 56.5 | 11.0 | 59.0 | 34.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| 2 - Plan - General | 16.5 | 15.0 | 21.5 | 56.5 | 88.0 | 23.5 | 38.5 | 89.0 | 106.5 | 89.5 | 7.0 |
| 3 - RMBS Settlement | 6.5 | 5.0 | 2.5 | 1.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| 4 - Claims Management | 22.0 | 41.5 | 25.5 | 6.0 | 18.0 | 11.0 | 9.5 | 1.5 | 0.5 | 0.0 | 0.0 |
| 5 - Hearings | 4.0 | 12.0 | 0.0 | 4.0 | 14.0 | 13.0 | 31.5 | 3.5 | 43.5 | 54.5 | 4.5 |
| 6 - Estate Management | 17.5 | 42.5 | 19.5 | 16.0 | 22.0 | 8.5 | 14.5 | 13.5 | 15.0 | 16.5 | 16.5 |
|  | 75.5 | 116.5 | 169.0 | 140.0 | 153.0 | 115.0 | 128.0 | 107.5 | 165.5 | 160.5 | 28.0 |

26. To the extent that the Court awards the Success Fee, the total compensation of the CRO would be $3,215,857.50 ($1,215,857.50 hourly rate compensation plus the $2 million Success Fee). This would result in an effective hourly rate of $2,367.21 ($3,215,857.50 divided by 1,358.50 hours).

### III. OBJECTION

**A.    The Hearing on the Success Fee Motion Should Be Adjourned to the Date that the Court Considers the Final Fee Applications of the Retained Professionals**

The United States Trustee requests that the Court adjourn the Success Fee Motion to the same hearing date as the final fee applications of the retained professionals for the reasons set forth below. First, the Success Fee is subject to the same reasonableness standard under Section 330 as the interim and final fee applications of the professionals retained under Section 327. See Am. CRO Retention Order at ¶ 6 (stating that the Success Fee would be evaluated "subject to a reasonableness standard consistent with section 330 of the Bankruptcy Code . . . ."). The reasonableness of the Success Fee would be better addressed when other similarly situated retained professionals seek approval of their final fee applications.

8

Second, all parties-in-interest have not been afforded sufficient time to conduct a fulsome reasonableness review of the Success Fee. The United States Trustee notes that while the Success Fee Motion was filed in technical compliance with the Court's Case Management Order, see ECF Doc. No. 141, and Bankruptcy Rule 2002, the Success Fee Motion was filed with no advance warning during a holiday week. The Court previously afforded the Committee additional time to conduct a review of the Examiner's final fee application and, in so doing, the Court noted that "in fairness" the Court was adjourning the final fee applications of the Examiner's professionals. See Hr'g Tr. 81:11–25 (Dec. 17, 2013). Similarly, the United States Trustee respectfully requests that the Court adjourn the Success Fee Motion to the same date, to give all parties-in-interest adequate time to review and consider the request.

**B.     Alternatively, the Debtors Have Not Met Their Burden that the Success Fee is Reasonable Under Section 330**

Section 330(a)(3) requires that the Court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:

    a.    the <u>time spent</u> on such services;

    b.    the <u>rates charged</u> for such services;

    . . .

    f.    whether the compensation is reasonable based on the <u>customary compensation charged by comparably skilled practitioners</u> in cases other than cases under this title.

11 U.S.C. § 330(a)(3). (emphasis added). Section 330 requires the applicant to establish both reasonableness and benefit to the estate from the professional's services. In re Lederman Enter., Inc., 997 F.2d 1321, 1323 (10th Cir. 1993). To be compensable, the professional's services must have been necessary and beneficial to the estate or its creditors. In re Engel, 124 F.3d 567, 573 (3d Cir. 1997). Each applicant bears the burden of proving the reasonableness of its fees and

9

expenses sought.  Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19, 24 (2d Cir. B.A.P. 1997); In re Value City Holdings, Inc., 436 B.R. 300, 305 (Bankr. S.D.N.Y. 2010); In re CCT Commc'ns, Inc., No. 07–10210 (SMB), 2010 WL 3386947, at *4 (Bankr. S.D.N.Y. Aug. 24, 2010).  "Both sections 363 and 330 as paid under section 503 reflect congressional intent that ordinary and reasonable expenses be based upon marketplace criteria for the services provided during the administration of the case."  In re Enron Corp., 01-16034 (ALG), 2006 WL 1030421, at *6 (Bankr. S.D.N.Y. Apr. 12, 2006).  If an applicant fails to sustain its burden on reasonableness, a court may properly deny the application for compensation.  In re Beverly Mfg. Corp., 841 F.2d 365, 371 (11th Cir. 1988).

In the present matter, the Debtors have not met their burden of showing that the CRO's Success Fee meets the reasonableness standard under Section 330 for the following reasons.

    **1.**    **The Award of the Success Fee to the CRO Would Result in an Exceptionally High Effective Hourly Rate**

Pursuant to the CRO Retention Order, the Debtors have paid the CRO $895 per hour for his services in these cases.  As a result of his 1,358.50 hours, the CRO will receive, or did receive, $1,215,857.50 for his services from February 2013 to December 2013.  When the potential Success Fee is factored in, the CRO's total compensation would exceed $3.2 million and his corresponding hourly rate would skyrocket to an amount in excess of $2,300.  This effective hourly rate would be significantly higher than the hourly rates of the senior practitioners of any law firm retained in these cases as well as the hourly rate of the Examiner, who is the former Chief Bankruptcy Judge of this District.  The Debtors did not address the reasonableness of the effective hourly rate as required by Section 330(a)(3), and, accordingly, the Court should deny the Success Fee Motion.

### 2. The Monthly Fee Statements Do Not Support the Debtors' Contention that CRO Has Been Serving in the Capacity of a CEO

The Debtors state that the bases for the Success Fee are the CRO's "(x) leading key parties to achieve significant milestones in the Chapter 11 Cases in an expeditious manner, and (y) assuming the additional responsibilities of the Company's Chief Executive Officer following the resignation of Thomas Marano, effective May 3, 2013." Am. CRO Retention Mot. at ¶ 17. While the United States Trustee acknowledges that the CRO may have assumed additional duties following the resignation of Mr. Marano, the CRO was not serving in the capacity of a CEO – at least according to the his Monthly Fee Statements.

As set forth in Paragraph 24, supra, the CRO divided his Monthly Fee Statements into six project categories: 1) Plan Mediation; 2) Plan – General; 3) RMBS Settlement; 4) Claims Management; 5) Hearings; and 6) Estate Management. As depicted on the chart under Paragraph 24, the CRO devoted the largest share of his services – 40.59% – to the project category "Plan - General." The other project categories are similarly legally oriented.

The only project category that appears to involve services that could be arguably akin to those of a CEO is "Estate Management"; however, the CRO only devoted 14.86% of his time to this project category. Furthermore, as depicted on the chart under Paragraph 25, under the Estate Management project category, the number of hours worked in February, March, and April 2013, before the CEO resigned in May 2013, are actually higher than every other month except for June 2013. This seems to rebut the assertion that he was actually serving in dual capacities after the resignation of the CEO. Indeed, based on the Monthly fee Statements, the work performed by the CRO appears to be the type of work more commonly performed by a bankruptcy attorney and not a company executive or a crisis manager.

11

Moreover, the number of hours that the CRO devoted to these cases per week also raises questions as to whether he was serving in these dual positions. As depicted on the chart under Paragraph 22, the CRO's services per week never exceed forty hours. While the hours devoted to the case are significant, the hours are not indicative of a person juggling two senior executive positions in these highly complex cases. Accordingly, the Debtors have not met their burden that the Success Fee is reasonable based on the Monthly Fee Statements. The United States Trustee requests that the Court deny the Success Fee unless the Debtors provide additional justification to their assertion that he was serving as both CRO and CEO.

Further, in support of the Success Fee Motion, the Nolan Declaration cites ten cases in this District where a CRO received a success fee. Nolan Decl., Ex. A. The Debtors provided no details about the facts and circumstances surrounding those awards. Those cases, however, are inapposite because in each of them the CRO was an employee of, and supported by, a large firm such as AP Services LLC, AMJ Advisors LLC, Zolfo Cooper Management LLC, and Alvarez & Marsal North America LLC. The named CRO in each case did not receive the success fee individually. Rather, the fee was paid to the firm. For example, in In re Eastman Kodak Corporation, the Court granted the application of AP Services LLC for a $3 million completion fee for its services as crisis manager. See Case No. 12-10202 (ALG), ECF Doc. No. 5363. AP Services LLC staffed those cases with two individuals exercising executive duties and as many as sixty staff employees. See Case No. 12-10202 (ALG), ECF Doc. Nos. 1556, 2098, 2647, 3701, 5199, and 5238. In total, AP Services LLC devoted 96,554.9 hours to the Eastman Kodak cases. See Case No. 12-10202 (ALG), ECF Doc. Nos. 1556 (16,821.7 hours); 2098 (21,060.6 hours); 2647 (15,470.6 hours); 3701 (17,117.6 hours); 5199 (15,729.4 hours); and 5238 (10,355.60). As noted previously, the CRO devoted 1,358.50 to the present cases. Finally, the

CROs in the cited cases did not spend over 85% of their time on legal issues as was the case here.  Instead, the bulk of the time spent was on the restructuring or liquidation of their clients.

## IV.  CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that the Court (i) adjourn the Success Fee Motion; (ii) deny the Success Fee Motion; and/or (iii) grant such other relief as is just.

Dated: New York, New York
      January 2, 2014                              Respectfully submitted,

                                                           WILLIAM K. HARRINGTON
                                                           UNITED STATES TRUSTEE, REGION 2

                            By:     */s/ Michael T. Driscoll*
                                                            Michael T. Driscoll
                                                            Brian S. Masumoto
                                                            Trial Attorneys
                                                            Office of the United States Trustee
                                                            201 Varick Street, Suite 1006
                                                            New York, NY 10014
                                                            Tel. No. (212) 510-0500