Hearing Date and Time: January 9, 2014 at 10:00 a.m. (Prevailing Eastern Time)

**FELDERSTEIN FITZGERALD**
**WILLOUGHBY & PASCUZZI, LLP**
400 Capitol Mall, Suite 1750
Sacramento, CA  95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
Email: ppascuzzi@ffwplaw.com
Paul J. Pascuzzi – CA Bar No. 148810
(*Pro Hac Vice*)

Attorney for California Housing Finance Agency

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC., et al.,<br><br>            Debtors. | Case No.  12-12020 (MG)<br><br>Chapter 11<br><br>Jointly Administered |

**OPPOSITION OF CALIFORNIA HOUSING FINANCE AGENCY**
**TO DEBTORS' FIFTY-FIFTH OMNIBUS OBJECTION TO CLAIMS**
**(NO LIABILITY - ASSIGNED CONTRACT CLAIMS)**

California Housing Finance Agency ("CalHFA"), by and through its undersigned counsel, hereby submits its Opposition ("Opposition") to the Debtors' *Fifty-Fifth Omnibus Objection to Claims (No Liability - Assigned Contract Claims)* (Dkt No. 6077) ("Omnibus Objection").[1]

### INTRODUCTION

CalHFA hereby responds and objects to the Debtors' request to disallow and expunge CalHFA's filed proofs of claim (Claim Nos. 4631 & 4632 - the "Claims") on the following grounds:

1.     The sole basis for the Omnibus Objection is that the claims of the holders of Assigned Contract Claims, as defined in the Omnibus Objection, have been paid as cure amounts in connection with the assumption and assignment of the contracts.  However, as to CalHFA, the

---

[1] All defined terms not defined in this Opposition have the meanings which the Omnibus Objection ascribes.

Omnibus Objection should be overruled because CalHFA and the Debtors are still negotiating unresolved issues with respect to the assumption and assignment of the CalHFA Contract (defined below) to Ocwen Loan Servicing, LLC ("Ocwen"), including but not limited to the issue of a proper cure amount. If the parties are unable to reach an agreement, the CalHFA Contract ultimately may be rejected, in which case CalHFA has the right to amend its Claims to assert full contract rejection damages prior to the rejection claim deadline set pursuant to the Debtors' Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors (the "Plan").

2. In addition, because only the "servicing" portion of the CalHFA Contract will be potentially assumed and assigned by the Debtors to Ocwen (if the parties are able to reach an agreement), at a minimum CalHFA has the right to amend its Claims to assert contract rejection damages for the "originating" portion of the CalHFA Contract that is being rejected.

3. In addition, CalHFA has a valid administrative claim against the Debtors' estate for all post-petition operations under the CalHFA contracts in an amount not less than $1,380,753.26. CalHFA intends to file an administrative claim prior to the administrative claim deadline set pursuant to the Debtors' Plan, unless the assumption and assignment issues discussed herein are resolved by the parties prior to that deadline.

4. Based upon the above, the Omnibus Objection is based on a faulty premise as to the CalHFA Claims such that the disallowance and expungement of the CalHFA Claims is improper and/or premature at this time, and the Debtors' objection should be overruled.

**FACTUAL BACKGROUND RELEVANT TO
THE OPPOSITION AND ARGUMENT**

5. GMAC Mortgage, LLC ("GMAC"), one of the Debtor entities, entered into a Mortgage Purchase and Servicing Agreement with CalHFA on February 12, 2007 (the "CalHFA Contract"). Declaration of Gregory Carter in Support of Objection of California Housing Finance Agency to Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts and Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto filed at Dkt. No. 1614-1 ("Carter Decl.") at ¶ 5.

6. Under the CalHFA Contract, GMAC agreed both to originate and service eligible loans made pursuant to CalHFA's single family home loan program. Section III.1 of the Agreement provides in relevant part: "Lender shall service the Loans in accordance with the most restrictive requirements of the following: (i) this Agreement; (ii) the Servicer's Guide and/or Program Bulletins, to the extent not inconsistent with this Agreement, (iii) the requirements of the applicable Mortgage Insurer, and (iv) the customary practices of prudent lending institutions." The Servicer's Guide is a lengthy document which, among other things, provides for penalties to be assessed to the CalHFA loan servicers if certain conditions are not met. For example, FHA/VA/USDA loans are to have a grant deed recorded to convey title from CalHFA to the insurer or the servicer within 90 days of the trustee sale date. A servicer is subject to a fifty ($50) dollar per day penalty assessment, with no maximum, for failing to comply with this requirement. Carter Decl. at ¶ 7.

7. The CalHFA Contract was listed as a contract to be assumed and assigned in connection with the Debtors' original *Notice of (i) Debtors' Intent to Assume and Assign Certain Executory Contracts and Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (ii) Cure Amounts Related Thereto* (Dkt No. 924) provided as part of the Sale Procedures Order entered on June 28, 2012 (Dkt. No. 538). CalHFA submitted an objection/response to the Debtors' original motion at Docket 1614 ("CalHFA Original Objection") and a supplement to the objection/response at Docket 2011 ("CalHFA Supplemental Objection", together with the CalHFA Original Objection, the "CalHFA Objections").

8. To resolve the CalHFA Objections, Ocwen agreed to submit an application to CalHFA to become an approved servicer and be subject to the CalHFA approval requirements required by the CalHFA Contract. This resolution was noted on the record in open court at the sale hearing on November 19, 2012.

9. Ultimately, the Court's Order Under 11 U.S.C. §§ 105(a) and 365(a) and (f), Fed. R. Bankr. P. 6006 and 9014 and Local Bankruptcy Rule 6006-1 Authorizing Assumption and Assignment of Executory Contracts dated February 7, 2013 (the "Assumption Order") [Dkt. No. 2859] authorized the assumption and assignment of certain executory contracts, including the CalHFA Contract, but provided, however, that:

> "California Housing Financing Authority ("CalHFA") shall consider the completed Application to Service Existing CalHFA Loans submitted by Ocwen Loan Servicing, LLC ("Ocwen") and **the CalHFA Contract may be assumed and assigned to Ocwen only after CalHFA approves Ocwen as a servicer**."

See Assumption Order at ¶ 8 (emphasis added).[2]

10. According to the Omnibus Objection, the Ocwen sale closed on or about February 15, 2013. CalHFA is informed and believes that the Debtors and Ocwen have entered into a "subservicing agreement" whereby Ocwen has been servicing CalHFA loans since the February closing date.

11. Since at least February 2013, CalHFA has been working with Ocwen on its ability to perform under the CalHFA Contract to determine whether Ocwen is capable of performing the obligations it would assume, including but not limited to the ability of Ocwen to perform under the CalHFA Contract as well as the proper cure amount. At this point, CalHFA is prepared to consent to the assumption and assignment of the CalHFA Contract to Ocwen, notwithstanding continuing difficulties in Ocwen's reporting abilities, subject to payment of all outstanding obligations under the CalHFA contract as of the yet to be determined effective date of any assumption. CalHFA communicated this consent to Debtors' counsel on or about December 9, 2013.

12. Issues still exist, however, with respect to the proper amount required to cure defaults and/or actual pecuniary losses under the CalHFA Contract pursuant to 11 U.S.C. § 365(b)(1)(A) and/or § 365(b)(1)(B). CalHFA asserts that the cure amount as of December 31, 2013, is $1,380,753.26. The cure amount is comprised of unpaid penalties incurred by debtor GMAC post-petition but both pre- and post-February 15, 2013 (the reported sale closing date and likely date of Ocwen subservicing the CalHFA loans) with regard to certain servicing issues, which penalties continue to accrue. The cure amount also includes GMAC's obligations to repurchase certain mortgages and certain third party sale proceeds that are due to CalHFA from both pre- and post-

---

[2] The assumption and assignment of contracts under the Assumption Order was subject to and governed by the terms of the Court's Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing, LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Thereto; (D) Related Agreements; and (II) Granting Related Relief [Dkt. No. 2246] (the "Sale Order").

February 15, 2013.[3]

13. The parties are continuing to negotiate these issues. A spreadsheet with an updated breakdown of the current cure amount and whether the item arose pre- or post-February 15, 2013, was provided to the Debtor as recently as December 19, 2013. The Debtors' initial response was that the amount was too high to make assumption and assignment beneficial to the Debtors. However, regardless of assumption and assignment of the CalHFA Contract, the amounts owed during the Debtors' post-petition performance, whether through some subservicing agreement with Ocwen or not, will have to be paid by the estate.

14. If the parties are not able to reach an agreement as to the proper cure amount, it is possible that the CalHFA Contract ultimately will be rejected. If that happens, CalHFA intends to amend its Claims to assert full contract rejection damages prior to the rejection claim deadline set pursuant to the Debtors' Plan.[4]

15. In addition, the Sale Order specifically provided that only the "servicing" portion of the CalHFA Contract was to be assumed and assigned to Ocwen. Specifically, the Sale Order provided that:

> "Except as may be provided in the Ocwen APA with respect to the Ginnie Mae Loans, the Servicing Agreements being assumed and assigned to the Purchaser pursuant to the Ocwen APA consist solely of enforceable contracts for providing servicing, subservicing or master servicing for Mortgage Loans. The Assumed Contracts do not include any agreements, obligations, or liability in respect of the origination or sale of mortgage loans…or any other agreements not being assumed and assigned to Purchaser pursuant to the Ocwen APA (collectively, the "Other Agreements") in all cases regardless of whether such Other Agreement arises from, or is memorialized in, the same writing (or writings) as a Servicing Agreement…The Sellers are not assuming and assigning to the Purchaser and the Purchaser has no liability under any Other Agreement…"

See Sale Order at ¶ P "Severability of Servicing Agreements."

16. Because only the "servicing" portion of the CalHFA Contract would potentially be assumed and assigned by the Debtors to Ocwen (if the parties are able to reach an agreement), at a minimum CalHFA will need to amend its Claims to assert contract rejection damages for the "originating" portion of the CalHFA Contract that is being rejected, since such "originating" portion

---

[3] CalHFA acknowledges that certain pre-petition amounts due have been paid by the Debtors.
[4] CalHFA expressly reserved the right to amend the Claims.

was never assumed by the Debtors either in the Plan or in other pleadings.

17.    With regard to the current amounts due, CalHFA also has a valid administrative claim against the Debtors' estate for all post-petition operations under the CalHFA Contract in an amount not less than $1,380,753.26. CalHFA has continued to perform under the CalHFA Contract post-petition and is entitled to its expenses pursuant to 11 U.S.C. § 503(b) ("After notice and a hearing, there shall be allowed administrative expenses…including-(1)(A) the actual, necessary costs and expenses of preserving the estate…"); see also *In re Globe Metallurgical, Inc.*, 312 B.R. 34, 38-39 (Bankr. S.D.N.Y. 2004) ("To determine the effect of the rejection of an executory contract, this Court must start with *subsection (g) of section 365* which provides that except as provided in subsection (h) and (i) of the same section, a rejection of an executory contract of the debtor constitutes a breach of such contract immediately prior top (sic) the filing of the petition for the relief. *11 U.S.C. § 365*. Although, the right of assumption or rejection exists, when a debtor makes use of the subject of the executory contract prior to its rejection, the parties to the executory contract may be entitled to an administrative claim pursuant to *11 U.S.C. 503*."); see also *In re Child World, Inc.*, 147 B.R. 847, 852 (Bankr. S.D.N.Y. 1992) ("Rejection is not the equivalent of rescission because rejection under *11 U.S.C. § 365(a)* simply means that the court will permit the debtor to breach the contract, with the result that the contractual obligations will be reduced to general unsecured claims for prepetition damages pursuant to *11 U.S.C. § 365 (g)(1)*…[citations omitted]…An exception to the prepetition status of the claims arises if the claim relates to a post-petition actual and necessary expense of administration, as expressed in *11 U.S.C. § 503(b)(1)*.").

18.    CalHFA intends to file an administrative claim prior to the administrative claim deadline set pursuant to the Plan, unless the assumption and assignment issues discussed herein are resolved by the parties prior to that deadline.

19.    The Omnibus Objection seeks to disallow and expunge the claims listed in the objection on the basis that such claims are not valid and enforceable because such claims are for cure obligations related to contracts that were assumed by the Debtors and assigned to Ocwen. The Debtors state that the Debtors cured, or provided adequate assurance of cure, for all such claims. As discussed above, that is not correct as to the CalHFA Claims. Issues regarding the assumption and

assignment of the CalHFA Contract to Ocwen, as well as the proper cure amount, still exist and are currently being negotiated. Accordingly, such claims have not been assumed and assigned, and cure has not been provided. In addition, CalHFA likely will have to amend its Claims to include contract rejection damages, and/or will have to file an administrative claim in the case related to the CalHFA Contract if the assumption and assignment issues are not resolved.

## CONCLUSION

Because of all of the above, the disallowance and expungement of the CalHFA Claims is improper and/or premature. CalHFA respectfully requests that the Court overrule the Debtors' Omnibus Objection with respect to the CalHFA Claims.

Dated:  January 2, 2014

                          FELDERSTEIN FITZGERALD
                          WILLOUGHBY & PASCUZZI LLP

                          */s/ Paul J. Pascuzzi*
                          Paul J. Pascuzzi (Pro Hac Vice)
                          400 Capitol Mall, Suite 1750
                          Sacramento, CA  95814
                          Telephone:  (916) 329-7400
                          Facsimile:  (916) 329-7435
                          Email:  ppascuzzi@ffwplaw.com

                          *Attorneys for*
                          *California Housing Finance Agency*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of January 2014, a copy of the foregoing **OPPOSITION OF CALIFORNIA HOUSING FINANCE AGENCY TO DEBTORS' FIFTY-FIFTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY - ASSIGNED CONTRACT CLAIMS)** was sent to those receiving documents via the CM/ECF system and sent by first class mail, postage prepaid, to:

*Debtor's Counsel*

Gary S. Lee, Norman S. Rosenbaum, and
Jordan A. Wishnew
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY  10104

*Office of U.S. Trustee for the Southern District of New York*

Tracy Hope Davis, Linda A. Riffkin, and Brian S. Masumoto
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY  10014

*Office of the United States Attorney General*

US Attorney General, Eric H. Holder, Jr.
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC  20530-0001

*Office of the New York State Attorney General*

Nancy Lord, and Enid N. Stuart
The Capitol
Albany, NY  12224-0341

*Ally Financial Inc.*

Richard M. Cieri and Ray Schrock
Kirkland & Ellis LLP
153 East 53rd Street
New York, NY  10022

*Office of the U.S. Attorney for the Southern District of New York*

Joseph N. Cordaro, Esq.
One St. Andrews Plaza
New York, NY  10007

*Counsel for Official Committee of Unsecured Creditors*

Kenneth Eckstein and Douglas Mannal
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY  10036

*Special Counsel for Official Committee of Unsecured Creditors*

Ronald J. Friedman
SilvermanAcampora LLP
100 Jericho Quadrangle, Suite 300
Jericho, NY  11753

*Berkshire Hathaway Inc.*

Thomas Walper and Seth Goldman
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, CA  90071

*Internal Revenue Service*

P.O. Box 7346
Philadelphia, PA  19101-7346

*Securities and Exchange Commission*

George S. Canellos, Regional Director
New York Regional Office
3 World Financial Center, Suite 400
New York, NY  10281-1022

*Conflicts Counsel to the Debtors*

Steven J. Reisman, Theresa A. Foudy and
Maryann Gallagher
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY  10178-0061

*Ocwen Loan Servicing, LLC*

Jennifer C. DeMarco and Adam Lesman
Clifford Chance US LLP
31 West 52nd Street
New York, NY  10019

　　　　　　　　　　　　　　　*/s/ _Lori N. Lasley_____*
　　　　　　　　　　　　　　　Lori N. Lasley