**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**SUPPLEMENTAL ORDER GRANTING DEBTORS' FIFTIETH OMNIBUS
OBJECTION TO CLAIMS (NO LIABILITY BORROWER CLAIMS – BOOKS AND
RECORDS) WITH RESPECT TO CLAIM NOS. 2292, 2293, 2296, AND 2297 OF
<u>PAMELA D. LONGONI, LACEY LONGONI, AND JEAN M. GAGNON</u>**

Pending before the Court is the *Debtors' Fiftieth Omnibus Objection to Claims (No Liability Borrower Claims – Books and Records)* (the "Objection," ECF Doc. # 5162). Through the Objection, the Debtors seek to disallow and expunge Claim Nos. 2292, 2293, 2296, and 2297, filed by Pamela D. Longoni, Lacey Longoni, and Jean M. Gagnon (collectively, the "Claimants").[1] The Claimants filed a total of eight claims—two claims against each of GMAC Mortgage, LLC ("GMACM"), Executive Trustee Services, LLC ("ETS"), Residential Funding Company, LLC ("RFC"), and Residential Asset Mortgage Products, Inc. ("RAMP"). The Objection relates solely to the claims filed against RFC and RAMP. In support of the Objection, the Debtors attach the Declarations of Deanna Horst (Exhibit 1), Norman S. Rosenbaum (Exhibit 2), and Robert D. Nosek (Exhibit 3). The Claimants filed a response (the "Response," ECF Doc. # 5420). The Debtors filed the *Debtors' Omnibus Reply in Support of Debtors' Fiftieth Omnibus Objection to Claims (No Liability Borrower Claims – Books and Records)* (the "Reply," ECF Doc. # 5736), and the Supplemental Declaration of Deanna Horst in support (the "Suppl. Horst

---

[1] In all of the relevant proceedings, Pamela D. Longoni is acting as natural parent and guardian ad litem of Lacey Longoni.

Decl.," attached as Ex. 3 to Reply). On November 15, 2013, the Court held a hearing and the Claimants did not appear. The Court reserved decision on the Objection.

On November 5, 2012, the Claimants' counsel filed eight proofs of claim—four on behalf of the Longonis and four on behalf of Ms. Gagnon—each asserting a $600,000 general unsecured claim against various Debtors. The stated basis for each of the claims is "Wrongful Foreclosure: Sale of Residential Property see attached complaint." Attached to each of the proofs of claim is a copy of the Claimants' third Amended Complaint (the "Third Amended Complaint," attached as Ex. C-1 to the Suppl. Horst Decl.), filed in Case No. 3:10-cv-00297, in the United States District Court for the District of Nevada, Reno Division (the "District Court Case").

The allegations in the Third Amended Complaint relate to a purported wrongful foreclosure on real property located at 5540 Twin Creeks Drive, Reno, Nevada 89523 (the "Property"). On September 29, 2005, the Claimants refinanced a mortgage loan on the Property and entered into a $432,000 Note and Deed of Trust with EquiFirst Corporation (the "Loan"). (Third Am. Compl. ¶ 25; Suppl. Horst Decl. ¶ 24.) RFC purchased the Loan from EquiFirst Corporation in November of 2005. (*See* Suppl. Horst Decl. ¶ 25.) Pursuant to the Pooling and Servicing Agreement (the "PSA") between RAMP, RFC, and U.S. Bank National Association ("U.S. Bank"), executed on December 1, 2005, the Loan was securitized on December 28, 2005. (*See id*.) On December 28, 2005, RFC and RAMP also entered into an Assignment and Assumption Agreement, which provided for the automatic transfer of ownership of the Loan to a trust, RAMP 2005-EFC7 (the "Trust"). (*Id*.) Ownership of the Loan transferred to the Trust on December 28, 2005, thereby divesting RAMP of any ownership of the Loan. (*Id*.) Pursuant to the PSA, U.S. Bank is the trustee for RAMP 2005-EFC7 and RFC is the master servicer of the

2

Loan. (*Id.*) On May 1, 2007, RFC delegated its servicing rights to GMACM under the terms of the Servicer Guide between RFC and GMACM. (*Id.*)

In 2008, the Claimants fell behind on their mortgage payments and they defaulted on the Loan. (*See id.* ¶ 26; Third Am. Compl. ¶ 27.) GMACM referred the loan to its foreclosure trustee, ETS, who recorded a Notice of Breach and Default and of Election to Cause Sell of Real Property Under Deed of Trust on or about February 26, 2009. ("Notice of Default," attached as Ex. C-4 to Supp. Horst Decl.) The Claimants were subsequently approved for a loan modification by GMACM, and the foreclosure of their home was placed on hold. According to the Debtors, the loan modification was a three month trial repayment plan. But the Claimants contend that no one ever informed them there was any time limit to this temporary plan. (*Id.* ¶ 36.) The Claimants continued to have contact with GMACM, attempting to resolve their loan modification issues. According to the Claimants, however, GMACM directed ETS to complete the foreclosure, "[d]espite repeated written assurances from GMAC that the loan modification had been approved and was permanent, and that GMAC was not going to proceed forward with any foreclosure . . . ." (Response at 3.) The Claimants state that they were never notified of the foreclosure until after the sale of their home.

On or about April 28, 2010, the Claimants filed a lawsuit against GMACM, ETS, and several individual defendants, in the Second Judicial District Court of the State of Nevada in Washoe County. That case was removed to the district court. On September 17, 2010, the Claimants filed an Amended Complaint, and on February 25, 2011, the Claimants filed a second Amended Complaint, adding RFC as a defendant. On September 12, 2011, the Claimants filed the Third Amended Complaint, adding RAMP as a defendant. The Third Amended Complaint asserts claims for (1) wrongful foreclosure (based on Nev. Rev. Stat. §§ 107.080, 107.085,

3

107.086, 107.087, 107.090); (2) violation of NEV. REV. STAT. § 205.372 for making false statements and misrepresentations in connection with a mortgage lending transaction; (3) fraud and misrepresentation; (4) negligence and negligent misrepresentation; (5) breach of contract; (6); intentional infliction of emotional distress; (9) promissory estoppel; and (10) concert of actions.[2]

On May 14, 2012, the Debtors filed for protection under chapter 11 of the Bankruptcy Code. On May 17, 2012, GMACM, ETS, RFC, and RAMP filed a notice of bankruptcy in the District Court Case, and on September 28, 2012, they filed an amended notice of bankruptcy. On September 24, 2013, the District Court Case was administratively closed, pending the conclusion of these bankruptcy cases.

Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim" to claim an interest in a debtor's bankruptcy estate. 11 U.S.C. § 501(a). "The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes prima facie evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)." 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013). Section 502(a) provides that a claim or interest, properly filed, "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272

---

[2] The Third Amended Complaint also lists claims for breach of covenant of quiet enjoyment and for tortious breach of the implied covenant of good faith and fair dealing, but those claims were already dismissed by the district court and were only asserted for preservation on appeal.

4

12-12020-mg    Doc 6258    Filed 01/10/14    Entered 01/10/14 15:46:59    Main Document
    Pg 5 of 9

B.R. 524, 539 (Bankr. S.D.N.Y. 2000). Bankruptcy Code section 502(b)(1) provides that a claim may not be allowed to the extent that "such a claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).

Claims objections have a shifting burden of proof. Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Reilly*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). The objecting party is thereafter required to produce evidence equal in force to that provided by the claimant to rebut the presumption of the claimant's prima facie case. *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) ("In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."). Once this is done, the burden then shifts back to the claimant to produce additional evidence to prove the validity of the claim by a preponderance of the evidence. *Id.* at 174.

The Debtors objected to the Claimants' claims against RFC and RAMP (proofs of claim numbers 2292, 2293, 2296, and 2297) as no liability claims, asserting that RFC and RAMP had no involvement in modification or servicing of the Loan, and submitted the Declarations of Deanna Horst, Norman S. Rosenbaum, and Robert D. Nosek in support. The burden then shifted to the Claimants to produce additional evidence proving the validity of their claims by a preponderance of the evidence. The Court finds that the Claimants failed to satisfy this burden.

As to their claims against RFC, the Claimants assert that those claims are valid because RFC directed the loan modification activities of GMACM, and later the activities of ETS—the entity which foreclosed upon the Claimants' home. The only evidence offered by the Claimants

5

to support this contention is RFC's answers to interrogatories in the District Court Case. According to the Claimants, "[f]rom these sworn discovery responses it is beyond dispute that [RFC] was directing the loan modification and subsequent foreclosure upon the [Claimants'] home." (Response at 5.)

But the Claimants inexplicably rely on the RFC's *unamended* interrogatory responses. (*See* Response, Ex. 3.) Upon a review of RFC's Amended Responses to Plaintiffs' First Set of Interrogatories to Defendant RFC (the "Amended Responses," attached as Ex. C-2 to the Supp. Horst Decl.), however, it is clear that RFC was *not* involved in the loan modification or foreclosure. In the Amended Responses, RFC states as follows:

> The owner of the note is the Trust itself, RAMP 2005-EFC7. RFC was granted servicing rights of the loan at issue pursuant to the Pooling and Servicing Agreement. RFC then delegated those servicing rights to [GMACM], under the terms contained in the Servicer Guide between RFC and GMACM . . . . Consistent with this delegation of authority, RFC had no direct contact or dealings with Plaintiffs relating to their loan, all decisions and contact were handled through RFC's servicer, GMACM.

(Amended Responses at 2.) RFC states further that "GMACM managed communications, modification review processes and foreclosure process subject to the terms and limitations of RFC's delegation of authority. After thorough investigation, it has been determined that no individual at RFC had further contact with GMACM relating to [the Loan]."[3] (*Id*. at 6.) Based on these interrogatories, RFC has established that it was not involved in the loan modification or foreclosure at issue, and the Claimants have failed to show by a preponderance of the evidence that they have a clam against RFC. This finding does not affect in any way the Claimants' claims against GMACM or ETS based on these same facts.

---

[3]  RFC does state that it received $172,500 as payment from the third party purchaser as a result of the foreclosure upon the Property, but also states that it forwarded all of that money to the Trust, consistent with the PSA. (Amended Responses at 7.)

As to their claims against RAMP, the Claimants contend that those claims are valid because RAMP, as the holder of the note and security interest on the Loan, was obligated under controlling Nevada law to participate in a mandatory foreclosure mediation program ("FMP") before foreclosing on the Property, and that RAMP's failure to do so made the foreclosure unlawful under Nevada law. *See* NEV. REV. STAT. § 107.086. To support their contention that RAMP was the holder of the note, the Claimants attach an e-mail communication from RAMP's counsel (the "August 5, 2011 e-mail," attached as Ex. 2 to the Response).

Nevada allows for nonjudicial foreclosure-by-trustee's sale, provided that certain statutory requirements are met. *See Edelstein v. Bank of New York Mellon*, 286 P.3d 249, 254 (Nev. 2012); NEV. REV. STAT. § 107.080. In 2009, the Nevada legislature enacted the FMP in response to increasing foreclosures in the state. *Pasillas v. HSBC Bank USA*, 255 P.3d 1281, 1284 (Nev. 2011). The FMP legislation adds "additional requirements that trustees must meet before proceeding with a nonjudicial foreclosure of owner-occupied housing." *Edelstein*, 286 P.3d at 255.

> The program requires that a trustee seeking to foreclose on an owner-occupied residence provide an election-of-mediation form along with the notice of default and election to sell. If the homeowner elects to mediate, both the homeowner and the deed of trust beneficiary must attend, must mediate in good faith, provide certain enumerated documents, and, if the beneficiary attends through a representative, that person must have authority to modify the loan or have access at all times during the mediation to a person with such authority. After the conclusion of the mediation, the mediator must file a mediator's statement with the program administrator, indicating whether all parties complied with the statute and rules governing the program.

*Pasillas*, 255 P.3d at 1284 (internal quotation marks omitted).

The requirements of the FMP, however, apply in the first instance only to the trustee seeking to foreclose. *See* NEV. REV. STAT. § 107.086(2) ("The trustee shall not exercise a power of sale . . . unless the trustee" complies with statute's requirements, including providing notice of

7

the program to the homeowner.") In this case, the trustee was ETS, not RAMP. (*See* Amended Responses at 2.) Further, based on the record before the Court, it appears that RAMP was neither the holder of the note nor the owner of the Loan. RAMP simply bought the Loan on the open market, and, immediately upon the creation of the PSA, deposited the Loan into the Trust for the benefit of the Trust's certificate holders. Although RAMP itself was a Trust certificate holder, upon the December 2005 deposit of the Loan into the Trust, RAMP divested itself of any ownership of the Loan. (*See* Supp. Horst Decl. ¶ 31.) The Claimants seem to misconstrue the August 5, 2011email, in which RAMP's counsel states:

> The trust into which the loan at issue was deposited by RAMPI is identified as "RAMP 2005 EFC 7." The documentation showing the assignment of the loan passing from RFC to RAMPI is the Assignment and Assumption Agreement (previously produced). The Pooling and Servicing Agreement (previously produced) governs the trust, including without limitation the following: (a) RAMPI's deposit of the loan (among many others) into the trust, including "without recourse assignment of all right, title and interest" in the deposited loans, (b) RAMPI received certificates for the trust in exchange for depositing loans into the trust; and (c) the trustee for "RAMP 2005 EFC 7" is U.S. Bank National Association.

(August 5, 2011 e-mail.) This statement is consistent with RFC's statement that US Bank "operates as the Trustee for the Trust that owns the note. The owner of the note is the Trust itself, RAMP 2005-EFC7." (Amended Responses, at 2.)

Based on these facts, RAMP had no relationship with the Loan at the time of the foreclosure and thus had no obligation to participate in any mediation program under the Nevada statutes. Therefore, the Claimants have failed to put forth evidence to support a claim against RAMP. Again, this finding does not affect in any way the Claimants' claims against GMACM or ETS based on these same facts.[4]

---

[4] The Debtors argue that the claims against RAMP based on NEV. REV. STAT. § 107.086 also fail as a matter of law because the Notice of Default was filed before that statute was enacted. The Court will not address this

8

For all of the foregoing reasons, the Court finds that the Claimants have failed to state a basis for liability on the part of RFC and RAMP. Therefore, the Court **SUSTAINS** the Objection and Claim Nos. 2292, 2293, 2296, and 2297 are hereby **DISALLOWED** and **EXPUNGED** with prejudice; and it is further

**ORDERED** that Kurtzman Carson Consultants LLC, the Debtors' claims and noticing agent, is directed to disallow and expunge Claim Nos. 2292, 2293, 2296, and 2297; and it is further

**ORDERED** that the Debtors are authorized and empowered to take all actions as may be necessary and appropriate to implement the terms of this Order; and it is further

**ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

**IT IS SO ORDERED.**

Dated: January 10, 2014
New York, New York

                                    _____/s/Martin Glenn_____
                                         MARTIN GLENN
                                    United States Bankruptcy Judge

---

argument now because it is not necessary to resolve the Objection and because it could affect the Claimant's claim against ETS, to which the Debtors have not yet objected.