**Hearing Date:  February 20, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline:  February 4, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:     (212) 468-8000
Facsimile:     (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Adam A. Lewis

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------
|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
|  | ) |  |
| Post-Effective Date Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) |  |
-------------------------------------------------------------------

**NOTICE OF THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO**
**PROOFS OF CLAIM FILED BY CAREN WILSON (CLAIM NOS. 4754 AND 7181)**

**PLEASE TAKE NOTICE** that the undersigned have filed the attached *The ResCap Borrower Claims Trust's Objection to Proofs of Claim Filed by Caren Wilson (Claim Nos. 4754 and 7181)* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will take place on **February 20, 2014 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Room 501.

1

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must be

made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy

Rules for the Southern District of New York, and the Notice, Case Management, and

Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed

electronically by registered users of the Bankruptcy Court's electronic case filing system, and be

served, so as to be received no later than **February 4, 2014 at 4:00 p.m. (Prevailing Eastern

Time)**, upon (a) counsel to the Borrower Claims Trust, Morrison & Foerster LLP, 1290 Avenue

of the Americas, New York, NY 10104 (Attention: Gary S. Lee, Norman S. Rosenbaum and

Adam A. Lewis); (b) the Office of the United States Trustee for the Southern District of New

York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014

(Attention: Linda A. Riffkin and Brian S. Masumoto); (c) the Office of the United States

Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC

20530-0001 (Attention: US Attorney General, Eric H. Holder, Jr.); (d)  Office of the New York

State Attorney General, The Capitol, Albany, NY 12224-0341 (Attention: Nancy Lord, Esq. and

Enid N. Stuart, Esq.); (e) Office of the U.S. Attorney for the Southern District of New York, One

St. Andrews Plaza, New York, NY 10007 (Attention: Joseph N. Cordaro, Esq.); (f) counsel for

Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York, NY 10022

(Attention: Richard M. Cieri and Ray Schrock); (g) counsel for the committee of unsecured

creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY

10036 (Attention: Kenneth Eckstein and Douglas Mannal); (h) counsel for Ocwen Loan

Servicing, LLC, Clifford Chance US LLP, 31 West 52nd Street, New York, NY 10019

(Attention: Jennifer C. DeMarco and Adam Lesman); (i) counsel for Berkshire Hathaway Inc.,

Munger, Tolles & Olson LLP, 355 South Grand Avenue, Los Angeles, CA 90071 (Attention:

Thomas Walper and Seth Goldman); (j) Internal Revenue Service, P.O. Box 7346, Philadelphia,

PA 19101-7346 (if by overnight mail, to 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia,

PA 19104-5016); and (k) Securities and Exchange Commission, New York Regional Office, 3

World Financial Center, Suite 400, New York, NY 10281-1022 (Attention: George S. Canellos,

Regional Director).

       **PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written

objection to the relief requested in the Motion, the Bankruptcy Court may deem any opposition

waived, treat the Motion as conceded, and enter an order granting the relief requested in the

Motion without further notice or hearing.

Dated: January 14, 2014

                    /s/ Norman S. Rosenbaum
                    Gary S. Lee
                    Norman S. Rosenbaum
                    Adam A. Lewis
                    MORRISON & FOERSTER LLP
                    1290 Avenue of the Americas
                    New York, New York 10104
                    Telephone: (212) 468-8000
                    Facsimile: (212) 468-7900

                    *Counsel to the ResCap Borrower Claims Trust*

3

**Hearing Date: February 20, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline: February 4, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:     (212) 468-8000
Facsimile:     (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Adam A. Lewis

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Chapter 11 |
| Post-Effective Date Debtors. | Jointly Administered |

**THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO PROOFS OF CLAIM**
**<u>FILED BY CAREN WILSON (CLAIM NOS. 4754 AND 7181)</u>**

# TABLE OF CONTENTS

**Page**

JURISDICTION, VENUE AND STATUTORY PREDICATE ................................................... 2

PRELIMINARY STATEMENT ............................................................................................. 2

BACKGROUND ................................................................................................................... 4

    A.    The Chapter 11 Cases ............................................................................... 4

    B.    The Loan & Foreclosure ............................................................................ 6

    C.    Prepetition Litigation ................................................................................ 6

    D.    Ms. Wilson's Proofs of Claim ................................................................... 8

RELIEF REQUESTED ........................................................................................................ 10

OBJECTION ...................................................................................................................... 10

    A.    Applicable Legal Standards ..................................................................... 10

I.    THE WILSON CLAIM AND PURPORTED AMENDED WILSON CLAIM
ARE BARRED BY THE DOCTRINE OF RES JUDICATA ....................................... 14

    A.    The Doctrine of Res Judicata .................................................................. 14

II.    THE PURPORTED AMENDED WILSON CLAIM IS AN INVALID LATE-
FILED CLAIM .......................................................................................................... 17

    A.    The Purported Amended Wilson Claim Must be Disallowed Regardless of
Whether it is Timely ................................................................................ 19

III.    THE WILSON CLAIM AND PURPORTED AMENDED WILSON CLAIM
ARE DEFICIENTLY PLEAD ..................................................................................... 20

    A.    The Purported Amended Wilson Claim Fails to State a RICO Claim ................ 20

    B.    The Wilson Claim and Purported Amended Wilson Claim Fail to State a
Claim for Fraud under Federal Rule 9(b) ................................................. 21

NOTICE ............................................................................................................................. 22

CONCLUSION ................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aliff v. Joy Mfg. Co.*,
   914 F.2d 39 (4th Cir. 1990) ..........................................................................15, 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................12

*Catholic Health Care W. v. US Foodservice, Inc. (In re US Foodservice Pricing Litig.)*,
   729 F.3d 108 (2d Cir. 2013)...............................................................................20

*Chaudhary v. Stevens*,
   No. Civ.A. 3:05CV382, 2005 WL 1923231 (E.D. Va. Aug. 9, 2005) *aff'd*, 182 Fed.
   Appx. 204 (4th Cir. 2006) ..................................................................................15

*Enzo Therapeutics, Inc. v. Yeda Res. and Dev. Co.*,
   467 F. Supp. 2d 579 (E.D. Va. 2006) .................................................................15

*Federated Dep't Stores, Inc. v. Moitie*,
   452 U.S. 394 (1981)...........................................................................................15

*Fernandez v. Supreme Ct. of Ill.*,
   2002 WL 1008468 (N.D. Ill. May 17, 2002) ......................................................13

*Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.)*,
   398 B.R. 736 (Bankr. S.D.N.Y. 2008)................................................................12

*Forman v. Salazano (In re Norvergence, Inc.)*,
   405 B.R. 709 (Bankr. D.N.J. 2009) ....................................................................13

*GJR Invs., Inc. v. Cnty. Of Escambia, Fla.*,
   132 F.3d 1359 (11th Cir. 1998) ..........................................................................13

*Gonzalez v. Asset Acceptance, LLC*,
   308 F. Appx. 429 (11th Cir. 2009).....................................................................13

*In re Asia Global Crossing, Ltd.*,
   324 B.R. 503 (Bankr. S.D.N.Y. 2005)................................................................18

*In re Barquet Grp. Inc.*,
   477 B.R. 454 (Bankr. S.D.N.Y. 2012)...........................................................18, 19

*In re DJK Residential LLC*,
        416 B.R. 100 (Bankr. S.D.N.Y. 2009) .................................................................11

*In re Enron Creditors Recovery Corp.*,
        370 B.R. 90 (Bankr. S.D.N.Y. 2007) .......................................................17, 18, 19

*In re Hess*,
        404 B.R. 747 (Bankr. S.D.N.Y. 2009) ...............................................................11

*In re Keen Corp.*,
        188 B.R. 903 (Bankr. S.D.N.Y. 1995) ...............................................................18

*In McLean Indus., Inc.*,
        121 B.R. 704 (Bankr. S.D.N.Y. 1990) ...............................................................18

*In re MF Global Holdings, Ltd.*,
        Nos. 11-15059 (MG), 11-02790 (MG) (SIPA), 2012 WL 5499847 (Bankr. S.D.N.Y.
        Nov. 13, 2012) ...............................................................................................10

*In re Oneida Ltd.*,
        400 B.R. 384 (Bankr. S.D.N.Y. 2009) ...............................................................11

*In re Rockefeller Ctr. Props.*,
        272 B.R. 529 (Bankr. S.D.N.Y. 2000), *aff'd*, 46 Fed. Appx. 40 (2d Cir. 2002)...............11, 12

*In re Smith*,
        No. 12-10142, 2013 WL 665991 (Bankr. D. Vt. Feb. 22, 2013)...........................................10

*In re W.R. Grace & Co.*,
        346 B.R. 672 (Bankr. D. Del. 2006) ...................................................................11

*Integrated Res., Inc. v. Ameritrust Co. Nat'l Ass'n (In re Integrated Res., Inc.)*,
        157 B.R. 66 (S.D.N.Y. 1993)...............................................................................18, 19

*Labes v. Ocwen Loan Servicing., Inc.*,
        2009 WL 3748291 (E.D. Cal. Nov. 5, 2009).............................................................3

*Laurel Sand & Gravel, Inc. v. Wilson*,
        519 F.3d 156 (4th Cir. 2008) .............................................................................16

*McMahon v. Hunter*,
        2007 WL 1952906 (M.D. Fla. July 2, 2007) ..........................................................13

*Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*,
        419 F.3d 115 (2d Cir. 2005)...............................................................................18, 19

*Montana v. United States*,
        440 U.S. 147 (1979).........................................................................................15

iii

*Mott v. Fuhrman*,
　　2010 WL 3385338 (N.D. Fla. Aug. 23, 2010).........................................................................13

*Ohio Valley Envtl. Coalition v. Aracoma Coal Co.*,
　　556 F.3d 177 (4th Cir. 2009).................................................................................................16

*Peck v. Merletti*,
　　64 F. Supp. 2d 599 (E.D. Va. 1999)......................................................................................13

*Pittston Co. v. United States*,
　　199 F.3d 694 (4th Cir. 1999).................................................................................................16

*Regis Techs., Inc. v. Oien* (*In re Oien*),
　　404 B.R. 311 (Bankr. N.D. Ill. 2009)....................................................................................13

*State Water Control Bd. v. Smithfield Foods, Inc.*,
　　542 S.E. 2d 766 (Va. 2001)...............................................................................................14, 15

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*,
　　322 F.3d 1064 (9th Cir. 2003)...............................................................................................16

*Vanston Bondholders Protective Comm. v. Green*,
　　329 U.S. 156 (1946).................................................................................................................11

*Whelan v. Winchester Prod. Co.*,
　　319 F.3d 225 (5th Cir. 2003).................................................................................................20

*Ziemba v. Cascade Int'l, Inc.*,
　　256 F.3d 1194 (11th Cir. 2001).........................................................................................14, 21

STATUTES

11 U.S.C.
　　§ 502.......................................................................................................................2, 4, 10, 11

18 U.S.C. § 1962...............................................................................................................................20

28 U.S.C.
　　§ 157...........................................................................................................................................2
　　§ 1334.........................................................................................................................................2
　　§1408...........................................................................................................................................2
　　§1409...........................................................................................................................................2

OTHER AUTHORITIES

4 COLLIER ON BANKRUPTCY ¶ 502.02[2] (16th ed. rev. 2012)....................................................10

FED. R. BANKR. P.
　　1015.............................................................................................................................................4

3001.................................................................................................................10
3003.................................................................................................................17
3007.........................................................................................................1, 2, 10
7009.................................................................................................................12
9014.................................................................................................................12

FED. R. CIV. P.

8................................................................................................................12, 21
9............................................................................................................12, 14, 21
12...........................................................................................................8, 12, 15
19....................................................................................................................8
41....................................................................................................................8

ny-1113670

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the

terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et*

*al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] (the "Plan")[1] in the

above-captioned Chapter 11 cases (the "Chapter 11 Cases"), hereby submits, on behalf of

Residential Capital, LLC ("ResCap") and its affiliated post-effective date debtors (collectively,

the "Debtors")[2] in the Chapter 11 Cases, this objection (the "Objection") seeking to disallow and

expunge proofs of claim numbers 4754 and 7181 filed against the Debtors by Caren Wilson

("Ms. Wilson"), pursuant to section 502(b) of title 11 of the United States Code

(the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") on the grounds that the claims are without merit and do not include

colorable claims against any of the Debtors.[3]  Accordingly, the Borrower Trust seeks entry of an

order substantially in the form annexed hereto as Exhibit 1 (the "Proposed Order") granting the

requested relief.  In support of the Objection, the Borrower Trust submits the *Declaration of*

*Lauren Graham Delehey, Chief Litigation Counsel for the Liquidating Trust, in Support of the*

*Borrower Claims Trust's Objection to Proofs of Claim Filed by Caren Wilson (Claim Nos. 4754*

*and 7181)* (annexed hereto as Exhibit 2, the "Delehey Declaration") and respectfully represents

as follows:

---

[1]  The Plan was confirmed by order of this Court dated December 11, 2013 [Docket No. 6065] and the Plan's
effective date occurred on December 17, 2013.  The Plan provides for the creation and implementation of the
Borrower Trust.  *See* Plan, Art. IV.F.  The Plan further provides that the Borrower Claims Trustee is deemed the
representative of the Debtors' estates for the purpose of prosecuting objections to claims.  *See* Plan, Art. IV.S.
[2] The names of the Debtors in the Chapter 11 Cases and their respective tax identification numbers are identified on
Exhibit 1 to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of*
*Chapter 11 Petitions and First Day Pleadings* [Docket No. 6].
[3] The Borrower Trust reserves all rights to amend or supplement this Objection.

## JURISDICTION, VENUE AND STATUTORY PREDICATE

1. This Court has jurisdiction over this Objection under 28 U.S.C. § 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief requested herein is section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

## PRELIMINARY STATEMENT

3. Ms. Wilson is a borrower under a loan (the "Loan") evidenced by a note dated December 13, 2006 (the "Note") in favor of Homecomings Financial, LLC ("Homecomings"),[4] which was secured by a deed of trust on property located at 211 W. Chandler Street, Culpepper, Virginia 22701 (the "Property").  *See* Delehey Declaration ¶ 4.

4. On November 14, 2012, Ms. Wilson filed, *pro se,* proof of claim number 4754 against ResCap[5] in the amount of approximately $5 million (the "Wilson Claim").  Although it is not clearly so on its face, based on a review of the documents attached to the Wilson Claim, the Borrower Trust believes that the Wilson Claim relates to litigation commenced by Ms. Wilson, against certain of the Debtors and non-debtors, including GMAC Mortgage, LLC ("GMACM"), Homecomings, Deutsche Bank Trust America, Inc., RALI 2007 QSI, Mortgage Electronic Registration System, Inc. and ETS of Virginia, Inc. (collectively, the "Defendants"), in connection with the foreclosure of her home.  *See id.* ¶ 12.

---

[4] The Note was endorsed from Homecomings to Debtor Residential Funding Company, LLC ("Residential Funding"), and then from Residential Funding to Deutsche Bank Trust Company America as Trustee.  *See* Delehey Declaration ¶ 4 fn.2.

[5] The face of the Wilson Claim states that it is asserted against ResCap.  The Wilson Claim also includes a notation to "See Exhibit A."  Exhibit A is a list of all of the Debtors.  There are handwritten numbers next to various Debtor entities.  The Borrower Trust reserves the right to object to the Wilson Claim on the basis that it was filed against the wrong Debtor entity.

2

5.      On August 29, 2013, the Debtors filed the *Debtors' Thirtieth Omnibus Objection to Claims* (*No Liability Borrower Claims – Books and Records*) [Docket No. 4887] (the "Thirtieth Omnibus Objection").  The Thirtieth Omnibus Objection included an objection to the Wilson Claim.

6.      On September 23, 2013, claim number 7181 was filed on behalf of Ms. Wilson, by her former[6] counsel Wendy Alison Nora ("Nora") purporting to "amend" the Wilson Claim (the "Purported Amended Wilson Claim" and, together with the Wilson Claim, the "Wilson Claims").  The Purported Amended Wilson Claim asserts an unsecured claim in the amount of $4,150,000 and a secured claim in the amount of $350,000.  As discussed below, the Purported Amended Wilson Claim is inadequate and fails to articulate how it relates to the Wilson Claim or purports to "amend" it.

7.      On September 27, 2013, Ms. Wilson, who at that time was represented by Nora, filed her *Response to Objection to Claim #4754 in the Record of Kurtzman Carson Consultants, LLC (KCC LLC) of Caren Wilson Amended as Claim 18 in These Proceedings* [Docket No. 5222] (the "Wilson Response").  The Wilson Response contends that the Thirtieth Omnibus Objection as it pertains to the Wilson Claim is moot because the Purported Amended Wilson Claim amended the Wilson Claim.  *See* Wilson Response ¶ 24.[7]  The Wilson Response does not address the Debtors' bases for objecting to the Wilson Claim at all.  Instead, apart from noting the filing of the Purported Amended Wilson Claim and asserting that the Thirtieth Omnibus Objection was moot as to the Wilson Claim, the Wilson Response is a lengthy and irrelevant broadside regarding an alleged plot by Ally Financial Inc., the Debtors, and the Court to deny

---

[6] On September 10, 2013, Nora filed a *Notice of Appearance for Caren Wilson (Claim Number 4754)* [Docket No. 5012].  On November 14, 2013, Nora's appearance as counsel for Ms. Wilson was withdrawn.  [Docket No. 5754].
[7] There are two paragraph 24s in the Wilson Response.  The relevant paragraph 24 is found at page 15.

homeowners by unconstitutional means, the opportunity to attack an alleged fraudulent scheme

by the Debtors and others to cheat them.

8.      On October 7, 2013, the Debtors filed the *Debtors' Omnibus Reply in Support of*

*Debtors' Thirtieth Omnibus Objection to Claims (No Liability Borrower Claims – Books and*

*Records)* [Docket No. 5297] (the "Thirtieth Reply").  By the Thirtieth Reply, the Debtors

advised the Court that in light of the filing of the Purported Amended Wilson Claim, the Debtors

intended to file an amended objection to further address both the Wilson Claim and the

Purported Amended Wilson Claim.

9.      For the reasons set forth below, the Wilson Claim should be disallowed and

expunged pursuant to Bankruptcy Code section 502(b) because the claims upon which it is based

are barred by the doctrine of *res judicata*.  The Purported Amended Wilson Claim should be

disallowed and expunged because to the extent it, too, is not barred by *res judicata*, it is late

filed.  Moreover, neither the Wilson Claim nor the Purported Amended Wilson Claim is

adequately pled.

## **BACKGROUND**

### A.      **The Chapter 11 Cases**

10.      On May 14, 2012, each of the Debtors filed a voluntary petition in this Court for

relief under Chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases are being jointly

administered pursuant to Bankruptcy Rule 1015(b).

11.      On May 16, 2012, the United States Trustee for the Southern District of New

York appointed a nine-member official committee of unsecured creditors [Docket No. 102].

12.      On July 17, 2012, the Court entered an order [Docket No. 798] appointing

Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11

Cases.  Among other things, KCC is authorized to (a) receive, maintain, and record and

otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain an official claims register for the Debtors.

13.    On August 29, 2012, this Court entered an order approving the Debtors' motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No. 1309] (the "Bar Date Order").[8]

14.    On March 21, 2013, the Court entered an order approving procedures for the filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket No. 3294] (the "Procedures Order"), which approved certain procedures to be applied in connection with objections to claims filed by current or former borrowers (collectively, the "Borrower Claims," and the procedures relating thereto, the "Borrower Claim Procedures"). Based on substantial input from the Creditors' Committee and Special Counsel to the Creditors' Committee for Borrower Issues ("Special Counsel"), the Procedures Order includes specific protections for borrowers and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims. For example, the Borrower Claim Procedures require that, prior to objecting to certain categories of Borrower Claims, the Debtors must furnish the individual borrower with a letter, with notice to Special Counsel, requesting additional documentation in support of the purported claim (the "Request Letter"). *See* Procedures Order at 4.

15.    On June 21, 2013, the Debtors sent a Request Letter to Ms. Wilson. *See* Delehey Declaration ¶ 12 fn.5. Ms. Wilson did not respond to the Request Letter. *Id.*

---

[8] The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribing the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "Governmental Bar Date"). (Bar Date Order ¶¶ 2, 3). On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093]. The Governmental Bar Date was **not** extended. To date, approximately 7,300 proofs of claim have been filed in these Chapter 11 Cases as reflected on the Debtors' claims register.

B.      **The Loan & Foreclosure**

16.     On December 13, 2006, Ms. Wilson obtained a home mortgage loan (the "<u>Loan</u>")

from Homecomings and executed the Note and deed of trust (the "<u>DOT</u>") on the Property.

17.     The Property was subject to four prior foreclosure referrals (occurring on

December 10, 2008, January 29, 2010, May 20, 2010 and October 26, 2010) before the

foreclosure proceeding in which the Property was eventually sold.  The first four foreclosures

were vacated for different reasons, including the negotiation of a repayment plan, a foreclosure

being opened in error and Ms. Wilson's bankruptcy filing.  *See* Delehey Declaration ¶ 5.  The

final foreclosure referral occurred on February 11, 2012.  *See id*. The Property was sold to a third

party at foreclosure on October 4, 2012.  *See id*.

C.      **Prepetition Litigation**

1.      **The First State Action**

18.     On April 18, 2011, Ms. Wilson filed an emergency motion in the Culpepper

County Circuit Court, Virginia, Case No. CL11000304-00 (the "<u>First State Action</u>") against the

Defendants, seeking to cancel an impending foreclosure involving the Property.  *See* Wilson

Letter (defined below). Two days later, on April 20, 2011, Ms. Wilson filed a complaint in the

First State Action.  *See* id.  On November 8, 2011, Judge John. G. Berry, assigned to preside

over the First State Action, issued a letter (the "<u>Wilson Letter</u>") to the parties to the First State

Action requesting that Ms. Wilson file an amended complaint so as to comply with pleading

standards.  A copy of the Wilson Letter is attached to the Delehey Declaration as Exhibit A.

19.     On November 28, 2011, Ms. Wilson filed an Amendment and Complaint to Quiet

Title (the "<u>Amended Wilson Complaint</u>") against the Defendants in the First State Action

seeking to quiet title in connection with the Property and to rectify alleged improprieties such as

fraud and deceit that supposedly occurred in connection with the origination of the Loan.  The

Amended Wilson Complaint is attached to the Delehey Declaration as Exhibit B.  As described

further below, Ms. Wilson filed the Amended Wilson Complaint *after* the District Court (defined

below) dismissed her complaint with prejudice in the Federal Action (defined below).

### 2.    The Second State Action (the Federal Action)

20.    During the pendency of the First State Action, on or around August 4, 2011, Ms.

Wilson filed a complaint (the "Second Wilson Complaint") against the Defendants in the

Culpepper County Circuit Court, Virginia, Case No. 2011-L-578 (the "Second State Action"),

alleging fraud, wrongful foreclosure, breach of contract, breach of implied covenant of good

faith and fair dealing, unjust enrichment, action to quiet title and slander of title arising out of the

origination of the Note and DOT (on which Ms. Wilson had defaulted leading to foreclosure

proceedings and her attempt to stem the foreclosure in the First State Action).  The Second

Wilson Complaint is attached to the Delehey Declaration as Exhibit C.  Though longer than the

Amended Complaint in the First State Action, the Second Wilson Complaint reiterates

essentially the same kinds of allegations contained within the Amended Wilson Complaint about

fraudulent, deceitful and improper origination of the Loan.  The Second Wilson Complaint

includes a copy of the purported report[9] of an "expert" making various factual assumptions and

legal arguments, and expressing an opinion that there were, indeed, actionable improprieties in

the origination of the Loan.  The relation between the Amended Wilson Complaint in the First

State Action and the Second Wilson Complaint in the Second State Action, as arising from the

same underlying nucleus of alleged facts, is clear.

21.    On September 15, 2011, the Defendants removed the Second State Action to the

United States District Court for the Western District of Virginia (the "District Court"),

---

[9] Ms. Wilson attached a copy of this report to the Wilson Claim.

Charlottesville Division Case No. 3:11-cv-00057 (the "Federal Action"). *See* Delehey

Declaration ¶ 9. On September 16, 2011, the Defendants in the Federal Action, including

Debtors Homecomings and GMACM, filed a motion to dismiss for failure to state a claim

pursuant to Federal Rule of Civil Procedure 12(b)(6). *See id.* Ms. Wilson failed to file a

memorandum or other pleading in opposition to the motion to dismiss. *See id.* On October 26,

2011, the District Court entered a Final Order (the "Dismissal Order") dismissing the Federal

Action pursuant to Federal Rule of Civil Procedure 41(b), which is an "adjudication on the

merits." Fed. R. Civ. P. 41.[10] The Dismissal Order is attached to the Delehey Declaration as

Exhibit D. Ms. Wilson did not appeal the Dismissal Order. *See* Delehey Declaration ¶ 9.

22.     As noted above, Ms. Wilson filed the Amended Wilson Complaint in the First

State Action after the court entered the Dismissal Order in the Federal Action on October 26,

2011. On December 16, 2011, the Debtors filed a motion to dismiss (the "Motion to Dismiss")

the Amended Wilson Complaint in the First State Action on that grounds that it was barred by

the doctrine of *res judicata* by virtue of the Dismissal Order. *See id* ¶ 10.

23.     On February 28, 2012, prior to any ruling on the Motion to Dismiss, the court in

the First State Action nonsuited the case as a dismissal without prejudice at Ms. Wilson's

request. The nonsuit order is attached to the Delehey Declaration as Exhibit E.

### D.    Ms. Wilson's Proofs of Claim

24.     As discussed above, on November 14, 2012, Ms. Wilson filed the Wilson Claim

*pro se.* In Box 2 (on the face of the proof of claim), Ms. Wilson asserted as the basis for the

Wilson Claim: "My note was sold as unregistered and unregulated to an investor as a bond."

---

[10] Federal Rule of Civil Procedure 41(b) states "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits."

Attached to the Wilson Claim is a copy of Ms. Wilson's birth certificate, the purported forensic

securitization analysis report by Ms. Wilson's alleged "expert" that was attached to the Amended

Wilson Complaint and the Second Wilson Complaint, the DOT and the Note.  Based on the

documentation attached to the Wilson Claim, the Debtors assert that the Wilson Claim, too, is

based on the underlying nucleus of facts that were the subject of the Amended Wilson Complaint

in the First State Action and the Second Wilson Complaint in the Second State Action/Federal

Action.

25.    On August 29, 2013, the Debtors objected to the Wilson Claim on the basis that

the underlying claims had been adjudicated in both the First State Action and the Federal Action.

26.    On September 23, 2013, almost a month after the Debtors objected to the Wilson

Claim and nearly a year after she filed the Wilson Claim, Ms. Wilson, represented by counsel,

filed the Purported Amended Wilson Claim.  Box 2 (on the face of the Purported Amended

Wilson Claim) states as the basis for the claims "disgorgement of profits from sale of note,

RICO, fraud, etc.  Does not include post-petition civil rights claims v. Ocwen and state actors for

which Ally Financial Inc. [a non-Debtor] may be liable."  There is neither a description of the

factual basis for these alleged claims, nor any attachment that might shed light on them.  By the

same token, the Purported Amended Wilson Claim also does not discuss how, if at all, it relates

to the Wilson Claim.[11]

27.    On September 27, 2013, Ms. Wilson filed the Wilson Response.  There, Ms.

Wilson states that the Debtors' objection to the Wilson Claim is moot because the Purported

Amended Wilson Claim amended the Wilson Claim.  Moreover, as noted earlier, the Wilson

---

[11] The Wilson Response states "Upon consultation with counsel, Ms. Wilson has amended her Proof of Claim 4754,
filed with the private database operated by KCC, LLC and Proof of Claim 4754 is no longer pending before the
Court.  It has been replaced with Proof of Claim 18, which amends the previously filed claim, except that it
incorporates the documentation attached to Proof of Claim 4574 [sic] by reference thereto."  Wilson Response ¶ 23.

Response fails altogether to address *any* of the arguments made by the Debtors in the Thirtieth

Omnibus Objection and instead, as described more fully below, it claims that the Court and the

debtors have denied Ms. Wilson due process with respect to the Debtors' objection to the Wilson

Claim for various reasons and then launches into a long, irrelevant indictment of the Debtors and

the Court as being guilty of essaying to deny homeowners their "day in court" to make their

claims against the alleged fraudulent schemes of the Debtors and others.

## RELIEF REQUESTED

28.    The Borrower Trust files this Objection pursuant to section 502(b) of the

Bankruptcy Code and Bankruptcy Rule 3007(a), seeking to disallow and expunge the Wilson

Claims in their entirety.

## OBJECTION

### A.    Applicable Legal Standards

29.    A filed proof of claim is "deemed allowed, unless a party in interest . . . objects."

11 U.S.C. § 502(a).  A properly completed proof of claim is *prima facie* evidence of the validity

and amount of a claim.  *See* FED. R. BANKR. P. 3001(f).  A party in interest may object to a proof

of claim, and once an objection is made, the court must determine whether the objection is well

founded.  *See* 4 COLLIER ON BANKRUPTCY ¶ 502.02[2] (16th ed. rev. 2012).

30.    Although Bankruptcy Rule 3001(f) establishes the initial evidentiary effect of a

filed claim, the burden of proof "[r]ests on different parties at different times."  *In re Smith*,

No. 12-10142, 2013 WL 665991, at *6 (Bankr. D. Vt. Feb. 22, 2013) (citation omitted).  The

party objecting to the proof of claim "bears the initial burden of providing evidence to show that

the proof of claim should not be allowed."  *In re MF Global Holdings, Ltd.*, Nos. 11-15059

(MG), 11-02790 (MG) (SIPA), 2012 WL 5499847, at * 3 (Bankr. S.D.N.Y. Nov. 13, 2012).  If

the objecting party satisfies its initial burden and "the presumption of *prima facie* validity is

overcome—*e.g.*, the objecting party establishes that the proof of claim lacks a sound legal

basis—the burden shifts to the claimant to support its proof of claim unless the claimant would

not bear that burden outside of bankruptcy." *Id.* (citing *In re Oneida Ltd.*, 400 B.R. 384, 389

(Bankr. S.D.N.Y. 2009) ("A proof of claim is prima facie evidence of the validity and amount of

a claim, and the objector bears the initial burden of persuasion. The burden then shifts to the

claimant if the objector produces evidence equal in force to the prima facie case . . . which, if

believed, would refute at least one of the allegations that is essential to the claim's legal

sufficiency.")). Once the burden is shifted back to the claimant, "it must prove its claim by a

preponderance of the evidence." *Id.* (citations omitted).

31.    Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim

may not be allowed to the extent that "such claim is unenforceable against the debtor and

property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Whether

a claim is allowable "generally is determined by applicable nonbankruptcy law." *In re W.R.*

*Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006). "What claims of creditors are valid and

subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in

the absence of overruling federal law, is to be determined by reference to state law." *In re Hess*,

404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009) (quoting *Vanston Bondholders Protective Comm. v.*

*Green*, 329 U.S. 156, 161 (1946)).

32.    Several courts, including those in this district, have applied the federal pleadings

standards when assessing the validity of a proof of claim. *See In re DJK Residential LLC*, 416

B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in

connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set

forth in the Federal Rules of Civil Procedure.") (citing *In re Rockefeller Ctr. Props.*, 272 B.R.

529, 542, n.17 (Bankr. S.D.N.Y. 2000), aff'd sub nom., *NBC v. Rockefeller Ctr. Props.* (*In re*

*Rockefeller Ctr. Props.*), 226 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed. Appx. 40 (2d Cir. 2002));

*Flake v. Alper Holdings USA, Inc.* (*In re Alper Holdings USA, Inc.*), 398 B.R. 736, 748 (Bankr.

S.D.N.Y. 2008) ("The documents attached to the proofs of claim should be treated, for purposes

of a motion to disallow claims, like documents that are attached to or relied upon in a complaint

are treated on a Rule 12(b)(6) [of the Federal Rules of Civil Procedure ("Rule 12(b)(6)")] motion

to dismiss . . . .") (citation omitted).  Indeed, Rule 9(b) of the Federal Rules of Civil Procedure

("Rule 9(b)") expressly applies in contested matters such as claim objections via Bankruptcy

Rule 9014(c)'s importation of Bankruptcy Rule 7009.

33.      Accordingly, the adequacy of the Wilson Claim and Purported Amended Wilson

Claim, which are purportedly based on the assertions made in the Amended Wilson Complaint,

should be judged by Rules 8(a)(2) ("Rule 8(a)(2)"), 9(b) and 12(b)(6) of the Federal Rules of

Civil Procedure.

34.      Under Rule 8(a)(2), a "pleading that states a claim for relief must contain

. . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

Civ. P. 8(a)(2).  Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  It is

insufficient for a complaint to simply "le[ave] open the possibility that a plaintiff might later

establish some 'set of undisclosed facts' to support recovery."  *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 561 (2007).  Rather, it must plead sufficient facts "to provide the 'grounds' of his

'entitle[ment] to relief,' [which] requires more than labels and conclusions, and [for which] a

formulaic recitation of the elements of a cause of action will not do."  *Id*. at 555 (citation

omitted).  The purpose of Rule 8(a)(2) is to ensure that the complaint "give[s] enough detail to

illuminate the nature of the claims and allow defendants to respond." *Regis Techs., Inc. v. Oien*

(*In re Oien*), 404 B.R. 311, 317 (Bankr. N.D. Ill. 2009) (emphasis added) (citations and internal

quotation marks omitted).  In other words, each defendant must know what he is charged with.

*See, e.g., Forman v. Salazano* (*In re Norvergence, Inc.*), 405 B.R. 709, 736-37 (Bankr. D.N.J.

2009) (complaint's setoff allegations inadequate because, among other things, it did not identify

specific defendants with specific transactions).

35.     While pro se pleadings are construed more liberally, "the Court is not permitted to

serve as a 'de facto counsel' and 'rewrite an otherwise deficient pleading in order to sustain an

action.'" *Gonzalez v. Asset Acceptance, LLC*, 308 F. Appx. 429, 430 (11th Cir. 2009) (citing

*GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)).  Even pro se

plaintiffs are "required to follow the minimum pleading standards set forth in the Federal Rules

of Civil Procedure." *McMahon v. Hunter*, 2007 WL 1952906, at *6 (M.D. Fla. July 2, 2007)

(citations omitted); *see also Mott v. Fuhrman*, 2010 WL 3385338, at *1 (N.D. Fla. Aug. 23,

2010) ("It cannot be assumed that a [pro se] Plaintiff will prove facts which have not been

alleged.") (citations omitted).

36.     In this regard, a complaint is improperly plead "where there is either a 'lack of a

cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal

theory.'" *Labes v. Ocwen Loan Servicing, Inc.*, 2009 WL 3748291, at *1 (E.D. Cal. Nov. 5,

2009) (citing cases); *Peck v. Merletti*, 64 F. Supp. 2d 599, 602 (E.D. Va. 1999) (dismissing a *pro

se* complaint that contained "hundreds of pages" of  "gibberish or nonsensical rambling");

*Fernandez v. Supreme Ct. of Ill.*, 2002 WL 1008468, at *1 (N.D. Ill. May 17, 2002) (dismissing

complaint that was "unnecessarily lengthy, redundant, and confusing, making it difficult to

determine which alleged wrongdoings, if any, constitute the claimed violations of federal and

state law").

37.     Moreover, under Rule 9(b), for allegations involving fraud, "a party must state

with particularity the circumstances constituting the fraud or mistake."  In *Ziemba v. Cascade*

*Int'l, Inc.*, the Eleventh Circuit reiterated that in order to satisfy the heightened pleading

requirements of Rule 9(b), a cause of action for fraud must set forth the following:

- precisely what statements were made in what documents or oral representations or what omissions were made, and

- the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and

- the content of such statements and the manner in which they misled the plaintiff, and

- what the defendant obtained as a consequence of the fraud.

*See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

38.     The particularity rule serves an important role in fraud actions by alerting

defendants to the 'precise misconduct with which they are charged' and protecting defendants

'against spurious charges of immoral and fraudulent behavior.'"  *Id*. (internal citations omitted).

## I.     THE WILSON CLAIM AND PURPORTED AMENDED WILSON CLAIM ARE BARRED BY THE DOCTRINE OF RES JUDICATA

39.     The Wilson Claim is based on the same allegations that were asserted in both the

Federal Action and in the First State Action.  The Wilson Claim should be disallowed and

expunged because those claims are barred by the doctrine of *res judicata*.

### A.     The Doctrine of *Res Judicata*

40.     The doctrine of *res judicata* precludes the same parties from litigating claims in a

subsequent suit based on the same cause of action if there has been a final judgment on those

claims.  *See State Water Control Bd. v. Smithfield Foods, Inc.*, 542 S.E. 2d 766, 769 (Va. 2001).

12-12020-mg    Doc 6268    Filed 01/14/14    Entered 01/14/14 14:32:19    Main Document
Pg 24 of 31

To establish *res judicata* under federal law, the proponent must establish three elements: (1) a final judgment on the merits; (2) that is between the same parties or their privies; and (3) a subsequent suit based on the same cause of action or same nucleus of operative facts. *See Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 42 (4th Cir. 1990) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)). The claims believed to be asserted by the Wilson Claim: (1) were decided in the Federal Action; (2) are between the same parties as in Ms. Wilson's prior federal litigation, or their privies; and (3) are based on the same cause of action and the same nucleus of operative facts as in the dismissed Federal Action, and based on legal theories that might have been raised in the prior federal litigation. Therefore, all claims brought by Ms. Wilson against the Debtors are barred by the doctrine of *res judicata*.

41.    The District Court's judgment granting the motion to dismiss in the Federal Action "constitutes a [final] judgment on the merits and…triggers claim preclusive and *res judicata* effect." *Enzo Therapeutics, Inc. v. Yeda Res. and Dev. Co.*, 467 F. Supp. 2d 579, 585 (E.D. Va. 2006) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) (dismissal under Fed. R. Civ. P. 12(b)(6) is a determination on the merits)). Ms. Wilson did not appeal the Dismissal Order. *See* Delehey Declaration ¶ 9. In federal practice, final judgments satisfy the requirements for *res judicata*. *See Chaudhary v. Stevens*, No. Civ.A. 3:05CV382, 2005 WL 1923231 (E.D. Va. Aug. 9, 2005) subsequently aff'd, 182 F. App'x 204 (4th Cir. 2006).

42.    The second prong of the *res judicata* doctrine is that the "the same parties or their privies" in the case at bar must have been involved in the prior lawsuit. *Aliff*, 914 F.2d at 42. Privity is determined on a case-by-case basis by examining the relationship and interests of the parties. *State Water Control Bd.*, 542 S.E.2d at 769. The Court must determine whether "a party's interest is so identical with another that representation by one party is representation of

ny-1113670

15

the other's legal right." *Id.*  Here, Ms. Wilson and the Debtors were parties to the prior Federal

Action.  Thus, the second element of *res judicata* is satisfied.

43.     Finally, in considering the third prong of the *res judicata* doctrine, the court "need

not find that the plaintiff in the second suit is proceeding on the same legal theory [she] or [her]

privies advanced in the first suit." *Ohio Valley Envtl. Coalition v. Aracoma Coal Co.,* 556 F.3d

177, 210 (4th Cir. 2009) (emphasis added).   Rather, "if the claim existed at the time of the first

suit and '"might have been offered"' in the same cause of action, then it is barred by *res judicata*

from being brought in a subsequent suit." *Aliff,* 914 F.2d at 43-44.  The test for deciding

"whether causes of action are identical for claim preclusion purposes is whether the claim

presented in the new litigation 'arises out of the same transaction or series of transactions as the

claim resolved by the prior judgment.'" *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th

Cir. 1999) (citation omitted).  "Newly articulated claims based on the same [transactional]

nucleus of facts may still be subject to a res judicata finding if the claims could have been

brought in the earlier action." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning

Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003) (quoted in *Laurel Sand & Gravel, Inc. v. Wilson*,

519 F.3d 156, 161 (4th Cir. 2008)).  As described above, the Wilson Claim is based upon the

same nucleus of facts that were or could have been alleged in the Federal Action (and the First

State Action, for that matter).  Accordingly, the third prong of *res judicata* is satisfied.

44.     With all three elements of *res judicata* satisfied, it follows that the Wilson Claim

should be disallowed and expunged.  Moreover, as discussed below, to the extent that the vague

and insufficiently drafted Purported Amended Wilson Claim makes claims arising out of that

same underlying nucleus of facts, whatever the theories of recovery may be, it is also subject to

*res judicata*.

16

45.     And as set forth below, to the extent that the Purported Amended Wilson Claim intends to state entirely new claims not in any way related to the nucleus of facts underlying the Federal Action, the Wilson Claim and the First State Action, it constitutes a disallowable late-filed proof of claim.

## II.    THE PURPORTED AMENDED WILSON CLAIM IS AN INVALID LATE-FILED CLAIM

46.     In the Wilson Response, Ms. Wilson asserts that the Thirtieth Omnibus Objection, as it applied to the Wilson Claim, was moot because Ms. Wilson filed the Purported Amended Wilson Claim, on September 23, 2013.  The Purported Amended Wilson Claim asserts a secured claim in the amount of $350,000 and an unsecured claim in the amount of $4,150,000.  The Purported Amended Wilson Claim is devoid of facts and is limited to a one-sentence statement of various bare legal theories by name, such as "RICO," ending with an equally uninformative "etc."

47.     To the extent that it is not based on the same underlying nucleus of facts as the Wilson Claim, the Purported Amended Wilson Claim must be disallowed as having been filed late.  And to the extent that it *is* based on the same underlying nucleus of facts, it is barred by the doctrine of *res judicata* (as previously discussed).  Therefore, either way, the Purported Amended Wilson Claim should be disallowed and expunged.

48.     Federal Rule of Bankruptcy Procedure 3003(c)(3) directs a bankruptcy court "to establish a bar date beyond which proofs of claim are disallowed in a chapter 11 case."  *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 94 (Bankr. S.D.N.Y. 2007).  The bar date "is critically important to the administration of a successful chapter 11 case for it is intended to be a mechanism providing the debtor and its creditors with finality."  *Id.* (internal quotations omitted).  Further, a bar date order, such as the one entered in the Chapter 11 Cases in August 2012, is "an

17

integral part of the reorganization process," as it "serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of a successful reorganization. *Enron*, 370 B.R. at 94 (citing *In re Keene Corp.*, 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995) (internal citations omitted)).  Where the bar date has passed, and a creditor seeks to file an amended proof of claim, "the decision to allow the amendment of the claim is committed to the discretion of the bankruptcy judge."  *In re Asia Global Crossing, Ltd.*, 324 B.R. 503, 507 (Bankr. S.D.N.Y. 2005) (internal citations omitted).

49.      In the Second Circuit, courts apply a two-step inquiry when considering whether to allow late and amended proofs of claim.  *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.* (*In re Enron Corp.*), 419 F.3d 115, 133 (2d Cir. 2005); *In re Barquet Grp. Inc.*, 477 B.R. 454, 464 (Bankr. S.D.N.Y. 2012).  First, the court must determine whether there was an "'assertion of a similar claim or demand evidencing an intention to hold the estate liable.'" *Enron*, 419 F.3d at 133 (quoting *Integrated Res., Inc. v. Ameritrust Co. Nat'l Ass'n (In re Integrated Res., Inc.)*, 157 B.R. 66, 70 (S.D.N.Y. 1993)).  A claim relates back to a timely filed claim if it: "1) corrects a defect of form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the original claim."  *Enron*, 419 F.3d at 133 (quoting *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990)).

50.      If the "relation back" inquiry is satisfied, courts then examine whether it would be equitable to allow the amendment.  *Enron*, 419 F.3d at 133; *Integrated*, 157 B.R. at 70.  Courts consider the following five equitable factors in determining whether to allow an amendment:

> (1) undue prejudice to the opposing party; (2) bad faith or dilatory behavior on the part of the claimant; (3) whether other creditors

would receive a windfall were the amendment not allowed; (4)
whether other claimants might be harmed or prejudiced; and (5)
the justification for the inability to file the amended claim at the
time the original claim was filed.

*Integrated*, 157 B.R. at 70 (internal citation omitted); *Enron*, 419 F.3d at 133.  However, "the

critical consideration is whether the opposing party will be unduly prejudiced by the

amendment."  *Enron*, 419 F.3d at 133 (citing *Integrated*, 157 B.R. at 70).

    **A.**    **The Purported Amended Wilson Claim Must be Disallowed Regardless of Whether it is Timely**

    **1.**    **If Timely, The Purported Amended Wilson Claim is Barred by *Res Judicata***

51.    The Purported Amended Wilson Claim was filed nearly a year after the Bar Date

and even longer after the Wilson Claim.  Accordingly, whether it is allowed must be judged by

the two-step test of *Enron*, *Integrated*, and *Barquet*.

52.    The Purported Amended Wilson Claim does not attempt to correct a defect of

form or describe the Wilson Claim with more particularity (indeed, it says even less in substance

than the Wilson Claim).  Thus, to be timely it must relate back to the nucleus of facts that

underlies the Wilson Claim even if it names new theories.  While it is not clear on its face *what*

underlying facts it relies on, it follows inexorably that if the Purported Amended Wilson Claim

*does* depend on the same nucleus of underlying facts as the Wilson Claim, it is barred by *res

judicata* every bit as much as the Wilson Claim.

    **2.**    **In the Alternative, the Purported Amended Wilson Claim is Untimely**

53.    For the Purported Amended Wilson Claim to escape the grip of *res judicata*, Ms.

Wilson necessarily must assert that it does *not* relate to the nucleus of facts underlying the

Wilson Claim.  But according to the first step of the *Enron* test, that means that as an amendment

to the Wilson Claim, the Purported Amended Wilson Claim is untimely and must be disallowed.

ny-1113670

In short, the Purported Amended Wilson Claim must be disallowed, whether by preclusion or as late filed.

## III.    THE WILSON CLAIM AND PURPORED AMENDED WILSON CLAIM ARE DEFICIENTLY PLEAD

### A.    The Purported Amended Wilson Claim Fails to State a RICO Claim

54.    The Purported Amended Wilson Claim asserts "RICO"-based fraud as one of the bases for Ms. Wilson's claim.  The Purported Amended Wilson Claim fails to allege any facts or submit any documents that would support a RICO claim in support of Ms. Wilson's alleged RICO claim.

55.    To establish a claim under the RICO statute, a plaintiff must allege and establish (i) a person who engages in (ii) a pattern of racketeering activity and (iii) connected to the acquisition, establishment, conduct, or control of an enterprise.  See 18 U.S.C. § 1962.  A pattern of racketeering activity can be established by showing two or more predicate criminal acts that are related and amount to or pose a threat of continued criminal activity.  *Id.* Moreover, under RICO, an enterprise (i) consists of a group of persons or entities associating for the common purpose of engaging in a course of conduct and (ii) may be a legal entity or any union or group of individuals associated in fact.  *See Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (citing 18 U.S.C. § 1961(4)).  In addition, a civil RICO plaintiff must allege that it was injured in his business or property "by reason of" a violation of RICO's substantive provisions.  *Memorandum Opinion and Order Sustaining Objection to Proofs of Claim 3852, 3856, and 3860, In re Residential Capital, LLC*, Case No. 12-12020 (Bankr. S.D.N.Y. November 7, 2013) [Docket No. 5620] (quoting *Catholic Health Care W. v. US Foodservice, Inc. (In re US Foodservice Pricing Litig.*), 729 F.3d 108, 117 (2d Cir. 2013)).

56.    But the Purported Amended Wilson Claim fails to state *any* facts, let alone facts that would make out a RICO claim.  And even assuming that the Purported Amended Wilson Claim should be read to import the Wilson Claim and its attachments, it is impossible to tease out the elements of RICO from the Wilson Claim and its attached expert report.  Indeed, the Wilson Claim wholly fails to make a "short and plain statement" of the facts giving rise to a right of relief.  As the Borrower Trust's prior review of applicable pleading law establishes, Federal Rule 8(a)(2) contemplates that the plaintiff advise the defendant what he is charged with; it does not envision leaving it up to the defendant to wrest from a jumble of materials what his misconduct is alleged to have been.

### B.    The Wilson Claim and Purported Amended Wilson Claim Fail to State a Claim for Fraud under Federal Rule 9(b)

57.    Additionally, the Purported Amended Wilson Claim states that it is a claim for "fraud."  Ms. Wilson's claims for fraud should be dismissed because the Purported Amended Wilson Claim fails to satisfy pleading requirements of Rule 9(b), when alleging fraud. Under Rule 9(b), for allegations involving fraud, "a party must state with particularity the circumstances constituting the fraud or mistake."  As noted above, *Ziemba v. Cascade Int'l, Inc.*, declares that to set out a fraud claim a plaintiff's complaint must state:

- precisely what statements were made in what documents or oral representations or what omissions were made, and

- the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and

- the content of such statements and the manner in which they misled the plaintiff, and

- what the defendant obtained as a consequence of the fraud.

The Wilson Claim and the Purported Amended Wilson Claim patently fail to address any of these elements.

ny-1113670

**NOTICE**

58.     The Borrower Trust has provided notice of this Objection in accordance with the

Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141]

and the Procedures Order, approved by this Court on March 21, 2013 [Docket No. 3294].

**CONCLUSION**

WHEREFORE, the Borrower Trust respectfully requests entry of the Proposed

Order granting the relief requested herein and such other and further relief as the Court may

deem proper.

Dated: January 14, 2014                    /s/ Norman S. Rosenbaum
                                           Gary S. Lee
                                           Norman S. Rosenbaum
                                           Adam A. Lewis
                                           MORRISON & FOERSTER LLP
                                           1290 Avenue of the Americas
                                           New York, New York 10104
                                           Telephone: (212) 468-8000
                                           Facsimile: (212) 468-7900

                                           *Counsel to the ResCap Borrower Claims
                                           Trust*