# Exhibit B

Caren Jean Wilson
211 West Chandler Street
Culpeper, Virginia
*Privatus Attornatus*

# SUPERIOR COURT OF CULPEPER COUNTY

| | |
|---|---|
| Caren Jean Wilson ) | |
| Plaintiff, ) | Case No.: CL11000304-00 |
| vs. ) | |
| GMAC MORTGAGE LLC, ) | AMENDMENT AND COMPLAINT TO QUIET TITLE |
| HOMECOMINGS FINANCIAL LLC, ) | |
| DEUTSCHE BANK TRUST AMERICA INC, ) | |
| RALI 2007 QSI, ) | |
| ETS OF VIRGINIA, ) | |
| MORTGAGE ELECTRONIC ) | |
| REGISTRATION SYSTEMS, INC, ) | |
| JOHN AND JANE DOES, ) | |
| ET, AL, ) | |
| Defendants ) | |

## COMPLAINT TO QUITE TITLE

1. Caren Jean Wilson (hereinafter "Plaintiff") is one of the people of Virginia, and in this court of record brings this amended complaint to the Defendants listed above through their counsel William W. Tunner, Esq. of Thompson McMullan PC, pursuant to the Court Order on 11/09/2011, and allege to wit:

2. This is an action to Quiet Title to real property owned by Plaintiff and located at 211 West Chandler, Culpeper, Culpeper County, Virginia and more fully described as:

> All that certain lot lying and being on the south side of Chandler Street in the Town of Culpeper, West Fairfax Magistrate District, Culpeper County, Virginia fronting 50' on said street and running back between parallel lines a distance of 102', adjoining the lands of Chilton on the west, Maren and others on the east and McElfrish on the south, and being shown on a house location survey made by Brian Throssell, C.L.S., dated August 28, 1980, a plat of which is recorded in Deed Book 298, Page 501 in the Clerk's Office of Culpeper County, Virginia.

3. Plaintiff's title to the above described property is derived from the Warranty Deed made on the fourteenth day of April, 2006 by and between JARED S. WOODSON and SARAH G. WOODSON, husband and wife, and the Plaintiff who was in the capacity of CAREN J. WILSON.  A written *Certificate of Acceptance of Acknowledgment of Deed* was recorded on the 4th day of November, 2011 **(Exhibit A)**.

4. Plaintiff has been domiciled at 211 West Chandler, Culpeper, Culpeper County, Virginia for a period exceeding 5 years.

## CAUSE OF ACTION

5. While investigating the securitization process involved in the Plaintiffs "mortgage", it appeared that Plaintiff was not fully informed of the facts

surrounding what she thought to be a loan provided to her from HOMECOMINGS FINANCIAL LLC, AKA, GMAC BANK. After further investigation with regard to the Defendants history in the matter before the Court, it was clear that they were at the top of the list which named several banks that are currently under investigation in numerous jurisdictions with regard to mortgage and foreclosure fraud. Plaintiff now had cause to believe that there may be a cloud on her title and therefore brought this complaint forward. While examining case law and other regulations regarding banking practices, Plaintiff found herself going to the beginning with regard to the "loan application" itself in an effort to ascertain just what transpired even before the "Promissory Note" was signed to include defining who the "true" Creditor was as defined by Black's Law Dictionary 6th Edition "TRUE" page 1508 (Law of the Case Section II). It is for these and other reasons conveyed in the Sworn Affidavit provided by M. Nawaz Raja (**Exhibit B**) that gives cause for the Plaintiff to believe that she too has been a victim of deceptive practices and that there is a preponderance of evidence that a cloud on her title exists.

6. In light of the Exhibits provided this Court in evidence, Plaintiff had no other recourse than to file a complaint and this subsequent amended complaint to quiet title in an effort to remove the cloud that currently exists upon it.

7. Due to the nature of evidence of deceit, Plaintiff moves this Court to require any claims brought forth by the Defendants with regard to right of

title or right to any possession of Plaintiffs property, surrender to this Court any <u>original instrument of indebtedness</u> (i.e. Promissory Note) with Plaintiff's <u>wet ink autograph</u> upon it for forensic examination, any evidence of terminable tax events from securitization as required by Section 856 of Title 26 U.S.C. along with the statement of election and tax return, all with either a sworn affidavit under penalty of perjury or live witness testimony under oath providing proof of injury and If any judgment be made by this Court and to ensure that the security instrument cannot thereafter be negotiated in any way....the judgment therefore cancels the instrument (Law of the Case Section III).

8. Plaintiff also moves this court to require that any claim of right or title to property by the Defendants be introduced only as facts of substance and under sworn testimony or affidavit signed under penalty of perjury and that any such claims be evidenced by a complete accounting to include the general ledger, off-balance sheet accounting and any other evidence required as stipulated in the Generally Accepted Accounting Practices (GAAP), the Federal Reserve Banking Regulations and united States Law as defined by the Constitution.

9. One of our greatest U.S. Presidents, Thomas Jefferson said; "I consider Trial by Jury as the only anchor yet imagined by man, by which a government can be held to the principles of its constitution."; with that said, it is the Plaintiff's wish to call upon a trial by jury, if necessary to consist of a minimum of twelve jurors of her peers. Plaintiff also retains the right to

subpoena bank bookkeepers, examiners and other expert witnesses for trial in this Court of Record.

10.      Barring any of the aforementioned wishes, Plaintiff prays that the Court provide the only relief that can be granted in this case which is to remove the cloud on title that currently exists on her property by granting sole title and Warranty Deed to Caren Jean Wilson; and that the Defendants be barred from any further action against Plaintiff in this matter with prejudice.

## LAW OF THE CASE

11.      **Exhibit C** is the Law of the Case that shall be used in this Court of Record.

## VERIFIED STATEMENT

The undersigned Caren Jean Wilson, one of the people, does solemnly declare and state as follows:

1.      Caren Jean Wilson is competent to state the matters set forth herein.

2.      Caren Jean Wilson has knowledge of the facts stated herein.

3.      All the facts herein are true, correct and complete, not misleading, to the best of Caren Jean Wilson's knowledge and belief.

DATED: the _28th_ day of _November_, in the year of Our Lord, 2011.

Caren Jean Wilson
*Popria Persona*

## CERTIFICATE OF SERVICE

**AMENDED** Complaint filed in SUPERIOR COURT OF CULPEPER COUNTY, on the _28th_ day of _November_, 2011.

I HEREBY CERTIFY that a true and correct copy of the above COMPLAINT has been furnished by U.S. Mail on this _28th_ day of _November_, 2011 to:

William W. Tunner, Esq.
Thompson McMullan PC
110 Shockoe Slip
Richmond, Virginia 23219-4140

Caren Jean Wilson
*Privatus Attornatus*

STATE OF VIRGINIA   )
                    ) ss  J U R A T
COUNTY OF CULPEPER)

SUBSCRIBED SWORN, AND AFFIRMED BEFORE ME, a Notary Public, on this _28_ day of _November_, 2011, by _Diane Shannon Kay_, proved to me on the basis of satisfactory evidence to be the man who appeared before me.

Notary Registration No _7506638_ Notary Public _____
My Commission Expires on _9/30/2015_ _____

DIANE SHANNON KAY
NOTARY PUBLIC
REG. #7506638
MY COMMISSION
EXPIRES
9/30/2015
COMMONWEALTH OF VIRGINIA

SEAL

*Exhibit A*

## CERTIFICATE OF ACCEPTANCE OF ACKNOWLEDGMENT OF DEED

I Caren-Jean the living woman formed in the womb by our heavenly Father on the and called New York, in the capacity of Caren L Wilson, am recorded as the grantee on the warranty(grant) deed Instrument No. 080004314, Boo: 1208,Page 501 for the real estate described on the attached authenticated by an officer of the Court certified copy of said deed.  →  *Exhibit A*

It is my freewill act and deed, to execute this written and attested to acceptance of the deed and to record my acknowledgement of lawful ownership of the property under the terms of the deed. I insist that the record on file in the office of register of deeds be updated to show the same.

41-N-5-E-7

This is my freewill act and deed, under my hand and seal

_Caren-Jean: WILSON_

We, the undersigned witnesses, do hereby swear or affirm that Caren-Jean Wilson has stated to us that it is her freewill act and deed to execute her acceptance of the said deed and lawful ownership of the property under the terms of the deed and to record this "Acceptance of Acknowledgement of Deed" along with the "Deed" at the Culpeper County Registrar of Deeds.

David -Vincent. Potts, Common Law Witness

Julie-Mallory: Powell, Common Law Witness

State of Virginia,
County of Culpeper ss.

On this 4th day of November, 2011, before me the subscriber, James L. Holmes personally appeared Caren-Jean Wilson, to me known to be the living woman described in and who executed the foregoing instrument and acknowledged before me that she executed the same as her freewill act and deed.

_Notary Public_

Prepared by Caren-Jean Wilson

RETURN TO
211 W Chandler
Culpeper VA 22701



My Commission Expires January 31, 2014

060004314

PREPARED BY:    S. Crisler Lindsay, Esquire
CONSIDERATION:  $252,000.00
TAX MAP #:       41-A1-S-E-7

# D E E D

THIS DEED made and entered into this 14th day of April, 2006, by and among JARED S. WOODSON and SARAH G. WOODSON, husband and wife, hereinafter jointly referred to as Grantors; and CAREN J. WILSON, hereinafter referred to as Grantee, whose address is _211 W. Chandler St. Culpeper VA 22701_.

## WITNESSETH:

THAT FOR AND IN CONSIDERATION of the sum of ten dollars ($10.00), cash in hand paid, the receipt of which is hereby acknowledged, the Grantors do hereby bargain, sell, grant, and convey with GENERAL WARRANTY OF TITLE AND ENGLISH COVENANTS OF TITLE unto the Grantee all the following described property, to-wit:

**SEE SCHEDULE "C" ATTACHED HERETO AND MADE A PART HEREOF**

This conveyance is made subject to easements, restrictions, and rights-of-way of record.

TO HAVE AND TO HOLD the said land and premises, together with all rights, ways, appurtenances, and easements thereto belonging, or in any way appertaining unto the said Grantee and her successors in fee simple, forever.

WITNESS the following signature(s) and seal(s).

_____ (Seal)
JARED S. WOODSON

_____ (Seal)
SARAH G. WOODSON

S. CRISLER LINDSAY
ATTORNEY AT LAW

743 MADISON ROAD, SUITE 200
CULPEPER, VIRGINIA 22701

TELEPHONE (540) 825-5000
FACSIMILE (540) 825-5640

1

Return to:
RGB Title
102 N. Main St., #301
Culpeper, VA 22701

22

COMMONWEALTH OF VIRGINIA
COUNTY OF CULPEPER, to-wit:

The foregoing was executed or acknowledged before me this _14th_ day of
April, 2006, by *Jared S. Woodson*, Grantor.

_____
Notary Public

My commission expires: 7/31/2007

PAGE 239

COMMONWEALTH OF VIRGINIA
COUNTY OF CULPEPER, to-wit:

The foregoing was executed or acknowledged before me this _14th_ day of
April, 2006, by *Sarah G. Woodson*, Grantor.

_____
Notary Public

My commission expires: 7/31/2007

S. CRISLER LINDSAY
ATTORNEY AT LAW

763 MADISON ROAD, SUITE 203
CULPEPER, VIRGINIA 22701

TELEPHONE (540) 825-8500
FACSIMILE (540) 825-0040

2

All that certain lot lying and being on the south side of Chandler Street in the Town of Culpeper, West Fairfax Magisterial District, Culpeper County, Virginia fronting 50' on said street and running back between parallel lines a distance of 102', adjoining the lands of Chilton on the west, Maren and others on the east and McElfresh on the south, and being shown on a house location survey made by Brian Throssell, C.L.S., dated August 28, 1980, a plat of which is recorded in Deed Book 298, Page 501 in the Clerk's Office of Culpeper County, Virginia.

AND BEING the same property conveyed to Jared S. Woodson and Sarah G. Woodson by virtue of Deed dated September 2, 2004, recorded as Instrument No. 040009794, in the Clerk's Office of Culpeper County, Virginia.

PAGE 293

INSTRUMENT #060004314
RECORDED IN THE CLERK'S OFFICE OF
CULPEPER ON
APRIL 19, 2006 AT 02:15PM
$252.00 GRANTOR TAX WAS PAID AS
REQUIRED BY SEC 58.1-802 OF THE VA. CODE
STATE:    $126.00 LOCAL:    $126.00
JANICE J. CORBIN, CLERK

RECORDED BY: LJM

VIRGINIA, IN CULPEPER COUNTY CIRCUIT COURT CLERK'S OFFICE
I CERTIFY THAT THE DOCUMENT TO WHICH THIS AUTHENTICATION
IS AFFIXED IS A TRUE COPY OF A RECORD IN THE CULPEPER COUNTY
CIRCUIT COURT, THAT I HAVE CUSTODY OF SAID RECORD, AND THAT
I AM THE CUSTODIAN OF THAT RECORD.
GIVEN UNDER MY HAND AND THE SEAL OF THE COURT, THIS
7th    DAY OF November 2011
TESTE: JANICE J. CORBIN, CLERK
BY    Jm Smith    , DEPUTY CLERK

3

VIRGINIA, IN CULPEPER COUNTY CIRCUIT COURT CLERK'S OFFICE
I CERTIFY THAT THE DOCUMENT TO WHICH THIS AUTHENTICATION
IS AFFIXED IS A TRUE COPY OF A RECORD IN THE CULPEPER COUNTY
CIRCUIT COURT, THAT I HAVE CUSTODY OF SAID RECORD, AND THAT
I AM THE CUSTODIAN OF THAT RECORD.
GIVEN UNDER MY HAND AND THE SEAL OF THE COURT, THIS
DAY OF            2011
TESTE: JANICE J. CORBIN, CLERK

*Exhibit B*

# MORTGAGE FORENSIC SECURITIZATION ANALYSIS REPORT

**Name of the Borrower:**  Ms. Caren J. Wilson  *2011-L-304*

**Name on the Title:**  Ms. Caren J. Wilson

**Property Address:**  211 W. Chandler Street Culpeper Virginia 22701

## Current Servicer & Investor Information found on MERS

# LOAN-1

**MIN:**  100062604717547543

**Note Date:**  12/13/2006

**MIN Status:**  INACTIVE

**Servicer:**  GMAC Mortgage, LLC

Phone: (800) 766-4622

**Investor:**  This investor has chosen not to display their information

# LOAN-2

**MIN:**  100062604717547709

**Note Date:**  12/13/2006

**MIN Status:**  ACTIVE

**Servicer:**  GMAC Mortgage, LLC

Phone: (800) 766-4622

**Investor:**  This investor has chosen not to display their information

**Borrower's Attorney:**  N/A

A forensic analysis report should state as follows:

a. The borrower is going through the hardship, when she lost her employment and was placed in foreclosure. To save her primary residence the borrower was forced to file Chapter-7 Bankruptcy on

06/10/2010 in Western District of Virginia per case # 10-61734 and received discharge on 09/08/2010.

b. Borrower Ms. Caren J. Wilson was working with the present servicer, "GMAC Mortgage LLC" for loan modification. "GMAC Mortgage LLC" received $ 1,518, 398, 139-00 on April 13, 2009 from Treasury for "MAKING HOME AFFORDABLE" (The Mortgage Loan Modification Plan) "Program under Emergency Economic Stabilization Act, The amount received by "GMAC Mortgage LLC" can be verified from **www.financialstability.gov.**

c. If irregularities in the modification /short sale/ foreclosure process reflect deeper failures to document properly changes of ownership as mortgage loans were securitized, then it is possible that Treasury is dealing with the wrong parties in the course of the Home Affordable Modification Program (HAMP). This could mean that borrowers either received or were denied modifications improperly.

d. Some servicers, "GMAC Mortgage LLC" in this case dealing with Treasury may have no legal right to initiate modification/short sale/ foreclosures, **which may call into question their ability to grant modifications or to demand payments from homeowners, whether they are part of a modification/ short sale/ foreclosure mitigation program or otherwise.**

## SUMMARY

THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIESCOMMISSIN OR HAS THE SECURITIES ANDEXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, therefore the parties were selling the unregistered and unregulated securities.

## RELEVANT PARTIES

a. **Sub-servicers.................**Homecomings    Financial,    LLC,    a wholly-owned subsidiary of Residential Funding Company, LLC, will subservice approximately 56.6% by principal amount of the group I loans. GMAC Mortgage, LLC an affiliate of Residential Funding Company, LLC, will subservice approximately 12.2% by principal amount of the group I loans. National City Mortgage Company will subservice approximately 16.5% by principal amount of the group I loans. Homecomings    Financial,    LLC,    a wholly-owned subsidiary of Residential Funding Company, LLC, will subservice approximately 53.1% by principal amount of the group II loans. GMAC Mortgage, LLC, an affiliate of Residential Funding Company,    LLC,    will    subservice approximately 9.7% by principal amount of  the  group II loans. National  City  Mortgage  Company  will  subservice approximately

17.2% by principal amount of the group II loans. SunTrust Mortgage, Inc. will subservice approximately 10.0% by principal amount of the group II loans.

b. **Master servicer and sponsor**.......... Residential Funding Company, LLC.

c. **Originators**.......................... Homecomings Financial, LLC f/k/a Home comings Financial net work Inc

d. **Depositor**........................... Residential Accredit Loans, Inc., an affiliate of Residential Funding Company, **LLC.**

e. **Securities Underwriter** ....... In this case there are 03 Securities Underwriters are involved (collectively, the SECURITIES "UNDERWRITERS") and named as under;
   1) Citigroup Global Markets Inc
   2) Morgan Stanley & Co
   3) Residential Funding Securities, LLC

f. **Issuing Entity**............ RALI Series 2007-QS1 Trust. The depositor will establish a trust with respect to the Series 2007-QS1 Certificates under a series supplement, dated as of January 1, 2007, to the Standard terms of pooling and servicing agreement, dated as of December 1, 2006, among the depositor, the master servicer and the trustee. On the closing date ( 01/30/2007), the depositor will deposit the pool of mortgage loans

g. **Servicer**............... Present Servicer is "GMAC Mortgage, LLC

h. **Trustee**................ Deutsche Bank Trust Company America

i. **Yield Maintenance Agreements**
   Provider......................... Bear Stearns Financial Products Inc.

j. Mortgage pool...................5,293 fixed rate mortgage loans with an aggregate principal balance of approximately $1,297,367,277 as of the cut-off date, secured by first liens on one-to four-family residential properties or interests in shares issued by a cooperative apartment corporation and the related proprietary lease

M. Nawaz Raja deposes and states sworn under penalty of perjury as follows:

1. I am over the age of eighteen years and qualified to make this affidavit. I have no direct or indirect interest in the outcome of the case at bar for which I am offering my observations, analysis, opinions and testimony. I am a Mortgage Forensic Auditor. My resume is attached and incorporated herein.

2. My area of expertise, based upon knowledge, training, and experience is in the field of securities, the securities industry, derivative securities, securities regulation, special purpose vehicles, structured investment vehicles, creation of trusts pooling agreements; issuance of asset backed securities and specifically mortgage backed securities by special purpose

vehicles in which an entity is named as trustee for the holders of certificates of mortgage backed securities. The Trustee Disclaims any economic interest in the mortgage loans the economics of securitized residential mortgages, securitization of mortgage loans, accounting in the context of said securitizations and REMIC vehicles and pooling and servicing of securitized loans.

3.    I have knowledge, training and experience of various precursor asset protection strategies, including minimization of tax liability, which also are constructed to be made bankruptcy remote in commercial and real estate settings.

4.    I have knowledge, training and experience in loan originations, underwriting and the assignment and assumption of securitized residential mortgage loans.

5.    I also have knowledge, training and experience, including the areas of securities, real property, Internal Revenue Code as applicable to REMICs and Uniform Commercial Code. I also have knowledge, training and experience in the practices prevalent during the period of 2001-2009 that enabled the accumulation and availability of an overwhelming abundance of investment dollars, made possible because the derivatives sold to investors were made to appear that they contained both exceptional growth and zero risk, back the history of mortgage success up to that point in time had been high, and because these instruments were in addition made to appear undeniably and excessively guaranteed by 3rd party sources.

6.    I also have knowledge, training and experience that this abundance of funding was one of the direct and inevitable causes of violations against homeowners and purchasers pertaining to funding of mortgage loans for purchase and refinancing, including predatory lending practices and Truth in Lending Act Violations.

7.    "All factual testimony made by me is true and correct to the best of my knowledge and belief. All opinion testimony made by me is beyond a reasonable degree of probability in my area of expertise, which is set forth in the above paragraph and in my resume.

8.    I have no direct or indirect interest in the outcome of the case at Bar for which I am offering observations, analysis, opinions and testimony.

9.    "I have been asked to render opinions pertaining to the above case, in which **Ms. Caren J. Wilson** is the Borrower, and the Mortgage Note ("Note"), **Ms. Caren J. Wilson** on title. "Mortgage/Deed of Trust" the propriety of foreclosure, and securitization issues, among others, are in question. The original nominal Lender according to said documents is "Home comings Financial LLC f/k/a Home Coming Financial net work Inc, 2101 REXFORD Suite # 250 W Charlotte NC 28211 ("Nominal Lender")

10.    I evaluated the materials listed below, among other materials, facts and data in basing my opinions and inferences. Each of these documents and other materials, facts and data are of the type that expertise in my field would customarily rely upon in forming opinions and inferences. The information sources, I reviewed were sufficient for me to testify as to the

facts and opinions that are included herein. Where additional information is required to make other factual statements and express opinions on further subject matter, I have so stated. The documents were presented to me by **Ms. Caren J. Wilson**, 211 W. Chandler Street Culpeper Virginia 22701, for the forensic review, analysis and opinion.

11.    I have reviewed the settlement papers, Securities Exchange Commission filings, and various land records of the Culpeper County of Virginia. I also performed independent searches as to Securitization Documents available to the public online at **http://www.sec.gov/**. Most of the testimony in this Declaration was plainly clear from review of the below listed materials, but to the extent that technical or specialized principles and methods were required, they have been reliably applied:

A. The closing loan documents relating to the loan transactions that are the subject of this lawsuit. Not attached, because too voluminous and others are already of record with the Court. Mortgage and Note are attached as **EXHIBIT-A&B**

B. The factual results of a forensic review and analysis performed by me which I have attached as a chart showing the path of borrower's note as **EXHIBIT-C**

C. In addition I also reviewed additional correspondence sent to, GMAC Mortgage LLC, and others, from the borrower **Ms. Caren J. Wilson**, requesting an accounting and other information pertaining to accounting of the borrower's mortgage account.

D. The following recorded documents: Mortgage; Note; (Note was not recorded in the county lands record) are attached as **EXHIBIT, A & B** above.

E. Various applicable Securitization Documents pertaining to Mortgage Trust Pool, 10 K, 8k, Pooling and Servicing Agreement, prospectus Supplement, entitled **"RALI Series 2007-QS1 Trust"**, including but not limited to the Pooling and Servicing Agreement ("PSA") dated 12/01/2006; filed with SEC, file #RALI Series 2007-QS1 Trust · 8-K/A · For 2/15/07 as EX-10 Filed On 2/15/07 3:31pm ET, SEC File 333-131213-34 · Accession Number 1382368-7-12 and Prospectus Supplement 424B5, dated 12/06/2006 ("ProS") filed with the SEC, file # Filed On 01/29/2007 at 4:37pm ET , SEC File 333-131213, -34 Accession Number 891092-7-238

F.  The Securitization Documents are too voluminous to attach to this Declaration as they are perhaps more than 2000 pages. I have attached a few key pages from the PSA, Prospectus Supplement, 8K and 10K including a diagram of the transaction, with the identity of the various Participants typed thereon, and a few pages from the ProS, FWP showing

the borrower's loan Number, zip code, city name and principle amount of the note etc.

G.  The investor on loan as per MERS record shows has been intentionally hidden and the investor in this case has chosen not to disclose its information, which is incorrect, misleading and fraud, in the present case. Deutsche Bank Trust Company Americas also is the trustee on the Trust, "**RALI Series 2007-QS1 Trust**". **Deutsche Bank Trust Company Americas <u>cannot be Trustee or investor or own the note, lest it becomes a partnership with the certificate holders.</u>** The information about the investor was intentionally withheld by the securitization partners which are violations of the Federal Reserve new amendment which is law now and TILA. Borrowers repeatedly requested this information and were not provided. This information will expose the foreclosing parties before the court who have acted and are acting ultra-virus.

H.  Deutsche Bank Trust Company Americas is also acting under the various layers 424(b) (5) Prospectus, Pooling & Servicing Agreement (PSA) filed with the SEC.of Trustees, without any specific description, where One Trustee ends and other Trustee Begins. It is classic obfuscation and musical chairs. Note that **Deutsche Bank Trust Company Americas is identified "as trustee" but the usual language of "under the terms of that certain trust dated....etc" is absent.** This is because there usually is **NO TRUST AGREEMENT designated as such and NO TRUST.** In fact, as stated here **it is merely an agreement between the co-issuers and Deutsche Bank Trust Company Americas, which it means that far from being a trust it is more like the operating agreement of an LLC**

I.  The Nominal Lender on the Mortgage/Deed of Trust is "Home comings Financial LLC", which rented its name and charter to some undisclosed lender for the payment of hidden fees for standing in between for undisclosed lender, which is a violation. As the undisclosed lender was not disclosed to the borrower as of today in spite of repeated requests of borrowers.

J.  Promissory Note has no endorsements, whereas the note should have at least nine (09) or more endorsements; which are missing on the note, reasons best known to the entities involved;

1) Home Coming Financial LLC→ **Residential Funding Company, LLC**→ Residential   Accredit Loans, Inc. (an affiliate of Residential Funding Company, **LLC**.)→ Citigroup Global Markets Inc→Morgan Stanley & Co →Residential  Funding  Securities,  LLC→ Dealers→

Agents→ Investors(Prospectus Supplement 424B5, dated 12/06/2006 ("ProS") RALI Series 2007-QS1 Trust, et al.  424B5 filed On 1/29/07 4:37pm ET   SEC Files 333-131213, -34 Accession Number 891092-7-238

2) The name of all of the above parties was not there on the note and no endorsement was done. The note never made to the Trust and there was no endorsement in the name of Trustee, "Deutsche Bank Trust Company Americas" therefore the assets  were never became the assets of the Trust, "RALI Series 2007-QS1 Trust" and "Deutsche Bank Trust Company Americas" has acted and still acting ultra-virus.

3) The Chain of transfer is not perfect and raises many legal questions, which Honorable court can look in providing the justice whoever deserves.

4) Concerns about securitization chain of title also go to the standing question; if the mortgages were not properly transferred and recorded in the Culpeper County Lands Records, in the securitization process, then the party bringing the foreclosure does not in fact own the mortgage and therefore lacks standing to foreclose.

5) The mortgage lenders and securitization servicers including "GMAC Mortgage LLC" should not undertake to foreclose on any homeowner unless they are able to do so in full compliance with applicable laws and their contractual agreements with the homeowner.

6) In the present case, the nominal lender "Home Coming Financial LLC" sold the borrower's loan for cash to **"Residential Funding Company, LLC**, who further sold it for cash to Residential Accredit Loans, Inc., which further sold it to Citigroup Global Markets Inc, Morgan Stanley & Co, and to Residential Funding Securities.  Citigroup Global Markets Inc, Morgan Stanley & Co, and Residential Funding Securities further sold for cash to Investors through the Dealers and Agents. On each stage the cash was received for the loan of **Ms. Caren J. Wilson**, which was not disclosed to the Borrower, **Ms. Caren J. Wilson** at closing or after the closing till this date.

7) It is obvious from the securitization documents that the loan of **Ms. Caren J. Wilson** was sold prior[1] to her settlement on 12/13/2006 as Asset Backed Security.

8) Chain of Transfer of Note is broken and not perfect.

**9)** The securitization process is complicated, requires several properly executed transfers and then recorded in the County Lands Records. **If at any point the required legal steps are not followed to the letter, then the ownership of the mortgage loan could fall into question.**

10) The Borrower, **Ms. Caren J. Wilson** signed a Promissory Note and the investor received a "BOND", both are not the same, having the different terms, and Borrower, **Ms. Caren J. Wilson** was not the party in the "Bond" deal. Borrower's identity, personal information was used without the borrower's knowledge, consent and permission.

11) The problems in the mortgage market are highly technical, but they are extremely serious. **At best they present problems of fraud on the court, fraud on borrowers and clouded title to property.**

12) These issues are no more technicalities than the borrower's signature on a mortgage. Cutting corners may improve securitization's economic efficiency, but it undermines its legal viability.

13) Deutsche Bank Trust Company Americas was hired to manage the Trust by the Depositor which is "Residential Accredit Loans, Inc., an affiliate of Residential Funding Company, LLC.", and the duties of the Trustee are just the administrative as per section 8.01 of the "PSA" dated 12/01/2006. The "PSA" is one of the Exhibit 10 of the current report 8K filed before the SEC as per file # <u>333-131213-34</u>, and Accession # 1382368-7-12, filed on 02/15/2007 at 3:31 pm ET, by the securitization partners, who have admitted that the borrowers loan was sold to various parties for cash. According to the "PSA" section 8.01 Deutsche Bank Trust Company Americas has acted and is still acting ultra-virus.

14) The True Sale is from Depositor (Residential Accredit Loans, Inc., an affiliate of Residential Funding Company, LLC.) to the Securities underwriters, which are Citigroup Global Markets Inc,

---

[1] S-3 Registration Form filed by Residential Accredit Loans with Securities and Exchange Commission as per SEC file # 333-131213 on 01/23/2006 and declared effective on 03/03/2006, of Mortgage Asset-Backed Pass-Through Certificates, RALI Series 2007-QS1

Morgan Stanley & Co and Residential Funding Securities, LLC, in this case, and not to the Trustee, "Deutsche Bank Trust Company Americas" in this case.

15) The event of Credit Default Swaps, AIG Bail out and insurance proceeds caused the Trust, "RALI Series 2007-QS1 Trust" to dissolve and "Deutsche Bank Trust Company Americas" is no more a trustee of the Trust, RALI Series 2007-QS1 Trust, in this case, and therefore "Deutsche Bank Trust Company Americas" acted without any authority and committing the civil theft on the Borrower, **Ms. Caren J. Wilson**

16) If irregularities in the foreclosure process reflect deeper failures to document properly changes of ownership as mortgage loans were securitized, then it is possible that Treasury is dealing with the wrong parties in the course of the Home Affordable Modification Program (HAMP). This could mean that borrowers either received or were denied modifications improperly. Borrower **Ms. Caren J. Wilson** requested GMAC Mortgage LLC for help in modification but was not helped.

12. I use the following definition of "Creditor" taken from research in cases, the Bankruptcy Code and the Uniform Commercial Code. A "Creditor" is a legal entity that has advanced funds, goods or services in consideration of the right to payment, or has purchased the right to be paid. A "Creditor" is an entity that had a Claim against Debtor before the case was filed. 11 U.S.C § 101(10). A "Claim" is a right to payment. § 101(5). Only a Creditor may file a Proof of Claim. § 501(a). The "Official Form 10 reflects this requirement by describing the 'Name of Creditor' as 'the person or other entity to whom the debtor owes money or property."

13. In the context of securitized residential mortgages (including the one in the instant case), a "Creditor" is a legal entity or group of entities or persons under the law who have advanced money for the funding of mortgage loans and who are owed money from those mortgage loans.

14. The creditor in the case at bar can be generically described as an Investor, (which remained undisclosed to the borrowers in spite of repeated requests), as defined under the rules and regulations of the Securities and Exchange Commission, who has paid money to an intermediary in a chain of securitization that resulted in the funding of one or most residential loan transactions; **the promise to pay is from an entity usually referred to as a Special Purpose Vehicle (SPV) which is the frequently erroneously referred to as a "Trust" with a "Trustee,"** that in the applicable Pool in this case as a **"Deutsche Bank Trust Company Americas "**. The investor in

this case, was intentionally misstated or has chosen not to display their information and the borrower, **Ms. Caren J. Wilson** tried her level best to get the information but it was intentionally not disclosed to the borrower, **Ms. Caren J. Wilson**, and Honorable court can determine this violation.

15. The creditor/Investor receives an instrument which is generically referred to as a Mortgage Backed Asset Certificate/Bond ("Certificate/ Bond"). The Certificate/Bond incorporates terms by which the promise to pay interest and principal is made by the issuing SPV and the manager for this is **"Deutsche Bank Trust Company Americas "** in the present case.

16. Meanwhile the lender/investor gets a **mortgage bond NOT SIGNED BY THE BORROWER**. <u>(borrower signed a note but the lender received a bond from a party not involved in the borrower's closing)</u>, **There is no nexus between borrower and lender without recognizing the obvious — there were parties, documents, agreements and corresponding duties and obligations existing in the UNDISCLOSED MIDDLE**, which the Honorable court need to ask the foreclosing entities in doing justice, whoever deserves.

17. The promise to pay is conditioned upon several terms, including but now limited to the performance of pool of loans, the obligations of third parties, and impliedly the receipt of insurance proceeds triggered by partial non-performance of the pool of assets allocated to the SPV.

18. In turn the SPV pool is carved out of other pools created by Aggregators employed by investment banking firms. **The Aggregators are parties to Pooling and Service Agreements and Assignment and Assumption Agreements, which are Securitization documents that predate [2]the funding of the loans in any of the Pools.** The Certificate/Bond issued to the Investor conveys a percentage interest in the Pool of assets that is allocated to the SPV. I was asked to render an opinion as to the factual basis pertinent to the issue of Standing. As relates to Constitutional Standing, my opinion is premised on the following definition:

"Constitutional standing under Article III requires, at a minimum, that a party must have suffered some actual or threatened injury as a result of the other party's conduct, that the injury be traced to the challenged action, and that it is likely to be redressed by a favorable decision".

19. My presumption, in the context of the question posed to me, **is that standing requires that a party will suffer financial loss** derived from non-

---

[2] Borrower's loan was sold forward almost 11 months before her loan closing. S-3 Registration Form filed by Residential Accredit Loans with Securities and Exchange Commission as per SEC file # 333-131213 on 01/23/2006 and declared effective on 03/03/2006, of Mortgage Asset-Backed Pass-Through Certificates, RALI Series 2007-QS1

performance (i.e., non-payment) of the subject contract, which in this case is the obligation that arose when the subject loan was funded on behalf of the borrower as homeowner. Since the funding occurred out of a pool of money received by the investment banker from the investors, the investors are creditors, which in the present case were not disclosed to the borrower, **Ms. Caren J. Wilson.** By the way indenture (usually incorporation a prospectus) the investors agreed to an operating plan that defined the functions of the conduit which was used to funnel funds to the investor from the pool. **This operating plan is loosely and erroneously referred to as a trust** ("RALI Series 2007-QS1 Trust" in this case), **with the manager referred to as a Trustee ("Deutsche Bank Trust Company Americas" in this case).** However, since now assets remain in the conduit which is defined under the Internal Revenue Code as REMIC (Real Estate Mortgage Investment Conduit). The REMIC is referred to in the world of finance as an SPV (Special Purpose Vehicle). I presume the words "conduit" and "vehicle" convey the fact that no actual business events of taxable or monetary significance takes place in the REMIC. **I conclude that this corroborates my opinion that the investors, which have not been disclosed to the borrower Ms. Caren J. Wilson, are the creditors, having been the only parties to advance funds from which the subject loan was funded.**

20.  The note signed by said borrowers and the mortgage-backed bond[3] accepted by the investor who purchased said security are both evidence of the obligation. The Mortgage/Deed of Trust is intended to be incident to the note and possibly incident to the "BOND", **if the chain of title was perfected, which is not perfected in this case, as mentioned above.**

21. **The Payee on the note and the payee on the bond are different parties.** The bonds were issued with three principal indentures:

(1) Repayment of principal non-recourse based upon the payments by obligors under the terms of notes and mortgages in the pool
(2) Payment of interest under the same conditions and
(3) The conveyance of a percentage ownership in the pool of loans, which means that collectively 100% of the investors own 100% of the entire pool of loans. **This means that the "Trust" does NOT own the pool or the loans in the pool** (This was admitted [4]of

---

[3] The borrower signed a _note_ and the lender received a _bond_. Those are two different things. If someone let them continue with this fraud, then someone is giving houses to brokers who never put up a dime for the funding of the loan.

[4] Please see their admission under the "METHOD OF DISTRIBUTION" of Prospectus Supplement 424 (b) 5

Prospectus Supplement 424 (b)5 dated 12/06/2006 of "RALI Series 2007-QS1 Trust, et al. · 424B5 · On 1/29/07 Filed on 1/29/07 4:37pm ET · SEC Files 333-131213, -34    Accession Number 891092-7-238

It means that the **"Trust" is merely an operating agreement through which the investors may act collectively under certain conditions**. Accordingly, it is my opinion that the parties with standing in relation to a securitized loan are the debtor/borrowers and the creditor/investors **(which remained undisclosed in the present case Please see MERS record EXHIBIT D & E)**. This would be further corroborated if, as a matter of fact, the investment banker followed industry standing of selling the mortgage backed security FORWARD. **"Selling forward" means that the security was sold and the money was collected before the first loan was funded on behalf of the borrowers.** However, even if the investment banker had not closed the sale of securities with investors before accepting applications for loans, it would have been on the basis of expectation of said funding. **Ultimately, in all securitized loans there is really only one transaction ("ONE TRANSACTION THEORY") --- a loan from the investors to the homeowner.** Without an investor there would be no loan; conversely without a borrower there would be no investor or investment.

22.    It is accordingly my opinion that **none of the following parties are or ever were creditors and that they therefore lack standing as defined above**: Home Coming Financial LLC, ("Nominal Lender on the Deed of Trust and Note"), **Residential Funding Company, LLC** (Seller, Sponsor, who sold this loan to Residential  Accredit Loans, Inc, , for cash), Residential Accredit Loans, Inc ( which is Depositor, who sold this loan for cash to Citigroup Global Markets Inc, Morgan Stanley & Co, Residential Funding Securities, LLC ( who as  "securities underwriters" bought the loans for cash from Depositor and further sold these loans as certificate and bonds to Dealers/Agents for cash), The dealers/agents who in turn sold these certificates and bonds to investors for cash. "Deutsche Bank Trust Company Americas" as trustee for **RALI Series 2007-QS1 Trust**, just converted these loans into certificates/ bonds and sent them back to the Depositor, in a series of securitization transactions, pursuant to Pooling and Servicing Agreement, *nor* Dealers/Agents who are part of securities underwriter, as Securities Underwriter ,had at any time relevant to the subject matter before this Court, to the present, suffered any actual or threatened injury as a result of the Borrower's  non-payment of monthly payments pursuant to the

original terms of the Note, nor because of alleged default thereon, nor can any actual or threatened injury be traced to any other proceedings in any other court, any action involving Proof of Claim, or otherwise, and therefore there never was any legitimate redress available to any of these parties by a favorable decision.

23. Specifically, pursuant to the materials I have reviewed, which I have been asked to assume includes all evidence presented to the Court, along with my knowledge and experience involving securitized mortgages, and my training and knowledge and experience involving securitized mortgages, and my training and experience, it is certain that none of the parties mentioned in para "22" above, had at any time relevant to the subject matter before this Court, were the:

   A) Holder of the Note;

   B) Owner of the Note; or

   C) Party with the right to enforce the Note.

   D) Nor held any interest at all in the Property, Note nor Mortgage/ Deed of Trust at the time the action was initiated, or any time thereafter.

24.    As it relates to the issue of the Real Party in interest, the factual criteria and the question I have presupposed is: "Whether any of said Creditors own financial interest was at stake in the outcome of the litigation before the Court." "My opinion is offered based on all evidence before the Court to date is as follows.

A) "Deutsche Bank Trust Company Americas" as trustee for "**RALI Series 2007-QS1 Trust**", in a series of securitization transactions, pursuant to Pooling and Servicing Agreement dated 12/01/2006, filed with SEC as EX-10 Filed on 02/15/2007 at 3:31pm ET as per SEC file # 333-131213-34 and Accession # 1382368-7-12, did not have any of its own funds at risk in the outcome of the litigation.

B) "Deutsche Bank Trust Company Americas" as trustee for "**RALI Series 2007-QS1 Trust**" as Trustee in my opinion was not, fully and completely authorized to appear as the named party on behalf of the Real Party in Interest, in a representative capacity for the investors in the securities for the above described and named Mortgage Trust Pool.

C) Also, the proof in the record is inadequate to establish that the ownership of the Note, holder ship of the Note, or right to enforce the Note was properly pooled to the above described Mortgage Trust Pool.

D) Accordingly, as the record stands the evidence does not establish "Deutsche Bank Trust Company Americas" as trustee for **"RALI Series 2007-QS1 Trust"** as being the Real Party in Interest, because the Trustee's duties were terminated, Trust was dissolved, due to the major trigger event of AIG Bailout, when the Toxic Assets were purchased by the Maiden Lane LLC as per "Asset Purchase Agreement" dated 12/12/2008.

E) Due to major trigger event, AIG Bailout and insurance proceeds from "MBIA", "Ambac" and many other insurance companies, the trust has been dissolved and the "Deutsche Bank Trust Company Americas" as trustee for **"RALI Series 2007-QS1 Trust"** is acting ultra-virus and committing civil theft.

F) Home Coming Financial LLC, ("Nominal Lender on the Deed of Trust and Note"), **Residential Funding Company, LLC** (Seller, Sponsor, who sold this loan to Residential Accredit Loans, Inc, , for cash), Residential Accredit Loans, Inc ( which is Depositor, who sold this loan for cash to Citigroup Global Markets Inc, Morgan Stanley & Co, Residential Funding Securities, LLC ( who as "securities underwriters" bought the loans for cash from Depositor and further sold these loans as certificate and bonds to Dealers/Agents for cash), The dealers/agents who in turn sold these certificates and bonds to investors for cash. "Deutsche Bank Trust Company Americas" as trustee for **RALI Series 2007-QS1 Trust**, just converted these loans into certificates/ bonds and sent them back to the Depositor, in a series of securitization transactions, pursuant to Pooling and Servicing Agreement, *nor* Dealers/Agents who are part of securities underwriter, as Securities Underwriter and MERS, are the parties whose own funds were at risk in the outcome of the litigation, and therefore none of them were a Real Party in Interest.

G) In terms of the real estate portion of the transaction, the homeowner was the Borrower and the Investor was the actual Creditor (which are still undisclosed to the borrower, **Ms. Caren J. Wilson** in this case).

H) The investor is still the Creditor **if the investor has not sold, transferred or alienated the hybrid mortgage backed security and if the investor has not been directly or indirectly paid through credit default swaps, with or without subrogation,** or **paid through a federal program with or without subrogation.** Since no such instruments appear on record, any right of subrogation would appear to be equitable.

I) Thus for purposes of this declaration, the unknown and undisclosed Investors constitutes the only Creditor presumed to Exist until the undersigned is presented with contrary evidence of the type that an expert

in my field of expertise would normally take into account in forming opinions and conclusions.

J) Therefore I conclude that if there remain any Creditors, pursuant to the Note signed by **Ms. Caren J. Wilson**, they are the unidentified investors and **all other parties are intermediary or representative or disinterested.**

K) The borrower has made unsuccessful attempts to obtain from these entities and others, the identity of the lender, the documentation authenticating the identity of the lender, and an accounting from the lender as to all money paid or received in connection with the subject obligation.

L) Neither Affiant, nor Defendants, nor the court will be able to determine amount of the borrower's equity in the property **until a complete accounting of all debits and credits including but not limited to the third party payments referred above.** Until such time as requests for said information have been answered, I will be unable to identify with certainty the exact identity of the current creditor, meaning the true owner of the alleged obligation, **other than to say that it is not,** Home Coming Financial LLC, ("Nominal Lender on the Deed of Trust and Note"), **Residential Funding Company, LLC** (Seller, Sponsor, who sold this loan to Residential Accredit Loans, Inc, , for cash), Residential  Accredit Loans, Inc ( which is Depositor, who sold this loan for cash to Citigroup Global Markets Inc, Morgan Stanley & Co, Residential  Funding Securities,  LLC ( who as "securities underwriters" bought the loans for cash from Depositor and further sold these loans as certificate and bonds to Dealers/Agents for cash), The dealers/agents who in turn sold these certificates and bonds to investors for cash. "Deutsche Bank Trust Company Americas" as trustee for **RALI Series 2007-QS1 Trust**, *nor* Dealers/Agents who are part of securities underwriter, as Securities Underwriter  and MERS *as computer data base company,* or any participant in securitization chain are the parties whose own funds were at risk in the outcome of the litigation, **and therefore none of them were a Real Party in Interest**.

M) The only parties that can claim to be a Holder in Due Course of the note are those that paid value for the note, without knowledge that there were any pending challenges to its validity and who fulfill the other requirement for Holder In Due Course status. This HDC and third party sources are the only ones that could conceivable suffer a monetary or pecuniary loss resulting from the non-payment of the obligation.

N) The investor could lose if because they advanced the actual funds from which the financial product "LOAN" was funded, assuming these investors that purchased Asset Backed Securities were those  in which ownership of the loans were described with sufficient specificity as to , at least express

the intent to convey ownership of the obligation as evidenced by the promissory note and an interest in real property consisting of security interest held by an entity that was described as beneficiary of the trust created by an instrument entitled, "Mortgage"/ "Deed of Trust".

O) These **Investors were not named, the practice has been intentional**, in my opinion, based on overwhelming commonality of this obvious reoccurring, obvious failure, and other overwhelming evidence. The THIRD PARTY SOURCES that could conceivably lose because they would have paid value prior to default or notice of default, and fall within one or more of the following classifications:

1) Insurers that paid some party on behalf of said investor;

2) Counterparties on Credit Default Swap;

3) Conveyance or constructive trusts arising by operation of law through cross collateralization and over collateralization within the aggregate asset pools or later within the Special Purpose Vehicle tranches; (Tranches is an industry term of art referring to the types of division within a Special Purpose Vehicle)

4) The US Treasury Department through the Troubled Assets Relief Program in which  approximately $ 600 Billion of $ 700 Billion has been authorized and paid to purchase or pay the obligation on "TROUBLED" (non performing) assets of the loans are part of the class of assets targeted by "TARP"

5) The US Federal Reserve, which has extended credit on said troubled assets and has exercised options to purchase said troubled assets, through the Maiden Lane LLC as per "Assets Purchase Agreement" dated 12/12/2008;

6) Any other party that has traded in Mortgage Backed Securities ("MBS") from the aggregated pools or securitized tranches containing interests in the notes

**25.**    I concur with the allegations that challenge the validity of endorsements and/ or transfers as they have been presented in the court to obtain relief, and I believe that there is good cause, **based on the totality of circumstances to challenge that the note was endorsed or otherwise properly transferred to the Mortgage Trust "RALI Series 2007-QS1 Trust" for which Deutsche Bank Trust Company Americas, was the Trustee.**

**26.**    In my opinion, it is unlikely that any Holder in Due Course ("HDC") exists, because of the way the securitization was universally practiced with in the Investment Banking Community during 2001-2009. Hence the loan product sold to the subject homeowner included a promissory note that was

evidence of real obligation that arose when the transaction was funded but **lost its negotiability in the securitization process, which thus bars anyone from successfully claiming "HDC" status,** such as by:

i) The negotiability of the note was negatively affected by;

(1) The splitting of the note and Deed of Trust as described herein;

(2) by the addition of terms, conditions, third party obligors and undisclosed profits, fees, kickbacks all contrary to existing federal and state applicable statues and common law; and Naming "MERS" as beneficiary on the Deed of Trust, when "MERS" was not a creditor and there was no name of the MERS on the Promissory Note signed by the borrower, **Ms. Caren J. Wilson**;

(3) Knowledge of title and chain of title defects in the ownership of the note,

(4) Beneficial interest in encumbrance, and position as obligee on the obligation originally undertaken by the subject homeowner.

ii) None of the known participants in the subject securitization chain, including but not limited to entities mentioned above herein, has suffered any financial loss relating to the loan, nor are they threatened with any future loss even if foreclosure never occurs.

iii) None of the known securitization participants has ever been the real party in interest as a lender or financial institution underwriting a loan while funding the same with respect to the loan.

iv) None of the known securitization participants will suffer any monetary loss through nonperformance of the loan.

v) All of the known securitization participants received fees and profits relating to the loans.

vi) The existence and identity of the real parties in interest was withheld from the borrowers in the closing and servicing of the loan, and since.

vii) All of the known securitization participants fail to meet one or more of the following two tests required for Holder in Due Course ("HDC") status:

1) Without actual knowledge of defects; and/or

2) In good faith, meaning a legitimate belief that the loan was sold, based upon the information they had at the time of purchase of the Note.

27.    In the case at bar, it is my opinion based upon a reasonable degree of financial analytical certainty, that the total fees and profits generated were actually in excess of the principal stated on the note which is to say that investors unknowingly placed money at risk the amount of which vastly exceeding the funding on the loan to the borrower.

28.    The only way this could be accomplished was by preventing both the borrower, **Ms. Caren J. Wilson** in this case and the investor (still undisclosed to **Ms. Caren J. Wilson**) from accessing the true information, which is why the industry practice of the nominees and beneficiary( like MERS) was created, when MERS was not creditor. Even where MERS is not specifically named in the originating documents presented to the borrower at the "closing", it was industry practice from 2001-2009 to utilize MERS "Services", or to implement practices similar to those utilized by MERS.

**29.**    Therefore it is possible and even probable that the data from the closing was entered into the MERS electronic registry and that an assignment was executed to MERS purportedly giving MERS same power over the obligation, the Note and/ or the encumbrance. As a general rule in securitized transactions and especially where MERS is named as nominee, documents of transfer (assignment, endorsement, etc) are created and executed contemporaneously with the notice of default, **thus selecting a participant in or outside the securitization chain to be the party who initiates collection and foreclosures.**

30.    The Loan made to the borrower, **Ms. Caren J. Wilson** was part of a two way transaction in which the two parties at each end thereof each purchased a "FINANCIAL PRODUCT". On one end, the home buyer or the refinancer was "Sold" a residential home loan. On the other end, the Mortgage Bond was sold to an investor. In my opinion, both financial products were securities **(Unregistered and unregulated Security)**. As mentioned in the Prospectus 424(b) 5, "THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION", therefore the parties were selling the unregistered and unregulated securities.

31.    **Neither set of securities were properly registered or regulated**, and the information that would reveal the identity of the "LENDER" is in the sole care, custody and control of the loan servicer or another intermediary conduit in the securitization chain, including but not limited to the trustee or depositor for the special purpose vehicle ("SPV") that re-issued the

homeowner's note and encumbrance as a "DERIVATIVE HYBRID DEBT INSTRUMENT " ("BOND") and equity instrument (Ownership of percentage share of pool assets, of which the subject loan was one such asset in said pool.

32.    Said Security, the Bond, **that was sold to an investor was done by use of borrower's identity and obligation without permission.** In my opinion, it is equally probable that the investors were kept unaware that a maximum of only 2/3 of their investment was actually going to fund Debtor /Borrower's loan and other similarly situated, with the excess being used to create instant income for participants.

33.    Borrower, **Ms. Caren J. Wilson** was, unaware that such large profits or premiums were being generated by virtue of her identity and signature on the purported loan documents.

34.    According to information's from the borrower, **Ms. Caren J. Wilson**, in this case, has made unsuccessful attempts to obtain from these parties and others the identity of the investor/creditor and possession documentation authenticating this identity. Neither Affiant, nor the court will be able to determine the identity of the creditor, if any still remains, until requests for information and documentation have been complied with.

35.    It is also my opinion, that there is a very high probability that all or part of the Borrower's Note was paid in whole or in part by the third parties, based upon the industry practice, my personal review of hundreds of similar transactions including the one at bar, and the published reports. Until such time the identity of the creditor, the document trail, and precise money pertaining to payments by third party sources is disclosed, neither Affiant, nor the court will be able to determine the amounts of borrower's equity in the property.

36.    Borrower's "OBLIGATION" is the amount of the money owed to the creditor, which are none of the entities involved in this case. **The obligation originated with the advance of capital by the investor who purchased mortgage backed securities and ended with the promise to pay by the homeowner who is borrower in the transaction**. The securitization chain obscures the fact that the investor was the creditor to the homeowner/ borrower.

37.    Further, based upon repeated interactions with servicers across the country and specific documents reviewed in this case, it is highly unlikely that any of the current parties in litigation have or desire to have any knowledge of third party debits or credit transaction in the securitization chain of the transaction originated from the subject of this action.

38.    Hence, based upon the industry practice, it is my opinion that it is far more likely than not they would be ignorant of the true status of the amount of principal or interest due, if any on the subject obligation.

39.    Whether the Borrower's note is or ever was in default, a fact that can only be known by the real creditor, the investment bank that is the party in charge of the securitization management decisions. Based upon experience with the parties claiming an interest in the financial product sold to the homeowner in this case and their behavior and method of operating as demonstrated in other case, it is my opinion that none of the participants, with whom the borrower had contact, individually or collectively, has knowledge, or has done due diligence to determine the existence of a default as to the creditor, nor whether as a factual matter, the Note, Mortgage/Deed of Trust or obligation has been extinguished or paid in whole or in part by co-obligors, insurers, Federal bailouts and / or etcetera.

**40.**    The reason "as a factual matter" is emphasized is that Investment Bank in charge of the entire security,    **never intended to credit any borrowers accounts for payments by these third parties sources.** Considering the fact that Affiant is aware of many dozens of times in which there is a pending action to enforce a mortgage and to foreclose upon the home in which information providing the identity of the creditor and the fact that third Party payments have been made on behalf of borrower's obligation, **it is my opinion that this behavior is intentional and designed to obscure the facts long enough for the court to presume that the action taken to collect on the debt or foreclose on the home was reasonable and proper.**

41.    It is in my opinion that many different parties in the securitization chain came to express title or claim right to enforce the Mortgage/ Deed of Trust and Note and that **there was an intention to split the Note from the Deed of Trust,** while heretofore unusual in the market place was common place in securitization of residential loans.

42.    The recorded **encumbrance was never effectively or constructively transferred because it was never executed in recordable form nor was an effort made to create such document by the parties to the instant case until they decided to pursue foreclosure.** All transfer or purported transfers because the Mortgage/Deed of Trust interest as recorded remained in the name of the originator, or that party defined as "NOMINAL LENDER" in the Note and Deed of Trust. Virginia Mortgage statues require that every change of beneficiary interest in Mortgage to real property to be recorded.

43.    Virginia recording statues require that every change of beneficiary interest in a Mortgage to real property to be recorded to be enforceable

against a bonafide purchaser for value without notice of a competing claim. Hence, in my opinion, that the holder of the Note, either Singular or plural, were not the same parties as those who purportedly held the Mortgage at any time pertinent to this case and that was the result that was intended by the mortgage originator (nominal lender) and the participants in the securitization chain, since it was a typical practice in the investment banking industry in their process of securitizing loans throughout the period of 2001-2009.

44.    In my opinion, with high degree of certainty, **the Borrower's title was and is subject to a cloud on title,** a claim of unmarketable title and possibility **a title defect that cannot be cured without the court order as a result of the manner in which borrower's loan was securitized.** In all cases reviewed by me, which include more than 50 securitization chains, the prospectus and other published documents clearly express that a securitized mortgage is treated sometimes as being secured by the real estate, and sometimes as not being secured by the real estate, depending on the context and purpose of the accounting.

45.    The naming of the party[5] other than the investor as Beneficiary under the Mortgage as distinct from a third party named as Payee on the Promissory Note and the same or other third party named as Beneficiary under the policy of the title insurance **demonstrates an intent or presumption or reasonable conclusion that there was intent by some or all of the parties at various times in the steps of the securitization process to separate the Note from the Mortgage/Deed of Trust,** thus creating the cloud on the title for both the owner of the property and any party seeking to express or claim an interest in the real property by virtue of the encumbrance.

46.    I have also reviewed, for the past many years, published financial accounting standards obviously intended for auditors involved in auditing and rendering opinions on the financial statements of entities involved in securitization, Securities issuance and securities sale and trading. **If the known parties in securitization scheme followed the rule, they did not post the instant transaction as a loan receivable[6].** The transaction most likely was posted on their ledgers as fee income or profit which was later reported on their income statement in combination with all other such transactions. These rules explain how and why the transaction was posted on or off the books of the ledger originating entity. **These entries adopted**

---

[5] MERS when MERS is not creditor and there is no name of MERS on the Promissory Note
[6] The Trust is for the current receivables and when the loan is in default it is thrown out of the trust.

**by said companies constitute admissions that the transaction was not considered a loan receivable on its balance sheet, or on the ledgers used to prepare the balance sheet, but rather shown on the income statement as fee for service as a conduit.** These admissions in my opinion are fatal to any assertion by any such party currently seeking to enforce mortgages in their own names on their own behalf, including but not limited to the securitization participants in this case.

47.    It also appears that the standard industry practice of creating a yield spread premiums between the creditor and originator was extended in the case of securitization chain such that in this case, in my opinion, it is highly probable, for beyond 50% probability that the borrower's loan was sold or presold to the investors at a gross profit to the participants in the securitization chain of at least 35% of the total principal balance of the note. It is also my opinion that this was done without full disclosure to the investors and that is tantamount to fraud upon the investors.

48.    In my opinion the investors were and remain completely unaware that much, and in many cases most of the money they supplied was used to fund fees for the participants in the securitization chain, with the rest used to fund bloated mortgage loans based upon inflated appraisals by companies that had a less than an arm length relationship with the originator and others involved in obtaining approval for the loan. These yield spread premiums far exceed those ever paid prior to the securitization of the residential mortgages. With yield spread premiums such as these, there was no way that there could ever be a legitimate profit made by any investor under ordinary circumstances, with the exception of those in upper tranches, whose profit was insured from the start, no matter how lacking in viability were these investment vehicles on the whole, because of the way payments to the investors were prearranged.

49.    It is also opinion that **the overall security was planned by the aggregator and other participants to fail from the start.** The reason for the intended failure of the overall pool in my opinion was to better insure that the fraud perpetrated on the investors would be less likely to be discovered and to make it so that additional unearned profit could be made by the aggregator and the other participants, based on the third party payments discussed above that were payable only when there was a declaration of default by the pool, often called a "trigger event". **(This trigger event caused the trust, "RALI Series 2007-QS1 Trust" to dissolve, thus terminating the duties of Trustee, "Deutsche Bank Trust Company Americas")**

50.    In my opinion, the allegations regarding the fraud and conversion, as well as intentional aiding and abetting or conspiracy are well known. The theory that each participant, including the very first party in the securitization chain, the lender on the Mortgage/Deed of Trust, is complicit in acts and series of acts with the knowledge that these actions will harm the borrowers, including fraud and conversion, and/ or are part of a scheme to commit fraud in the form of not crediting borrowers account by the third parties source payments, thereby converting ownership of the property from the borrower, the plaintiff in this case, is well respected among those that study transactions of this sort.

51.    The following are types of wrong performed upon borrowers, at least some of which occurred with the Borrower, **Ms. Caren J. Wilson**, in this case, by loan brokers and originator " Home Coming Financial LLC" in the original Mortgage/Deed of Trust), which were acts in furtherance of an overall fraud and conversion scheme that were necessary to its success, because without a large number of loans doomed to fail from the start the main planner and major participants could not be certain that the mortgage pools as whole would fail.

   a) The fact that the Borrowers paid as much as double what the homes were actually worth, due to a real estate market that was artificially inflated because of the wealth of investment dollars looking for a home following the bursting of the dot.com bubble, followed by what amount to an economic depression for the working poor.

   b) Borrowers cannot afford the payments and they are losing their homes, and the unbelievable abundance of foreclosures shows the extent to which any defect in character they may have in common to large numbers of persons.

   c) Appraisal values were often over-inflated even above the artificially high values provided by the market and appraisers were advised they would not receive further business unless they cooperated.

   d) Borrower was misled as to what the monthly payments would be a few years into the loans.

   e) In more extreme cases, borrowers were often offered teaser rates that they qualified for, but which greatly increased within a very short period of time.

   f) There was so much investment money looking for someone to borrow it that could sign a note during this time, that loans were pushed at people with persuasive and high pressure tactics;

   g) Borrowers were advised that they could afford much more home then they really could. It appears hard to resist a home that is much nicer

than one thought they could afford, when someone that appears to be reputable professional assures them they can afford. Optimism and wishful thinking overpower reason.

h) Loan brokers were pushed to offer loans that were on worse terms than the borrowers could qualify for. Sometimes they received higher commissions, often in secret (Yield Spread Premiums "YSP"), for getting people to take out loans on terms that were less beneficial than a loan that borrowers would have qualified for. And sometimes the only loan products that loan brokers had available to them were those containing unfavorable terms.

i) Borrowers were advised that they did not have to worry about the payments being unaffordable in the future, because they would be definitely be able to refinance again at that point, because was so solid.

j) Underwriters were pushed by their supervisors to pass through bad loans, many of which were obviously doomed to fail from the start.

52.   These undisclosed yield spread premiums ("YSP Tier-I, II and III") are a liability of the participants in the securitization chain, including the loan originator and all participants owed to Homeowner /Borrower. **In my opinion, this disclosure does not appear on any of the Homeowner's documents identifying the parties participating in fee – splitting or yield spread premiums nor the amounts involved as required and other Federal and State laws.** Further, no information appears in debtor's closing documents that would have caused him to inquire about such a premium.

53.   Questions as to statute of limitation would not be applicable on a number of theories, including, but not limited to: fraud tolls the statute of limitations; until the name of the true creditors, lender, and beneficiary is made known to the borrower, the statute of limitations time frame does not begin to run.

54.   A MBS Pool Trust, **"RALI Series 2007-QS1 Trust"** is not really a "TRUST". The Trustee, "Deutsche Bank Trust Company Americas" thereof has been involved in a joint enterprise with the other participants in the creation of "Financial Product" for sale to the investors, the purchasers of "Mortgage Bonds". The so called pool "Trustee" is more like an administrator (In the present case admitted in Pooling and Servicing Agreement dated 12/01/2006 filed as Exhibit 10 with the 8K report, filed on 02/15/2007 at 3:31pm ET as per Securities and Exchange File # 333-131213-34 and Accession # 1382368-7-12.

55.   The first loyalty of the pool trustee, "Deutsche Bank Trust Company Americas is not to the investors, but to the parties (Residential   Accredit

Loans, Inc., as depositor, **Residential Funding Company, LLC**, as a seller& Sponsor, Residential Funding Company, LLC, as master servicer (the "Master Servicer"), Citigroup Global Markets Inc, Morgan Stanley & Co, Residential Funding Securities, LLC (Securities Underwriters) to which it entered into contract with, the participants. Based on its actions as can be seen over and over again, it seems it is more interested finding ways not to reimburse the investors than find ways to do so.

56.    In securitization of the loans, the rights of various named mortgagees, assignees and/ or trustees has each been superseded by succeeding conduits including the alleged trustee or officer of the Special Purpose Vehicle (SPV) that issued bonds to the investors who at least at some point in time material to the subject transaction with the homeowner in subject transaction was holder of Mortgage Backed Security (MBS).

57.    The power of said officer or Trustee, "Deutsche Bank Trust Company Americas", is limited to only what the certificate holders authorize. These have also admitted in pooling and Servicing Agreement, dated 12/01/2006 under the "Duties of Trustee" (filed as Exhibit 10 with the 8K report, Filed On 2/15/07 3:31pm ET  SEC File 333-131213-34 .
Accession Number 1382368-7-12

58.    It cannot be overemphasized that the investors were not signatories to the securitization documents. Only the participants were. The transaction with the investor in which they advanced "LOAN" money for the subject homeowner's product, was consumed most likely before the transaction with the homeowners or **was subject to binding agreement between various participants in securitization scheme that pre-dated the transaction with the homeowner.**

59.    Therefore the actual undisclosed Creditor was the investor who advanced the cash and who was known by the securitization participants. And therefore was the only party entitled to claim first lien either legally or under equitable subrogation.

60.    Accordingly, the only potential party to a foreclosure wherein the purported creditor alleges financial injury and therefore a right to collect the obligation, enforce the note or Mortgage/Deed of Trust is either a party who has actually advanced cash and stands to lose money or an authorized representative who can disclose the principal, provide proof of service or notice and show such express, unequivocal and complete authority to perform all acts and make all decisions without condition.

61.    In my opinion, any condition placed upon the trustee to act for the MBS Pool Certificate Holders, including the power to enter into any compromise, makes the Trustee, "Deutsche Bank Trust Company Americas" something

less than a Real Party in interest on behalf of the certificate Holders.(Now the Trusts have been dissolved)

62.  Also, a party must be present that is answerable to the claims, affirmative defenses and counter claims of the homeowners for such causes of action or defenses as might be applicable or they would be blocked potentially by collateral estoppel if the court determined that the foreclosing party was acting within the scope of its agency for principal, the certificate holders.

63.  In my opinion, as above, and with a reasonable degree of factual and certainty, the disclosed principals in the securitization chain, up to and including the pool trustee (Deutsche Bank Trust Company Americas), are neither creditors nor are they authorized agents for the creditors, without proof that they have been granted this authority pursuant to the terms of the securitization documents.

64.  Otherwise, **the participants, including servicers and pool trustees, in my opinion, are interlopers or imposters whose design is to take title to the property they have no right to claim, and to enforce a note which is evidence of an obligation that is not owed to them but rather to another.** The details of this information , whether the Special Purpose Vehicle still exists, whether the investor has been paid in full through "THIRD PARTY PAYMENTS" are known only to these securitization participants and therefore undisclosed investors. And the participants have demonstrated time and time again that they are not credible.

65.  In my opinion the attorneys for the known securitizations participants do not have any authority to represent the creditor, and could not represent them due to the obvious conflict of interest, to wit: the investor upon learning that a substantial amount of their advance of cash was pocketed by the intermediaries and now is left with the mortgage whose nominal value is far below what was paid, and whose fair market value is far below the nominal value, would have potential substantial claims against the securitization participants for fraud, conversion, breach of contract, and other claims.

66.  Fraud upon investors in relevant to borrowers because it is additional evidence of an overall fraud and conversion scheme against borrowers, because it tends to show motive and intent in the fraud and conversion claims by the borrowers.

67.   Dismantling of "QSPE" [7] / "TRUST" (**RALI Series 2007-QS1 Trust**) and consolidation of Bank's Balance sheets demonstrate the falsity of foreclosures. Assignments to a Trust is now gone. Mezzaine Tranches are locked out long before their time, market collapsed due to the trigger events topped, when cumulative losses on the mortgage are higher than the certain level and delinquency event occurred and as a result of credit default swaps payments[8] were executed, senior tranches were paid and nothing remained for the Mezzaine Tranches, who were already getting nothing as these were locked out, the trust was dissolved;

a) No payments are owed to any certificate holders (Tranches) or synthetic security holders (derivatives)

b) How can a fabricated document are formalized to trust after dissolution of TRUST.

c) Fabricated documents to a Trust that no longer function and for which "TRUSTEE[9]'S DUTIES" have been TERMINATED

d) Currently no distribution to certificate holders, even for the "CURRENTLY PAYING MORTGAGES".

e) Payments are not being directed to the original designated trust, **"RALI Series 2007-QS1 Trust"** in Plaintiff's case, because the trigger event and payments of credit default swaps, insurance proceeds, caused its demise.

f) Since Trust has been dissolved and Deutsche Bank Trust Company Americas, is no more Trustee, has acted wrongly in regard to the issue at hand and now acting without any standing, "those seeking equity must do equity"

g) The True Sale is from Depositor (Residential   Accredit Loans, Inc., an affiliate of Residential Funding Company, LLC.) to the Securities underwriters, which are Citigroup Global Markets Inc, Morgan Stanley & Co and Residential Funding Securities, LLC, and not to the Trustee which is Deutsche Bank Trust Company Americas in the present case.

---

[7] Maiden Lane Transactions, Maiden Lane LLC, Maiden Lane II LLC, Maiden Lane III LLC, Federal Reserve Statistical Release". Federal Reserve-Bank of New York August 10, 2010. http://www.federalreserve.gov/releases/h41/Current/, "SIGTARP Report 10-003 - Factors Affecting Efforts to Limit Payments

[8] Maiden Lane III LLC (a Special Purpose Vehicle consolidated by the Federal Reserve Bank of New York) (the "LLC") is a Delaware limited liability company that was formed on October 14, 2008 to acquire Asset-Backed Security Collateralized Debt Obligations ("ABS CDOs") from certain third-party counterparties(Banks) of AIG Financial Products Corp. ("AIGFP"). In connection with the acquisitions, the third-party counter parties (Banks) agreed to terminate their related credit derivative contracts with AIGFP.
[9] Deutsche Bank Trust Company Americas  et al

68. Borrower's obligation, from prior to its inception;
    a. Was destined for a transition to a Mortgage Backed Security. This was never disclosed, to borrower.
    b. It was never conveyed that the obligation was going to be converted to bond and forever separated from the security (Title) that borrower; **Ms. Caren J. Wilson** gave as collateral.
    c. It was never disclosed that future assignments and sales would not be recorded in the Culpeper County Lands Record.
    d. It was never disclosed that the lending institution (Home Coming Financial LLC) had been involved in this practice for several years prior to borrower's signing of the note and that all the actors were already in place. Prospectus Supplement filed with the SEC as per, dated 12/06/2006 ("ProS") filed with the SEC, file # Filed On 01/29/2007 at 4:37pm ET, SEC File 333-131213-34 , Accession Number 891092-7-238) and borrower **Ms. Caren J. Wilson** signed the settlement papers on 12/13/2006.
    e. It is quite possible, given the number and frequency of the MBS offerings by Home Coming Financial LLC, that this loan was a "table funded loan", where the nominal lender, Home Coming Financial LLC, in this case never even put up any funds and the loan was prefunded by the bond offering. **(Money was aggregated first)** This "prefunding" being something that is addressed in the Prospectus issued by Depositor, Residential   Accredit Loans, Inc., an affiliate of Residential Funding Company, LLC.

69. Based on the fact that the obligation was sold, on 01/23/2006 (11 months before) into the **RALI Series 2007-QS1 Trust**, according to SEC filings, and prior to Plantiff's first scheduled loan payment due on 02/01/2007 (S-3 Registration Form filed by Residential  Accredit Loans with Securities and Exchange Commission as per SEC file # 333-131213 on 01/23/2006 and declared effective on 03/03/2006, of Mortgage  Asset-Backed Pass-Through Certificates, RALI  Series 2007-QS1)
    a. It is easy to surmise the intent was in-place prior to closing of the obligation.
    b. Given the sequence with which borrower, **Ms. Caren J. Wilson's** obligation was transferred, by the various actors involved in the bond offering of the, "**RALI Series 2007-QS1 Trust**" , it is easy to apply the Step-transaction doctrine to see that this was the intent from the very beginning and should have been disclosed, to **Ms. Caren J. Wilson** when she signed the documents at closing;
    c. Step-transaction doctrine is a principle applicable to Taxation laws. According to this principle effect should be given to the substance, rather than the form, of a transaction, by ignoring for tax purposes steps of an integrated transaction that when taken separately are without substance. In short, the tax

    liability should be determined by viewing the transaction as a whole, disregarding one or more non substantive, intervening transactions taken to achieve the final result.

d. This doctrine expresses the familiar principle that in applying the income tax laws, the substance rather than the form of the transaction is controlling. The U.S. Supreme Court has expressly sanctioned the step transaction doctrine in many cases, noting that interrelated yet formally distinct steps in an integrated transaction may not be considered independently of the overall transaction.

e. Courts generally enunciate three basic tests that define the criteria upon which application of the step transaction doctrine applies;

    a) The interdependence test,

    b) The end result test and the binding commitment test.

    c) The interdependence test requires an inquiry as to whether the steps were so interdependent that the legal relations created by one transaction would have been fruitless without a completion of the series. The end result test examines whether it appears that separate transactions were really component parts of a single transaction intended from the outset to be taken for the purpose of reaching the ultimate result. The binding commitment test examines whether there was a binding commitment to undertake the later step in a series of transactions. [Falconwood Corp. v. United States, 422 F.3d 1339 (Fed. Cir. 2005)]

70.     Because of the IRS rules, regulations and Taxation laws relating to REMIC's it is a necessity on the part of the various actors in the securitization process that there must be a de-recognition of the assets (obligation) and thus a TRUE sale of the obligation. This is also a requirement of General Acceptable Accounting Practices (GAAP) as well as FASB Statement No.140.

**71.**     The questions that beg to be asked are; 1) Since the loan with the earliest payment to the trust was months prior to borrower **Ms. Caren J. Wilson's** Mortgage, why wasn't it revealed to borrower on 12/13/2006, at closing that the obligation was intended to be put in a MBS? **Was there fraud committed at the closing by this failure to disclose?**

i.   That fraud was perpetrated from the very beginning.

ii.   There was NO disclosure as to the intent of Home Coming Financial LLC and **Residential Funding Company, LLC** (seller and sponsor) to sell the loan and assign the Mortgage to Residential Accredit Loans, Inc., an affiliate of Residential Funding Company, LLC. (A bankruptcy remote shell company), sold the loan and assigned the Mortgage to Deutsche Bank Trust Company Americas (trustee). The trustee then repackaged several thousand loans together and sold them as a BOND offering to

Citigroup Global Markets In, Morgan Stanley & Co, Residential Funding Securities, LLC (Securities Underwriters).

   iii. **When this was done the obligation (note) was separated from the security (Mortgage/Deed) and thus unperfected.**

   iv. Citigroup Global Markets In, Morgan Stanley & Co, Residential Funding Securities, LLC (Securities Underwriters), then made the offering of sale of the "NO RECOURSE" bond available to the market place.

   v. The bonds are exchanged with an underwriter (Citigroup Global Markets In, Morgan Stanley & Co, Residential Funding Securities, and LLC) for cash. The underwriter then sells the securities to investors, through the Dealers and Agents for cash."

   vi. Only the subordinate tranches were sold first — while the "Underwriter" — kept most of the senior pass through securities.

   vii. The "holding" of the note — STOPS — with the Depositor (Residential Accredit Loans, Inc., an affiliate of Residential Funding Company, LLC)

   viii. Only a "pool" of cash rights is "sold" in the securitization process. At the very least, the "Holder" theory would be with the TRANCHE owners — which are, primarily, the security underwriter (Citigroup Global Markets In, Morgan Stanley & Co, Residential Funding Securities, LLC)

   ix. At that point it was sold to several entities which Residential  Accredit Loans, Inc., an affiliate of Residential Funding Company, LLC, was required to disclose to the SEC (Securities and Exchange Commission). These investors, by all rights of logic, would now be the "Holder in Due Course" of the obligation minus of course the security due to the separation committed by the actors in the PSA.

   x. Harm has been committed on the Title to Plaintiffs property in that it has been **"clouded"** by the actions of these actors, they have **failed to maintain a "PERFECTED LIEN"**, and by the very fact of the methodology of the PSA they knew from prior to the inception that they were going to bifurcate (separate) the note from the obligation and were going to hide this fact behind a wall of secrecy.

72.   First the act of closing a loan wherein the lender is not revealed invalidates or destroys the note even though acceptance of the money creates an obligation. **The question is to whom that obligation is owed.** Second by **"securitizing the receivable according to terms far different than the note ever recited**, the description contained in the note becomes increasingly remote from a proper description of the obligation**, which **keeps changing as the receivable, not the note, moves up the securitization chain.** Thus the receivable — the actual obligation that the note purported to describe — keeps changing while the note remains the same and **the original note never moves physically by delivery, transfer documents (endorsement, assignment etc.)**

73.   Thus the point is that the note is destroyed by operation of law.

74.   The formation of the Maiden Lane LLCs in 2008 occurred during a time of severe economic distress in the United States. The sharp deterioration in

the U.S. housing market in 2007, led to a loss of confidence in the value of mortgage-related products and in the financial institutions with exposures to these products. The ensuing funding pressures on a range of financial institutions and strained liquidity conditions across the financial system led the Federal Reserve to take a series of unprecedented policy actions to contain the broader risks the financial crisis posed to the economy. Among these actions, the Federal Reserve Board authorized the Federal Reserve Bank of New York (New York Fed) to form three limited liability companies under **Section 13(3) of the Federal Reserve Act** to facilitate lending in support of specific institutions.

75.   **Maiden Lane I LLC: Purpose:** ML LLC was created to facilitate the merger of JP Morgan Chase & Co. (JPMC) and Bear Stearns Companies, Inc. (Bear Stearns) by purchasing approximately $30 billion in assets from the mortgage desk at Bear Stearns. The New York Fed lent ML LLC approximately $28.82 billion.

76.   **Maiden Lane II, LLC: Purpose:** ML II LLC was created to alleviate capital and liquidity pressures on American International Group Inc. (AIG) stemming from its securities lending program by purchasing $20.5 billion in residential mortgage-backed securities (RMBS) from several of AIG's U.S. insurance subsidiaries. The New York Fed lent ML II LLC approximately $19.5 billion

77.   **Maiden Lane III, LLC: Purpose:** ML III LLC was created to alleviate capital and liquidity pressures on American International Group Inc. (AIG) stemming from credit default swap contracts by purchasing $29.3 billion in multi-sector collateralized debt obligations from certain counterparties of AIG Financial Products Corp. (AIGFP), enabling AIGFP to terminate the associated CDS. The New York Fed lent ML III LLC approximately $24.3 billion.

78.   The U.S. Treasury is reported to own $4.6 TRILLION in mortgage bonds, which would make it the creditor in millions of homes that; (a) have already been "foreclosed"

   (b) Are in "foreclosure" or

   (c) Going to be foreclosed. Yet not once in any court action is the U.S. Treasury named as the creditor or having any interest in any mortgage. They paid 100 cents on the dollar to save the big powers, Deutsche Bank et al and many more on Wall Street (ignoring the smaller players who had played fair and square) and now they are going to test the market by starting to sell these mortgage bonds back into the marketplace.

79.    Why the government's programs have been so anemic in confronting the fraudulent, illicit and immoral behavior of Deutsche Bank et al and many more on Wall Street and the pretender lenders out there foreclosing on homes they never financed, you don't have to look any further than the $4.6 TRILLION that the government says it is holding in mortgage-backed bonds that are backed by fatally defective and fraudulent mortgages and notes.

80.    If the government were to tell the truth the way should be done, then the government would have to admit that

(a) Under the best case scenario they spent 100 cents when the speculative value was only 2-3 cents and

(b) There is something fundamentally wrong with the mortgage backed bonds and the underlying fatally defective, fraudulent mortgages and notes. THAT WOULD AMOUNT TO ADMISSION THAT THE TAXPAYERS GIFTED $4.6 TRILLION TO WALL STREET.

81.    To put this into perspective: 7 million homes have been fraudulently sold at auction on credit bids submitted by non-creditors. Not one penny was paid at these auctions or any money before that because the bidder never lent any money nor did they purchase the receivable. The bidder was paid as a stand-in for the undisclosed and potentially unknowable creditor just like the "loan originator" was paid to stand in as the lender.

82.    Applying the $4.6 TRILLION from the U.S. Treasury to cover losses to investors and homeowners caused by fraudulent appraisals, fraudulent ratings, and deceptive lending practices, (instead of giving the money to Deutsche Bank Trust Company Americas et al and many more on Wall Street) would have allowed an average of $657,142 to be applied on each so-called mortgage transaction providing more than enough to provide substantial relief to investors, and correcting the bogus loans to fair market value levels, thus leaving the investors where they intended to be and the homeowners where they intended to be. Oops!

83.    U.S. Treasury maintains the illusion of authenticity of the mortgage bonds and the mortgages, obscures the identity of creditors in foreclosures, and continues to indirectly prop up balance sheets of mega institutions on Wall Street. The true value of the group is not as reported but more like a negative figure. Let it fall, and do what is right for investors and homeowners and the economy is largely fixed. Continue with current policy and our credibility in world markets will continue to erode. I'm not the only one who figured this out. Central Bankers and world economists understand this perfectly well.

84.    Further affiant saith not

This concludes this Sworn, Declaration made under penalty of perjury" on this day 01ST _____, of ____ JULY _____ 2011.





M. Nawaz Raja

Mortgage Forensic Auditor

42907 Parkbrooke Court

Broadlands Virginia 20148

(540) 687-0004

therajafamily@gmail.com

State of _VIRGINIA_

County of _LOUDOUN_

Acknowledged, subscribed and sworn to before me this _01_ day of _July_ 2011

Notary Registration Number: _7042295_    Notary Public: _____

My Commission Expires: _1/31/2014_

SEAL

> JOSEPH LINDSEY STARK
> Notary Public
> Commonwealth of Virginia
> 7042295
> My Commission Expires Jan 31, 2014



RALI SERIES 2007-QS1 TRUST

Home Coming Financial LLC
(Nominal Lender on DOT & Note)

Loans

Residential Funding Company LLC
(Seller/Sponsor)

Loans

Residential Accredit Loans, Inc
(an affiliate of Residential Funding Company, LLC.)
DEPOSITOR

ZERO
Never
Went
to
Trust

Note never went to the
Trust Empty (No Assets)

RALI Series 2007-QS1 Trust
ISSUING ENTITY (TRUST)

Trustee's Duties are just
Administrative
WHAT
Trustee is doing is without any
AUTHORITY

Deutsche Bank Trust Company Americas
Trustee

Cash

Cash

Certificates/Bonds

Cash

S-3 Registration Form filed by Residential Accredit Loans with Securities and
Exchange Commission as per SEC file # 333-131213 on 01/23/2006 and declared
effective on 03/03/2006, of Mortgage Asset-Backed Pass-Through Certificates,
RALI Series 2007-QS1

Loan was sold 11 Months Before Closing.

Citigroup Global Markets Inc
Morgan Stanley & Co
Residential Funding Securities, LLC
(SECURITIES UNDERWRITERS)

Certificates
Bonds

Dealers

Cash

Certificates
Bonds

Agents

Cash

Certificates
Bonds

Investors

Cash

# LAW OF THE CASE

The law of the case is decreed as follows:

## Section I

1. <u>Court</u>. The person and suit of the sovereign; the place where the sovereign sojourns with his regal retinue, wherever that may be. [Black's Law Dictionary, 5th Edition, page 318.]

2. <u>Court</u>. An agency of the sovereign created by it directly or indirectly under its authority, consisting of one or more officers, established and maintained for the purpose of hearing and determining issues of law and fact regarding legal rights and alleged violations thereof, and of applying the sanctions of the law, authorized to exercise its powers in the course of law at times and places previously determined by lawful authority. [Isbill v. Stovall, Tex.Civ.App., 92 S.W.2d 1067, 1070; Black's Law Dictionary, 4th Edition, page 425]

3. <u>Court of Record</u>. To be a court of record a court must have four characteristics, and may have a fifth. They are:

   A. A judicial tribunal having attributes and <u>exercising functions independently of the person of the magistrate designated generally to hold it</u> [Jones v. Jones, 188 Mo.App. 220, 175 S.W. 227, 229; Ex parte Gladhill, 8 Metc. Mass., 171, per Shaw, C.J. See, also, Ledwith v. Rosalsky, 244 N.Y. 406, 155 N.E. 688, 689][Black's Law Dictionary, 4th Ed., 425, 426]

   B. <u>Proceeding according to the course of common law</u> [Jones v. Jones, 188 Mo.App. 220, 175 S.W. 227, 229; Ex parte Gladhill, 8 Metc. Mass., 171, per Shaw, C.J. See, also, Ledwith v. Rosalsky, 244 N.Y. 406, 155 N.E. 688, 689][Black's Law Dictionary, 4th Ed., 425, 426]

   C. Its acts and judicial proceedings are enrolled, or recorded, for a perpetual memory and testimony. [3 Bl. Comm. 24; 3 Steph. Comm. 383; The Thomas Fletcher, C.C.Ga., 24 F. 481; Ex parte Thistleton, 52 Cal 225; Erwin v. U.S., D.C.Ga., 37 F. 488, 2 L.R.A. 229; Heininger v. Davis, 96 Ohio St. 205, 117 N.E. 229, 231]

   D. Has power to fine or imprison for contempt. [3 Bl. Comm. 24; 3 Steph. Comm. 383; The Thomas Fletcher, C.C.Ga., 24 F. 481; Ex parte Thistleton, 52 Cal 225; Erwin v.

U.S., D.C.Ga., 37 F. 488, 2 L.R.A. 229; Heininger v. Davis, 96 Ohio St. 205, 117 N.E. 229, 231.][Black's Law Dictionary, 4th Ed., 425, 426]

E. Generally possesses a seal. [3 Bl. Comm. 24; 3 Steph. Comm. 383; The Thomas Fletcher, C.C.Ga., 24 F. 481; Ex parte Thistleton, 52 Cal 225; Erwin v. U.S., D.C.Ga., 37 F. 488, 2 L.R.A. 229; Heininger v. Davis, 96 Ohio St. 205, 117 N.E. 229, 231.][Black's Law Dictionary, 4th Ed., 425, 426].

4. The following are magistrates: That all power is vested in, and consequently derived from, the people, that magistrates are their trustees and servants, and at all times amenable to them. Article 1 Section 2, People the source of power. The Constitution of Virginia.

5. "...our justices, sheriffs, mayors, and other ministers, which under us have the laws of our land to guide, shall allow the said charters pleaded before them in judgment in all their points, that is to wit, the Great Charter as the common law....' Confirmatio Cartarum, November 5, 1297" "Sources of Our Liberties" Edited by Richard L. Perry, American Bar Foundation.

6. The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly. [Code of Virginia. § 1-200. The common law].

7. "The people of this State, as the successors of its former sovereign, are entitled to all the rights which formerly belonged to the King by his prerogative." Lansing V, Smith, 4 Wend. 9 (N.Y.) (1829), 21 Am. Dec. 89 10C Const. Law Sec. 298; 18 C Em. Dom. Sec. 3, 228; 37 C Nav. Wat. Sec. 219; Nuls Sec. 167; 48 C Wharves Sec. 3, 7.

8. "...at the Revolution, the sovereignty devolved on the people; and they are truly the sovereigns of the country, but they are sovereigns without subjects...with not to govern but themselves...". CHISHOLM v. GERORGIA (US) 2 Dall 419, 454, 1 L Ed 440, 455 @ DALL (1793) pp471-472.

9. "The very meaning of 'sovereignty' is that the decree of the sovereign makes law." American Banana Co. v. United Fruit Co 29 S.Ct. 511, 513, 213 U.S. 347, 53 L.Ed. 826, 19 Ann. Cas. 1047.

10. "The State cannot diminish rights of the people." Hurtado v. People of the State of California, 110 U.S. 516.

11. "Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them." Miranda v Arizona, 284 US 436, 391.

12. "There can be no sanction or penalty imposed upon one because of this exercise of constitutional rights." Sherer V Cullen, 481n F 946;

13. The rights enumerated in this Bill of Rights shall not be construed to limit other rights of the people not therein expressed. Article 1. Section 17.  Construction of the Bill of Rights. The Constitution of Virginia.

14. "The assertion of federal rights, when plainly and reasonably made, <u>is not to be defeated under the name of local practice.</u>" Davis v. Wechsler, 263 US 22, 24.

15. "The judicial power of the Commonwealth shall be vested in a Supreme Court and in such <u>other courts of original</u> or appellate jurisdiction subordinate to the Supreme Court as the General Assembly may from time to time establish. Trial courts of general jurisdiction, appellate courts, <u>and such other courts as shall be so designated by the General Assembly shall be known as courts of record.</u>" Article VI, Section 1. Judicial power; jurisdiction. Constitution of Virginia.

16. "Republican government. Once in which the powers of sovereignty are vested in the people and are exercised by the people, either directly, or through representatives chosen by the people, to whom those powers are specially delegated. In re Duncan, 139 U.S. 449, 11 S.Ct. 573, L.ED. 219; Minor v. Happersett, 88 U.S. (21 Wall.) 162, 22 L.Ed. 627. "Black's Law Dictionary, Fifth Edition, p. 626.

17. "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme law of the land; and the Judges in every State shall be bound thereby; any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Constitution for the United States of America, Article VI, Clause 2

18. "Henceforth the writ which is called <u>Praecipe shall not be served on any one for any holding so as to cause a free man to lose his court.</u>"  Magna Carta, Article 34.

19. An act of the court shall prejudice no man. Jenkins' Eight Centuries of Reports, 118; Brooms Legal Maxims, Lond. ed. 115; 1 Strange's Reports, 126; 1 Smith's Leading Cases, 245-255; 12 English Common Bench Reports by Manning, Granger, & Scott, 415.

20. In consideration of: *"Ad questionem juris non respondent Juratores."* [i.e. jurors do not reflect upon (consider) the question of law.] "The Annotist says, that this is indeed a maxim in the Civil-Law Jurisprudence, *but it does not bind an English jury, for by the common law of the land the jury are judges as well as the matter of law, as of the fact*, with this difference only, that the judge on the bench is to give them no assistance in determining the matter of *fact*, but if they have any doubt among themselves relating to matter of *law*, they may then request him to explain it to them, which when he hath done, and they are thus become well informed, they, and they only, become competent judges of the matter of *law*. And this is the province of the judge on the bench, namely, to show, or teach the law, but *not to take upon him the trial of the delinquent, either in matter of fact or in matter of law.*"

21. "The Jury has the Right to determine both the law and the facts."; U.S. Supreme Court Chief Justice Samuel Chase.

22. "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law." – Amendment VII, Constitution for the united States of America.

**Section II**

23. The United States Uniformed Commercial Code and The Federal Rules of Civil Procedure which are complimentary to the rules of the above entitled court and will be used as documented. The rules shall be construed and administered to secure the just, speedy, and inexpensive determination of this action.

**Section III**

24. This Court of Record shall take special notice of the following:

   a. MERS Announcement Number 2011=01. "...MERS is planning to shortly announce a proposed amendment to Membership Rule 8l; The proposed amendment will require Member to not foreclose in MERS' name..."

   (a)

12 USC 1841 – <u>Definitions</u> (updated 05-04-2009)

    b.  (c) Bank Defined – for purposes of this chapter—

        (I) In general - Except as provided in paragraph (2), the term " bank" means any of the following:

        (A) An insured bank as defined in section 3 (h) of the Federal Deposit Insurance Act [12 U.S.C. 1813 (h)].

        (B) An institution organized under the laws of the United States, any State of the United States, the District of Columbia, any territory of the United States, Puerto Rico, Guam, American Samoa, or the Virgin Islands which both—

        (i) accepts <u>demand deposits</u> or deposits that the depositor may withdraw by check or similar means for payment to third parties or others, and

        (ii) is engaged in the business of making commercial loans.

    As used in this chapter—

    (a) Definition of Bank and Related Terms--\

    (1) Bank – the term "bank"—

(A) means any nation bank and State bank, and any Federal branch and insured branch.

    (B) includes any former savings association.

  a) Officers of national bank in handling its funds are acting in a fiduciary capacity, and <u>cannot make loans and furnish money contrary to law or in such improvident manner as to imperial its funds</u>. First Nat. Bank v Humphreys, Okla. 1917, 168 P. 410, 66 Okla 186. (If an FDIC insured bank cannot by law make loans, where did the loan come from?)

  b) National bank is <u>not authorized under national banking laws to lend deposited money on depositor's behalf</u>. Carr v. Weiser State Bank of Weiser, Idaho 1937, 66 P 2d 1116, 57 Idaho 599. (Where did the loan come from?)

  c) Mortgage Securities Inc v Hartley LORD, Ne 4D02-4051, July 23, 2003. The District Court of Appeal, Stone, J., held that <u>mortgagee could not maintain cause of action to enforce missing promissory note or foreclose mortgage, in absence of proof that mortgagee or assignor ever had possession of note</u>.

  d) SMS Financial LLC v. Abco Homes, Inc. No. 98-50117 February 18, 1999 (167 Fm 3d, 235, 5th Circuit Court of appeals). <u>Where the complaining party can not prove the existence of the note, then there is no note.</u> To recover on a promissory note, the plaintiff

must prove: (1) the existence of the note in question. (2) that the party sued signed the note, (3) that the plaintiff is the owner and holder of the note, and (4) that a certain balance is due and owing on the note. Since no one is able to produce the 'instrument' there is no competent evidence before the Court that any party is the holder of the alleged note or the true holder in due course.

e) Federal Circuit Courts have ruled that the only way to prove the perfection of any security is by actual possession of the security. See Matter of Staff Mortg & Inv. Corp., 550 F. 2d 1228 (9th Cir. 1977), "Under the Uniform Commercial Code, the only notice sufficient to inform all interested parties that a security interest in [an] instruments has been perfected is actual possession by the secured party, his agent or bailee."

f) In Re Investors & Lenders, Ltd. 165 B.R.389 (Bkrtcy I) N.J. 1994. Unequivocally the Court's rule is that in order to prove the 'instrument', possession is mandatory. In addition to the note, another element of proof is necessary – an accounting that is signed and dated by the person responsible for the account. Claim of damages, to be admissible as evidence must incorporate records such as a general ledger and accounting of an alleged unpaid promissory note, the person responsible for preparing and maintain the account general ledger must provide a complete accounting which must be sworn to and dated by the person who maintained the ledger. See Pacific Concrete F.C.U.V. Kauanoe, 62 Haw. 334, 614 P.2d 936 (1980), G.E. Capital Hawii, Inc v Yonenaka 25 P 3d 807, 96 Hawaii 32, (Hawaii App 2001), Fooks v Norwich Housing Authority 28 Conn. I. Rptr.

25.    The following cases will be the foundation for Surrendering of the Note to the Court:

A) Pursuant to *JOHNSTON v. HUDLETT, Id.*, the Genuine Original NOTE **"must be surrendered prior to the issuance of a judgment."**

B) Pursuant to *JOHNSTON v. HUDLETT, Id.*, **"The judgment takes the place of the Promissory note."**

C) Pursuant to *JOHNSTON v. HUDLETT, Id.*, **"Surrendering the note is essential so that it cannot thereafter be negotiated."**

D) Pursuant to *PERRY V. FAIRBANKS, Id.*, **"The judgment cancels the note."**

E) RAYMOND E. SHORES AND MARCENE G. SHORES v. FIRST FLORIDA RESOURCE CORPORATION (10/11/72) Appellants are entitled

to assurance that they will not later be sued by a holder of these instruments... If there are parties having any claim to these instruments they should be brought into the action and the matter determined. The instruments should then be reestablished, recorded and an appropriate judgment entered.

26. 6500 - Consumer Protection

### Subpart C-Closed—End Credit

### § 226.18 Content of disclosures.

For each transaction, the creditor shall disclose the following information as applicable:

(b) *Creditor*. The identity of the creditor making the disclosures.

27.
True. Conformable to fact; correct; exact; actual; genuine; honest. In one sense, that only is "true" which is conformable to the actual state of things. In that sense, a statement is "untrue" which does not express things exactly as they are. But in another and broader sense the word "true" is often used as a synonym of "honest", "sincere", not "fraudulent." Zolintakis v. Equitable Life Assur. Soc. of United States, C.C.A.Utah, 108 F.2d 902, 905; Moulor v. American Life Ins. Co., 111 U.S. 335, 4 S.Ct. 466, 28 L.Ed. 447. [Black's Law Dictionary, 6th Edition]

27.     It is the exclusive remedy by which to resolve competing claims to property. Jordan v. Bustamante, 158 S.W.3d 29, 34 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Courts require claimants bringing this type of "suit to quiet title" to base their claims on the strength of their own title. See Kennedy Con., Inc. v. Forman, 316 S.W.3d 129, 135 (Tex. App.—Houston [14th Dist.] 2010, no pet.); Alkas, 672 S.W.2d at 857. To recover, a claimant must establish a prima facie right of title by proving one of the following: (1) a regular chain of conveyances from the sovereign; (2) a superior title out of a common source; (3) title by limitations; or (4) prior possession, which has not been abandoned. Kennedy Con., Inc., 316 S.W.3d at 135.

26. The following case clearly established that lacking lawful consideration in a loan, the bank cannot support the Note. These same banking practices are in force today as will be evidenced at trial. This case is the underlying reason for asking the question; "Who is the "true" creditor?" Excerpt of the case to wit :

*Montgomery vs Daly*

RE: First National Bank of Montgomery vs. Jerome Daly Dec 9, 1968

IN THE JUSTICE COURT

STATE OF MINNESOTA

COUNTY OF SCOTT

TOWNSHIP OF CREDIT RIVER

JUSTICE MARTIN V. MAHONEY

First National Bank of Montgomery,

Plaintiff

vs

Jerome Daly,

Defendant

JUDGMENT AND DECREE

The above entitled action came on before the Court and a Jury of 12 on December 7, 1968 at 10:00 am.   Plaintiff appeared by its President Lawrence V. Morgan and was represented by its Counsel, R. Mellby. Defendant appeared on his own behalf.

A Jury of Talesmen were called, impaneled and sworn to try the issues in the Case. Lawrence V. Morgan was the only witness called for Plaintiff and Defendant testified as the only witness in his own behalf.

Plaintiff brought this as a Common Law action for the recovery of the possession of Lot 19 Fairview Beach, Scott County, Minn. Plaintiff claimed title to the Real Property in question by foreclosure of a Note and Mortgage Deed dated May 8, 1964 which Plaintiff claimed was in default at the time foreclosure proceedings were started.

Defendant appeared and answered that the Plaintiff created the money and credit upon its own books by bookkeeping entry as the consideration for the Note and Mortgage of May 8, 1964 and alleged failure of the consideration for the Mortgage Deed and alleged that the Sheriff's sale passed no title to plaintiff.

The issues tried to the Jury were whether there was a lawful consideration and whether Defendant had waived his rights to complain about the consideration having paid on the Note for almost 3 years.

Superior Court of Virginia - Complaint to Quiet Title – LAW OF THE CASE

*Mr. Morgan admitted that all of the money or credit which was used as a consideration was created upon their books, that this was standard banking practice exercised by their bank in combination with the Federal Reserve Bank of Minneapolis, another private Bank, further that he knew of no United States Statute or Law that gave the Plaintiff the authority to do this. Plaintiff further claimed that Defendant by using the ledger book created credit and by paying on the Note and Mortgage waived any right to complain about the Consideration and that the Defendant was estopped from doing so.*

At 12:15 on December 7, 1968 the Jury returned a unanimous verdict for the Defendant.

Now therefore, by virtue of the authority vested in me pursuant to the Declaration of Independence, the Northwest Ordinance of 1787, the Constitution of United States and the Constitution and the laws of the State of Minnesota not inconsistent therewith;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. That the Plaintiff is not entitled to recover the possession of Lot 19, Fairview Beach, Scott County, Minnesota according to the Plat thereof on file in the Register of Deeds office.

2. That because of failure of a lawful consideration the Note and Mortgage dated May 8, 1964 are null and void.

3. That the Sheriff's sale of the above described premises held on June 26, 1967 is null and void, of no effect.

4. That the Plaintiff has no right title or interest in said premises or lien thereon as is above described.

5. That any provision in the Minnesota Constitution and any Minnesota Statute binding the jurisdiction of this Court is repugnant to the Constitution of the United States and to the Bill of Rights of the Minnesota Constitution and is null and void and that this Court has jurisdiction to render complete Justice in this Cause.

The following memorandum and any supplementary memorandum made and filed by this Court in support of this Judgment is hereby made a part hereof by reference.

BY THE COURT

Dated December 9, 1968

*Justice MARTIN V. MAHONEY*

*Credit River Township*

*Scott County, Minnesota*

*MEMORANDUM*

*The issues in this case were simple. There was no material dispute of the facts for the Jury to resolve.*

*Plaintiff admitted that it, in combination with the federal Reserve Bank of Minneapolis, which are for all practical purposes, because of their interlocking activity and practices, and both being Banking Institutions Incorporated under the Laws of the United States, are in the Law to be treated as one and the same Bank, did create the entire $14,000.00 in money or credit upon its own books by bookkeeping entry. That this was the Consideration used to support the Note dated May 8, 1964 and the Mortgage of the same date. The money and credit first came into existence when they created it. Mr. Morgan admitted that no United States Law Statute existed which gave him the right to do this. A lawful consideration must exist and be tendered to support the Note. See Ansheuser-Busch Brewing Company v. Emma Mason, 44 Minn. 318, 46 N.W. 558. The Jury found that there was no consideration and I agree. Only God can create something of value out of nothing.*

*Even if Defendant could be charged with waiver or estoppel as a matter of Law this is no defense to the Plaintiff. The Law leaves wrongdoers where it finds them. See sections 50, 51 and 52 of Am Jur 2nd "Actions" on page 584 – "no action will lie to recover on a claim based upon, or in any manner depending upon, a fraudulent, illegal, or immoral transaction or contract to which Plaintiff was a party."*

*Plaintiff's act of creating credit is not authorized by the Constitution and Laws of the United States, is unconstitutional and void, and is not a lawful consideration in the eyes of the Law to support any thing or upon which any lawful right can be built.*

*Nothing in the Constitution of the United States limits the jurisdiction of this Court, which is one of original Jurisdiction with right of trial by Jury guaranteed. This is a Common Law action. Minnesota cannot limit or impair the power of this Court to render Complete Justice between the parties. Any provisions in the Constitution and laws of Minnesota which*

Superior Court of Virginia - Complaint to Quiet Title – LAW OF THE CASE

*attempt to do so is repugnant to the Constitution of the United States and void. No question as to the Jurisdiction of this Court was raised by either party at the trial. Both parties were given complete liberty to submit any and all facts to the Jury, at least in so far as they saw fit.*

*No complaint was made by Plaintiff that Plaintiff did not receive a fair trial. From the admissions made by Mr. Morgan the path of duty was direct and clear for the Jury. Their Verdict could not reasonably have been otherwise. Justice was rendered completely and without denial, promptly and without delay, freely and without purchase, conformable to the laws in this Court of December 7, 1968.*

*BY THE COURT*

*December 9, 1968*
*Justice Martin V. Mahoney*
*Credit River Township*
*Scott County, Minnesota.*

## Section IV

27. If any claim, statement, fact, or portion in this action is held inapplicable or not valid, such decision does not affect the validity of any other portion of this action.

28. The singular includes the plural and the plural the singular.

29. The present tense includes the past and future tenses; and the future, the present.

30. The masculine gender includes the feminine and neuter.

Caren Jean Wilson

Superior Court of Virginia - Complaint to Quiet Title – LAW OF THE CASE