## Exhibit C

CULPEPER CIRCUIT COURT
State of Virginia

| | |
|---|---|
| Caren J Wilson,<br>                 Plaintiff,<br>        vs.<br>GMAC MORTGAGE LLC<br>David M Applegate<br><br>HOMECOMINGS FINANCIAL LLC<br><br>DEUTSCHE BANK TRUST AMERICA INC.<br>RALI 2007 QSI<br>Seth H Waugh<br><br>ETS OF VIRGINIA, INC<br><br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.,<br><br>AND JOHN DOES (Investors)<br>1-10,000,<br><br>AND JOHN ROES 1-10,<br>Et, al,<br><br>                 Defendant | 211 West Chandler St.<br>Culpeper, Virginia<br>Case No.: 2011-L-578<br><br><br>PLAINTIFFS' COMPLAINT FOR<br><br>FRAUD; WRONGFUL FORECLOSURE;<br><br>TO VOID OR CANCEL ASSIGNMENT<br>OF DEED OF TRUST; BREACH OF<br>CONTRACT; BREACH OF THE IMPLIED<br>COVENANT OF GOOD FAITH AND<br>FAIR DEALING; UNJUST ENRICHMENT;<br>QUIET TITLE; AND SLANDER OF TITLE |

**COMPLAINT TO CANCEL FORECLOSURE BASED ON FRAUD**

Comes now Plaintiff Caren J Wilson Pro Se ("Plaintiff") moves the court and submits as under;

**NATURE OF ACTION**

1. This case arises out of  all of the Defendants' egregious and ongoing and far reaching fraudulent Schemes for improper use of Plaintiff's identity, fraud in the inducement, fraud in the Execution, usury, and breaches of contractual and fiduciary obligations as Mortgagee or

1



"Trustee" on the Deed of Trust, "Mortgage Brokers," "Loan Originators," "Loan Seller", "Mortgage Aggregator," "Trustee of Pooled Assets", "Trustee or officers of Structured Investment Vehicle", "Investment Banker", "Trustee of Special Purpose Vehicle/Issuer of Certificates of 'Asset-backed Certificates'", "Seller of 'Asset-Backed' Certificates (shares or bonds)," "Special Servicer" and Trustee, respectively, of certain mortgage loans pooled together in a trust fund.

## JURISDICTION

2. This court has jurisdiction over the subject matter of this action pursuant to Va. Code Ann. § 17.1-513; in that, this is a civil action within the original jurisdiction of the Court and the amount in controversy is within its jurisdictional threshold.

3. This court has personal jurisdiction over Defendants in this action pursuant to Va. Code Ann. § 8.01-328.1, because Defendants engage in regular business in the Commonwealth of Virginia, have caused tortuous injury by acts and omissions set forth herein and/or have a resident agent within the Commonwealth of Virginia.

4. Venue is proper in Culpeper County pursuant to Va. Code Ann. § 8.01-261 and Va. Code Ann. § 8.01-262 in that Plaintiff resides within the County, Defendants engage in regular business within the County, and the real property at issue is located within the County.

## PARTIES

2

5.   Plaintiff Caren J Wilson ("Plaintiff") of majority age and with primary resident at 211 West Chandler, Culpeper, Virginia, and is a "consumer" and "natural person" for the purpose of this complaint within the meaning of The Federal Truth in Lending Act 15 U.S.C. §1601 *et seq.,* Regulation Z, § 226.2(11) and Act 15 U.S.C. § 1692, Fair Debt and Collection Practices Act.

6.   Defendant Homecomings Financial LLC f/k/a Homecomings Financial Network Inc, ("Nominal Lender") with its principal place of business located at 2101 REXFORD Suite #250 W Charlotte NC 28211 is a subprime lender and a subsidiary of Residential Funding Corporation (GMAC-RFC) who was, at all material times hereto, nominal lender and a foreign corporation, which was doing business in the State of Virginia, including the origination and servicing of mortgage loans which in this instance, further constituted the collection of consumer debts subject to the provisions of the Federal Truth In Lending Act 15 U.S.C. §1602(f) and the Fair Debt and Collection Practices Act 15 U.S.C. §1692a and is a "Creditor and Collector" as defined. Defendant Homecomings Financial LLC is subject to RESPA 2605 and is a loan servicing agent and subject to statutory requirements under section 6 of RESPA.

7.   Defendant GMAC Mortgage LLC, with its principal place of business located at 1100 Virginia Drive, Fort Washington, PA 19034 was, at all material times hereto, a foreign corporation, which was doing

3

business in the State of Virginia, including the servicing of mortgage loans which in this instance, further constituted the collection of consumer debts subject to the provisions of the Federal Truth In Lending Act 15 U.S.C. §1602(f) and the Fair Debt and Collection Practices Act 15 U.S.C. §1692a and is a "Creditor and Collector" as defined. Defendant GMAC Mortgage LLC is subject to RESPA 2605 and is a loan servicing agent and subject to statutory requirements under section 6 of RESPA.

8. Defendant David M. Applegate, is and was at all times material hereto as Chief Executive Officer/President of GMAC Mortgage and Principal responsible for the acts of agents under the doctrine of respondeat superior.

9. Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC (MERS) is and was at all times material hereto a foreign corporation which was engaged in the business of, inter alia, acting as an alleged "nominee" for various mortgage lenders and their servicing agents for purposes of purporting to assign various rights incident to a mortgage Countrywide Home Loans Inc. including the origination of mortgage Note and/or a mortgage to third parties.

10. Defendant DEUTSCHE BANK TRUST AMERICA INC, with its principal place of business located at 60 Wall Street, New York, NY 10005 is and was, at all material times hereto, a foreign corporation whose corporate domicile and alleged authority to do business in the State of

4

Virginia is unknown. Defendant DEUTSCHE BANK TRUST AMERICA INC is a corporate entity functioning as an alleged trustee for RALI Series 2007-QS1 Trust which, on information and belief, issued securities which may or may not have been properly registered and in the form of either collateralized mortgage obligations (CMOs) or collateralized debt obligations (CDOs) or other form of exotic investment vehicle which may or may not be collateralized in whole or in part by the mortgage the subject of this action, and where the Certificate holders of the subject securities may or may not have an interest, in whole or in part, in the mortgage and or the Note the subject of this action.

11. Defendant Seth H Waugh is and was at all times material hereto as Chief Executive Officer of Deutsche Bank Trust Company Americas and Principal responsible for the acts of agents under the doctrine of respondeat superior.

12. Defendant E.T.S. of Virginia Inc. with its principle place of business at 3900 Westerre Parkway Suite 300, Virginia 23233, a subsidiary of GMAC is and was at all times material hereto a professional corporation, organized under the laws of the State of Virginia and was doing business in the State of Virginia foreclosing mortgages. E.T.S. of Virginia Inc. is a "Collector" as defined under Fair Debt and Collection Practices Act and is engaged in regular practice and collection of consumer debts pursuant to 15 U.S.C. §1692, and thus subjects

5

further to the provisions of a "collector and creditor" as defined by the
Federal Truth In Lending Act 15 U.S.C. §1602(f).

13. Defendants JOHN OR JANE DOES 1-1000, unknown investors, are
still undisclosed entities to the plaintiff, and defendants know them as
these defendants were part of the game.

14. Defendants JOHN ROES 1-10, being undisclosed mortgage
aggregators (Wholesalers), mortgage originators, loan seller, Trustee of
Pooled Assets, Trustee for holders of certificates of Collateralized
Mortgage Obligations, are still undisclosed to the plaintiff, and known
to the Defendants.

15. Defendants listed in Para 13 and 14 above are unknown to the
plaintiff, and all defendants have their common mutual interests in
reaping the millions of dollars described in Exhibit A.

## INTRODUCTION

16. Plaintiff signed on 12/13/2006 a promissory Note[1] and Deed of
Trust. Note in favor of Homecomings Financial LLC., (which was
nominal lender on the Deed of Trust and Note), Deed of Trust was in
favor of Defendant MERS and Note in favor of Homecomings Financial
LLC. There was no name of Defendant MERS on the NOTE. EXHIBIT-

---

[1] Plaintiff signed a Promissory Note and the investor received a "BOND", both are not the same,
having the different terms, and Borrower was not the party in the "Bond" deal. Borrower's
identity, personal information was used without the borrower's knowledge, consent and
permission. The payee on the note and on the bond are not the same but different entities

A (MORTGAGE SECURITIZATION FORENSIC ANALYSIS REPORT -
Exhibit B)

17. Defendant MERS was named as "beneficiary" on the Deed of Trust
when Defendant MERS was not a creditor, having no name on the
Note.

18. Defendant MERS cannot be a beneficiary on the Deed of Trust
because it was not a creditor. By naming MERS as beneficiary on
Deed of Trust when Defendant MERS was not a creditor, has
separated the Deed of Trust from the Note.

19. When Deed of Trust is separated from the Note, the Deed of Trust by
definition is not enforceable. When Deed of Trust in not enforceable by
definition the foreclosure is "VOID" in the presence of the court
judgment to the contrary.

20. Due to naming Defendant MERS as beneficiary, when it is not a
creditor, the Deed of Trust and the Note has been separated. Note has
become unsecured and the Deed of Trust is "VOID". The obligation is
still there but it is not secured.

21. Defendant sold the Plaintiff's loan to various entities before the
Plaintiff signed her loan at closing on 12/13/2006, as unregistered
and un-regulated security. The following points are all described in
detail in Exhibit A (MORTGAGE    SECURITIZATION FORENSIC
ANALYSIS REPORT)

7

22. Plaintiff signed a note under UCC Article-3 and Investor received a bond under UCC Article-8.

23. Both Bond and Note are not the same, have different terms.

24. Payee on the Note and payee on the Bond are two different entities. Plaintiff was not a party to the Bond Deal and Defendant et al used the personal information of Plaintiff in the Bond Deal without the knowledge, consent and permission of the Plaintiff and Defendant et al committed the crimes of Identity Theft.

25. Defendants et al in a joint venture manufactured an illegal Special Warranty Deed and transferred the Plaintiff's property to undisclosed entities, and failed to disclose to the Plaintiff which is a continuous violation of TILA.

26. Soon after the closing the Plaintiff's loan was sold for cash in securitization as unregistered and unregulated security.

27. Concerns about securitization chain of title also go to the standing question; if the mortgages were not properly transferred in the securitization process, then the party bringing the foreclosure does not in fact own the mortgage and therefore lacks standing to foreclose.

28. The mortgage lenders, still undisclosed to Plaintiff, and securitization servicers Defendant E.T.S. of Virginia Inc., et al should not undertake to foreclose on any homeowner unless they are able to do so in full

compliance with applicable laws and their contractual agreements with the homeowner.

29. Chain of Transfer of Note is broken and not perfect. The securitization process is complicated and requires several properly executed transfers. If at any point the required legal steps are not followed to the letter, then the ownership of the mortgage loan could fall into question.

30. The problems in the mortgage market are highly technical, but they are extremely serious[2]. At best they present problems of fraud on the court, the borrower, and clouded title to property.

31. The event of Credit Default Swaps, AIG Bail out and insurance proceeds caused the Trust to dissolve and parties are acting ultra virus, in this case and the duties of Trustee have been terminated.

32. After the major trigger event in 2008 the assets were purchased by the Maiden Lane LLC under the supervision of Federal Reserve and US Treasury, as per Asset Purchase Agreement dated 12/12/2008

## CAUSES OF ACTION

## NO HUD COUNSELING NOTICE

---

[2] These issues are no more technicalities than the borrower's signature on a mortgage. Cutting corners may improve securitization's economic efficiency, but it undermines its legal viability.

33. Defendant E.T.S. of Virginia Inc., initiated foreclosure proceedings without affording the homeowner a face-to-face meeting as required under 24 C.F.R. § 203.604(b)

34. Defendant failed to comply with the foreclosure prevention loan servicing requirement imposed on defendant pursuant to the National Housing Act, 12 U.S.C. 1701x(c) (5) which requires all lenders servicing non-federally insured home loans, including the defendants, to advise borrowers, including Plaintiff, of any home ownership counseling defendant offers together with information about counseling offered by the U.S. Department of Housing and Urban Development.

35. The U.S. Department of Housing and Urban Development has determined that 12 U.S.C. 1701x(c) (5) creates an affirmative legal duty on the part of the defendant and defendant's non-compliance with the law's requirements is an actionable event that makes the filing of this foreclosure premature based on a failure of a statutory condition precedent to foreclosure which denies defendant's ability to carry out this foreclosure. Defendant cannot legally pursue foreclosure unless and until defendant demonstrates compliance with 12 U.S.C. 1701x(c) (5).

## ILLEGAL CHARGES ADDED TO BALANCE

10

36. Defendants have charged and/or collected payments from Plaintiff for attorney fees, legal fees, foreclosure costs, late charges, property inspection fees, title search expenses, filing fees, broker price opinions, appraisal fees, double force place insurance premiums and other charges and advances, and predatory lending fees and charges that are not authorized by or in conformity with the terms of the subject note and mortgage or the controlling documents which specifies the waiver of late payments and other collection charges as part of the forbearance and loan modification default loan servicing.

37. Defendants wrongfully added and continues to unilaterally add these illegal charges to the balance Plaintiff claims is due and owing under the subject note and mortgage.

## FAILURE OF GOOD FAITH AND FAIR DEALING
## UNFAIR AND UNACCEPTABLE LOAN SERVICING

38. Defendants intentionally failed to act in good faith or to deal fairly with the Plaintiff by failing to follow the applicable standards of residential mortgage servicing as described in these Affirmative Defenses thereby denying Plaintiff's access to the residential mortgage servicing protocols applicable to the subject note and mortgage.

## UNCLEAN HANDS

11

39. The Defendants come to court with unclean hands and is prohibited by reason thereof from obtaining the equitable relief of foreclosure from this Court.

40. The Defendant's unclean hands result from the Defendant's improvident and predatory intentional failure to comply with material terms of the mortgage and note; the failure to comply with the default loan servicing requirements that apply to this loan, all as described herein above.

41. As a matter of equity, this Court should refuse to foreclose this mortgage because acceleration of the note would be inequitable, unjust, and the circumstances of this case render acceleration unconscionable.

42. This court should refuse the illegal foreclosure and deny foreclosure because Defendants has waived the right to acceleration or is stopped from doing so because of misleading conduct and unfulfilled contractual and equitable conditions precedent.

WHEREFORE, Plaintiff demands the Defendant's attempt to conduct the illegal foreclosure, be dismissed with prejudice and for fraud on the court, fees and costs and for all other relief to which this Court finds Plaintiff entitled.

## DEFENDANTS LACK STANDING: ETS of Virginia Inc.

43. Defendant E.T.S. of Virginia Inc., as the servicer, does not own the Plaintiff's note.

12

44. Standing is a "threshold question in every case, determining the power of the court to entertain, the suit." Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L. Ed.2" 343 (1975). Hence, "a defect in standing cannot be waived; it must be raised, either by the parties or by the court, whenever it becomes apparent." US. v. A VXCorp, 962 F.2nd 108, 116 n. 7 (1st Cir. 1992).

45. Defendant E.T.S. of Virginia Inc. does not hold greater than 50% of the monetary obligation secured in Plaintiff's loan/note as required by the Virginia Code § 55-59.9.

46. Defendant E.T.S. of Virginia Inc. acted ultra-virus and committed fraud upon court and on Plaintiff

## COUNTERCLAIMS

## COUNT I: DECLARATORY AND INJUNCTIVE RELIEF

47. This is an action for declaratory judgment; cancel the illegal foreclosure sale, being conducted by parties who have no interest or standing to do so and injunctive relief against all of the Defendants.

48. Defendant E.T.S. of Virginia Inc., initiated foreclosure proceedings without affording the homeowner a face-to-face meeting as required under 24 C.F.R. § 203.604(b) and when Defendant E.T.S. of Virginia Inc. was not the owner of Plaintiff's loan

49. Defendants failed to comply with the foreclosure prevention loan servicing requirement imposed on Defendants pursuant to the

National Housing Act, 12 U.S.C. 1701x(c) (5) which requires all lenders servicing non-federally insured home loans, including the Defendants, to advise borrowers, including Plaintiff, of any home ownership counseling Defendants offers together with information about counseling offered by the U.S. Department of Housing and Urban Development.

50. Defendants cannot legally pursue foreclosure unless and until Defendants demonstrates compliance with 12 U.S.C. 1701x(c) (5).

Defendants failed to provide Plaintiff with legitimate and non-predatory access to the debt management and relief that must be made available to borrowers, Plaintiff in this case.

51. Plaintiff is being illegally subjected by the Defendants to illegal and fraudulent foreclosure action, being forced to defend the same and she is being charged illegal predatory court costs and related fees, and attorney fees. Plaintiff is having her credit slandered and negatively affected, all of which constitutes irreparable harm to Plaintiff for the purpose of injunctive relief.

52. As a proximate result of the Defendant's unlawful actions set forth herein, Plaintiff continues to suffer the irreparable harm described above for which monetary compensation is inadequate.

53. These acts are and were wrongful and predatory acts by the defendants, through its predecessor(s) in interest, and were intentional and deceptive.

14

## COUNT II: ILLEGAL CONSUMER COLLECTION

PLAINTIFF reasserts and re-alleges, as her Statement of Facts, paragraphs 1 through 51, inclusive as set out in Count I of these counterclaims.

54. Plaintiff is a consumer and the obligation between the parties which is the debt owed pursuant to the subject note and mortgage is a consumer debt.

55. Plaintiff disputed this debt and Defendants et al failed to validate the debt and proceeded with the illegal foreclosure.

56. Defendants have engaged in consumer collection conduct which amounts to a violation as set out below and Plaintiff, as a proximate result thereof, has sustained economic damages for which the Plaintiff is entitled to compensation from the defendants.

57. Defendant's collection activities described herein violated Federal and State Laws that the Defendants are claiming, attempting and threatening to collect and enforce this consumer mortgage debt by this illegal foreclosure conducted when the defendants know that the right to pursue foreclosure does not exist.

58. These acts were wrongful and predatory acts by the defendants, through its predecessor(s) in interest, and were intentional and deceptive.

59. Additionally, the reason the defendants do not have a legal right to pursue this foreclosure is because the defendants have failed to first

15

comply with the foreclosure prevention loan servicing obligations imposed on defendants prescribed by the National Housing Act and under various other state and federal laws.

60. These foreclosure prevention loan servicing obligations are imposed on the defendants pursuant to the National Housing Act, 12 U.S.C. Section 1710(a) and the Pooling and Servicing Agreement filed by the defendants with the Securities and Exchange Commission.

61. Defendants wrongfully added and continues to unilaterally add these illegal charges to the balance defendants claims is due and owing under the subject note and mortgage.

62. Defendants continue to claim, attempt, and threaten to enforce this mortgage "debt" illegally and fraudulently through foreclosure when the defendants know that such conduct is in bad faith because the defendants have charged and collected money; forced Plaintiff into deepening indebtedness and then failed to meet the contractual and statutory conditions precedent before filing this action to collect this "consumer debt".

63. As a result of the defendant's failure to properly service this mortgage loan before filing and conducting this foreclosure action, Plaintiff has been damaged and Plaintiff seeks to recover their actual or statutory damages from the defendants.

64. On January 27, 2010, Treasury Secretary Tim Geithner had testified before the House Oversight and Government Reform Committee. The

House Committee is investigating the AIG bailout and the role Geithner played, as head of the New York Federal Reserve Bank. The specific issue of greatest concern is regarding AIG and the NY Fed concealed bailout facts.

65. For homeowners with homes in securitized investment trusts who have faced foreclosure, the question is also: did my mortgage holder already receive a payout for Plaintiff's defaulted mortgage from an insurance policy? Banks bought insurance for the pools of subprime mortgages, insuring that they would be paid even if there was widespread default. When the widespread default actually occurred, however, many of the insurance companies did not have the funds they needed to pay-out the policies they had issued. The largest of such insurers without sufficient funds was AIG. In an early development, one such insurer, Security Capital Assurance, a Bermuda-based bond insurer, negotiated a pay-out with its policyholders of 14 cents on the dollar. But the banks insured by AIG received a much better deal, receiving a 100% payout because the Fed provided most of the $63.2 billion in financing needed so that AIG could meet its obligations to the banks.

66. In many foreclosure cases, the foreclosing bank cannot even produce the minimal documentation to prove its right to foreclose, but relies instead on fabricated documents from foreclosure mills. One indicator of a fraudulently manufactured Assignment is the date of the

the unique position to see hundreds, if not thousands, of Assignments, and compare the names, job titles, and even notary information on the Assignments. **The judge who has written the most opinions that include discussion of the validity of Assignments is New York State Supreme Court Judge Arthur M. Schack of Brooklyn.**

71. These SPECIALLY FRADULANTLY MADE ASSIGNMENTS have created havoc in the courts. The SPECIALLY FRADULANTLY MADE ASSIGNMENTS are dated AFTER the foreclosure actions has been initiated, making it appear that the TRUST SOMEHOW MAGICALLY knew prior to the assignment that it would acquire the defaulting property several months after the foreclosure actions were initiated.

72. These Defendants have honed their craft and predatory schemes over the last two decades in what are commonly termed as "foreclosure mills and factories." One of the many predatory servicing and Trustee practices developed was the use of known false, fraudulent, and forged affidavits, assignments, as these were used to justify in Plaintiff's case.

## COUNT-III FRAUD

73. Defendants et al's acts are not "mistakes" — but, instead, calculated fraud to cover-up the fraudulent "loans" to begin with. There can be no correction of documents by loan mods — only a foreclosure — MAYBE – and ONLY MAYBE, will cover the fraud in mortgage title.

Assignment. Did the alleged Assignment occur over 100 days after the loan was already in default - perhaps even AFTER the foreclosure action was initiated? This is the question that some judges have asked (see, e.g., the decisions of NY Supreme Court Judge Arthur Schack) and others must ask to prevent further unjust enrichment of banks in foreclosure actions. Courts COULD require every foreclosure complaint to be filed with an Affidavit that the subject property is not part of any Trust that has also received financial guaranty insurance payments.

67. Many of Judge Schack's opinions are available with easy access on the "pleadings" section of Fraud Digest. (This is Part One of Fraud Digest's series on Fabricated Mortgage Documents)

68. When the Assignments have not been properly made, the lender cannot prove it owns and possesses the Note and has a right to foreclose.

69. The issue of fabrication of Assignments may not be frequently raised because most defendants in foreclosure actions are not represented by counsel; inexperienced litigants do not suspect that Assignments may have been fabricated. Only a few lawyers have raised the issue of fabrication, but the issue is clearly arising more frequently.

70. **In the cases where the authenticity of an Assignment has been questioned, the challenges have come most often from judges.** Because their dockets are filled with foreclosures, judges are often in

documents, neither of which actually described the relationship between the investor-lender and the homeowner-borrower.

77. It is clear—there are rules and there are laws, and they apply to everyone, no matter who you are, or how much money you have."

78. Fraud, fraud and more fraud. Notary fraud, forgery, backdating, fraud on the Register Of Deeds office, fraud on the court and fraud on the county where the fraudulent assignment was recorded. Fraud does not go away. Once it is in the official file, it is in there for the duration.

79. Magic requires the magician to direct your attention to something else while he makes the rabbit appear. In this case the magic is getting you to look at the documents as though they were EVER real. They were not.

80. There never was a lien perfected on anyone's property in these closings and there was no transfer of lien because

> (1) There was no lien to transfer and
>
> (2) They never tried to transfer them. Instead they "lost" or destroyed the documents.

Those documents, if they were real were the equivalent of cash. Why would anyone lose or destroy a ten dollar bill? The ONLY answer is because they had told someone, the investors, who gave them money that the $10 bill was actually a $100 bill and now the investor wanted to see the $100 bill that never existed in the first place. Better to say

74. By process of elimination and recruiting whistle-blowers, the agencies
are recognizing the signs of an intentional act, where the loan was
intentionally created in defective and deceptive ways, and where the
"investor's" money was lost the moment he parted with it. The real
parties in interest here are the investor-lenders and the homeowner-
borrowers. They ALL lost money while the intermediary investment
banks, Defendants et al mysteriously made tons of money while
claiming losses from bad mortgages.

75. If the investment banks lost money from holding toxic assets then
there was no securitization — i.e.., the loans were never actually sold,
which is what we have been saying here. If that is true, then the
investment banks were the lenders, which is exactly opposite from the
truth, since we know the money came from investors. If the money
came from investors then the investment banks were not the lenders
and therefore could not have suffered any loss from unpaid
mortgages.

76. The problem is compounded by the fact that the pools were never
filled with assets because transfers were never made. And the
transfers were never made because the paper was bad to begin with —
the original loan documents described a loan transaction that never
took place. And the original loan transaction that DID take place was
undocumented in which the borrower was shown one set of
documents while the lender was shown a completely different set of

20

you lost or destroyed it than to produce evidence that would land you in jail!

81. The prospectus says the investor is buying into a pool, but as you continue to read, you find the pool has not been formed, much less filled with loans to satisfy the definition of "asset-backed mortgage bond." So the investor is buying into a non-existent pool, which may or may not have been formed at a later date, with nothing in it except the income received from selling credit default swaps on the most toxic tranches of a CDO, usually in the same Special Purpose vehicle (Trust).

82. With each passing page of each document it is obvious that the powers of the "Trustee" are actually in the hands of the master servicer, who in turn hires a sub-servicer who actually does the work, but without "knowledge" (plausible deniability). The sub-servicer in turn has multiple sets of books which it uses for reporting purposes — one for the borrower, one for the investor and one for the securitizers, to start with. Like MERS, the sub-servicer never lays hands on any document evidencing ownership of the borrower's obligation which of course is at variance with the undelivered note and undelivered mortgage or deed of trust.

83. And since the subservice does not handle or control the payments to securitizers and the investors, it has no way of knowing or accounting for payments that were made — except its own payments to the

securitizers, despite the declaration of default against the borrower.
The borrower, not knowing the payments are continuing, accepts the
allegation that the obligation is in default even though it is being paid.
UNTIL THE COURT IS MADE AWARE[3] OF THE MULTIPLE SETS OF
BOOKS, IT HAS NO WAY OF KNOWING ABOUT THE FRAUD. AND IF
IT ISN'T EVEN ALLEGED, THEN THE ISSUE IS NOT BEFORE THE
COURT.

### FRAUDS BY THE TRUSTEE IN THE ACCOUNTS OF SALES

84. Defendant Deutsche Bank Trust Company Americas falsified in the
accounts filed with the Commissioner of Accounts, per § 26-15. No

---

[3] § 55-59.6. *Foreclosure; civil penalty for fraud; civil action*

*A. Any person who (i) knowingly makes, uses, or causes to be made or used a false or fraudulent record, document, or statement or (ii) knowingly swears or affirms falsely to any matter, in support of any foreclosure upon property under this chapter shall be liable for a civil penalty of $5,000 for each violation.*

*B. Any attorney for the Commonwealth for the county or city or any attorney for the county, city, or town in which an alleged violation occurred may bring an action to recover the civil penalty, which shall be paid into the local treasury. A person violating this section shall be liable for reasonable attorney fees and costs of a civil action brought to recover any such penalty.*

*C. The owner of the property subject to foreclosure has a civil cause action against a person who has violated this section, and shall be entitled to recover from such person compensatory damages in the amount of three times the damages incurred by the owner as a result of the violation in addition to reasonable attorney fees and costs.*

*D. The civil penalty provisions of this section shall apply in addition to any applicable criminal penalties for forgery set forth in §§ 18.2-168 and 18.2-172 and perjury set forth in § 18.2-434 or any other applicable criminal penalty.*

Vouchers covering the accounting[4] were submitted with the accounting.

85. The investor on loan as per MERS record shows has been intentionally hidden and the investor in this case has chosen not to disclose its information, which is incorrect, misleading and fraud, in the present case. Deutsche Bank Trust Company Americas also is the trustee on the Trust, **"RALI Series 2007-QS1 Trust". Deutsche Bank Trust Company Americas cannot be Trustee or investor or own the note, lest it becomes a partnership with the certificate holders.** The information about the investor was intentionally withheld by the securitization partners which are violations of the Federal Reserve new amendment which is law now and TILA.

86. The investor on loan as per MERS record shows has been intentionally hidden and the investor in this case has chosen not to disclose its information, which is incorrect, misleading and fraud, in the present case. Deutsche Bank Trust Company Americas also is the trustee on the Trust, **"RALI Series 2007-QS1 Trust". Deutsche Bank Trust Company Americas cannot be Trustee or investor or own**

---

[4] If the commissioner of accounts of the court wherein an instrument was first recorded becomes aware that an account as required by this section has not been filed, the commissioner and the court shall proceed against the trustee in like manner and impose like penalties as set forth in § 26-13. Whenever the commissioner reports to the court that a fiduciary, who is an attorney-at-law licensed to practice in the Commonwealth, has failed to make the required return within 30 days after the date of service of a summons, the commissioner shall also mail a copy of his report to the Virginia State Bar.

**the note, lest it becomes a partnership with the certificate holders.** The information about the investor was intentionally withheld by the securitization partners which are violations of the Federal Reserve new amendment which is law now and TILA.

WHEREFORE, Plaintiff demands the defendant's illegal foreclosure sale be cancelled with prejudice, for an award of damages in Plaintiff' favor and against the defendants for their actual or statutory damages  whichever is greater and for their attorney's fees and costs and for all other relief to which this Court finds Plaintiff entitled.

## DEMAND FOR TRIAL BY JURY

**Plaintiff hereby demands trial by jury.**

87. The **facts and circumstances** that brought the plaintiff to court against defendants is the civil conspiracy in violation of Federal Laws on Predatory Lending. The issue is covered by a Rule of law under the US CODE: Title 42, 1983; Civil action for deprivation of rights, U.S. Constitution's 1st Amendment, 5th Amendment, 7th Amendment, 10th Amendment and the 14th Amendment ('No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws').

25

88. In Beard v. U.S. (158 U.S. 550, 1895), the Court approved the common law rule that a person "may repel force by force" in self-defense, and concluded that when attacked a person "was entitled to stand his ground and meet any attack made upon him with a deadly weapon, in such a way and with such force" as needed to prevent "great bodily injury or death."

89. Plaintiff reserve the right to amend her complaint and add more frauds, fraudulent acts of the Defendant's et al.

## CAUSE OF ACTION FOR QUIET TITLE

**AS TO DEFENDANTS GMAC MORTGAGE LLC, DEUTSCHE BANK TRUST AMERICAS; ET AL; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFF'S TITLE, OR ANY CLOUD ON PLAINTIFF'S TITLE THERETO; AND DOES 1 THROUGH 10,000**

90. Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 89 and the full extent of Exhibit A, inclusive, as though fully set forth herein.

91. Plaintiff is the equitable owner of the Subject Property which has the following legal description: "All that certain lot lying and being on the south side of Chandler Street in the Town of Culpeper, West Fairfax Magistrate District, Culpeper County, Virginia fronting 50' on said street and running back between parallel lines a distance of 102', adjoining the lands of Chilton on the west, Maren and others on the

east and McElfrish on the south, and being shown on a house location survey made by Brian Throssell, C.L.S., dated August 28, 1980, a plat of which is recorded in Deed Book 298, Page 501 in the Clerk's Office of Culpeper County, Virginia".

92. Plaintiff seeks to quiet title against the claims of Defendants US Bank; et al; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFF'S TITLE, OR ANY CLOUD ON PLAINTIFF'S TITLE THERETO; in fact, the Title Defendants had no right to title or interest in the Subject Property and no right to entertain any rights of ownership including the right to foreclosure. Nevertheless, the Title Defendants proceeded with a non-judicial foreclosure sale, through E.T.S. of Virginia as alleged substitute trustee, illegally and with unclean hands.

93. The Borrower's title was and is subject to a cloud on title, a claim of unmarketable title and possibility a title defect that cannot be cured without the court order as a result of the manner in which borrower's loan was securitized.

94. The naming of the party's other than the investor as Beneficiary under the Mortgage as distinct from a third party named as Payee on the Promissory Note and the same or other third party named as Beneficiary under the policy of the title insurance **demonstrates an**

27

**intent or presumption or reasonable conclusion that there was intent by some or all of the parties at various times in the steps of the securitization process to separate the Note from the Mortgage/Deed of Trust,** thus creating the cloud on the title for both the owner of the property and any party seeking to express or claim an interest in the real property by virtue of the encumbrance.

95. Plaintiff seeks to quiet title as of December 13, 2007. Plaintiff seeks a judicial declaration that the title to the Subject Property is vested in Plaintiff alone and that the Title Defendants and each of them be declared to have no interest estate, right, title or interest in the subject property and that the Title Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property subject to Plaintiff's rights.

### SLANDER OF TITLE

### (AGAINST THE FORECLOSING DEFENDANTS)

96. Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 95 and Exhibit A, inclusive, as though fully set forth herein.

97. Pursuant to, among others, Code of Virginia, § 55-59.1. Notices required before sale by trustee to owners,..., only the beneficiary of a Deed of Trust or a beneficiary's assignee or the agent of a beneficiary or its assignee may cause to be recorded against real property either a Notice of Default or a Notice of Trustee's Sale.

98. E.T.S. of Virginia Inc., purportedly but falsely acting as either the trustee or the agent of the beneficiary of the Deed of Trust or the agent of Deutsche Bank Trust Company Americas, wrongfully and without privilege, caused a Notice of Default to be recorded against the Subject Property.

99. E.T.S. of Virginia Inc., again purportedly but falsely acting as either the trustee or the agent of the beneficiary of the Deed of Trust or the agent of Deutsche Bank Trust Company Americas, wrongfully and without privilege, caused a Notice of Trustee's Sale to be recorded against the Subject Property.

100.    Finally E.T.S. of Virginia Inc., again purportedly but falsely acting as either the trustee or the agent of the beneficiary of the Deed of Trust or the agent of Deutsche Bank Trust Company Americas, wrongfully and without privilege, caused a Trustee's Deed Upon Sale to be recorded against the Subject Property which was later withdraw due to an Emergency Injunction (CL11000304-00) heard on April 19, 2011 in the Circuit Court, Culpeper County, VA.

101.    None of the Foreclosing Defendants, whether jointly or severally, were ever a trustee, beneficiary or assignee of any beneficiary of any Deed of Trust recorded against the Subject Property.   Accordingly, they wrongfully caused the recording of the Notice of Default, Notice of Trustee's Sale and Trustee's Deed Upon Sale against the Subject Property.

29

102.   Deutsche Bank Trust Company Americas et al, wrongfully and without privilege, has published matters or caused matters to be published that they are the current owners of the Subject Property which is untrue and disparaging to Plaintiff's interest in the Subject Property.

103.   By doing the acts described above, the Foreclosing Defendants have slandered Plaintiff's title to the Subject Property.

104.   In that the conduct and acts of the Foreclosing Defendants violated, among others, Code of Virginia § 55-59.1., such conduct and acts were not privileged.

105.   The conduct of the Foreclosing Defendants caused Plaintiff to suffer general and special damages in an amount to be proven at trial.

WHEREFORE, Plaintiff demands the Defendant's illegal and fraudulent foreclosure be dismissed with prejudice for failure to disclose and for fraud on the Plaintiff, and for judgment against the defendants for damages, for an award of attorney's fees and costs and for all other relief to which this Court finds Plaintiff entitled. From the analysis, plaintiff comes to the Conclusion that based on the rule of law; she has satisfied the burden of stating a claim against "Defendants et al". Plaintiff's complaint need not alleged any specific wrong per se; rather it must merely notify the defendant of the nature of the claim and state the 'Relief Sought' which can be viewed in the

Complaint. Plaintiff also alleges that all defendants are liable for damages by virtue of their part in the civil conspiracy and trampling on the rights of Plaintiff by violating Federal and State Law. Hence, defendant's illegal foreclosure sale conducted using frauds be dismissed.

**VERIFICATION**

I, Caren J Wilson, the Plaintiff in the above-entitled action, have read the foregoing and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare that the foregoing is true and correct and that this declaration was executed at Culpeper County, State of Virginia.

_____                    _____
Caren J Wilson                                             Date

State of _Virginia_

County of _Culpeper_

Acknowledged, subscribed and sworn to before me this 4th day of August 2011, by Ms. Caren J Wilson

Notary Registration No _243181_     Notary Public _____

My Commission Expires on _January 31, 2014_

SEAL

JAMES L HOLMES
NOTARY PUBLIC
MY COMMISSION NUMBER 243181
COMMONWEALTH OF VIRGINIA

**070001263**

1 of 2

Return To:   Homecomings Financial
One Meridian Crossing, Ste. 100
Minneapolis, MN  55423
Loan Number: 047-175475-4

Tax Map Reference #:

RPC/Parcel ID #:
41-A1-4-E-7

After Recording Please Return To:
KG Title, Inc.
10308B Baltimore National Pike
Ellicott City, MD 21042
(410) 465-9200

Prepared By:   Homecomings Financial
2101 Rexford, Suite 250W
Charlotte, NC  28211

PAGE 244

———— [Space Above This Line For Recording Data] ————

## DEED OF TRUST

MIN 100062604717547543

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by
CAREN J WILSON

Borrower (trustor), to Samuel I. White, PC, a Corp. Chartered in the Commonwealth
of VA                                                                                  , as

Trustee, for the benefit of Mortgage Electronic Registration Systems, Inc. as beneficiary.                 , as

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3047  1/01
MFVA7770 (09/2005) / 047-175475-4
-6A(VA) (0507)
Page 1 of 15
VMP Mortgage S-

DATE: 06/30/10 TIME: 16:21:44
CASHIER: AGR   REG: DP7B F1
ACT OF WILSON, CAREN
CASH:                    $10.50
DESCRIPTION 1: 21 COPIES
CODE DESCRIPTION
313   DESCRIPTION
236   FEES - COPIES
      DOCUMENT REPRODUCTI

-EXHIBIT- A

CLER

CI

COMM

**PAGE 245**

(A) "Security Instrument" means this document, which is dated DECEMBER 13TH, 2006 together with all Riders to this document.

(B) "Borrower" is
CAREN J WILSON

Borrower is the trustor under this Security Instrument.

(C) "Lender" is HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.)
Lender is a  LIMITED LIABILITY COMPANY
organized and existing under the laws of DELAWARE
Lender's address is  2101 REXFORD, SUITE 250W
CHARLOTTE, NC 28211

(D) "Trustee" is  Samuel I. White, PC, a Corp. Chartered in the Commonwealth of VA
Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is 209 Business Park Drive, Virginia Beach      , VA 23462

"Trustee" is

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated DECEMBER 13TH, 2006
The Note states that Borrower owes Lender  TWO HUNDRED THIRTY SIX THOUSAND AND NO/100
Dollars
(U.S. $ 236,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   JANUARY 1ST, 2037    . The interest rate stated in the Note is SIX AND THREE FOURTHS
percent (  6.7500    %).
If this Security Instrument is an adjustable rate mortgage loan, this initial rate is subject to change in accordance with the attached Adjustable Rate Rider.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

MFVA7770 (09/2006) / 047-175475-4
-6A(VA) (0507)                              Page 2 of 15                    Initials          Form 3047  1/01

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] VA Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [ ] 1-4 Family Rider
- [ ] Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the    COUNTY                         [Type of Recording Jurisdiction]
of  CULPEPER                                [Name of Recording Jurisdiction]:
Legal description attached hereto and made a part hereof

PAGE 247

which currently has the address of
211 W CHANDLER ST                                                        [Street]
~~CULPEPPER~~ *Cul Peper*            [City/County], Virginia        22701    [Zip Code]
("Property Address"):

  TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

  BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

  THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

  UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
  1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

MFVA7770 (09/2006) / 047-175475-4
-6A(VA) (0507)                              Page 4 of 15                                    Form 3047  1/01

Initials:

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                      CAREN J WILSON                -Borrower

_____                    _____ (Seal)
                                                                                    -Borrower

_____ (Seal)              _____ (Seal)
                          -Borrower                                                 -Borrower

_____ (Seal)              _____ (Seal)
                          -Borrower                                                 -Borrower

_____ (Seal)              _____ (Seal)
                          -Borrower                                                 -Borrower

PAGE 257

MFVA7770 (09/2006) / 047-175475-4
-6A(VA) (0507)                          Page 14 of 15                          Form 3047   1/01

PAGE 258

STATE OF VIRGINIA,                                        County, ss: *Culpeper*

The foregoing instrument was acknowledged before me this *13th Day of December* 2006 by
CAREN J WILSON

My Commission Expires: *2/28/2010*          _____
                                             Notary Public

PAGE 259

All that certain lot or parcel of land situate in the County of Culpeper, Commonwealth of Virginia, and being
more particularly described as follows:

All that certain lot and being on the south side of Chandler Street in the Town of Culpeper, West Fairfax
Magisterial District, Culpeper County, Virginia fronting 50' on said street and running back between
parallel lines a distance of 102', adjoining the lands of Chilton on the west, Maren and others on the east
and McElfersh on the south, and being shown on a house location survey made by Brian Throssell,
C.L.S., dated August 28, 1980, a plat of which is recorded in Deed Book 298, Page 501 in the Clerk's
Office of Culpeper County, Virginia.

The property being known as 211 W. Chandler Street, Culpepper, VA 22701.

TAX ID # 41A1-4-E-7

INSTRUMENT #070001263
RECORDED IN THE CLERK'S OFFICE OF
CULPEPER ON
FEBRUARY 12, 2007 AT 03:10PM
JANICE J. CORBIN, CLERK

RECORDED BY: JLW

Identifier:7305989964          Doc Type:MTGR

070001264                    2 of 2

Parcel Number: 41-A1-4-E-7

☐ THIS IS A REFINANCE OF A DEED OF TRUST RECORDED IN THE CLERK'S OFFICE, CIRCUIT COURT OF
............................ VIRGINIA, IN DEED BOOK..........................

PAGE .............., IN THE ORIGINAL PRINCIPAL AMOUNT OF $ .................... After Recording Please Return To:
THE OUTSTANDING PRINCIPAL BALANCE WHICH IS $ ....................    KG Title, Inc.

This document was prepared by: Homecomings Financial          10308B Baltimore National Pike
                         2101 Rexford, Suite 250W              Ellicott City, MD 21042
                         Charlotte, NC  28211                  (410) 465-9200

——— Commonwealth of Virginia ———          — Space Above This Line For Recording Data —

**THIS IS A CREDIT LINE DEED OF TRUST**
(With Future Advance Clause)

1.  **DATE AND PARTIES.** The date of this Credit Line Deed of Trust (Security Instrument) is DECEMBER 13TH, 2006...............   MIN: 100062604717547709
    and the parties, their addresses and tax identification numbers, if required, are as follows:
    GRANTOR:   CAREN J WILSON



    ☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and
      acknowledgments.
    TRUSTEE:   Samuel I. White, PC, a Corp. Chartered in the Commonwealth of VA
               209 Business Park Drive
               Virginia Beach, VA 23462


    LENDER: HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.)
            2101 REXFORD, SUITE 250W
            CHARLOTTE, NC 28211

    **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a
    nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument.
    MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
    Flint, MI 48501-2026, tel. (888) 679-MERS.

2.  **CREDIT LINE DEED OF TRUST. THIS IS A CREDIT LINE DEED OF TRUST** within the meaning of Section
    55-58.2 of the Code of Virginia (1950), as amended. For purposes of such section, (i) the name of the noteholder secured
    by this Security Instrument is ...HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.)............, (ii) the
    address at which communications may be mailed or delivered to the noteholder is 2101 REXFORD, SUITE 250W, CHARLOTTE, NC
    28211........................................, and (iii) the maximum aggregate principal amount to
    be secured is ...FIFTY NINE THOUSAND AND NO/100..................................
    This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security
    Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect
    Lender's security and to perform any of the covenants contained in this Security Instrument.

3.  **CONVEYANCE.** The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's
    successors and assigns) and the successors and assigns of MERS. For good and valuable consideration, the receipt and
    sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under
    this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with
    power of sale, the following described property:

    Legal description attached hereto and made a part hereof



    The property is located in .CULPEPER.........................................   at .211 W. CHANDLER ST............
                                              (County or City)
    ...........................   ...CULPEPER...........   Virginia ...22701........
    (Address)                        (City)                          (ZIP Code)

    Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian
    rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may
    now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). Grantor
    understands and agrees that MERS holds only legal title to the interests granted by Grantor in this Security Instrument;
    but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has
    the right; to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property;
    and to take any action required of Lender, including but not limited to, releasing and canceling this Security Instrument.

4.  **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
    A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described
       below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is
       suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*
       Borrower(s) Promissory Note to Lender dated DECEMBER 13TH, 2006              in the principal sum of
       U.S. $       59,000.00  , with interest thereon, providing for monthly installments of principal and interest, with
       the balance of indebtedness, if not sooner paid, due and payable on JANUARY 1ST, 2022

VIRGINIA - DEED OF TRUST  (NOT FOR FNMA, FHLMC, FHA OR VA USE)                                              (page 1 of 4)
Expert ©1994 Bankers Systems, Inc., St. Cloud, MN Form RPC-REDT-VA 3/6/2002      MFVA7086 (8/02) / 047-175477-0

Identifier:7305989964          Doc Type:MTGR

PAGE 261

B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey, and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Grantor receives from the holder.
   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.
   NOTICE - THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument.
   Grantor acknowledges that this assignment is immediately effective between the parties to this assignment and effective as to third parties on the recording of this Security Instrument. Grantor agrees that Lender is entitled to notify Grantor or Grantor's tenants to make payment of Rents due or to become due directly to Lender after such recording, however, Lender agrees not to notify Grantor's tenants until Grantor defaults and Lender notifies Grantor of the default and demands that Grantor and Grantor's tenants pay all Rents due or to become due directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

Experf ©1994 Bankers Systems, Inc., St. Cloud, MN Form RFC-REDT-VA 3/8/2002     MPVA7026 (8/02) / 047-176477-0          (page 2 of 4)

Identifier:7305989964    Doc Type:MTGR

PAGE 262

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender and Trustee shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to direct the Trustee to execute the trust created hereby and in so doing exercise all of the powers under applicable law and as set forth in Va. Code Section 55-59 and 55-59.1 through 55-59.4, as in effect on the date of this Security Instrument.

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **SECTION 55-60 OF THE CODE OF VIRGINIA.** This Security Instrument shall be construed to impose and confer upon the parties hereto, and the beneficiaries hereunder, all duties, rights and obligations prescribed in Section 55-60 of the Code of Virginia (1950), as amended, and in effect on the date of this Security Instrument, and the following provisions of that section are incorporated in this Security Instrument by short form reference:

    A. Exemptions waived.
    B. Subject to call upon default.
    C. Renewal, extension or reinstatement permitted.
    D. Any Trustee may act.
    E. Substitution of Trustees permitted.
    F. Advertisement required: Advertisement shall be sufficient if published in a newspaper having a general circulation in the County or City where the Property or some part thereof is located either (a) once a week for two weeks, or (b) once a day for three days, which may be consecutive days.

17. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

18. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law. Grantor represents, warrants and agrees that:

    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

    B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

    C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

    D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

19. **CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

20. **INSURANCE.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

*(page 3 of 4)*

Exseri ©1994 Bankers Systems, Inc., St. Cloud, MN Form RC-REDT-VA 3/8/2002    MPVA7086 (8/02) /  047-17RA77-0

Identifier:7305989964          Doc Type:MTGR

**PAGE 263**

• Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

21. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

22. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

23. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

24. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

25. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor or successors to any trustee without any other formality than the designation in writing. The successor or any successors to any trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

26. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

27. **WAIVERS.** Except to the extent prohibited by law, Grantor waives the benefit of the homestead exemption as to this obligation and any rights of appraisement and reinstatement.
GRANTOR HEREBY EXPRESSLY WAIVES AND RELEASES ANY REQUIREMENT OR OBLIGATION THAT THE LENDER OR THE TRUSTEE PRESENT EVIDENCE OR OTHERWISE PROCEED BEFORE ANY COURT, CLERK, OR OTHER JUDICIAL OR QUASI-JUDICIAL BODY BEFORE EXERCISE OF THE POWERS OF SALE CONTAINED IN THIS SECURITY INSTRUMENT AND IN SECTION 55-59 AND SECTIONS 55-59.1 THROUGH 55-59.4 OF THE CODE OF VIRGINIA (1950), AS AMENDED.

28. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
☐ Condominium Rider  ☐ Planned Unit Development Rider  ☐ Other .................................................
☐ **Additional Terms.**

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

Witness the following signatures and seals.

(Signature) WARREN J WILSON        (Date) 12-13-06        (Signature)        (Date)

**ACKNOWLEDGMENT:**
(Individual)    COMMONWEALTH OF V.IRGINIA..............., COUNTY (OR CITY) OF C.ul. R.eper..........) ss.
This instrument was acknowledged before me this ........13....... day of .D.e.c.e.m.b.e.r., .2.0.0.6...
by ...W.a.r.r.e.n. J. W.i.l.s.o.n..................................................................................
My commission expires: 2/ 28/2010
(Seal)                        ....W.e.n.d.y. R.. B.e.l.c.h.......... (Notary Public)

ExperT ©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-REDT-VA 3/8/2002    MFVA7086 (8/02) / 047-175477-0    (page 4 of 4)

Identifier:7305989964          Doc Type:MTGR

All that certain lot or parcel of land situate in the County of Culpeper, Commonwealth of Virginia, and being more particularly described as follows:

All that certain lot and being on the south side of Chandler Street in the Town of Culpeper, West Fairfax Magisterial District, Culpeper County, Virginia fronting 50' on said street and running back between parallel lines a distance of 102', adjoining the lands of Chilton on the west, Maren and others on the east and McElfersh on the south, and being shown on a house location survey made by Brian Throssell, C.L.S., dated August 28, 1980, a plat of which is recorded in Deed Book 298, Page 501 in the Clerk's Office of Culpeper County, Virginia.

The property being known as 211 W. Chandler Street, Culpepper, VA 22701.

TAX ID # 41A1-4-E-7

PAGE 264

INSTRUMENT #370531264
RECORDED IN THE CLERK'S OFFICE OF
CULPEPER ON
FEBRUARY 12, 2007 AT 03:13PM
JANICE J. CORBIN, CLERK

RECORDED BY: JLW

*JL Weakley*

Identifier:7471754754          Doc Type:NOTE

# NOTE

DECEMBER 13TH, 2006                    ELLICOTT CITY                        MARYLAND
[Date]                                 [City]                              [State]

2XXXXXXXXXXXXXXT, CULPEPPER, VA 22701
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  236,000.00  (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is  HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS
FINANCIAL NETWORK, INC.)

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of   6.7500    %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the  FIRST   day of each month beginning on  FEBRUARY 1ST, 2007 . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on  JANUARY 1ST, 2037    , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."
I will make my monthly payments at  2101 REXFORD, SUITE 250W, CHARLOTTE, NC 28211
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $   1,530.69

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

VIRGINIA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N(VA) (0005)          Form 3247 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3          Initials

MFVA6064 - 6/9/2006) / 047-176475-4

*—EXHIBIT— B*        —

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.00       % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
CAREN J WILSON          -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                        -Borrower

*[Sign Original Only]*

This is to certify that this is the Note described in and secured by a Deed of Trust dated   DECEMBER 13TH, 2006
on the Property located in   CULPEPPER                              , Virginia.

My Commission Expires: 2/28/2010

_____
Notary Public

-5N(VA) (0005)          Page 3 of 3    MFVA6054 · IGB/2006) /047-175478-4          Form 3247 1/01

PAY TO THE ORDER OF
Deutsche Bank Trust Company Americas as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC
BY _____
Judy Faber, Vice President

Without Recourse
Pay to the Order of
RESIDENTIAL FUNDING COMPANY, LLC

_____
Debra Eshelman
Assistant Secretary
Homecomings Financial, LLC
A Delaware Corporation



**1 record matched your search:**

MIN: ████████4770-9  Note Date: 12/13/2006          MIN Status: Active

Servicer:  <u>GMAC Mortgage, LLC</u>                    Phone: (800) 766-4622
           Waterloo, IA

Investor:  This investor has chosen not to display their information. For
assistance, please contact the servicer.

<u>Return to Search</u>

For more information about MERS please go to <u>www.mersinc.org</u>

Copyright© 2006 by MERSCORP, Inc.

_— EXHIBIT — C  —



**www.mers-servicerid.org**

**1 record matched your search:**

MIN: 1████████████4754-3   Note Date: 12/13/2006          MIN Status: Inactive

Servicer:   GMAC Mortgage, LLC                              Phone: (800) 766-4622
            Waterloo, IA

Investor:  This investor has chosen not to display their information. For
assistance, please contact the servicer.

Return to Search

For more information about MERS please go to www.mersinc.org

Copyright© 2006 by MERSCORP, Inc.

— EXHIBIT — D —