Hearing Date and Time: January 30, 2014 at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline: January 15, 2014 at 4:00 p.m. (prevailing Eastern Time)

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Stephen D. Zide
David E. Blabey
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re:                                   :    Chapter 11
                                         :
RESIDENTIAL CAPITAL, LLC, et al.,        :    Case No. 12-12020 (MG)
                                         :
                  Debtors.               :    Jointly Administered
                                         :
------------------------------------------------------------ x

**OBJECTION OF THE LIQUIDATING
TRUST TO MOTION OF CITIBANK, N.A. FOR AN ORDER (I)
DETERMINING THAT IT IS ENTITLED TO POST-PETITION INTEREST
ON ITS OVERSECURED MSR FACILITY CLAIMS AT THE CONTRACTUAL
DEFAULT RATE, AND (II) DIRECTING DEBTORS TO PAY SUCH INTEREST
AS WELL AS CITIBANK'S DUE AND UNPAID COUNSEL FEES AND EXPENSES**

## TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

OBJECTION ......................................................................................................................... 3

I.     Citibank is Not Entitled to Default Interest. ........................................................... 3

II.    Citibank Is Not Entitled to Further Payment of Its Legal Expenses. ................... 11

CONCLUSION .................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 139-141 Owners Corp.*,
  306 B.R. 763 (Bankr. S.D.N.Y. 2004), *rev'd in part on other grounds*, 313
  B.R. 364 (S.D.N.Y. 2004) ..............................................................................................9

*In re 785 Partners LLC*,
  470 B.R. 126 (Bankr. S.D.N.Y. 2012) ..........................................................................3, 4

*In re Bownetree, LLC*,
  Case No. 08-45854 (DEM), 2009 WL 2226107 (Bankr. E.D.N.Y. July 24,
  2009) ................................................................................................................................4, 8

*In re Calpine Corp.*,
  365 B.R. 392 (Bankr. S.D.N.Y. 2007) ..........................................................................3, 4

*In re Kalian*,
  178 B.R. 308 (Bankr. D.R.I. 1995) ...............................................................................6, 7, 8

*In re Madison 92nd Street Assocs. LLC*,
  472 B.R. 189 (Bankr. S.D.N.Y. 2012) ..........................................................................4

*Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*,
  114 F.3d 379 (2d Cir. 1997) ..........................................................................................12

*Milham v. Key Bank Nat'l Ass'n (In re Milham)*,
  141 F.3d 420 (2d Cir. 1998) ..........................................................................................3, 9

*In re Mills*,
  77 B.R. 413 (Bankr. S.D.N.Y. 1987) ............................................................................13

*In re Nw. Airlines Corp.*,
  No. 05-17930 (ALG), 2007 WL 3376895 (Bankr. S.D.N.Y. Nov. 9, 2007) ...............4, 9

*In re Oneida Ltd.*,
  351 B.R. 79 (Bankr. S.D.N.Y. 2006) ............................................................................10

*In re Terry Ltd. P'ship*,
  27 F.3d 241 (7th Cir. 1994) ...........................................................................................10, 11

*Travelers Cas. & Sur. Co. of America v. Pacific Gas & Elec. Co.*,
  549 U.S. 443 (2007) .......................................................................................................10

*U.S. v. Ron Pair Enterprises, Inc.*,
  489 U.S. 235 (1989) .......................................................................................................12

*Urban Communicators PCS L.P. v. Gabriel Capital, L.P.*,
   394 B.R. 325 (S.D.N.Y. 2008) ..................................................................................................4

*Vanston Bondholders Protective Comm. v. Green*,
   329 U.S. 156 (1946) ........................................................................................................ passim

*In re Vest Assocs.*,
   217 B.R. 696 (S.D.N.Y. Bankr. 1998) ............................................................................ passim

*In re W.R. Grace & Co.*,
   475 B.R. 34 ................................................................................................................................9

**Statutes**

11 U.S.C § 363(b) ..........................................................................................................................12

11 U.S.C § 506(b) ................................................................................................................3, 6, 12

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Liquidating Trust (the "**Liquidating Trust**") submits this objection (the "**Objection**") to the *Motion of Citibank, N.A. for an Order (I) Determining That It Is Entitled to Post-Petition Interest on its Oversecured MSR Facility Claims at the Contractual Default Rate, and (II) Directing Debtors to Pay Such Interest as Well as Citibank's Due and Unpaid Counsel Fees and Expenses* (the "**Motion**") [Docket No 6174].[1] In support of the Objection, the Liquidating Trust respectfully represents as follows:

### PRELIMINARY STATEMENT

1. Citibank received the benefit of its bargain in these Chapter 11 Cases. Pursuant to the consensual Citibank Cash Collateral Order, the Debtors entered into an orderly sale process with the consent of Citibank to liquidate Citibank's collateral, paid Citibank the principal amount of its claim upon the sale of its collateral, and timely paid Citibank all non-default post-petition interest and reimbursement of its legal fees. Unsatisfied with this result, Citibank now seeks to improve its position to the detriment of unsecured creditors by requesting approximately $4.5 million in post-petition default rate interest that Citibank alleges was incurred during the first 9 months of these cases. In addition, Citibank seeks reimbursement of unquantified legal fees which accrued months after the payment of its claim.

2. In arguing for default rate interest, Citibank largely ignores the extensive case law from within the Second Circuit in which courts routinely deny default rate interest for an oversecured creditor of an insolvent debtor. Citibank glosses over controlling case law in the Second Circuit which provides that the Court should weigh the equities before deciding whether to grant an oversecured creditor default interest. Indeed, Citibank has cited only one case – from

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

- 1 -

outside this Circuit – in which a court ordered the payment of default interest from an insolvent debtor; and the facts and circumstances of that case are readily distinguishable from the case at hand.

3. Here, the equities overwhelmingly favor denying the request for default interest. First, there is no dispute that awarding Citibank default interest would harm unsecured creditors. Citibank acknowledges the Debtors' insolvency and any default interest paid to Citibank would come directly out of the pockets of unsecured creditors. Second, Citibank cannot assert that it was harmed in any appreciable way by the bankruptcy cases. As noted above, Citibank received current payment of interest at the non-default rate during the bankruptcy, was timely reimbursed for its legal fees and was paid in full for the principal amount of its claim upon the liquidation of its collateral after the Debtors completed a sale process with Citibank's support. In fact, Citibank has not alleged any default under its credit facility other than the bankruptcy filing.

4. In sum, default interest should be denied where, as here, the debtor is insolvent, the rights of the secured creditor have been fully respected throughout the bankruptcy, and the secured creditor is not adversely affected by the bankruptcy in any appreciable way. Provision of default interest to Citibank would be inequitable as it would serve no purpose other than to enrich a secured creditor at the direct expense of unsecured creditors. Moreover, because Citibank is not entitled to default rate interest and Citibank was paid in full for all amounts it was owed upon the closing of the Walter Sale in January 2013, Citibank's request for reimbursement of post-closing professional fees should likewise be denied.[2]

---

[2] Following entry of the Citibank Cash Collateral Order and through the repayment of the Citibank MSR Facility, the Debtors paid Citibank approximately $1.21 million in legal fees. Following the repayment of the Citibank MSR Facility, the Debtors paid Citibank approximately $136,000 in legal fees. The Liquidating Trust reserves its rights to seek disgorgement of such amounts.

**OBJECTION**

**I.    Citibank is Not Entitled to Default Interest.**

5. While section 506(b) of the Bankruptcy Code provides that oversecured creditors are entitled to post-petition interest, it does not specify the rate at which interest is to be paid. *See generally* 11 U.S.C. § 506(b). What is clear, however, is that in this Circuit "[u]nlike prepetition interest, *pendency interest is not based upon contract*." *Milham v. Key Bank Nat'l Ass'n (In re Milham)*, 141 F.3d 420, 423 (2d Cir. 1998) (emphasis added); *see also In re 785 Partners LLC*, 470 B.R. 126, 134 (Bankr. S.D.N.Y. 2012) ("Section 506(b) does not state that the oversecured creditor is entitled to collect post-petition, or pendency, interest at the contract rate."). Instead, the "appropriate rate of pendency interest is . . . within the limited discretion of the court." *Milham*, 141 F.3d at 423. The inquiry is inherently an equitable one. *See Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 165 (1946) ("It is manifest that the touchstone of each decision on allowance of interest in bankruptcy . . . has been a balance of equities between creditor and creditor or between creditors and the debtor."); *In re Calpine Corp.*, 365 B.R. 392, 400 (Bankr. S.D.N.Y. 2007) (citing *Vanston* for proposition that "courts engage in balancing of the equities when determining allowance of interest in bankruptcy"). Thus, while courts will frequently apply the base rate of interest specified in a creditor's contract, the statute itself imposes no such requirement. *See Milham*, 141 F.3d at 423. More importantly, as discussed below, courts routinely deny default rate interest to oversecured creditors in insolvent cases.

6. When determining what rate of post-petition interest an oversecured creditor should be paid, the courts in the Second Circuit consider the following factors: (i) the conduct by the creditor; (ii) whether the grant of default interest would harm unsecured creditors; (iii) whether the grant of default interest would impair the fresh start of the debtor; and (iv)

whether the contractual interest rate constitutes a penalty. *See 785 Partners,* 470 B.R. at 134 (listing factors); *In re Madison 92nd Street Assocs. LLC*, 472 B.R. 189, 199 (Bankr. S.D.N.Y. 2012) (same). In addition, courts have looked at (i) the difference between the base and the default interest rates, (ii) the reasonableness of the difference between the two rates, (iii) whether awarding default interest would do injustice to equitable distribution among creditors, and (iv) the purpose of the higher interest rate. *See In re Calpine Corp.*, 365 B.R. 392, 400 (Bankr. S.D.N.Y. March 5, 2007) (listing factors); *In re Bownetree, LLC*, Case No. 08-45854 (DEM), 2009 WL 2226107, *4 (Bankr. E.D.N.Y. July 24, 2009) (same).

7.      Among these factors, it is widely recognized that the solvency of the debtor is a critical, if not dispositive, element to be considered by a court when deciding whether to award post-petition default interest. In cases where the debtor would be insolvent and thus payment of default interest would harm unsecured creditors, courts routinely deny requests for payment of default interest by oversecured creditors. *See*, *e.g.*, *Bownetree*, 2009 WL 2226107, at *4 (denying default interest where, among other things, "enforcement of the default rate would have an adverse affect [sic] on other creditors"); *In re Nw. Airlines Corp.*, No. 05-17930 (ALG), 2007 WL 3376895, at *6 (Bankr. S.D.N.Y. Nov. 9, 2007) (denying default interest where "there is no question as to the insolvency of the Debtors and the fact that the recovery of other creditors would be diminished by a grant of default interest"); *In re Vest Assocs.*, 217 B.R. 696, 703 (S.D.N.Y. Bankr. 1998) (default interest not awarded absent affirmative showing of solvency); *Urban Communicators PCS L.P. v. Gabriel Capital, L.P.*, 394 B.R. 325, 340 (S.D.N.Y. 2008) (holding "it was appropriate for the Court to reduce the award of post-petition interest to the point that it would not prejudice subordinate creditors"). Indeed, Citibank has not located a

single published decision within the Second Circuit granting default interest where the debtor was insolvent.

8. Denying default interest on the basis of insolvency is in keeping with the Supreme Court's decision in *Vanston*, the seminal case on post-petition interest. In that case, the Supreme Court denied interest on interest to first mortgage bondholders because the payment of such interest would have resulted in a reduction of subordinate creditors' recoveries. *Vanston*, 329 U.S. at 165-66. The Court ruled that payment of the extra interest was improper not because of any inequitable conduct on the part of the bondholders, or because the interest rate was too high, but simply because it was "not consistent with equitable principles" to allow the payment of interest on unpaid interest, with the corresponding reduction in recoveries to subordinate creditors, where the debtor was prohibited by law from making interest payments during the pendency of the equity receivership. *Id*. at 166.[3]

9. Here, there is no dispute that the Debtors are insolvent and awarding Citibank default interest would harm unsecured creditors. As described in the Motion, and more extensively in the Disclosure Statement, expected recoveries to unsecured creditors in these cases range from 9% to 36%. Thus, any amounts paid to Citibank would reduce amounts that would otherwise go to unsecured creditors. Because courts in the Second Circuit uniformly hold that oversecured creditors are not entitled to default interest where, as here, the debtors are insolvent and the default interest costs would be borne by the unsecured creditors, Citibank's request for default interest should be rejected.

10. Unable to contest that payment of default interest to Citibank would harm unsecured creditors, Citibank first seeks to downplay the harm to unsecured creditors, and

---

[3] In *Vanston,* interest payments were missed. Thus, if anything, the facts of *Vanston* would have provided a stronger ground for an award of extra interest than the facts of this case, where there were no delinquent interest payments.

- 5 -

second argues that denying default interest would be tantamount to adopting a "per se" rule against default interest where the debtor is insolvent because other than the Debtors' insolvency the equities weigh in favor of default interest. Citibank is wrong on both accounts.

11. As an initial matter, Citibank's invention of a materiality qualifier when considering harm to unsecured creditors is baseless. Motion at ¶ 27. No such qualifier exists in the case law, nor can Citibank credibly argue that $4.5 million is a "miniscule" amount. Motion at ¶ 27. Although the amount at controversy may be modest in *comparison* to the aggregate distributable value available to unsecured creditors, there is nothing in the case law to suggest that this comparison is relevant. To the contrary, courts (including one case cited by Citibank) have denied post-petition interest in much smaller amounts. *Vest*, 217 B.R. at 703-04 (denying default interest rate where difference in rates was $10,000) (cited in Motion at ¶ 29); *see also In re Kalian*, 178 B.R. 308, 310, 316-17 (Bankr. D.R.I. 1995) (denying default interest rate where difference in rates was $12,320).[4] The simple fact is that unsecured creditors, as a whole, would suffer harm in the amount of $4.5 million if Citibank is paid default interest.[5]

12. Moreover, in arguing that the sole consideration in favor of denying default interest is the Debtors' insolvency, Citibank ignores numerous other facts and circumstances of these cases. As set forth below, to the extent the Court determines to look

---

[4] In describing distributions to unsecured creditors of the various Debtor Groups, Citibank seems to suggest that only holders of claims against the GMACM Debtors and the ResCap Debtors would be harmed. In fact, all unsecured creditors would be harmed because holders of allowed claims will receive their recoveries in the form of cash distributed on account of their units in the ResCap Liquidating Trust. The cash distributed on account of such units is done on an aggregate basis, not by Debtor Group.

[5] In downplaying the importance of harm to unsecured creditors, Citibank writes that "[i]f Congress had wanted the focus of the section 506(b) analysis to be the impact on unsecured creditor distributions, it certainly could have so provided, but it did not." Motion ¶ 26. This statement is puzzling coming from Citibank, the party reading section 506(b) to incorporate the contract default rate of interest. After all, "if Congress had wanted the focus of the section 506(b) analysis to be the <u>contract default rate</u>, it certainly could have so provided, but it did not."

beyond the solvency of the Debtors, there are numerous other considerations which weigh against awarding default interest.[6]

13. <u>First</u>, both before and after the Petition Date, Citibank continued to receive timely interest payments at the non-default rate, as well as reimbursement of its legal expenses. Motion at ¶ 10. Courts have found that the timely payment of non-default interest weighs against providing a secured creditor with default interest. *See Vest*, 217 B.R. at 704 (denying default interest where regular non-default interest payments made). And, indeed, if the purpose of default rates is "to compensate a lender for the administrative expenses and inconvenience in monitoring untimely payments," *id*. at 701, it makes sense that no such interest should be awarded when payments are timely. Here, Citibank did not suffer any harm or incur any additional expense as a result of the Debtors' bankruptcy cases, such that the policies underlying default interest are not implicated.

14. <u>Second</u>, in negotiating the Citibank Cash Collateral Order, Citibank agreed to receive payment at the non-default rate. *See* Motion at ¶ 10; *see* Citibank Cash Collateral Order at ¶ 6(a). It would therefore be inequitable to unsecured creditors to provide Citibank with default interest at this time. *See Kalian*, 178 B.R. at 316 (denying default interest because secured creditor could have sought increased adequate protection of its claim, finding that "[t]he bankruptcy process provided [the secured creditor] protection against all the risks and costs that might support enforcement of a default interest term.").[7]

---

[6] Contrary to Citibank's assertions, the Liquidating Trust is not advocating a "per se" rule that default rate interest can never be allowed in insolvent cases. The Liquidating Trust need not establish any such "per se" rule to prevail here, because, as noted, a variety of considerations weigh against providing Citibank with default interest in this case. Nevertheless, it bears noting that a presumption against the award of default rate interest in an insolvent case would appear to be fully consistent with the Supreme Court's decision in *Vanston,* a case in which, as discussed above, the Supreme Court denied interest on interest for no reason other than that an award of such interest would harm subordinate creditors.

[7] It is noteworthy that Citibank agreed to an adequate protection package in the Citibank Cash Collateral Order that included payment of interest at the non-default rate without any reservation of rights indicating it would later seek

- 7 -

15.     <u>Third</u>, there was little risk to Citibank that it would not be repaid the full principal amount outstanding under the Citibank MSR Facility.  As of the Petition Date, the Debtors had entered into a stalking horse contract that would have paid Citibank in full.  The auction period was designed to identify the potential for higher bids.  Therefore, as noted in the Motion, Citibank was significantly oversecured at all times and the repayment of the Citibank MSR Facility was a requirement of the Ocwen Sale Order.  Accordingly, it would be inequitable to provide Citibank with default interest where it was paid months after the Petition Date, and the repayment was never at risk.  *See Vest*, 217 B.R. at 704 (denying default interest where principal payment made within seven months following the Petition Date); *Kalian*, 178 B.R. at 316 (denying default interest because "[t]here was never any cognizable risk that [the secured creditor] would go unpaid, or even underpaid.").

16.     <u>Fourth</u>, the only alleged breach of the Citibank Credit Facility was the Debtors' filing of the bankruptcy petitions.  *See* Motion ¶ 8 (referencing default under § 8.01(q) of the Credit Agreement, which provides for automatic acceleration upon bankruptcy).  This technical "default" had no material impact on Citibank, as Citibank continued to receive uninterrupted payments, it was promptly granted adequate protection, and its recoveries were never at risk in light of its over-secured position. Where the entitlement to post-petition interest arises from a default caused by the debtor's bankruptcy itself, courts routinely find it would be inequitable to award post-petition interest at the default rate.  *See Bownetree* at *5 ("The default rate which [the secured creditor] seeks to apply was only triggered by the debtor's filing of bankruptcy. . . . Any default on the part of the debtor was a technical default under the terms of the contract or the result of an application of the default rate.  Therefore it would be inequitable

---

interest at the default rate.  It was only after the Debtors agreed to the Citibank Cash Collateral Order and the repayment of the Citibank MSR Facility with the proceeds of the Walter Sale that Citibank decided to pursue its claim for default interest.

to enforce the default rate under these circumstances."); *Vanston*, 329 U.S. at 166-67 (denying interest on unpaid interest because sole default was debtor's inability to make payments to creditors after being placed in equity receivership and noting "legal suspension of an obligation to pay is an adequate reason why no added compensation or penalty should be enforced for failure to pay"); *In re W.R. Grace & Co.*, 475 B.R. 34, 151-161 (denying default interest even where debtor may be solvent because sole event of default was debtor's bankruptcy); *see also In re Nw. Airlines Corp.*, Case No. 05-17930 (ALG), 2007 WL 3376895, at *6 (Bankr. S.D.N.Y Nov. 9, 2007) (denying default interest where debtor insolvent and lack of prepetition default or acceleration of maturity).

        17.    Citibank's remaining arguments should also be rejected. First, contrary to Citibank's suggestion, there is no "presumption" in the Second Circuit in favor of application of the contractual default rate of interest. In *Milham*, the Second Circuit noted that courts will often apply the contract rate, but never said the contract rate should presumptively be applied. Indeed, it held to the contrary, noting that "pendency interest is not based upon contract." *Milham*, 141 F.3d at 423. Citibank misleadingly cites *Milham* for the proposition that a court has only "limited discretion" to override the contract rate. Motion ¶ 20. But in fact, what the *Milham* court actually said was simply that "[t]he appropriate rate of pendency interest is therefore within the limited discretion of the court." *Milham*, 141 F.3d at 423. This statement implies nothing about whether the contract rate serves as a presumptive baseline. Moreover, the discussion in *Milham* centered on the propriety of awarding the "contractual rate," with no mention at all of the existence or treatment of a higher default rate. *Id.* at 423.[8]

---

[8] Citibank cites lower court cases from within the Second Circuit that have held there is a presumption in favor of the contract rate. However, there are other lower court cases that would support the view that there is no presumption in favor of the default rate where a debtor is insolvent, and in fact the presumption may be to the contrary. *See*, *e.g.*, *In re 139-141 Owners Corp.*, 306 B.R. 763, 771 (Bankr. S.D.N.Y. 2004) ("I agree that in most

- 9 -

18. The Supreme Court's decision in *Travelers Cas. & Sur. Co. of America v. Pacific Gas & Elec. Co.*, 549 U.S. 443 (2007), likewise provides a tenuous basis for holding that the default rate of interest presumptively applies. The case has nothing to do with post-petition interest and stands only for the unremarkable proposition that state law governs the substance of claims. Notably, this was a proposition first recognized in *Vanston* (which was cited in *Travelers*). *See Vanston*, 329 U.S. at 161 ("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law."). Yet despite recognizing this principle, the Supreme Court in *Vanston* proceeded to deny interest on interest as being not "in accord with the equitable principles governing bankruptcy distributions." *Id.* at 163.

19. Similarly, because there is no presumption in favor of the contract default rate, Citibank is wrong to suggest that the Debtors (or the Liquidating Trust) bear the burden of proving that Citibank is not entitled to default rate interest. Indeed, as this Court has recognized in other contexts, the secured creditor generally bears the burden of establishing the amount of its claim. *See In re Residential Capital, LLC*, 501 B.R. 549, 590 (Bankr. S.D.N.Y. 2013) ("In establishing its claim, a secured creditor generally bears the burden under section 506(a) of proving the amount and extent of its lien.").

20. Finally, the one case cited by Citibank in which a court allowed post-petition interest at the default rate where the debtor was insolvent is readily distinguishable. *See In re Terry Ltd. P'ship*, 27 F.3d 241 (7th Cir. 1994) (Motion at ¶ 21). In *Terry*, the debtor sold

---

circumstances it is appropriate for the bankruptcy court or superior court exercising bankruptcy jurisdiction to limit a secured creditor to its non-default contract rate of interest in order to provide a distribution to unsecured creditors."), *rev'd in part on other grounds*, 313 B.R. 364 (S.D.N.Y. 2004); *In re Oneida Ltd.*, 351 B.R. 79, 95 (Bankr. S.D.N.Y. 2006) ("The Debtors also correctly argue that, since they are insolvent, there are no equitable circumstances present that require payment of post-petition interest.").

real property that was encumbered by three mortgages of differing priority. When the second mortgagee sought recovery of default interest, the third lien mortgagee objected on the grounds that it was inequitable because the higher interest rate would reduce its recovery. The Seventh Circuit rejected the third mortgagee's argument, finding that payment of default interest to the second mortgagee was not inequitable because the third mortgagee was "fully aware of [the] superior interests in the property and the extent of the interests" and "bargained for the risky position in which it later found itself." *Id*. at 243. Thus, disallowing the second mortgagee's default interest would be tantamount to redistributing the parties' bargained-for risks. *Id*. at 245.

21. The holding in *Terry* is the proverbial exception that proves the rule. As recognized by other courts, *Terry* is readily distinguishable from the case at bar because in *Terry* the only party harmed by the allowance of default interest was a single secured creditor that was sophisticated, fully informed and specifically bargained for its subordinate position. *See Vest*, 217 B.R. at 704, n. 5 ("My holding [denying default interest] is to be distinguished from [*Terry*] . . . Here, there are general creditors whose distribution may be impacted negatively by the allowance of default interest to the [secured creditor], a fact together with the minimal damage to the [secured creditor] caused by the Debtor's default tips the scale in favor of disallowance of this interest unless the Debtor proves to be solvent."). In contrast to *Terry*, the allowance of default interest here would harm all unsecured creditors, including numerous involuntary creditors (including the RMBS Trustees, monoline claimants, and securities claimants), none of whom bargained to subordinate their recovery to Citibank's claim for default interest.

## II. Citibank Is Not Entitled to Further Payment of Its Legal Expenses.

22. For the reasons stated above, Citibank is not entitled to default interest under the Citibank MSR Facility. Because the Citibank MSR Facility was paid in full upon the closing of the Walter Sale, and no further obligations could accrue thereunder, Citibank was also

no longer entitled to reimbursement of its legal expenses following the repayment. *See* Credit Agreement § 8.02(c) (limiting reimbursement of legal expenses to collection of amounts owing under the Citibank MSR Facility). Indeed, it is unclear to the Liquidating Trust why Citibank continued to have its legal fees paid following the closing of the Walter Sale (January 2013) to April 2013.

23. In the Motion, Citibank references an alleged agreement between Citibank and the Debtors prior to the closing of the Walter Sale under which the Debtors would continue to pay Citibank's legal fees despite the closing of the Walter Sale. *See* Motion at ¶ 13. As an initial matter, it is unclear to the Liquidating Trust what agreement was reached between the Debtors and Citibank. Citibank does not cite any document filed with the Court nor attach any such agreement to the Motion. Further, it is unclear whether such an agreement would even be enforceable under section 363(b) of the Bankruptcy Code absent notice and approval by the Court. *See generally Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379 (2d Cir. 1997) (declining to enforce agreements outside of the ordinary course of business absent court approval).

24. Even if such an agreement were enforceable, Citibank's entitlement to reimbursement of its legal expenses is governed by section 506(b) of the Bankruptcy Code, which limits such reimbursements (as does the Credit Agreement) to "reasonable fees, costs, and charges." *See U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). It defies logic for a debtor to continue to reimburse the legal expenses of a creditor even after the creditor is paid in full.

25. Finally, it is well established that a party seeking reimbursement of its legal expenses in bankruptcy has the burden to demonstrate the reasonableness of such expenses.

*See*, *e.g.*, *In re Mills*, 77 B.R. 413, 418 (Bankr. S.D.N.Y. 1987).  Here, Citibank has not provided any evidence of the amount, let alone the reasonableness, of its fees.  Indeed, the Motion does not even argue that such fees are reasonable, only that they must be paid.  Accordingly, Citibank's request for fees cannot withstand even modest scrutiny, and the request should be denied.[9]

## CONCLUSION

WHEREFORE, the Liquidating Trust respectfully requests that the Court enter an order sustaining the Objection, denying the Motion, and providing such other or further relief as is just and proper.

Dated:  New York, New York
        January 15, 2014

KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/ Kenneth H. Eckstein
Kenneth H. Eckstein
Douglas H. Mannal
Stephen D. Zide
David E. Blabey
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the ResCap Liquidating Trust*

---

[9] To the extent the Court finds that Citibank is entitled to reimbursement of its legal expenses for the period following the closing of the Walter Sale, Citibank should be required to provide the Liquidating Trust with unredacted invoices that support the amount being sought, and the Liquidating Trust should have an opportunity to review the invoices, and, if necessary, object to the reasonableness of the fees.

- 13 -