UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**RESIDENTIAL CAPITAL, LLC, et al.**
8400 Normandale Lake Boulevard Suite 175
Minneapolis, MN 55437

Case No. 12-12020
Chapter 11

Jointly Administered

Monthly Operating Report for
the period from November 1, 2013 through November 30, 2013

**MORRISON & FOERSTER LLP**
(Debtors' Attorneys)

Monthly Operating Income (Loss):  ($39,788,019)

Report Preparer:

The undersigned, having reviewed the attached report and being familiar with the Debtors'
financial affairs, verifies under the penalty of perjury that the information contained therein
is complete, accurate and truthful to the best of my knowledge.

Date: January 16, 2014


Jill Horner
Chief Financial Executive

RESIDENTIAL CAPITAL, L.L.C., et al.
Case No. 12-12020
JOINTLY ADMINISTERED
DEBTORS IN POSSESSION
INDEX TO MONTHLY OPERATING REPORT

|  | Page |
|---|---|
| Global Notes | 1-7 |
| Corporate Monthly Operating Report | |
| Schedule of Cash Receipts and Disbursements | MOR-1 |
| Schedule of Bank Account Balances | MOR-1 CON'T |
| Consolidated Statement of Operations | MOR-2 |
| Consolidated Balance Sheet | MOR-3 |
| Status of Post-Petition Taxes | MOR-4 |
| Summary of Unpaid Post-Petition Debts | MOR-4 |
| Accounts Receivable Reconciliation and Aging | MOR-5 |
| Payments to Insiders and Professionals | MOR-6 |
| Post-Petition Status of Leases Payable | MOR-6 |
| Post-Petition Status of Secured Notes | MOR-6 |
| Debtor Questionnaire | MOR-7 |

## A.    Global Notes

### 1.    Background

Residential Capital, LLC ("ResCap"), together with its subsidiaries, is a real estate finance company that primarily focused on residential mortgage markets in the United States. ResCap's primary and most valuable business operations consisted of servicing mortgage loans for investors, including loans originated by Ally Bank and other third parties. ResCap completed the sale of substantially all of its assets in January and February 2013 (the "Section 363 Asset Sales"). After these sales, ResCap's primary business activities consist of the management and sale of the remaining assets and operations including the resolution of proofs of claim.

### 2.    Introduction

On May 14, 2012 (the "Commencement Date"), ResCap and certain of its subsidiaries (each a "Debtor" and collectively, the "Debtors"), filed voluntary petitions (the "Chapter 11 Cases") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On May 16, 2012, the United States Trustee for the Southern District of New York appointed a statutory committee of creditors pursuant to section 1102(a)(1) of the Bankruptcy Code. Information contained herein may differ from the Debtors' filings on the Commencement Date due to more accurate information becoming available.

### 3.    Accounting Principles

The financial statements and supplemental information contained herein are preliminary and unaudited. In addition, the financial statements included in MOR-2 and MOR-3 represent the financial condition and results of operations of the consolidated ResCap group, which includes the Debtors and their non-Debtor affiliates.

The financial statements have been prepared in accordance with generally accepted accounting principles ("GAAP"), other than as noted, as it applies to debtors in possession.

The preparation of the financial statements requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities at the date of the financial statements and income and expenses during the reporting period. In developing these estimates and assumptions, management uses available evidence at the time of the financial statements. Because of uncertainties associated with estimating the amounts, timing and likelihood of possible outcomes, actual results could differ from our estimates. Supplemental information contained herein is generally presented on a cash and/or invoiced basis.

1

4.    **General Methodology**

The Debtors prepared this Monthly Operating Report ("MOR") relying primarily upon the information set forth in its books and records. In preparing this MOR, the Debtors made reasonable efforts to supplement the information set forth in its books and records with additional information concerning transactions that may not have been identified therein to the extent necessary.

5.    **Past Performance**

The financial position and results of operations contained herein are not necessarily indicative of results which may be expected for any other period or for the full year and as a result, may not reflect the consolidated financial position and results of operations of the Debtors in the future.

6.    **Carrying Value of Assets**

Unless otherwise indicated, the values for assets contained in this MOR are book values as of the reporting period. Amounts ultimately realized from the disposition of the Debtors' assets may vary materially from their book value. The Debtors reserve their right to amend or adjust the value of each asset or liability set forth herein.

7.    **Liabilities Not Subject to Compromise**

Although payment of prepetition claims generally is not permitted, the Bankruptcy Court has granted the Debtors the authority, but does not require the Debtors to pay certain prepetition claims in designated categories and subject to certain terms and conditions. This relief generally was designed to preserve the value of the Debtors' businesses and assets. To the extent such claims have been categorized as "Liabilities Not Subject to Compromise," the Debtors reserve their right not to pay those amounts if they believe the payment not to be in the best interest of the Debtors' estates (collectively, the "Estate"). The Debtors have paid and intend to continue to pay undisputed post-petition obligations incurred in the ordinary course of their businesses. The Chapter 11 Plan ("the Plan"), as defined below, establishes an Administrative Claims Bar Date which is January 16, 2014. Those parties who have post-petition claims against the Debtors and are not specifically exempted from filing an administrative claim must file their claim by the Administrative Claims Bar Date.

8.    **Liabilities Subject to Compromise**

As a result of commencing the Chapter 11 Cases, the payment of prepetition indebtedness is "Subject to Compromise" or other treatment under a Chapter 11 plan. Generally, actions to enforce or otherwise effect payment of prepetition liabilities are stayed.

The filing of the Chapter 11 Cases constituted an event of default under, or otherwise triggered accelerated repayment obligations with respect to a number of debt instruments and agreements relating to direct and indirect financial obligations of the

2

Debtors (collectively, the "Prepetition Debt"). As a result, the Prepetition Debt became automatically and immediately due and payable. The Debtors believe that any efforts to enforce the payment obligations in connection with the Prepetition Debt have been stayed as a result of the filing of the Chapter 11 Cases.

Following a hearing on August 29, 2012, the Bankruptcy Court approved the motion to set the Bar Date, which required general claimants to submit claims no later than the close of business on November 9, 2012 (subsequently extended to November 16, 2012) and governmental units to submit claims no later than the close of business on November 30, 2012. To date, over 7,300 proofs of claim totaling approximately $109.9 billion have been filed against the Debtors per the latest claims register provided by the Debtors' Claims Agent in early January 2014. The Debtors' Claims Agent continues to receive proofs of claim after the Bar Date. Claims by creditors will be investigated and resolved in connection with a claims resolution process, which will include the Debtors filing objections to those claims that the Debtors believe are not valid liabilities due and owing by the Debtors. This process is expected to take a considerable amount of time to complete. Certain claims have been filed as unliquidated, which could materially increase the amount of allowed claims once these claims are finally resolved. To date, the Debtors have filed fifty-seven omnibus and many individual claims objections that seek to expunge or reclassify approximately 3,600 claims that assert approximately $51.0 billion in claims against the Estate. The Bankruptcy Court has entered orders expunging 2,397 proofs of claim asserting $38.9 billion in claims against the Estate. In addition to the expunged claims, an additional 376 proofs of claim asserting $17.8 billion in claims against the Estate have been withdrawn by the claimants, and some of these claims are among the claims that were subject to an omnibus objection.

The Plan resolves over 1,100 proofs of claim, asserted in excess of $36.3 billion. The types of claims that are resolved by the Plan include those filed by monoline insurers, private securities holders, RMBS trustees, and certain bondholder claimants. In addition to the claims specifically resolved in the Plan, the Debtors believe that the provisions of the Plan resolve other categories of substantial claims filed against the Estate. The Debtors expect to have those claims removed from the claims register either through the claimant's consensual withdrawal of such claims or by order of the court.

On December 20, 2013, the Bankruptcy Court entered the *Order Establishing the Disputed Claims Reserve in Connection with the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (Docket No. 6166). The Disputed Claims Reserve sets a maximum amount of Trust Units to be set aside for those Class 4 General Unsecured Claims that were not allowed at the Effective Date, and may be allowed subsequent to the Effective Date. The Disputed Ownership Fund received approximately 3.6 million Trust Units, which is based on $382.3 million of Class 4 General Unsecured Claims. The Trust Units will be distributed to

3

claimants whose Class 4 General Unsecured Claims become allowed claims. The number of units distributed will be based on the allowed amount of the claim and the Debtor Group against which the claim is allowed.

### 9.    Executory Contracts

Under Section 365 of the Bankruptcy Code, the Debtors may assume, assume and assign or reject certain executory contracts and unexpired leases, subject to approval of the Bankruptcy Court. In general, rejection of an executory contract or unexpired lease is treated as a prepetition breach and, subject to certain exceptions, relieves the Debtors from performing their future obligations. To the extent the Debtors reject an executory contract or unexpired lease, the contract counterparty or lessor is entitled to a prepetition general unsecured claim for damages caused by such a breach. Generally, the assumption and assignment of an executory contract or unexpired lease requires the Debtors to cure, or satisfy, all prepetition obligations under such contracts or leases.

On July 26, 2012, the Debtors filed a notice of intent to assume and assign certain executory contracts, unexpired leases of personal property and unexpired leases of nonresidential real property and cure amounts related thereto. As part of the Section 363 Asset Sales in January and February 2013, contracts were assumed and assigned to the purchasers. Certain assets were removed from these sales in response to objections filed contesting the conveyance of these assets. The Debtors continue to work on curing these objections.

### 10.    Reservation of Rights

Given the complexity of the Debtors' businesses, inadvertent errors or omissions may have occurred in the preparation of this MOR. Accordingly, the Debtors hereby reserve all rights to dispute the validity, status, enforceability or the executory nature of any claim amounts, representations or other statements in this MOR and reserve the right to amend or supplement this MOR, if necessary.

Nothing contained in this MOR shall constitute a waiver of the Debtors' rights or an admission with respect to the Chapter 11 Cases, including with respect to any issues involving the Debtors' ownership interests, substantive consolidation, equitable subordination, defenses and/or causes of action arising under chapter 5 of the Bankruptcy Code and any other applicable non-bankruptcy law.

### 11.    Chapter 11 Plan

The hearing to consider confirmation of the Plan was conducted on November 19-22, and 25-26, 2013. On December 11, 2013, the Bankruptcy Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and The Official Committee of Unsecured Creditors* [Docket No. 6065] and on December 17, 2013, the Bankruptcy Court filed the *Notice of Entry of Confirmation Order Confirming the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and The Official Committee of Unsecured Creditors and Occurrence of Effective Date* [Docket No. 6137].

4

Settlements included in the Chapter 11 Plan, including the dispute with the Junior Secured Noteholders as to the payment of interest, have not been incorporated into these November financial statements, as the Plan was not effective until December.

Due to Plan confirmation, this will be the last Monthly Operating Report for ResCap, and the ResCap Liquidating Trust will file its first Quarterly Operating Report as of March 31, 2014.

**B.      Notes to Statement of Income (MOR-2)**

There were no items of note in the Statement of Income for the month ended November 30, 2013.

**C.      Notes to Balance Sheet (MOR-3)**

At November 30, 2013, Finance receivables and loans, net, includes $511.1 million related to private-label securitizations and secured borrowings that the Debtors are required to consolidate under GAAP. The corresponding liabilities are recorded in Collateralized borrowings in securitization trusts, $404.2 million, and Other borrowings, $70.3 million.

**D.      Notes to Accounts Receivable Reconciliation and Aging (MOR-5)**

Due to the nature of the Debtors' businesses, an aging of accounts receivable is not indicative of collectability and therefore is not maintained. The majority of the accounts receivable are comprised of loan insurance guarantee receivables. These receivables arise as mortgage loans are acquired from off-balance sheet securitizations guaranteed by Ginnie Mae, as a result of borrower default or contractual delinquency triggers. Mortgage loans are reclassified to a receivable when the loan is deemed impaired. An insurance claim is filed with the appropriate government guarantor agency (FHA or VA) for eligible mortgage loan principal, interest and foreclosure related expenses.

The next largest component of the accounts receivable are servicer advances made by the Debtors to the investors in mortgage loans serviced by the Debtors. Such advances are made to maintain the scheduled cash flows in the event of borrower default or delinquency and have a priority claim to the cash flows in the event of foreclosure or liquidation.

E.    **Notes to Debtor Questionnaire (MOR-7)**

1.    **Question 2 Notes**

a.    The Debtors have control over custodial accounts that are used to disburse non-debtor owned funds to various parties pursuant to the Debtors' servicing business. The Debtors obtained Bankruptcy Court approval to continue to operate their servicing business in the ordinary course, including the disbursement of funds from these custodial accounts. As a result of the 363 Asset Sales, the Debtors' servicing activity is being done on a more limited basis than prior to the 363 Asset Sales.

b.    The Debtors are in compliance with the *Final Order under Bankruptcy Code Sections 105(a), 345, 363, 364, and 503(b)(1) and Bankruptcy Rules 6003 and 6004 Authorizing (I) Continued Use of Cash Management Services and Practices, (II) Continued Use of Existing Bank Accounts, Checks and Business Forms, (III) Implementation of Modified Cash Management Procedures and Use of Certain Bank Accounts Established in Connection with Use of Pre- And Post-Petition Lenders' Financing Facilities and Cash Collateral, (IV) Waiver of the Investment and Deposit Requirements of Bankruptcy Code Section 345, (V) Debtors to Honor Specified Outstanding Prepetition Payment Obligations, and (VI) Continuation of Intercompany Transactions and Granting Administrative Expense Status to Intercompany Claims* [Docket No. 393] (the "Cash Management Order"), approved on June 15, 2012.

c.    As part of the Debtors' normal course of business, certain third parties make payments on the Debtors' behalf and the Debtors also disburse custodial funds from various custodial accounts that are not debtor-in-possession accounts. These payments are made in accordance with the applicable Court orders and are a necessary part of the Debtors' business operations.

2.    **Question 4 & 5 Notes**

Other than its crime insurance, insurance coverage for the Debtors is provided through policies maintained by Ally Financial Inc. ("Ally"). The Debtors reimburse Ally for their share of this insurance coverage in accordance with the terms and conditions of the shared service agreement approved by the Bankruptcy Court. The Debtors have made all reimbursement payments to Ally for these insurance obligations. Since the Debtors do not directly contract for this insurance coverage, the Debtors would not be the party to receive notices from the insurance providers regarding any lapse in coverage.

3.    **Question 7 Notes**

In the ordinary course of their businesses, the Debtors generate receivables from Ally Bank, Ally, and other affiliates as a result of shared services and other transactions between the Debtors and these affiliates. The Debtors are collecting amounts owed on

6

these and past post-petition receivables in accordance with the agreements related to these services and post-petition practices.

### 4.    Question 8 Notes

Consistent with relief granted by the Bankruptcy Court under the *Final Order Under Bankruptcy Code Sections 105(a), 363(b), 507(a), 1107 and 1108 and Bankruptcy Rule 6003 (i) Authorizing, but not directing, the Debtors to (a) Pay and Honor Prepetition Wages, Compensation, Employee Expense and Employee Benefit Obligations; and (b) Maintain and Continue Employee Compensation and Benefit Programs, and (ii) Directing Banks to Honor Prepetition Checks and Transfer Requests for Payment of Prepetition Employee Obligations* [Docket No. 393] (the "Wages Order") and past practices, the Debtors' payroll and related taxes are paid by Ally on the Debtors' behalf, and the Debtors reimburse Ally for these payments. The Debtors are current with their payments to Ally and Ally has paid these obligations on the Debtors' behalf.

### 5.    Question 12 Notes

The Debtors received Bankruptcy Court authority to pay prepetition taxes pursuant to the *Final Order Under Bankruptcy Code Sections 105(a), 363, 506(a), 507(a)(8), 541 and 1129 and Bankruptcy Rule 6003 Authorizing Payment of Taxes and Regulatory Fees* [Docket No. 384]. The Debtors are in compliance with the relief granted under this order. During November 2013, the Debtors settled and paid prepetition taxes due to two counties.

### 6.    Question 13 Notes

The Debtors do not consider post-petition invoices as past due or delinquent if such invoices are subject to dispute, or further review and/or reconciliation with the vendor. At November 30, 2013, the accounts payable aging continues to reflect certain amounts as delinquent. The Debtors consider this to be reflective of the normal accounts payable process, due to the fact that certain key vendors are on immediate payments terms, and in some cases, invoices are not received timely.

### 7.    Question 14 Notes

Consistent with the agreements in place prepetition, the Debtors' payroll and related taxes are paid by Ally on the Debtors' behalf. In accordance with the Wages Order, the Debtors continue to reimburse Ally for these payments. The Debtors are current with their payments to Ally and Ally has paid these obligations on the Debtors' behalf in a timely manner.

### 8.    Question 17 Notes

The Debtors were delinquent with a select amount of court ordered payments to attorneys or other professionals as of November 30, 2013. Those payments have since been made and the Debtors are currently no longer delinquent with any such payments.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re Residential Capital, LLC, et al.

**Debtor**

Case No. 12-12020

Reporting Period: November 1, 2013 - November 30, 2013

Federal Tax I.D. #    20-1770738

## CORPORATE MONTHLY OPERATING REPORT

File with the Court and submit a copy to the United States Trustee within 20 days after the end of the month and
submit a copy of the report to any official committee appointed in the case.
*(Reports for Rochester and Buffalo Divisions of Western District of New York are due 15 days after the end of
the month, as are the reports for Southern District of New York.)*

| REQUIRED DOCUMENTS | Form No. | Document Attached | Explanation Attached |
|---|---|---|---|
| Schedule of Cash Receipts and Disbursements | MOR-1 | X | |
| Bank Reconciliation (or copies of debtor's bank reconciliations) | MOR-1 (CON'T) | | X |
| Copies of bank statements | | | X |
| Cash disbursements journals | | N/A | |
| Statement of Operations | MOR-2 | X | |
| Balance Sheet | MOR-3 | X | |
| Status of Post-petition Taxes | MOR-4 (CON'T) | | X |
| Copies of IRS Form 6123 or payment receipt | | N/A | |
| Copies of tax returns filed during reporting period | | N/A | |
| Summary of Unpaid Post-petition Debts | MOR-4 | X | |
| Listing of Aged Accounts Payable | | | X |
| Accounts Receivable Reconciliation and Aging | MOR-5 | X | |
| Taxes Reconciliation and Aging | MOR-5 | | X |
| Payments to Insiders and Professional | MOR-6 | X | |
| Post-petition Status of Secured Notes, Leases Payable | MOR-6 | X | |
| Debtor Questionnaire | MOR-7 | | X |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the attached documents
are true and correct to the best of my knowledge and belief.

Signature of Authorized Individual*    *Jill Horner*    Date    1/16/2014

Printed Name of Authorized Individual    Jill Horner    Date    1/16/2014

*Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor is a
partnership; a manager or member if debtor is a limited liability company.

MOR

In re  Residential Capital, LLC, et al.
    Debtor

Debtors' Cash Flow by Line Item (unaudited)[3][4]
November 1, 2013 - November 30, 2013
($ in thousands)

| Case Number | Consolidated Entities[1] | GMACM Borrower, LLC[5] 12-12035 | RFC Borrower, LLC[5] 12-12068 | AKA 13, LLC[6] 12-12021 | DOA Holding Properties, LLC 12-12022 | GMAC Residential Holding Company, LLC 12-12033 |
|---|---|---|---|---|---|---|
| Beginning Cash Balance | $ 1,463,708 | $ - | $ - | $ 856 | $ 11 | $ 10 |
| **Receipts** | | | | | | |
| Loan Sales/Redeliveries/Claims Proceeds | 27,043 | - | - | - | - | - |
| Hedge Proceeds | 0 | - | - | - | - | - |
| Returns on Servicer Advances | 33,706 | 582 | 204 | - | - | - |
| Loan and Securities Collections | 3,519 | - | - | - | - | - |
| Fee Income | 334 | - | - | - | - | - |
| Other Receipts, net | 11 | - | - | - | - | - |
| **Total Receipts** | 64,613 | 582 | 204 | - | - | - |
| **Disbursements**[2] | | | | | | |
| Servicer Advances | (34,532) | - | - | - | - | - |
| Hedge Disbursements | - | - | - | - | - | - |
| Originations/Repurchases | - | - | - | - | - | - |
| Accounts Payable and Payroll | (14,854) | - | - | - | - | (3) |
| Other Disbursements | (223) | - | - | - | - | - |
| **Subtotal Disbursements** | (49,609) | - | - | - | - | (3) |
| Retained Professional Fees / Reorganization Costs | (19,945) | - | - | - | - | - |
| Debt Interest/Fees/Expenses | - | - | - | - | - | - |
| **Total Disbursements** | (69,554) | - | - | - | - | (3) |
| **Net Cash Flow (excl. intercompany, debt draws/paydowns)** | (4,940) | 582 | 204 | - | - | (3) |
| Intercompany | 3,379 | (571) | (204) | - | - | (7) |
| Debt Draws/(Paydowns) | - | - | - | - | - | - |
| **Net Cash Flow** | (1,561) | 11 | - | - | - | (10) |
| **Ending Cash Balance** | $ 1,462,147 | $ 11 | $ - | $ 856 | $ 11 | $ - |
| Expenses Paid On Behalf of / (By) Other Debtor Entities | $ 8 | $ - | $ - | $ - | $ - | $ (3) |

Note - Cash balances represent bank cash balances, and excludes cash accounts classified as restricted cash on the balance sheet
(1) Includes Residential Capital, LLC (12-12020); GMAC Mortgage, LLC (12-12032); and Residential Funding Company, LLC (12-12019)
(2) See MOR 6 for details of disbursements to affiliates
(3) Debtors not listed in MOR-1 had no cash activity, expenses or balances in the MOR reporting period
(4) Above schedule uses direct cash flow method and pertains to Debtor entities only
(5) GMACM Borrower (12-12035) and RFC Borrower, LLC (12-12068) have been deconsolidated beginning on April 1, 2013. Prior cash flows for these entities are reflected in the Consolidated Ent
(6) Formerly Ditech, LLC

In re  Residential Capital, LLC, et al.
　　　Debtor

Case No.  12-12020
Reporting Period:  November 1-30, 2013

Debtors' Cash Flow by Line Item (unaudited)[3][4]
November 1, 2013 - November 30, 2013
($ in thousands)

| Case Number | Passive Asset Transactions LLC 12-12044 | RCSFJV2004 LLC 12-12051 | Residential Consumer Services, LLC 12-12058 | Residential Funding Mortgage Exchange, LLC 12-12059 | RFC Asset Holdings II, LLC 12-12065 | RFC Asset Management, LLC 12-12066 | RFC SFJV 2002, LLC 12-12071 | RFC Construction Funding, LLC 12-12069 | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance** | $ 54 | $ 4 | $ 113 | $ 25 | $ 58 | $ 7 | $ 7 | $ 483 | $ 1,465,337 |
| **Receipts** | | | | | | | | | |
| Loan Sales/Redeliveries/Claims Proceeds | - | - | - | - | - | - | - | - | 27,043 |
| Hedge Proceeds | - | - | - | - | - | - | - | - | 0 |
| Returns on Servicer Advances | - | - | - | - | - | - | - | - | 34,493 |
| Loan and Securities Collections | 2,308 | - | - | - | 263 | - | - | - | 6,090 |
| Fee Income | - | - | - | - | - | - | - | - | 334 |
| Other Receipts, net | 1 | - | - | - | - | - | - | - | 12 |
| **Total Receipts** | 2,309 | - | - | - | 263 | - | - | - | 67,972 |
| **Disbursements**[2] | | | | | | | | | |
| Servicer Advances | - | - | - | - | - | - | - | - | (34,532) |
| Hedge Disbursements | - | - | - | - | - | - | - | - | - |
| Originations/Repurchases | - | - | - | - | - | - | - | - | - |
| Accounts Payable and Payroll | - | (1) | - | - | (2) | (1) | (1) | - | (14,861) |
| Other Disbursements | - | - | - | - | - | - | - | - | (223) |
| **Subtotal Disbursements** | - | (1) | - | - | (2) | (1) | (1) | - | (49,616) |
| Retained Professional Fees / Reorganization Costs | - | - | - | - | - | - | - | - | (19,945) |
| Debt Interest/Fees/Expenses | - | - | - | - | - | - | - | - | - |
| **Total Disbursements** | - | (1) | - | - | (2) | (1) | (1) | - | (69,561) |
| **Net Cash Flow (excl. intercompany, debt draws/paydowns)** | 2,309 | (1) | - | - | 261 | (1) | (1) | - | (1,589) |
| Intercompany | (2,308) | - | - | - | (290) | - | - | - | 0 |
| Debt Draws/(Paydowns) | - | - | - | - | - | - | - | - | - |
| **Net Cash Flow** | 1 | (1) | - | - | (28) | (1) | (1) | - | (1,589) |
| **Ending Cash Balance** | $ 56 | $ 3 | $ 113 | $ 25 | $ 30 | $ 6 | $ 6 | $ 483 | $ 1,463,748 |
| **Expenses Paid On Behalf of / (By) Other Debtor Entities** | $ - | $ - | $ - | $ - | $ (2) | $ (1) | $ - | $ - | $ - |

Note - Cash balances represent bank cash balances, and excludes cash accounts classified as restricted cash on the balance sheet
(1) Includes Residential Capital, LLC (12-12020); GMAC Mortgage, LLC (12-12032); and Residential Funding Company, LLC (12-12019)
(2) See MOR 6 for details of disbursements to affiliates
(3) Debtors not listed in MOR-1 had no cash activity, expenses or balances in the MOR reporting period
(4) Above schedule uses direct cash flow method and pertains to Debtor entities only
(5) GMACM Borrower (12-12035) and RFC Borrower, LLC (12-12068) have been deconsolidated beginning on April 1, 2013. Prior cash flows for these entities are reflected in the Consolidated Entities column.
(6) Formerly Ditech, LLC

In re  Residential Capital, LLC, et al.
     Debtor

Case No. 12-12020
Reporting Period:  November 1-30, 2013

Debtors' Cash Flow by Line Item (unaudited)[1][2][3]
May 14, 2012 - November 30, 2013
($ in thousands)

| Case Number | Consolidated Entities[1] | GMACM Borrower, LLC[7] | RFC Borrower, LLC[7] | AKA 13, LLC[3] | DOA Holding Properties, LLC | ETS of Washington, Inc. | Executive Trustee Services, LLC | GMAC Mortgage USA Corporation | GMAC Residential Holding Company, LLC | Home Connects Lending Services, LLC |
|---|---|---|---|---|---|---|---|---|---|---|
| | 12-12035 | 12-12068 | 12-12021 | 12-12022 | 12-12027 | 12-12028 | 12-12031 | 12-12033 | 12-12039 |
| **Beginning Cash Balance** | $ 470,321 | $ 599 | $ 1,909 | $ 856 | $ 11 | $ 13 | $ - | $ 500 | $ 23 | $ 5 |
| **Receipts** | | | | | | | | | | |
| Loan Sales/Reddiveries/Claims Proceeds | 2,526,764 | - | - | - | - | - | - | - | - | - |
| Hedge Proceeds | 132,571 | 29,503 | 37,203 | - | - | - | - | - | - | - |
| Returns on Servicer Advances | 6,503,025 | | | - | - | - | - | - | - | - |
| Loan and Securities Collections | 449,916 | - | - | - | - | - | - | - | - | - |
| Fee Income | 798,387 | - | - | - | - | - | - | - | - | - |
| Other Receipts, net[5] | 4,337,858 | - | 3 | - | - | - | - | - | - | - |
| **Total Receipts** | 14,748,521 | 29,503 | 37,206 | - | - | - | - | - | - | - |
| **Disbursement**[2] | | | | | | | | | | |
| Servicer Advances | (7,018,271) | - | - | - | - | - | - | - | - | - |
| Hedge Disbursements | (34,376) | - | - | - | - | - | - | - | - | - |
| Originations/Repurchases | (1,839,493) | - | - | - | - | - | - | - | - | - |
| Accounts Payable and Payroll[6] | (1,128,467) | - | - | - | - | - | - | - | (44) | - |
| Other Disbursements[8] | (431,190) | - | - | - | - | - | - | - | - | - |
| **Subtotal Disbursements** | (10,451,797) | - | - | - | - | - | - | - | (44) | - |
| Retained Professional Fees / Reorganization Costs | (310,986) | | | | | | | | | |
| Debt Interest/Fees/Expenses | (157,412) | - | - | - | - | - | - | - | - | - |
| **Total Disbursements** | (10,920,195) | - | - | - | - | - | - | - | (44) | - |
| Net Cash Flow (excl. intercompany, debt draws/paydowns) | 3,828,326 | 29,503 | 37,206 | - | - | - | - | - | (44) | - |
| Intercompany | 122,411 | (30,090) | (39,115) | - | - | (13) | - | - | 21 | (5) |
| Debt Drawn/(Paydowns)[10] | (2,958,912) | - | - | - | - | - | - | (500) | - | - |
| **Net Cash Flow** | 991,825 | (588) | (1,909) | - | - | (13) | - | (500) | (23) | (5) |
| **Ending Cash Balance** | $ 1,462,147 | $ 11 | $ 0 | $ 856 | $ 11 | $ - | $ - | $ - | $ - | $ - |
| **Expenses Paid On Behalf of / (By) Other Debtor Entities** | $ 9,928 | (322) | (47) | $ (1) | $ - | $ (107) | $ (6,334) | $ - | $ (53) | $ (73) |

Note - Cash balances represent bank cash balances, and excludes cash accounts classified as restricted cash on the balance sheet
(1) Includes Residential Capital, LLC (12-12020); GMAC Mortgage, LLC (12-12032); and Residential Funding Company, LLC (12-12019)
(2) See MOR 6 for details of disbursements to affiliates
(3) Debtors not listed in MOR-1 had no cash activity, expenses or balances in the MOR reporting period
(4) Above schedule uses direct cash flow method and pertains to Debtor entities only
(5) Includes sales proceeds of $3.9 billion
(6) Includes cure cost payments of $307.2 million
(7) GMACM Borrower (12-12035) and RFC Borrower, LLC (12-12068) have been deconsolidated beginning on April 1, 2013. Prior cash flows for these entities are reflected in the Consolidated Entities column.
(8) Includes the disbursement of $229.8 million of cash to escrow related to the foreclosure settlement with the Federal Reserve Board
(9) Formerly Ditech, LLC
(10) Includes full repayment of the Ally Senior Secured Credit Facility, Ally Line of Credit and BMMZ Repo of $1.4 billion and payments to the Junior Secured Noteholders of $1.1 billion

FORM MOR-1 (cumulative)

In re  Residential Capital, LLC, et al
Debtor

Case No. 12-12020
Reporting Period: November 1-30, 2013

Debtors' Cash Flow by Line Item (unaudited)[(3)(4)]
May 14, 2012 - November 30, 2013
($ in thousands)

| Case Number | Passive Asset Transactions LLC 12-12044 | Homecomings Financial, LLC 12-12042 | RCSFJV2004 LLC 12-12051 | Residential Consumer Services, LLC 12-12058 | Residential Funding Mortgage Exchange, LLC 12-12059 | RFC Asset Holdings II, LLC 12-12065 | RFC Asset Management, LLC 12-12066 | RFC SFJV 2002, LLC 12-12071 | RFC Construction Funding, LLC 12-12069 | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance** | $ 1,315 | $ - | $ - | $ 4 | $ 25 | $ 55 | $ 6 | $ 6 | $ 483 | $ 476,131 |
| **Receipts** | | | | | | | | | | |
| Loan Sales/Redeliveries/Claims Proceeds | - | - | - | - | - | - | - | - | - | 2,526,764 |
| Hedge Proceeds | - | - | - | - | - | - | - | - | - | 132,571 |
| Returns on Service Advances | - | - | - | - | - | - | - | - | - | 6,569,731 |
| Loan and Securities Collections | 32,151 | - | - | - | - | 17,468 | - | - | - | 499,535 |
| Fee Income | - | - | - | - | - | - | - | - | - | 798,387 |
| Other Receipts, net[(5)] | 62 | - | - | 2,005 | - | - | - | - | - | 4,339,928 |
| **Total Receipts** | 32,213 | - | - | 2,005 | - | 17,468 | - | - | - | 14,866,916 |
| **Disbursements**[(2)] | | | | | | | | | | |
| Servicer Advances | - | - | - | - | - | - | - | - | - | (7,018,271) |
| Hedge Disbursements | - | - | - | - | - | - | - | - | - | (34,376) |
| Originations/Repurchases | - | - | - | - | - | - | - | - | - | (1,839,493) |
| Accounts Payable and Payroll[(8)] | - | - | (28) | - | - | (37) | (22) | (22) | - | (1,128,620) |
| Other Disbursements[(6)] | (36) | - | (1) | - | - | (2) | (1) | (1) | - | (431,230) |
| **Subtotal Disbursements** | (36) | - | (28) | - | - | (39) | (23) | (23) | - | (10,451,989) |
| Retained Professional Fees / Reorganization Costs | - | - | - | - | - | - | - | - | - | (310,986) |
| Debt Interest/Fees/Expenses | - | - | - | - | - | - | - | - | - | (157,412) |
| **Total Disbursements** | (36) | - | (28) | - | - | (39) | (23) | (23) | - | (10,920,387) |
| Net Cash Flow (excl. intercompany, debt draws/paydowns) | 32,177 | - | (28) | 2,005 | - | 17,430 | (23) | (23) | - | 3,946,529 |
| Intercompany | (33,436) | - | 28 | (1,892) | - | (17,455) | 23 | 23 | - | (0) |
| Debt Draws/(Paydowns)[(10)] | - | - | - | - | - | - | - | - | - | (2,958,912) |
| Net Cash Flow | (1,259) | - | (0) | 113 | - | (26) | 0 | 0 | - | 987,617 |
| **Ending Cash Balance** | $ 56 | $ - | $ - | $ 3 | $ 25 | $ 30 | $ 6 | $ 6 | $ 483 | $ 1,463,748 |
| Expenses Paid On Behalf of / (by) Other Debtor Entities | $ - | $ (2) | $ (120) | $ (24) | $ (1,950) | $ - | $ (848) | $ (23) | $ (24) | $ - |

Note - Cash balances represent bank cash balances, and excludes cash accounts classified as restricted cash on the balance sheet
(1) Includes Residential Capital, LLC (12-12020); GMAC Mortgage, LLC (12-12032); and Residential Funding Company, LLC (12-12019)
(2) See MOR 6 for details of disbursements to affiliates
(3) Debtors not listed in MOR-1 had no cash activity, overruns or balances in the MOR reporting period
(4) Above schedule uses direct cash flow method and pertains to Debtor entities only
(5) Includes sales proceeds of $3,934.5M
(6) Includes cure cost payments of $307.2M
(7) GMACM Borrower (12-12035) and RFC Borrower, LLC (12-12068) have been deconsolidated beginning on April 1, 2013. Prior cash flows for these entities are reflected in the Consolidated Entities column.
(8) Includes the disbursement of $229.8 million of cash to escrow related to the foreclosure settlement with the Federal Reserve Board
(9) Formerly Ditech, LLC
(10) Includes full repayment of the Ally Senior Secured Credit Facility, Ally Line of Credit and BMMZ Repo of $1.4 billion and payments to the Junior Secured Noteholders of $1.1 billion

In re Residential Capital, LLC, et al.                                      Case No. 12-12020
      Debtor                                                  Reporting Period: November 1-30, 2013

**US Trustee Disbursement / Expense Summary**
November 2013 (USD)

| Debtor | Case Number | Tax ID | November 2013 Monthy Disbursements | Expenses Paid On Behalf of / (By) Other Debtor Entities for November 2013 | Allocated November 2013 Monthly Disbursements |
|---|---|---|---|---|---|
| Residential Funding Company, LLC[1] | 12-12019 | 23-1694840 | N/A | N/A | N/A |
| Residential Capital, LLC[1] | 12-12020 | 45-5064887 | N/A | N/A | N/A |
| GMAC Mortgage, LLC[1] | 12-12032 | 20-1770738 | N/A | N/A | N/A |
| **Consolidated Subtotal- 3 Debtor Entities** | | | $ (69,553,520) | $ 7,854 | $ (69,545,666) |

| Debtor | Case Number | Tax ID | November 2013 Monthy Disbursements | Expenses Paid On Behalf of / (By) Other Debtor Entities for November 2013 | Allocated November 2013 Monthly Disbursements |
|---|---|---|---|---|---|
| AKA 13, LLC | 12-12021 | 23-2887228 | $ - | $ - | $ - |
| DOA Holding Properties, LLC | 12-12022 | 26-1424257 | - | - | - |
| DOA Properties IX (Lots-Other), LLC | 12-12023 | 26-2783274 | - | - | - |
| EPRE LLC | 12-12024 | 26-2747974 | - | - | - |
| Equity Investments I, LLC | 12-12025 | 02-0632797 | - | - | - |
| ETS of Virginia, Inc. | 12-12026 | 26-4051445 | - | - | - |
| ETS of Washington, Inc. | 12-12027 | 45-2910665 | - | - | - |
| Executive Trustee Services, LLC | 12-12028 | 23-2778943 | - | - | - |
| GMAC – RFC Holding Company, LLC | 12-12029 | 23-2593763 | - | - | - |
| GMAC Model Home Finance I, LLC | 12-12030 | 26-2748469 | - | - | - |
| GMAC Mortgage USA Corporation | 12-12031 | 20-4796930 | - | - | - |
| GMAC Residential Holding Company, LLC | 12-12033 | 91-1902190 | (3,024) | (3,024) | (6,048) |
| GMACRH Settlement Service, LLC | 12-12034 | 23-3036156 | - | - | - |
| GMACM Borrower LLC | 12-12035 | 93-0891336 | - | (425) | (425) |
| GMACM REO LLC | 12-12036 | 45-5222043 | - | - | - |
| GMACR Mortgage Products, LLC | 12-12037 | 03-0536369 | - | - | - |
| HFN REO SUB II, LLC | 12-12038 | None | - | - | - |
| Home Connects Lending Services, LLC | 12-12039 | 25-1849412 | - | - | - |
| Homecomings Financial Real Estate Holdings, LLC | 12-12040 | 26-2736869 | - | - | - |
| Homecomings Financial, LLC | 12-12042 | 51-0369458 | - | - | - |
| Ladue Associates, Inc. | 12-12043 | 23-1893048 | - | - | - |
| Passive Asset Transactions, LLC | 12-12044 | 51-0404130 | - | - | - |
| PATI A, LLC | 12-12045 | 26-3722729 | - | - | - |
| PATI B, LLC | 12-12046 | 26-3722937 | - | - | - |
| PATI Real Estate Holdings, LLC | 12-12047 | 27-0515201 | - | - | - |
| RAHI A, LLC | 12-12048 | 26-3723321 | - | - | - |
| RAHI B, LLC | 12-12049 | 26-3723553 | - | - | - |
| RAHI Real Estate Holdings, LLC | 12-12050 | 27-0515287 | - | - | - |
| RCSFJV2004, LLC | 12-12051 | 20-3802772 | (800) | (800) | (1,600) |
| Residential Accredit Loans, Inc. | 12-12052 | 51-0368240 | - | - | - |
| Residential Asset Mortgage Products, Inc. | 12-12053 | 41-1955181 | - | - | - |
| Residential Asset Securities Corporation | 12-12054 | 51-0362653 | - | - | - |
| Residential Consumer Services of Alabama, LLC | 12-12055 | 63-1105449 | - | - | - |
| Residential Consumer Services of Ohio, LLC | 12-12056 | 34-1754796 | - | - | - |
| Residential Consumer Services of Texas, LLC | 12-12057 | 75-2510515 | - | - | - |
| Residential Consumer Services, LLC | 12-12058 | 20-4812167 | - | - | - |
| Residential Funding Mortgage Exchange, LLC | 12-12059 | 41-1674247 | - | - | - |
| Residential Funding Mortgage Securities I, Inc. | 12-12060 | 75-2006294 | - | - | - |
| Residential Funding Mortgage Securities II, Inc. | 12-12061 | 41-1808858 | - | - | - |
| Residential Funding Real Estate Holdings, LLC | 12-12062 | 26-2736505 | - | - | - |
| Residential Mortgage Real Estate Holdings, LLC | 12-12063 | 26-2737180 | - | - | - |
| RFC – GSAP Servicer Advance, LLC | 12-12064 | 26-1960289 | - | - | - |
| RFC Asset Holdings II, LLC | 12-12065 | 41-1984034 | (1,849) | (1,913) | (3,762) |
| RFC Asset Management, LLC | 12-12066 | 06-1664678 | (770) | (846) | (1,616) |
| RFC Borrower LLC | 12-12068 | 45-5065558 | - | - | - |
| RFC Construction Funding, LLC | 12-12069 | 41-1925730 | - | - | - |
| RFC REO LLC | 12-12070 | 45-5222407 | - | - | - |
| RFC SFJV-2002, LLC | 12-12071 | 06-1664670 | (770) | (846) | (1,616) |
| **Subtotal - 46 Other Debtor Entities** | | | $ (7,213) | $ (7,854) | $ (15,067) |

| | | November 2013 Monthy Disbursements | Expenses Paid On Behalf of / (By) Other Debtor Entities for November 2013 | Allocated November 2013 Monthly Disbursements |
|---|---|---|---|---|
| **Total Amounts for All Debtor Entities** | | $ (69,560,733) | $ - | $ (69,560,733) |

| Notes |
|---|
| [1] Disbursements of Residential Capital, LLC; GMAC Mortgage, LLC; and Residential Funding Company, LLC were consolidated due to the difficulty of separating each individual entity. |

**CONTINUATION SHEET FOR MOR-1**

Re: Residential Capital, LLC, et al.
SDNY. Bankr. No. 12-12020

**Debtors' Statements with respect to Bank Account Reconciliations and Copies of Bank Statements**

Bank Account Reconciliations

The Debtors affirm that reconciliations for all open and active non-custodial accounts are prepared and maintained by the Debtors. Bank account reconciliations are not attached to this monthly operating report, however, if the U.S. Trustee requests copies, the Debtors will provide all reconciliations as soon as practical. Accounts are reconciled on a monthly basis. The Debtors maintain approximately 100 non-custodial accounts, attaching bank reconciliations would be administratively burdensome.

Bank Statements

The Debtors affirm that bank statements for all open and active non-custodial accounts are maintained by the Debtors.

Copies of bank statements are not attached to this monthly operating report, however, if the U.S. Trustee requests copies, the Debtors will provide them as soon as practical. The Debtors maintain approximately 100 non-custodial accounts, attaching bank statements would be administratively burdensome.

In re Residential Capital, LLC, et al.
 Debtor

Case No. 12-12020
Reporting Period: November 1-30, 2013

**Condensed Consolidated Statement of Income (unaudited)**[(A)]
Debtor-in-possession
*($ in thousands)*

|  | 11/01/2013 - 11/30/2013 | 05/14/2012 - 11/30/2013 |
|---|---:|---:|
| **Revenue** | | |
| Interest income | $      5,260 | $      304,730 |
| Interest expense | 5,230 | 223,135 |
| Net financing revenue | 30 | 81,595 |
| **Other revenue** | | |
| Servicing fees | 266 | 551,404 |
| Servicing asset valuation and hedge activities, net | (177) | (299,482) |
| Total servicing income, net | 89 | 251,922 |
| Gain on mortgage loans, net | 41 | 97,799 |
| (Loss) gain on foreclosed real estate | (829) | 6,264 |
| Other revenue, net | 1,631 | 184,274 |
| Total other revenue | 932 | 540,259 |
| **Total net revenue** | 962 | 621,854 |
| **Provision for loan losses** | (51) | (1,477) |
| **Noninterest expense** | | |
| Representation and warranty expense, net | - | 31,222 |
| Mortgage fines and penalties | - | 213,956 |
| Compensation and benefits | 1,408 | 408,899 |
| Other noninterest expense, net | 12,828 | 859,383 |
| Total noninterest expense | 14,236 | 1,513,460 |
| **Loss from continuing operations before reorganization items and income taxes** | (13,223) | (890,129) |
| **Reorganization items** | | |
| Professional fees | 25,362 | 477,602 |
| Compensation and benefits | 634 | 22,390 |
| Debt issuance and facility commitment fees | - | 62,753 |
| Rejected contracts | - | 2,628 |
| Gain on asset sales | (58) | (76,202) |
| Total reorganization items | 25,938 | 489,171 |
| **Loss from continuing operations before income taxes** | (39,161) | (1,379,300) |
| Income tax expense (benefit) | 627 | (15,368) |
| **Net loss from continuing operations** | (39,788) | (1,363,932) |
| Loss from discontinued operations, net of tax | - | (127) |
| **Net loss** | $      (39,788) | $      (1,364,059) |

| | | |
|---|---:|---:|
| **(A) Non-debtor entity net loss** | $      (148) | $      (5,416) |

Non-debtor entity net loss is before the elimination of transactions with debtor entities.

The accompanying financial statements have been prepared in accordance with guidelines applicable in a Chapter 11 reorganization. These financial statements are subject to change as a result of determinations of the bankruptcy court.

Certain securitizations are not presented on a GAAP consolidated basis due to operational complexity.

In re Residential Capital, LLC, et al.

Debtor

Case No. 12-12020

Reporting Period: November 1-30, 2013

**Condensed Consolidated Balance Sheet (unaudited)[(A)]**

Debtor-in-possession

($ in thousands)

| | | November 30, 2013 | | October 31, 2013 |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash and cash equivalents | $ | 1,526,455 | $ | 1,525,680 |
| Mortgage loans held-for-sale | | 182,249 | | 183,155 |
| Finance receivables and loans, net | | | | |
| Consumer | | 516,285 | | 516,185 |
| Allowance for loan losses | | (5,220) | | (5,268) |
| Total finance receivables and loans, net | | 511,065 | | 510,917 |
| Mortgage servicing rights | | 2,043 | | 2,220 |
| Accounts receivable, net | | 609,882 | | 645,026 |
| Other assets | | 194,265 | | 200,217 |
| Total assets | $ | 3,025,959 | $ | 3,067,215 |

| | | | | | |
|---|---|---|---|---|---|
| **Liabilities** | | | | | |
| **Liabilities not subject to compromise:** | | | | | |
| Borrowings | | | | | |
| Collateralized borrowings in securitization trusts | $ | 404,227 | $ | 402,209 | |
| Other borrowings | | 70,348 | | 73,886 | |
| Total borrowings | | 474,575 | | 476,095 | |
| Other liabilities | | 322,416 | | 325,412 | |
| Total liabilities not subject to compromise | | 796,991 | | 801,507 | |
| **Liabilities subject to compromise** | | 3,127,177 | | 3,123,836 | (B) |
| Total liabilities | | 3,924,168 | | 3,925,343 | |
| **Equity** | | | | | |
| Member's interest | | 11,755,962 | | 11,755,962 | |
| Accumulated deficit | | (12,612,208) | | (12,572,420) | |
| Accumulated other comprehensive loss | | (41,963) | | (41,670) | |
| Total equity | | (898,209) | | (858,128) | |
| Total liabilities and equity | $ | 3,025,959 | $ | 3,067,215 | |

| **(A) Non-Debtor Entity Balances** | | | | |
|---|---|---|---|---|
| Total assets | $ | 263,377 | $ | 271,556 |
| Total liabilities | $ | 141,726 | $ | 149,441 |

Non-debtor entity balances are before the elimination of balances and transactions with debtor entities.

| **(B) Liabilities subject to compromise consist of the following:** | | | | |
|---|---|---|---|---|
| Junior secured notes | $ | 1,228,292 | $ | 1,228,292 |
| Senior unsecured notes | | 672,480 | | 672,480 |
| Foreign unsecured notes | | 306,021 | | 302,860 |
| Interest payable | | 149,757 | | 149,596 |
| Liability for representation and warranty obligations | | 632,433 | | 632,433 |
| Reserve for legal proceedings | | 67,017 | | 67,019 |
| Accounts payable | | 27,118 | | 27,118 |
| Other | | 44,059 | | 44,038 |
| Total liabilities subject to compromise | $ | 3,127,177 | $ | 3,123,836 |

The accompanying financial statements have been prepared in accordance with guidelines applicable in a Chapter 11 reorganization. These financial statements are subject to change as a result of determinations of the bankruptcy court.

Certain securitizations are not presented on a GAAP consolidated basis due to operational complexity.

Assets and liabilities removed from the Section 363 Asset Sales have been reclassified from assets of operations held for sale to their respective asset and liability classification due to operational complexity.

| In re Residential Capital, LLC, et al. | Case No. 12-12020 |
|---|---|
| Debtor | Reporting Period: November 1-30, 2013 |

## SUMMARY OF UNPAID POST-PETITION DEBTS

Attach aged listing of accounts payable.

|  | Number of Days Past Due | | | | | |
|---|---|---|---|---|---|---|
|  | Current | 1-30 | 31-60 | 61-90 | Over 91 | Total |
| Accounts Payable[1],[2] | $      42,826 | $      124,383 | $      22,452 | $      - | $      94,245 | $      283,906 |
| Total Post-petition Debts[3],[4] | $      42,826 | $      124,383 | $      22,452 | $      - | $      94,245 | $      283,906 |

[1]Aging is based on due date, terms are generally 30-60 days.

[2]The Debtors do not consider post-petition invoices as past due or delinquent if such invoices are subject to dispute, or further review and/or reconciliation with the vendor.

[3]The aging of accounts payable is only done for those invoices that have been vouchered in the Debtors' accounts payable system. The incurred and unpaid amounts on MOR-6 are vouchered when paid and are not included in the aging.

[4]Employee wages for the Debtors are paid by Ally. The Debtors reimburse Ally for their share of the employee wages. The Debtors sought and received Bankruptcy Court approval to continue this practice post-petition. The Debtors are current with their reimbursements to Ally.

**Explain how and when the Debtor intends to pay any past due post-petition debts.**

Please refer to the Global Footnotes E.6: Notes to Debtor Questionnaire (MOR-7): Question 13 Notes

## STATUS OF POST-PETITION TAXES

**Debtors' Statement with Respect to Status of Post-Petition Taxes**

Post-petition taxes for the Debtors, which are not subject to dispute or reconciliation, and are authorized to be paid under the relief granted by the Bankruptcy Court are current. There are no material tax disputes or reconciliations. Post-petition tax information is not attached to this monthly operating report, however if the U.S. Trustee requests copies, the Debtors will provide a status update on post-petition taxes as soon as practical.

The Debtors are parties to Tax Sharing Agreements with Ally, which provide for the filing of consolidated returns by Ally for Federal and certain state income taxes. Prior to the filing of bankruptcy, the Debtors would reimburse Ally for the Debtors' portion of the tax liability, if any. As a result of the filing for Chapter 11, the Debtors do not have authority to pay either pre or post-petition tax obligations under these Tax Sharing Agreements.

FORM MOR-4

In re  Residential, LLC, et al.
    Debtor

Case No. 12-12020
Reporting Period: November 1-30, 2013

## ACCOUNTS RECEIVABLE RECONCILIATION

| Accounts Receivable Reconciliation | Amount |
|---|---|
| Total Accounts Receivable Advances, net of reserves | $ 178,556,601 |
| Plus: Accounts Receivable Claims/Fees, net of reserves | 405,186,131 |
| **Total Accounts Receivable at the end of the reporting period** | $ 583,742,732 |

| Accounts Receivable | Total Advances[1] | Service Fees | Gov't Claims[2] | Interest HFS | Total |
|---|---|---|---|---|---|
| Primary | $ 99,663,547 | $ - | $ - | $ - | $ 99,663,547 |
| Master | 2,750,948 | - | - | - | 2,750,948 |
| FHLMC | - | - | - | - | - |
| FNMA | - | - | - | - | - |
| GNMA | - | - | 433,184,218 | - | 433,184,218 |
| Third Party Investors | - | - | - | - | - |
| Subserviced | - | 898 | - | - | 898 |
| ResCap HFS | 77,625,995 | - | - | 3,685,028 | 81,311,023 |
| Other | - | - | - | - | - |
| **Toal Accounts Receivable** | $ 180,040,490 | $ 898 | $ 433,184,218 | $ 3,685,028 | $ 616,910,634 |
| Less: Reserve for Bad Debt | 1,483,889 | - | 31,684,013 | - | 33,167,902 |
| **Net Accounts Receivable** | $ 178,556,601 | $ 898 | $ 401,500,205 | $ 3,685,028 | $ 583,742,732 |

[1] Primary & Master represent P&I only

[2] Government claims include accrued interest

Note: Due to the nature of the Debtors' businesses, an aging of accounts receivable is not indicative of collectability and therefore an aging of accounts receivables is not maintained. After the Section 363 Asset Sales, the majority of the accounts receivable are comprised of loan insurance guarantee receivables. These receivables arise as mortgage loans are acquired from off-balance sheet securitizations guaranteed by GNMA, as a result of borrower default or contractual delinquency triggers. Mortgage loans are reclassified to receivable when the loan is deemed impaired. An insurance claim is filed with the appropriate government guarantor agency (FHA or VA) for eligible mortgage loan principal, interest and foreclosure related expenses. The next largest component of the accounts receivable are comprised of servicer advances made by the Debtors to the investors in mortgage loans serviced by the Debtors. Such advances are made to maintain the scheduled cash flows in the event of borrower default or delinquency and have a priority claim to the cash flows in the event of foreclosure or liquidation.

In re Residential Capital, LLC, et al.
Debtor

Case No. 12-12020
Reporting Period: November 1-30, 2013

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

Of the total disbursements shown on the Cash Receipts and Disbursements Report (MOR-1) list the amount paid to insiders (as defined in Section 101(31) (A)-(F) of the U.S. Bankruptcy Code) and to professionals. For payments to insiders, identify the type of compensation paid (e.g. Salary, Bonus, Commissions, Insurance, Housing Allowance, Travel, Car Allowance, Etc.). Attach additional sheets if necessary.

| INSIDERS | | | |
|---|---|---|---|
| NAME | TYPE OF PAYMENT | AMOUNT PAID DURING MONTH | TOTAL PAID TO DATE |
| Ally Bank | Servicing/Origination Related | $ - | $ 592,936,607 |
| Ally Bank | Loan Purchases | - | 216,514,257 |
| Ally Bank | DOJ Settlement | - | 74,934,194 |
| Ally Commercial Finance LLC | Servicing Related | - | 4,242,203 |
| Ally Financial Inc. | Contract Claim | 231,377 | 231,377 |
| Ally Financial Inc. | Payments for Shared Service | 1,630,395 | 115,340,177 |
| Ally Financial Inc. | Payroll | 1,197,831 | 310,533,560 |
| Ally Financial Inc. | Property Purchase | - | 6,000,000 |
| Ally Financial Inc. | Payoff of Ally LOC DIP | - | 189,622,360 |
| Ally Financial Inc. | Interest on Affiliated Borrowings | - | 43,924,082 |
| Ally Financial Inc. | Payoff of Ally Facilities | - | 1,127,127,553 |
| Ally Investment Management, LLC | Derivatives Collateral, net | - | 33,154,852 |
| Debtors' Officers & Directors, paid via Ally | Payroll | 769,708 | 34,838,392 |
| Independent Directors (Board of Directors) | Payroll, Travel | 540,058 | 3,699,595 |
| TOTAL PAYMENTS TO INSIDERS | | $ 4,369,369 | $ 2,753,099,209 |

Note: Certain of the affiliate transactions with Ally Bank are pass-through cash flows that the Debtor receives into its account and remits to Ally Bank the same day. Due to the requirements of the loan servicing system, cash is received into Debtor accounts on behalf of Ally Bank; these funds are then remitted from the Debtor accounts to Ally Bank on a daily basis in accordance with Regulation W.

| PROFESSIONALS | | | | | |
|---|---|---|---|---|---|
| NAME | DATE OF COURT ORDER AUTHORIZING PAYMENT[3][6] | AMOUNT APPROVED DURING MONTH[5] | AMOUNT PAID DURING MONTH | TOTAL PAID TO DATE[6] | TOTAL INCURRED & UNPAID[6] |
| AlixPartners LLP | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | $ 577,152 | $ 577,152 | $ 11,864,684 | $ 866,955 |
| Analytic Focus LLC | 7/17/2012; 4/23/2013; 9/23/2013 | - | - | 591,782 | 1,414 |
| Arthur J. Gonzalez, Examiner | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | - | - | 527,265 | 41,348 |
| Bradley Arant Boult Cummings LLP | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | - | - | 9,683,222 | 1,718,819 |
| Bryan Cave LLP | 7/17/2012 | - | - | 227,456 | 77,289 |
| Carpenter Lipps & Leland LLP | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | - | - | 6,370,575 | 1,646,584 |
| Centerview Partners LLC | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | 241,018 | 481,524 | 4,394,614 | 720,989 |
| Coherent Economics LLC | 7/17/2012; 4/23/2013; 9/23/2013 | - | - | 1,126,690 | 23,872 |
| Chadbourne & Parke LLP | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | 93,409 | 93,409 | 46,877,655 | 2,931,139 |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | - | - | 2,548,870 | 3,323,377 |
| Deloitte & Touche LLP[1] | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | - | - | 5,176,067 | 323,554 |
| Dorsey & Whitney LLP | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | - | - | 622,441 | 97,151 |
| Dykema Gossett PLLC | 7/17/2012; 12/28/2012; 9/23/2013 | - | - | 231,035 | 4,061 |
| Epiq Bankruptcy Solutions, LLC | 7/17/2012; 4/23/2013; 9/23/2013 | 4,347 | 4,347 | 360,648 | 61,115 |
| Ernst & Young LLP | 7/17/2012; 9/23/2013 | 440,928 | 440,928 | 673,373 | 447,807 |
| Fortace, LLC | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | - | - | 2,288,339 | 47,719 |
| FTI Consulting, Inc. | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | 860,033 | - | 20,062,927 | 4,129,058 |
| Hudson Cook, LLP | 7/17/2012; 5/17/2013 | - | - | 2,108,927 | 206,361 |
| J.F. "Chip" Morrow | 7/17/2012; 4/23/2013; 9/23/2013 | - | - | 232,405 | 12,244 |
| KPMG LLP | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | - | - | 1,591,833 | 12,462 |
| Kramer Levin Naftalis & Frankel LLP | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | - | 2,058,991 | 45,872,460 | 8,176,909 |
| Kurtzman Carson Consultants LLC[2] | 5/16/2012 | 3,878,887 | 3,878,887 | 20,865,286 | - |
| Kurtzman Carson Consultants LLC | 7/17/2012; 12/28/2012; 9/23/2013 | - | - | 94,074 | - |
| Leonard, Street and Deinard Professional Association | 7/17/2012; 9/23/2013 | - | - | 93,020 | 11,190 |
| Locke Lord LLP | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | - | - | 838,028 | 260,567 |
| Mercer (US) Inc. | 7/17/2012; 4/23/2013; 9/23/2013 | - | - | 290,892 | 19,592 |
| Mesirow Financial Consulting, LLC | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | 146,456 | 2,339,889 | 36,996,859 | 2,883,415 |
| Moelis & Company LLC | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | 182,123 | 182,123 | 7,063,266 | 504,840 |
| Morrison & Cohen LLP | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | 205,152 | 205,152 | 1,973,217 | 926,019 |
| Morrison & Foerster LLP | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | 8,823,192 | 8,823,192 | 64,115,346 | 20,943,434 |
| Orrick, Herrington & Sutcliffe LLP | 7/17/2012; 9/23/2013 | - | - | 1,394,104 | 177,961 |
| Pachulski Stang Ziehl Jones | 7/17/2012; 4/23/2013; 9/23/2013 | 710,889 | 710,889 | 3,263,561 | 668,842 |
| Pepper Hamilton LLP | 7/17/2012; 6/18/2013; 9/23/2013 | - | - | 4,809,557 | 616,883 |
| Perkins Coie LLP | 7/17/2013; 9/23/2013 | - | - | - | 1,420,359 |
| Prince Lobel Tye LLP | 7/17/2012; 12/28/2012; 9/23/2013 | - | - | 187,968 | 5,248 |
| Reed Smith, LLP | 7/17/2012; 12/28/2012; 9/23/2013 | - | - | 164,373 | 2,932 |
| Rubenstein Associates, Inc. | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | - | - | 47,966 | 232 |
| San Marino Business Partners LLC | 7/17/2012; 4/23/2013; 9/23/2013 | - | - | 241,689 | 5,873 |
| Severson & Werson, P.C. | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | - | - | 2,500,214 | 442,883 |
| SilvermanAcampora LLP | 7/17/2012; 4/23/2013; 9/23/2013 | - | 121,135 | 795,361 | 246,834 |
| Towers Watson | 7/17/2012; 12/28/2012; 4/23/2013; 9/23/2013 | - | - | 184,485 | 731 |
| Troutman Sanders, LLP | 7/17/2012; 12/28/2012; 9/23/2013 | - | - | 552,117 | 303,626 |
| Wilmer Cutler Pickering Hale & Dorr LLP | 7/17/2012; 9/23/2013 | - | 26,961 | 661,440 | 132,277 |
| Wolf Haldenstein Adler Freeman & Hers LLP | 7/17/2012; 4/23/2013 | - | - | 77,322 | 7,347 |
| Zeichner Ellman & Krause LLP | 7/17/2012; 4/23/2013 | - | - | 342,888 | 181,087 |
| TOTAL PAYMENTS TO PROFESSIONALS | | $ 16,163,584 | $ 19,944,577 | $ 310,986,299 | $ 54,632,395 |

* INCLUDE ALL FEES INCURRED, BOTH APPROVED AND UNAPPROVED

[1] A portion of the monthly invoices will be reimbursed by Ocwen Financial, Walter Investment Management and Nationstar Mortgage for services performed at their request.

[2] The Debtors are authorized to compensate the Claims and Noticing Agent in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by the Claims and Noticing Agent. The payments only include invoiced fees, no accruals are listed.

[3] Monthly fee statements do not require specific court approval, but are paid in accordance with the Interim Compensation Order approved by the Bankruptcy Court on July 17, 2012.

[4] The Bankruptcy Court approved the first, second and third interim fee applications for retained professionals on December 28, 2012, April 23, 2013 and September 23, 2013, respectively. Some professionals were also paid amounts in accordance with the Interim Compensation Order approved by the Bankruptcy Court on July 17, 2012.

[5] With the exception of Kurtzman Carson Consultants LLC's fees and expenses related to their role as Claims and Noticing Agent, the amounts approved for the monthly fee statements are 80% of fees and 100% of expenses.

[6] Includes a $1.1 million adjustment to historical amounts reported in error.

| POST-PETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS | | | |
|---|---|---|---|
| NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENT DUE | AMOUNT PAID DURING MONTH | TOTAL UNPAID POST-PETITION |
| TOTAL AMOUNTS | $ - | $ - | $ - |

In re Residential Capital, LLC, et al.
  Debtor

Case No. 12-12020
Reporting Period: November 1-30, 2013

| | DEBTOR QUESTIONNAIRE | | |
|---|---|---|---|
| | **Must be completed each month. If the answer to any of the questions is "Yes", provide a detailed explanation of each item. Attach additional sheets if necessary.** | Yes | No |
| 1 | Have any assets been sold or transferred outside the normal course of business this reporting period? | | X |
| 2 | Have any funds been disbursed from any account other than a debtor in possession account this reporting period? | X | |
| 3 | Is the Debtor delinquent in the timely filing of any post-petition tax returns? | | X |
| 4 | Are workers compensation, general liability or other necessary insurance coverages expired or cancelled, or has the debtor received notice of expiration or cancellation of such policies? | | X |
| 5 | Is the Debtor delinquent in paying any insurance premium payment? | | X |
| 6 | Have any payments been made on prepetition liabilities this reporting period? | | X |
| 7 | Are any post-petition receivables (accounts, notes or loans) due from related parties? | X | |
| 8 | Are any post-petition payroll taxes past due? | | X |
| 9 | Are any post-petition State or Federal income taxes past due? | | X |
| 10 | Are any post-petition real estate taxes past due? | | X |
| 11 | Are any other post-petition taxes past due? | | X |
| 12 | Have any prepetition taxes been paid during this reporting period? | X | |
| 13 | Are any amounts owed to post-petition creditors delinquent? | X | |
| 14 | Are any wage payments past due? | | X |
| 15 | Have any post-petition loans been received by the Debtor from any party? | | X |
| 16 | Is the Debtor delinquent in paying any U.S. Trustee fees? | | X |
| 17 | Is the Debtor delinquent with any court ordered payments to attorneys or other professionals? | X | |
| 18 | Have the owners or shareholders received any compensation outside of the normal course of business? | | X |

*See Global Notes Section E. Notes to Debtor Questionnaire (MOR-7) for form explanations

FORM MOR-7