# Exhibit 1-A

Claim #338  Date Filed: 7/26/2012

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>GMAC Mortgage, LLC<br>1100 Virginia Drive<br>Fort Washington, PA 19034 | Case Number:<br><br>12-12032-mg | |
|---|---|---|

RECEIVED

JUL 2 6 2012

KURTZMANCARSONCONSULTANTS

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Jason and Jennifer Schermerhorn

**COURT USE ONLY**

Name and address where notices should be sent:
Kathleen A. Cashman-Kramer
Pyle Sims Duncan & Stevenson, APC
401 B Street, Suite 1500, San Diego, CA 92101

Telephone number: (619) 687-5200    email: kcashman@psdslaw.com

❏ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
    (*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):

■ Date Stamped Copy Returned
❏ No self addressed stamped envelope
❏ No copy to return

Telephone number:         email:

❏ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**    $                   582,662.25

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

❏Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**    See Attachment to this Proof of Claim
    (See instruction #2)

| **3. Last four digits of any number** by which creditor identifies debtor: | **3a. Debtor may have scheduled account as:**<br><br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ❏Real Estate  ■Motor Vehicle  ❏Other
Describe:

Value of Property: $_____

Annual Interest Rate_____% ❏Fixed  or  ❏Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

                              $_____

Basis for perfection: _____

Amount of Secured Claim:    $_____

Amount Unsecured:    $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).  If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

❏ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❏ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❏ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

❏ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❏ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❏ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)



121203212072600000000000001

B 10 (Official Form 10) (12/11)                                                                                            2

---

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

RECEIVED
JUL 2 6 2012
KURTZMANCARSONCONSULTANTS

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.    ☑ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
                        (Attach copy of power of attorney, if any.)     or their authorized agent.     (See Bankruptcy Rule 3005.)
                                                                      (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Kathleen A. Cashman-Kramer
Title:  Attorney for Creditors
Company:  Pyle Sims Duncan & Stevenson        /s/ Kathleen A. Cashman-Kramer          07/24/2012
Address and telephone number (if different from notice address above):        (Signature)                    (Date)

Telephone number:                    email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

# ──── PYLE SIMS ────
# DUNCAN & STEVENSON

## A PROFESSIONAL CORPORATION

401 "B" STREET, SUITE 1500
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 687-5200
FACSIMILE (619) 687-5210

KATHLEEN CASHMAN-KRAMER
DIRECT LINE (619) 699-5295

July 25, 2012

*Via Federal Express Overnight*

Kurtzman Carson Consultants
2335 Alaska Avenue
El Segundo, California 90245

      Re:   <u>Executive Trustee Service, LLC</u>, Case No. 12-12028mg
           <u>GMAC Mortgage, LLC</u>, Case No. 12-12032-mg
           *Jointly Administered, 12-12020-mg Residential Capital, LLC, Ch. 11, Filed 05/14/12*
           Our File No. 08966.010

Dear Sirs:

Enclosed please find two Proofs of Claim, one in regard to Executive Trustee Service, LLC, 12-12028-mg and one in regard to GMAC Mortgage, LLC, 12-12032, two copies to conform and return, and two self-addressed stamped envelopes.

Please process this filing and return our copies in the envelopes provided.

If you have any questions, please do not hesitate to contact our office directly.

Sincerely,

PYLE SIMS DUNCAN & STEVENSON
A Professional Corporation

Theresa A. Moser
Legal Assistant to Kathleen A. Cashman-Kramer

:tam
Enclosures

**Attachment to Proof of Claim**
**In re GMAC Mortgage LLC, Chapter 11 Case No.    12-12032-mg**
**Claimants: Jason S. And Jennifer M. Schermerhorn**

      JASON and JENNIFER SCHERMERHORN (collectively the "Schermerhorns"), by their attorneys of record, hereby state the following in support of their proof of claim in this Chapter 11 case.

      The Schermerhorns are prevailing parties as set forth in that judgment entered in a case that was tried in the Superior Court for the State of California, County of Riverside, on July 8, 11, 12, 13, 14 and 15, 2011, entitled GMAC Mortgage LLC vs. Tozier, et al. , case number RIC 541193 (the "State Court Action"). The State Court Action had been commenced by GMAC Mortgage, LLC, fka GMAC Mortgage Corporation ("GMAC"), and Executive Trustee Services, LLC, fka Executive Trustee Services, Inc. ("ETS") (hereinafter "Plaintiffs" or "Debtors") against the Schermerhorns and several other defendants on November 30, 2009 for declaratory relief, cancellation of instruments and reformation of full reconveyance. Specifically, the Schermerhorns' involvement in this litigation arises out of their purchase of a single family dwelling located at 33914 Tuscan Creek Way, Temecula, CA 92592 ("Property"), from seller and co-Defendant Bank of America. (Statement of Decision, Undisputed Facts, pp. 7-8, ¶¶28-33.) GMAC sued to correct the public records and establish that the subject real property remained encumbered by a first deed of trust in favor of California Empire Financial Group, Inc. (Instrument No. 2005-0261680) ("First Deed of Trust"), despite Plaintiff's subsequent recordation of a Reconveyance of a second deed of trust (Instrument No. 2005-0261680) (Trial Exhibit 2) which (according to the Plaintiffs) erroneously included the Instrument number of the first deed of trust. Trial Exhibit 1.

      As part of GMAC's claims, GMAC sought to have the reconveyance deemed null and void and to declare that the "first priority security interest created by the [Deed of Trust] still exists and remains valid and that the rights and obligations created by said Deed of Trust remain fully enforceable according to applicable law." (Complaint, ¶ 26; see also Statement of Decision p. 13.) The Deed of Trust, which GMAC incorporated into the complaint and attached thereto as Exhibit "1," which GMAC sought to reinstate and give full force and effect to, provides two different mechanisms for recovering attorneys' fees and costs. (Deed of Trust, Trial Exhibit 1.) The Deed of Trust and the Note which underlie Plaintiffs' claims both expressly provide for recovery of attorneys fees "[i]f ... (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument . . ." Trial Exhibits 1, ¶¶9 and 14, and 40-551-553, ¶4(D). In addition, California Civil Code section 1717 makes such provisions reciprocal vis-a-vis the parties. Pursuant to these provisions, the Deed of Trust and the Note both give the party a right to recover any attorneys' fees incurred in safeguarding and defending its security interest and position on the Property.

      After the conclusion of a full bench trial, and after giving all parties (including GMAC and ETS) an opportunity to submit comments, on August 29, 2011 the Superior Court issued its Statement of Decision ("Statement of Decision") denying each and every claim for relief sought by GMAC and entering judgment in favor of defendants, including the Schermerhorns. (Statement of Decision, pp. 39-42) Because of the completeness of the relief granted to the defendants after the July 2011 trial, GMAC's affirmative claims and all defenses thereto have been completely resolved by this Court. (Statement of Decision, pp. 41-42.) A true and correct copy of this Statement of Decision is attached hereto as Exhibit "1" and is incorporated by reference.

On January 10, 2012 this Court signed and entered its Judgment in this case, in which all of the issues raised in the first two phases of the trial of this action were reduced to judgment. A true and correct copy of this Judgment is attached hereto as Exhibit "2" and is incorporated by reference.

On January 27, 2012 the Schermerhorns filed and served their memorandum of costs in the State Court Action. After consideration of objections asserted to that memorandum of costs, on or about February 16, 2012 the Schermerhorns filed and served their Amended Memorandum of Costs, setting forth the detail supporting allowable litigation costs in favor of the Schermerhorns in the amount of $14,463.51. A true and correct copy of this Amended Memorandum of Costs is attached hereto as Exhibit "3" and is incorporated by reference.

In addition to the allowable costs, and as the prevailing parties in the action which involved GMAC's note and First Deed of Trust (described above), the Schermerhorns seek and are entitled to recover their actual attorneys' fees and costs in the amount of $568,198.74 for 1,743.6 hours of work performed. (This is exclusive of the costs included in the Memorandum of Costs, Exhibit "3" above, which are costs allowable by statute in California.

As of the date of this proof of claim, the Judgment is final and has not been appealed by any party in interest, and the deadline to appeal from its entry has passed.

As of the date of this proof of claim, the Schermerhorns have not been paid anything by or on behalf of GMAC and/or ETS.

As a result of the Schermerhorns' being the prevailing party vis-a-vis the Plaintiffs in the State Court Action, the Schermerhorns' claim in this estate is as follows:

| Item | Amount |
|---|---|
| Memorandum of Costs | $14,463.51 |
| Attorneys Fees and costs (per California Civil Code §1717) | $568,198.74 |
| Total | $582,662.25 |

GMAC Mortgage, LLC
Case No. 12-12032-mg
*Jointly Administered with 12-12020-mg Residential Capital, LLC*
Exhibit Divider Page

Exhibit 1

GMAC
Case No. 12-12032-mg

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF RIVERSIDE

| TITLE:<br>GMAC MORTGAGE, LLC v. TOZIER | DATE & DEPT.<br>August 29, 2011 | NUMBER<br>1193 |
|---|---|---|
| COUNSEL<br>Please see attached Clerk's Certificate of Mailing | REPORTER<br>none | FILED<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF RIVERSIDE |
| PROCEEDING<br>STATEMENT OF DECISION (PHASE ONE) | | AUG 29 2011 |

This case came on regularly for trial before this court on July 11, 2011. The plaintiffs and cross-defendants, GMAC Mortgage, LLC fka GMAC Mortgage Corporation (hereinafter referred to as "GMAC") and Executive Trustee Services, LLC, fka Executive Trustee Services, Inc. (hereinafter referred to as "ETS") were represented by Stephen E. Ensberg, Esq. The defendants and cross-complainants, Jason S. Schermerhorn and Jennifer M. Schermerhorn (hereinafter referred to as "the Schermerhorns") were present and they were represented by Michael Y. MacKinnon, Esq. and Kathleen A. Cashman-Kramer, Esq. The defendant, cross-complainant and cross-defendant Wells Fargo Bank (hereinafter referred to as "WFB") was represented by Thomas P. Davis, Esq. The defendant and cross-defendant, Bank of America, N.A. (hereinafter referred to as "B of A") and the defendants, Mortgage Electronic Registration Systems, Inc. (hereinafter referred to as "MERS") and PRLAP, Inc. were represented by Jonathan Fink, Esq. and Magdalena D. Kozinska, Esq.

Because the pleadings of the various parties raise issues of both law and equity, the parties stipulated before the commencement of this trial in this case as follows:

"The trial of the causes of action of Plaintiffs' [sic] Complaint will proceed first to the Court for decision alone without a jury."

Based on the foregoing stipulation, the trial of the first phase proceeded as a bench trial before this court sitting without a jury on the plaintiffs' three causes of action.

At the conclusion of the trial of the first phase, this court granted the motion brought by counsel for PRLAP for non-suit. This court then directed all counsel to submit simultaneous written closing arguments by facsimile transmission to this court and to each other. The deadline for the submission of those briefs was set for Friday, July 22, 2011 by 4:00 p.m.

The written closing arguments were submitted timely and this Court proceeded to consider the arguments advanced in those briefs. This Court then issued a Statement of Intended Decision on August 4, 2011.

GMAC
Case No. 12-12032-mg

EXHIBIT 1

K. ZIEBARTH, Retired-Judge
(vis), Clerk
Pages 1 of 42

In that Statement, each party was given the opportunity to object in writing to any of the rulings made therein or to request additional findings. If no such objections or requests were timely made, then the Statement of Intended Decision was to be deemed to be the final Statement of Decision for Phase One of the trial of this case.

Both the plaintiffs and the defendants submitted timely responses to the Statement of Intended Decision. The defendants response (which is entitled "Defendants' Joint Request for Clarification") is dated August 17, 2011 and the plaintiffs' response (which is entitled "Plaintiffs' (1) Request for Statement of Decision (CRC 3.1590 (d), or (2) objections to Proposed Statement of Decision (CRC 3.1590 (g)) is dated August 18, 2011.

Lastly, the defendants filed on August 25, 2011 a document entitled "Defendants' Response to Plaintiffs' Objections to the Court's Statement of Intended Decision" which this Court also considered.

The defendants' Response contains a request for change and/or clarification. The defendants pointed out that there were some typographical errors and editorial oversights in the Statement which should be corrected in order to reflect an accurate statement. This court has reviewed and considered the defendants' list and has determined that those errors should be corrected. Therefore all of the errors contained on the list have been corrected in this final Statement of Decision as can be noted below.

In the Plaintiffs' responses, they raised eight objections to certain matters in the Statement. The first objection reads as follows:

"Issue/Objection 1: Whether the court trial conducted during July 2011 encompassed all equitable claims and issues raised by the parties. The Court's conclusion that it did not is contrary to the Court's order upon the parties' Stipulation, as well as the facts as to what issues were presented to the Court for determination."

This Court agrees that in its Order after Hearing which was signed and filed on July 8, 2011, this Court adopted the Stipulation of the parties concerning the order of trial and the issues to be presented for determination by this Court in the first phase. However, this Court disagrees with the assertion made by the plaintiffs that "the Court and the parties agreed to a two-phase trial, the first phase to encompass the interrelated equitable claims (i.e., all claims raised by the Complaint, all claims raised by Wells Fargo Cross-Complaint, and the equitable claims included among the claims asserted in the Schermerhorns's First Amended Cross-Complaint); and the second phase to decide any legal issues of the Schermerhorns remaining for jury trial."

The interpretation of the plaintiffs as to the language of the Order pursuant to Stipulation is at variance with the actual language contained in the Order. The pertinent portion of the Order reads as follows:

"IT IS HEREBY ORDERED AS FOLLOWS:

1.  The Trial of the causes of action of Plaintiff's Complaint will proceed
    <u>first</u> to the Court for decision alone without a jury;
2.  <u>Next</u>, the trial of the causes of action of Wells Fargo Bank's Cross-
    Complaint will proceed second to the Court for decision alone without a
    jury;
3.  Thereafter, the trial of the equitable causes of action of the
    Schermerhorn's First Amended Cross-Complaint will then next
    proceed to the Court ofr decision alone without a jury; and
4.  The causes of action of the Schermerhorns in their First Amended
    Cross-Complaint raising legal issues upon which they have a right to a
    Jury Trial will then, finally, proceed.
5.  The Trial Court will retain discretion to decide which claims of the
    Schermerhorns in their First Amended Cross-Complaint raise legal
    issues for which they are entitled to have a trial by jury. (Emphasis
    supplied)."

Based on this Court's interpretation of the clear language of sections 1 and 2 of the above quoted order, this Court is only ruling on the merits of the three causes of action which are contained in the Plaintiffs' Complaint.

Also, this Court has never indicated that the trial of this matter would involve "a four-phase trial involving three court trials of equitable issues and a possible fourth-trial of the Schermerhorns' legal issues" as indicated in the plaintiffs' response to the Statement of Intended Decision.

Because the Schermerhorns subsequently waived their right to have a jury trial of their legal issues, all of the remaining equitable of the various defendants can be resolved in the Second and last phase of this trial.

For the reasons set forth above, the plaintiffs' objection 1 is overruled.  For the reasons that are set forth below, in great detail all of the plaintiffs' other objections are also overruled.  Also the very recent appellate decision that the plaintiffs' included in their response (i.e., the case of *Fontenant v. Wells Fargo Bank, N.A.*(2011) ____ Cal App 4th ____ is not controlling in this case.

I
## Nature of the Case

This case involves a complaint which was filed by the plaintiffs' GMAC and ETS against various defendants including the Schermerhorns, WFB and B of A. That complaint contained three causes of action.  Those causes of action are for (1) Declaratory Relief

GMAC
Case No. 12-12032-mg

EXHIBIT 1

K. ZIEBARTH, Retired-Judge
(vis), Clerk
Pages 3 of 42

against all named defendants; (2) Cancellation of Instruments against all named defendants; and (3) Reformation of Full Reconveyance against all named defendants.

As noted above, the plaintiffs are seeking equitable relief in the form of declaratory relief, cancellation of instruments and reformation of a Full Reconveyance document that they recorded on November 29, 2005 (Trial Exhibit No. 4-42).

In their First Cause of action, the plaintiffs seek a judicial determination of the legal effect of said document concerning its continued existence, validity, and enforceability. Specifically, GMAC seeks a declaration that said document was recorded through inadvertence, error and mistake as the result of the actions taken by employees of the plaintiffs, that such document is null, void and of no legal force or effect, and the first priority security interest created by the Deed of Trust originally in favor of the lender, California Empire Financial Group, Inc. (Trial Exhibit No. 1-1 through 24) still exists and remains valid and that rights and obligations created by that Deed of Trust remain enforceable according to applicable law.

In the alternative; the plaintiffs seek to have the said Full Reconveyance reformed nunc pro tunc so as to refer to Riverside County Recording No. 2005-02618680 (the first position Deed of Trust) consistent with the MIN Loan Number correctly identified in the aforementioned reconveyance document which referred to the Second Trust Deed Loan (Trial Exhibit No. 2) as opposed to the First Trust Deed loan.

In their Second Cause of action, the plaintiffs seek to have this court cancel the said Reconveyance document because of the mistake described above.

In their Third Cause of action, the plaintiffs seek to reform the said Reconveyance document to correct the last digit (referring to the Riverside County Recorder Instrument Number) so as to refer to and identify Instrument No. 2005-0261681 as opposed to 2005-0261680, as the instrument number for the Deed of Trust to be reconveyed by the said Full Reconveyance document.

Although the plaintiffs' Complaint contains three separate causes of action, in effect the plaintiffs are really seeking only one relief – a judgment re-establishing or re-instituting the first Deed of Trust which was reconveyed by plaintiffs so that such Deed of Trust would have priority over the Deed of Trust which is held by WFB. By its Answer, WFB denies that the plaintiffs are entitled to the relief sought and raises several affirmative defenses, including laches, waiver, estoppel and bona fide encumbrances for value.

The Answers filed by the B of A and the Schermerhorns assert similar positions.

## II
## Facts

Prior to the start of the trial of the first phase of this case, the parties filed a written Stipulation regarding certain facts that are not in dispute. Those facts are as follows:

"The parties hereto, by the and through their respective counsel, stipulate to the following facts as undisputed, and to the admissibility of the exhibits identified below:

1. The real property that is the subject of this action is a single family residence located at 33914 Tuscan Creek Way, Temecula, California, as per map recorded in Book 351 at pages 58 to 64, inclusive, of Maps in the Office of the County Recorder of said County (hereinafter the "Property").

2. On April 4, 2005, Beazer Homes conveyed the Property to Mark Tozier by a Grant Deed recorded as Instrument No. 2005-0261678 (See Trial Exhibit No. 51).

3. Trial Exhibit "51" is true and correct copy of the Grant Deed from Beazer Homes to Mark Tozier and may be admitted into evidence. (All of the Exhibits referred to in this Stipulation are included in a separate pleading identified as "Exhibits Subject to the Parties' Stipulation of Fact".)

4. On April 4, 2005, a Deed of Trust was recorded as Instrument No. 2005-0261680 in the County Recorder's Office for Riverside County securing a loan in the amount of $429,856 to Mark Tozier. The lender named in the Deed of Trust was California Empire Financial Group, Inc. (hereinafter the "First Deed of Trust"). (See Trial Exhibit No. 1)

5. Trial Exhibit "1" is a true and correct copy of the First Deed of Trust and may be admitted into evidence.

6. On April 4, 2005, a second deed of trust encumbering the Property was recorded as Instrument No. 2005-0261681 in the County Recorder's Office for Riverside County securing a loan to Mark Tozier by California Empire Financial Group, Inc. in the amount of $107,464 (hereinafter the "Second Deed of Trust"). (See Trial Exhibit No. 2)

7. Trial Exhibit "2" is a true and correct copy of the Second Deed of Trust and may be admitted into evidence.

8. In November 2005, Mark Tozier obtained a revolving line of credit from Bank of America with a credit limit of $145,000. The Bank of America line of credit was secured by a Deed of Trust which was recorded in the County Recorder's Office of Riverside on November 23, 2005 as Instrument No. 2005-0976640. (See Trial Exhibit No. 3)

GMAC
Case No. 12-12032-mg

EXHIBIT 1

K. ZIEBARTH, Retired-Judge
(vis), Clerk
Pages 5 of 42

9. The Bank of America line of credit was used to pay off the loan secured by the Second Deed of Trust identified in paragraphs 6 and 7, above.

10. Trial Exhibit "3" is a true and correct copy of the Deed of Trust which secured the Bank of America line of credit and may be admitted into evidence.

11. On November 29, 2005, ETS caused to be recorded as Instrument No. 2005-0984448 in the County Recorder's Office of Riverside County, a Substitution of Trustee. The Substitution of Trustee is signed by Janice Burt as Assistant Secretary for MERS. (See Trial Exhibit No. 4-41)

12. Trial Exhibit "4-41" is a true and correct copy of the Substitution of Trustee and may be admitted into evidence.

13. On November 29, 2005, ETS caused to be recorded as Instrument No. 2005-0984449 in the County Recorder's Office of Riverside County a Full Reconveyance. (See Trial Exhibit No. 4-42)

14. Trial Exhibit "4-42" is a true and correct copy of the Full Reconveyance and may be admitted into evidence.

15. On November 9, 2007, Bank of America caused to be recorded as Instrument No. 2007-0684003 in the County Recorder's Office of Riverside County a Notice of Default and Election to Sell Under Deed of Trust based on the failure of Mark Tozier to pay amounts due under the Bank of America line of credit.

16. Trial Exhibit "5" is a true and correct copy of the Bank of America Notice of Default and may be admitted into evidence. (See Trial Exhibit No. 5)

17. On February 26, 2008, Bank of America caused to be recorded a Substitution of Trustee as Instrument No. 2008-0092962 in the County Recorder's Office of Riverside County.

18. Trial Exhibit "6" is a true and correct copy of the Substitution of Trustee and may be admitted into evidence. (See Trial Exhibit No. 6)

19. On February 26, 2008, Bank of America caused to be recorded as Instrument No. 2008-0092963 in the County Recorder's Office for Riverside County a Notice of Trustee's Sale for the Property. The amount declared to be due to Bank of America at the time of the Notice was $161,890.36. (See Trial Exhibit No. 7)

20. Trial Exhibit "7" is a true and correct copy of the Notice of Trustee's Sale recorded by Bank of America and may be admitted into evidence.

21. Bank of America became the owner of the Property as a result of its full credit bid in the amount of $160,776.94 at the non-judicial foreclosure sale conducted on March 21, 2008.

22. On April 30, 2008, Bank of America caused to be recorded as Instrument No. 2008-0222317 in the County Recorder's Office of Riverside County a Trustee's Deed following the foreclosure sale to Bank of America. (See Trial Exhibit No. 9)

23. Trial Exhibit "9" is a true and correct copy of the Trustee's Deed and may be admitted into evidence.

24. On February 29, 2008, ETS caused to be recorded as Instrument No. 2008-0099014 in the County Recorder's Office of Riverside County a Substitution of Trustee. The Substitution of Trustee is signed by Ashley Johnson as Assistant Secretary for MERS. (See Trial Exhibit No. 8-50)

25. Trial Exhibit "8-50" is a true and correct copy of the Substitution of Trustee and may be admitted into evidence.

26. On February 29, 2008, ETS caused to be recorded as Instrument No. 2008-0099105 in the County Recorder's Office of Riverside County a Full Reconveyance. (See Trial Exhibit No. 8-49)

27. Trial Exhibit "8-49" is a true and correct copy of the Full Reconveyance and may be admitted into evidence.

28. On June 4, 2008 Bank of America entered into a written agreement with Jason S. and Jennifer M. Schermerhorn (the "Schermerhorns") under which Bank of America was to sell, and the Schermerhorns were to purchase, the Property, for the purchase price of $341,000.

29. Trial Exhibits "34-252" and 34-268" are true and correct copy of the California Residential Purchase Agreement and Joint Escrow Instructions and Addendum Thereto, signed by Bank of America and the Schermerhorns.

30. On June 17, 2008, ETS caused to be recorded as Instrument No. 2008-0329369 in the County Recorder's Office of Riverside County a document entitled "Rescission: A Notice of Void Reconveyance." (See Trial Exhibit No. 10)

31. Trial Exhibit "10" is a true and correct copy of the document entitled "Rescission: A Notice of Void Reconveyance" and may be admitted into evidence.

32. On or about July 11, 2008, the escrow closed for the sale by Bank of America of the Property to Jason and Jennifer Schermerhorn.

GMAC
Case No. 12-12032-mg

EXHIBIT 1

K. ZIEBARTH, Retired-Judge
(vis), Clerk
Pages 7 of 42

33. Trial Exhibit "11" is a true and correct copy of the Grand Deed recorded on July 11, 2008, as Instrument No. 2008-0381943 in the County Recorder's Office to the Property whereby the Schermerhorns took title to the Property and may be admitted into evidence. (See Trial Exhibit No. 11)

34. The purchase of the Property by the Schermerhorns was financed by a loan from the National Bank of Kansas City that was secured by a Deed of Trust recorded as Instrument No. 2008-0381944 in the County Recorder's Office of Riverside County on July 11, 2008. The National Bank of Kansas City Deed of Trust states that is secures a note in the amount of $348,331. (See Trial Exhibit No. 12)

35. Trial Exhibit "12" is a true and correct copy of the National Bank of Kansas City's Deed of Trust Recorded on July 11, 2008 and may be admitted into evidence.

36. On August 19, 2008, Cal Western Reconveyance Corp. caused to be recorded as Instrument No. 2008-0457459 in the County Recorder's Office of Riverside County a Notice of Default. (See Trial Exhibit No. 13)

37. Trial Exhibit "13" is a true and correct copy of the Notice of Default and may be admitted into evidence.

38. The National Bank of Kansas City's loan was refinanced and replaced with a second National Bank of Kansas City loan on April 9, 2009, and secured by a Deed of Trust recorded on that date as Instrument No. 2009-0174200 in the County Recorder's Office for Riverside County. The amount of the loan secured by the new National Bank of Kansas City Deed of Trust is $335,637.

39. Trial Exhibit "14" is a true and correct copy of the National Bank of Kansas City's Deed of Trust recorded on April 9, 2009 and may be admitted into evidence.

40. Trial Exhibit "81" and Trial Exhibit "83" are the documents whereby Wells Fargo Bank was assigned the National Bank of Kansas City's loan and Deed of Trust and such document may be admitted into evidence.

41. On December 1, 2009, the attorneys for GMAC caused to be recorded in the County Recorder's Office of Riverside County a Notice of Pendency of Action and may be admitted into evidence.

42. Trial Exhibit "52" is a true and correct copy of the Notice of Pendency of Action and may be admitted into evidence.

GMAC
Case No. 12-12032-mg

EXHIBIT 1

K. ZIEBARTH, Retired-Judge
(vis), Clerk
Pages 8 of 42

43. On May 17, 2010, the attorneys for GMAC caused to be recorded as Instrument No. 2010-0227286 in the County Recorder's Office of Riverside County, a document entitled "Rescission of Reconveyance."

44. Trial Exhibit "33" is a true and correct copy of the ETS Communications Log relating to the California Empire Second Deed of Trust loan and may be admitted into evidence."

Subsequent to the receipt of the written closing arguments from counsel, this court received a document from counsels for B of A entitled "Objections to Plaintiffs' Reference to Exhibits 32 and 61 in their Post-Trial Briefs." The basis for the objection was the fact that neither of those exhibits was admitted into evidence and therefore they cannot form a proper basis for closing argument.

Thereafter this court received a Response from plaintiffs' counsel. The Response indicates that:

"The objection is entirely without merit because Bank of America's own witness, Sean Chibnik, through his deposition testimony and exhibits received into evidence by the Court testified that Bank of America had notice of Mark Tozier's bankruptcy filing as evidenced by its bankruptcy records and that Bank of America had access to the PACER bankruptcy record access system. (Testimony of Sean Chibnik, p. 58, lines 7-21; p. 59, lines 1-25; p. 60, lines 1-11; see also Exhibits, pp. 79-80 and later in separate Exhibit pp. 6-7 of Testimonial Transcript of Sean Chibnik.)

Trial witness, Melissa Hjorten, also testified that Regional Trustee Services had access to the bankruptcy PACER records system and that her company was aware that Mark Tozier had filed a bankruptcy petition. (A true and correct copy of p.23 of her Trial Testimony is attached hereto and incorporated herein by this reference.)"

B of A's counsel is correct that neither Trial Exhibits 32 nor 61 were admitted into evidence. Therefore, this court has not considered the contents of either of those exhibits in formulating its rulings in this case. However, as it is indicated below, the deposition of Sean Chibnik was admitted into evidence and therefore this court has read and considered his deposition testimony in reaching conclusions in this also. This court has also considered the trial testimony of witness, Melissa Hjorten, along with the testimony of all of the other witnesses who testified during the trial of Phase 1 of this case.

The facts of this case are somewhat complex. This action concerns a residential lot in the Beringer Creek subdivision (Tract 30448) developed by Beazer Homes Holding Corp. On April 4, 2005, Beazer Homes conveyed Lot 1 in the subdivision to Mark Tozier, by a Grant Deed. On April 4, 2005, a Deed of Trust (Trial Exhibit No. 1) was recorded in

GMAC
Case No. 12-12032-mg

EXHIBIT 1

K. ZIEBARTH, Retired-Judge
(vis), Clerk
Pages 9 of 42

Riverside County securing a loan in the amount of $429,856 to Mark Tozier.  The lender named in the Deed of Trust was California Empire Financial Group, Inc. ("California Empire").  The Deed of Trust was recorded as Instrument No. 2005-0261680 ("the California Empire First Deed of Trust").  On the first page of the Deed of Trust, on the first line of the document under the title, the document set forth the following number: "MIN: ███████7582."

The California Empire First Deed of Trust also contains the following definitions:

(C) "Lender" is CALIFORNIA EMPIRE FINANCIAL GROUP, INC.
(D) "Trustee" is FIDELITY NATIONAL TITLE COMPANY
(E) "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument.

Additionally, the California Empire First Deed of Trust contains the following provision on page 3:

"Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

On April 4, 2005, a Second Deed of Trust (Trial Exhibit No. 2) encumbering the Tozier property was recorded in Riverside County securing a loan in the amount of $107,464 to Mark Tozier ("the California Empire Second Deed of Trust").  The lender named in the California Empire Second Deed of Trust was California Empire Financial Group, Inc., the same lender named in the First Deed of Trust.  The California Empire Second Deed of Trust was recorded as Instrument No. 2005-0261681 immediately after the recording of the California Empire First Deed of Trust.  On the first page of said Deed of Trust (on the first line under the title), the document sets forth the following number: "MIN:100306000000007590".  GMAC alleges in the Complaint that it is the successor-in-interest to the California Empire Second Deed of Trust and that it was GMAC's intention to reconvey said Second Deed of Trust when it erroneously reconveyed the California Empire First Deed of Trust in November 2005.

In November 2005, Mark Tozier obtained a revolving line of credit form the B of A with a credit limit of $145,000.  Tozier signed and delivered a Deed of Trust (Trial Exhibit No. 3) securing the line of credit, which named B of A as beneficiary.  The B of A Deed of Trust was recorded on November 23, 2005.  The California Empire Second Deed of Trust

was paid off from the proceeds of the B of A line of credit so that B of A's Deed of Trust could be in second position behind the California Empire First Deed of Trust.

On November 29, 2005, GMAC recorded a Substitution of Trustee (Trial Exhibit No. 4-41) as Instrument No. 2005-0984448 substituting Executive Trustee Services, Inc. ("ETS") as trustee of the California Empire First Deed of Trust (Trial Exhibit No. 4-41). According to the notary acknowledgment, the Substitution of Trustee was signed in the County of Black Hawk, State of Iowa by Janice Burt, Assistant Secretary of the Beneficiary under the Deed of Trust, Mortgage Electronic Registration Systems, Inc. ("MERS"). This Substitution recites that "the undersigned desires to substitute a different trustee for the purpose of reconveying said Deed of Trust." Further, language in the California Empire First Deed of Trust expressly authorized MERS (as nominee for Lender and Lender's successors and assigns) "to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

On November 29, 2005, GMAC also recorded a Full Reconveyance of the California Empire First Deed of Trust (Trial Exhibit No. 4-42). The Full Reconveyance was signed by Mary Ann Hilmer, Assistant Secretary for the newly substituted Trustee, Executive Trustee Services, Inc. This Reconveyance was recorded as Instrument Number 2005-0984449 immediately after the recording of the Substitution of Trustee. Plaintiffs seek to cancel or reform this Full Reconveyance in this action and to thereby revive the California Empire First Deed of Trust (Trial Exhibit No. 1) as the First Deed of Trust encumbering the subject property now owned by the Schermerhorns, with priority over the WFB Deed of Trust.

In the body of the document, the Full Reconveyance recorded by GMAC on November 29, 2005 states that:

"Executive Trustee Services, Inc., as present Trustee for the Deed of Trust executed by MARK TOZIER as Trustor(s), Dated: 03/30/2005 Recorded 04/04/2005 as Instrument No.: 2005-021680 of official Records in the office of the County Recorder of Riverside, California having been requested in writing, by the holder of the obligations secured by said Deed of Trust, to reconvey the estate granted to trustee under said Deed of Trust, does hereby reconvey to the person or persons legally entitled thereto, without warranty, all the estate, title and interest acquired by Trustee under said Deed of Trust."

Immediately under the title "Full Reconveyance", the document sets forth the following:

"GMAC MORTGAGE CORPORATION #; ▇▇▇▇▇6268 "TOZIER" Lender ID: 41300/30509947    Riverside,    California    PIF:    11/10/2005    MERS#

100306000000007590 VRU # 1-888-679-6377. Prepared By: Gina Herman, GMAC MORTGAGE CORPORATION 3451 Hammond Avenue, P.O. Box 780, WATERLOO, IA 50704-0780 319-236-540."

On November 9, 2007, the B of A caused to be recorded a Notice of Default and Election to Sell (Trial Exhibit No. 5) the subject property based on the failure of Mark Tozier to pay amounts due under the November 2005 credit line secured by the B of A Deed of Trust.

On February 26, 2008, a Substitution of Trustee was recorded substituting Regional Trustee Services Corporation as trustee under the B of A Deed of Trust in place of the original trustee. On February 26, 2008, the B of A caused to be recorded a Notice of Trustee's Sale (Trial Exhibit No. 7) for the Tozier property. The amount declared to be due at the time of the Notice of Trustee's Sale was $161,890.36.

On April 30, 2008, B of A caused to be recorded a Trustee's Deed (Trial Exhibit No. 9) reciting that the Tozier property was sold in the foreclosure sale to the B of A; the highest bidder at the sale. The Trustee's Deed states that the amount of the unpaid debt at the time of sale was $160,776.94.

On February 29, 2008, (three days after the B of A recorded its Notice of Default under its deed of trust), GMAC recorded a Substitution of Trustee substituting Executive Trustee as trustee of the California Empire Second Deed of Trust. On February 29, 2008, immediately following the recording of the Substitution of Trustee, GMAC also recorded a Full Reconveyance of the California Empire Second Deed of Trust. This Reconveyance was signed by Christie Bouchard as "Limited Signing Officer" for the trustee, Executive Trustee Services, LLC.

This Reconveyance of the California Empire Second Deed of Trust was signed on February 22, 2008, **after** B of A's Notice of Default but **before** B of A's Notice of Trustee's Sale was recorded.

On June 17, 2008, **after** the B of A foreclosure sale but **before** the resale of the property by the B of A to the Schermerhorns, GMAC caused to be recorded in the Riverside County Records a document entitled "Rescission: A Notice of Void Reconveyance" (Trial Exhibit No. 10) declaring that the Full Reconveyance of the California Empire First Deed of Trust recorded in November 2005 was rescinded and canceled because it was recorded due to error or inadvertence, and "confirming" that the remaining obligation due under the Promissory Note identified in the California Empire First Deed of Trust has not been satisfied and is secured by the California Empire First Deed of Trust.

On July 11, 2008, the B of A sold the subject property to Jason and Jennifer Schermerhorn, who are co-defendants along with WFB and the B of A in this action. The

purchase price for the property, according to the allegations in the Schermerhorns cross-complaint, was $343,000.

The purchase of the property by the Schermerhorns was financed by a loan from National Bank of Kansas City that was secured by a Deed of Trust (Trial Exhibit No. 14) recorded on July 11, 2008. The National Bank of Kansas City Deed of Trust states that it secures a note in the amount of $348,331. The loan was a VA loan because Jason Schermerhorn is a Major in the United States Marine Corps.

The National Bank of Kansas City purchase loan was refinanced and replaced with a second National Bank of Kansas City loan on April 4, 2009. The Deed of Trust states that it secures a note in the amount of $355,637. Like the purchase loan, the refinancing loan is a VA loan. The purpose of the refinancing loan was to reduce the interest rate and monthly payment for the Schermerhorns.

Wells Fargo Home Mortgage (a division of WFB) purchased the rights to service the National Bank of Kansas City refinancing loan on April 21, 2009. Following MERS' procedures for the transfer of loan rights, this transfer was registered with MERS on April 23, 2009. (See Trial Exhibit Nos. 81 and 83)

On December 1, 2009, the attorney for the Plaintiffs in this action caused to be recorded a Notice of Pendency of Action (Lis Pendens) against the subject real property dated November 28, 2009. It declared that an action had been filed seeking cancellation of instruments affecting title to the property and naming the defendants to the action.

On May 15, 2010, Plaintiffs' attorney caused to be recorded a document entitled "Rescission of Reconveyance." This document declares that the California Empire First Deed of Trust was reconveyed by mistake, that the parties had no intention to reconvey it and that the deed of trust constitutes a first priority deed of trust encumbering the subject property. Unlike the Rescission Notice recorded in June 2008, this second Rescission Notice was signed by the Borrower/Trustor Mark Tozier. The document was also signed by Vickie Day as Limited Signing Officer on behalf of GMAC, again by Vickie Day, as Assistant Secretary on behalf of MERS and by LeeAnne Kramer, as Limited Signing Officer for Executive Trustee Services. (Vickie Day also signed the June 2008 Rescission Notice but in that document, she was signing on behalf of Executive Trustee Services.)

Before the plaintiffs rested, the parties stipulated that the deposition testimony of Sean Chibnik would be received in evidence during the first phase of this trial rather than requiring him to testify in person at trial. Also, the various documents that he produced at the time of his deposition on June 30, 2011 would be received in evidence without the need for further authentication.

Therefore, this court has read and considered that deposition testimony as part of the trial evidence presented during the first phase of this trial.

In his deposition, Mr. Chibnik testified that he appeared at the deposition as the person most knowledgeable with the B of A regarding the subject property that is involved in this lawsuit. At the deposition, Mr. Chibnik was deposed by counsel for the plaintiffs.

### III
### Issues

1. Did certain employees of GMAC and/or ETS have either express or implied authority to execute the documents that were involved in the recording of the subject Full Reconveyance document?

2. Was the Full Reconveyance void *ab initio* or voidable?

3. Did any of the defendants Schermerhorns, WFB or the B of A have actual notice of the subject Full Reconveyance document?

4. Did any of them have constructive notice of the recordation of that document?

5. Were all of them either good faith purchasers of the subject real property for value and without notice or good faith encumbrancers for value and without notice of the recordation of that document?

6. Was the first Rescission legally effective?

7. Did the delays on the part of the plaintiffs to remedy their mistake constitute laches?

8. Are either of the plaintiffs entitled to receive any of the equitable relief sought by any of their three causes of action?

### IV
### Discussion

1. Authority of GMAC and ETS Signatories

   A. Actual Authority:

   The plaintiffs contend that their employees who executed the documents which were involved in the Full Reconveyance were not authorized to sign those documents.

   The subject Full Reconveyance document (Trial Exhibit No. 4-42) was signed by Maryann Hilmer, Assistant Secretary. She signed the document on behalf of her employer, ETS who was the trustee. That document was recorded on November 29, 2005. Another companion document was also recorded on the same date. That was the document entitled "Substitution of Trustee." That document was

executed by Janice Burt, Assistant Secretary of "MERS." That document had the effect of substituting ETS as the trustee under the original Deed of Trust (Trial Exhibit No. 1-1 to 24).

Paragraph 24 in the aforementioned original Deed of Trust covered the matter of substitution of the trustee named in the Deed of Trust, i.e. Fidelity National Title Company. That paragraph (on Trial Exhibit No. 1-13) reads as follows:

> "24, Substitute Trustee. Lender. as its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution."

The above quoted language in that paragraph provided the <u>express</u> authority to the persons who signed the two documents mentioned above.

B. <u>Ostensible Authority</u>:

The defendants contend that if for some reason this court was to conclude that the signatories on the two documents mentioned above did not have the express authority to <u>sign</u> the documents, they certainly had the <u>ostensible</u> authority to do so.

Mortgage Electronic Registrations Systems, Inc. ("MERS"), is the beneficiary under the First Deed of Trust (Trial Exhibit No. 1) had the authority to substitute the trustee, ETS. Further, as Trial Exhibit 4 shows, MERS in fact substituted ETS as trustee in November 2005. The undisputed evidence is that the person, who signed that substitution on behalf of MERS, was an officer of MERS. The undisputed evidence also shows that ETS, the substituted trustee, through its officer, executed the reconveyance of the First Deed of Trust (Trial Exhibit No. 4). Both documents were then duly recorded with the Riverside County Recorder's Office and indexed.

According to Civil Code § 2300, "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Here, the Deed of Trust (Trial Exhibit No. 1) expressly appointed MERS as nominee beneficiary for the lender and, on the face of the recorded Substitution, it states that MERS is appointing ETS as the successor

trustee.  The next recorded document shows ETS reconveying that Deed of Trust. That same Deed of Trust expressly provides that "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, **MERS (as the nominee for Lender and Lender's successors and assigns) has the right to exercise any of all of those interests**, including, but not limited to, the right to foreclose and sell the Property." (Emphasis added)"].  Therefore, it is completely reasonable for any third party, looking at the Substitution of Trustee, <u>executed in the name of MERS</u>, to believe GMAC to be the beneficiary's agent.  The subsequent Reconveyance, executed by the substituted trustee, would therefore be valid.

Courts have found that reliance by a third party on the allegedly unauthorized acts may be sufficient to estop a later denial that there was authority.  See *Ripani v. Liberty Loan Corp.*, (1979) 95 Cal.App.3d 603, at pp. 612 – 613, *Dimock v. Emerald Properties* (2000) 81 Cal.App.4[th] at pp. 868, 876.  Indeed, the court in *Ripani* found that there was sufficient evidence of authority, in spite of a later denial of authority.  Also, the court in *Dimock* found that nothing on the face of the substitution of trustee indicated to anyone that it was other than valid and a bona fide substitution.  *Dimock* at p. 876.  Finally, the court in *Ripani* stated that if a third party had a reasonable belief that it could rely, and did rely, then there was no need for further inquiry.  *Ripani* at p. 612.

In its Reply Brief Re: Ostensible Authority, counsel for the B of A argue that the reliance by the plaintiffs on the *Dimock* case is misplaced.  They indicate that the plaintiffs cite the *Dimock* case for the propositions that "there simply cannot be at any given time more than one person with the power to conduct a sale under a deed of trust" and also that a trustee's deed based on a foreclosure by the wrong trustee is void, not voidable.

Counsel for the B of A contend that a closer reading of *Dimock* does not support the positions advanced by the plaintiffs but rather supports the positions advanced by the B of A and the other defendants.  They point out that in *Dimock*, a foreclosure was begun by recordation of a notice of default by the original trustee under a deed of trust, Commonwealth.  Subsequently, the beneficiary's agent **mistakenly recorded a substitution of trustee**, substituting in Calmco as the new trustee under the deed of trust.  Then the agent, now on behalf of Calmco, mistakenly recorded another notice of default.  When the agent discovered its mistake (the substitution of Calmco and the subsequent recordation of a second notice of default), the agent "abandoned" the Calmco file and the second foreclosure and proceeded with the foreclosure under the initial notice of default.  Notably, *no document was recorded* which voided or otherwise removed the Calmco substitution or the second notice of default from the title records.  Eventually, the agent, acting on behalf of Commonwealth, the original trustee, recorded a notice of sale and then conducted the sale on behalf of Commonwealth, *while the "mistake" documents – substitution of Calmco and the second notice of default were still outstanding in the records.*

The *Dimock* Court held that the sole power of sale under the deed of trust was held by Calmco (*regardless* of whether its substitution and subsequent notice of default were mistakes!). The Court reasoned:

> "There is no dispute [the agent] recorded & document which substituted Calmco as trustee under the subject deed of trust. There is nothing on the face of the substitution which indicates it is other than a valid and bona fide substitution. There is also no dispute that the substitution of Calmco was never subject to any further recorded substitution by [the beneficiary] ... [Civil Code Section 2934a] only permits a substitution by way of a recorded document... As a practical matter, were the validity of recorded substitutions subject to the undisclosed, undocumented and subjective decisions of agents of the beneficiary, the ability of successor trustees to provide marketable title would be severely hampered."

The situation in the present case is very much akin to that presented to the *Dimock* Court. Here, a Substitution of Trustee, then a subsequent Reconveyance, both facially valid, were recorded. Like in *Dimock*, here it was only later claimed that the Substitution and Reconveyance were mistakes. Also like in *Dimock*, no subsequent document "de-authorizing" the substituted trustee was ever recorded. Therefore, like in *Dimock*, the substituted trustee, regardless of whether that substitution was a mistake or not, was the one with the power of sale, and B of A was thus justified in relying on the substituted trustee's Reconveyance.

It has been held that one may at the same time be both an actual agent as to authorized actions and an ostensible agent as to unauthorized actions. (See *Hartong v. Partake, Inc.* 1958) 266 Cal.App 2nd 942, at p. 960. Therefore, even if GMAC/MERS were not expressly authorized to substitute ETS, and therefore, ETS was not expressly authorized to record the Reconveyance, GMAC/MERS and ETS could still be (and were) ostensible agents as to those "unauthorized" actions.

2.  Full Reconveyance – Void or Voidable

The plaintiffs argue that the Full Reconveyance is void because MERS had no authority to substitute ETS as the trustee under the first deed of trust, Civil Code Section 2934a, states that the duly authorized Substitution of Trustee (by which MERS substituted ETS as trustee) constitutes **conclusive** evidence of the authority of ETS to act as trustee under the first deed of trust at the time ETS executed the Full Reconveyance of the first deed of trust.

The language in the first Deed of Trust (Trial Exhibit No. 1) expressly authorized MERS (as nominee for the lender and the lender's successors and assigns) "to exercise any or all of those <u>interests, including, but not limited to, the right to foreclose and sell the</u>

Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

The evidence is therefore clear that MERS had the ability to substitute a new trustee under the First Deed of Trust (Trial Exhibit No. 1) and did so on November 20, 2005. (See Trial Exhibit No. 4-41) That new trustee – ETS – then executed the reconveyance that was recorded. (See Trial Exhibit No. 4-42)

As noted above, plaintiffs have attempted to argue that there was no authority for the execution of the substitution or the reconveyance and, for that reason, they are void or voidable. Plaintiffs have offered the testimony of their expert, Mr. Beierle, in support of the proposition that the November 29, 2005 Full Reconveyance (Trial Exhibit No. 4-42) was void or voidable and, as a result, that no one, including the Schermerhorns, is entitled to rely on it for any purpose. The basis for Mr. Beierle's opinions are essentially two-fold: (a) everyone, including the Schermerhorns, were charged with constructive notice that the reconveyance was in error because the MIN/MERS number on the face of the Substitution of Trustee and Full Reconveyance (Trial Exhibit 4) do not match the internal loan numbers; and (b) because Plaintiffs did not have the authority to substitute a trustee or to reconvey the First Deed of Trust (because Plaintiffs claim that they had no right, title or interest in or to that loan), the November 29, 2005 Full Reconveyance is ineffective and did not release the First Deed of Trust.

The undisputed facts establish that MERS is named as the beneficiary under both the First and Second Deeds of Trust. (Trial Exhibits 1-1 through 23 and Trial Exhibits 2-25 through 36) As beneficiary, MERS is thus endowed with certain powers, both under the terms of both Deeds of Trust and under codified California law. It was ETS, the trustee, that signed the November 29, 2005 reconveyance, and ETS was authorized to execute that reconveyance because it had been properly substituted as trustee by MERS, who has actual authority to do so under the terms of the First Deed of Trust and applicable California law. The First Deed of Trust provides that MERS is the beneficiary. Definition paragraph (E) [Trial Exhibit No. 1-2]. It further provides that MERS has the right, among other things, to foreclose and to sell the property, and "to take any action required of lender *including, but not limited to*, releasing and canceling this Security Instrument." First Deed of Trust, p.3 of 14 [Trial Exhibit No. 1-4] (Emphasis added).

And, in any event, a beneficiary has the power under a deed of trust to substitute a new trustee notwithstanding any contrary provisions found in the deed of trust. (Civil Code Section 2934a(a)(1).) MERS, the named beneficiary under the First Deed of Trust, had the right to and did substitute a new trustee to execute a reconveyance of the First Deed of Trust. Despite quoting the precise language of the deeds of trust and the applicable statutes, Plaintiffs' expert Edward Beierle was quite insistent in his testimony that MERS was not a "true" beneficiary in spite of the wording of the two Deeds of Trust (Trial Exhibits 1 and 2) and, as such, it was his belief that the legislature did not intend that MERS would have the same powers as other beneficiaries under California law. Mr. Beierle maintained this insistence even in light of the language of Civil Code Section 2934a(d) which provides

GMAC
Case No. 12-12032-mg

EXHIBIT 1

K. ZIEBARTH, Retired-Judge
(vis), Clerk
Pages 18 of 42

that a recorded substitution of trustee – like the one recorded in this case on November 29, 2005 – shall "constitute conclusive evidence of the authority of the substituted trustee... to act..." Mr. Beierle admitted he had not read the legislative history and offered no support for this opinion other than his repeated statement that, to him, it is "obvious" that the power to substitute the trustee under a deed of trust is vested solely in the lender, and not in MERS. For these reasons, Mr. Beierle opines, the November 29, 2005 reconveyance was void. Defendants contend that Mr. Beierle who was mistaken.

The facts and the case law (see *Gomez v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149 and *Ferguson v. Avelo Mortgage, LLC*, WL 2139143 (June 1, 2011) show a different story than that told by Mr. Beierle. The fact that MERS substituted ETS as trustee under the First Deed of Trust is of no consequence. Contrary to Plaintiffs' contentions, MERS as beneficiary was entitled to substitute a new trustee. In California, when the beneficiary of a deed of trust instructs the trustee to reconvey the deed of trust, the trustee is obligated to record the reconveyance within 21 days of its receipt of the pertinent documents (See Civil Code Section 2941(b)(1)(A)). A failure to comply with that obligation can subject a trustee to damages (See Civil Code Section 2941(d)) or criminal liability (See Civil Code Section 2941.5).

The plaintiffs' argument that they never held an interest in the First Deed of Trust, and therefore, never had authority to reconvey to the First Deed of Trust is misguided. First, Civil Code Section 2934a(d) states that "[o]nce recorded, the substitution [of trustee] shall constitute **conclusive** evidence of the authority of the substituted trustee or his or her agents to act pursuant to this section." (Emphasis added.) Second, the First Deed of Trust expressly authorizes MERS to substitute trustees for purposes of reconveying the First Deed of Trust. Specifically, language in the First Deed of Trust expressly authorized MERS (as nominee for Lender and Lender's successors and assigns) "to exercise any of all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." Thus, under Civil Code Section 2934a(d), once MERS recorded the Substitution of Trustee (Trial Exhibit No. 4), such document was "conclusive evidence" of ETS's authority to fully reconvey the First Deed of Trust.

On cross-examination, Plaintiffs' expert, Edward Beierle, conceded that there exists a conclusive, irrebuttable presumption that a full reconveyance signed by a substituted trustee is valid and enforceable. Further, Mr. Beierle testified that MERS, as the beneficiary under the First Deed of Trust (Trial Exhibit No. 1), had the authority to substitute ETS as the trustee and that ETS had the power to reconvey the First Deed of Trust. Finally, Mr. Beierle testified that a third party reviewing the recorded documents (and specifically, Trial Exhibit No. 4) could reasonably rely on the fact that the Full Reconveyance was a valid and enforceable document. Mr. Beierle testified as follows:

MR. DAVIS:        We're looking at Civil Code Section 2934a?

THE COURT:        24 or 35?

MR. DAVIS:          2934a

THE COURT:          Okay.

MR. DAVIS:          And beginning at the beginning, it reads the trustee under a trust deed on the real property or [an estate for years] therein given to [secure] an obligation to pay money and conferring no other duties upon the trustee then (sic) those that are incidental to the exercise of the power of sale conferred, may be substituted by the recording, in the county in which the property is located, of a substitution executed and acknowledged by (A) All of the beneficiaries under the trust deed of their successors in interest. And the substitution shall be effective notwithstanding any contrary provision in any trust deed executed on or after January 1, 2968, okay.

Regardless what the trust deed says, if the beneficiary substitutes the trustee it's a valid substitution, correct?

EDWARD BEIERLE:     Under the terms of 2934a of the Civil Code the beneficiary may substitute notwithstanding the terms [of the] deed of trust.

...

MR. DAVIS:          All right. So if the beneficiary of the deed of trust in — which is Exhibit 1, substituted a trustee it's a valid substitution?

EDWARD BEIERLE:     Yes, under 2934a.

MR. DAVIS:          No matter what the deed of trust said?

EDWARD BEIERLE:     No matter what the deed of trust said.

...

MR. DAVIS:          Are you aware — take a look at section — subsection (d) of 2934a. Do you have that in front of you?

EDWARD BEIERLE:    Yes.

MR. DAVIS:    <u>The last sentence of that section reads, once recorded, the substitution should constitute conclusive evidence of the authority of the substituted trustee or his or her agents to act pursuant to this section. Is that a correct reading?</u>

EDWARD BEIERLE:    <u>Yes, it is.</u>

MR. DAVIS:    <u>Ok. So there's a conclusive presumption that the substitute trustee can act in connection with its duties as trustee under a deed of trust?</u>

EDWARD BEIERLE:    <u>Yes, I would interpret that as a conclusive presumption.</u>

MR. DAVIS:    All right. So a person who looked at the record and sees a reconveyance signed by the sub substituted trustee can be comfortable with the fact, that the action of that trustee is valid and enforceable, correct?

EDWARD BEIERLE:    It says it has – it is conclusive evidence of the authority of the substituted trustee or his or her agents to act pursuant [to] this section.

THE COURT:    Well isn't it true that the presumption implicit is one that cannot [be] rebutted as law. You go into the Evidence Code with the definitions.

MR. DAVIS:    All right.

THE COURT:    Let the record reflect this is a pregnant pause.

MR. DAVIS:    It's a long code section so.

EDWARD BEIERLE:    Is there a question pending?

THE COURT:    Yes.

EDWARD BEIERLE:    I'm sorry.

GMAC
Case No. 12-12032-mg

EXHIBIT 1

K. ZIEBARTH, Retired-Judge
(vis), Clerk
Pages 21 of 42

| | |
|---|---|
| THE COURT: | My question is: Isn't it true that the conclusive presumption by law cannot be rebutted. |
| EDWARD BEIERLE: | That's my understanding. |
| THE COURT: | Okay. |
| MR. DAVIS: | All right. |
| MR. DAVIS: | And you would agree [that the] substituted trustee has the power conclusively to reconvey a deed of trust? |
| EDWARD BEIERLE: | Yes. |
| MR. DAVIS: | All right.  So if MERS is the beneficiary under the first deed of trust, Exhibit 1 and if MERS substituted in Executive Trustee Services as the trustee, Executive Trustee Services had the power to reconvey the first deed of trust, isn't that correct? |
| EDWARD BEIERLE: | Yes. |

Thus, Plaintiffs' own expert conceded that the Schermerhorns and WFB (and other defendants in this case) were entitled to rely on the Substitution of Trustee and Full Reconveyance (Trial Exhibit No. 4) because those documents were presumptively effective and established the authority of ETS to fully reconvey the First Deed of Trust. Mr. Beierle also eventually conceded that the effect of a properly-recorded reconveyance is that the lien of the subject deed of trust is released and no longer affects the property. When the Court inquired of Mr. Beierle, he agreed that the following statements were a proper statement of California law: under California law, the recordation of a deed of reconveyance extinguishes the lien of the reconveyed deed of trust.  (citing from *In re Si-Va Tech, Inc.* (9th Cir.Cal.2002) 35 Fed. Appx. 681, 684).

The defendants' expert witness, Ms. Hilburg testified that the subject Full Reconveyance was neither void nor voidable.  Her exact testimony was as follows:

"Q. All right.  Now I'd like you to take a look at Exhibit 4, if you would.

A. Okay.

Q. This is the – there is two documents, substitutions of trustee and the full reconveyance and this says this was recorded November of –

GMAC
Case No. 12-12032-mg

EXHIBIT 1

K. ZIEBARTH, Retired-Judge
(vis), Clerk
Pages 22 of 42

A. 29th.

Q. 29th, of 2005?

A. Correct.

Q. And this reconveyed the first trust deed. Is there anything on the face of this document that suggests that it is void or invalid for any reason?

A. No." (Reporter's Transcript p. 19, L22-28, and p. 20 L1-6)

The opinion of Ms. Hilburg is supported by case law which states that a deed is void if the grantor's signature is forged or if the grantor is unaware of the nature of the document he or she is signing (*Erickson v. Bohne* (1955) 130 Cal.App.2nd 553, at pp. 555-556). A voidable deed, on the other hand, is one where the grantor is aware of what he or she is executing, but has been induced to do so through fraudulent misrepresentation (*Fallon v. Triangle Management Services* (1981) 169 Cal.App. 3rd 1103 at p. 1106; *Schiavon v. Arnaulo Bros* (2000) 84 Cal.App. 4th 374, at pp 378-379).

The plaintiffs failed to offer any evidence during the trial that any of the individuals who executed documents involved in the purported Rescission committed any forgeries, were the victim of any fraudulent misrepresentation or were unaware of the nature of the documents they were asked to execute.

3. Notice

A. Actual Notice:

The evidence is undisputed that the plaintiffs ETS did not record its Rescission until June 17, 2008. The B of A previously became the owner of the subject property and the result of its full credit bid at the foreclosure sale which was conducted on March 21, 2008. On April 30, 2008, the B of A recorded a Trustee's Deed following the foreclosure sale to it. (See Trial Exhibit No. 9)

On June 4, 2008, the B of A entered into a written agreement with the Schermerhorns to sell the subject property to the Schermerhorns. (Trial Exhibits 34-252 and 34-268)

On or about July 11, 2008, escrow closed and the Schermerhorn's became the owners of the subject property by virtue of a Grand Deed. (See Trial Exhibit No. 11)

It appears that the acquisition by the Schermerhorns of title to the subject property on July 11, 2008 followed the date the Rescission was recorded by the plaintiff ETS by only 24 days.

The trial testimony and exhibits are completely devoid of evidence that any defendant in this case had actual notice of any document upon which Plaintiffs' claims are based, namely, the "Rescission: A Notice of Void Reconveyance" recorded by Plaintiffs in 2008 (Trial Exhibit No. 10, hereinafter, the "First Recession") and the "Rescission of Reconveyance" recorded by Plaintiffs in 2010 (Trial Exhibit 53, hereinafter, the "Second Rescission" and collectively with Trial Exhibit No. 10, the "Rescissions"). Further, Plaintiffs presented no evidence that any defendant had actual notice that a discrepancy existed between the MIN/MERS number on the Substitution of Trustee and Full Reconveyance (Trial Exhibit No. 4) and the MIN/MERS number on the $429,856 California Empire Financial Group deed of trust (Trial Exhibit No. 1). Certainly, no statute or case law requires parties to look at and compare MIN numbers on separate documents and nothing on the face of each document would compel such a comparison. Moreover, there was no evidence of any actual notice of any defect conveyed by Mark Tozier's bankruptcy filing.

Ms. Hilburg testified that the custom and practice in the title industry is that when one sees a reconveyance in the record one could reasonably conclude that no further inquiry was necessary with respect to the First Deed of Trust. Specifically, once the First Deed of Trust had been fully reconveyed, the custom and practice was that no further investigation was necessary.

In this case, the Substitution of Trustee and Full Reconveyance (Trial Exhibit No. 4) reference the instrument number of the First Deed of Trust (Trial Exhibit No. 1) but also include a MIN number which is the same as the MERS number for the Second Deed of Trust (Trial Exhibit No. 2). Thus, Plaintiffs argue that the defendants in this case were on "inquiry" notice that the First Deed of Trust was mistakenly reconveyed. The standard of care and custom and practice in the title industry does not support Plaintiffs' argument.

Plaintiffs' expert, Edward Beierle, testified that it was appropriate to consider that evidence of the error in the MIN/MERS numbers in the November 29, 2005 Full Reconveyance (Trial Exhibit No. 4) since the use of the word "contents" in Civil Code Section 1213, in his view, it included things such as the MIN/MERS numbers. Mr. Beierle admitted that he did not search the cases construing Section 1213 to see if the word "contents" was defined. In addition, he admitted to never having reviewed a MERS agreement, that he never personally had dealings with MERS, and that he has never used or personally searched for a MIN/MERS number himself.

Conversely, Defense expert, Lore Hilburg testified that the custom and practice in the title industry is to rely only on the *instrument* number of a recorded document, not the MIN/MERS number. Further, Ms. Hilburg testified that it is not within the standard of care for title searchers to compare the MIN/MERS number on a Full Reconveyance with the MIN/MERS number of the deed of trust being reconveyed. She states that the title industry compares instrument numbers, not MIN/MERS numbers, to make sure

that the proper deed of trust is being reconveyed.  She testified on that matter as follows:

> "Q. Plaintiff contends that because on this document – because this document has a different MIN or MERS number on deed of trust it reconveyed, which is Exhibit 1, that this put the world on inquiry notice that there's a problem, do you agree with that statement?
>
> A. No.
>
> Q. And why not?
>
> A. Because in doing a grantor/grantee search you're not relying on MIN numbers, you're relying on the instrument number to determine what document this is effecting.  And you're not going to be comparing MIN numbers or loan numbers or any other numbers, you're comparing the names and the instrument number that it's reconveying.  That's what is identifying the instrument for you.  And you're not going to be looking at anything else.  And you're – I don't believe you're required to look at anything else particularly an 18 digit number that you're not going to be able to keep in your head.  It's not used for any recording purposes.
>
> Q. County recorder's office doesn't use them; correct?
>
> A. No."

Thus the fact that the MIN number on the Substitution of Trustee and Full Reconveyance (Trial Exhibit No. 4) is the same as the MERS number on the Second Deed of Trust is of no significance.  The claimed discrepancy in MIN/MERS numbers did not impart inquiry notice of the mistaken reconveyance to any of the parties in this action.  There is also no domino effect so, even if Plaintiffs could show actual, imputed or constructive knowledge for one defendant, they would still have to show that each defendant had knowledge in order to prevail.

## B. Constructive Notice

The plaintiffs contend that all of the defendants had constructive notice of the continued viability of the Aurora First Deed of Trust.  They base this contention on the fact that their expert witness, Edward Beierle, testified that the Rescission (Trial Exhibit No. 10-54-55) that was recorded on May 17, 2008 was "in the chain of title."

The defendants' expert witness, Lore Hilburg, disagreed with that conclusion.

Both of the expert witnesses agreed that the proper method of examination of a public record is set forth in the authoritive treatise on California real estate law, Miller &

GMAC
Case No. 12-12032-mg

EXHIBIT 1

K. ZIEBARTH, Retired-Judge
(vis), Clerk
Pages 25 of 42

<u>Starr: California Real Estate</u>, 3rd Edition, Chapter 11, "Recording and Priorities, Sec. 11:34, pp.11-132 and 11-133. The excerpt that covers that topic reads as follows:

> **"Chain of title defined.** A document is "in the chain of title" when it can be located by a proper examination of the public records. When it cannot be found by a review of the public records in the proper manner, it is "outside the chain of title," and does not constitute constructive notice to subsequent parties.

> ◆ **Comment:** The public records are maintained by name indices, but title company records are maintained by property identification. Even though an instrument is reflected in the title company records, it is not in the chain of title if it cannot be found by the appropriate method of examining the public records. However, if the document is reflected in the title company records and the company fails to discover and disclose the document in the preparation of a special report, it arguably may be liable for a negligent search when it is hired to conduct a search of *its own records.*

> **Method of examination of the public record.** When the official records are maintained with a "grantor-grantee" index, the public record is examined by searching the grantor and grantee indices. A person wishing to examine the title of a grantor conveying property first searches the grantee index, beginning with the present date and working backwards until the conveyance by which the current grantor received his or her title is located. Then the grantor index is searched from that date forward to discover all instruments by which the grantor has conveyed any title to or created any lien on the property.

> To locate interests in or liens on the property created before the grantor received title, a search would be made of the title of the grantor's grantor and other predecessors in the chain of title in the same manner.

> **Effect of alternate indexing systems.** The method of searching the records "up the chain" to the previous grantor, and "down the chain" of the previous grantee's grantees, is the same regardless of which indexing system is in use. If the recorder uses the multiple index approach, the search would be conducted separately in each index for the type of document (for example, deeds, mortgages, and leases), first under the "grantor's" book for the index, and then under the "grantee" book for the index. If the

GMAC
Case No. 12-12032-mg

EXHIBIT 1

K. ZIEBARTH, Retired-Judge
(vis), Clerk
Pages 26 of 42

general index system is in use, then the search is simplified since there is only one grantor index and one grantee index.

**Documents not in chain of title.** An instrument that cannot be located by examining the public records by this procedure is not in the "chain of title."

Mr. Beierle admitted in his testimony that he never went to the Riverside County Recorder's Office to examine the pertinent grantor/grantee indices that are relevant in this case. He only reviewed copies of what he believed to be the relevant documents that had been recorded. Ms. Hilburg testified that she did conduct a title search at the Riverside County Recorder's Office using the pertinent grantor/grantee indices.

She testified that she followed the Miller & Starr method of examination quoted above. Then she testified as to the exact procedure which she followed in conducting her title search. That testimony reads as follows:

"Q. Okay. I'd like to move now to describe the search if we could. And I think we need to have some help from Magdelena Kozinska who is going to assist the witness in showing the court what you found when you did the search and what you didn't find when you did the search.

A. Okay. So the first thing we find is the grant deed. So –

Q. That's the grant deed from whom to whom?

A. From Bank of America to the Schermerhorns. And like the index, it doesn't have a legal description, but when you pull up the deed, that is the operative deed for the property. And at the time that Wells Fargo –

|  |  |
|---|---|
| THE COURT: | Okay. So now you're going back to Exhibits 85-1886 and -87; is that correct? |
| THE WITNESS: | Right. |
| THE COURT: | Okay. |
| THE WITNESS: | The first one. |
| THE COURT: | Right. |
| THE WITNESS: | And then you see that they had a deed of trust, first deed of trust that they would have which is their acquisition, their purchase money on the same date. |

GMAC
Case No. 12-12032-mg

EXHIBIT 1

K. ZIEBARTH, Retired-Judge
(vis), Clerk
Pages 27 of 42

Q. (BY MR. DAVIS) And it's in the chain of title?

A. Correct.

Q. Okay.  Then what did you find next?

A. Well, you would then go back to – because the one that I have has the new deed of trust on it but you wouldn't see that if you were about to record that deed of trust.  So you would then go back to the trustees deed by which Bank of America acquired the property and then you also search forward from that date of um – in April to July 11th under Bank of America name. You type in Bank of America name to see if they had recorded anything against the property, could have been an easement or could have been anything. And there's nothing.

Q. You don't find anything.

A. No.

Q. So there's –

A. So then you go back to Mark Tozier's name to get how he acquired title.

THE COURT:   And that index, for the record, is 85-1898; is that correct.

THE WITNESS:   Right.

THE COURT:   Okay.

THE WITNESS:   Then you see that he acquired it with tow trust of – trust deeds that were contemporaneous with his deed okay.  Then you see that he got another loan from Bank of America. Then you see shortly after the Bank of America loan records a reconveyance of -1680.  So you've now eliminated that deed of trust from your chain.

MR. DAVIS:   For the record, your Honor that is Exhibit 4.

THE WITNESS:   Then you see the full reconveyance of -1681 that recorded February 29th, 2008.

MR. DAVIS:   I think that's Exhibit 8?
Yes, that's Exhibit 8 in this case, your Honor.

THE WITNESS:    Okay. That's how your chain looks for when the national bank of Kansas is making their loan to the Schermerhorns and then they make their loan.

Q. (BY MR. DAVIS)    That was the refinance of the –

A. That's the refinance of the Schermerhorns purchase money trust deed. And then you subsequently get a full reconveyance later on of – yeah you didn't put the recording date on it, but you get the full reconveyance of the first trust deed that the Schermerhorns had. So that is what the Schermerhorns chain of title looks like. That's the only chain. That's what you have constructive notice of when you're done.

Q. Okay.

A. Now –

Q. And then as you know in this case, the plaintiffs are claiming that because on June 17th 2008, a recision notice of void reconveyance was recorded and they contend that is in the chain of title?

A. Right.

Q. Why is it not?

A. Because it's index to Mark Tozier after June 17th, 2008. Since he did not have title to the property, there couldn't be – you're not going to search his name at that point on June 17th, 2008. So you're never going to see that document in your search.

Q. That's because you stopped searching for Mark Tozier once he loses title?

A. Right. And all of the liens have been cleared as of April 30th, 2008.

Q. so for example, if Mark Tozier were to record a deed conveying title to his wife on May 15th, 2008, you wouldn't find that, would you?

A. Correct.

Q. Any more than you would find this recision document?

A. Right. And that's why that other exhibit is not a chain and not a proper way to search because it just searches for Mark Tozier past April 30th to the present.

Q. Because once your – once he's off title, you're not concerned about what documents he records or recorded in his name; isn't that correct?

A. Right. Because he doesn't have any title so he can't do anything to the title. It's not effective as against a bona fide purchaser for value without notice. It's, you know, a nonentity. They are never going to find it with the proper search. And they reason you don't search to beyond when they no longer own the property is because it would expand the search on every single time anybody wants to loan or buy property. And it it would become impossible, because then you're always going to be searching every day forever. So you may as well just eliminate the whole way you have the indexes. Because the indexes are there so you have a limited search and you don't have to search beyond when somebody no longer owns a property because they can't encumber it.

Q. We can come along 25 years from now and if we had to search every grantee all the way forward to -- what would that be, 2031, it would be just too much to search; right?

A. Right. I mean –

Q. Is there a public policy behind that?

A. Right. You want the easy transferability of properties. And the only way to do that is to have a system that is known to everybody, as to how to do it and that you don't have to go beyond when somebody doesn't own a property any more to look for new liens and new encumbrances and new matters of title.

Q. So in your opinion, the recision document Exhibit 4 – ten, is not in the chain of title?

A. It is not.

Q. Okay. And it does not impart constructive notice of it to anybody the fact that it was recorded; correct?

A. Right.

Q. That includes the Schermerhorns and that includes National bank of Kansas City, that includes Bank of America and that includes Wells Fargo; correct?

A. Everybody. Yes. That's – it's totally out of the chain. It doesn't exist as far as being a recorded document and in fact when the title companies have to correct something like that, we end up having to rerecord something so that it becomes in the chain. So if we have something that was recorded late, we end up – and we have to correct it we end up rerecording a deed or rerecording something else. It's not enough to correct the title by just recording an instrument. You have to make sure it's in the chain of title. So we end up getting other deeds, whatever it takes, to make sure it's in the chain and constructive notice or it doesn't have any effect.

Q. Okay. Now this is a related question. It may sound the same, but I think it's slightly different. Plaintiff contends that the recording the recision means that the Schermerhorns were not bona fide purchasers for value, do you agree with with that statement?

A. No."

The validity and effect of the November 29, 2005 Full Reconveyance (Trial Exhibit No. 4) and the June 17, 2008 First Rescission (Trial Exhibit No. 10) ultimately turn on the question of constructive notice. Civil Code Section 1213 provides that:

"Every conveyance or real property or an estate for years therein acknowledged or proved and certified and recorded as prescribed by law from the time it is filed with the recorder for record is constructive notice of the <u>contents</u> thereof to subsequent purchasers and mortgagees; and a certified copy of such a recorded conveyance may be recorded in any other county and when so recorded the record thereof shall have the same force and effect as though it was of the original conveyance and where the original conveyance has been recorded in any county wherein the property therein mentioned is not situated a certified copy of the recorded conveyance may be recorded in the county when such property is situated with the same force and effect as if the original conveyance had been recorded in that county." (Emphasis supplied)

During trial, this Court queried counsel on the issue of what does "contents" (as used in the Civil Code Section 1213) mean? Research by counsel and this Court into this issue has failed to turn up any common definition of "contents" as used in this section. However, cases citing this section illustrate what does <u>not</u> qualify as contents: see *Standard Oil Co. v. Slye* (1913) 164 Cal. 435 (parties are not on constructive notice of contents of lease, where the lease itself is unrecorded, even though there were several assignments of that unrecorded lease and one of the intermediate assignments was recorded); and *Hamilton v. Consolidated Water Co.* (1921) 56 Cal.App. 7 (grantee and its successors were not on notice of subsequent deed made by grantors to wife of grantee which made express reference to a contract qualifying his interest, since the deed was

only constructive notice of its own contents and of document referred to by it, and such document was ineffectual to bind the grantee). Finally, while recording of an instrument is constructive notice of its contents, it is not constructive notice of any mistake contained therein. *Edwards v. Sergi* (1934 137 Cal.App. 369. Here, Plaintiffs' constructive notice argument turns in part on assuming defendants had constructive notice of Plaintiffs' mistake due to the MIN/MERS number discrepancy and/or the executive of the Substitution of Trustee by MERS, and in part on whether the June 17, 2008 First Rescission was in the chain of title.

As noted above, defense expert Lore Hilburg, testified that neither the First Rescission nor the Second Rescission appear in the chain of title for the property. During direct examination, Ms. Hilburg utilized an enlarged diagram to depict a proper search of the Riverside County Recorder's Office grantor/grantee index. (See Trial Exhibit No. 87) Ms. Hilburg walked the Court through the process of a proper grantor/grantee search and testified that she personally performed a search of the Riverside County Recorder's Office grantor/grantee index for the subject property using the correct grantor/grantee and during the appropriate time periods. (Ms. Hilburg also testified that she had performed dozens of such searches in the past, including in Riverside County). Specifically, Ms. Hilburg testified that the proper way to do a grantor/grantee search is, in essence, as follows:

a. Start with the date the Schermerhorns came into title to the Property (July 11, 2008) (Trial Exhibits 11-56 through 59), and search forward to see what encumbrances or deeds exist. This search is performed under the Schermerhorns' names. Determine who their grantor was, and do the same for their grantor from the date that the grantor received record title until its deed to the Schermerhorns was recorded.

b. The Schermerhorns' grantor was B of A. Therefore, a search would then be done starting upon the date that B of A acquired title (April 30, 2008) forward until B of A no longer had any interest in the property (July 11, 2008, see Trial Exhibits 9-51 through 53). This search is accomplished under the name of B of A. Determine who was B of A's grantor, then do the same search for the time he (Mark Tozier) held record title.

c. B of A's grantor was Mark Tozier. (See Trial Exhibit No. 85-1898) The search under Mr. Tozier's name would be between the dates April 5, 2005 (the date he acquired title) and April 30, 2008, the date Mr. Tozier lost title (i.e., the date that the trustee's deed to B of A was recorded). This search is performed under Mr. Tozier's name.

As to her search in this case, Ms. Hilburg testified that she performed her search of the grantor/grantee index as if she was standing in the shoes of the National Bank of Kansas City in April 2009 unaware of anything, other than the names of the seller and the buyer and the property description, with the purpose of determining the state of title on that date.

GMAC
Case No. 12-12032-mg

EXHIBIT 1

K. ZIEBARTH, Retired-Judge
(vis), Clerk
Pages 32 of 42

The result of Ms. Hilburg's search of the Riverside County Recorder's Office grantor/grantee index is reflected in Trial Exhibits 21 through 23 – searches in the name of the seller (B of A) and the buyer (the Schermerhorns).  Ms. Hilburg testified that Trial Exhibits 21 through 23 do not reflect either of the Rescission documents <u>because those documents are recorded outside the chain of title</u>.  As testified by Ms. Hilburg, because the Rescission documents (Trial Exhibits 10 and 53) were recorded and indexed under Mark Tozier's name at a time when Mark Tozier did not have a legal interest in the property, Mark Tozier was a stranger to title and the Rescissions were "wild documents." Danielle Rifilato of the Riverside County Recorder's Office confirmed that the Rescissions were only indexed under the name of Mark Tozier.  It follows then that while Plaintiffs indisputable recorded the Rescissions, that argument is moot.  As Ms. Hilburg testified, both Rescissions were recorded <u>outside the chain of title</u> and could not have been located in a properly performed search of the Riverside County grantor/grantee index.

Finally, Ms. Hilburg opined that on the date B of A acquired title from Mark Tozier via the trustees deed (Trial Exhibit No. 9) and the date the National Bank of Kansas City recorded its refinance deed of trust (Trial Exhibit No. 14), a person performing a grantor/grantee search would conclude that the First Deed of Trust had been fully reconveyed back in 2005 (via Trial Exhibit No. 4).  Ms. Hilburg testified that the custom and practice in the title industry is that when one sees a reconveyance in the record one could reasonably conclude that no further inquiry was necessary with respect to the First Deed of Trust.  Specifically, once the First Deed of Trust had been fully reconveyed, the custom and practice was that <u>no further investigation was necessary</u>.  The opinion of Ms. Hilburg is supported by the case of *First Fidelity Thrift Association v. Alliance Bank* (1998) 60 Cal.App. 4th 1433.

The plaintiffs contend in their closing argument that even if the purported Full Reconveyance is "merely voidable rather than void *ab initio*, a multitude of red flags gave rise to actual inquiry, or constructive notice prevent any of the subsequent encumbrancers or purchasers – particularly, B of A – from claiming "bona fide" status."

In support of its contention, the plaintiffs rely on the unpublished decision of the 9th circuit Court of Appeals in the case of *U.S. v. Countywide Home Loans, Inc.* (2010).

The plaintiffs set forth a number of factors which they submit that charged B of A with at least constructive notice and/or inquiry notice.  Those circumstances read as follows:

1. B of A intended to and did make a second-position loan secured by deed of trust;

2. In doing so, it knew its own deed of trust was subordinate to the loan and deed of trust in favor of Aurora;

GMAC
Case No. 12-12032-mg

EXHIBIT 1

K. ZIEBARTH, Retired Judge
(vis), Clerk
Pages 33 of 42

3. In 2005, B of A agreed to provide a second-position loan to replace the loan then held by GMAC-ETS, and in fact funded the escrow with the funds needed to pay off the balance of that second;

4. At the time it commenced foreclosure activities in February 2008, the contents of the Full Reconveyance displayed a contradiction as to whether the first or second deed of trust was intended to be reconveyed thereby;

5. Even if B of A were excused from recognizing this contradiction as far as the instrument to be reconveyed, it knew that a reconveyance of the first deed of trust and no reconveyance of the second deed of trust was exactly the *opposite* of the scenario it expected to see, and that this violated its rights in connection with the loan it made in 2005;

6. ETS had purportedly been substituted in, and the Full Reconveyance had been executed by ETS, although ETS [sic], GMAC's own trustee and is not used by Aurora;

7. B of A received but disregarded Tozier's bankruptcy schedules identifying the Aurora first-position loan as remaining unsatisfied, and the GMAC-ETS loan as no longer outstanding[12] (Trial Exhibits 32 and 61);

8. Still, B of A never acquired or examined the Full Reconveyance document itself;

9. B of A never contacted Aurora to determine if its loan and lien remained outstanding;

10. B of A never contacted the escrow which handled its original loan transaction to inquire about the apparent lack of reconveyance of the GMAC-ETS second;

11. B of A never contacted any MERS representative to inquire as to the status of any deed of trust or the validity of any substitution of trustee thereunder-although a representative's name and telephone number was provided on the face of *every deed of trust involved in this action*;

12. B of A *did* contact GMAC-ETS-but, as testified to by Melissa Hjorten, only to request that it reconvey its second deed of trust per the 2005 escrow transaction, and without mention of the extremely dubious Full Reconveyance it was choosing to interpret as a reconveyance of the Aurora first trust deed;

13. In purchasing the property at its own foreclosure sale, B of A obtained property worth not less than $340,000 (Trial Exhibit No. 44) for a credit bid

GMAC
Case No. 12-12032-mg

EXHIBIT 1

K. ZIEBARTH, Retired-Judge
(vis), Clerk
Pages 34 of 42

of only $160,776.94 – a price grossly disproportionate to the property's market value *unless* the property was in fact encumbered by a substantial senior lien.

There is evidence in the testimony of Sean Chibnik in his deposition that B of A became aware of the bankruptcy filing by Tozier. He also testified that he has seen B of A documents that indicate that when B of A foreclosed on the Tozier property and bought it for $160,776.94, it later sold the property to the Schermerhorns for about $341,000. Documents also indicated that B of A received $311,869.36 from the subsequent sale. (See depo. p.66, lines 1 through 9).

Mr. Chibnik testified that he has no knowledge as to what was agreed to between the B of A and the Schermerhorns regarding their purchase of the subject property from the B of A.

The fact that B of A may have had knowledge of Tozier's bankruptcy filing did not affect B of A's status as a good faith purchase for value without notice. Also, the fact that B of A apparently made a profit on the foreclosure and sale of the subject property is irrelevant to any issue raised by the three causes of action which were pled in the plaintiffs' complaint. They did not plead any cause of action against B of A for unjust enrichment.

In support of their position that none of them had a constructive notice, the defendants rely on the case of *First Fidelity Thrift & Loan Association v. Alliance Bank* (1998) 60 Cal.App.4[th], the facts revealed that: The same parcel of commercial real estate was encumbered by two deeds of trust. The deed recorded first in time was mistakenly reconveyed. The lender that recorded a deed of trust second in time did not directly contact the lender responsible for the deed of trust that was recorded first in time, but relied on the title record reflecting the reconveyance. The lender that had recorded the original deed brought an action against the borrower resulting in a judgment that reinstated its deed second in time to the other deed, according to the official land title records. Both loans went into default and, in the subsequent foreclosure proceedings, the trial court denied the summary judgment motion of the lender that had mistakenly reconveyed its deed of trust, and granted the summary judgment motion of the lender whose deed of trust, although second in time, was first of record.

The Court of Appeal affirmed, holding that the deed that was first of record, even though second in time, had priority, since no evidence was presented to demonstrate that the second lender had any reason to suspect that the reconveyance was a mistake, and the second lender had no legal duty to investigate further to determine whether the reconveyance was in error. The inquiry legally required is only a reasonable inquiry, not an exhaustive one. The second lender's duty of inquiry was discharged once the sole discrepancy had been explained in a manner consistent with normal practice.

The issue is whether any of the defendants had any reason to suspect that the subject Full Reconveyance was a mistake. The *First Fidelity* decision indicates that they only were required to review the contents of the Full Reconveyance document to determine whether there was any indication in the language used that the document was a mistake. A review of the document reveals that there was no such indication that it was a mistake. The fact that there was a mistake in the number did not put anyone on notice that there was a mistake.

None of the factors advanced by the plaintiffs above relate to the language used in the Full Reconveyance document. They all relate to inferences from circumstances that are irrelevant.

Because they all took title to the subject property without any actual or constructive notice of any error in the Full Reconveyance document (Trial Exhibit No. 4) of the First Deed of Trust (Trial Exhibit 1), all of the defendants were either good faith encumbrancers for value or good faith purchasers for value.

Under California law, a bona fide purchaser for value takes title free and clear of an improperly reconveyed deed of trust, so long as the reconveyance is voidable and not void." *Schiavon v. Arnaulo Brothers* (2000) 84 Cal.App.4th 374 at p. 376. A bona fide purchaser ("BFP") is a buyer who (1) has purchased the property in good faith for value, and (2) had no knowledge or notice of another's rights. *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, at p. 1251. The issue of whether a buyer is a bona fide purchaser is a question of fact to be determined based on the circumstances that existed at the time of the buyer's purchase. *Id.* at 254. "Information learned after the acquisition does not affect the buyer's BFP status. *Ibid.*

Therefore all of the defendants took title to the subject property free and clear of any claim that the first Deed of Trust is currently a valid and existing lien on the subject property.

This finding is compelled by the holding in the *First Fidelity* case cited above, which this Court is required to follow by the *Auto Equity* case (1962) 57 Cal.App 2nd 450 because it is a decision by a California Appellate Court rather than the unpublished decision by a federal court in the *Countywide* case.

4. Was First Rescission Legally Effective?

The plaintiffs contend that the First Rescission was legally effective to reinstate the First Deed of Trust now owned by Aurora.

This Court has concluded that such contention is without any merit.

In addition to being recorded outside the chain of title, Lore Hilburg testified that the First Rescission was ineffective because it was not signed by the borrower, Mark Tozier.

Specifically, the effect of the 2005 Full Reconveyance (Trial Exhibit No. 4) was to fully reconvey to Mark Tozier any interest in the property which was held as security for repayment of the underlying loan. Once the Full Reconveyance was recorded, the net effect was to reconvey to the borrower, Mark Tozier, any interest any beneficiary previously held in the First Deed of Trust. Thus, for the First Rescission to be effective, Mark Tozier was a necessary signatory to the document, however, Trial Exhibit No. 10 was signed only by MERS (through GMAC) and ETS. Neither of these entities held an interest in the property at the time the First Rescission was executed and recorded. Thus, the First Rescission had no legal effect on the First Deed of Trust (Trial Exhibit No. 1) or the Full Reconveyance (Trial Exhibit No. 4). Indeed, contrary to Plaintiffs' claims in this action, the First Rescission expressly represents that MERS was the beneficiary and ETS the trustee under the First Deed of Trust. Moreover, Plaintiffs' second attempt to record a rescission (this time with Mark Tozier's signature) constitutes an admission that it was its understanding that the original rescission was ineffective – just like Aurora informed it in October 2009 (Trial Exhibit No. 33).

Ms. Hilburg also testified that it was her opinion that the June 17, 2008 rescission did not affect a reinstatement of the First Deed of Trust. According to her, a reconveyance, such as the November 29, 2005 Reconveyance (Trial Exhibit No. 4) is similar to a deed in that it conveys an interest in real property from one to another. Once that interest in property has been conveyed (or, in this instance, reconveyed), the only way to re-create that interest is in the same manner or in a manner similar to that by which the interest was recorded in the first place. At a minimum, Ms. Hilburg opined, the owner of the property (i.e. Tozier) would have been a necessary signatory to any attempt to place a lien on the property in June 2008. She opined that Mr. Tozier's signature on the rescission in June 2008 would have been ineffective, since Mr. Tozier had no interest in the property in June 2008.

Once a deed of trust has been reconveyed, regardless of whether the reconveyance was intentional or accidental, the deed of trust is extinguished and cannot be revived, because the recordation of a reconveyance under California law extinguishes the lien of the reconveyed deed of trust. (*In re Si-Va Tech, Inc.* (9th Cir. Cal. 2002) 35 Fed.Appx. 681).

5. Laches

The defendants argue that the doctrine of laches precludes the plaintiffs from obtaining the relief sought in this action. The evidence indicates that the plaintiffs became aware of the mistake they made (when they reconveyed the first Deed of Trust) when they were notified in February, 2008 of their mistake. Once notified of their mistake, the plaintiffs failed to take any measures to correct their mistake or to contact anyone for over four months until June, 2008. Plaintiffs took no action notwithstanding the fact that a Notice of Default, (Trial Exhibit) had been recorded and B of A, as the holder of another deed of trust on the property, was poised to foreclose on its security. For over four months, plaintiffs did not call anyone, write anyone, or file a lawsuit to correct the mistake

made by them. Even worse, once plaintiffs finally took action, the only measure taken was to record a document entitled "Rescission: A Notice of Void Reconveyance" in a place where no one could find it: outside the chain of title. The net result of GMAC's mistake, and commensurate delay in attempting to correct the mistake, is that in the years that followed, the B of A, WFB and the Schermerhorns secured interests in the subject real property. They did so in reliance on the fact that the first Deed of Trust (Trial Exhibit No. 7) had been fully reconveyed back in November 2005.

Notwithstanding these facts, over four years after plaintiffs caused the Full Reconveyance to be recorded, plaintiffs finally initiated this lawsuit seeking to rescind the Full Reconveyance.

Plaintiffs made the mistake that led to this lawsuit. Specifically, Plaintiffs caused the Full Reconveyance and Substitution of Trustee to be recorded in 2005 which fully reconveyed the First Deed of Trust. At trial, ETS witness Shelly Moore conceded that ETS made the error in the Full Reconveyance and Substitution of Trustee (Trial Exhibit No. 4). Plaintiffs also submitted evidence that, when the November 29, 2005 Full Reconveyance was prepared and sent to the county recorder for recording, Plaintiffs were processing approximately 100,000 reconveyances a month in their Waterloo, Iowa facility. The testimony was that Plaintiffs received payoff funds for the Second Deed of Trust on either November 10, 2005 or November 11, 2005. The November 29, 2005 reconveyance was signed November 20, 2005 and recorded November 29, 2005.

Ms. Moore testified that accuracy was as important as speed, but that Plaintiffs were at all times sensitive to the deadlines imposed on them by the State of California to get reconveyances processed and recorded quickly. Ms. Moore also testified that not every reconveyance was checked, but that it was Plaintiffs' custom and practice that they would only perform "spot checks" to ascertain the accuracy of reconveyances prepared by the lien release department. She also testified that the "error rate" on reconveyances was less than 1%. However, on cross-examination she admitted that she did not know who did these "spot checks" on behalf of the Plaintiffs, nor did she have any idea what percentage of the total number of reconveyances were "spot checked" for accuracy. Ms. Moore also testified, on cross-examination, that it is possible that the November 29, 2005 Full Reconveyance was in fact spot-checked before it was recorded, and that no one found any error with it. Finally, Ms. Moore testified that she never spoke with Gina Herman, who prepared the Substitution of Trustee and the Full Reconveyance (Trial Exhibit No. 4), nor did she ever ask anyone how or why the error on the reconveyance happened. Specifically, Ms. Moore admitted she did not know whether someone had typed in the wrong number or had instead pulled the wrong deed of trust. Ms. Moore also admitted that Plaintiffs did not have the deeds of trust imaged on their system in November 2005 when they were preparing the Full Reconveyance (Trial Exhibit No. 4), and she does not know if Plaintiffs ever received a copy of the deed of trust prior to the time that they caused the November 29, 2005 Full Reconveyance to be recorded.

GMAC
Case No. 12-12032-mg

EXHIBIT 1

K. ZIEBARTH, Retired-Judge
(vis), Clerk
Pages 38 of 42

The plaintiffs were notified that they mistakenly reconveyed the first Deed of Trust, they waited too long to do anything about it.  In the meantime, the Schermerhorns, National Bank of Kansas City, WFB and B of A relied on a chain of title which did not include the first Deed of Trust.  To reinstate the first Deed of Trust at this time would be exceedingly prejudicial to the affected defendants and an inequitable result.

Civil Code Section 3543 provides: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer."

The facts in this case support the application of the doctrine of laches as a defense to the plaintiffs' claims for equitable relief.

**V**
**Conclusion**

For the reasons discussed above, this Court has reached the following conclusions in this case:

(1)    The Plaintiffs have standing to seek the equitable relief which they have sought in their three causes of action;

(2)    The Full Reconveyance (Trial Exhibit No. 4-42) recorded on November 29, 2005 correctly identified the MIN/MERS number for the GMAC Second Trust Deed loan, but incorrectly (by one digit) identified the Riverside County Recording Number of the Aurora's First Trust Deed.  Conversely, the internal text of the 2005 Full Reconveyance correctly identified the Second Trust Deed loan, but by one digit mistakenly identified the Riverside County Recording Number for the First Trust Deed.  In spite of the error, the Full Reconveyance was legally effective.

(3)    The signatories for the plaintiffs had both the express and ostensible authority to execute and record the Substitution of Trustee (Trial Exhibit No. 4-41) and the Full Reconveyance (Trial Exhibit No. 4-41).  (See Civil Code Section 2934 and *Dimoch v. Emerald Properties* (2000) 81 Cal.App. 4th 868);

(4)    Both of those documents were facially valid:  Plaintiffs' own expert conceded that the Full Reconveyance was effective and that a third party could justifiably rely on its effectiveness.   On cross-examination, Plaintiffs' expert, Edward Beierle, conceded that Civil Code Section 2934a established a conclusive presumption that the Substitution of Trustee (Trial Exhibit No. 4) was effective and that ETS had the power to fully reconvey the First Deed of Trust.

(5)    Expert testimony confirms that the First Rescission was ineffective and did not reinstate the First Deed of Trust.  Defense expert, Lore Hilburg opined that for the First Rescission to reinstate the First Deed of Trust, the owner of the property (Mark Tozier) was a necessary signatory to any attempt to place a lien on the

property.  The First Rescission was not effective here to reinstate the First Deed of Trust.

(6)   No defendant had actual notice of the documents upon which Plaintiffs base their claims, namely, Trial Exhibit No. 10, the "Rescission: A Notice of Void Reconveyance" recorded by Plaintiffs in 2008, and Trial Exhibit No. 53, the "Rescission of Reconveyance" recorded by Plaintiffs in 2010 (hereinafter collectively, the "Rescissions").  Nor did any defendant have actual notice of the discrepancy in MIN/MERS numbers that appeared in the Full Reconveyance and Substitution of Trustee (Trial Exhibit No. 4) and the California Empire Financial Group first position deed of trust (Trial Exhibit No. 1, hereinafter the "First Deed of Trust") which the Full Reconveyance reconveyed.

(7)   No defendant had constructive notice of the Rescissions recorded by Plaintiffs.  Defense expert, Lore Hilburg confirmed this.   Ms. Hilburg testified that the Rescissions were recorded outside the chain of title and could not be found during a proper search of the Riverside County Recorder's Office grantor/grantee index (Trial Exhibits 85 and 87).  (See *First Fidelity Thrift & Loan Association v. Alliance Bank* (1998) 60 Cal.App. 4th 1422 t pp. 1444 & 1445).

(8)   The first Rescission was not legally effective for the reasons discussed above.

(9)   No defendant was on inquiry notice of the MIN/MERS number discrepancy between the Substitution of Trustee and Full Reconveyance (Trial Exhibit No. 4) and the First Deed of Trust which those documents reconveyed (Trial Exhibit No. 1).  Defense expert, Lore Hilburg testified that the custom and practice in the title industry is to rely on the instrument number, not the MIN number in verifying that a Full Reconveyance is reconveying the correct deed of trust.  Danielle Rifilato, of the Riverside County Recorder's Office, confirmed that the Recorder's Office does not use MIN or MERS numbers, nor are records searchable by MIN/MERS numbers.  Thus, the MIN/MERS number discrepancy did not impart inquiry notice that the First Deed of Trust was mistakenly reconveyed.

(10)  Any knowledge that any title insurance company may have acquired concerning the mistake made by employer of the plaintiffs could not be imputed to any of the affected defendants.  (See *Rice v. Taylor* (1934) 220 Cal. 629, at pp. 633-637; *Lewis v. Superior Court* (1994) 30 Cal.App. 4th 1850, at p. 1856; *In re Marriage of Cloney* (2001) 91 Cal.App. 4th 429, at pp. 438-439).

(11)  The Full Reconveyance was neither void *ab initio* nor voidable.  (See *Fallon v. Triangle Management Services* (1985) 169 Cal.App. 3rd 1103, at p. 1106; *Schiavone v. Arnaulo Brothers* (2000) 86 Cal.App. 4th 374, at pp. 378-379);

(12)  The evidence presented at trial shows that the first trust deed in favor of Aurora did not appear in the chain of title when the National Bank of Kansas City, nor its

reasons, this Court denies Plaintiffs' request for any of the relief prayed for in their complaint.

Upon the conclusion of the trial of the remaining phase, the Schermerhorns will be awarded judgment against both of the plaintiffs on the various issues that have been decided herein. That judgment will provide that the lis pendens which the plaintiffs filed against the subject property will be expunged. It is premature to order on expungement at this state of this case.

Now that the matter of the contents of the final Statement of Decision has been resolved, this Court has set a date for a Trial Setting Conference to determine what date is agreeable to all counsel to start the trial on the issues on the next phase of the overall trial of this case that counsel have previously agreed on. The date for the Trial Setting Conference has been set for September 16, 2011 at 1:30 p.m. in Department 6.

Dated: 8/29/11

Kenneth G. Ziebarth
Judge of the Superior Court (Retired)

GMAC
Case No. 12-12032-mg

EXHIBIT 1

K. ZIEBARTH, Retired Judge
(vis), Clerk
Pages 42 of 42

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
4050 Main Street
Riverside, CA  92501
www.riverside.courts.ca.gov

CERTIFICATE OF MAILING

GMAC MORTGAGE LLC

    vs.                                    CASE NO. RIC541193

MARK TOZIER

TO:

I certify that I am currently employed by the Superior Court of
California, County of Riverside and I am not a party to this action
or proceeding. In my capacity, I am familiar with the practices and
procedures used in connection with the mailing of correspondence. Such
correspondence is deposited in the outgoing mail of the Superior
Court. Outgoing mail is delivered to and mailed by the United States
Postal Service, postage prepaid, the same day in the ordinary course
of business. I certify that I served a copy of the attached
STATEMENT OF DECISION (PHASE ONE) on this date, by depositing
said copy as stated above.

Court Executive Officer/Clerk

Dated: 08/29/11                    by: _____
                                        SANDRA PORTILLO, Deputy Clerk

Notice 'CCM' has been printed for the following Attorneys/Firms
or Parties for Case Number RIC541193 on  8/29/11:

LAW OFFICES OF STEPHEN E ENSBERG
1609 W. GARVEY AVE NORTH
WEST COVINA, CA 91790

PYLE, SIMS, DUNCAN & STEVENSON
401 "B" STREET, #1500
SAN DIEGO, CA 92101

WRIGHT FINLAY & ZAK LLP
4665 MACARTHUR COURT
SUITE 280
NEWPORT BEACH, CA 92660

WRIGHT, FINLAY & ZAK
4665 MACARTHUR COURT SUITE 280
NEWPORT, CA 92660

DAVIS LAW A PROFESSIONAL CORPORATI
580 BROADWAY
SUITE 301
LAGUNA BEACH, CA 92651

DAVIS ZFATY APC
580 BROADWAY
SUITE 301
LAGUNA BEACH, CA 92651

GMAC Mortgage, LLC
Case No. 12-12032-mg
*Jointly Administered with 12-12020-mg Residential Capital, LLC*
Exhibit Divider Page

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JAN 10 2012

K. Amidei

1

2

3

4          SUPERIOR COURT OF THE STATE OF CALIFORNIA

5                       COUNTY OF RIVERSIDE

6

7   GMAC MORTGAGE, LLC, fka GMAC       )   CASE NO.: RIC 541193
    MORTGAGE CORPORATION AND           )   The Honorable Kenneth G. Ziebarth
8   EXECUTIVE TRUSTEE SERVICES, LLC,   )   Department 6
    fka EXECUTIVE TRUSTEE SERVICES,    )
9   INC.                               )
10              Plaintiffs,            )
                                       )
11       Vs.                           )
                                       )
12  MARK TOZIER, an individual; JASON S. )      **JUDGMENT**
    SCHERMERHORN, an individual;       )
13  JENNIFER M. SCHERMERHORN, an       )
    individual CALIFORNIA EMPIRE       )
14  FINANCIAL GROUP, INC., a California )
15  corporation; FIDELITY NATIONAL TITLE )
    COMPANY, a corporation; MORTGAGE   )
16  ELECTRONIC REGISTRATION SYSTEMS, )
    INC., a corporation; BANK OF AMERICA, )
17  N.A.; PRLAP, INC., a corporation;  )
18  REGIONAL SERVICE CORPORATION, a    )
    corporation; REGIONAL TRUSTEE      )
19  SERVICE CORPORATION, a corporation; )
    NATIONAL BANK OF KANSAS CITY, a    )
20  corporation; LSI TITLE AGENCY, INC., a )
    corporation; CAL-WESTERN           )
21  RECONVEYANCE CORPORATION, a        )
22  corporation; FIRST AMERICAN TITLE  )
    COMPANY, a corporation; WELLS FARGO )
23  BANK, N.A.; AND ALL CLAIMING ANY   )
    LEGAL OR EQUITABLE RIGHT, TITLE,   )
24  ESTATE, LIEN, OR INTEREST IN THE   )
    PROPERTY DESCRIBED IN THE          )
25  COMPLAINT ADVERSE TO PLAINTIFFS' )
26  DEED OF TRUST, OR                  )
                                       )
27                                     )
                                       )
28                                     )
                                       )
                                       )

GMAC Mortgage, LLC                  JUDGMENT  -  1
Case No. 12-12032-mg
                                       Exhibit 2

| | |
|---|---|
| 1 | ) |
| 2 | ANY CLOUD ON THE 1ST PRIORITY ) |

ANY CLOUD ON THE 1ST PRIORITY
POSITION DEED OF TRUST and DOES 1
through 25, inclusive,

        Defendants.

_____

AND RELATED CROSS-ACTIONS.

)
)
)
)
)
)
)
)
)
)

Trial in this case was conducted in two phases.  Phase 1 involved trial of Plaintiffs' Verified Complaint, and Phase 2 involved trial of the cross-complaints filed by Jason S. Schermerhorn and Jennifer M. Schermerhorn (collectively, the "Schermerhorns") and Wells Fargo Bank, N.A. ("Wells Fargo").

## I.  **PHASE 1**

Plaintiffs' Verified Complaint alleges three causes of action for declaratory relief, cancellation of instruments, and reformation of full reconveyance.  Phase 1 of this case came on regularly for trial on July 11, 2011, in Department 6 of the above-entitled Court, the Honorable Kenneth G. Ziebarth presiding without a jury.  Plaintiffs and cross-defendants, GMAC Mortgage, LLC fka GMAC Mortgage Corporation ("GMAC") and Executive Trustee Services, LLC fka Executive Trustee Services, Inc. ("ETS") were represented by Michael Y. MacKinnon, Esq. and Kathleen A. Cashman-Kramer, Esq.  Defendant, cross-complainant, and cross-defendant Wells Fargo Bank, N.A. ("Wells Fargo") was represented by Thomas P. Davis, Esq.  Defendant and cross-defendants, Bank of America, N.A. ("B of A") and defendants, Mortgage Electronic Registration Systems, Inc., ("MERS") and PRLAP, Inc. were represented by Jonathan Fink, Esq., and Magdalena D. Kozinska, Esq.

The Court's findings of fact and conclusions of law arising from Phase 1 of the trial were set forth in its State of Decision (Phase One) filed on August 29, 2011.

## II.    PHASE 2

Phase 2 of trial came on regularly for a trial setting conference on September 16, 2011. The parties were represented by the same counsel present for Phase 1 of trial.  Thereafter, the remainder of Phase 2 was tried via transcribed testimony, exhibits and written briefs.

Pursuant to the findings of the Court following Phase 1 of the trial, as well as the stipulations and representations of counsel for the cross-complainants at the trial setting conference, no further proceedings or evidence were necessary or were taken with respect to the Wells Fargo cross-complaint or with respect to the Schermerhorns' first cause of action for cancellation of instruments or fourth cause of action for declaratory relief.  Further, the Schermerhorns dismissed their second cause of action for rescission, and acknowledged that their fifth cause of action for indemnity and contribution had been rendered moot by the Court's prior decisions.  Thus, the only cause of action remaining for the Court to decide in Phase 2 of the trial was whether the Schermerhorns are entitled to any award of general damages on their third cause of action to quiet title or on their defense of the lis pendens filing by the plaintiffs.

The Court's findings of fact and conclusions of law arising from Phase 2 of the trial were set forth in its State of Intended Decision (Phase Two) filed on November 3, 2011.

After full consideration of the evidence, the testimony of the witnesses, the authorities submitted by counsel, and counsel's oral argument, the Court reiterates its findings and conclusions as follows:

### FINDINGS OF FACT AND CONCLUSIONS

1.    The real property which is the subject of this Judgment is located at 33914 Tuscan Creek Way in Temecula, California (the "Property") and legally described as follows:

> Lot 1 of Tract No. 30448, in the County of Riverside, State of California, as per Map recorded in Book 351 at pages 58 to 64, inclusive, of Maps in the Office of the County Recorder of said County.

> Together with any and all easements, rights, benefits, and interests appurtenant to said lot as created and/or established in the CC&R's recorded March 3, 2004 as Instrument No. 2004-0149657, and any amendments thereto, in the official records of said County.

Excepting therefrom and reserving to grantor all oil, gas, minerals and other hydrocarbon substances lying below a depth of 500 feet but without the right of surface entry.

APN# ████████009-6.

2.    The Full Reconveyance recorded in the Official Records of Riverside County on November 29, 2005 as Instrument Number 2005-0984448 (the "Full Reconveyance") and the Substitution of Trustee recorded in the Official Records of Riverside County on November 29, 2005 as Instrument Number 2005-0984449 (the "Substitution of Trustee") were, and currently are, legally effective.

3.    The signatories for the Plaintiffs had both the express and the ostensible authority to execute and record the Substitution of Trustee and the Full Reconveyance.

4.    The Full Reconveyance and Substitution of Trustee were facially valid.

5.    The Fully Reconveyance was neither void *ab initio* nor voidable.

6.    No defendant had constructive notice of the "Rescission : A Notice of Void Reconveyance" recorded on June 17, 2008 in the Official Records of the County of Riverside as Instrument Number 2008-0329369 recorded by Plaintiffs, or the "Rescission of Reconveyance" recorded on May 17, 2010 in the Official Records of Riverside County as Instrument Number 2010-0227286.  Nor did any defendant have constructive notice of the alleged error in the Full Reconveyance recorded on November 29, 2005.

7.    Because the Schermerhorns took title to the Property in good faith, for value, and without actual or constructive notice of any error in the Full Reconveyance recorded on November 29, 2005, the Schermerhorns are bona fide purchasers of the Property for value and, as a result, the Schermerhorns take the Property free and clear of any claims that the Deed of Trust dated March 30, 2005, and recorded April 4, 2005, as Instrument No. 2005-0261680 in the Official Records of Riverside County (the "Deed of Trust") is currently a valid and existing lien on the property and /or is senior to the Schermerhorns' interests.

8.    Because Wells Fargo encumbered the Property in good faith, for value, and without actual or constructive notice of any error in the Full Reconveyance recorded on November 29, 2005, Wells Fargo is a bona fide encumbrancer that takes its interest in the Property free and clear of any claims that the Deed of Trust is currently a valid and existing lien on the Property and/or is senior Wells Fargo's interest in the Property.

9.      Therefore, all of the defendants took title to the Property free and clear of any claim that the Deed of Trust was then, or is currently, a valid and existing lien on the Property.

10.     The Court hereby declines to reform or cancel either the Full Reconveyance or the Substitution of Trustee, and the Court declines to grant Plaintiffs any of the relief prayed for in Plaintiff's Verified Complaint.

Based on the foregoing findings, and good cause appearing therefore,

**IT IS SO ORDERED, ADJUDGED, and DECREED that:**

1.      Defendants, and each of them, are entitled to judgment in their favor on all three causes of action contained in Plaintiffs' Verified Complaint and judgment is hereby entered against Plaintiffs on all three causes of action contained in Plaintiffs' Verified Complaint.

2.      The document entitled "Rescission: A Notice of Void Reconveyance" recorded on June 17, 2008 in the Official Records of the County of Riverside as Instrument Number 2008-0329369 is hereby cancelled and set aside.

3.      The Notice of Default recorded on August 19, 2008 in the Official Records of the County of Riverside as Instrument Number 2008-0458459 is hereby cancelled and set aside.

4.      The document entitled "Rescission of Reconveyance" recorded on May 17, 2010 in the Official Records of Riverside County as Instrument Number 2010-0227286 is hereby cancelled and set aside.

5.      The Rescission: A Notice of Void Reconveyance, Rescission of Reconveyance, and Notice of Default constitute clouds on Wells Fargo Bank N.A. and the Schermerhorns' title to the Property and as a result of this Judgment shall be removed from the Official Records of Riverside County by way of this Judgment which shall be recorded on title to the Property legally described herein.

6.      As to the Schermerhorns' cross-complaint, judgment is hereby entered in favor of the Schermerhorns and against GMAC and ETS on the first and third causes of action contained in the Schermerhorns' first amended cross-complaint.  However, after full consideration of the evidence, the testimony of the witnesses, the authorities submitted by counsel, and counsel's oral argument, the Court finds as to Phase 2 of trial on the Schermerhorns' and Wells Fargo's cross-complaints that the Schermerhorns are not entitled to general damages as to their third cause of action to quiet title or to their defense of the lis pendens recorded by Plaintiffs on December 1, 2009 in the Official Records of Riverside County as Instrument Number 2009-616235.

7.    The lis pendens filed by Plaintiffs with respect to the subject property is hereby expunged.  The real property which is the subject of this Judgment is located at 33914 Tuscan Creek Way in Temecula, California (The "Property"), and is legally described as follows:

> Lot 1 of Tract No. 30448, in the County of Riverside, State of California, as per Map recorded in Book 351 at pages 58 to 64, inclusive, of Maps in the Office of the County Recorder of said County.

> Together with any and all easements, rights, benefits, and interests appurtenant to said lot as created and/or established in the CC&R's recorded March 3, 2004 as Instrument No. 2004-0149657, and any amendments thereto, in the official records of said County.

> Excepting therefrom and reserving to grantor all oil, gas, minerals and other hydrocarbon substances lying below a depth of 500 feet but without the right of surface entry.

> APN#███████009-6.

Issues concerning costs, including claims for attorney's fees, shall be adjudicated via post-judgment proceedings and thereafter interlineated herein:

a.    The Schermerhorns are awarded judgment against Plaintiffs and costs in the total amount of $_____.

b.    Bank of America is also awarded judgment against Plaintiffs and costs in the amount of $_____.

c.    Wells Fargo is also awarded against Plaintiffs and costs in the total amount of $_____.

IT IS SO ORDERED, ADJUDGED AND DECREED.

DATED: January _10_, 2012

_Kenneth B Ziebarth_
THE HONORABLE KENNETH G. ZIEBARTH
JUDGE OF THE SUPERIOR COURT (Ret.)

## PROOF OF SERVICE BY MAIL

### Case No. RIC 541193

I, the undersigned, say: I am a resident of or employed in the County of Riverside, over the age of 18 years and not a party to the within action or proceeding. My residence or business address is 46200 Oasis Street, Indio, California 92201.

That on January 10, 2012, I served a copy of the paper to which this proof of service is attached, **Judgment** by depositing said copy enclosed in a sealed envelope with postage thereon fully prepaid (addressed as follows) in a Riverside County Central Mail depository. Said depository is emptied daily and deposited (with postage thereon fully prepaid) in a United States Postal Service mailbox, in the City of Indio, State of California:

| | |
|---|---|
| Stephen E. Ensberg, Esq.<br>Law offices of Stephen E. Ensberg<br>1609 West Garvey Ave., North<br>West Covina, CA 91790<br>*Attorneys for Plaintiffs* | Michael Y. MacKinnon, Esq.<br>Kathleen A. Cashman-Kramer, Esq.<br>Pyle, Sims, Duncan & Stevens<br>401 "B" Street, #1500<br>San Diego, CA 92101<br>*Attorneys for Defendants Jason S.*<br>*Schermerhorn, and Jennifer M.*<br>*Schermerhorn* |
| Jonathan D. Fink, Esq.<br>Wright Finlay & Zak<br>4665 MacArthur Ct., Ste. 280<br>Newport Beach, CA 92660<br>*Attorneys for Mortgage Electronic*<br>*Registration Systems, Inc., Bank of*<br>*America, N.A., and PRLAP Inc.* | Thomas P. Davis, Esq.<br>Davis Law, A Professional Law Corp.<br>580 Broadway, Ste. 301<br>Laguna Beach, CA 92651<br>*Attorneys for Wells Fargo Bank, N.A.* |

I certify under penalty of perjury that the foregoing is true and correct.

Executed on January 10, 2012, at Indio, California.

K. Amidei

K. Amidei

GMAC Mortgage, LLC
Case No. 12-12032-mg
*Jointly Administered with 12-12020-mg Residential Capital, LLC*
Exhibit Divider Page

MC-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Kathleen A. Cashman-Kramer (CBN
PYLE SIMS DUNCAN & STEVENSON
401 B Street, Suite 1500
San Diego, CA 92101
TELEPHONE NO.: (619) 687-5200    FAX NO.: (619) 687-5210
ATTORNEY FOR *(Name):* Jason S. Schermerhorn and Jennifer M. Schermerhorn

INSERT NAME OF COURT, JUDICIAL DISTRICT, AND BRANCH COURT, IF ANY:
Superior Court of California - County of Riverside

PLAINTIFF: GMAC Mortgage, LLC, et al.

DEFENDANT: Mark Tozier, et al.

| MEMORANDUM OF COSTS (SUMMARY)- AMENDED | CASE NUMBER: RIC 541193 |
|---|---|

The following costs are requested:

| | TOTALS |
|---|---|
| 1. Filing and motion fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1. $ | 1,040.00 |
| 2. Jury fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2. $ | 0.00 |
| 3. Jury food and lodging . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3. $ | 0.00 |
| 4. Deposition costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4. $ | 12,386.86 |
| 5. Service of process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5. $ | 518.65 |
| 6. Attachment expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6. $ | 0.00 |
| 7. Surety bond premiums . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7. $ | 0.00 |
| 8. Witness fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8. $ | 0.00 |
| 9. Court-ordered transcripts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9. $ | 0.00 |
| 10. Attorney fees *(enter here if contractual or statutory fees are fixed without necessity of a court determination; otherwise a noticed motion is required)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10. $ | 0.00 |
| 11. Models, blowups, and photocopies of exhibits . . . . . . . . . . . . . . . . . . . . 11. $ | 0.00 |
| 12. Court reporter fees as established by statute . . . . . . . . . . . . . . . . . 12. $ | 518.00 |
| 13. Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13. $ | 0.00 |
| TOTAL COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | 14,463.51 |

I am the attorney, agent, or party who claims these costs. To the best of my knowledge and belief this memorandum of costs is correct and these costs were necessarily incurred in this case.

Date: February 16, 2012

. . . . . . . . Kathleen A. Cashman-Kramer . . . . . .
(TYPE OR PRINT NAME)

▶ _(signature)_
(SIGNATURE)

*(Proof of service on reverse)*

| Form Approved for Optional Use Judicial Council of California MC-010 [Rev. July 1, 1999] | **MEMORANDUM OF COSTS (SUMMARY)** AMENDED | Code of Civil Procedure, §§ 1032, 1033.5 |
|---|---|---|

GMAC
Case No. 12-12032-mg                    Exhibit 3

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| GMAC, et al. v. Tozier, et al. | RIC 541193 |

## PROOF OF ☐ MAILING   ☐ PERSONAL DELIVERY

1. At the time of mailing or personal delivery, I was at least 18 years of age and **not a party** to this legal action.
2. My residence or business address is *(specify)*: 401 B Street, Suite 1500, San Diego, CA 92101

3. I mailed or personally delivered a copy of the *Memorandum of Costs (Summary)* as follows *(complete either a or b)*:
   a. ☑ **Mail.** I am a resident of or employed in the county where the mailing occurred.
      (1) I enclosed a copy in an envelope AND
         (a) ☐ **deposited** the sealed envelope with the United States Postal Service with the postage fully prepaid.
         (b) ☑ **placed** the envelope for collection and mailing on the date and at the place shown in items below following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.
      (2) The envelope was addressed and mailed as follows:
         (a) Name of person served: See Attached List
         (b) Address on envelope:

         (c) Date of mailing: February 16, 2012
         (d) Place of mailing *(city and state)*: San Diego, CA  92101

   b. ☐ **Personal delivery.** I personally delivered a copy as follows:
      (1) Name of person served:
      (2) Address where delivered:

      (3) Date delivered:
      (4) Time delivered:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: February 16, 2012

. . . . . . . . . . Isabel Aguila . . . . . . . . . . . . .        ▶ _____
         (TYPE OR PRINT NAME)                                                    (SIGNATURE OF DECLARANT)

## ATTACHMENT TO MEMORANDUM OF COSTS (PROOF OF MAILING)

E. Ensberg, Esq.
Law Offices of Stephen E. Ensberg
1609 West Garvey Avenue North
West Covina, CA 91790

Jonathan D. Fink, Esq.  and Magdalena Kozinska, Esq.
Wright Finlay & Zak LLP
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660

Thomas Davis, Esq. and Nicole Cohrs, Esq.
Davis Law
580 Broadway, Suite 301
Laguna Beach, CA 92651

Hon Kenneth G. Ziebarth (Ret.)
37-274 Festival Drive
Palm Desert, CA 92211

MC-011

| SHORT TITLE: GMAC, et al. v. Tozier, et al. | CASE NUMBER: RIC 541193 |
|---|---|

**MEMORANDUM OF COSTS (WORKSHEET) - AMENDED**

**1. Filing and motion fees**

| | Paper filed | Filing fee |
|---|---|---|
| a. | Answer to Complaint (February 2010) | $ 740.00 |
| b. | Stipulation to Amend Complaint (7/22/10) | $ 20.00 |
| c. | Motion to Amend Complaint (6/29/10) | $ 40.00 |
| d. | Motion for Summary Judgment (10/22/10) | $ 200.00 |
| e. | Ex Parte Motion re: BOA PMK depo (6/13/11) | $ 40.00 |
| f. | | $ |

g. ☐ Information about additional filing and motion fees is contained in Attachment 1g.

TOTAL   1.   $ 1,040.00

**2. Jury fees**

| | Date | Fee & mileage |
|---|---|---|
| a. | | $ |
| b. | | $ |
| c. | | $ |
| d. | | $ |

e. ☐ Information about additional jury fees is contained in Attachment 2e.

TOTAL   2.   $ 0.00

**3. Juror food:** $ _____   **and lodging:** $ _____     TOTAL   3.   $ 0.00

**4. Deposition costs**

| | Name of deponent | Taking | Transcribing | Travel | Video-taping | Subtotals |
|---|---|---|---|---|---|---|
| a. | Darien McDonald | $ | $ 665.10 | $ | $ | $ 665.10 |
| b. | Marie Cruz | $ | $ 546.90 | $ | $ | $ 546.90 |
| c. | Tamara Savery | $ | $ 601.50 | $ | $ | $ 601.50 |
| d. | Jason Schermerhorn | $ | $ 465.00 | $ | $ | $ 465.00 |

e. ☑ Information about additional deposition costs is contained in Attachment 4e.

TOTAL   4.   $ 2,278.50

(Continued on reverse)     Page 1 of 4

Form Approved for Optional Use
Judicial Council of California
MC-011 [Rev. July 1, 1999]

**MEMORANDUM OF COSTS (WORKSHEET)**
AMENDED

Code of Civil Procedure,
§§ 1032, 1033.5

GMAC
Case No. 12-12032-mg          Exhibit 3          Exhibit 3

| SHORT TITLE: GMAC, et al. v. Tozier, et al. | CASE NUMBER:<br>RIC 541193 |
| --- | --- |

5. **Service of process**

| | Name of person<br>served | Public<br>officer | Registered<br>process | Publication | Other<br>(specify) |
| --- | --- | --- | --- | --- | --- |
| a. | LSI Title (10/19/10) | $ _____ | $ 235.50 | $ _____ | $ _____ |
| b. | Ron Murray (6/27/11) | $ _____ | $ 89.75 | $ _____ | $ _____ |
| c. | MERS (3/11/10) | $ _____ | $ 105.65 | $ _____ | $ _____ |

d. ☑ Information about additional costs for service of process is contained in Attachment 5d.

TOTAL   5.   $ 518.65

6. **Attachment expenses** (specify): . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6.   $ 10,105.39
   Depositions Costs detailed at p. 4, 4.e.

7. **Surety bond premiums** (itemize bonds and amounts): . . . . . . . . . . . . . . . . . . . . . . . . .   7.   $ 0.00

8. a. **Ordinary witness fees**

| | Name of witness | Daily fee | Mileage | Total |
| --- | --- | --- | --- | --- |
| (1) | _____ | _____ days at _____ $/day | _____ miles at _____ ¢/mile . . . . | $ 0.00 |
| (2) | _____ | _____ days at _____ $/day | _____ miles at _____ ¢/mile . . . . | $ _____ |
| (3) | _____ | _____ days at _____ $/day | _____ miles at _____ ¢/mile . . . . | $ _____ |
| (4) | _____ | _____ days at _____ $/day | _____ miles at _____ ¢/mile . . . . | $ _____ |
| (5) | _____ | _____ days at _____ $/day | _____ miles at _____ ¢/mile . . . . | $ _____ |

(6) ☐ Information about additional ordinary witness fees is contained in Attachment 8a(6).

SUBTOTAL 8a.   $ 0.00

(Continued on next page)                Page __2__ of __4__

MC-011 [Rev. July 1, 1999]                **MEMORANDUM OF COSTS (WORKSHEET)**
                                                          AMENDED

GMAC                                            Exhibit 3
Case No. 12-12032-mg

| SHORT TITLE: GMAC, et al. v. Tozier, et al. | CASE NUMBER: |
|---|---|
| | RIC 541193 |

**MEMORANDUM OF COSTS (WORKSHEET)** *(Continued)*

8.  b.  **Expert fees** *(per Code of Civil Procedure section 998)*

Name of witness          Fee

(1) _____  _____ hours at $ _____ /hr  ...  $ 0.00

(2) _____  _____ hours at $ _____ /hr  ...  $ _____

(3) _____  _____ hours at $ _____ /hr  ...  $ _____

(4) _____  _____ hours at $ _____ /hr  ...  $ _____

(5) ☐ Information about additional expert witness fees is contained in Attachment 8b(5).

SUBTOTAL 8b.  $ 0.00

c.  **Court-ordered expert fees**

Name of witness          Fee

(1) _____  _____ hours at $ _____ /hr  ...  $ 0.00

(2) _____  _____ hours at $ _____ /hr  ...  $ _____

(3) ☐ Information about additional court-ordered expert witness fees is contained in Attachment 8c(3).

SUBTOTAL 8c.  $ 0.00

TOTAL (8a, 8b, & 8c)  8.  $ 0.00

9.  **Court-ordered transcripts** *(specify):* .................................................  9.  $ 0.00

10. **Attorney fees** *(enter here if contractual or statutory fees are fixed without necessity of a court determination; otherwise a noticed motion is required):* .......................  10.  $ 0.00

11. **Models, blowups, and photocopies of exhibits** *(specify):*  copies of trial exhibits for court and witnesses ................................  11.  $ 0.00

12. **Court reporter fees** *(as established by statute)*

a.  *(Name of reporter):* Laurie Lavitt _____  Fees:  $ 518.00 _____

b.  *(Name of reporter):* _____  Fees:  $ _____

c.  ☐ Information about additional court reporter fees is contained in Attachment 12c.

TOTAL 12.  $ 518.00

13. **Other** *(specify):* ..........................................................  13.  $ 0.00

TOTAL COSTS ...............................................................  $ 14,463.51

MC-011 [Rev. July 1, 1999]

*(Additional information may be supplied on the reverse)*  Page  3  of  4

**MEMORANDUM OF COSTS (WORKSHEET)**
AMENDED

GMAC
Case No. 12-12032-mg

Exhibit 3

| SHORT TITLE: GMAC, et al. v. Tozier, et al. | CASE NUMBER:<br>RIC 541193 |
|---|---|

### MEMORANDUM OF COSTS (WORKSHEET) *(Continued)* - AMENDED

1  4e. Additional Depositions Costs

2  Jennifer Schermerhorn - transcribing: $241.80
3  Rhonda Lane, PMK of LSI Title - transcribing: $885.40
     Travel and related expenses to attend deposition of PMK: $117.30
4  Melissa Hjorten, PMK of Regional Trustee Services - transcribing: $357.15
     Travel to Seattle for Melissa Hjorten - $713.80 (airfare, taxi cabs to and from airport, parking at airport)
5  Scott Zeitz and Shelley Moore, PMK of Plaintiffs - transcribing: $1,672.10
     Travel and related expenses to attend Plaintiffs' PMK depositions in Santa Ana: $90.78
6  Tamara Kerr, PMK of First American - transcribing: $823.25
     Travel and related expenses to attend PMK deposition: $133.61
7  Edward Beierle, Plaintiffs' Expert - transcribing: $957.25
8  John Aube, Plaintiffs' expert - transcribing: $232.00
     Travel and related expenses to attend depositions of Plaintiffs' experts: $77.94
9  Lore Hilberg, Defendants' expert - transcribing: $1,198.20
     Travel and related expenses to attend deposition of Defendants' expert: $140.16
10  John Demas, Defendants' expert - transcribing: $917.20
     Travel and related expenses to attend deposition of Defendants' expert: $124.44
11  Sean Chibnik, PMK of Bank of America - transcribing $756.23
     Cost of obtaining meeting room in which to take Mr. Chibnik's deposition: $516.93
12  Travel and related expenses to attend deposition of Bank of America PMK: $149.82

13  Total for 4e: $10,105.39

14

15  Additional expense re: service of process - 5.d., p. 2:

16  service of cross-complaint on Bank of America - March 11, 2010 - $87.75 (this amount is included in the
17  Total amount shown on p. 2, para. 5).

18

19

20

21

22

23

24

25

26

27
                                                              Page __4__ of __4__

GMAC                              Exhibit 3
Case No. 12-12032-mg