**<u>Exhibit 1</u>**

**Supplemental Declaration**

8

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**SUPPLEMENTAL DECLARATION OF LAUREN GRAHAM DELEHEY
IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S REPLY IN
SUPPORT OF DEBTORS' OBJECTION TO CLAIM NO. 5420 OF VACHAGAN ABED-
STEPHEN AND SUSIE ABED-STEPHEN**

I, Lauren Graham Delehey, declare as follows:

**I.     BACKGROUND AND QUALIFICATIONS**

1.      I serve as Chief Litigation Counsel for the ResCap Liquidating Trust ("Liquidating Trust") established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] in the above-captioned chapter 11 cases (the "Chapter 11 Cases").[1] During the Chapter 11 Cases, I served as Chief Litigation Counsel in the legal department at Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other post-effective date debtors (collectively, the "Debtors"). I have served as in-house litigation counsel since I joined ResCap on August 1, 2011.

2.      In my role as Chief Litigation Counsel at ResCap, I was responsible for the management of litigation. In my role as Chief Litigation Counsel for the Liquidating Trust, I

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the *The ResCap Borrower Claims Trust's Reply in Support of Debtors' Objection to Claim No. 5420 of Vachagan Abed-Stephen and Susie Abed-Stephen* (the "Reply") and the *Debtors' Objection to Claim No. 5420 of Vachagan Abed-Stephen and Susie Abed-Stephen* [Docket No. 5786] (the "Objection").

1

ny-1123050

am providing services to the Liquidating Trust and the Borrower Trust as necessary, including in connection with the prosecution of objections to claims. I am authorized to submit this supplemental declaration (the "Supplemental Declaration") in support of the Reply.

3. In my capacity as Chief Litigation Counsel, I am generally familiar with the Debtors' litigation matters, including the California actions involving Vachagan Abed-Stephen and Susie Abed-Stephen (the "Claimants"). All statements in this Supplemental Declaration are based upon my personal knowledge; information supplied or verified by former personnel in departments within the Debtors' various business units; my review of the Debtors' litigation case files, books, and records, as well as other relevant documents; my discussions with other former members of the Debtors' legal department; and information supplied by the Borrower Trust's consultants. In making my statements based on my review of the Debtors' litigation case files, books and records, relevant documents, and other information prepared or collected by the Debtors' former employees and the Borrower Trust's consultants, I have relied upon these employees and consultants accurately recording, preparing, collecting, or verifying any such documentation and other information. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

## II.   THE CLAIMANTS' RELATIONSHIP WITH THE DEBTORS

4. The Claimants were Borrowers under a loan evidenced by a promissory note (the "Note") in the principal amount of $920,000 executed in April 2006 in favor of First Federal Bank of California, which was secured by a deed of trust on the Claimants' home located at 1606 Glenmont Drive, Glendale, California. A copy of the Note is annexed hereto as Exhibit A.

5. After the filing of Objection, subsequent diligence of the Debtors' books and records has revealed one inaccuracy in the Objection and my original declaration (the

2

"<u>Delehey Declaration</u>").  Wells Fargo is not the "investor" of the Loan as previously stated, *see* Objection (¶ 12); Delehey Declaration (¶ 3), but rather is the trustee of HarborView Mortgage Loan Trust 2007-3 that securitized the Note.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  January 17, 2014

       /s/ Lauren Graham Delehey
Lauren Graham Delehey
Litigation Counsel for the ResCap
Liquidating Trust

**Exhibit A to Declaration**

**Exhibit A to Declaration**

NOTE

**AML With Payrate**
**NOTE SECURED BY DEED OF TRUST**
**(Adjustable Interest Rate Loan - 12 MAT Index)**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES, MY PRINCIPAL BALANCE INCREASES AND MY INTEREST RATE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

U.S. $ 920,000.00                                                                      Santa Monica, California

Loan No.: ▮▮▮▮▮▮                                                                           April 12, 2006

1606 Glenmont Drive, Glendale, CA 91207
                                                      (Property Address)

1. In return for a loan that I have received, I promise to pay

   **NINE HUNDRED TWENTY THOUSAND AND 00/100**

   Dollars (U.S. $ 920,000.00 ) (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is First Federal Bank of California, a federal savings bank, its successors and/or assignees, or anyone to whom this Note is transferred. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. INTEREST
   (a) Interest Rate
   Interest will be charged on the unpaid principal until the full amount of principal has been paid. I will pay interest at the yearly rate of **6.743%** . This is my initial interest rate. The interest rate I will pay may change. The interest rate provided for in this Section 2 is the rate I will pay both before and after any default described in Section 8 of this Note. Interest will be charged on the basis of a twelve-month year and a thirty-day month.
   (b) Interest Change Dates
   The interest rate I will pay may change on the **1st** day of **June, 2006** and on that day each month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

   (c) Interest Rate Limit
   So long as I own the property securing this Note, my interest rate will never be greater than **12.075%**, or lower than **3.125%** . If this property is sold or transferred, with the prior consent of Lender as provided in Paragraph 12, the maximum interest rate will be **5.332%** percentage points above the greater of:

       (i) my initial interest rate, or
       (ii) my interest rate at the time of sale or transfer.

   (d) The Index
   Beginning with the first Interest Change Date, the interest rate will be based on an index (the "Index"). The Index is determined by the Lender based upon the twelve-month average of monthly yields on actively traded U. S. Treasury Securities adjusted to a constant maturity of one year. Information on such U.S. Treasury Securities rates is made available by the Federal Reserve Board in the Federal Reserve Statistical release entitled "Selected Interest Rates (H.15)". The twelve most recent such U.S. Treasury Securities rates available as of the date 15 days before each Interest Change Date are used to calculate the "Current Index."
   If the Index or any Index previously substituted under this Section 2(d) is no longer available, or is otherwise unpublished, or at Lender's sole discretion is determined to be substantially recalculated, the Lender may choose a new Index. The Lender will give me notice of the choice. The Lender shall next adjust the Margin set forth in Section 2(e) of this Note based upon the value of the substituted index as of the last preceding Interest Change Date on which the prior Index was available or the date of this Note, whichever occurs later, such that the sum of the substituted index and the adjusted Margin will be similar to the sum of the prior index and the Margin set forth in Section 2(e) of this Note as of such date. The most recent value of the substituted index, as announced from time to time, and such adjusted Margin shall become the Index and the Margin for purposes of Section 2 of this Note.

   (e) Calculation of Interest Rate Changes
   Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **3.125%** percentage points (the "Margin") to the Current Index. Subject to the limit in Section 2(c), this amount will be my new interest rate until the next Interest Change Date.

3. PAYMENTS
   (a) Time and Place of Payments
   I will pay principal and interest by making payments every month.
   I will make my monthly payments on the first day of each month beginning on **June 1, 2006**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on **May 1, 2046,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."
   I will make my monthly payments at 401 Wilshire Boulevard, Santa Monica, California 90401, or at a different place if required by the Note Holder. Principal, interest and charges are payable in lawful money of the United States.

**RIDER TO NOTE SECURED BY DEED OF TRUST - PREPAYMENT PENALTY RIDER**

**OWNER OCCUPANCY RIDER ATTACHED HERETO AND MADE A PART HEREOF**

FUN 10401 (01-06-2004)                    PAGE ONE

Loan No.: ███████

**(b) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of **TWO THOUSAND FOUR HUNDRED NINETY-TWO AND 90/100 Dollars (U.S. $$ 2,492.90).** This amount may change.

My initial monthly payment may not constitute a "full payment" at the interest rate shown in paragraph 2 above. My initial monthly payment is calculated based on a payment rate of 1.375% %. This lower payment amount will not reflect the actual interest rate that is being charged on my Note.

**(c) Payment Change Dates**

My monthly payment may change as required by Section 3(d) below beginning on the 1st day of **June, 2007**, and on that day every twelfth (12th) month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Sections 3(f) or 3(g) below requires me to pay the Full Payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Sections 3(f) or 3(g) below.

**(d) Calculation of Monthly Payment Changes**

At least 25 days but not more than 120 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the remaining unpaid principal in full on the maturity date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." The Note Holder will then calculate the amount of my monthly payment due the month preceding the Payment Change Date multiplied by the number 1.075 in the event the Full Payment is greater than such monthly payment. The result of this calculation is called the "Limited Payment." Unless Sections 3(f) or 3(g) below requires me to pay a different amount, I will pay the Limited Payment.

**(e) Additions / Reductions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient at the monthly payment date to repay the unpaid principal in full on the maturity date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder will also charge interest on the amount of this difference. The interest rate on the interest added to principal will be the rate required by Section 2 above.

My monthly payment could also be greater than the amount necessary to repay the principal in full on the maturity date in substantially equal payments. In that case, the Note Holder will subtract the amount of the interest portion of the monthly payment from the amount of the monthly payment and will then subtract this difference from the unpaid principal.

**(f) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to **ONE HUNDRED TEN AND 00/100 (110.00%)** of the principal amount I originally borrowed. My unpaid principal could exceed that maximum amount due to the Limited Payments and /or interest rate increases. If so, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my current interest rate in substantially equal payments. At this time I will not have the option of paying the Limited Payment.

**(g) Required Full Payment**

On **June 1, 2011**, and on the same day every five years thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. At this time I will not have the option of paying the Limited Payment. I will also begin the Full Payment as my monthly payment on the final Payment Change Date.

**4. NOTICES OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment at least 25 days before the effective date of any change. The notice will contain the new interest rate and/or the payment amount applicable to my loan. The notice will also include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments, without paying any prepayment charge. The Note Holder may require that any partial prepayments be made on the date monthly payments are due and be in the amount of that whole part of one or more monthly payments which would be applied towards principal. If I make a partial prepayment, there will be no changes in the amount or due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits.

FUN 10402 (OS 094) (06-28-2005)                    PAGE TWO

ın No.: ▮▮▮▮

7. **LEGISLATION AFFECTING LENDER'S RIGHT**
   If enactment or expiration of applicable laws or regulation has the effect of rendering any provision of the Note or Deed of Trust relating to payment of interest or principal, defaults, or transfer of the property unenforceable according to its terms, the Note Holder, at its option, may require immediate payment in full of all sums secured by the Deed of Trust and may invoke any remedies permitted herein.

8. **BORROWER'S FAILURE TO PAY AS REQUIRED**
   (a) Late Charges for Overdue Payments
   If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be six percent of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
   (b) Accrual of Interest on Unpaid Balance
   In addition to any late charge described above and at the option of the Note Holder, all accrued interest which is not paid when due shall also bear interest at the same rate as the interest on the unpaid principal balance.
   (c) Default
   If I do not pay the full amount of each monthly payment on the date it is due, or if I do not keep the promises I make in this Note or the Deed of Trust securing it, I will be in default.
   (d) Notice of Default
   If I am in default, the Note Holder may send me a written notice telling me that if I do not correct the default by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.
   (e) No Waiver by Note Holder
   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
   (f) Payment of Note Holder's Costs and Expenses
   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Such expenses include for example, reasonable attorneys' fees.

9. **GIVING OF NOTICES**
   Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or a different address if I give the Note Holder a notice of my different address.
   Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(a) above or at a different address if I am given a notice of that different address.

10. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**
    If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

11. **WAIVERS**
    I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

12. **SECURITY**
    The Note is secured by a Deed of Trust dated the same date as this Note, and said Deed of Trust contains the following clause, which is incorporated herein: **"Assumptions"**. During the term of the Note, the Lender shall not exercise its right to declare all sums due, as provided in paragraph 14 of this Deed of Trust, in the event of the sale or transfer of the Property to a credit worthy buyer so long as such buyer applies for the assumption of the loan in advance of accepting title to the Property, and so long as the buyer, in the Lender's sole and absolute judgment, qualifies for the loan evidenced by the Note, executes an assumption agreement acceptable to Lender, and pays Lender any fees required by Lender assessed in connection with an assumption; and so long as the loan is current and the Property qualifies for the loan at the same or lower loan to value ratio than the original loan balance bore to the then fair market value of the Property. The Note may not be assumed unless the legal and beneficial title to the Property has at all times remained with Borrower."

PAGE THREE

FUN 10403

an No.: ▇▇▇▇▇

**13. CLERICAL ERRORS**

In the event that the Lender at any time discovers that this Note or the Deed of Trust or any other document related to this loan (the "Loan Documents") contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender to re-execute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

**14. LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**BORROWERS**

_____
Vachegan Abed-Stephen

_____
Susie Abed-Stephen

PAGE FOUR

DO NOT DESTROY THIS NOTE: When paid, this Note, with the Deed of Trust securing it, must be surrendered to Trustee for cancellation before reconveyance will be made.

FUN 10404

WITHOUT RECOURSE
PAY TO THE ORDER OF
FIRST FEDERAL BANK OF CALIFORNIA
BY: _____
MARIA LOURDES OCHOA
Senior Vice President

NTRO

**FIRST FEDERAL BANK OF CALIFORNIA**
401 Wilshire Boulevard, Santa Monica, California 90401

**OWNER-OCCUPANCY ADDENDUM TO NOTE**

Loan No. ▓▓▓▓▓▓▓                                                    Date: April 12, 2006

FOR VALUE RECEIVED, the undersigned (the "Borrower" or "Trustor") agrees that the following provisions shall be incorporated into that certain note (the "Note") of even date executed by the Borrower, in favor of First Federal Bank of California (the "Lender" or "Beneficiary"), as beneficiary, which Note is secured by a deed of trust (the "Deed of Trust") of even date. To the extent that the provisions of this Rider are inconsistent with the provisions of the Note or Deed of Trust, the provisions of this Rider shall prevail and shall supersede any such inconsistent provisions of the Note or Deed of Trust.

1. **OWNER OCCUPANCY**

As an inducement for Lender to make the loan secured by the Deed of Trust, Borrower has represented to Lender that the Property will be occupied, within ninety days of the date of recording of the Deed of Trust, as the Borrower's personal residence, and will not be used as investment property (i.e. the Property will be "owner-occupied"), unless extenuating circumstances exist which are beyond Borrower's control and as to which Borrower notifies Lender in writing. Borrower acknowledges that Lender would not have agreed to make the loan if the Property were not to be owner-occupied and that the interest rate set forth on the face of the Note and other terms of the loan were determined as a result of the Borrower's representation that the Property would be owner-occupied. Borrower further acknowledges that, among other things, purchasers of loans (including agencies, associations and corporations created by the federal and state government for the purchase of loans) typically require that properties securing loans acquired by such purchasers be owner-occupied, and will reject loans for which the security properties are not owner-occupied; Lender's ability to sell a loan or an interest in a loan (which it often does in the ordinary course of business) will be impaired where a security property is not owner-occupied; the risks involved and the costs of holding and administering a loan are often higher in the case of a loan where the security property is not owner-occupied; and, if and when Lender makes a loan on non-owner-occupied property, Lender typically makes such a loan on terms different from those of loans secured by owner-occupied properties.

In order to provide Lender with evidence of the owner-occupancy of the Property, the Borrower agrees to provide Lender with documentation reasonably requested by Lender for the purpose of verification of owner-occupancy. This documentation may include, but is not limited to, utility bills, copies of the Borrower's most recent telephone billing statement and any tax return schedules showing investment property owned by the Borrower. Such documentation shall assist Lender in verifying owner-occupancy, but shall not in itself be deemed proof of owner-occupancy if, in Lender's judgment, other evidence indicates that the Property is not occupied by the Borrower.

Accordingly, in the event the Property is not occupied, within the applicable time described above, as a personal residence of the Borrower, or the Borrower fails to provide the documentation required hereunder in a timely manner, the Lender may, at its option, do the following:

A.    If at such time the loan meets the Lender's normal requirements as to loan-to-value ratio, property type, etc. for a loan secured by non-owner occupied property, the Lender may (a) permanently increase the interest rate on the Note by an additional one percent (1.00%); and (b) add one percent (1.00%) of the face amount of the Note, representing the additional loan fee, to the unpaid principal balance of the Note.

B.    Alternatively, the Lender may declare all sums secured by the Deed of Trust to be immediately due and payable.

The rights of Lender hereunder shall be in addition to any other rights of Lender under the Note and Deed of Trust or allowed by law.

(FUN 30061) (OS074) (05-04-2005)            Page 1

Lo. No. ■■■■■■

## 2. PREPAYMENT CHARGE

In addition to the foregoing, in the event that the Lender determines, in its sole and absolute judgment, that Borrower has failed to occupy the Property by the ninetieth day following recording of the Deed of Trust as Borrower's personal residence as described in Paragraph 1 above, a prepayment charge shall be payable thereafter in connection with any prepayment made under the Note. In such case, the prepayment charge shall be the greater of (a) the prepayment charge set forth in the Note and any Rider thereto, if any, or (b) the following prepayment charge:

    A. For any prepayment made within **three years** of the date of the Note, the prepayment charge shall be the greater of: (i) one percent of the unpaid principal balance of the Note on the date of prepayment or (ii) the amount determined under the following schedule:

        First Year:      Three percent of the principal amount being prepaid.

        Second Year:   Two percent of the principal amount being prepaid.

        Third Year:     One percent of the principal amount being prepaid.

    B. If prepayment is made after such three year period, there shall be no prepayment charge due.

## 3. FEES OR COSTS

    Any legal fees or administrative costs incurred directly or indirectly by Lender as a result of the inability to sell the loan may be added to the unpaid principal balance of the Note.

## 4. EFFECT OF RIDER

    Except as otherwise provided in this Rider, all of the provisions of the Note and Deed of Trust shall remain in full force and effect.

In this rider, the singular shall include the plural.

Loan .

IN WITNESS WHEREOF, the Borrower has executed this Rider on the ___13th___ day of ___April___, 20_06_.

BORROWER(S):

_____
Vachegan Abed-Stephen

_____
Susie Abed-Stephen

FUN 30064 (2003-10-31)                Page 3 of 3

PPPR

FIRST FEDERAL BANK
OF CALIFORNIA
Corporate Office
401 Wilshire Boulevard
Santa Monica, CA 90401-9490

Loan No.: [redacted]

**PREPAYMENT CHARGE RIDER TO
NOTE SECURED BY DEED OF TRUST**

This Rider is attached to and made part of that certain Note Secured by Deed of Trust (the "Note") dated April 12, 2006 by and between

Vachegan Abed-Stephen and Susie Abed-Stephen, husband and wife as joint tenants

("Borrower"), and FIRST FEDERAL BANK OF CALIFORNIA, ("Lender" or "Note Holder"). All terms used herein shall have the meanings ascribed to such terms in the Note. To the extent the provisions contained herein conflict with any provision contained in the Note, the provisions hereof shall control.

1. Paragraph 5 of the Note is hereby modified in its entirety to read as follows:

   "5. BORROWER'S RIGHT TO REPAY

   I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may make a full prepayment or partial prepayments.

   Over the first three Loan Years, I may prepay an aggregate amount not exceeding $ 184,000.00 (20 percent of the original loan amount; the "Permitted Prepayment") without penalty. During the first three Loan Years, if I prepay an amount in excess of the Permitted Prepayment, I will pay to the Note Holder a prepayment charge pursuant to the following schedule:

   FIRST LOAN YEAR:    $ 27,600.00

   SECOND LOAN YEAR:   $ 18,400.00

   THIRD LOAN YEAR:    $ 9,200.00

   After completion of the third Loan Year, there will be no prepayment charges for any full or partial prepayments. As used in this Note, "Loan Year" means each year during the term of this Note commencing thirty days before the first payment due date.

   The prepayment charge shall be payable upon a prepayment as set forth above, whether voluntary or involuntary, including but not limited to a prepayment resulting from the Note Holder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty, accrued but unpaid interest that has been added to principal.

   The Note Holder may require that any partial prepayments be made on the date monthly payments are due and be in the amount of one or more monthly payments which would be applied towards principal. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not relieve me of the obligation to make the installments each and every month until the Note is paid in full. If I make a partial prepayment, there will be no changes in the amount or due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase."

PP3YR01 (06-16-2005) OS 280             Page 1

Loan No.: ▮

2. Other than as expressly modified herein, the provisions of the Note shall remain in full force and effect, according to their terms.

BORROWER(S):

_____
Vachegan Abed-Stephen

_____
Susie Abed-Stephen