**Hearing Date and Time: January 30, 2014 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: January 23, 2014 at 4:00 p.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
P. Bradley O'Neill
Douglas H. Mannal
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| RESIDENTIAL CAPITAL, LLC, et al., | : | Case No. 12-12020 (MG) |
|  | : |  |
| Debtors. | : | Jointly Administered |
|  | : |  |

**OBJECTION OF THE LIQUIDATING TRUST TO REQUEST OF VERIZON
BUSINESS NETWORK SERVICES INC. FOR ALLOWANCE AND
PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... - 1 -

BACKGROUND ............................................................................................................... - 2 -

    A.    The Verizon Agreements .................................................................................. - 2 -

    B.    Verizon's Purported Claims .............................................................................. - 4 -

OBJECTION ...................................................................................................................... - 5 -

    A.    Verizon Fails to Meet its Burden of Establishing an Administrative Claim. ... - 5 -

    B.    Verizon Fails to Establish that it Provided a Substantial Contribution to the Estates. ............................................................................................................ - 8 -

    C.    Verizon Fails to Establish a Basis for its Alleged "Cure Claim." ................... - 9 -

CONCLUSION ................................................................................................................ - 10 -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commn'cs. Corp.*,
   No. 02-41729, 2007 WL 601452 (Bankr. S.D.N.Y. Feb. 20, 2007) .......................................... 5

*In re Alert Holdings, Inc.*,
   157 B.R. 753 (Bankr. S.D.N.Y. 1993) .................................................................................... 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................ 5

*In re Bayou Group, LLC*,
   431 B.R. 549 (Bankr. S.D.N.Y. 2010) ................................................................................. 8, 9

*In re Bethlehem Steel Corp.*,
   479 F.3d 167 (2d Cir. 2007) .................................................................................................. 5, 6

*In re Dana Corp.*,
   390 B.R. 100 (Bankr. S.D.N.Y. 2008) .................................................................................... 8

*In re Drexel Burnham Lambert Group, Inc.*,
   134 B.R. 482 (Bankr. S.D.N.Y. 1991) .................................................................................... 7

*In re Enron Corp.*,
   279 B.R. 695 (Bankr. S.D.N.Y. 2002) .................................................................................... 7

*In re Episode USA*,
   202 B.R. 691 (Bankr. S.D.N.Y. 1996) .................................................................................... 6

*In re Feinberg*,
   442 B.R. 215 (Bankr. S.D.N.Y. 2010) .................................................................................... 5

*In re Globe Metallurgical, Inc.*,
   312 B.R. 34 (Bankr. S.D.N.Y. 2004) ...................................................................................... 6

*In re Granite Partners, L.P.*,
   213 B.R. 440 (Bankr. S.D.N.Y. 1997) .................................................................................... 8

*Lebron v. Mechem Fin., Inc.*,
   27 F.3d 937 (3d Cir. 1994) ..................................................................................................... 9

*In re Patient Educ. Media*,
   221 B.R. 97 (Bankr. S.D.N.Y. 1998) ...................................................................................... 7

*In re Summa T. Corp. Int'l*,
    73 B.R. 388 (Bankr. E.D. Ark. 1987) ................................................................................5

*Svenska Taendsticks Fabrik Aktiebolaget v. Irving Trust Co. (In re Int'l Match
    Corp.)*,
    69 F.2d 73 (2d Cir. 1934) ..................................................................................................5

*In re Tower Auto., Inc.*,
    No. 05-10578, 2007 WL 1888383 (Bankr. S.D.N.Y. June 29, 2007) ........................4

*Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*,
    789 F.2d 98 (2d Cir. 1986)..............................................................................................5, 6

*In re U.S. Lines*,
    103 B.R. 427 (Bankr. S.D.N.Y. 1989)...................................................................................8

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Liquidating Trust (the "**Liquidating Trust**") submits this objection (the "**Objection**") to Verizon's Request for Allowance and Payment of Administrative Expense Claim (the "**Motion**") [Docket No 6253].[1] In support of the Objection, the Liquidating Trust relies upon and incorporates by reference the Declaration of Deanna Horst (the "**Horst Declaration**") filed simultaneously herewith. In further support of the Objection, the Liquidating Trust, by and through its undersigned counsel, respectfully represents as follows:

## PRELIMINARY STATEMENT

1. In the Motion, Verizon requests an administrative priority claim, under Section 503(b)(1)(A) of the Bankruptcy Code, for certain services it asserts it provided to Ally Financial, Inc. ("**AFI**"), the Debtors' parent entity (the "**Services**"). Despite making this request, however, Verizon offers nothing approaching the factual or legal showing necessary to obtain such a priority. The Services were provided under a prepetition contract between Verizon and AFI, a non-Debtor. As importantly, Verizon identifies no concrete or material benefit that accrued to the estates as a result of these Services. Accordingly, under the governing case law, there is no basis to award it an administrative expense claim.

2. Rather than make the necessary showing for an administrative expense claim, Verizon appears to argue that its claim should be awarded priority because it has made a "substantial contribution" to these chapter 11 cases. Substantial contribution claims are reserved for extraordinary cases where a creditor has provided some actual, tangible benefit to the Debtors, their creditors, and the estates, and where such creditor can overcome the presumption

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

that it is acting in its own best interest.  Verizon has had minimal involvement in these chapter 11 cases, and there is no evidence that the services it provided to AFI had *any* benefit to the Debtors' estates, let alone something more than just incidental benefits arising from activities pursued in its own interests.

3.     Verizon also argues that its claims arise under an assumed contract and therefore must be accorded priority as a "cure" obligation.  But the expenses actually arose under an agreement between Verizon and AFI, so there is no basis for requiring the estates to "cure" any amounts owing thereunder.  Thus, Verizon's claims should be disallowed and the Motion should be denied.

## BACKGROUND

### A. The Verizon Agreements

1.     Despite the fact that the burden of proof is on a creditor seeking to support a priority claim, Verizon attached no documentation to the Motion, no affidavit in support, and no material explanation of a transaction with the estates, or any benefits Verizon has provided to the Debtors, their estates, or their creditors.  In fact, only when asked by the Liquidating Trust did Verizon provide any documentation.  *See* Horst Declaration ¶ 4.  The following summary of the operative agreements among ResCap, AFI, and Verizon is based on the documents provided by counsel to Verizon.

2.     Before the Petition Date, Verizon provided certain telecommunications services to the Debtors pursuant to an agreement entered into between Residential Capital, LLC ("**ResCap**") and Verizon, executed in May 2007 (as may be amended and supplemented, the

"**Agreement**").[2]  Neither AFI nor GMAC, Inc., its predecessor, were parties to the Agreement. Horst Declaration ¶ 4.

3. On February 26, 2010, Verizon and GMAC, Inc., a non-Debtor, entered into a Communications Services Affiliate Participation Agreement (the "**Affiliate Agreement**") that designated GMAC, Inc. as a participating "Affiliate" and authorized it to order services for itself under the terms set forth in the Agreement. *See* Affiliate Agreement ¶ 1.[3]  A copy of the Affiliate Agreement is attached to the Horst Declaration as **Exhibit 1**.  Under the Affiliate Agreement, Verizon was also required to bill GMAC, Inc. separately for all services it ordered under the Affiliate Agreement. *See* Affiliate Agreement ¶ 3.  GMAC, Inc. alone was responsible for services provided under the Affiliate Agreement.  *See* Affiliate Agreement ¶ 1 ("Affiliate agrees to be responsible for all obligations of Customer under the VSA with respect to the Services provided to Affiliate . . . .").

4. On February 13, 2013, in anticipation of the Debtors' assignment of the Agreement to Ocwen, Verizon and AFI entered into an amendment to the Affiliate Agreement to extend the life of the Affiliate Agreement (the "**Affiliate Agreement Amendment**").  A copy of the Affiliate Agreement Amendment is attached to the Horst Declaration as **Exhibit 2**.

5. Verizon provided no other amendments or agreements relevant to the Motion.

---

[2] Copies of the relevant documents and agreements are attached as exhibits to the Horst Declaration. Because of its voluminous nature, the Agreement is not attached to the Horst Declaration, but the Liquidating Trust will make copies available to the Court upon request.

[3] At the request of the Liquidating Trust, counsel to Verizon provided the Agreement and Affiliate Agreement, as well as other amendments to the Agreement that do not appear to be relevant to the Motion and are therefore not attached to the Horst Declaration.

B. **<u>Verizon's Purported Claims</u>**

6. As part of the sale of the Debtors' servicing and origination business which closed in January and February 2013, the Debtors sought to assume and assign the Agreement to the purchasers of the Debtors' assets. The Debtors served Verizon with a cure notice, including a proposed amount to cure all prepetition defaults under the Agreement. Horst Declaration ¶ 6.

7. Verizon objected to the proposed cure amount, and following negotiations among the Debtors and Verizon, the parties reached a confidential agreement as to the cure amount for all prepetition defaults under the Agreement, thereby resolving Verizon's objection. *Id.* ¶ 7. With respect to any postpetition obligations, Verizon and the Debtors agreed that any such valid obligations of the Debtors thereunder would be paid in the ordinary course of business and subject to the availability under the Debtors' postpetition financing agreements. *Id.* The agreement between the Debtors and Verizon regarding settled cure amounts does not reference any obligations under the Affiliate Agreement. *Id.*

8. In January 2014, in response to the Motion, at the request of the Liquidating Trust, counsel to Verizon produced voluminous invoices, all of which were addressed to GMAC, Inc. Based on a review of the invoices, the Liquidating Trust determined that Verizon's claims are actually against AFI rather than the Debtors. Indeed, the Liquidating Trust is aware that, prior to filing the Motion, Verizon conducted extensive negotiations with AFI regarding payment for the Services. Neither the Liquidating Trust nor the Debtors were party to those discussions. *Id.* ¶ 10.

## OBJECTION

### A. Verizon Fails to Meet its Burden of Establishing an Administrative Claim.

9. As the claimant, Verizon bears the burden of proving its administrative claim; the Debtors do not have the burden of disproving it. *In re Tower Auto., Inc.*, No. 05-10578, 2007 WL 1888383, at *2 (Bankr. S.D.N.Y. June 29, 2007) (the "burden of proving administrative priority falls upon the litigant seeking administrative status"); *In re Adelphia Commn'cs. Corp.*, No. 02-41729, 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007) (it is "for the claimant to prove his claim, not for the objector to disprove it") (internal quotations omitted); *In re Feinberg*, 442 B.R. 215, 221 (Bankr. S.D.N.Y. 2010) (At all times, "it is the claimant . . . who bears the burden of persuasion as to the allowance of their claim.").

10. Claimants are required to provide the necessary factual basis for a debtor's alleged liability and each element of their claims, or otherwise lose the entitlement to *prima facie* validity and be subject to disallowance. *See Svenska Taendsticks Fabrik Aktiebolaget v. Irving Trust Co. (In re Int'l Match Corp.)*, 69 F.2d 73, 76 (2d Cir. 1934); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding claim only has facial plausibility if it contains "factual content that allows court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *In re Summa T. Corp. Int'l*, 73 B.R. 388, 394 (Bankr. E.D. Ark. 1987) (nothing prevents "a bankruptcy court from disallowing a claim on the ground that the evidence produced is unworthy of belief or [is] otherwise insufficient to satisfy the court of the existence of a just claim, even in complete absence of contradictory evidence").

11. A claim is granted administrative expense priority under section 503 of the Bankruptcy Code only if the following two conditions are satisfied. First, the expense must arise "out of a transaction between the creditor and the bankrupt's trustee or debtor in possession." *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986); *accord*

*In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2007).  Second, "the consideration supporting the claimant's right to payment [must have been] both supplied to and beneficial to the debtor-in-possession in the operation of the business." *McFarlin's*, 789 F.2d at 101 (quoting *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir. 1976)); *accord Bethlehem Steel*, 479 F.3d at 172.

12.    With respect to the first prong, "an expense is administrative only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession. . . . A debt is not entitled to priority simply because the right to payment arises after the debtor in possession had begun managing the estate." *McFarlin's*, 789 F.2d at 101; *see also In re Globe Metallurgical, Inc.*, 312 B.R. 34, 40 (Bankr. S.D.N.Y. 2004) ("There also must be an element of inducement [from the debtor-in-possession]. . . ."). Here, the Services for which Verizon claims priority were provided under the prepetition Affiliate Agreement between it and AFI.  While the Affiliate Agreement refers to a prepetition Agreement between the Debtors and Verizon, the Debtors were not a party to the Affiliate Agreement, and AFI expressly agreed to take responsibility for all payments due thereunder.[4]  Affiliate Agreement ¶ 1 ("Affiliate agrees to be responsible for all obligations of Customer under the VSA with respect to the Services provided to Affiliate . . . .").  Confirming this, Verizon's summary chart of amounts outstanding refers to Account No. Y2651326, an account in the name of GMAC, Inc. (now AFI), a non-

---

[4] To the extent Verizon is somehow arguing that the Debtors are secondarily liable for amounts due and owning from AFI, this is insufficient to establish a valid administrative claim against the Debtors' estates.  Because neither the Debtors nor their estates received any demonstrable benefit from the services provided to a non-debtor third party, Verizon cannot meet the requisite standard for proving an administrative claim.  *See In re Episode USA*, 202 B.R. 691, 696 (Bankr. S.D.N.Y. 1996) (creditor could not maintain an administrative claim against a debtor who guaranteed a non-debtor affiliate's performance under a non-residential real property lease for a postpetition period).

Debtor.  *See* Motion, Exhibit A.  Accordingly, Verizon has failed to identify any postpetition transaction with the estates.

13. With respect to the second prong, "there must be a concrete, discernible benefit from actual use because a speculative benefit or the mere potential for benefit is not enough to warrant administrative claim priority." *In re Enron Corp.*, 279 B.R. 695, 706 (Bankr. S.D.N.Y. 2002).  The test of whether the estate benefits from a postpetition transaction is "an objective one." *In re Patient Educ. Media*, 221 B.R. 97, 102 (Bankr. S.D.N.Y. 1998).  "The inclusion of the words 'actual' and 'necessary' in § 503(b)(1) means the estate must accrue a real benefit from the transaction." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 482, 488 (Bankr. S.D.N.Y. 1991).

14. Despite these clear standards, the Motion fails to identify any legitimate benefit Verizon provided to the Debtors' estates.  Rather, a review of the invoices for the Services provided reveals that none of the Services were rendered for any Debtor entity.  To the contrary, the Services were rendered for the benefit of AFI and other non-Debtor entities.  Accordingly, there is no basis to assert that either the Debtors' estates or creditors received any benefit from the Services rendered to non-Debtor affiliates.

15. Because Verizon has therefore failed to establish either a transaction with the estates or a benefit flowing from such a transaction, it has failed to carry its burden and its Motion should be denied.

B. **Verizon Fails to Establish that it Provided a Substantial Contribution to the Estates**.

16. Perhaps aware that it is unable to establish an ordinary administrative expense claim because its services were provided to a non-debtor, Verizon seemingly also seeks to establish an administrative expense claim on the basis that it provided a "substantial contribution" to the Debtors' estates. *See* Motion ¶ 9-10. Verizon's factual support for this argument is non-existent. Verizon states, without any factual support, that the Debtors' ability to accomplish the sale of its servicing platform was due to the services provided by Verizon. *See Id.* ¶ 10. This bald assertion falls far short of the rigorous standards for a claim based on substantial contribution.

17. Compensation for parties providing a "substantial contribution" is reserved only for extraordinary actions. *See In re Granite Partners, L.P.*, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997); *In re Alert Holdings, Inc.*, 157 B.R. 753, 757 (Bankr. S.D.N.Y. 1993). The party seeking payment for its purported contributions carries the burden of proof to demonstrate by a preponderance of the evidence that they have provided a substantial contribution to the Debtors' estates. *In re Dana Corp.*, 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008); *In re U.S. Lines*, 103 B.R. 427, 429 (Bankr. S.D.N.Y. 1989). To determine whether a party has made a substantial contribution, courts look to whether the party has provided an actual and demonstrable benefit to the debtor's estate and its creditors. *In re U.S. Lines*, 103 B.R. at 429. In making this determination, courts consider factors such as whether the services were provided to benefit the estate itself or all parties in the bankruptcy case, and whether the party seeking payment contributed to "the proper administration of the case as a whole." *See In re Bayou Group, LLC*, 431 B.R. 549, 561 (Bankr. S.D.N.Y. 2010). To this end, "[t]hird parties, who generally represent only their clients' interest and only indirectly contribute to the case's administration, therefore normally would not be compensated by the estate on an administrative

priority basis." *Id.*; *see also Lebron v. Mechem Fin., Inc.*, 27 F.3d 937, 946 (3d Cir. 1994) ("A creditor should be presumed to be acting in his or her own interest unless the court is able to find that his or her actions were designed to benefit others who would foreseeably be interested in the estate. In the absence of such a finding, there can be no award of [administrative] expenses even though there may have been an incidental benefit to the chapter 11 estate.").

18. Far from establishing a "substantial contribution" to the Debtors' estates and creditors, Verizon has failed to establish *any* contribution to the estates. In fact, Verizon's alleged services were provided to AFI, not the Debtors. Verizon appears to argue that the estates benefited when the Agreement was assumed and assigned as part of the asset sales during the chapter 11 cases, but fails to demonstrate how its alleged provision of services to AFI under the Affiliate Agreement in any way facilitated the assumption of the Agreement or the consummation of the asset sales. Moreover, nothing in the Motion provides any basis to rebut the presumption that it was acting in its own interest in providing the Services. Therefore, Verizon's alleged claims are not entitled to administrative expense priority as a "substantial contribution" and must be disallowed.

### C. **Verizon Fails to Establish a Basis for its Alleged "Cure Claim."**

19. In its final attempt to establish some basis for payment of its claim as an administrative expense, Verizon alleges that "the post-petition Services must be paid in order to fully cure the Agreement under § 365 of the Bankruptcy Code." *See* Motion at ¶ 11. Verizon cites no authority or relevant provisions in the Agreement in support of this proposition.

20. The services for which Verizon seeks payment as an administrative expense were provided to AFI under the Affiliate Agreement, which was not assumed or assigned, and to which the Debtors were not party. Therefore, the Debtors are under no obligation to cure any amounts due under the Affiliate Agreement. In fact, some of the Services

identified on Exhibit A to the Motion appear to have been provided after the assumption and assignment of the Agreement became effective.

21.　　Accordingly, the Debtors are not required to "cure" any amounts owing under the Affiliate Agreement.

## CONCLUSION

WHEREFORE, the Liquidating Trust respectfully requests that the Court enter an order sustaining the Objection, denying the Motion, and providing such other or further relief as is just and proper.

Dated: New York, New York
　　　　January 23, 2014

　　　　　　　　　　　　　　　　　　KRAMER LEVIN NAFTALIS & FRANKEL LLP

　　　　　　　　　　　　　　　　　　/s/ P. Bradley O'Neill
　　　　　　　　　　　　　　　　　　Kenneth H. Eckstein
　　　　　　　　　　　　　　　　　　P. Bradley O'Neill
　　　　　　　　　　　　　　　　　　Douglas H. Mannal
　　　　　　　　　　　　　　　　　　1177 Avenue of the Americas
　　　　　　　　　　　　　　　　　　New York, New York 10036
　　　　　　　　　　　　　　　　　　Telephone: (212) 715-9100
　　　　　　　　　　　　　　　　　　Facsimile: (212) 715-8000

　　　　　　　　　　　　　　　　　　*Counsel for the ResCap Liquidating Trust*