MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Naomi Moss
Meryl L. Rothchild

*Counsel for the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ )
In re:                                                       )   Case No. 12-12020 (MG)
                                                             )
RESIDENTIAL CAPITAL, LLC, et al.,                            )   Chapter 11
                                                             )
   Post-Effective Date Debtors.                              )   Jointly Administered
                                                             )
                                                             )
------------------------------------------------------------ )

**DEBTORS' REPLY IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN
ORDER APPROVING PAYMENT OF SUCCESS FEE TO
DEBTORS' CHIEF RESTRUCTURING OFFICER, LEWIS KRUGER**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The post-effective date debtors in the above-captioned cases (collectively, the "Debtors")[1] hereby submit this reply (the "Reply") in response to the *Objection of the United States Trustee to Debtors' Motion for Entry of an Order Approving Payment of Success Fee to Debtors' Chief Restructuring Officer, Lewis Kruger* [Docket No. 6215] (the "Objection"). In further support of the *Debtors' Motion for Entry of an Order Approving Payment of Success Fee*

---

[1]    Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Motion.

ny-1124199

*to Debtors' Chief Restructuring Officer, Lewis Kruger* [Docket No. 6172] (the "<u>Motion</u>"),[2] the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Debtors' request for approval to pay the Success Fee to Mr. Kruger has drawn one objection. That the Debtors and their major creditor constituencies stand unified in agreement that Mr. Kruger's services were necessary and beneficial to these estates is a testament to the CRO's leadership and his constructive value. This view is shared not only by the Debtors and their creditors, but has been expressed by the Court since Mr. Kruger's appointment.[3] Prior to Mr. Kruger's involvement in these cases, the Debtors and their creditors, each with extremely divergent, and often conflicting, interests seemed incapable of resolving those issues necessary to achieve a consensual Chapter 11 plan. As described in the Motion, the successful conclusion to these Chapter 11 cases can in large part be attributed to the services provided by Mr. Kruger, including his leading the Plan process as well as assisting the Debtors' management with the wind-down of the Debtors' estates.

2. Evidence of the necessity and beneficial impact of Mr. Kruger's services to these estates has been presented throughout these cases, most recently in connection with confirmation of the Plan. As the Court and all parties in interest are well-aware, Mr. Kruger performed and completed his services as CRO and did so in an exceptionable fashion. Mr. Kruger's efforts, among other things, saved the Debtors' estates significant administrative costs

---

[2] Following the occurrence of the Effective Date of the Plan, in accordance with the terms of the Amendment, the Success Fee, in the amount of $2.0 million, was paid to Mr. Kruger's direct deposit account. Mr. Kruger is holding these funds in the account pending approval of the Motion. The Success Fee will not be earned by Mr. Kruger until the Court approves the payment of the Success Fee.

[3] At the confirmation hearing, the Court stated: "The appointment of Lewis Kruger, a respected bankruptcy lawyer with fifty years of experience, as the CRO, and the appointment of Judge Peck as the mediator, marked important events that enabled this case to move forward." Transcript of Hearing at 48:23-59:1, *In re Residential Capital, LLC*, Case. No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013).

2

ny-1124199

that are now being applied to creditor recoveries. These savings to the estates, and the ability of the ResCap Liquidating Trust (as defined in the Plan) to distribute those amounts to the Debtors' creditors, should be considered as just one of the many reasons that support a finding that Mr. Kruger's services were beneficial to these estates, a finding which is one of the factors considered in assessing the reasonableness of the Success Fee.

3. The Debtors submit that the Motion, as well as the record in these Chapter 11 cases, demonstrates that Mr. Kruger has satisfied the legal requirements necessary to receive payment of the Success Fee. Apart from the U.S. Trustee, no party objects to the Debtors' request. The fact that no economic stakeholder opposes payment of the Success Fee to Mr. Kruger is important to consider in assessing the reasonableness of the Success Fee. The Court recognized the significance of this factor in *In re Velo Holding, Inc.* in assessing payment of a completion fee to AMJ Advisors LLC, the debtors' chief restructuring officer:

> I think there are a lot of factors that go into the determination of reasonableness. A major one is whether the proposed formula is supported by all of the major economic stakeholders. They're the ones who really have the most to gain or lose. And so that is very strongly in favor of it here.

Transcript of Hearing at 17:23-18:3, *In re Velo Holding, Inc.*, Case No. 12-11384 (MG) (Bankr. S.D.N.Y. Apr. 24, 2013).[4]

4. Rather than acknowledge the value that Mr. Kruger has imparted on the estates and his effectiveness in these bankruptcy proceedings in the face of the unique and assorted challenges before him, the U.S. Trustee appears to criticize Mr. Kruger's efficiency and seeks to analyze his accomplishments on a basis of a blended hourly rate analysis. The Objection should be overruled because, as a threshold matter, the U.S. Trustee applies an incorrect standard of review for the payment of the Success Fee. In addition, the U.S. Trustee cites to and relies on

---

[4] A copy of the relevant transcript excerpt is attached hereto as <u>Exhibit 1</u>.

cases that consider compensation requested by attorneys, *not* chief restructuring officers requesting success fees, and are thus inapposite to the Court's consideration of the Success Fee. Moreover, in the Objection, the U.S. Trustee makes various factual assertions that are not supported by the evidence in these cases.

5. As set forth in the Motion, the Debtors believe that Mr. Kruger's significant accomplishments during the period from his appointment as CRO through the Effective Date merit payment of the Success Fee. The Debtors further believe that in considering a number of market-based factors, as well as reviewing the totality of these Chapter 11 cases and the progress made as a direct result of Mr. Kruger's efforts and leadership, the Success Fee in the amount of $2.0 million is within market range, and is thus reasonable and appropriate. Therefore, and for the reasons set forth below, the Debtors request that the Court overrule the Objection, and approve the Debtors' payment of the Success Fee to Mr. Kruger.

## SPECIFIC RESPONSES TO THE OBJECTION

A. **The Hearing on the Motion Should be Held on January 30, 2014**

6. On March 5, 2013, the Court entered the CRO Order, approving the Engagement Letter that contemplated the payment of a success fee, subject to the Jay Alix Protocol and standards set forth in section 330 of the Bankruptcy Code. On September 27, 2013, the Debtors filed a motion seeking approval of the Amendment to Engagement Letter (the "CRO Amendment Motion"), setting forth the bases and analyses, including three declarations and the Fee Analyses, in support of the Debtors' business judgment that $2.0 million was market rate and a reasonable amount to pay to Mr. Kruger for his services and accomplishments as CRO. The Amendment expressly contemplated payment of the Success Fee, in the amount of $2.0 million, on the Effective Date of the Plan. While the Motion was filed on December 23, 2013 during a holiday week, the Debtors submit that all parties, including the U.S. Trustee, have had

4

ny-1124199

ample time to review and assess the reasonableness of the Success Fee. Further, adjourning the Motion to January 30, 2014 has provided all parties with an additional three weeks to review and prepare for the matter. For these reasons, parties, including the U.S. Trustee, are not prejudiced if the Motion is heard on the hearing date of January 30, 2014.

7. In addition, the U.S. Trustee attempts to compare the Motion with the final fee applications filed by the Examiner and his professionals, and requests that the Court adjourn the Motion to the final fee applications hearing date. The U.S. Trustee's comparison misses the mark.

8. First, the Creditors' Committee, an economic stakeholder and representative of parties actually paying for the professional fees, including the Success Fee, in these cases, requested the adjournment of the Examiner-related final fee applications. There was no similar request made by the Creditors' Committee to adjourn the Motion. Rather, the Creditors' Committee endorsed the payment, and the timing of such payment, of the Success Fee.

9. Second, Mr. Kruger is unlike the professionals retained in these cases. Those professionals, including the Examiner and his professionals, have already received the bulk of their compensation and only have yet to receive the approximate ten percent holdback.[5] On the other hand, the majority of Mr. Kruger's compensation is in the form of the Success Fee.

10. Third, all parties will have had approximately four (4) months to review the Examiner's and his professionals' final fee applications (filed on November 18, 2013) ahead of the hearing on final fee applications (likely to be scheduled sometime in May of 2014). Given that the CRO Amendment Motion, which contains the factual and legal bases and analyses

---

[5] *See* Transcript of Hearing at 90:3-7, In re Residential Capital, LLC, Case. No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 17, 2013) (estimating that "the holdback probably is somewhere between six and eight percent of the total applications by most of the professionals . . . with over ninety percent having been paid currently . . .") (statement by Kenneth H. Eckstein, Counsel to the Creditors' Committee, explaining parties' compromise on holdback issues).

supporting the Motion's application for payment of the Success Fee, was filed on September 27, 2013, the proposed hearing date of January 30, 2014 is reasonable, as it allows all parties approximately four (4) months to review the filings in support of payment of the Success Fee.

11. <u>Fourth</u>, and notwithstanding that the CRO's fee is not assessed as if he were a retained estate professional, the volume of documents to review to make a "reasonableness" determination as to the payment of the Success Fee is markedly less than the final fee applications submitted by the Examiner and his professionals. Accordingly, the Debtors respectfully submit that it is unnecessary to afford any party additional time to conduct a review of the reasonableness of the Success Fee, and therefore, there is no need to adjourn the Motion to the hearing date for the final fee applications.

**B.      The Debtors Have Met Their Burden that the Success Fee is Reasonable Under Section 330**

12. The Debtors submit that the Success Fee in the amount of $2.0 million is not only well within market for CRO services, but is justified by the facts and circumstances of these cases and reasonable in light of Mr. Kruger's efforts and accomplishments. Therefore, as discussed below, the Success Fee is reasonable under section 330 of the Bankruptcy Code.

**1.      The Impact of the Award of the Success Fee to the CRO's Effective Hourly Rate is Not an Appropriate Standard by Which to Consider the Reasonableness of the Success Fee**

13. The Objection should be overruled because the U.S. Trustee does not apply the correct standard for reviewing the Success Fee. The U.S. Trustee asserts, without providing any case law in support of such assertion, that the Success Fee is not reasonable under section 330 of the Bankruptcy Code because when combined with the CRO's monthly compensation, the blended hourly rate is unreasonable. *See* Objection at 10. The U.S. Trustee's analysis is misguided. Contrary to the U.S. Trustee's argument, "[i]n considering a transaction fee, courts

6

ny-1124199

recognize that certain of these [section 330 factors] do not apply, such as 'time spent' or the 'rates charged.'" *In re XO Commc'ns, Inc.*, 398 B.R. 106, 113 (Bankr. S.D.N.Y. 2008) (quoting *In re Intelogic Trace, Inc.*, 188 B.R. 557, 559 (Bankr. W.D. Tex. 1995)). The correct standard for review of the Success Fee in the Second Circuit is: (i) whether Mr. Kruger's services were necessary and beneficial to the estates at the time they were rendered, and (ii) whether the Success Fee is reasonable based on the market. *See XO Commc'ns*, 398 B.R. at 113; *see also In re Enron Corp.*, 01-16034 (ALG), 2006 WL 1030421, at *6 (Bankr. S.D.N.Y. Apr. 12, 2006). The Debtors submit that their application to pay Mr. Kruger the Success Fee provides support for each of the factors considered by courts in this District.

14.    The U.S. Trustee's argument that the Court should deny the Motion because the Debtors do not address the reasonableness of the CRO's blended hourly rate is flawed and should be overruled.  <u>First</u>, only the amount of the Success Fee is subject to a reasonableness review.  *See* CRO Amendment Order ¶ 6.  <u>Second</u>, the U.S. Trustee fails to support this argument with any relevant Second Circuit case law.  In fact, the single CRO success fee case cited by the U.S. Trustee applies a marketplace standard without regard for that CRO's blended hourly rate.  *See* Objection at 10 (citing *Enron*, 2006 WL 1030421, at *6).  Each of the remaining cases cited by the U.S. Trustee (certain of which are not Second Circuit cases) considers the application of the reasonableness standard to attorneys' fees and is thus inapplicable to the relief requested in the Motion.[6]

---

[6]  *See* Objection at 9-10 (citing *In re Lederman Enter., Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993)) (considering debtor's attorneys' fees); *In re Engel*, 124 F.3d 567, 573 (3d Cir. 1997) (considering fees of debtor's special counsel retained under section 327 of the Bankruptcy Code); *Zeisler & Zeisler, P.C. v. Prudential Ins. Co.* (*In re JLM, Inc.*), 210 B.R. 19, 24 (2d Cir. B.A.P. 1997) (considering fees requested by debtor's counsel); *In re Value City Holdings, Inc.*, 436 B.R. 300, 305 (Bankr. S.D.N.Y. 2010) (considering fee applications for debtors' counsel and counsel for the creditors' committee); *In re CCT Commc'ns, Inc.*, No. 07-10210 (SMB), 2010 WL 3386947, at * 4 (Bankr. S.D.N.Y. Aug. 24, 2010) (considering fee applications of debtor's former bankruptcy counsel and debtor's former special telecommunications counsel); *In re Beverly Mfg. Corp.*, 841 F.2d 365, 371 (11th Cir. 1988) (considering debtor's counsel's fees).

7

15. Further, the Objection should be overruled because the U.S. Trustee has not provided any evidence to support a finding that the services provided by Mr. Kruger were unnecessary or not beneficial to these estates. On the other hand, the Debtors have submitted substantial and uncontroverted evidence throughout these cases that Mr. Kruger played a significant role in driving these cases to a successful conclusion and bringing about confirmation of the Plan. There is no question that the services provided by Mr. Kruger were necessary and beneficial to these estates. That much of the success of these cases should be credited to Mr. Kruger's leadership is fully supported by the record of the hearing on confirmation of the Plan.[7] Thus, the Debtors submit that the first factor considered for approval of the Success Fee has been satisfied.

16. The U.S. Trustee also objects to the usefulness of the comparable Chapter 11 cases used in the Fee Analyses, claiming them to be "inapposite because in each of them the CRO was an employee of, and supported by, a large firm." *See* Objection at 12. The U.S. Trustee's argument that the Success Fee is inconsistent with the market because in other cases, the fee was paid to firms rather than an individual is flawed. As noted in the Dempsey Decl., Mercer also considered whether the size of the engagement team should impact the size of the success fee. As an initial matter, the cases utilized in the Fee Analyses each involved the payment of a success fee for CRO services and only CRO services, which is consistent with the nature of the Success Fee. Mercer concluded that Mr. Kruger's success fee ought to reflect the

---

[7] As stated by Kenneth H. Eckstein, Counsel to the Creditors' Committee:

> And Mr. Kruger also came into this case in February of 2013. The case was in high gear. And to even get up to speed was very difficult. And to get up to speed in a way that on the one hand was not disruptive, but on the other hand was constructive, was actually something that required a real touch. And Mr. Kruger did a beautiful job, I think, in being constructive and helping us accomplish more that we were able to accomplish without him, and that was very valuable.

Transcript of Hearing at 38:19 – 39:1, *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013).

value of the contribution rather than the amount of human resources assigned to the engagement because the empirical correlation between team size and success fee was weaker than the link between asset size and success fee.

17.  As the Debtors discussed in their previous filings, there is no other case in this District with comparable facts.  Accordingly, the Debtors and their professionals sought to analyze an array of recent mega Chapter 11 cases in this District in an effort to unveil certain trends of the structure and appropriateness of success fees awarded in those cases.  The Fee Analyses conducted and descriptions of the numerous factors analyzed to ascertain the reasonable market range of success fees in mega Chapter 11 cases filed in this District evidence that the Success Fee proposed in the amount of $2.0 million is comparable to market rate.  *See* Dempsey Decl. and Nolan Decl.  The Debtors respectfully submit that the Court echoed this belief on the record of the hearing held on October 9, 2013, in stating "[f]urthermore, the declaration, particularly of Mr. Dempsey, shows that the amount that's been set for the proposed compensation which has been negotiated with the committee is reasonable and perhaps below market, if one can determine a market for such services."  Transcript of Hearing at 17:23-18:6, *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. Oct. 9, 2013).  For the reasons discussed herein, the Debtors submit that the cases used as the bases for the Fee Analyses are appropriate selections, as well as support the reasonableness of the Success Fee.

18.  For the foregoing reasons, the Debtors respectfully request that the Court overrule the Objection.

### 2. The CRO's Assumption of CEO Responsibilities is One of Many Factors Considered in Arriving at the $2.0 Million Success Fee

19.  In the Objection, the U.S. Trustee argues that the Success Fee is not reasonable because, despite the Debtors' contention that Mr. Kruger's duties were expanded in May 2013

9

ny-1124199

to include duties that are traditionally performed by a CEO, "[a]n analysis of the hours spent by the CRO on these cases . . . does not support a finding that the CRO spent an extraordinary number of hours managing the Debtors' day-to-day businesses." *See* Objection at 2. The U.S. Trustee bases this assertion on a review of the general summaries task descriptions included in each of the CRO's Monthly Fee Statements. *See id.* at 11. The U.S. Trustee further asserts that, assuming arguendo that Mr. Kruger's time spent on "Estate Management" tasks is the only thing arguably akin to tasks performed by a CEO, Mr. Kruger's devotion of 14.86% of his time to this project category and hours billed per week does not demonstrate that Mr. Kruger was "juggling two senior executive positions" in these Chapter 11 cases. *See id.*

20.    The U.S. Trustee misconstrues the Debtors' discussion, emphasis, and purpose in highlighting Mr. Kruger's assumption of CEO-related responsibilities. As an initial matter, in none of their filings do the Debtors assert that Mr. Kruger was maintaining two full-time executive positions, one as CRO and the other as CEO. Also, at no time do the Debtors state that Mr. Kruger's assumption of such tasks was the sole, let alone the major, basis for their determination that a $2.0 million Success Fee was appropriate. Rather, the Debtors maintain that, in addition to his main role as CRO, above and beyond his numerous CRO-related duties, Mr. Kruger assumed certain CEO-related responsibilities and assisted the Debtors in managing their remaining businesses—including, but not limited to, employee-related matters—which was a factor considered when discussing the reasonableness of the Success Fee. *See* West Decl. ¶¶ 5-8. The West Declaration supports the fact that Mr. Kruger engaged in these activities to benefit the estates. *See id.*

21.    Even accepting the U.S. Trustee's calculation that Mr. Kruger "only spent only 14.86% of his time" on these tasks, consideration of this activity and its impact on success fees

10

ny-1124199

awarded to CROs was reasonably included in the Board's analysis and determination of the reasonableness of the Success Fee.[8] Mr. Dempsey's analysis included this as *a single factor*—not the only factor, nor the major factor—*among others* considered in evaluating the appropriateness of the Success Fee amount. *See* Dempsey Decl. ¶¶ 13-14. Thus, Mr. Kruger's assumption of certain CEO responsibilities fact is but *one* of *many* factors, in addition to (i) the Debtors' asset size (which was discounted due to the fact that Mr. Kruger's retention occurred after the sales of the majority of the Debtors' assets were substantively completed), (ii) the Debtors' liability size, and (iii) measure of value creation, and savings, to the estates, considered by the Board in deriving an appropriate market-based range for a reasonable Success Fee.

22. The Debtors' consideration of certain CEO-related duties assumed by Mr. Kruger as part of the analysis of what comprises a reasonable market success fee does not detract from the reasonableness of the Success Fee. Accordingly, the Debtors submit that the U.S. Trustee has not provided evidence to the contrary, and for that reason, the Debtors have met the reasonableness standard required in support of their application for payment of the Success Fee to Mr. Kruger.

23. Accordingly, because the Fee Analyses show that the amount of the Success Fee is comparable to the market, and because the record created throughout these Chapter 11 cases supports the necessity and invaluable benefit Mr. Kruger's services bestowed on the estates, the Debtors respectfully submit that the amount of the Success Fee is within the range of reasonableness under section 330 of the Bankruptcy Code.

---

[8] As discussed in the Dempsey Decl., the median value of success fees awarded to CROs that also functioned as CEO, was greater than the success fees paid to CROs that acted only in a CRO capacity. *See* Dempsey Decl. ¶ 14.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court overrule the Objection, and grant the relief requested in the Motion and such other and further relief as it just and proper.

| | |
|---|---|
| Dated: January 24, 2014<br>New York, New York | /s/ Lorenzo Marinuzzi<br>Gary S. Lee<br>Lorenzo Marinuzzi<br>Naomi Moss<br>Meryl L. Rothchild<br>MORRISON & FOERSTER LLP<br>1290 Avenue of the Americas<br>New York, New York 10104<br>Telephone: (212) 468-8000<br>Facsimile: (212) 468-7900<br><br>*Counsel for the Post-Effective Date Debtors* |