**Exhibit 1**

12-13020-mg Doc 6350-1 Filed 01/24/14 Entered 01/24/14 11:18:45 Exhibit 1 Transcript Pg 2 of 22
12-11384-mg Doc 806 Filed 04/25/13 Entered 04/25/13 15:58:39 Main Document Pg 1 of 7

1

```
 1
 2   UNITED STATES BANKRUPTCY COURT
 3   SOUTHERN DISTRICT OF NEW YORK
 4   Case No. 12-11384-mg
 5   - - - - - - - - - - - - - - - - - - - -x
 6   In the Matter of:
 7
 8   VELO HOLDING, INC., et al.,
 9
10               Debtors.
11
12   - - - - - - - - - - - - - - - - - - - -x
13
14               United States Bankruptcy Court
15               One Bowling Green
16               New York, New York
17
18               April 24, 2013
19               10:14 AM
20
21   B E F O R E:
22   HON. MARTIN GLENN
23   U.S. BANKRUPTCY JUDGE
24
25
```

VELO HOLDING, INC., ET AL.                                              14

1            THE COURT:  Thank you very much.
2            MR. VASSER:  The next item on the agenda is Alvarez &
3    Marsal final and third interim fee application.  And I believe
4    Robert Campagna from Alvarez & Marsal is on the phone through
5    CourtCall.  Bob?
6            MR. CAMPAGNA:  Yes, Robert Campagna with Alvarez &
7    Marsal on the line.  Thank you.
8            THE COURT:  Good morning.
9            MR. CAMPAGNA:  Good morning.
10           THE COURT:  Is there anything you want to add?
11           I have -- are you going to present it, Mr. Vasser?
12   Anything you want to add?  I've reviewed the application.
13           Mr. Schwartzberg, you have anything to say?
14           MR. SCHWARTZBERG:  I have nothing to add, Your Honor.
15           THE COURT:  All right.  It's approved as well.
16           These -- you know, I must say with the one very tiny
17   issue that I've raised, these applications were all well done.
18   I didn't have any problem with it.
19           MR. VASSER:  Thank you.  The last item on the agenda
20   is the AMJ completion fee and request.
21           The AMJ was retained to provide a chief restructuring
22   officer to hold the services of Alan Jacobs, who is an
23   accountant.  And they were retained under Section 105 and
24   363(b) of the Bankruptcy Code, pursuant to an arrangement where
25   they were paid monthly fees of 75,000 dollars plus expenses.

1 Those were -- and not subject to further approval except for
2 the quarterly applications and no objection, that's it, and
3 they will pay the total of 750,000 dollars in fees and
4 approximately 8,700 in expenses pursuant to the monthly fee
5 arrangement.
6             A last piece remaining is the completion fee which is
7 calculated as based on that policy distributed to creditor, and
8 I note, and I'm sure Your Honor's aware of it, but for the
9 record it doesn't include the value distributed under the plan.
10 It's actually cash distributions that were made to creditors.
11 It was one percent of the first fifty million and 1.75 percent
12 of the next ten million.
13             And through January 30th, 2013, the debtors
14 distributed sixty million dollars in that policy to the
15 creditors.  The first 500,000 dollars representing the first
16 one percent was actually paid to an escrow maintained by AMJ
17 pursuant to stipulation and order approved in December.
18             So to the extent Your Honor approves this application
19 the 500,000 will be released from escrow and another 175,000
20 dollars will be made to AMJ.
21             THE COURT:  That's 175,000 on the next --
22             MR. VASSER:  Ten million, correct.
23             THE COURT:  -- ten million; it's 1.75 percent.  That's
24 what you're seeking today?
25             MR. VASSER:  Correct, yes.

1    THE COURT:  Okay.

2    MR. VASSER:  And the retention order reserved the
3  payment of the completion fee subject to the reasonableness
4  standard, and we believe and we asserted in the application
5  that the payment meets that standard and on various grounds for
6  this assertion.

7    One is that these benchmarks were consistent with the
8  benchmark included in the debtor's KEIP that's been uphold by
9  the Court, so it aligned the incentive of the chief
10 restructuring officer with those of the employees.

11   Second, these benchmarks were not only agreed to with
12 our lenders and the financial advisors, they actually were
13 developed cooperatively with them.  And, obviously, as the
14 people who with the major financials at stake they thought,
15 based on their understanding of the market, that is a
16 reasonable standard.

17   Lastly, we looked at case law, and I know it's not
18 cited in the application, because we really found it very hard
19 to apply the standard that we found in the case law to this
20 particular situation.  A lot of the cases talking about total
21 enterprise value, which is really apples to oranges.

22   I found one case that I think is in the area.  That
23 case is called CDC Corp.  It's 484 BR 496 from the Bankruptcy
24 Court in Northern District of Georgia, 2012.  There the court
25 approved an arrangement where the compensation was one percent

VELO HOLDING, INC. 17

1 on the first 100 million dollar distributed, and then three
2 percent of the next 200 -- on the next 100 million dollar
3 distributed.
4     I would -- it's analogous; it's not the same, because
5 it was distribution to shareholders there, but, nonetheless, it
6 was based on percentage versus distributable proceeds, and I
7 believe the one percent of the first fifty million is clearly
8 within the one percent of the hundred million, and then the
9 1.75 on the next is really consistent with the next tier.  Not
10 the same, but in the area.
11     For these three reasons, we believe that the
12 arrangement -- the compensation requested by the completion fee
13 or presented by the completion fee meets the reasonableness
14 standard, and we request the Court to approve it.
15     THE COURT:  Mr. Schwartzberg.
16     MR. SCHWARTZBERG:  No objection here, Your Honor.
17     THE COURT:  All right.  I'm going to approve it.  The
18 only thing I would say is that I think each case has to be
19 decided on its facts and circumstances.  So the fact -- and I
20 haven't read the case from the Northern District of Georgia,
21 but the formula applied in one case may be interesting, but I
22 don't think it provides necessary guidance in another case.
23     I think there are a lot of factors that go into the
24 determination of reasonableness.  A major one is whether the
25 proposed formula is supported by all of the major economic

12-12020-mg Doc 6350-1 Filed 01/24/14 Entered 01/24/14 11:18:45 Exhibit 1 - Transcript Pg 21 of 21
12-11384-mg Doc 806 Filed 04/25/13 Entered 04/25/13 15:58:39 Main Document Pg 18 of 21
VELO HOLDING, INC. 18

1 stakeholders. They're the ones who really have the most to
2 gain or lose. And so that is very strongly in favor of it
3 here.
4      And I think -- I'm sure everybody, secureds and
5 unsecureds, all wish they got more out of it. I think it was a
6 challenging case from the standpoint of what value could be
7 achieved when the case was first filed. And I think the result
8 is a good one. It's attributable to all the professionals,
9 including Mr. Jacobs as the CRO. So I'm pleased with the
10 result in the case. I'm happy to approve this fee.
11      MR. VASSER: Thank you, Your Honor. And with that, I
12 believe we are done with the agenda for today.
13      THE COURT: Okay. So is there anything remaining?
14 What remains?
15      MR. VASSER: Yes, we filed several omnibus objections
16 to claims and Your Honor, I believe last week, approved a
17 procedure order allowing us to file omnibus based on grounds
18 not listed in Rule 3007. We would file, I believe, two
19 additional ones. The four or five filed are on for the May
20 hearing -- May 16, I believe; I'm not sure. The two additional
21 ones will be filed for the June hearing. And my guess is that
22 the vast majority -- there are not that many. It's not a
23 thousand in each one or hundred in each one, but the vast
24 majority will be resolved and some will require some work.
25      THE COURT: Okay. Very good.