**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | ) | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**SUPPLEMENTAL ORDER GRANTING THE DEBTORS' TWENTY-SIXTH
OMNIBUS OBJECTION TO CLAIMS (BORROWER CLAIMS WITH
INSUFFICIENT DOCUMENTATION) WITH RESPECT TO CLAIM NO. 3474 OF
<u>MARY LYNN WEBER</u>**

Pending before the Court is the *Debtors' Twenty-Sixth Omnibus Objection to Claims (Borrower Claims with Insufficient Documentation)* (the "Objection," ECF Doc. # 4734). Through the Objection, the Debtors seek to disallow and expunge Claim No. 3474 of Mary Lynn Weber (the "Weber Claim"). Ms. Weber's proof of claim asserts a $99,619.60 general unsecured claim against GMAC Mortgage, LLC ("GMACM"). The Objection is supported by the Declaration of Deanna Horst (the "Horst Decl.," attached to the Objection as Exhibit 1), the Declaration of Norman S. Rosenbaum (the "Rosenbaum Decl.," attached to the Objection as Exhibit 2), and the Declaration of Robert D. Nosek (the "Nosek Decl.," attached to the Objection as Exhibit 3). Ms. Weber filed a response (the "Response," ECF Doc. # 5044). The Debtors filed the *Debtors' Second Omnibus Reply in Support of Debtors' Twenty-Sixth Omnibus Claim Objection (Borrower Claims with Insufficient Documentation)* (the "Reply," ECF Doc. # 5731). The Reply is supported by the Supplemental Horst Declaration (the "Suppl. Horst Decl.," attached as Exhibit 3 to the Reply). On November 15, 2013, the Court held a hearing and Ms. Weber appeared telephonically. The Court reserved decision on the Objection.

Ms. Weber filed a proof of claim against GMACM that asserts a $99,619.60 claim for "Mortgage Note – Debtor improperly applied payments" related to a property at 84 Chapman Heights Street, Las Vegas, Nevada 89138.  The proof of claim attaches a copy of a Homecomings Financial, LLC ("Homecomings") account statement dated January 1, 2008, twelve Washington Mutual ("WaMu") checking statements from 12/08/07 through 12/05/08, a GMACM mortgage interest statement apparently related to payments and real estate taxes paid in 2009, and a GMACM account statement dated January 18, 2011.  The Debtors objected to Ms. Weber's claim on the grounds that her claim lacks sufficient documentation and fails to state a basis for liability on the part of the Debtors.

In the Response, Ms. Weber alleges that (1) GMACM and Residential Funding Company, LLC ("RFC") unlawfully accepted loan payments from her that should have gone to the loan's true owner, RFM SI Series 2007-SA2 Trust; (2) she should be reimbursed for all of the payments she made under the loan because they went to the wrong entity; (3) GMACM and RFC were never properly assigned the loan and therefore did not have authority to foreclose on the property; (4) the Debtors fabricated foreclosure-related instruments; and (5) the Debtors failed to comply with Nevada's foreclosure mediation program rules in foreclosing on her property, resulting in the state-appointed mediator's cancellation of the foreclosure and recommendation of sanctions against the Debtors.  Attached to the Response is the following documentation: (1) a copy of the Note with a statement and certification under oath by Laurel I. Handley, attorney for GMACM and Residential Capital ("ResCap") (ECF Doc. # 5044-1); (2) a copy of the Deed of Trust, also with a statement and certification under oath by Laurel I. Handley (ECF Doc. # 5044-2); (3) the affidavit of William McCaffrey (the "McCaffrey Aff.," ECF Doc. # 5044-3); (4) a Substitution of Trustee substituting Executive Trustee Services, LLC, as trustee

issued by MERS (ECF Doc. # 5044-4); (5) an Assignment of the Deed of Trust to GMACM issued by MERS (ECF Doc. # 5044-5); (6) a Substitution of Trustee substituting Executive Trustee Services, LLC, as trustee issued by GMACM (ECF Doc. # 5044-6); (7) a Notice of Breach and Default and of Election to Cause Sell of Real Property Under Deed of Trust signed by the authorized officer of Executive Trustee Services, LLC as agent for the beneficiary (ECF Doc. # 5044-7); and (8) the documents attached to Ms. Weber's proof of claim (ECF Doc. # 5044-8).

According to the Debtors' books and records, Ohio Savings originated the subject loan on January 22, 2007 and "shortly thereafter" sold the loan to GMAC Bank. (Suppl. Horst Decl. ¶ 5.) The date of sale is not recorded on the endorsement stamp affixed to the Note. (*See* Suppl. Horst Decl. Exhibit A, 7 of 8.) GMAC Bank thereafter sold the loan to Residential Funding Company, LLC (RFC). (Suppl. Horst Decl. ¶ 5.) Again, the date of sale is not recorded on the endorsement attached to the Note as an allonge. (*See* Suppl. Horst. Decl. Exhibit A 1 of 8.) The Note is endorsed in blank by RFC (*Id.* 8 of 8) and was transferred to 21st Mortgage Corporation on October 12, 2013. (Suppl. Horst Decl. ¶ 5.)

GMACM serviced the loan on behalf of both GMAC Bank and RFC under separate servicing agreements until the servicing of the loan was transferred to GreenTree on February 1, 2013. (*Id.*) The Debtors assert that, as servicer of Ms. Weber's loan, Debtor GMACM "had the right to collect payments and otherwise enforce the terms of the note and deed of trust" and that Ms. Weber's "assertion that the trust is the true owner of the loan and the only one entitled to collect payments is mistaken." (*Id.*)

At the hearing on November 15, 2013, the Debtors explained that though Ms. Weber contended that the Debtors should not have been collecting payments that properly should have

3

gone to the "owner" of the loan, purportedly a securitization trust, "as part of their ordinary business practices, [the Debtors] typically service loans for securitization trusts and the trustees are the ones to collect those payments and then make the appropriate distributions to taxing authorities, insurance companies and the actual owners of the loan." (Nov. 15, 2013 Tr. 70:13–22.) Because the Debtors acted "properly and consistent with business practices," they argued that the Weber Claim should be disallowed.

Ms. Weber's argument at the November 15 hearing concentrated on her claims for wrongful foreclosure. First, she argued that GMACM and RFC wrongly "held themselves out as a creditor" at her mediation by showing an endorsed note that, according to the audit she commissioned from a securitization analyst, belonged to a different creditor. (*Id.* 71:22–72:2.) She further questioned the validity of the Supplemental Horst Declaration and argued that GMACM and RFC had not provided her with proof that GMAC Bank acquired title from Ohio Savings Bank, or with proof that RFC acquired title from GMAC Bank. (*Id.* 72:3–12.) Additionally, Ms. Weber argued that she did not find an updated notice of default filed on September 27, 2012 and that the mediator cancelled the GMACM and RFC foreclosure because they failed to comply with Nevada law. (*Id.* 72:18–24.) Finally, she argued that GMACM was not her creditor and was "never supposed to be holding onto my money and acting as the creditor," and that as far as she knew "they were the servicer" and if "they had a possession of my note, I feel it was illegally acquired." (*Id.* 73:13–16.)

The Debtors responded that GMACM was the servicer of the loan up until servicing was transferred to 21st Century Mortgage on October 1, 2013 and, "[a]s servicer, and pursuant to the servicing agreements with the owners of the loans, we properly pursue our right to foreclose on the loan when it went into default and . . . as servicer, it was typically our business practice . . . to

4

12-12020-mg    Doc 6356    Filed 01/27/14    Entered 01/27/14 11:06:06    Main Document
                                            Pg 5 of 9

collect the regular monthly mortgage payments and make distributions." (*Id.* 74:9–14, 74:18–22.) In order to collect monthly mortgage payments, GMACM did not have to prove ownership of the note. (*Id.* 74:20–22.)

Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim" to claim an interest in a debtor's bankruptcy estate. 11 U.S.C. § 501(a). "The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes prima facie evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)." 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011). Section 502(a) provides that a claim or interest, properly filed, "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Under section 502, if an objection is made, the court shall determine the amount of such claim "as of the filing date." *In re Solutia, Inc.*, 379 B.R. 473, 483 (Bankr. S.D.N.Y. 2007) (citation omitted).

Claims objections have a shifting burden of proof. Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a claimant establishes a prima facie case against a debtor upon filing a proof of claim alleging facts sufficient to support the claim. The objecting party is thereafter required to produce evidence equal in force to that provided by the claimant to rebut the presumption of the claimant's prima facie case. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) ("In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."). If the objecting party satisfies that requirement, the burden then shifts back to the claimant to produce additional evidence to prove the validity of the claim by a preponderance of the evidence. *Id.* at 174.

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

Based on the four corners of Ms. Weber's claim and the Response, the Court finds that Ms. Weber has failed to state a basis for liability on the part of the Debtors. Her proof of claim does not establish that the Debtors improperly applied her payments. The Debtors' objection to Ms. Weber's claim based on insufficient documentation, supported by the Declarations of Deanna Horst, Norman S. Rosenbaum, and Robert D. Nosek, shifted the burden back to Ms. Weber to provide additional evidence to prove the validity of her claim by a preponderance of the evidence. Ms. Weber has failed to do so in either her Response or at the November 15 hearing.

In the Response, Ms. Weber alleges a new claim – wrongful foreclosure – that is not asserted in her proof of claim. Even reading the Weber Claim liberally because she is proceeding *pro se*, it does not establish a claim for wrongful foreclosure. In the Second Circuit, while amendment to a claim is

> freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity, or to plead a new theory of recovery on the facts set forth in the original claim[, . . . .] the court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment.

*Integrated Res., Inc. v. Ameritrust Co., N.A. (In re Integrated Res., Inc.)*, 157 B.R. 66, 70 (S.D.N.Y. 1993) (citations omitted).

Courts apply a two-step inquiry when considering whether to allow post bar date amendments to proofs of claim. *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.*

6

*(In re Enron Corp.)*, 419 F.3d 115, 133 (2d Cir. 2005); *In re Barquet Grp.Inc.*, 477 B.R. 454, 464 (Bankr. S.D.N.Y. 2012), *aff'd*, 477 B.R. 454 (S.D.N.Y. 2012). First, the court must determine "whether there was a timely assertion of a similar claim or demand evidencing an intention to hold the estate liable." *Enron*, 419 F.3d at 133 (quotation omitted). A claim satisfies this first prong if it: "1) corrects a defect of form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the original claim." *Id.* (quoting *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990)).

If this "relation back" inquiry is satisfied, courts then examine whether it would be equitable to allow the amendment. *Id.*; *Integrated Res.*, 157 B.R. at 70. Courts consider the following five equitable factors in determining whether to allow an amendment:

> (1) undue prejudice to opposing party; (2) bad faith or dilatory behavior on the part of the claimant; (3) whether other creditors would receive a windfall were the amendment not allowed; (4) whether other claimants might be harmed or prejudiced; and (5) the justification for the inability to file the amended claim at the time the original claim was filed.

*Integrated Res.*, 157 B.R. at 70 (citation omitted); *Enron,* 419 F.3d at 133. "The critical consideration is whether the opposing party will be unduly prejudiced by the amendment." *Integrated Res.*, 157 B.R. at 70 (citation omitted).

Here, the Response, as it relates to allegations of wrongful foreclosure, fails to satisfy the first step of the amendment inquiry. It does not correct a defect of form in the Weber Claim, nor does it describe the original claim – misapplication of payments – with greater detail. Finally, the new theory of recovery – wrongful foreclosure – is not based on the facts set forth in the Weber Claim for misapplied payments, but instead is based upon new facts related to two mediations and a state court case in Nevada premised on improper assignment of Ms. Weber's

7

loan, fabrication of foreclosure-related documents, and the Debtors' alleged failure to comply with Nevada foreclosure mediation program rules. These theories are not even mentioned in the Weber Claim. Consequently, any arguments Ms. Weber makes relating to a claim for wrongful foreclosure represent an impermissible amendment to the Weber Claim and are disregarded.

To the extent that Ms. Weber does address what she has claimed in the Weber Claim – misapplication of payments – she fails to establish that payments were misapplied by a preponderance of the evidence. *See Allegheny*, 954 F.2d at 174. The McCaffrey Affidavit, which Ms. Weber argues calls into question the ownership of her note, does not establish that GMACM as servicer of her loan was not entitled to collect payments or that the payments were misapplied. She does not provide any information that the securitization trust identified by Mr. McCaffrey did not receive her payments. Finally, Ms. Weber fails to make any allegations that GMACM was not the servicer of her loan. In fact, she admitted at the November 15 hearing that she understood GMACM was the servicer of her loan. (Nov. 15 Tr. 73:15.)

For these reasons, the Court **SUSTAINS** the Objection and Claim No. 3474 is hereby **DISALLOWED** and **EXPUNGED** with prejudice; and it is further

**ORDERED** that Kurtzman Carson Consultants LLC, the Debtors' claims and noticing agent, is directed to disallow and expunge the Weber Claim; and it is further

**ORDERED** that the Debtors are authorized and empowered to take all actions as may be necessary and appropriate to implement the terms of this Order; and it is further

8

**ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

**IT IS SO ORDERED.**

Dated: January 27, 2014
      New York, New York

                                                     _____/s/Martin Glenn_____
                                                          MARTIN GLENN
                                          United States Bankruptcy Judge