**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NOT FOR PUBLICATION

In re:

RESIDENTIAL CAPITAL, LLC, *et al*.

Debtors.

Case No. 12-12020 (MG)

Jointly Administered

**MEMORANDUM OPINION AND ORDER SUSTAINING OBJECTION AND EXPUNGING CLAIM NO. 4443 BY CORLA JACKSON**

*A P P E A R A N C E S:*

CORLA JACKSON
*Pro Se Claimant*

MORRISON & FOERSTER LLP
*Counsel for the Debtors and Debtors in Possession*
425 Market Street
San Francisco, CA 94105
By:    Adam A. Lewis

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the *Debtors' Objection to Proof of Claim Filed by Corla Jackson (Claim No. 4443)* (the "Objection," ECF Doc. # 5100). Through the Objection, Residential Capital, LLC ("ResCap") and its affiliated debtors in these chapter 11 cases (the "Chapter 11 Cases"), as debtors and debtors in possession (collectively, the "Debtors") seek to disallow and expunge proof of claim number 4443 (the "Jackson Claim") filed by Corla Jackson ("Ms. Jackson") on the grounds that the Jackson Claim is without merit and does not include colorable claims against any of the Debtors. The Jackson Claim asserts a $100,000,000.00 general unsecured claim against GMAC Mortgage, LLC ("GMACM").[1] The Objection is supported by

---

[1]    Though the claim form attached to the Jackson Claim lists both GMACM and ResCap, her claim only asserts causes of action against GMACM and only mentions ResCap as part of what she seems to believe is a larger GMACM conglomerate. (*See* Jackson Claim at 1.)

the Declaration of Lauren Graham Delehey (the "Delehey Decl.," Objection Ex. 2), in-house litigation counsel at ResCap. Ms. Jackson did not file a response. On November 15, 2013, the Court held a hearing, and Ms. Jackson appeared. The Court reserved decision on the Objection.

For the reasons set forth below, the Court **SUSTAINS** the Objection and **EXPUNGES** the Claim.

## I. BACKGROUND

On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On August 29, 2012, the Court entered an order setting the bar date of November 9, 2012 for filing non-governmental proofs of claim in the Chapter 11 Cases. (ECF Doc. #1309.) The Court thereafter entered an Order Extending the Bar Date for Filing Proofs of Claim to November 16, 2012. (ECF Doc. # 2093.) On March 21, 2013, the Court entered an order approving the procedures for the filing of objections to proofs of claim in these Chapter 11 Cases (the "Procedures Order," ECF Doc. # 3294). The Court appointed Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 cases (ECF Doc. # 798). Among other things, KCC is authorized to (1) receive, maintain, record, and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (2) maintain an official claims register for the Debtors. According to KCC's records, the Jackson Claim asserts a $100,000,000.00 general unsecured claim against GMACM.

Ms. Jackson is no stranger to these proceedings. She previously filed a motion in these Chapter 11 Cases seeking to lift the automatic stay to permit her to proceed with a lawsuit (the "District Court Action") pending in the United States District Court for the Southern District of Alabama (the "Alabama District Court") against GMACM, for which no final judgment has been entered. (ECF Doc. # 856, subsequently amended at ECF Doc. # 858.) The Court denied Ms.

2

Jackson's request in a *Memorandum Opinion and Order Denying the Jackson Motion to Lift the Automatic Stay* (the "Jackson Opinion," ECF Doc. # 1184). After the Court issued the Jackson Opinion, Ms. Jackson filed another *Motion in Reference to Stay Order Violations by GMAC – GMAC Mortgage Violated/Stay Order Violation Re: GMAC Mortgage Fabricated Documents and Sold Jackson Home Illegally*. (ECF Doc. # 1229.) The Court issued an *Order Denying Corla Jackson Motion in Reference to Stay Order Violations and Fraud by GMAC* (the "Jackson Order," ECF Doc. # 1720). Ms. Jackson then filed two motions for reconsideration. (ECF Doc. ## 1604, 2248.) The Court denied both of those motions by orders issued January 28, 2013. (ECF Doc. ## 2724, 2725.) Ms. Jackson has since filed two additional motions related to the automatic stay; those motions remain pending. (ECF Doc. ## 6198, 6286.)

In both the Jackson Opinion and the Jackson Order, this Court made clear to Ms. Jackson that she could "file a proof of claim in this case – 'Damages claims against the Debtors, as in the Jackson Litigation, are the usual grist for the bankruptcy claims allowance process . . . .'" (ECF Doc. # 1720 at 2 (quoting the Jackson Opinion, ECF Doc. # 1184 at 9).) Ms. Jackson filed the Jackson Claim on November 9, 2012.

    A.    **The Jackson Claim**

The Jackson Claim asserts a $100,000,000.00 general unsecured claim[2] against Debtor GMACM. The stated basis for the Jackson Claim is: "They stole my identity [and] everything I owned causing major damages from 2005-2012 to date." (Jackson Claim at 1.) To support her claim, Ms. Jackson attached 162 pages of documents, including pleadings filed in these Chapter

---

[2] In the Objection, the Debtors assert that Ms. Jackson's claim is a "secured and general unsecured claim" (Objection ¶ 3), though Ms. Jackson's Proof of Claim form fails to indicate any secured portion of her claim. Instead, she filled in only the portion of Box 4 indicating the value of her property as $340,000.00 and used the rest of the box to list additional claims against the Debtors, including "They [illegible] home; Identity theft of equity, land 5 acres estate" and lists as the "basis for perfection" "Toxic Mold + Equity; [illegible]/Medical Bill Still Coming In." (Jackson Claim at 1.)

3

11 Cases and in Ms. Jackson's personal bankruptcy cases, account statements, news articles, medical records, and invoices. The Jackson Claim appears to be predicated on the District Court Action.

1. *Ms. Jackson's Loan History*

Ms. Jackson obtained a home mortgage loan (the "Loan") on May 26, 2004 from Option One Mortgage Corporation ("Option One"), and executed a note (the "Note") in the amount of $240,000.00. (Delehey Decl. ¶ 4, Ex. A.) The Note was secured by a mortgage on real property located in Mobile, Alabama (the "Property"). (*Id.* ¶ 4.) GMACM serviced the loan for Option One, and in June 2008, Option One assigned (the "Assignment") the Note to GMACM. (*Id.* ¶ 4, Ex. B.)

On June 1, 2012, GMACM foreclosed upon the Property and purchased it at a non-judicial foreclosure sale. (*Id.* ¶ 15, Ex. K.) GMACM was both the servicer and the owner of the Note. (*Id.* ¶ 15.) Ms. Jackson has not vacated the Property and remains in possession.[3] (Objection ¶ 25.) In accordance with Alabama law, in June of 2012, GMACM sent a notice of demand for possession of the Property to Ms. Jackson. (Delehey Decl. ¶ 15.) Because Ms. Jackson remains in possession of the Property, her statutory right of redemption has been waived. ALA. CODE 6-5-251 (1993).

2. *The Jackson Bankruptcies*

a. <u>The First Jackson Bankruptcy</u>

In June 2005, Ms. Jackson filed the first of three successive Chapter 13 bankruptcy cases (the "First Jackson Bankruptcy") in the United States Bankruptcy Court for the Southern District of Alabama (the "Alabama Bankruptcy Court"). *In re Corla R. Jackson*, No. 05-13142-WSS-13

---

[3] Though the Debtors commenced an eviction proceeding in the District Court of Mobile County, case number 12-cv-001111-KD-B, the proceeding was dismissed for "procedural technicalities on July 1, 2013." (Objection ¶ 25 n.28.)

4

(Bankr. S.D. Ala. 2005).  GMACM filed two proofs of claim in the First Jackson Bankruptcy: (1) Claim No. 1 in the amount of $285,946.35 (the amount of the Loan plus interest) and (2) Claim No. 7 in the amount of $14,809.60 (for Supplemental Arrearages).  (*See* Objection ¶ 14; Proofs of Claim of GMACM, Case No. 05-13142, June 15, 2005 and Mar. 2, 2006.)

The Alabama Bankruptcy Court entered an order confirming Ms. Jackson's chapter 13 plan (the "Chapter 13 Plan") on October 25, 2005.  (Case No. 05-13142, ECF Doc. # 21.) Pursuant to the Chapter 13 Plan, Ms. Jackson was required to (1) make payments on unpaid arrearages (the "Arrearages") and (2) continue making timely postpetition payments on the Loan as they became due.  (*See* Chapter 13 Plan, Case No. 05-13142, ECF Doc. # 3 ("A holder of a secured claim shall retain the lien securing the claim, unless otherwise provided herein."); *see also* Order Confirming Plan and Payment Order, Case No. 05-13142, ECF Doc. # 21.)

GMACM did not receive regular postpetition monthly mortgage payments, and on January 20, 2006, it moved for relief from the automatic stay.  (*See* Motion for Relief from Automatic Stay Filed by GMAC Mortgage Corporation, Case No. 05-13142, ECF Doc. # 23.) At that point, the Loan had been in default since July 2005.  (Objection ¶ 15.)  The Alabama Bankruptcy Court conditionally denied GMACM's motion (the "First GMACM Stay Relief Order") subject to the following conditions:  (1) Ms. Jackson was required to pay the new arrearages (the "Supplemental Arrearages") in the amount of $14,809.60; (2) GMACM was granted leave to file a proof of claim in the amount of the Supplemental Arrearages (Claim No. 7); (3) Ms. Jackson was required to make timely monthly postpetition payments to GMACM in accordance with the Chapter 13 Plan and the agreements between Ms. Jackson and GMACM; and (4) should Ms. Jackson fail to cure any payment default within ten days of receipt of a notice of default (a "Notice of Default"), the automatic stay would "automatically TERMINATE as it

5

pertains to the Real Property and GMAC shall be free to enforce any and all of its right [*sic*], title, and interest in and to the Real Property in accordance with loan documentation between the parties and applicable law" without further order of the Alabama Bankruptcy Court. (First Conditional GMACM Stay Relief Order, Case No. 05-13142, ECF Doc. # 30, attached to Jackson Claim at 82.) Under the First GMACM Stay Relief Order, GMACM was also required to send Ms. Jackson two Notices of Default and allow Ms. Jackson an opportunity to cure the default; upon Ms. Jackson's third default, the automatic stay would automatically terminate, enabling GMACM to "exercise all its rights under its mortgage without further order of this court." (*Id.*)

Pursuant to the First GMACM Stay Relief Order, GMACM sent Ms. Jackson two Notices of Default for missed mortgage payments on June 8, 2006 and again on August 29, 2006. (Delehey Decl. ¶ 6, Ex. D.) Ms. Jackson never cured the defaults. (*Id.* ¶ 6.) Under the terms of the Alabama Bankruptcy Court's Order, the automatic stay terminated, and GMACM was entitled to begin foreclosure proceedings. (*Id.*) As a result, GMACM did not oppose the Chapter 13 trustee's objections to Claim Nos. 1 and 7, and the claims were reduced and allowed to the amount paid. (*Id.*; *see also* Amended Order[s] Disallowing Claim[s], Case No. 05-13142, ECF Doc. ## 103, 104.)

The First Jackson Bankruptcy was closed on January 20, 2010. (Case No. 05-13142, ECF Doc. #111.) By operation of (1) the Chapter 13 Plan, (2) the Confirmation Order, (3) Bankruptcy Code sections 1322(b)(2), (b)(5) and 1328(a), and (4) the relief granted in the First GMACM Stay Relief Order, Ms. Jackson was not discharged of her obligations under the Loan, including payment of Arrearages, Supplemental Arrearages, and postpetition monthly payments.

6

b.      The Second Jackson Bankruptcy

On October 15, 2010, Ms. Jackson filed a second voluntary petition for relief in the Alabama Bankruptcy Court, again under chapter 13 of the Bankruptcy Code (the "Second Jackson Bankruptcy"). *In re Corla R. Jackson*, Case No. 10-04820 (Bankr. S.D. Ala. 2010). On December 20, 2010, the Second Jackson Bankruptcy was dismissed for "failure to pay [preconfirmation] Chapter 13 plan payments" required by Bankruptcy Code section 1326(a)(1). (Case No. 10-04820, ECF Doc. # 13.) Ms. Jackson was further barred from filing from December 20, 2010 to March 20, 2011. (*Id.*) Ms. Jackson did not receive a discharge, and her case was closed. (Case No. 10-04820, ECF Doc. # 18.)

c.      The Third Jackson Bankruptcy

On April 18, 2011, Ms. Jackson filed a third petition under chapter 13 in the Alabama Bankruptcy Court (the "Third Jackson Bankruptcy"). *In re Corla R. Jackson*, Case No. 11-01545 (Bankr. S.D. Ala. 2011). For this third case, Ms. Jackson retained counsel. (Delehey Decl. ¶ 9.)

Though Ms. Jackson listed an unliquidated claim against Farmers Insurance Company ("Farmers Insurance") in Item 20 of her Statement of Financial Affairs, valued at $1.00, she did not list any potential claims or causes of action against either GMACM or Option One in her Schedules or Statement of Financial Affairs (together, the "SSFA"), though on October 5, 2011, Ms. Jackson filed a Summary of Amendments to her Chapter 13 Plan that amended a response to reflect that the GMACM "monthly note [was] contested and protected." (Delehey Decl. ¶¶ 10, 12, Ex. H; *see also* Case No. 11-01545, ECF Doc. # 65.) She did not explain this amendment or disclose any alleged affirmative claims against GMACM, and on March 12, 2012, Ms. Jackson

7

filed another Summary of Amendments to her Chapter 13 Plan deleting her previous amendment. (Delehey Decl. ¶¶ 12–13, Ex. I.)

As in the First Jackson Bankruptcy, on July 25, 2011, GMACM filed a motion for relief from the automatic stay because Ms. Jackson's Loan was in default. (*See* Motion for Relief from Automatic Stay Filed by GMAC Mortgage, L.L.C., Case No. 11-01545, ECF Doc. # 42.) The Alabama Bankruptcy Court conditionally denied GMACM's request on August 29, 2011, subject once again to Ms. Jackson's compliance with continued payment terms similar to the terms in the First GMACM Stay Relief Order (the "Second GMACM Stay Relief Order," Case No. 11-01454, ECF Doc. # 59.) On October 11, 2011, after Ms. Jackson failed to comply with the conditions of the Second GMACM Stay Relief Order, GMACM filed a notice of the termination of the automatic stay with the court. (Case No. 11-01454, ECF Doc. # 70.) On December 8, 2011, the Alabama Bankruptcy Court denied Ms. Jackson's motion to reinstate the automatic stay. (Case No. 11-01454, ECF Doc. # 89.)

Though a Plan was confirmed in the Third Jackson Bankruptcy on March 23, 2012, the case was dismissed on September 27, 2012 based on Ms. Jackson's failure to comply with a Consent Order,[4] and Ms. Jackson was barred from filing another bankruptcy case for 90 days. (*Id.* ECF Doc. # 116.)

### 3.     The District Court Action

Despite not listing any potential claims or causes of action against either GMACM or Option One in the SSFA filed in the Third Jackson Bankruptcy, and before foreclosure of her property, on January 18, 2012, Ms. Jackson filed a complaint against GMACM (the

---

[4] The "Consent Order" was issued by Bankruptcy Judge William Shulman conditionally denying the chapter 13 trustee's Motion to Dismiss Case for Feasibility and requiring Ms. Jackson to make plan payments to the trustee. (Case No. 11-01454, ECF Doc. # 64.)

8

"Complaint") in Mobile County Circuit Court (the "State Court Action"). (Delehey Decl. ¶ 14, Ex. J.) The State Court Action was removed to the United States District Court for the Southern District of Alabama based on diversity jurisdiction, where it became the District Court Action.[5] (*Id.* ¶ 14.) In the Complaint, Ms. Jackson alleges, among other things, that GMACM did not own her Note and that GMACM violated a pooling and servicing agreement to which Ms. Jackson was a purported third-party beneficiary. (*Id.* Ex. J.) Ms. Jackson further sought damages arising from GMACM's and/or Farmers Insurance's alleged failure to repair hurricane damage to the Property. (*Id.*) All claims in the District Court Action relate to events preceding the Third Jackson Bankruptcy.

On March 8, 2012, GMACM filed a Motion to Dismiss the District Court Action based on judicial estoppel and Ms. Jackson's alleged failure to comply with pleading standards. (*Id.* ¶ 16, Ex. L.) Due to the commencement of these Chapter 11 Cases, the District Court Action was stayed before the court decided the motion. (*Id.* ¶ 16.)

### B. The Debtors' Objection

The Debtors seek an order disallowing and expunging the Jackson Claim on the grounds that the Claim is without merit and does not include colorable claims against any of the Debtors. The Debtors argue that (1) the District Court Action is barred by the doctrine of judicial estoppel, (2) the District Court Action is predicated on a deficient pleading that lacks sufficient specificity and fails to put the Debtors on notice of what they are charged with having done, and (3) to the extent it is decipherable, the Jackson Claim lacks merit. (Objection ¶ 4.)

### C. The November 15, 2013 Hearing

At the hearing on November 15, 2013, the Debtors argued that since Ms. Jackson could not have paid her creditors in full in the Third Jackson Bankruptcy, the evidence suggests that

---

[5] *Jackson v. GMAC Mortgage Corp.*, Case No. 12-cv-00111-KD-B (S.D. Ala. Feb. 23, 2012).

"she concealed these claims in order to hold onto [*sic*] the proceeds of them, rather than sharing them with her creditors." (Nov. 15 Tr. 51:1–3.) The Court inquired as to the status of the Third Jackson Bankruptcy and it was established that the case had been dismissed due to Ms. Jackson's failure to comply with a consent order that required her to make payments to the chapter 13 trustee. The Court asked the Debtors to provide copies of the trustee's motion to dismiss, the consent order, and the order dismissing the Third Jackson Bankruptcy. (*Id.* 59:18–20.) After the November 15 hearing, the Debtors provided the Court with copies of those documents.

Ms. Jackson did not respond to the Debtors' argument that she is judicially estopped from asserting a claim she failed to schedule in the Third Jackson Bankruptcy except to say that "everything [the Debtors] said is invalid." (*Id.* 51:13.) Instead, Ms. Jackson focused on the First Jackson Bankruptcy, which granted her a discharge. She again argued that GMACM "fabricated" her Note (*id.* 52:10) and twice fabricated a loan in her name (*id.* 60:4–5), that "the judge said they [didn't have] a contract with me"[6] (*id.* 52:13–14), that her home was paid off in full with a "zero balance," which is apparently reflected on her credit report (*id.* 60:3–4, 60:13–14), and that the Debtors "stole" her land and "put two loans on [her] property" (*id.* 60:15–16).

## II.    DISCUSSION

Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim" to claim an interest in a debtor's bankruptcy estate. 11 U.S.C. § 501(a). "The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes prima facie evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)." 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer eds., 16th rev. ed. 2011). Section 502(a) provides that a claim or interest,

---

[6]    Ms. Jackson did not indicate to which judge she was referring, though she referred to orders issued by the First Jackson Bankruptcy court multiple times during the proceeding.

10

properly filed, "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Under section 502, if an objection is made, the court shall determine the amount of such claim "as of the filing date." *In re Solutia, Inc.*, 379 B.R. 473, 483 (Bankr. S.D.N.Y. 2007) (citation omitted).

Claims objections have a shifting burden of proof. Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a claimant establishes a prima facie case against a debtor upon filing a proof of claim alleging facts sufficient to support the claim. The objecting party is thereafter required to produce evidence equal in force to that provided by the claimant to rebut the presumption of the claimant's prima facie case. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) ("In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."). If the objecting party satisfies that requirement, the burden then shifts back to the claimant to produce additional evidence to prove the validity of the claim by a preponderance of the evidence. *Id.* at 174.

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006). "What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law." *In re Hess*, 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009) (quoting *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946)).

**A.     The Jackson Claim Is Barred by Judicial Estoppel.**

The Debtors argue that the Jackson Claim, predicated on the same causes of action and allegations set forth in the stayed District Court Action,[7] should be disallowed and expunged for the same reason her District Court Action fails: Ms. Jackson's claims are barred by judicial estoppel. (Objection ¶ 41.)

When a debtor files for bankruptcy protection, her assets, including legal and equitable interests, become property of the bankruptcy estate. 11 U.S.C. § 541(a)(1); *Rosenshein v. Kleban*, 918 F. Supp. 98, 102 (S.D.N.Y. 1996). "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541," including "causes of action owned by the debtor." *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 112 (2d Cir. 2008) (per curiam) (internal quotation marks omitted, bracket in original) (citing *Seward v. Devine*, 888 F.2d 957, 963 (2d Cir. 1989)). As a result, "[p]re-petition causes of action belonging to the debtor are included among the estate's assets." *Kassner v. 2nd Ave. Delicatessen, Inc.*, No. 04 CV 7274 (GBD), 2005 WL 1018187, at *2 (S.D.N.Y. Apr. 29, 2005) (citations omitted).

Pursuant to 11 U.S.C. § 521(1), the debtor is required to disclose all of her actual or potential assets, which would include any known causes of action. *See* 11 U.S.C. §§ 521(1), 1306; *Chartschlaa*, 538 F.3d at 122 (citing 11 U.S.C.§§ 521(a)(1)(B)(i), (iii)); *Rosenshein*, 918 F. Supp. at 102. "[I]f the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then it is a 'known' cause of action such that it must be disclosed." *In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir. 1999) (citations omitted). A debtor's disclosure is "essential to the proper functioning of the bankruptcy system," and "the

---

[7]     In fact, it appears that the only difference in terms of causes of action alleged between the complaint Ms. Jackson filed in the District Court Action and the Jackson Claim here is the addition of wrongful foreclosure allegations here.

12

Bankruptcy Code severely penalizes debtors who fail to disclose assets." *Chartschlaa*, 583 F.3d at 122.

To invoke judicial estoppel in the Second Circuit, "(1) the party against whom it is asserted must have advanced an inconsistent position in a prior proceeding, and (2) the inconsistent position must have been adopted by the court in some matter." *Peralta v. Vasquez*, 467 F.3d 98, 205 (2d Cir. 2006) (citations omitted); accord *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005) (quoting *Stichting v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005)); *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993). The doctrine of judicial estoppel requires "a true inconsistency between the statements in the two proceedings." *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72–73 (2d Cir. 1997). "If the statements can be reconciled there is no occasion to apply an estoppel." *Id.* at 73 (citations omitted). Application of judicial estoppel should be limited "to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Id.* at 72 (citation omitted); accord *Uzdavines*, 418 F.3d at 148.

While "[t]he circumstances under which the doctrine could be applied are far from clear," *Young v. U.S. Dep't of Justice*, 882 F.2d 633, 639 (2d Cir. 1989), many courts in this circuit have applied judicial estoppel in the bankruptcy context to dismiss undisclosed claims. *See, e.g.*, *Coffaro v. Crespo*, 721 F. Supp. 2d 141, 145 (E.D.N.Y. 2010) ("In the bankruptcy context, judicial estoppel is commonly invoked in order 'to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy.'" (quoting *Negron v. Weiss*, No. 06-CV-1288 (CBA), 2006 WL 2792769, at *3 (E.D.N.Y. Sept. 27, 2006))); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 58 (S.D.N.Y. 1999) (collecting cases); *Rosenshein*, 918 F. Supp. at 104 (same).

13

In the Eleventh Circuit, where the District Court Action is pending, judicial estoppel has likewise been used the in bankruptcy context to dismiss undisclosed claims. *See Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002). *Burnes* identifies two prongs to judicial estoppel, similar to those used in the Second Circuit: "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id.* at 1285. These factors are not exhaustive, and courts must always give due consideration to the circumstances of each particular case. *Id.*

The Debtors contend that Ms. Jackson's situation is particularly analogous to an Eleventh Circuit case that applied judicial estoppel to bar a chapter 13 debtor from pursuing claims that she filed in a postpetition forum, after she failed to include those claims in her schedules in the bankruptcy court. *See Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269 (11th Cir. 2010). In *Robinson*, the chapter 13 debtor, prior to receiving a discharge or dismissal, brought an employment discrimination claim against her former employer for a cause of action that arose during the pendency of her chapter 13 plan. *Id.* at 1272. After she received a full discharge from her bankruptcy, and in connection with her employment discrimination lawsuit, the revealed during a deposition that she had not disclosed the discrimination claim to the bankruptcy court. *Id.* The district court subsequently granted summary judgment on the basis of judicial estoppel; by failing to disclose her employment discrimination suit to the bankruptcy court, the district court reasoned, she had taken inconsistent positions under oath with the intention of misleading the court. *Id.*

The *Robinson* debtor appealed to the Eleventh Circuit, arguing that "she did not take inconsistent positions under oath because she did not have a continuing duty to disclose changes

14

in her asset schedule." *Id.* The Eleventh Circuit disagreed, emphasizing "the importance of full and honest disclosure in bankruptcy proceedings," which, the court noted, is "'crucial' to the system's 'effective functioning.'" *Id.* at 1274 (citing *Burnes* 291 F.3d at 1285). In *Burnes*, the Eleventh Circuit had previously observed that "[t]he duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather the debtor must amend [her] financial statements if circumstances change." *Burnes*, 291 F.3d at 1286.

To determine whether a party intends to make a mockery of the judicial system, the Eleventh Circuit, like the Second Circuit, requires clear inconsistency. The inconsistent statements must evince "intentional contradictions, not just simple error or inadvertence." *Am. Nat'l Bank of Jacksonville v. FDIC*, 710 F.2d 1528, 1536 (11th Cir. 1983). "In considering judicial estoppel for bankruptcy cases, the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when [ ] the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Robinson*, 595 F.3d at 1275 (quoting *Barger v. City of Cartersville*, 348 F.3d 1289, 1295–96 (11th Cir. 2003)).

The first requirement for judicial estoppel is satisfied in this case. Ms. Jackson failed to disclose her claims against GMACM in the Third Jackson Bankruptcy. Though she amended her Chapter 13 Plan during the pendency of her bankruptcy to reference that her Note was contested, she never disclosed the existence of any affirmative claims she held against GMACM. But Ms. Jackson subsequently filed the District Court Action asserting prepetition claims against GMACM. (*See* Delehey Decl. Ex. J.)

Ms. Jackson does not contest the Debtors' argument that she knew of her potential claims against GMACM during the Third Jackson Bankruptcy. Indeed, it strains credulity to suggest that Ms. Jackson did not know at that time that she had potential claims against GMACM. By

15

the Third Jackson Bankruptcy, she had previously (1) completed her first chapter 13 plan and received a discharge in the First Jackson Bankruptcy, (2) had the Second Jackson Bankruptcy dismissed, and (3) retained counsel for the Third Jackson Bankruptcy. The claims Ms. Jackson asserts in the District Court Action and in the Jackson Claim stem from her theory that she was discharged of any obligation to pay GMACM in the First Jackson Bankruptcy and that GMACM's subsequent attempts to collect further payments from her are "fraudulent," which is made evident by her failure to pay arrearages in her subsequent bankruptcy filings. Thus, Ms. Jackson's claims in the District Court Action and the Jackson Claim are obviously based on causes of action preceding the Third Jackson Bankruptcy. Item 21 of Schedule B asks for "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each." This clearly called for Ms. Jackson to disclose her alleged claims against GMACM, regardless of whether she had initiated her lawsuit.

And Ms. Jackson *did* in fact list an unliquidated claim against Farmers Insurance for hurricane damage to her property in Schedule B (though in item 20 instead of 21) (one of the claims she asserts against GMACM in the District Court Action as well as in the Jackson Claim), further indicating that she understood unliquidated claims should be disclosed to the bankruptcy court. Even if she did not know that she had a claim against GMACM when she filed the Third Jackson Bankruptcy, she certainly knew when she filed the action that became the District Court Action, and she failed to amend her SSFA.

The Court is equally concerned with the second prong of the judicial estoppel analysis in this case. Ms. Jackson filed the District Court Action while the Third Jackson Bankruptcy was pending. But she never disclosed this fact to the Alabama Bankruptcy Court. Her concealment

16

of the District Court Action undermines the integrity of the judicial system. While the Eleventh Circuit noted in *Robinson* that "full monetary repayment does not necessarily preclude a finding of motive to conceal," *Robinson*, 595 F.3d 1275 (citing *Burnes*, 291 F.3d at 1286 (concluding that since judicial estoppel is intended to protect the judicial system, those asserting it need not demonstrate individual prejudice)), Ms. Jackson's plan did not contemplate paying her creditors in full. Ms. Jackson's conduct clearly indicates her intent to gain an unfair advantage in the Third Jackson Bankruptcy. Had she successfully obtained a settlement from GMACM or realized any other proceeds from the suit during the pendency of the Third Jackson Bankruptcy, she would have been able to keep for herself what she clearly believes to be significant assets, preventing them from being used to satisfy her debts. Ms. Jackson had between eight and nine months to file amendments to her SSFA in the Third Jackson Bankruptcy, where she was represented by counsel, but failed to do so. By contrast, she had no qualms sharing an unliquidated Farmers Insurance claim valued at $1.00 with her creditors.

The law is clear that Ms. Jackson had a duty to disclose substantial changes in her assets. *See id.* at 1274. She failed to do so. The evidence presented indicates that she intended to conceal any settlement or other proceeds from her creditors. As such, her opposing statements made under oath manifest the requisite intent to undermine the judicial system and make judicial estoppel applicable here. Consequently, the Jackson Claim is disallowed and expunged.

      **B.**      **The Jackson Claim Lacks Merit.**

Additionally, the Debtors are correct in their assertion that the Jackson Claim lacks merit. Even though the Court has construed Ms. Jackson's proof of claim liberally because she is proceeding *pro se*, "the court is not permitted to serve as a '*de facto* counsel' and 'rewrite an otherwise deficient pleading in order to sustain an action.'" *Gonzalez v. Asset Acceptance, LLC*,

308 F. App'x 429, 430 (11th Cir. 2009) (citing *GJR Inv., Inc. v. Cnty. Of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

Under the shifting burden standard for objections to proofs of claim, the Jackson Claim was considered prima facie evidence of the validity and amount of her claim. The Debtors made a well-founded Objection, supported by the Declaration of Lauren Graham Delehey, that Ms. Jackson's claim does not present a cognizable basis for relief under the many grounds listed. Specifically, the Debtors presented evidence that established that (1) GMACM was the servicer of the Loan beginning in 2004, (2) GMACM obtained ownership of the Note from Option One in June 2008, (3) the automatic stay with respect to the First Jackson Bankruptcy proceeding automatically terminated after Ms. Jackson violated a conditional order, (4) GMACM accordingly did not object to the chapter 13 trustee's objections to its proofs of claim in the First Jackson Bankruptcy, (5) GMACM received similar stay relief following Ms. Jackson's failure to comply with another conditional order in the Third Jackson Bankruptcy, and (6) GMACM subsequently foreclosed on Ms. Jackson's house by non-judicial foreclosure on June 1, 2012 after she had been in default since July of 2005. These facts rebut Ms. Jackson's theory that because the Debtors did not own her Note and acquired it through fraud, false documentation, false signatures, and "identity theft," they therefore had no authority to foreclose on her house. For the same reasons, her claims for slander of title and clouded title lack merit. And her claims for personal injuries and property damage are frivolous; she has shown no connection between the actions of the Debtors and the alleged injuries and damages.

Thus, the burden shifted back to Ms. Jackson to prove the validity of her claim by the preponderance of the evidence. She has failed to do so. Even construing her Claim liberally, Ms. Jackson has not alleged a cognizable theory of liability against the Debtors sufficient to

carry her burden of persuasion. Her allegations are conclusory and lacking in any evidentiary detail. They are also belied by other evidence in the record. She has provided no proof that the Debtors did not own her Note or that she had already "repaid in full" before the First Jackson Bankruptcy, other than her mistaken interpretation of certain orders in the First Bankruptcy Action. Those orders did not relieve Ms. Jackson of her obligations under the Loan, as the evidence produced by the Debtors and the documents from the First Jackson Bankruptcy show. Her allegations that GMACM, by attempting to collect money owed on the Loan, was violating Bankruptcy Judge Mahoney's orders in the First Jackson Bankruptcy are unfounded. Finally, Ms. Jackson presented no new evidence at the November 15 hearing to substantiate her claims. Consequently, Ms. Jackson failed to establish the validity of her Claim, providing another basis for disallowing and expunging the Jackson Claim.

### III.    CONCLUSION

Since the Court finds that the Jackson Claim is barred by judicial estoppel and lacks merit, the Court need not consider the Debtors' argument that the Jackson Claim fails to satisfy basic pleading standards.

For the reasons stated above, the Court **SUSTAINS** the Debtors' Objection to Proof of Claim 4443; Proof of Claim 4443 is therefore **DISALLOWED** and **EXPUNGED**; and it is further

**ORDERED** that KCC is directed to disallow and expunge the Jackson Claim.

**IT IS SO ORDERED.**

Dated: January 27, 2014
      New York, New York

                                         ___*Martin Glenn*___
                                           MARTIN GLENN
                                  United States Bankruptcy Judge