Hearing Date:  January 30, 2014 at 10:00 a.m. (EST)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel to The ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------ )
                                                                         )
   In re:                                                   )   Case No. 12-12020 (MG)
                                                                         )
RESIDENTIAL CAPITAL, LLC, et al.,                                        )   Chapter 11
                                                                         )
   Debtors.                                                 )   Jointly Administered
------------------------------------------------------------------------ )

**BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF
DEBTORS' FORTY-NINTH OMNIBUS OBJECTION TO CLAIMS
(NO LIABILITY BORROWER CLAIMS – BOOKS AND RECORDS)**

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the confirmed Chapter 11 plan in the above captioned bankruptcy cases (the "Chapter 11 Cases") [Docket No. 6065], hereby submits, on behalf of Residential Capital, LLC ("ResCap") and its affiliated post-effective date debtors (collectively, the "Debtors") in the Chapter 11 Cases, this reply (the "Reply") to those certain identical responses (together, the "Response") interposed by claimant Irene Schmidt ("Ms. Schmidt") [Docket No. 5505, 5552] to the *Debtors' Forty-Ninth Omnibus Objection to Claims (No Liability Borrower Claims – Books and Records)* [Docket No. 5161] (the "Objection").  In support of the Reply, the Borrower Trust submits the Supplemental Declaration of Deanna Horst, the Chief Claims Officer for The

ny-1120045

ResCap Liquidating Trust, annexed hereto as Exhibit 2 (the "Supplemental Declaration"). In further support hereof, the Borrower Trust respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Borrower Trust examined the Objection, the Response, and the Debtors' books and records, and asserts that the Debtors have no liability with respect to Ms. Schmidt's claim. A copy of Ms. Schmidt's proof of claim number 2024 (the "Schmidt Claim") is attached hereto as Exhibit 1.

2. If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co., L.P. v. Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed. Appx. 40 (2d Cir. 2002).

3. The Schmidt Claim relates to purported damages arising from a loan modification agreement that Ms. Schmidt alleges was entered into by the Debtors improperly. There is nothing in the Debtors' books and records, however, suggesting any impropriety with respect to the Debtors' entry into the loan modification agreement. Ms. Schmidt has failed to provide a sufficient explanation as to why her claim represents a valid claim that should be allowed against the Debtors, and, as discussed herein, the Borrower Trust provides detailed explanations as to why the elements of Ms. Schmidt's claim do not provide the basis for an allowed claim against the Debtors. Accordingly, the relief sought in the Objection should be granted with respect to the Schmidt Claim.

ny-1120045

## CHAPTER 11 PLAN AND CREATION OF
## THE RESCAP BORROWER CLAIMS TRUST

4. On December 11, 2013, at the conclusion of the confirmation hearing, the Bankruptcy Court entered an *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as such term is defined in the Plan) occurred and the Borrower Trust was created [Docket No. 6137].

5. The Plan provides for the creation and implementation of the Borrower Trust. See Plan, Art. IV.F. The Plan further provides that the Borrower Claims Trustee is deemed the representative of the Debtors' estates for the purpose of prosecuting objections to borrower claims. See Plan, Art. IV.S.

## REPLY

6. A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Moreover, section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. 502(b)(1). Furthermore, the burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor. Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

ny-1120045

7.  The Schmidt Claim was filed as an administrative priority claim in the amount of $245,241.48 against Debtor Residential Capital, LLC.[1]  As a preliminary matter, Ms. Schmidt incorrectly filed her claim as an administrative priority claim under section 503(b)(9) of the Bankruptcy Code.  There are no documents appended to either the proof of claim or the Response (as defined below) evidencing or demonstrating that Ms. Schmidt is entitled to an administrative priority claim under section 503(b)(9) of the Bankruptcy Code.  In short, this is not a claim arising from the value of goods received by the Debtors in the ordinary course of business within 20 days of the May 14, 2012, nor is the claim entitled to any other administrative priority.

8.  According to the Schmidt Claim, the total claim consists of (a) $183,600.00 in damages related to "fraudulent refinancing"; (b) "Hurricane Katrina related claims" in the total amount of $38,457.75; (c) a "Hurricane Katrina related claim" in the amount of $17,433.68 (purportedly held in escrow by GMACM); and (d) a "Hurricane Isaac related claim" in the amount of $5,750.05 (purportedly held in escrow by GMACM).

9.  The Schmidt Claim attaches a copy of a Petition for Damages, filed on June 27, 2012 by Ms. Schmidt against GMACM in the 24th Judicial District Court for the Parish of Jefferson in the State of Louisiana (No. 716448) (the "Petition for Damages"), which describes the purported bases for the foregoing claims.  In the Petition for Damages, Ms. Schmidt essentially alleges that she was damaged because her ex-husband, Douglas Schmidt ("Mr. Schmidt", and together with Ms. Schmidt, the "Schmidts"), entered into a loan modification agreement with GMACM without her knowledge or consent, and because GMACM disbursed certain insurance proceeds related to hurricane damage to the Property (as

---

[1] The Schmidt Claim left the debtor name and case number boxes blank.  By default, KCC lists the Schmidt Claim as a claim against Residential Capital, LLC on the official claims register.

defined below) to Mr. Schmidt rather than to her. The Petition for Damages was automatically stayed upon the Petition Date. The Schmidt Claim also attaches a copy of a Marital Property Settlement Agreement between Ms. Schmidt and Mr. Schmidt, dated November 22, 2010 (the "Marital Settlement Agreement"), as well as a copy of a Non-HAMP Loan Modification Agreement between Mr. Schmidt and GMACM, dated June 29, 2011 (the "Loan Modification Agreement").

10. The Debtors identified certain claims filed by Borrowers[2] that either (a) contradict the information in the Debtors' books and records and/or (b) fail to establish a liability reflected in the Debtors' books and records. The Debtors reviewed the claimants' payment histories and the Debtors' internal servicing notes, and, where applicable, loan modification applications, loan modification denial letters, loan modification approval letters, the claimant's compliance with modifications (trial and/or permanent) and any instructions or guidelines provided by the investor. See Objection at ¶ 22. Based on the Debtors' examination of their books and records, the Debtors determined that they had no liability with respect to the Loan Modification Claims because the Debtors complied with the applicable guidelines and policies governing the loan modification process. See id.

11. Prior to filing the Objection as well as after reviewing the Response, the Debtors attempted to reconcile the Schmidt Claim with the information in their books and records. See Supplemental Declaration at ¶ 6. Specifically, the Debtors reviewed, among other documents, Mr. Schmidt's note and the accompanying mortgage, the Marital Settlement Agreement, the Loan Modification Agreement, and various correspondence between the Schmidts and GMACM with respect to the foregoing. See id.

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

5

ny-1120045

12. The Response[3] essentially summarizes the allegations in the Petition for Damages. According to the Response, the $183,600.00 amount of the "fraudulent refinancing" component of the Schmidt Claim equals the amount of payments made by Ms. Schmidt over the course of nine years to GMACM in connection with Mr. Schmidt's mortgage loan (prior to Mr. Schmidt's loan modification). However, neither the Schmidt Claim nor the Response includes any documentary or other evidence substantiating the amount of that portion of the claim. See Supplemental Declaration at ¶ 7. Similarly, neither the Schmidt Claim nor the Response provides any documentary or other evidence substantiating the amount of the insurance-related claims. See id.

13. According to the Marital Settlement Agreement, (a) the Schmidts were married on April 15, 1998; (b) pursuant to the Schmidts' marriage contract referenced in the Marital Settlement Agreement (the "Marriage Contract"), Mr. Schmidt was obligated to purchase, at his own expense, the Schmidts' marital home, provided that the home would be owned one-half by each of the Schmidts; and (c) in accordance with the Marriage Contract, Mr. Schmidt purchased a home located at 3608 Wanda Lynn Drive, Metairie, Louisiana 70002 (the "Property"). See Supplemental Declaration at ¶ 8; see also Marital Settlement Agreement (a copy of which is included with the Schmidt Claim attached hereto as Exhibit 1) at pp. 1-2.

14. In order to finance his purchase of the Property, Mr. Schmidt obtained a loan in the principal amount of $172,000.00 (the "Loan") that was originated by North Texas Financial Network on June 26, 2002. See Supplemental Declaration at ¶ 9. The Loan was evidenced by an adjustable rate mortgage note dated June 26, 2002 executed by Mr. Schmidt (the "Original Note" or "Original Loan"). See id.; Original Note, Exhibit A to Supplemental

---

[3] In the Response, Ms. Schmidt increased the amount of the "Hurricane Isaac related claim" to $9,091.29 and added a "Homeowners' claim" of $1,644.31 (purportedly held in escrow by GMACM).

Declaration. Although title to the Property was in the name of both of the Schmidts, only Mr. Schmidt signed the Original Note. See Supplemental Declaration at ¶ 9; Original Note, Exhibit A to Supplemental Declaration. Mr. Schmidt's obligations under the Original Note were secured by a mortgage on the Property signed by both of the Schmidts and recorded on or about July 1, 2002 (the "Original Mortgage"). See Supplemental Declaration at ¶ 9; Original Mortgage, Exhibit B to Supplemental Declaration. The Original Mortgage was subsequently assigned to GMAC Financial Services, later known as Ally Financial Services. See Supplemental Declaration at ¶ 9. GMACM began servicing the Original Loan on July 22, 2002. See id. On February 15, 2013, servicing of the Modified Loan (as defined below) was transferred to Ocwen. See id.

15. According to the Marital Settlement Agreement, the Schmidts were divorced on or about April 29, 2004. See Supplemental Declaration at ¶ 10; see also Marital Settlement Agreement at p. 2. The Marital Settlement Agreement (dated November 22, 2010) states, among other things, that (a) Mr. Schmidt agreed to transfer all of his right, title and interest in the Property to Ms. Schmidt; (b) Mr. Schmidt agreed to transfer to Ms. Schmidt all right, title and interest in and to insurance proceeds then held by the lender in the approximate amount of $22,000.00; (c) Mr. Schmidt agreed to bring the Original Mortgage current through March 2010; (d) Mr. Schmidt agreed to pay one-half of the sum due and owing to bring the Original Mortgage current through November 2010; (e) Mr. Schmidt agreed to execute all documents necessary to allow the lender and its successors or assigns to provide account information to Ms. Schmidt; (f) Ms. Schmidt agreed to pay one-half of the sums due and owing on the Original Mortgage from April 2010 through November 2010; and (g) Mr. Schmidt agreed to pay Ms. Schmidt one-half of the payoff figure for the Original Loan as of December 2010 in

monthly installments that would be equal to one-half of the monthly payment as required by the lender, with Ms. Schmidt agreeing to pay the full monthly amount due to the lender. See Supplemental Declaration at ¶ 10; see also Marital Settlement Agreement at pp. 2-3.

16. On June 29, 2011, Mr. Schmidt and GMACM entered into the Loan Modification Agreement, effective as of July 1, 2011, which modified the terms of the Original Loan (the "Modified Loan"). See Supplemental Declaration at ¶ 11.

*"Fraudulent Refinancing" Claim*

17. Ms. Schmidt contends that she was damaged because Mr. Schmidt and GMACM entered into the Loan Modification Agreement without her knowledge or consent. GMACM, however, did not have an affirmative duty to contact Ms. Schmidt with respect to the modification of the Original Loan. See Supplemental Declaration at ¶ 12. Although the Original Mortgage was signed by both of the Schmidts, the Original Note was signed only by Mr. Schmidt. See id. Since Mr. Schmidt was the sole obligor under the Original Note, the request for a loan modification was negotiated only with him consistent with the terms of the Original Mortgage. See id. The Original Mortgage states, in pertinent part, that "… any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): … agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent." See id.; Original Mortgage, Exhibit B to Supplemental Declaration (emphasis added). There is nothing in the Debtors' books and records, and Ms. Schmidt has provided no documentary or other evidence, to suggest that Ms. Schmidt assumed or was otherwise obligated on the Original Loan or the Modified Loan. See Supplemental Declaration at ¶ 12. The fact that Ms. Schmidt signed the Original Mortgage did not make her a borrower obligated under the

8

ny-1120045

Original Note.  See id.  Ms. Schmidt's only obligation to make payments to GMACM is found in the Marital Settlement Agreement, a purported contract between only her and Mr. Schmidt.  See id.

18.    Subsequent to the date of the Loan Modification Agreement (June 29, 2011), GMACM received letters from Ms. Schmidt on a monthly basis enclosing one-half of the monthly payment due under the Modified Loan.  See Supplemental Declaration at ¶ 13.  Indeed, up until receipt of the Petition for Damages, Ms. Schmidt did not make GMACM aware of any dispute she had related to the Loan Modification Agreement since there was no communication from her that raised such an issue.  See id.

19.    Lastly, any argument by Ms. Schmidt that she suffered financial damage as a result of the Loan Modification Agreement is belied by the fact that, according to GMACM's calculations, the aggregate amount of payments required under the Modified Loan until maturity is approximately $2,455.86 less than the aggregate amount of payments that would have been required under the Original Loan in the absence of the loan modification.  See Supplemental Declaration at ¶ 14.  Moreover, as noted, even if the amount paid on account of the Original Loan prior to the loan modification (which Ms. Schmidt alleges to be $183,600.00) is a cognizable claim against GMACM -- which it is not -- Ms. Schmidt fails to substantiate this amount.  See id.

20.    In sum, GMACM had no contractual or other obligation to obtain Ms. Schmidt's consent to the Loan Modification Agreement, see Supplemental Declaration at ¶ 15, and Ms. Schmidt has failed to demonstrate how she was harmed by the Debtors' actions.  Accordingly, there is no basis for Ms. Schmidt's "fraudulent refinancing" claim against GMACM.

*Insurance-Related Claim*

21.     With respect to the portion of Ms. Schmidt's claim concerning the hurricane-related insurance proceeds -- similar to GMACM's argument with respect to the "fraudulent refinancing" portion of her claim -- because (a) only Mr. Schmidt signed the Original Note and (b) the Loan Modification Agreement was properly negotiated and executed only by Mr. Schmidt, GMACM only was obligated to remit any insurance proceeds, including those related to damage to the Property caused by Hurricanes Irene and Katrina, to Mr. Schmidt.  See Supplemental Declaration at ¶ 16.  In the loan servicing industry, it is standard practice to release insurance proceeds to the loan servicer, who then inspects the property and the proposed repairs and releases the funds to the noteholder in installments until the repairs are complete.  See id.  Mr. Schmidt was the sole borrower and obligor under the Original Loan and the Modified Loan and, therefore, the only party to whom the loan servicer can deliver the proceeds of the insurance policies.  See id.

22.     In sum, GMACM had no contractual or other obligation to remit the insurance proceeds to Ms. Schmidt and rightfully remitted the proceeds to Mr. Schmidt (or rightfully held certain proceeds in escrow pending an inspection).  See Supplemental Declaration at ¶ 17.[4]  Accordingly, there is no basis for Ms. Schmidt's insurance-related claim against GMACM.

23.     Based on the above information and as further supported by the Supplemental Declaration, the Debtors determined that they have no liability with respect to the

---

[4] As noted, Ocwen is currently servicing the Modified Loan.  The Debtors understand that Ms. Schmidt (who currently resides at the Property) has not allowed Ocwen to inspect the Property or the proposed repairs, and Ocwen will not release any insurance proceeds remaining in escrow until an inspection is completed.  See id.

10
ny-1120045

Schmidt Claim, and accordingly the Borrower Trust requests that the Schmidt Claim be expunged and disallowed in its entirety.

## CONCLUSION

WHEREFORE, the Borrower Trust respectfully submits that the relief sought in the Objection should be granted with respect to the Schmidt Claim.

Dated:  January 27, 2014  
      New York, New York

/s/  Norman S. Rosenbaum  
Gary S. Lee  
Norman S. Rosenbaum  
Jordan A. Wishnew  
MORRISON & FOERSTER LLP  
1290 Avenue of the Americas  
New York, New York 10104  
Telephone: (212) 468-8000  
Facsimile: (212) 468-7900

*Counsel to The ResCap Borrower Claims Trust*

ny-1120045