## Exhibit 1

**The Disputed Claims**

## Claim No. 5422

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT _Southern_ DISTRICT OF _New York_ | | PROOF OF CLAIM |
|---|---|---|

Name of Debtor:
*Residential Funding Real Estate Holdings, LLC*

Case Number:
*12-12062 (MG)*

RECEIVED
NOV 1 6 2012
KURTZMAN CARSON CONSULTANTS
COURT USE ONLY

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
*Jamie L. Gindele*

Name and address where notices should be sent:
*Jamie L. Gindele*
*PO Box 42200*
*Cincinnati, Ohio 45242*
Telephone number:                          email:
*(513)793-5044*                        *jamiegindele@gmail.com*

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
*(If known)*

Filed on:_____

Name and address where payment should be sent (if different from above):



Telephone number:                          email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ *709,777.40 plus 7.25% interest per year from October 1, 2008*

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** *Real Estate - Debtor claimed an interest in a real estate note that was obtained fraudulently,*
(See instruction #2) *through an alleged Mortgage Electronic Systems (MERS) assignment. Precedent exists for this Court to deny validity of MERS assignments. Judgment entry occurred after Debtors filed for bankruptcy. Documentation attached.*

**3. Last four digits of any number by which creditor identifies debtor:** ____ ____ ____ ____

**3a. Debtor may have scheduled account as:**
_____
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
_____
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☒Real Estate  ☐Motor Vehicle  ☐Other
Describe:

Value of Property: $_____

Annual Interest Rate_____% ☐Fixed  or  ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$_____

Basis for perfection: _____

Amount of Secured Claim:    $_____

Amount Unsecured:          $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

Amount entitled to priority:
$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

1212062121116000000000002

B 10 (Official Form 10) (12/11)                                                                                            2

---

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**RECEIVED**

**NOV 1 6 2012**

**KURTZMAN CARSON CONSULTANTS**

**8. Signature:** (See instruction #8)

Check the appropriate box.

☒ I am the creditor.    ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Jamie L. Gindele
Title: Director
Company: Gindele Properties, LLC
Address and telephone number (if different from notice address above):

(Signature) *Jamie L. Gindele*    (Date) 11/14/12

Telephone number:                    email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

# COURT OF COMMON PLEAS
# HAMILTON COUNTY, OHIO

RESIDENTIAL FUNDING LLC.        )
           **Plaintiff,**        )    <u>**Answer and Counterclaims**</u>

v.                      )    **Case No.  A 0905631**

JAMIE L. GINDELE ET. AL.

                         **JUDGE BETH A. MYERS**

           **Defendants.**      )

---

## <u>DEFENDANTS ANSWER AND COUNTERCLAIMS</u>

Now come Defendants, while awaiting the trial courts disposition of Defendant's Objection to Magistrate's Decision and Defendant's Opposition to Plaintiff's Motion For Default Judgment and state their Answer and Counterclaims under Civil Rule 6(B)(2).

Defendants Jamie Gindele and Gary Gindele state they:

1. Deny the allegations in Count One, paragraph 1 of the complaint. To the extent paragraph 1 contains conclusions and argument not supported by any evidence, Defendant states that no response is required and that such statements are improper and should be stricken.
2. Admits the allegations of Count Two, paragraph 2 only to the extent that Defendants executed and delivered a promissory note and mortgage to the original holder, Greenpoint Mortgage Funding on or about June 30, 2006. To the extent that paragraph 2 incorporates the allegations of Count One, paragraph 1, they are all denied.
3. Admits the allegations in paragraph 3 of the complaint that mortgage was filed for record on June 30, 2006, in Official Record No. 10284, page 642, of the county recorder's records but also asserts that a proper chain of custody from the original holder, Greenpoint Mortgage Funding to the current holder and plaintiff, Residential Funding Real Estate Holdings, LLC., was not maintained. To the extent paragraph 3 contains any other factual allegations, they are all denied. To the extent that paragraph 3 contains legal conclusions and argument, Defendants state that no response is required and that such statements are improper and should be stricken. Defendants further dispute and deny that *"the conditions of defeasance contained therein have been broken."* Defendants further dispute and deny that *"plaintiff has complied with all conditions precedent."* Defendants further dispute and deny that *"plaintiff is entitled to have said mortgage foreclosed."*
4. Are without knowledge or information sufficient to form a belief regarding the allegations in paragraph 4.
5. Deny the factual allegations in paragraph 5 as plaintiff has claimed in its complaint as evidenced in Exhibit D of the Complaint, that Mortgage Electronic Registration Systems, Inc. relinquished its rights to this transaction when it "assigned" it rights to Residential Funding Company, LLC through its Corporate Assignment of Mortgage/Deed of Trust. To the extent that paragraph 5 contains legal conclusions and argument, Defendants state that no response is required and that such statements are baseless and improper and should be stricken.
6. Admits the allegations in paragraph 6 of the complaint.

## DEFENSES

Defendants state the following defenses to each claim asserted by the Plaintiff:

1. The Complaint fails to state any claims against the Defendants upon which this Court may grant relief.

2. Plaintiff's injuries and/or damages and/or expenses, if any, were the direct and proximate result of their own acts, omissions, malice, negligence, fault and/or breach of contract with Defendants.

3. Plaintiff's claims are barred by the doctrine(s) of assumption of the risk, estoppels, waiver, release, fraud, unclean hands, res judicata, collateral estoppel and/or laches.

4. Plaintiff's injuries and/or damages and/or expenses, if any, were the direct and proximate result of the acts, omissions, malice, negligence, fault and/or breach of the persons and/or parties other than Defendants, namely and specifically plaintiff's own agents, loan servicers, mortgage brokers, title attorneys and prior promissory note and mortgage holders, that caused or contributed to cause all jointly, or a portion of severally, the claimed damages or alleged liability barring recovery or liability against Defendants in whole or in part.

5. Plaintiff's injuries and/or expenses, if any, were caused solely by the superseding, intervening acts and conduct of Plaintiff and/or other persons or parties, which intervened between the alleged acts and conduct of Defendants and the claimed damages or liability, barring recovery or liability against Defendants in whole or in part.

6. Plaintiff's claim of damages or liability are barred in whole or in part by the limitations imposed by law as to the recovery of such damages.

7. Plaintiff's claim of damages or liability are barred in whole or in part by Plaintiff's failure to demonstrate mitigation of its risks.

8. Plaintiff's claim of damages or liability are barred in whole or in part by the applicable statutes of limitation, statutes of repose and other statutes relevant to the limitation of actions.

9. Plaintiff's claims of damages or liability are barred in whole or in part by the doctrines of ratification, consent and acquiescence.

10. Some or all of Plaintiff's claims of damages or liability are barred in whole or in part, by the doctrines of merger and integration, and/or parole evidence rule.

11. Plaintiff failed to comply with Ohio Civ.R. 10(D).

12. Defendants affirmatively assert the defense of improper service.

13. Defendants affirmatively assert the defense of improper service of process.

14. Defendants affirmatively assert that plaintiff violated the terms of the Security Instrument, that the Security Instrument clearly articulates the responsibilities of the parties and that plaintiff has breached same.

15. Defendants have fully performed under their contractual obligations until such time that plaintiff's agents and/or loan servicers breached the contract.

16. Defendants denies all allegations in the Complaint which are not specifically admitted herein.

17. Defendants reserve the right to assert any and all general and affirmative defenses that may develop during the course of this matter, via discovery or otherwise.

## AFFIRMATIVE DEFENSES

Defendants state the following affirmative defenses to each claim asserted by Plaintiff:

18. Defendants incorporate paragraphs 1-17 of this document as if fully stated within.
19. Plaintiff has failed to state a cause of action;
20. This court lacks jurisdiction over the subject matter;
21. Plaintiff lacks standing to maintain this action;
22. Plaintiff lacked standing at the time this action was filed;
23. Plaintiff allegedly received assignment of note and mortgage in attempts to bring its complaint, however the chain of custody was broken as plaintiff failed to demonstrate how Mortgage Electronic Systems (MERS) as a previous holder of the note and mortgage came into its possession.
24. An assignment from MERS is without legal effect in The State of Ohio.
25. Plaintiff has failed to plead the performance or occurrence of conditions precedent, that the proper and valid notification of an alleged breach was communicated to Defendants by Plaintiff as required in covenant 20 of the sole Security Agreement governing this transaction.
26. Plaintiff has failed to comply with the post-closing loan disclosure requirements of 12 C.F.R. § 226.9, et seq;
27. Plaintiff and/or its agents and/or its loan servicer, breached its contract with Defendants when it forced placed home owner's insurance upon Defendants in an amount in excess of that required under the contract, increasing Defendants' required monthly payments substantially, actually and proximately causing Defendants to no longer meet their obligation under the contract, and thus excusing Defendants performance under the contract.
28. Defendants performance under the original contract and the loan modification is excused;
29. Upon reason and belief, the mortgage transaction is void for fraud due to the original mortgage assignees', Greenpoint Mortgage Funding (Greenpoint) and Mortgage Electronic Registration Systems, Inc., (MERS), violations of the Real Estate Settlement and Procedures Act (RESPA), 12 U.S.C. § 2601, et seq., in paying kickbacks and/or

unearned fees to Brookline Home Loans, Observatory Ave., Cincinnati, Ohio 45208 (Broker) and Leo Grote, Esq., Cincinnati, Ohio 45242 (Title Attorney);

30. The loan modification documents relied upon by Plaintiff are void for lack of compliance with RESPA, 12 U.S.C. § 2601, et seq.;

31. The loan modification documents relied upon by Plaintiff are void for lack of compliance with Regulation Z of the Truth in Lending Act, 12 C.F.R. § 226.1, et seq.;

32. The loan modification mortgage transaction is void for common law fraud due to Wilshire Credit Corporation, the plaintiff's loan servicer, presentation of a substantially lower interest rate during its negotiations (2.99%, thirty year fixed mortgage) than Defendants ultimately received (7.25%, five year ARM) that Defendants relied upon Wilshire's misrepresentation of said better terms, that Defendants were induced into a loan modification due to these misrepresentations and were further induced to give up all previous, material and substantial legal claims against prior parties, including Wilshire without any valuable consideration in return.

33. An alleged mortgagee, MERS, was not properly licensed to conduct business in the State of Ohio, could not be as plaintiff has averred, simultaneously both a nominee and a mortgagee; and

34. The underlying mortgage is void for want of MERS registering with the State of Ohio as a federally chartered bank, state-chartered commercial bank, credit union, savings association, nondeposit trust company, international banking office, consumer finance company, State of Ohio licensed mortgage broker business, mortgage broker individual, retail installment seller, or sales finance company.

35. Plaintiff, its agents, loan servicers, brokers and title attorneys (collectively "Plaintiff") have demonstrated a pattern of conduct which clearly demonstrates bad faith. In no less than 12 separate instances, "Plaintiff" failed to competently execute even a minimal level of performance in regards to its contractual and covenantal obligations with Defendants, to the total detriment of the Defendants. As a result

36. Defendants, unable to rely upon the loan servicer for competent performance of its responsibilities, had no other choice but to issue a formal, written, certified dispute communications to the loan servicer and to the holder of the note and mortgage at that time. Exhibit A is attached and incorporated as if fully stated herein.

37. Plaintiff failed in its minimal responsibilities to resolve Defendants legitimate disputes and therefore

38. Defendants issued a formal rescission letter demand upon the loan servicer and holder of the note and mortgage. Exhibit B is attached and incorporated as if fully stated herein.

## COUNTERCLAIMS

39. Defendants re-allege and incorporate paragraphs 1-38 as if fully stated herein;

40. Defendants allege that a mortgage contract existed between the Defendants and the original holder of a certain note and mortgage;

41. Defendants allege that Plaintiff has assumed all of the damages, expenses, breaches and liabilities of any and all agents, loan servicers, brokers, title attorneys, insurers, mortgagees, and prior holders of this note and mortgage harming Defendants;

42. Defendants specifically allege that Plaintiff forced placed hazard, wind, fire and/or flood insurance upon Defendants prior to September 1, 2008 requiring Defendants to pay the premium for said insurance;

43. Defendants allege forced placed insurance was substantially more expensive than similar insurance available on the market and that plaintiff was unjustly enriched by this action;

44. Defendants allege said forced placed insurance was unnecessary because Defendants had sufficient insurance in place until Plaintiff under the terms of its escrow contract with Defendants failed to make the necessary premium payment from the escrow account, thus causing the cancellation of the policy.

45. Defendants allege they repeatedly communicated with loan servicer and subsequently the holder of the note and mortgage at that time about the forced placed insurance, specifically demonstrating Defendants' insurance was sufficient under the terms of the parties' contract and that it was only through the plaintiffs and/or loan servicers negligence and/or incompetence that the underlying sufficient policy was cancelled. Since Defendants had arranged for the underlying sufficient policy through their own insurance relationship, plaintiff and/or loan servicers negligence, malice and incompetence caused severe damage to Defendants reputation and ability to secure future insurance coverage.

46. Defendants allege Plaintiff breached its contract with Defendants when it forced placed said insurance upon Defendants in an amount in excess of that required under the parties' contract.

47. Defendants allege Plaintiff's actions caused Defendants to no longer be able to make the payments under the contract;

48. Defendants and Plaintiff's loan servicer signed a loan modification agreement on or about September 1, 2008. See Exhibit C attached and incorporated as if fully stated herein.

49. Said loan modification agreement states in paragraph 3 that "...*the interest rate of the principal amount of the Note will be fixed at 7.25% and will remain in effect for 60 months.*" This resulted in Defendants relying upon this fact in determining the acceptability of the loan modification agreement. Said loan modification agreement states in paragraph 4 that "...*In addition to the principal and interest obligation, Borrower(s) are required to make monthly escrow payments of $1691.61. Borrower(s) therefore will pay this Note in regular payments of $5981.19 for the 60 month fixed-rate period...The escrow portion of the monthly payment is subject to change due to increases or decreases in taxes and/or insurance premiums, and the monthly payment above may be changed by Wilshire to reflect such increase or decrease.*"

50. Defendants assert that neither the property taxes nor the insurance premiums changed and that Plaintiff erroneously increased the payment obligation amount to $7197.91 effective on November 1, 2008.

51. Defendants assert that immediately upon being made aware of this billing error, on or about October 15, 2008, that Defendants notified Plaintiff's loan servicer of the error and that the loan servicer continuously and repeatedly denied Defendants' billing error dispute causing Defendants to be forced to accelerate their claims through formal, certified, written communications dated April 6, 2009. See Exhibit A attached and incorporated as if fully stated herein. Plaintiff's actions caused Defendants to no longer be able to make the payments under the contract.

52. Defendants assert that Plaintiff had completed a thorough evaluation of Defendants financial condition prior to September 1, 2008 in determining the terms and conditions of the Loan Modification Agreement and Defendants further assert that Plaintiff knew and possessed the necessary knowledge to be aware that **any** increase in payment obligations would result in Defendants inability to make the increased payments under the contract and therefore;

53. Defendants assert and allege that Plaintiff through its loan servicer and as a result of their actions violated the Ohio Consumer Sales Practices Act, R.C. 1345.01, et seq.,

and specifically Section § 1345.03 (A) and (B)(2)(3)(4)(5) and (6), that under Section § 1345.04 Jurisdiction, that the courts of common pleas and municipal or county courts within their respective monetary jurisdiction, have jurisdiction over any supplier with respect to any act or practice in this state covered by sections 1345.01 to 1345.13 of the Revised Code.

54. Defendants further assert that under Section § 1345.09 Private Remedies that for a violation of Chapter 1345 of the Revised Code, a consumer has a cause of action and is entitled to the rescission of the transaction or recovery of damages. Defendants assert that a rescission letter was sent via certified mail on July 3, 2009. Exhibit B is attached and is incorporated as if fully stated herein.

55. Defendants assert and allege that this counterclaim is being restricted to the aforementioned Ohio statute violations and direct violations of the Security Agreement between the parties under the direct jurisdiction of the Hamilton County Common Pleas Court and that related federal violations under 15 U.S.C. 1635(a), Regulation Z.12 C.F.R. 226.17 and 226.23 and Fair Debt Collection Practices Act 15 U.S.C. § 1692 *et. seq.* ("FDCPA,") and the Fair Credit Reporting Act 15 U.S.C. § 1681 *et seq.* ("FCRA,") will be pursued in the federal court venue pending the disposition of this case.

56. Defendants assert that Plaintiff never provided Defendants with any evidence of an increase in either the taxes or the insurance premiums, despite repeated requests made by Defendants. In fact, due to Plaintiff's failure to properly and competently handle the insurance coverage on the underlying property, Defendants executed a new policy with State Auto Insurance of Ohio at their own expense effective April 1, 2009, and provided documentation of same to Plaintiff.

57. Plaintiff however, failing in its minimal obligations under federal and state real property escrow laws and its obligations under the Security Agreement governing this transaction, further denied Defendants' due process by not reflecting the documented insurance costs reduction in the accounting for the transaction between Plaintiff and Defendants, in fact

58. Plaintiff ceased sending any account statements whatsoever after February 1, 2009 inflicting additional intentional harm towards Defendants and Defendants' attempts to resolve the billing dispute.

59. Plaintiff's failure to adhere to the terms, conditions and uniform covenants of the security instrument and its failure to properly accelerate through proper notification any complaint that it alleged to have with the Defendants, constitutes a breach of contract, this willful breach of contract by the Plaintiff was attended by such malice, insult, and abuse that it constitutes an independent tort, thus entitling the Defendants to recover punitive damages as well as actual damages, which were proximately and foreseeable caused by the Plaintiff's breach.

60. Plaintiff's attempt to establish itself as a Real Party in Interest, causes Plaintiff to assume all the responsibilities of its agents in this transaction and thus the breach by the Plaintiff through its' agents, broker representatives, title attorneys and loan servicers, which was willful or grossly negligent, was attended by such malice, insult, and abuse that it constituted an independent tort, thus entitling the Defendants to recover punitive damages as well as actual damages.

61. Plaintiff breached the above described contract for reasons incompatible with good faith and fair dealing, as a proximate and foreseeable result of which the Defendant suffered damages. The breach of contract as evidenced by the violations of the terms, conditions and uniform covenants of the security agreement was wholly unsupported by any arguable reasons, was willful, malicious, and in bad faith.

62. Plaintiff assumed the responsibility for all precedent promises and obligations made to the Defendants through the underlying security agreement by using this court system to file suit on June 9, 2009 against the Defendants, resulting in the Plaintiff's assumption of responsibility for the promises made to the Defendants when the original note and mortgage holder expected that the Defendant would rely on those promises.

63. Plaintiff generally and specifically knew that these promises or covenants with the Defendants would have created a reasonable expectation in the Defendants that they would not face any judicial action specifically from a Lender (the Plaintiff) who had no business relationship with the Plaintiff prior to the aforementioned June 9, 2009 lawsuit. Further, Defendants assert that it is reasonable to assume that the Plaintiff knew that the Defendants relied upon the fact that they would be given the reasonable opportunity to correct any implied or stated grievance.

64. Defendants assert that a reasonable mind can only draw one conclusion, that being that the Plaintiff who has engaged in literally hundreds if not thousands of similar transactions with other parties unrelated to this transaction knew that the Defendants could not have possibly foreseen that Plaintiff was going to use the court system to in effect enter into a contract with the Defendants, without providing the Defendants with any consideration.

65. Defendants assert that they relied to their substantial detriment upon the promises of the Plaintiff that the uniform covenants of the security agreement, specifically guiding conduct around acceleration and notification and those around taking any judicial action would be adhered to, in total. In fact, a reasonable mind can draw but one conclusion from the course of events, that being the Plaintiff with the implicit cooperation of it's agents, representatives and loan servicers, willfully and knowingly acted in a manner substantially detrimental to the Defendants.

66. Defendants assert and allege that Plaintiff's breach of its' promises and inherent assurances proximately caused the damages previously described in the Complaint, said damages were foreseeable and the Plaintiff's conduct causing these damages was attended by malice, willfulness, insult, and abuse, thus entitling the Defendants to recover punitive as well as actual damages.

Wherefore, Defendants pray this court:

A. Grant them injunctive relief in the form of the dismissal of these proceedings with prejudice and at Plaintiff's costs.

B. Grant them declaratory relief by enforcing the termination and rescission of all contractual obligations between the parties as remedy is set forth under Section § 1345.09.

C. Grant them reasonable compensation for breach of contract and the implied covenant of good faith and fair dealing; a judgment of this Court against the Plaintiff, awarding the Defendants in excess of twenty five thousand dollars ($25,000).

D. Grant them punitive damages in excess of twenty five thousand dollars ($25,000).

E. Further, Defendants seek judgment from this Court against Plaintiff awarding the Defendants the elimination of all interest, penalties and fees accrued and alleged as due on the aforementioned contract.

F. Deny Plaintiff's requested relief; and

G. Grant Defendant any and all other relief this Court deems equitable.

# COURT OF COMMON PLEAS
# HAMILTON COUNTY, OH

COPY FILED
CLERK OF COURTS
HAMILTON COUNTY

JAN 10 2012

TRACY WINKLER
COMMON PLEAS COURTS

RESIDENTIAL FUNDING, LLC      )
        Plaintiff,      )    <u>Defendants Further Reply</u>

v.                      )    Case No.  A 0905631

JAMIE L. GINDELE et. al.      )

        Defendants.    )    Judge Beth A. Myers

## NOTICE OF FILING

Please take Notice that on the 10th day of January, 2012, there was filed with the Clerk, Court of Common Pleas, Hamilton County, Ohio, Defendant's Further Reply to Plaintiff's Motion for Summary Judgment in the above-captioned matter.

BY: _Jamie L. Gindele_
Jamie L. Gindele
9827 Old Chimney Court
Cincinnati, OH 45241
(513)793-5044

## CERTIFICATE OF SERVICE

I Jamie L. Gindele hereby certify that a copy of the foregoing Defendant's Answer and Counterclaims was sent to Plaintiff, by first class mail addressed to its attorney: David Wallace of Carpenter Lipps & Leland 280 Plaza, Suite 1300 280 North High Street Columbus Ohio 43215 on this 10th day of January, 2012.

BY: _Jamie L. Gindele_
Jamie L. Gindele
9827 Old Chimney Court
Cincinnati, OH 45241
(513)793-5044

# COURT OF COMMON PLEAS
# HAMILTON COUNTY, OH

RESIDENTIAL FUNDING, LLC )
              Plaintiff, )

v.

                          )     Case No. A 0905631

JAMIE L. GINDELE et. al.

                          )     Judge Beth A. Myers

             Defendants. )

## DEFENDANTS' GINDELE
## REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
## AND FURTHER MEMORANDUM IN OPPOSITION TO THE
## PLAINTIFF RESIDENTIAL FUNDING CORP.'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiffs' "Reply In Support of Motion for Summary Judgment and Memorandum in Opposition to the Defendants' Motion for Summary Judgment filed on or around December 20, 2011 is baseless and meritless. Defendants' indeed, stand on their meritorious counterclaims, plaintiff's protests to the contrary. Suffice to say, defendants' vigorously oppose plaintiffs' improper motion for summary judgment.

Plaintiff's somehow draw the incorrect conclusion that defendants' legal standing argument is not supported by applicable law and yet provide no case authority which supercedes _Carpenter v. Longan, 16 Wall. 271, 83 U.S. 271, 274, 21 L.Ed. 313 (1872)._ In this case, the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

Plaintiff's continue on this same strain of irrational, presumptive and inconclusive "summarization" of defendants' arguments. Plaintiff attempts to draw legal conclusions of merit, fact and law where clearly none exist.

On June 15, 2006, Defendants entered into a loan with Greenpoint Mortgage Funding Inc. ("Greenpoint"). The 2 documents executed at the time of the loan closing were a residential mortgage document and a financial note. The mortgage was "assigned" to a

mortagee and "nominee," Mortgage Electronic Registration Systems, ("MERS") <u>and the</u>
<u>financial note remained with Greenpoint.</u> The mortgage and the note were bifurcated at
origination.  On April 30, 2007, MERS executed a Corporate Assignment of
Mortgage/Deed of Trust in favor of Residential Funding Company, LLC. ("RFC")  On
June 2, 2009, RFC executed a Corporate Assignment of Mortgage to Residential
Funding Real Estate Holdings, LLC. ("RFRE") On January 8, 2010, RFRE executed a
Corporate Assignment of Mortgage back to RFC.

This is an extraordinarily simple case. As occurred at the origination of this transaction,
the mortgage and the note were separated. The mortgage was conveyed to MERS
while the note remained with the originating lender, Greenpoint. While the mortgage
*was* assigned later by MERS to the plaintiff, the note remained with Greenpoint. **The**
**note still remains with Greenpoint.**  As was established and uncontroverted in the
Defendants' Motion for Summary Judgment, defendants submitted evidence in the form
of a letter from Greenpoint and affirmed in a sworn, uncontradicted affidavit by
defendant Jamie L. Gindele, that Greenpoint **did not transfer the account "note" to**
**the plaintiff.**

Plaintiff claims a set of **<u>"Undisputed Facts"</u>** which are simply not supported by the
evidence or any affiants sworn testimony. In fact, defendants have provided
uncontroverted evidence that defeats not only plaintiff's assertion that it is due a
summary judgment but should be meritorious enough to result in summary judgment in
favor of defendants' and a dismissal of plaintiff's complaint.

Plaintiff attempts to convolute and obfuscate justice and the due diligence of the legal
process by asserting in paragraph 2 of its own Motion For Summary Judgment that the
"original Note was in the possession of RFRE, at the time the foreclosure complaint was
filed" <u>and yet has demonstrated no set of facts as to how the note came into their</u>
<u>possession.</u>  Plaintiff further claims that the note was "negotiated" from RFRE to RFC
during the pendency of this case. This point is moot. This fictitious transfer was void at
inception because the note is still held by the original lender, Greenpoint. Finally,
neither RFRE nor RFC have been damaged in any way by the Defendants nor can

produce any set of facts justifying their cause of action and therefore are not able to establish a legal basis for their complaint. Thus the plaintiffs' Motion For Summary Judgment should be denied and their entire complaint should be dismissed.

Plaintiffs' aver that "the defendants' loan is due for the November 2008 payment. For the sake of argument, let's assume that is a true statement. What is incredulous is that if true, it is not owed to the plaintiff, for the plaintiff cannot and has not established that it owns any financial rights in a transaction with the defendants. The plaintiff has attempted to demonstrate an alleged interest in a mortgage, a possessory interest. Plaintiff has **not** demonstrated any interest in the underlying note, in other words it has not proven a financial interest.  As such, the remainder of the plaintiffs' arguments are moot.

### The defendants asserted their full defenses, affirmative defenses and counterclaims in their Answer and they are stated as if fully incorporated within this motion.

Ownership of the promissory note and the mortgage instrument were bifurcated. The unendorsed promissory note was not a bearer instrument. Rather, it was made payable to the lender who is a specifically identified person - Greenpoint– and the mortgage instrument named MERS as the mortgagee, solely as a nominee. Neither the promissory note nor the mortgage instrument granted MERS an interest in the promissory note, instead, Greenpoint at all times retained ownership in the promissory note. The right to foreclose is dependent upon there being an enforceable promissory note. An assignment of mortgage from MERS to plaintiff granted plaintiff all of the interests that MERS had in the promissory note and the mortgage instrument. By the assignment of mortgage, MERS could not convey a greater interest to plaintiff than that which it already held. Since MERS had no enforceable interest in the promissory note, it conveyed no enforceable interest in the promissory note to the plaintiff. Even if MERS was an agent of Greenpoint (which it was not and has never been established) with authority to enforce the promissory note, no evidence of such authority has been presented. Without an interest in the promissory note, or without evidence of authority to enforce the promissory note against defendant, plaintiff has no standing to foreclose raising the issue of material facts in dispute. Thus granting plaintiff summary judgment would be improper.

On February 4, 2010, nearly 8 months **_after_** plaintiff filed this complaint, Defendants' Gindele served upon plaintiff and plaintiff's loan servicer, GMAC, a Qualified Written Request disputing various specific elements of the loan transaction. In its' written

response dated February 22, 2010, loan servicer GMAC stated *"in an effort to be responsive to your request, copies of pertinent documentation GMAC has in its records are enclosed."* One of those "pertinent documents" GMAC enclosed was a "True Certified Copy" of the financial note. It is attached as ("Exhibit A"). It should be noted that the financial note is made specifically in the name of the original lender, Greenpoint, and that there is no "endorsement in blank" or "allonge" granting plaintiff any rights as holder.  The only "allonge" is one establishing a "pre-payment fee." Therefore the "True Certified Copy" of the financial note establishes without contradiction that **plaintiff was not the holder of the financial note at the time this complaint was filed (nor anytime subsequently.)**

A recent case in Cuyahoga County provides perhaps the most current thinking and instructively ties to the US Supreme Court case of over 138 years ago.
In the case, *Huntington National Bank v. Brown, Case No. CV-09-702894,* as with literally thousands of other foreclosure cases filed nationally, the original note was made payable to a third party. Huntington purported to claim entitlement to summary judgment on the basis of a MERS assignment.

The court's opinion states:
"It is beyond peradventure that one cannot transfer rights in property that one does not own. Since MERS was not the original payee on the note, and since the note was never endorsed to MERS or endorsed in blank, MERS had no legal rights by the tenor of the note and therefore was not legally capable of transferring the note to anyone." The opinion also states that "without the blank endorsement, Huntington could not claim status as a "holder" of the Note."

Importantly, the opinion also states that "Possession alone of a negotiable instrument does not establish that a party has the right to receive payments under it," citing Ohio case law.

To reiterate, Defendants' claims that plaintiffs did not have standing to bring their complaint dates back to early 2007. Defendants' have consistently maintained that the chain of custody of the note was broken and that plaintiff has no standing to bring its complaint.

Further, as if the standing issues were not material enough, defendants' counterclaims are reaffirmed and have been further substantiated by state attorney general's throughout the United States who have filed similar if not identical complaints against the plaintiff, its myriad of corporate entities and specifically to its loan servicer and parent company, GMAC Mortgage. Specifically and most germane is the State of Ohio Attorney Generals case now being tried in US District Court in the Northern District of Ohio, presided under Judge Jack Zouhary.  The federal court has sought and obtained certification of the Ohio Supreme Court to answer the specific questions that have been raised by defendants' counterclaims as brought under the Ohio Consumer Sales Practices Act, R.C. 1345.01, et seq., and specifically Section § 1345.03 (A) and (B)(2)(3)(4)(5) and (6), that under Section §

1345.04 Jurisdiction, that the courts of common pleas and municipal or county courts within their respective monetary jurisdiction, have jurisdiction over any supplier with respect to any act or practice in this state covered by sections 1345.01 to 1345.13 of the Revised Code.

Defendants further assert that under Section § 1345.09 Private Remedies that for a violation of Chapter 1345 of the Revised Code, a consumer has a cause of action and is entitled to the rescission of the transaction or recovery of damages. Defendants previously asserted that a rescission letter was sent via certified mail on July 3, 2009. The recission was within the 3 years statute of limitations as established by 15 U.S.C. Section 1635.

It would be totally improper and unjust to defendant to grant a summary judgment to plaintiff when the manifest weight of the evidence favors the defendants' position that the well established material issues need further adjudication or dismissal with prejudice in defendants' favor.

Plaintiffs' legal counsel will continue its attempts to attack the form of defendants' pro se legal advocacy, however defendants' would respectively pray to the court that it takes its' guidance from *Peterson v. Teodosio, (1973) 34 Ohio St.2d 161* holding that the spirit of the Civil Rules is the resolution of cases upon their merits not upon pleading deficiencies and that CivR 1(B) requires that the Civil Rules shall be applied "to effect just results."

## Conclusion

This case is not about giving someone a free house or allowing mortgages to go unpaid. This is about the judicial system following the simple rule of law and requiring this plaintiff or any plaintiff for that matter to follow the rules rather than asking the courts to make the rules fit their insatiable need for business expediency.

Plaintiffs motion for summary judgment is **not** well founded and should be dismissed as there are substantive and material disputed facts as evidenced in this brief. In fact, plaintiffs' have no standing to invoke the jurisdiction of the court and thus their motion should not even be entertained.

There is no basis for the plaintiffs' complaint and therefore no preclusion to defendants' motion for summary judgment. Given plaintiffs' lack of standing, defendant is entitled to judgment as a matter of law on their motion for summary judgment, counterclaims and affirmative defenses. As this is the second time that this same plaintiff has brought this baseless and unfounded complaint, defendant moves this court to;

Grant them injunctive relief in the form of the dismissal of these proceedings with prejudice and at Plaintiff's costs.

A. Grant them declaratory relief by enforcing the termination and rescission of all contractual obligations between the parties as remedy is set forth under Section § 1345.09.

B. Grant them reasonable compensation for breach of contract and the implied covenant of good faith and fair dealing: a judgment of this Court against the Plaintiff, awarding the Defendants in excess of twenty five thousand dollars ($25,000).

C. Grant them punitive damages in excess of twenty five thousand dollars ($25,000).

D. Further, Defendants seek judgment from this Court against Plaintiff awarding the Defendants the elimination of all interest, penalties and fees accrued and alleged as due on the aforementioned contract.

E. Deny Plaintiff's requested relief; and

F. Grant Defendant any and all other relief this Court deems equitable.

DATED this 10th day of January 2012.

Jamie L. Gindele
9827 Old Chimney Court
Cincinnati, Ohio 45241
(513)793-5044

Gary D. Gindele
9827 Old Chimney Court
Cincinnati, Ohio 45241
(513)793-5044

*Exhibit A ¹¹/₇*

# GMAC Mortgage

February 22, 2010

Jamie L Gindele
PO Box 42200
Cincinnati OH  45242

RE:    Account Number          ███████7644
       Property Address         6043 Kenwood Rd
                                Cincinnati OH  45243-2931

Dear Jamie L Gindele:

Please be advised that this letter serves as our response to your Qualified Written Request ("QWR") for information regarding the above-referenced GMAC Mortgage account dated 02/04/10 and received in our office on 02/08/10.  In your correspondence, you request detailed information and documentation regarding nearly every aspect of the mortgage loan transaction, beginning with its origination.

In response to your inquiry, GMAC Mortgage has enclosed a copy of the account's payment history as required by the Real Estate Settlement Procedures Act ("RESPA").

Because your letter appears to be questioning nearly every aspect of the loan transaction, it is difficult for GMAC Mortgage to identify any specific concern(s) you have regarding the servicing of the account.  Nevertheless, in an effort to be responsive to your request, copies of pertinent documentation GMAC Mortgage has in its records are enclosed.

- Note
- Deed of Trust/Mortgage
- HUD-I Settlement Statement

If after reviewing this information, you have any specific questions or concerns regarding the mortgage loan servicing of this account, please contact Customer Care at 1-800-766-4622 between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to 1:00 pm CT on Saturday.

Customer Care
Loan Servicing

Enclosures

BD

3451 Hammond Ave
Waterloo, IA 50704



*Exhibit A 2/7*

**True Certified Copy**

## Interest Only Adjustable Rate Note

### Six Month LIBOR Index - Rate Caps

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

June 15, 2006                    Cincinnati                              Ohio
  [Date]                           [City]                              [State]

6043 Kenwood Road, Cincinnati, OH  45243

[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 720,000.00            (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **GreenPoint Mortgage Funding, Inc.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.250               %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment on the first day of every month, beginning on **August 1, 2006**                    . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on **July 1, 2036**                  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 1093, Branford, CT 06405-8093**

or at a different place if required by the Note Holder.

9430

*Exhibit A 3/7*

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 4,350.00                until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

**4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of July, 2009        , and the adjustable interest rate I will pay may change on that day every 6th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market based on quotations of major banks, as published by the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, or is no longer published, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding two and one-quarter percentage points ( 2.250             %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.250             % or less than 2.250             %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than one percentage points from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is 10 year(s) from the first payment due date, as reflected in Section 3(A) of the Note.

IONOH-OD (02/06)

GreenPoint Mortgage Funding, Inc.                    Page 2 of 5                    ▮▮▮▮9430

Identifier:8307033240     Doc Type:NOTE

*Exhibit A  4/7*

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15**         calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000**         **%** of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

IONOH-OD (02/06)
GreenPoint Mortgage Funding, Inc.

■ 9430

Identifier:838765926    12-12020-mg    Doc 6370-1    Filed 01/27/14    Entered 01/27/14 20:17:49    Exhibit 1
Doc Type:Note                                          Pg 23 of 101

Exhibit A 5/7

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

──────────────────── [Signatures on Following Page] ────────────────────

Exhibit A 6/7

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Jamie L. Gindele_____ (Seal)          _____ (Seal)
Jamie L Gindele                    -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                      -Borrower

*[Sign Original Only]*

IONOH-OD (02/06)
GreenPoint Mortgage Funding, Inc.                    Page 5 of 5                    ████9430

# PREPAYMENT FEE ALLONGE

Loan Number: ███9430

This Prepayment Fee Allonge ("Allonge") is made this **fifteenth** day of **June, 2006**, and is incorporated into and intended to form a part of the note dated the same date as this Allonge (Note) and also amends and supplements the mortgage, deed of trust, security deed, or security instrument (the "Security Instrument") dated the same date as this Allonge and the Note. To the extent that the provisions of this Allonge are inconsistent with the provisions of the Note and/or the Security Instrument, the provisions of this Allonge shall prevail over and will supercede any inconsistent provisions of the Note and/or the Security Instrument.

The section of the Note entitled **Borrower's Right to Prepay** is amended by adding the following paragraph as the last paragraph of such section:

If I make a full Prepayment within **three years** of the date of this Note, I agree to pay the Note Holder a Prepayment fee. The Prepayment fee I will pay shall be an amount equal to one percent (1%) of the original principal amount of this Note. I will not be obligated to pay a Prepayment fee if I make a full Prepayment at any time after the **3rd Year** anniversary of the date of this Note. In no event will such a charge be made if it violates state or federal law.

**No Prepayment penalty will be assessed if prepayment is concurrent with the sale of the property securing the Note.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_____ (Borrower)          _____ (Borrower)
Janie L Gindele


_____ (Borrower)          _____ (Borrower)


_____ (Borrower)          _____ (Borrower)


_____ (Borrower)          _____ (Borrower)

*[Sign Original Only]*

# COURT OF COMMON PLEAS
# HAMILTON COUNTY, OH

| | | |
|---|---|---|
| **RESIDENTIAL FUNDING, LLC** | ) | **Objection to Magistrate's** |
| **Plaintiff,** | ) | **Decision** |
| **v.** | ) | |
| | ) | **Case No.  A 0905631** |
| **JAMIE L. GINDELE et. al.** | ) | |
| | ) | **Judge Beth A. Myers** |
| **Defendants.** | ) | |

---

## NOTICE OF FILING

Please take Notice that on the 6th day of March, 2012, there was filed with the Clerk,
Court of Common Pleas, Hamilton County, Ohio, Defendant's Objection to Magistrate's
Decision in the above-captioned matter.

BY: _Jamie L. Gindele_
Jamie L. Gindele
9827 Old Chimney Court
Cincinnati, OH 45241
(513)793-5044

## CERTIFICATE OF SERVICE

I Jamie L. Gindele hereby certify that a copy of the foregoing Objection to the
Magistrate's Decision was sent to Plaintiff, by first class mail addressed to its attorney:

on this 6th day of March, 2012.

BY: _Jamie L. Gindele_
Jamie L. Gindele
9827 Old Chimney Court
Cincinnati, OH 45241
(513)793-5044

COPY FILED
CLERK OF COURTS
HAMILTON COUNTY

MAR - 6 2012

TRACY WINKLER
COMMON PLEAS COURTS

CERTIFIED
CLERK OF COURTS
HAMILTON COUNTY

MAR - 8 2012

TRACY WINKLER
COMMON PLEAS COURTS

# COURT OF COMMON PLEAS
# HAMILTON COUNTY, OHIO

RESIDENTIAL FUNDING LLC.                )          **Objection to Magistrate's Decision**

      **Plaintiff,**                              )          **Motion to Dismiss**

v.

                       )          **Case No.  A 0905631**

JAMIE L. GINDELE ET. AL.

                             **JUDGE BETH A. MYERS**

         **Defendants.**                          )

---

## MOTION

Now come Defendants and timely move this Court, pursuant to Civil Rule 53(D)(3)(b) and 53(D)(4)(e)(i) to sustain their Objection to Magistrate's Decision entered into the court record on February 21, 2012 and approve Defendant's Motion for Summary Judgment and Motion to Dismiss the above captioned matter.

## MEMORANDUM

Plaintiff failed in its complaint to meet Ohio Civil Rule 19 requirements of Joinder of Persons Needed for Just Adjudication.  Ohio Civil Rule 19 states:

> **(A) Persons to be joined if feasible.** A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest, or (3) he has an interest relating to the subject of the action as an assignor, assignee, subrogor, or subrogee. If he has not been so joined, the court shall order that he be made a party upon timely assertion of the defense of failure to join a party as provided in Rule 12(B)(7).

In the case at bar, Greenpoint Mortgage was the original noteholder who asserted in written communication to the defendants that (it) had not transferred the note to the plaintiff. (see Exhibit 'A'). This assertion was affirmed via unimpeached affidavit. (See Exhibit 'B')

During negotiations to reach a potential settlement, in December 2010, plaintiff required defendants to obtain an independent title search on the subject property.  Defendant complied with plaintiffs requirement. The title search report is attached (See Exhibit 'C') A copy of the attached title report was provided to plaintiff through its Counsel of Record, Carpenter Lipps as requested in January 2011. In other words, at that time it would be reasonable to conclude that plaintiff knew that all the parties essential to the proper adjudication of their complaint were not before the court. Rather than properly join mortgagee Greenpoint to the case, it appears that

plaintiff either inadvertently erred in understanding Greenpoint's significance or chose to intentionally conceal it from the Court. Either way in the absence of Greenpoint Mortgage *the Court cannot accord complete relief among existing parties…leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."* The title report demonstrates unequivocably, that Greenpoint is a mortgagee of record and could claim an interest relating to the subject of the action. Greenpoint's proper presence in this case was required in order that defendants could obtain the complete relief and finality of judgment that is contemplated by Ohio Civil Rules. At no time have the Defendants waived their rights to assert the defense of failure to join a party as provided in Civ.R. 12(B)(7). Whether or not the defendants assert(ed) this particular defense is immaterial. It is not the defendants responsibility to "try" plaintiff's case. Plaintiff has an obligation to Greenpoint to join them to the case, an obligation that was easily discernable at the time the complaint was filed.

From the outset of this complaint, Defendants have asserted their comprehensive defense that Plaintiff's failed to state a claim upon which relief can be granted. Incorporated by reference therein was the defense of failure to join a party under Civ.R. 12(B)(7). Defendants have provided the court uncontroverted evidence that **Greenpoint Mortgage, the original and only noteholder,** did not transfer or otherwise assign the Note to the plaintiff. Defendants exhausted their attempts to resolve the underlying conflicts with the previous loan servicer *Wilshire Credit Corporation* and the plaintiff. After consultation with the United States Federal Trade Commission and the Comptroller of the Currency, defendants were advised to send the plaintiff and its loan servicer a certified Qualified Written Request (QWR.) (See attached Exhibit 'D') In response to the QWR, plaintiff through its loan servicer provided Defendant with a "**True Certified Copy**" of the Note in question.(See Exhibit 'E') attached as if fully incorporated within. What is evident from the document is that it is not a bearer instrument, is executed specifically to Greenpoint Mortgage, does not contain an "endorsement in blank," nor does it have an allonge attached to it. Under the Uniform Commercial Code Section 3-203 and 3-308, the Note presented as evidence in this case is owned by and to the benefit of Greenpoint Mortgage. This Note is not enforceable by the plaintiff against the defendant. At a minimum, it should be obvious that Greenpoint Mortgage is a proper party that must be included for proper and complete adjudication in the instant matter. Greenpoint has held a continuous recorded interest in the subject property since the time of plaintiff's complaint.

Despite the overwhelming evidence to the contrary, the Magistrate erred in finding "…that all necessary parties have been served with summons and the Complaint according to law and are properly before the Court."

The Magistrate erred in finding that the plaintiff was a proper party at the time the complaint was filed. On June 9, 2009, the plaintiff filed a complaint in the Hamilton County Court of Common Pleas denominated Complaint in Foreclosure. The first branch of the complaint, under Count One, asserted that "…Plaintiff is the holder of a note, a copy of which is attached hereto as Exhibit 'A'(See Complaint) and a Loan Modification Agreement, a copy of which is attached hereto as Exhibit 'B'.(See Complaint) Although there were thirty six (36) pages of exhibits attached to plaintiff's complaint, there was no evidence provided that Greenpoint Mortgage Funding, LLC., the holder of the note, **_ever_** assigned, transferred or executed the note in favor of the plaintiff upon which branch one of the complaint, the money damages, was predicated. Thus the chain of custody was broken. This fact was established in Defendant's Motion to Dismiss on August 4, 2009 and later in Defendant's Answer and Counterclaims, asserting that the plaintiff lacked standing and that the Court lacked subject-matter jurisdiction. It was further substantiated via affidavit given by defendant Jamie Gindele. Her sworn testimony was never contradicted or impeached by plaintiff. It is the only un-contradicted testimony before the Court.

Plaintiff chose not to depose the defendant nor attempt to contradict her sworn testimony in any way. Defendants however have consistently challenged plaintiffs assertions and provided compelling contradictory evidence as to plaintiff's alleged financial interest which at a minimum has established genuine issues of material fact to be further adjudicated at trial.

The essential elements of standing are set forth in *Bourke v. Carnahan,* 163 Ohio App.3d 818 (app. 10 Dist.)

> Elements of standing are an indispensable part of a plaintiff's case. *Lujan v. Defenders of Wildlife* (1992), 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351. Initially, the plaintiff must have suffered an injury in fact, defined as an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent, not hypothetical or conjectural. Id. At 560, 112 S.Ct. 2130, 119 L.Ed.2d 351. Next, the conduct complained of must be causally connected to the injury. Thus, the injury must be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. Finally, it must be likely,as opposed to merely speculative, that a favorable decision will redress the injury. Id. At 560-561, 112 S.Ct. 2130, 119 L.Ed2d 351.

Plaintiff has failed to establish that it suffered an injury in fact that is concrete and particularized. It claims to own an interest in the note which has been disputed directly by the alleged assigner, Greenpoint as well as by the Defendant. With plaintiff's failure to establish an actual injury, defendant's alleged conduct is irrelevant. Without the proper presence of Greenpoint before the Court, plaintiff fails the additional test of standing in that it cannot be determined if the plaintiff's alleged injury was "**not** as a result of the independent action of some third party (Greenpoint) not before the court."

Defendants have stood on the profound simplicity and straightforward legal principles of this case that plaintiff has failed to meet its required burden of legal standing, has never perfected its financial damages claim under the note, and has failed to state a claim upon which relief can be granted.

The Magistrate erred in the granting of plaintiff's motion for summary judgment in contradiction to his own written opinion in Hamilton County Court of Common Pleas Case No. A0705631, *Deutsche Bank National Trust v. Telisa Barnes.* Page 11 of that opinion states:

> "The Constitution of both the United States of America and the State of Ohio guarantee the people the right to petition their respective governments for a redress of their grievances. However, the proper venue for such petitions lies in the branches of government vested with the express authority to change the law or procedure at issue. In Ohio, the people and the State Assembly have the express authority to enact legislation in the State of Ohio. Similarly, the Supreme Court of Ohio is vested with the authority to "prescribe rules governing practice and procedure in all courts of the state.""

On this point Defendants and the Magistrate are in total agreement. The Magistrate erred in the case before the court by granting plaintiff's summary judgment as to all of defendants' counterclaims. Defendants counterclaims specifically include at least 2 claims for damages that have become certified by and taken under review of the Ohio Supreme Court. In Counterclaim 27 of 40 in Defendants Answer to the Complaint;

Defendants assert and allege that Plaintiff through its loan servicer and as a result of their actions violated the Ohio Consumer Sales Practices Act, R.C. 1345.01, et seq., and specifically Section § 1345.03 (A) and (B)(2)(3)(4)(5) and (6), that under Section § 1345.04 Jurisdiction, that the courts of common pleas and municipal or county courts within their respective monetary jurisdiction, have jurisdiction over any supplier with respect to any act or practice in this state covered by sections 1345.01 to 1345.13 of the Revised Code.

In Counterclaim 28 of 40;

Defendants further assert that under Section § 1345.09 Private Remedies that for a violation of Chapter 1345 of the Revised Code, a consumer has a cause of action and is entitled to the rescission of the transaction or recovery of damages. Defendants assert that a rescission letter was sent via certified mail on July 3, 2009. Exhibit C is attached and is incorporated as if fully stated herein.

These questions are properly before the Ohio Supreme Court and the Magistrate erred in prematurely ruling on them in this case without obtaining the proper guidance that will be coming from the Ohio Supreme Court to "prescribe rules governing practice and procedure in all courts of the state."

Similarly the Magistrate erred in granting plaintiff's summary judgment by in the same vain failing to consider guidance from the ultimate judicial authority, the United States Supreme Court.  In the case at bar, the mortgage and the note were separated at origination. That has been a prevailing theme and an undisputed fact throughout this case.

In Carpenter v. Longan, 16 Wall. 271, 83 U.S. 271, 274, 21 L.Ed. 313 (1872), the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

"Where the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee,' having received no interest in the underlying debt or obligation, has a worthless piece of paper." (4 RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 37.27[2] (2000); In re Mitchell, Case No. BK-S-07-16226-LBR (Bankr.Nev. 3/31/2009)(At page 12))

In the consolidated cases of In re Foreclosure Cases, 521 F. Supp. 2D 650, 653 (S.D. Oh. 2007), a standing challenge was made and the Court found that there was no evidence of record that New Century ever assigned to MERS the promissory note or otherwise gave MERS the authority to assign the note. Beginning with this case, courts around the country started to recognize that MERS had no ownership in the notes and could not transfer an interest in a mortgage upon which foreclosure could be based.

In LaSalle Bank NA v. Lamy, 824 N.Y.S.2d 769 (N.Y. Supp. 2006), the Court denied a foreclosure action by an assignee of MERS on the grounds that MERS itself had no ownership interest in the underlying note and mortgage.

In the case of In re Mitchell, Case No. BK-S-07-16226-LBR (Bankr.Nev., 2009), the Court stated "In order to foreclose, MERS must establish there has been a sufficient transfer of both the note and deed of trust, or that it has authority under

state law to act for the note's holder." (At page 9) The Court found that MERS has no ownership interest in the promissory note. The Court found that though MERS attempts to make it appear as though it is a beneficiary of the mortgage, it in fact is not a beneficiary. The Court stated "But it is obvious from the MERS' "Terms and Conditions" that MERS is not a beneficiary as it has no rights whatsoever to any payments, to any servicing rights, or to any of the properties secured by the loans. To reverse an old adage, if it doesn't walk like a duck, talk like a duck, and quack like a duck, then it's not a duck." (At page 7) MERS Terms and Conditions say this:

"MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law."

In the case of In re Vargas, 396 B.R. 511, 520 (Bankr.C.D.Cal., 2008) , the Court stated:
"MERS is not in the business of holding promissory notes. (fn 10: MERS, Inc. is an entity whose sole purpose is to act as mortgagee of record for mortgage loans that are registered on the MERS System. This system is a national electronic registry of mortgage loans, itself owned and operated by MERS, Inc.'s parent company, MERSCORP, Inc.")

In the case of In re Sheridan, Case No. 08-20381-TLM (Bankr.Idaho, 2009) MERS moved for relief from the stay. The Court stated that MERS "Counsel conceded that MERS is not an economic "beneficiary" under the Deed of Trust. It is owed and will collect no money from Debtors under the Note, nor will it realize the value of the Property through foreclosure of the Deed of Trust in the event the Note is not paid." The Court stated "Further, the Deed of Trust's designation of MERS as "beneficiary" is coupled with an explanation that "MERS is . . . acting solely as nominee for Lender and Lender's successors and assigns." The Court stated "Even if the proposition is accepted that the Deed of Trust provisions give MERS the ability to act as an agent ("nominee") for another, it acts not on its own account. Its capacity is representative."

In Landmark National Bank v. Kesler, 216 P.3D 158 (Kansas, 2009), the Kansas Supreme Court extensively analyzed the position of MERS in relation to the facts in that case and other non-binding court cases and concluded that MERS is only a digital mortgage tracking service. (At page 168) The Court recited that "MERS never held the promissory note, did not own the mortgage instrument (though the documents identified it as "mortgagee"), that it did not lend money, did not extend credit, is not owed any money by the mortgage debtors, did not receive any payments from the borrower, suffered no direct, ascertainable monetary loss as a consequence of the litigation and consequently, has no constitutionally protected interest in the mortgage loan."

As recently as December 1, 2011, *in re Huntington National Bank v. Brown, Case no. CV-09-702894,* Cuyahoga County, Ohio Court of Common Pleas Magistrate Thomas J. Vozar issued a 9-page opinion which ultimately held that the foreclosing bank did not have standing to foreclose and was not the real party in interest, denying the Bank's Motion for Summary Judgment and granting the homeowners' MSJ. The Court's reasoning is based on exactly what the defendants have been and continue to argue as to Mortgage Electronic Registration Systems (MERS): that MERS, not being the payee on the Note and having no ownership rights in the Note, cannot transfer it.

This decision now joins the legion of cases which have similarly held MERS to its very limited position as "nominee", notwithstanding MERS' inconsistent attempt to anoint itself with additional powers which are not permitted by MERS' own Terms and Conditions. MERS' consistent violation of its own self-imposed internal restrictions is part of the recent action filed by the Delaware Attorney General against MERS.

In the above referenced case, as with literally millions of other foreclosure cases filed nationally, the original Note was made payable to a third party. Huntington purported to claim entitlement to summary judgment on the basis of a MERS assignment, in this case where there was no endorsement in blank on the Note as well. The Magistrate's opinion states:

…"It is beyond peradventure that one cannot transfer rights in property that one does not own. Since MERS was not the original payee on the note, and since the note was never endorsed to MERS or endorsed in blank, MERS had no legal rights by the tenor of the note and therefore was not legally capable of transferring the note to anyone." The opinion also states that without the blank endorsement, Huntington could not claim status as a "holder" of the Note.

Significantly, the opinion also states that "Possession alone of a negotiable instrument does not establish that a party has the right to receive payments under it", citing Ohio case law. This statement exemplifies the misleading nature of the argument consistently made by foreclosing banks, servicers, and securitized "trustees": "we have possession of the Note, therefore we are entitled to enforce it and foreclose."

A promissory note executed in connection with a mortgage instrument is not a simple "negotiable instrument" transaction. As the Court held in the recent *In re Veal* case from the 9th Circuit Bankruptcy Appellate Panel, a promissory note tied to a mortgage instrument implicates Article 9 of the UCC (which governs secured transactions) in addition to Article 3 (which governs negotiable instruments). Thus, a foreclosing party should have to prove not only proper possession and ownership of the Note and the rights under it, but also intent of delivery, manner of delivery, and actual delivery of the mortgage instrument under Article 9 of the UCC.

Plaintiff has failed to produce any mortgage or note documents that Ohio Civil Rules and the Uniform Commercial Code would recognize as enforceable against the defendants. What they have produced instead are photocopies of documents that ANY party who is or was a member of the Mortgage Electronic Registration Systems (MERS) could download for a minimal fee. In fact defendants could just as easily become members of MERS, follow the same set of instructions, download those same documents and as a member, be given the same privilege of authority and entitlement that was presumed by plaintiff in this case. To summarize any "member" of MERS has the right to be called an "officer" of MERS. MERS as nominee and mortgagee never takes a financial interest in a mortgage transaction. Conclusively, MERS cannot transfer or assign rights it never had in the first place.

MERS is a <u>sham</u>, constructed to defraud the county recording systems around the United States of legitimate filing and recording fees.

## CONCLUSION

The Magistrate erred in granting plaintiff summary judgment because under Ohio Rule 19, all necessary parties were not before the Court leaving the real possibility that defendants would be exposed to additional claims under the same set of circumstances.

The Magistrate erred in granting plaintiff summary judgment because no actual controversy existed between the parties.

The Magistrate erred in granting plaintiff summary judgment because the plaintiff had no standing before the court.

The Magistrate erred in granting plaintiff summary judgment because the plaintiff has suffered no economic damages and thus has no claim against defendants.

The Magistrate erred in granting plaintiff summary judgment because plaintiff never proved it owned the note.

The Magistrate erred in granting plaintiff summary judgment because included in the decision was the recommended dismissal of at least 2 defendants counterclaims which are currently certified for review by the Ohio Supreme Court.

The Magistrate erred in granting plaintiff summary judgment because the subject mortgage and note were undisputedly separate at loan origination and subsequent attempt to transfer or assign was a nullity.

For the stated reasons, Defendant moves this Court to sustain their Objection to Magistrate's Decision and grant Defendant's Motion to Dismiss.

DATED this 6th day of March, 2012.

Jamie L. Gindele
9827 Old Chimney Court
Cincinnati, Ohio 45241
(513)793-5044

Gary D. Gindele
9827 Old Chimney Court
Cincinnati, Ohio 45241
(513)793-5044

# COURT OF COMMON PLEAS
# HAMILTON COUNTY, OHIO

RESIDENTIAL FUNDING LLC.       )     ENTRY
               Plaintiff,      )

v.

                            )     Case No.  A 0905631

JAMIE L. GINDELE ET. AL.

                                        JUDGE BETH A. MYERS
               Defendants.    )

---

## ENTRY

Defendant's Objection to the Magistrate's Decision in the above captioned matter is well taken and therefore has been sustained by the court.

It is so ordered.

DATED this _____ day of _____ 2012.

_____
Judge Beth Myers

# COURT OF COMMON PLEAS
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| RESIDENTIAL FUNDING LLC. | ) | ENTRY |
| **Plaintiff,** | ) | |
| v. | | |
| | ) | Case No.  A 0905631 |
| JAMIE L. GINDELE ET. AL. | | |
| | | **JUDGE BETH A. MYERS** |
| **Defendants.** | ) | |

_____

## <u>ENTRY</u>

This Motion to Dismiss in the above captioned matter is well taken and therefore has been

approved by the court.


It is so ordered.




DATED this _____ day of _____ 2012.




_____

Judge Beth Myers

Exhibit A 12



PO Box 84013
Columbus GA 31908-4013
Tel.  800.784.5566



October 2, 2007


Jamie Gindele
P.O. Box 42200
Cincinnati, OH 45242

Loan Number (s): ████ 9430
████████ 6342
█████ 9448

Re: Property address  6043 Kenwood Road
Cincinnati, OH 45243

Dear Jamie Gindele,

We have received your correspondence addressed to Steven Abreu regarding the above referenced accounts.  We have reviewed your concerns and the results of our research are listed below:

Account 0089889430 was transferred to Wilshire Credit Corporation on January 16, 2007.  At the time of transfer this account was due for the October 1, 2006 payment. This transfer was in full compliance with all RESPA, FDCPA and all other federal regulations.  We did not transfer this account nor have we had contact with Residential Funding regarding this account. We have received nothing that would indicate your claims regarding the pending foreclosure action by Residential Funding involving an illegal action by our office.

On September 1, 2006 account 0089889448 was transferred to GMAC.  As of the date of the transfer the account was due for the August 15, 2006 payment.  Due to multiple delinquent payments with GMAC, we were required to repurchase this account per our existing transfer agreement with GMAC. The repurchased account 0004025342 is currently due for the June 15, 2007 through September 15, 2007 payments, which total $2,595.60.  If these past due payments are not made, we may be forced to pursue those legal remedies prescribed in the Mortgage, which may include a foreclosure action. Since account 0004025342 was not transferred to us solely for the purpose of facilitating the collection of said debt for another, we are in full compliance with FDCPA regarding our attempts to collect this debt.

**Aviso importante para personas de habla Hispana**
Si usted no entiendo el contenido de esta carta, favor solícite assistencia immediata de alguna persona que pueda traducirla

PO Box 84013
Columbus GA 31908-4013
Tel.  800.784.5566



Your unsubstantiated assertions that we collaborated with Residential Funding to file an
illegal foreclosure action is entirely false and we resent your leveraged attempt to avoid
collection of all past due payments on the repurchased account 0004025342, which in no
way pertains to the foreclosure action stated above.

Sincerely,

Joan Merry
Assistant Vice President
Customer Care Department

**Aviso importante para personas de habla Hispana**
Si usted no entiende el contenido de esta carta, favor solicite assistencia immediata de alguna persona que pueda traducirla

**2300 Brookstone Centre Pkwy Columbus GA 31904**
**www.greenpointservice.com**

Exhibit B 1/2

# COURT OF COMMON PLEAS
# HAMILTON COUNTY, OHIO

Residential Funding,  LLC                          )
                              Plaintiff,            )
vs.                                                )        Case No.  A 0905631
Jamie L. Gindele  et. al.                          )
                              Defendants.           )        Judge Beth A. Myers

---

### AFFIDAVIT OF Jamie L. Gindele

Comes now Jamie L. Gindele, the Affiant, and does solemnly affirm under oath and penalties of perjury, that the statements herein are true and correct in substance and in fact, to wit:

1. I am competent and qualified to testify as to the facts herein.

2. This statement is developed from my personal knowledge, information or belief and therefore I believe this information to be true and accurate.

3. I am primarily in the business of developing and selling for profit, residential real estate.

4. I am employed by Gindele Properties, LLC., a defendant in this case.

5. The mortgage transaction at issue was conveyed by me to Mortgage Electronic Registration Systems (MERS).

6. The financial note at issue was conveyed by me to Greenpoint Mortgage.

7. I have access to every pertinent and relevant business record pertaining to said mortgage and note, which records have been maintained in the course of its regularly conducted business activity. I make this sworn testimony based on my review of the mortgage document and the note document and the fact that I alone was a party to this transaction.

8. The document attached as Exhibit B is the true and accurate original document from the lender and note-holder, Greenpoint Mortgage.

9. I, Jamie L. Gindele, deny that I delivered a promissory note in favor of Residential Funding Corporation, LLC., or Residential Funding Real Estate Holdings., or any other Residential Capital parent company or subsidiary.

10. I, Jamie L. Gindele, deny that the promissory note was assigned by Mortgage Electronic Registration Systems (MERS) to Residential Funding Corporation, LLC.

11. I, Jamie L. Gindele, deny that the mortgage instrument was properly assigned to Residential Funding Corporation, LLC.

12. I, Jamie L. Gindele, deny that the promissory note and mortgage instrument are in default with Residential Funding Corporation, LLC., and Residential Funding Real Estate Holdings, LLC.

13. I, Jamie L. Gindele, deny that plaintiffs are owed any sum due and is owing on the promissory note and mortgage instrument to plaintiffs.

14. I, Jamie L. Gindele asserts that the letter from Ms. Joan Merry, Greenpoint Mortgage, is the original, authentic document from the lender to the defendant.

15. FURTHER AFFIANT SAYETH NOT.


_Signature of Affiant_

STATE OF _Ohio_ )
COUNTY OF _Hamilton_ )

Subscribed and sworn to before me a notary public this _15_ day of December 2011.

_Signature of Notary_

LINDA JAEGER
Notary Public, State of Ohio
My Comm. Expires 11-15-2014

# First Title Agency, Inc.
### Title and Settlement Services

## RECORD DATA INFORMATION

*This information is intended only to show recorded data as found from the public records of the County in which the subject real estate is located. It is in no way to be construed as an Attorney's Opinion of Title, Commitment for Title Insurance or a Policy of Title Insurance.*

**File No.:**   10-04554

**Prepared for:**   Gindele Properties, LLC
6043 Kenwood Road
Cincinnati, Ohio  45243

**Current Owner:**   Gindele Properties, LLC

**Instrument Reference:**   Official Record Book 10149, Page 2780; Official Record Book 10284, Page 600 and in Official Record Book 10284, Page 679 of the Hamilton County, Ohio Records.

### Description of Real Property

Situate in Section 17, Town 4, Fractional Range 2, City of Madeira, Columbia Township, Hamilton County, Ohio and being part of Lots 11 and 12 of Minix Heights Subdivision as recoded in Plat Book 26, Page 40 of Hamilton County, Ohio Records and being more particularly described as follows:

Beginning at a set iron pin at the Southwest corner of said Lot 11; thence along the West line of said Lots 11 and 12, North 04 degrees 49 ' 00" East, 85.37 feet to a set iron pin; thence leaving the West line of said Lot 12 along a new division line, South 85 degrees 17' 00" East, [Passing an iron pin set at 309.66 feet] 314.18 feet to a point in the Easterly line of said Lot 12, said point being the right of way of Kenwood Road; thence along the Easterly line of said Lots 11 and 12, South 21 degrees 18' 00" West, 89.60 feet to the Southeast corner of said Lot 11; thence leaving the right of way of Kenwood Road, along the South line of said Lot 11, North 85 degrees 11' 00" West, [passing an existing iron pin and cap at 4.62 feet] 288.75 feet to the Place of Beginning.

Thus containing 0.5296 acres of land and being subject to the right of way of Kenwood Road and all easements and restrictions of record.

Parcel No.       525-25-51

Commonly Known As:  6043 Kenwood Road, Cincinnati, Ohio  45243

## Matters Affecting Real Estate (as described above):

1.   Mortgage from Gary D. Gindele and Jamie L. Gindele, husband and wife, to MERS Mortgage Electronic Registration Systems, Inc. as Nominee for GreenPoint Mortgage Funding, Inc., securing a loan in the amount of $720,000.00, executed June 15, 2006, filed June 30, 2006, recorded at Official Record Book 10284, Page 642 of the Hamilton County, Ohio Records.

Said Mortgage was Assigned to Residential Funding Company, LLC by instrument dated April 3, 2007, filed May 8, 2007, recorded at Official Record Book 10543, Page 689 of the Hamilton County, Ohio Records.

Said Mortgage was Assigned to Residential Funding Real Estate Holdings, LLC by instrument dated June 2, 2009, filed June 10, 2009, recorded at Official Record Book 11161, Page 557 of the Hamilton County, Ohio Records.

Said Mortgage was Assigned to Residential Funding Corp. by instrument dated June 8, 2010, filed June 11, 2010, recorded at Official Record Book 11453, Page 1284 of the Hamilton County, Ohio Records.

**RECORD DATA INFORMATION**
**File No.: 10-04554**
**(Continued)**

2.    Mortgage from Gary D. Gindele and Jamie L. Gindele, husband and wife, to Mortgage Electronic
      Registration Systems, Inc. as Nominee for GreenPoint Mortgage Funding, Inc., securing a loan in the
      amount of $60,000.00, executed June 15, 2006, filed June 30, 2006, recorded at Official Record Book
      10284, Page 696 of the Hamilton County, Ohio Records.

3.    Mortgage from Gindele Properties, LLC to Brian A. Arnold, securing a loan in the amount of $15,000.00,
      executed September 1, 2006, filed September 25, 2006, recorded at Official Record Book 10357, Page
      644 of the Hamilton County, Ohio Records.

4.    Pending Foreclosure Suit filed as Case Number A0905631 in the Hamilton County, Ohio Court of
      Common Pleas Residential Funding Real Estate Holdings vs. Jamie L. Gindele and Gary D. Gindele and
      Gindele Properties, LLC c/o Gary D. Gindele and Brian A. Arnold, filed June 9, 2009 in Docket Number
      D83741988 INF of the Hamilton County, Ohio Records.

5.    Certificate of Judgment in favor of CitiBank South Dakota, NA, against G.D.Gindele aka Gary Gindele aka
      Gary D. Grindele aka Gary Grindele aka Gary D. Grindele aka G.D.Grindele aka Gary D. Grindele aka
      G.D.Gindele aka Gary Gindele in the amount of $17,148.35, plus costs and interest, if any, recorded as
      Judgment Case Number A 0707372 in the Records of Hamilton County, Ohio Records.

6.    Cancellation of Corporation for Gindele Holdings, Inc. as set forth and recorded in Official Record Book
      10474, Page 2146 of the Hamilton County, Ohio Records.

**Easements, Restrictions, Taxes and Other Matters:**

1.    Taxes:  Parcel Identification Number: 525-25-51
      Valuations:  Land $ 63,070.00, Building $ 207,830.00, Total $ 270,900.00
      December 2010 Installment: $ 8,227.95 + $ 6.96* = $ 8,234.91  UNPAID
      June 2011 Installment:                           $ 8,227.95  UNPAID
      Assessments:
      * $ 6.96 - STORM WATER ASSESSMENT due annually in December.

      Taxes and Assessments for the Year of 2009 and all prior years are paid.
      Taxes and Assessments for the 1st Half of 2010 are a lien and are now due and payable.
      Taxes and Assessments for the 2nd Half of 2010 and all future years are a lien but are not yet due and
      payable.

2.    Rights of the public and others, by use or otherwise, in and to that portion of said property comprising
      Kenwood Road.

3.    Easement(s), as set forth in Official Record Book 8783, Page(s) 1890 of the Hamilton County, Ohio
      Records.

**Information Effective As Of December 27th, 2010 at**

Wilshire Credit Corporation
14523 SW Millikan Way Suite 200
Beaverton, OR 97005

April 6, 2009

**RE    NOTICE AND DEMAND FOR VALIDATION AND ADEQUATE ASSURANCE OF
PERFORMANCE – JAMIE L. GINDELE, ACCOUNT #4239470**

Dear Sir/Madame:

I am in receipt of your unauthenticated and unvalidated "Account
Statements" dated 10/3/08, 11/16/08, 12/16/08, 1/16/09, 2/17/09, and
3/16/09. Please regard this letter as a formal written Notice and Demand to Wilshire Credit
Corporation as "loan servicer" for validation and adequate assurance of performance with respect to the
above listed account.

In preparation for this Notice and Demand, I have conducted a full and complete investigation into this
matter, and I am of the opinion that Wilshire Credit Corporation may be in breach of the terms and
conditions of the "Loan Modification Agreement" effective on or about 9/1/08, by its failure to provide
either adequate and valuable consideration, or full disclosure of the material terms and conditions of the
alleged agreement, including the nature and extent of changes to and the material impact upon Escrow
No./Loan No.: 4453847/4239470. In addition, I have reason to believe that your company may have
violated federal Real Estate Settlement Procedures Act provisions.

This Notice and Demand should not be perceived as a refusal to pay any valid debt. However, I have
questions regarding the validity of the debt you are alleging in the attached billing statement, as well as
the aforementioned earlier statements, and in order to determine the validity of your presentment, and
continue payment on the above-listed account, I will require certain information to confirm your claim in
this matter. To that end, please note that I am bringing this action under my federal rights as contained in
C.F.R. Regulation Z Section 226.13, Billing Error Resolution, which states the following:

> **d) Rules pending resolution.** Until a billing error is resolved under paragraph (e) or (f) of
> this section, the following rules apply:
>
> > (1) **Consumer's right to withhold disputed amount; collection action
> > prohibited.** The consumer need not pay (and the creditor may not try to
> > collect) any portion of any required payment that the consumer believes is
> > related to the disputed amount (including related finance or other charges).[30] If
> > the cardholder maintains a deposit account with the card issuer and has agreed
> > to pay the credit card indebtedness by periodic deductions from the
> > cardholder's deposit account, the card issuer shall not deduct any part of the
> > disputed amount or related finance or other charges if a billing error notice is
> > received any time up to 3 business days before the scheduled payment date.

Further I am invoking my rights as a consumer under State of Ohio Consumer Sales Practices Act, R.C. 1345.01, et seq, which states the following:

### § 1345.03 Unconscionable consumer sales practices.

(A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

(B) In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration:

(1) Whether the supplier has knowingly taken advantage of the inability of the consumer reasonably to protect his interests because of his physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of an agreement;

(2) Whether the supplier knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers;

(3) Whether the supplier knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;

(4) Whether the supplier knew at the time the consumer transaction was entered into that there was no reasonable probability of payment of the obligation in full by the consumer;

(5) Whether the supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier;

(6) Whether the supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to his detriment;

(7) Whether the supplier has, without justification, refused to make a refund in cash or by check for a returned item that was purchased with cash or by check, unless the supplier had conspicuously posted in the establishment at the time of the sale a sign stating the supplier's refund policy.

### § 1345.04 Jurisdiction.

The courts of common pleas, and municipal or county courts within their respective monetary jurisdiction, have jurisdiction over any supplier with respect to any act or practice in this state covered by sections 1345.01 to 1345.13 of the Revised Code, or with respect to any claim arising from a consumer transaction subject to such sections.

### § 1345.09 Private remedies.

For a violation of Chapter 1345. of the Revised Code, a consumer has a cause of action and is entitled to relief as follows:

(A) Where the violation was an act prohibited by section 1345.02 or 1345.03 of the Revised Code, the consumer may, in an individual action, rescind the transaction or recover his damages.

(B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of his actual damages or two hundred dollars, whichever is greater, or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended.

(C) In any action for rescission, revocation of the consumer transaction must occur within a reasonable time after the consumer discovers or should have discovered the ground for it and before any substantial change in condition of the subject of the consumer transaction.

(D) Any consumer may seek a declaratory judgment, an injunction, or other appropriate relief against an act or practice that violates this chapter.

(E) When a consumer commences an individual action for a declaratory judgment or an injunction or a class action under this section, the clerk of court shall immediately mail a copy of the complaint to the attorney general. Upon timely application, the attorney general may be permitted to intervene in any private action or appeal pending under

this section. When a judgment under this section becomes final, the clerk of court shall mail a copy of the judgment including supporting opinions to the attorney general for inclusion in the public file maintained under division (A)(3) of section 1345.05 of the Revised Code.

(F) The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if either of the following apply:

> (1) The consumer complaining of the act or practice that violated this chapter has brought or maintained an action that is groundless, and the consumer filed or maintained the action in bad faith;
>
> (2) The supplier has knowingly committed an act or practice that violates this chapter.

Please be advised that we have made every reasonable attempt to resolve this matter with your firm. We attempted in good faith to abide by your strict protocols up to and including seeking an unnecessary loan modification to correct the dispute. While these numerous attempts on our part dating back to October 30, 2008 and through April 6, 2009 have not resolved the underlying dispute, we are still optimistic that a reasonable and amicable solution can be found between the parties.

Please restrict all communications with me regarding this matter to writing, and understand that all communications, acts or omissions may be used in litigation, including the filing of grievances and the initiation of investigations at the Federal Trade Commission and other government bodies regarding your non-compliance with the Fair Credit Reporting Act, Fair and Accurate Credit Transaction Act of 2003, and other state and federal consumer protection laws. Your failure to respond to this Notice and Demand within thirty (30) days will be construed as a waiver of any and all claims regarding the above-listed account, and will act as a confirmation that no further action will be taken on your part with respect to the subject account. Please also take notice that during the pendency of this dispute, no further payments will be made on the account, and the account cannot be sold, assigned, forwarded or otherwise transferred for purposes of the collection of a debt.

Respectfully,

Jamie L. Gindele          Gary D. Gindele

# GMAC Mortgage

*Exhibit E ⅟₇*

February 22, 2010

Jamie L Gindele
PO Box 42200
Cincinnati OH  45242

RE:    Account Number        ███████7644
       Property Address       6043 Kenwood Rd
                              Cincinnati OH  45243-2931

Dear Jamie L Gindele:

Please be advised that this letter serves as our response to your Qualified Written Request ("QWR") for information regarding the above-referenced GMAC Mortgage account dated 02/04/10 and received in our office on 02/08/10.  In your correspondence, you request detailed information and documentation regarding nearly every aspect of the mortgage loan transaction, beginning with its origination.

In response to your inquiry, GMAC Mortgage has enclosed a copy of the account's payment history as required by the Real Estate Settlement Procedures Act ("RESPA").

Because your letter appears to be questioning nearly every aspect of the loan transaction, it is difficult for GMAC Mortgage to identify any specific concern(s) you have regarding the servicing of the account.  Nevertheless, in an effort to be responsive to your request, copies of pertinent documentation GMAC Mortgage has in its records are enclosed.

- Note
- Deed of Trust/Mortgage
- HUD-1 Settlement Statement

If after reviewing this information, you have any specific questions or concerns regarding the mortgage loan servicing of this account, please contact Customer Care at 1-800-766-4622 between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to 1:00 pm CT on Saturday.

Customer Care
Loan Servicing

Enclosures

BD

3451 Hammond Ave
Waterloo, IA 50704

Identifier:8307055269          Doc Type:NOTE

*Exhibit E ²/₇*



# True Certified Copy

# Interest Only Adjustable Rate Note

### Six Month LIBOR Index - Rate Caps

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**June 15, 2006**                   **Cincinnati**                   **Ohio**
[Date]                              [City]                          [State]

**6043 Kenwood Road, Cincinnati, OH  45243**

[Property Address]

1.  **BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S. $ **720,000.00**                (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **GreenPoint Mortgage Funding, Inc.**

    I will make all payments under this Note in the form of cash, check or money order.
    I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.  **INTEREST**
    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **7.250**      %. The interest rate I will pay may change in accordance with Section 4 of this Note.
    The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3.  **PAYMENTS**
    (A) Time and Place of Payments
    I will make a payment on the first day of every month, beginning on **August 1, 2006**                . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
    I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on **July 1, 2036**              , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at **P.O. Box 1093, Branford, CT 06405-8093**

    or at a different place if required by the Note Holder.

    ███ 9430

IONOH-OD (02/06)
GreenPoint Mortgage Funding, Inc.                                    Page 1 of 5

Identifier:8307055269          Doc Type:NOTE

*Exhibit E ³/₇*



**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 4,350.00                until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

**4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **July, 2009**                , and the adjustable interest rate I will pay may change on that day every  6th  month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market based on quotations of major banks, as published by the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, or is no longer published, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  **two and one-quarter** percentage points ( 2.250                %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than  12.250                % or less than 2.250                %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than one percentage points from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is 10 year(s) from the first payment due date, as reflected in Section 3(A) of the Note.

IONOH-OD (02/06)                                                        ████9430

GreenPoint Mortgage Funding, Inc.                    Page 2 of 5

Identifier:8307055269        Doc Type:NOTE

*Exhibit E 4/7*

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15            calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000            % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

IONOH-OD (02/06)                                                                    █████ 9430

GreenPoint Mortgage Funding, Inc.                    Page 3 of 5

Identifier:8307055269          Doc Type:NOTE

*Exhibit E 5/7*

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

———————————— **[Signatures on Following Page]** ————————————

IONOH-OD (02/06)
GreenPoint Mortgage Funding, Inc.

Page 4 of 5

9430

Identifier:8307055269          Doc Type:NOTE

*Exhibit E 6/7*

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
Jamie L Gindele                 -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                -Borrower                                      -Borrower

*[Sign Original Only]*

IONOH-OD (02/06)
GreenPoint Mortgage Funding, Inc.                    Page 8 of 8

9430

Identifier:8307055269          Doc Type:NOTE

*Exhibit E 7/7*

# PREPAYMENT FEE ALLONGE

Loan Number ████9430

This Prepayment Fee Allonge ("Allonge") is made this fifteenth day of June, 2006, and is incorporated into and intended to form a part of the note dated the same date as this Allonge (Note) and also amends and supplements the mortgage, deed of trust, security deed, or security instrument (the "Security Instrument") dated the same date as this Allonge and the Note. To the extent that the provisions of this Allonge are inconsistent with the provisions of the Note and/or the Security Instrument, the provisions of this Allonge shall prevail over and will supercede any inconsistent provisions of the Note and/or the Security Instrument.

The section of the Note entitled Borrower's Right to Prepay is amended by adding the following paragraph as the last paragraph of such section:

If I make a full Prepayment within three years of the date of this Note, I agree to pay the Note Holder a Prepayment fee. The Prepayment fee I will pay shall be an amount equal to one percent (1%) of the original principal amount of this Note. I will not be obligated to pay a Prepayment fee if I make a full Prepayment at any time after the 3rd Year anniversary of the date of this Note. In no event will such a charge be made if it violates state or federal law.

No Prepayment penalty will be assessed if prepayment is concurrent with the sale of the property securing the Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_____ (Borrower)        _____ (Borrower)
Jamie L Gindele

_____ (Borrower)        _____ (Borrower)

_____ (Borrower)        _____ (Borrower)

_____ (Borrower)        _____ (Borrower)

                                                    *[Sign Original Only]*

**<u>Claim No. 5431</u>**

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT _Southern_ DISTRICT OF _New York_ | | PROOF OF CLAIM |
|---|---|---|

**Name of Debtor:**
_Residential Funding Company, LLC_

**Case Number:**
_12-12019 (MG)_

RECEIVED
NOV 1 6 2012
KURTZMAN CARSON CONSULTANTS

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
_Jamie L. Gindele_

**COURT USE ONLY**

**Name and address where notices should be sent:**
_Jamie L. Gindele_
_PO Box 42200_
_Cincinnati, Ohio 45242_
**Telephone number:**
_(513) 793-5044_     email: _jamiegindele@gmail.com_

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
   (*If known*)

**Filed on:** _____

**Name and address where payment should be sent (if different from above):**




**Telephone number:**         email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ _709,777.40 plus 7.25% interest per year from October 1, 2008._

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** _Real Estate - Debtor claimed an interest in a real estate note that was obtained fraudulently,_
(See instruction #2)    _through an alleged Mortgage Electronic Systems (MERS) assignment. Precedent exists for this_
_Court to deny validity of MERS assignments. Judgment entry occurred after Debtors filed for bankruptcy._
_Documentation attached._

**3. Last four digits of any number by which creditor identifies debtor:**
__ __ __ __

**3a. Debtor may have scheduled account as:**
_____
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
_____
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☒ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**

**Value of Property:** $ _____

**Annual Interest Rate** _____% ☐ Fixed  or  ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
$ _____

**Basis for perfection:** _____

**Amount of Secured Claim:** $ _____

**Amount Unsecured:** $ _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**
$ _____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

12120191211160000000000047

B 10 (Official Form 10) (12/11)                                                                                                    2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

RECEIVED

NOV 1 6 2012

KURTZMAN CARSON CONSULTANTS

**8. Signature:** (See instruction #8)

Check the appropriate box.

☒ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
              (Attach copy of power of attorney, if any.)    or their authorized agent.    (See Bankruptcy Rule 3005.)
                                             (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Jamie L. Gindele
Title:  Director
Company:  Gindele Properties, LLC
Address and telephone number (if different from notice address above):

(Signature)  *Jamie L. Gindele*    (Date) 11/14/12

Telephone number:                    email:

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

# COURT OF COMMON PLEAS
# HAMILTON COUNTY, OHIO

RESIDENTIAL FUNDING LLC.                    )
               Plaintiff,                )          **Answer and Counterclaims**

v.                                                         )

                                )          **Case No.  A 0905631**

JAMIE L. GINDELE ET. AL.

                                           **JUDGE BETH A. MYERS**

               Defendants.                )

---

## DEFENDANTS ANSWER AND COUNTERCLAIMS

Now come Defendants, while awaiting the trial courts disposition of Defendant's Objection to Magistrate's Decision and Defendant's Opposition to Plaintiff's Motion For Default Judgment and state their Answer and Counterclaims under Civil Rule 6(B)(2).

Defendants Jamie Gindele and Gary Gindele state they:

1. Deny the allegations in Count One, paragraph 1 of the complaint. To the extent paragraph 1 contains conclusions and argument not supported by any evidence, Defendant states that no response is required and that such statements are improper and should be stricken.
2. Admits the allegations of Count Two, paragraph 2 only to the extent that Defendants executed and delivered a promissory note and mortgage to the original holder, Greenpoint Mortgage Funding on or about June 30, 2006. To the extent that paragraph 2 incorporates the allegations of Count One, paragraph 1, they are all denied.
3. Admits the allegations in paragraph 3 of the complaint that mortgage was filed for record on June 30, 2006, in Official Record No. 10284, page 642, of the county recorder's records but also asserts that a proper chain of custody from the original holder, Greenpoint Mortgage Funding to the current holder and plaintiff, Residential Funding Real Estate Holdings, LLC., was not maintained. To the extent paragraph 3 contains any other factual allegations, they are all denied. To the extent that paragraph 3 contains legal conclusions and argument, Defendants state that no response is required and that such statements are improper and should be stricken. Defendants further dispute and deny that *"the conditions of defeasance contained therein have been broken."* Defendants further dispute and deny that *"plaintiff has complied with all conditions precedent."* Defendants further dispute and deny that *"plaintiff is entitled to have said mortgage foreclosed."*
4. Are without knowledge or information sufficient to form a belief regarding the allegations in paragraph 4.
5. Deny the factual allegations in paragraph 5 as plaintiff has claimed in its complaint as evidenced in Exhibit D of the Complaint, that Mortgage Electronic Registration Systems, Inc. relinquished its rights to this transaction when it "assigned" it rights to Residential Funding Company, LLC through its Corporate Assignment of Mortgage/Deed of Trust. To the extent that paragraph 5 contains legal conclusions and argument, Defendants state that no response is required and that such statements are baseless and improper and should be stricken.
6. Admits the allegations in paragraph 6 of the complaint.

## DEFENSES

Defendants state the following defenses to each claim asserted by the Plaintiff:

1. The Complaint fails to state any claims against the Defendants upon which this Court may grant relief.

2. Plaintiff's injuries and/or damages and/or expenses, if any, were the direct and proximate result of their own acts, omissions, malice, negligence, fault and/or breach of contract with Defendants.

3. Plaintiff's claims are barred by the doctrine(s) of assumption of the risk, estoppels, waiver, release, fraud, unclean hands, res judicata, collateral estoppel and/or laches.

4. Plaintiff's injuries and/or damages and/or expenses, if any, were the direct and proximate result of the acts, omissions, malice, negligence, fault and/or breach of the persons and/or parties other than Defendants, namely and specifically plaintiff's own agents, loan servicers, mortgage brokers, title attorneys and prior promissory note and mortgage holders, that caused or contributed to cause all jointly, or a portion of severally, the claimed damages or alleged liability barring recovery or liability against Defendants in whole or in part.

5. Plaintiff's injuries and/or expenses, if any, were caused solely by the superseding, intervening acts and conduct of Plaintiff and/or other persons or parties, which intervened between the alleged acts and conduct of Defendants and the claimed damages or liability, barring recovery or liability against Defendants in whole or in part.

6. Plaintiff's claim of damages or liability are barred in whole or in part by the limitations imposed by law as to the recovery of such damages.

7. Plaintiff's claim of damages or liability are barred in whole or in part by Plaintiff's failure to demonstrate mitigation of its risks.

8. Plaintiff's claim of damages or liability are barred in whole or in part by the applicable statutes of limitation, statutes of repose and other statutes relevant to the limitation of actions.

9. Plaintiff's claims of damages or liability are barred in whole or in part by the doctrines of ratification, consent and acquiescence.

10. Some or all of Plaintiff's claims of damages or liability are barred in whole or in part, by the doctrines of merger and integration, and/or parole evidence rule.

11. Plaintiff failed to comply with Ohio Civ.R. 10(D).

12. Defendants affirmatively assert the defense of improper service.

13. Defendants affirmatively assert the defense of improper service of process.

14. Defendants affirmatively assert that plaintiff violated the terms of the Security Instrument, that the Security Instrument clearly articulates the responsibilities of the parties and that plaintiff has breached same.

15. Defendants have fully performed under their contractual obligations until such time that plaintiff's agents and/or loan servicers breached the contract.

16. Defendants denies all allegations in the Complaint which are not specifically admitted herein.

17. Defendants reserve the right to assert any and all general and affirmative defenses that may develop during the course of this matter, via discovery or otherwise.

## AFFIRMATIVE DEFENSES

Defendants state the following affirmative defenses to each claim asserted by Plaintiff:

18. Defendants incorporate paragraphs 1-17 of this document as if fully stated within.
19. Plaintiff has failed to state a cause of action;
20. This court lacks jurisdiction over the subject matter;
21. Plaintiff lacks standing to maintain this action;
22. Plaintiff lacked standing at the time this action was filed;
23. Plaintiff allegedly received assignment of note and mortgage in attempts to bring its complaint, however the chain of custody was broken as plaintiff failed to demonstrate how Mortgage Electronic Systems (MERS) as a previous holder of the note and mortgage came into its possession.
24. An assignment from MERS is without legal effect in The State of Ohio.
25. Plaintiff has failed to plead the performance or occurrence of conditions precedent, that the proper and valid notification of an alleged breach was communicated to Defendants by Plaintiff as required in covenant 20 of the sole Security Agreement governing this transaction.
26. Plaintiff has failed to comply with the post-closing loan disclosure requirements of 12 C.F.R. § 226.9, et seq;
27. Plaintiff and/or its agents and/or its loan servicer, breached its contract with Defendants when it forced placed home owner's insurance upon Defendants in an amount in excess of that required under the contract, increasing Defendants' required monthly payments substantially, actually and proximately causing Defendants to no longer meet their obligation under the contract, and thus excusing Defendants performance under the contract.
28. Defendants performance under the original contract and the loan modification is excused;
29. Upon reason and belief, the mortgage transaction is void for fraud due to the original mortgage assignees', Greenpoint Mortgage Funding (Greenpoint) and Mortgage Electronic Registration Systems, Inc., (MERS), violations of the Real Estate Settlement and Procedures Act (RESPA), 12 U.S.C. § 2601, et seq., in paying kickbacks and/or

unearned fees to Brookline Home Loans, Observatory Ave., Cincinnati, Ohio 45208 (Broker) and Leo Grote, Esq., Cincinnati, Ohio 45242 (Title Attorney);

30. The loan modification documents relied upon by Plaintiff are void for lack of compliance with RESPA, 12 U.S.C. § 2601, et seq.;

31. The loan modification documents relied upon by Plaintiff are void for lack of compliance with Regulation Z of the Truth in Lending Act, 12 C.F.R. § 226.1, et seq.;

32. The loan modification mortgage transaction is void for common law fraud due to Wilshire Credit Corporation, the plaintiff's loan servicer, presentation of a substantially lower interest rate during its negotiations (2.99%, thirty year fixed mortgage) than Defendants ultimately received (7.25%, five year ARM) that Defendants relied upon Wilshire's misrepresentation of said better terms, that Defendants were induced into a loan modification due to these misrepresentations and were further induced to give up all previous, material and substantial legal claims against prior parties, including Wilshire without any valuable consideration in return.

33. An alleged mortgagee, MERS, was not properly licensed to conduct business in the State of Ohio, could not be as plaintiff has averred, simultaneously both a nominee and a mortgagee; and

34. The underlying mortgage is void for want of MERS registering with the State of Ohio as a federally chartered bank, state-chartered commercial bank, credit union, savings association, nondeposit trust company, international banking office, consumer finance company, State of Ohio licensed mortgage broker business, mortgage broker individual, retail installment seller, or sales finance company.

35. Plaintiff, its agents, loan servicers, brokers and title attorneys (collectively "Plaintiff) have demonstrated a pattern of conduct which clearly demonstrates bad faith. In no less than 12 separate instances, "Plaintiff" failed to competently execute even a minimal level of performance in regards to its contractual and covenantal obligations with Defendants, to the total detriment of the Defendants. As a result

36. Defendants, unable to rely upon the loan servicer for competent performance of its responsibilities, had no other choice but to issue a formal, written, certified dispute communications to the loan servicer and to the holder of the note and mortgage at that time. Exhibit A is attached and incorporated as if fully stated herein.

37. Plaintiff failed in its minimal responsibilities to resolve Defendants legitimate disputes and therefore

38. Defendants issued a formal rescission letter demand upon the loan servicer and holder of the note and mortgage. Exhibit B is attached and incorporated as if fully stated herein.


## COUNTERCLAIMS

39. Defendants re-allege and incorporate paragraphs 1-38 as if fully stated herein;

40. Defendants allege that a mortgage contract existed between the Defendants and the original holder of a certain note and mortgage;

41. Defendants allege that Plaintiff has assumed all of the damages, expenses, breaches and liabilities of any and all agents, loan servicers, brokers, title attorneys, insurers, mortgagees, and prior holders of this note and mortgage harming Defendants;

42. Defendants specifically allege that Plaintiff forced placed hazard, wind, fire and/or flood insurance upon Defendants prior to September 1, 2008 requiring Defendants to pay the premium for said insurance;

43. Defendants allege forced placed insurance was substantially more expensive than similar insurance available on the market and that plaintiff was unjustly enriched by this action;

44. Defendants allege said forced placed insurance was unnecessary because Defendants had sufficient insurance in place until Plaintiff under the terms of its escrow contract with Defendants failed to make the necessary premium payment from the escrow account, thus causing the cancellation of the policy.

45. Defendants allege they repeatedly communicated with loan servicer and subsequently the holder of the note and mortgage at that time about the forced placed insurance, specifically demonstrating Defendants' insurance was sufficient under the terms of the parties' contract and that it was only through the plaintiffs and/or loan servicers negligence and/or incompetence that the underlying sufficient policy was cancelled. Since Defendants had arranged for the underlying sufficient policy through their own insurance relationship, plaintiff and/or loan servicers negligence, malice and incompetence caused severe damage to Defendants reputation and ability to secure future insurance coverage.

46. Defendants allege Plaintiff breached its contract with Defendants when it forced placed said insurance upon Defendants in an amount in excess of that required under the parties' contract.

47. Defendants allege Plaintiff's actions caused Defendants to no longer be able to make the payments under the contract;

48. Defendants and Plaintiff's loan servicer signed a loan modification agreement on or about September 1, 2008. See Exhibit C attached and incorporated as if fully stated herein.

49. Said loan modification agreement states in paragraph 3 that "...*the interest rate of the principal amount of the Note will be fixed at 7.25% and will remain in effect for 60 months.*" This resulted in Defendants relying upon this fact in determining the acceptability of the loan modification agreement. Said loan modification agreement states in paragraph 4 that "...*In addition to the principal and interest obligation, Borrower(s) are required to make monthly escrow payments of $1691.61. Borrower(s) therefore will pay this Note in regular payments of $5981.19 for the 60 month fixed-rate period...The escrow portion of the monthly payment is subject to change **due to increases or decreases in taxes and/or insurance premiums,** and the monthly payment above may be changed by Wilshire to reflect such increase or decrease.*"

50. Defendants assert that neither the property taxes nor the insurance premiums changed and that Plaintiff erroneously increased the payment obligation amount to $7197.91 effective on November 1, 2008.

51. Defendants assert that immediately upon being made aware of this billing error, on or about October 15, 2008, that Defendants notified Plaintiff's loan servicer of the error and that the loan servicer continuously and repeatedly denied Defendants' billing error dispute causing Defendants to be forced to accelerate their claims through formal, certified, written communications dated April 6, 2009. See Exhibit A attached and incorporated as if fully stated herein. Plaintiff's actions caused Defendants to no longer be able to make the payments under the contract.

52. Defendants assert that Plaintiff had completed a thorough evaluation of Defendants financial condition prior to September 1, 2008 in determining the terms and conditions of the Loan Modification Agreement and Defendants further assert that Plaintiff knew and possessed the necessary knowledge to be aware that **any** increase in payment obligations would result in Defendants inability to make the increased payments under the contract and therefore;

53. Defendants assert and allege that Plaintiff through its loan servicer and as a result of their actions violated the Ohio Consumer Sales Practices Act, R.C. 1345.01, et seq.,

and specifically Section § 1345.03 (A) and (B)(2)(a)(4)(5) and (6), that under Section § 1345.04 Jurisdiction, that the courts of common pleas and municipal or county courts within their respective monetary jurisdiction, have jurisdiction over any supplier with respect to any act or practice in this state covered by sections 1345.01 to 1345.13 of the Revised Code.

54. Defendants further assert that under Section § 1345.09 Private Remedies that for a violation of Chapter 1345 of the Revised Code, a consumer has a cause of action and is entitled to the rescission of the transaction or recovery of damages. Defendants assert that a rescission letter was sent via certified mail on July 3, 2009. Exhibit B is attached and is incorporated as if fully stated herein.

55. Defendants assert and allege that this counterclaim is being restricted to the aforementioned Ohio statute violations and direct violations of the Security Agreement between the parties under the direct jurisdiction of the Hamilton County Common Pleas Court and that related federal violations under 15 U.S.C. 1635(a), Regulation Z.12 C.F.R. 226.17 and 226.23 and Fair Debt Collection Practices Act 15 U.S.C. § 1692 *et. seq.* ("FDCPA,") and the Fair Credit Reporting Act 15 U.S.C. § 1681 *et seq.* ("FCRA,") will be pursued in the federal court venue pending the disposition of this case.

56. Defendants assert that Plaintiff never provided Defendants with any evidence of an increase in either the taxes or the insurance premiums, despite repeated requests made by Defendants. In fact, due to Plaintiff's failure to properly and competently handle the insurance coverage on the underlying property, Defendants executed a new policy with State Auto Insurance of Ohio at their own expense effective April 1, 2009, and provided documentation of same to Plaintiff.

57. Plaintiff however, failing in its minimal obligations under federal and state real property escrow laws and its obligations under the Security Agreement governing this transaction, further denied Defendants' due process by not reflecting the documented insurance costs reduction in the accounting for the transaction between Plaintiff and Defendants, in fact

58. Plaintiff ceased sending any account statements whatsoever after February 1, 2009 inflicting additional intentional harm towards Defendants and Defendants' attempts to resolve the billing dispute.

59. Plaintiff's failure to adhere to the terms, conditions and uniform covenants of the security instrument and its failure to properly accelerate through proper notification any complaint that it alleged to have with the Defendants, constitutes a breach of contract, this willful breach of contract by the Plaintiff was attended by such malice, insult, and abuse that it constitutes an independent tort, thus entitling the Defendants to recover punitive damages as well as actual damages, which were proximately and foreseeable caused by the Plaintiff's breach.

60. Plaintiff's attempt to establish itself as a Real Party in Interest, causes Plaintiff to assume all the responsibilities of its agents in this transaction and thus the breach by the Plaintiff through its' agents, broker representatives, title attorneys and loan servicers, which was willful or grossly negligent, was attended by such malice, insult, and abuse that it constituted an independent tort, thus entitling the Defendants to recover punitive damages as well as actual damages.

61. Plaintiff breached the above described contract for reasons incompatible with good faith and fair dealing, as a proximate and foreseeable result of which the Defendant suffered damages. The breach of contract as evidenced by the violations of the terms, conditions and uniform covenants of the security agreement was wholly unsupported by any arguable reasons, was willful, malicious, and in bad faith.

62. Plaintiff assumed the responsibility for all precedent promises and obligations made to the Defendants through the underlying security agreement by using this court system to file suit on June 9, 2009 against the Defendants, resulting in the Plaintiff's assumption of responsibility for the promises made to the Defendants when the original note and mortgage holder expected that the Defendant would rely on those promises.

63. Plaintiff generally and specifically knew that these promises or covenants with the Defendants would have created a reasonable expectation in the Defendants that they would not face any judicial action specifically from a Lender (the Plaintiff) who had no business relationship with the Plaintiff prior to the aforementioned June 9, 2009 lawsuit. Further, Defendants assert that it is reasonable to assume that the Plaintiff knew that the Defendants relied upon the fact that they would be given the reasonable opportunity to correct any implied or stated grievance.

64. Defendants assert that a reasonable mind can only draw one conclusion, that being that the Plaintiff who has engaged in literally hundreds if not thousands of similar transactions with other parties unrelated to this transaction knew that the Defendants could not have possibly foreseen that Plaintiff was going to use the court system to in effect enter into a contract with the Defendants, without providing the Defendants any consideration.

65. Defendants assert that they relied to their substantial detriment upon the promises of the Plaintiff that the uniform covenants of the security agreement, specifically guiding conduct around acceleration and notification and those around taking any judicial action would be adhered to, in total. In fact, a reasonable mind can draw but one conclusion from the course of events, that being the Plaintiff with the implicit cooperation of it's agents, representatives and loan servicers, willfully and knowingly acted in a manner substantially detrimental to the Defendants.

66. Defendants assert and allege that Plaintiff's breach of its' promises and inherent assurances proximately caused the damages previously described in the Complaint, said damages were foreseeable and the Plaintiff's conduct causing these damages was attended by malice, willfulness, insult, and abuse, thus entitling the Defendants to recover punitive as well as actual damages.

Wherefore, Defendants pray this court:

A. Grant them injunctive relief in the form of the dismissal of these proceedings with prejudice and at Plaintiff's costs.

B. Grant them declaratory relief by enforcing the termination and rescission of all contractual obligations between the parties as remedy is set forth under Section § 1345.09.

C. Grant them reasonable compensation for breach of contract and the implied covenant of good faith and fair dealing: a judgment of this Court against the Plaintiff, awarding the Defendants in excess of twenty five thousand dollars ($25,000).

D. Grant them punitive damages in excess of twenty five thousand dollars ($25,000).

E. Further, Defendants seek judgment from this Court against Plaintiff awarding the Defendants the elimination of all interest, penalties and fees accrued and alleged as due on the aforementioned contract.

F. Deny Plaintiff's requested relief; and

G. Grant Defendant any and all other relief this Court deems equitable.

# COURT OF COMMON PLEAS
# HAMILTON COUNTY, OH

COPY FILED
CLERK OF COURTS
HAMILTON COUNTY

JAN 10 2012

TRACY WINKLER
COMMON PLEAS COURTS

RESIDENTIAL FUNDING, LLC )
                    Plaintiff, )    <u>Defendants Further Reply</u>

v. )

JAMIE L. GINDELE et. al. )    Case No.  A 0905631

                    )    Judge Beth A. Myers

           Defendants. )

---

## NOTICE OF FILING

Please take Notice that on the 10th day of January, 2012, there was filed with the Clerk, Court of Common Pleas, Hamilton County, Ohio, Defendant's Further Reply to Plaintiff's Motion for Summary Judgment in the above-captioned matter.

BY: *Jamie L. Gindele*
Jamie L. Gindele
9827 Old Chimney Court
Cincinnati, OH 45241
(513)793-5044

## CERTIFICATE OF SERVICE

    I Jamie L. Gindele hereby certify that a copy of the foregoing Defendant's Answer and Counterclaims was sent to Plaintiff, by first class mail addressed to its attorney: David Wallace of Carpenter Lipps & Leland 280 Plaza, Suite 1300 280 North High Street Columbus Ohio 43215 on this 10th day of January, 2012.

BY *Jamie L. Gindele*
Jamie L. Gindele
9827 Old Chimney Court
Cincinnati, OH 45241
(513)793-5044

# COURT OF COMMON PLEAS
# HAMILTON COUNTY, OH

RESIDENTIAL FUNDING, LLC                )
              Plaintiff,                      )

v.

                                 )    **Case No.  A 0905631**

JAMIE L. GINDELE et. al.

                                 )    **Judge Beth A. Myers**

              Defendants.             )

---

## DEFENDANTS' GINDELE
## REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
## AND FURTHER MEMORANDUM IN OPPOSITION TO THE
## PLAINTIFF RESIDENTIAL FUNDING CORP.'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiffs' "Reply In Support of Motion for Summary Judgment and Memorandum in Opposition to the Defendants' Motion for Summary Judgment filed on or around December 20, 2011 is baseless and meritless. Defendants' indeed, stand on their meritorious counterclaims, plaintiff's protests to the contrary. Suffice to say, defendants' vigorously oppose plaintiffs' improper motion for summary judgment.

Plaintiff's somehow draw the incorrect conclusion that defendants' legal standing argument is not supported by applicable law and yet provide no case authority which supercedes *Carpenter v. Longan, 16 Wall. 271, 83 U.S. 271, 274, 21 L.Ed. 313 (1872).* In this case, the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

Plaintiff's continue on this same strain of irrational, presumptive and inconclusive "summarization" of defendants' arguments. Plaintiff attempts to draw legal conclusions of merit, fact and law where clearly none exist.

On June 15, 2006, Defendants entered into a loan with Greenpoint Mortgage Funding Inc. ("Greenpoint"). The 2 documents executed at the time of the loan closing were a residential mortgage document and a financial note. The mortgage was "assigned" to a

mortagee and "nominee," Mortgage Electronic Registration Systems, ("MERS") <u>and the</u>
<u>financial note remained with Greenpoint.</u> The mortgage and the note were bifurcated at
origination. On April 30, 2007, MERS executed a Corporate Assignment of
Mortgage/Deed of Trust in favor of Residential Funding Company, LLC. ("RFC") On
June 2, 2009, RFC executed a Corporate Assignment of Mortgage to Residential
Funding Real Estate Holdings, LLC. ("RFRE") On January 8, 2010, RFRE executed a
Corporate Assignment of Mortgage back to RFC.

This is an extraordinarily simple case. As occurred at the origination of this transaction,
the mortgage and the note were separated. The mortgage was conveyed to MERS
while the note remained with the originating lender, Greenpoint. While the mortgage
*was* assigned later by MERS to the plaintiff, the note remained with Greenpoint. **The**
**note still remains with Greenpoint.** As was established and uncontroverted in the
Defendants' Motion for Summary Judgment, defendants submitted evidence in the form
of a letter from Greenpoint and affirmed in a sworn, uncontradicted affidavit by
defendant Jamie L. Gindele, that Greenpoint **did not transfer the account "note" to**
**the plaintiff.**

Plaintiff claims a set of **"Undisputed Facts"** which are simply not supported by the
evidence or any affiants sworn testimony. In fact, defendants have provided
uncontroverted evidence that defeats not only plaintiff's assertion that it is due a
summary judgment but should be meritorious enough to result in summary judgment in
favor of defendants' and a dismissal of plaintiff's complaint.

Plaintiff attempts to convolute and obfuscate justice and the due diligence of the legal
process by asserting in paragraph 2 of its own Motion For Summary Judgment that the
"original Note was in the possession of RFRE, at the time the foreclosure complaint was
filed" <u>and yet has demonstrated no set of facts as to how the note came into their</u>
<u>possession.</u> Plaintiff further claims that the note was "negotiated" from RFRE to RFC
during the pendency of this case. This point is moot. This fictitious transfer was void at
inception because the note is still held by the original lender, Greenpoint. Finally,
neither RFRE nor RFC have been damaged in any way by the Defendants nor can

produce any set of facts justifying their cause of action and therefore are not able to establish a legal basis for their complaint. Thus the plaintiffs' Motion For Summary Judgment should be denied and their entire complaint should be dismissed.

Plaintiffs' aver that "the defendants' loan is due for the November 2008 payment. For the sake of argument, let's assume that is a true statement. What is incredulous is that if true, it is not owed to the plaintiff, for the plaintiff cannot and has not established that it owns any financial rights in a transaction with the defendants. The plaintiff has attempted to demonstrate an alleged interest in a mortgage, a possessory interest. Plaintiff has **not** demonstrated any interest in the underlying note, in other words it has not proven a financial interest.  As such, the remainder of the plaintiffs' arguments are moot.

## The defendants asserted their full defenses, affirmative defenses and counterclaims in their Answer and they are stated as if fully incorporated within this motion.

Ownership of the promissory note and the mortgage instrument were bifurcated. The unendorsed promissory note was not a bearer instrument. Rather, it was made payable to the lender who is a specifically identified person - Greenpoint– and the mortgage instrument named MERS as the mortgagee, solely as a nominee. Neither the mortgage instrument nor the promissory note granted MERS an interest in the promissory note, instead, Greenpoint at all times retained ownership in the promissory note. The right to foreclose is dependent upon there being an enforceable promissory note. An assignment of mortgage from MERS to plaintiff granted plaintiff all of the interests that MERS had in the promissory note and the mortgage instrument. By the assignment of mortgage, MERS could not convey a greater interest to plaintiff than that which it already held. Since MERS had no enforceable interest in the promissory note, it conveyed no enforceable interest in the promissory note to the plaintiff. Even if MERS was an agent of Greenpoint (which it was not and has never been established) with authority to enforce the promissory note, no evidence of such authority has been presented. Without an interest in the promissory note, or without evidence of authority to enforce the promissory note against defendant, plaintiff has no standing to foreclose raising the issue of material facts in dispute. Thus granting plaintiff summary judgment would be improper.

On February 4, 2010, nearly 8 months **_after_** plaintiff filed this complaint, Defendants' Gindele served upon plaintiff and plaintiff's loan servicer, GMAC, a Qualified Written Request disputing various specific elements of the loan transaction. In its' written

response dated February 22, 2010, loan servicer GMAC stated *"in an effort to be responsive to your request, copies of pertinent documentation GMAC has in its records are enclosed."* One of those "pertinent documents" GMAC enclosed was a "True Certified Copy" of the financial note. It is attached as ("Exhibit A"). It should be noted that the financial note is made specifically in the name of the original lender, Greenpoint, and that there is no "endorsement in blank" or "allonge" granting plaintiff any rights as holder.  The only "allonge" is one establishing a "pre-payment fee." Therefore the "True Certified Copy" of the financial note establishes without contradiction that __plaintiff was not the holder of the financial note at the time this complaint was filed (nor anytime subsequently.)__

A recent case in Cuyahoga County provides perhaps the most current thinking and instructively ties to the US Supreme Court case of over 138 years ago.
In the case, *Huntington National Bank v. Brown, Case No. CV-09-702894,* as with literally thousands of other foreclosure cases filed nationally, the original note was made payable to a third party. Huntington purported to claim entitlement to summary judgment on the basis of a MERS assignment.

The court's opinion states:
"It is beyond peradventure that one cannot transfer rights in property that one does not own. Since MERS was not the original payee on the note, and since the note was never endorsed to MERS or endorsed in blank, MERS had no legal rights by the tenor of the note and therefore was not legally capable of transferring the note to anyone." The opinion also states that "without the blank endorsement, Huntington could not claim status as a "holder" of the Note."

Importantly, the opinion also states that "Possession alone of a negotiable instrument does not establish that a party has the right to receive payments under it," citing Ohio case law.

To reiterate, Defendants' claims that plaintiffs did not have standing to bring their complaint dates back to early 2007. Defendants' have consistently maintained that the chain of custody of the note was broken and that plaintiff has no standing to bring its complaint.

Further, as if the standing issues were not material enough, defendants' counterclaims are reaffirmed and have been further substantiated by state attorney general's throughout the United States who have filed similar if not identical complaints against the plaintiff, its myriad of corporate entities and specifically to its loan servicer and parent company, GMAC Mortgage. Specifically and most germane is the State of Ohio Attorney Generals case now being tried in US District Court in the Northern District of Ohio, presided under Judge Jack Zouhary.  The federal court has sought and obtained certification of the Ohio Supreme Court to answer the specific questions that have been raised by defendants' counterclaims as brought under the Ohio Consumer Sales Practices Act, R.C. 1345.01, et seq., and specifically Section § 1345.03 (A) and (B)(2)(3)(4)(5) and (6), that under Section §

1345.04 Jurisdiction, that the courts of common pleas and municipal or county courts within their respective monetary jurisdiction, have jurisdiction over any supplier with respect to any act or practice in this state covered by sections 1345.01 to 1345.13 of the Revised Code.

Defendants further assert that under Section § 1345.09 Private Remedies that for a violation of Chapter 1345 of the Revised Code, a consumer has a cause of action and is entitled to the rescission of the transaction or recovery of damages. Defendants previously asserted that a rescission letter was sent via certified mail on July 3, 2009. The recission was within the 3 years statute of limitations as established by 15 U.S.C. Section 1635.

It would be totally improper and unjust to defendant to grant a summary judgment to plaintiff when the manifest weight of the evidence favors the defendants' position that the well established material issues need further adjudication or dismissal with prejudice in defendants' favor.

Plaintiffs' legal counsel will continue its attempts to attack the form of defendants' pro se legal advocacy, however defendants' would respectively pray to the court that it takes its' guidance from *Peterson v. Teodosio, (1973) 34 Ohio St.2d 161* holding that the spirit of the Civil Rules is the resolution of cases upon their merits not upon pleading deficiencies and that CivR 1(B) requires that the Civil Rules shall be applied "to effect just results."

## Conclusion

This case is not about giving someone a free house or allowing mortgages to go unpaid. This is about the judicial system following the simple rule of law and requiring this plaintiff or any plaintiff for that matter to follow the rules rather than asking the courts to make the rules fit their insatiable need for business expediency.

Plaintiffs motion for summary judgment is **not** well founded and should be dismissed as there are substantive and material disputed facts as evidenced in this brief. In fact, plaintiffs' have no standing to invoke the jurisdiction of the court and thus their motion should not even be entertained.

There is no basis for the plaintiffs' complaint and therefore no preclusion to defendants' motion for summary judgment. Given plaintiffs' lack of standing, defendant is entitled to judgment as a matter of law on their motion for summary judgment, counterclaims and affirmative defenses. As this is the second time that this same plaintiff has brought this baseless and unfounded complaint, defendant moves this court to;

Grant them injunctive relief in the form of the dismissal of these proceedings with prejudice and at Plaintiff's costs.

A. Grant them declaratory relief by enforcing the termination and rescission of all contractual obligations between the parties as remedy is set forth under Section § 1345.09.

B. Grant them reasonable compensation for breach of contract and the implied covenant of good faith and fair dealing: a judgment of this Court against the Plaintiff, awarding the Defendants in excess of twenty five thousand dollars ($25,000).

C. Grant them punitive damages in excess of twenty five thousand dollars ($25,000).

D. Further, Defendants seek judgment from this Court against Plaintiff awarding the Defendants the elimination of all interest, penalties and fees accrued and alleged as due on the aforementioned contract.

E. Deny Plaintiff's requested relief; and

F. Grant Defendant any and all other relief this Court deems equitable.

DATED this 10th day of January 2012.

Jamie L. Gindele
9827 Old Chimney Court
Cincinnati, Ohio 45241
(513)793-5044

Gary D. Gindele
9827 Old Chimney Court
Cincinnati, Ohio 45241
(513)793-5044

*Exhibit A ¹/₇*

# <u>GMAC</u> Mortgage

February 22, 2010

Jamie L Gindele
PO Box 42200
Cincinnati OH  45242

RE:     Account Number          ▄▄▄▄7644
        Property Address        6043 Kenwood Rd
                                Cincinnati OH  45243-2931

Dear Jamie L Gindele:

Please be advised that this letter serves as our response to your Qualified Written Request
("QWR") for information regarding the above-referenced GMAC Mortgage account dated
02/04/10 and received in our office on 02/08/10.  In your correspondence, you request
detailed information and documentation regarding nearly every aspect of the mortgage loan
transaction, beginning with its origination.

In response to your inquiry, GMAC Mortgage has enclosed a copy of the account's payment
history as required by the Real Estate Settlement Procedures Act ("RESPA").

Because your letter appears to be questioning nearly every aspect of the loan transaction, it is
difficult for GMAC Mortgage to identify any specific concern(s) you have regarding the
servicing of the account.  Nevertheless, in an effort to be responsive to your request, copies
of pertinent documentation GMAC Mortgage has in its records are enclosed.

- Note
- Deed of Trust/Mortgage
- HUD-I Settlement Statement

If after reviewing this information, you have any specific questions or concerns regarding the
mortgage loan servicing of this account, please contact Customer Care at 1-800-766-4622
between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to 1:00
pm CT on Saturday.

Customer Care
Loan Servicing

Enclosures

BD

3451 Hammond Ave
Waterloo, IA 50704

*Exhibit A 2/7*



## True Certified Copy

# Interest Only Adjustable Rate Note

### Six Month LIBOR Index - Rate Caps

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

June 15, 2006                          Cincinnati                          Ohio
[Date]                                 [City]                              [State]
                      6043 Kenwood Road, Cincinnati, OH  45243

[Property Address]

**1.   BORROWER'S PROMISE TO PAY**
     In return for a loan that I have received, I promise to pay U.S. $720,000.00               (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **GreenPoint Mortgage Funding, Inc.**

I will make all payments under this Note in the form of cash, check or money order.
     I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
     Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.250         %. The interest rate I will pay may change in accordance with Section 4 of this Note.
     The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.   PAYMENTS**
     **(A) Time and Place of Payments**
     I will make a payment on the first day of every month, beginning on **August 1, 2006**               . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
     I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on **July 1, 2036**               , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
     I will make my monthly payments at **P.O. Box 1093, Branford, CT 06405-8093**

or at a different place if required by the Note Holder.

████████9430

IONOH-OD (02/06)
GreenPoint Mortgage Funding, Inc.                    Page 1 of 8

Identifier:8307055269    Doc Type:NOTE

*Exhibit A 3/7*

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $4,350.00 until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

## 4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of July, 2009, and the adjustable interest rate I will pay may change on that day every 6th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market based on quotations of major banks, as published by the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, or is no longer published, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding two and one-quarter percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.250 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than one percentage points from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is 10 year(s) from the first payment due date, as reflected in Section 3(A) of the Note.

IONOH-OD (02/06)

GreenPoint Mortgage Funding, Inc.

9430

Page 2 of 5

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9430

Identifier:8307055269   12-12020-mg   Doc 6370-1   Filed 01/27/14   Entered 01/27/14 20:17:49   Exhibit 1
Doc Type:NOTE                    Pg 73 of 101

*Exhibit A 5/7*

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

──────────────── [Signatures on Following Page] ────────────────

Identifier:8307055269    Doc Type:NOTE

*Exhibit A* 6/7

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Jamie L Gindele            -Borrower                              -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                              -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                              -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                              -Borrower


                                                    [Sign Original Only]

Identifier:8307055269    12-12020-mg    Doc 6370-1    Filed 01/27/14    Entered 01/27/14 20:17:49    Exhibit 1
Doc Type:NOTE                                Pg 75 of 101

*Exhibit A* 7/7

# PREPAYMENT FEE ALLONGE

Loan Number: 0089889430

This Prepayment Fee Allonge ("Allonge") is made this fifteenth day of June, 2006, and is incorporated into and intended to form a part of the note dated the same date as this Allonge (Note) and also amends and supplements the mortgage, deed of trust, security deed, or security instrument (the "Security Instrument") dated the same date as this Allonge and the Note. To the extent that the provisions of this Allonge are inconsistent with the provisions of the Note and/or the Security Instrument, the provisions of this Allonge shall prevail over and will supercede any inconsistent provisions of the Note and/or the Security Instrument.

The section of the Note entitled Borrower's Right to Prepay is amended by adding the following paragraph as the last paragraph of such section:

If I make a full Prepayment within three years of the date of this Note, I agree to pay the Note Holder a Prepayment fee. The Prepayment fee I will pay shall be an amount equal to one percent (1%) of the original principal amount of this Note. I will not be obligated to pay a Prepayment fee if I make a full Prepayment at any time after the 3rd Year anniversary of the date of this Note. In no event will such a charge be made if it violates state or federal law.

No Prepayment penalty will be assessed if prepayment is concurrent with the sale of the property securing the Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_Daniel L. Gindele_ _____ (Borrower)        _____ (Borrower)
Daniel L Gindele

_____ (Borrower)        _____ (Borrower)

_____ (Borrower)        _____ (Borrower)

_____ (Borrower)        _____ (Borrower)

                                                          *[Sign Original Only]*

# COURT OF COMMON PLEAS
# HAMILTON COUNTY, OH

| | | |
|---|---|---|
| RESIDENTIAL FUNDING, LLC | ) | Objection to Magistrate's |
| Plaintiff, | ) | Decision |
| v. | | |
| | ) | Case No.  A 0905631 |
| JAMIE L. GINDELE et. al. | | |
| | ) | Judge Beth A. Myers |
| Defendants. | ) | |

---

## NOTICE OF FILING

Please take Notice that on the 6th day of March, 2012, there was filed with the Clerk, Court of Common Pleas, Hamilton County, Ohio, Defendant's Objection to Magistrate's Decision in the above-captioned matter.

BY: _Jamie L. Gindele_
Jamie L. Gindele
9827 Old Chimney Court
Cincinnati, OH 45241
(513)793-5044

## CERTIFICATE OF SERVICE

I Jamie L. Gindele hereby certify that a copy of the foregoing Objection to the Magistrate's Decision was sent to Plaintiff, by first class mail addressed to its attorney:

on this 6th day of March, 2012.

BY: _Jamie L. Gindele_
Jamie L. Gindele
9827 Old Chimney Court
Cincinnati, OH 45241
(513)793-5044

COPY FILED
CLERK OF COURTS
HAMILTON COUNTY

MAR - 8 2012

TRACY WINKLER
COMMON PLEAS COURTS

COPY FILED
CLERK OF COURTS
HAMILTON COUNTY

MAR - 8 2012

TRACY WINKLER
COMMON PLEAS COURTS

# COURT OF COMMON PLEAS
# HAMILTON COUNTY, OHIO

RESIDENTIAL FUNDING LLC.          )        **Objection to Magistrate's**
                                                  **Decision**
     **Plaintiff,**                    )        **Motion to Dismiss**

**v.**
                                               )        **Case No.  A 0905631**

JAMIE L. GINDELE ET. AL.

                                               )        **JUDGE BETH A. MYERS**

     **Defendants.**                 )

---

## MOTION

Now come Defendants and timely move this Court, pursuant to Civil Rule 53(D)(3)(b) and 53(D)(4)(e)(i) to sustain their Objection to Magistrate's Decision entered into the court record on February 21, 2012 and approve Defendant's Motion for Summary Judgment and Motion to Dismiss the above captioned matter.

## MEMORANDUM

Plaintiff failed in its complaint to meet Ohio Civil Rule 19 requirements of Joinder of Persons Needed for Just Adjudication.  Ohio Civil Rule 19 states:

> **(A) Persons to be joined if feasible.** A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest, or (3) he has an interest relating to the subject of the action as an assignor, assignee, subrogor, or subrogee. If he has not been so joined, the court shall order that he be made a party upon timely assertion of the defense of failure to join a party as provided in Rule 12(B)(7).

In the case at bar, Greenpoint Mortgage was the original noteholder who asserted in written communication to the defendants that (it) had not transferred the note to the plaintiff. (see Exhibit 'A'). This assertion was affirmed via unimpeached affidavit. (See Exhibit 'B')

During negotiations to reach a potential settlement, in December 2010, plaintiff required defendants to obtain an independent title search on the subject property.  Defendant complied with plaintiffs requirement. The title search report is attached (See Exhibit 'C') A copy of the attached title report was provided to plaintiff through its Counsel of Record, Carpenter Lipps as requested in January 2011. In other words, at that time it would be reasonable to conclude that plaintiff knew that all the parties essential to the proper adjudication of their complaint were not before the court. Rather than properly join mortgagee Greenpoint to the case, it appears that

plaintiff either inadvertently erred in understanding Greenpoint's significance or chose to intentionally conceal it from the Court. Either way in the absence of Greenpoint Mortgage *"the Court cannot accord complete relief among existing parties...leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."* The title report demonstrates unequivocally, that Greenpoint is a mortgagee of record and could claim an interest relating to the subject of the action. Greenpoint's proper presence in this case was required in order that defendants could obtain the complete relief and finality of judgment that is contemplated by Ohio Civil Rules. At no time have the Defendants waived their rights to assert the defense of failure to join a party as provided in Civ.R. 12(B)(7). Whether or not the defendants assert(ed) this particular defense is immaterial. It is not the defendants responsibility to "try" plaintiff's case. Plaintiff has an obligation to Greenpoint to join them to the case, an obligation that was easily discernable at the time the complaint was filed.

From the outset of this complaint, Defendants have asserted their comprehensive defense that Plaintiff's failed to state a claim upon which relief can be granted. Incorporated by reference therein was the defense of failure to join a party under Civ.R. 12(B)(7). Defendants have provided the court uncontroverted evidence that **Greenpoint Mortgage, the original and only noteholder,** did not transfer or otherwise assign the Note to the plaintiff. Defendants exhausted their attempts to resolve the underlying conflicts with the previous loan servicer *Wilshire Credit Corporation* and the plaintiff. After consultation with the United States Federal Trade Commission and the Comptroller of the Currency, defendants were advised to send the plaintiff and its loan servicer a certified Qualified Written Request (QWR.) (See attached Exhibit 'D') In response to the QWR, plaintiff through its loan servicer provided Defendant with a **"True Certified Copy"** of the Note in question.(See Exhibit 'E') attached as if fully incorporated within. What is evident from the document is that it is not a bearer instrument, is executed specifically to Greenpoint Mortgage, does not contain an "endorsement in blank," nor does it have an allonge attached to it. Under the Uniform Commercial Code Section 3-203 and 3-308, the Note presented as evidence in this case is owned by and to the benefit of Greenpoint Mortgage. This Note is not enforceable by the plaintiff against the defendant. At a minimum, it should be obvious that Greenpoint Mortgage is a proper party that must be included for proper and complete adjudication in the instant matter. Greenpoint has held a continuous recorded interest in the subject property since the time of plaintiff's complaint.

Despite the overwhelming evidence to the contrary, the Magistrate erred in finding "...that all necessary parties have been served with summons and the Complaint according to law and are properly before the Court."

The Magistrate erred in finding that the plaintiff was a proper party at the time the complaint was filed. On June 9, 2009, the plaintiff filed a complaint in the Hamilton County Court of Common Pleas denominated Complaint in Foreclosure. The first branch of the complaint, under Count One, asserted that "...Plaintiff is the holder of a note, a copy of which is attached hereto as Exhibit 'A'(See Complaint) and a Loan Modification Agreement, a copy of which is attached hereto as Exhibit 'B'.(See Complaint) Although there were thirty six (36) pages of exhibits attached to plaintiff's complaint, there was no evidence provided that Greenpoint Mortgage Funding, LLC., the holder of the note, _ever_ assigned, transferred or executed the note in favor of the plaintiff upon which branch one of the complaint, the money damages, was predicated. Thus chain of custody was broken. This fact was established in Defendant's Motion to Dismiss on August 4, 2009 and later in Defendant's Answer and Counterclaims, asserting that the plaintiff lacked standing and that the Court lacked subject-matter jurisdiction. It was further substantiated via affidavit given by defendant Jamie Gindele. Her sworn testimony was never contradicted or impeached by plaintiff. It is the only un-contradicted testimony before the Court.

Plaintiff chose not to depose the defendant nor attempt to contradict her sworn testimony in any way. Defendants however have consistently challenged plaintiffs assertions and provided compelling contradictory evidence as to plaintiff's alleged financial interest which at a minimum has established genuine issues of material fact to be further adjudicated at trial.

The essential elements of standing are set forth in *Bourke v. Carnahan*, 163 Ohio App.3d 818 (app. 10 Dist.)

> Elements of standing are an indispensable part of a plaintiff's case. *Lujan v. Defenders of Wildlife* (1992), 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351. Initially, the plaintiff must have suffered an injury in fact, defined as an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent, not hypothetical or conjectural. Id. At 560, 112 S.Ct. 2130, 119 L.Ed.2d 351. Next, the conduct complained of must be causally connected to the injury. Thus, the injury must be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. Finally, it must be likely,as opposed to merely speculative, that a favorable decision will redress the injury. Id. At 560-561, 112 S.Ct. 2130, 119 L.Ed2d 351.

Plaintiff has failed to establish that it suffered an injury in fact that is concrete and particularized. It claims to own an interest in the note which has been disputed directly by the alleged assigner, Greenpoint as well as by the Defendant. With plaintiff's failure to establish an actual injury, defendant's alleged conduct is irrelevant. Without the proper presence of Greenpoint before the Court, plaintiff fails the additional test of standing in that it cannot be determined if the plaintiff's alleged injury was "**not** as a result of the independent action of some third party (Greenpoint) not before the court."

Defendants have stood on the profound simplicity and straightforward legal principles of this case that plaintiff has failed to meet its required burden of legal standing, has never perfected its financial damages claim under the note, and has failed to state a claim upon which relief can be granted.

The Magistrate erred in the granting of plaintiff's motion for summary judgment in contradiction to his own written opinion in Hamilton County Court of Common Pleas Case No. A0705631, *Deutsche Bank National Trust v. Telisa Barnes*. Page 11 of that opinion states:

> "The Constitution of both the United States of America and the State of Ohio guarantee the people the right to petition their respective governments for a redress of their grievances. However, the proper venue for such petitions lies in the branches of government vested with the express authority to change the law or procedure at issue. In Ohio, the people and the State Assembly have the express authority to enact legislation in the State of Ohio. Similarly, the Supreme Court of Ohio is vested with the authority to "prescribe rules governing practice and procedure in all courts of the state.""

On this point Defendants and the Magistrate are in total agreement. The Magistrate erred in the case before the court by granting plaintiff's summary judgment as to all of defendants' counterclaims. Defendants counterclaims specifically include at least 2 claims for damages that have become certified by and taken under review of the Ohio Supreme Court. In Counterclaim 27 of 40 in Defendants Answer to the Complaint;

Defendants assert and allege that Plaintiff through its loan servicer and as a result of their actions violated the Ohio Consumer Sales Practices Act, R.C. 1345.01, et seq., and specifically Section § 1345.03 (A) and (B)(2)(3)(4)(5) and (6), that under Section § 1345.04 Jurisdiction, that the courts of common pleas and municipal or county courts within their respective monetary jurisdiction, have jurisdiction over any supplier with respect to any act or practice in this state covered by sections 1345.01 to 1345.13 of the Revised Code.

In Counterclaim 28 of 40;

Defendants further assert that under Section § 1345.09 Private Remedies that for a violation of Chapter 1345 of the Revised Code, a consumer has a cause of action and is entitled to the rescission of the transaction or recovery of damages. Defendants assert that a rescission letter was sent via certified mail on July 3, 2009. Exhibit C is attached and is incorporated as if fully stated herein.

These questions are properly before the Ohio Supreme Court and the Magistrate erred in prematurely ruling on them in this case without obtaining the proper guidance that will be coming from the Ohio Supreme Court to "prescribe rules governing practice and procedure in all courts of the state."

Similarly the Magistrate erred in granting plaintiff's summary judgment by in the same vain failing to consider guidance from the ultimate judicial authority, the United States Supreme Court. In the case at bar, the mortgage and the note were separated at origination. That has been a prevailing theme and an undisputed fact throughout this case.

In Carpenter v. Longan, 16 Wall. 271, 83 U.S. 271, 274, 21 L.Ed. 313 (1872), the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

"Where the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee,' having received no interest in the underlying debt or obligation, has a worthless piece of paper." (4 RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 37.27[2] (2000); In re Mitchell, Case No. BK-S-07-16226-LBR (Bankr.Nev. 3/31/2009)(At page 12))

In the consolidated cases of In re Foreclosure Cases, 521 F. Supp. 2D 650, 653 (S.D. Oh. 2007), a standing challenge was made and the Court found that there was no evidence of record that New Century ever assigned to MERS the promissory note or otherwise gave MERS the authority to assign the note. Beginning with this case, courts around the country started to recognize that MERS had no ownership in the notes and could not transfer an interest in a mortgage upon which foreclosure could be based.

In LaSalle Bank NA v. Lamy, 824 N.Y.S.2d 769 (N.Y. Supp. 2006), the Court denied a foreclosure action by an assignee of MERS on the grounds that MERS itself had no ownership interest in the underlying note and mortgage.

In the case of In re Mitchell, Case No. BK-S-07-16226-LBR (Bankr.Nev., 2009), the Court stated "In order to foreclose, MERS must establish there has been a sufficient transfer of both the note and deed of trust, or that it has authority under

state law to act for the note's holder." (At page 9) The Court found that MERS has no ownership interest in the promissory note. The Court found that though MERS attempts to make it appear as though it is a beneficiary of the mortgage, it in fact is not a beneficiary. The Court stated "But it is obvious from the MERS' "Terms and Conditions" that MERS is not a beneficiary as it has no rights whatsoever to any payments, to any servicing rights, or to any of the properties secured by the loans. To reverse an old adage, if it doesn't walk like a duck, talk like a duck, and quack like a duck, then it's not a duck." (At page 7) MERS Terms and Conditions say this:

"MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law."

In the case of In re Vargas, 396 B.R. 511, 520 (Bankr.C.D.Cal., 2008), the Court stated:
"MERS is not in the business of holding promissory notes. (fn 10: MERS, Inc. is an entity whose sole purpose is to act as mortgagee of record for mortgage loans that are registered on the MERS System. This system is a national electronic registry of mortgage loans, itself owned and operated by MERS, Inc.'s parent company, MERSCORP, Inc.")

In the case of In re Sheridan, Case No. 08-20381-TLM (Bankr.Idaho, 2009) MERS moved for relief from the stay. The Court stated that MERS "Counsel conceded that MERS is not an economic "beneficiary" under the Deed of Trust. It is owed and will collect no money from Debtors under the Note, nor will it realize the value of the Property through foreclosure of the Deed of Trust in the event the Note is not paid." The Court stated "Further, the Deed of Trust's designation of MERS as "beneficiary" is coupled with an explanation that "MERS is . . . acting *solely* as nominee for Lender and Lender's successors and assigns." The Court stated "Even if the proposition is accepted that the Deed of Trust provisions give MERS the ability to act as an agent ("nominee") for another, it acts not on its own account. Its capacity is representative."

In Landmark National Bank v. Kesler, 216 P.3D 158 (Kansas, 2009), the Kansas Supreme Court extensively analyzed the position of MERS in relation to the facts in that case and other non-binding court cases and concluded that MERS is only a digital mortgage tracking service. (At page 168) The Court recited that "MERS never held the promissory note, did not own the mortgage instrument (though the documents identified it as "mortgagee"), that it did not lend money, did not extend credit, is not owed any money by the mortgage debtors, did not receive any payments from the borrower, suffered no direct, ascertainable monetary loss as a consequence of the litigation and consequently, has no constitutionally protected interest in the mortgage loan."

As recently as December 1, 2011, *in re Huntington National Bank v. Brown, Case no. CV-09-702894,* Cuyahoga County, Ohio Court of Common Pleas Magistrate Thomas J. Vozar issued a 9-page opinion which ultimately held that the foreclosing bank did not have standing to foreclose and was not the real party in interest, denying the Bank's Motion for Summary Judgment and granting the homeowners' MSJ. The Court's reasoning is based on exactly what the defendants have been and continue to argue as to Mortgage Electronic Registration Systems (MERS): that MERS, not being the payee on the Note and having no ownership rights in the Note, cannot transfer it.

This decision now joins the legion of cases which have similarly held MERS to its very limited position as "nominee", notwithstanding MERS' inconsistent attempt to anoint itself with additional powers which are not permitted by MERS' own Terms and Conditions. MERS' consistent violation of its own self-imposed internal restrictions is part of the recent action filed by the Delaware Attorney General against MERS.

In the above referenced case, as with literally millions of other foreclosure cases filed nationally, the original Note was made payable to a third party. Huntington purported to claim entitlement to summary judgment on the basis of a MERS assignment, in this case where there was no endorsement in blank on the Note as well. The Magistrate's opinion states:

..."It is beyond peradventure that one cannot transfer rights in property that one does not own. Since MERS was not the original payee on the note, and since the note was never endorsed to MERS or endorsed in blank, MERS had no legal rights by the tenor of the note and therefore was not legally capable of transferring the note to anyone." The opinion also states that without the blank endorsement, Huntington could not claim status as a "holder" of the Note.

Significantly, the opinion also states that "Possession alone of a negotiable instrument does not establish that a party has the right to receive payments under it", citing Ohio case law. This statement exemplifies the misleading nature of the argument consistently made by foreclosing banks, servicers, and securitized "trustees": "we have possession of the Note, therefore we are entitled to enforce it and foreclose."

A promissory note executed in connection with a mortgage instrument is not a simple "negotiable instrument" transaction. As the Court held in the recent *In re Veal* case from the 9th Circuit Bankruptcy Appellate Panel, a promissory note tied to a mortgage instrument implicates Article 9 of the UCC (which governs secured transactions) in addition to Article 3 (which governs negotiable instruments). Thus, a foreclosing party should have to prove not only proper possession and ownership of the Note and the rights under it, but also intent of delivery, manner of delivery, and actual delivery of the mortgage instrument under Article 9 of the UCC.

Plaintiff has failed to produce any mortgage or note documents that Ohio Civil Rules and the Uniform Commercial Code would recognize as enforceable against the defendants. What they have produced instead are photocopies of documents that ANY party who is or was a member of the Mortgage Electronic Registration Systems (MERS) could download for a minimal fee. In fact defendants could just as easily become members of MERS, follow the same set of instructions, download those same documents and as a member, be given the same privilege of authority and entitlement that was presumed by plaintiff in this case. To summarize any "member" of MERS has the right to be called an "officer" of MERS. MERS as nominee and mortgagee never takes a financial interest in a mortgage transaction. Conclusively, MERS cannot transfer or assign rights it never had in the first place.

MERS is a <u>sham</u>, constructed to defraud the county recording systems around the United States of legitimate filing and recording fees.

## CONCLUSION

The Magistrate erred in granting plaintiff summary judgment because under Ohio Rule 19, all necessary parties were not before the Court leaving the real possibility that defendants would be exposed to additional claims under the same set of circumstances.

The Magistrate erred in granting plaintiff summary judgment because no actual controversy existed between the parties.

The Magistrate erred in granting plaintiff summary judgment because the plaintiff had no standing before the court.

The Magistrate erred in granting plaintiff summary judgment because the plaintiff has suffered no economic damages and thus has no claim against defendants.

The Magistrate erred in granting plaintiff summary judgment because plaintiff never proved it owned the note.

The Magistrate erred in granting plaintiff summary judgment because included in the decision was the recommended dismissal of at least 2 defendants counterclaims which are currently certified for review by the Ohio Supreme Court.

The Magistrate erred in granting plaintiff summary judgment because the subject mortgage and note were undisputedly separate at loan origination and subsequent attempt to transfer or assign was a nullity.

For the stated reasons, Defendant moves this Court to sustain their Objection to Magistrate's Decision and grant Defendant's Motion to Dismiss.

DATED this 6th day of March, 2012.

Jamie L. Gindele
9827 Old Chimney Court
Cincinnati, Ohio 45241
(513)793-5044

Gary D. Gindele
9827 Old Chimney Court
Cincinnati, Ohio 45241
(513)793-5044

# COURT OF COMMON PLEAS
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| **RESIDENTIAL FUNDING LLC.** | ) | **ENTRY** |
| **Plaintiff,** | ) | |
| **v.** | | |
| | ) | **Case No.  A 0905631** |
| **JAMIE L. GINDELE ET. AL.** | | |
| | | **JUDGE BETH A. MYERS** |
| **Defendants.** | ) | |

## <u>ENTRY</u>

Defendant's Objection to the Magistrate's Decision in the above captioned matter is well taken

and therefore has been sustained by the court.

It is so ordered.

DATED this _____ day of _____ 2012.

_____

Judge Beth Myers

# COURT OF COMMON PLEAS
# HAMILTON COUNTY, OHIO

**RESIDENTIAL FUNDING LLC.**                      )          **ENTRY**
                    **Plaintiff,**                           )
**v.**                                             )
                                                   )          **Case No.  A 0905631**
**JAMIE L. GINDELE ET. AL.**                       )
                                                   )          **JUDGE BETH A. MYERS**
                    **Defendants.**                )

---

## ENTRY

This Motion to Dismiss in the above captioned matter is well taken and therefore has been approved by the court.

It is so ordered.

DATED this _____ day of _____ 2012.

_____

Judge Beth Myers

Exhibit A½

PO Box 84013
Columbus GA 31908-4013
Tel. 800.784.5566



October 2, 2007


Jamie Gindele
P.O. Box 42200
Cincinnati, OH 45242

Loan Number (s): ████9430
                 ████5342
                 ████9448


Re: Property address  6043 Kenwood Road
Cincinnati, OH 45243

Dear Jamie Gindele,

We have received your correspondence addressed to Steven Abreu regarding the above referenced accounts. We have reviewed your concerns and the results of our research are listed below:

Account 0089889430 was transferred to Wilshire Credit Corporation on January 16, 2007. At the time of transfer this account was due for the October 1, 2006 payment. This transfer was in full compliance with all RESPA, FDCPA and all other federal regulations. We did not transfer this account nor have we had contact with Residential Funding regarding this account. We have received nothing that would indicate your claims regarding the pending foreclosure action by Residential Funding involving an illegal action by our office.

On September 1, 2006 account 0089889448 was transferred to GMAC. As of the date of the transfer the account was due for the August 15, 2006 payment. Due to multiple delinquent payments with GMAC, we were required to repurchase this account per our existing transfer agreement with GMAC. The repurchased account 0004025342 is currently due for the June 15, 2007 through September 15, 2007 payments, which total $2,595.60. If these past due payments are not made, we may be forced to pursue those legal remedies prescribed in the Mortgage, which may include a foreclosure action. Since account 0004025342 was not transferred to us solely for the purpose of facilitating the collection of said debt for another, we are in full compliance with FDCPA regarding our attempts to collect this debt.

**Aviso importante para personas de habla Hispana**
Si usted no entiendo el contenido de esta carta, favor solicite assistencia immediata de alguna persona que pueda traducirla

**2300 Brookstone Centre Pkwy Columbus GA 31904**
**www.greenpointservice.com**

Exhibit A 2/2

PO Box 84013
Columbus GA 31908-4013
Tel. 800.784.5566



Your unsubstantiated assertions that we collaborated with Residential Funding to file an illegal foreclosure action is entirely false and we resent your leveraged attempt to avoid collection of all past due payments on the repurchased account 0004025342, which in no way pertains to the foreclosure action stated above.

Sincerely,

Joan Merry
Assistant Vice President
Customer Care Department

Aviso importante para personas de habla Hispana
Si usted no entiendo el contenido de esta carta, favor solicite assistencia immediata de alguna persona que pueda traducirla

2300 Brookstone Centre Pkwy Columbus GA 31904
www.greenpointservice.com

# COURT OF COMMON PLEAS
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| Residential Funding, LLC | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No.  A 0905631 |
| Jamie L. Gindele et. al. | ) | |
| Defendants. | ) | Judge Beth A. Myers |

---

### AFFIDAVIT OF Jamie L. Gindele

Comes now Jamie L. Gindele, the Affiant, and does solemnly affirm under oath and penalties of perjury, that the statements herein are true and correct in substance and in fact, to wit:

1. I am competent and qualified to testify as to the facts herein.

2. This statement is developed from my personal knowledge, information or belief and therefore I believe this information to be true and accurate.

3. I am primarily in the business of developing and selling for profit, residential real estate.

4. I am employed by Gindele Properties, LLC., a defendant in this case.

5. The mortgage transaction at issue was conveyed by me to Mortgage Electronic Registration Systems (MERS).

6. The financial note at issue was conveyed by me to Greenpoint Mortgage.

7. I have access to every pertinent and relevant business record pertaining to said mortgage and note, which records have been maintained in the course of its regularly conducted business activity. I make this sworn testimony based on my review of the mortgage document and the note document and the fact that I alone was a party to this transaction.

8. The document attached as Exhibit B is the true and accurate original document from the lender and note-holder, Greenpoint Mortgage.

9. I, Jamie L. Gindele, deny that I delivered a promissory note in favor of Residential Funding Corporation, LLC., or Residential Funding Real Estate Holdings., or any other Residential Capital parent company or subsidiary.

10. I, Jamie L. Gindele, deny that the promissory note was assigned by Mortgage Electronic Registration Systems (MERS) to Residential Funding Corporation, LLC.

11. I, Jamie L. Gindele, deny that the mortgage instrument was properly assigned to Residential Funding Corporation, LLC.

12. I, Jamie L. Gindele, deny that the promissory note and mortgage instrument are in default with Residential Funding Corporation, LLC., and Residential Funding Real Estate Holdings, LLC.

13. I, Jamie L. Gindele, deny that plaintiffs are owed any sum due and is owing on the promissory note and mortgage instrument to plaintiffs.

14. I, Jamie L. Gindele asserts that the letter from Ms. Joan Merry, Greenpoint Mortgage, is the original, authentic document from the lender to the defendant.

15. FURTHER AFFIANT SAYETH NOT.

_____
Signature of Affiant

STATE OF OHIO        )
                     )
COUNTY OF Hamilton   )


Subscribed and sworn to before me a notary public this 15 day of December 2011.

_____
Signature of Notary


LINDA JAEGER
Notary Public, State of Ohio
My Comm. Expires 11-15-2014

# First Title Agency, Inc.
### Title and Settlement Services

## RECORD DATA INFORMATION

*This information is intended only to show recorded data as found from the public records of the County in which the subject real estate is located. It is in no way to be construed as an Attorney's Opinion of Title, Commitment for Title Insurance or a Policy of Title Insurance.*

**File No.:**    10-04554

**Prepared for:**    Gindele Properties, LLC
6043 Kenwood Road
Cincinnati, Ohio  45243

**Current Owner:**    Gindele Properties, LLC

**Instrument Reference:**    Official Record Book 10149, Page 2780; Official Record Book 10284, Page 600 and in Official Record Book 10284, Page 679 of the Hamilton County, Ohio Records.

### Description of Real Property

Situate in Section 17, Town 4, Fractional Range 2, City of Madeira, Columbia Township, Hamilton County, Ohio and being part of Lots 11 and 12 of Minix Heights Subdivision as recoded in Plat Book 26, Page 40 of Hamilton County, Ohio Records and being more particularly described as follows:

Beginning at a set iron pin at the Southwest corner of said Lot 11; thence along the West line of said Lots 11 and 12, North 04 degrees 49' 00" East, 85.37 feet to a set iron pin; thence leaving the West line of said Lot 12 along a new division line, South 85 degrees 17' 00" East, [Passing an iron pin set at 309.66 feet] 314.18 feet to a point in the Easterly line of said Lot 12, said point being the right of way of Kenwood Road; thence along the Easterly line of said Lots 11 and 12, South 21 degrees 18' 00" West, 89.60 feet to the Southeast corner of said Lot 11; thence leaving the right of way of Kenwood Road, along the South line of said Lot 11, North 85 degrees 11' 00" West, [passing an existing iron pin and cap at 4.62 feet] 288.75 feet to the Place of Beginning.

Thus containing 0.5296 acres of land and being subject to the right of way of Kenwood Road and all easements and restrictions of record.

Parcel No.    525-25-51

Commonly Known As:  6043 Kenwood Road, Cincinnati, Ohio  45243

**Matters Affecting Real Estate (as described above):**

1.    Mortgage from Gary D. Gindele and Jamie L. Gindele, husband and wife, to MERS Mortgage Electronic Registration Systems, Inc. as Nominee for GreenPoint Mortgage Funding, Inc., securing a loan in the amount of $720,000.00, executed June 15, 2006, filed June 30, 2006, recorded at Official Record Book 10284, Page 642 of the Hamilton County, Ohio Records.

Said Mortgage was Assigned to Residential Funding Company, LLC by instrument dated April 3, 2007, filed May 8, 2007, recorded at Official Record Book 10543, Page 689 of the Hamilton County, Ohio Records.

Said Mortgage was Assigned to Residential Funding Real Estate Holdings, LLC by instrument dated June 2, 2009, filed June 10, 2009, recorded at Official Record Book 11161, Page 557 of the Hamilton County, Ohio Records.

Said Mortgage was Assigned to Residential Funding Corp. by instrument dated June 8, 2010, filed June 11, 2010, recorded at Official Record Book 11453, Page 1284 of the Hamilton County, Ohio Records.

*Exhibit C ²⁄₂*

2.  Mortgage from Gary D. Gindele and Jamie L. Gindele, husband and wife, to Mortgage Electronic
    Registration Systems, Inc. as Nominee for GreenPoint Mortgage Funding, Inc., securing a loan in the
    amount of $60,000.00, executed June 15, 2006, filed June 30, 2006, recorded at Official Record Book
    10284, Page 696 of the Hamilton County, Ohio Records.

3.  Mortgage from Gindele Properties, LLC to Brian A. Arnold, securing a loan in the amount of $15,000.00,
    executed September 1, 2006, filed September 25, 2006, recorded at Official Record Book 10357, Page
    644 of the Hamilton County, Ohio Records.

4.  Pending Foreclosure Suit filed as Case Number A0905631 in the Hamilton County, Ohio Court of
    Common Pleas Residential Funding Real Estate Holdings vs. Jamie L. Gindele and Gary D. Gindele and
    Gindele Properties, LLC c/o Gary D. Gindele and Brian A. Arnold, filed June 9, 2009 in Docket Number
    D83741988 INF of the Hamilton County, Ohio Records.

5.  Certificate of Judgment in favor of CitiBank South Dakota, NA, against G.D.Gindele aka Gary Gindele aka
    Gary D. Grindele aka Gary Gindele aka Gary D. Grindele aka G.D.Grindele aka Gary D. Grindele aka
    G.D.Gindele aka Gary Gindele in the amount of $17,148.35, plus costs and interest, if any, recorded as
    Judgment Case Number A 0707372 in the Records of Hamilton County, Ohio Records.

6.  Cancellation of Corporation for Gindele Holdings, Inc. as set forth and recorded in Official Record Book
    10474, Page 2146 of the Hamilton County, Ohio Records.

**Easements, Restrictions, Taxes and Other Matters:**

1.  Taxes:  Parcel Identification Number: 525-25-51
    Valuations:  Land $ 63,070.00, Building $ 207,830.00, Total $ 270,900.00
    December 2010 Installment: $ 8,227.95 + $ 6.96* = $ 8,234.91  UNPAID
    June 2011 Installment:                          $ 8,227.95  UNPAID
    Assessments:
    * $ 6.96 - STORM WATER ASSESSMENT due annually in December.

    Taxes and Assessments for the Year of 2009 and all prior years are paid.
    Taxes and Assessments for the 1st Half of 2010 are a lien and are now due and payable.
    Taxes and Assessments for the 2nd Half of 2010 and all future years are a lien but are not yet due and
    payable.

2.  Rights of the public and others, by use or otherwise, in and to that portion of said property comprising
    Kenwood Road.

3.  Easement(s), as set forth in Official Record Book 8783, Page(s) 1890 of the Hamilton County, Ohio
    Records.

**Information Effective As Of December 27th, 2010 at**

Wilshire Credit Corporation
14523 SW Millikan Way Suite 200
Beaverton, OR 97005

April 6, 2009

RE      NOTICE AND DEMAND FOR VALIDATION AND ADEQUATE ASSURANCE OF
        PERFORMANCE – JAMIE L. GINDELE, ACCOUNT #██9470

Dear Sir/Madame:

I am in receipt of your unauthenticated and unvalidated "Account
Statements" dated 10/3/08, 11/16/08, 12/16/08, 1/16/09, 2/17/09, and
3/16/09. Please regard this letter as a formal written Notice and Demand to Wilshire Credit
Corporation as "loan servicer" for validation and adequate assurance of performance with respect to the
above listed account.

In preparation for this Notice and Demand, I have conducted a full and complete investigation into this
matter, and I am of the opinion that Wilshire Credit Corporation may be in breach of the terms and
conditions of the "Loan Modification Agreement" effective on or about 9/1/08, by its failure to provide
either adequate and valuable consideration, or full disclosure of the material terms and conditions of the
alleged agreement, including the nature and extent of changes to and the material impact upon Escrow
No./Loan No.: 4453847/4239470. In addition, I have reason to believe that your company may have
violated federal Real Estate Settlement Procedures Act provisions.

This Notice and Demand should not be perceived as a refusal to pay any valid debt. However, I have
questions regarding the validity of the debt you are alleging in the attached billing statement, as well as
the aforementioned earlier statements, and in order to determine the validity of your presentment, and
continue payment on the above-listed account, I will require certain information to confirm your claim in
this matter. To that end, please note that I am bringing this action under my federal rights as contained in
C.F.R. Regulation Z  Section 226.13, Billing Error Resolution, which states the following:

> **d) Rules pending resolution.** Until a billing error is resolved under paragraph (e) or (f) of
> this section, the following rules apply:
>
> > (1) **Consumer's right to withhold disputed amount; collection action
> > prohibited.** The consumer need not pay (and the creditor may not try to
> > collect) any portion of any required payment that the consumer believes is
> > related to the disputed amount (including related finance or other charges).[30] If
> > the cardholder maintains a deposit account with the card issuer and has agreed
> > to pay the credit card indebtedness by periodic deductions from the
> > cardholder's deposit account, the card issuer shall not deduct any part of the
> > disputed amount or related finance or other charges if a billing error notice is
> > received any time up to 3 business days before the scheduled payment date.

*Exhibit D 1/3*

Further I am invoking my rights as a consumer under State of Ohio Consumer Sales Practices Act, R.C. 1345.01, et seq, which states the following:

**§ 1345.03 Unconscionable consumer sales practices.**
(A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.
(B) In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration:
    (1) Whether the supplier has knowingly taken advantage of the inability of the consumer reasonably to protect his interests because of his physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of an agreement;
    (2) Whether the supplier knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers;
    (3) Whether the supplier knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;
    (4) Whether the supplier knew at the time the consumer transaction was entered into that there was no reasonable probability of payment of the obligation in full by the consumer;
    (5) Whether the supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier;
    (6) Whether the supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to his detriment;
    (7) Whether the supplier has, without justification, refused to make a refund in cash or by check for a returned item that was purchased with cash or by check, unless the supplier had conspicuously posted in the establishment at the time of the sale a sign stating the supplier's refund policy.

**§ 1345.04 Jurisdiction.**
The courts of common pleas, and municipal or county courts within their respective monetary jurisdiction, have jurisdiction over any supplier with respect to any act or practice in this state covered by sections 1345.01 to 1345.13 of the Revised Code, or with respect to any claim arising from a consumer transaction subject to such sections.

**§ 1345.09 Private remedies.**
For a violation of Chapter 1345. of the Revised Code, a consumer has a cause of action and is entitled to relief as follows:
(A) Where the violation was an act prohibited by section 1345.02 or 1345.03 of the Revised Code, the consumer may, in an individual action, rescind the transaction or recover his damages.
(B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of his actual damages or two hundred dollars, whichever is greater, or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended.
(C) In any action for rescission, revocation of the consumer transaction must occur within a reasonable time after the consumer discovers or should have discovered the ground for it and before any substantial change in condition of the subject of the consumer transaction.

*Exhibit D ³/₃*

(D) Any consumer may seek a declaratory judgment, an injunction, or other appropriate relief against an act or practice that violates this chapter.

(E) When a consumer commences an individual action for a declaratory judgment or an injunction or a class action under this section, the clerk of court shall immediately mail a copy of the complaint to the attorney general. Upon timely application, the attorney general may be permitted to intervene in any private action or appeal pending under

this section. When a judgment under this section becomes final, the clerk of court shall mail a copy of the judgment including supporting opinions to the attorney general for inclusion in the public file maintained under division (A)(3) of section 1345.05 of the Revised Code.

(F) The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if either of the following apply:

>    (1) The consumer complaining of the act or practice that violated this chapter has brought or maintained an action that is groundless, and the consumer filed or maintained the action in bad faith;

>    (2) The supplier has knowingly committed an act or practice that violates this chapter.

Please be advised that we have made every reasonable attempt to resolve this matter with your firm. We attempted in good faith to abide by your strict protocols up to and including seeking an unnecessary loan modification to correct the dispute. While these numerous attempts on our part dating back to October 30, 2008 and through April 6, 2009 have not resolved the underlying dispute, we are still optimistic that a reasonable and amicable solution can be found between the parties.

Please restrict all communications with me regarding this matter to writing, and understand that all communications, acts or omissions may be used in litigation, including the filing of grievances and the initiation of investigations at the Federal Trade Commission and other government bodies regarding your non-compliance with the Fair Credit Reporting Act, Fair and Accurate Credit Transaction Act of 2003, and other state and federal consumer protection laws. Your failure to respond to this Notice and Demand within thirty (30) days will be construed as a waiver of any and all claims regarding the above-listed account, and will act as a confirmation that no further action will be taken on your part with respect to the subject account. Please also take notice that during the pendency of this dispute, no further payments will be made on the account, and the account cannot be sold, assigned, forwarded or otherwise transferred for purposes of the collection of a debt.

Respectfully,

Jamie L. Gindele                    Gary D. Gindele

*Exhibit E ¹/₇*

# <u>GMAC</u> Mortgage

February 22, 2010

Jamie L Gindele
PO Box 42200
Cincinnati OH  45242

RE:    Account Number            ▮▮▮7644
       Property Address          6043 Kenwood Rd
                                 Cincinnati OH  45243-2931

Dear Jamie L Gindele:

Please be advised that this letter serves as our response to your Qualified Written Request
("QWR") for information regarding the above-referenced GMAC Mortgage account dated
02/04/10 and received in our office on 02/08/10.  In your correspondence, you request
detailed information and documentation regarding nearly every aspect of the mortgage loan
transaction, beginning with its origination.

In response to your inquiry, GMAC Mortgage has enclosed a copy of the account's payment
history as required by the Real Estate Settlement Procedures Act ("RESPA").

Because your letter appears to be questioning nearly every aspect of the loan transaction, it is
difficult for GMAC Mortgage to identify any specific concern(s) you have regarding the
servicing of the account.  Nevertheless, in an effort to be responsive to your request, copies
of pertinent documentation GMAC Mortgage has in its records are enclosed.

- Note
- Deed of Trust/Mortgage
- HUD-1 Settlement Statement

If after reviewing this information, you have any specific questions or concerns regarding the
mortgage loan servicing of this account, please contact Customer Care at 1-800-766-4622
between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to 1:00
pm CT on Saturday.

Customer Care
Loan Servicing

Enclosures

BD

3451 Hammond Ave
Waterloo, IA 50704

Identifier:8307055269        Doc Type:NOTE

*Exhibit E 2/7*



# True Certified Copy

## Interest Only Adjustable Rate Note

### Six Month LIBOR Index - Rate Caps

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

June 15, 2006                     Cincinnati                          Ohio
[Date]                               [City]                              [State]

6043 Kenwood Road, Cincinnati, OH  45243

[Property Address]

**1.   BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S. $720,000.00            (this amount is called "Principal"), plus interest, to the order of Lender. Lender is GreenPoint Mortgage Funding, Inc.

I will make all payments under this Note in the form of cash, check or money order.
    I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  7.250               %. The interest rate I will pay may change in accordance with Section 4 of this Note.
    The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.   PAYMENTS**
    (A) Time and Place of Payments
    I will make a payment on the first day of every month, beginning on August 1, 2006                . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
    I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on July 1, 2036                , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at P.O. Box 1093, Branford, CT 06405-8093

or at a different place if required by the Note Holder.

▆▆▆▆9430

IONOH-OD (02/06)
GreenPoint Mortgage Funding, Inc.                    Page 1 of 8

Identifier:8307055269        Doc Type:NOTE

*Exhibit E 3/7*



**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 4,350.00                until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

**4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **July, 2009**                , and the adjustable interest rate I will pay may change on that day every  6th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market based on quotations of major banks, as published by the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, or is no longer published, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  **two and one-quarter** percentage points ( **2.250**                %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than  **12.250**                % or less than **2.250**                %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than one percentage points from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is 10 year(s) from the first payment due date, as reflected in Section 3(A) of the Note.

Identifier:8307055269        Doc Type:NOTE

*Exhibit E 4/7*

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15            calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000            % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9430

IONOH-OD (02/06)

GreenPoint Mortgage Funding, Inc.                Page 3 of 5

Identifier:6307055269        Doc Type:NOTE

*Exhibit E* 5/7

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

——————————————— [Signatures on Following Page] ———————————————

IONOH-OD (02/06)
GreenPoint Mortgage Funding, Inc.

Page 4 of 6

9430

Identifier:8307055269        Doc Type:NOTE

*Exhibit E 6/7*

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Jamie L Gindele          -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower

*[Sign Original Only]*

IONOH-OD (02/06)
GreenPoint Mortgage Funding, Inc.            Page 6 of 6            9430

Identifier:8307055269          Doc Type:NOTE

*Exhibit E 7/7*

# PREPAYMENT FEE ALLONGE

Loan Number: ████9430

This Prepayment Fee Allonge ("Allonge") is made this fifteenth day of June, 2006, and is incorporated into and intended to form a part of the note dated the same date as this Allonge (Note) and also amends and supplements the mortgage, deed of trust, security deed, or security instrument (the "Security Instrument") dated the same date as this Allonge and the Note. To the extent that the provisions of this Allonge are inconsistent with the provisions of the Note and/or the Security Instrument, the provisions of this Allonge shall prevail over and will supercede any inconsistent provisions of the Note and/or the Security Instrument.

The section of the Note entitled Borrower's Right to Prepay is amended by adding the following paragraph as the last paragraph of such section:

   If I make a full Prepayment within three years of the date of this Note, I agree to pay the Note Holder a Prepayment fee. The Prepayment fee I will pay shall be an amount equal to one percent (1%) of the original principal amount of this Note. I will not be obligated to pay a Prepayment fee if I make a full Prepayment at any time after the 3rd Year anniversary of the date of this Note. In no event will such a charge be made if it violates state or federal law.

No Prepayment penalty will be assessed if prepayment is concurrent with the sale of the property securing the Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Daniel L. Gindele_ _____ (Borrower)    _____ (Borrower)
/Daniel L. Gindele

_____ (Borrower)    _____ (Borrower)

_____ (Borrower)    _____ (Borrower)

_____ (Borrower)    _____ (Borrower)

*[Sign Original Only]*

Prepayment Fee Allonge - (Ohio)
GreenPoint Mortgage Funding, Inc.

Page 1 of 1

B850000H  06/05