Hearing Date:   January 30, 2014, 10:00am, (Eastern Standard Time)

**MCKEEVER LAW OFFICES PLLC**
Heather Boone McKeever, Esq.
P.O. Box 1181
Isle of Palms, South Carolina 29451
info@mckeeverlaw.org
Telephone:   843-323-1174

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| **RESIDENTIAL CAPITAL, LLC, et al.,** | **Chapter 11** |
| Debtors. | **Jointly Administered** |

## MOTION TO ADJOURN HEARING SET FOR JANUARY 30, 2014 IN RELATION TO THE CLAIMS OF SHANE HAFFEY, (CLAIM NUMBERS 2582 and 4402,) REQUEST FOR EVIDENTIARY HEARING, REQUEST FOR THIRTY (30) DAYS TO FILE A RESPONSE TO DEBTORS' JANUARY 27, 2014, LATE FILED SUPPLEMENTAL OBJECTION AND LEAVE TO FILE ORIGINAL "FILED" SEPTEMBER 23, 2013, RESPONSE

Comes the Claimant, Shane Haffey, by counsel and hereby files his Motion to

Adjourn, Request for Evidentiary Hearing, Request for Thirty Days to File a Response to

the Debtors' January 27, 2014 Late Filed Supplemental Objection and Leave to File the

Original September 23, 2013 "filed" Response; based on the following:

On January 28, 1014, the **PROPOSED AGENDA FOR MATTERS SCHEDULED**

**TO BE HEARD ON JANUARY 30, 2014 AT 10:00 A.M. (EST)**, Docket #6378 was

filed with the Court; and included the hearing set in this matter.

On January 27, 2014, at 3:45 p.m;  just two (2) days prior to the hearing, and without

leave of Court, the Debtors filed a 176 page document entitled **RESCAP BORROWER**

**CLAIMS TRUST'S SUPPLEMENT IN FURTHER SUPPORT OF THE DEBTORS' OBJECTION TO PROOFS OF CLAIM FILED BY SHANE M. HAFFEY AGAINST RESIDENTIAL CAPITAL, LLC (CLAIM NOS. 2582 AND 4402) PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3007,** Docket #6361.

Based on the timing of the "Supplement in Further Support," having been filed less than seventy-two (72) hours before the hearing, the Claimants assert that there is good cause for the Hearing to the Adjourned to allow the Claimants thirty (30) days to file a Response to filing Docket #6361.

(Claimant's September 23, 2013, Response)

As part of the "Supplement," the Debtors state that "Claimant and his wife and counsel, Heather Boone McKeever ("**McKeever**" and together with Claimant, "**Borrowers**") have not filed a response to the Objection (and the time to do so expired several months ago),...." Docket #6361 page 1.

On January 15, 2014, while preparing for the hearing, undersigned counsel discovered that the September 23, 2013, timely Response filed by co-counsel Wendy Nora, had not been logged into the ECF docket in the case. In other words, the case was submitted, but was not successfully "filed" as to be assigned a Docket Number.

Up and until January 15, 2014, undersigned counsel had no reason to believe that the September 23, 2013, timely Response did not have a docket number as to be considered "filed." On September 23, 2013, the day the Response was due, undersigned counsel had received an electronic correspondence from Ms. Nora indicating that the Response

2

had been timely filed. The electronic mail is attached hereto and incorporated herewith as Exhibit "A."

Upon notification, and on January 20, 2014, Ms. Nora, prepared a Declaration in regard to the matter. The Declaration includes the complete copy of the September 23, 2013 Response. Ms. Nora's Declaration is attached hereto and incorporated herewith as Exhibit "B." Ms. Nora has included in the Declaration the Response and Exhibits as "filed" on September 23, 2013.

The September 23, 2013, Response included a Request for an Evidentiary hearing to be held in the matter. In an abundance of caution, the Request for Evidentiary Hearing is included in this Motion as well. The original documents, including the Promissory Note, Mortgage and TILA NOTICE OF RIGHT TO CANCEL proffered by the Debtors with the date of May 14, 2007, in this matter are forgeries. Additionally, the chain of title of the documents as attested to by the GMAC Declarant Deheley, in the Objection to the Proof of Claims, is in direct contradiction to the chain of title laid out by the Debtors in the District Court cases relating to these matters and in direct contradiction to the Affiants hired by the Debtors in the District Court and Sixth Circuit Appeals; whose testimony was utilized as evidence in the District Court cases and Sixth Circuit Appeals.

WHEREFORE, based on good cause shown and in order to protect the due process rights of the Claimant, the Claimant respectively requests that the January 30, 2014 hearing in this matter is ADJOURNED and the Claimant given thirty (30) days to file a Response to the late filed January 27, 2014, Supplemental Objection; that in lieu of a status hearing that the matter is ADJOURNED FOR AN EVIDENTIARY HEARING;

and that the September 23, 2013 Response by the Claimant as attached the Declaration of

Hon. Wendy Nora is deemed FILED.

Dated: January 29, 2014

Respectfully submitted,

*/s/ Heather Boone McKeever*
MCKEEVER LAW OFFICES PLLC
P.O. Box 1181
Isle of Palms, SC 29451
Tel. 843-323-1174
info@mckeeverlaw.org
COUNSEL FOR CREDITOR
SHANE M. HAFFEY

# CLAIMANT'S

# EXHIBIT A

From: Wendy Alison Nora <accesslegalservices@gmail.com>
Subject: **Haffey Response to Debtors' Objection to Proofs of Claim 2582 and 4402 Has Been Timely Filed**
Date: September 23, 2013 11:36:18 AM EDT
To: Heather McKeever <info@mckeeverlaw.org>
▸  4 Attachments, 1.5 MB

See attached ECF Notice and documents attached hereto.
Wendy

--

Attorney Wendy Alison Nora
ACCESS LEGAL SERVICES
310 Fourth Ave. S., Suite 5010
Minneapolis, Minnesota 55415
VOICE: (612) 333-4144
FAX: (608) 497-1026
accesslegalservices@gmail.com
*OFFICE HOURS BY APPOINTMENT ONLY*
New York Southern Live System                                    https://ecf.nysb.uscourts.gov/cgi-bin/Dispatch.pl?756824134233899992

File an Answer:

12-12020-mg Residential Capital, LLC

Docket Text: Final Text
*Opposition of Shane M. Haffey to Objection to Proofs of Claim 2582 and 4402 and request for evidentiary hearing* (related document(s)[4838]) filed by Wendy Alison Nora on behalf of Shane M. Haffey. (Attachments: # (1) Exhibit A: Letter from Florida Attorney General Bill McCollum to Michael A. Carpenter, now CEO of Ally Financial, Inc. concerning GMAC Mortgage, LLC false documents filed in Florida foreclosure cases dated Ocober 12, 2010 # (2) Declaration of Shane M. Haffey in Support of Response to Debtors' Objection to Claims 2582 and 4402) (Nora, Wendy Alison)

WARNING!! Submitting this screen commits this transaction. You will have no further opportunity to modify this submission if you continue.
Have you redacted?

Next    Clear

1 of 1

9.23.2013.H.....pdf (139 KB) 9.23.2013.D.....pdf (1.2 MB)

9/23/2013 10:29 AM   Haffey.9.23.....pdf (81.6 KB)

Wendy Alison Nora
ACCESS LEGAL SERVICES
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
Telephone: (612) 333-4144
Facsimile: (608) 497-1026

Hearing Date:  November 7, 2013
Response Date: September 23, 2013

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------

In re

Residential Capital, LLC *et al.*,

Chapter 11
Case No. 12-12020 (MG)

Debtors.

Administratively Consolidated

------------------------------------------------------------------

## RESPONSE TO OBJECTION TO CLAIMS 2582 AND 4402 OF SHANE M. HAFFEY

NOW COMES Shane M. Haffey, by his attorneys Heather McKeever and Wendy Alison

Nora, and responds to the Debtors' Objection to Proofs of Claim 2582 and 4402 and shows the

Court:

1. Debtors assert that the Haffey claims should be disallowed under 11 USC sec. 502(b)

without specifying which provision of 11 USC sec. 502(b) permits this Court to disallow the

claims.

2. For purposes of this Response, Creditor Shane M. Haffey assumes that the Debtors

are relying on 11 USC sec. 502(b)(1) which provides:

> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if
> such objection to a claim is made, the court, after notice and a hearing, shall
> determine the amount of such claim in lawful currency of the United States as of
> the date of the filing of the petition, and shall allow such claim in such amount,
> except to the extent that—
> (1) *such claim is unenforceable against the debtor and property of the debtor*,

1

*under* any agreement or *applicable law for a reason other than because such claim is contingent or unmatured*; (Emphasis added.)

3. Debtors, who sought and obtained administrative consolidation of bankruptcy filings for 51 entities in these proceedings captioned In re RESCAP, LLC make the bad faith argument that the Haffey claims are not properly filed under their own chosen consolidated caption of In re RESCAP, LLC and make the absurd suggestion that the Haffey claims should be disallowed because they were not filed in the respective subsidiaries' individual bankruptcy cases, all of which are consolidated.

4. Debtors next argue that res judicata and collateral estoppel bar the Creditor's claims because the claims have been adjudicated in several proceedings in the United States District Court for the Eastern District of Kentucky, now pending on appeal to the United States Circuit Court of Appeals for the Sixth Circuit.

5. Finally, Debtors also seek to have this Court disallow the claims on the theory that Shane M. Haffey is a vexatious litigant.

6. Despite protracted litigation, Debtors and their privies have failed to admit the key fact and have thereby concealed the true fact which is the foundation of the litigation: that the only basis for the claim of indebtedness is a missing promissory note that was signed on May 18, 2007 by [Heather M. Haffey,] Heather McKeever, the tenant by entirety and co-counsel in these proceedings.

7. Debtors and their counsel, on behalf of the warehouse lender, Deutsche Bank AG, purporting to have a mortgagee interest in the Haffey farm under the name of "Deutsche Bank Trust Company Americas," a wholly owned subsidiary of Taunus Corporation, a wholly owned

2

subsidiary of Deutsche Bank, AG[1] (hereinafter "Deutsche Bank" as to all appellations) seek to enforce a mortgage interest upon a note which was not signed by Mr. Haffey and which was not executed on May 14, 2007 by Heather M. Haffey, his wife.

8. At long last, Debtors, through the pending objection, admit that the only evidence of indebtedness for a mortgage interest on Mr. Haffey's farm is a May 18, 2007 note, assigned to GMAC (now Ally) Bank, signed by his wife, Heather M. Haffey, four (4) days after the May 14, 2007, the mortgage with his forged signature was recorded.

9. Debtors have attached a copy of the note assigned to GMAC (now Ally) Bank, "signed" by Heather M. Haffey on May 18, 2007 to their Objection.

10. Debtors have attached the evidence of the first fraudulent mortgage assignment to their objection, which is the May 14, 2007 assignment of mortgage from Bank of Blue Grass and Trust Company (hereinafter "Bank of Blue Grass"] to Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS.")

11. There was no mortgage indebtedness represented by any note signed by the Haffeys for any extension of credit from GMAC Bank upon which the mortgage assigned to MERS on May 14, 2007 by Bank of Bluegrass could be based.

12. The demand note secured by a first lien mortgage to Bank of Bluegrass (shown as Exhibit 1 on page 100 of the Debtors' 194 page Objection) was assigned to MERS on May 14, 2007 before the note upon which the mortgage was based was signed solely and exclusively by Heather M. Haffey on May 18, 2007.

---

[1] http://www.tkgi.net/tanuscorp.htm retrieved September 15, 2013

3

13.    Shane M. Haffey did not sign the challenged mortgage note and the fact that he did not sign the mortgage note has at last been admitted by counsel for the Debtors and its co-defendant Deustche Bank in the United States Circuit Court of Appeals for the Sixth Circuit in Case No. 12-5802 (page 164 of the Debtors' 194 page Objection.)

14.    Shane M. Haffey owns the farm as a tenant by entirety.    Under Kentucky law, the property can never be liquidated to satisfy the creditor of one of the tenants.

15.    No new consideration was given by Bank of Bluegrass in exchange for the note relied upon by the Debtors which was signed by Heather M. Haffey on May 18, 2007.

16.    The fraudulent assignment of a mortgage from Bank of Bluegrass to MERS on a date prior to the execution of any loan documents related to the purported transaction was the beginning of the attenuated litigation between the parties during which the Haffeys battled against the fraudulent mortgage assignment to MERS, which was then followed by a forged assignment of mortgage from MERS to Deutsche Bank.    The fraudulent mortgage assignment to MERS and the forged mortgage assignment in favor of Deustche Bank, executed by an employee of Debtor GMAC Mortgage, LLC,   concealed a transaction to which Haffeys were not parties: the sale of a note to GMAC Bank and a mortgage which was assigned to MERS without nomination by the Lender, neither of which documents existed at the time of the sale of the loan to GMAC Bank.

17.    The fraudulent mortgage loan transaction represented by back dated instruments is void ab initio.

18.    Additionally, the fraudulent mortgage loan transaction is not binding upon Shane M. Haffey, who did not sign the note, and the fraudulent loan transaction is void for want of

4

consideration as to both Shane M. Haffey and Heather M. Haffey and for fraud in the inducement.

19. If GMAC Bank gave consideration to the Bank of the Bluegrass for the purchase of forged loan documents, GMAC Bank, now Ally Bank, has a claim against Bank of Bluegrass, but has no claim against the Haffeys' farm. If Deutsche Bank provided the warehouse line of credit to GMAC Bank, its claim derives from GMAC Bank's claim against Bank of Bluegrass but does not lie against the Haffeys' farm. If the authentic, original of the May 18, 2007, Promissory Note is produced, and the 6th Circuit or highest Appellate Court deems the TILA Loan Rescission invalid, the Haffeys may owe Bank of Bluegrass on the original demand note dated February 21, 2007, (Exhibit 1 on page 100 of the Debtors' 194 page Objection) but they owe nothing to GMAC Bank or Deutsche Bank.

20. The forged mortgage produced for the fraudulent sale of the nonexistent loan created on May 14, 2007 and the subsequent forged mortgage assignments give rise to claims and defenses against the Bank of Bluegrass on the underlying mortgage loan which could not be pleaded until the Debtors and Deutsche Bank finally admitted that the documents upon which they are relying were executed on May 18, 2007 and not May 14, 2007, which they have previously fraudulently contended in all iterations of the litigation between the parties, now on appeal.

21. This case is not typical of the vast and ubiquitous securitization frauds which have ravaged the United States economy and housing market and the economy of the world since the private label mortgage securitization market collapsed. It appears that a local bank obtained funds to clear a demand note and mortgage from its books by selling fictitious documents to

5

GMAC Bank.  This is different from the usual direct marketing scheme in which property owners believed that they were receiving conventional mortgages from loan originators whose only involvement in the transactions was to obtain the loan documents purportedly used to collateralize Real Estate Mortgage Investment Conduit (REMIC) Trusts.

22.  Nevertheless, the business practice of forging mortgage assignments years after the loans documents were required to have been delivered to the REMIC Trusts is present in this case and Deutsche Bank's foreclosure judgment, which has been appealed, is founded upon a special endorsement to GMAC Bank which is not payable in blank or to it, and upon a forged mortgage assignment executed by an employee of GMAC Mortgage, LLC, Patricia Kelleher, masquerading as an officer of MERS.

23.  MERS is a data base and has no employees.  It is the employees of the servicers of mortgage loans who assign mortgages to their employers years after the REMIC Trust is closed and unable to accept new collateral into the trust corpus.  In other words, the mortgage servicers assign the loan collateral to themselves.   There is no legal authority for an assignee to assignee assignment.

24.  Despite the efforts of Ally Financial, Inc. (hereinafter AFI) to pretend that it did not exercise direction and control over its subsidiaries, these Debtors, as it seeks to escape from liability to injured property owners whose homes, farms and income properties have been foreclosed or are still being foreclosed with forged and falsely sworn documents by obtaining a release of claims against it for the payment of a mere net amount of approximately 1.1 billion dollars for purported claims the Debtors might have against it, AFI can be clearly shown to have directed the forgery scheme by the facts of this single case. (See Footnote 3 below in reference

6

to the Order of this Court approving payment of AFI's "priority claim."

25.  AFI is the bank holding company of Ally Bank, formerly known as GMAC Bank.
GMAC Bank purportedly extended credit to Bank of Bluegrass to acquire the fictitious mortgage
documents dated May 14, 2007 from the Haffeys. While the May 14, 2007 recorded mortgage
was never executed by Shane M. Haffey, Bank of Bluegrass nevertheless assigned the fictitious
mortgage to MERS.  After more than two (2) years of the Haffeys disputing the fictitious
transaction, an employee of GMAC Mortgage, LLC, forged a mortgage assignment in favor of
Deutsche Bank, purported trustee of a REMIC trust into which the loan documents had never
been delivered as collateral.

26.  Corporations have the knowledge imputed to them through their employees, officers
and Board of Directors.  Michael Carpenter served on the Board of Directors of GMAC
Financial Services starting in May, 2009 and was appointed its CEO in November, 2009.[2]  On or
about October 12, 2010, then Florida Attorney General Bill McCollum sent a letter directed to
Michael A. Carpenter (Exhibit A), which read, in part:

> "I was distressed to learn from media reports that your company may have
> engaged in filing faulty affidavits in foreclosure cases in Florida courts with
> regard to ownership of promissory notes and affidavits that attested to personal
> knowledge of facts when, in fact, the affiant had no such personal knowledge.
> "The net effect of these actions, among other things, has been to cast a shadow on
> the title to these properties which is of such proportions that at least one major
> title company is now refusing to write title insurance on foreclosed properties.
> Even more disturbing is that some of these foreclosed properties have already
> been sold and resold, and now their titles are in question, which may substantially
> slow the economic recovery for the citizens of Florida."

27.  Attorney General McCollum asked Michael A. Carpenter to meet with him in

_____

[2] http://topics.wsj.com/person/C/michael-a-carpenter/5593 retrieved September 15,

7

Tallahassee, Florida to discuss the need to correct false documents filed in thousands of Florida residential real estate foreclosures. (See Exhibit A.)

28. On or about April 4, 2012, AFI and GMAC Mortgage, LLC entered into a Consent Judgment with the United States Department of Justice and 49 states' attorneys general which promised to cease and desist using forged documents to confiscate real estate. The Consent Judgment filed in the United States District Court for the District of Columbia in Case No. 12-cv-361 and was executed by William B. Solomon, Group Vice President and General Counsel for Ally Financial, Inc. and Tammy Hamzepour, General Counsel for Residential Capital, LLC and GMAC Mortgage, LLC. That AFI continues to allow its subsidiaries to use forged documents in foreclosure proceedings and that the Debtors persist in seeking to foreclose on properties using forged documents is demonstrated on the face of numerous claims by affected property owners in multiple claims in these proceedings. What is unique about the Haffeys' case is that the documents directly tie Ally Bank formerly known as GMAC Bank, for which AFI is the holding company, directly to the forgery practices of GMAC Mortgage, LLC through GMAC Mortgage, LLC document forger, Patricia Kelleher, when the note is endorsed to GMAC Bank, now Ally Bank, a nondebtor, directly connected to AFI, its holding company. All the illusions that somehow Ally Bank and AFI are separate and distinct entities from these Debtors insofar as their knowing participation in the document forgery scheme are exposed as an false pretense.

2013

8

29.  Michael A. Carpenter was personally informed of the forgery scheme by Florida Attorney General Bill McCollum by letter dated October 12, 2010.  He knows that the Debtors are engaged in the forgery scheme sanctioned by the National Mortgage Settlement because the knowledge of AFI's General Counsel, William B. Solomon, is imputed to AFI of which Michael A. Carpenter is the CEO.   In these proceedings, AFI is attempting to escape liability for its direct involvement in the forgery scheme in exchange for a net contribution of 1.1 billion dollars to the bankruptcy estate.[3]

30.  Insofar as the forgery scheme is concerned, AFI has allowed foreclosures based upon forged mortgage assignments to continue before and after arranging to peel off its mortgage subsidiaries and throw them into bankruptcy to "ring-fence" its legacy mortgage liabilities (to investors in what are now known to be empty REMIC trusts and to property owners for directing the scheme to forge mortgage assignments to make it appear that the mortgage collateral was delivered to the trusts and government sponsored enterprises, when no such delivery of collateral took place.

31.  By having an employee of GMAC Mortgage, LLC forge the assignment of the fictitious Haffey mortgage to Deutsche Bank based upon a note specially endorsed to what it is now Ally Bank, the alter ego nature of the relationship between AFI, Ally and these Debtors can no longer be denied.

---

[3] 2.1 billion dollars in exchange for release of Debtors' claims against it minus its priority claim for purportedly extending credit to its subsidiaries already paid under order dated July 29, 2013 as Doc. 4404 in these proceedings.

9

32. By having an employee of GMAC Mortgage, LLC forge the assignment of the fictitious Haffey mortgage, AFI further demonstrates that it is acting in concert with Deutsche Bank to illegally foreclose on collateral which was not delivered to the REMIC Trust prior to the trust closing date, exposing the collaboration between Deutsche Bank and AFI in the racketeering conspiracy which includes mail fraud in violation of 18 USC sec. 1343, wire fraud in violation of 18 USC sec. 1341 and identity theft in violation of 18 USC sec. 1028. This revelation makes a mockery of these proceeding in which Deutsche Bank pretends to have been trustee of a bankruptcy remote, passive REMIC, when it is actively pursuing the confiscation of the Haffey farm on a forged mortgage assignment based upon a fictitious note payable specifically to Ally Bank, formerly known as GMAC Bank.

33. It is true that the Haffeys have tried to explain the illegal loan transaction in several proceedings, all of which are on appeal, but their true claim has never been adjudicated because it has been fraudulently concealed from the courts and from the Haffeys themselves, by misdirection designed by AFI and its subsidiaries, pretending to appear as Deutsche Bank. The pathetic failure of the attorneys for Deutsche Bank to investigate the facts and apply the law to the fictitious and forged documents is the cause of the multiplication of actions in the Haffey matter.

34. Under the Kentucky law, the mortgage follows the note if the note represents indebtedness.4 On September 25, 2009 GMAC Mortgage, LLC employee Kelleher,

_____

4 The question in Kentucky is not whether a Mortgage is perfected with a recording in the public record, but rather whether it is enforceable as evidenced by a valid underlying debt. This issue has recently been addressed with Debtor and Deutsche Bank's joint counsel law firm, BABC on the losing side on behalf of Debtor GMAC Mortgage LLC:

10

fraudulently purporting to be an officer of MERS (which has no officers or employees) executed

an Assignment of Mortgage which was authenticated by Sally Nelson, another GMAC

Mortgage, LLC employee, who falsely claims to have authenticated the instrument by

identifying the MERS corporate seal on the instrument when no seal is affixed thereto to

Deutsche Bank as a generic "Trustee" without identifying the REMIC trust of which Deutsche

Bank is purportedly the Trustee. The forged Assignment of Mortgage is void and has not legal

effect greater than a blank piece of paper in civil proceedings, yet the litigation process has been

entirely infected by the fraudulent claims of AFI, its subsidiaries and its collaborator, Deutsche

Bank to the extent that full and fair adjudication the matter could not be had. Furthermore, the

*precise issue* of the liability of the Debtors' estate for the damages suffered by the Haffeys for

years of litigation based upon an ongoing crime, in which the relationship between the parties

taking the fraudulent actions against the Haffeys have been concealed by fictitious and forged

documents upon which the attorneys for the fraud parties continue to proceed as if they were

authentic, has never been adjudicated.

---

Under Kentucky law, without evidence of debt, there is no valid, enforceable mortgage. "A mortgage may be enforced only by … a person who is entitled to enforce the obligation the mortgage secures." Restatement (Third) of Property: Mortgages, §5:4 (1997). "[A] mortgage is merely incident to the debt or obligation it is given to secure[.]" *Warning's Ex'r v. Tabeling*, 280 Ky. 232, 133 S.W.2d 65, 67 (1939); *see also Grafton v. Shields Mini Markets, Inc.*, No. 2009-CA-001862-MR, 2011 WL 112833, *5 (Ky. Ct. App. Jan. 14, 2011). A mortgage is valid and enforceable only if the underlying debt continues to be an enforceable obligation. *Craddock v. Lee*, 61 S.W. 22 (Ky. 1901). "[W]ithout the debt, there is no mortgage." *Wells Fargo Fin. Ky., Inc. v. Thomer*, 315 S.W.3d 335, 339 (Ky.Ct. App. 2010); *see also Peoples Bank of Polk Cnty. V. McDonald (In re Maryville Sav. & Loan Corp.)*, 743 F.2d 413 (6th Cir. 1984).

*Rogan v. Litton Loan Serv., L.P. (In re Collins)*, 456 B.R. 284, 296 (B.A.P. 6th Cir. 2011).

11

34. Debtors assert that the claim of Shane M. Haffey is barred by res judicata or

collateral estoppel. The same standards apply to both res judicata and collateral estoppel, except

that res judicata bars relitigation against the same party and collateral estoppel bars relitigation

against other parties in privity with the original party to the precise same action when the

judgment is final. Debtors assert that the judgments in the District Court for the Eastern District

of Kentucky may be treated as final, even though they are on appeal to the United States Court of

Appeals for the Sixth Circuit. "Finality of judgment" is but one prong of the test for the

doctrines of res judicata and collateral estoppel.

35. In N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n (DPOA), 821 F.2d

328 (C.A.6, Mich., 1987) the Sixth Circuit Court of Appeals held,

"The doctrine of collateral estoppel dictates that 'once a court has decided an issue of fact
or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on
a different cause of action involving a party to the first case.' Allen v. McCurry, 449 U.S. 90, 94,
101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); see generally C. Wright, Law of Federal Courts
678-96 (4th ed. 1983).
Before collateral estoppel may be applied to bar litigation of an issue, four specific
requirements must be met:
(1) the precise issue raised in the present case must have been raised and actually
litigated in the prior proceeding;
(2) determination of the issue must have been necessary to the outcome of the prior
proceeding;
(3) the prior proceeding must have resulted in a final judgment on the merits; and
(4) the party against whom estoppel is sought must have had a full and fair
opportunity to litigate the issue in the prior proceeding."

36. Debtors have entirely failed to show that the precise issue, which is the liability of the

Debtors, their nondebtor parent companies, and their affiliates for continuing to litigate on a

fictitious loan supported by a forged mortgage assignment, has been adjudicated and that Shane M. Haffey has had a full and fair opportunity to litigate the issue in the proceeding now on appeal to the United States Circuit Court for the Sixth Circuit.  The Debtors claims of finality are additionally disingenuous as GMAC Mortgage LLC and Deutsche Bank, as dually represented by the same law firm, currently have pending before the 6th Circuit, a Motion to Remand the cases, for further consideration and to re-open the finality of the Summary Judgment in relation to the 2009 lien enforcement (foreclosure) case.

37.  Debtors contend, "Following each such dismissal, Borrowers filed meritless and nonsensical motions to reconsider and motions to vacate or amend, which substantially increased the cost of defending these claims." First of all, the Haffeys are not "borrowers." Debtors are seeking to apply their broad definition of "borrower"[5] contained in their Chapter 11 Plan which defines "borrower claims" in part as (i) Claims of a Borrower arising from or relating to any alleged act or omission or any other basis of liability of any Debtor (or any predecessor) in connection with the origination, sale, and/or servicing of a mortgage loan originated, sold, consolidated, purchased, and/or serviced by any Debtor. . . [6]  It is obvious that the Debtors themselves are confused about their relationship to the Haffeys, yet they complain that their lawyers do not understand the Haffeys' litigation claims in the several actions now pending on appeal.   It is the Debtors who have created the nonsense in all foreclosure proceedings founded upon forged mortgage assignments.  They and their parent companies and affiliates designed the

_____

[5] Debtors' definition of "borrower" appears on page 9 of the Chapter 11 Plan, which provides at definition 28: "Borrower" means an individual whose current or former mortgage loan was originated, serviced, sold, consolidated, or owned by any of the Debtors.

[6]  Chapter 11 Plan, page 9

13

obfuscation which they now complain the Haffeys were not able to fully penetrate and describe, so the Haffeys would try to explain the wrongs being done to them on reconsideration when the courts would misapprehend their claims.

38. By willful blindness or collusion of counsel for the mortgage servicer, GMAC Mortgage, LLC never examined the validity of the loan transaction, ignored the invalidity of the transaction and/or deliberately relied upon forged documents and argued a position which could only have merit if the mortgage documents had been executed on May 14, 2007 and were not forgeries and if the September 25, 2009 forged assignment of mortgage from MERS to Deutsche Bank, put the Haffeys in a position of having to describe fraudulent transactions, which can indeed sound nonsensical if one assumes that the forged documents are authenthic. The Claimant Haffey can now prove that the attorneys representing the Debtors and Deutsche Bank, at Bradley, Arant, Boult, Cummings, LLP (hereinafter BABC) have been complicit in the scheme to defraud the Haffeys by litigating against them on fictitious and forged documents because, at long last, the Debtors have admitted, for the first time in these proceedings, on August 26, 2013, that the loan documents were not executed on May 14, 2007, as they have previously, continuously maintained.

39. Until August 26, 2013, the Debtors did not even acknowledge the true date that the mortgage documents were signed. The English language is lacking in sufficient vocabulary to describe the transaction which occurred, but best efforts will once again be attempted below.

40. Shane M. Haffey can now accurately describe the basis for his Proofs of Claim arising from a loan transaction which never took place. No transaction ever took place on May 14, 2007. The transaction which took place on May 18, 2007 was fraudulently induced. Bank

14

of Bluegrass assigned a mortgage dated May 14, 2007 to MERS, when MERS could not have

been the assignee of the mortgage because MERS has never claimed an interest in any

underlying debt, nor did it have any interest, legal or equitable, in the note. The note was not

signed on May 14, 2007. The Note presented to the Court is endorsed specially to GMAC (now

Ally) Bank and the *nonexistent* May 14, 2007 mortgage was fraudulently assigned to MERS.

Bank of Bluegrass took funds from GMAC Bank in exchange for fraudulently procured

documents for which no  consideration was given to the Haffeys because the *transaction which*

*did not occur*. On May 14, 2007, Robert B. Jones created a mortgage assignment in favor of

MERS, which is a forgery under Kentucky Revised Statutes sec. 516.030.   GMAC Mortgage,

LLC refused to acknowledge the frauds being committed upon the Haffeys for which the Haffeys

have been seeking judicial relief.   On September 25, 2009, Patricia Kelleher, an employee of

GMAC Mortgage, LLC forged a mortgage assignment pretending to be an officer of MERS,

when she knew that she was not an officer of MERS, in violation of Kentucky Revised Statutes

sec. 516.030.[7]   Deutsche Bank is not the lawful assignee of the mortgage interest, but has

---

[7] Kentucky Revised Statutes sec. 516.030. which provides, in relevant part:
  (1) A person is guilty of forgery in the second degree when, with intent to    defraud,
  deceive or injure another, he falsely makes, completes or alters a written instrument, . . .
  which is or purports to be or which is calculated to
  become or to represent when completed:

  (a) A deed, will, codicil, contract, assignment, commercial instrument, credit card or
  other instrument which does or may evidence, create, transfer, terminate or otherwise
  affect a legal right, interest, obligation or status; or

  (b) A public record or an instrument filed or required or authorized by law to be
  filed in or with a public office or public employee; . . .

15

proceeded to attempt to foreclose on Shane M. Haffey's family farm on a note specially endorsed to GMAC Bank, now known as Ally Bank. As a result of the fictitious loan and the forged mortgage assignments, Shane M. Haffey has had his credit ruined and his peaceful enjoyment of his home and farm repeatedly violated. Furthermore, first Bank of Bluegrass and then GMAC Bank, now known as Ally Bank, stole the identity of Shane M. Haffey and used it without his knowledge and consent, repeatedly transmitted forged documents by wire and mail in order to create a false claim against his farm, which was illegally transferred to Deutsche Bank on behalf of a trust which has no lawful claim on the collateral. The conduct of the Debtors, their parents and affiliates is extreme and outrageous and entitles Shane M. Haffey to punitive damages.

41. Shane M. Haffey is not a vexatious litigant, but is a family farmer seeking to save his farm from the confiscation thereof under a *fictitious* loan transaction, supported only by *forged* documents, which he has not previously been able to establish until now. Thus far, and until the Declaration of GMAC's in-house counsel in these Proof of Claim proceedings, Haffey has been on the receiving end of vexatious litigation in regards to the collusion and conspiracy of the Debtors with Ally Bank, AFI, Deutsche Bank and the BABC law firm. At this late stage of the proceedings, by review of Debtors' litigation counsel of what Debtors have known all along has been admitted: that the documents upon which all the litigation has proceeded were not, in fact, signed on May 14, 2007, but were actually signed on May 18, 2007 and the May 14, 2007 are forgeries.

16

42. No final judgment upon full and fair opportunity to be heard has yet been entered by any court on the true facts of the fictitious loan transaction because the real date upon which the loan documents were signed was never admitted until August 26, 2013, in the Debtors' Objection to Haffeys' claims. That admission, that the loan documents were signed on May 18, 2007, four (4) days after Bank of Bluegrass officer William Allen assigned the mortgage to MERS is critical to the full and fair litigation of the issues and which has not yet been heard. Shane M. Haffey has been denied full and fair litigation of the issues because the proceedings had to date have been founded upon forged documents representing a loan transaction which did not take place on May 14, 2007, as the Claimant has asserted all along. By proceeding upon forged documents representing a fictitious loan transaction, Shane M. Haffey has been denied his constitutional rights under the Constitution of the United States to petition the courts for redress of his grievances under the First Amendment and to procedural and substantive due process under the Fifth Amendment. It is impossible for due process to coexist with deliberate fraud upon the courts, whereby the proponent of the frauds prevents the opponent of the frauds from actually litigating the real issues at an evidentiary hearing at which the forged documents may be exposed. It is only by happenstance that Debtors' litigation counsel was not aware of the nature of the frauds that she admitted the key fact essential to full and fair litigation: that the documents sold and re-sold in the securitization process were not executed on May 14, 2007.

WHEREFORE, Shane M. Haffey respectfully responds to the Debtors' Objection to his claims and requests an evidentiary hearing at which time he will prove the validity of his claims.

Dated at Madison, Wisconsin this 23rd day of September, 2013.

/s/ Wendy Alison Nora
Wendy Alison Nora
Co-counsel for Shane M. Haffey
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
(612) 333-4144
FAX (608) 497-1026
accesslegalservices@gmail.com

## UNSWORN DECLARATION OF SERVICE

The above-captioned document filed by CM/ECF on September 23, 2013 and was thereby served all parties and their counsel capable of service by CM/ECF in these proceedings.

/s/ Wendy Alison Nora
Wendy Alison Nora

# EXHIBIT A



# STATE OF FLORIDA

### BILL McCOLLUM
### ATTORNEY GENERAL

October 12, 2010

Mr. Michael Carpenter
Chief Executive Officer
GMAC Mortgage, LLC
1100 Virginia Drive
Ft. Washington, PA  19034

Dear Mr. Carpenter:

As Attorney General of the State of Florida, I am writing you to express my concern for Florida's economic future and the credibility of Florida's judicial foreclosure system as a result of the actions of your company – actions that have affected the integrity of title to real property for Florida's homeowners as well as the foreclosure process in Florida.

I was distressed to learn from media reports that your company may have engaged in filing faulty affidavits in foreclosure cases in Florida courts with regard to ownership of promissory notes and affidavits that attested to personal knowledge of facts when, in fact, the affiant had no such personal knowledge. The net effect of these actions, among other things, has been to cast a shadow on the title to these properties which is of such proportions that at least one major title company is now refusing to write title insurance on foreclosed properties. Even more disturbing is that some of these foreclosed properties have already been sold and resold, and now their titles are in question, which may substantially slow the economic recovery for the citizens of Florida.

All of this has been compounded by the impact of the recently announced moratoria on foreclosures by several mortgage servicers and the plethora of private litigation that has already commenced. In my view, the moratoria and the private litigation are counterproductive to obtaining the swift solution necessary to address this serious problem facing Florida's already fragile economy.

Mr. Michael Carpenter
Page Two
October 12, 2010

I am requesting that you come to Tallahassee to meet with me as soon as possible to discuss ways to promptly and effectively redeem the integrity of the foreclosure process and ensure the marketability of real estate titles in Florida. I realize that correcting the faulty affidavits and reopening many of the foreclosure cases may take many months, even years given the state of our overburdened court system.  Florida cannot wait that long to correct the linchpin of our economic recovery – clearing the foreclosure backlog. I look forward to our discussion and trust you will assist us in our efforts to come up with a creative solution to restore Floridians' faith in the judicial foreclosure process as well as maintaining the viability and marketability of real property titles in Florida.

I look forward to meeting with you.

Sincerely,

Bill McCollum

Wendy Alison Nora
ACCESS LEGAL SERVICES
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
Telephone: (612) 333-4144
Facsimile: (608) 497-1026

Hearing Date:   November 7, 2013
Response Date:  September 23, 2013

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------

In re

Residential Capital, LLC et al.,

Debtors.

Chapter 11
Case No. 12-12020 (MG)

Administratively
Consolidated

-------------------------------------------------------------

### DECLARATION OF TENANT BY ENTIRETY SHANE HAFFEY
### IN RESPONSE TO OBJECTION TO CLAIMS 2582 AND 4402
### IN RELATION TO HIS FAMILY FARM

I, Shane Haffey, pursuant to 28 U.S.C. §1746, in Response to the Objection to Claims

2582 and 4402 state the following:

1. I am the owner as a tenant by entirety of the family farm located at 3250 Delong

Road, Lexington, (Fayette County) Kentucky 40515.

2. The copy of a purported "Note" dated May 14, 2007, used as an Exhibit as

evidence to attempt to fraudulently procure a judicial deed transfer, was filed in the

public record by attorneys solely retained by GMAC Mortgage LLC. *See. Case 5:09-*

*00362-JBC, Doc. #1-3 filed 11/12/09.*

3. I did not sign "Note."

4. The May 14, 2007, "Note" bears the name of Heather Haffey. The co-owner of

the farm is my wife, Heather McKeever.

5. My wife did not sign the May 14, 2007 "Note."

6. The "Note" is a forgery.

7. The copy of a purported "Mortgage", dated May 14, 2007, used as evidence to attempt to fraudulently procure a judicial lien transfer, was filed in the public record as an Exhibit as evidence by attorneys soley retained by GMAC Mortgage LLC. *See. Case 5:09-00362-JBC, Doc. #1-3 filed 11/12/09.*

8. The copy of a purported "Mortgage" was recorded in the office of the Fayette County County Clerk in Deed Book 6084 Page 154 by an employee of GMAC Mortgage LLC.

8. I did not sign the May 14, 2007 "Mortgage."

9. The May 14, 2007 "Mortgage" bears the name of Heather Haffey. The co-owner of the farm is my wife, Heather McKeever.

10. My wife did not sign the May 14, 2007 "Mortgage."

11. The "Mortgage" is a forgery.

12. The statements made in the Response to the Objection are true and correct to the best of my knowledge.

13. I incorporate into this Declaration, all previous Declarations entered into the record of this case, and contained in my Proof of Claim and Motion to Enforce/Clarify the Stay.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that all of the foregoing is true and correct to the best of my knowledge.

Executed on this the 23rd day of September, 2013.

Shane Haffey

2

# CLAIMANT'S

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

RESIDENTIAL CAPITAL, LLC, et al.,
Post-Effective Date Debtors

Chapter 11

--------------------------------

RESCAP BORROWER CLAIMS TRUST,
by Peter Kravitz, Trustee,

Case No. 12-12020-mg

v.

SHANE M. HAFFEY,
Creditor-Beneficiary

DECLARATION OF WENDY ALISON NORA ON FAILURE TO
EFFECTUATE COMPLETED FILING OF RESPONSE OF SHANE M. HAFFEY
TO OBJECTIONS OF RESCAP, LLC DEBTORS TO CLAIM NOS. 2582 AND 4402

Wendy Alison Nora, declares under penalty of perjury and pursuant to 28 USC sec. 1746:

1. On September 23, 2013, she filed several documents in the RESCAP, LLC

Bankruptcy.

2. She believed that she had filed the Opposition of Shane M. Haffey and Request for

Evidentiary Hearing at 10:29 a.m. on September 23, 2013.

3. On October 9, 2013, she believed that her pro hac vice admission on behalf of herself

and all others similarly situated was revoked.

4. She advised her co-counsel that her pro hac vice admission had been revoked and your

Declarant felt reassured that Shane M. Haffey remained represented by counsel.

5. Subsequent correspondence between Attorney Heather McKeever and your Declarant

transpired in which she understood that Attorney McKeever was seeking an adjournment of the

Haffey Claims Objection until a determination on the status of your Declarant's pro hac vice

admission.

6. Your Declarant came to understand that her pro hac vice admission was not in the proper form and would have to be re-filed for each proposed client, on an individual basis.

7. On November 14, 2013, your Declarant settled her individual claim against the certain of the RESCAP Debtors, and was no longer in a position to argue for others similarly situated.

8. On January 15, 2014, Attorney Heather McKeever informed your Declarant that the Haffey Opposition/Response to the RESCAP Debtors' Objection to Claim Nos. 2582 and 4402 was not appearing in the record of the RESCAP proceedings.

9. Your Declarant searched for the docket entries and discovered that, whereas she thought she had proof of the ECF filing, the filing had not been accomplished and the Proof of Filing which she sent to Attorney McKeever for verification of the filing on September 23, 2013 was the pre-filing docket text. (Exhibit A, attached hereto.)

10. Your Declarant assumes that, since her other filings on September 23, 2013 were received by the Court she mistakenly believed that the docket text was the notice of completed ECF filing because she sent it to Attorney McKeever for verification. It is possible that, upon printing what she believed was the ECF filing verification, she did not finalize the transaction by submitting it.

11. Your Declarant can think of no other reason than that stated at paragraph 10, above, for the Opposition of Shane M. Haffey to not have been docketed.

12. The failure to complete the filing of the Opposition was a good faith mistake, as the Opposition and its attachments were fully prepared, approved by then co-counsel Haffey and was thought to have been submitted on September 23, 2013. See Exhibits B (the Haffey Opposition), Exhibit C (Exhibit A to the Haffey Opposition), Exhibit D (the Declaration of Shane M. Haffey)

2

all of which were thought to have been submitted on September 23, 2013 by your Declarant.

13. Your Declarant makes this Declaration in Support of the Motion of Attorney Heather McKeever to adjourn the hearing now set by the Trustee of the Borrowers Claims Trust for January 30, 2014 to February 20, 2014, at which time your Declarant hopes to be able to again appear in these proceedings, under a client-specific, individualized pro hac vice admission, under the auspices of Attorney Thomas Sinnickson of New York, who is willing to move the admission of your Declarant in specific, individual cases.

14. Your Declarant does not believe that the Borrowers Claims Trust will be prejudiced by the requested adjournment because the Opposition is pending re-filing, and it will benefit from requested adjournment.

15. If the adjournment is not granted, Mr. Haffey will be prejudiced, because his Opposition is, by good faith filing error, not presently before the Court.

FURTHER YOUR DECLARANT SAYETH NAUGHT.



*/s/ Wendy Alison Nora*

Wendy Alison Nora

## UNSWORN DECLARATION OF SERVICE

The above-captioned document filed by CM/ECF on January 21, 2014 and was thereby served all parties and their counsel capable of service by CM/ECF in these proceedings.

*/s/ Wendy Alison Nora*
Wendy Alison Nora

3

# EXHIBIT A

**File an Answer:**

12-12020-mg Residential Capital, LLC

Docket Text: Final Text

Opposition *of Shane M. Haffey to Objection to Proofs of Claim 2582 and 4402 and request for evidentiary hearing* (related document(s)[4838]) filed by Wendy Alison Nora on behalf of Shane M. Haffey. (Attachments: # (1) Exhibit A: Letter from Florida Attorney General Bill McCollum to Michael A. Carpenter, now CEO of Ally Financial, Inc. concerning GMAC Mortgage, LLC false documents filed in Florida foreclosure cases dated Ocober 12, 2010 # (2) Declaration of Shane M. Haffey in Support of Response to Debtors' Objection to Claims 2582 and 4402) (Nora, Wendy Alison)

WARNING!! Submitting this screen commits this transaction. You will have no further opportunity to modify this submission if you continue.
Have you redacted?

# EXHIBIT B

Wendy Alison Nora
ACCESS LEGAL SERVICES
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
Telephone: (612) 333-4144
Facsimile: (608) 497-1026

Hearing Date: November 7, 2013
Response Date: September 23, 2013

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------

In re

Residential Capital, LLC *et al.*,

              Debtors.

Chapter 11
Case No. 12-12020 (MG)

Administratively Consolidated

--------------------------------------------------------------

## RESPONSE TO OBJECTION TO CLAIMS 2582 AND 4402 OF SHANE M. HAFFEY

NOW COMES Shane M. Haffey, by his attorneys Heather McKeever and Wendy Alison

Nora, and responds to the Debtors' Objection to Proofs of Claim 2582 and 4402 and shows the

Court:

1. Debtors assert that the Haffey claims should be disallowed under 11 USC sec. 502(b)

without specifying which provision of 11 USC sec. 502(b) permits this Court to disallow the

claims.

2. For purposes of this Response, Creditor Shane M. Haffey assumes that the Debtors

are relying on 11 USC sec. 502(b)(1) which provides:

> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if
> such objection to a claim is made, the court, after notice and a hearing, shall
> determine the amount of such claim in lawful currency of the United States as of
> the date of the filing of the petition, and shall allow such claim in such amount,
> except to the extent that—
> (1) *such claim is unenforceable against the debtor and property of the debtor*,

1

*under* any agreement or *applicable law for a reason other than because such
claim is contingent or unmatured*; (Emphasis added.)

3.    Debtors, who sought and obtained administrative consolidation of bankruptcy filings

for 51 entities in these proceedings captioned In re RESCAP, LLC make the bad faith argument

that the Haffey claims are not properly filed under their own chosen consolidated caption of In re

RESCAP, LLC and make the absurd suggestion that the Haffey claims should be disallowed

because they were not filed in the respective subsidiaries' individual bankruptcy cases, all of

which are consolidated.

4.    Debtors next argue that res judicata and collateral estoppel bar the Creditor's claims

because the claims have been adjudicated in several proceedings in the United States District

Court for the Eastern District of Kentucky, now pending on appeal to the United States Circuit

Court of Appeals for the Sixth Circuit.

5.    Finally, Debtors also seek to have this Court disallow the claims on the theory that

Shane M. Haffey is a vexatious litigant.

6.    Despite protracted litigation, Debtors and their privies have failed to admit the key

fact and have thereby concealed the true fact which is the foundation of the litigation: that the

only basis for the claim of indebtedness is a missing promissory note that was signed on May 18,

2007 by [Heather M. Haffey,] Heather McKeever, the tenant by entirety and co-counsel in these

proceedings.

7.    Debtors and their counsel, on behalf of the warehouse lender, Deutsche Bank AG,

purporting to have a mortgagee interest in the Haffey farm under the name of "Deutsche Bank

Trust Company Americas," a wholly owned subsidiary of Taunus Corporation,  a wholly owned

2

subsidiary of Deutsche Bank, AG[1] (hereinafter "Deutsche Bank" as to all appellations) seek to enforce a mortgage interest upon a note which was not signed by Mr. Haffey and which was not executed on May 14, 2007 by Heather M. Haffey, his wife.

8. At long last, Debtors, through the pending objection, admit that the only evidence of indebtedness for a mortgage interest on Mr. Haffey's farm is a May 18, 2007 note, assigned to GMAC (now Ally) Bank, signed by his wife, Heather M. Haffey, four (4) days after the May 14, 2007, the mortgage with his forged signature was recorded.

9. Debtors have attached a copy of the note assigned to GMAC (now Ally) Bank, "signed" by Heather M. Haffey on May 18, 2007 to their Objection.

10. Debtors have attached the evidence of the first fraudulent mortgage assignment to their objection, which is the May 14, 2007 assignment of mortgage from Bank of Blue Grass and Trust Company (hereinafter "Bank of Blue Grass"] to Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS.")

11. There was no mortgage indebtedness represented by any note signed by the Haffeys for any extension of credit from GMAC Bank upon which the mortgage assigned to MERS on May 14, 2007 by Bank of Bluegrass could be based.

12. The demand note secured by a first lien mortgage to Bank of Bluegrass (shown as Exhibit 1 on page 100 of the Debtors' 194 page Objection) was assigned to MERS on May 14, 2007 before the note upon which the mortgage was based was signed solely and exclusively by Heather M. Haffey on May 18, 2007.

---

[1] http://www.tkgi.net/tanuscorp.htm retrieved September 15, 2013

13.   Shane M. Haffey did not sign the challenged mortgage note and the fact that he did

not sign the mortgage note has at last been admitted by counsel for the Debtors and its co-

defendant Deustche Bank in the United States Circuit Court of Appeals for the Sixth Circuit in

Case No. 12-5802 (page 164 of the Debtors' 194 page Objection.)

14.   Shane M. Haffey owns the farm as a tenant by entirety.  Under Kentucky law, the

property can never be liquidated to satisfy the creditor of one of the tenants.

15.   No new consideration was given by Bank of Bluegrass in exchange for the note

relied upon by the Debtors which was signed by Heather M. Haffey on May 18, 2007.

16.   The fraudulent assignment of a mortgage from Bank of Bluegrass to MERS on a

date prior to the execution of any loan documents related to the purported transaction was the

beginning of the attenuated litigation between the parties during which the Haffeys battled

against the fraudulent mortgage assignment to MERS, which was then followed by a forged

assignment of mortgage from MERS to Deutsche Bank.  The fraudulent mortgage assignment to

MERS and the forged mortgage assignment in favor of Deustche Bank, executed by an employee

of Debtor GMAC Mortgage, LLC,  concealed a transaction to which Haffeys were not parties:

the sale of a note to GMAC Bank and a mortgage which was assigned to MERS without

nomination by the Lender, neither of which documents existed at the time of the sale of the loan

to GMAC Bank.

17.   The fraudulent mortgage loan transaction represented by back dated instruments is

void ab initio.

18.   Additionally, the fraudulent mortgage loan transaction is not binding upon Shane M.

Haffey, who did not sign the note, and the fraudulent loan transaction is void for want of

4

consideration as to both Shane M. Haffey and Heather M. Haffey and for fraud in the inducement.

19. If GMAC Bank gave consideration to the Bank of the Bluegrass for the purchase of forged loan documents, GMAC Bank, now Ally Bank, has a claim against Bank of Bluegrass, but has no claim against the Haffeys' farm. If Deutsche Bank provided the warehouse line of credit to GMAC Bank, its claim derives from GMAC Bank's claim against Bank of Bluegrass but does not lie against the Haffeys' farm. If the authentic, original of the May 18, 2007, Promissory Note is produced, and the 6th Circuit or highest Appellate Court deems the TILA Loan Rescission invalid, the Haffeys may owe Bank of Bluegrass on the original demand note dated February 21, 2007, (Exhibit 1 on page 100 of the Debtors' 194 page Objection) but they owe nothing to GMAC Bank or Deutsche Bank.

20. The forged mortgage produced for the fraudulent sale of the nonexistent loan created on May 14, 2007 and the subsequent forged mortgage assignments give rise to claims and defenses against the Bank of Bluegrass on the underlying mortgage loan which could not be pleaded until the Debtors and Deutsche Bank finally admitted that the documents upon which they are relying were executed on May 18, 2007 and not May 14, 2007, which they have previously fraudulently contended in all iterations of the litigation between the parties, now on appeal.

21. This case is not typical of the vast and ubiquitous securitization frauds which have ravaged the United States economy and housing market and the economy of the world since the private label mortgage securitization market collapsed. It appears that a local bank obtained funds to clear a demand note and mortgage from its books by selling fictitious documents to

GMAC Bank. This is different from the usual direct marketing scheme in which property owners believed that they were receiving conventional mortgages from loan originators whose only involvement in the transactions was to obtain the loan documents purportedly used to collateralize Real Estate Mortgage Investment Conduit (REMIC) Trusts.

22. Nevertheless, the business practice of forging mortgage assignments years after the loans documents were required to have been delivered to the REMIC Trusts is present in this case and Deutsche Bank's foreclosure judgment, which has been appealed, is founded upon a special endorsement to GMAC Bank which is not payable in blank or to it, and upon a forged mortgage assignment executed by an employee of GMAC Mortgage, LLC, Patricia Kelleher, masquerading as an officer of MERS.

23. MERS is a data base and has no employees. It is the employees of the servicers of mortgage loans who assign mortgages to their employers years after the REMIC Trust is closed and unable to accept new collateral into the trust corpus. In other words, the mortgage servicers assign the loan collateral to themselves. There is no legal authority for an assignee to assignee assignment.

24. Despite the efforts of Ally Financial, Inc. (hereinafter AFI) to pretend that it did not exercise direction and control over its subsidiaries, these Debtors, as it seeks to escape from liability to injured property owners whose homes, farms and income properties have been foreclosed or are still being foreclosed with forged and falsely sworn documents by obtaining a release of claims against it for the payment of a mere net amount of approximately 1.1 billion dollars for purported claims the Debtors might have against it, AFI can be clearly shown to have directed the forgery scheme by the facts of this single case. (See Footnote 3 below in reference

6

to the Order of this Court approving payment of AFI's "priority claim."

25. AFI is the bank holding company of Ally Bank, formerly known as GMAC Bank. GMAC Bank purportedly extended credit to Bank of Bluegrass to acquire the fictitious mortgage documents dated May 14, 2007 from the Haffeys. While the May 14, 2007 recorded mortgage was never executed by Shane M. Haffey, Bank of Bluegrass nevertheless assigned the fictitious mortgage to MERS. After more than two (2) years of the Haffeys disputing the fictitious transaction, an employee of GMAC Mortgage, LLC, forged a mortgage assignment in favor of Deutsche Bank, purported trustee of a REMIC trust into which the loan documents had never been delivered as collateral.

26. Corporations have the knowledge imputed to them through their employees, officers and Board of Directors. Michael Carpenter served on the Board of Directors of GMAC Financial Services starting in May, 2009 and was appointed its CEO in November, 2009.[2] On or about October 12, 2010, then Florida Attorney General Bill McCollum sent a letter directed to Michael A. Carpenter (Exhibit A), which read, in part:

> "I was distressed to learn from media reports that your company may have engaged in filing faulty affidavits in foreclosure cases in Florida courts with regard to ownership of promissory notes and affidavits that attested to personal knowledge of facts when, in fact, the affiant had no such personal knowledge. "The net effect of these actions, among other things, has been to cast a shadow on the title to these properties which is of such proportions that at least one major title company is now refusing to write title insurance on foreclosed properties. Even more disturbing is that some of these foreclosed properties have already been sold and resold, and now their titles are in question, which may substantially slow the economic recovery for the citizens of Florida."

27. Attorney General McCollum asked Michael A. Carpenter to meet with him in

_____

[2] http://topics.wsj.com/person/C/michael-a-carpenter/5593 retrieved September 15,

Tallahassee, Florida to discuss the need to correct false documents filed in thousands of Florida residential real estate foreclosures. (See Exhibit A.)

28. On or about April 4, 2012, AFI and GMAC Mortgage, LLC entered into a Consent Judgment with the United States Department of Justice and 49 states' attorneys general which promised to cease and desist using forged documents to confiscate real estate. The Consent Judgment filed in the United States District Court for the District of Columbia in Case No. 12-cv-361 and was executed by William B. Solomon, Group Vice President and General Counsel for Ally Financial, Inc. and Tammy Hamzepour, General Counsel for Residential Capital, LLC and GMAC Mortgage, LLC. That AFI continues to allow its subsidiaries to use forged documents in foreclosure proceedings and that the Debtors persist in seeking to foreclose on properties using forged documents is demonstrated on the face of numerous claims by affected property owners in multiple claims in these proceedings. What is unique about the Haffeys' case is that the documents directly tie Ally Bank formerly known as GMAC Bank, for which AFI is the holding company, directly to the forgery practices of GMAC Mortgage, LLC through GMAC Mortgage, LLC document forger, Patricia Kelleher, when the note is endorsed to GMAC Bank, now Ally Bank, a nondebtor, directly connected to AFI, its holding company. All the illusions that somehow Ally Bank and AFI are separate and distinct entities from these Debtors insofar as their knowing participation in the document forgery scheme are exposed as an false pretense.

2013

8

29. Michael A. Carpenter was personally informed of the forgery scheme by Florida Attorney General Bill McCollum by letter dated October 12, 2010. He knows that the Debtors are engaged in the forgery scheme sanctioned by the National Mortgage Settlement because the knowledge of AFI's General Counsel, William B. Solomon, is imputed to AFI of which Michael A. Carpenter is the CEO. In these proceedings, AFI is attempting to escape liability for its direct involvement in the forgery scheme in exchange for a net contribution of 1.1 billion dollars to the bankruptcy estate.[3]

30. Insofar as the forgery scheme is concerned, AFI has allowed foreclosures based upon forged mortgage assignments to continue before and after arranging to peel off its mortgage subsidiaries and throw them into bankruptcy to "ring-fence" its legacy mortgage liabilities (to investors in what are now known to be empty REMIC trusts and to property owners for directing the scheme to forge mortgage assignments to make it appear that the mortgage collateral was delivered to the trusts and government sponsored enterprises, when no such delivery of collateral took place.

31. By having an employee of GMAC Mortgage, LLC forge the assignment of the fictitious Haffey mortgage to Deutsche Bank based upon a note specially endorsed to what it is now Ally Bank, the alter ego nature of the relationship between AFI, Ally and these Debtors can no longer be denied.

---

[3] 2.1 billion dollars in exchange for release of Debtors' claims against it minus its priority claim for purportedly extending credit to its subsidiaries already paid under order dated July 29, 2013 as Doc. 4404 in these proceedings.

32. By having an employee of GMAC Mortgage, LLC forge the assignment of the fictitious Haffey mortgage, AFI further demonstrates that it is acting in concert with Deutsche Bank to illegally foreclose on collateral which was not delivered to the REMIC Trust prior to the trust closing date, exposing the collaboration between Deutsche Bank and AFI in the racketeering conspiracy which includes mail fraud in violation of 18 USC sec. 1343, wire fraud in violation of 18 USC sec. 1341 and identity theft in violation of 18 USC sec. 1028. This revelation makes a mockery of these proceeding in which Deutsche Bank pretends to have been trustee of a bankruptcy remote, passive REMIC, when it is actively pursuing the confiscation of the Haffey farm on a forged mortgage assignment based upon a fictitious note payable specifically to Ally Bank, formerly known as GMAC Bank.

33. It is true that the Haffeys have tried to explain the illegal loan transaction in several proceedings, all of which are on appeal, but their true claim has never been adjudicated because it has been fraudulently concealed from the courts and from the Haffeys themselves, by misdirection designed by AFI and its subsidiaries, pretending to appear as Deutsche Bank. The pathetic failure of the attorneys for Deutsche Bank to investigate the facts and apply the law to the fictitious and forged documents is the cause of the multiplication of actions in the Haffey matter.

34.    Under the Kentucky law, the mortgage follows the note if the note represents indebtedness.4  On September 25, 2009 GMAC Mortgage, LLC employee Kelleher,

---

4 The question in Kentucky is not whether a Mortgage is perfected with a recording in the public record, but rather whether it is enforceable as evidenced by a valid underlying debt. This issue has recently been addressed with Debtor and Deutsche Bank's joint counsel law firm, BABC on the losing side on behalf of Debtor GMAC Mortgage LLC:

fraudulently purporting to be an officer of MERS (which has no officers or employees) executed

an Assignment of Mortgage which was authenticated by Sally Nelson, another GMAC

Mortgage, LLC employee, who falsely claims to have authenticated the instrument by

identifying the MERS corporate seal on the instrument when no seal is affixed thereto to

Deutsche Bank as a generic "Trustee" without identifying the REMIC trust of which Deutsche

Bank is purportedly the Trustee. The forged Assignment of Mortgage is void and has not legal

effect greater than a blank piece of paper in civil proceedings, yet the litigation process has been

entirely infected by the fraudulent claims of AFI, its subsidiaries and its collaborator, Deutsche

Bank to the extent that full and fair adjudication the matter could not be had. Furthermore, the

*precise issue* of the liability of the Debtors' estate for the damages suffered by the Haffeys for

years of litigation based upon an ongoing crime, in which the relationship between the parties

taking the fraudulent actions against the Haffeys have been concealed by fictitious and forged

documents upon which the attorneys for the fraud parties continue to proceed as if they were

authentic, has never been adjudicated.

---

Under Kentucky law, without evidence of debt, there is no valid, enforceable mortgage. "A mortgage may be enforced only by … a person who is entitled to enforce the obligation the mortgage secures." Restatement (Third) of Property: Mortgages, §5:4 (1997). "[A] mortgage is merely incident to the debt or obligation it is given to secure[.]" *Warning's Ex'r v. Tabeling*, 280 Ky. 232, 133 S.W.2d 65, 67 (1939); *see also Grafton v. Shields Mini Markets, Inc.*, No. 2009-CA-001862-MR, 2011 WL 112833, *5 (Ky. Ct. App. Jan. 14, 2011). A mortgage is valid and enforceable only if the underlying debt continues to be an enforceable obligation. *Craddock v. Lee*, 61 S.W. 22 (Ky. 1901). "[W]ithout the debt, there is no mortgage." *Wells Fargo Fin. Ky., Inc. v. Thomer*, 315 S.W.3d 335, 339 (Ky.Ct. App. 2010); *see also Peoples Bank of Polk Cnty. V. McDonald (In re Maryville Sav. & Loan Corp.)*, 743 F.2d 413 (6th Cir. 1984).

*Rogan v. Litton Loan Serv., L.P. (In re Collins)*, 456 B.R. 284, 296 (B.A.P. 6th Cir. 2011).

34. Debtors assert that the claim of Shane M. Haffey is barred by res judicata or

collateral estoppel. The same standards apply to both res judicata and collateral estoppel, except

that res judicata bars relitigation against the same party and collateral estoppel bars relitigation

against other parties in privity with the original party to the precise same action when the

judgment is final. Debtors assert that the judgments in the District Court for the Eastern District

of Kentucky may be treated as final, even though they are on appeal to the United States Court of

Appeals for the Sixth Circuit. "Finality of judgment" is but one prong of the test for the

doctrines of res judicata and collateral estoppel.

35. In N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n (DPOA), 821 F.2d

328 (C.A.6, Mich., 1987) the Sixth Circuit Court of Appeals held,

"The doctrine of collateral estoppel dictates that 'once a court has decided an issue of fact
or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on
a different cause of action involving a party to the first case.' Allen v. McCurry, 449 U.S. 90, 94,
101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); see generally C. Wright, Law of Federal Courts
678-96 (4th ed. 1983).
   Before collateral estoppel may be applied to bar litigation of an issue, four specific
requirements must be met:
      (1) the precise issue raised in the present case must have been raised and actually
litigated in the prior proceeding;
      (2) determination of the issue must have been necessary to the outcome of the prior
proceeding;
      (3) the prior proceeding must have resulted in a final judgment on the merits; and
      (4) the party against whom estoppel is sought must have had a full and fair
opportunity to litigate the issue in the prior proceeding."

36. Debtors have entirely failed to show that the precise issue, which is the liability of the

Debtors, their nondebtor parent companies, and their affiliates for continuing to litigate on a

12

fictitious loan supported by a forged mortgage assignment, has been adjudicated and that Shane M. Haffey has had a full and fair opportunity to litigate the issue in the proceeding now on appeal to the United States Circuit Court for the Sixth Circuit. The Debtors claims of finality are additionally disingenuous as GMAC Mortgage LLC and Deutsche Bank, as dually represented by the same law firm, currently have pending before the 6th Circuit, a Motion to Remand the cases, for further consideration and to re-open the finality of the Summary Judgment in relation to the 2009 lien enforcement (foreclosure) case.

37. Debtors contend, "Following each such dismissal, Borrowers filed meritless and nonsensical motions to reconsider and motions to vacate or amend, which substantially increased the cost of defending these claims." First of all, the Haffeys are not "borrowers." Debtors are seeking to apply their broad definition of "borrower"[5] contained in their Chapter 11 Plan which defines "borrower claims" in part as (i) Claims of a Borrower arising from or relating to any alleged act or omission or any other basis of liability of any Debtor (or any predecessor) in connection with the origination, sale, and/or servicing of a mortgage loan originated, sold, consolidated, purchased, and/or serviced by any Debtor. . . [6]  It is obvious that the Debtors themselves are confused about their relationship to the Haffeys, yet they complain that their lawyers do not understand the Haffeys' litigation claims in the several actions now pending on appeal. It is the Debtors who have created the nonsense in all foreclosure proceedings founded upon forged mortgage assignments. They and their parent companies and affiliates designed the

_____

[5] Debtors' definition of "borrower" appears on page 9 of the Chapter 11 Plan, which provides at definition 28: "Borrower" means an individual whose current or former mortgage loan was originated, serviced, sold, consolidated, or owned by any of the Debtors.

[6] Chapter 11 Plan, page 9

13

obfuscation which they now complain the Haffeys were not able to fully penetrate and describe,
so the Haffeys would try to explain the wrongs being done to them on reconsideration when the
courts would misapprehend their claims.

38.   By willful blindness or collusion of counsel for the mortgage servicer, GMAC
Mortgage, LLC never examined the validity of the loan transaction, ignored the invalidity of the
transaction and/or deliberately relied upon forged documents and argued a position which could
only have merit if the mortgage documents had been executed on May 14, 2007 and were not
forgeries and if the September 25, 2009 forged assignment of mortgage from MERS to Deutsche
Bank, put the Haffeys in a position of having to describe fraudulent transactions, which can
indeed sound nonsensical if one assumes that the forged documents are authenthic. The
Claimant Haffey can now prove that the attorneys representing the Debtors and Deutsche Bank,
at Bradley, Arant, Boult, Cummings, LLP (hereinafter BABC) have been complicit in the
scheme to defraud the Haffeys by litigating against them on fictitious and forged documents
because, at long last, the Debtors have admitted, for the first time in these proceedings, on
August 26, 2013, that the loan documents were not executed on May 14, 2007, as they have
previously, continuously maintained.

39.   Until August 26, 2013, the Debtors did not even acknowledge the true date that the
mortgage documents were signed. The English language is lacking in sufficient vocabulary to
describe the transaction which occurred, but best efforts will once again be attempted below.

40.   Shane M. Haffey can now accurately describe the basis for his Proofs of Claim
arising from a loan transaction which never took place. No transaction ever took place on May
14, 2007. The transaction which took place on May 18, 2007 was fraudulently induced. Bank

14

of Bluegrass assigned a mortgage dated May 14, 2007 to MERS, when MERS could not have

been the assignee of the mortgage because MERS has never claimed an interest in any

underlying debt, nor did it have any interest, legal or equitable, in the note. The note was not

signed on May 14, 2007. The Note presented to the Court is endorsed specially to GMAC (now

Ally) Bank and the *nonexistent* May 14, 2007 mortgage was fraudulently assigned to MERS.

Bank of Bluegrass took funds from GMAC Bank in exchange for fraudulently procured

documents for which no consideration was given to the Haffeys because the *transaction which*

*did not occur.* On May 14, 2007, Robert B. Jones created a mortgage assignment in favor of

MERS, which is a forgery under Kentucky Revised Statutes sec. 516.030.   GMAC Mortgage,

LLC refused to acknowledge the frauds being committed upon the Haffeys for which the Haffeys

have been seeking judicial relief.   On September 25, 2009, Patricia Kelleher, an employee of

GMAC Mortgage, LLC forged a mortgage assignment pretending to be an officer of MERS,

when she knew that she was not an officer of MERS, in violation of Kentucky Revised Statutes

sec. 516.030.[7]  Deutsche Bank is not the lawful assignee of the mortgage interest, but has

---

[7] Kentucky Revised Statutes sec. 516.030. which provides, in relevant part:
(1) A person is guilty of forgery in the second degree when, with intent to     defraud,
deceive or injure another, he falsely makes, completes or alters a written instrument, . . .
which is or purports to be or which is calculated to
become or to represent when completed:

(a) A deed, will, codicil, contract, assignment, commercial instrument, credit card or
other instrument which does or may evidence, create, transfer, terminate or otherwise
affect a legal right, interest, obligation or status; or

(b) A public record or an instrument filed or required or authorized by law to be
filed in or with a public office or public employee; . . .

15

proceeded to attempt to foreclose on Shane M. Haffey's family farm on a note specially endorsed to GMAC Bank, now known as Ally Bank. As a result of the fictitious loan and the forged mortgage assignments, Shane M. Haffey has had his credit ruined and his peaceful enjoyment of his home and farm repeatedly violated. Furthermore, first Bank of Bluegrass and then GMAC Bank, now known as Ally Bank, stole the identity of Shane M. Haffey and used it without his knowledge and consent, repeatedly transmitted forged documents by wire and mail in order to create a false claim against his farm, which was illegally transferred to Deutsche Bank on behalf of a trust which has no lawful claim on the collateral. The conduct of the Debtors, their parents and affiliates is extreme and outrageous and entitles Shane M. Haffey to punitive damages.

41. Shane M. Haffey is not a vexatious litigant, but is a family farmer seeking to save his farm from the confiscation thereof under a *fictitious* loan transaction, supported only by *forged* documents, which he has not previously been able to establish until now. Thus far, and until the Declaration of GMAC's in-house counsel in these Proof of Claim proceedings, Haffey has been on the receiving end of vexatious litigation in regards to the collusion and conspiracy of the Debtors with Ally Bank, AFI, Deutsche Bank and the BABC law firm. At this late stage of the proceedings, by review of Debtors' litigation counsel of what Debtors have known all along has been admitted: that the documents upon which all the litigation has proceeded were not, in fact, signed on May 14, 2007, but were actually signed on May 18, 2007 and the May 14, 2007 are forgeries.

---

42. No final judgment upon full and fair opportunity to be heard has yet been entered by any court on the true facts of the fictitious loan transaction because the real date upon which the loan documents were signed was never admitted until August 26, 2013, in the Debtors' Objection to Haffeys' claims. That admission, that the loan documents were signed on May 18, 2007, four (4) days after Bank of Bluegrass officer William Allen assigned the mortgage to MERS is critical to the full and fair litigation of the issues and which has not yet been heard. Shane M. Haffey has been denied full and fair litigation of the issues because the proceedings had to date have been founded upon forged documents representing a loan transaction which did not take place on May 14, 2007, as the Claimant has asserted all along. By proceeding upon forged documents representing a fictitious loan transaction, Shane M. Haffey has been denied his constitutional rights under the Constitution of the United States to petition the courts for redress of his grievances under the First Amendment and to procedural and substantive due process under the Fifth Amendment. It is impossible for due process to coexist with deliberate fraud upon the courts, whereby the proponent of the frauds prevents the opponent of the frauds from actually litigating the real issues at an evidentiary hearing at which the forged documents may be exposed. It is only by happenstance that Debtors' litigation counsel was not aware of the nature of the frauds that she admitted the key fact essential to full and fair litigation: that the documents sold and re-sold in the securitization process were not executed on May 14, 2007.

WHEREFORE, Shane M. Haffey respectfully responds to the Debtors' Objection to his claims and requests an evidentiary hearing at which time he will prove the validity of his claims.

17

Dated at Madison, Wisconsin this 23rd day of September, 2013.

*/s/ Wendy Alison Nora*
Wendy Alison Nora
Co-counsel for Shane M. Haffey
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
(612) 333-4144
FAX (608) 497-1026
accesslegalservices@gmail.com

## UNSWORN DECLARATION OF SERVICE

The above-captioned document filed by CM/ECF on September 23, 2013 and was thereby served all parties and their counsel capable of service by CM/ECF in these proceedings.

*/s/ Wendy Alison Nora*
Wendy Alison Nora

18

# EXHIBIT C

# EXHIBIT A



# STATE OF FLORIDA

**BILL McCOLLUM**
**ATTORNEY GENERAL**

October 12, 2010

Mr. Michael Carpenter
Chief Executive Officer
GMAC Mortgage, LLC
1100 Virginia Drive
Ft. Washington, PA 19034

Dear Mr. Carpenter:

As Attorney General of the State of Florida, I am writing you to express my concern for Florida's economic future and the credibility of Florida's judicial foreclosure system as a result of the actions of your company – actions that have affected the integrity of title to real property for Florida's homeowners as well as the foreclosure process in Florida.

I was distressed to learn from media reports that your company may have engaged in filing faulty affidavits in foreclosure cases in Florida courts with regard to ownership of promissory notes and affidavits that attested to personal knowledge of facts when, in fact, the affiant had no such personal knowledge. The net effect of these actions, among other things, has been to cast a shadow on the title to these properties which is of such proportions that at least one major title company is now refusing to write title insurance on foreclosed properties. Even more disturbing is that some of these foreclosed properties have already been sold and resold, and now their titles are in question, which may substantially slow the economic recovery for the citizens of Florida.

All of this has been compounded by the impact of the recently announced moratoria on foreclosures by several mortgage servicers and the plethora of private litigation that has already commenced. In my view, the moratoria and the private litigation are counterproductive to obtaining the swift solution necessary to address this serious problem facing Florida's already fragile economy.

Mr. Michael Carpenter
Page Two
October 12, 2010


I am requesting that you come to Tallahassee to meet with me as soon as possible to discuss ways to promptly and effectively redeem the integrity of the foreclosure process and ensure the marketability of real estate titles in Florida. I realize that correcting the faulty affidavits and reopening many of the foreclosure cases may take many months, even years given the state of our overburdened court system. Florida cannot wait that long to correct the linchpin of our economic recovery – clearing the foreclosure backlog. I look forward to our discussion and trust you will assist us in our efforts to come up with a creative solution to restore Floridians' faith in the judicial foreclosure process as well as maintaining the viability and marketability of real property titles in Florida.

I look forward to meeting with you.

Sincerely,

Bill McCollum

# EXHIBIT D

Wendy Alison Nora
ACCESS LEGAL SERVICES
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
Telephone: (612) 333-4144
Facsimile: (608) 497-1026

Hearing Date:   November 7, 2013
Response Date:  September 23, 2013

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

---

In re

Residential Capital, LLC *et al.*,

Debtors.

Chapter 11
Case No. 12-12020 (MG)

Administratively
Consolidated

---

## DECLARATION OF TENANT BY ENTIRETY SHANE HAFFEY
## IN RESPONSE TO OBJECTION TO CLAIMS 2582 AND 4402
## IN RELATION TO HIS FAMILY FARM

I, Shane Haffey, pursuant to 28 U.S.C. §1746, in Response to the Objection to Claims

2582 and 4402 state the following:

1. I am the owner as a tenant by entirety of the family farm located at 3250 Delong

Road, Lexington, (Fayette County) Kentucky 40515.

2. The copy of a purported "Note" dated May 14, 2007, used as an Exhibit as

evidence to attempt to fraudulently procure a judicial deed transfer, was filed in the

public record by attorneys solely retained by GMAC Mortgage LLC. *See. Case 5:09-*

*00362-JBC, Doc. #1-3 filed 11/12/09.*

3. I did not sign "Note."

4. The May 14, 2007, "Note" bears the name of Heather Haffey. The co-owner of

the farm is my wife, Heather McKeever.

5. My wife did not sign the May 14, 2007 "Note."

6. The "Note" is a forgery.

7. The copy of a purported "Mortgage", dated May 14, 2007, used as evidence to attempt to fraudulently procure a judicial lien transfer, was filed in the public record as an Exhibit as evidence by attorneys soley retained by GMAC Mortgage LLC.  *See. Case 5:09-00362-JBC, Doc. #1-3 filed 11/12/09.*

8. The copy of a purported "Mortgage" was recorded in the office of the Fayette County County Clerk in Deed Book 6084  Page 154 by an employee of GMAC Mortgage LLC.

8. I did not sign the May 14, 2007 "Mortgage."

9. The May 14, 2007 "Mortgage" bears the name of Heather Haffey.  The co-owner of the farm is my wife, Heather McKeever.

10. My wife did not sign the May 14, 2007 "Mortgage."

11. The "Mortgage" is a forgery.

12. The statements made in the Response to the Objection are true and correct to the best of my knowledge.

13. I incorporate into this Declaration, all previous Declarations entered into the record of this case, and contained in my Proof of Claim and Motion to Enforce/Clarify the Stay.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that all of the foregoing is true and correct to the best of my knowledge.

Executed on this the 23rd day of September, 2013.

Shane Haffey

2