Hearing Date: February 6, 2014 at 10:00 a.m. (ET)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Adam A. Lewis
Norman S. Rosenbaum
Daniel J. Harris

*Counsel for The ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**THE RESCAP BORROWER CLAIMS TRUST'S
SUPPLEMENTAL REPLY IN SUPPORT OF DEBTORS'
OBJECTION TO PROOF OF CLAIM NO. 3835 FILED BY BECKY SPENCE**

The ResCap Borrower Claims Trust (the "**Borrower Trust**"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] (the "**Plan**")[1] in the above captioned bankruptcy cases (the "**Chapter 11 Cases**"), hereby submits this supplemental reply (the "**Supplemental Reply**") in further support of the reply [Docket No. 6090] (the "**Reply**") to the response [Docket No. 5897] (the "**Spence Response**") and the supplemental response [Docket No. 6330] (the "**Spence Supplemental Response**") of Becky

---

[1]   The Plan was confirmed by order of this Court dated December 11, 2013 [Docket No. 6065] and the effective date of the Plan occurred on December 17, 2013.  The Plan provides for the creation and implementation of the Borrower Trust.  Among other things, the Borrower Trust is responsible for prosecuting objections to Borrower Claims, including those objections previously filed by the Debtors.  *See* Plan, Art. IV.F.

1

ny-1127384

Spence (the "**Claimant**") to the *Debtors' Objection to Proof of Claim No. 3835 Filed by Becky Spence* [Docket No. 5105] (the "**Objection**").[2]  In support of the Supplemental Reply, the Borrower Trust respectfully states as follows:[3]

## PRELIMINARY STATEMENT

1. After being given a *third* opportunity to support her claim against the Debtors – this time represented by counsel – Claimant fails both factually and legally to establish any liability of the Debtors.  What is clear now is that, in light of the conclusive contrary evidence submitted by the Debtors in the Reply, Claimant has wholly abandoned her "show me the note" theory, upon which the State Court Action and Claim originally were based, now relying solely on the illusion that Claimant was harmed by the foreclosure process and related activities undertaken by the Debtors and their representatives.  The Claim, as supplemented by the Spence Response and the Spence Supplemental Response, however, fails to state a claim against the Debtors under applicable Missouri law.

2. As an initial matter, the Spence Response and Spence Supplemental Response should be stricken as improper attempts to amend the Claim long after passage of the General Bar Date, as argued in the Reply.  Even if the Spence Response and the Spence Supplemental Response are permitted, the Claim still fails to establish any liability of the Debtors to Claimant for several reasons.  <u>First</u>, Claimant incorrectly argues that the Debtors violated Missouri law when the Debtors, through their representatives, allegedly orally notified the tenants that they should no longer pay rent to Claimant.  There is no *per se* rule in Missouri that a lender must give *written* notice to tenants to perfect its right to collect rents directly from

---

[2]   Capitalized terms not defined in this Reply shall have the meaning ascribed to such terms in the Objection.

[3]   To the extent not addressed herein, the Borrower Trust incorporates by reference all arguments made by the Debtors in the Objection and the Reply.

2

ny-1127384

tenants or that a lender must *collect* the rents rather than merely exercise control over them. <u>Second</u>, Claimant's allegation that the foreclosure sales were "void" because of improper publication is wrong as a matter of fact and law. As explained below, the sales were *continued* and not *cancelled* and, in any event, improper publication is not a basis to void the sale under Missouri law. <u>Third</u>, Claimant has failed to submit any competent evidence of Homecomings' alleged misconduct or the basis for her purported damages and relies on inadmissible hearsay and unsworn testimony of material facts. Accordingly, the Objection should be sustained.[4]

**REPLY**

**A.    The Spence Response and Spence Supplemental Response are Improper Post-Bar Date Attempts to Amend the Claim**

3. As set out in the Reply, Claimant's effort to supplement – and, indeed, wholly transform – the Claim through the Spence Response and Spence Supplemental Response is an improper post-bar date attempt to amend the Claim as each fails to "relate back" to the initial Claim. *See* Reply ¶¶ 10-17. Now represented by counsel, Claimant ignores the issue raised in the Reply altogether and fails to address whether the Spence Response and Spence Supplemental Response satisfy the "relation back" doctrine.

4. The Spence Response and Spence Supplemental Response run afoul of applicable Second Circuit precedent regarding post-bar date amendments and must therefore be rejected. Reply ¶¶ 12-17. Accordingly, the Claim must be reviewed solely in the context of the "show me the note" theory in the Claim as originally filed. On that basis, the Claim must be

---

[4]   The Spence Supplemental Response also asserts that Homecomings "chilled" the sales by advertising the foreclosure sale prior to June 11, 2008. Spence Supplemental Response ¶ 15. As set forth in the Reply, Claimant fails to allege, let alone substantiate by evidence, how the advertisements harmed her through the loss of equity or otherwise. *See* Reply ¶ 24.

3

ny-1127384

disallowed in light of Claimant's lack of factual support for it and the Debtors' conclusive contrary factual record set forth in the Reply.

B. **Even if Supplemented by the Spence Response and Spence Supplemental Response, Homecomings Properly Perfected Its Rights to the Rents by Allegedly Notifying Tenants Not to Pay Rent to Claimant**

5. Claimant asserts that Homecomings failed to activate, or perfect, its valid "Assignment of Rents"[5] because it allegedly only orally notified tenants that they should no longer pay rent to Claimant. Spence Supplemental Response ¶¶ 2-4. However, even if it is true that Homecomings only orally notified tenants not to pay rent to claimant, by doing so Homecomings activated its rights to the rents in accordance with applicable Missouri law, Claimant incorrectly asserts that Missouri law requires that the "lender must give the tenant a *written* notice of its demand for the rent" so as to "provide the tenant with enough information for the tenant to know who to pay and where to send the payment." Spence Supplemental Response ¶ 3 (emphasis added). This misstates the law.

6. To collect rents under an assignment of rents clause, Missouri law requires that the lender satisfy four requirements. *See In re Stoneridge Apts.*, 119 B.R. 706, 707 (Bankr. W.D. Mo. 1990). The fourth requirement compels the lender to either take possession of the premises *or* take an "action equivalent to taking possession." *Id.* Courts have held that taking an "action equivalent to taking possession" requires only that the lender give "notice that it is activating its rights under an assignment of rents clause." *Imperial Gardens Liquidating Trust v. Northwest Commons, Inc. (In re Northwest Commons, Inc.)*, 136 B.R. 215, 218 (Bankr. E.D. Mo. 1991); *see also In re Stuckenberg*, 374 F. Supp. 15, 17 (E.D. Mo. 1974). Contrary to Claimant's

---

[5] Claimant concedes that the documents executed by Claimant in favor of Homecomings contain an "Assignment of Rents" clause that permitted Homecomings to inform tenants not to pay their rent to Claimant once Claimant had defaulted. Spence Supplemental Response ¶ 2 ("The Deeds of Trust held by Homecomings did contain a provision for an assignment of the rents.").

contention, however, Missouri law does not specifically define what *kind* of notice is necessary to take an "action equivalent to taking possession." Moreover, Claimant cites no precedent for the proposition that notice must be in written form.[6]

7. Homecomings effectively exercised control over the rents by informing the tenants that they should no longer make their rent payments to Claimant. Furthermore, Claimant cannot show any damages, a sine qua non of a tort claim in Missouri, as the Debtors previously showed. Reply ¶ 24, n.2. Claimant says she used the rents to maintain the houses. Spence Supplemental Response ¶ 6. If anyone was harmed by a maintenance shortfall, it was the lender, who arguably ended up with a property worth less than it might have been after foreclosure, not Claimant. Accordingly, Claimant cannot support a claim under Missouri law for tortious interference, breach of contract, or any other legal theory.

C.   **The "Continued" Foreclosure Sales Cannot be Voided Under Missouri Law**

8. Claimant also appears to assert a claim against Homecomings relating to the publication of notice of the foreclosure sales on the Properties. Spence Supplemental Response ¶ 10. Claimant argues that publication notice of the foreclosure sales on each of the seven Properties was improper and, as a result, the sales were "void" and Claimant was "damaged by Homecomings' unlawful taking" of the properties. *Id.* Claimant's contentions are neither supported by Missouri law nor the facts of the dispute.

9. Missouri law requires that a foreclosure sale be published in accordance with Mo. Rev. Stat. § 443.320. *See* Mo. Rev. Stat. § 443.320. This section provides that notice of a foreclosure sale be set forth in a published notice that must "set forth the date and book and

---

[6] While the lender in *Northwest Commons* notified tenants by mail of its intent to exercise its rights under an assignment of rents clause, the court did not announce a *per se* rule that notice must be in written form. *Id.* at 218.

page of the record of such mortgages or deeds of trust, the grantors, the time, terms and place of sale, and a description of the property to be sold, and shall be given by advertisement, inserted for at least twenty times, and continued to the day of the sale. . . ." *Id.* If a sale is advertised for one date but such date is continued (as opposed to cancelled), Mo. Rev. Stat. § 443.355.1 permits a trustee to go forward with the sale without readvertisement: "A trustee exercising a power of sale granted in any security instrument may, in his discretion, continue the sale without readvertisement or mailing additional notice by announcing or causing to be announced on the day and at the time and place of sale the fact of such continuance." *Id.*[7]

        10.    Claimant does not dispute that the initial foreclosure sales that were scheduled to take place in May 2008 were properly advertised. However, Claimant contends that the June and July 2008 sales should have been readvertised in accordance with Mo. Rev. Stat. § 443.320 rather than be permitted to go forward as continued sales without readvertisement in accordance with Mo. Rev. Stat. § 443.355.1. Spence Supplemental Response ¶ 10. However, in contrast to the unsubstantiated statements made by Claimant in the Spence Response and the Spence Supplemental Response that the sales were *cancelled*, the documentation provided by Claimant supports the conclusion that the sales were merely *continued* and thus did not need to be readvertised.[8]

        11.    From a legal perspective, Claimant takes the position that the foreclosure sales are void for failure to strictly comply with Mo. Rev. Stat. §§ 443.320, 443.325, and

---

[7]    *See also* Mo. Rev. Stat. § 443.355.2 ("Only one continuance shall be made under the authority granted by this section, which continuance shall be for a period of not to exceed seven days.").

[8]    For example, the Deed of Trust for the property at 3877 S. Homewood Avenue attached as page 2 of Exhibit A to the Spence Supplemental Response provides that the foreclosure was conducted on June 11, 2008, "having been continued from May 7, 2008." Spence Supplemental Response, Ex. A at 2 (emphasis added). In fact, four of the other Deeds of Trust indicates that the sale of each property was "continued" from a previous date. *See id.* at 8, 14, 20, 30.

6

ny-1127384

443.355.  Spence Supplemental Response ¶ 10.  However, the Missouri Court of Appeals has held that a *per se* violation of Mo. Rev. Stat. § 443.355 is not a basis to void a foreclosure sale where initial notice of a sale was provided.  *See Manard v. Williams*, 952 S.W.2d 387, 390-92 (Mo. 1997).  In *Manard*, the defendant sought to void a foreclosure sale on the basis that it was continued more than once and took place more than a week from the first continuance in violation of Mo. Rev. Stat. § 443.355.2.  *Id.* at 390.  The Missouri Court of Appeals rejected the defendant's argument, finding that a violation of § 443.355 alone is insufficient to declare a foreclosure sale void where the sale was previously advertised accordance with Mo. Rev. Stat. § 443.320 and 443.325.  *Id.*  In so holding, the court credited the fact that a "mortgagor and any prospective purchasers attending the sale would be told the new sale date or they could find out where to inquire about a new date.  At a minimum, those interested would know that another sale was imminent and would know the time frame in which it was to be held."  *Id.*

    12. There is no doubt that Homecomings, through its representatives, advertised the dates of the initial foreclosure sales.  *See* Spence Supplemental Response, Ex. A.  Thus, under *Manard*, any purported deficiency in readvertisement under Mo. Rev. Stat. § 443.355 is not a basis to void the foreclosure sales on the Properties, nor support the conclusion that the Properties were unlawfully taken from Claimant.  Moreover, any potential purchaser of the Properties would likely have become aware of the new foreclosure sale dates.  *Manard*, 952 S.W.2d at 391.  Accordingly, Claimant cannot state a claim against the Debtors arising from the advertisement of the foreclosure sales.[9]

---

[9] In support of her argument that Homecomings improperly foreclosed on her Properties, Claimant repeatedly takes the position that the sale of the property located at 3871 S. Cottage Ave. occurred prematurely on June 11, 2008 after Homecomings, through its representatives, agreed to extend the deadline to pay the reinstatement amount to June 17, 2008.  Spence Supplemental Response ¶¶ 11, 14.  However, the Deed of Trust for this property clearly indicates that the sale occurred on *June 18, 2008 after the reinstatement quote expired*.  *Id.*, Ex. (Cont.'d)

13. Moreover, even if the foreclosure sales occurred after the permitted seven day period for a continuance without readvertising under Missouri law, Claimant has not shown how she was harmed if the notices were not readvertised. Claimant was clearly aware of the expiration dates for the reinstatement quotes on the Properties and failed to make the necessary payments in advance thereof.

**D.    The Claim Is Unsupported by Competent Evidence**

14. As the Court is aware, the party objecting to the proof of claim "bears the initial burden of providing evidence to show that the proof of claim should not be allowed." *In re MF Global Holdings, Ltd.*, Nos. 11-15059 (MG), 11-02790 (MG) (SIPA), 2012 WL 5499847, at * 3 (Bankr. S.D.N.Y. Nov. 13, 2012). If the objecting party satisfies its initial burden and "the presumption of *prima facie* validity is overcome—e.g., the objecting party establishes that the proof of claim lacks a sound legal basis—the burden shifts to the claimant to support its proof of claim unless the claimant would not bear that burden outside of bankruptcy." *Id.* (citing *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom.*, *Peter J. Solomon Co. v. Oneida, Ltd.*, No. 09-CIV-2229 (DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010). Once the burden is shifted back to the claimant, "it must prove its claim by a preponderance of the evidence. . . ." *Id.* (citations omitted)).

15. As the Debtors, and now the Borrower Trust, have objected to the Claim with supporting evidence, Claimant bears the burden to establish the enforceability of her claims by a preponderance of the evidence. However, the Spence Response and the Spence Supplemental Response fail to provide any competent, admissible proof of the alleged missing notes, discussions, communications, representations, arrangements, or damages described in the

---

A at 20; *see also* Response, "Restatement Quote" for property at 3871 S. Cottage Avenue, indicating that it was "[v]alid only through 5pm on: Tuesday, June 17, 2008."

Claim, or the Claim as modified by the Spence Response and the Spence Supplemental Response. In fact, many of the statements in the Spence Supplemental Response are inadmissible hearsay that should not be considered by the Court. *See, e.g.*, No. 08-10855bf, No. 08-0175, *Mohsin Mahmud v. JTH Inv. Grp., LLC (In re Mahmud)*, 2008 WL 8099115, *6 (Bankr. E.D. Pa. Dec. 4, 2008) ("In general, factual allegations made in a proof of claim are out-of-court statements under Fed. R. Evid. 801. Thus, unless those allegations are non-hearsay under Rule 801(d) (*e.g.,* an admission by a party-opponent), or some exception to the hearsay rule is applicable, they may be inadmissible."); *In re Harmony Holdings, LLC*, 393 B.R. 409, 414 (Bankr. D.S.C. 2008). Moreover, many of these and other allegations consist only of naked, unsworn statements.[10] Neither kind of "evidence" is admissible or cognizable to contest the *prima facie* case in the Objection or Reply.

16.     Since Claimant now has counsel who helped prepare the Spence Supplemental Response, these shortcomings cannot be laid at the feet of a *pro se* claimant. The whole point of continuing the last hearing so that Claimant could rely on counsel was to give Claimant a chance to file a legally sufficient opposition. However, in the absence of admissible

---

[10] For example, Claimant fails to include an affidavit or declaration from a tenant to support the suggestion that Homecomings through its representatives "failed to advise the tenants to whom the rent should now be paid, the address of where to send the rent payments, and when the payments needed to be made." Spence Supplemental Response ¶ 4. Claimant also lacks a proper affidavit or declaration documenting and describing the numerous alleged phone conversations between Claimant and Homecomings suggesting that Homecomings agreed to cancel the foreclosure sales. Spence Supplemental Response ¶¶ 11, 12, 13. Claimant's reliance on a hypothetical damages calculation made up of loss of equity, loss of expenses, and loss of income is wholly unsupported by a sworn statement by Claimant or another expert who may be able to provide an opinion as to the purported losses attributed to Homecomings' alleged conduct in connection with the foreclosure sales on the Properties. Spence Supplemental Response ¶¶ 16-25. Finally, in connection with her alleged lost equity in her properties, Claimant equally fails to provide any evidence that she could have timely cured her defaults. Indeed, her evidence shows that the money she was expecting was available too late. Homecomings had no obligation in the meantime to eschew foreclosure on defaulted mortgages and had no obligation to grant her any continuances at all. *See* Reply ¶ 25.

evidence supporting the Claim, the Court must conclude that Claimant has not proved her claim by a preponderance of the evidence.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested in the Objection.

Dated: January 30, 2014  
      New York, New York

/s/ Norman S. Rosenbaum  
Gary S. Lee  
Adam A. Lewis  
Norman S. Rosenbaum  
Daniel J. Harris  
MORRISON & FOERSTER LLP  
1290 Avenue of the Americas  
New York, New York 10104  
Telephone: (212) 468-8000  
Facsimile: (212) 468-7900  

*Counsel for The ResCap Borrower Claims Trust*