Thomas J. Sinnickson                                    Hearing Date: February 20, 2014
176 Main Street                            Response Date/Time: February 4, 2014 at 4:00 p.m. ET
Center Moriches, New York 11934
(516) 647-4153
TJSinnickson@aol.com

Wendy Alison Nora
ACCESS LEGAL SERVICES
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
Telephone: (612) 333-4144
Facsimile: (608) 497-1026
accesslegalservices@gmail.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
RESIDENTIAL CAPITAL, LLC, et al.,
      Post-Effective Date Debtors                                Chapter 11
- - - - - - - - - - - - - - - - - - - - - - - - - - - -
RESCAP BORROWER CLAIMS TRUST,                        Case No. 12-12020-mg
      by  Peter Kravitz, Trustee,
v.
CAREN J. WILSON,
      Creditor-Beneficiary
----------------------------------------------------------------X

**DECLARATION OF ATTORNEY WENDY ALISON NORA IN SUPPORT OF
MOTION TO STRIKE OBJECTION FILED BY DISQUALIFIED  COUNSEL FOR
TRUSTEE AS  INITIAL RESPONSE OF CAREN WILSON TO OBJECTION TO
CLAIM #4754 IN THE RECORD OF KURTZMAN CARLSON CONSULTANTS, LLC
(KCC, LLC) AMENDED AS CLAIM 18 AND RENUMBERED BY KCC, LLC AS
CLAIM #7181 IN THESE PROCEEDINGS**

_____

      **NOW COMES** Caren Wilson,  by her attorneys Thomas J. Sinnickson of New York and

Wendy Alison Nora of Minnesota and Wisconsin, incorporates Ms. Wilsons' Response to the

Debtors' Objection to her Proofs of Claim filed on September 27, 2013 (Doc. 5222) by reference

as if fully set forth herein,  responds to the Objection of the Trustee of the Borrowers' Claims

1

Trust to her Proof of Claims #4754 and #7181 in the record of RESCAP Claims maintained by

Kurtzman Carlson Consultants, LLC (KCC, LLC) and shows the Court:

1.   Claim #4574 has been amended and replaced by Proof of Claim #7181 in these

proceedings and is moot.  Ms. Wilson will address the Objection of the Trustee of the Borrowers'

Claims Trust to Claim #7181.

2.   To the extent that her Proof of Claim #4754 embraced damages she suffered from the

Debtors attempts to illegally foreclose on her home through forged and perjured documents, as

well as a claim for disgorgement of profits taken by the Debtors and their affiliated entities by the

theft of her identity consisting of her mortgage loan documents to be sold and re-sold in the

"securitization" process without her knowledge and consent, from which the Debtors and their

collaborators profited by a factor of at least 15 times, her claim should have been properly

classified as unsecured.   The secured portion of her claim is the value of her home, which she

sought to secure by her claim in these proceedings against the Debtors' continuing illegal efforts

to confiscate her home on forged and perjured documents after the date of the Debtors'

bankruptcy filing, is stated on Proof of Claim #7181.  Ms. Wilson  has a post-petition claim for

violation of her civil rights under 42 USC sec. 1983 for state action in the illegal confiscation of

her home by foreclosure proceedings founded on forged, perjured and fictitious documents as

well as for illegal eviction, in which she was physically injured by state action, directly related to

the foreclosure initiated on forged documents, continued on forged documents after the date of

filing of the Debtors' bankruptcy proceedings and which was ultimately completed after the date

of the sale of the Debtors' servicing rights to Ocwen Financial Corporation.

3. Ms. Wilson's post-petition state and federal law claims, including, but not limited to,

violations of her First, Fourth, Fifth and Fourteenth Amendment rights under the United States

Constitution, actionable under 42 USC sec. 1983; Racketeer Influenced and Corrupt

Organizations (RICO) Act violations, actionable under 18 USC sec. 1964; state claims for abuse

of legal process and  conversion of her real estate title and seizure of her personal property,

including her files necessary to prove her claims against Debtors, their assignees, agents and

affiliates; common law fraud; negligent, reckless or willful and wanton personal injury;

intentional infliction of emotional harm;  and for punitive damages are not subject to the

automatic stay,  but may nonetheless be brought in a court with jurisdiction over her post-petition

claim, which will be commenced for civil rights violations by the RESCAP Debtors, their

assignees, agents and affiliates against parties liable for her damages, whose liabilities have not

been discharged or indemnified by this Court's Order of December 11, 2013, confirming the

Second Amended Chapter 11 Plan (Doc. 6065.)

4.  Once again in these proceedings, the RESCAP Debtors are attempting to deprive Ms.

Wilson of her First and Fifth Amendment rights under the United States Constitution to petition

the government for redress of grievances in judicial proceedings and to procedural and

substantive due process, which requires that she have notice and opportunity to be heard before

she can be deprived of her property, which consists of both the real estate illegally confiscated on

forged and perjured documents and her claims in these proceedings.  They now attempt to

accomplish this unconstitutional goal by having their bankruptcy and litigation counsel appear on

behalf of the Trustee of the Borrowers' Claims Trust to challenge her Claim #7181.  This counsel

for the Debtors cannot do.

5.  Ms. Wilson is a beneficiary of the Borrowers' Claims Trust.   The RESCAP Debtors

3

are the grantees of 57.6 Million Dollars to the Borrowers' Claims Trust, irrevocably, in exchange

for this Court's Order dated December 11, 2013 (Doc. 6065) which includes the discharge of the

Debtors' liabilities to Ms. Wilson and a third party release in favor of its parent company, Ally

Financial, Inc. (AFI).

6.    The grantors to the Borrowers' Claims Trust have no standing to challenge Ms.

Wilson's claim.  The Grantors irrevocably conveyed 57.6 Million Dollars to the Borrowers'

Claims Trust in exchange for the coveted third party release in favor of their parent company,

AFI, and discharge of the Debtors' liabilities to parties injured by their pre-petition securitization

schemes.   Ms. Wilson is one of the presumptive beneficiaries of the Borrowers' Claims Trust.

The Trustee of the Borrowers' Claims Trust has a fiduciary duty to Ms. Wilson and no duty

whatsoever to the RESCAP Debtors, who, as irrevocable grantors, have no standing to control

the distributions from the Trustee to the intended beneficiaries of the Borrowers' Claims Trust.

7.    Nevertheless, exhibiting what has become the typically-displayed efforts of the

RESCAP Debtors to assert domination and control over the property rights of those who they

have defined as "Borrowers" when they took control over the real estate assets of thousands of

homeowners on forged documents and perjured Affidavits, confiscating thousands of homes

throughout the nation through void judicial and nonjudicial foreclosure proceedings, and then

claimed to own those real estate assets as their own assets in these proceedings and liquidated

them with apparent judicial approval in the pre-confirmation phase of these proceedings, the

RESCAP Debtors now attempt to control the Borrowers' Claims Trust by having their

bankruptcy counsel, MORRISON & FOERSTER, LLP and litigation counsel, Lauren Graham

Delehey,   represent the Trustee of the Borrowers' Claims Trust in an attempt to defeat Ms.

Wilson's Proof of Claim #7181.

    8.   Debtors' bankruptcy counsel and litigation counsel are disqualified as a matter of law

from representing the Trustee of the Borrowers' Claims Trust because bankruptcy and litigation

counsel have already taken adversarial positions against Ms. Wilson in pre-confirmation

proceedings and now the Trustee of the Borrowers' Claims Trust owes Ms. Wilson, and all other

putative beneficiaries for which the Trust was granted,  a fiduciary duty.   Independent counsel

for the Trustee must be retained to review whether or not Ms. Wilson's Proof of Claim #7181

should be paid by the Trustee.  At the present time, Ms. Wilson is a presumptive beneficiary of

the Borrowers' Claims Trust and the Trustee owes a fiduciary duty to Ms. Wilson and no duty

whatsoever to the irrevocable grantors to the Borrowers' Claims Trust, the RESCAP Debtors,

whose counsel are disqualified by conflict of interest from representing the Trustee without a

written waiver of the conflict being provided by Ms. Wilson, the beneficiary, which she has not

been asked to provide and would be ill-advised to sign.

    9.   The RESCAP  Debtors sought to defeat the claims of homeowners whose real estate

interests were illegally confiscated upon forged and perjured documents, depriving them of full

and fair opportunity to be heard under the First and Fifth Amendments to the <u>United States</u>

<u>Constitution</u> so that they can cram claims for billions of dollars in damages into a "Borrowers

Trust" funded in the amount of approximately 57.6 millions dollars.   They waited to commence

their assault on "Borrower" Claims until the date they filed their Chapter 11 Plan, July 3, 2013.

Debtors' previous omnibus objections were facially routine, generally seeking relief from late-

filed claims [First Objection (Doc. 3573) and Fourth Objection (Doc. 3923) dated May 1, 2013, and Fifth Objection (Doc. 3924)]; duplicate claims [Second Objection (Doc. 3574 and Sixth Objection (Doc. 3925) and Ninth Objection (Doc. 3926?)] dated June 7, 2013; amended and superceded claims [Third Objection (Doc. 3575) dated May 1, 2013 and Seventh Objection dated June 7, 2013]; redundant claims (Doc. 3927)] and, then, "insufficiently documented" claims as to tax claims (Doc. Unknown)].

10.    On July 3, 2013, the RESCAP Debtors filed the Eleventh,[1] Twelfth,[2] Thirteenth,[3] Fourteenth,[4] Fifteenth,[5] Sixteenth,[6] and Seventeenth Omnibus Objections to Claim. The Seventh Omnibus Objection to Claims [Doc. 4151] sought relief from "misclassified" claims of "Borrowers." These Objections were filed on the date the Chapter 11 Plan was filed.

11.    On July 4, 2013, Debtors continued their assault on Borrower Claims with their Eighteenth (Doc. 4154), Nineteenth (Doc. 4155), Twentieth (Doc. 4156) and Twenty-First (Doc. 4148) Omnibus Objections to "Borrower" Claims, listing hundreds of claims as purportedly Omnibus Objection (Doc. 4199), they sought to disallow "Borrower" Claims for "insufficient

---

[1]  Doc. 4145: "Misclassified" Claims

[2]  Doc. 4146: "No liability-Paid and Satisfied" Tax Claims

[3]  Doc. 4147: "No liability (on their) Books and Records"

[4]  Doc. 4148: "No liability (on their) Books and Records" Tax Claims

[5]  Doc. 4149: "Insufficient Documentation" Tax Claims

[6]  Doc. 4150: "Redundant" Claims

6

documentation.[7]"   Again, on July 10, 2013, in their Twenty-Second .  On July 25, 2013, Debtors

filed their Twenty-Third Objection to "Borrower" Claims asserting no liability for the claims,

based on their "books and records.[8]"  On August 15, 2013, Debtors filed their Twenty-Fourth

(Doc. 4714) and Twenty-Fifth (Doc. 4715) Objections to "Borrower" Claims which have been

"Amended and Superceded."  On August 16, 2013, Debtors filed their Twenty-Sixth (Doc. 4734)

and Twenty-Seventh (Doc. 4735) Omnibus Objections to "Borrower" Claims for "insufficient

documentation"[9] and on August 19, 2013, Debtors again seek to violate the Bankruptcy Code and

abuse the processes of this Court by asserting grounds to disallow "Borrower" Claims on the

grounds that there is no such liability reflected on their books and records[10] in their Twenty-

Eighth Omnibus Objection.

    12.   On August 23, 2013, Debtors filed their Twenty-Ninth Objection to Late-Filed

Claims (Doc. 4891) and then, once again, on August 29, 2013, Debtors violated Bankruptcy Rule

3007(e) and seek to abuse the processes of this court, by filing another Omnibus Objection to

---

[7]  Bankruptcy Rule 3007(e) does not provide for an Omnibus Objection on the grounds that the documentation is insufficient.  The closest authority stated in Rule 3007(e) to that asserted by the Debtors is BR 3007(e)(6), which provides: (6) they [the claims] were presented in a form that does not comply with applicable rules, and the objection states that the objector is unable to determine the validity of the claim because of the noncompliance."  Debtors' Omnibus Objections fail to support their contention as required by BR 3007(f) (3) which requires the Debtors state the grounds of the objection to *each claim and provide a cross-reference to the pages in the omnibus objection pertinent to the stated grounds*.  Ms. Wilson was not provided with the objection so the objection was not cross-referenced.

[8]  Bankruptcy Rule 3007(e) does not provide for an Omnibus Objection on the grounds that the "Liability is Not Reflected in Debtors' Books and Records" and the Motion to Disallow Claims on that basis is without lawful authority.

[9]  See footnote 8, above.

[10]  See footnote 9, above.

"Borrower" Claims on grounds that they show <u>no liability for the claims on their books and records</u>, without any lawful authority for such an objection,[11] by filing Debtors' Thirtieth Omnibus Objection to Claims (No Liability Borrower Claims – Books and Records.)

13.   Caren Wilson received  Exhibit A attached to her Response (Doc. 5222)  on September 4, 2013.  Among other fraudulent assertions contained in Exhibit A is the Debtors' apparent assertion on page one of  Exhibit A by the Debtors that they are entitled to the relief requested.  They state, "The Objection requests that the Bankruptcy Court expunge and/or disallow one or more of your claims listed above under PROPOSED CLAIM(S) TO BE DISALLOWED AND EXPUNGED on the ground that the claim(s) is a liability not reflected in the Debtors'  books and records. Any claim that the Bankruptcy Court expunges and disallows will be treated as if it had not been filed and you will not be entitled to any distribution on account thereof."

14.   Furthermore, Exhibit A did not provide Ms. Wilson with a copy of the Debtors Objection, along with Notice of Hearing thereon.   They provided merely the Notice of Hearing with deadlines for the filing of any response, requiring the Claimant to serve herself with the Objection, with this language on page 5 of Exhibit A:

> If you wish to view the complete Objection, you can do so on the Bankruptcy Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the internet at www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov), or for free at http://www.kccllc.net/rescap. If you have any questions about this notice or the Objection, or if you would like to request a complete copy of the Objection at the Debtors' expense, please contact the Debtors' approved claims agent Kurtzman Carson Consultants, LLC at (888)

---

[11]  See footnote 9, above.

926-3479. CLAIMANTS SHOULD NOT CONTACT THE CLERK OF THE
BANKRUPTCY COURT TO DISCUSS THE MERITS OF THEIR CLAIMS.

15.   The Debtors have wholly failed to comply with Bankruptcy Rule 3007(a) which

provides:

> (a) Objections to Claims. An objection to the allowance of a claim shall be in
> writing and filed. ***A copy of the objection* with notice of the hearing thereon
> shall be mailed or otherwise delivered to the claimant**, the debtor or debtor in
> possession, and the trustee ***at least 30 days prior to the hearing***.  (Emphasis
> added.)

16.   Among other fraudulent assertions in Exhibit A is the statement that Ms. Wilson's

claim is unimpaired (Exhibit A, page 5, paragraph 2.)  Comparing pages 1 through 3 of Exhibit A

to the assertion on page 6, and without providing Ms. Wilson with the required copy of the

Debtors' Thirtieth Omnibus Objection to Borrower Claims on the grounds that they have no

liability on their books and records (for which there is no lawful authority) the confusion created

is obvious.  According to the Debtors' mailing to her, Ms. Wilson is (a) subject to having her

claim disallowed because Debtors' liability for her claim is not reflected in their books and

records (a wholly fictitious legal principle for which there is no lawful basis) or (b) she is not

entitled to vote on the Debtors' Chapter 11 Plan because her claim is unimpaired.   In order to

ascertain the meaning of the first three pages of Exhibit A, Ms. Wilson is instructed to obtain a

copy of the Debtors' Thirtieth Omnibus Objection herself or to contact the Debtors' agent at

telephone, which could delay the delivery of the Objection beyond the date for the response

which Debtors' purport to be authorized by law to set without supervision of this Court.

17.   Debtors had no legal authority to require a response to an Objection to a Proof of

Claim, the grounds for which were not recognized by law.  On October 9, 2013, Judge Glenn

wisely commented that he did not expect that the Debtors would maintain books and records on

claims for damages from racketeering activities at the Transcript of October 9, 2013 proceedings,

page 42, lines 9-13, Judge Glenn stated:

> 9                                                        . . . I
> 10 gets lots of -- I get these declarations from your firm that
> 11 say we've examined our books and records and there's no basis
> 12 for any liability. Well, that's really nice. I wouldn't
> 13 expect that your books and records show liability for RICO.

18.    The Debtors' Notice of Hearing on the Thirtieth Omnibus Objection to  Claims (No

Liability Borrower Claims – Books and Records) was mailed to Ms. Wilson and purports to have

been mailed to dozens of other persons, is a fraudulent document transmitted by mail with the

intent to defraud them into believing that there are grounds to disallow their Proof of Claims,

when no such grounds exist,  in violation of 18 USC sec. 1341.   The Thirtieth Omnibus

Objection was simply another example of the use of mail to defraud persons identified as

"Borrowers" by the Debtors, who loaned no money whatsoever, but took notes and mortgages as

collateral to be used for re-hypothecation by a factor believed to be of no less than 15 times the

face value of the collateral documents (the note and mortgage or deed of trust.)[12]   Wire fraud is

implicated in the scheme by which individuals' claims are falsely claimed to be subject to

disallowance for grounds not recognized by lawful authority, because the Debtors have posted

the Thirtieth Omnibus Objection (as well as the 13th , 22nd, 23rd, 26th and 27th Omnibus

---

[12]   The re-hypothecation factor could be infinite if the transactions occurred in the City of
London or other jurisdictions not subject to 140% Rule applied to such transactions within the United
States.

Objections) on the internet (wire fraud, in violation of 18 USC sec. 1343.)

19.   On December 13, 2006, Caren Wilson executed a note and mortgage, believing that she was obtaining a conventional mortgage loan for $236,000.00 at 6.75% interest which she would be able to pay over a term of 30 years.   She secured the purported loan with a deed of trust in favor of Homecomings Financial, Inc.  She believed Homecomings Financial, Inc. had provided consideration in exchange for the note and mortgage.   She obtained a second mortgage the approximate amount of $40,000.00 in order to improve the subject real estate located at 211 W. Chandler Street in Culpeper, Virginia 22701.   She improved the property by installing landscaping, including drainage, a second bathroom, a deck and other improvements, along with purchasing appliances, which are  her personal property, but which were confiscated and sold with the subject real estate.   The value of the subject real estate at the time she completed the improvements was approximately $350,000.00.

20.   Homecomings Financial, Inc. purported to originate the "loan," but the closing of the "loan" was a scheme to take Ms. Wilson's note and deed of trust under false pretenses that a loan was being made to her by Homecomings,  in order for Homecomings to immediately sell the collateral taken from Ms. Wilson for the purported loan in a process known as securitization.   At some time after the collateral closing, Ms. Wilson's note was endorsed "in blank."

21.   Homecomings Financial, Inc. was not the real party in interest in the original loan transaction, but was a "straw man" acting on behalf of the real party in interest, a securitization trust, which had already been funded by investors.  The funds of the investors were being held by the securities underwriters, Citigroup Global Markets and Morgan Stanley & Company

11

Residential Funding Securities, LLC, a portion of which were used to acquire Ms. Wilson's note

and mortgage through Homecomings Financial, Inc., standing in for the real party in interest

(straw man originator) at the purported loan closing.

22.    The purported loan closing was not what it was pretended to be.  It was not a

conventional loan transaction, but was a concealed securities transaction intended to deceive Ms.

Wilson into believing that Homecomings was a mortgage lender, when, in fact, Homecomings

was purchasing the securities consisting of Ms. Wilson's note and mortgage as collateral to back

unregistered securities which had already been sold by Citigroup Global Markets and Morgan

Stanley & Company Residential Funding Securities, LLC.

23.    At some point in the process known as "securitization," which was never authorized

by any positive law of the United States of America or any state thereof,  Ms. Wilson's note or an

imaged  copy of the note was endorsed by Judy Faber, claiming to be "Vice President" of

Residential Funding Company, LLC (RFC, LLC), who never had any duties beyond that of a

"Records Services Manager."  Exhibit B, pages 2 and 3 at  page 4, lines 16-20 and page 5, lines

4-15 of the condensed Deposition Transcript of Judy Faber taken on August 14, 2009 in Cause

No. 49D06-0703-MF-013045,  consolidated with 49D10-0609-PL-40167, before the Marion,

Indiana Superior Court entitled US Bank, N.A., as Trustee v. Robinson.

24.    Comparing Ms. Faber's testimony in Exhibit B to her testimony in  Exhibit C, Doc.

64-13 filed in the United States District Court for the Northern District of Illinois in U.S. Bank,

N.A. v. Wendy Cook, Case No. 1:07-cv-01544, it is evident that slightly more than one year

earlier than August 14, 2009, Judy Faber testified that she was "Vice President" of Residential

Funding Company, LLC, in her deposition taken in the *Cook* proceedings as recorded in the

Deposition of Judy Faber at, pages 10, 11 and 12 of Doc. 64-13 (pages 6 and 7 if the Deposition

Transcript not properly reproduced in electronic format) on June 2, 2008:

> 25.   Q. By whom are you employed?
> Case: 1:07-cv-01544 Document #: 64-13 Filed: 11/18/08 Page 10 of 53 PageID #:355
> [6]
> 1 A. Residential Funding Company, LLC.
> 2 Q. For how long have you been employed there?
> 3 A. Eleven years.
> 4 Q. And what's your position there?
> 5 A. Director of Records Management, the Minnesota
> 6 site.
> 7 Q. For how long have you held that position?
> 8 A. Eleven years.
> 9 Q. What are your duties and responsibilities in
> 10 that position?
> 11 A. I manage the records for the Residential
> 12 Funding Corporation. Basically, the physical
> 13 paper and the images that are created from
> 14 the physical paper, fulfilling requests for
> 15 those and then managing the physical
> 16 documents.
> 17 Q. Now, when you said you're the Director of
> 18 Records Management for the Minnesota office?
> 19 A. Uh-huh.
> 20 Q. Are there other offices of Residential
> Case: 1:07-cv-01544 Document #: 64-13 Filed: 11/18/08 Page 11 of 53 PageID #:356
> 21 Funding that maintain records that you are
> 22 not responsible for?
> 23 A. There are records services sites in Iowa and
> 24 in Pennsylvania. Those deal mostly with the
> 25 GMAC mortgage assets.
> Case: 1:07-cv-01544 Document #: 64-13 Filed: 11/18/08 Page 12 of 53 PageID #:357
> [7]

   25.   Ms. Faber's position had not changed between June 2, 2008 and August 14, 2009,

but as of the August 14, 2009 Deposition, Ms. Faber was calling herself a "Vice President and a

Director of Residential Funding Corporation or Residential Funding Company, LLC and GMAC

Mortgage Company, LLC."   A reasonable inference arises that between the dates of her

Deposition on June 2, 2008 and August 14, 2013, Residential Funding Company, LLC and

GMAC Mortgage, LLC decided that she should identify herself in the fictitious capacity of a

Vice President because her position as "Director of Records Management" did not conform to

the capacity in which her signature had appeared.

26.   It had long been established and well known that courts impute a level of official

authority to purported officers of corporations and might be more inclined to question the

capacity of a records manager to endorse notes valued in the hundreds of thousands of dollars to

[whomever] and [at an unknown time and date.]

27.   The "securitization" process purports to involve the bundling of mortgage loans into

pools and the designation of tranches which are purportedly designed to assign risk factors , and

then the underwriters of the securities sale purportedly issue "mortgage-backed" securities to

investors.   Mortgage insurance was the first line defense of the investors in the securitization

scheme and mortgage insurance claims effectively bankrupted the monoline insurance companies

when the securitization scheme began to unravel because promises made to homeowners by

mortgage brokers to refinance loans with adjustable interest rates were not fulfilled and millions

of mortgages were rendered unpayable by the deliberate manipulation of the London Interbank

Overnight Rate (LIBOR) on which the adjustable interest rates were based.  Credit default swaps

between counterparties derived from the underlying collateral consisting of the notes and

mortgages yielded huge profits to insiders who knew that the mortgages had been designed to fail

and that interest rates were manipulated to cause the loans to fail.  The purported Trustee of the

14

RALI Series 2007-QSI Trust, Deustche Bank, was a member of the LIBOR panel which

manipulated the United States interest rates in 2007.  (Exhibit A, attached hereto.)

28.   The engineered collapse of the residential mortgage market in the United States

resulted in the creation of the Troubled Asset Relief Program (TARP) at 12 USC sec. 5212, et

seq., by which the counterparties to the bad bets that the homeowners would not default (those

who were not in on the scheme to cause the defaults or chose to take the wrong side of some bets

for purposes of deceiving innocent investors) were "bailed out."

29.   Ally Financial, Inc. (AFI), Debtors' parent company, withdrew its financial support

to the Debtors in order to retain 12 billion dollars in TARP funds and to attempt to force the

homeowners and the investors in (empty) Real Estate Mortgage Investment Conduits (REMIC)

Trusts, also known as securitization trusts, to take pennies on the dollar for their losses in the

securitization scheme.  Those who the Debtors define as "Borrowers" were never informed that

their mortgage loans were intended to be collateral for unregulated securities to be sold to

undisclosed third party investors and the third party investors were just beginning to discover that

the fraud committed upon them was not just that the loans which were the basis for the collateral

for the securities they purchased were not properly originated or underwritten, but had never been

conveyed to the trusts in which they had invested.  (See Exhibit D: Phoenix Light SF Limited, et

al V. JPMorgan Chase & Co., et al., filed on August 20, 2013 in the Supreme Court of New York

for the County of New York attached to Doc. 5222 as Doc. 5222-5, at pages 1-503; See, more

particularly with respect to the AFI securitization Scheme, John Hancock Life Insurance

Company(U.S.A.), et al. v. Ally Financial Inc. f/k/a GMAC, LLC, et al., Case No. 0:12-

cv-01841,  filed in the United States District Court for the District of Minnesota on July 27,

2012,  attached hereto as Exhibit B,  which was dismissed upon confirmation of the Second

Amended Plan in these proceedings.

30.   In the most amazing fraud ever attempted to be perpetrated in the bankruptcy courts

of the United States, AFI sought and obtained a third party release as nondebtor parent of

RESCAP and the subsidiaries it has intentionally bankrupted, in exchange for an approximately

One Billion Dollar net payment to the bankruptcy estate, after its inter-company advances to its

subsidiaries were paid by Order of this Court entered on August XX, 2013. (Doc. XXX)

31.   AFI has retained the balance of the 12 billion dollars of a total of 17 billion dollars

in TARP funds, which it obtained from Congress under false pretenses of bailing out its

automobile manufacturing subsidiary, General Motors Corporation.  General Motors

Corporation, which received only 5 billion dollars of the TARP funds, by holding the nation

hostage to the threat of loss of thousands of jobs in the automotive sector, while 12 billion dollars

was taken by GMAC Financial Services (changing its name to AFI and becoming a "bank

holding company") to stabilize the residential lending sector of the company.  The TARP funds

have now been cleared of billions of dollars in claims against AFI by virtue of the third party

release granted upon confirmation of the Second Amended Chapter 11 Plan on December 11,

2013 (Doc. 6065.)  Among the only exceptions to the third party release of claims granted to AFI

would be (a) claims of any party not receiving notice of the bankruptcy proceedings; (b) that the

Order of December 11, 2013 was procured by fraud for which relief must be sought within one

(1) year;  (c) that the Order of December 11, 2013 is void or (d) that the Borrowers' Claims Trust

is merely an alter ego of the Debtors, is a sham and violates the provisions of the confirmed

Second Amended Chapter 11 Plan.    Certainly, this Court and the other classes of creditors, as

well as Debtors' parent company AFI do not desire the revocation of the Chapter 11 Plan for

failure to materially comply 11 USC sec.  1129  on the basis that the Borrowers' Claims Trust is

a sham because the Debtors have failed to irrevocably grant the funds purportedly conveyed into

the Trust to the independent management and control of the Trustee.  The simple solution to such

a challenge is to have the Trustee choose counsel other than the law firm which represented the

Debtors.

32.  The majority of the TARP funds which AFI sought to retain by obtaining a third

party release in these proceedings in exchange for the contribution of 2.1 billion dollars to

Debtors' estate purportedly for claims which the Debtors have against AFI have been preserved.

Debtors' Disclosure Statement, filed on July 4, 2013 and the Amended Disclosure Statement,

filed on August 16, 2013,  without adequate notice to the objectors so that they could object to

the Amended Disclosure Statement in advance of the hearing precipitously held thereon on

August 21, 2013, and  the Chapter 11 Plan filed on July 3, 2013.    The Disclosure Statement

provided no discussion of the Debtors' business operation pre-petition or its  post-petition

treatment of claims arising from the origination, securitization, foreclosure, or liquidation of

illegally foreclosed  real estate interests and failed to identify the real estate assets taken and sold

pre-petition or taken post-petition on forged documents, under the purported authority of this

Court's Supplemental Servicing Order entered on July 13, 2013 [Doc. 774.]    This defect in the

confirmation process may void the third party release as to any parties not receiving notice of the

proceedings or those who were not given a full and fair opportunity to be heard in opposition to the approval of the Disclosure Statement.

32.   The securitization process was used to create various forms of derivatives from the collateral fraudulently taken by loan originations and sold to purported depositors and resold to the trusts, without ever delivering the collateral.   Derivatives which purportedly hedge against loss in the event of nonpayment of the mortgage debts ranged from credit default swaps to synthetic derivatives and expanded the credit risk exponentially, but created an enormous opportunity for profit in the process of sale and re-sale of mortgage loans.

33.   Debtors have not returned a single **original** note to its maker marked PAID, DISCHARGED or SATISFIED upon foreclosure of the underlying security interest and are believed to have conspired with the purported trustees of the empty REMIC Trusts to sell and resell the notes as a form of counterfeit currency in overseas market, conveying the notes to unidentified real parties in interest for value, who may be the ultimate holders in due course of the notes, yet to claim payment thereunder.   See also Exhibit C, which is believed to be confidential as pertaining to a confidential settlement agreement and is filed under seal.

34.   The record shows that the REMIC Trusts operated under the acronyms RASC, RALI,[13] RAAC, RFMSI, RFCS, SASC, SACO, etc. had, as purported Trustees, many of the

---

[13]   Ms. Wilson's collateral was traced to a RALI Trust which reported Homecoming Financial, Inc. as the "loan originator," Residential Funding Company, LLC as the seller/sponsor of the securities offering, Residential Accredit Loans, Inc. was listed as the Depositor and Ms. Wilson will prove that her note and deed of trust were never delivered to the RALI Series 2007-QS1 Trust of which Deutsche Bank Trust Company Americas is the purported trustee. Deutshe Bank Trust Company Americas is  a wholly owned subsidiary of Taunus Corporation,  a wholly owned subsidiary of Deutsche Bank, AG (hereinafter "Deutsche Bank" as to all appellations.)

same financial institutions which sat on the Committee of Unsecured Creditors and/or had their

own claims against the Debtors.  The purported Trustees knew or should have known that the

notes and mortgages or deeds of trust were never timely transferred into the supposedly static

Real Estate Mortgage Investment Conduit (REMIC)Trusts as required by 26 USC sec. 860D.

These Trustees not only concealed the facts that the collateral securing the securities issued in the

names of the REMIC Trusts from this Court, but allowed the homes taken under forged and

perjured claims of the RESCAP Debtors in judicial and nonjudicial foreclosure cases to be used

to pay their valueless claims.   The REMIC Trust claims were without value because there were

no lawfully conveyed assets in the trusts' corpora and the investors' claims for the failed

securitization of the trusts lay not against the homeowners, but against the very Trustees who sat

on the Committee of Unsecured Creditors, representing their own interests as well as other

Trustees of unfunded REMIC Trusts.   Their interests were totally adverse to the interests of the

homeowners.

       35.  The record in these proceedings also shows that the Debtors were the servicers of one

or more of the Maiden Lane, LLCs, which were created to take collateral as security in exchange

for TARP funds.  None of the collateral in any of the Trusts or LLCs for which the RESCAP

Debtors acted as "loan servicers"  was ever identified in these proceedings.  Debtors have not

identified the properties that they have confiscated, liquidated and are still seeking to liquidate as

originators, servicers, sellers or depositors in the securitization process and never identified

which loans they actually owned in these proceedings.   It appears that they sold their "servicing

rights" to Ocwen Financial, Inc. and Walter Investment with the approval of this Court, but the

only whole loans were sold to Berkshire Hathaway at approximately 30 cents of face value of the loan collateral.

36.  Ms. Wilson's note and mortgage are believed in good faith to have been transferred to one of the  Maiden Lane, LLCs funded by the Federal Reserve Bank of New York (either Maiden Lane II, LLC or Madison Lane III, LLC.  Further discovery is necessary to establish whether or not Ms. Wilson's loan is collateral for a loan against AIG credit default swaps.  (See Trustee's Exhibit B (Doc. 6268-4, pages 12-45, particularly pages 42-43.)

37.  In the failed securitization process, the face value of the collateral is multiplied least 15 times and Ms. Wilson has chosen to use the factor of 15 to calculate the amount of  profits which must  be disgorged from the Debtors' fraud scheme from the rehypothecation of her collateral, which is the lowest factor of multiplication for which the expert witness, who prepared the report at Trustee's Exhibit B (Doc. 6268-4, pages 12-45)  will testify.

38.   The Trustee of the Borrowers' Claims Trust now purports to step into the position of the RESCAP Debtors and has apparently chosen to be represented by counsel for the RESCAP Debtors and relying on the Affidavit of former litigation counsel for the RESCAP Debtors, now purporting to be litigation counsel for the Trustee of the Borrowers' Claims Trust.  Upon information and belief, this Court has not been asked to approve the representation of the Trustee by counsel for the former RESCAP Debtors and even if it had, this Court is without jurisdiction to waive the rights of beneficiaries, such as Ms. Wilson, to object to the conflict of interest inherent and obvious when the Trustee seeks to be represented by counsel for the irrevocable grantors.

20

39.   Prior to confirmation of the Second Amended Chapter 11 Plan,  Debtors claimed

they were entitled to summary proceedings disallowing homeowners' claims for billions of

dollars in injuries caused by the Debtors and their affiliates, without affording the homeowners

their rights under the First[14] and Fifth[15] Amendments to the <u>United States Constitution</u> to

contested proceedings required by Bankruptcy Rules (BR) 3007 and  9014.  The Committee

Notes to BR 9014 provide:

> Whenever there is an actual dispute, other than an adversary proceeding, before
> the bankruptcy court, the litigation to resolve that dispute is a contested matter.
> For example, ***the filing of an objection to a proof of claim***, to a claim of
> exemption, ***or to a disclosure statement creates a dispute which is a contested
> matter*** . . .   (Emphasis added.)

40.   Thousands of homeowner claims were disallowed and were pending disallowance

under summary proceedings at the time the Second Amended Chapter 11 Plan was confirmed, in

wholesale noncompliance with BR 9014( c), (d) and (e), which provide:

> (c) Application of Part VII Rules. Except as otherwise provided in this rule, and
> unless  the court directs otherwise, the following rules shall apply: 7009, 7017,
> 7021, 7025, 7026, 7028–7037, 7041, 7042, 7052, 7054–7056, 7064, 7069, and
> 7071. The following subdivisions of Fed. R. Civ. P. 26, as incorporated by Rule
> 7026, shall not apply in a contested matter unless the court directs otherwise:
> 26(a)(1) (mandatory disclosure), 26(a)(2) (disclosures regarding expert testimony)
> and 26(a)(3) (additional pre-trial disclosure), and 26(f) (mandatory meeting before
> scheduling conference/discovery plan). An entity that desires to perpetuate
> testimony may proceed in the same manner as provided in Rule 7027 for the
> taking of a deposition before an adversary proceeding. The court may at any stage
> in a particular matter direct that one or more of the other rules in Part VII shall
> apply. ***The court shall give the parties notice of any order issued under this
> paragraph to afford them a reasonable opportunity to comply with the***

---

[14]  Right to petition courts for redress of grievances

[15]  Right to procedural and substantive due process

*procedures prescribed by the order*.

(d) Testimony of Witnesses. *Testimony of witnesses with respect to disputed material factual issues shall be taken in the same manner as testimony in an adversary proceeding.*

(e) Attendance of Witnesses. *The court shall provide procedures that enable parties to ascertain at a reasonable time before any scheduled hearing whether the hearing will be an evidentiary hearing at which witnesses may testify.*

41.  Ms. Wilson recites the foregoing paragraphs  9, 10, 11, and 12,  above, which had been stated in  her Response to the Debtors' Objection to her preconfirmation Proof of Claim dated September 27, 2013 as Doc. 5222, at pages 3-6, paragraphs 8 and 9 to demonstrate,  in detail,  the basis for the disqualification of Debtors' bankruptcy counsel by judicially noticeable facts (this Court's own records in these proceedings.) Paragraphs 9-12, above, provide a historical  report of the Debtors' assault on homeowners' claims in these proceedings through the date of Ms. Wilson's first Response (Doc. 5222) which was orchestrated by the Debtors to make it appear that the 57.6 million dollar value of the Borrowers' Claims Trust was by any means sufficient to pay the legitimate claims of the class of "borrowers" identified by the RESCAP Debtors in order to obtain confirmation of a version of the Chapter 11 Plan.  Those few homeowners with surviving claims to be paid by the Trustee of the Borrowers' Claims Trust have not waived the conflict of interest by which bankruptcy counsel for the RESCAP Debtors purport to now oppose the beneficiaries of the Borrowers' Claims Trust as counsel for the Trustee and are unlikely to do so.  Ms. Wilson has not waived the conflict of interest, the Objection filed by conflicted counsel for the Trustee must be stricken and new, independent counsel must be retained by the Trustee to review the validity and enforceability of Ms. Wilson's

Proof of Claim #7181.

42.    Caren J. Wilson is prepared to show this Court and new counsel for the Trustee of the Borrowers' Claims Trust that the documents relied upon by conflicted and disqualified counsel for the Trustee were procured by fraud perpetrated upon her by local counsel for the RESCAP Debtors, Mortgage Electronic Registration Systems, Inc., and Deutsche Bank as purported Trustee of the empty RALI Series 2007-QSI REMIC Trust and that the Order of the United States District Court for the Western District of Virginia was never served upon her, nor was the "Roseboro" Notice upon which the Order is based ever served upon her and the Order upon which the Trustee, through his conflicted and disqualified counsel is void.

43.    Qualified counsel for the Trustee, however, would be required to investigate the underlying facts of the fraud on Ms. Wilson committed by the RESCAP Debtors in the United States District Court for the Western District of Virginia by which they pretended that Ms. Wilson was entitled to appear and be heard, in person, in those proceedings.  The "Roseboro Notice" required to be served on unrepresented plaintiffs and "Order of Dismissal with Prejudice" was never served upon Ms. Wilson, which were only placed electronically on the Court's docket and never mailed to her.  Ms. Wilson did not know how the case she commenced in the state court was dismissed by the federal court to which the RESCAP Debtors and their affiliate (the empty REMIC Trust of which Deutsche Bank purports to be the Trustee) until her counsel in this case inspected the docket of the action upon which the RESCAP Debtors' counsel now relies in their disqualified representation of the Trustee of the Borrowers' Claims Trust.

44.    The reliance by disqualified counsel for the Trustee on a fraudulently obtained

23

documents and a void order of dismissal based on Ms. Wilson's supposed nonresponse a

"Roseboro Notice" never served upon her is par for the course for Debtors' counsel in the pre-

confirmation proceedings but it is expected that qualified, new counsel for the Trustee will be

more circumspect and will assist the Trustee in fulfilling his fiduciary duties to Ms. Wilson, as a

presumptive beneficiary of the Borrowers' Claims Trust, and will perform the due diligence

required of qualified counsel to advise the Trustee,  prior to the Trustee's decision whether or not

to proceed to object to Ms. Wilson's Proof of Claim #7181.

45.   Co-counsel for Ms. Wilson stand ready, willing and able to provide the facts

supporting the validity of Ms. Wilson's claim to qualified counsel for the Trustee of the

Borrowers' Claims Trust or to his counsel, at such time as qualified counsel appears in these

proceedings.

46.   The Trustee is presently represented by counsel for the reorganized Debtors, who are

disqualified by conflict of interest from representing the Trustee of the Borrowers' Claims Trust,

to which the RESCAP Debtors are grantors to an irrevocable Trust and in conflict of interest with

Ms. Wilson, a presumptive beneficiary of the Borrowers' Claims Trust to whom the Trustee

owes a fiduciary duty to treat her interests with due care and prefer her interests to his own

interests in the trust corpus.  The Trustee holds legal title to the trust corpus and the beneficiaries

hold the equitable interest, including the right to be paid the amount of the fair value of their

claims relative to the other claimants.  In no sense are Ms. Wilson's interests adverse to the

interests of the Trustee.  Her interests may be adverse to the interests of other beneficiaries

relative to the valuation of their respective claims, but that conflict arises from the underfunding

of the Trust at it inception by the RESCAP Debtors, who lost their standing to challenge Ms.

Wilson's claim, the value and validity of which was transferred into the Borrowers' Claims

Trust,  when the Second Amended Plan was confirmed on December 11, 2013. (Doc. 6065)

47.   With respect to the conflict of interest arising from the Trustee's purported selection

of counsel for the RESCAP Debtors as his legal representatives to engage in litigation against

Ms. Wilson, it is well-established that the Trustee, in seeking legal advice, has "a fiduciary

obligation to act in the beneficiaries' interest when administering the trust."  U.S. v. Jicarilla

Apache Nation, 131 S.Ct. 2313, 2322, 180 L.Ed.2d 187 (2011) That case involved an argument

made by the Jicarilla Apache Nation, by analogy, that the United States acts in the capacity of

Trustee over the Apache lands.   The United States Supreme Court rejected the analogy of that

the capacity of the United States was the equivalent of that of a private Trustee, but the well-

established law plainly applies here.

48.  Peter Kravitz is acting in the capacity as Trustee and has a fiduciary duty to Ms.

Wilson.   The RESCAP, Debtors, on the other hand, have no standing to challenge Ms. Wilson's

claim, being required as a matter of law to have surrendered control over the Borrowers' Claims

Trust when the Chapter 11 Plan was confirmed.   If the class of "borrowers" was expected to

approve a plan in which the Debtors' could control the distributions from the Borrowers' Claims

Trust, they would have had to be put on notice that the Borrowers' Claims Trust would not be a

Trust, but a settlement pool, over which the Debtors could pick and choose which claims to pay,

after confirmation.  No such provision was contained in the original plan or the First Amended

Plan, which was amended less than 5 days before the borrowers were permitted to vote to

25

approve or reject the plan and no such provision was approved by this Court.  To the contrary, this Court found that the different treatment accorded borrowers under the confirmed plan was justified because the Borrowers' Claims Trust was fully liquid, whereas other classes of claims, such as the REMIC investors, would have to wait for payment while the estate remained in post-confirmation liquidation status. (Doc. 6065.)  Based on this justification and the purported vote count which was interpreted as the class of "borrowers" having approved the Plan, the Second Amended Chapter 11 Plan was confirmed, after any objecting "borrowers," such as Richard Rode and Ms. Wilson, were held to lack standing to object to confirmation based on a vote count which could only have been obtained on 28 days' notice under Bankruptcy Rule 2002, which would was not the Second Amended Chapter 11 Plan, filed after the deadline for the ballots to be submitted.

49.  Regardless of the procedural defects arising from the confirmation of the Second Amended Plan on December 11, 2013, the fact remains that if the Second Amended Plan is to have any facial validity at all, counsel for the RESCAP Debtors cannot litigate against beneficiaries of the Borrowers' Claims Trust.   The Trustee must investigate the value and validity of the claims he is administering and choose to obtain counsel for litigation purposes, if necessary.   He may not, however, be represented by counsel for the grantor, without a waiver of the glaring conflict of interest, executed in writing, by the beneficiaries against whom the Trustee seeks to litigate.

50.  Ms. Wilson, a presumptive beneficiary of the Borrowers' Claims Trust, has not commenced any litigation against the Trust.  She was waiting for the Trustee to investigate her

claim and allow or disallow it administratively.  If her claim were disallowed by the Trustee, she

would then be required to bring an action to enforce her claim against the corpus of the

Borrowers' Claims Trust.   The RESCAP Debtors are attempting, through their disqualified

counsel, to control the Borrowers' Claims Trust and have the corpus of the Trust administered

under Bankruptcy Rules 3001, et seq. and 9014.   Their bankruptcy counsel is disqualified by

conflict of interest with Ms. Wilson, now a presumptive beneficiary of the Borrowers' Claims

Trust, irrevocably granted by the RESCAP Debtors.  Furthermore, irrevocable Borrowers'

Claims Trust,  created under the Debtors' confirmed Chapter 11 Plan for the presumptive

beneficiaries thereof, is not subject to administration under Bankruptcy Rules 3001, et seq. and

9014.  If Ms. Wilson's claim is administratively denied by the Trustee, she is entitled to proceed

by an adversary complaint before this Court, but in no sense is the Trustee of the Borrowers'

Claims Trust a debtor entitled to proceed under Bankruptcy Rule 3007.

**WHEREFORE**, Ms. Wilson objects to attempt of Debtors to treat the Borrowers'

Claims Trust as an extension of their pre-confirmation bankruptcy estate by having their

bankruptcy counsel purport to proceed under Bankruptcy Rules 3001, et seq. and 9014.

Debtors' bankruptcy counsel has an unwaived conflict of interest and is disqualified from

proceeding under Bankruptcy Rules 3001, et seq. and 9014 to purport to litigate on behalf of the

irrevocable Borrowers' Claims Trust.  Only the Trustee, under the advice of qualified counsel,

may proceed to administer the Borrowers' Claims Trust, without any control or dominion in the

matter by disqualified counsel for the RESCAP Debtors, absent a waiver by Ms. Wilson of the

conflict of interest of counsel for the RESCAP Debtors, not disclosed to her as required by law

27

and which she has not even been asked to waive.

Dated at Center Moriches, New York this 4th day of February, 2014.

*Thomas J. Sinnickson*
Thomas J. Sinnickson
176 Main Street
Center Moriches, New York 11934
(516) 647-4153
TJSinnickson@aol.com

Dated at Madison, Wisconsin this 4th day of February, 2014.

*/s/ Wendy Alison Nora*
Wendy Alison Nora
ACCESS LEGAL SERVICES
Counsel for Caren Wilson
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
(612) 333-4144
FAX (608) 497-1026
accesslegalservices@gmail.com

**UNSWORN DECLARATION UNDER PENALTY OF PERJURY OF
ATTORNEY WENDY ALISON NORA**

Wendy Alison Nora declares under penalty of perjury, pursuant to 28 USC sec. 1746, that the Exhibits attached hereto (Exhibits A, B, and C attached to the Motion to Seal) are true and correct copies of the documents they purport to be and that the citations to the record of these proceedings are true and correct, to the best of her knowledge, information and belief.



*/s/ Wendy Alison Nora*
_____
Wendy Alison Nora

**UNSWORN DECLARATION UNDER PENALTY OF PERJURY OF
CAREN WILSON**

Caren Wilson declares under penalty of perjury, pursuant to 28 USC sec. 1746, that the

facts of which she has personal knowledge are true and correct as stated in the foregoing Response and that her Proof of Claim #4574, incorporated by reference in her Proof of Claim #7181 was prepared in reliance upon expert information received from her expert witness, Mohammad Raja, and her Amended Claim #7181 was prepared after consultation between her counsel, Attorney Nora, and her expert witness, Mr. Raja.

*/s/ Caren Wilson*

_____
Caren Wilson

**UNSWORN DECLARATION OF SERVICE**

The above-captioned document filed by CM/ECF on February 4, 2013 and was thereby served all parties and their counsel capable of service by CM/ECF in these proceedings. A true and correct copy thereof was also sent by e-mail to Peter Kravitz, Trustee of the Borrowers' Claims Trust to his published e-mail address at PKravitz@SolutionTrust.com

*/s/ Wendy Alison Nora*
Wendy Alison Nora