**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

RESIDENTIAL CAPITAL, LLC, *et. al.*

Debtors.

**NOT FOR PUBLICATION**

Chapter 11

Case No. 12-12020

**MEMORANDUM OPINION AND ORDER SUSTAINING OBJECTION TO**
**CLAIM 5420 FILED BY VACHAGAN ABED-STEPHEN AND SUSIE ABED-STEPHEN**

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *Debtors' Objection to Claim No. 5420 of Vachagan Abed-Stephen and Susie Abed-Stephen* (the "Motion," ECF Doc. # 5786). In support of the Motion, the Debtors filed the Declarations of Lauren Graham Delehey (the "Delehey Decl.," ECF Doc. # 5786-2), Norman S. Rosenbaum (ECF Doc. # 5786-4), and Robert D. Nosek (ECF Doc. # 5786-5). Vachagan and Susie Abed-Stephen (the "Claimants") filed a response (the "Response," ECF Doc. # 6122), and the Debtors filed a reply (ECF Doc. # 6306), along with a Supplemental Declaration of Lauren Graham Delehey (the "Supp. Decl.," ECF Doc. # 6306-1). Through the Motion, the Debtors seek to expunge Claim Number 5420 (the "Claim") filed by the Claimants because the Claim allegedly fails to state a basis for liability against the Debtors and lacks sufficient documentation. For the reasons provided below, the Court **SUSTAINS** the Debtors' objection and **EXPUNGES** Claim Number 5420.

## I.    BACKGROUND

### A.    Procedural History

On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. To date, over 7,300 proofs of

12-12020-mg    Doc 6432    Filed 02/05/14    Entered 02/05/14 14:54:09    Main Document
Pg 2 of 12

claim have been filed in these cases (the "Chapter 11 Cases"), as reflected on the Debtors' claims registers. On August 29, 2012, the Court entered an order establishing procedures and a deadline of November 9, 2012, for filing proofs of claim. (ECF Doc. # 1309.) The Court later extended the bar date to November 16, 2012. (ECF Doc. # 2093.)

On March 21, 2013, the Court entered an order approving procedures for the filing of objections to proofs of claim filed in these Chapter 11 Cases (the "Procedures Order," ECF Doc. # 3294), which approved certain procedures to be applied in connection with objections to claims filed by current or former borrowers (collectively, the "Borrower Claims," and the procedures relating thereto, the "Borrower Claim Procedures"). Based on substantial input from the Creditors' Committee and Special Counsel to the Creditors' Committee for Borrower Issues ("Special Counsel"), the Procedures Order includes specific protections for borrowers and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims. The Borrower Claim Procedures generally provide that before objecting to Borrower Claims, the Debtors must (1) consult with Special Counsel and provide Special Counsel with a list of the claims at issue, and (2) review their books and records to determine if any amounts are owed to such Borrowers.

On December 11, 2013, the Court entered an *Order Confirming Second Amended Joint Chapter11 Plan Proposed by Residential Capital, LLC, et al. and The Official Committee of Unsecured Creditors* (the "Confirmed Plan," ECF Doc. # 6065). The Confirmed Plan became effective on December 17, 2013. (ECF Doc. # 6137.)

      **B.**     **The Claim**

The Claimants filed their proof of claim on November 16, 2012. The proof of claim is unclear as to precisely what liability the Claimants are asserting. The amount of the Claim

2

appears to be $1.75 million, and the Claimants appear to assert that $1,223,221.89 of the Claim is secured, although the secured claim figure is written as "$1,2223,221.89" and there is no listing of the unsecured portion of the Claim. Further, the proof of claim does not provide a basis for the Claim, nor does it provide a basis for the security.

On June 11, 2013, the Debtors sent a letter to the Claimants requesting further documentation to support the Claim (ECF Doc. # 5786-6). The Claimants responded on June 19, 2013, sending a two-page letter explaining the basis for the Claim (the "Letter," ECF Doc. # 5786-7). In the Letter, the Claimants asserted that GMAC Mortgage, LLC ("GMACM") admitted under oath that the Loan (defined below) was never in default, but GMACM still filed a Notice of Default with county records, which damaged the Claimants' credit scores and ruined their ability to obtain credit fairly. The Claimants also alleged that GMACM filed an assignment of the Claimants' Deed (defined below) even though GMACM had no right or interest in that Deed. Next, the Claimants asserted that they incurred $10,000 in legal research and legal fees. Finally, the Claimants also appeared to allege wrongful refusal of a loan modification since GMACM ignored $19,000 in payments under a modification plan.

**C.    Events Related to the Claim**

On April 12, 2006, the Claimants entered into a loan agreement (the "Loan") with First Federal Bank of California ("First Federal"), borrowing $920,000. (Delehey Decl. ¶ 3.) The Loan was evidenced by a note (the "Note") and was secured by a deed of trust (the "Deed") on the Claimants' home located in Glendale, California. (*Id.*) First Federal assigned the Deed to GMACM on May 22, 2006, and GMACM recorded the deed on October 30, 2008.[1] (*Id.*) Contrary to the Claimants' argument, First Federal transferred the Note to GMACM along with

---

[1] At a January 27, 2014 hearing regarding the Motion, the Debtors' counsel verified that First Federal assigned the Deed to GMACM on May 22, 2006, and GMACM recorded the Deed on October 30, 2008, but counsel could not explain the delay between the assignment and the recording of the Deed (*see* Jan. 27. Tr. 23:3–24).

3

the Deed. (*Id*. Ex. B.) GMACM transferred the Note on April 1, 2007 to a securitization trust, with Wells Fargo serving as the trustee. (Supp. Decl. ¶ 5.) Additionally, GMACM began servicing the Loan on December 20, 2006 (Delehey Decl. ¶ 4) and continued servicing the Loan under an agreement with the securitization trust. (Reply ¶ 6 n.4.)

After the Claimants became delinquent on their Loan payments, the Debtors recorded a Notice of Default regarding the Glendale Property on October 17, 2008. (*Id*.) Several months later, the Claimants sought a loan modification from the Debtors, and the Debtors agreed to forebear on foreclosing on the Claimants' home in exchange for monthly payments under a series of forbearance plans. (*Id*. at ¶ 5.) If the Claimants completed their forbearance plans, the Debtors would review their Loan for a loan modification. (*Id*.) The Debtors later sent the Claimants packets regarding a potential loan modification, but the Claimants never returned a completed loan modification packet. (*Id*. at 5–6.)

The Claimants made six payments between February and September 2009 under the forbearance plans, but they never made any further payments on the Loan after "late 2009." (*Id*. ¶ 7 n.2.) ETS recorded a Notice of Trustee's Sale on February 1, 2010. (*Id*.) On June 22, 2011, though, ETS filed a Notice of Rescission of Notice of Default. (Delehey Decl. Ex. F.) The servicing rights to the Loan were transferred to Ocwen Loan Servicing, LLC during these Chapter 11 Cases.

The Claimants initiated two lawsuits in California state court against the Debtors and certain non-Debtor entities—the first in 2009 and the second in 2011. (*Id*. ¶¶ 9–13.) In the first suit, the Claimants asserted both federal and state law claims, and the case was removed to federal court. (*Id*. ¶ 9.) The federal court dismissed the federal claims with prejudice and remanded the state law claims back to the state court. (*Id*.) The Claimants then withdrew those

4

claims without prejudice. (*Id.*) On June 29, 2011, the Claimants filed a new action alleging only state law claims. (*Id.*) After GMACM demurred twice, the Claimants filed a second amended complaint, and GMACM again demurred to that complaint. (*Id.* ¶ 10–11.) The second amended complaint stated three causes of action. (Motion ¶ 20.) First, the Claimants alleged that the assignment of the Deed from First Federal to GMACM was void because GMACM was only the servicer of the Loan. (*Id.*) Second, the Claimants demanded an accounting. (*Id.*) Third, the Claimants sought declaratory judgment that GMACM was only the servicer of the loan and not a beneficiary. (*Id.*)

The California state court sustained GMACM's demurrer to each cause of action in the second amended complaint and denied leave for the Claimants to amend. (*Id.* ¶ 12.) The Claimants appealed that decision, and that appeal was pending when the Debtors filed for bankruptcy. (*Id.*) In California, a pending appeal prevents application of *res judicata* to an earlier ruling. *See People v. Mitchell Bros.' Santa Ana Theater*, 101 Cal. App. 3d 296, 306 (Cal. Ct. App. 1980).

In their Letter, the Claimants allege that the Debtors admitted in court in the second action that the Claimants' Loan was never in default, but the Debtors attached the transcripts from those hearings as Exhibit I to the Delehey Declaration; those transcripts do not contain any admissions.

## II.   DISCUSSION

### A.   Proofs of Claim

Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim" to claim an interest in a debtor's bankruptcy estate. 11 U.S.C. § 501(a). "The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes

5

prima facie evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)." 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer eds., 16th rev. ed. 2013). Section 502(a) provides that a claim or interest, properly filed, "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Under section 502, if an objection is made, the court shall determine the amount of such claim "as of the filing date." *In re Solutia, Inc.*, 379 B.R. 473, 483 (Bankr. S.D.N.Y. 2007) (citation omitted).

Claims objections have a shifting burden of proof. Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a claimant establishes a prima facie case against a debtor upon filing a proof of claim. The objecting party is thereafter required to produce evidence equal in force to that provided by the claimant to rebut the presumption of the claimant's prima facie case. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) ("In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."). If the objecting party satisfies that requirement, the burden then shifts back to the claimant to produce additional evidence to prove the validity of the claim by a preponderance of the evidence. *Id.* at 174.

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

B.    **Slander of Title**

The Claimants allege that the Debtors wrongfully filed a Notice of Default and wrongfully filed an assignment of the Deed to GMACM. The Court will treat these allegations

as asserting a cause of action for slander of title and notes that the Claimants alleged slander of title in their first litigation in California. Slander of title in California results "from unprivileged, false, malicious publication of disparaging statements regarding the title to property owned by plaintiff, to plaintiff's damage." *Rivac v. Ndex West* LLC, No. C 13-1417 PJH, 2013 U.S. Dist. LEXIS 177073, at *29 (N.D. Cal. Dec. 17, 2013) (quoting *Southcott v. Pioneer Title Co.*, 203 Cal. App. 2d 673, 676 (1962)). To support a slander of title claim, a plaintiff must show publication without privilege or justification that is false and causes direct and immediate pecuniary harm. *See Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1030 (2012).

Relying on the Delehey Declaration, the Debtors assert that the Claimants were indeed in default on the Loan, so the Notice of Default was not false. (Motion ¶ 32.) And the Debtors only withdrew the Notice of Default because it was over two years old, not because it was false. (*Id.* ¶ 32 n.14). Further, the Debtors argue that the Claimants can only establish lack of privilege if the Debtors filed the Notice of Default with malice. *See Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 333 (2008) (explaining that California treats notices required for nonjudicial foreclosures as privileged communications unless filed with malice). In this context, "malice" is defined "as actual malice, meaning 'that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefor acted in reckless disregard of the plaintiff's rights.'" *Id.* at 336 (quoting *Sanborn v. Chronicle Publ'g Co.*, 556 P.2d 764, 768 (Cal. 1976)). The Claimants did not provide any basis to support a claim of malice.

As for the Deed, the Debtors assert that the assignment was procedurally proper, so publication of the assignment was not false. (Delehey Decl. ¶¶ 3–4.) Further, even if the

assignment was somehow improper, it would not have caused immediate pecuniary loss since it merely purported to substitute one creditor for another without changing any of the Claimants' obligations. *See Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 272 (2011) (explaining that assignment of deed without authority would not prejudice a plaintiff).

In their Response, the Claimants assert that the assignment of the Deed to GMACM is false because GMACM was never assigned the Claimants' Note. But First Federal expressly assigned its interest in the Deed along with the Note and obligations to GMACM. (*See* Delehey Decl. Ex. B (assigning the Deed from First Federal to GMACM "together with the note(s) and obligations therein described, the money due and to become due thereon with interest, and all rights accrued or to accrue under such [Deed].").)  Therefore, the Debtors were assigned the Deed and the Note. Further, the Note provides that the Claimants are obligated to pay anyone to whom the Note is transferred. (Supp. Decl. Ex. A.)

The Claimants also argue that GMACM was not entitled to service the Loan after the Loan was securitized because of a defect in the securitization. (Response ¶ 2 ("The trustee cannot instruct GMACM to service the loan because the trust failed to comply with the strict terms of the [pooling and servicing agreement] and failed to acquire the assets it attempts to enforce.").) But the Claimants do not have standing to challenge any defect in the securitization since they were not a party to it. *See Armeni v. Am.'s Wholesale Lender*, No. CV 11-8537 CAS (AGRx), 2012 WL 603242, at *3 (C.D. Cal. Feb. 24, 2012) (holding that plaintiff did not have standing to challenge securitization process of mortgage because plaintiff was not party to pooling and servicing agreement); *In re Correia*, 452 B.R. 309, 324 (BAP 1st Cir. 2011) (finding that debtors lacked standing to challenge assignment of mortgage based on non-compliance with

pooling and servicing agreement). And a defect in the securitization would have harmed the investors in the trust, not the Claimants.

### C. Loan Modification

Aside from alleging wrongful filings of notices of default and assignment, the Claimants assert that they "paid $19,000 to [] GMACM for Modification in 2009," and "GMACM completely ignored the modification." (Letter ¶ 7.) The Court construes this as a claim for breach of a loan modification agreement or a breach of a contractual obligation to provide a loan modification. (Motion ¶ 35.) The Claimants must establish the existence of a contract before they can support a breach of contract claim. *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990). California courts will not find the existence of a contract unless there was a "meeting of the minds on *all* material points." *Am. Emp'rs Grp., Inc. v. Emp't Dev. Dept.*, 154 Cal. App. 4th 836, 846 (2007) (emphasis in original) (internal quotation marks omitted).

The Claimants did not allege enough to establish the existence of a contract. Their payments to GMACM were made under forbearance plans, not a loan modification plan. (Delehey Decl. ¶¶ 4–7.) Although the Debtors sent packets requesting information necessary to consider a loan modification, the Claimants never provided a completed packet. (*Id*. ¶¶ 5–6.) The Claimants' Deed contained a provision requiring that any loan modifications must be made in writing (Delehey Decl. Ex. A ¶ 33), but the Debtors and Claimants never entered into a written modification agreement.

And even if the Claimants could allege the existence of a contractual agreement to modify their Loan, the Claimants would also need to allege that they complied with that agreement and were therefore entitled to the modification. The Claimants did not describe any

9

compliance with a modification agreement, other than asserting that they paid $19,000 to GMACM. The Claimants do not indicate whether that payment constituted complete fulfillment of their obligations under a loan modification plan, entitling the Claimants to a permanent loan modification. Rather, the Delehey Declaration reveals that the Claimants missed multiple payments (and have not paid anything since late 2009), and the Claimants failed to return the necessary paperwork for a loan modification. (Delehey Decl. ¶ 6–8.)

### D. The Pending California Appeal

The Debtors also argue that even if the Court considers the claims alleged in the Claimants' second California litigation against the Debtors, the Claimants still do not have a viable claim against the Debtors. But the Court need not analyze that litigation because the proof of claim here does not reference it, and the Letter only references the action to say that the Debtors admitted in that litigation that the Claimants were never in default. That allegation is already addressed above. The Letter does not assert that GMACM's purported liability derives from the California litigation, nor does the Letter attach any litigation documents for the Court to review.

### E. Documentation

Aside from the defects discussed above, the Claim lacks sufficient documentation to support its validity. If a claim fails to comply with the documentation requirements of Bankruptcy Rule 3001(c), it is not entitled to *prima facie* validity. *See Ashford v. Consol. Pioneer Mortg. (In re Consol. Pioneer Mortg.),* 178 B.R. 222, 226 (9th Cir. B.A.P. 1995), aff'd, 91 F.3d 151 (9th Cir. 1996); *In re Minbatiwalla*, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010). Where creditors fail to provide adequate documentation supporting the validity of their claims consistent with Bankruptcy Rule 3001(c), courts in this Circuit have held that such claims can be

disallowed. *See Minbatiwalla*, 424 B.R. at 119 (determining that "in certain circumstances, claims can be disallowed for failure to support the claim with sufficient evidence . . . because absent adequate documentation, the proof of claim is not sufficient for the objector to concede the validity of a claim."). The Claimants' only documentation is their Letter, which does not explain why the Claimants believe they are entitled to $1.75 million. Rather, the letter only details $29,000 in expenses incurred. Thus, any potential liability beyond $29,000 is wholly unsupported.

    **F.  The Claim Fails to State a Basis for Liability by Any of the Debtors.**

    The Claimants provided three grounds for Debtor liability in their Letter. The Debtors adequately rebutted each of those theories in their Motion and Delehey Declaration. The Debtors established that the Claimants were in default on their Loan, so the Notice of Default was not wrongful. The Debtors also produced evidence showing that the assignment of the Deed was proper. The Debtors made a sufficient showing to shift the burden back to the Claimants, and the Claimants failed to carry their burden. The Claimants' argument that the securitization trust never properly acquired their Note because of a failure in the securitization process is unpersuasive. They appear to take the position that no one owns their Note, but that cannot be true. Moreover, the Claimants do not have standing to argue a failure in the securitization process and have no basis to assert that GMACM was not entitled to service their Loan.

    As for the loan modification claim, the Debtors provided sufficient evidence in their Objection and Delehey Declaration that no loan modification contract—either written or oral—existed. The Claimants did not rebut that evidence in their Response.

## III. CONCLUSION

For the foregoing reasons, the Debtors' objection to Claim 5420 is **SUSTAINED** and the Claim is **EXPUNGED**.

**IT IS SO ORDERED.**

Dated: February 5, 2014
New York, New York

_____/s/Martin Glenn_____
MARTIN GLENN
United States Bankruptcy Judge