**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

    RESIDENTIAL CAPITAL, LLC, *et. al.*

Debtors.

**NOT FOR PUBLICATION**

Chapter 11

Case No. 12-12020

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO ALLOW
COMPLAINT TO DETERMINE SECURED STATUS AND AVOID LIENS**

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

    Pending before the Court is the *Motion to Allow Complaint to Determine Secured Status and Avoid Liens of Sierra Pacific Mortgage Company, Inc., GMAC Mortgage, LLC, [and] Residential Capital, LLC* (the "Motion," ECF Doc. # 4655), filed by Nancy K. and Linton C. Layne (the "Laynes"). The Debtors filed an objection to the Motion (the "Opposition," ECF Doc. # 6168), supported by the Declaration of Lauren Graham Delehey (the "Delehy Decl.," ECF Doc. # 6168-1). The Laynes filed a reply (the "Reply," ECF Doc. # 6348), along with one exhibit, and the Debtors filed a supplemental response (ECF Doc. # 6371).

    As explained below, the Debtors previously serviced the second mortgage loan secured by the Laynes' property, but the second mortgage is owned by a securitization trust, not by any of the Debtors. Servicing of the second mortgage loan was transferred from Debtor GMAC Mortgage, LLC ("GMACM") to Ocwen Loan Servicing, LLC. ("Ocwen") on February 15, 2013. Thus, the Debtors no longer have any connection to the property or the second mortgage. The Laynes are seeking to strip-off what they contend is a wholly unsecured second mortgage on their property, applying sections 506(a) and 1322 of the Bankruptcy Code, but the Laynes are not now nor have they ever been chapter 13 debtors.

The Motion and Reply appear to request two different forms of relief that would permit the Laynes to proceed with some action against the Debtors either in this Court or in Oregon state court to strip-off the second mortgage lien. Because neither form of relief is appropriate, the Motion is **DENIED**.

## I.     BACKGROUND

### A.     Procedural History

On May 14, 2012, each of the Debtors filed a voluntary petition for chapter 11 relief. The Court entered a Bar Date Order on August 29, 2012, which established (1) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribed the form and manner for filing proofs of claim; and (2) November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "Governmental Bar Date" and, together with the General Bar Date, as applicable, the "Bar Date"). (Bar Date Order ¶¶ 2, 3). The Court later extended the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) (ECF Doc. # 2093).

On December 11, 2013, the Court entered an *Order Confirming Second Amended Joint Chapter11 Plan Proposed by Residential Capital, LLC, et al. and The Official Committee of Unsecured Creditors* (the "Confirmed Plan," ECF Doc. # 6065). The Confirmed Plan became effective on December 17, 2013. (ECF Doc. # 6137.) The Confirmed Plan includes an injunction providing in part as follows:

> all Entities, including Investors, who have held, hold or may hold Claims, Equity Interests, Causes of Action or liabilities that constitute Released Claims, are permanently enjoined and precluded, from and after the effective date of the Plan, from: (a) commencing or continuing in any manner or action or other proceeding of any kind against any Released

2

> Party whether directly, derivatively or otherwise, on account of or in connection with or with respect to any Released Claims . . . .

Confirmed Plan, Article IX, ¶ I. Injunction, at 103.

This Plan injunction prevents any creditor holding a prepetition claim against the Debtors that failed to file a timely claim from prosecuting an action against the Debtors (or their successors) to recover on the claim. In addition to the Plan injunction, the automatic stay under section 362(a)(1) (barring "the commencement or continuation . . . of a judicial action or proceeding against the debtor") remains in effect until the case is closed. 11 U.S.C § 362(c)(2)(A).

### A.     The Motion

Although the Laynes did not initiate an adversary proceeding, the Motion is styled as a complaint. In the Motion, the Laynes assert that GMACM both owns and services a second mortgage (the "Loan") secured by the Laynes' home in Hillsboro, Oregon. (Motion at 1, 3.) According to the Laynes, their home is currently valued at approximately $116,908. (*Id*. at 3.) The Laynes also assert that their property is subject to a first priority lien in the amount of $140,800 held by investors of a securitization pool, as well as a second lien in the amount of $35,200 held by GMACM. (*Id*.) The Laynes claim to have no equity in the property, making any GMACM claim against the property wholly unsecured. (*Id*. at 3–4.) Through the Motion, it appears that the Laynes want the junior mortgage lien to be released pursuant to sections 506(a) and 1322 of the Bankruptcy Code. (*See id*. at 4–5.) They ask the Court to issue an order requiring that GMACM (1) classify the Laynes' account as paid in full, (2) release the lien on the Laynes' property, and (3) file a notice of the lien release with the Washington County, Oregon Recorder's Office. (*Id*. at 5.)

**B.     The Opposition**

The Debtors respond that they hold no interest in the mortgage or associated Loan. (*See* Delehey Decl. ¶ 4.) According to the Debtors, U.S. Bank is the holder of the second lien as trustee for a residential mortgage trust. (*Id*.) Although GMACM once serviced the Laynes' Loan, they transferred those servicing rights to Ocwen on February 15, 2013. (*Id*.)

As for the merits of a lien release, the Debtors assert that section 1322(b) applies only in chapter 13 cases. *See* 11 U.S.C. § 103(i). The Debtor's note that this is a case under chapter 11, and, further, section 1322(b) would only protect a chapter 13 debtor, and of the Laynes is currently a debtor in any bankruptcy proceeding. (*See* Opposition ¶¶ 9, 11–12.; Jan. 30, 2014 Tr. 43:23–25, 44:1) The Debtors note that Mr. Layne was once a chapter 7 debtor in the District of Oregon, and he was granted a discharge in 2011. (*See id*. ¶ 8 n.2.)

**C.     The Reply**

In their Reply, the Laynes appear to change the relief they are seeking. They attach a proposed order changing the venue of their complaint to the State of Oregon, Washington County. (Reply at 7.) They also attach a proposed order postponing their action here until the Oregon court has properly identified all holders of interests in the Laynes' property. (*Id*. at 8.) Additionally, the Laynes challenge Lauren Graham Delehey's ability to submit a sworn declaration considering that she did not assist in the execution of the deed of trust or note for the Laynes' property. (*See id*. at 4.) It appears that the Laynes believe that GMACM is involved in some title dispute regarding the Laynes' property,[1] so they ask that GMACM be required to participate in a proceeding to determine the actual "ownership rights per a Chain of Title and Chain of Custody of the Promissory Note(s)." (*Id*. at 6.)

---

[1]    Attached as Exhibit A to their Reply, the Laynes submitted bank statements reflecting payments made to GMACM as servicer. The Laynes may believe that by acting as servicer, GMACM was holding itself out to have an ownership interest in the Laynes' property.

4

**D.     The Sur-reply**

The Debtors filed a supplemental response to the Motion, arguing that the Delehey Declaration is sufficient to establish that GMACM holds no interest in the Laynes' property. In-house counsel is generally competent to testify about a company's business records, provided that the attorney understands the record keeping system well enough to explain it in court. *See In re Enron Creditors Recovery Corp.*, 376 B.R. 442, 457 (Bankr. S.D.N.Y. 2007).

**II.     DISCUSSION**

Despite the styling of their moving papers as a Complaint, the Laynes seemed to change the nature of their Motion on Reply to request relief from the automatic stay. Regardless of how the Court construes the Motion, it became apparent at the January 30, 2013 hearing on this matter that the Laynes' primary concern is discerning (1) who holds the liens on their home, and (2) why GMACM was collecting on the Loan but now asserts that it has no interest in the Laynes' property.[2] Since the Debtors answered both of those concerns in the Opposition and at the January 30 hearing, the Court need not grant any relief to the Laynes (nor is any relief appropriate).

**A.     Motion to Dismiss**

Since the Debtors opposed the Motion, which was styled as a complaint, the Court construes the Opposition as a motion to dismiss. In doing so, the Court will apply a Rule 12(b)(6) analysis since Bankruptcy Rule 7012 makes Rule 12(b)(6) applicable to adversary proceedings. Rule 12(b)(6) allows a party to move to dismiss a cause of action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted

---

[2]     Jan. 30, 2014 Tr. 45:23-46:4 ("What I dispute is who's actually making that (sic) case. . . . . I'd been paying GMAC, but in fact, GMAC then says they have no interest in the note or property . . . . [W]ho is the actual lien owed to?") (ECF Doc. # 6409).

5

as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Courts deciding motions to dismiss must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999). The Court must limit its review to facts and allegations contained in (1) the complaint, (2) documents either incorporated into the complaint by reference or attached as exhibits, and (3) matters of which the court may take judicial notice. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Courts may also consider documents not attached to the complaint or incorporated by reference, but "upon which the complaint *solely* relies and which *[are] integral to the complaint*." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (internal quotation marks omitted; emphasis in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)); *Grubin v. Rattet (In re Food Mgmt. Grp.)*, 380 B.R. 677, 690 (Bankr. S.D.N.Y.2008) (concluding that a court may consider documents that have "not been incorporated by reference where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint") (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, the Court's objective is not to determine whether the claimant will succeed in her claim, but instead whether the claimant is entitled to support her claim by offering evidence. *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 65 (2d Cir. 2010) (citation omitted). Following the Supreme Court's decision in *Ashcroft v. Iqbal,* courts use a two-prong approach when considering a motion to dismiss. *See, e.g., Weston v. Optima Commc'ns Sys., Inc.*, No. 09 Civ. 3732(DC), 2009 WL 3200653, at *2

(S.D.N.Y. Oct. 7, 2009) (acknowledging a "two-pronged" approach to deciding motions to dismiss); *S. Ill. Laborers' and Emp'rs Health and Welfare Fund v. Pfizer, Inc.*, No. 08 CV 5175(KMW), 2009 WL 3151807, at *3 (S.D.N.Y. Sept. 30, 2009) (same); *Inst. for Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*, No. 08 Civ. 6195 (PKC), 2009 WL 2850230, at *3 (S.D.N.Y. Aug. 28, 2009) (same). First, the court must accept all factual allegations in the complaint as true, discounting legal conclusions clothed in factual garb. *See Iqbal*, 556 U.S. at 678; *Boykin v. KeyCorp*, 521 F.3d 202, 204 (2d Cir.2008). Second, the court must determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679.

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). Meeting the plausibility standard requires a complaint to plead facts that show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). A complaint that only pleads facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id*. (internal quotation marks omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id*. (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Although "complaints drafted by *pro se* plaintiffs are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide

7

the court and the defendant with" a fair understanding of the conduct at issue and the basis for recovery. *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013).

In their opening papers, the Laynes asked for relief that the Court cannot grant—namely, a lien release pursuant to Bankruptcy Code section 1322. First, the Debtors produced evidence that they do not have a lien on the Laynes' property. (*See* Delehey Decl. ¶ 4.) Second, section 1322 relief is only available to a chapter 13 debtor, *see* 11 U.S.C. § 103(i), and neither the Debtors nor the Laynes are chapter 13 debtors. Although the Laynes challenge the ability of Ms. Delehey to submit a declaration regarding a loan she did not originate and assignments she did not execute, their challenge is misplaced. Ms. Delehey need not have participated in those transactions to testify about the Debtors' lack of interest in the Laynes' loan; she is competent to testify about what is reflected in the Debtors' books and records. *See In re Enron* 376 B.R. at 457. Those records reflect that the Debtors have no interest in the Laynes' property.

**B.    Relief from the Automatic Stay**

In their Reply, the Laynes ask the Court to transfer the action to Oregon state court so GMAC can participate in a proceeding to determine the ownership rights to the Laynes' property. (*See* Reply at 6.) The Laynes filed the Motion before the Court confirmed the Debtors' Plan and before the Plan became effective. Therefore, the automatic stay contained in Bankruptcy Code section 362 was the applicable limitation on Laynes' ability to prosecute any action in Oregon regarding interests in their property. Section 362(a)(1) of the Bankruptcy Code provides, in pertinent part, that the filing of a bankruptcy petition stays

> the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the

8

>commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Evntl. Protection*, 474 U.S. 494, 503 (1986). It maintains the status quo and protects the debtor's ability to formulate a plan for the sale or other disposition of property of the estate. COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. rev. 2013). The automatic stay is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *SEC v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000) (internal quotation omitted). In this regard, the automatic stay "promot[es] equal creditor treatment and giv[es] the debtor a breathing spell." *In re Pioneer Commercial Funding Corp.,* 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990).

The automatic stay is generally "limited to debtors and do[es] not encompass non-bankrupt co-defendants." *Teachers Ins. & Annuity Assoc. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986). The only issue here is whether the stay should be lifted to permit the Laynes to proceed with an action against GMACM is state court in Oregon.

Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not, however, define the phrase "for cause." In determining whether "cause" exists to lift the stay for prepetition litigation, courts consider the following factors (the "*Sonnax* Factors"):

9

(1) whether relief would result in a partial or complete resolution of the issues,
(2) the lack of any connection with or interference with the bankruptcy case,
(3) whether the other proceeding involves the debtor as a fiduciary,
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action,
(5) whether the debtor's insurer has assumed full responsibility for defending the action,
(6) whether the action primarily involves third parties,
(7) whether litigation in another forum would prejudice the interests of other creditors,
(8) whether the judgment claim arising from the other action is subject to equitable subordination,
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor,
(10) the interests of judicial economy and the expeditious and economical resolution of litigation,
(11) whether the parties are ready for trial in the other proceeding and
(12) the impact of the stay on the parties and the balance of harms.

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990); *In re New York Med. Grp., PC*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001). Not all of the *Sonnax* Factors are relevant in every case, and "cause" is a broad and flexible concept that must be determined on a case-by-case basis. *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999)). The moving party bears the initial burden to demonstrate that "cause" exists to lift the stay. *See Sonnax*, 907 F.2d at 1285; *Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause.") (internal quotation omitted).

Here, since the Debtors have produced evidence establishing that they do not hold any lien on the Laynes' property and do not service the loans secured by the property, the Laynes can ascertain the true interest holders without further Debtor involvement. And any action in Oregon would not involve the Debtors as fiduciaries, would not involve a specialized tribunal, and would

not involve an insurer defending the action. It is clear from the record that no relief against GMACM is available or appropriate, and GMACM's presence as a party in any action in Oregon state court is unnecessary to any relief that the Laynes may be entitled to receive. The balance of harms also strongly weighs against granting relief from the automatic stay. Granting relief from the stay would burden the Debtors with the costs associated with defending a lawsuit regarding a property in which the Debtors claim no interest whatsoever.

### C. The Laynes' Underlying Concern

As noted above, at the January 30, 2014 hearing, the Laynes expressed that their primary concern is deciphering who holds the liens on their home, and why GMACM was collecting payments on their Loan but now asserts that it holds no interest in the Laynes' property. (Jan. 30, 2014 Tr. 45:23–46:4.) (ECF Doc. # 6409). The Debtors produced evidence establishing that before February 15, 2013, GMACM acted as servicer of the Loan. (Delehey Decl. ¶ 4.) The owner of the Loan was U.S. Bank, National Association serving as trustee of the SACO I2006-9 residential mortgage trust. (*Id*.) On February 15, 2013, GMACM transferred servicing for the Loan to Ocwen. (*Id*.) Thus, GMACM was acting as the servicer of the Loan, but was not the actual lienholder. When the Laynes received statements from GMACM, those were statements from the servicer, not from a party holding itself out as the owner of the Loan

### III. CONCLUSION

Based on the evidence in the record, the Court concludes that the Debtors have no interest in the Laynes' property, and the Laynes are not entitled to any relief from the Debtors. If the Laynes wish to ascertain the owners of the liens on their property, they may do so without involving any of the Debtors.

Whether the Motion is construed as a complaint or as a motion for relief from the automatic stay, it is **DENIED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated:  February 10, 2014
         New York, New York

                                            ___*Martin Glenn*_____
                                            MARTIN GLENN
                                            United States Bankruptcy Judge