1  ROBERT J. GANDY (State Bar No. 225405)
   rjg@severson.com
2  YARON SHAHAM (State Bar No. 217192)
   ys@severson.com
3  SEVERSON & WERSON
   A Professional Corporation
4  The Atrium
   19100 Von Karman Avenue, Suite 700
5  Irvine, California 92612
   Telephone: (949) 442-7110
6  Facsimile: (949) 442-7118

7  JOHN B. SULLIVAN (State Bar No. 96742)
   SEVERSON & WERSON
8  A Professional Corporation
   One Embarcadero Center, Suite 2600
9  San Francisco, California 94111
   Telephone: (415) 398-3344
10 Facsimile: (415) 956-0439

11 Attorneys for Defendants
   U.S. BANK NATIONAL ASSOCIATION, as Trustee, as successor in
12 interest to Bank of America, National Association, as Trustee,
   successor by merger to LaSalle Bank National Association, as Trustee
13 for RAAC 2007-RP1 (erroneously sued as Bank of America, National
   Association as successor by merger to LaSalle Bank National
14 Association as Trustee for RAMP 2007RP1); GMAC MORTGAGE,
   LLC; and EXECUTIVE TRUSTEE SERVICES, LLC DBA ETS
15 SERVICES, LLC; and RESIDENTIAL FUNDING COMPANY, LLC

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

02/13/2013 at 08:00:00 AM

Clerk of the Superior Court
By Giovanni Galon,Deputy Clerk

16                    **SUPERIOR COURT OF CALIFORNIA**

17              **COUNTY OF ORANGE — CENTRAL JUSTICE CENTER**

18 Karen Michele Rozier, an Individual; David
   Eugene Rozier, as Trustee, David Bear
19 Irrevocable Living Trust; David Eugene
   Rozier, an Individual,

20                    Plaintiffs,

21         vs.

22 Bank of America, National Association as
   successor by merger to LaSalle Bank National
23 Association as Trustee for RAMP 2007RP1;
   Residential Funding Company, LLC fka
24 Residential Funding Corporation, Attorney-in-
   Fact; GMAC Mortgage, LLC; Executive
25 Trustee Services, LLC dba ETS Services,
   LLC, as Trustee; Adam Barasch, an
26 individual; Luis Rodriguez, an individual;
   Sally Beltran, an individual,

27                    Defendants.

28

Case No. 30-2012-00601310-CU-OR-CJC
Assigned for All Purposes to:
Hon. Derek W. Hunt
Dept. C24

**DEFENDANT RESIDENTIAL FUNDING
COMPANY, LLC'S NOTICE OF
BANKRUPTCY STAY AND
SUGGESTION OF AUTOMATIC STAY**

Action Filed:    September 27, 2012
FAC Filed:       October 29, 2012
SAC Filed:       February 4, 2013
Trial Date:      September 23, 2013

19000.1432/2563999.1

DEFENDANT RESIDENTIAL FUNDING COMPANY, LLC'S NOTICE OF BANKRUPTCY STAY AND
SUGGESTION OF AUTOMATIC STAY

**TO THE HONORABLE COURT, PLAINTIFFS, AND ALL OTHER INTERESTED PARTIES:**

Defendant Residential Funding Company, LLC ("Defendant"), by and through its undersigned counsel, in accordance and consistent with section 362(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), hereby respectfully submits this Notice of Bankruptcy and Suggestion of Automatic Stay, and states as follows:

1. On May 14, 2012 (the "Petition Date"), Residential Capital, LLC and certain of its direct and indirect subsidiaries (collectively, the "Debtors"), including Defendant, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408 (the "Bankruptcy Court"). A true and correct copy of Defendant's voluntary bankruptcy petition is attached hereto as **Exhibit A**.

2. The Debtors' Chapter 11 cases being jointly administered, indexed at case number 12-12020 (MG), and are captioned as follows:

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>              Debtors. | Chapter 11<br><br>Case No. 12-12020 (MG)<br><br>Jointly Administered |

3. As a result of the Bankruptcy Filing, on the Petition Date, the protections of the automatic stay codified in section 362(a) of the Bankruptcy Code arose with regard to the Debtors. Section 362(a), among other things, operates as an automatic stay of: (i) "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding" against the Chapter 11 Debtors (11 U.S.C. § 362(a)(1)); (ii) acts to "obtain possession of property" of the Debtors' Chapter 11 estates (11 U.S.C. § 362(a)(3)); and

1 | (iii) acts to "collect, assess, or recover a claim" against the Debtors arising prior to the Petition

2 | Date (11 U.S.C. § 362(a)(6)).

3 |     4.    On July 13, 2012, the Bankruptcy Court entered a Final Supplemental Order

4 | granting, among other things, the Debtors' Motion for Limited Relief from the automatic stay to

5 | permit non-Debtor parties in foreclosure and eviction proceedings, borrower bankruptcy cases and

6 | title disputes to continue to assert and prosecute certain defenses, claims and counter-claims (the

7 | "Final Supplemental Order"). Paragraphs 14, 15, 16 and 17 of the Final Supplemental Order

8 | identify the categories of defenses, claims and counter-claims for which the automatic stay has

9 | been modified (the "Permitted Claims"). A copy of the Final Supplemental Order is annexed

10 | hereto as **Exhibit B**.

11 |     5.    Based upon a review of the current status of the Lawsuit, the only claim alleged in

12 | Plaintiffs' Second Amended Complaint against Defendant is for Wrongful Foreclosure and that is

13 | a Permitted Claim. Claims that are outside the scope of the relief covered in the Final

14 | Supplemental Order are stayed (the "Stayed Claims"). The continued prosecution of the Stayed

15 | Claims would violate the automatic stay, 11 U.S.C. § 362(a)(1), which expressly precludes "the

16 | commencement or continuation . . . of a judicial, administrative, or other action or proceeding

17 | against the debtor that was or could have been commenced before the commencement of the case

18 | under this title, or to recover a claim against the debtor that arose before the commencement of the

19 | case under this title."

20 |     6.    Pursuant to paragraph 23 of the Final Supplemental Order, any dispute regarding

21 | the extent, application and/or effect of the automatic stay under the Final Supplemental Order,

22 | must be heard and determined in the United States Bankruptcy Court for the Southern District of

23 | New York, jointly administered under Case No. 12-12020, in accordance with the Case

24 | Management Order entered in the Debtors' case [Docket No. 141] and such other and further

25 | orders as may be entered by the United States Bankruptcy Court for the Southern District of New

26

27

28

1    York.[1]

2        7.    This notice has been sent, with a cover letter, to Plaintiffs.

3

4    DATED: February _11_, 2013        SEVERSON & WERSON
                                        A Professional Corporation
5

6

7        By: _Yaron Shaham_____
                                            Yaron Shaham
8

9        Attorneys for Defendants U.S. BANK NATIONAL
        ASSOCIATION, as Trustee, as successor in interest to
10       Bank of America, National Association, as Trustee,
        successor by merger to LaSalle Bank National
11       Association, as Trustee for RAAC 2007-RP1
        (erroneously sued as Bank of America, National
12       Association as successor by merger to LaSalle Bank
        National Association as Trustee for RAMP 2007RP1);
13       GMAC MORTGAGE, LLC; and EXECUTIVE
        TRUSTEE SERVICES, LLC DBA ETS SERVICES,
14       LLC; and RESIDENTIAL FUNDING COMPANY,
        LLC
15

16

17

18

19

20

21

22

23

24

25

26

27    [1]    A copy of the Case Management Order may be obtained at no charge at http://www.kccllc.net/rescap.

28

DEFENDANT RESIDENTIAL FUNDING COMPANY, LLC'S NOTICE OF BANKRUPTCY STAY AND
SUGGESTION OF AUTOMATIC STAY

# EXHIBIT "A"

B 1 (Official Form 1)(04/10)    12-12020-mg    Doc 1    Filed 05/14/12    Entered 05/14/12 06:57:51    Main Document

| United States Bankruptcy Court<br>Southern District of New York | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Residential Funding Company, LLC** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names):<br>**Residential Funding Corporation** | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all): **93-0891336** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State):<br>**8400 Normandale Lake Blvd.**<br>**Suite 350**<br>**Minneapolis, MN**    ZIP CODE **55437** | Street Address of Joint Debtor (No. and Street, City, and State):<br><br><br>ZIP CODE |
| County of Residence or of the Principal Place of Business:<br>**Hennepin** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br><br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address):<br><br>ZIP CODE |

| Location of Principal Assets of Business Debtor (if different from street address above):<br>...    ZIP CODE |
|---|

| Type of Debtor<br>(Form of Organization)<br>(Check one box.) | Nature of Business<br>(Check one box.) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box.) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form*<br>☒ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities,<br>check this box and state type of entity below.)<br>_____ | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in<br>11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☒ Other | ☐ Chapter 7    ☐ Chapter 15 Petition for<br>☐ Chapter 9    Recognition of a Foreign<br>☒ Chapter 11    Main Proceeding<br>☐ Chapter 12    ☐ Chapter 15 Petition for<br>☐ Chapter 13    Recognition of a Foreign<br>    Nonmain Proceeding |
| | **Tax-Exempt Entity**<br>(Check box, if applicable.)<br>☐ Debtor is a tax-exempt organization<br>under Title 26 of the United States<br>Code (the Internal Revenue Code). | **Nature of Debts**<br>(Check one box.)<br>☐ Debts are primarily consumer,    ☒ Debts are primarily<br>debts defined in 11 U.S.C.    business debts<br>§ 101(8) as "incurred by an<br>individual primarily for a<br>personal, family, or house-hold<br>purpose." |

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☒ Full Filing Fee attached.<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach<br>signed application for the court's consideration certifying that the debtor is<br>unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must<br>attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☒ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to<br>insiders or affiliates) are less than $ 2,343,300.<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes<br>of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR<br>COURT USE ONLY |
|---|---|
| ☒ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for<br>distribution to unsecured creditors. | |

Estimated Number of Creditors

| ☐ 1-49 | ☐ 50-99 | ☐ 100-199 | ☒ 200-999 | ☐ 1,000-<br>5,000 | ☐ 5,001-<br>10,000 | ☐ 10,001-<br>25,000 | ☐ 25,001-<br>50,000 | ☐ 50,001-<br>100,000 | ☐ Over<br>100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets

| ☐ $0 to<br>$50,000 | ☐ $50,001 to<br>$100,000 | ☐ $100,001 to<br>$500,000 | ☐ $500,001<br>to $1<br>million | ☐ $1,000,001<br>to $10<br>million | ☐ $10,000,001<br>to $50<br>million | ☐ $50,000,001<br>to $100<br>million | ☐ $100,000,001<br>to $500<br>million | ☐ $500,000,001<br>to $1 billion | ☒ More than<br>$1 billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities

| ☐ $0 to<br>$50,000 | ☐ $50,001 to<br>$100,000 | ☐ $100,001 to<br>$500,000 | ☐ $500,001<br>to $1<br>million | ☐ $1,000,001<br>to $10<br>million | ☐ $10,000,001<br>to $50<br>million | ☐ $50,000,001<br>to $100<br>million | ☐ $100,000,001<br>to $500<br>million | ☐ $500,000,001<br>to $1 billion | ☒ More than<br>$1 billion |
|---|---|---|---|---|---|---|---|---|---|

ny-1012554

| **Voluntary Petition**<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s):<br>Residential Funding Company, LLC |
|---|---|

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.) | | |
|---|---|---|
| Location<br>Where Filed: None. | Case Number:<br>N/A | Date Filed:<br>N/A |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.) | | |
|---|---|---|
| Name of Debtor:<br>See Annex 1 | Case Number:<br>As Assigned | Date Filed:<br>Same |
| District:<br>Southern District of New York | Relationship:<br>Affiliate | Judge:<br>As Assigned |

| **Exhibit A**<br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under Chapter 11.)<br><br>☐  Exhibit A is attached and made a part of this petition. | **Exhibit B**<br>(To be completed if debtor is an individual<br>whose debts are primarily consumer debts.)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X _____<br>  Signature of Attorney for Debtor(s)         (Date) |
|---|---|

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐  Yes, and Exhibit C is attached and made a part of this petition.

☒  No.

---

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

    ☐  Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

    ☐  Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

---

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☒  Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☒  There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐  Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

---

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐  Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

         _____
         (Name of landlord that obtained judgment)

         _____
         (Address of landlord)

☐  Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐  Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐  Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

ny-1012554

B 1 (Official Form) 1 (1/08)                                                                                                                      Page 3

| Voluntary Petition<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s):<br>Residential Funding Company, LLC |
|---|---|

| Signatures | |
|---|---|

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
   Signature of Debtor

X _____
   Signature of Joint Debtor

_____
Telephone Number (if not represented by attorney)

_____
Date

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only **one** box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
   (Signature of Foreign Representative)

_____
(Printed Name of Foreign Representative)

_____
Date

**Signature of Attorney***

X  /s/ Larren M. Nashelsky
   _____
   Signature of Attorney for Debtor(s)
   Larren M. Nashelsky
   Printed Name of Attorney for Debtor(s)
   Morrison & Foerster LLP
   Firm Name
   1290 Avenue of the Americas
   Address
   New York, NY 10104

   (212) 468-8000
   Telephone Number
   May 14, 2012
   Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X  /s/ James Whitlinger
   _____
   Signature of Authorized Individual
   James Whitlinger
   Printed Name of Authorized Individual
   Chief Financial Officer
   Title of Authorized Individual
   May 14, 2012
   Date

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.*

## ANNEX 1

On May 14, 2012, each of the affiliated entities listed below (including the debtor in this chapter 11 case) filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). A motion has been filed or shortly will be filed with the Court requesting that the chapter 11 cases of these entities be consolidated for procedural purposes only and jointly administered.

| Name of Debtor |
| --- |
| ditech, LLC |
| DOA Holding Properties, LLC |
| DOA Properties IX (Lots-Other), LLC |
| EPRE LLC |
| Equity Investment I, LLC |
| ETS of Virginia, Inc. |
| ETS of Washington, Inc. |
| Executive Trustee Services LLC |
| GMAC – RFC Holding Company, LLC |
| GMAC Model Home Finance I, LLC |
| GMAC Mortgage USA Corporation |
| GMAC Mortgage, LLC |
| GMAC Residential Holding Company, LLC |
| GMAC RH Settlement Service, LLC |
| GMACM Borrower LLC |
| GMACM REO LLC |
| GMACR Mortgage Products, LLC |
| HFN REO SUB II, LLC |
| Home Connects Lending Services, LLC |
| Homecomings Financial Real Estate Holdings, LLC |
| Homecomings Financial, LLC |

| |
|---|
| Ladue Associates, Inc. |
| Passive Asset Transactions, LLC |
| PATI A, LLC |
| PATI B, LLC |
| PATI Real Estate Holdings, LLC |
| RAHI A, LLC |
| RAHI B, LLC |
| RAHI Real Estate Holdings, LLC |
| RCSFJV2004, LLC |
| Residential Accredit Loans, Inc. |
| Residential Asset Mortgage Products, Inc. |
| Residential Asset Securities Corporation |
| Residential Capital, LLC |
| Residential Consumer Services of Alabama, LLC |
| Residential Consumer Services of Ohio, LLC |
| Residential Consumer Services of Texas, LLC |
| Residential Consumer Services, LLC |
| Residential Funding Company, LLC |
| Residential Funding Mortgage Exchange, LLC |
| Residential Funding Mortgage Securities I, Inc. |
| Residential Funding Mortgage Securities II, Inc. |
| Residential Funding Real Estate Holdings, LLC |
| Residential Mortgage Real Estate Holdings, LLC |
| RFC – GSAP Servicer Advance, LLC |
| RFC Asset Holdings II, LLC |
| RFC Asset Management, LLC |

| RFC Borrower LLC |
| RFC Construction Funding, LLC |
| RFC REO LLC |
| RFC SFJV-2002, LLC |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| RESIDENTIAL FUNDING COMPANY, LLC, | ) | Case No. 12-_____ (    ) |
|  | ) |  |
|  | ) | Joint Administration Pending |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## LIST OF EQUITY SECURITY HOLDERS

Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure, Residential

Funding Company, LLC (the "Debtor") submits the following list of the Debtor's equity security

holders:

| Entity Name and Address | Percent Ownership |
|---|---|
| GMAC-RFC Holding Company, LLC | 100% |

I, James Whitlinger, the Chief Financial Officer of Residential Funding Company, LLC,

a Delaware limited liability company, declare under penalty of perjury that I have read the

foregoing and that it is true and correct to the best of my information and belief, and will be

supplemented to the extent additional information becomes available.

Dated: May 14, 2012

/s/ James Whitlinger
Name: James Whitlinger
Title:   Chief Financial Officer

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| RESIDENTIAL FUNDING COMPANY, LLC, | ) | Case No. 12- _____  (    ) |
| | ) | |
| | ) | |
| | ) | Joint Administration Pending |
| | ) | |
| Debtor. | ) | |
| | ) | |

## LIST OF CREDITORS

Residential Funding Company, LLC (the "Debtor") and its debtor affiliates set forth on

Annex 1 attached hereto (collectively, the "Debtors") each filed a petition in this Court on May

14, 2012  for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-

1532.  Contemporaneously with the filing of the petitions, the Debtors filed a single consolidated

list of creditors (the "Consolidated List"), in lieu of separate lists.  Due to its voluminous nature,

the Consolidated List is being submitted to the Court electronically.

I, James Whitlinger, the Chief Financial Officer of Residential Funding Company, LLC,

a Delaware limited liability company, declare under penalty of perjury that I have read the

foregoing and that it is true and correct to the best of my information and belief, and will be

supplemented to the extent additional information becomes available.

Dated:  May 14, 2012

/s/ James Whitlinger
Name:  James Whitlinger
Title:   Chief Financial Officer

ny-1012554

Residential Capital LLC, et al.
**Top Unsecured Creditors**
*In USD*
**(All Amounts Are Estimated)**

| No. | Creditor [1] | Creditor Contact | Nature of Claim [2] | Contingent, Unliquidated, or Disputed | Amount of Claim [3] |
|---|---|---|---|---|---|
| 1 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone: (201) 593-2456<br>Fax:<br>Email: kelvin.vargas@db.com | 8.500% Senior Unsecured Notes due April 2013 [4] | | 473,416,000.00 |
| 2 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone: (201) 593-2456<br>Fax:<br>Email: kelvin.vargas@db.com | 750,000,000 Euros Aggregate Principal Amount of 7.125% Notes due May 2012 [4] | | 127,671,000.00 [5] |
| 3 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone: (201) 593-2456<br>Fax:<br>Email: kelvin.vargas@db.com | 8.875% Senior Unsecured Notes due June 2015 [4] | | 112,227,000.00 |
| 4 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone: (201) 593-2456<br>Fax:<br>Email: kelvin.vargas@db.com | £400,000,000 Aggregate Principal Amount of 9.875% Notes due July 2014 [4] | | 103,743,000.00 [6] |
| 5 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone: (201) 593-2456<br>Fax:<br>Email: kelvin.vargas@db.com | 8.500% Senior Unsecured Notes due June 2012 [4] | | 79,879,000.00 |
| 6 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone: (201) 593-2456<br>Fax:<br>Email: kelvin.vargas@db.com | £400,000,000 Aggregate Principal Amount of 8.375% Notes due May 2013 [4] | | 59,379,200.00 [6] |
| 7 | BNYMellon<br>C/O Dechert LLP<br>1095 Avenue of the Americas<br>New York, NY 10036 | Phone: (212) 698-3621<br>Fax: (212) 698-3599<br>Email: hector.gonzalez@dechert.com | Contingent Claim- Securitization | Contingent, Unliquidated, Disputed | Unknown |
| 8 | US Bank<br>C/O Seward & Kissel LLP<br>One Battery Park Plaza<br>New York, NY 10004 | Phone: (212) 574-1391<br>Fax: (212) 480-8421<br>Email: das@sewkis.com | Contingent Claim- Securitization | Contingent, Unliquidated, Disputed | Unknown |
| 9 | Deutsche Bank AG, New York<br>C/O Joe Salama<br>60 Wall Street<br>New York, NY 10005-2836 | Phone: (212) 250-9536<br>Fax: (866) 785-1127<br>Email: joe.salama@db.com | Contingent Claim- Securitization | Contingent, Unliquidated, Disputed | Unknown |
| 10 | Federal Housing Finance Agency<br>C/O Alfred Pollard<br>400 Seventh Street, SW | Phone: (202) 649-3804<br>Fax:<br>Email: GeneralCounsel@FHFA.org | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 11 | MBIA, Inc.<br>C/O Cadwalader, Wickersham & Taft<br>One World Financial Center<br>New York, NY 10281 | Phone: (212) 504-6373<br>Fax: (212) 504-6666<br>Email: gregory.petrick@cwt.com | Contingent Claim- Litigation | Contingent, Unliquidated, Disputed | Unknown |
| 12 | Ambac Assurance Corp<br>C/O Patterson Belknap Webb & Tyler<br>1133 Avenue of the Americas<br>New York, NY 10036 | Phone: (212) 336-2140<br>Fax: (212) 336-2094<br>Email: prforlenza@pbwt.com | Contingent Claim- Litigation | Contingent, Unliquidated, Disputed | Unknown |
| 13 | Financial Guaranty Insurance Co.<br>C/O Jones Day<br>222 East 41st Street<br>New York, NY 10017-6702 | Phone: (212) 326-7844<br>Fax: (212) 755-7306<br>Email: cball@jonesday.com | Contingent Claim- Litigation | Contingent, Unliquidated, Disputed | Unknown |
| 14 | Assured Guaranty Corp.<br>C/O Margaret Yanney<br>31 West 52nd Street<br>New York, NY 10019 | Phone: (212) 857-0581<br>Fax: (212) 893-2792<br>Email: myanney@assuredguaranty.com | Contingent Claim- Litigation | Contingent, Unliquidated, Disputed | Unknown |

**Residential Capital LLC, et al.**
**Top Unsecured Creditors**
*In USD*
**(All Amounts Are Estimated)**

| No. | Creditor [1] | Creditor Contact | Nature of Claim [2] | Contingent, Unliquidated, or Disputed | Amount of Claim [3] |
|---|---|---|---|---|---|
| 15 | Thrivent Financial for Lutherans<br>C/O Teresa J. Rasmussen<br>625 Fourth Avenue S.<br>Minneapolis, MN 55415-1624 | Phone:  (800) 847-4836<br>Fax:<br>Email: | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 16 | West Virginia Investment Management Board<br>C/O Craig Slaughter<br>500 Virginia Street East, Suite 200 | Phone:  (304) 345-2672<br>Fax:<br>Email: | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 17 | Allstate Insurance<br>C/O Quinn Emanuel Urquhart & Sullivan<br>865 S. Figueroa Street, 10th Floor | Phone:  (213) 443-3000<br>Fax:<br>Email:  danbrockett@quinnemanuel.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 18 | Western & Southern<br>C/O Wollmuth Maher & Deutsch LLP<br>500 Fifth Avenue<br>New York, NY 10110 | Phone:  (212) 382-3300<br>Fax:<br>Email:  dwollmuth@wmd-law.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 19 | The Union Central Life Insurance Company<br>C/O Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900 | Phone:  (619) 231-1058<br>Fax:    (519) 231-7423<br>Email:  stevep@rgrdlaw.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 20 | Cambridge Place Investment Management Inc.<br>C/O Donnelly, Conroy & Gelhaar LLP<br>1 Beacon Street, 33rd Floor | Phone:  (617) 720-2880<br>Fax:    (617) 720-3553<br>Email:  msd@dcglaw.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 21 | Sealink Funding Limited<br>C/O Labaton Sucharow LLP<br>140 Broadway | Phone:  (212) 907-0869<br>Fax:    (212) 883-7069<br>Email:  jbernstein@labaton.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 22 | Stichting Pensioenfonds ABP<br>C/O Grant & Eisenhofer<br>123 S. Justison Street | Phone:  (302) 622-7040<br>Fax:    (302) 622-7100<br>Email:  gjarvis@gelaw.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 23 | Huntington Bancshares Inc.<br>C/O Grant & Eisenhofer<br>123 S. Justison Street | Phone:  (302) 622-7040<br>Fax:    (302) 622-7100<br>Email:  gjarvis@gelaw.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 24 | Federal Home Loan Bank of Chicago<br>C/O Keller Rohrback LLP<br>1201 Third Avenue, Suite 3200 | Phone:  (206) 623-1900<br>Fax:    (206) 623-3384<br>Email:  dloeser@kellerrohrback.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 25 | Federal Home Loan Bank of Boston<br>C/O Keller Rohrback LLP<br>1201 Third Avenue, Suite 3200 | Phone:  (206) 623-1900<br>Fax:    (206) 623-3384<br>Email:  dloeser@kellerrohrback.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 26 | Federal Home Loan Bank of Indianapolis<br>C/O Keller Rohrback LLP<br>1201 Third Avenue, Suite 3200 | Phone:  (206) 623-1900<br>Fax:    (206) 623-3384<br>Email:  dloeser@kellerrohrback.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |

Residential Capital LLC, et al.
Top Unsecured Creditors
*In USD*
(All Amounts Are Estimated)

| No. | Creditor [1] | Creditor Contact | Nature of Claim [2] | Contingent, Unliquidated, or Disputed | Amount of Claim [3] |
|-----|-------------|------------------|---------------------|----------------------------------------|---------------------|
| 27 | Massachusetts Mutual Life Insurance Company<br>C/O Bernadette Harrigan<br>1295 State Street | Phone: (413) 788-8411<br>Fax: (413) 226-4268<br>Email: | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 28 | National Credit Union Administration Board<br>C/O Susman Godfrey LLP<br>1901 Avenue of the Stars, Suite 950 | Phone: (310) 789-3100<br>Fax: (310) 789-3150<br>Email: mseltzer@susmangodfrey.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 29 | The Charles Schwab Corporation<br>C/O Grais & Ellsworth LLP<br>70 East 55th Street<br>New York, NY 10022 | Phone: (212) 755-0100<br>Fax: (212) 755-0052<br>Email: | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 30 | New Jersey Carpenters Health Fund<br>C/O Cohen Milstein Sellers & Toll PLLC<br>150 East 52nd Street, Thirtieth Floor<br>New York, NY 10022 | Phone: (212) 838-7797<br>Fax: (212) 838-7745<br>Email: jlaitman@cohenmilstein.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 31 | New Jersey Carpenters Vacation Fund<br>C/O Cohen Milstein Sellers & Toll PLLC<br>150 East 52nd Street, Thirtieth Floor<br>New York, NY 10022 | Phone: (212) 838-7797<br>Fax: (212) 838-7745<br>Email: jlaitman@cohenmilstein.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 32 | Boilermaker Blacksmith National Pension Trust<br>C/O Cohen Milstein Sellers & Toll PLLC<br>150 East 52nd Street, Thirtieth Floor<br>New York, NY 10022 | Phone: (212) 838-7797<br>Fax: (212) 838-7745<br>Email: jlaitman@cohenmilstein.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 33 | Police and Fire Retirement System of the City of Detroit<br>C/O Zwerling, Schachter & Zwerling<br>41 Madison Avenue<br>New York, NY 10010 | Phone: (212) 223-3900<br>Fax: (212) 371-5969<br>Email: rzwerling@zsz.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 34 | Orange County Employees Retirement System<br>C/O Cohen Milstein Sellers & Toll PLLC<br>150 East 52nd Street, Thirtieth Floor<br>New York, NY 10022 | Phone: (212) 838-7797<br>Fax: (212) 838-7745<br>Email: jlaitman@cohenmilstein.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 35 | Midwest Operating Engineers Pension Trust Fund<br>C/O Cohen Milstein Sellers & Toll PLLC<br>150 East 52nd Street, Thirtieth Floor<br>New York, NY 10022 | Phone: (212) 838-7797<br>Fax: (212) 838-7745<br>Email: jlaitman@cohenmilstein.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 36 | Iowa Public Employees Retirement System<br>C/O Cohen Milstein Sellers & Toll PLLC<br>150 East 52nd Street, Thirtieth Floor<br>New York, NY 10022 | Phone: (212) 838-7797<br>Fax: (212) 838-7745<br>Email: jlaitman@cohenmilstein.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 37 | Brian Kessler, et al<br>C/O Walters Bender Strohbehn & Vaughan, P.C.<br>2500 City Center Square, 1100 Main, Suite 2500 | Phone: (816) 421-6620<br>Fax: (816) 421-4747<br>Email: jhaake@wbsvlaw.com | Contingent Litigation | Contingent, Unliquidated, Disputed | Unknown |
| 38 | Donna Moore<br>C/O Kessler Topaz Meltzer & Check, LLP<br>280 King of Prussia Road<br>Radnor, PA 19087 | Phone: (610) 822.0242<br>Fax: (610) 667.7056<br>Email: eclolko@ktmc.com | Contingent Litigation | Contingent, Unliquidated, Disputed | Unknown |

Residential Capital LLC, et al.
Top Unsecured Creditors
In USD
(All Amounts Are Estimated)

| No. | Creditor [1] | Creditor Contact | Nature of Claim [2] | Contingent, Unliquidated, or Disputed | Amount of Claim [3] |
|---|---|---|---|---|---|
| 39 | Steven And Ruth Mitchell<br>C/O Walters Bender Stroehbehn & Vaughan, P.C<br>2500 City Center Square, 1100 Main Street<br>Kansas City, MO 64105 | Phone: (816) 421-6620<br>Fax: (816) 421-4747<br>Email: awalter@wbsvlaw.com | Settled Litigation | | 14,500,000.00 |
| 40 | Indecomm Global Services<br>200 Middlesex Essex Turnpike<br>Suite 102<br>Iselin, NJ 08830 | Phone: (732) 404-0081 Ext. 208<br>Fax:<br>Email: Rajan@indecomm.net | General Trade Payable | | 675,000.00 |
| 41 | Alan Gardner<br>C/O Williamson & Williams<br>187 Parfitt Way SW, Suite 250<br>Bainbridge Island, WA 98110 | Phone: (206) 441-5444<br>Fax: (206) 780-5557<br>Email: roblin@williamslaw.com | Settled Litigation | | 555,000.00 |
| 42 | Tiffany Smith<br>C/O Schroeter Goldmark & Bender<br>500 Central Bldg., 810 Third Ave.<br>Seattle, WA 98104 | Phone: (206) 622-8000<br>Fax: (206) 682-2305<br>Email: info@sgb-law.com | Settled Litigation | | 275,000.00 |
| 43 | Don E. Diane M. Patterson<br>C/O Siegel Brill, P.A.<br>100 Washington Avenue South, Suite 1300<br>Minneapolis, MN 55401 | Phone: (612) 337-6100<br>Fax: (612) 339-6591<br>Email: heidifurlong@siegelbrill.com | Settled Litigation | | 157,950.00 |
| 44 | Wells Fargo & Company<br>Wf 8113, P.O. Box 1450<br>Minneapolis, MN 55485 | Phone: (612) 667-7121<br>Fax:<br>Email: | General Trade Payable | | 121,000.00 |
| 45 | Credstar<br>12395 First American Way<br>Poway, CA 92064 | Phone: (800) 921-6700, ext 5129<br>Fax:<br>Email: LPulford@corelogic.com | General Trade Payable | | 99,773.65 |
| 46 | Emortgage Logic<br>9151 Boulevard 26, Suite 400<br>N. Richland Hills, TX 76180-5605 | Phone: (817) 581-2900<br>Fax:<br>Email: info@emortgagelogic.com | General Trade Payable | | 87,910.00 |
| 47 | Aegis Usa Inc.<br>2049 Century Park East, Suite 300<br>Los Angeles, CA 90067 | Phone: +63 2 8858000<br>Fax:<br>Email: Kapil.Chopra@aegisglobal.com | General Trade Payable | | 72,116.56 |
| 48 | ISGN Fulfilment Services Inc<br>3220 Tillman Drive, Suite 301<br>Bensalem, PA 19020 | Phone: (860) 656-7571<br>Fax:<br>Email: Scott.slifer@isgn.com | General Trade Payable | | 65,754.00 |
| 49 | US Bank<br>Corporate Trust Services<br>60 Livingston Ave<br>St. Paul, MN 55107 | Phone: (651) 495-3839<br>Fax: (866) 869-1624<br>Email: michelle.moeller@usbank.com | General Trade Payable | | 64,000.00 |
| 50 | Deborah Pangel and Lee Sachs<br>C/O Linda Tirelli<br>One North Lexington Avenue, 11th Floor<br>White Plains, NY 10601 | Phone: (914) 946-0860<br>Fax: (914) 946-0870<br>Email: WestchesterLegal@aol.com | Settled Litigation | | 55,000.00 |

Notes:
[1]    For all litigation settlements, the counterparty's attorney is listed as addressee.
[2]    General Trade Payable claims are based on balances in the Debtors' Accounts Payable system as of close of business May 11, 2012.
[3]    Estimated amount of claim for unsecured bonds represents principal balances as of 5/9/12 and does not include accrued interest or fees.
[4]    As of Indenture dated June 24, 2005 between Residential Capital Corporation and Deutsche Bank Trust Company Americas,
         as Indenture Trustee (amended on June 24, 2005, November 21, 2005, and May 16, 2008). A $20.1 million semi-annual interest payment
         due in April 2012 for the senior unsecured note maturing in April 2013 was not made.
[5]    Estimated amount of claim for EUR notes is based on an exchange rate of 1.29480 on May 11, 2012.
[6]    Estimated amount of claim for GBP notes is based on an exchange rate of 1.61418 on May 11, 2012.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| RESIDENTIAL FUNDING COMPANY, LLC, | ) | Case No. 12-_____ (   ) |
|  | ) |  |
|  | ) |  |
|  | ) | Joint Administration Pending |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## CORPORATE OWNERSHIP STATEMENT

In accordance with Rule 1007(a)(1) of the Federal Rules of Bankruptcy Procedure,

Residential Funding Company, LLC (the "Debtor") hereby states that the following corporations

directly or indirectly own 10% or more of the Debtor's equity interests as of May 14, 2012:

| Shareholder | Percentage of Shares Held |
|---|---|
| GMAC-RFC Holding Company, LLC | 100% |

I, James Whitlinger, the Chief Financial Officer of Residential Funding Company, LLC,

a Delaware limited liability company, declare under penalty of perjury that I have read the

foregoing and that it is true and correct to the best of my information and belief, and will be

supplemented to the extent additional information becomes available.

Dated:  May 14, 2012

/s/ James Whitlinger
Name: James Whitlinger
Title:   Chief Financial Officer

ny-1012554

## ACTION BY WRITTEN CONSENT OF THE BOARD OF DIRECTORS
## OF RESIDENTIAL FUNDING COMPANY, LLC,
## A SUBSIDIARY OF RESIDENTIAL CAPITAL, LLC

The undersigned, being all of the Directors of Residential Funding Company, LLC ("Residential Funding"), an indirect subsidiary of Residential Capital, LLC ("ResCap"), and constituting the entire Board of Directors of Residential Funding (the "Board"), acting pursuant to applicable law, hereby waives any and all requirements for the holding of a meeting, including, without limitation, any requirements as to call and notice thereof, and consents to the adoption of the following recitals and resolutions and to the actions set forth herein as of this 13th day of May, 2012, which actions shall have the same force and effect as if taken by affirmative vote at a meeting of the Board, duly called and held.

WHEREAS, the Board (i) has extensively reviewed the alternatives available to Residential Funding, (ii) has been advised of and considered the decision of the Board of Directors of ResCap to authorize the commencement of a case under the provisions of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") for itself and for certain of its direct and indirect subsidiaries, and (iii) has determined that seeking relief under the provisions of Chapter 11 of the Bankruptcy Code presents the best opportunity for preserving and maximizing the value of the enterprise for the benefit of Residential Funding, its subsidiaries, creditors, employees, stakeholders and other interested parties;

WHEREAS, Residential Funding has engaged in negotiations ranging from preliminary to late-stage with a number of prospective strategic and financial investors who expressed interest in pursuing a transaction and sale process to acquire substantially all of the assets of Residential Funding pursuant to 11 U.S.C. §§ 105, 363 and 365 (a "Section 363 Sale");

WHEREAS, Residential Funding has narrowed the field of prospective investors interested in pursuing a Section 363 Sale to Fortress Investment Group LLC ("Fortress"), a leading, highly diversified global investment management firm;

WHEREAS, the proposed transaction with Fortress would entail the sale of substantially all of Residential Funding's assets, including its mortgage loan origination and servicing businesses, in a Section 363 Sale as part of a Chapter 11 bankruptcy proceeding filed by Residential Funding, and the institution of an auction process under the supervision of the Bankruptcy Court to ensure that the price and terms obtained by Residential Funding constitute the best available transaction for Residential Funding (such transactions being collectively referred to herein as the "Fortress Transaction");

WHEREAS, the Board has determined that it is in the best interests of Residential Funding that Residential Funding pursue the Fortress Transaction;

WHEREAS, the Board has also been presented by the management of Residential Funding with a proposed Superpriority Debtor-in-Possession Credit and Guaranty Agreement (the "Credit Agreement") by and among GMACM Borrower, LLC ("GMACM Borrower"), RFC Borrower, LLC ("RFC Borrower"; together with GMACM Borrower, the "Borrowers"), ResCap, GMAC Mortgage, LLC ("GMAC Mortgage"), Residential Funding, certain subsidiaries of

ResCap from time to time party thereto as guarantors (collectively, the "Guarantors"; the Guarantors collectively with the Borrowers, the "Credit Parties," and each, a "Credit Party"), GMAC Mortgage and Residential Funding, as Administrators, Originators, Receivables Custodians and Servicers, GMAC Mortgage, as GMACM Servicer, certain financial institutions from time to time party thereto as lenders (the "Lenders"), Barclays Bank PLC, ("Barclays") as administrative agent for the Lenders (the "Administrative Agent"), Barclays, as collateral agent (the "Collateral Agent"), and Barclays, as syndication agent, and the other persons from time to time party thereto, pursuant to which Residential Funding intends to (i) provide an absolute and unconditional guaranty (the "Guaranty"), on a joint and several basis with the other guarantors, of all obligations, liabilities and indebtedness of the Credit Parties, as contemplated by or specified in the Credit Documents (as defined below) and the Orders (as defined in the Credit Agreement) (the "Obligations") and (ii) grant to the Collateral Agent security interests, pledges and encumbrances, as contemplated by or specified in the Credit Documents and the Orders;

WHEREAS, the Board has determined that Residential Funding will benefit, directly or indirectly from the loans being made under the Credit Agreement and that it is in the best interests of Residential Funding to grant a lien and to guaranty the Obligations on the terms and conditions set forth in the Credit Agreement;

WHEREAS, the Board has also been presented by the management of Residential Funding with an RFC Receivables Pooling and Purchase Agreement (the "Pooling Agreement") to be entered into between Residential Funding and RFC Borrower, pursuant to which it is intended that Residential Funding sell and assign certain receivables and the proceeds thereof (the "Transferred Receivables") to RFC Borrower;

WHEREAS, pursuant to an RFC Mortgage Loan Purchase and Contribution Agreement (the "Mortgage Loan Purchase Agreement") to be entered into between Residential Funding and RFC Borrower, it is intended that Residential Funding sell and contribute certain mortgage loans and related assets (the "Transferred Mortgage Loans"; together with the Transferred Receivables, the "Transferred Assets") to RFC Borrower;

WHEREAS, pursuant to an RFC Receivables Purchase Agreement (the "Receivables Purchase Agreement"; together with the Pooling Agreement and the Mortgage Loan Purchase Agreement, the "RFC Transfer Agreements") to be entered into among Residential Funding, as Originator and Servicer, RFC Borrower, and GMAC Mortgage Servicer Advance Funding Company Ltd. ("GMAC Mortgage Servicer"), as "GSAP Transferor," it is intended that the GSAP Transferor sell and assign certain receivables to RFC Borrower;

WHEREAS, the Board has determined that it is in the best interests of Residential Funding to transfer the Transferred Assets to RFC Borrower under the terms and conditions of the RFC Transfer Agreements set forth above;

WHEREAS, under (a) a Satisfaction and Discharge Agreement (the "Satisfaction and Discharge Agreement") to be entered into between GMAC Mortgage, Residential Funding, GMAC Mortgage Servicer, as the "GSAP Issuer," The Bank of New York Mellon ("BONY"), Barclays, and (b) an Omnibus Termination Agreement (together with the Satisfaction and Discharge Agreement, the "GSAP Termination Agreements") to be entered into between GMAC

Mortgage, Residential Funding, the GSAP Issuer, GMACR Mortgage Products, LLC, RFC-GSAP Servicer Advance, LLC, BONY, MaplesFS Limited and Barclays, it is intended that the Fourth Amended and Restated Indenture, dated as of March 15, 2011 (the "GSAP Indenture"), which amends and restates the Third Amended and Restated Indenture, dated as of April 15, 2010 (as amended by Amendment No. 1 dated as of January 26, 2011), which amended and restated a Second Amended and Restated Indenture, dated as of March 6, 2008, which amended and restated a First Amended and Restated Indenture, dated as of March 18, 2005, which amended and restated an Indenture dated as of June 30, 2004 (the "Base Indenture"), among the GSAP Issuer, GMAC Mortgage, as an administrator and a servicer, Residential Funding, as an administrator and a servicer, and BONY, as indenture trustee, calculation agent and paying agent (the "GSAP Indenture Trustee"), as such Base Indenture was amended by the Series 2012-VF1 Indenture Supplement and Amendment No. 1, dated as of March 13, 2012, by and among the GSAP Issuer, GMAC Mortgage, Residential Funding, the GSAP Indenture Trustee and Barclays, as administrative agent, will be satisfied and discharged and certain ancillary agreements relating to the GSAP Indenture and the Base Indenture shall be terminated;

WHEREAS, pursuant to (a) a Payoff Letter (the "Payoff Letter") to be delivered by BMMZ Holdings LLC ("BMMZ") and acknowledged and agreed to by Residential Funding, GMAC Mortgage and ResCap and (b) certain notices (the "BMMZ Notices" and, together with the Payoff Letter, the "BMMZ Termination Agreements") delivered in connection therewith, Residential Funding and GMAC Mortgage will repurchase all mortgage loans sold by such party to BMMZ under the Master Repurchase Agreement (the "Repurchase Agreement") dated as of December 21, 2011, among Residential Funding, as seller, GMAC Mortgage, as seller and servicer, ResCap, as guarantor and BMMZ, as buyer, all obligations of Residential Funding and GMAC Mortgage under the Repurchase Agreement will be satisfied and certain ancillary agreements relating to the Repurchase Agreement shall be terminated;

WHEREAS, the Board has determined that it is in the best interests of Residential Funding to enter into the GSAP Termination Agreements and the BMMZ Termination Agreements (the "Termination Agreements");

WHEREAS, in connection with entering into the Credit Agreement, the Credit Parties may negotiate, prepare, execute, deliver, acknowledge, attest and perform (or cause to be negotiated, prepared, executed, delivered, acknowledged, attested and performed) any applicable fee letters, engagement letters, commitment letters, promissory notes, guaranty agreements, collateral documents, pledge agreements, cash collateral and reimbursement agreements, deeds of trust, mortgages, control agreements, custodial agreements, other security agreements, assignments, endorsements and other instruments of transfer, intercreditor and/or subordination agreements, agency agreements, instruction letters, appointment and authorization agreements, payoff letters, financing statements, hedging agreements and other agreements, certificates, instruments and documents as may be contemplated by, related to or required in connection with the Credit Agreement or the transactions contemplated thereby (collectively with the Credit Agreement, Guaranty, the Receivables Purchase Agreement, Pooling Agreement and Mortgage Loan Purchase Agreement, the "Credit Documents");

WHEREAS, the Board has been presented with an Asset Purchase Agreement (the "NSM Asset Purchase Agreement"), among ResCap, Residential Funding, GMAC

Mortgage, Executive Trustee Services, LLC ("ETS LLC"), EPRE LLC ("EPRE"), ETS of Washington, Inc., ("ETS WA") and the additional sellers identified on Schedule A to the NSM Asset Purchase Agreement (together with ResCap, Residential Funding, GMAC Mortgage, ETS LLC, ETS WA and EPRE, the "Sellers") and NationStar Mortgage LLC ( "Purchaser"), pursuant to which the Sellers will sell certain of their assets to Purchaser and Purchaser will assume certain of the Sellers' Liabilities on the terms and conditions set forth in the NSM Asset Purchase Agreement (the "NSM Asset Sale");

WHEREAS, the Board has also been presented with a Deposit Escrow Agreement (the "Escrow Agreement"), among the Sellers, Purchaser and JPMorgan Chase Bank, NA as the Escrow Agent with respect to the Cash Deposit (as defined in the NSM Asset Purchase Agreement);

WHEREAS, the Board has also been presented with an Asset Purchase Agreement (the "AFI Asset Purchase Agreement," together with the NSM Asset Purchase Agreement and the Escrow Agreement, the "Asset Purchase Agreements"), between ResCap, Residential Funding and GMAC Mortgage, and BMMZ and Ally Financial Inc. ("AFI"), pursuant to which such Sellers will sell certain Whole Loans, Advances (each as defined in the AFI Asset Purchase Agreement) and other assets to BMMZ (the "AFI Asset Sale"), and AFI will guarantee the obligations of BMMZ thereunder;

WHEREAS, the Board has determined that it is in the best interests of Residential Funding to pursue the NSM Asset Sale and the AFI Asset Sale and to enter into the Asset Purchase Agreements;

WHEREAS, the Board has had the opportunity to fully consider each of the strategic alternatives available to Residential Funding;

WHEREAS, after consideration of all factors and information the Board deemed relevant, the Board finds that it is desirable for, fair to and in the best interests of Residential Funding, its subsidiaries, creditors, stakeholders and other parties in interest, that Residential Funding (i) file or cause to be filed a voluntary petition for relief under the provisions of Chapter 11 of the Bankruptcy Code in which the authority to operate as a debtor-in-possession will be sought (the "Chapter 11 Filing"), (ii) effect the Fortress Transaction as a Section 363 Sale, (iii) execute and deliver the Credit Agreement and the other Credit Documents, to the extent party thereto, and perform its obligations thereunder, including the provision of the Guaranty and granting a security interest, (iv) transfer the Transferred Assets to RFC Borrower on the terms and conditions set forth in the RFC Transfer Agreements, (v) enter into the Termination Agreements, and (vi) enter into the Asset Purchase Agreements.

NOW THEREFORE, BE IT RESOLVED as follows:

COMMENCEMENT OF BANKRUPTCY CASES

RESOLVED, that Residential Funding is authorized and directed to file a petition seeking relief under the provisions of Chapter 11 of the Bankruptcy Code;

**RESOLVED**, that each of the Authorized Officers of Residential Funding (it being understood that, for the purposes of these resolutions, the "Authorized Officers" of Residential Funding shall include, without limitation, the most senior officer of Residential Funding and any other officer determined by the Chief Executive Officer or Chief Financial Officer of Residential Funding to be an appropriate officer with respect to the action taken) is hereby authorized, empowered and directed, in the name and on behalf of Residential Funding, to execute and verify a petition under Chapter 11 of the Bankruptcy Code and to cause the same to be filed in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in such form and at such time as the Authorized Officer executing such petition on behalf of Residential Funding shall determine;

**RESOLVED**, that in connection with the commencement of the Chapter 11 case by Residential Funding, each Authorized Officer is authorized, in the name and on behalf of Residential Funding, to negotiate, execute, and deliver such notes, security and other agreements, and instruments as such Authorized Officer considers appropriate to enable Residential Funding to enter into one or more agreements to (i) guaranty the Obligations under the Credit Agreement, and (ii) utilize cash collateral on the terms and conditions such Authorized Officer or Authorized Officers executing the same may consider necessary, proper, or desirable, and to consummate the transactions contemplated by such notes, security and other agreements and instruments on behalf of Residential Funding, subject to Bankruptcy Court approval;

**RESOLVED**, that each Authorized Officer is authorized and directed, in the name and on behalf of Residential Funding, to cause Residential Funding to enter into, execute, deliver, certify, file and/or record, negotiate, and perform (or direct others to do so on their behalf as provided herein), any and all petitions, schedules, lists, motions, certifications, agreements, instruments, affidavits, applications, including, without limitation, applications for approvals or rulings of governmental or regulatory authorities, or other documents, and in that connection to employ and retain assistance by legal counsel, accountants or other professionals, and to take such other actions, as in the judgment of such Authorized Officer shall be or become necessary, proper, or desirable in connection with the Chapter 11 Filing contemplated hereby, with a view to the successful prosecution of such case, including any and all action necessary, proper or desirable in connection with obtaining the use of cash collateral or debtor-in-possession financing;

**RESOLVED**, that the Board approves and endorses Residential Funding taking any and all action, including authorizing a filing in the Bankruptcy Court, and to execute and deliver all documents, agreements, motions and pleadings as are necessary, proper, or desirable to enable Residential Funding to carry out the filing in Bankruptcy Court contemplated hereby, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code;

## SECTION 363 ASSET SALE AUTHORIZATION

**RESOLVED**, that the Authorized Officers, each acting alone or with one or more other Authorized Officers be, and they hereby are authorized, empowered and directed, to petition the Bankruptcy Court to effect the Fortress Transaction through an auction process overseen by the Bankruptcy Court in a Section 363 Sale;

**RESOLVED**, that the Authorized Officers, each acting alone or with one or more other Authorized Officers be, and they hereby are, authorized and empowered to execute and file on behalf of Residential Funding all petitions, schedules, lists and other motions, papers or documents, and to take any and all action that they deem necessary or advisable to effect the Fortress Transaction as a Section 363 Sale;

## DEBTOR-IN-POSSESSION FINANCING AUTHORIZATION

**RESOLVED**, that Residential Funding is authorized to grant to the Collateral Agent and the Lenders security interests, pledges and encumbrances in and of certain property of Residential Funding as provided in the Credit Agreement;

**RESOLVED**, that the form, terms and provisions of the Credit Agreement, including the Guaranty, together with all schedules and exhibits thereto, of which a draft was submitted to this Board, are advisable and fair to and in the best interests of Residential Funding and are in all respects approved;

**RESOLVED**, that the Authorized Officers, each acting alone or with one or more Authorized Officers, may (i) negotiate, execute and deliver for and on behalf of Residential Funding, the Credit Agreement and the other Credit Documents referred to therein to which Residential Funding is a party, including the Collateral Documents (as defined in the Credit Agreement) to be delivered thereunder, in substantially the forms hereby approved, with such changes, additions or deletions as the Authorized Officer executing the same may approve, such execution to be conclusive evidence of such approval, and (ii) negotiate, execute and deliver all other instruments, certificates, papers, agreements and other applicable Credit Documents which the Lenders, the Administrative Agent or the Collateral Agent may require in connection with the Credit Agreement in such form and of such content as any such Authorized Officer shall approve, such execution to be conclusive evidence of such approval;

**RESOLVED**, that any Authorized Officer is authorized to negotiate, execute and deliver, for and on behalf of Residential Funding, any addendum to, amendment of, or other renewal or extension of the Credit Agreement, or any other Credit Documents at any time after the execution thereof, such addendum, amendment, renewal or extension to be in such form and of such content as shall be approved by the Authorized Officer who executes the same, such execution to be conclusive evidence of such approval;

**RESOLVED**, that the execution, delivery and consummation of the transactions contemplated by the Credit Agreement, in substantially the form of and with terms and conditions as presented to the Board (with such changes or additions thereto as the Authorized Officer executing the same shall deem necessary, advisable or appropriate) and the other Credit Documents and all other instruments required or deemed necessary or desirable by any Authorized Officer in connection with the Credit Agreement and the performance by Residential Funding of its obligations thereunder (including, without limitation, with respect to (i) the terms of the Guaranty and the granting of liens and security interests to be granted under the Credit Documents and Orders and (ii) the payment of any fees and expenses associated therewith), be, and they hereby are, adopted, approved, authorized and ratified in all respects;

Unanimous Written Consent of Board of Residential Funding Company, LLC

ny-1040097

RESOLVED, that any Authorized Officer, or any other officer or employee of Residential Funding authorized by an Authorized Officer in accordance with Residential Funding's procedures, may pay any and all costs, expenses and fees, do and perform all acts and execute and deliver any further instrument, certificate or document in the name and on behalf of Residential Funding in connection with the Credit Documents, as such Authorized Officer deems necessary or appropriate to carry out the purposes and intent of these resolutions, the execution thereof by such Authorized Officer to be conclusive evidence of such determination;

RESOLVED, that the authority given in these resolutions is retroactive and any and all acts authorized herein performed before the passage of these resolutions in connection with the Credit Documents are ratified and affirmed;

RESOLVED, that these resolutions shall continue in full force and effect until the Administrative Agent receives notice in writing of their revocation by a resolution duly adopted by the Board (provided that any such notice shall not affect the Credit Agreement and any other Credit Documents in effect at the time such notice is given or any outstanding borrowings and other extensions of credit from the Administrative Agent or the Lenders under the Credit Documents or otherwise); and

RESOLVED, that the Credit Agreement, together with its schedules and exhibits, and any and all other Credit Documents referred to therein, submitted to this Board shall be filed by the Secretary or Assistant Secretary of Residential Funding among the records of Residential Funding;

## AUTHORIZATION OF CERTAIN ASSET TRANSFERS

RESOLVED, that Residential Funding is authorized to (i) sell and assign the Transferred Receivables to RFC Borrower as provided in the Pooling Agreement, and (ii) sell and contribute the Transferred Mortgage Loans to RFC Borrower as provided in the Mortgage Loan Purchase Agreement;

RESOLVED, that the form, terms and provisions of the RFC Transfer Agreements, together with all attachments thereto, of which a draft was submitted to this Board, are in all respects approved;

RESOLVED, that the Authorized Officers, each acting alone or with one or more Authorized Officers, may (i) negotiate, execute and deliver for and on behalf of Residential Funding, the RFC Transfer Agreements, in substantially the forms hereby approved, with such changes, additions or deletions as the Authorized Officer executing the same may approve, such execution to be conclusive evidence of such approval, and (ii) negotiate, execute and deliver all other instruments, certificates, papers, agreements and other documents which may be required in connection with the RFC Transfer Agreements in such form and of such content as any such Authorized Officer shall approve, such execution to be conclusive evidence of such approval;

RESOLVED, that any Authorized Officer is authorized to negotiate, execute and deliver, for and on behalf of Residential Funding, any addendum to, amendment of, or other renewal or extension of the RFC Transfer Agreements at any time after the execution thereof, such addendum, amendment, renewal or extension to be in such form and of such content as shall be

approved by the Authorized Officer who executes the same, such execution to be conclusive evidence of such approval;

RESOLVED, that any Authorized Officer, or any other officer or employee of Residential Funding authorized by an Authorized Officer in accordance with Residential Funding's procedures, may pay any and all costs, expenses and fees, do and perform all acts and execute and deliver any further instrument, certificate or document in the name and on behalf of Residential Funding in connection with the RFC Transfer Agreements, as such Authorized Officer deems necessary or appropriate to carry out the purposes and intent of these resolutions;

RESOLVED, that the authority given in these resolutions is retroactive and any and all acts authorized herein performed before the passage of these resolutions in connection with the RFC Transfer Agreements are ratified and affirmed;

RESOLVED, that the RFC Transfer Agreements, together with the attachments thereto, and any and all other documents referred to therein, submitted to Residential Funding, shall be filed by the Secretary or Assistant Secretary of Residential Funding among the records of Residential Funding;

## AUTHORIZATION OF THE TERMINATION AGREEMENTS

RESOLVED, that the form, terms and provisions of the Termination Agreements, together with all attachments thereto, drafts of which were submitted to this Board, are in all respects approved;

RESOLVED, that the Authorized Officers, each acting alone or with one or more Authorized Officers, may (i) negotiate, execute and deliver for and on behalf of Residential Funding, the Termination Agreements, in substantially the forms hereby approved, with such changes, additions or deletions as the Authorized Officer executing the same may approve, such execution to be conclusive evidence of such approval, and (ii) negotiate, execute and deliver all other instruments, certificates, papers, agreements and other documents which may be required in connection with the Termination Agreements in such form and of such content as any such Authorized Officer shall approve, such execution to be conclusive evidence of such approval;

RESOLVED, that any Authorized Officer, or any other officer or employee of Residential Funding authorized by an Authorized Officer in accordance with Residential Funding's procedures, may pay any and all costs, expenses and fees, do and perform all acts and execute and deliver any further instrument, certificate or document in the name and on behalf of Residential Funding in connection with the Termination Agreements, as such Authorized Officer deems necessary or appropriate to carry out the purposes and intent of these resolutions;

RESOLVED, that the authority given in these resolutions is retroactive and any and all acts authorized herein performed before the passage of these resolutions in connection with the Termination Agreements are ratified and affirmed;

RESOLVED, that the Termination Agreements, together with the attachments thereto, and any and all other documents referred to therein, submitted to Residential Funding, shall be

filed by the Secretary or Assistant Secretary of Residential Funding among the records of Residential Funding;

## AUTHORIZATION OF ASSET PURCHASE AGREEMENTS

**RESOLVED,** that the form, terms and provisions of the Asset Purchase Agreements, drafts of which were submitted to the Board, are in all respects authorized and approved;

**RESOLVED,** that the Authorized Officers are authorized to enter into, execute and deliver the Asset Purchase Agreements on behalf of Residential Funding, and any other agreement, instrument, document, or certificate required pursuant to any or necessary or desirable to effect the purposes of the Asset Purchase Agreements (together with the Asset Purchase Agreements, the "Transaction Documents"), together with such changes therein as the Authorized Officer executing the same shall deem necessary, desirable or appropriate, such execution to be conclusive evidence of such necessity, desirability or appropriateness, and to take such other actions as may be required to be taken by Residential Funding;

**RESOLVED,** that any and all actions heretofore or hereafter taken by the Authorized Officers within the terms of any of the foregoing resolutions are ratified and confirmed as the acts and deeds of Residential Funding;

**RESOLVED,** that each of the Authorized Officers is authorized and directed to execute and deliver any and all agreements, instruments and other documents and to take such other actions as they deem necessary, desirable, or appropriate to carry out the purposes and intent of the foregoing resolutions;

**RESOLVED,** that the Assistant Secretary is authorized to prepare and to certify as a resolution of Residential Funding such additional resolutions as such Authorized Officer, acting upon advice of counsel to Residential Funding, shall deem necessary or advisable to accomplish the purposes of the foregoing resolutions;

## GENERAL AUTHORIZATION AND RATIFICATION

**RESOLVED,** that each Authorized Officer is authorized and directed, consistent with these Resolutions and with the advice of counsel to Residential Funding: (i) to negotiate, execute, deliver, certify, file and/or record, and perform, any and all of the agreements, documents, and instruments referenced herein, and such other agreements, documents, and instruments and assignments thereof as may be required or as such Authorized Officer deems appropriate or advisable, or to cause the negotiation, execution, and delivery thereof, as the case may be, in such form and substance as such Authorized Officer may approve, together with such changes and amendments to any of the terms and conditions thereof as such Authorized Officer may approve, (ii) to negotiate, execute, deliver, certify, file and/or record, and perform any agreements, documents, certificates, consents, filings, and applications relating to the Resolutions adopted and matters ratified or approved herein and the transactions contemplated thereby, and amendments and supplements to any of the foregoing, and to take such other action as may be required or as such Authorized Officer deems appropriate or advisable in connection therewith, and (iii) to do such other things as may be required, or as may in such Authorized Officer's judgment be necessary, proper, or desirable, to carry out the intent and effectuate the

purposes of the Resolutions adopted and matters ratified or approved herein and the consummation of the transactions contemplated hereby;

RESOLVED, that any Authorized Officer be, and each of them individually is, empowered, authorized and directed, for and on behalf of Residential Funding, to take or cause to be taken any and all such further actions, to execute and deliver or cause to be executed and delivered all such contracts, documents, instruments and agreements providing for the engagement, retention, compensation, reimbursement or expenses and indemnification of any legal counsel, accounting firm, investment banking firm or other such consultants, advisors and other agents, to incur and pay all such fees and expenses and to retain any such legal counsel, accounting firm, investment banking firm or other such consultants, advisers and other agents, in each case as they shall in their judgment determine to be necessary, desirable or advisable to carry out fully the intent and purpose of the foregoing resolutions and the execution by such Authorized Officer of any such document, instrument or agreement or the payment of any such expenses or the doing by them of any act in connection with the foregoing matters shall conclusively establish their authority therefore and the approval of the documents, instruments or agreements so executed, the expenses so paid and the actions so taken;

RESOLVED, that any person dealing with any Authorized Officer or Authorized Officers in connection with any of the foregoing matters shall be conclusively entitled to rely upon the authority of such Authorized Officer and by his or her execution of any document or agreement, the same shall be a valid and binding obligation of Residential Funding enforceable in accordance with its terms;

## RETENTION OF PROFESSIONALS AND PAYMENT OF FEES AND EXPENSES

RESOLVED, that the law firm of Morrison & Foerster LLP is employed as attorneys for Residential Funding under a general retainer in Residential Funding's Chapter 11 case, subject to the approval of the Bankruptcy Court;

RESOLVED, that the firm of FTI Consulting Inc. is employed to provide financial advisory services to Residential Funding, subject to the approval of the Bankruptcy Court;

RESOLVED, that the firm of Centerview Partners LLC is employed to provide investment banking services to Residential Funding, subject to the approval of the Bankruptcy Court;

RESOLVED, that the firm of Kurtzman Carson Consultants LLP is employed as claims and noticing agent to Residential Funding, subject to the approval of the Bankruptcy Court;

RESOLVED, that the law firm of Curtis, Mallet-Prevost, Colt & Mosle LLP is employed as conflicts counsel for Residential Funding in Residential Funding's Chapter 11 case, subject to the approval of the Bankruptcy Court;

RESOLVED, that the firm of Rubenstein Associates, Inc. is employed as public relations consultants to Residential Funding in Residential Funding's Chapter 11 case, subject to the approval of the Bankruptcy Court;

**RESOLVED**, that any Authorized Officer is authorized, empowered, and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, financial advisors, and other professionals and to take and perform any and all further acts and deeds that such Authorized Officer deems necessary, proper, or desirable in connection with Residential Funding 's Chapter 11 case, with a view to the successful prosecution of such case;

**RESOLVED**, that all actions taken by the Authorized Officers, or any of them, prior to the date of the foregoing Resolutions adopted by consent and within the authority conferred, are ratified, confirmed, and approved in all respects as the act and deed of Residential Funding.

**IN WITNESS WHEREOF**, the undersigned, being all of the members of the Board of Directors of Residential Funding, execute this written consent, adopt the above recitals and resolutions, and direct a fully signed copy of this Action by Unanimous Written Consent of the Board of Directors to be filed with the minutes of proceedings of the Board of Directors of Residential Funding.

This Action by Unanimous Written Consent of the Board of Directors may be executed in any number of counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same Action by Unanimous Written Consent of the Board of Directors of Residential Funding.

Dated: May 13, 2012              /s/ James Whitlinger
                                 James Whitlinger


Dated: May 13, 2012              /s/ Joseph A. Pensabene
                                 Joseph A. Pensabene


Dated: May 13, 2012              /s/ Steven M. Abreu
                                 Steven M. Abreu

# EXHIBIT "B"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ----------------------------------------- | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ----------------------------------------- | ) | |

**FINAL SUPPLEMENTAL ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a), 362, 363, 502, 1107(a), AND 1108 AND BANKRUPTCY RULE 9019 (I) AUTHORIZING THE DEBTORS TO CONTINUE IMPLEMENTING LOSS MITIGATION PROGRAMS; (II) APPROVING PROCEDURES FOR COMPROMISE AND SETTLEMENT OF CERTAIN CLAIMS, LITIGATIONS AND CAUSES OF ACTION; (III) GRANTING LIMITED STAY RELIEF TO PERMIT FORECLOSURE AND EVICTION PROCEEDINGS, BORROWER BANKRUPTCY CASES, AND TITLE DISPUTES TO PROCEED; AND (IV) AUTHORIZING AND DIRECTING THE DEBTORS TO PAY SECURITIZATION TRUSTEE FEES AND EXPENSES**

Upon the motion (the "Motion")[1] of Residential Capital, LLC, and certain of its

affiliates, as debtors and debtors in possession (collectively, the "Debtors") for entry of a

supplemental order under Bankruptcy Code sections 105(a), 362, 363, 1107(a) and 1108, and

Bankruptcy Rule 9019 (i) authorizing the Debtors to continue implementing loss mitigation

programs; (ii) approving procedures for the compromise and settlement of certain claims,

litigations and causes of action in the ordinary course of the Debtors' business; (iii) granting

limited stay relief to permit (w) borrowers or their tenants, as applicable, to prosecute direct

claims and counter-claims in foreclosure and eviction proceedings (including in states in which

non-judicial foreclosure is followed), (x) borrowers to prosecute certain actions in borrower

bankruptcy cases, (y) the Debtors to prosecute foreclosure actions in those circumstances where

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.
      Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief
      granted herein may refer to http://www.kccllc.net/rescap for additional information.



1212020120713000000000011

they service senior mortgage loans and own the junior mortgage loans on the underlying

property, and (z) third party lien holders to prosecute direct claims and counter-claims in actions

involving the amount, validity or priority of liens on properties subject to foreclosure

proceedings; and (iv) authorizing and directing the Debtors to pay certain securitization trustee

fees and expenses; and the Court having considered the Whitlinger Affidavit and the Bocresion

Declaration; and the Court having entered the Interim Supplemental Order on June 15, 2012

[Docket No. 391]; and the Court having entered a final order on June 15, 2012 granting the GA

Servicing Motion on a final basis [Docket No. 401]; and the Court having entered a final order

on June 15, 2012 granting the Non-GA Servicing Motion on a final basis [Docket No. 402]; and

it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157

and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is

proper pursuant to 28 U.S.C §§ 1408 and 1409; and it appearing that this proceeding on the

Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion

having been given and it appearing that no other or further notice need be provided; and the

National Association of Consumer Bankruptcy Attorneys, on its own behalf and in a

representative capacity, two individuals who are debtors under Chapter 13, and Edward Boltz,

counsel for those individuals, having filed jointly the Limited Omnibus Objection To The

Servicing Orders And Debtors' May 31, 2012 Motion For A Supplemental Order [Docket No.

221] (the "NACBA Objection"); and the Committee having filed the Omnibus Response And

Reservation Of Rights Of The Official Committee Of Unsecured Creditors To Certain Of The

Debtors' First Day Motions [Docket No. 240]; and the Debtors having filed the Omnibus Reply

To Objections To Entry Of Final Orders For Specific "First Day" Motions And Related Relief

[Docket. No. 254]; and upon the record of the hearing; and it appearing that the relief requested

ny-1046923

by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in

interest; and after due deliberation thereon; and any objections to the Motion, including the

NACBA Objection, having been withdrawn, resolved, or overruled on the merits; and sufficient

cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.    The Motion is GRANTED on a final basis, as set forth herein, and any

objections to the Motion are hereby overruled;

Loss Mitigation Programs

2.    The Debtors are authorized, but not directed in their sole and absolute

discretion and subject to available funding, to continue developing and implementing loss

mitigation programs and procedures in the ordinary course of their businesses *nunc pro tunc* to

the Petition Date, including, but not limited to, making incentive payments to borrowers in

connection with the closing of short sales, or vacating properties in lieu of foreclosure or eviction

proceedings, or in the form of borrower rebates for loan payoffs including honoring all

obligations related thereto that accrued in whole or in part prior to the Petition Date (collectively,

the "Loss Mitigation Programs"); provided, however, that the aggregate cash payments made by

the Debtors to individual borrowers under the Loss Mitigation Programs that are not reimbursed

to the Debtors shall not exceed $550,000 per month (the "Monthly Cap"), absent consent of the

Committee or further order of the Court; provided, further, however, that to the extent the

Debtors do not exceed the Monthly Cap in any month they shall be entitled to utilize the

difference between the actual amount and the Monthly Cap in any succeeding month.  The

Debtors shall provide monthly reports to the Committee and the Office of the United States

Trustee for the Southern District of New York (the "U.S. Trustee"), which reports shall be in a

3

form agreed to by the Debtors and the Committee and such additional information as shall be

reasonably requested by the Committee, in each case, concerning the Loss Mitigation Programs.

        3.     Cash payments made by the Debtors to individual borrowers under the

Loss Mitigation Programs for which the Debtors are not reimbursed shall not exceed $4.2

million in the aggregate, absent consent of the Committee or further order of the Court. For the

avoidance of doubt, the limitation on the amount of cash payments provided for in this paragraph

3 is in addition to the limitation on the amount of cash payments provided for in paragraph 12

hereof.

Settlement Procedures

        4.     The Debtors are authorized, but not directed to compromise and settle

certain claims brought by the Debtors against any non-insider third parties in connection with

foreclosure, eviction, or borrower bankruptcy proceedings (each a "Settling Party") or by a

Settling Party against any of the Debtors (each, a "Claim") in accordance with the following two-

tiered procedures (the "Settlement Procedures"):

> Tier I: The Debtors, in their sole discretion, may enter into,
> execute and consummate written agreements of settlement with
> respect to Claims that will be binding on the Debtors and their
> estates without further action by this Court or notice to any party
> and grant such Settling Parties cash payments or allowed
> prepetition claims in amounts not to exceed $40,000 in full
> settlement of such Claim (each, a "Tier I Settlement").

> Tier II: The Debtors may enter into, execute and consummate
> written agreements of settlement with respect to Claims that will
> be binding on the Debtors and their estates without further action
> by this Court or notice to any party and grant such Settling Parties
> cash payments or allowed prepetition claims in amounts exceeding
> $40,000 but less than $100,000 in full settlement of such Claims
> (each, a "Tier II Settlement"); provided, that in each case:

>     (a) The Debtors must provide advance written notice (by
> formal or informal means, including by e-mail correspondence) of
> the terms of any Tier II Settlement to (x) the U.S. Trustee, 33

Whitehall Street, 21st Floor, New York, New York 10004, Attn:
Brian S. Masumoto, (y) counsel for the Committee, Kramer Levin
Naftalis & Frankel LLP, 1177 Avenue of the Americas New York,
NY 10036, Attn: Kenneth H. Eckstein and Douglas H. Mannal;
and (z) counsel to the administrative agent for the Debtors'
providers of debtor in possession financing, Skadden, Arps, Slate,
Meagher & Flom LLP, 4 Times Square, New York, New York
10036, Attn: Kenneth S. Ziman and Jonathan H. Hofer
(collectively the "Notice Parties")

(b) Those Notice Parties wishing to object to any proposed
Tier II Settlement must serve a written objection (by formal or
informal means, including by e-mail correspondence) on the
Debtors, so that it is received by no later than 4:00 p.m. (prevailing
Eastern Time) on the day that is seven (7) calendar days from the
date the Notice Parties received written notice of such Tier II
Settlement (the "Settlement Objection Deadline").  Objections
should be addressed to the proposed attorneys for the Debtors,
Morrison & Foerster LLP, 1290 Avenue of the Americas, New
York, New York 10104, Attn: Larren M. Nashelsky
(LNashelsky@mofo.com) and Norman S. Rosenbaum
(NRosenbaum@mofo.com).

(c) If the Debtors receive a timely objection from a Notice
Party, the parties will confer and attempt to resolve any
differences.  Failing that, the Debtors may petition the Court for
approval of the Tier II Settlement in accordance with any case
management orders entered in the Chapter 11 cases.  An objection
by a Notice Party with respect to a given Tier II Settlement shall
not delay the finality or effectiveness of any other settlement to
which an objection has not timely been delivered.

(d) If the Debtors do not receive a written objection to a
Tier II Settlement from a Notice Party by the Settlement Objection
Deadline, then such Tier II Settlement shall be deemed approved
and the Debtors and Settling Parties may carry out the terms of
such Tier II Settlement without further notice or Court approval.

5.    The Debtors shall be required to seek approval from the Court in order to

enter into and consummate any proposed settlement of a Claim with a settlement amount in

excess of $100,000.

6.    The Debtors are authorized in their sole discretion, but not directed, to

settle claims where some or all of the consideration is being provided by a third party and/or

where the Debtors are releasing claims against creditors or third parties provided the Debtors

otherwise comply with the Settlement Procedures.

7.     The Settlement Procedures are without prejudice to the right of the

Debtors to seek an order of this Court approving additional or different procedures with respect

to specific claims or categories of claims.  For claims relating to matters specified in paragraphs

14(a) and 15(a) of this Order that were resolved pursuant to a settlement prior to the Petition

Date, but where such settlement has not been consummated, the Debtors are authorized, but not

directed to, consummate said settlements in accordance with the Settlement Procedures set forth

in this Order.

8.     Notwithstanding anything to the contrary contained herein, this Order

shall not affect, impair, impede or otherwise alter the right of the Debtors to resolve any

prepetition or postpetition controversy arising in the ordinary course of the Debtors' businesses,

or resolve any controversy authorized by any other order of the Court.

9.     Nothing in this Order or the Motion shall constitute a determination or

admission of liability or of the validity or priority of any claim against the Debtors, and the

Debtors reserve their rights to dispute the validity or priority of any claim asserted.

10.     The authority granted in this Order shall not replace or obviate the need to

comply with the Debtors' internal procedures, legal or otherwise, for authorizing the settlements

contemplated in the Motion.  All settlements made pursuant to the Settlement Procedures shall,

to the extent applicable, be made in accordance with the Debtors' settlement procedures in effect

as of the Petition Date (the "Internal Settlement Protocol") and as may be amended from time;

provided, however, that the Debtors shall provide the Committee and the U.S. Trustee with

notice of any material changes to the Internal Settlement Protocol.

ny-1046923

11.    The Debtors shall provide monthly reports to the Committee and the U.S.

Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such

additional information as shall be reasonably requested by the Committee, in each case,

concerning settlements of any Claims pursuant to the Settlement Procedures.

12.    Cash payments made by the Debtors under the Settlement Procedures shall

not exceed $4 million in the aggregate, absent consent of the Committee or further order of the

Court.

13.    Any period prescribed or allowed by the Settlement Procedures shall be

computed in accordance with Bankruptcy Rule 9006.

Limited Relief from Automatic Stay

*Borrower Foreclosure And Eviction Proceedings*

14.    The stay imposed by section 362(a) of the Bankruptcy Code applicable to

(a) pending and future foreclosure actions initiated by the Debtors or in those states providing for

non-judicial foreclosures, by a borrower; and (b) pending and future eviction proceedings with

respect to properties for which a foreclosure has been completed or is pending, is hereby

modified pursuant to the following terms and conditions:

(a)    except as set forth herein, a borrower, mortgagor, or lienholder

(each, an "Interested Party") shall be entitled to assert and prosecute direct claims and

counter-claims relating exclusively to the property that is the subject of the loan owned or

serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or

precluding any foreclosure, whether in a Judicial State or a Non-Judicial State, or eviction

proceeding, where a final judgment (defined as any judgment where the right to appeal or

seek reconsideration has expired or has been exhausted) permitting the foreclosure or

ny-1046923

eviction has not been awarded or, with respect to completed foreclosure sales in Non-

Judicial States, where any applicable challenge period has not yet expired, and to prosecute

appeals with respect to any such direct claims or counter-claims;

(b)     absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to all pending and future Interested Party direct claims

and counter-claims:  (i) for monetary relief of any kind and of any nature against the

Debtors, except where a monetary claim must be plead in order for an Interested Party to a

assert a claim to defend against or otherwise enjoin or preclude a foreclosure (each a

"Mandatory Monetary Claim"); (ii) for relief that if granted, would not terminate or

preclude the prosecution and completion of a foreclosure or eviction; or (iii) asserted in the

form of a class action or collective action;

(c)     absent further order of the Court, the stay shall remain in full force

and effect with respect to any party seeking to intervene to assert related claims against the

Debtors or any class action or collective action brought by any Interested Party on behalf

of any other Interested Party or class of Interested Parties;

(d)     under no circumstances shall an Interested Party be entitled to

enforce against, recoup, setoff or collect from the Debtors any judgment or award related

to any direct claim or counter-claim for which the automatic stay has been lifted by the

terms of this Order, including, without limitation, a Mandatory Monetary Claim;

(e)     the Debtors shall retain the right, upon appropriate motion and

notice to any affected Interested Party, to seek to impose any provision of section 362(a) of

the Bankruptcy Code modified by this Order and to the extent such relief is sought, the

8

Debtors will not object to the Interested Party's telephonic participation at any hearing on

the motion; and

> (f)    nothing set forth herein shall preclude or limit any Interested Party
> from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code
> on appropriate motion and notice to the Debtors and parties in interest.

*Borrower Bankruptcy Proceedings*

> 15.    The automatic stay imposed by section 362(a) of the Bankruptcy Code

applicable against a borrower who currently has filed, or in the future files, for bankruptcy

protection under any chapter of the Bankruptcy Code (a "Bankruptcy Borrower"), is hereby

modified pursuant to the following terms and conditions:

> (a)    except as set forth herein, a Bankruptcy Borrower or a trustee duly
> appointed under the Bankruptcy Code in the Bankruptcy Borrower's bankruptcy case (a
> "Bankruptcy Trustee") shall be entitled to: (i) assert and prosecute or continue to
> prosecute an objection to the Debtors' proof of claim filed in the Bankruptcy Borrower's
> bankruptcy case; (ii) assert and prosecute or continue to prosecute an objection to the
> Debtors' motion for relief from the automatic stay filed in the Bankruptcy Borrower's
> bankruptcy case; (iii) commence or continue to prosecute against the Debtors a motion or
> adversary proceeding, as applicable, to determine the validity, priority or extent of a
> Debtor's lien against the Bankruptcy Borrower's property; (iv) commence or continue to
> prosecute against the Debtors a motion or adversary proceeding, as applicable, to reduce
> (including to reduce to $0) or fix the amount of the Debtors' claim or lien against the
> Bankruptcy Borrower's property; (v) prosecute appeals with respect to items (i) through
> (iv) above; (vi) seek an accounting from the Debtors with respect to the Bankruptcy

ny-1046923

Borrower's loan; and (vii) enter into, execute and consummate a written agreement of

settlement with the Debtors where the Debtors elect to enter into such settlement in their

sole discretion (but subject to the Settlement Procedures), to resolve items (i) through (vi)

above;

        (b)      except as set forth herein, a Bankruptcy Borrower shall be entitled to

(i) engage in court-supervised or court-authorized loss-mitigation programs regarding the

Bankruptcy Borrower's loan; and (ii) engage in discussions with the Debtors and execute a

modification of the Bankruptcy Borrower's loan or otherwise discuss, enter into and

consummate settlements of claims and liens in accordance with the ordinary course of the

Debtors' business and applicable law;

        (c)      absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to all Bankruptcy Trustee's and Bankruptcy Borrower's

direct claims, counter-claims, motions or adversary proceedings: (i) for monetary relief of

any kind and of any nature against the Debtors; (ii) for violation of any local, state or

federal statute or other law in connection with the origination of the Bankruptcy

Borrower's loan; (iii) for relief that if granted, would have no effect on the amount,

validity or priority of the Debtors' claim or lien against a Bankruptcy Borrower or the

property of the Bankruptcy Borrower securing such claim or lien of the Debtors; or

(iv) asserted in the form of a class action or collective action; provided however, a

Bankruptcy Trustee or Bankruptcy Borrower, solely in connection with their objections to

Debtors' proof of claim permitted by paragraph 15(a)(i) or proceedings permitted by

15(a)(iii), may assert claims of the type covered by subsection (i) or (ii) of this paragraph

15(c);

(d)    absent further order of the Court, the automatic stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Bankruptcy Borrower on behalf of any other class of borrowers;

(e)    with the sole exception of objections to Debtors' proofs of claim permitted by paragraph 15(a)(i) above and proceedings described in 15(a)(iii) above and solely for purposes of reducing any such claim and not for the purpose of obtaining an affirmative recovery or award, under no circumstances shall a Bankruptcy Borrower or Bankruptcy Trustee be entitled to recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order;

(f)    the Debtors shall retain the right, upon appropriate motion and notice to any Bankruptcy Borrower or Bankruptcy Trustee, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order and to the extent such relief is sought, the Debtors will not object to the Interested Party's telephonic participation at any hearing on the motion; and

(g)    nothing set forth herein shall preclude or limit any Bankruptcy Borrower or Bankruptcy Trustee from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

*Foreclosures By The Debtors On Senior Loans*

16.    The stay imposed by section 362(a) of the Bankruptcy Code applicable to pending and future foreclosure actions initiated by the Debtors in cases where they act as

ny-1046923

servicer for the Senior Loan and also own (or for which the applicable public land records

otherwise reflect that the Debtors hold an interest) the Junior Loan with respect to the underlying

property (collectively, the "Junior Foreclosure Actions") is hereby modified pursuant to the

following terms and conditions:

(a)     except as otherwise set forth herein, the Debtors shall be entitled to

assert and prosecute Junior Foreclosure Actions, whether in a Judicial State or a Non-

Judicial State;

(b)     the Debtors shall be entitled to take such actions as are necessary to

extinguish the lien with respect to a Junior Loan or to otherwise ensure clear and

marketable title with respect to the property underlying a Senior Loan in connection with

any sale or other disposition of such property;

(c)     the Debtors shall be entitled to seek all appropriate relief with

respect to a Senior Loan in connection with the bankruptcy cases of a Bankruptcy

Borrower without further order of the Court; and

(d)     the Debtors shall provide monthly reports to the Committee and the

U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee,

and such additional information as shall be reasonably requested by the Committee, in

each case, concerning Junior Foreclosure Actions.

D.      *Actions Involving Amount, Validity Or Priority Of Liens*

17.     The stay imposed by section 362(a) of the Bankruptcy Code applicable to

actions involving the amount, validity, and/or priority of liens commenced by third parties

purporting to have a lien interest or other claim ("Third Party Claimants") with respect to

ny-1046923

properties that are subject to mortgages owned or serviced by the Debtors ("Title Disputes") is

hereby modified pursuant to the following terms and conditions:

        (a)      except as otherwise set forth herein, a Third Party Claimant shall be

entitled to assert and prosecute direct claims and counter-claims relating exclusively to the

property that is the subject of the loan owned or serviced by a Debtor in connection with

any Title Dispute, and to prosecute appeals with respect to any such direct claims or

counter-claims;

        (b)      absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to all pending and future Third Party Claimant direct

claims and counter-claims: (i) for monetary relief of any kind and of any nature against the

Debtors; (ii) for relief that is not necessary for the resolution of the Title Dispute; or

(iii) asserted in the form of a class action or collective action;

        (c)      absent further order of the Court, the stay shall remain in full force

and effect with respect to any party seeking to intervene to assert related claims against the

Debtors or any class action or collective action brought by any Third Party Claimant on

behalf of any other Third Party Claimant or class of Third Party Claimants;

        (d)      under no circumstances shall a Third Party Claimant be entitled to

enforce against, recoup, setoff or collect from the Debtors any judgment or award related

to any direct claim or counter-claim for which the automatic stay has been lifted by the

terms of the Order;

        (e)      the Debtors shall be entitled to take such actions as are necessary to

clear title with respect to property that is subject to a Title Dispute or to otherwise ensure

ny-1046923

clear and marketable title with respect to such property in connection with any sale,

foreclosure or other disposition of such property;

        (f)      the Debtors shall retain the right, upon appropriate motion and

notice to any affected Third Party Claimant, to seek to impose any provision of section

362(a) of the Bankruptcy Code modified by the Order; and

        (g)      nothing set forth herein shall preclude or limit any Third Party

Claimant from seeking relief from the automatic stay under section 362(a) of the

Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

Payment of Securitization Trustee Fees and Expenses

        18.      The Debtors shall continue to perform all of their respective servicing

duties and servicing related duties, including, but not limited to, their duties as master servicer,

under all the governing agreements (including, without limitation, pooling and servicing

agreements, servicing agreements, or any other agreements concerning or relating to the Debtors'

obligations to reimburse and/or indemnify for reasonable fees, costs, expenses, liabilities, and/or

losses) (collectively, the "Agreements") relating to Debtor-sponsored securitization transactions

and non-Debtor sponsored securitization transactions to which any of The Bank of New York

Mellon Trust Company, N.A., Wells Fargo Bank, N.A., Deutsche Bank Trust Company

Americas, Deutsche Bank National Trust Company, or U.S. Bank National Association, or any

affiliate of such entities acts as trustee for which any Debtor performs servicing duties, in each of

their respective capacities as trustee (collectively, the "Trustees") and one or more of the Debtors

is a party, including but not limited to, making all principal, interest or other servicing advances

(including property protection advances) and reimbursing, indemnifying, defending and holding

harmless the Trustees and the securitization trusts for any liability, loss, or reasonable fees, cost

ny-1046923

or expense (including fees and disbursements of counsel or agents) incurred by any of the

Trustees in the performance of their duties or their administration of the trusts or other agencies

under the Agreements to the extent required by the Agreements.  For the avoidance of doubt, the

Debtors shall pay the reasonable, actual out-of-pocket costs and expenses of the Trustees in

connection with reviewing and analyzing the request by the Debtors to approve the MBS

Settlement Agreement, and in connection with reviewing and analyzing amendments to the

Agreements as necessary or appropriate in connection with any proposed Chapter 11 plan, the

MBS Settlement Agreement or the Platform Sale.  Notwithstanding the foregoing, nothing in this

paragraph 18 shall require any Debtor (i) to repurchase any mortgage loans on the basis of

alleged breaches of representations, warranties or other requirements of the Agreements, or make

any make-whole payments with respect to any mortgage loans pursuant to the Agreements; or

(ii) to enforce, as against any other Debtor entity or any non-Debtor affiliate, any provision of the

Agreements under which such other Debtor entity or non-Debtor affiliate are required to

repurchase any mortgage loans on the basis of alleged breaches of representations, warranties or

other requirements of the Agreements, or make any make-whole payments with respect to any

mortgage loans pursuant to the Agreements; and nothing in this paragraph 18 shall be deemed to

impose liability on any Debtor with respect to such alleged breaches or make-whole payment

requirements.

19.     The Trustees shall submit invoices to (a) counsel to the Debtors,

(b) counsel to the Committee, and (c) the U.S. Trustee, and all such invoices shall include (i) an

itemization of all professional fees by task with a detailed description of the work performed in

connection with such task, (ii) a description of related expenses, and (iii) a description of any

indemnity claims.  Thereafter, within thirty (30) days of presentment of such invoices, if no

ny-1046923

written objections to the reasonableness of the fees and expenses charged in any such invoice (or

portion thereof) is made by the Debtors, the Committee, or the U.S. Trustee, the Debtors are

authorized and directed to pay all reasonable fees, costs and expenses and all indemnity claims

referred to in paragraph 18 (including without limitation, attorney, financial advisor, consultant

and expert fees and costs) incurred postpetition by any of the Trustees relating to the

performance of each of the Trustees' duties or the administration of the trusts or other agencies

under the Agreements (the "Trustee Expenses") that are not subject to an objection by the

Debtors, the Committee, or the U.S. Trustee without further order from the Court. Any objection

to the payment of the Trustee Expenses shall be made only on the basis of "reasonableness," and

shall specify in writing the amount of the contested fees and expenses and a detailed basis for

such objection. To the extent an objection only contests a portion of an invoice, the undisputed

portion thereof shall be promptly paid. If any such objection to payment of an invoice (or any

portion thereof) is not otherwise resolved between the Debtors, the Committee, or the U.S.

Trustee and the issuer of the invoice, either party may submit such dispute to the Court for a

determination as to the reasonableness of the disputed amounts. This Court shall resolve any

dispute as to the reasonableness of any fees and expenses.

      20.     To the extent either the Committee, or the RMBS Trustees determine that

the Trustee Expenses were improperly or mistakenly allocated to an RMBS trust or to the

Debtors' estates, the Committee and the RMBS Trustees reserve the right to seek to correct the

allocation of the Trustee Expenses as between the RMBS trusts or the Debtors' estates in

accordance with the applicable Agreement, and such adjustment shall be the Committee's and

RMBS Trustees' sole remedy arising from a misallocation. All Trustee Expenses for which

(a) no objection under paragraph 19 has been interposed, or (b) where such an objection has been

interposed and the amount of Trustee Expenses determined by the Court to be reasonable, shall
be entitled to administrative expense priority in the Debtors' Chapter 11 cases notwithstanding
the entry of an order authorizing the assumption and assignment or rejection of any Agreement.
However, the Debtors will not be responsible for any fees, costs and expenses incurred with
respect to any Agreement after the entry of an order in the Debtors' Chapter 11 cases authorizing
the rejection of such Agreement.

21.    If any or all of the provisions of this Order are hereafter reversed,
modified, limited, vacated or stayed, such reversal, stay, modification or vacatur shall not affect
the validity, priority or enforceability of any Trustee Expenses incurred prior to the actual receipt
of written notice by the Trustees of the effective date of such reversal, stay, modification or
vacatur (the "Notice Date").  Notwithstanding any such reversal, stay, modification or vacatur,
the payment of any Trustee Expenses incurred prior to the Notice Date and reimbursed prior to
or after the Notice Date by the Debtors shall be governed in all respects by the original
provisions of this Order, and the Trustees shall be entitled to all of the rights, remedies,
privileges and benefits granted in this Order with respect to payment of Trustee Expenses.

22.    Notwithstanding the Debtors' obligations set forth in paragraphs 18 and
19, nothing in this Order shall be deemed to limit, extinguish, or prejudice the Debtors' rights in
any way to assume and assign or reject any Agreement in accordance with Bankruptcy Code
section 365.

Other Relief

23.    Any disputes regarding the extent, application and/or effect of the
automatic stay under this Order shall be heard and determined in the Debtors' jointly
administered bankruptcy cases pending in the United States Bankruptcy Court for the Southern

17

ny-1046923

District of New York, Case No. 12-12020 in accordance with the Case Management Order

entered in the Debtors' cases [Docket No. 141] and such other and further orders as may be

entered by the Court.

24.    The Debtors are authorized and empowered to take all actions and execute

such documents as may be necessary or appropriate to carry out the relief granted herein.

25.    Nothing herein shall be deemed to limit the rights of the Debtors to

operate their business in the ordinary course, and no subsequent order shall be required to

confirm such rights.

26.    Notwithstanding the relief granted herein and any actions taken hereunder,

nothing contained herein shall constitute, nor is it intended to constitute, the assumption of any

contract or agreement under Bankruptcy Code section 365 or the waiver by the Debtors or their

non-Debtor affiliates of any of their rights pursuant to any agreement by operation of law or

otherwise.

27.    Notwithstanding anything to the contrary in this Order, any action to be

taken pursuant to the relief authorized in this Order is subject to the terms of any cash collateral

order or debtor in possession financing order entered in these chapter 11 proceedings.  All

amounts authorized to be paid pursuant to this Order are subject to the limitations and

restrictions imposed by the Approved DIP Budget (as defined in the DIP Credit Agreement).  To

the extent that there is any inconsistency between the terms of this Order and the terms of any

order relating to postpetition financing or cash collateral, the terms of the orders relating to

postpetition financing or cash collateral shall govern.

28.    Notwithstanding anything herein to the contrary, this Order shall not

modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board

ny-1046923

of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among

AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal

Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment

entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,

(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

29.    Nothing in this Order shall discharge, release, or otherwise preclude any

setoff or recoupment right of the United States of America, its agencies, departments, or agents.

30.    The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

31.    Notwithstanding the possible applicability of Bankruptcy Rules

2002(a)(3), 6004(h), 7062 or 9014, the terms and conditions of this Order shall be immediately

effective and enforceable upon its entry.

32.    This Court shall retain jurisdiction with respect to all matters relating to

the interpretation or implementation of this Order.


Dated:      July 13, 2012
            New York, New York


                                        _____/s/Martin Glenn_____
                                           MARTIN GLENN
                                     United States Bankruptcy Judge

ny-1046923

1

**PROOF OF SERVICE**
*Rozier v. Bank of America, et al.*
**OCSC Case No. 30-2012-00601310-CU-OR-CJC**

2

3    At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is The Atrium,

4    19100 Von Karman Avenue, Suite 700, Irvine, CA 92612.

5    On February **12**, 2013, I served true copies of the following document(s):

6    **DEFENDANT RESIDENTIAL FUNDING COMPANY, LLC'S NOTICE OF BANKRUPTCY STAY AND SUGGESTION OF AUTOMATIC STAY**

7

on the interested parties in this action as follows:

8

**SEE ATTACHED SERVICE LIST**

9

10    **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Severson &

11    Werson's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of

12    business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

13    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

14

15    Executed on February **12**, 2013, at Irvine, California.

16

17    Stephanie A. Crisp

18

19

20

21

22

23

24

25

26

27

28

19000.1432/2563999.1

1

**SERVICE LIST**
*Rozier v. Bank of America, et al.*
OCSC Case No. 30-2012-00601310-CU-OR-CJC

2

3   Karen Michele Rozier                          Plaintiff, In Pro Per
    7957 Dahlia Circle
4   Buena Park, CA  90620                          Telephone:      (714) 512-5740

5   Kiersten Kropp                                 Telephone:      (949) 223 7000
    BRYAN CAVE                                     Facsimile:      (949) 223 7100
6   3161 Michelson Drive, Suite 1500
    Irvine, CA 92612-4414
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19000.1432/2563999.1

DEFENDANT RESIDENTIAL FUNDING COMPANY, LLC'S NOTICE OF BANKRUPTCY STAY AND
SUGGESTION OF AUTOMATIC STAY

1  ROBERT J. GANDY (State Bar No. 225405)
   rjg@severson.com
2  YARON SHAHAM (State Bar No. 217192)
   ys@severson.com
3  SEVERSON & WERSON
   A Professional Corporation
4  The Atrium
   19100 Von Karman Avenue, Suite 700
5  Irvine, California 92612
   Telephone: (949) 442-7110
6  Facsimile: (949) 442-7118

7  JOHN B. SULLIVAN (State Bar No. 96742)
   SEVERSON & WERSON
8  A Professional Corporation
   One Embarcadero Center, Suite 2600
9  San Francisco, California 94111
   Telephone: (415) 398-3344
10 Facsimile: (415) 956-0439

11 Attorneys for Defendants
   U.S. Bank National Association, as Trustee, as successor in interest to Bank of America,
12 National Association, as Trustee, successor by merger to LaSalle Bank National
   Association, as Trustee for RAAC 2007-RP1; Residential Funding Company, LLC; and
13 Ocwen Loan Servicing, LLC

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**06/18/2013** at 04:03:00 PM

Clerk of the Superior Court
By Natasha Dorfman, Deputy Clerk

14              **SUPERIOR COURT OF CALIFORNIA**

15      **COUNTY OF ORANGE — CENTRAL JUSTICE CENTER**

16 | Karen Michele Rozier, an Individual; David | Case No. 30-2012-00601310-CU-OR-CJC
   | Eugene Rozier, Sr., an Individual, | Assigned for All Purposes to:
17 | | Hon. Sheila B. Fell
   |        Plaintiff, | Dept. C22
18 | |
19 |     vs. | **DEFENDANT RESIDENTIAL FUNDING
   | | COMPANY, LLC'S NOTICE OF
20 | Bank of America, National Association as | BANKRUPTCY STAY AND
   | successor by merger to LaSalle Bank National | SUGGESTION OF AUTOMATIC STAY
21 | Association as Trustee RAMP 2007RP1 aka | IN RESPONSE TO PLAINTIFFS' THIRD
   | Bank of America, National Association as | AMENDED COMPLAINT
22 | successor by merger to LaSalle Bank National |
   | Association as Trustee RAAC 2007RP1; U.S. | Date:    [No Hearing Necessary]
23 | Bank National Association as successor in | Time:    [No Hearing Necessary]
   | interest to Bank of America National | Dept.:   C22
24 | Association as Trustee, successor by merger to |
   | LaSalle Bank National Association as Trustee | Action Filed:   September 27, 2012
25 | for RAAC 2007RP1; Ocwen Home Loan | FAC Filed:      October 29, 2012
   | Servicing Company; Residential Funding | SAC Filed:      February 4, 2013
26 | Company, LLC fka Residential Funding | TAC Filed:      June 11, 2013
   | Company, Attorney-In-Fact; JOHN DOES 18- | Trial Date:     September 23, 2013
27 | 50, |
   |        Defendants. |
28 | |

**TO THE HONORABLE COURT, PLAINTIFFS, AND ALL OTHER INTERESTED**

**PARTIES:**

Defendant Residential Funding Company, LLC ("Defendant"), by and through its

undersigned counsel, in accordance and consistent with section 362(a) of the United States

Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), hereby respectfully submits

this Notice of Bankruptcy and Suggestion of Automatic Stay, and states as follows:

1.      On May 14, 2012 (the "Petition Date"), Residential Capital, LLC and certain of its

direct and indirect subsidiaries (collectively, the "Debtors"), including Defendant, filed voluntary

petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy

Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408

(the "Bankruptcy Court").  A true and correct copy of Defendant's voluntary bankruptcy petition

is attached hereto as **Exhibit A**.

2.      The Debtors' Chapter 11 cases being jointly administered, indexed at case number

12-12020 (MG), and are captioned as follows:

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>             Debtors. | Chapter 11<br><br>Case No. 12-12020 (MG)<br><br>Jointly Administered |

3.      As a result of the Bankruptcy Filing, on the Petition Date, the protections of the

automatic stay codified in section 362(a) of the Bankruptcy Code arose with regard to the Debtors.

Section 362(a), among other things, operates as an automatic stay of:  (i) "the commencement or

continuation, including the issuance or employment of process, of a judicial, administrative, or

other action or proceeding" against the Chapter 11 Debtors (11 U.S.C. § 362(a)(1)); (ii) acts to

"obtain possession of property" of the Debtors' Chapter 11 estates (11 U.S.C. § 362(a)(3)); and

(iii) acts to "collect, assess, or recover a claim" against the Debtors arising prior to the Petition

NOTICE OF BANKRUPTCY STAY

1  Date (11 U.S.C. § 362(a)(6)).

2      4.    On July 13, 2012, the Bankruptcy Court entered a Final Supplemental Order

3  granting, among other things, the Debtors' Motion for Limited Relief from the automatic stay to

4  permit non-Debtor parties in foreclosure and eviction proceedings, borrower bankruptcy cases and

5  title disputes to continue to assert and prosecute certain defenses, claims and counter-claims (the

6  "Final Supplemental Order").  Paragraphs 14, 15, 16 and 17 of the Final Supplemental Order

7  identify the categories of defenses, claims and counter-claims for which the automatic stay has

8  been modified (the "Permitted Claims").  A copy of the Final Supplemental Order is annexed

9  hereto as **Exhibit B**.

10      5.    Based upon a review of the current status of the Lawsuit, the claims against

11  Defendant for Conspiracy to Commit Fraud, Violation of Business and Professions Code § 17200

12  et seq., Intentional Infliction of Emotional Distress, and Defamation of Character are not Permitted

13  Claims because they are outside the scope of the relief covered in the Final Supplemental Order

14  (the "Stayed Claims").  The continued prosecution of the Stayed Claims would violate the

15  automatic stay, 11 U.S.C. § 362(a)(1), which expressly precludes "the commencement or

16  continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that

17  was or could have been commenced before the commencement of the case under this title, or to

18  recover a claim against the debtor that arose before the commencement of the case under this

19  title."

20      6.    Pursuant to paragraph 23 of the Final Supplemental Order, any dispute regarding

21  the extent, application and/or effect of the automatic stay under the Final Supplemental Order,

22  must be heard and determined in the United States Bankruptcy Court for the Southern District of

23  New York, jointly administered under Case No. 12-12020, in accordance with the Case

24  Management Order entered in the Debtors' case [Docket No. 141] and such other and further

25  orders as may be entered by the United States Bankruptcy Court for the Southern District of New

26

27

28

NOTICE OF BANKRUPTCY STAY

1  York.[1]

2      7.    This notice has been sent, with a cover letter, to Plaintiff Karen and David Rozier.

3

4  DATED: June 18, 2013                SEVERSON & WERSON
                                       A Professional Corporation
5

6

7                                      By: _____
                                                    Yaron Shaham
8

9                                      Attorneys for Defendants
                                       U.S. Bank National Association, as Trustee, as
10                                     successor in interest to Bank of America, National
                                       Association, as Trustee, successor by merger to LaSalle
11                                     Bank National Association, as Trustee for RAAC 2007-
                                       RP1; Residential Funding Company, LLC; and Ocwen
12                                     Loan Servicing, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  _____
    [1]  A copy of the Case Management Order may be obtained at no charge at http://www.kccllc.net/rescap.
28

19000.1432/2755918.1                          4

NOTICE OF BANKRUPTCY STAY

# EXHIBIT "A"

**United States Bankruptcy Court**
**Southern District of New York**

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Residential Funding Company, LLC** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names):<br>**Residential Funding Corporation** | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all): **93-0891336** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State):<br>**8400 Normandale Lake Blvd.**<br>**Suite 350**<br>**Minneapolis, MN**          ZIP CODE **55437** | Street Address of Joint Debtor (No. and Street, City, and State):<br><br><br>ZIP CODE |
| County of Residence or of the Principal Place of Business:<br>**Hennepin** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br><br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address):<br><br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>...          ZIP CODE | |

| **Type of Debtor**<br>(Form of Organization)<br>(Check one box.) | **Nature of Business**<br>(Check one box.) | **Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box.) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form*<br>☒ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☒ Other | ☐ Chapter 7          ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 9<br>☒ Chapter 11<br>☐ Chapter 12          ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding<br>☐ Chapter 13 |

**Tax-Exempt Entity**
(Check box, if applicable.)
☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

**Nature of Debts**
(Check one box.)
☐ Debts are primarily consumer, debts defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or house-hold purpose."          ☒ Debts are primarily business debts

| **Filing Fee** (Check one box.) | **Chapter 11 Debtors** |
|---|---|
| ☒ Full Filing Fee attached.<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☒ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $ 2,343,300.<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

**Statistical/Administrative Information**

☒ Debtor estimates that funds will be available for distribution to unsecured creditors.
☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Assets

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

Estimated Liabilities

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

ny-1012554

| Voluntary Petition<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s):<br>Residential Funding Company, LLC |
|---|---|

**All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.)

| Location<br>Where Filed: None. | Case Number:<br>N/A | Date Filed:<br>N/A |
|---|---|---|
| Location<br>Where Filed: | Case Number: | Date Filed: |

**Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.)

| Name of Debtor:<br>See Annex 1 | Case Number:<br>As Assigned | Date Filed:<br>Same |
|---|---|---|
| District:<br>Southern District of New York | Relationship:<br>Affiliate | Judge:<br>As Assigned |

| Exhibit A | Exhibit B |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under Chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X _____<br>Signature of Attorney for Debtor(s)          (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

☒ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☒ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(1)).

B 1 (Official Form) 1 (1/08)                                                                              Page 3

| Voluntary Petition<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s):<br>Residential Funding Company, LLC |
|---|---|

| Signatures | |
|---|---|

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br><br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br>[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).<br><br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>   Signature of Debtor<br><br>X _____<br>   Signature of Joint Debtor<br><br>_____<br>Telephone Number (if not represented by attorney)<br><br>_____<br>Date | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.<br><br>(Check only one box.)<br><br>☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.<br><br>☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.<br><br>X _____<br>   (Signature of Foreign Representative)<br><br>_____<br>(Printed Name of Foreign Representative)<br><br>_____<br>Date |

| **Signature of Attorney\*** | **Signature of Non-Attorney Bankruptcy Petition Preparer** |
|---|---|
| X /s/ Larren M. Nashelsky<br>Signature of Attorney for Debtor(s)<br>Larren M. Nashelsky<br>Printed Name of Attorney for Debtor(s)<br>Morrison & Foerster LLP<br>Firm Name<br>1290 Avenue of the Americas<br>Address<br>New York, NY 10104<br><br>(212) 468-8000<br>Telephone Number<br>May 14, 2012<br>Date<br><br>\*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.<br><br>_____<br>Printed Name and title, if any, of Bankruptcy Petition Preparer<br><br>_____<br>Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)<br><br>_____<br>Address<br><br>X _____<br><br>_____<br>Date<br><br>Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above. |

| **Signature of Debtor (Corporation/Partnership)** | |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.<br><br>The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X /s/ James Whitlinger<br>Signature of Authorized Individual<br>James Whitlinger<br>Printed Name of Authorized Individual<br>Chief Financial Officer<br>Title of Authorized Individual<br>May 14, 2012<br>Date | Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.<br><br>If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.<br><br>*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |

ny-1012554

## ANNEX 1

On May 14, 2012, each of the affiliated entities listed below (including the debtor in this chapter 11 case) filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). A motion has been filed or shortly will be filed with the Court requesting that the chapter 11 cases of these entities be consolidated for procedural purposes only and jointly administered.

| Name of Debtor |
| --- |
| ditech, LLC |
| DOA Holding Properties, LLC |
| DOA Properties IX (Lots-Other), LLC |
| EPRE LLC |
| Equity Investment I, LLC |
| ETS of Virginia, Inc. |
| ETS of Washington, Inc. |
| Executive Trustee Services LLC |
| GMAC – RFC Holding Company, LLC |
| GMAC Model Home Finance I, LLC |
| GMAC Mortgage USA Corporation |
| GMAC Mortgage, LLC |
| GMAC Residential Holding Company, LLC |
| GMAC RH Settlement Service, LLC |
| GMACM Borrower LLC |
| GMACM REO LLC |
| GMACR Mortgage Products, LLC |
| HFN REO SUB II, LLC |
| Home Connects Lending Services, LLC |
| Homecomings Financial Real Estate Holdings, LLC |
| Homecomings Financial, LLC |

B 1D (Official Form 1, Exh. D) (10/06) – Cont.

| |
|---|
| Ladue Associates, Inc. |
| Passive Asset Transactions, LLC |
| PATI A, LLC |
| PATI B, LLC |
| PATI Real Estate Holdings, LLC |
| RAHI A, LLC |
| RAHI B, LLC |
| RAHI Real Estate Holdings, LLC |
| RCSFJV2004, LLC |
| Residential Accredit Loans, Inc. |
| Residential Asset Mortgage Products, Inc. |
| Residential Asset Securities Corporation |
| Residential Capital, LLC |
| Residential Consumer Services of Alabama, LLC |
| Residential Consumer Services of Ohio, LLC |
| Residential Consumer Services of Texas, LLC |
| Residential Consumer Services, LLC |
| Residential Funding Company, LLC |
| Residential Funding Mortgage Exchange, LLC |
| Residential Funding Mortgage Securities I, Inc. |
| Residential Funding Mortgage Securities II, Inc. |
| Residential Funding Real Estate Holdings, LLC |
| Residential Mortgage Real Estate Holdings, LLC |
| RFC – GSAP Servicer Advance, LLC |
| RFC Asset Holdings II, LLC |
| RFC Asset Management, LLC |

B 1D (Official Form 1, Exh. D) (10/06) – Cont.

| |
|---|
| RFC Borrower LLC |
| RFC Construction Funding, LLC |
| RFC REO LLC |
| RFC SFJV-2002, LLC |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| RESIDENTIAL FUNDING COMPANY, LLC, | ) | Case No. 12-_____ (    ) |
| | ) | |
| | ) | |
| | ) | Joint Administration Pending |
| | ) | |
| Debtor. | ) | |
| | ) | |

## LIST OF EQUITY SECURITY HOLDERS

Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure, Residential

Funding Company, LLC (the "Debtor") submits the following list of the Debtor's equity security

holders:

| Entity Name and Address | Percent Ownership |
|---|---|
| GMAC-RFC Holding Company, LLC | 100% |

I, James Whitlinger, the Chief Financial Officer of Residential Funding Company, LLC,

a Delaware limited liability company, declare under penalty of perjury that I have read the

foregoing and that it is true and correct to the best of my information and belief, and will be

supplemented to the extent additional information becomes available.

Dated: May 14, 2012

/s/ James Whitlinger
Name: James Whitlinger
Title:   Chief Financial Officer

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| RESIDENTIAL FUNDING COMPANY, LLC, | ) | Case No. 12-_____ (   ) |
| | ) | Joint Administration Pending |
| Debtor. | ) | |

### LIST OF CREDITORS

    Residential Funding Company, LLC (the "Debtor") and its debtor affiliates set forth on Annex 1 attached hereto (collectively, the "Debtors") each filed a petition in this Court on May 14, 2012 for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532. Contemporaneously with the filing of the petitions, the Debtors filed a single consolidated list of creditors (the "Consolidated List"), in lieu of separate lists. Due to its voluminous nature, the Consolidated List is being submitted to the Court electronically.

    I, James Whitlinger, the Chief Financial Officer of Residential Funding Company, LLC, a Delaware limited liability company, declare under penalty of perjury that I have read the foregoing and that it is true and correct to the best of my information and belief, and will be supplemented to the extent additional information becomes available.

Dated: May 14, 2012

/s/ James Whitlinger
Name: James Whitlinger
Title:   Chief Financial Officer

ny-1012554

Residential Capital LLC, et al.
Top Unsecured Creditors
In USD
(All Amounts Are Estimated)

| No. | Creditor [1] | Creditor Contact | Nature of Claim [2] | Contingent, Unliquidated, or Disputed | Amount of Claim [3] |
|---|---|---|---|---|---|
| 1 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone:  (201) 593-2456<br>Fax:<br>Email:  kelvin.vargas@db.com | 8.500% Senior Unsecured Notes due April 2013 [4] | | 473,416,000.00 |
| 2 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone:  (201) 593-2456<br>Fax:<br>Email:  kelvin.vargas@db.com | 750,000,000 Euros Aggregate Principal Amount of 7.125% Notes due May 2012 [4] | | 127,671,000.00 [5] |
| 3 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone:  (201) 593-2456<br>Fax:<br>Email:  kelvin.vargas@db.com | 8.875% Senior Unsecured Notes due June 2015 [4] | | 112,227,000.00 |
| 4 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone:  (201) 593-2456<br>Fax:<br>Email:  kelvin.vargas@db.com | £400,000,000 Aggregate Principal Amount of 9.875% Notes due July 2014 [4] | | 103,743,000.00 [6] |
| 5 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone:  (201) 593-2456<br>Fax:<br>Email:  kelvin.vargas@db.com | 8.500% Senior Unsecured Notes due June 2012 [4] | | 79,879,000.00 |
| 6 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone:  (201) 593-2456<br>Fax:<br>Email:  kelvin.vargas@db.com | £400,000,000 Aggregate Principal Amount of 8.375% Notes due May 2013 [4] | | 59,379,200.00 [6] |
| 7 | BNYMellon<br>C/O Dechert LLP<br>1095 Avenue of the Americas<br>New York, NY 10036 | Phone:  (212) 698-3621<br>Fax:  (212) 698-3599<br>Email:  hector.gonzalez@dechert.com | Contingent Claim- Securitization | Contingent, Unliquidated, Disputed | Unknown |
| 8 | US Bank<br>C/O Seward & Kissel LLP<br>One Battery Park Plaza<br>New York, NY 10004 | Phone:  (212) 574-1391<br>Fax:  (212) 480-8421<br>Email:  das@sewkis.com | Contingent Claim- Securitization | Contingent, Unliquidated, Disputed | Unknown |
| 9 | Deutsche Bank AG, New York<br>C/O Joe Salama<br>60 Wall Street<br>New York, NY 10005-2836 | Phone:  (212) 250-9536<br>Fax:  (866) 785-1127<br>Email:  joe.salama@db.com | Contingent Claim- Securitization | Contingent, Unliquidated, Disputed | Unknown |
| 10 | Federal Housing Finance Agency<br>C/O Alfred Pollard<br>400 Seventh Street, SW | Phone:  (202) 649-3804<br>Fax:<br>Email:  GeneralCounsel@FHFA.org | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 11 | MBIA, Inc.<br>C/O Cadwalader, Wickersham & Taft<br>One World Financial Center<br>New York, NY 10281 | Phone:  (212) 504-6373<br>Fax:  (212) 504-6666<br>Email:  gregory.petrick@cwt.com | Contingent Claim- Litigation | Contingent, Unliquidated, Disputed | Unknown |
| 12 | Ambac Assurance Corp<br>C/O Patterson Belknap Webb & Tyler<br>1133 Avenue of the Americas<br>New York, NY 10036 | Phone:  (212) 336-2140<br>Fax:  (212) 336-2094<br>Email:  prflorenza@pbwt.com | Contingent Claim- Litigation | Contingent, Unliquidated, Disputed | Unknown |
| 13 | Financial Guaranty Insurance Co.<br>C/O Jones Day<br>222 East 41st Street<br>New York, NY 10017-6702 | Phone:  (212) 326-7844<br>Fax:  (212) 755-7306<br>Email:  cball@jonesday.com | Contingent Claim- Litigation | Contingent, Unliquidated, Disputed | Unknown |
| 14 | Assured Guaranty Corp.<br>C/O Margaret Yanney<br>31 West 52nd Street<br>New York, NY 10019 | Phone:  (212) 857-0581<br>Fax:  (212) 893-2792<br>Email:  myanney@assuredguaranty.com | Contingent Claim- Litigation | Contingent, Unliquidated, Disputed | Unknown |

Residential Capital LLC, et al.
Top Unsecured Creditors
In USD
(All Amounts Are Estimated)

| No. | Creditor [1] | Creditor Contact | Nature of Claim [2] | Contingent, Unliquidated, or Disputed | Amount of Claim [3] |
|---|---|---|---|---|---|
| 15 | Thrivent Financial for Lutherans<br>C/O Teresa J. Rasmussen<br>625 Fourth Avenue S.<br>Minneapolis, MN 55415-1624 | Phone: (800) 847-4836<br>Fax:<br>Email: | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 16 | West Virginia Investment Management Board<br>C/O Craig Slaughter<br>500 Virginia Street East, Suite 200 | Phone: (304) 345-2672<br>Fax:<br>Email: | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 17 | Allstate Insurance<br>C/O Quinn Emanuel Urquhart & Sullivan<br>865 S. Figueroa Street, 10th Floor | Phone: (213) 443-3000<br>Fax:<br>Email: danbrockett@quinnemanuel.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 18 | Western & Southern<br>C/O Wollmuth Maher & Deutsch LLP<br>500 Fifth Avenue<br>New York, NY 10110 | Phone: (212) 382-3300<br>Fax:<br>Email: dwollmuth@wmd-law.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 19 | The Union Central Life Insurance Company<br>C/O Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900 | Phone: (619) 231-1058<br>Fax: (619) 231-7423<br>Email: stevep@rgrdlaw.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 20 | Cambridge Place Investment Management Inc.<br>C/O Donnelly, Conroy & Gelhaar LLP<br>1 Beacon Street, 33rd Floor | Phone: (617) 720-2880<br>Fax: (617) 720-3553<br>Email: msd@dcglaw.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 21 | Sealink Funding Limited<br>C/O Labaton Sucharow LLP<br>140 Broadway | Phone: (212) 907-0869<br>Fax: (212) 883-7069<br>Email: jbernstein@labaton.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 22 | Stichting Pensioenfonds ABP<br>C/O Grant & Eisenhofer<br>123 S. Justison Street | Phone: (302) 622-7040<br>Fax: (302) 622-7100<br>Email: gjarvis@gelaw.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 23 | Huntington Bancshares Inc.<br>C/O Grant & Eisenhofer<br>123 S. Justison Street | Phone: (302) 622-7040<br>Fax: (302) 622-7100<br>Email: gjarvis@gelaw.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 24 | Federal Home Loan Bank of Chicago<br>C/O Keller Rohrback LLP<br>1201 Third Avenue, Suite 3200 | Phone: (206) 623-1900<br>Fax: (206) 623-3384<br>Email: dloeser@kellerrohrback.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 25 | Federal Home Loan Bank of Boston<br>C/O Keller Rohrback LLP<br>1201 Third Avenue, Suite 3200 | Phone: (206) 623-1900<br>Fax: (206) 623-3384<br>Email: dloeser@kellerrohrback.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 26 | Federal Home Loan Bank of Indianapolis<br>C/O Keller Rohrback LLP<br>1201 Third Avenue, Suite 3200 | Phone: (206) 623-1900<br>Fax: (206) 623-3384<br>Email: dloeser@kellerrohrback.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |

Residential Capital LLC, et al.
Top Unsecured Creditors
In USD
(All Amounts Are Estimated)

| No. | Creditor [1] | Creditor Contact | Nature of Claim [2] | Contingent, Unliquidated, or Disputed | Amount of Claim [3] |
|---|---|---|---|---|---|
| 27 | Massachusetts Mutual Life Insurance Company<br>C/O Bernadette Harrigan<br>1295 State Street | Phone: (413) 788-8411<br>Fax: (413) 226-4288<br>Email: | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 28 | National Credit Union Administration Board<br>C/O Susman Godfrey LLP<br>1901 Avenue of the Stars, Suite 950 | Phone: (310) 789-3100<br>Fax: (310) 789-3150<br>Email: mseltzer@susmangodfrey.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 29 | The Charles Schwab Corporation<br>C/O Grais & Ellsworth LLP<br>70 East 55th Street<br>New York, NY 10022 | Phone: (212) 755-0100<br>Fax: (212) 755-0052<br>Email: | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 30 | New Jersey Carpenters Health Fund<br>C/O Cohen Milstein Sellers & Toll PLLC<br>150 East 52nd Street, Thirtieth Floor<br>New York, NY 10022 | Phone: (212) 838-7797<br>Fax: (212) 838-7745<br>Email: jfeltman@cohenmilstein.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 31 | New Jersey Carpenters Vacation Fund<br>C/O Cohen Milstein Sellers & Toll PLLC<br>150 East 52nd Street, Thirtieth Floor<br>New York, NY 10022 | Phone: (212) 838-7797<br>Fax: (212) 838-7745<br>Email: jfeltman@cohenmilstein.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 32 | Boilermaker Blacksmith National Pension Trust<br>C/O Cohen Milstein Sellers & Toll PLLC<br>150 East 52nd Street, Thirtieth Floor<br>New York, NY 10022 | Phone: (212) 838-7797<br>Fax: (212) 838-7745<br>Email: jfeltman@cohenmilstein.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 33 | Police and Fire Retirement System of the City of Detroit<br>C/O Zwerling, Schachter & Zwerling<br>41 Madison Avenue<br>New York, NY 10010 | Phone: (212) 223-3900<br>Fax: (212) 371-5969<br>Email: rzwerling@zsz.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 34 | Orange County Employees Retirement System<br>C/O Cohen Milstein Sellers & Toll PLLC<br>150 East 52nd Street, Thirtieth Floor<br>New York, NY 10022 | Phone: (212) 838-7797<br>Fax: (212) 838-7745<br>Email: jfeltman@cohenmilstein.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 35 | Midwest Operating Engineers Pension Trust Fund<br>C/O Cohen Milstein Sellers & Toll PLLC<br>150 East 52nd Street, Thirtieth Floor<br>New York, NY 10022 | Phone: (212) 838-7797<br>Fax: (212) 838-7745<br>Email: jfeltman@cohenmilstein.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 36 | Iowa Public Employees Retirement System<br>C/O Cohen Milstein Sellers & Toll PLLC<br>150 East 52nd Street, Thirtieth Floor<br>New York, NY 10022 | Phone: (212) 838-7797<br>Fax: (212) 838-7745<br>Email: jfeltman@cohenmilstein.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 37 | Brian Kessler, et al<br>C/O Walters Bender Strohbehn & Vaughan, P.C.<br>2500 City Center Square, 1100 Main, Suite 2500 | Phone: (816) 421-6620<br>Fax: (816) 421-4747<br>Email: jhaake@wbsvlaw.com | Contingent Litigation | Contingent, Unliquidated, Disputed | Unknown |
| 38 | Donna Moore<br>C/O Kessler Topaz Meltzer & Check, LLP<br>280 King of Prussia Road<br>Radnor, PA 19087 | Phone: (610) 822.0242<br>Fax: (610) 667.7056<br>Email: eclolko@ktmc.com | Contingent Litigation | Contingent, Unliquidated, Disputed | Unknown |

Residential Capital LLC, et al.
Top Unsecured Creditors
In USD
(All Amounts Are Estimated)

| No. | Creditor [1] | Creditor Contact | Nature of Claim [2] | Contingent, Unliquidated, or Disputed | Amount of Claim [3] |
|---|---|---|---|---|---|
| 39 | Steven And Ruth Mitchell C/O Walters Bender Stroehbehn & Vaughan, P.C 2500 City Center Square, 1100 Main Street Kansas City, MO 64105 | Phone: (816) 421-6620 Fax: (816) 421-4747 Email: swalter@wbsvlaw.com | Settled Litigation | | 14,500,000.00 |
| 40 | Indecomm Global Services 200 Middlesex Essex Turnpike Suite 102 Iselin, NJ 08830 | Phone: (732) 404-0081 Ext. 208 Fax: Email: Rajan@indecomm.net | General Trade Payable | | 675,000.00 |
| 41 | Alan Gardner C/O Williamson & Williams 187 Parfitt Way SW, Suite 250 Bainbridge Island, WA 98110 | Phone: (206) 441-5444 Fax: (206) 780-5557 Email: roblin@williamslaw.com | Settled Litigation | | 555,000.00 |
| 42 | Tiffany Smith C/O Schroeter Goldmark & Bender 500 Central Bldg., 810 Third Ave. Seattle, WA 98104 | Phone: (206) 622-8000 Fax: (206) 682-2305 Email: info@sgb-law.com | Settled Litigation | | 275,000.00 |
| 43 | Don E. Diane M. Patterson C/O Siegel Brill, P.A. 100 Washington Avenue South, Suite 1300 Minneapolis, MN 55401 | Phone: (612) 337-6100 Fax: (612) 339-8591 Email: heidifurlong@siegelbrill.com | Settled Litigation | | 157,950.00 |
| 44 | Wells Fargo & Company Wf 8113, P.O. Box 1450 Minneapolis, MN 55485 | Phone: (612) 667-7121 Fax: Email: | General Trade Payable | | 121,000.00 |
| 45 | Credstar 12395 First American Way Poway, CA 92064 | Phone: (800) 921-6700, ext 5129 Fax: Email: LPulford@corelogic.com | General Trade Payable | | 99,773.65 |
| 46 | Emortgage Logic 9151 Boulevard 26, Suite 400 N. Richland Hills, TX 76180-5805 | Phone: (817) 581-2900 Fax: Email: info@emortgagelogic.com | General Trade Payable | | 87,910.00 |
| 47 | Aegis Usa Inc. 2049 Century Park East, Suite 300 Los Angeles, CA 90067 | Phone: +63 2 8858000 Fax: Email: Kapil.Chopra@aegisglobal.com | General Trade Payable | | 72,116.56 |
| 48 | ISGN Fulfillment Services Inc 3220 Tillman Drive, Suite 301 Bensalem, PA 19020 | Phone: (860) 656-7671 Fax: Email: Scott.stifer@isgn.com | General Trade Payable | | 65,754.00 |
| 49 | US Bank Corporate Trust Services 60 Livingston Ave St, Paul, MN 55107 | Phone: (651) 495-3839 Fax: (866) 669-1624 Email: michelle.moeller@usbank.com | General Trade Payable | | 64,000.00 |
| 50 | Deborah Pangel and Lee Sachs C/O Linda Tirelli One North Lexington Avenue, 11th Floor White Plains, NY 10601 | Phone: (914) 946-0860 Fax: (914) 946-0870 Email: WestchesterLegal@aol.com | Settled Litigation | | 55,000.00 |

Notes:
[1]    For all litigation settlements, the counterparty's attorney is listed as addressee.
[2]    General Trade Payable claims are based on balances in the Debtors' Accounts Payable system as of close of business May 11, 2012.
[3]    Estimated amount of claim for unsecured bonds represents principal balances as of 5/9/12 and does not include accrued interest or fees.
[4]    As of Indenture dated June 24, 2005 between Residential Capital Corporation and Deutsche Bank Trust Company Americas, as Indenture Trustee (amended on June 24, 2005, November 21, 2005, and May 16, 2008). A $20.1 million semi-annual interest payment due in April 2012 for the senior unsecured note maturing in April 2013 was not made.
[5]    Estimated amount of claim for EUR notes is based on an exchange rate of 1.29480 on May 11, 2012.
[6]    Estimated amount of claim for GBP notes is based on an exchange rate of 1.61418 on May 11, 2012.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) Chapter 11 |
| RESIDENTIAL FUNDING COMPANY, LLC, | ) Case No. 12-_____ (    ) |
| | ) |
| | ) Joint Administration Pending |
| Debtor. | ) |

## CORPORATE OWNERSHIP STATEMENT

In accordance with Rule 1007(a)(1) of the Federal Rules of Bankruptcy Procedure, Residential Funding Company, LLC (the "Debtor") hereby states that the following corporations directly or indirectly own 10% or more of the Debtor's equity interests as of May 14, 2012:

| Shareholder | Percentage of Shares Held |
|---|---|
| GMAC-RFC Holding Company, LLC | 100% |

I, James Whitlinger, the Chief Financial Officer of Residential Funding Company, LLC, a Delaware limited liability company, declare under penalty of perjury that I have read the foregoing and that it is true and correct to the best of my information and belief, and will be supplemented to the extent additional information becomes available.

Dated: May 14, 2012

/s/ James Whitlinger
Name: James Whitlinger
Title:   Chief Financial Officer

ny-1012554

## ACTION BY WRITTEN CONSENT OF THE BOARD OF DIRECTORS
## OF RESIDENTIAL FUNDING COMPANY, LLC,
## A SUBSIDIARY OF RESIDENTIAL CAPITAL, LLC

The undersigned, being all of the Directors of Residential Funding Company, LLC ("Residential Funding"), an indirect subsidiary of Residential Capital, LLC ("ResCap"), and constituting the entire Board of Directors of Residential Funding (the "Board"), acting pursuant to applicable law, hereby waives any and all requirements for the holding of a meeting, including, without limitation, any requirements as to call and notice thereof, and consents to the adoption of the following recitals and resolutions and to the actions set forth herein as of this 13th day of May, 2012, which actions shall have the same force and effect as if taken by affirmative vote at a meeting of the Board, duly called and held.

WHEREAS, the Board (i) has extensively reviewed the alternatives available to Residential Funding, (ii) has been advised of and considered the decision of the Board of Directors of ResCap to authorize the commencement of a case under the provisions of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") for itself and for certain of its direct and indirect subsidiaries, and (iii) has determined that seeking relief under the provisions of Chapter 11 of the Bankruptcy Code presents the best opportunity for preserving and maximizing the value of the enterprise for the benefit of Residential Funding, its subsidiaries, creditors, employees, stakeholders and other interested parties;

WHEREAS, Residential Funding has engaged in negotiations ranging from preliminary to late-stage with a number of prospective strategic and financial investors who expressed interest in pursuing a transaction and sale process to acquire substantially all of the assets of Residential Funding pursuant to 11 U.S.C. §§ 105, 363 and 365 (a "Section 363 Sale");

WHEREAS, Residential Funding has narrowed the field of prospective investors interested in pursuing a Section 363 Sale to Fortress Investment Group LLC ("Fortress"), a leading, highly diversified global investment management firm;

WHEREAS, the proposed transaction with Fortress would entail the sale of substantially all of Residential Funding's assets, including its mortgage loan origination and servicing businesses, in a Section 363 Sale as part of a Chapter 11 bankruptcy proceeding filed by Residential Funding, and the institution of an auction process under the supervision of the Bankruptcy Court to ensure that the price and terms obtained by Residential Funding constitute the best available transaction for Residential Funding (such transactions being collectively referred to herein as the "Fortress Transaction");

WHEREAS, the Board has determined that it is in the best interests of Residential Funding that Residential Funding pursue the Fortress Transaction;

WHEREAS, the Board has also been presented by the management of Residential Funding with a proposed Superpriority Debtor-in-Possession Credit and Guaranty Agreement (the "Credit Agreement") by and among GMACM Borrower, LLC ("GMACM Borrower"), RFC Borrower, LLC ("RFC Borrower"; together with GMACM Borrower, the "Borrowers"), ResCap, GMAC Mortgage, LLC ("GMAC Mortgage"), Residential Funding, certain subsidiaries of

ResCap from time to time party thereto as guarantors (collectively, the "Guarantors"; the Guarantors collectively with the Borrowers, the "Credit Parties," and each, a "Credit Party"), GMAC Mortgage and Residential Funding, as Administrators, Originators, Receivables Custodians and Servicers, GMAC Mortgage, as GMACM Servicer, certain financial institutions from time to time party thereto as lenders (the "Lenders"), Barclays Bank PLC, ("Barclays") as administrative agent for the Lenders (the "Administrative Agent"), Barclays, as collateral agent (the "Collateral Agent"), and Barclays, as syndication agent, and the other persons from time to time party thereto, pursuant to which Residential Funding intends to (i) provide an absolute and unconditional guaranty (the "Guaranty"), on a joint and several basis with the other guarantors, of all obligations, liabilities and indebtedness of the Credit Parties, as contemplated by or specified in the Credit Documents (as defined below) and the Orders (as defined in the Credit Agreement) (the "Obligations") and (ii) grant to the Collateral Agent security interests, pledges and encumbrances, as contemplated by or specified in the Credit Documents and the Orders;

WHEREAS, the Board has determined that Residential Funding will benefit, directly or indirectly from the loans being made under the Credit Agreement and that it is in the best interests of Residential Funding to grant a lien and to guaranty the Obligations on the terms and conditions set forth in the Credit Agreement;

WHEREAS, the Board has also been presented by the management of Residential Funding with an RFC Receivables Pooling and Purchase Agreement (the "Pooling Agreement") to be entered into between Residential Funding and RFC Borrower, pursuant to which it is intended that Residential Funding sell and assign certain receivables and the proceeds thereof (the "Transferred Receivables") to RFC Borrower;

WHEREAS, pursuant to an RFC Mortgage Loan Purchase and Contribution Agreement (the "Mortgage Loan Purchase Agreement") to be entered into between Residential Funding and RFC Borrower, it is intended that Residential Funding sell and contribute certain mortgage loans and related assets (the "Transferred Mortgage Loans"; together with the Transferred Receivables, the "Transferred Assets") to RFC Borrower;

WHEREAS, pursuant to an RFC Receivables Purchase Agreement (the "Receivables Purchase Agreement"; together with the Pooling Agreement and the Mortgage Loan Purchase Agreement, the "RFC Transfer Agreements") to be entered into among Residential Funding, as Originator and Servicer, RFC Borrower, and GMAC Mortgage Servicer Advance Funding Company Ltd. ("GMAC Mortgage Servicer"), as "GSAP Transferor," it is intended that the GSAP Transferor sell and assign certain receivables to RFC Borrower;

WHEREAS, the Board has determined that it is in the best interests of Residential Funding to transfer the Transferred Assets to RFC Borrower under the terms and conditions of the RFC Transfer Agreements set forth above;

WHEREAS, under (a) a Satisfaction and Discharge Agreement (the "Satisfaction and Discharge Agreement") to be entered into between GMAC Mortgage, Residential Funding, GMAC Mortgage Servicer, as the "GSAP Issuer," The Bank of New York Mellon ("BONY"), Barclays, and (b) an Omnibus Termination Agreement (together with the Satisfaction and Discharge Agreement, the "GSAP Termination Agreements") to be entered into between GMAC

Mortgage, Residential Funding, the GSAP Issuer, GMACR Mortgage Products, LLC, RFC-GSAP Servicer Advance, LLC, BONY, MaplesFS Limited and Barclays, it is intended that the Fourth Amended and Restated Indenture, dated as of March 15, 2011 (the "GSAP Indenture"), which amends and restates the Third Amended and Restated Indenture, dated as of April 15, 2010 (as amended by Amendment No. 1 dated as of January 26, 2011), which amended and restated a Second Amended and Restated Indenture, dated as of March 6, 2008, which amended and restated a First Amended and Restated Indenture, dated as of March 18, 2005, which amended and restated an Indenture dated as of June 30, 2004 (the "Base Indenture"), among the GSAP Issuer, GMAC Mortgage, as an administrator and a servicer, Residential Funding, as an administrator and a servicer, and BONY, as indenture trustee, calculation agent and paying agent (the "GSAP Indenture Trustee"), as such Base Indenture was amended by the Series 2012-VF1 Indenture Supplement and Amendment No. 1, dated as of March 13, 2012, by and among the GSAP Issuer, GMAC Mortgage, Residential Funding, the GSAP Indenture Trustee and Barclays, as administrative agent, will be satisfied and discharged and certain ancillary agreements relating to the GSAP Indenture and the Base Indenture shall be terminated;

WHEREAS, pursuant to (a) a Payoff Letter (the "Payoff Letter") to be delivered by BMMZ Holdings LLC ("BMMZ") and acknowledged and agreed to by Residential Funding, GMAC Mortgage and ResCap and (b) certain notices (the "BMMZ Notices" and, together with the Payoff Letter, the "BMMZ Termination Agreements") delivered in connection therewith, Residential Funding and GMAC Mortgage will repurchase all mortgage loans sold by such party to BMMZ under the Master Repurchase Agreement (the "Repurchase Agreement") dated as of December 21, 2011, among Residential Funding, as seller, GMAC Mortgage, as seller and servicer, ResCap, as guarantor and BMMZ, as buyer, all obligations of Residential Funding and GMAC Mortgage under the Repurchase Agreement will be satisfied and certain ancillary agreements relating to the Repurchase Agreement shall be terminated;

WHEREAS, the Board has determined that it is in the best interests of Residential Funding to enter into the GSAP Termination Agreements and the BMMZ Termination Agreements (the "Termination Agreements");

WHEREAS, in connection with entering into the Credit Agreement, the Credit Parties may negotiate, prepare, execute, deliver, acknowledge, attest and perform (or cause to be negotiated, prepared, executed, delivered, acknowledged, attested and performed) any applicable fee letters, engagement letters, commitment letters, promissory notes, guaranty agreements, collateral documents, pledge agreements, cash collateral and reimbursement agreements, deeds of trust, mortgages, control agreements, custodial agreements, other security agreements, assignments, endorsements and other instruments of transfer, intercreditor and/or subordination agreements, agency agreements, instruction letters, appointment and authorization agreements, payoff letters, financing statements, hedging agreements and other agreements, certificates, instruments and documents as may be contemplated by, related to or required in connection with the Credit Agreement or the transactions contemplated thereby (collectively with the Credit Agreement, Guaranty, the Receivables Purchase Agreement, Pooling Agreement and Mortgage Loan Purchase Agreement, the "Credit Documents");

WHEREAS, the Board has been presented with an Asset Purchase Agreement (the "NSM Asset Purchase Agreement"), among ResCap, Residential Funding, GMAC

Mortgage, Executive Trustee Services, LLC ("ETS LLC"), EPRE LLC ("EPRE"), ETS of Washington, Inc., ("ETS WA") and the additional sellers identified on Schedule A to the NSM Asset Purchase Agreement (together with ResCap, Residential Funding, GMAC Mortgage, ETS LLC, ETS WA and EPRE, the "Sellers") and NationStar Mortgage LLC ( "Purchaser"), pursuant to which the Sellers will sell certain of their assets to Purchaser and Purchaser will assume certain of the Sellers' Liabilities on the terms and conditions set forth in the NSM Asset Purchase Agreement (the "NSM Asset Sale");

WHEREAS, the Board has also been presented with a Deposit Escrow Agreement (the "Escrow Agreement"), among the Sellers, Purchaser and JPMorgan Chase Bank, NA as the Escrow Agent with respect to the Cash Deposit (as defined in the NSM Asset Purchase Agreement);

WHEREAS, the Board has also been presented with an Asset Purchase Agreement (the "AFI Asset Purchase Agreement," together with the NSM Asset Purchase Agreement and the Escrow Agreement, the "Asset Purchase Agreements"), between ResCap, Residential Funding and GMAC Mortgage, and BMMZ and Ally Financial Inc. ("AFI"), pursuant to which such Sellers will sell certain Whole Loans, Advances (each as defined in the AFI Asset Purchase Agreement) and other assets to BMMZ (the "AFI Asset Sale"), and AFI will guarantee the obligations of BMMZ thereunder;

WHEREAS, the Board has determined that it is in the best interests of Residential Funding to pursue the NSM Asset Sale and the AFI Asset Sale and to enter into the Asset Purchase Agreements;

WHEREAS, the Board has had the opportunity to fully consider each of the strategic alternatives available to Residential Funding;

WHEREAS, after consideration of all factors and information the Board deemed relevant, the Board finds that it is desirable for, fair to and in the best interests of Residential Funding, its subsidiaries, creditors, stakeholders and other parties in interest, that Residential Funding (i) file or cause to be filed a voluntary petition for relief under the provisions of Chapter 11 of the Bankruptcy Code in which the authority to operate as a debtor-in-possession will be sought (the "Chapter 11 Filing"), (ii) effect the Fortress Transaction as a Section 363 Sale, (iii) execute and deliver the Credit Agreement and the other Credit Documents, to the extent party thereto, and perform its obligations thereunder, including the provision of the Guaranty and granting of a security interest, (iv) transfer the Transferred Assets to RFC Borrower on the terms and conditions set forth in the RFC Transfer Agreements, (v) enter into the Termination Agreements, and (vi) enter into the Asset Purchase Agreements.

NOW THEREFORE, BE IT RESOLVED as follows:

## COMMENCEMENT OF BANKRUPTCY CASES

RESOLVED, that Residential Funding is authorized and directed to file a petition seeking relief under the provisions of Chapter 11 of the Bankruptcy Code;

RESOLVED, that each of the Authorized Officers of Residential Funding (it being understood that, for the purposes of these resolutions, the "Authorized Officers" of Residential Funding shall include, without limitation, the most senior officer of Residential Funding and any other officer determined by the Chief Executive Officer or Chief Financial Officer of Residential Funding to be an appropriate officer with respect to the action taken) is hereby authorized, empowered and directed, in the name and on behalf of Residential Funding, to execute and verify a petition under Chapter 11 of the Bankruptcy Code and to cause the same to be filed in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in such form and at such time as the Authorized Officer executing such petition on behalf of Residential Funding shall determine;

RESOLVED, that in connection with the commencement of the Chapter 11 case by Residential Funding, each Authorized Officer is authorized, in the name and on behalf of Residential Funding, to negotiate, execute, and deliver such notes, security and other agreements, and instruments as such Authorized Officer considers appropriate to enable Residential Funding to enter into one or more agreements to (i) guaranty the Obligations under the Credit Agreement, and (ii) utilize cash collateral on the terms and conditions such Authorized Officer or Authorized Officers executing the same may consider necessary, proper, or desirable, and to consummate the transactions contemplated by such notes, security and other agreements and instruments on behalf of Residential Funding, subject to Bankruptcy Court approval;

RESOLVED, that each Authorized Officer is authorized and directed, in the name and on behalf of Residential Funding, to cause Residential Funding to enter into, execute, deliver, certify, file and/or record, negotiate, and perform (or direct others to do so on their behalf as provided herein), any and all petitions, schedules, lists, motions, certifications, agreements, instruments, affidavits, applications, including, without limitation, applications for approvals or rulings of governmental or regulatory authorities, or other documents, and in that connection to employ and retain assistance by legal counsel, accountants or other professionals, and to take such other actions, as in the judgment of such Authorized Officer shall be or become necessary, proper, or desirable in connection with the Chapter 11 Filing contemplated hereby, with a view to the successful prosecution of such case, including any and all action necessary, proper or desirable in connection with obtaining the use of cash collateral or debtor-in-possession financing;

RESOLVED, that the Board approves and endorses Residential Funding taking any and all action, including authorizing a filing in the Bankruptcy Court, and to execute and deliver all documents, agreements, motions and pleadings as are necessary, proper, or desirable to enable Residential Funding to carry out the filing in Bankruptcy Court contemplated hereby, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code;

## SECTION 363 ASSET SALE AUTHORIZATION

RESOLVED, that the Authorized Officers, each acting alone or with one or more other Authorized Officers be, and they hereby are authorized, empowered and directed, to petition the Bankruptcy Court to effect the Fortress Transaction through an auction process overseen by the Bankruptcy Court in a Section 363 Sale;

**RESOLVED**, that the Authorized Officers, each acting alone or with one or more other Authorized Officers be, and they hereby are, authorized and empowered to execute and file on behalf of Residential Funding all petitions, schedules, lists and other motions, papers or documents, and to take any and all action that they deem necessary or advisable to effect the Fortress Transaction as a Section 363 Sale;

## DEBTOR-IN-POSSESSION FINANCING AUTHORIZATION

**RESOLVED**, that Residential Funding is authorized to grant to the Collateral Agent and the Lenders security interests, pledges and encumbrances in and of certain property of Residential Funding as provided in the Credit Agreement;

**RESOLVED**, that the form, terms and provisions of the Credit Agreement, including the Guaranty, together with all schedules and exhibits thereto, of which a draft was submitted to this Board, are advisable and fair to and in the best interests of Residential Funding and are in all respects approved;

**RESOLVED**, that the Authorized Officers, each acting alone or with one or more Authorized Officers, may (i) negotiate, execute and deliver for and on behalf of Residential Funding, the Credit Agreement and the other Credit Documents referred to therein to which Residential Funding is a party, including the Collateral Documents (as defined in the Credit Agreement) to be delivered thereunder, in substantially the forms hereby approved, with such changes, additions or deletions as the Authorized Officer executing the same may approve, such execution to be conclusive evidence of such approval, and (ii) negotiate, execute and deliver all other instruments, certificates, papers, agreements and other applicable Credit Documents which the Lenders, the Administrative Agent or the Collateral Agent may require in connection with the Credit Agreement in such form and of such content as any such Authorized Officer shall approve, such execution to be conclusive evidence of such approval;

**RESOLVED**, that any Authorized Officer is authorized to negotiate, execute and deliver, for and on behalf of Residential Funding, any addendum to, amendment of, or other renewal or extension of the Credit Agreement, or any other Credit Documents at any time after the execution thereof, such addendum, amendment, renewal or extension to be in such form and of such content as shall be approved by the Authorized Officer who executes the same, such execution to be conclusive evidence of such approval;

**RESOLVED**, that the execution, delivery and consummation of the transactions contemplated by the Credit Agreement, in substantially the form of and with terms and conditions as presented to the Board (with such changes or additions thereto as the Authorized Officer executing the same shall deem necessary, advisable or appropriate) and the other Credit Documents and all other instruments required or deemed necessary or desirable by any Authorized Officer in connection with the Credit Agreement and the performance by Residential Funding of its obligations thereunder (including, without limitation, with respect to (i) the terms of the Guaranty and the granting of liens and security interests to be granted under the Credit Documents and Orders and (ii) the payment of any fees and expenses associated therewith), be, and they hereby are, adopted, approved, authorized and ratified in all respects;

Unanimous Written Consent of Board of Residential Funding Company, LLC

RESOLVED, that any Authorized Officer, or any other officer or employee of Residential Funding authorized by an Authorized Officer in accordance with Residential Funding's procedures, may pay any and all costs, expenses and fees, do and perform all acts and execute and deliver any further instrument, certificate or document in the name and on behalf of Residential Funding in connection with the Credit Documents, as such Authorized Officer deems necessary or appropriate to carry out the purposes and intent of these resolutions, the execution thereof by such Authorized Officer to be conclusive evidence of such determination;

RESOLVED, that the authority given in these resolutions is retroactive and any and all acts authorized herein performed before the passage of these resolutions in connection with the Credit Documents are ratified and affirmed;

RESOLVED, that these resolutions shall continue in full force and effect until the Administrative Agent receives notice in writing of their revocation by a resolution duly adopted by the Board (provided that any such notice shall not affect the Credit Agreement and any other Credit Documents in effect at the time such notice is given or any outstanding borrowings and other extensions of credit from the Administrative Agent or the Lenders under the Credit Documents or otherwise); and

RESOLVED, that the Credit Agreement, together with its schedules and exhibits, and any and all other Credit Documents referred to therein, submitted to this Board shall be filed by the Secretary or Assistant Secretary of Residential Funding among the records of Residential Funding;

## AUTHORIZATION OF CERTAIN ASSET TRANSFERS

RESOLVED, that Residential Funding is authorized to (i) sell and assign the Transferred Receivables to RFC Borrower as provided in the Pooling Agreement, and (ii) sell and contribute the Transferred Mortgage Loans to RFC Borrower as provided in the Mortgage Loan Purchase Agreement;

RESOLVED, that the form, terms and provisions of the RFC Transfer Agreements, together with all attachments thereto, of which a draft was submitted to this Board, are in all respects approved;

RESOLVED, that the Authorized Officers, each acting alone or with one or more Authorized Officers, may (i) negotiate, execute and deliver for and on behalf of Residential Funding, the RFC Transfer Agreements, in substantially the forms hereby approved, with such changes, additions or deletions as the Authorized Officer executing the same may approve, such execution to be conclusive evidence of such approval, and (ii) negotiate, execute and deliver all other instruments, certificates, papers, agreements and other documents which may be required in connection with the RFC Transfer Agreements in such form and of such content as any such Authorized Officer shall approve, such execution to be conclusive evidence of such approval;

RESOLVED, that any Authorized Officer is authorized to negotiate, execute and deliver, for and on behalf of Residential Funding, any addendum to, amendment of, or other renewal or extension of the RFC Transfer Agreements at any time after the execution thereof, such addendum, amendment, renewal or extension to be in such form and of such content as shall be

approved by the Authorized Officer who executes the same, such execution to be conclusive evidence of such approval;

RESOLVED, that any Authorized Officer, or any other officer or employee of Residential Funding authorized by an Authorized Officer in accordance with Residential Funding's procedures, may pay any and all costs, expenses and fees, do and perform all acts and execute and deliver any further instrument, certificate or document in the name and on behalf of Residential Funding in connection with the RFC Transfer Agreements, as such Authorized Officer deems necessary or appropriate to carry out the purposes and intent of these resolutions;

RESOLVED, that the authority given in these resolutions is retroactive and any and all acts authorized herein performed before the passage of these resolutions in connection with the RFC Transfer Agreements are ratified and affirmed;

RESOLVED, that the RFC Transfer Agreements, together with the attachments thereto, and any and all other documents referred to therein, submitted to Residential Funding, shall be filed by the Secretary or Assistant Secretary of Residential Funding among the records of Residential Funding;

## AUTHORIZATION OF THE TERMINATION AGREEMENTS

RESOLVED, that the form, terms and provisions of the Termination Agreements, together with all attachments thereto, drafts of which were submitted to this Board, are in all respects approved;

RESOLVED, that the Authorized Officers, each acting alone or with one or more Authorized Officers, may (i) negotiate, execute and deliver for and on behalf of Residential Funding, the Termination Agreements, in substantially the forms hereby approved, with such changes, additions or deletions as the Authorized Officer executing the same may approve, such execution to be conclusive evidence of such approval, and (ii) negotiate, execute and deliver all other instruments, certificates, papers, agreements and other documents which may be required in connection with the Termination Agreements in such form and of such content as any such Authorized Officer shall approve, such execution to be conclusive evidence of such approval;

RESOLVED, that any Authorized Officer, or any other officer or employee of Residential Funding authorized by an Authorized Officer in accordance with Residential Funding's procedures, may pay any and all costs, expenses and fees, do and perform all acts and execute and deliver any further instrument, certificate or document in the name and on behalf of Residential Funding in connection with the Termination Agreements, as such Authorized Officer deems necessary or appropriate to carry out the purposes and intent of these resolutions;

RESOLVED, that the authority given in these resolutions is retroactive and any and all acts authorized herein performed before the passage of these resolutions in connection with the Termination Agreements are ratified and affirmed;

RESOLVED, that the Termination Agreements, together with the attachments thereto, and any and all other documents referred to therein, submitted to Residential Funding, shall be

filed by the Secretary or Assistant Secretary of Residential Funding among the records of Residential Funding;

## AUTHORIZATION OF ASSET PURCHASE AGREEMENTS

RESOLVED, that the form, terms and provisions of the Asset Purchase Agreements, drafts of which were submitted to the Board, are in all respects authorized and approved;

RESOLVED, that the Authorized Officers are authorized to enter into, execute and deliver the Asset Purchase Agreements on behalf of Residential Funding, and any other agreement, instrument, document, or certificate required pursuant to any or necessary or desirable to effect the purposes of the Asset Purchase Agreements (together with the Asset Purchase Agreements, the "Transaction Documents"), together with such changes therein as the Authorized Officer executing the same shall deem necessary, desirable or appropriate, such execution to be conclusive evidence of such necessity, desirability or appropriateness, and to take such other actions as may be required to be taken by Residential Funding;

RESOLVED, that any and all actions heretofore or hereafter taken by the Authorized Officers within the terms of any of the foregoing resolutions are ratified and confirmed as the acts and deeds of Residential Funding;

RESOLVED, that each of the Authorized Officers is authorized and directed to execute and deliver any and all agreements, instruments and other documents and to take such other actions as they deem necessary, desirable, or appropriate to carry out the purposes and intent of the foregoing resolutions;

RESOLVED, that the Assistant Secretary is authorized to prepare and to certify as a resolution of Residential Funding such additional resolutions as such Authorized Officer, acting upon advice of counsel to Residential Funding, shall deem necessary or advisable to accomplish the purposes of the foregoing resolutions;

## GENERAL AUTHORIZATION AND RATIFICATION

RESOLVED, that each Authorized Officer is authorized and directed, consistent with these Resolutions and with the advice of counsel to Residential Funding: (i) to negotiate, execute, deliver, certify, file and/or record, and perform, any and all of the agreements, documents, and instruments referenced herein, and such other agreements, documents, and instruments and assignments thereof as may be required or as such Authorized Officer deems appropriate or advisable, or to cause the negotiation, execution, and delivery thereof, as the case may be, in such form and substance as such Authorized Officer may approve, together with such changes and amendments to any of the terms and conditions thereof as such Authorized Officer may approve, (ii) to negotiate, execute, deliver, certify, file and/or record, and perform any agreements, documents, certificates, consents, filings, and applications relating to the Resolutions adopted and matters ratified or approved herein and the transactions contemplated thereby, and amendments and supplements to any of the foregoing, and to take such other action as may be required or as such Authorized Officer deems appropriate or advisable in connection therewith, and (iii) to do such other things as may be required, or as may in such Authorized Officer's judgment be necessary, proper, or desirable, to carry out the intent and effectuate the

purposes of the Resolutions adopted and matters ratified or approved herein and the consummation of the transactions contemplated hereby;

**RESOLVED**, that any Authorized Officer be, and each of them individually is, empowered, authorized and directed, for and on behalf of Residential Funding, to take or cause to be taken any and all such further actions, to execute and deliver or cause to be executed and delivered all such contracts, documents, instruments and agreements providing for the engagement, retention, compensation, reimbursement or expenses and indemnification of any legal counsel, accounting firm, investment banking firm or other such consultants, advisors and other agents, to incur and pay all such fees and expenses and to retain any such legal counsel, accounting firm, investment banking firm or other such consultants, advisers and other agents, in each case as they shall in their judgment determine to be necessary, desirable or advisable to carry out fully the intent and purpose of the foregoing resolutions and the execution by such Authorized Officer of any such document, instrument or agreement or the payment of any such expenses or the doing by them of any act in connection with the foregoing matters shall conclusively establish their authority therefore and the approval of the documents, instruments or agreements so executed, the expenses so paid and the actions so taken;

**RESOLVED**, that any person dealing with any Authorized Officer or Authorized Officers in connection with any of the foregoing matters shall be conclusively entitled to rely upon the authority of such Authorized Officer and by his or her execution of any document or agreement, the same shall be a valid and binding obligation of Residential Funding enforceable in accordance with its terms;

## RETENTION OF PROFESSIONALS AND PAYMENT OF FEES AND EXPENSES

**RESOLVED**, that the law firm of Morrison & Foerster LLP is employed as attorneys for Residential Funding under a general retainer in Residential Funding's Chapter 11 case, subject to the approval of the Bankruptcy Court;

**RESOLVED**, that the firm of FTI Consulting Inc. is employed to provide financial advisory services to Residential Funding, subject to the approval of the Bankruptcy Court;

**RESOLVED**, that the firm of Centerview Partners LLC is employed to provide investment banking services to Residential Funding, subject to the approval of the Bankruptcy Court;

**RESOLVED**, that the firm of Kurtzman Carson Consultants LLP is employed as claims and noticing agent to Residential Funding, subject to the approval of the Bankruptcy Court;

**RESOLVED**, that the law firm of Curtis, Mallet-Prevost, Colt & Mosle LLP is employed as conflicts counsel for Residential Funding in Residential Funding's Chapter 11 case, subject to the approval of the Bankruptcy Court;

**RESOLVED**, that the firm of Rubenstein Associates, Inc. is employed as public relations consultants to Residential Funding in Residential Funding's Chapter 11 case, subject to the approval of the Bankruptcy Court;

RESOLVED, that any Authorized Officer is authorized, empowered, and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, financial advisors, and other professionals and to take and perform any and all further acts and deeds that such Authorized Officer deems necessary, proper, or desirable in connection with Residential Funding 's Chapter 11 case, with a view to the successful prosecution of such case;

RESOLVED, that all actions taken by the Authorized Officers, or any of them, prior to the date of the foregoing Resolutions adopted by consent and within the authority conferred, are ratified, confirmed, and approved in all respects as the act and deed of Residential Funding.

IN WITNESS WHEREOF, the undersigned, being all of the members of the Board of Directors of Residential Funding, execute this written consent, adopt the above recitals and resolutions, and direct a fully signed copy of this Action by Unanimous Written Consent of the Board of Directors to be filed with the minutes of proceedings of the Board of Directors of Residential Funding.

This Action by Unanimous Written Consent of the Board of Directors may be executed in any number of counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same Action by Unanimous Written Consent of the Board of Directors of Residential Funding.

Dated: May 13, 2012                 /s/ James Whitlinger
                                    James Whitlinger


Dated: May 13, 2012                 /s/ Joseph A. Pensabene
                                    Joseph A. Pensabene


Dated: May 13, 2012                 /s/ Steven M. Abreu
                                    Steven M. Abreu

Unanimous Written Consent of Board of Residential Funding Company, LLC

ny-1040097

# EXHIBIT "B"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------
                                            )
In re:                                      )    Case No. 12-12020 (MG)
                                            )
RESIDENTIAL CAPITAL, LLC, et al.,           )    Chapter 11
                                            )
                        Debtors.            )    Jointly Administered
                                            )
------------------------------------------------------

**FINAL SUPPLEMENTAL ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a),
362, 363, 502, 1107(a), AND 1108 AND BANKRUPTCY RULE 9019 (I) AUTHORIZING
THE DEBTORS TO CONTINUE IMPLEMENTING LOSS MITIGATION PROGRAMS;
(II) APPROVING PROCEDURES FOR COMPROMISE AND SETTLEMENT OF
CERTAIN CLAIMS, LITIGATIONS AND CAUSES OF ACTION; (III) GRANTING
LIMITED STAY RELIEF TO PERMIT FORECLOSURE AND EVICTION
PROCEEDINGS, BORROWER BANKRUPTCY CASES, AND TITLE DISPUTES TO
PROCEED; AND (IV) AUTHORIZING AND DIRECTING THE DEBTORS TO PAY
SECURITIZATION TRUSTEE FEES AND EXPENSES**

Upon the motion (the "Motion")[1] of Residential Capital, LLC, and certain of its

affiliates, as debtors and debtors in possession (collectively, the "Debtors") for entry of a

supplemental order under Bankruptcy Code sections 105(a), 362, 363, 1107(a) and 1108, and

Bankruptcy Rule 9019 (i) authorizing the Debtors to continue implementing loss mitigation

programs; (ii) approving procedures for the compromise and settlement of certain claims,

litigations and causes of action in the ordinary course of the Debtors' business; (iii) granting

limited stay relief to permit (w) borrowers or their tenants, as applicable, to prosecute direct

claims and counter-claims in foreclosure and eviction proceedings (including in states in which

non-judicial foreclosure is followed), (x) borrowers to prosecute certain actions in borrower

bankruptcy cases, (y) the Debtors to prosecute foreclosure actions in those circumstances where

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.
       Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief
       granted herein may refer to http://www.kccllc.net/rescap for additional information.



1212020120713000000000011

they service senior mortgage loans and own the junior mortgage loans on the underlying

property, and (z) third party lien holders to prosecute direct claims and counter-claims in actions

involving the amount, validity or priority of liens on properties subject to foreclosure

proceedings; and (iv) authorizing and directing the Debtors to pay certain securitization trustee

fees and expenses; and the Court having considered the Whitlinger Affidavit and the Bocresion

Declaration; and the Court having entered the Interim Supplemental Order on June 15, 2012

[Docket No. 391]; and the Court having entered a final order on June 15, 2012 granting the GA

Servicing Motion on a final basis [Docket No. 401]; and the Court having entered a final order

on June 15, 2012 granting the Non-GA Servicing Motion on a final basis [Docket No. 402]; and

it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157

and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is

proper pursuant to 28 U.S.C §§ 1408 and 1409; and it appearing that this proceeding on the

Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion

having been given and it appearing that no other or further notice need be provided; and the

National Association of Consumer Bankruptcy Attorneys, on its own behalf and in a

representative capacity, two individuals who are debtors under Chapter 13, and Edward Boltz,

counsel for those individuals, having filed jointly the Limited Omnibus Objection To The

Servicing Orders And Debtors' May 31, 2012 Motion For A Supplemental Order [Docket No.

221] (the "NACBA Objection"); and the Committee having filed the Omnibus Response And

Reservation Of Rights Of The Official Committee Of Unsecured Creditors To Certain Of The

Debtors' First Day Motions [Docket No. 240]; and the Debtors having filed the Omnibus Reply

To Objections To Entry Of Final Orders For Specific "First Day" Motions And Related Relief

[Docket. No. 254]; and upon the record of the hearing; and it appearing that the relief requested

by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in

interest; and after due deliberation thereon; and any objections to the Motion, including the

NACBA Objection, having been withdrawn, resolved, or overruled on the merits; and sufficient

cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

      1.    The Motion is GRANTED on a final basis, as set forth herein, and any

objections to the Motion are hereby overruled;

Loss Mitigation Programs

      2.    The Debtors are authorized, but not directed in their sole and absolute

discretion and subject to available funding, to continue developing and implementing loss

mitigation programs and procedures in the ordinary course of their businesses *nunc pro tunc* to

the Petition Date, including, but not limited to, making incentive payments to borrowers in

connection with the closing of short sales, or vacating properties in lieu of foreclosure or eviction

proceedings, or in the form of borrower rebates for loan payoffs including honoring all

obligations related thereto that accrued in whole or in part prior to the Petition Date (collectively,

the "Loss Mitigation Programs"); provided, however, that the aggregate cash payments made by

the Debtors to individual borrowers under the Loss Mitigation Programs that are not reimbursed

to the Debtors shall not exceed $550,000 per month (the "Monthly Cap"), absent consent of the

Committee or further order of the Court; provided, further, however, that to the extent the

Debtors do not exceed the Monthly Cap in any month they shall be entitled to utilize the

difference between the actual amount and the Monthly Cap in any succeeding month.  The

Debtors shall provide monthly reports to the Committee and the Office of the United States

Trustee for the Southern District of New York (the "U.S. Trustee"), which reports shall be in a

3

ny-1046923

form agreed to by the Debtors and the Committee and such additional information as shall be

reasonably requested by the Committee, in each case, concerning the Loss Mitigation Programs.

3.      Cash payments made by the Debtors to individual borrowers under the

Loss Mitigation Programs for which the Debtors are not reimbursed shall not exceed $4.2

million in the aggregate, absent consent of the Committee or further order of the Court.  For the

avoidance of doubt, the limitation on the amount of cash payments provided for in this paragraph

3 is in addition to the limitation on the amount of cash payments provided for in paragraph 12

hereof.

<u>Settlement Procedures</u>

4.      The Debtors are authorized, but not directed to compromise and settle

certain claims brought by the Debtors against any non-insider third parties in connection with

foreclosure, eviction, or borrower bankruptcy proceedings (each a "<u>Settling Party</u>") or by a

Settling Party against any of the Debtors (each, a "<u>Claim</u>") in accordance with the following two-

tiered procedures (the "<u>Settlement Procedures</u>"):

> <u>Tier I</u>:  The Debtors, in their sole discretion, may enter into,
> execute and consummate written agreements of settlement with
> respect to Claims that will be binding on the Debtors and their
> estates without further action by this Court or notice to any party
> and grant such Settling Parties cash payments or allowed
> prepetition claims in amounts not to exceed $40,000 in full
> settlement of such Claim (each, a "<u>Tier I Settlement</u>").

> <u>Tier II</u>:  The Debtors may enter into, execute and consummate
> written agreements of settlement with respect to Claims that will
> be binding on the Debtors and their estates without further action
> by this Court or notice to any party and grant such Settling Parties
> cash payments or allowed prepetition claims in amounts exceeding
> $40,000 but less than $100,000 in full settlement of such Claims
> (each, a "<u>Tier II Settlement</u>"); provided, that in each case:

> (a) The Debtors must provide advance written notice (by
> formal or informal means, including by e-mail correspondence) of
> the terms of any Tier II Settlement to (x) the U.S. Trustee, 33

4

Whitehall Street, 21st Floor, New York, New York 10004, Attn:
Brian S. Masumoto, (y) counsel for the Committee, Kramer Levin
Naftalis & Frankel LLP, 1177 Avenue of the Americas New York,
NY 10036, Attn: Kenneth H. Eckstein and Douglas H. Mannal;
and (z) counsel to the administrative agent for the Debtors'
providers of debtor in possession financing, Skadden, Arps, Slate,
Meagher & Flom LLP, 4 Times Square, New York, New York
10036, Attn: Kenneth S. Ziman and Jonathan H. Hofer
(collectively the "Notice Parties")

(b) Those Notice Parties wishing to object to any proposed
Tier II Settlement must serve a written objection (by formal or
informal means, including by e-mail correspondence) on the
Debtors, so that it is received by no later than 4:00 p.m. (prevailing
Eastern Time) on the day that is seven (7) calendar days from the
date the Notice Parties received written notice of such Tier II
Settlement (the "Settlement Objection Deadline"). Objections
should be addressed to the proposed attorneys for the Debtors,
Morrison & Foerster LLP, 1290 Avenue of the Americas, New
York, New York 10104, Attn: Larren M. Nashelsky
(LNashelsky@mofo.com) and Norman S. Rosenbaum
(NRosenbaum@mofo.com).

(c) If the Debtors receive a timely objection from a Notice
Party, the parties will confer and attempt to resolve any
differences. Failing that, the Debtors may petition the Court for
approval of the Tier II Settlement in accordance with any case
management orders entered in the Chapter 11 cases. An objection
by a Notice Party with respect to a given Tier II Settlement shall
not delay the finality or effectiveness of any other settlement to
which an objection has not timely been delivered.

(d) If the Debtors do not receive a written objection to a
Tier II Settlement from a Notice Party by the Settlement Objection
Deadline, then such Tier II Settlement shall be deemed approved
and the Debtors and Settling Parties may carry out the terms of
such Tier II Settlement without further notice or Court approval.

5.        The Debtors shall be required to seek approval from the Court in order to

enter into and consummate any proposed settlement of a Claim with a settlement amount in

excess of $100,000.

6.        The Debtors are authorized in their sole discretion, but not directed, to

settle claims where some or all of the consideration is being provided by a third party and/or

ny-1046923

where the Debtors are releasing claims against creditors or third parties provided the Debtors otherwise comply with the Settlement Procedures.

7.     The Settlement Procedures are without prejudice to the right of the Debtors to seek an order of this Court approving additional or different procedures with respect to specific claims or categories of claims. For claims relating to matters specified in paragraphs 14(a) and 15(a) of this Order that were resolved pursuant to a settlement prior to the Petition Date, but where such settlement has not been consummated, the Debtors are authorized, but not directed to, consummate said settlements in accordance with the Settlement Procedures set forth in this Order.

8.     Notwithstanding anything to the contrary contained herein, this Order shall not affect, impair, impede or otherwise alter the right of the Debtors to resolve any prepetition or postpetition controversy arising in the ordinary course of the Debtors' businesses, or resolve any controversy authorized by any other order of the Court.

9.     Nothing in this Order or the Motion shall constitute a determination or admission of liability or of the validity or priority of any claim against the Debtors, and the Debtors reserve their rights to dispute the validity or priority of any claim asserted.

10.     The authority granted in this Order shall not replace or obviate the need to comply with the Debtors' internal procedures, legal or otherwise, for authorizing the settlements contemplated in the Motion. All settlements made pursuant to the Settlement Procedures shall, to the extent applicable, be made in accordance with the Debtors' settlement procedures in effect as of the Petition Date (the "Internal Settlement Protocol") and as may be amended from time; provided, however, that the Debtors shall provide the Committee and the U.S. Trustee with notice of any material changes to the Internal Settlement Protocol.

6

11.     The Debtors shall provide monthly reports to the Committee and the U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such additional information as shall be reasonably requested by the Committee, in each case, concerning settlements of any Claims pursuant to the Settlement Procedures.

12.     Cash payments made by the Debtors under the Settlement Procedures shall not exceed $4 million in the aggregate, absent consent of the Committee or further order of the Court.

13.     Any period prescribed or allowed by the Settlement Procedures shall be computed in accordance with Bankruptcy Rule 9006.

Limited Relief from Automatic Stay

*Borrower Foreclosure And Eviction Proceedings*

14.     The stay imposed by section 362(a) of the Bankruptcy Code applicable to (a) pending and future foreclosure actions initiated by the Debtors or in those states providing for non-judicial foreclosures, by a borrower; and (b) pending and future eviction proceedings with respect to properties for which a foreclosure has been completed or is pending, is hereby modified pursuant to the following terms and conditions:

(a)     except as set forth herein, a borrower, mortgagor, or lienholder (each, an "Interested Party") shall be entitled to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or precluding any foreclosure, whether in a Judicial State or a Non-Judicial State, or eviction proceeding, where a final judgment (defined as any judgment where the right to appeal or seek reconsideration has expired or has been exhausted) permitting the foreclosure or

7

ny-1046923

eviction has not been awarded or, with respect to completed foreclosure sales in Non-
Judicial States, where any applicable challenge period has not yet expired, and to prosecute
appeals with respect to any such direct claims or counter-claims;

      (b)     absent further order of the Court, the automatic stay shall remain in
full force and effect with respect to all pending and future Interested Party direct claims
and counter-claims:  (i) for monetary relief of any kind and of any nature against the
Debtors, except where a monetary claim must be plead in order for an Interested Party to a
assert a claim to defend against or otherwise enjoin or preclude a foreclosure (each a
"Mandatory Monetary Claim"); (ii) for relief that if granted, would not terminate or
preclude the prosecution and completion of a foreclosure or eviction; or (iii) asserted in the
form of a class action or collective action;

      (c)     absent further order of the Court, the stay shall remain in full force
and effect with respect to any party seeking to intervene to assert related claims against the
Debtors or any class action or collective action brought by any Interested Party on behalf
of any other Interested Party or class of Interested Parties;

      (d)     under no circumstances shall an Interested Party be entitled to
enforce against, recoup, setoff or collect from the Debtors any judgment or award related
to any direct claim or counter-claim for which the automatic stay has been lifted by the
terms of this Order, including, without limitation, a Mandatory Monetary Claim;

      (e)     the Debtors shall retain the right, upon appropriate motion and
notice to any affected Interested Party, to seek to impose any provision of section 362(a) of
the Bankruptcy Code modified by this Order and to the extent such relief is sought, the

8

Debtors will not object to the Interested Party's telephonic participation at any hearing on
the motion; and

(f)    nothing set forth herein shall preclude or limit any Interested Party
from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code
on appropriate motion and notice to the Debtors and parties in interest.

*Borrower Bankruptcy Proceedings*

15.    The automatic stay imposed by section 362(a) of the Bankruptcy Code
applicable against a borrower who currently has filed, or in the future files, for bankruptcy
protection under any chapter of the Bankruptcy Code (a "Bankruptcy Borrower"), is hereby
modified pursuant to the following terms and conditions:

(a)    except as set forth herein, a Bankruptcy Borrower or a trustee duly
appointed under the Bankruptcy Code in the Bankruptcy Borrower's bankruptcy case (a
"Bankruptcy Trustee") shall be entitled to:  (i) assert and prosecute or continue to
prosecute an objection to the Debtors' proof of claim filed in the Bankruptcy Borrower's
bankruptcy case; (ii) assert and prosecute or continue to prosecute an objection to the
Debtors' motion for relief from the automatic stay filed in the Bankruptcy Borrower's
bankruptcy case; (iii) commence or continue to prosecute against the Debtors a motion or
adversary proceeding, as applicable, to determine the validity, priority or extent of a
Debtor's lien against the Bankruptcy Borrower's property; (iv) commence or continue to
prosecute against the Debtors a motion or adversary proceeding, as applicable, to reduce
(including to reduce to $0) or fix the amount of the Debtors' claim or lien against the
Bankruptcy Borrower's property; (v) prosecute appeals with respect to items (i) through
(iv) above; (vi) seek an accounting from the Debtors with respect to the Bankruptcy

9

Borrower's loan; and (vii) enter into, execute and consummate a written agreement of

settlement with the Debtors where the Debtors elect to enter into such settlement in their

sole discretion (but subject to the Settlement Procedures), to resolve items (i) through (vi)

above;

        (b)      except as set forth herein, a Bankruptcy Borrower shall be entitled to

(i) engage in court-supervised or court-authorized loss-mitigation programs regarding the

Bankruptcy Borrower's loan; and (ii) engage in discussions with the Debtors and execute a

modification of the Bankruptcy Borrower's loan or otherwise discuss, enter into and

consummate settlements of claims and liens in accordance with the ordinary course of the

Debtors' business and applicable law;

        (c)      absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to all Bankruptcy Trustee's and Bankruptcy Borrower's

direct claims, counter-claims, motions or adversary proceedings:  (i) for monetary relief of

any kind and of any nature against the Debtors; (ii) for violation of any local, state or

federal statute or other law in connection with the origination of the Bankruptcy

Borrower's loan; (iii) for relief that if granted, would have no effect on the amount,

validity or priority of the Debtors' claim or lien against a Bankruptcy Borrower or the

property of the Bankruptcy Borrower securing such claim or lien of the Debtors; or

(iv) asserted in the form of a class action or collective action; provided however, a

Bankruptcy Trustee or Bankruptcy Borrower, solely in connection with their objections to

Debtors' proof of claim permitted by paragraph 15(a)(i) or proceedings permitted by

15(a)(iii), may assert claims of the type covered by subsection (i) or (ii) of this paragraph

15(c);

(d)    absent further order of the Court, the automatic stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Bankruptcy Borrower on behalf of any other class of borrowers;

(e)    with the sole exception of objections to Debtors' proofs of claim permitted by paragraph 15(a)(i) above and proceedings described in 15(a)(iii) above and solely for purposes of reducing any such claim and not for the purpose of obtaining an affirmative recovery or award, under no circumstances shall a Bankruptcy Borrower or Bankruptcy Trustee be entitled to recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order;

(f)    the Debtors shall retain the right, upon appropriate motion and notice to any Bankruptcy Borrower or Bankruptcy Trustee, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order and to the extent such relief is sought, the Debtors will not object to the Interested Party's telephonic participation at any hearing on the motion; and

(g)    nothing set forth herein shall preclude or limit any Bankruptcy Borrower or Bankruptcy Trustee from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

*Foreclosures By The Debtors On Senior Loans*

16.    The stay imposed by section 362(a) of the Bankruptcy Code applicable to pending and future foreclosure actions initiated by the Debtors in cases where they act as

11

ny-1046923

servicer for the Senior Loan and also own (or for which the applicable public land records

otherwise reflect that the Debtors hold an interest) the Junior Loan with respect to the underlying

property (collectively, the "Junior Foreclosure Actions") is hereby modified pursuant to the

following terms and conditions:

    (a)    except as otherwise set forth herein, the Debtors shall be entitled to

assert and prosecute Junior Foreclosure Actions, whether in a Judicial State or a Non-

Judicial State;

    (b)    the Debtors shall be entitled to take such actions as are necessary to

extinguish the lien with respect to a Junior Loan or to otherwise ensure clear and

marketable title with respect to the property underlying a Senior Loan in connection with

any sale or other disposition of such property;

    (c)    the Debtors shall be entitled to seek all appropriate relief with

respect to a Senior Loan in connection with the bankruptcy cases of a Bankruptcy

Borrower without further order of the Court; and

    (d)    the Debtors shall provide monthly reports to the Committee and the

U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee,

and such additional information as shall be reasonably requested by the Committee, in

each case, concerning Junior Foreclosure Actions.

D.    *Actions Involving Amount, Validity Or Priority Of Liens*

    17.    The stay imposed by section 362(a) of the Bankruptcy Code applicable to

actions involving the amount, validity, and/or priority of liens commenced by third parties

purporting to have a lien interest or other claim ("Third Party Claimants") with respect to

properties that are subject to mortgages owned or serviced by the Debtors ("Title Disputes") is

hereby modified pursuant to the following terms and conditions:

   (a)  except as otherwise set forth herein, a Third Party Claimant shall be

entitled to assert and prosecute direct claims and counter-claims relating exclusively to the

property that is the subject of the loan owned or serviced by a Debtor in connection with

any Title Dispute, and to prosecute appeals with respect to any such direct claims or

counter-claims;

   (b)  absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to all pending and future Third Party Claimant direct

claims and counter-claims: (i) for monetary relief of any kind and of any nature against the

Debtors; (ii) for relief that is not necessary for the resolution of the Title Dispute; or

(iii) asserted in the form of a class action or collective action;

   (c)  absent further order of the Court, the stay shall remain in full force

and effect with respect to any party seeking to intervene to assert related claims against the

Debtors or any class action or collective action brought by any Third Party Claimant on

behalf of any other Third Party Claimant or class of Third Party Claimants;

   (d)  under no circumstances shall a Third Party Claimant be entitled to

enforce against, recoup, setoff or collect from the Debtors any judgment or award related

to any direct claim or counter-claim for which the automatic stay has been lifted by the

terms of the Order;

   (e)  the Debtors shall be entitled to take such actions as are necessary to

clear title with respect to property that is subject to a Title Dispute or to otherwise ensure

12-12020-mg   Doc 6461-2   Filed 02/11/14   Entered 02/11/14 13:08:12   Exhibit 1
12-12020-mg   Doc 774   Filed 07/13/12   Entered 07/13/12 17:05:30   Main Document
Pg 14 of 19

clear and marketable title with respect to such property in connection with any sale, foreclosure or other disposition of such property;

(f)     the Debtors shall retain the right, upon appropriate motion and notice to any affected Third Party Claimant, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by the Order; and

(g)     nothing set forth herein shall preclude or limit any Third Party Claimant from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

Payment of Securitization Trustee Fees and Expenses

18.     The Debtors shall continue to perform all of their respective servicing duties and servicing related duties, including, but not limited to, their duties as master servicer, under all the governing agreements (including, without limitation, pooling and servicing agreements, servicing agreements, or any other agreements concerning or relating to the Debtors' obligations to reimburse and/or indemnify for reasonable fees, costs, expenses, liabilities, and/or losses) (collectively, the "Agreements") relating to Debtor-sponsored securitization transactions and non-Debtor sponsored securitization transactions to which any of The Bank of New York Mellon Trust Company, N.A., Wells Fargo Bank, N.A., Deutsche Bank Trust Company Americas, Deutsche Bank National Trust Company, or U.S. Bank National Association, or any affiliate of such entities acts as trustee for which any Debtor performs servicing duties, in each of their respective capacities as trustee (collectively, the "Trustees") and one or more of the Debtors is a party, including but not limited to, making all principal, interest or other servicing advances (including property protection advances) and reimbursing, indemnifying, defending and holding harmless the Trustees and the securitization trusts for any liability, loss, or reasonable fees, cost

14

ny-1046923

or expense (including fees and disbursements of counsel or agents) incurred by any of the

Trustees in the performance of their duties or their administration of the trusts or other agencies

under the Agreements to the extent required by the Agreements. For the avoidance of doubt, the

Debtors shall pay the reasonable, actual out-of-pocket costs and expenses of the Trustees in

connection with reviewing and analyzing the request by the Debtors to approve the MBS

Settlement Agreement, and in connection with reviewing and analyzing amendments to the

Agreements as necessary or appropriate in connection with any proposed Chapter 11 plan, the

MBS Settlement Agreement or the Platform Sale. Notwithstanding the foregoing, nothing in this

paragraph 18 shall require any Debtor (i) to repurchase any mortgage loans on the basis of

alleged breaches of representations, warranties or other requirements of the Agreements, or make

any make-whole payments with respect to any mortgage loans pursuant to the Agreements; or

(ii) to enforce, as against any other Debtor entity or any non-Debtor affiliate, any provision of the

Agreements under which such other Debtor entity or non-Debtor affiliate are required to

repurchase any mortgage loans on the basis of alleged breaches of representations, warranties or

other requirements of the Agreements, or make any make-whole payments with respect to any

mortgage loans pursuant to the Agreements; and nothing in this paragraph 18 shall be deemed to

impose liability on any Debtor with respect to such alleged breaches or make-whole payment

requirements.

      19.    The Trustees shall submit invoices to (a) counsel to the Debtors,

(b) counsel to the Committee, and (c) the U.S. Trustee, and all such invoices shall include (i) an

itemization of all professional fees by task with a detailed description of the work performed in

connection with such task, (ii) a description of related expenses, and (iii) a description of any

indemnity claims. Thereafter, within thirty (30) days of presentment of such invoices, if no

15

written objections to the reasonableness of the fees and expenses charged in any such invoice (or

portion thereof) is made by the Debtors, the Committee, or the U.S. Trustee, the Debtors are

authorized and directed to pay all reasonable fees, costs and expenses and all indemnity claims

referred to in paragraph 18 (including without limitation, attorney, financial advisor, consultant

and expert fees and costs) incurred postpetition by any of the Trustees relating to the

performance of each of the Trustees' duties or the administration of the trusts or other agencies

under the Agreements (the "Trustee Expenses") that are not subject to an objection by the

Debtors, the Committee, or the U.S. Trustee without further order from the Court. Any objection

to the payment of the Trustee Expenses shall be made only on the basis of "reasonableness," and

shall specify in writing the amount of the contested fees and expenses and a detailed basis for

such objection. To the extent an objection only contests a portion of an invoice, the undisputed

portion thereof shall be promptly paid. If any such objection to payment of an invoice (or any

portion thereof) is not otherwise resolved between the Debtors, the Committee, or the U.S.

Trustee and the issuer of the invoice, either party may submit such dispute to the Court for a

determination as to the reasonableness of the disputed amounts. This Court shall resolve any

dispute as to the reasonableness of any fees and expenses.

      20.     To the extent either the Committee, or the RMBS Trustees determine that

the Trustee Expenses were improperly or mistakenly allocated to an RMBS trust or to the

Debtors' estates, the Committee and the RMBS Trustees reserve the right to seek to correct the

allocation of the Trustee Expenses as between the RMBS trusts or the Debtors' estates in

accordance with the applicable Agreement, and such adjustment shall be the Committee's and

RMBS Trustees' sole remedy arising from a misallocation. All Trustee Expenses for which

(a) no objection under paragraph 19 has been interposed, or (b) where such an objection has been

ny-1046923

interposed and the amount of Trustee Expenses determined by the Court to be reasonable, shall

be entitled to administrative expense priority in the Debtors' Chapter 11 cases notwithstanding

the entry of an order authorizing the assumption and assignment or rejection of any Agreement.

However, the Debtors will not be responsible for any fees, costs and expenses incurred with

respect to any Agreement after the entry of an order in the Debtors' Chapter 11 cases authorizing

the rejection of such Agreement.

21.    If any or all of the provisions of this Order are hereafter reversed,

modified, limited, vacated or stayed, such reversal, stay, modification or vacatur shall not affect

the validity, priority or enforceability of any Trustee Expenses incurred prior to the actual receipt

of written notice by the Trustees of the effective date of such reversal, stay, modification or

vacatur (the "Notice Date").  Notwithstanding any such reversal, stay, modification or vacatur,

the payment of any Trustee Expenses incurred prior to the Notice Date and reimbursed prior to

or after the Notice Date by the Debtors shall be governed in all respects by the original

provisions of this Order, and the Trustees shall be entitled to all of the rights, remedies,

privileges and benefits granted in this Order with respect to payment of Trustee Expenses.

22.    Notwithstanding the Debtors' obligations set forth in paragraphs 18 and

19, nothing in this Order shall be deemed to limit, extinguish, or prejudice the Debtors' rights in

any way to assume and assign or reject any Agreement in accordance with Bankruptcy Code

section 365.

Other Relief

23.    Any disputes regarding the extent, application and/or effect of the

automatic stay under this Order shall be heard and determined in the Debtors' jointly

administered bankruptcy cases pending in the United States Bankruptcy Court for the Southern

ny-1046923

District of New York, Case No. 12-12020 in accordance with the Case Management Order entered in the Debtors' cases [Docket No. 141] and such other and further orders as may be entered by the Court.

24.    The Debtors are authorized and empowered to take all actions and execute such documents as may be necessary or appropriate to carry out the relief granted herein.

25.    Nothing herein shall be deemed to limit the rights of the Debtors to operate their business in the ordinary course, and no subsequent order shall be required to confirm such rights.

26.    Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is it intended to constitute, the assumption of any contract or agreement under Bankruptcy Code section 365 or the waiver by the Debtors or their non-Debtor affiliates of any of their rights pursuant to any agreement by operation of law or otherwise.

27.    Notwithstanding anything to the contrary in this Order, any action to be taken pursuant to the relief authorized in this Order is subject to the terms of any cash collateral order or debtor in possession financing order entered in these chapter 11 proceedings. All amounts authorized to be paid pursuant to this Order are subject to the limitations and restrictions imposed by the Approved DIP Budget (as defined in the DIP Credit Agreement). To the extent that there is any inconsistency between the terms of this Order and the terms of any order relating to postpetition financing or cash collateral, the terms of the orders relating to postpetition financing or cash collateral shall govern.

28.    Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board

18

of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among

AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal

Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment

entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,

(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

29.   Nothing in this Order shall discharge, release, or otherwise preclude any

setoff or recoupment right of the United States of America, its agencies, departments, or agents.

30.   The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

31.   Notwithstanding the possible applicability of Bankruptcy Rules

2002(a)(3), 6004(h), 7062 or 9014, the terms and conditions of this Order shall be immediately

effective and enforceable upon its entry.

32.   This Court shall retain jurisdiction with respect to all matters relating to

the interpretation or implementation of this Order.


Dated:      July 13, 2012
            New York, New York


                                        _____/s/Martin Glenn_____
                                              MARTIN GLENN
                                        United States Bankruptcy Judge


19

1

**PROOF OF SERVICE**
*Rozier v. Bank of America, et al.*
**OCSC Case No. 30-2012-00601310-CU-OR-CJC**

2

3       At the time of service, I was over 18 years of age and not a party to this action. I am
employed in the County of Orange, State of California. My business address is The Atrium,
4   19100 Von Karman Avenue, Suite 700, Irvine, CA 92612.

5       On June **18** 2013, I served true copies of the following document(s):

6   **DEFENDANT RESIDENTIAL FUNDING COMPANY, LLC'S NOTICE OF
    BANKRUPTCY STAY AND SUGGESTION OF AUTOMATIC STAY IN
7   RESPONSE TO PLAINTIFFS' THIRD AMENDED COMPLAINT**

8   on the interested parties in this action as follows:

9   **SEE ATTACHED SERVICE LIST**

10      **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the
persons at the addresses listed in the Service List and placed the envelope for collection and
11  mailing, following our ordinary business practices. I am readily familiar with Severson &
Werson's practice for collecting and processing correspondence for mailing. On the same day that
12  the correspondence is placed for collection and mailing, it is deposited in the ordinary course of
business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

13
        I declare under penalty of perjury under the laws of the State of California that the
14  foregoing is true and correct.

15      Executed on June **18** 2013, at Irvine, California.

16

17

18                                      Stephanie A. Crisp

19

20

21

22

23

24

25

26

27

28

19000.1432/2755918.1

NOTICE OF BANKRUPTCY STAY

1

**SERVICE LIST**
*Rozier v. Bank of America, et al.*
OCSC Case No. 30-2012-00601310-CU-OR-CJC

2

3    Karen Michele Rozier                    Plaintiff, In Pro Per
7957 Dahlia Circle
4    Buena Park, CA  90620                   Telephone:    (714) 512-5740

5    David Eugene Rozier, Sr.                Plaintiff, In Pro Per
7957 Dahlia Circle
6    Buena Park, CA  90620                   Telephone:    (714) 512-5740

7    Frank Kim                               Telephone:    (949) 223 7000
BRYAN CAVE                              Facsimile:    (949) 223 7100
8    3161 Michelson Drive, Suite 1500
Irvine, CA 92612-4414
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19000.1432/2755918.1

NOTICE OF BANKRUPTCY STAY