UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

RESIDENTIAL CAPITAL, LLC, *et. al.*

Debtors.

NOT FOR PUBLICATION

Chapter 11

Case No. 12-12020

**MEMORANDUM OPINION AND ORDER SUSTAINING THE DEBTORS'
FORTY-SECOND OMNIBUS OBJECTION AS TO CLAIMS 338 AND 339**

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *Debtors' Forty-Second Omnibus Objection to Claims (Reduce and Allow Borrower Claims)* (the "Motion," ECF Doc. # 5150). This opinion only addresses Claim Numbers 338 and 339 filed by Jason and Jennifer Schermerhorn (the "Claims"). In support of the Motion, the Debtors submitted the Declarations of Deanna Horst (Motion Ex. 1), Norman S. Rosenbaum (Motion Ex. 2), and Robert Nosek (Motion Ex. 3). Each of the Claims seeks $582,662.25 as a general unsecured claim. The Debtors seek an order reducing and allowing the Claims as general unsecured claims, each in the amount of $14,463.51. One proof of claim asserts liability against Debtor GMAC Mortgage, LLC ("GMACM"), and the other asserts liability against Debtor Executive Trustee Services, LLC ("ETS"). Each of the Claims seeks $14,463.51 in costs as well as $568,198.74 in attorneys' fees arising out of litigation against the Debtors in California state court. The Debtors assert that the Schermerhorns (the "Claimants") are not entitled to attorneys' fees because they did not obtain an award for those fees in the California court, and their deadline to do so passed. The Claimants filed a response (the "Response," ECF Doc. # 5905), supported by several exhibits and the Declaration of Michael Y. MacKinnon (the "MacKinnon Declaration," ECF Doc. # 5909). The Debtors filed a

reply (ECF Doc. # 6303).  The Court held a hearing on the Motion on January 27, 2014 (the "Hearing").  Because the Schermerhorns did not satisfy California's procedural requirements for obtaining an award of attorneys' fees, the Objection is **SUSTAINED**, and the Claims are reduced to $14,463.51 and allowed in that amount.

## I.    BACKGROUND

### A.    Procedural History

On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  On March 21, 2013, the Court entered an order (the "Procedures Order") authorizing the Debtors to file omnibus objections to no more than 150 claims at a time, on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds provided in the Procedures Order (ECF Doc. # 3294). The Procedures Order also approved certain procedures to be applied in connection with objections to Borrower Claims (the "Borrower Claim Procedures").  Based on substantial input from the Creditors' Committee and Special Counsel to the Creditors' Committee for Borrower Issues ("Special Counsel"), the Procedures Order includes specific protections for Borrowers and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims.  For example, the Borrower Claim Procedures require that before objecting to certain categories of Borrower Claims, the Debtors must furnish the individual Borrower with a letter, with notice to Special Counsel, requesting additional documentation in support of the purported claim (the "Request Letter").  (*See* Procedures Order at 4.)

On December 11, 2013, the Court entered an *Order Confirming Second Amended Joint Chapter11 Plan Proposed by Residential Capital, LLC, et al. and The Official Committee of*

*Unsecured Creditors* (the "Confirmed Plan," ECF Doc. # 6065). The Confirmed Plan became effective on December 17, 2013. (ECF Doc. # 6137.)

### B. The Claims

The litigation between the Claimants and the Debtors involved a dispute over competing interests in a California property. (*See* Reply Ex. 1-A at 12–16.) The Debtors initially held a first lien on the property and claim to have inadvertently released that lien. (*See id.* at 31.) Meanwhile, Bank of America, which had been the second lien holder, proceeded to sell the property to the Claimants, who assert that they had no knowledge of the Debtors' lien. (*See id.* at 12–14.) The Debtors then attempted to rescind the release of their first lien and commenced an action in 2009 for declaratory relief in the Superior Court for the State of California, Riverside County. (*See id.* at 11.) The Debtors also recorded a lis pendens. In the California action, the Debtors sought a ruling that their first priority lien was still valid and attached to the property owned by the Claimants. (*Id.*) The Claimants filed a cross-complaint, and after a trial, the court entered a judgment against the Debtors on January 10, 2012. (*See id.* at 52–57.)

But the Claimants were not awarded a money judgment against the Debtors in the California action. (*See* Reply Ex. 2 at 5.) Instead, the California court allowed the Claimants to seek costs and attorneys' fees through post-judgment proceedings. (*See* Reply Ex. 1-A at 57.) The Claimants submitted a memorandum of costs on February 16, 2012 (*see id.* at 60–66), but they did not file a motion seeking attorneys' fees until May 24, 2012. (*See* Response Ex. 4-1.) Ordinarily, a party in California may only seek attorneys' fees within sixty days of service of entry of a judgment. (*See infra*, section II.B.) Here, the Claimants were served with notice of entry of the judgment on the same day the judgment was issued: January 10, 2012. (*See* Reply Ex. 1-A at 58.) At the Hearing in this Court, the Claimants' attorney asserted that at a September

3

2011 hearing in the California action, the judge indicated that the issues of attorneys' fees and withdrawal of the lis pendens would be dealt with at the same time.  (Jan. 27, 2014 Tr. at 35:1–36:3.)  Presumably, this would have allowed the Claimants to seek any attorneys' fees incurred in securing the withdrawal of the lis pendens.  But the California court's January 2012 judgment expunged the lis pendens, seemingly obviating the need for a later hearing to address the lis pendens and attorneys' fees concurrently.  (*See* Reply Ex. 1-A at 57.)  And the judgment did not provide for any modifications of California rules governing motions for attorneys' fees.

## II.    DISCUSSION

### A.    Claims Objections

Federal Rule of Bankruptcy Procedure 3007 permits a debtor to make omnibus objections to disallow up to 100 claims per motion.  Parties making omnibus objections may object to proofs of claim on the following grounds:

> 1) they duplicate other claims;
> 2) they have been filed in the wrong case;
> 3) they have been amended by subsequently filed proofs of claim;
> 4) they were not timely filed;
> 5) they have been satisfied or released during the case in accordance with the Code, applicable rules, or a court order;
> 6) they were presented in a form that does not comply with applicable rules, and the objection states that the objector is unable to determine the validity of the claim because of the noncompliance;
> 7) they are interests, rather than claims; or
> 8) they assert priority in an amount that exceeds the maximum amount under § 507 of the Code.

FED. R. BANKR. P. 3007(d).  Pursuant to the Procedures Order, the Debtors may object to proofs of claim on the following additional grounds:

> 1) the amount claimed contradicts the Debtors' books and records;
> 2) the Claims were incorrectly classified;
> 3) the Claims seek recovery of amounts for which the Debtors' estates are not liable;

4

    4) the Claims do not include sufficient documentation to ascertain the validity of the Claims;
    5) the Claims are objectionable under Bankruptcy Code section 502(e)(1);
    6) the Claims are filed against more than one Debtor entity;
    7) the Claims have not specified the Debtor against whom the Claim has been filed;
    8) the Claims do not specify any amount of Claim (other than Claims explicitly asserted as "unliquidated"); and
    9) the Claims are facially defective.

(Procedures Order at 2–3.)

Rule 3007(e) also requires omnibus objections to conform to procedural requirements. Specifically, an omnibus objection must:

    1) state in a conspicuous space that claimants receiving the objection should locate their names and claims in the objection;
    2) list claimants alphabetically, provide a cross-reference to claim numbers, and, if appropriate, list claimants by category of claims;
    3) state the grounds for objection and a cross-reference to the pages in the motion supporting those grounds;
    4) state in the title the identity of the objector;
    5) be numbered consecutively with other omnibus objections; and
    6) contain objections to no more than 100 claims.

FED. R. BANKR. P. 3007(e).

Correctly filed proof of claims "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 U.S. Dist. LEXIS 143957, at *12–13 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the

5

excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4-502 COLLIER ON BANKRUPTCY ¶ 502.02 (16th rev. ed. 2013).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

### B.    The Motion

The Debtors argue that since the Claimants did not seek attorneys' fees within the timeframe provided by California rules, and since the California court never awarded attorneys' fees, the Claimants may not assert a right to those fees now. In California, a party must request attorneys' fees by motion, *see* CAL. CODE CIV. PROC. § 1033.5(c)(d), within sixty days of service of a judgment. *See* CAL. RULES OF COURT 3.1702(b)(1), 8.104(a)(1). Here, the Claimants were served with a copy of the judgment on January 10, 2012. (Reply Ex. 1-A at 58.) The Claimants did not make a motion seeking attorneys' fees until after that sixty-day deadline passed—and until after the Petition Date. (*See* Response Ex. 4-1; Reply Ex. 3.)

Rule 3.1702(d) of the California Rules of Court provides that a trial judge may extend the time for filing a motion for attorneys' fees "for good cause." At the Hearing, the Claimants' counsel asserted that the trial judge had extended the attorneys' fee motion deadline for good cause until the hearing regarding withdrawal of the lis pendens. (July 27, 2014 Tr. at 35:1–36:3.) That extension would allow any attorneys' fee request to include expenses incurred up to and including the expungement of the lis pendens. (*Id.* at 35:22–36:1.) But the Court finds two problems with the Claimants' position.

First, the Claimants did not provide a transcript of the hearing where this extension was purportedly granted.  This presents a problem because the Claimants assert that the California judge intended to deal with attorneys' fees and the lis pendens at a later hearing, but the Court's judgment in favor of the Claimants explicitly expunged the lis pendens and left open the issue of attorneys' fees.  (*See* Reply Ex. 1-A at 57 ("The lis pendens filed by Plaintiffs with respect to the subject property is hereby expunged.").)  Thus, the Claimants are asking the Court to disregard what is indicated by the judgment in favor of a supposed understanding reflected in a transcript that the Court does not have.

Second, the judgment also provides that costs and attorneys' fees should be "adjudicated via post-judgment proceedings." (*Id.*)  But the judgment did not say that California's ordinary rules governing post-judgment proceedings, including the timing of requests for costs and attorneys' fees, did not apply.  Moreover, the Claimants actually sought their costs within the sixty-day limit; they simply did not submit a timely application for their attorneys' fees.  While the Claimants assert that they delayed filing their motion for attorneys' fees because they wanted those fees to include any further work performed in getting the Debtors to remove the lis pendens, the Claimants still could have complied with California rules.  That is, the Claimants could have filed a timely request for attorneys' fees within the sixty-day limit for all fees incurred to that date, and then if they incurred further fees in getting the Debtors to remove the lis pendens, they could have sought recovery of those additional fees in any further motion practice regarding the lis pendens.  Nothing submitted to the Court indicates that the Claimants had a license to ignore California rules.

7

### III.    CONCLUSION

The parties agree that the Claimants did not seek attorneys' fees within California's ordinary sixty-day limit. Instead, the Claimants assert that they were permitted to exceed that limit so their fees could include work performed to secure removal of the lis pendens. But the Claimants do not adequately support this supposed permission, nor do they explain why they failed to seek any attorneys' fees at all within the time limit. Their argument that the California court intended to deal with attorneys' fees at the same hearing it dealt with the lis pendens is belied by the fact that the judgment the Claimants obtained from the California court expressly expunged the lis pendens. Under the applicable California rules, the Claimants did not timely assert a request for attorneys' fees and the California court never awarded such fees. The Claimants are not entitled to such an award from this Court.

Therefore, the Debtors' objection to the Claims is **SUSTAINED**, and the Claims are **REDUCED** to two $14,463.51 general unsecured claims and **ALLOWED** in that amount.

**IT IS SO ORDERED.**

Dated:  February 18, 2014
        New York, New York

                                        ___*Martin Glenn*___
                                        MARTIN GLENN
                                        United States Bankruptcy Judge