1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9

10              Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13              United States Bankruptcy Court

14              One Bowling Green

15              New York, New York

16

17              February 20, 2014

18              10:04 AM

19

20

21

22

23  B E F O R E:

24  HON. MARTIN GLENN

25  U.S. BANKRUPTCY JUDGE

1

2  Doc# 6253 Status Conference RE: Motion for Payment of

3  Administrative Expenses Request for Allowance and Payment of

4  Administrative Expense Claim.

5

6  (CC: Doc# 6268) Motion for Objection to Claim(s) Number: 4754,

7  7181.

8

9  Doc# 6427 Motion to Strike Objection

10

11  Doc# 6425 Motion to Seal Exhibit C to Motion to Strike Filing

12  by Disqualified Counsel for the Trustee of the "Borrowers"

13  Claims Trust (related document(s)6268)

14

15

16

17

18

19  Transcribed by:  Sharona Shapiro

20  eScribers, LLC

21  700 West 192nd Street, Suite #607

22  New York, NY 10040

23  (973)406-2250

24  operations@escribers.net

25

```
 1
 2   A P P E A R A N C E S :
 3   MORRISON & FOERSTER LLP
 4        Attorneys for Post-effective date Debtors,
 5          ResCap Liquidating Trust and
 6          ResCap Borrowers' Trust
 7        1290 Avenue of the Americas
 8        New York, NY 10104
 9
10   BY:  NORMAN S. ROSENBAUM, ESQ.
11        NAOMI MOSS, ESQ.
12
13
14   KRAMER LEVIN NAFTALIS & FRANKEL LLP
15        Attorneys for the Liquidating Trust
16        1177 Avenue of the Americas
17        New York, NY 10036
18
19   BY: P. BRADLEY O'NEILL, ESQ.
20        JOSEPH SHIFER, ESQ.
21
22
23
24
25
```

1

2    POLSINELLI LLP

3          900 Third Avenue

4          21st Floor

5          New York, NY 10022

6

7    BY:   DAN FLANIGAN, ESQ. (TELEPHONICALLY)

8

9

10   STINSON LEONARD STREET LLP

11         Attorneys for Verizon Communications, Inc. and Verizon

12            Business Network Services, Inc.

13         1850 North Central Avenue

14         Phoenix, AZ

15

16   BY:   DARRELL W. CLARK, ESQ. (TELEPHONICALLY)

17

18

19   THOMAS J. SINNICKSON, P.C.

20         Attorneys for Caren J. Wilson

21         176 Main Street

22         Center Moriches, NY 11934

23

24   BY:   THOMAS J. SINNICKSON, ESQ.

25

1

2   ACCESS LEGAL SERVICE

3       Attorneys for Caren J. Wilson

4

        310 Fourth Avenue South

5       Suite 5010

6       Minneapolis, MN 55415

7

8   BY:   WENDY ALISON NORA, ESQ.

9

10

11  ALSO PRESENT:

12      CAREN J. WILSON

13

14

15

16

17

18

19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, et al.                              6

1                    P R O C E E D I N G S

2              THE COURT:  All right.  Please be seated.  We're here

3       in Residential Capital, number 12-12020.

4              Mr. Rosenbaum?

5              MR. ROSENBAUM:  Good morning, Your Honor.  Norm

6       Rosenbaum, Morrison & Foerster, for the post-effective date

7       debtors, the ResCap liquidating trust, and the ResCap

8       borrowers' trust.

9              Your Honor, the first matter on the agenda this

10      morning is at page 4, III; it's the status conference on the

11      Verizon Business --

12             THE COURT:  Yes.

13             MR. ROSENBAUM:  -- administrative claim.

14             THE COURT:  Okay.

15             MR. ROSENBAUM:  I'm going to turn the podium over to

16      Mr. O'Neill from Kramer Levin.

17             THE COURT:  Okay.  Mr. O'Neill, good morning.

18             MR. O'NEILL:  Good morning, Your Honor.  This is going

19      to be a brief transition because --

20             THE COURT:  Just make your appearance.

21             MR. O'NEILL:  Brad O'Neill, Kramer Levin, on behalf of

22      the liquidating trust.

23             It's not my motion.  It's Verizon's motion --

24             THE COURT:  Yes.

25             MR. O'NEILL:  -- so I'll turn it over to Mr. Clark

1  just to --

2        MR. CLARK:  I'm on the phone, Your Honor.  Darrell

3  Clark for Verizon.

4        THE COURT:  Good morning, Mr. Clark.

5        MR. CLARK:  Good morning.

6        THE COURT:  Mr. Clark, go ahead.

7        MR. CLARK:  Your Honor, this is our motion.  Verizon's

8  agreements were assumed and assigned as part of the Ocwen sale.

9  There's a cure agreement between the estate and Verizon that

10 obligates the estate to pay all post-petition amounts due in

11 the ordinary course.  We approached the debtors back in the

12 summer of 2013 about three invoices that were unpaid.  The

13 services were provided to Ally, but the agreements that were

14 assumed specifically referenced these account numbers and said

15 that the debtors would be liable for these amounts.  I think

16 the language in the contract said "secondarily liable".  Ally

17 has failed to pay them.  And so with the administrative bar

18 date approaching and having not resolved things informally, we

19 filed this motion on the 10th of January.  It's been objected

20 to.  We've replied.  My understanding now is that they'd like

21 to take some discovery.  I know that this contested matter has

22 been pending now for nearly six weeks.  We would like just to

23 get this resolved.

24        THE COURT:  Anything else you want to add?  Is there

25 anything else you would like to add?

RESIDENTIAL CAPITAL, LLC, et al.                    8

1          MR. CLARK:  No, Your Honor.

2          THE COURT:  All right.  Mr. O'Neill?

3          MR. O'NEILL:  Your Honor, we'd also like to get it

4    resolved, and the reason we're here on a status conference is

5    because we couldn't agree on a discovery schedule.  We've been

6    trying to get it resolved.  We've been asking for information.

7    And the pace of cooperation -- while cooperation isn't

8    nonexistent --

9          THE COURT:  Let's not talk about whether there has or

10   hasn't been cooperation.

11         MR. O'NEILL:  All right.  The justification --

12         THE COURT:  What discovery is it that you wish to

13   take?

14         MR. O'NEILL:  Well, the justification for the motion

15   has evolved, as I'm sure Your Honor appreciates, looking at the

16   papers.

17         THE COURT:  I've read the papers.

18         MR. O'NEILL:  At the moment it appears that the

19   dispute is over whether -- it's not that Ally has refused to

20   pay; Ally says it's not responsible to pay.

21         THE COURT:  I understand.

22         MR. O'NEILL:  There's a dispute between --

23         THE COURT:  Ally says it terminated --

24         MR. O'NEILL:  Yes.

25         THE COURT:  -- the agreement --

1            MR. O'NEILL:  Exactly.

2            THE COURT:  -- with Verizon.

3            MR. O'NEILL:  We don't -- as of now, we don't have the

4    documentation on the termination, although we've asked for it

5    from both parties.  Essentially, we're litigating somebody

6    else's fund.

7            THE COURT:  Yes.  May I ask this?  Have you tried to

8    get Ally's counsel, yourself, and Verizon's counsel in the same

9    room to see whether you can resolve this issue or at least

10   agree on what the dispute -- what is really in dispute?

11           MR. O'NEILL:  We have not had a three-way --

12           THE COURT:  Okay.

13           MR. O'NEILL:  -- conversation.

14           THE COURT:  So I'm directing --

15           MR. O'NEILL:  We had a series of two-ways.

16           THE COURT:  Okay.  I'm directing that there be a

17   three-way conversation.

18           Mr. Clark, where are you physically located?

19           MR. CLARK:  Washington, D.C., sir.

20           THE COURT:  Okay.  I'm going to order this be a face-

21   to-face meeting because it -- and come prepared with whatever

22   documents you have that support your position, Mr. Clark.  Mr.

23   O'Neil, whatever documents you have -- I don't know who Ally's

24   counsel -- is it Kirkland in this or --

25           MR. O'NEILL:  I believe they're -- we've been

RESIDENTIAL CAPITAL, LLC, et al.                    10

1    communicating directly with Ally employees, as opposed to --

2            THE COURT:  Okay.

3            MR. O'NEILL:  -- with counsel.

4            THE COURT:  Put it this way.  Within the next three

5    weeks -- which is long because Mr. Clark's in Washington -- I

6    want a face-to-face meeting with counsel for the three parties.

7    If you can't arrange it within the next three weeks, call my

8    chambers and we'll have a telephone hearing.  But that's the

9    start.  Everybody get in the same room.  Get in there with

10   whatever papers support your respective positions.  Tell Ally's

11   counsel that I'm directing that this occur.  And if it can't

12   get resolved, then I'll set -- then --

13       (Cell phone ringing)

14           THE COURT:  Excuse me; I apologize for that.  If it

15   can't get resolved, arrange a call; I'll set a discovery

16   schedule; tell me what discovery needs to be done and how much

17   time.  It shouldn't take -- it seems to me this is not very

18   complicated.  It shouldn't take that much time to get the

19   discovery done.  But the first step is I want the three of you

20   in the same room to see whether you can resolve it, or at least

21   agree on precisely what discovery has to be tak -- if you can't

22   resolve it, try and agree on what discovery needs to be taken,

23   how much time is needed to get it done, and we'll get it

24   scheduled.

25           MR. O'NEILL:  We will do that, Your Honor.

1          THE COURT:  Okay.  Mr. Clark, do you agree too?

2          MR. CLARK:  Absolutely, Your Honor.

3          THE COURT:  Okay.  The only one not here is Ally or

4    its counsel, but I'm sure they'll want to get this resolved as

5    well.  Okay?

6          UNIDENTIFIED SPEAKER:  We'll be in touch with them.

7          THE COURT:  All right.

8          MR. CLARK:  Thank you.

9          THE COURT:  And obviously give me a written status

10   letter.  I don't want chapter and verse about it.  If you can't

11   resolve it, address the issue -- the issues of discovery.  And

12   if you agree on the schedule for discovery, put it in the

13   letter.  And as I say, if you need -- if we need to have

14   another hearing, we'll do it by telephone.  Okay?

15          All right.  Thanks very much, Mr. O'Neill.

16          All right.  Mr. Rosenbaum?

17          MR. CLARK:  Thank you, Your Honor.  I'll hang up now.

18          THE COURT:  All right.  Thank you, Mr. Clark.

19          MR. CLARK:  Thank you.  Bye.

20          MR. ROSENBAUM:  Your Honor, the next matter -- wait a

21   second; excuse me.  Norm Rosenbaum again, Your Honor.

22          The next matter, Your Honor, is at page 5, V, number

23   2.  This is the ResCap borrowers' claims trust objections to

24   the proof of claims filed by Caren Wilson.

25          THE COURT:  All right.  Ms. Wilson's counsel should --

RESIDENTIAL CAPITAL, LLC, et al.                    12

1    better come up to the counsel table now.

2            All right.  Let me get all the appearances, okay?

3            You're going to argue this, Mr. Rosenbaum, on behalf

4    of the debtor?

5            MR. ROSENBAUM:  Yes, Your Honor.

6            THE COURT:  Okay.  All right.  And for Ms. Wilson?

7            MR. SINNICKSON:  Thomas Sinnickson,

8    S-I-N-N-I-C-K-SO-N, 176 Main Street, Center Moriches, New York.

9            THE COURT:  Okay.  Ms. Nora, are you making an

10   appearance as well?

11           MS. NORA:  Yes, Your Honor.  Wendy Alison Nora.  As

12   out-of-state counsel with local counsel, we'll have --

13           THE COURT:  Okay.  Who's arguing?

14           MR. SINNICKSON:  Your Honor, I'd like to make an

15   application first.

16           THE COURT:  What's the application?

17           MR. SINNICKSON:  An application for some time to give

18   Ms. Wilson an opportunity to vacate the order in Virginia which

19   she --

20           THE COURT:  No, no, no, no, we're arguing this today.

21           MR. SINNICKSON:  Your Honor --

22           THE COURT:  Who's arguing?  You or Ms. Nora?

23           MR. SINNICKSON:  I'm here to argue the application --

24           THE COURT:  Okay.

25           MR. SINNICKSON:  -- for an adjournment.

1          THE COURT:  Well, that's denied.  I'm not even going

2     to hear argument --

3          MR. SINNICKSON:  But Your Honor --

4          THE COURT:  -- about it.

5          MR. SINNICKSON:  But she has an order against her

6     where she didn't receive --

7          THE COURT:  Mr. --

8          MR. SINNICKSON:  -- no --

9          THE COURT:  -- Sinneckson (sic) --

10          MR. SINNICKSON:  Sinnickson.

11          THE COURT:  Say it again?

12          MR. SINNICKSON:  Sinnickson.

13          THE COURT:  Sinnickson.  Please sit down.  The

14     application to adjourn the matter is denied.

15          MR. SINNICKSON:  Thank you.

16          THE COURT:  Who's going to argue the matter before me

17     today?

18          MR. SINNICKSON:  Ms. Nora.

19          THE COURT:  All right.  Go ahead, Mr. Rosenbaum.

20          MR. ROSENBAUM:  Thank you, Your Honor.  Your Honor,

21     this is a renewed objection, dated January 14th, 2014.  It's

22     supported by the declaration of Lauren Delehey.  Ms. Delehey is

23     a former chief litigation counsel with the debtors and now

24     serves in a similar capacity for the ResCap liquidating trust.

25          Your Honor, there's two claims at issue.  The first

RESIDENTIAL CAPITAL, LLC, et al.                    14

1    proof of claim is number 4754.  This was timely filed on

2    November 14th, 2012.  Ms. Wilson filed this pro se.  It is in

3    the amount of 5,005,000 dollars as a secure --

4            THE COURT:  I thought it was 5,050,000.

5            MR. ROSENBAUM:  You're correct, Your Honor.  5,050,000

6    as a secured claim.  The purported basis of the claim is, to

7    quote: "My note was sold, as unregistered and unregulated, to

8    an investor as a bond."  And the claim attaches what it

9    purports to be as some sort of securitization audit expert

10   report.

11           Your Honor, if you may recall, as part of the

12   thirtieth omnibus objection, the debtors objected to the

13   original claim, claim number 4754.  Ms. Wilson responded with

14   both an objection and an amended claim, and in the amended

15   claim the argument was that the amendment mooted the objection.

16   That claim was claim number 7181.  That was filed on September

17   23rd, 2013.  It was filed by Ms. Nora on behalf of Ms. Wilson.

18   It asserts a secured claim of 4,150,000 dollars and an

19   unsecured claim of 350,000 dollars.

20           The basis of the claim, as stated on the face of the

21   claim, is disgorgement of profits from sale of note, RICO

22   fraud, et cetera.  In connection with the filing of the amended

23   claim, the debtors, at the hearing on the omnibus objection,

24   basically withdrew the objection to the original claim, and

25   with the Court's permission, we have filed the current

RESIDENTIAL CAPITAL, LLC, et al.                    15

1   objection to the both the original and amended claim.

2           Your Honor, some brief background.  This is set forth

3   in our pleadings, but on December 13th, 2006, Ms. Wilson

4   obtained a mortgage loan from Homecomings Financial.  It was

5   secured by a deed of trust on property located at 211 West

6   Chandler Street, Culpeper, Virginia.  The note was endorsed

7   from Homecomings to debtor Residential Funding Company, and

8   then from Residential Funding Company to Deutsche Bank Trust

9   Company of America.  The property subject to the deed of trust

10  was subject to four prior foreclosure referrals.  Ultimately, a

11  final foreclosure referral occurred in February of 2012, and

12  the property was sold on October 4th, 2012.

13          Ms. Wilson has commenced -- had commenced two

14  proceedings.  Initially, she commenced a pro se on April 18,

15  2011, a proceeding in the Culpeper County Circuit Court,

16  seeking to cancel an impending foreclosure on the property.

17  Subsequently, she filed a complaint on that action.  While that

18  action was pending, Ms. Wilson filed, again pro se, on

19  around -- or about August 4th, 2011, a complaint against the

20  debtors, again in the Culpeper County Circuit Court.

21          THE COURT:  I thought that was on April 20th, 2011.

22          MR. ROSENBAUM:  I could check that, Your Honor.

23          The defendants removed the case to the United States

24  District Court for the Western District of Virginia.  A copy of

25  the complaint filed in that action is annexed to the Delehey

1  declaration as Exhibit C.  It's now the -- what we'll refer to

2  as the federal action.

3          Although this complaint is somewhat longer than the

4  complaint filed in the state court action, it makes similar

5  allegations about improprieties in connection with the loan's

6  origination.  The complaint also alleges wrongful foreclosure,

7  fraud, breach of contract, breach of implied covenant of good

8  faith and fair dealing, unjust enrichment, action to quiet

9  title, and slander of title arising out of the origination of

10  the note and the deed of trust.

11          That complaint -- again, it's annexed to the Delehey

12  declaration -- also includes what we believe to be an inexact

13  copy of the so-called securitization expert report that was

14  annexed to the original proof of claim.

15          Your Honor, the defendants to that action filed a

16  motion to dismiss for failure to state a claim under Federal

17  Rule of Civil Procedure 12(b)(6).  They filed that on or about

18  September 16th, 2011 --

19          THE COURT:  2011.

20          MR. ROSENBAUM:  -- Your Honor.

21          THE COURT:  Right.

22          MR. ROSENBAUM:  In response to that motion, the

23  district court issued a so-called Roseboro notice directing Ms.

24  Wilson respond to the motion to dismiss.  Ms. Wilson failed to

25  respond to the motion to dismiss, and on October 26th, the

1  district court in the federal action entered a final order

2  dismissing the action, pursuant to Federal Rule of Civil

3  Procedure 41(b), which is an adjudication on the merits.  Ms.

4  Wilson did not appeal the dismissal order.

5          THE COURT:  Was she served with a copy of the

6  dismissal order?

7          MR. ROSENBAUM:  Your Honor, we have no evidence either

8  way that she was served or not served.  There's no -- nothing

9  in the docket that reflects that a dismissal order was served

10  on her.  The order itself, which is -- excuse me -- I believe

11  Exhibit D to Ms. Delehey's declaration, provides that it is to

12  be served on the defendant.

13          If I could just call your attention to Exhibit D, Your

14  Honor?

15          THE COURT:  Yeah, I'm with you.  I understand.

16          MR. ROSENBAUM:  Okay, thank you.

17          THE COURT:  I've reviewed all these papers.

18          MR. ROSENBAUM:  Your Honor, Ms. Nora, on behalf of Ms.

19  Wilson, filed a -- what we'll characterize as a response to the

20  objection.  It was docket number 6427.  And she also filed a

21  motion to seal.  We're not quite sure what evidence or document

22  she was seeking to seal by that.

23          THE COURT:  Well, it seemed to me that she was seeking

24  to seal two things:  Exhibit C to the declaration, and also the

25  declaration itself.

1        MR. ROSENBAUM:  Well, Your Honor --

2        THE COURT:  I read that there were two motions that

3   she filed.  They're docketed as 6425 and 6427.  And one is the

4   motion to strike the objection and the other is to seal, and

5   they kind of blended together, but it's to seal the

6   confidential declaration of Wendy Allison Nora and also to seal

7   Exhibit C.

8        MR. ROSENBAUM:  Your Honor, I don't believe we were

9   provide -- we saw it was on the docket.  If there is additional

10  information that Ms. Nora is seeking to seal, we weren't

11  provided with copies.

12       THE COURT:  I don't know.  I mean, the originals are

13  on the docket.  I don't know how you seal anything -- after

14  it's all public record is you don't.

15       MR. ROSENBAUM:  Okay.

16       THE COURT:  But the way you seek to seal something is

17  by filing a motion under Bankruptcy Code Section 107(b) seeking

18  to seal something.  You provide the Court with an unredacted

19  copy and you don't file it on the docket.  But here both

20  Exhibit C and the declaration were filed on the public docket.

21  They've been out there for quite some time.  So it seemed to me

22  what I have before me are essentially three things today: the

23  debtors' objection to the proofs of claim, and Ms. Nora's two

24  motions, which are ECF 6425 and 6427.

25       MR. ROSENBAUM:  Thank you, Your Honor.  I'll proceed

RESIDENTIAL CAPITAL, LLC, et al.                    19

1  with the objection.

2          THE COURT:  Go ahead.

3          MR. ROSENBAUM:  Your Honor, we have really four bases

4  for the objection, as we set forth in the papers.  The first is

5  that the original Wilson claim is time barred under the

6  doctrine of res judicata.

7          THE COURT:  It's not time barred because of res -- if

8  it's barred by --

9          MR. ROSENBAUM:  Barred by res judi --

10          THE COURT:  -- res judicata, it's not because it's

11  time barred.  It's --

12          MR. ROSENBAUM:  Okay.

13          THE COURT:  It's because you're saying that the

14  federal court, in its 41(b) -- in its order dismissing under

15  41(b), that that's a merits determination, and that that's

16  determinative of the claims that she filed here.  That's

17  essentially your argument.

18          MR. ROSENBAUM:  That's correct, Your Honor.  I'm sorry

19  I misspoke.

20          THE COURT:  Okay.

21          MR. ROSENBAUM:  Your Honor, based on the original

22  claim, which both attaches and refers to the securitization

23  report, which reading through the complaint filed in the

24  federal action, we believe that's really the sole gravamen of

25  the complaint, that there's really fraud in the origination and

RESIDENTIAL CAPITAL, LLC, et al.                    20

1    the securitization process, and that complaint was dismissed

2    with prejudice, Your Honor.

3             For similar reasons, Your Honor, the amended complaint

4    either fails, one, because if it relates back to the original

5    complaint, it's both improper under res judicata, and if it's

6    an entirely new claim, it's time barred under the recognized

7    precedent in this court in Enron.

8             Your Honor, as we also state in our papers, both the

9    original complaint and the amended complaint fail to comply

10   with any of the applicable pleading standards under federal

11   rules.  It's almost virtually impossible to make out the cause

12   of action.  We don't believe that the reply remedied that in

13   any respect.  I think, again, it's wholly irrelevant, again,

14   raises issues about the plan securitization process, and of

15   course, the purported objection or position of Ms. Wilson that

16   Morrison & Foerster and Ms. Delehey are disabled from

17   representing the trust in any capacity.

18            THE COURT:  Do you want to address that, please?

19            MR. ROSENBAUM:  I'm sorry, Your Honor?

20            THE COURT:  Could you address that argument?

21            MR. ROSENBAUM:  Certainly, Your Honor.

22            THE COURT:  That's -- the portion of one of these

23   motions is to strike the objection of the debtors because Ms.

24   Nora argues that Morrison & Foerster is disqualified or should

25   be disqualified --

1       MR. ROSENBAUM:  Your Honor, number one, there is

2   absolutely no evidentiary or legal support for that position

3   and response, and we believe none exists.  I think the

4   presumption is that somehow because Morrison & Foerster was

5   counsel to the debtors, we're disabled from serving in a

6   similar capacity on behalf of the borrowers' trust.

7       Number one, the plan permits the borrowers' trust to

8   retain any counsel, including debtors' counsel, as long as

9   counsel is free from conflicts.  I can assure Your Honor we are

10  free from conflicts in our representation of the trust against

11  Ms. Wilson.

12      There's also a position, I guess, in the papers that

13  says somehow the former counsel for the debtors is disabled

14  from representing the trust in any capacity, because former

15  counsel for the debtors, Morrison & Foerster, represented the

16  debtors in prosecuting several omnibus objections.  What the

17  objection totally disregards is the whole entire process that

18  the debtors and now the borrowers' trust have gone through a

19  painstaking process that Your Honor has presided over.

20      THE COURT:  The borrowers' trust, which is set up to

21  provide compensation for valid borrower claims, I take it

22  whoever represents the trust, part of their responsibility is

23  to object to claims that the trust does not believe are valid,

24  because it would tend to dilute the recovery of those with

25  valid claims.  Is that a fair statement?

1          MR. ROSENBAUM:  Absolutely, Your Honor.

2          Unless Your Honor has other questions --

3          THE COURT:  I do.  Let me turn back to the res

4   judicata argument.  So you're seeking to apply res judicata

5   based on the dismissal by the federal court in Virginia.  And

6   my question to you is does the -- am I to apply the federal

7   rule of res judicata or am I to look at the Virginia state law

8   with respect to res judicata?

9          MR. ROSENBAUM:   I believe that it's likely both,

10  Your Honor, because the complaint alleged both federal and

11  state law causes of action.

12         THE COURT:  Mr. Rosenbaum, it looked to me that that

13  may be right, but that Virginia state law indicates that if the

14  matter is the dismissal in federal court, as a matter of

15  Virginia state res judicata law, it says apply federal res

16  judicata law.  Can you address that?

17         MR. ROSENBAUM:  Under federal res judicata laws, we

18  state in our papers, it would apply on the --

19         THE COURT:  I'm not sure it would make a difference

20  here, but --

21         MR. ROSENBAUM:  -- it would apply on the dismissal

22  because it's a merits dismissal --

23         THE COURT:  Okay.

24         MR. ROSENBAUM:  -- under Rule 41(b).

25         THE COURT:  And it looked to me that Virginia law,

RESIDENTIAL CAPITAL, LLC, et al.                    23

1   even as to Virginia causes of action, if it's a judgment from a

2   federal court, Virginia law says apply the federal rule of res

3   judicata.

4           MR. ROSENBAUM:  That's correct, Your Honor.

5           THE COURT:  All right.  Let me hear from Ms. Nora.

6           MS. NORA:  Thank you, Your Honor.  We completely agree

7   with --

8           THE COURT:  You have to make your appearance, Ms.

9   Nora.

10          MS. NORA:  Oh, thank you.  Wendy Allison Nora, pro hac

11  vice counsel for Caren Wilson.

12          THE COURT:  Before we get to the merits of the

13  objection, could you just briefly address your sealing motion,

14  because it seemed it actually is three things:  You wanted to

15  seal your declaration, you wanted to seal Exhibit C, and you

16  wanted to strike the objection.

17          So with respect to the sealing, Ms. Nora, it seems to

18  me you filed the originals of everything on the public record.

19  There's nothing to seal -- I don't seal things that are part of

20  the public record.

21          MS. NORA:  Well, Your Honor, I am educated, as we sit

22  here today, because where I come from in the great mid-West, we

23  don't have a lot of confidential materials that ever come

24  before the court.

25          THE COURT:  We don't have either, but --

1      MS. NORA:  Okay.  And so the process was a little bit
2  difficult for me.  In fact, the Western District of Wisconsin
3  only recently put rules into effect with respect to sealing.
4  And the bankruptcy court didn't even have a way for sealed
5  documents to be filed with the court.  So I took a stab at
6  thinking that if you agreed with me that that should be sealed,
7  it should be stricken from the record.  But you're absolutely
8  right, if stricken from the public record, it's already there.

9      THE COURT:  It's there.

10     MS. NORA:  And anybody on earth could have printed it
11 down.  So I was very concerned about how that might happen.  I
12 was just trying to show respect for the agreement I had with
13 the debtors.  And the whole point of that was --

14     THE COURT:  Well, if you weren't supposed to disclose
15 it, you shouldn't have filed it on ECF.  But that's -- I'm
16 not -- that's not an issue before me today.  The only thing --
17 I have your sealing motion and as to that, I'm going to deny
18 the motion because you --

19     MS. NORA:  It's moot.

20     THE COURT:  First off, I didn't see -- whatever
21 agreement you may have had with the debtors, in settling
22 matters with them, is not before me today.  But you made both
23 the declaration and Exhibit C as part of the public record, so
24 the motion to seal is denied.

25     MS. NORA:  Thank you, Your Honor.  We totally agree

1  with the Court that the purpose of the borrowers' claims trust

2  is to protect the rights of the trust from unsupported claims.

3  That's absolutely crystal clear to us.  Ms. Wilson is in

4  another world.  She is a potential beneficiary of the

5  borrowers' claims trust, but she must overcome the hurdle of

6  determining the validity of her claim to actually become a

7  beneficiary under the trust.

8        THE COURT:  Well, but address this.  You raised the

9  disqualification issue, and frankly, you didn't cite any

10 authority in support of it.  I read the argument, but I want to

11 give you a chance to briefly address why you think Morrison &

12 Foerster should be disqualified from representing --

13     (Cell phone ringing)

14        THE COURT:  Somebody's phone is ringing.

15        MS. NORA:  I am so sorry.  That was turned off, Your

16 Honor.  I don't know how it got back on.

17        THE COURT:  Well, mine went off too, so we're both

18 forgiven.  Okay?

19        MS. NORA:  I guess my pressure wasn't enough to get it

20 to stay --

21        THE COURT:  Okay.  Just make sure it's turned off, or

22 at least on silent.

23        MS. NORA:  So anyway, Your Honor, my concern, on

24 behalf of Ms. Wilson, is that she wants to have the opportunity

25 to be considered by the trustee of the borrowers' claims trust

1  rather than the debtors' counsel, who have been adverse to her.

2  And I do a lot of work in the area of trust law, and this is an

3  interesting use of a trust.  I know it's done very often in

4  major litigation, as you get here in New York, but the issue is

5  whether or not the trustee can employ counsel that is already

6  adverse to claimants upon the trust.

7         And that's why I cited to the Apache Nation case, 2011

8  case from the United States Supreme Court.  And I have trouble

9  pronouncing this name of the nation, Jicarilla -- Jicarilla.

10  And in trying to figure out what is the nature of a trust and

11  what are the rights under the trust, I found it very

12  instructive that --

13         THE COURT:  You would agree with me, if your client

14  doesn't have a valid claim, it shouldn't receive anything from

15  the trust, right?

16         MS. NORA:  Totally, Your Honor, absolutely.

17         THE COURT:  And so the trust is entitled to employ

18  counsel to carry out its wishes, and where it believes it's

19  appropriate, to object to claims and seek to disallow and

20  expunge them, right?

21         MS. NORA:  Yes --

22         THE COURT:  Okay.

23         MS. NORA:  -- where they are invalid.  But where we're

24  coming to a problem here is that -- first of all, I just need

25  to correct the record.  Mr. Rosenbaum said that the amended

1   claim is in the amount of, like, 400 and -- 4.1 million dollars

2   secured and 350,000 unsecured.  It's exactly the opposite.

3   What Ms. Wilson is trying to say is that the secured --

4           THE COURT:  Well, your papers say it was 4,150,000

5   unsecured and 350,000 secured.

6           MS. NORA:  Exactly, and he stated exactly the

7   opposite.

8           THE COURT:  Well, I have it right.

9           MS. NORA:  Thank you, Your Honor.

10          THE COURT:  Okay.

11          MS. NORA:  So here's where the problem comes in.  Ms.

12  Wilson never knew what the basis for the dismissal in federal

13  court was.  It was not a case she initiated in the Western

14  District of Virginia.  It was removed by debtors' counsel to

15  the Western District of Virginia.  And she was deceived into

16  thinking that she was going to get a hearing in the Western

17  District of Virginia, which is how things are done in state

18  court; you get to appear and argue.

19          So this Roseboro notice was never mailed to her.  She

20  never knew about it.  And debtors' counsel for the Virginia

21  matter was telling her pick a date that you get to go to

22  federal court.  And we would offer to prove that in an

23  evidentiary hearing, that she did not --

24          THE COURT:  You're in the wrong court to do that.

25          MS. NORA:  Exactly, Your Honor, which is why my co-

1   counsel had asked for an adjournment.  We did not know that

2   this was the debtors' issue until January 14th when they filed

3   their renewed objection on new grounds.  Ms. Wilson was

4   immediately instructed to find local counsel in the Western

5   District of Virginia.

6       Now, there's something rather -- if you'll bear with

7   me, Your Honor, it's unusual, for my experience, that lawyers

8   admitted to the district court are not automatically admitted

9   to the bankruptcy court.  From my experience and Mr.

10  Sinnickson's experience, the admission to bankruptcy court

11  flows along with the district court admission in most

12  jurisdictions.  In West Virginia, however, you can be admitted

13  only to bankruptcy court and not have practice privileges in

14  the Western District of Virginia.

15      So she went on a search to find a lawyer in her area

16  that was admitted at the district court level.  And I finally

17  found someone, but it was -- it was playing phone tag because

18  they got hit with a blizzard, and then I was in court and

19  travel --

20      THE COURT:  We're getting off on a tangent --

21      MS. NORA:  Well, Your Honor --

22      THE COURT:  -- because -- no, stop.

23      MS. NORA:  Thank you.

24      THE COURT:  The issue is whether Morrison & Foerster

25  is disqualified from representing the borrowers' trust.  I

1  don't want to talk about Roseboro notices and what the Western

2  District of Virginia -- what the law is there.  I'm just

3  staying focused on --

4          MS. NORA:  On that issue.

5          THE COURT:  -- the disqualification.

6          MS. NORA:  Well, it's our position, Your Honor, that

7  where there has been an attorney-client relationship developed

8  with adverse parties to a potential claimant against the trust,

9  that the trustee should be advised and given the right to waive

10  that conflict of interest on behalf of the trustee --

11          THE COURT:  Ms. Nora, why wasn't the debtors' interest

12  and the trust's interest precisely identical?  The debtors'

13  plan established the borrowers' trust.  The borrowers' trust is

14  intended to compensate borrowers with valid claims.  The debtor

15  had filed an objection to Ms. Wilson's claim, and now the

16  borrowers' trust has carried it forward.  They carried it

17  forward because they don't believe that Ms. Wilson has a valid

18  claim, because res judicata, based on the dismissal in the

19  Western District of Virginia bars the claim.  They have

20  precisely the same interest.  What's the conflict?

21          MS. NORA:  Well, it was our understanding, Your Honor,

22  that the trustee of the borrowers' claims trust would take an

23  independent look at the proofs of claim.  And if that was not

24  the way that it turned out here, then we were misled.

25          THE COURT:  Why don't you think that that's happened?

1   Why don't you think that the trustee of the trust has

2   determined that the trust should go forward and object to Ms.

3   Wilson's claim and leave it to the Court to determine whether

4   the claim should be disallowed and expunged or whether the

5   claim should be allowed?  I mean, that's what's happened.

6          MS. NORA:  Well, our concern is that if you're a

7   potential beneficiary of a trust created by operation of law,

8   you should have an opportunity to address your claim to the

9   trustee.  Now, if you're saying that you're going to --

10          THE COURT:  You have an opportunity to address the

11   claim to me because I have a claim objection, I have Ms.

12   Wilson's response to the claim objection on the merits, and I

13   will be the one, in the first instance, to decide whether the

14   claim is disallowed or whether I overrule the objection of the

15   trust.

16          So it's not the trustee who is going to make this

17   decision; it's me.  Okay?  And if you're dissatisfied with what

18   I decide, you can appeal.  But what I have is, initially the

19   debtors objected to Ms. Wilson's claim or claims.  The plan is

20   confirmed, the borrowers' trust is established, the borrowers'

21   trust continues with the objection to Ms. Wilson's claims, and

22   you disagree.  I'm going -- assuming your disqualific -- your

23   motion to strike -- you move to strike the objection based on

24   disqualification.  Let me -- I'm going to put a stop to this

25   point right now.

1          MS. NORA:  Okay.

2          THE COURT:  Okay.  The motion so strike the objection

3    because Morrison & Foerster is disqualified is overruled.  That

4    motion is denied.

5          So go on and talk about the merits of Ms. Wilson's

6    claim.

7          MS. NORA:  Thank you, Your Honor.  So when we received

8    the January 14th renewed objection, then I went into the PACER

9    system and located the documents in the United States District

10   Court for the Western District of Virginia.  And here's the

11   problem.  Ms. Wilson did not file, in the Western District of

12   Virginia, this more expansive case.  She filed in the state

13   court and it was --

14         THE COURT:  Are you saying removal was improper?

15         MS. NORA:  She never had an opportunity to even object

16   to the removal.  This was all done kind of behind her back.

17   She didn't know what hit her.  But it -- this is not even the

18   concern, because the jurisdictional issue on removal, she had

19   thirty days to object, and she didn't know that she had that

20   right.  So that's really neither here nor there.  What's really

21   important is the Roseboro notice.  And I researched the history

22   of Roseboro notices in Virginia, how they came into being, and

23   how it was a cause of miscarriage of justice in this case for

24   lack of notice.

25         When Roseboro came down, it was because unrepresented

1   parties were being subjected to summary judgment in the

2   district courts.  And the Fourth Circuit said this isn't fair,

3   and we have to have due process before people lose their

4   rights.  And a chosen action is a right.  So what we want you

5   to do, district courts, is we want you to notify unrepresented

6   parties that they could be subjected to summary judgment and

7   give them the opportunity to respond.  That's the history of

8   the Roseboro notice.

9        What happened after a time is the Roseboro notice

10  started being used against unrepresented parties, which was to

11  this effect.  Okay, we're giving you notice, and if you don't

12  respond we're going to dismiss you.  All well and good, if

13  notice is given.

14       However, Ms. Wilson did not get --

15       THE COURT:  Ms. Nora --

16       MS. NORA:  -- the Roseboro notice.

17       THE COURT:  -- Ms. Nora.  The trust attaches a copy of

18  the notice from the federal court to its reply as Exhibit 1 --

19  Exhibit 1 to the reply, which states that it was "issued and

20  mailed this 19th day of September, 2011" and was signed by the

21  deputy clerk of the court.

22       And the notice said, "If plaintiff does not respond to

23  defendants' pleadings, the court will assume that plaintiff has

24  lost interest in the case and/or that plaintiff agrees with

25  what the defendants state in their responsive pleadings.  If

1  the plaintiff wishes to continue with the case, it is necessary

2  that the plaintiff respond in an appropriate fashion.

3  Plaintiff may wish to respond with counter-affidavits or other

4  additional evidence."  I'm going to leave something out.  It

5  goes on, "However, if plaintiff does not file some response

6  within the twenty-day period, the court will dismiss the case

7  for failure to prosecute."

8          So the court record shows that that was mailed on

9  September 19th, 2011.

10         MS. NORA:  And Ms. Wilson did not receive it.

11         THE COURT:  Well, maybe she did, maybe she didn't.

12  You've not put in any evidence here attesting to the allegation

13  that the Roseboro notice wasn't served.

14         MS. NORA:  Well, Ms. Wilson's declaration is a part of

15  the response where she says she did not receive it.

16         THE COURT:  The dismissal -- well --

17         MS. WILSON:  May I say something?

18         THE COURT:  No.  You can't.  Not at this point.  I'll

19  give you a chance if you want to speak.  Okay?  But not right

20  now.

21         You're saying that despite the fact that the order

22  said that it was issued and mailed on the 19th of September,

23  2011, by the clerk of the court, that she didn't receive it.

24         MS. NORA:  She did not receive it, Your Honor.

25         THE COURT:  Okay.

RESIDENTIAL CAPITAL, LLC, et al.                    34

1           MS. NORA:  And she did not receive --

2           THE COURT:  So --

3           MS. NORA:  -- the order dismissing the case with

4    prejudice dated October 26th, 2011, from which she could have

5    undertaken an appeal and undertaken relief at that point, and

6    had never seen this until I provided it to her when the debtors

7    sent it through the ECF system and it was retrieved.

8           And I asked her to identify whether she had received

9    these documents, and she had never seen them before.  She truly

10   believed that she was going to have a face-to-face hearing --

11          THE COURT:  So she know that it was removed, that the

12   action had been removed to federal court?

13          MS. NORA:  She did know that.  And she did not object

14   within the time frame on removal.  But she thought that she was

15   going to get a hearing.  And she has e-mails that we would put

16   in, in an evidentiary hearing --

17          THE COURT:  Okay.  I -- look.  You're arguing to the

18   wrong court.  What the record shows is the federal court

19   dismissed the case and that dismissal is final.

20          I don't second guess what the District Court for the

21   Western District of Virginia did.  I've looked at all the

22   papers that were filed before me.  I've seen that the order

23   recites that it was mailed on the 19th of September, 2011.  And

24   so as far as this Court is concerned, it appears to me that --

25   first off, the Western District, as I understand it -- I've

1   read the Roseboro decision, the Fourth Circuit's 1975 decision

2   in Roseboro.  And the Eastern District of Virginia -- not the

3   Western -- has adopted Rule 7(k), which, in effect, puts into

4   the rules the requirement of Roseboro notice.

5           Western Virginia has not adopted a similar rule.  But

6   it certainly appeared to me that the language that was included

7   in the notice that the court records shows was sent, satisfy

8   the Roseboro decision.  I mean, I quoted you the language that

9   came.  Okay?

10          So if you've got a complaint --

11          MS. NORA:  Yes, we do, Your Honor.  And that's why my

12  counsel wants to --

13          THE COURT:  I'm not adjourning the matter.  I made it

14  clear, I'm going forward with the matter.  Okay?

15          MS. NORA:  Can we -- whatever your decision is, could

16  you stay it for sixty days --

17          THE COURT:  No, I'm not staying a decision.

18          MS. NORA:  -- for us to get this relief.  Because this

19  happens frequently where an order is entered and it's void for

20  lack of constitutional grounding.  And people are allowed to go

21  and set those aside.  And we have been diligent in seeking --

22          THE COURT:  Well, you haven't been diligent.  What did

23  you -- has something been filed in the district court in the

24  Western District of Virginia?

25          MS. NORA:  I --

RESIDENTIAL CAPITAL, LLC, et al.                    36

1           THE COURT:  Have you filed something?

2           MS. NORA:  I cannot.  I am --

3           THE COURT:  Has counsel filed something in the Western

4   District of Virginia seeking relief from the dismissal order?

5           MS. NORA:  This is what I was trying to explain when I

6   was like off the track from another issue, Your Honor.  We've

7   been looking for local counsel in the Western District of --

8           THE COURT:  So I guess --

9           MS. NORA:  -- Virginia.

10          THE COURT:  - the answer to my answer is nothing has

11  been filed.

12          MS. NORA:  The answer is -- but we are --

13          THE COURT:  Could you just answer my question?

14          MS. NORA:  Yes, Your Honor.  Nothing has been --

15          THE COURT:  Has anything been filed?

16          MS. NORA:  Nothing has yet been filed.

17          THE COURT:  Okay.

18          MS. NORA:  But we are just about to make a

19  breakthrough in locating --

20          THE COURT:  Okay.

21          MS. NORA:  -- local counsel.

22          THE COURT:  So if -- and I haven't ruled yet, and I'm

23  going to --

24          MS. NORA:  Understood.

25          THE COURT:  -- take it under submission.  If I sustain

RESIDENTIAL CAPITAL, LLC, et al.                    37

1  the objection to the claim and expunge it on grounds of res

2  judicata, and if the court in Virginia subsequently vacates its

3  order, Section 502(j) of the Bankruptcy Code would permit the

4  claimant -- 502(j) provides, "A claim that has been allowed or

5  disallowed may be reconsidered for cause.  A reconsidered claim

6  may be allowed or disallowed according to the equities of the

7  case."  I won't go on and read it.

8           I have a number of recent decisions that deal with

9  precisely this issue of 502(j).  So you can go off and do

10  whatever you're going to do.  I don't think it's timely

11  anymore, but you could go do whatever you're going to do.  And

12  the courts in Virginia, the district court -- and if you lose

13  there and you go to the Fourth Circuit, those courts will do

14  whatever they're going to do.

15           And if the court down there wants to vacate its

16  dismissal, it'll do it.  And then you can come back -- I'm not

17  ruling now.  If I expunge the claims, you can come back -- if I

18  expunge them on res judicata grounds, you can come back and say

19  but the court in Virginia has vacated the order on which res

20  judicata is predicated.  And if and when that happens, I'll

21  consider it.

22           But this case doesn't stop while relief that hasn't

23  even been sought at this point, somebody does something there.

24           MS. NORA:  Thank you, Your Honor.

25           THE COURT:  So address the merits -- well, let me ask

1   you this.  Do you agree that if the dismissal that was filed in

2   the Western District of Virginia is effective, that res -- that

3   res judicata bars Ms. Wilson's claims?

4          MS. NORA:  Yes, in theory.

5          THE COURT:  Okay.  Right.

6          MS. NORA:  If there are --

7          THE COURT:  Well, don't tell me theory.  If the order

8   in Virginia stands, if the dismissal is effective, if it's not

9   vacated, I take it, you agree that Ms. Wilson's claims in this

10  court are barred by the doctrine of res judicata?

11         MS. NORA:  Yes, Your Honor.

12         THE COURT:  Okay.

13         MS. NORA:  If it is a valid enforceable judgment --

14         THE COURT:  All right.

15         MS. NORA:  -- that cannot be reversed on appeal.  And

16  just to call your attention to the rule we'd be working under,

17  it is 60 --

18         THE COURT:  60(b), you're talking about trying to

19  vacate --

20         MS. NORA:  -- (b)(4) void -- void for lack of notice.

21         THE COURT:  Well --

22         MS. NORA:  So timeliness, I'm addressing, you know,

23  the issue of --

24         THE COURT:  Look, I'm not getting into the issue of

25  whether -- the only point -- and I think you've agreed with

RESIDENTIAL CAPITAL, LLC, et al.                    39

1    me -- if it remains effective, if it's not vacated --

2            MS. NORA:  Um-hum.

3            THE COURT:  -- res judicata applies to bar the claims.

4            MS. NORA:  True.

5            THE COURT:  Okay.

6            MS. NORA:  That's why we were asking for time.  And I

7    understand that this --

8            THE COURT:  Well, 502(j) --

9            MS. NORA:  Gives us that opportunity --

10           THE COURT:  -- give you an opportunity.  I've just

11   recently issued two opinions in ResCap specifically where I

12   disallowed claims and expunged claims on res judicata grounds,

13   and where there were other proceedings going on elsewhere.  And

14   if they -- if something happens elsewhere come back.

15           MR. SINNICKSON:  Your Honor, may I comment --

16           THE COURT:  Let me just -- I'll give you a chance.

17   But let Ms. Nora --

18           MR. SINNICKSON:  Okay.

19           THE COURT:  -- finish.  Are you -- have you completed?

20           MS. NORA:  Your Honor, I really appreciate the

21   guidance that you've given us through this --

22           THE COURT:  I'm not giving you guidance.  I'm not

23   giving you any advice.  I'm just -- I don't want you to come

24   back that I told you, you could do this or you could do that.

25   I'm not saying your claims going to be -- there is a mechanism

RESIDENTIAL CAPITAL, LLC, et al.                    40

1   under 502(j), okay, and I've applied it specifically with

2   respect to this issue of res judicata.  Okay?

3          I don't get to second guess the Western District of

4   Virginia.

5          MS. NORA:  That is true, Your Honor.  And what I meant

6   by guidance is to be able to tease out what we're experiencing

7   as a great deal of confusion having just --

8          THE COURT:  Okay.

9          MS. NORA:  -- seen it.

10         THE COURT:  But you've simplified matters by

11  acknowledging that if that is an order that remains valid and

12  effective, it does bar the claims that have been served.

13         MS. NORA:  Yes.  And Ms. Wilson's response was, why

14  would I have even gone forward if I had known about this.

15         THE COURT:  I -- well, it wouldn't be the first time.

16  But I'm not faulting her for going forward with it.  Okay?

17         MS. NORA:  She did -- she didn't know.  And we're

18  going to try to get relief.  But we will -- we'll wait until

19  the relief is --

20         THE COURT:  All right.

21         MS. NORA:  -- in hand --

22         THE COURT:  Let me hear --

23         MS. NORA:  -- and --

24         THE COURT:  -- if Mr. Sinnickson wanted to speak.

25         MS. NORA:  Thank you.

RESIDENTIAL CAPITAL, LLC, et al.                    41

1          MR. SINNICKSON:  Your Honor, I think -- Ms. Wilson's

2     here to testify if necessary -- but I think it would be a more

3     efficient use of the Court's time to give us sixty days to

4     vacate it.  Where's the prejudice here?

5          I asked Mr. -- counsel before we were on the record

6     for an adjournment.  He said no, his client wouldn't consent to

7     it.  I said, could you please call your client.  He said no.

8          Granted, we could come back and make the application,

9     but why would we have to go through all that work and time and

10    effort where with a short adjournment we could go down to

11    Virginia and we're either vacated or we're not.  I don't see

12    where thirty to sixty days is going to mean that -- this is a

13    more efficient use of the Court's time to give us --

14         THE COURT:  That's your view of it.  It's not my view

15    of it.

16         MR. SINNICKSON:  Well, Your Honor.  I think you would

17    agree that if it was adjourned, and we were able to be here, it

18    would be a lot --

19         THE COURT:  You know, Mr. Sinnickson, the one thing I

20    don't allow people to do is after I've ruled to have them

21    reargue.  I denied the adjournment.  Okay?

22         MR. SINNICKSON:  Well, I renewed my application --

23         THE COURT:  I'm not adjourning the matter, Mr.

24    Sinnickson.  I'm not --

25         MR. SINNICKSON:  But we --

RESIDENTIAL CAPITAL, LLC, et al.                    42

1          THE COURT:  -- adjourning the matter.

2          MR. SINNICKSON:  Well, my comment was, it would be a

3    more efficient use of the Court's time --

4          THE COURT:  I think you're arguing on something I've

5    already ruled on.

6          MR. SINNICKSON:  Well, there was a question of notice

7    and service.  Ms. Wilson is here to testify, number one --

8          THE COURT:  She's not going to testify in my court

9    about it.

10         MR. SINNICKSON:  -- but I'm stating that she's here,

11   she's willing to -- number one, that she never received the

12   motion, number two, she never received the order.  So I don't

13   see the difficulty in granting her the constitutional due

14   process.  Give her some time to go to Virginia and try to

15   vacate it.  That's all I'm asking.

16         THE COURT:  All right.  Ms. Wilson, you wanted to

17   speak.  I'll -- it's up to your counsel whether they want you

18   to speak or not.  But I'm happy to hear from you.

19         MS. WILSON:  I have not been --

20         THE COURT:  You have to go up to the microphone

21   though, okay?

22         MS. WILSON:  Sure.

23         THE COURT:  Mr. Sinnickson, Mr. Nora, do you wish to

24   have --

25         MS. NORA:  Absolutely, Your Honor.

1          THE COURT:  -- Ms. Wilson speak?

2          Go ahead.  Just identify yourself for the record.

3          MS. WILSON:  Caren Wilson.

4          THE COURT:  Go ahead, Ms. Wilson.

5          MS. WILSON:  If I had received a notice in the

6   intention of defending my home, I would not not have responded.

7   And it was written in such a way and taken from me in such a

8   way that if I had the chance to respond, I would have

9   definitely responded.  I was very shocked to see that order and

10  how it was taken away from me and brought to another court.

11  And --

12         THE COURT:  Ms. Wilson, can I ask you this?  And I'm

13  not taking testimony on this, okay, but did your address change

14  while the case was pending?

15         MS. WILSON:  That's a very good point.  Thank you.  I

16  was searching for work, and I was actually in Houston at that

17  time.  And so that's why -- it kind made correlation since.  I

18  was communicating by e-mail with the counsel for GMAC, and they

19  became very friendly.  They were calling themselves Billy and

20  this and that.  And I thought -- he said pick a date.  We'll

21  have a hearing.

22         And I said well, I'm not going to be back until close

23  to November.  And so I clearly remembered this and searched my

24  Gmail account and I found it.  And I said oh, my.  Because he

25  was telling me I was coming for a hearing, I've got to be back

1     by November.  So this is all now making sense.

2            THE COURT:  Did you have an address in Virginia?  Had

3     you moved to --

4            MS. WILSON:  The house -- yeah, the house --

5            THE COURT:  -- Houston?

6            MS. WILSON:  -- was there.  But I was not collecting

7     the mail.  So if they did mail me --

8            THE COURT:  You never collected the --

9            MS. WILSON:  -- no I do.

10           THE COURT:  The mail wasn't forwarded?

11           MS. WILSON:  No, I didn't forward it.  I was -- I was

12    job hunting in Houston.

13           THE COURT:  And how long were you in Houston?

14           MS. WILSON:  Probably about a month.

15           THE COURT:  Okay.

16           MS. WILSON:  But see, now it all starts making sense.

17    That's all -- that's all I wanted to say.

18           THE COURT:  Okay.

19           MS. WILSON:  I was -- my intention was to continue to

20    follow the case and defend myself.

21           THE COURT:  All right.

22           MS. WILSON:  That's all I have.

23           THE COURT:  Thank you.

24           MS. WILSON: Thank you.

25           THE COURT:  Mr. Rosenbaum, anything you want to add

RESIDENTIAL CAPITAL, LLC, et al.                    45

1    briefly?

2            MR. ROSENBAUM:  Very brief, Your Honor.  In our -- in

3    the debtors' reply to the thirtieth omnibus objection, docket

4    number 5297, we made specific reference to the dismissal order.

5    And that was filed on or about October 7, 2013.  So Ms.

6    Wilson -- and I know there was some issues with Ms. Nora -- but

7    I believe she was still counsel at that time -- was on notice

8    of the dismissal order at that time.  I don't have anything

9    else to add, Your Honor.

10           THE COURT:  All right, thank you.  All right, I'm

11   going to take the matter under submission.

12           All right.  We're adjourned --

13           MS. NORA:  Judge, if just real briefly.

14           THE COURT:  No, no, we're done.  We're done.

15           MR. SINNICKSON:  Thanks, Your Honor.

16       (Whereupon these proceedings were concluded at 10:54 AM)

17

18

19

20

21

22

23

24

25

1

2                                    I N D E X

3

4                                  R U L I N G S

5                                                    PAGE      LINE

6    Mr. Sinnickson's application for               13        13

7    adjournment is denied

8    Motion to seal is denied                       24        22

9    Motion to strike objection that                31         2

10   Morrison & Foerster is disqualified

11   is overruled

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                         C E R T I F I C A T I O N

3

4    I, Sharona Shapiro, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7                    *Sharona Shapiro*

8

9    _____

10   SHARONA SHAPIRO

11   AAERT Certified Electronic Transcriber CET**D-492

12

13   eScribers

14   700 West 192nd Street, Suite #607

15   New York, NY 10040

16

17   Date:  February 21, 2014

18

19

20

21

22

23

24

25