**Hearing Date: TBD**
**Objection Deadline: TBD**

CARPENTER LIPPS & LELAND LLP
1540 Broadway, Suite 3710
New York, New York  10036
Telephone:  (212) 837-1110
Facsimile:  (212) 837-1108
Jeffrey A. Lipps (admitted *pro hac vice*)
Jennifer A.L. Battle
David A. Beck (admitted *pro hac vice*)

*Special Litigation Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**SUMMARY OF FIFTH AND FINAL APPLICATION OF
CARPENTER LIPPS & LELAND LLP AS SPECIAL LITIGATION
COUNSEL FOR THE DEBTORS FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES INCURRED FOR THE INTERIM
PERIOD OF SEPTEMBER 1, 2013 THROUGH DECEMBER 17, 2013
AND THE FINAL PERIOD OF MAY 14, 2012 THROUGH DECEMBER 17, 2013**

{00381093-1}

| | |
|---|---|
| This is a(n): ___ monthly _ interim __X_ final application. | |
| Name of Applicant: | Carpenter Lipps & Leland LLP |
| Authorized to Provide Professional Services to: | Residential Capital, LLC, *et al*. |
| Date of Retention: | Order entered on July 25, 2012 retaining Applicant *nunc pro tunc* to May 14, 2012 |
| Period for which Interim Compensation and Reimbursement is sought: | September 1, 2013 through December 17, 2013 |
| Amount of Interim Compensation Sought as Actual, Reasonable and Necessary: | $851,039.00 |
| Amount of Interim Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $253,922.08 |
| Period for which Final Compensation and Reimbursement is sought: | May 14, 2012 through December 17, 2013 |
| Amount of Final Compensation Sought as Actual, Reasonable and Necessary: | $6,163,425.00 |
| Amount of Final Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $2,609,058.89 |
| Previous Compensation awarded on an interim basis: | $5,312,386.00 |
| Previous Reimbursement of Expenses awarded on an interim basis: | $2,355,136.81 |

**Summary of Monthly Applications for Fifth Interim Compensation Period:**

| Date Filed | Compensation Period | Requested Fees | Requested Expenses | Fees Paid | Expenses Paid | 20% Holdback |
|---|---|---|---|---|---|---|
| 10/31/2013 | 09/01/2013-09/30/2013 | $269,066.50 | $116,575.76 | $215,253.20 | $116,575.76[1] | $53,813.30 |
| 11/25/2013 | 10/01/2013-10/31/2013 | $267,076.00 | $57,154.95 | $213,660.80 | $57,154.95[2] | $53,415.20 |
| 12/30/2013 | 11/01/2013-11/30/2013 | $197,011.50 | $95,421.05 | $6,788.80[3] | $86,861.17[4] | $39,402.30 |
| 02/12/2014 | 12/01/2013-12/17/2013 | $117,885.00 | $962.67 | $0.00[5] | $0.00[6] | $23,577.00 |
| **TOTAL** | 09/01/2013-12/17/2013 | $851,039.00 | $270,114.43[7] | $435,702.80 | $260,591.88 | $170,207.80 |

---

[1] Based on the Court's ruling at the December 16, 2013 hearing, Applicant has reviewed these expenses and determined that $5,976.92 of these expenses are for travel by Applicant to New York City unrelated to Mr. Lipps's services as a witness in these cases. Applicant is reducing its total requested expenses by this amount.

[2] Based on the Court's statements at the December 16, 2013 hearing, Applicant has reviewed these expenses and determined that $10,215.43 of these expenses are for travel by Applicant to New York City unrelated to Mr. Lipps's services as a witness in these cases. Applicant is reducing its total requested expenses by this amount.

[3] This total represents 80% of the requested fees minus $150,820.40 for invoices 57029 and 57030 for which Applicant has not yet received the 80% fees from the Debtors.

[4] This total represents 100% of the requested expenses minus $8,559.88 for invoices 57029 and 57030 for which Applicant has not yet received the 100% expenses from the Debtors.

[5] Applicant has not yet received the 80% fees for any of the December 2013 invoices from the Debtors.

[6] Applicant has not yet received the 100% expenses for any of the December 2013 invoices from the Debtors.

[7] This total is based on the total items in the requested expenses column reflecting the amount requested on each invoices as it was originally sent out before making the reductions in expenses described in footnotes 1 and 2 above. The aggregate request of Applicant on the cover for $253,922.08 in expenses reflects these reductions.

{00381093-1}

CARPENTER LIPPS & LELAND LLP
1540 Broadway, Suite 3710
New York, New York 10036
Telephone: (212) 837-1110
Facsimile: (212) 837-1108
Jeffrey A. Lipps (admitted *pro hac vice*)
Jennifer A.L. Battle
David A. Beck (admitted *pro hac vice*)

*Special Litigation Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Chapter 11 |
| | Jointly Administered |
| Debtors. | |

**FIFTH AND FINAL APPLICATION OF CARPENTER LIPPS & LELAND LLP**
**AS SPECIAL LITIGATION COUNSEL FOR THE DEBTORS FOR**
**COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR**
**THE INTERIM PERIOD OF SEPTEMBER 1, 2013 THROUGH DECEMBER 17, 2013**
**AND THE FINAL PERIOD OF MAY 14, 2012 THROUGH DECEMBER 17, 2013**

For its fifth and final application for compensation and reimbursement of expenses (the "**Application**") for the interim period of September 1, 2013 through December 17, 2013 (the **"Fifth Compensation Period"**) and the final period of May 14, 2012 through December 17, 2013 (the "**Final Application Period**"), Carpenter Lipps & Leland LLP ("**Applicant**"), special litigation counsel to Residential Capital, LLC., *et al.*, as debtors (collectively, the "**Debtors**"), respectfully represents as follows:

{00381093-1}

**JURISDICTION, VENUE AND STATUTORY PREDICATES**

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 330, 331, and 1103 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2016-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"). This Application has been prepared in accordance with General Order M-447, *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, entered June 17, 2013 (the "**Local Guidelines**"), and the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* effective January 30, 1996 (the "**UST Guidelines**" and, together with the Local Guidelines, the "**Guidelines**"). Pursuant to the Local Guidelines, a certification regarding compliance with the Local Guidelines is attached hereto as Exhibit A.

**BACKGROUND**

**The Chapter 11 Cases**

3. On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

4. On May 16, 2012, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed a nine member official committee of unsecured creditors (the "**Creditors' Committee**").

{00381093-1}    2

5. On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (Docket No. 6065) (the "**Confirmation Order**") approving the terms of the Chapter 11 plan, as amended (the "**Plan**"), filed in these Chapter 11 Cases. On December 17, 2013, the Effective Date (as such term is defined in the Plan) of the Plan occurred (Docket No. 6137).

**Applicant's Retention and Interim Compensation**

6. On July 25, 2012, the Court entered the *Order Under Section 327(e) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule 2014-1 Authorizing the Employment and Retention of Carpenter Lipps & Leland LLP as Special Litigation Counsel to the Debtors, Nunc Pro Tunc, to May 14, 2012* (Docket No. 907), approving Applicant's retention.

7. On July 17, 2012, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (the "**Interim Compensation Order**") (Docket No. 797). Pursuant to the terms of the Interim Compensation Order, Applicant, among others, is authorized to file and submit monthly fee applications to the Debtors and their counsel, counsel for the Creditors' Committee, counsel for Ally Financial Inc., and the United States Trustee (collectively, the "**Notice Parties**").

8. On October 19, 2012, Applicant filed its first interim fee application (Docket No. 1889) (the "**First Interim Application**"). On December 28, 2012, the Court entered its Omnibus Order (Docket No. 2530) (the "**First Fee Order**") concerning the first fee applications filed for retained professionals. As part of the First Fee Order, the Court authorized on an interim basis $949,060.00 in fees and $334,034.08 in expenses for Applicant, which reflected

{00381093-1}                                                    3

certain consensual reductions from the amounts requested in the First Interim Application agreed to between the Applicant and the United States Trustee.

9. On March 13, 2013, Applicant filed its second interim fee application (Docket No. 3174) (the "**Second Interim Application**"). On April 29, 2013, the Court entered its Omnibus Order (Docket No. 3556) (the "**Second Fee Order**) concerning the second fee applications filed for retained professionals. As part of the Second Fee Order, the Court authorized on an interim basis $1,872,539.50 in fees and $641,079.68 in expenses for Applicant, which reflected certain consensual reductions from the amounts requested in the Second Interim Application agreed to between the Applicant and the United States Trustee.

10. On August 7, 2013, Applicant filed its third interim fee application (Docket No. 4557 (the "**Third Interim Application**"). On September 25, 2013, the Court entered its Omnibus Order (Docket No. 5205) (the **"Third Fee Order"**) concerning the third fee applications filed for retained professionals. As part of the Third Fee Order, the Court authorized on an interim basis $1,658,311.00 in fees and $977,371.77 in expenses for Applicant, which reflected certain consensual reductions from the amounts requested in the Third Interim Application agreed to between the Applicant and the United States Trustee.

11. On November 18, 2013, Applicant filed its fourth interim fee application (Docket No. 5801) (the "**Fourth Interim Fee Application**"). On December 26, 2013, the Court entered its Omnibus Order (Docket No. 6193) (the "**Fourth Fee Order**") concerning the fourth fee applications filed for retained professionals. As part of the Fourth Fee Order, the Court authorized on an interim basis $832,475.50 in fees and $402,651.28 in expenses for Applicant.[1]

---

[1] In accordance with the Court's ruling concerning travel expenses to New York City at the December 16, 2013 hearing, Applicant gave the Debtors a $4,119.77 credit on its monthly fee statement for November of 2013 to
(continued...)

{00381093-1}    4

12. On October 31, 2013, Applicant served its monthly fee application covering the period from September 1, 2013 to September 30, 2013 (the "**September Monthly Fee Application**") on the Notice Parties. On November 25, 2013, Applicant served its monthly fee application covering the period from October 1, 2013 to October 31, 2013 (the "**October Monthly Fee Application**") on the Notice Parties. On December 30, 2013, Applicant served its monthly fee application covering the period from November 1, 2013 to November 30, 2013 (the "**November Monthly Fee Application**") on the Notice Parties. On February 12, 2014, Applicant served its monthly fee application covering the period from December 1, 2013 to December 17, 2013 (the "**December Monthly Fee Application**" and, together with the September Monthly Fee Application, the October Monthly Fee Application, and the November Monthly Fee Application, the "**Monthly Fee Applications**") on the Notice Parties. The Applicant has not received any objections to the Monthly Fee Applications.

13. For the convenience of the Court and all parties in interest, attached hereto as Exhibit B is a schedule of the total amount of fees incurred by matter during the Fifth Compensation Period.

14. To date, the Applicant has received payments totaling $696,294.78, representing $435,702.80 in fees and $260,591.88 in expenses, on account of the Monthly Fee Applications. As detailed on the cover sheet, this represents full payment of the September Monthly Fee Application and the October Monthly Fee Application and partial payment of the November

---

(continued...)

compensate the Debtors for travel expenses to New York which were unrelated to Mr. Lipps's services as a witness in these cases that were included in the total expenses authorized by the Fourth Fee Order.

Monthly Fee Application. The objection period on the December Monthly Fee Application has not yet expired.

15. Applicant maintains computerized records of the time expended in the rendering of the professional services required by the Debtors. These records are maintained in the ordinary course of Applicant's practice. For the convenience of the Court and all parties in interest, attached hereto as <u>Exhibit C</u> is a billing summary for the Fifth Compensation Period, setting forth the name of each attorney and paraprofessional who rendered services during the Fifth Compensation Period, each attorney's year of bar admission, the states in which each attorney is licensed, the aggregate time expended by each attorney and each paraprofessional, the hourly billing rate for each attorney and each paraprofessional at Applicant's current billing rates in these cases, and the individual amounts requested for each professional. Exhibit C also provides the blended hourly rate for Applicant's attorneys during the Fifth Compensation Period. As disclosed by Supplemental Declaration (Docket No. 2775), certain of Applicant's professionals' rates were increased by agreement with the Debtors effective January 1, 2013. For the remaining professionals, the applicable rate is either the rate in place prepetition or the rate agreed to with the Debtors when that professional first started working for the Debtors' postpetition. These agreed on rates are discounted from Applicant's standard hourly rates.

16. Applicant also maintains computerized records of all expenses incurred in connection with the performance of professional services. A summary of the amounts and categories of expenses for which reimbursement is sought is attached hereto as <u>Exhibit D</u>. Also included in Exhibit D are copies of the invoices supporting Applicant's request for reimbursement of contract attorneys and airfare. As has been its policy during these cases, Applicant only charges the Debtors for coach airfare. All meal expenses are for meals while

{00381093-1}                                    6

traveling and all meals comply with the $20.00 per person per meal limit the court has imposed in these cases. Based on the Court's ruling at the December 16, 2013 hearing, Applicant has reduced its requested reimbursement of expenses by $16,192.35 from the amounts shown on the September and October Monthly Fee Applications to remove expenses associated with travel to New York City on behalf of the Debtors that was unrelated to Mr. Lipps's service as a witness in these cases.

17.     In connection with the requested reimbursement of expenses for the fees incurred by contract document reviewers, Applicant wishes to provide the following additional detail. The use of these reviewers was essential for the review of over 37,500 documents and the production of over 53,000 pages during the Fifth Compensation Period. In addition, because of customary lags in the billing cycles for the staffing firms providing contract reviewers, the Fifth Compensation Period also includes invoices for contract reviewer time incurred during the Fourth Compensation Period, when the Debtors produced over a million pages worth of documents. Using contract reviewers resulted in substantial savings to the Debtors' estates over alternative forms of production. The electronic review platforms Applicant uses track the number of hours each contract reviewer is logged in and the average number of documents coded per hour for each reviewer. On a weekly basis, Applicant reviews the time cards submitted by the staffing agencies for each contract attorney and compares these against the reports produced by the review platform. This is used to verify that hours on time cards are actually worked and that the reviewer is being productive based on the number of documents reviewed per hour. If based on this review the time spent by the contract attorney appears unreasonable, the time card is rejected. The benchmarks for what is reasonable are based on both years of experience in conducting complex document reviews for Residential Capital and industry standards and are

adjusted based on the complexity of the documents which each reviewer is assigned to review. Applicant only bills Residential Capital for contract reviewer time that is approved through this process. All bills that are approved through this process are passed through at the actual cost invoiced by the applicable firm providing the contract reviewers.

18.     Copies of Applicant's computerized records of fees and expenses in the format specified by the Guidelines have been served on the Notice Parties with each of the Monthly Fee Applications and are attached hereto as <u>Exhibit E</u>. Applicant has marked on the attached copies of the Monthly Fee Applications the expenses for travel to New York that it has subsequently agreed to writeoff based on the Court's ruling at the December 16, 2013 hearing.

19.     There is no agreement or understanding between Applicant and any other person, other than partners and of counsel of the firm, for the sharing of compensation received for services rendered in the Chapter 11 Cases.

20.     The Monthly Fee Applications submitted by Applicant are subject to a 20% holdback (as is customary in this District) imposed by the Court on the allowance of fees. The aggregate amount of Applicant's holdback during the Fifth Compensation Period is $170,207.80 (the "**Fifth Holdback**"). In addition, as part of the Fourth Fee Order, the Court directed that $83,247.55 in compensation (the "**Fourth Holdback**") approved on an interim basis by the Court be withheld by the Debtors as part of the general withholding of 10% of allowed compensation for all professionals. Applicant respectfully requests, in connection with the relief requested herein, that the Court authorize the Debtors to satisfy the Fourth Holdback and the Fifth Holdback in connection with the allowance of Applicant's compensation on a final basis.

{00381093-1}                                    8

## DESCRIPTION OF SERVICES AND
## EXPENSES AND RELIEF REQUESTED

21. In general, Applicant has represented the Debtors in connection with the following aspects of the Chapter 11 Cases during the Fifth Compensation Period:

- Applicant completed the production of documents to the JSNs in connection with the two adversary proceedings and plan confirmation;

- Applicant assisted Morrison & Foerster LLP ("**Morrison & Foerster**") in preparing witnesses in the JSN phase I trial and for the plan confirmation hearing;

- Applicant provided Mr. Lipps to serve as a witness in support of both plan confirmation and the settlement with the National Credit Union Administration Board ("NCUAB");

- Applicant helped prepare former employee witnesses for depositions in non-stayed litigation against third parties that related to proofs of claim asserted against the Debtors; and

- Applicant worked with Morrison & Foerster to prepare and file lawsuits against correspondent lenders who had sold the Debtors loans that were securitized in the securitizations that gave rise to the various prepetition lawsuits and postpetition proofs of claim filed against the Debtors.

To provide an orderly and meaningful summary of the services rendered by Applicant on behalf of the Debtors during the Fifth Compensation Period, Applicant established, in accordance with the Guidelines and its internal billing procedures, separate billing matters in connection with the Chapter 11 Cases.[2] The following is a summary of the most significant professional services rendered by Applicant during the Fifth Compensation Period organized in accordance with Applicant's internal system of billing matters:

---

[2] Because almost all of CLL's services fit within the claims administration or litigation matter categories in the United States Trustee's standard list of matters, and to follow how the Debtors have historically tracked CLL's work, CLL has created specific matter numbers by particular litigation project. The categories are the same ones used in connection with the Applicant's prior applications, but with the addition of certain additional matters requested by the Debtors to track fees and expenses for particular litigation projects.

{00381093-1}                                9

**Securities Claims (932-058)**
Fees: $64,258.50 Total Hours: 251.00 hours

22. Applicant performed several services related to securities claims during the Fifth Compensation Period. A significant component of the Global Settlement was the way it handled the Debtors' significant exposure to pending securities claims. Because of his extensive familiarity with the claims, Mr. Lipps was selected to serve as a witness in support of the settlement of these claims both at the confirmation hearing and on the separate 9019 motion to approve the settlement of the claims of the NCUAB. Mr. Lipps and others at the Applicant spent significant time working on preparing his declaration and testimony in support of plan confirmation and the settlement with the National Credit Union Administrative Board. After the Debtors requested that Applicant create a special matter for plan confirmation, time related to his plan testimony was reported under that matter.

23. A second major issue that Applicant dealt with during the Fifth Compensation Period was that, until Ally and FHFA settled all of the ResCap related litigation, FHFA was deposing former employee witnesses of the Debtors in connection with its claims against Ally Financial and Ally Securities. This testimony could have significantly affected FHFA's then unresolved claims against the Debtors, so the Debtors had Applicant meet with Ally's counsel regarding the issues likely to arise in these depositions that were of concern to the Debtors and assisting in the preparation and defense of former employee witnesses. A third issue that Applicant dealt with under this billing matter during the Fifth Compensation Period was the final implementation of the settlement with New Jersey Carpenters.

**ResCap Discovery Issues (932-060)**
Fees: $353,957.00; Total Hours: 1,560.70 hours

24. Applicant used this matter for work on discovery projects that was not reported under another specific matter. The majority of Debtors' time in this matter during the Fifth

Compensation Period addressing issues relating to discovery in the various disputes with the Junior Secured Noteholders. Applicant spent substantial time finishing the document review related to the various discovery requests propounded by the Junior Secured Noteholders, including determining the search protocols, performing quality control, general management of the document review process, and responding to objections of the Junior Secured Noteholders. Because of Applicant's background with the Debtors' operations, familiarity with the documents produced to the Junior Secured Noteholders and previous work with certain key witnesses, Applicant spent substantial time assisting Morrison & Foerster in the preparation of witnesses for deposition by the Junior Secured Noteholders in Phase 1 of the JSN litigation. To help with these preparations, Applicant spent substantial time substantively analyzing produced documents to identify key materials. Applicant then drafted materials to help attorneys prepare key witnesses. Because of Applicant's familiarity with the documents and the Debtors' businesses and having worked with certain witnesses previously during the Examiner's investigation, Applicant also participated in the preparation sessions for certain witnesses for deposition in Phase I.

25. In connection with the Debtors' settlement with the New Jersey Carpenters class, the Debtors were required to produce loan files and certain emails to the plaintiffs, who are still in litigation with third-party underwriters on those transactions. Applicant spent substantial time dealing with these production obligations during the Fifth Compensation Period, including reviewing materials for relevance and privilege before they were produced. Applicant also assisted the Debtors in responding to certain third-party subpoenas during the Fifth Compensation Period.

{00381093-1}                                11

**Plan Confirmation (932-065)**
Fees: $250,934.50; Total Hours: 830.90 hours

26. At the request of the Debtors during the Fifth Compensation Period, Applicant established a special plan confirmation matter to track work Applicant did related to plan confirmation instead of reporting that time separately across securities, monoline or other matters used previously. Applicant performed a number of significant services for the Debtors in connection with plan confirmation:

- Mr. Lipps provided a significant affidavit discussing the securities and monoline proofs of claim that were being dealt with by the Plan and the impact of the plan's third party releases on pending or potential claims related to the Debtors' mortgage origination and servicing businesses.

- Applicant helped Morrison & Foerster with the preparation of witnesses who were being deposed in connection with plan confirmation. Because of the compressed scheduling for the plan confirmation deposition, Applicant also defended Ms. Westman when she was deposed by the Junior Secured Noteholders.

- Applicant helped prepare several witnesses for cross-examination at the plan confirmation hearing, including being primarily responsible for the preparation of Mr. Marano and Ms. Westman for cross-examination at the plan confirmation hearing.

- Applicant helped Morrison & Foerster deal with issues related to the Junior Secured Noteholders' claims regarding causes of action identified in the examiner's report. In connection with this effort, Applicant analyzed the expert reports of Raymond Lyons. Applicant then helped prepare counter arguments concerning the validity of the claims against Ally the Junior Secured Noteholders were asserting a lien on based on Applicant's work on the Examiner investigation.

- Applicant helped review and comment on the draft reports of Frank Sillman of Fortace in support of plan confirmation. Applicant had previously worked extensively with Mr. Sillman both on his report on the proposed RMBS settlement earlier in the cases and in prepetition litigation defending the Debtors on claims related to RMBS securitizations.

- Applicant helped comment on various court pleadings in support of plan-confirmation based on Applicant's previous work with monoline, trustee and securities claimants and Applicant's extensive involvement in the examiner investigation.

**Affirmative Claims Advice (932-067)**
Fees: $163,486.00; Total Hours: 666.60

27. During the Fifth Compensation Period, the Debtors asked Applicant to examine potential claims against certain third parties related to their roles in the Debtors' securitizations to try to recover some of liabilities that were settled as part of the Global Settlement. Applicant was requested to perform this analysis based on its years of experience with the Debtors and their businesses and the parties' rights under the various documents used in the Debtors' origination and securitization businesses.

28. The Debtors ultimately decided to pursue claims against certain of the correspondent lenders who had sold Debtor Residential Funding Company, LLC ("**RFC**") loans, which RFC then securitized in the transactions that gave rise to claims in these cases by monolines, investors, and/or indenture trustees. Applicant worked with Morrison & Foerster on investigating these potential claims and assisted in the filing of more than 75 cases in December 2013 asserting claims against these lenders based on defective loans they had sold to RFC. The Debtors also had Applicant discuss these potential claims with counsel to the Creditors' Committee prior to their being filed. For certain defendants where Morrison & Foerster had a conflict, Applicant was entirely responsible for investigating the claims and filing the lawsuits. Applicant continues to represent RFC in these cases.

29. The foregoing descriptions of services rendered by Applicant in specific areas are not intended to be exhaustive of the scope of Applicant's activities in the Chapter 11 Cases. The time records attached hereto as <u>Exhibit E</u> present more completely the work performed by Applicant in each billing category during the Fifth Compensation Period.

{00381093-1}                                    13

## FINAL APPROVAL OF THIS FINAL APPLICTION AND ALL PRIOR INTERIM APPLICATIONS IS REASONABLE AND APPROPRIATE AT THIS TIME

30. By this Application, Applicant is also requesting final approval of all of the compensation and reimbursement of expenses it had previously been awarded on an interim basis in these cases and the compensation for which it is requesting interim approval in this application. Applicant incorporates by reference each of the fee applications and supporting papers it previously filed with the Court. The details regarding the compensation and reimbursement of expenses that the Court previously approved on an interim basis are described in paragraphs 7-11 above. The amount requested on the cover sheet for final approval reflects the amount requested in this Application for the Fifth Compensation Period and the amounts previously allowed by the court on an interim basis in the First Compensation Order, the Second Compensation Order, the Third Compensation Order, and the Fourth Compensation Order. Attached hereto as <u>Exhibits F and G</u> are schedules setting out Applicant's fees by activity code and a billing summary by professional and paraprofessional for the Final Application Period. Attached hereto as <u>Exhibit H</u> is a schedule setting out Applicant's expenses by category for the Final Application Period.

## CONCLUSION

31. Applicant believes that the services rendered during the Fifth Compensation Period and the Final Application Period on behalf of the Debtors were reasonable and necessary within the meaning of Bankruptcy Code section 330. The expenses for which Applicant requests reimbursement were actual and necessary to the performance of Applicant's services for the Debtors. Applicant submits that based on this and its contributions to the Debtors' successful confirmation of a plan in these cases; the requested fees and expenses should be approved in full.

{00381093-1}    14

Applicant therefore requests an order: (i) approving interim compensation in the amount of $851,039.00 and interim reimbursement of expenses in the amount of $253,922.08;[3] (ii) approving final compensation in the mount of $6,163,425.00 and final reimbursement of expenses in the amount of $2,609,058.89; (iii) authorizing and directing payment of all portions of the final compensation and reimbursement of expenses which have not been paid; and (iv) granting such other and further relief as may be just and proper.

Dated: February 28, 2014

/s/ David A. Beck
Jeffrey A. Lipps (admitted *pro hac vice*)
lipps@carpenterlipps.com
Jennifer A.L. Battle
battle@carpenterlipps.com
David A. Beck (admitted *pro hac vice*)
beck@carpenterlipps.com
CARPENTER LIPPS & LELAND LLP
1540 Broadway, Suite 3710
New York, New York 10036
Phone: (212) 837-1110

*Special Litigation Counsel to the Debtors and Debtors in Possession*

---

[3] The rates charged for such expenses (i) are based on Applicant's policies used with the Debtors prior to these cases being filed; (ii) do not charge for certain expenses such as in house copying or phone calls which are chargeable under the Guidelines; and (iii) are calculated to compensate Applicant for only the actual costs of the expenses.

{00381093-1}  15