Hearing Date:          To Be Determined
Objection Deadline:   To Be Determined

SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Robert D. Nosek
Justin S. Krell

*Special Counsel for the*
*Official Committee of Unsecured Creditors*
*of Residential Capital, LLC, et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

In re:                                              Chapter 11
                                                    Case No. 12-12020 (MG)

RESIDENTIAL CAPITAL, LLC a/k/a
RESIDENTIAL CAPITAL CORPORATION, et al.             (Jointly Administered)

                              Debtors.
------------------------------------------------------------------x

**FOURTH AND FINAL APPLICATION OF SILVERMANACAMPORA LLP, SPECIAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM SEPTEMBER 1, 2013 THROUGH DECEMBER 16, 2013**

**SUMMARY SHEET PURSUANT TO THE UNITED STATES TRUSTEE GUIDELINES**

Name of Applicant:                          SilvermanAcampora LLP

Role in Case:                               Special Counsel to Official Committee of
                                            Unsecured Creditors

Retainer Paid:                              None

Application Period:                         September 1, 2013 to December 16, 2013

Fees Requested:                             $379,204.75

Expenses Requested:                         $10,700.73

Total Requested for Application Period:     $389,905.48

Prior Awards Requested:                     $785,654.47

Final Award Requested:                      $1,175,559.95

**FEE APPLICATION:**

| Names of Professionals and Paraprofessionals | Year Admitted | 2013 Rate | Fourth Interim Period 9/1/13 – 12/16/13 | | Total Compensation Period 10/25/12 – 12/16/13 | |
|---|---|---|---|---|---|---|
| | | | Hours | Total for Application | Hours | Total for Compensation Period |
| Anthony C. Acampora, Esq., Partner | 1984 | $595.00 | 4.50 | $2,677.50 | 24.50 | $14,577.50 |
| Robert J. Ansell, Esq., Partner | 1994 | $495.00 | N/A | N/A | 0.30 | $148.50 |
| Ronald J. Friedman, Esq., Partner | 1997 | $550.00 | 26.85 | $14,767.50 | 145.60 | $79,360.00 |
| Gerard R. Luckman, Esq., Partner | 1994 | $550.00 | 0.90 | $495.00 | 53.20 | $29,260.00 |
| Peter Marullo, Esq., Partner | 1987 | $550.00 | N/A | N/A | 1.90 | 1,020.00 |
| Kenneth P. Silverman, Esq., Partner | 1981 | $650.00 | N/A | N/A | 2.70 | $1,755.00 |
| Jack B. Friedman, Esq., Counsel | 1969 | $475.00 | N/A | N/A | 3.30 | $1,567.50 |
| Robert D. Nosek, Esq., Counsel | 1999 | $425.00 | 162.20 | $68,935.00 | 456.18 | $193,876.50 |
| Randy J. Schaefer, Esq., Counsel | 1992 | $425.00 | 14.00 | $5,950.00 | 14.00 | $5,950.00 |
| Sheryl P. Giugliano, Esq., Associate | 2009 | $325.00 | N/A | N/A | 33.10 | $10,757.50 |
| Jessi L. Kleinman, Esq., Associate | 2013 | $200.00 | N/A | N/A | 16.30 | $3,260.00 |
| Justin Krell, Esq., Associate | 2007 | $340.00 | 187.50 | $60,588.00 | 725.60 | $242,960.00 |
| Cooper J Macco, Esq., Associate | 2013 | $200.00 | 0.20 | $40.00 | 55.80 | $11,160.00 |
| Brian Powers, Esq., Associate | 2013 | $200.00 | 387.90 | $73,920.00 | 1492.40 | $286,980.00 |
| Christopher J. Rubino, Esq., Associate | 2013 | $200.00 | 118.80 | $23,760.00 | 339.80 | $67,960.00 |
| Brett S. Silverman, Esq., Associate | 2001 | 340 | N/A | N/A | 79.60 | $27,064.00 |
| Jonah W. Brassard, Law Clerk | N/A | $125.00 | 39.90 | $4,987.50 | 39.90 | $4,987.50 |

| Names of Professionals and Paraprofessionals | Year Admitted | 2013 Rate | Fourth Interim Period 9/1/13 – 12/16/13 | | Total Compensation Period 10/25/12 – 12/16/13 | |
|---|---|---|---|---|---|---|
| | | | Hours | Total for Application | Hours | Total for Compensation Period |
| Matthew P. Gizzo, Law Clerk | N/A | $125.00 | 102.70 | $12,837.50 | 102.70 | $12,837.50 |
| Nadia Y. Khan, Law Clerk | N/A | $125.00 | 167.15 | $20,893.75 | 167.15 | $20,893.75 |
| Terrence M. McKelvey, Law Clerk | N/A | $165.00 | N/A | N/A | 12.10 | $1,996.50 |
| Daniel P. Rocco, Law Clerk | N/A | $125.00 | 240.20 | $30,025.00 | 240.20 | $30,025.00 |
| Matthew W. Silverman, Law Clerk | N/A | $125.00 | 147.10 | $18,387.50 | 147.10 | $18,387.50 |
| Sara Greenberg, Paralegal | N/A | $175.00 | N/A | N/A | 19.30 | $3,115.00 |
| Berlinda Pierre-Louis, Paralegal | N/A | $195.00 | N/A | N/A | 83.80 | $16,341.00 |
| Lynne M. Manzolillo, Paralegal | N/A | $195.00 | 11.40 | $331.50 | 45.10 | $6,864.00 |
| Andres Nunez, Paralegal | N/A | $195.00 | N/A | N/A | 0.20 | $39.00 |
| Sophia Perna, Paralegal | N/A | $195.00 | 80.50 | $15,697.50 | 260.60 | $50,661.00 |
| Linda S. Tumino, Paralegal | N/A | $195.00 | N/A | N/A | 2.50 | $487.50 |
| Christine M. Wittneben, Paralegal | N/A | $195.00 | N/A | N/A | 3.00 | $585.00 |
| Deanna Caliendo, Legal Assistant | N/A | $110.00 | N/A | N/A | 0.70 | $77.00 |
| Melissa Cohen, Legal Assistant | N/A | $110.00 | 0.50 | $55.00 | 1.30 | $143.00 |
| Lyndsey S. Collins, Legal Assistant | N/A | $95.00 | N/A | N/A | 64.20 | $6,099.00 |
| Gina Maria Damoulis, Legal Assistant | N/A | $110.00 | N/A | N/A | 0.80 | $88.00 |
| Carol Ann Gallo-Russo, Legal Assistant | N/A | $110.00 | 0.10 | $11.00 | 0.10 | $11.00 |
| Gina F. Giglio, | N/A | $95.00 | N/A | N/A | 19.00 | $1,805.00 |

BPOWERS/1470897.1/062429

| Names of Professionals and Paraprofessionals | Year Admitted | 2013 Rate | Fourth Interim Period 9/1/13 – 12/16/13 | | Total Compensation Period 10/25/12 – 12/16/13 | |
|---|---|---|---|---|---|---|
| | | | Hours | Total for Application | Hours | Total for Compensation Period |
| Legal Assistant | | | | | | |
| Joseph Marino, Legal Assistant | N/A | $95.00 | 231.90 | $22,030.50 | 231.90 | $22,030.50 |
| Christine M. Tiso, Legal Assistant | N/A | $110.00 | 0.20 | $22.00 | 0.20 | $22.00 |
| | | | | | | |
| **Voluntary Fee Reduction:**[1] | | | **4.20** | **$733.30** | | |
| ATTORNEY TOTALS WITH BLENDED HOURLY RATE FOR APPLICATION PERIOD | | $234.37 | 1213.59 | $284,430.00 | | |
| ALL TIMEKEEPER TOTALS WITH BLENDED HOURLY RATE FOR APPLICATION PERIOD | | $193.18 | 1963.00 | $379,204.75 | | |
| **TOTAL FEES REQUESTED TO BE AWARDED** | | | | **$379,204.75** | | **$1,160,460.25** |
| **TOTAL EXPENSES REQUESTED TO BE AWARDED** | | | | **$10,700.73** | | **$15,099.70** |
| **TOTAL FEES AND EXPENSES REQUESTED TO BE AWARDED** | | | | **$389,905.48** | | **$1,175,559.95** |

---

[1]   After further review of Applicant's time records, and to ensure compliance with the UST Guidelines, Applicant agrees to voluntarily reduce its fees and expenses as described on **Exhibit D** annexed to the Application.

BPOWERS/1470897.1/062429

| | |
|---|---|
| Hearing Date: | To Be Determined |
| Objection Deadline: | To Be Determined |

SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Robert D. Nosek
Justin S. Krell

*Special Counsel for the*
*Official Committee of Unsecured Creditors*
*of Residential Capital, LLC, et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC a/k/a | |
| RESIDENTIAL CAPITAL CORPORATION, et al. | (Jointly Administered) |
| Debtors. | |

------------------------------------------------------------------x

**FOURTH AND FINAL APPLICATION OF**
**SILVERMANACAMPORA LLP, SPECIAL COUNSEL**
**TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR**
**ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES**
**RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY**
**INCURRED FROM SEPTEMBER 1, 2013 THROUGH DECEMBER 16, 2013**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

SilvermanAcampora LLP ("**Applicant**"), special counsel to the Official Committee of

Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors in

possession (collectively, the "**Debtors**") in the above-referenced chapter 11 cases, (these

"**Chapter 11 Cases**"), respectfully submits its fourth and final application for allowance of

compensation and reimbursement of expenses (this "**Application**") pursuant to the provisions of

sections 330(a) and 331 of Title 11, United States Code (the "**Bankruptcy Code**"), Rule 2016 of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), the

1

United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "**UST Guidelines**"), and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 797] entered in these Chapter 11 Cases (the "**Interim Compensation Order**"), and respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## BACKGROUOND

3.      On May 14, 2012 (the "**Petition Date**"), the Debtors filed separate voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On May 16, 2012, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the Committee by selecting the following nine parties to serve as members of the Committee: (i) Wilmington Trust, N.A.; (ii) Deutsche Bank Trust Company Americas; (iii) The Bank of New York Mellon Trust Company, N.A.; (iv) MBIA Insurance Corporation; (v) Rowena L. Drennen; (vi) AIG Asset Management (U.S.), LLC; (vii) U.S. Bank National Association; (viii) Allstate Life Insurance Company; and (ix) Financial Guaranty Insurance Corporation.

5.      On November 16, 2012, Applicant filed an Application of the Official Committee of Unsecured Creditors for Order Authorizing and Approving the Retention of

2

SilvermanAcampora LLP as Special Counsel to the Official Committee of Unsecured Creditors *Nunc Pro Tunc* to October 25, 2012 [Docket No. 2216] (the "**Retention Application**"). On November 30, 2012, this Court entered the Order Authorizing and Approving the Retention of SilvermanAcampora LLP as Special Counsel to the Official Committee of Unsecured Creditors *Nunc Pro Tunc* to October 25, 2012 [Docket No. 2315] (the "**Retention Order**"). Pursuant to the Retention Order, Applicant represented the Committee in connection with issues and matters relating to the Debtors' current and former borrowers (collectively, the "**Borrowers**").

## PRIOR ALLOWANCES OF INTERIM COMPENSATION

6.      On March 14, 2013, Applicant filed its first interim application (the "**First Interim Fee Application**") for the allowance of compensation for professional services rendered and for reimbursement of actual and necessary expenses incurred from October 25, 2012 through December 31, 2012 (the "**First Interim Fee Period**"). In the First Interim Fee Application, Applicant sought the interim allowance of fees in the aggregate amount of $59,525.00 (the "**First Interim Fees**"), and the interim allowance of the reimbursement for actual and necessary expenses in the amount of $129.32 (the "**First Interim Expenses**" and, together with the First Interim Fees, the "**First Interim Award**").

7.      By this Court's order dated April 23, 2013, the First Interim Award was allowed in full (the "**First Interim Fee Order**"). Pursuant to the First Interim Fee Order, Applicant received payment from the Debtors for (i) the full amount of the First Interim Expenses, and (ii) the First Interim Fees which amount was net of a 10% holdback.

8.      On August 7, 2013, Applicant filed its second interim application (the "**Second Interim Fee Application**") for the allowance of compensation for professional services rendered and for reimbursement of actual and necessary expenses incurred from January 1, 2013 through April 30, 2013 (the "**Second Interim Fee Period**"). In the Second Interim Fee Application,

3

Applicant sought the interim allowance of fees in the aggregate amount of $315,950.00 (the
"**Second Interim Fees**"), and the interim allowance of the reimbursement for actual and
necessary expenses in the amount of $1,613.51 (the "**Second Interim Expenses**" and, together
with the Second Interim Fees, the "**Second Interim Award**").

9.      By this Court's order dated September 23, 2013, the Second Interim Award was
allowed in a reduced amount, as agreed upon between Applicant and the U.S. Trustee (the
"**Second Interim Fee Order**").  Pursuant to the Second Interim Fee Order, Applicant received
payment from the Debtors for (i) the Second Interim Expenses in the amount of $1,448.11, and
(ii) the Second Interim Fees in the amount of $300,092.50, which amount was net of a 10%
holdback.

10.     On November 18, 2013, Applicant filed its third interim application (the "**Third
Interim Fee Application**") for the allowance of compensation for professional services rendered
and for reimbursement of actual and necessary expenses incurred from May 1, 2013 through
August 31, 2013 (the "**Third Interim Fee Period**"). In the Third Interim Fee Application,
Applicant sought the interim allowance of fees in the aggregate amount of $422,933.50 (the
"**Third Interim Fees**"), and the interim allowance of the reimbursement for actual and necessary
expenses in the amount of $2,821.54 (the "**Third Interim Expenses**" and, together with the
Third Interim Fees, the "**Third Interim Award**").

11.     By this Court's order dated December 26, 2013, the Third Interim Award was
allowed in a reduced amount, as agreed upon between Applicant and the U.S. Trustee (the
"**Third Interim Fee Order**").  Pursuant to the Third Interim Fee Order, Applicant received
payment from the Debtors for (i) the Third Interim Expenses in the amount of $2,821.54, and (ii)
the Second Interim Fees in the amount of $421,638.00, which amount was net of a 10%
holdback.

4

12.     The statutory predicate for the relief requested herein is Bankruptcy Code sections 330 and 331, Rule 2016 of the Bankruptcy Rules, and Rule 2016-1 of the Local Bankruptcy Rules.

## APPLICANT'S FEE STATEMENTS

13.     Applicant maintains computerized records of the time spent by all of Applicant's attorneys and paraprofessionals in connection with the representation of the Committee.  Subject to redaction for attorney-client privilege, Applicant has submitted monthly fee statements (the "**Monthly Fee Statements**") to the Notice Parties (as that term is defined in the Interim Compensation Order) in the format specified by the UST Guidelines, allowing each of the Notice Parties an opportunity to review and object to the Monthly Fee Statements.[1]

14.     During the Application Period (defined below), Applicant provided the Notice Parties with the following Monthly Fee Statements:

- For September 1, 2013 through September 30, 2013 – fees of $149,061.50 and expenses of $1,885.35.

- For October 1, 2013 through October 31, 2013 – fees of $98,979.75 and expenses of $5,318.17.74.

- For November 1, 2013 through November 30, 2013 – fees of $132,427.00 and expenses of $2,706.74.

- For December 1, 2013 through December 16, 2013 – fees of $28,577.00 and expenses of $1,523.77.

---

[1]   To date, Applicant has not received any objections to the Monthly Fee Statements.

BPOWERS/1334091.2/062429

## SUMMARY OF REQUESTED COMPENSATION
## AND REIMBURSEMENT OF EXPENSES

15.     This Application covers the period from September 1, 2013 through and including December 16, 2013 (the "**Application Period**") for services rendered on behalf of the Committee, and seeks (a) allowance of compensation for professional services rendered in the amount of $379,204.75[2] for 1963.00 professional hours devoted to representation of the Committee in these Chapter 11 Cases during the Application Period; (b) allowance of and reimbursement for all expenses incurred during the Application Period in connection with the rendition of such services in the aggregate amount of $10,700.73; (c) final allowance of the First Interim Award, the Second Interim Award, and the Third Interim Award, for a total final allowance of fees and expenses in the aggregate amount of $1,175,559.95;[3] and (d) a release of all prior holdbacks.

16.     Applicant is a firm of twenty-six (26) attorneys, concentrating in the practice of, among other areas, bankruptcy and insolvency related matters.  In this regard, Applicant has extensive experience in representing creditors' committees, debtors, creditors, and trustees in bankruptcy proceedings before the Bankruptcy Courts in both the Southern and Eastern Districts of New York.  As a result of Applicant's extensive experience, Applicant submits that the services it rendered in these Chapter 11 Cases, as set forth below, were efficient, economical, and effective.

17.     All services for which compensation and reimbursement of expenses are

---

[2]    After further review of Applicant's time records, and to ensure compliance with the UST Guidelines, Applicant agrees to voluntarily reduce its fees and expenses as described on **Exhibit D** annexed hereto.

[3]    Pursuant to the Interim Compensation Order, Applicant has received interim payment on account of eighty percent (80%) of accrued fees and one hundred percent (100%) of accrued expenses for the Application Period, totaling Three Hundred Fourteen Thousand Sixty Four and 53/100 ($314,064.53) Dollars.  Accordingly, a balance of Seventy Five Thousand Eight Hundred Forty and 95/100 ($75,840.95) Dollars remains outstanding with respect to the Application Period.  Additionally, due to a 10% holdback on fees in Third Interim Award, an outstanding balance of $42,163.80 remains with respect to prior application periods.

6

requested by Applicant were performed for, and on behalf of, the Committee.  Applicant has

annexed to this Application as **Exhibit A**, a printout of the actual time recorded, the services

rendered, the date the services were rendered, and the names of the individuals performing the

services by Applicant during the Application Period on behalf of the Committee (the "**Time

Records**").[4]  The Time Records list the services performed by Applicant's members, associates,

paraprofessionals, and legal assistants.  The Time Records also set forth the dates when such

services were rendered, the nature of the services performed and the party who performed the

services, the time expended for such services, and the amount billed for such services.  The Time

Records are created contemporaneously with the rendition of the services and reflect the

Applicant's recorded time for the legal services rendered on behalf of the Committee.

18.     The billing rate for each of the persons referenced in the Time Records is equal to

the billing rate for such persons' time for similar services rendered to clients in connection with

bankruptcy and non-bankruptcy matters.  Such hourly rates range from $200 to $650 for

attorneys and $110 to $195 for paraprofessionals.

19.     Allowance of compensation in the amount requested herein would result in a

blended hourly billing rate of approximately $193.18 for the Application Period (based on

1963.00 recorded hours at Applicant's regular billing rates in effect at the time of performance of

such services).  Applicant believes that these rates constitute market rates and are equal to or less

than the rates charged by professionals with similar experience.  No premium or bonus is sought

by this Application.

20.     There is no agreement or understanding between Applicant and any other person,

---

[4]   A schedule specifying the categories of fees reflecting all time entries and fees during the Application Period and
the total amount for such category is included with **Exhibit B**.  A schedule specifying the categories of expenses for
which Applicant is seeking reimbursement and the total amount for each such expense category is included with
**Exhibit A**.

BPOWERS/1334091.2/062429

other than the Firm's partners, for the sharing of compensation to be received for the services rendered in this case.

## COMPLIANCE WITH THE UST GUIDELINES

21.     The Application complies with the UST Guidelines as set forth in the Certification of Ronald J. Friedman, annexed hereto as **Exhibit C**.

22.     In accordance with the UST Guidelines, Applicant has divided its time records and expenditures into separate categories.

## PROFESSIONAL SERVICES RENDERED DURING APPLICATION PERIOD

23.     In this Application, Applicant seeks (a) allowance of compensation for professional services rendered in the amount of  $379,204.75 for 1963.00 professional hours devoted to representation of the Committee in these Chapter 11 Cases during the Application Period; (b) allowance of reimbursement for all expenses incurred during the Application Period in connection with the rendition of such services in the aggregate amount of $10,700.73; (c) final allowance of the First Interim Award, the Second Interim Award, and the Third Interim Award, for a total final allowance of fees and expenses in the amount of $1,175,559.95; and (d) a release of all prior holdbacks.

24.     During the Application Period, Applicant performed services for the Committee including, among other things: (i) analyzing all claims filed by Borrowers that had yet to be adjudicated (the "**Remaining Borrower Claims**"), in connection with performing an analysis for the Committee on the necessity of a Borrower Trust True-Up (defined herein); (ii) analyzing the Debtors' proposed objections to proofs of claim filed by Borrowers against the Debtors (the "**Individual Borrower Claims**") pursuant to the Borrower Claims Procedures Order; (iii) analyzing the allegations contained in, and facilitating the resolutions of, certain adversary proceedings filed by Borrowers against the Debtors (the "**Borrower Adversary Proceedings**");

8

(iv) communicating with Borrowers regarding specific Borrower concerns in relation to the Debtors' cases, through the creation and operation of a dedicated Borrower inquiry hotline (the "**Borrower Hotline**"); (v) participating in the drafting of the Borrower Trust Agreement (defined herein) filed as a supplement to the Debtors' and Committee's Joint Plan of Reorganization (the "**Plan**") and other Plan-related documents containing language relating to Borrowers; and (vi) appearing on behalf of the Committee at multiple hearings on the Plan, Borrower Adversary Proceedings, Borrower Claims Objections, and other Borrower-related matters.

25.      The summary that follows does not constitute a complete recitation of all services which were performed by Applicant during the Application Period and serves only to summarize those services of major importance which required Applicant's special attention, efforts, and skill.

## I.   <u>Case Administration</u>

26.      This category includes Applicant's time entries relating to the general administration of these chapter 11 cases as well as Applicant's entries related to its operation of the Borrower Hotline.

27.      Since its retention, and as one of the major services performed on behalf of the Committee throughout these chapter 11 cases, Applicant has created and operated a dedicated, toll-free hotline for Borrower inquiries related to the Debtors' bankruptcy cases.  The phone number for the Borrower Hotline is prominently published on the website of the Debtors' claims agent, as well as Applicant's website, and has been included in numerous notices sent to Borrowers.  In addition, Borrower inquiries directed to many parties related to the Debtors' cases, including the Court, are referred to the Borrower Hotline.  During the Application Period, Applicant responded to nearly 7,000 inquiries from Borrowers (the "**Borrower Hotline Inquiries**").

9

28.    Although Applicant was not able to provide Borrowers with legal advice, Applicant provided Borrowers with information regarding the Debtors' bankruptcy proceedings and other related information.  During the Application Period, the Borrower Hotline Inquiries generally consisted of, among other things, questions relating to certain notices received by all Borrowers, questions regarding the status of the claims administration process in the Debtors cases, and requests for clarification regarding general bankruptcy procedures.

29.    Specifically, the phone number for the Borrower Hotline was prominently placed on the notices that borrowers received regarding the approval of the Debtors' and Committee's joint disclosure statement, procedures for voting on the Debtors' and Committee's joint plan of reorganization (the "**Plan**"), and the various deadlines relating to confirmation of the Plan (together, the "**Plan Notices**"), and the majority of the Borrower Hotline Inquiries related to the Plan Notices.  Although the Plan Notices were drafted so as to minimize confusion for Borrowers, numerous Borrowers had additional concerns relating to the Debtors' cases and how confirmation of the Plan would affect Borrowers.  Applicant responded to each of the Borrower Hotline Inquiries relating to the Plan Notices, allaying Borrower concerns over, among other things, the status of their mortgage loans.

30.    Applicant submits that the operation of the Borrower Hotline substantially benefitted the estate by alleviating the strain on both the Court's and the Debtors' resources in dealing with motions, letters, and other documents that such Borrowers may have otherwise filed on the Court's docket if such Borrowers did not have the Borrower Hotline as a resource to address their questions, concerns, and/or lack of understanding regarding the Debtors' cases and the bankruptcy process.  Applicant believes that, by operating the Borrower Hotline, Applicant has reduced the administrative burden on the Debtors and the Court for having to respond to Borrower such filings.

BPOWERS/1334091.2/062429

## II.  Claims Administration

Borrower Trust True-Up Analysis

31.     Pursuant to the Plan, the Debtors and the Committee were required to submit to the Court a recommendation regarding the necessity for a "true-up" to the trust established by the Plan for the benefit of Borrower claimants (the "**Borrower Trust**") in order to ensure that the Borrower Trust would be capable of distributing the proper percentage payout on allowed Individual Borrower Claims (the "**Borrower Trust True-Up**").

32.     In order to make this recommendation, Applicant, on behalf of the Committee, performed an in-depth analysis of Debtors' exposure for the Individual Borrower Claims that had yet to be adjudicated by the Court.  As part of this analysis, Applicant analyzed the allegations contained in the proof of claim and attached documents, information and documents supplied by the Borrower in response to a Request Letter (defined below), and, to the extent possible, the dockets and filings in the Borrower's underlying litigation with the Debtors.

33.     As a result of, among other things, Applicant's analysis, the Debtors and Committee informed the Court that no Borrower Trust True-Up was required.

Borrower Claims Objections Procedures Order

34.     As described more fully in Applicant's previous applications to this Court, in order to ensure that Borrowers were given an opportunity to support the allegations asserted in Individual Borrower Claims, Applicant worked closely with the Debtors in drafting the claims procedures applicable to Individual Borrower Claims (the "**Borrower Claims Procedures**"). On March 21, 2013, the Court entered an order establishing the Borrower Claims Procedures (the "**Borrower Claims Procedures Order**").

35.     As a result of Applicant's efforts and pursuant to the Borrower Claims Procedures Order, the Debtors sent nearly 1,800 letters to Borrowers requesting additional information and

11

documentation to support their individual Borrower Claims (collectively, the "**Request Letters**").  Applicant also worked closely with the Debtors and the Debtors' professionals to analyze the numerous responses to the Request Letters (the "**Borrower Responses**"), including the supporting documentation provided by Borrowers, in order to determine the validity of each Individual Borrower Claim and whether each Individual Borrower Claim was supported by sufficient information.

36.    The Borrower Claims Procedures Order requires that prior to the Debtors filing objections to Individual Borrower Claims on certain enumerated grounds (the "**Borrower Claims Objections**"), including insufficient documentation and no liability grounds, the Debtors were required to consult with Applicant and, after such consultation, Applicant would advise the Debtors whether it agreed as to the basis of the objection.  Accordingly, Applicant expended considerable time during the Application Period reviewing and approving the Debtors' recommendations with respect to the Borrower Claims Objections.  That review required Applicant to reconcile the Debtors' analysis of each Individual Borrower Claim with Applicant's analysis of that Individual Borrower Claim and the supporting information provided by the Borrower in response to the Request Letters (if any) to determine whether that Individual Borrower Claim should be subject to the recommended objection.  Additionally, Applicant participated in numerous teleconferences with the Debtors and the Debtors' professionals regarding the strategy for Borrower Claims Objections and the various issues arising in relation to Borrower Claims Objections.

37.    As the Court is aware, as a result of Applicant's efforts, pursuant to the Borrower Claims Procedures Order, prior to the effective date of the Plan, the Debtors filed 27 omnibus Borrower Claims Objections and numerous Borrower Claims Objections to Individual Borrower Claims and the Borrower Trust continues to do so.

BPOWERS/1334091.2/062429

<u>Communications with Borrowers Regarding Claims Objections</u>

38.     On behalf of the Committee, and often at the Court's direction, Applicant reached out to all Borrowers that were appearing *pro se* and filed responses to the Debtors' Borrower Claims Objections (the "**Responding Borrowers**").

39.     Applicant provided information to the Responding Borrowers regarding, among other things: (i) the purpose of the specific Borrower Claims Objection relevant to their claim; (ii) the process for the resolution of Borrower Claims Objections established by the Bankruptcy Code and the Borrower Claims Procedures Order; and (iii) the interactions between the Borrower and the Court at certain hearings on Borrower Claims Objections.

40.     Additionally, Applicant answered numerous types of questions posed by the Responding Borrowers relating to the Borrower Claims Objections.  To the extent possible, Applicant attempted to resolve the Borrower Claims Objections by informing Borrowers of any potential deficiencies in their Individual Borrower Claim, explaining the Debtors' rationale for the Borrower Claims Objection, and facilitating adjournments of hearings on the Borrower Claims Objections to provide Borrowers with additional time to properly respond or provide supporting documents.  Applicant also communicated to the Debtors any new information acquired by Applicant from the Borrowers regarding the Individual Borrower Claims.

41.     Through this process, Applicant was able to facilitate numerous resolutions to Borrower Claims Objections, including settlements and withdrawals of Individual Borrower Claims.  Moreover, Applicant's efforts allowed numerous Borrowers the opportunity to appear telephonically at hearings on Borrower Claims Objections, providing the Borrower with the opportunity to defend against the Borrower Claims Objections and assisting with the smooth administration of the Individual Borrower Claims.

42.     Finally, at the Court's direction, Applicant prepared and filed an in-depth

BPOWERS/1334091.2/062429

memorandum of law concerning whether various claims for the wrongful denial of a loan modification have been recognized under federal law and the laws of numerous states and, when recognized, the factors associated with those claims (the "**Loan Modification Claim Memorandum**").  The Loan Modification Claim Memorandum examined several different causes of action that borrowers have alleged against mortgage originators and mortgage servicers for the wrongful denial of a loan modification, explaining the Committee's position regarding the viability of each.  Applicant submits that the Loan Modification Claim Memorandum has assisted the Debtors, the Court, and Borrowers in the efficient administration of the Borrower Claims Objections.

### III. Litigation

43.    As part of its representation of the Committee, and at the request of the Debtors, Applicant has endeavored to communicate with the plaintiffs in the Borrower Adversary Proceedings in an effort to facilitate amicable resolutions of the Borrower Adversary Proceedings.  To further those efforts, Applicant analyzed the pleadings filed in each Borrower Adversary Proceeding and investigated the veracity of the allegations contained therein.

44.    On March 21, 2013, the Court entered an order approving certain borrower adversary procedures (the "**Borrower Adversary Procedures Order**").  Pursuant to the Borrower Adversary Procedures Order, Applicant has participated in several Initial Conferences (as defined in the Borrower Adversary Procedures Order) intended to facilitate communication between the parties to the Borrower Adversary Proceedings.  Applicant has also filed several joint status reports in various Borrower Adversary Proceedings in compliance with the Borrower Adversary Procedures Order.

45.    Additionally, throughout the Application Period, Applicant participated in weekly conference calls with Debtors' counsel and Committee counsel to discuss, among other

14

Borrower-related matters, the status of, and potential resolutions to, pending Borrower Adversary Proceedings. Applicant also attended several hearings during the Application Period related to Borrower Adversary Proceedings.

46.    As the Court is aware, because of Applicant's assistance in accordance with the Borrower Adversary Procedures Order, several of the Borrower Adversary Proceedings have been resolved.

### IV.  Plan / Disclosure Statement

Borrower Trust Agreement

47.    Pursuant to the Plan, the Borrower Trust was established and funded to provide efficient resolution of and distribution on account of Borrower Claims. On behalf of the Committee, Applicant assisted in drafting and revising the agreement establishing the Borrower Trust (the "**Borrower Trust Agreement**") that was filed as part of a supplement to the Plan. Additionally, Applicant participated in several conferences regarding the Borrower Trust Agreement, both in person and telephonically.

Borrower Plan Objections

48.    As the Court is aware, several Borrowers filed objections to the Plan (the "**Borrower Plan Objectors**"). On behalf of the Committee, Applicant reached out to each of the Borrower Plan Objectors in an attempt to resolve their objections prior to the hearing on confirmation of the Plan (the "**Plan Confirmation Hearing**").

49.    In its communications with the Borrower Plan Objectors, Applicant explained the key provisions of the Plan relating to Borrowers, and informed the Borrower Plan Objectors regarding the allegations that each made in their specific objection. Additionally, Applicant worked with the Debtors in order to investigate the claims made by the Borrower Plan Objectors and to resolve those issues prior to the Plan Confirmation Hearing.

15

50.    As a result of Applicant's efforts, more than half of the Borrower Plan Objectors withdrew their objections prior to the Plan Confirmation hearing.

51.    Additionally, Applicant attended every day of the Plan Confirmation Hearing as well as two status conferences on Borrower objections to the Plan, which were held prior to the Plan Confirmation hearing.

## LEGAL STANDARD

52.    The allowance of interim compensation for services rendered and reimbursement of expenses incurred in bankruptcy cases is provided for in Bankruptcy Code §331:

> [A] debtor's attorney, or any professional person…may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered…as is provided under section 330 of this title.

11 U.S.C. §331.

53.    Bankruptcy Code §330 provides that a court may award a professional employed under Bankruptcy Code §327 "reasonable compensation for actual necessary services rendered…and reimbursement for actual, necessary expenses." 11 U.S.C. §330(a)(1). Bankruptcy Code §330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A)    the time spent on such services;
> (B)    the rates charged for such services;
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed;

16

BPOWERS/1334091.2/062429

(E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3).  The Congressional intent and policy expressed in Bankruptcy Code §330 is to provide for adequate compensation to continue to attract qualified and competent practitioners to bankruptcy cases.

54.    The "lodestar" method of fee calculation developed by the Third Circuit is the method used to determine a "reasonable" attorney fee in all the federal courts, including the bankruptcy courts in this Circuit.  *In re Cena's Fine Furniture, Inc.*, 109 B.R. 575, 581 (E.D.N.Y. 1990) (*citing, Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973)).  *Accord, In re Poseidon Pools of America, Inc.*, 216 B.R. 98, 100 (E.D.N.Y. 1997); *In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13, 21-22 (Bankr. S.D.N.Y. 1991).

55.    In determining the reasonableness of the services for which compensation is sought, the Court should note "that the appropriate perspective for determining the necessity of the activity should be prospective: hours for an activity or project should be disallowed only where a Court is convinced it is readily apparent that no reasonable attorney should have undertaken the activity or project or where the time devoted was excessive."  *Id.* at 23; *In re Cenargo Int'l PLC*, 294 B.R. 571, 595-96 (Bankr. S.D.N.Y. 2003).

56.    The Applicant is retained in these Chapter 11 Cases pursuant to Bankruptcy Code §327(a), on terms and conditions providing that Applicant shall be compensated in accordance with its normal hourly rates and reimbursed in accordance with its normal reimbursement policies, subject to guidelines established by this Court and the U.S. Trustee. The reasonableness

17

of the terms of Applicant's retention is evident in comparison to the terms of comparable firms practicing in the Southern District of New York.

57.    Applicant respectfully submits that the services for which it seeks allowance of compensation are necessary for and beneficial to the Committee's supervision of the Debtors' cases, and that the requested fees and charges are reasonable in light of the intricacies of these Chapter 11 Cases and the nature, extent, and value of Applicant's services and expenses to the Committee, the Debtors' estates, and all parties in interest.  Thus, approval of the compensation sought in this Application is warranted.

58.    No previous application or motion for the relief requested herein has been made to this or any other Court.

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]**

BPOWERS/1334091.2/062429

**WHEREFORE,** Applicant seeks the entry of an order: (i) approving its fourth and final fee application, and awarding and authorizing a final award of $1,175,559.95, as follows (a) compensation for professional services rendered during the Application Period in the amount of $379,204.75 for 1963.00 professional hours devoted to representation of the Committee in these cases, (b) reimbursement of all expenses incurred during the Application Period in connection with the rendition of such services in the aggregate amount of $10,700.73, (c) final approval of the First Interim Award, the Second Interim Award, and the Third Interim Award, for a total final award of $1,175,559.95; and (d) a release of all prior holdbacks; and (ii) granting Applicant such further relief as this Court may deem proper.

Dated: Jericho, New York
      March 3, 2014                       SILVERMANACAMPORA LLP

                                      By:     *s/ Ronald J. Friedman*
                                              Ronald J. Friedman
                                              Member of the Firm
                                              100 Jericho Quadrangle, Suite 300
                                              Jericho, New York 11753
                                              (516) 479-6300
                                              RFriedman@SilvermanAcampora.com

                                              *Special Counsel for the Official Committee*
                                              *of Unsecured Creditors of*
                                              *Residential Capital, LLC, et al*

19