**Hearing Date and Time: June 18, 2014 (time TBD)**
**Objection Date and Time: June 2, 2014 (time TBD)**

James Gadsden
CARTER, LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10005
Telephone: (212) 238-8607
Facsimile: (212) 732-3232
e-mail: gadsden@clm.com

*Consultant to the Official Committee of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————x
                                            :
In re                                       :        Chapter 11
                                            :
RESIDENTIAL CAPITAL, LLC *et al.*,          :
                                            :        Case No.  12-12020 (MG)
             Debtors.                       :
                                            :        Jointly Administered
                                            :
————————————————————————x

## FIRST AND FINAL APPLICATION OF CARTER LEDYARD & MILBURN LLP, CONSULTANT TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR FINAL ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED AS A CONSULTANT TO THE COMMITTEE

7391711.3

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE
GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION
AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330**

| | |
|---|---|
| **Name of Applicant** | Carter Ledyard & Milburn LLP |
| **Authorized to Provide Professional Services to:** | Official Committee of Unsecured Creditors |
| | |
| **Current Application:** | |
| • Retention Period | August 21, 2013 through November 20, 2013 |
| | |
| Total Fees Requested for the Retention Period | $115,101.75 |
| Total Expenses Requested for the Retention Period | $707.01 |
| Total Amount Requested for the Retention Period | $115,808.76 |
| | |
| Total Post-Retention Fee Application Amounts Requested | $6,000.00 |
| | |
| **Total Compensation Period Amounts Requested:** | $121,808.76 |

This is an/a ☐ Interim ☒ Final   Application

Total Compensation and Expenses Previously Requested and Awarded

| Date Filed | Docket No. | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A | N/A | N/A |

i

7391711.3

## SUMMARY OF FIRST AND FINAL APPLICATION OF CARTER
## LEDYARD & MILBURN FOR SERVICES RENDERED AS A CONSULTANT TO THE COMMITTEE

| Name of Professional | Title | Department | Year Admitted to the NY Bar | 2013 Hourly Rate[1] | Total Billed Hours | Total Fees Billed |
|---|---|---|---|---|---|---|
| James Gadsden | Partner | Insolvency and Creditors' Rights | 1975 | 825[2] | 85.50 | $69,147.50 |
| Jayun Koo | Associate | Corporate | 2011 | 270 | 64.90 | $17,523.00 |
| Madelyn K. White | Associate | Litigation | 2012 | 260 | 13.20 | $3,432.00 |
| Laura A. Zaccone | Associate | Litigation | 2013 | 260 | 103.90 | $27,018.00 |
| Katherine A. Mirett | Associate | Corporate | 2013 | 260 | 2.80 | $700.00 |
| Brandon J. Isaacson | Associate | Litigation | 2013 | 250 | 36.80 | $9,200.00 |
| Jennifer M. Einersen | Associate | Litigation | 2013 | 250 | 0.80 | $200.00 |
| Iliza F. Bershad | Associate | Litigation | N/A | 250 | 3.00 | $750.00 |
| Hugo E. Arenas | Associate | Litigation | N/A | 250 | 4.10 | $1,025.00 |
| Gabrielle Dimino | Paralegal | Paralegal | N/A | 215 | 4.75 | $1,021.25 |
| Emily Moog | Librarian | Law Library | N/A | 200 | 0.30 | $60.00 |
| | | | | Write-offs and Adjustments | | ($-8,975.00) |
| | | | | TOTAL | 320.05 | $121,101.75 |

Blended hourly rate for attorneys for the Total Compensation Period (excluding paraprofessional time) is $381.02.

1 All time spent in 2014 has been billed at 2013 hourly rates.
2 For a portion of the professional services rendered through September 30, 2013, Mr. Gadsden billed at an hourly rate of $725.00. The firm's engagement letter provided for an hourly rate of $825.00.

ii

739171l.3

## TABLE OF CONTENTS

**Page**

JURISDICTION ...................................................................................................2

PRELIMINARY STATEMENT ........................................................................2

SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF
EXPENSES REQUESTED .................................................................................4

BACKGROUND...................................................................................................6

CLM'S FEE REQUESTS....................................................................................8

SUMMARY OF CONSULTANT AND EXPERT WITNESS SERVICES RENDERED ...10

STATEMENT OF CLM .....................................................................................12

ACTUAL AND NECESSARY DISBURSEMENTS OF CLM ...........................14

THE REQUESTED COMPENSATION SHOULD BE ALLOWED .........................15

NOTICE ..............................................................................................................17

NO PRIOR REQUEST ......................................................................................17

## EXHIBITS

Exhibit 1 –    Certification of James Gadsden

Exhibit 2 –    Summary of Professionals for the Total Compensation Period

Exhibit 3 –    Summary of Expenses for the Total Compensation Period

Exhibit 3-A –  Detail of Expenses for the Total Compensation Period

Exhibit 4 –    Summary of Time by Billing Category for the Total Compensation Period

Exhibit 5 –    Time Detail for the Total Compensation Period

Exhibit 6 –    Biography of James Gadsden

iii

James Gadsden
CARTER, LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10005
Telephone: (212) 238-8607
Facsimile: (212) 732-3232
e-mail: gadsden@clm.com

*Consultant to the Official Committee of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————x
                                                      :
In re                                                 :          Chapter 11
                                                      :
RESIDENTIAL CAPITAL, LLC *et al.*,                    :
                                                      :          Case No.  12-12020 (MG)
              Debtors.                                :
                                                      :          Jointly Administered
                                                      :
————————————————————————x

**FIRST AND FINAL APPLICATION OF CARTER LEDYARD &
MILBURN LLP, CONSULTANT TO THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS, FOR FINAL ALLOWANCE OF
COMPENSATION FOR PROFESSIONAL SERVICES RENDERED
AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY
EXPENSES INCURRED AS A CONSULTANT TO THE COMMITTEE**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

    Carter, Ledyard & Milburn LLP ("CLM"), consultant to the Official Committee of

Unsecured Creditors in these chapter 11 cases (the **"Chapter 11 Cases"**), hereby files its first

and final application (the **"Application"**) pursuant to section 330(a) of title 11 of the United

States Bankruptcy Code (the **"Bankruptcy Code"**), Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the **"Bankruptcy Rules"**), and Rule 2016-1 of the Local Bankruptcy

Rules for the Southern District of New York (the **"Local Bankruptcy Rules"**), for final

1

allowance and approval of compensation for professional services performed by CLM and for reimbursement of actual and necessary expenses incurred during the period commencing August 21, 2013 through and including November 20, 2013 (the **"Retention Period"**), and for reasonable compensation for time CLM spent preparing this Application (the **"Post-Retention Fee Application Amounts"**) (collectively, the **"Total Compensation Period"**). In support of its Application, CLM respectfully represents as follows.

## JURISDICTION

1.      The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      The statutory predicates for the relief requested herein are sections 327, 330 and 331 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and Rule 2016-1 of the Local Bankruptcy Rules.

## PRELIMINARY STATEMENT

4.      On February 28, 2013, the Official Committee of Unsecured Creditors in the Chapter 11 Cases (the **"Committee"**), filed the Adversary Complaint for Declaratory Judgment, Avoidance of Liens, and Disallowance of Claims against UMB Bank, N.A. ("UMB") and Wells Fargo, N.A., captioned *Official Committee of Unsecured Creditors v. UMB Bank, N.A. and Wells Fargo Bank, N.A.*, Ad. No. 13-01277 (the **"Adversary Proceeding"**). That action addressed, among other things, the property that constituted collateral for the Notes Security Agreement (as that term is defined in the Adversary Proceeding).

2

7391711.3

5.      In the Adversary Proceeding, UMB sought dismissal of ten of the fourteen counts asserted by the Committee.  In its August 13, 2013 decision,  the Court determined that it needed a fuller evidentiary record to resolve the issues presented on UMB's motion to dismiss on the two counts (Counts I and IV) relating to the Released Bilateral Facilities Collateral and the Released Mortgage Loans (as defined in the decision).  *In re Residential Capital LLC*, 495 B.R. 250, 261–62 (Bankr. S.D.N.Y. 2013).

6.      To supply that fuller evidentiary record, the Committee determined that it required the assistance of James Gadsden, a partner at the law firm Carter Ledyard & Milburn LLP ("CLM") and an expert on trust indentures and related security agreements, to supply consulting services and expert testimony on the custom and practice in drafting indentures and related security agreements such as those at issue in the Adversary Proceeding.  Accordingly, and pursuant to an Order issued by this Court [Docket No. 5339], the Committee retained CLM as a consultant and Mr. Gadsden as an expert witness.

7.      In those capacities, CLM and Mr. Gadsden played an active and integral role in securing an outcome in the Adversary Proceeding that was beneficial to all unsecured creditors in the Chapter 11 Cases.   Among other things, Mr. Gadsden, with the support of CLM professionals and paraprofessionals:

- Engaged in an accelerated review of indentures and security agreements drafted during the periods that the Notes Security Agreement was originally executed and when it was amended and restated;

- Produced an expert witness report containing a summary and analysis of relevant indentures and security agreements;

- Testified in a deposition in connection with the expert witness report;

3

7391711.3

- Presented direct testimony in the Adversary Proceeding via declaration; and

- Was cross-examined by counsel for UMB at the trial of the Adversary Proceeding.

8.    CLM respectfully submits that its services throughout the Total Compensation Period warrant approval of its requested fees and expenses.

## SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

9.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on November 25, 2009, and updated on June 17, 2013 (the "**Local Guidelines**"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "**UST Guidelines**"), and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 0797] entered in these Chapter 11 Cases (the "**Interim Compensation Order**," and together with the Local Guidelines and the UST Guidelines, the "**Guidelines**"). Pursuant to the Guidelines, a certification of James Gadsden regarding compliance with the Guidelines is attached hereto as **Exhibit 1**.

10.    CLM seeks final allowance of compensation for professional services performed during the Retention Period, in the amount of $115,101.75. Additionally, CLM seeks reimbursement of expenses incurred in connection with the rendition of such services in the amount of $707.01 for the Retention Period.  Also pursuant to this Application, CLM seeks additional fees in the amount of $6,000 on account of its services in preparing this

4

application    Accordingly, the total fees CLM seeks pursuant to this Application are $121,808.76.

11.    During the Total Compensation Period, CLM attorneys and paraprofessionals expended a total of 320.05 hours in connection with the necessary services performed.

12.    There is no agreement or understanding between CLM and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in the Chapter 11 Cases.

13.    The fees charged by CLM in the Chapter 11 Cases are billed in accordance with its existing billing rates and procedures set forth in the Order Approving the Retention of Carter Ledyard & Milburn LLP as Consultant to the Official Committee of Unsecured Creditors *Nunc Pro Tunc* to August 21, 2013 (the **"Retention Order"**) [Docket No. 5538].

14.    Pursuant to UST Guidelines, annexed hereto as **Exhibit 2** is a schedule setting forth all CLM professionals and paraprofessionals who performed services in the Chapter 11 Cases during the Total Compensation Period, the capacities in which such individuals are employed by CLM, the hourly billing rates of such individuals, and the aggregate number of hours expended and fees billed by such individuals.

15.    Annexed hereto as **Exhibit 3** is a schedule specifying the categories of expenses for which CLM is seeking reimbursement and the total amount for each expense category for the Retention Period.[3]  In addition, attached hereto as **Exhibit 3-A** is a schedule of all the expenses incurred during the Retention Period.

---

[3]    Reflecting the downward adjustments set forth in the footnotes to Exhibit 3.

5

7391711.3

16.     Pursuant to Section II.D of the UST Guidelines, annexed hereto as **Exhibit 4** is a summary of CLM's time billed during the Total Compensation Period, broken down by project categories. CLM followed a practice of issuing separate invoices for services provided under each of the project categories hereinafter described.

17.     Annexed hereto as **Exhibit 5** is CLM's time detail for the Total Compensation Period.

## BACKGROUND

18.     On May 14, 2012 (the **"Petition Date"**), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. After the Petition Date, the Debtors continued to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

19.     On May 16, 2012, the United States Trustee for the Southern District of New York (the **"United States Trustee"**), pursuant to section 1102 of the Bankruptcy Code, appointed the Official Committee of Unsecured Creditors (the **"Committee"**) to represent the interests of all unsecured creditors in the Chapter 11 Cases. The United States Trustee selected the following nine parties to serve as members of the Committee: (i) Wilmington Trust, N.A.; (ii) Deutsche Bank Trust Company Americas; (iii) The Bank of New York Mellon Trust Company, N.A.; (iv) MBIA Insurance Corporation; (v) Rowena L. Drennen; (vi) AIG Asset Management (U.S.), LLC; (vii) U.S. Bank National Association; (viii) Allstate Life Insurance Company; and (ix) Financial Guaranty Insurance Corporation.

20.     On February 28, 2013, the Committee filed the Adversary Complaint for Declaratory Judgment, Avoidance of Liens, and Disallowance of Claims against UMB Bank,

6

7391711.3

N.A. and Wells Fargo, N.A., captioned *Official Committee of Unsecured Creditors v. UMB Bank, N.A. and Wells Fargo, N.A.*, Ad. No. 13-01277 (MF) (the "**Adversary Proceeding**").

21.    A focal issue in the Adversary Proceeding was which property served as collateral for the Notes Security Agreement (as that term is defined in the Adversary Proceeding).  As part of its analysis, the Committee required the assistance of James Gadsden, a partner at CLM and an expert on trust indentures and related security agreements, to provide opinions as to the custom, usage and industry practice concerning the scope of property that is to be included or excluded as collateral under security agreements when the collateral is freed from the conditions of the security agreement which made the property an Excluded Asset or which was released from the collateral package and subsequently reacquired.

22.    The Committee authorized the retention of CLM effective as of August 21, 2013.  CLM was selected because of Mr. Gadsden's expertise and extensive experience with trust indentures and related security agreements as summarized in his biography that was attached as exhibit to his report and is attached to this application as **Exhibit 6**.

23.    On October 11, 2013, Pachulski Stang Ziehl & Jones LLP, co-counsel for the Committee, filed the Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Employment and Retention of Carter Ledyard & Milburn LLP as Consultant to the Committee, *Nunc Pro Tunc* to August 21, 2013 [Docket No. 5339], seeking to retain CLM as a consultant and Mr. Gadsden as an expert witness.

24.    On October 29, 2013, the Court entered the Order Approving Retention of Carter Ledyard & Milburn LLP as Consultant to the Official Committee of Unsecured Creditors, *Nunc Pro Tunc* to August 21, 2013 (the "**Retention Order**") [Docket No. 5538],

7

authorizing the Committee to retain and employ CLM as a consultant and Mr. Gadsden as an expert witness.

25.     On December 11, 2013, the Court entered the Order Confirming the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors [Docket No. 6065] (the **"Confirmation Order"**) confirming the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors [Docket No. 6065-1] (as may be amended, modified or supplemented from time to time, the **"Second Amended Plan"**). The effective date of the Second Amended Plan occurred on December 17, 2013.  Pursuant to the Confirmation Order, CLM files this Application for final allowance of compensation and reimbursement for the Total Compensation Period.

## CLM'S FEE REQUESTS

26.     CLM maintains computerized records of the time spent by all CLM attorneys and paraprofessionals in connection with the consultation and expert witness services provided to the Committee.  CLM submitted monthly fee statements (the **"Monthly Fee Statements"**) to the Notice Parties (as that term is defined in the Interim Compensation Order) in the format specified by the UST Guidelines, allowing each of the Notice Parties an opportunity to review and object to the Monthly Fee Statements.

27.     During the Retention Period, CLM provided the Notice Parties with the following Monthly Fee Statements:

- For August 21, 2013 through September 30, 2013 – fees of $80,936.25 and expenses of $522.55 (the **"September Statement"**).

8

- For October 1, 2013 through October 31, 2013 – fees of $32,975.50 and expenses of $119.21 (the "**October Statement**").

- For November 1, 2013 through November 30, 3013 – fees of $1,190.00 and expenses of $65.25 (the "**November Statement**").

28.    In total, CLM submitted Monthly Fee Statements during the Retention Period for fees of $115,101.75 (the "**Retention Period Fees**") and expenses of $707.01 (the "**Retention Period Expenses**").  As of the date of this Application, CLM has not received any objections to its Monthly Fee Statements.

29.    In accordance with the Interim Compensation Order, CLM sought payment for 80% of fees and 100% of expenses incurred pursuant to each Monthly Fee Statement.  With respect to the  September Statement, CLM received a payment from the Debtors of $65,271.55, representing 80% of fees requested ($64,749.00) and 100% of expenses requested ($522.55).  With respect to the  October Statement, CLM received a payment from the Debtors of $26,499.61, representing 80% of fees requested ($26,380.40) and 100% of expenses requested ($119.21).  With respect to the  November Statement, CLM received a payment from the Debtors of $1,017.25, representing 80% of fees requested ($952.00) and 100% of expenses requested ($65.25).

30.    CLM also seeks additional fees  of $6,000, representing the Post-Retention Fee Application Amounts, in reasonable compensation for time CLM spent preparing this Application (which amount represents a voluntary reduction to approximately 5% of total fees requested).

31.    Pursuant to the Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured

9

Creditors [Docket No. 6065], the Administrative, Priority, Secured and Convenience Distribution Reserve was established on the Effective Date of the Plan, in part for the purpose of maintaining the funds needed to satisfy professional claims that are allowed or that may become allowed on or after the Effective Date.

32.    Accordingly, pursuant to this Application, CLM respectfully requests that the Court enter an order (i) awarding CLM the final allowance of (a) Total Compensation Period Fees (including the Post-Retention Fee Application Amounts) in the aggregate amount of $121,107.75, and (b) Retention Period Expenses in the amount of $707.01; (ii) authorizing and directing the Debtors to pay CLM $6,000, on account of its fees and expenses in preparing this Application; and (iii) granting such other relief as is just and proper.

## SUMMARY OF CONSULTANT AND EXPERT WITNESS SERVICES RENDERED

33.    The following summary highlights the services rendered by CLM during the Total Compensation Period, identifying some of the issues to which CLM devoted significant time and effort.    CLM followed a practice of issuing separate invoices corresponding to the different categories of tasks that it was required to perform.    The following summary is not a detailed description of the work performed, as the day-to-day services and the time expended in performing such services are fully set forth in the invoices attached hereto as **Exhibit 5**.

A.    **Retention**
       CLM Invoice(s): 1135288
       (Fees: $38,818.75/Hours Billed: 124.95)

34.    In connection with the Adversary Proceeding, the Committee required that Mr. Gadsden deliver a draft expert witness report within three weeks of retention.    Simultaneously, an accelerated conflicts check was conducted requiring substantial effort to clear the close to one

10

thousand parties on the 9 page Retention Checklist (provided by the Debtors and attached to the

Retention Application as Schedule 1), including 46 debtors and subsidiaries, 18 foreign

subsidiaries, 21 officers and directors, 5 parties to funding agreements, 49 bondholders, 22

landlords and tenants, 65 parties to litigation, 13 U.S. Trustee's Office attorneys, 10 bankruptcy

judges, 42 district court judges, 10 depositing banks, 20 consultants and professionals, 13

HELOC investors, 29 utilities, 9 members of the Creditor's Committee, 21 Rule 2004 motion

parties, the consolidated top 50 creditors, and over 500 servicing counterparties, including many

substantial financial institutions and their affiliates.

**B.    Litigation Consulting**
CLM Invoice(s): 1134965, 1135367
(Fees: $74,515.60/Hours Billed: 146.30)

35.    As noted above, a focal issue in the Adversary Proceeding was whether the

Bilateral Facilities Collateral and Released Mortgage Loans constituted Excluded Assets or were

collateral under the Notes Security Agreement.   In light of the expedited time frame, CLM

attorneys were required to engage in an accelerated review of indentures and security agreements

drafted during the periods that the Notes Security Agreement was originally drafted in June 2008

and subsequently amended and restated in December 2009.

36.    Mr. Gadsden prepared an expert report, containing a summary and analysis of the

relevant indentures and security agreements from the above-mentioned expedited review.  Mr.

Gadsden was deposed in connection with his expert report, he delivered direct testimony via

declaration, and he appeared in court for live cross-examination.

37.    The services were required to be performed on a highly accelerated schedule and

that schedule was met.   Mr. Gadsden was first contacted on August 21.  He was asked to deliver

and did deliver a draft of his expert report to Committee counsel on September 11.  The final

report was delivered on September 20, 2013, as required by the Court's scheduling order.  Mr.

Gadsden's deposition was conducted on October 2.  He submitted his direct testimony

declaration on October 7, his affidavit in response to the motion in limine to exclude his

testimony on October 11 and was examined at the hearing on October 17.  The services

performed by CLM and Mr. Gadsden met the needs of the Committee to address what the

committee considered to be an important issue in the disputes with the holders of the Junior

Secured Notes involving what was estimated as $68 million of collateral.

**C.    Fee Statements**
CLM Invoice(s): 1135550, 1135951
(Fees: $1767.50/Hours Billed: 5.00)

38.    During the Retention Period, CLM prepared and distributed monthly fee

statements, as required by, and in accordance with, the Guidelines.

**D.    Post-Retention Fee Application**
CLM Invoice(s): 1138037
(Fees: $ 6,000.00 /Hours Billed: 43.80 )

39.    After the Retention Period, CLM devoted the preparation of this Application, as

required by, and in accordance with, the Guidelines.  It has voluntarily limited its request for the

services required to prepare this application to $6,000, representing approximately 5% of the

total fees incurred.

## STATEMENT OF CLM

40.    The foregoing professional services performed by CLM were appropriate and

necessary to the resolution of the Adversary Proceeding and effective administration of these

cases.  They were in the best interests of the Committee, which was appointed by the United

7391711.3

States Trustee for the Southern District of New York to represent the interests of all unsecured creditors in the Chapter 11 Cases which sought the services to address the issues as to which the court sought a fuller evidentiary record in the decision on UMB Bank's motion to dismiss the claims asserted by the Committee in the Adversary Proceeding. Compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved. The professional services were performed in an appropriately expeditious and efficient manner.

41.    The majority of the services performed by CLM professionals and paraprofessionals were in support of Mr. Gadsden's development of an expert report and opinion, and his provision of expert testimony with respect to the Adversary Proceeding. As discussed above and in the Retention Application, Mr. Gadsden is an expert on trust indentures and related security agreements, a complex issue, the evaluation of which was crucial to the resolution of the Adversary Proceeding. Mr. Gadsden, supported by the CLM professionals and paraprofessionals who assisted in the preparation of the survey incorporated in his report, provided services to the Committee in the Chapter 11 Cases to address significant issues highlighted by the court in connection with the scope of the liens supporting the Junior Secured Notes.

42.    The professional services performed by CLM on behalf of the Committee during the Total Compensation Period required an aggregate expenditure of 320.05 hours by CLM's partners, associates and paraprofessionals. Of the aggregate time expended during the Total Compensation Period, 85.50 hours were expended by partners of CLM, 229.50 hours were expended by associates, and 5.05 hours were expended by paraprofessionals of CLM.

7391711.3

43.    CLM's 2013 billing rates for attorneys working on these Chapter 11 Cases ranged from $250 to $825.  For the Total Compensation Period, allowance of compensation in the amount requested will result in a blended hourly billing rate for attorneys of approximately $381.02, and a total blended hourly billing rate (including paraprofessionals) of approximately $378.38.  Such fees are reasonable relative to the customary compensation received by CLM and by comparably skilled practitioners in comparable bankruptcy cases in a competitive national legal market.

## ACTUAL AND NECESSARY DISBURSEMENTS OF CLM

44.    As set forth in **Exhibit 3** hereto, CLM has disbursed $707.01 as expenses incurred in providing professional services during the Total Compensation Period.  Pursuant to CLM policy (which CLM submits is consistent with other New York City law firms), CLM pays certain transportation and meal expenses of professionals who work past 8:00 p.m. and on weekends and holidays in the service of its clients.  These charges are intended to cover CLM's direct operating costs, which costs are not incorporated into CLM's hourly billing rates.  Only clients who actually use services of the types set forth in **Exhibit 3** are separately charged for such services.

45.    CLM made every effort to minimize its disbursements in these cases.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Committee, particularly in light of the expedited time frame in which the Committee required that CLM's and Mr. Gadsden's services be completed.

14

7391711.3

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

46.    Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . ., the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)    The time spent on such services;
>
> (B)    The rates charged for such services;
>
> (C)    Whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)    Whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)    With respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field;
>
> (F)    Whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)

47.    CLM respectfully submits that the amount of compensation requested during the Total Compensation Period is "reasonable" considering the nature, extent and value of the professional services performed during the Chapter 11 Cases.  The fees sought in this Application reflect an aggregate of 320.05 hours expended by CLM attorneys and

15

7391711.3

paraprofessional performing services beneficial to the Committee in connection with the litigation with the representatives of the Junior Secured Notes that was crucial to the ultimate consensual resolution of the Chapter 11 Cases. As discussed above, the rates charged by CLM for these services are reasonable relative to rates charged by CLM in comparable engagements and other professionals of comparable skill and competence in New York. CLM undertook to minimize the costs to the Committee while still ensuring that the Committee received the highest quality representation. To that end, work was carefully assigned to appropriate attorneys or paraprofessionals according to the experience and level of expertise required for each particular task and without necessary duplication.

48.    The services for which CLM seeks compensation in this Application were, at the time rendered, beneficial toward the resolution of the Adversary Proceeding and, consequently, the Chapter 11 Cases. The services rendered by CLM were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved, particularly in light of the accelerated time frame in which CLM's services were required.

49.    On February 28, 2014, CLM submitted this Application to the Committee for review. On March 3, 2014, the Committee approved the amounts CLM is requesting pursuant to this Application.

50.    Based on an application of the above factors and its compliance with the Guidelines, CLM respectfully submits that approval of the compensation sought herein is warranted.

16

7391711.3

## NOTICE

51.    Pursuant to the Confirmation Order, notice of this Application has been given to all required notice parties.

## NO PRIOR REQUEST

52.    No prior request for the relief sought in this Application has been made to this or any other court.

**WHEREFORE**, CLM respectfully requests that the Court enter an order (i) awarding CLM the final allowance of (a) Total Compensation Period Fees, in the aggregate amount of $121,101.75, and (b) Retention Period Expenses in the amount of $707.01; (ii) authorizing and directing the Debtors to pay CLM $6,000, representing all unpaid fees (including the Post-Retention Fee Application Amounts) and expenses for the Total Compensation Period; and (iii) granting such other relief as is just and proper.

Dated: New York, New York
　　　　March 3, 2014

CARTER, LEDYARD & MILBURN LLP


By:　　/s James Gadsden　　　　
　　　　James Gadsden
　　　2 Wall Street
　　　New York, New York  10005-2072
　　　(212) 238-8607 (tel)
　　　(212) 732-3232 (fax)
　　　e-mail: gadsden@clm.com

　　　*Consultant to the Official Committee of Unsecured Creditors*

17

7391711.3