Hearing Date and Time:  TBD
Objection Deadline: TBD

**CHADBOURNE & PARKE LLP**
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 408-5100
Facsimile:  (212) 541-5369

*Counsel for the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,[1] | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

### AMENDED FINAL APPLICATION OF CHADBOURNE & PARKE LLP, COUNSEL TO THE EXAMINER, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

| Name of Applicant: | Chadbourne & Parke LLP | |
|---|---|---|
| Authorized to Provide Professional Services to: | The Examiner | |
| Date of Retention: | August 9, 2012, *nunc pro tunc* to July 11, 2012 | |
| Period for Which Allowance and Approval is Sought: | <u>Fifth Fee Period</u><br>November 1, 2013 through December 17, 2013 | <u>Final Application Period</u><br>July 11, 2012 through December 17, 2013 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary: | $172,561.00 | $46,890,806.66 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary: | $  4,871.65 | $  2,995,419.47 |
| This is a <u>Final</u> Fee Application.[2] | | |

---

[1]   The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, filed with the Court on May 14, 2012. Additional subsidiaries and affiliates of the Debtors may file Chapter 11 petitions on a rolling basis. As used herein, the term "Debtors" includes any such entities.

[2]   On November 18, 2013, Chadbourne (as well as the Examiner and his other professionals) filed final fee applications. At the December 17, 2013 fee hearing, the Court heard all fee applications on an interim basis in connection with the fourth fee period and did not consider the fee applications on a final basis.

Prior Monthly Fee Statements:

| Date Served | Period Covered | Fees Requested | Expenses Requested | Fees Approved/ Paid (80%) | Expenses Approved/Paid |
|---|---|---|---|---|---|
| 9/28/2012 | 7/11/2012 - 8/31/2012 | $3,295,849.50 | $127,003.11 | $2,636,679.60 | $127,003.11 |
| 11/2/2012 | 9/1/2012 - 9/30/2012 | $3,580,139.00 | $ 54,579.03 | $2,864,111.20 | $ 54,579.03 |
| 11/30/2012 | 10/1/2012 - 10/31/2012 | $3,790,187.50 | $124,520.27 | $3,032,150.00 | $124,520.27 |
| 1/02/2013 | 11/1/2012 - 11/30/2012 | $5,658,240.50 | $125,324.05 | $4,526,592.40 | $125,324.05 |
| 1/30/2013 | 12/1/2012 - 12/31/2012 | $4,297,438.00 | $279,240.89 | $3,423,550.40 | $279,240.89 |
| 3/4/2013 | 1/1/2013 - 1/31/2013 | $5,374,400.50 | $333,054.69 | $4,299,520.40 | $333,054.69 |
| 4/5/2013 | 2/1/2013 - 2/28/2013 | $5,624,291.25 | $451,034.76 | $4,499,433.00 | $451,034.76 |
| 5/3/2013 | 3/1/2013 - 3/31/2013 | $4,958,969.00 | $344,542.04 | $3,967,175.20 | $344,542.04 |
| 6/17/2013 | 4/1/2013 - 4/30/2013 | $7,813,747.00 | $400,283.62 | $6,250,997.60 | $400,283.62 |
| 7/17/2013 | 5/1/2013 - 5/31/2013 | $2,413,309.50 | $738,537.27 | $1,930,647.60 | $738,537.27 |
| 8/6/2013 | 6/1/2013 - 6/30/2013 | $63,271.00 | $60,487.45 | $50,616.80 | $60,487.45 |
| 8/30/2013 | 7/1/2013 – 7/31/2013 | $65,823.00 | $1,979.42 | $52,658.40 | $1,979.42 |
| 9/30/2013 | 8/1/2013 – 8/31/2013 | $59,968.50 | $4,061.72 | $47,974.80 | $4,061.72 |
| 10/25/2013 | 9/1/2013 – 9/31/2013 | $104,510.50 | $9,800.53 | $83,608.40 | $9,800.53 |
| 11/15/2013 | 10/1/2013 – 10/31/2013 | $21,175.00 | $4,202.61 | $16,940.00 | $4,202.61 |
| 1/31/2014 | 11/1/2013 – 12/17/2013 | $172,561.00 | $4,871.65 | $138,048.80 | $4,871.65 |

<u>Interim Fee Applications Payment Summary</u>

| Interim Fee Period | Dates Covered by Interim Fee Period | Bankruptcy Court Approval Date | Total Final Requested (Fees and Costs) | Amount Approved/ Paid | Holdback Amount Due (10%) |
|---|---|---|---|---|---|
| 1 (Docket No. 1897) | July 11, 2012 - Aug. 31, 2012 | Dec. 28, 2012 (Docket No. 2530) | $3,389,860.32[3] | $3,389,860.32 | $ .00 |
| 2 (Docket No. 3203) | Sept. 1, 2012 - Dec. 31, 2012 | April 23, 2013 (Docket No. 3556) | $17,689,853.23[4] | $17,689,853.23 | $ .00 |
| 3 (Docket No. 4565) | Jan. 1, 2013 – April 30, 2013 | Sept. 25, 2013 * (Docket No. 5205) | $25,186,309.79[5] | $22,817,569.02 | $2,368,740.77 |
| 4 (Docket No. 5849) | May 1, 2013 – Oct. 31, 2013 | Dec. 19, 2013 (Docket No. 6193) | $3,442,770.14[6] | $3,179,964.39 | $262,805.75 |

*The September 25, 2013 Order also allowed payment of 10% holdback balance on first and second interim fee periods.

---

[3] Reflects certain deductions agreed to after discussions with the United States Trustee.

[4] Reflects certain fee deductions agreed to after discussions with the United States Trustee and certain expense deductions taken after payment was received but prior to filing application.

[5] Reflects certain deductions agreed to after discussions with the United States Trustee.

[6] Reflects certain fee deductions agreed to after discussions with the United States Trustee and certain expense deductions taken after payment was received but prior to filing application.

**Hearing Date and Time: TBD**
**Objection Deadline: TBD**

**CHADBOURNE & PARKE LLP**
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

*Counsel for the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**AMENDED FINAL APPLICATION OF CHADBOURNE & PARKE LLP,**
**COUNSEL TO THE EXAMINER, FOR ALLOWANCE**
**OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

Chadbourne & Parke LLP ("Chadbourne"), as counsel to the Court-appointed Examiner

(the "Examiner") in the Chapter 11 cases (the "Chapter 11 Cases") of the above-captioned

debtors and debtors in possession (collectively, the "Debtors"), hereby submits this Amended

Final Application  for Allowance of Compensation and Reimbursement of Expenses (the

"Application").  This Application is submitted pursuant to sections 330  and 503(b) of title 11 of

the United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Establishing Procedures for

Interim Compensation and Reimbursement of Expenses of Professionals, dated July 17, 2012

(the "Interim Compensation Order").  Chadbourne requests entry of an order allowing

Chadbourne (a) compensation in the amount of $46,890,806.66 for professional services

rendered and (b) reimbursement of expenses incurred in connection therewith in the amount of $2,995,419.47 during the period from July 11, 2012 through and including December 17, 2013 (the "Final Application Period").  The amounts requested consist of:

(a)     compensation for professional services rendered during the period November 1, 2013 through December 17, 2013 (the "Fifth Fee Period") in the amount of $172,561.00 and reimbursement of actual and necessary expenses incurred during the Fifth Fee Period in the amount of $4,871.65, which amounts are fully described in this Application; and

(b)     compensation for professional services rendered during the period July 11, 2012 through October 31, 2013 (the "Prior Application Periods") in the amount of $46,718,245.66 and reimbursement of actual and necessary expenses incurred during the Prior Application Periods in the amount of $2,990,547.82.[7]

In support of the Application, Chadbourne respectfully represents as follows:

### BACKGROUND

1.     The Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code on May 14, 2012, and the Court authorized joint administration of the cases.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.     On June 4, 2012, Berkshire Hathaway, Inc. filed a motion (the "Examiner Motion") for the appointment of an examiner pursuant to 11 U.S.C. § 1104(c).  On June 20, 2012, the Court issued a Memorandum Opinion and Order granting the Examiner Motion (the

---

[7] The amounts sought for compensation during the Prior Application Periods reflect all fees and expenses previously approved by the Court for Chadbourne's first, second, third and fourth interim fee applications, as further described herein.

2

"Memorandum  Decision").  On June 28, 2012, the Court entered the Order Directing the

Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code (the

"Examiner Order").

3.      On July 3, 2012, the United States Trustee for the Southern District of New York

appointed Arthur J. Gonzalez as Examiner in the Chapter 11 Cases, subject to Court approval.

On that same date, the Court entered an order approving the appointment.

4.      On July 17, 2012, Arthur J. Gonzalez filed the Application of the Examiner for

Order Authorizing the Retention and Employment of Chadbourne & Parke LLP as Counsel to

the Examiner *Nunc Pro Tunc* to July 11, 2012.  On August 9, 2012, the Court entered an order

(the "Retention Order") approving Chadbourne's retention.

5.      Pursuant to the Examiner Order, and in accordance with the Memorandum

Decision, the Examiner was directed to conduct an investigation of a scope and timing to be set

by the Court after the Examiner had conferred with other parties in interest.  Examiner Order at

p. 2.  After the required consultations, the Court mandated that the Examiner conduct an

investigation covering the topics set forth in the Order Approving Scope of Investigation of

Arthur J. Gonzalez, Examiner, dated July 27, 2012 (the "Scope Order").

6.      On May 13, 2013, the Examiner filed his report under seal [Docket No. 3698] (the

"Examiner's Report" or the "Report").  On June 26, 2013, the Bankruptcy Court entered its Order

Unsealing the Examiners' Report.

7.      On September 24, 2013, the Court entered the Order Approving Examiner's

Motion for Entry of Order Granting Discharge From Duties, Relief from Discovery, Approval of

Disposition of Investigative Materials, and Exculpation in Connection with Duties (the

"Discharge Order") [Docket No. 5187].

3

8.      On December 3, 2013, the Debtors filed the Second Amended Joint Chapter 11

Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured

Creditors (the "Second Amended Plan").

9.      On December 11, 2013, the Court entered the Order Confirming Second

Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official

Committee of Unsecured Creditors (the "Confirmation Order") confirming the Second Amended

Plan.  On December 17, 2013, the Effective Date of the Plan occurred.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding

within the meaning of 28 U.S.C. § 157(b)(2).

## COMPLIANCE WITH GUIDELINES AND ORDER GOVERNING APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

11.      This Application has been prepared in accordance with the Amended Guidelines

for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy

Cases effective as of February 5, 2013 (the "Local Guidelines") and the United States Trustee

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed

Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines" and, together with

the Local Guidelines, the "Guidelines").  Pursuant to the Guidelines, a certification regarding

compliance with same is attached hereto as Exhibit A.

4

## SUMMARY OF APPLICATION

### Fifth Fee Period

12.     Chadbourne seeks compensation for professional services rendered to the Examiner during the Fifth Fee Period in the aggregate amount of $172,561.00 and reimbursement of actual and necessary expenses incurred in connection with the rendition of services during the Fifth Fee Period in the aggregate amount of $4,871.65.   During the Fifth Fee Period, Chadbourne attorneys and paraprofessionals expended a total of 267.20 hours for which compensation is requested.

13.     A summary of the hours spent, the names of each professional and paraprofessional rendering services to the Examiner during the Fifth Fee Period, the regular customary billing rates (as modified by various Chadbourne concessions further described below) and the total value of time incurred by each of Chadbourne's professionals and paraprofessionals rendering services to the Examiner is attached hereto as Exhibit B.

14.     Pursuant to the Guidelines, a schedule setting forth a description of the project categories used in this case, the number of hours expended by Chadbourne partners, counsel, associates and paraprofessionals by project category, and the aggregate fees associated with each project category is attached hereto as Exhibit C.

15.     A summary of the actual and necessary expenses incurred by Chadbourne during the Fifth Fee Period is attached as Exhibit D which provides itemized expense detail.

16.     Chadbourne maintains computerized records of the time spent by all professionals and paraprofessionals rendering services to the Examiner during the Fifth Fee Period.  Copies of these computerized records are attached hereto as Exhibit E.

5

**Summary of Services During the Fifth Fee Period**

17.    As set forth in the detailed computerized records attached hereto as Exhibit E,
fees incurred by Chadbourne during the Fifth Fee Period total $172,561.00.  The services
rendered by Chadbourne during the Fifth Fee Period are grouped into specific project categories
as set forth in Exhibit C.  The attorneys and paraprofessionals who rendered services relating to
each category are identified, along with the number of hours for each individual and the total
compensation sought for each category.

18.     The following is a summary of the activities performed by Chadbourne attorneys
and paraprofessionals during the Fifth Fee Period, organized by project category.

**A.    Case Administration/General Bankruptcy Matters**

Total Hours:  83.60          Total Fees:  48,606.00

19.    During the Fifth Fee Period, Chadbourne was required to deal with a subpoena
issued to the Examiner by the Office of the United States Attorney for the Central District of
California seeking production of certain confidential materials related to the investigation.
Chadbourne considered potential implications under the Discharge Order and performed related
research.  In connection therewith, Chadbourne began drafting a motion requesting direction
from the Court as to the Examiner's obligations and an appropriate response to the subpoena.

**B.    Fee/Retention Applications**

Total Hours:  183.60          Total Fees:  $123,955.00

20.    This category encompasses tasks relating to compliance with the Interim
Compensation Order.  During the Fifth Fee Period, Chadbourne engaged in the following tasks:

- Research, preparation and filing of Chadbourne's and the Examiner's fourth fee
  applications.

6

- Preparation of notice and proposed omnibus fee order for Examiner's professionals' fee applications.
- Research and respond to information requests from a major unsecured creditor regarding case fees and expenses.
- Research and preparation of response to Creditors' Committee's request for adjournment of hearing on Examiner's professionals' final fee applications.
- Research and preparation of responses to the United States Trustee and Creditors' Committee objections to fees.  Related calls with the United States Trustee.
- Preparation for and attendance at December 17, 2013 hearing on fees.

### Summary of Expenses During Fifth Fee Period

21.     As set forth in Exhibit D hereto, Chadbourne has incurred $4,871.65 in actual, necessary expenses in providing professional services to the Examiner during the Fifth Fee Period.

22.     With respect to photocopying expenses, Chadbourne's standard charge for photocopies is $0.20/per page.  For purposes of these Chapter 11 cases, Chadbourne has reduced this charge to $0.10/per page.   These charges are intended to cover Chadbourne's direct operating costs, which costs are not incorporated into Chadbourne's hourly billing rates.  Only clients who actually use services of the types set forth in Exhibit D are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.  The amount of the standard photocopying charge is intended to allow Chadbourne to cover the related expenses of its photocopying service.  A determination of the actual expense per page for photocopying, however, is dependent on both the volume of copies and the total expenses attributable to photocopying on an annual basis.  These expenses do not exceed the maximum rate set by the Guidelines.  With respect to word processing costs, Chadbourne does

7

not include word processing charges in the firm's overhead for purposes of setting billing rates, nor does Chadbourne seek reimbursement of any word processing charges in this Application.

23.    In accordance with the Guidelines, in seeking reimbursement for long distance telephone charges, Chadbourne currently charges clients its approximate actual cost paid to its long distance carriers.  Chadbourne uses outside vendors for conference call services and requests reimbursement only for the amount billed to Chadbourne by the third-party vendors.

24.    With respect to legal research expenses, Chadbourne has entered into flat-fee contracts with Lexis/Nexis and Westlaw for the provision of online research services.  In order to determine charges to individual clients, the flat fees charged to Chadbourne by Lexis/Nexis and Westlaw are allocated among those clients based on the actual number and scope of searches conducted on behalf of those clients.

25.    Chadbourne attorneys and paraprofessionals also use PACER (Public Access to Court Electronic Records) as a tool to research and obtain vital information about these Chapter 11 cases and cases in interest.  Chadbourne charges $.10/per page for the first thirty pages, the rate at which Chadbourne is charged by PACER.

26.    The time constraints frequently imposed by the circumstances of these cases have required Chadbourne's professionals and other employees at times to devote time during the evenings and on weekends to the performance of legal services on behalf of the Examiner. Consequently, as a result of the physical inability to complete every task required of Chadbourne during ordinary business hours, Chadbourne professionals and employees were at times required to work in the evenings and/or on weekends.  Chadbourne has, consistent with firm policy, charged the Debtors $213.70 for paraprofessional overtime.

8

27.     In addition, on several occasions, overnight delivery of documents and other

materials was required as a result of emergencies necessitating the use of such express services.

These disbursements are not included in Chadbourne's overhead for the purpose of setting billing

rates.  Chadbourne has made every effort to minimize its disbursements in these cases.

28.     The actual expenses incurred in providing professional services were absolutely

necessary, reasonable, and justified under the circumstances to serve the needs of the Examiner.

## SUMMARY OF PRIOR APPLICATION PERIODS

### A.     The Examiner's Report

29.     The drafting of the Examiner's Report was a substantial undertaking.  The filing

of the Examiner's Report on May 13, 2013 was the culmination of an exhaustive analysis of

almost nine million pages of documents produced by 23 different parties as well as 99 formal

interviews of 88 witnesses.  The Report is over 2,200 pages long and contains approximately

9,500 footnotes and 180 exhibits.  The Report analysed every material transaction between and

among ResCap, Ally Financial, and their corporate affiliates over a seven-year period, including

mortgage-backed securities, derivatives, swaps and other complicated financing transactions.

The Report addressed every material transaction and business dealing and its impact on the

overall ResCap and its liabilities and related potential claims against AFI and certain other

parties.  A summary of the work performed and expenses incurred during the Prior Application

Periods is provided in each of Chadbourne's interim fee applications.

### B.     Prior Interim Fee Applications

30.     On October 19, 2012, Chadbourne filed its First Interim Fee Application for

Allowance of Compensation and Reimbursement of Expenses For the Period July 11, 2012

Through August 31, 2012 seeking interim allowance of compensation in the amount of

$3,295,849.50 and interim reimbursement of actual and necessary expenses in the amount of

$127,003.11 [Docket No. 1897].  On December 28, 2012, the Court entered an order [Docket

No. 2530] allowing $3,276,434.91 in fees and $113,425.41 in expenses on an interim basis.  In

addition, the Court awarded payment of $298,534.12 of fees previously held back pursuant to the

Interim Compensation Order.  By order dated September 25, 2013 [Docket No. 5205] the Court

awarded payment of the remaining $327,643.49 of fees previously held back pursuant to the

Interim Compensation Order.

       31.     On March 14, 2013, Chadbourne filed its Second Interim Fee Application  for

Allowance of Compensation and Reimbursement of Expenses For the Period September 1, 2012

Through December 31, 2012 seeking interim allowance of compensation in the amount of

$17,301,345.50 and interim reimbursement of actual and necessary expenses in the amount of

$563,507.73 [Docket No. 3203].  On April 23, 2013, the Court entered an order [Docket No.

3556] allowing $17,126,345.50 in fees and $563,507.73 in expenses on an interim basis.  In

addition, the Court awarded payment of $1,547,150.44 of fees previously held back pursuant to

the Interim Compensation Order.  By order dated September 25, 2013 [Docket No. 5205] the

Court awarded payment of the remaining $1,712,634.55 of fees previously held back pursuant to

the Interim Compensation Order.

       32.     On August 7, 2013, Chadbourne filed its Third Interim Fee Application for

Allowance of Compensation and Reimbursement of Expenses For the Period January 1, 2013

Through April 30, 2013 seeking interim allowance of compensation in the amount of

$23,771,407.75 and interim reimbursement of actual and necessary expenses in the amount of

$1,528,915.11 [Docket No. 4565].  On September 25, 2013, the Court entered an order [Docket

No. 5205] allowing $23,687,407.75 in fees and $1,498,902.04 in expenses on an interim basis.

In addition, the Court awarded payment of $2,271,527.71 of fees previously held back pursuant to the Interim Compensation Order.

33.     On November 18, 2013, Chadbourne filed its Final Application for Allowance of Compensation and Reimbursement of Expenses[8] seeking allowance of compensation in the amount of $2,728,057.50 and actual and necessary expenses in the amount of $814,712.64 [Docket No. 5849].  On December 19, 2013, the Court entered an Order [Docket No. 6193] allowing $2,628,057.50 in fees and $814,712.64 in expenses on an interim basis.  In addition, the Court awarded payment of $178,449.39 of fees previously held back pursuant to the Interim Compensation Order.

## FINAL APPLICATION PERIOD SUMMARY
### (Prior Application Periods and Fifth Fee Period)

34.     A summary of the hours spent, the names of each professional and paraprofessional rendering services to the Examiner during the Final Application Period, the regular customary billing rates (as modified by various Chadbourne concessions further described below) and the total value of time incurred by each of Chadbourne's professionals and paraprofessionals rendering services to the Examiner is attached hereto as Exhibit F-1.

35.     A schedule setting forth a description of the project categories used in this case, the number of hours expended by Chadbourne partners, counsel, associates and paraprofessionals by project category, and the aggregate fees associated with each project category during the Final Application Period is attached hereto as Exhibit F-2.

36.     A summary of the actual and necessary expenses incurred by Chadbourne during the Final Application Period is attached as Exhibit F-3.

---

[8] That fee application was heard on an interim basis and not on a final basis as originally requested in connection with the fourth interim fee period.

11

## DETERMINATION OF CHADBOURNE'S REQUESTED FEE

**A.    Basis for Calculation and Fee Request**

37.    In seeking compensation in these Chapter 11 Cases, Chadbourne has applied its

2012 hourly rate structure for the period July 11, 2012 through and including December 17,

2013.  For purposes of this Application, Chadbourne has calculated its request for compensation

by multiplying (a) the hours spent on services rendered on behalf of the Examiner (except that

Chadbourne's fees for attorney travel time were not billed in full but were instead reduced by

50%), and (b) the 2012 hourly rate assigned to each attorney or paraprofessional rendering such

services.

38.    Chadbourne's fees during the Fifth Fee Period and Prior Application Periods are

reasonable under the prevailing legal standard and should be allowed.  Section 330(a)(1) of the

Bankruptcy Code provides that a court may award professionals "reasonable compensation for

actual, necessary services rendered . . . and reimbursement for actual, necessary expenses."  In

determining the amount of "reasonable compensation," the Court must consider the nature, the

extent and the value of the services, taking into account all of the relevant factors.  Such factors

include (i) the time spent on such services, (ii) the rates charged for such services, (iii) whether

the services were necessary and beneficial, (iv) whether the services were performed in a

reasonable amount of time commensurate with the complexity, importance, and nature of the

problem, issue, or task addressed and (v) whether the compensation is reasonable based on the

customary compensation charged by comparably skilled practitioners in cases other than cases

under the Bankruptcy Code.  See 11 U.S.C. § 330(a)(3); see also In re Kohl, 421 B.R. 115, 125

(Bankr. S.D.N.Y. 2009); In re Cenargo Int'l, 294 B.R. 571 (Bankr. S.D.N.Y. 2003).

12

39.   In assessing the reasonableness of attorneys' fees under section 330 of the Bankruptcy Code, the Second Circuit and bankruptcy courts in this district typically use the "lodestar" method, which is a determination as to the number of hours of service reasonably devoted to the case multiplied by the attorney's reasonable rates.  See, e.g., In re Gould, 363 B.R. 45, 49 (Bankr. D. Conn. 2007) ("Attorneys' fees are determined by calculating a lodestar . . ."); Masterwear Corp. v. Angel & Frankel, P.C. (In re Masterwear Corp.), 233 B.R. 266, 277 (Bankr. S.D.N.Y. 1999); see also Aguilar v. E-Z Supply Corp., 06-CV-6790 (SLTRER), 2009 WL 2905545 (E.D.N.Y. Sept. 10, 2009) (applying lodestar approach to a non-bankruptcy case and stating that the "Court of Appeals for the Second Circuit uses the lodestar method"); Savoie v. Merchants Bank, 166 F.3d 456, 460 (2d Cir.1999) (applying lodestar approach to a non-bankruptcy case).

40.   When applying the lodestar approach, courts in this district incorporate the familiar factors set forth in Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir. 1974) (the "Johnson Factors").[9]  See, e.g., In re Kohl, 421 B.R. at 131(after calculating the initial lodestar amount, "courts then examine whether any adjustment is necessary, looking to . . . [the] twelve factors identified by the Fifth Circuit in Johnson . . ."); Aguilar, 2009 WL 2905545 ("when considering case-specific variables . . . courts in the Second Circuit follow the guidelines enumerated in Johnson . . ."); Betancourt v. Giuliani, 325 F. Supp. 2d 330, 332 n.3 (S.D.N.Y. 2004) ("In adjusting the lodestar, courts generally consider the . . . factors set forth in Johnson . . .").

---

[9] The twelve Johnson Factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-719.

41.    In awarding attorneys' fees, courts will also consider whether the services

rendered were reasonably likely to benefit the debtor's estate.  See, e.g., In re Ames Dep't Stores,

Inc., 76 F.3d 66, 71 (2d Cir. 1996), rev'd on other grounds, Lamie v. United States Trustee, 540

U.S. 526 (2004).

42.    In accordance with the foregoing, the amount requested by Chadbourne is fair and

reasonable given: (i) the time and labor required; (ii) the novelty, complexity and size of these

Chapter 11 Cases; (iii) the time and labor required to represent the Examiner effectively; (iv) the

time limitations imposed on the Examiner; (v) the nature and extent of the services rendered; (vi)

Chadbourne's experience, reputation and ability; (vii) the value of Chadbourne's services; and

(viii) the fact that Chadbourne's fees are commensurate with fees that other attorneys of

comparable experience and expertise have charged and been awarded in similar chapter 11 cases.

**B.    Chadbourne Voluntarily Refrained From Implementing
        Generally-Applicable Rate Increases and Made Other
        Significant Billing Concessions in the ResCap Engagement**

43.    Law firms such as Chadbourne typically implement two types of rate increases

each year:  (a) structural increases, which are across the board increases in billing rates for the

firm's timekeepers; and (b) maturation increases, which represent increases in individual

timekeepers' billing rates to reflect an additional year of professional experience or promotion to

a higher category, such as an associate becoming a partner.

44.    Chadbourne typically implements both structural and maturation increases on

November 1 of each year and, accordingly, Chadbourne generally implemented those increases

in other matters on November 1, 2012.  After consultation with the Examiner, however,

Chadbourne did not implement **any** rate increases (structural or maturation) in the ResCap

matter.  Therefore, from and after November 1, 2012, Chadbourne charged a lower rate for its

14

work on the ResCap matter than it generally and customarily charged and collected for its work

for other clients.  As a result of this concession, Chadbourne has voluntarily reduced the fees

requested in the ResCap matter by approximately $1,794,000[10] from the standard rates that it

generally bills and collects.

45.    In addition, Chadbourne made the following deductions to its fee and expense

requests in the ResCap case that it would not necessarily have made in other matters:

- Chadbourne deducted (or refrained from billing) approximately $407,000 in fees
to address issues raised by the United States Trustee such as "vagueness," "billing related
time," transient time recorders, time spent by attorneys not yet admitted, and meeting
attendance.  Chadbourne would not necessarily or typically have been asked for (or
agreed to) those types of reductions in non-bankruptcy matters.  Chadbourne also reduced
fees for attorney travel time by approximately $147,000, representing a deduction of
50%.

- Chadbourne also deducted approximately $225,000 in expenses, including
reductions in charges for reproduction, word processing, proofreading, secretarial
overtime, overtime and travel meals, and travel costs, that it would not necessarily have
been asked for (or agreed to) in non-bankruptcy matters.  Some (but not all) of these
reductions were made at the request of the United States Trustee.

46.    When all of the concessions and reductions described in this subsection B. are

included, Chadbourne has reduced its fees and expenses requested in this case by an aggregate of

approximately $2,573,000—or approximately 5.2% of the fees that Chadbourne would have

billed had it applied the standard non-bankruptcy rates that it generally bills and collects.

---

[10] All amounts in paragraphs 44 through 46 are rounded to the nearest $1,000.

47.     For all of the reasons set forth below, Chadbourne submits that its fees and
expenses sought by this Application are reasonable under the prevailing legal standard and
should be allowed.  Chadbourne's fees are commensurate with fees that other attorneys of
comparable experience and expertise have charged and been awarded in similar chapter 11 cases
and, as shown above, reflect a reduction from amounts that Chadbourne generally and
customarily bills and collects in matters other than cases under the Bankruptcy Code.

48.     Moreover, pursuant to the standards set forth in section 330 of the Bankruptcy
Code, the compensation requested is for actual and necessary services and expenses, and is
reasonable, based upon the complexity, importance, nature, extent, and value of such services,
the time spent thereon, and the costs of comparable services in a case other than a case under the
Bankruptcy Code.

**C.**    **No Impermissible Sharing of Compensation**

49.    Except as permitted by rule 2016 of the Federal Rules of Bankruptcy Procedure, no agreement or undertaking exists between Chadbourne and/or any third person for the sharing or division of compensation.  All of the services for which compensation is requested in this Application were rendered at the request of and solely on behalf of the Examiner.

## NOTICE AND NO PRIOR APPLICATION

50.    Notice of this Application has been served upon the parties specified in the Interim Compensation Order in the manner required thereby.   In light of the nature of the relief requested herein, Chadbourne submits that no further or other notice is required.

51.    No previous application for relief sought herein has been made to this or any other court.

52.    As set forth in the attached certification, the Examiner has had the opportunity to review, and has approved, the amounts requested in the Application.

17

WHEREFORE, Chadbourne respectfully requests that this Court enter an order (i) authorizing final compensation in the total amount of $46,890,806.66 for professional services rendered and final reimbursement of actual and necessary expenses incurred in connection therewith in the amount of $2,995,419.47  with such total amount consisting of (a) $172,561.00 for compensation for professional services rendered and $4,871.65 for reimbursement of actual and necessary expenses incurred for the Fifth Fee Period; and (b) $46,718,245.66 for compensation for professional services rendered and $2,990,547.82 for reimbursement of actual and necessary expenses incurred for the Prior Application Periods; (ii) authorizing and directing the Debtors to remit payment to Chadbourne as set forth herein, less all amounts previously paid on account of such fees and expenses; and (iii) granting such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        March 3, 2014

                                        **CHADBOURNE & PARKE LLP**


                                        By: */s/ Howard Seife*
                                            Howard Seife
                                            David M. LeMay
                                            30 Rockefeller Plaza
                                            New York, New York 10112
                                            Telephone:  (212) 408-5100
                                            Facsimile:   (212) 541-5369

                                            *Counsel for the Examiner*

18