**Hearing Date and Time:  TBD**
**Objection Deadline: TBD**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, *et al.*,[1] | ) | |
| | ) | Case No. 12-12020 (MG) |
| | ) | |
| Debtors. | ) | Jointly Administered |

_____

## FIFTH AND FINAL FEE APPLICATION OF
## MESIROW FINANCIAL CONSULTING, LLC FOR
## COMPENSATION AND REIMBURSEMENT OF EXPENSES AS
## FINANCIAL ADVISOR TO THE EXAMINER
## FOR THE PERIOD JULY 24, 2012 THROUGH DECEMBER 17, 2013

| | |
|---|---|
| Name of Applicant: | Mesirow Financial Consulting, LLC |
| Professional Services to: | The Examiner |
| Date of Retention: | August 29, 2012, *nunc pro tunc* to July 24, 2012 |
| Interim Period for which Compensation and Reimbursement are Sought: | November 1, 2013 through December 17, 2013 |
| Amount of Interim Compensation Sought as Actual, Reasonable, and Necessary: | $57,179 |
| Amount of Interim Expense Reimbursement Sought as Actual, Reasonable, and Necessary: | $-0- |
| Period for which Final Compensation and Reimbursement are Sought: | July 24, 2012 through December 17, 2013 |
| Amount of Final Compensation Sought as Actual, Reasonable, and Necessary: | $39,492,705 |
| Amount of Final Expense Reimbursement Sought as Actual, Reasonable, and Necessary: | $344,747 |

_____

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Declaration of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, filed with the Court on May 14, 2012. Additional subsidiaries and affiliates of the Debtors may file Chapter 11 petitions on a rolling basis. As used herein, the term "Debtors" includes any such entities.

This is a(n):    _____ Monthly        _____ Interim        __x__ Final Application [2]

<u>Prior Monthly Fee Statements</u>

| Date Served | Period Covered | Fees Requested | Expenses Requested | Fees Paid | Expenses Paid |
|---|---|---|---|---|---|
| 09/28/2012 | 07/24/2012 - 08/31/2012 | $ 3,007,275 | $ 30,048 | $ 2,979,917 | $ 28,557 |
| 11/02/2012 | 09/01/2012 - 09/30/2012 | 2,505,381 | 9,205 | 2,004,304 | 9,205 |
| 12/05/2012 | 10/01/2012 - 10/31/2012 | 2,898,967 | 33,968 | 2,319,174 | 33,968 |
| 01/02/2013 | 11/01/2012 - 11/30/2012 | 2,556,250 | 17,515 | 2,045,000 | 17,515 |
| 02/06/2013 | 12/01/2012 - 12/31/2012 | 2,723,418 | 15,716 | 2,178,535 | 15,716 |
| 03/06/2013 | 01/01/2013 - 01/31/2013 | 6,107,257 | 81,084 | 4,885,806 | 81,084 |
| 07/05/2013 | 02/01/2013 - 02/28/2013 | 5,528,933 | 69,396 | 4,423,146 | 69,396 |
| 08/06/2013 | 03/01/2013 - 03/31/2013 | 5,179,263 | 84,465 | 4,143,410 | 84,465 |
| 08/06/2013 | 04/01/2013 - 04/30/2013 | 6,421,831 | 64,737 | 5,137,465 | 64,737 |
| 10/14/2013 | 05/01/2013 - 05/31/2013 | 2,695,234 | 37,246 | 2,193,433 | 12,752 |
| 10/29/2013 | 06/01/2013 - 06/30/2013 | 91,175 | -0- | 72,940 | -0- |
| 10/29/2013 | 07/01/2013 - 07/31/2013 | 28,401 | -0- | 22,722 | -0- |
| 10/29/2013 | 08/01/2013 - 08/31/2013 | 63,494 | -0- | 50,796 | -0- |

---

[2] On November 18, 2013, MFC filed its fourth and final fee application, as did the Examiner and his other professionals. At the hearing on December 17, 2013, the Court heard all fee applications for the fourth interim fee period on an interim basis only and did not consider the fee applications on a final basis.

<u>Interim Fee Applications</u>

| Date Filed | Period Covered | Approval Date | Total Fees Requested / Approved | Total Expenses Requested / Approved | Amounts Paid / Holdback Due |
|---|---|---|---|---|---|
| 10/19/2012 (Docket No. 1906) | 7/24/2012 - 8/31/2012 | 12/28/2012 (Docket No. 2530) | $ 3,007,275 / 2,979,917* | $ 30,048 / 28,557* | $ 3,008,474 / -0- |
| 03/14/2013 (Docket No. 3193) | 09/01/2012 - 12/31/2012 | 04/29/2013 (Docket No. 3556) | $ 10,671,089 / 10,547,256* | $ 68,482 / 68,178* | $10,615,434/ -0- |
| 08/07/2013 (Docket No. 4562) | 01/01/2013 - 04/30/2013 | 09/25/2013 (Docket No. 5205) | $23,210,644/ 23,108,667* | $299,682 / 235,261* | $21,033,061 / 2,310,866 |
| 11/18/2013 (Docket No. 5848) | 05/01/2013 – 10/31/2013 | 12/26/2013 (Docket No. 6193) | $2,899,686/ 2,799,686* | $12,752 / 12,752 | $2,532,469/ $279,969 |
| 03/03/2014 | 11/01/2013 – 12/17/2013 | Pending | $57,179/ Pending | $-0- | $-0- / Pending |

\* Reflects certain reductions in settlement of the objections filed by the United States Trustee.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, *et al.*, [3] | ) | |
| | ) | Case No. 12-12020 (MG) |
| | ) | |
| Debtors. | ) | Jointly Administered |

---

**FIFTH AND FINAL FEE APPLICATION [4]**
**OF MESIROW FINANCIAL CONSULTING, LLC FOR**
**COMPENSATION AND REIMBURSEMENT OF EXPENSES AS**
**FINANCIAL ADVISOR TO THE EXAMINER**
**FOR THE PERIOD JULY 24, 2012 THROUGH DECEMBER 17, 2013**

Mesirow Financial Consulting, LLC ("MFC"), financial advisor to Arthur J. Gonzalez, the Court-appointed Examiner (the "Examiner") for Residential Capital, LLC and its affiliated debtors (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), hereby submits this fifth and final fee application (the "Fifth and Final Application") for allowance of compensation for professional services rendered and reimbursement of expenses incurred in connection with MFC's services to the Examiner.

This application seeks final allowance and approval of compensation for services rendered by professionals and reimbursement of actual and necessary expenses incurred, as described more fully herein, for the following periods:

    i.    November 1, 2013 through December 17, 2013 (the "Fifth Interim Fee Period"); and

    ii.    July 24, 2012 through December 17, 2013 (the "Final Application Period")

---

[3] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Declaration of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, filed with the Court on May 14, 2012. Additional subsidiaries and affiliates of the Debtors may file Chapter 11 petitions on a rolling basis. As used herein, the term "Debtors" includes any such entities.

[4] On November 18, 2013, MFC filed its fourth and final fee application, as did the Examiner and his other professionals. At the hearing on December 17, 2013, the Court heard all fee applications for the fourth interim fee period on an interim basis only and did not consider the fee applications on a final basis.

## PRELIMINARY STATEMENT

1.      By this Fifth and Final Application and pursuant to sections 330 and 331 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated July 17, 2012 (the "Interim Compensation Order"), MFC seeks final allowance and approval of reasonable compensation in the amount of $39,492,705 for 63,942.5 hours of professional services rendered to the Examiner, and reimbursement of $344,747 for actual and necessary expenses and disbursements incurred, for a total of $39,837,452 for the Final Application Period.   Included within these amounts, MFC seeks allowance and approval of reasonable compensation in the amount of $57,179 for 124.4 hours of professional services rendered to the Examiner, and reimbursement of $-0- for actual and necessary expenses and disbursements incurred, for a total of $57,179 for the Fifth Interim Fee Period.

2.      This Fifth and Final Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases effective as of February 5, 2013 (the "Local Guidelines"), and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines" and, together with the Local Guidelines, the "Guidelines").   Pursuant to the Guidelines, a certification regarding compliance with same is attached as **Exhibit I.**

**JURISDICTION AND VENUE**

3.        This Court has jurisdiction over the Application pursuant to sections 157

and 1334 of Title 28 of the United States Code ("Title 28").  This matter is a core proceeding

under section 157(b) of Title 28.  Venue of this Application in this District is proper under 28

U.S.C. sections 1408 and 1409.  The statutory predicates for the relief requested herein are

sections 330, 331 and 503(b) of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules and

Rule 2016-1 of the Local Rules.

**BACKGROUND**

4.        The Debtors filed voluntary petitions under chapter 11 of the Bankruptcy

Code on May 14, 2012, after which the Court authorized joint administration of the cases. The

Debtors continue to operate their businesses and manage their properties as debtors-in-possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.        On June 4, 2012, Berkshire Hathaway, Inc. filed a motion (the "Examiner

Motion") for the appointment of an examiner pursuant to section 1104(c) of the Bankruptcy Code.

On June 20, 2012, the Court issued a memorandum opinion and order granting the Examiner

Motion (the "Memorandum Decision").  On June 28, 2012, the Court entered the *Order Directing

the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* (the

"Examiner Order").

6.        On July 3, 2012, the United States Trustee for the Southern District of New

York appointed Arthur J. Gonzalez as Examiner in the Chapter 11 Cases, subject to Court

approval.  On that same date, the Court entered an order approving the appointment.

7.        Pursuant to the Examiner Order and in accordance with the Memorandum

Decision, the Examiner was directed to conduct an investigation of a scope, timing, and budget to

be set by the Court after the Examiner had conferred with other parties in interest. After the requisite consultations, the Court mandated that the Examiner conduct an investigation covering the topics set forth in the *Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner*, dated July 27, 2012 (the "Scope Order").

8.    The Examiner filed the *Work Plan of Arthur J. Gonzalez, Examiner* on August 6, 2012 (the "Initial Work Plan") and filed supplements thereto on August 23, 2012 (the "First Supplemental Work Plan"), November 26, 2012 (the "Second Supplemental Work Plan"), February 8, 2013 (the "Third Supplemental Work Plan") and April 5, 2013 (the "Fourth Supplemental Work Plan") (collectively, the "Supplemental Work Plans"). The Initial Work Plan indicated that the Examiner believed that a realistic time frame for the preparation of a report containing his findings regarding the investigation was six months (*i.e.*, report issuance in early February, 2013), subject to adjustment after meaningful due diligence. The Initial Work Plan further noted that the Examiner was not yet able to assess the full scope of the efforts he would need to undertake, did not yet know when requested discovery would be produced, and did not yet know whether and to what extent he would obtain cooperation on document production and access to persons he believed were material witnesses. The Supplemental Work Plans cited factors including the extent and timing of document productions by parties-in-interest and the schedules for witness interviews as factors necessitating that the deadline be extended first to early April, 2013, and then by one additional month to May, 2013, as well as the correlative effect on the estimated fees and expenses to be incurred by the Examiner and his professionals.

9.    On May 13, 2013, the Examiner filed his report under seal (the "Examiner's Report"). On June 26, 2013, the Bankruptcy Court entered its *Order Unsealing the Examiner's Report*. Further, on June 26, 2013, the Bankruptcy Court entered the *Order*

*Authorizing the Debtors' Motion to Enter Into a Plan Support Agreement with Ally Financial Inc., The Creditors' Committee, and Certain Consenting Claimants*.

10.    On September 24, 2013, the Court entered the *Order Approving Examiner's Motion for Entry of Order Granting Discharge from Duties, Relief from Discovery, Approval of Disposition of Investigative Materials, and Exculpation in Connection with Duties* (the "Discharge Order").

11.    On December 3, 2013, the Debtors filed the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (the "Second Amended Plan").

12.    On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order"). On December 17, 2013, the Effective Date of the Second Amended Plan occurred.

13.    On January 16, 2014, the Debtors filed their Monthly Operating Report ("MOR") for the period from November 1, 2013 through November 30, 2013, indicating that the Debtors had cash and equivalents of approximately $1.5 billion, total assets of approximately $3.0 billion, and liabilities not subject to compromise of approximately $797 million. The MOR indicated that the Debtors were not delinquent in paying any United States Trustee fees.

## RETENTION AND COMPENSATION OF MFC

14.    MFC, a full service financial advisory consulting firm, provides corporate recovery, litigation, investigative and intelligence services, valuation services, interim management services, and distressed M&A and capital raising services.

8

15.    On August 13, 2012, the Examiner filed the *Application of the Examiner for Order Authorizing the Retention and Employment of Mesirow Financial Consulting, LLC as Financial Advisor to Examiner nunc pro tunc to July 24, 2012* (the "Employment Application"). On August 29, 2012, this Court entered an Order authorizing the retention and employment of MFC (the "Retention Order").

16.    MFC's requested compensation for professional services rendered to the Examiner is based upon the hours actually expended by each assigned staff member at each staff member's hourly billing rate.  The hourly rates included in the Employment Application and applicable herein for financial advisory services rendered by MFC during the Final Application Period are as follows:

| Level | Hourly Rates |
|---|---|
| CEO, Senior Managing Director, Managing Director and Director | $855-$895 |
| Senior Vice President | $695-$755 |
| Vice President | $595-$655 |
| Senior Associate | $495-$555 |
| Associate | $315-$425 |
| Paraprofessional | $160-$250 |

17.    MFC's Employment Application indicated that hourly rates were subject to periodic adjustment (typically on January 1 of each year) to reflect economic and other conditions.  The Retention Order required that, prior to any changes in MFC's rates, MFC was to file a supplemental affidavit with the Court and provide ten business days' notice to the Debtors, the United States Trustee and any official committee.[5]

18.    As of January 1, 2013, MFC's normal and customary hourly rates changed to the following:

---

[5] MFC followed this procedure and was granted the requested relief in cases in this and other districts, including AMR Corporation, *et al*.

| Level | Hourly Rates |
|---|---|
| CEO, Senior Managing Director, Managing Director and Director | $895-$950 |
| Senior Vice President | $725-$795 |
| Vice President | $625-$695 |
| Senior Associate | $495-$595 |
| Associate | $295-$445 |
| Paraprofessional | $160-$250 |

19.     At the request of the Examiner, based on the specific facts and circumstances of this case, MFC agreed to continue utilizing its 2012 rate structure and not to increase the hourly rates charged in this matter to the normal and customary billing rates outlined above as of January 1, 2013.  As a result of this accommodation, the requested fees for the Final Application Period reflect a significant voluntary reduction of approximately $1,168,000.  The hourly rates of certain individuals increased on April 1, 2013 as a result of promotions and maturation increases that went into effect at the beginning of MFC's fiscal year.  Any such increases were consistent with the 2012 rate structure as agreed with the Examiner and described above.

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES PREVIOUSLY REQUESTED

20.     On October 19, 2012, MFC filed its *First Interim Fee Application of Mesirow Financial Consulting, LLC, for Compensation and Reimbursement of Expenses as Financial Advisor to the Examiner for the Period July 24, 2012 through August 31, 2012* (the "First Interim Application").  In the First Interim Application, MFC sought (i) an interim allowance of compensation for professional services rendered to the Examiner during the period from July 24, 2012 to August 31, 2012 (the "First Interim Fee Period") in the amount of $3,007,275 and (ii) reimbursement of actual and necessary expenses incurred during the First Interim Fee Period in the amount of $30,048.

10

21.    In the First Interim Fee Period, MFC did not seek compensation for 171.9 hours and $104,358 in fees or reimbursement for $18,956 in expenses incurred in this matter which were voluntarily excluded from the First Interim Application.  Additionally, MFC's First Interim Application reflected voluntary reductions for fifty percent (50%) of non-working travel and seventy-five percent (75%) of fees related to the retention application, totaling $119,070.  Finally, MFC agreed to additional reductions of $27,358 in fees and $1,491 in expenses in settlement of the *Omnibus Objection of the United States Trustee Regarding Fee Applications for First Interim Compensation and Reimbursement of Expenses* filed December 7, 2012.  MFC's total fee and expense reductions in the First Interim Fee Period were approximately $271,233.

22.    On December 28, 2012, the Court entered the *Order Granting Applications for Allowance of Interim Compensation and Reimbursement of Expenses*, which granted MFC's request for interim approval of fees for the First Interim Fee Period in the amount of $2,979,917 and expenses in the amount of $28,557 (as adjusted).

23.    On March 14, 2013, MFC filed its *Second Interim Fee Application of Mesirow Financial Consulting, LLC, for Compensation and Reimbursement of Expenses as Financial Advisor to the Examiner for the Period September 1, 2012 through December 31, 2012* (the "Second Interim Application").  In the Second Interim Application, MFC sought (i) an interim allowance of compensation for professional services rendered to the Examiner during the period from September 1, 2012 through December 31, 2012 (the "Second Interim Fee Period") in the amount of $10,671,089 and (ii) reimbursement of actual and necessary expenses incurred during the Second Interim Fee Period in the amount of $68,482.

24.    In the Second Interim Fee Period, MFC did not seek compensation for 198.6 hours and $97,992 in fees or reimbursement for $19,392 in expenses incurred in this matter which were voluntarily excluded from the Second Interim Application.  Additionally, MFC's

11

Second Interim Application reflected voluntary reductions for fifty percent (50%) of non-working travel of $95,542.  Finally, MFC agreed to additional reductions of $123,833 in fees and $304 in expenses in settlement of the *Omnibus Objection of the United States Trustee Regarding Fee Applications for Second Interim Compensation and Reimbursement of Expenses* filed March 25, 2013.  MFC's total fee and expense reductions in the Second Interim Fee Period were approximately $337,063.

25.    On April 29, 2013, the Court entered the *Order Granting Applications for Allowance of Interim Compensation and Reimbursement of Expenses*, which granted MFC's request for interim approval of fees for the Second Interim Fee Period in the amount of $10,547,256 and expenses in the amount of $68,178 (as adjusted).

26.    On August 7, 2013, MFC filed its *Third Interim Fee Application of Mesirow Financial Consulting, LLC, for Compensation and Reimbursement of Expenses as Financial Advisor to the Examiner for the Period January 1, 2013 through April 30, 2013* (the "Third Interim Application").  In the Third Interim Application, MFC sought (i) an interim allowance of compensation for professional services rendered to the Examiner during the period from January 1, 2013 through April 30, 2013 (the "Third Interim Fee Period") in the amount of $23,210,644 and (ii) reimbursement of actual and necessary expenses incurred during the Third Interim Fee Period in the amount of $299,682.

27.    In the Third Interim Fee Period, MFC did not seek compensation for 278.2 hours and $181,510 in fees or reimbursement for $25,960 in expenses incurred in this matter which were voluntarily excluded from the Third Interim Application.  Additionally, MFC's Third Interim Application reflected voluntary reductions for fifty percent (50%) of non-working travel of $250,379 and approximately $1,025,000 in connection with MFC's agreement with the Examiner not to implement the normal and customary hourly rates in effect as of January 1, 2013,

as described above.  Finally, MFC agreed to additional reductions of $101,977 in fees and $64,421 in expenses in settlement of the *Omnibus Objection of the United States Trustee Regarding Fee Applications for Third Interim Compensation and Reimbursement of Expenses* filed August 28, 2013.  MFC's total fee and expense reductions in the Third Interim Fee Period were approximately $1,649,247.

28.     On September 25, 2013, the Court entered the *Order Granting Applications for Allowance of Interim Compensation and Reimbursement of Expenses,* which granted MFC's request for interim approval of fees for the Third Interim Fee Period in the amount of $23,108,667 and expenses in the amount of $235,261 (as adjusted).

29.     On November 18, 2013, MFC filed its *Fourth and Final Fee Application of Mesirow Financial Consulting, LLC for Compensation and Reimbursement of Expenses as Financial Advisor to the Examiner for the Period July 24, 2012 Through October 31, 2013* (the "Fourth and Final Application").  In the Fourth and Final Application, MFC sought (i) an interim allowance of compensation for professional services rendered to the Examiner during the period from May 1, 2013 through October 31, 2013 (the "Fourth Interim Fee Period") in the amount of $2,899,686; (ii) reimbursement of actual and necessary expenses incurred during the Fourth Interim Fee Period in the amount of $12,752; (iii) a final allowance of compensation for professional services rendered to the Examiner during the period from July 24, 2012 through October 31, 2013 in the amount of $39,535,526; and (iv) a final reimbursement of actual and necessary expenses incurred during the Fourth Interim Fee Period in the amount of $344,747.

30.     In the Fourth Interim Fee Period, MFC did not seek compensation for 712.9 hours and $280,141 in fees or reimbursement for $39,578 in expenses incurred in this matter which were voluntarily excluded from the Fourth and Final Application.  Additionally, MFC's Fourth and Final Application reflected voluntary reductions for fifty percent (50%) of

non-working travel of $18,046, twenty-five percent (25%) of time related to MFC's preparation of fee statements and fee applications of $52,714 and approximately $140,000 in connection with MFC's agreement with the Examiner not to implement the normal and customary hourly rates in effect as of January 1, 2013, as described above. Finally, MFC agreed to additional reductions of $100,000 in fees in settlement of the *Omnibus Objection of the United States Trustee Regarding Fee Applications for Fourth Interim Awards of Compensation and Reimbursement of Expenses* filed December 9, 2013. MFC's total fee and expense reductions in the Fourth Interim Fee Period were approximately $630,479.

31.    On December 3, 2013, the Court received a letter from counsel to the Official Committee of Unsecured Creditors (the "Committee") requesting that the hearing on the final fee applications of the Examiner's professionals be adjourned from December 17, 2013, until the hearing on final fee applications of all professionals in the Chapter 11 Cases. The Examiner's counsel responded in a letter dated December 4, 2013, opposing the request to adjourn the December 17, 2013 hearing. On December 4, 2013, the Court entered an *Order Denying Request to Adjourn Fee Applications of The Examiner and His Professionals.*

32.    On December 10, 2013, the Committee filed a *Limited Objection to Certain Interim Fee Applications and The Final Fee Applications of the Examiner's Professionals* requesting that fee applications of the Examiner's professionals be heard on an interim basis and that the Court defer final approval of fee requests until final fee applications of all other estate professionals are filed and heard. At the hearing on December 17, 2013, the Court granted the Committee's request for adjournment and deferral of final consideration. As such, the Fourth and Final Application was heard on an interim basis only.

33.    On December 26, 2013, the Court entered the *Order Granting Applications for Allowance of Interim Compensation and Reimbursement of Expenses,* which granted MFC's

request for interim approval of fees for the Fourth Interim Fee Period in the amount of $2,799,686

and expenses in the amount of $12,752 (as adjusted).

## FEES AND EXPENSES INCURRED DURING THE PERIOD
## NOVEMBER 1, 2013 THROUGH DECEMBER 17, 2013

34.    By this Application, MFC seeks (i) the final allowance of compensation for

professional services rendered to the Examiner during the Fifth Interim Fee Period in the amount

of $57,179 and (ii) reimbursement of actual and necessary expenses incurred by MFC during the

Fifth Interim Fee Period in the amount of $-0-.    During the Fifth Interim Fee Period, MFC

professionals and paraprofessionals expended a total of 124.4 hours for which compensation is

requested.    The blended hourly rate for all services during the Fifth Interim Fee Period was $460.

35.    In the Fifth Interim Fee Period, MFC is not seeking compensation for 69.4

hours and $47,033 in fees or reimbursement for $1,457 in expenses incurred in this matter which

were voluntarily excluded from this Fifth and Final Application.    Additionally, MFC's Fifth and

Final Application for this Fifth Interim Fee Period reflects a voluntary reduction of approximately

$2,500 in connection with MFC's agreement with the Examiner not to implement the normal and

customary hourly rates in effect as of January 1, 2013, as described above.    As such, MFC's

voluntary fee and expense reductions in the Fifth Interim Fee Period have totaled approximately

$50,990.    MFC's average hourly rate including the voluntarily reduced hours was $295.

36.    Attached as **Exhibit A** is a summary of hours and fees incurred during the

Fifth Interim Fee Period setting forth the names, titles, hourly rates and total hours charged for the

professionals and paraprofessionals providing services during the Fifth Interim Fee Period.

Attached as **Exhibit B** is a summary schedule of hours and fees incurred by category of services

during the Fifth Interim Fee Period.    Attached as **Exhibit C** is a summary schedule of hours and

fees incurred by each professional for each category of services provided during the Fifth Interim Fee Period.  Attached as **Exhibit D** are the detailed daily descriptions of services rendered by each professional and paraprofessional and billed to the estates during the Fifth Interim Fee Period for each category, including the hours necessarily incurred with respect to each task and the resultant fees.

37.    The following is a summary of the services provided by MFC professionals and paraprofessionals during the Fifth Interim Fee Period, by category:

a.    <u>Case Administration / General Bankruptcy Matters</u>

Fees: $806                Hours: 0.9

During the Fifth Interim Fee Period, MFC assisted Chadbourne with addressing the preservation of materials supporting the investigation in this matter.

b.    <u>Fee / Retention Applications</u>

Fees: $56,373            Hours: 123.5

This category includes the preparation of the detailed monthly statements and interim fee applications, as required, to comply with the Bankruptcy Code, the Bankruptcy Rules, the Guidelines, the Interim Compensation Order and other guidelines governing the payment of professionals in these cases.  In this regard, MFC prepared the Fourth and Final Application, including both narrative and exhibits.  While MFC responded to the *Omnibus Objection of the United States Trustee Regarding Fee Applications for Fourth Interim Compensation and Reimbursement of Expenses* filed December 9, 2013, as well as informal inquiries about fee-related issues from certain creditors, the hours and related fees have not been included in this Application.  In total for the Final Application Period, after consideration of voluntary reductions and agreed reductions in settlement of objections filed by the United States Trustee, MFC billed a

total of approximately $409,000 for fees related to the preparation of fee statements and fee applications, comprising approximately 1.0% of total fees billed for all categories.

## FEES AND EXPENSES INCURRED DURING THE PERIOD
## JULY 24, 2012 THROUGH DECEMBER 17, 2013

38.    By this Application, MFC seeks (i) the final allowance of compensation for professional services rendered to the Examiner during the Final Application Period extending from July 24, 2012 through December 17, 2013, in the amount of $39,492,705 and (ii) final approval of reimbursement of actual and necessary expenses incurred by MFC during the Final Application Period in the amount of $344,747.   During the Final Application Period, MFC professionals and paraprofessionals expended a total of 63,942.5 hours for which compensation is requested.   The blended hourly rate for all services during the Final Application Period was $618. MFC's average hourly rate including the 1,444.8 voluntarily reduced hours described in further detail below was $604.

39.    MFC has received interim payments of $37,189,438 to date, as allowed and approved by the Court on an interim basis or paid pursuant to the Interim Compensation Order. MFC is owed $2,648,013 in fees and $-0- in expenses, for a total of $2,648,013, subject to final allowance and approval of the Court.

40.    During the Final Application Period, other than pursuant to the Interim Compensation Order, MFC has received no payment and no promises for payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered in this Fifth and Final Application.   No agreement or understanding exists between MFC and any other person for the sharing of compensation to be received for services rendered in, or in connection with, these cases.

41.    Attached as **Exhibit E** are the names, positions, hourly rates, and a summary of hours charged for the professionals whose services were billed in connection with these cases for the Final Application Period.  Attached as **Exhibit F** is a summary schedule of hours charged and fees incurred by professional for each interim application period during the Final Application Period.  Attached as **Exhibit G** is a summary schedule of hours charged and fees incurred by category of services for each interim application period during the Final Application Period.  Attached as **Exhibit H** is a summary schedule of actual and necessary expenses incurred for each interim application period during the Final Application Period.  The interim fee applications filed by MFC in this matter include detailed descriptions of the services performed in each category and supporting daily time and expense detail for each professional and paraprofessional and are incorporated herein by reference.

42.    The Examiner's Report was the culmination of a ten-month investigation that assessed and identified a myriad of causes of action, potentially worth billions of dollars, arising from dozens of pre-petition and post-petition transactions involving ResCap, AFI, Ally Bank, Cerberus and other affiliated parties, including but not limited to the following:

- transfers of cash, assets, property, stock, contracts, or other items of value including any servicing agreements, repurchase transactions, exchange offers, hedging arrangements, derivative agreements or contracts, swap agreements or contracts, or foreign exchange agreements or contracts;

- payments, dividends, or capital contributions;

- extensions of loans or lines of credit, including factoring arrangements;

- debt, or liens related thereto, or the transfer, assignment, repayment, or forgiveness of such debt;

- claims and payments made on account of such claims;

- negotiation and entry into plan sponsor, plan support, or settlement agreement;

- the debtor-in-possession financing with AFI;

- the stalking horse asset purchase agreement with AFI;

- the post-petition servicing agreements with Ally Bank;

- activities of the Debtors' officers and board of directors concerning pre-petition and post-petition transactions and agreements;

- the Debtors' decision to file (or to refrain from filing, or delaying the filing of) voluntary petitions under Chapter 11 of the United States Bankruptcy Code;

- the Debtors' decisions to pursue (or refrain from pursuing) a sale of substantially all of their assets; and

- the financial and related foundational aspects of state and federal law claims or causes of action of the Debtors against current or former directors and officers of the Debtors, and against AFI and/or its insiders including current and former directors, officers, and shareholders, including but not limited to the following:

  o preference and fraudulent transfer claims,

  o equitable subordination claims,

  o alter ego and veil piercing claims,

  o debt recharacterization claims,

  o constructive trust and unjust enrichment claims,

  o breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims,

  o securities law claims,

  o claims held by third parties, *i.e.,* parties that are not affiliates of the Debtors, and

  o the value of the releases contemplated by the Debtors.

43.    During the course of the entire investigation, over nine million pages of documents were reviewed, 99 days of interviews were conducted, and 66 third-party meetings were held.  The complexity and scope of the transactions required that MFC perform discrete quantitative financial, accounting, tax, economic, and valuation analyses of transactions occurring over a period exceeding seven years, as well as qualitative analyses as to ResCap's decision

making process and governance.  MFC produced numerous analyses summarizing the financial aspects of many of the transactions under review, including analytical support regarding reasonably equivalent value, damages, and quantitative aspects of certain liability assessments. MFC also contributed specialized industry knowledge necessary to document and analyze practices specific to operating a business that originates, services, and securitizes residential mortgage loans, as well as litigation attendant therewith.  Further, because a thorough analysis of ResCap's financial condition was a central underpinning of many of these investigatory areas, MFC's work included assessing balance sheet solvency, adequacy of capital, and ability to pay debts as they became due over the relevant time periods for the Debtors and key subsidiaries.

44.    The Examiner's Report, which was filed under seal on May 13, 2013, comprised over 2,200 pages and contained approximately 9,500 footnotes, 180 exhibits, and 58 appendices.  The report included analyses of every material transaction between and among ResCap, AFI, and their corporate affiliates over a seven-year period, involving complicated financings, asset sales, mortgage-backed securities, derivatives and swaps, among other areas of investigation. The Examiner's Report provided determinations on every material transaction and business dealing and its impact on the overall potential claims implicated thereby.  MFC had primary responsibility for drafting certain report sections, including those addressing macroeconomic, industry, and capital markets developments and their impact on ResCap and other affiliated entities; the financial condition and solvency of ResCap and its major subsidiaries, GMAC Mortgage and Residential Funding Company; the reasonably equivalent value exchanged in transactions involving Ally Bank and other asset sales; and the financial, tax, and accounting impacts of various other pre-petition and post-petition transactions. MFC had joint or secondary responsibility with its Chadbourne counterparts for developing the factual record, describing the bases of the potential claims, and drafting or reviewing the remaining report sections, including,

but not limited to, significant assistance with summarizing the investigations of the board of directors and third-party claims.  MFC also was primarily responsible for preparing report exhibits and appendices, including detailed tables, figures, charts, and graphs.  Concurrently with the filing of the Examiner's Report, AFI agreed to a $2.1 billion settlement and entered into a comprehensive plan support agreement with ResCap and the Committee that formed the basis for the ultimate confirmation of the Second Amended Plan.

45.    MFC performed the professional services described herein at the request and direction of the Examiner and his counsel, and closely coordinated such services with the Examiner and his counsel. Communication among MFC, the Examiner, and his counsel was frequent, and such communication was critical to ensuring that MFC's work was performed in an efficient and effective manner.  MFC communicated and met with the Examiner and Chadbourne to evaluate the results of the factual investigation and analyses performed, to coalesce around the theories and evidence that supported or refuted the likelihood that any given cause of action would prevail, and to reflect those conclusions in the Examiner's Report.  Weekly update calls between Chadbourne and MFC as well as weekly calls among Chadbourne, MFC, and the Examiner continued through report issuance.  MFC's various transaction and functional teams, as well as the engagement leadership team, spoke or met regularly to plan and coordinate work, assess progress, finalize the document reviews and analyses underway, and complete preparation of the Examiner's Report.  MFC participated in numerous ancillary discussions within the various transaction teams and between these teams and the Chadbourne attorneys responsible for defining and developing the basis for each cause of action.  Efforts were led by approximately eleven different substantive teams, including members from both MFC and Chadbourne, investigating over 30 different transactions.  Given the enormity of the investigation, the teams met routinely to discuss the status of their analyses and to share relevant findings from the investigation.  Whether

internal or with counsel, various meetings and calls had multiple participants to ensure that individuals with different subject matter knowledge, functional areas of expertise, or roles within the transaction and engagement teams were involved and provided with appropriate information and guidance. Given the breadth and complexity of the subject matter and the limited time allotted for the Examiner's investigation, frequent communication within MFC's leadership and project teams, as well as between MFC, Chadbourne, and the Examiner, was critical to ensuring that the investigation progressed effectively, work was coordinated to avoid duplication of effort, information was disseminated in a timely and efficient manner to appropriate individuals working on a variety of distinct yet interrelated efforts, and that the resultant Examiner's Report could be completed expeditiously, effectively, and accurately.

46.    All professional services and expenses for which an allowance is requested were performed or incurred by MFC for and on behalf of the Examiner and not on behalf of any other entity or party-in-interest.

47.    MFC has made every effort to keep the time expended to the lowest amount practicable and to have the work performed by the least expensive professional capable of performing the tasks.

48.    The fees and expenses sought by MFC, except to the extent prohibited by the Guidelines or as otherwise noted herein, are billed in accordance with practices customarily employed by MFC and generally accepted by MFC's clients. MFC's rates are established after a comprehensive review of public information regarding competitors' requested rates of compensation and careful consideration of the marketplace by our senior leadership team, and are routinely and generally applicable to all clients.

49.    MFC has applied various limitations to reimbursement requested for out-of-pocket expenses incurred. MFC has billed airfare only for coach class tickets or the

22

contemporaneous equivalent thereto; has not billed in-town ground transportation; has limited lodging to the lesser of actual cost or $400 per night; has limited amounts billed for each out of town or overtime meal to the lesser of actual cost or $20 per person; and has limited charges for copies to the lesser of $0.10 per page or cost. As described further below, MFC has also applied reductions in connection with local rules regarding overtime meals and transportation and certain travel to New York.

50.    MFC has made voluntary and other reductions to its fees throughout the course of these Chapter 11 Cases that would not necessarily have been required in other matters, in an amount in excess of $2,329,000. These reductions are comprised of the following:

a.    As described above, MFC typically implements structural increases to its hourly rates on January 1 and maturation increases on April 1 each year. At the request of the Examiner, MFC did not implement structural increases in the ResCap matter. Therefore, from and after January 1, 2013, MFC charged a lower hourly rate for its work on the ResCap matter than it generally and customarily charged and collected for its work for other clients. As a result, MFC has voluntarily reduced the fees requested in the ResCap matter by approximately $1,168,000 relative to the standard rates to which it was entitled pursuant to the terms of the Retention Order.

b.    MFC applied voluntary discounts to the fees reflected in its fee applications, including the following:

i.    MFC reduced fees for travel time by 50%, and limited time charged per trip to 4.0 hours, resulting in a reduction of approximately $399,000;

23

      ii.  MFC reduced fees related to the preparation of its retention application by 75%, or approximately $84,000; and

     iii.  MFC reduced fees related to the preparation of its fee statements in the Fifth Interim Fee Period by approximately $53,000.

   c.  MFC deducted approximately $353,000 from fees reflected in its fee applications to address issues raised by the United States Trustee, such as charges related to billing and budgeting, "vague" time entries, multiple attendees at meetings, and other reductions that MFC would not necessarily or typically have been asked for (or agreed to) in non-bankruptcy matters.

   d.  MFC also did not include or request compensation in its fee applications for approximately $272,000 in other fees incurred in connection with the ResCap matter for which MFC would not necessarily or typically have been asked for (or agreed to) reductions in non-bankruptcy matters, such as fees incurred in responding to the United States Trustee's fee objections and informal inquiries about fee-related issues from certain creditors, and fees incurred by transitory timekeepers.[6]

51.    MFC has made voluntary and other reductions to its expenses throughout the course of these Chapter 11 Cases that would not necessarily have been required in other matters, in an amount in excess of $136,000. These reductions are comprised of the following:

   a.  MFC deducted approximately $66,000 from expenses reflected in its fee applications to address issues raised by the United States Trustee, such as

---

6 In total, MFC did not include or request compensation in its fee applications for approximately 1,444.8 hours and $711,000 in other fees incurred in connection with the ResCap matter.

certain travel to New York by professionals based outside of New York, documentation of General Order M-447 compliance, and related items.

   b.   MFC also did not include or request reimbursement in its fee applications for approximately $70,000 in other expenses incurred in connection with the ResCap matter for which MFC would not necessarily or typically have been asked for (or agreed to) reductions in non-bankruptcy matters,[7] such as the following:

      i.   Approximately $27,000 in expenses incurred between May and December 2013 for travel to New York for professionals based outside of New York;

     ii.   Approximately $20,000 in lodging in excess of $400 per room;

   iii.   Approximately $11,000 in meals in excess of $20 per person;

   iv.   Approximately $8,000 in outsourced printing in excess of $0.10 per page; and

    v.   Approximately $4,000 in local and overtime/weekend ground transportation.

52.    When the concessions and reductions described in the preceding two paragraphs are included, MFC has reduced its fees and expenses requested in these Chapter 11 Cases by an aggregate of at least $2,465,000, or approximately 5.9% of the fees that MFC would have billed had it applied the standard non-bankruptcy hourly rates and billing practices.

53.    Based on the factors set forth above, the amounts requested by MFC are fair and reasonable given: (i) the time and labor required; (ii) the novelty, complexity and size of

---

7 In total, MFC did not include or request reimbursement in its fee applications for approximately $105,000 in other expenses incurred in connection with the ResCap matter.

these Chapter 11 Cases; (iii) the time and labor required to provide financial advisory services to the Examiner; (iv) the time limitations imposed on the Examiner; (v) the nature and extent of the services rendered; (vi) MFC's experience, reputation and ability; (vii) the value of MFC's services; (viii) the fact that MFC's fees are based on the customary compensation charged by comparably skilled practitioners in cases other than in chapter 11; and (ix) the fact that MFC's fees are consistent with those awarded to financial advisors in chapter 11 cases of a similar size and complexity.

## NOTICE AND NO PRIOR APPLICATION

54.    Notice of this Application and of the hearing with respect hereto has been served upon the parties specified in the Interim Compensation Order in the manner required thereby.   In light of the nature of the relief requested herein, MFC submits that no further or other notice is required.

55.    No previous application for relief sought herein has been made to this or any other court, other than as described herein.

## CONCLUSION

**WHEREFORE,** MFC respectfully requests that this Court issue and enter an order (i) authorizing final compensation in the amount of $39,492,705 for professional services rendered and final reimbursement for actual and necessary expenses incurred in connection therewith in the amount of $344,747 during the Final Application Period, for total fees and expenses of $39,837,452, with such total including $57,179 for compensation for professional services rendered and $-0- for reimbursement of actual and necessary expenses incurred during the Fifth Interim Fee Period; (ii) authorizing and directing the Debtors to remit payment to MFC as set forth herein, less all amounts previously paid on account of such fees and expenses; and (iii) granting such other and further relief as this Court deems just and proper.

Dated:  New York, New York
         March 3, 2014

                              **MESIROW FINANCIAL CONSULTING, LLC**


                              By: _/s/ Ralph S. Tuliano_
                                  Ralph S. Tuliano
                                  Chief Executive Officer
                                  Mesirow Financial Consulting, LLC
                                  666 Third Avenue, 21st Floor
                                  New York, NY  10017

**EXHIBIT A**

RESIDENTIAL CAPITAL, LLC, et al.
Summary Sheet

| | | | | |
|---|---|---|---|---|
| In re: | ) IN PROCEEDINGS UNDER | Fees Previously Requested | $  39,845,872 | Name of Applicant: |
| RESIDENTIAL CAPITAL, | ) CHAPTER 11 | Fees Previously Paid | $  36,844,690 | Mesirow Financial Consulting, LLC |
| LLC, et al., | ) (Jointly Administered) | | | |
| | ) | | | |
| | ) Case No. 12-12020 (MG) | Expenses Previously Requested | $  410,964 | Role in the Case: |
| | ) | Expenses Previously Paid | $  344,747 | Financial Advisor to the Examiner |
| Debtors. | ) | | | |

**INTERIM FEE APPLICATION SUMMARY SHEET**

Current Statement:
(November 1, 2013 through December 17, 2013)

| | | |
|---|---|---|
| Total Fees Requested | $ | 57,179 |
| Total Expenses Requested | $ | - |

| PROFESSIONALS | | HOURS BILLED IN APPLICATION | HOURLY RATE | FEES BILLED IN APPLICATION |
|---|---|---|---|---|
| Name | Position | | | |
| Tuliano, Ralph | Chief Executive Officer | 6.4 | $        895 | $        5,728 |
| Knoll, Melissa | Sr. Managing Director | 34.8 | 895 | 31,146 |
| Weinberg, Jonathan | Sr. Vice President | 5.5 | 725 | 3,988 |
| Velasco, Jin | Paraprofessional | 77.7 | 210 | 16,317 |
| **TOTAL PROFESSIONAL HOURS AND FEES** [1] | | **124.4** | | **$        57,179** |
| **TOTAL EXPENSES** | | | | **-** |
| **TOTAL FEES AND EXPENSES** | | | | **$        57,179** |

**Total Blended Hourly Rate Including/Excluding Paraprofessionals and Analysts** [2]        $460 / $875

[1] MFC is not seeking compensation for 69.4 hours and $47,033 in fees or reimbursement for $1,457 in expenses incurred during the Fifth Interim Fee Period but voluntarily excluded from this Application.

[2] MFC's average hourly rate including the voluntarily reduced hours is $295.

**EXHIBIT B**

RESIDENTIAL CAPITAL, LLC, et al.
Summary of Hours and Fees Incurred by Category
November 1, 2013 through December 17, 2013

| **Category** | **Hours** | | **Fees** |
|---|---|---|---|
| Case Administration/General Bankruptcy Matters | 0.9 | $ | 806 |
| Fee/Retention Applications | 123.5 | | 56,373 |
| **TOTAL HOURS AND FEES** [1] | **124.4** | **$** | **57,179** |

[1]  MFC is not seeking compensation for 69.4 hours and $47,033 in fees incurred during the Fifth Interim Fee Period but voluntarily excluded from this Application.

# EXHIBIT C

RESIDENTIAL CAPITAL, LLC, et al.
Summary of Hours and Fees Incurred by Professional by Category
November 1, 2013 through December 17, 2013

## **Hours**

| Name | Position | Case Administration/ General Bankruptcy Matters | Fee/Retention Applications | **TOTAL HOURS** |
|------|----------|:---:|:---:|:---:|
| Tuliano, Ralph | Chief Executive Officer | - | 6.4 | 6.4 |
| Knoll, Melissa | Sr. Managing Director | 0.9 | 33.9 | 34.8 |
| Weinberg, Jonathan | Sr. Vice President | - | 5.5 | 5.5 |
| Velasco, Jin | Paraprofessional | - | 77.7 | 77.7 |
| **TOTAL HOURS** | | **0.9** | **123.5** | **124.4** |

## **Fees**

| Name | Position | Case Administration/ General Bankruptcy Matters | Fee/Retention Applications | **TOTAL FEES** |
|------|----------|:---:|:---:|:---:|
| Tuliano, Ralph | Chief Executive Officer | $ - | $ 5,728 | $ 5,728 |
| Knoll, Melissa | Sr. Managing Director | 806 | 30,341 | 31,147 |
| Weinberg, Jonathan | Sr. Vice President | - | 3,988 | 3,988 |
| Velasco, Jin | Paraprofessional | - | 16,317 | 16,317 |
| **TOTAL FEES** [1] | | **$ 806** | **$ 56,373** | **$ 57,179** |

[1] MFC is not seeking compensation for 69.4 hours and $47,033 in fees incurred during the Fifth Interim Fee Period but voluntarily excluded from this Application.

**EXHIBIT D**

RESIDENTIAL CAPITAL, LLC, et al.
Case Administration/General Bankruptcy Matters
November 1, 2013 through December 17, 2013

| Name | Date | Description | Time | Amount |
|------|------|-------------|------|--------|
| Knoll, Melissa | 11/01/13 | Confer with A. Vanderkamp and S. George (both of MFC) regarding Chadbourne's request on workpaper retention. | 0.2 | $ 179 |
| Knoll, Melissa | 11/01/13 | Reply to M. Ashley (Chadbourne) email regarding workpapers and documents retained therein. | 0.1 | $ 90 |
| Knoll, Melissa | 11/06/13 | Call with M. Ashley, B. Miller (both of Chadbourne) and A. Vanderkamp (MFC) regarding preservation of materials supporting investigation. | 0.6 | $ 537 |
| | | *Case Administration/General Bankruptcy Matters Total* | **0.9** | **$ 806** |

**EXHIBIT D**

RESIDENTIAL CAPITAL, LLC, et al.
Fee/Retention Applications
November 1, 2013 through December 17, 2013

| Name | Date | Description | Time | Amount |
|------|------|-------------|------|--------|
| Velasco, Jin | 11/04/13 | Review and incorporate May information for fourth interim exhibits. | 2.3 | $ 483 |
| Velasco, Jin | 11/04/13 | Review and incorporate June information for fourth interim exhibits. | 1.2 | $ 252 |
| Velasco, Jin | 11/04/13 | Review and incorporate July information for fourth interim exhibits. | 1.0 | $ 210 |
| Velasco, Jin | 11/04/13 | Review and incorporate August information for fourth interim exhibits. | 1.1 | $ 231 |
| Velasco, Jin | 11/05/13 | Review and incorporate first interim information for final fee application exhbits. | 3.6 | $ 756 |
| Velasco, Jin | 11/05/13 | Review and incorporate second interim information for final fee application exhbits. | 3.2 | $ 672 |
| Velasco, Jin | 11/06/13 | Review and incorporate third interim information for final fee application exhbits. | 2.8 | $ 588 |
| Velasco, Jin | 11/06/13 | Review and incorporate fourth interim information for final fee application exhibits. | 2.4 | $ 504 |
| Velasco, Jin | 11/08/13 | Update exhibits for fourth and final fee application. | 2.7 | $ 567 |
| Velasco, Jin | 11/08/13 | Review exhibit references in narrative for final fee application. | 0.6 | $ 126 |
| Velasco, Jin | 11/11/13 | Update formatting of exhibits for fourth and final fee application exhibits. | 2.4 | $ 504 |
| Velasco, Jin | 11/11/13 | Analyze and update reduction detail related to expenses for the fourth interim period. | 1.9 | $ 399 |
| Velasco, Jin | 11/11/13 | Analyze and update reduction detail related to time for the fourth interim period. | 2.4 | $ 504 |
| Knoll, Melissa | 11/12/13 | Discussion with R. Tuliano (MFC) regarding fee application content and timing. | 0.2 | $ 179 |
| Knoll, Melissa | 11/12/13 | Draft email to J. Velasco (MFC) regarding preparation of fee application. | 0.1 | $ 90 |
| Tuliano, Ralph | 11/12/13 | Discussion with M. Knoll (MFC) regarding fee application content and timing. | 0.2 | $ 179 |
| Velasco, Jin | 11/12/13 | Update reduction analyses to include time and expenses incurred through November. | 2.3 | $ 483 |
| Velasco, Jin | 11/13/13 | Update draft fee application exhibits based on comments received. | 2.8 | $ 588 |
| Knoll, Melissa | 11/14/13 | Review exhibits for final fee application. | 0.8 | $ 716 |
| Knoll, Melissa | 11/14/13 | Revise draft narrative for fourth and final fee application. | 3.9 | $ 3,491 |
| Velasco, Jin | 11/14/13 | Analyze and compare prior monthly statements and fee applications with draft final fee application data. | 3.7 | $ 777 |
| Velasco, Jin | 11/14/13 | Update and incorporate September through November detail for draft fee application exhibits. | 2.4 | $ 504 |
| Knoll, Melissa | 11/15/13 | Respond to comments from R. Tuliano (MFC) regarding fee application narrative. | 0.4 | $ 358 |
| Knoll, Melissa | 11/15/13 | Review November time detail exhibit  to fee application and advise on how to incorporate. | 0.3 | $ 269 |
| Knoll, Melissa | 11/15/13 | Review Chadbourne's fee application draft to identify relevant information and format regarding reductions for inclusion in MFC fee application. | 0.4 | $ 358 |
| Knoll, Melissa | 11/15/13 | Call with D. LeMay (Chadbourne) regarding fee application drafts. | 0.3 | $ 269 |
| Knoll, Melissa | 11/15/13 | Call with R. Tuliano (MFC) regarding comments on fee application and issues discussed with D. LeMay (Chadbourne). | 0.3 | $ 269 |
| Knoll, Melissa | 11/15/13 | Revise ResCap fee application narrative. | 3.0 | $ 2,685 |

**EXHIBIT D**

RESIDENTIAL CAPITAL, LLC, et al.
Fee/Retention Applications
November 1, 2013 through December 17, 2013

| Name | Date | Description | Time | Amount |
|------|------|-------------|------|--------|
| Knoll, Melissa | 11/15/13 | Review fee and expense reduction analysis and draft description for fee application. | 0.4 | $ 358 |
| Knoll, Melissa | 11/15/13 | Analyze reductions and draft related portions of fee application narrative. | 3.4 | $ 3,043 |
| Knoll, Melissa | 11/15/13 | Review and revise updated fee application narrative. | 0.6 | $ 537 |
| Knoll, Melissa | 11/15/13 | Call with J. Velasco (MFC) on changes to exhibits and calculation of amounts for fee application. | 0.3 | $ 269 |
| Knoll, Melissa | 11/15/13 | Call with J. Velasco (MFC) to review changes to fee application narrative and exhibits. | 0.4 | $ 358 |
| Knoll, Melissa | 11/15/13 | Review narrative and exhibits for fee application and revise accordingly. | 1.2 | $ 1,074 |
| Knoll, Melissa | 11/15/13 | Email draft fee application and exhibits to Examiner and Chadbourne for review. | 0.1 | $ 90 |
| Knoll, Melissa | 11/15/13 | Discussion with J. Velasco (MFC) regarding calculation of bill rate differentials and reductions. | 0.3 | $ 269 |
| Knoll, Melissa | 11/15/13 | Discussion with J. Velasco (MFC) regarding fee reductions and exhibits. | 0.2 | $ 179 |
| Tuliano, Ralph | 11/15/13 | Call with M. Knoll (MFC) regarding comments on fee application and issues discussed with D. LeMay (Chadbourne). | 0.3 | $ 269 |
| Velasco, Jin | 11/15/13 | Receive guidance from M. Knoll (MFC) on changes to exhibits and calculation of amounts for fee application. | 0.3 | $ 63 |
| Velasco, Jin | 11/15/13 | Receive guidance from M. Knoll (MFC) to review changes to fee application narrative and exhibits. | 0.4 | $ 84 |
| Velasco, Jin | 11/15/13 | Update draft exhibits for fourth and final fee application. | 3.8 | $ 798 |
| Velasco, Jin | 11/15/13 | Update draft narrative for fourth and final fee application. | 3.6 | $ 756 |
| Velasco, Jin | 11/15/13 | Revise footnotes for fourth and final fee application. | 1.6 | $ 336 |
| Velasco, Jin | 11/15/13 | Incorporate additional voluntary reductions for the fourth interim period. | 1.8 | $ 378 |
| Velasco, Jin | 11/15/13 | Receive guidance from M. Knoll (MFC) regarding calculation of bill rate differentials and reductions. | 0.3 | $ 63 |
| Velasco, Jin | 11/15/13 | Receive guidance from M. Knoll (MFC) regarding fee reductions and exhibits. | 0.2 | $ 42 |
| Velasco, Jin | 11/15/13 | Analyze and update reduction detail related to time and expenses for the fourth interim period. | 3.4 | $ 714 |
| Velasco, Jin | 11/15/13 | Analyze and update reduction detail related to time and expenses for entirety of engagement. | 2.5 | $ 525 |
| Knoll, Melissa | 11/16/13 | Send materials regarding fee application to J. Weinberg (MFC) for review. | 0.2 | $ 179 |
| Knoll, Melissa | 11/16/13 | Review and respond to comments from examiner and counsel on fee application. | 0.6 | $ 537 |
| Velasco, Jin | 11/16/13 | Assist and respond to questions from J. Weinberg (MFC) regarding review process for fourth and final fee application. | 1.6 | $ 336 |
| Velasco, Jin | 11/16/13 | Review and analyze schedules and summaries of fourth and final fee application. | 3.8 | $ 798 |
| Weinberg, Jonathan | 11/16/13 | Review and perform quality control of fourth and final fee application narrative and exhibits including comparison to previously filed interim fee applications. | 2.4 | $ 1,740 |

**EXHIBIT D**

RESIDENTIAL CAPITAL, LLC, et al.
Fee/Retention Applications
November 1, 2013 through December 17, 2013

| Name | Date | Description | Time | Amount |
|------|------|-------------|------|--------|
| Knoll, Melissa | 11/17/13 | Respond to comments from R. Tuliano (MFC) on final fee application regarding reductions. | 0.3 | $ 269 |
| Knoll, Melissa | 11/17/13 | Advise J. Velasco and J. Weinberg (both of MFC) regarding review of fee application. | 0.1 | $ 90 |
| Velasco, Jin | 11/17/13 | Assist and respond to questions from J. Weinberg (MFC) regarding review process of fourth and final fee application. | 1.4 | $ 294 |
| Velasco, Jin | 11/17/13 | Review and analyze schedules and summaries of fourth and final fee application. | 3.7 | $ 777 |
| Weinberg, Jonathan | 11/17/13 | Review and perform quality control of fourth and final fee application narrative and exhibits including comparison to previously filed interim fee applications. | 3.1 | $ 2,248 |
| Knoll, Melissa | 11/18/13 | Discuss fee application with R. Tuliano (MFC). | 0.2 | $ 179 |
| Knoll, Melissa | 11/18/13 | Follow up with counsel on fee application comments. | 0.1 | $ 90 |
| Knoll, Melissa | 11/18/13 | Discussion with J. Weinberg (MFC) regarding review of fee application. | 0.1 | $ 90 |
| Knoll, Melissa | 11/18/13 | Call with R. Tuliano (MFC) regarding fee application. | 0.2 | $ 179 |
| Knoll, Melissa | 11/18/13 | Revise fee application and certification. | 0.6 | $ 537 |
| Knoll, Melissa | 11/18/13 | Review and revise final fee application narrative and exhibits to identify and incorporate comments. | 2.3 | $ 2,059 |
| Knoll, Melissa | 11/18/13 | Call with J. Velasco (MFC) regarding final fee application narrative and exhibits to identify and incorporate comments. | 0.3 | $ 269 |
| Tuliano, Ralph | 11/18/13 | Discuss fee application with M. Knoll (MFC). | 0.2 | $ 179 |
| Tuliano, Ralph | 11/18/13 | Call with M. Knoll (MFC) regarding fee application. | 0.2 | $ 179 |
| Velasco, Jin | 11/18/13 | Update fee application package based on comments received. | 2.6 | $ 546 |
| Velasco, Jin | 11/18/13 | Calls with H. Lamb (Chadbourne) regarding timing for finalizing fourth and final fee application. | 0.5 | $ 105 |
| Velasco, Jin | 11/18/13 | Finalize fourth and final fee application and forward to H. Lamb (Chadbourne) for filing. | 1.2 | $ 252 |
| Velasco, Jin | 11/18/13 | Call with M. Knoll (MFC) regarding final fee application narrative and exhibits. | 0.3 | $ 63 |
| Knoll, Melissa | 11/20/13 | Draft correspondence to UST related to fee application and related reductions. | 1.1 | $ 985 |
| Knoll, Melissa | 11/20/13 | Analyze fee/retention-related fees and reductions and create summary analysis. | 1.9 | $ 1,701 |
| Velasco, Jin | 11/20/13 | Update reduction analyses to include additional schedule for fee application. | 1.5 | $ 315 |
| Knoll, Melissa | 11/21/13 | Review email from H. Lamb (Chadbourne) and advise on service of fee application. | 0.1 | $ 90 |
| Knoll, Melissa | 11/24/13 | Revise email to UST on fee application. | 0.3 | $ 269 |
| Knoll, Melissa | 11/25/13 | Respond to S. Nagle (Fried Frank) regarding letter to UST. | 0.1 | $ 90 |
| Knoll, Melissa | 12/16/13 | Coordinate with counsel on hearing preparation. | 0.1 | $ 90 |
| Knoll, Melissa | 12/16/13 | Accumulate materials for hearing. | 0.5 | $ 448 |
| Knoll, Melissa | 12/16/13 | Call with S. Nagle (Fried Frank) to prepare for hearing. | 0.2 | $ 179 |
| Knoll, Melissa | 12/16/13 | Review/revise fee schedules and analyses for UST settlement and other updates and prepare materials for hearing. | 1.4 | $ 1,253 |
| Knoll, Melissa | 12/16/13 | Reconcile amounts paid and owed and draft revised language on proposed order on fees. | 1.4 | $ 1,253 |

# EXHIBIT D

RESIDENTIAL CAPITAL, LLC, et al.
Fee/Retention Applications
November 1, 2013 through December 17, 2013

| Name | Date | Description | Time | | Amount |
|------|------|-------------|------|---|--------|
| Knoll, Melissa | 12/16/13 | Revise analysis of forecast vs. actual fees and related information for fee hearing. | 1.2 | $ | 1,074 |
| Tuliano, Ralph | 12/16/13 | Review fee application materials and related information in preparation for fee hearing. | 1.6 | $ | 1,432 |
| Velasco, Jin | 12/16/13 | Review proposed final fee order for payments paid and owed. | 2.8 | $ | 588 |
| Velasco, Jin | 12/16/13 | Update proposed final fee order for payments paid and owed. | 1.6 | $ | 336 |
| Knoll, Melissa | 12/17/13 | Discussion with R. Tuliano (MFC) to prepare for hearing. | 0.3 | $ | 269 |
| Knoll, Melissa | 12/17/13 | Various discussions with R. Tuliano (MFC), counsel and other professionals in advance of fee hearing. | 1.0 | $ | 895 |
| Knoll, Melissa | 12/17/13 | Attend hearing on fourth interim fee applications. | 2.4 | $ | 2,148 |
| Knoll, Melissa | 12/17/13 | Follow up discussion with R. Tuliano (MFC) and Chadbourne after hearing. | 0.2 | $ | 179 |
| Knoll, Melissa | 12/17/13 | Draft email to update J. Velasco (MFC) on fee hearing and advise on next steps. | 0.1 | $ | 90 |
| Tuliano, Ralph | 12/17/13 | Discussion with M. Knoll (MFC) to prepare for hearing. | 0.3 | $ | 269 |
| Tuliano, Ralph | 12/17/13 | Various discussions with M. Knoll (MFC), counsel and other professionals in advance of fee hearing. | 1.0 | $ | 895 |
| Tuliano, Ralph | 12/17/13 | Attend hearing on fourth interim applications. | 2.4 | $ | 2,148 |
| Tuliano, Ralph | 12/17/13 | Follow up discussion with M. Knoll (MFC) and Chadbourne after hearing. | 0.2 | $ | 179 |
| | | *Fee/Retention Applications Total* | **123.5** | **$** | **56,373** |

**EXHIBIT E**

RESIDENTIAL CAPITAL, LLC, et al.
Summary of Hours and Fees Incurred by Professional
July 24, 2012 through December 17, 2013

| PROFESSIONALS | | HOURS BILLED IN APPLICATION | HOURLY RATE [(1)] | FEES BILLED IN APPLICATION |
|---|---|---|---|---|
| Name | Position | | | |
| Tuliano, Ralph | Chief Executive Officer | 1,562.3 | $895 | $ 1,398,259 |
| Atkinson, James | Sr. Managing Director | 2,007.0 | 895 | 1,796,265 |
| duVair, Paul | Sr. Managing Director | 269.9 | 895 | 241,561 |
| Feltman, James | Sr. Managing Director | 1,329.6 | 895 | 1,189,992 |
| Kehl, Monty | Sr. Managing Director | 30.5 | 895 | 27,298 |
| Lacativo, Bert | Sr. Managing Director | 771.3 | 895 | 690,314 |
| Knoll, Melissa | Sr. Managing Director | 1,999.6 | 895 | 1,789,597 |
| Williams, Jack | Sr. Managing Director | 1,610.2 | 895 | 1,441,129 |
| Winford, Kristin | Sr. Managing Director | 273.4 | 895 | 244,693 |
| Jones, Thomas | Managing Director | 102.8 | 855 | 87,894 |
| Kerr, William | Managing Director | 112.5 | 855 | 96,188 |
| King, David | Managing Director | 1,311.3 | 855 | 1,121,162 |
| Martin, Timothy | Managing Director | 1,973.9 | 855 | 1,687,685 |
| Mathieu, Ken | Managing Director | 1,763.4 | 855 | 1,507,707 |
| McColgan, Kevin | Managing Director | 1,796.8 | 855 | 1,536,264 |
| Seabury, Susan | Managing Director | 696.0 | 855 | 595,080 |
| Steele, Mathew | Managing Director | 818.8 | 855 | 700,074 |
| Troia, Donna | Managing Director | 1,661.9 | 855 | 1,420,925 |
| Vahey, Brian | Managing Director | 61.9 | 855 | 52,925 |
| Wei, Ben | Managing Director | 178.5 | 855 | 152,618 |
| Woodford, Dave | Managing Director | 72.0 | 855 | 61,560 |
| Faulkner, Kevin | Sr. Vice President | 63.6 | 755 | 48,018 |
| Ortega, Adam | Sr. Vice President | 1,218.2 | 755 | 919,741 |
| Pachmayer, Bob | Sr. Vice President | 249.3 | 755 | 188,222 |
| Sartori, Elisa | Sr. Vice President | 869.2 | 755 | 656,246 |
| Tan, Ching Wei | Sr. Vice President | 1,799.3 | 755 | 1,358,472 |
| Vanderkamp, Anne | Sr. Vice President | 1,697.0 | 755 | 1,281,235 |
| Vidal, Adriana | Sr. Vice President | 398.6 | 755 | 300,943 |
| Hughes, Ruth | Sr. Vice President | 1,376.1 | 695 / 725 | 967,571 |
| Lorch, Mark | Sr. Vice President | 1,607.4 | 695 / 725 | 1,131,234 |
| Sorondo, Jean-Louis | Sr. Vice President | 72.2 | 695 / 725 | 51,454 |
| Weinberg, Jonathan | Sr. Vice President | 2,147.3 | 695 / 725 | 1,503,165 |
| Zembillas, Michael | Sr. Vice President | 865.3 | 695 / 725 | 606,142 |
| George, Shante | Sr. Vice President | 1,521.7 | 695 / 725 | 1,057,678 |
| Korycki, Mary | Sr. Vice President | 1,143.5 | 695 | 794,733 |
| Bourgeois, Jared | VP / Sr. VP | 1,191.1 | 655 / 695 | 794,595 |
| Ozgozukara, Omer | VP / Sr. VP | 1,570.8 | 655 / 695 | 1,047,026 |
| Rychalsky, David | VP / Sr. VP | 1,179.0 | 655 / 695 | 780,393 |
| McConnell, Jennifer | Vice President | 463.3 | 655 | 303,462 |
| Eidson, Bert | Vice President | 200.9 | 625 | 125,563 |
| Markin, Eric | Vice President | 100.4 | 625 | 62,750 |
| Fish, Rachel | Vice President | 785.9 | 595 / 625 | 480,526 |
| Parkins, Zachary | Vice President | 649.7 | 595 / 625 | 388,975 |
| Reinke, Allison | Vice President | 833.6 | 595 / 625 | 505,769 |
| Yamauchi, Ryan | Vice President | 654.7 | 595 / 625 | 393,138 |
| Boyer, Michael | Sr. Assoc / VP | 616.7 | 555 / 595 | 351,413 |
| Croley, Brandon | Sr. Associate | 1,277.9 | 495 / 525 | 640,616 |
| Jones, Teag | Sr. Associate | 782.9 | 495 / 525 | 389,198 |
| Meegan, Sara | Sr. Associate | 1,316.0 | 495 / 525 | 662,544 |
| Ruegg, Daniel | Sr. Associate | 1,078.0 | 495 / 525 | 544,758 |
| Saitta, Joseph | Associate | 1,613.1 | 355 / 425 | 592,804 |
| Sitomer, Alex | Associate | 141.1 | 495 | 69,845 |
| Crisman, Daniel | Associate | 907.8 | 355 | 322,269 |
| Nyhus, Erik | Associate | 76.7 | 355 | 37,127 |

**EXHIBIT E**

RESIDENTIAL CAPITAL, LLC, et al.
Summary of Hours and Fees Incurred by Professional
July 24, 2012 through December 17, 2013

| PROFESSIONALS | | HOURS BILLED IN APPLICATION | HOURLY RATE [1] | FEES BILLED IN APPLICATION |
|---|---|---|---|---|
| Name | Position | | | |
| Blake, Eric | Associate | 1,352.2 | 315 / 355 | 441,987 |
| Han, Elijah | Associate | 701.3 | 315 / 355 | 224,086 |
| Merced, Justin | Associate | 1,693.2 | 315 / 355 | 548,742 |
| Duncan, Oneika | Analyst / Sr. Analyst | 1,907.9 | 210 / 250 | 412,647 |
| Christiansen, Jordan | Analyst | 206.5 | 210 | 43,365 |
| Gould, Erica | Analyst | 271.4 | 210 | 56,994 |
| Jacob, Shery | Analyst | 617.6 | 210 | 129,696 |
| Karki, Vera | Analyst | 1,223.9 | 210 | 257,019 |
| Roach, Bruce | Analyst | 456.1 | 210 | 95,781 |
| Strong, Takara | Analyst | 929.1 | 210 | 195,111 |
| Voronovitskaia, Alla | Analyst | 1,725.6 | 210 | 362,376 |
| Amiot, Alison | Paraprofessional | 36.5 | 210 | 7,665 |
| Cummings, Colleen | Paraprofessional | 235.2 | 210 | 49,392 |
| Velasco, Jin | Paraprofessional | 1,714.1 | 210 | 359,961 |
| **SUBTOTAL** | | 63,942.5 | | $  40,381,623 |
| Less 50% Reduction in Travel | | | | (398,816) |
| Less Voluntary Reduction [2] [3] | | | | (136,934) |
| Less Voluntary Reduction – U.S. Trustee Settlements | | | | (353,168) |
| **TOTAL PROFESSIONAL HOURS AND FEES** | | **63,942.5** | | **$  39,492,705** |
| **TOTAL EXPENSES [4]** | | | | **344,747** |
| **TOTAL FEES AND EXPENSES** | | | | **$  39,837,452** |
| TOTAL BLENDED HOURLY RATE [5] | | | $  618 | |
| TOTAL BLENDED HOURLY RATE (excluding Paraprofessionals) | | | $  687 | |

[1]  MFC did not implement its customary structural rate increases as of January 1, 2013 per the request of the Examiner and implemented maturation increases only as of April 1, 2013.

[2]  Voluntary fee reduction as discussed in paragraph 50(b) of this Application.

[3]  MFC is also not seeking compensation for approximately $711,000 in fees and 1,444.8 hours incurred in this matter during the Final Application Period but voluntarily excluded as discussed in paragraph 50(d) of this Application.

[4]  Expenses requested of $410,963 less $66,216 of U.S. Trustee reductions.

[5]  MFC's average hourly rate including the voluntarily reduced hours is $604.

**EXHIBIT F**

RESIDENTIAL CAPITAL, LLC, et al.

Summary of Hours Incurred By Professional Staff

July 24, 2012 through December 17, 2013

| Name | Position | First Interim Hours | Second Interim Hours | Third Interim Hours | Fourth Interim Hours | Fifth Interim Hours | Total |
|------|----------|------:|------:|------:|------:|------:|------:|
| Tuliano, Ralph | Chief Executive Officer | 143.1 | 462.7 | 838.7 | 111.4 | 6.4 | 1,562.3 |
| Atkinson, James | Sr. Managing Director | 211.6 | 691.3 | 1,023.0 | 81.1 | - | 2,007.0 |
| duVair, Paul | Sr. Managing Director | - | - | 175.4 | 94.5 | - | 269.9 |
| Feltman, James | Sr. Managing Director | 91.2 | 373.4 | 798.3 | 66.7 | - | 1,329.6 |
| Kehl, Monty | Sr. Managing Director | 30.5 | - | - | - | - | 30.5 |
| Lacativo, Bert | Sr. Managing Director | 51.6 | 418.1 | 301.6 | - | - | 771.3 |
| Knoll, Melissa | Sr. Managing Director | 256.9 | 515.4 | 953.4 | 239.1 | 34.8 | 1,999.6 |
| Williams, Jack | Sr. Managing Director | 237.2 | 524.0 | 786.1 | 62.9 | - | 1,610.2 |
| Winford, Kristin | Sr. Managing Director | - | 46.1 | 174.6 | 52.7 | - | 273.4 |
| Jones, Thomas | Managing Director | - | - | 102.8 | - | - | 102.8 |
| Kerr, William | Managing Director | 85.5 | 27.0 | - | - | - | 112.5 |
| King, David | Managing Director | 119.9 | 361.2 | 721.6 | 108.6 | - | 1,311.3 |
| Martin, Timothy | Managing Director | 191.6 | 694.6 | 1,012.8 | 74.9 | - | 1,973.9 |
| Mathieu, Ken | Managing Director | 131.3 | 543.2 | 992.8 | 96.1 | - | 1,763.4 |
| McColgan, Kevin | Managing Director | 163.5 | 558.5 | 975.8 | 99.0 | - | 1,796.8 |
| Seabury, Susan | Managing Director | 36.3 | 99.1 | 487.2 | 73.4 | - | 696.0 |
| Steele, Mathew | Managing Director | 50.6 | 166.4 | 515.6 | 86.2 | - | 818.8 |
| Troia, Donna | Managing Director | 15.1 | 644.2 | 929.8 | 72.8 | - | 1,661.9 |
| Vahey, Brian | Managing Director | 61.9 | - | - | - | - | 61.9 |
| Wei, Ben | Managing Director | - | - | 114.0 | 64.5 | - | 178.5 |
| Woodford, Dave | Managing Director | 26.5 | 45.5 | - | - | - | 72.0 |
| Faulkner, Kevin | Sr. Vice President | 17.3 | 33.2 | 13.1 | - | - | 63.6 |
| Ortega, Adam | Sr. Vice President | 99.8 | 196.5 | 831.9 | 90.0 | - | 1,218.2 |
| Pachmayer, Bob | Sr. Vice President | 102.4 | 53.9 | 77.5 | 15.5 | - | 249.3 |
| Sartori, Elisa | Sr. Vice President | 30.3 | 155.8 | 642.1 | 41.0 | - | 869.2 |
| Tan, Ching Wei | Sr. Vice President | 131.3 | 557.6 | 991.2 | 119.2 | - | 1,799.3 |
| Vanderkamp, Anne | Sr. Vice President | 99.6 | 464.4 | 1,014.4 | 118.6 | - | 1,697.0 |
| Vidal, Adriana | Sr. Vice President | 48.6 | 212.5 | 137.5 | - | - | 398.6 |
| Hughes, Ruth | Sr. Vice President | 27.3 | 349.5 | 895.8 | 103.5 | - | 1,376.1 |
| Lorch, Mark | Sr. Vice President | 41.0 | 433.8 | 965.7 | 166.9 | - | 1,607.4 |
| Sorondo, Jean-Louis | Sr. Vice President | - | - | 72.2 | - | - | 72.2 |
| Weinberg, Jonathan | Sr. Vice President | 142.0 | 746.6 | 1,188.8 | 64.4 | 5.5 | 2,147.3 |
| Zembillas, Michael | Sr. Vice President | 90.2 | 214.5 | 526.6 | 34.0 | - | 865.3 |
| George, Shante | Sr. Vice President | 215.0 | 704.2 | 599.3 | 3.2 | - | 1,521.7 |
| Korycki, Mary | Sr. Vice President | 159.4 | 430.8 | 553.3 | - | - | 1,143.5 |
| Bourgeois, Jared | VP / Sr. VP | - | 250.0 | 842.5 | 98.6 | - | 1,191.1 |
| Ozgozukara, Omer | VP / Sr. VP | 106.4 | 217.0 | 1,077.9 | 169.5 | - | 1,570.8 |
| Rychalsky, David | VP / Sr. VP | 135.5 | 239.3 | 730.4 | 73.8 | - | 1,179.0 |
| McConnell, Jennifer | Vice President | - | - | 387.6 | 75.7 | - | 463.3 |
| Eidson, Bert | Vice President | - | 130.4 | 70.5 | - | - | 200.9 |
| Markin, Eric | Vice President | - | 48.0 | 52.4 | - | - | 100.4 |
| Fish, Rachel | Vice President | 47.5 | 30.1 | 551.3 | 157.0 | - | 785.9 |
| Parkins, Zachary | Vice President | - | - | 649.7 | - | - | 649.7 |
| Reinke, Allison | Vice President | - | - | 737.0 | 96.6 | - | 833.6 |
| Yamauchi, Ryan | Vice President | - | - | 568.7 | 86.0 | - | 654.7 |
| Boyer, Michael | Sr. Assoc / VP | - | - | 521.1 | 95.6 | - | 616.7 |
| Croley, Brandon | Sr. Associate | - | 368.7 | 850.0 | 59.2 | - | 1,277.9 |
| Jones, Teag | Sr. Associate | 42.9 | 172.5 | 567.5 | - | - | 782.9 |
| Meegan, Sara | Sr. Associate | 146.9 | 225.8 | 832.9 | 110.4 | - | 1,316.0 |
| Ruegg, Daniel | Sr. Associate | 68.8 | 116.8 | 736.6 | 155.8 | - | 1,078.0 |
| Saitta, Joseph | Associate | 76.7 | 508.1 | 959.5 | 68.8 | - | 1,613.1 |
| Sitomer, Alex | Associate | 141.1 | - | - | - | - | 141.1 |

**EXHIBIT F**

RESIDENTIAL CAPITAL, LLC, et al.

Summary of Hours Incurred By Professional Staff

July 24, 2012 through December 17, 2013

| Name | Position | First Interim Hours | Second Interim Hours | Third Interim Hours | Fourth Interim Hours | Fifth Interim Hours | Total |
|------|----------|--------------------:|---------------------:|--------------------:|---------------------:|--------------------:|------:|
| Crisman, Daniel | Associate | 37.0 | 76.3 | 663.3 | 131.2 | - | 907.8 |
| Nyhus, Erik | Associate | - | - | 6.0 | 70.7 | - | 76.7 |
| Blake, Eric | Associate | 193.2 | 379.5 | 647.9 | 131.6 | - | 1,352.2 |
| Han, Elijah | Associate | 148.9 | 35.7 | 481.8 | 34.9 | - | 701.3 |
| Merced, Justin | Associate | - | 490.4 | 1,099.4 | 103.4 | - | 1,693.2 |
| Duncan, Oneika | Analyst / Sr. Analyst | 156.0 | 718.2 | 931.3 | 102.4 | - | 1,907.9 |
| Christiansen, Jordan | Analyst | - | - | 206.5 | - | - | 206.5 |
| Gould, Erica | Analyst | - | 116.5 | 154.9 | - | - | 271.4 |
| Jacob, Shery | Analyst | - | - | 553.6 | 64.0 | - | 617.6 |
| Karki, Vera | Analyst | - | 85.0 | 1,002.6 | 136.3 | - | 1,223.9 |
| Roach, Bruce | Analyst | - | 456.1 | - | - | - | 456.1 |
| Strong, Takara | Analyst | - | 138.7 | 710.8 | 79.6 | - | 929.1 |
| Voronovitskaia, Alla | Analyst | - | 689.2 | 727.9 | 308.5 | - | 1,725.6 |
| Amiot, Alison | Paraprofessional | - | - | 21.7 | 14.8 | - | 36.5 |
| Cummings, Colleen | Paraprofessional | 10.8 | 55.9 | 93.8 | 74.7 | - | 235.2 |
| Velasco, Jin | Paraprofessional | 99.5 | 513.1 | 560.6 | 463.2 | 77.7 | 1,714.1 |
| **TOTAL HOURS** | | 4,519.7 | 16,785.3 | 37,410.6 | 5,102.5 | 124.4 | 63,942.5 |

**EXHIBIT F**

RESIDENTIAL CAPITAL, LLC, et al.

Summary of Fees Incurred By Professional Staff

July 24, 2012 through December 17, 2013

| Name | Position | First Interim Fees | Second Interim Fees | Third Interim Fees | Fourth Interim Fees | Fifth Interim Fees | Total |
|------|----------|-------:|-------:|-------:|-------:|-------:|-------:|
| Tuliano, Ralph | Chief Executive Officer | $ 128,075 | $ 414,117 | $ 750,637 | $ 99,703 | $ 5,728 | $ 1,398,259 |
| Atkinson, James | Sr. Managing Director | 189,382 | 618,714 | 915,585 | 72,585 | - | 1,796,265 |
| duVair, Paul | Sr. Managing Director | - | - | 156,983 | 84,578 | - | 241,561 |
| Feltman, James | Sr. Managing Director | 81,624 | 334,193 | 714,479 | 59,697 | - | 1,189,992 |
| Kehl, Monty | Sr. Managing Director | 27,298 | - | - | - | - | 27,298 |
| Lacativo, Bert | Sr. Managing Director | 46,182 | 374,200 | 269,932 | - | - | 690,314 |
| Knoll, Melissa | Sr. Managing Director | 229,926 | 461,238 | 853,293 | 213,995 | 31,146 | 1,789,597 |
| Williams, Jack | Sr. Managing Director | 212,294 | 468,980 | 703,560 | 56,296 | - | 1,441,129 |
| Winford, Kristin | Sr. Managing Director | - | 41,260 | 156,267 | 47,167 | - | 244,693 |
| Jones, Thomas | Managing Director | - | - | 87,894 | - | - | 87,894 |
| Kerr, William | Managing Director | 73,103 | 23,085 | - | - | - | 96,188 |
| King, David | Managing Director | 102,515 | 308,826 | 616,968 | 92,853 | - | 1,121,162 |
| Martin, Timothy | Managing Director | 163,818 | 593,883 | 865,944 | 64,040 | - | 1,687,685 |
| Mathieu, Ken | Managing Director | 112,262 | 464,436 | 848,844 | 82,166 | - | 1,507,707 |
| McColgan, Kevin | Managing Director | 139,793 | 477,518 | 834,309 | 84,645 | - | 1,536,264 |
| Seabury, Susan | Managing Director | 31,037 | 84,731 | 416,556 | 62,757 | - | 595,080 |
| Steele, Mathew | Managing Director | 43,263 | 142,272 | 440,838 | 73,701 | - | 700,074 |
| Troia, Donna | Managing Director | 12,911 | 550,791 | 794,979 | 62,244 | - | 1,420,925 |
| Vahey, Brian | Managing Director | 52,925 | - | - | - | - | 52,925 |
| Wei, Ben | Managing Director | - | - | 97,470 | 55,148 | - | 152,618 |
| Woodford, Dave | Managing Director | 22,658 | 38,903 | - | - | - | 61,560 |
| Faulkner, Kevin | Sr. Vice President | 13,062 | 25,066 | 9,891 | - | - | 48,018 |
| Ortega, Adam | Sr. Vice President | 75,349 | 148,358 | 628,085 | 67,950 | - | 919,741 |
| Pachmayer, Bob | Sr. Vice President | 77,312 | 40,695 | 58,513 | 11,703 | - | 188,222 |
| Sartori, Elisa | Sr. Vice President | 22,877 | 117,629 | 484,786 | 30,955 | - | 656,246 |
| Tan, Ching Wei | Sr. Vice President | 99,132 | 420,988 | 748,356 | 89,996 | - | 1,358,472 |
| Vanderkamp, Anne | Sr. Vice President | 75,198 | 350,622 | 765,872 | 89,543 | - | 1,281,235 |
| Vidal, Adriana | Sr. Vice President | 36,693 | 160,438 | 103,812 | - | - | 300,943 |
| Hughes, Ruth | Sr. Vice President | 18,974 | 242,903 | 630,657 | 75,038 | - | 967,571 |
| Lorch, Mark | Sr. Vice President | 28,495 | 301,491 | 680,246 | 121,003 | - | 1,131,234 |
| Sorondo, Jean-Louis | Sr. Vice President | - | - | 51,454 | - | - | 51,454 |
| Weinberg, Jonathan | Sr. Vice President | 98,690 | 518,887 | 834,910 | 46,690 | 3,988 | 1,503,165 |
| Zembillas, Michael | Sr. Vice President | 62,689 | 149,078 | 369,725 | 24,650 | - | 606,142 |
| George, Shante | Sr. Vice President | 149,425 | 489,419 | 416,514 | 2,320 | - | 1,057,678 |
| Korycki, Mary | Sr. Vice President | 110,783 | 299,406 | 384,544 | - | - | 794,733 |
| Bourgeois, Jared | VP / Sr. VP | - | 163,750 | 562,318 | 68,527 | - | 794,595 |
| Ozgozukara, Omer | VP / Sr. VP | 69,692 | 142,135 | 717,397 | 117,803 | - | 1,047,026 |
| Rychalsky, David | VP / Sr. VP | 88,753 | 156,742 | 483,608 | 51,291 | - | 780,393 |
| McConnell, Jennifer | Vice President | - | - | 253,878 | 49,584 | - | 303,462 |
| Eidson, Bert | Vice President | - | 81,500 | 44,063 | - | - | 125,563 |
| Markin, Eric | Vice President | - | 30,000 | 32,750 | - | - | 62,750 |
| Fish, Rachel | Vice President | 28,263 | 17,910 | 336,229 | 98,125 | - | 480,526 |
| Parkins, Zachary | Vice President | - | - | 388,975 | - | - | 388,975 |
| Reinke, Allison | Vice President | - | - | 445,394 | 60,375 | - | 505,769 |
| Yamauchi, Ryan | Vice President | - | - | 339,388 | 53,750 | - | 393,138 |
| Boyer, Michael | Sr. Assoc / VP | - | - | 294,531 | 56,882 | - | 351,413 |
| Croley, Brandon | Sr. Associate | - | 182,507 | 427,029 | 31,080 | - | 640,616 |
| Jones, Teag | Sr. Associate | 21,236 | 85,388 | 282,575 | - | - | 389,198 |
| Meegan, Sara | Sr. Associate | 72,716 | 111,771 | 420,098 | 57,960 | - | 662,544 |
| Ruegg, Daniel | Sr. Associate | 34,056 | 57,816 | 371,091 | 81,795 | - | 544,758 |
| Saitta, Joseph | Associate | 27,229 | 180,376 | 355,960 | 29,240 | - | 592,804 |
| Sitomer, Alex | Associate | 69,845 | - | - | - | - | 69,845 |
| Crisman, Daniel | Associate | 13,135 | 27,087 | 235,472 | 46,576 | - | 322,269 |

**EXHIBIT F**

RESIDENTIAL CAPITAL, LLC, et al.

Summary of Fees Incurred By Professional Staff

July 24, 2012 through December 17, 2013

| Name | Position | First Interim Fees | Second Interim Fees | Third Interim Fees | Fourth Interim Fees | Fifth Interim Fees | Total |
|------|----------|----:|----:|----:|----:|----:|----:|
| Nyhus, Erik | Associate | - | - | 2,130 | 34,997 | - | 37,127 |
| Blake, Eric | Associate | 60,858 | 119,543 | 214,869 | 46,718 | - | 441,987 |
| Han, Elijah | Associate | 46,904 | 11,246 | 153,547 | 12,390 | - | 224,086 |
| Merced, Justin | Associate | - | 154,476 | 357,559 | 36,707 | - | 548,742 |
| Duncan, Oneika | Analyst / Sr. Analyst | 32,760 | 150,822 | 203,465 | 25,600 | - | 412,647 |
| Christiansen, Jordan | Analyst | - | - | 43,365 | - | - | 43,365 |
| Gould, Erica | Analyst | - | 24,465 | 32,529 | - | - | 56,994 |
| Jacob, Shery | Analyst | - | - | 116,256 | 13,440 | - | 129,696 |
| Karki, Vera | Analyst | - | 17,850 | 210,546 | 28,623 | - | 257,019 |
| Roach, Bruce | Analyst | - | 95,781 | - | - | - | 95,781 |
| Strong, Takara | Analyst | - | 29,127 | 149,268 | 16,716 | - | 195,111 |
| Voronovitskaia, Alla | Analyst | - | 144,732 | 152,859 | 64,785 | - | 362,376 |
| Amiot, Alison | Paraprofessional | - | - | 4,557 | 3,108 | - | 7,665 |
| Cummings, Colleen | Paraprofessional | 2,268 | 11,739 | 19,698 | 15,687 | - | 49,392 |
| Velasco, Jin | Paraprofessional | 20,895 | 107,751 | 117,726 | 97,272 | 16,317 | 359,961 |
| **SUBTOTAL** | | $ 3,126,344 | $ 10,766,631 | $ 23,461,023 | $ 2,970,446 | $ 57,179 | $ 40,381,623 |
| Less 50% Reduction in Travel | | (34,849) | (95,542) | (250,379) | (18,046) | - | (398,816) |
| Less Voluntary Reduction (1) (2) | | (84,221) | - | - | (52,714) | - | (136,934) |
| Less Voluntary Reduction – UST Settlements | | (27,358) | (123,833) | (101,977) | (100,000) | - | (353,168) |
| **TOTAL FEES** | | $ 2,979,917 | $ 10,547,256 | $ 23,108,667 | $ 2,799,686 | $ 57,179 | $ 39,492,705 |

[1] Voluntary fee reduction as discussed in paragraph 50(b) of this Application.

[2] MFC is also not seeking compensation for approximately $711,000 in fees and 1,444.8 hours incurred in this matter during the Final Application Period but voluntarily excluded as discussed in paragraph 50(d) of this Application.

**EXHIBIT G**

RESIDENTIAL CAPITAL, LLC, et al.
Summary of Hours Incurred By Category
July 24, 2012 through December 17, 2013

| Category | First Interim Hours | Second Interim Hours | Third Interim Hours | Fourth Interim Hours | Fifth Interim Hours | Total Hours |
|---|---|---|---|---|---|---|
| Case Administration/General Bankruptcy Matters | 394.3 | 307.1 | 193.7 | 92.3 | 0.9 | 988.3 |
| Document Review and Analysis | 3,079.9 | 10,719.1 | 17,419.6 | 431.8 | - | 31,650.4 |
| Fee/Retention Applications | 216.0 | 680.6 | 706.8 | 658.0 | 123.5 | 2,384.9 |
| Report Drafting | 28.6 | 227.3 | 10,882.4 | 3,489.4 | - | 14,627.7 |
| Substantive Investigation Planning and Coordination | 506.9 | 1,223.1 | 3,154.7 | 350.2 | - | 5,234.9 |
| Travel Time | 88.9 | 221.3 | 671.8 | 52.9 | - | 1,034.9 |
| Witness Interviews and Discovery | 205.1 | 3,406.8 | 4,381.6 | 27.9 | - | 8,021.4 |
| **TOTAL HOURS** | 4,519.7 | 16,785.3 | 37,410.6 | 5,102.5 | 124.4 | 63,942.5 |

**EXHIBIT G**

RESIDENTIAL CAPITAL, LLC, et al.
Summary of Fees Incurred By Category
July 24, 2012 through December 17, 2013

| Category | First Interim Fees | Second Interim Fees | Third Interim Fees | Fourth Interim Fees | Fifth Interim Fees | Total Fees |
|---|---|---|---|---|---|---|
| Case Administration/General Bankruptcy Matters | $ 269,003 | $ 165,858 | $ 118,792 | $ 31,873 | $ 806 | $ 586,331 |
| Document Review and Analysis | 2,024,799 | 6,677,109 | 10,132,557 | 259,424 | - | 19,093,888 |
| Fee/Retention Applications | 133,600 | 239,235 | 198,775 | 210,859 | 56,373 | 838,841 |
| Report Drafting | 24,433 | 176,654 | 7,012,382 | 2,127,178 | - | 9,340,647 |
| Substantive Investigation Planning and Coordination | 431,134 | 1,029,040 | 2,578,879 | 286,386 | - | 4,325,438 |
| Travel Time | 69,698 | 191,084 | 500,758 | 36,093 | - | 797,632 |
| Witness Interviews and Discovery | 173,679 | 2,287,652 | 2,918,881 | 18,635 | - | 5,398,847 |
| **SUBTOTAL** | $ 3,126,344 | $ 10,766,631 | $ 23,461,023 | $ 2,970,446 | $ 57,179 | $ 40,381,623 |
| Less 50% Reduction in Travel | (34,849) | (95,542) | (250,379) | (18,046) | - | (398,816) |
| Less Voluntary Reduction [1] [2] | (84,221) | - | - | (52,714) | - | (136,934) |
| Less Voluntary Reduction – UST Settlements | (27,358) | (123,833) | (101,977) | (100,000) | - | (353,168) |
| **TOTAL FEES** | $ 2,979,917 | $ 10,547,256 | $ 23,108,667 | $ 2,799,686 | $ 57,179 | $ 39,492,705 |

[1] Voluntary fee reduction as discussed in paragraph 50(b) of this Application.

[2] MFC is also not seeking compensation for approximately $711,000 in fees and 1,444.8 hours incurred in this matter during the Final Application Period but voluntarily excluded as discussed in paragraph 50(d) of this Application.

**EXHIBIT H**

RESIDENTIAL CAPITAL, LLC, et al.
Summary of Expenses
July 24, 2012 through December 17, 2013

| Category | First Interim Expenses | Second Interim Expenses | Third Interim Expenses | Fourth Interim Expenses | Fifth Interim Expenses | Total Expenses |
|---|---|---|---|---|---|---|
| Air | $ 13,249 | $ 29,949 | $ 98,365 | $ 2,053 | $ - | $ 143,616 |
| Ground Transportation | 2,601 | 10,053 | 42,940 | 3,475 | - | 59,069 |
| Lodging | 12,484 | 21,141 | 132,582 | 4,610 | - | 170,817 |
| Meals | 1,220 | 1,931 | 24,170 | 2,487 | - | 29,808 |
| Other | 494 | 5,407 | 1,624 | 127 | - | 7,652 |
| **SUBTOTAL** | $ 30,048 | $ 68,482 | $ 299,682 | $ 12,752 | $ - | $ 410,963 |
| Less Voluntary Reduction – UST Settlements | (1,491) | (304) | (64,421) | - | | (66,216) |
| **TOTAL EXPENSES *** | $ 28,557 | $ 68,178 | $ 235,261 | $ 12,752 | $ - | $ 344,747 |

\* MFC is not seeking compensation for approximately $105,000 in expenses incurred in this matter during the Final Application Period but voluntarily excluded as discussed in paragraph 51 of this Application.

**EXHIBIT I**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al.,[1] | ) | |
| | ) | Case No. 12-12020 (MG) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS**
**FOR PROFESSIONALS IN RESPECT TO FIFTH AND FINAL FEE APPLICATION [2]**
**OF MESIROW FINANCIAL CONSULTING, LLC FOR COMPENSATION AND**
**REIMBURSEMENT OF EXPENSES AS FINANCIAL ADVISOR TO THE EXAMINER**
**FOR THE PERIOD JULY 24, 2012 THROUGH DECEMBER 17, 2013**

I, Ralph Tuliano, hereby certify that:

1.      I am the Chief Executive Officer of Mesirow Financial Consulting, LLC

("MFC"), financial advisor to Arthur J. Gonzalez, the Court-appointed Examiner (the

"Examiner") for Residential Capital, LLC and its affiliated debtors (collectively, the "Debtors")

in the above-captioned cases (the "Chapter 11 Cases").  I am the professional designated by

MFC in connection with the Chapter 11 Cases with respect to compliance with the Amended

Guidelines for Fees and Disbursements for Professionals in Southern District of New York

Bankruptcy Cases effective as of February 5, 2013 (the "Local Guidelines"), and the United

States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Declaration of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, filed with the Court on May 14, 2012. Additional subsidiaries and affiliates of the Debtors may file Chapter 11 petitions on a rolling basis. As used herein, the term "Debtors" includes any such entities.

[2] On November 18, 2013, MFC filed its fourth and final fee application, as did the Examiner and his other professionals. At the hearing on December 17, 2013, the Court heard all fee applications for the fourth interim fee period on an interim basis only and did not consider the fee applications on a final basis.

1

Expenses Filed Under 11 U.S.C. §330 adopted on January 30, 1996 (the "UST Guidelines" and,

together with the Local Guidelines, the "Guidelines").

2.    I make this certification in support of the *Fifth and Final Application of Mesirow*

*Financial Consulting, LLC for Compensation and Reimbursement of Expenses as Financial*

*Advisor to the Examiner for the Period July 24, 2012 through December 17, 2013* (the

"Application"), in accordance with the Local Guidelines.

3.    In respect to section B(1) of the Local Guidelines, I certify that:

a.  I have read the Application.

b.  To the best of my knowledge, information, and belief formed after reasonable

inquiry, the fees and disbursements sought fall within the Local Guidelines

unless otherwise specifically noted herein and described in the Application.

c.  Except to the extent that fees or disbursements are prohibited by the Local

Guidelines, the fees and disbursements sought are billed at rates and in

accordance with practices customarily employed by MFC and generally

accepted by MFC's clients, except as specifically noted herein and described

in the Application.  At the request of the Examiner, based on the specific facts

and circumstances of this case, MFC agreed to continue utilizing its 2012

hourly rate structure included in the *Application of the Examiner for Order*

*Authorizing the Retention and Employment of Mesirow Financial Consulting,*

*LLC as Financial Advisor to Examiner nunc pro tunc to July 24, 2012*, and

not to increase the hourly rates charged in this matter to the normal and

customary hourly billing rates as of January 1, 2013.

2

d.  In providing a reimbursable service, MFC does not make a profit on the service, whether the service is performed by MFC in-house or through a third party.

4.      In respect to section B(2) of the Local Guidelines, I certify that MFC has provided monthly statements of MFC's fees and disbursements on the dates noted at page 2 of the Application to counsel to the Debtors, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), counsel to the Official Committee of Unsecured Creditors, counsel for Ally Financial Inc., and counsel for Barclays Bank PLC in accordance with the provisions for seeking interim compensation outlined in the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, dated July 17, 2012.

5.      In respect to section B(3) of the Local Guidelines, I certify that counsel for the Debtors, the U.S. Trustee, counsel for the Official Committee of Unsecured Creditors, counsel for Ally Financial Inc., and counsel for Barclays Bank PLC are each being provided with a copy of the Application at least fourteen (14) days before the hearing on the Application.

6.      In respect to section A(1)(v) of the Local Guidelines, I certify that the Examiner has reviewed and approved the Application.

7.      In respect to air travel, I certify that all fares submitted for reimbursement by MFC were for coach class tickets or were reduced to the equivalent coach class fare if circumstances dictated that a higher class of service be utilized.

8.      By this certification, MFC does not waive or release any rights or entitlements it has under the order of this Court dated August 29, 2012, approving, under section 327(a) of title 11, United States Code, MFC's retention by the Examiner pursuant to MFC's normal billing rates and customary reimbursement and disbursement practices.

Dated:  New York, New York
        March 3, 2014

                              **MESIROW FINANCIAL CONSULTING, LLC**

                              By: */s/ Ralph S. Tuliano*
                                  Ralph S. Tuliano
                                  Chief Executive Officer
                                  Mesirow Financial Consulting, LLC
                                  666 Third Avenue, 21st Floor
                                  New York, NY  10017