Hearing Date:  To Be Determined
Objection Deadline:  To Be Determined

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
Steven J. Reisman
Theresa A. Foudy
Maryann Gallagher

*Conflicts Counsel for the Debtors and*
  *Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Case No. 12-12020 (MG) |
| | : | |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al.</u>,[1] | : | Chapter 11 |
| | : | |
| Debtors. | : | Jointly Administered |

------------------------------------------------------------------x

**SUMMARY OF THE FIFTH INTERIM AND FINAL APPLICATION OF CURTIS,
MALLET-PREVOST, COLT & MOSLE LLP, AS CONFLICTS COUNSEL TO THE
DEBTORS AND DEBTORS IN POSSESSION, FOR ALLOWANCE AND PAYMENT OF
COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED
FROM MAY 14, 2012 THROUGH AND INCLUDING DECEMBER 17, 2013**

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on <u>Exhibit 1</u> to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 6].

| | |
|---|---|
| Name of Applicant: | Curtis, Mallet-Prevost, Colt & Mosle LLP |
| Authorized to Provide Professional Services to: | Residential Capital, LLC, *et al.* Debtors and Debtors in Possession |
| Date Case Filed: | May 14, 2012 |
| Date of Retention: | July 16, 2012 *Nunc Pro Tunc* to May 14, 2012 [Docket No. 781] |
| Period for Which Final Approval of Compensation and Reimbursement is Sought: | May 14, 2012 Through and Including December 17, 2013 |
| Period for Which Interim and Final Approval of Compensation and Reimbursement is Sought: | September 1, 2013 Through and Including December 17, 2013 |
| Amount of Compensation Sought for the Fifth Interim Fee Period as Actual, Reasonable and Necessary: | $3,942,109 |
| Amount of Expense Reimbursement Sought for the Fifth Interim Fee Period as Actual, Reasonable and Necessary: | $30,505.36 |
| Total Compensation and Expense Reimbursement Requested for the Fifth Interim Fee Period: | $3,972,614.36 |
| Total Compensation and Expense Reimbursement Requested for the Compensation Period: | $10,011,761.74 |
| Total Compensation and Expenses Previously Requested and Awarded: | $6,052,061.38[2] |
| Blended Rate of Professionals and Paraprofessionals for the Fifth Interim Fee Period: | $491.82 |
| Blended Rate of Professionals for the Fifth Interim Fee Period: | $513.93 |

---

[2] *See Order Granting Applications for Allowance of Interim Compensation and Reimbursement of Expenses* [Docket No. 2530]; *Order Granting Applications for Allowance of Interim Compensation and Reimbursement of Expenses* [Docket No. 3556]; *Order Granting Applications for Allowance of Interim Compensation and Reimbursement of Expenses* [Docket No. 5205]; *Order Granting Applications for Allowance of Interim Compensation and Reimbursement of Expenses* [Docket No. 6193].

17387889

| Blended Rate of Professionals and Paraprofessionals for the Compensation Period: | $495.31 |
|---|---|

| Blended Rate of Professionals for the Compensation Period: | $513.35 |
|---|---|

This is a(n): _____ monthly ____X____ interim ____X____ final application.

### Summary of Applications for Prior Interim Fee Periods

| Interim Fee Period | Fees Requested | Fees Allowed | Fees Held Back | Fees Paid | Expenses Requested | Expenses Paid |
|---|---|---|---|---|---|---|
| May 14, 2012 – Aug. 31, 2012 | $496,548.50 | $486,689.25 | $0 | $485,939.25[3] | $3,093.40 | $3,092.50 |
| Sept. 1, 2012 – Dec. 31, 2012 | $623,725.50 | $617,369.55 | $0 | $616,548.05 | $2,137.20 | $2,137.20 |
| Jan. 1, 2013 – Apr. 30, 2013 | $1,480,650.00 | $1,474,121.50 | $147,412.15 | $1,326,709.35[4] | $3,085.90 | $3,085.90 |
| May 1, 2013 – Aug. 31, 2013 | $3,456,395.50 | $3,450,395.50 | $345,039.55 | $3,104,992.46 | $15,169.08[5] | $15,165.96 |

### Summary of Monthly Fee Statements During the Fifth Interim Fee Period
### (September 1, 2013 Through and Including December 17, 2013)

| Date Served | Compensation Period | Requested Fees | Requested Expenses | Fees Paid | Expenses Paid | 20% Holdback |
|---|---|---|---|---|---|---|
| Dec. 19, 2013 | 9/1/2013-9/30/2013 | $942,955.50 | $5,906.37 | $759,955.96 | $5,906.37 | $188,591.10 |
| Jan. 21, 2014 | 10/1/2013-10/31/2013 | $1,505,625.00 | $11,384.55 | $0 | $11,384.55 | $301,125.00 |
| Feb. 20, 2014 | 11/1/2013-11/30/2013 | $1,376,782.00 | $7,614.49 | $0 | $7,614.49 | $275,356.40 |
| Mar. 3, 2014 | 12/1/2013-12/17/2013 | $116,746.60 | $5,599.95 | $0 | $30,505.36 | $23,349.30 |

---

[3] At the request of the Debtors, Curtis reduced one of its invoices attributable to the First Interim Fee Period by $750. In accordance with this adjustment, Curtis has reduced the corresponding amount applied on account of the First Interim Fee Period.

[4] In the Third Interim Compensation Order, the Court allowed Curtis' fees in the amount of $1,474,121.50 subject to a holdback amount equal to ten (10%) percent, or $147,412.15.

[5] After the close of the Fourth Interim Fee Period, Curtis reduced expenses associated with one of its invoices by $3.12. Curtis has reduced the corresponding amounts requested in this Application accordingly.

17387889

**Summary of Hours Billed by Professionals and Paraprofessionals
During (I) the Fifth Interim Fee Period (September 1, 2013 Through and Including
December 17, 2013) and (II) the Compensation Period
(May 14, 2012 through and including December 17, 2013)**

| Name | Department and Year Admitted (NY) | Hourly Billing Rate | Fifth Interim Fee Period (9/1/13 – 12/17/13) | | Final Compensation Period (5/14/12 – 12/17/13) | |
|---|---|---|---|---|---|---|
| | | | Total Hours Worked | Total Compensation Requested | Total Hours Worked | Total Compensation Requested |
| **PARTNERS** | | | | | | |
| Jacques Semmelman | Litigation Admitted in 1984 | $860 | 254.70 | $219,042.00 | 254.70 | $219,042.00 |
| Steven J. Reisman | Restructuring and Insolvency Admitted 1991 | 830 | 204.70 | 169,901.00 | 990.70 | 822,281.00 |
| Turner P. Smith | Litigation Admitted 1981 | 830 | 1.20 | 996.00 | 65.80 | 54,614.00 |
| Valarie A. Hing | Corporate Admitted in 1994 | 800 | 39.20 | 31,360.00 | 39.20 | 31,360.00 |
| Andrew H. Seiden | Corporate Admitted in 1993 | 800 | - | - | 6.20 | 4,960.00 |
| Michael J. Moscato | Litigation Admitted 1982 | 785 | 426.30 | 334,645.50 | 710.70 | 557,899.50 |
| Daniel Lenihan | Corporate Admitted in 1982 | 785 | - | - | 1.80 | 1,413.00 |
| Jonathan J. Walsh | Litigation Admitted in 1999 | 740 | 350.80 | 259,592.00 | 392.40 | 290,376.00 |
| Theresa A. Foudy | Litigation Admitted 1994 | 730 | 473.80 | 345,874.00 | 1,563.00 | 1,140,990.00 |
| Michael A. Cohen | Restructuring and Insolvency Admitted 2000 | 730 | 126.50 | 92,345.00 | 373.40 | 272,582.00 |
| Thomas Laurer | Investment Management Admitted in 2001 | 635 | - | - | 26.10 | 16,573.50 |
| **TOTAL PARTNERS** | | | **1,877.20** | **$1,453,755.50** | **4,424.00** | **$3,412,091.00** |
| **OF COUNSEL** | | | | | | |
| Myles K. Bartley | Litigation Admitted in 1999 | $635 | - | - | 50.30 | $31,940.50 |
| Raymond T. Hum | Corporate Admitted in 2003 | 635 | - | - | 29.60 | 18,796.00 |
| Susan F. Pollack | Corporate Admitted in 1967 | 635 | - | - | 5.20 | 3,302.00 |
| Maryann Gallagher | Restructuring and Insolvency Admitted in 1988 | 625 | 453.10 | $283,187.50 | 1,750.50 | 1,094,062.50 |
| **TOTAL OF COUNSEL** | | | **453.10** | **$283,187.50** | **1,835.60** | **$1,148,101.00** |

17387889

| Name | Department and Year Admitted (NY) | Hourly Billing Rate | Fifth Interim Fee Period (9/1/13 – 12/17/13) | | Final Compensation Period (5/14/12 – 12/17/13) | |
|---|---|---|---|---|---|---|
| | | | Total Hours Worked | Total Compensation Requested | Total Hours Worked | Total Compensation Requested |
| **ASSOCIATES** | | | | | | |
| Dora Straus | Litigation Admitted in 2000 | $600 | 9.70 | $5,820.00 | 41.20 | $24,720.00 |
| Douglas Glazer | Mergers & Acquisitions Admitted in 2006 | 600 | - | - | 79.60 | 47,760.00 |
| Ellen Tobin | Litigation Admitted in 2006 | 600 | 783.00 | $469,800.00 | 1,264.70 | 758,820.00 |
| Jeffrey C. Berman | Litigation Admitted in 2006 | 600 | 408.30 | 244,980.00 | 817.40 | 490,440.00 |
| James V. Drew | Restructuring and Insolvency Admitted in 2002 | 590 | 12.20 | 7,198.00 | 80.10 | 47,259.00 |
| Andrew B. Zinman | Litigation Admitted in 1996 | 590 | - | - | 51.70 | 30,503.00 |
| Ryan C. Hansen | Investment Management Admitted in 2004 | 560 | - | - | 44.90 | 25,144.00 |
| Danny Phillips | Corporate Admitted in 2006 | 550 | 41.30 | 22,715.00 | 41.30 | 22,715.00 |
| Heather E. Saydah | Restructuring and Insolvency Admitted in 2010 | 550 | - | - | 37.20 | 20,460.00 |
| Susan E. Park | Litigation Admitted in 2000 | 520 | - | - | 140.50 | 73,060.00 |
| George E. Spencer | Litigation Admitted in 2008 | 520 | 30.50 | 15,860.00 | 171.00 | 88,920.00 |
| Daniel A. Bloom | Restructuring and Insolvency Admitted in 2009 | 480 | 618.40 | 296,832.00 | 1,812.50 | 870,000.00 |
| Maria E. Stookey | Corporate Admitted in 2009 | 480 | - | - | 185.30 | 88,944.00 |
| Julia Mosse | Litigation Admitted in 2010 | 435 | 318.20 | 138,417.00 | 379.30 | 164,995.50 |
| Nicole Mazanitis | Litigation Admitted in 2011 | 435 | 86.50 | 37,627.50 | 86.50 | 37,627.50 |
| Peter J. Buenger | Restructuring and Insolvency Admitted in 2010 | 425 | 22.50 | 9,562.50 | 605.50 | 257,337.50 |
| J. Derek Mize | Litigation Admitted in 2009 | 425 | - | - | 168.90 | 71,782.50 |
| Joseph F. Clyne | Litigation Admitted in 1984 | 425 | - | - | 1.50 | 637.50 |
| A. Robert Dawes | Litigation Admitted in 2012 | 350 | - | - | 103.40 | 36,190.00 |

17387889

| Name | Department and Year Admitted (NY) | Hourly Billing Rate | Fifth Interim Fee Period (9/1/13 – 12/17/13) | | Final Compensation Period (5/14/12 – 12/17/13) | |
|---|---|---|---|---|---|---|
| | | | Total Hours Worked | Total Compensation Requested | Total Hours Worked | Total Compensation Requested |
| Heather Hiznay [*] | Restructuring and Insolvency Admitted in 2011 | $345 | 28.90 | $9,970.50 | 174.70 | $60,271.50 |
| Kevin A. Meehan | Litigation Admitted in 2009 | 375 | - | - | 119.30 | 44,737.50 |
| James E. Zimmer | Restructuring and Insolvency Admitted in 2011 | 345 | - | - | 231.30 | 79,798.50 |
| Martin O. Brown | Corporate Admitted in 2011 | 345 | - | - | 69.10 | 23,839.50 |
| Michael P. Jones | Litigation Admitted in 2013 | 305 | 466.10 | 142,160.50 | 733.20 | 223,626.00 |
| John T. Weber | Restructuring and Insolvency Admitted in 2013 | 305 | 476.70 | 145,393.50 | 1,027.90 | 313,509.50 |
| Bryan M. Kotliar | Restructuring and Insolvency Admitted in 2013 | 305 | 459.30 | 140,086.50 | 1,721.60 | 525,088.00 |
| Stephanie R. Morris | Litigation Admission Pending | 305 | - | - | 133.20 | 40,626.00 |
| Holly Sawyer | Corporate Admitted in 2013 | 305 | 17.80 | 5,429.00 | 66.00 | 20,130.00 |
| Pablo Ruiz | Corporate Admission Pending | 305 | 32.40 | 9,882.00 | 32.40 | 9,882.00 |
| Paisley Kadison | Corporate Admitted in 2013 | 305 | - | - | 61.90 | 18,879.50 |
| Alyssa Astiz | Litigation Admitted in 2013 | 305 | 27.80 | 8,479.00 | 27.80 | 8,479.00 |
| Benjamin Butterfield | Restructuring and Insolvency Admission Pending | 305 | 282.20 | 86,071.00 | 282.20 | 86,071.00 |
| Jamie Ogilvie | Corporate Not Admitted in New York | 300 | - | - | 39.10 | 11,730.00 |
| Ada Añon | Litigation Admitted in 2012 | 300 | 245.40 | 73,620.00 | 313.60 | 94,080.00 |

[*] In the course of preparing this Application, Curtis discovered that due to a minor and inadvertent billing error, five timekeepers' rates were increased by a small amount for the Third and Fourth Interim Fee Periods without the approval of the Debtors. This resulted in incremental fees charged to the Debtors in the amount of $12,914. As a result, Curtis has reduced the amount of fees requested by this Application by $12,914.

17387889

| Name | Department and Year Admitted (NY) | Hourly Billing Rate | Fifth Interim Fee Period (9/1/13 – 12/17/13) | | Final Compensation Period (5/14/12 – 12/17/13) | |
|---|---|---|---|---|---|---|
| | | | Total Hours Worked | Total Compensation Requested | Total Hours Worked | Total Compensation Requested |
| Edward Combs[*] | Litigation Admitted in 2013 | $290 | 735.90 | $213,411.00 | 1,402.30 | $406,667.00 |
| Michael Katoski | Corporate Admission Pending | 290 | - | - | 101.50 | 29,435.00 |
| Lauren Tauro | Restructuring and Insolvency Not Yet Admitted | 0 | - | - | 14.10 | 0.00 |
| **TOTAL ASSOCIATES** | | | **5,103.10** | **$2,083,315** | **12,663.70** | **$5,154,165.50** |
| **PARAPROFESSIONALS** | | | | | | |
| Karl Behrouz | Not Applicable | $285 | - | - | 58.30 | $16,615.50 |
| Victoria Atkinson | Not Applicable | 285 | - | - | 30.30 | 8,635.50 |
| Neal Goodman | Not Applicable | 260 | 22.60 | $5,876.00 | 29.40 | 7,644.00 |
| Franklin R. Guenthner | Not Applicable | 235 | 57.70 | 13,559.50 | 89.40 | 21,009.00 |
| Farai Chidavaenzi | Not Applicable | 235 | 4.00 | 940.00 | 5.50 | 1,292.50 |
| Noah Gardy | Not Applicable | 235 | 37.40 | 8,789.00 | 37.40 | 8,789.00 |
| Brittany Patane | Not Applicable | 235 | - | - | 7.40 | 1,739.00 |
| Sheyla Soriano | Not Applicable | 235 | - | - | 48.10 | 11,303.50 |
| Susan Kindya-Culley | Not Applicable | 230 | 1.90 | 437.00 | 66.70 | 15,341.00 |
| Georgia Faust[*] | Not Applicable | 230 | 4.80 | 1,104.00 | 145.40 | 33,442.00 |
| Katarina Mantell | Not Applicable | 230 | - | - | 11.70 | 2,691.00 |
| Alana Dreiman | Not Applicable | 230 | - | - | 144.60 | 33,258.00 |
| Melissa Rutman[*] | Not Applicable | 230 | - | - | 30.00 | 6,900.00 |
| Rebecca Srulowitz[*] | Not Applicable | 230 | - | - | 32.10 | 7,383.00 |
| Stephanie Morales | Not Applicable | 220 | - | - | 7.70 | 1,694.00 |
| Hesel Toyjanova | Not Applicable | 220 | 4.00 | 880.00 | 4.00 | 880.00 |
| Timothy Cramton | Not Applicable | 210 | - | - | 3.00 | 630.00 |
| Jorge Alcantar | Not Applicable | 210 | 4.00 | 840.00 | 4.00 | 840.00 |
| Kristine Kim | Not Applicable | 210 | 14.50 | 3,045.00 | 26.00 | 5,460.00 |
| Simon Hall | Not Applicable | 210 | - | - | 1.70 | 357.00 |
| Ashley Baldwin-Hunter | Not Applicable | 210 | 23.30 | 4,893.00 | 23.30 | 4,893.00 |
| Samuel Ballard | Not Applicable | 200 | 400.00 | 80,000.00 | 414.30 | 82,860.00 |
| Michael Malavarca | Not Applicable | 200 | 6.20 | 1,240.00 | 8.00 | 1,600.00 |
| Julia Gumpper | Not Applicable | 190 | - | - | 4.00 | 760.00 |
| Kevin Zanin | Not Applicable | 180 | - | - | 3.40 | 612.00 |
| Roberto Santamarina | Not Applicable | 165 | - | - | 1.70 | 280.50 |
| Bryent Battle | Not Applicable | 165 | 1.50 | 247.50 | 1.50 | 247.50 |
| **TOTAL PARAPROFESSIONALS** | | | **581.90** | **$121,851.00** | **1,238.90** | **$277,157.00** |
| **SUBTOTAL** | | | **8,015.30** | **$3,942,109.00** | **20,162.20** | **$9,991,514.50** |
| **LESS MISCELLANEOUS REDUCTION** | | | **N/A** | **N/A** | **N/A** | **$5,000.00** |
| **SUBTOTAL** | | | **8,015.30** | **$3,942,109.00** | **20,162.20** | **$9,986,514.50** |

17387889

| Name | Department and Year Admitted (NY) | Hourly Billing Rate | Fifth Interim Fee Period (9/1/13 – 12/17/13) | | Final Compensation Period (5/14/12 – 12/17/13) | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | Total Hours Worked | Total Compensation Requested | Total Hours Worked | Total Compensation Requested |
| LESS U.S. TRUSTEE & COURT REDUCTIONS[6] | | | N/A | N/A | N/A | $28,743.70 |
| TOTAL | | | 8,015.30 | $3,941,109.00 | 20,162.20 | $9,957,770.80 |

---

[6] As further detailed in the Application, Curtis previously reduced its fee requests in the aggregate amount of $28,743.70 to resolve objections by the U.S. Trustee to its Prior Interim Fee Applications (as defined herein).

17387889

# TABLE OF CONTENTS

**Page**

JURISDICTION ........................................................................................................... **2**

BACKGROUND ........................................................................................................... **3**

RETENTION AND DISINTERESTEDNESS OF CURTIS ........................................ **4**

COMPLIANCE WITH THE GUIDELINES ............................................................... **5**

CURTIS' CONTRIBUTION TO THE CHAPTER 11 CASES ..................................... **7**

CURTIS' PRIOR INTERIM FEE APPLICATIONS ................................................... **8**

DISCLOSURE OF COMPENSATION AND REQUESTED AWARD ....................... **13**

SUMMARY OF PROFESSIONAL SERVICES .......................................................... **17**

REASONABLE AND NECESSARY SERVICES RENDERED BY
CURTIS…………………................................................................................................ **18**

ACTUAL AND NECESSARY EXPENSES INCURRED BY CURTIS .................... **46**

CURTIS' REQUESTED COMPENSATION AND REIMBURSEMENT SHOULD BE
ALLOWED ................................................................................................................. **48**

NO PRIOR REQUEST .................................................................................................. **49**

NOTICE ........................................................................................................................ **49**

CONCLUSION .............................................................................................................. **50**

17387889

## <u>EXHIBITS</u>

Exhibit A          Certification of Steven J. Reisman

Exhibit B          Summary of Time by Project Category for the Fifth Interim Fee Period

Exhibit C          Summary of Time Billed by Attorneys and Paraprofessionals for the Fifth Interim Fee Period

Exhibit D          Summary of Expenses and Disbursements for the Fifth Interim Fee Period

Exhibit D-1       Detail of Expenses and Disbursements for the Fifth Interim Fee Period

Exhibit E          Summary of Time by Project Category for the Compensation Period

Exhibit F          Summary of Time Billed by Attorneys and Paraprofessionals for the Compensation Period

Exhibit G          Summary of expenses and disbursements for the Compensation Period

Exhibit H          Time records and expenses for the Fifth Interim Fee Period

Exhibit I          Time records and expenses for the Prior Interim Fee Periods

17387889

## TABLE OF AUTHORITIES

| **Statutes** | **Page(s)** |
| --- | --- |
| 11 U.S.C. § 327 | **1, 2** |
| 11 U.S.C. § 330(a) | **1, 2, 47, 48** |
| 11 U.S.C. § 331 | **1, 2, 47** |
| 11 U.S.C. § 503(b) | **1, 2** |
| 28 U.S.C. § 157(b)(2) | **2** |
| 28 U.S.C. § 1334 | **2** |
| 28 U.S.C. § 1408 | **2** |

**Other Authorities**

| | |
| --- | --- |
| Fed. R. Bankr. P. 2016 | **1, 2, 5** |
| Local Bankruptcy Rule 2016-1 | **1, 2** |

17387889

**Hearing Date:  To Be Determined**
**Objection Deadline:  To Be Determined**

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
Steven J. Reisman
Theresa A. Foudy
Maryann Gallagher

*Conflicts Counsel for the Debtors and*
  *Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
In re:                                                    :    Case No. 12-12020 (MG)
                                                          :
RESIDENTIAL CAPITAL, LLC, et al.,[1]    :    Chapter 11
                                                          :
                           Debtors.              :    Jointly Administered
-------------------------------------------------------------x

## FIFTH INTERIM AND FINAL APPLICATION OF CURTIS, MALLET-PREVOST, COLT & MOSLE LLP, AS CONFLICTS COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION, FOR ALLOWANCE AND PAYMENT OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM MAY 14, 2012 THROUGH AND INCLUDING DECEMBER 17, 2013

Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis"), conflicts counsel for the debtors

and debtors in possession (collectively, the "Debtors"), in the above-captioned Chapter 11 cases

(the "Chapter 11 Cases" or the "Cases"), submits this Fifth Interim and Final Fee Application

(the "Application") pursuant to sections 327, 330(a), 331, and 503(b) of title 11 of the United

States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the Southern District

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 6].

of New York (the "Local Bankruptcy Rules"), and General Order M-447 entered by Chief Judge

Cecelia G. Morris of the United States Bankruptcy Court for the Southern District of New York

(the "Court") on January 29, 2013.

In this Application, Curtis requests:  (a) allowance and approval of compensation in the

aggregate amount of $3,942,109 for professional services performed and reimbursement of

actual and necessary expenses in the aggregate amount of $30,505.36 incurred by Curtis during

the period from September 1, 2013 through December 17, 2013 (the "Fifth Interim Fee Period");

(b) final allowance and approval of compensation in the aggregate amount of $9,957,770.80 for

professional services rendered and the reimbursement of actual and necessary expenses in the

aggregate amount of $53,990.94 incurred by Curtis during the period from May 14, 2012

through December 17, 2013 (the "Compensation Period"); and (c) payment of all unpaid

amounts on account of fees withheld during the Compensation Period in accordance with the

Interim Compensation Order (as defined herein) in the amount of $1,280,873.50 (the

"Holdback").  In support of the Application, Curtis respectfully states as follows:

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This

matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. § 1408.

3.      The bases for the relief requested herein are sections 327, 330(a), 331, and 503(b)

of the Bankruptcy Code, Bankruptcy Rule 2016, Local Bankruptcy Rule 2016-1, and General

Order M-447.

## Background

4.      On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief under Chapter 11 of the Bankruptcy Code.  During the Chapter 11 Cases, the

17387889

Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On May 14, 2012, the Court entered an order [Docket No. 59] authorizing the joint administration and procedural consolidation of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  On May 16, 2012, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 102].  On June 28, 2012 the Court entered an order directing the appointment of an examiner pursuant to section 1104(c) of the Bankruptcy Code [Docket No. 536], and on July 3, 2012, the Court approved the appointment of Arthur J. Gonzalez as the examiner [Docket No. 674] (the "Examiner").  In May 2013, the Examiner concluded his investigation, and on June 26, 2013, the Court entered an order unsealing the Examiner's report [Docket No. 4099].

5.    On December 6, 2013, the Debtors and the Committee filed the *Revised Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] (as amended, the "Plan").  On December 11, 2013, the Court entered an order confirming the Plan [Docket No. 6065].  The Plan became effective on December 17, 2013 [Docket No. 6137].

6.    Curtis understands that the Debtors have paid all quarterly fees to the U.S. Trustee and all required monthly operating reports have been filed.

**Retention and Disinterestedness of Curtis**

7.    On July 16, 2012, the Court entered the *Order Authorizing the Retention and Employment of Curtis, Mallet-Prevost, Colt & Mosle LLP as Conflicts Counsel for the Debtors and Debtors in Possession Nunc Pro Tunc to the Petition Date* [Docket No. 781] (the "Retention Order"), approving the Debtors' employment and retention of Curtis *nunc pro tunc* to the

3

Petition Date. Pursuant to the Retention Order, Curtis is authorized to be compensated on an hourly basis for professional services rendered to the Debtors and reimbursed for actual and necessary expenses incurred by Curtis in connection therewith. In accordance with the Retention Order, Curtis applied the balance of the retainer provided by the Debtors to fees and expenses approved following the Petition Date.

8.    As disclosed in the *Declaration of Steven J. Reisman in Support of Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Curtis, Mallet-Prevost, Colt & Mosle LLP as Conflicts Counsel for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* (the "<u>Retention Application Declaration</u>") [Docket No. 527, Ex. 2], the *First Supplemental Declaration of Steven J. Reisman on Behalf of Curtis, Mallet-Prevost, Colt & Mosle LLP Pursuant to Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure* [Docket No. 2130] (the "<u>First Supplemental Declaration</u>"), and the *Second Supplemental Declaration of Steven J. Reisman on Behalf of Curtis, Mallet-Prevost, Colt & Mosle LLP Pursuant to Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure* [Docket No. 5213] (the "<u>Second Supplemental Declaration</u>" and collectively with the Retention Application Declaration and the First Supplemental Declaration, the "<u>Declarations</u>"), Curtis does not hold or represent any interest adverse to the Debtors' estates and is a disinterested person as that term is defined in section 101(14) of the Bankruptcy Code as modified by section 1107(b) of the Bankruptcy Code.

9.    Curtis may have in the past represented, may currently represent, and likely in the future will represent, parties in interest in connection with matters unrelated to the Debtors in these Chapter 11 Cases. In the Declarations, Curtis disclosed its connections to parties in interest that it has been able to ascertain using its reasonable efforts.

4

10.    Curtis performed the services for which it is seeking compensation by this Application on behalf of or for the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

11.    Curtis has received no payment and no promises for payment from any source other than the Debtors for services rendered or to be rendered in any capacity whatsoever in connection with these Chapter 11 Cases.

12.    Pursuant to Bankruptcy Rule 2016(b), Curtis has not shared, nor has Curtis agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel, and associates of Curtis, or (b) any compensation another person or party has received or may receive from the Debtors.

### Compliance with the Guidelines

13.    As set forth in the certification attached hereto as **Exhibit A**, the Application was prepared in accordance with (a) the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Local Guidelines") established and adopted by the Court pursuant to General Order M-447, (b) the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, adopted on January 30, 1996 (the "UST Guidelines"), and (c) the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 797] (the "Interim Compensation Order" and collectively with the Local Guidelines and the UST Guidelines, the "Guidelines"). In addition, Curtis made great efforts to follow the guidance provided by the Court when reviewing prior applications submitted by professionals in these Chapter 11 Cases and to avoid billing in a manner that raised objections from the U.S. Trustee earlier in these Cases.

17387889

14.    Pursuant to, and consistent with, the relevant requirements of the Guidelines, as applicable, the following exhibits are annexed hereto:

a)    **Exhibit A** contains a certification by the undersigned counsel regarding compliance with the Guidelines;

b)    **Exhibit B** contains a list of Curtis' project categories, in accordance with the activity codes recommended by the Guidelines, and the total time billed to each category for the Fifth Interim Fee Period;

c)    **Exhibit C** contains a billing summary for the Fifth Interim Fee Period that includes the name of each attorney and paraprofessional for whose work compensation is sought, each attorney's year of bar admission and area of practice concentration, the aggregate time expended by each professional and each paraprofessional and the corresponding hourly billing rate at Curtis' current billing rates, and an indication of the individual amounts requested as part of the Application;

d)    **Exhibit D** contains a summary of Curtis' total actual and necessary out-of-pocket expenses and disbursements during the Fifth Interim Fee Period. In addition, attached hereto as **Exhibit D-1** is a schedule of all expenses incurred during the Fifth Interim Fee Period;

e)    **Exhibit E** contains a list of Curtis' project categories, in accordance with the activity codes recommended by the Guidelines, and the total time billed to each category for the Compensation Period;

f)    **Exhibit F** contains a billing summary for the Compensation Period that includes the name of each professional for whose work compensation is sought, each attorney's year of bar admission and area of practice concentration, the aggregate time expended by each professional and the corresponding hourly billing rate at Curtis' current billing rates, and an indication of the individual amounts request as part of the Application;

g)    **Exhibit G** contains a summary of Curtis' total actual and necessary out-of-pocket expenses and disbursements during the Compensation Period;

h)    **Exhibit H** contains Curtis' time records and expenses for the Fifth Interim Fee Period prepared and submitted in accordance with the Guidelines; and

i)    **Exhibit I** contains Curtis' time records and expenses for the Prior Interim Fee Periods (as defined below) prepared and submitted in accordance with the Guidelines.

## Curtis' Contribution to the Chapter 11 Cases

15.     As conflicts counsel to the Debtors, Curtis played a vital role in bringing about a successful resolution of these Chapter 11 Cases.  Curtis attorneys and paraprofessionals were intensely involved in various critical aspects of these Cases.  Curtis attorneys assisted the Debtors in, *inter alia*:

- Preparing for and prosecuting of an adversary proceeding which resulted in the consensual extension of the automatic stay to residential mortgage-backed securities ("RMBS") related litigation involving the Debtors' current or former officers and directors and certain of the Debtors' non-debtor affiliates;

- Bringing about a successful sale of the Debtors' key assets by attending to conflicts issues related to the sale process, including formal and informal objections made to motions related to the sale process by conflict parties, including PNC Mortgage ("PNC"), CitiMortgage, Inc. ("CitiMortgage"), and JPMorgan Chase Bank, N.A. ("JPMorgan");

- Reviewing and addressing proofs of claim filed by various conflict parties, including by filing and participating in objections to same;

- Responding to objections to a settlement of the Kessler Litigation (as defined below), a class action suit commenced by certain borrowers, a settlement that was integral to the Plan;

- Drafting and responding to various Examiner submissions and mediator submissions with respect to issues raised by various conflict and non-conflict parties addressing, *inter alia*, potential third-party claims against the Debtors' parent, Ally Financial, Inc. ("AFI");

- Prosecuting an adversary proceeding against certain private securities claimants (the "Investors"), including conflict parties AIG Asset Management (US), LLC and its affiliated entities ("AIG"), Massachusetts Mutual Life Insurance Company ("Mass Mutual"), and Prudential Insurance Company of America and its affiliated entities ("Prudential") to subordinate these claimants' RMBS claims pursuant to section 510 of the Bankruptcy Code, which was an integral building block with respect to the global settlement eventually reflected in the Plan (the "Global Settlement");

- Responding to the motion seeking standing to prosecute certain claims on behalf of the estates filed by Wilmington Trust, N.A. (the "SUN Trustee") [Docket No. 3475];

17387889

- Prosecuting Phases I and II of the consolidated adversary proceeding (the "JSN Adversary Proceeding") litigated against an ad hoc group (the "Ad Hoc Group") of holders of 9.625% Junior Secured Guaranteed Notes due 2015 issued by the Debtors (the "Junior Secured Noteholders" or "JSNs"), Wells Fargo Bank, N.A. ("Wells Fargo") as collateral agent (the "Collateral Agent") for the Junior Secured Notes, and UMB Bank, N.A. as the successor indenture trustee for the Junior Secured Notes ("UMB" or the "Notes Trustee," and collectively with the Ad Hoc Group and Wells Fargo, the "Defendants");

- Reviewing, analyzing and taking discovery from certain conflict parties who are members of the Ad Hoc Group and conflict party Wells Fargo related to these parties' entitlement to payment and reimbursement of fees, expenses and indemnification by the Debtors' estates;

- Responding to the motion filed by the Ad Hoc Group seeking to disqualify counsel for the Debtors (including Curtis), counsel for the Committee, and the Debtors' management including the chief restructuring officer, from acting with respect to intercompany claims [Docket No. 4289] (the "Disqualification Motion"); and

- Responding to objections to the confirmation of the Plan lodged by various conflict parties, including Oracle America, Inc., PNC, Wells Fargo, and the Ad Hoc Group (of which some members are conflict parties).

16.     Curtis played a crucial and direct role in bringing about the successful disposition and liquidation of the Debtors' assets during these Chapter 11 Cases in order to maximize value for the Debtors' estates and creditors.  Curtis was instrumental in obtaining virtually unanimous creditor approval of the Debtors' and Committee's (the "Plan Proponents") Plan and Global Settlement.

### Curtis' Prior Interim Fee Applications

17.     First Interim Fee Application.  Curtis filed the *First Interim Application of Curtis, Mallet-Prevost, Colt & Mosle LLP, as Conflicts Counsel to the Debtors and Debtors In Possession, for Allowance and Payment of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred from May 14, 2012 through and Including August 31, 2012* [Docket No. 1890] (the "First Interim Fee Application") on October, 19, 2012.  In the First Interim Fee Application, Curtis sought interim approval of

compensation in the amount of $496,548.50 and reimbursement of expenses in the amount of

$3,093.40.[2]  During the First Interim Fee Period, after internal review, as a courtesy to the

Debtors, Curtis took voluntary reductions in fees in excess of $5,000.  In addition, Curtis

incurred expenses totaling $6,233.68 that it has not charged to the Debtors in accordance with

the terms of its engagement agreement with the Debtors.

18.      The Court awarded Curtis, on an interim basis, $486,689.25 in fees, subject to a

10% holdback amount of $48,668.93, and $3,093.40 in expenses for May 14, 2012 through

August 31, 2012 (the "First Interim Fee Period") pursuant to the *Order Granting Applications*

*for Allowance of Interim Compensation and Reimbursement of Expenses* [Docket No. 2530] (the

"First Interim Compensation Order"), entered on December 28, 2012.  These amounts represent

100% of Curtis' fees and 100% of Curtis' expenses allowed in connection with the First Interim

Fee Period.

19.      Second Interim Fee Application.  Curtis filed the *Second Interim Application of*

*Curtis Mallet-Prevost, Colt & Mosle LLP, as Conflicts Counsel to the Debtors and Debtors in*

*Possession, for Allowance and Payment of Compensation for Professional Services Rendered*

*and for Reimbursement of Actual and Necessary Expenses Incurred from September 1, 2012*

*Through and Including December 31, 2012* [Docket No. 3209] (the "Second Interim Fee

Application") on March 14, 2013.  In the Second Interim Fee Application, Curtis sought interim

approval of compensation in the amount of $623,725.50 and reimbursement of expenses in the

---

[2] On December 7, 2012, the U.S. Trustee filed the *Omnibus Objection of the United States Trustee Regarding Fee Applications for First Interim Compensation and Reimbursement of Expense* [Docket No. 2361] (the "First Interim Omnibus Objection").  In the First Interim Omnibus Objection, the U.S. Trustee objected to Curtis' fees in the total amount of $36,686 for services performed by Curtis and requested in the First Interim Fee Application.  Curtis fully resolved the First Interim Omnibus Objection as it related to Curtis by providing additional detail regarding certain billing entries and reducing its requested fees for the First Interim Fee Period by $9,859.25.

17387889

amount of $2,137.20.[3]  During the Second Interim Fee Period, after internal review, as a courtesy

to the Debtors, Curtis took voluntary reductions in fees in excess of $16,449.  In addition, Curtis

incurred expenses totaling $16,564.23, which it has not charged to the Debtors in accordance

with the terms of its engagement agreement with the Debtors.

20.     The Court awarded Curtis, on an interim basis, $617,369.55 in fees, subject to a

10% holdback amount of $61,736.95, and $2,137.20 in expenses for September 1, 2012 through

December 31, 2012 (the "Second Interim Fee Period") pursuant to the *Order Granting*

*Applications for Allowance of Interim Compensation and Reimbursement of Expenses* [Docket

No. 3556] (the "Second Interim Compensation Order"), entered on March 29, 2013.  These

amounts represent 100% of Curtis' fees and 100% of Curtis' expenses allowed in connection

with the Second Interim Fee Period.

21.     Third Interim Fee Application.  Curtis filed the *Third Interim Application of*

*Curtis Mallet-Prevost, Colt & Mosle LLP, as Conflicts Counsel to the Debtors and Debtors in*

*Possession, for Allowance and Payment of Compensation for Professional Services Rendered*

*and for Reimbursement of Actual and Necessary Expenses Incurred from January 1, 2013*

*Through and Including April 30, 2013* [Docket No. 4532] (the "Third Interim Fee Application")

on August 7, 2013.  In the Third Interim Fee Application, Curtis sought interim approval of

compensation in the amount of $1,480,650 and reimbursement of expenses in the amount of

---

[3]  On March 25, 2013, the U.S. Trustee filed the *Omnibus Objection of the United States Trustee Regarding Fee Applications for Second Interim Awards of Compensation and Reimbursement of Out-of-Pocket Expenses* [Docket No. 3310] (the "Second Interim Omnibus Objection").  In the Second Interim Omnibus Objection, the U.S. Trustee objected to Curtis' fees in the total amount of $39,115.50 for services performed by Curtis and requested in the Second Interim Fee Application.  In response to the Second Interim Omnibus Objection as it related to the Second Interim Fee Application, on April 9, 2013, Curtis filed a *Notice of Supplemental Materials in Support of Second Interim Fee Application of Curtis, Mallet-Prevost, Colt & Mosle LLP, as Conflicts Counsel to the Debtors and Debtors in Possession* [Docket No. 3387], indicating that the Second Interim Omnibus Objection as it related to the Second Interim Fee Application was fully resolved by Curtis' agreement to reduce its requested fees for the Second Interim Fee Period by $6,355.95.

17387889

$3,085.90.[4]   During the Third Interim Fee Period, after internal review, as a courtesy to the

Debtors, Curtis took voluntary reductions in fees in excess of $19,320.  In addition, Curtis

incurred expenses totaling $32,031.81, which it has not charged to the Debtors in accordance

with the terms of its engagement agreement with the Debtors.

22.    The Court awarded Curtis, on an interim basis, $1,474,121.50 in fees, subject to a

10% holdback amount of $147,412.15, and $3,085.90 in expenses for January 1, 2013 through

April 30, 2013 (the "Third Interim Fee Period") pursuant to the *Order Granting Applications for*

*Allowance of Interim Compensation and Reimbursement of Expenses* [Docket No. 5205] (the

"Third Interim Compensation Order"), entered on September 23, 2013.  These amounts represent

100% of Curtis' fees and 100% of Curtis' expenses allowed in connection with the Third Interim

Fee Period.   Additionally, in the Third Interim Compensation Order, the Court released the

holdback amounts owed to Curtis attributable to the First and Second Interim Fee Periods in the

total amount of $110,405.87.

23.    Fourth Interim Fee Application.  Curtis filed the *Fourth Interim Application of*

*Curtis Mallet-Prevost, Colt & Mosle LLP, as Conflicts Counsel to the Debtors and Debtors in*

*Possession, for Allowance and Payment of Compensation for Professional Services Rendered*

*and for Reimbursement of Actual and Necessary Expenses Incurred from May 1, 2013 Through*

*and Including August 31, 2013* [Docket No. 5825] (the "Fourth Interim Fee Application," and

collectively with the First, Second, and Third Interim Fee Applications, the "Prior Interim Fee

---

[4] On August 28, 2013, the U.S. Trustee filed the *Omnibus Objection of the United States Trustee Regarding Fee
Applications for Third Interim Awards of Compensation and Reimbursement of Out-of-Pocket Expenses* [Docket
No. 4869] (the "Third Interim Omnibus Objection").  In the Third Interim Omnibus Objection, the U.S. Trustee
objected to Curtis' fees in the total amount of $37,023 for services performed by Curtis and requested in the Third
Interim Fee Application.   Curtis fully resolved the Third Interim Omnibus Objection as it related to Curtis by
providing additional detail regarding certain billing entries and reducing its requested fees for the Third Interim Fee
Period by $6,528.50.

Applications") on November 18, 2013.  In the Fourth Interim Fee Application, Curtis sought

interim approval of compensation in the amount of $3,456,395.50 and reimbursement of

expenses in the amount of $15,169.08.[5]  After internal review, as a courtesy to the Debtors,

Curtis took voluntary reductions in fees relating to the Fourth Interim Fee Period in excess of

$76,789, which includes, among others, all fees incurred by a Curtis summer associate, certain

fees related to document review, and fees related to the preparation of monthly fee statements.

In addition, Curtis incurred expenses totaling $137,186.25, which it has not charged to the

Debtors in accordance with the terms of its engagement agreement with the Debtors.[6]

24.    The Court awarded Curtis, on an interim basis, $3,450,395.50 in fees, subject to a

10% holdback amount of $345,039.55, and $15,169.08 in expenses for May 1, 2013 through

August 31, 2013 (the "Fourth Interim Fee Period") pursuant to the *Order Granting Applications

for Allowance of Interim Compensation and Reimbursement of Expenses* [Docket No. 6193] (the

"Fourth Interim Compensation Order"), entered on December 26, 2013.  These amounts

represent 100% of Curtis' fees and 100% of Curtis' expenses allowed in connection with the

Fourth Interim Fee Period.

### Disclosure of Compensation and Requested Award

25.    By this Application, Curtis seeks:  (a) allowance and approval of compensation

for professional services rendered to the Debtors in the aggregate amount of $3,942,109 during

---

[5] On December 9, 2013, the U.S. Trustee filed the *Omnibus Objection of the United States Trustee Regarding Fee Applications for Fourth Interim Awards of Compensation and Reimbursement of Out-of-Pocket Expenses* [Docket No. 6047] (the "Fourth Interim Omnibus Objection").  In the Fourth Interim Omnibus Objection, the U.S. Trustee objected to Curtis' fees in the total amount of $18,971 for services performed by Curtis and requested in the Fourth Interim Fee Application.  Curtis fully resolved the Fourth Interim Omnibus Objection as it related to Curtis by providing additional detail regarding certain billing entries and reducing its requested fees for the Fourth Interim Fee Period by $4,752.  The Court increased the reduction in fees allowed by $1,248 for a total reduction in fees allowed for the Fourth Interim Fee Period of $6,000.

[6] In addition, after the close of the Fourth Interim Fee Period, Curtis reduced expenses associated with one of its invoices by $3.12.

17387889

the Fifth Interim Fee Period; (b) reimbursement of actual and necessary expenses in the amount of $30,505.36 incurred by Curtis in rendering professional services during the Fifth Interim Fee Period; (c) final allowance and approval of compensation for professional services rendered in the aggregate amount of $9,957,770.80 and actual and necessary expenses incurred in the aggregate amount of $53,990.94 during the Compensation Period, and (d) payment of the Holdback.

26.    As set forth above, the Court has granted Curtis interim approval of fees in the aggregate amount of $6,028,575.80 and expenses totaling $23,485.58 for the Prior Interim Fee Periods.

## A.    Fifth Interim Fee Period

27.    During the Fifth Interim Fee Period, Curtis provided the Notice Parties (as defined by the Interim Compensation Order) with the following monthly fee statements:

a)    For September 1, 2013 through September 30, 2013 – fees of $942,955.50 and expenses of $5,906.37 (the "September 2013 Fee Statement");

b)    For October 1, 2013 through October 31, 2013 – fees of $1,505,625 and expenses of $11,384.55 (the "October 2013 Fee Statement");

c)    For November 1, 2013 through November 30, 2013 – fees of $1,376,782 and expenses of $7,614.49 (the "November 2013 Fee Statement"); and

d)    For December 1, 2013 through December 17, 2013 – fees of $116,746.50 and expenses of $5,599.95 (the "December 2013 Fee Statement," and collectively with the September 2013 Fee Statement, the October 2013 Fee Statement, and the November 2013 Fee Statement, the "Monthly Fee Statements").

28.    No objections to the Monthly Fee Statements have been made as of the date hereof.[7]

---

[7] The deadline to object to the December 2013 Fee Statement is March 24, 2014. Additionally, due to certain time constraints, Curtis was unable to provide the Debtors with a copy of this Application prior to its filing on the docket of these Chapter 11 Cases.

17387889

29.     Pursuant to the Interim Compensation Order, Curtis has already received a total of $760,270.77, which represents approximately 80% of Curtis' legal fees and 100% of Curtis' out-of-pocket expenses incurred and submitted by Curtis on account of the September 2013 Fee Statement.   To date, Curtis has not received payment for fees and expenses requested in connection with the October 2013 Fee Statement, the November 2013 Fee Statement, or the December 2013 Fee Statement.

30.     After internal review, as a courtesy to the Debtors, Curtis took voluntary reductions in fees relating to the Fifth Interim Fee Period in excess of $46,762, which included fees related to the preparation of monthly fee statements.   In addition, Curtis reduced its requested fees by $12,914 to correct for a minor billing discrepancy caused by an inadvertent rate increase for five timekeepers that had not been approved by the Debtors.   Finally, Curtis incurred expenses totaling $447,000.47, which it has not charged to the Debtors in accordance with the terms of its engagement agreement with the Debtors.

31.     The fees sought in this Application in connection with the Fifth Interim Fee Period reflect an aggregate of 8,015.30 hours expended by Curtis attorneys and paraprofessionals rendering necessary and beneficial legal services to the Debtors at a blended average hourly rate of $491.82 for both attorneys and paraprofessionals (or $513.93 for attorneys only).   Curtis maintains computerized records of the time expended in the performance of the professional services required by the Debtors and their estates.   These records are maintained in the ordinary course of Curtis' practice.

**B.     Compensation Period**

32.     During the Compensation Period, Curtis incurred $9,957,770.80 in fees for legal services provided to and on behalf of the Debtors and $53,990.94 in out-of-pocket expenses incurred in connection with such services, for a total requested award of $10,011,761.74 for fees

17387889

and expenses.  During these Chapter 11 Cases, as set forth herein and in the Prior Interim Fee Applications, Curtis voluntarily reduced its fees by more than $164,320 and expenses by more than $639,016.14.  Additionally, during the Compensation Period, Curtis has refrained from seeking compensation for fees in the amount of $393,479.50 incurred in connection with ensuring that Curtis' monthly fee statements and interim fee applications complied with the Guidelines and Interim Compensation Order.   Further, by not passing along rate increases, Curtis has extended a substantial discount to the estates to the benefit of all creditors.

33.     As of the filing of this Application, the Holdback consists of $1,280,873.50, representing approximately:  (a) 10% of Curtis' allowed fees in connection with the Third and Fourth Interim Fee Periods allowed but held-back pursuant to the Third and Fourth Interim Fee Orders; and (b) 20% of Curtis' fees incurred and submitted by Curtis in connection with the Fifth Interim Fee Period.

34.     The fees sought in this Application reflect an aggregate of 20,162.20 hours expended by Curtis attorneys and paraprofessionals during the Compensation Period rendering necessary and beneficial legal services to the Debtors at a blended average hourly rate of $495.31 for both attorneys and paraprofessionals (or $513.93 for attorneys only).   Curtis maintains computerized records of the time expended in the performance of the professional services required by the Debtors and their estates.  These records are maintained in the ordinary course of Curtis' practice.

35.     The hourly rates and corresponding rate structure utilized by Curtis in these Chapter 11 Cases are equivalent to the hourly rates and corresponding rate structure predominantly used by Curtis for restructuring, workout, bankruptcy, insolvency and comparable matters, and similar complex corporate matters whether in court or otherwise, regardless of

17387889

whether a fee application is required. The rates and rate structure reflect that Curtis' matters are typically national in scope and generally involve great complexity, high stakes, and severe time pressures.

36. Curtis' hourly rates are set at a level designed to compensate Curtis fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are typically subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere, but Curtis has not passed along rate increases for any professional working on the Chapter 11 Cases since that professional started working on the Chapter 11 Cases, some of whom have worked on behalf of the Debtors with respect to the Chapter 11 Cases since prior to the Petition Date.

37. Curtis regularly reviews its bills to ensure that the Debtors are billed only for services that were actual and necessary. Moreover, in accordance with the Guidelines, Curtis regularly reduces or writes off its expenses, particularly expenses related to travel and overtime meals. In addition, in accordance with the terms of Curtis' engagement by the Debtors, Curtis has absorbed the cost of certain categories of expenses that otherwise would be compensable under the Guidelines.

**Summary of Professional Services**

38. To provide a meaningful summary of services rendered on behalf of the Debtors and their estates, Curtis has established, in accordance with the Guidelines and its internal billing procedures, the following matter numbers in connection with these Chapter 11 Cases that are applicable to this Application:

17387889

| Matter Number | Matter Description |
|---|---|
| 100 | Case Administration |
| 200 | General Corporate Matters |
| 210 | Asset Analysis, Sales and Recoveries |
| 220 | Cash Collateral, DIP & Other Financing |
| 300 | General Claims and Equity Matters |
| 320 | Claims Administration and Objections |
| 330 | Contracts/Leases Assumption and Rejection |
| 340 | JSN Document Review |
| 350 | Hearings and Court Matters |
| 400 | General Litigation Matters |
| 410 | Adversary Proceedings and Contested Matters |
| 430 | Automatic Stay/Adequate Protection Matters |
| 500 | Plans and Disclosure Statements |
| 700 | Curtis Retention/Billing/Fee Applications |

39.    The following is a summary, by matter, of the most significant professional services rendered by Curtis in connection with its role as Debtors' conflicts counsel during the Compensation Period.  This summary is organized in accordance with Curtis' internal system of matter numbers.    The detailed descriptions included in the Monthly Fee Statements and incorporated herein by reference demonstrate that Curtis performed reasonable and necessary services for the Debtors on a regular basis to meet the Debtors' needs in these Chapter 11 Cases.[8]

---

[8] This summary of services rendered during the Compensation Period is not intended to be a detailed or exhaustive description of the work performed by Curtis but, rather, is intended to highlight certain key areas where Curtis provided services to the Debtors during the Compensation Period.  More detailed descriptions of the work performed during the Compensation Period, categorized by project code, and those day-to-day services and the time expended in performing such services are set forth in the detailed time records which are attached hereto as **Exhibit H** and **Exhibit I**.

17387889

A.    **Case Administration (Matter #100)**

Total Fees:  $242,389
Total Hours:  450

40.    A total of 13.40 hours of services were performed for this matter in the Fifth Interim Fee Period for which Curtis is seeking interim allowance of $7,487.50 in fees, and during the Compensation Period a total of 450 hours of services were performed for this matter for which Curtis is seeking final allowance of $242,389.

41.    This matter covers services undertaken by Curtis attorneys and paraprofessionals in the general administration of these Chapter 11 Cases.  During the Compensation Period, to fulfill its role as conflicts counsel to the Debtors and to remain able to step in at a moment's notice for the Debtors' lead bankruptcy counsel, Morrison & Foerster LLP ("MoFo"), Curtis attorneys and paraprofessionals spent time on case administration matters in order to remain informed with respect to matters for which MoFo had, or may potentially have had, a conflict of interest.  Services rendered by Curtis in connection with case administration included the monitoring of the case docket for pleadings with potential conflicts implications, reviewing and maintaining files of significant pleadings with conflicts implications that were filed with the Court, attendance at omnibus hearings covering matters involving actual and potential conflict parties, development of internal action plans, distribution of responsibilities and coordination of assignments related to conflicts matters among Curtis attorneys and paraprofessionals, and maintaining a calendar of critical dates and deadlines in these Chapter 11 Cases.

17387889

**B.      General Corporate Matters (Matter #200)**

Total Fees:    $1,413
Total Hours:   1.80

42.      During the Compensation Period a total of 1.80 hours of services were performed for this matter for which Curtis is seeking final allowance of $1,413.  No time was billed to this matter during the Fifth Interim Fee Period.

43.      During the Compensation Period, in connection with Curtis' role as conflicts counsel, Curtis attorneys reviewed the Debtors' cash collateral, cash management, debtor-in-possession financing documents and motions and certain documents related to the Debtors' prepetition financings for conflicts purposes.

**C.      Asset Analysis, Sales & Recoveries (Matter #210)**

Total Fees:    $256,760
Total Hours:   507.80

44.      During the Compensation Period a total of 507.80 hours of services were performed for this matter for which Curtis is seeking final allowance of $256,760.  No time was billed to this matter during the Fifth Interim Fee Period.

45.      During the Compensation Period, in connection with Curtis' role as conflicts counsel, Curtis attorneys handled and resolved numerous formal and informal objections raised by conflict parties in connection with the sale of certain of the Debtors' mortgage and servicing-related assets to Berkshire Hathaway Inc. ("Berkshire"), Ocwen Loan Servicing, LLC ("Ocwen"), and Walter Investment Management Corp.  In particular, Curtis attorneys responded to the pre-auction objections of CitiMortgage, PNC, and JP Morgan (collectively, the "Sale Conflict Parties").  The Sale Conflict Parties asserted a number of objections to both the Debtors' proposed sale of its servicing platform and legacy portfolio assets as well as the Debtors' notices of assumption and assignment of servicing contracts and other agreements in connection with

19

17387889

these sales (the "Asset Sales").[9]  In connection with responding to and resolving these objections to the Asset Sales, Curtis attorneys examined the Sale Conflict Parties' servicing contracts and other agreements allegedly implicated by the Debtors' various assumption and assignment notices[10] and conducted research into the underlying legal issues.

46.    In addition, in connection with objections filed by the Sale Conflict Parties and other parties in interest, Curtis attorneys assisted MoFo in drafting the *Debtors' Omnibus Reply to Objections to Debtors' Sale Motion* [Docket No. 2135].  Thereafter, Curtis negotiated with the Sale Conflict Parties in drafting language in the proposed orders approving the Asset Sales to address certain assumption and assignment concerns.  Ultimately, MoFo and Curtis attorneys were able to obtain the consensual resolution of all sale objections and gained the Court's approval of the Asset Sales which garnered value for the Debtors' estates in excess of $4.5 billion.

47.    Following the approval and completion of the Asset Sales, Curtis attorneys worked to resolve outstanding cure objections asserted by conflict parties, including PNC, in connection with the assumption and assignment of contracts in connection with the Asset Sales. In this regard, Curtis assisted MoFo and the Debtors with the negotiation and preparation of a stipulation and order with certain SBO servicers, including PNC, who had objected to the Asset Sales.[11]

48.    Curtis attorneys were also involved with negotiations related to the transfer of certain real estate owned (REO) property of the Debtors to a conflict party.

---

[9]  *See* Docket Nos. 1613; 1635; 1646; 1981; and 1992.

[10]  In particular, Curtis attorneys reviewed, among other applicable filings, certain of the Debtors' assumption and assignment notices.  *See* Docket Nos. 924; 1484; 2076; and 2077.

[11]  *See Stipulation Resolving Objections to the Debtors' Sale Motion* [Docket No. 2715].

17387889

**D.      Cash Collateral, DIP & Other Financing (Matter #220)**

Total Fees:     $1,814
Total Hours:   3.60

49.      During the Compensation Period a total of 3.60 hours of services were performed for this matter for which Curtis is seeking final allowance of $1,814.  No time was billed to this matter during the Fifth Interim Fee Period.

50.      During the Compensation Period, in connection with its role as conflicts counsel, Curtis attorneys reviewed the Debtors' motion to amend certain DIP financing arrangements related to the Asset Sales due to the presence of a potential conflict.  Curtis attorneys also reviewed pleadings filed in connection with the Debtors' use of cash collateral in connection with the impact of such use on the JSN Adversary Proceeding, as Wells Fargo (Collateral Agent for the JSNs) as well as several individual members of the Ad Hoc Group are conflict parties.

**E.      General Claims and Equity Matters (Matter #300)**

Total Fees:     $1,683
Total Hours:   3.90

51.      During the Compensation Period a total of 3.90 hours of services were performed for this matter for which Curtis is seeking final allowance of $1,683.  No time was billed to this matter during the Fifth Interim Fee Period.

52.      During the Compensation Period, in connection with its role as conflicts counsel, Curtis reviewed pleadings related to the establishment of bar dates for conflicts purposes.  Curtis attorneys also reviewed proofs of claim filed by conflict parties in connection with the Asset Sales.  This review further contributed to the resolution of the Sale Conflict Parties' objections to the Debtors' assumption and assignment of their servicing contracts and other agreements with conflict parties.

17387889

F.     **Claims Administration and Objections  (Matter #320)**

Total Fees:    $500,089.50
Total Hours:   912.20

53.     A total of 377 hours of services were performed for this matter in the Fifth Interim Fee Period for which Curtis is seeking interim allowance of $210,887.50 in fees, and during the Compensation Period a total of 912.20 hours of services were performed for this matter for which Curtis is seeking final allowance of $500,089.50.

54.     Curtis played a significant role in the Debtors' claims resolution process.  During the Compensation Period, in connection with Curtis' role as conflicts counsel, Curtis attorneys represented the Debtors in connection with preparing the *Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1009, 3007, and 9019(b) for Approval of (i) Claim Objections Procedures, (ii) Borrower Claim Procedures, (iii) Settlement Procedures, and (iv) Schedule Amendment Procedures* [Docket No. 3123].

55.     Curtis assisted the Debtors in preparing various omnibus claims objections, researching defenses to certain claims, negotiating potential resolutions, and reviewing and analyzing proofs of claim filed by a number of conflict parties including CitiMortgage, PNC, Credit Suisse Securities (USA) LLC, Fortress (and related entities), Stonebridge Life Insurance Company, Alea Holdings US Company (and related entities), General American Life Insurance Company, The Hartford, HBK Master Fund LP, Caterpillar Insurance (and related entities), DLJ Mortgage Capital, Inc., United Parcel Service, Oracle America, Wells Fargo, Everbank, CIMB, Royal Bank of Scotland, Goldman Sachs, Sprint Nextel, Hewlett Packard, MetLife (and related entities), UBS entities, and certain borrower individuals.[12]

---

[12]  *See, e.g., Debtors' Sixth Omnibus Objection to Claims (Duplicative Borrower Claims)* [Docket No. 3925]; *Debtors' Tenth Omnibus Claims Objection (Facially Defective and Time-Barred Securities Claims)* [Docket No.

17387889

56.     Additionally, Curtis attorneys, together with the Debtors' litigation counsel, Bryan Cave LLP, prepared, filed and prosecuted an objection to a proof of claim filed by PNC Bank, N.A. ("PNC Bank"), a conflict party.  *See Debtors' Objection to Proof of Claim of PNC Bank, N.A. (Claim No. 4760)* [Docket No. 4603] (the "PNC Claim Objection").  The PNC Claim Objection involved a significant amount of research and negotiation with counsel for PNC Bank in an effort to resolve PNC Bank's purported contingent and unliquidated claims for contribution and indemnification against the Debtors related to a putative class action litigation pending before the United States District Court for the Western District of Pennsylvania (the "Kessler Litigation") in which both certain of the Debtors and PNC Bank were defendants.  In response to the PNC Claim Objection, PNC Bank ultimately sought to withdraw its proof of claim.  *See PNC Bank, N.A.'s Response and Reservation of Rights to Debtors' Objection to Proof of Claim No. 4760* [Docket No. 4894].  On September 9, 2013, the Debtors filed the *Reply in Further Support of the Debtors' Objection to Proof of Claim of PNC Bank, N.A. (Claim No. 4760)* [Docket No. 4978], and on September 13, 2013, the Court entered the *Order Sustaining Debtors' Objection to Proof of Claim of PNC Bank, N.A. (Claim No. 4760) and Disallowing and Expunging Proof of Claim (Claim No. 4760)* [Docket No. 5041].

57.     In addition, Curtis attorneys held discussions with counsel to Citibank, N.A. ("Citibank"), a conflict party, regarding Citibank's assertion that it is entitled to hold amounts in

---

4119]; *Debtors' Twenty-Second Omnibus Objection to Claims (Borrower Claims with Insufficient Documentation)* [Docket No. 4199]; *Debtors' Twenty-Fourth Omnibus Objection to Claims (Amended and Superseded Claims)* [Docket No. 4714], *Debtors' Thirty-Third Omnibus Claims Objection (Facially Defective and Time Barred Securities Claims)* [Docket No. 4996], *Debtors' Fortieth Omnibus Objection to Claims (No Liability- Non-Debtor and Amended and Superseded Claims)* [Docket No. 5142]; *Debtors' Forty-Third Omnibus Objection to Claims (Insufficient Documentation)* [Docket No. 5151]; *Debtors' Forty-Seventh Omnibus Objection to Claims (No Liability Claims - Books and Records)* [Docket No. 5159]; *Debtors' Fifty-Third Omnibus Objection to Claims (Amended and Superseded Claims)* [Docket No. 6075]; *Debtors' Fifty-Fourth Omnibus Objection to Claims (Late-Filed and Duplicate Debt Claims)* [Docket No. 6076]; and *Debtors' Fifty-Fifth Omnibus Objection to Claims (No Liability - Assigned Contract Claims)* [Docket No. 6077].

17387889

the Debtors' bank accounts at Citibank pending resolution of a dispute over whether Citibank is entitled to interest at the contractual default rate under its secured credit facility with the Debtors (the "Citibank MSR Facility").    In connection with this dispute, Curtis attorneys reviewed the documents and agreements underlying the Citibank MSR Facility and researched, among other topics, the entitlement of secured creditors to receive interest at the contractual default rate in bankruptcy proceedings and rights to turnover and set off under the Bankruptcy Code and applicable state law.    Curtis also prepared a draft objection to Citibank's claim for default interest under the Citibank MSR Facility.

### G.    Contracts/Leases Assumption and Rejection (Matter #330)

Total Fees:    $2,340.50
Total Hours:    3.90

58.    During the Compensation Period a total of 3.90 hours of services were performed for this matter for which Curtis is seeking final allowance of $2,340.50.    No time was billed to this matter during the Fifth Interim Fee Period.

59.    During the Compensation Period, Curtis attorneys reviewed and analyzed the Debtors' schedules of assumed and assigned contracts for conflicts purposes, in connection with certain cure obligations arising from a number of such contracts relating to the Asset Sales.

60.    Additionally, a Curtis attorney attended to resolving issues regarding the potential rejection of certain of the Debtors' contracts with JP Morgan, a conflict party.

### H.    JSN Document Review (Matter #340)

Total Fees:    $868,750.50
Total Hours:    2,165.90

61.    During the Compensation Period a total of 2,165.90 hours of services were performed for this matter for which Curtis is seeking final allowance of $868,750.50.    No time was billed to this matter during the Fifth Interim Fee Period.

17387889

62.     During the Compensation Period, in connection with its role as conflicts counsel, Curtis assisted with the review of documents produced by the Debtors and certain conflict parties in the JSN Adversary Proceeding for use in connection with proceedings critical to the outcome of these Chapter 11 Cases.  This review required analysis of more than 300,000 documents under severe time constraints in order to prepare witnesses, take and defend depositions, and select exhibits for use in Phases I and II of the JSN Adversary Proceeding and in connection with Plan confirmation.  Curtis attorneys coordinated extensively with lead counsel for the Debtors at MoFo, counsel for the Committee at Kramer Levin Naftalis & Frankel LLP ("<u>Kramer Levin</u>") and conflicts counsel for the Committee at Pachulski Stang Ziehl & Jones LLP ("<u>Pachulski</u>") in multiple offices in both the United States and Europe to ensure that the document review was performed as efficiently as possible and without duplication of efforts.  In order to facilitate an optimal document review under the circumstances, Curtis attorneys carefully drafted review protocols for use by document reviewers at all law firms involved in the project, maintained lines of communication between the document reviewers and project managers most familiar with the relevant facts and issues underlying the Chapter 11 Cases, and hosted status meetings involving professionals from multiple firms involved in the project.

## I.    Hearings and Court Matters (Matter #350)

Total Fees:    $67,789
Total Hours:   101.40

63.     During the Compensation Period a total of 101.40 hours of services were performed for this matter for which Curtis is seeking final allowance of $67,789.  No time was billed to this matter during the Fifth Interim Fee Period.

64.     During the Compensation Period, in connection with Curtis' role as conflicts counsel, Curtis attorneys prepared for and attended numerous hearings on behalf of the Debtors,

including: (i) the Debtors' 'first day' hearing; the Debtors' hearing regarding approval of debtor-in-possession financing; (ii) numerous hearings regarding motions for relief from the automatic stay; (iii) various hearings and status conferences related to the Debtors' adversary proceeding seeking to extend the automatic stay to certain non-debtor affiliates; (iv) hearings related to the Debtors' adversary proceeding seeking to subordinate the claims of certain private securities claimants' claims; (v) hearings related to the JSN Adversary Proceeding; and (vi) the Plan confirmation hearing. Most often this time was billed directly to the matter to which the hearing related.

65.    Curtis attorneys also attended multiple omnibus hearings on behalf of the Debtors, including hearings on the pre-auction objections of the trustees for certain RMBS investors (the "RMBS Trustees"), the Debtors' motions for approval of the RMBS Trustees' settlements and related scheduling issues, and the Debtors' motions for stay violations and miscellaneous stay relief matters. In addition, a Curtis attorney attended a hearing regarding cure objections arising from the Asset Sales. Attendance at these hearings was necessary in order to obtain insights and important information about the status of the Chapter 11 Cases and new developments related to conflict matters handled by Curtis on behalf of the Debtors.

## J.    General Litigation Matters (Matter #400)

Total Fees:    $2,117,499.50
Total Hours:   4,106.10

66.    A total of 255.80 hours of services were performed for this matter in the Fifth Interim Fee Period for which Curtis is seeking interim allowance of $119,197 in fees, and during the Compensation Period a total of 4,106.10 hours of services were performed for this matter for which Curtis is seeking final allowance of $2,117,499.50.

17387889

67.     During the Compensation Period, Curtis attorneys and paraprofessionals organized and reviewed numerous documents produced by the Debtors to certain conflict parties. In addition, Curtis attorneys attended the depositions of several witnesses for the Debtors in connection with the Debtors' motions seeking:  (a) authorization to obtain debtor-in-possession financing; (b) approval of sales procedures and related matters; and (c) Berkshire's motion to appoint an examiner.

68.     In connection with the Asset Sales, Curtis attorneys resolved various actual and threatened sale objections with respect to same by coordinating with MoFo and counsel to both Nationstar Mortgage LLC, which acted as stalking horse bidder with respect to the Debtors' Servicing Platform Sale, and Ocwen.  In connection with the resolution of such objections, Curtis attorneys conducted in-depth research on issues arising under, among others, sections 363 and 365 of the Bankruptcy Code, regarding asset sales and the assumption and assignment of contracts.

69.     Once the Examiner was appointed, Curtis attorneys assisted MoFo in preparing responses to submissions made to the Examiner by various conflict and non-conflict parties who raised similar issues addressing:  (i) the prepetition plan support agreement between the Debtors' and the Debtors' parent, AFI; (ii) certain actions authorized by the Debtors' directors and officers prior to the Petition Date; and (iii) certain prepetition transactions between the Debtors and AFI.  These responses required Curtis attorneys to review papers submitted to the Examiner by a number of parties and evaluate numerous potential third-party claims allegedly held by various parties against AFI.  This task required research relating to:  (i) causes of action under

17387889

various state law and bankruptcy law theories; (ii) bankruptcy court jurisdictional issues; and (iii) the propriety of third-party releases in chapter 11 plans.[13]

70.    In connection with the mediation ordered by the Court, in an effort to resolve disputes critical to the successful completion of the Chapter 11 Cases and at MoFo's request, Curtis attorneys and paraprofessionals:  (a) prepared to address issues pertaining to a plan of reorganization; and (b) made themselves available to be present at such mediation to represent the Debtors' estates due to actual and potential conflicts of interest.

71.    <u>Subordination Adversary Proceeding</u>.  Curtis attorneys also assisted MoFo in representing the Debtors in connection with commencing and prosecuting an adversary proceeding to subordinate the claims held by the Investors, including conflict parties AIG, Mass Mutual, and Prudential (the "<u>Subordination Adversary Proceeding</u>").[14]  *See Complaint, Residential Capital, LLC v. Allstate Ins. Co. (In re Residential Capital, LLC)*, Case No. 12-12020 (MG), Adv. Pro. 13-01262 (MG) (Bankr. S.D.N.Y. Feb. 19, 2013) [Docket No. 2970, Adv. Pro. Docket No. 1] (the "<u>Subordination Complaint</u>").[15]  Pursuant to the Court's direction, the parties negotiated a joint stipulation of facts.  *See Local Rule 7056-1 Statement of Stipulated*

---

[13]  In connection with addressing these issues, Curtis attorneys conferred extensively with multiple MoFo attorneys regarding background and facts related to the Chapter 11 Cases to assist on the conflict matters Curtis was handling, in order to minimize the duplication of efforts in preparing these responses.  This was less expensive for the Debtors and more efficient than Curtis reviewing all of the pleadings in the Chapter 11 Cases related to these matters.

[14]  Earlier in these Chapter 11 Cases, the Investors filed a motion pursuant to Bankruptcy Rule 3013 seeking a determination that their securities claims were not subject to subordination under section 510(b) of the Bankruptcy Code and requested that those claims be classified as general unsecured claims [Docket No. 2284].  On February 19, 2013, Curtis attorneys represented the Debtors in responding to the Rule 3013 Motion by filing an opposition to the motion contemporaneously with the Subordination Complaint (as defined below) [Docket No. 2953].

[15]  Also in connection with the Subordination Complaint, Curtis filed the (i) *Declaration of Tammy Hamzehpour in Support of the Debtors' Opposition to Motion of AIG Asset Management (U.S.), LLC, the Allstate Entities, Massachusetts Mutual Life Insurance Company and the Prudential Entities for an Order Under Bankruptcy Rule 3013 Concerning Subordination of Investors' Securities Claims* [Docket No. 2956], and (ii) *Declaration of Bryan M. Kotliar in Support of the Debtors' Opposition to Motion of AIG Asset Management (U.S.), LLC, the Allstate Entities, Massachusetts Mutual Life Insurance Company and the Prudential Entities for an Order Under Bankruptcy Rule 3013 Concerning Subordination of Investors' Securities Claims* [Docket No. 2958].

28

*Undisputed Facts and Agreed-to Exhibits* [Adv. Pro. Docket No. 23].    The parties then proceeded on cross-motions for summary judgment.    *See Debtors' Motion for Summary Judgment* [Adv. Pro. Docket No. 25]; *Memorandum of Law in Support of Debtors' Motion for Summary Judgment* [Adv. Pro. Docket No. 26]; *Memorandum of Law in Opposition to the Motion of AIG Asset Management (U.S.), LLC, the Allstate Entities, Massachusetts Mutual Life Insurance Company, and the Prudential Entities for Summary Judgment* [Adv. Pro. Docket No. 42].    Curtis also filed a *Reply Memorandum of Law in Further Support of Debtors' Motion for Summary Judgment* [Adv. Pro. 13-01277, Docket No. 53].

72.    Representing the Debtors in the Subordination Adversary Proceeding required Curtis attorneys to:  (i) draft and file multiple pleadings, briefs, and notices with the Court on both the main and adversary proceeding dockets; (ii) attend numerous teleconferences with MoFo, counsel for the Investors, the Court, and other parties in interest in these Chapter 11 Cases; (iii) coordinate extensively with counsel for the Investors, as well as certain joining parties in the Subordination Adversary Proceeding; (iv) comply with the Court's meet and confer requirement; (v) prepare the joint stipulation of facts and circulate same to counsel for the Investors and other interested parties; (vi) schedule multiple chambers conferences regarding, *inter alia*, procedural issues and discovery disputes; (vii) conduct an in-depth review of the Investors' claims and their underlying documentation; and (viii) research novel procedural and substantive issues under bankruptcy law and applicable federal securities laws.  In order to draft pleadings and prepare for legal argument with respect to a host of issues related to the Subordination Adversary Proceeding, Curtis attorneys conducted extensive research regarding sections 510(a), (b), and (c) of the Bankruptcy Code and related case law and federal securities laws, including relevant rules, regulations, and legislative history.

17387889

73.    Just prior to the hearing on the competing summary judgment motions in the
Subordination Adversary Proceeding, the Debtors entered into the Plan Support Agreement
(defined below) that settled the issues arising in the Subordination Adversary Proceeding.  The
Court adjourned the hearing *sine die*.

74.    <u>SUN Standing Motion</u>.  Curtis attorneys also assisted MoFo in responding to the
motion seeking standing to assert claims on behalf of the estates filed by the SUN Trustee (the
"<u>SUN Standing Motion</u>").  The SUN Standing Motion implicated the interests of several conflict
parties, certain of whom held claims represented by the SUN Trustee.  Curtis attorneys
coordinated extensively with MoFo on performing the research necessary for, and drafting this
response, as MoFo was then engaged in responding to a motion for standing to assert estate
claims filed by the Committee [Docket No. 3412].[16]  In connection with this response, Curtis
attorneys analyzed the relevant standards governing the ability of individual creditors to obtain
standing to assert and settle claims on behalf of a debtor's estate.  On May 6, 2013, the Debtors
filed a limited objection and reservation of rights with respect to the SUN Standing Motion
[Docket No. 3598].  The SUN Standing Motion has been mooted by confirmation of the Plan and
approval of the Global Settlement.

75.    <u>PSA Motion</u>.  During the Chapter 11 Cases, a number of conflict parties filed
objections or responses to the Debtors' motion seeking court approval to enter into and perform
under a plan support agreement (the "<u>Plan Support Agreement</u>") with AFI, the Committee, and
certain consenting claimants (the "<u>PSA Motion</u>") [Docket No. 3814].  These conflict parties
included the Federal Home Loan Bank of Boston, the Federal Home Loan Bank of Chicago,

---

[16]    *See Debtors' Limited Objection and Reservation of Rights with Respect to the Motion of Wilmington Trust,
National Association, Solely in its Capacity as Indenture Trustee for the Senior Unsecured Notes Issued by
Residential Capital, LLC for an Order Authorizing it to Prosecute Claims and Other Causes of Action on Behalf of
the Residential Capital, LLC Estate* [Docket No. 3598].

17387889

Credit Suisse Securities (USA) LLC, and certain members of the Ad Hoc Group (including conflict parties Davidson Kempner Capital Management, LLC ("Davidson Kempner"), Loomis, Sayles & Company, L.P. ("Loomis"),[17] Silver Point Capital LP, and UBS AG).[18]  Curtis attorneys handled a portion of the omnibus reply filed in support of the PSA Motion, responding to these and other objections relating to "prematurity" as many of the objections were more properly raised in the Plan confirmation context.  *See Debtors' Omnibus Reply in Further Support of Debtors' Motion for an Order Under Bankruptcy Code Sections 105(A) and 363(B) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee and Certain Consenting Claimants* [Docket No. 4066].  This response required Curtis attorneys to research precedent relating to approval of plan support agreements.  In addition, Curtis attorneys provided significant assistance in the preparation of the chart summarizing responses to the objections to the Plan Support Agreement.  *See Chart of Arguments Raised in Objections and Reservations of Rights* [Docket No. 4066, Ex. 1].  Curtis attorneys also commented on drafts of the Plan Support Agreement and related documents such as the plan term sheet and supplemental term sheet attached thereto for their impact on matters handled by Curtis as conflicts counsel (such as those related to the Subordination Adversary Proceeding), and negotiated, where appropriate, with opposing counsel regarding language to be included in the Plan Support Agreement.

76.    Disqualification Motion.  In addition, Curtis attorneys assisted the Debtors with successfully defending against the Disqualification Motion.  Curtis attorneys coordinated with

---

[17] As of October 5, 2013, Loomis was no longer a member of the Ad Hoc Group.  *See Second Amended Verified Statement of White & Case LLP and Milbank, Tweed, Hadley & McCloy LLP Pursuant to Federal Rule of Bankruptcy Procedure 2019* [Docket No. 5612].

[18] *See* Docket Nos. 4018; 4019; 4034; and 4055.

MoFo in drafting portions of the Debtors' objection to the Disqualification Motion, which was heard on an expedited basis.[19]  This response required research into the standards governing conflicts of interest under both the Bankruptcy Code and applicable state law and a review of the factual background of these Chapter 11 Cases.  Ultimately, the Court raised serious concerns about the Ad Hoc Group's motives in filing the Disqualification Motion and subsequently entered an order denying the Disqualification Motion.  *See Order Denying JSNs' Conflicts Motion* [Docket No. 4415].

77.    <u>Kessler Settlement</u>.  Curtis also addressed a limited objection by PNC Bank (the "<u>PNC Objection</u>") [Docket No. 4661] to the joint motion between the named plaintiffs and the Debtors seeking approval of the settlement of the Kessler Litigation with the Kessler class action plaintiffs (the "<u>Kessler Settlement</u>").[20]  Curtis attorneys endeavored to consensually resolve and adjourn the PNC Objection by engaging in negotiations with counsel for PNC, counsel for the Committee, and counsel to the named plaintiffs in the Kessler Litigation.  This required extensive research regarding applicable state and federal law relating to bar orders and judgment reduction provisions in settlement agreements.  Curtis attorneys also participated in multiple court hearings in order to obtain preliminary approval of the Kessler Settlement and assisted with the amendment of documents integral to the Kessler Settlement, which ultimately resulted in

---

[19]    *See Debtors' Objection to the Motion of the Ad Hoc Group of Junior Secured Noteholders for Entry of an Order (I) Directing Each of Debtors' Counsel, Including Morrison & Foerster LLP, Official Committee Counsel, Including Kramer Levin Naftalis & Frankel LLP, and the Debtors' Management to Remain Strictly Neutral in Any Dispute Regarding Claims by and Between Any Debtors, (II) Ordering the Limited Disqualification of Each of the Foregoing to the Extent Necessary to Effectuate the Foregoing, and (III) Granting Related Relief* [Docket No. 4368].

[20]    *See Joint Motion Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 7023 and 9019 for an Order (1) Granting Class Certification for Purposes of Settlement Only, (2) Appointing Class Representative and Class Counsel for Purposes of Settlement Only, (3) Preliminarily Approving the Settlement Agreement Between Plaintiffs, on their Own Behalf and on Behalf of the Class of Similarly Situated Persons, and the Debtors, (4) Approving the Form and Manner of Notice to the Class, (5) Scheduling a Fairness Hearing to Consider Approval of the Settlement Agreement on a Final Basis and Related Relied and (6) Approving the Settlement Agreement on a Final Basis and Granting Related Relief* [Docket No. 4451].

17387889

successfully obtaining preliminary and final approval of the Kessler Settlement notwithstanding the PNC Objection.[21]

**K.    Adversary Proceedings and Contested Matters (Matter #410)**

Total Fees:    $3,409,565
Total Hours:   6,962.40

78.    A total of 3,171.50 hours of services were performed for this matter in the Fifth Interim Fee Period for which Curtis is seeking interim allowance of $1,514,528 in fees, and during the Compensation Period a total of 6,962.40 hours of services were performed for this matter for which Curtis is seeking final allowance of $3,409,565.

79.    <u>Stay Extension Adversary Proceeding</u>.  During the Compensation Period, Curtis attorneys represented the Debtors in connection with the preparation and prosecution of an adversary proceeding commenced by the Debtors seeking to extend the automatic stay with respect to litigation against certain of the Debtors' current and former officers and directors and certain non-debtor affiliates commenced by numerous parties including conflict party defendants Federal Home Loan Bank of Boston and Federal Home Loan Bank of Chicago (the "<u>Stay Extension Adversary Proceeding</u>").  *See Complaint, Residential Capital, LLC v. Allstate Ins. Co. (In re Residential Capital, LLC)*, Case No. 12-12020 (MG), Adv. Pro. 12-01671) (MG) (Bankr. S.D.N.Y. May 25, 2012) [Docket No. 158, Adv. Pro. Docket No. 1].  In connection with such representation, Curtis worked with MoFo in drafting and revising numerous pleadings, including the adversary complaint, the *Debtors' Motion to Extend Automatic Stay or, in the Alternative,*

---

[21]  *See Order Pursuant to Rules 7023 and 9019 of the Federal Rules of Bankruptcy Procedure (1) Preliminarily Approving the Settlement Agreement Between the Named Plaintiffs, Individually and as Representatives of the Kessler Settlement Class, and the Settling Defendants; (2) Granting Class Certification for Purposes of Settlement Only; (3) Approving the Form and Manner of Notice to Kessler Settlement Class Members of the Settlement Agreement; (4) Scheduling a Fairness Hearing to Consider Final Approval of the Settlement Agreement; and (5) Granting Related Relief* [Docket No. 4808]; *Final Order Pursuant to Fed. R. Civ. P. 23 and Fed. R. Bank. P. 9019 Approving the Settlement Agreement Between the Kessler Settlement Class Members and the Settling Defendants and Granting Related Relief* [Docket No. 5968].

17387889

*For Injunctive Relief Enjoining Prosecution of Certain Pending Litigation Against Debtors'
Directors and Officers and Non-Debtor Corporate Affiliates* [Adv. Pro. Docket No. 4].

80.    In connection with the Stay Extension Adversary Proceeding, Curtis attorneys
also negotiated, drafted, and reviewed stipulations entered into with conflict parties who were
defendants in the Stay Extension Adversary Proceeding, including the Federal Home Loan Bank
of Boston, the Federal Home Loan Bank of Chicago, and John Hancock.   These stipulations
provided for consensual extensions of the automatic stay to prevent the commencement or
continuance of certain litigation against certain non-debtor affiliates of the Debtors.[22]

81.    Phase I of the JSN Adversary Proceeding.   During the Compensation Period,
Curtis attorneys assisted the Debtors with commencing and prosecuting an adversary proceeding
(the "Debtor Action") against the Ad Hoc Group (of which some members are conflict parties),
Wells Fargo (a conflict party), and UMB, seeking, *inter alia*, declarations with respect to the
validity and extent of their liens.[23]   *See First Amended Complaint to Determine Extent of Liens
and for Declaratory Judgment*, *Residential Capital v. UMB Bank, N.A. (In re Residential
Capital, LLC)*, Case No. 12-12020 (MG), Adv. Pro. 13-01343 (MG) (Bankr. S.D.N.Y. June 14,
2013) [Adv. Pro. Docket No. 13-01343, Docket No. 8].

82.    On June 24, 2013, the Court entered an order consolidating the Debtor Action
with the adversary proceeding commenced by the Committee against the Notes Trustee and the
Collateral Agent.   *See Consolidation and Scheduling Order* [Adv. Pro. Docket No. 13-01343,
Docket No. 10].   Thereafter, Curtis attorneys coordinated extensively with attorneys at MoFo,

---

[22]  The majority of time billed by Curtis attorneys in connection the Stay Extension Adversary Proceeding was billed
in the General Litigation matter, as discussed above.

[23]  In various pleadings and statements made to the Court, the JSNs, through their counsel, asserted that they were
oversecured and entitled to postpetition interest, fees, and expenses on account of their secured claims.

Kramer Levin, and Pachulski to efficiently and expeditiously prosecute Phase I of the JSN Adversary Proceeding.

83.    As an integral part of the Phase I litigation team, Curtis attorneys coordinated with MoFo on numerous research topics and performed legal analysis on myriad issues with respect to the JSNs' purported liens on certain Debtor property.  Curtis attorneys also reviewed several drafts of the Debtors' complaint prior to filing and provided extensive comments to MoFo in connection with the issues researched by Curtis.

84.    In addition, Curtis was responsible for drafting and filing answers to the 35 counterclaims asserted by certain of the Defendants in the JSN Adversary Proceeding (as amended, the "Counterclaims").  *See Plaintiffs' Answer and Affirmative Defenses to the Counterclaims of Defendants UMB Bank, N.A. and the Ad Hoc Group of Junior Secured Noteholders* [Adv. Pro. Docket No. 13-01343, Docket No. 20]; *Plaintiffs' Answer and Affirmative Defenses to the First Amended Counterclaims of Defendants UMB Bank, N.A. and the Ad Hoc Group of Junior Secured Noteholders* [Adv. Pro. Docket No. 13-01343, Docket No. 35] (collectively, the "Answers").  The drafting of the Answers required Curtis attorneys to individually analyze and respond to the contentions set forth in each paragraph and count of the Counterclaims.  This required the review of numerous documents, including the Examiner's report, the Debtors' schedules of assets and liabilities, the Plan Support Agreement, the proposed Plan and related documents, and a plethora of prepetition credit documents.

85.    Further, Curtis attorneys assisted the Debtors and the Committee (together, the "Plaintiffs") in prosecuting and defending against motions to dismiss filed in the JSN Adversary Proceeding.  *See Memorandum of Law in Support of the Debtors' and Official Committee of Unsecured Creditors' Motion to Dismiss Certain of the Defendants' Counterclaims* [Adv. Pro.

Docket No. 13-01343, Docket No. 22]; *Debtors' and Official Committee of Unsecured Creditors' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Debtors' First Amended Complaint* [Adv. Pro. Docket No. 13-01343, Docket No. 30]; *Reply Brief of the Debtors and the Official Committee of Unsecured Creditors in Support of their Motion to Dismiss Certain of the Defendants' Counterclaims* [Adv. Pro. Docket No. 13-01343, Docket No. 40] (collectively, the "Motions to Dismiss"). The Motions to Dismiss and related pleadings involved in-depth research into relevant case law and applicable Bankruptcy Code provisions regarding the valuation of a secured creditor's collateral, the standards governing adequate protection, a secured creditor's right to liens on avoidance actions, and the release of collateral under the Uniform Commercial Code. In addition to legal research, Curtis attorneys reviewed the underlying prepetition credit documents and relevant Court orders entered in the Chapter 11 Cases to support and/or respond to arguments raised in the Motions to Dismiss. A Curtis attorney successfully argued a portion of the Motions to Dismiss relating to the Collateral Agent's release of the JSNs' liens pursuant to the relevant prepetition credit documents. *See Amended Order Granting in Part and Denying in Part Motions to Dismiss*, entered on Sept. 18, 2013 [Adv. Pro. Docket No. 13-01343, Docket No. 48] (dismissing counterclaims twenty-two, twenty-three, twenty-four, and twenty-five relating to the release of liens on over $1 billion of collateral securing the letter of credit facility).

86.    Curtis attorneys also assisted the Debtors with drafting and serving document requests and responses to document requests in connection with the JSN Adversary Proceeding. In connection with these and other discovery-related tasks, Curtis professionals coordinated with MoFo, Kramer Levin, and counsel for the Defendants regarding the efficient production of documents and responses to discovery demands. At times, due to the complexities of the

17387889

consolidated actions, it became necessary to research various discovery and procedural issues related to the JSN Adversary Proceeding.   In coordination with other professionals, Curtis attorneys conducted research under both the Bankruptcy Rules and the Federal Rules of Evidence regarding discovery, the production of documents, the assertion of privilege among various parties, limitations on discovery, and other related issues.

87.    In connection with the Phase I trial, Curtis attorneys prepared for and conducted Rule 30(b)(6) depositions of representatives of the Ad Hoc Group and UMB.   Curtis attorneys also prepared for and participated in depositions by the Ad Hoc Group and Wells Fargo of various Debtor witnesses.    Further, Curtis attorneys reviewed and analyzed expert reports regarding various topics at issue in Phase I of the JSN Adversary Proceeding, and conducted depositions of certain Ad Hoc Group expert witnesses in preparation for the Phase I trial.   Once depositions were completed, Curtis worked with the Plan Proponents to designate deposition testimony in advance of the Phase I trial.

88.    Curtis attorneys and paraprofessionals were instrumental to the prosecution of the Phase I trial.  Curtis was responsible for creating and maintaining the Debtors' and Committee's voluminous and extensive trial exhibit lists as well as analyzing and preparing objections to the Defendants' trial exhibits.   Curtis attorneys took the lead throughout the "meet and confer" process before and during the Phase I trial to reach a negotiated resolution on the admissibility of nearly all of the parties' evidentiary submissions.  This required significant research to determine the admissibility of the Debtors' own and the Defendants' exhibits.  Curtis attorneys also assisted and supported MoFo's preparation for the Phase I trial, post-trial briefing, and closing arguments by drafting portions of arguments and assisting in formulation of litigation strategy throughout the pretrial and trial periods.

17387889

89.    Ultimately, Curtis' work on behalf of the Debtors during Phase I of the JSN
Adversary Proceeding was critical to the Plaintiffs' success in obtaining findings from the Court
that, based upon the issues tried during Phase I, the JSNs were undersecured by more than $300
million, thus garnering tremendous value for the Debtors' estates.  *See Memorandum Opinion,
and Findings of Fact and Conclusions of Law, After Phase I Trial* [Docket No. 5772] (the "Phase
I Opinion").[24]

90.    CMH Holdings.  Curtis attorneys also represented the Debtors in connection with
a payment dispute involving the managing member of CMH Holdings LLC, a joint venture
between one of the Debtors and Cerberus Capital Management, L.P., a conflict party, and related
issues involving these entities.

**L.    Automatic Stay and Adequate Protection Matters (Matter #430)**

Total Fees:  $137,189
Total Hours:  235.10

91.    A total of .60 hours of services were performed for this matter in the Fifth Interim
Fee Period for which Curtis is seeking interim allowance of $375 in fees, and during the
Compensation Period a total of 235.10 hours of services were performed for this matter for
which Curtis is seeking final allowance of $137,189.

92.    During the Compensation Period, Curtis attorneys represented the Debtors in
connection with conflict party Wells Fargo's motion for relief from the automatic stay in
connection with a litigation pending in federal district court in California.  In connection with
this representation, Curtis attorneys:  (i) drafted the *Debtors' Objection to Motion of Wells Fargo*

---

[24] Curtis' representation of the Debtors continued in Phase II of the JSN Adversary Proceeding after the Court issued
its Phase I Opinion.  The vast majority of time for such work was billed in matter number 500, as it pertained to Plan
and confirmation issues.

17387889

*Bank, N.A. for Relief From the Automatic Stay to Permit Non-Bankruptcy Forum Action Against Debtor Executive Trustee Services, LLC, or, to Permit Wells Fargo Bank, N.A. to Conduct Discovery and to Issue Trial Subpoenas Directed at Executive Trustee Services, LLC* [Docket No. 805]; (ii) prepared the *Declaration of Jennifer Scoliard, In-House Senior Bankruptcy Counsel at Residential Capital, LLC, in Support of Debtors' Objection to Motion of Joseph A. Connor III (I) for Declaratory Ruling Regarding Possible Stay Violations and (II) to Sever Defendants Protected by Automatic Stay* [Docket No. 1705]; (iii) drafted and negotiated a consensual *Stipulation and Order Modifying Automatic Stay to Provide Declarations to Wells Fargo and to Allow Wells Fargo to Issue Trial Subpoenas Directed at Debtors* [Docket No. 1220]; and (iv) responded to and resolved numerous informal requests and inquiries from Wells Fargo regarding relief from the automatic stay in other matters.

93.    Curtis attorneys also assisted the Debtors in connection with responding to a motion filed by conflict party J.P. Morgan Mortgage Acquisition Corporation seeking relief from the automatic stay in connection with litigation pending in federal district court in Virginia. *See Motion of J.P. Morgan Mortgage Acquisition Corporation for Relief from Stay* [Docket No. 2646].

**M.    Plan and Disclosure Statements (Matter #500)**

Total Fees:    $2,207,303.50
Total Hours:    4,263.20

94.    A total of 3,843.90 hours of services were performed for this matter in the Fifth Interim Fee Period for which Curtis is seeking interim allowance of $1,954,947.50 in fees, and during the Compensation Period a total of 4,263.20 hours of services were performed for this matter for which Curtis is seeking final allowance of $2,207,303.50.

39

95.     During the Compensation Period, in connection with Curtis' role as conflicts counsel, Curtis attorneys performed work related to various aspects of negotiating, litigating and obtaining approval of the Plan Proponents' proposed disclosure statement (as amended, the "Disclosure Statement"),[25] the Global Settlement, and the Plan.

96.     Curtis attorneys assisted MoFo and the Debtors in analyzing a variety of issues related to the formulation of the Disclosure Statement and Plan, including potential claim classification issues involving conflict parties.  In connection with the Debtors' motion seeking approval of the Disclosure Statement, Curtis attorneys worked with MoFo and Kramer Levin to respond to various conflict parties' objections to the Disclosure Statement, including an objection filed by the Ad Hoc Group.  In particular, Curtis attorneys, with Kramer Levin, drafted a rebuttal exhibit to the Ad Hoc Group's proposed Disclosure Statement rider that asserted the Ad Hoc Group's position with respect to the JSN Adversary Proceeding.  *See Disclosure Statement Rider – Dispute with JSNs* [Docket No. 4590, Ex. B].  The Debtors' and the Committee's responsive exhibit was an important part of consensually resolving the Ad Hoc Group's objection prior to the hearing on the Disclosure Statement.

97.     Curtis attorneys also drafted and revised portions of various versions of the Debtors' proposed Plan, Disclosure Statement, and associated documents relating to matters handled by Curtis as conflicts counsel, such as the Subordination Adversary Proceeding, the SUN Standing Motion, the Kessler Settlement, and the JSN Adversary Proceeding.  Curtis also performed related research which proved essential to the Debtors' efforts to craft a Plan and

---

[25]  *See, e.g., Plan Proponents' Motion for an Order (I) Approving Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan Proponents' Joint Chapter 11 Plan, (III) Approving the Form of Ballots, (IV) Scheduling a Hearing on Confirmation of the Plan, (V) Approving Procedures for Notice of the Confirmation Hearing and for Filing Objections to Confirmation of the Plan, and (VI) Granting Related Relief* [Docket No. 4152]; and *[Proposed] Disclosure Statement for the Joint Chapter 11 Plan of Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 4157].

17387889

related documents which addressed various conflicts issues in the Chapter 11 Cases and preserved related rights and causes of action for the Residential Capital, LLC Liquidating Trust to be pursued at the option of the liquidating trustee (respectively, the "ResCap Liquidating Trust" and the "ResCap Liquidating Trustee").

98.    Phase II of the JSN Adversary Proceeding.  Due to the presence of certain conflict parties among the Defendants in the JSN Adversary Proceeding, including certain members of the Ad Hoc Group and Wells Fargo, Curtis participated extensively in Phase II of the JSN Adversary Proceeding and Plan confirmation discovery and litigation efforts.  Curtis drafted and served discovery requests on certain Ad Hoc Group members regarding various Phase II and confirmation issues, including the allocation of the Ally Contribution (as defined in the Plan), the JSNs' purported liens on intercompany claims, the Ad Hoc Group's request to subordinate the claims of the RMBS trusts, and the JSNs' and Wells Fargo's entitlement to fees and indemnification pursuant to the JSN Indenture and related documents.  Curtis attended various meet and confer and Court status conferences related to disputed Phase II and confirmation discovery issues, and reviewed and analyzed documents and expert reports produced by various parties including the Ad Hoc Group and Wells Fargo in preparation for the Phase II trial and confirmation hearing.  Curtis also prepared for and conducted depositions of the Ad Hoc Group's 30(b)(6) witness as well as conflict party Davidson Kempner regarding a range of Phase II and confirmation-related topics.

99.    Curtis conducted extensive research, drafting and analysis related to the Plan Proponents' proposed Phase II findings of fact, focusing on, *inter alia*, the JSNs' entitlement to: (i) adequate protection; (ii) a lien on intercompany claims; (iii) a lien on the AFI contribution;

41

and (iv) payment by the estates of the Ad Hoc Group's professionals' fees and expenses pursuant to the Plan and prepetition credit documents.

100.     In response to the Ad Hoc Group's and Wells Fargo's requests for payment of fees, expenses, and indemnification obligations, Curtis conducted extensive research and analysis regarding these parties' entitlements pursuant to the prepetition credit documents, the Plan and the Bankruptcy Code.  At the request of MoFo, Curtis also conducted a comprehensive analysis of the Ad Hoc Group's Phase I and Phase II document productions in order to formulate a strategy regarding alternative proposed treatment of the JSNs' claims, including possible requests for equitable remedies against the Ad Hoc Group related to potential bad faith actions during the Chapter 11 Cases.

101.     During the Phase II trial and Plan confirmation hearing, Curtis spearheaded the Plan Proponents' efforts to review, analyze and object to many of the Ad Hoc Group's proposed Phase II trial and Plan confirmation hearing exhibits.  Due to the above-referenced conflicts at MoFo, Curtis attorneys were deeply involved in preparing analytical materials for use at the Phase II trial and confirmation hearing.  Additionally, a Curtis attorney argued on behalf of the Debtors with respect to the objection of conflict party Wells Fargo to Plan confirmation, and cross-examined Wells Fargo's designated witness during the Phase II trial.  Other Curtis attorneys participated in preparing and delivering certain other Phase II and confirmation arguments and exhibits.  Curtis attorneys also assisted in drafting sections of the Phase II post-trial brief and proposed confirmation order.

102.     Curtis' efforts during Phase II and the Plan confirmation hearing directly facilitated the Court's approval of the Plan Proponents' Disclosure Statement, Plan, and Global Settlement.  Curtis played a critical role in resolving a variety of important issues raised in

17387889

objections to confirmation filed by conflict parties. Curtis' work on such issues directly resulted in a favorable outcome for the Debtors and the estates in these Chapter 11 Cases.

**N.     Curtis Retention/Billing/Fee Applications (Matter #700)**

Total Fees:     $184,843
Total Hours:    444.90

103.    A total of 82 hours of services were performed for this matter in the Fifth Interim Fee Period for which Curtis is seeking interim allowance of $36,832.50 in fees, and during the Compensation Period a total of 444.90 hours of services were performed for this matter for which Curtis is seeking final allowance of $184,843. The amount billed to this matter during the Compensation Period represents 1.86% of the total fees requested by Curtis in these Chapter 11 Cases.

104.    At the outset of these Chapter 11 Cases, Curtis completed and filed the *Debtors' Application for Order Under Bankruptcy Code Sections 327(a) and 328(b), Bankruptcy Rule 2014(a) and Local Rule 2014-1 Authorizing the Employment and Retention of Curtis, Mallet-Prevost, Colt & Mosle LLP as Conflicts Counsel Nunc Pro Tunc to the Petition Date*, and negotiated and resolved concerns of the U.S. Trustee with respect to the Retention Order. Thereafter, the Court entered the Retention Order.

105.    During the Compensation Period, in order to comply with the Guidelines, Curtis professionals regularly prepared fee statements for all months in the Prior Interim Fee Periods and the Fifth Interim Fee Period, and prepared the Prior Interim Fee Applications. The time spent for this preparation did not include reviewing and revising time entries. Curtis also filed the Declarations.

106.    During the Compensation Period, as detailed above, the U.S. Trustee filed the First, Second, Third and Fourth Interim Omnibus Objections (the "U.S. Trustee Omnibus

Objections"), in which it objected to, *inter alia*, a small amount of certain fees included in Curtis' First, Second, Third and Fourth Interim Fee Applications. Curtis attended to addressing and promptly resolving the U.S. Trustee Omnibus Objections on a consensual basis as detailed above. In order to resolve the U.S. Trustee Omnibus Objections as they related to Curtis, Curtis attorneys and paraprofessionals provided further detail with respect to certain entries at the request of the U.S. Trustee, and engaged in legal research and negotiations with the U.S. Trustee. Curtis ultimately resolved each of the U.S. Trustee Omnibus Objections consensually, as described above.

107.    Curtis represents that the fees and expenses incurred in connection with these matters and billed to the Debtors' estates are reasonable as they represent only 1.86% of the total fees and expenses requested for the Compensation Period and do not reflect any time spent reviewing and revising time entries.[26]

## **Reasonable and Necessary Services Rendered by Curtis**

108.    The foregoing professional services rendered by Curtis on behalf of the Debtors during the Fifth Interim Fee Period and the Compensation Period were reasonable, necessary, and appropriate to the administration of the these Chapter 11 Cases.

109.    Many of the services performed by partners, counsel and associates of Curtis were rendered by Curtis' Restructuring and Insolvency Group. Curtis has a prominent practice in this area and enjoys a national and international reputation for its expertise in financial reorganizations and restructurings of troubled companies, with 13 attorneys focusing exclusively on this area of law. The attorneys at Curtis working on these Chapter 11 Cases have represented

---

[26]    During the Compensation Period, Curtis incurred fees of more than $393,479.50 in ensuring that its billing statements and interim applications were in compliance with the Guidelines and Interim Compensation Order that were not charged to the Debtors.

17387889

debtors and creditors' committees as either primary or conflicts counsel and have acted as special counsel to debtors and creditors' committees in many large Chapter 11 cases.  In addition, due to the facts and circumstances of these Chapter 11 Cases, attorneys from Curtis' Litigation and Corporate practice groups were involved with Curtis' representation of the Debtors.  These practice groups also enjoy a national and international reputation for their expertise.  Overall, Curtis brings to these Chapter 11 Cases a particularly high level of skill and knowledge, which inured to the benefit of the Debtors and all stakeholders.

110.    During the Fifth Interim Fee Period and throughout the Compensation Period, Curtis advised and assisted the Debtors in a number of key aspects of these Chapter 11 Cases. To this end, as set forth in detail in **Exhibit H** and **Exhibit I**, respectively, Curtis partners, counsel, associates, and paraprofessionals from various Curtis practice groups expended time rendering professional services on behalf of the Debtors and their estates.

111.    During the Fifth Interim Fee Period, as in the Prior Interim Fee Periods, Curtis' hourly billing rates for the attorneys primarily responsible for managing these Chapter 11 Cases ranged from $290 to $860.  Allowance of compensation in the amount requested would result in a blended hourly billing rate for attorneys of approximately $513.93 (based on 7,433.40 recorded attorney hours at Curtis' regular billing rates in effect at the time of the performance of services). The hourly rates and corresponding rate structure utilized by Curtis in these Chapter 11 Cases are equivalent to or less than the current hourly rates and corresponding rate structure predominantly used by Curtis for restructuring, workout, bankruptcy, insolvency and comparable matters, and similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.  These rates and rate structure reflect that

45

such particular matters are typically national in scope and typically involve great complexity, high stakes, and severe time pressures.

**Actual and Necessary Expenses Incurred by Curtis**

112.    As set forth in **Exhibit D** and **Exhibit G** attached hereto, Curtis has incurred a total of $30,505.36 in expenses on behalf of the Debtors during the Fifth Interim Fee Period and $53,990.94 in expenses on behalf of the Debtors during Compensation Period, respectively. These charges are intended to reimburse Curtis' direct operating costs, which are not incorporated into Curtis' hourly billing rates. Curtis charges $0.10 per page for black and white copying or printing charges at the copy centers for its U.S. offices and $.50 per page for internal color copying or printing charges at its U.S. offices. The other expenses charged to the Debtors are at the provider's cost without markup. These charges include actual charges for ECF/Pacer and certain charges for CourtCall and conference call services. Only clients who actually use services of the types set forth in **Exhibit D** and **Exhibit G** of the Application incur these expenses. In addition, as reflected in **Exhibit D** and **Exhibit G**, on a number of occasions, overnight or hand delivery of documents and other materials was required as a result of the exigencies and circumstances of these Chapter 11 Cases. Curtis also took several depositions in connection with the JSN Adversary Proceeding. The costs charged to record and transcribe these depositions were charged to the Debtors. The disbursements for such services are not included in Curtis' overhead for the purpose of setting billing rates and Curtis has made every effort to minimize its disbursements in these Chapter 11 Cases. The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.

113.    The extreme time constraints imposed by the circumstances of these Chapter 11 Cases sometimes required Curtis attorneys and other employees to devote time during the

evenings and on weekends to perform legal services on behalf of the Debtors.  These extraordinary services were essential to meet deadlines, timely respond to inquiries on a daily basis from various creditors and other stakeholders, and to satisfy the demands of the Debtors' businesses and ensure the orderly administration of their estates.  Consistent with firm policy, as further disclosed in the Curtis retention application, attorneys and other Curtis employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs.  Curtis' regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of providing legal services.  However, in these Chapter 11 Cases, pursuant to the terms of Curtis' engagement with the Debtors, Curtis has absorbed these overtime meal and transportation expenses in their entirety in accordance with its agreement with the Debtors.   Other expenses absorbed by Curtis in connection with these Chapter 11 Cases included Westlaw and Lexis charges, proofreading, word-processing and local transportation.  The expenses Curtis wrote off for the Compensation Period totaled more than $639,016.14.

114.    The actual expenses incurred by Curtis in providing professional services during the Fifth Interim Fee Period and Compensation Period and billed to the Debtors were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these Chapter 11 Cases.

### Curtis' Requested Compensation and Reimbursement Should Be Allowed

115.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.   Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 1103 of the Bankruptcy

47

Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses."

116.     Section 330 of the Bankruptcy Code also sets forth the criteria for the award of such compensation and reimbursement.  In determining the amount of reasonable compensation to be awarded, the Court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including:

    a.     the time spent on such services;

    b.     the rates charged for such services;

    c.     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    d.     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

    e.     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

    f.     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

117.     Curtis respectfully submits that the services for which it seeks compensation in the Application were necessary for and beneficial to the Debtors and their estates and were rendered to protect and preserve the Debtors' estates.  Curtis rendered services to the Debtors as economically, effectively, and efficiently as possible under difficult circumstances and that the results obtained benefited not only the Debtors but all stakeholders in these Chapter 11 Cases. Curtis further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

17387889

118.    Curtis attorneys and paraprofessionals spent a total of 20,162.20 hours during the Compensation Period, which services have a fair market value of $9,957,770.80.    As demonstrated by the Application and all of the exhibits submitted in support hereof, Curtis spent its time economically and without unnecessary duplication.  In addition, the work conducted was carefully assigned to appropriate attorneys or paraprofessionals according to the experience and level of expertise required for each particular task.  In summary, the services rendered by Curtis were necessary and beneficial to the Debtors and their estates, and were consistently performed in a timely manner commensurate with the complexity, importance, novelty, and nature of the issues involved.

119.    Accordingly, Curtis respectfully submits that approval of the compensation and expense reimbursement sought herein is warranted.

### No Prior Request

120.    No prior application for the relief requested herein has been made to this or any other court.

### Notice

121.    Curtis has provided a copy of the Application to:  (a) the ResCap Liquidating Trustee; (b) former lead counsel for the Debtors and counsel to the ResCap Liquidating Trustee; (c) former counsel to the Committee and counsel to the ResCap Liquidating Trustee; (d) counsel to AFI; and (e) the U.S. Trustee.[27]  A copy of this Application is available for a fee on the docket for these Chapter 11 Cases at http://www.nysb.uscourts.gov and free of charge at http://www.kccllc.net/rescap.

---

[27] Pursuant to the *Notice of Withdrawal of Notice of Appearance and Request for Service of All Notices, Documents and Pleadings* [Docket No. 3439], Curtis did not serve copies of its monthly fee statements for the Fifth Interim Fee Period or the Application to counsel for Barclays Bank, PLC.

17387889

### Conclusion

122.    The services Curtis rendered during the Compensation Period on behalf of the Debtors were reasonable and necessary within the meaning of section 330 of the Bankruptcy Code.  Further, the expenses incurred for which reimbursement is requested were actual and necessary to the performance of Curtis' services.

WHEREFORE, for the reasons set forth herein, Curtis respectfully requests that the Court enter an order granting the relief requested herein and such other and further relief as the Court deems appropriate.

Dated:  March 3, 2014
        New York, New York

Respectfully submitted,

By:   */s/ Steven J. Reisman*
      Steven J. Reisman
      Theresa A. Foudy
      Maryann Gallagher
      **CURTIS, MALLET-PREVOST,**
        **COLT & MOSLE LLP**
      101 Park Avenue
      New York, New York 10178-0061
      Telephone: (212) 696-6000
      Facsimile:  (212) 697-1559
      Email:     sreisman@curtis.com
                 tfoudy@curtis.com
                 mgallagher@curtis.com

      *Conflicts Counsel for the Debtors and*
        *Debtors in Possession*

17387889

## Exhibit A

**Certification of Compliance**

17387889

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
Steven J. Reisman
Theresa A. Foudy
Maryann Gallagher

*Conflicts Counsel for the Debtors and*
  *Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Case No. 12-12020 (MG) |
| | : | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,[1] | : | Chapter 11 |
| | : | |
| Debtors. | : | Jointly Administered |

------------------------------------------------------------x

**CERTIFICATION OF STEVEN J. REISMAN PURSUANT TO
GENERAL ORDER M–447 REGARDING THE FIFTH INTERIM AND FINAL
APPLICATION OF CURTIS, MALLET-PREVOST, COLT & MOSLE LLP AS
CONFLICTS COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR
ALLOWANCE AND PAYMENT OF COMPENSATION FOR PROFESSIONAL
SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY
EXPENSES INCURRED FROM MAY 14, 2012 THROUGH AND INCLUDING
DECEMBER 17, 2013**

I, Steven J. Reisman, certify as follows:

1.    I am a partner at the law firm of Curtis, Mallet-Prevost, Colt & Mosle LLP

("<u>Curtis</u>"), with responsibility for the Chapter 11 Cases of Residential Capital, LLC and certain

of its affiliates, as debtors and debtors in possession (collectively, the "<u>Debtors</u>") in respect of,

among other things, compliance with (a) the Amended Guidelines for Fees and Disbursements

for Professionals in Southern District of New York Bankruptcy Cases (the "<u>Local Guidelines</u>")

---

[1]  The names of the Debtors in these cases and their respective tax identification numbers are identified on <u>Exhibit 1</u>
to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11
Petitions and First Day Pleadings* [Docket No. 6].

established and adopted by the United States Bankruptcy Court for the Southern District of New

York pursuant to *General Order M-447*, (b) the *United States Trustee Guidelines for Reviewing*

*Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330,*

*adopted on January 30, 1996* (the "UST Guidelines") and (c) the *Order Establishing Procedures*

*for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 185]

(the "Interim Compensation Order" and, collectively with the Local Guidelines and UST

Guidelines, collectively, the "Guidelines").

 2. With respect to Section B.1 of the Local Guidelines, I certify that:

    **A.** I have read Curtis' Fifth Interim and Final Application For Compensation and Reimbursement of Expenses (the "Application");[2]

    **B.** To the best of my knowledge, information and belief, insofar as I can tell after reasonable inquiry, the fees and disbursements sought in the Application fall within the Guidelines, except as specifically noted in this Certification and described in the Application;

    **C.** Except to the extent that fees or disbursements are prohibited by the Guidelines, the fees and disbursements sought are billed at rates and in accordance with practices customarily employed by Curtis and generally accepted by Curtis' clients; and

    **D.** In providing a reimbursable service, Curtis does not make a profit on the service, whether the service is performed by Curtis in-house or through a third party.

 3. With respect to Section B.2 of the Local Guidelines, I certify that, in accordance

with the terms of the Interim Compensation Order, the Debtors, lead counsel to the former

Debtors, counsel to the former Committee, counsel to AFI, and the U.S. Trustee have been

provided with a statement of the fees and disbursements accrued during each month of the Fifth

---

[2] All capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Application.

17387889

Interim Fee Period and for each month during the entire Compensation Period,[3] which statement of fees and disbursements contained a list of professionals and paraprofessionals providing services, their respective billing rates, the aggregate hours spent by each professional and paraprofessional, a general description of services rendered, a reasonably detailed breakdown of the disbursements incurred, and an explanation of billing practices.

4.      With respect to Section B.3 of the Local Guidelines, due to certain time constraints, Curtis was unable to provide the ResCap Liquidating Trustee, former lead counsel for the Debtors and counsel to the ResCap Liquidating Trustee, former counsel to the Committee and counsel to the ResCap Liquidating Trustee, counsel to AFI, and the U.S. Trustee with a copy of this Application prior to its filing on the docket of these Chapter 11 Cases.[4]

Dated:  March 3, 2014
        New York, New York

                                        /s/ Steven J. Reisman
                                        _____
                                        STEVEN J. REISMAN
                                        A Member of the Firm

---

[3] Pursuant to the *Notice of Withdrawal of Notice of Appearance and Request for Service of All Notices, Documents and Pleadings* [Docket No. 3439], Curtis did not serve copies of its monthly fee statements for the Fifth Interim Fee Period or the Application to counsel for Barclays Bank, PLC.

[4] Portions of Curtis' detailed time records attached hereto as **Exhibit H** and **Exhibit I** have been redacted to prevent the disclosure of confidential information and privileged litigation strategy.  Unredacted copies of Curtis' detailed time records have been provided to the Court, the ResCap Liquidating Trust, the U.S. Trustee and the former counsel to the Committee.

17387889

**Exhibit B**

**In re: RESIDENTIAL CAPITAL, LLC, *et al*.**
**CHAPTER 11**
**CASE NO. 12-12020**

**Summary of Fees and Expenses Billed by Subject Matter**
**During the Fifth Interim Fee Period**
**(September 1, 2013 Through and Including December 17, 2013)**

| Matter Number | Matter Description | Total Billed Hours | Total Fees Requested | Total Expenses Requested | Total Compensation |
|---|---|---|---|---|---|
| 100 | Case Administration | 13.40 | $7,487.50 | $999.37 | $8,486.87 |
| 320 | Claims Administration and Objections | 377.00 | 210,887.50 | 1,046.41 | 211,933.91 |
| 340 | JSN Doc Review | 271.10 | 97,854.00 | 0.00 | 97,854.00 |
| 400 | General Litigation Matters | 255.80 | 119,197.00 | 211.35 | 119,408.35 |
| 410 | Adversary Proceedings and Contested Matters | 3,171.50 | 1,514,528.00 | 13,047.94 | 1,527,575.94 |
| 430 | Automatic Stay/Adequate Protection Matters | .60 | 375.00 | 0.00 | 375.00 |
| 500 | Plan and Disclosure Statements | 3,843.90 | 1,954,947.50 | 13,719.36 | 1,968,666.86 |
| 700 | Curtis Retention/Billing/Fee Applications | 82.00 | 36,832.50 | 1,480.93 | 38,313.43 |
| | **Total** | **8,015.30** | **$3,942,109.00** | **$30,505.36** | **$3,972,614.36** |

17387889

**Exhibit C**

**In re: RESIDENTIAL CAPITAL, LLC,** *et al.*
**CHAPTER 11**
**CASE NO. 12-12020**


**Summary of Hours Billed by Professionals and Paraprofessionals**
**During the Fifth Interim Fee Period**
**(September 1, 2013 Through and Including December 17, 2013)**

| Name | Department and Year Admitted (NY) | Hourly Billing Rate | Total Hours Worked | Total Compensation Requested |
|---|---|---|---|---|
| **PARTNERS** | | | | |
| Jacques Semmelman | Litigation Admitted in 1984 | $860 | 254.70 | $219,042.00 |
| Steven J. Reisman | Restructuring and Insolvency Admitted 1991 | 830 | 204.70 | 169,901.00 |
| Turner P. Smith | Litigation Admitted 1981 | 830 | 1.20 | 996.00 |
| Valarie A. Hing | Corporate Admitted in 1994 | 800 | 39.20 | 31,360.00 |
| Michael J. Moscato | Litigation Admitted 1982 | 785 | 426.30 | 334,645.50 |
| Jonathan J. Walsh | Litigation Admitted in 1999 | 740 | 350.80 | 259,592.00 |
| Michael A. Cohen | Restructuring and Insolvency Admitted 2000 | 730 | 126.50 | 92,345.00 |
| Theresa A. Foudy | Litigation Admitted 1994 | 730 | 473.80 | 345,874.00 |
| **TOTAL PARTNERS** | | | **1,877.20** | **1,453,755.50** |
| Maryann Gallagher | Restructuring and Insolvency Admitted in 1988 | $625 | 453.10 | $283,187.50 |
| **TOTAL OF COUNSEL** | | | **453.10** | **$283,187.50** |
| **ASSOCIATES** | | | | |
| Ellen Tobin | Litigation Admitted in 2006 | $600 | 783.00 | $469,800.00 |
| Dora Straus | Litigation Admitted in 2000 | 600 | 9.70 | 5,820.00 |
| Jeffrey C. Berman | Litigation Admitted in 2006 | 600 | 408.30 | 244,980.00 |
| James V. Drew | Restructuring and Insolvency Admitted in 2002 | 590 | 12.20 | 7,198.00 |
| Danny Phillips | Corporate Admitted in 2006 | 550 | 41.30 | 22,715.00 |
| George E. Spencer | Litigation Admitted in 2008 | 520 | 30.50 | 15,860.00 |
| Daniel A. Bloom | Restructuring and Insolvency Admitted in 2009 | 480 | 618.40 | 296,832.00 |

| Name | Department and Year Admitted (NY) | Hourly Billing Rate | Total Hours Worked | Total Compensation Requested |
|---|---|---|---|---|
| Julia Mosse | Litigation Admitted in 2010 | $435 | 318.20 | $138,417.00 |
| Nicole Mazanitis | Litigation Admitted in 2011 | 435 | 86.50 | 37,627.50 |
| Peter J. Buenger | Restructuring and Insolvency Admitted in 2010 | 425 | 22.50 | 9,562.50 |
| Heather Hiznay | Restructuring and Insolvency Admitted in 2011 | 345 | 28.90 | 9,970.50 |
| Michael P. Jones | Litigation Admitted in 2013 | 305 | 466.10 | 142,160.50 |
| Holly Sawyer | Corporate Admitted in 2013 | 305 | 17.80 | 5,429.00 |
| Pablo Ruiz | Corporate Admission Pending | 305 | 32.40 | 9,882.00 |
| John T. Weber | Restructuring and Insolvency Admitted in 2013 | 305 | 476.70 | 145,393.50 |
| Bryan M. Kotliar | Restructuring and Insolvency Admitted in 2013 | 305 | 459.30 | 140,086.50 |
| Benjamin Butterfield | Restructuring and Insolvency Admission Pending | 305 | 282.20 | 86,071.00 |
| Alyssa Astiz | Litigation Admitted in 2013 | 305 | 27.80 | 8,479.00 |
| Ada Añon | Litigation Admitted in 2012 | 300 | 245.40 | 73,620.00 |
| Edward Combs | Litigation Admitted in 2013 | 290 | 735.90 | 213,411.00 |
| **TOTAL ASSOCIATES** | | | **5,103.10** | **$2,083,315** |
| **PARAPROFESSIONALS** | | | | |
| Neal Goodman | Not Applicable | $260 | 22.60 | $5,876.00 |
| Franklin R. Guenthner | Not Applicable | 235 | 57.70 | 13,559.50 |
| Farai Chidavaenzi | Not Applicable | 235 | 4.00 | 940.00 |
| Noah Gardy | Not Applicable | 235 | 37.40 | 8,789.00 |
| Georgia Faust | Not Applicable | 230 | 4.80 | 1,104.00 |
| Susan Kindya-Culley | Not Applicable | 230 | 1.90 | 437.00 |
| Hesel Toyjanova | Not Applicable | 220 | 4.00 | 880.00 |
| Kristine Kim | Not Applicable | 210 | 14.50 | 3,045.00 |
| Ashley Baldwin-Hunter | Not Applicable | 210 | 23.30 | 4,893.00 |
| Jorge Alcantar | Not Applicable | 210 | 4.00 | 840.00 |
| Michael Malavarca | Not Applicable | 200 | 6.20 | 1,240.00 |
| Samuel Ballard | Not Applicable | 200 | 400.00 | 80,000.00 |
| Bryent Battle | Not Applicable | 165 | 1.50 | 247.50 |
| **TOTAL PARAPROFESSIONALS** | | | **581.90** | **$121,851.00** |
| **TOTAL** | | | **8,015.30** | **3,942,109.00** |

2

17387889

| | |
|---|---:|
| Total Billed Hours for Attorneys | 7,433.40 |
| Total Billed Hours for Paraprofessionals | 581.90 |
| Total Billed Hours | 8,015.30 |
| Total Fees Requested | $3,942,109.00 |
| Blended Rate for Attorneys and Paraprofessionals | $491.82 |
| Blended Rate for Attorneys | $513.93 |

3

**Exhibit D**

**In re: RESIDENTIAL CAPITAL, LLC, *et al*.**
**CHAPTER 11**
**CASE NO. 12-12020**

**Expense Summary for the Fifth Interim Fee Period**
**(September 1, 2013 Through and Including December 17, 2013)**[*]

| Expense Category | Amount |
|---|---|
| Courier Services | $1,392.27 |
| CourtCall | 2,171.00 |
| Deposition Reporting/Transcripts | 5,274.52 |
| External Photocopy Services | 18,297.30 |
| Intercall Audio Conferencing | 548.92 |
| Pacer – ECF | 1,239.20 |
| Process Service | 1,582.15 |
| **Total** | **$30,505.36** |

---

[*] All expenses have been billed in accordance with the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases.

17387889

**Exhibit D-1**

**In re: RESIDENTIAL CAPITAL, LLC,** *et al.*
**CHAPTER 11**
**CASE NO. 12-12020**
**Detail of Disbursements and Other Charges**
**For the Fifth Interim Fee Period**
**(September 1, 2013 Through and Including December 17, 2013)**

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 9/2/2013 | EXTERNAL PHOTOCOPY SERVICES | $134.70 |
| 9/5/2013 | EXTERNAL PHOTOCOPY SERVICES | $27.60 |
| 9/6/2013 | EXTERNAL PHOTOCOPY SERVICES | $302.80 |
| 9/6/2013 | EXTERNAL PHOTOCOPY SERVICES | $692.90 |
| 9/9/2013 | EXTERNAL PHOTOCOPY SERVICES | $141.10 |
| 9/9/2013 | EXTERNAL PHOTOCOPY SERVICES | $35.40 |
| 9/10/2013 | EXTERNAL PHOTOCOPY SERVICES | $141.40 |
| 9/17/2013 | EXTERNAL PHOTOCOPY SERVICES | $1.70 |
| 9/23/2013 | EXTERNAL PHOTOCOPY SERVICES | $650.80 |
| 9/24/2013 | EXTERNAL PHOTOCOPY SERVICES | $804.70 |
| 9/24/2013 | EXTERNAL PHOTOCOPY SERVICES | $19.40 |
| 9/24/2013 | EXTERNAL PHOTOCOPY SERVICES | $199.60 |
| 9/25/2013 | EXTERNAL PHOTOCOPY SERVICES | $655.50 |
| 9/25/2013 | EXTERNAL PHOTOCOPY SERVICES | $113.00 |
| 9/25/2013 | EXTERNAL PHOTOCOPY SERVICES | $727.20 |
| 9/27/2013 | EXTERNAL PHOTOCOPY SERVICES | $305.60 |
| 9/30/2013 | EXTERNAL PHOTOCOPY SERVICES | $161.00 |
| 10/4/2013 | EXTERNAL PHOTOCOPY SERVICES | $4.90 |
| 10/7/2013 | EXTERNAL PHOTOCOPY SERVICES | $216.00 |
| 10/8/2013 | EXTERNAL PHOTOCOPY SERVICES | $28.80 |
| 10/8/2013 | EXTERNAL PHOTOCOPY SERVICES | $9.20 |
| 10/8/2013 | EXTERNAL PHOTOCOPY SERVICES | $76.90 |
| 10/8/2013 | EXTERNAL PHOTOCOPY SERVICES | $12.70 |
| 10/8/2013 | EXTERNAL PHOTOCOPY SERVICES | $264.10 |
| 10/8/2013 | EXTERNAL PHOTOCOPY SERVICES | $784.90 |
| 10/8/2013 | EXTERNAL PHOTOCOPY SERVICES | $95.00 |
| 10/9/2013 | EXTERNAL PHOTOCOPY SERVICES | $230.70 |
| 10/9/2013 | EXTERNAL PHOTOCOPY SERVICES | $29.00 |
| 10/9/2013 | EXTERNAL PHOTOCOPY SERVICES | $1,038.50 |
| 10/10/2013 | EXTERNAL PHOTOCOPY SERVICES | $48.40 |
| 10/10/2013 | EXTERNAL PHOTOCOPY SERVICES | $113.70 |
| 10/10/2013 | EXTERNAL PHOTOCOPY SERVICES | $43.00 |
| 10/10/2013 | EXTERNAL PHOTOCOPY SERVICES | $325.00 |
| 10/10/2013 | EXTERNAL PHOTOCOPY SERVICES | $22.00 |
| 10/10/2013 | EXTERNAL PHOTOCOPY SERVICES | $48.60 |

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 10/10/2013 | EXTERNAL PHOTOCOPY SERVICES | $33.20 |
| 10/11/2013 | EXTERNAL PHOTOCOPY SERVICES | $188.20 |
| 10/11/2013 | EXTERNAL PHOTOCOPY SERVICES | $25.50 |
| 10/11/2013 | EXTERNAL PHOTOCOPY SERVICES | $97.60 |
| 10/14/2013 | EXTERNAL PHOTOCOPY SERVICES | $99.40 |
| 10/14/2013 | EXTERNAL PHOTOCOPY SERVICES | $6.50 |
| 10/14/2013 | EXTERNAL PHOTOCOPY SERVICES | $6.30 |
| 10/14/2013 | EXTERNAL PHOTOCOPY SERVICES | $42.90 |
| 10/14/2013 | EXTERNAL PHOTOCOPY SERVICES | $68.80 |
| 10/14/2013 | EXTERNAL PHOTOCOPY SERVICES | $499.00 |
| 10/15/2013 | EXTERNAL PHOTOCOPY SERVICES | $51.50 |
| 10/15/2013 | EXTERNAL PHOTOCOPY SERVICES | $7.40 |
| 10/15/2013 | EXTERNAL PHOTOCOPY SERVICES | $75.50 |
| 10/15/2013 | EXTERNAL PHOTOCOPY SERVICES | $3.60 |
| 10/16/2013 | EXTERNAL PHOTOCOPY SERVICES | $144.00 |
| 10/16/2013 | EXTERNAL PHOTOCOPY SERVICES | $28.30 |
| 10/17/2013 | EXTERNAL PHOTOCOPY SERVICES | $9.40 |
| 10/17/2013 | EXTERNAL PHOTOCOPY SERVICES | $8.20 |
| 10/17/2013 | EXTERNAL PHOTOCOPY SERVICES | $4.80 |
| 10/17/2013 | EXTERNAL PHOTOCOPY SERVICES | $29.70 |
| 10/17/2013 | EXTERNAL PHOTOCOPY SERVICES | $5.00 |
| 10/17/2013 | EXTERNAL PHOTOCOPY SERVICES | $98.00 |
| 10/18/2013 | EXTERNAL PHOTOCOPY SERVICES | $259.40 |
| 10/18/2013 | EXTERNAL PHOTOCOPY SERVICES | $117.00 |
| 10/18/2013 | EXTERNAL PHOTOCOPY SERVICES | $19.00 |
| 10/21/2013 | EXTERNAL PHOTOCOPY SERVICES | $4.90 |
| 10/21/2013 | EXTERNAL PHOTOCOPY SERVICES | $8.30 |
| 10/21/2013 | EXTERNAL PHOTOCOPY SERVICES | $5.00 |
| 10/21/2013 | EXTERNAL PHOTOCOPY SERVICES | $4.70 |
| 10/22/2013 | EXTERNAL PHOTOCOPY SERVICES | $24.80 |
| 10/22/2013 | EXTERNAL PHOTOCOPY SERVICES | $25.10 |
| 10/22/2013 | EXTERNAL PHOTOCOPY SERVICES | $4.90 |
| 10/22/2013 | EXTERNAL PHOTOCOPY SERVICES | $284.50 |
| 10/22/2013 | EXTERNAL PHOTOCOPY SERVICES | $3.60 |
| 10/23/2013 | EXTERNAL PHOTOCOPY SERVICES | $0.20 |
| 10/23/2013 | EXTERNAL PHOTOCOPY SERVICES | $91.90 |
| 10/23/2013 | EXTERNAL PHOTOCOPY SERVICES | $25.30 |
| 10/23/2013 | EXTERNAL PHOTOCOPY SERVICES | $6.50 |
| 10/23/2013 | EXTERNAL PHOTOCOPY SERVICES | $196.50 |
| 10/23/2013 | EXTERNAL PHOTOCOPY SERVICES | $366.10 |
| 10/23/2013 | EXTERNAL PHOTOCOPY SERVICES | $56.80 |
| 10/24/2013 | EXTERNAL PHOTOCOPY SERVICES | $60.20 |
| 10/24/2013 | EXTERNAL PHOTOCOPY SERVICES | $19.40 |
| 10/24/2013 | EXTERNAL PHOTOCOPY SERVICES | $27.80 |
| 10/24/2013 | EXTERNAL PHOTOCOPY SERVICES | $65.40 |

17387889

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 10/28/2013 | EXTERNAL PHOTOCOPY SERVICES | $100.50 |
| 10/28/2013 | EXTERNAL PHOTOCOPY SERVICES | $127.30 |
| 10/29/2013 | EXTERNAL PHOTOCOPY SERVICES | $13.80 |
| 10/29/2013 | EXTERNAL PHOTOCOPY SERVICES | $9.80 |
| 10/29/2013 | EXTERNAL PHOTOCOPY SERVICES | $6.00 |
| 10/29/2013 | EXTERNAL PHOTOCOPY SERVICES | $177.30 |
| 10/30/2013 | EXTERNAL PHOTOCOPY SERVICES | $68.80 |
| 10/30/2013 | EXTERNAL PHOTOCOPY SERVICES | $86.10 |
| 10/31/2013 | EXTERNAL PHOTOCOPY SERVICES | $522.40 |
| 10/31/2013 | EXTERNAL PHOTOCOPY SERVICES | $322.40 |
| 10/31/2013 | EXTERNAL PHOTOCOPY SERVICES | $90.20 |
| 11/1/2013 | EXTERNAL PHOTOCOPY SERVICES | $116.20 |
| 11/1/2013 | EXTERNAL PHOTOCOPY SERVICES | $14.50 |
| 11/4/2013 | EXTERNAL PHOTOCOPY SERVICES | $3.80 |
| 11/4/2013 | EXTERNAL PHOTOCOPY SERVICES | $19.60 |
| 11/4/2013 | EXTERNAL PHOTOCOPY SERVICES | $15.20 |
| 11/4/2013 | EXTERNAL PHOTOCOPY SERVICES | $69.50 |
| 11/4/2013 | EXTERNAL PHOTOCOPY SERVICES | $0.20 |
| 11/4/2013 | EXTERNAL PHOTOCOPY SERVICES | $20.10 |
| 11/5/2013 | EXTERNAL PHOTOCOPY SERVICES | $26.50 |
| 11/5/2013 | EXTERNAL PHOTOCOPY SERVICES | $7.50 |
| 11/5/2013 | EXTERNAL PHOTOCOPY SERVICES | $17.80 |
| 11/5/2013 | EXTERNAL PHOTOCOPY SERVICES | $7.10 |
| 11/5/2013 | EXTERNAL PHOTOCOPY SERVICES | $3.20 |
| 11/5/2013 | EXTERNAL PHOTOCOPY SERVICES | $14.60 |
| 11/5/2013 | EXTERNAL PHOTOCOPY SERVICES | $14.40 |
| 11/6/2013 | EXTERNAL PHOTOCOPY SERVICES | $7.90 |
| 11/7/2013 | EXTERNAL PHOTOCOPY SERVICES | $7.40 |
| 11/7/2013 | EXTERNAL PHOTOCOPY SERVICES | $11.00 |
| 11/7/2013 | EXTERNAL PHOTOCOPY SERVICES | $0.10 |
| 11/7/2013 | EXTERNAL PHOTOCOPY SERVICES | $103.00 |
| 11/7/2013 | EXTERNAL PHOTOCOPY SERVICES | $44.40 |
| 11/7/2013 | EXTERNAL PHOTOCOPY SERVICES | $27.90 |
| 11/7/2013 | EXTERNAL PHOTOCOPY SERVICES | $194.00 |
| 11/7/2013 | EXTERNAL PHOTOCOPY SERVICES | $321.00 |
| 11/8/2013 | EXTERNAL PHOTOCOPY SERVICES | $6.70 |
| 11/11/2013 | EXTERNAL PHOTOCOPY SERVICES | $3.90 |
| 11/11/2013 | EXTERNAL PHOTOCOPY SERVICES | $12.20 |
| 11/11/2013 | EXTERNAL PHOTOCOPY SERVICES | $8.80 |
| 11/11/2013 | EXTERNAL PHOTOCOPY SERVICES | $9.20 |
| 11/11/2013 | EXTERNAL PHOTOCOPY SERVICES | $15.40 |
| 11/12/2013 | EXTERNAL PHOTOCOPY SERVICES | $19.40 |
| 11/12/2013 | EXTERNAL PHOTOCOPY SERVICES | $8.10 |
| 11/12/2013 | EXTERNAL PHOTOCOPY SERVICES | $55.90 |
| 11/13/2013 | EXTERNAL PHOTOCOPY SERVICES | $37.40 |

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 11/13/2013 | EXTERNAL PHOTOCOPY SERVICES | $14.50 |
| 11/13/2013 | EXTERNAL PHOTOCOPY SERVICES | $95.50 |
| 11/13/2013 | EXTERNAL PHOTOCOPY SERVICES | $207.10 |
| 11/13/2013 | EXTERNAL PHOTOCOPY SERVICES | $19.50 |
| 11/13/2013 | EXTERNAL PHOTOCOPY SERVICES | $108.60 |
| 11/13/2013 | EXTERNAL PHOTOCOPY SERVICES | $42.00 |
| 11/13/2013 | EXTERNAL PHOTOCOPY SERVICES | $40.70 |
| 11/13/2013 | EXTERNAL PHOTOCOPY SERVICES | $22.80 |
| 11/13/2013 | EXTERNAL PHOTOCOPY SERVICES | $36.40 |
| 11/13/2013 | EXTERNAL PHOTOCOPY SERVICES | $47.70 |
| 11/13/2013 | EXTERNAL PHOTOCOPY SERVICES | $303.70 |
| 11/14/2013 | EXTERNAL PHOTOCOPY SERVICES | $0.30 |
| 11/14/2013 | EXTERNAL PHOTOCOPY SERVICES | $227.20 |
| 11/15/2013 | EXTERNAL PHOTOCOPY SERVICES | $180.30 |
| 11/15/2013 | EXTERNAL PHOTOCOPY SERVICES | $147.20 |
| 11/15/2013 | EXTERNAL PHOTOCOPY SERVICES | $13.80 |
| 11/15/2013 | EXTERNAL PHOTOCOPY SERVICES | $205.30 |
| 11/15/2013 | EXTERNAL PHOTOCOPY SERVICES | $41.30 |
| 11/15/2013 | EXTERNAL PHOTOCOPY SERVICES | $125.90 |
| 11/15/2013 | EXTERNAL PHOTOCOPY SERVICES | $125.70 |
| 11/18/2013 | EXTERNAL PHOTOCOPY SERVICES | $15.50 |
| 11/18/2013 | EXTERNAL PHOTOCOPY SERVICES | $379.20 |
| 11/18/2013 | EXTERNAL PHOTOCOPY SERVICES | $237.00 |
| 11/18/2013 | EXTERNAL PHOTOCOPY SERVICES | $12.50 |
| 11/18/2013 | EXTERNAL PHOTOCOPY SERVICES | $12.00 |
| 11/19/2013 | EXTERNAL PHOTOCOPY SERVICES | $169.70 |
| 11/21/2013 | EXTERNAL PHOTOCOPY SERVICES | $44.80 |
| 11/21/2013 | EXTERNAL PHOTOCOPY SERVICES | $58.50 |
| 11/22/2013 | EXTERNAL PHOTOCOPY SERVICES | $0.20 |
| 11/22/2013 | EXTERNAL PHOTOCOPY SERVICES | $30.30 |
| 11/25/2013 | EXTERNAL PHOTOCOPY SERVICES | $4.80 |
| 11/25/2013 | EXTERNAL PHOTOCOPY SERVICES | $10.10 |
| 11/27/2013 | EXTERNAL PHOTOCOPY SERVICES | $29.30 |
| 11/27/2013 | EXTERNAL PHOTOCOPY SERVICES | $12.90 |
| 11/27/2013 | EXTERNAL PHOTOCOPY SERVICES | $59.30 |
| 11/27/2013 | EXTERNAL PHOTOCOPY SERVICES | $40.80 |
| 11/27/2013 | EXTERNAL PHOTOCOPY SERVICES | $58.90 |
| 12/2/2013 | EXTERNAL PHOTOCOPY SERVICES | $126.70 |
| 12/3/2013 | EXTERNAL PHOTOCOPY SERVICES | $40.30 |
| 12/5/2013 | EXTERNAL PHOTOCOPY SERVICES | $148.70 |
| 12/12/2013 | EXTERNAL PHOTOCOPY SERVICES | $218.70 |
| 12/12/2013 | EXTERNAL PHOTOCOPY SERVICES | $8.20 |
| 12/12/2013 | EXTERNAL PHOTOCOPY SERVICES | $27.50 |
| 12/17/2013 | EXTERNAL PHOTOCOPY SERVICES | $61.50 |
| | **TOTAL EXTERNAL PHOTOCOPY SERVICES** | **$18,297.30** |

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 9/2/2013 | INTERCALL AUDIO CONFERENCING | $20.21 |
| 9/3/2013 | INTERCALL AUDIO CONFERENCING | $19.86 |
| 9/3/2013 | INTERCALL AUDIO CONFERENCING | $19.56 |
| 9/13/2013 | INTERCALL AUDIO CONFERENCING | $21.08 |
| 9/18/2013 | INTERCALL AUDIO CONFERENCING | $23.28 |
| 9/20/2013 | INTERCALL AUDIO CONFERENCING | $19.58 |
| 9/20/2013 | INTERCALL AUDIO CONFERENCING | $21.23 |
| 9/23/2013 | INTERCALL AUDIO CONFERENCING | $19.64 |
| 9/29/2013 | INTERCALL AUDIO CONFERENCING | $19.84 |
| 9/30/2013 | INTERCALL AUDIO CONFERENCING | $21.40 |
| 9/30/2013 | INTERCALL AUDIO CONFERENCING | $21.13 |
| 10/7/2013 | INTERCALL AUDIO CONFERENCING | $21.03 |
| 10/8/2013 | INTERCALL AUDIO CONFERENCING | $19.70 |
| 10/12/2013 | INTERCALL AUDIO CONFERENCING | $20.03 |
| 10/13/2013 | INTERCALL AUDIO CONFERENCING | $21.19 |
| 10/16/2013 | INTERCALL AUDIO CONFERENCING | $19.38 |
| 10/16/2013 | INTERCALL AUDIO CONFERENCING | $19.69 |
| 10/17/2013 | INTERCALL AUDIO CONFERENCING | $24.55 |
| 10/18/2013 | INTERCALL AUDIO CONFERENCING | $19.49 |
| 10/20/2013 | INTERCALL AUDIO CONFERENCING | $58.24 |
| 10/22/2013 | INTERCALL AUDIO CONFERENCING | $19.81 |
| 10/24/2013 | INTERCALL AUDIO CONFERENCING | $19.48 |
| 10/25/2013 | INTERCALL AUDIO CONFERENCING | $19.57 |
| 10/26/2013 | INTERCALL AUDIO CONFERENCING | $19.95 |
| 12/5/2013 | INTERCALL AUDIO CONFERENCING | $20.00 |
| | **TOTAL INTERCALL AUDIO CONFERENCING** | **$548.92** |
| 08/12/13 | COURIER SERVICES | $41.43 |
| 08/20/13 | COURIER SERVICES | $8.95 |
| 09/09/13 | COURIER SERVICES | $39.98 |
| 09/09/13 | COURIER SERVICES | $39.98 |
| 09/10/13 | COURIER SERVICES | $18.98 |
| 09/12/13 | COURIER SERVICES | $18.98 |
| 09/12/13 | COURIER SERVICES | $18.98 |
| 09/18/13 | COURIER SERVICES | $35.60 |
| 09/25/13 | COURIER SERVICES | $15.18 |
| 09/27/13 | COURIER SERVICES | $19.50 |
| 09/09/13 | COURIER SERVICES | $28.95 |
| 09/03/13 | COURIER SERVICES | $8.25 |
| 10/03/13 | COURIER SERVICES | $39.98 |
| 10/09/13 | COURIER SERVICES | $13.98 |
| 10/10/13 | COURIER SERVICES | $13.98 |
| 10/11/13 | COURIER SERVICES | $13.98 |
| 10/11/13 | COURIER SERVICES | $47.66 |
| 10/18/13 | COURIER SERVICES | $41.93 |

17387889

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 10/21/13 | COURIER SERVICES | $16.28 |
| 10/21/13 | COURIER SERVICES | $16.28 |
| 10/21/13 | COURIER SERVICES | $16.28 |
| 10/25/13 | COURIER SERVICES | $46.44 |
| 09/25/13 | COURIER SERVICES | $8.20 |
| 09/25/13 | COURIER SERVICES | $8.20 |
| 09/25/13 | COURIER SERVICES | $8.20 |
| 09/25/13 | COURIER SERVICES | $8.20 |
| 10/01/13 | COURIER SERVICES | $8.95 |
| 10/08/13 | COURIER SERVICES | $8.95 |
| 10/16/13 | COURIER SERVICES | $8.95 |
| 10/11/13 | COURIER SERVICES | $28.95 |
| 10/10/13 | COURIER SERVICES | $27.00 |
| 10/14/13 | COURIER SERVICES | $27.00 |
| 10/14/13 | COURIER SERVICES | $27.00 |
| 10/14/13 | COURIER SERVICES | $8.20 |
| 10/14/13 | COURIER SERVICES | $27.00 |
| 10/14/13 | COURIER SERVICES | $35.80 |
| 10/15/13 | COURIER SERVICES | $8.95 |
| 10/15/13 | COURIER SERVICES | $39.98 |
| 10/15/13 | COURIER SERVICES | $39.98 |
| 11/01/13 | COURIER SERVICES | $46.44 |
| 11/08/13 | COURIER SERVICES | $38.93 |
| 11/12/13 | COURIER SERVICES | $27.59 |
| 11/14/13 | COURIER SERVICES | $62.26 |
| 11/15/13 | COURIER SERVICES | $43.79 |
| 11/18/13 | COURIER SERVICES | $22.97 |
| 11/22/13 | COURIER SERVICES | $38.93 |
| 11/26/13 | COURIER SERVICES | $25.25 |
| 11/18/13 | COURIER SERVICES | $28.15 |
| 11/18/13 | COURIER SERVICES | $15.25 |
| 11/05/13 | COURIER SERVICES | $8.95 |
| 11/18/13 | COURIER SERVICES | $8.95 |
| 11/18/13 | COURIER SERVICES | $8.20 |
| 11/18/13 | COURIER SERVICES | $8.20 |
| 11/18/13 | COURIER SERVICES | $8.20 |
| 11/18/13 | COURIER SERVICES | $8.20 |
| 11/19/13 | COURIER SERVICES | $28.95 |
| 11/19/13 | COURIER SERVICES | $18.00 |
| 11/19/13 | COURIER SERVICES | $18.00 |
| 11/19/13 | COURIER SERVICES | $18.00 |
| 11/19/13 | COURIER SERVICES | $18.00 |
| | **TOTAL COURIER SERVICES** | **$1,392.27** |

17387889

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 8/1/2013 | COURTCALL | $51.00 |
| 9/26/2013 | COURTCALL | $37.00 |
| 10/18/2013 | COURTCALL | $142.00 |
| 10/23/2013 | COURTCALL | $212.00 |
| 10/23/2013 | COURTCALL | $142.00 |
| 10/24/2013 | COURTCALL | $72.00 |
| 10/30/2013 | COURTCALL | $142.00 |
| 11/5/2013 | COURTCALL | $37.00 |
| 11/13/2013 | COURTCALL | $65.00 |
| 11/18/2013 | COURTCALL | $177.00 |
| 11/21/2013 | COURTCALL | $44.00 |
| 11/26/2013 | COURTCALL | $226.00 |
| 12/6/2013 | COURTCALL | $30.00 |
| 12/3/2013 | COURTCALL | $233.00 |
| 12/3/2013 | COURTCALL | $212.00 |
| 12/4/2013 | COURTCALL | $86.00 |
| 12/6/2013 | COURTCALL | $30.00 |
| 12/6/2013 | COURTCALL | $233.00 |
| | **TOTAL COURTCALL SERVICES** | **$2,171.00** |
| 11/01/13 | DEPOSITION REPORTING/TRANSCRIPTS | $1,301.82 |
| 12/04/13 | DEPOSITION REPORTING/TRANSCRIPTS | $2,034.80 |
| 12/04 | DEPOSITION REPORTING/TRANSCRIPTS | $1,937.90 |
| | **TOTAL DEPOSITION REPORTING/TRANSCRIPTS** | **$5,274.52** |
| 09/2013 | PACER – ECF | $7.40 |
| 09/2013 | PACER – ECF | $8.50 |
| 09/2013 | PACER – ECF | $3.30 |
| 09/2013 | PACER – ECF | $219.90 |
| 10/2013 | PACER – ECF | $19.50 |
| 10/2013 | PACER – ECF | $6.00 |
| 10/2013 | PACER – ECF | $221.20 |
| 10/2013 | PACER – ECF | $61.20 |
| 11/2013 | PACER – ECF | $150.10 |
| 11/2013 | PACER – ECF | $26.30 |
| 11/2013 | PACER – ECF | $23.10 |
| 11/2013 | PACER – ECF | $39.90 |
| 11/2013 | PACER – ECF | $452.80 |
| | **TOTAL PACER - ECF** | **$1,239.20** |
| 10/03/13 | PROCESS SERVICE | $250.00 |
| 10/03/13 | PROCESS SERVICE | $250.00 |

17387889

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/03/13 | PROCESS SERVICE | $250.00 |
| 10/03/13 | PROCESS SERVICE | $250.00 |
| 10/03/13 | PROCESS SERVICE | $157.00 |
| 10/03/13 | PROCESS SERVICE | $40.95 |
| 10/07/13 | PROCESS SERVICE | $250.00 |
| 10/07/13 | PROCESS SERVICE | $124.00 |
| 10/07/13 | PROCESS SERVICE | $10.20 |
| | **TOTAL PROCESS SERVICE** | **$1,582.15** |

**TOTAL DISBURSEMENTS AND OTHER CHARGES**    **$30,505.36**

17387889

**Exhibit E**

**In re: RESIDENTIAL CAPITAL, LLC,** *et al.*
**CHAPTER 11**
**CASE NO. 12-12020**

**Summary of Fees and Expenses Billed by Subject Matter**
**During the Compensation Period**
**(May 14, 2012 Through and Including December 17, 2013)**

| Matter Number | Matter Description | Total Billed Hours | Total Fees Requested | Total Expenses Requested | Total Compensation |
|---|---|---|---|---|---|
| 100 | Case Administration | 450.00 | $242,312.00 | $12,770.59 | $255,082.59 |
| 200 | General Corporate Matter | 1.80 | 1,413.00 | 0.00 | 1,413.00 |
| 210 | Asset Analysis, Sales and Recoveries | 507.80 | 256,760.00 | 738.00 | 257,498.00 |
| 220 | Cash Collateral, DIP and other Financing | 3.60 | 1,814.00 | 0.00 | 1,814.00 |
| 300 | General Claims and Equity Matter | 3.90 | 1,683.00 | 49.50 | 1,732.50 |
| 320 | Claims Administration and Objections | 912.20 | 500,021.50 | 1,111.31 | 501,132.81 |
| 330 | Contracts/Leases Assumption and Rejection | 3.90 | 2,340.50 | 0.00 | 2,340.50 |
| 340 | JSN Doc Review | 2,165.90 | 864,650.00 | 278.42 | 864,928.42 |
| 350 | Hearings and Court Matters | 101.40 | 67,789.00 | 60.20 | 67,849.20 |
| 400 | General Litigation Matters | 4,106.10 | 2,114,278.00 | 3,656.31 | 2,117,934.31 |
| 410 | Adversary Proceedings and Contested Matters | 6,962.40 | 3,404,774.50 | 18,827.34 | 3,423,601.84 |
| 430 | Automatic Stay/Adequate Protection Matters | 235.10 | 137,189.00 | 64.50 | 137,253.50 |
| 500 | Plan and Disclosure Statements | 4,263.20 | 2,206,941.00 | 14,092.86 | 2,221,033.86 |
| 700 | Curtis Retention/Billing/Fee Applications | 444.90 | 189,549.00 | 2,345.03 | 191,894.03 |
| | **SUBTOTAL** | **20,162.20** | **$9,991,514.50** | **$53,994.06** | **$10,045,508.56** |
| | **LESS MISCELLANEOUS REDUCTIONS** | **N/A** | **$5,000** | **$3.12** | **$5,003.12** |
| | **SUBTOTAL** | **20,162.20** | **$9,986,514.50** | **$53,990.94** | **$10,040,505.44** |
| | **LESS U.S. TRUSTEE & COURT REDUCTIONS**[1] | **N/A** | **$28,743.70** | **N/A** | **$28,743.70** |
| | **TOTAL** | **20,162.20** | **$9,957,770.80** | **$53,990.94** | **$10,011,761.74** |

---

[1] As further detailed in the Application, Curtis previously reduced its fee requests in the aggregate amount of $28,743.70 to resolve objections by the U.S. Trustee to its Prior Interim Fee Applications (as defined herein).

17387889

## Exhibit F

### In re: RESIDENTIAL CAPITAL, LLC, *et al.*
### CHAPTER 11
### CASE NO. 12-12020

### Summary of Hours Billed by Professionals and Paraprofessionals
### During the Compensation Period
### (May 14, 2012 Through and Including December 17, 2013)

| Name | Department and Year Admitted (NY) | Hourly Billing Rate | Total Hours Worked | Total Compensation Requested |
|---|---|---|---|---|
| **PARTNERS** | | | | |
| Jacques Semmelman | Litigation Admitted in 1984 | $860 | 254.70 | $219,042.00 |
| Steven J. Reisman | Restructuring and Insolvency Admitted in 1991 | 830 | 990.70 | 822,281.00 |
| Turner P. Smith | Litigation Admitted in 1981 | 830 | 65.80 | 54,614.00 |
| Valarie A. Hing | Corporate Admitted in 1994 | 800 | 39.20 | 31,360.00 |
| Andrew H. Seiden | Corporate Admitted in 1993 | 800 | 6.20 | 4,960.00 |
| Michael J. Moscato | Litigation Admitted in 1982 | 785 | 710.70 | 557,899.50 |
| Daniel Lenihan | Corporate Admitted in 1982 | 785 | 1.80 | 1,413.00 |
| Jonathan J. Walsh | Litigation Admitted in 1999 | 740 | 392.40 | 290,376.00 |
| Theresa A. Foudy | Litigation Admitted in 1994 | 730 | 1,563.00 | 1,140,990.00 |
| Michael A. Cohen | Restructuring and Insolvency Admitted in 2000 | 730 | 373.40 | 272,582.00 |
| Thomas Laurer | Investment Management Admitted in 2001 | 635 | 26.10 | 16,573.50 |
| | **TOTAL PARTNERS** | | **4,424.00** | **$3,412,091.00** |
| **OF COUNSEL** | | | | |
| Myles K. Bartley | Litigation Admitted in 1999 | $635 | 50.30 | $31,940.50 |
| Raymond T. Hum | Corporate Admitted in 2003 | 635 | 29.60 | 18,796.00 |
| Susan F. Pollack | Corporate Admitted in 1967 | 635 | 5.20 | 3,302.00 |
| Maryann Gallagher | Restructuring and Insolvency Admitted in 1988 | 625 | 1,750.50 | 1,094,062.50 |
| | **TOTAL OF COUNSEL** | | **1,835.60** | **$1,148,101.00** |

17387889

| Name | Department and Year Admitted (NY) | Hourly Billing Rate | Total Hours Worked | Total Compensation Requested |
|---|---|---|---|---|
| **ASSOCIATES** | | | | |
| Dora Straus | Litigation Admitted in 2000 | $600 | 41.20 | $24,720.00 |
| Douglas Glazer | Mergers & Acquisitions Admitted in 2006 | 600 | 79.60 | 47,760.00 |
| Ellen Tobin | Litigation Admitted in 2006 | 600 | 1,264.70 | 758,820.00 |
| Jeffrey C. Berman | Litigation Admitted in 2006 | 600 | 817.40 | 490,440.00 |
| James V. Drew | Restructuring and Insolvency Admitted in 2002 | 590 | 80.10 | 47,259.00 |
| Andrew B. Zinman | Litigation Admitted in 1996 | 590 | 51.70 | 30,503.00 |
| Ryan C. Hansen | Investment Management Admitted in 2004 | 560 | 44.90 | 25,144.00 |
| Heather E. Saydah | Restructuring and Insolvency Admitted in 2010 | 550 | 37.20 | 20,460.00 |
| Danny Phillips | Corporate Admitted in 2006 | 550 | 41.30 | 22,715.00 |
| Susan E. Park | Litigation Admitted in 2000 | 520 | 140.50 | 73,060.00 |
| George E. Spencer | Litigation Admitted in 2008 | 520 | 171.00 | 88,920.00 |
| Daniel A. Bloom | Restructuring and Insolvency Admitted in 2009 | 480 | 1,812.50 | 870,000.00 |
| Maria E. Stookey | Corporate Admitted in 2009 | 480 | 185.30 | 88,944.00 |
| Julia B. Mosse | Litigation Admitted in 2010 | 435 | 379.30 | 164,995.50 |
| Nicole Manzanitis | Litigation Admitted in 2011 | 435 | 86.50 | 37,627.50 |
| Peter J. Buenger | Restructuring and Insolvency Admitted in 2010 | 425 | 605.50 | 257,337.50 |
| J. Derek Mize | Litigation Admitted in 2009 | 425 | 168.90 | 71,782.50 |
| Joseph F. Clyne | Litigation Admitted in 1984 | 425 | 1.50 | 637.50 |
| A. Robert Dawes | Litigation Admitted in 2012 | 350 | 103.40 | 36,190.00 |

17387889

| Name | Department and Year Admitted (NY) | Hourly Billing Rate | Total Hours Worked | Total Compensation Requested |
|---|---|---|---|---|
| Heather Hiznay* | Restructuring and Insolvency Admitted in 2011 | $345 | 174.70 | $60,271.50 |
| Kevin A. Meehan | Litigation Admitted in 2009 | 375 | 119.30 | 44,737.50 |
| James E. Zimmer | Restructuring and Insolvency Admitted in 2011 | 345 | 231.30 | 79,798.50 |
| Martin O. Brown | Corporate Admitted in 2011 | 345 | 69.10 | 23,839.50 |
| Michael P. Jones | Litigation Admitted in 2013 | 305 | 733.20 | 223,626.00 |
| John T. Weber | Restructuring and Insolvency Admitted in 2013 | 305 | 1,027.90 | 313,509.50 |
| Bryan M. Kotliar | Restructuring and Insolvency Admitted in 2013 | 305 | 1,721.60 | 525,088.00 |
| Stephanie R. Morris | Litigation Admission Pending | 305 | 133.20 | 40,626.00 |
| Holly Sawyer | Corporate Admission Pending | 305 | 66.00 | 20,130.00 |
| Pablo Ruiz | Corporate Admission Pending | 305 | 32.40 | 9,882.00 |
| Paisley Kadison | Corporate Admitted in 2013 | 305 | 61.90 | 18,879.50 |
| Alyssa Astiz | Litigation Admitted in 2013 | 305 | 27.80 | 8,479.00 |
| Benjamin Butterfield | Restructuring and Insolvency Admission Pending | 305 | 282.20 | 86,071.00 |
| Jamie Ogilvie | Corporate Not Admitted in New York | 300 | 39.10 | 11,730.00 |
| Ada Añon | Litigation Admitted in 2012 | 300 | 313.60 | 94,080.00 |
| Edward Combs* | Litigation Admitted in 2013 | 290 | 1,402.30 | 406,667.00 |
| Michael Katoski | Corporate Admission Pending | 290 | 101.50 | 29,435.00 |
| Lauren Tauro | Restructuring and Insolvency Not Yet Admitted | 0 | 14.10 | 0.00 |

---

* In the course of preparing this Application, Curtis discovered that due to a minor and inadvertent billing error, five timekeepers' rates were increased by a small amount for the Third and Fourth Interim Fee Periods without the approval of the Debtors. This resulted in incremental fees charged to the Debtors in the amount of $12,914. As a result, Curtis has reduced the amount of fees requested by this Application by $12,914.

3

| Name | Department and Year Admitted (NY) | Hourly Billing Rate | Total Hours Worked | Total Compensation Requested |
|---|---|---|---|---|
| **TOTAL ASSOCIATES** | | | **12,663.70** | **$5,154,165.50** |
| **PARAPROFESSIONALS** | | | | |
| Karl Behrouz | Not Applicable | $285 | 58.30 | $16,615.50 |
| Victoria Atkinson | Not Applicable | 285 | 30.30 | 8,635.50 |
| Neal Goodman | Not Applicable | 260 | 29.40 | 7,644.00 |
| Franklin R. Guenthner | Not Applicable | 235 | 89.40 | 21,009.00 |
| Farai Chidavaenzi | Not Applicable | 235 | 5.50 | 1,292.50 |
| Noah Gardy | Not Applicable | 235 | 37.40 | 8,789.00 |
| Brittany Patane | Not Applicable | 235 | 7.40 | 1,739.00 |
| Sheyla Soriano | Not Applicable | 235 | 48.10 | 11,303.50 |
| Susan Kindya-Culley | Not Applicable | 230 | 66.70 | 15,341.00 |
| Georgia Faust* | Not Applicable | 230 | 145.40 | 33,442.00 |
| Katarina Mantell | Not Applicable | 230 | 11.70 | 2,691.00 |
| Alana Dreiman* | Not Applicable | 230 | 144.60 | 33,258.00 |
| Melissa Rutman* | Not Applicable | 230 | 30.00 | 6,900.00 |
| Rebecca Srulowitz* | Not Applicable | 230 | 32.10 | 7,383.00 |
| Stephanie Morales | Not Applicable | 220 | 7.70 | 1,694.00 |
| Hesel Toyjanova | Not Applicable | 220 | 4.00 | 880.00 |
| Timothy Cramton | Not Applicable | 210 | 3.00 | 630.00 |
| Jorge Alcantar | Not Applicable | 210 | 4.00 | 840.00 |
| Kristine Kim | Not Applicable | 210 | 26.00 | 5,460.00 |
| Simon Hall | Not Applicable | 210 | 1.70 | 357.00 |
| Ashley Baldwin-Hunter | Not Applicable | 210 | 23.30 | 4,893.00 |
| Samuel Ballard | Not Applicable | 200 | 414.30 | 82,860.00 |
| Michael Malavarca | Not Applicable | 200 | 8.00 | 1,600.00 |
| Julia Gumpper | Not Applicable | 190 | 4.00 | 760.00 |
| Kevin Zanin | Not Applicable | 180 | 3.40 | 612.00 |
| Roberto Santamarina | Not Applicable | 165 | 1.70 | 280.50 |
| Bryent Battle | Not Applicable | 165 | 1.50 | 247.50 |
| **TOTAL PARAPROFESSIONALS** | | | **1,238.90** | **$277,157.00** |
| **SUBTOTAL** | | | **20,162.20** | **$9,991,514.50** |
| **LESS MISCELLANEOUS REDUCTION** | | | **N/A** | **$5,000.00** |
| **SUBTOTAL** | | | **20,162.20** | **$9,986,514.50** |
| **LESS U.S. TRUSTEE & COURT REDUCTIONS**[1] | | | **N/A** | **$28,743.70** |
| **TOTAL** | | | **20,162.20** | **$9,957,770.80** |

---

[1]  As further detailed in the Application, Curtis previously reduced its fee requests in the aggregate amount of $28,743.70 to resolve objections by the U.S. Trustee to its Prior Interim Fee Applications (as defined herein).

17387889

| | |
|---|---:|
| Total Billed Hours for Attorneys ................................ | 18,923.30 |
| Total Billed Hours for Paraprofessionals .................... | 1,238.90 |
| Total Billed Hours...................................................... | 20,162.20 |
| Total Fees Requested .................................................. | $9,957,770.80 |
| Blended Rate for Attorneys and Paraprofessionals ..... | $495.31 |
| Blended Rate for Attorneys......................................... | $513.35 |

17387889

**Exhibit G**

**In re: RESIDENTIAL CAPITAL, LLC,** *et al.*
**CHAPTER 11**
**CASE NO. 12-12020**

**Expense Summary for the Compensation Period**
**(May 14, 2012 Through and Including December 17, 2013)**[*]

| Expense Category | Amount |
|---|---|
| Courier Services | $1,754.80 |
| CourtCall | 2,489.00 |
| Deposition Reporting/Transcripts | 5,878.12 |
| External Photocopy Services | 37,854.90 |
| Intercall Audio Conferencing | 1,049.77 |
| Pacer – ECF | 3,255.30 |
| Postage | .90 |
| Process Service | 1,582.15 |
| Transportation (Subway to Court) | 81.00 |
| Secretary of State Business Entity Charges | 45.00 |
| **Total** | **$53,990.94** |

---

[*] All expenses have been billed in accordance with the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases.

17387889