

**CERTIFIED COPY**

http://www.nationalrepublicregistry.com/
public/CA.2009.11.20.000003.pdf

**From:**

Jacqueline A. Warner
10 Emerald Lake Place
Redwood City, CA 94062

Date: November 16, 2009

11 PAGE(S)

**To/Respondents:**

GMAC MORTAGE LLC
3451 Hammond Avenue
Waterloo, IA 50702
Account Number: 8601931887

MERS
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS INC.
3300 S.W. 34th Avenue, Ste 101, Ocala, FL 34474
MIN: 1000724-0000006013-0

CMG MORTGAGE INC.
3160 Crow Canyon Road, #400
San Ramon, CA 94583
Loan #: 20540326

First American Title Insurance Company
1855 Gateway Blvd., Suite 700
Concord, CA 94520
Escrow No: 3475075c
Recorded Date: November 16, 2009

**Re:** Parcel Tax No. 057-143-280; Original Deed of Trust No: 20540326, Dated 11/09/2007; Original Security Instrument No. 2007-163264; Recorded Date: November 16, 2007; Commonly Known Address: 10 Emerald Lake Place, Redwood City, CA 94062;

## Notice of Right to Cancel

*Notice to Agent is Notice to Principal/Notice to Principal is Notice to Agent*

**Parties:** Jacqueline A. Warner (Alleged Borrower, hereinafter **Borrower**) – and, GMAC Mortgage LLC; CMG Mortgage, Inc.; MERS (Mortgage Electronic Registration Systems, Inc.); First American Title Insurance Company (Alleged Lender(s) – hereinafter **Lender**)

**Attention:** All above named Respondents

This communication will serve as my *Notice of Right to Cancel* dated November 16, 2009. TILA (Truth in Lending Act, 15 USC §1601 et seq; 12 CFR Part 226) allows three (3) years to review Disclosure Documents. The referenced 'Three Day Right to Cancel' must have a trigger to begin. That trigger is when the Lender has provided the Borrower with ALL of the required Disclosures under TILA, and that the same are true, complete, accurate, and timely provided.

Being as the entire purported loan/mortgage process and Deed of Trust/Security Instrument referenced herein and throughout, was obtained by wrongful acts of fraud, fraudulent inducement, concealment, and fraudulent misrepresentation, the borrower has other recourse, right, and cause of action under numerous state and federal statutes. Acts of fraud taint/void everything it touches as the US Supreme Court has declared: *"There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents, and even judgments."* (United States v. Throckmorton, 98 U.S. 61) In further support of the aforementioned wrongful acts, you will please find the attached 'Affidavit of Jacqueline A. Warner', referenced herein and throughout as Attachment/Exhibit – B and, the attached Addendum - C, all of which are made a part hereto, and incorporated herein in their entirety, the same of which contain important matters of record that have thus far remained unanswered, unrebutted, and uncontroverted by all Respondents listed above.

To this date, Lender has never provided Borrower with true, complete, accurate or timely documents as required. ONLY AFTER such provision has been done, can the '3 DAY RIGHT TO CANCEL' period begin. If the required full Disclosure(s) have not been provided, then the period in which to Cancel is extended for up to three (3) years, OR until Lender moves to foreclose. The records thus far evidence, that **Borrower** has requested to cancel within the stipulated three year time period, while still waiting to receive all Truth-in-Lending disclosures as required by Federal Law, the same of which have never been received.

A close perusal and audit of Borrower's mortgage/loan documents has revealed certain Disclosure Violations; and, that the Borrower has the remedial right and remedy (UCC 1-201 (32) (34)), inter alia, to invoke their Right of Rescission (ROR) as further evidenced by the original NOTICE OF RIGHT TO CANCEL. You will also please find Borrower's signed and dated NOTICE to the Lender(s), Successor(s) and Beneficiary as stated on the NOTICE OF RIGHT TO CANCEL, if provided in the loan package. If such Notice was not provided, **this written Notice of communication is provided in lieu thereof**.

After sufficient NOTICE has been given to Lender, the Lender is required by Federal Law to CANCEL any lien(s) and to CANCEL any security interest on the Borrower's property within twenty (20) days. The Lender must also return any money, interest, fee, and/or property to Borrower, as well as any money/funds given to any persons or other fiction in law/entity in connection with said transaction.

In accordance with both State and Federal law or until the Lender complies, Borrower may retain the proceeds of the transaction. If it should be 'impractical' or 'unfair' for the Borrower to return the property when gross discrepancies, fraud, or other wrongful acts are discovered - then he/she/they may offer its 'Reasonable Value'.

In the event the Lender should fail or refuse to take possession of the property or return the borrower's money offer within twenty (20) days . . . **Borrower** may then regain/acquire all rights to clear title and re-conveyance under Federal Law and provisions of TILA.

**Additionally,** Borrower has the right to offer Lender a Reasonable Value. **However,** the penalty that a bank can face for violations of TILA and other State and Federal law can be as much as triple damages . . . i.e., triple the amount of the interest the bank stood to fraudulently make off of the deed of trust/loan transaction. Therefore, the borrower does hereby in good faith make the following offer: Borrower will forgive GMAC Mortgage LLC, CMG Mortgage Inc, MERS, (Mortgage Electronic Registration Systems Inc., and First American Title Insurance Company, any liability incurred by its wrongful actions, provided GMAC Mortgage LLC, CMG Mortgage Inc., First American Title Insurance Company, and MERS, Mortgage Electronic Registration Systems Inc. rightfully forgives Borrower the full amount of deed of trust/credit GMAC Mortgage LLC., CMG Mortgage Inc. et al., fraudulently alleges to have given. In addition, Borrower makes the one time demand of $2,967,247.00 from GMAC Mortgage LLC, and CMG

Mortgage, Inc., for any loss, damage, and injury Borrower has sustained; and, that CMG Mortgage Inc., GMAC Mortgage LLC, MERS, First American Title Insurance Company et al., also immediately remove all/any negative comments on Borrower's credit report attributed to this transaction.

Any default, failures, or non-compliance on the Lender's part to perform as herein directed within twenty (20) days of receipt shall constitute this Notice of Right to Cancel as valid and fully agreed/accepted pursuant to the terms and conditions as set forth herein.

Sincerely,

*Jacqueline A. Warner*
Jacqueline A. Warner

## ACKNOWLEDGEMENT

State of California )
)
County of San Mateo )

**Subscribed and sworn to** (or affirmed) before me on this 16 day of November, 2009,

by Jacqueline A. Warner, proved to me on the basis of

satisfactory evidence to be the person who appeared before me.

Signature Eric Hashemian (Seal)
(Notary Public)

OFFICIAL SEAL
ERIC HASHEMIAN
NOTARY PUBLIC - CALIFORNIA
Commission #1857303
County of San Mateo
My Commission expires July 10, 2013

Notice of Right to Cancel                                                                 Page 3 of 3

Order No: 3475075c
Reference No.:
Escrow Officer: Ada Ayon
Escrow Number: 3475075c

APN No: 057-143-280-6 JPN: 057-014-143-20.04.00A

## DESCRIPTION

All that certain land situated in the unincorporated area of the **County of SAN MATEO, State of California**, and described as follows:

PARCEL A:

PARCEL 2, AS SHOWN ON THAT CERTAIN MAP ENTITLED, "PARCEL MAP A RESUBDIVISION OF THE LANDS OF TURTURICI AND MCKEEGAN AS SAID LANDS ARE DESCRIBED IN DOCUMENT NO. 88043032, OFFICIAL RECORDS OF SAN MATEO COUNTY, SAN MATEO COUNTY, CALIFORNIA", FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON FEBRUARY 28, 1990 IN BOOK 63 OF PARCEL MAPS AT PAGES 69 AND 70.

PARCEL B:

A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS AND STORM DRAINAGE PURPOSES WITHIN A PORTION OF PARCEL 3 AS SHOWN ON THAT CERTAIN MAP ENTITLED "PARCEL MAP OF A RESUBDIVISION OF THE LANDS OF TURTURICI AND MCKEEGAN AS SAID LANDS ARE DESCRIBED IN DOCUMENT NO. 88043032, OFFICIAL RECORDS OF SAN MATEO COUNTY, SAN MATEO COUNTY, CALIFORNIA" FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN MATEO COUNTY, STATE OF CALIFORNIA OF FEBRUARY 28, 1990 IN VOLUME 63 OF PARCEL MAPS AT PAGES 69 AND 70, SAID PORTION BEING DESIGNATED AS "PROPOSED P.S.D.E. INGRESS/EGRESS, ESMT. FOR BENEFIT OF PARCELS 1 AND 2 AND P.U.E." ON SAID MAP.

SAID EASEMENT IS TO BE APPURTENANT TO AND FOR THE BENEFIT OF PARCEL "A" ABOVE.

PARCEL C:

A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OVER A STRIP OF LAND 7.50 FEET WIDE LYING EASTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT THE NORTHWESTERLY CORNER OF THE LANDS CONVEYED TO RUSSEL L. WOLDEN AND WIFE BY DEED RECORDED JUNE 25, 1954 IN BOOK 2605 OF OFFICIAL RECORDS AT PAGE 723 (FILE NO. 66351-L) RECORDS OF SAN MATEO COUNTY, CALIFORNIA; AND THENCE NORTH 4° 20' WEST 158.30 FEET TO THE SOUTHERLY LINE OF SUMMIT DRIVE.

SAID EASEMENT IS APPURTENANT TO AND FOR THE BENEFIT OF PARCEL A ABOVE AND WAS CREATED BY GRANT OF RIGHT OF WAY FROM ARTHUR CINTI, ET UX, TO NEVADA V. WALDEN, RECORDED JUNE 27, 1932 IN BOOK 553 OF OFFICIAL RECORDS AT PAGE 499 (FILE NO. 9678-C) RECORDS OF SAN MATEO COUNTY, CALIFORNIA AND BY DEED FROM ARTHUR CINTI AND MARINA CINTI, TO JOHN M. UNDERHILL AND ELSIE W. UNDERHILL, RECORDED AUGUST 12, 1940 IN BOOK 905 OF OFFICIAL RECORDS AT PAGE 251 (FILE NO. 95911-D) RECORDS OF SAN MATEO COUNTY, CALIFORNIA AND BY DEED FROM ARTHUR CINTI AND MARINA CINTI, TO DOMINIC JACKMAN AND GIOVANNA JACKMAN, RECORDED NOVEMBER 28, 1945 IN BOOK 1219 OF OFFICIAL RECORDS AT PAGE 298 (FILE NO. 75500-F), RECORDS OF SAN MATEO COUNTY, CALIFORNIA.

# Addendum – "C"

## ADDENDUM TO - RIGHT TO CANCEL
RE: UNCONTROVERTED MATTERS OF RECORD, Et Seq.
Original Loan /Security Instrument No: 20540326
Dated: November 9, 2007; Ref Parcel Tax No. 057-143-280
Commonly Known Address: 10 Emerald Lake Place, Redwood City, CA 94062
Deed of Trust Record No. 2007-163264 AR - Record Date: November 16, 2007

1.) That, at no time prior to the signing of any '*loan*' documents and to this date, did LENDERS, CMG MORTGAGE INC, GMAC MORTGAGE LLC, MERS (MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.) and FIRST AMERICAN TITLE INSURANCE COMPANY, (hereinafter "LENDERS") nor any of its officers/employees fully and completely describe and categorize all of the underlying particulars, details, and principles of law regarding LENDER'S entire purported '*loan*' process, including **just exactly** where the '*money*' was coming from to fund the note/mortgage, how it was obtained/created, and by whom.

2.) That, at no time prior to the signing of any '*loan*' documents and to this date, did LENDERS and its officers/employees ever disclose to Jacqueline A. Warner the fact that the funding of the note/deed of trust was being created/obtained by and through Jacqueline A. Warner's signature on Jacqueline A. Warner's note, the same of which LENDERS later arbitrarily and deceitfully claimed as its own, and then either sold, bargained, traded, or collateralized the same for its own benefit and use. Jacqueline A. Warner has good cause to believe that the foregoing wrongful acts evidence LENDERS never put up, nor used, any money of its own to fund the note/deed of trust instrument as it promised; Nor, have LENDERS and its officers/employees ever denied or rebutted any of the determinations set forth above.

3.) That, by and through Jacqueline A. Warner's signing of notes, mortgages, deed of trusts, and/or security instruments, LENDERS led Jacqueline A. Warner to believe that a binding, lawful contract/agreement was created between LENDERS (to include its agents, assigns, and beneficiaries) and Jacqueline A. Warner.

4.) That prior to, and at the time of signing all LENDER'S required financial instruments as instructed, Jacqueline A. Warner was very unlearned and unsophisticated in such banking and financial matters, including lacking any knowledge of all the various underlying details, particulars, and legal consequences pertaining to the same. To the contrary, Jacqueline A. Warner relied wholly upon LENDERS having

Addendum – "C"                                                                                                          Page 1 of 4

'clean hands', operating in 'good faith', and providing Jacqueline A. Warner with full, complete, and truthful disclosure of the entire financial transaction(s).

5.) That, following the aforesaid financial transactions concerning LENDERS, Jacqueline A. Warner did further study and research the above particulars regarding LENDER'S *loan* process, and can reasonably conclude that LENDERS did not in fact operate with clean hands or in good faith, nor did LENDERS provide full, complete, and truthful disclosure of its underlying, undisclosed, secret intents. To the contrary, a close perusal and audit of LENDER'S internal accounting records provide sufficient evidence to support the following conclusions:

    a.) That LENDERS used acts of, but not limited to, fraudulent inducement, fraudulent misrepresentation, and fraudulent intent in its advertising and claim to have loaned its *money* to Jacqueline A. Warner;

    b.) That LENDERS did not fulfill its original promise/agreement to lend Jacqueline A. Warner its own money; LENDERS did not sacrifice/contribute anything of intrinsic value or incur any risk/loss in the formation or outcome of the transactions; and, LENDERS therefore did not sacrifice nor contribute any valuable, lawful consideration; and thereby could not and did not suffer any loss, damage, or injury.

    c.) That LENDERS arbitrarily and discretely stole Jacqueline A. Warner's note/deed, claimed it as its own, and converted the same to a negotiable instrument for LENDER'S sole benefit, use, and gain;

    d.) That LENDERS further compounded its predatory, wrongful, and fraudulent actions by inducing Jacqueline A. Warner to sign a DEED OF TRUST/SECURITY INSTRUMENT of which LENDERS had created, thereby granting additional third parties undeserving control, benefit, and interest in Jacqueline A. Warner's personal property (i.e. her house/real property) all under the guise of '*necessity*';

    e.) That the notes/mortgage/Deed of Trust/Security Instrument created by LENDERS, its agents, and assigns and signed only by Jacqueline A. Warner does not constitute a lawful binding contract/agreement due to LENDER'S acts of misfeasance, malfeasance, and nonfeasance as more particularly outlined above; and, that any such purported 'contract/agreement' would be unconscionable and is void.

    f.) As confirmed above and throughout, Jacqueline A. Warner was never provided full, complete, and truthful disclosure regarding all financial instruments Jacqueline A. Warner was compelled to sign, nor were they fully or otherwise apprised of the *true nature* and exact particulars of LENDER'S entire *loan* process. Without being fully and truthfully informed as to all the details of the purported '*loan*' and the underlying disingenuous '*intentions*' of the

lender, there could not be, and was not, a 'meeting of the minds'. The law of contracts and the courts addresses this issue repeatedly, as per this example: "*The 'meeting of the minds' required to make a contract is not based on **secret purpose or intention** on the part of one of the parties, stored away in his mind and **not brought to the attention of the other party**, but must be based on purpose and intention which **has been made known** or which from all the circumstances should be known*". McClintock v Skelly Oil Co., 232 MoApp. 1204, 114 S.W. 2nd 181, 189. (emphasis added)

g.) That, LENDERS also did compel Jacqueline A. Warner into procuring Property Insurance on Jacqueline A. Warner's property making LENDERS (or any of its assigns) the beneficiary of the same, while LENDERS knew full well that it had not put up any valuable nor lawful consideration into Jacqueline A. Warner's note, could not possibly incur any loss, was undeserving of any such insurance benefit. As with the theft of Jacqueline A. Warner's note, courts of law throughout the United States consider any such wrongful and deceitful actions as fraudulent inducement, fraudulent misrepresentation, and unjust enrichment, to name a few.

h.) Jacqueline A. Warner did spend additional time researching several particulars regarding LENDER'S entire *loan* process as outlined above, and became further perplexed. If LENDERS had indeed given full, complete, and truthful disclosure regarding all elements of its loan process as set forth above and throughout; and, did in fact provide valuable, bona fide consideration; and, did in fact believe LENDERS did create a lawful, binding contract with Jacqueline A. Warner/borrower - then why didn't LENDER'S officers/representatives sign their name on the contract/note? The same applies to the Deed of Trust or Mortgage. If LENDERS knew it was not involved in any manner of fraudulent inducement, misrepresentation, concealment, or unjust enrichment, and did in fact have a bona fide legal contract with the borrower/Jacqueline A. Warner, sufficient to prevail in a foreclosure action if need be; then, why did LENDERS feel it necessary to have a deed of trust created – wherein the LENDERS did cause complete control of the purported '*loan*/note' to be turned over to an undeserving third party, and again never put their signature to the instrument? In consideration of all the above statements and findings, it is only reasonable to conclude that LENDERS knew full well that it had defrauded Jacqueline A. Warner/borrower from the outset as to the true nature and undisclosed rudiments of the entire *loan* process, and was not receptive to further implicating and/or incriminating itself by signing its name to documents that LENDERS knew were founded upon fraud, lies, unfulfilled promises, secret intentions, inducement, entrapment, and unjust enrichment.

6.) To this date, LENDERS nor any of its agents, assigns, or beneficiaries, have provided any **bona fide**, tangible evidence that ANY of them are in FACT the **bona fide** holder in due course (nor even a holder of value) and **bona fide** owner of the promissory note in question, all of which would be absolutely necessary in order to initiate ANY form of collection action or foreclosure proceeding. **Again**, it is an **incontrovertible fact** that the original promissory note in question is, and always was, the property of Jacqueline A. Warner, and the same **did not** knowingly or otherwise assign, transfer, or give it away for another's personal benefit and gain – all to the loss and detriment of Jacqueline A. Warner. Any reasonable person would conclude such an action as being ludicrous and unconscionable. Furthermore, it is against the law for one to fraudulently obtain or steal another's property, claim it as their own, and then further bargain, assign, or sale the same to obtain an unjust enrichment, benefit, and gain for themselves – all at a loss and detriment to the lawful, bona fide owner.

**IN CONCLUSION**, GMAC MORTGAGE LLC, CMG MORTGAGE INC., FIRST AMERICAN TITLE INSURANCE COMPANY and MERS/LENDERS nor any of its officers, agents, assigns, or beneficiaries have provided any evidence in contradiction to the matters set forth above and throughout. **Accordingly**, the record shall establish that all aforesaid facts, statements, determinations and related Attachment/Exhibit-B sworn Affidavit of borrower (which are incorporated herein in their entirety) are entirely true, accurate, and correct and remain unanswered, unrebutted, and uncontroverted.

*[signature]*
Jacqueline A. Warner

**Attachment/Exhibit - B**

# AFFIDAVIT

of Jacqueline A. Warner

Re: Promissory Note on
Security Instrument No: 20540326 Dated: November 9, 2007
Deed of Trust No. 2007-163264 ; Recorded November 16, 2007

"Indeed, No more than [such affidavits are] necessary to make the prima facie case." United States v. Kis, 658 F.2nd, 526, 536 (7th Cir. 1981); Cert Denied, 50 U.S. L.W. 2169; S. Ct. March 22, 1982

Comes now Jacqueline A. Warner, (hereinafter "affiant") a sentient, living woman, being first duly sworn/affirmed – and does depose, say, declare, and affirm by affiant's signature that I am over the age of 18 years and have first hand personal knowledge of the following statements and affirm the same are true and correct to the best of affiant's knowledge and belief, to wit:

1.) That, affiant was induced to believe by certain officers/employees of CMG MORTGAE, INC., GMAC MORTGAGE LLC, FIRST AMERICAN TITLE INSURANCE COMPANY, MERS, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. (hereinafter; bank/bank's/lender) and further by the bank's advertising, that said bank had money of its own to loan to affiant and others.

2.) That, affiant took the bank up on its offer to loan affiant its money, and affiant did sign a promissory note/deed of trust/security instrument dated November 9, 2007.

3.) That, the bank did also induce affiant to sign a "security agreement/instrument" dated November 9, 2007, granting the bank a secured interest and lien in/on certain personal property of affiant currently held/owned or otherwise acquired. The bank caused affiant to believe this "security agreement/instrument" was necessary for the bank to protect and insure its valuable and lawful 'consideration', i.e., the loaning of its money to affiant as advertised and promised.

4.) That, the bank did further induce affiant into signing a Deed of Trust the bank and/or its cohorts created, dated November 9, 2007, wherein the bank did cause other undeserving third parties to obtain a lien against, a security interest in, and complete control over the affiant's personal property. Again, the bank led affiant to believe this Deed of Trust/assignment was necessary to further secure the bank's valuable, lawful, consideration against any potential 'risk or loss' regarding loaning the affiant its money.

**Attachment/Exhibit - B**

5.) That prior to the affiant signing any of the bank's required financial documents, and forever thereafter, none of the bank's officers/employees have ever fully described and categorized all of the underlying, undisclosed particulars, details, and principles of law regarding the bank's entire purported '*loan*' process, including, but not limited to, just exactly where the '*money*' was coming from to fund the note/mortgage, how it was obtained/created, and by whom.

6.) That, by and through the affiant's signing of all the aforesaid financial instruments, the bank caused affiant to believe that a binding, lawful contract was created between the bank, its agents, assigns, and affiant.

7.) That prior to, and at the time of affiant signing all the bank's required financial instruments as instructed, affiant was very unlearned and unsophisticated in such banking and financial matters, including a total lack of knowledge of all the various underlying, undisclosed details, particulars - and legal consequences pertaining to the same. To the contrary, the unsophisticated affiant relied wholly and entirely upon the bank having 'clean hands', operating in 'good faith', and providing affiant with full, complete, and truthful disclosure of the entire financial transaction(s).

8.) That, regardless of any funds secretly or covertly obtained by the bank (via affiant's note/mortgage) while said bank acts as a for-profit business with and through the US Treasury for the purpose to access and thereby expand the credit of this affiant's individual treasury account while at all times failing to disclose the use of this affiant's negotiable paper (i.e. affiant's note/deed) while trading as a for-profit entity on the bond and securities market through any of its interagency cohorts/institutions such as Fannie Mae, Freddie Mac, or otherwise; while also apparently failing to file IRS Form 1099OID (Original Issue Discount) on each of the herein referenced transactions and thereby send a copy of said form to affiant for his tax records. It has been established that this affiant as well as other Americans have, out of necessity and the related remedy attaching thereto having its origin out of HJR-192, are in fact the only substantive "source" and consumer to sponsor virtually ALL credit that issues for commercial purposes. Said credit being necessary for the Treasury to have access to a valid source of credit to monetize and thereby disburse to the federal reserve banks for various and sundry federal projects while accounting for all such credit/funding entered into circulation through the aforesaid federal reserve banks. The nature of such funding has been verified by the U.S. Department of Treasury as emanating by and through the UCC Contract Trust Account of the named trust/entity JACQUELINE A. WARNER bearing UCC CONTRACT TRUST ACCOUNT No. 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 (known as Social Security No.) and Treasury noted

# Attachment/Exhibit - B

Exemption from Levy No. 080406562 (known as exemption No.), to include such other similar individual trusts as may exist.

IN CONCLUSION - Due to other research, further understanding, and for all of the reasons set forth above and throughout this affidavit (to include the document entitled "Addendum-C") all of which the affiant incorporates herein in its entirety – has caused affiant to believe ALL notes/mortgage/Deed of Trusts or other instruments entered into by the affiant between the bank/lender and any/all of its agents, assigns, and beneficiaries have no legal force or binding affect, and the same are in fact - **Null** and **Void**.

Further affiant sayeth naught,

_____    Date: Nov. 16, 2009
Affiant's signature
Jacqueline A. Warner

## Acknowledgement

State of California
County of San Mateo

**Subscribed and sworn to** (or affirmed) before me on this _16_ day of _November_, 20_09_, by _Jacqueline A. Warner_, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _Eric Hashemian_ (Seal)



OFFICIAL SEAL
ERIC HASHEMIAN
NOTARY PUBLIC - CALIFORNIA
Commission #1857303
County of San Mateo
My Commission expires July 10, 2013

Affidavit of Jacqueline A. Warner                                    Page 3 of 3