# EXHIBIT 1

UNITED STATES OF AMERICA
BEFORE THE
BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
WASHINGTON, D.C.

In the Matter of

ALLY FINANCIAL INC.
Detroit, Michigan

RESIDENTIAL CAPITAL, LLC
Minneapolis, Minnesota

and

GMAC MORTGAGE, LLC
Fort Washington, Pennsylvania

Docket No.   12-006-CMP-HC
12-006-CMP-DEO

Order of Assessment of a Civil
Money Penalty Issued Upon Consent
Pursuant to the Federal Deposit
Insurance Act, as Amended

WHEREAS, Ally Financial Inc., Detroit, Michigan ("Ally Financial"), a registered bank holding company, indirectly owns and controls Ally Bank (f/k/a GMAC Bank), Midvale, Utah, a state nonmember bank, and numerous direct and indirect nonbank subsidiaries, including Residential Capital, LLC, Minneapolis, Minnesota ("ResCap"), and its direct and indirect subsidiaries, including GMAC Mortgage, LLC, Fort Washington, Pennsylvania ("GMAC Mortgage"), and its subsidiaries.  Ally Financial, f/k/a GMAC LLC, became a bank holding company on December 24, 2008, following approval by the Board of Governors of the Federal Reserve System (the "Board of Governors") pursuant to section 3(a)(1) of the Bank Holding Company Act (12 U.S.C. § 1842(a)(1)), and conversion of Ally Bank from an industrial loan company to a state-chartered insured nonmember bank;

WHEREAS, Ally Financial engages in the business of servicing residential mortgage loans through various indirect subsidiaries, including GMAC Mortgage and its subsidiaries (collectively, the "Mortgage Servicing Companies"). The Mortgage Servicing Companies service residential mortgage loans that are held in the portfolios of (a) Ally Bank and GMAC Mortgage; (b) the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, and the Government National Mortgage Association; and (c) various investors, including securitization trusts pursuant to Pooling and Servicing Agreements and similar agreements (collectively, the "Servicing Portfolio"). The Mortgage Servicing Companies have substantial responsibilities with respect to the Servicing Portfolio for the initiation and handling of foreclosure proceedings, and loss mitigation activities ("Loss Mitigation" or "Loss Mitigation Activities" include activities related to special forbearances, repayment plans, modifications, short refinances, short sales, cash-for-keys, and deeds-in-lieu of foreclosure);

WHEREAS, the Mortgage Servicing Companies collectively are the fifth largest servicer of residential mortgages in the United States and service a portfolio of 2.5 million residential mortgage loans. During the recent financial crisis, a substantially larger number of residential mortgage loans became past due than in earlier years. Many of the past due mortgages have resulted in foreclosure actions. From January 1, 2009 to December 31, 2010, the Mortgage Servicing Companies completed 89,998 foreclosure actions, representing approximately 4 percent of the Servicing Portfolio over such time period;

WHEREAS, the Mortgage Servicing Companies, in connection with the process leading to certain foreclosures involving the Servicing Portfolio, allegedly:

(a)    Filed or caused to be filed in state courts and in connection with bankruptcy proceedings in federal courts numerous affidavits executed by employees of the

2

Mortgage Servicing Companies or employees of third-party providers making various assertions, such as the ownership of the mortgage note and mortgage, the amount of principal and interest due, and the fees and expenses chargeable to the borrower, in which the affiant represented that the assertions in the affidavit were made based on personal knowledge or based on a review by the affiant of the relevant books and records, when, in many cases, they were not based on such knowledge or review;

(b)    Filed or caused to be filed in courts in various states and in connection with bankruptcy proceedings in federal courts or in the local land record offices, numerous affidavits and other mortgage-related documents that were not properly notarized, including those not signed or affirmed in the presence of a notary;

(c)    Litigated foreclosure and bankruptcy proceedings and initiated non-judicial foreclosures without always confirming that documentation of ownership was in order at the appropriate time, including confirming that the promissory note and mortgage document were properly endorsed or assigned and, if necessary, in the possession of the appropriate party;

(d)    Failed to respond in a sufficient and timely manner to the increased level of foreclosures by increasing financial, staffing, and managerial resources to ensure that the Mortgage Servicing Companies adequately handled the foreclosure process; and failed to respond in a sufficient and timely manner to the increased level of Loss Mitigation Activities to ensure timely, effective and efficient communication with borrowers with respect to Loss Mitigation Activities and foreclosure activities; and

(e)    Failed to have adequate internal controls, policies and procedures, compliance risk management, internal audit, training, and oversight of the foreclosure process,

3

By Order of the Board of Governors effective this 10th day of February, 2012.

ALLY FINANCIAL INC.

By: /s/ Michael A. Carpenter
      Michael A. Carpenter
      Chief Executive Officer

RESIDENTIAL CAPITAL, LLC

By: /s/ Thomas F. Marano
      Thomas F. Marano
      Chairman & Chief Executive Officer

GMAC MORTGAGE, LLC

By: /s/ Steven M. Abreu
      Steven M. Abreu
      President

BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM

By: /s/ Jennifer J. Johnson
      Jennifer J. Johnson
      Secretary of the Board

# EXHIBIT 1 A

(Page 1 of 1)

**2012-118992**

8:20 am 08/22/12 AT Fee: 15.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

\* R 0 0 0 1 4 7 3 5 3 0 \*

Requested and Prepared by:
~~EXECUTIVE TRUSTEE SERVICES, INC~~

When Recorded Mail To:
Financial Dimensions, Inc.
1400 Lebanon Church Road
Pittsburgh, PA 15236      737650

Loan No.: 8601931887      77914501
TS NO: GM-278852-C
MIN #: 100072400000060130
MERS Phone: 1-888-679-6377
P. O. BOX 2026 FLINT MI, 48501-2026

## ASSIGNMENT OF DEED OF TRUST

**For Value Received,** the undersigned corporation hereby grants, assigns, and transfers to:

**Ally Bank**

all beneficial interest under that certain Deed of Trust dated: 11/09/2007 executed by *JACQUELINE A. WARNER*, AN UNMARRIED WOMAN, as Trustor(s), to FIRST AMERICAN TITLE, as Trustee, and recorded as Instrument No. 2007-163264, on 11/16/2007, in Book XX, Page XX of Official Records, in the office of the County Recorder of San Mateo County, CA together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

DATE: 8-8-12

*U02907870*
10301  8/16/2012  77914501/1

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE FOR CMG MORTGAGE, INC., its successors and assigns

_Katrina Jordan_  Assistant Secretary

State of **Pennsylvania**   } ss.
County of **Montgomery**    }

On **8/8/12** before me,
**Katrina Jordan**
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**Christine Morales**  Notary Public, personally appeared who proved to me on the basis of satisfactory evidence to be the

I certify under penalty of perjury under the laws of the State of **Pennsylvania** that the foregoing paragraph is true and correct.

**WITNESS** my hand and official seal.

Signature _Christine Morales_     (Seal)
Christine Morales

SEP 07 2012

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE MORALES, Notary Public
Abington Twp., Montgomery County
My Commission Expires January 28, 2015

When embossed, this is certified to be a true copy of the records of the San Mateo Assessor-County Clerk-Recorder.

Mark Church, Assessor-County Clerk-Recorder

By

# EXHIBIT 1 B

RECORDING REQUESTED BY:
FIRST AMERICAN Title

WHEN RECORDED MAIL TO:
Executive Trustee Services, LLC
dba ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
APN: 057-143-280-6

CERTIFIED BY FIRST AMERICAN TITLE
INSURANCE COMPANY TO BE A COPY
OF THE DOCUMENT RECORDED ON 09/11/2012
AS INSTRUMENT NO. 2012-130239
IN BOOK            PAGE
OFFICIAL RECORDS OF SAN MATEO

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No. : GM-278852-C        Loan No.: 8601931887

## IMPORTANT NOTICE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until *approximately 90 days* from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $32,708.91 as of **Sep 10, 2012**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after the notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Ally Bank .
C/O Executive Trustee Services, LLC dba ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932 phone



2266077696

TS NO.: GM-278852-C          LOAN NO.: 8601931887

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.    Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN:  That Executive Trustee Services, LLC dba ETS Services, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 11/09/2007, executed by "JACQUELINE A. WARNER", AN UNMARRIED WOMAN, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE FOR CMG MORTGAGE, INC., its successors and assigns, as beneficiary, recorded 11/16/2007, as Instrument No. 2007-163264, in Book XX, Page XX,  of Official Records in the Office of the Recorder of San Mateo County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

Said obligation including ONE NOTE FOR THE ORIGINAL sum of $1,000,000.00; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on 11/25/2009 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

The undersigned declares that the beneficiary or its authorized agent has declared that they have complied with California Civil code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated:  Sep 10, 2012

ETS Services, LLC as Agent for Beneficiary

BY: _____

Carlo Magno
TRUSTEE SALE OFFICER

# EXHIBIT 2



**ORANGE COAST TITLE COMPANY**
of Northern California
520 N. Santa Cruz Avenue, Suite 200
Los Gatos, CA 95030
Phone: 408 827-4950    Fax: 408 402-3649

## SELLER(S) FINAL CLOSING STATEMENT

DATE: 12/11/2012
TIME: 12:36 PM
CLOSING DATE: 11/19/2012

ESCROW NO: 1383480 - BK
ESCROW OFFICER: Brandy Kelly

SELLER(S): Jacqueline A. Warner, Trustee
PROPERTY ADDRESS: 10  Emerald Lake Place Redwood City, CA 94062

|  | DEBITS | CREDITS |
|---|---|---|
|  |  | $ 1,735,000.00 |
| **TOTAL CONSIDERATION** |  |  |
| **Prorations** | $ 5,106.47 |  |
| County Taxes @ S6,660.62 for 6  Months  From 7/1/2012 To 11/19/2012 |  | $ 2,060.00 |
| **Adjustments to Charges** | $ 6,000.00 |  |
| Buyer- seller credit for expenses fr. 10/15-11/19 |  |  |
| Seller Credit for closing costs |  |  |
| **Commissions** | $ 43,375.00 | $ 8,675.00 |
| Tavena Financial Group, Inc | $ 43,375.00 |  |
| Credit Seller for .5 % commission credit back |  |  |
| Intero Real Estate |  |  |
| **Title Charges - Orange Coast Title Company** | $ 1,908.50 |  |
| [Total Title Charges: $1,908.50] |  |  |
| County Transfer Tax |  |  |
| **Escrow Charges and Other Settlement Charges** | $ 150.00 |  |
| [Total Escrow Charges and Other Settlement Charges: $270.00] | $ 40.00 |  |
| Doc Prep Fee | $ 40.00 |  |
| Wire Fee | $ 40.00 |  |
| Messenger Fee |  |  |
| Signing/Notary Fee |  |  |
| **Loan Payoff** | $ 990,742.62 |  |
| 1st Loan Payoff to: GMAC Mortgage, LLC |  |  |
| [Total Payoff: $1,049,761.96] | $ 432.00 |  |
| Interest @ S27.0000 Per Day From 11/7/2012 To 11/22/2012 | $ 864.31 |  |
| Late Charge | $ 30,463.53 |  |
| Interest through 11/7 | $ 22,870.75 |  |
| Impound Balance | $ 4,388.75 |  |
| Other Fees/Costs |  |  |
| **Additional Disbursements** | $ 465.00 |  |
| Home Warranty to: First American Home Buyers Protection | $ 142.95 |  |
| NHD report to: JCP-LGS Reports |  |  |
| | $ ~~————~~ | |
| Balance Due You |  |  |
| **\*Totals\*** | $ 1,745,735.00 | $ 1,745,735.00 |


We hereby certify that this is a true
and correct copy of the original
ORANGE COAST TITLE COMPANY

# EXHIBIT 2 A

OMB Approval No. 2502-0265

| B. TYPE OF LOAN | | |
|---|---|---|
| 1. □ FHA | 2. □ RHA | 3. X CONV. UNINS |
| 4. □ VA | 5. □ CONV.INS | 6. □ OTHER |
| 6. File Number (Escrow) | | 7. Loan Number |
| 1302489-BR | | 0291875619 |
| 8. Mortgage Insurance Case Number: | | |

**FINAL SETTLEMENT STATEMENT**

12/11/2012   12:36 PM

This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

A. 

E. NOTE:

D. NAME OF BORROWER
Guy K. Richardson
Julie L. Farrington
10   Emerald Lake Pln, Redwood City, CA

G. PROPERTY LOCATION
10  Emerald Lake Place
Redwood City, CA 94062

H. NAME OF SELLER:
Jacqueline A. Warner, Trustee
PO Box 2414, Redwood City, CA 94064

H. SETTLEMENT AGENT:
Orange Coast Title Company of Northern California (408) 827-1950
250 N. Santa Clara Ave, Ste 200 Los Gatos, CA 95030

PLACE OF SETTLEMENT:
530 N. Santa Clara Ave, Ste 200
Los Gatos, CA 95030

F. NAME OF LENDER:
Wells Fargo Bank, N.A.

I. CLOSING DATE: 11/19/2012
DISBURSEMENT DATE: 11/19/2012

REVISED DATE:

| J. SUMMARY OF BORROWER'S TRANSACTION | | | K. SUMMARY OF SELLER'S TRANSACTION | | |
|---|---|---|---|---|---|
| **100 GROSS AMOUNT DUE FROM BORROWER:** | | | **400 GROSS AMOUNT DUE TO SELLER** | | $1,733,000.00 |
| 101 Contract Sales Price | | | 401 Contract Sales price | | |
| 102 Personal property | | | 402 Personal property | | |
| 103 Settlement Charges to borrower (line 1400) | | | 403 Imposed Credit | | |
| 104 | | | 404 | | |
| | | | *Adjustments for items paid by seller in advance* | | |
| *Adjustments for items paid by seller in advance* | | | 406 City/Town taxes | | |
| 107 County taxes | | | 407 County taxes | | $0.00 |
| | | | 408 Direct Deposit to Title | | |
| 108 | | | 409 | | $8,675.00 |
| 109 | | | 410 | | |
| 110 | | | 411 Commission Credit for .5% commission credit back | | |
| 111 | | | 412 | | |
| 112 | | | 413 | | |
| 113 | | | 414 | | |
| 114 | | | 415 | | $2,060.00 |
| 115 | | | 416 Buyer- seller credit for expenses ft. 10/15-11/19 | | |
| 116 | | | 417 | | |
| 117A | | | 418 GROSS AMOUNT DUE | | $1,745,735.00 |
| **120 GROSS AMOUNT DUE FROM BORROWER** | | | **500 REDUCTIONS IN AMOUNT DUE TO SELLER:** | | |
| **200 AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | | 501 Excess deposits (see inst.) | | $85,536.45 |
| 201 Deposit or earnest money | | | 502 Settlement charges to seller (line 1400) | | $0.00 |
| 202 Principal amount of new loan(s) | | | 503 Existing loan(s) taken subject to | | |
| 203 Existing loan(s) taken subject to | | | | | $1,049,761.96 |
| Direct Deposit to Title | | | 504 Payoff To: GMAC Mortgage, LLC (see Attachment) | | |
| Additional Deposits | | | 505 | | |
| 204 Second Mortgage loan | | | | | |
| | | | | | $6,000.00 |
| 205 | | | 506 Seller Credit for closing costs | | |
| 206 | | | 507 | | |
| 207 | | | 508 | | |
| 208 | | | 509 | | |
| *Adjustments for items unpaid by seller* | | | *Adjustments for items unpaid by seller* | | |
| 210 City/Town taxes | | | 510 City/Town taxes | | $3,106.47 |
| 211 County taxes | | | 511 County Taxes $37.0034 07/01/13-11/19/12 | | |
| 212 | | | 512 | | |
| 213 | | | 513 | | |
| 214 | | | 514 | | |
| 215 | | | 515 | | |
| 216 | | | 516 | | |
| 217 | | | 517 | | |
| 218 | | | 518 | | |
| 219 | | | 519 | | |
| **220 TOTAL PAID BY/FOR BORROWER** | | | **520 TOTAL REDUCTION AMOUNT DUE SELLER** | | $1,150,404.88 |
| **300 CASH AT SETTLEMENT FROM/TO BORROWER** | | | **600 CASH AT SETTLEMENT TO/FROM SELLER:** | | $1,745,735.00 |
| 301 Gross amount due from borrower (line 120) | | | 601 Gross amount due to seller (line 420) | | $1,150,404.88 |
| 302 Less amounts paid by/for borrower (line 220) | | | 602 Less reductions in amount due seller (line 520) | | $595,330.12 |
| **303 CASH TO BORROWER** | | | **603 CASH TO SELLER** | | |

We hereby certify that this is a true
and correct copy of the original
ORANGE COAST TITLE COMPANY

BY _____

Jacqueline A. Warner, Trustee

| L. SETTLEMENT CHARGES | | | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| **700** | **TOTAL SALES/BROKER'S COMMISSION** | | $86,750.00 |
| | Division of Commission (line 700) as follows: | | |
| 701 | $43,375.00 to Tavern Financial Group, Inc | | |
| 702 | $43,375.00 to Intero Real Estate | | |
| 703 | Commission paid at Settlement | | |
| 704 | | | |
| | **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | (GFE #1) | |
| | | (GFE A) | |
| 801 | *** Our origination charge $ | (GFE #1) | |
| 802 | Your credit or charge (points) for the specific interest rate chosen $ | (GFE #2) | |
| 803 | Your adjusted origination charges | (GFE #3) | |
| 804 | Appraisal Fee to BB & Valuation $695 POCB | (GFE #3) | |
| 805 | Credit Report Fee to Kroll/ez MTD SVCS $22.00 POCB | (GFE #3) | |
| 806 | Tax Service | (GFE #3) | |
| 807 | Flood Certification | (GFE #3) | |
| 808 | | (GFE #3) | |
| 809 | | (GFE #3) | |
| 810 | | (GFE #3) | |
| 811 | | (GFE #3) | |
| 812 | | | |
| 813 | | | |
| 814 | | | |
| 815 | | | |
| 816 | | (GFE #10) | |
| 817 | | (GFE #3) | |
| | **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | (GFE #11) | |
| 901 | Interest from 11/19/2012 to 12/1/2012 @ $99.5200 | | |
| 902 | Mortgage Insurance Premium | | |
| 903 | Mercury Casualty Company | | |
| 904 | | | |
| 905 | | (GFE #9) | |
| | **1000. RESERVES DEPOSITED WITH LENDER** | | |
| 1001 | Initial deposit for your escrow account (impounds) | | |
| 1002 | Homeowner's Insurance | | |
| 1003 | Mortgage Insurance | | |
| 1004 | Flood Insurance | | |
| 1005 | Property Tax | | |
| 1006 | | | $0.00 |
| 1007 | Aggregate Adjustment | (GFE #4) | $0.00 |
| | **1100. TITLE CHARGES** | $1,500.00 | |
| 1101 | Title Services and lender's title insurance | (GFE #5) | |
| 1102 | Settlement or Closing Fee to Orange Coast Title Company of Northern California | | $0.00 |
| 1103 | Owner's title insurance to Orange Coast Title Company | | |
| 1104 | Lender's title insurance limit $1,224,500.00 | | |
| 1105 | Lender's title policy limit $1,735,000.00 | | |
| 1106 | Owner's title policy limit $1,735,000.00 | | |
| 1107 | Agent's portion of the total title insurance premium $0.00 to Orange Coast Title Company | | $270.00 |
| 1108 | Underwriter's portion of the total title insurance premium $0.00 to Orange Coast Title Company | $130.00 | |
| 1109 | Endorsement Fee (See Attached) | | |
| 1110 | Miscellaneous Closing Charges (See Attached) | | |
| 1111 | | | |
| 1112 | Miscellaneous Title Charges | | |
| 1113 | | | |
| 1114 | | | |
| 1115 | | (GFE #7) | |
| | **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | |
| 1201 | Government Recording Charges | | $1,908.50 |
| 1202 | Recording Fees: Deed $18.00/$1,952.00 Mortgage $78.00/$0.00 Releases $0.00/$0.00 Other $0.00/$0.00 | (GFE #8) | |
| 1203 | Transfer Taxes | | |
| 1204 | City/County tax stamps: Deed $    $0.00/$1,952.50 | | |
| 1205 | State Tax Stamps: Deed $ | | |
| 1206 | County Taxes | (GFE #9) | |
| | **1300. ADDITIONAL SETTLEMENT CHARGES** | (GFE #6) | |
| 1301 | Required Services that you can shop for | $65.00 | |
| 1302 | | $19.00 | $465.00 |
| 1303 | Tax Service-WFRES | | |
| 1304 | Flood Cert-WFRES | | |
| 1305 | Homewarranty Policy To: First American Home Buyers Protection | | $142.95 |
| 1306 | | | |
| 1307 | JCP-LGS Repairs Per NHD report | | |
| 1308 | | | |
| 1309 | | | |
| 1310 | | | |
| 1311 | | | |
| 1312 | | | |
| 1313 | | | |
| 1314 | | $0.00 | $89,536.45 |
| 1400 | **TOTAL SETTLEMENT CHARGES** (enter on lines 103, Section J and 502, Section K) | *P.O.C. (B) Paid outside of closing by Borrower | |
| | *** Includes Origination Point(s): (0% or $0.00) | | |

Jacqueline A. Warner, Trustee

# EXHIBIT 3

Jacqueline A. Warner
10 Emerald Lake Place
Redwood City, CA 94062

June 29, 2009

**CERTIFIED MAIL RETURN RECEIPT REQUESTED**

CMG Mortgage Inc.
3160 Crow Canyon Road
Suite # 400
San Ramon, California 94583

Ally Bank Customer Care
PO Box 951
Horsham, PA   19044

GMAC Mortgage
PO Box 4622
Waterloo, IA   50704-4622

GMAC Mortgage Corporation
100 Witmer Road
Horsham, PA  19044

Dear Sirs/Madam:

With this letter, I, hereby exercise my rights under the Federal Truth in Lending Act. 15 U.S.C. § 1635, Regulation Z § 226.23, to rescind the above referenced mortgage loan. The Truth in Lending disclosure statement was defective for the following reasons:

1. **Right to cancel:** Is not executed and the ROR is not signed by the borrower at the closing which is required for proof of acknowledgement of the (3) day cancellation policy.
2. **Documents:** Loan amount is listed as "initial advance" due to the nature of the account. Additionally, the credit line is not spelled out, only listed in numerals. Lastly, there are blanks not filled in by the lender on the last page of the note.
3. **Documents:** The customer ID form is not filled out by the lender for proof of proper identification of the borrower.
4. **Initial Disclosures:** The initial disclosures TIL. is not signed and dated by the borrower for proof of receipt within the (3) business days of taking application.
5. **Initial Disclosures:** Initial Good Faith Estimate in the file dated 10/18/2007 which appears to be within the (3) business days, BUT, not signed and dated by the borrower.
6. **Final Application:** The final 1003 application in the file is signed, initiated and dated by the borrower on 10/12/2007 but NOT signed by the loan officer/interviewer.

Documents reviewed in the audit were:

| Documents: | Correct: | Executed: |
|---|---|---|
| Initial Loan Application | YES | NO |
| Final Loan Application | YES | NO |
| Borrower Credit | NO | NO |

| | | |
|---|---|---|
| Appraisal | NO | NO |
| Initial Disclosures | NO | NO |
| Initial GFE | YES | NO |
| Final GFE | NO | NO |
| Initial TIL | YES | NO |
| Final TIL | NO | NO |
| ROR/RTC | YES | NO |
| Estimated HUD- Settlement | YES | NO |
| Final HUD-Settlement | YES | NO |
| Note | NO | NO |
| Deed of Trust/Mortgage | YES | YES |
| All Riders | NO | NO |
| Servicing Transfer Letter | YES | NO |
| MLDS Form(if app) | NO | NO |
| Escrow Instructions | NO | NO |

Pursuant to 15 U.S.C. § 1635(f), my right to rescind this loan extends for three-years as a result of this defective material violations listed above. This rescission notice has been sent to you within that time period.

Upon receipt of this document and the accompanying TILA audit, you are instructed to cease all efforts for sale, acceleration of the mortgage note and all foreclosure efforts. We expect a response from your office within (10) days from the receipt of this letter. Your silence in this matter will not protect you from any and all relief available to me under Federal Law. I. am prepared to defend my Federal rights and upon advice from counsel, I would prefer an amicable resolve to this situation.

Please be advised that your security interest in my home is now void per 15 U.S.C. § 1635; Regulation Z § 226.23 and you have twenty-days to return all of the payments I have made on this loan and to do your part to terminate the security interest in my home.

Additionally, please consider this letter a "Qualified Written Request" per RESPA and as such I am demanding an accounting of my loan including the following: loan disbursements, charges, all payments paid to date, and the principal balance

Regards,

Jacqueline A. Warner

Attachment:  Forensic  Report – CMG Mortgage Loan #: 20540326
                            – GMAC Mortgage Loan #: 8601931887

# EXHIBIT 3 A

**SENDER: COMPLETE THIS SECTION**

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature   ROB SMEDLEY
X   ☐ Agent   ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery   JUL 0 8 2008

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

GMAC Mortgage
PO Box 4622
Waterloo, IA
50704-4622

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7008 1830 0000 8944 1498

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature   ☑ Agent
X   D. Nul   ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery   7/1

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

Ally Bank Customer
Care
P.O. Box 951
Horsham, PA 19044

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7008 1830 0000 8944 1504

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature   ☐ Agent
X   Prutuell   ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery   7/1

D. Is delivery address different from item 1?   ☑ Yes
If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

CMG Mortgage Inc
3160 Crow Canyon Rd
Suite 400
San Ramon, CA
94583

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7008 1830 0000 8944 1511

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

A. Signature   ☐ Agent
X   ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to:

GMAC Mortgage
100 Witmer
Horsham, PA 19044

2. Article Number   7008 1830 0000 8944 1528

# EXHIBIT 3 B



FORENSIC REPORT
File ID USP-09-0010

Borrower:    Jackie Warner

June 26, 2009

Dear Client:

We would like to thank you for allowing us the opportunity to review this loan and documents that were provided. The attached report will provide a summary of what our findings were as well as detail on the specific items if applicable.

Our forensic audit process is a combination of technology based review and expert review of the loan file. This service is provided by LMP as an independent, third party audit and recreation of the loan file. The goal is to recreate as much of the original loan file as possible and then perform an audit that will insure the original lender had followed all of the state, federal and local laws and lending rules.

The expert review is where we offer the biggest value and the most comprehensive review of the specific documents for each file. Resources utilized are all senior level underwriters that have spent years in the lending side of loan origination and compliance. Their expert view of the loan file will often identify patterns and inconsistencies that are often missed by technology solutions.

Technology is still very important as it make an easy process out of keeping track to the federal lending guidelines, state specific rules and in certain cases, local or county based restrictions on lending. We have developed technology that has each of our experts checking the exactly same items in every file, tracks each file in our system and links to a compliance engine that completes a date specific check of all the applicable laws and maximum fees that could have been charged at point of origination.

Please review the attached findings in detail and make sure you clearly understand what each item relates to and how it affects your loan. Feel free to call us with any questions that you may have.

Sincerely,

Forensic First

Joseph Posavec

## Borrower Information

**Borrower**
Jackie Warner

**Address**
10 Emerald Lake Place
Redwood city, CA  94062

## Property and Lender Information

**Lender**
GMAC Mortgage

**Original Loan Amount**
**$1,000,000.00**

**Description:**

**Accelerator Equity Line of Credit**

## Log Notes

| | Date Modified |
|---|---|

Log note
06-25-2009 09:21 PM
File reviewed for audit purposes and there were a number of issues identified. The final 1003 was never signed by the interviewer / loan officer, there is a question as to whether the initial disclosures were received by the borrower within 3 business days of application since they have not been signed and dated by the borrower.  The ROR was not signed at closing and is required for proof of receipt and acknowledgement of the 3 day cancellation period.  The lender never completed the Customer ID form for proof of proper identification reviewed by the lender.  The note has blanks on the last page by the lender (pg. 11 of 11), it was not completely filled in.  Also, it does not spell out the credit line, only lists loan amount as "initial advance" due to the nature of this loan being an "Equity Accelerator".  Due to the nature of this type of loan program, not able to complete the Compliance piece of the audit due to system restrictions.

06-12-2009 03:45 PM
6/12 Spoke with customer service rep Lynsdie ID#26437. She stated that they sent out a written response to our QWR in the mail. She could not confirm to me whether the package was sent to the borrower or to Document Recovery. She said she did not know whether the docs were in the package or not.

06-11-2009 12:42 PM
6/11 I called and got a Dustin ID #8929 and he told me I was not an Authorized party on the BA to receive info. I told him name of company and he says they can't work with individuals without their exact name being on the BA. I hung up and called back. I got rep Sherrie #4221 she told me the same thing. I countered that it clearly states on the BA that anyone from either Document Recovery or US Property Shop was authorized. She would not cooperate so thanked her and hung up. I have written a letter and re faxed the BA and QWR. My letter reiterates the stated authorized parties. I will call back later today.

06-03-2009 01:55 PM
Called GMAC, spoke with rep, Paul (ID# 4267). Confirmed receipt of signed b/a & QWR.  Said that it was uploaded to their system yesterday.  Turn time for those documents can take 72 hours to process, and then will be sent via USPS mail. Paul stated their policy is that any documents that are sent with an original signature will be sent directly to the customer.  Everything else will be mailed to us.

06-01-2009 10:30 AM
5/29 - Docs faxed to lender, fax confirmation received.

## Exception Issues

| Category | Criticality | Issue Name | Issue Description |
|---|---|---|---|
| Right to Cancel | ⭐⭐⭐⭐⭐ | Not executed | ROR is not signed and dated by the borrower at closing which is required for proof of acknowledgement of the 3 day cancellation policy. |
| Documents | ⭐⭐⭐⭐⭐ | Not executed | Loan amount is listed as "initial advance" due to the nature of the account. Additionally, the credit line is not spelled out, only listed in numerals. Lastly, there are blanks not filled in by the lender on the last page of the note. |
| Documents | ⭐⭐⭐⭐⭐ | Not executed | Customer ID Form not filled in by lender for proof of proper identification of the borrower. |
| Initial Disclosures | ⭐⭐⭐⭐⭐ | Initial disclosures delivered within 3 days of application? | TIL is not signed and dated by the borrower for proof of receipt within 3 business days of taking application. |
| Initial Disclosures | ⭐⭐⭐⭐⭐ | Initial disclosures delivered within 3 days of application? | Initial GFE in the file dated 10/18/2007 which appears to be within the 3 business days but not signed and dated by the borrower. |
| Final Application | ⭐⭐⭐ | Not executed | Another 1003 application in the file is signed, initialed and dated by the borrower on 10/12/2007 but not signed by the loan officer / interviewer. |

## Borrower Info

| | |
|---|---|
| Borrower Last Name | Warner |
| Borrower First Name | Jacqueline |
| Co-Borrower Last Name | |
| Co-Borrower First Name | |

## Loan Detail

| | | | |
|---|---|---|---|
| Property Address | 10 Emerald Lake Pl | State | CA |
| City | Redwood City | ZIP | 94062 |
| | | Loan Term | 360 |
| Lien Position | 1st | Status | |
| Lender | GMAC | LTV | 59.00% |
| Loan Number | 20540325 | PPP | n/a |
| Original Loan Amount | $ 1,000,000 | Rate | 5.466% |
| Current Balance | $ 916,483 | ARM/FIX | ARM |
| Monthly Payment (PI) | $ 4,898 | | |

## Documents

| Document | | | | | Dated |
|---|---|---|---|---|---|
| Initial Loan Application | ☑ Correct | YES Executed | NO | Dated | |
| Final Loan Application | ☐ Correct | YES Executed | NO | Dated | 10/12/2007 |
| Borrower Credit | ☐ Correct | NO Executed | NO | Dated | |
| Appraisal | ☐ Correct | NO Executed | NO | Dated | |
| Initial Disclosures | ☐ Correct | NO Executed | NO | Dated | 10/18/2007 |
| Initial GFE | ☑ Correct | YES Executed | NO | Dated | |
| Final GFE | ☑ Correct | NO Executed | NO | Dated | 10/9/2007 |
| Initial TIL | ☑ Correct | YES Executed | NO | Dated | |
| Final TIL | ☐ Correct | NO Executed | NO | Dated | 11/9/2007 |
| ROR/RTC | ☑ Correct | YES Executed | NO | Dated | 11/8/2007 |
| Estimated HUD - Settlement | ☑ Correct | YES Executed | NO | Dated | 11/18/2007 |
| Final HUD - Settlement Stat. | ☑ Correct | YES Executed | NO | Dated | 11/9/2007 |
| Note | ☐ Correct | NO Executed | YES | Dated | 11/9/2007 |
| Deed of Trust/Mortgage | ☐ Correct | YES Executed | NO | Dated | |
| All Riders | ☐ Correct | NO Executed | NO | Dated | |
| Servicing Transfer Letter | ☑ Correct | YES Executed | NO | Dated | |
| MLDS Form (if App) | ☐ Correct | NO Executed | NO | Dated | |
| Purchase Contract (if App) | ☐ Correct | NO Executed | NO | Dated | |
| Escrow Instructions | ☐ Correct | NO Executed | NO | Dated | |

## Loan Application (1003)

| Document | Severity | Page | | Conf. |
|---|---|---|---|---|
| Initial Application | | | Original 1003 in file but not signed or dated. | |
| | | | Another 1003 application in the file is signed, initialed and dated by the borrower on 10/12/2007 but not signed by the loan officer / interviewer. | |
| Final Application | 3 | | | |
| | | | | |
| | | | | |

| Good Faith Estimate (GFE) | Severity | Page | | Conf. |
|---|---|---|---|---|
| Document | | | | |
| Initial GFE | | | Initial GFE in the file dated 10/18/2007 which appears to be within the 3 business days but not signed and dated by the borrower. | |
| Initial & Final GFE | | | Initial GFE in the file dated 10/18/2007 which appears to be within the 3 business days but not signed and dated by the borrower. | |

| Truth in Lending (TIL) | Severity | Page | | Conf. |
|---|---|---|---|---|
| Document | | | | |
| Initial & Final | | | TIL is not signed and dated by the borrower for proof of receipt within 3 business days of taking application. | |

| Settlement Statement (HUD1) | Severity | Page | | Conf. |
|---|---|---|---|---|
| Document | | | | |
| Final HUD | | | No issues found. | |

| Right of Rescission | Severity | Page | | Conf. |
|---|---|---|---|---|
| Document | | | | |
| ROR | | | ROR is not signed and dated by the borrower at closing which is required for proof of acknowledgement of the 3 day cancellation policy. | |

| Note | Severity | Page | | Conf. |
|---|---|---|---|---|
| Document | | | | |
| Note | | 11 of 11 | Loan amount is listed as "initial advance" due to the nature of the account. Additionally, the credit line is not spelled out, only listed in numerals. Lastly, there are blanks not filled in by the lender on the last page of the note. | |

| Deed of Trust / Mortgage | | | | Conf. |
|---|---|---|---|---|
| Document | Severity | Page | No issues found. | |
| Mortgage | | | | |

| Other | | | | Conf. |
|---|---|---|---|---|
| Document | Severity | Page | Customer ID Form not filled in by lender for proof of proper identification of the borrower. | |
| Customer ID Form | | | | |
| | | | | |

## DOCUMENT CHECK LIST - Warner

| | |
|---|---|
| Borrower Received Initial Disclosures with 3 days of Application | UNKNOWN |
| Initial disclosures signed by all parties? | NO |
| Borrower's authorization signed prior to the credit report date? | UNKNOWN |
| Initial Good Faith Estimate in file? | YES |
| For California, MLDS in file and contains DRE license number? | UNKNOWN |
| Initial GFE includes YSP if applicable? | N/A |
| If terms changed, GFE or CA MLDS was redisclosed? | UNKNOWN |
| | |
| Loan processed and commented well? | UNKNOWN |
| No documents were copied illegally? | UNKNOWN |
| All documents appear to be legitimate? | YES |
| All documents legible? | YES |
| | |
| ROR/ROC has Correct Borrower Names | YES |
| ROR/ROC has Correct Property Address | YES |
| ROR/ROC is signed and dated | NO    Borrower did not sign at closing. |
| ROR/ROC has correct rescession date | YES |
| ROR/ROC has not been exercised | YES |
| | |
| Note date matches security instrument? | YES |
| Note interest rate matches underwriting approval and investor lock? | UNKNOWN |
| Note has correct property address? | YES |
| Note loan amount is correct in both words and numbers? | NO    Listed as initial advance, loan amount not spelled out. |
| | |
| Note has correct originating lender information? | YES |
| Note first payment date correct? | NO    No 1st payment date listed. |
| Note maturity date correct? | YES |
| Note contains ARM terms or addendum is attached? | YES |
| Note has prepayment addendum matching investor terms? | N/A |
| ARM Note margin matches investor lock sheet? | UNKNOWN |
| ARM caps match investor lock sheet? | UNKNOWN |
| Balloon Note has correct maturity date? | N/A |
| | |
| Deed/Mortgage has correct originating lender information? | YES |
| Deed/Mortgage loan amount is correct in both words and numbers? | YES |
| Deed/Mortgage has correct maturity date? | YES |
| Deed/Mortgage legal description matches preliminary title report? | UNKNOWN |
| Deed/Mortgage property address correct? | YES |
| Deed/Mortgage notary jurat complete, signed and has seal or stamp? | YES |
| Deed/Mortgage has no blanks – all information is completed? | YES |

# RESPA required disclosures

## At the time of loan application

When borrowers apply for a mortgage loan, mortgage brokers and/or lenders must give the borrowers:

- a Special Information Booklet, which contains consumer information regarding various real estate settlement services. (Required for purchase transactions only) and
- a Good Faith Estimate (GFE) of settlement costs, which lists the charges the buyer is likely to pay at settlement. This is only an estimate and the actual charges may differ. If a lender requires the borrower to use a particular settlement provider, then the lender must disclose this requirement on the GFE.
- a Mortgage Servicing Disclosure Statement, which discloses to the borrower whether the lender intends to service the loan or transfer it to another lender. It also provides information about complaint resolution.

**If the borrowers don't get these documents at the time of application,** the lender must mail them within three business days of receiving the loan application.

**If the lender turns down the loan within three days,** however, then RESPA does not require the lender to provide these documents.

The RESPA statute does **not** provide an explicit penalty for the failure to provide the Special Information Booklet, Good Faith Estimate or Mortgage Servicing Statement. However, bank regulators may choose to impose penalties on lenders who fail to comply with federal law. Please read the section on RESPA enforcement for more information.

## Disclosures before settlement/closing occurs

The terms "settlement" and "closing" can be and are used interchangeably.

An **Affiliated Business Arrangement (AfBA) Disclosure** is required whenever a settlement service provider involved in a RESPA covered transaction refers the consumer to a provider with whom the referring party has an ownership or other beneficial interest.

The referring party must give the AfBA disclosure to the consumer at or prior to the time of referral. The disclosure must describe the business arrangement that exists between the two providers and give the borrower an estimate of the second provider's charges.

Except in cases where a lender refers a borrower to an attorney, credit reporting agency or real estate appraiser to represent the lender's interest in the transaction, the referring party may not require the consumer to use the particular provider being referred.

The **HUD-1 Settlement Statement** is a standard form that clearly shows all charges imposed on borrowers and sellers in connection with the settlement. RESPA allows the borrower to request to see the HUD-1 Settlement Statement one day before the actual settlement. The settlement agent must then provide the borrowers with a completed HUD-1 Settlement Statement based on information known to the agent at that time.

## Disclosures at settlement

The HUD-1 Settlement Statement shows the actual settlement costs of the loan transaction. Separate forms may be prepared for the borrower and the seller. Where it is not the practice that the borrower and the seller both attend the settlement, the HUD-1 should be mailed or delivered as soon as practicable after settlement.

The **Initial Escrow Statement** itemizes the estimated taxes, insurance premiums and other charges anticipated to be paid from the Escrow Account during the first twelve months of the loan. It lists the Escrow payment amount and any required cushion. Although the statement is usually given at settlement, the lender has 45 days from settlement to deliver it.

## Disclosures after settlement

Loan servicers must deliver to borrowers an **Annual Escrow Statement** once a year. The annual Escrow account statement summarizes all escrow account deposits and payments during the servicer's twelve month computation year. It also notifies the borrower of any shortages or surpluses in the account and advises the borrower about the course of action being taken.

A **Servicing Transfer Statement** is required if the loan servicer sells or assigns the servicing rights to a borrower's loan to another loan servicer. Generally, the loan servicer must notify the borrower 15 days before the effective date of the loan transfer. As long the borrower makes a timely payment to the old servicer within 60 days of the loan transfer, the borrower cannot be penalized. The notice must include the name and address of the new servicer, toll-free telephone numbers, and the date the new servicer will begin accepting payments.

**SENDER: COMPLETE THIS SECTION**

Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
Print your name and address on the reverse so that we can return the card to you.
Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to:

GMAC Mortgage
PO Box 4622
Waterloo, IA
50704-4622

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature  ROB S. MEDLEN
X                          ☐ Agent
                           ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Certified Mail     ☐ Express Mail
☐ Registered         ☐ Return Receipt for Merchandise
☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

Article Number
(Transfer from service label)    7008 1830 0000 8944 1498

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
Print your name and address on the reverse so that we can return the card to you.
Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to:

Ally Bank Customer
Care
P.O. Box 951
Horsham, PA 19044

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                          ☑ Agent
                           ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☑ Certified Mail     ☐ Express Mail
☐ Registered         ☐ Return Receipt for Merchandise
☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7008 1830 0000 8944 1504

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
Print your name and address on the reverse so that we can return the card to you.
Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to:

CMG Mortgage Inc
3160 Crow Canyon Rd
Suite 400
San Ramon, CA
94583

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                          ☐ Agent
                           ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?  ☑ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☑ Certified Mail     ☐ Express Mail
☐ Registered         ☐ Return Receipt for Merchandise
☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7008 1830 0000 8944 1511

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

*(sideways card, right margin)*

A. Signature
X                          ☐ Agent
                           ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Certified Mail     ☐ Express Mail
☐ Registered         ☐ Return Receipt for Merchandise
☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
Print your name and address on the reverse so that we can return the card to you.
Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

GMAC Mortgage
100 Witmer
Horsham, PA 19044

Article Number    7008 1830 0000 8944 1528

Page 10 of 10

# EXHIBIT 4

Date: December 3, 2009

**From:**

Jacqueline A. Warner
10 Emerald Lake Place
Redwood City, CA 94062

**To/Respondents:**

Melodie Whitson
PITE DUNCAN, LLP
4375 Jutland Dr. #200
PO Box 17933
San Diego, CA 92177-933

Account Number: 8601931887
MIN: 1000724-0000006013-0
Escrow No: 3475075c

**U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*
For delivery information visit our website at www.usps.com®

| | | |
|---|---|---|
| Postage | $ | $1.39 |
| Certified Fee | $2.80 | |
| Return Receipt Fee (Endorsement Required) | $2.30 | |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ | $6.49 |

Sent To *Melodie Whitson + PITE DuncanLLP*
Street, Apt. No.; or PO Box No. *4375 Jutland Dr #200*
City, State, ZIP+4 *San Diego CA 92177-0933*

PS Form 3800, August 2006    See Reverse for Instructions

Re: **Parcel Tax No. 057-143-280**; Original Deed of Trust No: 20540326, Dated 11/09/2007; Original Security Instrument No. 2007-163264, Recorded Date: November 16, 2007; Commonly Known Address: 10 Emerald Lake Place, Redwood City, CA 94062;

## <u>*Notice of Right to Cancel*</u>

*Notice to Agent is Notice to Principal/Notice to Principal is Notice to Agent*

**Parties:** Jacqueline A. Warner (Alleged Borrower, hereinafter **Borrower**) – and, Melodie Whitson of PITE DUNCAN, LLP (Alleged Lender(s) – hereinafter **Lender**)

**Attention: All above named Respondents**

This communication will serve as my <u>*Notice of Right to Cancel*</u> dated November 16, 2009. TILA (<u>Truth in Lending Act, 15 USC §1601 et seq; 12 CFR Part 226</u>) allows three (3) years to review Disclosure Documents.  The referenced 'Three Day Right to Cancel' must have a trigger to begin. That trigger, is when the Lender has provided the Borrower with <u>ALL</u> of the required Disclosures under TILA, and that the same are true, complete, accurate, and timely provided.

Being as the entire purported loan/mortgage process and Deed of Trust/Security Instrument referenced herein and throughout, was obtained by wrongful acts of fraud, fraudulent inducement, concealment, and fraudulent misrepresentation, the borrower has other recourse, right, and cause of action under numerous state and federal statutes. Acts of fraud taint/void everything it touches as the US Supreme Court has declared: "*There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents, and even judgments.*" (<u>United States v. Throckmorton, 98 U.S. 61</u>) In further support of the aforementioned wrongful acts, you will please find the attached 'Affidavit of Jacqueline A. Warner',

Page 1 of 3

Notice of Right to Cancel

referenced herein and throughout as <u>Attachment/Exhibit – B</u> and, the attached <u>Addendum - C</u>, all of which are made a part hereto, and incorporated herein in their entirety, the same of which contain important matters of record that have thus far remained unanswered, unrebutted, and uncontroverted by all Respondents listed above.

To this date, Lender has <u>never</u> provided Borrower with true, complete, accurate or timely documents as required. <u>ONLY AFTER</u> such provision has been done, can the '3 DAY RIGHT TO CANCEL' period begin. If the required full Disclosure(s) have not been provided, then the period in which to Cancel is extended for up to three (3) years, OR until Lender moves to foreclose. The records thus far evidence, that **Borrower** has requested to cancel within the stipulated three year time period, while still waiting to receive all Truth-in-Lending disclosures as required by Federal Law, the same of which have never been received.

A close perusal and audit of Borrower's mortgage/loan documents has revealed certain Disclosure Violations; and, that the Borrower has the remedial right and remedy (UCC 1-201 (32) (34)), inter alia, to invoke their Right of Rescission (ROR) as further evidenced by the original NOTICE OF RIGHT TO CANCEL. You will also please find Borrower's signed and dated NOTICE to the Lender(s), Successor(s) and Beneficiary as stated on the NOTICE OF RIGHT TO CANCEL, if provided in the loan package. If such Notice was not provided, **this written Notice of communication is provided in lieu thereof**.

After sufficient NOTICE has been given to Lender, the Lender is required by Federal Law to CANCEL any lien(s) and to CANCEL any security interest on the Borrower's property within twenty (20) days. The Lender must also return any money, interest, fee, and/or property to Borrower, as well as any money/funds given to any persons or other fiction in law/entity in connection with said transaction.

In accordance with both State and Federal law or until the Lender complies, Borrower may retain the proceeds of the transaction. If it should be 'impractical' or 'unfair' for the Borrower to return the property when gross discrepancies, fraud, or other wrongful acts are discovered - then he/she/they may offer its 'Reasonable Value'.

In the event the Lender should fail or refuse to take possession of the property or return the borrower's money offer within twenty (20) days . . . **Borrower** may then regain/acquire all rights to clear title and re-conveyance under Federal Law and provisions of TILA.

**Additionally**, Borrower has the right to offer Lender a Reasonable Value. **However**, the penalty that a bank can face for violations of TILA and other State and Federal law can be as much as triple damages . . . i.e., triple the amount of the interest the bank stood to fraudulently make off of the deed of trust/loan transaction. Therefore, the borrower does hereby in good faith make the following offer:  Borrower will forgive Melodie Whitson of PITE DUNCAN, LLP and any liability incurred by its wrongful actions, provided Melodie Whitson of PITE DUNCAN, LLP rightfully forgives Borrower the full amount of deed of trust (credit) CMG Mortgage Inc. et al., fraudulently alleges to have given.  In addition, Borrower makes the one time demand of $2,967,247.00 from CMG Mortgage, Inc., for any loss, damage, and injury Borrower has sustained; and, that CMG Mortgage Inc., et al., also immediately remove all/any negative comments on Borrower's credit report attributed to this transaction.

Notice of Right to Cancel

Any default, failures, or non-compliance on the Lender's part to perform as herein directed within twenty (20) days of receipt shall constitute this Notice of Right to Cancel as valid and fully agreed/accepted pursuant to the terms and conditions as set forth herein.

Sincerely,

*Jacqueline C. Warner*

Jacqueline A. Warner

## ACKNOWLEDGEMENT

State of _California_ )
)
County of _San Mateo_ )

**Subscribed and sworn to** (or affirmed) before me on this __3__ day of _December_, 2009,

by _Jacqueline A. Warner_, proved to me on the basis of

satisfactory evidence to be the person who appeared before me.

Signature _____ (Seal)
(Notary Public)

OFFICIAL SEAL
ERIC HASHEMIAN
NOTARY PUBLIC - CALIFORNIA
Commission #1857303
County of San Mateo
My Commission expires July 10, 2013

Notice of Right to Cancel

Order No: 3475075c
Reference No.:
Escrow Officer: Ada Ayon
Escrow Number: 3475075c

APN No: 057-143-280-6 JPN: 057-014-143-20.04.00A

## DESCRIPTION

All that certain land situated in the unincorporated area of the **County of SAN MATEO, State of California,**
and described as follows:

PARCEL A:

PARCEL 2, AS SHOWN ON THAT CERTAIN MAP ENTITLED, "PARCEL MAP A RESUBDIVISION OF THE
LANDS OF TURTURICI AND MCKEEGAN AS SAID LANDS ARE DESCRIBED IN DOCUMENT NO.
88043032, OFFICIAL RECORDS OF SAN MATEO COUNTY, SAN MATEO COUNTY, CALIFORNIA", FILED
IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON
FEBRUARY 28, 1990 IN BOOK 63 OF PARCEL MAPS AT PAGES 69 AND 70.

PARCEL B:

A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS AND STORM DRAINAGE PURPOSES
WITHIN A PORTION OF PARCEL 3 AS SHOWN ON THAT CERTAIN MAP ENTITLED "PARCEL MAP OF A
RESUBDIVISION OF THE LANDS OF TURTURICI AND MCKEEGAN AS SAID LANDS ARE DESCRIBED
IN DOCUMENT NO. 88043032, OFFICIAL RECORDS OF SAN MATEO COUNTY, SAN MATEO COUNTY,
CALIFORNIA" FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN MATEO COUNTY, STATE OF
CALIFORNIA OF FEBRUARY 28, 1990 IN VOLUME 63 OF PARCEL MAPS AT PAGES 69 AND 70, SAID
PORTION BEING DESIGNATED AS "PROPOSED P.S.D.E. INGRESS/EGRESS, ESMT. FOR BENEFIT OF
PARCELS 1 AND 2 AND P.U.E." ON SAID MAP.

SAID EASEMENT IS TO BE APPURTENANT TO AND FOR THE BENEFIT OF PARCEL "A" ABOVE.

PARCEL C:

A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OVER A STRIP OF LAND 7.50 FEET WIDE
LYING EASTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT THE NORTHWESTERLY CORNER OF THE LANDS CONVEYED TO RUSSEL L. WOLDEN
AND WIFE BY DEED RECORDED JUNE 25, 1954 IN BOOK 2605 OF OFFICIAL RECORDS AT PAGE 723
(FILE NO. 66351-L) RECORDS OF SAN MATEO COUNTY, CALIFORNIA; AND THENCE NORTH 4° 20'
WEST 158.30 FEET TO THE SOUTHERLY LINE OF SUMMIT DRIVE.

SAID EASEMENT IS APPURTENANT TO AND FOR THE BENEFIT OF PARCEL A ABOVE AND WAS
CREATED BY GRANT OF RIGHT OF WAY FROM ARTHUR CINTI, ET UX, TO NEVADA V. WALDEN,
RECORDED JUNE 27, 1932 IN BOOK 553 OF OFFICIAL RECORDS AT PAGE 499 (FILE NO. 9678-C)
RECORDS OF SAN MATEO COUNTY, CALIFORNIA AND BY DEED FROM ARTHUR CINTI AND MARINA
CINTI, TO JOHN M. UNDERHILL AND ELSIE W. UNDERHILL, RECORDED AUGUST 12, 1940 IN BOOK
905 OF OFFICIAL RECORDS AT PAGE 251 (FILE NO. 95911-D) RECORDS OF SAN MATEO COUNTY,
CALIFORNIA AND BY DEED FROM ARTHUR CINTI AND MARINA CINTI, TO DOMINIC JACKMAN AND
GIOVANNA JACKMAN, RECORDED NOVEMBER 28, 1945 IN BOOK 1219 OF OFFICIAL RECORDS AT
PAGE 298 (FILE NO. 75500-F), RECORDS OF SAN MATEO COUNTY, CALIFORNIA.

# EXHIBIT 4-A

Attachment/Exhibit - B

# AFFIDAVIT

## of Jacqueline A. Warner
Re: Promissory Note on
Security Instrument No: 20540326 Dated: November 9, 2007
Deed of Trust No. 2007-163264 ; Recorded November 16, 2007

"Indeed, No more than [such affidavits are] necessary to make the prima facie case." United States v. Kis, 658 F.2nd, 526, 536 (7th Cir. 1981); Cert Denied, 50 U.S. L.W. 2169; S. Ct. March 22, 1982

Comes now Jacqueline A. Warner, (hereinafter "affiant") a sentient, living woman, being first duly sworn/affirmed – and does depose, say, declare, and affirm by affiant's signature that I am over the age of 18 years and have first hand personal knowledge of the following statements and affirm the same are true and correct to the best of affiant's knowledge and belief, to wit:

1.) That, affiant was induced to believe by certain officers/employees of MELODIE WHITSON OF PITE DUNCAN LLP (hereinafter; bank/bank's/lender) and further by the bank's advertising, that said bank had money of its own to loan to affiant and others.

2.) That, affiant took the bank up on its offer to loan affiant its money, and affiant did sign a promissory note/deed of trust/security instrument dated November 9, 2007.

3.) That, the bank did also induce affiant to sign a "security agreement/instrument" dated November 9, 2007, granting the bank a secured interest and lien in/on certain personal property of affiant currently held/owned or otherwise acquired. The bank caused affiant to believe this "security agreement/instrument" was necessary for the bank to protect and insure its valuable and lawful 'consideration', i.e., the loaning of its money to affiant as advertised and promised.

4.) That, the bank did further induce affiant into signing a Deed of Trust the bank and/or its cohorts created, dated November 9, 2007, wherein the bank did cause other undeserving third parties to obtain a lien against, a security interest in, and complete control over the affiant's personal property. Again, the bank led affiant to believe this Deed of Trust/assignment was necessary to further secure the bank's valuable, lawful, consideration against any potential 'risk or loss' regarding loaning the affiant its money.

Affidavit of Jacqueline A. Warner

**Attachment/Exhibit - B**

5.) That prior to the affiant signing any of the bank's required financial documents, and forever thereafter, none of the bank's officers/employees have ever fully described and categorized all of the underlying, undisclosed particulars, details, and principles of law regarding the bank's entire purported '*loan*' process, including, but not limited to, just exactly where the '*money*' was coming from to fund the note/mortgage, how it was obtained/created, and by whom.

6.) That, by and through the affiant's signing of all the aforesaid financial instruments, the bank caused affiant to believe that a binding, lawful contract was created between the bank, its agents, assigns, and affiant.

7.) That prior to, and at the time of affiant signing all the bank's required financial instruments as instructed, affiant was very unlearned and unsophisticated in such banking and financial matters, including a total lack of knowledge of all the various underlying, undisclosed details, particulars - and legal consequences pertaining to the same. To the contrary, the unsophisticated affiant relied wholly and entirely upon the bank having 'clean hands', operating in 'good faith', and providing affiant with full, complete, and truthful disclosure of the entire financial transaction(s).

8.) That, regardless of any funds secretly or covertly obtained by the bank (via affiant's note/mortgage) while said bank acts as a for-profit business with and through the US Treasury for the purpose to access and thereby expand the credit of this affiant's individual treasury account while at all times failing to disclose the use of this affiant's negotiable paper (i.e. affiant's note/deed) while trading as a for-profit entity on the bond and securities market through any of its interagency cohorts/institutions such as Fannie Mae, Freddie Mac, or otherwise; while also apparently failing to file IRS Form 1099OID (Original Issue Discount) on each of the herein referenced transactions and thereby send a copy of said form to affiant for his tax records. It has been established that this affiant as well as other Americans have, out of necessity and the related remedy attaching thereto having its origin out of HJR-192, are in fact the only substantive "source" and consumer to sponsor virtually ALL credit that issues for commercial purposes. Said credit being necessary for the Treasury to have access to a valid source of credit to monetize and thereby disburse to the federal reserve banks for various and sundry federal projects while accounting for all such credit/funding entered into circulation through the aforesaid federal reserve banks. The nature of such funding has been verified by the U.S. Department of Treasury as emanating by and through the UCC Contract Trust Account of the named trust/entity JACQUELINE A. WARNER bearing UCC CONTRACT TRUST ACCOUNT No. 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 (known as Social Security No.) and Treasury noted

Affidavit of Jacqueline A. Warner

**Attachment/Exhibit - B**

Exemption from Levy No. 080406562 (known as exemption No.), to include such other similar individual trusts as may exist.

IN CONCLUSION - Due to other research, further understanding, and for all of the reasons set forth above and throughout this affidavit (to include the document entitled "Addendum-C") all of which the affiant incorporates herein in its entirety – has caused affiant to believe ALL notes/mortgage/Deed of Trusts or other instruments entered into by the affiant between the bank/lender and any/all of its agents, assigns, and beneficiaries have no legal force or binding affect, and the same are in fact - **Null and Void.**

Further affiant sayeth naught,

Date: ___12/3/09___

_Jacqueline A. Warner_ (signature)
Affiant's signature
Jacqueline A. Warner

## Acknowledgement

State of _California_

County of _San Mateo_

**Subscribed and sworn to** (or affirmed) before me on this _3_ day of _December_, 20_09_, by _Jacqueline A Warner_, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _Eric Hashemian_ (Seal)



OFFICIAL SEAL
ERIC HASHEMIAN
NOTARY PUBLIC - CALIFORNIA
Commission #1857303
County of San Mateo
My Commission expires July 10, 2013

Page 3 of 3

Affidavit of Jacqueline A. Warner

# EXHIBIT 4-B

# Addendum – "C"

### ADDENDUM TO - RIGHT TO CANCEL
RE: UNCONTROVERTED MATTERS OF RECORD, Et Seq.
Original Loan /Security Instrument No: 20540326
Dated: November 9, 2007; Ref Parcel Tax No. 057-143-280
Commonly Known Address: 10 Emerald Lake Place, Redwood City, CA  94062
Deed of Trust Record No. 2007-163264 AR - Record Date: November 16, 2007

1.) That, at no time prior to the signing of any 'loan' documents and to this date, did LENDERS, MELODIE WHITSON of PITE DUNCAN LLP, (hereinafter "LENDERS") nor any of its officers/employees fully and completely describe and categorize all of the underlying particulars, details, and principles of law regarding LENDER'S entire purported 'loan' process, including **just exactly** where the 'money' was coming from to fund the note/mortgage, how it was obtained/created, and by whom.

2.) That, at no time prior to the signing of any 'loan' documents and to this date, did LENDERS and its officers/employees ever disclose to Jacqueline A. Warner the fact that the funding of the note/deed of trust was being created/obtained by and through Jacqueline A. Warner's signature on Jacqueline A. Warner's note, the same of which LENDERS later arbitrarily and deceitfully claimed as its own, and then either sold, bargained, traded, or collateralized the same for its own benefit and use.  Jacqueline A. Warner has good cause to believe that the foregoing wrongful acts evidence LENDERS never put up, nor used, any money of its own to fund the note/deed of trust instrument as it promised; Nor, have LENDERS and its officers/employees ever denied or rebutted any of the determinations set forth above.

3.) That, by and through Jacqueline A. Warner's signing of notes, mortgages, deed of trusts, and/or security instruments, LENDERS led Jacqueline A. Warner to believe that a binding, lawful contract/agreement was created between LENDERS (to include its agents, assigns, and beneficiaries) and Jacqueline A. Warner.

4.) That prior to, and at the time of signing all LENDER'S required financial instruments as instructed, Jacqueline A. Warner was very unlearned and unsophisticated in such banking and financial matters, including lacking any knowledge of all the various underlying details, particulars, and legal consequences pertaining to the same. To the contrary, Jacqueline A. Warner relied wholly upon LENDERS having 'clean hands', operating in 'good faith', and providing Jacqueline A. Warner with full, complete, and truthful disclosure of the entire financial transaction(s).

5.) That, following the aforesaid financial transactions concerning LENDERS, Jacqueline A. Warner did further study and research the above particulars regarding LENDER'S *loan* process, and can reasonably conclude that LENDERS <u>did not</u> in fact operate with clean hands or in good faith, nor did LENDERS provide full, complete, and truthful disclosure of its underlying, undisclosed, secret intents. To the contrary, a close perusal and audit of LENDER'S internal accounting records provide sufficient evidence to support the following conclusions:

a.) That LENDERS used acts of, but not limited to, fraudulent inducement, fraudulent misrepresentation, and fraudulent intent in its advertising and claim to have loaned its *money* to Jacqueline A. Warner;

b.) That LENDERS did not fulfill its original promise/agreement to lend Jacqueline A. Warner its own money; LENDERS did not sacrifice/contribute anything of intrinsic value or incur any risk/loss in the formation or outcome of the transactions; and, LENDERS therefore did not sacrifice nor contribute any valuable, lawful consideration; and thereby could not and did not suffer any loss, damage, or injury.

c.) That LENDERS arbitrarily and discretely stole Jacqueline A. Warner's note/deed, claimed it as its own, and converted the same to a negotiable instrument for LENDER'S sole benefit, use, and gain;

d.) That LENDERS further compounded its predatory, wrongful, and fraudulent actions by inducing Jacqueline A. Warner to sign a DEED OF TRUST/SECURITY INSTRUMENT of which LENDERS had created, thereby granting additional third parties undeserving control, benefit, and interest in Jacqueline A. Warner's personal property (i.e. her house/real property) all under the guise of '*necessity*';

e.) That the notes/mortgage/Deed of Trust/Security Instrument created by LENDERS, its agents, and assigns and signed only by Jacqueline A. Warner does not constitute a lawful binding contract/agreement due to LENDER'S acts of misfeasance, malfeasance, and nonfeasance as more particularly outlined above; and, that any such purported 'contract/agreement' would be unconscionable and is void.

f.) As confirmed above and throughout, Jacqueline A. Warner was never provided full, complete, and truthful disclosure regarding all financial instruments Jacqueline A. Warner was compelled to sign, nor were they fully or otherwise apprised of the *<u>true nature</u>* and <u>exact particulars</u> of LENDER'S entire *loan* process. Without being fully and truthfully informed as to all the details of the purported '*loan*' and the underlying disingenuous '*intentions*' of the lender, there could not be, and was not, a 'meeting of the minds'. The law of contracts and the courts addresses this issue repeatedly, as per this example: "*The 'meeting of the minds' required to make a contract is not based on <u>secret purpose or intention</u> on the part of one of*

the parties, stored away in his mind and *not brought to the attention of the other party, but must be based on purpose and intention which has been made known or which from all the circumstances should be known*". McClintock v Skelly Oil Co., 232 MoApp. 1204, 114 S.W. 2nd 181, 189. (emphasis added)

g.) That, LENDERS also did compel Jacqueline A. Warner into procuring Property Insurance on Jacqueline A. Warner's property making LENDERS (or any of its assigns) the beneficiary of the same, while LENDERS knew full well that it had not put up any valuable nor lawful consideration into Jacqueline A. Warner's note, could not possibly incur any loss, was undeserving of any such insurance benefit.  As with the theft of Jacqueline A. Warner's note, courts of law throughout the United States consider any such wrongful and deceitful actions as fraudulent inducement, fraudulent misrepresentation, and unjust enrichment, to name a few.

h.) Jacqueline A. Warner did spend additional time researching several particulars regarding LENDER'S entire *loan* process as outlined above, and became further perplexed. If LENDERS had indeed given full, complete, and truthful disclosure regarding all elements of its loan process as set forth above and throughout; and, did in fact provide valuable, bona fide consideration; and, did in fact believe LENDERS did create a lawful, binding contract with Jacqueline A. Warner/borrower - then why didn't LENDER'S officers/representatives sign their name on the contract/note? The same applies to the Deed of Trust or Mortgage. If LENDERS knew it was not involved in any manner of fraudulent inducement, misrepresentation, concealment, or unjust enrichment, and did in fact have a bona fide legal contract with the borrower/Jacqueline A. Warner, sufficient to prevail in a foreclosure action if need be; then, why did LENDERS feel it necessary to have a deed of trust created – wherein the LENDERS did cause complete control of the purported '*loan*/note' to be turned over to an undeserving third party, and again never put their signature to the instrument? In consideration of all the above statements and findings, it is only reasonable to conclude that LENDERS knew full well that it had defrauded Jacqueline A. Warner/borrower from the outset as to the true nature and undisclosed rudiments of the entire *loan* process, and was not receptive to further implicating and/or incriminating itself by signing its name to documents that LENDERS knew were founded upon fraud, lies, unfulfilled promises, secret intentions, inducement, entrapment, and unjust enrichment.

6.) To this date, LENDERS nor any of its agents, assigns, or beneficiaries, have provided any **bona fide**, tangible evidence that ANY of them are in FACT the **bona fide** holder in due course (nor even a holder of value) and **bona fide** owner of the promissory note in question, all of which would be absolutely

Page 3 of 4

Addendum – "C"

necessary in order to initiate ANY form of collection action or foreclosure proceeding. **Again**, it is an **incontrovertible fact** that the original promissory note in question is, and always was, the property of Jacqueline A. Warner, and the same **did not** knowingly or otherwise assign, transfer, or give it away for another's personal benefit and gain – all to the loss and detriment of Jacqueline A. Warner. Any reasonable person would conclude such an action as being ludicrous and unconscionable. Furthermore, **it is against the law** for one to fraudulently obtain or steal another's property, claim it as their own, and then further bargain, assign, or sale the same to obtain an unjust enrichment, benefit, and gain for themselves – all at a loss and detriment to the lawful, bona fide owner.

**IN CONCLUSION,** MELODIE WHITSON of PITE DUNCAN LLP, and LENDERS nor any of its officers, agents, assigns, or beneficiaries have provided any evidence in contradiction to the matters set forth above and throughout. **Accordingly,** the record shall establish that all aforesaid facts, statements, determinations and related Attachment/Exhibit-B sworn Affidavit of borrower (which are incorporated herein in their entirety) are entirely true, accurate, and correct and remain unanswered, unrebutted, and uncontroverted.


_____
Jacqueline A. Warner

Addendum – "C"

## ASSERVATION OF MAILING

RE: Parcel Tax No. 057-143-280; Commonly Known Address: 10 Emerald Lake Place, Redwood City, CA 94062

I, Jacqueline A. Warner, do hereby solemnly declare and affirm by my signature below, that on December 3, 2009, I did cause to be delivered by USPS First Class Certified Mail, a true and correct copy of the following documents: Notice of Right to Cancel; Notice of Removal of Trustee; Affidavit of Jacqueline A. Warner Attachment/Exhibit-B; and Addendum-C, to the parties and locations listed below:

Melodie Whitson
PITE DUNCAN, LLP
4375 Jutland Dr. #200
PO Box 17933
San Diego, CA 92177-0933
USPS Certified Mail Tracking No. ____7009 1680 0000 5169 4019_____

_Jacqueline A. Warner_ (signature)
Jacqueline A. Warner

### ACKNOWLEDGEMENT

State of _California_ )
County of _San Mateo_ )

**Subscribed and sworn to** (or affirmed) before me on this _3_ day of _December_, 2009,

by _Jacqueline A Warner_ , proved to me

on the basis of satisfactory evidence to be the persons who appeared before me.

Signature _Eric Hashemian_ (Seal)
(Notary Public)



OFFICIAL SEAL
ERIC HASHEMIAN
NOTARY PUBLIC - CALIFORNIA
Commission #1857303
County of San Mateo
My Commission expires July 30, 2013

THIS INSTRUMENT WAS DRAFTED BY:
Jacqueline A. Warner
10 Emerald Lake Place
Redwood City, CA 94062

Asseveration of Mailing