1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 12-12020-mg

5   - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   RESIDENTIAL CAPITAL, LLC, et al.,

9

10          Debtors.

11

12   - - - - - - - - - - - - - - - - - - - - -x

13              United States Bankruptcy Court

14              One Bowling Green

15              New York, New York

16

17              March 5, 2014

18              2:04 PM

19

20

21

22

23   B E F O R E:

24   HON. MARTIN GLENN

25   U.S. BANKRUPTCY JUDGE

1

2  (CC: Doc# 6525, 6526) Motion to Approve Motion for Entry of

3  Order Approving Procedures for Compliance With Discharge Order

4  Regarding Federal Subpoena Served on the Examiner.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  Sharona Shapiro

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

3

1

2  A P P E A R A N C E S :

3  KRAMER LEVIN NAFTALIS & FRANKEL LLP

4      Attorneys for the ResCap Liquidating Trust

5      1177 Avenue of the Americas

6      New York, NY 10036

7

8  BY: KENNETH H. ECKSTEIN, ESQ.

9

10

11  CHADBOURNE & PARKE LLP

12      Attorneys for Discharged Examiner

13      30 Rockefeller Plaza

14      New York, NY 10112

15

16  BY:   DAVID M. LEMAY, ESQ.

17

18

19

20

21

22

23

24

25

```
 1
 2   KIRKLAND & ELLIS LLP
 3          Attorneys for Ally Financial and Ally Bank
 4          601 Lexington Avenue
 5          New York, NY 10022
 6
 7   BY:   RAY C. SCHROCK, ESQ.
 8
 9
10   U.S. DEPARTMENT OF JUSTICE
11          United States Attorney's Office
12          Southern District of New York
13          86 Chambers Street
14          New York, NY 10007
15
16   BY:   JOSEPH N. CORDARO, AUSA
17
18
19
20
21
22
23
24
25
```

RESIDENTIAL CAPITAL, LLC, et al.                                    5

1                    P R O C E E D I N G S

2            THE COURT:  Please be seated.  We're here in

3     Residential Capital, number 12-12020.

4            Mr. LeMay?

5            MR. LEMAY:  Good afternoon, Your Honor.  David LeMay

6     from Chadbourne & Parke, counsel to the examiner, Arthur

7     Gonzalez -- the discharged examiner, I should say.  Mr.

8     Gonzalez, as you can see, is here in court today.

9            Your Honor, thank you for hearing us on shortened

10    notice on this motion which, as the Court knows, is a motion by

11    the examiner to establish procedures to enable the examiner to

12    comply with a subpoena that was issued to him by the United

13    States Attorney's Office in the Central District of California

14    under the federal statute commonly known as FIRREA, which I

15    will forget the full name of, but I think we all know what

16    we're talking about, and certainly the government's counsel do.

17           I'm not going to, unless the Court wants, recite the

18    entire procedural history going back several months.  I think

19    suffice it to say that we received this subpoena after quite a

20    lot of negotiation.  It seemed like an impasse had been reached

21    between the government and the examiner about how best to

22    comply with that subpoena and what this court should be asked

23    to approve.  That impasse led to the filing of the motion that

24    we're here today on, which Your Honor signed an order

25    permitting to be heard today on shortened notice.

1    I think the pressure of that court date, combined with

2   a lot of hard work on all sides, and particularly from the

3   government, Mr. Cordaro and his colleagues, led to us being

4   able to figure out a way home that would lead to an order that

5   would be both sufficiently protective of the government's

6   policy interests and satisfactory to the examiner who, of

7   course, is concerned about, (a) complying with and acting under

8   the orders of this court, and (b) ensuring himself against

9   liability.

10    We had filed a form of order with the original motion

11   last week, and then yesterday, under cover of a reply, which

12   I'll come to in a moment, we filed a revised order.  That

13   revised order set forth a complete resolution of all issues,

14   making the order satisfactory to both the government and to the

15   examiner.  I believe the Court is familiar with the key

16   features of that order.  In effect, if you were to sign the

17   order today, as we would ask you to, we would serve that order

18   and the subpoena on all of the counsel for the various

19   witnesses listed on a schedule to the order, and we would do

20   that --

21    THE COURT:  Is this the first time that all the

22   interviewees know who each other are?

23    MR. LEMAY:  No, the identity of the interviewees was

24   disclosed in the report.  The identity of their counsel was not

25   disclosed until we filed our paper last week, Your Honor.

1          THE COURT:  Okay.

2          MR. LEMAY:  But the interviewees themselves are out

3    there publicly and have been for months, their names.

4          So we would serve that on all of the interviewees at

5    the addresses of their counsel listed on the annex to the

6    proposed order.  Thereupon, after thirty days, we would comply

7    with the subpoena and deliver the subpoenaed materials,

8    consisting of the transcripts of the witness interviews that

9    we conducted and the audio recordings of those interviews,

10   except if within that thirty-day period we are served with

11   notice that a court has, in effect, entered an order telling us

12   not to do that or stopping production, then we would not so

13   deliver those.  Important to note that if witness A obtained

14   such an order, we would still comply as to witness B, and

15   there's no dispute about that, and the reasons for that is

16   obvious.

17         I think the only other key points about -- that's

18   quite a brief summary, but I think it's a brief order.  I think

19   the other thing to note are a couple of changes that emerged in

20   the course of the negotiation with the government.  And these

21   changes were, it turned out, not really troublesome to the

22   examiner, but of great moment to the government and its policy

23   interests.

24         One, you'll see, in looking at the blackline, which

25   was filed as Exhibit B to our reply of yesterday morning, I

1   think the first change of note shows up on page 2, and it shows

2   up as a blackline.  And the effect of the change is that

3   instead of the Court, in effect, directly ordering the examiner

4   to comply with these procedures, in effect, what we're now

5   asking you to do is to bless and approve an agreement between

6   the government and the examiner to implement these procedures

7   and to tell us it's okay to do that.  That was fine for us, and

8   is of considerable moment to the government for some policy

9   reasons that they're probably best in a position to tell you

10  about.

11          The other thing, I think, that is probably

12  significant, is we had originally inserted a free-standing

13  limitation of liability provision, basically saying the

14  examiner would have no liability for any good-faith attempts to

15  comply with the discharge order that the Court entered

16  discharging the examiner.  After talking with the government,

17  we realized that a better way home, that protected everyone,

18  was to take that paragraph out and simply refer to the fact

19  that the discharge order itself, which was entered on full

20  notice to everybody and after, I believe, a minimum of fifteen

21  days' notice of the most -- the last round of changes -- that

22  the discharge order contains its own limitation of liability

23  regime.

24          And so what the proposed order now does is simply

25  recites that that order is still in full force and effect.  I

1   don't think anybody questions that it is, but of course, from

2   the examiner's point of view, it is important to know that

3   we're still operating under the protections of the discharge

4   order and that nothing has happened to make that go away.

5          So those are really the only, in my view, changes of

6   substance.  The rest is wording.  And I'm happy to take you

7   through line by line, Your Honor, but it's pretty short and

8   it's pretty sweet and --

9          THE COURT:  No, I've reviewed it.

10          MR. LEMAY:  -- I think you're probably on top of it to

11   begin with.  The changes are all set forth in the blackline.

12          No objections have been filed to this application or

13   this motion.  Ally Financial did file a reply.  I'm going to

14   sit down in a couple of minutes and let Ally and the government

15   tell you where they stand with respect to that -- it was a

16   response; I'm sorry -- where they stand with respect to that

17   response, because I understand that some progress may have been

18   made, but I was not a party to that nor do I need to be.

19          But in effect, what Ally asked, in its response, was

20   the imposition of certain use and restriction -- use and

21   dissemination restrictions on the information in the

22   government's hands.  They'll give you an update on that.  The

23   examiner had no position -- has no position on that issue,

24   other than, in Ally's original draft, which I think is perhaps

25   superseded, they envisioned an ongoing role for the examiner in

1  routing motions to quash to the witnesses.  Given that the

2  witnesses' counsel are now publicly known, I don't think there

3  is any such role necessary for the examiner, nor does the

4  examiner wish or seek such a role.  So we'd like out, Your

5  Honor; we clearly want to go home.  That's not a surprise.

6        So I think in a minute I should turn over the podium

7  to counsel for the government and Ally.  The only last thing I

8  want to talk about, just very briefly, is that after we filed

9  our motion, and I suppose, not surprisingly, counsel for

10  several of the witnesses contacted us, asking to be given

11  transcripts of their interviews.  And we conferred and we

12  consulted with our client, and it seemed important that we have

13  and maintain a fully disclosed, transparent and consistent

14  position, which would be our response to all people making that

15  request, because there now have been three and I suspect

16  there'll be more.

17        We disclosed that position in the reply we filed

18  yesterday.  I'm going to state it on the record today, and it's

19  what we've been telling people in writing when they've asked.

20  And basically, the examiner's position, which we believe to be

21  fully supported by the discharge order, is that

22  contemporaneously with the delivery of transcripts to the

23  government under the subpoena, so contemporaneously with

24  complying with the subpoena, we will give counsel, for a

25  witness who asks, a copy of that witness' transcript.  We do

1   not propose to do so before that time.

2           As I say, Your Honor, I'm only laboring this because I

3   want every vehicle I can to make the examiner's position on

4   this clear.  As I say, we have been responding to inquiries in

5   writing, and I have filed a paper that says this.  But that's

6   our position, and I don't think we would propose to deviate

7   from it, of course, unless, of course, we heard otherwise from

8   the Court.

9           Your Honor, I believe, if you give me a second, that's

10  really all I've got to say about all of this.  I think counsel

11  from the government and Ally wish to be heard briefly.  But we

12  thank you for your attention to this and we think that we are

13  pretty much ready to take this home.

14          THE COURT:  Thank you, Mr. LeMay.

15          Mr. Cordaro?

16          MR. CORDARO:  Good afternoon, Your Honor.  Joseph

17  Cordaro, Assistant United States Attorney, on behalf of the

18  government.

19          I'll only address briefly the point that counsel made

20  concerning the first change to the order.  In view of the

21  circumstances with this subpoena having been served on a

22  discharged examiner in a significant Chapter 11 bankruptcy, the

23  government, under these circumstances, does not oppose the

24  application to have the Court review the agreed-upon procedure

25  and approve it.

1    And unless the Court has further questions, I don't

2  know if I need to elaborate any further than that, but of

3  course I'm happy to.

4    THE COURT: No, you don't on that.

5    MR. CORDARO: Okay. Thank you, Your Honor.

6    With respect to Ally Financial, I am informed that

7  Ally Financial has had discussions with the U.S. Attorney's

8  Office out in Los Angeles.

9    THE COURT: You're kind of the intermediary on this

10  with the U.S. Attorney's Office in L.A.?

11    MR. CORDARO: Yes, Your Honor. And I'm only generally

12  privy to what was discussed there, but I do think, without

13  speaking for Mr. Schrock, that those discussions have advanced

14  the ball significantly, and so at this point, perhaps, it might

15  be more efficient for me to turn over the lectern to Mr.

16  Schrock to give the Court an update on those proceedings. And

17  then to the extent I have anything to wrap up, I can stand up

18  and say it very briefly.

19    THE COURT: Thank you very much.

20    MR. CORDARO: Thank you, Your Honor.

21    THE COURT: Mr. Schrock?

22    MR. SCHROCK: Good afternoon, Your Honor. Ray

23  Schrock, Kirkland & Ellis, on behalf of Ally Financial and Ally

24  Bank.

25    Very briefly, I am pleased to report that we did have

1   a very nice discussion with the U.S. Attorney's Office for the

2   Central District of California.  We essentially were requesting

3   the same things that we had requested in this order, but just

4   by agreement with the U.S. Attorney's Office.  And while I find

5   the jurisdictional issues to be very intellectually

6   stimulating, we were trying to find a practical solution.

7        The U.S. Attorney informed us that they thought we

8   could work something out in the form of a confidentiality

9   agreement.  We're going to start exchanging drafts of that

10  later today.  And at this time, given that dialogue and what we

11  expect will be the entry of a confidentiality agreement, we

12  don't see the need for a holdup in terms of the modifications

13  to the order.

14       I did want to note for the Court, that our concern

15  with this is just that, as the Court is probably aware, we did

16  have a very excruciating negotiation over the protective order

17  entered in this case.  And the transcripts were always

18  considered to be the examiner's work product and were noted so

19  on section II-9 of the report.  So we haven't seen them.  Other

20  parties haven't seen them.  That being said, we don't have any

21  concerns -- we were at a number of them -- we don't have any

22  concerns about them.  The concern would only be that as a

23  result they don't have any confidentiality designation under

24  the terms of the protective order.  And while the discharge

25  order certainly was entered and addressed a number of issues,

1  in our view, and we were certainly involved in the negotiations

2  and looked at the discharge order originally, it did not -- the

3  protective order wasn't superseded -- the protective order

4  wasn't eviscerated.

5        So if we aren't able to work out something with the

6  U.S. Attorney's Office, we're just here on the record to state

7  that we don't want to say that we may -- we are waiving any

8  rights, whatever those may be, under the terms of the Court's

9  protective order.  I hope that really would never be necessary,

10  and I would think that if practical minds and reasonable minds

11  prevail it would never be necessary, but I did -- I am

12  compelled to note that for the record, because among other

13  things, I have other regulatory agencies for my client that

14  are -- you know, that get concerned about bank regulatory

15  privileges and other items that they consider to be

16  confidential that could be covered in those transcripts.

17        THE COURT:  Do I understand that you have no objection

18  to the Court entering the revised order as it's been presented

19  and has been negotiated between the government and the

20  examiner?

21        MR. SCHROCK:  Your Honor, I have no objection with you

22  entering the order with the reservation of rights that if we --

23  if you'd enter -- the way I read your order, Your Honor, is

24  that if you enter it, it is not eviscerating any rights that we

25  may have under the Court's prior entered order with the

1 | protective order.

2 |   THE COURT:  I thought the order was pretty clear on

3 | its face as to what it says and what it means.

4 |   MR. SCHROCK:  Um-hum.  I agree; the order stands on

5 | its own, Judge.  I agree.

6 |   THE COURT:  And I just want to be clear --

7 |   MR. SCHROCK:  Um-hum.

8 |   THE COURT:  -- that what I'm understanding you to say

9 | is that Ally has no objection to the proposed order being

10 | entered.  I understand --

11 |   MR. SCHROCK:  Right.

12 |   THE COURT:  -- that you're in continuing discussions

13 | with the U.S. Attorney's Office in Los Angeles --

14 |   MR. SCHROCK:  Um-hum.

15 |   THE COURT:  -- about issues of confidentiality --

16 |   MR. SCHROCK:  Um-hum.

17 |   THE COURT:  -- but those discussions will go on,

18 | hopefully be resolved satisfactorily to everybody's wishes, but

19 | you're not asserting an objection to the Court entering the

20 | order that's been presented to me today.

21 |   MR. SCHROCK:  I will be clear.  That is correct.  We

22 | are not entering an objection to the order.  I just didn't want

23 | the Court to be surprised if later on we were asserting rights

24 | that we believe still exist, in light of the order, under the

25 | protective order.

1            And I also wanted to note for the record, we are

2    talking to the examiner just about -- right now the order

3    reads, I believe, that current employ -- if we were listed --

4    if Kirkland was listed as counsel, for instance, we'll get a --

5            THE COURT:  Well, I saw the list of the interviewees

6    and who their counsel are, and I see your name -- or your

7    firm's name --

8            MR. SCHROCK:  Correct.

9            THE COURT:  -- appears with probably a majority of the

10   interviewees.

11           MR. SCHROCK:  Yes, and we had -- we're in a dialogue

12   with the examiner about whether or not former employees --

13   we're going to start a dialogue with him whether or not former

14   employees' transcripts would also be provided to us, if there's

15   any investigation.

16           THE COURT:  I'm not sure what the dialogue is about,

17   but --

18           MR. SCHROCK:  It's not covered in the order; I just

19   wanted to be clear that that's --

20           THE COURT:  Okay.

21           MR. SCHROCK:  -- occurring.

22           THE COURT:  I guess, Mr. Schrock, from my review of

23   the order, it's certainly -- well, let me say I'm not resolving

24   any issue today whether -- if you've got a complaint about

25   confidentiality or otherwise --

1          MR. SCHROCK:  Um-hum.

2          THE COURT:  -- one fair reading of the order is find a

3    district judge with jurisdiction over the matter and raise it

4    with him rather than me.

5          MR. SCHROCK:  Um-hum.

6          THE COURT:  In a brief phone call, which was not

7    really substantive at all, with a number of parties -- I don't

8    think you or anyone from your firm was on the phone -- I asked

9    for a telephone conference as to whether today was actually

10   going forward with a contested motion or -- and I think we made

11   some progress and the parties, the examiner and the U.S.

12   Attorney were able to reach an agreed order after that

13   conference.

14         But Mr. Cordaro, during the conference, one of his

15   brief statements -- as I say, we weren't -- it wasn't an

16   argument of legal issues, but he pointed me to a section of the

17   FIRREA statute that seemed to say -- I'm not resolving the

18   issue -- that it's the district court rather than any other

19   court that would have to resolve any objections to a subpoena.

20   I'm not -- I'm just flagging that issue, so you shouldn't

21   understand my silence to suggest that I suspect that the U.S.

22   Attorney might aggressively take the position if you come to me

23   that you've come to the wrong court.

24         MR. SCHROCK:  I understand, Judge, and also, I've

25   heard that, and we would certainly act accordingly.  I do think

RESIDENTIAL CAPITAL, LLC, et al.                    18

1   that the fact that these are -- this is the examiner's work

2   product, the Court's papers, and in fact the Court's fiduciary

3   papers, and we have a protective order that's been entered in

4   this court that Mr. Cordaro was noticed upon, that's where I --

5   I don't want to go into it, but that's where we would go.

6          THE COURT:  I don't think it's worth --

7          MR. SCHROCK:  Right.

8          THE COURT:  -- debating that now.  Hopefully you're

9   going to re --

10         MR. SCHROCK:  Yes.

11         THE COURT:  -- reach a satisfactory resolution with

12   the U.S. Attorney's Office, either Mr. Cordaro or the AUSA in

13   Los Angeles who is involved in the matter --

14         MR. SCHROCK:  I --

15         THE COURT:  -- I'm sure you've spoke with already.

16         MR. SCHROCK:  Your Honor, we had a very nice call.  It

17   was clear to me that --

18         THE COURT:  I'm always happy to hear that, Mr.

19   Schrock.

20         MR. SCHROCK:  It was a very nice call, and I have

21   every expectation we will work it out, but we will certainly

22   let you know if that's not the case.

23         THE COURT:  Okay.  Does anybody else wish to be heard?

24         MR. LEMAY:  Can I be heard very briefly again, Your

25   Honor?

RESIDENTIAL CAPITAL, LLC, et al.                    19

1          MR. SCHROCK:  Thanks.  Thank you, Your Honor.

2          THE COURT:  Well, let me hear from -- thank you very

3     much, Mr. Schrock.

4          Mr. Eckstein?  I thought you disappeared from the

5     case.  I mean, you're --

6          MR. ECKSTEIN:  Your Honor, good afternoon.  Kenneth

7     Eckstein of Kramer Levin, appearing on behalf of the ResCap

8     liquidating trust.

9          I actually rise to make three observations today.

10    First, with respect to the motion.  The trust has not taken a

11    position on the motion and is not taking one today on the

12    record; it certainly does not oppose the agreement that's been

13    entered into, and I just wanted to note that for the record.

14         Number two, Your Honor, I guess somewhat related to

15    the last colloquy, I mentioned to Mr. Cordaro before we came

16    into court that about two weeks ago a subpoena was delivered to

17    Residential Capital and went to Morrison & Foerster.  There had

18    been a subpoena that was delivered to the debtor during the

19    Chapter 11 case, and that was dealt with by the debtor in the

20    ordinary course, and they dealt with the U.S. Attorney's

21    Office, they made some production; there actually was an

22    interview that took place during the case, and the matter had

23    basically become dormant.

24         But a new subpoena was just served about two weeks

25    ago.  I don't believe Mr. Cordaro was even aware of it, because

1    it came from Los Angeles.  But in any event, I'm just bringing

2    it to the Court's attention.  We've been in touch, or the trust

3    has been in touch with the U.S. Attorney's Office, and I'm

4    hoping that we'll also be able to work out whatever information

5    they need in a consensual manner.

6            THE COURT:  This is also a subpoena under FIRREA?

7            MR. ECKSTEIN:  It's a FIRREA-related subpoena. It

8    appears to be just, at this point, looking for information.

9    And it's not clear to us what the goals are, but it's really

10   just information gathering, and our plan is to work with the

11   U.S. Attorney in California and hopefully address their needs

12   in a consensual manner.

13           Obviously, if an issue comes up, we'll deal with it at

14   the time.  But I just wanted to alert Your Honor to the fact

15   that that has come up and it could become an issue.  We're

16   obviously sensitive to cost.  We've experienced what it costs

17   to do production of documents in connection with the ResCap

18   case, and that'll obviously be an issue that the trust will be

19   sensitive to in terms of ongoing requests for information.

20           The last item, Your Honor, and this is merely a

21   volunteer in case you're interested.  Since I'm here today, and

22   I really haven't had the occasion to be here since

23   confirmation, I thought Your Honor might appreciate a very

24   brief status report on sort of the players --

25           THE COURT:  Okay.

1        MR. ECKSTEIN:  -- and what Your Honor may see on a

2    going-forward basis.  And so if you'd like, Your Honor, I'm

3    happy to review --

4        THE COURT:  Please, go ahead.

5        MR. ECKSTEIN:  -- because some of the parties actually

6    were curious.

7        All of the assets and the liabilities, so to speak,

8    have been transferred to the liquidating trust.  The

9    liquidating trust has a liquidating trustee; his name is

10    Jeffrey Brodsky.  And it has a board of five members.  And all

11    that was in accordance with the plan and the plan related

12    documents.

13        The trust has gone about, over the last several weeks,

14    in engaging various professionals to assist it in connection

15    with what may need to be done.  My firm is going to work with

16    the trust, essentially, as sort of general counsel, corporate

17    counsel, and deal with whatever ordinary course needs the trust

18    has.

19        My firm and Morrison & Foerster have allocated

20    responsibility for the unresolved claims.  And Your Honor may

21    see Morrison & Foerster attorneys and may see Kramer Levin

22    attorneys dealing with various claim issues.  I don't think

23    that you'll see both firms appearing on claims issues.  We're

24    going to try to allocate, and I think we actually have a very

25    efficient arrangement worked out with the trust.  We've

1    actually gone claim by claim, and I think, obviously, the goal

2    is to work out as many claims as we can on a consensual basis,

3    and if we have contested matters or disputes, we'll bring them

4    before Your Honor.  But I just wanted to alert Your Honor to

5    the fact that you will see both firms.  Both firms will be

6    representing the trust on different claims.  There may be other

7    matters that come up in the case.

8            THE COURT:  Oh, there are hearings every couple of

9    weeks on objections to borrower claims from the borrower trust.

10           MR. ECKSTEIN:  The borrower claims are being handled

11   separately.

12           THE COURT:  And I see those --

13           MR. ECKSTEIN:  Yes.

14           THE COURT:  -- quite often.

15           MR. ECKSTEIN:  And those are being handled separately.

16   There's obviously a borrower trust, and I don't want to speak

17   for exactly how those are being handled, but those are going to

18   be handled similar to the way the trust is handling the general

19   claims, but I believe Morrison & Foerster is continuing to

20   handle the borrower claims right now, and at least for the time

21   being, I imagine that's how it's going to proceed.

22           But there may be other matters unrelated to claims,

23   such as this issue, for example, and the trust will decide who

24   it wants to handle particular matters.  So today, for example,

25   I came down to just appear on this matter.  But as things go

1  forward, Your Honor will see various firms.  But I just wanted

2  to let Your Honor know that you will see both Kramer Levin and

3  Morrison & Foerster on --

4      THE COURT:  Let me -- since you've given me this

5  summary and indicated that you or your colleagues may be

6  appearing on claims objections, let me just share, hopefully

7  preemptively, an issue I've raised with objections to borrower

8  claims.

9      The borrowers' trust has, with great regularity, filed

10 omnibus objections asserting books and records objections,

11 which I think is somewhat odd, and I've pointed that out in

12 court, because they say the debtors' books and records show no

13 liability for the claim.  Well, most of these are tort claims.

14 Well, of course the books and records don't show any liability

15 for tort claims.  And they wait and see whether a borrower

16 files a response to the objection.  And then they file a reply

17 with affidavits and things, and they really expect me to

18 consider, for the first time, arguments raised in a reply.

19     And I hopefully have made it clear to them I won't --

20 and I've said I will not consider arguments raised for the

21 first time in a reply.  If you believe you have good grounds

22 for objecting to a claim, don't make it just a books and

23 records objection when -- yeah, it works for duplicate claims

24 and things like that, but more substantive claims, it's

25 absolutely worthless.  I mean, even where the objection is

1  filed and no response has been filed to it, unless the

2  objection establishes a prima facie basis to grant the relief

3  that the borrower trust wants, I won't do it.

4        So it's -- I guess what sort of bothered me is this

5  happened more than once already.  So I'm just telling you,

6  preemptively, that I'm more than -- hopefully you'll work most

7  of the issues out, but to the extent that you have substantive

8  objections, that's fine, I'll consider them.  But I don't want

9  a situation where there is some boiler-plate objection to a

10  claim to wait to see whether the creditor files a response and

11  then think that a reply is going to raise the real issues.

12  Anyway, that's not -- obviously I'm only doing that because

13  I've gotten frustrated already, and alert you to that.

14        MR. ECKSTEIN:  I appreciate the observation, Your

15  Honor, and I can appreciate the frustration.

16        THE COURT:  I understand that it may be a lot simpler

17  to just do the boiler plate books and records objection, but it

18  isn't going to work.

19        MR. ECKSTEIN:  I'll make certain that everybody who is

20  handling claim objections is apprised of --

21        THE COURT:  Okay.

22        MR. ECKSTEIN:  -- Your Honor's comments, and I think

23  it's useful to know in advance, because I think that it would

24  be much more efficient to avoid that problem at the time of the

25  hearing.

1        THE COURT:  I appreciate that.

2        MR. ECKSTEIN:  I know Your Honor's views on making

3   sure that things are previewed properly, and I will convey that

4   back.

5        THE COURT:  Right, and then of course the other thing

6   is I appreciate very much when counsel keeps my law clerks

7   advised when there are things on the calendar that either are

8   going to be adjourned or are being resolved.  And so that --

9   because we've already had the experience on the borrower trust

10  issue --

11       MR. ECKSTEIN:  I remember that.

12       THE COURT:  -- spending a lot of time getting ready

13  only to have the borrowers' trust try to adjourn the matter on

14  the day of the hearing.  I don't appreciate that.

15       MR. ECKSTEIN:  I do recall Your Honor's comments on

16  that.

17       THE COURT:  Okay.

18       MR. ECKSTEIN:  And there is a hearing, I believe, this

19  coming Tuesday, that in fact is going forward, as far as I

20  know.  And I know there's at least one issue of --

21       THE COURT:  If there's a hearing next Tuesday --

22       MR. ECKSTEIN:  I think it's Tuesday, March 11th?

23       THE COURT:  We'll have to look at it; they have to get

24  adjourned.

25       MR. ECKSTEIN:  If that's a problem, I guess --

RESIDENTIAL CAPITAL, LLC, et al.                    26

1          THE COURT:  We'll --

2          MR. ECKSTEIN:  -- you can let us know and we'll

3    coordinate and --

4          THE COURT:  I'll work it -- my courtroom deputy's been

5    out sick, so she's out sick today.  We'll --

6          MR. ECKSTEIN:  There is a hearing Tuesday.  Right now

7    it's scheduled.  So if there's an issue with the date, Your

8    Honor's --

9          THE COURT:  There is.

10         MR. ECKSTEIN:  -- chambers will let us know.

11         THE COURT:  I'm on an airplane on Tuesday coming back

12   to New York.

13         MR. ECKSTEIN:  Well, in that case, it's probably not a

14   very convenient day for the hearing.

15         THE COURT:  No. All right.  But we'll work -- thank

16   you.

17         MR. ECKSTEIN:  Okay, good.  Thank you, Your Honor.

18         THE COURT:  Thanks, Mr. Eckstein.

19         THE COURT:  Anybody else want to be heard?

20         MR. LEMAY:  Just for one second, Your Honor?

21         THE COURT:  Mr. LeMay, sure.

22         MR. LEMAY:  Your Honor, David LeMay again, for the

23   discharged examiner.

24         Just reverting to the prior colloquy with Mr. Schrock,

25   just three things which I think are self-evident.  Mr. Schrock

1    expressed some views about the interplay between the protective

2    order that was entered at the beginning of the case and the

3    discharge order and this order.  I don't understand any of that

4    to be here ripe for adjudication today.  I don't necessarily

5    subscribe or unsubscribe to Mr. Schrock's views, but I just

6    don't think that's what we're doing today.

7           Second, Your Honor, I think it's obvious to all that

8    if there is an inability to reach closure between the

9    government and Ally on protective terms, that's a dispute that

10   really has nothing to do with the examiner.  And I think I've

11   been probably like a broken record in the proposition that we

12   regard our work here as largely done and would very much like

13   to exit this case, very respectfully.

14          And then the third thing, Your Honor, is that through

15   an odd quirk of the drafting of this order that's in front of

16   you, our time to comply with the subpoena is a fixed date; it's

17   April the 9th.  And there has to be a thirty-day window, which

18   is a long-winded way of saying if you could enter the order

19   today --

20          THE COURT:  We'll enter the order today.

21          MR. LEMAY:  -- it would be extraordinarily helpful.

22          THE COURT:  My courtroom deputy's out; we'll get

23   somebody to enter the order.

24          MR. LEMAY:  Okay.  My colleague can send it in Word to

25   anyone at your chambers.  We can --

RESIDENTIAL CAPITAL, LLC, et al.                    28

1          THE COURT:  That's fine.  As soon as the hearing's

2   over, get an e-mail address and get it to us and it'll get

3   entered.

4          MR. LEMAY:  Thank you, Your Honor.

5          THE COURT:  All right.  So what I have before me is

6   the motion of the examiner with respect to procedures for

7   compliance with a subpoena served by the United States under

8   FIRREA.

9          As the colloquy today has indicated, and there have

10  been prior discussions about this, an agreement on procedures

11  has been reached voluntarily between the United States

12  Attorney's Office and the examiner, reflected in the proposed

13  order that was provided to me today, which includes changes

14  from the proposed order that was submitted with the motion.

15         Ally had filed a -- it was the only response to the

16  motion, and as Mr. Schrock indicated on the record today, Ally

17  does not object to the entry of a proposed order in the form

18  it's now been provided.

19         The Court has reviewed the form of order and I'm

20  satisfied that it's appropriate in the circumstances, and

21  consequently, the order will be entered promptly.

22         Okay?  Thank you very much.  I'm glad you were able to

23  work it out.  Mr. Cordaro, thank your colleague in Los Angeles,

24  that you were able to work this out satisfactorily. Okay?

25         MR. CORDARO:  Yes, Your Honor.  Thank you.

RESIDENTIAL CAPITAL, LLC, et al.                    29

1          THE COURT:  Thanks very much.  All right.   We're

2     adjourned.

3          IN UNISON:  Thank you, Your Honor.

4       (Whereupon these proceedings were concluded at 2:36 PM)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1
2                              I N D E X
3
4                            R U L I N G S
5                                          PAGE      LINE
6    Motion for entry of order approving      28        19
7    procedures for compliance with discharge
8    order regarding federal subpoena
9    served on the examiner - approved
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1

2                          C E R T I F I C A T I O N

3

4    I, Sharona Shapiro, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9    _____

10   SHARONA SHAPIRO

11   AAERT Certified Electronic Transcriber CET**D-492

12

13   eScribers

14   700 West 192nd Street, Suite #607

15   New York, NY 10040

16

17   Date:  March 6, 2014

18

19

20

21

22

23

24

25