UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC., et al., | Chapter 11 |
| Debtors. | Jointly Administered |

IN RE DOC. 6527
SPECIAL APPEARANCE FOR THE LIMITED
PURPOSES OF PRESENTING OBJECTIONS AND RAISING JURISDICTIONAL
ISSUES WARRANTING DISMISSAL WITH PREJUDICE
OF THE ALLY MOTION

On February 26, 2014, non-debtor Ally Financial, Inc. (*Ally*) filed a motion in this Court seeking to enforce the 'Third-Party Release' which is a part of the Debtor's Chapter 11 plan of reorganization confirmed by this Court on December 11, 2013 [ECF No. 6065].

By way of this 'special limited appearance' Lahrman says, verifies and affirms as follows, that;

## INTRODUCTION

*Ally* makes short shrift of accurately pleading their motion. The motion is unsworn; it is not supported by an affidavit; the '*Action*' sought to be enjoined is not attached to the motion in order that this Court can ascertain for itself if the legal conclusions made in the motion by *Ally* are correct; the motion makes no mention of irreparable harm or impairment to the Debtor's estate or reorganization; the motion does not identify what, if any, monetary relief is being sought in the '*Action*'; and the motion is rife with misrepresentations of material fact.

*Ally* brings its motion relying upon what they characterize to be the 'broad' language of

1

the Third Party Release set forth in the Debtor's plan of reorganization, together with the Plan's Injunction provision (Plan Art. IX.I.) which this Court found and concluded were both essential to the plan and likewise - "narrowly tailored". (*see* Doc. 6065 Order Confirming Plan at p. 30 MISCELLANEOUS subsection WW. Injunction).

In its motion *Ally* asserts that "Lahrman's claims against Ally are based on business activities of the Debtors, not Ally, and thus arise from and relate to the Debtors" (Doc. 6527 p.2 ¶ 2). *Ally* asks this Court to "enforce the Plan's Injunction and permanently enjoin Lahrman from continuing his lawsuit against Ally, including his efforts to sanction Ally and its counsel for notifying him of the Plan's Third- Party Release and Injunction." *id* at ¶ 3

## BACKROUND

Prior to the commencement of the above entitled cause both *Ally* and the soon-to-be-debtors found themselves the subject of intense scrutiny and under investigation by Federal authorities and banking regulators, among which were the Board of Governors for the Federal Reserve, the Office of the Comptroller of Currency ("OCC") and the Federal Deposit Insurance Corporation ("FDIC"). Ultimately, based upon the factual findings and conclusions of the aforementioned Federal authorities *Ally* and its soon-to-be-debtor subsidiaries ("*Ally, et al.*") were the subject of a Federal administrative enforcement action which culminated in the entry of a "Consent Order" or or about April 13, 2011. In the "Consent Order" with Federal authorities *Ally* agreed with and gave its consent to, *inter alia,* a "cease and desist" provision which enjoined *Ally, et al.* from further engaging in certain of its identified business practices, customs

2

and routines. On or about September 2, 2011, *Ally, et al.* found themselves again the subject of intense scrutiny and under federal investigation when *Ally, et al.* was again sued by Federal authorities, this time in civil proceedings and by the Federal Housing Finance Agency ("FHFA") as conservator for "Fannie Mae" and "Freddie Mac". Yet again and for a third time prior to filing bankruptcy, on or about March 20, 2012 the United States Department of Justice and forty-nine (49) States' Attorney General's, based upon their factual findings and conclusions, sued *Ally, et al.* -- together with other entities in the mortgage banking industry – in another civil court proceeding. This third 'industry-wide' legal action, not unlike the Federal administrative enforcement action, culminated in the entry of a 'Consent Judgment' on or about April 12, 2012, wherein and under Ally et al. again agreed with and consent to a cease and desist provision which enjoined *Ally, et al.* from further engaging in certain of its identified business practices, customs and routines. Approximately thirty (30) days later and on or about May 12, 2012, some fifty-plus (50+) different subsidiary entities of *Ally* – all doing their business in the home mortgage industry and all subject of both the 'Consent Order' and 'Consent Judgment' set forth above -- filed for Chapter 11 bankruptcy in the above entitled cause.

    During the course of the Debtors' chapter 11, and in or about July 2012, *Ally et al.* filed an adversary proceeding (Case 1:12-cv-05116-DLC) in the chapter 11 proceeding attempting to extend to Ally as a non-debtor entity the debtor's bankruptcy protection automatic stay or in the alternative for a Br. R. 105 injunction seeking to stay or otherwise enjoin the FHFA lawsuit. On July 17, 2012, U.S. District Judge Cote denied relief to *Ally, et al.* (Case 1:12-cv-05116-DLC,

ECF Doc. #28) Elsewhere during the Debtor's chapter 11, in or about October 2013 and while objecting to the establishment of a specific "Borrowers Committee" the Debtors raised three principal objections the third of which is particularly relevant here, and the same which acknowledges and admits,

> ..., the Debtors and other parties have put significant programs in place to ensure that the borrowers' interests are adequately protected. For example:
>
> • *First*, new and existing borrowers of the Debtors are protected under the DOJ/AG Settlement and the Consent Order (each as defined below and, together, the "Government Agreements"), because, among other things, they require the Debtors to adopt improved loan servicing standards. Meanwhile, defaulting and distressed borrowers of the Debtors are protected under the Government Agreements because they obligate the Debtors to commit money and efforts to address loan modifications within a specified time frame.
>
> • *Second*, at the outset of these cases, the Debtors obtained relief to permit the Debtors to continue servicing mortgage loans in the ordinary course, with respect to both their existing contractual arrangements with Fannie Mae, Freddie Mac and Ginnie Mae (collectively, the "Government Agencies"), and private label transactions. That relief was both mandated and supported by the Government Agencies.
>
> • *Third*, at their own initiative, under the Supplemental Servicing Order, the Debtors obtained expansive borrower and debtor relief from the automatic stay to allow borrowers to defend against foreclosures and eviction proceedings and to fully prosecute their rights where borrowers are subject to their own bankruptcy cases.
>
> • *Fourth*, the Debtors are monitored by 49 state attorneys general, the United States Department of Justice, the Federal Reserve Board, and other agencies to ensure the Debtors' compliance with the Government Agreements. Moreover, the Supplemental Servicing Order is monitored and enforced by the Bankruptcy Court. Accordingly, there is no need for another watchdog with respect to the protections for borrowers.
>
> *See* Debtors' Obj. ¶ 3.

4

*In re RESIDENTIAL CAPITAL, LLC, et al., Debtors.*, 480 B.R. 550 (2012) (emphasis added)

Of course Lahrman assumes that both this Court and *Ally* are intimately familiar with all the events and numerous pending lawsuits the Debtors faced and Lahrman need not expound upon the significant problems faced by and involving the Debtors except to say, relevant hereto, that so mindful were the Debtors of their obligations under the "Government Agreements", these agreements are defined in the Debtors' Plan (Plan – Art. I, *see* Plan p. 9 #64 defining the 'Consent Order'; and Plan p. 12 #89 defining the DOJ/AG 'Consent Judgment') and likewise provided for in the Plan. (Plan - Art. IV.B(e) at Plan p. 57 – <u>*Regulatory Obligations*</u> ). Equally mindful of these historically significant agreements between *Ally et al.* and both Federal and State authorities this Court conditioned of the Plan's approval on, "… the Debtor's performance of the obligations under the DOJ/AG Settlement, the Consent Order and the Order of Assessment on the terms set forth in Article IV.B(e) of the Plan." (ECF Doc. 6065 at p. 19 <u>Conditions To The Confirmation Of The Plan</u>, p. 21 subsection FF. cont. on p. 22 at ¶ 1 (v) ).

The Debtors' Plan was confirmed by Order of this Court dated December 11, 2013, and ultimately under the plan the Debtors are to be liquidated.

On January 3, 2014, Lahrman filed the '*Action*', as *Ally* calls it and complains. The '*Action*' was commenced in the Elkhart County Indiana Circuit Court under Case No. 20C01-1401-PL-002 and by the filing of a pleading entitled – "**Verified Petition/Action To Quiet Title and Complaint For Damages**". Under the 'Complaint For Damages' prong of the '*Action*' Lahrman's claims mirror those claim made by the DOJ/AG case and Lahrman asserts that *Ally, et al.* have yet to 'cease and desist' as agreed and promised in the both the DOJ/AG Consent Judgment and the FRB/OCC/FDIC Consent Order(s). Lahrman likewise raised claims for tortuous interference, intentional infliction of emotional distress, and Lahrman asserts that *Ally*

5

– together with those other named defendants – are a nuisance in fact both private to Lahrman and to the public. Under the quiet title prong of the '*Action*' Lahrman asserts that *Ally, et al.* has filed, and publically recorded, a known false and fraudulent mortgage on the real property subject of the '*Action*'.[1]

On January 23, 2014, Attorney Kate Van Bokkelen – Hinshaw & Culbertson LLP located in Schererville, IN – filed her appearance in the '*Action*' on behalf of *Ally*, Fannie Mae and MERS, Inc. Together with filing her appearance Attorney Van Bokkelen filed a motion to enlarge the time to file an answer/response on behalf of her clients, *Ally* included.

On January 23, 2014, Lahrman filed a "**Verified Complaint For Damages and by Supplemental to Name Additional Parties Defendant**" wherein and under Lahrman named and included a number of individual attorneys as defendants.

On or about February 1, 2014, Lahrman received a rather large package mailed to him from the Detroit MI law firm of Dykema Gossett PLLC. Upon opening and inspecting the package Lahrman found a letter from Attorney Hugh Ellis (attached **Exhibit A**) and a copy of this Court's December 11, 2013 Order Confirming the Debtor's Chapter 11 Plan, and a copy of the reorganization Plan approved in the Debtor's bankruptcy.

On February 4, 2014, the Elkhart County Indiana Circuit Court granted Attorney Van Bokkelen's enlargement of time to respond filed on behalf of *Ally*, and, on this very same date Attorney Jordan Huttenlocker -- from the Chicago IL law firm of Dykema Gossett PLLC -- filed an answer on behalf of *Ally* together with a copy of this Court's December 11, 2013 Order

---

1. Lahrman likens what has occurred in the home mortgage market with the scheme of fraudulent liens filed by the 'Montana Freeman' back in the mid-1990's.

confirming the Debtor's Plan and a copy of the plan itself. Attorney Huttenlocker plead the Order and Plan as an affirmative defense to the '*Action*', and she was directed by the Circuit Court to likewise formally file her appearance in the cause.

On February 10, 2014, in the '*Action*' Lahrman filed a "Notice of Misconduct By Adverse Party and Verified Motion For Sanctions" wherein Lahrman asserts that on behalf of *Ally* Attorney Hugh Ellis has engaged in the unauthorized practice of law in Indiana by holding himself out to Lahrman as an attorney participating in the '*Action*' on behalf of *Ally* and by soliciting from Lahrman his consent to an enlargement of time for *Ally* to respond in the '*Action*'. Sadly, Attorney Hugh Ellis is not licensed to practice law in the State of Indiana, he was therefore of course not an attorney of record in the '*Action*' and Lahrman owed him no response except the response that his principal, *Ally*, received.

On or about February 20, 2014, Lahrman received via Federal Express a letter from Attorney Judson D. Brown – Kirkland & Ellis LLP, Washington D.C – which advised Lahrman that *Ally* would pursue this injunction if Lahrman did not dismiss *Ally*, with prejudice, from the '*Action*'. In this letter Lahrman was given a deadline of February 25, 2014, within which to dismiss *Ally* from the '*Action*', and on or about February 28, 2014, via Federal Express Lahrman received a copy of the injunction motion from Kirkland & Ellis LLP NY, NY. On or about March 1, 2014, Lahrman was served personally with a copy of the injunction motion by a private process server who located Lahrman at the property subject of the '*Action*'.

In the interim, Attorney Kate Van Bokkelen has withdrawn her appearance for *Ally* in the '*Action*' and Attorney Huttenlocker has since filed her appearance on behalf of *Ally*.

## JURISDICTION

Lahrman does not dispute that generally, not unlike all other courts, this Court has

7

jurisdiction to enforce its own orders, decrees and judgments. This Court cannot however, by its own orders and specific retention of jurisdiction orders, expand its jurisdiction beyond the boundaries of a bankruptcy court's limited jurisdiction. *See e.g. US Commodity Futures Trading v. NRG Energy*, 457 F.3d 776 (8th Cir. 2006); *see also, Bd. of Governors v. MCorp Fin., Inc.*, 502 U.S. 32, 40, 112 S. Ct. 459, 116 L.Ed. 2d 358 (1991) [ judge of the bankruptcy court, who was then vested with "limited authority" under the jurisdictional scheme created by Congress.]; *Binder v. Price Waterhouse & Co., LLP, (In re Resorts Int'l, Inc.)* 372 F. 3d 154, 161 (3d Cir. 2004) ("[N]either the bankruptcy court nor the parties can write their own jurisdictional ticket."). Additionally and as a practical matter, claims that are not dischargeable in bankruptcy do not come within the exclusive jurisdiction of a bankruptcy court, *e.g. In Matter of CMC Heartland Partners*, 966 F.2d 1143, 1146-47 (7th Cir.1992) [obligation that "run[s] with the land" survives bankruptcy], and claims that are not discharged under a reorganization plan in bankruptcy are not subject to a bankruptcy court's retention of exclusive jurisdiction. *US Commodity Futures Trading supra.* In sum, this Court's jurisdiction and its inherent authority to issue injunctions is simply not as broad, sweeping and all encompassing as *Ally* would prefer.

## RELIEF REQUESTED

As an initial matter Lahrman asserts that this Court lacks personal jurisdiction over him; Lahrman has no minimal contacts with the State of New York and/or with this Court sitting in the Southern District; Lahrman is not and was not a "borrower" as that term is defined in the Debtors' Plan (ECF Doc. 6065-1 Plan Art. I at Plan p. ** #**); Lahrman did not receive any notices in and/or during the Debtors' bankruptcy, he filed no proof of claim asserting a pre-petition debt owed to him by the Debtors and he was therefore not a party/creditor to the Debtor's bankruptcy nor was he represented by the 'borrowers' class of participants in the

12-12020-mg    Doc 6635    Filed 03/10/14    Entered 03/10/14 15:36:43    Main Document
                                    Pg 9 of 15

bankruptcy.

*Ally's* instant motion should be dismissed and denied for lack of subject matter jurisdiction because those claims raised by Lahrman in the '*Action*' are either non-dischargeable in bankruptcy and/or the claims were not discharged by the Debtors' Plan.

*Ally's* instant motion should be dismissed and denied for lack of subject matter jurisdiction because *Ally* has waived what *Ally* now asserts is this Court's exclusive jurisdiction by raising the same issues as an affirmative defense in the '*Action*' prior to bringing their injunction motion.

*Ally's* instant motion should be dismissed and denied for lack of subject matter jurisdiction because *Ally* is in violation of both the Plan and the "Government Agreements" which are a condition precedent to the very Plan under which *Ally* seek protection. Simply put, so long as Ally violates the express terms and conditions of the Plan, then reasonably so the Plan can offer *Ally* no protection.

*Ally's* instant motion should be dismissed and denied for lack of subject matter jurisdiction because this Court has no jurisdiction over what are the post-petition and post-confirmation misconducts of Ally in the '*Action*' and before another State court.

*Ally's* instant motion should be dismissed and denied because the motion fails to state a claim upon which relief can be granted, and therefore this Court lacks subject matter jurisdiction over what is otherwise a frivolous, vexatious and harassing motion made by *Ally*.

*Ally's* instant motion should be dismissed and denied because promissory estoppel, collateral estoppel, and judicial estoppel all bar *Ally* from seeking injunctive relief against Lahrman and the '*Action*'. Simply stated, if *Ally* did not want to be sued – then *Ally* should have honored its promises under the Consent Order(s) and Consent Judgment which are conditions

9

precedent to the Debtor's Plan, and likewise honor its obligations under the Plan.[2]

*Ally's* instant motion should be dismissed and denied because *Ally* does not come before this Court, in this instance, with "clean hands".

*Ally's* instant motion should be dismissed and denied because, by acquiescing to the "Supplemental Servicing Oder" and recognizing in opposition to the establishment of a separate "Borrowers Committee" that homeowners are protected by the FRB/OCC/FDIC Consent Order(s) and the DOJ/AG Consent Judgment, *Ally* has previously waived any argument against Lahrman and his '*Action*'.

*Ally's* instant motion should be dismissed and denied because, under the 'Complaint for Damages' prong of the '*Action*' the ultimate issue to be decided in the '*Action*', in part, rests on *Ally's* non-compliance with the Consent Order(s) and Consent Judgment which are matters over which this Court has no jurisdiction to reach and/or determine.

*Ally's* instant motion should be dismissed and denied because *Ally, et al.* are actively, and currently, interfering with and in fact have usurped the statutory rights, powers, duties and functions of the FHFA conservator of Fannie Mae. Pursuant to 12 U.S.C. § 4617(f) and by Congressional Act under the Housing and Economic Recovery Act 2008 [P.L. 110-289, 122 Stat. 2654 "HERA"] this Court is prohibited from exercising its jurisdiction in any way which would facilitate *Ally's* interference with the FHFA conservatorship.

## ARGUMENT

As an initial matter Lahrman's "Petition/Action To Quiet Title" is not a claim within the

---

2. Ally is in violation of the Debtors' Release provision of the plan which requires *Ally et al.* to release its liens, transfer its claims to the liquidating trust and likewise substitute the liquidating trust into those pending causes which *Ally et al.* was continuing to prosecute. To date herein Lahrman's real property is still under attack in state court proceedings by GMAC Mortgage, LLC.

purview of § 101(5). The "Petition/Action To Quiet Title" runs with the land and is not dischargeable in bankruptcy. *In Matter of CMC Heartland Partners, supra.* Assuming that Lahrman is correct and that *Ally et al.* have no valid mortgage security to enforce, then *ipso facto* the real property subject of the '*Action*' was fraudulently join in and enmeshed within the Debtors' bankruptcy as an asset which the Debtors' did not in fact own. Evidence of Ally's knowledge concerning this particular matter is readily ascertainable in this Court's Order (ECF Doc 6065 p. 26 ¶ 2 subsection MM.) where this Court writes, "that such Intercompany Balances lack many of the indicia of true debt and enforceable claims." In sum, it is more than likely that Lahrman's real property never should have been a part of this bankruptcy at all, and simply because the Debtors have fraudulently joined Lahrman's real property to this bankruptcy does not empower *Ally et al.* to impose its Plan on Lahrman to enjoin his '*Action*'.

The "Complaint For Damages" prong of Lahrman's '*Action*' is comprised of claims which the Debtor's agreed that homeowners facing foreclosure could pursue *see In re RESIDENTIAL CAPITAL, LLC, et al., Debtors.*, 480 B.R. 550 (2012), and claims which are not discharged under the Plan, absent compliance with the "Government Agreements" which are a condition precedent to the Plan's Confirmation and enforcement, and absent compliance with the Plan itself. The claims under this prong of the '*Action*' existed pre-petition, continued post-petition and persist post-confirmation, to date and into the foreseeable future – and if it is that *Ally et al.* wishes for Lahrman to cease and desist, then too *Ally et al* should honor its previous promise to first and foremost cease and desist.

With regard to Lahrman's "Notice of Misconduct By Adverse Party and Verified Motion for Sanctions", this matter has nothing whatsoever to do with the Debtors or their related business. The matter exists exclusively post-plan-confirmation and is in no way related to the

11

Debtors' bankruptcy, nor does this matter arise in and/or under the Debtors' bankruptcy.

I hereby verify and affirm under the penalties of perjury that the foregoing facts and representations are true and within the best of my personal knowledge.

## CONCLUSION[3]

For those reason and upon those grounds set forth above, Lahrman respectfully requests that this Court enter an Order denying to Ally Financial, Inc. any and all relief requested in and under *Ally's* motion to enjoin Lahrman's pending '*Action*' in the Elkhart County Indiana Circuit Court under Case No. 20C01-1401-PL-002, and for all just and proper relief upon these premises.

Dated: March 8, 2014

_____
Timothy J. Lahrman, *pro se*

### CERTIFICATE OF SERVICE

I hereby certify that I am not an ECF/Pacer subscriber with access to electronic filing yet on March 8, 2013, via U.S. Postal Service over-night prepaid first class certified mail, return receipt requested (article #7013 1090 0001 2258 5556) I filed the foregoing pleading or paper with the Clerk of the Court who, by entering the document into the CM/ECF system will cause to be sent a copy of this filing on all parties of record who are registered in and subscriber to the CM/ECF system and identified to receive Notice in these proceedings.

_____
Timothy J. Lahrman

---

3. Because I am appearing pro se and am not an ECF/Pacer subscriber or user that benefits from the convenience of electronic filing, and because this is a cross-boarder case where I have no access to visit the Court's physical location in order to file this responsive pleading, and because service of the motion on me and the 'return date' on the motion unduly constrains my time to adequately prepare and respond, I submit the foregoing while reserving the right to supplement the same with additional authorities, memorandum and additional argument by requesting the Court to set a date, and/or timely on my own volition without waiting for the Court to set a date.

# EXHIBIT A



Dykema Gossett PLLC
400 Renaissance Center
Detroit, MI 48243
WWW.DYKEMA.COM
Tel: (313) 568-6800
Fax: (313) 568-6658

**Robert Hugh Ellis**

Direct Dial: (313) 568-5448
Direct Fax: (855) 255-1528
Email: REllis@dykema.com

Via Federal Express

January 29, 2014

Timothy J. Lahrman
3004 Garden Blvd
Elkhart, IN 46517

Re:  *Lahrman v. Green Tree Servicing, et al*
     20C01-1401-PL-002, Elkhart County, Indiana Circuit Court

Dear Mr. Lahrman:

We are writing regarding the above-captioned complaint in which you bring numerous claims against Ally Financial Inc. concerning mortgage servicing and securitization. Ally Financial Inc. is not a proper defendant in this matter. Ally Financial Inc. is not and has never been known as GMAC Mortgage, LLC, GMAC Mortgage Corp., Residential Funding, LLC, or any of the other "trade names" as alleged in your complaint. The complaint improperly conflates multiple legal entities and seeks to hold Ally Financial Inc. liable for the alleged actions and inactions of indirect subsidiaries.

As you may be aware, on December 11, 2013, the United States Bankruptcy Court for the Southern District of New York entered an order confirming the Second Amended Joint Chapter 11 Plan Proposed By Residential Capital, LLC, et al. and the Official Committee Of Unsecured Creditors. On December 17, 2013, the Effective Date of the Plan occurred, and the Plan was substantially consummated. Copies of the Plan and the Confirmation Order are attached.

Article IX,D of the Plan, entitled "Third Party Release," provides a release of all claims against the Ally Released Parties (which include Ally Financial Inc. and each of its non-debtor affiliates), including claims for tort, fraud, contract or alter ego theories of liability, "arising from or related in any way to the Debtors."[1] To the extent the Complaint in this action attempts to assert claims against Ally Financial Inc. those claims arise from and are related to the alleged actions of the Debtors. (See, e.g., Cmplt. ¶¶ 4-17)

---

[1] "Debtors" include Residential Capital, LLC and its direct and indirect subsidiaries, including GMAC Mortgage, LLC and Residential Funding Company, LLC.

# Dykema

January 29, 2014
Page 4

Article IX.I of the Plan further provides that "all Entities," which the Bankruptcy Code defines to include individuals, "are permanently enjoined and precluded" from "commencing or continuing" any action against any Released Party based on any Released Claims. Accordingly, we request that plaintiff voluntarily dismiss, with prejudice, the claims asserted against Ally Financial Inc. in the above-referenced action. If plaintiff does not do so, Ally Financial Inc. will commence proceedings in the Bankruptcy Court to enforce these provisions of the Plan.

Please contact us at the phone number above to discuss this matter. Additionally, in order for you to have time to consider this issue, we request that you agree that Ally Financial Inc. has until February 28, 2014 to answer or otherwise respond to the complaint. Please note that Ally Financial Inc. in no way suggests or concedes that the Elkhart County Circuit Court has jurisdiction to decide any issues relating to the Third Party Release.

Sincerely,

DYKEMA GOSSETT PLLC

Robert Hugh Ellis

Enclosures

***

I agree that Ally Financial Inc. has until February 28, 2014 to answer or otherwise respond to the complaint.

_____
Timothy J. Lahrman