# **EXHIBITS**

# EXHIBIT 1



Connect with Us: 

Member Sign In
For Journalists
For Bloggers
Global Sites

**Online Member Center**
Not a Member?
Click Here to Join    Login

**Search News Releases**

PR Newswire Services        Knowledge Center        Browse News Releases        Contact PR Newswire        Send a News Release



See more news releases in Banking & Financial Services | Real Estate | Bankruptcy | Legal Issues

# ResCap Liquidating Trust Announces Initial Distribution of Units and Cash on or About December 27, 2013

Share  [twitter]  [in]  [8+1]  [ More ▾ ]

MINNEAPOLIS, Dec. 24, 2013 /PRNewswire/ -- The ResCap Liquidating Trust announced today that it expects to make an initial distribution of Units of beneficial interest in the Trust and cash on or about Friday, December 27, 2013 to holders of allowed general unsecured claims in the ResCap bankruptcy case who have timely provided their brokerage information necessary to receive the Units and cash.  The Second Amended Joint Chapter 11 Plan of Residential Capital, LLC et al. was declared effective by the Bankruptcy Court on December 17, 2013.

A maximum of 100 million Units are issuable by the Trust.  The CUSIP number assigned to the Units is 760841205.

Distributions of Units will be made in the following ratios:

- For holders of claims against the ResCap Debtors: 0.014305344 Units per dollar of allowed claim.

- For holders of claims against the GMACM Debtors: 0.011848742 Units per dollar of allowed claim.

- For holders of claims against the RFC Debtors: 0.003528361 Units per dollar of allowed claim.

Based on the reserve order issued by the Bankruptcy Court, the Trust will allocate 3,619,088 Units to the Disputed Claims Reserve, which is being established for holders of currently disputed claims that may be allowed in the future.

The Trust will make an initial distribution of cash on or about December 27, 2013 of $17.65 per Unit. The cash actually received by claim holders may depend on expense deductions for their fiduciaries or professionals.

For a claim holder to receive the Units to which it is entitled under the Plan, the broker, bank or other nominee of the claim holder must initiate a DWAC transfer in accordance with the procedures of the Depository Trust Company (DTC) for the number of Units previously communicated to the nominee by the Trust.  After the transfer of Units to the DTC participant account of the nominee has been confirmed, the corresponding cash distribution will be paid by wire transfer to the account of the nominee (or in certain cases, as otherwise instructed by the claim holder).  The transfer of the Units and the cash distribution will be made by Continental Stock Transfer, the transfer agent and registrar for the Trust.

The Trust will make distributions of Units and cash to allowed claim holders who have not yet provided their brokerage information at intervals determined by the Trust, after the information is received.  The Trust will make distributions of Units and cash from the Disputed Claims Reserve to holders of disputed claims that become allowed at intervals determined by the Trust.

<u>About the ResCap Liquidating Trust</u>

The ResCap Liquidating Trust was established under the Second Amended Joint Chapter 11 Plan of Residential Capital, LLC et al. for the purpose of liquidating and distributing the assets of the debtors in the ResCap bankruptcy case.

SOURCE ResCap Liquidating Trust

**Featured Video**



Queen Of Rock, Film Star and Pop Culture Icon Courtney Love Teams with Endemol Beyond USA to Launch Her First Official Digital Channel

**Journalists and Bloggers**



**Visit PR Newswire for Journalists** for releases, photos, ProfNet experts, and customized feeds just for Media.

View and download archived video content distributed by MultiVu on The Digital Center.

Share  [twitter]  [in]  [8+1]

**Next in** Banking & Financial Services News

**Custom Packages**

Browse our custom packages or build your own to meet your unique communications needs.

Start today.

**PR Newswire Membership**

Fill out a PR Newswire membership form or contact us at (888) 776-0942.

**Learn about PR Newswire services**

Request more information about PR Newswire products and services or call us at (888) 776-0942.

About PR Newswire | Contact PR Newswire | PR Newswire's Terms of Use Apply | Careers | Privacy | Site Map | RSS Feeds | Blog
Copyright © 2014 PR Newswire Association LLC. All Rights Reserved.
A UBM plc company.
Powered by Clickability.

# EXHIBIT 2



Peter S. Kravitz (pkravitz@solutiontrust.com)                         Search V    HI, Marcu

| INBOX | CONTACTS | CALENDAR | SEARCH: Peter S. Kr... | Re: Rescap Calim # 6... |

| Compose | | Delete | | | Move | Spam | Actions |


Protect yourself
with TransUnion
Start your
Credit Score
& Report!
CLICK HERE
TransUnion

**Inbox (999+)**
**Drafts (112)**
Sent
Spam (999+)
Trash

FOLDERS
MESSENGER                2
APPLICATIONS
Photos
Attachments
Notepad

### Re: Rescap Calim # 61 Francin...        from Peter S. Kravitz        Jan 28

Mr Silver
Our records do not support your contention that this is an approved claim and that rather it still
needs to be reviewed and liquidated.
Please send me any documents supporting your position
Peter

Sent from my iPhone

On Jan 27, 2014, at 4:45 PM, "MARCUS SILVER" <marcussilver@sbcglobal.net> wrote:

Dear Mr. Kravitz,

I was hoping you would be kind enough to give an update regarding
Rescap Claim 61 for my mom Francine Silver. I spoke to Silverman
Acampora and they suggested I contact KCC. We visited KCC in El
Segundo earlier today but they said  you were the only one who could
provide this information and that some claims could take over a year.

I understand that this is a very complicated BK case and that you must
have your hands full but it is now 6 weeks after the settlement agreement
was confirmed and 4 weeks since initial payments were disbursed. The
plan does stipulate that payment should be made as soon as practicable
for approved claims and within 90 days from the date of approval for
disputed claims that become approved.

My mom's livelihood as a real estate investor was destroyed by GMAC's
on going fraudulent over-billing, refusal to abide by loan terms and
fabrication of documentation relating to a loan that they never even had a
right to service. My mom is elderly and continues to suffer financially,
physically and emotionally due to GMAC's blatant and undisputed
fraudulent actions. As her claim is an approved claim and the settlement
agreement calls for payment to be made as soon as practicable and
certainly within 90 days, could you please give a ball park idea as to
when funds will be disbursed so that she may regain some piece of mind?

Your help in answering this is greatly appreciated.

Sincerely,

Marcus Silver
310 945 6105


GUARANTEED
BUY NOW
Gillette
MACH3

# EXHIBIT 3



Dear Mr. Kravitz,

Thank you very much for the quick response.

Instead of "approved" I meant "allowed" so I apologize for any misunderstanding.

To quote the plan, *"Allowed" means, with respect to a Claim against any Debtor, except as otherwise provided herein, (a) a Claim that is (i) listed in the Schedules as of the Effective Date as neither disputed, contingent nor unliquidated, and for which no Proof of Claim has been timely filed, or (ii) evidenced by a valid Proof of Claim or request for payment of Administrative Claim, as applicable, Filed by the applicable Bar Date, and as to which the Debtors or other parties-in-interest have not Filed an objection to the allowance thereof by the Claims Objection Deadline.* Section 4.2 regarding Borrower Claims Payments states payments are to be made *"(a) As soon as practicable following the Effective Date, the Borrower Claims Trust shall make a Borrower Claims Payment to each holder of a Borrower Claim that is Allowed as of the Effective Date."*

Claim 61 satisfied the above mentioned criteria on the effective date and therefore according to my interpretation of the plan is an "Allowed Claim" and is also allowed to be paid as soon as practicably possible.

Regarding your request for documentation supporting my claim, extensive documentation was already submitted to the BK Court with the Proof of Claim Form. In case you do not have copies I will email them to you. They will include a forensic loan audit, complaints, payment history, evidence of over-billing, evidence of refusal to abide by the terms of the loan or correct billing mistakes, handwriting analysis and a ruling from a Federal Court Judge here in California finding fraud on the part of GMAC in their quest to illegally foreclose on Francine Silver. I also have evidence that shows 6 weeks after the sale of GMAC's servicing rights to OCWEN, on March 25th, a recording was made at the register's office purportedly transferring the Deed of Trust from GMAC to US Bank for valuable consideration. Fraud has been committed by GMAC since the time they first claimed to have acquired the servicing rights and apparently continued through the BK. The resulting destruction of Francine's credit and livelihood have taken a serious toll on her physically, emotionally and financially.

My documentation of on-going fraud is quite extensive and I know you are very busy so I'll try to be as concise as possible and once again I thank you and am very grateful for you taking time out regarding this claim. Please do not hesitate to let me know if I can provide any additional information.

# EXHIBIT 4







Peter S. Kravitz (pkravitz@solutiontrust.com)

Search W    HI, Marcu

| INBOX | CONTACTS | CALENDAR | SEARCH: Peter S. Kr... | | Re: Francine Silver Cl... |

Compose

Delete

Move    Spam    Actions

**Inbox (999+)**

**Re: Francine Silver Claim #61**          from Peter S. Kravitz to you          Feb 12

**Drafts (112)**

Sent

Spam (999+)

Trash

> Sir
> You are not correct with respect to claims that have not been liquidated.
> This claim is being reviewed in ordinary course
> Peter

FOLDERS                    ＋

Sent from my iPhone

MESSENGER               2

APPLICATIONS

On Feb 12, 2014, at 11:41 AM, "MARCUS SILVER" <marcussilver@sbcglobal.net> wrote:

Photos

Attachments

Notepad

Mr. Kravitz,

I am once again contacting you in an effort to find out when the "allowed" claim #61 for Francine Silver will be paid. To my understanding the settlement plan calls for payment to be disbursed to allowed claims on the confirmation date or soon as practicable thereafter. The plan was confirmed and initial payments were reported to have been disbursed back in December. It is now mid February so we are understandably anxious to know what is happening.

I noticed that on February 11th, 2014 the Borrowers Trust filed an objection to a claim by Karen Rozier for payment. In the objection the Trust argues that they have 270 days from the confirmation date to decide whether they want to allow, reduce or object to a claim. This seems to clearly contradict the provision calling for payment to be made to "allowed" claims on the effective date or soon as practicable. The agreement defines "allowed" claims as claims that were not disputed, objected to, or disallowed on the day of confirmation.

Francine is my Mother and is elderly. As a result of on-going fraud and the resulting destruction of her credit and livelihood as a real estate investor, her health has suffered and she is under continued emotional and financial distress and suffers on-going damages while the claim remains unsettled so she would like to clarify and resolve this matter as soon as practicable.

I would be very appreciative for any clarification you could give as to when the claim will be settled and whether it will actually be paid in accordance with the settlement agreements "as soon as practicable" provision and in any event within 90 days of the Dec 17th confirmation.

We need to clarify so that we can plan accordingly. I appreciate your help with this matter.

Sincerely,

Marcus Silver

1 of 1

3/2/14 5:02 PM

# EXHIBIT 5

| SENT | CONTACTS | CALENDAR | Demand Letter for Cl... |

**Compose**

**Delete**

**Inbox (999+)**

**Drafts (112)**

Sent

Spam (999+)

Trash

**FOLDERS**    ⊹

**MESSENGER**    2

**APPLICATIONS**

Photos

Attachments

Notepad



Dem...                    Feb 13



**save now**
thru 3/8



**$10.99**
43- to 60-ct. Cascade

 TARGET

DEMAND LETTER FOR PAYMENT
OF CLAIM #61 FRANCINE SILVER

Dear Mr. Kravitz.

On December 17th 2013 the Rescap
Settlement Agreement was confirmed
and became effective. The plan calls for
holders of "allowed" claims to be paid
on the effective date or soon as
practicable. The agreement clearly
defines "allowed" claims as those that
had not been objected to or contested by
the confirmation date. The plan does not
provide for an alternate interpretation of
what an "allowed" claim is. Claim #61
for Francine Silver is an "allowed"
claim as per the plan's definition and
should have been paid on the
confirmation date or as soon as
practicable. As it is now Mid February
funds should have already been
disbursed. If you have not already sent
the funds, then please do so
immediately so that we can avoid filing
a motion with the Court.

Respectfully,

Francine Silver

**<u>EXHIBIT 6</u>**

Peter S. Kravitz (pkravitz@solutiontrust.com)                    Search W        Hi, Marcu

| INBOX | CONTACTS | CALENDAR | SEARCH: Peter S. Kr... | Re: Francine Silver Cl... |

**Compose**                    **Delete**                    **Move**      **Actions**

Inbox (999+)

Drafts (112)           **Re: Francine Silver Claim #61**        from MARCUS SILVER to 1 rec        Feb 16

Sent

Spam (999+)            Where in the plan is there language to support your conclusion?

Trash                  The plan defines allowed claims and calls for their payment on the effective
                       date or as soon after as practicable. Claim # 61 is an allowed claim as defined
FOLDERS        +       and should have been paid by now.

MESSENGER      2
                       I will be sending an email to Norman Rosenbaum that will support my
APPLICATIONS           position. I will forward you a copy as well. Please take the time to review it
Photos                 and understand your responsibility to  act in accordance with principles of good
                       faith and fair dealing in administering the plan and making payments.
Attachments

Notepad                Marcus

BIG DINNER BOX
Get 2 medium pizzas and
sides—or     skip the side
and get a third medium pizz

**From:** Peter S. Kravitz <Pkravitz@solutiontrust.com>
**To:** MARCUS SILVER <marcussilver@sbcglobal.net>
**Sent:** Wednesday, February 12, 2014 11:43 AM
**Subject:** Re: Francine Silver Claim #61

Sir
You are not correct with respect to claims that have not been liquidated.
This claim is being reviewed in ordinary course
Peter

Sent from my iPhone

On Feb 12, 2014, at 11:41 AM, "MARCUS SILVER"
<marcussilver@sbcglobal.net> wrote:

> Mr. Kravitz,
>
> I am once again contacting you in an effort to find out when the
> "allowed" claim #61 for Francine Silver will be paid. To my
> understanding the settlement plan calls for payment to be disbursed to
> allowed claims on the confirmation date or soon as practicable
> thereafter. The plan was confirmed and initial payments were  reported
> to have been disbursed back in December. It is now mid February so we
> are understandably anxious to know what is happening.
>
> I noticed that on February 11th, 2014 the Borrowers Trust filed an
> objection to a claim by Karen Rozier for payment. In the objection the
> Trust argues that they have 270 days from the confirmation date to
> decide whether they want to allow, reduce or object to a claim. This
> seems to clearly contradict the provision calling for payment to be
> made to "allowed" claims on the effective date or soon as practicable.
> The agreement defines "allowed" claims as claims that were not
> disputed, objected to, or disallowed on the day of confirmation.
>
> Francine is my Mother and is elderly. As a result of on-going  fraud and
> the resulting destruction of her credit and livelihood as a real estate

Scottrade
Get Started

Consider Rolling
Over That Old
401(k) By April 15

$1,000
CASH IF YOU FUND WITH
$500,000+

$600
CASH IF YOU FUND WITH
$200,000 - $499,999

$300
CASH IF YOU FUND WITH
$100,000 - $199,999

$100
CASH IF YOU FUND WITH
$50,000 - $99,999

See Details
Member FINRA/SIPC

# **EXHIBIT 7**

Peter S. Kravitz (pkravitz@solutiontrust.com) ▮▮▮ Search ▮ HI, Marcu

| SENT | CONTACTS | CALENDAR | SEARCH: Peter S. Kr... | Re: Francine Silver Cl... | Comments on our Fri... |

| Compose | Delete | | Move | Actions | |

**Inbox (999+)**

**Drafts (112)**

Sent

Spam (999+)

Trash

FOLDERS

MESSENGER            2

APPLICATIONS

Photos

Attachments

Notepad

Comments on our Friday Discu...       from MARCUS SILVEF       Feb 16



**BIG DINNER BOX**
Get 2 medium pizzas and
sides—or ▮ ▮ skip the side
and get a third medium pizz

**Dear Norm,**

**Thanks so much for taking the time on Friday to discus the settlement plan.**

**The language describing allowed claims does seem quite clear and concise to me as does the time for payment of allowed claims so I hope we can resolve our discrepancy amicably and as intended by the plan.**

**I've taken the time to find appropriate excerpts from the plan that support my position and even though I looked diligently, I could not find anything to support your position. Nothing in 7.4 Authority of the Borrower Claims Trustee gives the right to challenge allowed claims, only disputed claims as in (xi) to settle or otherwise resolve Disputed Borrower Claims; There is no mention of having authority to object to allowed claims. ARTICLE VIII. PROCEDURES FOR RESOLVING DISPUTED CLAIMS also very specifically exempts allowed claims from further objections as outlined below.**

**My references and comments on the plan are as follows:**

**ALLOWED CLAIM**

(12-12020-mg Doc 6065-1 Filed 12/11/13 Entered 12/11/13 17:30:11 Appendix 1 Pg 8 of 265) *11.) "Allowed" means, with respect to a Claim against any Debtor, except as otherwise provided herein, (a) a Claim that is (i) listed in the Schedules as of the Effective Date as neither disputed, contingent nor unliquidated, and for which no Proof of Claim has been timely filed, or (ii) evidenced by a valid Proof of Claim or request for payment of Administrative Claim, as applicable, Filed by the applicable Bar Date, and as to which the Debtors or other parties-in-interest have not Filed an objection to the allowance thereof by the Claims Objection Deadline."*

Page 9 *(d) On or prior to the Effective Date, the Debtors shall deliver, or cause to be delivered, to the Borrower Claims Trust a complete list of all __Allowed__ Borrower Claims, including Allowed ETS Borrower Claims, Allowed Borrower Convenience Claims, if any, and Disputed Borrower Claims, reflected on the claims registry (the "Borrower Claims Register") as of the Effective Date. The list shall include the names and addresses of the holders of such Claims and, in the case of Allowed Borrower Claims, Allowed ETS*

Mar 2: Obama Reduces Amount Homeowners Owe

If you owe less than $625,000 on your home, use Obama's Refi Program. You'll be shocked when you see how much you can save.

Select Your Age:
33

Calculate New House Payment

Dear Norm,

Thanks so much for taking the time on Friday to discus the settlement plan.

The language describing allowed claims does seem quite clear and concise to me as does the time for payment of allowed claims so I hope we can resolve our discrepancy amicably and as intended by the plan.

I've taken the time to find appropriate excerpts from the plan that support my position and even though I looked diligently, I could not find anything to support your position. Nothing in 7.4 Authority of the Borrower Claims Trustee gives the right to challenge allowed claims, only disputed claims as in (xi) to settle or otherwise resolve Disputed Borrower Claims; There is no mention of having authority to object to allowed claims. ARTICLE VIII. PROCEDURES FOR RESOLVING DISPUTED CLAIMS also very specifically exempts allowed claims from further objections as outlined below.

My references and comments on the plan are as follows:

ALLOWED CLAIM

(12-12020-mg Doc 6065-1 Filed 12/11/13 Entered 12/11/13 17:30:11 Appendix 1 Pg 8 of 265) 11.) "Allowed" means, with respect to a Claim against any Debtor, except as otherwise provided herein, (a) a Claim that is (i) listed in the Schedules as of the Effective Date as neither disputed, contingent nor unliquidated, and for which no Proof of Claim has been timely filed, or (ii) evidenced by a valid Proof of Claim or request for payment of Administrative Claim, as applicable, Filed by the applicable Bar Date, and as to which the Debtors or other parties-in-interest have not Filed an objection to the allowance thereof by the Claims Objection Deadline."

Page 9 (d) On or prior to the Effective Date, the Debtors shall deliver, or cause to be delivered, to the Borrower Claims Trust a complete list of all Allowed Borrower Claims, including Allowed ETS Borrower Claims, Allowed Borrower Convenience Claims, if any, and Disputed Borrower Claims, reflected on the claims registry (the "Borrower Claims Register") as of the Effective Date. The list shall include the names and addresses of the holders of such Claims and, in the case of Allowed Borrower Claims, Allowed ETS Borrower Claims and Allowed Borrower Convenience Claims, the amounts thereof, and in the case of Disputed Borrower Claims, the amounts thereof as filed and the Estimated Amounts (if any) thereof. The list of Disputed Borrower Claims shall include the details of all objections, including filed objections and identified potential objections (if any), in respect of such the Claims.

See also Bankruptcy Rule 3021 ("after a plan is confirmed, distribution shall be made to creditors whose claims have been allowed, to interest holders whose interests have not been disallowed, and to indenture trustees who have filed claims under Rule 3003(c)(5) that have been allowed.").

11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.") (no deadline specified for objection but with regard to this case, seeing as a plan was agreed on, would be the effective date of the plan for allowed claims because amongst other reasons to be mentioned supra, calculations could not be made in the following paragraph); Bankruptcy Rule 3007(a).

2.4 Transfer of Borrower Available Assets
(a) On the Effective Date, subject to the terms of the Confirmation Order,
(i) the Liquidating Trust, in its capacity as disbursing agent for the Debtors, if such distribution is not otherwise made by the Debtors, shall transfer (I) Cash in the amount of $56,101,527,which amount represents $57,600,000 (A) less any amounts paid by the Debtors to or on behalf of the holders of Allowed Borrower Claims pursuant to settlements entered into prior to the Effective Date,

Claim # 61 satisfied the above requirements as an allowed claim on the effective date, was not objected to and is therefore an allowed claim for which settlement funding has been calculated and provided for and should by now have been disbursed. The language also confirms that allowed claims clearly existed on and even before the effective date and were not still subject to an additional approval or review by the trust which you and the Trustee now assert is required although your assertions are not supported by any language that I could find in the plan, rather they are contradicted quite clearly in the following paragraph.

(12-12020-mg Doc 6065-1 Filed 12/11/13 Entered 12/11/13 17:30:11 Appendix 1 Pg 101 of 265) ARTICLE VIII. PROCEDURES FOR RESOLVING DISPUTED CLAIMS
2. Allowance of Claims
"On or after the Effective Date, the Liquidating Trust shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim (i) deemed Allowed as of the Effective Date"

Claim # 61 was deemed allowed on the effective date. As confirmed in the above paragraph, the trust can only retain rights with regard to claims other than allowed claims. The 270 day objection does not apply to claims like # 61 which was allowed on the effective date. This is very clear and easy to understand.

The following paragraph also confirms that claims (including # 61) were "allowed" as of the effective date and do not need the additional approval or review you claim is required.

(12-12020-mg Doc 6136-3 Filed 12/17/13 Entered 12/17/13 15:16:27 Exhibit 4 - Borrower Claims Trust Agreement Pg 14 of 73)"(d) On or prior to the Effective Date, the Debtors shall deliver, or cause to be delivered, to the Borrower Claims Trust a complete list of all Allowed Borrower Claims, including Allowed ETS Borrower Claims, Allowed Borrower Convenience Claims, if any, and Disputed Borrower Claims, reflected on the claims registry (the " Borrower Claims Register") as of the Effective Date. The list shall include the names and addresses of the holders of such Claims and, in the case of

Allowed Borrower Claims, Allowed ETS Borrower Claims and Allowed Borrower
Convenience Claims, the amounts thereof, and in the case of Disputed Borrower Claims,
the amounts thereof as filed and the Estimated Amounts (if any) thereof. The list of
Disputed Borrower Claims shall include the details of all objections, including filed
objections and identified potential objections (if any)."

Your argument regarding the 270 day claims objection deadline again fails because there
would be no list of allowed claims to deliver as called for above if all claims were still
subject to review or objection. Also, if your assertion were to hold, there could be
absolutely no allowed claims on the effective date, as referenced numerous times above,
instead the claims that meet the allowed criteria would be left unresolved in some
nebulous status that is not provided for in the plan and would not be getting paid as soon
as practicable as called for. The 270 day deadline to object clearly applies only to claims
that were for some reason disputed or not allowed on the effective date and is a deadline
to stop objecting to and resolve disputed claims. It is not a grace period to renege on
approved claims. Even if the deadline were to apply to allowed claims, which it clearly
does not, the plan still calls for allowed claims to be paid on the effective date or as soon
as practicable thereafter. The following paragraph further supports the fact that objections
are to apply only to disputed claims.

P21 (b) If the Borrower Claims Trust and the holder of a Disputed Borrower Claim are
unable to reach a settlement on a Disputed Borrower Claim, or if the Borrower Claims
Trust determines to disallow a Disputed Borrower Claim, such Disputed Borrower Claim
shall be submitted to the Bankruptcy Court for adjudication by way of an objection to
such Borrower Claim.

Furthermore the logic of your argument is flawed because the holder of a disputed claim
that then becomes approved must be paid as soon as practicable and no later than 90
days. For example, if the holder of a claim that is currently disputed succeeds in having
the claim allowed this week, the claim will have to be paid within 90 days which would
be sometime in May, while holders of allowed claims might have to wait until September
or perhaps even longer. This is clearly not the intention of the settlement agreement for if
it were, it would throw the calculated reserves set up for allowed and disputed claims out
of kilter and create chaos.

The settlement plan calls for payment to be made to holders of allowed claims as soon as
practicable but it seems you want to apply the 270 day objection deadline for non
approved claims as an excuse to delay payment on allowed claims for as long as possible.
This is the opposite of what the plan calls for.

35. Plan Distributions. "On or as soon as practicable after the Effective Date, (i) Cash
distributions to holders of Allowed Administrative, Priority, Secured, ETS Unsecured
and General Unsecured Convenience Claims, the Borrower Claims Trust, the NJ
Carpenters Settlement, (ii) the issuance of Units to the RMBS Claims Trust, the Private
Securities Claims Trust, the Disputed Claims Reserve, and the holders of Allowed
Unsecured Claims (other than the Allowed Unsecured Claims otherwise provided for

under the Plan), and (iii) distributions of Distributable Cash paid by the Liquidating
Trust, shall each be effectuated in accordance with Article VII of the Plan and the
Liquidating Trust Agreement."

12-12020-mg Doc 6136-3 Filed 12/17/13 Entered 12/17/13 15:16:27 Exhibit 4 Borrower
Claims Trust Agreement Pg 20 of 73
4.2 Borrower Claims Payments. "(a) As soon as practicable following the Effective Date,
the Borrower Claims Trust shall make a Borrower Claims Payment to each holder of a
Borrower Claim that is Allowed as of the Effective Date."

(b) Each holder of a Borrower Claim that was not Allowed as of the Effective Date and
that is subsequently Allowed, in whole or in part, shall receive from the Disputed Claims
Reserve a Borrower Claims Payment in respect of such Claim following the date such
Claim becomes Allowed. Such Borrower Claims Payments shall be made at such time
and from time to time as determined by the Trust Committee, provided that a Borrower
Claims Payment shall be made no later than ninety (90) days following date on which the
respective Borrower Claim becomes Allowed.

Also, see Fed. R. Bankr. P. 3021 ("[A]fter a plan is confirmed, distribution shall be made
to creditors whose claims have been allowed, to interest holders whose interests have not
been disallowed, and to indenture trustees who have filed claims under Rule 3003(c)(5)
that have been allowed.")

The following paragraphs also confirm that claim #61 is an allowed claim, that allowed
claims can exist without further review or approval, and that Claim # 61 should have
been paid on the effective date or as soon as practicable thereafter. This paragraph also
specifically addresses conflicts and confirms that it is the Borrowers Claims Trust
Agreement that governs and trumps additional verbal conditions that you seek to attach.

(12-12020-mg Doc 6065-1 Filed 12/11/13 Entered 12/11/13 17:30:11 Appendix 1 Pg 73
of 265) "1. Borrower Claims Trust Agreement. On or before the Effective Date, the
Borrower Claims Trust Agreement, in a form reasonably acceptable to the Plan
Proponents, Ally and the Kessler Class Claimants, shall be executed, and all other
necessary steps shall be taken to establish the Borrower Claims Trust and the interests
therein, which shall be for the benefit of the holders of Allowed Borrower Claims. In the
event of any conflict between the terms of the Plan with respect to the Borrower Claims
Trust and the terms of the Borrower Claims Trust Agreement, the Borrower Claims Trust
Agreement shall govern. The Borrower Claims Trust Agreement includes: (i)
participation and qualification criteria for holders of Borrower Claims to receive a
distribution from the Borrower Claims Trust Assets, (ii) procedures for the prosecution
and settlement of objections to Borrower Claims, including those previously filed by the
Debtors or any other party, (iii) the establishment of reserves for Disputed Borrower
Claims; and (iv) the establishment of procedures to resolve Disputed Borrower Claims,
inclusive of any counterclaims or offsets in favor of the Debtors.
2. Purpose of the Borrower Claims Trust. The Borrower Claims Trust shall be established
to, among other things, (i) direct the processing, liquidation and payment of the Allowed

Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying Allowed Borrower Claims."

The above mentioned terms and conditions make it blatantly clear that claim # 61 is an allowed claim, should already have been paid and can no longer be objected to.

If you have a chance to review the proof of claim documents, you will see that Francine Silver was driven into bankruptcy and her credit and livelihood as an Investor were destroyed by GMAC's refusal to correct over-billing of $3k a month and refusal to abide by the terms of a mortgage that it became clear they never even had a right to service in the first place. The Proof of Claim contains very well documented evidence of on going fraud on the part of GMAC that has continued even through the bankruptcy. As late as March 25th, 2013 fraudulent documentation was being recorded such as the purported deed of trust being transferred from GMAC to US Bank but that was 6 weeks after the sale to OCWEN.

Francine Silver is elderly and continues to suffer financially, physically and emotionally due to being defrauded by GMAC and not having her claim settled as called for in the plan. Claims, such as elder abuse or intentional infliction of emotional distress may be outside the scope of recovery from GMAC but it now seems it is also the Trustee who is acting in bad faith and may be liable for damages if he does not immediately start to administer the plan in accordance with the agreement. (Page 31 7.7 (b) The Borrower Claims Trustee in the exercise of his or her duties hereunder shall act in accordance with principles of good faith and fair dealing.) As the Trustee is either misinformed or willfully disregarding his obligations under the plan, I am also forwarding this email to him with the hope that you will both now understand and start to abide by the terms of the agreement and settle the claim amicably, immediately and as called for in the plan.

In summary, it is very clear that claim # 61 is an allowed claim, can no longer be objected to and should have been paid on the effective date or as soon as practicable thereafter. The 270 day deadline for objections does not apply to allowed claims as very clearly mentioned in the terms of the plan above. The unreasonable delay in honoring the terms of the settlement are increasing Francine's damages so please confirm by Wednesday that the funds are being disbursed. If I do not hear back I will assume that we will neeed to have the Court affirm the plans plain language and requirement for funds to be disbursed to allowed claims.

Again, I hope we can work this out amicably and without having to waste the Courts time. Please let me know if we need to discuss further.

Best,

Marcus.