UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

RESIDENTIAL CAPITAL, LLC, *et al.*,

Debtors.

NOT FOR PUBLICATION

Case No. 12-12020 (MG)

Jointly Administered

**MEMORANDUM OPINION AND SUPPLEMENTAL ORDER OVERRULING
WITHOUT PREJUDICE THE DEBTORS' FIFTIETH OMNIBUS OBJECTION TO
CLAIM NO. 4494 OF DENNIS G. AND MARCENE L. BURGIN**

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

The *Debtors' Fiftieth Omnibus Objection to Claims (No Liability Borrower Claims – Books and Records)* (the "Objection," ECF Doc. # 5162) seeks to disallow and expunge, among other claims, Claim No. 4494 of Dennis G. and Marcene L. Burgin (the "Burgin Claim"). The Burgins' proof of claim asserts a $350,000 general unsecured claim against Residential Capital, LLC ("ResCap"). The boilerplate "books and records" Objection is supported by the Declaration of Deanna Horst (the "Horst Decl.," attached as Ex. 1 to Objection), the Declaration of Norman S. Rosenbaum (attached as Ex. 2 to Objection), and the Declaration of Robert D. Nosek (attached as Ex. 3 to Objection). The Burgins filed a response (the "Response," ECF Doc. # 5472), and the Debtors filed a reply (the "Reply," ECF Doc. # 5736), along with the Supplemental Declaration of Deanna Horst (the "Suppl. Horst Decl.," attached as Ex. 3 to Reply). The Court held a hearing on the Objection on November 15, 2013; Marcene Burgin appeared by telephone. The Court reserved decision on the Objection.

For the reasons explained below, the Objection is overruled without prejudice. The Court will schedule further proceedings to address the Burgin Claim.

**BACKGROUND**

The Burgins filed a $350,000 general unsecured proof of claim against ResCap on November 13, 2012.[1] The Burgins assert they were damaged as a result of a breach of contract by GMAC Mortgage, LLC ("GMACM"). The Burgins were parties to a 30-year access home equity line of credit ("HELOC") originated by Transcontinental Lending Group on May 22, 2007. (*See* Suppl. Horst Decl. ¶ 38.) GMACM began sub-servicing the HELOC on June 15, 2007.[2] (*Id.*)

The Burgins allege that the HELOC included a "checking account" feature, permitting them to deposit their income into the HELOC, and to withdraw money by writing checks against the account. The checking account feature "was supposed to allow the loan to be paid off much faster by lowering the interest." (Burgin Claim at 2.) When they obtained the HELOC, the Burgins' home was appraised at $570,000 and they received a $450,000 line of credit. GMACM froze the line of credit on November 12, 2008 when property values declined, reducing the Burgins' equity in their home. (Suppl. Horst Decl. ¶ 39.) The Burgins allege that this freeze "t[ied] up our funds and cripple[ed] our way of generating income." (Burgin Claim at 2.) They have since only been able to pay interest on the original loan and have been unable to pay off the principal. (*Id.*) Due to the decline in value of the Burgins' property to "the $250,000.00 range," the Burgins see no way of making payments when the loan "turns to a conventional loan in 5 years." (*Id.*) The Burgins "take responsibility for signing on the dotted line for this loan," but

---

[1] According to the Debtors, on July 9, 2013, after the Bar Date, the Burgins attempted to amend their claim by sending a letter to the Debtors' counsel, changing the $350,000.00 unsecured claim to a $450,000.00 secured claim. (Response ¶ 62 n.10.) The Burgins did not file a motion to amend their claim and no record of an amended claim appears on the claims registry maintained by the claims agent, Kurtzman Carson Consultants.

[2] Servicing of the HELOC was subsequently transferred to Macquarie Mortgage USA Inc., which is also the current investor in the Burgins' HELOC. (*Id.*) The Burgin Claim relates to the time period when GMACM serviced the loan.

2

they believe the HELOC was not "presented to the borrowers in a completely ethical manor [*sic*]." (*Id.*)

Through their Claim, the Burgins request an adjustment to their loan, allowing them "to make reasonable payments to Residential Capital and start paying on the principal," rather than going into foreclosure. (*Id.*) The Burgin Claim attaches only the first two of eleven pages of a "Home Owner's Line of Credit Agreement and Initial Disclosure Statement" (the "HELOC Agreement"), which includes information relating to: (1) the interest-only period and repayment period for the HELOC; (2) requesting advances on the loan; (3) promises to pay, minimum payments, and methods of payment; (4) the credit limit under the loan; and (5) a portion of the document relating to the annual percentage rate. The attached portion of the HELOC Agreement does not discuss checking services other than loan advances.

The Debtors' Objection does not specifically discuss the Burgin Claim; rather, the Objection includes the Burgin Claim in a category of claims for which the Debtors determined that they bear no liability based on a review of their books and records, including payment histories and internal servicing notes. (*See* Objection ¶ 22(i); *id.* at 56 of 71.)

The Burgins' Response argues that their claim should not be disallowed and expunged because GMACM "was guilty of a breach of contract when they changed the terms" of the HELOC Agreement. According to the Burgins, the HELOC Agreement did not allow GMACM "the right to remove our ability to make deposits, and corresponding withdrawals, into the checking account portion of this mortgage." (Response at 1.) "The checking account feature of this particular loan product allowed for the lowering of the principle [*sic*] balance on a fluctuating basis in direct correlation to the amount of deposits into the account, thus reducing the amount of interest owed" and "was a vehicle to facilitate an early payoff of the principle [*sic*]

3

amount." (*Id.*) The Response argues that freezing the HELOC was a breach of contract because it left the Burgins unable to use the checking account and unable to make deposits against the principal balance on the loan. Had they been allowed to continue making deposits against their principal balance over the past six years, "it is possible we could have made major strides in reducing that principle [*sic*] balance." (*Id.*)

Attached to the Response are two additional pages of the HELOC Agreement—pages five and six—and a letter to Ms. Burgin from Art Sickles, a "seasoned mortgage professional" who purportedly arranged the original loan (the "Sickles Letter," attached to the Response at 2). The Burgins argue that while paragraph 10 of the HELOC Agreement discusses GMACM's rights to "refuse to make any additional advances or reduce my Credit Limit" (HELOC Agreement ¶ 10), nothing in that paragraph allows GMACM to "restrict my ability to use the checking account feature of the loan to facilitate lowering the principle [*sic*] balance with corresponding deposits." (Response at 1.) The Burgins also assert that they never violated the terms of the HELOC Agreement. (*Id.*) The attached Sickles Letter states:

> [i]t appears to me after reviewing your disclosure documents that there were specific disclosures made regarding the closing of your line of credit (Paragraph 10.A and 10.B); however, I am unable to find any reference to the shutting down or elimination of your check writing ability or rights of access to that account as well as the reduction in interest expense brought about by the accrual of daily interest on the funds resting in said account.

(Sickles Letter.)

In the Reply, the Debtors respond that GMACM froze the HELOC because (1) the equity in the Burgins' home had declined and (2) Mr. and Ms. Burgin had fallen behind on their monthly payments. (*See* Suppl. Horst Decl. ¶ 39.) The Debtors argue that paragraph 10 of the HELOC Agreement permitted GMACM to refuse to make additional advances or to reduce the credit limit, or both, if certain conditions existed. GMACM determined that the Burgins were in

4

violation of the following conditions in paragraph 10: "(1) the value of the Property declines significantly below its appraised value for the purposes of [the] Account" and "(3) [the Burgins] were in default of any material obligation of this agreement." (HELOC Agreement ¶ 10.) GMACM sent the Burgins notice of the freeze of their HELOC on December 11, 2008,[3] as required in paragraph 10 of the HELOC Agreement. (*See* Suppl. Horst Decl. ¶ 40.) The HELOC Agreement provides that if the value of the property increased, and the borrowers were no longer in default, the borrowers could notify GMACM in writing of the changed conditions, seeking reinstatement of borrowing privileges under the HELOC Agreement. (*See* HELOC Agreement ¶ 10.) According to the Debtors, the Burgins never provided information to GMACM that would support reopening the line of credit. (Suppl. Horst. Decl. ¶ 40.) The Debtors argue that nothing in either the proof of claim or the Response rebuts the Debtors' contention that the Burgins failed to supply GMACM with the required written documentation of changed circumstances that would have obligated GMACM to reopen the HELOC. Consequently, the Debtors argue, the Burgins have not demonstrated by a preponderance of the evidence that the Burgin Claim is viable.[4]

During the November 15, 2013 hearing, Marcene Burgin argued that the Burgins were never late on their monthly payments. (Tr. Nov. 15, 2013 117:13–18.) She also reiterated the argument from the Response that while paragraph 10(A) of the HELOC Agreement gave GMACM the right to refuse to make additional advances or reduce the credit limit on their loan, "the checking account portion of this loan we feel is somewhat separated from that." (*Id.*

---

[3] As noted below, the Debtors have since indicated that this date was a typographical error and that the letter was in fact sent on November 12, 2008.

[4] As explained in the Discussion section below, the Debtors' factual and legal arguments raised for the first time in the Reply cannot support shifting the burden to the Burgins to support an otherwise proper proof of claim. The Debtors are entitled to respond to arguments raised in the Burgin Response, but they still must have carried their burden in the Objection to shift that burden to the Burgins. Furthermore, the Debtors' Reply did not address the Burgins' contentions that their access to the checking account feature was improperly frozen.

117:22–23.) According to Ms. Burgin, she and her husband never requested additional funds, but "nowhere in the disclosure does it give GMAC the right to take away our right to . . . make deposits against our principal." (*Id.* 117:24–118:4.) Ms. Burgin argued that by freezing the HELOC account, GMACM took away the "liquid cash flow that we were using to make investments and live our daily life," taking away their ability to "pay [their] bills." (*Id.* 118:4–7.) The Debtors' counsel responded that the HELOC Agreement permitted GMACM to freeze the Burgins' line of credit because the Burgins' property declined in value; but counsel did not address the Burgins' argument that they were wrongfully denied the ability to make deposits or withdrawals from the checking account feature of the HELOC. (*Id.* 119:6–20.)

On January 23, 2014, the Court entered the *Supplemental Order Requiring Additional Documentation Regarding Debtors' Fiftieth Omnibus Objection to Claims (No Liability Claims – Books and Records) With Respect to Claim 4494 of Dennis G. and Marcene L. Burgin* (the "Supplemental Order," ECF Doc. # 6349). The Supplemental Order directed the Debtors to provide (1) the full copy of the HELOC Agreement and (2) the December 11, 2008[5] letter (providing notice freezing the HELOC) sent by GMACM to the Burgins described in paragraph 40 of the Supplemental Horst Declaration. (Supplemental Order at 2.) The Debtors then filed the *Declaration of Deanna Horst in Further Support of the Debtors' Fiftieth Omnibus Objection to Claim No. 4494 of Dennis G. and Marcene L. Burgin* (the "Horst Document Decl.," ECF Doc. # 6446), attaching a full copy of the HELOC Agreement (Exhibit A), Servicing Notes from November 19, 2008 regarding the suspension of the Burgins' loan (Exhibit B-2), and an unaddressed boilerplate suspension letter entitled "Important Notice of Account Suspension Resulting From Decreased Property Value" (Exhibit C) that the Debtors maintain was sent to the

---

[5] The Debtors note that prior filings erroneously stated that the letter was sent on December 11, 2008. The Debtors maintain that, in fact, the letter was sent on November 12, 2008.

6

Burgins. (Horst Document Decl. ¶ 6.) The Debtors did not locate the December 11, 2008 letter allegedly sent by GMACM to the Burgins described in the Supplemental Declaration of Deanna Horst; but they assert that the Servicing Notes indicate that the letter was sent on November 12, 2008. (*Id.*) According to Horst, the unaddressed letter was sent to the Burgins as part of a mass mailing to approximately 100 borrowers. (*Id.* ¶ 7.) The letter indicates that the HELOC account was "temporarily suspended" due to a decline in property value, with the following consequences: (1) no additional advances would be made to the HELOC account; (2) debit transactions (including checks and access card transactions) on or after November 12, 2008 would be refused and returned unpaid; (3) the Burgins would continue to receive their normal monthly statements and would be required to continue making payments on any outstanding balance on the HELOC account; and (4) if the Burgins used an "automatic payment program," that service would continue. (*Id.* Ex. C.) The letter also indicated that the Burgins could request reinstatement of their HELOC account in accordance with the terms of the HELOC Agreement. (*Id.*) The letter does *not* assert that the Burgins were late on any payments. (*Id.*)

## DISCUSSION

Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim." 11 U.S.C. § 501(a). "The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes prima facie evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)." 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2013). Section 502(a) provides that a properly filed claim "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If an objection is made, the court shall determine the amount of such claim "as of the filing date." *In re Solutia, Inc.*, 379 B.R. 473, 483 (Bankr. S.D.N.Y.

7

2007) (citation omitted). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000). Section 502(b)(1) provides, in relevant part, that a claim may not be allowed to the extent that "such a claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." 11 U.S.C. § 502(b)(1).

Claims objections have a shifting burden of proof. Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Reilly*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). The objecting party is thereafter required to produce evidence equal in force to that provided by the claimant to rebut the presumption of the claimant's prima facie case. *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) ("In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."). Once this is done, the burden then shifts back to the claimant to produce additional evidence to prove the validity of the claim by a preponderance of the evidence. *Id.* at 174.

The Debtors objected to the Burgin Claim against ResCap as a general no liability claim and submitted the Declarations of Deanna Horst, Norman S. Rosenbaum, and Robert D. Nosek in support of the Objection. Given the nature of the Burgin Claim, however, the Objection was insufficient to shift the burden back to the Burgins. The Debtors did not include the HELOC

8

Agreement in the Objection and did not present evidence specifically addressing the Burgins' contentions—contained in the proof of claim—that they were unable to deposit funds into the frozen account. Consequently, the Objection is **OVERRULED WITHOUT PREJUDICE**.

Although the Debtors did not shift the burden to the Burgins with the Objection, there are a number of issues raised by the Burgin Claim in the subsequent filings that warrant further discussion. The Burgins maintain that the Debtors are not entitled to refuse payment through the checking account feature of their HELOC Agreement. (Response at 1.) The Burgins further allege that as a result of the Debtors' refusal to accept payment on their principal loan obligations through the Burgins' checking account feature of their HELOC Agreement, the Burgins were unable to make payments that would enable them to lower the loan balance and, thereby, reduce additional accrued interest. (*Id.*)

Though the Debtors provided additional detail in the Reply shedding some light on the nature of the HELOC Agreement, the Debtors did not present evidence or argument refuting the Burgins' contention that they were wrongfully prevented from depositing money *into* what they describe as the checking account feature of the HELOC after their line of credit was frozen. While paragraph 10 of the HELOC Agreement permitted GMACM under certain circumstances to refuse to make additional loan advances (a point the Burgins admit), the Debtors provided no evidence or argument refuting the Burgins' contention that the Debtors refused to permit the Burgins to deposit money into the account.[6]

---

[6]   The issue here concerns the so-called "checking account" feature of the HELOC, which is not adequately explained by the Debtors. Under the HELOC program, the Burgins were issued checks they could write against their HELOC account. From a review of the HELOC Agreement, it appears that each check written by the Burgins was an advance against the line of credit, increasing the loan balance; when the HELOC was frozen, preventing any new loan advances, the Burgins could not write checks against the account. But the Burgins also allege that they were not permitted to deposit funds into the account, preventing them from reducing the loan balance. This allegation (which is unrebutted) is somewhat strange because the HELOC Agreement *required* the Burgins to make minimum loan payments each month (and permitted larger payments) to reduce the loan balance. The Burgins appear to acknowledge that they continued to make required loan repayments.

9

The November 12, 2008 letter fails to shed further light on this question.  Assuming that GMACM sent the boilerplate service letter to the Burgins, the letter merely states that "[d]ebit transactions, including all checks and access card transactions, presented for payment from this Account . . . will be refused and returned unpaid."  (Horst Document Decl., Ex. C.)  Paragraph 10(B) of the HELOC Agreement provides that, should the value of the Burgins' property decline significantly, the Debtors may "refuse to make any *additional* advances or reduce [the Burgin's] Credit Limit or do both." (Horst Document Decl., Ex. A) (emphasis added).  Neither the November 12, 2008 letter nor the HELOC Agreement address "deposits" *into* the account.  Paragraph 3(G) of the HELOC Agreement permitted GMACM to apply the Burgins' payments "in any order [the Debtors] choose."  But it is not clear whether the Debtors were entitled to refuse payments through the checking account feature altogether if there was not a credit balance, or if there was any such method for paying off the principal balance of the HELOC.

At this stage of the proceeding, on the present record, it is unclear what really transpired here.  It may well be that if the Burgins had an outstanding balance on their line of credit, and then "deposited" funds into their account, those funds reduced the loan balance; but the deposit then became property of the Debtors.  And, as long as the line of credit was frozen, the Burgins could not write checks against the account since payment of each check would be a new advance.  But if the monthly deposits by the Burgins exceeded the minimum required payment, could the Burgins write checks on the account at least up to the amount of the excess deposits?  It is unclear if this is what the Burgins are complaining about; the Burgins appear to contend that they were denied the opportunity to deposit funds altogether.  The Debtors have not addressed these issues in the Objection or the Reply.  Consequently, the Court concludes based on the

10

present record that the Debtors have not adequately rebutted the Burgins' claim for damages based on an inability to access the HELOC checking account.

The Debtors' Reply also injected another new issue of fact whether the Burgins were ever in default in making their required monthly payments. The Debtors allege the Burgins were late on payments; the Burgins maintain they were not. This is a disputed material issue of fact since the Debtors argue that the Burgins' payment default permitted the Debtors to freeze the line of credit. If the Burgins failed to make required payments, paragraphs 11(A)(1) and 11(B)(1) of the HELOC Agreement permitted GMACM to terminate any of the Burgins' rights under the agreement. The Debtors argue, however, that they acted pursuant to paragraph 10, and not paragraph 11.

## CONCLUSION

The Debtors' boilerplate books and records Objection fails to rebut at least one essential element of the Burgin Claim. Therefore, the Objection is O**VERRULED WITHOUT PREJUDICE**. The Court will schedule a telephone conference with the parties to determine how to proceed to resolve the issues raised by the Burgin Claim.

**IT IS SO ORDERED.**

Dated: March 17, 2014
      New York, New York

                                      **_/s/Martin Glenn_**
                                      MARTIN GLENN
                          United States Bankruptcy Judge