Jacqueline A. Warner, Creditor Claimant for Claim 3502
Mailing and Service Address:
3053 West Craig Road E-155
North Las Vegas, NV 89032
650-520-5596 / email: h7890p@yahoo.com

MAR 1 4 2014

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____X
In Re:

RESIDENTIAL CAPITOL, LLC, et al                    Chapter 11
                                                    Case No: 12-12020-mg
                        Debtor.
_____X

### JACQUELINE A. WARNER CREDITOR'S CLAIM 3502

### RESPONSE TO U.S. BANKRUPTCY JUDGE MARTIN GLENN'S COURT ORDER DATED MARCH 4, 2014  REQUIRING PARTIES TO SUBMIT SUPPLEMENTAL BRIEFING AND

### CLAIMANT'S REQUEST FOR DECLARATORY JUDGMENT AND WRIT OF REPLEVIN

**TO:    THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

1.    Claimant responds to the Honorable Judge Martin Glenn's order dated March 4, 2014

*"REQUIRING PARTIES TO SUBMIT SUPPLEMENTAL BRIEFING addressing whether*

*15 U.S.C  § 1635(e), 12 C.F.R § 226.15(f) and/or 12 C.F.R. §226.23(f) are relevant to the*

*merits of Claim 3502. Specifically, the parties are directed to address: (1) whether Ms.*

*Warner's loan was a purchase money mortgage for the claimant's primary dwelling (i.e.*

*did Ms Warner use the loan to acquire her primary residence?) and (2) whether the above-*

CREDITOR JACQUELINE ANNE WARNER IN RESPONSE TO U.S. BANKRUPTCY JUDGE MARTIN GLENN'S COURT
ORDER DATED MARCH 4, 2014   SUPPORT OF CLAIMANT'S OPPOSITION TO DEBTOR'S OMNIBUS REPLY IN
SUPPORT OF DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DEBTORS FIFTIETH OMNIBUS OBJECTION TO CLAIMS
(NO LIABILITY BORROWER'S CLAIMS- BOOKS AND RECORDS) AND
CLAIMANT'S REQUEST FOR DECLARATORY JUDGMENT AND WRIT OF REPLEVIN

1

*cited statutory and regulatory provisions precluded Ms. Warner from rescinding her loan."*

(1)   whether Ms. Warner's loan was a purchase money mortgage for the claimant's primary dwelling (i.e., Did Ms. Warner use the loan to acquire her primary resident?) and...

2.    To address  (1) see Claimant's Affidavit **(Exhibit 1)**, Marriage of Warner File – F079400 Judgment and Marital Settlement Agreement (MSA) page 15,  X. EQUALIZING PAYMENT/FAMILY RESIDENCE/EXCEPTION TO WAIVERS states in A..." Husband shall sign an Interspousal Transfer Deed, see Claimant's Affidavit **(Exhibit 2)** transferring any and all interest that he would otherwise have in the residence located at 10 Emerald Lake Place, Redwood City, California 94062. **Therefore, the CMG/GMAC loan was a non-purchase event as the family residence was already Ms. Warner's.**

3.    Also, C, page 15 of MSA. " In the event that she (wife) is unable to retain (WFB loan), she will refinance the mortgage solely in her own name." See Claimant's Affidavit **Exhibit 1 and 3,** Full Reconveyance from Wells Fargo Home Mortgage as referred to in MSA. **Therefore, the CMG/GMAC loan was a refinance of a previous WFB loan and CMG/GMAC are not the same creditor as previous lender (WFB).**

(2.) Regarding whether 15 U.S.C. 1635(f), 12 C.F.R. 226.15 and/or 12 C.F.R. 226.23(f) preclude Ms. Warner from rescinding her loan.

4.    To clarify whether the loan was open-end credit per 12 C.F.R. 226.15 or closed-end credit per 12 C.F.R. 226.23, See Claimant's Affidavit, **Exhibit 4,** Legal Opinion Letter clarifying "maturity date" defines Home Equity Line of Credit as closed-end credit. **Claimant's loan had a maturity date of November 2037, therefore, 12 C.F.R. 226.15 does not apply.** See **Exhibit 5,** Good Faith Estimate.

CREDITOR JACQUELINE ANNE WARNER IN RESPONSE TO U.S. BANKRUPTCY JUDGE MARTIN GLENN'S COURT ORDER DATED MARCH 4, 2014  SUPPORT OF CLAIMANT'S OPPOSITION TO DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DEBTORS FIFTIETH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER'S CLAIMS- BOOKS AND RECORDS) AND CLAIMANT'S REQUEST FOR DECLARATORY JUDGMENT AND WRIT OF REPLEVIN

2

5.     In addition, 12 C.F.R.226.2(a)(10) and (20) in Regulation Z defines "closed-end credit" as any consumer credit other than open-end credit. **Therefore, Ms. Warner's loan was a closed-end credit per 12 C.F.R. 226.2 and rescindable under 12 C.F.R. 226.23.**

6.     <u>**RE: 12 C.F.R 226.23(f) Exempt transactions. The right to rescind does not apply to the following:**</u>

    **(1)** residential mortgage transaction. As previously shown, **Ms. Warner's loan was a non-purchase; not an acquisition or construction loan.**

    **(2)** A refinancing or consolidation by the ***same creditor*** of an extension of credit already secured by the consumer's principal dwelling. WFB was the previous lender, and subject loan was by CMG/GMAC and they are not the **same creditor. See Claimant's Affidavit (Exhibit 1)** MSA. **Therefore, this does not apply in this case.**

    **(3)** A transaction in which a state agency is a creditor. This does not apply as CMG/GMAC are not a state agency.

    **(4)** An advance, other than an initial advance, in a series of advances or in a series of single-payment obligations that is treated as a single transaction under 226.17(c)(6), **if the notice required by paragraph(b) of this section and all material disclosures have been given to the consumer**; As not all material disclosures were given to Ms. Warner, as evidenced in Claimant's Affidavit, **Exhibit 3, 3B in Claimant's Reply 3/3/14**, Forensic First Rept, **(4) does not apply in this case.**

    **(5)** A renewal of optional insurance premiums that is not considered a refinancing per 226.20 (a)(5). No optional insurance of any kind was purchased by consumer, Ms. Warner.

7.     <u>**RE: Whether 15 U.S.C. 1635(e) precluded Ms. Warner from rescinding her loan:**</u>

    **15 U.S.C. 1635(e) Exempted transactions: reapplication of provisions. This section does not apply to:**

      **(1)** residential mortgage transaction which is for acquisition or construction. **This does not apply to Ms. Warner's loan see Claimant's Affidavit, Exhibit 1.**

      **(2)** transaction which constitutes a refinancing or consolidation (with no new advances) of the Principle balance then due and any accrued and unpaid finance charges of an existing

CREDITOR JACQUELINE ANNE WARNER IN RESPONSE TO U.S. BANKRUPTCY JUDGE MARTIN GLENN'S COURT ORDER DATED MARCH 4, 2014  SUPPORT OF CLAIMANT'S OPPOSITION TO DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DEBTORS FIFTIETH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER'S CLAIMS- BOOKS AND RECORDS) AND CLAIMANT'S REQUEST FOR DECLARATORY JUDGMENT AND WRIT OF REPLEVIN

3

Extension of credit by the same creditor secured by an interest in the same property. **This does not apply as Wells Fargo Bank and CMG/GMAC are not the same creditor.**

(3)…transaction in which an agency of a State is the creditor. **This does not apply as Wells Fargo Bank (WFB)/CMG/GMAC are not State creditors.**

(4) An advance, other than an initial advance, in a series of advances or in a series of single-payment obligations that is treated as a single transaction under 226.17(c)(6) **if** the notice required by paragraph(b) of this section and all material disclosures have been given to the consumer. As not all material disclosures were given to Ms. Warner, as evidenced in **Exhibit 3, 3B** in Claimant's reply 3/3/2014, Forensic First Report, therefore, **(4) does not apply to Claimant because material disclosures were not given to Claimant and issue is closed by res judicata.**

8. Claimant hereby makes this response and incorporates Claimant's Affidavit with attached Exhibits therein by this reference that constitutes new evidence in this Claim 3502 or any Amendment hereto.

9. Affiant incorporates the earlier Claimant's Affidavit in support of "OPPOSITION TO DEBTOR'S OMNIBUS REPLY …" Court Doc 5454 herein for all purposes.

10. Claimant's loan rescission is *res judica* due to the Debtor ('s) default in non performance under § 226.23(d)(1)(2)(3) and for not filing an objection action within the twenty (20) day performance period and therefore forever giving up any claim, defense, objection or rebuttal by default. Claimant reserves closure of the default and does not consent to open it to rebuttal or renegotiation subject to any new agreement and hereby makes this response as evidence for clarification within the existing closed default:

11. Claimant's response to (2): the cited statutory and regulatory provisions 15 U.S.C §1635(e), 12 C.F.R § 226.15(f) and/or 12 C.F.R. §226.23(f) did <u>not</u> preclude Claimant from

CREDITOR JACQUELINE ANNE WARNER IN RESPONSE TO U.S. BANKRUPTCY JUDGE MARTIN GLENN'S COURT ORDER DATED MARCH 4, 2014  SUPPORT OF CLAIMANT'S OPPOSITION TO DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DEBTORS FIFTIETH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER'S CLAIMS- BOOKS AND RECORDS) AND CLAIMANT'S REQUEST FOR DECLARATORY JUDGMENT AND WRIT OF REPLEVIN

4

rescinding her loan as answered in this response.

12.   Claimant attaches further evidence in support of the above attached here as Exhibit 1, 2, 3, 4, 5.

**THEREFORE,** the Claimant request that this court take the above laws, statements, facts and evidence referenced herein and in the accompanying Affidavit of Jacqueline A. Warner, including the attached Exhibits, and determine if this Claim qualifies as a secured Claim with merit and if so grant Claimant's Claim 3502 and issue a Writ of Replevin for the prosecution and collection of the Claim.

**Thank you sincerely for your time and attention.**

IN WITNESS WHEREOF I hereunto set my hand and seal on this 13th day of March 2014, and hereby certify, swear and affirm under the law of the United States of America that all the statements made above are true, correct and complete based on my personal knowledge, information and belief.

All Rights Reserved Without Prejudice, Under Reserve U. C. C.

Date: 3/13/2014   Affiant: _Jacqueline C. Warner_ (Seal)

Jacqueline A. Warner

**JURAT**

State of Nevada          )
                                        ) ss:
County of Clark           )

Subscribed and sworn to (or affirmed) before me on this _13_ day of _March_ , 2014 by _Jacqueline A. Warner_ , proved to me on the basis of satisfactory evidence t the person who appeared before me.

_Denise Taylor_ (seal)
Print / _Denise Taylor_          NOTARY Signature

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
DENISE TAYLOR
No 12-8118-1
My Appointment Expires July 30, 2016

CREDITOR JACQUELINE ANNE WARNER IN RESPONSE TO U.S. BANKRUPTCY JUDGE MARTIN GLENN'S COURT ORDER DATED MARCH 4, 2014   SUPPORT OF CLAIMANT'S OPPOSITION TO DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DEBTORS OMNIBUS REPLY IN SUPPORT OF DEBTORS FIFTIETH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER'S CLAIMS- BOOKS AND RECORDS) AND CLAIMANT'S REQUEST FOR DECLARATORY JUDGMENT AND WRIT OF REPLEVIN

1    Jacqueline A. Warner, Creditor Claimant for Claim 3502

2    Mailing and Service Address:
3053 West Craig Road E-155

3    North Las Vegas, NV 89032
650-520-5596 / email: h7890p@yahoo.com

4

                                     MAR 1 4 2014

5    UNITED STATES BANKRUPTCY COURT

6    SOUTHERN DISTRICT OF NEW YORK

    _____X

7    In Re:

8

9    RESIDENTIAL CAPITOL, LLC, et al            Chapter 11
                                      Case No: 12-12020-mg

10                      Debtor.

    _____X

11

12                                **AFFIDAVIT**

13    **OF JACQUELINE A. WARNER'S IN SUPPORT OF: CREDITOR'S CLAIM 3502**
     **AND RESPONSE TO U.S. BANKRUPTCY JUDGE MARTIN GLENN'S**

14      **COURT ORDER DATED MARCH 4, 2014  REQUIRING PARTIES TO**
             **SUBMIT SUPPLEMENTAL BRIEFING**

15                                     **IN**

16    **CLAIMANT'S OPPOSITION TO DEBTOR'S OMNIBUS REPLY**
                     **IN SUPPORT OF**

17    **DEBTORS FIFTIETH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY**
   **BORROWER'S CLAIMS- BOOKS AND RECORDS) AND CLAIMANT'S REQUEST FOR**

18        **DECLARATORY JUDGMENT AND WRIT OF REPLEVIN**

19

20    1.     TO ALL CONCERNED the undersigned Affiant, Jacqueline Anne Warner does solemnly swear,

21       declare and state as follows:

22

23    2.    Affiant is competent to state the matters set forth herein.

24    3.    Affiant has personal knowledge of the facts stated herein.

25    4.    Those matters of law or not within the personal knowledge of Affiant are based upon information,

26       belief and public record.

27

AFFIDAVIT OF CREDITOR JACQUELINE ANNE WARNER IN RESPONSE TO U.S. BANKRUPTCY JUDGE MARTIN
GLENN'S COURT ORDER DATED MARCH 4, 2014  SUPPORT OF CLAIMANT'S OPPOSITION TO DEBTOR'S
OMNIBUS REPLY IN SUPPORT OF DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DEBTORS FIFTIETH OMNIBUS
OBJECTION TO CLAIMS (NO LIABILITY BORROWER'S CLAIMS- BOOKS AND RECORDS) AND
CLAIMANT'S REQUEST FOR DECLARATORY JUDGMENT AND WRIT OF REPLEVIN

5. All the facts herein are true, correct and complete, admissible as evidence and if called upon as a witness, Affiant will testify to their veracity.

6. Claimant has reserved all Rights.

7. Claimant hereby makes this Affidavit with attached Exhibits incorporated herein that constitutes new evidence in this Claim 3502 or any Amendment thereto. Affiant incorporates the earlier Claimant's Affidavit in support of "OPPOSITION TO DEBTOR'S OMNIBUS REPLY Doc 5454 herein for all purposes. Claimant respectfully sets forth Affiant's request for declaratory judgment and writ of replevin as follows:

8. Claimant's loan rescission is *res judica* due to the Debtor('s) default in non performance under § 226.23(d)(1)(2)(3) and for not filing an objection action within the twenty (20) day performance period and therefore forever gave up any claim, defense, objection or rebuttal by default. Claimant reserves closure of the default and does not consent to open it to renegotiation subject to any new agreement and hereby makes this response as evidence for clarification within the existing closed default. Note: in Claimant's earlier filing § 226.15(d)(1)(2)(3), is corrected to mean and refer to § 226.23(d)(1)(2)(3) which was used in the 06/29/2009 loan rescission to the Debtor(s).

9. Claimant responds to the Honorable Judge MARTIN GLENN'S ORDER dated March 4, 2014 *"REQUIRING PARTIES TO SUBMIT SUPPLEMENTAL BRIEFING addressing whether 15 U.S.C § 1635(c), 12 C.F.R § 226.15(f) and/or 12 C.F.R. §226.23(f) are relevant to the merits of Claim 3502. Specifically, the parties are directed to address: (1) whether Ms Warner's loan was a purchase money mortgage for the claimant's primary dwelling (i.e. did Ms Warner use the*

AFFIDAVIT OF CREDITOR JACQUELINE ANNE WARNER IN RESPONSE TO U.S. BANKRUPTCY JUDGE MARTIN GLENN'S COURT ORDER DATED MARCH 4, 2014  SUPPORT OF CLAIMANT'S OPPOSITION TO DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DEBTORS FIFTIETH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER'S CLAIMS- BOOKS AND RECORDS) AND CLAIMANT'S REQUEST FOR DECLARATORY JUDGMENT AND WRIT OF REPLEVIN

2

1   *loan to acquire her primary residence?) and (2) whether the above-cited statutory and*

2   *regulatory provisions precluded Ms. Warner from resending her loan."*

3

4   10.   (1)   <u>whether Ms. Warner's loan was a purchase money mortgage for the claimant's primary

5            dwelling (i.e., Did Ms. Warner use the loan to acquire her primary resident?) and...</u>

6   To address  (1) see Claimant's **(Exhibit 1)**, Marriage of Warner File – F079400 Judgment

7   and Marital Settlement Agreement (MSA) page 15,  <u>X. EQUALIZING PAYMENT/FAMILY

8   RESIDENCE/EXCEPTION TO WAIVERS</u> states in A..." Husband shall sign an Interspousal

9   Transfer Deed, see Claimant's Affidavit **(Exhibit 2)** transferring any and all interest that he would

10  otherwise have in the residence located at 10 Emerald Lake Place, Redwood City, California 94062.

11

12  **Therefore, the CMG/GMAC loan was a non-purchase event as family residence was already**

13  **Ms. Warner's.**     Also, C, page 15 of MSA. " In the event that she (wife) is unable to retain (WFB

14  loan), she will refinance the mortgage solely in her own name." See Claimant's **Exhibit 1 and 3,** Full

15  Reconveyance from Wells Fargo Home Mortgage as referred to in MSA. **Therefore, the**

16  **CMG/GMAC loan was a refinance of a previous WFB loan and CMG/GMAC are not the same**

17

18  **creditor as previous lender.**

19     (2.)<u>Regarding whether 15 U.S.C. 1635(f), 12 C.F.R. 226.15 and/or 12 C.F.R. 226.23(f) preclude

20            Ms. Warner from rescinding her loan.</u>

21  To clarify whether the loan was open-end credit per 12 C.F.R. 226.15 or closed-end credit

22  per 12 C.F.R. 226.23, See **Exhibit 4,** Legal Opinion Letter clarifying "maturity date" defines Home

23  Equity Line of Credit as closed-end credit. **Claimant's loan had a maturity date of November**

24

25  **2037, therefore, 12 C.F.R. 226.15 does not apply.**  See **Exhibit 5,** Good Faith Estimate.

26  In addition, 12 C.F.R.226.2(a)(10) and (20) in Regulation Z defines "closed-end credit" as any

27

AFFIDAVIT OF CREDITOR JACQUELINE ANNE WARNER IN RESPONSE TO U.S. BANKRUPTCY JUDGE MARTIN
GLENN'S COURT ORDER DATED MARCH 4, 2014   SUPPORT OF CLAIMANT'S OPPOSITION TO DEBTOR'S
OMNIBUS REPLY IN SUPPORT OF DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DEBTORS FIFTIETH OMNIBUS
OBJECTION TO CLAIMS (NO LIABILITY BORROWER'S CLAIMS- BOOKS AND RECORDS) AND
CLAIMANT'S REQUEST FOR DECLARATORY JUDGMENT AND WRIT OF REPLEVIN

consumer credit other than open-end credit. **Therefore, Ms. Warner's loan was a closed-end credit per 12 C.F.R. 226.2 and rescindable under 12 C.F.R. 226.23**.

**RE: 12 C.F.R 226.23(f) Exempt transactions. The right to rescind does not apply to the following:**

(1) residential mortgage transaction. As previously shown, **Ms. Warner's loan was a non-purchase; not an acquisition or construction loan.**

(2) A refinancing or consolidation by the *same creditor* of an extension of credit already secured by the consumer's principal dwelling. WFB was the previous lender, and subject loan was by CMG/GMAC and they are not the **same creditor. See Claimant's Affidavit (Exhibit 1) MSA. Therefore, this does not apply in this case.**

(3) A transaction in which a state agency is a creditor. This does not apply as CMG/GMAC are not a state agency.

(4) An advance, other than an initial advance, in a series of advances or in a series of single-payment obligations that is treated as a single transaction under 226.17(c)(6), **if the notice required by paragraph(b) of this section and all material disclosures have been given to the consumer**; As not all material disclosures were given to Ms. Warner, as evidenced in Claimant's Affidavit, **Exhibit 3, 3B in Claimant's Reply 3/3/14**, Forensic First Rept, **(4) does not apply in this case.**

(5) A renewal of optional insurance premiums that is not considered a refinancing per 226.20 (a)(5). No optional insurance of any kind was purchased by consumer, Ms. Warner.

**RE: Whether 15 U.S.C. 1635(e) precluded Ms. Warner from rescinding her loan:**

**15 U.S.C. 1635(e) Exempted transactions: reapplication of provisions.  This section does not apply to:**

(1) residential mortgage transaction which is for acquisition or construction. **This does not apply to Ms. Warner's loan see Claimant's Affidavit, Exhibit 1.**

(2) transaction which constitutes a refinancing or consolidation (with no new advances) of the Principle balance then due and any accrued and unpaid finance charges of an existing Extension of credit by the same creditor secured by an interest in the same property. **This does not apply as Wells Fargo Bank and CMG/GMAC are not the same creditor.**

AFFIDAVIT OF CREDITOR JACQUELINE ANNE WARNER IN RESPONSE TO U.S. BANKRUPTCY JUDGE MARTIN GLENN'S COURT ORDER DATED MARCH 4, 2014  SUPPORT OF CLAIMANT'S OPPOSITION TO DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DEBTORS FIFTIETH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER'S CLAIMS- BOOKS AND RECORDS) AND CLAIMANT'S REQUEST FOR DECLARATORY JUDGMENT AND WRIT OF REPLEVIN

4

(3)…transaction in which an agency of a State is the creditor. **This does not apply as Wells Fargo Bank (WFB)/CMG/GMAC are not State creditors.**

(4)  An advance, other than an initial advance, in a series of advances or in a series of single-payment obligations that is treated as a single transaction under 226.17(c)(6) **if** the notice required by paragraph(b) of this section and all material disclosures have been given to the consumer.  As not all material disclosures were given to Ms. Warner, as evidenced in **Exhibit 3, 3B** in Claimant's reply 3/3/2014, Forensic First Report, therefore, **(4) does not apply to Claimant because material disclosures were not given to Claimant and issue is closed by res judicata.**

11.  Claimant hereby makes this response and incorporates Claimant's Affidavit with attached Exhibits therein by this reference that constitutes new evidence in this Claim 3502 or any Amendment hereto.

12.  Affiant incorporates the earlier Claimant's Affidavit in support of "OPPOSITION TO DEBTOR'S OMNIBUS REPLY…" Court Doc 5454 herein for all purposes.

13.  Claimant's loan rescission is *res judica* due to the Debtor ('s) default in non-performance under § 226.23(d)(1)(2)(3) and for not filing an objection action within the twenty (20) day performance period and therefore forever giving up any claim, defense, objection or rebuttal by default. Claimant reserves closure of the default and does not consent to open it to rebuttal or renegotiation subject to any new agreement and hereby makes this response as evidence for clarification within the existing closed default:

14.  Claimant's response to (2): the cited statutory and regulatory provisions 15 U.S.C  § 1635(e), 12 C.F.R § 226.15(f) and/or 12 C.F.R. §226.23(f) did <u>not</u> preclude Claimant from rescinding her loan as answered in this response.

Claimant attaches further evidence in support of the above attached here as Exhibits 1, 2, 3, 4, 5.

AFFIDAVIT OF CREDITOR JACQUELINE ANNE WARNER IN RESPONSE TO U.S. BANKRUPTCY JUDGE MARTIN GLENN'S COURT ORDER DATED MARCH 4, 2014  SUPPORT OF CLAIMANT'S OPPOSITION TO DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DEBTORS FIFTIETH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER'S CLAIMS- BOOKS AND RECORDS) AND CLAIMANT'S REQUEST FOR DECLARATORY JUDGMENT AND WRIT OF REPLEVIN

IN WITNESS WHEREOF I hereunto set my hand and seal on this 13th day of March 2014, and

hereby certify, swear and affirm under the law of the United States of America that all the statements

made above are true, correct and complete based on my personal knowledge, information and belief.

All Rights Reserved Without Prejudice, Under Reserve U. C. C.

Date: 3/13/2014    Affiant: _____(Seal)

Jacqueline A. Warner

**JURAT**

State of Nevada                    )
                                   ) ss:
County of Clark                    )

Subscribed and sworn to (or affirmed) before me on this __13__ day of _March_____, 2014

by _Jacqueline A. Warner_____, proved to me on the basis of satisfactory evidence t

the person who appeared before me.

_Denise Taylor_____(seal)

Print / _____NOTARY Signature



NOTARY PUBLIC
STATE OF NEVADA
County of Clark
DENISE TAYLOR
No: 12-8118-1
My Appointment Expires July 30, 2016

AFFIDAVIT OF CREDITOR JACQUELINE ANNE WARNER IN RESPONSE TO U.S. BANKRUPTCY JUDGE MARTIN
GLENN'S COURT ORDER DATED MARCH 4, 2014   SUPPORT OF CLAIMANT'S OPPOSITION TO DEBTOR'S
OMNIBUS REPLY IN SUPPORT OF DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DEBTORS FIFTIETH OMNIBUS
OBJECTION TO CLAIMS (NO LIABILITY BORROWER'S CLAIMS- BOOKS AND RECORDS) AND
CLAIMANT'S REQUEST FOR DECLARATORY JUDGMENT AND WRIT OF REPLEVIN

# EXHIBIT  1

FL-180

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
CLIFTON J. LURKIS SBN 224269
GOULD-SALTMAN LAW OFFICES, LLP
818 W. 7TH STREET
SUITE 960
LOS ANGELES, CA 90017-3457
TELEPHONE NO.: (213) 489-3900       FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* JACQUELINE WARNER

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
STREET ADDRESS: 400 COUNTY CENTER
MAILING ADDRESS: 400 COUNTY CENTER
CITY AND ZIP CODE: REDWOOD CITY, CA 94063
BRANCH NAME: SOUTHERN

MARRIAGE OF
PETITIONER: JACQUELINE WARNER

RESPONDENT: MICHAEL WARNER

**FOR COURT USE ONLY**

**FILED**
SAN MATEO COUNTY

NOV 3 0 2007

Clerk of the Superior Court
By _____
DEPUTY CLERK

**JUDGMENT**
[X] DISSOLUTION     [ ] LEGAL SEPARATION     [ ] NULLITY
[ ] Status only
[ ] Reserving jurisdiction over termination of marital or domestic partnership status
[X] Judgment on reserved issues
Date marital or domestic partnership status ends:

CASE NUMBER:
F079400

1. [ ] This judgment [ ] contains personal conduct restraining orders [ ] modifies existing restraining orders.
   The restraining orders are contained on page(s) ____ of the attachment. They expire on *(date):*

2. This proceeding was heard as follows: [X] Default or uncontested [X] By declaration under Family Code section 2336
   [ ] Contested
   a. Date: NOV 2 7 2007       Dept.: 6       Room:
   b. Judicial officer *(name):* CLIFFORD V. CRETAN        [ ] Temporary judge
   c. [ ] Petitioner present in court        [ ] Attorney present in court *(name):*
   d. [ ] Respondent present in court        [ ] Attorney present in court *(name):*
   e. [ ] Claimant present in court *(name):*        [ ] Attorney present in court *(name):*
   f. [ ] Other *(specify name):*

3. The court acquired jurisdiction of the respondent on *(date):* 11/8/05
   a. [ ] The respondent was served with process.
   b. [X] The respondent appeared.

**THE COURT ORDERS, GOOD CAUSE APPEARING**

4. a. [ ] Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the status of single persons
      (1) [ ] on *(specify date):*
      (2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
   b. [ ] Judgment of legal separation is entered.
   c. [ ] Judgment of nullity is entered. The parties are declared to be single persons on the ground of *(specify):*

   d. [ ] This judgment will be entered nunc pro tunc as of *(date):*
   e. [X] Judgment on reserved issues.
   f. The [X] petitioner's [ ] respondent's former name is restored to *(specify):* Jacqueline A. Kuhn
   g. [ ] Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
   h. [X] This judgment contains provisions for child support or family support. Each party must complete and file with the court a *Child Support Case Registry Form* (form FL-191) within 10 days of the date of this judgment. The parents must notify the court of any change in the information submitted within 10 days of the change, by filing an updated form. The *Notice of Rights and Responsibilities—Health Care Costs and Reimbursement Procedures and Information Sheet on Changing a Child Support Order* (form FL-192) is attached.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
FL-180 [Rev. January 1, 2007]
**JUDGMENT**
(Family Law)
Legal Solutions Plus
Family Code, §§ 2024, 2340, 2343, 2346

FL-180

| CASE NAME *(Last name, first name of each party):* MARRIAGE OF WARNER | CASE NUMBER: |
|---|---|
| | F079400 |

**4.** *(Cont'd.)*

i. [X] A settlement agreement between the parties is attached.

j. [ ] A written stipulation for judgment between the parties is attached.

k. [ ] The children of this marriage or domestic partnership.

    (1) [ ] The children of this marriage or domestic partnership are:

        Name                         Birthdate

    (2) [ ] Parentage is established for children of this relationship born prior to the marriage or domestic partnership.

l. [X] Child custody and visitation are ordered as set forth in the attached

    (1) [X] settlement agreement, stipulation for judgment, or other written agreement.

    (2) [ ] *Child Custody and Visitation Order Attachment* (form FL-341).

    (3) [ ] *Stipulation and Order for Custody and/or Visitation of Children* (form FL-355).

    (4) [ ] other *(specify):*

m. [X] Child support is ordered as set forth in the attached

    (1) [X] settlement agreement, stipulation for judgment, or other written agreement.

    (2) [ ] *Child Support Information and Order Attachment* (form FL-342).

    (3) [ ] *Stipulation to Establish or Modify Child Support and Order* (form FL-350).

    (4) [ ] other *(specify):*

n. [n] Spousal or partner support is ordered as set forth in the attached

    (1) [X] settlement agreement, stipulation for judgment, or other written agreement.

    (2) [ ] *Spousal, Partner, or Family Support Order Attachment* (form FL-343).

    (3) [ ] other *(specify):*

    **NOTICE:** It is the goal of this state that each party will make reasonable good faith efforts to become self-supporting as provided for in Family Code section 4320. The failure to make reasonable good faith efforts may be one of the factors considered by the court as a basis for modifying or terminating spousal or partner support.

o. [X] Property division is ordered as set forth in the attached

    (1) [X] settlement agreement, stipulation for judgment, or other written agreement.

    (2) [ ] *Property Order Attachment to Judgment* (form FL-345).

    (3) [ ] other *(specify):*

p. [ ] Other *(specify):*

Each attachment to this judgment is incorporated into this judgment, and the parties are ordered to comply with each attachment's provisions.

Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Date: 11/27/7

_____
JUDICIAL OFFICER

[ ] SIGNATURE FOLLOWS LAST ATTACHMENT

**5.** Number of pages attached: 25

**NOTICE**

Dissolution or legal separation may automatically cancel the rights of a spouse or domestic partner under the other spouse's or domestic partner's will, trust, retirement plan, power of attorney, pay-on-death bank account, transfer-on-death vehicle registration, survivorship rights to any property owned in joint tenancy, and any other similar thing. It does not automatically cancel the rights of a spouse or domestic partner as beneficiary of the other spouse's or domestic partner's life insurance policy. You should review these matters, *as well as any* credit cards, other credit accounts, insurance policies, retirement plans, and credit reports, to determine whether they should be changed or whether you should take any other actions.

A debt or obligation may be assigned to one party as part of the dissolution of property and debts, but if that party does not pay the debt or obligation, the creditor may be able to collect from the other party.

An earnings assignment may be issued without additional proof if child, family, partner, or spousal support is ordered.

Any party required to pay support must pay interest on overdue amounts at the "legal rate," which is currently 10 percent.

## MARITAL SETTLEMENT AGREEMENT

MICHAEL WARNER ("Husband") and JACQUELINE WARNER ("Wife"), sometimes referred to collectively as "the parties," enter into this MARITAL SETTLEMENT AGREEMENT ("Agreement") this _17th_ day of _October_, 2007.

### RECITALS

This Agreement is made with reference to the following facts:

A.    The parties were married on March 2, 1986.

B.    Irreconcilable differences have arisen between Husband and Wife, as a result of which they separated on or about March 12, 2004 (hereinafter, "Date of Separation"). A proceeding for dissolution of the marriage based on irreconcilable differences has been filed in the Superior Court of California, County of San Mateo, which proceeding is Case Number F079400. A Judgment of Dissolution of Marriage was entered on March 28, 2006 which terminated the parties' marital status as of May 9, 2006. The court reserved jurisdiction over all other issues.

D.    The parties have 2 children, the issue of their marriage, one of which is a currently a minor, as follows:

| Name | Sex | Date of Birth | Age |
|------|-----|---------------|-----|
|  |  |  |  |

E.    By this Agreement the parties intend to effect a complete and final division of their property, and to resolve all rights and obligations relating to spousal support, child custody and child support. The parties also intend to relinquish any and all past, present, or future claims that each may have against the property or estate of the other party and his or her executors, administrators, representatives, successors, and assigns, except as otherwise provided herein.

F.    Husband served Wife with a copy of his Preliminary Declaration of Disclosure on March 16, 2006. Wife served Husband with a copy of her Preliminary Declaration of Disclosure on January 30, 2007.

//

**Marriage of Warner - F079400**                                             Page 1
Marital Settlement Agreement

G.     Husband served Wife with a copy of his Final Declaration of Disclosure on October 18, 2007.  Wife served Husband with a copy of her Final Declaration of Disclosure on January 30, 2007.

NOW, THEREFORE, the parties do mutually covenant and agree as follows:

## I.  DIVISION OF PROPERTY

A.     By this Agreement, the property described in EXHIBIT A attached hereto and incorporated herein by reference, is hereby confirmed as the sole and separate property of Husband and constitutes Husband's separate property and his share of the agreed-to division of the community property of the parties, taking into account the assumption of debts and obligations provided for in this Agreement and represents the parties' compromise and settlement of various disputes and claims with respect to their separate property and community property interests, the valuations thereof and any reimbursement claims of the parties.  Wife hereby sets over and confirms unto Husband as his sole and separate property, all of the property described in EXHIBIT A.

B.     By this Agreement, the property described in EXHIBIT B attached hereto and incorporated herein by reference, is hereby confirmed as the sole and separate property of Wife and constitutes Wife's separate property and her share of the agreed-to division of the community property of the parties, taking into account the assumption of debts and obligations provided for in this Agreement and represents the parties' compromise and settlement of various disputes and claims with respect to their separate property and community property interests, the valuations thereof and any reimbursement claims of the parties.  Husband hereby sets over and confirms unto Wife as her sole and separate property, all of the property described in EXHIBIT B.

C.     Except as may be otherwise provided in this Agreement, all of the property acquired by either party after the date of separation shall be the separate property of the one acquiring it, and each party forever waives, releases and relinquishes all right, title and interest in all subsequent income, earnings or other property received or

acquired by the other.  Each party agrees to hold the other harmless from all loss, costs, and expenses in relation to after-acquired separate property.

D.        Neither party shall do anything to defeat the rights of the other to receive whatever benefits, whether direct or derivative, to which the other may be entitled under federal Social Security legislation, including any rights or benefits due to either of them as the result of their status as a former spouse.

E.        The parties acknowledge that they have divided all of their personal property between them to their mutual satisfaction, and each of them hereby confirms such division and transfers to the other all interest to all personal property in the possession of the other.

## II. COMPLIANCE WITH FAMILY CODE §2100 et seq. AND WARRANTIES REGARDING COMMUNITY AND SEPARATE PROPERTY

A.        Husband acknowledges the requirements of Family Code §2100 et seq. and represents that he has made a full disclosure of all separate and community assets and obligations and investment opportunities as required by those code sections to Wife.

B.        Wife acknowledges the requirements of Family Code §2100 et seq. and represents that she has made a full disclosure of all separate and community assets and obligations and investment opportunities as required by those code sections to Husband.

C.        By this Agreement, Husband declares under penalty of perjury that he does not now own or possess any community property, or separate property of any kind or description whatsoever other than the property described in Section I of this Agreement, and that he has fully disclosed to Wife and to her agents all assets and liabilities, whether separate or community, known to him.  Husband acknowledges and understands that Wife and her agents have relied on such disclosure in negotiating this Agreement.

D.    By this Agreement, Wife declares under penalty of perjury that she does not now own or possess any community property, or separate property of any kind or description whatsoever other than the property described in Section I of this Agreement, and that she has fully disclosed to Husband and to his agents all assets and liabilities, whether separate or community, known to her. Wife acknowledges and understands that Husband and his agents have relied on such disclosure in negotiating this Agreement.

E.    Each party warrants that he or she has not made, without the knowledge and consent of the other, any gift or disposition of community property in excess of $1,000 other than a disposition in exchange for valuable consideration to the community. If either party has made a gift or a transfer of community property in excess of $1,000 without adequate consideration to a third person and without the knowledge of the other party, the party making said gift or transfer shall pay to the other upon demand a sum equal to one-half (½) the fair market value of said property as of the date of the gift or transfer.

F.    If either party now owns or possesses any community property not described in Section I hereof which is in excess of $1,000 which he or she, through inadvertence, has failed to disclose to the other, such party shall pay to the other upon demand a sum equal to one-half of the fair market value of the property as of the effective date of this Agreement as well as one-half of the increase in value, if any, as of the date of disclosure.

G.    If either party now owns or possesses any community property not described in Section I hereof which is in excess of $1,000 which he or she intentionally has failed to disclose to the other, or if either party has made, without the knowledge or consent of the other, any gift or disposition of community property or quasi-community property, such party shall pay to the other upon demand a sum equal to the fair market value of the property as of the effective date of this Agreement or the fair market value at the time such asset was disclosed or transferred, whichever amount is the greater. This

**Marriage of Warner - F079400**
Marital Settlement Agreement

Agreement shall not impair the availability in a court of proper jurisdiction of any remedy arising from any undisclosed ownership or disposition.

H.     The remedies set forth in paragraphs F and G of this Section apply only to those assets which, at the time of execution of this Agreement, are considered community property, and neither party shall have a right to the remedies set forth herein based on any asset which is presently considered separate property but which is subsequently declared community property by the Legislature or any court of this State.

## III. DEBTS AND OBLIGATIONS

A.     Each party hereby assumes and agrees to pay when due, and to defend and hold the other harmless from, any debts or obligations imposed on the particular party by the terms, covenants and provisions of this Agreement.

B.     Except as may be otherwise provided in this Agreement each party hereby assumes and agrees to pay when due, and defend and hold the other harmless from, any debt or obligation incurred by the particular party since the Date of Separation.

C.     Except as may be otherwise provided in this Agreement, all of the property distributed hereunder whether separate or  community, shall be distributed subject to any and all encumbrances, debts, liens or obligations, presently in existence, whether known or unknown, and the party receiving the same shall assume, pay and discharge when due, and defend and hold the other harmless therefrom.

D.     All prepaid taxes and/or insurance on the assets (or interest in assets) being confirmed or distributed hereunder are hereby set over and confirmed to the party receiving such assets. All taxes and/or insurance premiums with respect to assets which become due after the effective date of this Agreement shall be paid by the party to whom the assets are confirmed or distributed, and that party shall hold the other party free and harmless therefrom.

E.     Husband hereby assumes and agrees to pay when due, and to defend and hold Wife harmless from, the debts and obligations described in Section 2 of Exhibit A attached hereto and incorporated herein by reference.

**Marriage of Warner - F079400**                                      Page 5
Marital Settlement Agreement

F.      Wife hereby assumes and agrees to pay when due, and to defend and hold Husband harmless from, the debts and obligations described in Section 2 of Exhibit B attached hereto and incorporated herein by reference.

G.      The court has jurisdiction to re-divide the parties' property to effect an equal division of assets and obligations in the event either party fails, for any reason, to pay the obligations assumed hereunder.

H.      With respect to any latent debts or obligations of the parties or either of them or claims against the parties or either of them, they agree as follows:  Any such debt, obligation, or claim not provided for in this Agreement that was unknown by the parties at the time of the preparation and execution of this Agreement and that arises from the conduct of both of the parties or from the conduct of one of the parties from which both of the parties benefitted, occurring during the parties' marriage while they were actually living together, but prior to the effective date of this Agreement, shall be a joint obligation and expense to the parties, including the cost of defending against any such claim.  If, however, such latent debt, obligation or claim arises from the conduct of just one of the parties and the community did not benefit from such conduct, any such debt, obligation or claim shall be the sole responsibility of the party out of whose conduct the same arises.

I.      Each of the parties understands that although an obligation based on a contract may be assigned to one party as a part of the division of the community property pursuant to this Agreement, in the event that the party to whom the obligation was assigned defaults on the contract, the creditor may have a cause of action against the other party.

J.      Each party is advised and understands and acknowledges that obligations to third parties and to each other may be subject to possible discharge in bankruptcy.

K.      If either party decides to claim any rights under the bankruptcy laws, that party will notify the other of his or her intention in writing at least thirty (30) days before filing the petition.  Such notice will include the name, address and telephone number of the attorney handling the bankruptcy and the court in which the petition will be filed.

L.      The parties agree to cancel all joint charge accounts and credit card accounts no later than thirty (30) days from the effective date of this Agreement.

M.      The parties will use their best efforts to help one another establish separate accounts with credit card companies, banks, department stores or any other creditor who has been granting credit to either or both of them.  This includes signing any necessary application, authorization and/or release requested.  Unless otherwise agreed to by the parties in writing, the party desiring the credit shall pay all expenses incident thereto.

N.      Except as expressly provided herein, each party waives any right to reimbursement from the other for the following:

(a)  Epstein claims (In re Marriage of Epstein, 24 Cal.3d 76 (1979)) and all rights to reimbursement to which they may be entitled as a result of the payment of community obligations since the date of separation;

(b)  Watts credits (In re Marriage of Watts, 171 Cal.App.3d 366 (1985)) and all rights to reimbursement to which a party or the community may be entitled as a result of one party's use of any community asset since separation;

(c)  All rights to reimbursement pursuant to Family Code section 2640, or otherwise, for separate property contributed to the acquisition or maintenance of community property;

(d)  All rights to reimbursement pursuant to Family Code section 2641 or otherwise due the community or a party for contributions made by the community or either of the parties to the education or training of the other party;

(e)  Any claim for reimbursement or misappropriation of community assets by the other;

(f)  Any right to an accounting under Family Code section 1101, or any claim to breach of a fiduciary duty under Family Code sections 1100, 1101, or any other section or rule; and

(g)  Any other claim either party may have against the other.

**Marriage of Warner - F079400**                                          Page 7
Marital Settlement Agreement

## IV.  WARRANTIES REGARDING DEBTS AND OBLIGATIONS

A.    Each party hereto warrants and represents to the other that he or she has disclosed for the purpose of this Agreement all outstanding claims, debts and obligations incurred by or known to him or her.

B.    Except as may be otherwise expressly provided in this Agreement, Husband warrants to Wife that he has not incurred, and he covenants that he will not incur in the future, any liability or obligation on which or concerning which Wife may be liable including any obligation that could be enforced at any time against an asset held by Wife or to be received by Wife under the terms of this agreement.  Husband agrees that should any such claim, action or proceeding hereafter be brought against Wife, Husband will defend and hold Wife free and harmless therefrom at his sole expense.

C.    Except as may be otherwise expressly provided in this Agreement, Wife warrants to Husband that she has not incurred, and she covenants that she will not incur in the future, any liability or obligation on which or concerning which he may be liable including any obligation that could be enforced at any time against an asset held by Husband or to be received by Husband under the terms of this agreement.  Wife agrees that should any such claim, action or proceeding hereafter be brought against Husband, Wife will defend and hold Husband free and harmless therefrom at her sole expense.


## V.  FEDERAL AND STATE TAX MATTERS

A.    The parties intend by the provisions of this Agreement to divide their property into  shares of equal net value and to make a division which does not constitute a taxable event under Section 1041 of the Internal Revenue Code of 1986 as amended. Each party agrees that the tax basis of each asset allocated to him or her under this Agreement has not changed and will not change by reason of this division, and each agrees not to seek a new tax basis for any asset based on the theory that any sale, exchange, or other taxable transfer of community property was made.

B.    Each party will pay one-half of any fines, interest, penalties or assessments payable with respect to any joint federal or state income tax return filed for any calendar

**Marriage of Warner - F079400**                                    Page 8
Marital Settlement Agreement

year up to and including 2005, as well as any fees and costs incurred in connection with any audit of said returns, provided that any fines or penalties resulting from the acts or omissions of only one party and not known to the other party, together with any fees or costs incurred by either party in connection therewith, shall be paid for solely by the party from whose acts or omissions such fines or penalties result. If only one party decides to contest any additional amounts claimed due, he or she will pay all of the out-of-pocket costs and will be entitled to all of the benefits obtained. If a notice of a deficiency and/or audit is not provided, the non-notifying party shall indemnify the other for any increased tax liability, attorneys' fees, and related costs.

C.      Each party will receive one-half of any tax refunds received in connection with joint federal or state income tax returns filed for any calendar year up to and including 2005. If a notice of a refund is not so provided or if one party does not cooperate in signing any joint refund check, he or she shall pay interest to the other party at the rate of 10% per annum from the date of receipt of the notice and/or check to the date of payment to the other party of his or her share of the refund.

D.      If there is a deficiency notice or other correspondence with respect to any return filed jointly by the parties, the party receiving the notice will immediately forward a copy of it to the other party. Each party shall cooperate fully with the other to execute any documents reasonably requested by the other and to furnish information and testimony with respect to the tax liability asserted by either federal or state authorities. Should any penalty or interest be incurred because of a party's failure to notify the other party of any deficiency assessment, notice or other correspondence, the party that fails to notify the other shall be solely responsible for the payment of that penalty or interest and indemnify the other for any increased tax liability, attorneys' fees and related costs. Each party will keep the other informed of his or her mailing address for the purpose of mailing notices under this paragraph.

E.      For the calendar year 2006 and subsequent years, each party will be responsible for the preparation of his or her own income tax returns and the payment of any income taxes due thereunder.

**Marriage of Warner - F079400**                                                    Page 9
Marital Settlement Agreement

F.      Each party will indemnify and hold the other harmless from any tax liability (including penalties, interest and additional assessments) asserted by federal or state taxing authorities arising out of his or her separate income or arising out of the disallowance of any of his or her deductions on any separate return filed hereafter. Each of the parties further agrees to hold the other harmless from all fees and expenses in connection with any examination, negotiation, or litigation regarding such liability.

G.      It is the intent and understanding of the parties that the confirmation to each party of all right, title and interest in and to their respective IRAs and retirement plans, shall not be a taxable event to the other party.  The party to whom the accounts are confirmed, will pay and discharge when due, any taxes arising out of the distribution of the accounts and will hold the other party free and harmless therefrom.

H.      Wife shall be the custodial parent of LINDSEY for the purpose of determining entitlement to dependency exemption and credits, commencing with tax year 2005 and for any year allowable thereafter by the taxing authorities.

I.      The parties acknowledge that they have been informed by counsel that this Agreement has tax ramifications.  Both further acknowledge that counsel are not tax experts, and do not hold themselves out as tax experts.  Both parties have been advised to seek professional advice from an accountant or other qualified advisor regarding any potential tax consequences of this Agreement.

J.      Nothing in this Agreement shall be construed as a waiver by either party of his or her right to claim protection as an innocent spouse as defined in the Internal Revenue Code.  If either party meets the "innocent spouse" status requirements, he or she shall be relieved of any liability for amounts owed for which the status is applicable, including but not limited to all taxes, interest and penalties relating thereto.

## VI.  CHILD CUSTODY

A.      The parties shall maintain the status quo that has been in place since the parties' Date of Separation. Specifically, Husband and Wife shall share joint legal custody and that Wife will have sole physical custody of the parties' minor child, Lindsey.

Husband will have reasonable rights of visitation, as agreed upon by the parties. The parties shall consider Lindey's preference when determining visitation.

B.      Major decisions regarding the child's religion, education and medical care will be made jointly by the parties except in the event of an emergency.

C.      Each party will keep the other party informed of his or her residence address and business and residence telephone numbers. The child shall have unhindered telephone access to both parties.

D.      Each party will have free access to the child's medical and school records and will be listed on the child's school information and emergency medical forms. Each party will notify the other of any emergency involving the child as soon as it is reasonably possible to do so.

E.      The parties understand and agree that the provisions of this Agreement with respect to child custody and child support are now and shall continue to be subject to modification by a court of jurisdiction upon proper cause being shown therefor.

## VII. CHILD SUPPORT

A.      The parties agree to maintain the terms and provisions set forth in the Stipulation and Order Re: Child Support filed on July 5, 2006. Specifically, Husband agrees to pay to Wife the sum of $1,500 per month as and for the support of their minor child, LINDSEY. Child support will be payable on the first day of each and every month. Husband shall continue to pay said child support until the first of the following events: (i) the child attains age 19 or has reached age 18 and is not a full-time high school student residing with either of the parties; (ii) the child dies; (iii) the child enters into a valid marriage; (iv) the child enters the military service; (v) the child is fully emancipated under California law; or (vi) further court order.

B.      Husband's obligation to pay child support as provided in this section will terminate with respect to the child when the child obtains eighteen (18) years of age, marries, becomes self-supporting or is otherwise emancipated, whichever event first

**Marriage of Warner - F079400**                                              Page 11
Marital Settlement Agreement

occurs; provided however, that child support shall continue until the child finishes twelfth grade or obtains nineteen (19) years of age, whichever event first occurs, if the child is in high school full time and is residing with a parent.

C.      Husband shall continue to maintain at his sole cost and expense, LINDSEY'S medical and dental insurance, currently through United Health Care, Group #3082-234-3400 4 99122003400. In the event that this insurance becomes unavailable for Husband to obtain for LINDSEY, he shall obtain similar coverage through a different provider.

D.      The parties will cooperate fully and in a timely manner in obtaining and providing all necessary claim forms, completing and submitting all necessary documents and delivering all insurance payments.   The court shall reserve jurisdiction to make such other and further orders as may be required to carry out the intent of this paragraph.

E.      Medical, dental, orthodontic, optometric and/or therapy expenses incurred for the child which are not covered by insurance, including deductible amounts and co-pays, will be borne equally by the parties. The protocol for reimbursement shall be as follows: (Since Lindsey resides with Wife, it is anticipated that Wife will be the one advancing any unreimbursed expenses). At the end of each month, Wife shall provide Husband with a written list of any and all unreimbursed expenses incurred for the previous quarter, along with complete copies of all statements, bills or other records of payment of any such expenses. Husband shall reimburse Wife for any unreimbursed expenses within 30 days of his receipt of this list.

F.      Except in the case of an emergency where the other party's consent cannot readily be obtained, neither party will incur medical, dental, orthodontic, optometric and/or therapy expenses, other than for check-ups, routine examinations, and/or medication, without the prior consent of the other party, which consent will not be unreasonably withheld.  If there is no agreement regarding obtaining the proposed health care, either party may seek mediation or address the court.  If one party fails to give the other reasonable advance written notice as set forth herein, that party shall pay for all costs incurred.  The parties shall cooperate to insure that all records are submitted

in a timely fashion to the medical insurance carrier(s), and shall promptly endorse and deliver any payments or reimbursements to the party entitled to receive the funds.

G.      A wage assignment for the payment of child support will be issued, but service will be stayed providing that child support payments are made on a current basis. The stay will automatically terminate upon the filing of a declaration that child support is more than five (5) days in arrears.

H.      Child support as agreed to herein is not equal to the amount established by Family Code §§ 4050-4052.  Pursuant to Family Code § 4065 each party acknowledges:

    (i)     They are fully informed of their rights concerning child support;

    (ii)    The order is being agreed to without coercion or duress;

    (iii)   The agreement is in the best interests of the child involved;

    (iv)    The needs of the child shall be adequately met by the stipulated amount;

    (v)     The right to support has not been assigned to the county pursuant to section 11477 of the Welfare and Institutions Code and no public assistance application is pending;

(VI) No change of circumstances need be demonstrated to obtain a modification of the child support order to the applicable guideline level or above.

## VIII. COLLEGE EXPENSES

A.      Should Lindsey enroll in a trade school or actively pursue a college or university course leading to a baccalaureate degree, and the college fund set up for LINDSEY does not cover all such costs, each party shall voluntarily decide whether to pay for one-half of the expenses incurred for application and test fees, tuition (but not to exceed the cost of full time tuition at the University of California system at the time) room and board, books and transportation costs.  While there is no obligation on the part of either party to pay such expenses, such expenses will end either on the completion of trade school or college by the child or upon the child's attaining the age of 22, whichever comes first.

B.      The parties have established a two "college" funds, one for their adult son, GEOFF, and one for their minor child, LINDSEY. Husband currently has control and management of the college fund for GEOFF; Wife currently has control and management of the college fund for LINDSEY. The parties will first use the funds

**Marriage of Warner - F079400**                                          Page 13
Marital Settlement Agreement

established for each child to pay for his/her respective college expenses. Only upon depletion of the fund, will each of the parties be required to pay one-half of the child's expenses as set forth in paragraph A, above. In the event that GEOFF has not been enrolled as a full-time student for at least 3 semesters by the time LINDSEY enrolls in college, the funds previously ear-marked for GEOFF'S college education shall be applied towards LINDSEY'S education.

C.      The parties agree to cooperate in signing any documents and taking any steps that are necessary to obtain educational loans for the child.

D.      The provisions set forth in this Section shall be construed as additional child support and shall be subject to the jurisdiction of the Family Court.

E.      Nothing herein is intended to create any rights of the child as a third party beneficiary of this Agreement. The child shall have no rights under this Agreement.

### IX. SPOUSAL SUPPORT

A.      In consideration of all of the terms, provisions and recitals of this Agreement, each party waives any and all right to claim or receive in any pending or future proceeding or otherwise, any past, present or future spousal support from the other, subject to the exceptions identified in Section X. Each party hereby releases and discharges the other of and from any past, present or future obligation to pay to each other or to anyone for his or her benefit or on his or her behalf, any support or maintenance for spousal support whatsoever, subject to the exceptions identified in Section X. Other than the exceptions identified in Section X, the provisions of this paragraph shall not be subject to modification or revocation by any court. Subject to the exceptions identified in Section X, the Court's jurisdiction to award spousal support to either party is hereby immediately terminated. The parties acknowledge that prior to their waiver of spousal support herein each party was advised by his/her respective attorney that the court would not terminate jurisdiction in this matter because of the 18 year duration of their marriage. The parties further acknowledge that they were advised by their respective attorney that no matter what the circumstances in the future (with the exception of the circumstances set forth in Section X), including severe disability, their

**Marriage of Warner - F079400**                                              Page 14
Marital Settlement Agreement

waiver of the right to seek spousal support from the other herein is absolute and non-modifiable. The parties also acknowledge their understanding that under the laws of the State of California, each party has the right to apply for spousal support, and that in a contested hearing on spousal support the court would consider all of the factors set forth in Family Code § 4320 in fashioning an award in their case.

## X. EQUALIZING PAYMENT/FAMILY RESIDENCE/EXCEPTION TO WAIVERS

A.      Both parties recognize that, but for this Agreement, Husband would likely be ordered to pay permanent spousal support to Wife, pursuant to Family Code §4320. In order to buy-out any and all claims that Wife would otherwise have to spousal support, as well as other claims, Husband shall sign an Interspousal Transfer Deed transferring any and all interest that he would otherwise have in the residence located at 10 Emerald Lake Place, Redwood City, California 94062 ("Family Residence") to Wife so that the Family Residence shall become her sole and separate property. Said Interspousal Transfer Deed shall be signed within 30 days of execution of this Agreement.

B.      As of the date of execution of this Agreement, there is only one known debt encumbering the Family Residence: the mortgage with Wells Fargo Bank in the amount of $248,562 as of July 5, 2007. There are no liens and/or judgments and/or equity lines of credit and/or other mortgages and/or any other debts known by either party to be encumbering the Family Residence as of the date of execution of this Agreement. In the event that subsequent to the execution of this Agreement, it becomes known that an additional debt or debts encumbers the Family Residence, Wife's waiver of spousal support as set forth in Section IX, Wife's waiver of other reimbursement claims and other claims as set forth in Section III, and any other of Wife's waivers as set forth herein shall be considered revoked, as though her waiver had never occurred.

C.      The aforementioned mortgage with Wells Fargo is currently in both parties' names. It is Wife's preference to maintain the current Wells Fargo mortgage but drop Husband as a signatory thereto. In the event that she is unable to do so, she will refinance the mortgage solely in her own name. Wife shall provide written documentation confirming that Husband is no longer a signatory to the current Wells

**Marriage of Warner - F079400**                                                    Page 15
Marital Settlement Agreement

Fargo mortgage or other documents confirming that mortgage is in Wife's name alone within 30 days of signing this Agreement.

## XI. ATTORNEY REPRESENTATION

A.    Wife has been represented in the negotiation of this Agreement and in the pending proceeding for Dissolution of Marriage by Clifton J. Lurkis, Esq. of Gould-Saltman Law Offices, LLP.  Husband has been represented by Vicki A. Yeley, Esq. of Carr Yeley & Adams.  The parties agree that (1) each of them has been represented by and has relied on counsel of his or her own choosing in the negotiations for and in the preparation of this Agreement; (2) each of the parties has read and reviewed this Agreement and has had it explained fully by his or her respective counsel; (3) each of the  parties is fully aware of the contents, legal effect and  consequences of this Agreement and its provisions; (4) each of the parties has read this Agreement and understands and  accepts its contents and acknowledges that there have been no promises or agreements by either party to the other, except as set forth herein, that were relied on by either party as an inducement to enter into this Agreement; (5) this Agreement has been entered into voluntarily, free from duress, fraud, undue influence, coercion, or misrepresentation of any kind; and (6) this Agreement has been reviewed and/or drafted jointly by the parties' attorneys and its provisions shall be construed simply, neither for nor against either party.

B.    In order to save resources, the parties have both instructed their respective attorneys to undertake limited discovery. Additionally, the parties have relied substantially on each other's representations with regard to the major issues resolved by this Agreement, including, but not limited to, the parties' respective incomes, and the existence, characterization and valuation of community and separate assets and liabilities.

C.    The parties acknowledge that each of them has been furnished with all information requested by the other and that each has had an opportunity to make a full and complete examination of one another's income, property and financial affairs.  Each of the parties has chosen to rely on his or her own investigation and judgment with

**Marriage of Warner - F079400**                                           Page 16
Marital Settlement Agreement

respect to the value and extent of community assets and obligations. Each party understands that he or she has the right to obtain additional expert appraisals or evaluations of any community asset and each of them forgoes the right to obtain such appraisals or additional information pertaining to the determination or value of their property. Nevertheless, neither party waives the fiduciary obligation of the other party to make a full and complete disclosure of the nature and extent of his or her community and separate property assets and obligations nor does either party waive the warranties set forth in Section II, above.

D.      The parties furthermore acknowledge that this Agreement is the result of extensive negotiations and the compromise of many complex issues. The parties have been told that a trial result could be very different, but are satisfied that this Agreement represents an equitable compromise of the issues and uncertainties involved.

## XII. ATTORNEYS' FEES AND COSTS

A.      Except as may be otherwise expressly provided in this Agreement, each party will pay his or her own attorneys' fees, court costs, appraisal and accounting fees and other expenses incurred in connection with the dissolution of the parties' marriage; provided, however, nothing herein contained is intended to limit the rights of the parties to a judgment for actual attorney's fees and court costs if awarded by the Court under the provisions of Paragraph B of this Section.

B.      If either party fails to comply with the terms of this Agreement, he or she will reimburse the other party for any expenses, including attorneys' fees and court costs, that as a result of such failure, become reasonably necessary in order to carry out this Agreement.

## XIII.  WILLS - INHERITANCES

A.      Except as otherwise provided in this Agreement, each party does hereby waive any and all rights: (1) to inherit any part of the estate of the other at his or her death by Will or otherwise (such as by a survivorship interest under a joint tenancy or from insurance proceeds); (2) to receive property from the estate of the other by bequest or

**Marriage of Warner - F079400**                                           Page 17
Marital Settlement Agreement

devise; (3) to act as executor/executrix under the Will of the other; (4) to act as administrator of the estate of the other on intestacy unless nominated by another party legally entitled to so act; and (5) to claim a family allowance or probate homestead in the estate of the other.

B.       The parties expressly intend that the provisions of paragraph A above shall not apply to any Will executed by either of them subsequent to the date of execution of this Agreement.  The parties also expressly intend that this paragraph will operate as a revocation of any Will executed by either of them prior to the date of this Agreement, irrespective of whether either party makes and/or executes a new Will on or after the date of this Agreement.

## XIV.  RESERVATION OF JURISDICTION

A.       The Court shall reserve jurisdiction to resolve any claim to joint property which is undisclosed, concealed or unknown if the claim arises out of this marriage.  No separate action will be required.

B.       The Court shall reserve jurisdiction to enforce any of the terms and provisions of this Agreement and to effect the division of property as specified herein.

C.       The Court shall reserve jurisdiction to monitor the management of and/or to divide or order the sale of all property which the parties own jointly after the effective date of this agreement.

## XV.  JUDGMENT OF DISSOLUTION

A.       This Agreement shall not depend for its effectiveness upon court approval or incorporation in any judgment of dissolution of marriage; provided, however, that either party may, at his or her election, incorporate this Agreement in any such judgment and the court may order performance thereof.

//

//

**Marriage of Warner - F079400**                                      Page 18
Marital Settlement Agreement

B.      The court may enforce by any means, including contempt, all provisions of this Agreement which require a party to perform or not perform any act in the future (unless a specific provision in this Agreement or the judgment expressly states otherwise) and in addition, the parties hereto expressly do not intend to waive the contractual rights created between them by this Agreement.

## XVI.  GENERAL PROVISIONS

A.      Section headings as used in this Agreement are for the purpose of convenience only and shall not limit or otherwise affect any of the terms or provisions hereof.

B.      It is expressly agreed by the parties that the various provisions contained in this Agreement are severable, and if any provision hereof shall be held to be invalid or unenforceable, all other provisions shall nevertheless continue in full force and effect.

C.      This Agreement constitutes the entire agreement of the parties on the matters it covers and it supersedes any previous agreement between the parties. There are no representations, warranties, covenants or agreements, except as herein set forth.  No modification, alteration or waiver of any term, covenant or condition of this Agreement shall be valid unless it is in writing and signed by both parties or unless accomplished by court order in those areas of this Agreement that are subject to modification by a court of competent jurisdiction.

D.      Except as otherwise provided in this Agreement, all temporary orders previously rendered by the court in the pending dissolution action have been fully satisfied as to those acts whose performance was required on or before the effective date of this Agreement and are deemed superseded by this Agreement as to those acts whose performance was not so required.

E.      Except as in this Agreement is otherwise expressly provided, this Agreement shall inure to the benefit of and shall be binding on each of the parties and their heirs, personal representatives, assigns and other successors in interest of each of the parties.

//

**Marriage of Warner - F079400**                                    Page 19
Marital Settlement Agreement

F.    Any reconciliation between the parties hereto shall not cancel, terminate or modify any provision of this Agreement unless the parties agree in writing to the contrary.

G.    Each party agrees, on demand of the other, to execute or deliver any instrument, furnish any information, or perform any other act reasonably necessary to carry out the provisions of this Agreement without undue delay or expense. Should either party fail or refuse to execute any such instrument, this Agreement shall nonetheless constitute a full transfer of the property herein designated to be transferred; the other party, by an ex parte application, may request the appointment of an elisor to execute any necessary documents.

I.    This Agreement is made and executed in San Mateo County, State of California. This Agreement shall be construed thereunder and all questions and disputes arising thereunder shall be resolved in accordance with the laws of the State of California which are in force upon the effective date hereof.

H.    Except as herein otherwise expressly provided, the parties mutually waive, relinquish, release, discharge and acknowledge the satisfaction of any and all rights, claims and demands which either may now have against the other. The parties hereby assume all risks and forego all known claims arising from the subject matter of this Agreement. The parties have read and fully understand Sections 1100 and 1101 of the Family Code relating to management and control of community property and the remedies for improper disposal of community funds. Except as otherwise provided herein, the parties waive all rights, claims and demands which either of them may now have against the other arising out of said Family Code Sections.

//

//

//

//

//

//

//

**Marriage of Warner - F079400**
Marital Settlement Agreement

Page 20

I.      Whenever in this Agreement reference is made to community property, it is understood that that phrase includes quasi- community property to the extent that such quasi-community property exists.

J.      Time is of the essence of this Agreement.

K.      This Agreement shall be effective from and after the date first above written.

By affixing my signature, I declare under penalty of perjury that I have read the contents of this Agreement, that I have had an opportunity to discuss the contents of this Agreement with my attorney, that I understand the contents of this Agreement, and that I agree to be bound by the terms as set forth herein.

MICHAEL WARNER, Husband

9-7-07
Date

JACQUELINE WARNER, Wife

10/18/2007
Date

**APPROVED AS TO FORM:**

GOULD-SALTMAN LAW OFFICES, LLP

Clifton J. Lurkis, Esq.
Attorney for JACQUELINE WARNER

CARR YELEY & ADAMS

Vicki A. Yeley, Esq.
Attorney for MICHAEL WARNER

Marriage of Warner - F079400
Marital Settlement Agreement

Page 21

## EXHIBIT "A"
## ASSETS AND DEBTS TO BE CONFIRMED TO MICHAEL WARNER

1.  **Pursuant to Section I, paragraph A of the parties' Agreement, the following assets are confirmed to Husband as his sole and separate property:**

A.  All interest in all assets of the business entity known as Futura Furniture

B.  All interest in all assets of the business entity known as Simplicity Office Systems, LLC.

C.  The Citibank checking account ending in x6470.

D.  The Citibank checking account ending in x4496.

E.  The Parnassus retirement account ending x704.

F.  The Credit Suisse retirement account ending x274.

G.  One-half of the furniture and furnishings, as divided between the parties.

H.  Any and all clothing, jewelry and personal effects.

I.  Any and all earnings and other accumulations acquired since the Date of Separation.

2.  **The following debts shall be confirmed to Husband as his sole obligation, for which he shall pay and discharge when due, and shall defend and hold Wife harmless therefrom:**

A.  Any and all encumbrances, debts, liens or obligations, presently in existence, whether known or unknown, encumbering the assets listed above in Section 1 of this Exhibit A.

B.  Any debts incurred by Wife since the Date of Separation.

**EXHIBIT "B"**
**ASSETS AND DEBTS TO BE CONFIRMED TO JACQUELINE WARNER**

1. **Pursuant to Section I, paragraph B of the parties' Agreement, the following assets are confirmed to Wife as her sole and separate property:**

A.    Real property located at 10 Emerald Lake Place, Redwood City, CA 94062.

B.    Real property located at 12514 W. Tonto, Avondale, AZ 85323.

C.    Real property located at 1042 Elizabeth Street, Florence, AZ, 85232.

D.    Real property located at 1090 Elizabeth Street, Florence, AZ, 85232.

E.    Any and all community property interest and separate property interest in the real property located at 2279 Sunrise Ranch Avenue, Las Vegas, NV 89101.

F.    Real property located at 7065 West Pointe, Orlando, FL.

G.    All interest in all assets of the business entity known as Ergo Action, Inc.

H.    2002 Acura MDX.

I.    The two (2) Guaranty savings accounts in Wife's name.

J.    The HSBC savings account ending in x572-3.

K.    The Citibank checking account ending in x5545.

L.    The Wells Fargo checking account ending in x3418.

M.    The Penasco retirement account ending x271.

N.    The Parnassus retirement account ending x703.

O.    The Fiserv retirement account ending x7470.

P.    The Smith Barney account ending x370.

Q.    The Smith Barney account ending x953.

//

**Marriage of Warner - F079400**                                    Page 1
Exhibit "B" to MSA

R.   Any and all community property interest and separate property interest in Reef
Exploration Capital Partnership.

S.   Any and all community property interest and separate property interest in
Emerald Lake, L.L.C.

T.   Any and all community property interest and separate property interest in the
Archuleta/Warner Et al. Promissory Note

U.   One-half of the furniture and furnishings, as divided between the parties.

V.   Any and all clothing, jewelry and personal effects.

W.   Any and all earnings and other accumulations acquired since the Date of
Separation.


**2.    The following debts shall be confirmed to Wife as her sole obligation, for
which she shall pay and discharge when due, and shall defend and hold
Husband harmless therefrom:**

A.   The mortgage with Wells Fargo Bank in the amount of $248,562 as of July 5,
2007 encumbering the residence located at 10 Emerald Lake Place, Redwood
City, California 94062.

B.   Any and all encumbrances, debts, liens or obligations, presently in existence,
whether known or unknown, encumbering assets B, C, D, E, F, G, H, R, S, and T
itemized above in Section 1 of this Exhibit B.

C.   Southwest Visa Account ending in x2669

D.   Mileage Plus Visa account ending x3414.

E.   Mileage Plus Visa account ending x2183.

F.   Discover card in Wife's name.

G.   Citibusiness credit card in Wife's name.

H.   Bank of America Visa ending x4707.

I.   Washington Mutual credit card in Wife's name.


**Marriage of Warner - F079400**                                        Page 2
Exhibit "B" to MSA

J.    American Express Business Account ending in x1000

K.    Chase Business Account ending in x5081

L.    Wells Fargo credit card in Wife's name.

M.    Any debts incurred by Wife since the Date of Separation.

STATE OF CALIFORNIA } ss.
COUNTY OF SAN MATEO }

I, John C. Fitton, the Clerk of the Superior Court of the above
entitled County, do hereby certify that the foregoing is a full, true
and correct copy of the original on file in my office, and that I have
carefully compared same with the original.

Witness my hand and seal of said Superior Court

This _2TH_ day of _MARCH 2014_
Clerk of the Superior Court of California, County of San Mateo

By 
                                                    Deputy Clerk

EXHIBIT 2



2007-152338
02:39pm 10/19/07 DE  Fee: 16.00
Count of pages 4
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

*2007 0152338 AR*

RECORDING REQUESTED BY:
First American Title Lenders Advantage

AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENT TO:

MICHAEL WARNER and JACQUELINE WARNER
10 EMERALD LAKE PLACE
REDWOOD CITY, CA 94062

SPACE ABOVE THIS LINE FOR RECORDER 'S USE

A.P.N.: 057-143-280-6                                      File No.: 3475075c (aa)                  4p

## INTERSPOUSAL TRANSFER GRANT DEED
(Excluded from Reappraisal under California Constitution Article 13A ☐ et seq.)

*Dissolution of Marriage*

The Undersigned Grantor(s) declare(s): DOCUMENTARY TRANSFER TAX $0.00; CITY TRANSFER TAX $0.00;
SURVEY MONUMENT FEE $*This conveyance transfers an interest into or out of a Living Trust, R & T 11930*
This conveyance IS EXEMPT from the imposition of the Documentary Transfer Tax pursuant to §11927(a) of the
Revenue and Taxation Code and transfers community, quasi-community, or quasi-marital property assets
between spouses for the purpose of effecting a division of community, quasi-community, or quasi-marital
property which is required by a judgment decreeing a dissolution of the marriage or legal separation, by a
judgment of nullity, or by any other judgment or order rendered pursuant to the Family Code, or by a written
agreement between the spouses, executed in contemplation of any such judgment or order.

This is an Interspousal Transfer and not a change in ownership under Section 63 of the Revenue and Taxation
Code, and transfer by Grantor(s) is excluded from reappraisal as a transfer to a spouse or former spouse in
connection with a property settlement agreement or decree of dissolution of a marriage or legal separation.

FOR A VALUABLE CONSIDERATION, receipt of which IS hereby acknowledged, MICHAEL WARNER, as to
his one-half interest, and JACQUELINE A. WARNER, trustee of the JACQUELINE A. WARNER,
REVOCABLE TRUST DATED JUNE 13, 2006, HER ONE-HALF INTEREST

hereby GRANTS to JACQUELINE A. WARNER, AN UNMARRIED WOMAN

the following described property in the City of REDWOOD CITY, County of SAN MATEO, State of California:

        Attached hereto as Exhibit A.

It is the express intent of the Grantor, being the spouse of the Grantee, to convey all right, title and
interest of the Grantor, community or otherwise, in and to the herein described property to the
Grantee as his/her sole and separate property.

Dated: 10-18-07

_____
MICHAEL WARNER

_____
JACQUELINE A. WARNER, TRUSTEE

-------------------- Mail Tax Statements to: SAME AS ABOVE --------------------

**Exhibit "A"**

<u>PARCEL A:</u>

Parcel 2 as shown on that certain map entitled "PARCEL MAP A RESUBDIVISION OF THE
LANDS OF TURTURICI AND MCKEEGAN AS SAID LANDS ARE DESCRIBED IN
DOCUMENT NO. 88043032, OFFICIAL RECORDS OF SAN MATEO COUNTY, SAN
MATEO COUNTY, CALIFORNIA", filed in the office of the County Recorder of San Mateo
County, State of California on February 28, 1990 in Volume 63 of Parcel Maps at pages 69 and
70.

<u>PARCEL B:</u>

A non-exclusive easement for ingress and egress and storm drainage purposes within a portion of
Parcel 3 as shown on that certain map entitled "PARCEL MAP OF A RESUBDIVISION OF
THE LANDS OF TURTURICI AND MCKEEGAN AS SAID LANDS ARE DESCRIBED IN
DOUCMENT NO. 88043032, OFFICIAL RECORDS OF SAN MATEO COUNTY, SAN
MATEO COUNTY, CALIFORNIA" filed in the office of the County Recorder of San Mateo
County, State of California of February 28, 1990 in Volume 63 of Parcel Maps at pages 69 and
70, said portion being designated as "Proposed P.S.D.E. ingress/ egress, esmt. for benefit of
Parcels 1 & 2 and P.U.E." on said map.

Said easement is to be appurtenant to and for the benefit of Parcel "A" above.

<u>PARCEL C:</u>

A non-exclusive easement for ingress and egress over a strip of land 7.50 feet wide lying
Easterly of the following described line:

BEGINNING at the Northwesterly corner of the lands conveyed to Russel L. Wolden and wife,
by Deed recorded June 25, 1954 in Book 2605 of Official Records at page 723 (File No. 66351-
L) Records of San Mateo County, California; and thence North 4° 20' West 158.30 feet to the
Southerly line of Summit Drive.

Said easement is appurtenant to Parcel A herein and was created by Grant of Right of Way from
Arthur Cinti, et ux, to Nevada W. Wolden recorded June 27, 1932 in Book 553 of Official
Records at page 499 (File No.9678-C), Records of San Mateo County, California and by Deed
from Arthur Cinti and Marina Cinti, to John M. Underhill and Elsie M. Underhill, recorded
August 12, 1940 in Book 905 of Official Records at page 251 (File No. 95911-D), Records of
San Mateo County, California and by Deed from Arthur Cinti and Marina Cinti, to Dominic
Jackman and Giovanna Jackman, recorded November 28, 1945 in Book 1219 of Official Records
at page 298, (File No. 75500-F), Records of San Mateo County, California.

A.P. No. 057-143-280                         JPN 057-014-143 20.04 A

A.P.N.: 057-143-280-6

File No.: 3475075c (aa)

STATE OF _California_ ), S.S.
COUNTY OF _San Mateo_ )
On _10-18-2007_ before me, _Maria C. Hernandez_
Notary Public personally appeared
_Michael H. Warner_ ———————————————— personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _[signature]_

My Commission Expires: _07/25/2010_

Notary Name: _Maria C. Hernandez_

Notary Registration Number: _1683997_

This area for official notarial seal

Notary Phone: _650-364-3346_

County of Principal Place of Business _SMC_

MARIA C. HERNANDEZ
COMM. # 1683997
NOTARY PUBLIC-CALIFORNIA
SAN MATEO COUNTY
MY COMM. EXP. JULY 25, 2010

# ALL-PURPOSE ACKNOWLEDGEMENT

State of California.                    (

County of _San Mateo._    )

On _Oct. 19th, 2007_ before me, _"Jagdeep Singh Jhaj, Notary Public"_
<i>Date</i>    <i>Name and Title of Officer (i.e., Your Name, Notary Public)</i>

personally appeared _Jacqueline A. Warner._
<i>Name(s) of Document Signer(s)</i>

personally known to me (or proved to me on the basis of satisfactory evidence) to be the

person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me

that he/she/they executed the same in his/her/their authorized capacity(ies), and that by

his/her/their signatures(s) on the instrument the person(s), or the entity upon behalf of which the

person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
<i>Signature of Notary</i>

JAGDEEP SINGH JHAJ
Commission # 1495097
Notary Public - California
San Mateo County
My Comm. Expires Jul 1, 2008

*(Affix seal in the above blank space)*

When embossed, this is certified to be a true copy of the
records of the San Mateo Assessor-County Clerk-Recorder.

MAR 7 2014

Mark Church, Assessor-County Clerk-Recorder

By _____



EXHIBIT  3

Recording Requested By:
**Wells Fargo Bank, N.A.**
Prepared & Submitted By:
**Ronald E Meharg, 888-362-9638**
When Recorded Return to Trustor or Trustee at:
**WARNER**
**10 EMERALD LAKE PLACE**
**REDWOOD CITY, CA  94062**

| WELLS | 708 | 0224456574 |
|---|---|---|

**PRef#:R089-Prt.Bat.ID:39577-CRef#:12/19/2**
**007-708-33395-POF:11/19/2007**
Property Address:
**10 EMERALD LAKE PL**
**REDWOOD CITY, CA  94062**
CAdor-cR2.0   06/26/2007   2007(c) by DOCX LLC

# 2007-171600
**10:27am 12/05/07 RE  Fee: 7.00**
**Count of pages 1**
**Recorded in Official Records**
**County of San Mateo**
**Warren Slocum**
**Assessor-County Clerk-Recorder**



* 2 0 0 7 0 1 7 1 6 0 0 A R *

This Space for Recorder's Use Only

## DEED OF RECONVEYANCE

**KNOW ALL MEN BY THESE PRESENTS,** that the indebtedness secured by the Deed of Trust, described below, has been paid.

**NOW, THEREFORE, Fidelity National Title Insurance Company** whose address is **1111 Alderman Drive, Ste. #350, Attn: Release Dept., Alpharetta, GA  30005,** Trustee(s) under said Deed of Trust do(es) hereby reconvey unto the parties entitled thereto all rights, title and interest which was heretofore acquired by said Trustee(s) under said Deed of Trust.

Original Trustor(s): **MICHAEL WARNER and JACQUELINE WARNER, HUSBAND AND WIFE**
Original Trustee: **FIDELITY NATIONAL TITLE INSURANCE COMPANY**
Original Beneficiary: **WELLS FARGO HOME MORTGAGE, INC.**
Date of Deed of Trust: **06/26/2003**          Loan Amount: **$264,000.00**
Recording Date: **07/10/2003**   Document #: **2003-189669**
and recorded in the official records of the **County of San Mateo,** State of California affecting Real Property and more particularly described on said Deed of Trust referred to herein.

**IN WITNESS WHEREOF,** the undersigned has caused these presents to be executed on this date of **12/03/2007.**

**Fidelity National Title Insurance Company**



State of **GA**
County of **Fulton**
On **12/03/2007**, before me, _____**VERONICA TURNER**_____, Notary Public, personally appeared **Jessica N. Ohde,** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
Witness my hand and official seal.

_____
Notary Public:

Jessica N. Ohde, Asst. Vice Pres., Loan Documentation

**VERONICA TURNER**
**Notary Public - Georgia**
**Fulton County**
**My Comm. Expires Aug. 31, 2010**

When embossed, this is certified to be a true copy of the records of the San Mateo Assessor-County Clerk-Recorder.

MAR 7  2014

Mark Church, Assessor-County Clerk-Recorder

By _____



# EXHIBIT  4

January 16, 2008


Joseph S. Melchione, Esq.
Styskal, Wiese & Melchione, LLP
550 North Brand Boulevard, Suite 550
Glendale, CA 91203-1988

Re: Line of Credit as Open-end Credit for Maturity Limit Purposes.

Dear Mr. Melchione:

You have asked if an extension of consumer credit by a federal credit union (FCU) meeting the definition of "open-end credit" under Regulation Z is a "line of credit" under NCUA's regulations, meaning it will not be subject to a maturity limit. Yes, that is correct. You also have asked specifically about a prior legal opinion, OGC Op. 92-0232, and its discussion of a particular loan product as a "hybrid or bifurcated loan." We are aware that older opinion has created some confusion and this opinion supersedes OGC Op. 92-0232.

The Federal Credit Union Act authorizes an FCU to make loans, which are subject to certain maturity limits, and "extend lines of credit to its members," which are not subject to maturity limits. 12 U.S.C. §1757(5). NCUA regulations use the same terms, loans and lines of credit, in addressing maturity limits. 12 C.F.R. §701.21(c)(4). Section 701.21(c)(4) specifies that lines of credit are not subject to any maturity limits.

As noted in OGC Op. 99-0926, NCUA historically looks to Regulation Z's definition of open-end credit to determine if a loan is a line of credit and, therefore, not subject to a maturity limit. The Board of Governors of the Federal Reserve System (Fed) is responsible for implementing the provisions of the Truth in Lending Act and has done so in Regulation Z, 12 C.F.R. Part 226; the provisions of Regulation Z apply to all federally-insured credit unions.

Regulation Z defines open-end credit as consumer credit extended by a creditor under a plan in which:

> (i) The creditor reasonably contemplates repeated transactions;
> (ii) The creditor may impose a finance charge from time to time on an outstanding unpaid balance; and

Joseph S. Melchione, Esq.

Page 2

> (iii) The amount of credit that may be extended to the
> consumer during the term of the plan (up to any limit set by
> the creditor) is generally made available to the extent that any
> outstanding balance is repaid.

12 C.F.R. §226.2(a)(20). Regulation Z defines "closed-end credit" as any
consumer credit other than open-end credit. 12 C.F.R. §226.2(a)(10).

In OGC Op. 92-0232, we concluded a particular loan product was "neither a line
of credit nor a closed-end loan" but described it as a "hybrid or bifurcated loan,"
where the first part of the product would be considered a line of credit, without a
maturity limit, and the second part provided "a closed-end loan or 'refinancing' of
the line of credit," to which the 20-year maturity limit for second mortgages would
apply.

Upon reconsideration, we believe OGC Op. 92-0232 is incorrect in concluding
that a loan could be neither open-end credit nor closed-end credit; in the 15
years since it was issued, the opinion has created some confusion. Accordingly,
we will remove OGC Op. 92-0232 from NCUA's website; this letter supersedes
that opinion letter and clarifies our interpretation regarding application of the
Regulation Z definition of open-end credit in determining if a loan product is a line
of credit for purposes of NCUA regulations.

NCUA's interpretation of Regulation Z, confirmed as correct by legal staff at the
Fed, is that any extension of consumer credit is either open-end credit or closed-
end credit. Accordingly, an extension of consumer credit by an FCU meeting the
Regulation Z definition of open-end credit is, for NCUA's purposes, a line of
credit and not subject to maturity limits. An extension of consumer credit by an
FCU that does not meet the Regulation Z definition of open-end credit is,
therefore, closed-end credit and subject to applicable maturity limits under the
FCU Act and NCUA's regulations.

Credit unions should note, however, that, where an open-end credit account is
converted to a closed-end transaction under a written agreement, a closed-end
transaction is converted to an open-end credit account under a written
agreement, or payment terms are subsequently added to the initial agreement of
a home equity plan, the credit union must comply with all Regulation Z disclosure
requirements related to these circumstances. Supplement I to 12 C.F.R. Part
226 - Official Staff Interpretations, Subpart B – Open-End Credit, §226.5(b)(1),
Comment 4 and §226.5b, Comment 5, and Subpart C – Closed-End Credit,
§226.17(b), Comment 2.

This opinion provides a general explanation of how NCUA views the relationship
between Regulation Z and Part 701 of NCUA's regulations. It does not analyze

Joseph S. Melchione, Esq.

Page 3

or draw conclusions regarding any particular loan product or plan.  Please contact Staff Attorney Frank Kressman or me with any additional questions.

Sincerely,

Michael J. McKenna
Deputy General Counsel

GC/FSK:bhs
07-1024

# EXHIBIT  5

# GOOD FAITH ESTIMATE

| | | | |
|---|---|---|---|
| Applicants: | Jacqueline Anne Warner | Application No: | 107091801 |
| Property Addr: | 10 Emerald Lake Place, Redwood City, CA 94062 | Date Prepared: | 10/09/2007 |
| Prepared By: | LEQUITY  Ph. 916-683-0995 | Loan Program: | HOA |
| | 851 Terrace Drive, Los Altos, CA 94024 | | |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates-actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Total Loan Amount $    1,000,000    Interest Rate:   6.875 %    Term:   360 / 360  mths

| 800 | ITEMS PAYABLE IN CONNECTION WITH LOAN: | | | PFC S F POC |
|---|---|---|---|---|
| 801 | Loan Origination Fee    1.000% | | 10,000.00 | ✓ |
| 802 | Loan Discount    + $    4,750.00 | $ | 4,750.00 | ✓ |
| 803 | Appraisal Fee | | (500.00) | ✓ |
| 804 | Credit Report | | | |
| 805 | Lender's Inspection Fee | | | |
| 808 | Mortgage Broker Fee | | | ✓ |
| 809 | Tax  Related  Service  Fee | | | ✓ |
| 810 | Processing Fee | | 400.00 | ✓ |
| 811 | Underwriting Fee | | 799.00 | ✓ |
| 812 | Wire Transfer Fee | | | ✓ |
| | ADMINISTRATION FEE | | 300.00 | ✓ |
| | FLOOD CERT FEE | | | ✓ |
| | FUNDING FEE | | | ✓ |
| | DOC PREP | | | ✓ |

| 1100 | TITLE CHARGES: | | | PFC S F POC |
|---|---|---|---|---|
| 1101 | Closing  or  Escrow  Fee | $ | | |
| 1105 | Document Preparation Fee | | | |
| 1106 | Notary Fees | | | ✓ |
| 1107 | Attorney Fees | | | |
| 1108 | Title Insurance | | 1,750.00 | |
| | WIRE FEE | | | ✓ |
| | ENDORSEMENTS | | | |

| 1200 | GOVERNMENT RECORDING & TRANSFER CHARGES: | | | PFC S F POC |
|---|---|---|---|---|
| 1201 | Recording Fees: | $ | | |
| 1202 | City/County Tax/Stamps: | | | |
| 1203 | State Tax/Stamps: | | | |
| | COURIER/FED EX | | | ✓ |
| | SUB ESCROW | | | ✓ |
| | TIE IN FEE | | | ✓ |
| 1300 | ADDITIONAL SETTLEMENT CHARGES: | | | PFC S F POC |
| 1302 | Pest Inspection | $ | | |

| | | | Estimated Closing Costs | 17,999.00 |
|---|---|---|---|---|

| 900 | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | | PFC S F POC |
|---|---|---|---|---|
| 901 | Interest for    15    days @ $    183.2778    per day | $ | 2,449.17 | ✓ |
| 902 | Mortgage Insurance Premium | | | |
| 903 | Hazard Insurance Premium | | | |
| 904 | | | | |
| 905 | VA Funding Fee | | | |

| 1000 | RESERVES  DEPOSITED  WITH LENDER: | | | | PFC S F POC |
|---|---|---|---|---|---|
| 1001 | Hazard Insurance Premium | months @ $    291.67 | per month | $ | |
| 1002 | Mortgage Ins. Premium Reserves | months @ $ | per month | | |
| 1003 | School Tax | months @ $ | per month | | |
| 1004 | Taxes and Assessment Reserves | months @ $    989.00 | per month | | |
| 1005 | Flood Insurance Reserves | months @ $ | per month | | |
| | | months @ $ | per month | | |
| | | months @ $ | per month | | |

| | | Estimated Prepaid Items/Reserves | 2,449.17 |
|---|---|---|---|
| TOTAL  ESTIMATED  SETTLEMENT  CHARGES | | | 20,448.17 |
| COMPENSATION TO BROKER   (Not Paid Out of Loan Proceeds) | | $ | |

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | TOTAL ESTIMATED MONTHLY PAYMENT: | |
|---|---|---|---|
| Purchase Price/Payoff (+) | 247,630.00 | New First Mortgage (-) | |
| Loan Amount (-) | 1,000,000.00 | Sub Financing (-) | |
| Est. Closing Costs (+) | 17,999.00 | New 2nd Mtg Closing Costs (+) | |
| Est. Prepaid Items/Reserves (+) | 2,449.17 | Principal & Interest | 4,893.33 |
| Amount Paid by Seller (-) | | Other Financing (P & I) | |
| Funds remitted back to principal balance | 500,000.00 | Hazard Insurance | 291.67 |
| | | Real Estate Taxes | 989.00 |
| | | Mortgage Insurance | |
| | | Homeowner Assn. Dues | |
| | | Other | |

| Total Est. Funds needed to close | 188,278.17 | Total Monthly Payment | 6,169.00 |
|---|---|---|---|

☐  This Good Faith Estimate is being provided by _____, a mortgage broker, and no lender has been obtained.  These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender. If your application is to purchase residential real property and the lender will take a first lien on the property. The undersigned acknowledges receipt of the booklet "Settlement Costs," and if applicable the Consumer Handbook on ARM Mortgages.

| | | | |
|---|---|---|---|
| Applicant   Jacqueline Anne Warner | Date | Applicant | Date |

Calyx Form gfe.frm 11/01

1    Jacqueline A. Warner, Creditor Claimant for Claim 3502
     Mailing and Service Address:
2    3053 West Craig Road E-155
3    North Las Vegas, NV 89032
     650-520-5596 / email: h7890p@yahoo.com
4

5

6    UNITED STATES BANKRUPTCY COURT               MAR 1 4 2014
     SOUTHERN DISTRICT OF NEW YORK
7    _____X

8
     In Re:
9

10   RESIDENTIAL CAPITOL, LLC, et al              Chapter 11
                                                  Case No: 12-12020-mg
11                          Debtor.
12   _____X

13                    **PROOF OF SERVICE**

14

15   1.    At the time of service I was over eighteen (18) years of age and not a party to this action.

16   2.    My business address is: 3053 West Craig Road, Suite E, North Las Vegas, NV 89032

17   3.    On March 13, 2014, I served the following document by FedEx; I enclosed the documents in a
18   sealed envelope or package addressed to the persons in 4 and 5 by depositing the sealed envelope or
     package with the above service, with the postage fully prepaid.
19

20                       **DOCUMENT**

21   UNITED STATES BANKRUPTCY COURT
     SOUTHERN DISTRICT OF NEW YORK
22   Case No: 12-12020-mg

23
     **AFFIDAVIT**
24
     **OF JACQUELINE A. WARNER'S IN SUPPORT OF**
25   **JACQUELINE A. WARNER CREDITOR'S CLAIM 3502**
26   **RESPONSE TO U.S. BANKRUPTCY JUDGE MARTIN GLENN'S COURT**
     **ORDER DATED MARCH 4, 2014  REQUIRING PARTIES TO SUBMIT**
27   **SUPPLEMENTAL BRIEFING**

PROOF OF SERVICE OF AFFIDAVIT OF JACQUELINE A. WARNER IN SUPPORT OF
RESPONSE TO JUDGE ORDER DATED 03/04/2014 IN CREDITOR'S CLAIM 3502 in
U.S. Bankruptcy Court, Chapter 11 Case No: 12-12020-mg

1

28
1
**IN CLAIMANT'S OPPOSITION TO DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DEBTORS FIFTIETH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER'S CLAIMS- BOOKS AND RECORDS)**
AND

2
3
**CLAIMANT'S REQUEST FOR DECLARATORY JUDGMENT AND WRIT OF REPLEVIN**

4

5
**COURT**

6

7
Tracking No. 798212 355 734

8
4.   Clerk of the Court
9
U.S. BANKRUPTCY COURT, Office of Honorable Martin Glenn
Southern District of New York
10
One Bowling Green
New York, New York  10004

11

12
5.     Business or residence address where the person or persons were served:

13
Norman S. Rosenbaum          Tracking No. 798 212 451 422
14
Jordan A. Wishnew
MORRISON & FOERSTER LLP
15
1290 Avenue of the Americas
16
New York, New York  10104

17
I declare under the penalty of perjury that the foregoing is true and correct on this 13th day of
18
March 2014,

19
Declarant: _____ (Seal)

20

21

22

23

24

25

26

PROOF OF SERVICE OF AFFIDAVIT OF JACQUELINE A. WARNER IN SUPPORT OF
RESPONSE TO JUDGE ORDER DATED 03/04/2014 IN CREDITOR'S CLAIM 3502 in
U.S. Bankruptcy Court, Chapter 11 Case No: 12-12020-mg

2