Richard M. Cieri
Ray C. Schrock
Noah J. Ornstein
Justin R. Bernbrock
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Jeffrey S. Powell
Daniel T. Donovan
Judson D. Brown
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Ste. 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel for Ally Financial Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | **Re. ECF Nos. 6527, 6621, 6635** |

-------------------------------------------------------------

**ALLY FINANCIAL INC.'S REPLY IN SUPPORT OF ITS**
**MOTION FOR AN ORDER ENFORCING THE CHAPTER 11 PLAN INJUNCTION**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Ally Financial Inc. ("***Ally***") hereby submits this reply (the "***Reply***") in support of *Ally Financial Inc.'s Motion for an Order Enforcing the Chapter 11 Plan Injunction* [ECF No. 6527] (the "***Motion***") and the *Declaration of Robert Ellis* [ECF No. 6621] (the "***Ellis Declaration***"),[1] and in response to *In re Doc. 6527 Special Appearance for the Limited Purposes of Presenting Objections and Raising Jurisdictional Issues Warranting Dismissal With Prejudice of the Ally Motion* [ECF No. 6635] (the "***Objection***"), which was filed by Mr. Timothy Lahrman

---

[1] Capitalized terms used but not defined herein have the meanings given to such terms in the Motion, the Ellis Declaration, or the Plan (as that term is defined in the Motion), as applicable.

("***Lahrman***"), *pro se*.  In response to the Objection and in further support of the Motion, Ally

respectfully states as follows:

## PRELIMINARY STATEMENT

The Motion presents a straight-forward question:  Whether a post-confirmation lawsuit

against Ally alleging pre-petition wrongdoing by certain Debtor entities, is a "Cause of Action . .

. arising from or in any way related to the Debtors."  The answer is "yes."  The Court therefore

should enforce the Confirmation Order and enjoin Lahrman from prosecuting his claims—

brought in an initial complaint filed on January 3, 2014 and a supplemental complaint filed on

January 3, 2014 (the "***Complaints***")—against Ally.  In the Complaints, Lahrman erroneously

lists Ally Financial Inc. as "d/b/a GMAC Mortgage, LLC/GMAC Mortgage Corp./Residential

Funding Company, LLC"[2] and continuously conflates Ally Financial Inc. with certain of the

Debtors in these chapter 11 cases.  *See* compl. ¶¶ 3–17; supplemental compl. 3–5.  Ultimately,

though, Lahrman complains of alleged misconduct by Debtors GMAC Mortgage, LLC and

Residential Funding Company, LLC—not Ally Financial Inc.—and his claims thus fall squarely

within the Third Party Release and should be enjoined.

## RESPONSE

Lahrman raises a host of scattered arguments in response to the Motion—all of which

fail.  Lahrman primarily argues that:  (I) Ally has not satisfied the requirements for enforcing the

Plan's Third Party Release and Injunction provisions; (II) the Court does not have jurisdiction to

enforce the Plan's Third Party Release and Injunction provisions against him; and (III) Ally has

---

[2]    Lahrman also asserts that "Ally Financial, Inc. d/b/a GMAC Mortgage, LLC[] is likewise known by as many as
fifty-two other recognized trade names and business entities serving the home mortgage business of defendant
Ally Financial, Inc. . . ."

not complied with the Consent Order and/or the DOJ/AG Settlement.  Lahrman's arguments lack

merit and do not compel denial of Ally's Motion.

## I.    Ally Has Satisfied The Elements Required For Entry Of The Order.

Lahrman asserts that he had no notice of these chapter 11 cases and that his claims

against Ally in the Action are not Claims as that term is used in the Plan.  *See* Objection 8, 10–

11.  These arguments fail.

Lahrman was provided appropriate notice of these chapter 11 cases.  The foundation for

Lahrman's claims is a 2005 mortgage between Debtor GMAC Mortgage, LLC and Ms. Cynthia

Damron ("***Damron***") regarding a residence at 3004 Garden Blvd., Elkhart, IN 46517

(the "***Property***").  *See* Ellis Decl. 4.  According to his complaint,[3] Lahrman and Damron are

"significant other/life partners"—but it is Damron, and not Lahrman, who was the sole borrower

and mortgagor under the 2005 mortgage.  *Id.*  Accordingly, throughout these chapter 11 cases the

Debtors caused Damron to be served at the Property with, among others, notice of

commencement of the Cases, the Bar Date Order, the Court's hearing on the Disclosure

Statement, and the Effective Date.[4]  Additionally, the Debtors caused notice of the Confirmation

Hearing to be published in the national editions of the Wall Street Journal and USA Today.[5]

---

[3]    In the complaint, Lahrman states that "Lahrman and Cynthia are 'significant others'/'life partners' who, for twenty-two (22) years have resided together and maintained their lives' [sic] mutually in the subject real estate as their homestead and common household."  *See* Ellis Decl., Exh. A at fn. 1.

[4]    *See Affidavit of Service of Melissa Loomis Regarding Notice of Chapter 11 Bankruptcy Cases, Meeting of Creditors, and Deadlines*, Exh. B, p. 1278 [ECF No. 336]; *Affidavit of Service of Clarissa D. Cu Regarding Notice of Deadlines for Filing Proofs of Claim*, Exh. A, p. 2490 [ECF No. 1412]; *Affidavit of Service of Clarissa D. Cu Regarding Notice of Disclosure Statement Hearing*, Exh. F, p. 1268 [ECF No. 4285]; *Affidavit of Service of Clarissa D. Cu Regarding Notice of Entry of Confirmation Order Confirming the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors and Occurrence of Effective Date, and Notice of Deadline and Procedures for Filing Certain Administrative Claims*, Exh. C, p. 1015 [ECF No. 6187].

[5]    *See Affidavit of Publication Re Notice of (I) Approval of Disclosure Statement, (II) Deadline for Voting on Plan, (III) Hearing to Consider Confirmation of Plan, and (IV) Deadline for Filing Objections to Confirmation of Plan in the Wall Street Journal and USA Today* [ECF No. 5025].

3

Under the circumstances here—and because Lahrman was not known to Ally or the Debtors until he filed the Action on January 3, 2014—specific notice to Damron and publication notice of the Confirmation Hearing provide a sufficient basis under applicable law for the Court to enter the Order. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950) (holding that known creditors must be notified by means reasonably calculated to apprise such creditors of their rights); *In re Residential Capital, LLC*, 497 B.R. 720, 744 (Bankr. S.D.N.Y. 2013) (holding that a combined notice program of mailing and publication were sufficient under New York and federal due process).

Lahrman's separate argument—that the claims raised in the Action are not Claims, as that term is defined in the Plan—similarly fails.  As an initial matter, Ally does not now nor has it ever claimed an interest in the Property, and Ally takes no issue with Lahrman's action to quiet title, in connection with which Ally maintains that it has nothing to do with the Property and was erroneously named as a defendant.  As to Lahrman's claims for damages, however, such claims are patently "Claims" as that term is used in the Plan and Bankruptcy Code because Lahrman asserts a right to payment from Ally.  *See* Plan Art. I.A.53; *see also* 11 U.S.C. § 101(5).  As such, Lahrman's claims against Ally in the Action fall squarely within the plain language of the Plan's Third Party Release, which provides that "holders of Claims . . . shall be deemed to provide a full and complete discharge and release to the Ally Released Parties . . . from any and all Causes of Action whatsoever . . . arising from or related in any way to the Debtors."  Plan Art. IX.D.  Therefore, the Court should enter the Order, enjoining Lahrman from proceeding against Ally in the Action.

4

## II.    The Court Has Jurisdiction To Enforce
The Plan's Third Party Release And Injunction Provisions.

Lahrman asserts, through various theories, that the Court lacks personal and subject matter jurisdiction to enter the Order.  *See* Objection 8–9.  He is incorrect.

Lahrman erroneously contends that the Court lacks personal jurisdiction over him because he has "no minimal contacts with the State of New York."  *Id.* at 8.  Bankruptcy Rule 7004(f) provides that "[i]f the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule . . . is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code."  Fed. R. Bankr. P. 7004(f).[6]   Moreover, courts have held that, in bankruptcy cases, "'the forum' is the United States in general, not the particular forum state."  *In re Uni-Marts, LLC*, 399 B.R. 400, 406 (Bankr. D. Del. 2009).  Courts have also observed that "where service is made under Rule 7004(d), the [respondent] 'need only have minimum contacts with the United States to satisfy Fifth Amendment due process.'"  *In re Tandycrafts, Inc.*, 317 B.R. 287, 289 (Bankr. D. Del. 2004)  Here, there is no doubt that Lahrman has minimum contacts with the United States:  the Property is located in the United States, and he filed his lawsuit in the United States.  And Ally caused service of the Motion to be made upon Lahrman via first class mail and special process server.[7]

---

[6]    Bankruptcy Rule 9014(b), which governs service of motions in contested matters, provides that service is to be made pursuant to Bankruptcy Rule 7004.  Fed. R. Bankr. P. 9014(b).  Bankruptcy Rule 7004(b) provides that "service may be made within the United States by first class mail postage prepaid . . . [u]pon an individual . . . by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession."  Fed. R. Bankr. P. 7004(b).

[7]    *See Affidavit of Service of Jacob Goldfinger* [ECF No. 6533] (listing Lahrman on page 6 of the monthly service list); *see also See Affidavit of Process Server*, which is attached hereto as **Exhibit A**.

5

Lahrman also asserts that his claims against Ally are "non-dischargeable in bankruptcy"—but that is a red herring. Ally is not asserting that Lahrman's claims in the Action were discharged under the Bankruptcy Code. Rather, Ally maintains that such claims are within the scope of the Plan's Third Party Release provision, and thus released as of the Effective Date. *See* Plan Art. IX.D. Whether Lahrman's alleged claims against the *Debtors*, if any, were discharged under the Plan is irrelevant to Ally's Motion.

Lahrman separately contends that Ally waived the Court's exclusive jurisdiction to enforce the Plan, but this too is wrong. Although Ally filed an answer to Lahrman's complaint (the "*Answer*"), which is attached hereto as **Exhibit B**, Ally expressly and unequivocally stated that:

> [the Indiana state court] lacks subject matter jurisdiction over the claims against Ally Financial Inc. Pursuant to Article XII of the Plan, the Southern District of New York Bankruptcy Court has retained jurisdiction to determine any disputes concerning the Third Party Release under the Plan, and Ally Financial Inc. reserves all of its rights to bring to the Southern District of New York Bankruptcy Court for resolution any dispute by the plaintiff in the above-captioned action as to whether his claim(s) against Ally Financial Inc. have been discharged.

Answer 23. Accordingly, Ally expressly preserved the Court's exclusive subject matter jurisdiction to enforce the Plan's Third Party Release and Injunction provisions. *See* Plan Art. XII(c).

## III.    Arguments That Ally Has Not Complied With The DOJ/AG Settlement And Consent Order Are Wrong And Irrelevant In Any Event.

Lahrman spends considerable time, in the Objection and Complaints, alleging that Ally and the Debtors have not complied with the DOJ/AG Settlement and Consent Order. *See, e.g.*, Compl. ¶¶ 33–37; Objection 2–5, 10. As a threshold matter, Ally rejects Lahrman's allegations. But even assuming that he was correct—and he is not—Lahrman lacks standing to bring claims based upon such alleged violations. *See* Consent Order ¶ 30 (providing that the Consent Order

6

does not create a private right of action); *see also* DOJ/AG Settlement ¶ 7 (appointing Joseph A. Smith, Jr. as the monitor under such settlement and granting Mr. Smith authority to enforce the same).

Moreover, Lahrman completely overlooks Plan Article IV.B.e., which provides:

> Through the Effective Date, the Debtors shall perform all respective obligations under the DOJ/AG Settlement, the Consent Order, and the Order of Assessment, including, for the avoidance of doubt, satisfying the settlement of the foreclosure review obligations under the Consent Order, fulfilling all specific performance obligations, and satisfying all monetary obligations in full in Cash . . . For the avoidance of doubt, as of the Effective Date, Ally shall have no obligations under the Consent Order and the Order of Assessment; any monetary obligations of Ally under the DOJ/AG Settlement are governed by Article IX.D, IX.E and IX.I of the Plan. Nothing set forth herein is intended to or shall be deemed to modify any right or obligation of Ocwen or Walter with respect to the DOJ/AG Settlement and the Consent Order, each of which shall be governed in all respects by the provisions of the Ocwen APA.

Accordingly, Lahrman's arguments based on the DOJ/AG Settlement and Consent Order fail as a matter of law.

Additionally, arguments regarding the DOJ/AG Settlement and Consent Order are irrelevant to the Motion. The relevant facts, which are uncontroverted, are: (a) Lahrman filed a lawsuit against Ally on January 4, 2014, alleging misconduct by Ally and the Debtors in connection with a mortgage serviced by Debtor GMAC Mortgage, LLC, *see* Ellis Decl. ¶ 3; *see also* Complaint; (b) the Court confirmed the Plan, including the Third Party Release and Injunction provisions, on December 11, 2013, *see* Confirmation Order; and (c) the Effective Date occurred on December 17, 2013, *see Notice of Entry of Confirmation Order Confirming the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors and Occurrence of Effective Date* [ECF No. 6137]. Accordingly, the facts necessary for entry of the Order have been established, and the Court should grant Ally's Motion.

7

KE 30582879

## <u>CONCLUSION</u>

For the foregoing reasons, Ally respectfully requests that the Court enter the Order and enjoin Lahrman from prosecuting his lawsuit against Ally and that the Court grant such other and further relief as appropriate.

March 17, 2014          /s/ *Ray C. Schrock*
New York, New York        Richard M. Cieri
                Ray C. Schrock
                Noah J. Ornstein
                Justin R. Bernbrock
                KIRKLAND & ELLIS LLP
                601 Lexington Avenue
                New York, New York 10022
                Telephone: (212) 446-4800
                Facsimile: (212) 446-4900

                - and -

                Jeffrey S. Powell
                Daniel T. Donovan
                Judson D. Brown
                KIRKLAND & ELLIS LLP
                655 15th Street, N.W., Ste. 1200
                Washington, D.C. 20005
                Telephone: (202) 879-5000
                Facsimile: (202) 879-5200

                *Counsel to Ally Financial Inc.*

<u>**Exhibit A**</u>

**Affidavit of Special Process Server**

KE 30582879

# Affidavit of Process Server

In Re: _Residential Capital, LLC et al._    _12-12020_    Case#

Being duly sworn, on my oath, I
declare that I am a citizen of the United States, over the age of eighteen And not a party to this action.

_Rose Haven_

**Service:**    I served    _Timothy Lahrman_

NAME OF PERSON/ENTITY BEING SERVED

with the (documents)    ☐ Subpoena with $ _____ witness fee and mileage

☒ _Notice of Ally Financial Inc.'s Motion for an Order_

by serving (NAME)    _Timothy Lahrman_
at ☒ Home    _3004 Garden Expo. Elkhart, IN 46517_
☐ Business
☐ on (DATE)    _3/1/14_    at (TIME) _9:50 Am_

Thereafter copies of the documents were mailed by prepaid, first class mail on (DATE) _____

From (CITY) _____    (STATE) _____

**Manner of Service:**
☒ By Personal Service
☐ By delivering, during office hours, copies at the office of the person/entity being served, leaving same with the person apparently in charge thereof, namely, _____

☐ By leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the general nature of the papers

☐ By posting copies in a conspicuous manner to the address of the person/entity being served.

**Non-Service:**
After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):
☐ Unknown at Address    ☐ Evading    ☐ Other: _____
☐ Address does not exist    ☐ Service cancelled by litigant
☐ Moved, Left no forwarding    ☐ Unable to serve in a timely fashion

**Service Attempts:** Service was attempted on:

| ( ) | | ( ) | | ( ) | |
|---|---|---|---|---|---|
| DATE | TIME | DATE | TIME | DATE | TIME |
| ( ) | | ( ) | | ( ) | |
| DATE | TIME | DATE | TIME | DATE | TIME |

**Description:**

| | | | | | |
|---|---|---|---|---|---|
| ☒ Male | ☒ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☐ Brown Hair | ☐ Balding | ☐ 21-35 Yrs. | ☐ 5'-5'3" | ☐ 100-130 Lbs. |
| | ☐ Brown Skin | ☐ Blond Hair | | ☐ 36-50 Yrs. | ☐ 5'4"-5'8" | ☐ 131-160 Lbs. |
| ☐ Glasses | ☐ Yellow Skin | ☒ Gray Hair | ☐ Mustache | ☒ 51-65 Yrs. | ☒ 5'9"-6' | ☐ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☐ Beard | ☐ Over 65 Yrs. | ☐ Over 6' | ☒ Over 200 Lbs. |

OTHER IDENTIFYING FEATURES: _____

State of Illinois  County of Cook

SERVED BY
LASALLE PROCESS SERVERS
ILLINOIS PRIVATE DETECTIVE LICENSE# 117-001432

Subscribed and sworn to before me
A notary public, this _1_ day of _March_ ~~2013~~ _2014_    _St. Joseph Co. Indiana_

Notary Public

**CHARTER MEMBER NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS**

Nancy J Grembowicz
Notary Public Seal State of Indiana
St Joseph County
My Commission Expires 07/16/2015

**<u>Exhibit B</u>**

**Ally's Answer in the Action**

KE 30582879

STATE OF INDIANA      )      ELKHART COUNTY CIRCUIT COURT
                    ) SS:
COUNTY OF ELKHART     )      CAUSE NO.: 20C01-1401-PL-002

TIMOTHY J. LAHRMAN         )
        Petitioner/Plaintiff      )
                              )
vs.                                   )
                              )
**GREEN TREE SERVICING, LLC.**   )
as assignee of and/or successor to     )
GMAC Mortgage, LLC.; **ALLY**       )
**FINANCIAL, INC.,** d/b/a GMAC      )
Mortgage, LLC./GMAC Mortgage Corp./   )
Residential Funding Company, LLC.;    )
**FEDERAL NATIONAL MORTGAGE**   )
**ASSOCIATION** (Fannie Mae);       )
**MORTGAGE ELECTRONIC**         )
**REGISTRATION SYSTEMS, INC.**    )
(MERS, Inc.); and, unnamed, unknown   )
and yet to be identified persons, entities   )
and/or membership associated common   )
agents of MERS, Inc.             )
     Respondent(s)/Defendant(s)    )

FILED

JAN 31 2014

CLERK ELKHART
CIRCUIT COURT

## ALLY FINANCIAL INC.'S ANSWER

Defendant Ally Financial Inc. ("Ally") (improperly named as "Ally Financial, Inc. d/b/a

GMAC Mortgage, LLC/GMAC Mortgage Corp./Residential Funding Company, LLC) by its

attorneys, Dykema Gossett PLLC, answers Plaintiff's Complaint as follows:

1.      Lahrman is presently in possession, and is a person entitled to possession, of the

real estate commonly known to be 3004 Garden Blvd. in the City of Elkhart, Elkhart County

Indiana, described in particular as:

**ALL THAT PARCEL OF LAND IN ELKHART COUNTY, STATE OF INDIANA, AS MORE FULLY DESCRIBED IN DEED DOC #357P739. ID #20-06-16-433-026, BEING KNOWN AND DESIGNATED AS:**

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•10 S. WACKER DRIVE, SUITE 2700•CHICAGO, ILLINOIS 60606

LOT NUMBERED THREE (3) IN BLOCK TWENTY FOUR (24) AND THE NORTH ONE HALF (1/2) OF LOT NUMBERED ONE

(1) OF BLOCK TWENTY FIVE (25) AS THE SAME ARE KNOWN AND DESIGNATED ON THE RECORDED PLAT OF CITY GARDENS ADDITION TO ELKHART INDIANA SAID PLAT BEING RECORDED IN PLAT BOOK 2 PAGE 47 IN THE OFFICE OF THE RECORDER OF ELKHART COUNTY STATE OF INDIANA

BY FEE SIMPLE DEED FROM LARRY D. ROGERS AS SET FORTH IN DOC #357P739 DATED 08/02/1976 AND RECORDED 08/02/1976, ELKHART COUNTY RECORDS, STATE OF INDIANA.

**ANSWER:** Ally lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them as untrue.

2.        Lahrman's legal and equitable rights and interests in the above described real estate (hereinafter 'subject real estate') were granted to him by and under a long-standing agreement with the deed holder, Cynthia S. Damron, reduced to writing and duly executed by way of 'Limited Special Warranty Deed'. (Exhibit A)[1]

**ANSWER:** Ally lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them as untrue.

---

[1] Lahrman and Cynthia are 'significant others'/'life partners' who, for twenty-two (22) years have resided together and maintained their lives' mutually in the subject real estate as their homestead and common household.

**ANSWER:** Ally lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and footnote and therefore denies them as untrue.

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·10 S. WACKER DRIVE, SUITE 2300·CHICAGO, ILLINOIS 60606

3.        Defendant Green Tree Servicing, LLC. [sic] ("GT") claims an interest in the subject real estate as 'holder' and 'mortgagee' under an alleged purchase or assignment transaction with Defendant Ally Financial, Inc. d/b/a GMAC Mortgage, LLC.  (hereinafter Ally.01)[2] for which, and in favor of GT, Defendant Ally Financial, Inc. d/b/a Ally.01 and Defendant Ally Financial, Inc. d/b/a Residential Funding Company, LLC. (hereinafter Ally.02) executed an un-dated 'Limited Power of Attorney'.  (Exhibit B)

        **ANSWER:** Denied as untrue.


4.        Defendant Ally.01 claims its interest in the subject real estate as 'holder' and 'mortgagee' under a 'Corrective Assignment of Mortgage' dated November 23, 2009, from Defendant MERS, Inc. (hereinafter MERS) as nominee for Defendant Ally Financial, Inc. d/b/a GMAC Mortgage Corporation (hereinafter Ally.03).  (Exhibit C)

        **ANSWER:** Denied as untrue.


5.        Defendant Federal National Mortgage Association (hereinafter Fannie Mae) is known to have an interest in the subject real estate as the owner of loan #***** *9793, the same which is known by all parties herein to represent the mortgage loan and mortgage note associated with the subject real estate.

---

[2] Defendant Ally Financial, Inc. d/b/a GMAC Mortgage, LLC. is likewise known by as many as fifty-two other recognized trade names and business entities serving the home mortgage business of defendant Ally Financial, Inc.  By reference and unless otherwise specified, references to "Ally" includes [sic] any and all Ally related mortgage entities known, or which come to be known, to have associated with the subject real estate and its title.

**ANSWER:** Denied as untrue.

**ANSWER:** Ally lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them as untrue.

6.    Defendant Fannie Mae has been the owner/holder of the mortgage note and mortgage loan associated with the subject real estate since taking delivery and possession of the same on August 1, 2005.

**ANSWER:** Ally lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them as untrue.

7.    Defendant Fannie Mae is under conservatorship of the Federal Housing Finance Agency (FHFA), and accordingly, together with summons and notice all service of process is issued to the conservator of Fannie Mae as being the proper party with lawful authority and representative capacity to represent and defend Fannie Mae in the above entitled cause of action.

**ANSWER:** Ally lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them as untrue.

8.    Defendant Ally.01's claimed interest in the subject real estate as being 'holder' of a promissory note and 'mortgagee' under the aforementioned Exhibit C 'Corrective Assignment of Mortgage' is false and fraudulent, is known to Ally.01 to be a false and fraudulent representation, and is a known misrepresentation of a known and agreed upon fact by which Ally.01 intended for others to rely and by which Ally.01 intended to impair, and has impaired, the marketability of the subject real estate by the public filing and recording with the Elkhart

4

County Recorder's Office of a false and fraudulent mortgage lien on the title to the subject real estate of these proceedings.

**ANSWER:** Denied as untrue.

9.    Lahrman verily and reasonably believes that defendant GT has no legal and/or equitable rights or interests to, in and/or under title to, the subject real estate of these proceedings, and neither the aforementioned Exhibit B 'Limited Power of Attorney' nor the aforementioned Exhibit C 'Corrective Assignment of Mortgage' relied upon by GT vests in GT enforceable rights or interest legal and/or equitable in and under title to the subject real estate of these proceedings.

**ANSWER:**  Ally lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them as untrue.

10.    Defendant Ally.03 did, on or about September 14, 2005, file with the Elkhart County Recorder's Office a 'Mortgage' lien on the subject real estate that is false and fraudulent and which was known by Ally.03 to be false and fraudulent. Defendant Ally.03 knew, should have known and had every responsibility to know that on September 14, 2005, Ally.03 did not own or possess the promissory note/debt obligation at the time of filing the mortgage lien with the Elkhart County Recorder's Office. (Exhibit D)

**ANSWER:** Denied as untrue.

11.    Defendant Ally.03 did, on or about November 23, 2009 and by way of Defendant MERS, Inc., intentionally, knowingly and fraudulently attempt to assign its false and fraudulent

'Mortgage' of September 2005 (Exhibit D) to Ally.01 (Exhibit C).  Defendant Ally Financial,

Inc. knew, should have known and had every responsibility to know that on November 29, 2009,

Ally.03 was wholly and legally incapable of making any assignment as is allegedly evidenced by

Exhibit C because on November 23, 2009; Ally.03 was not a legal entity as a matter of law

(Exhibit E), nor was Ally.03 capable of being a member of Defendant MERS, Inc. that on

November 23, 2009, Ally.03 could instruct Defendant MERS, Inc. to make the assignment

allegedly evidenced by Exhibit C.

**ANSWER:** Denied as untrue.


12.    Lahrman verily believes and has good reason to believe – following a December

11, 2013 telephone discussion with Fannie Mae Resource Center representative "Gerda" – that

defendant Fannie Mae has been the owner of the loan, holder of the mortgage note/mortgage

loan and securities contract, since August 1, 2005, under 'loan #\*\*\*\*\*\*9793'.

**ANSWER:**  Ally lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in this paragraph and therefore denies them as untrue.


13.    Lahrman verily believes and has good reason to believe that defendant Mortgage

Electronic Registration Systems, Inc. ("MERS, Inc.") has, in relation to the subject real estate of

these proceedings, recorded and tracked in its MERS© system, information relative to any

transfer of the mortgage loan and security interest associated with the subject real estate and that

MERS, Inc. serves as agent, among a common agency, entitled to receive Notice of these

proceedings on behalf of its membership, the same membership which includes, among others,

defendant(s) Ally.01, GT and Fannie Mae.

**ANSWER:** Denied as untrue.

14.    Lahrman verily believes and has good reason to believe that defendant MERS, Inc. has no legal and/or equitable rights or interests to, in and/or under the title to the subject real estate.

**ANSWER:** Ally lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them as untrue.

15.    Lahrman verily believes and has good reason to believe that defendant Ally.02 has no legal and/or equitable rights or interests to, in and/or under the title to the subject real estate.

**ANSWER:** Ally denies that it claims any legal, equitable, or title interest in the subject real property. Ally is not a proper defendant in this litigation. Ally otherwise denies any remaining allegations contained in this paragraph as untrue.

16.    Lahrman verily believes and has good reason to reasonably believe that the FHFA conservator of and for Fannie Mae has, by its election of remedy in *Federal Housing Finance Agency v. Ally Financial Inc., et al*, No. 652441/2011, which was removed to the United States District Court for the Southern District of New York on or about October 6, 2011, captioned *Federal Housing Finance Agency v. Ally Financial Inc., et al.*, No. 11 CIV. 7010 (the "*Ally Action*"), repudiated any legal and/or equitable rights or interests which Lahrman believes Fannie Mae has, and/or once had, in the title to the subject real estate.

7

**ANSWER:**   Ally lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them as untrue.

17.      As the direct and proximate result of the Defendants [sic] acts and conducts, both individually and/or collectively in concert, flowing directly from and related to the false and fraudulent mortgage lien filed and recorded against the subject real estate of these proceedings Lahrman has suffered and continues to suffer damages both economic and, [sic] to his person and personal rights and interests.

**ANSWER:** Denied as untrue.

WHEREFORE, Ally Financial Inc. requests that the Court enter a judgment in its favor, and award Ally Financial Inc. its costs, attorneys fees, and other relief that the Court deems appropriate.

## COMPLAINT FOR DAMAGES

### COUNT
### I

Ally incorporates by reference its responses to all prior paragraphs.

18.      At all times relevant hereto Defendant(s) Ally.02 and Fannie Mae are/were, together with other industry leaders, 'founding shareholders' in the formulation and creation of MERSCORP (a/k/a MERSCORP Holdings, Inc.) which owns and operates MERS, Inc. and, Ally.03 and Fannie Mae are/were 'charter members' in the MERS, Inc. associated membership. Defendant GT is a current MERS, Inc. member, but not a 'charter member'.

**ANSWER:** Denied as untrue.

19.     At all times relevant hereto Defendant(s) Ally.01, Ally.02 [sic] Ally.03, Fannie

Mae, MERS, Inc. and GT are/were acting in concert and overtly, in unison and with a common

objective under an agreed upon business plan and business model of their customary industry

practices acquiesced to by the defendants and which, by design, was intended to deceive and

inveigle American homeowner's, the historical institutions of American society and, both state

and federal government authorities.[3]

**ANSWER:** Denied as untrue.


20.     In July of 2005 Ally,03[4] induced Lahrman and his 'significant other' to enter into

two consumer mortgage transactions[5] for which Lahrman and his 'significant other' were

induced to pledge valuable security with a marketable worth of one hundred ninety thousand

dollars ($190,000.00) to secure an equity refinance package of two separate consumer mortgage

loans totaling approximately ninety-five thousand five hundred dollars ($95,500,00) toward

which Lahrman and his 'significant other' parted with valuable consideration monthly for years,

---

[3] U.S. Treasury Secretary Henry J. Paulsen characterized the defendants' business model as "flawed" (see, http://money.cnn.com/2008/09/07/news/economy/paulsonstatement) and U.S. District Court Judge Robert E. Grossman found the business model and practice "illegal" (see, *In re Agard*, 444 BR 231 (ED N.Y. 2011)

**ANSWER:** Denied as untrue.

[4] Ally.03 marketed its mortgage services and products to Lahrman and his significant other under the trade names GMAC Mortgage and GM Family Enterprise Group, [sic]

**ANSWER:** Denied as untrue.

[5] The above entitled cause involves only one of two properties owned by Lahrman and his significant other. The second home is not yet considered in these proceedings.

**ANSWER:** Ally lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them as untrue.

totaling approximately forty-four thousand dollars ($44,000,00), all of which to date is and has been their ultimate detriment and loss.

**ANSWER:** Denied as untrue.

21.    That Lahrman and his 'significant other' where induced by Ally.03 to believe in the integrity and quality of the mortgage products they believed they purchased from Ally.03 all the while Ally.03 held secret, and failed to disclose, the true nature and character of their business model and intent[6] and likewise held secret and failed to disclose to Lahrman and his 'significant other' the risks associated with the role and function of Ally.03's undisclosed associated membership in MERS, Inc. and Ally.02's role and function as a founding shareholder in MERSCORP.

**ANSWER:** Denied as untrue.

22.    That both Ally.03 and subsequently Ally.01 induced Lahrman and his 'significant other' to believe that their mortgage loan and consumer mortgage transaction was provided, funded, owned, and held by Ally.03, when in fact the truth is otherwise, was known by Ally to be otherwise and was intended by Ally to be otherwise. Ally knew at all times relevant hereto,

---

[6]  The true nature and character of Ally's business model and designed intent is/was not to make fund [sic] and hold home mortgage loans as was in fact represented to Lahrman and his significant other, but rather, the true nature and character of Ally's business model and designed intent is/was, by deceit and misrepresentation, to 'harvest' from consumers and homeowners 'negotiable instruments' and 'mortgage security instruments' that constituted Ally's 'business inventory' which Ally paid nothing for and with which Ally did fully intend to securitize and transform into a variety of derivative instruments and investment products which would then be widely marketed and traded in both proprietary trading transactions and in the global secondary investment markets [sic]

**ANSWER:** Denied as untrue.

and kept secret from Lahrman and his significant other, that on August 1, 2005 — thirteen (13) days following consummation of the consumer mortgage transactions — Ally.03 sold or assigned the consumer mortgage loan relating to the subject real estate of these proceedings to Defendant Fannie Mae.

**ANSWER:** Denied as untrue.

23.    That, as averred herein and above in ¶ #10, on or about September 14, 2005, Ally.03 filed and recorded a false and fraudulent mortgage lien on the title of Lahrman's homestead under which Ally.03 and subsequently Ally.01 held/hold themselves out publically, falsely, fraudulently and to date herein, to be 'mortgagee' and 'holder' of the consumer mortgage loan related to the subject real estate of these proceedings.  Additionally and based upon the false and fraudulent September 14, 2005 recorded mortgage lien, defendants Ally.02, Ally.03 and, unknown and yet to be identified other defendants and/or members of the MERS, Inc. common agency, did, within their scheme of fraud and with intent to unjustly enrich themselves, create to be bought, sold, traded, insured, re-insured and over-insured, fraudulent derivative investment instruments and mortgage-backed securities which, unbeknownst to Lahrman and without his knowledge or consent, ultimately involved and encumbered the legal title to and on Lahrman's homestead and those of his rights and interests in the subject real estate of these proceedings.

**ANSWER:** Denied as untrue.

24.    On or about April 22, 2013, Ally.01 admitted and acknowledged, in unison and in concert with defendant GT, that defendant Fannie Mae is the true owner/holder of the consumer mortgage loan (Exhibit B at p. 2 ¶ #3).  Defendant(s) Ally.01, GT and Fannie Mae kept secret

from Lahrman and his significant other until December 11, 2013, the fact that defendant Fannie

Mae purchased and took, and/or took under assignment, delivery and possession of, the

consumer mortgage loan/note on August 1, 2005, assigning to the same Fannie Mae loan

#******9793.

   **ANSWER:** Denied as untrue.


25.    At all times relevant hereto, in concert, defendants Ally.02, Ally.03, Fannie Mae,

MERS, Inc., and likely unknown and yet to be identified members of the MERS, Inc. common

agency membership, did, by in and under the securitization process, fragment into an untold and

undisclosed number of shares the interests in and rights to the 'negotiable instrument' and

'mortgage security instrument' related to the subject real estate of these proceedings which

defendants sold notoriously as 'Mortgage Backed Securities', as was/is the true nature, character

design and intent of the defendants' business model and customary business routines and

practices.

   **ANSWER:** Denied as untrue.


26.    At all times relevant hereto, in concert, defendants Ally.02, Ally.03, Fannie Mae,

MERS, Inc., and likely unknown and yet to be identified members of the MERS, Inc. common

agency membership, did, by creating an unknown number of, and yet to be identified, derivative

instruments and fractionated shares, alter the identity and character of the ownership interests in

and ownership rights to the 'negotiable instrument' and 'mortgage security instrument' subject of

the consumer mortgage transaction relevant to the subject real estate of these proceedings.

   **ANSWER:** Denied as untrue.

12

27.     At all times relevant hereto, in concert, defendants Ally.02, Ally.03, Fannie Mae, MERS, Inc., and likely unknown and yet to be identified members of the MERS, Inc. common agency membership, did, unjustly enrich themselves tremendously by fractionating and selling the derivative shares which fraudulently enmeshed and encumbered Larhman's [sic] homestead and those of his rights and interest under title to the subject real estate of these proceedings.

**ANSWER:** Denied as untrue.

28.     At all times relevant hereto, in concert, defendants Ally.02, Ally.03, Fannie Mae, MERS, Inc., and likely unknown and yet to be identified members of the MERS, Inc. common agency membership, have kept secret the true identities of any individual shareholders owning interest in and rights to Lahrman's homestead. Defendants have neither made, nor offered to make, an accounting for the profits derived from fraudulently selling, buying, trading, insuring, re-insuring, and over-insuring their fraudulent derivative instruments and mortgage-backed securities which have in fact enmeshed Lahrman's homestead and real estate title in their scheme of notorious 'Mortgage Backed Securities' trading, the ultimate collapse and failure of which substantially damaged Lahrman's equity values, pledged security and real estate title.

**ANSWER:** Denied as untrue.

29.     At all times relevant hereto and to date herein, defendants Ally.01 and GT have — in concert and by extrinsic agreement with Fannie Mae — joined in overtly executing upon orchestrating, directing and facilitating the scheme of frauds set up and put in motion by defendants Ally,02, Ally.03, Fannie Mae and MERS, Inc. In furtherance of the broader scheme of frauds defendants Ally.01 and GT have, at all times relevant hereto and to date herein, held

13

themselves out publically, falsely and fraudulently to be the 'holder' and 'mortgagee' of the consumer mortgage transaction and consumer mortgage loan related to Lahrman's homestead and title to the subject real estate of these proceedings.

**ANSWER:** Denied as untrue.

30.    For its role in the broader scheme of frauds, the defendant Fannie Mae — being a founding shareholder of MERSCORP and charter member of defendant MERS, Inc. — wrote the 'roadmap' which, relied upon by all defendants, was designed and intended to inveigle and deceive both the American homeowner and the institutions of both state and federal government, the judiciary and courts included.

**ANSWER:** Denied as untrue.

31.    As the direct and proximate result of the defendants' acts and conducts, and those Acts and conducts in execution and furtherance of the broader scheme of defendants' frauds, Lahrman has suffered damages and continuing harm and damage both economic and to his person, and to those of his rights and interests under title to the subject real estate [sic] these proceedings, and, as continued below.

**ANSWER:** Denied as untrue.

## COUNT
## II

Ally incorporates by reference its responses to all prior paragraphs.

14

32.      Lahrman is an adjudicated incapacitated and disabled adult.  He is a vulnerable person with a qualified disability.  His home is a necessary [sic] of his life and vital to his well-being safety and security.

**ANSWER:**  Ally lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them as untrue.

33.      In July 2008 and during an emergency session, the United States Congress passed P.L. No. 110-289, 122 Stat. 2654 (2008) the Housing and Economic Recovery Act of 2008 ("HERA") which created a new federal housing agency and spawned regulatory review and investigations into the business practices of the home-mortgage industry nationwide.

**ANSWER:**  The referenced act speaks for itself, and Ally denies the allegations contained in this paragraph to the extent they conflict with the referenced act.  Ally otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them as untrue.

34.      In April of 2011 defendant Ally Financial, Inc., entered into various "Consent Orders" with federal regulators and authorities among which are the Board of Governors for the Federal Reserve System, the Office of the Comptroller of Currency ("OCC"), and the Federal Deposit Insurance Corp. ("FDIC").  Under these "Consent Orders" defendant Ally Financial, Inc. agreed to, among other things, cease and desist in certain business practices relative to the defendants' business model and its customs, practices and policies.

**ANSWER:**  The referenced "orders" speaks for itself, and Ally denies the allegations contained in this paragraph to the extent they conflict with the referenced orders.  Ally otherwise

lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them as untrue.

35.    In [sic] or about May 2012 defendant Ally Financial, Inc., entered into the 'National Mortgage Settlement' "Consent Judgment" with federal and state regulators and authorities, among which is/was the Office of the Indiana Attorney General, Consumer Protection Division who appeared, in Case No. 1:12-cv-00361-RMC, *United States of America, et al. v. Bank of America Corporation, et al,*[7] in its legal status and legal capacity as *parens patraie,* on behalf of Indiana homeowners' [sic], consumers, and Indiana's disabled and incapacitated homeowners' [sic] and consumers among which is Lahrman.

**ANSWER:**  The referenced judgment speaks for itself, and Ally denies the allegations contained in this paragraph to the extent they conflict with the referenced judgment.  Ally otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them as untrue.

36.    Defendant(s) Ally.01, Ally.02, GT and Fannie Mae have and are continuing to engage in the business practices relative to those acts, conducts, business practices, customs and policies subject of and prohibited by the aforementioned "Consent Orders" and "Consent Judgment", the same to which the defendants are parties.  The defendants are, have been and

---

[7]    Incorporated herein by reference and reiterated in its entirely are the material facts and allegations contained in the "Complaint", (Pacer doc. #4-1, Case No. 1:12-cv-00361-RMC) as it appears captioned, under *United States of America, et al. v. Bank America Corporation, et al.*

**ANSWER:**  This footnote does not require a response.  To the extent a response may be required, Ally denies the allegations as untrue.

continue to be in violation and breach of those agreements represented by "Consent Orders",

"Consent Judgment"[8] and the National Mortgage Settlement.

**ANSWER:** Denied as untrue.

37.    As the direct and proximate result of defendant(s) Gmac's [sic] and GT's

continuing violations of I.C. § 24-5-0.5 et seq. and breaches of those agreements represented by

the National Mortgage Settlement and the "Consent Judgment" of Case No. 1:12-cv-00361-

RMC, Larhman [sic] has suffered incurable damage and loss and is continuing to suffer

damages, loss and harm both economic and to his person, and to those of his personal rights and

interests, and, further damages resulting from the following.

**ANSWER:**  Ally lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in this paragraph and therefore denies them as untrue.

## COUNT
## III

Ally incorporates by reference its responses to all prior paragraphs.

---

[8]  The defendants are engaged in, *inter alia*, unfair and deceptive mortgage servicing practices and are not complying with the servicing standards expressly set forth in the 'Consent Judgment' and under the National Mortgage Settlement.  The defendants are not dealing openly, honestly and fairly with Lahrman and his household, and in bad faith the defendants have, among other things, refused tender of payment, forced an unauthorized escrow and applied forced placed insurance on the account and property.  The defendants have engaged, and continue to engage, in acts of personal dishonesty for which the defendants intend to enrich themselves unjustly with and by exorbitant and unjustified administrative fee stacking which defendant [sic]  report and contend to be a debt owing.  Additionally, the defendants are engaged in unfair and deceptive mortgage foreclosure practices, they are engaged in practicing fraud upon both the state and federal courts, and are proceeding with foreclosure proceedings with **known** 'robo-signed' documents and documentations [sic] which do not meet the required documentation standards expressly set forth in the National Mortgage Settlement.

**ANSWER:**  Denied as untrue.

38.    Lahrman is, as householder, homeowner and household member, a direct beneficiary of any consumer mortgage transaction and contract relative to and secured by his home which is the subject real estate of these proceedings.

**ANSWER:**  Ally lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them as untrue.

39.    Lahrman has legal and equitable rights and interests in his home, in his possession of his home, in maintaining possession of his home, in the advantageous economic opportunities accompanying home ownership, and in the peaceable and quiet enjoyment, use and benefit of his home, the same which is the subject matter of consumer contractual relations and obligations between Fannie Mae and Lahrman's household.

**ANSWER:**  Ally lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them as untrue.

40.    Defendant(s) Ally and GT know, should know and have every responsibility of knowing of the existing contractual relationships between Fannie Mae and Larhman's [sic] household, and of the legal and equitable rights and interests associated with the same.

**ANSWER:**  Denied as untrue.

41.    Defendant(s) Ally.01 and GT have, both individually and jointly and joined by their respective employees agents and attorneys, postured themselves overtly in the broader

18

scheme of frauds[9] as 'servicers', and with the intent to unjustly enrich themselves by engaging

overtly in furtherance of the broader scheme of frauds and engaging in acts of personal

dishonesty, deceit, unfair and deceptive mortgage servicing practices, unfair, deceptive and

unscrupulous debt collection practices, and unfair and deceptive mortgage foreclosure practices,

which are by design and with intent to deceive, inveigle and tortuously [sic] interfere with the

consumer mortgage transaction subject of these proceedings and with the existing relationship

involving Fannie Mae and Lahrman's rights and interests associated with his household and

status as a homeowner.

**ANSWER:** Denied as untrue.


42     As the direct and proximate result of the defendants [sic] tortuous [sic] acts and

conducts [sic] interfering with Larhman' rights, interests and reasonable expectations as a

homeowner, contract beneficiary and household consumer, Lahrman has suffered and continues

to suffer; economic damages and loss to the economic value of his property rights and interest;

economic damages and loss to the advantageous economic opportunities associated with

Lahrman's rights and interests in homeownership and as a homeowner. In addition Lahrman has

suffered and continues to suffer damage to, and loss of, his right to peaceably and fully enjoy

freely the full and unimpaired use and benefit of his home and status as a homeowner.

---

[9]    As used throughout, the phrase 'broader scheme of frauds' includes, without limitation,
designing and implementing the flawed and illegal business model; the predatory harvesting of
'negotiable instruments' and 'security instruments', securitization of the same and the global
marketing of those fraudulent derivative instruments and mortgage backed-securities which,
insured, re-insured and over-insured, where [sic] expected to fail and result in foreclosure and
seizure of homes.

**ANSWER:**  This footnote does not require a response.  To the extent a response may be
required, Ally denies the allegations as untrue.

**ANSWER:** Denied as untrue.

43.     As the direct and proximate result of the defendants [sic] intentional and tortuous [sic] acts and conducts [sic] of Defendants Ally.01, GT, and those of their employees, agents and attorneys whether individually or jointly and collectively, the defendants have, whether individually or jointly and collectively in concert, annoyed, interfered with and caused interruption to Lahrman's right to the full and free use and benefit of his land, home and property.

**ANSWER:** Denied as untrue.

44.     As the direct and proximate result of the defendants' intentional and willful acts, conducts and doings, the defendants named herein and those of their employees, agents and attorneys whether individually or jointly and collectively have in fact made of themselves a nuisance for and to Lahrman and his household privately, and to the broader public in general [sic]

**ANSWER:** Denied as untrue.

45.     As the direct and proximate result of the defendants' intentional, willful and tortuous [sic] acts and conducts and those of the defendants' employees, agents and attorneys, whether individually or jointly and collectively, have inflicted upon Lahrman and continue to so maliciously inflict, undue emotional distress, fear, mental anguish and unwarranted psychological imposition.

**ANSWER:** Denied as untrue.

20

## PETITION/APPLICATION FOR DECLARATORY JUDGMENT
## AND DAMAGES

Ally incorporates by reference its responses to all prior paragraphs.

46.      Pursuant to I.C. § 26-1-9.1; see also, I.C. § 26-1-3.1-605.  Lahrman has the right to be compensated for the destruction, impairment, waste and loss of equity value, to the collateral and security Lahrman's household pledged in exchange for the July 2005 consumer mortgage transaction involving both defendants Ally and Fannie Mae.[10]

**ANSWER:** Denied as untrue.

47.      Defendants Ally Financial, Inc. and Fannie Mae are liable to Lahrman for compensatory damages pro rata in value to the destruction, impairment, waste and loss of equity value and marketability relating to Lahrman's homestead and the security collateral parted with and pledge [sic] to Ally.03 in 2005.

---

[10]  The ultimate failure and collapse of the defendants' flawed and illegal business model, thru no fault of Lahrman's doing, resulted in the loss and destruction of Lahrman's security and equity. The defendants cannot return intact, and in and of its full value, the security pledged to the defendants.

**ANSWER:** Denied as untrue.

[11]  In advance of consummating the July 2005 consumer mortgage transaction, defendant Ally.03 secured both the pre-approved funding from, and the sale/assignment and transfer of the consumer mortgage note to, defendant Fannie Mae.

**ANSWER:** Denied as untrue.

[12] Lahrman disavows any right to or interest in the incomes and profits derived as the fruits of the defendants' broader scheme of frauds.

**ANSWER:**  This footnote does not require a response.  To the extent a response may be required, Ally denies the allegations as untrue.

DYKEMA GOSSETT-A PROFESSIONAL LIMITED LIABILITY COMPANY-10 S. WACKER DRIVE, SUITE 2100-CHICAGO, ILLINOIS 60606

**ANSWER:** Denied as untrue.

48.    Defendants Ally Financial, inc. [sic] Fannie Mae are liable to Lahrman for special damages flowing from the defendants' broader scheme of frauds which intentionally involved Larhman's unwitting and unknowing involvement and the same which inured to and for the benefit of, and financial gain for, the defendants whether individually and/or collectively.12

**ANSWER:** Denied as untrue.

WHEREFORE, Ally Financial Inc. requests that the Court enter a judgment in its favor, and award Ally Financial Inc. its costs, attorneys fees, and other relief that the Court deems appropriate.

## AFFIRMATIVE DEFENSES

Ally Financial Inc. has not yet had the opportunity to complete its investigation and discovery in this matter and thereby relies on such of the following defenses as may prove applicable after discovery and at trial:

1.    Plaintiff's complaint fails to state a claim upon which relief can be granted against Ally Financial Inc.

2.    Ally Financial Inc. is not a proper defendant in this matter. Ally Financial Inc. is not and has never been known as GMAC Mortgage, LLC, GMAC Mortgage Corp., Residential Funding, LLC, or any of the other "trade names" alleged by Plaintiff. Plaintiff improperly conflates multiple legal entities and seeks to hold Ally Financial Inc. liable for the alleged actions and inactions of indirect subsidiaries.

3.    The claims against Ally Financial Inc. in this litigation have been discharged and released pursuant to a Third Party Release contained in the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (the "Plan"), as ordered on December 11, 2013 by the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG).

4.   This Court lacks subject matter jurisdiction over the claims against Ally Financial
Inc.  Pursuant to Article XII of the Plan, the Southern District of New York
Bankruptcy Court has retained jurisdiction to determine any disputes concerning
the Third Party Release under the Plan, and Ally Financial Inc. reserves all of its
rights to bring to the Southern District of New York Bankruptcy Court for
resolution any dispute by the plaintiff in the above-captioned action as to whether
his claim(s) against Ally Financial Inc. have been discharged.

5.   Plaintiff's claims against Ally Financial Inc. may be barred due to estoppel,
laches, statute of frauds, statute of limitations, waiver, lack of jurisdiction over the
subject-matter, collateral estoppel and/or *res judicata*.

**RESERVATION OF RIGHT**

Ally Financial Inc. reserves its right to file such amended answers and such additional
defenses as may be appropriate upon completion of its investigation and discovery.

*Respectfully submitted,*

**DYKEMA GOSSETT PLLC**

By: _____
Jordan S. Huttenlocker, Atty # 30351-02
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
(312) 627-2281
JHuttenlocker@dykema.com

January 30, 2014

DYKEMA GOSSETT-A PROFESSIONAL LIMITED LIABILITY COMPANY•111 S. WACKER DRIVE, SUITE 2700•CHICAGO, ILLINOIS 60606