## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

LAND COURT
DEPT. OF
THE TRIAL COURT

NO. *09 MISC 408202-6HP*

|  |  |
|---|---|
| ALLISON L. RANDLE,<br><br>    Plaintiff,<br><br>v.<br><br>GMAC MORTGAGE, LLC,<br><br>    Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## VERIFIED COMPLAINT

This is an action seeking declaratory and injunctive relief relative to the named parties interest in and to a certain parcel of land with improvements thereon located and more commonly known as 83-85 Whitney Street, Unit No. 83, Town of Northborough, County of Worcester, Commonwealth of Massachusetts, ("Locus").

## JURISDICTION AND VENUE

The Court has jurisdiction over the causes of action presented pursuant to G.L. c. 185, sec. 1(k); G.L. c. 214, secs. 1, 8, and G.L. c. 231A, *et seq.*.

Venue in this Court is proper pursuant to G.L. c. 223, sec. 1 and G.L. c. 214, sec. 5.

## THE PARTIES

1.  The Plaintiff, Allison L. Randle, ("Randle"), is a natural person with a residential address of 83 Whitney Street, Northborough, County of Worcester, Commonwealth of Massachusetts.

2.  The Defendant, GMAC Mortgage, LLC, ("LLC"), is upon information and belief, a limited liability company duly organized and existing under the laws of the State of Delaware, with a principal place of business located at 1100 Virginia Drive, Fort Washington, County of Montgomery, Commonwealth of Pennsylvania.

## MATERIAL FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

3.  On April 14, 2003, the public record at the Worcester County (Southern District) Registry of Deeds reflects that Randle executed and delivered a Mortgage Deed purportedly secured by the Locus in the original principal amount of $150,000.00 in favor of Sherwood Mortgage Group, Inc., ("Sherwood"), a

2

corporation which at that time was, upon information and belief, duly organized and existing under the law of the Commonwealth of Massachusetts. Said Mortgage Deed is dated April 8, 2003 and recorded with said Deeds on April 14, 2003 in Book 29672, Page 124, ("2003 Mortgage Deed"). A true and correct copy of the 2003 Mortgage Deed is attached hereto and incorporated herein in its entirety by reference as Exhibit "A".

4.   On April 14, 2003, the public record at the Worcester County (Southern District) Registry of Deeds reflects that Sherwood assigned all of its right, title and interest in and to the 2003 Mortgage Deed to Mortgage Electronic Registration Systems, Inc., ("MERS"), as nominee for GMAC Bank. Said Assignment is dated April 8, 2003 and recorded with said Deeds on April 14, 2003 in Book 29672, Page 143. A true and correct copy of said Assignment is attached hereto and incorporated herein in its entirety by reference as Exhibit "B".

5.   The Assignment by Sherwood of the 2003 Mortgage Deed to MERS did *not* convey much less even mention *any* claim which the 2003 Mortgage Deed might secure.

6.   Upon information and belief, there is no assignment of *any* claim purportedly secured by the 2003 Mortgage Deed from Sherwood to MERS, as nominee of GMAC Bank.

7.   On or about June 24, 2005 MERS, by and through its counsel, Aimee Rebecca Thyresson, ("Thyresson"), of the law firm of Harmon Law Offices, P.C.,

3

("Harmon"), commenced a civil action in the Land Court Department of the Trial Court, ("Land Court"), under the Soldiers' and Sailors' Civil Relief Act of 1940 as amended naming Randle as a defendant and claiming, *inter alia*, that MERS was the holder of the 2003 Mortgage Deed and seeking authority to foreclose [the 2003 Mortgage Deed] "[b]y entry and possession and exercise of the power of sale". The Land Court assigned the action "Case No. 05 MISC 310699", ("No. 310699").

8.   On or about July 29, 2005, the Land Court issued an Order of Notice to Thyresson and Harmon on behalf of MERS in No. 310699 with a return date of September 12, 2005.

9.   On August 16, 2005, the public record at the Worcester County (Southern District) Registry of Deeds reflects that Harmon, on behalf of MERS caused to be recorded the Order of Notice issued by the Land Court in No. 310699. Said Order of Notice is dated July 29, 2005 and recorded with said Deeds in Book 37075, Page 312. A true and correct copy of said Order of Notice is attached hereto and incorporated herein in its entirety by reference as Exhibit "C".

10.   On or about September 6, 2005, Randle timely removed No. 310699 to the United States District Court for the District of Massachusetts – *Central Division*, ("District Court"). Upon removal, the District Court assigned the action "Case No. 1:05-cv-11817-PBS", ("No. 05-11817").

4

11.    On or about November 10, 2005, the District Court, after notice, dismissed No.
       05-11817 for failure of MERS to prosecute.

12.    In or around January, 2008, the LLC, by and through its counsel, Reneau J.
       Longoria, ("Longoria"), of the law firm of Doonan, Graves & Longoria, LLC,
       ("DGL"), and DGL, commenced a civil action in the Land Court under the
       Servicemembers Civil Relief Act naming Randle as a defendant and claiming,
       *inter alia* that the LLC was the holder of the 2003 Mortgage Deed and seeking
       authority from the Land Court to foreclose [the 2003 Mortgage Deed] "[b]y entry
       upon and possession of and exercise of the power of sale." The Land Court
       assigned the action "Case No. 08 MISC 369658", ("No. 369658").

13.    On or about April 14, 2008, the Land Court issued an Order of Notice to
       Longoria and DGL on behalf of the LLC in No. 369658 with a return date of May
       26, 2008.

14.    On May 8, 2008, the public record at the Worcester County (Southern District)
       Registry of Deeds reflects that Longoria and DGL on behalf of the LLC caused
       to be recorded the Order of Notice issued by the Land Court in No. 369658.
       Said Order of Notice is dated April 14, 2008 and recorded with said Deeds on in
       Book 42806, Page 95. A true and correct copy of said Order of Notice is
       attached hereto and incorporated herein in its entirety by reference as Exhibit
       "D".

5

15.     On or about May 27, 2008, Randle timely removed No. 369658 to the United

        States District Court for the District of Massachusetts – *Eastern Division*,

        ("District Court"). The Court thereafter on its own transferred the case to the

        *Central Division*. After transfer, the District Court assigned the action "Case No.

        4:08-cv-40102-FDS", ("No. 08-40102").

16.     On or about December 18, 2008, while the case was still pending before the

        District Court, the LLC, by and through its counsel, Longoria and DGL,

        requested that the Land Court issue an [alias] Order of Notice in No. 369658.

17.     On or about January 9, 2009, despite the fact that the case was still pending in

        the District Court, the Land Court issued an [alias] Order of Notice in No.

        369658 with a return date of February 23, 2009.

18.     On February 6, 2009, the public record at the Worcester County (Southern

        District) Registry of Deeds reflects that Longoria and DGL on behalf of the LLC

        caused to be recorded the [alias] Order of Notice issued by the Land Court in

        No. 369658. Said [alias] Order of Notice is dated January 9, 2009 and recorded

        with said Deeds in Book 43763, Page 10. A true and correct copy of said [alias]

        Order of Notice is attached hereto and incorporated herein in its entirety by

        reference as Exhibit "E".

19.     On April 2, 2009, more than one (1) year *after* the commencement of No.

        369658 by the LLC, the public record at the Worcester County (Southern

        District) Registry of Deeds reflects that MERS, as nominee for GMAC Bank,

6

assigned all of its right title and interest in and to the 2003 Mortgage Deed to the LLC. Said Assignment is dated April 2, 2009 and recorded with said Deeds in Book 44048, Page 390. A true and correct copy of said Assignment is attached hereto and incorporated herein in its entirety by reference as Exhibit "F".

20.   The Assignment by MERS as nominee of GMAC Bank of the 2003 Mortgage Deed did *not* convey much less even mention *any* claim which the 2003 Mortgage Deed might secure.

21.   The Assignment by MERS as nominee of GMAC Bank of the 2003 Mortgage Deed did *not* state much less even mention the date of transfer from MERS to the LLC of either the 2003 Mortgage Deed itself or *any* claim secured thereby, and in fact the place where the date of transfer was specifically provided for in the instrument was left blank.

22.   On or about April 2, 2009, the LLC, by and through its counsel, Longoria and DGL filed a motion in the District Court in No. 08-40102 to remand the case to the Land Court for lack of subject matter jurisdiction.

23.   On or about May 27, 2009, the District Court, Dennis F. Saylor, DJ, after hearing, allowed the LLCs's Motion to Remand the case to the Land Court.

24.   Shortly after remand, the LLC, by and through its counsel, Longoria and DGL requested the Land Court to issue a [pluries] Order of Notice in No. 369658.

7

25.    On or about June 25, 2009, the Land Court issued a [pluries] Order of Notice in
       No. 369658 with a return date of August 10, 2009.

26.    On July 27, 2009, the public record at the Worcester County (Southern District)
       Registry of Deeds reflects that Longoria and DGL on behalf of the LLC caused
       to be recorded the [pluries] Order of Notice issued by the Land Court in No.
       369568. Said [pluries] Order of Notice is dated June 25, 2009 and recorded with
       said Deeds in Book 44634, Page 367. A true and correct copy of said [pluries]
       Order of Notice is attached hereto and incorporated herein in its entirety by
       reference as Exhibit "G".

27.    On July 28, 2009, Longoria and DGL on behalf of the LLC caused to be
       published in the Worcester Telegram & Gazette the first of three successive
       weekly notice of mortgagee's sale of real estate of the Locus.

28.    On August 4, 2009, Longoria and DGL on behalf of the LLC caused to be
       published in the Worcester Telegram & Gazette the second of three successive
       weekly notice of mortgagee's sale of real estate of the Locus.

29.    On or about August 7, 2009, Longoria and DGL provided a copy of the LLC's
       notice of sale of the Locus to Randle.

30.    Presently, pursuant to said notice of sale and in the absence of any court
       intervention, the sale of the Locus is scheduled for Monday, August 24, 2009 at
       2:00 o'clock in the afternoon.

8

COUNT – I

DECLARATORY JUDGMENT

31.   Randle repeats and realleges each and every factual allegation contained in
Paragraph Nos. 1 through 30, inclusive, as if set forth fully herein.

32.   At the time of the commencement of No. 369658 by Longoria and DGL on
behalf of the LLC in the Land Court, the LLC was *not* the holder of the 2003
Mortgage Deed.

33.   At the time of the commencement of No. 369658 by Longoria and DGL on
behalf of the LLC in the Land Court, the LLC was *not* the holder of *any* claim
purportedly secured by the 2003 Mortgage Deed.

34.   At the time of the removal by Randle of No. 369658 from the Land Court to the
District Court, the LLC lacked standing to pursue or otherwise enforce the 2003
Mortgage Deed.

35.   At the time of the removal by Randle of No. 369658 from the Land Court to the
District Court, the LLC lacked standing to pursue or otherwise enforce *any* claim
purportedly secured by the 2003 Mortgage Deed.

36.   At the time of remand from the District Court to  the Land Court, the LLC lacked
standing to pursue or otherwise enforce the 2003 Mortgage Deed.

9

37.   At the time of remand from the District Court to the Land Court, the LLC lacked standing to pursue or otherwise enforce *any* claim purportedly secured by the 2003 Mortgage Deed.

38.   The LLC is *not* the present holder of *any* claim purportedly secured by the 2003 Mortgage Deed.

39.   As a result of the LLC not being the present holder of *any* claim purportedly secured by the 2003 Mortgage Deed, the LLC cannot notwithstanding any purported assignment of the same by MERS to it, claim to be the holder of the 2003 Mortgage Deed as a matter of law.

40.   As a result of the LLC *not* being the present holder of the 2003 Mortgage Deed, it cannot pursue or otherwise enforce the 2003 Mortgage Deed.

41.   As a result of the LLC *not* being the present holder of *any* claim purportedly secured by the 2003 Mortgage Deed, the LLC is not entitled to a judgment in No. 369658 under the Servicemembers Civil Relief Act.

42.   As a result of the LLC *not* being the present holder of the 2003 Mortgage Deed, the LLC is not entitled to a judgment in No. 369658 under the Servicemembers Civil Relief Act.

43.   Notwithstanding all  or any of the foregoing, Randle is nonetheless within the class of persons or entities that the Legislature intended that the rights and benefits accorded by the enactment of G.L. c. 244, sec. 35A were to apply

10

since (1) Randle is the named mortgagor in the 2003 Mortgage Deed; (2) the

Locus consists of 4 or less separate households and is occupied by Randle in

whole or in part, and (3) no notice as required by the aforesaid statute has been

given Randle by the LLC or anyone claiming thereunder within the five (5) year

period immediately preceding the filing of this Verified Complaint.

44.   Notwithstanding all or any of the foregoing, the LLC has failed, neglected and/or

refused to comply with the statutory provisions of G.L. c. 244, sec. 35A, which

states in pertinent part as follows:

**Right of residential real property mortgagor to cure a default; acceleration
of maturity date; notice; fees and penalties associated with default; filing
of notice**

(a)  Any mortgagor of residential real property located in
the commonwealth consisting of a dwelling house
with accomodations for 4 or less separate
households and occupied in whole or in part by the
mortgagor *shall* have a 90 day right to cure a
default of a required payment as provided in such
residential mortgage or note secured by such
residential real property by full payment of all
amounts that are due *without* acceleration of the
maturity of the unpaid balance of such mortgage.
The right to cure a default of a required payment
*shall* be granted once during any five year period,
regardless of the mortgage holder.

(b)  The mortgagee, or anyone holding thereunder,
shall *not* accelerate maturity of the unpaid balance
of such mortgage obligation or otherwise enforce
the mortgage because of a default consisting of the
mortgagor's failure to make any such payment in
subsection (a) by *any* method authorized by this
chapter or any other law until at least 90 days after

11

the date a written notice is given by the mortgagee to the mortgagor.

Said notice shall be deemed to be delivered to the mortgagor when delivered to the mortgagor or when mailed to the mortgagor at the mortgagor's address last known to the mortgagee or anyone holding thereunder.

(emphasis supplied)

(*Effective* May 1, 2008)

A true and correct copy of said statute is attached hereto and incorporated herein in its entirety by reference as Exhibit "H".

WHEREFORE, Defendant, Allison L. Randle, prays that this Honorable Court:

1.    Declare the rights, duties and obligations of each of the parties, if any there be, with respect to *any* claim purportedly secured by 2003 Mortgage Deed;

2.    Declare the rights, duties and obligations of each of the parties, if any there be, with respect to the 2003 Mortgage Deed;

3.    Declare that GMAC Mortgage, LLC is *not* the present holder of *any* claim purportedly secured by the 2003 Mortgage Deed;

4.    Declare that GMAC Mortgage, LLC is *not* the present holder of the 2003 Mortgage Deed;

5.    Declare that GMAC Mortgage, LLC lacks standing to pursue No. 369658;

12

6.    Order that GMAC Mortgage, LLC is not entitled to a judgment in No. 369658
      under the Servicemembers Civil Relief Act;

7.    Order that No. 369658 be dismissed, *with* prejudice;

8.    Order that GMAC Mortgage, LLC is not entitled to proceed with its non-judicial
      foreclosure sale of the Locus under the 2003 Mortgage Deed presently
      scheduled for August 24, 2009 at 2:00 o'clock in the afternoon;

9.    As a result of the wrongful and/or unlawful conduct of GMAC Mortgage, LLC as
      outlined herein, for compensatory damages;

10.   As a result of the wrongful and/or unlawful conduct of GMAC Mortgage, LLC as
      outlined herein, for punitive damages;

11.   As a result of the wrongful and/or unlawful conduct of GMAC Mortgage, LLC as
      outlined herein, for actual costs expended by Allison L. Randle and reasonable
      attorney fees relative to the commencement and maintence of this action;

12.   For such other and further relief as this Honorable Court deems just and
      appropriate.

## COUNT – II

### INJUNCTIVE RELIEF

45.   Randle repeats and realleges each and every factual allegation contained in Paragraph Nos. 1 through 30, 32 through 44, inclusive, as if set forth fully herein.

46.   As demonstrated herein, the LLC lacks standing to proceed with its intended foreclosure sale of the Locus pursuant to the 2003 Mortgage Deed. Accordingly, Randle has a strong likelihood of success on the merits of her Verified Complaint.

47.   Moreover, even were this Court to assume that the LLC had the standing and thus the legal right to proceed with its non-judicial foreclosure sale under the 2003 Mortgage Deed on or after April 2, 2009 (the date of the purported Assignment of the 2003 Mortgage Deed from MERS, as nominee of GMAC Bank to the LLC), Randle is in the class of persons which are entitled to the benefits and rights accorded by the Legislature pursuant to G.L.c. 244, sec. 35A *prior* to *any* action being taken by the LLC, including without limitation the noticing and scheduling of any judicial or non-judicial sale of the Locus.

48.   To date, the LLC has *never* complied with the statutory provisions of G.L.c. 244, sec. 35A vis-à-vis Randle and the 2003 Mortgage Deed.

49.   The announced action by the LLC against Randle and her equity of redemption in the Locus presents an actual viable, presently existing threat of serious

14

irreparable harm which cannot be undone since the Locus is not only the primary residence of Randle but consists of real property which in and of itself is considered unique under the law.

50.    Given all of the foregoing, the balance of equities in this situation cuts decisively in favor of granting Randle's application for first, a temporary restraining order, and then preliminary injunctive relief so that the *status quo ante* may be preserved pending a trial upon the merits.

WHEREFORE, Defendant, Allison L. Randle prays that this Honorable Court:

1.    Pursuant to Mass. R. Civ. P. 65(a), issue a Temporary Restraining Order restraining GMAC Mortgage, LLC, its agents, servants, attorneys, officers, employees, and all those persons or entities acting in active concert and participation with it who receive actual notice of the order by personal service or otherwise, from taking any further action of any kind, nature or description, including without limitation any [further] advertising for the sale of the Locus, relative to its non-judicial foreclosure sale presently scheduled for Monday, August 24, 2009 at 2:00 PM;

2.    Issue an Order of Notice scheduling a hearing upon the application for a Preliminary Injunction pursuant to Mass. R. Civ. P. 65(b);

3.    Pursuant to Mass. R. Civ. P. 65(b), after notice and a hearing, issue a Preliminary Injunction enjoining GMAC Mortgage, LLC, its agents, servants,

15

attorneys, officers, and employees, and all those persons or entities acting in active concert and participation with it who receive actual notice of the order by personal service or otherwise, from taking any further action of any kind, nature or description, including without limitation, [further] advertising the sale of the Locus, relative to it non-judicial foreclosure sale presently scheduled for Monday, August 24, 2009 at 2:00 PM, during the pendency of this action, or until further Order of the Court;

4.      Upon a determination of the merits of [Plaintiff's] Verified Complaint, enter a permanent injunction barring GMAC Mortgage, LLC, its agents, servants, attorneys, officers, employees, all those acting in active concert and participation with it, from taking any further action of any kind, nature or description, including without limitation, [further] advertising the sale of the Locus, relative to its non-judicial foreclosure sale presently scheduled for Monday, August 24, 2009 at 2:00 PM, and

5.      For such other and further relief as this Honorable Court deems just and appropriate.

16

ALLISON L. RANDLE,

By her Attorney,

Israel M. Sanchez, Jr. – (BBO #546217)
Sanchez & Associates
8 Boxwood Circle
Milford, NH 03055
Tel: (781)-964-2248
Fax: (877)-570-8413

Date: August _12_, 2009

## VERIFICATION OF COMPLAINT

I, Allison L. Randle, state under oath under the pains and penalties of perjury that the factual allegations contained in the within Verified Complaint and the documents identified and incorporated therein by reference are true, accurate and complete based upon my personal knowledge and/or the public record unless where indicated to be upon information and belief, and in such event, I believe the allegations to be true.

Allison L. Randle

Date: August _8th_, 2009

17

EXHIBIT "A"

BK29672PG124

97736



After Recording Return To:

Sherwood Mortgage Group, Inc
1 Ararat Street
Worcester, MA ,

————————————————[Space Above This Line For Recording Data]————————

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated April 8, 2003, together with all Riders to this document.

(B) **"Borrower"** is Allison L. Randle. Borrower is the mortgagor under this Security Instrument.

(C) **"Lender"** is Sherwood Mortgage Group, Inc. Lender is organized and existing under the laws of . Lender's address is 1 Ararat Street, Worcester, MA . Lender is the mortgagee under this Security Instrument.

(D) **"Note"** means the promissory note signed by Borrower and dated April 8, 2003. The Note states that Borrower owes Lender ONE HUNDRED FIFTY THOUSAND AND 00/100 Dollars (US $150,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 1, 2023.

(E) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(F) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower. [check box as applicable]:

| | | | | | |
|---|---|---|---|---|---|
| [ ] | Adjustable Rate Rider | [ x] | Condominium Rider | [ ] | Second Home Rider |
| [ ] | Balloon Rider | [ ] | Planned Unit Development Rider | [ ] | Other(s) [Specify |
| [ ] | 1-4 Family Rider | [ ] | Bi-Weekly Payment Rider | | |

(H) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3022 1/01  Page 1 of 16

_ALR_

BK29672PG125

(I) **"Community Association Dues, Fees and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) **"Escrow Items"** means those items that are described in Section 3.

(L) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under coverages described in Section 5) for (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation or; (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) **"Successor in Interest of Borrower"** means that any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of the Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the

ACR

BK29672PG126

following described property located in the County of Worcester, Massachusetts:

The premises described in Exhibit A attached hereto and made a part hereof.

which currently has the address of            83-85 Whitney Street, Unit 83,
                                                        [Street]
Northborough, Massachusetts 01532 ("Property Address"):
[City],                                    [Zip Code]


TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3022 1/01   Page 3 of 16

ACR

BK29672PG127

drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any,

**MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          **Form 3022 1/01   Page 4 of 16**



BK29672PG128

be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by the Lender.

ALR

BK29672PG129

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination of certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3022 1/01    Page 6 of 16

ACR

BK29672PG130

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earning on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's right to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund or unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste

*AGD*

BK29672PG131

on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3022 1/01  Page 8 of 16

*ACR*

BK29672PG132

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments towards the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earning on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of the Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

*ACR*

BK 2 9 6 7 2 PG I 3 3

(a) Any such agreements will not affect the amounts that the Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earning on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to the Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3022 1/01   Page 10 of 16



BK 2 9 6 7 2 PG I 3 ꝺ

authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in

amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.

*ACR*

BK29672PG135

Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from the Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note.) Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3022 1/01   Page 12 of 16

*ACR*

BK29672PG136

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.   Borrower's Right to Reinstate After Acceleration.**     If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check in drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.   Sale of Note; Change of Loan Servicer; Notice of Grievance.**   The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the

BK2 9672PG137

mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) and "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products.)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          **Form 3022 1/01  Page 14 of 16**

ACR

BK29672PG138

NON-UNIFORM COVENANTS.    Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.**  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.**  Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

ACR

BK29672PG139

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider(s) executed by Borrower and recorded with it.

Witness:

Frank G. Lombardi

Deborah McMahon DelBuono

_Allison L. Randle_
Allison L. Randle

- Seal
Borrower

_____ [Space Below This Line For Acknowledgment] _____

COMMONWEALTH OF MASSACHUSETTS

Worcester, SS  Westborough                                        April 8 , 2003.

Then personally appeared the above-named Allison L. Randle and acknowledged the foregoing instrument to be his/her/their free act and deed, before me.

Frank L. Lombardi Notary Public   Deborah McMahon DelBuono
My Commission Expires: 8/26/2005  6/13/08

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT         Form 3022 1/01  Page 16 of 16

BK29672PG140

Exhibit "A"

A certain estate known as Unit No. 83, ("Unit"), of the Whitney Street Condominium located at 83-85 Whitney Street, Northborough, Massachusetts, a condominium, ("Condominium"), established pursuant to Massachusetts General Laws, Chapter 183A, by Master Deed dated October 25, 1985, recorded with the Worcester District Registry of Deeds in Book 9017, Page 250, ("Master Deed"), which Unit is shown on the Plan of the "Condominium" dated July 24, 1985, recorded with the Worcester District Registry of Deeds in Plan Book 543, Plan 33.

For Mortgagors Title, See Deed in Book 25626 at Page 053 of the Worcester County Registry of Deeds

BK29672PG141

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 8th day of April, 2003 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to Sherwood Mortgage Group, Inc, 1 Ararat Street, Worcester, MA  (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

83-85 Whitney Street, Unit 83, Northborough, Massachusetts 01532
[ Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i ) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts, (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including but not limited to, earthquakes and floods, from which Lender requires insurance then: (i ) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligations under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

MULTISTATE CONDOMINIUM RIDER – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3140   1/01                    (Page 1 of 2 pages)

ACR

BK29672PG142

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_Allison L. Randle_ (Seal)
Allison L. Randle

                                                    Borrower

MULTISTATE CONDOMINIUM RIDER – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3140    1/01        *(Page 2 of 2 pages)*

ATTEST: WORC. Anthony J. Vigliotti, Register

# EXHIBIT "B"

BK 2 9 6 7 2 PG 1 4 3

97737

MIN #: 100037506006141155

75/20

Return to:
Sherwood Mortgage Group, Inc.
One Ararat Street
Worcester, MA 01606

## ASSIGNMENT OF REAL ESTATE MORTGAGE

For value received **Sherwood Mortgage Group, Inc.**, located at One Ararat Street, Worcester, MA 01606 hereby acknowledged, does hereby sell, assign, transfer, set over, grant and convey without representation, recourse or warranty, express or implied by and between assignor and **Mortgage Electronic Registration Systems, Inc.**, **P.O. Box 2026 Flint, MI 48501-2026, its successors and assigns, as nominee for GMAC BANK, its successors and assigns, located at 100 Witmer Road, Horsham, PA 19044** its successors and assigns forever, that certain mortgage executed by **Allison L. Randle** to **Sherwood Mortgage Group, Inc.** dated April 8, 2003 and recorded on _____ at Worcester County Registry of Deeds Book_____, Page_____ and instrument No.97736_____

03 APR 14  PM 3:03

SHERWOOD MORTGAGE GROUP, INC.

BY: ~~Corinne N. Smith~~  *Richard J. McNally*
ITS: Vice President

COMMONWEALTH OF MASSACHUSETTS

Worcester, ss *Worcester*                    April 8, 2003

Then personally appeared the above named ~~Corinne N. Smith~~ *Richard J. McNally* who executed the within instrument as Vice President on behalf of Sherwood Mortgage Group, Inc. and made oath that the foregoing instrument is true and acknowledged the foregoing to be his/her free act and deed, before me,

*Deborah McMahon DelBuono*
Notary Public
My commission expires: 6/13/0?

## ATTEST: WORC. Anthony J. Vigliotti, Register

# EXHIBIT "C"

Bk: 37075 Pg: 312

# THE COMMONWEALTH OF MASSACHUSETTS

(SEAL)

## LAND COURT

### DEPARTMENT OF THE TRIAL COURT



Bk: 37075 Pg: 312   Doc: COM
Page: 1 of 1   08/16/2005 12:49 PM

05 MISC 310699



To

Allison L. Randle

and all persons entitled to the benefit of the Soldiers' and Sailors' Civil Relief Act of 1940 as amended:

Mortgage Electronic Registration Systems, Inc.

claiming to be the holder of a mortgage
covering real property in   Northborough, numbered 83-85
Whitney Street, Unit No. 83,
Whitney Street Condominium

given by   Allison L. Randle to Sherwood Mortgage Group, Inc., dated April
8, 2003, and recorded with the Worcester County (Worcester District)
Registry of Deeds at Book 29672, Page 124 and now held by the
plaintiff by assignment

has filed with said court a complaint for authority to foreclose said mortgage

in the manner following:  by entry and possession and exercise of power of sale.

If you are entitled to the benefits of the Soldiers' and Sailors' Civil Relief Act of 1940 as amended and you object
to such foreclosure you or your attorney should file a written appearance and answer in said court at Boston on
or before the   12th   day of   September   2005   ,
or you may be forever barred from claiming that such foreclosure   is invalid
under said act.

Witness, KARYN F. SCHEIER, Chief Justice of said Court this
29th   day of   July   2005

HARMON LAW OFFICES, P.C.
150 CALIFORNIA ST.
NEWTON, MA 02458

**Deborah J. Patterson**
*Recorder*

LC0-5 (9/89)
200506-0464

A TRUE COPY
ATTEST:

*Deborah J. Patterson*

**RECORDER**

**ATTEST: WORC. Anthony J. Vigliotti, Register**

EXHIBIT "D"



Bk: 42806 Pg: 95
Page: 1 of 1  05/08/2008 09:53 AM  WD

# COMMONWEALTH OF MASSACHUSETTS
(SEAL)
# LAND COURT
# DEPARTMENT OF THE TRIAL COURT

To                                              Case No.
   **Allison L. Randle**

and to all persons entitled to the benefit of the Servicemembers Civil Relief Act.

**GMAC Mortgage, LLC**

08 MISC 369658

claiming to be the holder of a mortgage

covering real property in   **Northborough**

numbered       **Unit No. 83, Whitney Street Condominium, 83-85 Whitney Street**

given by

**Allison L. Randle to Sherwood Mortgage Group, Inc. dated April 8, 2003, and recorded at the Worcester County (Worcester District) Registry of Deeds in Book 29672, Page 124, and now held by plaintiff by assignment**

Has/have filed with said court a complaint for authority to foreclose said mortgage

in the manner following: **by entry and possession of and exercise of power of sale.**

If you are entitled to the benefits of the Servicemembers Civil Relief Act and you object to such foreclosure you or your attorney should file a written appearance and answer in said court at Boston on or before    **MAY 2 6 2008**

or you may be forever barred from claiming that such foreclosure is invalid under said act.

Witness, KARYN F. SCHEIER, Chief Justice of said Court on   APR 1 4 2008

**Attest:**            Deborah    J.    Patterson
                        *Recorder*

A TRUE COPY
ATTEST:
Deborah J. Patterson
**RECORDER**

p:\Massachusetts Foreclosures\Generated_Forms\Order of Notice_Foreclosure_Randle_G3910.00

ATTEST: WORC. Anthony J. Vigliotti, Register

EXHIBIT "E"

Bk: 43763 Pg: 10

Bk: 43763 Pg: 10
Page: 1 of 1  02/05/2009 09:42 AM  WD

(SEAL)

# COMMONWEALTH OF MASSACHUSETTS
## LAND COURT
### DEPARTMENT OF THE TRIAL COURT

09 JAN -8 PM 3: 15

To
**Allison L. Randle**

Case No.    369658

and to all persons entitled to the benefit of the Servicemembers Civil Relief Act.

**GMAC Mortgage, LLC**

claiming to be the holder of  a mortgage

covering real   property in    **Northborough**

numbered      **Unit No. 83, Whitney Street Condominium, 83-85 Whitney Street**

given by

**Allison L. Randle to Sherwood Mortgage Group, Inc. dated April 8, 2003, and recorded at the Worcester County (Worcester District) Registry of Deeds in Book 29672, Page 124, and now held by plaintiff by assignment**

Has/have filed with said court a complaint for authority to foreclose said mortgage

in the manner following: **by entry and possession of and exercise of power of sale.**

If you are entitled to the benefits of the Servicemembers Civil Relief Act and you object to such foreclosure you or your attorney should file a written appearance and answer in said court at Boston on or before the    FEB 2 3 2009

or you may be forever barred from claiming that such foreclosure  is invalid under said act.

Witness, KARYN F. SCHEIER, Chief Justice of said Court on this   JAN 0 8 2009

**Attest:**            Deborah    J.    Patterson
                      *Recorder*

A TRUE COPY
ATTEST:

Deborah J. Patterson

RECORDER

p:\Massachusetts Foreclosures\Generated_Forms\Order of Notice_Foreclosure_Randle_G3910.00

ATTEST: WORC. Anthony J. Vigliotti, Register

# EXHIBIT "F"



2009 00036161
Bk: 44048 Pg: 390
Page: 1 of 2 04/08/2009 02:58 PM WD

Record and Return to:
Doonan, Graves, & Longoria
Attn: Matt Kelly
100 Cummings Center
Suite 225D
Beverly, MA 01915

## ASSIGNMENT OF MORTGAGE

Know that, for valuable consideration, Mortgage Electronic Registration Systems, Inc., as nominee for GMAC Bank ("ASSIGNOR"), hereby sells, assigns, and transfers to GMAC Mortgage, LLC ("ASSIGNEE"), whose mailing address is 3451 Hammond Avenue , Waterloo, IA 50702, the Assignor's interest in a certain mortgage made by Allison L. Randle to Sherwood Mortgage Group, Inc. dated April 8, 2003 and recorded in the Worcester County (Worcester District) Registry of Deeds in Book 29672, Page 124, describing land therein as:

Date of Transfer: _____

83-85 Whitney Street, Unit 83 Whitney Street Condominium, Northborough, MA 01532

Dated: *April 2, 2009*

Mortgage Electronic Registration Systems, Inc., as nominee for GMAC Bank, **Assignor**

By: _____

Its: _____
Jeffrey Stephan
Vice President

State of California              )
County of Sacramento             )       ss.

On ~~April 2, 2009~~, before me, ~~Susan Turner~~, Notary
Public, personally appeared ~~Jeffrey Stephens~~, who proved to me on the basis
of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

Witness my hand and official seal.

Notary signature: 11-9-11

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Susan Turner, Notary Public
Upper Dublin Twp, Montgomery County
My Commission Expires Nov 9, 2011
Member, Pennsylvania Association of Notaries

**Mortgage Broker**

Name: _____

Address: _____

License #: _____

**Mortgage Originator**

Name: _____

Address: _____

License #: _____

# EXHIBIT "G"

Bk: 44634 Pg: 367

**(SEAL)**

# COMMONWEALTH OF MASSACHUSETTS
## LAND COURT
### DEPARTMENT OF THE TRIAL COURT

To

Allison L. Randle

Case No.   369658

and to all persons entitled to the benefit of the Servicemembers Civil Relief Act.

**GMAC Mortgage, LLC**

Bk: 44634 Pg: 367
Page: 1 of 1  07/27/2009 10:28 AM   WD

claiming to be the holder of a mortgage

covering real property in    **Northborough**

numbered        **83-85 Whitney Street, Unit 83 Whitney Street Condominium**

given by

**Allison L. Randle to Sherwood Mortgage Group, Inc., dated April 8, 2003, and recorded in the Worcester County (Worcester District) Registry of Deeds in Book 29672, Page 124, and now held by Plaintiff by assignment.**

Has/have filed with said court a complaint for authority to foreclose said mortgage

in the manner following: **by entry and possession of and exercise of power of sale.**

If you are entitled to the benefits of the Servicemembers Civil Relief Act and you object to such foreclosure you or your attorney should file a written appearance and answer in said court at Boston on or before   **AUG 1 0 2009**

or you may be forever barred from claiming that such foreclosure is invalid under said act.

Witness, KARYN F. SCHEIER, Chief Justice of said Court on   **JUN 2 5 2009**

**Attest:**

Deborah     J.     Patterson

*Recorder*
**A TRUE COPY
ATTEST:**

*Deborah J. Patterson*

**RECORDER**

ATTEST: WORC. Anthony J. Vigliotti, Register

RETURN TO: DROMAN, GRAVES & LONGORIA

# EXHIBIT "H"

# The General Laws of Massachusetts

[                    ] (Search the Laws)

Go To:
Next Section
Previous Section
Chapter Table of Contents
MGL Search Page
General Court Home
Mass.gov

## PART III. COURTS, JUDICIAL OFFICERS AND PROCEEDINGS IN CIVIL CASES

## TITLE III. REMEDIES RELATING TO REAL PROPERTY

## CHAPTER 244. FORECLOSURE AND REDEMPTION OF MORTGAGES

### GENERAL PROVISIONS

**Chapter 244: Section 35A. Right of residential real property mortgagor to cure a default; acceleration of maturity date; notice; fees and penalties associated with default; filing of notice**

*[ Text of section added by 2007, 206, Sec. 11 effective May 1, 2008 applicable as provided by 2007, 206, Sec. 21 as amended by 2007, 224, Sec. 2.]*

Section 35A. (a) Any mortgagor of residential real property located in the commonwealth consisting of a dwelling house with accommodations for 4 or less separate households and occupied in whole or in part by the mortgagor, shall have a 90 day right to cure a default of a required payment as provided in such residential mortgage or note secured by such residential real property by full payment of all amounts that are due without acceleration of the maturity of the unpaid balance of such mortgage. The right to cure a default of a required payment shall be granted once during any 5 year period, regardless of the mortgage holder.

(b) The mortgagee, or anyone holding thereunder, shall not accelerate maturity of the unpaid balance of such mortgage obligation or otherwise enforce the mortgage because of a default consisting of the mortgagor's failure to make any such payment in subsection (a) by any method authorized by this chapter or any other law until at least 90 days after the date a written notice is given by the mortgagee to the mortgagor.

Said notice shall be deemed to be delivered to the mortgagor when delivered to the mortgagor or when mailed to the mortgagor at the mortgagor's address last known to the mortgagee or anyone holding thereunder.

(c) The notice required in subsection (b) shall inform the mortgagor of the following:--

(1) the nature of the default claimed on such mortgage of residential real property and of the mortgagor's right to cure the default by paying the sum of money required to cure the default;

(2) the date by which the mortgagor shall cure the default to avoid acceleration, a foreclosure or other action to seize the home, which date shall not be less than 90 days after service of the notice and the name, address and local or toll free telephone number of a person to whom the payment or tender shall be made;

(3) that, if the mortgagor does not cure the default by the date specified, the mortgagee, or anyone holding thereunder, may take steps to terminate the mortgagor's ownership in the property by a foreclosure proceeding or other action to seize the home;

(4) the name and address of the mortgagee, or anyone holding thereunder, and the telephone number of a representative of the mortgagee whom the mortgagor may contact if the mortgagor disagrees with the mortgagee's assertion that a default has occurred or the correctness of the mortgagee's calculation of the amount required to cure the default;

(5) the name of any current and former mortgage broker or mortgage loan originator for such mortgage or note securing the residential property; and

(6) that the mortgagor may be eligible for assistance from the Massachusetts Housing Finance Agency and the division of banks and the local or toll free telephone numbers the mortgagor may call to request this assistance.

(d) To cure a default prior to acceleration under this section, a mortgagor shall not be required to pay any charge, fee, or penalty attributable to the exercise of the right to cure a default. The mortgagor shall pay late fees as allowed pursuant to section 59 of chapter 183 and per-diem interest to cure such default. The mortgagor shall not be liable for any attorneys' fees relating to the mortgagor's default that are incurred by the mortgagee or anyone holding thereunder prior to or during the period set forth in the notice required by this section. The mortgagee, or anyone holding thereunder, may also provide for reinstatement of the note after the 90 day notice to cure has ended.

(e) A copy of the notice required by this section and an affidavit demonstrating compliance with this section shall be filed by the mortgagee, or anyone holding thereunder, in any action or proceeding to foreclose on such residential real property.

(f) A copy of the notice required by this section shall also be filed by the mortgagee, or anyone holding thereunder, with the commissioner of the division of banks. Additionally, if the residential property securing the mortgage loan is sold at a foreclosure sale, the mortgagee, or anyone holding thereunder, shall notify the commissioner of the division of banks, in writing, of the date of the foreclosure sale and the purchase price obtained at the sale.