## <u>Exhibit 2</u>

## Final Judgment

( EAL)

COMMONWEALTH OF MASSACHUSETTS

LAND COURT

DEPARTMENT OF THE TRIAL COURT

WORCESTER, ss.                                                MISCELLANEOUS CASE
                                                              NO. 09 MISC 408202 (GHP)

_____

ALLISON L. RANDLE,                        )
                                          )
        Plaintiff,                        )
                                          )
        v.                                )
                                          )
GMAC MORTGAGE, LLC,                       )
                                          )
        Defendant.                        )
_____)


DECISION


        The plaintiff in this case, Allison L. Randle ("Randle") filed a complaint in this court on

August 12, 2009, seeking, among other things, a declaration that defendant GMAC Mortgage,

LLC ("GMAC Mortgage") does not hold any claim secured by a certain mortgage ("Mortgage")

recorded with the Worcester County Registry of Deeds ("Registry") at Book 29672, Page 124,

and lacks standing to bring an action against Randle pursuant to the Servicemembers Civil Relief

Act ("Servicemembers Act") and under legislation enacted in Massachusetts under and pursuant

to that federal law, see Acts 1942, c. 57, §§1 -3, as amended. The Mortgage secures a loan in the

original principal amount of $150,000.00, granted by Randle to Sherwood Mortgage Group, Inc.

("Sherwood") and purportedly encumbers property ("Locus" or "Property"), more particularly

1

described in the Mortgage, known as Unit 83 of the Whitney Street Condominium, located at 83-85 Whitney Street, Northborough, Worcester County, Massachusetts.

On May 4, 2010, I held a hearing on the motion for summary judgment, filed by the defendant GMAC Mortgage on April 1, 2010. The motion was accompanied by a statement of undisputed facts, see Land Court Rule 4, and three supporting affidavits. At the May 4 hearing, counsel for defendant alone argued; neither defendant nor counsel for defendant attended the hearing despite notice. The court had denied defendant's motion to continue the hearing. Defendant also did not file any written opposition to the plaintiffs summary judgment papers. The court, by order dated April 6, 2010, directed opposing papers from the defendant be filed and served so as to be received by April 30, 2010. The court also had denied a motion by defendant to enlarge the time for opposing the summary judgment motion of the plaintiff. After the hearing, I took the motion under advisement and now decide the case.

The following facts and procedural history are established by materials properly within the Mass. R. Civ. P. 56 record, and are undisputed:

1.    Randle executed a note ("Note") in the original principal amount of $150,000.00 in favor of Sherwood on April 8, 2003, secured by the Mortgage. Before the Mortgage made it to record at the Registry on April 14, 2003, the Note was transferred three times:

    a.    Sherwood assigned the Note to GMAC Bank by endorsement dated April 8, 2003.

    b.    GMAC Bank assigned the Note to GMAC Mortgage Corporation by specific endorsement, which was not dated.

---

[1] See also Land Court Rule 4 (where moving party's statement of material facts has not been countered by opposing party, "the facts described by the moving party as undisputed shall be deemed to have been admitted.")

c.      GMAC Mortgage Corporation endorsed the Note "in blank"; this endorsement is

not dated.

2.      Recorded at the Registry simultaneously with the Mortgage on April 14, 2003, at Book

29672, Page 143, is an Assignment of Real Estate Mortgage from Sherwood to Mortgage

Electronic Registration Systems, Inc., ("MERS") as nominee for GMAC Bank, dated

April 8, 2003.

3.      By April in 2005, Randle was approximately $2,700.00 behind on her repayment

obligations under this loan. On June 23, 2005, MERS, in anticipation of foreclosing on

the Mortgage, filed a complaint pursuant to the Servicemembers Act and the

implementing Massachusetts legislation ("Original Servicemembers Case"), seeking a

determination that the defendant, Randle, was not entitled to the benefit of the

Servicemembers Civil Relief Act. The Original Servicemembers Case was docketed by

the Land Court as **MERS v. Randle.** Miscellaneous Case No. 05 MISC 310699. On

September 6, 2005, Randle filed a Notice of Removal to the United State District Court,

purportedly invoking that court's jurisdiction over federal questions under 28 U.S.C.

1441(b) and 1446(a).[2]

4.      On or about November 10, 2005, the District Court dismissed the case. The Land Court

Docket indicates that, on December 31, 2007, the Original Servicemembers Case in this

court was closed for statistical purposes.

5.      On November 21, 2007, GMAC Mortgage, through counsel, sent a letter to Randle,

---

[2] Randle's Notice of Removal alleges, among other things, that the forms of Summons and Complaint that Massachusetts uses in Servicemembers Act cases are constitutionally deficient, and that the Servicemembers Act, to the extent it authorizes such forms, is likewise unconstitutional.

informing her that she had thirty days either to bring her loan current, or to pay off the loan, or otherwise face foreclosure. The letter specifically advised Randle that unless the account was brought current in the next thirty days, GMAC Mortgage would accelerate payment and sell all property encumbered by the Mortgage at a foreclosure sale.

6.    Not receiving any payment from Randle, GMAC Mortgage accelerated the loan and filed a complaint on January 14, 2008 pursuant to the Servicemembers Act and the implementing Massachusetts legislation, once again seeking a determination that the defendant, Randle, was not entitled to the benefit of the Servicemembers Civil Relief Act; the Land Court Case which commenced with that filing is GMAC Mortgage, LLC v. Randle, Miscellaneous Case No. 08 MISC 369658 ("Servicemembers Case").

7.    On April 14, 2008, the Land Court issued an Order of Notice in the Servicemembers Case, returnable May 26, 2008. On May 8, 2008, the Order of Notice was recorded with the Registry at Book 42806, Page 95.

8.    On May 27, 2008, Randle removed the Servicemembers Case to the United States District Court for the District of Massachusetts, see GMAC Mortgage, LLC v. Randle, No. 08-40102 (D. Mass. filed May 27, 2008).[3]

9.    By letter dated January 8, 2009 and received by the Land Court that same day, GMAC Mortgage, through counsel, reported the need for additional time within which to complete service and to publish notice, and requested that the Land Court cancel the

---

[3] On or about May 27, 2008, one Joshua J. DiMare entered a special appearance in the District Court in the Servicemenabers Case. DiMare claimed to be entitled to benefits under the Servicemembers Act by virtue of active service in the military of the United States. From the summary judgment record assembled, it is unclear what connection, if any, DiMare has to the Locus or the Mortgage at issue in this case.

4

previous return date of May 26, 2008. Proposed Orders of Notice apparently were attached to the letter. Notwithstanding the cases presence at the time in the United States District Court, on January 8, 2009, this court, responding to this request, canceled the original Order of Notice and the next day, January 9, 2009, issued a new Order of Notice, returnable February 23, 2009, which was recorded at the Registry on February 5, 2009, at Book 43763, Page 10.

10.  Also while the case remained at the United States District Court, on February 20, 2009, Randle filed with the Land Court her answer to the Servicemembers complaint.

11.  On April 2, 2009, MERS assigned the Mortgage to GMAC Mortgage, by Assignment recorded on April 6, 2009 at the Registry in Book 44048, Page 390.

12.  The Servicemembers Case returned to the Land Court on April 26, 2009 when the United States District Court (Saylor, J.) issued an Order of Remand. On July 27, 2009, Randle filed a motion with the Land Court that requested a hearing on her cross motion to dismiss, which had been filed in the District Court, but not acted upon by it prior to the remand to this court. Two days later, on July 29, 2009, GMAC Mortgage filed a Motion to Strike the Defendants' Answer, Affirmative Defenses and Cross Motion, and a Motion to Strike the Interested Party, Joshua J. DiMare, PFC's Answer, Affirmative Defenses.

13.  Meanwhile, on June 15, 2009, the Land Court cancelled the Order of Notice issued on January 9, 2009 because of "non-use by Attorney." A third Order of Notice issued on June 25, 2009, with a return date of August 10, 2009. The third Order of Notice went to record on July 27, 2009. On July 28, 2009, August 4, 2009, and August 11, 2009, GMAC Mortgage published a Notice of Mortgagee's Sale of Real Estate in the Worcester

5

Telegram & Gazette ("Publication"). The Publication, published pursuant to G. L. c. 244, § 14, identified GMAC Mortgage as the holder of the Mortgage, and in the form prescribed by the statute, announced a foreclosure sale for August 24, 2009.

14.     On August 10, 2009, the Land Court (Trombly, J.) issued an Order to Show Cause why a judgment authorizing foreclosure should not issue in the Servicemembers Case.

15.     On August 12, 2009, Randle filed this case, Randle v. GMAC Mortgage, LLC, Miscellaneous Case No. 09 MISC 408202, in the Land Court where it was assigned to me ("Miscellaneous Case"). At filing, Randle presented a request for a temporary restraining order, seeking to enjoin the defendant from conducting the foreclosure sale on the published August 24th date. I denied Randle's application for a temporary restraining order on the day it and this Miscellaneous Case were filed, and instead issued a short order of notice, scheduling a preliminary injunction hearing for Monday, August 24, 2009. This hearing date, and not an earlier one, was selected by the court at the request of plaintiff's counsel, who advised the Recorder's office that he would be unavailable in the interim.

16.     On August 21, 2009, Randle filed a Suggestion of Bankruptcy informing the court that on August 20, 2009, one Avrom Michaels filed in the Bankruptcy Court for the Eastern District of Tennessee an involuntary petition for relief under Chapter 7 of the United States Bankruptcy Code against one Richard S. Mara, who purports to hold a junior lien on the Locus.'

---

[4]  Attached to the Suggestion of Bankruptcy were: (1) a Mortgage Deed dated May 23, 2005 from Randle to Ara Eresian, Jr. as Trustee of Zu Zu Realty Trust, conveying Locus to secure payment of a debt of $13,500.00, recorded with the Registry on September 9, 2005 at Book 37283, Page 70 ("Junior Lien"); (2) an Assignment of Mortgage Deed from Ara Eresian, Jr. as Trustee of Zu Zu Realty Trust, assigning the Junior Lien to VII Holdings

17.    Counsel for Randle and for GMAC Mortgage appeared before me in the Miscellaneous

Case on the morning of August 24, 2009 for argument on Randle's motion for an order

enjoining the foreclosure sale, scheduled for later that afternoon. After argument, I ruled

that the bankruptcy of Richard S. Mara did not prevent me from reaching the merits of the

preliminary injunction request, and I denied the request for preliminary injunction.'

18.    GMAC Mortgage went through with the foreclosure sale on August 24, 2009 (although

the purchase of the Property by the high bidder since has fallen through and Locus

---

Company, dated May 23, 2005, and recorded with the Registry on September 13, 2005 at Book 37301, Page 21; and
(3) an Assignment of Mortgage dated February 22, 2007, from VII Holdings Company to Richard S. Mara. This
assignment went to record on **August 18, 2009 at** the Registry in Book 44736, Page 27. One Joseph S. DiMare
signed on behalf of VII Holdings; the relation, if any, of Joseph S. DiMare to Joshua J. DiMare, PFC, is not apparent
from the record.

    [4]  The court's docket contains the following entry for August 24, 2009:

    Hearing Held on Plaintiffs Application for Preliminary Injunction. Attorneys Sanchez and
    Calandrelli Appeared and Argued. The Court First Determined that the Suggestion of Bankruptcy
    of Richard S. Mara, a Junior Lienholder and Not a Party to this Case, Filed August 20, 2009 in the
    U.S. Bankruptcy Court for the Eastern District of Tennessee, Did Not Implicate the Automatic
    Stay and Did Not Prevent the Court from Reaching the Merits of the Application for Preliminary
    Injunction. Mara Is Not a Named or Necessary Party to this Land Court Litigation. Defendant
    Instructed to Determine Whether or Not Automatic Stay Prevents Going Forward with Scheduled
    Foreclosure Sale. Able to Reach the Merits, the Court, After Hearing, Applying the Applicable
    Standard in Mass. R. Civ. P. 65, DENIED the **Application** for the Following Reasons which Were
    Laid Upon the Record from the Bench: (1) Plaintiff Failed to Meet Her Burden of Demonstrating a
    Likelihood of Success on the Merits on her Claim that Defendant Mortgagee Failed to Give
    Plaintiff Notice Due Under G. L. c. 244, § 35A. That Statute Does Not Apply to "mortgages
    accelerated or whose statutory condition has been voided under the terms of the mortgage . . . prior
    to May 1, 2008," see St. 2007, c. 206, § 21. The Court Finds the Subject Mortgage Was
    Delinquent Since 2005, in Material Continuing Payment Default (In Breach of the Statutory
    Condition, see G. L. c. 183, § 20); the Court Draws Inference, Based on Mortgagee Having
    Commenced Two Servicemember's Actions, that Subject Mortgage Was Accelerated Prior to May
    1, 2008. (2) Plaintiff Failed to Meet Her Burden of Demonstrating a Likelihood of Success on the
    Merits on her Claim that Mortgagee Lacked Standing to Commence a Servicemember's Action, the
    Court Ruling that an Entity Other than the Record Holder of the Mortgage, Which Has Some Stake
    or Interest in the Mortgage, May Commence a Servicemember's Action. (3) Plaintiff Failed to
    Meet Her Burden of Demonstrating a Likelihood of Success on the Merits on her Claim that the
    Recorded Assignments of Mortgage, Including That Dated April 2, 2009, Failed to Assign the
    Underlying Note and Debt, thus Rendering the Mortgage Unenforceable by Defendant. The Court
    Drew the Inference that the Defendant Assignee, Having Knowledge of the Delinquency, Would
    Not Have Taken the Mortgage Without Also Taking the Notes, and With it the Right to Foreclose
    and Sue on the Debt.

7

remains unsold, perhaps, though not necessarily or entirely, as a consequence of this litigation). On September 10, 2009, the Land Court (Trombly, J.) issued an Order Striking Defendant's Answer in the Servicemembers Case; the court thereupon the same day allowed the plaintiff's Motion to Take Complaint Pro Confesso (Patterson, Rec.).

19.    On October 22, 2009, counsel for Randle and for GMAC Mortgage participated in a case management conference in this Miscellaneous Case. The date originally ordered by this court for this case management conference was October 2, 2010, but the conference was continued at the request of pliintiff's counsel, who represented that he was obliged to be in another court that earlier date. At the time the case management conference took place on October 22, 2010, there was no judgment reflected on the docket of the Servicemembers Case, which remained open on the court's docket. This fact was discussed by counsel and the court at the Miscellaneous Case conference.

20.    As directed by the court, GMAC Mortgage filed on November 5, 2009, a report on the status of the bankruptcy proceedings against Richard S. Mara. The report indicated that the petition was dismissed on October 13, 2009, but that a notice of appeal had been filed on October 23, 2009.

21.    On February 8, 2010, in the Servicemembers Case, Randle filed a Motion to Vacate Judgment Nunc Pro Tune for Lack of Due Process of Law, accompanied by a letter dated February 4, 2010 detailing what Randle characterized as appearing to be "a serious infraction of court rules and procedure." The letter was filed in this, the Miscellaneous Case, *as* well as the Servicemembers Case. According to the Motion to Vacate, and the accompanying letter, Randle learned that on.November 23, 2009, in the Servicemembers

8

Case, GMAC Mortgage filed a letter with the Land Court requesting that "the

interlocutory Order of Judgment enter on August 11, 2009, and that the final order of

Judgment enter August 18, 2009" to ensure that judgment in the Servicemembers Case

would pre-date the foreclosure sale, which took place on August 24, 2009. Randle was

not served with a copy of this cormnimication between the Land Court and foreclosure

counsel for GMAC Mortgage. Randle also reported that on December 1, 2009, an

assistant clerk of the Land Court sent a letter to GMAC Mortgage's foreclosure counsel

indicating that a judge of the Land Court had declined to enter judgment on the August

18, 2009 date as GMAC Mortgage had requested, and that "[t]he Judgment authorizing

foreclosure which was entered on September 17, 2009 stands."

22.     It is not clear from the record when the Judgment in the Servicemembers Case actually

entered on the docket. It was certainly after October 22, 2009, the date of the case

management conference in this case, at which the court and counsel took note of the

Servicemembers docket and observed that no judgment yet had been noted on it, and

before December 1, 2009, when the assistant clerk was able to ascertain the date,

presumably by checking the docket.

23.     GMAC Mortgage moved to strike Randle's letter of February 4, 2010. I took no action

on the motion. On February 23, 2010, counsel for all parties appeared for hearing on a

discovery motion in the Miscellaneous Case, and a simultaneous status conference in the

Servicemembers Case. I instructed GMAC Mortgage to file a motion for summary

judgment in the Miscellaneous Case, and scheduled hearing on Randle's Motion to

Vacate. GMAC Mortgage filed its motion for summary judgment on April 1, 2010. On

April 6, 2010, I scheduled a hearing on the motion for May 6, 2010; Randle's opposition *was* to be filed by April 23, 2010, and any reply from GMAC Mortgage was to be filed and served so as to be received by Friday, April 30, 2010,

24.    On April 13, 2010, in the Servicemembers Case, I held a hearing on Randle's Motion to Vacate. Attorneys Sanchez and Longoria appeared and argued. After hearing, I ruled that no action would be taken on the Motion to Vacate pending hearing on the motion for summary judgment in the Miscellaneous Case.

25.    On April 23, 2010, Randle filed an Emergency Motion and to Enlarge Time to File and Serve an Opposition to Defendant's Motion for Summary Judgment; For Leave to File and Serve a Cross-Motion for Partial Summary Judgment; For Leave to File and Serve a Supplemental Pleading Setting Forth Transactions Which Have Happened Since the Date of Plaintiffs Original Pleading; and to Reschedule Hearing Date for Cause. GMAC Mortgage filed written opposition on April 29, 2010. On April 30, 2010, I denied the motion, directing that the hearing on GMAC Mortgage's motion for summary judgment would proceed as scheduled on May 4, 2010.

26.    On May 3, 2010, Randle filed a Notice of Petition [to a Single Justice of the Appeals Court] for Interlocutory Relief on Order Denying Plaintiffs Motion for Continuance and to Amend Complaint. The next day, Attorney Hackett appeared before me for GMAC Mortgage for argument on summary judgment in the Miscellaneous Case, and Attorney Longoria appeared for GMAC Mortgage for a status conference in the Servicemembers Case. Neither Randle nor her counsel appeared. Attorney Hackett expressed her client's desire to go forward with the argument notwithstanding the petition to the single justice.

After hearing argument, I took under advisement the motion for summary judgment, and the Motion to Vacate from the Servicemembers Case. The next day, the Land Court received notice that the Appeals Court single justice (Trainor, J.) denied Randle's interlocutory petition.

27.     Randle does not now have, and has never had, any status which would entitle her to the benefits of the Servicemembers Civil Relief Act.

Summary judgment is appropriate in those cases where no genuine issues exist as to material fact and where the moving party is entitled to judgment as a matter of law. Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass. R. Civ. P. 56(c). The moving party must affirmatively show the absence of any triable issues or facts. Pederson v. Time Inc., 404 Mass. 14, 16-17 (1989). In deciding motions for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party can satisfy this burden by submitting affirmative evidence showing that the opposing party has no reasonable expectation of proving an essential element of its case or by negating an essential element of the opposing party's case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

It is undisputed that GMAC Mortgage is now the record holder of the Mortgage, and therefore there are only two issues (and one sub-issue) for decision on summary judgment in the Miscellaneous Case: (1) whether Randle's claimed right to challenge the standing of GMAC Mortgage to have filed the Servicemembers Case requires a judgment in this, the Miscellaneous

11

Case, declaring the foreclosure invalid; and (2) whether Randle was entitled to the ninety-day

right to cure set out in the relevant version of G. L. c. 244, §35A.

1.  Judgment in the Servicemembers Case

        Randle argues, essentially, that due to the chronology of the assignments of the Mortgage,

and of their recording in the Registry, relative to the filing and prosecution of the

Servicemembers Case by GMAC Mortgage (which proceeded with the foreclosure sale on

August 24, 2010), and also due to the evident discrepancy in the date the Judgment in the

Servicemembers Case truly was entered on the docket, the foreclosure sale by GMAC Mortgage,

(and any further sale GMAC Mortgage might undertake in light of the failure to consummate the

first sale) cannot be valid and cannot be effective to pass a title to the high bidder at such a sale.

This argument ignores the long-established limited scope of servicemembers proceedings in

Massachusetts.

        A foreclosure is not invalid because title passed on a date prior to the issuance of the

judgment in a Servicemembers case, which, under the legislation implementing the Act of

Congress in Massachusetts, has a limited scope and purpose and does not permit litigation of

broader issues involving the relationship between borrower and lender. See Beaton v. Land

Court, 367 Mass. 385 (1975); Blackfoot Capital, LLC v. Campaniello, 16 LCR 1, 2 (2008)

(Misc. Case No. 334598) (Sands, J.) (holding failure to comply with terms of Servicemembers

Act in conjunction with foreclosure not cloud on title where obligor not entitled to benefits under

Act). GMAC Mortgage could conduct a valid foreclosure sale, and pass an effective title to the

high bidder at the auction, even if GMAC Mortgage never had even commenced a

servicemembers case: "If a foreclosure were otherwise properly made, failure to comply with the

1940 Relief Act [does] not render the foreclosure invalid as to anyone not entitled to the
protection of that act." Beaton, 367 Mass. at 390. Nothing in the later amendments to the
Massachusetts implementing legislation casts any doubt on this holding in Beaton. Whatever
deficiencies might lie in the judgment in the Servicemembers Case are of no consequence here
because Randle concedes she is not, nor ever has been, entitled to benefits under the Act.
Accordingly, even if Randle obtains the full relief she seeks in the Servicemembers Case, that is,
to have the Judgment vacated and to require GMAC Mortgage to commence a whole new case
by filing a new servicemembers complaint, that would not affect the validity of the foreclosure
that GMAC Mortgage already has made, nor of any foreclosure that GMAC Mortgage may
conduct in light of the failure to consummate the first foreclosure sale.

2. Standing of the Mortgagee

The Massachusetts enactment of legislation implementing in the Commonwealth a
procedure for obtaining judgments under the Servicemembers Civil Relief Act, see Acts 1943, c.
57, §§ 1 - 3, as amended, carefully provides that "[i]n proceedings under this section, no person
who is not entitled to the benefit of the [Servicemembers Civil Relief Act] . . shall be entitled to
appear or be heard" and that "proceedings shall be limited to the issues of existence of such
person [who are entitled] and their rights, if any." St. 1959, c. 105, § 2; see also Beaton, supra,
367 Mass. at 387-388.

Nonetheless, a person or entity must have some connection to the mortgagor, the
mortgage, the premises conveyed by the mortgage, or their title, to bring a servicemembers
action. One entirely disconnected from the mortgaged land and from the mortgage loan
transaction and its attendant documents would not ordinarily have grounds to have the court

13

adjudicate the entitlement (or not) of a mortgagor or owner to the benefits of the Servicemembers Civil Relief Act. Courts do not decide hypothetical cases, or ones in which the party seeking the judgment has no more than a hypothetical interest. This basic standing requirement is satisfied, however, by the plaintiff having some interest in the subject mortgage, the mortgaged premises, and the title to them. That interest well may be sufficient even though it might, and often does, fall far short of being a current record holder of the mortgage. Here, the Servicemembers Case was commenced on January 14, 2008, but GMAC Mortgage did not become the record holder until April 6, 2009, when GMAC Mortgage recorded an assignment from MERS, which at that time held the Mortgage as nominee for GMAC Bank. Randle claims that she hAR a right to challenge the standing of GMAC Mortgage to have filed the Servicemembers Case; as a vehicle to vindicating this right, she has filed the Miscellaneous Case.

GMAC Mortgage has not produced any documents or offered any argument or explanation as to what relevant interest it might have held in the four months leading up to receiving the Mortgage by assignment. Instead, GMAC Mortgage argues that the standing of a mortgagee to commence a servicemembers action is not a live issue in determining the validity of a foreclosure when the mortgagee was the record holder of the subject mortgage at the time of publication under the statutory power of sale, pursuant to G.L. c. 244, § 14, and at the time of the foreclosure sale. See <u>U.S. Bank Nat'l Assoc. v. Ibanez,</u> 17 LCR 202 (2009) (Misc. Case Nos. 384283 & 386755) (Long, J.)(direct appellate review granted, see SJC-10694) ("<u>Ibanez</u>")). The position of GMAC Mortgage is correct. Randle has not demonstrated that the foreclosure should be declared invalid as a result of a shortcoming in the foreclosing party's standing as plaintiff in the Servicemembers Case because, even assuming arguendo that GMAC Mortgage was unable to

14

overcome the low hurdle that is required to establish standing to bring a servicemembers action, GMAC Mortgage's lack of standing would not affect the validity of the foreclosure sale--because GMAC Mortgage held the mortgage when it published notices of, and when it conducted, the foreclosure sale. Even if the Servicemembers Judgment were to be vacated or tobe declared invalid, it would not affect the validity of any foreclosure by GMAC Mortgage of the Mortgage of the Property, because Randle concededly is not entitled to benefits under the act. See Beaton, supra, 367 Mass. 385 (1975).

Randle confuses or conflates the issue in Ibanez with the issues in this case. In Ibanez, two foreclosures were determined by this court to be invalid because the foreclosing parties failed to comply with the provisions of G.L. c. 244, § 14 that require notice be given which "identiffies] the holder of the mortgage." See Ibanez, 17 LCR at 204 (failure to identify holder of mortgage renders sale void as matter of law); Ibanez, 17 LCR at 206-07 (foreclosure invalid where foreclosing party named in notice had not been assigned mortgage either on or off record). To reach this conclusion, a Justice of the Land Court determined that a bank does not "hold" a mortgage, within the meaning of G.L. c. 244, §14, before a valid assignment has been executed and delivered. Ibanez, 17 LCR at 207. Nothing in Ibanez stands for the proposition that a foreclosing party needs to "hold" the mortgage to file a complaint under the Servicemembers Civil Relief Act for a determination that the mortgagor or owner is not entitled to the benefits of the federal Act, and Randle has pointed to no authority in support of such a contention. Accordingly, I do not even need to reach in this Miscellaneous Case the question of whether GMAC Mortgage had standing to commence the Servicemembers Case. The answer to that question could not and does not affect the outcome here.

3. <u>The Right to Cure</u>

The Verified Complaint in the Miscellaneous Case presents the alternative argument that,

to the extent GMAC Mortgage holds any claim secured by the Mortgage, it is not able to

foreclose because it did not provide Randle with the notice and opportunity to cure required by

G.L. c. 244, § 35A, which, at the time relevant, provided in pertinent part, with exception not

here of consequence, that a mortgagor "shall have a 90 day right to cure a default . . . by full

payment of all amounts that are due without acceleration of the maturity of the unpaid balance of

such mortgage[,]" and that "[t]he mortgagee . . . shall not accelerate maturity of the unpaid

balance . . or otherwise enforce the mortgage . . until at least 90 days after the date a written

notice is given by the mortgagee to the mortgagor." See G.L. c. 244, § 35A (inserted by St. 2007,

c. 206, § 11).[6] The enabling act provided that "[s]ection. 11 shall take effect on May 1, 2008 and

apply to all [residential] mortgages . . . which secure[] a loan before, on or after the effective date

of this act[,]" but that "section 11 shall not apply to such mortgages accelerated or whose

statutory condition has been voided under the terms of the mortgage to secure the note, prior to

the effective date of this act." See St. 2007, c. 206, § 21.

Hence, to determine whether Randle was entitled under this enactment to either the

ninety-day right to cure, or the written notice, we simply must look to the legislatively chosen

date of May 1, 2008 and determine whether the mortgage had been "accelerated or whose

---

[6] The legislature has recently amended G.L. c. 244, §35A by Acts 2010, c. 258, §§7 and 8, the first effective date of which (as to the version of the statute reenacted in §7 of the session law) appears to be August 7, 2010, a date which is after the pending motion was submitted. Given this timing, there is no contention before the court that these later changes to the statute are implicated in this case. Moreover, upon review of the amendments, it does not appear that, even. if the later version of the law were to play any role in this case, there would be any reason to alter the rulings made in this decision.

statutory condition has been voided under the terms of the mortgage to secure the note.'" The

"statutory condition" is that found in G.L. c. 183, §20, and failure to make required payments is a

breach of the statutory condition.  See, e.g. Negron v. Gordon, 373 Mass. 199, 205 (1977) ("in

this case there has been a breach of the statutory condition in that the mortgagor did not make the

required mortgage payments"). As of May 1, 2008, Randle already had breached the statutory

condition because Randle had been materially delinquent in her mortgage payments since, at the

least, April of 2005. Randle was not entitled to the ninety-day right to cure, or the notice

required by G.L. c. 244, § 35A, because that section does not apply to "such mortgages . . .

whose statutory condition has been voided . . . prior to" May 1, 2008. See St. 2007, c. 206, § 21.

More obviously, GMAC Mortgage was not prevented from accelerating the mortgage by

G.L. c. 244, § 35A because it had already accelerated the Mortgage by the time the statute went

into effect. See St. 2007, c. 206, § 21 ("section 11 shall not apply to . . mortgages accelerated .

. prior to the effective date of this act"). According to the undisputed facts, the Mortgage was

accelerated in January of 2008 at the time GMAC Mortgage filed its Complaint to Foreclose in

---

[7] There is no dispute that the Mortgage is of "residential real property located in the
commonwealth consisting of a dwelling house with accommodations for 4 or less separate
households and occupied in whole or in part by the mortgagor," which are the other statutory
conditions for eligibility. See G.L. c. 244, § 35A (a).

[8] Strictly speaking, a mortgage is not commonly itself "accelerated." A mortgage, rather,
is declared in default, and the statutory condition of the mortgage is breached, entitling the
mortgagee, among other things, to exercise of the statutory power of sale. Acceleration is
ordinarily thought of as the act of the lender in declaring the mortgage debt due in full based on a
material and uncured default in the borrower's undertakings, certainly including the covenant
to pay under the note as and when required. See, e.g., G.L. c. 244, § 35A(b), inserted by Acts 2007,
c. 206, §11 (mortgagee, etc. "shall not accelerate maturity of the unpaid balance of such
mortgage obligation or otherwise enforce the mortgage because of the mortgagor's failure to
make [described] payment....1. But there can be little doubt that, on the undisputed facts in this
summary judgment record, the milestone set by the legislature to be reached by May 1, 2008 had
been reached much before then, given the extensive and extended record of non-payment by

17

the Servicemembers Case. See Longoria Sturm J Aff. 3 ("As a result, in January 2008, the loan was accelerated when I filed a complaint..."). Section 35A of G.L. c. 244 was no bar to accelerating the debt (or from foreclosing upon the Mortgage) because that law did not go into effect until nearly five months after the Mortgage had been accelerated. The legislative determination was that mortgage loans already in default, as of May 1, 2008, were not to be addressed by, nor to have the benefits of, the palliative provisions of § 35A.[9]

Randle and of enforcement of remedies by her lender.

[9] To the extent Randle's contentions reach to say that, owing to the lack of proper provision to her of the notice and right to cure created by the legislature in Acts 2007, c. 206, §11, GMAC Mortgage could not even have commenced the Servicemembers Case, there is room for doubt whether the protections of that law, as codified in G.L. c. 244, §35A, would even prevent the filing of a servicemembers proceeding against her. That is because what, under this statute (as in effect at the relevant time), the "mortgagee, or anyone holding thereunder," may not do is "accelerate maturity of the unpaid balance of such mortgage obligation or otherwise enforce the mortgage because of a default consisting of the mortgagor's failure to make ... payment by any method authorized by this chapter [G.L. c. 244] or any other law until at least 90 days after the date a written notice is given by the mortgagee to the mortgagor." G.L. c. 244, §35A (b). A servicemembers action is in no manner an action to "enforce" the mortgage. It is not an action to foreclose a mortgage. Cf. G.L. c. 244, §1. A servicemembers proceeding is simply a legislatively established method of obtaining a judicial determination that certain interested parties do not have the benefits of the Act of Congress; where, as here, the mortgagor owner has no claim to protection under the Act of Congress, a foreclosure validly can take place in the Commonwealth under the mortgage's statutory power of sale without judicial action, and in the absence of a determination as to servicemember status. Beaton, supra, 367 Mass. 385 (1975). I need not decide in this action whether or not the provisions of §35A would stand in the way of filing a servicemembers case without the prior provision of the notices and cure right extended by that section, because it is clear that those protections do not extend to Randle, given the effective date for this section of the General Laws chosen by the legislature, and the uncontested dates in the chronology of her nonpayment and subsequent interactions with her lender, see discussion above.

For the forgoing reasons, summary judgment must be granted to the defendant. I will direct entry of a judgment dismissing the complaint with prejudice.

Judgment accordingly.

_____
Gordon H. Piper
Justice

Dated: October 12, 2010.

(SEAL)

COMMONWEALTH OF MASSACHUSETTS

LAND COURT

DEPARTMENT OF THE TRIAL COURT

WORCESTER, ss.                                    MISCELLANEOUS CASE
                                                 NO. 09 MISC 408202 (GHP)

| | |
|---|---|
| ALLISON L. RANDLE, | ) |
| Plaintiff, | ) |
| v. | ) |
| GMAC MORTGAGE, LLC, | ) |
| Defendant. | ) |

# JUDGMENT

    This action commenced in this court on August 12, 2009. Plaintiff Allison Randle seeks to prevent a foreclosure sale by defendant GMAC Mortgage, LLC ("GMAC Mortgage"), and asks for judgment declaring that GMAC Mortgage does not hold any claim secured by a certain mortgage ("Mortgage") recorded with the Worcester County Registry of Deeds at Book 29672, Page 124, and lacks standing to bring an action against plaintiff Allison Randle pursuant to the Servicemernbers Civil Relief Act, and under legislation enacted in Massachusetts under and pursuant to that federal law, see Acts 1942, c. 57, §§ 1-3, as amended. The Mortgage concerns property, more particularly described in the Mortgage, known as Unit 83 of the Whitney Street Condominium, located at 83-85 Whitney Street, Northborough, Worcester County, Massachusetts.

    This case came on to be heard on defendant's Motion for Summary Judgment. In a decision of even date, the court (Piper, J.) has granted that motion, determining that a summary judgment should enter in favor of the defendant GMAC Mortgage on all claims.

    In accordance with the court's decision issued today, it is

1

**ORDERED and ADJUDGED** that plaintiff's complaint is <u>DISMISSED</u> with prejudice.

By the Court. (Piper, J).

Attest:

_____
Deborah. J. Patterson
Recorder

Dated: October 12, 2010.

A TRUE COPY
ATTEST:

Aot Latt        ,teb-reScr%.
RECORDER

2