## Exhibit 6

**GMACM Objection to Respondent's Reconsideration Motion**

Prince Lobel Glovsky & Tye LLP
100 Cambridge Street, Suite 2200
Boston, Massachusetts 02114

617 456 8000 main  617 456 8100 fax
PrinceLobel.com

# ◤ PRINCE LOBEL

November 10, 2010

**BY HAND**

Civil Clerk's Office
Land Court
226 Causeway Street
Boston, MA  02114

Re:    Allison L. Randle v. GMAC Mortgage, LLC.
       Case No. 09-MISC-408202-GHP

Dear Sir/Madam:

Enclosed please find for filing the following in the above matter:

1.    GMAC Mortgage, LLC's Opposition to Allison Randle's Motion to Alter or Amend the
      Judgment and Request for Sanctions.

Kindly docket and file in the usual manner:

Very truly yours,

*Joseph Calandrelli*

Joseph P. Calandrelli
Direct Dial:  617-456-8096
Email:  jcalandrelli@PrinceLobel.com

JPC/jlk
Enclosure
cc:    Israel Sanchez, Esq. (By Overnight Mail)

1235704.1

RECYCLED

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.

LAND COURT
NO. 08-MISC-369658-GHP
NO. 09-MISC-408202-GHP

|  |  |
|---|---|
| ALLISON L. RANDLE, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| GMAC MORTGAGE, LLC, | ) |
|  | ) |
| Defendant. | ) |

## GMAC MORTGAGE, LLC'S OPPOSITION TO ALLISON RANDLE'S MOTION TO ALTER OR AMEND THE JUDGMENT AND REQUEST FOR SANCTIONS

### (Memorandum of Law Incorporated)

While altogether avoiding any personal responsibility for failing to oppose the Motion for Summary Judgment filed by GMAC Mortgage, LLC ("GMAC Mortgage") more than six months ago, Plaintiff Allison Randle ("Randle") now claims that GMAC Mortgage and this Court acted improperly in moving for and allowing judgment to enter in its favor. She now seeks to reverse that judgment. Randle, however, is not entitled to the relief she seeks.

Rule 59(e) of the Massachusetts Rules of Civil Procedure simply does not permit a party to raise new "facts" or arguments that were available to them prior to judgment. Randle does not even attempt to explain why she was unable to raise her arguments in opposition to the summary judgment motion. In fact, the single document on which she claims entitles her to relief is a matter of public record that was available to her and her counsel throughout the entirety of this litigation and, as a result, cannot qualify as "newly discovered" evidence sufficient to challenge

the Court's ruling.  Moreover, even if this Court were to consider Randle's arguments, they don't change the legal outcome in this case.  As correctly found by the Court, the fact that Randle was never entitled to the benefits of the Servicemembers Civil Relief Act (the "Act") precludes her claim that GMAC Mortgage lacked standing to file a complaint to foreclose.  Since GMAC Mortgage (and not GMAC Bank) was the undisputed holder of the promissory note and mortgage at the time it issued the first public notice of an impending foreclosure sale, it was entitled to judgment as a matter of law.  Randle's motion should therefore be denied.

In addition, this Court should sanction Randle's attorney, Israel Sanchez ("Attorney Sanchez").  During the past five-plus years that Randle has been in default on her mortgage loan, Attorney Sanchez has engaged in a deliberate and transparent scheme aimed at delaying the foreclosure of his client's property.  This conduct has included, among other things, twice removing a Servicemembers action to federal district court, twice failing to appear at a deposition or produce requested documents (requiring an extension of the discovery period), and expressly violating a prior Court order.  Now, after Randle has run out of options to stop an inevitable foreclosure, and after deliberately choosing *not to oppose* GMAC Mortgage's summary judgment motion, Attorney Sanchez has filed a frivolous motion based upon alleged facts and arguments that have always been available to him.  It is clear that this most recent filing is simply an extension of the delay tactics that have allowed Randle to reside in the property for over five years without making a single payment on her mortgage loan.  Further filings will continue to drive up unnecessarily the already substantial costs that have been incurred by GMAC Mortgage in defending this action.  Accordingly, GMAC Mortgage respectfully requests that the Court issue sanctions against Attorney Sanchez in the form of costs and fees incurred by GMAC Mortgage.

## FACTUAL BACKGROUND

On August 12, 2009, Randle filed this action seeking a declaration that GMAC Mortgage lacked standing to enforce the Mortgage.[1] Randle also filed a motion for preliminary injunction seeking to enjoin a foreclosure then-scheduled for August 24, 2009. *October 12, 2010 Decision (the "Decision")*, ¶ 15, a true and accurate copy of which is attached as **Exhibit A**. In order to accommodate the schedule of Attorney Sanchez, the Court scheduled a hearing date for Monday, August 24, 2009 – the date of the foreclosure. *Id.* However, on Friday, August 21, 2009, Randle filed a suggestion of bankruptcy informing the Court that one Avrom Michaels had filed an involuntary petition for relief against one Richard S. Mara, a purported junior lienholder, in the Bankruptcy Court for the Eastern District of Tennessee. *Id.* On August 24, 2009, the Court denied Randle's motion for preliminary injunction, finding that the bankruptcy of the purported junior lienholder did not prevent the Court from deciding the merits of Randle's motion, and ruling that Randle had failed to demonstrate a reasonable likelihood of success on the merits of her claim. *Id.*, ¶ 17.

On April 1, 2010, following the close of discovery, GMAC Mortgage filed its motion for summary judgment. *Id.*, ¶ 23. On May 4, 2010, the Court held oral argument on GMAC Mortgage's motion. *Id.* Neither Randle nor Attorney Sanchez appeared at this hearing. *Id.*, ¶ 26. At no time prior to the hearing did Randle file an opposition to GMAC Mortgage's motion, nor did she file any document attempting to contradict or oppose any of the facts contained in GMAC Mortgage's Statement of Undisputed Facts. *Id.*

After the hearing, the Court took GMAC Mortgage's motion under advisement. On October 12, 2010, it issued its Decision in which it granted summary judgment in favor of

---

[1] She also alleged that GMAC Mortgage failed to provide her with a 90-day right to cure. Randle has not challenged the Court's judgment in favor of GMAC Mortgage on this count.

GMAC Mortgage. In its Decision, the Court found that Randle did not have standing to

challenge GMAC Mortgage's filing of the Servicemembers' Action because she was not entitled

to the benefits of the Act. It also found that GMAC Mortgage had standing to conduct a

foreclosure because it was the current holder of Randle's loan and mortgage at the time of

publication and sale. On the basis of these findings, the Court entered judgment in favor of

GMAC Mortgage. At no time during the five months that the Court had the motion under

advisement did Randle or Attorney Sanchez file any opposition to this motion.

On October 22, 2010, Randle filed her motion seeking to reverse this judgment. In her

motion, she claims that GMAC Mortgage "failed to disclose" that GMAC Bank, a prior holder of

the loan, was not in existence as of the date it acquired its interest in her loan. To support her

claim, she attached a computer printout from the website of the Massachusetts Secretary of State.

Randle offers no explanation as to why she did not raise any of her arguments (or submit *any*

opposition) at the time GMAC Mortgage filed its motion for summary judgment.

## ARGUMENT

**A.      Randle's Motion Should Be Denied Because She Has Not Presented Any Newly
Discovered Evidence Or Demonstrated That the Court Committed A Manifest
Error of Law.**

Rule 59(e)[2] is designed to allow a court to correct its own legal errors, thus avoiding the

need for unnecessary appellate procedures. <u>Venegas-Hernandez v. Sonolux Records</u>, 370 F.3d

183, 189-190 (1st Cir. 2004). Motions under this Rule are therefore "aimed at reconsideration,

not initial consideration." <u>Federal Deposit Ins. Corp. v. World University, Inc.</u>, 978 F.2d 10, 16

---

[2] Rule 59(e) under the Massachusetts Rules of Civil Procedure is equivalent to, and based on, its federal counterpart. <u>Lopes v. City of Peabody</u>, 426 Mass. 1001, 1002 (1997). Authority construing the federal rule is therefore the same. <u>Id.</u>

(1st Cir. 1992); <u>Bull HN Information Sys., Inc. v. Hutson</u>, 184 F.R.D. 19, 21 (D. Mass. 1999).

As stated by the First Circuit,

> Rule 59(e) allows a party to direct the district court's attention to newly
> discovered material evidence or a manifest error of law or fact and enables
> the court to correct its own errors and thus avoid unnecessary appellate
> procedures. The rule does not provide a vehicle for a party to undo its
> own procedural failures, and it certainly does not allow a party to
> introduce new evidence or advance arguments that could and should have
> been presented to the district court prior to judgment.

<u>Aybar v. Crispin-Reyes</u>, 118 F.3d 10, 16 (1st Cir. 1997); <u>Bull HN Information Sys.</u>, 184 F.R.D. at

21. "Thus, parties should not use [Rule 59(e)] motions to raise arguments which could, and

should, have been made before judgment issued." <u>World University, Inc.</u>, 978 F.2d at 16; <u>ACA</u>

<u>Financial Guaranty Corp. v. Advest, Inc.</u>, 512 F.3d 46, 55 (1st Cir. 2008). As a result, to prevail

on such a motion, the moving party must demonstrate that the Court's ruling was based on a

manifest error of law or that there is newly discovered material evidence that could not have

been raised prior to judgment. <u>World University, Inc.</u>, 978 F.2d at 16; <u>see also</u> <u>Venegas-</u>

<u>Hernandez</u>, 370 F.3d at 189-190 (stating "the usual rule that parties cannot use Rule 59(e)

motions to raise new arguments that could have been made before judgment issued"). The

motion is left to the discretion of the trial court judge, who should consider, among other things,

the need for finality of judgments. <u>Venegas-Hernandez</u>, 370 F.3d at 190; <u>ACA Financial</u>

<u>Guaranty Corp.</u>, 512 F.3d at 55. Given the high standard imposed under Rule 59(e), appellate

courts have found "that it is very difficult to prevail on a Rule 59(e) motion." <u>Marie v. Allied</u>

<u>Home Mortg. Corp.</u>, 402 F.3d 1, 7 n.2 (1st Cir. 2005).

For example, in <u>Aybar</u>, two individuals filed suit against several Puerto Rican

government officials claiming that they deprived the individuals of their civil rights. The

officials filed a motion to dismiss based, in part, on a statute of limitations defense. The Court

granted the motion after the plaintiffs failed to oppose it.  Following the dismissal, the plaintiffs

filed a motion for reconsideration arguing that the limitations period had been tolled because of

their age.  The district court ruled that the plaintiffs' marriage "emancipated" them under Puerto

Rico law, thus precluding a tolling defense.  The plaintiffs thereafter filed a motion under Rule

59(e) providing uncontradicted evidence that they were not married at the time and that they

should therefore be entitled to a tolling defense.  The district court denied this motion.  On

appeal, the First Circuit found that the plaintiffs had indeed pointed the district court to a

"manifest error of fact" but ruled that this "new" evidence was insufficient to prevail on a 59(e)

motion because this information was available to plaintiffs at the time the defendants moved to

dismiss and the plaintiffs chose not to oppose the motion.  The Court noted that, "Unlike the

Emperor Nero, litigants cannot fiddle as Rome burns.  A party who sits in silence [] [and]

withholds potentially relevant information . . . does so at his peril."  Aybar, 118 F.3d at 16,

quoting Vasapolli v. Rostoff, 39 F.3d 27, 36-37 (1st Cir. 1994).  Since the plaintiffs waited until

after judgment to bring to light certain facts which the Court could have considered in ruling on

defendants' motion to dismiss, the First Circuit affirmed the trial court's denial of the plaintiffs'

Rule 59(e) motion.

Randle's argument suffers from the same fatal flaw.  Her motion is premised on her

contention that GMAC Bank was not in existence at the time it acquired its interest in Randle's

loan.  These alleged facts, however, could easily have been ascertained at or before the time

GMAC Mortgage filed its motion for summary judgment.  In fact, Randle's "newly discovered"

evidence is merely a printout from the Secretary of State's website.  Neither Randle nor her

counsel even attempt to explain why they could not access this website during the nine (9)

months that this case was pending prior to GMAC Mortgage's motion for summary judgment, or

even during the ensuing five (5) months this Court had the motion under advisement.[3]  Randle

had every opportunity to present facts and legal argument in opposition to GMAC's motion.  Not

only did she choose not to present this evidence, she chose not to file *any* opposition whatsoever

and chose not to appear at the hearing.  See Aybar 118 F.3d at 16; World University, Inc., 978

F.2d at 16 (affirming denial of Rule 59(e) motion because there was "no reason" why the moving

party could not have raised its argument prior to judgment); Bull HN Information Systems, Inc.,

184 F.R.D. at 22 (denying motion to amend because plaintiff's attempt to raise "new" facts

which had not previously been asserted was nothing "other than a retreat in the face of a loss,

rearmament and advance with a new legal theory" which is inappropriate under Rule 59(e)).

Randle is simply not entitled to attack this Court's ruling after previously ignoring its mandated

procedures.  Randle's motion should therefore be denied.

**B.**  **The Alleged Status of GMAC Bank in April 2003 Does Not Alter The Legal Conclusion That GMAC Mortgage Had Standing To Commence The Servicemembers Action.**

It is undisputed that Randle was not entitled to the benefits of the Act.  It is also

undisputed that GMAC Mortgage was the current holder and mortgagee of record at the time it

published notice of the sale.  As a result, the Court accurately found that GMAC Mortgage was

entitled to judgment as a matter of law in the Miscellaneous Case without even determining

whether GMAC Mortgage had standing to commence the Servicemembers Action.  *Decision*, 15

("Accordingly, I do not even need to reach in this Miscellaneous Case the question of whether

GMAC Mortgage had standing to commence the Servicemembers Case.  The answer to that

---

[3]  This is also true with respect to her argument that the Court lacked subject matter jurisdiction to issue an Order of Notice in February 2009.  Randle knew about this fact at the time she filed her complaint, yet chose not to raise the "issue" at summary judgment.  *Verified Complaint*, ¶ 17 ("On or about January 9, 2009, *despite the fact that the case was still pending in the District Court,* the Land Court issued an Order of Notice in No. 369658 with a return date of February 23, 2009") (emphasis supplied).

question could not and does not affect the outcome here.") Randle has not presented any

evidence to disturb these findings.

Even if this Court was inclined to address the issue of standing and to consider the status

of GMAC Bank in April 2003 as part of this analysis, Randle's allegations do not implicate

GMAC Mortgage's standing to commence the Servicemembers Action. As set forth in detail by

Judge Long in two recent decisions, there is a low threshold for a mortgagee to have standing to

file a case under the Act. See US Bank, N.A., as Trustee of CSMC Mortgage-Backed Trust

2006-7 v. Hanlon, No. 10 MISC. 429997 (Mass. Ld. Ct. Aug. 20, 2010); HSBC Bank USA,

N.A., as Trustee of Ace Securities Corp., Home Equity Loan Trust, Series 2005-HE4 v. Matt,

No. 10 MISC 421195 (Mass. Ld. Ct. July 8, 2010).[4] To file a complaint, a mortgagee must

simply show some interest in the mortgage at issue. Thus, in Hanlon, Judge Long ruled that a

trustee of a trust into which the loan appeared to have been assigned had standing to file a

complaint to foreclose, despite potential questions about its actual assignment. "Even *if* this

particular mortgage is ultimately determined not to be a part of the trust *res* (a question I need

not and do not decide), it *facially* appears to. This is sufficient to give [the trustee] an interest in

determining whether [the mortgagors] are entitled to benefits of the Servicemembers Act."

Hanlon, No. 10 MISC. 429997 at *4. Similarly, in Mott, Judge Long ruled that a mortgagee who

was not the current holder of the note and mortgage, but who had the contractual right to become

that holder, had standing to file a Servicemembers case. Mott, No. 10 MISC 421195 at *3.

GMAC Bank's status in April 2003 does not affect GMAC Mortgage's standing to file

the Servicemembers Action. It is undisputed that by January 2008, GMAC Mortgage had

obtained an interest in the Note and therefore had the right to compel an assignment of the

mortgage at any time. It thus had standing to commence the Servicemembers Action to

---

[4] Copies of these decisions are attached hereto as **Exhibit B**.

8

determine whether Randle was entitled to the protections of the Act. Since GMAC Mortgage

was the undisputed holder of the Note and Mortgage by the time it had published its first notice

of sale in the local newspaper, the scheduled foreclosure of the property was valid. The Court's

Decision was consistent with these principles, and should not be overturned.

The same is true with respect to Randle's argument that the Court lacked subject matter

jurisdiction at the time it issued the Order of Notice in February 2009. Contrary to Randle's

allegations, the February Order of Notice was not the notice on which the judgment "rested." In

fact, it was cancelled in June 2009 due to its "non-use." *Decision,* ¶ 13. The operative Order of

Notice was the one issued on June 25, 2009, which was indisputably issued after the

Servicemembers Action was remanded to the Land Court and after Mortgage Electronic

Registration Systems, Inc. ("MERS") assigned the Mortgage to GMAC Mortgage. *Id.,* ¶¶ 11-13.

As such, whether the Court lacked subject matter jurisdiction to issue an Order of Notice in

February is a moot point.

**C.    Attorney Sanchez Should Be Sanctioned For Employing A Bad Faith Scheme
Designed To Delay This Litigation.**

Rule 11 of the Massachusetts Rules of Civil Procedure provides that "[t]he signature of

an attorney to a pleading constitutes a certificate by him that he has read the pleading; that to the

best of his knowledge, information, and belief there is a good ground to support it; *and that it is

not interposed for delay.*" Mass. R. Civ. P. 11(a) (emphasis added). Unfortunately, Attorney

Sanchez has demonstrated beyond question that this entire litigation is merely a ploy to forestall

the foreclosure of his client's property. His most recent filing is simply an extension of his

sanctionable conduct.

9

### *Attorney Sanchez's Conduct*

To fully comprehend the extent of Attorney Sanchez's conduct, it is necessary to review the history of this litigation in some detail. Randle has been in default since at least April 2005. *Decision*, ¶ 3. When MERS attempted to foreclose by filing a complaint under the Act, Randle removed the Servicemembers case to federal district court. *Id.*, ¶ 3. In January 2008, following a period of inactivity, GMAC Mortgage, having not received a payment in over three years, filed a complaint in the Land Court once again seeking a determination that Randle was not entitled to the benefit of the Act (the "Servicemembers Action"). *Id.*, ¶ 6. Randle once again removed the Servicemembers Action to the federal district court. *Id.*, ¶ 8. It was finally remanded back to this Court in April 2009.

Randle then commenced the Miscellaneous Action. After denying her motion for injunctive relief, the Court scheduled a case management conference for October 2, 2009. *Id.*, ¶ 19. This date was rescheduled to October 22, 2009 at the request of Attorney Sanchez, who represented that he was unavailable on that date. *Id.* At this conference, the parties discussed, among other things, the proposed discovery schedule. *Affidavit of Joseph Calandrelli* (*"Calandrelli Aff."*), ¶ 2, attached hereto as **Exhibit C**. The parties mutually agreed to a close of discovery by December 31, 2009, and this date was entered as a Court Order. *Id.*, ¶ 2, and its attached Exhibit 1. The Court also ordered that any motion for summary judgment be filed by January 31, 2010. *Id.*

The parties then commenced discovery. On November 17, 2009, GMAC Mortgage noticed Randle's deposition for December 21, 2009. *Id.*, ¶ 3, and its attached Exhibit 2. It also served its First Request for Production of Documents shortly thereafter. *Id.*, ¶ 3, and its attached Exhibit 3. An entire month passed with no word from Attorney Sanchez regarding his client's

deposition. *Id.* On December 16, 2009, just days before the deposition, Attorney Sanchez

requested that the deposition be rescheduled for mid-to-late January due to a previously-

scheduled court appearance. *Id.*, ¶ 4, and its attached Exhibit 4. In good faith, GMAC Mortgage

agreed to reschedule Randle's deposition for either January 11th or January 12th on the express

condition that Randle agree to produce the documents GMAC Mortgage requested at least one

week in advance of the deposition. *Id.* Attorney Sanchez requested that the deposition be

postponed even further until January 19, 2010, and expressly agreed to provide the documents at

least one week in advance of this date. *Id.*

Eight days prior to the rescheduled deposition, counsel for GMAC Mortgage wrote to

Attorney Sanchez to request confirmation that Randle would this time appear for her deposition.

*Id.*, ¶ 5, and its attached Exhibit 5. GMAC Mortgage also requested – in accordance with the

parties' agreement – the immediate production of Randle's documents as it was a week prior to

her deposition. *Id.* The next day, Attorney Sanchez stated that "[his] calendar shows her depo is

scheduled for next Thursday, which is the only day [he was] available." *Id.* Attorney Sanchez

did not even acknowledge GMAC Mortgage's request for the overdue documents in this

communication. *Id.* Counsel for GMAC Mortgage responded the same day, agreeing to

reschedule Randle's deposition to Thursday, January 21, 2010. *Id.* Once again, GMAC

Mortgage asked whether it could expect to receive the documents a week in advance in

accordance with the parties' agreement. *Id.* Once again, Attorney Sanchez ignored this request.

*Id.*

As a result, on January 15, 2010, the undersigned was forced to write to Attorney

Sanchez reminding him that GMAC Mortgage had "agreed to reschedule Ms. Randle's

deposition from December on the express representation that you would have your documents to

me at least one week prior to Ms. Randle's deposition. You have failed to live up to your side of

the agreement as her deposition is now scheduled for 9:00 a.m. on Thursday, January 21, 2010.

Please produce these documents immediately or I will have to seek the necessary relief from the

Court." *Id.*, ¶ 6, and its attached Exhibit 6. Attorney Sanchez did not respond until 1:00 p.m. on

the afternoon of January 20, 2010, less than twenty four (24) hours prior to Randle's deposition.

*Id.*, ¶ 7, and its attached Exhibit 7. In this email, Attorney Sanchez informed GMAC Mortgage –

for the first time – that Randle would not be appearing at her deposition the next day. *Id.* For

the third time, he ignored the request for the overdue documents. *Id.*

Following Randle's (second) non-appearance at her deposition, and in accordance with

Land Court Rule 7, GMAC Mortgage attempted to avoid filing a motion to compel. *Id.*, ¶ 10,

and its attached Exhibit 10. On January 26, 2010, the undersigned sent an email to Attorney

Sanchez informing him that GMAC Mortgage was prepared to file a motion to compel and seek

sanctions. *Id.* It invited Attorney Sanchez to participate in a discovery conference prior to the

filing of this motion to see if the parties could settle their dispute without involving the Court.

*Id.* Attorney Sanchez refused to acknowledge the request for this conference, let alone agree to

participate in one. *Id.*

As a result, GMAC Mortgage was forced to file a motion to compel. *Id.*, ¶ 11, and its

attached Exhibit 11. Randle never opposed this motion.[5] *Id.* On February 23, 2010, the Court

allowed GMAC Mortgage's unopposed motion and ordered that Randle:

- produce responsive documents within one (1) week;

- appear for a deposition no later than March 12, 2010; and

- pay to GMAC Mortgage, "within Twenty (20) Days Amount of
  Attendance Fee Due or Paid to Stenographer with Respect to Previously

---

[5] Instead, she filed a letter with the Court accusing the Court of unlawfully backdating the judgment in the
Servicemembers Action.

> Notice[d] Deposition for which [Randle], Without Excuse, Did Not Appear."

*Id.*, ¶ 12, and its attached Exhibit 12. The Court also ordered GMAC Mortgage to file its motion

for summary judgment no later than April 1, 2010. *Id.*

Notwithstanding this unambiguous Court Order, Randle refused to produce the requested

documents. *Id.*, ¶ 13  As a result, on March 8, 2010, GMAC Mortgage's counsel wrote the

following email to Attorney Sanchez:

> As you know, at the hearing on February 23rd, the Court ordered Ms. Randle to produce the responsive documents within one week from the hearing.  A copy of the order is attached for your reference.  Ms. Randle's documents were therefore due no later than March 3, 2010.  It is now 1:30 p.m. on March 8th, less than twenty-four (24) hours prior to the start of your client's deposition, and I still have not received Ms. Randle's documents.  Please note that I consider Ms. Randle to be in contempt of court and GMAC reserves its right to take any and all remedial actions.

*Id.*, ¶ 13, and its attached Exhibit 13.  Randle finally produced her documents later that

afternoon, less than one day prior to her deposition.  *Id.*

On March 29, 2010, in accordance with the Court's February 23d Order, GMAC

Mortgage's counsel wrote to Attorney Sanchez again, informing him that the stenographer fee

for the deposition in which Randle failed to appear was $210.50 and requesting that Randle remit

this amount within twenty (20) days.  *Id.*, ¶ 14, and its attached Exhibit 14.  To date, neither

Randle nor Attorney Sanchez have remitted any of this amount.  *Id.*

GMAC Mortgage thereafter filed its motion for summary judgment.  On April 6, 2010,

the Court issued a "Notice of Summary Judgment Hearing" whereby it ordered Randle to file

any opposition to GMAC Mortgage's motion (or any cross-motion) by April 23, 2010, and

scheduled a hearing date for May 4, 2010. *Decision*, ¶ 23.  On April 23, 2010, the date Randle's

opposition was due, Attorney Sanchez filed an "Emergency Motion to Enlarge Time to File and

Serve an Opposition to Defendant's Motion for Summary Judgment; For Leave to File and Serve

A Cross-Motion for Partial Summary Judgment; For Leave to File and Serve A Supplemental

Pleading Setting Forth Transactions Which Have Happened Since the Date of Plaintiff's Original

Pleading; and to Reschedule Hearing Date for Cause." *Id.*, ¶ 25. In this "emergency" motion,

Attorney Sanchez falsely represented to the Court that counsel for GMAC Mortgage stated that

he will "not likely oppose" Randle's motion. *Calandrelli Aff.*, ¶¶ 15-16. This was an egregious

misstatement that was taken out of context, as GMAC Mortgage's counsel had mentioned only

that he would not likely oppose a motion to continue the hearing date and to file an opposition

several days late. *Id.* At no time had the parties discussed or even mentioned Randle's filing of

a cross-motion or a motion to amend her pleadings. *Id.*

The Court denied Randle's motion. *Decision*, ¶ 25. Instead of filing an opposition,

Attorney Sanchez filed a petition for interlocutory review with the Appeals Court, seeking to

overturn the Court's decision denying his request for an extension. *Id.*, ¶ 26. The petition was

denied.

On May 4, 2010, the Court heard oral argument on GMAC Mortgage's summary

judgment motion. Neither Attorney Sanchez nor Randle appeared at this hearing. After hearing

oral argument from counsel for GMAC Mortgage, the Court took the matter under advisement.

Between May and October, Randle did not file a single document with the Court. Instead, after

the Court issued its Decision, Randle filed the present motion claiming that judgment should

have been issued in her favor.

## Argument

Randle has resided in her property for over five years without making a single payment

on her mortgage. Each time the loan is accelerated, Randle and her counsel have taken dilatory

action to forestall the foreclosure.  This conduct has included *twice* removing a case filed under

the Act to federal district court, despite acknowledging that she was never entitled to its benefits.

When Randle was finally out of options, Attorney Sanchez decided to go on the offensive by

filing the Miscellaneous Action challenging GMAC Mortgage's standing to foreclose.

While the filing of this action is not itself a violation of Rule 11, it is the conduct of

Attorney Sanchez during this litigation that is deserving of sanctions.  At every step of the way,

Attorney Sanchez has employed a scheme designed to delay judgment in this matter.  This

includes, but is not limited to,

- failing to produce requested documents, forcing GMAC Mortgage to agree to an extension of the discovery period and a delay in its summary judgment filing;

- ignoring GMAC Mortgage's request for a discovery conference, forcing it to file a motion to compel;

- twice failing to appear at a deposition, which this Court found was "without excuse;"

- ignoring the Court's Order on GMAC Mortgage's motion to compel that he produce documents within one week;

- refusing to reimburse GMAC Mortgage for the costs it incurred in arranging for the deposition at which Randle failed to appear, in direct contempt of this Court's order;

- continuously refusing to respond to counsel's requests for scheduling and simultaneously reneging on prior agreements;

- twice accusing the Court of acting unlawfully;

- waiting until the day her opposition to GMAC's motion for summary judgment is due to file a motion for an extension of time without providing any justification for the delay;

- boldly misrepresenting GMAC Mortgage's position with respect to his motion; and

- after claiming that Randle was entitled to oppose GMAC Mortgage's summary judgment motion, failing to file any opposition or attend the hearing, instead trying to appeal the Court's denial of Randle's request for more time.

Now, after Attorney Sanchez deliberately chose not to file *any* opposition to GMAC Mortgage's summary judgment motion, he has signed this most recent pleading asserting that GMAC and its counsel committed a "fraud on the Court" and should be subject to sanctions. What is most troubling is the fact that he didn't even attempt to explain in his motion why he was unable to present any of his arguments in opposition to GMAC Mortgage's summary judgment motion or why he wasn't able to present any opposition whatsoever.

Due to Attorney Sanchez's conduct, Randle has been able to continue to reside at the Property – without payment – for over five years, all while GMAC Mortgage has incurred substantial fees and costs associated with the commencement of foreclosure proceedings, carrying costs (such as taxes and insurance), marketing of the property, and the defense of this litigation. Given Attorney Sanchez's prior appeal in this case, in the event that the Court denies his most recent motion, it is likely that he will appeal this Court's decision, thereby extending his client's free stay even further. Attorney Sanchez's well-documented conduct is not the work of a zealous advocate but rather the byproduct of a scheme that was designed to continuously delay this litigation. The most recent filing, and the unusual circumstances leading up to it, is just the latest example of this conduct. Attorney Sanchez should be sanctioned for his egregious attempt to continuously delay this litigation in violation of Rule 11.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Randle's motion to amend or alter the judgment and should sanction Attorney Sanchez by awarding GMAC Mortgage the attorneys'

fees and costs it has incurred in defending this litigation.  In the event this request is allowed,

GMAC Mortgage will provide affidavits documenting their reasonable costs and fees.

GMAC MORTGAGE, LLC
By its attorneys,

*Joseph Calandrelli*

Richard E. Briansky (BBO# 632709)
rbriansky@princelobel.com
Joseph P. Calandrelli (BBO# 666128)
jcalandrelli@princelobel.com
Amy B. Hackett (BBO# 676345)
ahackett@princelobel.com
**PRINCE, LOBEL, GLOVSKY & TYE LLP**
100 Cambridge Street, Suite 2200
Boston, MA 02114

Dated:  November 10, 2010

Tel:  617.456.8000

## CERTIFICATE OF SERVICE

I, Joseph Calandrelli, certify that on November 10, 2010, I caused a true and accurate copy of the foregoing document to be served on counsel of record for Allison Randle by sending the same by overnight mail, postage prepaid to:

Israel Sanchez, Esq.
Sanchez & Associates
8 Boxwood Circle
Milford, NH 03055
*(Counsel for Randle)*

*Joseph Calandrelli*

Joseph Calandrelli

# EXHIBIT A

(SEAL)

COMMONWEALTH OF MASSACHUSETTS

LAND COURT

DEPARTMENT OF THE TRIAL COURT

WORCESTER, ss.                                                    MISCELLANEOUS CASE
                                                                 NO. 09 MISC 408202 (GHP)

| | |
|---|---|
| ALLISON L. RANDLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GMAC MORTGAGE, LLC, | ) |
| | ) |
| Defendant. | ) |

## DECISION

The plaintiff in this case, Allison L. Randle ("Randle") filed a complaint in this court on

August 12, 2009, seeking, among other things, a declaration that defendant GMAC Mortgage,

LLC ("GMAC Mortgage") does not hold any claim secured by a certain mortgage ("Mortgage")

recorded with the Worcester County Registry of Deeds ("Registry") at Book 29672, Page 124,

and lacks standing to bring an action against Randle pursuant to the Servicemembers Civil Relief

Act ("Servicemembers Act") and under legislation enacted in Massachusetts under and pursuant

to that federal law, see Acts 1942, c. 57, §§1 -3, as amended.  The Mortgage secures a loan in the

original principal amount of $150,000.00, granted by Randle to Sherwood Mortgage Group, Inc.

("Sherwood") and purportedly encumbers property ("Locus" or "Property"), more particularly

1

described in the Mortgage, known as Unit 83 of the Whitney Street Condominium, located at

83-85 Whitney Street, Northborough, Worcester County, Massachusetts.

On May 4, 2010, I held a hearing on the motion for summary judgment, filed by the

defendant GMAC Mortgage on April 1, 2010. The motion was accompanied by a statement of

undisputed facts, see Land Court Rule 4, and three supporting affidavits. At the May 4 hearing,

counsel for defendant alone argued; neither defendant nor counsel for defendant attended the

hearing despite notice. The court had denied defendant's motion to continue the hearing.

Defendant also did not file any written opposition to the plaintiff's summary judgment papers.

The court, by order dated April 6, 2010, directed opposing papers from the defendant be filed and

served so as to be received by April 30, 2010. The court also had denied a motion by defendant

to enlarge the time for opposing the summary judgment motion of the plaintiff. After the hearing,

I took the motion under advisement and now decide the case.

The following facts and procedural history are established by materials properly within

the Mass. R. Civ. P. 56 record, and are undisputed[1]:

1.    Randle executed a note ("Note") in the original principal amount of $150,000.00 in favor

of Sherwood on April 8, 2003, secured by the Mortgage. Before the Mortgage made it to

record at the Registry on April 14, 2003, the Note was transferred three times:

a.    Sherwood assigned the Note to GMAC Bank by endorsement dated April 8, 2003.

b.    GMAC Bank assigned the Note to GMAC Mortgage Corporation by specific

endorsement, which was not dated.

---

[1] See also Land Court Rule 4 (where moving party's statement of material facts has not
been countered by opposing party, "the facts described by the moving party as undisputed shall
be deemed to have been admitted.")

    c.     GMAC Mortgage Corporation endorsed the Note "in blank"; this endorsement is not dated.

2.    Recorded at the Registry simultaneously with the Mortgage on April 14, 2003, at Book 29672, Page 143, is an Assignment of Real Estate Mortgage from Sherwood to Mortgage Electronic Registration Systems, Inc., ("MERS") as nominee for GMAC Bank, dated April 8, 2003.

3.    By April in 2005, Randle was approximately $2,700.00 behind on her repayment obligations under this loan. On June 23, 2005, MERS, in anticipation of foreclosing on the Mortgage, filed a complaint pursuant to the Servicemembers Act and the implementing Massachusetts legislation ("Original Servicemembers Case"), seeking a determination that the defendant, Randle, was not entitled to the benefit of the Servicemembers Civil Relief Act. The Original Servicemembers Case was docketed by the Land Court as MERS v. Randle, Miscellaneous Case No. 05 MISC 310699. On September 6, 2005, Randle filed a Notice of Removal to the United State District Court, purportedly invoking that court's jurisdiction over federal questions under 28 U.S.C. 1441(b) and 1446(a).[2]

4.    On or about November 10, 2005, the District Court dismissed the case. The Land Court Docket indicates that, on December 31, 2007, the Original Servicemembers Case in this court was closed for statistical purposes.

5.    On November 21, 2007, GMAC Mortgage, through counsel, sent a letter to Randle,

---

[2] Randle's Notice of Removal alleges, among other things, that the forms of Summons and Complaint that Massachusetts uses in Servicemembers Act cases are constitutionally deficient, and that the Servicemembers Act, to the extent it authorizes such forms, is likewise unconstitutional.

3

informing her that she had thirty days either to bring her loan current, or to pay off the

loan, or otherwise face foreclosure. The letter specifically advised Randle that unless the

account was brought current in the next thirty days, GMAC Mortgage would accelerate

payment and sell all property encumbered by the Mortgage at a foreclosure sale.

6.    Not receiving any payment from Randle, GMAC Mortgage accelerated the loan and filed

a complaint on January 14, 2008 pursuant to the Servicemembers Act and the

implementing Massachusetts legislation, once again seeking a determination that the

defendant, Randle, was not entitled to the benefit of the Servicemembers Civil Relief Act;

the Land Court Case which commenced with that filing is GMAC Mortgage, LLC v.

Randle, Miscellaneous Case No. 08 MISC 369658 ("Servicemembers Case").

7.    On April 14, 2008, the Land Court issued an Order of Notice in the Servicemembers

Case, returnable May 26, 2008. On May 8, 2008, the Order of Notice was recorded with

the Registry at Book 42806, Page 95.

8.    On May 27, 2008, Randle removed the Servicemembers Case to the United States

District Court for the District of Massachusetts, see GMAC Mortgage, LLC v. Randle,

No. 08-40102 (D. Mass. filed May 27, 2008).[3]

9.    By letter dated January 8, 2009 and received by the Land Court that same day, GMAC

Mortgage, through counsel, reported the need for additional time within which to

complete service and to publish notice, and requested that the Land Court cancel the

---

[3] On or about May 27, 2008, one Joshua J. DiMare entered a special appearance in the District Court in the Servicemembers Case. DiMare claimed to be entitled to benefits under the Servicemembers Act by virtue of active service in the military of the United States. From the summary judgment record assembled, it is unclear what connection, if any, DiMare has to the Locus or the Mortgage at issue in this case.

previous return date of May 26, 2008.  Proposed Orders of Notice apparently were

attached to the letter.  Notwithstanding the cases presence at the time in the United States

District Court, on January 8, 2009, this court, responding to this request, canceled the

original Order of Notice and the next day, January 9, 2009, issued a new Order of Notice,

returnable February 23, 2009, which was recorded at the Registry on February 5, 2009, at

Book 43763, Page 10.

10.    Also while the case remained at the United States District Court, on February 20, 2009,

Randle filed with the Land Court her answer to the Servicemembers complaint.

11.    On April 2, 2009, MERS assigned the Mortgage to GMAC Mortgage, by Assignment

recorded on April 6, 2009 at the Registry in Book 44048, Page 390.

12.    The Servicemembers Case returned to the Land Court on April 26, 2009 when the United

States District Court (Saylor, J.) issued an Order of Remand.  On July 27, 2009, Randle

filed a motion with the Land Court that requested a hearing on her cross motion to

dismiss, which had been filed in the District Court, but not acted upon by it prior to the

remand to this court.  Two days later, on July 29, 2009, GMAC Mortgage filed a Motion

to Strike the Defendants' Answer, Affirmative Defenses and Cross Motion, and a Motion

to Strike the Interested Party, Joshua J. DiMare, PFC's Answer, Affirmative Defenses.

13.    Meanwhile, on June 15, 2009, the Land Court cancelled the Order of Notice issued on

January 9, 2009 because of "non-use by Attorney." A third Order of Notice issued on

June 25, 2009, with a return date of August 10, 2009.  The third Order of Notice went to

record on July 27, 2009.  On July 28, 2009, August 4, 2009, and August 11, 2009,

GMAC Mortgage published a Notice of Mortgagee's Sale of Real Estate in the Worcester

Telegram & Gazette ("Publication"). The Publication, published pursuant to G. L. c. 244, § 14, identified GMAC Mortgage as the holder of the Mortgage, and in the form prescribed by the statute, announced a foreclosure sale for August 24, 2009.

14. On August 10, 2009, the Land Court (Trombly, J.) issued an Order to Show Cause why a judgment authorizing foreclosure should not issue in the Servicemembers Case.

15. On August 12, 2009, Randle filed this case, Randle v. GMAC Mortgage, LLC, Miscellaneous Case No. 09 MISC 408202, in the Land Court where it was assigned to me ("Miscellaneous Case"). At filing, Randle presented a request for a temporary restraining order, seeking to enjoin the defendant from conducting the foreclosure sale on the published August 24th date. I denied Randle's application for a temporary restraining order on the day it and this Miscellaneous Case were filed, and instead issued a short order of notice, scheduling a preliminary injunction hearing for Monday, August 24, 2009. This hearing date, and not an earlier one, was selected by the court at the request of plaintiff's counsel, who advised the Recorder's office that he would be unavailable in the interim.

16. On August 21, 2009, Randle filed a Suggestion of Bankruptcy informing the court that on August 20, 2009, one Avrom Michaels filed in the Bankruptcy Court for the Eastern District of Tennessee an involuntary petition for relief under Chapter 7 of the United States Bankruptcy Code against one Richard S. Mara, who purports to hold a junior lien on the Locus.[4]

---

[4] Attached to the Suggestion of Bankruptcy were: (1) a Mortgage Deed dated May 23, 2005 from Randle to Ara Eresian, Jr. as Trustee of Zu Zu Realty Trust, conveying Locus to secure payment of a debt of $13,500.00, recorded with the Registry on September 9, 2005 at Book 37283, Page 70 ("Junior Lien"); (2) an Assignment of Mortgage Deed from Ara Eresian, Jr. as Trustee of Zu Zu Realty Trust, assigning the Junior Lien to VII Holdings

17.    Counsel for Randle and for GMAC Mortgage appeared before me in the Miscellaneous

Case on the morning of August 24, 2009 for argument on Randle's motion for an order

enjoining the foreclosure sale, scheduled for later that afternoon. After argument, I ruled

that the bankruptcy of Richard S. Mara did not prevent me from reaching the merits of the

preliminary injunction request, and I denied the request for preliminary injunction.[5]

18.    GMAC Mortgage went through with the foreclosure sale on August 24, 2009 (although

the purchase of the Property by the high bidder since has fallen through and Locus

---

Company, dated May 23, 2005, and recorded with the Registry on September 13, 2005 at Book 37301, Page 21; and
(3) an Assignment of Mortgage dated February 22, 2007, from VII Holdings Company to Richard S. Mara. This
assignment went to record on August 18, 2009 at the Registry in Book 44736, Page 27. One Joseph S. DiMare
signed on behalf of VII Holdings; the relation, if any, of Joseph S. DiMare to Joshua J. DiMare, PFC, is not apparent
from the record.

[4] The court's docket contains the following entry for August 24, 2009:

Hearing Held on Plaintiff's Application for Preliminary Injunction. Attorneys Sanchez and
Calandrelli Appeared and Argued. The Court First Determined that the Suggestion of Bankruptcy
of Richard S. Mara, a Junior Lienholder and Not a Party to this Case, Filed August 20, 2009 in the
U.S. Bankruptcy Court for the Eastern District of Tennessee, Did Not Implicate the Automatic
Stay and Did Not Prevent the Court from Reaching the Merits of the Application for Preliminary
Injunction. Mara Is Not a Named or Necessary Party to this Land Court Litigation. Defendant
Instructed to Determine Whether or Not Automatic Stay Prevents Going Forward with Scheduled
Foreclosure Sale. Able to Reach the Merits, the Court, After Hearing, Applying the Applicable
Standard in Mass. R. Civ. P. 65, DENIED the Application for the Following Reasons which Were
Laid Upon the Record from the Bench: (1) Plaintiff Failed to Meet Her Burden of Demonstrating a
Likelihood of Success on the Merits on her Claim that Defendant Mortgagee Failed to Give
Plaintiff Notice Due Under G. L. c. 244, § 35A. That Statute Does Not Apply to "mortgages
accelerated or whose statutory condition has been voided under the terms of the mortgage . . . prior
to May 1, 2008," see St. 2007, c. 206, § 21. The Court Finds the Subject Mortgage Was
Delinquent Since 2005, in Material Continuing Payment Default (In Breach of the Statutory
Condition, see G. L. c. 183, § 20); the Court Draws Inference, Based on Mortgagee Having
Commenced Two Servicemember's Actions, that Subject Mortgage Was Accelerated Prior to May
1, 2008. (2) Plaintiff Failed to Meet Her Burden of Demonstrating a Likelihood of Success on the
Merits on her Claim that Mortgagee Lacked Standing to Commence a Servicemember's Action, the
Court Ruling that an Entity Other than the Record Holder of the Mortgage, Which Has Some Stake
or Interest in the Mortgage, May Commence a Servicemember's Action. (3) Plaintiff Failed to
Meet Her Burden of Demonstrating a Likelihood of Success on the Merits on her Claim that the
Recorded Assignments of Mortgage, Including That Dated April 2, 2009, Failed to Assign the
Underlying Note and Debt, thus Rendering the Mortgage Unenforceable by Defendant. The Court
Drew the Inference that the Defendant Assignee, Having Knowledge of the Delinquency, Would
Not Have Taken the Mortgage Without Also Taking the Notes, and With it the Right to Foreclose
and Sue on the Debt.

7

remains unsold, perhaps, though not necessarily or entirely, as a consequence of this litigation). On September 10, 2009, the Land Court (Trombly, J.) issued an Order Striking Defendant's Answer in the Servicemembers Case; the court thereupon the same day allowed the plaintiff's Motion to Take Complaint Pro Confesso (Patterson, Rec.).

19. On October 22, 2009, counsel for Randle and for GMAC Mortgage participated in a case management conference in this Miscellaneous Case. The date originally ordered by this court for this case management conference was October 2, 2010, but the conference was continued at the request of plaintiff's counsel, who represented that he was obliged to be in another court that earlier date. At the time the case management conference took place on October 22, 2010, there was no judgment reflected on the docket of the Servicemembers Case, which remained open on the court's docket. This fact was discussed by counsel and the court at the Miscellaneous Case conference.

20. As directed by the court, GMAC Mortgage filed on November 5, 2009, a report on the status of the bankruptcy proceedings against Richard S. Mara. The report indicated that the petition was dismissed on October 13, 2009, but that a notice of appeal had been filed on October 23, 2009.

21. On February 8, 2010, in the Servicemembers Case, Randle filed a Motion to Vacate Judgment Nunc Pro Tunc for Lack of Due Process of Law, accompanied by a letter dated February 4, 2010 detailing what Randle characterized as appearing to be "a serious infraction of court rules and procedure." The letter was filed in this, the Miscellaneous Case, as well as the Servicemembers Case. According to the Motion to Vacate, and the accompanying letter, Randle learned that on November 23, 2009, in the Servicemembers

8

Case, GMAC Mortgage filed a letter with the Land Court requesting that "the

interlocutory Order of Judgment enter on August 11, 2009, and that the final order of

Judgment enter August 18, 2009" to ensure that judgment in the Servicemembers Case

would pre-date the foreclosure sale, which took place on August 24, 2009. Randle was

not served with a copy of this communication between the Land Court and foreclosure

counsel for GMAC Mortgage. Randle also reported that on December 1, 2009, an

assistant clerk of the Land Court sent a letter to GMAC Mortgage's foreclosure counsel

indicating that a judge of the Land Court had declined to enter judgment on the August

18, 2009 date as GMAC Mortgage had requested, and that "[t]he Judgment authorizing

foreclosure which was entered on September 17, 2009 stands."

22.    It is not clear from the record when the Judgment in the Servicemembers Case actually

entered on the docket. It was certainly after October 22, 2009, the date of the case

management conference in this case, at which the court and counsel took note of the

Servicemembers docket and observed that no judgment yet had been noted on it, and

before December 1, 2009, when the assistant clerk was able to ascertain the date,

presumably by checking the docket.

23.    GMAC Mortgage moved to strike Randle's letter of February 4, 2010. I took no action

on the motion. On February 23, 2010, counsel for all parties appeared for hearing on a

discovery motion in the Miscellaneous Case, and a simultaneous status conference in the

Servicemembers Case. I instructed GMAC Mortgage to file a motion for summary

judgment in the Miscellaneous Case, and scheduled hearing on Randle's Motion to

Vacate. GMAC Mortgage filed its motion for summary judgment on April 1, 2010. On

9

April 6, 2010, I scheduled a hearing on the motion for May 6, 2010; Randle's opposition
was to be filed by April 23, 2010, and any reply from GMAC Mortgage was to be filed
and served so as to be received by Friday, April 30, 2010.

24.   On April 13, 2010, in the Servicemembers Case, I held a hearing on Randle's Motion to
Vacate. Attorneys Sanchez and Longoria appeared and argued. After hearing, I ruled that
no action would be taken on the Motion to Vacate pending hearing on the motion for
summary judgment in the Miscellaneous Case.

25.   On April 23, 2010, Randle filed an Emergency Motion and to Enlarge Time to File and
Serve an Opposition to Defendant's Motion for Summary Judgment; For Leave to File
and Serve a Cross-Motion for Partial Summary Judgment; For Leave to File and Serve a
Supplemental Pleading Setting Forth Transactions Which Have Happened Since the Date
of Plaintiff's Original Pleading; and to Reschedule Hearing Date for Cause. GMAC
Mortgage filed written opposition on April 29, 2010. On April 30, 2010, I denied the
motion, directing that the hearing on GMAC Mortgage's motion for summary judgment
would proceed as scheduled on May 4, 2010.

26.   On May 3, 2010, Randle filed a Notice of Petition [to a Single Justice of the Appeals
Court] for Interlocutory Relief on Order Denying Plaintiff's Motion for Continuance and
to Amend Complaint. The next day, Attorney Hackett appeared before me for GMAC
Mortgage for argument on summary judgment in the Miscellaneous Case, and Attorney
Longoria appeared for GMAC Mortgage for a status conference in the Servicemembers
Case. Neither Randle nor her counsel appeared. Attorney Hackett expressed her client's
desire to go forward with the argument notwithstanding the petition to the single justice.

10

After hearing argument, I took under advisement the motion for summary judgment, and

the Motion to Vacate from the Servicemembers Case. The next day, the Land Court

received notice that the Appeals Court single justice (Trainor, J.) denied Randle's

interlocutory petition.

27.    Randle does not now have, and has never had, any status which would entitle her to the

benefits of the Servicemembers Civil Relief Act.

* * * * *

Summary judgment is appropriate in those cases where no genuine issues exist as to

material fact and where the moving party is entitled to judgment as a matter of law. Community

Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass. R. Civ. P. 56(c). The moving party

must affirmatively show the absence of any triable issues or facts. Pederson v. Time Inc., 404

Mass. 14, 16-17 (1989). In deciding motions for summary judgment, the court may consider

pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Community

Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party can satisfy this burden by

submitting affirmative evidence showing that the opposing party has no reasonable expectation

of proving an essential element of its case or by negating an essential element of the opposing

party's case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

* * * * *

It is undisputed that GMAC Mortgage is now the record holder of the Mortgage, and

therefore there are only two issues (and one sub-issue) for decision on summary judgment in the

Miscellaneous Case: (1) whether Randle's claimed right to challenge the standing of GMAC

Mortgage to have filed the Servicemembers Case requires a judgment in this, the Miscellaneous

11

Case, declaring the foreclosure invalid; and (2) whether Randle was entitled to the ninety-day right to cure set out in the relevant version of G. L. c. 244, §35A.

1. Judgment in the Servicemembers Case

Randle argues, essentially, that due to the chronology of the assignments of the Mortgage, and of their recording in the Registry, relative to the filing and prosecution of the Servicemembers Case by GMAC Mortgage (which proceeded with the foreclosure sale on August 24, 2010), and also due to the evident discrepancy in the date the Judgment in the Servicemembers Case truly was entered on the docket, the foreclosure sale by GMAC Mortgage, (and any further sale GMAC Mortgage might undertake in light of the failure to consummate the first sale) cannot be valid and cannot be effective to pass a title to the high bidder at such a sale. This argument ignores the long-established limited scope of servicemembers proceedings in Massachusetts.

A foreclosure is not invalid because title passed on a date prior to the issuance of the judgment in a Servicemembers case, which, under the legislation implementing the Act of Congress in Massachusetts, has a limited scope and purpose and does not permit litigation of broader issues involving the relationship between borrower and lender. See Beaton v. Land Court, 367 Mass. 385 (1975); Blackfoot Capital, LLC v. Campaniello, 16 LCR 1, 2 (2008) (Misc. Case No. 334598) (Sands, J.) (holding failure to comply with terms of Servicemembers Act in conjunction with foreclosure not cloud on title where obligor not entitled to benefits under Act). GMAC Mortgage could conduct a valid foreclosure sale, and pass an effective title to the high bidder at the auction, even if GMAC Mortgage never had even commenced a servicemembers case: "If a foreclosure were otherwise properly made, failure to comply with the

12

1940 Relief Act [does] not render the foreclosure invalid as to anyone not entitled to the

protection of that act." Beaton, 367 Mass. at 390. Nothing in the later amendments to the

Massachusetts implementing legislation casts any doubt on this holding in Beaton. Whatever

deficiencies might lie in the judgment in the Servicemembers Case are of no consequence here

because Randle concedes she is not, nor ever has been, entitled to benefits under the Act.

Accordingly, even if Randle obtains the full relief she seeks in the Servicemembers Case, that is,

to have the Judgment vacated and to require GMAC Mortgage to commence a whole new case

by filing a new servicemembers complaint, that would not affect the validity of the foreclosure

that GMAC Mortgage already has made, nor of any foreclosure that GMAC Mortgage may

conduct in light of the failure to consummate the first foreclosure sale.

2. <u>Standing of the Mortgagee</u>

The Massachusetts enactment of legislation implementing in the Commonwealth a

procedure for obtaining judgments under the Servicemembers Civil Relief Act, see Acts 1943, c.

57, §§ 1 - 3, as amended, carefully provides that "[i]n proceedings under this section, no person

who is not entitled to the benefit of the [Servicemembers Civil Relief Act] . . . shall be entitled to

appear or be heard" and that "proceedings shall be limited to the issues of existence of such

person [who are entitled] and their rights, if any." St. 1959, c. 105, § 2; <u>see also</u> Beaton, <u>supra</u>,

367 Mass. at 387-388.

Nonetheless, a person or entity must have some connection to the mortgagor, the

mortgage, the premises conveyed by the mortgage, or their title, to bring a servicemembers

action. One entirely disconnected from the mortgaged land and from the mortgage loan

transaction and its attendant documents would not ordinarily have grounds to have the court

13

adjudicate the entitlement (or not) of a mortgagor or owner to the benefits of the Servicemembers

Civil Relief Act. Courts do not decide hypothetical cases, or ones in which the party seeking the

judgment has no more than a hypothetical interest. This basic standing requirement is satisfied,

however, by the plaintiff having some interest in the subject mortgage, the mortgaged premises,

and the title to them. That interest well may be sufficient even though it might, and often does,

fall far short of being a current record holder of the mortgage. Here, the Servicemembers Case

was commenced on January 14, 2008, but GMAC Mortgage did not become the record holder

until April 6, 2009, when GMAC Mortgage recorded an assignment from MERS, which at that

time held the Mortgage as nominee for GMAC Bank. Randle claims that she has a right to

challenge the standing of GMAC Mortgage to have filed the Servicemembers Case; as a vehicle

to vindicating this right, she has filed the Miscellaneous Case.

GMAC Mortgage has not produced any documents or offered any argument or

explanation as to what relevant interest it might have held in the four months leading up to

receiving the Mortgage by assignment. Instead, GMAC Mortgage argues that the standing of a

mortgagee to commence a servicemembers action is not a live issue in determining the validity of

a foreclosure when the mortgagee was the record holder of the subject mortgage at the time of

publication under the statutory power of sale, pursuant to G.L. c. 244, § 14, and at the time of the

foreclosure sale. See U.S. Bank Nat'l Assoc. v. Ibanez, 17 LCR 202 (2009) (Misc. Case Nos.

384283 & 386755) (Long, J.)(direct appellate review granted, see SJC-10694) ("Ibanez")). The

position of GMAC Mortgage is correct. Randle has not demonstrated that the foreclosure should

be declared invalid as a result of a shortcoming in the foreclosing party's standing as plaintiff in

the Servicemembers Case because, even assuming arguendo that GMAC Mortgage was unable to

14

overcome the low hurdle that is required to establish standing to bring a servicemembers action,

GMAC Mortgage's lack of standing would not affect the validity of the foreclosure sale--because

GMAC Mortgage held the mortgage when it published notices of, and when it conducted, the

foreclosure sale. Even if the Servicemembers Judgment were to be vacated or to be declared

invalid, it would not affect the validity of any foreclosure by GMAC Mortgage of the Mortgage

of the Property, because Randle concededly is not entitled to benefits under the act. See Beaton,

supra, 367 Mass. 385 (1975).

      Randle confuses or conflates the issue in Ibanez with the issues in this case. In Ibanez,

two foreclosures were determined by this court to be invalid because the foreclosing parties

failed to comply with the provisions of G.L. c. 244, § 14 that require notice be given which

"identif[ies] the holder of the mortgage." See Ibanez, 17 LCR at 204 (failure to identify holder of

mortgage renders sale void as matter of law); Ibanez, 17 LCR at 206-07 (foreclosure invalid

where foreclosing party named in notice had not been assigned mortgage either on or off record).

To reach this conclusion, a Justice of the Land Court determined that a bank does not "hold" a

mortgage, within the meaning of G.L. c. 244, §14, before a valid assignment has been executed

and delivered. Ibanez, 17 LCR at 207. Nothing in Ibanez stands for the proposition that a

foreclosing party needs to "hold" the mortgage to file a complaint under the Servicemembers

Civil Relief Act for a determination that the mortgagor or owner is not entitled to the benefits of

the federal Act, and Randle has pointed to no authority in support of such a contention.

Accordingly, I do not even need to reach in this Miscellaneous Case the question of whether

GMAC Mortgage had standing to commence the Servicemembers Case. The answer to that

question could not and does not affect the outcome here.

15

3. The Right to Cure

The Verified Complaint in the Miscellaneous Case presents the alternative argument that, to the extent GMAC Mortgage holds any claim secured by the Mortgage, it is not able to foreclose because it did not provide Randle with the notice and opportunity to cure required by G.L. c. 244, § 35A, which, at the time relevant, provided in pertinent part, with exception not here of consequence, that a mortgagor "shall have a 90 day right to cure a default . . . by full payment of all amounts that are due without acceleration of the maturity of the unpaid balance of such mortgage[,]" and that "[t]he mortgagee . . . shall not accelerate maturity of the unpaid balance . . . or otherwise enforce the mortgage . . . until at least 90 days after the date a written notice is given by the mortgagee to the mortgagor." See G.L. c. 244, § 35A (inserted by St. 2007, c. 206, § 11).[6] The enabling act provided that "[s]ection 11 shall take effect on May 1, 2008 and apply to all [residential] mortgages . . . which secure[] a loan before, on or after the effective date of this act[,]" but that "section 11 shall not apply to such mortgages accelerated or whose statutory condition has been voided under the terms of the mortgage to secure the note, prior to the effective date of this act." See St. 2007, c. 206, § 21.

Hence, to determine whether Randle was entitled under this enactment to either the ninety-day right to cure, or the written notice, we simply must look to the legislatively chosen date of May 1, 2008 and determine whether the mortgage had been "accelerated or whose

---

[6] The legislature has recently amended G.L. c. 244, §35A by Acts 2010, c. 258, §§7 and 8, the first effective date of which (as to the version of the statute reenacted in §7 of the session law) appears to be August 7, 2010, a date which is after the pending motion was submitted. Given this timing, there is no contention before the court that these later changes to the statute are implicated in this case. Moreover, upon review of the amendments, it does not appear that, even if the later version of the law were to play any role in this case, there would be any reason to alter the rulings made in this decision.

statutory condition has been voided under the terms of the mortgage to secure the note."[7]  The

"statutory condition" is that found in G.L. c. 183, §20, and failure to make required payments is a

breach of the statutory condition.  See, e.g. Negron v. Gordon, 373 Mass. 199, 205 (1977) ("in

this case there has been a breach of the statutory condition in that the mortgagor did not make the

required mortgage payments").  As of May 1, 2008, Randle already had breached the statutory

condition because Randle had been materially delinquent in her mortgage payments since, at the

least, April of 2005.  Randle was not entitled to the ninety-day right to cure, or the notice

required by G.L. c. 244, § 35A, because that section does not apply to "such mortgages . . .

whose statutory condition has been voided . . . prior to" May 1, 2008. See St. 2007, c. 206, § 21.

More obviously, GMAC Mortgage was not prevented from accelerating the mortgage by

G.L. c. 244, § 35A because it had already accelerated the Mortgage by the time the statute went

into effect.  See St. 2007, c. 206, § 21 ("section 11 shall not apply to . . . mortgages accelerated . .

. prior to the effective date of this act").  According to the undisputed facts, the Mortgage was

accelerated[8] in January of 2008 at the time GMAC Mortgage filed its Complaint to Foreclose in

---

[7] There is no dispute that the Mortgage is of "residential real property located in the
commonwealth consisting of a dwelling house with accommodations for 4 or less separate
households and occupied in whole or in part by the mortgagor," which are the other statutory
conditions for eligibility. See G.L. c. 244, § 35A (a).

[8] Strictly speaking, a mortgage is not commonly itself "accelerated." A mortgage, rather,
is declared in default, and the statutory condition of the mortgage is breached, entitling the
mortgagee, among other things, to exercise of the statutory power of sale.  Acceleration is
ordinarily thought of as the act of the lender in declaring the mortgage debt due in full based on a
material and uncured default in the borrower's undertakings, certainly including the covenant to
pay under the note as and when required. See, e.g., G.L. c. 244, § 35A(b), inserted by Acts 2007,
c. 206, §11 (mortgagee, etc. "shall not accelerate maturity of the unpaid balance of such
mortgage obligation or otherwise enforce the mortgage because of the mortgagor's failure to
make [described] payment...."). But there can be little doubt that, on the undisputed facts in this
summary judgment record, the milestone set by the legislature to be reached by May 1, 2008 had
been reached much before then, given the extensive and extended record of non-payment by

17

the Servicemembers Case. See Longoria Summ. J. Aff. ¶ 3 ("As a result, in January 2008, the

loan was accelerated when I filed a complaint...."). Section 35A of G.L. c. 244 was no bar to

accelerating the debt (or from foreclosing upon the Mortgage) because that law did not go into

effect until nearly five months after the Mortgage had been accelerated. The legislative

determination was that mortgage loans already in default, as of May 1, 2008, were not to be

addressed by, nor to have the benefits of, the palliative provisions of § 35A.[9]

---

Randle and of enforcement of remedies by her lender.

[9] To the extent Randle's contentions reach to say that, owing to the lack of proper
provision to her of the notice and right to cure created by the legislature in Acts 2007, c. 206,
§11, GMAC Mortgage could not even have commenced the Servicemembers Case, there is room
for doubt whether the protections of that law, as codified in G.L. c. 244, §35A, would even
prevent the filing of a servicemembers proceeding against her. That is because what, under this
statute (as in effect at the relevant time), the "mortgagee, or anyone holding thereunder," may not
do is "accelerate maturity of the unpaid balance of such mortgage obligation or otherwise enforce
the mortgage because of a default consisting of the mortgagor's failure to make ... payment ... by
any method authorized by this chapter [G.L. c. 244] or any other law until at least 90 days after
the date a written notice is given by the mortgagee to the mortgagor." G.L. c. 244, §35A (b). A
servicemembers action is in no manner an action to "enforce" the mortgage. It is not an action to
foreclose a mortgage. Cf. G.L. c. 244, §1. A servicemembers proceeding is simply a legislatively
established method of obtaining a judicial determination that certain interested parties do not
have the benefits of the Act of Congress; where, as here, the mortgagor owner has no claim to
protection under the Act of Congress, a foreclosure validly can take place in the Commonwealth
under the mortgage's statutory power of sale without judicial action, and in the absence of a
determination as to servicemember status. Beaton, supra, 367 Mass. 385 (1975). I need not
decide in this action whether or not the provisions of §35A would stand in the way of filing a
servicemembers case without the prior provision of the notices and cure right extended by that
section, because it is clear that those protections do not extend to Randle, given the effective date
for this section of the General Laws chosen by the legislature, and the uncontested dates in the
chronology of her nonpayment and subsequent interactions with her lender, see discussion above.

* * * * *

For the forgoing reasons, summary judgment must be granted to the defendant.  I will direct entry of a judgment dismissing the complaint with prejudice.

Judgment accordingly.

_____
Gordon H. Piper
Justice

Dated: October 12, 2010.

(SEAL)

## COMMONWEALTH OF MASSACHUSETTS

### LAND COURT

#### DEPARTMENT OF THE TRIAL COURT

WORCESTER, ss.

MISCELLANEOUS CASE
NO. 09 MISC 408202 (GHP)

| | |
|---|---|
| ALLISON L. RANDLE, | ) |
| Plaintiff, | ) |
| v. | ) |
| GMAC MORTGAGE, LLC, | ) |
| Defendant. | ) |

## J U D G M E N T

    This action commenced in this court on August 12, 2009. Plaintiff Allison Randle seeks to prevent a foreclosure sale by defendant GMAC Mortgage, LLC ("GMAC Mortgage"), and asks for judgment declaring that GMAC Mortgage does not hold any claim secured by a certain mortgage ("Mortgage") recorded with the Worcester County Registry of Deeds at Book 29672, Page 124, and lacks standing to bring an action against plaintiff Allison Randle pursuant to the Servicemembers Civil Relief Act, and under legislation enacted in Massachusetts under and pursuant to that federal law, see Acts 1942, c. 57, §§ 1-3, as amended. The Mortgage concerns property, more particularly described in the Mortgage, known as Unit 83 of the Whitney Street Condominium, located at 83-85 Whitney Street, Northborough, Worcester County, Massachusetts.

    This case came on to be heard on defendant's Motion for Summary Judgment. In a decision of even date, the court (Piper, J.) has granted that motion, determining that a summary judgment should enter in favor of the defendant GMAC Mortgage on all claims.

    In accordance with the court's decision issued today, it is

1

**ORDERED and ADJUDGED** that plaintiff's complaint is <u>DISMISSED</u> with prejudice.

By the Court. (Piper, J).

Attest:

_____
Deborah J. Patterson
Recorder

Dated: October 12, 2010.

A TRUE COPY
ATTEST:

Deborah J. Patterson
RECORDER

2

# EXHIBIT B

(SEAL)

## COMMONWEALTH OF MASSACHUSETTS
## THE TRIAL COURT
## LAND COURT DEPARTMENT

PLYMOUTH, ss.                                                    10 MISC. 429997

| | |
|---|---|
| US BANK, N.A., as trustee of CSMC MORTGAGE-BACKED TRUST 2006-7, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| MARYANNE HANLON and WILLIAM HANLON, | ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

*Introduction*

This action was filed by plaintiff US Bank, N.A. as trustee of the CSMC Mortgage-Backed Trust 2006-7[1] against defendants Maryanne and William Hanlon, owners of the property at 30 Till Rock Lane in Norwell, pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. App. 501, *et seq.* ("the Act"). Such an action, as a matter of law, is confined to determination of a single question — are the defendants (alleged to be in breach of their mortgage obligations) entitled to the benefits of the Act?[2] *Beaton v. Land Court*, 367 Mass. 385, 390-91 (1975). The

---

[1] In its complaint and other filings, US Bank describes itself as "trustee for CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-7," perhaps (broadly speaking) a correct characterization of its responsibilities, but the operative documents make clear that its proper role and title is "trustee of the CSMC Mortgage-Backed Trust 2006-7" (a common law trust formed under the laws of the state of New York) — the entity that acquired mortgage and other assets, issued "CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-7" in the trust, and has responsibility for the administration of those assets for the benefit of the trust's certificateholders. Prospectus Supplement (to Prospectus dated June 28, 2006), CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-7 (Jul. 31, 2006) ("Supplemental Prospectus").

[2] The Act "contains special rules regarding debts secured by a mortgage, trust deed, or similar security interest in real or personal property owned by a servicemember. Generally, the act prohibits the sale, foreclosure, or seizure of property, based on a breach of such a secured obligation, during the period of military service or within 90 days thereafter. The prohibition applies only to obligations that originated prior to the servicemember's military service, and for which the servicemember is still obligated." Office of the Comptroller of the Currency, Administrator of National Banks, Advisory Letter No. AL 2004-8 Re: Servicemembers Civil Relief Act at 2 (2004).

answer to that question is "yes" only if (1) the defendant is currently in active military service, and (2) the obligation at issue was incurred *before* that service began.[3]  There is also, however, a threshold issue, present in all judicial proceedings, which must be satisfied before the inquiry into the defendant's military status can even be reached.  Does the plaintiff have standing to bring the lawsuit?[4]  The Hanlons contend that US Bank does *not* have standing, and move to dismiss this action on that basis.

For the reasons set forth below, I find that US Bank has sufficient standing to obtain a determination of the Hanlons' status under the Act.  The motion to dismiss is thus **DENIED**.  Unless the Hanlons show, by admissible evidence, that they are servicemembers entitled to the benefits of the Act, and do so no later than **September 17, 2010** in a filing with this court, judgment that they are not entitled to the benefits of the Act shall enter promptly thereafter.

## Discussion

This is a servicemember's action.  It does not seek, and by law cannot give, a determination that the Hanlons are in breach of their loan or mortgage obligations, that US Bank may validly foreclose on the Hanlons' property, or even that US Bank has standing to notice and conduct a foreclosure sale.[5]  *Beaton, supra.*  All a servicemembers action can do, and all it does, is determine whether the defendants to the action are entitled to the benefits of the Servicemembers Civil Relief Act as of the date set forth in its judgment.  *Id.*  Thus, a plaintiff need not be the current holder of the note or the mortgage to have standing in a servicemember's case.  It is sufficient if the plaintiff satisfies the general requirements of standing.

---

[3]    *See* n. 2.

[4]    Standing is a matter of subject matter jurisdiction.  If the plaintiff does not have standing, the court has no jurisdiction to hear the dispute.  *Sullivan v. Chief Justice for Admin. and Mgmt. of the Trial Court*, 448 Mass. 15, 21 (2006).

[5]    For those questions, *see, inter alia*, G.L. c. 244, § 14 (foreclosure under power of sale; procedure; notice; form); *US Bank v. Ibanez*, 17 LCR 202 (Mar. 26, 2009) & 17 LCR 679 (Oct. 14, 2009) (discussing the requirements of G.L. c. 244, § 14).

"Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue." *Sierra Club v. Morton*, 405 U.S. 727, 731-32 (1972). "To have standing in any capacity, a litigant must show that the challenged action has caused the litigant injury." *Sullivan*, 448 Mass. at 21 (internal citations and quotations omitted). "Injuries that are speculative, remote and indirect are insufficient to confer standing. Not every person whose interests might conceivably be adversely affected is entitled to judicial review. The complained-of injury must be a direct and ascertainable consequence of the challenged action." *Id.* "In addition, for the plaintiff to have standing, the injury alleged must fall within the area of concern of the statute or regulatory scheme under which the injurious action has occurred."[6] *Id.* at 21-22 (internal citations and quotations omitted). Where, as here, a declaration is sought, the controversy must be "real, not hypothetical" since "the declaration issued is intended to have an immediate impact on the rights of the parties." *Mass. Assoc. of Ind. Ins. Agents and Brokers, Inc. v. Comm'r of Ins.*, 373 Mass. 290, 292 (1977).

In its complaint in this action, US Bank claims to be "the assignee and holder of a mortgage with the statutory power of sale given by Maryanne Hanlon and William D. Hanlon to Mortgage Electronic Systems, Inc. dated December 12, 2005, recorded at the Plymouth County Registry of Deeds at Book 31920, Page 272 covering 30 Till Rock Lane, Norwell." Complaint (May 18, 2010). For purposes of this case, I need not and do not decide if that allegation is true because the record shows US Bank to have an alternate basis for standing. At the least, US Bank is the trustee of the CSMC Mortgage-Backed Trust 2006-7, to which the Hanlon mortgage was assigned. *See* the documents authenticated by the Affidavit of Joseph Cariola in Support of

---

[6]     This is sometimes phrased as the requirement for "a legally cognizable injury." *Mass. Assoc. of Ind. Ins. Agents and Brokers, Inc. v. Commr. of Ins.*, 373 Mass. 290, 293 (1977).

Plaintiff's Opposition to Defendant's Motion to Dismiss (Jul. 23, 2010);[7] the Supplemental

Prospectus; and the initial Prospectus (Prospectus: Conduit Mortgage and Manufactured Housing

Contract Pass-Through Certificates, Credit Suisse First Boston Mortgage Securities Corp,

Depositor (Jun. 28, 2006).  As such, US Bank has a fiduciary responsibility to the trust

certificateholders to maintain and collect upon trust assets, which include this mortgage, and

potential liability to those certificateholders if it does not take proper steps to do so.  Even *if* this

particular mortgage is ultimately determined not to be a part of the trust *res* (a question I need

not and do not decide), it *facially* appears to be so.  This is sufficient to give US Bank an interest

in determining whether the Hanlons are entitled to the benefits of the Act since such entitlement

affects the present collectibility of that loan (or, more precisely, the ability to conduct a

foreclosure sale of the collateral securing it) and thus the present value of the loan.  Any

lessening of that value directly affects the certificateholders' rights and exposes US Bank to

liability if it does not take appropriate steps to protect those rights.  This is both a "legally

cognizable injury" to US Bank and one with "immediate impact" on US Bank's rights, sufficient

to grant it standing.

*Conclusion*

For the foregoing reasons, the defendants' motion to dismiss the plaintiff's

Servicemember's complaint for lack of standing is **DENIED**.  Unless the defendants show, by

admissible evidence, that they are servicementbers entitled to the benefits of the Act, and do so

no later than **September 17, 2010** in a filing with this court, judgment that they are not entitled

---

[7]      The Hanlons have moved to strike this affidavit on the grounds that it lacks sufficient foundation.  I deny
that motion to the extent it challenges the affidavit's authentication of the documents attached since the witness has
shown a sufficient basis to authenticate them.  I need not and do not rule on the Hanlons' challenge to the affidavit's
characterization or conclusions from those documents since I can (and did) read and interpret them myself.  Also, I
need not and do not rule on the Hanlons' challenge to the witness' statements of purported fact *outside* the contents
of those documents since I need not and do not rely on any of them

to the benefits of the Act shall enter promptly thereafter.

**SO ORDERED.**

By the court (Long, J.)

Attest:

Dated:  20 August 2010

_____
Deborah J. Patterson, Recorder

TRUE COPY
ATTEST:

*Deborah J. Patterson*
**RECORDER**

(SEAL)

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
LAND COURT DEPARTMENT

NORFOLK, ss.                                         10 MISC. 421195

---

HSBC BANK USA, N.A., as trustee of Ace      )
Securities Corp., Home Equity Loan Trust, Series   )
2005-HE4,                                    )
                         Plaintiff,        )
        v.                                )
                                      )
JODI MATT,                                   )
                         Defendant.        )

---

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

*Introduction*

    This action was filed by plaintiff HSBC Bank USA, N.A., as trustee of Ace Securities

Corp., Home Equity Loan Trust, Series 2005-HE4 ("HSBC"), against defendant Jodi Matt

pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. App. 501, *et seq.* ("the Act"). Such

an action, as a matter of law, is confined to determination of a single question; is the defendant

(alleged to be in breach of her mortgage obligations) entitled to the benefits of the Act?[1] *Beaton*

*v. Land Court*, 367 Mass. 385, 390-91 (1975). The answer to that question is "yes" only if (1)

the defendant is currently in active military service, and (2) the obligation at issue was incurred

*before* that service began.[2] There is also, however, a threshold issue, present in all judicial

proceedings, which must be satisfied before the inquiry into the defendant's military status can

---

[1]    The Act "contains special rules regarding debts secured by a mortgage, trust deed, or similar security
interest in real or personal property owned by a servicemember. Generally, the act prohibits the sale, foreclosure, or
seizure of property, based on a breach of such a secured obligation, during the period of military service or within 90
days thereafter. The prohibition applies only to obligations that originated prior to the servicemember's military
service, and for which the servicemember is still obligated." Office of the Comptroller of the Currency,
Administrator of National Banks, Advisory Letter No. AL 2004-8 Re: Servicemembers Civil Relief Act at 2 (2004).
[2]    *See* n. 1.

even be reached. Does the plaintiff have standing to bring the lawsuit?[3] Ms. Matt contends that

HSBC does *not* have standing, and moves to dismiss this action on that basis.

For the reasons set forth below, I find that HSBC has sufficient standing to obtain a

determination of Ms. Matt's status under the Act. The motion to dismiss is thus **DENIED.**

Since Ms. Matt does not claim to be a servicemember, judgment that she is not entitled to the

benefits of the Act shall also enter.

*Discussion*

This is a Servicemember's action. It does not seek, and by law cannot give, a

determination that Ms. Matt is in breach of her loan or mortgage obligations, or that HSBC may

validly foreclose on Ms. Matt's property. Indeed, it is not clear from the record that HSBC is

the current holder of either the note or the mortgage — questions I need not and do not decide in

this proceeding but which certainly will arise in the context of foreclosure.[4] *See* G.L. c. 244, §

14; *U.S. Bank N. A. v. Ibanez*, 17 LCR 202 (2009), 17 LCR 679 (2009). But a plaintiff need not

be the current holder of the note or the mortgage to have standing in a Servicemember's case. It

is sufficient if the plaintiff satisfies the general requirements of standing.

"Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain

judicial resolution of that controversy is what has traditionally been referred to as the question of

standing to sue." *Sierra Club v. Morton*, 405 U.S. 727, 731-32 (1972). "To have standing in any

---

[3] Standing is a matter of subject matter jurisdiction. If the plaintiff does not have standing, the court has no jurisdiction to hear the dispute. *Sullivan v. Chief Justice for Admin. and Mgmt. of the Trial Court*, 448 Mass. 15, 21 (2006).

[4] The record contains a document entitled "assignment of mortgage," recorded at the Norfolk County Registry of Deeds at Book 25302, Page 102 (Nov. 16, 2007), which purports to be an assignment of Ms. Matt's "mortgage and the note and claim secured thereby" from New Century Mortgage Corporation to HSBC. This "assignment," however, is dated November 6, 2007, at a time when New Century was in bankruptcy (it filed on April 2, 2007), and there is nothing in the record to indicate what authority, if any, the bankruptcy court granted either New Century or its purported agent, Kimberly Dawson, to make such an assignment. There is also nothing in the record to indicate that Ms. Dawson either (a) held the office at New Century she purported to hold, or (b) even if she held such an office, that she had New Century's authority to assign its assets to third parties.

capacity, a litigant must show that the challenged action has caused the litigant injury." *Sullivan*,
448 Mass. at 21 (internal citations and quotations omitted). "Injuries that are speculative, remote
and indirect are insufficient to confer standing. Not every person whose interests might
conceivably be adversely affected is entitled to judicial review. The complained-of injury must
be a direct and ascertainable consequence of the challenged action." *Id.* "In addition, for the
plaintiff to have standing, the injury alleged must fall within the area of concern of the statute or
regulatory scheme under which the injurious action has occurred."[5] *Id.* at 21-22 (internal
citations and quotations omitted). Where, as here, a declaration is sought, the controversy must
be "real, not hypothetical" since "the declaration issued is intended to have an immediate impact
on the rights of the parties." *Mass. Assoc. of Ind. Ins. Agents and Brokers, Inc. v. Commr. Of
Ins.*, 373 Mass. 290, 292 (1977).

While HSBC may or may not be the *current* holder of Ms. Matt's note and mortgage (a
requirement — at least with respect to the mortgage —to commence G.L. c. 244, § 14
foreclosure proceedings, *see Ibanez, supra*), the record clearly shows that HSBC has a
contractual right to *become* that holder, conferred by the ACE Securities Corp. Home Equity
Loan Trust, Series 2005-HE4 Asset Backed Pass-Through Certificates Pooling and Servicing
Agreement (Jun. 1, 2005). *See* Section 2.01 (Conveyance of the Mortgage Loans to Ace
Securities Corp. Home Equity Loan Trust, Series 2005-HE4) and the associated loan schedules
(which include the Matt loan and mortgage). In the absence of a showing that HSBC no longer
has that right (*e.g.* that the right has been abandoned or lost in the bankruptcy proceedings, or
assigned to another entity), this is sufficient to give it standing to bring a Servicemember's case
since whether or not Ms. Matt is entitled to the benefits of the Act affects the present

---

[5]       This is sometimes phrased as the requirement for "a legally cognizable injury." *Mass. Assoc. of Ind. Ins.
Agents and Brokers, Inc. v. Commr. of Ins.*, 373 Mass. 290, 293 (1977).

collectibility of that loan (or, more precisely, the ability to conduct a foreclosure sale of the collateral securing it) and thus the present value of the loan. Any lessening of that value directly affects HSBC's rights. This is both a "legally cognizable injury" to HSBC and one with "immediate impact" on HSBC's rights, sufficient to grant it standing.

*Conclusion*

For the foregoing reasons, the defendant's motion to dismiss the plaintiff's Servicemember's complaint for lack of standing is **DENIED**. Since Ms. Matt concedes that she is not entitled to the benefits of the Act, such a judgment shall enter.

**SO ORDERED.**

By the court (Long, J.)

Attest:

Dated: 8 July 2010

_____
Deborah J. Patterson, Recorder

A TRUE COPY
ATTEST:
Deborah J. Patterson
RECORDER

# EXHIBIT C

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.

LAND COURT
NO. 08-MISC-369658-GHP
NO. 09-MISC-408202-GHP

---

ALLISON L. RANDLE,                         )
                                           )
                 Plaintiff,                )
                                           )
v.                                         )
                                           )
GMAC MORTGAGE, LLC,                        )
                                           )
                 Defendant.                )

---

## AFFIDAVIT OF JOSEPH CALANDRELLI

I, Joseph Calandrelli, do under oath state and depose as follows:

1.      My name is Joseph Calandrelli.  I am attorney licensed to practice in the

Commonwealth of Massachusetts and, along with Attorneys Richard Briansky and Amy Hackett,

serve as counsel of record for Defendant GMAC Mortgage, LLC ("GMAC Mortgage") in the

above-captioned matters.  I am submitting this Affidavit in support of GMAC Mortgage's

Request for Sanctions, which was filed as part of its Opposition to the motion to alter or amend

the judgment filed by Plaintiff Allison Randle ("Randle").  The following statements are made

on the basis of my personal knowledge and/or after a review of records maintained by my law

firm in the ordinary course of its business, of which I am the keeper.

2.      Attorney Israel Sanchez ("Attorney Sanchez") has served as Randle's counsel at

all relevant times.  On October 22, 2009, Attorney Sanchez and I both attended a Case

Management Conference where we discussed the merits of the case and the proposed discovery

schedule with the Court (Piper, J.).  At this conference, the parties agreed to a close of discovery

1

by December 31, 2009, and this date was entered as a Court Order. See *October 26, 2009 Notice of Docket Entry*, a true and accurate copy of which is attached hereto as **Exhibit 1**. The Court also ordered that any motion for summary judgment that would be filed by GMAC Mortgage would be due by the end of January, 2010. Id.

3.    The parties then commenced discovery. On November 17, 2009, I served a Notice of Deposition, scheduling Randle's deposition for December 21, 2009. See *Notice of Deposition*, a true and accurate copy of which is attached hereto as **Exhibit 2**. I served GMAC Mortgage's First Request for Production of Documents on Randle shortly thereafter. See *GMAC's First Request for Production of Documents*, a true and accurate copy of which is attached hereto as **Exhibit 3**. An entire month passed with no word from Attorney Sanchez regarding the deposition.

4.    On December 16, 2009, just days before Randle's scheduled deposition, Attorney Sanchez contacted me to request that I reschedule Randle's deposition for mid-to-late January due to a previously-scheduled court appearance. In good faith, I agreed to reschedule the deposition for either January 11th or January 12th on the express condition that Randle agree to produce the documents requested by GMAC Mortgage at least one week in advance of the deposition. Attorney Sanchez then requested that the deposition be postponed even further until January 19, 2010. However, Attorney Sanchez did agree to provide the documents at least one week in advance of Randle's deposition date. On the basis of this representation, I agreed to reschedule the deposition for January 19, 2010. See *December 19, 2009 Email String*, a true and accurate copy of which is attached hereto as **Exhibit 4**.

5.    On January 11, 2010, I wrote to Attorney Sanchez to request confirmation that Randle would appear for her scheduled deposition on January 19, 2010. I also requested – in

accordance with our agreement – the immediate production of Randle's documents as it was a

week prior to her deposition. The next day, Attorney Sanchez informed me that "[his] calendar

shows her depo is scheduled for next Thursday, which is the only day [he was] available."

Attorney Sanchez didn't even acknowledge my request for the overdue documents in this

communication. I responded to Attorney Sanchez the same day, agreeing to reschedule Ms.

Randle's deposition to Thursday, January 21, 2010 at his request. Once again, I asked whether I

could expect to receive the documents a week in advance in accordance with our prior

agreement. Once again, my request was ignored. See *January 12, 2010 Email String*, a true and

accurate copy of which is attached hereto as **Exhibit 5**.

6.      As a result, on January 15, 2010, I was forced to write to Attorney Sanchez

reminding him that "I agreed to reschedule Ms. Randle's deposition from December on the

express representation that you would have your documents to me at least one week prior to Ms.

Randle's deposition. You have failed to live up to your side of the agreement as her deposition

is now scheduled for 9:00 a.m. on Thursday, January 21, 2010. Please produce these documents

immediately or I will have to seek the necessary relief from the Court." See *January 15, 2010*

*Letter*, a true and accurate copy of which is attached hereto as **Exhibit 6**.

7.      Attorney Sanchez did not respond to my communication until 1:00 p.m. on the

afternoon of January 20, 2010, less than twenty four (24) hours prior to her deposition. In this

email, Attorney Sanchez informed me – for the first time – that Randle would not be appearing at

her deposition the next day. See *January 20, 2010 Email*, a true and accurate copy of which is

attached hereto as **Exhibit 7**. For the third time, he ignored my request for the overdue

documents.

8.      Several hours later, and in an attempt to avoid a discovery dispute, I wrote to Attorney Sanchez informing him that I planned on proceeding with the deposition as scheduled. I expressly informed Attorney Sanchez that I would seek relief from the Court, with respect to both Randle's deposition and the overdue documents, if Randle failed to appear for her deposition. See *January 20 Letter*, a true and accurate copy of which is attached hereto as **Exhibit 8**.

9.      Attorney Sanchez never responded to my letter. As a result, a court reporter appeared at my offices at 8:30 a.m. on January 21, 2010, as scheduled. Randle failed to appear for her deposition. See *Statement on Record*, a true and accurate copy of which is attached hereto as **Exhibit 9**.

10.     I made one last attempt to avoid filing a motion to compel. On January 26, 2010, I sent an email to Attorney Sanchez, pursuant to Land Court Rule 7, in which I informed him that I was prepared to file a motion to compel and seek sanctions. I invited him to participate in a discovery conference prior to the filing of this motion to see if we could settle our dispute without involving the Court. See *January 26, 2010 Email*, a true and accurate copy of which is attached hereto as **Exhibit 10**. Attorney Sanchez refused to acknowledge the request for this conference, let alone agree to participate in one.

11.     As a result, GMAC Mortgage was forced to file a motion to compel. See *Motion to Compel (without exhibits)*, a true and accurate copy of which is attached hereto as **Exhibit 11**. Randle never opposed this motion.

12.     On February 23, 2010, the Court allowed GMAC Mortgage's unopposed motion and ordered that Randle:

- produce responsive documents within one (1) week;

- appear for a deposition no later than March 12, 2010; and

- pay to GMAC Mortgage, "within Twenty (20) Days Amount of Attendance Fee Due or Paid to Stenographer with Respect to Previously Notice[d] Deposition for which [Randle], Without Excuse, Did Not Appear."

See *February 23, 2010 Court Order*, a true and accurate copy of which is attached as **Exhibit 12**.

The Court also ordered GMAC Mortgage to file its motion for summary judgment no later than

April 1, 2010. *Id.*

13.    Notwithstanding this unambiguous Court Order, Randle refused to produce the

requested documents. As a result, on March 8, 2010, I wrote the following email to Attorney

Sanchez:

> As you know, at the hearing on February 23rd, the Court ordered Ms. Randle to produce the responsive documents within one week from the hearing. A copy of the order is attached for your reference. Ms. Randle's documents were therefore due no later than March 3, 2010. It is now 1:30 p.m. on March 8th, less than twenty-four (24) hours prior to the start of your client's deposition, and I still have not received Ms. Randle's documents. Please note that I consider Ms. Randle to be in contempt of court and GMAC reserves its right to take any and all remedial actions.

See *March 8, 2010 Email to Attorney Sanchez*, a true and accurate copy of which is attached as

**Exhibit 13**. Randle finally produced her documents later that afternoon, less than one day prior

to her deposition.

14.    On March 29, 2010, in accordance with the Court's February 23d Order, I wrote

to Attorney Sanchez again, informing him that the stenographer fee for the deposition in which

Randle failed to appear was $210.50 and requesting that Randle remit this amount within twenty

(20) days. See *March 29, 2010 Letter to Attorney Sanchez*, a true and accurate copy of which is

attached as **Exhibit 14**. To date, neither Randle nor Attorney Sanchez have remitted any of this

amount.

15.    On or about March 31, 2010, I filed a summary judgment motion on behalf of

GMAC Mortgage.  Less than twenty-four hours before Randle's opposition was due, Attorney

Sanchez requested that I assent to a continuance of the summary judgment hearing, and that I

assent to Randle filing an opposition several days late.  In response, I stated, "The hearing date,

as well as your opposition date, was specifically set by the Court after they were previously

delayed due in part to Ms. Randle's failure to produce documents and appear for a deposition.  If

my memory serves me correctly, the Court stated that no further extensions would be granted.

Therefore, I cannot assent to your request for a continuance.  However, if you want to file a

motion with the Court, I will likely not oppose it."  See *April 22, 2010 Email to Attorney

Sanchez*, a true and accurate copy of which is attached as **Exhibit 15**.  At no time did Attorney

Sanchez refer to filing a cross-motion for summary judgment or moving to amend Randle's

complaint.

16.    The next day, the date Randle's opposition was due, Attorney Sanchez filed an

"Emergency Motion to Enlarge Time to File and Serve an Opposition to Defendant's Motion for

Summary Judgment; For Leave to File and Serve A Cross-Motion for Partial Summary

Judgment; For Leave to File and Serve A Supplemental Pleading Setting Forth Transactions

Which Have Happened Since the Date of Plaintiff's Original Pleading; and to Reschedule

Hearing Date for Cause."  In this "emergency" motion, Attorney Sanchez falsely represented to

the Court that I had stated that I would "not likely oppose" Randle's motion.  This was an

egregious misstatement that was taken out of context, as I had mentioned only that I would not

likely oppose a motion to continue the hearing date and to file an opposition several days late.

At no time had Attorney Sanchez and I discussed or even mentioned Randle's filing of a cross-

motion or a motion to amend her pleadings.

17.    Between the date of the summary judgment hearing, May 4, 2010, and the date I received a copy of Randle's motion to amend or alter the judgment, October 25, 2010, I had not received any communications or other documents from Attorney Sanchez.

Signed under the pains and penalties of perjury this 10th day of November, 2010.

Joseph Calandrelli
Joseph Calandrelli

EXHIBIT 1

THE COMMONWEALTH OF MASSACHUSETTS
LAND COURT
DEPARTMENT OF THE TRIAL COURT
226 CAUSEWAY STREET
BOSTON, MA 02114
PHONE: 617-788-7497

October 26, 2009

## NOTICE OF DOCKET ENTRY

Notice is hereby given that the following docket entry has been made in:

**09 MISC 408202 (GHP) – Randle v. GMAC Mortgage**

October 22, 2009. Case Management Conference Held. Early Intervention Event Held. Attorneys Sanchez and Calandrelli Appeared. By November 5, 2009, Counsel for Mortgagee to File and Serve Report on Status of Foreclosure Proceedings, and Status of Bankruptcy Proceedings in District of Tennessee. Discovery to Close December 31, 2009, by Which Date, Counsel to File Joint Report Detailing All Discovery They Have Conducted, and Either Indicating that (1) Defendant Will File Motion for Summary Judgment Within Thirty (30) Days of Close of Discovery, With Land Court Rule 4 to Govern Timing and Substance of Subsequent Filings, or (2) the Parties Request Pretrial Conference. Discovery Cutoff to be Extended One Month Upon Joint Motion Showing Good Cause, without Further Hearing Unless Otherwise Ordered.

(Piper, J.)

Very truly yours,

Kathryn Downing
Sessions Clerk
617-788-7458

CC:    Israel M. Sanchez, Jr., Esq.
       Joseph P. Calandrelli, Esq.
       File

EXHIBIT 2

# COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.

LAND COURT
NO. 09-MISC-408202-GHP

ALLISON L. RANDLE,          )
                            )
        Plaintiff,          )
                            )
v.                          )
                            )
GMAC MORTGAGE, LLC,         )
                            )
        Defendant.          )
                            )

## DEPOSITION NOTICE

TO:   *Allison L. Randle*
      *c/o Israel Sanchez, Esq.*

Please take notice that pursuant to Rule 30 of the Massachusetts Rules of Civil Procedure, Defendant GMAC Mortgage, LLC ("GMAC"), by and through its attorneys, will take the deposition upon oral examination of **Allison L. Randle**. Said deposition will take place on **Monday, December 21, 2009 at 9:00 a.m.** at the offices of GMAC's attorneys, Prince, Lobel, Glovsky & Tye LLP, 100 Cambridge Street, Boston, MA 02114, before a notary public or other person authorized by law to administer oaths. The examination will continue from day to day until completed.

Ms. Randle will be required at the time of deposition to present identification that includes her photograph and signature. You are invited to attend and cross-examine.

1019015.1

1

GMAC MORTGAGE, LLC
By its attorneys,

*Josesh Calandrelli*

Richard E. Briansky (BBO# 632709)
rbriansky@princelobel.com
Joseph P. Calandrelli (BBO# 666128)
jcalandrelli@princelobel.com
**PRINCE, LOBEL, GLOVSKY & TYE LLP**
100 Cambridge Street, Suite 2200
Boston, MA 02114
Tel:  617.456.8000

Dated:  November 17, 2009

## CERTIFICATE OF SERVICE

I, Joseph Calandrelli, certify that on November 17, 2009, I caused a true and accurate copy of the foregoing document to be served on counsel of record for Allison Randle by sending the same by first-class mail, postage prepaid to:

Israel Sanchez, Esq.
Sanchez & Associates
8 Boxwood Circle
Milford, NH 03055
*(Counsel for Randle)*

*Josesh Calandrelli*
Joseph Calandrelli

1019015.1

2

# EXHIBIT 3

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.

LAND COURT
NO. 09-MISC-408202-GHP

---

ALLISON L. RANDLE,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
GMAC MORTGAGE, LLC,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　　　　)

---

### GMAC MORTGAGE, LLC'S
### FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Massachusetts Rules of Civil Procedure, Defendant GMAC Mortgage, LLC ("GMAC") hereby submits its First Request for Production of Documents to Plaintiff Allison L. Randle ("Randle"). In accordance with Rule 34, Randle shall produce the requested documents at the offices of GMAC's counsel, Prince, Lobel, Glovsky & Tye LLP, 100 Cambridge Street, Suite 2200, Boston, MA 02114, within thirty (30) days of service.

### DEFINITIONS

1.　　　The word "document(s)" is to be defined in the broadest context allowable under relevant Massachusetts law and includes, but is not limited to, any written, graphic or other matter, whether produced, reproduced, or stored on paper, cards, tapes, computer disks, computer storage devices, electronic mail, charts, films or any other medium and shall include, without limitation, memoranda, notes, lists, books, reports, statements, agreements, appointment calendars, diaries, manuals, graphs, records, correspondence, and any other published material.

1025299.1

1

The term "document(s)" shall also include, without limitation, originals, all copies (with or without notes, additional writings or changes thereon) and drafts.

2.    The word "communication" means any oral or written transmittal of information or request for information made from one person or entity to another person or entity, whether made in person, by telephone, by electronic means, or by any other means or a document made only for the purpose of recording a communication, an idea, statement, opinion or belief.

3.    The word "relating to" means regarding, concerning, mentioning, discussing, evidencing, involving, used with, pertaining to, connected with, relied upon, constituting, supporting, or in any way relevant to the indicated item, event, or circumstance.

4.    The words "and" and "or" shall be interpreted to each mean "and/or." Any word written in the singular shall include the plural, and any word written in the plural shall include the singular.

5.    The word "GMAC" means the defendant GMAC Mortgage, LLC, and any and all of its predecessors, successors, agents, servants, representatives, subsidiaries, parent corporations, affiliates, consultants, independent contractors, and employees, or any other person acting or purporting to act on behalf of GMAC including, without limitation, any attorney retained by it.

6.    The word "GMAC Bank" means GMAC Bank, and any and all of its predecessors, successors, agents, servants, representatives, subsidiaries, parent corporations, affiliates, consultants, independent contractors, and employees, or any other person acting or purporting to act on behalf of GMAC Bank including, without limitation, any attorney retained by it.

1025299.1                                    2

7.    The word "MERS" means Mortgage Electronic Registration Systems, Inc., and any and all of its predecessors, successors, agents, servants, representatives, subsidiaries, parent corporations, affiliates, consultants, independent contractors, and employees, or any other person acting or purporting to act on behalf of MERS including, without limitation, any attorney retained by it.

8.    The word "Sherwood" means Sherwood Mortgage Group, Inc., and any and all of its predecessors, successors, agents, servants, representatives, subsidiaries, parent corporations, affiliates, consultants, independent contractors, and employees, or any other person acting or purporting to act on behalf of Sherwood including, without limitation, any attorney retained by it.

9.    The word "you," "your," or "Randle" means the plaintiff Allison L. Randle, and any and all of her agents, representatives, or any other person acting or purporting to act on behalf of Randle, including, without limitation, any attorney retained by her.

10.    The word "Mara" means Richard S. Mara, and any and all of his agents, representatives, or any other person acting or purporting to act on behalf of Mara, including, without limitation, any attorney retained by him, or any trustee representing his estate in bankruptcy.

11.    The word "Michaels" means Avrom Michaels, and any and all of his agents, representatives, or any other person acting or purporting to act on behalf of Michaels, including, without limitation, any attorney retained by him.

12.    The word "Jardus" means Edward Jardus, and any and all of his agents, representatives, or any other person acting or purporting to act on behalf of Jardus, including, without limitation, any attorney retained by him.

13.    The word "Property" means the parcel of real property commonly referred to as

83-85 Whitney Street, Unit 83, Northborough, Massachusetts.

14.    The word "Loan" means the loan you received from Sherwood on or about April

8, 2003 in the approximate amount of $150,000 that was secured by a mortgage on the Property.

## REQUESTS

## REQUEST NO. 1

Produce all documents relating to the Loan.

## REQUEST NO. 2

Produce all assignments of the promissory note and/or mortgage you executed in
connection with the Loan.

## REQUEST NO. 3

Produce all communications between you and any of the following individuals relating to
the Loan, the Property, or the foreclosure thereon:

      a.    Mara;
      b.    Michaels; or
      c.    Jardus.

## REQUEST NO. 4

Produce all communications between you and any of the following entities relating to the
Loan, the Property, or any scheduled foreclosure thereon, including but not limited to any notices
of default, notices of acceleration, and notices of foreclosure:

      a.    MERS;
      b.    GMAC Bank; or
      c.    GMAC.

## REQUEST NO. 5

Produce all documents relating to any previous court proceeding you were involved in,
including but not limited to each of the following:

      a.    *MERS v. Randle*, Case No. 05-MISC-310699;
      b.    *MERS v. Randle*, 1:05-cv-11817-PBS;

c.    *GMAC v. Randle*, Case No. 08-MISC-369658;

d.    *GMAC v. Randle*, 4:08-cv-40102-FDS; and

e.    *In re: Allison L. Randle*, 08-20996 – Connecticut Bankruptcy.

## REQUEST NO. 6

Produce all documents you received in connection with the scheduled foreclosure of the Property, including but not limited to all notices of foreclosure, newspaper publications of sale, and notice of mortgagee's sales.

## REQUEST NO. 7

Produce all documents you intend on introducing as exhibits at trial of this matter.

## REQUEST NO. 8

Produce all documents relating to any damages you incurred as a result of any action or inaction allegedly taken, or failed to be taken, by GMAC.

GMAC MORTGAGE, LLC
By its attorneys,

Richard E. Briansky (BBO# 632709)
rbriansky@princelobel.com
Joseph P. Calandrelli (BBO# 666128)
jcalandrelli@princelobel.com
**PRINCE, LOBEL, GLOVSKY & TYE LLP**
100 Cambridge Street, Suite 2200
Boston, MA 02114
Tel: 617.456.8000

Dated:  November 30, 2009

## CERTIFICATE OF SERVICE

I, Joseph Calandrelli, certify that on November 30, 2009, I caused a true and accurate copy of the foregoing document to be served on counsel of record for Allison Randle by sending the same by first-class mail, postage prepaid to:

Israel Sanchez, Esq.
Sanchez & Associates
8 Boxwood Circle
Milford, NH 03055
*(Counsel for Randle)*

Joseph Calandrelli

# EXHIBIT 4

**Calandrelli, Joseph**

---

**From:** ISRAEL M. SANCHEZ, JR. [mailto:isan316@gmail.com]
**Sent:** Saturday, December 19, 2009 9:59 AM

**To:** Calandrelli, Joseph
**Subject:** Re: Randle v GMAC

Joseph,

1/20/2010

I am in agreement, I will call the Court Monday and send you a draft joint motion. I was in court during the afternoon and just got to your email now.

Thank you.
Israel

On Fri, Dec 18, 2009 at 12:13 PM, Calandrelli, Joseph <jcalandrelli@plgt.com> wrote:

Israel,

The Order requires that we obtain court approval for the additional thirty days. If you want to submit a joint motion asking for an additional thirty days for discovery and pushing back the SJ deadline by thirty days, I'm okay with that. Please send me a draft motion today and I will cancel the court reporter.

Joe

---

**From:** ISRAEL M. SANCHEZ, JR. [mailto:isan316@gmail.com]
**Sent:** Friday, December 18, 2009 11:55 AM
**To:** Calandrelli, Joseph
**Subject:** Re: Randle v GMAC

Order say we can agree to additional 30 days I believe. I prefer not filing emergency motion given the holidays. I have a criminal trial starting on 1/7/09 and other court matters which I can document, including a hearing in Bankrutcy Court on 1/6/09 in Florida a client has asked me to attend that I am going to try and move.

On Thu, Dec 17, 2009 at 5:10 PM, Calandrelli, Joseph <jcalandrelli@plgt.com> wrote:

The summary judgment deadline is January 31st. I can't take her deposition on the 19th - that will not provide me with enough time to draft the motion. Therefore, if you want the extension, I need to take her deposition no later than January 12th. I need to have the documents prior to that.

As it stands, your responses are due on December 30th. I have no problem if you take a few extra days, but given the short discovery period - which we agreed to at the October scheduling conference - I can't grant that much additional time. There are limited issues involved, and therefore limited documents.

Please let me know whether this works by tomorrow morning. If so, I can cancel the court reporter. If not, then I'll proceed with her deposition on Monday.

Joe

-----Original Message-----
From: ISRAEL M. SANCHEZ, JR. [mailto:isan316@gmail.com]
Sent: Thursday, December 17, 2009 2:51 PM
To: Calandrelli, Joseph
Subject: Re: Randle v GMAC

Joseph, I have no issue in giving docs to you a week in advance, but given my schedule I would get you docs by Jan 12 and have Radle' s depo Jan. 19*   When would I get docs?

On 12/17/09, Calandrelli, Joseph <jcalandrelli@plgt.com> wrote:
> Israel,
>
> Please let me know if this proposal works for you.  I need to confirm
> with the court reporter.
>
> Thanks,
>
> Joe
>
> _____
> From: Calandrelli, Joseph
> Sent: Wednesday, December 16, 2009 3:22 PM
> To: 'ISRAEL M. SANCHEZ, JR.'
> Cc: Hackett, Amy
> Subject: RE: Randle v GMAC
>
> Israel,
>
> Due to your conflict, I will agree to put off Ms. Randle's deposition
> until January 11th or 12th; on the condition, however, that you
> provide the documents I requested by January 4th. This is still
> slightly more time than is specified under the Rule, but I want to be
> sure I have those documents in advance of the summary judgment
> deadline. I would also ask that you draft the joint motion.
>
> Please let me know if this is okay so that I can cancel the court reporter.
>
> Joe
>
> _____
> From: ISRAEL M. SANCHEZ, JR. [mailto:isan316@gmail.com]
> Sent: Wednesday, December 16, 2009 12:06 PM
> To: Calandrelli, Joseph
> Subject: Randle v GMAC
>
> Dear Joseph:
>
> I have a conflict with a court hearing on 12/21/09 to be heard in
> Greenfield MA. Can we put off Ms. Randle's depo into January and file
> a joint motion with the Court for the additional 30 days it seemed willing to give?
>
> --
> Thank you,
> Israel M. Sanchez, Jr.
> 781-964-2248
>
> _____
> This email is intended for the confidential use of the addressees
> only. Because the information is subject to the attorney-client
> privilege and may be attorney work product, you should not file copies

1/20/2010

> of this email with publicly accessible records. If you are not an
> addressee on this email or an addressee's authorized agent, you have
> received this email in error; please notify us immediately at
> 617.456.8000 and do not further review, disseminate or copy this
> email. Thank you.
>
> -----------------------------
>
> IRS Circular 230 Disclosure: Any federal tax advice or information
> included in this message or any attachment is not intended to be, and
> may not be, used to avoid tax penalties or to promote, market, or
> recommend any transaction, matter, entity, or investment plan
> discussed herein. Prince, Lobel, Glovsky & Tye LLP does not otherwise
> by this disclaimer limit you from disclosing the tax structure of any
> transaction addressed herein.
>


--
Thank you,
Israel M. Sanchez, Jr.
781-964-2248

This email is intended for the confidential use of the
addressees only.  Because the information is subject to the
attorney-client privilege and may be attorney work product,
you should not file copies of this email with publicly
accessible records. If you are not an addressee on this
email or an addressee's authorized agent, you have received
this email in error; please notify us immediately at
617.456.8000 and do not further review, disseminate or copy
this email.  Thank you.


-----------------------------


IRS Circular 230 Disclosure: Any federal tax advice or
information included in this message or any attachment is
not intended to be, and may not be, used to avoid tax
penalties or to promote, market, or recommend any
transaction, matter, entity, or investment plan discussed
herein.  Prince, Lobel, Glovsky & Tye LLP does not
otherwise by this disclaimer limit you from disclosing the tax
structure of any transaction addressed herein.


--
Thank you,
Israel M. Sanchez, Jr.
781-964-2248

This email is intended for the confidential use of the addressees only. Because the information is subject to the attorney-client privilege and may be attorney work product, you should not file copies of this email with publicly accessible records. If you are not an addressee on this email or an addressee's authorized agent, you have received this email in error; please notify us immediately at 617.456.8000 and do not further review, disseminate or copy this email. Thank you.

----------------------------

IRS Circular 230 Disclosure: Any federal tax advice or information included in this message or any attachment is not intended to be, and may not be, used to avoid tax penalties or to promote, market, or recommend any transaction, matter, entity, or investment plan discussed herein. Prince, Lobel, Glovsky & Tye LLP does not otherwise by this disclaimer limit you from disclosing the tax structure of any transaction addressed herein.

--

Thank you,
Israel M. Sanchez, Jr.
781-964-2248

This email is intended for the confidential use of the addressees only. Because the information is subject to the attorney-client privilege and may be attorney work product, you should not file copies of this email with publicly accessible records. If you are not an addressee on this email or an addressee's authorized agent, you have received this email in error; please notify us immediately at 617.456.8000 and do not further review, disseminate or copy this email. Thank you.

----------------------------

IRS Circular 230 Disclosure: Any federal tax advice or information included in this message or any attachment is not intended to be, and may not be, used to avoid tax penalties or to promote, market, or recommend any transaction, matter, entity, or investment plan discussed herein. Prince, Lobel, Glovsky & Tye LLP does not otherwise by this disclaimer limit you from disclosing the tax structure of any transaction addressed herein.

--

Thank you,
Israel M. Sanchez, Jr.
781-964-2248

1/20/2010

# EXHIBIT 5

## Calandrelli, Joseph

| | |
|---|---|
| **From:** | Calandrelli, Joseph |
| **Sent:** | Tuesday, January 12, 2010 5:05 PM |
| **To:** | 'ISRAEL M. SANCHEZ, JR.' |
| **Subject:** | RE: Randle Deposition |

Thank you for getting back to me.  I can keep her deposition on for next Thursday, if that works best for you.

I am finalizing my document responses and should have those out to you by the end of this week.  Can I expect your documents on Thursday, a week before the deposition as we agreed?

Joe

---

**From:** ISRAEL M. SANCHEZ, JR. [mailto:isan316@gmail.com]
**Sent:** Tuesday, January 12, 2010 3:33 PM
**To:** Calandrelli, Joseph
**Subject:** Re: Randle Deposition

Joe,

I have no reason to believe Ms. Randle will be unavailable, however, my calendar shows her depo is scheduled for next Thursday, which is the only day I am avaialble. I may have a 3 hour window on Wed. from 9 to 12.

Israel

On Mon, Jan 11, 2010 at 3:00 PM, Calandrelli, Joseph <jcalandrelli@plgt.com> wrote:
> Israel,

I need to hear back tomorrow.  Otherwise, we will just proceed next Tuesday as previously agreed.

I am in the midst of preparing our responses and hope to get them out shortly.  I must remind you that you are also overdue on your document responses, and I agreed to move Ms. Randle's deposition in December on the basis that you would provide me the documents at least a week in advance of the moved deposition.

Joe

-----Original Message-----
From: ISRAEL M. SANCHEZ, JR. [mailto:isan316@gmail.com]
Sent: Monday, January 11, 2010 1:22 PM
To: Calandrelli, Joseph
Subject: Re: Randle Deposition

Joseph I am in a criminal trial today and will get back to you. WHEN WILL i get documents?

On 1/11/10, Calandrelli, Joseph <jcalandrelli@plgt.com> wrote:
> Israel,

> Are we still on for Ms. Randle's deposition next week?  We previously
> discussed the 19th, but I'd like to do the 20th if possible.  Please
> let me know today if you can so that I may confirm with the court reporter.
>
> Thanks,
>
> Joe
>
> Joseph P. Calandrelli
>
> Prince Lobel
> 100 Cambridge Street
> Suite 2200
> Boston, MA 02114
> 617 456 8096 direct
> 617 456 8000 main
> 617 456 8100 fax
> jcalandrelli@PrinceLobel.com<mailto:jcalandrelli@PrinceLobel.com>
> PrinceLobel.com<http://princelobel.com/>
>
>
>
> _____
> This email is intended for the confidential use of the addressees
> only. Because the information is subject to the attorney-client
> privilege and may be attorney work product, you should not file copies
> of this email with publicly accessible records. If you are not an
> addressee on this email or an addressee's authorized agent, you have
> received this email in error; please notify us immediately at
> 617.456.8000 and do not further review, disseminate or copy this
> email. Thank you.
>
> ------------------------------
>
> IRS Circular 230 Disclosure: Any federal tax advice or information
> included in this message or any attachment is not intended to be, and
> may not be, used to avoid tax penalties or to promote, market, or
> recommend any transaction, matter, entity, or investment plan
> discussed herein. Prince, Lobel, Glovsky & Tye LLP does not otherwise
> by this disclaimer limit you from disclosing the tax structure of any
> transaction addressed herein.
>


--
Thank you,
Israel M. Sanchez, Jr.
781-964-2248


This email is intended for the confidential use of the
addressees only.  Because the information is subject to the

attorney-client privilege and may be attorney work product,
you should not file copies of this email with publicly
accessible records. If you are not an addressee on this
email or an addressee's authorized agent, you have received
this email in error; please notify us immediately at
617.456.8000 and do not further review, disseminate or copy
this email.  Thank you.

------------------------------

IRS Circular 230 Disclosure: Any federal tax advice or
information included in this message or any attachment is
not intended to be, and may not be, used to avoid tax
penalties or to promote, market, or recommend any
transaction, matter, entity, or investment plan discussed
herein.  Prince, Lobel, Glovsky & Tye LLP does not
otherwise by this disclaimer limit you from disclosing the tax
structure of any transaction addressed herein.

--
Thank you,
Israel M. Sanchez, Jr.
781-964-2248

# EXHIBIT 6

100 Cambridge Street, Suite 2200
Boston, Massachusetts 02114

617 456 8000 main  617 456 8100 fax
PrinceLobel.com

# ◗ PRINCE LOBEL

January 15, 2010

Israel M. Sanchez, Jr.
8 Boxwood Circle
Milford, NH 03055

Re:     Allison L. Randle v. GMAC Mortgage, LLC, Case No. 09-MISC-408202-GHP

Dear Israel:

Enclosed please find GMAC Mortgage, LLC's responses to your first request for production of documents.  I must remind you that I agreed to reschedule Ms. Randle's deposition from December on the express representation that you would have your documents to me at least one week prior to Ms. Randle's deposition.  You have failed to live up to your side of the agreement as her deposition is now scheduled for 9:00 a.m. on Thursday, January 21, 2010.  Please produce these documents immediately or I will have to seek the necessary relief from the Court.

Sincerely,

*Joseph Calandrelli*

Joseph P. Calandrelli

Direct Dial: 617-456-8096
Email: jcalandrelli@PrinceLobel.com

Enclosures

1048863.1

# EXHIBIT 7

**Calandrelli, Joseph**

| | |
|---|---|
| **From:** | ISRAEL M. SANCHEZ, JR. [isan316@gmail.com] |
| **Sent:** | Wednesday, January 20, 2010 12:54 PM |
| **To:** | Calandrelli, Joseph |
| **Subject:** | Fwd: Randle v GMAC |

Joseph,

I cannot find your notice of deposition and in any connot proceed with any deposition tomorrow as a result of two court appearances tomorrow in Boston.

I also have not received a good faith response to my settlement offer, which would obviate any further discovery in this case.

I may be available next Monday or Tuesday and will confer with Ms. Randle.

Sincerely
Israel


---------- Forwarded message ----------
From: **ISRAEL M. SANCHEZ, JR.** <isan316@gmail.com>
Date: Mon, Jan 4, 2010 at 2:59 PM
Subject: Re: Randle v GMAC
To: "Calandrelli, Joseph" <jcalandrelli@plgt.com>


Thank
Israel

On Mon, Dec 21, 2009 at 12:38 PM, Calandrelli, Joseph <jcalandrelli@plgt.com> wrote:
Thanks.

---

1/28/2010

# EXHIBIT 8

Prince Lobel Glovsky & Tye LLP
100 Cambridge Street, Suite 2200
Boston, Massachusetts 02114

617 456 8000 main  617 456 8100 fax
PrinceLobel.com

**⊵ PRINCE LOBEL**

January 20, 2010

**VIA EMAIL AND FIRST CLASS MAIL**

Israel M. Sanchez, Jr.
8 Boxwood Circle
Milford, NH 03055
lsan316@aol.com

Re:    Allison L. Randle v. GMAC Mortgage, LLC, Case No. 09-MISC-408202-GHP

Dear Israel:

I am writing in a good faith attempt to address you and your client's repeated failures to submit to discovery in the above-captioned action. Your joint efforts have stymied the progress of this litigation are in violation of Rule 37 of the Massachusetts Rules of Civil Procedure.

On October 22, 2009, we both attended a Case Management Conference where we discussed the merits of the case and the proposed discovery schedule. You specifically agreed to close discovery by December 31, 2009, and this was entered as a Court Order. The Court also ordered that any motion for summary judgment that would be filed by GMAC would be due by the end of January, 2010. Please see the Court's October 26, 2009 Notice of Docket Entry.

On November 17, 2009, I served a Notice of Deposition, scheduling Ms. Randle's deposition for December 21, 2009. I also served GMAC's First Request for Production of Documents at that time. Five days prior to her deposition, on December 16, 2009, you contacted me to request that I reschedule Ms. Randle's deposition for mid-to-late January due to a previously-scheduled court appearance. In good faith, I agreed to reschedule the deposition for either January 11th or January 12th provided that you agree to produce your responses to GMAC's document requests at least one week in advance. This offer apparently did not fit your schedule, because you requested that her deposition be put off even further until January 19, 2010. You did agree, however, to give me the documents at least a week in advance of her deposition date. To accommodate your request, I informed you that we would need to seek a thirty day extension from the Court and that I would assent to this motion. You agreed to draft the joint motion and submit to the Court right away. See December 19, 2009 Email String, attached hereto as **Exhibit A**. More than fifteen days passed without any action. As a result, on January 4, 2010, I wrote to you to request that you submit the joint motion to the Court, which you finally did.

On January 11, 2010, I wrote to you to request confirmation that you and Ms. Randle would appear for her deposition on January 19, 2010. I also requested – in accordance with our agreement – the immediate production of Ms. Randle's documents as it was a week prior to her deposition. On January 12, 2010, you informed me that "[your] calendar shows her depo is scheduled for next Thursday, which is the only day [you were] available." You failed to even acknowledge my request for the overdue documents. I responded the same day, agreeing to reschedule Ms. Randle's deposition to Thursday, January 21, 2010 at your request. Once again, I asked whether I could expect to receive the documents a week in advance in accordance with our agreement. Once again, you ignored my request. See January 12, 2010 Email String, attached hereto as **Exhibit B**.

Israel M. Sanchez, Jr.
January 20, 2010
Page 2

As a result, on January 15, 2010, I was forced to write to you once again reminding you that "I agreed to reschedule Ms. Randle's deposition from December on the express representation that you would have your documents to me at least one week prior to Ms. Randle's deposition. You have failed to live up to your side of the agreement as her deposition is now scheduled for 9:00 a.m. on Thursday, January 21, 2010. Please produce these documents immediately or I will have to seek the necessary relief from the Court." See January 15, 2010 Letter, attached hereto as **Exhibit C**. I did not get a response until your email of 1:00 pm this afternoon. In this email, you informed me – for the first time – that you were refusing to appear for Ms. Randle's deposition tomorrow. In what is becoming a clear pattern, you continued to ignore my many requests for the overdue documents.

Rule 37(d) of the Massachusetts Rules of Civil Procedure provides that a party willfully failing to appear for a deposition may be subject to sanctions, including the payment of attorneys' fees. Mass. R. Civ. P. 37(d). Consistent with this Rule, Massachusetts law mandates that a noticed deposition shall go forward unless and until the Court actually grants a protective order. See Goodwin v. City of Boston, 118 F.R.D. 297 (D. Mass. 1988) (filing a motion to quash or motion for protective order does not automatically operate to stay the deposition); In re Lincoln N Assoc., Ltd. Partnership, 163 B.R. 409, 409 ("The deponent is relieved of appearance only if the order is allowed before the scheduled deposition"). The mere service or request for a protective order is insufficient. In re Lincoln, 163 B.R. at 409 ("[t]he notion that a party is not required to appear at a deposition if he has filed a motion for protective order is erroneous").

Please be advised that I will be proceeding with tomorrow's deposition. The deposition was properly noticed, and I agreed to reschedule it for Thursday, January 21, 2010 at your request. You acknowledged having this deposition "on your calendar" and confirmed you would be appearing. You now state that you are not appearing, but you have not obtained any protective order from the Court. Unless you obtain a protective order from the Court prior to tomorrow's deposition, I will proceed with the deposition. If you or Ms. Randle fail to appear, I will file a motion to compel and seek the recovery of sanctions, including costs and attorneys' fees. I will include in this motion a request for the outstanding documents as it has become apparent to me that you have no intention of honoring your discovery obligations or our prior agreements.

Under other circumstances, I would agree to move any deposition to accommodate a fellow attorney's court calendar. Your continued bad faith attempts to delay this matter, however, have left me no choice but to seek relief from the Court.

Sincerely,

Joseph P. Calandrelli

Direct Dial: 617-456-8096
Email: jcalandrelli@PrinceLobel.com

Enclosures

# EXHIBIT 9

**Condensed Transcript**

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
LAND COURT DEPARTMENT

ALLISON L. RANDLE,

     Plaintiff,

     vs.

                                      CASE NO. 09-
MISC- 408202-GHP

GMAC MORTGAGE, LLC,

     Defendant.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**STATEMENT ON THE RECORD**

**IN RE:  NONAPPEARANCE OF**

**ALLISON L. RANDLE**

January 21, 2010
9:21 a.m.

100 Cambridge Street
Suite 2200
Boston, Massachusetts

Ayako Odanaka, CSR No. 147904



**Nationwide Scheduling**
Toll Free: 1.800.451.3376
Facsimile: 1.888.451.3376
www.setdepo.com



**1**

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT                    LAND COURT DEPARTMENT
ALLISON L. RANDLE,
            Plaintiff,
        vs.                        CASE NO. 09-MISC-408202-GHP
GMAC MORTGAGE, LLC,
            Defendant.

STATEMENT ON THE RECORD RE:  NONAPPEARANCE OF
ALLISON L. RANDLE

January 21, 2010
9:21 a.m.

Prince, Lobel, Glovsky & Tye, LLP
100 Cambridge Street, Suite 2200
Boston, Massachusetts

Ayako Odanaka, CRR, RPR, CSR No. 147904

**3**

INDEX TO EXHIBITS

(NO EXHIBITS MARKED)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**2**

APPEARANCES OF COUNSEL

On Behalf of the Defendant:
    BY:  Joseph P. Calandrelli, Esquire
    PRINCE, LOBEL, GLOVSKY & TYE, LLP
    100 Cambridge Street, Suite 2200
    Boston, Massachusetts 02114
    617.456.8000
    jcalandrelli@PrinceLobel.com

**4**

1     STATEMENT ON THE RECORD
2     RE:  NONAPPEARANCE OF ALLISON L. RANDLE
3     January 21, 2010

4
5     STATEMENT
6     BY MR. CALANDRELLI
7         MR. CALANDRELLI:  Good morning.  My name is
8     Joe Calandrelli.  I represent the defendant, GMAC
9     Mortgage, LLC, in this case, brought by Allison Randle.
10    It is approximately 9:21 on the morning of Thursday,
11    January 21st, 2010.  The plaintiff, Allison Randle, nor
12    her attorney have showed up for her deposition this
13    morning.
14        This deposition was originally scheduled for
15    December 21st, 2009, and I agreed to move it to January at
16    the request of Attorney Sanchez because of his trial
17    calendar.  This move was made on an express agreement that
18    documents would be produced to me at least one week before
19    her deposition, and on January 12th, 2010, Attorney
20    Sanchez wrote to me an email confirming that he had the
21    deposition scheduled for this Thursday, January 21st,
22    2010.
23        Three days later, on January 15th, 2010, I wrote
24    to Attorney Sanchez to confirm that the deposition would



sd setdepo™
The Evolution of Deposition Management

Nationwide Scheduling
Toll Free:       1.800.451.3376
Toll Free Fax:  1.888.451.3376
www.setdepo.com

5

1   proceed this Thursday at nine o'clock a.m.  It wasn't
2   until approximately one o'clock p.m. yesterday, January
3   20th, 2010, that I received an email from Attorney Sanchez
4   indicating that he was not going to be appearing this
5   morning, nor would Ms. Randle.  I then wrote to Attorney
6   Sanchez a letter sent by email to Attorney Sanchez's email
7   address, explained -- explaining to him that I would be
8   proceeding with the deposition this morning and that I
9   expected him to show up; otherwise, I would be filing a
10  motion to compel and seek fees and costs in connection
11  with his and Ms. Randle's failure to appear.
12       As I mentioned, it is now 9:24 a.m.  Neither
13  Attorney Sanchez nor Ms. Randle have shown up, and I have
14  not been contacted by either Attorney Sanchez or
15  Ms. Randle after I sent him my letter informing him that I
16  would proceed this morning.  As a result, I -- it appears
17  that the plaintiff is not showing up for the deposition.
18       That's it.
19       (Statement concluded at 9:24 a.m.)
20
21
22
23
24

6

1           C E R T I F I C A T E
2   COMMONWEALTH OF MASSACHUSETTS )
3                                )
4   COUNTY OF MIDDLESEX          )
5        I, Ayako Odanaka, a Certified Realtime Reporter,
6   Registered Professional Reporter and Notary Public duly
7   commissioned and qualified in and for the Commonwealth of
8   Massachusetts, do hereby certify that the foregoing was
9   reported by stenographic and mechanical means, which
10  matter was held on the date, and at the time and place set
11  out on the title page hereof and that the foregoing
12  constitutes a true and accurate transcript of same.
13       I further certify that I am neither related to or
14  employed by any of the parties in or counsel to this
15  action, nor am I financially interested in the outcome of
16  this action.
17       In witness whereof, I have hereunto set my hand
18  and seal this 21st day of January 2010.
19
20       _____
21       Ayako Odanaka, CRR, RPR
22       CSR No. 147904
23       My Commission Expires
24       February 25, 2011



The Evolution of Deposition Management

Nationwide Scheduling
Toll Free:      1.800.451.3376
Toll Free Fax:  1.888.451.3376
www.setdepo.com

# EXHIBIT 10

## Calandrelli, Joseph

| | |
|---|---|
| **From:** | Calandrelli, Joseph |
| **Sent:** | Tuesday, January 26, 2010 4:33 PM |
| **To:** | 'ISRAEL M. SANCHEZ, JR.' |
| **Subject:** | Land Court Rule 7 Conference |

Israel,

For the reasons stated in my letter of January 20th, it has become apparent that Randle is refusing to respond to GMAC's request for discovery, including both its request for production of documents and her deposition. I am prepared to file a motion to compel and will seek sanctions for this wilful non-compliance with discovery. However, before I do so, I invite you to participate in a discovery conference pursuant to Land Court Rule 7. I would like to hold this conference tomorrow. Please let me know what times you are available and I will call you at that designated time.

Joe

Joseph P. Calandrelli

**Prince Lobel**
100 Cambridge Street
Suite 2200
Boston, MA 02114
617 456 8096 direct
617 456 8000 main
617 456 8100 fax
jcalandrelli@PrinceLobel.com
PrinceLobel.com

1/28/2010

# EXHIBIT 11

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.

LAND COURT
NO. 09-MISC-408202-GHP

|  |  |
|---|---|
| ALLISON L. RANDLE, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| GMAC MORTGAGE, LLC, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

**Please mark for hearing before
Judge Piper on February 5, 2010**

## <u>GMAC MORTGAGE, LLC'S MOTION TO COMPEL</u>

Pursuant to Rules 37(a) and (d) of the Massachusetts Rules of Civil Procedure, Defendant GMAC Mortgage, LLC ("GMAC") respectfully moves this Court to order that Plaintiff Allison Randle ("Randle") appear for her deposition and produce documents in accordance with her obligations to respond to requests for discovery. In August 2009, Randle filed this action alleging that GMAC failed to comply with certain alleged prerequisites for conducting a foreclosure sale on her property. Two months later, Randle agreed to a limited discovery period that would originally end at the end of December 2009 and have summary judgment heard and decided by the end of January 2010. Since this time, Randle has embarked on a strategy aimed at delaying this litigation, including refusing to respond to GMAC's request for documents and, most recently, refusing to appear for her deposition. Randle's decision to flout her discovery obligations has prejudiced GMAC by unjustifiably withholding vital information and stalling this litigation. GMAC therefore respectfully requests that the Court allow its motion to compel and

1054342.1

1

award sanctions in the form of costs and attorneys' fees incurred by GMAC to enforce its right to this information.

## FACTUAL BACKGROUND

GMAC is the current holder of a mortgage originally given by Randle to Sherwood Mortgage Group, Inc. in April 2003. Beginning in 2005, Randle began to fall behind on her mortgage payments. Although GMAC attempted to work with Randle on her repayment obligations, Randle could not maintain the payments. She has not made a payment since April 2005.

As a result, GMAC commenced foreclosure proceedings. In August 2009, just days before the scheduled foreclosure sale, Randle filed this action claiming that GMAC lacked standing to conduct the foreclosure and that it violated G. L. c. 244, § 35A by failing to provide her with a ninety (90) day notice of right to cure. She claimed that she was entitled to: (1) a declaratory judgment proclaiming that GMAC lacked standing to foreclose; and (2) an injunction prohibiting the continuance of the August foreclosure sale. *Verified Complaint, pp. 9-15.* After a hearing, the Court denied Randle's request for a preliminary injunction, finding that she failed to demonstrate a reasonable likelihood of success on the merits of her claims. *August 25, 2009 Court Order*, attached hereto as **Exhibit A**.

On October 22, 2009, the Court held a Case Management Conference that was attended by counsel for both Randle and GMAC. *Affidavit of Joseph Calandrelli ("Calandrelli Aff.")*, ¶ 2, attached hereto as **Exhibit B**. At this conference, the parties discussed the merits of the case and the proposed discovery schedule with the Court (Piper, J.). *Id.* The parties mutually agreed to a close of discovery by December 31, 2009, and this date was entered as a Court Order. *Id.*; *October 26, 2009 Notice of Docket Entry*, attached as Exhibit 1 to the Calandrelli Aff. The Court

also ordered that any motion for summary judgment that would be filed by GMAC would be due

by the end of January, 2010. *Calandrelli Aff.*, ¶ 2; *October 26, 2009 Notice of Docket Entry*.

The parties then commenced discovery. On November 17, 2009, GMAC served a Notice

of Deposition, scheduling Randle's deposition for December 21, 2009. *Calandrelli Aff.*, ¶ 3;

*Notice of Deposition*, attached to the Calandrelli Aff. as Exhibit 2. GMAC also served its First

Request for Production of Documents on Randle just several days later. *Calandrelli Aff.*, ¶ 3;

*GMAC's First Request for Production of Documents*, attached to the Calandrelli Aff. as Exhibit

3. An entire month passed with no word from Randle's counsel regarding the deposition.

*Calandrelli Aff.*, ¶ 3.

On December 16, 2009, just days before Randle's scheduled deposition, Randle's counsel

contacted the undersigned to request that Randle's deposition be rescheduled for mid-to-late

January due to a previously-scheduled court appearance. *Calandrelli Aff.*, ¶ 4; *December 19,*

*2009 Email String*, attached to the Calandrelli Aff. as Exhibit 4. In good faith, GMAC agreed to

reschedule the deposition for either January 11th or January 12th on the express condition that

Randle agree to produce the documents requested by GMAC at least one week in advance of the

deposition. *Id.* Randle's counsel requested that the deposition be postponed even further until

January 19, 2010. *Id.* Her counsel did, however, agree to provide the documents at least one

week in advance of Randle's deposition date. *Id.* On the basis of this representation, GMAC

agreed to reschedule Randle's deposition for January 19, 2010. *Id.*

Eight days prior to the deposition, GMAC wrote to Randle's counsel to request

confirmation that Randle would appear for her scheduled deposition on January 19, 2010.

*Calandrelli Aff.*, ¶ 5; *January 12, 2010 Email String*, attached to the Calandrelli Aff. as Exhibit

5. GMAC also requested – in accordance with the parties' agreement – the immediate

production of Randle's documents as it was a week prior to her deposition. *Id.* The next day, Randle's counsel informed GMAC's counsel that "[his] calendar shows her depo is scheduled for next Thursday, which is the only day [he was] available." *Id.* Randle's counsel didn't even acknowledge GMAC's request for the overdue documents in this communication. *Id.* GMAC responded the same day, agreeing to reschedule Ms. Randle's deposition to Thursday, January 21, 2010, at Randle's request. *Id.* Once again, GMAC asked whether it could expect to receive the documents a week in advance in accordance with the parties' agreement. *Id.* Once again, Randle's counsel ignored GMAC's request. *Id.*

As a result, on January 15, 2010, the undersigned was forced to write to Randle's counsel once again reminding him that GMAC had "agreed to reschedule Ms. Randle's deposition from December on the express representation that you would have your documents to me at least one week prior to Ms. Randle's deposition. You have failed to live up to your side of the agreement as her deposition is now scheduled for 9:00 a.m. on Thursday, January 21, 2010. Please produce these documents immediately or I will have to seek the necessary relief from the Court." *Calandrelli Aff.*, ¶ 6; *January 15, 2010 Letter*, attached to the Calandrelli Aff. as Exhibit 6.

Randle's counsel did not respond until 1:00 p.m. on the afternoon of January 20, 2010, less than twenty four (24) hours prior to Randle's deposition. *Calandrelli Aff.*, ¶ 7; *January 20, 2010 Email*, attached to the Calandrelli Aff. as Exhibit 7. In this email, Randle's counsel informed GMAC – for the first time – that Randle would not be appearing at her deposition the next day. *Id.* He once again ignored GMAC's request for the overdue documents. *Id.*

Several hours later, and in an attempt to avoid a discovery dispute, the undersigned wrote to Randle's counsel informing him that GMAC planned on proceeding with the deposition as scheduled. *Calandrelli Aff.*, ¶ 8; *January 20 Letter*, attached to the Calandrelli Aff. as Exhibit 8.

Randle's counsel was expressly informed that GMAC would seek relief from the Court, with respect to both Randle's deposition and the overdue documents, if Randle failed to appear for her deposition. *Id.*

Randle's counsel never responded to this letter. *Calandrelli Aff.*, ¶ 9. As a result, a court reporter appeared at GMAC's counsel's offices at 8:30 a.m. on January 21, 2010, as scheduled. *Id.*; *Statement on Record*, attached to the Calandrelli Aff. as Exhibit 9. Randle chose not to appear. *Id.*

In accordance with Land Court Rule 7, GMAC made one last attempt to avoid filing this motion. *Calandrelli Aff.*, ¶ 10. On January 26, 2010, the undersigned sent an email to Randle's counsel informing him that GMAC was prepared to file a motion to compel and seek sanctions. *Id.*, *January 26, 2010 Email*, attached to the Calandrelli Aff. as Exhibit 10. GMAC invited Randle's counsel to participate in a discovery conference prior to the filing of this motion to see if the parties could settle their dispute without involving the Court. *Id.* In what has become a clear pattern of behavior, Randle's counsel refused to acknowledge GMAC's request for this conference, let alone agree to participate in one. *Id.*

## ARGUMENT

By her conduct, Randle has willfully ignored her discovery obligations. GMAC's request for documents was served on Randle two and a half months ago. Rather than complying with her discovery obligations, Randle has repeatedly sought to delay this litigation by for months. The parties specifically agreed to close discovery by December 31, 2009. Randle duped GMAC into agreeing to move her deposition (to a time outside the originally agreed-upon discovery deadline) on the express representation that she would provide her documents at least one week in advance of the deposition. Not only did Randle fail to live up to her own agreement, but her

counsel now refuses to even acknowledge GMAC's repeated requests for these documents. The issues presented by this matter are very limited and straightforward. There is simply no excuse for Randle's failure to produce these documents.

In addition to the documents, Randle has also chosen to flout her obligation to appear for her deposition. GMAC originally noticed her deposition for the middle of December and agreed to move it at her counsel's request. Although GMAC requested that her deposition occur in the first few weeks of January, Randle's counsel specifically requested January 19, 2010. GMAC agreed to this date to accommodate his schedule, but when GMAC attempted to confirm this date, Randle's counsel proclaimed that he had actually scheduled the deposition for two days later, January 21, 2010. GMAC obliged to this further extension and confirmed the date with Attorney Sanchez six days before the deposition. However, less than twenty four (24) hours before her deposition was scheduled to begin, Randle's counsel suddenly informed GMAC that Randle was refusing to appear.

Randle's conduct in this case can only be seen as an intentional course of conduct designed to forestall her liability and to increase the costs and burden on GMAC to defend this matter. At every step of the way, Randle has adopted the same pattern – obtain GMAC's agreement to delay this matter in exchange for a promise, fail to deliver on her promise, and ignore GMAC's request for this information. This conduct – a deliberate failure to answer discovery and unjustifiably delay litigation – is the exact conduct for which Rule 37 sanctions were created. See Corsetti v. Stone, Co., 396 Mass. 1, 26 (1985) (heavy sanction appropriate means of preserving the integrity and efficiency of the discovery process where there has been a willful failure to provide requested discovery); see also Bob Berman Assocs., Inc. v. Gross, 15 Mass. App. Ct. 1000, 1001 (1983); Drummey Rosane Anderson, Inc. v. Solid State Co., 2008

Mass. Super. LEXIS 8, *6 (Jan. 14, 2008) (Gershengorn, J.). Randle and her attorney's

willingness to flout her discovery obligations simply cannot be tolerated. Accordingly, GMAC's

motion to compel and request for sanctions should be allowed.

## CONCLUSION

For the foregoing reasons, GMAC respectfully requests that the Court allow its motion to

compel and order that Randle produce responsive documents and appear for her deposition

within five (5) days of the date of this order. GMAC also respectfully requests that the Court

impose sanctions on Randle and/or her counsel in the form of costs and attorneys' fees incurred

by GMAC in enforcing compliance with its request for discovery.

### Land Court Rule 7 Certificate

I, Joseph Calandrelli, certify pursuant to Land Court Rule 7 that I attempted in good faith
to hold a discovery conference with counsel for Randle prior to filing this motion. My attempts
included a letter on January 20, 2010, as well as an email of January 26, 2010 explicitly
requesting to hold such a conference. Despite my request, counsel for Randle has failed to
respond.

GMAC MORTGAGE, LLC
By its attorneys,

Richard E. Briansky (BBO# 632709)
rbriansky@princelobel.com
Joseph P. Calandrelli (BBO# 666128)
jcalandrelli@princelobel.com
**PRINCE, LOBEL, GLOVSKY & TYE LLP**
100 Cambridge Street, Suite 2200
Boston, MA 02114
Tel: 617.456.8000

Dated: January 28, 2010

## CERTIFICATE OF SERVICE

I, Joseph Calandrelli, certify that on January 28, 2010, I caused a true and accurate copy of the foregoing document to be served on counsel of record for Allison Randle by sending the same by electronic mail and by first-class mail, postage prepaid to:

Israel Sanchez, Esq.
Sanchez & Associates
8 Boxwood Circle
Milford, NH 03055
*(Counsel for Randle)*

Joseph/Calandrelli

# EXHIBIT 12



COMMONWEALTH OF MASSACHUSETTS
LAND COURT
DEPARTMENT OF THE TRIAL COURT
226 CAUSEWAY STREET
BOSTON, MA 02114
PHONE: 617-788-7497

February 25, 2010

## NOTICE OF DOCKET ENTRY

Notice is hereby given that the following docket entry has been made in:

**09 MISC 408202 (GHP) – Randle v. GMAC Mortgage**

Feb. 23, 2010. Hearing Held on Defendant's Motion to Compel Attendance of Plaintiff at Deposition and Production of Documents. Attorneys Briansky and Sanchez Appeared and Argued. Following Argument, Motion ALLOWED over Objection. Counsel for Plaintiff Ordered to Produce Requested Documents to Defendant's Counsel within One (1) Week. Plaintiff Ordered to Appear for Deposition, to Take Place no Later than March 12, 2010; Counsel, After Conferring, Advised the Court They Had Set March 9, 2010 as Date of Plaintiff's Deposition. Plaintiff Ordered to Pay to Defendant within Twenty (20) Days Amount of Attendance Fee Due or Paid to Stenographer with Respect to Previously Notice Deposition for which Plaintiff, Without Excuse, Did not Appear. No Other Discovery to Take Place Absent Agreement or Further Order. Summary Judgment Motion to be Filed by Defendant no Later than April 1, 2010.

(Piper, J.)

Very truly yours,

Kathryn Downing
Sessions Clerk
617-788-7458

CC:   Israel M. Sanchez, Jr., Esq.
      Joseph P. Calandrelli, Esq.
      File

EXHIBIT 13

**D'Orlando, Gina**

| | |
|---|---|
| **From:** | Calandrelli, Joseph |
| **Sent:** | Monday, March 08, 2010 1:33 PM |
| **To:** | 'ISRAEL M. SANCHEZ, JR.' |
| **Subject:** | Documents |

**Attachments:** Order on 2-23-10 Hearing.PDF

Israel,

As you know, at the hearing on February 23rd, the Court ordered Ms. Randle to produce the responsive documents within one week from the hearing. A copy of the order is attached for your reference. Ms. Randle's documents were therefore due no later than March 3, 2010. It is now 1:30 p.m. on March 8th, less than twenty-four (24) hours prior to the start of your client's deposition, and I still have not received Ms. Randle's documents. Please note that I consider Ms. Randle to be in contempt of court and GMAC reserves its right to take any and all remedial actions.

Joe Calandrelli

Joseph P. Calandrelli

**Prince Lobel**
100 Cambridge Street
Suite 2200
Boston, MA 02114
617 456 8096 direct
617 456 8000 main
617 456 8100 fax
jcalandrelli@PrinceLobel.com
PrinceLobel.com

11/9/2010

EXHIBIT 14

Prince Lobel Glovsky & Tye LLP
100 Cambridge Street, Suite 2200
Boston, Massachusetts 02114

617 456 8000 main  617 456 8100 fax
PrinceLobel.com

▰ PRINCE LOBEL

March 29, 2010

Israel Sanchez, Esq.
Sanchez & Associates
8 Boxwood Circle
Milford, NH 03055

RE:    Allison L. Randle v. GMAC Mortgage, LLC.
       Case No. 09-MISC-408202-GHP

Dear Attorney Sanchez:

As you know, on February 23, 2010, the Court ordered Allison Randle to reimburse my client for the expenses incurred in connection with the stenographer's appearance at the deposition that did not occur due to Randle's unexcused failure to appear.  Attached is a copy of the invoice we have received from the court reporting agency.  As reflected on the invoice, GMAC was charged $210.50 in connection with this appearance.  Accordingly, please have your client remit this payment to my office, as counsel for GMAC, within twenty (20) days of the date of this letter, as ordered by the Court.

Sincerely,

Joseph P. Calandrelli

Direct Dial: 617-456-8096
Email: jcalandrelli@PrinceLobel.com

Enclosures

1083846.1

RECYCLED

EXHIBIT 15

**D'Orlando, Gina**

| | |
|---|---|
| **From:** | Calandrelli, Joseph |
| **Sent:** | Thursday, April 22, 2010 3:22 PM |
| **To:** | 'ISRAEL M. SANCHEZ, JR.' |
| **Cc:** | Reneau Longoria |
| **Subject:** | RE: Randle Settlement |

Israel:

The hearing date, as well as your opposition date, was specifically set by the Court after they were previously delayed due in part to Ms. Randle's failure to produce documents and appear for a deposition. If my memory serves me correctly, the Court stated that no further extensions would be granted. Therefore, I cannot assent to your request for a continuance. However, if you want to file a motion with the Court, I will likely not oppose it.

Joe

---

**From:** ISRAEL M. SANCHEZ, JR. [mailto:isan316@gmail.com]
**Sent:** Thursday, April 22, 2010 12:18 PM
**To:** Calandrelli, Joseph
**Cc:** Reneau Longoria
**Subject:** Re: Randle Settlement

Counsel:

I am writing to inquire if you would assent to a continuance of the summary judgment hearing to either May 10th or 17th as I have a conflict with the following:

Berkeley, Christina vs. Atkins, Charles- Mediation- Cain Hibbard Myers, 66 West St. Pittsfield, MA and

Simatos, Helen v. Pennsylvania Life Ins- Motion for Plaintiff's App. for Entry of Final Judgment of Dimissal - WSC-Ct Rm 25 .

In addition I would like an additional time to present my opposition to 6 days if hearing is on the 10th and ten days if hearing is on the 17th.

Please advise.

Thank you
Israel

On Fri, Apr 9, 2010 at 11:15 AM, Calandrelli, Joseph <jcalandrelli@plgt.com> wrote:

Israel,

I've been informed that you put forth a revised settlement offer and I'd like to clarify your offer before presenting it to my client.  As I understand it, in exhange for a waiver of any deficiency claim GMAC may have against Ms. Randle, you are offering to:  (1) dismiss the miscellaneous action with prejudice; (2) dismiss any opposition to the Servicemembers' action; and (3) allow the foreclosure sale to occur with no opposition or challenge.  Please confirm that I understand your offer correctly.

As we go forward, please funnel all settlement offers that may have an impact on the miscellaneous action through my office.

11/9/2010

Thanks,

Joe

Joseph P. Calandrelli

**Prince Lobel**
100 Cambridge Street
Suite 2200
Boston, MA 02114
617 456 8096 direct
617 456 8000 main
617 456 8100 fax
jcalandrelli@PrinceLobel.com
PrinceLobel.com

---

This email is intended for the confidential use of the
addressees only. Because the information is subject to the
attorney-client privilege and may be attorney work product,
you should not file copies of this email with publicly
accessible records. If you are not an addressee on this
email or an addressee's authorized agent, you have received
this email in error; please notify us immediately at
617.456.8000 and do not further review, disseminate or copy
this email. Thank you.

-----------------------------

IRS Circular 230 Disclosure: Any federal tax advice or
information included in this message or any attachment is
not intended to be, and may not be, used to avoid tax
penalties or to promote, market, or recommend any
transaction, matter, entity, or investment plan discussed
herein. Prince, Lobel, Glovsky & Tye LLP does not
otherwise by this disclaimer limit you from disclosing the tax
structure of any transaction addressed herein.

--
Thank you,
Israel M. Sanchez, Jr.
781-964-2248

11/9/2010