**Hearing Date and Time:  April 10, 2014 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Date and Time:  April 3, 2014 at 4:00 p.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
David E. Blabey, Jr.
Joseph A. Shifer
1177 Avenue of the Americas
New York, New York  10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>., | Chapter 11 |
| Debtors. | Jointly Administered |

**NOTICE OF MOTION OF THE RESCAP LIQUIDATING TRUST FOR AN**
**ORDER ENFORCING PLAN INJUNCTION AGAINST KARLA BROWN**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On March 24, 2014, the ResCap Liquidating Trust, as successor to the debtors (the "**Debtors**") in the above-captioned cases filed the attached Motion of the ResCap Liquidating Trust for an Order Enforcing Plan Injunction Against Karla Brown (the "**Motion**").

2.      A hearing (the "**Hearing**") to consider the Motion shall be held before the Honorable Martin Glenn, United States Bankruptcy Judge, in Room 501 of the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York, 10004, on **April 10, 2014 at 10:00 a.m.** (prevailing Eastern Time).

3.      Any objections to the Motion must be made in writing, filed with the Court (with a copy to Chambers) and served in accordance with the Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures [Docket No. 141] (the "**Case Management Order**"), and served upon the Special Service List, as that term is defined in the Case Management Order, so as to be actually received no later than **April 3, 2014 at 4:00 p.m.** (prevailing Eastern Time).

4.      If no objections to the Motion are timely filed and served on or before the Objection Deadline, the Committee may submit to the Bankruptcy Court an order substantially in the form of the proposed order attached to the Motion as <u>Exhibit 1</u>.

5.      A Copy of the Motion can be obtained or viewed for a fee via PACER at <u>www.pacer.gov</u> or (without charge) on the Debtors' restructuring website at <u>www.kccllc.net/rescap</u>.

Dated: March 24, 2014
      New York, New York

KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/  Douglas H. Mannal
Kenneth H. Eckstein
Douglas H. Mannal
David E. Blabey, Jr.
Joseph A. Shifer
1177 Avenue of the Americas
New York, New York  10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
*Counsel for the ResCap Liquidating Trust*

**Hearing Date and Time: April 10, 2014 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: April 3, 2014 at 4:00 p.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
David E. Blabey, Jr.
Joseph A. Shifer
1177 Avenue of the Americas
New York, New York  10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Chapter 11 |
| Debtors. | Jointly Administered |

**MOTION OF THE RESCAP LIQUIDATING TRUST FOR AN**
**ORDER ENFORCING PLAN INJUNCTION AGAINST KARLA BROWN**

# TABLE OF CONTENTS

**Page**

Preliminary Statement.................................................................................................1

Jurisdiction and Venue................................................................................................4

Background ..................................................................................................................4

    A.    General Background ......................................................................................4

    B.    The Plan's Broad Third Party Release and Injunction..................................5

    C.    Claimant's Notice of the Third Party Release and Other Key Developments...............6

    D.    The Massachusetts Action ..........................................................................11

    E.    Current Procedural Posture of the Massachusetts Action............................12

Relief Requested .......................................................................................................14

Basis for Relief .........................................................................................................14

I.    This Court is the Proper Forum to Enforce the Plan Injunction .......................14

II.    The Plan Injunction Should be Enforced to Bar Claimant From Proceeding With the Massachusetts Action Against Mr. Brown .................................................16

    A.    Claimant May Not Collaterally Attack the Third Party Release .................17

    B.    Claimants' Claims Against Mr. Brown are Subject to the Third Party Release Because the Complaint Alleges Mr. Brown Was Acting in His Capacity as an Employee of GMAC Mortgage .................................................20

Notice .......................................................................................................................24

Conclusion ................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

CASES

*Cohen v. CDR Creances S.A.S. (In re Euro-American Lodging Corp.)*,
No. 13-1308, 2014 WL 103556 (2d Cir. Jan. 10, 2014).........................................................19

*Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re
Metromedia Fiber Network, Inc.)*,
416 F.3d 136 (2d Cir. 2005)................................................................................................19

*In re Casse*,
198 F.3d 327 (2d Cir. 1999)................................................................................................16

*In re Charter Communications*,
No. 09-11435, 2010 WL 502764 (Bankr. S.D.N.Y. Feb. 8, 2010)............................15, 16, 22

*In re Mal Dunn Assocs.*,
406 B.R. 622 (Bankr. S.D.N.Y. 2009)...................................................................................22

*In re Petrie*,
304 F.3d 223 (2d Cir. 2002)................................................................................................15

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982)............................................................................................................18

*Marshall v. Picard (In re Bernard L. Madoff Investment Securities LLC)*,
740 F.3d 81 (2d Cir. 2014)..................................................................................................19

*Pfizer, Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co.)*,
676 F.3d 45 (2d Cir. 2012)..................................................................................................19

*Ruskay v. Waddell*,
552 F.2d 392 (2d Cir. 1977)................................................................................................23

*Stern v. Marshall*,
131 S. Ct. 2594 (2011)........................................................................................................19

*Travelers Indemnity Co. v. Bailey*,
557 U.S. 137 (2009)..................................................................................................... *passim*

STATUTES

11 U.S.C § 102(1) ................................................................................................................24

11 U.S.C. § 105(a) ...........................................................................................................4, 24

11 U.S.C. § 105(d) ..............................................................................................................24

11 U.S.C. § 523(a) ...............................................................................................2, 16, 18, 19

11 U.S.C. § 523(c)(1)...............................................................................................................19

11 U.S.C. § 524 ..........................................................................................................................4

11 U.S.C. § 1141 ........................................................................................................................4

28 U.S.C. § 157 ..........................................................................................................................4

28 U.S.C. § 1334 ........................................................................................................................4

28 U.S.C. § 1408 ........................................................................................................................4

28 U.S.C. § 1409 ........................................................................................................................4

Mass. Gen. Laws ch. 183 § 63 ...........................................................................................11, 14

## OTHER AUTHORITIES

Bankr. S.D.N.Y. R. 2002-2 ......................................................................................................24

Fed. R. Bankr. P. 1015(c) .........................................................................................................24

Fed. R. Bank. P.  2002 ..............................................................................................................24

Fed. R. Bank. P. 3020(d) ............................................................................................................4

Fed. R. Bank. P. 9007 ...............................................................................................................24

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Liquidating Trust (the "**Liquidating Trust**"), as successor to the debtors

(the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), hereby files this motion

(the "**Motion**") for the issuance of an order, substantially in the form annexed hereto as

**Exhibit 1** (the "**Enforcement Order**"), enforcing the injunction provisions of the *Second

Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official

Committee of Unsecured Creditors* [Docket No. 6065-1] (the "**Plan**") to prohibit Karla Brown

(the "**Claimant**") from commencing or continuing any litigation against Philip Brown, a former

employee of the Debtors.  In support of this Motion, the Liquidating Trust respectfully represents

as follows:

**PRELIMINARY STATEMENT**

1.      The Supreme Court, in its seminal *Travelers* decision, held that creditors

provided with notice and the opportunity to object to a bankruptcy court's entry of a third party

release may not subsequently challenge the validity of that release in a collateral proceeding.

Claimant Karla Brown seeks to do precisely that, having asserted in state court litigation in

Massachusetts that this Court was without authority to enjoin her claims against Philip Brown, a

former employee of Debtor GMAC Mortgage.  This Court, consistent with Second Circuit

precedent, retained exclusive jurisdiction to interpret and enforce the Debtors' Plan, should

enjoin the Claimant's attempt to evade the Third Party Release contained in the Plan.

2.      Prior to the Petition Date, the Claimant commenced an action against

GMAC Mortgage and Mr. Brown (among other defendants) in the Massachusetts Superior

Court, alleging certain "predatory lending practices."  The action was stayed as against GMAC

Mortgage upon the filing of the Debtors' bankruptcy petition, but continued against Mr. Brown.

The gravamen of the action is that Mr. Brown, acting as an employee of GMAC Mortgage, inflated the amount of the Claimant's income on her loan application, resulting in mortgage loans that she was unable to afford.

3.      As the Court is well aware, the Plan, confirmed on December 11, 2013, contained a broad Third Party Release extending to a variety of third party claims against "Representatives" (including employees) of the Debtors.  Thus, following the Effective Date of the Plan, counsel to the Liquidating Trust and Mr. Brown filed a notice with the Massachusetts court informing the court and the Claimant of the existence of the Third Party Release.  The Claimant responded with a pleading asserting that this Court lacked jurisdiction to release her claims and, in any event, the claims against Mr. Brown were not within the scope of the Third Party Release.  The Massachusetts court invited briefing from the parties.  However, because this Court retained exclusive jurisdiction to interpret and enforce the Plan, the Liquidating Trust now brings this Motion to enforce the Third Party Release and the Plan Injunction.[1]

4.      The Claimant, in her pleading to the Massachusetts court, has raised three challenges to the Third Party Release:  that its grant exceeded the "limited jurisdiction" of this Court; that it violates section 523(a) of the Bankruptcy Code; and that it does not extend to claims allegedly brought against Mr. Brown in his "personal capacity."  The first two of these challenges are plainly barred by the Supreme Court's decision in *Travelers* – as are any other challenges to the merits of the Third Party Release.  The Claimant, who was known to the Debtors, received notice of all relevant deadlines and developments in the Debtors' chapter 11 cases, including the proposal of the Third Party Release, yet chose not to participate in the bankruptcy or object to the grant of the Third Party Release.  Under *Travelers*, as discussed

---

[1] The Liquidating Trust intends to promptly file a notice of this Motion (attaching the Motion) with the Massachusetts Superior Court.

further below, having failed to contest the grant of the release before this Court or on direct appeal, the Claimant is now barred from challenging it in a collateral proceeding.

5.      The Claimant's third challenge, to the scope of the release, must also fail. The Claimant now argues that Mr. Brown is named in her Complaint only in his "personal capacity" such that he is not a "Representative" of the Debtors – but her Complaint tells a different story, under which Mr. Brown was anything but a rogue employee acting outside the scope of his employment.  Rather, the Complaint describes a "common plan and scheme" among the Defendants, by which both Mr. Brown and GMAC Mortgage were alleged to have profited. Mr. Brown is referred to as an "employee" and "agent" of GMAC Mortgage, and virtually every one of the actions attributed to Mr. Brown is also attributed to GMAC Mortgage, and vice versa. Critically, Mr. Brown is the only GMAC Mortgage employee named in the Complaint.  Because a corporation can act only through its agents or employees, the Claimant could not have even named GMAC Mortgage as a defendant unless she were alleging that Mr. Brown had acted on GMAC Mortgage's behalf.  The Claimant's belated attempts to recast her Complaint so as to distance Mr. Brown's actions from those of GMAC Mortgage are simply not credible and should be rejected.

6.      In sum, based on the allegations in the Complaint, the claims asserted against Mr. Brown fall squarely within the scope of the Third Party Release, and it is far too late for the Claimant to argue that the release should not have been granted.  The Court should exercise its authority under the Plan to enforce the Plan Injunction and Third Party Release and enjoin the Claimant from prosecuting the Massachusetts action against Mr. Brown.[2]

---

[2]  Unless otherwise noted, statements regarding the facts providing the alleged basis for the Claimant's Massachusetts Action are based on the allegations in the Complaint.  Nothing contained herein constitutes an admission of the truth of any matter asserted by the Claimant in connection with the Massachusetts Action.

**JURISDICTION AND VENUE**

7.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Article XII of the Plan.  The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

8.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

9.    The statutory predicates for the relief requested herein are sections 105(a), 524, and 1141 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3020(d) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

**BACKGROUND**

**A.    General Background**

10.    On May 14, 2012 (the "**Petition Date**"), the Debtors commenced the Chapter 11 Cases under chapter 11 of the Bankruptcy Code.

11.    On December 11, 2013, the Court entered its *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6065] (the "**Confirmation Order**"), confirming the Plan.

12.    The effective date of the Plan occurred on December 17, 2013. *See Notice of Entry of Confirmation Order Confirming the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors and Occurrence of Effective Date* [Docket No. 6137].

13.    Pursuant to the Confirmation Order and Plan, the Liquidating Trust was vested with broad authority over the post-confirmation liquidation and distribution of the Debtors' assets, and was deemed substituted as the party to any litigation in which the Debtors are a party. *See generally* Confirmation Order ¶¶ 26, 30, 34, 48; Plan Art. VI.

- 4 -

B.    **The Plan's Broad Third Party Release and Injunction**

14.    As the Court is well aware, the Plan contains a broad third party release

(the "**Third Party Release**"), the inclusion of which was a lynchpin of the Global Settlement

that formed the basis of the Plan.  The Third Party Release provides as follows:

> On and as of the Effective Date of the Plan, except as provided by Article
> IX.E, **the holders of Claims and Equity Interests shall be deemed to
> provide a full and complete discharge and release to the Ally Released
> Parties and their respective property from any and all Causes of
> Action whatsoever**, whether known or unknown, asserted or unasserted,
> derivative or direct, foreseen or unforeseen, existing or hereinafter arising,
> in law, equity, or otherwise, whether for **tort**, **fraud**, contract, violations
> of federal or state securities laws, veil piercing or alter-ego theories of
> liability, contribution, indemnification, joint liability, or otherwise, **arising
> from or related in any way to the Debtors**, including those in any way
> related to RMBS issued and/or sold by the Debtors or their affiliates
> and/or the Chapter 11 Cases or the Plan, the Consent Order, and the Order
> of Assessment.
>
> Entry of the Confirmation Order shall constitute the Bankruptcy Court's
> approval, under section 1123 of the Bankruptcy Code and Bankruptcy
> Rule 9019, of the Third Party Release, and further, shall constitute the
> Bankruptcy Court's finding that this Third Party Release is: (1) in
> exchange for the good, valuable and substantial consideration provided by
> the Ally Released Parties; (2) in the best interests of the Debtors, the
> Estates, the Liquidating Trust and all holders of Claims and Equity
> Interests; (3) fair, equitable and reasonable; (4) given and made after due
> notice and opportunity for a hearing; (5) justified by truly unusual
> circumstances; (6) an essential component and critical to the success of the
> Plan; (7) resulted in distributions to the Creditors that would otherwise
> have been unavailable; (8) the result of an identity of interest between the
> Debtors and the Ally Released Parties regarding the Plan; and (9) a bar to
> any party asserting a claim or cause of action released pursuant to this
> Third Party Release against any of the Ally Released Parties.

Plan Art. IX.D (emphasis added).  The "Ally Released Parties" – i.e., the beneficiaries of the

Third Party Release – are defined to include the Debtors' "Representatives."  Plan Art. I.A.21.

The term "Representatives," in turn, is defined to include an "entity's . . . former and current . . .

employees . . . , each solely in its capacity as such."  Plan Art. I.A.245.

15.     Accordingly, as relevant here, the Third Party Release extends to tort and fraud claims against the Debtors' former employees in their capacity as such.

16.     To enforce the Third Party Release, the Plan contains an injunction (the "**Plan Injunction**") providing that:

> Except as otherwise provided in the Confirmation Order or herein and in accordance with Article IX.E hereof, all Entities . . . who have held, hold or may hold Claims, Equity Interests, Causes of Action or liabilities that constitute Released Claims, are permanently enjoined and precluded, from and after the effective date of the Plan, from: (a) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party whether directly, derivatively or otherwise, on account of or in connection with or with respect to any Released Claims . . . .

Plan Art. IX.I; *see also* Confirmation Order ¶ 40.  The term "Released Claims" is in turn defined to include "liabilities that . . . have been released pursuant to the Plan."  Plan Art. I.A.242.

### C.     Claimant's Notice of the Third Party Release and Other Key Developments

17.     The Claimant, who was known to the Debtors by virtue of having filed a complaint prior to the Petition Date (discussed below), was provided with notice of all relevant developments in the Debtors' chapter 11 cases, including the proposal of the Third Party Release.  Despite having such notice, the Claimant did not object to the Third Party Release, did not submit a ballot in connection with the Plan, and did not participate in the proceedings related to confirmation of the Plan.

#### (a) Claimant was provided notice of the Bar Date and filed a proof of claim.

18.     On August 29, 2012, the Court entered its *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 1309] (the "**Bar Date Order**"), setting November 9, 2012 as the deadline for non-governmental entities to file proofs of claim against the Debtors (as extended, the "**Bar Date**").  On November

7, 2012, the Court entered its *Order Extending Deadline for Filing Proofs of Claim* [Docket No. 2093], extending the Bar Date to November 16, 2012.

19.     On or before September 7, 2012, the Claimant was served with notice of the Bar Date, care of the WilmerHale Legal Services Center, 122 Boylston Street, Jamaica Plain, Massachusetts 02130 (the "**Service Address**").  *See Affidavit of Service of Clarissa D. Cu*, Ex. I at p. 5722 [Docket No. 1412-6].

20.     On November 16, 2012, the Debtors' claims agent received a proof of claim filed by the Claimant against Debtor GMAC Mortgage, LLC ("**GMAC Mortgage**"), designated as Claim No. 5314 (the "**Proof of Claim**").  The Claimant listed the Service Address as her address on the Proof of Claim.  A copy of the Proof of Claim is attached as **Exhibit 1** to the Declaration of Joseph A. Shifer (the "**Shifer Declaration**"), filed simultaneously herewith.

**(b) Claimant was provided notice of the Disclosure Statement Approval Motion, including conspicuous disclosure of the Third Party Release, but did not object to the Disclosure Statement.**

21.     On July 3, 2013, the Debtors and the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (collectively, the "**Plan Proponents**") filed a motion seeking approval of a disclosure statement in connection with the Plan and procedures for the solicitation and tabulation of votes on the Plan [Docket No. 4152] (the "**Disclosure Statement Approval Motion**"), including the distribution of solicitation packages to creditors entitled to vote on the Plan consisting of, *inter alia*, notice (the "**Confirmation Hearing Notice**") of the hearing on confirmation of the Plan (the "**Confirmation Hearing**") and ballots (the "**Ballots**") for voting on the Plan (collectively, the "**Solicitation Package**").

22.     On or before July 12, 2013, the Claimant was served with notice of the Disclosure Statement Approval Motion [Docket No. 4189] (the "**Disclosure Statement Hearing Notice**") at the Service Address.  *See Affidavit of Service of Clarissa D. Cu*, Ex. F at p. 2910

[Docket No. 4285-5].  The Disclosure Statement Hearing Notice was also published in *The Wall Street Journal* on July 12, 2013, and in *USA Today* on July 15, 2013.  *See Affidavit of Publication re Notice of Disclosure Statement Hearing in The Wall Street Journal and USA Today* [Docket No. 4271].

      23.    The Disclosure Statement Hearing Notice included the deadline for objecting to the Disclosure Statement Approval Motion and the following conspicuous disclosures of the existence of the release, exculpation, and injunction provisions contained in the Plan:

> <u>ARTICLE IX</u> OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE IX CONTAINS A THIRD PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

> . . .

> Article IX of the Plan provides for the following Third Party Release:

> **ON AND AS OF THE EFFECTIVE DATE OF THE PLAN, THE HOLDERS OF CLAIMS AND EQUITY INTERESTS SHALL BE DEEMED TO PROVIDE A FULL AND COMPLETE DISCHARGE AND RELEASE TO THE ALLY RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CAUSES OF ACTION WHATSOEVER, WHETHER KNOWN OR UNKNOWN, ASSERTED OR UNASSERTED, DERIVATIVE OR DIRECT, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, VEIL PIERCING OR ALTER-EGO THEORIES OR LIABILITY, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS. . . .**

> **ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, UNDER SECTION 1123 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019, OF THE THIRD PARTY RELEASE, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THIS THIRD PARTY RELEASE IS: (1)**

**IN EXCHANGE FOR THE GOOD, VALUABLE AND SUBSTANTIAL CONSIDERATION PROVIDED BY THE ALLY RELEASED PARTIES; (2) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES, THE LIQUIDATING TRUST AND ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS; (3) FAIR, EQUITABLE AND REASONABLE; (4) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR A HEARING; (5) JUSTIFIED BY TRULY UNUSUAL CIRCUMSTANCES; (6) AN ESSENTIAL COMPONENT AND CRITICAL TO THE SUCCESS OF THE PLAN; (7) RESULTED IN DISTRIBUTIONS TO THE CREDITORS THAT WOULD OTHERWISE HAVE BEEN UNAVAILABLE; (8) THE RESULT OF AN IDENTITY OF INTEREST BETWEEN THE DEBTORS AND THE ALLY RELEASED PARTIES REGARDING THE PLAN; AND (9) A BAR TO ANY PARTY ASSERTING A CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THIS THIRD PARTY RELEASE AGAINST ANY OF THE ALLY RELEASED PARTIES.**

*See* Disclosure Statement Hearing Notice ¶¶ 4-5 (emphasis in original).

24.    The Claimant did not file an objection to the Disclosure Statement Approval Motion.

> ***(c) Claimant was provided a Solicitation Package with conspicuous disclosure of the Third Party Release, but did not return her Ballot, did not file an objection to the Plan, and did not participate in the Confirmation Hearing.***

25.    On August 23, 2013, the Court entered an order approving the Disclosure Statement [Docket No. 4809] (the "**Disclosure Statement Approval Order**"). Pursuant to the Disclosure Statement Approval Order, the deadline for objecting to the Plan (the "**Plan Objection Deadline**") and for submitting Ballots (the "**Voting Deadline**") was October 21, 2013. *See* Disclosure Statement Approval Order ¶¶ 7-8.

26.    On August 29, 2013, the Claimant was served with the Solicitation Package, including the Confirmation Hearing Notice and a Ballot for voting in the Class GS-5 Borrower Claims against GMAC Mortgage. *See Affidavit of P. Joseph Morrow IV Certifying the Tabulation of Votes on the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al.*

- 9 -

*and the Official Committee of Unsecured Creditors*, Ex. D. at p. 25 [Docket No. 5699] (the

"**Tabulation Affidavit**").  The Confirmation Hearing Notice was also published in *The Wall*

*Street Journal* and *USA Today* on September 3, 2013. *See Affidavit of Publication re Notice of (I)*

*Approval of Disclosure Statement, (II) Deadline for Voting on Plan, (III) Hearing to Consider*

*Confirmation of Plan, and (IV) Deadline for Filing Objections to Confirmation of Plan in The*

*Wall Street Journal and USA Today*  [Docket No. 5025].

       27.     The Confirmation Hearing Notice and the Ballots contained a similar

disclosure as the Disclosure Statement Hearing Notice of the release, exculpation, and injunction

provisions contained in the Plan.  In addition, the Ballots provided the following disclosure:

> ARTICLE IX OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE IX.D CONTAINS A THIRD PARTY RELEASE.
>
> **IF YOU: (1) VOTE TO ACCEPT THE PLAN, OR (2) FAIL TO TIMELY AND/OR PROPERLY SUBMIT A BALLOT, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD PARTY RELEASE CONTAINED IN ARTICLE IX.D OF THE PLAN, THE EXCULPATION PROVISION CONTAINED IN ARTICLE IX.G OF THE PLAN, AND THE INJUNCTION PROVISION CONTAINED IN ARTICLE IX.H OF THE PLAN, EACH COPIED BELOW.**
>
> REGARDLESS AS TO HOW OR WHETHER YOU VOTED ON THE PLAN, IF THE PLAN IS CONFIRMED, THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS CONTAINED IN ARTICLE IX OF THE PLAN WILL BE BINDING UPON YOU. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

*See* Tabulation Affidavit ¶ 18 (emphasis in original).

       28.     The Claimant did not return her Ballot.  *See* Tabulation Affidavit, Ex. D at

p. 25 (listing ballots not returned).  The Claimant did not file an objection to the Plan or

participate in the Confirmation Hearing.  *See, e.g.*, Exhibit A to *Plan Proponents' Omnibus*

*Response to Objections to Confirmation of the Joint Chapter 11 Plan Proposed by Residential*

*Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 5718] (listing all filed confirmation objections); *Findings of Fact* ¶ 343 [Docket No. 6066] (listing six unresolved borrower-related objections to confirmation).

      **D.**      **The Massachusetts Action**

      29.      Prior to the Petition Date, on May 1, 2009, the Claimant filed a complaint (the "**Complaint**") in Massachusetts Superior Court against, among others, Debtor GMAC Mortgage and Mr. Brown, at the time an employee of GMAC Mortgage, in an action styled *Brown v. Accredited Home Lenders, Inc., et al.*, Civil Action No. 09-1812E (the "**Massachusetts Action**"). A copy of the Complaint is attached to the Proof of Claim.

      30.      The Complaint, in broad terms, alleges that the Claimant was "the victim of a predatory lending scheme perpetuated by Defendants" relating to her purchase of a property located at 52-54 Mather Street in Dorchester, Massachusetts (the "**Property**"). *See* Complaint, Introduction. The Complaint, as originally filed, asserted seven causes of action against Mr. Brown and GMAC Mortgage: intentional or negligent misrepresentation (Count I); unconscionability (Count II); breach of the duty of good faith and fair dealing (Count III); tortious interference with contract (Count IV); violations of Mass. Gen. Laws ch. 183 § 63 (disclosure of residential mortgage fees) (Count V); intentional infliction of emotional distress (Count VII); and violations of the Massachusetts Consumer Protection Act (Count VIII). *See* Complaint ¶¶ 45-84, 92-100.[3]

      31.      According to the allegations in the Complaint, the Claimant sought financing from GMAC Mortgage to finance her purchase of the Property. Mr. Brown, an employee of GMAC Mortgage, presented the Claimant with various potential loans and assisted

---

[3] An eighth cause of action, for legal malpractice (Count VI), was not asserted against GMAC Mortgage or Mr. Brown. *See* Complaint ¶¶ 85-91.

the Claimant in preparing the necessary loan applications.  In April 2006, the Claimant executed

a Purchase and Sale Agreement with the owner of the Property.  *See* Complaint ¶ 24.

32.     According to the allegations in the Complaint, Mr. Brown, in his capacity

as an employee of GMAC Mortgage, prepared a Uniform Residential Loan Application on

behalf of the Claimant that overstated her monthly income.  *See* Complaint ¶¶ 22, 25.  Although

the Claimant expressed her misgivings over executing the Uniform Residential Loan

Application, after consulting with an attorney, the Claimant continued with the purchase of the

Property.  *See* Complaint ¶ 29.  On June 2006, the Claimant closed on the Property and entered

into two mortgage loans (the "**Mortgage Loans**") through GMAC Mortgage with Accredited

Home Lenders, Inc. ("**Accredited**").  *See* Complaint ¶ 30.

33.     Prior to filing her Complaint in May 2009, the Claimant ceased making

payments on the Mortgage Loans.  *See* Complaint ¶ 34.  Upon information and belief, as of the

date hereof, the Claimant is still resident in the Property.  Further, as the Property is a two-family

home, upon information and belief the Claimant has continued to receive rental income from the

Property.  Indeed, according to the Complaint, the disparity between the Claimant's actual

income and the income used by Mr. Brown in completing the Uniform Residential an

Application appears to be the expected monthly rental income from the Property.  *See* Complaint

¶ 26.

E.     **Current Procedural Posture of the Massachusetts Action**

34.     On June 11, 2012, counsel to GMAC Mortgage and Mr. Brown[4] filed a

notice (the "**Chapter 11 Notice**") in the Massachusetts Action informing the court and the

parties of the Chapter 11 Cases and the existence of the automatic stay that enjoined all litigation

---

[4] GMAC Mortgage and Philip Brown are currently represented by the same counsel in the Massachusetts Action.

against GMAC Mortgage.  A copy of the Chapter 11 Notice is attached to the Shifer Declaration as **Exhibit 2**.  Since the filing of the Chapter 11 Notice, the Massachusetts Action was stayed as to GMAC Mortgage, but proceeded against Mr. Brown and the other defendants in the Massachusetts Action.

35.    On November 9, 2012, Mr. Brown moved for summary judgment on a number of counts contained in the Complaint (the "**Summary Judgment Motion**").  A copy of the Summary Judgment Motion is attached to the Shifer Declaration as **Exhibit 3**.  The Summary Judgment Motion remains pending before the Massachusetts Superior Court.[5]

36.    On January 31, 2014, Mr. Brown filed a notice of the occurrence of the Effective Date and the salient provisions of the Plan Injunction and the Third Party Release with the Massachusetts Superior Court (the "**Release Notice**").  A copy of the Release Notice is attached to the Shifer Declaration as **Exhibit 4**.  The Release Notice asserted that the Massachusetts Action was enjoined by reason of the Plan Injunction and the Third Party Release, and disclosed that the Plan provides for this Court to retain exclusive jurisdiction to hear any dispute "regarding the existence, nature, scope of the releases, injunction, and exculpation provided under the Plan."  *See* Release Notice ¶ 7.

37.    In response to the Release Notice, on February 10, 2014, the Claimant filed her *Response to Defendant Philip Brown's Bankruptcy Notice* (the "**Notice Response**").  A copy of the Notice Response is attached to the Shifer Declaration as **Exhibit 5**.  As discussed in greater detail below, in the Notice Response the Claimant contested the applicability and validity of the Plan Injunction and the Third Party Release.

---

[5] Discovery is completed in the Massachusetts Action.

38.    Also on February 10, 2014, the Claimant filed *Plaintiff's Stipulation Clarifying Complaint* (the "**Clarifying Stipulation**").[6]  A copy of the Clarifying Stipulation is attached to the Shifer Declaration as **Exhibit 6**.  In the Clarifying Stipulation, the Claimant states that she asserts the same counts against both GMAC Mortgage and Mr. Brown (i.e., Counts I-IV, VII, and VIII), but asserts that the counts against Mr. Brown are "solely in his individual capacity, and solely for his individual actions."  Clarifying Stipulation ¶ 1.[7]

39.    At a hearing held on January 22, 2014, Associate Justice Hopkins instructed counsel for Defendant Brown and GMAC Mortgage, if they intended to seek enforcement of the Third Party Release in the Massachusetts state court, to file a brief on the applicability of the release on or before April 1, 2014.

### RELIEF REQUESTED

40.    The allegations made against Mr. Brown by the Claimant in the Massachusetts Action are squarely within the Third Party Release.  Accordingly, the Liquidating Trust files this Motion with the Court – which is the proper venue for litigating the scope of the Plan Injunction and Third Party Release – seeking entry of the Enforcement Order enjoining the Claimant from continuing the Massachusetts Action against Mr. Brown.

### BASIS FOR RELIEF

## I.    This Court is the Proper Forum to Enforce the Plan Injunction

41.    As an initial matter, this Court – rather than the Massachusetts Superior Court – is the appropriate forum to enforce the Plan Injunction.  Pursuant to Article XII of the Plan, the Court retained "exclusive jurisdiction over all matters arising out of, or related to, the

---

[6] Despite being styled as a "stipulation," the Clarifying Stipulation did not represent an agreement among the parties, but only stated the Claimant's position vis-à-vis the various counts in the Complaint.

[7] In light of the Clarifying Stipulation, it appears that the Claimant no longer asserts against GMAC Mortgage or Mr. Brown the claim for violation of Mass. Gen. Laws ch. 183 § 63, which was Count V of the Complaint.

Chapter 11 Cases and the Plan . . . , including jurisdiction . . . to hear and determine any matter, case, controversy, suit, dispute, or Causes of Action: (i) regarding the existence, nature, and scope of the releases, injunctions, and exculpation provided under the Plan, and (ii) enter such orders as may be necessary appropriate to implement such releases, injunctions, and other provisions."  A determination as to whether the Plan Injunction enjoins claims against Mr. Brown by virtue of the Third Party Release is plainly a matter "regarding the existence, nature, and scope" of the Plan Injunction and the Third Party Release.

42.    This provision of the Plan is in keeping with the law in the Second Circuit that a "bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization."  *See In re Petrie*, 304 F.3d 223, 230 (2d Cir. 2002).  Consistent with this principle, it is well settled that a bankruptcy court has jurisdiction to interpret and enforce its own prior orders, including orders granting third party releases.  *See, e.g.*, *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 151 (2009) (noting, in regards to Judge Lifland's interpretation of his confirmation order in *Johns-Manville* – and, specifically, the scope of the third party release therein – that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders").

43.    Judge Peck's decision in *In re Charter Communications*, No. 09-11435, 2010 WL 502764 (Bankr. S.D.N.Y. Feb. 8, 2010), is closely on point.  In *Charter*, a group of securities plaintiffs had a pending (but stayed) prepetition litigation in the District Court for the Eastern District of Arkansas against certain officers and shareholders who received a third party release under the debtors' confirmed plan.  Following the effective date of Charter's plan, the plaintiffs filed a motion with the District Court in Arkansas seeking to lift the stay.  In response, the Debtors filed a motion with the Bankruptcy Court seeking to enforce the plan injunction and

third party release.  Judge Peck ruled that the Bankruptcy Court, rather than the District Court in Arkansas, was the proper forum in which to litigate the scope of the plan injunction and third party release, stating that "[i]t is difficult to identify judicial acts that are any more critical to the orderly functioning of the bankruptcy process or more closely tethered to core bankruptcy jurisdiction."  *Id.* at *4.

44.    The Bankruptcy Court's decision to assume jurisdiction over the dispute in *Charter* was motivated, in part, by Judge Peck's view that, as compared to the District Court in Arkansas, he had a "natural familiarity with the full record of the confirmation hearing," and "[a]ny other court necessarily will be at a disadvantage in evaluating the Plan and confirmation order."  *Id.* at *3.[8]  Here, as in *Charter*, the Court is intimately familiar with the facts and circumstances related to confirmation of the Plan, including the notice provided to creditors in connection with confirmation, as well as the facts and circumstances related to approval of the Plan Injunction and the Third Party Release.  Accordingly, the Liquidating Trust seeks to have the Enforcement Order entered by this Court rather than the Massachusetts Superior Court.

## II.    The Plan Injunction Should be Enforced to Bar Claimant From Proceeding With the Massachusetts Action Against Mr. Brown

45.    In the Notice Response filed in the Massachusetts Action, the Claimant argued she was not bound by the Third Party Release because (i) the Court lacked jurisdiction to enter the release, (ii) section 523(a) of the Bankruptcy Code bars an individual debtor from receiving a discharge from fraud claims, and (iii) the claims against Mr. Brown are outside the scope of the Third Party Release.  The Claimant is estopped from raising the first two arguments (or any other challenge to the merits of the release), having been on notice of the Debtors'

---

[8] *Cf. also Travelers*, 557 U.S. at 151 n.4 ("Numerous Courts of Appeal have held that a bankruptcy court's interpretation of its own confirmation order is entitled to substantial deference.") (citing, *inter alia, In re Casse*, 198 F.3d 327, 333 (2d Cir. 1999)).

bankruptcy proceedings (including the proposal of the Third Party Release) and having failed to object.  As to the third argument, it is plain from the face of the Complaint that the claims against Mr. Brown relate to actions allegedly taken as an employee or agent of GMAC Mortgage, such that they fall squarely within the scope of the Third Party Release.

### A.    Claimant May Not Collaterally Attack the Third Party Release

46.    The Claimant's substantive objections to the Third Party Release are barred by her failure to raise them before this Court or on direct review of the Confirmation Order.  The Supreme Court's decision in *Travelers* dictates this outcome.  In addition, as discussed below, the Claimant's challenges to the release are without merit.

47.    In *Travelers*, the Supreme Court addressed the validity of Judge Lifland's interpretation, twenty years after the fact, of the scope of the third party release contained in the chapter 11 plan of Johns-Manville.  Parties objecting to Judge Lifland's interpretation of the release argued that his "Clarifying Order" – which interpreted the extent of the release of certain third party insurers under the Manville plan – "erroneously expands [the confirmation order] beyond the Bankruptcy Court's subject-matter jurisdiction and statutory authority." *Travelers*, 557 U.S. at 146.  The Supreme Court flatly rejected this belated attempt to challenge the bankruptcy court's jurisdiction to enter the original release in 1986, holding that "[i]f this were a direct review of the 1986 Orders, the Court of Appeals would indeed have been duty bound to consider whether the Bankruptcy Court had acted beyond its subject-matter jurisdiction," but that because the orders had become final on direct review, "whether the Bankruptcy Court had jurisdiction and authority to enter the injunction in 1986 was not properly before the Court of Appeals in 2008 and is not properly before us." *Id.* at 148; *see also id.* at 151-52.

48.    Here, as in *Travelers*, the Claimant should be barred from litigating the merits of the Third Party Release months after the occurrence of the Effective Date.  As detailed

above, the Claimant received ample, conspicuous notice of the Third Party Release, and had

multiple opportunities to object to the Third Party Release, including at the Disclosure Statement

Hearing and at the Confirmation Hearing.  Instead, the Claimant chose not to raise this issue until

after the Effective Date, and before another court.  Indeed, the Claimant did not even return a

Ballot to vote on the Plan – an action that, pursuant to the disclosure provided in the

Confirmation Hearing Notice and on the Ballot (see above at ¶ 27), is deemed to constitute

acceptance of the Third Party Release.  The time to object to the Third Party Release is long past

and any substantive issue the Claimant can raise in connection with the Third Party Release is

barred by res judicata.  *See Travelers*, 557 U.S. at 151-52; *see also Ins. Corp. of Ireland v.*

*Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, n. 9 (1982) ("A party that has had an

opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that

question in a collateral attack upon an adverse judgment").

49.     Moreover, even if the Claimant were not barred from challenging the

Third Party Release, her arguments in any event are without merit.  First, section 523(a) of the

Bankruptcy Code is inapplicable to this case.  Section 523(a)(2) bars an **individual debtor** (in

certain circumstances) from receiving a discharge of debt obtained by (i) "false pretenses, a false

representation, or actual fraud, other than a statement respecting the debtor's . . . financial

condition," or (ii) a written statement that is materially false respecting the debtor's financial

condition on which the creditor reasonably relied.  *See* 11 U.S.C. § 523(a)(2)(A)-(B).  The

Bankruptcy Code does not prohibit a court from granting a release to a third party under a plan of

reorganization for claims and causes of action, including claims and causes of action for "tort,"

"fraud," and "contract" claims, as is the case with the Third Party Release.  Further, the counts in

the Complaint appear to arise under contract, tort, and consumer protection law, rather than fraud.[9]

50.     <u>Second</u>, contrary to the Claimant's assertions, the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), does not operate to deprive this Court of jurisdiction to enter a third party release.  As the Second Circuit has noted, while *Stern's* "precise contours" remain uncertain, the Supreme Court's holding "was a narrow one."  *Pfizer, Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co.)*, 676 F.3d 45, 52 (2d Cir. 2012).   And, indeed, subsequent to *Stern*, the Second Circuit has continued to cite favorably to its pre-*Stern* "*Metromedia* standard" for grant of a third party release.  *See Cohen v. CDR Creances S.A.S. (In re Euro-American Lodging Corp.)*, No. 13-1308, 2014 WL 103556, *2 (2d Cir. Jan. 10, 2014) ("The release or discharge of a nondebtor is permissible only upon a finding by the Bankruptcy Court that 'truly unusual circumstances render the release terms important to success of the plan.'") (citing *Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 143 (2d Cir. 2005)); *Marshall v. Picard (In re Bernard L. Madoff Investment Securities LLC)*, 740 F.3d 81, 88 (2d Cir. 2014) (noting "a bankruptcy court generally has limited authority to approve releases of a non-debtor's independent claims") (citing *Metromedia*).

51.     Moreover, in light of the extensive briefing of third party releases in the course of these chapter 11 cases, it is safe to say that the Court was fully apprised of the relevant case law in this area (including *Stern* and *Metromedia*) and engaged in a searching inquiry into the propriety of and jurisdictional bases for the release.  Indeed, the Debtors' ability to obtain the

---

[9] In addition, the Claimant's characterization of section 523(a) in the Notice Response is inaccurate.  The Claimant states that the section flatly prohibits the discharge of fraud claims against an individual debtor.  Notice Response at 2-3.  In fact, however, pursuant to section 523(c)(1) of the Bankruptcy Code, fraud claims are not automatically non-dischargeable, but instead are non-dischargeable only if a creditor has filed a request that they be deemed so.

Third Party Release was, in some respects, the most important and highly visible issue presented in these chapter 11 cases. Accordingly, under principles of res judicata, and on the merits, there is no reason for this Court to revisit its prior order authorizing the Third Party Release.

**B.     Claimants' Claims Against Mr. Brown are Subject to the Third Party Release Because the Complaint Alleges Mr. Brown Was Acting in His Capacity as an Employee of GMAC Mortgage**

52.     The Massachusetts Action should be enjoined as to Mr. Brown because the claims asserted by the Claimant are based on his alleged actions as a then-employee of GMAC Mortgage. As such, under the allegations in the Complaint, he was a "Representative" of the Debtors under the Plan, and therefore a beneficiary of the Third Party Release and the Plan Injunction. *See* ¶ 14, *supra*. In an effort to avoid the clear implications of the Plan's release provisions, the Claimant argued in her Notice Response that somehow Mr. Brown's actions were not taken in his "capacity" as an employee of GMAC Mortgage. *See* Notice Response at 1. In a case in which GMAC Mortgage was also named as a defendant *based on allegations identical to those lodged against Mr. Brown*, the argument that Mr. Brown was not acting as an employee of GMAC Mortgage strains common sense, contradicts the Claimant's own assertions in the Complaint, would undermine the efficacy of the Third Party Release, and should be rejected.

53.     The gravamen of the Complaint is that "GMAC Mortgage Corporation, acting as a mortgage broker, and Philip Brown, an employee of GMAC," misrepresented the Claimant's income so that she would qualify for larger mortgage loans than she could actually afford. *See* Complaint, Introduction. Importantly, other than Mr. Brown, no other employee of GMAC Mortgage is named in the Complaint. Because GMAC Mortgage can act only through its agents and employees, the assertion of a claim against GMAC Mortgage based on the conduct alleged in the Complaint necessarily means that the Claimant is asserting that Mr. Brown acted as an employee or agent of GMAC Mortgage.

54.    And, indeed, numerous allegations in the Complaint support this view. <u>First</u>, the Complaint describes Philip Brown as "an employee of GMAC" and "an employee and/or agent of GMAC." Complaint, Introduction & ¶ 12. <u>Second</u>, the "Defendants" are described as having "develop[ed] *a common plan and scheme* for marketing and underwriting predatory 'stated income' loans to families in low-income neighborhoods." Complaint ¶ 36 (emphasis added). <u>Third</u>, the "Defendants" (not just Mr. Brown) are said to have benefitted from their alleged scheme by virtue of receiving increased commissions. *See* Complaint ¶ 41; *see also id.* ¶ 82 ("Defendants GMAC and Philip Brown inflated Plaintiff's income so as to obtain a hefty commission . . . .").

55.    <u>Fourth</u>, in nearly every instance that an allegation is made regarding Mr. Brown, the mention of his name is coupled with mention of GMAC Mortgage. The following is but a representative sampling:

- "Defendants GMAC and Philip Brown . . . coerced Karla Brown into accepting two loans . . . ." Complaint, Introduction.

- "Defendants Philip Brown and GMAC represented to Plaintiff that they would obtain a mortgage for her . . . ." Complaint ¶ 18.

- "Defendants Philip Brown and GMAC presented Plaintiff with wildly varying interest rates and monthly payment options . . . ." Complaint ¶ 19.

- "Defendants Philip Brown and GMAC coerced Plaintiff to go through with the transaction . . . ." Complaint ¶ 28.

- "Defendants GMAC and Philip Brown knowingly or negligently misrepresented material facts of the loan transaction . . . ." Complaint ¶ 46.

- "Defendants GMAC and Philip Brown intentionally misrepresented the terms of the legally operative Purchase and Sale Agreement . . . ." Complaint ¶ 68.

- "Defendants GMAC and Philip Brown improperly charged Plaintiff an undisclosed loan fee for the 'low documentation' loan that Plaintiff received." Complaint ¶ 76.

56.    In view of the foregoing allegations, it is simply not credible for the Claimant to contend that she named Philip Brown only in his individual capacity. The Claimant has made no allegations whatsoever that would support the view that Philip Brown was a rogue employee acting outside the scope of his employment. Rather, all of the Claimant's allegations (accepted as true for these purposes) point to the opposite conclusion: that Mr. Brown was acting in "a common plan and scheme" (Complaint ¶ 36) with his employer, GMAC Mortgage, and the other Defendants.

57.    The facts of this case are quite similar to *In re Mal Dunn Assocs.*, 406 B.R. 622 (Bankr. S.D.N.Y. 2009). There, a plaintiff, like the Claimant here, tried to prosecute a state court cause of action against the debtor's president following confirmation of the debtor's chapter 11 plan, notwithstanding the plan's inclusion of a release and injunction that appeared to cover the claim. The plaintiff argued, among other things, that the release, if it was even valid, would not extend to its state court action because that action was brought against the debtor's president in his personal capacity only. *See id.* at 628. Judge Morris rejected this argument, explaining that "while the State Court Action may technically be against [the president] as an individual and as a fiduciary, it is primarily seeking recovery against him as an officer, director or employee of the Debtor, and within the scope of the release in the Plan and Confirmation Order." *Id.* at 633.[10] The same outcome is warranted here, particularly in light of the language of the Complaint, discussed above.

58.    Finally, it is important to note the potentially serious consequences that could attend a finding that the Massachusetts Action is not barred by the Plan Injunction. A plaintiff should not, simply by making the bare assertion that she is pursuing a defendant in his

---

[10] Judge Morris also determined that the plaintiff's challenge to the releases in the plan was untimely, holding (in slight contrast to Judge Peck's decision in *Charter*, but to similar effect) that plaintiff's belated challenge to the releases, over a year after confirmation, was equitably moot. *Id.* at 630.

"individual capacity," be able to evade the broad reach of the Third Party Release.  This is particularly true where, as here, the assertion was made only after entry of the injunction and in a transparent attempt to recharacterize the allegations in an existing Complaint so as to plead around the injunction.  If that were permitted, the Liquidating Trust could be called to appear and defend in dozens of suits around the country, depleting its assets and undermining the very purpose for which the release was sought by the parties and imposed by the Court.

59.    In this regard, while the Plaintiff focuses narrowly on the language that limits the Plan's definition of "Representative" to employees acting in their "capacity as such," other language in the Plan reveals that the Plan Injunction was clearly intended to – and does – have an extremely broad reach.  Specifically, the Third Party Release extends to Causes of Action "arising from or related *in any way* to the Debtors." Plan Art. IX.D (emphasis added). The Second Circuit has held that in interpreting a release, a court should "give effect to the intent of the parties," as evidenced by "the language of the release itself and the circumstances surrounding its execution."  *See Ruskay v. Waddell*, 552 F.2d 392, 395-96 (2d Cir. 1977).  In *Ruskay*, as here, the release at issue was granted in the context of a "flood of litigation," such that it was reasonable to conclude that the parties to the release had contemplated a broad release that would provide finality, and there was no reason advanced for a narrow construction of the broad language of the release.  *See id.* at 395.  Similarly, in this case, it would have been illogical for the parties to have sought a release of all claims "arising from or related in any way to the Debtors," yet expected or intended that claims as closely related to the Debtors' businesses and operations as those asserted by the Claimant against Mr. Brown be carved out of that release.[11]

---

[11] It also bears noting that one of the justifications for granting the Third Party Release was that, absent the release, the Debtors might face indemnification and contribution obligations – i.e., there was an "identity of interests" among the released parties and the Debtors.  *See, e.g.*, Findings of Fact ¶¶ 246, 248; Confirmation Order ¶ GG.  Here, the Claimant has intimated that Mr. Brown might have an indemnification claim against GMAC Mortgage were he

60.     In sum, while certainly there may be cases where the allegations in a complaint describe conduct that is so unrelated to the Debtors or so far outside the scope of an individual's employment that it is proper to inquire further as to whether the Third Party Release applies, based on the Claimant's own allegations, this is not such a case.

<u>**NOTICE**</u>

61.     Pursuant to the *Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures* [Docket No. 141] (the "**Case Management Order**"), entered on May 23, 2012, notice of this Motion has been given to the parties identified on the Special Service List and the General Service List (as such terms are defined in the Case Management Order) and the Claimant's counsel.     The Liquidating Trust submits that no further notice of the Motion is necessary.

---

found liable.  *See* Notice Response at 2.  In fact, Mr. Brown has not filed a proof of claim against the Debtors, so it is unlikely that he would have an indemnification claim (though that issue is not before the Court at this time). Nevertheless, the potential existence of a right of indemnity in other similar actions would provide further reason to find that claims of the sort raised by the Claimant are within the scope of the Third Party Release.

## CONCLUSION

WHEREFORE, the Liquidating Trust requests the entry of the Enforcement Order

and such other and further relief as is just and proper.

Dated:    New York, New York
          March 24, 2014

                                     KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                     /s/  Douglas H. Mannal
                                     Kenneth H. Eckstein
                                     Douglas H. Mannal
                                     David E. Blabey, Jr.
                                     Joseph A. Shifer
                                     1177 Avenue of the Americas
                                     New York, New York  10036
                                     Telephone: (212) 715-9100
                                     Facsimile: (212) 715-8000
                                     *Counsel for the ResCap Liquidating Trust*

**<u>Exhibit 1</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### ORDER GRANTING MOTION OF THE RESCAP LIQUIDATING TRUST
### FOR AN ORDER ENFORCING PLAN INJUNCTION AGAINST KARLA BROWN

Upon consideration of the motion (the "**Motion**")[1] of the Liquidating Trust for entry of an order enforcing the Third Party Release and Injunction provisions of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors*, which was confirmed by this Court on December 11, 2013; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Article XII of the Plan; and it appearing that venue of these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion having been given; and it appearing that no other or further notice need be provided; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates and their creditors; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED to the extent set forth below.

---

[1] Capitalized terms used but not defined herein have the meanings provided to such terms in the Motion.

2.      All objections to the Motion or the relief requested therein, if any, that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

3.      The Claimant is hereby enjoined from the continued prosecution of the Massachusetts Action against Philip Brown.

4.      The Liquidating Trust is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

5.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

6.      This Court shall retain jurisdiction with respect to all matters arising or related to the implementation of this Order.

Dated: _____, 2014
        New York, New York

_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE