# EXHIBIT 1

# CT Corporation

**Service of Process Transmittal**
12/16/2013
CT Log Number 524070596

**TO:** Michael T Ryan, Office of General Counsel
HSBC North America Inc.
Office Of the General Counsel, One HSBC Center, 27th Floor
Buffalo, NY 14203

**RE:** **Process Served in Minnesota**

**FOR:** HSBC Mortgage Corporation (USA) (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Residential Funding Company, LLC, Pltf. vs. HSBC Mortgage Corp. (USA), Dft. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Complaint, Attachment(s), Exhibit(s) |
| **COURT/AGENCY:** | Fourth Judicial District Court, Hennepin County, MN<br>Case # None Specified |
| **NATURE OF ACTION:** | Foreclosure Litigation - Mortgage - Hennepin County, NY |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System Inc., Minneapolis, MN |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/16/2013 at 14:15 |
| **JURISDICTION SERVED :** | Minnesota |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service |
| **ATTORNEY(S) / SENDER(S):** | Donald G. Heeman<br>220 South 6th Street<br>Suite 2200<br>Minneapolis, MN 55402-4504<br>612-339-6321 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 12/17/2013, Expected Purge Date: 12/22/2013<br>Image SOP<br>Email Notification, Michael T Ryan Michael.T.Ryan@us.hsbc.com<br>Email Notification, Beverly Wells beverly.wells@us.hsbc.com<br>Email Notification, Deborah Latham Deborah.Latham@us.hsbc.com<br>Email Notification, Sandra Lewandowski sandra.x.lewandowski@us.hsbc.com<br>Email Notification, Sharon Militello sharon.x.militello@us.hsbc.com |
| **SIGNED:** | C T Corporation System Inc. |
| **PER:** | Jenny Schurhamer |
| **ADDRESS:** | 100 South Fifth Street<br>Suite 1075<br>Minneapolis, MN 55402 |
| **TELEPHONE:** | 612-333-4315 |

Page 1 of  1 / DS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# Felhaber :: Larson

Jessica J. Nelson
612-373-8419
Fax: 612-338-0535
E-mail: jnelson@felhaber.com
Reply to Minneapolis Office

December 16, 2013

**PERSONAL SERVICE**

HSBC Mortgage Corp. (USA)
c/o C T Corporation System Inc.
100 S. 5th St. #1075
Minneapolis, MN 55402

**RE:**   **Residential Funding Company, LLC v. HSBC Mortgage Corp. (USA)**
**Our File No. 14757.1500**

Dear Sir/Madam:

  Enclosed and personally served upon you as registered agent, officer of the company or other agent authorized to receive service for HSBC Mortgage Corp. (USA), please find a Summons and Complaint in the above-referenced matter.

      Sincerely,

      Jessica J. Nelson

JJH/dgh
Enclosures

**Minneapolis**
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4504
612 339 6321   ||   fax 612 338 0535

**felhaber.com**

**St. Paul**
444 Cedar Street, Suite 2100
St. Paul, MN 55101-2136
651 222 6321   ||   fax 651 222 8905

565762.1

STATE OF MINNESOTA                                      DISTRICT COURT

COUNTY OF HENNEPIN                           FOURTH JUDICIAL DISTRICT

                                                    Case Type: Other Civil

RESIDENTIAL FUNDING COMPANY,              Court File No. _____
LLC,                                                    Judge: _____

            Plaintiff,

                                                          **SUMMONS**

    v.

HSBC MORTGAGE CORP. (USA),

            Defendant.

THE STATE OF MINNESOTA TO THE ABOVE NAMED DEFENDANT:

    **1. YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

    **2. YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

                    Donald G. Heeman
                    Felhaber Larson
                    220 South Sixth Street, Suite 2200
                    Minneapolis, MN  55402-4504

    **3. YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

    **4. YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

**5. LEGAL ASSISTANCE**. You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

**6. ALTERNATIVE DISPUTE RESOLUTION**. The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

The object of this action is to recover make whole losses suffered by Plaintiff that Defendant failed to pay pursuant to a contract between the parties.

Dated: December 16, 2013      FELHABER LARSON

By: _____

Donald G. Heeman, #286023
Jessica J. Nelson, #0347358
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4504
Telephone: (612) 339-6321
Facsimile: (612)338-0535
dheeman@felhaber.com
jnelson@felhaber.com

ATTORNEYS FOR PLAINTIFF RESIDENTIAL
FUNDING COMPANY, LLC

STATE OF MINNESOTA                                DISTRICT COURT

COUNTY OF HENNEPIN                                FOURTH JUDICIAL DISTRICT
                                                 CASE TYPE:  OTHER CIVIL

---

RESIDENTIAL FUNDING COMPANY, LLC,                CASE NO. _____

        Plaintiff,                               **COMPLAINT**

    v.

HSBC MORTGAGE CORP. (USA),

        Defendant.

---

    Plaintiff Residential Funding Company, LLC ("RFC" or "Plaintiff"), by and through its attorneys, alleges for its Complaint against defendant HSBC Mortgage Corp. (USA) ("Defendant") as follows:

### NATURE OF ACTION

    1.    Defendant sold mortgage loans to RFC pursuant to the Seller Contract attached as Exhibit A (the "Contract").

    2.    The Contract incorporates into its terms and conditions the RFC Client Guide, exemplary excerpts of which are attached as Exhibit B (the "Client Guide"). (The various applicable versions of the Client Guide are known to the parties and too voluminous to attach in their entirety.) The Contract and Client Guide collectively form the parties' Agreement.

    3.    Pursuant to the Agreement, Defendant made a number of representations and warranties to RFC regarding, among other things, the quality of the mortgage loans it sold RFC; the manner in which the mortgage loans were originated and underwritten; and the compliance of the mortgage loans with applicable state and federal law.

4.     Defendant breached these representations and warranties by delivering loans that were not originated or underwritten in accordance with the requirements of the Agreement; did not meet the representations and warranties made as to those loans; and/or failed to comply with applicable state and federal law.

5.     Had RFC been aware of the defects in Defendant's loans, it would never have acquired them.

6.     As a direct result of these contractual breaches, RFC has suffered damages and losses for which it is entitled to damages pursuant to the Agreement.

7.     Pursuant to the Agreement, RFC is entitled to seek repurchase of the defective loans from Defendant or, where repurchase is not possible, contractual damages sufficient to make RFC whole and/or compensate it for its acquisition of the defective loans.

8.     As a further result of Defendant's breaches of representations and warranties, RFC has been forced to incur (and continues to incur) substantial losses in the form of damages paid to third parties, settlement payments, repurchases, lost value and lost profits stemming from non-performing or defective loans, increased servicing expenses (including foreclosure costs associated with non-performing and/or non-compliant loans), attorneys' fees, court costs, and other losses.

9.     Indeed, as discussed in further detail below, in May 2012, RFC was forced to file for bankruptcy protection pursuant to Chapter 11 of the United States Bankruptcy Code, in part because of the dozens of lawsuits and allegations relating to defective loans, including those sold to it by Defendant.

10.     Defendant agreed and is obligated to indemnify RFC, and to reimburse RFC for and against any and all losses, damages, penalties, fines, forfeitures, court costs and reasonable

attorneys' fees, judgments, and any other costs, fees and expenses resulting from Defendant's breaches and defaults.

11.    RFC therefore brings this action for indemnification for losses RFC has suffered due to Defendant's conduct.

### PARTIES

12.    Plaintiff Residential Funding Company, LLC, f/k/a Residential Funding Corporation, is a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota.

13.    Defendant HSBC Mortgage Corp. (USA) is a Delaware corporation with its principal place of business at 2929 Walden Ave, Depew, NY 14043.

### JURISDICTION AND VENUE

14.    This Court has personal jurisdiction over Defendant because Defendant transacted business in Minnesota and committed acts in Minnesota causing injury to RFC

15.    Venue is proper in this Court pursuant to Minn. Stat. § 542.09 because the cause of action arose, in part, in Hennepin County, the agreements at issue were to be performed in part or entirely in Hennepin County, and the parties have contractually agreed that Minnesota state court is an appropriate venue.

### FACTUAL BACKGROUND

#### The Agreement Between RFC and Defendant

16.    RFC was an aggregator of residential mortgage loans and an issuer of mortgage-backed securities.

17.    As such, RFC acquired mortgage loans from "correspondent lenders," including Defendant.  As a correspondent lender, Defendant had the initial responsibility for collecting

3

information from the borrower, verifying its accuracy, and underwriting the loan. Defendant had primary responsibility for all aspects of the underwriting of the loan, and it was understood between the parties that RFC would generally *not* be re-underwriting the loan. It was the Defendant that actually closed the loans with the borrowers.

18.    Defendant contracted with RFC to sell already-closed loans to RFC pursuant to the requirements set forth in the Agreement.

19.    As Defendant was well aware, once the loans were sold to RFC, RFC pooled groups of loans with similar characteristics, and the pool of loans would be sold into a special-purpose securitization Trust. The pool of loans formed the collateral underlying the Trust's mortgage-backed securities, which were in turn sold to investors.

20.    RFC also sold pools of loans to whole loan investors.

21.    Defendant knew of RFC's intention to securitize and/or sell the loans. Specifically, Defendant acknowledged, in the Client Guide, that it "recognize[d] that it is [RFC's] intent to securitize some or all of the Loans sold to [RFC]," and agreed to provide RFC with "all such information ... as may be reasonably requested by [RFC] for inclusion in a prospectus or private placement memorandum published in connection with such securitization," including all information necessary to comply with the disclosures required by Regulation AB (governing asset-backed securities) and other applicable federal securities laws. (See Client Guide at A202(II); 206(D).)

22.    Over the course of the parties' relationship, RFC acquired at least $ 1 billion worth of residential mortgage loans from Defendant pursuant to the Agreement.

23.    Pursuant to the Agreement, Defendant made a number of representations and warranties with respect to the loans, including, but not limited to, the following:

a. Defendant's "origination and servicing of the Loans have been legal, proper, prudent and customary and have conformed to the highest standards of the residential mortgage origination and servicing business." (Client Guide A201(K).)

b. Defendant "will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding [Defendant], the Loan, the Mortgaged Property or the Mortgagor of which [Defendant] has knowledge, which ... may materially affect [Defendant], the Loan, the Mortgaged Property or the Mortgagor." (Client Guide A201(M).)

c. "All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts. All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file." (Client Guide A202(A).)

d. "All Loan Documents, Funding Documents and Final Documents are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide," and "[a]ll originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate." (Client Guide A202(D).)

e. "All Loan Documents, Funding Documents and Final Documents and all other documents describing or otherwise relating thereto are in compliance with all local and State laws, regulations and orders." (Client Guide A202(D).)

f. "There is no default, breach, violation or event of acceleration existing under any Note or Security Instrument transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by [Defendant] or any other entity involved in originating or servicing the Loan." (Client Guide A202(G).)

g. "[E]ach Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations, including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act. This warranty is made by [Defendant] with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the [Defendant] or any other entity." (Client Guide A202(I).)

h. "No Loan is a ... "loan considered a 'high-cost,' covered, 'high-risk,' 'predatory' or any other similar designation under any State or local law in effect at the time of the closing of the loan if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees." (Client Guide A202(J)(1)(d).)

i. "[N]o circumstances exist involving the Loan Documents, the Mortgaged Premises or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan." (Client Guide A202(Q).)

j. "The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide." (Client Guide A202(T).)

k. "For each Loan for which an appraisal is required or obtained under this Client Guide, the appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide." (Client Guide A202(T).)

l. "For each Loan, as of the Funding Date, the market Value of the Mortgaged Premises is at least equal to the appraised value stated on the Loan appraisal, or if an Automated Valuation Model (AVM) is permitted, the Value on the AVM, except to the extent that the market Value of the Mortgaged Premises is lower ... due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the [Defendant] has actual knowledge of reasonable grounds to suspect." (Client Guide A202(T).)

m. "No fraud or misrepresentation by the Borrower or by the [Defendant], broker, correspondent, appraiser or any independent contractor retained by the [Defendant], broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate." (Client Guide A202(KK).)

24.    RFC relied on these representations and warranties in acquiring the loans, and their presence was a material consideration in RFC's decision to acquire the mortgage loans from Defendant.

25.    Pursuant to the Client Guide, Defendant's failure to comply with its representations and warranties or any of the other requirements, terms or conditions of the Client

Guide constitutes an "Event of Default," as does its failure to provide RFC with true, accurate and complete information in a timely manner. (See Client Guide A208.)

26.     Similarly, it is an "Event of Default" if a "[b]orrower or any other person or entity involved in the loan transaction or its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with" the loan transaction, regardless of whether Defendant knew of the misrepresentation or incorrect information. (See Client Guide A208.)

27.     The Client Guide further specified the remedies available to RFC in case of an Event of Default, including a breach of any loan-level representation or warranty. The available remedies included repurchase of the defective loan, substitution of another loan for the defective one, or indemnification against losses resulting from such breaches.

28.     The repurchase provision requires Defendant to compensate RFC for defective loans according to a formula specified in the Client Guide that is based on the original principal balance of the loan. Where repurchase is not feasible, Defendant is nonetheless contractually obligated to pay all losses, costs and expenses incurred by RFC and/or the loan's servicer as a result of an Event of Default. (Client Guide A210.) Moreover, Defendant expressly agreed that RFC was permitted to exercise any remedy "allowed by law or in equity" in connection with such Events of Default. (Client Guide A209.)

29.     Defendant also expressly agreed to broad indemnification provisions, which provide as follows:

> [Defendant] shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses ... includ[ing], without limitation, liabilities arising from (i) any act or failure to act, (ii) any

7

breach of warranty, obligation or representation contained in the Client
Guide, (iii) any claim, demand, defense or assertion against or involving
GMAC-RFC based on or resulting from such breach, (iv) any breach of
any representation, warranty or obligation made by GMAC-RFC in
reliance upon any warranty, obligation or representation made by
[Defendant] contained by the Client Contract and (v) any untrue statement
of a material fact, omission to state a material fact, or false or misleading
information provided by the [Defendant] in information required under
Regulation AB or any successor regulation.

In addition, [Defendant] shall indemnify GMAC-RFC against any and all
losses, damages, penalties, fines, forfeitures, judgments, and any other
costs, fees and expenses (including court costs and reasonable attorneys'
fees) incurred by GMAC-RFC in connection with any litigation or
governmental proceeding that alleges any violation of local, State or
federal law by [Defendant], or any of its agents, or any originator or
broker in connection with the origination or servicing of a Loan.

(Client Guide A212.) The Client Guide also entitles RFC to recover all court costs, attorneys'

fees and any other costs, fees and expenses incurred by RFC in enforcing the Agreement or

Client Guide.

**The Performance of Defendant's Loans and the Consequences for RFC**

30.    RFC generally was not in the business of holding loans on its books. The loans it

acquired from Defendant and other correspondent lenders were sold, either into residential

mortgage-backed securitization ("RMBS") trusts that issued certificates to outside investors, or

in "whole loan" portfolios to other mortgage companies and banks.

31.    The loans Defendant sold RFC were eventually included in more than 90 RMBS

Trusts. When RFC sold the loans, it passed on a more limited set of representations and

warranties to the Trusts, and, as required by SEC regulations, disclosed pertinent information

about the loans to investors in its RMBS. In making those representations and warranties, RFC

relied on information provided to it by Defendant and other correspondent lenders. That

information in many cases violated Defendant's representations and warranties to RFC.

8

32.    Over time, many of the loans sold to RFC by Defendant defaulted or became seriously delinquent.

33.    Internal reviews conducted by RFC after the loans were acquired from Defendant determined that many of the loans sold to RFC by Defendant violated the Client Guide and/or other representations or warranties made by Defendant, resulting in an Event of Default under the Agreement.

34.    Upon information and belief, the types of defects varied, but included owner occupancy fraud, appraisal fraud or inaccuracies, undisclosed debt, failure to comply with applicable state and federal laws, and missing or inaccurate documents, among others.

35.    Indeed, as part of its own analysis of the claims later asserted against it, RFC retained its own expert, who concluded that approximately 43.5% of the loans he reviewed were materially defective in one or more ways, and that the likely exposure to RFC and its affiliates from defective correspondent loans exceeded $7 billion. These loans included loans sold to RFC by Defendant.

36.    Beginning in 2008 and continuing until RFC filed for bankruptcy protection on May 14, 2012, RFC faced a growing number of claims and lawsuits stemming from the defective loans sold to it by Defendant and others.

37.    RFC had always received a certain number of repurchase demands, primarily from whole loan investors.

38.    However, in early 2008, MBIA Insurance Corp., a bond insurer that issued insurance policies guaranteeing the performance of certain mortgage-backed securities issued by RFC, began for the first time questioning the quality of large numbers of loans in the securitizations it had insured.

9

39.    MBIA hired a team to begin reviewing loan files, and in May 2008, based on the *less-stringent* representations and warranties RFC had made to MBIA, demanded that RFC repurchase over 2,000 allegedly defective loans.

40.    Although RFC aggressively defended the claims made by MBIA wherever possible, RFC was forced to concede that, even on the basis of representations and warranties that were less stringent than those Defendant made to RFC, RFC was obligated to repurchase at least 24% of the loans MBIA claimed were defective. MBIA continued its review and continued to find thousands of defective loans, ultimately resulting in protracted and costly litigation, as described below.

41.    Similar repurchase demands were made by other bond insurers, including FGIC, FSA/Assured, Ambac and Syncora.

42.    In 2012, Deutsche Bank, a Trustee of numerous RMBS issued by RFC, for the first time made a repurchase demand to RFC. Deutsche likewise alleged that the loans were defective in numerous ways.

43.    Beginning in October 2008, RFC was sued in literally dozens of lawsuits stemming from allegedly defective mortgage loans, including those sold to it by Defendant.

44.    The first of these lawsuits was filed by bond insurer MBIA in October 2008. The MBIA lawsuit covered five RFC second-lien securitizations that included thousands of mortgage loans. For the first time, RFC learned that MBIA's analysis had concluded that over 80% of the loans in the pools it insured were defective.

45.    The MBIA lawsuit was followed shortly by a class action suit filed by the New Jersey Carpenters pension funds.

46.     The New Jersey Carpenters' lawsuit purported to cover 59 mortgage-backed securities offerings issued through RFC's RALI shelf in 2006 and 2007, which consisted of first-lien Alt-A loans.

47.     The New Jersey Carpenters complaint alleged that 38% of the mortgage loans underlying the securitizations were in delinquency, default, foreclosure or repossession by the time New Jersey Carpenters filed their class action complaint, and that much of RFC's mortgage loan data "was inaccurate due to the inflated appraisal values, inaccurate LTV ratios, borrower income inflation, and the other facets of defective underwriting" described throughout the Complaint. (NJ Carpenters First Am. Compl. at ¶¶ 9, 110.) Of course, that data was provided to RFC—and represented and warranted to be accurate—by Defendant and other correspondent lenders.

48.     Numerous other lawsuits followed on through RFC's bankruptcy filing in 2012, including over fifteen lawsuits brought by private investors in its RMBS securities, and more than a dozen lawsuits brought by monoline insurers.

49.     All of these lawsuits alleged that the loans RFC sold into RMBS securitizations were defective in a variety of ways, including because of borrower fraud, missing or inaccurate documentation, fraudulent or inflated appraisals, misrepresentations concerning owner-occupancy, or failure to comply with applicable state and federal law.

50.     Collectively, these lawsuits involved more than a hundred RMBS securitizations, and a combined original principal balance of more than $100 billion.

51.     Across the dozens of securitizations involved in these lawsuits, Defendant was responsible for thousands of the loans.

11

52.    In May 2012, RFC filed for Chapter 11 bankruptcy protection in the Southern District of New York.

53.    In connection with the bankruptcy proceeding, literally hundreds of proofs of claim were filed by private securities investors, monoline insurers, whole loan purchasers, indenture trustees, and an array of co-defendants in the above-described loan-related litigation. These proofs of claim sought damages in the tens of billions of dollars, all stemming from allegedly defective mortgage loans, including those sold to RFC by Defendant.

54.    In addition, over time, RFC was forced to defend against, respond to, and in many instances accept repurchase demands made by purchasers of portfolios of whole loans from RFC. These whole loan purchasers included Countrywide, Wells Fargo, Indy Mac, Goldman Sachs and others, many of which also filed proofs of claim in the bankruptcy case seeking hundreds of thousands of dollars in recovery.

55.    These claims, lawsuits, and demands alleged, among other things, that the loans were defective, improperly underwritten, and breached representations and warranties made by RFC to investors, purchasers, and other contractual parties.    Those representations and warranties were, in most cases, identical to or less stringent than those received by RFC from Defendant, and were based on RFC's reliance on Defendant's (and other correspondent lenders') representations and warranties to RFC.

56.    After hard-fought negotiations and litigation, RFC and its affiliates ultimately settled many of these claims and lawsuits in the bankruptcy proceeding for allowed claims totaling billions of dollars. RFC continues to litigate other claims.

12

57.     Even given the fact that these creditors will only recover a small percentage of their claims under the Plan of Reorganization, RFC and its affiliates will still ultimately pay out hundreds of millions of dollars stemming from the defective loans.

58.     In addition to the bankruptcy settlements, before the bankruptcy, RFC had already repurchased millions of dollars worth of defective loans from its RMBS securitizations and from whole loan purchasers, either at the request of a bond insurer or trustee, or because RFC itself discovered a defect and affirmatively took steps to repurchase the loan.

59.     RFC continues to lose value on hundreds of loans still in its own portfolio.

60.     Finally, prior to and during the bankruptcy case, RFC paid millions of dollars in attorneys' fees to defend against, negotiate, and ultimately settle claims relating to allegedly defective loans.

61.     RFC is entitled to indemnification from Defendant pursuant to the Defendant's express indemnification obligations.

## COUNT ONE
## (INDEMNIFICATION)

62.     RFC realleges each and every allegation set forth in Paragraphs 1 through 61, above, as if fully rewritten herein.

63.     RFC has incurred substantial losses and damages arising from and relating to the mortgage loans, which Defendant sold to RFC.

64.     Defendant expressly agreed to indemnify RFC for the losses and damages, including attorneys' fees and costs, which RFC has incurred.

65.     Accordingly, RFC is entitled to indemnification in excess of $50,000 and in an amount to be proven at trial, and an award of attorneys' fees and costs.

13

WHEREFORE, RFC demands judgment in its favor and against Defendant as follows:

(A)     On Count One (Indemnification), damages sufficient to reimburse RFC's losses,

costs and expenses caused by Defendant's actions in excess of $75,000 and in an amount to be

proven at trial, and an award of attorneys' fees and costs; and

(B)     All such further relief, as the Court deems necessary or proper.

Dated:  December 16, 2013

Donald G. Heeman, #286023
Jessica J. Nelson, #0347358
FELHABER LARSON
220 South 6th Street, Suite 2200
Minneapolis, MN  55402-4504
Telephone:  (612) 339-6321
Facsimile:  (612) 335-0535
DHeeman@felhaber.com
JNelson@felhaber.com

*Attorneys for Plaintiff Residential Funding
Company, LLC*

Of Counsel:

Jeffrey A. Lipps
Jennifer A. L. Battle
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone:  (614) 365-4100
Facsimile:  (614) 365-9145
Lipps@CarpenterLipps.com
Battle@CarpenterLipps.com

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements and reasonable attorney

and witness fees may be awarded pursuant to Minn. Stat. §549.211, subdivision 3, to the party

against whom the allegations in this pleading are asserted.

Jessica J. Nelson

# Exhibit A

# CLIENT CONTRACT

Client Contract dated as of September 3, 2007 ("Contract") between Residential Funding Company, LLC, a Delaware limited liability company ("RFC"), GMAC Bank, a Utah industrial bank ("GMACB"), GMAC Mortgage, LLC, a Delaware limited liability company ("GMACM") (individually and collectively, RFC, GMACB and GMACM are "GMAC-RFC") and HSBC Mortgage Corporation (USA), a Delaware corporation ("Client").

Client desires to sell Loans to or service Loans for GMAC-RFC and GMAC-RFC desires to purchase Loans from Client, or GMAC-RFC desires to have Client service Loans for GMAC-RFC, in each case pursuant to the terms and conditions of this Contract and the applicable Guides. "Loans" means a residential mortgage loan sold or intended to be sold by the Client to GMAC-RFC, or a mortgage loan serviced or intended to be serviced by Client for GMAC-RFC and may be further described in the Guides.

Client and GMAC-RFC agree as follows:

1.  **Guides.** The GMAC-RFC Client Guide, as amended or replaced, ("Client Guide") applies to the Loans that are sold to RFC and to the sale of the Loans to RFC. The GMAC Bank Correspondent Manual, as amended or replaced ("Correspondent Manual") applies to the Loans that are sold to GMACB or GMACM and to the sale of Loans to GMACB or GMACM. If Client services Loans for GMAC-RFC the terms and conditions of the GMAC-RFC Servicer Guide as amended or replaced, ("Servicer Guide") apply. The Client Guide, the Correspondent Manual, and the Servicer Guide are each individually a "Guide" and together the "Guides". Client agrees to all of the terms and conditions of the applicable Guides, including the representations, warranties and covenants.

2.  **Commitment Letters.** GMAC-RFC may offer to enter into one or more commitment letters with Client, which may include forward commitments, pricing incentives, or other commitments ("Commitment Letters"). By executing and delivering a Commitment Letter, Client agrees to its terms and conditions.

3.  **Incorporation by Reference.** The Guides, Commitment Letters, and any related documents (together with this Contract, the "Program Documents") are incorporated by reference into this Contract as if fully set forth in it.

4.  **Amendments.** This Contract and Commitment Letters may be amended only by a writing signed by GMAC-RFC and Client. The Guides may be amended as set forth in the applicable Guide.

5.  **Governing Agreement.** This Contract's terms and conditions will control in the event of any direct conflict between this Contract and the applicable Guide. The Commitment Letter's terms and conditions will control in the event of any direct conflict between (i) this Contract and the Commitment Letter, or (ii) the applicable Guide and the Commitment Letter.

6.  **Directors' Resolution.** Together with the execution of this Contract, Client must deliver to GMAC-RFC (i) a certified resolution of its board of directors (or its equivalent if Client is an entity other than a corporation) authorizing the execution, delivery and performance of this Contract, (ii) other evidence of existence, good standing and authority as GMAC-RFC may require, and (iii) such other documents as GMAC-RFC may require.

7.  **GMAC-RFC's Remedies.** If a default or an event of default (however defined in one or more of the Program Documents) occurs, GMAC-RFC may exercise one or more of the remedies set forth in the applicable Guides.

8.  **Suspension and Termination.** GMAC-RFC may suspend or terminate the Program Documents, and Client's ability to sell Loans to, or to service Loans for GMAC-RFC as set forth in the applicable Guides.

9. **Relationship of the Parties.** As may be further described in the Guides, the relationship between Client and GMAC-RFC is limited to that of a seller on the part of Client and that of a buyer on the part of GMAC-RFC (with respect to Loan sales) and to that of a servicer on the part of Client (with respect to servicing by Client). Client is not GMAC-RFC's agent or partner and will not represent that it is acting as GMAC-RFC's agent or partner.

10. **Assignment.** Client cannot transfer or assign the Program Documents. GMAC-RFC may at any time, without notice to or the consent of Client, transfer or assign, in whole or in part, its rights under the Program Documents, with respect to any Commitment Letter or Loan, and the benefits under the Program Documents will inure to the benefit of GMAC-RFC's successors and assigns.

11. **Notices.** All notices, requests, demands or other communications under this Contract ("Notices") must conform to the requirements of the applicable Guide. Notices to GMAC-RFC must be directed to the address for Notice set forth in the Guides. Notices to Client will be addressed as follows (or at such other address as may be designated by Client in a Notice to GMAC-RFC):

| | |
|---|---|
| Client Name: | HSBC Mortgage Corporation (USA) |
| Client Address | 2929 Walden Ave. |
| | Depew NY 14043 |
| Attention: | Edward Baker |
| Facsimile Number: | 716-651-6178 |
| E-Mail: | Edward.Baker@us.hsbc.com |

12. **Governing Law.** The Program Documents are governed by the laws of the State of Minnesota, without reference to its principles of conflicts of laws.

13. **Jurisdiction and Venue.** At the sole option of GMAC-RFC, the Program Documents shall be enforced in any state or federal court within the State of Minnesota. Client consents to the jurisdiction and venue of those courts, and waives any objection to the jurisdiction or venue of any of those courts, including the objection that venue in those courts is not convenient. Any such suit, action or proceeding may be commenced and instituted by service of process upon Client by first class registered or certified mail, return receipt requested, addressed to Client at its address provided in paragraph 11, above. Client's consent and agreement under this section does not affect GMAC-RFC's right to accomplish service of process in any other manner permitted by law or to commence legal proceedings or otherwise proceed against Client in any other jurisdiction or court. In the event Client commences any action in another jurisdiction or venue under any theory arising directly or indirectly from the relationship created by the Program Documents, GMAC-RFC at its option may have the case transferred to a state or federal court within the State of Minnesota or, if a transfer cannot be accomplished under applicable law, may have Client's action dismissed without prejudice.

14. **Waiver of Jury Trial.** Client and GMAC-RFC each promise and agree not to elect a trial by jury of any issue triable of right by a jury, and fully waive any right to trial by jury to the extent that any such right now exists or arises after the date of this Contract. This waiver of the right to trial by jury is separately given, knowingly and voluntarily, by Client and GMAC-RFC and is intended to encompass each instance and each issue for which the right to trial by jury would otherwise apply. GMAC-RFC and Client are each authorized and directed to submit the Program Documents to any court having jurisdiction over the subject matter and the parties to this Contract as conclusive evidence of this waiver of the right to trial by jury. Further, Client and GMAC-RFC each certify that no representative or agent of the other party's counsel, has represented, expressly or otherwise, to any of its representatives or agents that the other party will not seek to enforce the waiver of right to trial by jury.

15. **Waiver of Punitive, Consequential, Special or Indirect Damages.** Client and GMAC-RFC each waive any right it may have to seek punitive, consequential, special or indirect damages from the other or any of the other's affiliates, officers, directors, employees or agents with respect to any and all issues presented in any action, proceeding, claim or counterclaim brought by either party against the other party or any of the other party's affiliates officers, directors, employees or agents with respect to any matter arising out of or in connection with the Program Documents. This waiver of the right to seek punitive, consequential, special or indirect damages is knowingly and voluntarily given by Client and GMAC-RFC, and is intended to encompass each instance and each issue for which the right to seek punitive, consequential, special or indirect damages would otherwise apply. Client and GMAC-RFC are each authorized and directed to submit this Contract to any court having jurisdiction over the subject matter and the parties to this Contract as conclusive evidence of this waiver of the right to seek punitive, consequential, special or indirect damages.

16. **Force Majeure.** Notwithstanding Client's satisfaction of the conditions set forth in this Contract or the existence of an outstanding commitment by GMAC-RFC to purchase Loans, GMAC-RFC has no obligation to purchase any Loan if GMAC-RFC is prevented from obtaining the funds necessary to purchase Loans as a result of any fire or other casualty, failure of power, strike, lockout or other labor trouble, banking moratorium, embargo, sabotage, confiscation, condemnation, riot, civil disturbance, insurrection, act of terrorism, war or other activity of armed forces, act of God or other similar reason.

17. **Entire Agreement.** This Contract (including all documents incorporated by reference) represents the final agreement between the parties with respect to its subject matter, may not be contradicted by evidence of prior or contemporaneous oral or written agreements among the parties and supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether written or oral, with respect to the transactions contemplated by this Contract, except that any existing Commitment Letters are not affected.

18. **Defined Terms; General Rules of Interpretation.** Defined terms may be used in the singular or plural, as the context requires. Unless the context in which it is used otherwise clearly requires, the word "or" has the inclusive meaning represented by the phrase "and/or". The words "include," "includes" and "including" are deemed to be followed by the phrase "without limitation".

19. **Headings for Convenience.** All captions or paragraph headings in the Program Documents are for convenience only and in no way define, limit or describe the scope or intent of any provision of the Program Documents.

20. **Severability.** If any provision of the Program Documents is declared to be illegal or unenforceable in any respect, that provision is null and void and of no force and effect to the extent of the illegality or unenforceability, and does not affect the validity or enforceability of any other provision of the Program Documents.

21. **Counterparts.** This Contract may be executed in any number of counterparts, each of which will be deemed an original, but all of which together constitute but one and the same instrument.

22. **Several Liabilities.** The liabilities of RFC, GMACB, and GMACM under this Contract are several, and not joint.

23. **Delivery Agent.** RFC, GMACB and GMACM may all act as the delivery agents for each other in connection with the purchase of Loans.

# Amendment to GMAC-RFC Client Contract and GMAC Bank Correspondent Manual

Amendment dated **10/3**, 2007, to the Client Contract between GMAC Bank and certain of its affiliates, including without limitation, GMAC Mortgage, LLC and Residential Funding Company, LLC (individually and collectively "GMACB") and HSBC Mortgage Corporation (USA) ("Correspondent") dated **10/3**, 2007 ("Client Contract").

1.    All terms and conditions as set forth in the Client Contract and the GMAC-Bank Correspondent Manual (as amended, supplemented or replaced) shall remain in full force and effect unless specifically changed, altered or modified by this Amendment.

2.    This Amendment applies to those loans that are subject to the Dual Delivery Direct (the 3D Process) Addendum to Client Contract between GMAC Mortgage, LLC and Correspondent. When the word "Chapter" is used, it refers to a chapter in the GMACB Correspondent Manual.

3.    **Chapter I, subsection 4, Eligible Loan Requirements, is amended by deleting the following sentence:** *Any third party originated loans must close in the Correspondent's name.* **and replacing it with the following sentence:** *Any third party originated loans must close in Correspondent's name unless otherwise permitted by the Fannie Mae Selling Guide.*

4.    **Chapter I, subsection 7, Eligible Loan Requirements, regarding escrowing of funds is amended by adding the following sentence:** *Waiver of escrow is allowed if permitted by the Fannie Mae Selling Guide and according to the terms of the Fannie Mae Selling Guide.*

5.    **Chapter XI.a, Final Docs Mailing Information and Final Doc Transmittal form is amended by deleting the following sentence:** *The remaining final documents, listed below, for 1st liens and 2nd liens (including Home Equity Lines of Credit), referencing the loan #, must be sent within 120 days from funding to:* **and replacing it with the following sentence:** *The remaining final documents, listed below, for 1st liens and 2nd liens (including Home Equity Lines of Credit), referencing the loan #, must be sent within 180 days from funding to:*

6.    **Chapter XI.b, Correspondent Final Docs Closed Loan package is amended by deleting the following requirements:**

- *Title Insurance Policy*

- *Original Recorded Mortgage/Deed of Trust*

- *Original Recorded Assignment to MERS*

- *Original Recorded Intervening Assignments*

- *LGC (Loan Guaranty Certificate) VA Loans*

- *MIC (Mortgage Insurance Certificate) FHA Loans*

**And replacing it with the following requirements:**

- *Title Insurance Policy*

- *Copy of the Recorded Mortgage/Deed of Trust, with the original being maintained in an imaged format (original to be destroyed after it is imaged, and any original retained and*

K:\RFCCommon\LegalWLD\CUSTOMERS-DATABASE\HSBC Mortgage Corporation (USA)\GMACBANKSALES\Amendment to GMACB Correspondent Agreement and Manualv7.doc

*forwarded to GMACB upon GMACB's request only in those states where the original document is required in order to enforce a foreclosure)*

- *Copy of the Recorded Assignment to MERS with the original being maintained in an imaged format (original to be destroyed after it is imaged, and any original retained and forwarded to GMACB upon GMACB's request only in those states where the original document is required in order to enforce a foreclosure)*

- *Copy of the Recorded Intervening Assignments with the original being maintained in an imaged format (original to be destroyed after it is imaged, and any original retained and forwarded to GMACB upon GMACB's request only in those states where the original document is required in order to enforce a foreclosure)*

- **Chapter XII, subsection b, Pre-Qualification, is amended by deleting the following sentence**: *Maintain a Quality Control System that is acceptable to GMACB and have the ability to provide reports on loans sold to GMACB upon request.* **and replacing it with the following sentence**: *Maintain a Quality Control System that is acceptable to GMACB and have the ability to provide reports on loans sold to GMACB, which reports will be of a type either (i) normally produced on Correspondent's system, or (ii) capable of being produced on Correspondent's system, in either case, which reports will provide information on loans on which Correspondent has done a QC investigation, and which include loans sold to GMACB. Correspondent agrees to provide the above-described reports upon GMACB's request.*

7. **Chapter XII, subsection f, Maintaining Eligibility, subparagraph 3, under the heading Annual and Quarterly Information, is amended by deleting the following sentence:** *A Seller must also submit copies of all reports submitted to state licensing authorities and the results of any investigations by any state auditors.* **and replacing it with the following sentence:** *Upon request, a Correspondent must also submit copies of all reports submitted to state licensing authorities and the results of any investigations by any state auditor.*

8. **Chapter XII, subsection h, Quality Control is amended by deleting the following sentence:** *The ability to provide GMACB a copy of Correspondent's quality control summary report, as provided to the Correspondent's senior management , on a quarterly basis.,* **and replacing it with the following sentence:** *The ability to provide GMACB a copy of Correspondent's quality control summary report quarterly upon request as provided to the Correspondent's senior management.,*

9. **Chapter XII, subsection l, Delinquency Tracking, is amended by deleting subsection l in its entirety and replacing it with the following subsection:** *GMACB will track monthly delinquencies of each Correspondent. In addition, GMACB will require Correspondent to include in its quality control review: all Loans sold to GMACB in which a sixty (60) day delinquency occurred within the first four (4) months of the Loan.*

10. **Chapter XII, subsection m, Quality Control Reports and Notice to GMACB is amended by deleting the following sentence:** *General results as well as variances discovered during any phase of the quality control audit must be reported to the Correspondent's senior management and to GMACB on at least a quarterly basis.* **and replacing it with the following sentence:** *General results as well as variances discovered during any phase of the quality control audit must be reported to the Correspondent's senior management and to GMACB quarterly upon request.*

11. **Chapter XII., subsection n, entitled Loan Audit, is deleted in its entirety and replaced with the following subsection:** *Correspondent will cooperate with GMACB in auditing a loan sold to GMACB by Correspondent by sending to GMACB upon request, all to the information Correspondent has in its possession concerning that loan.*

12. **Chapter XIII, subsection a, entitled Corporate Covenants, Representations and Warranties, subparagraph 12, is amended by deleting the following sentence:** *At least every 30 days, Correspondent/Seller shall forward to GMACM/GMACB a comprehensive list and description of material*

K:\RFCCommon\LegalWLD\CUSTOMERS-DATABASE\HSBC Mortgage Corporation (USA)\GMACBANKSALES\Amendment to GMACB Correspondent Agreement and Manual v7.doc

*litigation in which Correspondent/Seller is named as a party.* and replacing it with the following sentence: *Upon request, Correspondent shall forward to GMACB a comprehensive list and description of all material litigation in which Correspondent is named as a party.*

*13.*    Chapter XIII, subsection b, subparagraph 30 regarding delegated underwriting authority is deleted in its entirety and replaced with the following sentences:    *Correspondent is authorized as a delegated underwriter. However, all loans in excess of $650,000 must be underwritten by GMACB.*

*14.*    Chapter XIII, subsection b, subparagraph 21 regarding TPOs is deleted in its entirety and replaced with the following sentences:    *GMACB hereby approves Correspondent to sell loans originated by TPOs to GMACB, so long as Correspondent has in place TPO qualification criteria and approval procedures for selection of TPOs, and so long as each TPO has been approved in accordance with Correspondent's qualification criteria and approval procedures. Correspondent agrees that the representations, warranties, covenants and other requirements regarding loans apply to loans originated by a TPO as if such loans had been originated by Correspondent.*

*15.*    Chapter XIII, subsection b, subparagraphs 35 and 38 (regarding compliance with GMACB requirements,) and 39 (regarding, among other things, first lien loans and bank and HUD approval) are hereby deleted.

*16.*    Chapter XII, subsection b, subparagraph 40, regarding non-solicitation, is deleted and replaced with the following: *(a) Correspondent shall not solicit any Borrower of a Loan for the sale or renewal of insurance with respect to such Loans sold to GMACB; (b) the Correspondent during the remaining term of any of the loans sold to GMACG shall not take any action to solicit the refinancing or prepayment of the Loans by the Borrowers, in whole or in part with out the written consent of GMACB, and (d) the forgoing prohibition on solicitation does not include general advertisements directed to the public at large and contained in newspapers or other broadcast media.*

*17.*    Chapter XIII. c, entitled Correspondent's Covenants, Warranties, and Representations with respect to TPOs, is amended by deleting subparagraph 4 and replacing it with:  *Correspondent represents and warrants that all TPOs of loans sold by Correspondent to GMACB have in full force and effect and will continue to maintain a fidelity bond and an errors and omissions policy or policies or mortgage banker's blanket bond covering all its activities hereunder.  The foregoing sentence does not apply to brokers who are closing loans in HSBC's name, and/or tablefunders closing in their own name.*

*18.*    Chapter XIII. Subsection b, entitled Loan Warranties and Representations, subparagraph 33 regarding bankruptcies and foreclosures, is deleted in its entirety and replaced with the following: *There are no bankruptcies pending against any Borrower or foreclosures pending against the Mortgaged Property.*

*19.*    Chapter III.  Regarding pair off fees is amended by adding the word "actual" after the word "such" in the last sentence of the last paragraph, and by deleting the words "and other damages".

*20.*    Chapter XII.p, regarding the requirement of a secretary's certificate is hereby deleted.

*21.*    Paragraph 15 of the Client Contract, entitled Waiver of Punitive, Consequential, Special or Indirect Damages is modified by adding the word *("Action")* after the word *"counterclaim"* in the second sentence and by adding the following sentence at the end of the paragraph: *Provided, however, that neither party shall be entitled to legal fees in any of the above described actions, proceedings, claims or counterclaims.*

*22.*    Paragraph 16 of the Client Contract, entitled Force Majeure, is hereby modified by adding the following sentence at the end of the paragraph: *However, once the event preventing GMAC-RFC from obtaining the funds necessary to purchase the loans is resolved, GMAC-RFC shall purchase the loans at the previously-committed purchase price.*

K:\RFCCommon\LegalWLD\CUSTOMERS-DATABASE\HSBC Mortgage Corporation (USA)\GMACBANKSALES\Amendment to GMACB Correspondent Agreement and Manualv7.doc

23.    Any capitalized term used in this Amendment that is not otherwise defined herein shall have the meaning set forth in the Client Contract.

24.    Paragraph 17 of the Client Contract, entitled Entire Agreement is hereby modified by adding the following sentence at the end of the paragraph: *Notwithstanding the foregoing, the Dual Delivery Direct Addendum between the parties supersedes this Amendment and the Client Contract in the event of any conflict.*

25.    All references herein to the GMACB Correspondent Manual  are references to the GMACB Manual in effect as of the date hereof.

IN WITNESS WHEREOF, Client's and GMACB's duly authorized officers have executed this Amendment as of the date first written above.

CLIENT:

HSBC Mortgage Corporation (USA)                    GMACB

By: _Kelly M. Rummings_                    By: _Deanna Keith_

Name: _Kelly M Rummings_                    Name: _Deanna Keith_
         *(Typed or Printed)*                              *(Typed or Printed)*

Title: _Vice President_                    Title: _Vice President_

# LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS:

THAT __HSBC Mortgage Corporation (USA)__, A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF __Delaware__, AND HAVING ITS PRINCIPAL OFFICE LOCATED AT __2929 Walden Ave__, IN THE CITY OF __Depew   14043__, STATE OF __NY__, HATH MADE, CONSTITUTED AND APPOINTED, AND DOES BY THESE PRESENT MAKE, CONSTITUTE AND APPOINT GMAC BANK, A UTAH INDUSTRIAL BANK, ITS AFFILIATES, SUCCESSORS AND ASSIGNS ("GMACR") , OR DOES MAKE, CONSTITUTE AND APPOINT A SUBSIDIARY OF GMAC RESIDENTIAL HOLDING COMPANY, LLC, ITS TRUE AND LAWFUL ATTORNEY-IN-FACT, WITH FULL POWER AND AUTHORITY HEREBY CONFERRED IN ITS NAME, PLACE AND STEAD AND FOR ITS USE AND BENEFIT, TO MAKE, SIGN, EXECUTE, ACKNOWLEDGE, DELIVER, FILE FOR RECORD, AND RECORD ANY INSTRUMENT ON ITS BEHALF AND TO PERFORM SUCH OTHER ACT OR ACTS AS MAY BE CUSTOMARILY AND REASONABLY NECESSARY AND APPROPRIATE TO EFFECTUATE THE FOLLOWING ENUMERATED TRANSACTIONS IN RESPECT OF ANY OF THE MORTGAGE LOANS PURCHASED BY GMACR ("LOANS"), AND ANY MORTGAGES OR DEEDS OF TRUST (THE "MORTGAGE" AND THE "DEED OF TRUST", RESPECTIVELY) FOR WHICH THE RELATED SERVICING RIGHTS ARE TO BE SOLD AND TRANSFERRED BY THE UNDERSIGNED TO GMACR OR TO A SUBSIDIARY OF GMAC ~~PUR~~ Client RESIDENTIAL HOLDING COMPANY, LLC PURSUANT TO THE ~~CORRESPONDENT AGREEMENT~~ Contract FOR PURCHASE AND SALE OF RESIDENTIAL MORTGAGE LOANS DATED AS OF __October 3__, 2009 BY AND BETWEEN __HSBC__ AND GMACR (THE "AGREEMENT").

THIS APPOINTMENT SHALL APPLY TO THE FOLLOWING ENUMERATED TRANSACTIONS ONLY:

1.  THE MODIFICATION OR RE-RECORDING OF ANYLOAN DOCUMENTS, INCLUDING NOTE, MORTGAGE OR DEED OF TRUST (COLLECTIVELY, THE "LOAN DOCUMENTS"), WHERE SAID MODIFICATION OR RE-RECORDING IS FOR THE PURPOSE OF CORRECTING ANY OF THE LOAN DOCUMENTS, INCLUDING THE NOTE, MORTGAGE OR DEED OF TRUST TO CONFORM SAME TO THE ORIGINAL INTENT OF THE PARTIES THERETO OR TO CORRECT TITLE ERRORS DISCOVERED AFTER SUCH TITLE INSURANCE WAS ISSUED AND SAID MODIFICATION OR RE-RECORDING, IN EITHER INSTANCE, DOES NOT ADVERSELY AFFECT THE LIEN OF THE MORTGAGE OR DEED OF TRUST AS INSURED.

2.  THE SUBORDINATION OF THE LIEN OF A MORTGAGE OR DEED OF TRUST TO AN EASEMENT IN FAVOR OF A PUBLIC UTILITY INVESTOR OR A GOVERNMENTAL AGENCY OR UNIT WITH POWERS OF EMINENT DOMAIN; THIS SECTION, SHALL INCLUDE THE EXECUTION OF PARTIAL SATISFACTION/RELEASES, PARTIAL RECONVEYANCES OR THE EXECUTION OF REQUESTS TO TRUSTEES TO ACCOMPLISH SAME.

3.  WITH RESPECT TO A NOTE, ANY ENFORCING ANY RIGHTS GRANTED UNDER SUCH NOTE, AND WITH RESPECT TO A MORTGAGE OR DEED OF TRUST, THE FORECLOSURE, COMPLETION OF JUDICIAL OR NON-JUDICIAL FORECLOSURE OR TERMINATION, CANCELLATION OR RESCISSION OF ANY SUCH FORECLOSURE, INCLUDING, WITHOUT LIMITATION, ANY AND ALL OF THE FOLLOWING ACTS: (i) THE SUBSTITUTION OF TRUSTEE(S) SERVING UNDER A DEED OF TRUST IN ACCORDANCE WITH STATE LAW AND THE DEED OF TRUST; (ii) STATEMENTS OF BREACH OR NON-PERFORMANCE; (III) NOTICES OF DEFAULT; (iv) NOTICES OF SALES; (v) CANCELLATIONS/RESCISSIONS OF NOTICES OF DEFAULT AND/OR NOTICES OF SALE; (vi) THE TAKING OF A DEED IN LIEU OF FORECLOSURE; (vii) THE ACCEPTANCE OF A SHORT PAYOFF IN LIEU OF FORECLOSURE, AND (viii) SUCH OTHER DOCUMENTS AS MAY BE NECESSARY UNDER THE TERMS OF THE MORTGAGE, DEED OF TRUST OR STATE LAW TO EXPEDITIOUSLY COMPLETE SAID TRANSACTIONS.

# Exhibit B

# *Client Guide*

# **GMAC RFC**

**Version 1-06-G04**

**Effective December 11, 2006**

# GMAC-RFC

## Table of Contents

# Chapter 1, Introduction

| 100 | GMAC-RFC Objective | 1.1 |
| 101 | Client Contractual Obligations | 1.1 |
| 102 | Single Contract | 1.1 |
| 103 | Relationship of GMAC-RFC and Client | 1.2 |
| 104 | Client ID Number | 1.2 |
| 105 | GMAC-RFC Loan Number | 1.2 |
| 106 | Servicer Contractual Obligations | 1.2 |
| 107 | Notice | 1.3 |
| 108 | Hours of Operation and Holidays | 1.3 |
| 109 | Client Guide Organization | 1.3 |
| 110 | Headings, Use of Capitalization and Definitions | 1.5 |
| 111 | Form and Exhibit Numbering | 1.5 |
| 112 | Client Guide Online | 1.5 |
| 113 | General Rules of Interpretation | 1.5 |
| 114 | Use of Client's Name | 1.6 |
| 115 | Use of GMAC-RFC Name and Service Marks | 1.7 |
| 116 | Assetinfo | 1.7 |

# Chapter 2, Client Eligibility

| 200 | Client Eligibility | 2.1 |
| 201 | Eligibility Standards | 2.2 |
| 202 | Client Contract | 2.4 |
| 203 | Client Underwriting Responsibilities | 2.4 |
| 204 | Continuing Client Obligations | 2.4 |
| 205 | Disqualification, Suspension or Inactivation | 2.4 |
| 206 | Reporting Requirements | 2.6 |
| 207 | Audits and Inspections | 2.8 |
| 208 | Disclosure of Information | 2.8 |
| 209 | Maintenance of Records | 2.9 |
| 210 | Quality Control | 2.9 |

©2006 Residential Funding Company, LLC (f/k/a Residential Funding Corporation). All rights reserved.

# GMAC-RFC

---

# Chapter 2A, Representations, Warranties and Covenants

A200 Client Representations Warranties and Covenants .................2A.1
A201 Specific Representations, Warranties and Covenants
Concerning Client .................................................2A.2
A202 Specific Representations, Warranties and Covenants
Concerning Individual Loans ......................................2A.5
A203 Additional Client Representations, Warranties and Covenants
for the Home Equity Program ......................................2A.15
A204 Non-Standard Documents ...........................................2A.17
A205 Proof of Compliance ..............................................2A.18
A206 Integrity of Information .........................................2A.19
A207 Third-Party Originators ..........................................2A.19
A208 Events of Default ................................................2A.20
A209 Remedies of GMAC-RFC .............................................2A.21
A210 Repurchase ......................................................2A.21
A211 Disqualification Suspension or Inactivation ......................2A.27
A212 Indemnification .................................................2A.28
A213 Right of Set-Off ................................................2A.29
A214 Merger or Consolidation of Client ...............................2A.29
A215 Notification of Changes in Client Status ........................2A.29
A216 Premium Recapture ...............................................2A.30

---

# Chapter 3, Loan Eligibility

300 Descriptions of Underlying Chapters ..............................3.1
301 Loan Seasoning ..................................................3.1
302 Required Signatures .............................................3.2

**GMAC-RFC**

# Chapter 3A Occupancy, Borrower and Ownership Status

A300  Occupancy Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.1
A301  Borrower Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.2
A302  Borrower Citizenship Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.2
A303  Other Borrower Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.5
A304  Multiple Loans to One Borrower . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.6
A305  Ownership Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.6

# Chapter 3B, Transactions

B300  Arm's Length and Non-Arm's Length Transactions . . . . . . . . . . . . . . . .3B.1
B301  Transaction Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3B.1

# Chapter 3C, Financing

C300  Determining Amount to Be Financed . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.1
C301  Calculating Loan-to-Value Ratios . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.1
C302  Secondary or Subordinate Financing . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.4
C303  Sales Concessions or Home-seller Subsidy . . . . . . . . . . . . . . . . . . . . . .3C.5
C304  Escrow Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.5
C305  Temporary Buydowns . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.7
C306  West Virginia Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.8
C307  Texas Equity Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.9
C308  Current Payment History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.12

Page 4
12/11/06
Client Guide
Table of Contents

**GMAC-RFC**

# Chapter 3D, Property Types and Considerations

D300  Property Issues ...........................................3D.1
D301  Eligible Property Types ...................................3D.1
D302  Ineligible Property Types ................................3D.5
D303  Project Requirements for Warrantable Condominiums and PUDs .......3D.6

# Chapter 3E, Loan Documents and Notes

E300  Note Requirements ........................................3E.1
E301  Loan Documents ...........................................3E.3

# Chapter 3F, Insurance and Survey Requirements

F300  Insurance Requirements ...................................3F.1
F301  Hazard Insurance .........................................3F.1
F302  Mortgage Insurance .......................................3F.3
F303  Earthquake Insurance .....................................3F.7
F304  Flood Certification ......................................3F.7
F305  Flood Insurance ..........................................3F.7
F306  Condominium Insurance ....................................3F.8
F307  PUD Insurance ...........................................3F.11
F308  Title Insurance .........................................3F.12
F309  Title Search/Insurance for Second Mortgage Programs .............3F.16
F310  Survey Requirements .....................................3F.16

# Chapter 3G, Prepayment Penalties

G300  Prepayment ...............................................3G.1
G301  Prepayment Penalty .......................................3G.1
G302  Program Prepayment Pricing Requirements ..................3G.3
G303  Note Requirements ........................................3G.4
G304  Compliance with Applicable Laws ..........................3G.4

**GMAC-RFC**

# Chapter 4, Underwriting

| | | |
|---|---|---|
| 400 | Description of Underlying Chapters | 4.1 |
| 401 | Client Underwriting Responsibility | 4.1 |
| 402 | GMAC-RFC Underwriting Review | 4.2 |
| 403 | Loan Application Analysis | 4.2 |
| 404 | Electronic Documentation Standards | 4.2 |

# Chapter 4A, Credit

| | | |
|---|---|---|
| A400 | Credit Report Requirements | 4A.1 |
| A401 | Credit Score Requirements | 4A.1 |
| A402 | Selecting Credit Score | 4A.2 |
| A403 | Minimum Credit History and Trade Line Requirements | 4A.2 |
| A404 | Credit Evaluation Overview | 4A.3 |
| A405 | Credit Evaluation Components | 4A.4 |
| A406 | Upgrading the Credit Grade | 4A.11 |

# Chapter 4B, Liabilities and Debt Ratios

| | | |
|---|---|---|
| B400 | Qualifying Ratios—Payment | 4B.1 |
| B401 | Borrower's Liabilities | 4B.3 |
| B402 | Debt Payoff | 4B.4 |
| B403 | Co-Signed Debts | 4B.4 |
| B404 | Divorce Debts | 4B.4 |
| B405 | Business Debts | 4B.4 |
| B406 | Borrower Capacity | 4B.4 |
| B407 | Student Loans | 4B.4 |

# Chapter 4C, Cash to Close

| | | |
|---|---|---|
| C400 | Cash to Close | 4C.1 |
| C401 | Reserve Requirements | 4C.4 |

Page 6
12/11/06
Client Guide
Table of Contents

## GMAC-RFC

# Chapter 4D, Income Types

D400 Borrower Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4D.1
D401 Employment and Income Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4D.1
D402 Income Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4D.2
D403 Wage Earners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4D.2
D404 Self-Employed Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4D.3
D405 Fixed Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4D.4
D406 Rental Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4D.6
D407 Other Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4D.7
D408 Trailing or Relocating Co-Borrower . . . . . . . . . . . . . . . . . . . . . . . . . . . .4D.8

# Chapter 4E, Income Documentation

E400 Income Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4E.1
E401 Full Income Documentation Requirements . . . . . . . . . . . . . . . . . . . . . . .4E.2
E402 Lite Income Documentation Requirements . . . . . . . . . . . . . . . . . . . . . . .4E.5
E403 One Paystub Income Documentation Requirements . . . . . . . . . . . . . . . .4E.6
E404 Fast Income Documentation Requirements . . . . . . . . . . . . . . . . . . . . . . .4E.6
E405 Stated Income Documentation Requirements . . . . . . . . . . . . . . . . . . . .4E.10
E406 No Ratio Income Documentation Requirements . . . . . . . . . . . . . . . . . .4E.10
E407 Stated Income/Stated Asset Documentation Requirements . . . . . . . . . .4E.12
E408 No Income/No Asset Documentation Requirements . . . . . . . . . . . . . . . .4E.13
E409 No Doc Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4E.13

# Chapter 4F, Appraisal Requirements and Property Underwriting

F400 Collateral Property Underwriting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4F.1
F401 Appraiser Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4F.2
F402 Appraisal Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4F.2
F403 Appraisal Evaluation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4F.6
F404 Additional Review Considerations . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4F.15

## GMAC-RFC

# Chapter 4G, Electronic Services

G400  Overview and Incorporation of Terms of Use .....................4G.1
G401  Assetwise ...................................................4G.2
G402  Assetwise Compliance Engine .................................4G.5

# Chapter 5, Products

500   Product Descriptions .......................................5.1
501   Fixed-Rate Mortgages (FRM) .................................5.2
502   Adjustable Rate Mortgages (ARM) ............................5.8
503   Balloon Mortgages ........................................5.81
504   1st Lien Line of Credit ..................................5.83

# Chapter 6, Loan Programs

600   Loan Programs ..............................................6.1

# Chapter 6A, Jumbo A Loan Program

A600  Jumbo A Program ...........................................6A.1
A601  Eligibility Standards .....................................6A.1
A602  Stated Income Documentation ..............................6A.10
A603  EasyFi or Streamline Refinance ...........................6A.10

# Chapter 6B, Expanded Criteria Loan Program

B600  Expanded Criteria Program ................................6B.1
B601  Eligibility Standards ....................................6B.1
B602  Stated and No Ratio Income Documentation ................6B.10
B603  Stated Income/Stated Asset, No Income/No Asset, and
      No Doc Documentation ...................................6B.10
B604  Uninsured LTV ...........................................6B.12

**GMAC-RFC**

# Chapter 6C, Payment Option Loan Program

**C600  Payment Option Program** ........................................ 6C.1
**C601  Payment Option First Generation Eligibility Standards** ............... 6C.4
**C602  Payment Option Second Generation Eligibility Standards** ........... 6C.14
**C603  Stated Income Documentation** ............................... 6C.25
**C604  Stated Income/Stated Asset Documentation** .................... 6C.26

# Chapter 6D, Home Solution Loan Program

**D600  Home Solution Program** ..................................... 6D.1
**D601  Eligibility Standards** ....................................... 6D.1

# Chapter 6E, AlterNet Loan Program

**E600  AlterNet Program** .......................................... 6E.1
**E601  Eligibility Standards** ....................................... 6E.1
**E602  Interest Only Feature Eligibility Standards** ...................... 6E.12
**E603  80/20 Eligibility Standards** ................................. 6E.15

# Chapter 6F, Performance Loan Program

**F600  Performance Program** ....................................... 6F.1
**F601  Eligibility Standards** ....................................... 6F.1

# Chapter 6G, 1st Lien Line of Credit Loan Program

**G600  1st Lien Line of Credit Program** .............................. 6G.1
**G601  Eligibility Standards** ....................................... 6G.1
**G602  Supplemental 1st Lien Line of Credit Information** ................. 6G.8

**GMAC-RFC**

# Chapter 6H, Home Equity Loan Program

H600  Home Equity Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
H601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
H602  Supplemental Home Equity Information . . . . . . . . . . . . . . . . . . . . . . . . .6H.13
H603  Home Equity Program Goal Line Product Description . . . . . . . . . . . . . .6H.14
H604  Home Equity Program Goal Loan Description . . . . . . . . . . . . . . . . . . . . .6H.18

# Chapter 6I, 125 CLTV Loan Program

I600  125 CLTV Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
I601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
I602  Supplemental 125 CLTV Program Information . . . . . . . . . . . . . . . . . . . 6I.13

# Chapter 6J, Non-Standard Loan Program

J600  Non-Standard Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6J.1
J601  Ineligible Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6J.1

# Chapter 7, At-A-Glances

700  Program At-A-Glances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.1

**GMAC-RFC**

# Chapter 8, Servicing Released

| | | |
|---|---|---|
| 800 | Servicing Released | 8.1 |
| 801 | Program Overview | 8.1 |
| 802 | Designated Servicer | 8.2 |
| 803 | Contractual Obligations | 8.2 |
| 804 | Program Eligibility | 8.2 |
| 805 | Disqualification Suspension or Inactivation | 8.2 |
| 806 | Restrictions on Loan Eligibility | 8.3 |
| 807 | Record Maintenance | 8.3 |
| 808 | Final Documents | 8.3 |
| 809 | Disclosure of Information; Cooperation | 8.3 |
| 810 | Client Representations and Warranties; Events of Servicer Default Prior to Transfer | 8.4 |
| 811 | Specific Warranties and Covenants | 8.4 |
| 812 | Notification of Change in Servicer | 8.8 |
| 813 | Escrow Account for Postponed Improvements/Repairs | 8.9 |
| 814 | Interest on Escrows | 8.9 |
| 815 | Termination of Automatic Payment | 8.9 |
| 816 | Purchase of Servicing | 8.9 |
| 817 | Servicing Released Submission of Purchase | 8.9 |
| 818 | Required Servicing Documents | 8.10 |
| 819 | Sale Date and Effective Date of Transfer | 8.11 |
| 820 | Reconciliation by GMAC-RFC | 8.12 |
| 821 | Notification of Purchase | 8.15 |
| 822 | Monies Paid for Servicing Released | 8.15 |
| 823 | Monies Due Client | 8.16 |
| 824 | Monies Due Designated Servicer | 8.17 |
| 825 | Loans Paid in Full | 8.18 |
| 826 | Servicing Document Corrections | 8.18 |
| 827 | Bulk Servicing Acquisitions | 8.19 |
| 828 | Subservicing Election | 8.19 |

# Chapter 9, Commitment, Prior Approval, Delivery and Funding

| | | |
|---|---|---|
| 900 | Descriptions of Underlying Chapters | 9.1 |
| 901 | Written Communication | 9.1 |
| 902 | Assetinfo | 9.1 |

**GMAC-RFC**

# Chapter 9A, Commitments

A900  Commitment Defined .............................................9A.1
A901  Requesting a Commitment ......................................9A.2
A902  Commitment Confirmation .....................................9A.3
A903  Commitment Periods ...........................................9A.3
A904  Failure to Deliver or Over-Deliver .............................9A.4
A905  Extension and Buyout Fees ....................................9A.5

# Chapter 9B, Prior Underwriting Approval

B900  Prior Underwriting Submission—Delivery Requirements .............9B.1
B901  Required Documents for Prior Underwriting .....................9B.1
B902  Notification of Prior Underwriting Loan File Status ................9B.3
B903  Returning Loan Files ..........................................9B.3
B904  Equal Credit Opportunity Act (ECOA) and Home
      Mortgage Disclosure Act (HMDA) Compliance ....................9B.3
B905  Additional Delivery Documentation .............................9B.3

# Chapter 9C, Delivery

C900  Delivery Process ..............................................9C.1
C901  Submission of Funding Documents ..............................9C.1
C902  Funding Documents ............................................9C.2
C903  Review and Acceptance of Funding Documents ...................9C.9
C904  MERS Loan Registration, Transfer and Delivery Requirements ........9C.10
C905  Alternative Delivery ..........................................9C.11

**GMAC-RFC**

# Chapter 9D, Funding Requirements and Wire Instructions

D900  Wire Transfer Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9D.1
D901  Funding Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9D.1
D902  Notification of Wire Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9D.4
D903  Payoff Prior to Funding Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9D.5
D904  Loans Paid in Full . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9D.5
D905  Failure to Comply with GMAC-RFC Remittance Requirements  . . . . . . . . 9D.6

# Chapter 9E, Final Documents

E900  Submission of Final Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9E.1
E901  Review and Acceptance of Final Documents . . . . . . . . . . . . . . . . . . . . . 9E.2
E902  Further Assurance Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9E.2

# Chapter 10, Definitions

# Chapter 11, Forms and Exhibits

1100  GMAC-RFC Forms and Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11.1



**2**

Page 2.6 **GMAC-RFC**

03/13/06

Client Guide
Client Eligibility

**206**

## Reporting Requirements

### (A) Annual Requirements

Within 90 days after the Client's fiscal year end, it must send the following documents to GMAC-RFC:

- (1) Annual financial statements that include:
  - An independent auditor's opinion on financial statements
  - An independent auditor's report on the Uniform Single Attestation Program (USAP) for mortgage bankers
  - A copy of the 10-K if the Client is required to prepare an annual Form 10-K

- (2) A completed **Freddie Mac** Annual Eligibility Certification Report (Freddie Mac Form 16SF). If the Client is not required to submit Freddie Mac Form 16SF, then the Annual Client Certification (GMAC-RFC **Form 1200**) may be substituted.

### (B) Other Reporting Requirements

#### (1) Interim Financial Statements; Other Information

The Client shall, upon the reasonable request of GMAC-RFC, provide its quarterly unaudited financial statements, Form 10-Qs, or any other financial information pertaining to the Client.

#### (2) Fidelity and Errors and Omissions Insurance

- The Client must notify GMAC-RFC if it receives notice from its insurer of intent to cancel, not renew, or otherwise modify the Client's coverage. This notification must be sent to GMAC-RFC by registered mail at least 10 days before it becomes effective.

- The Client must report to GMAC-RFC all cases of material theft, embezzlement or fraud and all claims made against the insurer within 10 days after the occurrence.

- If requested by GMAC-RFC, the Client must provide current certificates of insurance outlining its fidelity and errors and omissions insurance.

### (C) Mailing Address

Submit all information required under **Annual Requirements** and **Other Reporting Requirements** Sections above to:

GMAC-RFC
One Meridian Crossings
Suite 100
Minneapolis, MN 55423
Attention: Risk Management
Facsimile: 952-979-2592

**GMAC-RFC**

### (D) Regulation AB Disclosures

#### (1) Originator Disclosure

As requested by GMAC-RFC in its sole discretion, within three (3) business days the Client will provide to GMAC-RFC either (a) the disclosures required under Item 1110(b) of Regulation AB (Originator disclosure) or any successor regulation for inclusion in a prospectus or other disclosure document, or (b) a confirmation that previously provided disclosure does not require updating. "Originator disclosure" required to be provided shall include (A) the Client's form of organization, (B) a description of the Client's origination program and how long the Client has been engaged in originating residential mortgage loans, (C) discussion of the Client's experience in originating residential mortgage loans, (D) information regarding the size and composition of the Client's origination portfolio and (E) the Client's underwriting criteria (or other information material to an analysis of the performance of the mortgage loans, as determined by GMAC-RFC). As requested by GMAC-RFC in its sole discretion, within three (3) business days, the Client shall provide in a specified electronic format the name of the originator of each mortgage loan if originated by an entity other than the Client.

#### (2) Legal Proceedings for Prospectus Disclosure or Update of Periodic Reports

As requested by GMAC-RFC in its sole discretion, within three (3) business days of GMAC-RFC's request, the Client will provide to GMAC-RFC (a) a complete written description of any legal proceedings pending against the Client, or of which the Client's property is the subject, that, if adversely determined, could have a material adverse impact on the Client's financial condition or its continuing ability to sell mortgage loans to GMAC-RFC or would affect the enforceability of any mortgage loan (including any similar proceedings known by the Client to be contemplated by governmental authorities) for inclusion in a prospectus or other disclosure document pursuant to Regulation AB or any successor regulation ("Legal Proceedings Description"), certified as to accuracy by an officer of the Client, or (b) a written certification of an officer of the Client stating that the previously provided Legal Proceedings Description does not require updating and continues to be complete and accurate as of such date.

#### (3) Updates Regarding Legal Proceedings

If at any time any previously provided Legal Proceedings Description is no longer current or requires updating, or if the Client is the subject of new legal proceedings that would require disclosure under Item 1117 of Regulation AB or any successor regulation, the Client will provide to GMAC-RFC a revised Legal Proceedings Description, certified as to accuracy by an officer of the Client.

#### (4) Other Information Required under Regulation AB

The Client will provide to GMAC-RFC such other information, including historical loan performance information, as GMAC-RFC shall reasonably request in order to enable GMAC-RFC to comply with any applicable requirements of Regulation AB or any successor regulation. Such information shall be provided within fifteen (15) days of a request from GMAC-RFC.

#### (5) Mailing Address for Regulation AB Disclosures

At the time GMAC-RFC requests any Regulation AB disclosure or information under this Section 206(D), it will provide to the Client the address to which all such disclosure or information should be delivered.



# 2A

Page 2A.2 **GMAC-RFC**

11/21/05

Client Guide
Representations,
Warranties and
Covenants

## A201

### Specific Representations, Warranties and Covenants Concerning Client

#### (A) Due Organization; Good Standing; Licensing

Client and, to Client's knowledge, Client's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain all licenses, registrations, and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified, and in good standing in each State where a Mortgaged Property is located if the laws of such State require licensing or qualification in order to conduct business of the type conducted by Client[1]. Client is and will remain in compliance with the laws of any such State, and is and will remain in good standing with federal authorities, to the extent necessary to ensure the enforceability of the related Loan. Client has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigation, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed, within two years prior to the date of the Client Contract, by any federal or State agency or instrumentality with respect to either the lending or related financial operations of Client, or the ability of Client to perform in accordance with the Program Documents terms. Each of the representations and warranties made by Client in its Client Application is true, accurate, and complete, and is deemed to be remade in its entirety, as of the date of the Client Contract, and as of each **Funding Date**.

[1] In addition, if any Loan is secured by mortgaged property located in the State of West Virginia, Client and the originator of the Loan is licensed under the West Virginia Mortgage Loan Act and Client and the originator of the Loan held such license at the time the Loan was originated, unless otherwise exempt from licensing. Client and the originator of the Loan must be licensed under the West Virginia Mortgage Loan Act even if Client and the originator of the Loan makes or offers to make or accepts or offers to accept or purchases or services in a calendar year fewer than the number of de minimus primary or subordinate mortgage Loans specified in the definition of "lender" in W. Va. Code Section 31-17-1.

#### (B) Authority

Client has and will maintain the full corporate, partnership or limited liability company power and authority to execute and deliver the Program Documents and to perform the terms of this Client Guide. The execution, delivery, and performance of the Program Documents and the performance of the terms of this Client Guide by Client, and the consummation of the transactions contemplated, have been duly and validly authorized. The Program Documents and this Client Guide evidence Client's legal valid, binding, and enforceable obligations. All requisite corporate, partnership or limited liability company action has been taken by Client to make the Program Documents and the terms of this Client Guide valid and binding upon Client and enforceable in accordance with their respective terms.

#### (C) Ordinary Course of Business

The consummation of the transactions contemplated by the Program Documents and the Client Guide terms are in Client's ordinary course of business, and the transfer, assignment, and conveyance of the Mortgage Notes and the Mortgages by Client, pursuant to the Program Documents and the Client Guide terms are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction.

**GMAC-RFC**

**2A**
Page 2A.3
11/21/05
Client Guide
Representations,
Warranties and
Covenants

### (D) No Conflicts

Neither the execution and delivery of the Program Documents, the acquisition and/or making of the Loans by Client, the sale of the Loans to GMAC-RFC or the transactions contemplated thereby or pursuant to this Client Guide, nor the fulfillment of or compliance with the Program Documents terms and conditions, will conflict with or result in a breach of any of the terms, conditions, or provisions of Client's articles of incorporation, charter, by-laws, partnership agreement, or other organizational document, or of any legal restriction or regulatory directive or any agreement or instrument to which Client is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Client, or any of its property is subject, or impair the ability of GMAC-RFC to realize on any of the Loans, or impair the Value of any of the Loans.

### (E) Ability to Perform

Client has the ability to perform each and every obligation of and/or satisfy each and every requirement imposed on, Client pursuant to the Program Documents and this Client Guide, and no offset, counterclaim, or defense exists to the full performance by Client of the requirements of Program Documents and this Client Guide.

### (F) No Litigation Pending

There is no action, suit, proceeding, inquiry, review, audit, or investigation pending or threatened against Client that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties, or assets of Client, or in any material liability on the part of Client, or which would draw into question the validity or enforceability of any of the Program Documents, this Client Guide, or the Loans or of any action taken or to be taken in connection with Client's obligations contemplated in any of the Program Documents or this Client Guide, or which would be likely to impair materially Client's ability to perform under the terms of the Program Documents or this Client Guide.

### (G) No Consent Required

No consent, approval, authority, or order of any court or governmental agency or body is required for the execution and performance by Client of, or compliance by Client with, any of the Program Documents or this Client Guide, the sale of any of the Loans, or the consummation of any of the transactions contemplated by any of the Purchase Documents, or, if required, such unconditional approval has been obtained prior to the related **Funding Date**.

### (H) No Untrue Information

Neither the Program Documents, the Client Application, this Client Guide, nor any statement, report, or other document furnished or to be furnished by Client pursuant to the Program Documents or this Client Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Client meets GMAC-RFC's Eligibility Standards, and shall take all steps necessary to continue to meet such Eligibility Standards.



**2A** Page 2A.4 **GMAC-RFC**

11/21/05
Client Guide
Representations,
Warranties and
Covenants

### (I) Securities Law

The Client represents that the Loans are not "securities" under any federal or State securities laws or any rules or regulations thereunder and that the transactions contemplated by this Client Guide do not require registration under, and are not subject to, any federal or State securities laws or any rules or regulations thereunder.

### (J) No Accrued Liabilities

Except as may be otherwise disclosed by Client to GMAC-RFC and acknowledged by GMAC-RFC in writing prior to the date of the Client Contract, there are no accrued liabilities of Client, with respect to any of the Loans, or circumstances under which any such accrued liabilities will arise against GMAC-RFC, as successor to Client's interests in and to the Loans, with respect to any action or failure to act by Client occurring on or prior to the **Funding Date**.

### (K) Origination, Servicing

Client's origination and servicing of the Loans have been legal, proper, prudent, and customary and have conformed to the highest standards of the residential mortgage origination and servicing business.

### (L) Compliance With Laws

Client has complied with, and has not violated any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Client, or the ability of Client to consummate the transactions contemplated by the Program Documents and this Client Guide.

### (M) Compliance With Program Documents and Client Guide

Client will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding Client, the Loan, the Mortgaged Property or the Mortgagor of which Client has knowledge, which occurrence, act, or omission may materially affect Client, the Loan, the Mortgaged Property, or the Mortgagor.

### (N) No Defenses Against GMAC-RFC

The Client has no judgment, court order, claim, counterclaim, defense, right of set-off or similar right against GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.5
11/21/05
Client Guide
Representations,
Warranties and
Covenants

A202
_____

**Specific Representations, Warranties and Covenants Concerning Individual Loans**

For all Loans, the Client represents, warrants and covenants to GMAC-RFC as follows:

**(A) Loans Are Eligible; Accuracy of Information**

Each of the Loans delivered and sold to GMAC-RFC meets the applicable program terms and criteria set forth in this Client Guide. All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts. All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file.

**(B) Compliance With Warranties**

The Client is in compliance with, and has taken all necessary action to ensure that each Loan is in compliance with all representations, warranties and requirements contained in this Client Guide.

**(C) Loan Provisions**

The provisions of the Loan have not been impaired, waived, altered or modified in any respect, unless approved in writing by GMAC-RFC. The issuer of any related PMI Policy and the title insurer have approved the substance of any such waiver, alteration, or modification to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

**(D) Documents**

All **Loan Documents**, **Funding Documents** and **Final Documents** are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide, and each Loan is the Mortgagor's legal, valid and binding obligation enforceable in accordance with its terms. All originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate. All Loan Documents, Funding Documents, Final Documents and all other documents describing or otherwise relating thereto are in compliance with all applicable local and State laws, regulations and orders.



# 2A
**Page 2A.6 GMAC-RFC**

11/21/05

Client Guide
Representations,
Warranties and
Covenants

### (E) Ownership; Transfer

The Client has good title to and is the sole owner of, each Loan delivered and sold to GMAC-RFC. Except for the security interest of a warehouse lender, which security interest Client has disclosed to GMAC-RFC in writing, the assignment of the Loan by the Client validly transfers such Loan to GMAC-RFC free and clear of any pledge, lien or security interest or other encumbrance.

For each Loan registered with **MERS**, the Client represents that (a) if the **Security Instrument** relating to such Loan identifies MERS as the original mortgagee of record, such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns and that such Security Instrument has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest on the **Mortgaged Premises** in favor of MERS, solely as nominee for the Client and its successors and assigns; or (b) if the Loan is registered with MERS, and MERS is not the original mortgagee of record, an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS. Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that the Client has confirmed the transfer on MERS to GMAC-RFC.

### (F) Disbursements; No Payoffs or Future Advancements

Each Loan has been closed and fully disbursed, except as permitted in the **Escrow Account for Postponed Improvements/Repairs** Section of this Client Guide. There are no payoffs, assumptions or insurance claims pending on any Loan or pertaining to the Mortgaged Premises and the Borrower may not exercise any option under any of the **Loan Documents** to borrow additional funds secured thereby from the Client or any other person or entity without the Noteholder's consent.

Additionally, the Client warrants that the Client has not made arrangements with any Borrower for any payment forbearance or future refinancing with respect to any Loan.

### (G) No Default

There is no default, breach, violation or event of acceleration existing under any Note or **Security Instrument** transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by the Client or by any other entity involved in originating or servicing the Loan.

### (H) No Defenses

Except as provided in a buydown or subsidy agreement, if any, meeting the requirements set forth in this Client Guide, the Borrower (including any party secondarily liable under the **Loan Documents**) has no right of set-off, defense, counterclaim or right of rescission to any Loan Document.

**GMAC-RFC**

**2A**
Page 2A.7
09/11/08
Client Guide
Representations,
Warranties and
Covenants

**(I) Compliance with Law**

The sale and transfer of each Loan to GMAC-RFC does not violate any applicable State laws. To the extent that any applicable State law places any restrictions on the transfer of any Loan, the Client has notified GMAC-RFC in writing of that restriction and any related State licensing or registration requirements.

The **Security Instrument** has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest in the **Mortgaged Premises** in favor of the Client and its successors and assigns. If a Loan is registered with **MERS**, and MERS is identified on the Security Instrument as the original mortgagee of record, Client represents that such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns. If the Loan is registered with MERS, and MERS is not the original mortgagee of record, Client represents that an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS and Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that Client has confirmed the transfer on MERS to GMAC-RFC.

Each GMAC-RFC Loan Application (**Fannie Mae** 1003/**Freddie Mac** Form 65) was taken from the Borrower and processed for each Loan, and each Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act. This warranty is made by the Client with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the Client or any other entity.

**(J) Responsible Lending Representations, Warranties and Covenants**

**(1) No Discontinued Loans**

No Loan is a "Discontinued Loan". Discontinued Loan means any of the following, regardless of whether the originator is required by law to comply with the law or has grounds to claim preemption from all or part of the law.

**(a) HOEPA/Section 32**

A loan considered a "mortgage" under Section 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. Section 1602 (aa) and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations, and the official staff commentary to those regulations.

**(b) Purchase Money Loans with High Points or Fees**

A "purchase money" loan secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. A "purchase money" loan is a loan that is considered a "residential mortgage transaction" under Section 226.2(24) of Title 12 of the Code of Federal Regulations.



**2A** Page 2A.8 GMAC-RFC
11/21/05
Client Guide
Representations,
Warranties and
Covenants

### (c) Home Equity Lines and 1st Lien Lines of Credit That Exceed the HOEPA Triggers

An open-end line of credit secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. "Points and fees" must be calculated in accordance with Section 226.32 of Title 12 of the Code of Regulations and the related commentary promulgated by the Federal Reserve Board. The "APR" is the fully indexed rate or the initial rate, whichever is greater, at the time of consummation. The "total loan amount" is the total credit line available under the terms of the loan, without subtracting any amounts for closing costs.

### (d) State and Local High Cost Loans

A loan considered a "high-cost," covered, "high-risk," "predatory" or any other similar designation under any State or local law in effect at the time of the closing of the loan if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees.

### (e) Certain Georgia Home Loans

A "home loan" under the Georgia Fair Lending Act, Ga. Code Ann. Section 7-6A-1 et. seq. that became effective on October 1, 2002 (the "Act"), if the Commitment was issued on or after February 1, 2003 and the loan was closed on or before March 7, 2003.

### (f) Certain New Jersey Home Loans

A "home loan" under the New Jersey Home Ownership Security Act of 2002 (the "Act"), N.J.S.A. 46:10B-22 et seq. if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";
- A "home loan" with proceeds intended for home improvement purposes;
- A "home loan" that is an open-end line of credit;
- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

### (g) Certain New Mexico Home Loans

A "home loan" under the New Mexico Home loan Protection Act (the "Act"), that was closed on or after February 1, 2004, and on or before February 26, 2004, if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";
- A "home loan" with proceeds intended for home improvement purposes;
- A "home loan" that is an open-end line of credit;
- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**GMAC-RFC**

**2A**
Page 2A.9
11/21/05
Client Guide
Representations,
Warranties and
Covenants

**(2) Mandatory Arbitration Clause**

A Loan may not include a mandatory arbitration clause. Any arbitration agreement signed by the Borrower prior to the time of a dispute is prohibited.

**(3) Prohibited Terms and Practices on all Loans sold to GMAC-RFC**

A Loan may not violate any of the following prohibited terms and practices:

(a) **Pre-paid insurance products.** No Loan finances single premium credit life, credit disability, credit unemployment, or any other pre-paid life or health insurance, directly or indirectly.

(b) **Prepayment penalties.** A Loan may not provide for a penalty for paying all or part of the principal before the date on which the principal is due except as set forth in this paragraph and otherwise allowed by applicable federal, State, and local law.

- The penalty may be enforced for only the first five years following consummation;

- The penalty does not exceed 6 months of interest on the amount prepaid or 6% of the amount prepaid; and

- The **Prepayment** penalty does not become due upon default

(c) **Reporting to credit bureaus.** Client or its **Servicer** must report to a nationally recognized consumer credit reporting agency at least quarterly the favorable and unfavorable payment history information of Borrower on payments due to Client on a Loan for the period during which Client holds or services the Loan. This paragraph shall not prevent Client or its Servicer from not reporting specific payment history information in the event of a resolved or unresolved dispute with Borrower and shall not apply to Loans held or serviced by Client for less than 90 days.

(d) **Increased interest rate upon default.** A Loan may not provide for an increase in the interest rate after default.

**(K) Title Insurance**

A policy of title insurance, in the form and amount required by this Client Guide, is effective as of the day the **Security Instrument** is recorded, is valid and binding, is in conformance with all agency guidelines and remains in full force and effect, unless the **Mortgaged Premises** are located in the State of Iowa and a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority has been provided as described in Title Guaranty Certificate In Iowa below.

**(L) Title Guaranty Certificate In Iowa**

As to each Loan secured by Mortgaged Premises located in the State of Iowa, and if an American Land Title Association (**ALTA**) Loan policy of title insurance has not been provided, a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority, in the form and amount required by this Client Guide, duly delivered and effective as of the closing of each such Loan, is valid and binding, and remains in full force and effect.



Page 2A.10
11/21/05
Client Guide
Representations,
Warranties and
Covenants

### (M) Valid First Liens

Each **Security Instrument** transferred to GMAC-RFC, unless provided for otherwise in a given **Loan Program**, constitutes a valid first lien on the **Mortgaged Premises** subject only to the minor impediments described in the **Title Insurance** Section of this Chapter, and such impediments do not adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises. Each Security Instrument and all related documents (including, without limitation, releases of prior Security Instruments, assumption agreements, assignments, amendments, powers of attorney, and modification, extension and consolidation agreements) that are required to be recorded or filed under applicable law in order to preserve in favor of GMAC-RFC the validity and enforceability of the Security Instrument and the liens created thereby, have been duly recorded in all appropriate recording offices, and all associated recording fees or taxes must be paid.

### (N) No Encroachments By Adjoining Properties; Improvements

No improvements by adjoining properties encroach upon the Mortgaged Premises in any respect so as to affect the Value or marketability of the Mortgaged Premises. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation.

### (O) Survey

All improvements which were considered in determining the appraised Value of the **Mortgaged Premises** lie wholly within its boundaries and the building restriction lines of the Mortgaged Premises, or the policy of title insurance insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance that either is disclosed or would have been disclosed by an accurate survey.

### (P) No Liens

There are no delinquent tax or delinquent assessment liens against the Mortgaged Premises, and there are no mechanic's liens or claims for work, labor or material or any other liens affecting the Mortgaged Premises, which are or may be a lien prior to, or equal with, the lien of the **Security Instrument** assigned to GMAC-RFC, except those liens that are insured against by the policy of title insurance or Title Guaranty Certificate issued by the Iowa Title Guaranty Division.

### (Q) No Adverse Circumstances

The Mortgaged Premises are free of damage and in good repair, and no notice of condemnation has been given with respect thereto, and no circumstances exist involving the **Loan Documents**, the **Mortgaged Premises** or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan. The Client warrants that it neither has actual knowledge of the presence of, nor reasonable grounds to suspect the presence of, any toxic materials or other environmental hazards on, in or that could affect any of the Mortgaged Premises. The Client warrants compliance with local, State or federal law or regulation designed to protect the health and safety of the occupants of the property.

**GMAC-RFC**

2A
Page 2A.11
11/21/05
Client Guide
Representations,
Warranties and
Covenants

#### (R) Casualty Insurance

The improvements upon the **Mortgaged Premises** are insured against loss by fire and other hazards as required by this Client Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The **Security Instrument** requires the Borrower to maintain such casualty insurance at the Borrower's expense, or on the Borrower's failure to do so, authorizes the holder of the Security Instrument to obtain and maintain such insurance at the Borrower's expense and to seek reimbursement from the Borrower. Each casualty policy is the insurer's valid and binding obligation, is in full force and effect, and will be in full force and effect, to GMAC-RFC's benefit upon the consummation of the transactions contemplated by the Program Documents and this Client Guide. The Loan terms permit the maintenance of an escrow account to pay the Premiums for the above mentioned insurance, and the Client has not waived the requirement of such escrow account unless permitted by GMAC-RFC or required by applicable law.

#### (S) Primary Mortgage Insurance

If required by this Client Guide, primary mortgage insurance has been obtained, the Premium has been paid, and the mortgage insurance coverage is in full force and effect meeting the requirements of this Client Guide.

#### (T) Underwriting; Appraisal; Appraiser

The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide.

For each Loan for which an appraisal is required or obtained under this Client Guide, the appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide. For each Loan, as of the **Funding Date**, the market Value of the **Mortgaged Premises** is at least equal to the appraised Value stated on the Loan appraisal, or if an **Automated Valuation Model (AVM)** is permitted, the Value on the AVM, except to the extent that the market Value of the Mortgaged Premises is lower than the appraised or AVM Value due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the Client has actual knowledge or reasonable grounds to suspect.



**2A**
Page 2A.12 **GMAC-RFC**
11/21/05
Client Guide
Representations,
Warranties and
Covenants

### (U) Enforceability; Enforcement Provisions

Each Note and **Security Instrument** constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms except as limited by bankruptcy, insolvency or other similar laws affecting generally the enforcement of creditors' rights.

Each Security Instrument contains customary and enforceable provisions which render the rights and remedies of the holder adequate to realize the benefits of the security against the **Mortgaged Premises**, including: (i) in the case of a Security Instrument designated as a deed of trust, by trustee's sale, (ii) by summary foreclosure, if available under applicable law; and (iii) otherwise by foreclosure, and there are no homestead or other exemptions or dower, courtesy or other rights or interests available to the Borrower or the Borrower's spouse, survivors or estate or any other person or entity that would, or could, interfere with such right to sell at a trustee's sale or to foreclose. The Security Instrument and any riders to the Security Instrument must be signed by any person with an actual or potential interest in the property. Title holders have an actual interest in the property and must sign the Security Instrument and riders. Non-Borrowing spouses who are not in title may have an actual or potential interest in the property under State law and may be required to sign the Security Instrument and rider in some States in order for the holder of the Security Instrument to obtain, protect and enforce its lien. The Client will obtain the signature of the non-Borrowing spouse on the Security Instrument and riders or other documentation, as allowed by law, if such signature is necessary to protect the interest of the holder of the Security Instrument.

### (V) Holder-In-Due-Course

The Client is the owner and holder-in-due-course of each Note and is named as mortgagee/beneficiary or assignee under each **Security Instrument**, and all **Loan Documents** requiring execution have been appropriately executed, witnessed or notarized by the persons whose names appear as signatories and witnesses, or, as appropriate, notaries who constitute the valid and binding legal obligation of the Borrower, enforceable in accordance with their respective terms. Notwithstanding the foregoing, with respect to adjustable-rate mortgage Loans (ARMs), the Client represents and warrants that there are no claims to the Note on the part of any person or defenses of any party to the Note other than those that validly could be raised against a holder-in-due-course.

### (W) Trustee Designated

With respect to each **Security Instrument** that is a deed of trust, a trustee duly qualified under applicable law to serve as such is properly named, designated and serving.

### (X) No Fees Due Trustee

Except in connection with a trustee's sale after default by the Borrower, no fees or expenses are payable by the Client or GMAC-RFC to the trustee under any Security Instrument that is a deed of trust.

**GMAC-RFC**

**2A**
Page 2A.13
11/21/05
Client Guide
Representations,
Warranties and
Covenants

### (Y) Execution of Documents

All agreements, contracts, assignments, endorsements and issuances of checks or drafts, reports, **Loan Documents** or other papers related to a Loan that are required by this Client Guide to be executed by the Client have been properly executed by an officer on behalf of the Client pursuant to a duly adopted Resolution of Board of Directors.

### (Z) Leaseholds

Where permitted by the applicable **Loan Program**, each Mortgaged Premises involving a **Leasehold** estate complies with the applicable Leasehold warranties set forth in this Client Guide.

### (AA) Condominiums; **Planned Unit Developments** (PUDs)

Each **Mortgaged Premises** that is a unit in a condominium or PUD complies with the applicable condominium or PUD warranties set forth in this Client Guide.

### (BB) Compliance By Others

When a person or entity: (i) originates a Loan on behalf of a Client, (ii) originates a Loan on its own behalf and sells it to a Client, or (iii) performs any act for a Client which the Client is required to perform under this Client Guide, the Client warrants that such person or entity has complied with all requirements of this Client Guide with respect to all such Loans and acts.

### (CC) Client Contract Warranties

The representations and warranties made at the time of the Client's execution of the Client Contract must remain true, correct and complete.

### (DD) Client and Originators

Each Jumbo A, Expanded Criteria or Payment Option Loan was originated by (i) a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or State authority, or (ii) a HUD approved non-supervised or correspondent mortgagee.

If the Client sells Loans to GMAC-RFC which are registered with **MERS** or as to which MERS is the mortgagee on the **Security Instrument**, the Client is a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS.

### (EE) No Impairment of Insurance

No action, error, omission, misrepresentation, negligence, fraud or similar occurrence in respect of a Loan has taken place on the part of any person, including, without limitation, the Borrower, any appraiser, any builder or developer or any party involved in the origination of the Loan or in the application of any insurance in relation to such Loan that might result in a denial, contesting, failure or impairment of full and timely coverage under any insurance policies required to be obtained or any pool insurance policy covering such Loan.

### (FF)Temporary Buydowns

Where permitted by the applicable **Loan Program**, each **Temporary Buydown** Loan delivered to GMAC-RFC was entered into pursuant to a buydown agreement which complies with the **Temporary Buydowns** Section in **Chapter 3C**, Financing, of this Client Guide.



**2A** Page 2A.14  **GMAC-RFC**

11/21/05
Client Guide
Representations,
Warranties and
Covenants

### (GG) Primary Mortgage Insurance Cancellation

The Client has disclosed in writing to the Borrower the terms and conditions that must be met prior to the primary mortgage insurance being eligible for cancellation. A copy of this disclosure has been retained in the Loan file as a permanent record.

### (HH) No Deficiency In Escrow Deposits or Payments

The Loan has been serviced by the Client and any predecessor **Servicer** in accordance with the terms of the mortgage Note and all applicable law. With respect to escrow deposits and escrow payments, if any, all such payments are in the possession of, or under the control of, the Client, and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits, escrow payments or other charges or payments due the Client have been capitalized under any mortgage or related mortgage Note.

### (II) Loan Securitization

The Client recognizes that it is GMAC-RFC's intent to securitize some or all of the Loans sold to GMAC-RFC by the Client. The Client agrees to provide GMAC-RFC with all such information concerning the Client generally and, if applicable, the Client's servicing experience, as may be reasonably requested by GMAC-RFC for inclusion in a prospectus or private placement memorandum published in connection with such securitization.

In addition, the Client will cooperate in a similar manner with GMAC-RFC in connection with any whole Loan sale or other disposition of any Loan sold to GMAC-RFC by the Client. The Client agrees to indemnify and hold GMAC-RFC harmless from and against any loss, damage, penalty, fine, forfeiture, court cost, reasonable attorneys' fees, judgment, cost, fee, expense or liability incurred by GMAC-RFC as a result of any material misstatement in or omission from any information provided by the Client to GMAC-RFC; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon such misstatement or omission.

The Client further agrees to cooperate fully with GMAC-RFC, rating agencies, attorneys, bond insurers, purchasers of Loans or any other parties that may be involved in the sale or securitization of any Loan, including, without limitation, all cooperation as may be necessary in order to accommodate due diligence activity.

### (JJ) Non-Solicitation

The Client has not solicited or provided information to another party for the purpose of soliciting, and covenants and agrees that it will not solicit or provide information to another party for the purpose of soliciting, the refinance of any Loan. The term "solicit" as used herein shall mean a direct request or offer to refinance a servicing released Loan, and shall not include general solicitations, advertisements or promotions directed to the public at large.

**GMAC-RFC**

**2A**
Page 2A.15
12/11/05
Client Guide
Representations,
Warranties and
Covenants

### (KK) No Fraud or Misrepresentation

No fraud or misrepresentation by the Borrower or by the Client, broker, correspondent, appraiser or any independent contractor retained by the Client, broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate.

### (LL) Exclusionary List

No party involved in the origination of a Loan (e.g., originator, broker, title company, appraiser, etc.) was on the **Exclusionary List** on the date the Loan was originated as determined by the date of the promissory Note for that particular Loan.

### (MM) Early Payment Default

Neither Client, nor any third party acting on behalf of Client, has made or will make a scheduled payment on a Loan during the 90-day period where the Loan is subject to repurchase for **Early Payment Default**.

### A203

#### Additional Client Representations, Warranties and Covenants for the Home Equity Program

The Home Equity Program adheres to the Client representations, warranties and covenants stated below as well as the representations, warranties and covenants contained in this Client Guide.

Unless the Home Equity Loan is a valid first lien on the **Mortgaged Premises**, the following representation and warranty applies:

Valid Second Lien

Each **Security Instrument** transferred to GMAC-RFC constitutes a valid lien on the Mortgaged Premises which is subordinated only to a lien of the holder of a first mortgage Loan, and is subject only to the minor impediments described in the **Title Insurance** Section of this Chapter. No such impediment shall adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises.

The following additional representations and warranties are made by the Client to GMAC-RFC as of the **Purchase Date** of each Home Equity Loan:

#### (A) Licensing

The Client and any agents or correspondents originating for the Client have obtained all licenses and approvals required with respect to the origination of the Home Equity Loans, including, to the extent applicable, licenses and approvals required for small Loans or small advances and licenses and approvals required to charge the maximum interest rate allowable under State law.

#### (B) No Contractor or Dealer Loans

No home improvement contractor or dealer was involved as a third party originator of a Home Equity Loan or received compensation in any form from the Client.



**2A**
Page 2A.20 **GMAC-RFC**
12/01/05

Client Guide
Representations,
Warranties and
Covenants

## A208

### Events of Default

Any one or more of the following events constitute an **Event of Default**:

(1) The Client has not complied with one or more of the requirements (including any requirement outlined in Chapter 2, Client Eligibility) terms or conditions outlined in this Client Guide or one of the disqualification, suspension or inactivation events set forth in the **Disqualification Suspension or Inactivation** Section has occurred or occurs.

(2) The Client has breached any agreement outlined or incorporated by reference in the Client Contract or any other agreement between the Client and GMAC-RFC.

(3) The Client breaches any of the representations, warranties or covenants set forth in this Client Guide, fails to perform its obligations under this Client Guide or the Program Documents, makes one or more misleading representations, warranties or covenants to GMAC-RFC, or has failed to provide GMAC-RFC with information in a timely manner, including information required under Regulation AB or any successor regulation, that is true, complete and accurate.

(4) The Borrower or any other person or entity involved in the Loan transaction or in its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction, whether or not the Client was a party to or had knowledge of such misrepresentation or incorrect information.

(5) Occurrence of an Event of **Servicer** Default with respect to any Loans serviced by the Client.

(6) Termination of servicing for cause is a basis for the Client's immediate disqualification or suspension. Action taken by GMAC-RFC to terminate servicing may be merged with an action to disqualify, suspend or inactivate the Client.

# 2A

Page 2A.28 **GMAC-RFC**

11/21/05

Client Guide
Representations,
Warranties and
Covenants

> (17) The Client or **Servicer**'s failure to maintain a qualified Loan origination, servicing and quality control staff, an acceptable ongoing quality control program, adequate facilities and written policies and procedures to ensure:
>
> - The investment quality of Loans sold to GMAC-RFC
>
> - The adequacy of the servicing of Loans purchased by GMAC-RFC **OR**
>
> (18) The failure of the Client or the **Servicer** to meet any test as may be prescribed for eligibility,
>
> (19) The determination by GMAC-RFC that a Client has not delivered an adequate volume of Loans to GMAC-RFC.

## A212

### Indemnification

The Client shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any **Event of Default**. This includes, without limitation, liabilities arising from (i) any act or failure to act, (ii) any breach of warranty, obligation or representation contained in the Client Contract, (iii) any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach, (iv) any breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Client contained in the Client Contract and (v) any untrue statement of a material fact, omission to state a material fact, or false or misleading information provided by the Client in information required under Regulation AB or any successor regulation.

In addition, Client shall indemnify GMAC-RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by GMAC-RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by Client, or any of its agents, or any originator or broker in connection with the origination or servicing of a Loan. With regard to legal fees or other expenses incurred by or on behalf of GMAC-RFC in connection with any such litigation or governmental proceeding, Client shall reimburse GMAC-RFC for such fees and expenses. Reimbursement shall be made directly to GMAC-RFC within ten days of receipt of a request for payment, which request shall include copies of the relevant invoices. Except for notices for reimbursement, GMAC-RFC is not required to give Client notice of any litigation or governmental proceeding that may trigger indemnification obligations. Client shall instruct its officers, directors and agents (including legal counsel) to cooperate with GMAC-RFC in connection with the defense of any litigation or governmental proceeding involving a Loan. GMAC-RFC has the right to control any litigation or governmental proceeding related to a Loan, including but not limited to choosing defense counsel and making settlement decisions.

The Client also shall indemnify GMAC-RFC and hold it harmless against all court costs, attorney's fees and any other costs, fees and expenses incurred by GMAC-RFC in enforcing the Client Contract. The obligations of the Client under this Section shall survive the **Delivery Date**, the **Funding Date** (and each **Substitution Date**, if applicable) and the termination of the Client Contract and the disqualification, suspension or inactivation of the Client.