## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| RESIDENTIAL FUNDING COMPANY, LLC, | Civil No. 0:14-CV-00144 (DWF/SER) |
| Plaintiff, | |
| vs. | |
| HSBC MORTGAGE CORP. (USA) | |
| Defendant. | |

### MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1412 TO UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

Defendant HSBC Mortgage Corp., USA ("HSBC") moves, pursuant to 28 U.S.C. § 1412, to transfer this case to the United States Bankruptcy Court for the Southern District of New York ("S.D.N.Y. Bankruptcy Court"), for disposition in connection with the related bankruptcy case, *In re: Residential Capital, LLC*, No. 12-12020 (Bankr. S.D.N.Y. May 14, 2012).[1]

Plaintiff Residential Funding Company, LLC ("RFC") is one of many entities associated with Residential Capital, LLC ("ResCap"), and is a debtor entity along with ResCap in the well-known consolidated ResCap bankruptcy. The debtors (including RFC) proposed a Chapter 11 liquidation plan (the "Plan"), which the bankruptcy court

---

[1] By filing this Notice of Removal, Defendant reserves all its rights and defenses, including venue. *See* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1344 (3d ed.) ("[A]n appearance in state court prior to removing a case to federal court does not waive objections that might have been raised in state court and that are still available under the federal rules" (citing cases)).

confirmed on December 11, 2013.  The Plan includes a broad provision for exclusive jurisdiction over all disputes and causes of action "related to" the bankruptcy, including claims for indemnity.  Within days of obtaining confirmation of its Plan, however, Plaintiff filed this case against HSBC for indemnification in the District Court of Hennepin County, Minnesota (Fourth Judicial District), for the sale of allegedly defective loans.  Plaintiff also filed numerous similar cases in the Hennepin County District Court, the U.S. District Court for the District of Minnesota, and in U.S. District Court for the Southern District of New York.

For the reasons set forth below, this case should be transferred under § 1412 to the S.D.N.Y. Bankruptcy Court.  Further, HSBC respectfully requests that this Court defer consideration of any subject matter jurisdiction questions that arise in connection with removal of this case to that bankruptcy "home court."  Not only should RFC be bound by the broadly worded retention-of-jurisdiction provision in the Plan it proposed and advocated, but the S.D.N.Y. Bankruptcy Court is also the most familiar with underlying events in the bankruptcy that may be relevant to this case.  Thus, as set forth below, transfer under § 1412 will serve the interests of justice and permit that court to interpret its own orders and review allegations with which it has the greater familiarity.

## BACKGROUND

RFC was in the business of purchasing residential mortgage loans, repackaging them into residential mortgage-backed securities ("RMBS") trusts, and re-selling them to outside investors.  Compl. ¶ 16, 19, 30.  RFC alleges that, over time, many of the loans underlying its securities defaulted or became seriously delinquent.  *Id.* ¶ 32.  RFC filed

2

for bankruptcy in the S.D.N.Y. Bankruptcy Court on May 14, 2012, and alleges that it was forced to do so "in part because of the dozens of lawsuits and allegations relating to defective loans," including loans allegedly sold to it by HSBC. *Id.* ¶ 9. The bankruptcy case proceeded as a Chapter 11 bankruptcy, and the negotiation and approval of a settlement of much of the underlying loan litigation against the ResCap entities was a major issue in the bankruptcy case. *See* Aff. of Elizabeth V. Kniffen in Supp. of Notice of Removal (Doc. # 2) (Jan. 15, 2014) ("Kniffen Aff."), Ex. 4, Second Amended Joint Chapter 11 Plan Proposed By Residential Capital, LLC, *et al.* and the Official Committee of Secured Creditors (Doc. # 6065-1) (Dec. 11, 2013) ("Plan"), at 58–64, Art. IV(C); Kniffen Aff., Ex. 5, Order Confirming Second Amended Joint Chapter 11 Plan Proposed By Residential Capital, LLC, *et al.* and the Official Committee of Secured Creditors (Doc. # 6065) (Dec. 11, 2013) ("Confirmation Order") at 35, ¶ 9. The S.D.N.Y. Bankruptcy Court confirmed Debtors' proffered liquidation Plan on December 11, 2013. *See id.*

The ResCap bankruptcy was and is enormously complex. Approximately 50 debtor entities were party to the confirmed Plan and consolidated proceedings. *See* Kniffen Aff., Ex. 4, Plan at 11, ¶ 76. The case, initially planned to be "pre-packaged," quickly deteriorated into a highly contentious proceeding, as evidenced by the 6,290— and counting—docket entries in the bankruptcy case. The proceedings resulted in an unusually complex 119-page Plan, an 80-page Liquidating Trust Agreement, 51-page Borrower Claims Trust Agreement, a 23-page RMBS Claims Trust Agreement, and 80-page Confirmation Order (along with other supplemental Plan documents). *See* Kniffen

3

Aff., Ex. 4 (Plan); Kniffen Aff., Ex. 5 (Confirmation Order); Kniffen Aff., Ex. 6, Liquidating Trust Agreement (Doc. # 6136-1) (Dec. 17, 2013); Aff. of Elizabeth V. Kniffen in Supp. of Defendant's Motion to Transfer Venue Under 28 U.S.C. § 1412 To United States Bankruptcy Court for the Southern District of New York ("Second Kniffen Aff."), Ex. 7, Borrower Claims Trust Agreement (Doc. # 6136-3) (Dec. 17, 2013); Second Kniffen Aff., Ex. 8, RMBS Claims Trust Agreement (Doc. # 6136-2) (Dec. 17, 2013). Judge Glenn observed that the case was the most complex he had dealt with in his seven years on the bench, Second Kniffen Aff., Ex. 9, Closing Arguments for Phase II Trial (Doc. # 6072) (Dec. 12, 2013), at 43, and anticipated the possibility of more proceedings in that court after Plan confirmation. *Id.* at 44.

The Plan established a Liquidating Trust Board to operate the debtors as they proceed through liquidation in the post-confirmation period. Kniffen Aff., Ex. 4 , Plan at 73, ¶ O. The Plan further provides that all litigation rights not otherwise assigned remain the property of the Debtors under the control of a Liquidating Trust, *id.* at 74–75, ¶ S, and that the proceeds of any litigation conducted by the liquidating trust will be distributed to the various constituencies of the Plan on a pro rata basis. Kniffen Aff., Ex. 6, Liquidating Trust Agreement, at 27–31, Art. V, §§ 5.1–5.7.

The Plan—of which RFC was a proponent—contains a broad retention-of-jurisdiction provision, in which the S.D.N.Y. Bankruptcy Court retained "*exclusive* jurisdiction over all matters arising out of, or related to, the Chapter 11 cases and the Plan." Kniffen Aff., Ex. 4, Plan at 110, Art. XII (emphasis added). The specific itemization of matters reserved to the S.D.N.Y Bankruptcy Court includes jurisdiction "to

4

hear and determine any Causes of Action preserved under the Plan." Kniffen Aff., *Id.* at 112, Art. XII (q). "Causes of Action," in turn, is defined to include claims for "indemnity." *Id.* at 7–8, Art. I (a)(50). The Confirmation Order adopted Article XII, stating:

> The business and assets of the Debtors shall remain subject to the jurisdiction of this Court until after the Effective Date. Notwithstanding the entry of this Order, from and after the Effective Date, the Court shall retain such jurisdiction over the Chapter 11 Cases as is legally permissible, including jurisdiction over those matters and issues described in Article XII of the Plan . . .

*See* Kniffen Aff., Ex. 5, Confirmation Order at 79, ¶ 66. However, two days after the Plan was approved, RFC began filing cases in the United States District Court for the District of Minnesota and the United States District Court for the Southern District of New York, as well as a few cases in Hennepin County (Minnesota) District Court. In each of these (virtually identical) complaints, RFC seeks indemnity for the sale of allegedly defective loans. Compl. ¶¶ 9, 61–65.

## ARGUMENT

This case "relates to" the ResCap bankruptcy proceeding in the S.D.N.Y. Bankruptcy Court, and should be transferred to that court under 28 U.S.C. § 1412, and pursuant to the language of the confirmed Plan. Under § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412 (West 2000). This standard is phrased in the disjunctive, such that either the interests of justice or the convenience of the parties may suffice to justify a transfer. *See Creekridge Capital, LLC*

5

*v. Louisiana Hosp. Ctr., LLC*, 410 B.R. 623, 630–31 (D. Minn. 2009) (finding interests of justice warranted transfer even though party seeking transfer was precluded from arguing convenience as a ground for transfer). The movant has the burden of proving, by a preponderance of the evidence, that a transfer is warranted, and the decision is discretionary. *Id.*, at 629; *In re Bruno's,* 227 B.R. 311, 324 (N.D. Ala. 1998) (court has discretion).

A transfer is justified here. On December 11, 2013, Plaintiff, as a proponent of the Plan, obtained confirmation of that Plan, which included the specific exclusive retention of "related to" jurisdiction in the provisions described above. Not only did the debtors urge confirmation of this Plan, but this case itself is brought to implement and consummate the confirmed Plan's framework for the gathering and distribution of assets as the ResCap entities liquidate. *See* Kniffen Aff., Ex. 4, Plan at 74–75, Art. IV, ¶ S. Apart from these issues, the Complaint virtually concedes that this case is "related to" the bankruptcy, as RFC alleges that its decision to file for bankruptcy was driven by damages *for which it now seeks indemnification from HSBC*, Compl. ¶ 9, and that it was forced to settle numerous of the underlying loan claims after the filing of proofs of claim in the bankruptcy. Compl. ¶¶ 53–56. In the interests of justice and out of respect for the binding provisions of the Plan, this case is properly adjudicated by the S.D.N.Y. Bankruptcy Court.

### A.    Venue in the Southern District of New York Is Proper.

There is venue in the S.D.N.Y. Bankruptcy Court. Under 28 U.S.C. § 1409(a), with certain exceptions not relevant here, "a proceeding arising under title 11 or arising in

6

or related to a case under title 11 may be commenced in the district court in which such case is pending." Federal courts have "related to" subject matter jurisdiction over actions relating to a bankruptcy case "within the meaning of § 1334(b) if it could conceivably have any effect on the bankruptcy estate." *Integrated Health Svcs. of Cliff Manor, Inc. v. THCI Co., LLC*, 417 F.3d 953, 958 (8th Cir. 2005) (internal quotations omitted); *In re Farmland Indus., Inc.*, 567 F.3d 1010, 1019 (8th Cir. 2009); *see also Buffets, Inc. v. Leischow*, 732 F.3d 889, 894 (8th Cir. 2013). Although most courts find that the scope of bankruptcy jurisdiction diminishes in the post-plan-confirmation period, *see Savoy Senior Hous. Corp. v. TRBC Ministries, LLC*, 401 B.R. 589, 597 (S.D.N.Y. 2009), that is less true in Chapter 11 *liquidation* bankruptcies. In a post-confirmation liquidation plan, the scope of related-to jurisdiction "persists undiminished," because the liquidating debtor's "sole purpose is to wind up its affairs, convert its assets to cash, and pay creditors a pro rata dividend." *In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 107, 106 (1st Cir. 2005). Thus, "[a]ny litigation involving such a debtor relates much more directly to a proceeding under title 11 [than does a reorganized debtor trying to 'make a go of its business']." *Id.* at 106–07; *see also In re Cross Media Mktg. Corp.*, 367 B.R. 435, 444 (Bankr. S.D.N.Y. 2007); *Kirschner v. Bennett*, 2008 WL 1990669, at *5 (S.D.N.Y. May 7, 2008) (endorsing reasoning in *In re Boston Regional Medical Center*); *In re Refco, Inc. Sec. Litig.*, 628 F. Supp. 2d 432, 442–44 (S.D.N.Y. 2008) (same).

The present claim plainly "relates to" RFC's bankruptcy case. At a minimum, the claims are made in furtherance of the implementation and consummation of the Plan, because any recovery will go to creditors under the Plan's distribution provisions. *See*

7

*United States v. Unger*, 949 F.2d 231, 234 (8th Cir. 1991) (bankruptcy court may retain jurisdiction over "aspects of a plan related to its administration and interpretation"); *In re Cross Media Mktg. Corp.*, 367 B.R. at 444 ("[T]he court's jurisdiction does not diminish post confirmation if the debtor, pursuant to a liquidating plan, seeks to commence litigation to collect the debtor's assets for the benefit of its creditors[.]"); *In re Boston Reg'l Med. Ctr.*, 410 F.3d at 106–07 (bankruptcy court had continuing post-confirmation jurisdiction over proceeding by liquidating Chapter 11 debtor to increase payments to creditors); *Matter of Emerson Radio Corp.*, 173 B.R. 490, 495 (D.N.J. 1994), *aff'd sub nom. In re Emerson Radio Corp.*, 52 F.3d 50 (3d Cir. 1995) (case involving "implementation and enforcement" of the Plan was "related to" the bankruptcy); *In re S. Indus. Banking Corp.*, 67 B.R. 399, 402 (Bankr. E.D. Tenn. 1986).

Separately, Plaintiff's claims for indemnity also "relate to" the bankruptcy because they seek indemnity for payment of underlying claims that allegedly contributed to the bankruptcy, and that are brought to compensate for settlements of underlying mortgage loan litigation that were made and approved in the bankruptcy case. *See Ad Hoc Comm. Of Equity Holders of Tectonic Network, Inc. v. Wolford*, 554 F. Supp. 2d 538, 550 (D. Del. 2008) (allegations that defendant's conduct helped cause the bankruptcy supported the "related to" bankruptcy argument); *In re IT Grp. Inc.*, 2005 WL 3050611, at *6 (D. Del. Nov. 15, 2005) (case was "related to" bankruptcy where the losses claimed by Plaintiff were "logically connected" to the Debtor's insolvency and subsequent bankruptcy).

Accordingly, "related to" jurisdiction exists such that venue is proper in the S.D.N.Y. Bankruptcy Court; further, that court certainly contemplated that it would retain exclusive jurisdiction to hear "Causes of Action" brought by the debtor, Kniffen Aff., Ex. 4, Plan at 112, Art. XII (q), including indemnity claims, and entered a confirmed Plan so providing.

### B.   A Transfer to the Southern District of New York Is Warranted.

A transfer to the S.D.N.Y. Bankruptcy Court is warranted in the interests of justice. "The 'interest[s] of justice' component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis.[2] It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness . . ." *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990) (declining to transfer adversary proceeding out of the underlying bankruptcy court).

Here, the interests of justice weigh strongly in favor of a transfer; indeed, RFC, as a Plan proponent, took the position just one month ago that exclusive post-confirmation jurisdiction in the S.D.N.Y Bankruptcy Court was appropriate as to all post-confirmation claims retained by the debtors, including indemnity claims. *See* Kniffen Aff., Ex. 4, Plan at 110–12, Art. XII (q) ("Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court

---

[2] The outcome would not differ if the standards for transfer under 28 U.S.C. § 1404(a) were applied.

9

shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan . . . including jurisdiction . . . to hear and determine any Causes of Action preserved under the Plan"); *id.* at 7–8, Art. I, ¶ 50 ("'Cause of Action' means any and all Claims, actions, causes of action . . . indemnity claims . . ."). Transfer is particularly appropriate in such circumstances. *See, e.g.*, *Bank of Am., N.A. v. Wilmington Trust FSB*, 943 F. Supp. 2d 417, 427 (S.D.N.Y. 2013) (interests of justice served by transfer where bankruptcy court has retained exclusive jurisdiction); *Thys Chevrolet, Inc. v. Gen. Motors LLC*, 2010 WL 4004328, at *6–8 (N.D. Iowa Oct. 12, 2010) (transfer appropriate where bankruptcy court retained exclusive jurisdiction over the interpretation and enforcement of its orders); *Matter of Emerson Radio Corp.*, 173 B.R. at 495 (transfer "particularly appropriate" where the bankruptcy court reserved exclusive jurisdiction). RFC's request for such a broad jurisdictional provision—and the S.D.N.Y. Bankruptcy Court's approval thereof—evinces a determination that all "related to" cases should be heard by that Court. *See Jackson v. Venture Dep't Stores, Inc.*, 1998 WL 778057, at *2 (N.D. Ill. Nov. 3, 1998) (noting that the Delaware judge "recognized the importance of hearing all cases related to the bankruptcy within his court" by expressly retaining "exclusive jurisdiction to resolve any dispute arising from or relating to" the bankruptcy).

And, even putting aside the unequivocal retention-of-jurisdiction provision in the Plan, a transfer here "would promote the economic and efficient administration of the bankruptcy estate." *Creekridge Capital, LLC*, 410 B.R. at 630. The "home court" bankruptcy court, after all, is generally presumed to be most familiar with underlying

10

issues that may bear on a related case or adversary proceeding. *See, e.g., Alliant Health Mgmt. Servs. v. Vital Link Private Lodi, Inc. (In re Vital Link Lodi, Inc.)*, 240 B.R. 15, 19 (Bankr. W.D. Mo. 1999); *Abrams v. Gen. Nutrition Cos.*, 2006 WL 2739642, at *9 (D.N.J. Sept. 25, 2006) (transferring action to bankruptcy court in part due to bankruptcy court's greater familiarity with the facts); *Hohl v. Bastian*, 279 B.R. 165, 177–78 (W.D. Pa. 2002) (same). This presumption may be appropriately considered on a post-confirmation § 1412 transfer motion. *See McGillis/Eckman Investments-Billings, LLC v. Sportsman's Warehouse, Inc.*, 2010 WL 3123266, at *6 (D. Mont. June 30, 2010), *report and recommendation adopted*, 2010 WL 3153416 (D. Mont. Aug. 9, 2010).

In this case, the S.D.N.Y. Bankruptcy Court has particular knowledge of the facts and circumstances underlying Plaintiff's claims that would promote the efficient resolution of those claims. For example, RFC seeks indemnification from HSBC for losses arising out of RMBS litigation that was settled during the bankruptcy case—litigation with which the S.D.N.Y Bankruptcy Court will be familiar. *See* Kniffen Aff., Ex. 5, Confirmation Order at 35, ¶ 9. Further, that court is most familiar with any administrative issues that might arise in connection with the litigation, as the confirmed Plan provided for the scheme of asset recovery and distributions that would flow to RFC's creditors from any recovery. *See* Kniffen Aff., Ex. 4, Plan at 74–75, Art. IV, ¶ S. Having spent over eighteen months resolving RFC's bankruptcy case, the S.D.N.Y. Bankruptcy Court is undoubtedly familiar with many of the facts in the underlying litigation for which Plaintiff seeks indemnity, as well as with the implications of any recovery for the bankruptcy estate. Judicial efficiency would be substantially enhanced

11

by transferring this case to the Court that will serve as the final arbiter of the disbursement of any recovery.

Although the interests of justice alone support a transfer of this case to New York, the "convenience of the parties" factor offers no countervailing reason for the case to be heard in Minnesota state court. RFC chose to file the bankruptcy case in the Southern District of New York and advocated language vesting exclusive post-confirmation jurisdiction in that court. Furthermore, the majority of the discovery in this action likely will be centered in New York, where HSBC maintains its principal place of business. *See* Compl. ¶ 13.

### C.     Forum Selection Clause Is No Impediment to Transfer.

Finally, HSBC briefly addresses the fact that the contract Plaintiff attached to its Complaint in this case contains a forum selection clause. In the event that Plaintiff seeks to invoke that clause, that clause has been superseded by the terms of the confirmed Plan, and Plaintiff is bound instead by the retention-of-jurisdiction terms it included in the confirmed Plan.

Under 11 U.S.C. § 1141(a), "the provisions of a confirmed plan bind the debtor." Numerous courts have applied this language to bar parties to a bankruptcy from later asserting positions that are contrary to the terms of a confirmed plan. *See, e.g., First Union Comm. Corp. v. Nelson Mullins, Riley and Scarborough (In re Varat Enterprises, Inc.)*, 81 F.3d 1310, 1317 (4th Cir. 1996) ("Under the Bankruptcy Code, a confirmed plan of reorganization acts like a contract that is binding on all of the parties, debtor and creditors alike."); *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*,

12

930 F.2d 458, 463 (6th Cir. 1991) (confirmation of plan binds all parties to it); *Paul v. Monts*, 906 F.2d 1468, 1472 (10th Cir. 1990) (debtors bound by terms of confirmed plan); *Bank of New Hampshire v. Donahue (In re Donahue)*, 183 B.R. 666, 667 (Bankr. D.N.H. 1995) ("Just as the Court would hold a creditor accountable to the terms of a reorganization plan, it must also hold the debtor accountable to the agreements as well."); *Mancuso v. Sullivan*, 153 B.R. 746, 751 (Bankr. N.D. Tex. 1993) (plan is binding on the parties to it); *Johnson v. Laing (In re Laing)*, 146 B.R. 482, 484–85 (Bankr. N.D. Okla. 1992). Moreover, at least one court has found retention-of-jurisdiction provision in a confirmed plan to supersede and replace the parties' prior contractual agreement to arbitrate. *See Sirius Computer Solutions, Inc. v. AASI Creditor Liq. Trust*, 2011 WL 3843943, at *3 (S.D. Fla. Aug. 29, 2011).

The binding effect of § 1141(a), together with the numerous cases interpreting it to constrain debtor and creditor rights that are inconsistent with a confirmed Plan, apply here. Whether one conceptualizes the issue as one of estoppel, or simply application of the plain language of § 1141(a), the result is the same: Plaintiff is bound by the Plan, and may not invoke a forum selection clause directly contrary to the "exclusive jurisdiction" language it proffered in that Plan. Indeed, Plaintiff apparently made no effort to carve out from that retention-of-jurisdiction provision any existing forum selection clauses. Instead, it proffered broad and absolute language mandating that only one court—the S.D.N.Y. Bankruptcy Court—should hear any case that might be "related to" the bankruptcy, including any and all "Causes of Action" (including indemnity claims) that the debtor might bring. Plaintiff is now bound by the language for which it advocated,

13

and should not be permitted to invoke pre-confirmation, superseded, contrary rights.[3]

### D. The Court Should Resolve the Motion to Transfer Venue before Consideration of any Motion to Remand.

Should RFC file a motion to remand this case to Hennepin County District Court, HSBC submits that this Court should transfer this action to the Southern District of New York, where the bankruptcy court can decide the subject matter jurisdiction issues. Although there is a split of authority on the sequencing of motions to transfer and motions for remand in the bankruptcy context under 28 U.S.C. § 1412, the better reasoned and weight of authority holds that motions to transfer should be decided first. *See, e.g.*, *Woodlands Development, LLC v. Regions Bank*, 2013 WL 3233472, at *2–3 (M.D. La. June 24, 2013); *In re Baker Hughes Oilfield Ops., Inc. v. Liberty Energy, LLC*, 2010 WL 1727930, at *3 ("prevailing view" is that transfer should precede consideration of subject matter jurisdiction issues); *Thomason Auto Grp., LLC v. China America Co-op. Automotive, Inc.*, 2009 WL 512195, at *6 (D.N.J. Feb. 27, 2009); *MD Acquisition, LLC v. Myers*, 2009 WL 466383, at *5–6 (S.D. Ohio Feb. 23, 2009); *Orix Finance Corp. v. Nexbank, SSB*, 2008 WL 2796069, at *3–4 (N.D. Tex. July 15, 2008); *Marquette Transp. v. Trinity Marine Prods., Inc.*, 2006 WL 2349461, at *1, *5 (E.D. La. Aug. 11, 2006); *Tallo v. Gianopoulos*, 321 B.R. 23, 28–29 (E.D.N.Y. 2005); *City of Liberal v. Trailmobile Corp.*, 316 B.R. 358, 362 (D. Kan. 2004); *Bayou Steel Corp. v. Boltex Mfg. Co.*, 2003 WL 21276338, at *1 (E.D. La. June 2, 2003); *Hohl v. Bastian*, 279 B.R. 165,

---

[3] Although HSBC raises this potential forum selection clause issue preemptively, HSBC reserves the right to respond in its reply with further discussion of this issue and estoppel doctrines that may apply to arguments Plaintiff may offer.

14

177–78 (W.D. Pa. 2002) ("weight of authority" is that a bankruptcy transfer should precede consideration of remand); *Nelson v. First Lenders Indem. Co.*, 1998 WL 378376, at *1–2 (N.D. Miss. May 11, 1998); *Thomas v. Lorch, Wedlo, Inc.* (*In re Wedlo, Inc.*), 212 B.R. 678, 679 (Bankr. M.D. Ala. 1996); *In re Aztec Indus., Inc.*, 84 B.R. 464, 467 (Bankr. N.D. Ohio 1987); *In re Covent Guardian Corp.*, 75 B.R. 346, 347 (Bankr. E.D. Pa. 1987); *Seybolt v. Bio-Energy of Lincoln, Inc.*, 38 B.R. 123, 128 (Bankr. D. Mass. 1984).

The S.D.N.Y. Bankruptcy Court is ideally situated to decide the issues relevant to its jurisdiction and any motion to remand. Indeed, in confirming the Plan, that court only a month ago reviewed and considered its post-confirmation jurisdiction. *See In re Aztec*, 84 B.R. at 467 (the bankruptcy court could better evaluate the interests involved and its own schedule); *Tallo*, 321 B.R. at 29; *Hohl*, 279 B.R. at 178. Accordingly, HSBC respectfully requests that this Court transfer the case to the S.D.N.Y Bankruptcy Court for consideration of any jurisdiction issues.

## CONCLUSION

For the foregoing reasons, Defendant HSBC respectfully requests that this Court grant the motion to transfer venue, and order that this case be transferred to the Bankruptcy Court for the Southern District of New York.

Dated: January 16, 2014

                               Respectfully Submitted,

                               s/Elizabeth V. Kniffen
                               Elizabeth V. Kniffen (#0346329)
                               ZELLE HOFMANN VOELBEL & MASON LLP
                               500 Washington Avenue South, Suite 4000
                               Minneapolis, Minnesota 55415
                               (612) 339-2020

                               R. Hackney Wiegmann
                               Matthew V. Johnson (*pro hac* pending)
                               WILLIAMS & CONNOLLY LLP
                               725 Twelfth Street, N.W.
                               Washington, D.C. 20005
                               (202) 434-5000
                               (202) 434-5029 (fax)


                               *Counsel for Defendant HSBC Mortgage Corp. (USA)*