# EXHIBIT 7

# Exhibit 4

## Borrower Claims Trust Agreement

EXECUTION COPY

# THE RESCAP BORROWER CLAIMS TRUST

# TRUST AGREEMENT

# BY AND AMONG

# THE BORROWER CLAIMS TRUSTEE,

# PROVINCE EAST LLC,

# RESIDENTIAL CAPITAL, LLC

# AND

# THE OTHER DEBTORS LISTED ON THE SIGNATURE PAGES HERETO

December 17, 2013

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS ...................................................................................................2
  1.1  Definitions Incorporated from the Plan ...............................................................2
  1.2  Other Definitions ...................................................................................................2
  1.3  Meanings of Other Terms .....................................................................................6

ARTICLE II CREATION OF BORROWER CLAIMS TRUST ...........................................7
  2.1  Creation of Trust ...................................................................................................7
  2.2  Purpose of Borrower Claims Trust .......................................................................7
  2.3  Status of Borrower Claims Trust and the Trust Committee ..................................7
  2.4  Transfer of Borrower Available Assets .................................................................8
  2.5  Borrower Return Amounts .....................................................................................9
  2.6  Title to Borrower Claims Trust Assets ................................................................10
  2.7  No Reversion to Debtors; Distribution of Remaining Assets ..............................10
  2.8  Fiscal Year ...........................................................................................................10
  2.9  Borrower Claims Trust Budget ...........................................................................10
  2.10  Insurance .............................................................................................................11
  2.11  Books and Records ..............................................................................................11
  2.12  No Interest or Accruals .......................................................................................12

ARTICLE III TRUST BENEFICIARIES ...........................................................................12
  3.1  Receipt of Borrower Claims Trust Beneficial Interest .......................................12
  3.2  Evidence of Borrower Claims Trust Beneficial Interest .....................................12
  3.3  Non-Transferability of the Borrower Claims Trust Beneficial Interests .............13
  3.4  Borrower Claims Trust Beneficial Interests Not Securities ................................13
  3.5  Rights of Trust Beneficiaries ..............................................................................13
  3.6  Interest Beneficial Only .......................................................................................13
  3.7  Conflicting Claims ...............................................................................................13
  3.8  Trust Beneficiary Liability to Third Persons ......................................................14
  3.9  Actions in the Right of the Borrower Claims Trust ............................................14

ARTICLE IV SATISFACTION OF BORROWER CLAIMS ............................................14
  4.1  General .................................................................................................................14
  4.2  Borrower Claims Payments ................................................................................15
  4.3  Distributions of Distributable Cash ....................................................................16
  4.4  Delivery of Payments and Distributions .............................................................16
  4.5  Undeliverable and Unclaimed Payments and Distributions ...............................17
  4.6  Withholding and Reporting Requirements ..........................................................17
  4.7  Disbursing Agent .................................................................................................18
  4.8  Minimum Payments; Other Limitations ..............................................................18
  4.9  Subordination ......................................................................................................18

ARTICLE V TRUST COMMITTEE ........................................................................................18
  5.1    General.........................................................................................................................18
  5.2    Membership .................................................................................................................18
  5.3    Authority .....................................................................................................................19
  5.4    Meetings of the Trust Committee ...............................................................................19
  5.5    Compensation .............................................................................................................20
  5.6    Bylaws .........................................................................................................................21

ARTICLE VI OPERATION OF THE BORROWER CLAIMS TRUST .................................21
  6.1    Prohibited Activities ...................................................................................................21
  6.2    Resolution of Disputed Borrower Claims ..................................................................21
  6.3    Disputed Claims Reserve ............................................................................................22
  6.4    Borrower Claims Trust Administrative Reserve .........................................................22
  6.5    Return Amount Reserve ..............................................................................................23
  6.6    Reporting .....................................................................................................................24
  6.7    Borrower Claims Trust Agents; Employees................................................................25

ARTICLE VII BORROWER CLAIMS TRUSTEE ................................................................25
  7.1    Borrower Claims Trustee Generally ...........................................................................25
  7.2    Appointment and Removal of Borrower Claims Trustee............................................26
  7.3    Borrower Claims Trustee Compensation ...................................................................27
  7.4    Authority of the Borrower Claims Trustee .................................................................27
  7.5    Limitations on Borrower Claims Trustee Authority...................................................30
  7.6    Conflicts of Interest ....................................................................................................31
  7.7    Fiduciary Duty and Standard of Care .........................................................................31
  7.8    Bond or Insurance .......................................................................................................31

ARTICLE VIII DELAWARE TRUSTEE ...............................................................................31
  8.1    Appointment ................................................................................................................32
  8.2    Powers .........................................................................................................................32
  8.3    Compensation .............................................................................................................34
  8.4    Duration and Replacement ..........................................................................................34

ARTICLE IX TAX MATTERS ...............................................................................................34
  9.1    Tax Treatment .............................................................................................................34
  9.2    Tax Reporting ..............................................................................................................35
  9.3    Tax Payment ................................................................................................................35

ARTICLE X LIMITATION OF LIABILITY AND INDEMNIFICATION ...........................35
  10.1  Limitation of Liability ...............................................................................................35
  10.2  Indemnification ..........................................................................................................36

ARTICLE XI DURATION OF BORROWER CLAIMS TRUST............................................37
  11.1  Duration ......................................................................................................................37
  11.2  Post-Termination ........................................................................................................38
  11.3  Destruction of Books and Records ..............................................................................38
  11.4  Discharge .....................................................................................................................38

ARTICLE XII MISCELLANEOUS PROVISIONS ...................................................................38

12.1    Governing Law ........................................................................................................38
12.2    Jurisdiction ..............................................................................................................38
12.3    Severability .............................................................................................................39
12.4    Notices ....................................................................................................................39
12.5    Headings ..................................................................................................................39
12.6    Plan Documents .......................................................................................................39
12.7    Cooperation .............................................................................................................40
12.8    Confidentiality ........................................................................................................40
12.9    Entire Borrower Claims Trust Agreement ..............................................................40
12.10   Named Party ............................................................................................................40
12.11   Amendment .............................................................................................................40
12.12   Counterparts ............................................................................................................40

**Exhibits**

Exhibit A – Certificate of Trust
Exhibit B – Initial Borrower Claims Trust Budget
Exhibit C  –Trust Committee Members

# THE RESCAP BORROWER CLAIMS TRUST
## TRUST AGREEMENT

This Borrower Claims Trust Agreement, dated as of December 17, 2013 (this "Borrower Claims Trust Agreement"), is entered into by and among Residential Capital, LLC ("ResCap"), AKA 13, LLC (f/k/a ditech, LLC), DOA Holding Properties, LLC, DOA Properties IX (Lots-Other), LLC, EPRE LLC, Equity Investment I, LLC, ETS of Virginia, Inc., ETS of Washington, Inc., Executive Trustee Services, LLC, GMAC-RFC Holding Company, LLC, GMAC Model Home Finance I, LLC, GMAC Mortgage USA Corporation, GMAC Mortgage LLC, GMAC Residential Holding Company, LLC, GMAC RH Settlement Services, LLC, GMACM Borrower LLC, GMACM REO LLC, GMACR Mortgage Products, LLC, HFN REO SUB II, LLC, Home Connects Lending Services, LLC, Homecomings Financial Real Estate Holdings, LLC, Homecomings Financial, LLC, Ladue Associates, Inc., Passive Asset Transactions, LLC, PATI A, LLC, PATI B, LLC, PATI Real Estate Holdings, LLC, RAHI A, LLC, RAHI B, LLC, RAHI Real Estate Holdings, LLC, RCSFJV2004, LLC, Residential Accredit Loans, Inc., Residential Asset Mortgage Products, Inc., Residential Asset Securities Corporation, Residential Consumer Services of Alabama, LLC, Residential Consumer Services of Ohio, LLC, Residential Consumer Services of Texas, LLC, Residential Consumer Services, LLC, Residential Funding Company, LLC, Residential Funding Mortgage Exchange, LLC, Residential Funding Mortgage Securities I, Inc., Residential Funding Mortgage Securities II, Inc., Residential Funding Real Estate Holdings, LLC, Residential Mortgage Real Estate Holdings, LLC, RFC – GSAP Servicer Advance, LLC, RFC Asset Holdings II, LLC, RFC Asset Management, LLC, RFC Borrower LLC, RFC Construction Funding, LLC, RFC REO LLC and RFC SFJV-2002, LLC (each as a debtor and debtor-in-possession, and collectively, the "Debtors"), Province East LLC, or its successor, as Delaware Trustee, and Peter S. Kravitz of Solution Trust LLC d/b/a Solution Trust, or his successor, as the Borrower Claims Trustee.

## RECITALS

A.    On May 14, 2012, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

B.    On or about August 23, 2013, the Debtors filed the Joint Chapter 11 Plan of Residential Capital, LLC, *et al.*, dated August 23, 2013 (as amended and supplemented and as confirmed, the "Plan", and the related disclosure statement, the "Disclosure Statement").

C.    On or about August 23, 2013, the Bankruptcy Court approved the Disclosure Statement.

D.    On or about December 11, 2013, the Bankruptcy Court issued an order confirming the Plan.

E.    On December 17, 2013, the Effective Date of the Plan occurred.

F.    The Plan provides for a trust (as so formed and administered in accordance with the terms of this Borrower Claims Trust Agreement, the "Borrower Claims Trust") to

administer and distribute the Borrower Claims Trust Assets to holders of Borrower Claims that are Allowed on the Effective Date or that become Allowed after the Effective Date.

G.    This Borrower Claims Trust Agreement is being executed to establish and provide for the administration of the Borrower Claims Trust and the distribution of Borrower Claims Trust Assets as contemplated by the Plan.

H.    The Borrower Claims Trust is intended to qualify as a "qualified settlement fund" within the meaning of Treasury Regulation Section 1.468B-2 and to be exempt from the requirements of the Investment Company Act of 1940 pursuant to Section 3(c)(5) and Sections 7(a) and 7(b) thereof.

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants contained herein, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

1.1    <u>Definitions Incorporated from the Plan</u>.  Other than the terms defined below or elsewhere in this Borrower Claims Trust Agreement, capitalized terms shall have the meaning assigned to them in the Plan.

1.2    <u>Other Definitions</u>.

(a)    "**Administrative Funding Payment**" means the one-time cash payment of $3,200,000 made to the Borrower Claims Trust by the Liquidating Trust on the Effective Date, which amount represents the amount of the administrative costs and expenses of the Borrower Claims Trust to be funded as of the Effective Date by the Liquidating Trust.

(b)    "**Borrower Available Assets**" has the meaning assigned in <u>Section 2.4</u>.

(c)    "**Borrower Claims Payment**" has the meaning assigned in <u>Section 4.1(a)</u>.

(d)    "**Borrower Claims Recovery Percentage**" means (i) in the case of a Borrower Claim against a GMACM Debtor, 30.1%; (ii) in the case of a Borrower Claim against an RFC Debtor, 9.0%; and (iii) in the case of a Borrower Claim against ETS, 100%.

(e)    "**Borrower Claims Register**" has the meaning assigned in <u>Section 2.4(d)</u>.

(f)    "**Borrower Claims Trust**" has the meaning assigned in the Recitals.

(g)    "**Borrower Claims Trust Administrative Reserve**" means the reserve established for paying costs, fees and expenses, and reserving for liabilities, of the Borrower Claims Trust.

2

(h)  "**Borrower Claims Trust Agents**" means the advisors, professionals, other agents and such other Persons to whom the Borrower Trustee delegates authority, including any disbursement agent, of the Borrower Claims Trust appointed or engaged by the Borrower Claims Trustee in accordance with the provisions of this Borrower Claims Trust Agreement.

(i)  "**Borrower Claims Trustee**" means Peter S. Kravitz of Solution Trust LLC d/b/a Solution Trust, or his successor, appointed in accordance with this Borrower Claims Trust Agreement.

(j)  "**Borrower Claims Trust Agreement**" has the meaning assigned in the Recitals.

(k)  "**Borrower Claims Trust Assets**" means (i) all Borrower Available Assets, (ii) Cash constituting Return Amounts returned to the Borrower Claims Trust following the Effective Date in accordance with Section 2.5 and (iii) any interest, income or proceeds of any of the foregoing.

(l)  "**Borrower Claims Trust Beneficial Interest**" means a non-transferable and non-assignable uncertificated beneficial interest in the Borrower Claims Trust to be issued to each holder of an Allowed Borrower Claim, other than an Allowed ETS Borrower Claim and an Allowed Borrower Convenience Claim, the amount of which for each holder shall be calculated as provided in Section 3.1, which entitles its holder to receive distributions of Distributable Excess Cash from the Borrower Claims Trust as set forth in this Borrower Claims Trust Agreement.

(m)  "**Borrower Claims Trust Budget**" has the meaning assigned in Section 2.9(a).

(n)  "**Borrower Claims Trust Website**" means an internet website maintained by the Borrower Claims Trust in accordance with this Borrower Claims Trust Agreement.

(o)  "**Borrower Convenience Claim**" means (i) a Claim that would otherwise be classified as an Allowed Borrower Claim, but, (A) in the case of a Claim against a GMACM Debtor, the aggregate Allowed amount of such Claim is, or is reduced to, $8,500 or less (or such other value as determined by the Trust Committee) and (B) in the case of a claim against an RFC Debtor, the aggregate Allowed amount of such Claim is, or is reduced to, $28,000 or less (or such other value as determined by the Trust Committee) or (ii) such other Claim or class of Claim that the Trust Committee has determined shall be classified as a Borrower Convenience Claim for purposes of this Borrower Claims Trust Agreement.

(p)  "**Borrower Convenience Claim Payment**" means, an amount in Cash equal to $500.00 (or such other amount determined by the Trust Committee) plus the amount of such Allowed Borrower Convenience Claim multiplied by (i) in the case of an Allowed Borrower Convenience Claim against a GMACM Debtor, 30.1% and (ii) in the case of an Allowed Borrower Convenience Claim against an RFC Debtor, 9.0%.

(q)    "**Business Day**" means any day other than a Saturday, Sunday or legal holiday on which the banks in the City of New York, Borough of Manhattan, are authorized to remain closed.

(r)    "**Cause**" means, with respect to the Borrower Claims Trustee,  (i) an act of fraud, embezzlement or theft by the Borrower Claims Trustee in connection with the performance of his or her duties under this Borrower Claims Trust Agreement; (ii) intentional misconduct by the Borrower Claims Trustee with respect to the maintenance and disposition of the Borrower Claims Trust Assets; (iii) intentional disclosure of confidential information by the Borrower Claims Trustee in violation of Section 12.8; or (iv) gross negligence by the Borrower Claims Trustee in the performance of his or her duties under this Borrower Claims Trust Agreement.

(s)    "**Case Management and Servicing Orders**" means (i) the Order Approving Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and (d), Bankruptcy Rules 1015(c), 2002(m), 7016, and 9007 and Local Bankruptcy Rule 2002-2 for Entry of an Order Approving (A) Supplement to Case Management Order Establishing Mandatory Procedures for Management of Adversary Proceedings Commenced by Borrowers and Former Borrowers and (B) Related Relief [Docket No. 3293], as amended by the Amended Order Approving Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and (d), Bankruptcy Rules 1015(c), 2002(m), 7016, and 9007 and Local Bankruptcy Rule 2002-2 for Entry of an Order Approving (A) Supplemental to Case Management Order Establishing Mandatory Procedures for Management of Adversary Proceedings Commenced by Borrowers and Former Borrowers and (B) Related Relief [Docket No. 3490], and (ii) Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1009, 3007 and 9019(b) Approving (I) Claim Procedures, (II) Borrower Claim Procedures, (III) Settlement Procedures, and (IV) Schedule Amendment Procedures [Docket No. 3294].

(t)    "**Certificate of Trust**" means the certificate of trust of the Borrower Claims Trust as required by section 3810 of the Trust Act, substantially in the form set forth in Exhibit A to this Borrower Claims Trust Agreement, and filed in connection with the formation of the Borrower Claims Trust pursuant to the Trust Act.

(u)    "**Confidentiality Parties**" has the meaning assigned in Section 12.8.

(v)    "**Conflicted Member**" has the meaning assigned in Section 5.4(d).

(w)    "**Cooperation Agreement**" means that certain Cooperation Agreement, dated the date hereof, by and between the Borrower Claims Trust and the Liquidating Trust.

(x)    "**Debtors**" has the meaning assigned in the Preamble.

(y)    "**Delaware Trustee**" means Province East LLC, or its successor, which is appointed in accordance with this Borrower Claims Trust Agreement to comply with the requirement of section 3807 of the Trust Act.

(z)    "**Designee**" has the meaning assigned in Section 7.6.

(aa)    "**Disputed Borrower Claims**" means Borrower Claims that at any relevant time are Disputed Claims.

(bb)    "**Disputed Claims Reserve**" means the reserve of Cash maintained by the Borrower Claims Trust, for distribution to holders of Disputed Borrower Claims that are subsequently Allowed.

(cc)    "**Dispute Resolution**" has the meaning assigned in Section 3.7.

(dd)    "**Distributable Excess Cash**" means Cash included at any time in the Borrower Claims Trust Assets, other than the Return Amount Reserve, in excess, but without duplication, of (i) the amount of Cash required for making Borrower Claims Payments in respect of Allowed Borrower Claims, (ii) the minimum amount of Cash required be held in the Disputed Claims Reserve for making payments in respect of Disputed Borrower Claims that may become Allowed pursuant to Section 6.3, and (iii) the amount of Cash required to fund the Borrower Claims Trust Administrative Reserve and any other reserve required to be maintained under this Borrower Claims Trust Agreement.

(ee)    "**Estimated Amount**" means the estimated amount of a Disputed Borrower Claim, as determined by the Borrower Claims Trustee, which may be (i) the filed amount of the Claim, (ii) such amount as estimated by the Bankruptcy Court at the request of the Debtors or the Borrower Claims Trust pursuant to Bankruptcy Code section 502(c), (iii) such other estimated amount determined in accordance with the Plan, including Article VIII.A.4. thereof, or (iv) such amount calculated in good faith on the basis of a reasonable estimate by the Trust Committee taking into account historical resolutions, by litigation or otherwise, of similar Borrower Claims.

(ff)    "**ETS Borrower Claim**" means a Borrower Claim against ETS.

(gg)    "**Fee and Expense Report**" has the meaning assigned in Section 6.7(c).

(hh)    "**Fee Notice Period**" has the meaning assigned in Section 6.7(c).

(ii)    "**FDIC**" means the Federal Deposit Insurance Corporation or any successor institution.

(jj)    "**Fiscal Year**" means any fiscal year of the Borrower Claims Trust, as provided in Section 2.8 hereof.

(kk)    "**KSC Committee Member**" has the meaning assigned in Section 5.1(a).

(ll)    "**Plan**" has the meaning assigned in the Recitals.

(mm)    "**Plan Documents**" means, collectively, the Plan, the Confirmation Order and this Borrower Claims Trust Agreement.

(nn)    "**Return Amount**" has the meaning assigned in Section 2.4(a).

5

(oo)   "**Return Amount Reserve**" means the reserve of Cash maintained by the Borrower Claims Trust for distribution to certain Trust Beneficiaries as provided in <u>Section 6.5</u>.

(pp)   "**Tax Authority**" means a federal, state, local, or foreign government, or agency, instrumentality, or employee thereof, court or other body (if any) charged with the administration of any law relating to Taxes.

(qq)   "**Taxes**" means all (i) federal, state, local, or foreign taxes, including, without limitation, all net income, alternative minimum, net worth or gross receipts, capital, value added, franchise, profits, estimated, property, transfer and sales or use taxes, and (ii) interest, penalties, fines, additions to tax or additional amounts imposed by any Tax Authority or paid in connection with any item described in clause (i) hereof.

(rr)   "**Tax Return**" means a return, declaration, form, election, letter, report, statement, estimate, information return, or other information filed or required to be filed with respect to any Taxes, including any schedule or attachment thereto or amendment thereof, including any claim for a Tax refund.

(ss)   "**Trust Act**" means the Delaware Statutory Trust Act, 12 Del. C. § 3801 et seq., as the same may from time to time be amended, or any successor statute.

(tt)   "**Trust Beneficiaries**" means (i) the holders of Allowed Borrower Claims and (ii) any holder of a Disputed Borrower Claim that may in the future be entitled to receive a distribution of Distributable Excess Cash from the Disputed Claims Reserve.

(uu)   "**Trust Beneficiary Committee Member**" " has the meaning assigned in <u>Section 5.1(a)</u>.

(vv)   "**Trust Committee**" means the committee of individuals appointed to administer and oversee the affairs of the Borrower Claims Trust, as provided in this Borrower Claims Trust Agreement.

(ww)   "**Trustee**" means either of the Borrower Claims Trustee or the Delaware Trustee.

1.3   <u>Meanings of Other Terms</u>.  Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate; words importing the singular number shall include the plural number and vice versa; and words importing persons shall include firms, associations, corporations and other entities.   All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code; the Bankruptcy Rules; or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Borrower Claims Trust Agreement, and the word "herein" and words of similar import refer to this Borrower Claims Trust Agreement as a whole and not to any particular Article, Section or subdivision of this Borrower Claims Trust Agreement.  The term "including" shall mean "including, without limitation."

## ARTICLE II
## CREATION OF BORROWER CLAIMS TRUST

2.1    Creation of Trust.  The Borrower Claims Trust shall be deemed to have been created by the Debtors and the Trustees effective as of the time of filing of the Certificate of Trust.  The Borrower Claims Trust shall bear the name "ResCap Borrower Claims Trust" and the Borrower Claims Trustee may, in connection with the exercise of his powers and duties hereunder, either use this name or such variation thereof from time to time.

2.2    Purpose of Borrower Claims Trust.

(a)    The Borrower Claims Trust is established for the purpose of directing the reconciliation, processing, liquidation and payment of the Allowed Borrower Claims in accordance with this Borrower Claims Trust Agreement, and preserving, holding and managing the Borrower Claims Trust Assets.  For the avoidance of doubt, the Borrower Claims Trust shall be completely independent of the Liquidating Trust, and neither the Liquidating Trust nor its agents shall have any authority over the Borrower Claims Trust or the Borrower Claims Trustee.

(b)    This Borrower Claims Trust Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust.  The Borrower Claims Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall any of the Trustees or the Trust Beneficiaries, for any purpose be, or be deemed to be or be treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Trust Beneficiaries to the Trustees shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Borrower Claims Trust Agreement.

2.3    Status of Borrower Claims Trust and the Trust Committee.

(a)    Subject to the terms of the Confirmation Order, the Borrower Trust shall be the successor-in-interest to the Debtors with respect to any (a) Available Asset constituting Borrower-Related Causes of Action to the extent not waived and released under the Plan and (b) any objection or motion objecting to Borrower Claims that was, is, or could have been commenced or filed, as applicable, by any of the Debtors prior to the Effective Date and shall be deemed substituted for each such Debtor as the party in any such litigation or contested matter.

(b)    The Borrower Claims Trust, acting through the Borrower Claims Trustee under the supervision of the Trust Committee, will be the representative of the Estates as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, with respect to the Borrower-Related Causes of Action and shall have the rights and powers provided in the Bankruptcy Code in addition to any rights and powers granted in the Plan Documents, including the rights to object to Borrower Claims.  The Borrower Claims Trust shall be the

successor-in-interest to the Debtors with respect to any and all such matters and shall be deemed substituted for each such Debtor as the party in any such litigation or contested matter.

(c)     All Borrower-Related Causes of Action are preserved and retained and may be enforced by the Borrower Claims Trust pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to the extent not waived and released under the Plan.

2.4     <u>Transfer of Borrower Available Assets</u>.

(a)     On the Effective Date, subject to the terms of the Confirmation Order, (i) the Liquidating Trust, in its capacity as disbursing agent for the Debtors, if such distribution is not otherwise made by the Debtors, shall transfer (I) Cash in the amount of $56,101,527, which amount represents $57,600,000 (A) <u>less</u> any amounts paid by the Debtors to or on behalf of the holders of Allowed Borrower Claims pursuant to settlements entered into prior to the Effective Date pursuant to the Case Management and Servicing Orders or any other order of the Bankruptcy Court and (B) <u>plus</u> the amount, if any, of the Borrower Trust True-Up, which calculation is set forth on Schedule 2.4 hereto, and (II) the Administrative Funding Payment and (ii) the Debtors shall transfer all of the Available Assets constituting Borrower-Related Causes of Action, in the form thereof existing on such date (clauses (i) and (ii) collectively, the "<u>Borrower Available Assets</u>"), in each case, to the Borrower Claims Trust, free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other persons and entities to the maximum extent contemplated by and permissible under section 1141 of the Bankruptcy Code. For the avoidance of doubt, the Borrower-Related Causes of Action shall not include Estates' claims, rights and remedies with respect to any note and accompanying mortgage or deed of trust originated, owned, acquired or serviced by the Estates as of the Effective Date and any such claim, right or remedy shall constitute an Available Asset to be assigned to the Liquidating Trust; provided, however, the Estates shall expressly reserve and assign to the Borrower Claims Trust, all claims, defenses, set-offs, cross-claims and counterclaims that the Debtors may have against Borrowers with respect to any Borrower Claim. The Borrower Claims Trust shall have such incidents of ownership in such transferred assets as are necessary to undertake the actions and transactions authorized in the Plan Documents. The transfer of the Borrower Available Assets shall be exempt from any stamp, real estate transfer, mortgage recording, sales, use or other similar tax pursuant to section 1146 of the Bankruptcy Code. Upon the transfer of the Borrower Available Assets to the Borrower Claims Trust, such assets shall become Borrower Claims Trust Assets.

(b)     Notwithstanding the foregoing, if on the Effective Date, any of the Borrower Available Assets cannot be transferred to the Borrower Claims Trust for any reason, for example, because the Borrower Claims Trust has not yet established accounts for the purpose of holding Cash or because of a restriction on transferability under applicable non-bankruptcy law that is not superseded by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, the Debtors (or successors thereto) or the Liquidating Trust, as applicable, shall continue to hold such Borrower Claims Trust Assets, as bailee for the account of the Borrower Claims Trust, until such time as the Borrower Claims Trust informs the Debtors (or successors thereto) or the Liquidating Trust, as applicable, that the Borrower Claims Trust may receive such Borrower Available Assets, whereupon such assets shall be promptly transferred to the Borrower Claims Trust and become Borrower Claims Trust Assets;

provided that any proceeds realized from such assets retained by the Debtors (or any successors thereto) or the Liquidating Trust, as applicable, shall nevertheless be deemed to constitute Borrower Claims Trust Assets, and to likewise be held by the Debtors (or successors thereto) or the Liquidating Trust, as applicable, as bailee, and be turned over as soon as practicable to the Borrower Claims Trust pursuant to this Borrower Claims Trust Agreement as if such transfer had not been restricted under applicable non-bankruptcy law.  The Borrower Claims Trustee may commence an action in the Bankruptcy Court to resolve any dispute regarding the allocation of the proceeds of any Borrower Available Assets retained by the Debtors (or any successors thereto) or the Liquidating Trust, as applicable, pursuant to the Plan Documents.

(c)      On or prior to the Effective Date, the Debtors shall deliver or cause to be delivered to the Liquidating Trust any and all of the Debtors' books and records that relate primarily to or that may be reasonably required in connection with the Borrower Available Assets, whether held by the Debtors, their agents, representatives, advisors, attorneys, accountants and any other professionals hired by the Debtors and provide reasonable access to such employees, agents, advisors, attorneys, accountants or any other Debtor professionals with knowledge of matters relevant to the Borrower Available Assets.  The Liquidating Trust shall store and maintain such books and records for the benefit of the Borrower Claims Trust, the Borrower Claims Trustee, and Borrower Claims Trust Agents shall be afforded access to such books and records, in each case, in accordance with the terms of the Cooperation Agreement.

(d)      On or prior to the Effective Date, the Debtors shall deliver, or cause to be delivered, to the Borrower Claims Trust a complete list of all Allowed Borrower Claims, including Allowed ETS Borrower Claims, Allowed Borrower Convenience Claims, if any, and Disputed Borrower Claims, reflected on the claims registry (the "Borrower Claims Register") as of the Effective Date.  The list shall include the names and addresses of the holders of such Claims and, in the case of Allowed Borrower Claims, Allowed ETS Borrower Claims and Allowed Borrower Convenience Claims, the amounts thereof, and in the case of Disputed Borrower Claims, the amounts thereof as filed and the Estimated Amounts (if any) thereof. The list of Disputed Borrower Claims shall include the details of all objections, including filed objections and identified potential objections (if any), in respect of such the Claims.

(e)      The Borrower Claims Trust, as successor-in-interest to the Estates with respect to the Borrower Available Assets, may (i) execute and deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed), and (ii) take, or cause to be taken, all such further action in order to evidence, vest, perfect or effectuate the transfer of all of the Borrower Available Assets to the Borrower Claims Trust and consummate transactions contemplated by and to otherwise carry out the intent of the Plan Documents with respect to such assets.

2.5      Borrower Return Amounts.  Subject to the Kessler Settlement Agreement and the Mitchell Settlement Agreement, to the extent a Trust Beneficiary recovers insurance proceeds on account of all or some of an Allowed Borrower Claim, and payments on account of such Allowed Borrower Claim have been made pursuant to this Borrower Claims Trust Agreement, the Trust Beneficiary shall be required to return a portion of such payments

received by such Trust Beneficiary to the Borrower Claims Trust, in accordance with Article IV.F.6. of the Plan (such returned amount, a "Return Amount").  Any Return Amounts received by the Borrower Claims Trust shall be added to the Return Amount Reserve.

2.6     Title to Borrower Claims Trust Assets.  Subject to Section 2.4(a), upon the transfer of Available Assets, the Borrower Claims Trust shall succeed to all of the Debtors' right, title and interest in the Borrower Available Assets, and the Debtors will have no further rights or interest in or with respect to the Borrower Claims Trust Assets or the Borrower Claims Trust.

2.7     No Reversion to Debtors; Distribution of Remaining Assets.

(a)     In no event shall any part of the Borrower Claims Trust Assets revert to or be distributed to or for the benefit of any Debtor.

(b)     To the extent that after satisfaction in full of all of the costs and expenses of the administration of the Borrower Claims Trust, after all Disputed Borrower Claims have been either Allowed or disallowed, after all Allowed Borrower Claims have been paid pursuant to the Plan Documents, after satisfaction of all other obligations or liabilities of the Borrower Claims Trust incurred or assumed in accordance with the Plan Documents, after the Borrower Claims Trust has made the maximum distribution of Distributable Excess Cash to the Trust Beneficiaries to the extent reasonably practicable, after the Borrower Claims Trust has distributed all of the Cash held in the Return Amount Reserve in accordance with Section 6.5, and after the affairs of the Borrower Claims Trust have been finally wound up and concluded in accordance with the provisions of Article XI hereof and section 3808 of the Trust Act, there shall remain any Borrower Claims Trust Assets, the Borrower Claims Trust shall distribute such remaining Borrower Claims Trust Assets to an organization, selected by the Trust Committee, described in section 501(c)(3) of the Tax Code and exempt from U.S. federal income tax under section 501(a) of the Tax Code that is unrelated to the Debtors, the Borrower Claims Trust or the Borrower Claims Trustee.

2.8     Fiscal Year.  Except for the first and last years of the Borrower Claims Trust, the Fiscal Year of the Borrower Claims Trust shall be the calendar year.  For the first and last years of the Borrower Claims Trust, the Fiscal Year of the Borrower Claims Trust shall be such portion of the calendar year that the Borrower Claims Trust is in existence.  The terms fiscal quarter, or similar references, as used in this Borrower Claims Trust Agreement, shall have a correlative meaning.

2.9     Borrower Claims Trust Budget.

(a)     There shall be prepared an annual plan and budget for the Borrower Claims Trust (any such plan and budget, as it may be amended from time to time in accordance with the terms hereof, the "Borrower Claims Trust Budget") for each Fiscal Year, except that the Borrower Claims Trust Budget for the first Fiscal Year, if less than six calendar months, may be combined with the Borrower Claims Trust Budget for the next succeeding Fiscal Year, and the Borrower Claims Trust Budget for the last Fiscal Year, if less than six calendar months, may be combined with the Borrower Claims Trust Budget for the immediate prior

Fiscal Year, unless the Trust Committee determines that a Borrower Claims Trust Budget is not necessary for such Fiscal Year.  Except as otherwise determined by the Trust Committee, the Borrower Claims Trust Budget shall set forth (on an annual basis) in reasonable detail the anticipated expenses of the Borrower Claims Trust for the relevant period and the sources of funding available to satisfy the expenses.

(b)     The initial Borrower Claims Trust Budget is attached as <u>Exhibit B</u> to this Borrower Claims Trust Agreement.  Except as otherwise approved by the Trust Committee, the form of each Borrower Claims Trust Budget shall be substantially the same as the form of the initial Borrower Claims Trust Budget.

(c)     Not less than thirty (30) days before the beginning of each Fiscal Year (other than the first Fiscal Year and other than the second Fiscal Year, if the initial Borrower Claims Trust Budget covers such Fiscal Year and other than the last Fiscal Year, if the Borrower Claims Trust Budget for the next preceding Fiscal Year covers such Fiscal Year), the Borrower Claims Trustee shall submit to the Trust Committee a proposed Borrower Claims Trust Budget for such Fiscal Year, together with a comparison to the Borrower Claims Trust Budget then in effect and an explanation of the differences between the two in reasonable detail.  The Borrower Claims Trust Budget for such Fiscal Year shall not become effective until approved by the Trust Committee, and until so approved, the Borrower Claims Trust Budget for the prior year shall constitute the Borrower Claims Trust Budget for the subsequent year on an interim basis.

(d)     Amendments, if any, to the Borrower Claims Trust Budget shall not become effective unless and until approved by the Trust Committee.

(e)     Except as otherwise approved by the Trust Committee, the amount expended in any Fiscal Year (or, if the initial or final Borrower Claims Trust Budget shall cover a combined period as provided above, in such combined period) on any item of expense set forth in the Borrower Claims Trust Budget shall not exceed by more than twenty percent (20)% the budgeted amount therefor set forth in the Borrower Claims Trust Budget for the relevant Fiscal Year.

2.10   <u>Insurance</u>.   The Borrower Claims Trust shall maintain customary insurance coverage for the protection of the Trustees and Trust Committee (which coverage shall be primary to any other coverage potentially available to such Persons), and may procure insurance coverage for such employees and Borrower Claims Trust Agents as the Trust Committee may determine in its discretion, and the cost thereof shall be reflected in the Borrower Claims Trust Budget.

2.11   <u>Books and Records</u>.

(a)     The Borrower Claims Trustee shall cause to be stored and maintained books and records for the period commencing on the date hereof through the termination of the Borrower Claims Trust, containing such information concerning the Borrower Claims Trust Assets, the conduct of the affairs of the Borrower Claims Trust and the Trust Beneficiaries, in such detail and for such periods of time as may be necessary to enable the Borrower Claims

11

Trust to make full and proper accounting in respect thereof and to comply with applicable provisions of law. Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the Borrower Claims Trust.

(b)     The Borrower Claims Trust shall be authorized without further application to the Bankruptcy Court or notice to any party, to abandon or otherwise destroy books and records (whether in electronic or paper format) in accordance with Section 11.2.

(d)     Anything in the Trust Act to the contrary notwithstanding, no Trust Beneficiary shall have the right to obtain from the Borrower Claims Trust any of its books or records except as expressly provided in this Borrower Claims Trust Agreement or as may otherwise be expressly permitted by the Borrower Claims Trustee.

2.12     No Interest or Accruals.  Except as otherwise may be expressly provided in the Plan Documents, holders of Borrower Claims shall not be entitled to interest on the distributions provided for in this Borrower Claims Trust Agreement, regardless of whether such distributions are deliverable on or at any specified time after the Effective Date.

# ARTICLE III
# TRUST BENEFICIARIES

3.1     Receipt of Borrower Claims Trust Beneficial Interest.  Subject to Section 4.1(c), on the Effective Date, each holder of an Allowed Borrower Claim as of the Effective Date shall be deemed to receive a Borrower Claims Trust Beneficial Interest in an amount corresponding to the amount of such holder's Allowed Claim multiplied by the applicable Borrower Claims Recovery Percentage.  Subject to Section 4.1(c), the holder of a Borrower Claim that is a Disputed Claim on the Effective Date and that subsequently becomes Allowed, in whole or in part, shall be deemed to receive a Borrower Claims Trust Beneficial Interest in an amount corresponding to the amount of such holder's Allowed Claim multiplied by the applicable Borrower Claims Recovery Percentage at such time as such Claim becomes Allowed.

3.2     Evidence of Borrower Claims Trust Beneficial Interest.  Ownership of a Borrower Claims Trust Beneficial Interest shall be evidenced by appropriate notation on the books and records maintained for that purpose by the Borrower Claims Trust or an agent of the Borrower Claims Trust.  Such notation shall be conclusive absent manifest error, and the Borrower Claims Trust and the Borrower Claims Trustee shall treat each Person whose name is recorded on the books and records of the Borrower Claims Trust as aforesaid as the owner of the Borrower Claims Trust Beneficial Interest indicated therein for all purposes of this Borrower Claims Trust Agreement, notwithstanding notice to the contrary.  The notation shall be in such form as the Borrower Claims Trustee shall determine, but shall correspond in amount or quantity to the amount of the Allowed Borrower Claim in respect of which the Borrower Claims Trust Beneficial Interest was issued.  A Trust Beneficiary shall be deemed the "holder of record" of such beneficiary's Borrower Claims Trust Beneficial Interest for purposes of all applicable laws, rules and regulations. The Borrower Claims Trustee shall, upon the written request of a Trust Beneficiary, provide reasonably adequate documentary

12

evidence of such Trust Beneficiary's Borrower Claims Trust Beneficial Interest; provided that the Borrower Claims Trustee shall not be required to provide such evidence to a Trust Beneficiary in response to more than one request of such Trust Beneficiary during any twelve-month period. The expense (including Borrower Claims Trustee fees and professional fees) of providing such documentation shall be borne by the requesting Trust Beneficiary.

3.3     Non-Transferability of the Borrower Claims Trust Beneficial Interests. Borrower Claims Trust Beneficial Interests shall not be transferable or assignable except by will, intestate succession or operation of law; provided that any transfer or assignment of a Borrower Claims Trust Beneficial Interest by will, intestate succession or operation of law shall not be effective unless and until such transfer or assignment is recorded on the books and records of the Borrower Claims Trust maintained for that purpose, as provided in Section 3.2. Notwithstanding any other provision to the contrary, the Borrower Claims Trustee may disregard any purported transfer or assignment of Borrower Claims Trust Beneficial Interests by will, intestate succession or operation of law if necessary information (as reasonably determined by the Borrower Claims Trustee), including applicable Tax-related information, is not provided by such purported transferee or assignee to the Borrower Claims Trustee.

3.4     Borrower Claims Trust Beneficial Interests Not Securities. The Borrower Claims Trust Beneficial Interests shall not constitute "securities" and shall not be registered pursuant to the Securities Act of 1933, as amended, or any state securities law. However, if it should be determined that the Borrower Claims Trust Beneficial Interests constitute "securities," the exemption provisions of section 1145 of the Bankruptcy Code shall apply to the Borrower Claims Trust Beneficial Interests.

3.5     Rights of Trust Beneficiaries. Each Trust Beneficiary shall be entitled to participate in the rights and benefits due to a Trust Beneficiary hereunder on account of its Borrower Claims Trust Beneficial Interest. Each Trust Beneficiary shall take and hold the same, subject to all the terms and conditions of the Plan Documents. The interest of a Trust Beneficiary is hereby declared and shall be, in all respects, personal property.

3.6     Interest Beneficial Only. Except as expressly provided hereunder, a Trust Beneficiary shall have no title to, right to, possession of, management of or control of the Borrower Claims Trust or the Borrower Claims Trust Assets. The ownership of a Borrower Claims Trust Beneficial Interest in the Borrower Claims Trust shall not entitle any Trust Beneficiary to any title in or to the Borrower Claims Trust Assets or to any right to call for a partition or division of such assets or to require an accounting, except as specifically provided herein.

3.7     Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to a Borrower Claims Trust Beneficial Interest, the Borrower Claims Trust (as determined by the Trust Committee at its sole election or by the Borrower Claims Trustee pursuant to delegated authority of the Trust Committee) shall be entitled to refuse to comply with any such conflicting claims or demands. In so refusing, the Borrower Claims Trust may elect to make no payment or distribution with respect to the Borrower Claims Trust Beneficial Interest at issue subject to the claims or demands involved, or any part thereof, and the Borrower Claims Trust shall be entitled to refer such conflicting claims or demands to the

Bankruptcy Court, which shall have exclusive and continuing jurisdiction over resolution of such conflicting claims or demands. Neither the Borrower Claims Trust, the Trust Committee nor the Borrower Claims Trustee shall be or become liable to any party for either (x) the election to continue making payments or distributions pursuant to its books and records, without regard to the conflicting claims or demands; or (y) the election to cease payments or distributions with respect to the subject Borrower Claims Trust Beneficial Interest(s). In the event that the Borrower Claims Trust elects to cease payments, it shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court (or such other court of proper jurisdiction) or (ii) all differences have been resolved by a written agreement among all of such parties and the Borrower Claims Trust, which agreement shall include a complete release of the Borrower Claims Trust, the Trust Committee and the Borrower Claims Trustee in form and substance reasonably satisfactory to the Trust Committee (the occurrence of either (i) or (ii), a "<u>Dispute Resolution</u>"). Promptly after a Dispute Resolution is reached, the Borrower Claims Trust shall transfer the payments and distributions, if any, held in the segregated account, together with any interest and income earned thereon, if any, in accordance with the terms of such Dispute Resolution.

3.8    <u>Trust Beneficiary Liability to Third Persons</u>. No Trust Beneficiary shall be subject to any personal liability whatsoever, in tort, contract or otherwise, to any person in connection with the Borrower Claims Trust Assets or the affairs of the Borrower Claims Trust to the fullest extent provided by section 3803(a) of the Trust Act.

3.9    <u>Actions in the Right of the Borrower Claims Trust</u>. No Trust Beneficiary shall have the right to bring an action in the right of the Borrower Claims Trust to recover a judgment pursuant to section 3816 of the Trust Act unless such Trust Beneficiary or Trust Beneficiaries individually or collectively own ten percent (10%) or more of the total Borrower Claims Trust Beneficial Interests outstanding.

**ARTICLE IV**
**SATISFACTION OF BORROWER CLAIMS**

4.1    <u>General</u>.

(a)    Each holder of an Allowed Borrower Claim shall be entitled to receive (i) Cash in an amount equal to the Allowed amount of such Claim multiplied by the applicable Borrower Claims Recovery Percentage (a "<u>Borrower Claims Payment</u>") and (ii) its Borrower Claim Trust Beneficial Interest, as provided in <u>Section 3.1</u>. For the avoidance of doubt, any insurance proceeds to which a holder of an Allowed Borrower Claim may be entitled shall be in addition to, and not inclusive of, a Borrower Claims Payment, subject to the right of the Borrower Claims Trust to any Return Amounts pursuant to <u>Section 2.5</u>, and any Cash distributions from the Return Amount Reserve shall be made in accordance with <u>Section 6.5(b)</u>.

(b)    For the purposes of determining the Allowed amount of a Borrower Claim, if such Borrower Claim constitutes, in whole or in part, a Consent Order Borrower Claim, the Allowed amount of such Borrower Claim shall be reduced to the extent paid pursuant to the Consent Order or any settlement of the Debtors' obligations thereunder,

14

without further order of the Bankruptcy Court.

(c)     Notwithstanding the provisions of subsection (a) above, (i) each holder of a Borrower Convenience Claim that is or becomes Allowed shall receive a payment in Cash in an amount equal to the Borrower Convenience Claim Payment with respect to such Claim and (ii) each holder of an ETS Borrower Claim that is or becomes Allowed shall receive a Borrower Claim Payment with respect to such Claim.   For the avoidance of doubt, the payments received by holders of Borrower Convenience Claims and ETS Borrower Claims pursuant to this Section 4.1(c) shall represent the full and final satisfaction of such Claims and such holders shall not receive Borrower Claims Trust Beneficial Interests.

(d)     The Borrower Claims Payment is intended to be comparable to the recovery that the holder of an Allowed Claim in the same amount against the same Debtor Group would realize from distributions made by the Liquidating Trust on Units issued to Unitholders with respect to such Allowed Claim, based on the estimated value of the Liquidating Trust Assets available for distribution to Unitholders as of the Effective Date (without, in each case, giving effect to any insurance proceeds, including proceeds from the GM Policies that may be received in respect of certain Allowed Borrower Claims or to the time delay in receipt of distributions in respect of the Units).   Notwithstanding the foregoing and subject to the terms of the Confirmation Order, the allocated share of Cash available for distributions from the Borrower Claims Trust shall be solely determined by the provisions of this Borrower Claims Trust Agreement, and not by the Liquidating Trust Agreement or any other Plan Document.

4.2     Borrower Claims Payments.

(a)     As soon as practicable following the Effective Date, the Borrower Claims Trust shall make a Borrower Claims Payment to each holder of a Borrower Claim that is Allowed as of the Effective Date.

(b)     Each holder of a Borrower Claim that was not Allowed as of the Effective Date and that is subsequently Allowed, in whole or in part, shall receive from the Disputed Claims Reserve a Borrower Claims Payment in respect of such Claim following the date such Claim becomes Allowed.   Such Borrower Claims Payments shall be made at such time and from time to time as determined by the Trust Committee, provided that a Borrower Claims Payment shall be made no later than ninety (90) days following date on which the respective Borrower Claim becomes Allowed.

(c)     At the time a Borrower Claims Payment is made in respect of a Borrower Claim that becomes Allowed following the Effective Date, there shall also be paid to the holder of such Borrower Claim from the Disputed Claims Reserve an amount of Cash equal to all distribution that the holder of a Borrower Claims Trust Beneficial Interest corresponding to such Allowed Borrower Claim would have received had such holder received such Borrower Claims Trust Beneficial Interest as of the Effective Date; provided, that with respect to Borrower Convenience Claims and ETS Borrower Claims that become Allowed following the Effective Date, there shall be paid to each such holder of a Borrower Convenience Claim or ETS Borrower Claim, such amounts that such holder would have received under Section 4.1(c)

15

had such Claim been Allowed as of the Effective Date.

(d)      Notwithstanding anything to the contrary herein, the Borrower Claims Trust shall in no event be obligated to make any payment to a holder of a Borrower Claim, whether by Borrower Claims Payment or distribution in respect of a Borrower Claims Trust Beneficial Interest or otherwise, in the event the total amount of such Borrower Claim, after giving effect to payment of any Return Amount, has been satisfied in full, and such holder has collected the total amount of such Borrower Claim, whether through the receipt of insurance proceeds, payments hereunder, other sources or a combination of the foregoing, or otherwise.

(e)      Notwithstanding anything to the contrary herein, the Trust Committee may determine to adjust the timing and amount of a Borrower Claims Payment to the extent necessary for the Borrower Claims Trust to meet the Cash maintenance requirements of the Disputed Claims Reserve and the Borrow Claims Trust Administrative Reserve set forth in this Trust Agreement.

4.3      Distributions of Distributable Excess Cash.

(a)      Subject to Section 6.5, if at any time the Trust Committee determines that there exists any Distributable Excess Cash held by the Borrower Claim Trust, including Cash in the Disputed Claims Reserve in excess of the minimum amount specified in Section 6.3, the Trust Committee may, but shall not be required to, make a distribution of all or part of such Distributable Excess Cash to holders of Borrower Claims Trust Beneficial Interests. Such distribution shall be made pro rata to all holders of Borrower Claims Trust Beneficial Interests; provided that in connection with such distribution the Disputed Claims Reserve shall be deemed to have a Borrower Claims Trust Beneficial Interest corresponding to the Estimated Amount of all Disputed Borrower Claims as of the relevant time. The Trust Committee shall establish a record date, which shall be no earlier than fifteen (15) calendar days prior to the date of the distribution, for the purpose of determining the holders of Borrower Claims Trust Beneficial Interests entitled to receive such distribution and the Borrower Claims Trust Beneficial Interest deemed held for these purposes by the Disputed Claims Reserve.

(b)      At such time as all Cash in the Disputed Claims Reserve shall have been distributed, and Borrower Claim Payments have been made to all holders of Allowed Borrower Claims, any remaining Distributable Cash shall be distributed to the holders of Borrower Claims Trust Beneficial Interests pro rata.

4.4      Delivery of Payments and Distributions. Subject to Bankruptcy Rule 9010, and except as provided in this Section 4.4, all payments and distributions to any holder of an Allowed Borrower Claim shall be made at the address of such holder as set forth on the Borrower Claims Register delivered to the Borrower Claims Trust pursuant to Section 2.4(d), unless the Debtors or the Borrower Claims Trustee has been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim by such holder that contains an address for such holder different than the address of such holder as set forth on the Borrower Claims Register.

16

4.5     Undeliverable and Unclaimed Payments and Distributions.  In the event that any payment or distribution to any holder of an Allowed Borrower Claim or Allowed Borrower Convenience Claim is returned as undeliverable, the Borrower Claims Trust in consultation with the Borrower Claims Trustee shall use commercially reasonable efforts to determine the current address of each holder, but no payment or distribution to such holder shall be made unless and until the Borrower Claims Trust has determined the then current address of such holder; provided, however, that all payments and distributions made pursuant to this Borrower Claims Trust Agreement that are unclaimed for a period of six (6) months after payment or distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the Borrower Claims Trust and any entitlement of any holder of any Claims to such payments or distributions shall be extinguished and forever barred.  The Borrower Claims Trust shall have no further obligation to make any payment or distribution to the holder of such Claim on account of such Claim, and any entitlement of any holder of such Claim to any such payments or distributions shall be extinguished and forever barred; provided, however, that the holder of such Claim may receive future payments or distributions on account of such Claim by contacting the Borrower Claims Trustee prior to the final distribution by the Borrower Claims Trust pursuant to Section 4.3(b).

4.6     Withholding and Reporting Requirements.  The Borrower Claims Trust may withhold and pay to the appropriate Tax Authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or distribution to the Trust Beneficiaries. All such amounts withheld and paid to the appropriate Tax Authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed to such holders for all purposes of the Plan and this Borrower Claims Trust Agreement. The Borrower Claims Trust shall be authorized to collect such tax information from the Trust Beneficiaries including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan and this Borrower Claims Trust Agreement. To receive distributions under the Plan, the Trust Beneficiaries shall be required to identify themselves to the Borrower Claims Trust and provide tax information and the specifics of their holdings, to the extent the Borrower Claims Trust or such disbursing agent deems appropriate (including completing the appropriate Internal Revenue Service Form W-8 or Internal Revenue Service Form W-9, as applicable to each holder).  The Borrower Claims Trust may refuse to make a distribution to any Trust Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered; provided, however, that, upon the delivery of such information by a Trust Beneficiary, the Borrower Claims Trust shall make such distribution to which the Trust Beneficiary is entitled, without interest; and provided further that, if the holder fails to comply with such a request within one (1) year, such distribution shall be deemed an unclaimed distribution to be treated as the Trust Committee determines in its discretion; and provided further that, if the Borrower Claims Trust fails to withhold in respect of amounts received or distributable with respect to any such holder and the Borrower Claims Trust is later held liable for the amount of such withholding, such holder shall reimburse the Borrower Claims Trust for such liability including interest, penalties, fines and other additions thereto.  Notwithstanding the foregoing, each Trust Beneficiary that receives a distribution under the Plan shall have the sole and exclusive responsibility for the payment of any Taxes imposed by any governmental unit, including income, withholding and other Taxes, on account of such distribution.

4.7     <u>Disbursing Agent</u>.  Upon prior approval by the Trust Committee, the Borrower Claims Trustee may engage one or more agents to make payments and distributions. References in this Borrower Claims Trust Agreement to distributions by the Borrower Claims Trust shall include distributions made by a disbursing agent.

4.8     <u>Minimum Payments; Other Limitations</u>.  No Cash payment of less than $50.00 shall be made by the Borrower Claims Trust to a holder of an Allowed Claim on account of such Allowed Claim. If a holder of an Allowed Claim would be entitled to receive less than $50.00 as of the time of a particular payment, but would be entitled to receive more than $50.00 in combination with later payments or distributions, the Borrower Claims Trust will combine such payments with later payments or distributions to such holder of an Allowed Claim so that such holder may eventually be entitled to a payment or distribution of at least $50.00 in value.  Whenever any payment of Cash of a fraction of a dollar would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

4.9     <u>Subordination</u>.  All distributions pursuant to this Borrower Claims Trust Agreement shall be subject to the subordination provisions of the Plan.  The Borrower Claims Trust reserves the right to seek subordination of any Claim in accordance with applicable law.

**ARTICLE V**
**<u>TRUST COMMITTEE</u>**

5.1     <u>General</u>.  The affairs of the Borrower Trust shall be managed by, or under the direction, of the Trust Committee, which shall have such powers and authority as are provided in this <u>Article V</u> and as elsewhere set forth in this Borrower Trust Agreement and in the Trust Act.

5.2     <u>Membership</u>

(a)     The Trust Committee shall consist of no more than three (3) members, one of whom shall be either a member of the Kessler Settlement Class or a representative of counsel for the Kessler Settlement Class (the "<u>KSC Committee Member</u>").  Each other initial member of the Trust Committee shall be a Borrower (or representative thereof) that holds a Borrower Claims Trust Beneficial Interest appointed by counsel for the Kessler Settlement Class with the consent of the Plan Proponents, which consent shall not be unreasonably withheld (each such other member, a "<u>Trust Beneficiary Committee Member</u>").  Each member of the Trust Committee shall be a natural person at least 18 years of age.  The identity of the initial members of the Borrow Claims Trust Committee, including the KSC Committee Member and the Trust Beneficiary Committee Members, if any, is set forth on <u>Exhibit C</u> hereto.

(b)     Each member of the Trust Committee shall hold office until the earlier of (i) the termination of the Borrower Claims Trust, (ii) the resignation, death, incapacity or bankruptcy of such member, or (iii) the removal of such member by counsel for the Kessler Settlement Class.  In the event of a vacancy on the Trust Committee resulting from the foregoing clauses (ii) or (iii), a replacement KSC Committee Member or Trust Beneficiary

18

Committee Member, as applicable, shall be appointed by the representatives of the Kessler Settlement Class.

(c)     The Trust Committee shall act by affirmative consent of a majority of the members constituting the Trust Committee, unless otherwise provided in this Borrower Claims Trust Agreement, given at a meeting called for that purpose, or by written consent in lieu of meeting, in accordance with this Borrower Claims Trust Agreement.  Members of the Trust Committee may vote by proxies duly authorized in writing.

(d)     In the event that, following the failure of counsel for the Kessler Settlement Class to appoint a successor member when required pursuant to <u>Section 5.2(b)</u>, there is at any time no member on the Trust Committee, the Borrower Claims Trustee may serve as a temporary member of the Trust Committee while promptly filing a motion with the Bankruptcy Court for approval, after notice and hearing, of a successor member as designated by the Borrower Claims Trustee in the motion.

(e)     The Borrower Claims Trustee shall, as frequently as requested by the Trust Committee, provide the Trust Committee with an update (verbal or written, as determined by the Trust Committee) as to the various actions the Borrower Claims Trustee has taken (or declined to take) during the relevant time period, and shall offer the Trust Committee an opportunity to ask questions with respect to such actions or inactions.  The Borrower Claims Trustee shall, on a regular basis, inform the Trust Committee of actions that the Borrower Claims Trustee is pursuing and is planning to pursue in connection with the discharge of the Borrower Claims Trustee's duties and responsibilities pursuant to the Plan Documents, including with respect to the resolution or prosecution of Borrower Claims and Borrower-Related Causes of Action.  The Borrower Claims Trustee shall seek the advice, consent, and approval of the Trust Committee when required by the Plan Documents.

5.3     <u>Authority</u>.  The Trust Committee shall be responsible for exercising the authority and performing the obligations of the Borrower Claims Trust expressly provided for in this Borrower Claims Trust Agreement and otherwise giving effect to the intents and purposes of this Borrower Claims Trust Agreement.  Without limiting the generality of the preceding sentence, and in furtherance thereof, the Trust Committee shall be expressly authorized and empowered to undertake, acting as appropriate through the Borrower Claims Trustee, the following actions on behalf of the Borrower Claims Trust, without the need for any additional approvals, authorization, or consents and without any further notice to or action, order or approval of the Bankruptcy Court; <u>provided</u>, that all such actions are undertaken in a manner consistent with the purposes of the Borrower Claims Trust (a) review and supervise the activities of the Borrower Claims Trustee, (b) have authority to remove and replace the Borrower Claims Trustee in accordance with <u>Article VI</u> hereof and (c) perform all other actions specified to be performed by the Trust Committee in this Borrower Claims Trust Agreement and the Plan Documents.

5.4     <u>Meetings of the Trust Committee</u>.

(a)     Meetings of the Trust Committee may be called by any member of the Trust Committee, by delivery of written notice of the time and place of such special meeting to

each member of the Trust Committee by personal delivery, facsimile or other means of electronic communication at least two (2) Business Days prior to such meeting.

(b)    The presence at a meeting of all of the members of the Trust Committee shall constitute a quorum for the transaction of business at such meeting of the Trust Committee, but if less than all members are present at a meeting, any member of the Trust Committee present may adjourn the meeting from time to time.  When a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken.  At the adjourned meeting, the Trust Committee may transact any business which might have been transacted at the original meeting.

(c)    Meetings may be held in person within or without the State of Delaware, telephonically or electronically, and upon such notice as may be determined from time to time in accordance with the rules and procedures adopted by the Trust Committee, and any member of the Trust Committee who participates by such means shall be deemed to be present for purposes of quorum under Section 5.4(b).  Members of the Trust Committee may also act by written consent in lieu of a meeting, which consent may be less than unanimous, provided each of the members of the Trust Committee shall have received notice of the action to be taken by written consent in lieu of a meeting at least two (2) Business Days in advance of the effectiveness thereof.  Any such written consents shall be filed with the minutes of the proceedings of the Trust Committee

(d)    Individual members of the Trust Committee may participate in discussions at meetings, but shall recuse themselves from any confidential discussion designated as such by the other members of the Trust Committee and from voting on any proposed action by the Borrower Claims Trustee that involves (i) an objection to any Borrower Claim held by such member or by the Trust Beneficiary that any member represents, or any Insider (as defined in section 101(31) of the Bankruptcy Code) of such member or Trust Beneficiary (such member, a "Conflicted Member"), (ii) the initiation by the Borrower Claims Trustee of any litigation or prosecution of any Borrower-Related Cause of Action against the Conflicted Member or the Trust Beneficiary represented by such member, (iii) the settlement of any Borrower-Related Cause of Action against the Conflicted Member or the Beneficiary represented by such member, or (iv) any other matter as to which the any member or the Trust Beneficiary represented by such member that presents a conflict of interest.

5.5    Compensation.  Other than (a) a fee of $250.00 per meeting of the Trust Committee or any committee thereof in the case of a Trust Beneficiary Committee Member who is not a Borrower Claims Trust Agent and (b) the reasonable expenses, if any, of attendance at such meetings, the members of the Trust Committee shall not be entitled to compensation for time spent in preparation for and participation in meetings of the Trust Committee or any committee thereof; provided, however, that nothing contained herein shall preclude a member of the Trust Committee who is a Borrower Claims Trust Agent engaged to perform services from charging for services that are professional in nature in connection with a meeting of the Trust Committee.  Fees payable to members of the Trust Committee pursuant to this Section 5.5 shall be satisfied from the Borrower Claims Trust Administrative Reserve.

20

5.6    <u>Bylaws</u>.  The Trust Committee may adopt bylaws or protocols which shall contain such additional provisions, procedures and protocols for the governance of the Borrower Claims Trust and as shall be determined from time to time by the Trust Committee; <u>provided</u> that no such provisions, procedures and protocols shall in any way be inconsistent with the terms of this Borrower Claims Trust Agreement or the other Plan Documents.

**ARTICLE VI**
**OPERATION OF THE BORROWER CLAIMS TRUST**

6.1    <u>Prohibited Activities</u>.

(a)    The Borrower Claims Trustee and the Borrower Claims Trust Agents shall hold the Borrower Claims Trust out as a trust in the process of liquidation, whose activities are limited to the liquidation of the Borrower Claims Trust Assets on behalf, and for the benefit, of the Trust Beneficiaries and the other purposes set forth in this Borrower Claims Trust Agreement.  Without limiting the foregoing, the Borrower Claims Trust shall not hold itself out as an investment company, and no part of the Borrower Claims Trust Assets shall be caused by the Borrower Claims Trustee to be used or disposed of in furtherance of any trade or business.

6.2    <u>Resolution of Disputed Borrower Claims</u>.

(a)    The Borrower Claims Trustee, or one or more Borrower Claims Trust Agents designated by the Borrower Claims Trustee if, and to the extent, authorized by the Trust Committee, shall be authorized to resolve, on behalf of the Borrower Claims Trust, all Disputed Borrower Claims without further Bankruptcy Court order, provided, however, that the Borrower Claims Trustee must obtain the prior approval of the Trust Committee in the event the resolution of a Disputed Borrower Claim would result in an Allowed Claim that exceeds $100,000.  Without limiting the foregoing, the Borrower Claims Trust may, as successor-in-interest to the Debtors, continue to prosecute objections to Borrower Claims pursuant to the Case Management and Servicing Orders as the same may be amended or replaced from time to time or pursuant to any other order of the Bankruptcy Court, as determined by the Trust Committee.

(b)    If the Borrower Claims Trust and the holder of a Disputed Borrower Claim are unable to reach a settlement on a Disputed Borrower Claim, or if the Borrower Claims Trust determines to disallow a Disputed Borrower Claim, such Disputed Borrower Claim shall be submitted to the Bankruptcy Court for adjudication by way of an objection to such Borrower Claim.  If it is determined that the Bankruptcy Court does not have jurisdiction to resolve any Disputed Borrower Claim, then such Disputed Borrower Claim shall be submitted to the District Court or other court of appropriate jurisdiction for resolution. The Borrower Claims Trust shall file with the Bankruptcy Court a quarterly notice of Disputed Borrower Claims resolved and/or settled during the prior quarter following the end of each fiscal quarter, starting with the first complete fiscal quarter after the Effective Date.

(c)    Disputed Borrower Claims that become Allowed, in whole or in part, shall be satisfied exclusively out of the Disputed Claims Reserve, in the manner provided in

21

<u>Article IV</u>, and in the order in which such Disputed Borrower Claims are Allowed.  In the event the Cash remaining in the Disputed Claims Reserve shall be insufficient to satisfy all of the Disputed Borrower Claims that have become Allowed and are due to be satisfied with distributions from the Disputed Claims Reserve, such Disputed Borrower Claims shall be satisfied pro rata in proportion to their respective Allowed Claim amounts.  After (i) all Cash has been distributed from the Disputed Claims Reserve, (ii) no available Cash remains in the Borrower Claims Trust Assets that is not otherwise reserved for use for other purposes in accordance with the provisions of this Borrower Claims Trust Agreement, and (iii) the Trust Committee does not have a reasonable expectation that additional funds will be added to the Borrower Claims Trust Assets in the future, no further distributions shall be made in respect of Disputed Borrower Claims.

(d)     The Trust Committee may, from time to time, make immaterial technical adjustments, or seek an adjusted determination from the Bankruptcy Court of, the Estimated Amounts of the Disputed Borrower Claims.

6.3     <u>Disputed Claims Reserve</u>.

(a)     On or as soon as practicable following the Effective Date, the Borrower Claims Trust shall establish the Disputed Claims Reserve.

(b)     The Borrower Claims Trustee shall, at the direction of the Trust Committee, cause to be added to and maintained in the Disputed Claims Reserve, from time to time, at least that amount of Cash sufficient (i) to make Borrower Claims Payments in respect of all Disputed Borrower Claims or in the case of Borrower Convenience Claims or ETS Borrower Claims, the amount provided in <u>Section 4.1(c)</u>, as if such Claims had been Allowed in the amount of their respective Estimated Amounts and (ii) to pay to such holders, other than in respect of Borrower Convenience Claims and ETS Borrower Claims, the amount of all distributions made to holders of Borrower Claims Trust Beneficial Interests since the Effective Date as if such holders of Disputed Borrower Claims had received Borrower Claims Trust Beneficial Interest corresponding to the Estimated Amount of such Claims; <u>provided</u> that Cash shall only be required to be added to the Disputed Claims Reserve to the extent of available Cash included in the Borrower Claims Trust Assets that is not otherwise reserved for use for other purposes in accordance with the provisions of this Borrower Claims Trust Agreement.

(c)     All Cash held in the Disputed Claims Reserve shall be maintained with a United States FDIC insured financial institution, and may be maintained in an interest-bearing account, as the Trust Committee may from time to time determine.  The Cash in the Disputed Claims Reserve shall be held separately and shall not be commingled with any other Cash constituting Borrower Claims Trust Assets.

6.4     <u>Borrower Claims Trust Administrative Reserve</u>.

(a)     On the Effective Date, there shall be established a Borrower Claims Trust Administrative Reserve for the purpose of maintaining Cash allocated and retained by the Borrower Claims Trust from time to time in an amount necessary (subject to the Borrower Claims Trust Budget) to satisfy reasonable costs and expenses of the Borrower Claims Trust

and other obligations and liabilities incurred, assumed or reasonably anticipated by the Borrower Claims Trust (or to which the Borrower Claims Trust Assets are otherwise subject) in accordance with the Plan Documents, including without limitation (i) fees and costs incurred in connection with the protection, preservation, liquidation and distribution of the Borrower Claims Trust Assets; (ii) the fees and costs incurred in connection with investigating, prosecuting and resolving Disputed Borrower Claims and other Borrower-Related Causes of Action; (iii) the fees and costs of maintaining the Disputed Claims Reserve, the Borrower Claims Trust Administrative Reserve and the Return Amount Reserve; (iv) reserves for any judgments, settlements or other Cash liabilities or potential liabilities that are or may be payable by the Borrower Claims Trust, as determined by the Trust Committee; (v) any Taxes imposed on the Borrower Claims Trust or in respect of the Borrower Claims Trust Assets or otherwise, including the Disputed Claims Reserve; (vi) costs and expenses of the Borrower Claims Trustee, the Trust Committee, the Borrower Claims Trust Agents, and their respective employees, professionals and advisors (but not including expenses and fees incurred by the Kessler Class Claimants pursuant to the GM Insurance Rights) and (vii) such other costs, fees and expenses as shall be provided for in the Borrower Claims Trust Budget and as may be incurred in carrying out the purposes and intents of this Borrower Claims Trust Agreement.

(b)    The Administrative Funding Payment shall be used to fund the Borrower Claims Trust Administrative Reserve. In the event the Trust Committee determines that additional Cash is necessary to satisfy the administrative costs and expenses of the Borrower Claims Trust, the Borrower Claims Trustee, at the direction of the Trust Committee, may fund the Borrower Claims Trust Administrative Reserve with other Borrower Available Assets, as necessary or appropriate in furtherance of the purposes thereof, provided that in no event may the Borrower Claims Trust receive or retain Cash in excess of a reasonable amount to meet claims and contingent liabilities of the Borrower Claims Trust or to maintain the value of the Borrower Claims Trust Assets. Any Cash released from the Borrower Claims Trust Administrative Reserve shall be available for distribution in accordance with the provisions of Article IV.

(c)    Cash in the Borrower Claims Trust Administrative Reserve shall be held separately and shall not be commingled with any other Cash constituting Borrower Claims Trust Assets.

6.5    Return Amount Reserve.

(a)    There shall be established a Return Amount Reserve for the purpose of maintaining Return Amounts received and retained by the Borrower Claims Trust from time to time.

(b)    Notwithstanding anything to the contrary in this Borrower Claims Trust Agreement, if at any time the Trust Committee determines that Cash held in the Return Amount Reserve may be distributed in accordance herewith, the Trust Committee shall direct the Borrower Claims Trustee to make a distribution of such Cash to holders of Borrower Claims Trust Beneficial Interests; provided, however, that such distribution shall (i) in the event the Return Amount was paid to the Borrower Claims Trust by a Trust Beneficiary in connection with its Allowed Borrower Claim against a GMACM Debtor, be made only to Trust Beneficiaries that received a Borrower Claims Payment in respect of Allowed GMACM

23

Claims, pro rata in accordance with the Allowed GMACM Claim corresponding to such Trust Beneficiary's Borrower Claims Trust Beneficial Interest, or (ii) in the event the Return Amount was paid to the Borrower Claims Trust by a Trust Beneficiary in connection with its Allowed Borrower Claim against a RFC Debtor, be made only to Trust Beneficiaries that received a Borrower Claims Payment in respect of Allowed RFC Claims, pro rata in accordance with the Allowed RFC Claim corresponding to such Trust Beneficiary's Borrower Claims Trust Beneficial Interest; provided, further, that prior to making any distribution pursuant to this Section 6.5(b), the Borrower Claims Trustee shall first fund the Borrower Claims Trust Administrative Reserve with Cash from the Return Amount Reserve necessary to satisfy the costs and expenses associated with such distribution.

(c)    All Cash held in the Return Amount Reserve shall be maintained with a United States FDIC insured financial institution, and may be maintained in an interest-bearing account, as the Trust Committee may from time to time determine.  The Cash in the Return Amount Reserve shall be held separately and shall not be commingled with any other Cash constituting Borrower Claims Trust Assets.

6.6    <u>Reporting</u>.  The Borrower Claims Trust shall cause to be prepared, and shall post to the Borrower Claims Trust Website, on a semi-annual basis, reports containing the following information regarding the activity of the Borrower Claims Trust during the most recently completed fiscal semi-annual period, and in the report prepared after the end of each Fiscal Year, the most recently completed Fiscal Year and since the Effective Date:

(a)    The Borrower Claims Payments made and Distributable Cash distributed during the relevant period and in the aggregate;

(b)    The amount of Return Amounts added to the Borrower Claims Trust Assets and Cash distributed from the Return Amount Reserve during the relevant period and in the aggregate;

(c)    Cash added to or withdrawn from the Borrower Claims Trust Administrative Reserve during the relevant period, and Cash held in the Borrower Claims Trust Administrative Reserve as of the end of such period;

(d)    the amount of Disputed Borrower Claims resolved by the Borrower Claims Trust during the relevant period, including, separately, the amounts of the Claims that were Allowed, in whole or in part, including both the Estimated Amounts thereof and amounts in which such Claims were Allowed, and the Estimated Amounts of the Claims that were not Allowed, in whole or in part, the amounts of the Disputed Borrower Claims remaining to be resolved as of the end of such period;

(e)    Cash distributed to holders of Disputed Borrower Claims that were Allowed, in whole or in part, during the relevant period, and the Cash in respect thereof released from the Disputed Claims Reserve, during the relevant period, and Cash held in the Disputed Claims Reserve as of the end of such period; and

(f)    such other information as the Trust Committee may determine to include from time to time.

6.7    Borrower Claims Trust Agents; Employees.

(a)    The Borrower Claims Trust may employ or engage such Borrower Claims Trust Agents, including counsel, advisors, administrators and other professionals (which may have represented parties in the Chapter 11 Cases, to the extent permissible by applicable law), as deemed reasonably necessary or desirable by the Borrower Claims Trustee to carry out the intents and purposes of the Borrower Claims Trust, without further order from the Bankruptcy Court, upon prior approval by the Trust Committee.  Borrower Claims Trust Agents shall be appointed, and their appointment may be terminated, by the Borrower Claims Trustee, in each case upon prior approval by the Trust Committee, unless authority in respect thereof is delegated by the Trust Committee to the Borrower Claims Trustee.  Borrower Claims Trust Agents shall be compensated at standard billing rates in effect at the time of service or such other rate of compensation that is reasonable and agreed to by the Borrower Claims Trustee, with the approval of the Trust Committee, and shall be paid without further motion, application, notice or other order of the Bankruptcy Court, except described in Section 6.7(c).  All reasonable out-of-pocket expenses incurred by the Borrower Claims Trust Agents shall be reimbursed.

(b)    The Borrower Claims Trustee shall be authorized to hire such employees he or she deems appropriate, subject to such limitations, conditions and qualifications as may be imposed by the Trust Committee.

(c)    On a monthly basis, or as otherwise agreed by the Borrower Claims Trustee with approval of the Trust Committee, the Borrower Claims Trustee and each Borrower Claims Trust Agent performing services for the Borrower Claims Trust shall provide to the Borrower Claims Trust Committee a statement setting forth his, her or its aggregate fees and expenses (to the extent unbilled and outstanding) incurred in connection with its engagement, together with reasonable documentation of such expenses (any such report, a "Fee and Expense Report").  Such Borrower Claims Trust Agents shall be entitled to receive payment of such fees and expenses not later than 10 days after providing the Fee and Expense Report to the Trust Committee (the "Fee Notice Period").  Notwithstanding the foregoing, if any member of the Trust Committee objects to such Fee and Expense Report within the Fee Notice Period, the Borrower Claims Trust Agent and the Trust Committee may seek to resolve such objection on a consensual basis.  If a majority of the members of the Trust Committee and the Borrower Claims Trust Agent are unable to reach a consensual resolution within 30 days of the Trust Committee member's objection, the Borrower Claims Trust Agent shall be entitled to payment of the contested portion of its fees and/or expenses only pursuant to a Final Order of the Bankruptcy Court after notice and opportunity for a hearing, provided that the Borrower Claims Trust Agent shall be entitled to payment of the uncontested portion, if any, of such fees and expenses upon expiration of the Fee Notice Period.

## ARTICLE VII
## BORROWER CLAIMS TRUSTEE

7.1    Borrower Claims Trustee Generally.   The Borrower Claims Trustee shall have the general executive responsibility for the conduct of the affairs of the Borrower Claims Trust, and shall have such other functions, authority and duties as are provided in this Article

VII and as elsewhere set forth in this Borrower Claims Trust Agreement and in the Trust Act, or as may be prescribed by the Trust Committee. The Borrower Claims Trustee shall report to Trust Committee, which shall be entitled to remove and replace the Borrower Claims Trustee in accordance with Section 7.2 .

      7.2    Appointment and Removal of Borrower Claims Trustee.

      (a)    By execution hereof, the Borrower Claims Trustee accepts his trusteeship of the Borrower Claims Trust on the terms set forth herein. The Borrower Claims Trustee shall be a natural person at least 18 years of age, and upon his or her appointment, shall be deemed a trustee under the Trust Act, with all privileges and immunities appurtenant thereto, and, as necessary or applicable, shall be deemed appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

      (b)    The Borrower Claims Trustee shall hold office until the earlier of (i) the termination of the Borrower Claims Trust, (ii) his or her resignation, death or incapacity or (iii) his or her removal in accordance with this Borrower Claims Trust Agreement.

      (c)    The Borrower Claims Trustee may resign upon sixty (60) days' prior written notice to the Trust Committee. The Borrower Claims Trustee may be removed by the Trust Committee (x) for Cause, upon motion filed with the Bankruptcy Court, with the consent of a majority of the members of the Trust Committee (which removal shall be effective upon order of the Bankruptcy Court); or (y) by unanimous action of the members of the Trust Committee with or without Cause at any time; provided, that (i) in the case of removal pursuant to clause (y), the Trust Committee shall give notice of removal to the Borrower Claims Trustee no less than fifteen (15) days prior to the effectiveness of the Borrower Claims Trustee's removal, and (ii) notice of removal of a Borrower Claims Trustee shall be promptly filed with the Bankruptcy Court and posted to the Borrower Claims Trust Website.

      (d)    In the event of a vacancy of the position of the Borrower Claims Trustee, whether as a result of the resignation, death, disability or removal of such Borrower Claims Trustee, a successor Borrower Claims Trustee shall be promptly appointed by the Trust Committee. Notice of the appointment of any replacement Borrower Claims Trustee shall be filed with the Bankruptcy Court and posted to the Borrower Claims Trust Website. If a majority of the members of the Trust Committee cannot agree on designation of such successor within 30 days after the occurrence of the event giving rise to the vacancy, the Bankruptcy Court shall determine such successor upon motion filed by any party in interest with the consent of any member of the Trust Committee.

      (e)    Immediately upon appointment of any successor Borrower Claims Trustee, all rights, powers, duties, authority, and privileges of the predecessor Borrower Claims Trustee hereunder shall be vested in and undertaken by the successor Borrower Claims Trustee without any further act by any party, and the successor Borrower Claims Trustee shall not be liable personally for any act or omission of the predecessor Borrower Claims Trustee.

      (f)    If the Borrower Claims Trustee is removed for Cause, he or she shall not be entitled to any accrued but unpaid fees, expenses or other compensation for services

performed under this Borrower Claims Trust Agreement.  If the Borrower Claims Trustee resigns or is removed or replaced for a reason other than for Cause, he or she shall be entitled to all accrued but unpaid fees, expenses, and other compensation for services performed under this Borrower Claims Trust Agreement, to the extent incurred, arising or relating to events occurring before his or her removal or resignation, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Borrower Claims Trustee.

7.3     Borrower Claims Trustee Compensation.   The Borrower Claims Trustee shall be (a) compensated for services in the administration of the Borrower Claims Trust from the Borrower Claims Trust Administrative Reserve at a fixed monthly rate and (b) reimbursed from the Borrower Claims Trust Administrative Reserve for reasonable and customary costs and expenses commensurate with U.S. Trustee guidelines in effect from time to time.

7.4     Authority of the Borrower Claims Trustee.

(a)     The Borrower Claims Trustee shall be responsible for performing the obligations of the Borrower Claims Trust expressly provided for in this Borrower Claims Trust Agreement, otherwise giving effect to the intents and purposes of this Borrower Claims Trust Agreement and exercising the rights of trustees under the Trust Act.

(b)     Without limiting the generality of the preceding subsection, and in furtherance thereof, the Borrower Claims Trustee shall be expressly authorized and empowered to undertake, acting as appropriate through Borrower Claims Trust Agents, the following actions on behalf of the Borrower Claims Trust, and, except as otherwise provided in this Trust Agreement with respect to approvals, authorizations, or consents of the Trust Committee, without the need for any additional approvals, authorization, or consents, and without any further notice to or action, order or approval of the Bankruptcy Court, except as otherwise provided herein; provided, that all such actions are undertaken in a manner consistent with the purposes of the Borrower Claims Trust:

(i)     to hold, manage and monetize (to the extent such assets are non-Cash), and distribute the Borrower Claims Trust Assets for the benefit of Trust Beneficiaries, whether such beneficiaries' Claims are Allowed on or after the Effective Date;

(ii)     to hold the right to vote any claim or interest in any case under the Bankruptcy Code and receive distributions therein on behalf of the Borrower Claims Trust;

(iii)     to the extent consistent with the terms of the Plan, to investigate, prosecute, settle, liquidate, dispose of, and/or abandon the Borrower Claims Trust Assets, including Borrower-Related Causes of Action;

(iv)     to engage in litigation in the name of the Borrower Claims Trust and file or pursue Borrower-Related Causes of Action and objections to Borrower Claims (including seeking to settle or disallow, recharacterize, reclassify, subordinate, or estimate any of them), and compromise, adjust, arbitrate, sue on or defend, prosecute,

12-12020-mg   Doc 6718-16   Filed 03/11/14   Entered 03/27/14 15:44:07   Exhibit P   Pg
34 of 95

12-12020-mg   Doc 6718-16   Filed 03/11/14   Entered 03/27/14 15:44:07   Exhibit P   Pg
Borrower Claims Trust Agreement    Pg 33 of 73

abandon or otherwise deal with, any Borrower Claim or Borrower-Related Cause of Action;

(v)    to assert, enforce, waive or release rights, defenses, privileges or immunities related to the Borrower Claims Trust Assets or the Borrower Claims;

(vi)    to perform the duties, exercise the powers and asset the rights of a trustee under section 704 and section 1106 of the Bankruptcy Code, including holding and asserting applicable privileges and defenses with respect to the Borrower Claims, filing, commencing or prosecuting (x) objections to Borrower Claims under section 502 of the Bankruptcy Code, (y) turnover actions under sections 542 and 543 of the Bankruptcy Code and (z) avoidance actions against Borrowers under sections 544, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code;

(vii)    to establish and administer the Borrower Claims Trust Administrative Reserve;

(viii)   to establish and administer the Disputed Claims Reserve;

(ix)    to establish and administer the Return Amount Reserve;

(x)    subject to Section 7.1, to appoint, engage, review, supervise, remove, replace and determine the compensation payable to Borrower Claims Trust Agents and waive any conflicts of interest as deemed necessary or appropriate in the discretion of the Borrower Claims Trustee;

(xi)    to settle or otherwise resolve Disputed Borrower Claims;

(xii)   to monitor and enforce the implementation of the Plan insofar as relating to the Borrower Claims Trust Assets;

(xiii)  to file all Tax Returns and regulatory forms, returns, reports and other documents and financial information required to be filed with respect to the Borrower Claims Trust, including filing Tax Returns as a qualified settlement fund;

(xiv)  to request any appropriate Tax determination with respect to the Borrower Claims Trust, including a determination pursuant to section 505 of the Bankruptcy Code;

(xv)   to seek the examination of any Entity under, and subject to, the provisions of the Bankruptcy Rules, including Bankruptcy Rule 2004;

(xvi)  to abandon any property that the Borrower Claims Trustee determines in his or her reasonable discretion to be de minimis value or otherwise burdensome to the Borrower Claims Trust, including any pending adversary proceeding or other legal action (by abandonment, dismissal, or any other discontinuance thereof);

28

(xvii)  to make Borrower Claims Payments to holders of Allowed Borrower Claims and distributions of Distributable Excess Cash to holders of Borrower Claims Trust Beneficial Interests;

(xviii) to make Cash distributions from the Return Amount Reserve in accordance with Section 6.5;

(xix)   to prepare and disseminate reports, as provided in <u>Section 6.6</u>;

(xx)    to determine and satisfy all liabilities created, incurred or assumed by the Borrower Claims Trust, including all expenses and other payments relating to the Borrower Claims Trust Assets, including reasonable fees and expenses of the Borrower Claims Trustee pursuant to this Borrower Claims Trust Agreement;

(xxi)   to enter into and exercise rights under contracts that are necessary or desirable to the administration of the Borrower Claims Trust and execute any documents or pleadings related to the liquidation of the Borrower Claims Trust Assets or other matters related to the Borrower Claims Trust;

(xxii)  to borrow funds on behalf of, and solely as a liability of, the Borrower Claims Trust, which loans may be secured by the Borrower Claims Trust Assets but shall be without recourse to the Borrower Claims Trustee in his or her individual capacity, as are necessary to enable the Borrower Claims Trustee to discharge his or her duties under this Borrower Claims Trust Agreement;

(xxiii) to establish and maintain bank accounts and terminate such accounts on behalf of the Borrower Claims Trust;

(xxiv) to set off amounts owed to the Debtors against distributions to Trust Beneficiaries;

(xxv)   to bring suits or defend itself against such suits, if any, in connection with any matter arising from or related to the Plan Documents that affects in any way the rights or obligations of the Borrower Claims Trust, the Trust Beneficiaries (whether such Borrower Claims are Allowed as of the Effective Date or become Allowed at any subsequent time), in their capacities as such;

(xxvi) to obtain and maintain insurance coverage with respect to the liabilities and obligations of the Borrower Claims Trustee, and, if so determined by the Borrower Claims Trustee, any Borrower Claims Trust Agents, and such other insurance as the Borrower Claims Trustee determines as appropriate for the circumstances from time to time;

(xxvii) to invest Borrower Claims Trust Assets (including any earnings thereon or proceeds therefrom) in any manner permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities, including Revenue Procedure 94-45, 1994-2 C.B. 684;

(xxviii) to take all actions necessary and appropriate to minimize any adverse Tax consequences to the holders of Allowed Borrower Claims; provided that such actions do not result in an adverse Tax consequence to the Borrower Claims Trust and are consistent with and are not contrary to the treatment of the Borrower Claims Trust as a "qualified settlement fund" for United States federal income Tax purposes;

(xxix)   to remove and replace the Delaware Trustee;

(xxx)   to protect and enforce the rights of the Borrower Claims Trust Assets by any lawful method deemed appropriate by the Borrower Claims Trustee, including by judicial proceedings or pursuant to applicable bankruptcy, insolvency, moratorium or similar law or general principles of equity;

(xxxi) to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions, as determined by the Borrower Claims Trustee to be necessary or appropriate to effectuate the terms of the Plan regarding the Borrower Claims Trust Assets following the Effective Date; and

(xxxii) to take such other and further actions, including, transfers or other corporate transactions, as determined by the Borrower Claims Trustee to be necessary or appropriate, in furtherance of the purposes of the Plan Documents in respect of the Borrower Claims Trust Assets as are not inconsistent with this Borrower Claims Trust Agreement or the other Plan Documents.

(c)    The Borrower Claims Trustee shall comply with all applicable laws, shall act to maximize the distributions to Trust Beneficiaries to the extent reasonably possible under the circumstances and in furtherance of the purposes of this Borrower Claims Trust.

(d)    To the extent provided in the Cooperation Agreement, certain of the functions of the Borrower Claims Trust may be performed by the Liquidating Trust on behalf of the Borrower Claims Trust in accordance with the terms of the Cooperation Agreement.

7.5    Limitations on Borrower Claims Trustee Authority.  Notwithstanding any provision in this Borrower Claims Trust Agreement to the contrary, the Borrower Claims Trustee shall not do or undertake any of the following on behalf of the Borrower Claims Trust without the prior approval of the Trust Committee:

(a)    Guarantee any debt;

(b)    Loan to any Person, any portion of the Borrower Claims Trust Assets;

(c)    Transfer or commingle Borrower Claims Trust Assets with any account of another trust established under the Plan;

(d)    Make any transfer, assignment or distribution of Borrower Claims Trust Assets, other than as expressly authorized hereunder; or

(e)      Permit or cause the Borrower Claims Trust to hold 50% or more of the stock (in either vote or value) of any Entity that is treated as a corporation for federal income tax purposes or have any interest in an Entity that is treated as a partnership for federal income tax purposes, unless such stock or partnership interest was obtained involuntarily or as a matter of practical economic necessity, including enforcement of and execution of judgments, in order to preserve the value of the Borrower Claims Trust Assets.

7.6      Conflicts of Interest.  If the Borrower Claims Trustee determines, in his or her reasonable discretion, that he or she has a material conflict of interest with respect to the settlement of a Borrower Claim, the resolution or prosecution of a Borrower-Related Cause of Action, or any other matter, the Borrower Claims Trustee shall select a designee approved by the Trust Committee to act on behalf of the Borrower Claims Trust solely with respect to such matter (the "Designee"), with such Designee's authority to act on behalf of the Borrower Claims Trust to terminate upon the matter's conclusion.  If the Designee files a pleading, motion, or other paper with a court or tribunal on behalf of the Borrower Claims Trust, it shall do so in its own name as "Designee of the ResCap Borrower Claims Trust".

7.7      Fiduciary Duty and Standard of Care.

(a)      The Borrower Claims Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Borrower Claims Trust and not otherwise, and in accordance with applicable law, including the Trust Act.

(b)      The Borrower Claims Trustee in the exercise of his or her duties hereunder shall act in accordance with principles of good faith and fair dealing.

7.8      Bond or Insurance.  The Borrower Claims Trustee shall obtain a trustee's bond (a "Trustee's Bond") from an Entity approved by the Trust Committee to protect the Trust Beneficiaries with respect to his obligations as Borrower Claims Trustee.  The premiums for such the Trustee's Bond shall be paid with Borrower Claims Trust Assets as an expense of administering the Borrower Claims Trust.  The amount of the Trustee's Bond shall be determined based upon the amount of Cash under the control of the Borrower Claims Trustee at any time, and shall be adjusted from time to time in accordance with Cash receipts and disbursements by the Borrower Claims Trust.  Alternatively, with approval of the Trust Committee, the Borrower Claims Trustee may satisfy the requirement to obtain a Trustee's Bond with insurance coverage for the liabilities, duties and obligations of the Borrower Claims Trustee and his agents, employees, and professionals (in the form of an errors and omissions policy or otherwise) which may, at the option of the Borrower Claims Trustee unless unanimously disapproved by the Trust Committee, remain in effect for a reasonable period after the conclusion of the Borrower Claims Trustee's service.  In the event the Borrower Claims Trustee elects to satisfy the requirements of this Section 7.9 with insurance coverage, such insurance coverage shall be maintained by the Borrower Claims Trust in accordance with Section 2.10.

**ARTICLE VIII**
**DELAWARE TRUSTEE**

31

8.1    <u>Appointment</u>.  The Delaware Trustee shall act solely for the purpose of complying with the requirement of section 3807 of the Trust Act, and its powers and obligations hereunder shall become effective upon its execution of this Borrower Claims Trust Agreement.

8.2    <u>Powers</u>.

(a)    The duties and responsibilities of the Delaware Trustee shall be limited solely to (i) accepting legal process served on the Borrower Claims Trust in the State of Delaware, (ii) the execution of any certificates required to be filed with the office of the Delaware Secretary of State that the Delaware Trustee is required to execute under section 3811 of the Trust Act (including without limitation the Certificate of Trust), and (iii) any other duties specifically allocated to the Delaware Trustee in this Borrower Claims Trust Agreement. Except as provided in the foregoing sentence, the Delaware Trustee shall have no management responsibilities or owe any fiduciary duties to the Borrower Claims Trust, the Borrower Claims Trustee, or the Trust Beneficiaries. The filing of the Certificate of Trust with the Secretary of State of the State of Delaware as provided under the Trust Act is hereby ratified.

(b)    By its execution hereof, the Delaware Trustee accepts the trusteeship of the Borrower Claims Trust on the terms set forth herein. Except as otherwise expressly set forth in <u>Section 8.2(a)</u>, the Delaware Trustee shall not have any duty or liability with respect to the administration of the Borrower Claims Trust, the investment of the Borrower Claims Trust Assets or the distribution of the Borrower Claims Trust Assets to the Trust Beneficiaries, and no such duties shall be implied. The Delaware Trustee shall not be liable for the acts or omissions of the Borrower Claims Trustee, nor shall the Delaware Trustee be liable for supervising or monitoring the performance of the duties and obligations of the Borrower Claims Trustee under this Borrower Claims Trust Agreement. The Delaware Trustee shall not be obligated to give any bond or other security for the performance of any of its duties hereunder. The Delaware Trustee shall not be personally liable under any circumstances, except for its own gross negligence, bad faith or willful misconduct. Without limiting the foregoing:

(i)    the Delaware Trustee shall not be personally liable for any error of judgment made in good faith, except to the extent such error of judgment constitutes willful misconduct, bad faith or gross negligence;

(ii)    the Delaware Trustee shall not have any duty or obligation to manage or deal with the Borrower Claims Trust Assets, or to otherwise take or refrain from taking any action under the Borrower Claims Trust Agreement except as expressly provided by the terms hereof, and no implied trustee duties or obligations shall be deemed to be imposed on the Delaware Trustee;

(iii)    no provision of this Borrower Claims Trust Agreement shall require the Delaware Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder if the Delaware Trustee has reasonable grounds to believe that the payment of

such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iv)    the Delaware Trustee shall not be personally liable for the validity or sufficiency of this Borrower Claims Trust Agreement or for the due execution hereof by the other parties hereto;

(v)    the Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect;

(vi)    the Delaware Trustee may request the Borrower Claims Trustee to provide a certificate with regard to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, and such certificate shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(vii)    in the exercise of its duties hereunder, the Delaware Trustee (I) may act directly or through agents or attorneys pursuant to agreements entered into with any of them, and (II) may consult with nationally recognized counsel selected by it in good faith and with due care and employed by it, and it shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel; and

(viii)    the Delaware Trustee acts solely as Delaware Trustee hereunder and not in its individual capacity, and all persons having any claim against the Delaware Trustee by reason of the transactions contemplated by this Borrower Claims Trust Agreement shall look only to the Borrower Claims Trust Assets for payment or satisfaction thereof;

(ix)    the Delaware Trustee shall not be personally liable for any representation, warranty, covenant, agreement, or indebtedness of the Borrower Claims Trust;

(x)    the Delaware Trustee shall not incur liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties.  The Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect.  As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Delaware Trustee may for all purposes hereof rely on a certificate, signed by the Borrower Claims Trustee, as to such fact or matter, and such certificate shall

33

constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon; and

(xi)    the Delaware Trustee shall not be liable for punitive, exemplary, consequential, special or other damages for a breach of this Agreement under any circumstances.

8.3    <u>Compensation</u>. The Delaware Trustee shall be entitled to receive compensation out of Borrower Claims Trust Administrative Reserve for the services that the Delaware Trustee performs in accordance with this Borrower Claims Trust Agreement in accordance with such fee schedules as shall be agreed from time to time by the Delaware Trustee and the Borrower Claims Trustee, and if so required by the Plan Documents or applicable law, as approved by the Bankruptcy Court. The Delaware Trustee may also consult with counsel (who may be counsel for the Borrower Claims Trustee) with respect to those matters that relate to the Delaware Trustee's role as the Delaware Trustee of the Borrower Claims Trust, and the reasonable legal fees incurred in connection with such consultation shall be reimbursed out of Borrower Claims Trust Administrative Reserve.

8.4    <u>Duration and Replacement</u>.  The Delaware Trustee shall serve for the duration of the Borrower Claims Trust or until the earlier of (i) the effective date of the Delaware Trustee's resignation, or (ii) the effective date of the removal of the Delaware Trustee. The Delaware Trustee may resign at any time by giving thirty (30) days' written notice to the Borrower Claims Trustee; <u>provided</u>, <u>however</u>, that such resignation shall not be effective until such time as a successor Delaware Trustee has accepted appointment. The Delaware Trustee may be removed with the Borrower Claims Trustee, by providing thirty (30) days' written notice to the Delaware Trustee; <u>provided</u>, <u>however</u>, that such removal shall not be effective until such time as a successor Delaware Trustee has accepted appointment. Upon the resignation or removal of the Delaware Trustee, the Borrower Claims Trustee shall appoint a successor Delaware Trustee.  If no successor Delaware Trustee shall have been appointed and shall have accepted such appointment within forty-five (45) days after the giving of such notice of resignation or removal, the Delaware Trustee may petition the Bankruptcy Court for the appointment of a successor Delaware Trustee. Any successor Delaware Trustee appointed pursuant to this Section shall be eligible to act in such capacity in accordance with this Borrower Claims Trust Agreement and, following compliance with this Section, shall become fully vested with the rights, powers, duties and obligations of its predecessor under this Borrower Claims Trust Agreement, with like effect as if originally named as Delaware Trustee. Any such successor Delaware Trustee shall notify the Delaware Trustee of its appointment by providing written notice to the Delaware Trustee and upon receipt of such notice, the Delaware Trustee shall be discharged of its duties herein.  Any such successor Delaware Trustee shall also file an amendment to the Certificate of Trust as required by the Trust Act.

## ARTICLE IX
## TAX MATTERS

9.1    <u>Tax Treatment</u>.

(a)    For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Borrower Claims Trustee and the Trust Beneficiaries) shall treat the Borrower Claims Trust as a "qualified settlement fund" within the meaning of Treasury Regulation Section 1.468B-2.

9.2    <u>Tax Reporting</u>.

(a)    The Borrower Claims Trust shall file Tax Returns treating the Borrower Claims Trust as a qualified settlement fund and in accordance with the Plan.  The Borrower Claims Trust also shall timely file (or cause to be timely filed) and/or provide to the Trust Beneficiaries any other statements, returns, or disclosures relating to the Borrower Claims Trust that are required by any Governmental Unit.

(b)    The Borrower Claims Trust may request an expedited determination of Taxes of the Borrower Claims Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Borrower Claims Trust for all taxable periods through the dissolution of the Borrower Claims Trust.

9.3    <u>Tax Payment</u>.  The Borrower Claims Trust shall be responsible for the payment, out of the Borrower Claims Trust Administrative Reserve, of any Taxes imposed on the Borrower Claims Trust or the Borrower Claims Trust Assets, including the Disputed Claims Reserve.  In the event, and to the extent, that any Cash retained on account of Disputed Borrower Claims in the Disputed Claims Reserve is insufficient to pay any portion of such Taxes attributable to the taxable income arising from the assets held in the Disputed Claims Reserve, such Taxes shall be (x) reimbursed from any subsequent Cash amounts retained on account of the respective classes of Disputed Borrower Claims or (y) to the extent such Disputed Borrower Claims subsequently have been resolved, deducted from any amounts distributable by the Borrower Claims Trust as a result of the resolutions of such Disputed Borrower Claims.

## ARTICLE X
## LIMITATION OF LIABILITY AND INDEMNIFICATION

10.1    <u>Limitation of Liability</u>.

(a)    None of the Delaware Trustee, the Borrower Claims Trustee, the members of the Trust Committee or any Borrower Claims Trust Agent, or their respective advisors or professionals, shall be liable to the Borrower Claims Trust or any Trust Beneficiary for any damages arising out of the creation, operation or termination of the Borrower Claims Trust, including actions taken or omitted in fulfillment of his or her duties with respect to the Borrower Claims Trust, except in the case of such party's gross negligence, bad faith or willful misconduct; <u>provided,</u> that in no event will any such party be liable for punitive, exemplary, consequential or special damages under any circumstances.  Furthermore, none of the Delaware Trustee, the Borrower Claims Trustee or members of the Trust Committee shall be liable to the Borrower Claims Trust or any Trust Beneficiary for any action taken in good faith reliance upon the advice of counsel or other Borrower Claims Trust Agent.

(b)      None of the Delaware Trustee, the Borrower Claims Trustee, the members of the Trust Committee or the Borrower Claims Trust Agents, when acting in such capacities, shall be subject to any personal liability whatsoever, whether in tort, contract or otherwise, to any person, other than the Borrower Claims Trust, in connection with the affairs of the Borrower Claims Trust to the fullest extent provided under section 3803 of the Trust Act, and all persons claiming against any of the Delaware Trustee, the Borrower Claims Trustee, or Borrower Claims Trust Agent, or otherwise asserting claims of any nature in connection with affairs of the Borrower Claims Trust, shall look solely to the Borrower Claims Trust Assets for satisfaction of any such claims.

(c)      Nothing contained in the Plan Documents shall be deemed to be an assumption by the Delaware Trustee, the Borrower Claims Trustee, the Trust Committee or any Borrower Claims Trust Agent of any of the liabilities, obligations or duties of the Debtors or shall be deemed to be or contain a covenant or agreement by any of them to assume or accept any such liability, obligation or duty.

10.2    <u>Indemnification</u>.

(a)      The Delaware Trustee, the Borrower Claims Trustee, the members of the Trust Committee, and their respective affiliates, and the officers, directors, partners, managers, members, and employees of each of them, as the case may be (all persons so entitled to indemnification, collectively, the "<u>Covered Parties</u>"), shall be indemnified and held harmless, to the fullest extent permitted by law by the Borrower Claims Trust from and against any and all losses, claims, taxes, damages, reasonable expenses and liabilities (including liabilities under state or federal securities laws) of any kind and nature whatsoever, to the extent that such expenses arise out of or are imposed upon or asserted against such indemnified persons with respect to the creation, operation or termination of the Borrower Claims Trust or the execution, delivery or performance of this Borrower Claims Trust Agreement or the transactions contemplated hereby and shall not be liable for actions taken or omitted in their capacity, as Delaware Trustee, Borrower Claims Trustee or a member of the Trust Committee, on behalf of, or in fulfillment of their duties with respect to, the Borrower Claims Trust, except those acts that are determined by Final Order to have arisen out of their own gross negligence, bad faith or willful misconduct, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities regarding the implementation or administration of the Plan Documents or the discharge of their respective duties hereunder or thereunder or in respect thereof, except for any actions or inactions that are determined by Final Order to have arisen out of their own gross negligence, bad faith, or willful misconduct.

(b)      The Covered Parties shall be entitled to obtain advances from the Borrower Claims Trust to cover their reasonable expenses of defending themselves in any action threatened or brought against them as a result of the acts or omissions, actual or alleged, of any such party in its capacity as such; <u>provided</u>, <u>however</u>, that the Covered Parties receiving such advances shall repay the amounts so advanced to the Borrower Claims Trust immediately

upon the entry of a Final Order finding that such parties were not entitled to any indemnity under the provisions of this <u>Section 10.2</u>.

(c)     Any claim of the Covered Parties to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Borrower Claims Trust Assets, bonds (if any) or any applicable insurance that the Borrower Claims Trust has purchased, as provided in <u>Section 2.10</u>, and no recourse may be had to the Liquidating Trust, the Released Parties or any creditor in the Chapter 11 Cases.

(d)     The Borrower Claims Trust may also determine to provide indemnification to Borrower Claims Trust Agents and their respective officers, directors, partners, managers, members and employees, on such terms as the Borrower Claims Trustee may determine, <u>provided</u> that any claim for indemnification shall be satisfied solely from the Borrower Claims Trust Assets or insurance.

## ARTICLE XI
## <u>DURATION OF BORROWER CLAIMS TRUST</u>

11.1    <u>Duration</u>.

(a)     The Borrower Claims Trust shall be dissolved as soon as practicable after the date that is the earliest to occur of: (i) the distribution of all Borrower Claims Trust Assets pursuant to the Plan Documents, (ii) the determination of the Trust Committee that the administration of the Borrower Claims Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (iii) all the distributions required to be made under this Borrower Claims Trust Agreement have been completed and, in each case, all Borrower Claims have been resolved by Final Order, written agreement or pursuant to the Plan Documents; <u>provided</u>, <u>however</u>, that in no event shall the Borrower Claims Trust be dissolved later than three (3) years from the Effective Date, unless the Bankruptcy Court, upon motion within the six (6) months prior to the third (3rd) anniversary of the Effective Date (or within six (6) months prior to the end of an extension period), determines that a fixed-period extension is necessary to facilitate or complete the recovery and liquidation of the Borrower Claims Trust Assets (without the need for a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the trust as a qualified settlement fund for United States federal income tax purposes).

(b)     If at any time the Trust Committee determines, in reliance upon its professionals, that the expense of administering the Borrower Claims Trust, including the making of a final distribution to the Trust Beneficiaries, is likely to exceed the value of the assets remaining in the Borrower Claims Trust, the Borrower Claims Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the Borrower Claims Trust, (ii) donate any balance to an organization selected by the Trust Committee which is described in section 501(c)(3) of the Tax Code and exempt from U.S. federal income tax under section 501(a) of the Tax Code, as provided in <u>Section 2.7(b)</u> hereof, and (iii) dissolve the Borrower Claims Trust.

11.2    Post-Termination.  After the termination of the Borrower Claims Trust and solely for the purpose of liquidating and winding up the affairs of the Borrower Claims Trust, the Borrower Claims Trustee and the Delaware Trustee shall continue to act as such until their duties have been fully performed.  Upon distribution of all the Borrower Claims Trust Assets, the Borrower Claims Trustee shall designate the Liquidating Trust (or an agent thereof) to continue to retain all books and records pertaining to the Borrower Claims Trust Assets that have been delivered to the Liquidating Trust on the Effective Date, or created and maintained by the Borrower Claims Trust thereafter, subject to the provisions of the Cooperation Agreement.

11.3    Destruction of Books and Records.  If so determined by the Borrower Claims Trustee, or absent such determination, in the discretion of the Liquidating Trust or agent thereof appointed pursuant to Section 11.2, all books and records pertaining to the Borrower Claims Trust and the Trust Beneficiaries that have been created and maintained by the Borrower Claims Trust after the Effective Date may be destroyed at any time following the date that is six (6) years after the final distribution of Borrower Claims Trust Assets (unless such records and documents are necessary to fulfill the Borrower Claim Trust's remaining obligations) subject to the terms of any joint prosecution and common interests agreement(s) to which the Borrower Claims Trust may be a party, or such earlier date as set by the Bankruptcy Court; provided, however, that the Borrower Claims Trust or the designee appointed pursuant to Section 11.2 shall obtain an order of the Bankruptcy Court before disposing of any books and records that are reasonably likely to pertain to pending litigation in which the Borrower Claims Trust or Borrower Claims Trustee is involved.

11.4    Discharge.  Except as otherwise specifically provided herein, upon the final distribution of Borrower Claims Trust Assets and the filing by the Delaware Trustee of a Certificate of Cancellation with the Secretary of State of the State of Delaware, the Delaware Trustee and the Borrower Claims Trustee shall be deemed discharged and have no further duties or obligations hereunder, and the Borrower Claims Trust will be deemed to have been dissolved.  In the event that there are Borrower Claims Trust Assets at the termination of the Borrower Claims Trust, the Trust Committee shall cause to be donated such Borrower Claims Trust Assets to a charitable organization of the Borrower Claims Trustee's choice described in section 501(c)(3) of the Tax Code and exempt from U.S. federal income tax under section 501(a) of the Tax Code, as provided in Section 2.7(b).

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

12.1    Governing Law.  This Borrower Claims Trust Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (without reference to conflicts of law).

12.2    Jurisdiction.  Subject to the proviso below, the parties agree that the Bankruptcy Court shall have exclusive jurisdiction over the Borrower Claims Trust, including, without limitation, the administration and activities of the Borrower Claims Trust, provided, however, that notwithstanding the foregoing or anything to the contrary set forth in the Plan, the Borrower Claims Trustee shall have power and authority to bring (or cause to be brought)

any action in any court of competent jurisdiction to prosecute any Borrower-Related Causes of Action.

      12.3    <u>Severability</u>.  In the event that any provision of this Borrower Claims Trust Agreement or the application thereof to any person or circumstances shall be determined by a final, non-appealable judgment or order to be invalid or unenforceable to any extent, the remainder of this Borrower Claims Trust Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Borrower Claims Trust Agreement shall be valid and enforceable to the fullest extent permitted by law.

      12.4    <u>Notices</u>.  Any notice or other communication required or permitted to be made under this Borrower Claims Trust Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile, sent by nationally recognized overnight delivery service, or mailed by first-class mail:

      (i)    if to the Delaware Trustee, to:

      Province East LLC
      c/o Polsinelli LLP
      222 Delaware Avenue, Suite 1101
      Wilmington, DE 19801
      Phone: (302) 252-0920
      Fax: (302) 252-0921

      (iii)    if to the Borrower Claims Trustee, to:

      Peter S. Kravitz, Esq.
      Solution Trust
      29209 Canwood Street
      Agoura Hills, CA 91301
      Phone: (310) 974-6350
      Email: PKravitz@SolutionTrust.com

      (iii)    if to any Trust Beneficiary, to the last known address of such Trust Beneficiary according to the records of the Borrower Claims Trust.

      12.5    <u>Headings</u>.  The headings contained in this Borrower Claims Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Borrower Claims Trust Agreement or of any term or provision hereof.

      12.6    <u>Plan Documents</u>.  Nothing contained herein shall modify the terms of any other Plan Document, which are intended to be supplemented by the terms of this Borrower Claims Trust Agreement.  However, to the extent that the terms of any of the other Plan Documents are inconsistent with the terms set forth in this Borrower Claims Trust Agreement with respect to the Borrower Claims Trust, then the terms of this Borrower Claims Trust Agreement shall govern.

12.7    <u>Cooperation</u>.    The Debtors and the Liquidating Trust shall reasonably cooperate with the Borrower Claims Trust in carrying out its duties and exercising its rights hereunder.

12.8    <u>Confidentiality</u>.    The Borrower Claims Trustee, the Delaware Trustee, the members of the Trust Committee and the Borrower Claims Trust Agents, and their respective officers, directors, partners, managers, members and employees (the "<u>Confidentiality Parties</u>"), shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidentiality Party of or pertaining to the Debtors, the Borrower Claims Trust, the Trust Beneficiaries or the Borrower Claims Trust Assets; <u>provided</u>, <u>however</u>, that such information may be disclosed if—

(i)    it is now or in the future becomes generally available to the public other than as a result of a disclosure by any of the Confidentiality Parties;

(ii)    such disclosure is required of any of the Confidentiality Parties pursuant to legal process, including subpoena or other court order or other applicable laws or regulations; or

(iii)    the Borrower Claims Trustee determines that such disclosure is in the interests of the Borrower Claims Trust or the Trust Beneficiaries.

12.9    <u>Entire Borrower Claims Trust Agreement</u>.    This Borrower Claims Trust Agreement and the Exhibits attached hereto, and the Plan Documents, contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

12.10    <u>Named Party</u>.    In pursuing any Borrower-Related Causes of Action, or otherwise administering the Borrower Claims Trust or any Borrower Claims Trust Assets, including, without limitation, the execution of documents, such as bills of sale, releases, and agreements, the Borrower Claims Trustee may authorize the pursuit of such matters and/or execution of any such documents in the name of "ResCap Borrower Claims Trust" or in such other names or such representative capacities as necessary or appropriate.

12.11    <u>Amendment</u>.    This Borrower Claims Trust Agreement may be amended by the Trust Committee; <u>provided</u>, <u>however</u>, that no amendment shall be made to this Borrower Claims Trust Agreement that makes it inconsistent with the provisions of the Plan or the Confirmation Order.    Notwithstanding this <u>Section 12.11</u> no amendments to this Borrower Claims Trust Agreement shall be inconsistent with the purpose and intention of the Borrower Claims Trust to liquidate in an orderly manner the Borrower Claims Trust Assets (which will maximize the value of such assets).

12.12    <u>Counterparts</u>.    This Borrower Claims Trust Agreement may be executed in any number of counterparts, each of which shall be deemed original, but such counterparts shall together constitute one and the same instrument.    A facsimile or portable document file (PDF) signature of any party shall be considered to have the same binding legal effect as an original signature.

**[REMAINDER OF PAGE BLANK]**

**IN WITNESS WHEREOF**, the parties hereto have executed this Borrower Claims Trust Agreement or caused this Borrower Claims Trust Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

Residential Capital, LLC

By:        /s/ William Thompson
Name:    William Thompson
Title:     General Counsel

By:        /s/ Jill Horner
Name:    Jill Horner
Title:     Chief Finance Executive

AKA 13, LLC (f/k/a ditech, LLC), DOA Holding Properties, LLC, DOA Properties IX (Lots-Other), LLC, EPRE LLC, Equity Investment I, LLC, ETS of Virginia, Inc., ETS of Washington, Inc., Executive Trustee Services, LLC, GMAC-RFC Holding Company, LLC, GMAC Model Home Finance I, LLC, GMAC Mortgage USA Corporation, GMAC Mortgage, LLC, GMAC Residential Holding Company, LLC, GMAC RH Settlement Services, LLC, GMACM Borrower LLC, GMACM REO LLC, GMACR Mortgage Products, LLC, HFN REO SUB II, LLC, Home Connects Lending Services, LLC, Homecomings Financial Real Estate Holdings, LLC, Homecomings Financial, LLC, Ladue Associates, Inc., Passive Asset Transactions, LLC, PATI A, LLC, PATI B, LLC, PATI Real Estate Holdings, LLC, RAHI A, LLC, RAHI B, LLC, RAHI Real Estate Holdings, LLC, RCSFJV2004, LLC, Residential Accredit Loans, Inc., Residential Asset Mortgage Products, Inc., Residential Asset Securities Corporation, Residential Consumer Services of Alabama, LLC, Residential Consumer Services of Ohio, LLC, Residential Consumer Services of Texas, LLC, Residential Consumer Services, LLC, Residential Funding Company, LLC, Residential Funding Mortgage Exchange, LLC, Residential Funding Mortgage Securities I, Inc., Residential Funding Mortgage Securities II, Inc., Residential Funding Real Estate Holdings, LLC, Residential Mortgage Real Estate Holdings, LLC, RFC – GSAP Servicer Advance, LLC, RFC Asset Holdings II, LLC, RFC Asset Management, LLC, RFC Borrower LLC, RFC Construction Funding, LLC, RFC REO LLC and RFC SFJV-2002, LLC

By:        /s/ William Thompson
Name:    William Thompson
Title:     General Counsel

By:        /s/ Jill Horner
Name:    Jill Horner
Title:     Chief Financial Officer

Province East LLC, as Delaware Trustee

By:       /s/ Peter Kravitz
Name:     Peter Kravitz
Title:    Managing Member

/s/ Peter Kravitz, as Borrower Claims Trustee

## EXHIBIT A

### FORM OF
### CERTIFICATE OF TRUST
### OF
### RESCAP BORROWER CLAIMS TRUST

This Certificate of Trust of ResCap Borrower Claims Trust is being duly executed and filed on behalf of such trust by the undersigned, as trustee, to form a statutory trust under the Delaware Statutory Trust Act (12 Del. C. § 3801 et seq.) (the "Trust Act").

1.   Name.   The name of the Delaware statutory trust formed by this Certificate of Trust is ResCap Borrower Claims Trust.

2.   Delaware Trustee.   The name and business address of the trustee of the Trust with a principal place of business in the State of Delaware are Province East LLC, 222 Delaware Avenue, Suite 1101, Wilmington, DE 19801.

3.   Effective Date.   This Certificate of Trust shall be effective upon its filing with the Secretary of State of the State of Delaware.

IN WITNESS WHEREOF, the undersigned has duly executed this Certificate of Trust in accordance with section 3811(a)(1) of the Trust Act.

Province East LLC, not in its individual capacity but solely as trustee

By:_____
Name:
Title:

_____

Peter S. Kravitz, not in his individual capacity but solely as trustee

## EXHIBIT B

### Initial Borrower Claims Trust Budget

|  | Year 1 |
|---|---|
| Trustee | $ 325,000 |
| General Counsel, Litigation Counsel, Local Counsel | 1,667,500 |
| Tax Advisor | 10,000 |
| General Administration | 7,500 |
| Insurance | 150,000 |
| Oversight | 12,000 |
| Total | $2,172,000 |

# EXHIBIT C

## Initial Committee Members

Set forth below is information regarding the initial members of the Borrower Claims Trust Committee upon the Effective Date.[1]

1. Rowena Drennen for the Kessler Settlement Class in the consolidated class action styled *In re Community Bank of Northern Virginia Second Mortgage Lending Practice Litigation*, consolidated in the United States District Court for the Western District of Pennsylvania, MDL No. 1674, Case Nos. 03-0425, 02-01201, 05-0688, 05-1386.

2. Steven Mitchell for the Mitchell Settlement Class in the civil action styled *Steven and Ruth Mitchell v. Residential Funding Company, LLC, et al.*, currently pending before the Circuit Court of Jackson County, Missouri, Division 4, Case No. 03-CV-220489.

---

[1] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the *Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 4819, Ex. 1] (as may be amended from time to time, the "**Plan**").

## Schedule 2.4

### Calculation of Cash Portion of Borrower Claims Trust Assets

| | |
|---|---:|
| Unadjusted Allocation of Cash to Borrower Claims Trust | $57,600,000 |
| Cash Amounts Paid by the Debtors to or on Behalf of Holders of Allowed Borrower Claims Pursuant to Settlements Entered into Prior to the Effective Date | (1,498,473) |
| Borrower Trust True-Up | 0 |
| Cash to Borrower Claims Trust (Excluding Administrative Funding Payment) | $56,101,527 |

# EXHIBIT 8

**Exhibit 3**

**RMBS Claims Trust Agreement**

AMENDED AND RESTATED TRUST AGREEMENT

among

**RESIDENTIAL CAPITAL, LLC,**

**CERTAIN AFFILIATES OF RESIDENTIAL CAPITAL, LLC
SIGNATORY HERETO**

and

**U.S. BANK TRUST NATIONAL ASSOCIATION**
as Trustee,

DATED AS OF

December 17, 2013

# TABLE OF CONTENTS

Page

## ARTICLE I
### DEFINITIONS

| | | |
|---|---|---|
| Section 1.01 | Defined Terms | 2 |
| Section 1.02 | Interpretation | 6 |

## ARTICLE II
### ESTABLISHMENT OF THE QSF TRUST

| | | |
|---|---|---|
| Section 2.01 | Name | 7 |
| Section 2.02 | Office | 7 |
| Section 2.03 | Declaration of Trust | 7 |
| Section 2.04 | Issuance of RMBS Claims Units and Related Distributions | 7 |
| Section 2.05 | Appointment of Trustee | 7 |
| Section 2.06 | Acceptance of Trust | 7 |
| Section 2.07 | Activities of the Trust | 7 |
| Section 2.08 | Purpose, Limitations of the Trust | 8 |
| Section 2.09 | Section 468B Qualified Settlement Fund | 9 |

## ARTICLE III
### QSF INTERESTS

| | | |
|---|---|---|
| Section 3.01 | Rights of QSF Beneficiaries | 10 |
| Section 3.02 | No Legal Title in QSF Beneficiaries | 10 |
| Section 3.03 | Identification of QSF Beneficiaries | 10 |
| Section 3.04 | Deemed Majority Consent | 10 |

## ARTICLE IV
### ACCOUNTS, DEPOSITS AND DISTRIBUTIONS

| | | |
|---|---|---|
| Section 4.01 | Establishment of Trust Accounts | 11 |
| Section 4.02 | Collection Account | 11 |
| Section 4.03 | Reserve Account | 12 |
| Section 4.04 | Investments | 12 |
| Section 4.05 | Payments to QSF Beneficiaries | 13 |
| Section 4.06 | Record Date | 13 |

## ARTICLE V
### [ RESERVED ]

## ARTICLE VI
### CONCERNING THE TRUSTEE

| | | |
|---|---|---|
| Section 6.01 | Duties of the Trustee | 13 |
| Section 6.02 | Certain Matters Affecting the Trustee | 14 |
| Section 6.03 | Trustee Not Liable for QSF Interests or RMBS Claims Units | 16 |
| Section 6.04 | Trustee's Fees and Expenses | 16 |
| Section 6.05 | Eligibility Requirements for the Trustee | 17 |

Section 6.06     Resignation or Removal of Trustee ............................................................... 18
Section 6.07     Merger or Consolidation of Trustee............................................................... 18

ARTICLE VII
TRANSFERS OF QSF INTERESTS

Section 7.01     Transfers by RMBS Trust............................................................................. 19
Section 7.02     Transfers by QSF Beneficiaries .................................................................... 19

ARTICLE VIII
TERMINATION OF QSF TRUST

Section 8.01     Termination ................................................................................................... 19
Section 8.02     Procedure For Termination ........................................................................... 19

ARTICLE IX
MISCELLANEOUS PROVISIONS

Section 9.01     Amendment of Trust Agreement ................................................................... 20
Section 9.02     Counterparts .................................................................................................. 21
Section 9.03     Limitation on Rights of QSF Beneficiaries .................................................. 21
Section 9.04     Notices .......................................................................................................... 21
Section 9.05     Severability of Provisions ............................................................................. 22
Section 9.06     Third Party Beneficiaries ............................................................................. 22
Section 9.07     Acts of QSF Beneficiaries ............................................................................ 22
Section 9.08     Headings ....................................................................................................... 22
Section 9.09     No Waiver; Cumulative Remedies ................................................................ 22
Section 9.10     Merger and Integration ................................................................................. 23
Section 9.11     Governing Law; Venue; Jury Waiver ........................................................... 23

SCHEDULE 1:     QSF BENEFICIARIES CONTACT INFORMATION

## AMENDED AND RESTATED TRUST AGREEMENT

THIS AMENDED AND RESTATED TRUST AGREEMENT, dated as of December 17, 2013 (this "Agreement"), is hereby executed by and among Residential Capital, LLC ("ResCap"), certain affiliates signatory hereto (together with ResCap, the "Debtors"), and U.S. BANK TRUST NATIONAL ASSOCIATION, as trustee (the "Trustee") in order to establish a qualified settlement trust within the meaning of Code Section 468B and the Treasury Regulations promulgated thereunder (the "QSF Trust") for the benefit of the holders of residential mortgage backed securities claims against the Debtors and Ally Financial, Inc. and its non-Debtor affiliates.

### WITNESSETH

WHEREAS, on May 14, 2012, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") commencing jointly administered cases under the caption *In re Residential Capital, LLC*, Case No. 12-12020 (the "Bankruptcy Cases");

WHEREAS, on December 6, 2013, the Debtors and the Official Committee of Unsecured Creditors of Residential Capital, LLC, et al. filed that certain Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors (Dkt. No.6030-1) (together with any amendments or modifications thereto required or permitted by the Bankruptcy Court or as otherwise permitted pursuant to the terms of the Plan, the "Plan"); and

WHEREAS, on December 11, 2013, the Bankruptcy Court entered an Order confirming the Plan (Dkt. No. 6065) (the "Confirmation Order");

WHEREAS, pursuant to the Plan and the Liquidating Trust Agreement, dated December 17, 2013 (the "Liquidating Trust Agreement"), by and among the Liquidating Trustees (as such term is defined in the Liquidating Trust Agreement), the Delaware Trustee (as such term is defined in the Liquidating Trust Agreement), ResCap and the other parties signatory thereto, a liquidating trust (the "Liquidating Trust") has been established for the purpose of liquidating and distributing the Liquidating Trust Assets (as such term is defined in the Liquidating Trust Agreement);

WHEREAS, pursuant to the Plan, the QSF Trust has been established for the benefit of the QSF Beneficiaries on behalf of the RMBS Trusts;

WHEREAS, pursuant to the Plan and the Liquidating Trust Agreement, on the Initial Unit Distribution Date, the Liquidating Trust will issue units of beneficial interests (the "Liquidating Trust Units") to unsecured creditors of the Debtors and/or their designated recipients, including the QSF Trust;

WHEREAS, as set forth in, and subject to, the Plan and the Liquidating Trust Agreement, the QSF Trust will receive a number of Liquidating Trust Units that will entitle the holders thereof to periodic distributions of cash from the Liquidating Trust;

WHEREAS, the parties hereto are entering into this Agreement for purposes of amending and restating the trust agreement which established the QSF Trust and to facilitate implementation of the Plan in respect of the RMBS Trusts;

WHEREAS, the QSF Trust is established for the sole purpose of distributing the Trust Assets to the QSF Beneficiaries, with no objective or authority to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the QSF Trust and the Plan;

WHEREAS, for federal income tax purposes, the QSF Trust is intended to be treated as a "qualified settlement fund" within the meaning of Treasury Regulation Section 1.468 B-2; and

WHEREAS, this Agreement is subject to the approval of the Bankruptcy Court in the Confirmation Order.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, the Debtors and the Trustee, intending to be legally bound, agree as follows:

## ARTICLE I

## DEFINITIONS

**Section 1.01    Defined Terms.**

The terms defined in this section are specific to this Agreement.  Capitalized terms used but not otherwise defined in this Agreement shall have the meanings ascribed to those terms in the Plan.  For the purposes of this Agreement, the following terms (which appear in this Agreement with initial capitalized letters) shall have the meanings set forth below:

"Affected RMBS Trusts" shall have the meaning specified in Section 7.02.

"Affiliate" shall mean: (i) with respect to the Trustee, any person or entity controlling, controlled by or under common control with the Trustee, and (ii) with respect to any other Person, any person or entity controlling, controlled by or under common control with such Person.  "Control" means the power to direct the management and policies of a person or entity, directly or indirectly, whether through ownership of voting securities, by contract or otherwise. "Controlling" and "controlled" shall have meanings correlative to the foregoing.

"Agreement" shall have the meaning ascribed to it in the preamble.

"Ally" shall have the meaning specified in Section 2.09(a).

"Available Funds" shall mean all collected funds held in the Collection Account less any reasonable reserves established by the Trustee for payment of taxes relating to such distribution or otherwise potentially owed by the QSF Trust.

"Bankruptcy Cases" shall have the meaning ascribed to it in the recitals.

2

"Bankruptcy Code" shall have the meaning ascribed to it in the recitals.

"Bankruptcy Court" shall have the meaning ascribed to it in the recitals.

"Business Day" shall mean any day that is not a Saturday, Sunday, holiday, or other day on which commercial banking institutions in the City of New York or the State of Delaware or, if different, the city and state in which the Corporate Trust Office is located are authorized or obligated by law or executive order to be closed.

"Code" shall mean the Internal Revenue Code of 1986, as amended.

"Collection Account" shall have the meaning specified in Section 4.01(a)(i).

"Confirmation Order" shall have the meaning ascribed to it in the recitals.

"Corporate Trust Office" shall mean the principal corporate trust office of the Trustee at which at any particular time its corporate trust business shall be administered.

"Debtors" shall have the meaning ascribed to it in the preamble.

"Distribution Date" shall mean, except as otherwise provided in Section 4.02 with respect to the initial Distribution Date, the fifth Business Day following any receipt of funds from the Liquidating Trust. If in the reasonable judgment of the Trustee it shall question the appropriateness, propriety or correctness of any distribution, then the Trustee may delay such distribution until such time after which the Trustee has obtained further guidance or direction in accordance with the terms of this Agreement.

"Effective Date" shall mean the date on which the Plan becomes effective, in accordance with its terms.

"Eligible Accounts" shall mean either (a) a segregated account or accounts maintained with a federal or state chartered depository institution or trust company the long-term or short-term unsecured debt obligations of which (or, in the case of a depository institution or trust company that is the principal subsidiary of a holding company, the long-term or short-term unsecured debt obligations of such holding company) are rated by any Rating Agency in one of its two highest long-term rating categories or one of its two highest short-term ratings with respect to obligations maturing in less than thirty (30) days or in highest short-term rating with respect to obligations maturing in more than thirty (30) days at the time any amounts are held in deposit therein, or (b) a segregated trust account or accounts maintained with a federal or state chartered depository institution or trust company, acting in the capacity of a trustee. Eligible Accounts need not be interest-bearing accounts provided the funds therein may be invested in Permitted Investments. All accounts maintained with the Trustee shall constitute Eligible Accounts.

"Final Distribution Date" shall have the meaning specified in Section 8.02.

"Indemnified Parties" shall have the meaning specified in Section 6.04.

"IRS" shall mean the United States Internal Revenue Service.

"Letter Ruling" shall mean a written statement issued by the Internal Revenue Service to a taxpayer (or the taxpayer's authorized representatives) in response to a written inquiry from the taxpayer, or its representatives, about the tax effects of acts or proposed transactions, as set forth in Rev. Proc. 2013-1, Sec. 2.01, 2013-1 IRB 1.

"Liquidating Trust" shall have the meaning ascribed to it in the recitals.

"Liquidating Trust Agreement" shall have the meaning ascribed to it in the recitals.

"Liquidating Trust Units" shall have the meaning ascribed to it in the recitals.

"Majority Beneficiaries" shall mean two (2) or more QSF Beneficiaries who collectively hold at least 51% of the QSF Representative Shares.

"Officer" shall mean: (i) when used with respect to the Trustee, any senior vice president or vice president in the Corporate Trust Office of the Trustee, and (ii) when used with respect to any other Person, the chairman of the board, the president, a vice president (however designated), the treasurer or controller.

"Opinion of Counsel" shall mean a written opinion of legal counsel delivered to the Trustee or any QSF Beneficiary, as the case may be, in each case in form and substance reasonably acceptable to the parties to whom it is delivered; provided, however, that any opinion with respect to tax matters shall be made by a law firm having a national reputation for expertise in such matters.

"Permitted Investments" shall consist of money market funds that have a credit rating of at least "Aa3" by Moody's and "AA-" by Standard & Poor's; provided, however, that no such investment shall constitute a Permitted Investment unless such investment matures no later than the Business Day immediately preceding the Distribution Date on which the funds invested therein are required to be distributed (or, in the case of an investment that is an obligation of the institution in which the account is maintained, no later than such Distribution Date); and provided further, that no such investment shall constitute a Permitted Investment if it gives rise to payments that would be subject to U.S. federal withholding tax if held by a Person that is not a U.S. Person and that has provided applicable U.S. federal tax forms. Permitted Investments may include such investments for which the Trustee or any of its Affiliates is investment manager or advisor. The Trustee or its respective Affiliates are permitted to receive additional compensation that could be deemed to be in their respective economic self interest for (i) serving as an investment advisor, administrator, shareholder, servicing agent, custodian or sub-custodian with respect to Permitted Investments, (ii) using Affiliates to effect transactions in Permitted Investments, and (iii) effecting transactions in Permitted Investments.

"Person" shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust (including any beneficiary thereof), unincorporated organization or government or any agency or political subdivision thereof.

"Plan" shall have the meaning ascribed to it in the recitals.

"QSF Beneficiaries" means each of the entities listed on <u>Schedule 1</u> attached hereto and any such successor to such entities, each of whom has an interest in the Trust Estate in their respective capacities as trustees of each of the RMBS Trusts for which they serve in such capacity.

"QSF Interests" shall mean an uncertificated beneficial interest in the QSF Trust.

"QSF Representative Share" shall mean a QSF Beneficiary's representative share of the total QSF Interests in the QSF Trust, which is held from time to time in its respective capacities as trustee of each of the RMBS Trusts for which it serves as trustee, which will initially be reflected on the Representative Share Schedules and shall be adjusted from time to time on the books and records of Trustee in accordance with <u>Article VII</u>.

"QSF Trust" shall have the meaning ascribed to it in the preamble.

"Rating Agency" shall mean any nationally recognized statistical rating agency, or its successor. Except as otherwise specified herein, references to any long-term rating category of a Rating Agency shall mean such rating category without regard to any plus or minus or numerical designation.

"Record Date" shall mean the last Business Day of the month preceding the month of such Distribution Date.

"Representative Share Schedules" shall mean the schedules reflecting the initial QSF Representative Share and the initial RMBS Representative Share filed with the Bankruptcy Court, a copy of which will be provided to the Trustee by or on behalf of the QSF Beneficiaries, it being understood and agreed that the Trustee shall have conclusive reliance thereon and shall have no obligation to make any distributions hereunder in the absence of receipt of such Representative Share Schedules.

"Required Reserve Amount" shall mean $1,000,000.

"ResCap" shall have the meaning ascribed to it in the preamble.

"Reserve Account" shall have the meaning specified in <u>Section 4.01(a)(ii)</u>.

"RMBS Claims Units" shall mean any and all Liquidating Trust Units issued to the QSF Trust on account of the claims of the RMBS Trusts (as such term is defined in the Plan) under the Liquidating Trust Agreement. For the avoidance of doubt, "RMBS Claims Units" shall not include the five and seven-tenths percent (5.7%) of the Liquidating Trust Units that would otherwise be issuable to the QSF Trust that shall be issued to counsel for the Institutional Investors in satisfaction of the Allowed Fee Claim, in accordance with the terms of the Plan.

"RMBS Representative Share" shall mean each RMBS Trust's representative share of the total QSF Interests allocable to its applicable QSF Beneficiary, which will initially be reflected on the Representative Share Schedules and shall be adjusted from time to time on the books and records of the Trustee in accordance with <u>Article VII</u>.

"RMBS Trusts" shall mean the RMBS Trusts listed on the Representative Share Schedules.

"Termination Event" shall have the meaning specified in Section 8.01.

"Transferee" shall have the meaning specified in Section 7.02.

"Treas. Reg." shall have the meaning specified in Section 2.09(a).

"Trust Accounts" shall mean the Collection Account and the Reserve Account.

"Trust Estate" shall mean: (a) the RMBS Claims Units together with all payments due thereon, (b) all present and future claims, demands, causes and choses in action in respect of payments or distributions on the RMBS Claims Units including all rights of beneficiaries under the Liquidating Trust Agreement based thereon, (c) all funds held in the Trust Accounts from time to time, and (d) all proceeds of the foregoing of every kind and nature whatsoever, including, without limitation, all proceeds of the conversion thereof, voluntary or involuntary, into cash or other liquid property, all cash proceeds, accounts receivable, notes, drafts, acceptances, chattel paper, checks, deposit accounts, rights to payment of any and every kind and other forms of obligations and receivables, instruments and other property that at any time constitute all or part of or are included in the proceeds of the foregoing.

"Trustee" shall have the meaning ascribed to it in the preamble and any successor trustee appointed in accordance with this Agreement.

**Section 1.02   Interpretation.**

In this Agreement:

(a)    "or" is not exclusive;

(b)    "including" means "including without limitation";

(c)    any reference to the singular includes reference to the plural and vice versa and reference to the masculine gender includes reference to the feminine and neuter genders and *vice versa*;

(d)    unless otherwise expressly stated to the contrary herein, any reference to any Section, sub-section, paragraph or sub-paragraph is to a Section, sub-section, paragraph or sub-paragraph (as the case may be) of this Agreement;

(e)    the headings are inserted for convenience of reference only and shall not in any way form part of or affect or be taken into account in the construction or interpretation of any provision of this Agreement or the Schedule hereto; and

(f)    the recitals and Schedule form part of this Agreement and shall have the same force and effect as if they were expressly set out in the body of this Agreement and any references to this Agreement shall include the recitals and Schedule.

## ARTICLE II

## ESTABLISHMENT OF THE QSF TRUST

### Section 2.01   Name.

The trust created hereby shall be known as the "RMBS Claims Trust", in which name the Trustee may conduct the affairs of the QSF Trust.  It is the intention of the parties hereto that the QSF Trust hereby created constitutes a statutory trust under Chapter 38 of Title 12 of the Delaware Code, 12 Del. C., §3801 et seq. and that this Agreement constitutes the governing instrument of the QSF Trust. The Trustee, pursuant to the original trust agreement, filed a certificate of trust with the Delaware Secretary of State.

### Section 2.02   Office.

The office of the QSF Trust shall be in care of the Trustee at its corporate trust office or at any other address that the Trustee may designate by written notice to the QSF Beneficiaries.

### Section 2.03   Declaration of Trust.

Upon the Effective Date, the Trustee shall have all the rights, powers and duties set forth herein and pursuant to applicable law for accomplishing the purposes of the QSF Trust.  The Trustee is hereby authorized to file with any governmental authority any documents necessary to establish the QSF Trust.

### Section 2.04   Issuance of RMBS Claims Units and Related Distributions.

On the Initial Unit Distribution Date (as such term is defined in the Plan), the QSF Trust shall accept the RMBS Claims Units issued to the QSF Trust on such date pursuant to the Liquidating Trust Agreement and thereafter the QSF Trust shall accept any distributions made by the Liquidating Trust in respect of any Liquidating Trust Units held by the QSF Trust from time to time pursuant to the Liquidating Trust Agreement, in all cases in trust for the benefit of the QSF Beneficiaries.

### Section 2.05   Appointment of Trustee.

U.S. Bank Trust National Association is hereby appointed as trustee of the QSF Trust effective as of the date hereof, and shall have the rights, powers, and duties set forth herein.

### Section 2.06   Acceptance of Trust.

The Trustee agrees to accept and hold the Trust Estate in trust for the QSF Beneficiaries, subject to the terms of this Agreement.

### Section 2.07   Activities of the Trust.

It is the intention of the parties hereto that the QSF Trust shall not engage in any business or activities other than in connection with, or relating to the following:

7

(a)     to register on its books and records uncertificated beneficial interests to the QSF Beneficiaries;

(b)     to accept distributions of RMBS Claims Units and related cash distributions from the Liquidating Trust and make distributions to the QSF Beneficiaries from time to time;

(c)     to hold, transfer and/or invest the assets included in the Trust Estate and take such other actions with respect to the RMBS Claims Units as are permitted to be taken by the holders of the RMBS Claims Units pursuant to the Liquidating Trust Agreement, in accordance with this Agreement, or by the Trustee to enforce its rights under this Agreement;

(d)     to engage in those activities that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith; and

(e)     to seek a Letter Ruling from the IRS regarding the status of the QSF Trust as a qualified settlement fund within the meaning of Section 468B of the Code and Treasury Regulations promulgated thereunder, and to grant powers of attorney in connection therewith.

### Section 2.08   Purpose, Limitations of the Trust.

(a)     Except as otherwise expressly provided herein, the business and affairs of the QSF Trust will be managed by or under the direction of the Trustee.

(b)     The QSF Trust will conduct its business under names or tradenames so as not to mislead others as to the separate identity of the QSF Trust. Without limiting the generality of the foregoing, all oral and written communications, including letters, invoices, contracts, statements and applications, will be made solely in the name of the QSF Trust or in the name of the QSF Trustee in its capacity as such if related to the Trust.

(c)     There will not be any indebtedness relating to borrowings or loans between the QSF Trust and the Liquidating Trust or its Affiliates.

(d)     The QSF Trust will act solely in its name through the Trustee's duly authorized officers or agents in the conduct of its business. The QSF Trust will not:  (i) operate or purport to operate as an integrated, single economic unit with respect to the Liquidating Trust or any other Affiliated or unaffiliated entity or any other Person; (ii) seek or obtain credit or incur any obligation to any third party based upon the assets of the Liquidating Trust or its Affiliates; or (iii) induce any such third party to reasonably rely on the creditworthiness of the Liquidating Trust or any other Affiliated or unaffiliated entity.

(e)     The QSF Trust will maintain a Delaware trustee with a principal place of business in the State of Delaware.

(f)     The QSF Trust will keep its funds and other assets separate from the Liquidating Trust and will not commingle such funds and other assets with those of any other Affiliates thereof.

(g)     Any financial statements prepared by the QSF Trust shall be separate from those of the Liquidating Trust and any other Affiliates.

**Section 2.09    Section 468B Qualified Settlement Fund.**

(a)     It is intended and it is contemplated in the Plan that the QSF Trust established hereunder will qualify as, and remain, a "Qualified Settlement Fund" within the meaning of Section 468B of the Code, and the Regulations promulgated pursuant thereto and codified at 26 C.F.R. Sections 1.468B-1 through 1.468B-5.  For income tax purposes, Ally Financial Inc. ("Ally") shall be classified as a "transferor" within the meaning of Regulation Section 1.468B-1(d)(1), 26 C.F.R. ("Treas. Reg.") Section 1.468B-1(d)(1). The Trustee, shall be classified as the "administrator" within the meaning of Treas. Reg. Section 1.468B-2(k)(3).

(b)     It is further intended that all transfers to the QSF Trust will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Code and Treas. Reg. Section 1.461-1(a)(2).  As such, Ally shall not be taxed on the income of the QSF Trust. The QSF Trust shall be taxed on its modified gross income, excluding the sums, or cash equivalents of items, transferred to it.  All computations of the QSF Trust's modified gross income, as well as any exclusions or deductions thereto, shall be compliant and consistent with Treas. Reg. Sections 1.468B-2(b)(1)-(4).

(c)     Subject to the applicable provisions of the Code, the Trustee shall cause to be filed, on behalf of the QSF Trust, all required federal, state, and local tax returns pursuant to the provisions of Treas. Reg. Section 1.468B-2(k).  Furthermore, pursuant to the provisions of Treas. Reg. Section 1.468B-2(1), the Trustee shall cause to be filed all required federal, state, and local information returns and ensure compliance with withholding and reporting requirements. The Trustee may retain an independent, certified public accountant to consult with and advise the Trustee with respect to the preparation of any and all appropriate income tax returns, information returns, or compliance with withholding requirements.  Ally shall supply to the Trustee and to the IRS the statement described in Treas. Reg. Section 1.468B-3(e)(2) no later than February 15th of the year following each calendar year in which Ally is treated for federal income tax purposes as making a transfer to the QSF Trust.

(d)     The Trustee shall be authorized to take all such actions, including such actions as may be consistent with those expressly set forth above, as may be necessary to ensure that the QSF Trust is treated as a Qualified Settlement Fund under Section 468B of the Code, and the Regulations promulgated pursuant thereto.

(e)     Notwithstanding anything herein to the contrary, in the event that any portion of this Agreement shall at any time be considered not to be in compliance with Code Section 468B, as amended, together with any and all Treasury Regulations and IRS Notices, Announcements and directives thereunder, such offending Section of this Agreement shall be considered null, void, and of no effect, without any action by any court or by the Trustee.  The

overarching purpose of this Agreement is to at all times be in compliance with Code Section 468B and all administrative authority and announcements thereunder. In the event that this Section 2.09 applies to render an offending Section null, void, or of no effect, Section 9.05 of this Agreement shall still apply with respect to the remaining non-offending Sections of this Agreement.

## ARTICLE III

## QSF INTERESTS

### Section 3.01   Rights of QSF Beneficiaries.

Each QSF Beneficiary will be entitled to participate in the rights due to a QSF Beneficiary hereunder. Each QSF Beneficiary shall take and hold its QSF Interest subject to all of the terms and provisions of this Agreement. No QSF Beneficiary shall have any title to, right to, possession of, management of or control of, the QSF Trust or the Trust Estate except as herein expressly provided. The QSF Interests shall not be certificated.

### Section 3.02   No Legal Title in QSF Beneficiaries.

No QSF Beneficiary shall have legal title to any part of the Trust Estate. No transfer by operation of law or otherwise, of the right, title and interest of any QSF Beneficiary in and to the Trust Estate or hereunder shall operate to terminate this QSF Trust or entitle any successor or transferee of such QSF Beneficiary to an accounting or to the transfer to it of legal title to any part of the Trust Estate.

### Section 3.03   Identification of QSF Beneficiaries.

The initial QSF Beneficiaries are set forth on Schedule 1 hereto and shall be adjusted from time to time on the books and records of Trustee in accordance with the terms of Article VII. Except as otherwise required by law, references in this Agreement to the identification of QSF Beneficiaries and the providing of information to QSF Beneficiaries shall be read to mean QSF Beneficiaries of record as set forth on Schedule 1 hereto, as modified from time to time in accordance with the terms of Article VII. Unless expressly provided herein, the Trustee may establish a record date, which it deems practicable for determining the QSF Beneficiaries for a particular purpose.

### Section 3.04   Deemed Majority Consent.

The Majority Beneficiaries shall have the right to cause the institution of and to direct the time, manner, method and place of conducting any proceeding or exercising any power conferred on the Trustee hereunder; *provided, however*, that: (i) such direction shall not conflict with any rule of law, the Plan or this Agreement (ii) the Trustee shall not be required to undertake any action that might involve it in personal liability or require the expenditure of funds not available to it in the Reserve Account, unless the Trustee shall have been indemnified to its satisfaction, and (iii) the Trustee shall be entitled to condition its compliance with any such direction upon the receipt of an Opinion of Counsel that the directed action is authorized or permitted by this Agreement.

Notwithstanding anything contained herein to the contrary, with respect to any provision of this Agreement which permits or requires the consent of, or direction from, the Majority Beneficiaries prior to the Trustee acting hereunder, such consent of, or direction from, the Majority Beneficiaries shall be deemed to have been given if: (i) the Trustee sends written notice to all QSF Beneficiaries of such proposed action or omission, (ii) within sixty (60) days after delivery of such written notice to the QSF Beneficiaries, the Trustee does not receive the consent of or direction from the Majority Beneficiaries, (iii) after such sixty (60) day period has expired, the Trustee receives the consent of, or direction from, at least one QSF Beneficiary with respect to such proposed action or omission, and (iv) the Trustee does not receive written notice from QSF Beneficiaries holding at least fifty-one percent (51%) of the QSF Representative Shares opposing such proposed action or omission; *provided*, *however*, that no deemed direction shall be effective hereunder to the extent that it has the effect of denying an RMBS Trust the right to receive payments in respect of its RMBS Representative Share unless the Trustee shall have also received the consent of the QSF Beneficiary for such affected RMBS Trust. The Trustee shall incur no liability to any QSF Beneficiary, any RMBS Trust or any other Person for acting or omitting to act based upon the foregoing deemed consent. The Trustee shall have no duties or responsibility with respect to the compliance by the QSF Beneficiaries with respect to their duties with respect to the RMBS Trusts, including without limitation relating to their authority to act with respect to any RMBS Trusts.

## ARTICLE IV

## ACCOUNTS, DEPOSITS AND DISTRIBUTIONS

**Section 4.01    Establishment of Trust Accounts.**

(a)    The Trustee shall establish and maintain the following trust accounts in the name of the Trustee on behalf of the QSF Trust for the QSF Beneficiaries as provided in this Agreement:

    (i)    the collection account (the "<u>Collection Account</u>"); and

    (ii)    the reserve account (the "<u>Reserve Account</u>").

The trust accounts will be non-interest bearing but collected funds therein will be invested in accordance with <u>Section 4.04</u> hereof.

(b)    The Trustee shall have the right to create one or more sub-accounts, as needed, for operation purposes.

(c)    The Trust Accounts shall be Eligible Accounts.

**Section 4.02    Collection Account.**

(a)    <u>Deposits</u>.    Within one (1) Business Day of receipt, the Trustee shall deposit into the Collection Account the amounts received as distributions or payments on the RMBS Claims Units.

(b)    Withdrawal.  On each Distribution Date, the Trustee shall withdraw all Available Funds in the Collection Account to be distributed as follows:

(i)    First, to the Trustee for payment of any fees, expenses, indemnities or other amounts due to the Trustee under this Agreement;

(ii)    Second, to the Reserve Account until the balance in the Reserve Account equals the Required Reserve Amount;

(iii)    Third, ratably to each QSF Beneficiary in accordance with such QSF Beneficiary's QSF Representative Share, for further distribution by each QSF Beneficiary to its applicable RMBS Trusts in accordance with such RMBS Trusts' RMBS Representative Share.

The Trustee shall have no duties to the RMBS Trusts and responsibility for distributions by the QSF Beneficiaries to the RMBS Trusts or any investors of any RMBS Trust. Notwithstanding the forgoing and without limiting any other rights of the Trustee hereunder, the first Distribution Date shall, subject to Section 4.05 hereof, occur on the fifteenth Business Day following the date that the Trustee receives a distribution from the Liquidating Trust.

### Section 4.03    Reserve Account.

(a)    Deposits.  On each Distribution Date, the Trustee shall deposit funds into the Reserve Account in accordance with Section 4.02 until funds in the Reserve Account equal the Required Reserve Amount.

(b)    Withdrawal.  The Trustee may withdraw amounts held on deposit in the Reserve Account at any time for payment of any fees, expenses, indemnities or other amounts due to the Trustee under this Agreement.  So long as there are no claims, causes of actions, suits or other similar litigation proceedings commenced, asserted or threatened against the Trustee related to, connected with or directly or indirectly arising out of this Agreement, then upon the third anniversary of the Final Distribution Date, the Trustee shall distribute any amounts then held in the Reserve Account ratably to each QSF Beneficiary (as of the Record Date related to the Final Distribution Date) in accordance with such QSF Beneficiary's QSF Representative Share (as of the Record Date related to the Final Distribution Date), for further distribution by each QSF Beneficiary to its applicable RMBS Trusts in accordance with such RMBS Trusts' RMBS Representative Share.

### Section 4.04    Investments.

The Trustee shall invest funds held in the Trust Accounts in Permitted Investments.  In no event shall the Trustee be liable for the selection of investments or for investment losses incurred thereon.  The Trustee shall have no liability in respect of losses incurred as a result of the liquidation of any investment prior to its stated maturity.

### Section 4.05   Payments to QSF Beneficiaries.

Any and all distributions from the Trust Accounts to be made by the Trustee to the QSF Beneficiaries shall be made by wire transfer pursuant to the respective wire transfer details for such QSF Beneficiaries as provided in writing by the respective QSF Beneficiary prior to the initial Distribution Date (it being understood and agreed that any distribution by the Trustee to a QSF Beneficiary may be delayed up to ten (10) days after the receipt of such wire transfer instructions and further that it is currently contemplated that no more than three (3) separate wire transfers per QSF Beneficiary would be made on each Distribution Date), which such wire transfer instructions may be amended from time to time in writing provided to the Trustee in a timely manner.

### Section 4.06   Record Date.

Payments to the QSF Beneficiaries on any Distribution Date will be made to the QSF Beneficiaries of record of the respective QSF Interests on the related Record Date.

## ARTICLE V

## [ RESERVED ]

## ARTICLE VI

## CONCERNING THE TRUSTEE

### Section 6.01   Duties of the Trustee.

Every provision of this Agreement relating to the conduct of, affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this <u>Article VI</u>.  The Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Agreement and no implied covenants or obligations shall be read into this Agreement against the Trustee.  Except as provided in <u>Section 6.02</u>, no provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct; *provided, however,* that:

(a)     the Trustee shall not be liable for an error of judgment made in good faith by an Officer of the Trustee, unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts;

(b)     with respect to any trust or power conferred upon the Trustee under this Agreement, the Trustee shall not be personally liable with respect to any action taken, suffered or omitted to be taken by it in good faith in accordance with the direction of the Majority Beneficiaries (including, without limitation, any deemed direction pursuant to <u>Section 3.04</u> of this Agreement) or such other percentage as may be specified herein;

(c)     any determination of negligence or willful misconduct of the Trustee shall be made only upon the rendering of a final judgment of a court of competent jurisdiction no longer subject to appeal or review;

13

(d)     the Trustee shall be deemed to be acting solely in its capacity as Trustee in connection with the administration of the QSF Trust and not in its individual capacity, and as such, shall not be individually responsible for the payment of any obligations or liabilities of the QSF Trust, including, without limitation, liabilities of the QSF Trust for the payment of taxes; and

(e)     the Trustee shall forward a copy of any notice it receives in respect of the RMBS Claims Units or this Agreement to each of the QSF Beneficiaries.

## Section 6.02   Certain Matters Affecting the Trustee.

(a)     The Trustee may conclusively rely and shall be fully protected in acting or refraining from acting upon any resolution, certificate of auditors or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.

(b)     The Trustee may, in the absence of bad faith on its part, rely upon a certificate of an Officer of the appropriate Person whenever in the administration of this Agreement the Trustee shall deem it desirable that a matter be proved or established (unless other evidence be herein specifically prescribed) prior to taking, suffering or omitting any action hereunder.

(c)     The Trustee may consult with counsel of its own selection and the advice of such counsel or any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken or suffered or omitted by it hereunder in good faith and in accordance with such advice or Opinion of Counsel.

(d)     The Trustee shall be under no obligation to exercise any of the trusts or powers vested in it by this Agreement or to institute, conduct or defend any litigation hereunder or in relation hereto at the request, order or direction of any or all of the QSF Beneficiaries, pursuant to the provisions of this Agreement, unless such QSF Beneficiaries shall have offered to the Trustee security or indemnity satisfactory to it against the costs, expenses and liabilities which may be incurred therein or thereby.

(e)     The Trustee shall not be personally liable for any action taken, suffered or omitted by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Agreement.

(f)     The Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document.

(g)     The Trustee may execute any of the trusts or powers under this Agreement or perform any duties hereunder either directly or by or through agents, attorneys, custodians or nominees and the Trustee shall not be responsible for the supervision of or any misconduct or negligence on the part of any agent or attorney appointed with due care by it under this Agreement.

14

(h)     Whenever the Trustee is authorized herein to require acts or documents in addition to those required to be provided it in any matter, it shall be under no obligation to make any determination whether or not such additional acts or documents should be required.

(i)     The Trustee shall not be deemed to have notice of any matter unless one of its Officers has actual knowledge thereof or unless written notice thereof is received by the Trustee at the Corporate Trust Office and such notice references the QSF Interests, the Liquidating Trust, the QSF Trust or this Agreement.

(j)     None of the provisions of this Agreement shall require the Trustee to expend or risk its own funds or otherwise to incur any liability, financial or otherwise, in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers if it shall have reasonable grounds for believing that repayment of such funds or indemnity satisfactory to it against such risk or liability is not assured to it.

(k)     Notwithstanding anything herein to the contrary, in no event shall the Trustee be liable for special, indirect, punitive or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action.

(l)     Before the Trustee acts or refrains from acting, it may require an Opinion of Counsel and the Trustee may conclusively rely on and shall not be liable to any Person for any action it takes or omits to take in good faith in reliance upon such Opinion of Counsel.

(m)     The permissive rights of the Trustee to perform any discretionary act enumerated in this Agreement shall not be construed as a duty or obligation, and the Trustee shall not be answerable in the performance of such act other than for its negligence or willful misconduct.

(n)     The rights, privileges, protections, immunities and benefits given to the Trustee, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder, and each agent, custodian, co-trustee and other Person employed to act hereunder.

(o)     Except as otherwise instructed pursuant to the express requirements of this Agreement, the Trustee shall have no duty (i) to see to any recording, filing, or depositing of the this Agreement or any agreement referred to herein or any financing statement or continuation statement evidencing a security interest, or to see to the maintenance of any such recording or filing or depositing or to any re-recording, re-filing or re-depositing of any thereof, (ii) to see to any insurance, (iii) to see to the payment or discharge of any tax, assessment, or other governmental charge or any lien or encumbrance of any kind owing with respect to, assessed or levied against, any part of the Trust Estate, or (iv) to confirm or verify the contents of any reports or certificates delivered to the Trustee pursuant to this Agreement believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties.

(p)     The Trustee shall have no liability or responsibility for the acts or omissions of any other party to any this Agreement or any related document.

15

(q)    The Trustee shall have no duty or obligation to obtain or solicit any collateral or any funds to be remitted in any of the accounts established under this Agreement, and shall have a duty only to accept such funds delivered to it in accordance with this Agreement.

(r)    The Trustee shall have no duties to any Person or entity other than to the QSF Beneficiaries of record to the extent expressly set forth herein, and without limitation, shall have no other duties to any RMBS Trust or any investor or other party in interest in such RMBS Trust.

(s)    The Trustee shall have no duty to investigate, monitor or challenge any action of the Liquidating Trustees (as such term is defined in the Liquidating Trust Agreement) relating to the administration of the Liquidating Trust, and shall not be responsible for any failure of the Liquidating Trustees to carry out any of its duties thereunder, whether or not the Trustee is aware of such failure.

(t)    Without limitation of any of the foregoing, the Trustee is not responsible for the REMIC status or any other tax consequence related to any RMBS Trust, and shall have no obligation to seek or obtain any rulings from the IRS with respect thereto in the Letter Ruling or otherwise except as specified in <u>Section 2.07(e)</u>.

(u)    The Trustee is authorized to seek a judicial instruction with respect to any action or omission that is the subject of this Agreement.

**Section 6.03    Trustee Not Liable for QSF Interests or RMBS Claims Units.**

The recitals and factual statements contained in this Agreement shall be taken as the statements of the Debtors, and the Trustee assumes no responsibility for their correctness. The Trustee makes no representations or warranties as to the validity or sufficiency of this Agreement or of any RMBS Claims Units or related document, including the correctness of the initial amounts and percentages set forth on the Representative Share Schedules. The Trustee shall not be accountable for the use or application of any funds in respect of the RMBS Claims Units or deposited into or withdrawn from the Trust Accounts in accordance with this Agreement. The Trustee shall have no responsibility or obligation to monitor any other Person's compliance with the Liquidating Trust Agreement. The Trustee makes no representations or warranties whatsoever with respect to the tax status or consequences of this QSF Trust to any person of entity, and all QSF Beneficiaries and each RMBS Trust shall rely solely upon their own tax advice with respect thereto.

**Section 6.04    Trustee's Fees and Expenses.**

(a)    <u>Fees.</u>

The Trustee from time to time shall be entitled to reasonable compensation for its services which shall not be limited by any law on compensation of a trustee of an express trust. Such fees shall be set forth on a fee schedule to be provided by the Trustee to the QSF Beneficiaries prior to the date of this Agreement.

16

(b)    Expenses.

The Trustee shall be entitled to the payment of all expenses incurred or made by the Trustee hereunder, including, but not limited to, costs of collection, costs of preparing and reviewing reports, certificates and other documents, costs of preparation and mailing of notices to QSF Beneficiaries and costs of counsel, in addition to the compensation for its services. Such expenses shall include the compensation and expenses, disbursements and advances of the Trustee's agents, counsel, accountants and experts.

(c)    QSF Trust Indemnity; Limited Recourse.

The QSF Trust shall indemnify, defend and hold harmless the Trustee or any predecessor Trustee in each of its capacities hereunder and in any other document related thereto, and each of its officers, directors, employees, representatives, counsel and agents (collectively, the "Indemnified Parties") from and against, and reimburse the Indemnified Parties for, any and all claims, losses, liabilities, obligations, damages, injuries, penalties, stamp or other similar taxes, actions, suits, judgments, costs and expenses (including, but not limited to, attorneys' fees and expenses) of whatever kind or nature regardless of their merit, demanded, asserted or claimed against an Indemnified Party directly or indirectly relating to or arising from, claims against an Indemnified Party by reason of its participation in the transactions contemplated hereby, the administration of this trust and the performance of its duties hereunder and any related document, as the case may be, including the costs and expenses of enforcing this Agreement (including this Section 6.04), or any related document and of defending itself against any claims (whether asserted by any QSF Beneficiary or otherwise); *provided, however,* that the QSF Trust need not indemnify against any loss, liability or expense incurred by an Indemnified Party as a result of its own negligence or willful misconduct, as conclusively determined by the final judgment of a court of competent jurisdiction, no longer subject to appeal or review.

Any fees, expenses and indemnities due to the Trustee pursuant to this Section 6.04 shall be payable to the Trustee from funds held in the Collection Account and the Reserve Account pursuant to Section 4.02(b).

(d)    Survival of Payment Obligations.

The payment obligations contained in this Section 6.04 shall survive the satisfaction and discharge of this Agreement, the rejection or termination of this Agreement under bankruptcy law and/or resignation or removal of the Trustee.

**Section 6.05    Eligibility Requirements for the Trustee.**

The Trustee shall at all times be a corporation or national banking association that is organized and doing business under the laws of any state or the United States of America, authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least $50,000,000 and subject to supervision or examination by federal or state authority, and has a principal place of business in the State of Delaware. If such corporation publishes reports of its conditions at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purposes of this Section the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as

set forth in its most recent report of conditions so published. In case at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section, the Trustee shall resign immediately in the manner and with the effect specified in <u>Section 6.06</u>.

**Section 6.06    Resignation or Removal of Trustee.**

    (a)      The Trustee may resign at any time by notifying the QSF Beneficiaries. The Majority Beneficiaries may remove the Trustee for cause by providing the Trustee with thirty (30) days prior written notice thereof. The status of the Trustee's Affiliate being a QSF Beneficiary shall not be considered cause for removal hereunder. All QSF Beneficiaries (other than any QSF Beneficiary that is an Affiliate of the Trustee) may remove the Trustee without cause by providing the Trustee with thirty (30) days prior written notice thereof.

    (b)      If the Trustee resigns or is removed, the Majority Beneficiaries shall promptly appoint a successor Trustee. If a successor Trustee does not take office within sixty (60) days after the retiring Trustee resigns or is removed, the retiring Trustee may petition any court of competent jurisdiction for the appointment of a successor Trustee.

    (c)      A successor Trustee shall deliver a written acceptance of its appointment to the retiring Trustee. Thereupon the resignation or removal of the retiring Trustee shall become effective, and the successor Trustee shall have all the rights, powers and duties of the Trustee under this Agreement. The successor Trustee shall mail a notice of its succession to the QSF Beneficiaries. The retiring Trustee shall promptly transfer all property held by it as Trustee to the successor Trustee, subject to the lien provided for in <u>Section 6.04</u>. All costs incurred in connection with any resignation or removal hereunder shall be paid from the Reserve Account.

    (d)      Notwithstanding the replacement of the Trustee pursuant to this <u>Section 6.06</u>, the obligations under <u>Section 6.04</u> shall continue for the benefit of the retiring Trustee.

**Section 6.07    Merger or Consolidation of Trustee.**

    Any corporation into which the Trustee may be merged or converted or with which it may be consolidated or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation succeeding to the business of the Trustee, shall be the successor of the Trustee under this Agreement provided such corporation shall be eligible under the provisions of <u>Section 6.05</u>, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

## ARTICLE VII

## TRANSFERS OF QSF INTERESTS

### Section 7.01    Transfers by RMBS Trust.

An RMBS Trust may not transfer its interest in the RMBS Claims Units.

### Section 7.02    Transfers by QSF Beneficiaries.

(a)    Solely in connection with its resignation or removal as trustee of one or more RMBS Trusts (such affected RMBS Trusts are referred to herein as the "Affected RMBS Trusts"), a QSF Beneficiary may transfer its QSF Representative Shares related to such Affected RMBS Trusts to an entity or entities that will act as successor trustee (such entity or entities, collectively the "Transferees") of such Affected RMBS Trusts.

(b)    The transferring QSF Beneficiary shall provide at least ten (10) days prior written notice to the Trustee of such transfer, which notice shall contain the name, contact details and wiring instructions of the Transferees.  The QSF Beneficiary shall also provide the Trustee with such other information as the Trustee may reasonably request in connection with such transfer.

(c)    In connection with any transfer contemplated by this Article VII, the Trustee shall modify Schedule 1 in respect of any such Transferees and shall adjust each QSF Beneficiary's QSF Representative Share and each RMBS Trust's RMBS Representative Share set forth on the Representative Share Schedules, respectively, to reflect any such transfer.  The Trustee shall provide a copy of such modified Representative Share Schedules to each QSF Beneficiary.

## ARTICLE VIII

## TERMINATION OF QSF TRUST

### Section 8.01    Termination.

The QSF Trust shall terminate and the obligations and responsibilities of the Trustee created hereby shall terminate upon the earlier to occur of: (i) its receipt of written notice from the Liquidating Trust of the sale, liquidation or other disposition of all of the Liquidating Trust Assets (as such term is defined in the Liquidating Trust Agreement) and the disposition of any remaining Trust Assets held hereunder (other than those held in the Reserve Account), or (ii) the written consent of all QSF Beneficiaries and the Trustee (such event, a "Termination Event").

### Section 8.02    Procedure For Termination.

(a)    Upon a Termination Event, notice of the Distribution Date on which a final distribution (subject to Section 4.03(b)) shall occur (the "Final Distribution Date") shall be given promptly by the Trustee to the QSF Beneficiaries mailed during the month of such final distribution on or before the Distribution Date next following the Termination Event, specifying

the Final Distribution Date and the amount of any such final payment; *provided*, *however*, that the QSF Trust shall continue for the limited purposes of Section 4.03(b).

(b)     Upon dissolution, wind up and termination of the QSF Trust and this Agreement, the Trustee is authorized to execute and file a certificate of cancellation with the Secretary of State; *provided*, *however*, that the Trustee shall not be required to execute or file a certificate of cancellation unless it receives confirmation that the QSF Trust has complied with Section 3308 of the Delaware Trust Statute.

# ARTICLE IX

## MISCELLANEOUS PROVISIONS

### Section 9.01   Amendment of Trust Agreement.

(a)     Amendments.

Subject to Section 9.01(b), this Agreement may be amended or supplemented from time to time with the consent of the Trustee and the Majority Beneficiaries; *provided*, *however*, that no amendment shall be made to this Agreement that makes it inconsistent with the Plan or the Confirmation Order.  No amendment shall alter the rights of a QSF Beneficiary without the consent of the affected QSF Beneficiary.

(b)     Amendments Affecting RMBS Trusts.

Notwithstanding Section 9.01(a), any amendment or supplement to this Agreement that shall affect any RMBS Trust shall also require the consent of the QSF Beneficiary for such RMBS Trust.

(c)     Rights of Trustee.

Prior to executing any amendment permitted by this Section 9.01, the Trustee shall be entitled to receive, and shall be fully protected in relying upon, an Opinion of Counsel opining that the execution and delivery of such amendment is authorized or permitted by this Agreement. The Trustee may, but shall not be obligated to, enter into any such amendment that affects the Trustee's own rights, duties, liabilities, indemnities or immunities under this Agreement or otherwise.

(d)     Miscellaneous.

The manner of obtaining such consents and of evidencing the authorization of the execution thereof by QSF Beneficiaries shall be subject to such reasonable regulations as the Trustee may prescribe.

**Section 9.02    Counterparts.**

This Agreement may be executed simultaneously in any number of counterparts, each of which counterparts shall be deemed to be an original, and such counterparts shall constitute but one and the same instrument.  Delivery of a counterpart of this Agreement by facsimile or email in portable document format (pdf) shall be deemed to be delivery of original signatures for all purposes hereof.

**Section 9.03    Limitation on Rights of QSF Beneficiaries.**

(a)    No QSF Beneficiary shall have any right to vote or in any manner otherwise control the operation and management of the QSF Trust or the obligations of the parties hereto except as expressly provided for in this Agreement, and nothing herein set forth shall be construed so as to constitute the QSF Beneficiaries from time to time as partners or members of an association.

(b)    No QSF Beneficiary shall have any right by virtue of any provision of this Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement, unless the Majority Beneficiaries shall have made written request upon the QSF Trust or the Trustee on behalf of the QSF Trust to institute such action, suit or proceeding in the name of the QSF Trust under this Agreement and shall have offered to the Trustee such indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee on behalf of the QSF Trust, for sixty (60) days after its receipt of such notice, request and offer of indemnity, shall have neglected or refused to institute any such action, suit or proceeding.  For the protection and enforcement of the provisions of this Section, each and every QSF Beneficiary and the Trustee shall be entitled to such relief as can be given either at law or in equity.

**Section 9.04    Notices.**

(a)    All directions, demands and notices hereunder shall be in writing and shall be deemed to have been duly given when sent by facsimile transmission, first class mail or delivered to:

(i)    in the case of the Trustee, 300 East Delaware Avenue, 8th Floor, Wilmington, Delaware 19801-1515, Attention:  Corporate Trust Officer – Re: ResCap RMBS Claims Trust,

with a copy to:  Maslon Edelman Borman & Brand, LLP, 3300 Wells Fargo Center, 90 South 7th Street, Minneapolis, MN 55402, Attention:  Clark Whitmore and Brian Klein; and

(ii)    in the case of any QSF Beneficiary, at the address of such QSF Beneficiary as shown on Schedule 1 hereto.

(b)    Notice may also be delivered by email in accordance with such other side letter agreement entered into between the parties.  Any notice so mailed within the time prescribed in this Agreement shall be conclusively presumed to have been duly given, whether or not a QSF Beneficiary receives such notice.  A copy of any notice required to be telecopied

hereunder also shall be mailed to the appropriate party in the manner set forth above. A copy of any notice given hereunder to any other party shall be delivered to the Trustee.

### Section 9.05    Severability of Provisions.

If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be for any reason whatsoever held invalid, then, to the fullest extent permitted by law, such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement or the rights of the QSF Beneficiaries thereof.

### Section 9.06    Third Party Beneficiaries.

Nothing in this Agreement, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder, the QSF Beneficiaries and the Indemnified Parties with respect to Section 6.04(c), any benefit or any legal or equitable right, remedy or claim under this Agreement.

### Section 9.07    Acts of QSF Beneficiaries.

Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement to be given or taken by QSF Beneficiaries may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such QSF Beneficiaries in person or by agents duly appointed in writing; and except as herein otherwise expressly provided such action shall become effective when such instrument or instruments are delivered to the Trustee. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Agreement and conclusive in favor of the Trustee. The fact and date of the execution by any Person of any such instrument or writing may be proved in any manner that the Trustee deems sufficient. The ownership of QSF Interests shall be proved by the Representative Share Schedules as the same may be modified from time to time in accordance with the terms of Article VII.

### Section 9.08    Headings.

Section and subsection headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose or be given any substantive effect.

### Section 9.09    No Waiver; Cumulative Remedies.

No failure to exercise and no delay in exercising, on the part of any party of any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights, remedies, powers and privileges herein provided are cumulative and not exhaustive of any rights, remedies, powers and privileges provided by law.

**Section 9.10    Merger and Integration.**

Subject to the Plan and Confirmation Order, this Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and thereof, and all prior understandings, written or oral, are superseded by this Agreement.

**Section 9.11    Governing Law; Venue; Jury Waiver.**

(a)    THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

(b)    THE TRUSTEE AND EACH QSF BENEFICIARY HEREBY WAIVES THE RIGHT IT MAY HAVE TO A TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (i) ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT, OR (ii) IN ANY WAY IN CONNECTION WITH OR PERTAINING TO OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES WITH RESPECT TO THIS AGREEMENT OR IN CONNECTION WITH THIS AGREEMENT OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS AGREEMENT OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER IN CONTRACT, TORT OR OTHERWISE.

(c)    THE TRUSTEE AND EACH QSF BENEFICIARY HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY FEDERAL OR STATE COURTS SITTING IN THE STATE OF DELAWARE IN RESPECT OF ANY ACTION OR PROCEEDING ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT.

(d)    THE TRUSTEE AND EACH QSF BENEFICIARY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH PROCEEDINGS IN ANY SUCH COURT AND ANY CLAIM THAT ANY PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

IN WITNESS WHEREOF, ResCap, the other Debtors and the Trustee have caused this Trust Agreement to be duly executed by their respective officers thereunto duly authorized and all as of the day and year first above written.

Residential Capital, LLC

By: _____
Name:    William Thompson
Title:    General Counsel

By: _____
Name:    Jill Horner
Title:    Chief Finance Executive

AKA 13, LLC (f/k/a ditech, LLC), DOA Holding Properties, LLC, DOA Properties IX (Lots-Other), LLC, EPRE LLC, Equity Investment I, LLC, ETS of Virginia, Inc., ETS of Washington, Inc., Executive Trustee Services, LLC, GMAC-RFC Holding Company, LLC, GMAC Model Home Finance I, LLC, GMAC Mortgage USA Corporation, GMAC Mortgage, LLC, GMAC Residential Holding Company, LLC, GMAC RH Settlement Services, LLC, GMACM Borrower LLC, GMACM REO LLC, GMACR Mortgage Products, LLC, HFN REO SUB II, LLC, Home Connects Lending Services, LLC, Homecomings Financial Real Estate Holdings, LLC, Homecomings Financial, LLC, Ladue Associates, Inc., Passive Asset Transactions, LLC, PATI A, LLC, PATI B, LLC, PATI Real Estate Holdings, LLC, RAHI A, LLC, RAHI B, LLC, RAHI Real Estate Holdings, LLC, RCSFJV2004, LLC, Residential Accredit Loans, Inc., Residential Asset Mortgage Products, Inc., Residential Asset Securities Corporation, Residential Consumer Services of Alabama, LLC, Residential Consumer Services of Ohio, LLC, Residential Consumer Services of Texas, LLC, Residential Consumer Services, LLC, Residential Funding Company, LLC, Residential Funding Mortgage Exchange, LLC, Residential Funding Mortgage Securities I, Inc., Residential Funding Mortgage Securities II, Inc., Residential Funding Real Estate Holdings, LLC, Residential Mortgage Real Estate Holdings, LLC, RFC – GSAP Servicer Advance, LLC, RFC Asset Holdings II, LLC, RFC Asset Management, LLC, RFC Borrower LLC, RFC Construction Funding, LLC, RFC REO LLC and RFC SFJV-2002, LLC

By: _____
Name:    William Thompson
Title:    General Counsel

By: _____
Name:    Jill Horner
Title:    Chief Financial Officer

[Signature Page to RMBS Trust Agreement]

**IN WITNESS WHEREOF**, ResCap, the other Debtors and the Trustee have caused this Trust Agreement to be duly executed by their respective officers thereunto duly authorized and all as of the day and year first above written.

Residential Capital, LLC

By: _____
Name:   William Thompson
Title:   General Counsel

By: _____
Name:   Jill Horner
Title:   Chief Finance Executive

AKA 13, LLC (f/k/a ditech, LLC), DOA Holding Properties, LLC, DOA Properties IX (Lots-Other), LLC, EPRE LLC, Equity Investment I, LLC, ETS of Virginia, Inc., ETS of Washington, Inc., Executive Trustee Services, LLC, GMAC-RFC Holding Company, LLC, GMAC Model Home Finance I, LLC, GMAC Mortgage USA Corporation, GMAC Mortgage, LLC, GMAC Residential Holding Company, LLC, GMAC RH Settlement Services, LLC, GMACM Borrower LLC, GMACR REO LLC, GMACR Mortgage Products, LLC, HFN REO SUB II, LLC, Home Connects Lending Services, LLC, Homecomings Financial Real Estate Holdings, LLC, Homecomings Financial, LLC, Ladue Associates, Inc., Passive Asset Transactions, LLC, PATI A, LLC, PATI B, LLC, PATI Real Estate Holdings, LLC, RAHI A, LLC, RAHI B, LLC, RAHI Real Estate Holdings, LLC, RCSFJV2004, LLC, Residential Accredit Loans, Inc., Residential Asset Mortgage Products, Inc., Residential Asset Securities Corporation, Residential Consumer Services of Alabama, LLC, Residential Consumer Services of Ohio, LLC, Residential Consumer Services of Texas, LLC, Residential Consumer Services, LLC, Residential Funding Company, LLC, Residential Funding Mortgage Exchange, LLC, Residential Funding Mortgage Securities I, Inc., Residential Funding Mortgage Securities II, Inc., Residential Funding Real Estate Holdings, LLC, Residential Mortgage Real Estate Holdings, LLC, RFC – GSAP Servicer Advance, LLC, RFC Asset Holdings II, LLC, RFC Asset Management, LLC, RFC Borrower LLC, RFC Construction Funding, LLC, RFC REO LLC and RFC SFJV-2002, LLC

By: _____
Name:   William Thompson
Title:   General Counsel

By: _____
Name:   Jill Horner
Title:   Chief Financial Officer

[Signature Page to RMBS Trust Agreement]

**U.S. BANK TRUST NATIONAL
ASSOCIATION**, not in its individual capacity, but
solely as Trustee

By: _____

Name: MAMTA K. SCOTT

Title: VICE PRESIDENT

Acknowledged and Agreed
Solely with Respect to
Section 2.09 Hereof:

ALLY FINANCIAL INC.

By: _____
Name: _____
Title: _____

**U.S. BANK TRUST NATIONAL
ASSOCIATION,** not in its individual capacity, but
solely as Trustee

By:_____

Name:_____

Title:_____

Acknowledged and Agreed
Solely with Respect to
Section 2.09 Hereof:

ALLY FINANCIAL INC.

By:_____

Name:_____T. A. Devine_____

Title:_____Chief Counsel, Litigation___

## SCHEDULE 1

### QSF BENEFICIARIES CONTACT INFORMATION

| QSF BENEFICIARY |
| --- |
| The Bank of New York Mellon<br>6525 West Campus Oval<br>New Albany, Ohio 43054<br>Attn.: Robert H. Major, Vice President<br>Telephone No.: 614-775-5278<br>Fax No.: 614-775-5636<br>Email: robert.major@bnymellon.com |
| The Bank of New York Mellon Trust Company, N.A.<br>Global Trust-Mortgage Backed Securities<br>525 William Penn Place, 7th Floor<br>Pittsburgh, PA 15259<br>Attn.: Jennifer J. Provenzano, Vice President<br>Telephone No. 412-236-3140<br>Fax No.: 412-234-9019<br>Email No. Jennifer.j.provenzano@bnymellon.com |
| Deutsche Bank Trust Company Americas<br>1761 East St. Andrew Place<br>Santa Ana, CA 92705-4934<br>Attn: Residential Capital LLC/Ronaldo Reyes<br>Telephone No. 714-247-6320<br>Fax No.: 714-247-6478<br>Email: ronaldo.r.reyes@db.com<br><br>And<br><br>Harborside Financial Center<br>100 Plaza One<br>MS: JCY03-0699<br>Jersey City, NJ 07311-3901<br>Attn: Brendan Meyer<br>Telephone No.: 201-593-8545<br>Fax No.: 646-502-4546<br>Email: brendan.meyer@db.com |
| Deutsche Bank National Trust Company<br>1761 East St. Andrew Place<br>Santa Ana, CA 92705-4934 |

Attn: Residential Capital LLC/Ronaldo Reyes
Telephone No. 714-247-6320
Fax No.: 714-247-6478
Email: ronaldo.r.reyes@db.com

And

Harborside Financial Center
100 Plaza One
MS: JCY03-0699
Jersey City, NJ 07311-3901
Attn: Brendan Meyer
Telephone No.: 201-593-8545
Fax No.: 646-502-4546
Email: brendan.meyer@db.com

U.S. Bank National Association
Corporate Trust Services Division
One Federal Street 3rd Floor
Boston, MA 02110
Mail Station: EX-MA-FED
Attention:     Laura L. Moran, Vice President
Telephone No.:    617-603-6429
Facsimile No.::    617-603-6644
Email:    Laura.Moran@USBank.com

Wells Fargo Bank, N.A.
Sixth and Marquette
MAC N9311-161
Minneapolis, MN 55479
Attn: Mary L. Sohlberg, Structured Products
Group – Default and Restructuring (Rescap)
Telephone No.: 612-316-0737
Fax No.: 612-667-3464
Email: mary.l.sohlberg@wellsfargo.com

HSBC Bank USA, National Association
8 East 40th Street, 6th Floor
New York, NY 10016
Attn: Fernando Acebedo
Telephone No.: 212-525-1309
Fax No.: 212-525-1300
Email: fernando.acebedo@us.hsbc.com

Citibank, N.A.
388 Greenwich Street, 14th Floor

New York, New York 10013
Attention:  Louis Piscitelli
Telephone No.: 212-816-5805
Fax No.: 212-816-5527
Email: Louis.A.Piscitelli@citigroup.com

Wilmington Trust Company
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-1605
Attention:  Adam Scozzafava
Telephone No.:    302-636-6196
Fax No.:    302-636-4140
Email: ascozzafava@wilmingtontrust.com

Wilmington Trust, National Association
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-1605
Attention:  Adam Scozzafava
Telephone No.:    302-636-6196
Fax No.:    302-636-4140
Email:    ascozzafava@wilmingtontrust.com

SK 03687 0119 1416725 v12

# EXHIBIT 9

**In Re:**

*RESIDENTIAL CAPITAL, LLC, et al.*

*Case No. 12-12020-mg*

*December 11, 2013*

*eScribers, LLC*

*(973) 406-2250*

*operations@escribers.net*

*www.escribers.net*

*To purchase copies of this transcript, please contact us by phone or email*



**Min-U-Script® with Word Index**

12-12020-mg   Doc 6742-16   Filed 03/11/14   Entered 03/27/14 15:44:07   13-1   Pg
Case 1:14-cv-07676-JSR   Document 14-3   Filed 03/16/14   Page 91 of 95
91 of 95

1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 12-12020-mg

5    - - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    RESIDENTIAL CAPITAL, LLC, et al.,

9

10             Debtors.

11

12   - - - - - - - - - - - - - - - - - - - - -x

13

14             United States Bankruptcy Court

15             One Bowling Green

16             New York, New York

17

18             December 11, 2013

19             10:05 AM

20

21   B E F O R E:

22   HON. MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25

Case 9:14-cv-07676-JSR   Document 143-1   Filed 03/16/14   Page 92 of 95

2

 1

 2   Closing Arguments for the Phase II Trial

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Penina Wolicki

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

 1          THE COURT:  All right.  Anybody else want to speak in

 2   support of the plan?

 3          Anybody wish to speak in opposition to confirmation of

 4   plan?

 5          I see no one.  All right.

 6          Pending before the Court is the seconded amended joint

 7   Chapter 11 plan as modified, proposed by Residential Capital

 8   and the official committee of unsecured creditors.  And that's

 9   at ECF 6030.

10          Confirmation of the plan of liquidation in this

11   case -- and liquidation is what the result will be -- will

12   enable creditors to begin receiving some payments on the

13   billions of -- or hundreds of billions of losses they've

14   suffered.

15          The Court is going to enter detailed findings of fact

16   and a confirmation order that address in detail the facts and

17   the law that support confirmation of the proposed plan of

18   liquidation.  I don't intend to review on the record today the

19   facts and the law that, in the Court's view, easily support

20   approval of the plan.  I do, however, want to speak about some

21   aspects of this case.

22          The creditors in this case range from borrowers who

23   were threatened with or who in fact lost their homes to

24   foreclosure.  And I list them first because no one should lose

25   sight of the effect of this case and of the mortgage crisis

 1   generally on homeowners and borrowers.

 2          In addition to the borrowers, the creditors including

 3   investors in residential mortgage-backed securities sponsored

 4   by the debtors, and recognize that the investors included

 5   pension funds as well as large financial institutions in the

 6   United States and in other countries.  They included banks and

 7   funds and insurance companies that held or insured billions of

 8   dollars in face amount of secured and unsecured loans or bonds

 9   made to the debtors or to securitization trusts that the

10   debtors established.  They also include the government-

11   sponsored enterprises, such as Fannie Mae and Freddie Mac.

12          All of these creditors will begin to receive

13   recoveries through the plan.  Few will feel that they've

14   recovered all that they believe they should receive, but it's

15   rare, if ever, that occurs.

16          This case is certainly the most legally and factually

17   complex case that I've presided over in my seven years on the

18   bench.  And absent the consensual agreements among very diverse

19   and often antagonistic creditor constituencies reflected in the

20   plan that is before the Court today, many more years of

21   litigation likely would have ensued without a single dollar

22   being returned to creditors and at a cost of hundreds of

23   millions of additional dollars of expense that would have been

24   paid to lawyers and not to ResCap's creditors.

25          With well-developed bodies of bankruptcy and

1  nonbankruptcy law, I'm often struck by how many difficult legal

2  issues have remained unsettled in this case and how good

3  lawyers can and do often find persuasive arguments in support

4  of diametrically opposed results. ResCap presented more

5  unsettled legal issues than I've seen in one case before,

6  whether during my seven years on the bench or thirty-four years

7  in law practice before that.

8          Since the case has filed in May 2012, the Court has

9  issued twenty-five written opinions and countless orders

10 resolving both large and small disputes. Twenty-six adversary

11 proceedings were filed, many now resolved through the plan of

12 liquidation, some resolved through prior decisions of the

13 Court. Even after confirmation of the plan there will, no

14 doubt, be more issues requiring resolution by the Court.

15         Our bankruptcy process works best when the diverse

16 constituencies in a case recognize that a consensual resolution

17 benefits everyone. In ResCap, in my view, it took too long for

18 some constituencies to acknowledge that reality.

19         Through the tireless efforts of my colleague Judge

20 James Peck as the Court appointed mediator in the case, and the

21 good-faith arm's-length efforts by most of the diverse parties

22 represented by skilled counsel, a consensual agreement, a

23 nearly global settlement was achieved last spring.

24         The global settlement that is the cornerstone of the

25 plan of liquidation reflected creative solutions to seemingly