

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RESIDENTIAL FUNDING COMPANY, LLC,

    Plaintiff,

v.

GREENPOINT MORTGAGE FUNDING, INC., AN AFFILIATE OF CAPITAL ONE BANK,

    Defendant.

13 CV 8937
CASE NO. _____

## COMPLAINT

Plaintiff Residential Funding Company, LLC ("RFC" or "Plaintiff"), by and through its attorneys, alleges for its Complaint against defendant GreenPoint Mortgage Funding, Inc., an affiliate of Capital One Bank ("Defendant") as follows:

### NATURE OF ACTION

1. Defendant sold mortgage loans to RFC pursuant to the Mortgage Loan Purchase and Warranties Agreement attached as Exhibit A (the "Agreement").

2. Pursuant to the Agreement, Defendant made a number of representations and warranties to RFC regarding, among other things, the quality of the mortgage loans it sold RFC; the manner in which the mortgage loans were originated and underwritten; and the compliance of the mortgage loans with applicable state and federal law.

3. Defendant breached these representations and warranties by delivering loans that were not originated or underwritten in accordance with the requirements of the Agreement; did not meet the representations and warranties made as to those loans; and/or failed to comply with

applicable state and federal law.

4. Had RFC been aware of the defects in Defendant's loans, it would never have acquired them.

5. As a direct result of these contractual breaches, RFC has suffered damages and losses for which it is entitled to damages pursuant to the Agreement.

6. Pursuant to the Agreement, RFC is entitled to seek repurchase of the defective loans from Defendant or, where repurchase is not possible, contractual damages sufficient to make RFC whole and/or compensate it for its acquisition of the defective loans.

7. As a further result of Defendant's breaches of representations and warranties, RFC has been forced to incur (and continues to incur) substantial losses in the form of damages paid to third parties, settlement payments, repurchases, lost value and lost profits stemming from non-performing or defective loans, increased servicing expenses (including foreclosure costs associated with non-performing and/or non-compliant loans), attorneys' fees, court costs, and other losses.

8. Indeed, as discussed in further detail below, in May 2012, RFC was forced to file for bankruptcy protection pursuant to Chapter 11 of the United States Bankruptcy Code, in part because of the dozens of lawsuits and allegations relating to defective loans, including those sold to it by Defendant.

9. Defendant agreed and is obligated to indemnify RFC, and to reimburse RFC for and against any and all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from Defendant's breaches and defaults.

10. RFC therefore brings this action for breach of contract, and for indemnification for losses RFC has suffered due to Defendant's conduct.

## PARTIES

11. Plaintiff Residential Funding Company, LLC is a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota. RFC is a wholly owned subsidiary of GMAC Residential Holding Company, LLC, a Delaware limited liability company. GMAC Residential Holding Company, LLC is a wholly owned subsidiary of Residential Capital, LLC, a Delaware limited liability company. Residential Capital, LLC is a wholly owned subsidiary of GMAC Mortgage Group LLC, a Delaware limited liability company. GMAC Mortgage Group LLC is a wholly owned subsidiary of Ally Financial, Inc., a Delaware corporation with its principal place of business in Michigan.

12. Defendant GreenPoint Mortgage Funding, Inc., an affiliate of Capital One Bank, is a New York corporation with its principal place of business at 1680 Capital One Drive, McLean, Virginia 22102.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that the parties are citizens of different states and the amount in controversy exceeds $75,000.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events and omissions giving rise to this Complaint occurred in New York, Defendant is a New York corporation, and because the parties have contractually agreed that New York is the exclusive venue.

## FACTUAL BACKGROUND

### The Agreement Between RFC and the Defendant

15. RFC was an aggregator of residential mortgage loans and an issuer of mortgage-backed securities.

16. As such, RFC acquired mortgage loans from "correspondent lenders," including Defendant. As a correspondent lender, Defendant had the initial responsibility for collecting information from the borrower, verifying its accuracy, and underwriting the loan. Defendant had primary responsibility for all aspects of the underwriting of the loan, and it was understood between the parties that RFC would generally *not* be re-underwriting the loan. It was the Defendant that actually closed the loans with the borrowers.

17. Defendant contracted with RFC to sell already-closed loans to RFC pursuant to the requirements set forth in the Agreement.

18. As Defendant was well aware, once the loans were sold to RFC, RFC pooled groups of loans with similar characteristics, and the pool of loans would be sold into a special-purpose securitization Trust. The pool of loans formed the collateral underlying the Trust's mortgage-backed securities, which were in turn sold to investors.

19. RFC also sold pools of loans to whole loan investors.

20. Defendant knew of RFC's intention to securitize and/or sell the loans. Specifically, the Defendant acknowledged, in Section 14 of the Agreement, that RFC, at its option, could sell some or all of the Mortgage Loans to "one or more trusts or other entities to be formed as part of one or more Securitization Transfers," which, in turn, was defined as "[t]he sale or transfer of some or all of the Mortgage Loans to a trust or other entity as part of a publicly-offered or privately-placed, rated or unrated mortgage pass-through or other mortgage-backed securities transaction." Accordingly, Defendant represented and warranted that none of the information provided by Defendant, either under the Agreement or for use in connection with any Securitization Transfer or other sale of the loans, "contains or will contain any untrue statement of material fact or omits or will omit to state a material fact necessary to make the statements contained herein or therein

4

not misleading." (Exhibit A, Subsection 9.2(k).) Defendant further agreed to cooperate fully with RFC, including by restating its representations and warranties regarding itself and the Mortgage Loans, for the purposes of allowing the loans to be securitized. (Exhibit A, Section 14.)

21. Over the course of the parties' relationship, RFC acquired millions of dollars worth of residential mortgage loans from Defendant pursuant to the Agreement.

22. Pursuant to the Agreement, Defendant made a number of representations and warranties with respect to the loans, including, but not limited to, the following:

    a. "The information set forth in the related Mortgage Loan Schedule is complete, true and correct and there are no omissions of material facts." (Exhibit A at Section 9.1(a).)

    b. "The Mortgage Loan is not subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury ...." (Exhibit A at Section 9.1(e).)

    c. "Any and all requirements of any federal, state or local law, including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, predatory and abusive lending, equal credit opportunity and disclosure laws applicable to the Mortgage Loan, including, without limitation, any provisions relating to a Prepayment Penalty have been complied with…and [Defendant] shall maintain in its possession…evidence of compliance with all such requirements." (Exhibit A at Section 9.1(g).)

    d. "No fraud, error, misrepresentation, negligence or similar occurrence with respect to a Mortgage Loan has taken place on the part of any Person, including without limitation, the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan or in the application for any insurance in relation to such Mortgage Loan. [Defendant] has reviewed all of the documents constituting the Servicing File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein." (Exhibit A at Section 9.1(k).)

    e. "No Mortgage Loan has an LTV greater than 100%. Any Mortgage Loan that had at the time of origination an LTV in excess of 80% is insured as to payment defaults by a PMI Policy." (Exhibit A at Section 9.1(o).)

    f. "The Mortgage Loan was originated in accordance with the Underwriting Guidelines" incorporated into each Assignment made under the Agreement. (Exhibit A at Section 9.1(v).)

    g. "The Mortgage File contains an appraisal of the related Mortgaged Property signed prior to the approval of the Mortgage Loan application by a Qualified Appraiser." (Exhibit A at Section 9.1(nn).)

    h. No Mortgage Loan was a "high cost" loan or predatory loan, or otherwise in violation of any comparable state or local laws. (Exhibit A at Sections 9.1(uu) & (yy).)

23. The Defendant further represented and warranted that "[t]he Mortgage Note, the Mortgage, the Assignment of Mortgage and any other documents required to be delivered under this Agreement for each Mortgage Loan have been delivered" to RFC, and represented that it was in possession of a "complete true and accurate Mortgage File" that complied with a long list of requirements. (Exhibit A at Section 9.1(aa).) Among other things, Defendant warranted that the file included copies of the loan application, closing statement, verification of employment and income (where required), verification of acceptable evidence of the source and amount of the down payment for the Loan, a credit report on the borrower, a residential appraisal report, photographs of the mortgaged property and comparable properties, copies of all required disclosure statements, title insurance, and hazard or flood insurance. (Exhibit A at Section 9.1(aa) & Exhibit A-2.)

24. In addition, the Defendant represented and warranted that its "origination and servicing of the Mortgage Loans have been legal, proper, prudent and customary and have conformed to the highest standards of the residential mortgage origination and servicing business." (Exhibit A at 9.2(g).) RFC relied on these representations and warranties in acquiring the loans, and their presence was a material consideration in RFC's decision to acquire the mortgage loans from Defendant.

25. Pursuant to the Contract, Defendant's failure to comply with its representations and warranties gave RFC the right to seek cure, repurchase, substitution, or payment. (Exhibit A at § 3.03.)

26. The Defendant also expressly agreed to broad indemnification provisions, which

provide as follows:

> In addition to such [other remedies], [Defendant] shall indemnify the Purchaser ... and hold [it] harmless against any losses, damages, penalties, fines, forfeitures, legal fees and expenses and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of [Defendant's] representations and warranties contained in this Agreement....

(Exhibit A at Section 9.3.)

27.  The Defendant further agreed to indemnify RFC for all such losses, costs and expenses incurred in connection with enforcement of the indemnification obligation, or due to the Defendant's failure to perform its duties "in strict compliance with the terms of this Agreement." (Exhibit A at Section 13.1.)

28.  Moreover, the Defendant agreed to indemnify RFC "from and against any losses, damages, penalties, fines, forfeitures, legal fees and expenses and related costs, judgments, and any other costs, fees and expenses that [RFC] may sustain in any way related to any information provided by or on behalf of [Defendant] regarding the [Defendant], the Mortgage Loans or the Underwriting Guidelines set forth in any offering document prepared in connection with" any securitization or whole loan sale, and "for any untrue statement of any material fact contained in other information contained in any disclosure document, or the omission to state therein a material fact ... necessary to make the statements ... not misleading." (Exhibit A at Section 14.)

29.  In other words, Defendant knew RFC would rely on information provided by Defendant in securitizing the loans it acquired from Defendant, and expressly agreed to indemnify RFC from any losses stemming from material misrepresentations or omissions in that information.

**The Performance of Defendant's Loans and the Consequences for RFC**

30. RFC generally was not in the business of holding loans on its books. The loans it acquired from Defendant and other correspondent lenders were sold, either into residential mortgage-backed securitization ("RMBS") trusts that issued certificates to outside investors, or in "whole loan" portfolios to other mortgage companies and banks.

31. The loans Defendant sold RFC were eventually included in more than 45 RMBS Trusts. When RFC sold the loans, it passed on a more limited set of representations and warranties to the Trusts, and, as required by SEC regulations, disclosed pertinent information about the loans to investors in its RMBS. In making those representations and warranties, RFC relied—as Defendant knew it would—on information provided to it by Defendant and other correspondent lenders. That information in many cases violated the Defendant's representations and warranties to RFC.

32. Over time, many of the loans sold to RFC by Defendant defaulted or became seriously delinquent.

33. Internal reviews conducted by RFC after the loans were acquired from Defendant determined that many of the loans sold to RFC by Defendant violated the representations or warranties made by Defendant. In fact, more than 60% of the loans reviewed were deemed to have some type of defect.

34. The types of defects varied, but included owner occupancy fraud, appraisal fraud or inaccuracies, undisclosed debt, employment misrepresentations, and income misrepresentations, among others.

35. Indeed, as part of its own analysis of the claims later asserted against it, RFC retained its own expert, who concluded that approximately 43.5% of the loans he reviewed were