# Exhibit A

**EXECUTION COPY**

MORTGAGE LOAN PURCHASE AND WARRANTIES AGREEMENT

_____

RESIDENTIAL FUNDING CORPORATION,

Purchaser

GREENPOINT MORTGAGE FUNDING, INC.,

Seller

_____

Dated as of December 16, 2005

First and Second Lien Mortgages
(Servicing Retained)

Case 1:13-cv-08938-PKC Document 53 Filed 03/27/14 Page 3 of 31

TABLE OF CONTENTS

Page

SECTION 1.    DEFINITIONS. ............................................................................................ 1

SECTION 2.    AGREEMENT TO PURCHASE. ................................................................ 13

SECTION 3.    MORTGAGE SCHEDULES. ....................................................................... 13

SECTION 4.    PURCHASE PRICE. ................................................................................... 13

SECTION 5.    EXAMINATION OF MORTGAGE FILES. ................................................ 14

SECTION 6.    CONVEYANCE FROM SELLER TO PURCHASER. ................................ 15

SECTION 7.    SERVICING OF THE MORTGAGE LOANS. ............................................ 18

SECTION 8.    [RESERVED]. .............................................................................................. 18

SECTION 9.    REPRESENTATIONS, WARRANTIES AND COVENANTS OF THE
              SELLER; REMEDIES FOR BREACH. .......................................................... 18

SECTION 10.   CLOSING. .................................................................................................... 35

SECTION 11.   CLOSING DOCUMENTS. ............................................................................ 35

SECTION 12.   COSTS. ......................................................................................................... 36

SECTION 13.   THE SELLER. .............................................................................................. 37

SECTION 14.   COOPERATION OF SELLER WITH A RECONSTITUTION. ................... 38

SECTION 15.   REGULATION AB ....................................................................................... 39

SECTION 16.   FINANCIAL STATEMENTS ....................................................................... 40

SECTION 17.   MANDATORY DELIVERY; GRANT OF SECURITY INTEREST ........... 40

SECTION 18.   NOTICES ...................................................................................................... 40

SECTION 19.   SEVERABILITY CLAUSE .......................................................................... 41

SECTION 20.   COUNTERPARTS ........................................................................................ 42

SECTION 21.   INTENTION OF THE PARTIES ................................................................. 42

SECTION 22.   SUCCESSORS AND ASSIGNS; ASSIGNMENT OF PURCHASE
              AGREEMENT ................................................................................................ 42

SECTION 23.   WAIVERS ................................................................. 43

SECTION 24.   EXHIBITS ................................................................. 43

SECTION 25.   GENERAL INTERPRETIVE PRINCIPLES .................................. 43

SECTION 26.   REPRODUCTION OF DOCUMENTS....................................... 43

SECTION 27.   FURTHER AGREEMENTS .................................................. 44

SECTION 28.   RECORDATION OF ASSIGNMENTS OF MORTGAGE ........................ 44

SECTION 29.   NO SOLICITATION ....................................................... 44

SECTION 30.   WAIVER OF TRIAL BY JURY ............................................. 45

SECTION 31.   GOVERNING LAW JURISDICTION; CONSENT TO SERVICE OF
PROCESS ................................................................................. 45

SECTION 32.   AMENDMENT............................................................... 45

SECTION 33.   ENTIRE AGREEMENT...................................................... 45

EXHIBITS

EXHIBIT A-1 MORTGAGE LOAN DOCUMENTS

EXHIBIT A-2 CONTENTS OF EACH MORTGAGE FILE

EXHIBIT B    FORM OF INDEMNIFICATION AND CONTRIBUTION AGREEMENT

EXHIBIT C    FORM OF SELLER'S OFFICER'S CERTIFICATE

EXHIBIT D    FORM OF OPINION OF COUNSEL TO THE SELLER

EXHIBIT E    FORM OF SECURITY RELEASE CERTIFICATION

EXHIBIT F    FORM OF SECURITY RELEASE CERTIFICATION

EXHIBIT G    UNDERWRITING GUIDELINES

EXHIBIT H    FORM OF ASSIGNMENT AND CONVEYANCE AGREEMENT

EXHIBIT I    FORM OF PURCHASE PRICE AND TERMS LETTER

MORTGAGE LOAN PURCHASE AND WARRANTIES AGREEMENT

This MORTGAGE LOAN PURCHASE AND WARRANTIES AGREEMENT ("Agreement"), dated as of December 16, 2005, by and between RESIDENTIAL FUNDING CORPORATION, a Delaware corporation (the "Purchaser"), and GREENPOINT MORTGAGE FUNDING, INC., a New York corporation (the "Seller").

W I T N E S S E T H:

WHEREAS, the Seller desires to sell, from time to time, to the Purchaser, and the Purchaser desires to purchase, from time to time, from the Seller, certain conventional fixed and adjustable rate residential first-lien and second-lien mortgage loans (the "Mortgage Loans") on a servicing retained basis as described herein, and which shall be delivered in pools of whole loans (each, a "Mortgage Loan Package") on various dates as provided herein (each, a "Closing Date");

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a first lien or second lien on a residential dwelling located in the jurisdiction indicated on the Mortgage Loan Schedule for the related Mortgage Loan Package;

WHEREAS, the Purchaser and the Seller wish to prescribe the manner of the conveyance of the Mortgage Loans; and

WHEREAS, the Mortgage Loans are being sold by Seller to Purchaser on a servicing retained basis.

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Purchaser and the Seller agree as follows:

SECTION 1.   Definitions.

For purposes of this Agreement the following capitalized terms shall have the respective meanings set forth below.

Act:  The National Housing Act, as amended from time to time.

Actual Principal Balance:  As to each Mortgage Loan on any date of determination, the actual outstanding principal balance of such Mortgage Loan at the related Cut-off Date, determined after application of all payments of principal received or collected on or before such date, irrespective of when such payments were due, together with any Principal Prepayments received or collected prior to such date.

Adjustable Rate Mortgage Loan:  A Mortgage Loan purchased pursuant to this Agreement, the Mortgage Interest Rate of which is adjusted from time to time in accordance with the terms of the related Mortgage Note.

Affiliate:  With respect to any specified Person, any other Person controlling or controlled by or under common control with such specified Person.  For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

Agency Transfer:  A Fannie Mae Transfer or a Freddie Mac Transfer.

Agreement:  This Mortgage Loan Purchase and Warranties Agreement including all exhibits, schedules, amendments and supplements hereto.

ALTA:  The American Land Title Association or any successor thereto.

Appraised Value:  With respect to any Mortgaged Property, the lesser of (i) the value thereof as determined by an appraisal made for the originator of the Mortgage Loan at the time of origination of the Mortgage Loan by a Qualified Appraiser and (ii) the purchase price paid for the related Mortgaged Property by the Mortgagor with the proceeds of the Mortgage Loan; *provided*, *however*, that in the case of a Refinanced Mortgage Loan, such value of the Mortgaged Property is based solely upon the value determined by an appraisal made for the originator of such Refinanced Mortgage Loan at the time of origination of such Refinanced Mortgage Loan by a Qualified Appraiser.

Assignment and Conveyance Agreement:  As defined in Subsection 6.1.

Assignment of Mortgage:  An individual assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form and in blank, sufficient under the laws of the jurisdiction in which the related Mortgaged Property is located to give record notice of the sale of the Mortgage to the Purchaser.

Business Day:  Any day other than (i) a Saturday or Sunday, or (ii) a day on which banking and savings and loan institutions, in the States of New York, Minnesota, or California are authorized or obligated by law or executive order to be closed.

Cash-Out Refinance:  A Refinanced Mortgage Loan in which the proceeds received were in excess of the amount of funds required to repay the principal balance of any existing first mortgage on the related Mortgaged Property, pay related closing costs and satisfy any outstanding subordinate mortgages on the related Mortgaged Property and which provided incidental cash to the related Mortgagor of more than 1% of the original principal balance of such Mortgage Loan.

Closing Date:  The date or dates on which the Purchaser from time to time shall purchase, and the Seller from time to time shall sell, the Mortgage Loans listed on the related Mortgage Loan Schedule with respect to the related Mortgage Loan Package.

<u>Closing Documents</u>:  The documents required to be delivered on each Closing Date pursuant to <u>Section 11</u>.

<u>CLTA</u>:  The California Land Title Association.

<u>Code</u>:  The Internal Revenue Code of 1986, as amended, or any successor statute thereto.

<u>Condemnation Proceeds</u>:  All awards, compensation and settlements in respect of a taking of all or part of a Mortgaged Property, whether permanent or temporary, partial or entire, by exercise of the power of condemnation or the right of eminent domain, to the extent not required to be released to a Mortgagor in accordance with the terms of the related Mortgage Loan Documents.

<u>Co-op</u>:  A private, cooperative housing corporation, having only one class of stock outstanding, which owns or leases land and all or part of a building or buildings, including apartments, spaces used for commercial purposes and common areas therein and whose board of directors authorizes the sale of stock and the issuance of a Co-op Lease.

<u>Co-op Lease</u>:  With respect to a Co-op Loan, the lease with respect to a dwelling unit occupied by the Mortgagor and relating to the stock allocated to the related dwelling unit.

<u>Co-op Loan</u>:  A Mortgage Loan secured by the pledge of stock allocated to a dwelling unit in a residential cooperative housing corporation and a collateral assignment of the related Co-op Lease.

<u>Covered Loan</u>:  A Mortgage Loan categorized as Covered pursuant to Appendix E of Standard & Poor's Glossary.

<u>Custodial Account</u>:  The separate trust account designated by the Purchaser.

<u>Cut-off Date</u>:  The date or dates designated as such on the related Mortgage Loan Schedule with respect to the related Mortgage Loan Package.

<u>Deleted Mortgage Loan</u>:  A Mortgage Loan that is repurchased or to be repurchased or replaced or to be replaced with a Qualified Substitute Mortgage Loan by the Seller in accordance with the terms of this Agreement.

<u>Due Date</u>:  The day of the month on which the Monthly Payment is due on a Mortgage Loan, exclusive of any days of grace.

<u>Escrow Payments</u>:  With respect to any Mortgage Loan, the amounts constituting ground rents, taxes, assessments, water rates, sewer rents, municipal charges, mortgage insurance premiums, fire and hazard insurance premiums, condominium charges, and any other payments required to be escrowed by the Mortgagor with the Mortgagee pursuant to the Mortgage or any other document.

    <u>Fannie Mae</u>: The Federal National Mortgage Association, or any successor thereto.

    <u>Fannie Mae Guides</u>: The Fannie Mae Single Family Selling Guide and Servicing Guide and all amendments or additions thereto.

    <u>Fannie Mae Transfer</u>: As defined in <u>Section 14</u>.

    <u>FHA</u>: The Federal Housing Administration, an agency within the United States Department of Housing and Urban Development, or any successor thereto and including the Federal Housing Commissioner and the Secretary of Housing and Urban Development where appropriate under the FHA Regulations.

    <u>FIRREA</u>: The Financial Institutions Reform, Recovery, and Enforcement Act of 1989, as amended and in effect from time to time.

    <u>First Lien</u> means With respect to each Mortgaged Property, the lien of the mortgage, deed of trust or other instrument securing a Mortgage Note that creates a first lien on the Mortgaged Property.

    <u>Fixed Rate Mortgage Loan</u>: A fixed rate mortgage loan purchased pursuant to this Agreement.

    <u>Freddie Mac</u>: The Federal Home Loan Mortgage Corporation, or any successor thereto.

    <u>Freddie Mac Transfer</u>: As defined in <u>Section 14</u>.

    <u>Gross Margin</u>: With respect to each Adjustable Rate Mortgage Loan, the fixed percentage amount set forth in the related Mortgage Note which amount is added to the Index in accordance with the terms of the related Mortgage Note to determine on each Interest Rate Adjustment Date the Mortgage Interest Rate for such Mortgage Loan.

    <u>High Cost Loan</u>: A Mortgage Loan (a) covered by the Home Ownership and Equity Protection Act of 1994, (b) classified as a "high cost home," "threshold," "covered," "high risk home," "predatory" or similar loan under any other applicable state, federal or local law (or a similarly classified loan using different terminology under a law imposing heightened regulatory scrutiny or additional legal liability for residential mortgage loans having high interest rates, points and/or fees) or (c) a Mortgage Loan categorized as High Cost pursuant to Appendix E of Standard & Poor's Glossary. For avoidance of doubt, the parties agree that this definition shall apply to any law regardless of whether such law is presently, or in the future becomes, the subject of judicial review or litigation.

    <u>Home Loan</u>: A Mortgage Loan categorized as Home Loan pursuant to Appendix E of Standard & Poor's Glossary.

    <u>HUD</u>: The Department of Housing and Urban Development, or any federal agency or official thereof which may from time to time succeed to the functions thereof with

regard to Mortgage Insurance issued by the FHA. The term "HUD," for purposes of this Agreement, is also deemed to include subdivisions thereof such as the FHA and Government National Mortgage Association.

Index: The index indicated in the related Mortgage Note for each Adjustable Rate Mortgage Loan.

Insurance Proceeds: With respect to each Mortgage Loan, proceeds of insurance policies insuring the Mortgage Loan or the related Mortgaged Property.

Interest Rate Adjustment Date: With respect to each Adjustable Rate Mortgage Loan, the date, specified in the related Mortgage Note and the related Mortgage Loan Schedule, on which the Mortgage Interest Rate is adjusted.

Interim Funder: With respect to each MERS Designated Mortgage Loan, the Person named on the MERS System as the interim funder pursuant to the MERS Procedures Manual.

Investor: With respect to each MERS Designated Mortgage Loan, the Person named on the MERS System as the investor pursuant to the MERS Procedures Manual.

Lifetime Rate Cap: The provision of each Mortgage Note related to an Adjustable Rate Mortgage Loan which provides for an absolute maximum Mortgage Interest Rate thereunder. The Mortgage Interest Rate during the terms of each Adjustable Rate Mortgage Loan shall not at any time exceed the Mortgage Interest Rate at the time of origination of such Adjustable Rate Mortgage Loan by more than the amount per annum set forth on the related Mortgage Loan Schedule.

Liquidation Proceeds: The proceeds received in connection with the liquidation of a defaulted Mortgage Loan, whether through the sale or assignment of such Mortgage Loan, trustee's sale, foreclosure sale or otherwise or the sale of the related Mortgaged Property if the Mortgaged Property is acquired in satisfaction of the Mortgage Loan, other than amounts received following the acquisition of REO Property, Insurance Proceeds and Condemnation Proceeds.

Loan-to-Value Ratio: With respect to any Mortgage Loan, as of any date of determination, the ratio (expressed as a percentage) the numerator of which is the outstanding principal balance of the Mortgage Loan as of the related Cut-off Date (unless otherwise indicated), and the denominator of which is the lesser of (a) the Appraised Value of the Mortgaged Property at origination and (b) if the Mortgage Loan was made to finance the acquisition of the related Mortgaged Property, the purchase price of the Mortgaged Property.

LPMI Fee: With respect to each Mortgage Loan which has an LPMI Policy, the portion of the Mortgage Interest Rate as set forth on the related Mortgage Loan Schedule (which shall be payable solely from the interest portion of Monthly Payments, Insurance Proceeds, Condemnation Proceeds or Liquidation Proceeds), which, during such period prior to the required cancellation of the LPMI Policy, shall be used to pay the premium due on the related LPMI Policy.

LPMI Policy:  A policy of primary mortgage guaranty insurance issued by an insurer acceptable under the Underwriting Guidelines and qualified to do business in the jurisdiction where the Mortgaged Property is located, pursuant to which the related premium is to be paid by the Servicer of the related Mortgage Loan from payments of interest made by the Mortgagor in an amount as is set forth in the related Mortgage Loan Schedule.

LTV:  Loan-to-Value Ratio.

Manufactured Home:  A single family residential unit that is constructed in a factory in sections in accordance with the Federal Manufactured Home Construction and Safety Standards adopted on June 15, 1976, by the Department of Housing and Urban Development ("HUD Code"), as amended in 2000, which preempts state and local building codes.  Each unit is identified by the presence of a HUD Plate/Compliance Certificate label.  The sections are then transported to the site and joined together and affixed to a pre-built permanent foundation (which satisfies the manufacturer's requirements and all state, county, and local building codes and regulations).  The manufactured home is built on a non-removable, permanent frame chassis that supports the complete unit of walls, floors, and roof.  The underneath part of the home may have running gear (wheels, axles, and brakes) that enable it to be transported to the permanent site.  The wheels and hitch are removed prior to anchoring the unit to the permanent foundation.  The manufactured home must be classified as real estate and taxed accordingly.  The permanent foundation may be on land owned by the mortgager or may be on leased land.

MERS:  Mortgage Electronic Registration Systems, Inc., a Delaware corporation, and its successors in interest.

MERS Designated Mortgage Loan:  Mortgage Loans for which (a) the Seller has designated or will designate MERS as, and has taken or will take such action as is necessary to cause MERS to be, the mortgagee of record, as nominee for the Seller, in accordance with MERS Procedure Manual and (b) the Seller has designated or will designate the Purchaser as the Investor on the MERS System.

MERS Procedure Manual:  The MERS Procedures Manual, as it may be amended, supplemented or otherwise modified from time to time.

MERS Report:  The report from the MERS System listing MERS Designated Mortgage Loans and other information.

MERS System:  MERS mortgage electronic registry system, as more particularly described in the MERS Procedures Manual.

Monthly Payment:  With respect to any Mortgage Loan, the scheduled payment of principal and interest payable by a Mortgagor under the related Mortgage Note on each Due Date.

Mortgage:  With respect to a Mortgage Loan that is not a Co-op Loan, the mortgage, deed of trust or other instrument securing a Mortgage Note, which creates a first lien or on the Mortgaged Property.  With respect to a Co-op Loan, the Security Agreement.

Mortgage File:  With respect to any Mortgage Loan, the Mortgage Loan Documents and the items listed in Exhibit A-2 hereto and any additional documents required to be added to the Mortgage File pursuant to this Agreement.

Mortgage Interest Rate:  With respect to each Mortgage Loan, the annual rate at which interest accrues on such Mortgage Loan from time to time in accordance with the provisions of the related Mortgage Note.

Mortgage Interest Rate Cap:  With respect to an Adjustable Rate Mortgage Loan, the limit on each Mortgage Interest Rate adjustment as set forth in the related Mortgage Note.

Mortgage Loan:  Each mortgage loan sold, assigned and transferred pursuant to this Agreement and identified on the applicable Mortgage Loan Schedule, which Mortgage Loan includes, without limitation, the Mortgage File, the Servicing File, the Monthly Payments, Principal Prepayments, Liquidation Proceeds, Condemnation Proceeds, Insurance Proceeds, and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan, excluding replaced or repurchased mortgage loans.

Mortgage Loan Documents:  With respect to any Mortgage Loan, the documents required to be delivered to the Purchaser pursuant to Subsection 6.3.

Mortgage Loan Package:  Each pool of Mortgage Loans, which shall be purchased by the Purchaser from the Seller from time to time on each Closing Date.

Mortgage Loan Schedule:  The schedule of Mortgage Loans setting forth the following information with respect to each Mortgage Loan in the related Mortgage Loan Package:  (1) the Seller's Mortgage Loan identifying number; (2) the Mortgagor's name; (3) the street address of the Mortgaged Property including the city, state and zip code; (4) a code indicating whether the Mortgaged Property is owner-occupied, investment property or a second home; (5) the number and type of residential units constituting the Mortgaged Property (e.g. single family residence, a two- to four-family dwelling, condominium, planned unit development or cooperative); (6) a code indicating whether the Mortgaged Property is subject to a First Lien or a Second Lien; (7) the original months to maturity or the remaining months to maturity from the related Cut-off Date, in any case based on the original amortization schedule and, if different, the maturity expressed in the same manner but based on the actual amortization schedule; (8) the Loan-to-Value Ratio at origination; (9) the Mortgage Interest Rate as of the related Cut-off Date; (10) the date on which the first Monthly Payment was due on the Mortgage Loan and, if such date is not consistent with the Due Date currently in effect, the Due Date; (11) the stated maturity date; (12) the amount of the Monthly Payment as of the related Cut-off Date; (13) the last payment date on which a payment was actually applied to the outstanding principal balance; (14) the original principal amount of the Mortgage Loan; (15) the Scheduled Principal Balance or Actual Principal Balance, as applicable, of the Mortgage Loan as of the close of business on the related Cut-Off Date; (16) with respect to Adjustable Rate Mortgage Loans, the Interest Rate Adjustment Date; (17) with respect to Adjustable Rate Mortgage Loans, the Gross Margin; (18) with respect to Adjustable Rate Mortgage Loans, the Lifetime Rate Cap; (19) with respect to Adjustable Rate Mortgage Loans, a code indicating the type of Index; (20) the type of Mortgage Loan (i.e., Fixed Rate, Adjustable Rate); (21) a code indicating the

purpose of the loan (i.e., purchase, Rate/Term Refinance or Cash-Out Refinance); (22) a code indicating the documentation style (i.e. no documents, full, alternative, reduced, no income/no asset, stated income, no ration, reduced or NIV); (23) the loan credit classification (as described in the Underwriting Guidelines); (24) whether such Mortgage Loan provides for a Prepayment Penalty; (25) the Prepayment Penalty period of such Mortgage Loan, if applicable; (26) a description of the Prepayment Penalty, if applicable; (27) the Mortgage Interest Rate as of origination; (28) the credit risk score (FICO score); (29) the date of origination; (30) with respect to Adjustable Rate Mortgage Loans, the Mortgage Interest Rate adjustment period; (31) with respect to Adjustable Rate Mortgage Loans, the Mortgage Interest Rate adjustment percentage; (32) with respect to Adjustable Rate Mortgage Loans, the Mortgage Interest Rate floor; (33) the Mortgage Interest Rate calculation method (i.e., 30/360, simple interest, other); (34) with respect to Adjustable Rate Mortgage Loans, the Periodic Rate Cap as of the first Interest Rate Adjustment Date; (35) a code indicating whether the Mortgage Loan by its original terms or any modifications thereof provides for amortization beyond its scheduled maturity date; (36) the original Monthly Payment due; (37) the Appraised Value; (38) a code indicating whether the Mortgage Loan is covered by a PMI Policy and, if so, identifying the PMI Policy provider; (39) a code indicating whether the Mortgage Loan is covered by an LPMI Policy and, if so, identifying the LPMI Policy provider; (40) the LPMI fee, (41) in connection with a condominium unit, a code indicating whether the condominium project where such unit is located is low-rise or high-rise; (42) the MERS Identification Number, if applicable; (43) a field indicating whether such Mortgage Loan is a Home Loan; and (44) the Servicing Fee Rate with respect to the Mortgage Loan. With respect to the Mortgage Loans in the aggregate, the related Mortgage Loan Schedule shall set forth the following information, as of the related Cut-off Date: (1) the number of Mortgage Loans; (2) the current aggregate outstanding principal balance of the Mortgage Loans; (3) the weighted average Mortgage Interest Rate of the Mortgage Loans; (4) the weighted average maturity of the Mortgage Loans; (5) the average principal balance of the Mortgage Loans; (6) the applicable Cut-off Date; and (7) the applicable Closing Date.

Mortgage Note: The original executed note or other evidence of the Mortgage Loan indebtedness of a Mortgagor, including any riders or addenda thereto.

Mortgaged Property: With respect to a Mortgage Loan that is not a Co-op Loan, the Mortgagor's real property securing repayment of a related Mortgage Note, consisting of an unsubordinated estate in fee simple or, with respect to real property located in jurisdictions in which the use of leasehold estates for residential properties is a widely-accepted practice, a leasehold estate, in a single parcel or multiple parcels of real property improved by a Residential Dwelling. With respect to a Co-op Loan, the stock allocated to a dwelling unit in the residential cooperative housing corporation that was pledged to secure such Co-op Loan and the related Co-op Lease.

Mortgagee: The mortgagee or beneficiary named in the Mortgage and the successors and assigns of such mortgagee or beneficiary.

Mortgagor: The obligor on a Mortgage Note, who is an owner of the Mortgaged Property and the grantor or mortgagor named in the Mortgage and such grantor's or mortgagor's successors in title to the Mortgaged Property.

Officer's Certificate:  A certificate signed by the Chairman of the Board or the Vice Chairman of the Board or a President or a Vice President and by the Treasurer or the Secretary or one of the Assistant Treasurers or Assistant Secretaries of the Seller, and delivered to the Purchaser as required by this Agreement.

Opinion of Counsel:  A written opinion of counsel, who may be counsel for the Seller, reasonably acceptable to the Purchaser.

Periodic Rate Cap:  With respect to each Adjustable Rate Mortgage Loan, the provision of each Mortgage Note which provides for an absolute maximum amount by which the Mortgage Interest Rate therein may increase or decrease on an Interest Rate Adjustment Date above or below the Mortgage Interest Rate previously in effect.

Periodic Rate Floor:  With respect to each Adjustable Rate Mortgage Loan, the provision of each Mortgage Note which provides for an absolute maximum amount by which the Mortgage Interest Rate therein may decrease on an Interest Rate Adjustment Date below the Mortgage Interest Rate previously in effect.

Person:  An individual, corporation, partnership, joint venture, association, joint-stock company, limited liability company, trust, unincorporated organization or government or any agency or political subdivision thereof.

PMI Policy:  A policy of primary mortgage guaranty insurance issued by an insurer acceptable under the Underwriting Guidelines and qualified to do business in the jurisdiction where the Mortgaged Property is located.

Preliminary Mortgage Schedule:  As defined in Section 3.

Premium Percentage:  With respect to any Mortgage Loan, a percentage equal to the excess of the Purchase Price Percentage over 100%.

Prepayment Penalty:  With respect to each Mortgage Loan, the penalty if the Mortgagor prepays such Mortgage Loan as provided in the related Mortgage Note or Mortgage.

Principal Prepayment:  Any payment or other recovery of principal on a Mortgage Loan which is received in advance of its scheduled Due Date, including any Prepayment Penalty or premium thereon, which is not accompanied by an amount of interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment.

Purchase Price:  The price paid on the related Closing Date by the Purchaser to the Seller in exchange for the Mortgage Loans purchased on such Closing Date as calculated in Section 4 of this Agreement.

Purchase Price and Terms Letter:  Those certain agreements setting forth the general terms and conditions of the transactions consummated herein and identifying the Mortgage Loans to be purchased from time to time hereunder and thereunder, between the Seller and the Purchaser, in the form attached hereto as Exhibit I.

Purchase Price Percentage:  The percentage of par (expressed as decimal) set forth in the related Purchase Price and Terms Letter.

Purchaser:  Residential Funding Corporation, a Delaware corporation, and its successors in interest and assigns, or any successor to the Purchaser under this Agreement as herein provided.

Qualified Appraiser:  An appraiser, duly appointed by the Seller, who had no interest, direct or indirect, in the Mortgaged Property or in any loan made on the security thereof, and whose compensation was not affected by the approval or disapproval of the Mortgage Loan, and such appraiser and the appraisal made by such appraiser both satisfied the requirements of Title XI of FIRREA and the regulations promulgated thereunder, all as in effect on the date the Mortgage Loan was originated.

Qualified Substitute Mortgage Loan:  A mortgage loan eligible to be substituted by the Seller for a Deleted Mortgage Loan which must, on the date of such substitution, be approved by the Purchaser and (i) have an unpaid principal balance, after deduction of all scheduled payments due in the month of substitution (or in the case of a substitution of more than one mortgage loan for a Deleted Mortgage Loan, an aggregate principal balance), not in excess of the unpaid principal balance of the Deleted Mortgage Loan (the amount of any shortfall will be paid to the Purchaser by the Seller in the month of substitution); (ii) have a Mortgage Interest Rate not less than and not more than one percent (1%) greater than the Mortgage Interest Rate of the Deleted Mortgage Loan; (iii) have a remaining term to maturity not greater than and not more than one (1) year less than that of the Deleted Mortgage Loan; (iv) be of the same type as the Deleted Mortgage Loan (i.e., fixed rate or adjustable rate with same Mortgage Interest Rate Cap and Index); (v) comply as of the date of substitution with each representation and warranty set forth in Section 9 of this Agreement; (vi) be current in the payment of principal and interest; (vii) be secured by a Mortgaged Property of the same type and occupancy status as secured the Deleted Mortgage Loan; and (viii) have payment terms that do not vary in any material respect from those of the Deleted Mortgage Loan.

Rate/Term Refinance:  A Refinanced Mortgage Loan, in which the proceeds received were not in excess of the amount of funds required to repay the principal balance of any existing first mortgage loan on the related Mortgaged Property, pay related closing costs and satisfy any outstanding subordinate mortgages on the related Mortgaged Property and did not provide incidental cash to the related Mortgagor of more than one percent (1%) of the original principal balance of such Mortgage Loan.

Reconstitution:  A Whole Loan Transfer or a Securitization Transfer.

Reconstitution Agreements:  The agreement or agreements entered into by the Seller and the Purchaser and/or certain third parties on the Reconstitution Date or Dates with respect to any or all of the Mortgage Loans sold hereunder, in connection with a Whole Loan Transfer, Agency Transfer or a Securitization Transfer pursuant to Section 14, including, but not limited to, a seller's warranties and servicing agreement with respect to a Whole Loan Transfer, and a pooling and servicing agreement and/or seller/servicer agreements and related custodial/trust agreement and documents with respect to a Securitization Transfer.

Reconstitution Date:  As defined in Section 14.

Refinanced Mortgage Loan:  A Mortgage Loan the proceeds of which were not used to purchase the related Mortgaged Property.

REMIC:  A "real estate mortgage investment conduit" within the meaning of Section 860D of the Code.

REMIC Provisions:  Provisions of the federal income tax law relating to a REMIC, which appear at Section 860A through 860G of Subchapter M of Chapter 1, Subtitle A of the Code, and related provisions and regulations, rulings or pronouncements promulgated thereunder, as the foregoing may be in effect from time to time.

REO Property:  A Mortgaged Property acquired by or on behalf of the Purchaser in full or partial satisfaction of the related Mortgage.

Repurchase Price:  With respect to any Mortgage Loan for which a breach of a representation or warranty from the Agreement is found, a price equal to the then outstanding principal balance of the Mortgage Loan to be repurchased, plus accrued interest thereon at the Mortgage Interest Rate from the date to which interest had last been paid through the date of such repurchase, plus the amount of any outstanding advances owed to any servicer, and plus all costs and expenses incurred by the Purchaser or any servicer arising out of or based upon such breach, including without limitation costs and expenses incurred in the enforcement of the Seller's repurchase obligation hereunder, and plus, in the event a Mortgage Loan is repurchased during the first twelve months following the related Closing Date, an amount equal to the Premium Percentage multiplied by the outstanding principal balance of such Mortgage Loan as of the date of such repurchase.

Residential Dwelling:  Any one of the following:  (i) a detached one-family dwelling, (ii) a detached two- to four-family dwelling, (iii) a one-family dwelling unit in a condominium project or (iv) a one-family dwelling in a planned unit development, none of which is a co-operative, mobile or manufactured home.

RESPA:  Real Estate Settlement Procedures Act, as amended from time to time.

RFC Servicer Guide:  the Residential Funding Corporation Servicer Guide as amended or supplemented from time to time.

Scheduled Principal Balance:  As to each Mortgage Loan on any date of determination, the scheduled principal balance of such Mortgage Loan as of any date, determined after application of payments of principal due on or before such date whether or not collected, together with any Principal Prepayments collected prior to such date.

Securitization Transfer:  The sale or transfer of some or all of the Mortgage Loans to a trust or other entity as part of a publicly-offered or privately-placed, rated or unrated mortgage pass-through or other mortgage-backed securities transaction.

          <u>Second Lien</u>: With respect to each Mortgaged Property, the lien of the mortgage, deed of trust or other instrument securing a Mortgage Note that creates a second lien on the Mortgaged Property.

          <u>Second Lien Mortgage Loan</u>: A Mortgage Loan secured by the lien on the Mortgaged Property, subject to one prior lien on such Mortgaged Property securing financing obtained by the related Mortgagor.

          <u>Security Agreement</u>: The agreement creating a security interest in the stock allocated to a dwelling unit in the residential cooperative housing corporation that was pledged to secure such Co-op Loan and the related Co-op Lease.

          <u>Seller</u>: As defined in the initial paragraph of this Agreement, together with its successors in interest.

          <u>Servicer</u>: The Seller in its capacity as Servicer hereunder.

          <u>Servicing Fee Rate</u>: With respect to each Mortgage Loan, the per annum rate specified for such Mortgage Loan on the related funding schedule attached to the Purchase Price and Terms Letter.

          <u>Servicing File</u>: With respect to each Mortgage Loan, the file retained by the Servicer consisting of originals of all documents in the Mortgage File which are not delivered to the Purchaser.

          <u>Standard & Poor's</u>: Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies Inc., and any successor thereto.

          <u>Standard & Poor's Glossary</u>: The Standard & Poor's LEVELS® Glossary, as may be in effect from time to time.

          <u>Stated Principal Balance</u>: As to each Mortgage Loan on any date of determination, (i) the Actual Principal Balance or the Scheduled Principal Balance, as applicable, at the related Cut-off Date, minus (ii) all amounts previously distributed to the Purchaser with respect to the related Mortgage Loan representing payments or recoveries of principal on such Mortgage Loan.

          <u>Successor Servicer</u>: Any servicer of one or more Mortgage Loans designated by the Purchaser as being entitled to the benefits of the indemnifications set forth in <u>Subsections 9.3</u> and <u>13.1</u>.

          <u>Underwriting Guidelines</u>: The underwriting guidelines of the Seller, a copy of which is attached hereto as <u>Exhibit G</u> and a then-current copy of which shall be attached as an exhibit to the related Purchase Price and Terms Letter.

          <u>Whole Loan Transfer</u>: The sale or transfer by the Purchaser of some or all of the Mortgage Loans in a whole loan or participation format pursuant to a Reconstitution Agreement.

SECTION 2.   Agreement to Purchase.

The Seller agrees to sell from time to time, and the Purchaser agrees to purchase from time to time, Mortgage Loans having an aggregate principal balance on the related Cut-off Date in an amount as set forth in the related Purchase Price and Terms Letter, or in such other amount as agreed by the Purchaser and the Seller as evidenced by the actual aggregate principal balance of the Mortgage Loans accepted by the Purchaser on each Closing Date, together with the related Mortgage Files and all rights and obligations arising under the documents contained therein.  To the extent any provision of any Purchase Price and Terms Letter conflicts with the express provisions of this Agreement, the provisions of the Purchase Price and Terms Letter shall govern and be controlling.

SECTION 3.   Mortgage Schedules.

The Seller from time to time shall provide the Purchaser with certain information constituting a preliminary listing of the Mortgage Loans to be purchased in accordance with the related Purchase Price and Terms Letter and this Agreement (each, a "Preliminary Mortgage Schedule").

The Seller shall deliver the related Mortgage Loan Schedule for the Mortgage Loans to be purchased on a particular Closing Date to the Purchaser at least five (5) Business Days prior to the related Closing Date.  The related Mortgage Loan Schedule shall be the related Preliminary Mortgage Schedule with those Mortgage Loans which have not been funded prior to the related Closing Date.

SECTION 4.   Purchase Price.

(a)      The Purchase Price for the Mortgage Loans being acquired on a Closing Date shall be equal to the sum of (i) the percentage of par as stated in the related Purchase Price and Terms Letter  (subject to adjustment as provided therein), multiplied by either  the aggregate Scheduled Principal Balance of Mortgage Loans listed on the related Mortgage Loan Schedule or the Actual Principal Balance of such Mortgage Loans, as specified in the applicable Purchase Price and Terms Letter, plus (ii) an amount equal to accrued interest on the aggregate Scheduled Principal Balance or Actual Principal Balance, as applicable, of the Mortgage Loans at the weighted average Mortgage Interest Rate of such Mortgage Loans from the related Cut-off Date to but not including the related Closing Date (assuming 30/360) (the "Purchase Price").  If so provided in the related Purchase Price and Terms Letter, portions of the Mortgage Loans shall be priced separately.

(b)      The Purchase Price as set forth in the preceding paragraph for the Mortgage Loans shall be paid on the related Closing Date by wire transfer of immediately available funds.

(c)      With respect to each Mortgage Loan purchased on the basis of the Scheduled Principal Balance, Purchaser shall be entitled to (i) the principal portion of all Monthly Payments due after the related Cut-off Date, (ii) all other recoveries of principal collected after the related Cut-off Date, other than the principal portion of all Monthly Payments

-13-

due on or before the related Cut-off Date and collected by Seller or any successor servicer after the related Cut-off Date, and (iii) all payments of interest on the Mortgage Loans (minus that portion of any such payment that is allocable to the period prior to the related Cut-off Date). The Scheduled Principal Balance of each Mortgage Loan as of the related Cut-off Date is determined after application of payments of principal due on or before the related Cut-off Date whether or not collected, together with any unscheduled Principal Prepayments collected prior to the related Cut-off Date; provided, however, that Monthly Payments for a Due Date beyond the Cut-off Date shall not be applied to the principal balance as of the related Cut-off Date. Such Monthly Payments shall be the property of Purchaser. Seller shall pay any such Monthly Payments to Purchaser.

(d)     With respect to each Mortgage Loan purchased on the basis of the Actual Principal Balance, Purchaser shall be entitled to all payments of principal and interest received or collected after the Cut-off Date, irrespective of when such payments were due.

SECTION 5.   Examination of Mortgage Files.

At least ten (10) Business Days prior to the related Closing Date, the Seller shall either (a) deliver to the Purchaser or its designee in escrow, for examination with respect to each Mortgage Loan to be purchased, the related Mortgage File, including a copy of the Assignment of Mortgage (for Mortgage Loans that are not MERS Designated Mortgage Loans), pertaining to each Mortgage Loan , or (b) at the Purchaser's request, make the related Mortgage File available to the Purchaser for examination at such other location as shall otherwise be acceptable to the Purchaser. Such examination of the Mortgage Files may be made by the Purchaser or its designee at any reasonable time before or after the related Closing Date. If the Purchaser makes such examination prior to the related Closing Date and determines, in its sole discretion, that any Mortgage Loans do not conform to any of the requirements set forth in the related Purchase Price and Terms Letter, or as an Exhibit annexed thereto, the Purchaser may delete such Mortgage Loans from the related Mortgage Loan Schedule, and such Deleted Mortgage Loan (or Loans) may be replaced by a Qualified Substitute Mortgage Loan (or Loans) acceptable to the Purchaser. The Purchaser may, at its option and without notice to the Seller, purchase some or all of the Mortgage Loans without conducting any partial or complete examination. The fact that the Purchaser or its designee has conducted or has failed to conduct any partial or complete examination of the Mortgage Files shall not impair in any way the Purchaser's (or any of its successor's) rights to demand repurchase, substitution or other remedy as provided in this Agreement. In the event that the Seller fails to deliver the Mortgage File with respect to any Mortgage Loan, the Seller shall, upon the request of the Purchaser, repurchase such Mortgage Loan at the price and in the manner specified in Subsection 9.3. Upon the consent of the Purchaser, the Seller shall make available to the Purchaser in digital format on compact disks or DVDs, selected Mortgage Loans and the related Mortgage File which shall include, without limitation, imaged documents required by the Purchaser to conduct an examination of the Mortgage File.

SECTION 6.   Conveyance from Seller to Purchaser.

Subsection 6.1   Conveyance of Mortgage Loans.

The Seller, simultaneously with the delivery of the Mortgage Loan Schedule with respect to the related Mortgage Loan Package to be purchased on each Closing Date, shall execute and deliver an Assignment and Conveyance Agreement in the form attached hereto as Exhibit H (the "Assignment and Conveyance Agreement").  The Seller shall ensure that the contents of each Servicing File, which are required to be retained by or delivered to the Servicer to service the Mortgage Loans and thus not delivered to the Purchaser, or its designee, are and shall be held in trust by the Servicer for the benefit of the Purchaser as the owner thereof.  The Seller agrees that the Servicer's possession of any portion of each such Mortgage File is at the will of the Purchaser for the sole purpose of facilitating servicing of the Mortgage Loans pursuant to this Agreement, and such retention and possession by the Servicer shall be in a custodial capacity only.  The ownership of each Mortgage Note, each Mortgage and the contents of each Mortgage File is vested in the Purchaser and the ownership of all records and documents with respect to the related Mortgage Loan prepared by or which come into the possession of the Servicer shall immediately vest in the Purchaser and shall be retained and maintained, in trust, by the Servicer at the will of the Purchaser in such custodial capacity only.  The Seller shall cause the Servicing File retained by the Servicer pursuant to this Agreement to be appropriately identified in the Seller's computer system and/or books and records, as appropriate, to clearly reflect the sale of the related Mortgage Loan to the Purchaser.  The Seller shall cause the Servicer to release from its custody the contents of any Servicing File retained by it only in accordance with this Agreement, except when such release is required in connection with a repurchase of any such Mortgage Loan pursuant to Subsection 9.3 or if required under applicable law or court order.  Notwithstanding the foregoing or any provision of the RFC Servicing Guide to the contrary, the Servicer shall deliver the Servicing File to the Purchaser or the Purchaser's designee within three (3) Business Days' of the Purchaser's written request.  The Servicing File will be returned to the Servicer promptly following the Purchaser's review or upon the written request of the Servicer, indicating that the Servicer is in need of the original Servicing File.

Subsection 6.2   Books and Records.

Record title to each Mortgage and the related Mortgage Note as of the related Closing Date shall be in the name of the Seller, an Affiliate of the Seller, the Purchaser or one or more designees of the Purchaser, as the Purchaser shall select; *provided*, *however*, that if a Mortgage has been recorded in the name of MERS or its designee, the Seller is shown as the owner of the related Mortgage Loan on the records of MERS for purposes of the system of recording transfers of beneficial ownership of mortgages maintained by MERS. Notwithstanding the foregoing, ownership of each Mortgage and related Mortgage Note shall be vested solely in the Purchaser or the appropriate designee of the Purchaser, as the case may be. All rights arising out of the Mortgage Loans including, but not limited to, all funds received by the Seller or the Servicer after the related Cut-off Date on or in connection with a Mortgage Loan shall be vested in the Purchaser or one or more designees of the Purchaser; *provided*, *however*, that all funds received on or in connection with a Mortgage Loan shall be received and held by the Seller or the Servicer in trust for the benefit of the Purchaser or the appropriate designee of

the Purchaser, as the case may be, as the owner of the Mortgage Loans pursuant to the terms of this Agreement.

The Seller shall be or shall cause the Servicer to be responsible for maintaining, and shall maintain, a complete set of books and records for each Mortgage Loan which shall be marked clearly to reflect the ownership of each Mortgage Loan by the Purchaser. In particular, the Seller shall or shall cause the Servicer to maintain in its possession, available for inspection by the Purchaser, and shall deliver to the Purchaser upon demand, evidence of compliance with all federal, state and local laws, rules and regulations, and requirements of Fannie Mae or Freddie Mac, including but not limited to documentation as to the method used in determining the applicability of the provisions of the National Flood Insurance Act of 1968, as amended, to the Mortgaged Property, documentation evidencing insurance coverage and periodic inspection reports, as required by the Fannie Mae Guides. To the extent that original documents are not required for purposes of realization of Liquidation Proceeds or Insurance Proceeds, documents maintained by the Seller or the Servicer may be in the form of microfilm or microfiche so long as the Seller or the Servicer complies with the requirements of the Fannie Mae Guides.

It is the express intention of the parties that the transactions contemplated by this Agreement be, and be construed as, a sale of the related Mortgage Loans by the Seller and not a pledge of such Mortgage Loans by the Seller to the Purchaser to secure a debt or other obligation of the Seller. Consequently, the sale of each Mortgage Loan shall be reflected as a purchase on the Purchaser's business records, tax returns and financial statements, and as a sale of assets on the Seller's business records, tax returns and financial statements.

Subsection 6.3   Delivery of Mortgage Loan Documents.

The Seller shall deliver and release to the Purchaser or its designee no later than three (3) Business Days prior to the related Closing Date (or such other date as may be specified on Exhibit A-1), those Mortgage Loan Documents set forth on Exhibit A-1 hereto with respect to each Mortgage Loan set forth on the related Mortgage Loan Schedule.

In connection with the foregoing and in addition to the Seller's repurchase obligation set forth in Subsection 9.3, the Seller shall indemnify the Purchaser and its present and former directors, officers, employees and agents and any Successor Servicer and its present and former directors, officers, employees and agents, and hold such parties harmless against any losses, damages, penalties, fines, forfeitures, legal fees and expenses and related costs, judgments, and other costs and expenses based on or grounded upon, or resulting from, the fact that any Mortgage Loan is not covered by an ALTA or CLTA lender's title insurance policy. For purposes of the previous sentence, "Purchaser" shall mean the Person then acting as the Purchaser under this Agreement and any and all Persons who previously were "Purchasers" under this Agreement and "Successor Servicer" shall mean any Person designated as the Successor Servicer pursuant to this Agreement and any and all Persons who previously were "Successor Servicers" pursuant to this Agreement.

The Seller shall or shall cause the Servicer to forward to the Purchaser, or to such other Person as the Purchaser shall designate in writing, original documents evidencing an assumption, modification, consolidation or extension of any Mortgage Loan entered into in

accordance with this Agreement within two (2) weeks after their execution, *provided*, *however*, that the Seller shall provide the Purchaser, or to such other Person as the Purchaser shall designate in writing, with a certified true copy of any such document submitted for recordation within two weeks of its execution, and shall promptly provide the original of any document submitted for recordation or a copy of such document certified by the appropriate public recording office to be a true and complete copy of the original within two (2) weeks following receipt of the original document by the Servicer; *provided*, *however*, that such original recorded document or certified copy thereof shall be delivered to the Purchaser no later than 120 days following the related Closing Date, unless there has been a delay at the applicable recording office.

    If the original or copy of any document submitted for recordation to the appropriate public recording office is not delivered to the Purchaser or its designee within 120 days following the related Closing Date, the related Mortgage Loan shall, upon the request of the Purchaser, be repurchased by the Seller at the price and in the manner specified in Subsection 9.3.  The foregoing repurchase obligation shall not apply if the Seller delivers an Officer's Certificate to the Purchaser within 270 days of the related Closing Date certifying that the Seller cannot or cannot cause the Servicer to deliver such original or copy of any document submitted for recordation to the appropriate public recording office within the specified period due solely to a delay caused by the recording office in the applicable jurisdiction; *provided that* (i) the Seller shall instead deliver a recording receipt of such recording office or, if such recording receipt is not available, an Officer's Certificate of a servicing officer of the Seller, confirming that such document has been accepted for recording, and (ii) such document submitted for recordation is delivered within 360 days of the related Closing Date.  In the event that the documents submitted for recordation are not delivered to the Purchaser within 360 days of the related Closing Date, the Purchaser may elect to obtain the missing documents at Seller's expense without limiting the Purchaser's right to require the Seller to repurchase the related Mortgage Loan under Subsection 9.3.

    The Seller shall pay all initial recording fees, if any, for the Assignments of Mortgage and any other fees or costs in transferring all original documents to the Purchaser or, upon written request of the Purchaser, to the Purchaser's designee.  The Purchaser or the Purchaser's designee shall be responsible for recording the Assignments of Mortgage and shall be reimbursed by the Seller for the costs associated therewith pursuant to the preceding sentence.

    If Seller in its capacity as Servicer, or any other Servicer enters into an assumption, modification, consolidation or extension of any Mortgage Loan, Seller shall, or shall cause the Servicer to, deliver executed original documents evidencing such agreement within one (1) week after their execution; provided, however, that Seller shall provide to Purchaser or its designee a certified true copy of any such document submitted for recordation within one (1) week of its execution, and shall promptly provide the original of any document submitted for recordation or a copy of such document certified by the appropriate public recording office to be a true and complete copy of the original within one (1) week following receipt of the original document.  The provisions of Section 2.5(e) above relating to required document deliveries shall apply to documents executed after the Closing Date, provided that delivery time periods shall be determined from the execution date rather than the Closing Date.

Subsection 6.4   Quality Control Procedures.

The Seller shall, or shall cause the Servicer to, have an internal quality control program that verifies, on a regular basis, the existence and accuracy of the legal documents, credit documents, property appraisals, and underwriting decisions. The program shall include evaluating and monitoring the overall quality of the Seller loan production and the servicing activities of the Servicer in accordance with the RFC Servicer Guide. The program is to ensure that the Mortgage Loans are originated in accordance with the Underwriting Guidelines; guard against dishonest, fraudulent, or negligent acts; and guard against errors and omissions by officers, employees, or other authorized persons.

Subsection 6.5   MERS Designated Loans.

With respect to each MERS Designated Mortgage Loan, the Seller shall, on or prior to the related Closing Date, designate the Purchaser as the Investor, and no Person shall be listed as Interim Funder on the MERS System.

SECTION 7.   Servicing of the Mortgage Loans.

The Mortgage Loans have been sold by Seller to Purchaser on a servicing retained basis. Servicer shall service the Mortgage Loans on Purchaser's behalf in accordance with the terms and conditions specified in the RFC Servicer Guide. In the event of a conflict between this Agreement and the RFC Servicer Guide, the RFC Servicer Guide will control.

SECTION 8.   [RESERVED].

SECTION 9.   Representations, Warranties and Covenants of the Seller; Remedies for Breach.

Subsection 9.1   Representations and Warranties Regarding Individual Mortgage Loans.

The Seller hereby represents and warrants to the Purchaser that, as to each Mortgage Loan, as of the related Closing Date or such other date specified herein:

(a)   Mortgage Loans as Described.  The information set forth in the related Mortgage Loan Schedule is complete, true and correct and there are no omissions of material facts;

(b)   Payments Current.  All payments required to be made up to the related Closing Date for the Mortgage Loan under the terms of the Mortgage Note have been made and credited. No payment required under the Mortgage Loan is 30 days or more delinquent nor has any payment under the Mortgage Loan been 30 days or more delinquent at any time since the origination of the Mortgage Loan;

(c)   No Outstanding Charges.  There are no defaults in complying with the terms of the Mortgage, and all taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents which previously became due

and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item which remains unpaid and which has been assessed but is not yet due and payable.  The Seller has not advanced funds, or induced, solicited or knowingly received any advance of funds by a party other than the Mortgagor, directly or indirectly, for the payment of any amount required under the Mortgage Loan, except for interest accruing from the date of the Mortgage Note or date of disbursement of the Mortgage Loan proceeds, whichever is earlier, to the day which precedes by one month the related Due Date of the first installment of principal and interest;

(d)    <u>Original Terms Unmodified</u>.  The terms of the Mortgage Note and Mortgage have not been impaired, waived, altered or modified in any respect, from the date of origination except by a written instrument which is part of the Mortgage Loan File and which has been recorded, if necessary to protect the interests of the Purchaser, and which has been delivered to the Purchaser or to such other Person as the Purchaser shall designate in writing, and the terms of which are reflected in the related Mortgage Loan Schedule.  The substance of any such waiver, alteration or modification has been approved by the issuer of any related PMI Policy and the title insurer, if any, to the extent required by the policy, and its terms are reflected on the related Mortgage Loan Schedule, if applicable.  No Mortgagor has been released, in whole or in part, except in connection with an assumption agreement, approved by the issuer of any related PMI Policy and the title insurer, to the extent required by the policy, and which assumption agreement is part of the Mortgage Loan File delivered to the Purchaser or to such other Person as the Purchaser shall designate in writing and the terms of which are reflected in the related Mortgage Loan Schedule;

(e)    <u>No Defenses</u>.  The Mortgage Loan is not subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto;

(f)    <u>Hazard Insurance</u>.  Pursuant to the terms of the Mortgage, all buildings or other improvements upon the Mortgaged Property are insured by a generally acceptable insurer against loss by fire, hazards of extended coverage and such other hazards as are provided for in the Underwriting Guidelines.  If required by the National Flood Insurance Act of 1968, as amended, each Mortgage Loan is covered by a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance Administration as in effect which policy conforms with the Underwriting Guidelines.  All individual insurance policies contain a standard mortgagee clause naming the Seller and its successors and assigns as mortgagee, and all premiums thereon have been paid.  The Mortgage obligates the Mortgagor thereunder to maintain the hazard insurance policy at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at such Mortgagor's cost and expense, and to seek reimbursement therefor from the Mortgagor.  Where required by state law or regulation, the Mortgagor has been given an opportunity to choose the carrier of the required hazard insurance, provided the policy is not a "<u>master</u>" or "<u>blanket</u>" hazard insurance policy covering a condominium, or any hazard insurance

policy covering the common facilities of a planned unit development. The hazard insurance policy is the valid and binding obligation of the insurer, is in full force and effect, and will be in full force and effect and inure to the benefit of the Purchaser upon the consummation of the transactions contemplated by this Agreement. The Seller has not engaged in, and has no knowledge of the Mortgagor's having engaged in, any act or omission which would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either including, without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by the Seller;

(g)     Compliance with Applicable Laws. Any and all requirements of any federal, state or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, predatory and abusive lending, equal credit opportunity and disclosure laws applicable to the Mortgage Loan, including, without limitation, any provisions relating to a Prepayment Penalty have been complied with, the consummation of the transactions contemplated hereby will not involve the violation of any such laws or regulations, and the Seller shall maintain in its possession, available for the Purchaser's inspection, and shall deliver to the Purchaser upon demand, evidence of compliance with all such requirements;

(h)     No Satisfaction of Mortgage. The Mortgage has not been satisfied, canceled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such release, cancellation, subordination or rescission. The Seller has not waived the performance by the Mortgagor of any action, if the Mortgagor's failure to perform such action would cause the Mortgage Loan to be in default, nor has the Seller waived any default resulting from any action or inaction by the Mortgagor;

(i)     Type of Mortgaged Property. With respect to a Mortgage Loan that is not a Co-op Loan and is not secured by an interest in a leasehold estate, the Mortgaged Property is a fee simple estate that consists of a single parcel of real property with a detached single family residence erected thereon, or a two- to four-family dwelling, or an individual residential condominium unit in a condominium project, or an individual unit in a planned unit development, or an individual unit in a residential cooperative housing corporation; *provided*, *however*, that any condominium unit, planned unit development or residential cooperative housing corporation shall conform with the Underwriting Guidelines. No portion of the Mortgaged Property (or underlying Mortgaged Property, in the case of a Co-op Loan) is used for commercial purposes, and since the date of origination, no portion of the Mortgaged Property has been used for commercial purposes; *provided*, *that* Mortgaged Properties which contain a home office shall not be considered as being used for commercial purposes as long as the Mortgaged Property has not been altered for commercial purposes and is not storing any chemicals or raw materials other than those commonly used for homeowner repair, maintenance and/or household purposes. None of the Mortgaged Properties are Manufactured Homes, log homes, mobile homes, geodesic domes or other unique property types;

(j)    Valid Lien.    The Mortgage is a valid, subsisting, enforceable and perfected, First Lien or, with respect to a Second Lien Mortgage Loan, Second Lien on the Mortgaged Property, including all buildings and improvements on the Mortgaged Property and all installations and mechanical, electrical, plumbing, heating and air conditioning systems located in or annexed to such buildings, and all additions, alterations and replacements made at any time with respect to the foregoing.  The lien of the Mortgage is subject only to:

(i)    the lien of current real property taxes and assessments not yet due and payable;

(ii)    covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording acceptable to prudent mortgage lending institutions generally and specifically referred to in the lender's title insurance policy delivered to the originator of the Mortgage Loan and (a) specifically referred to or otherwise considered in the appraisal made for the originator of the Mortgage Loan or (b) which do not adversely affect the Appraised Value of the Mortgaged Property set forth in such appraisal;

(iii)    other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property; and

(iv)    with respect to a Second Lien Mortgage Loan, a valid First Lien.

Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Mortgage Loan establishes and creates a valid, subsisting, enforceable and perfected First Lien and first priority security interest on the property described therein and the Seller has full right to sell and assign the same to the Purchaser.

With respect to any Co-op Loan, the related Mortgage is a valid, subsisting and enforceable first priority security interest on the related cooperative shares securing the Mortgage Note, subject only to (a) liens of the related residential cooperative housing corporation for unpaid assessments representing the Mortgagor's pro rata share of the related residential cooperative housing corporation's payments for its blanket mortgage, current and future real property taxes, insurance premiums, maintenance fees and other assessments to which like collateral is commonly subject and (b) other matters to which like collateral is commonly subject which do not materially interfere with the benefits of the security interest intended to be provided by the related Security Agreement.

With respect to a Mortgage Loan that is secured by a Second Lien, (i) the First Lien is in full force and effect, (ii) there is no default, breach, violation or event of acceleration existing under such First Lien mortgage or the related mortgage note, (iii) no event that, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration thereunder, and either (A) the First Lien mortgage contains a provision that allows or (B) applicable law requires, the mortgagee under

the Second Lien Mortgage Loan to receive notice of, and affords such mortgagee an opportunity to cure any default by payment in full or otherwise under the First Lien mortgage

(k)     Validity of Mortgage Documents.  The Mortgage Note and the Mortgage and any other agreement executed and delivered by a Mortgagor in connection with a Mortgage Loan are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms (including, without limitation, any provisions therein relating to Prepayment Penalties).  All parties to the Mortgage Note, the Mortgage and any other such related agreement had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note, the Mortgage and any such agreement, and the Mortgage Note, the Mortgage and any other such related agreement have been duly and properly executed by other such related parties.   No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a Mortgage Loan has or is alleged to have taken place in connection with the origination of the Mortgage Loan or in the application of any insurance in relation to such Mortgage Loan.    The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading.   No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a Mortgage Loan has taken place on the part of any Person, including without limitation, the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan or in the application for any insurance in relation to such Mortgage Loan.  The Seller has reviewed all of the documents constituting the Servicing File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein;

(l)     Full Disbursement of Proceeds.  The Mortgage Loan has been closed and the proceeds of the Mortgage Loan have been fully disbursed and there is no requirement for future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvement and as to disbursements of any escrow funds therefor have been complied with.  All costs, fees and expenses incurred in making or closing the Mortgage Loan and the recording of the Mortgage were paid, and the Mortgagor is not entitled to any refund of any amounts paid or due under the Mortgage Note or Mortgage;

(m)     Ownership.  The Seller is the sole owner of record and holder of the Mortgage Loan and the indebtedness evidenced by each Mortgage Note and upon the sale of the Mortgage Loans to the Purchaser, the Seller will retain the Mortgage Files or any part thereof with respect thereto not delivered to the Purchaser or the Purchaser's designee, in trust only for the purpose of servicing and supervising the servicing of each Mortgage Loan.  The Mortgage Loan is not assigned or pledged, and the Seller has good, indefeasible and marketable title thereto, and has full right to transfer and sell the Mortgage Loan to the Purchaser free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and has full right and authority subject to no interest or participation of, or agreement with, any other party, to sell and assign each Mortgage Loan pursuant to this Agreement and following the sale of each Mortgage Loan, the Purchaser will own such Mortgage Loan free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest.  The Seller intends to relinquish all rights to possess, control and monitor the Mortgage Loan, except as may be required of the Seller in its Mortgage capacity as Servicer of such Loan.  After the

related Closing Date, the Seller will have no right to modify or alter the terms of the sale of the Mortgage Loan and the Seller will have no obligation or right to repurchase the Mortgage Loan or substitute another Mortgage Loan, except as provided in this Agreement;

(n)   Doing Business.  All parties which have had any interest in the Mortgage Loan, whether as mortgagee, assignee, pledgee or otherwise, are (or, during the period in which they held and disposed of such interest, were) (1) in compliance with any and all applicable licensing requirements of the laws of the state wherein the Mortgaged Property is located, and (2) either (i) organized under the laws of such state, or (ii) qualified to do business in such state, or (iii) a federal savings and loan association, a savings bank or a national bank having a principal office in such state, or (3) not doing business in such state;

(o)   LTV, PMI Policy.  No Mortgage Loan has an LTV greater than 100%. Any Mortgage Loan that had at the time of origination an LTV in excess of 80% is insured as to payment defaults by a PMI Policy.  Any PMI Policy in effect covers the related Mortgage Loan for the life of such Mortgage Loan, subject to applicable law.  All provisions of such PMI Policy have been and are being complied with, such policy is in full force and effect, and all premiums due thereunder have been paid.  No action, inaction, or event has occurred and no state of facts exists that has, or will result in the exclusion from, denial of, or defense to coverage.  Any Mortgage Loan subject to a PMI Policy obligates the Mortgagor thereunder to maintain the PMI Policy and to pay all premiums and charges in connection therewith.  The Mortgage Interest Rate for the Mortgage Loan as set forth on the related Mortgage Loan Schedule is net of any PMI Policy insurance premium or LPMI Fee;

(p)   Title Insurance.  With respect to a Mortgage Loan which is not a Co-op Loan, the Mortgage Loan is covered by an ALTA lender's title insurance policy or other generally acceptable form of policy or insurance acceptable under the Underwriting Guidelines and each such title insurance policy is issued by a title insurer acceptable under the Underwriting Guidelines and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring the Seller, its successors and assigns, as to the first priority lien of the Mortgage in the original principal amount of the Mortgage Loan (or to the extent a Mortgage Note provides for negative amortization, the maximum amount of negative amortization in accordance with the Mortgage), subject only to the exceptions contained in clauses (i) and (ii) of paragraph (j) of this Subsection 9.1, and in the case of Adjustable Rate Mortgage Loans, against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage providing for adjustment to the Mortgage Interest Rate and Monthly Payment.  Where required by state law or regulation, the Mortgagor has been given the opportunity to choose the carrier of the required mortgage title insurance.  Additionally, such lender's title insurance policy affirmatively insures ingress and egress, and against encroachments by or upon the Mortgaged Property or any interest therein.  The Seller, its successor and assigns, are the sole insureds of such lender's title insurance policy, and such lender's title insurance policy is valid and remains in full force and effect and will be in force and effect upon the consummation of the transactions contemplated by this Agreement.  No claims have been made under such lender's title insurance policy, and no prior holder of the related Mortgage, including the Seller, has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy, including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any

attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by the Seller;

(q)     No Defaults.   Other than payments due but not yet 30 days or more delinquent, there is no default, breach, violation or event which would permit acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event which would permit acceleration, and neither the Seller nor any of its affiliates nor any of their respective predecessors, have waived any default, breach, violation or event which would permit acceleration;

(r)     No Mechanics' Liens.   There are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under law could give rise to such liens) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage;

(s)     Location of Improvements; No Encroachments.   All improvements which were considered in determining the Appraised Value of the Mortgaged Property lay wholly within the boundaries and building restriction lines of the Mortgaged Property, and no improvements on adjoining properties encroach upon the Mortgaged Property.  No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation;

(t)     Origination; Payment Terms.   The Mortgage Loan was originated by a mortgagee approved by the Secretary of Housing and Urban Development pursuant to Sections 203 and 211 of the National Housing Act, a savings and loan association, a savings bank, a commercial bank, credit union, insurance company or other similar institution which is supervised and examined by a federal or state authority.  Principal payments on the Mortgage Loan commenced no more than seventy days after funds were disbursed in connection with the Mortgage Loan.  The Mortgage Interest Rate was as will as, in the case of an Adjustable Rate Mortgage Loan, the Lifetime Rate Cap and the Periodic Rate Cap and the Periodic Rate Floor are as set forth on the related Mortgage Loan Schedule.  The Mortgage Interest Rate is adjusted with respect to Adjustable Rate Mortgage Loans, on each Interest Rate Adjustment Date to equal the Index plus the Gross Margin (rounded up or down to the nearest 0.125%), subject to the Periodic Rate Cap.  The Mortgage Note is payable in equal monthly installments of principal and interest, which installments of interest, with respect to Adjustable Rate Mortgage Loans, are subject to change due to the adjustments to the Mortgage Interest Rate on each Interest Rate Adjustment Date, with interest calculated and payable in arrears, sufficient to amortize the Mortgage Loan fully by the stated maturity date, over an original term of not more than thirty (30) years from commencement of amortization.  Unless otherwise specified on the related Mortgage Loan Schedule, the Mortgage Loan is payable on the first day of each month.  The Mortgage Loan by its original terms or any modification thereof, does not provide for amortization beyond its scheduled maturity date;

(u)     Customary Provisions.  The Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby,

including, (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure.  Upon default by a Mortgagor on a Mortgage Loan and foreclosure on, or trustee's sale of, the Mortgaged Property pursuant to the proper procedures, the holder of the Mortgage Loan will be able to deliver good and merchantable title to the Mortgaged Property.  There is no homestead or other exemption available to a Mortgagor which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage, subject to applicable federal and state laws and judicial precedent with respect to bankruptcy and right of redemption or similar law;

(v)     <u>Conformance with Agency and Underwriting Guidelines</u>.  The Mortgage Loan was underwritten in accordance with the Underwriting Guidelines (a copy of which is attached to the related Assignment and Conveyance Agreement).  The Mortgage Note and Mortgage are on forms acceptable to Freddie Mac or Fannie Mae and no representations have been made to a Mortgagor that are inconsistent with the mortgage instruments used;

(w)     <u>Occupancy of the Mortgaged Property</u>.  As of the related Closing Date the Mortgaged Property is lawfully occupied under applicable law.  All inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy and fire underwriting certificates, have been made or obtained from the appropriate authorities.  Unless otherwise specified on the related Mortgage Loan Schedule, the Mortgagor represented at the time of origination of the Mortgage Loan that the Mortgagor would occupy the Mortgaged Property as the Mortgagor's primary residence;

(x)     <u>No Additional Collateral</u>.  The Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage and the security interest of any applicable security agreement or chattel mortgage referred to in clause (j) above;

(y)     <u>Deeds of Trust</u>.  In the event the Mortgage constitutes a deed of trust, a trustee, authorized and duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by the Purchaser to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor;

(z)     <u>Acceptable Investment</u>.  There are no circumstances or conditions with respect to the Mortgage, the Mortgaged Property, the Mortgagor, the Mortgage File or the Mortgagor's credit standing that can reasonably be expected to cause private institutional investors who invest in prime mortgage loans similar to the Mortgage Loan to regard the Mortgage Loan as an unacceptable investment cause the Mortgage Loan to become delinquent, or adversely affect the value or marketability of the Mortgage Loan, or cause the Mortgage Loan to prepay during any period materially faster or slower than the mortgage loans originated by the Seller generally;

(aa)     <u>Delivery of Mortgage Documents</u>.  The Mortgage Note, the Mortgage, the Assignment of Mortgage and any other documents required to be delivered under this Agreement for each Mortgage Loan have been delivered to the Purchaser.  The Seller is in possession of a

complete, true and accurate Mortgage File in compliance with <u>Exhibit A-2</u> attached hereto, except for such documents the originals of which have been delivered to the Purchaser;

(bb)    <u>Transfer of Mortgage Loans</u>.  The Assignment of Mortgage (except with respect to any Mortgage that has been recorded in the name of MERS or its designee) with respect to each Mortgage Loan is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located;

(cc)    <u>MERS Designated Mortgage Loan</u>.  Each Mortgage Loan is a MERS Designated Mortgage Loan.

(dd)    <u>Due-On-Sale</u>.  With respect to each Mortgage Loan, the Mortgage contains an enforceable provision for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the Mortgagee thereunder or, with respect to Adjustable Rate Mortgage Loans, assumed in accordance with clause (ee) below;

(ee)    <u>Assumability</u>.  With respect to each Adjustable Rate Mortgage Loan, the Mortgage Loan Documents provide that after the related first Interest Rate Adjustment Date, a related Mortgage Loan may only be assumed if the party assuming such Mortgage Loan meets certain credit requirements stated in the Mortgage Loan Documents;

(ff)    <u>No Buydown Provisions; No Graduated Payments or Contingent Interests</u>. The Mortgage Loan does not contain provisions pursuant to which Monthly Payments are paid or partially paid with funds deposited in any separate account established by the Seller, the Mortgagor, or anyone on behalf of the Mortgagor, or paid by any source other than the Mortgagor nor does it contain any other similar provisions which may constitute a "buydown" provision.  The Mortgage Loan is not a graduated payment mortgage loan and the Mortgage Loan does not have a shared appreciation or other contingent interest feature;

(gg)    <u>Consolidation of Future Advances</u>.  Any future advances made to the Mortgagor prior to the applicable Cut-off Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term.  The lien of the Mortgage securing the consolidated principal amount is expressly insured as having First Lien or, with respect to a Second Lien Mortgage Loan, Second Lien priority by a title insurance policy, an endorsement to the policy insuring the Mortgagee's consolidated interest or by other title evidence acceptable to Fannie Mae and Freddie Mac.  The consolidated principal amount does not exceed the original principal amount of the Mortgage Loan;

(hh)    <u>Mortgaged Property Undamaged; No Condemnation Proceedings</u>.  There is no proceeding pending or threatened for the total or partial condemnation of the Mortgaged Property.  The Mortgaged Property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty so as to affect adversely the value of the Mortgaged Property as security for the Mortgage Loan or the use for which the premises were intended and each Mortgaged Property is in good repair.  There have not been any condemnation proceedings

with respect to the Mortgaged Property and the Seller has no knowledge of any such proceedings in the future;

(ii)  Collection Practices; Escrow Deposits; Interest Rate Adjustments.  The origination, servicing and collection practices used by the Seller and the Servicer with respect to the Mortgage Loan have been in all respects legal, proper, prudent and customary in the mortgage service industry, and private institutional lenders would have no reason to regard the Mortgage Loan as an unacceptable investment.  With respect to escrow deposits and Escrow Payments, all such payments are in the possession of, or under the control of, the Seller or the Servicer and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made.  All Escrow Payments have been collected in full compliance with state and federal law and the provisions of the related Mortgage Note and Mortgage.  An escrow of funds is not prohibited by applicable law and has been established in an amount sufficient to pay for every item that remains unpaid and has been assessed but is not yet due and payable.  No escrow deposits or Escrow Payments or other charges or payments due the Seller have been capitalized under the Mortgage or the Mortgage Note.  All Mortgage Interest Rate adjustments have been made in strict compliance with state and federal law and the terms of the related Mortgage and Mortgage Note on the related Interest Rate Adjustment Date.  If, pursuant to the terms of the Mortgage Note, another index was selected for determining the Mortgage Interest Rate, the same index was used with respect to each Mortgage Note which required a new index to be selected, and such selection did not conflict with the terms of the related Mortgage Note.  The Seller or the Servicer executed and delivered any and all notices required under applicable law and the terms of the related Mortgage Note and Mortgage regarding the Mortgage Interest Rate and the Monthly Payment adjustments.  Any interest required to be paid pursuant to state, federal and local law has been properly paid and credited;

(jj)  Conversion to Fixed Interest Rate.  No Mortgage Loan contains a provision whereby the Mortgagor is permitted to convert the Mortgage Interest Rate from an adjustable rate to a fixed rate;

(kk)  Other Insurance Policies; No Defense to Coverage.  No action, inaction or event has occurred and no state of facts exists or has existed on or prior to the Closing Date that has resulted or will result in the exclusion from, denial of, or defense to coverage under any applicable hazard insurance policy, PMI Policy, LPMI Policy or bankruptcy bond (including, without limitation, any exclusions, denials or defenses which would limit or reduce the availability of the timely payment of the full amount of the loss otherwise due thereunder to the insured), irrespective of the cause of such failure of coverage.  The Seller has caused or will cause to be performed any and all acts required to preserve the rights and remedies of the Purchaser in any insurance policies applicable to the Mortgage Loans including, without limitation, any necessary notifications of insurers, assignments of policies or interests therein, and establishments of coinsured, joint loss payee and mortgagee rights in favor of the Purchaser.  In connection with the placement of any such insurance, no commission, fee, or other compensation has been or will be received by the Seller or by any officer, director, or employee of the Seller or any designee of the Seller or any corporation in which the Seller or any officer, director, or employee had a financial interest at the time of placement of such insurance;

(ll)    No Violation of Environmental Laws.    To the best of the Seller's knowledge, there is no pending action or proceeding directly involving the Mortgaged Property in which compliance with any environmental law, rule or regulation is an issue; there is no violation of any environmental law, rule or regulation with respect to the Mortgage Property; and nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation constituting a prerequisite to use and enjoyment of said property;

(mm)    Servicemembers Civil Relief Act.    The Mortgagor has not notified the Seller, and the Seller has no knowledge of any relief requested or allowed to the Mortgagor under the Servicemembers Civil Relief Act or other similar state statute;

(nn)    Appraisal.    The Mortgage File contains an appraisal of the related Mortgaged Property signed prior to the approval of the Mortgage Loan application by a Qualified Appraiser;

(oo)    Disclosure Materials.    The Mortgagor has executed a statement to the effect that the Mortgagor has received all disclosure materials required by, and the Seller has complied with, all applicable law with respect to the making of the Mortgage Loans.  The Seller shall maintain such statement in the Mortgage File;

(pp)    Construction or Rehabilitation of Mortgaged Property.  No Mortgage Loan was made in connection with the construction (other than a "construct-to-perm" loan) or rehabilitation of a Mortgaged Property or facilitating the trade-in or exchange of a Mortgaged Property;

(qq)    Escrow Analysis.  If applicable, with respect to each Mortgage Loan, the Seller has within the last twelve months (unless such Mortgage was originated within such twelve month period) analyzed the required Escrow Payments for each Mortgage and adjusted the amount of such payments so that, assuming all required payments are timely made, any deficiency will be eliminated on or before the first anniversary of such analysis, or any overage will be refunded to the Mortgagor, in accordance with RESPA and any other applicable law;

(rr)    Credit Information.  As to each consumer report (as defined in the Fair Credit Reporting Act, Public Law 91-508) or other credit information furnished by the Seller to the Purchaser, that Seller has full right and authority and is not precluded by law or contract from furnishing such information to the Purchaser and the Purchaser is not precluded from furnishing the same to any subsequent or prospective purchaser of such Mortgage.  The Seller has and shall in its capacity as servicer, for each Mortgage Loan, fully furnished, in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information (e.g. favorable and unfavorable) on its borrower credit files to Equifax, Experian and Trans Union Credit Information Company (three of the credit repositories), on a monthly basis;

(ss)    Leaseholds.  If the Mortgage Loan is secured by a leasehold estate, (1) the ground lease is assignable or transferable; (2) the ground lease will not terminate earlier than ten years after the maturity date of the Mortgage Loan; (3) the ground lease does not provide for termination of the lease in the event of lessee's default without the Mortgagee being entitled to receive written notice of, and a reasonable opportunity to cure the default; (4) the ground lease

permits the mortgaging of the related Mortgaged Property; (5) the ground lease protects the Mortgagee's interests in the event of a property condemnation; (6) all ground lease rents, other payments, or assessments that have become due have been paid; and (7) the use of leasehold estates for residential properties is a widely accepted practice in the jurisdiction in which the Mortgaged Property is located;

(tt)    Prepayment Penalty.  Each Mortgage Loan that is subject to a Prepayment Penalty as provided in the related Mortgage Note is identified on the related Mortgage Loan Schedule.  With respect to Mortgage Loans originated prior to October 1, 2002, no such Prepayment Penalty may be imposed for a term in excess of five (5) years following origination. With respect to Mortgage Loans originated on or after October 1, 2002, no such Prepayment Penalty may be imposed for a term in excess of three (3) years following origination.  No Prepayment Penalty (i) becomes due upon default or (ii) exceeds six (6) months of interest on the amount prepaid or six percent (6%) of the amount prepaid;

(uu)    Predatory Lending Regulations.  No Mortgage Loan is a High Cost Loan or Covered Loan, as applicable.  No Mortgage Loan is covered by the Home Ownership and Equity Protection Act of 1994 and no Mortgage Loan is in violation of any comparable state or local law.  The Mortgaged Property is not located in a jurisdiction where a breach of this representation with respect to the related Mortgage Loan may result in additional assignee liability to the Purchaser, as determined by Purchaser in its reasonable discretion;

(vv)    Single-premium credit life insurance policy.  No Mortgagor was required to purchase any single premium credit insurance policy (e.g., life, disability, property, accident, unemployment or health insurance product) or debt cancellation agreement as a condition of obtaining the extension of credit.  No Mortgagor obtained a prepaid single-premium credit insurance policy (e.g., life, disability, property, accident, unemployment, mortgage or health insurance) in connection with the origination of the Mortgage Loan.  No proceeds from any Mortgage Loan were used to purchase single premium credit insurance policies as part of the origination of, or as a condition to closing, such Mortgage Loan;

(ww)    Qualified Mortgage.  The Mortgage Loan is a qualified mortgage under Section 860G(a)(3) of the Code;

(xx)    Tax Service Contract.  Each Mortgage Loan secured by a First Lien is covered by a paid in full, life of loan, tax service contract issued by Lereta, and such contract is transferable.

(yy)    Origination.  No predatory or deceptive lending practices, including, without limitation, the extension of credit without regard to the ability of the Mortgagor to repay and the extension of credit which has no apparent benefit to the Mortgagor, were employed in the origination of the Mortgage Loan;

(zz)    Recordation.  Each original Mortgage was recorded and all subsequent assignments of the original Mortgage (other than the assignment to the Purchaser) have been recorded in the appropriate jurisdictions wherein such recordation is necessary to perfect the lien thereof as against creditors of the Seller, or is in the process of being recorded;

(aaa)   <u>Co-op Loans.</u>  With respect to a Mortgage Loan that is a Co-op Loan, the stock that is pledged as security for the Mortgage Loan is held by a person as a tenant-stockholder (as defined in Section 216 of the Code) in a cooperative housing corporation (as defined in Section 216 of the Code);

(bbb)   <u>Mortgagor Bankruptcy.</u>  On or prior to the date 60 days after the related Closing Date, the Mortgagor has not filed and will not file a bankruptcy petition or has not become the subject and will not become the subject of involuntary bankruptcy proceedings or has not consented to or will not consent to the filing of a bankruptcy proceeding against it or to a receiver being appointed in respect of the related Mortgaged Property;

(ccc)   <u>No Prior Offer.</u>  The Mortgage Loan has not previously been offered for sale;

(ddd)   <u>Georgia Fair Lending Act.</u>  There is no Mortgage Loan that was originated on or after October 1, 2002 and before March 7, 2003 which is secured by property located in the State of Georgia.  There is no Mortgage Loan that was originated on or after March 7, 2003 that is a "high cost home loan" as defined under the Georgia Fair Lending Act;

(eee)   <u>No Arbitration.</u>  No Mortgagor with respect to any Mortgage Loan originated on or after August 1, 2004 agreed to submit to arbitration to resolve any dispute arising out of or relating in any way to the mortgage loan transaction; and

(fff)   <u>Flood Service Contract.</u>  Each Mortgage Loan is covered by a paid in full, life of loan, flood service contract issued by First American Flood Data Services, and such contract is transferable.

Subsection 9.2   <u>Representations and Warranties Regarding the Seller.</u>

The Seller represents, warrants and covenants to the Purchaser that as of the date hereof and as of each Closing Date:

(a)   <u>Due Organization and Authority.</u>  The Seller is a New York corporation, validly existing, and in good standing under the laws of its jurisdiction of incorporation or formation and has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing in the states where the Mortgaged Property is located if the laws of such state require licensing or qualification in order to conduct business of the type conducted by the Seller.  The Seller has corporate power and authority to execute and deliver this Agreement and to perform its obligations hereunder; the execution, delivery and performance of this Agreement (including all instruments of transfer to be delivered pursuant to this Agreement) by the Seller and the consummation of the transactions contemplated hereby have been duly and validly authorized; this Agreement has been duly executed and delivered and constitutes the valid, legal, binding and enforceable obligation of the Seller, except as enforceability may be limited by (i) bankruptcy, insolvency, liquidation, receivership, moratorium, reorganization or other similar laws affecting the enforcement of the rights of creditors and (ii) general principles of equity, whether enforcement is sought in a proceeding in equity or at law.  All requisite corporate action has been taken by the Seller to make this Agreement valid and binding upon the Seller in accordance with its terms;

(b) <u>No Consent Required</u>. No consent, approval, authorization or order is required for the transactions contemplated by this Agreement from any court, governmental agency or body, or federal or state regulatory authority having jurisdiction over the Seller is required or, if required, such consent, approval, authorization or order has been or will, prior to the related Closing Date, be obtained;

(c) <u>Ordinary Course of Business</u>. The consummation of the transactions contemplated by this Agreement are in the ordinary course of business of the Seller, and the transfer, assignment and conveyance of the Mortgage Notes and the Mortgages by the Seller pursuant to this Agreement are not subject to the bulk transfer or any similar statutory provisions in effect in any applicable jurisdiction;

(d) <u>No Conflicts</u>. Neither the execution and delivery of this Agreement, the acquisition or origination of the Mortgage Loans by the Seller, the sale of the Mortgage Loans to the Purchaser, the consummation of the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of the Seller's charter or by-laws or any legal restriction or any agreement or instrument to which the Seller is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment or decree to which the Seller or its property is subject, or result in the creation or imposition of any lien, charge or encumbrance that would have an adverse effect upon any of its properties pursuant to the terms of any mortgage, contract, deed of trust or other instrument, or impair the ability of the Purchaser to realize on the Mortgage Loans, impair the value of the Mortgage Loans, or impair the ability of the Purchaser to realize the full amount of any insurance benefits accruing pursuant to this Agreement;

(e) <u>No Litigation Pending</u>. There is no action, suit, proceeding or investigation pending or threatened against the Seller, before any court, administrative agency or other tribunal asserting the invalidity of this Agreement, seeking to prevent the consummation of any of the transactions contemplated by this Agreement or which, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties or assets of the Seller, or in any material impairment of the right or ability of the Seller to carry on its business substantially as now conducted, or in any material liability on the part of the Seller, or which would draw into question the validity of this Agreement or the Mortgage Loans or of any action taken or to be taken in connection with the obligations of the Seller contemplated herein, or which would be likely to impair materially the ability of the Seller to perform under the terms of this Agreement;

(f) <u>Ability to Perform; Solvency</u>. The Seller does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement. The Seller is solvent and the sale of the Mortgage Loans will not cause the Seller to become insolvent. The sale of the Mortgage Loans is not undertaken with the intent to hinder, delay or defraud any of Seller's creditors;

(g) <u>Seller's Origination</u>. The Seller's origination and servicing of the Mortgage Loans have been legal, proper, prudent and customary and have conformed to the highest standards of the residential mortgage origination and servicing business;

(h)    Anti-Money Laundering Laws.    The Seller has complied with all applicable anti-money laundering laws and regulations, including without limitation the USA Patriot Act of 2001 (collectively, the "Anti-Money Laundering Laws"); the Seller has established an anti-money laundering compliance program as required by the Anti-Money Laundering Laws, has conducted the requisite due diligence in connection with the origination of each Mortgage Loan for purposes of the Anti-Money Laundering Laws, including with respect to the legitimacy of the applicable Mortgagor and the origin of the assets used by the said Mortgagor to purchase the property in question, and maintains, and will maintain, sufficient information to identify the applicable Mortgagor for purposes of the Anti-Money Laundering Laws;

(i)    Selection Process.    The Mortgage Loans were selected from among the outstanding one- to four-family mortgage loans in the Seller's portfolio at the related Closing Date as to which the criteria set forth in the related Purchase Price and Terms Letter are satisfied and the representations and warranties set forth in Subsection 9.1 could be made and such selection was not made in a manner so as to affect adversely the interests of the Purchaser;

(j)    Mortgage Loan Characteristics.    The characteristics of the related Mortgage Loan Package are as set forth on the description of the pool characteristics for the applicable Mortgage Loan Package delivered pursuant to Section 11 on the related Closing Date in the form attached as Exhibit B to each related Assignment and Conveyance Agreement;

(k)    No Untrue Information.    Neither this Agreement nor any information, statement, tape, diskette, report, form, or other document furnished or to be furnished pursuant to this Agreement or any Reconstitution Agreement or in connection with the transactions contemplated hereby (including any Securitization Transfer or Whole Loan Transfer) contains or will contain any untrue statement of material fact or omits or will omit to state a material fact necessary to make the statements contained herein or therein not misleading;

(l)    No Brokers.    The Seller has not dealt with any broker, investment banker, agent or other person that may be entitled to any commission or compensation in connection with the sale of the Mortgage Loans;

(m)    Sale Treatment.    The Seller expects to be advised by its independent certified public accountants that under generally accepted accounting principles the transfer of the Mortgage Loans will be treated as a sale on the books and records of the Seller and the Seller has determined that the disposition of the Mortgage Loans pursuant to this Agreement will be afforded sale treatment for tax and accounting purposes; and

(n)    Reasonable Purchase Price.    The consideration received by the Seller upon the sale of the Mortgage Loans under this Agreement constitutes fair consideration and reasonably equivalent value for the Mortgage Loans.

Subsection 9.3    Remedies for Breach of Representations and Warranties.

It is understood and agreed that the representations and warranties set forth in Subsections 9.1 and 9.2 shall survive the sale of the Mortgage Loans to the Purchaser and shall inure to the benefit of the Purchaser, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or failure to examine any

Mortgage File.  Upon discovery by either the Seller or the Purchaser of a breach of any of the foregoing representations and warranties, the party discovering such breach shall give prompt written notice to the other relevant parties.

Within sixty (60) days after written notice from the Purchaser to the Seller of any breach of a representation or warranty, which materially and adversely affects the value of the Mortgage Loans or the interest of the Purchaser therein (or which materially and adversely affects the value of the applicable Mortgage Loan or the interest of the Purchaser therein in the case of a representation and warranty relating to a particular Mortgage Loan), the Seller shall use its best efforts promptly to cure such breach in all material respects within such sixty (60) day period and, if such breach cannot be cured such sixty (60) day period, the Seller shall repurchase such Mortgage Loan or Mortgage Loans at the Repurchase Price.  However, the Seller may, at its option and assuming that Seller has a Qualified Substitute Mortgage Loan, rather than repurchase the Mortgage Loan as provided above, remove such Mortgage Loan and substitute in its place a Qualified Substitute Mortgage Loan or Qualified Substitute Mortgage Loans; *provided, however,* that any such substitution shall be effected not later than ninety (90) days after the related Closing Date.  If the Seller has no Qualified Substitute Mortgage Loan, it shall repurchase the deficient Mortgage Loan at the Repurchase Price.  Any repurchase of a Mortgage Loan pursuant to the foregoing provisions of this Subsection 9.3 shall occur on a date designated by the Purchaser, and acceptable to Seller, and shall be accomplished by direct remittance of the Repurchase Price to the Purchaser or its designee in accordance with the Purchaser's instructions.

At the time of repurchase of any deficient Mortgage Loan (or removal of any Deleted Mortgage Loan), the Purchaser and the Seller shall arrange for the reassignment of the repurchased Mortgage Loan (or Deleted Mortgage Loan) to the Seller or its designee and the delivery to the Seller of any documents held by the Purchaser relating to the repurchased Mortgage Loan (or Deleted Mortgage Loan).  In the event of a repurchase or substitution, the Seller shall, simultaneously with such reassignment, give written notice to the Purchaser that such repurchase or substitution has taken place, amend the Mortgage Loan Schedule to reflect the withdrawal of the Deleted Mortgage Loan from this Agreement, and, in the case of substitution, identify a Qualified Substitute Mortgage Loan and amend the related Mortgage Loan Schedule to reflect the addition of such Qualified Substitute Mortgage Loan to this Agreement.  In connection with any such substitution, the Seller shall be deemed to have made as to such Qualified Substitute Mortgage Loan the representations and warranties set forth in this Agreement except that all such representations and warranties set forth in this Agreement shall be deemed made as of the date of such substitution.  The Seller shall effect such substitution by delivering to the Purchaser or to such other party as the Purchaser may designate in writing for such Qualified Substitute Mortgage Loan the documents required by Subsection 6.3, with the Mortgage Note endorsed as required by Subsection 6.3.  The Seller shall cause the Servicer to remit directly to the Purchaser, or its designee in accordance with the Purchaser's instructions the Monthly Payment less any fee due the Servicer, if any, on such Qualified Substitute Mortgage Loan or Loans in the month following the date of such substitution.  Monthly Payments due with respect to Qualified Substitute Mortgage Loans in the month of substitution shall be retained by the Seller.  For the month of substitution, distributions to the Purchaser shall include the Monthly Payment due on any Deleted Mortgage Loan in the month of substitution, and the Seller shall thereafter be entitled to retain all amounts subsequently received by the Seller in respect of such

Deleted Mortgage Loan. The Seller shall give written notice to the Purchaser that such substitution has taken place and shall amend the related Mortgage Loan Schedule to reflect the removal of such Deleted Mortgage Loan from the terms of this Agreement and the substitution of the Qualified Substitute Mortgage Loan. Upon such substitution, each Qualified Substitute Mortgage Loan shall be subject to the terms of this Agreement in all respects, and the Seller shall be deemed to have made with respect to such Qualified Substitute Mortgage Loan, as of the date of substitution, the covenants, representations and warranties set forth in <u>Subsections 9.1</u> and <u>9.2</u>.

For any month in which the Seller substitutes one or more Qualified Substitute Mortgage Loans for one or more Deleted Mortgage Loans, the Seller shall determine the amount (if any) by which the aggregate principal balance of all such Qualified Substitute Mortgage Loans as of the date of substitution is less than the aggregate Stated Principal Balance of all such Deleted Mortgage Loans (after application of scheduled principal payments due in the month of substitution). The amount of such shortfall shall be distributed by the Seller directly to the Purchaser or its designee in accordance with the Purchaser's instructions within two (2) Business Days of such substitution.

In addition to such repurchase or substitution obligation, the Seller shall indemnify the Purchaser and its present and former directors, officers, employees and agents and any Successor Servicer and its present and former directors, officers, employees and agents and hold such parties harmless against any losses, damages, penalties, fines, forfeitures, legal fees and expenses and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of the Seller representations and warranties contained in this Agreement or any Reconstitution Agreement. It is understood and agreed that the obligations of the Seller set forth in this <u>Subsection 9.3</u> to cure, repurchase or substitute for a defective Mortgage Loan and to indemnify the Purchaser and Successor Servicer as provided in this <u>Subsection 9.3</u> and in <u>Subsection 13.1</u> constitute the sole remedies of the Purchaser and Successor Servicer respecting a breach of the foregoing representations and warranties. For purposes of this paragraph "Purchaser" shall mean the Person then acting as the Purchaser under this Agreement and any and all Persons who previously were "Purchasers" under this Agreement and "Successor Servicer" shall mean any Person designated as the Successor Servicer pursuant to this Agreement and any and all Persons who previously were "Successor Servicers" pursuant to this Agreement.

Subsection 9.4    <u>Repurchase of Mortgage Loans with First Payment Defaults</u>.

Unless otherwise provided in the Purchase Price and Terms Letter, if the related Mortgagor is delinquent with respect to the Mortgage Loan's first Monthly Payment either (i) after origination of such Mortgage Loan, or (ii) after the related Closing Date, the Seller, at the Purchaser's option, shall repurchase such Mortgage Loan from the Purchaser at a price equal to the Repurchase Price. The Seller shall repurchase such delinquent Mortgage Loan within thirty (30) days of such request.

Subsection 9.5    <u>Premium Recapture</u>.

Unless otherwise provided in the Purchase Price and Terms Letter, with respect to any Mortgage Loan that prepays in full on or prior to the related Closing Date or during the first

ninety (90) days following the related Closing Date, the Seller shall pay the Purchaser, within thirty (30) Business Days after such prepayment in full or repurchase, an amount equal to the excess of the Purchase Price Percentage for such Mortgage Loan over par, multiplied by the outstanding principal balance of such Mortgage Loan as of the related Cut-off Date.

SECTION 10. <u>Closing</u>.

The closing for the purchase and sale of each Mortgage Loan Package shall take place on the related Closing Date.  At the Purchaser's option, each Closing shall be either:  by telephone, confirmed by letter or wire as the parties shall agree, or conducted in person, at such place as the parties shall agree.

The closing for the Mortgage Loans to be purchased on each Closing Date shall be subject to each of the following conditions:

    (i)    all of the representations and warranties of the Seller under this Agreement (with respect to each Mortgage Loan for an interim period, as specified therein) shall be true and correct as of the related Closing Date and no event shall have occurred which, with notice or the passage of time, would constitute a default under this Agreement;

    (ii)    the Purchaser shall have received, or the Purchaser's attorneys shall have received in escrow, all Closing Documents as specified in <u>Section 11</u> of this Agreement, in such forms as are agreed upon and acceptable to the Purchaser, duly executed by all signatories other than the Purchaser as required pursuant to the terms hereof;

    (iii)    the Seller shall have delivered and released to the Purchaser all documents required pursuant to this Agreement; and

    (iv)    all other terms and conditions of this Agreement and the related Purchase Price and Terms Letter shall have been complied with.

Subject to the foregoing conditions, the Purchaser shall pay to the Seller on the related Closing Date the Purchase Price, plus accrued interest pursuant to <u>Section 4</u> of this Agreement, by wire transfer of immediately available funds to the account designated by the Seller.

SECTION 11. <u>Closing Documents</u>.

The Closing Documents for the Mortgage Loans to be purchased on each Closing Date shall consist of fully executed originals of the following documents:

    1.    this Agreement (to be executed and delivered only for the initial Closing Date);

2.      the related Mortgage Loan Schedule, segregated by Mortgage Loan Package (one copy to be attached to the related Assignment and Conveyance as the Mortgage Loan Schedule thereto);

3.      with respect to the initial Closing Date, an Officer's Certificate, in the form of <u>Exhibit C</u> hereto with respect to the Seller, including all attachments thereto; with respect to subsequent Closing Dates, an Officer's Certificate upon request of the Purchaser;

4.      with respect to the initial Closing Date, an Opinion of Counsel of the Seller (who may be an employee of the Seller), generally in the form of <u>Exhibit D</u> hereto ("<u>Opinion of Counsel of the Seller</u>"); with respect to subsequent Closing Dates, an Opinion of Counsel of the Seller upon request of the Purchaser;

5.      a Security Release Certification, in the form of <u>Exhibit E</u> or <u>F</u>, as applicable, hereto executed by any person, as requested by the Purchaser, if any of the Mortgage Loans have at any time been subject to any security interest, pledge or hypothecation for the benefit of such person;

6.      a certificate or other evidence of merger or change of name, signed or stamped by the applicable regulatory authority, if any of the Mortgage Loans were acquired by the Seller by merger or acquired or originated by the Seller while conducting business under a name other than its present name, if applicable;

7.      with respect to the initial Closing Date, the Underwriting Guidelines to be attached hereto as <u>Exhibit G</u> and with respect to each subsequent Closing Date, the Underwriting Guidelines to be attached to the related Purchase Price and Terms Letter;

8.      Assignment and Conveyance Agreement in the form of <u>Exhibit H</u> hereto, and all exhibits thereto;

9.      a MERS Report reflecting the Purchaser as Investor and no Person as Interim Funder for each MERS Designated Mortgage Loan.

10.     Purchase Price and Terms Letter in the form of <u>Exhibit I</u> hereto and all exhibits thereto.

The Seller shall bear the risk of loss of the Closing Documents until such time as they are received by the Purchaser or its attorneys.

SECTION 12. <u>Costs</u>.

The Purchaser shall pay any commissions due its salesmen and the legal fees and expenses of its attorneys and custodial fees. All other costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans including recording fees, fees for title

policy endorsements and continuations, fees for recording Assignments of Mortgage, MERS registration fees, and the Seller's attorney's fees, shall be paid by the Seller.

SECTION 13. The Seller.

Subsection 13.1 Additional Indemnification by the Seller; Third Party Claims.

(a)     The Seller shall indemnify any Purchaser and its present and former directors, officers, employees and agents and the Successor Servicer and its present and former directors, officers, employees and agents, and hold such parties harmless against any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and expenses (including legal fees and expenses incurred in connection with the enforcement of the Seller's indemnification obligation under this Subsection 13.1) and related costs, judgments, and any other costs, fees and expenses that such parties may sustain in any way related to the failure of the Seller to perform its duties and the Servicer to service the Mortgage Loans in strict compliance with the terms of this Agreement or any Reconstitution Agreement entered into pursuant to Section 14 or any breach or alleged breach of any of Seller's representations, warranties and covenants set forth in this Agreement.  For purposes of this clause "Purchaser" shall mean the Person then acting as the Purchaser under this Agreement and any and all Persons who previously were "Purchasers" under this Agreement and "Successor Servicer" shall mean any Person designated as the Successor Servicer pursuant to this Agreement and any and all Persons who previously were "Successor Servicers" pursuant to this Agreement.

(b)     Promptly after receipt by an indemnified party under this Subsection 13.1 of notice of the commencement of any action, such indemnified party will, if a claim in respect thereof is to be made against the indemnifying party under this Subsection 13.1, notify the indemnifying party in writing of the commencement thereof; but the omission so to notify the indemnifying party will not relieve the indemnifying party from any liability which it may have to any indemnified party under this Subsection 13.1.  In case any such action is brought against any indemnified party, the indemnifying party will be entitled to participate therein, with counsel reasonably satisfactory to such indemnified party; *provided, however,* if the indemnifying party elects to participate in any such action, the indemnified party shall control all decisions regarding such action (including, without limitation, all decisions with respect to litigation strategy and settlement), unless otherwise agreed in writing by the indemnified party.  The indemnified party agrees that it shall consult with, but not be bound by, the indemnifying party.

Subsection 13.2 Merger or Consolidation of the Seller.

The Seller will keep in full effect its existence, rights and franchises as a corporation under the laws of the state of its incorporation except as permitted herein, and will obtain and preserve its qualification to do business as a foreign corporation in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Agreement, or any of the Mortgage Loans and to perform its duties under this Agreement.

Any Person into which the Seller may be merged or consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Seller shall be a party, or any Person succeeding to the business of the Seller, shall be the successor of the Seller

hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding; provided, however, that the successor or surviving Person shall be an institution whose deposits are insured by FDIC or a company whose business is the origination and servicing of mortgage loans, unless otherwise consented to by the Purchaser, which consent shall not be unreasonably withheld, shall be qualified to service mortgage loans on behalf of Fannie Mae or Freddie Mac.

SECTION 14. <u>Cooperation of Seller with a Reconstitution</u>.

The Seller and the Purchaser agree that with respect to some or all of the Mortgage Loans, after the related Closing Date, on one or more dates (each, a "<u>Reconstitution Date</u>") at the Purchaser's sole option, the Purchaser may effect a sale (each, a "<u>Reconstitution</u>") of some or all of the Mortgage Loans then subject to this Agreement, without recourse, to:

(i)    Fannie Mae under its Cash Purchase Program or MBS Program (Special Servicing Option) (each, a "<u>Fannie Mae Transfer</u>"); or

(ii)   Freddie Mac (the "<u>Freddie Mac Transfer</u>"); or

(iii)  one or more third party purchasers in one or more Whole Loan Transfers; or

(iv)   one or more trusts or other entities to be formed as part of one or more Securitization Transfers.

The Seller agrees to execute in connection with any Agency Transfer, any and all reasonably acceptable pool purchase contracts, and/or agreements among the Purchaser, the Seller, Fannie Mae or Freddie Mac (as the case may be) and any servicer in connection with a Whole Loan Transfer, a seller's warranties and servicing agreement or a participation and servicing agreement in form and substance reasonably acceptable to the parties, and in connection with a Securitization Transfer a pooling and servicing agreement in form and substance reasonably acceptable to the parties (collectively, the agreements referred to herein are designated the "<u>Reconstitution Agreements</u>"), together with an opinion of counsel with respect to such Reconstitution Agreements.

With respect to each Whole Loan Transfer and each Securitization Transfer entered into by the Purchaser, the Seller agrees (1) to cooperate fully with the Purchaser and any prospective purchaser with respect to all reasonable requests and due diligence procedures; (2) to execute, deliver and perform all Reconstitution Agreements reasonably required by the Purchaser; (3) to restate the representations and warranties set forth in <u>Section 9.2</u> as of the Reconstitution Date; (4) to restate the representations and warranties set forth in <u>Section 9.1</u> as of the Reconstitution Date, modified to the extent necessary to accurately reflect the pool statistics of the Mortgage Loans as of the Reconstitution Date and any event or circumstances existing subsequent to the related Closing Date and (5) make the representations and warranties set forth in the related selling/servicing guide of the servicer or issuer, as the case may be, or such representations or warranties as may be required by any rating agency or prospective purchaser of the related securities or such Mortgage Loans in connection with such Reconstitution. The Seller shall provide to such servicer or issuer, as the case may be, and any other participants or

purchasers in such Reconstitution: (i) any and all information and appropriate verification of information which may be reasonably available to the Seller or its affiliates, whether through letters of its auditors and counsel or otherwise, as the Purchaser or any such other participant shall request; (ii) such additional representations, warranties, covenants, opinions of counsel, letters from auditors, and certificates of public officials or officers of the Seller or the Servicer as are reasonably believed necessary by the Purchaser or any such other participant; and (iii) to execute, deliver and satisfy all conditions set forth in any indemnity agreement required by the Purchaser or any such participant, including, without limitation, an Indemnification and Contribution Agreement in substantially the form attached hereto as <u>Exhibit B</u>. Moreover, the Seller agrees to cooperate with all reasonable requests made by the Purchaser to effect such Reconstitution Agreements. The Seller shall indemnify the Purchaser, each affiliate of the Purchaser participating in the Reconstitution and each Person who controls the Purchaser or such affiliate and their respective present and former directors, officers, employees and agents, and hold each of them harmless from and against any losses, damages, penalties, fines, forfeitures, legal fees and expenses and related costs, judgments, and any other costs, fees and expenses that each of them may sustain in any way related to any information provided by or on behalf of the Seller regarding the Seller, the Mortgage Loans or the Underwriting Guidelines set forth in any offering document prepared in connection with any Reconstitution. In addition, Purchaser shall indemnify Seller and its affiliates for any untrue statement of any material fact contained in other information contained in any disclosure document, or the omission to state therein a material fact required to be stated therein or necessary to make the statements therein, in the light of the circumstances in which they were made, not misleading. For purposes of the previous sentence, "Purchaser" shall mean the Person then acting as the Purchaser under this Agreement and any and all Persons who previously were "Purchasers" under this Agreement.

In the event the Purchaser has elected to have the Seller or the Servicer hold record title to the Mortgages, prior to the Reconstitution Date, the Seller shall prepare an assignment of mortgage in blank or to the prospective purchaser or trustee, as applicable, from the Seller or the Servicer, as applicable, acceptable to the prospective purchaser or trustee, as applicable, for each Mortgage Loan that is part of the Reconstitution and shall pay all preparation and recording costs associated therewith. In connection with the Reconstitution, the Seller shall execute or shall cause the Servicer to execute each assignment of mortgage, track such Assignments of Mortgage to ensure they have been recorded and deliver them as required by the prospective purchaser or trustee, as applicable, upon the Seller's receipt thereof. Additionally, the Seller shall prepare and execute or shall cause the Servicer to execute, at the direction of the Purchaser, any note endorsement in connection with any and all seller/servicer agreements.

SECTION 15. <u>Regulation AB</u>.

The Seller shall deliver to the Purchaser such information regarding the Seller or the Servicer (i) as may be required under Regulation AB under the Securities Act of 1933 or other applicable law or (ii) as is otherwise reasonably requested by the Purchaser. Without limiting the Seller's obligations under <u>Subsection 13.1</u>, the Seller shall indemnify the Purchaser and its affiliates for material misstatements or omissions contained (i) in any such information provided by the Seller or the Servicer and (ii) on any Mortgage Loan Schedule.

SECTION 16. Financial Statements.

The Seller understands that in connection with the Purchaser's marketing of the Mortgage Loans, the Purchaser shall make available to prospective purchasers audited financial statements of the Seller for the most recently completed three fiscal years respecting which such statements are available, as well as a consolidated statement of condition for North Fork Bancorporation, Inc., and a supplemental consolidating statement of condition of the Seller at the end of the last two fiscal years covered by such Statements of Condition.  The Seller shall also make available any comparable interim statements to the extent any such statements have been prepared by the Seller (and are available upon request to members or stockholders of the Seller or the public at large).  The Seller, if it has not already done so, agrees to furnish promptly to the Purchaser copies of the statements specified above.  The Seller shall also make available information on its servicing performance with respect to loans serviced for others, including delinquency ratios.

The Seller also agrees to allow reasonable access to a knowledgeable financial or accounting officer for the purpose of answering questions asked by any prospective purchaser regarding recent developments affecting the Seller or the financial statements of the Seller.

SECTION 17. Mandatory Delivery; Grant of Security Interest.

The sale and delivery on the related Closing Date of the Mortgage Loans described on the related Mortgage Loan Schedule is mandatory from and after the date of the execution of the related Purchase Price and Terms Letter, it being specifically understood and agreed that each Mortgage Loan is unique and identifiable on the date hereof and that an award of money damages would be insufficient to compensate the Purchaser for the losses and damages incurred by the Purchaser (including damages to prospective purchasers of the Mortgage Loans) in the event of the Seller's failure to deliver (i) each of the related Mortgage Loans or (ii) one or more Qualified Substitute Mortgage Loans or (iii) one or more Mortgage Loans otherwise acceptable to the Purchaser on or before the related Closing Date.  All rights and remedies of the Purchaser under this Agreement are distinct from, and cumulative with, any other rights or remedies under this Agreement or afforded by law or equity and all such rights and remedies may be exercised concurrently, independently or successively.  Such lien and security interest shall terminate upon the rejection of such Mortgage Loan by the Purchaser and the failure of the Purchaser to complete the purchase of such Mortgage Loan and the Seller's payment of the Repurchase Price with respect to such Mortgage Loan under the terms of this Agreement and the related Purchase Price and Terms Letter.

SECTION 18. Notices.

All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at the address as follows:

(i)      if to the Purchaser:

Residential Funding Corporation
7501 Wisconsin Avenue, Suite 900
Bethesda, Maryland  20814-6528
Attention:  Sophie Schubert, Senior Credit Officer
Tel.:  (301) 215-6209
Fax:  (301) 215-6288

with copies to:

Residential Funding Corporation
8400 Normandale Lake Boulevard, Suite 250
Minneapolis, MN 55437
Attention:  Dan Schroer, Transaction Manager
Tel.:  (952) 857-7485
Fax:  (952) 857 -7484
Email:  daniel.schroer@gmacrfc.com

and

Residential Funding Corporation
Master Servicing Division
2255 North Ontaro Street, Suite 400
Burbank, California 91504
Attention:  Senior Compliance Officer
Tel.:  (818) 260-1403
Fax:  (818) 260-1810

(ii)     if to the Seller:

GreenPoint Mortgage Funding, Inc.,
100 Wood Hollow Drive
Novato, CA  94945
Attention:  Susan Davia - Secondary Marketing Division
Tel.: (415) 878-5336
Fax:  (415) 878-4369
Email:  susan.davia@greenpoint.com

or such other address as may hereafter be furnished to the other party by like notice.  Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

SECTION 19. <u>Severability Clause</u>.

Any part, provision representation or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be

ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction.  To the extent permitted by applicable law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof.  If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good-faith, to develop a structure the economic effect of which is nearly as possible the same as the economic effect of this Agreement without regard to such invalidity.

SECTION 20. Counterparts.

This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

SECTION 21. Intention of the Parties.

It is the intention of the parties that the Purchaser is purchasing, and the Seller is selling the Mortgage Loans and not a debt instrument of the Seller or another security. Accordingly, the parties hereto each intend to treat the transaction for federal income tax purposes as a sale by the Seller, and a purchase by the Purchaser, of the Mortgage Loans. Moreover, the arrangement under which the Mortgage Loans are held shall be consistent with classification of such arrangement as a grantor trust in the event it is not found to represent direct ownership of the Mortgage Loans.  The Purchaser shall have the right to review the Mortgage Loans and the related Mortgage Loan Files to determine the characteristics of the Mortgage Loans which shall affect the federal income tax consequences of owning the Mortgage Loans and the Seller shall cooperate with all reasonable requests made by the Purchaser in the course of such review.

SECTION 22. Successors and Assigns; Assignment of Purchase Agreement.

This Agreement shall bind and inure to the benefit of and be enforceable by the Seller and the Purchaser and the respective permitted successors and assigns of the Seller and the successors and assigns of the Purchaser.  This Agreement shall not be assigned, pledged or hypothecated by the Seller to a third party without the prior written consent of the Purchaser, which consent may be withheld by the Purchaser in its sole discretion.  This Agreement may be assigned, pledged or hypothecated by the Purchaser in whole or in part, and with respect to one or more of the Mortgage Loans, without the consent of the Seller.  There shall be no limitation on the number of assignments or transfers allowable by the Purchaser with respect to the Mortgage Loans and this Agreement.  In the event the Purchaser assigns this Agreement, and the assignee assumes any of the Purchaser's obligations hereunder, the Seller acknowledges and agrees to look solely to such assignee, and not to the Purchaser, for performance of the obligations so assumed and the Purchaser shall be relieved from any liability to the Seller with respect thereto.

SECTION 23. <u>Waivers</u>.

No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

SECTION 24. <u>Exhibits</u>.

The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

SECTION 25. <u>General Interpretive Principles</u>.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a)     the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(b)     accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c)     references herein to "Articles," "Sections," "Subsections," "Paragraphs," and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(d)     reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(e)     the words "herein," "hereof," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

(f)     the terms "include" and "including" shall mean without limitation by reason of enumeration.

SECTION 26. <u>Reproduction of Documents</u>.

This Agreement and all documents relating thereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any

enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

SECTION 27. <u>Further Agreements</u>.

The Seller and the Purchaser each agree to execute and deliver to the other such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of this Agreement.

SECTION 28. <u>Recordation of Assignments of Mortgage</u>.

To the extent permitted by applicable law, each of the Assignments of Mortgage is subject to recordation in all appropriate public offices for real property records in all the counties or their comparable jurisdictions in which any or all of the Mortgaged Properties are situated, and in any other appropriate public recording office or elsewhere, such recordation to be effected at the Seller's expense in the event recordation is either necessary under applicable law or requested by the Purchaser at its sole option.

SECTION 29. <u>No Solicitation</u>.

From and after the related Closing Date, the Seller agrees that it will not take any action or permit or cause any action to be taken by any of its agents or affiliates, or by any independent contractors on the Seller's behalf, to personally, by telephone or mail (via electronic means or otherwise), solicit a Mortgagor under any Mortgage Loan for the purpose of refinancing a Mortgage Loan, in whole or in part, without the prior written consent of the Purchaser.  Notwithstanding the foregoing, it is understood and agreed that the Seller, or any of its respective affiliates:

    (i)    may advertise its availability for handling refinancings of mortgages in its portfolio, including the promotion of terms it has available for such refinancings, through the sending of letters or promotional material, so long as it does not specifically target Mortgagors and so long as such promotional material either is sent to the mortgagors for all of the mortgages in the servicing portfolio of the Seller and any of its affiliates (those it owns as well as those serviced for others); and

    (ii)    may provide pay-off information and otherwise cooperate with individual mortgagors who contact it about prepaying their mortgages by advising them of refinancing terms and streamlined origination arrangements that are available.

Promotions undertaken by the Seller or by any affiliate of the Seller which are directed to the general public at large (including, without limitation, mass mailing based on commercially acquired mailing lists, newspaper, radio and television advertisements), shall not constitute solicitation under this <u>Section 28</u>.

SECTION 30. <u>Waiver of Trial by Jury</u>.

THE SELLER AND THE PURCHASER EACH KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

SECTION 31. <u>Governing Law Jurisdiction; Consent to Service of Process</u>.  THIS AGREEMENT SHALL BE DEEMED IN EFFECT WHEN A FULLY EXECUTED COUNTERPART THEREOF IS RECEIVED BY THE PURCHASER IN THE STATE OF NEW YORK AND SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK.  THIS AGREEMENT SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO ITS CHOICE OF LAW RULES AND PRINCIPLES.  EACH OF THE PURCHASER AND THE SELLER IRREVOCABLY (I) SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA FOR THE SOUTHERN DISTRICT OF NEW YORK FOR THE PURPOSE OF ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT; (II) WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE DEFENSE OF AN INCONVENIENT FORUM IN ANY ACTION OR PROCEEDING IN ANY SUCH COURT; (III) AGREES THAT A FINAL JUDGMENT IN ANY ACTION OR PROCEEDING IN ANY SUCH COURT SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN ANY OTHER JURISDICTION BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW; AND (IV) CONSENTS TO SERVICE OF PROCESS UPON IT BY MAILING A COPY THEREOF BY CERTIFIED MAIL ADDRESSED TO IT AS PROVIDED FOR NOTICES HEREUNDER.

SECTION 32. <u>Amendment</u>.  This Agreement may be amended from time to time by the Purchaser and the Seller by written agreement signed by the parties hereto.

SECTION 33. <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement and understanding relating to the subject matter hereof between the parties hereto and any prior oral or written agreements between them shall be deemed to have merged herewith.

[Signature Page Follows]

IN WITNESS WHEREOF, the Seller and the Purchaser have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

RESIDENTIAL FUNDING CORPORATION

By: _Debra A. Casale_
    Name: Debra A. Casale
    Title: Managing Director

GREENPOINT MORTGAGE FUNDING, INC.

By:_____
    Name:
    Title:

IN WITNESS WHEREOF, the Seller and the Purchaser have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

RESIDENTIAL FUNDING CORPORATION

By:_____

    Name:

    Title:

GREENPOINT MORTGAGE FUNDING, INC.

By:_____

    Name:  SUSAN DAVIA

    Title:  V.P.

EXHIBIT A-1

MORTGAGE LOAN DOCUMENTS

   With respect to each Mortgage Loan, the Mortgage Loan Documents shall include each of the following items, which shall be available for inspection by the Purchaser and any prospective Purchaser, and which shall be delivered to the Purchaser, or to such other Person as the Purchaser shall designate in writing, pursuant to <u>Section 6</u> of the Mortgage Loan Purchase and Warranties Agreement to which this Exhibit is attached (the "<u>Agreement</u>"):

   (a) the original Mortgage Note bearing all intervening endorsements, endorsed "Pay to the order of _____, without recourse" and signed in the name of the last endorsee (the "<u>Last Endorsee</u>") by an authorized officer.  To the extent that there is no room on the face of the Mortgage Notes for endorsements, the endorsement may be contained on an allonge, if state law so allows and the Purchaser is so advised by the Seller that state law so allows.  If the Mortgage Loan was acquired by the Seller in a merger, the endorsement must be by "[Last Endorsee], successor by merger to [name of predecessor]".  If the Mortgage Loan was acquired or originated by the Last Endorsee while doing business under another name, the endorsement must be by "[Last Endorsee], formerly known as [previous name]";

   (b) the original of any guarantee executed in connection with the Mortgage Note;

   (c) with respect to Mortgage Loans that are not Co-op Loans, the original Mortgage with evidence of recording thereon.  With respect to any Co-op Loan, an original or copy of the Security Agreement.  If in connection with any Mortgage Loan, the Seller cannot deliver or cause to be delivered the original Mortgage with evidence of recording thereon on or prior to the Closing Date because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage has been lost or because such public recording office retains the original recorded Mortgage, the Seller shall deliver or cause to be delivered to the Purchaser, a photocopy of such Mortgage, together with (i) in the case of a delay caused by the public recording office, an Officer's Certificate of the Seller (or certified by the title company, escrow agent, or closing attorney) stating that such Mortgage has been dispatched to the appropriate public recording office for recordation and that the original recorded Mortgage or a copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage will be promptly delivered to the Purchaser upon receipt thereof by the Seller; or (ii) in the case of a Mortgage where a public recording office retains the original recorded Mortgage or in the case where a Mortgage is lost after recordation in a public recording office, a copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage;

   (d) the originals of all assumption, modification, consolidation or extension agreements, if any, with evidence of recording thereon;

   (e) with respect to Mortgage Loans that are not Co-op Loans, the original Assignment of Mortgage for each Mortgage Loan, in form and substance acceptable for recording (except with respect to MERS Designated Loans).  The Assignment of Mortgage must

be duly recorded only if recordation is either necessary under applicable law or commonly required by private institutional mortgage investors in the area where the Mortgaged Property is located or on direction of the Purchaser as provided in this Agreement.  If the Assignment of Mortgage is to be recorded, the Mortgage shall be assigned to the Purchaser.  If the Assignment of Mortgage is not to be recorded, the Assignment of Mortgage shall be delivered in blank.  If the Mortgage Loan was acquired by the Seller in a merger, the Assignment of Mortgage must be made by "[Seller], successor by merger to [name of predecessor]".  If the Mortgage Loan was acquired or originated by the Seller while doing business under another name, the Assignment of Mortgage must be by "[Seller], formerly known as [previous name]";

(f)      with respect to Mortgage Loans that are not Co-op Loans, the originals of all intervening assignments of mortgage (if any) evidencing a complete chain of assignment from the Seller to the Last Endorsee (or, in the case of a MERS Designated Loan, MERS) with evidence of recording thereon, or if any such intervening assignment has not been returned from the applicable recording office or has been lost or if such public recording office retains the original recorded assignments of mortgage, the Seller shall deliver or cause to be delivered to the Purchaser, a photocopy of such intervening assignment, together with (i) in the case of a delay caused by the public recording office, an Officer's Certificate of the Seller (or certified by the title company, escrow agent, or closing attorney) stating that such intervening assignment of mortgage has been dispatched to the appropriate public recording office for recordation and that such original recorded intervening assignment of mortgage or a copy of such intervening assignment of mortgage certified by the appropriate public recording office to be a true and complete copy of the original recorded intervening assignment of mortgage will be promptly delivered to the Purchaser upon receipt thereof by the Seller; or (ii) in the case of an intervening assignment where a public recording office retains the original recorded intervening assignment or in the case where an intervening assignment is lost after recordation in a public recording office, a copy of such intervening assignment certified by such public recording office to be a true and complete copy of the original recorded intervening assignment;

(g)      with respect to Mortgage Loans that are not Co-op Loans, the original mortgagee policy of title insurance or, in the event such original title policy is unavailable on the Closing Date, a certified true copy of the related policy commitment for title certified to be true and complete by the title insurance company shall be delivered on the Closing date with the original mortgage policy to be delivered within 120 days of the Closing Date;

(h)      the original or, if unavailable, a copy of any security agreement, chattel mortgage or equivalent document executed in connection with the Mortgage;

(i)      with respect to any Co-op Loan:  (i) a copy of the Co-op Lease and the assignment of such Co-op Lease, with all intervening assignments showing a complete chain of title and an assignment thereof by Seller; (ii) the stock certificate together with an undated stock power relating to such stock certificate executed in blank; (iii) the recognition agreement of the interests of the Mortgagee with respect to the Co-op Loan by the residential cooperative housing corporation, the stock of which was pledged by the related Mortgagor to the originator of such Co-op Loan; and (iv) copies of the financial statement filed by the originator as secured party and, if applicable, a filed UCC-3 assignment of the subject security interest showing a complete

chain of title, together with an executed UCC-3 assignment of such security interest by the Seller in a form sufficient for filing; and

(j)     if any of the above documents has been executed by a person holding a power of attorney, an original or photocopy of such power certified by the Seller to be a true and correct copy of the original.

EXHIBIT A-2

CONTENTS OF EACH MORTGAGE FILE

With respect to each Mortgage Loan, the Mortgage File shall include each of the following items, unless otherwise disclosed to the Purchaser on the data tape, which shall be available for inspection by the Purchaser and which shall be retained by the Servicer or delivered to the Purchaser:

(a)　　Copies of the Mortgage Loan Documents.

(b)　　Residential loan application.

(c)　　Mortgage Loan closing statement.

(d)　　Verification of employment and income, if required.

(e)　　Verification of acceptable evidence of source and amount of downpayment.

(f)　　Credit report on Mortgagor, in a form acceptable to either Fannie Mae or Freddie Mac.

(g)　　Residential appraisal report.

(h)　　Photograph of the Mortgaged Property and photographs of comparable properties.

(i)　　Survey of the Mortgaged Property, unless a survey is not required by the title insurer.

(j)　　Copy of each instrument necessary to complete identification of any exception set forth in the exception schedule in the title policy, i.e., map or plat, restrictions, easements, home owner association declarations, etc.

(k)　　Copies of all required disclosure statements.

(l)　　If applicable, termite report, structural engineer's report, water potability and septic certification.

(m)　　Sales Contract, if applicable.

(n)　　Copy of the owner's title insurance policy or attorney's opinion of title and abstract of title, as applicable.

(o)　　Evidence of electronic notation of the hazard insurance policy, and, if required by law, evidence of the flood insurance policy.

EXHIBIT B

FORM OF INDEMNIFICATION AND CONTRIBUTION AGREEMENT

This INDEMNIFICATION AND CONTRIBUTION AGREEMENT ("<u>Agreement</u>"), dated as of [_____], 200_, among [_____] (the "<u>Depositor</u>"), a [_____] corporation (the "<u>Depositor</u>"), Residential Funding Corporation, a Delaware corporation ("<u>RFC</u>") and GreenPoint Mortgage Funding, Inc., a New York corporation (the "<u>Seller</u>").

<u>W I T N E S S E T H</u>:

WHEREAS, the Depositor is acting as depositor and registrant with respect to the Prospectus, dated [_____], and the Prospectus Supplement to the Prospectus, [_____] (the "<u>Prospectus Supplement</u>"), relating to [_____] Certificates (the "<u>Certificates</u>") to be issued pursuant to a Pooling and Servicing Agreement, dated as of [_____] (the "<u>P&S</u>"), among the Depositor, as depositor, [_____], as servicer (the "<u>Servicer</u>"), and [_____], as trustee (the "<u>Trustee</u>");

WHEREAS, as an inducement to the Depositor to enter into the P&S, and [_____] (the "<u>Underwriter[s]</u>") to enter into the Underwriting Agreement, dated [_____] (the "<u>Underwriting Agreement</u>") between the Depositor and the Underwriter[s], and [_____] (the "<u>Initial Purchaser[s]</u>") to enter into the Certificate Purchase Agreement, dated [_____] (the "<u>Certificate Purchase Agreement</u>") between the Depositor and the Initial Purchaser[s], Seller has agreed to provide for indemnification and contribution on the terms and conditions hereinafter set forth;

WHEREAS, RFC purchased from Seller certain of the Mortgage Loans underlying the Certificates (the "<u>Mortgage Loans</u>") pursuant to a Mortgage Loan Purchase and Warranties Servicing Agreement, dated as of December 16, 2005 (the "<u>Purchase Agreement</u>"), by and between RFC and Seller; and

WHEREAS, pursuant to Section 14 of the Purchase Agreement, the Seller has agreed to indemnify the Depositor, RFC, the Underwriter[s], the Initial Purchaser[s] and their respective affiliates, present and former directors, officers, employees and agents for certain information.

NOW THEREFORE, in consideration of the agreements contained herein, and other valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Depositor, RFC and the Seller agree as follows:

1.      Indemnification and Contribution.

(a)     The Seller agrees to indemnify and hold harmless the Depositor, _____, the Underwriter[s], the Initial Purchaser[s] and their respective affiliates and their respective present and former directors, officers, employees and agents and each person, if any, who controls the Depositor, _____, the Underwriter[s] , the Initial Purchaser[s] or such affiliate within the meaning of either Section 15 of the Securities Act of 1933, as amended (the "1933 Act"), or Section 20 of the Securities Exchange Act of 1934, as amended (the "1934 Act"), against any and all losses, claims, damages or liabilities, joint or several, to which they or any of them may become subject under the 1933 Act, the 1934 Act or other federal or state statutory law or regulation, at common law or otherwise, insofar as such losses, claims, damages or liabilities (or actions in respect thereof) arise out of or are based in whole or in part upon any untrue statement or alleged untrue statement of a material fact contained in the Prospectus Supplement, the Offering Circular or in the Comp Materials or any omission or alleged omission to state in the Prospectus Supplement, the Offering Circular or in the Comp Materials a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances in which they were made, not misleading, or any such untrue statement or omission or alleged untrue statement or alleged omission made in any amendment of or supplement to the Prospectus Supplement, the Offering Circular or the Comp Materials and agrees to reimburse the Depositor, RFC, the Underwriter[s], the Initial Purchaser[s] or such affiliates and each such officer, director, employee, agent and controlling person promptly upon demand for any legal or other expenses reasonably incurred by any of them in connection with investigating or defending or preparing to defend against any such loss, claim, damage, liability or action as such expenses are incurred; *provided*, *however*, that Seller shall be liable in any such case only to the extent that any such loss, claim, damage, liability or action arises out of, or is based upon, any untrue statement or alleged untrue statement or omission or alleged omission made in reliance upon and in conformity with the Seller Information.  The foregoing indemnity agreement is in addition to any liability which Seller may otherwise have to the Depositor, RFC, the Underwriter[s], the Initial Purchaser[s] their affiliates or any such director, officer, employee, agent or controlling person of the Depositor, RFC, the Underwriter[s], the Initial Purchaser[s] or their respective affiliates.

As used herein:

"Seller Information" means any information relating to Seller, the Mortgage Loans and/or the underwriting guidelines relating to the Mortgage Loans set forth in the Prospectus Supplement, the Offering Circular or the Comp Materials.

The terms "Collateral Term Sheet" and "Structural Term Sheet" shall have the respective meanings assigned to them in the February 13, 1995 letter (the "PSA Letter") of Cleary, Gottlieb, Steen & Hamilton on behalf of the Public Securities Association (which letter, and the SEC staff's response thereto, were publicly available February 17, 1995).  The term "Collateral Term Sheet" as used herein includes any subsequent Collateral Term Sheet that

reflects a substantive change in the information presented. The term "<u>Computational Materials</u>" has the meaning assigned to it in the May 17, 1994 letter (the "<u>Kidder letter</u>" and, together with the PSA Letter, the "<u>No-Action Letters</u>") of Brown & Wood on behalf of Kidder, Peabody & Co., Inc. (which letter, and the SEC staff's response thereto, were publicly available May 20, 1994). The term "<u>Comp Materials</u>" as used herein means collectively Collateral Term Sheets, Structural Term Sheet and Computational Materials relating to the Certificates or the transaction contemplated by the Prospectus Supplement.

"<u>Offering Circular</u>" means the offering circular, dated [_____] relating to the private offering of the [_____] Certificates.

(b)     Promptly after receipt by any indemnified party under this <u>Section 1</u> of notice of any claim or the commencement of any action, such indemnified party shall, if a claim in respect thereof is to be made against any indemnifying party under this <u>Section 1</u>, notify the indemnifying party in writing of the claim or the commencement of that action; *provided*, *however*, that the failure to notify an indemnifying party shall not relieve it from any liability which it may have under this <u>Section 1</u>; and *provided*, *further*, *however*, that the failure to notify any indemnifying party shall not relieve it from any liability which it may have to any indemnified party otherwise than under this <u>Section 1</u>.

(c)     If the indemnification provided for in this <u>Section 1</u> is unavailable to an indemnified party, then the indemnifying party, in lieu of indemnifying such indemnified party, shall contribute to the amount paid or payable by such indemnified party as a result of such losses, claims, damages or liabilities, in such proportion as is appropriate to reflect the relative fault of the indemnifying party and the indemnified party, respectively, in connection with the statements or omissions that result in such losses, claims, damages or liabilities, as well as any other relevant equitable considerations. The relative fault of the indemnified party and indemnifying party shall be determined by reference to, among other things, whether the untrue or alleged untrue statement of a material fact or the omission or alleged omission to state a material fact relates to information supplied by such parties and their relative knowledge, access to information and opportunity to correct or prevent such statement or omission and any other equitable considerations.

(d)     The indemnity and contribution agreements contained in this <u>Section 1</u> and the representations and warranties set forth in <u>Section 2</u> shall remain operative and in full force and effect regardless of (i) any termination of this Agreement, (ii) any investigation made by the Depositor, RFC, the Underwriter[s], the Initial Purchaser[s] their respective affiliates, directors, officers, employees or agents or any person controlling the Depositor, RFC, the Underwriter[s], the Initial Purchaser[s] or any such affiliate, and (iii) acceptance of and payment for any of the Offered Certificates or the Private Certificates.

2.     <u>Representations and Warranties</u>. Seller represents and warrants that:

(i)     Seller is validly existing and in good standing under the laws of its jurisdiction of formation or incorporation, as applicable, and has full power and authority to own its assets and to transact the business in which it is currently engaged. Seller is duly qualified to do business and is in good standing in each jurisdiction in which the

character of the business transacted by it or any properties owned or leased by it requires such qualification and in which the failure so to qualify would have a material adverse effect on the business, properties, assets or condition (financial or otherwise) of Seller;

(ii)     Seller is not required to obtain the consent of any other person or any consent, license, approval or authorization from, or registration or declaration with, any governmental authority, bureau or agency in connection with the execution, delivery, performance, validity or enforceability of this Agreement;

(iii)     the execution, delivery and performance of this Agreement by Seller will not violate any provision of any existing law or regulation or any order decree of any court applicable to Seller or any provision of the charter or bylaws of Seller, or constitute a material breach of any mortgage, indenture, contract or other agreement to which Seller is a party or by which it may be bound;

(iv)     (a) no proceeding of or before any court, tribunal or governmental body is currently pending or, (b) to the knowledge of Seller, threatened against Seller or any of its properties or with respect to this Agreement or the Offered Certificates, in either case, which would have a material adverse effect on the business, properties, assets or condition (financial or otherwise) of Seller;

(v)     Seller has full power and authority to make, execute, deliver and perform this Agreement and all of the transactions contemplated hereunder, and has taken all necessary corporate action to authorize the execution, delivery and performance of this Agreement.  When executed and delivered, this Agreement will constitute the legal, valid and binding obligation of each of Seller enforceable in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally, by the availability of equitable remedies, and by limitations of public policy under applicable securities law as to rights of indemnity and contribution thereunder; and

(vi)     this Agreement has been duly executed and delivered by Seller.

3.     Notices.  All communications hereunder will be in writing and effective only on receipt, and, if sent to Seller, will be mailed, delivered or faxed or emailed and confirmed by mail GreenPoint Mortgage Funding, Inc., 100 Wood Hollow Drive Novato, California 94945, Attention: [_____]; if sent to RFC, will be mailed, delivered or faxed or emailed and confirmed by mail to _____, _____, Attention: _____, Fax: _____, Email: _____.com, with copies to (i) _____, _____, _____, Fax  [_____],  Email:  _____.com,  and  (ii)  _____, _____,  _____,  Fax  [_____],  Email: _____.com; if to the Depositor, will be mailed, delivered or telegraphed and confirmed to [_____]; or if to the Underwriter[s], will be mailed, delivered or telegraphed and confirmed to [_____]; or if to the Initial Purchaser[s], will be mailed, delivered or telegraphed and confirmed to [_____].

      4.    <u>Miscellaneous</u>.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York without giving effect to the conflict of laws provisions thereof.  This Agreement shall inure to the benefit of and be binding upon the parties hereto and their successors and assigns and the controlling persons referred to herein, and no other person shall have any right or obligation hereunder.  Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.  This Agreement may be executed in counterparts, each of which when so executed and delivered shall be considered an original, and all such counterparts shall constitute one and the same instrument.  Capitalized terms used but not defined herein shall have the meanings provided in the P&S.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers hereunto duly authorized, this __th day of [_____].

[DEPOSITOR]

By:_____
    Name:
    Title:

RESIDENTIAL FUNDING CORPORATION

By:_____
    Name:
    Title:

GREENPOINT MORTGAGE FUNDING, INC.

By:_____
    Name:
    Title:

EXHIBIT C

FORM OF SELLER'S OFFICER'S CERTIFICATE

I, _____, hereby certify that I am the duly elected [Vice] President of GreenPoint Mortgage Funding, Inc., a corporation organized under the laws of the state of New York (the "Company") and further as follows:

1.      Attached hereto as Exhibit 1 is a true, correct and complete copy of the charter of the Company which is in full force and effect on the date hereof and which has been in effect without amendment, waiver, rescission or modification since _____.

2.      Attached hereto as Exhibit 2 is a true, correct and complete copy of the bylaws of the Company which are in effect on the date hereof and which have been in effect without amendment, waiver, rescission or modification since _____.

3.      Attached hereto as Exhibit 3 is an original certificate of good standing of the Company issued within ten days of the date hereof, and no event has occurred since the date thereof which would impair such standing.

4.      Attached hereto as Exhibit 4 is a true, correct and complete copy of the corporate resolutions of the Board of Directors of the Company authorizing the Company to execute and deliver the Mortgage Loan Purchase and Warranties Agreement, dated as of December 16, 2005 (the "Purchase Agreement"), by and between Residential Funding Corporation (the "Purchaser") and the Company, [and to endorse the Mortgage Notes and execute the Assignments of Mortgages by original [or facsimile] signature], and such resolutions are in effect on the date hereof and have been in effect without amendment, waiver, rescission or modification since _____.

5.      Either (i) no consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Company of or compliance by the Company with the Purchase Agreement, the sale of the mortgage loans or the consummation of the transactions contemplated by the agreements; or (ii) any required consent, approval, authorization or order has been obtained by the Company.

6.      Neither the consummation of the transactions contemplated by, nor the fulfillment of the terms of the Purchase Agreement conflicts or will conflict with or results or will result in a breach of or constitutes or will constitute a default under the charter or by-laws of the Company, the terms of any indenture or other agreement or instrument to which the Company is a party or by which it is bound or to which it is subject, or any statute or order, rule, regulations, writ, injunction or decree of any court, governmental authority or regulatory body to which the Company is subject or by which it is bound.

7.      To the best of my knowledge, there is no action, suit, proceeding or investigation pending or threatened against the Company which, in my judgment, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties or assets of the Company or in any material impairment of the right or ability of the Company to carry on its business substantially as now conducted or in any material liability on the part of the Company or which would draw into question the validity of the Purchase Agreement, or the mortgage loans or of any action taken or to be taken in connection with the transactions contemplated hereby, or which would be likely to impair materially the ability of the Company to perform under the terms of the Purchase Agreement.

8.      Each person listed on Exhibit 5 attached hereto who, as an officer or representative of the Company, signed (a) the Purchase Agreement, and (b) any other document delivered or on the date hereof in connection with any purchase described in the agreements set forth above was, at the respective times of such signing and delivery, and is now, a duly elected or appointed, qualified and acting officer or representative of the Company, who holds the office set forth opposite his or her name on Exhibit 5, and the signatures of such persons appearing on such documents are their genuine signatures.

9.      The Company is duly authorized to engage in the transactions described and contemplated in the Purchase Agreement.

IN WITNESS WHEREOF, I have hereunto signed my name and affixed the seal of the Company.

Dated: _____   By: _____
                                             Name:
[Seal]                                       Title:  [Vice] President

I, _____, an [Assistant] Secretary of GreenPoint Mortgage Funding, Inc., hereby certify that _____ is the duly elected, qualified and acting [Vice] President of the Company and that the signature appearing above is [her] [his] genuine signature.

IN WITNESS WHEREOF, I have hereunto signed my name.

Dated: _____   By: _____
                                             Name:
[Seal]                                       Title:  [Assistant] Secretary

EXHIBIT 5 to
Company's Officer's Certificate

<u>NAME</u>                 <u>TITLE</u>                 <u>SIGNATURE</u>

_____     _____     _____

_____     _____     _____

_____     _____     _____

_____     _____     _____

_____     _____     _____

_____     _____     _____

_____     _____     _____

EXHIBIT D

FORM OF OPINION OF COUNSEL TO THE SELLER

_____2005

Residential Funding Corporation
8400 Normandale Lake Blvd., Suite 250
Minneapolis, MN 55437

Re:   Mortgage Loan Purchase and Warranties Agreement

Ladies and Gentlemen:

I have acted as counsel to GreenPoint Mortgage Funding, Inc., a New York corporation (the "Company"), in connection with certain matters described in the Mortgage Loan Purchase and Warranties Agreement dated as of December 16, 2005. In connection with rendering this opinion letter, I, or attorneys working under my direction have examined, among other things, originals, certified copies or copies otherwise identified as being true copies of the following:

A.   A signed copy of the Mortgage Loan Purchase and Warranties Agreement and the related documents to be executed concurrently therewith (the "Agreements");

B.   A certified copy of the Company's Certificate of Incorporation

C.   The Company's By-Laws;

D.   Resolutions adopted by the Board of Directors of the Company; and

E.   A Certificate of Good Standing for the Company issued by the Secretary of State for the State of New York dated December __, 2005; and

F.   A Certificate of Good Standing for the Company issued by the Secretary of State for the State of California dated December __, 2005.

For the purpose of rendering this opinion, I have made such documentary, factual and legal examinations as I deemed necessary under the circumstances. As to factual matters, I have relied upon statements, certificates and other assurances of public officials and of officers and other representatives of the Company, and upon such other certificates as I deemed appropriate, which factual matters have not been independently established or verified by me. I have also assumed, among other things, the genuineness of all signatures, the legal capacity of all natural persons, the authenticity of all documents submitted to me as originals, and the conformity to original documents of all documents submitted to me as copies and the authenticity of the originals of such copied documents.

On the basis of and subject to the foregoing examination, and in reliance thereon, and subject to the assumptions, qualifications, exceptions and limitations expressed herein, I am of the opinion that:

1.     The Company has been duly incorporated and is validly existing and in good standing under the laws of the State of New York with corporate power and authority to own its properties and conduct its business as presently conducted by it. The Company has the corporate power and authority to execute, deliver, and perform its obligations under the Agreements.

2.     The Agreements have been duly and validly authorized, executed and delivered by the Company.

3.     The Agreements constitute valid, legal and binding obligations of the Company, enforceable against the Company in accordance with their respective terms.

4.     No consent, approval, authorization or order of any United States federal or California government authority on the part of the Company is required for the execution, delivery and performance by the Company of the Agreements, except for those consents, approvals, authorizations or orders which previously have been obtained.

5.     The execution, delivery and performance of the Agreements will not, as of the Closing Date, result in a violation of the Certificate of Incorporation or By-Laws of the Company, or, to the best of my knowledge, result in a violation of, or constitute a default under (i) the terms of any indenture or other agreement or instrument known to me to which the Company is a party or by which it is bound, (ii) any California or United States federal statute or regulation applicable to the Company, or (iii) any order of any State of California or United States federal court, regulatory body, administrative agency or governmental body having jurisdiction over the Company, except in any such case where the violation or default would not have a material adverse effect on the Company or its ability to perform its obligations under the Agreements.

6.     There is no action, suit, proceeding or investigation pending or, to the best of my knowledge, threatened against the Company which, in my judgment, would draw into question the validity of the Agreements or which would be likely to impair materially the ability of the Company to perform under the terms of the Agreements.

The opinions above are subject to the following additional assumptions, exceptions, qualifications and limitations:

A.     The genuineness of the signatures of all persons (other than the Company) who have signed the Transaction Documents and all instruments, documents, certificates, applications, consents, filings and/or agreements related to the Transaction Documents.

B.     My opinion expressed in paragraph 3 above is subject to the qualifications that (i) the enforceability of the Agreements may be limited by the effect of laws relating to (1) bankruptcy, reorganization, insolvency, moratorium or other similar laws now or hereafter in effect relating to creditors' rights generally, including, without limitation, the effect of statutory or other laws regarding fraudulent conveyances or preferential transfers, and (2) general principles of equity upon the specific enforceability of any of the remedies, covenants or other provisions of the Agreements and upon the availability of injunctive relief or other equitable

remedies and the application of principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law) as such principles relate to, limit or affect the enforcement of creditors' rights generally and the discretion of the court before which any proceeding for such enforcement may be brought; and (ii) I express no opinion herein with respect to the validity, legality, binding effect or enforceability of provisions for indemnification in the Agreements to the extent such provisions may be held to be unenforceable as contrary to public policy.

C.      My opinion expressed in paragraph 5 above relating to violations of United States federal and California statutes, regulations or orders applicable to the Company is limited to such statutes, regulations or orders that in my experience are typically applicable to a transaction of the nature contemplated by the Agreements.

D.      All documents and instruments submitted to us as originals are authentic and complete; all instruments submitted as certified, conformed or photostatic copies are complete, true and correct copies of the originals thereof.

E.      The accuracy and completeness of all documents and records made available to us and that all statements of fact, representations and warranties contained in the Agreements (including, without limitation, all statements of fact set forth in each of the recitals, if any, to the Agreements), are true and correct.

F.      The legal competency of all natural persons who have signed the Agreements.

G.      That each of the parties to the Agreements other than the Company: (i) is duly organized, validly existing and in good standing under the laws of its state of organization; (b) has the power and authority to enter into each of the Agreements to which it is a party, and (c) has the requisite power and authority to perform its obligations under the Agreements.

H.      Except for the Agreements and all other documents being delivered in connection therewith, there are no documents or agreements between the Company and Purchaser (as defined in the Agreements) which would expand or otherwise modify the respective rights and obligations of the Company or Purchaser, as set forth in the Agreements, or which would have an effect on the opinions rendered herein.

I.      The compliance by the parties to the Agreements other than the Company with all laws, rules and regulations applicable to them that affect the transaction contemplated by those documents.

J.      That any actions to enforce the provisions of the Agreements will be taken within the period of time as prescribed by applicable law.

K.      That the Agreements are, under all applicable laws, valid and binding obligations of each of the parties thereto (other than the Company), enforceable in accordance with their respective terms.

       L.      That all parties to the Agreements have acted in good faith and without notice of any defense against any of the rights created by, or of any adverse claim to any security transferred pursuant to the Agreements.

       M.      That the Company and Purchaser will act in accordance with the terms and provisions of the Agreements.

       N.      That all decisional authorities, statutes, rules and regulations comprising the applicable law for which we are assuming responsibility are published or otherwise generally accessible, in each case in a manner generally available to lawyers practicing in the States of California and New York.

       O.      That no fraud or duress of any kind or nature exists with respect to any matters relevant to the transactions under the Agreements or the opinions expressed herein, and that the Agreements will be executed and delivered for valuable consideration actually received.

       P.      That the Agreements are governed by, and will be construed solely in accordance with, the laws of the State of California, notwithstanding (i) any choice of law or other provisions in the Agreements to the contrary, and (ii) any other applicable laws, as to which we express no opinion.  To the extent laws of any State other than the State of California govern the Agreements, we assume such laws are identical to the laws of the State of California without any investigation as to whether any difference exists between the laws of such forum and the State of California.

       I am admitted to practice in the State of California, and I render no opinion herein as to matters involving or governed by the laws of any jurisdiction other than the State of California and the federal laws of the United States of America.  I also express no opinion as to whether the laws of any particular jurisdiction apply, and no opinion to the extent that the laws of any jurisdiction other than those identified above are applicable to the Agreements.

Very truly yours,

_____
Irene D. Gilbert
General Counsel
GreenPoint Mortgage Funding, Inc.

EXHIBIT E

FORM OF SECURITY RELEASE CERTIFICATION

_____, 200__

_____
_____
_____
_____

Attention:  _____
            _____

Re:  <u>Notice of Sale and Release of Collateral</u>

Ladies and Gentlemen:

This letter serves as notice that GreenPoint Mortgage Funding, Inc. a corporation, organized pursuant to the laws of the State of New York (the "<u>Company</u>") has committed to sell to Residential Funding Corporation ("<u>Purchaser</u>") under a Mortgage Loan Purchase and Warranties Agreement, dated as of December 16, 2005, certain mortgage loans originated by the Company.  The Company warrants that the mortgage loans to be sold to Purchaser are in addition to and beyond any collateral required to secure advances made by you to the Company.

The Company acknowledges that the mortgage loans to be sold to Purchaser shall not be used as additional or substitute collateral for advances made by [_____].  Purchaser understands that the balance of the Company's mortgage loan portfolio may be used as collateral or additional collateral for advances made by [_____], and confirms that it has no interest therein.

Execution of this letter by [_____] shall constitute a full and complete release of any security interest, claim, or lien which [_____] may have against the mortgage loans to be sold to Purchaser.

Very truly yours,

_____

By:_____

Name: _____

Title: _____

Date: _____

Acknowledged and approved:

RESIDENTIAL FUNDING CORPORATION

By:_____

Name: _____

Title: _____

Date: _____

EXHIBIT F

FORM OF SECURITY RELEASE CERTIFICATION

I.  <u>Release of Security Interest</u>

       The financial institution named below hereby relinquishes any and all right, title, interest, lien or claim of any kind it may have in all mortgage loans described on the attached <u>Schedule A</u> (the "<u>Mortgage Loans</u>"), to be purchased by Residential Funding Corporation ("<u>Purchaser</u>") from the company named on the next page (the "<u>Company</u>") pursuant to that certain Mortgage Loan Purchase and Warranties Agreement, dated as of December 16, 2005, and certifies that all notes, mortgages, assignments and other documents in its possession relating to such Mortgage Loans have been delivered and released to the Company or its designees, as of the date and time of the sale of such Mortgage Loans to Purchaser.  Such release shall be effective automatically without any further action by any party upon payment in one or more installments, in immediately available funds, of $_____, in accordance with the wire instructions set forth below.

Name, Address and Wire Instructions of Financial Institution

_____
(Name)

_____
(Address)

_____

_____

_____

By:_____

## II.  Certification of Release

The Company named below hereby certifies to Residential Funding Corporation ("Purchaser") that, as of the date and time of the sale of the above-mentioned Mortgage Loans to Purchaser, the security interests in the Mortgage Loans released by the above-named financial institution comprise all security interests relating to or affecting any and all such Mortgage Loans.  The Company warrants that, as of such time, there are and will be no other security interests affecting any or all of such Mortgage Loans.

_____

By:_____
Title: _____
Date: _____

EXHIBIT G

UNDERWRITING GUIDELINES

EXHIBIT H

FORM OF ASSIGNMENT AND CONVEYANCE AGREEMENT

On this ___ day of _____, 200_, GreenPoint Mortgage Funding, Inc. ("Seller"), as the Seller under (i) that certain Purchase Price and Terms Letter, dated as of _____, 200__ (the "PPTA"), and (ii) that certain Mortgage Loan Purchase and Warranties Agreement, dated as of December 16, 2005 (the "Purchase Agreement"), does hereby sell, transfer, assign, set over and convey to Residential Funding Corporation ("Purchaser") as the Purchaser under the Agreements (as defined below) without recourse, but subject to the terms of the Agreements, all right, title and interest of, in and to the Mortgage Loans listed on the Mortgage Loan Schedule attached hereto as Exhibit A (the "Mortgage Loans"), together with the Mortgage Files and all rights and obligations arising under the documents contained therein.  Each Mortgage Loan subject to the Agreements was underwritten in accordance with, and conforms to, the Underwriting Guidelines attached hereto as Exhibit C.  Pursuant to Section 6 of the Purchase Agreement, the Seller has delivered to the Purchaser the documents for each Mortgage Loan to be purchased as set forth in the Purchase Agreement.  The contents of each Servicing File required to be retained by the Servicer to service the Mortgage Loans and thus not delivered to the Purchaser are and shall be held in trust by the Servicer in its capacity as Servicer for the benefit of the Purchaser as the owner thereof.  The Servicer's possession of any portion of the Servicing File is at the will of the Purchaser for the sole purpose of facilitating servicing of the related Mortgage Loan, and such retention and possession by the Servicer shall be in a custodial capacity only.  The ownership of each Mortgage Note, Mortgage and the contents of the Mortgage File and Servicing File is vested in the Purchaser and the ownership of all records and documents with respect to the related Mortgage Loan prepared by or which come into the possession of the Seller shall immediately vest in the Purchaser and shall be retained and maintained, in trust, by the Seller at the will of the Purchaser in a custodial capacity only.  The PPTA and the Purchase Agreement shall collectively be referred to as the "Agreements" herein.

The Mortgage Loan Package characteristics of the Mortgage Loans subject hereto are set forth on Exhibit B hereto.

In accordance with Section 6 of the Purchase Agreement, the Purchaser accepts the Mortgage Loans listed on Exhibit A attached hereto.  Notwithstanding the foregoing the Purchaser does not waive any rights or remedies it may have under the Agreements.

Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Purchase Agreement.

[SIGNATURE PAGE FOLLOWS]

GREENPOINT MORTGAGE FUNDING, INC.


By:_____
    Name:
    Title:


Accepted and Agreed:

_____


By:_____
    Name:
    Title:

EXHIBIT A
TO ASSIGNMENT AND CONVEYANCE AGREEMENT

<u>THE MORTGAGE LOANS</u>

EXHIBIT B
TO ASSIGNMENT AND CONVEYANCE AGREEMENT

<u>REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE POOL
CHARACTERISTICS OF EACH MORTGAGE LOAN PACKAGE</u>

Pool Characteristics of the Mortgage Loan Package as delivered on the related Closing Date:

No Mortgage Loan has:  (1) an outstanding principal balance less than $_____; (2) an origination date earlier than __ months prior to the related Cut-off Date; (3) an LTV of greater than ____%; (4) a FICO Score of less than ___; or (5) a debt-to-income ratio of more than ___%.  Each Mortgage Loan has a Mortgage Interest Rate of at least ___% per annum and an outstanding principal balance of less than $_____.  Each Adjustable Rate Mortgage Loan has an Index of [_____].

EXHIBIT C
TO ASSIGNMENT AND CONVEYANCE AGREEMENT

<u>UNDERWRITING GUIDELINES</u>

EXHIBIT I

FORM OF PURCHASE PRICE AND TERMS LETTER