**Hearing Date: April 24, 2014 at 10:00 a.m. (ET)**

**Objection Deadline: April 11, 2014 at 4:00 p.m. (ET)**

| | |
|---|---|
| Richard M. Cieri | Jeffrey S. Powell |
| Ray C. Schrock | Daniel T. Donovan |
| Justin R. Bernbrock | Judson D. Brown |
| KIRKLAND & ELLIS LLP | KIRKLAND & ELLIS LLP |
| 601 Lexington Avenue | 655 15th Street, N.W., Ste. 1200 |
| New York, New York 10022 | Washington, D.C. 20005 |
| Telephone: (212) 446-4800 | Telephone: (202) 879-5000 |
| Facsimile: (212) 446-4900 | Facsimile: (202) 879-5200 |

*Counsel for Ally Financial Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**NOTICE OF ALLY FINANCIAL INC.'S MOTION FOR AN**
**ORDER ENFORCING THE CHAPTER 11 PLAN INJUNCTION**

**PLEASE TAKE NOTICE** that a hearing on Ally Financial Inc.'s Motion for Entry of an Order Enforcing the Chapter 11 Plan Injunction (the "***Motion***") will be held before the Honorable Martin Glenn of the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***"), in Room 501, One Bowling Green, New York, New York 10004-1408, on **April 24, 2014, at 10:00 a.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that responses or objections to the Motion and the relief requested therein, if any, must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, shall set forth the basis for the objection and the specific grounds therefore and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399, by registered users of the Bankruptcy Court's case filing system (the User's Manual for the Electronic Case Filing System can be

found at http://www.nysb.uscourts.gov, the official website for the Bankruptcy Court), with a

hard copy delivered directly to Chambers and served, so as to be received no later than **April 11,**

**2014, at 4:00 p.m. (prevailing Eastern Time)**, upon: (a) counsel to the Debtors and Liquidating

Trust, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attention:

Gary S. Lee, Norman S. Rosenbaum, and Jordan A. Wishnew); (b) the Office of the United States

Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street,

Suite 1006, New York, NY 10014 (Attention: Tracy Hope Davis, Linda A. Riffkin, and Brian S.

Masumoto); (c) the Office of the United States Attorney General, U.S. Department of Justice, 950

Pennsylvania Avenue NW, Washington, DC 20530-0001 (Attention: US Attorney General, Eric H.

Holder, Jr.); (d) the Office of the New York State Attorney General, The Capitol, Albany, NY

12224-0341 (Attention: Nancy Lord, Esq. and 3 Enid N. Stuart, Esq.); (e) the Office of the U.S.

Attorney for the Southern District of New York, One St. Andrews Plaza, New York, NY 10007

(Attention: Joseph N. Cordaro, Esq.); (f) counsel for Ally Financial Inc., Kirkland & Ellis LLP, 153

East 53rd Street, New York, NY 10022 (Attention: Richard M. Cieri and Ray Schrock); (g) counsel

for the committee of unsecured creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the

Americas, New York, NY 10036 (Attention: Kenneth Eckstein and Douglas Mannal); (h) counsel for

Ocwen Loan Servicing, LLC, Clifford Chance US LLP, 31 West 52nd Street, New York, NY 10019

(Attention: Jennifer C. DeMarco and Adam Lesman); (i) counsel for Berkshire Hathaway Inc.,

Munger, Tolles & Olson LLP, 355 South Grand Avenue, Los Angeles, CA 90071 (Attention:

Thomas Walper and Seth Goldman); (j) Internal Revenue Service, P.O. Box 7346, Philadelphia, PA

19101-7346 (if by overnight mail, to 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA

19104-5016); (k) Securities and Exchange Commission, New York Regional Office, 3 World

Financial Center, Suite 400, New York, NY 10281-1022 (Attention: George S. Canellos, Regional

Director); and (l) special counsel to the Committee, SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, NY 11753 (Attention: Ronald J. Friedman).

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written response to the relief requested in the Motion, the Bankruptcy Court may deem any opposition waived, treat the Motion as conceded, and enter an order granting the relief requested in the Motion without further notice or hearing.

March 28, 2014
New York, New York

_/s/ Ray C. Schrock_
Richard M. Cieri
Ray C. Schrock
Justin R. Bernbrock
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

Jeffrey S. Powell
Daniel T. Donovan
Judson D. Brown
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Ste. 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Richard M. Cieri                         Jeffrey S. Powell
Ray C. Schrock                           Daniel T. Donovan
Justin R. Bernbrock                      Judson D. Brown
KIRKLAND & ELLIS LLP                     KIRKLAND & ELLIS LLP
601 Lexington Avenue                     655 15th Street, N.W., Ste. 1200
New York, New York 10022                 Washington, D.C. 20005
Telephone: (212) 446-4800                Telephone: (202) 879-5000
Facsimile: (212) 446-4900                Facsimile: (202) 879-5200

*Counsel for Ally Financial Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**ALLY FINANCIAL INC.'S MOTION FOR AN**
**ORDER ENFORCING THE CHAPTER 11 PLAN INJUNCTION**

**TO THE HONORABLE JUDGE GLENN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Ally Financial Inc. ("***Ally***") submits this Motion for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "***Order***"),[1] enforcing the injunction in the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [ECF No. 6065-1] (the "***Plan***"),[2] which was confirmed by the Court on December 11, 2013 [ECF No. 6065]. In support hereof, Ally submits the *Declaration of Thomas M. Schehr*, which is attached hereto as **Exhibit B** (the "***Schehr Declaration***"), and respectfully states as follows:

---

[1] Although it has not done so as of the date of this Motion, Ally respectfully reserves its rights to seek an expedited hearing on the Motion based upon events that may occur in the underlying Actions (as defined herein).

[2] Capitalized terms used but not defined herein have the meanings given to such terms in the Plan.

## INTRODUCTION

In direct contravention of this Court's order confirming the Plan—which permanently enjoined the pursuit of claims "arising from or related in any way to the Debtors," Plan Art. IX.D—plaintiffs in three separate class actions filed in Alabama and Georgia (the "*Plaintiffs*") seek to continue their lawsuits against Ally, asserting that their "civil action[s] against Ally do[] not fall within the scope" of the Plan's Third Party Release and injunction.  The Plaintiffs' claims, however, concern solely the servicing and fees related to residential mortgages loans originated and serviced by GMAC Mortgage LLC and Homecomings Financial LLC, Debtor entities.  Those claims fall squarely within the Plan's Third Party Release, which applies to "any and all Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws, veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to the Debtors."  (Plan Art. IX.D.)

The Plaintiffs nonetheless contend that the Plan's Third Party Release does not apply to their claims against Ally because they have named Ally "as a direct defendant" in the cases.  The Plaintiffs' theory is nothing more than a litigation tactic designed to circumvent the effect of the bankruptcy and the Plan.  Indeed, in two complaints, the Plaintiffs did not even pursue claims against Ally for four years—only naming Ally as a defendant after the Debtors' bankruptcy filing—acknowledging that their claims did not concern conduct by Ally.  And even after amending those two complaints following the Debtors' bankruptcy filing, such that all three complaints named Debtor entities and Ally, none set forth any allegations concerning specific conduct by Ally.  That is because all three were based on conduct of the Debtor entities.

In a last ditch effort to save their claims, the Plaintiffs' brazenly filed amended complaints on March 21, 2014, dropping the Debtor entities as defendants and leaving only Ally. But the Plaintiffs' claims are still based on the servicing and fees related to residential mortgage loans originated and serviced by GMAC Mortgage LLC and Homecomings Financial LLC—and they are still subject to the Third Party Release. Pursuant to the Plan's Injunction, the Plaintiffs are "permanently enjoined and precluded" from continuing to prosecute their claims against Ally. (*See* Plan Art. IX.I.) This Court therefore should enter the Order enforcing the Plan's Third Party Release and enjoining the Plaintiffs from proceeding with their claims against Ally, and awarding Ally its fees and costs incurred in pursuing this relief.

## BACKGROUND

Beginning in February of 2008, McCallum, Methvin & Terrell, P.C. ("***Methvin***"), a law firm based in Alabama, filed three separate complaints in Georgia and Alabama state courts on behalf of its clients to challenge the servicing and fees related to residential mortgages originated and serviced by GMAC Mortgage, LLC or Homecomings Financial, LLC—both Debtor entities. (Schehr Decl. ¶ 4.) The three lawsuits are:

- *Robinson, et al v. Homecomings Financial, LLC*, et al, CV-2008-900007, Barbour County Circuit Court, Eufala, Alabama, filed on February 29, 2008, against Homecomings Financial, LLC (the "***Robinson Action***");

- *Chatman, et al v. GMAC Mortgage Corporation*, et al, CV-2008-9000015, Barbour County Circuit Court, Eufala, Alabama, filed on April 10, 2008 against GMAC, LLC, and amended on April 30, 2008 to "dismiss all claims against GMAC, LLC" and name only GMAC Mortgage Corporation and GMAC Mortgage, LLC (the "***Chatman Action***"); and

- *Donaldson, et al v. GMAC Mortgage, LLC*, SU 09 CV 3359D, Superior Court of Muscogee County, Georgia, filed on August 26, 2009, against GMAC Mortgage, LLC and GMAC LLC (the "***Donaldson Action***," together with the Robinson Action and Chatman Actions, collectively, the "***Actions***").

3

(*See* Schehr Decl. ¶¶ 3–6.)  All three complaints focus on the conduct of GMAC Mortgage, LLC and Homecomings Financial, LLC.  (*See id.*)  Acknowledging that simple fact, one complaint—*Robinson*—did not even name Ally (or its predecessor, GMAC LLC) as a defendant; another complaint—*Chatman*—named GMAC LLC then voluntarily dismissed it as a defendant twenty days later, substituting in GMAC Mortgage Corporation and GMAC Mortgage, LLC; and the last complaint—*Donaldson*—did not allege any specific conduct by GMAC Inc.  (*Id.* ¶ 6.)

On May 14, 2012, ResCap and many of its direct and indirect subsidiaries—including GMAC Mortgage, LLC and Homecomings Financial, LLC—filed for bankruptcy protection. Plaintiffs' counsel, Methvin, was notified about the bankruptcy filing on or about June 4, 2012.[3] Plaintiffs' counsel was also notified of the claims bar date.[4]  However, none of the Plaintiffs filed proofs of claim to pursue recovery on their claims in the bankruptcy proceeding.[5]  Instead, they chose to pursue recovery from Ally.  Thus, on July 3, 2012, less than two months after the bankruptcy filing, plaintiffs in the *Chatman* and *Robinson* lawsuits filed amended complaints, adding Ally as a named defendant in both cases.  (Schehr Decl. ¶ 8.)  Tellingly, however, the amended complaints included no allegations setting forth any specific conduct by Ally.  (*See* Schehr Decl., Exh. 7, 8.)

The Plaintiff's counsel was also notified of the Disclosure Statement hearing, the proposed Plan of Reorganization, and the Confirmation Hearing.[6]  The Plaintiffs, and their

---

[3]  *See Affidavit of Service of Melissa Loomis Regarding Notice of Chapter 11 Bankruptcy Cases, Meeting of Creditors, and Deadlines*, Ex. C, p. 555 [ECF No. 336] (listing Methvin on the Creditor Matrix).

[4]  *See Affidavit of Service of Clarissa D. Cu Regarding Notice of Deadlines for Filing Proofs of Claim*, Ex. I, pp. 1768, 2958, 7164, 7178, 9370 [ECF No. 1412].

[5]  It is not the case that the Methvin firm failed to receive notice of the bar date or failed to understand how to file a proof of claim.  The Methvin firm filed a proof of claim on behalf of a different client, Willie Chamblin, who had sued GMAC Mortgage LLC on foreclosure-related claims.  *See* Proof of Claim 3792, filed Nov. 8, 2012.

[6]  *See Affidavit of Service of Clarissa D. Cu Regarding Notice of Disclosure Statement Hearing*, Ex. F, pp. 903, 1507, 3647, 3654, 4779 [ECF No. 4285]; *Affidavit of Service of P. Joseph Morrow IV Regarding Order (I) Approving Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or*

counsel, did not choose to assert any rights or objections in the bankruptcy forum, and they did not object to Plan's Third Party Release or Injunction. The Plaintiffs instead chose to continue to pursue their claims against Ally.

On December 11, 2013, the Court entered the Confirmation Order [ECF No. 6065], confirming the Plan. An "essential component" of the Plan is a broad Third Party Release of "any and all Causes of Action" against Ally "arising from or related in any way to the Debtors." (Plan Art. IX.D.) The Plan further includes an Injunction that "permanently enjoined and precluded" an entity from "commencing or continuing … against any Released Party … on account of or in connection with or with respect to any Released Claims." (Plan Art. IX.I.) Plaintiff's counsel received notice of the entry of the Confirmation Order.[7]

In January 2014, Ally's counsel in the three lawsuits also informed Methvin that this Court entered the Confirmation Order. (Schehr Decl. ¶ 9.) Through informal discussions, Ally's counsel requested that Methvin voluntary dismiss its clients' claims in compliance with the Plan's Third Party Release and Injunction. (*See id.*) On January 31, 2014, Ally's counsel sent a letter to Methvin that provided it with copies of the Plan and Confirmation Order. (*Id.* ¶ 10, Ex. 9.) The letter explained to Methvin that its clients' claims against Ally fall squarely within the Third Party Release and that, by virtue of the Plan's Injunction, its clients were enjoined from pursuing their claims against Ally. (*Id.*) On February 11, 2014, Methvin, Ally's counsel, and ResCap's counsel held a conference call to discuss the Confirmation Order and Third Party

---

*Reject the Plan Proponents' Joint Chapter 11 Plan, (III) Approving the Form of Ballots, (IV) Scheduling a Hearing on Confirmation of the Plan, (V) Approving Procedures for Notice of the Confirmation Hearing and for Filing Objections to Confirmation of Plan, and (VI) Granting Related Relief*, Ex. G, p. 18, Exh. L, p. 955, 1595, 3861, 3869, 5061 [ECF No. 5196] (showing that Methvin was served notice of the Confirmation Hearing and received a solicitation package, which included the proposed Plan).

[7] *See Affidavit of Service of Clarissa D. Cu Regarding Notice of Entry of Confirmation Order Confirming the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors and Occurrence of Effective Date, and Notice of Deadline and Procedures for Filing Certain Administrative Claims*, Ex. E, pp. 649, 1085, 2626, 2631, 3441 [ECF No. 6187].

Release.  (*Id.* ¶ 11.)  Following this, and other, conversations with Ally's counsel, Methvin refused to dismiss its clients' claims against Ally.  (*See id.* ¶¶ 10–11.)

On March 4, 2014, Ally's counsel in these chapter 11 cases sent Methvin a second letter reiterating its explanation that the claims asserted against Ally by its clients were subject to the Third Party Release and the injunction in ResCap's Plan.  (*Id.* ¶ 12, Ex. 10.)  Ally repeated its willingness to discuss the matter with Methvin and offered to arrange a telephone conference with this Court to discuss the matter.  (*Id.*)  On March 10, 2014, Methvin responded to the letter and baldly asserted that the Third Party Release did not apply to its clients' claims because Ally was named "as a direct defendant" in the Actions.  (*Id.* ¶ 13, Ex. 11.)  Ally's counsel responded to Methvin's letter on March 20, 2014.  (*Id.* ¶ 14, Ex. 12.)  In that letter, Ally reiterated—for at least the third time—that his clients' claims against Ally fall squarely within the scope of the Third Party Release because the claims challenge the servicing and fees related to residential mortgage loans originated and serviced by the Debtor entities GMAC Mortgage, LLC and Homecomings Financial, LLC.  (*Id.*)  Methvin again refused to recognize the scope or impact of the Third Party Release.

Instead, one day later—in a blatant attempt to circumvent this Court's Confirmation Order—Methvin amended the complaints in all three lawsuits, dismissing (without prejudice) claims against GMAC Mortgage and Homecomings Financial and leaving Ally as the sole defendant in each case.  (*Id.* ¶ 15, Exs. 13, 14, 15.)  The claims alleged, however, remain the same—that the Plaintiffs were charged improper fees, costs, and charges related to residential mortgages originated and serviced by Debtor entities GMAC Mortgage, LLC and Homecomings Financial, LLC.  (*See id.*)

## JURISDICTION

This Court is intimately familiar with the Plan, the issues that were litigated leading to Plan confirmation, the objections previously raised to the Third Party Release, and the purpose of the Third Party Release—which this Court deemed "an essential component and critical to the success of the Plan." (Plan Art. IX.D.) This Court is uniquely equipped to interpret and enforce the Plan terms, relevant Bankruptcy Code provisions, and ultimately its own injunction. Indeed, this Court specifically and broadly retained exclusive jurisdiction to "hear and determine any matter, case, controversy, suit, dispute, or Causes of Action [] regarding the existence, nature, and scope of the releases, injunctions, and exculpation provided under the Plan," to "hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan," to "issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan," and to "[e]nforce all orders previously entered by the Bankruptcy Court." (Plan Art. XII (c), (k), (s), and (u).)

Pursuant to that exclusive jurisdiction, Ally now seeks this Court's enforcement of the Plan, and its Third Party Release and injunction, against Plaintiffs. *See, e.g.*, *In re Charter Commc'ns*, 2010 WL 502764, at *3–*4 (Bankr. S.D.N.Y. Feb. 8, 2010).

## RELIEF REQUESTED

By its Motion, Ally respectfully requests entry of the Order enforcing the Plan's Third Party Release and enjoining the Plaintiffs from proceeding against Ally in the Actions. Additionally, Ally respectfully requests that the Court award Ally its reasonable attorneys' fees and costs related to this matter.

**ARGUMENT**

Plaintiffs' claims against Ally fall squarely within the Third Party Release and Injunction

provisions in the Plan confirmed by this Court.  This Court should enforce the Plan and enjoin

the Plaintiffs from continuing their lawsuits against Ally, and award Ally its reasonable

attorneys' fees and costs incurred in pursuing this action.

**I.      Plaintiffs' Claims Against Ally Are Enjoined By The Express Terms Of The Plan.**

The Plaintiffs' claims against Ally are based on the origination of a residential mortgage

loan, the assignment of the recorded mortgage, the servicing of the loan, and the attempts to

foreclose upon the loan and the secured real property.  Those claims are precisely within the

scope of the Plan's Third Party Release.  The Plan expressly provides as follows:

> On and as of the Effective Date of the Plan, the holders of Claims
> and Equity Interests, shall be deemed to provide a full and
> complete discharge and release to the Ally Released Parties and
> their respective property from any and all Causes of Action
> whatsoever, whether known or unknown, asserted or unasserted,
> derivative or direct, foreseen or unforeseen, existing or hereinafter
> arising, in law, equity, or otherwise, whether for tort, fraud,
> contract, violations of federal or state securities laws, veil piercing
> or alter-ego theories of liability, contribution, indemnification,
> joint liability, or otherwise, arising from or related in any way to
> the Debtors, including those in any way related to RMBS issued
> and/or sold by the Debtors or their affiliates and/or the Chapter 11
> Cases or the Plan, and any obligations under the DOJ/AG
> Settlement, the Consent Order, and the Order of Assessment.

(Plan Art. IX.D.)

The Plaintiffs are holders of a "Claim," as that term is defined in the Plan and the

Bankruptcy Code.  The Plan defines "Claim" as "a 'claim' as such term is defined in section

101(5) of the Bankruptcy Code."  (Plan Art. I.A.53.)  Section 101(5), in turn, defines "claim" as

any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated,

fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or

unsecured." 11 U.S.C. § 101(5).  As courts have observed, "[t]he definition of 'claim' in the Bankruptcy Code is very broad."  *In re Egleston*, 448 F.3d 803, 812 (5th Cir. 2006); *accord Johnson v. Home State Bank*, 501 U.S. 78 (1991).  A claim need not have been asserted in litigation, be ripe for litigation, or even be known to the claimant to fall within the scope of Section 101(5).  Under the Bankruptcy Code, "'[i]t is well-established that a claim is ... allowable ... in a bankruptcy proceeding even if it is a cause of action that has not yet accrued.'" *In re R.H. Macy & Co.*, 67 F. Appx. 30, 31–32 (2d Cir. 2003) (quoting *In re Cool Fuel, Inc.*, 210 F.3d 999, 1006 (9th Cir. 2000) (collecting cases)).

The Plaintiffs' claims also "arise from [and are] related in any way to the Debtors."  The Plaintiffs' claims against Ally are based upon the mortgage business of the Debtors.  The Plaintiffs challenge the origination, servicing, and foreclosure of a residential mortgage loan originated and serviced by the Debtors—not any action by Ally or its non-debtor subsidiaries.  Indeed, the plaintiffs did not even originally pursue claims against Ally in two of the actions— *Chatman* and *Robinson*.  And although all three complaints were brazenly amended on March 21 to name only Ally, none contain specific allegations against Ally or its non-debtor subsidiaries; all three are still based on the conduct of Debtor entities.  Plaintiffs' claims therefore arise from and are related to the Debtors.

Because Plaintiffs are "holders of [a] Claim[] … arising from or related in any way to the Debtors," they are bound by the Third Party Release.  (*See* Plan Art. IX.D.)  The express terms of the Plan's injunction therefore "permanently enjoin[] and preclude[]" Plaintiffs from continuing their lawsuits against Ally.  (*See* Plan Art. IX.I (enjoining all entities who hold "Claims … from: (a) commencing or continuing in any manner or action of other proceeding of any kind against any Released Party whether directly, derivatively or otherwise, on account of or

9

in connection with or with respect to any Released Claims; … [and] (e) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party on account of or in connection with or with respect to any Released Claims")); *see also In re Charter Commc'ns*, 2010 WL 502764, at *5 (Bankr. S.D.N.Y. Feb. 8, 2010) (enforcing confirmed plan of reorganization to enjoin plaintiffs' lawsuit against non-debtor beneficiaries of third party release).

## II.    Ally Is Entitled To Attorneys' Fees And Costs.

In light of the circumstances under which Ally was forced to seek to enforce the Plan injunction against the Plaintiffs, Ally is entitled to be reimbursed for the attorneys' fees and expenses reasonably incurred because of the conduct of Plaintiffs' counsel. *See In re Cohoes Indus. Terminal, Inc.*, 931, F.2d 222, 230 (2d Cir. 1991) ("A bankruptcy court may impose sanctions pursuant to 28 U.S.C. § 1927 if it finds that '[an] attorney's actions are so completely without merit as to require the conclusion that they must have been taken for some improper purpose such as delay.") (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)); *In re Gorshtein*, 285 B.R. 118, 124 (Bankr. S.D.N.Y. 2002) (granting sanctions pursuant to 11 U.S.C. § 105(a)); *In re French Bourekas, Inc.*, 175 B.R. 517, 523-525 (Bankr. S.D.N.Y. 1994) (granting sanctions under under 28 U.S.C. § 1927 and 11 U.S.C. § 105(a)).

Plaintiffs' counsel, Methvin, was repeatedly advised of the Third Party Release and the Injunction in ResCap's Plan of Reorganization.  Methvin's persistent refusal to acknowledge the Third Party Release or the Injunction against his clients' claims has forced Ally to expend valuable time and effort communicating with Methvin—both in writing and telephonically—and ultimately filing this motion.  The express terms of the Plan's Injunction make clear that "[a]ny person injured by any willful violation of this injunction shall be entitled to recover actual

10

damages, including costs and attorneys' fees." (Plan Art. IX.I.) Ally therefore requests it be awarded its attorneys' fees and costs reasonably incurred to enforce this Court's injunction.

## CONCLUSION

For the foregoing reasons, Ally respectfully requests that the Court enter the Order, enjoining the Plaintiffs from pursuing their claims against Ally in the Actions and award Ally its attorneys' fees and costs related to this matter, and granting such other and further relief as appropriate.

March 28, 2014                          _/s/ Ray C. Schrock_____
New York, New York                   Richard M. Cieri
                                     Ray C. Schrock
                                     Noah Ornstein
                                     KIRKLAND & ELLIS LLP
                                     601 Lexington Avenue
                                     New York, New York 10022
                                     Telephone: (212) 446-4800
                                     Facsimile: (212) 446-4900

                                     - and -

                                     Jeffrey S. Powell
                                     Daniel T. Donovan
                                     Judson D. Brown
                                     KIRKLAND & ELLIS LLP
                                     655 15th Street, N.W., Ste. 1200
                                     Washington, D.C. 20005
                                     Telephone: (202) 879-5000
                                     Facsimile: (202) 879-5200

                                     *Counsel to Ally Financial Inc.*

# EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**ORDER GRANTING ALLY FINANCIAL INC.'S MOTION**
**FOR AN ORDER ENFORCING THE CHAPTER 11 PLAN INJUNCTION**

Upon consideration of the motion (the "***Motion***")[8] of Ally Financial Inc. ("***Ally***")

for entry of an order enforcing the Third Party Release and Injunction provisions of the *Second*

*Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official*

*Committee of Unsecured Creditors*, which was confirmed by this Court on December 11, 2013;

and it appearing that this Court has jurisdiction to consider the Motion pursuant to

28 U.S.C. §§ 157 and 1334; and it appearing that venue of these chapter 11 cases and the Motion

in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this

proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient

notice of the Motion having been given; and it appearing that no other or further notice need be

provided; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.       The Motion is GRANTED to the extent set forth below for the reasons set

forth on the record at the hearing on the Motion.

---

[8] Capitalized terms used but not defined herein have the meanings provided to such terms in the Motion.

2.      Not later than fourteen days after the entry of this Order, the Plaintiffs and Methvin shall take all appropriate actions to dismiss the Actions against Ally with prejudice within such time frame.

3.      If the Plaintiffs and Methvin fail to dismiss the Actions against Ally or the Actions are not otherwise dismissed against Ally within such fourteen-day period, this Court shall issue an order holding the Plaintiffs and Methvin in contempt of Court for violating the terms of this Order and the Confirmation Order by virtue of the Plaintiffs' actions to attempt to prosecute actions against Ally in violation of the Confirmation Order.

4.      Further, Ally is awarded its reasonable expenses and costs, including attorneys' fees and costs, in connection with this matter in an amount to be determined by this Court.

5.      Ally is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

6.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.      All objections to the Motion or the relief requested therein, if any, that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

8. This Court shall retain jurisdiction with respect to all matters arising or related to the implementation of this Order.


Dated: _____, 2014
          New York, New York

_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

**Schehr Declaration**

Richard M. Cieri
Ray C. Schrock
Justin R. Bernbrock
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Jeffrey S. Powell
Daniel T. Donovan
Judson D. Brown
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Ste. 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel for Ally Financial Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF THOMAS M. SCHEHR**

I, Thomas M. Schehr, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I make this declaration on the basis of my personal knowledge of the facts stated herein, except to the extent that I make reference to documents.  When referencing documents, my knowledge is based upon my review of documents provided to me during the course of my representation of Ally Financial Inc.

2.      I am an attorney based in Michigan.

3.      Beginning in February of 2008, Robert G. Methvin, Jr. ("***Methvin***")[1] and Rodney E. Miller ("***Miller***") of McCallum, Methvin, Terrell, acting on behalf of their clients, filed three separate complaints in Georgia and Alabama state courts.

---

[1]      Capitalized terms used herein but not defined have the meanings given to such terms in the Motion to which this Declaration is attached as Exhibit B.

4.      Methvin filed *Robinson, et al v. Homecomings Financial, LLC*, et al, CV-2008-900007, in Barbour County Circuit Court, Eufala, Alabama on February 29, 2008 (the "*Robinson Original Complaint*"), naming Homecomings Financial, LLC as the sole defendant. The Robinson Original Complaint is attached as **Exhibit 1**. Methvin filed an amended complaint in the *Robinson* matter on June 5, 2008 (the "*Robinson First Amended Complaint*"). The *Robinson* First Amended Complaint is attached as **Exhibit 2**.

5.      On April 10, 2008, Methvin filed *Chatman, et al v. GMAC Mortgage Corporation*, et al, CV-2008-900015, in Barbour County Circuit Court, Eufala, Alabama (the "*Chatman Original Complaint*"), naming GMAC LLC as the sole defendant. The *Chatman* Original Complaint is attached as **Exhibit 3**. Twenty days later, on April 30, 2008, Methvin filed an amended complaint in the *Chatman* matter (the "*Chatman First Amended Complaint*"). The *Chatman* First Amended Complaint, attached hereto as **Exhibit 4**, voluntarily "dismiss[ed] all claims against GMAC, LLC without prejudice," and instead named GMAC Mortgage Corporation and GMAC Mortgage, LLC as defendants.

6.      On August 26, 2009, Miller filed *Donaldson, et al v. GMAC Mortgage, LLC*, SU 09 CV 3359D, in the Superior Court of Muscogee County, Georgia (the "*Donaldson Original Complaint*"), naming GMAC Mortgage, LLC and GMAC LLC as defendants. The *Donaldson* Original Complaint is attached hereto as **Exhibit 5**. On February 17, 2010, the plaintiffs filed an amended complaint in the *Donaldson* matter (the "*Donaldson First Amended Complaint*"). The *Donaldson* First Amended Complaint, attached hereto as **Exhibit 6**, names GMAC Mortgage, LLC, GMAC Inc., and GMAC LLC as defendants.

7.    All three cases challenge the servicing and fees related to residential mortgages. *See, e.g.*, Donaldson Original Compl. ¶¶ 1–8; Chatman Original Compl. ¶¶ 1–9; Robinson Original Compl. ¶¶ 1–8.

8.    On July 3, 2012, Methvin and his colleague Nicholas W. Armstrong ("***Armstrong***") filed second amended complaints in the Chatman Action, attached hereto as **Exhibit 7** (the "***Chatman Second Amended Complaint***"), and Robinson Action, attached hereto as **Exhibit 8** (the "***Robinson Second Amended Complaint***"), adding Ally as a named defendant in both cases. *See generally* Chatman Second Am. Compl. ¶ 16; Robinson Second Am. Compl. ¶ 15.

9.    Beginning in January, 2014, I exchanged short emails with Armstrong, copied to Methvin, and left at least one voicemail for Armstrong, concerning this Court's entry of the Confirmation Order.

10.    On January 31, 2014, my colleague sent Methvin a letter, which is attached hereto as **Exhibit 9**, that explained the effect of the Plan's Third Party Release and Injunction provisions and that provided a copy of the Plan and Confirmation Order.

11.    On February 11, 2014, I and one of my colleagues participated in a telephone conference with Methvin, Ally's in-house counsel, and counsel for the Debtors to discuss the Plan and Confirmation Order.

12.    On March 4, 2014, Ally's counsel in these chapter 11 cases sent Methvin a letter, which is attached hereto as **Exhibit 10**, reiterating Ally's position regarding the Third Party Release and Injunction provisions. In that letter, Ally repeated its willingness to arrange a telephone conference with this Court to discuss the matter.

3

13.     On March 10, 2014, Methvin responded to Ally's March 4, 2014 letter, via letter, which is attached hereto as **Exhibit 11**, asserting that the Third Party Release did not apply to his clients' claims because Ally was named "as a direct defendant" in the Actions.

14.     Ally's counsel responded to Methvin's March 10, 2014 letter, via a letter dated as of March 20, 2014, which is attached hereto as **Exhibit 12**. In its March 20, 2014 letter, Ally reiterated that Methvin's clients' claims against Ally fall within the scope of the Third Party Release because the claims challenge the servicing and fees related to residential mortgage loans originated and serviced by GMAC Mortgage, LLC and Homecomings Financial, LLC.

15.     On March 21, 2014, amended complaints were filed in the *Donaldson*, *Chatman*, and *Robinson* matters. The second amended complaint in the *Donaldson* matter and the third amended complaints in the *Chatman* and *Robinson* matters are attached hereto as **Exhibit 13**, **Exhibit 14**, and **Exhibit 15**, respectively. In the amended complaints in all three lawsuits, the plaintiffs dismissed (without prejudice) the claims against the Debtors, leaving GMAC Inc., now known as Ally, in *Donaldson*, and Ally in *Chatman* and *Robinson*, as the sole defendant. The claims alleged in the amended complaints in the Actions, however, remain the same—that the Plaintiffs were charged improper fees, costs, and charges related to residential mortgages.

16.     Ally's counsel sent Methvin one last request to dismiss the three lawsuits on March 27, 2014. That letter is attached as **Exhibit 16**.

*[Remainder of page intentionally left blank]*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 28, 2014.

Thomas M. Schehr

## Exhibit 1

**Robinson Original Complaint**

ELECTRONICALLY FILED
2/29/2008 10:02 AM
CV-2008-900007.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
DAVID NIX, CLERK

## IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
### Eufaula Division

| | |
|---|---|
| **RUBY ROBINSON** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No.:** |
| | ) |
| **HOMECOMINGS FINANCIAL, LLC** | ) |
| **f/k/a HOMECOMINGS FINANCIAL** | ) |
| **NETWORK, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

### CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, Ruby Robinson ("Robinson"), individually and on behalf of a class of all persons or entities in Alabama who are similarly situated, files this Class Action Complaint against the Defendant, HOMECOMINGS FINANCIAL, LLC f/k/a HOMECOMINGS FINANCIAL NETWORK, INC. ("Homecomings") and/or "Defendant" and other fictitious parties as set out herein. In support thereof, the Plaintiff states the following:

### NATURE OF THE CASE

1.      Through a fraudulent, unlawful and unfair course of conduct, Defendant has, over the course of years, billed improper fees, costs and charges, including property inspection fees, late fees, fax payoff fees, wire fees, "pay by phone" fees, and fees for using its "Speedpay" automated payment system to Plaintiff and Defendant's other Alabama customers. The fees and charges are fraudulent, excessive, unnecessary, mischaracterized, unconscionable, misleading, and not collectable.

2.      Defendant assesses these improper fees, costs and charges (collectively the "improper charges") to borrowers' accounts in order to maximize their profits, and with the goal of putting borrowers into default status. It then demands payment in various contexts including,

without limitation, monthly bills, reinstatement demands, payoff statements, court pleadings, collection letters and collection calls. Defendant then collect the improper charges from borrowers' monthly payments, and also from the proceeds of foreclosure sales and loan payoffs.

3.    Defendant charges customers a monthly "Speedpay" fee, merely for the electronic processing of a mortgage payment. Customers are forced to pay this fee because Defendant often does not process checks received through the mail in a reliable or timely fashion, resulting in additional fees.

4.    Defendant charges customers multiple, unnecessary "property inspection" fees, sometimes on a monthly basis, and sometimes multiple times in one month. When customers call to ask why the fee was assessed, Defendant responds that it needs to confirm that someone is still living in the house. Defendant, in many instances, never performs the property inspection. The property inspection fee is always in an amount in excess of the actual cost of the alleged "property inspection".

5.    Defendant structures account statements in a way that makes it extremely difficult or impossible for borrowers to determine how much they owe, or how any mortgage payment will be allocated. When customers call for clarification, or to correct a charge they believe is in error, Defendant diverts customers through a remote, understaffed and undertrained call center hotline. Customers seldom or never talk with the same representative twice, and the representative on the line is almost always looking at the customer's account for the first time. Defendant's representatives regularly refuse or fail to provide necessary information or to correct problems.

6.    The improper charges described herein have a snowball effect, often forcing the consumers into default status and foreclosure, resulting in further improper and unauthorized fees

2

and charges.

7.    Defendant routinely treats borrowers as if the borrowers are in default on their loans, even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements.

8.    Plaintiff Robinson's home-secured loan was serviced by Defendant Homecomings during the period covered by this action, and she was assessed improper charges by Homecomings, as detailed herein. The mortgage loan was entered into in Barbour County, Alabama on or about September 2, 2005. Defendant Homecomings, by and through various agents and employees, made misrepresentations at this time and after the loan closing, suppressed material facts from Plaintiff Robinson at this time and after the closing, and engaged in other misconduct as set out herein. Plaintiff Robinson relied upon such fraud and reasonably believed that Defendant Homecomings would not engage in the other misconduct alleged herein. Plaintiff Robinson was proximately damaged as a result of such fraud and other misconduct.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over this action. Defendant does business in the State of Alabama and has received and continues to receive substantial revenue and profits from the improper charges in the State of Alabama. Defendant transacts business in Barbour County, Alabama and has received and continues to receive substantial revenue and profits from the improper charges in Barbour County, Alabama and has further made material omissions and misrepresentations, as well as engaged in other misconduct, in Barbour County, Alabama.

10.    Venue in this case is proper in the Eufaula Division of Barbour County, Alabama, in that a substantial portion of the conduct of the Defendant which forms the basis of this action

3

occurred in such venue, and Plaintiff Robinson resides in such venue.

## PARTIES

11.    Plaintiff Robinson is a resident citizen of the Eufaula Division of Barbour County, Alabama.

12.    Defendant Homecomings Financial, LLC is a Delaware corporation which is qualified to do business and is doing business in the State of Alabama and which has its principal place of business at 8400 Normandale Lake Boulevard, Suite 250, Minneapolis, Minnesota 55437. It's appointed agent for service of process in Alabama is CSC Lawyers Incorporating Service, Inc., 150 South Perry Street, Montgomery, Alabama 36104.

13.    Defendants fictitiously described as "A," "B," and "C," are otherwise unknown to Plaintiff at this time, or if their identities are known to Plaintiff at this time, their identity as proper party Defendants is not known to Plaintiff at this time, but their true and correct names will be substituted by amendment when the aforesaid information is ascertained. It is alleged that Defendant HOMECOMINGS FINANCIAL, LLC f/k/a HOMECOMINGS FINANCIAL NETWORK, INC. is responsible for the actions or inactions of the above fictitious parties under the doctrines of respondeat superior, joint and several liability, conspiracy, agency and/or other doctrines. It is further alleged that the fictitious Defendants are responsible for the actions or inactions of Defendant HOMECOMINGS FINANCIAL, LLC f/k/a HOMECOMINGS FINANCIAL NETWORK, INC. and its agents and employees under the doctrines of respondeat superior, joint and several liability, conspiracy, agency and/or other doctrines. Defendant HOMECOMINGS FINANCIAL, LLC f/k/a HOMECOMINGS FINANCIAL NETWORK, INC. is responsible for the actions and/or inactions of each other, under the doctrines of respondeat

4

superior, joint and several liability, agency, conspiracy, and/or other doctrines.

14.     The Defendant does business in Barbour County, Alabama and the Defendant acted in concert by marketing and collecting money from the improper charges through the coordinated inter-corporate relationship.    Defendant was and is an active participant in the misleading, unlawful, fraudulent, and unconscionable practices described herein.

15.     At all relevant times, Defendant was an agent, representative and/or employer of fictitious Defendants.  In committing the acts alleged herein, Defendant acted within the scope of its agency and/or employment and was acting with the consent, permission, authorization and knowledge and perpetrated and/or conspired with and/or aided and abetted the unlawful, improper, and fraudulent acts described herein.

16.     Plaintiff brings this action as an Alabama class action pursuant to Rule 23 of the Alabama Rules of Civil Procedure.  This class is more specifically defined as follows: "all Alabama residents who paid late fees, property inspection fees, "Speed pay" fees, fax payoff fees, wire fees, and "pay by phone" fees and/or other similar charges to Defendant."  Plaintiff maintains the right to create subclasses, if necessary.

17.     Excluded from the proposed class are the Defendants, any entity in which Defendant has a controlling interest and any agents, employees, officers and/or directors of the Defendant or any other such entities and their representatives, heirs, successor and/or assigns, as well as any people who paid the alleged improper charges to Defendant and who are or where in bankruptcy and received a discharge within the time period six years prior to the filing of this complaint.

18.     The exact number of Class members is unknown to Plaintiff at this time, but such information can be ascertained through appropriate discovery, specifically from records maintained

5

by Homecomings and its agents.

## EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS OF LAW AND FACT

19.    There are common questions of law and fact applicable to the class.  These common questions of law and fact predominate over any questions affecting only individual members of the class. Said common questions include, but are not limited to, the following:

a.    Whether Defendant engaged in a widespread and systematic practice of charging excessive amounts for the fees at issue in this case.

b.    Whether the fees at issue in this case are designed as profit enhancers for the Defendant.

c.    Whether the charging of the fees at issue in this case constitute breaches of contract.

d.    Whether the charging of the fees at issue in this case are inconsistent with applicable law.

e.    Whether it would be inequitable and unjust for the Defendant to retain the monies received from the wrongful and excessive fees at issue in this case.

f.    Whether Defendant conspired to commit the wrongful acts alleged herein.

g.    Whether Plaintiff and class members are entitled to class relief as requested herein.

h.    Whether the fees at issue herein are excessive under the terms of the contract and/or applicable law.

i.    Whether Defendant assessed charges for unnecessary and unauthorized property inspections and/or whether such property inspection fees are excessive.

j.    Whether Defendant assessed improper and excessive late fees.

k.    Whether the late fees are intended to be a penalty.

6

l.    Whether Defendant charged borrowers unauthorized and excessive "Speedpay" and/or other electronic payment processing fees.

m.    Whether Defendant assessed improper and excessive fax payoff fees and wire fees.

n.    Whether Defendant's practice of invoicing and assessing borrowers for the fees at issue in this case is consistent with the terms and language of the customer contracts.

o.    Whether Defendant has been unjustly enriched by assessing and collecting the fees at issue in this case.

p.    Whether Defendant has ceased charging the improper and excessive fees at issue in this case.

q.    Whether an injunction is necessary to keep Defendant from charging the unnecessary and excessive fees in this case.

r.    Whether the fees at issue in this case are unconscionable.

### TYPICALITY AND NUMEROSITY

20.    The claims of the named Plaintiff are typical of the claims of the class. The proposed class exceeds 40 members.

### ADEQUATE REPRESENTATION

21.    The Plaintiff will fairly and adequately protect the interests of the members of the class and have no interest antagonistic to those of other class members. Plaintiff has retained class counsel competent to prosecute class actions and such class counsel are financially able to represent the class.

7

## SUPERIORITY

22.     The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable. The interests of judicial economy favor adjudicating the claims for the Plaintiff class rather than on an individual basis.

23.     Questions of law and fact predominate over any questions affecting only individual members.

## FACTUAL ALLEGATIONS

24.     Plaintiff and putative class members took out a mortgage through a local lender. Defendant has engaged in the unfair, unlawful, fraudulent, wrongful and deceptive practice of adding and/or force-placing the fees, costs and charges on plaintiff and putative class members' accounts.

25.     The right to service these mortgage loans closed through a local lender is often farmed out to a third-party "mortgage servicer," such as the Defendant, who only profit from the fees and other charges that can be generated on servicing the mortgages. According to a study done by the Mortgage Bankers Association of America, mortgage servicers average only $60 per loan per year in net profit. Thus, they have a strong incentive to impose any fees and charges they can to increase their profit margin.

26.     Defendant Homecomings service loans on behalf of mortgage lenders, not Plaintiff and the Class. Defendant Homecomings's "customers" are a captive audience. The customers have no choice in who services their loans. They have no option to changes servicers if they are unhappy in any way.

8

27.    Because its "customers" have no way out, Defendant also has no incentive to offer good customer service. Because Defendant has demonstrated that they will force customers into default and foreclosure, Plaintiff and the Class are forced to pay the illegal, unnecessary and excessive charges.

28.    Mortgage servicing abuses, such as those alleged herein, are standard operating procedure for Defendant Homecomings and certain other mortgage servicers, as part of their goal to maximize profits on the backs of struggling homeowners. Defendant makes even more profits if a loan goes into default, because Defendant can charge additional fees, including but not limited to demand fees, inspection fees, overnight delivery fees, fax fees, attorneys fees, and payoff statement charges.

29.    Throughout the time relevant hereto, Defendant Homecomings has engaged in a uniform scheme and course of conduct to inflate its corporate profits by charging and collecting various fees not authorized by the loan documents or applicable law. The components of this scheme involve common tactics, including, but not limited to:

    a.    Unauthorized and excessive "Speedpay" and/or other electronic payment processing fees;

    b.    Assessment of charges of unnecessary and unauthorized property inspections;

    c.    Improper and excessive assessment of late fees; and

    d.    Other improper charges set out herein.

30.    Defendant charges customers a monthly "Speedpay" or "pay by phone fee" of $7.50 to $10.00 or more, merely for the electronic processing of a mortgage payment. Customers are

9

forced to pay this fee because Defendant loses payments, and Defendant often fails to process checks received through the mail in a timely fashion. Thus, Plaintiff and the Class must pay this fee in order to avoid late fees and other charges. Plaintiff has paid this fee for submitting a payment by phone.

31.    Defendant charges customers multiple, unnecessary, and excessive "property inspection" fees, often on a monthly basis, without any notice that customers' property was being inspected, or any explanation of why any inspection was necessary. When customers of the Class called to ask why the fee was assessed, Defendant responded that it sends people to drive by their homes to confirm that someone is still living there. In reality, most, if not all, monthly inspections are not done at all, even though Defendant claims otherwise. Such fees are not permitted.

32.    Defendant also charges late fees in excess of that permitted by loan documents and other applicable law.

PLAINTIFF, INDIVIDUALLY AND ON BEHALF OF THE PUTATIVE CLASS, MAKES NO CLAIMS PURSUANT TO FEDERAL LAW AND FURTHER MAKES NO CLAIMS WHICH WOULD GIVE RISE TO ANY FEDERAL CAUSE OF ACTION. PLAINTIFF'S CLAIMS ARE BASED SOLELY UPON STATE LAW. ADDITIONALLY, PLAINTIFF ON BEHALF OF HERSELF AND PUTATIVE CLASS MEMBERS, DOES NOT MAKE ANY CLAIM FOR RELIEF, INCLUDING BOTH EQUITABLE RELIEF AND MONETARY DAMAGES, IN EXCESS OF $74,500.00 IN THE AGGREGATE FOR PLAINTIFF OR ANY CLASS MEMBER. UNDER NO CIRCUMSTANCES WOULD THE TOTAL AMOUNT OF RELIEF, INCLUDING BOTH EQUITABLE RELIEF AND MONETARY DAMAGES, EXCEED $74,500.00 IN THE AGGREGATE FOR PLAINTIFF OR EACH CLASS MEMBER. EVEN IF PLAINTIFF AND EACH CLASS MEMBER RECOVERED UNDER EACH COUNT OF THE COMPLAINT, THE TOTAL RECOVERY FOR PLAINTIFF AND EACH PUTATIVE CLASS MEMBER WOULD NOT EXCEED $74,500 IN THE AGGREGATE FOR PLAINTIFF OR EACH CLASS MEMBER AND THE TOTAL DAMAGES FOR THE ENTIRE CLASS WOULD NOT EXCEED $4,995,000, IN THE AGGREGATE, EXCLUDING INTEREST AND COSTS. PLAINTIFF, ON BEHALF OF HERSELF AND THE PUTATIVE CLASS, STATES THAT THE TOTAL DAMAGES FOR THE ENTIRE CLASS, INCLUDING EQUITABLE RELIEF AND MONETARY DAMAGES, ARE $4,995,000 OR LESS, EXCLUDING INTEREST AND COSTS AND UNDER NO CIRCUMSTANCES WILL THE TOTAL DAMAGES, INCLUDING

10

EQUITABLE RELIEF AND MONETARY DAMAGES, FOR PLAINTIFF AND THE ENTIRE CLASS, IN THE AGGREGATE, EXCEED $4,995,000, EXCLUDING INTEREST AND COSTS.

## FIRST CAUSE OF ACTION

### MISREPRESENTATION

33.    Plaintiff adopts, re-alleges and incorporates herein each and every allegation in Paragraphs 1 through 32, as though fully set forth herein.

34.    At all times material hereto, the Defendant was under a duty to not misrepresent the true nature of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, and "pay by phone" fees. Defendant intentionally, recklessly or negligently misrepresented that the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, and "pay by phone" fees were legitimate charges, when in fact, such charges were improper as set out herein.

35.    The Defendant intentionally misled its customers as to the true nature and purpose of their above "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, and "pay by phone" fees for the purpose of persuading customers to pay such charges without question or negotiation. At the time Defendant made these representations to Plaintiff, Defendant knew that these representations were false.

36.    Specifically, Defendant misrepresented to Plaintiff and other members of the putative class the following information:

    a.    By misrepresenting that the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, and "pay by phone" fees are legitimate charges.

    b.    By misrepresenting the other facts set out herein.

11

c.     By misrepresenting that such fees bore a rational relationship to expenses

actually incurred by Defendant.

37.     By intentionally, recklessly or negligently misrepresenting the nature of the

"property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, and "pay by

phone" fees. as set out herein, the Defendant has taken advantage of Plaintiff and other putative

class members, who based upon such misrepresentations, were misled into paying such fees and

charges.

38.     Defendant's misrepresentations has damaged Plaintiff and other putative class

members for which damages are sought.

WHEREFORE PREMISES CONSIDERED, Plaintiff, on behalf of herself and others

similarly situated, seeks to recover compensatory and punitive damages and are entitled to damages

in an amount which does not exceed $74,500.00 in the aggregate for Plaintiff and each class

member.

## SECOND CAUSE OF ACTION

### SUPPRESSION

39.     Plaintiff adopts, re-alleges and incorporates herein each and every allegation in

Paragraphs 1 through 38, as though fully set forth herein.

40.     Defendant suppressed or concealed from their customers the true nature of their fees

and charges as set out hereinabove, with the result that customers paid such charges without question

or negotiation.  At the time Defendant suppressed this information from Plaintiff, Defendant knew

or should have known that they were under a duty to communicate the true nature of their fees and

charges.

12

41.    By suppressing the nature of their fees and charges and not disclosing material information concerning such fees and charges, Defendant has taken advantage of Plaintiff, who based upon such omissions, were misled into paying such fees and charges. Specifically, Defendant failed to disclose the following facts:

    a.    That Defendant was deceptively placing "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, and "pay by phone" fees on Plaintiff and other customers' invoices so that these charges would be paid without their conscious permission, which resulted in Defendant's engagement in unfair and fraudulent business practices.

    b.    The true nature of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, and "pay by phone" fees and the fact that such fees and charges are not necessary.

    c.    The true nature, including the excessiveness thereof, of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, and "pay by phone" fees.

    d.    That Defendant was charging improper "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, and "pay by phone" fees than allowed by law.

    e.    That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, and "pay by phone" fees are excessive and not allowed by law or by the contract;

    f.    That Plaintiff and other customers were not required to pay the "property

inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, and
"pay by phone" fees.

g.  That Defendant would fail to send Plaintiff and other customers enough
information to make an informed decision regarding the "property
inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees,
and "pay by phone" fees.

h.  The unconscionability of the fees and the fact that Defendant was engaging
in unconscionable practices as set out herein.

i.  The fact that Defendant was unilaterally increasing payments when it is not
allowed by law or the contract.

j.  That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff
fees, wire fees, and "pay by phone" fees are excessive.

k..  That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff
fees, wire fees, and "pay by phone" fees are not legitimate charges.

l.  That the late fees are not rationally related to any damage suffered by
Defendant and/or that such fees are "penalties" under applicable law;

m.  The other facts set out herein.

n.  That such fees bore a rational relationship to expenses actually incurred by
Defendant.

Defendant also failed to disclose other facts as set out herein. Such nondisclosure constitutes
suppression as Defendant knew or should have known of such facts and Defendant further had a
duty to communicate such facts.

14

42.    Defendant's suppression has damaged Plaintiff and putative class members.  As a result, damages are sought.

WHEREFORE PREMISES CONSIDERED, Plaintiff, on behalf of herself and others similarly situated, seeks to recover compensatory and punitive damages and are entitled to damages in an amount which do not exceed $74,500.00 in the aggregate for Plaintiff and each class member.

## THIRD CAUSE OF ACTION

## BREACH OF CONTRACT

43.    Plaintiff adopts, re-alleges and incorporates herein each and every allegation in Paragraphs 1 through 42 as though fully set forth herein.

44.    Defendant services loans evidenced by standard form notes and mortgages, the relevant provisions of which are uniform.

45.    Defendant has imposed or collected amounts that are not due and owing by contract and/or applicable law including, without limitation, property inspection fees, late fees, fax payoff fees, wire fees, "pay by phone" fees, "Speedpay" fees, payment processing fees, and other improper fees.

46.    Defendant has misapplied or failed to apply payments, or imposed late fees and other charges not due, all in breach of its contracts with Plaintiff and members of the class.

47.    Defendant's improper practices as set out heretofore constitute a breach of contract for which Plaintiff and putative class members have been damaged. Such breaches of contract are ongoing and continue today. Defendant's practices caused Plaintiff and putative class members to pay excessive, unearned and unnecessary fees and charges. Plaintiff and putative class members are entitled to compensatory damages in an amount equal to the improper and excessive fees and

15

charges paid to the Defendant, plus interest.

WHEREFORE PREMISES CONSIDERED, Plaintiff and putative class members seek to recover compensatory damages and are entitled to damages in an amount which do not exceed $74,500.00 in the aggregate for Plaintiff and each class member.

## FOURTH CAUSE OF ACTION

### CONSPIRACY

48.    Plaintiff adopts, re-alleges and incorporates herein each and every allegation in Paragraphs 1 through 47, as though fully set forth herein.

49.    Defendant conspired and combined among itself and unnamed third parties, including fictitious parties, to do the acts complained herein. Plaintiff and putative class members have been billed and Plaintiff and putative class members have paid improper fees and charges to Defendant and its affiliated entities, for which Plaintiff and putative class members have been damaged.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, on behalf of herself and putative class members, seek to recover and are entitled to compensatory and punitive damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiff and each class member.

## FIFTH CAUSE OF ACTION

### UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

50.    Plaintiff adopts, re-alleges and incorporates herein each and every allegation in Paragraphs 1 through 49, as though fully set forth herein.

51.    Defendant, by suppressing from Plaintiff and putative class members the material facts set forth herein, by misrepresenting the material facts set forth herein and by engaging in the

16

other unlawful and wrongful conduct set out herein, knowingly obtained or exerted unauthorized control over Plaintiff's property and putative class members' property with the intent to deprive Plaintiff and putative class members of their property and/or knowingly obtained control over said property by deception and with the intent to deprive Plaintiff and putative class members of their property by:

a.    creating or confirming an impression in Plaintiff and putative class members which was false and which Defendant did not believe to be true; and/or

b.    failing to correct a false impression which Defendant previously created or affirmed; and/or

c.    failing to correct a false impression which Defendant was under a duty to correct; and/or

d.    preventing Plaintiff and putative class members from acquiring information pertinent to the disposition of their property and/or

e.    the other actions and/or inactions set out herein.

52.    Such illegal and wrongful fees charged to Plaintiff and putative class members by Defendant has resulted in Defendant obtaining money, which in equity and good conscience, belong to Plaintiff and putative class members.

53.    Plaintiff and putative class members further request that the Court impose a Constructive Trust on such monies and require Defendant to repay such monies to Plaintiff and putative class members.

54.    As a direct result thereof, Defendant has been unjustly enriched, and Plaintiff has been injured and damaged and seeks recovery of all monies improperly procured.

17

WHEREFORE PREMISES CONSIDERED, Plaintiff, on behalf of herself and putative class members, seeks to recover and are entitled to damages in an amount which do not exceed $74,500.00 in the aggregate for each Plaintiff and each class member.

## SIXTH CAUSE OF ACTION

### INJUNCTIVE RELIEF

55.    Plaintiff adopts, re-alleges and incorporates herein each and every allegation in Paragraphs 1 through 54, as though fully set forth herein.

56.    Plaintiff and putative class members respectfully request that this Honorable Court enjoin Defendant from collecting such improper and excessive fees and charges and further enjoin Defendant from adding improper fees and charges and/or any other similar fees and charges to Plaintiff's loans and putative class members' loans due to the wrongful and illegal conduct set forth herein.

## SEVENTH CAUSE OF ACTION

### NEGLIGENCE

57.    Plaintiff adopts, re-alleges and incorporates herein each and every allegation in Paragraphs 1 through 56 as though fully set forth herein.

58.    Defendant's conduct as set out herein constitutes negligence. Such conduct has proximately caused damage to Plaintiff and putative class members.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, on behalf of herself and putative class members, seeks to recover compensatory damages in an amount which does not exceed

$74,500.00 in the aggregate for Plaintiff and each class member.

Respectfully submitted,


/s/Robert G. Methvin, Jr.
Robert G. Methvin, Jr. (MET009)
Attorney for Plaintiff

**OF COUNSEL:**
**MCCALLUM, METHVIN & TERRELL, P.C.**
2201 Arlington Avenue South
Birmingham, Alabama 35205
(205) 939-0199 - telephone
(205) 939-0399 - facsimile

Albert Adams
Post Office Box 670
Eufaula, AL 36072-0670
(334) 687-1326 - telephone
(866) 910-9989 - facsimile


**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL:**

Homecomings Financial, LLC
c/o CSC Lawyers Incorporating Services, Inc.
150 South Perry Street
Montgomery, AL 36104

19

## Exhibit 2

**Robinson First Amended Complaint**

ELECTRONICALLY FILED
6/5/2008 1:08 PM
CV-2008-900007.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
DAVID NIX, CLERK

## IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
### Eufaula Division

| | |
|---|---|
| **RUBY ROBINSON and WILLIE CLARA HILL,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Civil Action No.: CV-2008-900007** |
| | ) |
| **HOMECOMINGS FINANCIAL, LLC** | ) |
| **f/k/a HOMECOMINGS FINANCIAL** | ) |

**NETWORK, INC., and Fictitious Defendants "A", "B", and "C",** being the correct legal name of Defendant known only to the Plaintiffs as Homecomings Financial, LLC f/k/a Homecomings Financial Network, Inc.; **"D", "E",** and **"F",** whether singular or plural, being the person, firm, association, corporation, or other entity who made intentional, negligent and/or reckless misrepresentations, and suppressed or concealed the truth from Plaintiffs; **"G", "H" and "I",** whether singular or plural, being the person, corporation, firm, association, or other entity who negligently caused injury and damage to Plaintiffs, and/or who breached a contract with Plaintiffs, and/or who became unjustly enriched and/or who should be enjoined from conduct that may injure Plaintiffs; **"J", "K", and "L",** whether singular or plural, being the person, corporation, firm, association, or other entity who conspired to defraud Plaintiffs, and/or who schemed to defraud Plaintiffs; **"M", "N" and "O",** whether singular or plural, being the person, corporation, firm, association, or other entity who is the alter-ego or the predecessor or successor in interest to any of the above-named Defendants; **"P",** whether singular or plural, being the person, corporation, firm, association, or other entity who committed any wrongdoing toward the Plaintiffs giving rise to an action in tort, including but not limited to, negligence, wantonness, and breach of fiduciary duties; **"Q"** whether singular or plural, being the person, corporation, firm, association or other entity who is the principal of the Defendants; and **"R",** being the unidentified agent who is described throughout this Complaint,

| | |
|---|---|
| | ) |
| **Defendant.** | ) |

## AMENDED CLASS ACTION COMPLAINT

COME NOW the Plaintiffs, Ruby Robinson ("Robinson") and Willie Clara Hill ("Hill"),

individually and on behalf of a class of all persons or entities in Alabama who are similarly situated,

and file this Amended Class Action Complaint against the Defendant, HOMECOMINGS

FINANCIAL, LLC f/k/a HOMECOMINGS FINANCIAL NETWORK, INC. ("Homecomings")

and/or "Defendant" and other fictitious parties as set out herein. Plaintiffs adopt and incorporate

all previous allegations contained in the original complaint. In support thereof, the Plaintiffs state

the following:

## NATURE OF THE CASE

1.      Through a fraudulent, unlawful and unfair course of conduct, Defendant has,

over the course of years, billed improper fees, costs and charges, including property inspection fees,

late fees, fax payoff fees, wire fees, "pay by phone" fees, and fees for using its "Speedpay"

automated payment system to Plaintiffs and Defendant's other Alabama customers.  The fees and

charges are fraudulent, excessive, unnecessary, mischaracterized, unconscionable, misleading, and

not collectable.

2.      Defendant assesses these improper fees, costs and charges (collectively the

"improper charges") to borrowers' accounts in order to maximize their profits, and with the goal of

putting borrowers into default status.  It then demands payment in various contexts including,

without limitation, monthly bills, reinstatement demands, payoff statements, court pleadings,

collection letters and collection calls.  Defendant then collects the improper charges from borrowers'

monthly payments, and also from the proceeds of foreclosure sales and loan payoffs.

3.      Defendant charges customers a monthly "Speedpay" fee, merely for the electronic

processing of a mortgage payment.  Customers are forced to pay this fee because Defendant often

does not process checks received through the mail in a reliable or timely fashion, resulting in

additional fees.

4.      Defendant charges customers multiple, unnecessary "property inspection" fees,

sometimes on a monthly basis, and sometimes multiple times in one month.  When customers call

to ask why the fee was assessed, Defendant responds that it needs to confirm that someone is still

living in the house.  Defendant, in many instances, never performs the property inspection.  The

2

property inspection fee is always in an amount in excess of the actual cost of the alleged "property inspection".

5.      Defendant structures account statements in a way that makes it extremely difficult or impossible for borrowers to determine how much they owe, or how any mortgage payment will be allocated.  When customers call for clarification, or to correct a charge they believe is in error, Defendant diverts customers through a remote, understaffed and undertrained call center hotline. Customers seldom or never talk with the same representative twice, and the representative on the line is almost always looking at the customer's account for the first time.  Defendant's representatives regularly refuse or fail to provide necessary information or to correct problems.

6.      The improper charges described herein have a snowball effect, often forcing the consumers into default status and foreclosure, resulting in further improper and unauthorized fees and charges.

7.      Defendant routinely treats borrowers as if the borrowers are in default on their loans, even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements.

8.      Plaintiff Robinson's home-secured loan was serviced by Defendant Homecomings during the period covered by this action, and she was assessed improper charges by Homecomings, as detailed herein.  The mortgage loan was entered into in Barbour County, Alabama on or about September 2, 2005.  Defendant Homecomings, by and through various agents and employees, made misrepresentations at this time and after the loan closing, suppressed material facts from Plaintiff Robinson at this time and after the closing, and engaged in other misconduct as set out herein. Plaintiff Robinson relied upon such fraud and reasonably believed that Defendant Homecomings

3

would not engage in the other misconduct alleged herein.  Plaintiff Robinson was proximately

damaged as a result of such fraud and other misconduct.

9.    Plaintiff Hill's home-secured loan was serviced by Defendant Homecomings during

the period covered by this action, and she was assessed improper charges by Homecomings, as

detailed herein.  The mortgage loan was entered into in Barbour County, Alabama on or about

October 1, 1999.  Defendant Homecomings, by and through various agents and employees, made

misrepresentations at this time and after the loan closing, suppressed material facts from Plaintiff

Hill at this time and after the closing, and engaged in other misconduct as set out herein.  Plaintiff

Hill relied upon such fraud and reasonably believed that Defendant Homecomings would not engage

in the other misconduct alleged herein.  Plaintiff Hill was proximately damaged as a result of such

fraud and other misconduct.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action.  Defendant does business in the

State of Alabama and has received and continues to receive substantial revenue and profits from

the improper charges in the State of Alabama.  Defendant transacts business in Barbour County,

Alabama and has received and continues to receive substantial revenue and profits from the

improper charges in Barbour County, Alabama and has further made material omissions and

misrepresentations, as well as engaged in other misconduct, in Barbour County, Alabama.

11.    Venue in this case is proper in the Eufaula Division of Barbour County, Alabama,

in that a substantial portion of the conduct of the Defendant which forms the basis of this action

occurred in such venue, and Plaintiffs reside in such venue.

## PARTIES

4

12.      Plaintiff Robinson is a resident citizen of the Eufaula Division of Barbour County, Alabama.  Plaintiff Hill is a resident citizen of the Eufaula Division of Barbour County, Alabama.

13.      Defendant Homecomings Financial, LLC is a Delaware corporation which is qualified to do business and is doing business in the State of Alabama and which has its principal place of business at 8400 Normandale Lake Boulevard, Suite 250, Minneapolis, Minnesota 55437.  It's appointed agent for service of process in Alabama is CSC Lawyers Incorporating Service, Inc., 150 South Perry Street, Montgomery, Alabama 36104.

14.      Defendants fictiously described as "A," "B," and "C," are otherwise unknown to Plaintiffs at this time, or if their identities are known to Plaintiffs at this time, their identity as proper party Defendants is not known to Plaintiffs at this time, but their true and correct names will be substituted by amendment when the aforesaid information is ascertained.  It is alleged that Defendant HOMECOMINGS FINANCIAL, LLC f/k/a HOMECOMINGS FINANCIAL NETWORK, INC. is responsible for the actions or inactions of the above fictitious parties under the doctrines of respondeat superior, joint and several liability, conspiracy, agency and/or other doctrines.  It is further alleged that the fictitious Defendants are responsible for the actions or inactions of Defendant HOMECOMINGS FINANCIAL, LLC f/k/a HOMECOMINGS FINANCIAL NETWORK, INC. and its agents and employees under the doctrines of respondeat superior, joint and several liability, conspiracy, agency and/or other doctrines.  Defendant HOMECOMINGS FINANCIAL, LLC f/k/a HOMECOMINGS FINANCIAL NETWORK, INC. is responsible for the actions and/or inactions of each other, under the doctrines of respondeat superior, joint and several liability, agency, conspiracy, and/or other doctrines.

5

15.     The Defendant does business in Barbour County, Alabama and the Defendant acted in concert by marketing and collecting money from the improper charges through the coordinated inter-corporate relationship.    Defendant was and is an active participant in the misleading, unlawful, fraudulent, and unconscionable practices described herein.

16.     At all relevant times, Defendant was an agent, representative and/or employer of fictitious Defendants.  In committing the acts alleged herein, Defendant acted within the scope of its agency and/or employment and was acting with the consent, permission, authorization and knowledge and perpetrated and/or conspired with and/or aided and abetted the unlawful, improper, and fraudulent acts described herein.

17.     Plaintiffs bring this action as an Alabama class action pursuant to Rule 23 of the Alabama Rules of Civil Procedure.  This class is more specifically defined as follows: "all Alabama residents who paid late fees, property inspection fees, "Speed pay" fees, fax payoff fees, wire fees, and "pay by phone" fees and/or other similar charges to Defendant."  Plaintiffs maintain the right to create subclasses, if necessary.

18.     Excluded from the proposed class are the Defendants, any entity in which Defendant has a controlling interest and any agents, employees, officers and/or directors of the Defendant or any other such entities and their representatives, heirs, successor and/or assigns, as well as any people who paid the alleged improper charges to Defendant and who are or where in bankruptcy and received a discharge within the time period six years prior to the filing of this complaint.

19.     The exact number of Class members is unknown to Plaintiffs at this time, but such information can be ascertained through appropriate discovery, specifically from records maintained by Homecomings and its agents.

6

## EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS OF
## LAW AND FACT

20.     There are common questions of law and fact applicable to the class.  These

common questions of law and fact predominate over any questions affecting only individual

members of the class. Said common questions include, but are not limited to, the following:

a.      Whether Defendant engaged in a widespread and systematic practice of charging

excessive amounts for the fees at issue in this case.

b.      Whether the fees at issue in this case are designed as profit enhancers for the

Defendant.

c.      Whether the charging of the fees at issue in this case constitute breaches of contract.

d.      Whether the charging of the fees at issue in this case are inconsistent with applicable

law.

e.      Whether it would be inequitable and unjust for the Defendant to retain the monies

received from the wrongful and excessive fees at issue in this case.

f.      Whether Defendant conspired to commit the wrongful acts alleged herein.

g.      Whether Plaintiffs and class members are entitled to class relief as requested herein.

h.      Whether the fees at issue herein are excessive under the terms of the contract and/or

applicable law.

i.      Whether Defendant assessed charges for unnecessary and unauthorized property

inspections and/or whether such property inspection fees are excessive.

j.      Whether Defendant assessed improper and excessive late fees.

k.      Whether the late fees are intended to be a penalty.

l.      Whether Defendant charged borrowers unauthorized and excessive "Speedpay"

7

and/or other electronic payment processing fees.

m.    Whether Defendant assessed improper and excessive fax payoff fees and wire fees.

n.    Whether Defendant's practice of invoicing and assessing borrowers for the fees at issue in this case is consistent with the terms and language of the customer contracts.

o.    Whether Defendant has been unjustly enriched by assessing and collecting the fees at issue in this case.

p.    Whether Defendant has ceased charging the improper and excessive fees at issue in this case.

q.    Whether an injunction is necessary to keep Defendant from charging the unnecessary and excessive fees in this case.

r.    Whether the fees at issue in this case are unconscionable.

## TYPICALITY AND NUMEROSITY

21.    The claims of the named Plaintiffs are typical of the claims of the class.  The proposed class exceeds 40 members.

## ADEQUATE REPRESENTATION

22.    The Plaintiffs will fairly and adequately protect the interests of the members of the class and have no interest antagonistic to those of other class members.  Plaintiffs have retained class counsel competent to prosecute class actions and such class counsel are financially able to represent the class.

## SUPERIORITY

23.    The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable.

8

The interests of judicial economy favor adjudicating the claims for the Plaintiffs class rather than on an individual basis.

24.    Questions of law and fact predominate over any questions affecting only individual members.

## **FACTUAL ALLEGATIONS**

25.    Plaintiffs and putative class members took out a mortgage through a local lender. Defendant has engaged in the unfair, unlawful, fraudulent, wrongful and deceptive practice of adding and/or force-placing the fees, costs and charges on plaintiffs and putative class members' accounts.

26.    The right to service these mortgage loans closed through a local lender is often farmed out to a third-party "mortgage servicer," such as the Defendant, who only profit from the fees and other charges that can be generated on servicing the mortgages.  According to a study done by the Mortgage Bankers Association of America, mortgage servicers average only $60 per loan per year in net profit.  Thus, they have a strong incentive to impose any fees and charges they can to increase their profit margin.

27.    Defendant Homecomings service loans on behalf of mortgage lenders, not Plaintiffs and the Class.  Defendant Homecomings's "customers" are a captive audience.  The customers have no choice in who services their loans.  They have no option to changes servicers if they are unhappy in any way.

28.    Because its "customers" have no way out, Defendant also has no incentive to offer good customer service.  Because Defendant has demonstrated that they will force customers into default and foreclosure, Plaintiffs and the Class are forced to pay the illegal, unnecessary and

9

excessive charges.

29.     Mortgage servicing abuses, such as those alleged herein, are standard operating procedure for Defendant Homecomings and certain other mortgage servicers, as part of their goal to maximize profits on the backs of struggling homeowners.  Defendant makes even more profits if a loan goes into default, because Defendant can charge additional fees, including but not limited to demand fees, inspection fees, overnight delivery fees, fax fees, attorneys fees, and payoff statement charges.

30.     Throughout the time relevant hereto, Defendant Homecomings has engaged in a uniform scheme and course of conduct to inflate its corporate profits by charging and collecting various fees not authorized by the loan documents or applicable law.  The components of this scheme involve common tactics, including, but not limited to:

      a.      Unauthorized and excessive "Speedpay" and/or other electronic payment processing fees;

      b.      Assessment of charges of unnecessary and unauthorized property inspections;

      c.      Improper and excessive assessment of late fees; and

      d.      Other improper charges set out herein.

31.     Defendant charges customers a monthly "Speedpay" or "pay by phone fee" of $7.50 to $10.00 or more, merely for the electronic processing of a mortgage payment.  Customers are forced to pay this fee because Defendant loses payments, and Defendant often fails to process checks received through the mail in a timely fashion.  Thus, Plaintiffs and the Class must pay this fee in order to avoid late fees and other charges.  Plaintiffs have paid this fee for submitting a payment by

10

phone.

32.     Defendant charges customers multiple, unnecessary, and excessive "property inspection" fees, often on a monthly basis, without any notice that customers' property was being inspected, or any explanation of why any inspection was necessary.  When customers of the Class called to ask why the fee was assessed, Defendant responded that it sends people to drive by their homes to confirm that someone is still living there.  In reality, most, if not all, monthly inspections are not done at all, even though Defendant claims otherwise.  Such fees are not permitted.

33.     Defendant also charges late fees in excess of that permitted by loan documents and other applicable law.

**PLAINTIFFS, INDIVIDUALLY AND ON BEHALF OF THE PUTATIVE CLASS, MAKE NO CLAIMS PURSUANT TO FEDERAL LAW AND FURTHER MAKE NO CLAIMS WHICH WOULD GIVE RISE TO ANY FEDERAL CAUSE OF ACTION. PLAINTIFFS' CLAIMS ARE BASED SOLELY UPON STATE LAW.  ADDITIONALLY, PLAINTIFFS ON BEHALF OF THEMSELVES AND PUTATIVE CLASS MEMBERS, DO NOT MAKE ANY CLAIM FOR RELIEF, INCLUDING BOTH EQUITABLE RELIEF AND MONETARY DAMAGES, IN EXCESS OF $74,500.00 IN THE AGGREGATE FOR EITHER PLAINTIFF OR ANY CLASS MEMBER.  UNDER NO CIRCUMSTANCES WOULD THE TOTAL AMOUNT OF RELIEF, INCLUDING BOTH EQUITABLE RELIEF AND MONETARY DAMAGES, EXCEED $74,500.00 IN THE AGGREGATE FOR PLAINTIFFS OR EACH CLASS MEMBER.  EVEN IF PLAINTIFFS AND EACH CLASS MEMBER RECOVERED UNDER EACH COUNT OF THE COMPLAINT, THE TOTAL RECOVERY FOR EACH PLAINTIFF AND EACH PUTATIVE CLASS MEMBER WOULD NOT EXCEED $74,500 IN THE AGGREGATE FOR EACH PLAINTIFF OR EACH CLASS MEMBER AND THE TOTAL DAMAGES FOR THE ENTIRE CLASS WOULD NOT EXCEED $4,995,000, IN THE AGGREGATE, EXCLUDING INTEREST AND COSTS. PLAINTIFFS, ON BEHALF OF THEMSELVES AND THE PUTATIVE CLASS, STATE THAT THE TOTAL DAMAGES FOR THE ENTIRE CLASS, INCLUDING EQUITABLE RELIEF AND MONETARY DAMAGES, ARE $4,995,000 OR LESS, EXCLUDING INTEREST AND COSTS AND UNDER NO CIRCUMSTANCES WILL THE TOTAL DAMAGES, INCLUDING EQUITABLE RELIEF AND MONETARY DAMAGES, FOR EACH PLAINTIFF AND THE ENTIRE CLASS, IN THE AGGREGATE, EXCEED $4,995,000, EXCLUDING INTEREST AND COSTS.**

11

**FIRST CAUSE OF ACTION**

**MISREPRESENTATION**

34.     Plaintiffs adopt, re-allege and incorporate herein each and every allegation in

Paragraphs 1 through 33, as though fully set forth herein.

35.     At all times material hereto, the Defendant was under a duty to not misrepresent

the true nature of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire

fees, and "pay by phone" fees.  Defendant intentionally, recklessly or negligently misrepresented

that the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, and "pay

by phone" fees were legitimate charges, when in fact, such charges were improper as set out herein.

36.     The Defendant intentionally misled its customers as to the true nature and purpose

of their above "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, and

"pay by phone" fees for the purpose of persuading customers to pay such charges without question

or negotiation.  At the time Defendant made these representations to Plaintiffs, Defendant knew that

these representations were false.

37.     Specifically, Defendant misrepresented to Plaintiffs and other members of the

putative class the following information:

a.     By misrepresenting that the "property inspection" fees, late fees, "Speedpay"

fees, fax payoff fees, wire fees, and "pay by phone" fees are legitimate

charges.

b.     By misrepresenting the other facts set out herein.

c.     By misrepresenting that such fees bore a rational relationship to expenses

actually incurred by Defendant.

12

38.    By intentionally, recklessly or negligently misrepresenting the nature of the

"property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, and "pay by

phone" fees.  as set out herein, the Defendant has taken advantage of Plaintiffs and other putative

class members, who based upon such misrepresentations, were misled into paying such fees and

charges.

39.    Defendant's misrepresentations has damaged Plaintiffs and other putative class

members for which damages are sought.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and others

similarly situated, seek to recover compensatory and punitive damages and are entitled to damages

in an amount which does not exceed $74,500.00 in the aggregate for each Plaintiff and each class

member.

## SECOND CAUSE OF ACTION

### SUPPRESSION

40.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in

Paragraphs 1 through 39, as though fully set forth herein.

41.    Defendant suppressed or concealed from their customers the true nature of their fees

and charges as set out hereinabove, with the result that customers paid such charges without question

or negotiation.  At the time Defendant suppressed this information from Plaintiffs, Defendant knew

or should have known that they were under a duty to communicate the true nature of their fees and

charges.

42.    By suppressing the nature of their fees and charges and not disclosing material

information concerning such fees and charges, Defendant has taken advantage of Plaintiffs, who

13

based upon such omissions, were misled into paying such fees and charges. Specifically, Defendant

failed to disclose the following facts:

a.    That Defendant was deceptively placing "property inspection" fees, late

charges, "Speedpay" fees, fax payoff fees, wire fees, and "pay by phone" fees

on Plaintiffs and other customers' invoices so that these charges would be

paid without their conscious permission, which resulted in Defendant's

engagement in unfair and fraudulent business practices.

b.    The true nature of the "property inspection" fees, late fees, "Speedpay" fees,

fax payoff fees, wire fees, and "pay by phone" fees and the fact that such fees

and charges are not necessary.

c.    The true nature, including the excessiveness thereof, of the "property

inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, and

"pay by phone" fees.

d.    That Defendant was charging improper "property inspection" fees, late fees,

"Speedpay" fees, fax payoff fees, wire fees, and "pay by phone" fees than

allowed by law.

e.    That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff

fees, wire fees, and "pay by phone" fees are excessive and not allowed by

law or by the contract;

f.    That Plaintiffs and other customers were not required to pay the "property

inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, and

"pay by phone" fees.

14

g.      That Defendant would fail to send Plaintiffs and other customers enough information to make an informed decision regarding the "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, and "pay by phone" fees.

h.      The unconscionability of the fees and the fact that Defendant was engaging in unconscionable practices as set out herein.

i.      The fact that Defendant was unilaterally increasing payments when it is not allowed by law or the contract.

j.      That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, and "pay by phone" fees are excessive.

k..      That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, and "pay by phone" fees are not legitimate charges.

l.      That the late fees are not rationally related to any damage suffered by Defendant and/or that such fees are "penalties" under applicable law;

m.      The other facts set out herein.

n.      That such fees bore a rational relationship to expenses actually incurred by Defendant.

Defendant also failed to disclose other facts as set out herein.  Such nondisclosure constitutes suppression as Defendant knew or should have known of such facts and Defendant further had a duty to communicate such facts.

43.      Defendant's suppression has damaged Plaintiffs and putative class members.  As a result, damages are sought.

15

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and others similarly situated, seeks to recover compensatory and punitive damages and are entitled to damages in an amount which do not exceed $74,500.00 in the aggregate for each Plaintiff and each class member.

## THIRD CAUSE OF ACTION

## BREACH OF CONTRACT

44.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 43 as though fully set forth herein.

45.    Defendant services loans evidenced by standard form notes and mortgages, the relevant provisions of which are uniform.

46.    Defendant has imposed or collected amounts that are not due and owing by contract and/or applicable law including, without limitation, property inspection fees, late fees, fax payoff fees, wire fees, "pay by phone" fees, "Speedpay" fees, payment processing fees, and other improper fees.

47.    Defendant has misapplied or failed to apply payments, or imposed late fees and other charges not due, all in breach of its contracts with Plaintiffs and members of the class.

48.    Defendant's improper practices as set out heretofore constitute a breach of contract for which Plaintiffs and putative class members have been damaged. Such breaches of contract are ongoing and continue today. Defendant's practices caused Plaintiffs and putative class members to pay excessive, unearned and unnecessary fees and charges.  Plaintiffs and putative class members are entitled to compensatory damages in an amount equal to the improper and excessive fees and charges paid to the Defendant, plus interest.

16

WHEREFORE PREMISES CONSIDERED, Plaintiffs and putative class members seek to recover compensatory damages and are entitled to damages in an amount which do not exceed $74,500.00 in the aggregate for each Plaintiff and each class member.

## FOURTH CAUSE OF ACTION

### CONSPIRACY

49.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 48, as though fully set forth herein.

50.    Defendant conspired and combined among itself and unnamed third parties, including fictitious parties, to do the acts complained herein.  Plaintiffs and putative class members have been billed and Plaintiffs and putative class members have paid improper fees and charges to Defendant and its affiliated entities, for which Plaintiffs and putative class members have been damaged.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover and are entitled to compensatory and punitive damages in an amount which does not exceed $74,500.00 in the aggregate for each Plaintiff and each class member.

## FIFTH CAUSE OF ACTION

### UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

51.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 50, as though fully set forth herein.

52.    Defendant, by suppressing from Plaintiffs and putative class members the material facts set forth herein, by misrepresenting the material facts set forth herein and by engaging in the other unlawful and wrongful conduct set out herein, knowingly obtained or exerted unauthorized control over Plaintiffs' property and putative class members' property with the intent to deprive

17

Plaintiffs and putative class members of their property and/or knowingly obtained control over said

property by deception and with the intent to deprive Plaintiffs and putative class members of their

property by:

    a.    creating or confirming an impression in Plaintiffs and putative class members which was false and which Defendant did not believe to be true; and/or

    b.    failing to correct a false impression which Defendant previously created or affirmed; and/or

    c.    failing to correct a false impression which Defendant was under a duty to correct; and/or

    d.    preventing Plaintiffs and putative class members from acquiring information pertinent to the disposition of their property and/or

    e.    the other actions and/or inactions set out herein.

53.    Such illegal and wrongful fees charged to Plaintiffs and putative class members by

Defendant has resulted in Defendant obtaining money, which in equity and good conscience, belong

to Plaintiffs and putative class members.

54.    Plaintiffs and putative class members further request that the Court impose a

Constructive Trust on such monies and require Defendant to repay such monies to Plaintiffs and

putative class members.

55.    As a direct result thereof, Defendant has been unjustly enriched, and Plaintiffs

have been injured and damaged and seeks recovery of all monies improperly procured.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative

class members, seek to recover and are entitled to damages in an amount which do not exceed

$74,500.00 in the aggregate for each Plaintiff and each class member.

## SIXTH CAUSE OF ACTION

### INJUNCTIVE RELIEF

56.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 55, as though fully set forth herein.

57.    Plaintiffs and putative class members respectfully request that this Honorable Court enjoin Defendant from collecting such improper and excessive fees and charges and further enjoin Defendant from adding improper fees and charges and/or any other similar fees and charges to Plaintiffs' loans and putative class members' loans due to the wrongful and illegal conduct set forth herein.

## SEVENTH CAUSE OF ACTION

### NEGLIGENCE

58.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 57 as though fully set forth herein.

59.    Defendant's conduct as set out herein constitutes negligence.  Such conduct has proximately caused damage to Plaintiffs and putative class members.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover compensatory damages in an amount which does not

exceed $74,500.00 in the aggregate for each Plaintiff and each class member.

Respectfully submitted,


/s/Robert G. Methvin, Jr.
Robert G. Methvin, Jr. (MET009)
Attorney for Plaintiffs

**OF COUNSEL:**
**McCALLUM, METHVIN & TERRELL, P.C.**
2201 Arlington Avenue South
Birmingham, Alabama 35205
(205) 939-0199 - telephone
(205) 939-0399 - facsimile

Albert Adams
Post Office Box 670
Eufaula, AL 36072-0670
(334) 687-1326 - telephone
(866) 910-9989 - facsimile


## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2008, I electronically filed the foregoing with the Clerk of Court using the Alacourt system, which will send notification of such filing to that person whose address is listed below:

John E. Goodman
D. Brian O'Dell
Robert R. Maddox
Ann T. Taylor
Bradley, Arant, Rose & White, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203


/s/Robert G. Methvin, Jr.
OF COUNSEL

**Exhibit 3**

**Chatman Original Complaint**



**AlaFile E-Notice**

69-CV-2008-900015.00

To:  ROBERT METHVIN
     rgm@mmlaw.net

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

MARCUS CHATMAN ET AL v. GMAC LLC
69-CV-2008-900015.00

The following complaint was FILED on 4/10/2008 3:56:24 PM

Notice Date:    4/10/2008 3:56:24 PM

**DAVID NIX**
**CIRCUIT COURT CLERK**
BARBOUR COUNTY, ALABAMA
303 EAST BROAD STREET
EUFAULA, AL 36027

334-687-1500
david.nix@alacourt.gov

State of Alaban. a
Unified Judicial System

Form ARCiv-93   Rev.5/99

## COVER SHEET
## CIRCUIT COURT - CIVIL CASE
(Not For Domestic Relations Cases)

Case Number:

**69-CV-200**

Date of Filing:
04/10/2008

ELECTRONICALLY FILED
4/10/2008 3:56 PM
CV-2008-900015.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
DAVID NIX, CLERK

---

## GENERAL INFORMATION

### IN THE CIRCUIT OF BARBOUR COUNTY, ALABAMA
### MARCUS CHATMAN ET AL v. GMAC LLC

**First Plaintiff:** ☐ Business ☑ Individual   **First Defendant:** ☑ Business ☐ Individual
☐ Government ☐ Other                          ☐ Government ☐ Other

---

## NATURE OF SUIT:

**TORTS: PERSONAL INJURY**

☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonnes
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☐ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**

☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**

☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS  (cont'd)**

☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture
Appeal/Enforcement of Agency Subpoena/Petition to
Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP-Contempt of Court
☐ CONT-Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND- Equity Non-Damages Actions/Declaratory
Judgment/Injunction Election Contest/Quiet Title/Sale For
Division
☐ CVUD-Eviction Appeal/Unlawfyul Detainer
☐ FORJ-Foreign Judgment
☐ FORF-Fruits of Crime Forfeiture
☐ MSHC-Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB-Protection From Abuse
☐ FELA-Railroad/Seaman (FELA)
☐ RPRO-Real Property
☐ WTEG-Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP-Workers' Compensation
☑ CVXX-Miscellaneous Circuit Civil Case

---

**ORIGIN:**   F ☑ INITIAL FILING     A ☐ APPEAL FROM       O ☐ OTHER
                                         DISTRICT COURT

              R ☐ REMANDED          T ☐ TRANSFERRED FROM   _____
                                         OTHER CIRCUIT COURT

---

**HAS JURY TRIAL BEEN DEMANDED?**   ☐ Yes  ☑ No

---

**RELIEF REQUESTED:**   ☑ MONETARY AWARD REQUESTED   ☐ NO MONETARY AWARD REQUESTED

---

**ATTORNEY CODE:**   MET009        4/10/2008 3:54:30 PM        /s ROBERT METHVIN

---

**MEDIATION REQUESTED:**   ☐ Yes  ☑ No  ☐ Undecided

ELECTRONICALLY FILED
4/10/2008 3:56 PM
CV-2008-900015.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
DAVID NIX, CLERK

## IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
### Eufaula Division

| | |
|---|---|
| MARCUS CHATMAN and BERKLEY and GEORGINA SQUIRES, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No.: ) |
| GMAC LLC, | ) ) |
| Defendant. | ) |

### CLASS ACTION COMPLAINT

COMES NOW the Plaintiffs, Marcus Chatman ("Chatman") and Berkley and Georgina Squires ("Squires"), individually and on behalf of a class of all persons or entities in Alabama who are similarly situated, file this Class Action Complaint against the Defendant, GMAC LLC ("GMAC") and/or other fictitious parties (hereinafter "Defendant") as set out herein. In support thereof, the Plaintiffs state the following:

### NATURE OF THE CASE

1.      Through a fraudulent, unlawful and unfair course of conduct, Defendant has, over the course of years, billed improper fees, costs and charges, including property inspection fees, late fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and fees for using its "Speedpay" automated payment system to Plaintiffs and Defendant's other Alabama customers. The fees and charges are fraudulent, excessive, unnecessary, mischaracterized, unconscionable, misleading, and not collectable.

2.      Defendant assesses these improper fees, costs and charges (collectively the "improper charges") to borrowers' accounts in order to maximize their profits, and with the goal of putting borrowers into default status. It then demands payment in various contexts including,

without limitation, monthly bills, reinstatement demands, payoff statements, court pleadings, collection letters and collection calls. Defendant then collects the improper charges from borrowers' monthly payments, and also from the proceeds of foreclosure sales and loan payoffs.

3.    Defendant charges customers a monthly "Speedpay" fee, merely for the electronic processing of a mortgage payment. Customers are forced to pay this fee because Defendant often does not process checks received through the mail in a reliable or timely fashion, resulting in additional fees.

4.    Defendant charges customers multiple, unnecessary "property inspection" fees, sometimes on a monthly basis, and sometimes multiple times in one month. Defendant, in many instances, never performs the property inspection. The property inspection fee is always in an amount in excess of the actual cost of the alleged "property inspection". Defendant also charges an "Equity Builder" fee, which is excessive and not allowed by contract.

5.    Defendant structures account statements in a way that makes it extremely difficult or impossible for borrowers to determine how much they owe, or how any mortgage payment will be allocated. When customers call for clarification, or to correct a charge they believe is in error, Defendant diverts customers through a remote, understaffed and undertrained call center hotline. Customers seldom or never talk with the same representative twice, and the representative on the line is almost always looking at the customer's account for the first time. Defendant's representatives regularly refuse or fail to provide necessary information or to correct problems.

6.    The improper charges described herein have a snowball effect, often forcing the consumers into default status and foreclosure, resulting in further improper and unauthorized fees and charges.

2

7.    Defendant routinely treats borrowers as if the borrowers are in default on their loans, even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements.

8.    Plaintiff Chatman's home-secured loan was serviced by Defendant GMAC during the period covered by this action, and he was assessed improper charges by GMAC, as detailed herein. The mortgage loan was entered into in Jefferson County, Alabama. Defendant GMAC, by and through various agents and employees, made misrepresentations at this time and after the loan closing, suppressed material facts from Plaintiff Chatman at this time and after the closing, and engaged in other misconduct as set out herein. Plaintiff Chatman relied upon such fraud and reasonably believed that Defendant GMAC would not engage in the other misconduct alleged herein. Plaintiff Chatman was proximately damaged as a result of such fraud and other misconduct.

9.    Plaintiff Squires's home-secured loan was serviced by Defendant GMAC during the period covered by this action, and he was assessed improper charges by GMAC, as detailed herein. The mortgage loan was entered into in Barbour County, Alabama. Defendant GMAC, by and through various agents and employees, made misrepresentations at this time and after the loan closing, suppressed material facts from Plaintiff Squires at this time and after the closing, and engaged in other misconduct as set out herein. Plaintiff Squires relied upon such fraud and reasonably believed that Defendant GMAC would not engage in the other misconduct alleged herein. Plaintiff Squires was proximately damaged as a result of such fraud and other misconduct.

3

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action. Defendant does business in the State of Alabama and has received and continues to receive substantial revenue and profits from the improper charges in the State of Alabama. Defendant transacts business in the Eufaula Division of Barbour County, Alabama and has received and continues to receive substantial revenue and profits from the improper charges in the Eufaula Division of Barbour County, Alabama and has further made material omissions and misrepresentations, as well as engaged in other misconduct, in the Eufaula Division of Barbour County, Alabama.

11.     Venue in this case is proper in Barbour County, Alabama, in that a substantial portion of the conduct of the Defendant which forms the basis of this action occurred in such venue, and Plaintiff Squires resides in such venue.

## PARTIES

12.     Plaintiff Chatman is a resident citizen of Jefferson County, Alabama.

13.     Plaintiff Squires is a resident citizen of Barbour County, Alabama.

14.     Defendant GMAC LLC is a Delaware corporation which is qualified to do business and is doing business in the State of Alabama and which has its principal place of business at 200 Renaissance Center, Detroit, Michigan 48265. It's appointed agent for service of process in Alabama is The Corporation Company, 2000 Interstate Park Drive, Suite 204, Montgomery, Alabama 36109.

15.     Defendants fictitiously described as "A," "B," and "C," are otherwise unknown to Plaintiffs at this time, or if their identities are known to Plaintiffs at this time, their identity as proper party Defendants is not known to Plaintiffs at this time, but their true and correct names

4

will be substituted by amendment when the aforesaid information is ascertained. It is alleged that Defendant GMAC LLC is responsible for the actions or inactions of the above fictitious parties under the doctrines of respondeat superior, joint and several liability, conspiracy, agency and/or other doctrines. It is further alleged that the fictitious Defendants are responsible for the actions or inactions of Defendant GMAC LLC and its agents and employees under the doctrines of respondeat superior, joint and several liability, conspiracy, agency and/or other doctrines. Defendant GMAC LLC is responsible for the actions and/or inactions of each other, under the doctrines of respondeat superior, joint and several liability, agency, conspiracy, and/or other doctrines.

16.     The Defendant does business in the Eufaula Division of Barbour County, Alabama and the Defendant acted in concert by marketing and collecting money from the improper charges through the coordinated inter-corporate relationship. Defendant was and is an active participant in the misleading, unlawful, fraudulent, and unconscionable practices described herein.

17.     At all relevant times, Defendant was an agent, representative and/or employer of fictitious Defendants. In committing the acts alleged herein, Defendant acted within the scope of its agency and/or employment and was acting with the consent, permission, authorization and knowledge and perpetrated and/or conspired with and/or aided and abetted the unlawful, improper, and fraudulent acts described herein.

18.     Plaintiffs bring this action as an Alabama class action pursuant to Rule 23 of the Alabama Rules of Civil Procedure. This class is more specifically defined as follows: "all Alabama residents who paid late fees, property inspection fees, "Speed pay" fees, fax payoff fees, wire fees, "Equity Builder" fees, "pay by phone" fees and/or other similar charges to

Defendant." Plaintiffs maintain the right to create subclasses, if necessary.

18.     Excluded from the proposed class are the Defendants, any entity in which Defendant

has a controlling interest and any agents, employees, officers and/or directors of the Defendant or

any other such entities and their representatives, heirs, successor and/or assigns, as well as any

people who paid the alleged improper charges to Defendant and who are or where in bankruptcy and

received a discharge within the time period six years prior to the filing of this complaint.

19.     The exact number of Class members is unknown to Plaintiffs at this time, but such

information can be ascertained through appropriate discovery, specifically from records maintained

by GMAC and its agents.

## EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS OF LAW AND FACT

20.     There are common questions of law and fact applicable to the class. These

common questions of law and fact predominate over any questions affecting only individual

members of the class. Said common questions include, but are not limited to, the following:

a.     Whether Defendant engaged in a widespread and systematic practice of charging

excessive amounts for the fees at issue in this case.

b.     Whether the fees at issue in this case are designed as profit enhancers for the

Defendant.

c.     Whether the charging of the fees at issue in this case constitute breaches of contract.

d.     Whether the charging of the fees at issue in this case are inconsistent with applicable

law.

e.     Whether it would be inequitable and unjust for the Defendant to retain the monies

received from the wrongful and excessive fees at issue in this case.

6

f.    Whether Defendant conspired to commit the wrongful acts alleged herein.

g.    Whether Plaintiffs and class members are entitled to class relief as requested herein.

h.    Whether the fees at issue herein are excessive under the terms of the contract and/or
applicable law.

i.    Whether Defendant assessed charges for unnecessary and unauthorized property
inspections and/or whether such property inspection fees are excessive.

j.    Whether Defendant assessed improper and excessive late fees.

k.    Whether the late fees are intended to be a penalty.

l.    Whether Defendant charged borrowers unauthorized and excessive "Speedpay"
and/or other electronic payment processing fees.

m.   Whether Defendant assessed improper and excessive fax, "Equity Builder" fees,
payoff fees and wire fees.

n.    Whether Defendant's practice of invoicing and assessing borrowers for the fees at
issue in this case is consistent with the terms and language of the customer contracts.

o.    Whether Defendant has been unjustly enriched by assessing and collecting the fees
at issue in this case.

p.    Whether Defendant has ceased charging the improper and excessive fees at issue in
this case.

q.    Whether an injunction is necessary to keep Defendant from charging the unnecessary
and excessive fees in this case.

r.    Whether the fees at issue in this case are unconscionable.

## TYPICALITY AND NUMEROSITY

7

21.     The claims of the named Plaintiffs are typical of the claims of the class.  The proposed class exceeds 40 members.

## ADEQUATE REPRESENTATION

22.     The Plaintiffs will fairly and adequately protect the interests of the members of the class and have no interest antagonistic to those of other class members.  Plaintiffs have retained class counsel competent to prosecute class actions and such class counsel are financially able to represent the class.

## SUPERIORITY

23.     The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable. The interests of judicial economy favor adjudicating the claims for the Plaintiffs class rather than on an individual basis.

24.     Questions of law and fact predominate over any questions affecting only individual members.

## FACTUAL ALLEGATIONS

25.     Plaintiffs and putative class members took out a mortgage through a local lender. Defendant has engaged in the unfair, unlawful, fraudulent, wrongful and deceptive practice of adding and/or force-placing the fees, costs and charges on plaintiffs and putative class members' accounts.

26.     The right to service these mortgage loans closed through a local lender is often farmed out to a third-party "mortgage servicer," such as the Defendant, who only profit from the fees and other charges that can be generated on servicing the mortgages.  According to a study done by

the Mortgage Bankers Association of America, mortgage servicers average only $60 per loan per year in net profit. Thus, they have a strong incentive to impose any fees and charges they can to increase their profit margin.

27.     Defendant GMAC service loans on behalf of mortgage lenders, not Plaintiffs and the Class. Defendant GMAC's "customers" are a captive audience. The customers have no choice in who services their loans. They have no option to changes servicers if they are unhappy in any way.

28.     Because its "customers" have no way out, Defendant also has no incentive to offer good customer service. Because Defendant has demonstrated that they will force customers into default and foreclosure, Plaintiffs and the Class are forced to pay the illegal, unnecessary and excessive charges.

29.     Mortgage servicing abuses, such as those alleged herein, are standard operating procedure for Defendant GMAC and certain other mortgage servicers, as part of their goal to maximize profits on the backs of struggling homeowners. Defendant makes even more profits if a loan goes into default, because Defendant can charge additional fees, including but not limited to demand fees, inspection fees, overnight delivery fees, fax fees, attorneys fees, and payoff statement charges.

30.     Throughout the time relevant hereto, Defendant GMAC has engaged in a uniform scheme and course of conduct to inflate its corporate profits by charging and collecting various fees not authorized by the loan documents or applicable law. The components of this scheme involve common tactics, including, but not limited to:

        a.      Unauthorized and excessive "Speedpay" and/or other electronic payment

9

processing fees;

b.    Assessment of charges of unnecessary and unauthorized property inspections;

c.    Improper and excessive assessment of "Equity Builder" fees, payoff fees, and late fees; and

d.    Other improper charges set out herein.

31.    Defendant charges customers a monthly "Speedpay" or "pay by phone fee" of $7.50 to $10.00 or more, merely for the electronic processing of a mortgage payment. Customers are forced to pay this fee because Defendant loses payments, and Defendant often fails to process checks received through the mail in a timely fashion. Thus, Plaintiffs and the Class must pay this fee in order to avoid late fees and other charges.

32.    Defendant charges customers multiple, unnecessary, and excessive "property inspection" fees, often on a monthly basis, without any notice that customers' property was being inspected, or any explanation of why any inspection was necessary. When customers of the Class called to ask why the fee was assessed, Defendant responded that it sends people to drive by their homes to confirm that someone is still living there. In reality, most, if not all, monthly inspections are not done at all, even though Defendant claims otherwise. Even if such property inspections are due, the amount Defendant charges is well in excess of the cost of the property inspections. Such excessive fees are not permitted.

33.    Defendant also charges late fees in excess of that permitted by loan documents and other applicable law.

**PLAINTIFFS, INDIVIDUALLY AND ON BEHALF OF THE PUTATIVE CLASS, MAKE NO CLAIMS PURSUANT TO FEDERAL LAW AND FURTHER MAKE NO**

10

CLAIMS WHICH WOULD GIVE RISE TO ANY FEDERAL CAUSE OF ACTION. PLAINTIFFS' CLAIMS ARE BASED SOLELY UPON STATE LAW. ADDITIONALLY, PLAINTIFFS ON BEHALF OF THEMSELVES AND PUTATIVE CLASS MEMBERS, DO NOT MAKE ANY CLAIM FOR RELIEF, INCLUDING BOTH EQUITABLE RELIEF AND MONETARY DAMAGES, IN EXCESS OF $74,500.00 IN THE AGGREGATE FOR PLAINTIFFS OR ANY CLASS MEMBER. UNDER NO CIRCUMSTANCES WOULD THE TOTAL AMOUNT OF RELIEF, INCLUDING BOTH EQUITABLE RELIEF AND MONETARY DAMAGES, EXCEED $74,500.00 IN THE AGGREGATE FOR PLAINTIFFS OR EACH CLASS MEMBER. EVEN IF PLAINTIFFS AND EACH CLASS MEMBER RECOVERED UNDER EACH COUNT OF THE COMPLAINT, THE TOTAL RECOVERY FOR PLAINTIFFS AND EACH PUTATIVE CLASS MEMBER WOULD NOT EXCEED $74,500 IN THE AGGREGATE FOR PLAINTIFFS OR EACH CLASS MEMBER AND THE TOTAL DAMAGES FOR THE ENTIRE CLASS WOULD NOT EXCEED $4,995,000, IN THE AGGREGATE, EXCLUDING INTEREST AND COSTS. PLAINTIFFS, ON BEHALF OF THEMSELVES AND THE PUTATIVE CLASS, STATE THAT THE TOTAL DAMAGES FOR THE ENTIRE CLASS, INCLUDING EQUITABLE RELIEF AND MONETARY DAMAGES, ARE $4,995,000 OR LESS, EXCLUDING INTEREST AND COSTS AND UNDER NO CIRCUMSTANCES WILL THE TOTAL DAMAGES, INCLUDING EQUITABLE RELIEF AND MONETARY DAMAGES, FOR PLAINTIFFS AND THE ENTIRE CLASS, IN THE AGGREGATE, EXCEED $4,995,000, EXCLUDING INTEREST AND COSTS.

## FIRST CAUSE OF ACTION

### MISREPRESENTATION

34.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 33, as though fully set forth herein.

35.    At all times material hereto, the Defendant was under a duty to not misrepresent the true nature of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees. Defendant intentionally, recklessly or negligently misrepresented that the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees were legitimate charges, when in fact, such charges were improper as set out herein.

36.    The Defendant intentionally misled its customers as to the true nature and purpose

11

of their above "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, and/or other similar fees for the purpose of persuading customers to pay such charges without question or negotiation. At the time Defendant made these representations to Plaintiffs, Defendant knew that these representations were false.

37.    Specifically, Defendant misrepresented to Plaintiffs and other members of the putative class the following information:

      a.    that the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "Equity Builder" fees, and "pay by phone" fees are legitimate charges.

      b.    the other facts set out herein.

      c.    that such fees bore a rational relationship to expenses actually incurred by Defendant.

38.    By intentionally, recklessly or negligently misrepresenting the nature of the "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees, as set out herein, the Defendant has taken advantage of Plaintiffs and other putative class members, who based upon such misrepresentations, were misled into paying such fees and charges.

39.    Defendant's misrepresentations have damaged Plaintiffs and other putative class members for which damages are sought.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and others similarly situated, seeks to recover compensatory and punitive damages and are entitled to damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class

12

member.

## SECOND CAUSE OF ACTION

### SUPPRESSION

40.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 39, as though fully set forth herein.

41.    Defendant suppressed or concealed from their customers the true nature of their fees and charges as set out hereinabove, with the result that customers paid such charges without question or negotiation. At the time Defendant suppressed this information from Plaintiffs, Defendant knew or should have known that they were under a duty to communicate the true nature of their fees and charges.

42.    By suppressing the nature of their fees and charges and not disclosing material information concerning such fees and charges, Defendant has taken advantage of Plaintiffs, who based upon such omissions, were misled into paying such fees and charges. Specifically, Defendant failed to disclose the following facts:

      a.    That Defendant was deceptively placing "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees on Plaintiffs and other customers' invoices so that these charges would be paid without their conscious permission, which resulted in Defendant's engagement in unfair and fraudulent business practices.

      b.    The true nature of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or

13

other similar fees and the fact that such fees and charges are not necessary.

c.    The true nature, including the excessiveness thereof, of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees.

d.    That Defendant was charging improper "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees than allowed by law.

e.    That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees are excessive and not allowed by law or by the contract;

f.    That Plaintiffs and other customers were not required to pay the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees.

g.    That Defendant would fail to send Plaintiffs and other customers enough information to make an informed decision regarding the "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees.

h.    The unconscionability of the fees and the fact that Defendant was engaging in unconscionable practices as set out herein.

i.    The fact that Defendant was unilaterally increasing payments when it is not allowed by law or the contract.

j.    That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff

14

fees, wire fees, "Equity Builder" fees, and "pay by phone" fees are excessive.

k..    That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff

fees, wire fees, "pay by phone" fees, and "Equity Builder" fees are not

legitimate charges.

l.    That the late fees are not rationally related to any damage suffered by

Defendant and/or that such fees are "penalties" under applicable law;

m.    The other facts set out herein.

n.    That such fees bore a rational relationship to expenses actually incurred by

Defendant.

Defendant also failed to disclose other facts as set out herein.  Such nondisclosure constitutes

suppression as Defendant knew or should have known of such facts and Defendant further had a

duty to communicate such facts.

43.    Defendant's suppression has damaged Plaintiffs and putative class members.  As a

result, damages are sought.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and others

similarly situated, seeks to recover compensatory and punitive damages and are entitled to damages

in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class

member.

## THIRD CAUSE OF ACTION

### BREACH OF CONTRACT

44.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in

Paragraphs 1 through 43 as though fully set forth herein.

15

45.    Defendant services loans evidenced by standard form notes and mortgages, the relevant provisions of which are uniform.

46.    Defendant has imposed or collected amounts that are not due and owing by contract and/or applicable law including, without limitation, property inspection fees, late fees, fax payoff fees, wire fees, "pay by phone" fees, "Speedpay" fees, payment processing fees, "Equity Builder" fees, and other improper fees.

47.    Defendant has misapplied or failed to apply payments, or imposed late fees and other charges not due, all in breach of its contracts with Plaintiffs and members of the class.

48.    Defendant's improper practices as set out heretofore constitute a breach of contract for which Plaintiffs and putative class members have been damaged. Such breaches of contract are ongoing and continue today. Defendant's practices caused Plaintiffs and putative class members to pay excessive, unearned and unnecessary fees and charges. Plaintiffs and putative class members are entitled to compensatory damages in an amount equal to the improper and excessive fees and charges paid to the Defendant, plus interest.

WHEREFORE PREMISES CONSIDERED, Plaintiffs and putative class members seek to recover compensatory damages and are entitled to damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

## FOURTH CAUSE OF ACTION

### CONSPIRACY

49.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 48, as though fully set forth herein.

50.    Defendant conspired and combined among itself and unnamed third parties,

including fictitious parties, to do the acts complained herein. Plaintiffs and putative class members have been billed and Plaintiffs and putative class members have paid improper fees and charges to Defendant and its affiliated entities, for which Plaintiffs and putative class members have been damaged.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover and are entitled to compensatory and punitive damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

## FIFTH CAUSE OF ACTION

### UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

51.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 50, as though fully set forth herein.

52.    Defendant, by suppressing from Plaintiffs and putative class members the material facts set forth herein, by misrepresenting the material facts set forth herein and by engaging in the other unlawful and wrongful conduct set out herein, knowingly obtained or exerted unauthorized control over Plaintiffs' property and putative class members' property with the intent to deprive Plaintiffs and putative class members of their property and/or knowingly obtained control over said property by deception and with the intent to deprive Plaintiffs and putative class members of their property by:

      a.    creating or confirming an impression in Plaintiffs and putative class members which was false and which Defendant did not believe to be true; and/or

      b.    failing to correct a false impression which Defendant previously created or affirmed; and/or

17

c.    failing to correct a false impression which Defendant was under a duty to correct; and/or

d.    preventing Plaintiffs and putative class members from acquiring information pertinent to the disposition of their property and/or

e.    the other actions and/or inactions set out herein.

51.    Such illegal and wrongful fees charged to Plaintiffs and putative class members by Defendant has resulted in Defendant obtaining money, which in equity and good conscience, belong to Plaintiffs and putative class members.

52.    Plaintiffs and putative class members further request that the Court impose a Constructive Trust on such monies and require Defendant to repay such monies to Plaintiffs and putative class members.

53.    As a direct result thereof, Defendant has been unjustly enriched, and Plaintiffs have been injured and damaged and seeks recovery of all monies improperly procured.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover and are entitled to damages in an amount which do not exceed $74,500.00 in the aggregate for each Plaintiffs and each class member.

## SIXTH CAUSE OF ACTION

### INJUNCTIVE RELIEF

54.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 53, as though fully set forth herein.

55.    Plaintiffs and putative class members respectfully request that this Honorable Court enjoin Defendant from collecting such improper and excessive fees and charges and

18

further enjoin Defendant from adding improper fees and charges and/or any other similar fees and charges to Plaintiffs' loans and putative class members' loans due to the wrongful and illegal conduct set forth herein.

### SEVENTH CAUSE OF ACTION

### NEGLIGENCE

56.     Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 55 as though fully set forth herein.

57.     Defendant's conduct as set out herein constitutes negligence.  Such conduct has proximately caused damage to Plaintiffs and putative class members.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover compensatory damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

Respectfully submitted,


/s/Robert G. Methvin, Jr.
Robert G. Methvin, Jr. (MET009)
Attorney for Plaintiffs

OF COUNSEL:
MCCALLUM, METHVIN & TERRELL, P.C.
2201 Arlington Avenue South
Birmingham, Alabama 35205
(205) 939-0199 - telephone
(205) 939-0399 - facsimile

Albert Adams
Post Office Box 670
Eufaula, AL 36072-0670

19

Charles A. McCallum III
R. Brent Irby
McCallum, Hoagland, Cook & Irby, LLP
905 Montgomery Highway
Suite 201
Vestavia Hills, AL 35216


**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL:**

GMAC LLC
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

20

## Exhibit 4

**Chatman First Amended Complaint**

ELECTRONICALLY FILED
4/30/2008 10:38 AM
CV-2008-900015.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
DAVID NIX, CLERK

**IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA**
**Eufaula Division**

|  |  |
|---|---|
| MARCUS CHATMAN and BERKLEY | ) |
| and GEORGINA SQUIRES, | ) |
|  | ) |
|       Plaintiffs, | ) |
|  | ) |
| v. | ) Civil Action No.: CV-2008-900015 |
|  | ) |
| GMAC MORTGAGE CORPORATION, | ) |
| GMAC MORTGAGE, LLC, and | ) |

**and Fictitious Defendants "A", "B", and "C",** being the correct legal name of Defendant known only to the Plaintiffs as GMAC Mortgage Corporation and GMAC Mortgage, LLC; **"D", "E",** and **"F",** whether singular or plural, being the person, firm, association, corporation, or other entity who made intentional, negligent and/or reckless misrepresentations, and suppressed or concealed the truth from Plaintiffs; **"G", "H" and "I",** whether singular or plural, being the person, corporation, firm, association, or other entity who negligently caused injury and damage to Plaintiffs, and/or who breached a contract with Plaintiffs, and/or who became unjustly enriched and/or who should be enjoined from conduct that may injure Plaintiffs; **"J", "K", and "L",** whether singular or plural, being the person, corporation, firm, association, or other entity who conspired to defraud Plaintiffs, and/or who schemed to defraud Plaintiffs; **"M", "N" and "O",** whether singular or plural, being the person, corporation, firm, association, or other entity who is the alter-ego or the predecessor or successor in interest to any of the above-named Defendants; **"P",** whether singular or plural, being the person, corporation, firm, association, or other entity who committed any wrongdoing toward the Plaintiffs giving rise to an action in tort, including but not limited to, negligence, wantonness, and breach of fiduciary duties; **"Q"** whether singular or plural, being the person, corporation, firm, association or other entity who is the principal of the Defendants; and **"R",** being the unidentified agent who is described throughout this Complaint,

|  |  |
|---|---|
|  | ) |
|       Defendants. | ) |

## AMENDED AND RESTATED CLASS ACTION COMPLAINT

      COMES NOW the Plaintiffs, Marcus Chatman ("Chatman") and Berkley and Georgina Squires ("Squires"), individually and on behalf of a class of all persons or entities in Alabama who are similarly situated, file this Amended and Restated Class Action Complaint against the Defendants, GMAC MORTGAGE CORPORATION and GMAC MORTGAGE, LLC (collectively known as "GMAC" or "Defendant GMAC") and/or other fictitious parties as set out herein. Plaintiffs hereby dismiss all claims against GMAC, LLC without prejudice. In support thereof, the

Plaintiffs state the following:

## NATURE OF THE CASE

1.        Through a fraudulent, unlawful and unfair course of conduct, Defendant GMAC has, over the course of years, billed improper fees, costs and charges, including property inspection fees, late fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and fees for using its "Speedpay" automated payment system to Plaintiffs and Defendant GMAC's other Alabama customers.  The fees and charges are fraudulent, excessive, unnecessary, mischaracterized, unconscionable, misleading, and not collectable.

2.        Defendant GMAC assesses these improper fees, costs and charges (collectively the "improper charges") to borrowers' accounts in order to maximize their profits, and with the goal of putting borrowers into default status.  It then demands payment in various contexts including, without limitation, monthly bills, reinstatement demands, payoff statements, court pleadings, collection letters and collection calls.   Defendant GMAC then collects the improper charges from borrowers' monthly payments, and also from the proceeds of foreclosure sales and loan payoffs.

3.        Defendant GMAC charges customers a monthly "Speedpay" fee, merely for the electronic processing of a mortgage payment.  Customers are forced to pay this fee because often does not process checks received through the mail in a reliable or timely fashion, resulting in additional fees.

4.        Defendant GMAC charges customers multiple, unnecessary "property inspection" fees, sometimes on a monthly basis, and sometimes multiple times in one month.  Defendant GMAC, in many instances, never performs the property inspection. The property inspection fee is always in an amount in excess of the actual cost of the alleged "property inspection".   Defendant

GMAC also charges an "Equity Builder" fee, which is excessive and not allowed by contract.

5.      Defendant GMAC structures account statements in a way that makes it extremely difficult or impossible for borrowers to determine how much they owe, or how any mortgage payment will be allocated.  When customers call for clarification, or to correct a charge they believe is in error, Defendant GMAC diverts customers through a remote, understaffed and undertrained call center hotline.  Customers seldom or never talk with the same representative twice, and the representative on the line is almost always looking at the customer's account for the first time. Defendant GMAC 's representatives regularly refuse or fail to provide necessary information or to correct problems.

6.      The improper charges described herein have a snowball effect, often forcing the consumers into default status and foreclosure, resulting in further improper and unauthorized fees and charges.

7.       Defendant GMAC routinely treats borrowers as if the borrowers are in default on their loans, even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements.

8.      Plaintiff Chatman's home-secured loan was serviced by Defendant GMAC during the period covered by this action, and he was assessed improper charges by GMAC, as detailed herein.  The mortgage loan was entered into in Jefferson County, Alabama.  Defendant GMAC, by and through various agents and employees, made misrepresentations at this time and after the loan closing, suppressed material facts from Plaintiff Chatman at this time and after the closing, and engaged in other misconduct as set out herein.  Plaintiff Chatman relied upon such fraud and reasonably believed that Defendant GMAC would not engage in the other misconduct alleged

3

herein.  Plaintiff Chatman was proximately damaged as a result of such fraud and other misconduct.

9.      Plaintiff Squires's home-secured loan was serviced by Defendant GMAC

during the period covered by this action, and he was assessed improper charges by GMAC, as

detailed herein.  The mortgage loan was entered into in Barbour County, Alabama.  Defendant

GMAC, by and through various agents and employees, made misrepresentations at this time and

after the loan closing, suppressed material facts from Plaintiff Squires at this time and after the

closing, and engaged in other misconduct as set out herein.  Plaintiff Squires relied upon such fraud

and reasonably believed that Defendant GMAC would not engage in the other misconduct alleged

herein.  Plaintiff Squires was proximately damaged as a result of such fraud and other misconduct.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action.  Defendant GMAC does business in

the State of Alabama and has received and continues to receive substantial revenue and profits

from the improper charges in the State of Alabama.  Defendant GMAC transacts business in the

Eufaula Division of Barbour County, Alabama and has received and continues to receive

substantial revenue and profits from the improper charges in the Eufaula Division of Barbour

County, Alabama and has further made material omissions and misrepresentations, as well as

engaged in other misconduct, in the Eufaula Division of Barbour County, Alabama.

11.     Venue in this case is proper in Barbour County, Alabama, in that a substantial

portion of the conduct of Defendant GMAC which forms the basis of this action occurred in such

venue, and Plaintiff Squires resides in such venue.

## PARTIES

12.     Plaintiff Chatman is a resident citizen of Jefferson County, Alabama.

4

13.     Plaintiff Squires is a resident citizen of Barbour County, Alabama.

14.     Defendant GMAC Mortgage, LLC is a Delaware corporation which is qualified to do business and is doing business in the State of Alabama and which has its principal place of business at 1100 Virginia Drive, Fort Washington, Pennsylvania 19034.  It's appointed agent for service of process in Alabama is CSC Lawyers Incorporating Service, Inc., 150 South Perry Street, Montgomery, Alabama 36104.

15.     Defendant GMAC Mortgage Corporation is a Pennsylvania corporation which is qualified to do business and is doing business in the State of Alabama and which has its principal place of business at 7320 Old York Road, Melrose Park, Pennsylvania 19126.  It's appointed agent for service of process in Alabama is CSC Lawyers Incorporating Service, Inc., 150 South Perry Street, Montgomery, Alabama 36104.

16.     Defendants fictitiously described as "A," "B," and "C," are otherwise unknown to Plaintiffs at this time, or if their identities are known to Plaintiffs at this time, their identity as proper party Defendants is not known to Plaintiffs at this time, but their true and correct names will be substituted by amendment when the aforesaid information is ascertained.  It is alleged that Defendant GMAC is responsible for the actions or inactions of the above fictitious parties under the doctrines of respondeat superior, joint and several liability, conspiracy, agency and/or other doctrines.  It is further alleged that the fictitious Defendants are responsible for the actions or inactions of Defendant GMAC and its agents and employees under the doctrines of respondeat superior, joint and several liability, conspiracy, agency and/or other doctrines.  Defendant GMAC is responsible for the actions and/or inactions of each other, under the doctrines of respondeat superior, joint and several liability, agency, conspiracy, and/or other doctrines.

5

16(a).   There may be other entities whose true names and identities are unknown to Plaintiffs at this time who may be legally responsible for the claim(s) set forth herein who may be added by amendment by the Plaintiffs when their true names and identities are accurately ascertained by further discovery.   Until that time, the Plaintiffs will designate the above parties in accordance with Rule 9(h) of the Alabama Rules of Civil Procedure.   The word "Entity" as used herein is intended to refer to and include all legal entities, including individual persons, any and all forms of partnerships, and any and all types of corporations and unincorporated associations.   The symbol by which these party defendants are designated is intended to include more than one entity in the event that discovery reveals that the descriptive characterization of the symbol applies to more than one "entity".   The term Defendant, as used herein, refers to both the listed Defendants and fictitious Defendants.

17.   Defendant GMAC does business in the Eufaula Division of Barbour County, Alabama and Defendant GMAC acted in concert by marketing and collecting money from the improper charges through the coordinated inter-corporate relationship.   Defendant GMAC was and is an active participant in the misleading, unlawful, fraudulent, and unconscionable practices described herein.

18.   At all relevant times, Defendant GMAC was an agent, representative and/or employer of fictitious Defendants.   In committing the acts alleged herein, Defendant GMAC acted within the scope of its agency and/or employment and was acting with the consent, permission, authorization and knowledge and perpetrated and/or conspired with and/or aided and abetted the unlawful, improper, and fraudulent acts described herein.

19.   Plaintiffs bring this action as an Alabama class action pursuant to Rule 23 of

6

the Alabama Rules of Civil Procedure.  This class is more specifically defined as follows:

"all Alabama residents who paid late fees, property inspection fees, "Speed pay" fees, fax payoff

fees, wire fees, "Equity Builder" fees, "pay by phone" fees and/or other similar charges to Defendant

GMAC."  Plaintiffs maintain the right to create subclasses, if necessary.

20.    Excluded from the proposed class are Defendant GMAC, any entity in which

Defendant GMAC has a controlling interest and any agents, employees, officers and/or directors of

the Defendant GMAC or any other such entities and their representatives, heirs, successor and/or

assigns, as well as any people who paid the alleged improper charges to Defendant GMAC and who

are or where in bankruptcy and received a discharge within the time period six years prior to the

filing of this complaint.

21.    The exact number of Class members is unknown to Plaintiffs at this time, but such

information can be ascertained through appropriate discovery, specifically from records maintained

by GMAC and its agents.

## EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS OF LAW AND FACT

22.    There are common questions of law and fact applicable to the class.  These

common questions of law and fact predominate over any questions affecting only individual

members of the class. Said common questions include, but are not limited to, the following:

a.    Whether Defendant GMAC engaged in a widespread and systematic practice of

charging excessive amounts for the fees at issue in this case.

b.    Whether the fees at issue in this case are designed as profit enhancers for Defendant

GMAC.

c.    Whether the charging of the fees at issue in this case constitute breaches of contract.

7

d.      Whether the charging of the fees at issue in this case are inconsistent with applicable law.

e.      Whether it would be inequitable and unjust for Defendant GMAC to retain the monies received from the wrongful and excessive fees at issue in this case.

f.      Whether Defendant GMAC conspired to commit the wrongful acts alleged herein.

g.      Whether Plaintiffs and class members are entitled to class relief as requested herein.

h.      Whether the fees at issue herein are excessive under the terms of the contract and/or applicable law.

i.      Whether Defendant GMAC assessed charges for unnecessary and unauthorized property inspections and/or whether such property inspection fees are excessive.

j.      Whether Defendant GMAC assessed improper and excessive late fees.

k.      Whether the late fees are intended to be a penalty.

l.      Whether Defendant GMAC charged borrowers unauthorized and excessive "Speedpay" and/or other electronic payment processing fees.

m.      Whether Defendant GMAC assessed improper and excessive fax, "Equity Builder" fees, payoff fees and wire fees.

n.      Whether GMAC's practice of invoicing and assessing borrowers for the fees at issue in this case is consistent with the terms and language of the customer contracts.

o.      Whether Defendant GMAC has been unjustly enriched by assessing and collecting the fees at issue in this case.

p.      Whether Defendant GMAC has ceased charging the improper and excessive fees at issue in this case.

8

q.      Whether an injunction is necessary to keep Defendant GMAC from charging the
unnecessary and excessive fees in this case.

r.      Whether the fees at issue in this case are unconscionable.

## TYPICALITY AND NUMEROSITY

23.     The claims of the named Plaintiffs are typical of the claims of the class.  The
proposed class exceeds 40 members.

## ADEQUATE REPRESENTATION

24.     The Plaintiffs will fairly and adequately protect the interests of the members of the
class and have no interest antagonistic to those of other class members.  Plaintiffs have retained class
counsel competent to prosecute class actions and such class counsel are financially able to represent
the class.

## SUPERIORITY

25.     The class action is superior to other available methods for the fair and efficient
adjudication of this controversy since individual joinder of all members of the class is impracticable.
The interests of judicial economy favor adjudicating the claims for the Plaintiffs class rather than
on an individual basis.

26.     Questions of law and fact predominate over any questions affecting only individual
members.

## FACTUAL ALLEGATIONS

27.     Plaintiffs and putative class members took out a mortgage through a local lender.
Defendant GMAC has engaged in the unfair, unlawful, fraudulent, wrongful and deceptive practice
of adding and/or force-placing the fees, costs and charges on plaintiffs and putative class members'

9

accounts.

28.    The right to service these mortgage loans closed through a local lender is often

farmed out to a third-party "mortgage servicer," such as Defendant GMAC, who only profit from

the fees and other charges that can be generated on servicing the mortgages.  According to a study

done by the Mortgage Bankers Association of America, mortgage servicers average only $60 per

loan per year in net profit.  Thus, they have a strong incentive to impose any fees and charges they

can to increase their profit margin.

29.    Defendant GMAC services loans on behalf of mortgage lenders, not Plaintiffs

and the Class.  Defendant GMAC's "customers" are a captive audience.  The customers have no

choice in who services their loans.  They have no option to changes servicers if they are unhappy

in any way.

30.    Because its "customers" have no way out, Defendant GMAC also has no incentive

to offer good customer service.  Because Defendant GMAC has demonstrated that they will force

customers into default and foreclosure, Plaintiffs and the Class are forced to pay the illegal,

unnecessary and excessive charges.

31.    Mortgage servicing abuses, such as those alleged herein, are standard operating

procedure for Defendant GMAC and certain other mortgage servicers, as part of their goal to

maximize profits on the backs of struggling homeowners.  Defendant GMAC makes even more

profits if a loan goes into default, because Defendant GMAC can charge additional fees, including

but not limited to demand fees, inspection fees, overnight delivery fees, fax fees, attorneys fees, and

payoff statement charges.

32.    Throughout the time relevant hereto, Defendant GMAC has engaged in a

10

uniform scheme and course of conduct to inflate its corporate profits by charging and collecting

various fees not authorized by the loan documents or applicable law.  The components of this

scheme involve common tactics, including, but not limited to:

    a.    Unauthorized and excessive "Speedpay" and/or other electronic payment

        processing fees;

    b.    Assessment of charges of unnecessary and unauthorized property

        inspections;

    c.    Improper and excessive assessment of "Equity Builder" fees, payoff fees, and

        late fees; and

    d.    Other improper charges set out herein.

33.    Defendant GMAC charges customers a monthly "Speedpay" or "pay by phone fee"

of $7.50 to $10.00 or more, merely for the electronic processing of a mortgage payment.  Customers

are forced to pay this fee because Defendant GMAC loses payments, and Defendant GMAC often

fails to process checks received through the mail in a timely fashion.  Thus, Plaintiffs and the Class

must pay this fee in order to avoid late fees and other charges.

34.    Defendant GMAC charges customers multiple, unnecessary, and excessive "property

inspection" fees, often on a monthly basis, without any notice that customers' property was being

inspected, or any explanation of why any inspection was necessary.  When customers of the Class

called to ask why the fee was assessed, Defendant GMAC responded that it sends people to drive

by their homes to confirm that someone is still living there.  In reality, most, if not all, monthly

inspections are not done at all, even though Defendant GMAC claims otherwise.  Even if such

property inspections are due, the amount Defendant GMAC charges is well in excess of the cost of

the property inspections.  Such  excessive fees are not permitted.

35.     Defendant GMAC also charges late fees in excess of that permitted by loan

documents and other applicable law.

**PLAINTIFFS, INDIVIDUALLY AND ON BEHALF OF THE PUTATIVE CLASS, MAKE NO CLAIMS PURSUANT TO FEDERAL LAW AND FURTHER MAKE NO CLAIMS WHICH WOULD GIVE RISE TO ANY FEDERAL CAUSE OF ACTION. PLAINTIFFS' CLAIMS ARE BASED SOLELY UPON STATE LAW.  ADDITIONALLY, PLAINTIFFS ON BEHALF OF THEMSELVES AND PUTATIVE CLASS MEMBERS, DO NOT MAKE ANY CLAIM FOR RELIEF, INCLUDING BOTH EQUITABLE RELIEF AND MONETARY DAMAGES, IN EXCESS OF $74,500.00 IN THE AGGREGATE FOR PLAINTIFFS OR ANY CLASS MEMBER. UNDER NO CIRCUMSTANCES WOULD THE TOTAL AMOUNT OF RELIEF, INCLUDING BOTH EQUITABLE RELIEF AND MONETARY DAMAGES, EXCEED $74,500.00 IN THE AGGREGATE FOR PLAINTIFFS OR EACH CLASS MEMBER.  EVEN IF PLAINTIFFS AND EACH CLASS MEMBER RECOVERED UNDER EACH COUNT OF THE COMPLAINT, THE TOTAL RECOVERY FOR PLAINTIFFS AND EACH PUTATIVE CLASS MEMBER WOULD NOT EXCEED $74,500 IN THE AGGREGATE FOR PLAINTIFFS OR EACH CLASS MEMBER AND THE TOTAL DAMAGES FOR THE ENTIRE CLASS WOULD NOT EXCEED $4,995,000, IN THE AGGREGATE, EXCLUDING INTEREST AND COSTS. PLAINTIFFS, ON BEHALF OF THEMSELVES AND THE PUTATIVE CLASS, STATE THAT THE TOTAL DAMAGES FOR THE ENTIRE CLASS, INCLUDING EQUITABLE RELIEF AND MONETARY DAMAGES, ARE $4,995,000 OR LESS, EXCLUDING INTEREST AND COSTS AND UNDER NO CIRCUMSTANCES WILL THE TOTAL DAMAGES, INCLUDING EQUITABLE RELIEF AND MONETARY DAMAGES, FOR PLAINTIFFS AND THE ENTIRE CLASS, IN THE AGGREGATE, EXCEED $4,995,000, EXCLUDING INTEREST AND COSTS.**

## FIRST CAUSE OF ACTION

### MISREPRESENTATION

36.     Plaintiffs adopt, re-allege and incorporate herein each and every allegation in

Paragraphs 1 through 35, as though fully set forth herein.

37.     At all times material hereto, the Defendant GMAC was under a duty to not

misrepresent the true nature of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff

fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees.  Defendant

GMAC intentionally, recklessly or negligently misrepresented that the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees were legitimate charges, when in fact, such charges were improper as set out herein.

38.    Defendant GMAC intentionally misled its customers as to the true nature and purpose of their above "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, and/or other similar fees for the purpose of persuading customers to pay such charges without question or negotiation.   At the time Defendant GMAC made these representations to Plaintiffs, Defendant GMAC knew that these representations were false.

39.    Specifically, Defendant GMAC misrepresented to Plaintiffs and other members of the putative class the following information:

    a.    that  the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "Equity Builder" fees, and "pay by phone" fees are legitimate charges.

    b.    the other facts set out herein.

    c.    that such fees bore a rational relationship to expenses actually incurred by Defendant GMAC.

40.    By intentionally, recklessly or negligently misrepresenting the nature of the "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees, as set out herein, Defendant GMAC has taken advantage of Plaintiffs and other putative class members, who based upon such misrepresentations, were misled into paying such fees and charges.

13

41.    Defendant GMAC's representations have damaged Plaintiffs and other putative class members for which damages are sought.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and others similarly situated, seeks to recover compensatory and punitive damages and are entitled to damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

## SECOND CAUSE OF ACTION

### SUPPRESSION

42.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 41, as though fully set forth herein.

43.    Defendant GMAC suppressed or concealed from their customers the true nature of their fees and charges as set out hereinabove, with the result that customers paid such charges without question or negotiation.  At the time Defendant GMAC suppressed this information from Plaintiffs, Defendant GMAC knew or should have known that they were under a duty to communicate the true nature of their fees and charges.

44.    By suppressing the nature of their fees and charges and not disclosing material information concerning such fees and charges, Defendant GMAC has taken advantage of Plaintiffs, who based upon such omissions, were misled into paying such fees and charges.  Specifically, Defendant GMAC failed to disclose the following facts:

        a.    That Defendant GMAC was deceptively placing "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees on Plaintiffs and other

14

customers' invoices so that these charges would be paid without their conscious permission, which resulted in Defendant GMAC's engagement in unfair and fraudulent business practices.

b.     The true nature of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees and the fact that such fees and charges are not necessary.

c.     The true nature, including the excessiveness thereof, of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees.

d.     That Defendant GMAC was charging improper "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees than allowed by law.

e.     That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees are excessive and not allowed by law or by the contract;

f.     That Plaintiffs and other customers were not required to pay the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees.

g.     That Defendant GMAC would fail to send Plaintiffs and other customers enough information to make an informed decision regarding the "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees.

15

h.    The unconscionability of the fees and the fact that Defendant GMAC was engaging in unconscionable practices as set out herein.

i.    The fact that Defendant GMAC was unilaterally increasing payments when it is not allowed by law or the contract.

j.    That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "Equity Builder" fees, and "pay by phone" fees are excessive.

k..    That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, and "Equity Builder" fees are not legitimate charges.

l.    That the late fees are not rationally related to any damage suffered by Defendant GMAC and/or that such fees are "penalties" under applicable law;

m.    The other facts set out herein.

n.    That such fees bore a rational relationship to expenses actually incurred by Defendant GMAC.

Defendant GMAC also failed to disclose other facts as set out herein.  Such nondisclosure constitutes suppression as Defendant GMAC knew or should have known of such facts and Defendant GMAC further had a duty to communicate such facts.

45.    Defendant GMAC's suppression has damaged Plaintiffs and putative class members. As a result, damages are sought.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and others similarly situated, seeks to recover compensatory and punitive damages and are entitled to damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class

16

member.

## THIRD CAUSE OF ACTION

## BREACH OF CONTRACT

46.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in

Paragraphs 1 through 45 as though fully set forth herein.

47.    Defendant GMAC services loans evidenced by standard form notes and mortgages,

the relevant provisions of which are uniform.

48.    Defendant GMAC has imposed or collected amounts that are not due and owing by

contract and/or applicable law including, without limitation, property inspection fees, late fees, fax

payoff fees, wire fees, "pay by phone" fees, "Speedpay" fees, payment processing fees, "Equity

Builder" fees, and other improper fees.

49.    Defendant GMAC has misapplied or failed to apply payments, or imposed late fees

and other charges not due, all in breach of its contracts with Plaintiffs and members of the class.

50.    Defendant GMAC's improper practices as set out heretofore constitute a breach of

contract for which Plaintiffs and putative class members have been damaged. Such breaches of

contract are ongoing and continue today. Defendant GMAC's practices caused Plaintiffs and

putative class members to pay excessive, unearned and unnecessary fees and charges.  Plaintiffs and

putative class members are entitled to compensatory damages in an amount equal to the improper

and excessive fees and charges paid to Defendant GMAC, plus interest.

WHEREFORE PREMISES CONSIDERED, Plaintiffs and putative class members seek to

recover compensatory damages and are entitled to damages in an amount which does not exceed

$74,500.00 in the aggregate for Plaintiffs and each class member.

17

## FOURTH CAUSE OF ACTION

### CONSPIRACY

51.     Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 50, as though fully set forth herein.

52.     Defendant GMAC conspired and combined among itself and unnamed third parties, including fictitious parties, to do the acts complained herein.  Plaintiffs and putative class members have been billed and Plaintiffs and putative class members have paid improper fees and charges to Defendant GMAC and its affiliated entities, for which Plaintiffs and putative class members have been damaged.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover and are entitled to compensatory and punitive damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

## FIFTH CAUSE OF ACTION

### UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

53.     Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 52, as though fully set forth herein.

54.     Defendant GMAC, by suppressing from Plaintiffs and putative class members the material facts set forth herein, by misrepresenting the material facts set forth herein and by engaging in the other unlawful and wrongful conduct set out herein, knowingly obtained or exerted unauthorized control over Plaintiffs' property and putative class members' property with the intent to deprive Plaintiffs and putative class members of their property and/or knowingly obtained control over said property by deception and with the intent to deprive Plaintiffs and putative class members

18

of their property by:

> a.   creating or confirming an impression in Plaintiffs and putative class members which was false and which Defendant GMAC did not believe to be true; and/or
>
> b.   failing to correct a false impression which Defendant GMAC previously created or affirmed; and/or
>
> c.   failing to correct a false impression which Defendant GMAC was under a duty to correct; and/or
>
> d.   preventing Plaintiffs and putative class members from acquiring information pertinent to the disposition of their property; and/or
>
> e.   the other actions and/or inactions set out herein.

55.   Such illegal and wrongful fees charged to Plaintiffs and putative class members by Defendant GMAC has resulted in Defendant GMAC obtaining money, which in equity and good conscience, belong to Plaintiffs and putative class members.

56.   Plaintiffs and putative class members further request that the Court impose a Constructive Trust on such monies and require Defendant GMAC to repay such monies to Plaintiffs and putative class members.

57.   As a direct result thereof, Defendant GMAC has been unjustly enriched, and Plaintiffs have been injured and damaged and seeks recovery of all monies improperly procured.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover and are entitled to damages in an amount which do not exceed $74,500.00 in the aggregate for each Plaintiffs and each class member.

## SIXTH CAUSE OF ACTION

### INJUNCTIVE RELIEF

58.   Plaintiffs adopt, re-allege and incorporate herein each and every allegation in

19

Paragraphs 1 through 57, as though fully set forth herein.

59.     Plaintiffs and putative class members respectfully request that this Honorable

Court enjoin Defendant GMAC from collecting such improper and excessive fees and charges

and further enjoin Defendant GMAC from adding improper fees and charges and/or any other

similar fees and charges to Plaintiffs' loans and putative class members' loans due to the

wrongful and illegal conduct set forth herein.

## SEVENTH CAUSE OF ACTION

### NEGLIGENCE

60.     Plaintiffs adopt, re-allege and incorporate herein each and every allegation in

Paragraphs 1 through 59 as though fully set forth herein.

61     Defendant GMAC's conduct as set out herein constitutes negligence.  Such

conduct has proximately caused damage to Plaintiffs and putative class members.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and

putative class members, seek to recover compensatory damages in an amount which does not

exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

Respectfully submitted,

/s/Robert G. Methvin, Jr.
Robert G. Methvin, Jr. (MET009)
Attorney for Plaintiffs

20

**OF COUNSEL:**
**McCallum, Methvin & Terrell, P.C.**
2201 Arlington Avenue South
Birmingham, Alabama 35205
(205) 939-0199 - telephone
(205) 939-0399 - facsimile

Albert Adams
Post Office Box 670
Eufaula, AL 36072-0670

Charles A. McCallum III
R. Brent Irby
McCallum, Hoagland, Cook & Irby, LLP
905 Montgomery Highway
Suite 201
Vestavia Hills, AL 35216

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL:**

GMAC MORTGAGE, LLC
c/o CSC Lawyers Incorporating Service, Inc.
150 South Perry Street
Montgomery, Alabama 36104

GMAC MORTGAGE CORPORATION
c/o CSC Lawyers Incorporating Service, Inc.
150 South Perry Street
Montgomery, Alabama 36104

## __Exhibit 5__

**Donaldson Original Complaint**

**SERVE**

## MUSCOGEE COUNTY SUPERIOR COURT
### STATE OF GEORGIA

GEORGIA, MUSCOGEE COUNTY
SUPERIOR/STATE COURT
FILED IN OFFICE

AUG 2 6 2009

_____ 300
DEPUTY CLERK
M. LINDA PIERCE, CLERK

ANTHONY AND WANDA DONALDSON,
individually and on behalf of all persons
similarly situated,

        Plaintiffs,

v.

GMAC MORTGAGE, LLC, AND
GMAC LLC,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action File No.:

SU 09 CV 3359 D

### SUMMONS

GMAC LLC
c/o CT Corporation System
328 Alexander Street, #10
c/o Corporation Process Co.
Marietta, Georgia 30060

TO THE ABOVE NAMED DEFENDANT:

    You are hereby summoned and required to file with the Clerk of Said Court and serve upon

the Plaintiff's attorney, whose name and address is:

        Rodney E. Miller, Esquire
        McCallum, Methvin & Terrell, P.C.
        2201 Arlington Avenue South
        Birmingham, AL 35205

an answer to the complaint which is herewith served upon you, within 30 days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will
be taken against you for the relief demanded in the complaint.

This _____ 26 _____ day of _____ August _____, 2009.

        Linda Pierce
        Clerk of Superior Court

        By: _____

        Deputy Clerk

# MUSCOGEE COUNTY SUPERIOR COURT
## STATE OF GEORGIA

ANTHONY AND WANDA DONALDSON,
individually and on behalf of all persons
similarly situated,

       Plaintiffs,

v.

GMAC MORTGAGE, LLC, AND
GMAC LLC,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

GEORGIA, MUSCOGEE COUNTY
SUPERIOR/STATE COURT
FILED IN OFFICE

AUG 2 6 2009
~~Cal 300~~
DEPUTY CLERK
M. LINDA PIERCE, CLERK

Civil Action File No.:

Su 09 CV 3359 D

## CLASS ACTION COMPLAINT FOR DAMAGES AND OTHER RELIEF

COME NOW Plaintiffs, ANTHONY AND WANDA DONALDSON (hereinafter "Plaintiffs") and bring this Complaint seeking damages and other relief on behalf of themselves individually, and as representatives of the class of victims described herein, against GMAC MORTGAGE, LLC and GMAC LLC (hereinafter "Defendants"). In support of Plaintiffs' claims, Plaintiffs state the following:

## INTRODUCTION

1.    Defendants have improperly and wrongfully charged and collected fees from Plaintiffs and putative class members which are in violation of the contracts and are otherwise improper as set out herein. The fees are unlawful, fraudulent, deceitful, excessive, unnecessary, mischaracterized, unconscionable, and misleading. Defendants' wrongful conduct also constitutes a pattern of racketeering activity by which Defendants unlawfully and improperly acquired Plaintiffs and putative class members' money and property, in violation of Georgia's RICO statute, OCGA § 16-4-1 et seq.

2.    Defendants assess these improper fees, costs and charges to borrowers' accounts in

order to maximize their profits, and with the goal of putting borrowers into default status. Defendants then demand payment in various contexts including, without limitation, Mortgage Account statements, reinstatement demands, payoff statements, collection letters and collection calls. Defendants collect the improper charges from borrowers' monthly payments, and also from the proceeds of foreclosure sales and loan payoffs.

3.    Defendants charge customers, including Plaintiffs, excessive late fees. The amount of such late fees is not rationally related to any damage caused by paying late and constitutes a "penalty" under the law. The amount of such fee is in violation of OCGA § 7-6A-3. Customers are forced to pay this fee because Defendants often do not process checks received through the mail in a reliable or timely fashion, resulting in additional fees. The amount of such fees is excessive.

4.    Defendants charge customers multiple, unnecessary "property inspection" fees, sometimes on a monthly basis, and sometimes multiple times in one month. Defendants, in many instances, never perform the property inspection. The property inspection fees are always in an amount in excess of the actual cost of the alleged "property inspection."

5.    Defendants structure account statements in a way that makes it extremely difficult or impossible for borrowers to determine how much they owe, or how any mortgage payment will be allocated. When customers call for clarification, or to correct a charge they believe is in error, Defendants divert customers through a remote, understaffed and undertrained call center hotline. Customers seldom or never talk with the same representative twice, and the representative on the line is almost always looking at the customer's account for the first time. Defendants' representatives regularly refuse or fail to provide necessary information or to correct problems.

6.    The improper charges described herein have a snowball effect, often forcing the

2

consumers into default status and foreclosure, resulting in further improper and unauthorized fees and charges. Defendants, in violation of the contracts and in violation of law, apply Plaintiffs and putative class members payments first to the improper fees, instead of to interest, then principal, then the improper fees. Such methodology increases the amount owed, thereby improperly placing accounts in default and foreclosure. Such conduct is in violation of applicable law, including OCGA § 7-4-17.

7.    Defendants routinely treat borrowers as if the borrowers are in default on their loans, even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements. Defendants have charged Plaintiffs and putative class members other wrongful and excessive charges, but Defendants hide the true nature of such fees by showing on the transaction history only "Fee Paid."

8.    Plaintiffs' home-secured loan was serviced by Defendants during the period covered by this action, and Plaintiffs were assessed improper charges by Defendants, as detailed herein. The mortgage loan was entered into in Muscogee County, Georgia. Defendants, by and through various agents and employees, made misrepresentations at this time and after the loan closing, suppressed material facts from Plaintiffs at this time and after the closing, and engaged in other misconduct as set out herein. Plaintiffs relied upon such fraud, reasonably believed that Defendants would not engage in the misconduct alleged herein, and were proximately damaged as a result. Defendants' wrongful conduct directed toward Plaintiffs and putative class members constitutes a breach of contract and, further, constitutes a pattern of racketeering activity as prohibited by OCGA § 16-4-1 *et seq.*

3

## VENUE/JURISDICTION

9.    The Superior Court for Muscogee County, Georgia is the proper venue for this action and such Court has jurisdiction over this action. Plaintiffs' claims arose in Muscogee County, Georgia, and the Defendants do business in Muscogee County and have received and continue to receive substantial revenue and profits from the improper fees charged and collected in this County. The property which is the subject of the mortgage at issue is located in Columbus, Georgia, which is in Muscogee County.

## PARTIES

10.    Plaintiff Anthony Donaldson is a resident citizen of Muscogee County, Georgia. Plaintiff Wanda Donaldson is a resident citizen of Alabama.

11.    Defendant GMAC Mortgage, LLC is a Delaware corporation authorized to do business in Georgia with its principal place of business in Minneapolis, Minnesota. Defendant GMAC LLC is a Delaware corporation authorized to do business in Georgia with its principal place of business in Detroit, Michigan. Defendants currently service all mortgages for Homecomings Financial, LLC ("HF") and/or Homecomings Financial Network, Inc ("HFN").

12.    Defendants do business in Muscogee County, Georgia and Defendants conspired with each other by charging and collecting money from the improper fees and sharing such ill-gotten gains amongst the conspirators. All of the Defendants were and are active participants in the unlawful conduct alleged herein.

13.    At all relevant times, Defendants were agents, representatives and/or employers of each other. In committing the wrongful acts alleged herein, Defendants were acting with the consent, permission, authorization and knowledge of each other and perpetrated and/or conspired with and/or

4

aided and abetted the unlawful, improper, and fraudulent acts as alleged herein.

## CLASS ACTION ALLEGATIONS

14.    Plaintiffs bring this action as a Georgia class action pursuant to Georgia Code § 9-11-23. This class is defined as follows: "all Georgia persons and/or Georgia entities who paid property inspection fees, late fees, and/or any other improper and/or excessive fees paid by Plaintiffs to Defendants and/or any of their predecessors and affiliates, including but not limited to Homecomings Financial, LLC and Homecomings Financial Network, Inc." Plaintiffs' claims are based solely upon Georgia state law causes of action.

15.    Plaintiffs exclude from the putative class the following: Defendants, any entity in which a Defendant has a controlling interest and any agents, employees, officers and/or directors of a Defendant or any other such entities and their representatives, heirs, successor and/or assigns, as well as any person and/or entities who paid the improper fees to Defendant and who are or were in bankruptcy and received a discharge within the statute of limitations period prior to the filing of this complaint, any member of the judiciary, any entity in which any member of the judiciary owns a controlling interest, and any governmental agency or entity. Plaintiffs reserve the right, pursuant to applicable law, to create sub-classes if necessary.

16.    Plaintiffs are unaware of the exact number of class members at this time, but such information can be ascertained through appropriate discovery, specifically from records maintained by Defendants and their agents.

## COMMON QUESTIONS OF LAW OR FACT

17.    Common questions of law and fact exist with regard to the putative class. Such common questions of law and fact predominate over any questions affecting only individual

5

members of the class. Such common questions are as follows:

    a.    Whether Defendants violated Georgia RICO law, OCGA § 16-14-1 *et seq.*

    b.    Whether Defendants uniformly and consistently charged the improper fees to Plaintiffs and putative class members.

    c.    Whether such improper fees paid by Plaintiffs and putative class members are and were excessive.

    d.    Whether the fees at issue in this case are designed to be pure profit for Defendants.

    e.    Whether the charging and collection of the fees at issue in this case constitute a violation of Georgia RICO law and/or a breach of contract.

    f.    Whether Defendants' actions constitute "racketeering" under Georgia RICO law.

    g.    Whether it would be unjust for the Defendants to retain the monies received from the unlawful and excessive fees at issue in this case.

    h.    Whether Defendants conspired to commit the wrongful acts alleged herein.

    i.    Whether Plaintiffs and putative class members are entitled to class relief as requested herein.

    j.    Whether the amounts of the fees at issue herein are excessive under the terms of the contract and/or applicable law.

    k.    Whether Defendants assessed and collected improper and/or excessive fees as set out herein.

    l.    Whether Defendants have ceased charging the unlawful and excessive fees

at issue in this case.

m.    Whether an injunction is necessary to keep Defendants from charging and collecting the unlawful and excessive fees in this case.

n.    Whether the amount of the improper fees charged by Defendants bear any relation to any cost incurred by Defendants.

o.    Whether the fees at issue in this case and the amount of the fees are unconscionable.

p.    Whether the fees at issue are charged in a uniform and consistent manner.

q.    Whether Defendants use form documents to perpetrate the wrongful conduct set out herein.

18.    Plaintiffs' claims are typical of the claims of the members of the class, and Defendants' defenses to Plaintiffs' claims are typical of their defenses to the claims of all class members. Plaintiffs have retained class counsel competent to prosecute class actions and such class counsel are financially able to represent the class. The total number of members of the putative class exceeds two hundred (200) members.

19.    The class action mechanism is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all members of the class is impracticable. The class action mechanism provides the benefit of unitary adjudication, economies of scale and comprehensive supervision by a single court. The interests of judicial economy favor adjudicating the claims for the Plaintiff class rather than for the Plaintiffs on an individual basis.

20.    In this case, questions of law and fact predominate over any questions affecting only individual members.

## FACTUAL ALLEGATIONS

21.    Plaintiffs and putative class members each have or had a mortgage serviced by Defendants. Defendants have engaged in the unfair, unlawful, fraudulent, wrongful and deceptive practice of adding and/or force-placing the fees on plaintiffs' and putative class members' accounts. This conduct also constitutes a pattern of racketeering activity by which Defendants unlawfully and improperly acquired Plaintiffs' and putative class members' money and property, in violation of Georgia's RICO statute, OCGA § 16-4-1 *et seq.*

22.    The right to service these mortgage loans closed through a local lender is often farmed out to a third-party "mortgage servicer," such as the Defendants, who only profit from the fees and other charges that can be generated on servicing the mortgages. According to a study done by the Mortgage Bankers Association of America, mortgage servicers average only $60 per loan per year in net profit. Thus, they have a strong incentive to impose any fees and charges they can to increase their profit margin.

23.    Defendants service loans on behalf of mortgage lenders, not Plaintiffs and the putative class. Defendants' "customers" are a captive audience. The customers have no choice in who services their loans. They have no option to changes servicers if they are unhappy in any way.

24.    Because their "customers" have no way out, Defendants also have no incentive to offer good customer service. Because Defendants have demonstrated that they will force customers into default and foreclosure, Plaintiffs and the putative class are forced to pay the illegal, unnecessary and excessive charges.

25.    Mortgage servicing abuses, such as those alleged herein, are standard operating procedure for Defendants and certain other mortgage servicers, as part of their goal to maximize

8

profits on the backs of struggling homeowners. Defendants make even more profit if a loan goes into default, because Defendants can charge additional fees, including but not limited to demand fees, property inspection fees, late fees, overnight delivery fees, fax fees, attorneys fees, and payoff statement charges.

26.    Throughout the time relevant hereto, Defendants have engaged in a uniform scheme and course of conduct to inflate their corporate profits by charging and collecting various fees not authorized by the loan documents or applicable law and/or by charging and collecting excessive fees. The components of this scheme involve common tactics, including, but not limited to:

a.    Communicating with the Plaintiffs and putative class members in an uniform and consistent manner, by mail, facsimile and electronically, either via the internet and/or through electronic mail, and demanding payment for such improper and excessive fees;

b.    Assessment of unnecessary and unauthorized fees through the wrongful application of uniform and consistent contractual provisions; and

c.    Other misconduct as set out herein.

27.    Defendants charge Plaintiffs and putative class members improper and excessive late fees. Such late fees are not designed to compensate Defendants for any cost incurred from the late payment, but are, in fact, "penalties" under applicable law. Customers are forced to pay late fees because Defendants lose payments, and Defendants often fail to process checks and money orders received through the mail in a timely fashion. Thus, Plaintiffs and the putative class members are paying unnecessary and excessive amounts for late fees. Defendants also charge late fees in excess of that permitted by the loan documents and applicable law.

9

28.     Defendants charge customers multiple, unnecessary, and excessive "property inspection" fees, often on a monthly basis, without any notice that customers' property was being inspected, or any explanation of why any inspection was necessary. If customers of the putative class call to ask why the fee was assessed, Defendants' employees are trained to respond that they send people to drive by their homes to confirm that someone is still living there. In reality, the monthly inspections are never done, even though Defendants claim otherwise. Even if some of the property inspections are done, the amount Defendants charge is well in excess of the cost of the property inspections. Such excessive fees are not permitted by contract or law.

29.     Defendants represent the improper fees as legitimate charges and/or as recoupment of expenses incurred when, in fact, such fees constitute nothing more than pure profit or have no logical connection to the expenses actually incurred by Defendants.

30.     Plaintiffs, after receiving Mortgage Account statements from Defendants, paid such improper fees as set out herein.  Plaintiffs payments were credited on at least the following dates: 2/28/07, 6/20/07, 6/28/07, 7/12/07, 2/4/08, 2/8/08 (4 fees paid), 3/6/08 (6 fees paid) and 5/29/09.

## DEFENDANTS' SETTLEMENT WITH THE WEST VIRGINIA ATTORNEY GENERAL

31.     Defendants currently service mortgages for HC and/or HFN. Upon information and belief, Defendants are also successors in interest to at least one of the Homecomings entities and at all times relevant hereto Defendants and both Homecomings entities have been affiliated entities. HFN entered into an "Assurance of Discontinuance" with the West Virginia Attorney General dated January 5, 2005. In such settlement agreement, HFN agreed as follows:

> Paragraph 7(b).  All amounts hereafter paid by borrowers to
> Homecomings in connection with a consumer loan shall be posted

10

upon receipt against payments due, and prior to crediting taxes, insurance or fees.....

Paragraph 7(d)......Homecomings shall not charge to consumers absent a foreclosure sale attorneys fees, property inspection fees, brokers price opinion fees, and other fees not allowed by statute.

Paragraph 10.  Homecomings agrees to take the following actions with respect to all West Virginia accounts that it serviced for the period beginning January 1, 1999, up to and including the present:

    a)    Homecomings shall issue account credits or refunds, as applicable, to all West Virginia consumers from whom it collected or charged any of the fees or charges that Homecomings has agreed not to assess in paragraph 7(d) above.

32.    HFN has already agreed, at least with respect to West Virginia residents, that it is improper to charge property inspection fees when there is no foreclosure proceeding and HFN has further agreed to refund all such fees charged to West Virginia residents.  HFN has further agreed to post payments in the proper order, that is, that payments should first be allocated to pay principal and interest first and fees last.

33.    The relief that HFN has already agreed to in West Virginia with regard to the property inspection fees and the posting of payments constitute some of the same relief sought with regard to this Georgia class.

## COUNT ONE

## VIOLATION OF GEORGIA "RICO" STATUTE

34.    Paragraph 1 through 33 are incorporated by reference.

35.    Defendants' conduct as set out herein constitutes violations of OCGA § 16-4-1 *et seq.* (hereinafter the "Georgia RICO statute").

11

36.    Plaintiffs are "persons" with the meaning of the Georgia RICO statute.

37.    Each Defendant is a "person" within the meaning of the Georgia RICO statute.

38.    Defendants are each separately, and collectively together, an "enterprise" within the meaning of the Georgia RICO statute. With regard to accounts which were serviced by HC and/or HFN but are now serviced by Defendants, HC and HFN were part of the enterprise along with Defendants. The enterprise also exists, with regard to the charging of the property inspection fees, between Defendants and the property inspection companies which allegedly receive all or a portion of the property inspection fees.

39.    In furtherance of their enterprise or enterprises, Defendants each separately, and/or collectively together, and/or in concert with their officers, directors, agent, employees, subsidiaries, and parent companies, engaged in prohibited and unlawful activity–or endeavored or conspired to engage in prohibited and unlawful activity–on two or more occasions. To the extent that any Defendant did not participate directly in the unlawful and/or improper acts, the Defendants knowingly and willfully aided and abetted these violations, or are vicariously liable for such wrongdoing. These unlawful acts include, but are not limited to:

    a.    Unlawfully taking and appropriating Plaintiffs' money and property in violation of OCGA § 16-8-2 (theft by taking).

    b.    Unlawfully obtaining Plaintiffs' money and property by deceitful means and artful practices with the intent to deprive them of property in violation of OCGA § 16-8-2 (theft by deception).

    c.    Unlawfully sending, causing to be sent and receiving letters, checks and other papers and items, including mortgage account statements sent through the

12

United States Postal Service, for the purpose of executing and attempting to
execute Defendants' fraudulent scheme in violation of 18 U.S.C. § 1341.

d.    Unlawfully causing to be sent and receiving writings (contracts, letters, and
invoices) and sound communications (including but not limited to telephone
calls, facsimile transmissions, and bank wire transfers) for the purpose of
executing and attempting to execute Defendants' fraudulent scheme in
violation of 18 U.S.C. § 1343.

e.    Sending deceptive commercial electronic mail in violation of OCGA § 16-9-
101.

f.    Engaging in misconduct as set out herein relating to residential mortgage
fraud, in violation of OCGA § 16-8-102.

40.    Defendants used standard, uniform documents in furtherance of their scheme. Each
act Defendants engaged in constitutes a separate incident of "racketeering activity" within the
meaning of the Georgia RICO statute. The multiple acts of racketeering activity were interrelated,
were part of a common and continuous pattern of fraudulent acts and schemes, were perpetrated for
the same or similar purposes, and were not a series of disconnected, isolated or sporadic acts. They
were part of the regular and routine way in which Defendants conduct their business. The multiple
acts constitute a pattern of racketeering activity. Defendants further intended to defraud Plaintiffs and
putative class members with regard to the mortgages secured by real property as set out herein.

41.    Defendants each separately, and/or collectively together, engaged in the racketeering
activity with the intent, motive, and/or effect of deriving pecuniary gain. Defendants targeted
Plaintiffs in furtherance of their scheme to defraud.

13

42.    Defendants, through this pattern of racketeering activity, directly or indirectly acquired the property and money of Plaintiffs and the putative class members. Plaintiffs and putative class members relied to their detriment on the fraud of Defendants in furtherance of Defendants' scheme.

43.    Defendants' officers, directors, agents, and employees directly or indirectly participated in the enterprises through a pattern of racketeering activity.

44.    Defendants' wrongful acts alleged herein proximately and directly caused damage to Plaintiffs and putative class members. Plaintiffs and putative class members' injuries flow directly from the predicate offenses set out herein.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover all damages allowable as a result of such violations, to include treble damages, punitive damages, interest and attorney fees.

## COUNT TWO

## BREACH OF CONTRACT

45.    Paragraph 1 through 44 are incorporated by reference.

46.    A contract existed between Plaintiffs and the Defendants and some putative class members and Defendants.

47.    Defendants' unlawful conduct described herein constitutes a breach of contract for Plaintiffs and putative class members who entered into contracts with Defendants. Such breaches of contract are continuing as of the date of filing this action and have caused damage to Plaintiffs and putative class members.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover all damages as a result of such violations, plus interest.

14

## COUNT THREE

## SCHEME TO DEFRAUD/CONSPIRACY

48.    Paragraph 1 through 47 are incorporated by reference.

49.    Defendants entered into a scheme to defraud and conspired to defraud Plaintiffs and putative class members as set out herein and among themselves to accomplish the improper actions herein.  With regard to accounts that were serviced by HC and/or HFN but are now serviced by Defendants, HC and/or HFN entered into a scheme to defraud and conspired to defraud Plaintiffs and/or putative class members.  With regard to the property inspection fees, Defendants conspired with the property inspection companies which allegedly received all or a portion of the property inspection fees.  Plaintiffs and putative class members have paid the improper fees to Defendants which have caused Plaintiffs and putative class members to be damaged.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover all damages as a result of such violations, plus interest.

## COUNT FOUR

## UNJUST ENRICHMENT

50.    Paragraphs 1 through 49 are incorporated by reference.

51.    Defendants, under the circumstances set out herein, have been unjustly enriched at the expense of Plaintiffs and putative class members.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover all damages as a result of such violations, plus interest.

## COUNT FIVE

### DECLARATORY, EQUITABLE AND INJUNCTIVE RELIEF

52.    Paragraphs 1 through 51 are incorporated by reference.

53.    Plaintiffs and putative class members respectfully request that this Honorable Court declare Defendants' conduct as improper and in violation of Georgia law and to further enjoin Defendants from collecting such unlawful and excessive fees.

## COUNT SIX

### FRAUD & DECEIT

54.    Paragraphs 1 through 53 are incorporated by reference.

55.    At all relevant times, Defendants were under a duty not to misrepresent the true nature of the fees at issue.

56.    At all relevant times, the Defendants made material misrepresentations regarding the fees at issue which caused Plaintiffs and putative class members to pay such fees. Plaintiffs and putative class members relied upon such misrepresentations.

57.    The Defendants intentionally misled Plaintiffs and putative class members regarding the true nature and purpose of the fees set out herein for the purpose of inducing customers to pay such fees.

58.    Defendants misled Plaintiffs and putative class members as follows:

   a.    by leading Plaintiffs and putative class members to believe that the amount of such fees were rationally related to expenses incurred by Defendants;

   b.    by leading Plaintiffs and putative class members to believe that Plaintiffs and putative class members were required to pay such fees;

16

    c.    by leading Plaintiffs and putative class members to believe that such fees were

not excessive;

    d.    by leading Plaintiffs and putative class members to believe that such fees were

legitimate charges.

59.    Defendants also failed to disclose numerous facts to Plaintiffs and putative class

members as set out herein. Specifically, Defendants failed to disclose that such fees were excessive

and bore no relation to any expenses incurred by Defendants, that such fees were not legitimate

charges, that Defendants were wrongfully and unilaterally increasing payments, that Defendants

would fail to send to Plaintiffs and putative class members enough information to make an informed

decision regarding such fees, and that Plaintiffs and putative class members were not required by their

contracts to pay such fees.

60.    Such misrepresentation of material facts and failure to disclose material facts caused

financial damage to Plaintiffs and putative class members.

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, seek to

recover all damages as a result of such violations, plus interest.

## COUNT SEVEN

## VIOLATION OF OCGA § 7-6A-3 (Georgia Fair Lending Act)

61    Paragraphs 1 through 60 are incorporated by reference.

62.    Defendants are in violation of OCGA § 7-6A-3 entitled "Limitations and Prohibited

Practices Related to All Home Loans." Defendants, by charging excessive late fees, are in violation

of the entire statute 7-6A-3, and specifically 7-6A-3(3). Such section states "no creditor or servicer

may charge a borrower a late payment charge unless the loan documents specifically authorize the

17

charge, the charge is not imposed unless the payment is past due for ten days or more, and the charge does not exceed 5 percent of the amount of the late payment. A late payment charge may not be imposed more than once with respect to a particular late payment."

65.    Defendants are in violation of this section as the late payments are charged in excess of the statutorily allowable amount and such violation has proximately caused damage to Plaintiff and putative class members. Pursuant to OCGA § 7-6A-7, Plaintiffs on behalf of themselves and putative class members request any and all actual damages to which they may be entitled, statutory damages equal to the recovery of two times the interest paid under each loan, punitive damages, costs and reasonable attorneys' fees.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover all damages allowable as a result of such violations.

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY ON ALL ISSUES IN THIS CASE.**

Respectfully submitted,

_Rodney M. Miller_
Rodney E. Miller (Georgia Bar 779467)
Attorney for Plaintiffs

OF COUNSEL:
MCCALLUM, METHVIN & TERRELL, P.C.
2201 Arlington Avenue South
Birmingham, Alabama 35205
(205) 939-0199 - telephone
(205) 939-0399 - facsimile

18

**PLEASE SERVE DEFENDANTS BY PRIVATE PROCESS SERVICE:**

GMAC LLC
c/o CT Corporation System
328 Alexander Street, #10
c/o Corporation Process Co.
Marietta, Georgia 30060

GMAC Mortgage, LLC
c/o Corporation Service Company
40 Technology Parkway South
Suite 300
Norcross, GA 30092

19

## Exhibit 6

**Donaldson First Amended Complaint**

MUSCOGEE COUNTY SUPERIOR COURT
STATE OF GEORGIA

GEORGIA, MUSCOGEE COUNTY
SUPERIOR/STATE COURT
FILED IN OFFICE

FEB 1 7 2010

PCO 1209
DEPUTY CLERK
M. LINDA PIERCE, CLERK

ANTHONY AND WANDA DONALDSON,      )
individually and on behalf of all persons    )
similarly situated,                                )
                                                   )
                    Plaintiffs,                    )
                                                   )
v.                                                 )    Civil Action No.: SU 09 CV3359D
                                                   )
GMAC MORTGAGE, LLC, GMAC INC., AND )
GMAC LLC,                                          )
                                                   )
                    Defendants.                    )

## AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND OTHER RELIEF

COME NOW Plaintiffs, ANTHONY AND WANDA DONALDSON (hereinafter "Plaintiffs") and bring this Complaint seeking damages and other relief on behalf of themselves individually, and as representatives of the class of victims described herein, against GMAC MORTGAGE, LLC, GMAC INC., and GMAC LLC (hereinafter "Defendants"). In support of Plaintiffs' claims, Plaintiffs state the following:

## INTRODUCTION

1.    Defendants have improperly and wrongfully charged and collected fees from Plaintiffs and putative class members which are in violation of the contracts and are otherwise improper as set out herein. The fees are unlawful, fraudulent, deceitful, excessive, unnecessary, mischaracterized, unconscionable, and misleading. Defendants' wrongful conduct also constitutes a pattern of racketeering activity by which Defendants unlawfully and improperly acquired Plaintiffs and putative class members' money and property, in violation of Georgia's RICO statute, OCGA § 16-4-1 *et seq.*

2.    Defendants assess these improper fees, costs and charges to borrowers' accounts in

order to maximize their profits, and with the goal of putting borrowers into default status.

Defendants then demand payment in various contexts including, without limitation, Mortgage

Account statements, reinstatement demands, payoff statements, collection letters and collection calls.

Defendants collect the improper charges from borrowers' monthly payments, and also from the

proceeds of foreclosure sales and loan payoffs.

3.      Defendants charge customers, including Plaintiffs, excessive late fees. The amount

of such late fees is not rationally related to any damage caused by paying late and constitutes a

"penalty" under the law. The amount of such fee is in violation of OCGA § 7-6A-3. Customers are

forced to pay this fee because Defendants often do not process checks received through the mail in

a reliable or timely fashion, resulting in additional fees. The amount of such fees is excessive.

4.      Defendants charge customers multiple, unnecessary "property inspection" fees,

sometimes on a monthly basis, and sometimes multiple times in one month. Defendants, in many

instances, never perform the property inspection. The property inspection fees are always in an

amount in excess of the actual cost of the alleged "property inspection."

5.      Defendants structure account statements in a way that makes it extremely difficult or

impossible for borrowers to determine how much they owe, or how any mortgage payment will be

allocated. When customers call for clarification, or to correct a charge they believe is in error,

Defendants divert customers through a remote, understaffed and undertrained call center hotline.

Customers seldom or never talk with the same representative twice, and the representative on the line

is almost always looking at the customer's account for the first time. Defendants' representatives

regularly refuse or fail to provide necessary information or to correct problems.

6.      The improper charges described herein have a snowball effect, often forcing the

2

consumers into default status and foreclosure, resulting in further improper and unauthorized fees and charges. Defendants, in violation of the contracts and in violation of law, apply Plaintiffs and putative class members payments first to the improper fees, instead of to interest, then principal, then the improper fees. Such methodology increases the amount owed, thereby improperly placing accounts in default and foreclosure. Such conduct is in violation of applicable law, including OCGA § 7-4-17.

7.    Defendants routinely treat borrowers as if the borrowers are in default on their loans, even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements. Defendants have charged Plaintiffs and putative class members other wrongful and excessive charges, but Defendants hide the true nature of such fees by showing on the transaction history only "Fee Paid."

8.    Plaintiffs' home-secured loan was serviced by Defendants during the period covered by this action, and Plaintiffs were assessed improper charges by Defendants, as detailed herein. The mortgage loan was entered into in Muscogee County, Georgia. Defendants, by and through various agents and employees, made misrepresentations at this time and after the loan closing, suppressed material facts from Plaintiffs at this time and after the closing, and engaged in other misconduct as set out herein. Plaintiffs relied upon such fraud, reasonably believed that Defendants would not engage in the misconduct alleged herein, and were proximately damaged as a result. Defendants' wrongful conduct directed toward Plaintiffs and putative class members constitutes a breach of contract and, further, constitutes a pattern of racketeering activity as prohibited by OCGA § 16-4-1 et seq.

## VENUE/JURISDICTION

9.     The Superior Court for Muscogee County, Georgia is the proper venue for this action and such Court has jurisdiction over this action. Plaintiffs' claims arose in Muscogee County, Georgia, and the Defendants do business in Muscogee County and have received and continue to receive substantial revenue and profits from the improper fees charged and collected in this County. The property which is the subject of the mortgage at issue is located in Columbus, Georgia, which is in Muscogee County.

## PARTIES

10.     Plaintiff Anthony Donaldson is a resident citizen of Muscogee County, Georgia. Plaintiff Wanda Donaldson is a resident citizen of Alabama.

11.     Defendant GMAC Mortgage, LLC is a Delaware corporation authorized to do business in Georgia with its principal place of business in Minneapolis, Minnesota. Defendant GMAC Inc. is a Delaware corporation authorized to do business in Georgia with its principal place of business in Detroit, Michigan, and is the successor in interest to Defendant GMAC LLC. Defendants currently service all mortgages for Homecomings Financial, LLC ("HF") and/or Homecomings Financial Network, Inc ("HFN").

12.     Defendants do business in Muscogee County, Georgia and Defendants conspired with each other by charging and collecting money from the improper fees and sharing such ill-gotten gains amongst the conspirators. All of the Defendants were and are active participants in the unlawful conduct alleged herein.

13.     At all relevant times, Defendants were agents, representatives and/or employers of each other. In committing the wrongful acts alleged herein, Defendants were acting with the consent,

4

permission, authorization and knowledge of each other and perpetrated and/or conspired with and/or aided and abetted the unlawful, improper, and fraudulent acts as alleged herein.

## CLASS ACTION ALLEGATIONS

14.    Plaintiffs bring this action as a Georgia class action pursuant to Georgia Code § 9-11-23. This class is defined as follows: "all Georgia persons and/or Georgia entities who paid property inspection fees, late fees, and/or any other improper and/or excessive fees paid by Plaintiffs to Defendants and/or any of their predecessors and affiliates, including but not limited to Homecomings Financial, LLC and Homecomings Financial Network, Inc." Plaintiffs' claims are based solely upon Georgia state law causes of action.

15.    Plaintiffs exclude from the putative class the following: Defendants, any entity in which a Defendant has a controlling interest and any agents, employees, officers and/or directors of a Defendant or any other such entities and their representatives, heirs, successor and/or assigns, as well as any person and/or entities who paid the improper fees to Defendant and who are or were in bankruptcy and received a discharge within the statute of limitations period prior to the filing of this complaint, any member of the judiciary, any entity in which any member of the judiciary owns a controlling interest, and any governmental agency or entity. Plaintiffs reserve the right, pursuant to applicable law, to create sub-classes if necessary.

16.    Plaintiffs are unaware of the exact number of class members at this time, but such information can be ascertained through appropriate discovery, specifically from records maintained by Defendants and their agents.

## COMMON QUESTIONS OF LAW OR FACT

17.    Common questions of law and fact exist with regard to the putative class. Such

5

common questions of law and fact predominate over any questions affecting only individual members of the class. Such common questions are as follows:

a.  Whether Defendants violated Georgia RICO law, OCGA § 16-14-1 *et seq.*

b.  Whether Defendants uniformly and consistently charged the improper fees to Plaintiffs and putative class members.

c.  Whether such improper fees paid by Plaintiffs and putative class members are and were excessive.

d.  Whether the fees at issue in this case are designed to be pure profit for Defendants.

e.  Whether the charging and collection of the fees at issue in this case constitute a violation of Georgia RICO law and/or a breach of contract.

f.  Whether Defendants' actions constitute "racketeering" under Georgia RICO law.

g.  Whether it would be unjust for the Defendants to retain the monies received from the unlawful and excessive fees at issue in this case.

h.  Whether Defendants conspired to commit the wrongful acts alleged herein.

i.  Whether Plaintiffs and putative class members are entitled to class relief as requested herein.

j.  Whether the amounts of the fees at issue herein are excessive under the terms of the contract and/or applicable law.

k.  Whether Defendants assessed and collected improper and/or excessive fees as set out herein.

l.   Whether Defendants have ceased charging the unlawful and excessive fees at issue in this case.

m.   Whether an injunction is necessary to keep Defendants from charging and collecting the unlawful and excessive fees in this case.

n.   Whether the amount of the improper fees charged by Defendants bear any relation to any cost incurred by Defendants.

o.   Whether the fees at issue in this case and the amount of the fees are unconscionable.

p.   Whether the fees at issue are charged in a uniform and consistent manner.

q.   Whether Defendants use form documents to perpetrate the wrongful conduct set out herein.

18.   Plaintiffs' claims are typical of the claims of the members of the class, and Defendants' defenses to Plaintiffs' claims are typical of their defenses to the claims of all class members. Plaintiffs have retained class counsel competent to prosecute class actions and such class counsel are financially able to represent the class. The total number of members of the putative class exceeds two hundred (200) members.

19.   The class action mechanism is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all members of the class is impracticable. The class action mechanism provides the benefit of unitary adjudication, economies of scale and comprehensive supervision by a single court. The interests of judicial economy favor adjudicating the claims for the Plaintiff class rather than for the Plaintiffs on an individual basis.

20.   In this case, questions of law and fact predominate over any questions affecting only

7

individual members.

## FACTUAL ALLEGATIONS

21.    Plaintiffs and putative class members each have or had a mortgage serviced by Defendants. Defendants have engaged in the unfair, unlawful, fraudulent, wrongful and deceptive practice of adding and/or force-placing the fees on plaintiffs' and putative class members' accounts. This conduct also constitutes a pattern of racketeering activity by which Defendants unlawfully and improperly acquired Plaintiffs' and putative class members' money and property, in violation of Georgia's RICO statute, OCGA § 16-4-1 *et seq.*

22.    The right to service these mortgage loans closed through a local lender is often farmed out to a third-party "mortgage servicer," such as the Defendants, who only profit from the fees and other charges that can be generated on servicing the mortgages. According to a study done by the Mortgage Bankers Association of America, mortgage servicers average only $60 per loan per year in net profit. Thus, they have a strong incentive to impose any fees and charges they can to increase their profit margin.

23.    Defendants service loans on behalf of mortgage lenders, not Plaintiffs and the putative class. Defendants' "customers" are a captive audience. The customers have no choice in who services their loans. They have no option to change servicers if they are unhappy in any way.

24.    Because their "customers" have no way out, Defendants also have no incentive to offer good customer service. Because Defendants have demonstrated that they will force customers into default and foreclosure, Plaintiffs and the putative class are forced to pay the illegal, unnecessary and excessive charges.

25.    Mortgage servicing abuses, such as those alleged herein, are standard operating

8

procedure for Defendants and certain other mortgage servicers, as part of their goal to maximize profits on the backs of struggling homeowners. Defendants make even more profit if a loan goes into default, because Defendants can charge additional fees, including but not limited to demand fees, property inspection fees, late fees, overnight delivery fees, fax fees, attorneys fees, and payoff statement charges.

26.    Throughout the time relevant hereto, Defendants have engaged in a uniform scheme and course of conduct to inflate their corporate profits by charging and collecting various fees not authorized by the loan documents or applicable law and/or by charging and collecting excessive fees. The components of this scheme involve common tactics, including, but not limited to:

a.    Communicating with the Plaintiffs and putative class members in an uniform and consistent manner, by mail, facsimile and electronically, either via the internet and/or through electronic mail, and demanding payment for such improper and excessive fees;

b.    Assessment of unnecessary and unauthorized fees through the wrongful application of uniform and consistent contractual provisions; and

c.    Other misconduct as set out herein.

27.    Defendants charge Plaintiffs and putative class members improper and excessive late fees. Such late fees are not designed to compensate Defendants for any cost incurred from the late payment, but are, in fact, "penalties" under applicable law. Customers are forced to pay late fees because Defendants lose payments, and Defendants often fail to process checks and money orders received through the mail in a timely fashion. Thus, Plaintiffs and the putative class members are paying unnecessary and excessive amounts for late fees. Defendants also charge late fees in excess

9

of that permitted by the loan documents and applicable law.

28.    Defendants charge customers multiple, unnecessary, and excessive "property inspection" fees, often on a monthly basis, without any notice that customers' property was being inspected, or any explanation of why any inspection was necessary. If customers of the putative class call to ask why the fee was assessed, Defendants' employees are trained to respond that they send people to drive by their homes to confirm that someone is still living there. In reality, the monthly inspections are never done, even though Defendants claim otherwise. Even if some of the property inspections are done, the amount Defendants charge is well in excess of the cost of the property inspections. Such excessive fees are not permitted by contract or law.

29.    Defendants represent the improper fees as legitimate charges and/or as recoupment of expenses incurred when, in fact, such fees constitute nothing more than pure profit or have no logical connection to the expenses actually incurred by Defendants.

30.    Plaintiffs, after receiving Mortgage Account statements from Defendants, paid such improper fees as set out herein. Plaintiffs payments were credited on at least the following dates: 2/28/07, 6/20/07, 6/28/07, 7/12/07, 2/4/08, 2/8/08 (4 fees paid), 3/6/08 (6 fees paid) and 5/29/09.

## DEFENDANTS' SETTLEMENT WITH THE WEST VIRGINIA ATTORNEY GENERAL

31.    Defendants currently service mortgages for HC and/or HFN. Upon information and belief, Defendants are also successors in interest to at least one of the Homecomings entities and at all times relevant hereto Defendants and both Homecomings entities have been affiliated entities. HFN entered into an "Assurance of Discontinuance" with the West Virginia Attorney General dated January 5, 2005. In such settlement agreement, HFN agreed as follows:

10

Paragraph 7(b). All amounts hereafter paid by borrowers to Homecomings in connection with a consumer loan shall be posted upon receipt against payments due, and prior to crediting taxes, insurance or fees.....

Paragraph 7(d)......Homecomings shall not charge to consumers absent a foreclosure sale attorneys fees, property inspection fees, brokers price opinion fees, and other fees not allowed by statute.

Paragraph 10. Homecomings agrees to take the following actions with respect to all West Virginia accounts that it serviced for the period beginning January 1, 1999, up to and including the present:

a)   Homecomings shall issue account credits or refunds, as applicable, to all West Virginia consumers from whom it collected or charged any of the fees or charges that Homecomings has agreed not to assess in paragraph 7(d) above.

32.   HFN has already agreed, at least with respect to West Virginia residents, that it is improper to charge property inspection fees when there is no foreclosure proceeding and HFN has further agreed to refund all such fees charged to West Virginia residents. HFN has further agreed to post payments in the proper order, that is, that payments should first be allocated to pay principal and interest first and fees last.

33.   The relief that HFN has already agreed to in West Virginia with regard to the property inspection fees and the posting of payments constitute some of the same relief sought with regard to this Georgia class.

## COUNT ONE

## VIOLATION OF GEORGIA "RICO" STATUTE

34.   Paragraph 1 through 33 are incorporated by reference.

35.   Defendants' conduct as set out herein constitutes violations of OCGA § 16-4-1 *et*

11

*seq.* (hereinafter the "Georgia RICO statute").

36.    Plaintiffs are "persons" with the meaning of the Georgia RICO statute.

37.    Each Defendant is a "person" within the meaning of the Georgia RICO statute.

38.    Defendants are each separately, and collectively together, an "enterprise" within the meaning of the Georgia RICO statute. With regard to accounts which were serviced by HC and/or HFN but are now serviced by Defendants, HC and HFN were part of the enterprise along with Defendants. The enterprise also exists, with regard to the charging of the property inspection fees, between Defendants and the property inspection companies which allegedly receive all or a portion of the property inspection fees.

39.    In furtherance of their enterprise or enterprises, Defendants each separately, and/or collectively together, and/or in concert with their officers, directors, agent, employees, subsidiaries, and parent companies, engaged in prohibited and unlawful activity--or endeavored or conspired to engage in prohibited and unlawful activity--on two or more occasions. To the extent that any Defendant did not participate directly in the unlawful and/or improper acts, the Defendants knowingly and willfully aided and abetted these violations, or are vicariously liable for such wrongdoing. These unlawful acts include, but are not limited to:

  a. Unlawfully taking and appropriating Plaintiffs' money and property in violation of OCGA § 16-8-2 (theft by taking).

  b. Unlawfully obtaining Plaintiffs' money and property by deceitful means and artful practices with the intent to deprive them of property in violation of OCGA § 16-8-2 (theft by deception).

  c. Unlawfully sending, causing to be sent and receiving letters, checks and other

12

papers and items, including mortgage account statements sent through the United States Postal Service, for the purpose of executing and attempting to execute Defendants' fraudulent scheme in violation of 18 U.S.C. § 1341.

d.  Unlawfully causing to be sent and receiving writings (contracts, letters, and invoices) and sound communications (including but not limited to telephone calls, facsimile transmissions, and bank wire transfers) for the purpose of executing and attempting to execute Defendants' fraudulent scheme in violation of 18 U.S.C. § 1343.

e.  Sending deceptive commercial electronic mail in violation of OCGA § 16-9-101.

f.  Engaging in misconduct as set out herein relating to residential mortgage fraud, in violation of OCGA § 16-8-102.

40.  Defendants used standard, uniform documents in furtherance of their scheme. Each act Defendants engaged in constitutes a separate incident of "racketeering activity" within the meaning of the Georgia RICO statute. The multiple acts of racketeering activity were interrelated, were part of a common and continuous pattern of fraudulent acts and schemes, were perpetrated for the same or similar purposes, and were not a series of disconnected, isolated or sporadic acts. They were part of the regular and routine way in which Defendants conduct their business. The multiple acts constitute a pattern of racketeering activity. Defendants further intended to defraud Plaintiffs and putative class members with regard to the mortgages secured by real property as set out herein.

41.  Defendants each separately, and/or collectively together, engaged in the racketeering activity with the intent, motive, and/or effect of deriving pecuniary gain. Defendants targeted

13

Plaintiffs in furtherance of their scheme to defraud.

42.    Defendants, through this pattern of racketeering activity, directly or indirectly acquired the property and money of Plaintiffs and the putative class members. Plaintiffs and putative class members relied to their detriment on the fraud of Defendants in furtherance of Defendants' scheme.

43.    Defendants' officers, directors, agents, and employees directly or indirectly participated in the enterprises through a pattern of racketeering activity.

44.    Defendants' wrongful acts alleged herein proximately and directly caused damage to Plaintiffs and putative class members. Plaintiffs and putative class members' injuries flow directly from the predicate offenses set out herein.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover all damages allowable as a result of such violations, to include treble damages, punitive damages, interest and attorney fees.

## COUNT TWO

## BREACH OF CONTRACT

45.    Paragraph 1 through 44 are incorporated by reference.

46.    A contract existed between Plaintiffs and the Defendants and some putative class members and Defendants.

47.    Defendants' unlawful conduct described herein constitutes a breach of contract for Plaintiffs and putative class members who entered into contracts with Defendants. Such breaches of contract are continuing as of the date of filing this action and have caused damage to Plaintiffs and putative class members.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative

14

class members, seek to recover all damages as a result of such violations, plus interest.

## COUNT THREE

### SCHEME TO DEFRAUD/CONSPIRACY

48. Paragraph 1 through 47 are incorporated by reference.

49. Defendants entered into a scheme to defraud and conspired to defraud Plaintiffs and putative class members as set out herein and among themselves to accomplish the improper actions herein. With regard to accounts that were serviced by HC and/or HFN but are now serviced by Defendants, HC and/or HFN entered into a scheme to defraud and conspired to defraud Plaintiffs and/or putative class members. With regard to the property inspection fees, Defendants conspired with the property inspection companies which allegedly received all or a portion of the property inspection fees. Plaintiffs and putative class members have paid the improper fees to Defendants which have caused Plaintiffs and putative class members to be damaged.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover all damages as a result of such violations, plus interest.

## COUNT FOUR

### UNJUST ENRICHMENT

50. Paragraphs 1 through 49 are incorporated by reference.

51. Defendants, under the circumstances set out herein, have been unjustly enriched at the expense of Plaintiffs and putative class members.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover all damages as a result of such violations, plus interest.

## COUNT FIVE

### DECLARATORY, EQUITABLE AND INJUNCTIVE RELIEF

52.   Paragraphs 1 through 51 are incorporated by reference.

53.   Plaintiffs and putative class members respectfully request that this Honorable Court declare Defendants' conduct as improper and in violation of Georgia law and to further enjoin Defendants from collecting such unlawful and excessive fees.

### COUNT SIX

### FRAUD & DECEIT

54.   Paragraphs 1 through 53 are incorporated by reference.

55.   At all relevant times, Defendants were under a duty not to misrepresent the true nature of the fees at issue.

56.   At all relevant times, the Defendants made material misrepresentations regarding the fees at issue which caused Plaintiffs and putative class members to pay such fees. Plaintiffs and putative class members relied upon such misrepresentations.

57.   The Defendants intentionally misled Plaintiffs and putative class members regarding the true nature and purpose of the fees set out herein for the purpose of inducing customers to pay such fees.

58.   Defendants misled Plaintiffs and putative class members as follows:

   a.   by leading Plaintiffs and putative class members to believe that the amount of such fees were rationally related to expenses incurred by Defendants;

   b.   by leading Plaintiffs and putative class members to believe that Plaintiffs and putative class members were required to pay such fees;

16

c.      by leading Plaintiffs and putative class members to believe that such fees were

not excessive;

d.      by leading Plaintiffs and putative class members to believe that such fees were

legitimate charges.

59.    Defendants also failed to disclose numerous facts to Plaintiffs and putative class

members as set out herein. Specifically, Defendants failed to disclose that such fees were excessive

and bore no relation to any expenses incurred by Defendants, that such fees were not legitimate

charges, that Defendants were wrongfully and unilaterally increasing payments, that Defendants

would fail to send to Plaintiffs and putative class members enough information to make an informed

decision regarding such fees, and that Plaintiffs and putative class members were not required by their

contracts to pay such fees.

60.    Such misrepresentation of material facts and failure to disclose material facts caused

financial damage to Plaintiffs and putative class members.

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, seek to

recover all damages as a result of such violations, plus interest.

## COUNT SEVEN

### VIOLATION OF OCGA § 7-6A-3 (Georgia Fair Lending Act)

61      Paragraphs 1 through 60 are incorporated by reference.

62.    Defendants are in violation of OCGA § 7-6A-3 entitled "Limitations and Prohibited

Practices Related to All Home Loans." Defendants, by charging excessive late fees, are in violation

of the entire statute 7-6A-3, and specifically 7-6A-3(3). Such section states "no creditor or servicer

may charge a borrower a late payment charge unless the loan documents specifically authorize the

17

charge, the charge is not imposed unless the payment is past due for ten days or more, and the charge does not exceed 5 percent of the amount of the late payment. A late payment charge may not be imposed more than once with respect to a particular late payment."

65.    Defendants are in violation of this section as the late payments are charged in excess of the statutorily allowable amount and such violation has proximately caused damage to Plaintiff and putative class members. Pursuant to OCGA § 7-6A-7, Plaintiffs on behalf of themselves and putative class members request any and all actual damages to which they may be entitled, statutory damages equal to the recovery of two times the interest paid under each loan, punitive damages, costs and reasonable attorneys' fees.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover all damages allowable as a result of such violations.

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY ON ALL ISSUES IN THIS CASE.**

Respectfully submitted,

*Rodney Miller*

Rodney E. Miller (Georgia Bar 779467)
Attorney for Plaintiffs

**OF COUNSEL:**
McCallum, Methvin & Terrell, P.C.
2201 Arlington Avenue South
Birmingham, Alabama 35205
(205) 939-0199 - telephone
(205) 939-0399 - facsimile

18

<u>**PLEASE SERVE DEFENDANT BY PRIVATE PROCESS SERVICE:**</u>

GMAC Inc.
c/o Corporation Process Company
2180 Satellite Blvd
Suite 400
Duluth, GA 30097

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing on all counsel of record by placing a copy of same in the United States Mail, first class, postage prepaid, and properly addressed on this the 12th day of February, 2010:

Robert R. Maddox
John E. Goodman
Richard H. Monk III
Bradley S. Burleson
**BRADLEY ARANT BOULT CUMMINGS LLP**
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203

*Attorneys for Defendants GMAC Mortgage, LLC and GMAC LLC*

_____
OF COUNSEL

20

## Exhibit 7

**Chatman Second Amended Complaint**

ELECTRONICALLY FILED
7/3/2012 12:32 PM
CV-2008-900015.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
DAVID NIX, CLERK

# IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
## EUFAULA DIVISION

| | |
|---|---|
| MARCUS CHATMAN and BERKLEY and GEORGINA SQUIRES,<br><br>    Plaintiffs,<br><br>v.<br><br>GMAC MORTGAGE CORPORATION, GMAC MORTGAGE, LLC, and ALLY FINANCIAL, INC. f/k/a GMAC INC.<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL ACTION NUMBER

CV-2008-900015

## SECOND AMENDED COMPLAINT

COME NOW the Plaintiffs, Marcus Chatman ("Chatman") and Berkley and Georgina Squires ("Squires"), individually and on behalf of a class of all persons or entities in Alabama who are similarly situated, file this Amended and Restated Class Action Complaint against the Defendants, GMAC MORTGAGE CORPORATION, GMAC MORTGAGE, LLC, and ALLY FINANCIAL, INC. f/k/a/ GMAC Inc. (collectively "Defendants").[1] In support thereof, the Plaintiffs state the following:

## NATURE OF THE CASE

1.      Through a fraudulent, unlawful and unfair course of conduct, Defendants have, over the course of years, billed improper fees, costs and charges, including property inspection fees, late fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and fees for using their "Speedpay" automated payment system to Plaintiffs and Defendants' other Alabama customers. The fees and charges are fraudulent, excessive, unnecessary, mischaracterized, unconscionable, misleading, and not collectable.

---

[1] By order dated May 23, 2012, the Court stayed this case as to GMAC Mortgage Corporation and GMAC Mortgage LLC due to pending bankruptcy proceedings.

2. Defendants assess these improper fees, costs and charges (collectively the "improper charges") to borrowers' accounts in order to maximize their profits, and with the goal of putting borrowers into default status. They demand payment in various contexts including, without limitation, monthly bills, reinstatement demands, payoff statements, court pleadings, collection letters and collection calls. Defendants then collect the improper charges from borrowers' monthly payments, and also from the proceeds of foreclosure sales and loan payoffs.

3. Defendants charge customers a monthly "Speedpay" fee, merely for the electronic processing of a mortgage payment. Customers are forced to pay this fee because Defendants often do not process checks received through the mail in a reliable or timely fashion, resulting in additional fees.

4. Defendants charge customers multiple, unnecessary "property inspection" fees, sometimes on a monthly basis, and sometimes multiple times in one month. Defendants, in many instances, never perform the property inspection. The property inspection fee is always in an amount in excess of the actual cost of the alleged "property inspection." Defendants also charge an "Equity Builder" fee, which is excessive and not allowed by contract.

5. Defendants structure account statements in a way that makes it extremely difficult or impossible for borrowers to determine how much they owe, or how any mortgage payment will be allocated. When customers call for clarification, or to correct a charge they believe is in error, Defendants divert customers through a remote, understaffed and undertrained call center hotline. Customers seldom or never talk with the same representative twice, and the representative on the line is almost always looking at the customer's account for the first time. Defendants' representatives regularly refuse or fail to provide necessary information or to correct problems.

2

6. The improper charges described herein have a snowball effect, often forcing the consumers into default status and foreclosure, resulting in further improper and unauthorized fees and charges.

7. Defendants routinely treat borrowers as if the borrowers are in default on their loans, even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements.

8. . Plaintiff Chatman's home-secured loan was serviced by Defendants during the period covered by this action, and he was assessed improper charges by Defendants, as detailed herein. The mortgage loan was entered into in Jefferson County, Alabama. Defendants, by and through various agents and employees, made misrepresentations at this time and after the loan closing, suppressed material facts from Plaintiff Chatman at this time and after the closing, and engaged in other misconduct as set out herein. Plaintiff Chatman relied upon such fraud and reasonably believed that Defendants would not engage in the other misconduct alleged herein. Plaintiff Chatman was proximately damaged as a result of such fraud and other misconduct.

9. Plaintiff Squires' home-secured loan was serviced by Defendants during the period covered by this action, and he was assessed improper charges by Defendants, as detailed herein. The mortgage loan was entered into in Barbour County, Alabama. Defendants, by and through various agents and employees, made misrepresentations at this time and after the loan closing, suppressed material facts from Plaintiff Squires at this time and after the closing, and engaged in other misconduct as set out herein. Plaintiff Squires relied upon such fraud and reasonably believed that Defendants would not engage in the other misconduct alleged herein. Plaintiff Squires was proximately damaged as a result of such fraud and other misconduct.

3

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action. Defendants do business in the State of Alabama and have received and continue to receive substantial revenue and profits from the improper charges in the State of Alabama. Defendants transact business in the Eufaula Division of Barbour County, Alabama and have received and continue to receive substantial revenue and profits from the improper charges in the Eufaula Division of Barbour County, Alabama and have further made material omissions and misrepresentations, as well as engaged in other misconduct, in the Eufaula Division of Barbour County, Alabama.

11.    Venue in this case is proper in Barbour County, Alabama, in that a substantial portion of the conduct which forms the basis of this action occurred in such venue, and Plaintiff Squires resides in such venue.

## PARTIES

12.    Plaintiff Chatman is a resident citizen of Jefferson County, Alabama.

13.    Plaintiff Squires is a resident citizen of Barbour County, Alabama.

14.    GMAC Mortgage, LLC is a Delaware corporation which is qualified to do business and is doing business in the State of Alabama and which has its principal place of business at 1100 Virginia Drive, Fort Washington, Pennsylvania 19034. It's appointed agent for service of process in Alabama is CSC Lawyers Incorporating Service, Inc., 150 South Perry Street, Montgomery, Alabama 36104.

15.    GMAC Mortgage Corporation is a Pennsylvania corporation which is qualified to do business and is doing business in the State of Alabama and which has its principal place of business at 7320 Old York Road, Melrose Park, Pennsylvania 19126. It's appointed agent for

4

service of process in Alabama is CSC Lawyers Incorporating Service, Inc., 150 South Perry Street, Montgomery, Alabama 36104.

16.    Defendant Ally Financial, Inc. is a Delaware corporation which is qualified to do business and is doing business in the State of Alabama and which has its principal place of business at 200 Renaissance Center, Detroit, Michigan 48265. It's appointed agent for service of process in Alabama is CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, Alabama 36014.

17.    Defendants do business in the Eufaula Division of Barbour County, Alabama and Defendants acted in concert by marketing and collecting money from the improper charges through the coordinated inter-corporate relationship. Defendants were and are active participants in the misleading, unlawful, fraudulent, and unconscionable practices described herein.

18.    Plaintiffs bring this action as an Alabama class action pursuant to Rule 23 of the Alabama Rules of Civil Procedure. This class is more specifically defined as follows:

"all Alabama residents who paid late fees, property inspection fees, "Speed pay"

fees, fax payoff fees, wire fees, "Equity Builder" fees, "pay by phone" fees and/or

other similar charges to Defendants."

19.    Plaintiffs maintain the right to create subclasses, if necessary.

20.    Excluded from the proposed class are Defendants, any entity in which Defendants have a controlling interest and any agents, employees, officers and/or directors of Defendants or any other such entities and their representatives, heirs, successor and/or assigns, as well as any people who paid the alleged improper charges to Defendants and who are or where in bankruptcy and received a discharge within the time period six years prior to the filing of the original complaint.

5

21. The exact number of Class members is unknown to Plaintiffs at this time, but such information can be ascertained through appropriate discovery, specifically from records maintained by Defendants and their agents.

## EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS OF LAW AND FACT

22.    There are common questions of law and fact applicable to the class. These common questions of law and fact predominate over any questions affecting only individual members of the class. Said common questions include, but are not limited to, the following:

a. Whether Defendants engaged in a widespread and systematic practice of charging excessive amounts for the fees at issue in this case.

b. Whether the fees at issue in this case are designed as profit enhancers for Defendants.

c. Whether the charging of the fees at issue in this case constitute breaches of contract.

d. Whether the charging of the fees at issue in this case are inconsistent with applicable law.

e. Whether it would be inequitable and unjust for Defendants to retain the monies received from the wrongful and excessive fees at issue in this case.

f. Whether Defendants conspired to commit the wrongful acts alleged herein.

g. Whether Plaintiffs and class members are entitled to class relief as requested herein.

h. Whether the fees at issue herein are excessive under the terms of the contract and/or applicable law.

i. Whether Defendants assessed charges for unnecessary and unauthorized property inspections and/or whether such property inspection fees are excessive.

j. Whether Defendants assessed improper and excessive late fees.

k. Whether the late fees are intended to be a penalty.

6

l. Whether Defendants charged borrowers unauthorized and excessive "Speedpay" and/or other electronic payment processing fees.

m. Whether Defendants assessed improper and excessive fax, "Equity Builder" fees, payoff fees and wire fees.

n. Whether GMAC's practice of invoicing and assessing borrowers for the fees at issue in this case is consistent with the terms and language of the customer contracts.

o. Whether Defendants have been unjustly enriched by assessing and collecting the fees at issue in this case.

p. Whether Defendants have ceased charging the improper and excessive fees at issue in this case.

q. Whether an injunction is necessary to keep Defendants from charging the unnecessary and excessive fees in this case.

r. Whether the fees at issue in this case are unconscionable.

## TYPICALITY AND NUMEROSITY

23.    The claims of the named Plaintiffs are typical of the claims of the class. The proposed class exceeds 40 members.

## ADEQUATE REPRESENTATION

24.    The Plaintiffs will fairly and adequately protect the interests of the members of the class and have no interest antagonistic to those of other class members. Plaintiffs have retained class counsel competent to prosecute class actions and such class counsel are financially able to represent the class.

7

## SUPERIORITY

25.    The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable. The interests of judicial economy favor adjudicating the claims for the Plaintiffs class rather than on an individual basis.

26.    Questions of law and fact predominate over any questions affecting only individual members.

## FACTUAL ALLEGATIONS

27.    Plaintiffs and putative class members took out a mortgage through a local lender. Defendants have engaged in the unfair, unlawful, fraudulent, wrongful and deceptive practice of adding and/or force-placing the fees, costs and charges on plaintiffs and putative class members' accounts.

28.    The right to service these mortgage loans closed through a local lender is often farmed out to a third-party "mortgage servicer," such as Defendants, who only profit from the fees and other charges that can be generated on servicing the mortgages. According to a study done by the Mortgage Bankers Association of America, mortgage servicers average only $60 per loan per year in net profit. Thus, they have a strong incentive to impose any fees and charges they can to increase their profit margin.

29.    Defendants services loans on behalf of mortgage lenders, not Plaintiffs and the Class. Defendants' "customers" are a captive audience. The customers have no choice in who services their loans. They have no option to changes servicers if they are unhappy in any way.

30.    Because their "customers" have no way out, Defendants also has no incentive to offer good customer service. Because Defendants have demonstrated that they will force

8

customers into default and foreclosure, Plaintiffs and the Class are forced to pay the illegal, unnecessary and excessive charges.

31.    Mortgage servicing abuses, such as those alleged herein, are standard operating procedure for Defendants and certain other mortgage servicers, as part of their goal to maximize profits on the backs of struggling homeowners. Defendants makes even more profits if a loan goes into default, because Defendants can charge additional fees, including but not limited to demand fees, inspection fees, overnight delivery fees, fax fees, attorneys fees, and payoff statement charges.

32.    Throughout the time relevant hereto, Defendants have engaged in a uniform scheme and course of conduct to inflate their corporate profits by charging and collecting various fees not authorized by the loan documents or applicable law. The components of this scheme involve common tactics, including, but not limited to:

> a. Unauthorized and excessive "Speedpay" and/or other electronic payment processing fees;
>
> b. Assessment of charges of unnecessary and unauthorized property inspections;
>
> c. Improper and excessive assessment of "Equity Builder" fees, payoff fees, and late fees; and
>
> d. Other improper charges set out herein.

33.    Defendants charge customers a monthly "Speedpay" or "pay by phone fee" of $7.50 to $10.00 or more, merely for the electronic processing of a mortgage payment. Customers are forced to pay this fee because Defendants lose payments, and Defendants often fail to process checks received through the mail in a timely fashion. Thus, Plaintiffs and the Class must pay this fee in order to avoid late fees and other charges.

9

34.    Defendants charge customers multiple, unnecessary, and excessive "property inspection" fees, often on a monthly basis, without any notice that customers' property was being inspected, or any explanation of why any inspection was necessary. When customers of the Class called to ask why the fee was assessed, Defendants responded that it sends people to drive by their homes to confirm that someone is still living there. In reality, most, if not all, monthly inspections are not done at all, even though Defendants claim otherwise. Even if such property inspections are due, the amount Defendants charge is well in excess of the cost of the property inspections. Such excessive fees are not permitted.

35.    Defendants also charge late fees in excess of that permitted by loan documents and other applicable law.

PLAINTIFFS, INDIVIDUALLY AND ON BEHALF OF THE PUTATIVE CLASS, MAKE NO CLAIMS PURSUANT TO FEDERAL LAW AND FURTHER MAKE NO CLAIMS WHICH WOULD GIVE RISE TO ANY FEDERAL CAUSE OF ACTION. PLAINTIFFS' CLAIMS ARE BASED SOLELY UPON STATE LAW. ADDITIONALLY, PLAINTIFFS ON BEHALF OF THEMSELVES AND PUTATIVE CLASS MEMBERS, DO NOT MAKE ANY CLAIM FOR RELIEF, INCLUDING BOTH EQUITABLE RELIEF AND MONETARY DAMAGES, IN EXCESS OF $74,500.00 IN THE AGGREGATE FOR PLAINTIFFS OR ANY CLASS MEMBER. UNDER NO CIRCUMSTANCES WOULD THE TOTAL AMOUNT OF RELIEF, INCLUDING BOTH EQUITABLE RELIEF AND MONETARY DAMAGES, EXCEED $74,500.00 IN THE AGGREGATE FOR PLAINTIFFS OR EACH CLASS MEMBER. EVEN IF PLAINTIFFS AND EACH CLASS MEMBER RECOVERED UNDER EACH COUNT OF THE COMPLAINT, THE TOTAL RECOVERY FOR PLAINTIFFS AND EACH PUTATIVE CLASS MEMBER WOULD NOT EXCEED $74,500 IN THE AGGREGATE FOR PLAINTIFFS OR EACH CLASS MEMBER AND THE TOTAL DAMAGES FOR THE ENTIRE CLASS WOULD NOT EXCEED $4,995,000, IN THE AGGREGATE, EXCLUDING INTEREST AND COSTS. PLAINTIFFS, ON BEHALF OF THEMSELVES AND THE PUTATIVE CLASS, STATE THAT THE TOTAL DAMAGES FOR THE ENTIRE CLASS, INCLUDING EQUITABLE RELIEF AND MONETARY DAMAGES, ARE $4,995,000 OR LESS, EXCLUDING INTEREST AND COSTS AND UNDER NO CIRCUMSTANCES WILL THE TOTAL DAMAGES, INCLUDING EQUITABLE RELIEF AND MONETARY DAMAGES, FOR PLAINTIFFS AND THE ENTIRE CLASS, IN THE AGGREGATE, EXCEED $4,995,000, EXCLUDING INTEREST AND COSTS.

## FIRST CAUSE OF ACTION

## MISREPRESENTATION

36.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 35, as though fully set forth herein.

37.    At all times material hereto, Defendants were under a duty to not misrepresent the true nature of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees. Defendants intentionally, recklessly or negligently misrepresented that the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees were legitimate charges, when in fact, such charges were improper as set out herein.

38.    Defendants intentionally misled their customers as to the true nature and purpose of their above "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, and/or other similar fees for the purpose of persuading customers to pay such charges without question or negotiation. At the time Defendants made these representations to Plaintiffs, Defendants knew that these representations were false.

39.    Specifically, Defendants misrepresented to Plaintiffs and other members of the putative class the following information:

a. that the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "Equity Builder" fees, and "pay by phone" fees are legitimate charges.

b. the other facts set out herein.

c. that such fees bore a rational relationship to expenses actually incurred by Defendants.

11

40.    By intentionally, recklessly or negligently misrepresenting the nature of the "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees, as set out herein, Defendants have taken advantage of Plaintiffs and other putative class members, who based upon such misrepresentations, were misled into paying such fees and charges.

41.    Defendants' representations have damaged Plaintiffs and other putative class members for which damages are sought.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and others similarly situated, seeks to recover compensatory and punitive damages and are entitled to damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

## SECOND CAUSE OF ACTION

### SUPPRESSION

42.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 41, as though fully set forth herein.

43.    Defendants suppressed or concealed from their customers the true nature of their fees and charges as set out hereinabove, with the result that customers paid such charges without question or negotiation. At the time Defendants suppressed this information from Plaintiffs, Defendants knew or should have known that they were under a duty to communicate the true nature of their fees and charges.

44.    By suppressing the nature of their fees and charges and not disclosing material information concerning such fees and charges, Defendants have taken advantage of Plaintiffs,

12

who based upon such omissions, were misled into paying such fees and charges. Specifically, Defendants failed to disclose the following facts:

a.  That Defendants were deceptively placing "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees on Plaintiffs and other customers' invoices so that these charges would be paid without their conscious permission, which resulted in Defendants' engagement in unfair and fraudulent business practices.

b.  The true nature of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees and the fact that such fees and charges are not necessary.

c.  The true nature, including the excessiveness thereof, of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees.

d.  That Defendants were charging improper "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees than allowed by law.

e.  That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees are excessive and not allowed by law or by the contract;

f.  That Plaintiffs and other customers were not required to pay the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees.

g.  That Defendants would fail to send Plaintiffs and other customers enough information to make an informed decision regarding the "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees.

h.  The unconscionability of the fees and the fact that Defendants were engaging in unconscionable practices as set out herein.

i.  The fact that Defendants were unilaterally increasing payments when it is not allowed by law or the contract.

j.  That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "Equity Builder" fees, and "pay by phone" fees are excessive.

k..  That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, and "Equity Builder" fees are not legitimate charges.

l.  That the late fees are not rationally related to any damage suffered by Defendants and/or that such fees are "penalties" under applicable law;

m.  The other facts set out herein.

n.  That such fees bore a rational relationship to expenses actually incurred by Defendants.

Defendants also failed to disclose other facts as set out herein. Such nondisclosure constitutes suppression as Defendants knew or should have known of such facts and Defendants further had a duty to communicate such facts.

45.     Defendants' suppression has damaged Plaintiffs and putative class members. As a result, damages are sought.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and others similarly situated, seeks to recover compensatory and punitive damages and are entitled to

14

damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

### THIRD CAUSE OF ACTION

### BREACH OF CONTRACT

46.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 45 as though fully set forth herein.

47.    Defendants service loans evidenced by standard form notes and mortgages, the relevant provisions of which are uniform.

48.    Defendants have imposed or collected amounts that are not due and owing by contract and/or applicable law including, without limitation, property inspection fees, late fees, fax payoff fees, wire fees, "pay by phone" fees, "Speedpay" fees, payment processing fees, "Equity Builder" fees, and other improper fees.

49.    Defendants have misapplied or failed to apply payments, or imposed late fees and other charges not due, all in breach of their contracts with Plaintiffs and members of the class.

50.    Defendants' improper practices as set out heretofore constitute a breach of contract for which Plaintiffs and putative class members have been damaged. Such breaches of contract are ongoing and continue today. Defendants' practices caused Plaintiffs and putative class members to pay excessive, unearned and unnecessary fees and charges. Plaintiffs and putative class members are entitled to compensatory damages in an amount equal to the improper and excessive fees and charges paid to Defendants, plus interest.

WHEREFORE PREMISES CONSIDERED, Plaintiffs and putative class members seek to recover compensatory damages and are entitled to damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

## FOURTH CAUSE OF ACTION

### CONSPIRACY

51.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 50, as though fully set forth herein.

52.    Defendants conspired and combined among themselves and unnamed third parties, including fictitious parties, to do the acts complained herein. Plaintiffs and putative class members have been billed and Plaintiffs and putative class members have paid improper fees and charges to Defendants and their affiliated entities, for which Plaintiffs and putative class members have been damaged.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover and are entitled to compensatory and punitive damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

## FIFTH CAUSE OF ACTION

### UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

53.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 52, as though fully set forth herein.

54.    Defendants, by suppressing from Plaintiffs and putative class members the material facts set forth herein, by misrepresenting the material facts set forth herein and by engaging in the other unlawful and wrongful conduct set out herein, knowingly obtained or exerted unauthorized control over Plaintiffs' property and putative class members' property with the intent to deprive Plaintiffs and putative class members of their property and/or knowingly

16

obtained control over said property by deception and with the intent to deprive Plaintiffs and putative class members of their property by:

    a. creating or confirming an impression in Plaintiffs and putative class members which was false and which Defendants did not believe to be true; and/or

    b. failing to correct a false impression which Defendants previously created or affirmed; and/or

    c. failing to correct a false impression which Defendants were under a duty to correct; and/or

    d. preventing Plaintiffs and putative class members from acquiring information pertinent to the disposition of their property; and/or

    e. the other actions and/or inactions set out herein.

55.    Such illegal and wrongful fees charged to Plaintiffs and putative class members by Defendants has resulted in Defendants obtaining money, which in equity and good conscience, belong to Plaintiffs and putative class members.

56.    Plaintiffs and putative class members further request that the Court impose a Constructive Trust on such monies and require Defendants to repay such monies to Plaintiffs and putative class members.

57.    As a direct result thereof, Defendants have been unjustly enriched, and Plaintiffs have been injured and damaged and seeks recovery of all monies improperly procured.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover and are entitled to damages in an amount which do not exceed $74,500.00 in the aggregate for each Plaintiffs and each class member.

## SIXTH CAUSE OF ACTION

### INJUNCTIVE RELIEF

58.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 57, as though fully set forth herein.

59.    Plaintiffs and putative class members respectfully request that this Honorable Court enjoin Defendants from collecting such improper and excessive fees and charges and further enjoin Defendants from adding improper fees and charges and/or any other similar fees and charges to Plaintiffs' loans and putative class members' loans due to the wrongful and illegal conduct set forth herein.

## SEVENTH CAUSE OF ACTION

### NEGLIGENCE

60.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 59 as though fully set forth herein.

61.    Defendants' conduct as set out herein constitutes negligence. Such conduct has proximately caused damage to Plaintiffs and putative class members.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover compensatory damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

## PLEASE SERVE NEWLY ADDED DEFENDANT ALLY FINANCIAL, INC. BY CERTIFIED MAIL:

Ally Financial Inc.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104

Respectfully submitted,


/s/ Nicholas W. Armstrong
Robert G. Methvin, Jr. (MET009)
Nicholas W. Armstrong (ARM025)
Attorneys for Plaintiffs

**OF COUNSEL:**
**MCCALLUM, METHVIN & TERRELL, P.C.**
2201 Arlington Avenue South
Birmingham, Alabama 35205
(205) 939-0199 - telephone
(205) 939-0399 - facsimile

Albert Adams
Post Office Box 670
Eufaula, AL 36072-0670
(334) 687-1326 - telephone
(866) 910-9989 - facsimile

Charles A. McCallum III
R. Brent Irby
McCallum, Hoagland, Cook & Irby, LLP
905 Montgomery Highway
Suite 201
Vestavia Hills, AL 36216
(205) 824-7767 - telephone
(205) 824-7768 - facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2012, I electronically filed the foregoing with the Clerk of Court using the Alacourt system, which will send notification of such filing to all counsel of record.

/s/ Nicholas W. Armstrong
OF COUNSEL

## <u>Exhibit 8</u>

**Robinson Second Amended Complaint**

ELECTRONICALLY FILED
7/3/2012 12:46 PM
CV-2008-900007.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
DAVID NIX, CLERK

## IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
### EUFAULA DIVISION

| | |
|---|---|
| RUBY ROBINSON and WILLIE CLARA HILL,       ) ) ) | |
|      Plaintiffs,       ) ) | |
| v.       ) ) | CIVIL ACTION NUMBER |
| HOMECOMINGS FINANCIAL, LLC f/k/a HOMECOMINGS FINANCIAL NETWORK, INC, and ALLY FINANCIAL, INC. f/k/a GMAC INC.       ) ) ) ) | CV-2008-900007 |
|      Defendants. | |

## SECOND AMENDED COMPLAINT

COME NOW the Plaintiffs, Ruby Robinson ("Robinson") and Willie Clara Hill ("Hill"), individually and on behalf of a class of all persons or entities in Alabama who are similarly situated, file this Amended and Restated Class Action Complaint against the Defendants, HOMECOMINGS FINANCIAL, LLC f/k/a HOMECOMINGS FINANCIAL NETWORK, INC., and ALLY FINANCIAL, INC. f/k/a/ GMAC Inc. (collectively "Defendants").[1] In support thereof, Plaintiffs state the following:

## NATURE OF THE CASE

1.    Through a fraudulent, unlawful and unfair course of conduct, Defendants have, over the course of years, billed improper fees, costs and charges, including property inspection fees, late fees, fax payoff fees, wire fees, "pay by phone" fees, and fees for using their "Speedpay" automated payment system to Plaintiffs and Defendants' other Alabama customers.

---

[1] By order dated May 23, 2012, the Court stayed this case as to Homecomings Financial, LLC due to pending bankruptcy proceedings.

The fees and charges are fraudulent, excessive, unnecessary, mischaracterized, unconscionable, misleading, and not collectable.

2.    Defendants assess these improper fees, costs and charges (collectively the "improper charges") to borrowers' accounts in order to maximize their profits, and with the goal of putting borrowers into default status. They demand payment in various contexts including, without limitation, monthly bills, reinstatement demands, payoff statements, court pleadings, collection letters and collection calls. Defendants then collect the improper charges from borrowers' monthly payments, and also from the proceeds of foreclosure sales and loan payoffs.

3.    Defendants charge customers a monthly "Speedpay" fee merely for the electronic processing of a mortgage payment. Customers are forced to pay this fee because Defendants often do not process checks received through the mail in a reliable or timely fashion, resulting in additional fees.

4.    Defendants charge customers multiple, unnecessary "property inspection" fees, sometimes on a monthly basis, and sometimes multiple times in one month. Defendants, in many instances, never perform the property inspection. The property inspection fee is always in an amount in excess of the actual cost of the alleged "property inspection."

5.    Defendants structure account statements in a way that makes it extremely difficult or impossible for borrowers to determine how much they owe, or how any mortgage payment will be allocated. When customers call for clarification, or to correct a charge they believe is in error, Defendants divert customers through a remote, understaffed and undertrained call center hotline. Customers seldom or never talk with the same representative twice, and the representative on the line is almost always looking at the customer's account for the first time.

Defendants' representatives regularly refuse or fail to provide necessary information or to correct problems.

6.    The improper charges described herein have a snowball effect, often forcing the consumers into default status and foreclosure, resulting in further improper and unauthorized fees and charges.

7.    Defendants routinely treat borrowers as if the borrowers are in default on their loans, even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements.

8.    Plaintiff Robinson's home-secured loan was serviced by Defendants during the period covered by this action, and he was assessed improper charges by Defendants, as detailed herein. The mortgage loan was entered into in Barbour County, Alabama on or about September 2, 2005. Defendants, by and through various agents and employees, made misrepresentations at this time and after the loan closing, suppressed material facts from Plaintiff Robinson at this time and after the closing, and engaged in other misconduct as set out herein. Plaintiff Robinson relied upon such fraud and reasonably believed that Defendants would not engage in the other misconduct alleged herein. Plaintiff Robinson was proximately damaged as a result of such fraud and other misconduct.

9.    Plaintiff Hill's home-secured loan was serviced by Defendants during the period covered by this action, and he was assessed improper charges by Defendants, as detailed herein. The mortgage loan was entered into in Barbour County, Alabama on or about October 1, 1999. Defendants, by and through various agents and employees, made misrepresentations at this time and after the loan closing, suppressed material facts from Plaintiff Hill at this time and after the closing, and engaged in other misconduct as set out herein. Plaintiff Hill relied upon such fraud

3

and reasonably believed that Defendants would not engage in the other misconduct alleged herein. Plaintiff Squires was proximately damaged as a result of such fraud and other misconduct.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action. Defendants do business in the State of Alabama and have received and continue to receive substantial revenue and profits from the improper charges in the State of Alabama. Defendants transact business in the Eufaula Division of Barbour County, Alabama and have received and continue to receive substantial revenue and profits from the improper charges in the Eufaula Division of Barbour County, Alabama and have further made material omissions and misrepresentations, as well as engaged in other misconduct, in the Eufaula Division of Barbour County, Alabama.

11.    Venue in this case is proper in Barbour County, Alabama, in that a substantial portion of the conduct which forms the basis of this action occurred in such venue, and Plaintiff Squires resides in such venue.

## PARTIES

12.    Plaintiff Robinson is a resident citizen of Barbour County, Alabama.

13.    Plaintiff Hill is a resident citizen of Barbour County, Alabama.

14.    Defendant Homecomings Financial, LLC is a Delaware corporation which is qualified to do business and is doing business in the State of Alabama and which has its principal place of business at 8400 Normandale Lake Boulevard, Suite 250, Minneapolis, Minnesota 55437. It's appointed agent for service of process in Alabama is CSC Lawyers Incorporating Service, Inc., 150 South Perry Street, Montgomery, Alabama 36104.

4

15.    Defendant Ally Financial, Inc. is a Delaware corporation which is qualified to do business and is doing business in the State of Alabama and which has its principal place of business at 200 Renaissance Center, Detroit, Michigan 48265. It's appointed agent for service of process in Alabama is CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, Alabama 36014.

16.    Defendants do business in the Eufaula Division of Barbour County, Alabama and Defendants acted in concert by marketing and collecting money from the improper charges through the coordinated inter-corporate relationship. Defendants were and are active participants in the misleading, unlawful, fraudulent, and unconscionable practices described herein.

17.    Plaintiffs bring this action as an Alabama class action pursuant to Rule 23 of the Alabama Rules of Civil Procedure. This class is more specifically defined as follows:

"all Alabama residents who paid late fees, property inspection fees, "Speed pay" fees, fax payoff fees, wire fees, "pay by phone" fees and/or other similar charges to Defendants."

18.    Plaintiffs maintain the right to create subclasses, if necessary.

19.    Excluded from the proposed class are Defendants, any entity in which Defendants have a controlling interest and any agents, employees, officers and/or directors of Defendants or any other such entities and their representatives, heirs, successor and/or assigns, as well as any people who paid the alleged improper charges to Defendants and who are or where in bankruptcy and received a discharge within the time period six years prior to the filing of the original complaint.

5

20.    The exact number of Class members is unknown to Plaintiffs at this time, but such information can be ascertained through appropriate discovery, specifically from records maintained by Defendants and their agents.

**EXISTENCE AND PREDOMINANCE OF
COMMON QUESTIONS OF LAW AND FACT**

21.    There are common questions of law and fact applicable to the class. These common questions of law and fact predominate over any questions affecting only individual members of the class. Said common questions include, but are not limited to, the following:

a. Whether Defendants engaged in a widespread and systematic practice of charging excessive amounts for the fees at issue in this case.

b. Whether the fees at issue in this case are designed as profit enhancers for Defendants.

c. Whether the charging of the fees at issue in this case constitute breaches of contract.

d. Whether the charging of the fees at issue in this case are inconsistent with applicable law.

e. Whether it would be inequitable and unjust for Defendants to retain the monies received from the wrongful and excessive fees at issue in this case.

f. Whether Defendants conspired to commit the wrongful acts alleged herein.

g. Whether Plaintiffs and class members are entitled to class relief as requested herein.

h. Whether the fees at issue herein are excessive under the terms of the contract and/or applicable law.

i. Whether Defendants assessed charges for unnecessary and unauthorized property inspections and/or whether such property inspection fees are excessive.

j. Whether Defendants assessed improper and excessive late fees.

k. Whether the late fees are intended to be a penalty.

l. Whether Defendants charged borrowers unauthorized and excessive "Speedpay" and/or other electronic payment processing fees.

m. Whether Defendants assessed improper and excessive fax, payoff fees and wire fees.

n. Whether Defendants' practice of invoicing and assessing borrowers for the fees at issue in this case is consistent with the terms and language of the customer contracts.

o. Whether Defendants have been unjustly enriched by assessing and collecting the fees at issue in this case.

p. Whether Defendants have ceased charging the improper and excessive fees at issue in this case.

q. Whether an injunction is necessary to keep Defendants from charging the unnecessary and excessive fees in this case.

r. Whether the fees at issue in this case are unconscionable.

## TYPICALITY AND NUMEROSITY

22.    The claims of the named Plaintiffs are typical of the claims of the class. The proposed class exceeds 40 members.

## ADEQUATE REPRESENTATION

23.    The Plaintiffs will fairly and adequately protect the interests of the members of the class and have no interest antagonistic to those of other class members. Plaintiffs have retained class counsel competent to prosecute class actions and such class counsel are financially able to represent the class.

## SUPERIORITY

24.    The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is

impracticable. The interests of judicial economy favor adjudicating the claims for the Plaintiffs class rather than on an individual basis.

25.     Questions of law and fact predominate over any questions affecting only individual members.

## FACTUAL ALLEGATIONS

26.     Plaintiffs and putative class members took out a mortgage through a local lender. Defendants have engaged in the unfair, unlawful, fraudulent, wrongful and deceptive practice of adding and/or force-placing the fees, costs and charges on plaintiffs and putative class members' accounts.

27.     The right to service these mortgage loans closed through a local lender is often farmed out to a third-party "mortgage servicer," such as Defendants, who only profit from the fees and other charges that can be generated on servicing the mortgages. According to a study done by the Mortgage Bankers Association of America, mortgage servicers average only $60 per loan per year in net profit. Thus, they have a strong incentive to impose any fees and charges they can to increase their profit margin.

28.     Defendants services loans on behalf of mortgage lenders, not Plaintiffs and the Class. Defendants' "customers" are a captive audience. The customers have no choice in who services their loans. They have no option to changes servicers if they are unhappy in any way.

29. .   Because their "customers" have no way out, Defendants also has no incentive to offer good customer service. Because Defendants have demonstrated that they will force customers into default and foreclosure, Plaintiffs and the Class are forced to pay the illegal, unnecessary and excessive charges.

30.    Mortgage servicing abuses, such as those alleged herein, are standard operating procedure for Defendants and certain other mortgage servicers, as part of their goal to maximize profits on the backs of struggling homeowners. Defendants makes even more profits if a loan goes into default, because Defendants can charge additional fees, including but not limited to demand fees, inspection fees, overnight delivery fees, fax fees, attorneys fees, and payoff statement charges.

31.    Throughout the time relevant hereto, Defendants have engaged in a uniform scheme and course of conduct to inflate their corporate profits by charging and collecting various fees not authorized by the loan documents or applicable law. The components of this scheme involve common tactics, including, but not limited to:

a. Unauthorized and excessive "Speedpay" and/or other electronic payment processing fees;

b. Assessment of charges of unnecessary and unauthorized property inspections;

c. Other improper charges set out herein.

32.    Defendants charge customers a monthly "Speedpay" or "pay by phone fee" of $7.50 to $10.00 or more, merely for the electronic processing of a mortgage payment. Customers are forced to pay this fee because Defendants lose payments, and Defendants often fail to process checks received through the mail in a timely fashion. Thus, Plaintiffs and the Class must pay this fee in order to avoid late fees and other charges.

33.    Defendants charge customers multiple, unnecessary, and excessive "property inspection" fees, often on a monthly basis, without any notice that customers' property was being inspected, or any explanation of why any inspection was necessary. When customers of the Class called to ask why the fee was assessed, Defendants responded that it sends people to drive by

9

their homes to confirm that someone is still living there. In reality, most, if not all, monthly inspections are not done at all, even though Defendants claim otherwise. Even if such property inspections are due, the amount Defendants charge is well in excess of the cost of the property inspections. Such excessive fees are not permitted.

34.    Defendants also charge late fees in excess of that permitted by loan documents and other applicable law.

**PLAINTIFFS, INDIVIDUALLY AND ON BEHALF OF THE PUTATIVE CLASS, MAKE NO CLAIMS PURSUANT TO FEDERAL LAW AND FURTHER MAKE NO CLAIMS WHICH WOULD GIVE RISE TO ANY FEDERAL CAUSE OF ACTION. PLAINTIFFS' CLAIMS ARE BASED SOLELY UPON STATE LAW. ADDITIONALLY, PLAINTIFFS ON BEHALF OF THEMSELVES AND PUTATIVE CLASS MEMBERS, DO NOT MAKE ANY CLAIM FOR RELIEF, INCLUDING BOTH EQUITABLE RELIEF AND MONETARY DAMAGES, IN EXCESS OF $74,500.00 IN THE AGGREGATE FOR PLAINTIFFS OR ANY CLASS MEMBER. UNDER NO CIRCUMSTANCES WOULD THE TOTAL AMOUNT OF RELIEF, INCLUDING BOTH EQUITABLE RELIEF AND MONETARY DAMAGES, EXCEED $74,500.00 IN THE AGGREGATE FOR PLAINTIFFS OR EACH CLASS MEMBER. EVEN IF PLAINTIFFS AND EACH CLASS MEMBER RECOVERED UNDER EACH COUNT OF THE COMPLAINT, THE TOTAL RECOVERY FOR PLAINTIFFS AND EACH PUTATIVE CLASS MEMBER WOULD NOT EXCEED $74,500 IN THE AGGREGATE FOR PLAINTIFFS OR EACH CLASS MEMBER AND THE TOTAL DAMAGES FOR THE ENTIRE CLASS WOULD NOT EXCEED $4,995,000, IN THE AGGREGATE, EXCLUDING INTEREST AND COSTS. PLAINTIFFS, ON BEHALF OF THEMSELVES AND THE PUTATIVE CLASS, STATE THAT THE TOTAL DAMAGES FOR THE ENTIRE CLASS, INCLUDING EQUITABLE RELIEF AND MONETARY DAMAGES, ARE $4,995,000 OR LESS, EXCLUDING INTEREST AND COSTS AND UNDER NO CIRCUMSTANCES WILL THE TOTAL DAMAGES, INCLUDING EQUITABLE RELIEF AND MONETARY DAMAGES, FOR PLAINTIFFS AND THE ENTIRE CLASS, IN THE AGGREGATE, EXCEED $4,995,000, EXCLUDING INTEREST AND COSTS.**

## FIRST CAUSE OF ACTION

### MISREPRESENTATION

35.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 34, as though fully set forth herein.

10

36.    At all times material hereto, Defendants were under a duty to not misrepresent the true nature of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, and/or other similar fees. Defendants intentionally, recklessly or negligently misrepresented that the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, and/or other similar fees were legitimate charges, when in fact, such charges were improper as set out herein.

37.    Defendants intentionally misled their customers as to the true nature and purpose of their above "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, and/or other similar fees for the purpose of persuading customers to pay such charges without question or negotiation. At the time Defendants made these representations to Plaintiffs, Defendants knew that these representations were false.

38.    Specifically, Defendants misrepresented to Plaintiffs and other members of the putative class the following information:

a. that the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, and "pay by phone" fees are legitimate charges.

b. the other facts set out herein.

c. that such fees bore a rational relationship to expenses actually incurred by Defendants.

39.    By intentionally, recklessly or negligently misrepresenting the nature of the "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, and/or other similar fees, as set out herein, Defendants have taken advantage of Plaintiffs and other putative class members, who based upon such misrepresentations, were misled into paying such fees and charges.

11

40.    Defendants' representations have damaged Plaintiffs and other putative class members for which damages are sought.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and others similarly situated, seeks to recover compensatory and punitive damages and are entitled to damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

## SECOND CAUSE OF ACTION

### SUPPRESSION

41.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 40, as though fully set forth herein.

42.    Defendants suppressed or concealed from their customers the true nature of their fees and charges as set out hereinabove, with the result that customers paid such charges without question or negotiation. At the time Defendants suppressed this information from Plaintiffs, Defendants knew or should have known that they were under a duty to communicate the true nature of their fees and charges.

43.    By suppressing the nature of their fees and charges and not disclosing material information concerning such fees and charges, Defendants have taken advantage of Plaintiffs, who based upon such omissions, were misled into paying such fees and charges. Specifically, Defendants failed to disclose the following facts:

a. That Defendants were deceptively placing "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, and/or other similar fees on Plaintiffs and other customers' invoices so that these charges would be paid

12

without their conscious permission, which resulted in Defendants' engagement in unfair and fraudulent business practices.

b.  The true nature of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, and/or other similar fees and the fact that such fees and charges are not necessary.

c.  The true nature, including the excessiveness thereof, of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, and/or other similar fees.

d.  That Defendants were charging improper "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, and/or other similar fees than allowed by law.

e.  That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, and/or other similar fees are excessive and not allowed by law or by the contract;

f.  That Plaintiffs and other customers were not required to pay the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "and/or other similar fees.

g.  That Defendants would fail to send Plaintiffs and other customers enough information to make an informed decision regarding the "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, and/or other similar fees.

h.  The unconscionability of the fees and the fact that Defendants were engaging in unconscionable practices as set out herein.

13

    i.  The fact that Defendants were unilaterally increasing payments when it is not allowed by law or the contract.

    j.  That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, and "pay by phone" fees are excessive.

    k.  That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees,  and "pay by phone" fees are not legitimate charges.

    l.  That the late fees are not rationally related to any damage suffered by Defendants and/or that such fees are "penalties" under applicable law;

    m. The other facts set out herein.

    n. That such fees bore a rational relationship to expenses actually incurred by Defendants.

Defendants also failed to disclose other facts as set out herein. Such nondisclosure constitutes suppression as Defendants knew or should have known of such facts and Defendants further had a duty to communicate such facts.

44.    Defendants' suppression has damaged Plaintiffs and putative class members. As a result, damages are sought.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and others similarly situated, seeks to recover compensatory and punitive damages and are entitled to damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

### THIRD CAUSE OF ACTION

### BREACH OF CONTRACT

45.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 44 as though fully set forth herein.

46.     Defendants service loans evidenced by standard form notes and mortgages, the relevant provisions of which are uniform.

47.     Defendants have imposed or collected amounts that are not due and owing by contract and/or applicable law including, without limitation, property inspection fees, late fees, fax payoff fees, wire fees, "pay by phone" fees, "Speedpay" fees, payment processing fees, and other improper fees.

48.     Defendants have misapplied or failed to apply payments, or imposed late fees and other charges not due, all in breach of their contracts with Plaintiffs and members of the class.

49.     Defendants' improper practices as set out heretofore constitute a breach of contract for which Plaintiffs and putative class members have been damaged. Such breaches of contract are ongoing and continue today. Defendants' practices caused Plaintiffs and putative class members to pay excessive, unearned and unnecessary fees and charges. Plaintiffs and putative class members are entitled to compensatory damages in an amount equal to the improper and excessive fees and charges paid to Defendants, plus interest.

WHEREFORE PREMISES CONSIDERED, Plaintiffs and putative class members seek to recover compensatory damages and are entitled to damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

## FOURTH CAUSE OF ACTION

### CONSPIRACY

50.     Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 49, as though fully set forth herein.

51.     Defendants conspired and combined among themselves and unnamed third parties, including fictitious parties, to do the acts complained herein. Plaintiffs and putative class

15

members have been billed and Plaintiffs and putative class members have paid improper fees and charges to Defendants and their affiliated entities, for which Plaintiffs and putative class members have been damaged.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover and are entitled to compensatory and punitive damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

## FIFTH CAUSE OF ACTION

### UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

52. Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 51, as though fully set forth herein.

53. Defendants, by suppressing from Plaintiffs and putative class members the material facts set forth herein, by misrepresenting the material facts set forth herein and by engaging in the other unlawful and wrongful conduct set out herein, knowingly obtained or exerted unauthorized control over Plaintiffs' property and putative class members' property with the intent to deprive Plaintiffs and putative class members of their property and/or knowingly obtained control over said property by deception and with the intent to deprive Plaintiffs and putative class members of their property by:

    a. creating or confirming an impression in Plaintiffs and putative class members which was false and which Defendants did not believe to be true; and/or

    b. failing to correct a false impression which Defendants previously created or affirmed; and/or

c. failing to correct a false impression which Defendants were under a duty to correct; and/or

d. preventing Plaintiffs and putative class members from acquiring information pertinent to the disposition of their property; and/or

e. the other actions and/or inactions set out herein.

54.     Such illegal and wrongful fees charged to Plaintiffs and putative class members by Defendants has resulted in Defendants obtaining money, which in equity and good conscience, belong to Plaintiffs and putative class members.

55.     Plaintiffs and putative class members further request that the Court impose a Constructive Trust on such monies and require Defendants to repay such monies to Plaintiffs and putative class members.

56.     As a direct result thereof, Defendants have been unjustly enriched, and Plaintiffs have been injured and damaged and seeks recovery of all monies improperly procured.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover and are entitled to damages in an amount which do not exceed $74,500.00 in the aggregate for each Plaintiffs and each class member.

## SIXTH CAUSE OF ACTION

### INJUNCTIVE RELIEF

57.     Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 56, as though fully set forth herein.

58.     Plaintiffs and putative class members respectfully request that this Honorable Court enjoin Defendants from collecting such improper and excessive fees and charges and further enjoin Defendants from adding improper fees and charges and/or any other similar fees

17

and charges to Plaintiffs' loans and putative class members' loans due to the wrongful and illegal

conduct set forth herein.

## SEVENTH CAUSE OF ACTION

### NEGLIGENCE

59.     Plaintiffs adopt, re-allege and incorporate herein each and every allegation in

Paragraphs 1 through 58 as though fully set forth herein.

60.     Defendants' conduct as set out herein constitutes negligence. Such conduct has

proximately caused damage to Plaintiffs and putative class members.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and

putative class members, seek to recover compensatory damages in an amount which does not

exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

## PLEASE SERVE NEWLY ADDED DEFENDANT ALLY FINANCIAL, INC. BY CERTIFIED MAIL:

Ally Financial Inc.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104


Respectfully submitted,


/s/ Nicholas W. Armstrong
Robert G. Methvin, Jr. (MET009)
Nicholas W. Armstrong (ARM025)
Attorneys for Plaintiffs


OF COUNSEL:
MCCALLUM, METHVIN & TERRELL, P.C.
2201 Arlington Avenue South
Birmingham, Alabama 35205
(205) 939-0199 - telephone
(205) 939-0399 - facsimile


18

Albert Adams
Post Office Box 670
Eufaula, AL 36072-0670
(334) 687-1326 - telephone
(866) 910-9989 - facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2012, I electronically filed the foregoing with the Clerk of Court using the Alacourt system, which will send notification of such filing to all counsel of record.

/s/ Nicholas W. Armstrong
OF COUNSEL

19

**<u>Exhibit 9</u>**

**January 31, 2014 Letter**



Dykema Gossett PLLC
400 Renaissance Center
Detroit, MI 48243
WWW.DYKEMA.COM
Tel:  (313) 568-6800
Fax:  (313) 568-6658
**Robert Hugh Ellis**

Direct Dial: (313) 568-5448
Direct Fax: (855) 255-1528
Email: REllis@dykema.com
**Via Federal Express & Email**

January 31, 2014

Nick Armstrong
Robert Methvin
Rodney Miller
McCallum, Methvin & Terrell, P.C.
The Highland Building
2201 Arlington Avenue South
Birmingham, AL 35205

Re:  *Chatman, et al v. GMAC Mortgage Corporation, et al*, CV-2008-9000015,
     Barbour County Circuit Court, Eufala, Alabama
     *Donaldson, et al v. GMAC Mortgage, LLC*, SU 09 CV 3359D,  Superior Court of
     Muscogee County, Georgia
     *Robinson, et al v. Homecomings Financial, LLC, et al*, CV-2008-900007, Barbour
     County Circuit Court, Eufala, Alabama

Dear Messrs. Armstrong, Methvin, and Miller:

   We are writing regarding the above-captioned complaints in which your clients bring
numerous claims against Ally Financial Inc. (f/k/a GMAC, Inc., f/k/a GMAC, LLC) concerning
mortgage servicing and securitization.  As has been indicated to you previously, Ally Financial
Inc. is not a proper defendant in these matters.  The complaints improperly conflate multiple
legal entities and seek to hold Ally Financial Inc. liable for the alleged actions and inactions of
indirect subsidiaries.

   Moreover, as you may be aware, on December 11, 2013, the United States Bankruptcy
Court for the Southern District of New York entered an order confirming the Second Amended
Joint Chapter 11 Plan Proposed By Residential Capital, LLC, et al. and the Official Committee
Of Unsecured Creditors.  On December 17, 2013, the Effective Date of the Plan occurred, and
the Plan was substantially consummated.  Copies of the Plan and the Confirmation Order are
attached.

   Article IX,D of the Plan, entitled "Third Party Release," provides a release of all claims
against the Ally Released Parties (which include Ally Financial Inc. and each of its non-debtor

DYKEMA

January 31, 2014
Page 2

affiliates), including claims for tort, fraud, contract or alter ego theories of liability, "arising from or related in any way to the Debtors."[1] To the extent the Complaints in these actions attempt to assert claims against Ally Financial Inc., those claims arise from and are related to the alleged actions of the Debtors.  (See, e.g., *Chatman*, 2nd Am. Compl. ¶¶ 29-34); *Donaldson*. Am. Compl. ¶¶ 21-30); *Robinson*, 2nd Am. Compl. ¶¶ 26-34.)

Article IX,I of the Plan further provides that "all Entities," which the Bankruptcy Code defines to include individuals, "are permanently enjoined and precluded" from "commencing or continuing" any action against any Released Party based on any Released Claims.  Accordingly, we request that plaintiffs voluntarily dismiss, with prejudice, the claims asserted against Ally Financial Inc. in the above-referenced actions.  If your clients do not do so, Ally Financial Inc. will commence proceedings in the Bankruptcy Court in New York to enforce these provisions of the Plan.

Please contact us at the phone number above to discuss this matter.

Sincerely,

DYKEMA GOSSETT PLLC

Robert Hugh Ellis


cc:    Thomas M. Schehr

Enclosures

---

[1] "Debtors" include Residential Capital, LLC and its direct and indirect subsidiaries, including GMAC Mortgage, LLC and Homecomings Financial, LLC.

California | Illinois | Michigan | Minnesota | North Carolina | Texas | Washington, D.C.

**<u>Exhibit 10</u>**

**March 4, 2014 Letter**

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Judson D. Brown
To Call Writer Directly:
(202) 879-5082
judson.brown@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

March 4, 2014

<u>Via Email and Federal Express</u>

Robert G. Methvin, Jr.
McCallum, Methvin, Terrell
The Highland Building
2201 Arlington Avenue South
Birmingham, Alabama 35205

> **Re:** *Chatman, et al v. GMAC Mortgage Corporation*, et al, CV-2008-9000015,
> Barbour County Circuit Court, Eufala, Alabama
> *Donaldson, et al v. GMAC Mortgage, LLC*, SU 09 CV 3359D, Superior
> Court of Muscogee County, Georgia
> *Robinson, et al v. Homecomings Financial, LLC*, et al, CV-2008-900007,
> Barbour County Circuit Court, Eufala, Alabama

Dear Mr. Methvin:

I am counsel to Ally Financial Inc. and its non-debtor subsidiaries (collectively, "Ally") in the Residential Capital, LLC, et al. ("ResCap") Chapter 11 bankruptcy proceedings pending in the United States Bankruptcy Court for the Southern District of New York.

As you know, in December 2013, the Bankruptcy Court overseeing the ResCap bankruptcy confirmed ResCap's Chapter 11 Plan of Reorganization. ResCap's Plan includes a Third Party Release that releases all claims against Ally "arising from or related in any way to the Debtors," including GMAC Mortgage, LLC, Homecomings Financial, LLC, and Homecomings Financial Network, Inc.. (*See* Plan Art. IX.D.) ResCap's Plan also includes an Injunction which "permanently enjoined and precluded" the continuation of any claims against Ally that were released pursuant to the Third Party Release, and the Injunction further states that "[a]ny person injured by any willful violation of this injunction shall be entitled to recover actual damages, including costs and attorneys' fees." (*See* Plan Art. IX.I.)

I understand that you represent Plaintiffs in the above-captioned lawsuits asserting claims against Ally and other defendants in state court in Georgia and Alabama, and that the claims concern various residential mortgage servicing-related fees and costs purportedly charged by

# KIRKLAND & ELLIS LLP

Robert G. Methvin, Jr.
March 4, 2014
Page 2

Debtor entities that your clients allege are improper under various legal theories. Those claims arise from and relate to the business of ResCap and its subsidiaries, including GMAC Mortgage, LLC and Homecomings Financial, LLC. The claims, therefore, are subject to the Third Party Release and the Injunction in ResCap's Plan of Reorganization. As a result, we request that you voluntarily dismiss, with prejudice, the claims asserted against Ally in the above-referenced lawsuits.

We are happy to discuss these issues if that would be helpful. And we would be willing to arrange a telephone conference with the Bankruptcy Court, yourself, and Ally's counsel to discuss these issues. However, if we do not hear from you and you have not dismissed the claims against Ally with prejudice by **Monday, March 10**, Ally will be forced to seek relief in the Bankruptcy Court, including seeking to enforce the Injunction and for fees and costs.

Sincerely,

Judson D. Brown

**<u>Exhibit 11</u>**

**March 10, 2014 Letter**

## McCallum, Methvin & Terrell, p.c.

Attorneys at Law
The Highland Building
2201 Arlington Avenue South
Birmingham, Alabama 35205

(205) 939-0199 Telephone
(205) 939-0399 Facsimile

PHILLIP W. McCALLUM
Also admitted in Texas, Oklahoma
and West Virginia
ROBERT G. METHVIN, JR.
Also admitted in Mississippi
JAMES M. TERRELL
Also admitted in Mississippi

P. MICHAEL YANCEY
Also admitted in Mississippi
and Kentucky
J. MATTHEW STEPHENS
Also admitted in Florida
and Mississippi
RODNEY E. MILLER
Also admitted in Georgia,
Tennessee and West Virginia
NICHOLAS W. ARMSTRONG
Also admitted in California

March 10, 2014

**VIA EMAIL AND FIRST CLASS MAIL**
Judson D. Brown
Kirkland & Ellis, LLP
655 Fifteenth Street, N.W.
Washington, DC 20005

Re:    Chatman et. al. v. GMAC Mortgage Corporation et. al., CV-2008-9000015, Barbour County Circuit Court, Eufaula, Alabama

Donaldson et. al. v. GMAC Mortgage, LLC, SU 09 CV 3359D, Superior Court of Muscogee County, Georgia

Robinson et. al. v. Homecomings Financial, LLC, et. al., CV-2008-900007, Barbour County Circuit Court, Eufaula, Alabama

Dear Judson:

Thank you for your letter of March 4, 2014. We are agreeable to dismissing the Defendants which are debtors from the above cases.

However, it does not appear to us that the release language you cite in the bankruptcy order extends to GMAC, Inc. (now Ally Financial, Inc.) which is not a debtor. From our review, the release you cite is limited to conduct arising from or related to the Debtors. However, in each of the cases you reference, GMAC, Inc./Ally Financial, Inc. is named as a direct defendant due to its own alleged misconduct. That is, the claims against GMAC, Inc./Ally Financial, Inc. are not due to "conduct arising from or related to the debtors." (To the extent that we need to amend the complaints to make this issue more clear, we can certainly discuss this issue with you). It does not appear that the intent or language of the release extends to such direct liability.

We'd like to get your position and any supporting documents you might have so that we can consider this issue fully. After we receive same, we can discuss at your convenience. If necessary, we can ultimately seek instruction from the Courts. Finally, in response to the last

Judson D. Brown
March 10, 2014
Page 2

sentence of your letter regarding fees and costs, we reserve the right to seek same for the filing of any unnecessary or improper motions by your client in the Bankruptcy Court.

Very truly yours,

Robert G. Methvin, Jr.

RGM,Jr.:str

**Exhibit 12**

**March 20, 2014 Letter**

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C.  20005

Judson D. Brown
To Call Writer Directly:
(202) 879-5082
judson.brown@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

March 20, 2014

<u>Via Email and Federal Express</u>

Robert G. Methvin, Jr.
McCallum, Methvin, Terrell
The Highland Building
2201 Arlington Avenue South
Birmingham, Alabama 35205

Re:   *Chatman, et al v. GMAC Mortgage Corporation*, et al, CV-2008-9000015,
Barbour County Circuit Court, Eufala, Alabama
*Donaldson, et al v. GMAC Mortgage, LLC*, SU 09 CV 3359D,  Superior
Court of Muscogee County, Georgia
*Robinson, et al v. Homecomings Financial, LLC*, et al, CV-2008-900007,
Barbour County Circuit Court, Eufala, Alabama

Dear Robert:

I write in response to your March 10, 2014 letter.  Contrary to your interpretation, the
Third Party Release is broad and it extends to claims against Ally Financial Inc. ("Ally").  By its
terms, the Third Party Release "provide[s] a *full and complete discharge and release to the Ally
Released Parties* and their respective property *from any and all Causes of Action whatsoever*,
whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen,
existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract,
violations of federal or state securities laws, veil piercing or alter-ego theories of liability,
contribution, indemnification, joint liability, or otherwise, *arising from or related in any way to
the Debtors*." (Plan Art. IX.D.)

The claims that your clients assert in the above-captioned lawsuits arise from and relate
to the Debtors.  Those claims challenge the securitization, servicing, and fees related to
residential mortgage loans originated and serviced by GMAC Mortgage, LLC and Homecomings
Financial, LLC.  GMAC Mortgage, LLC and Homecomings Financial, LLC are both Debtor
entities.  Your clients' claims therefore fall within the scope of the Third Party Release.

The fact that you named Ally "as a direct defendant" is irrelevant.  As a threshold matter,
Ally's conduct is not at issue in your clients' lawsuits.  Indeed, none of your clients' complaints

Beijing      Chicago      Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai

## KIRKLAND & ELLIS LLP

Robert G. Methvin, Jr.
March 20, 2014
Page 2

include any specific allegations setting forth any specific conduct by Ally. That is unsurprising. Ally had no role in any of the residential mortgage servicing-related fees and costs allegedly charged to your clients. Ally simply is not—and was not—engaged in the residential mortgage business. Ally does not originate, securitize or service residential mortgage loans, and it does not establish or assess fees related to those loans. These activities were conducted by Debtor entities, all subsidiaries of ResCap.

Nor will "amend[ing] the complaints" solve your problem. Your clients' claims are based on the business, and conduct, of Debtor entities—not Ally. Those claims fall squarely within the four corners of the Third Party Release. Pursuant to the Injunction in the Plan, your clients "are permanently enjoined and precluded … from commencing or continuing in any manner" the above-captioned lawsuits against Ally. (Plan Art. IX.I.)

Finally, your request to get Ally's "position and any supporting documents … so that [you] can consider this issue fully" is perplexing. I understand that you received notice of the proceedings in the ResCap bankruptcy, including notice of the confirmation hearing and a copy of the only "supporting documents" necessary to evaluate the issue—namely, the Confirmation Order and the Plan. Even after that, Ally's counsel at Dykema began sending you correspondence on these issues in January and subsequently had conversations with you to discuss these issues, and provided you ample time—more than a month—to "consider this issue fully." You nonetheless stalled, requesting "some more time." At this point, you have had months to consider the Third Party Release and Injunction, and their impact on your lawsuits. Unless you agree to dismiss with prejudice your plaintiffs' claims against Ally by **Monday, March 24**, Ally will be forced to seek relief in the Bankruptcy Court—and Ally will request fees and costs incurred for seeking such relief.

Sincerely,

Judson D. Brown

## <u>Exhibit 13</u>

**Donaldson Second Amended Complaint**

## MUSCOGEE COUNTY SUPERIOR COURT
## STATE OF GEORGIA

ANTHONY AND WANDA DONALDSON,    )
individually and on behalf of all persons    )
similarly situated,    )
    )
        Plaintiffs,    )
    )
v.    )    Civil Action No.: SU 09 CV3359D
    )
GMAC INC.    )
    )
        Defendant.    )

### SECOND AMENDED CLASS ACTION COMPLAINT

COME NOW the Plaintiffs, ANTHONY AND WANDA DONALDSON (hereinafter "Plaintiffs") and bring this Second Amended Complaint seeking damages and other relief on behalf of themselves individually, and as representatives of the class of victims described herein, against GMAC INC., now known as Ally Financial, Inc. (hereinafter "Defendant").[1] In support of Plaintiffs' claims, Plaintiffs state the following:

### INTRODUCTION

1.    Defendant has engaged in wrongful conduct which has resulted in Plaintiffs and putative class members paying certain fees. These fees are unlawful, fraudulent, deceitful, excessive, unnecessary, mischaracterized, unconscionable, and misleading. Defendant's wrongful conduct also constitutes a pattern of racketeering activity by which Defendant unlawfully and improperly acquired Plaintiffs and putative class members' money and property, in violation of Georgia's RICO statute, OCGA § 16-4-1 *et seq.* Defendant has been unjustly enriched through its wrongful conduct.

---

[1] Plaintiff dismisses without prejudice and makes no claims against the former Defendant GMAC Mortgage, LLC. All claims brought herein are made solely against GMAC Inc., which is now known as Ally Financial, Inc., based upon its direct role in the conduct alleged.

2.       Defendant is directly involved in assessing these improper fees, costs and charges to borrowers' accounts in order to maximize its profits, and with the goal of putting borrowers into default status.  Defendant collects or receives a portion of  the improper charges from borrowers' monthly payments, and also from the proceeds, or a portion of the proceeds, of foreclosure sales and loan payoffs.

3.       Defendant is responsible for customers, including Plaintiffs, being charged excessive late fees.  The amount of such late fees is not rationally related to any damage caused by paying late and constitutes a "penalty" under the law.  The amount of such fee is in violation of OCGA § 7-6A-3.  Customers are forced to pay these fees because Defendant often does not process checks received through the mail in a reliable or timely fashion, resulting in additional fees.  The amount of such fees is excessive.

4.       Defendant is directly involved in customers being charged multiple, unnecessary "property inspection" fees, sometimes on a monthly basis, and sometimes multiple times in one month.  In many instances, the property inspection are never performed.  The property inspection fees are always in an amount in excess of the actual cost of the alleged "property inspection."

5.       Customers' account statements are structured in a way that makes it extremely difficult or impossible for them to determine how much they owe, or how any mortgage payment will be allocated.  When customers call for clarification, or to correct a charge they believe is in error, they are diverted through a remote, understaffed and undertrained call center hotline.  Customers seldom or never talk with the same representative twice, and the representative on the line is almost always looking at the customer's account for the first time.   Representatives regularly refuse or fail to provide necessary information or to correct problems.

6.       The improper charges described herein have a snowball effect, often forcing the

2

consumers into default status and foreclosure, resulting in further improper and unauthorized fees and charges. Defendant, in violation of applicable law, applies Plaintiffs' and putative class members' payments first to the improper fees, instead of to interest, then principal, then the improper fees. Such methodology increases the amount owed, thereby improperly placing accounts in default and foreclosure. Such conduct is in violation of applicable law, including OCGA § 7-4-17.

7.    Borrowers are regularly treated as though they are in default on their loans, even though they have tendered timely and sufficient payments or have otherwise complied with mortgage requirements. Defendant has been directly involved in charging Plaintiffs and putative class members other wrongful and excessive charges, but Defendant hide the true nature of such fees by showing on the transaction history only "Fee Paid."

8.    Plaintiffs were assessed improper charges which Defendant was directly involved in creating, charging, and collecting, as detailed herein. The mortgage loan was entered into in Muscogee County, Georgia. Defendant made misrepresentations and suppressed material facts from Plaintiffs, and engaged in other misconduct as set out herein. Plaintiffs relied upon such fraud, reasonably believed that Defendant would not engage in the misconduct alleged herein, and were proximately damaged as a result. Defendant's wrongful conduct directed toward Plaintiffs and putative class members constitutes a breach of contract and, further, constitutes a pattern of racketeering activity as prohibited by OCGA § 16-4-1 *et seq*. Defendant has also been unjustly enriched through its wrongful conduct.

## VENUE/JURISDICTION

9.    The Superior Court for Muscogee County, Georgia is the proper venue for this action and such Court has jurisdiction over this action. Plaintiffs' claims arose in Muscogee

County, Georgia, and the Defendant does business in Muscogee County and have received and continue to receive substantial revenue and profits from the improper fees charged and collected in this County. The property which is the subject of the mortgage at issue is located in Columbus, Georgia, which is in Muscogee County.

## PARTIES

10.    Plaintiff Anthony Donaldson is a resident citizen of Muscogee County, Georgia. Plaintiff Wanda Donaldson is a resident citizen of Alabama.

11.    Defendant GMAC Inc. is a Delaware corporation authorized to do business in Georgia with its principal place of business in Detroit, Michigan, it is currently known as Ally Financial, Inc.

12.    Defendant does business in Muscogee County, Georgia and Defendant conspired with each other entities and individuals by charging and collecting money from the improper fees and sharing such ill-gotten gains amongst the conspirators.

## CLASS ACTION ALLEGATIONS

14.    Plaintiffs bring this action as a Georgia class action pursuant to Georgia Code § 9-11-23.  This class is defined as follows: "all Georgia persons and entities who paid property inspection fees, late fees, and/or any other improper and/or excessive fees, any portion of which was received or retained by Defendant."  Plaintiffs' claims are based solely upon Georgia state law causes of action.

15.    Plaintiffs exclude from the putative class the following: Defendant, any entity in which a Defendant has a controlling interest and any agents, employees, officers and/or directors of a Defendant or any other such entities and its representatives, heirs, successor and/or assigns, as well as any person and/or entities who paid the improper fees to Defendant and who are or

were in bankruptcy and received a discharge within the statute of limitations period prior to the filing of this complaint, any member of the judiciary, any entity in which any member of the judiciary owns a controlling interest, and any governmental agency or entity. Plaintiffs reserve the right, pursuant to applicable law, to create sub-classes if necessary.

16.    Plaintiffs are unaware of the exact number of class members at this time, but such information can be ascertained through appropriate discovery, specifically from records maintained by Defendant and its agents.

## COMMON QUESTIONS OF LAW OR FACT

17.    Common questions of law and fact exist with regard to the putative class. Such common questions of law and fact predominate over any questions affecting only individual members of the class. Such common questions are as follows:

a.    Whether Defendant violated Georgia RICO law, OCGA § 16-14-1 *et seq.*

b.    Whether Defendant uniformly and consistently charged the improper fees to Plaintiffs and putative class members.

c.    Whether such improper fees paid by Plaintiffs and putative class members are and were excessive.

d.    Whether the fees at issue in this case are designed to be pure profit for Defendant.

e.    Whether the charging and collection of the fees at issue in this case constitute a violation of Georgia RICO law and/or a breach of contract.

f.    Whether Defendant's actions constitute "racketeering" under Georgia RICO law.

g.    Whether it would be unjust for the Defendant to retain the monies received

from the unlawful and excessive fees at issue in this case.

      h.    Whether Defendant conspired to commit the wrongful acts alleged herein.

      i.    Whether Plaintiffs and putative class members are entitled to class relief as requested herein.

      j.    Whether the amounts of the fees at issue herein are excessive under the terms of the contract and/or applicable law.

      k.    Whether Defendant assessed and collected improper and/or excessive fees as set out herein.

      l.    Whether Defendant has ceased charging the unlawful and excessive fees at issue in this case.

      m.    Whether an injunction is necessary to keep Defendant from charging and collecting the unlawful and excessive fees in this case.

      n.    Whether the amount of the improper fees charged by Defendant bear any relation to any cost incurred by Defendant.

      o.    Whether the fees at issue in this case and the amount of the fees are unconscionable.

      p.    Whether the fees at issue are charged in a uniform and consistent manner.

      q.    Whether Defendant use form documents to perpetrate the wrongful conduct set out herein.

    18.    Plaintiffs' claims are typical of the claims of the members of the class, and Defendant's defenses to Plaintiffs' claims are typical of its defenses to the claims of all class members. Plaintiffs have retained class counsel competent to prosecute class actions and such class counsel are financially able to represent the class. The total number of members of the

putative class exceeds two hundred (200) members.

19.    The class action mechanism is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all members of the class is impracticable.    The class action mechanism provides the benefit of unitary adjudication, economies of scale and comprehensive supervision by a single court.    The interests of judicial economy favor adjudicating the claims for the Plaintiff class rather than for the Plaintiffs on an individual basis.

20.    In this case, questions of law and fact predominate over any questions affecting only individual members.

## FACTUAL ALLEGATIONS

21.    Plaintiffs and putative class members each have or had a mortgage the servicing of which was controlled by Defendant.    Defendant has engaged in the unfair, unlawful, fraudulent, wrongful and deceptive practice of having deceptive, unlawful, and excessive fees force-placed on plaintiffs' and putative class members' accounts. This conduct constitutes a pattern of racketeering activity by which Defendant unlawfully and improperly acquired Plaintiffs' and putative class members' money and property, in violation of Georgia's RICO statute, OCGA § 16-4-1 *et seq.*

22.    The right to service these mortgage loans closed through a local lender is often farmed out to a third-party "mortgage servicer," which only profits from the fees and other charges that can be generated on servicing the mortgages.    According to a study done by the Mortgage Bankers Association of America, mortgage servicers average only $60 per loan per year in net profit.    Thus, they have a strong incentive to impose any fees and charges they can to increase its profit margin.

23.    Mortgage servicers service loans on behalf of mortgage lenders, not Plaintiffs and the putative class. Their "customers" are a captive audience. The customers have no choice in who services its loans. They have no option to change servicers if they are unhappy in any way.

24.    Because its "customers" have no way out, Defendant also has no incentive to offer good customer service. Because Defendant has demonstrated that it will force customers into default and foreclosure, Plaintiffs and the putative class are forced to pay the illegal, unnecessary and excessive charges.

25.    Mortgage servicing abuses, such as those alleged herein, are standard operating procedure, as part of its goal to maximize profits on the backs of struggling homeowners. Defendant makes even more profit if a loan goes into default, because Defendant can cause additional fees to be charged, including but not limited to demand fees, property inspection fees, late fees, overnight delivery fees, fax fees, attorneys fees, and payoff statement charges.

26.    Throughout the time relevant hereto, Defendant has engaged in a uniform scheme and course of conduct to inflate its corporate profits by causing certain fees not authorized by the loan documents or applicable law to be charged and collected. These fees are misrepresented, unlawful, and excessive. Defendant shares in the revenue from these fees or directly receives such revenue. The components of this scheme involve common tactics, including, but not limited to:

a.    Communicating with the Plaintiffs and putative class members in an uniform and consistent manner, by mail, facsimile and electronically, either via the internet and/or through electronic mail, and demanding payment for such improper and excessive fees;

b.    Assessment of unnecessary and unauthorized fees through the wrongful application of uniform and consistent contractual provisions; and

8

       c.      Other misconduct as set out herein.

27.     Defendant causes Plaintiffs and putative class members to be charged improper and excessive late fees. Such late fees are not designed to compensate Defendant for any cost incurred from the late payment, but are, in fact, "penalties" under applicable law. Customers are forced to pay late fees because Defendant lose payments, and Defendant often fail to process checks and money orders received through the mail in a timely fashion. Thus, Plaintiffs and the putative class members are paying unnecessary and excessive amounts for late fees. Defendant also causes to be charged late fees in excess of that permitted by the loan documents and applicable law. Defendant misrepresented the "late fees" and omitted material facts regarding the "late fees," such as that they are not related to any cost of late payment. Defendant receives revenue from the unlawful late fees.

28.     Defendant causes customers to be charged multiple, unnecessary, and excessive "property inspection" fees, often on a monthly basis, without any notice that customers' property was being inspected, or any explanation of why any inspection was necessary. If customers of the putative class call to ask why the fee was assessed, customer service representatives are trained to respond that they send people to drive by its homes to confirm that someone is still living there. In reality, the monthly inspections are never done, even though Defendant claim otherwise. Even if some of the property inspections are done, the amount charged is well in excess of the cost of the property inspections. Such excessive fees are not permitted by contract or law. Defendant receives revenue from the unlawful property inspection fees.

29.     Defendant causes the improper fees to be represented as legitimate charges and/or as recoupment of expenses incurred when, in fact, such fees constitute nothing more than pure profit or have no logical connection to the expenses actually incurred.

30.    Plaintiffs, after receiving Mortgage Account statements, paid such improper fees as set out herein.  Plaintiffs payments were credited on at least the following dates: 2/28/07, 6/20/07, 6/28/07, 7/12/07, 2/4/08, 2/8/08 (4 fees paid), 3/6/08 (6 fees paid) and 5/29/09.

## COUNT ONE

### VIOLATION OF GEORGIA "RICO" STATUTE

31.    Paragraph 1 through 30 are incorporated by reference.

32.    Defendant's conduct as set out herein constitutes violations of OCGA § 16-4-1 *et seq.* (hereinafter the "Georgia RICO statute").

33.    Plaintiffs are "persons" with the meaning of the Georgia RICO statute.

34.    Defendant is a "person" within the meaning of the Georgia RICO statute.

35.    Defendant is part of an "enterprise" within the meaning of the Georgia RICO statute.  Other members of the enterprise include the property inspection companies Defendant hires, related entities (including Homecomings Financial), and individuals including officers and directors of Defendant and such third party entities.

36.    In furtherance of its enterprise or enterprises, Defendant, in concert with its officers, directors, agent, employees, subsidiaries, third party property inspection companies, and related companies, engaged in prohibited and unlawful activity–or endeavored or conspired to engage in prohibited and unlawful activity–on two or more occasions.  To the extent that any Defendant did not participate directly in the unlawful and/or improper acts, Defendant knowingly and willfully aided and abetted these violations, or are vicariously liable for such wrongdoing.  These unlawful acts include, but are not limited to:

a.    Unlawfully taking and appropriating Plaintiffs' money and property in violation of OCGA § 16-8-2 (theft by taking).

10

b.     Unlawfully obtaining Plaintiffs' money and property by deceitful means and artful practices with the intent to deprive them of property in violation of OCGA § 16-8-2 (theft by deception).

c.     Unlawfully sending, causing to be sent and receiving letters, checks and other papers and items, including mortgage account statements sent through the United States Postal Service, for the purpose of executing and attempting to execute Defendant's fraudulent scheme in violation of 18 U.S.C. § 1341.

d.     Unlawfully causing to be sent and receiving writings (contracts, letters, and invoices) and sound communications (including but not limited to telephone calls, facsimile transmissions, and bank wire transfers) for the purpose of executing and attempting to execute Defendant's fraudulent scheme in violation of 18 U.S.C. § 1343.

e.     Sending deceptive commercial electronic mail in violation of OCGA § 16-9-101.

f.     Engaging in misconduct as set out herein relating to residential mortgage fraud, in violation of OCGA § 16-8-102.

37.     Defendant used standard, uniform documents in furtherance of its scheme. Each act Defendant engaged in constitutes a separate incident of "racketeering activity" within the meaning of the Georgia RICO statute.    The multiple acts of racketeering activity were interrelated, were part of a common and continuous pattern of fraudulent acts and schemes, were perpetrated for the same or similar purposes, and were not a series of disconnected, isolated or sporadic acts.    They were part of the regular and routine way in which Defendant conduct its business.    The multiple acts constitute a pattern of racketeering activity.    Defendant further intended to defraud Plaintiffs and putative class members with regard to the mortgages secured by

real property as set out herein.

38.    Defendant engaged in the racketeering activity with the intent, motive, and/or effect of deriving pecuniary gain.  Defendant targeted Plaintiffs in furtherance of its scheme to defraud.

39.    Defendant, through this pattern of racketeering activity, directly or indirectly acquired the property and money of Plaintiffs and the putative class members.  Plaintiffs and putative class members relied to its detriment on the fraud of Defendant in furtherance of Defendant's scheme.

40.    Defendant's officers, directors, agents, and employees directly or indirectly participated in the enterprises through a pattern of racketeering activity.

41.    Defendant's wrongful acts alleged herein proximately and directly caused damage to Plaintiffs and putative class members.  Plaintiffs and putative class members' injuries flow directly from the predicate offenses set out herein.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover all damages allowable as a result of such violations, to include treble damages, punitive damages, interest and attorney fees.

## COUNT TWO

## SCHEME TO DEFRAUD/CONSPIRACY

42.    Paragraph 1 through 41 are incorporated by reference.

43.    Defendant entered into a scheme to defraud and conspired to defraud Plaintiffs and putative class members as set out herein and among themselves to accomplish the improper actions herein.  With regard to the property inspection fees, Defendant conspired with the property inspection companies which allegedly received all or a portion of the property inspection

fees. Plaintiffs and putative class members have paid the improper fees to Defendant which have caused Plaintiffs and putative class members to be damaged.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover all damages as a result of such violations, plus interest.

## COUNT THREE

### UNJUST ENRICHMENT

44.    Paragraphs 1 through 43 are incorporated by reference.

45.    Defendant, under the circumstances set out herein, has been unjustly enriched at the expense of Plaintiffs and putative class members.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover all damages as a result of such violations, plus interest.

## COUNT FOUR

### DECLARATORY, EQUITABLE AND INJUNCTIVE RELIEF

46.    Paragraphs 1 through 45 are incorporated by reference.

47.    Plaintiffs and putative class members respectfully request that this Honorable Court declare Defendant's conduct as improper and in violation of Georgia law and to further enjoin Defendant from collecting such unlawful and excessive fees.

## COUNT FIVE

### FRAUD & DECEIT

48.    Paragraphs 1 through 47 are incorporated by reference.

49.    At all relevant times, Defendant was under a duty not to misrepresent the true nature of the fees at issue.

50.    At all relevant times, the Defendant made material misrepresentations regarding

the fees at issue which caused Plaintiffs and putative class members to pay such fees. Plaintiffs and putative class members relied upon such misrepresentations.

51.    The Defendant intentionally misled Plaintiffs and putative class members regarding the true nature and purpose of the fees set out herein for the purpose of inducing customers to pay such fees.

52.    Defendant misled Plaintiffs and putative class members as follows:

a.    by leading Plaintiffs and putative class members to believe that the amount of such fees were rationally related to expenses incurred by Defendant;

b.    by leading Plaintiffs and putative class members to believe that Plaintiffs and putative class members were required to pay such fees;

c.    by leading Plaintiffs and putative class members to believe that such fees were not excessive;

d.    by leading Plaintiffs and putative class members to believe that such fees were legitimate charges.

53.    Defendant also failed to disclose numerous facts to Plaintiffs and putative class members as set out herein. Specifically, Defendant failed to disclose that such fees were excessive and bore no relation to any expenses incurred, that such fees were not legitimate charges, and that Plaintiffs and putative class members were not required by its contracts to pay such fees.

54.    Such misrepresentation of material facts and failure to disclose material facts caused financial damage to Plaintiffs and putative class members.

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, seek to recover all damages as a result of such violations, plus interest.

## COUNT SEVEN

### VIOLATION OF OCGA § 7-6A-3 (Georgia Fair Lending Act)

55.    Paragraphs 1 through 54 are incorporated by reference.

56.    Defendant is in violation of OCGA § 7-6A-3 entitled "Limitations and Prohibited Practices Related to All Home Loans." Defendant, by causing excessive late fees to be charged, is in violation of the entire statute 7-6A-3, and specifically 7-6A-3(3). Such section states "no creditor or servicer may charge a borrower a late payment charge unless the loan documents specifically authorize the charge, the charge is not imposed unless the payment is past due for ten days or more, and the charge does not exceed 5 percent of the amount of the late payment. A late payment charge may not be imposed more than once with respect to a particular late payment."

57.    Defendant is in violation of this section as the late payments are charged in excess of the statutorily allowable amount and such violation has proximately caused damage to Plaintiff and putative class members. Pursuant to OCGA § 7-6A-7, Plaintiffs on behalf of themselves and putative class members request any and all actual damages to which they may be entitled, statutory damages equal to the recovery of two times the interest paid under each loan, punitive damages, costs and reasonable attorneys' fees.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover all damages allowable as a result of such violations.

PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY ON ALL ISSUES IN THIS CASE.

Respectfully submitted,

_____
Rodney E. Miller (Georgia Bar 779467)
Attorney for Plaintiffs

**OF COUNSEL:**
MCCALLUM, METHVIN & TERRELL, P.C.
2201 Arlington Avenue South
Birmingham, Alabama 35205
(205) 939-0199 - telephone
(205) 939-0399 - facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing by placing a copy of same in the United States Mail, first class, postage prepaid, addressed to all counsel of record on this the 21st day of March, 2014.

_____
Rodney E. Miller (Georgia Bar 779467)
Attorney for Plaintiffs

**OF COUNSEL:**
MCCALLUM, METHVIN & TERRELL, P.C.
2201 Arlington Avenue South
Birmingham, Alabama 35205
(205) 939-0199 - telephone
(205) 939-0399 - facsimile

## **Exhibit 14**

**Chatman Third Amended Complaint**



AlaFile E-Notice

69-CV-2008-900015.00

To:   NICHOLAS WILLIAM ARMSTRONG
      narmstrong@mmlaw.net

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

MARCUS CHATMAN ET AL V. GMAC LLC
69-CV-2008-900015.00

The following complaint was FILED on 3/21/2014 3:06:10 PM

Notice Date:     3/21/2014 3:06:10 PM

DAVID NIX
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
303 EAST BROAD STREET
ROOM 201
EUFAULA, AL 36027

334-687-1500
david.nix@alacourt.gov

ELECTRONICALLY FILED
3/21/2014 3:06 PM
69-CV-2008-900015.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
DAVID NIX, CLERK

## IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
### EUFAULA DIVISION

MARCUS CHATMAN and BERKLEY and )
GEORGINA SQUIRES, )
                                      )
        Plaintiffs, )
                                      )        CIVIL ACTION NUMBER
v. )
                                      )           CV-2008-900015
ALLY FINANCIAL, INC. f/k/a GMAC INC. )
                                      )
        Defendants. )
                                      )

## THIRD AMENDED COMPLAINT

      COME NOW the Plaintiffs, Marcus Chatman ("Chatman") and Berkley and Georgina

Squires ("Squires"), individually and on behalf of a class of all persons or entities in Alabama

who are similarly situated, file this Amended and Restated Class Action Complaint against the

Defendant, ALLY FINANCIAL, INC. f/k/a/ GMAC Inc.[1] In support thereof, the Plaintiffs state

the following:

## NATURE OF THE CASE

      1.    Plaintiffs bring this action pursuant to applicable state law, on behalf of

themselves and an Alabama putative class consisting of residential mortgage borrowers who

have been charged improper fees, costs and charges, including property inspection fees, late fees,

fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and fees for using their

"Speedpay" automated payment system, in connection with the servicing of their mortgages.

      2.    Defendant Ally was directly involved in the determination, implementation and

assessment of these improper fees, costs and charges (collectively the "improper charges") to

borrowers' accounts in order to maximize their profits, and with the goal of putting borrowers

---

[1] Plaintiff dismisses without prejudice Defendants GMAC Mortgage Corporation and GMAC, LLC. Plaintiff claims
are brought solely against Ally Financial, Inc. for its direct conduct alleged herein.

into default status.  Defendant Ally was involved in the collection of the improper fees in various contexts including, without limitation, monthly bills, reinstatement demands, payoff statements, court pleadings, collection letters and collection calls. The improper charges described herein have a snowball effect, often forcing the consumers into default status and foreclosure, resulting in further improper and unauthorized fees and charges. Defendant Ally unjustly profited from the collection of the improper charges from borrowers' monthly payments, and also from the proceeds of foreclosure sales and loan payoffs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action. Defendant does business in the State of Alabama and has received and continues to receive substantial revenue and profits from the improper charges in the State of Alabama. Defendant transacts business in the Eufaula Division of Barbour County, Alabama and has received and continues to receive substantial revenue and profits from the improper charges in the Eufaula Division of Barbour County, Alabama and has further made material omissions and misrepresentations, as well as engaged in other misconduct, in the Eufaula Division of Barbour County, Alabama.

4.      Venue in this case is proper in Barbour County, Alabama, in that a substantial portion of the conduct which forms the basis of this action occurred in such venue, and Plaintiff Squires resides in such venue.

## PARTIES

5.      Plaintiff Marcus Chatman is a resident citizen of Jefferson County, Alabama.

6.      Plaintiff Berkley & Georgiana Squires are resident citizens of Barbour County, Alabama.

7.      Defendant Ally Financial, Inc. is a Delaware corporation headquartered in Detroit, Michigan that is qualified to do business and is doing business in the State of Alabama. Ally Financial was known as General Motors Acceptance Corporation until July 20, 2006 when it became a Delaware limited liability company under the name GMAC LLC. On June 30, 2009 GMAC LLC was converted from a Delaware limited liability company to a Delaware corporation under the name GMAC Inc. On May 7, 2010 GMAC Inc. changed its corporate name to Ally Financial. Its appointed agent for service of process in Alabama is CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, Alabama 36014.

8.      Defendant does business in the Eufaula Division of Barbour County, Alabama and Defendant acted in an unlawful manner when it implemented and determined to collected money from the improper charges through a coordinated inter-corporate relationship. Defendant was and is an active participant in the wrongful practices described herein.

9.      Plaintiffs bring this action as an Alabama class action pursuant to Rule 23 of the Alabama Rules of Civil Procedure. This class is more specifically defined as follows:

> "all Alabama residents who paid late fees, property inspection fees, "Speed pay" fees, fax payoff fees, wire fees, "Equity Builder" fees, "pay by phone" fees and/or other similar charges, any portion of which was received or retained by Defendant."

10.     Plaintiffs maintain the right to create subclasses, if necessary.

11.     Excluded from the proposed class is Defendant, any entity in which Defendant has a controlling interest and any agents, employees, officers and/or directors of Defendant or any other such entities and their representatives, heirs, successors and/or assigns, as well as any

people who paid the alleged improper charges and who are or where in bankruptcy and received

a discharge within the time period six years prior to the filing of the original complaint.

12. The exact number of Class members is unknown to Plaintiffs at this time, but such

information can be ascertained through appropriate discovery, specifically from records

maintained by Defendants and their agents.

## EXISTENCE AND PREDOMINANCE OF
## COMMON QUESTIONS OF LAW AND FACT

13.    There are common questions of law and fact applicable to the class. These

common questions of law and fact predominate over any questions affecting only individual

members of the class. Said common questions include, but are not limited to, the following:

a. Whether Defendant was involved in the determination and implementation of the

excessive and improper fees at issue in this case.

b. Whether Defendant was involved in a widespread and systematic practice of charging

excessive amounts for the fees at issue in this case.

c. Whether the fees at issue in this case are designed as profit enhancers for Defendant.

d. Whether Defendant received monies from the charging of the fees at issue in this case.

e. Whether it would be inequitable and unjust for Defendant to retain the monies received

from the wrongful and excessive fees at issue in this case.

f. Whether Defendant conspired to commit the wrongful acts alleged herein.

g. Whether Plaintiffs and class members are entitled to class relief as requested herein.

h. Whether the fees at issue herein are excessive under the terms of the contract and/or

applicable law.

i. Whether Defendant was involved in the determination and assessment of charges for unnecessary and unauthorized property inspections and/or whether such property inspection fees are excessive.

j. Whether Defendant was involved in the determination and assessment of improper and excessive late fees.

k. Whether the late fees are intended to be a penalty.

l. Whether Defendant was involved in the determination and assessment of unauthorized and excessive "Speedpay" and/or other electronic payment processing fees.

m. Whether Defendant was involved in the determination and assessment of improper and excessive fax, "Equity Builder" fees, payoff fees and wire fees.

n. Whether Defendant has been unjustly enriched.

o. Whether an injunction is necessary to keep Defendant from charging the unnecessary and excessive fees in this case.

p. Whether the fees at issue in this case are unconscionable.

## **TYPICALITY AND NUMEROSITY**

14.    The claims of the named Plaintiffs are typical of the claims of the class. The proposed class exceeds 40 members.

## **ADEQUATE REPRESENTATION**

15.    The Plaintiffs will fairly and adequately protect the interests of the members of the class and have no interest antagonistic to those of other class members. Plaintiffs have retained class counsel competent to prosecute class actions and such class counsel is financially able to represent the class.

5

## SUPERIORITY

16.    The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable. The interests of judicial economy favor adjudicating the claims for the Plaintiffs class rather than on an individual basis.

17.    Questions of law and fact predominate over any questions affecting only individual members.

## FACTUAL ALLEGATIONS

18.    Plaintiffs and putative class members took out a mortgage through a local lender. Defendant Ally was directly involved in the servicing Plaintiffs and putative class members' mortgages. The only profit generated in the servicing of mortgages is through the implementation and collection of fees and other charges. To enhance their profits, Defendant engaged in the unfair, unlawful, fraudulent, wrongful and deceptive practice of adding and/or force-placing the fees, costs and charges on Plaintiffs and putative class members' mortgage accounts.

19.    Mortgage servicing abuses, such as those alleged herein, are standard operating procedure for Defendant, as part of its goal to maximize profits on the backs of struggling homeowners. Defendant makes even more profits if a loan goes into default, because Defendant received revenue from additional fees, including but not limited to demand fees, inspection fees, overnight delivery fees, fax fees, attorneys' fees, and payoff statement charges.

20.    Throughout the time relevant hereto, Defendant engaged in a uniform scheme and course of conduct to inflate its corporate profits by charging and collecting various fees not

authorized by the loan documents or applicable law. The components of this scheme involve common tactics, including, but not limited to:

    a. Unauthorized and excessive "Speedpay" and/or other electronic payment processing fees;

    b. Assessment of charges of unnecessary and unauthorized property inspections;

    c. Improper and excessive assessment of "Equity Builder" fees, payoff fees, and late fees; and

    d. Other improper charges set out herein.

21.    Defendant was directly involved in the determination to charge customers a monthly "Speedpay" or "pay by phone fee" of $7.50 to $10.00 or more, merely for the electronic processing of a mortgage payment. Customers are forced to pay this fee because their payments are routinely lost or are often failed to be processed in a timely fashion. Thus, Plaintiffs and the Class must pay this fee in order to avoid late fees and other charges, and Defendant profits from the collection of this improper charge.

22.    Defendant was also directly involved in the determination to charge customers multiple, unnecessary, and excessive "property inspection" fees, often on a monthly basis, without any notice that customers' property was being inspected, or any explanation of why any inspection was necessary. Upon information and belief, Defendant determined the amounts, methodology, and terms by which the fees were charged and collected. Defendants also received or retained a portion of the unlawful fees. When customers of the Class called to ask why the fee was assessed, they were told that people were sent to drive by their homes to confirm that someone is still living there. In reality, most, if not all, monthly inspections are not done at all. Nevertheless, the "property inspection" fee was charged and collected, and Defendant profited as

7

a result. Even if such property inspections are done, the amount charged is well in excess of the

cost of the property inspections, resulting in addition unjust profits to Defendant. Such excessive

fees are not permitted.

23.    Defendant was also involved in the determination to charge late fees in excess of

that permitted by loan documents and other applicable law.

**PLAINTIFFS, INDIVIDUALLY AND ON BEHALF OF THE PUTATIVE CLASS, MAKE NO CLAIMS PURSUANT TO FEDERAL LAW AND FURTHER MAKE NO CLAIMS WHICH WOULD GIVE RISE TO ANY FEDERAL CAUSE OF ACTION. PLAINTIFFS' CLAIMS ARE BASED SOLELY UPON STATE LAW. ADDITIONALLY, PLAINTIFFS ON BEHALF OF THEMSELVES AND PUTATIVE CLASS MEMBERS, DO NOT MAKE ANY CLAIM FOR RELIEF, INCLUDING BOTH EQUITABLE RELIEF AND MONETARY DAMAGES, IN EXCESS OF $74,500.00 IN THE AGGREGATE FOR PLAINTIFFS OR ANY CLASS MEMBER. UNDER NO CIRCUMSTANCES WOULD THE TOTAL AMOUNT OF RELIEF, INCLUDING BOTH EQUITABLE RELIEF AND MONETARY DAMAGES, EXCEED $74,500.00 IN THE AGGREGATE FOR PLAINTIFFS OR EACH CLASS MEMBER. EVEN IF PLAINTIFFS AND EACH CLASS MEMBER RECOVERED UNDER EACH COUNT OF THE COMPLAINT, THE TOTAL RECOVERY FOR PLAINTIFFS AND EACH PUTATIVE CLASS MEMBER WOULD NOT EXCEED $74,500 IN THE AGGREGATE FOR PLAINTIFFS OR EACH CLASS MEMBER AND THE TOTAL DAMAGES FOR THE ENTIRE CLASS WOULD NOT EXCEED $4,995,000, IN THE AGGREGATE, EXCLUDING INTEREST AND COSTS. PLAINTIFFS, ON BEHALF OF THEMSELVES AND THE PUTATIVE CLASS, STATE THAT THE TOTAL DAMAGES FOR THE ENTIRE CLASS, INCLUDING EQUITABLE RELIEF AND MONETARY DAMAGES, ARE $4,995,000 OR LESS, EXCLUDING INTEREST AND COSTS AND UNDER NO CIRCUMSTANCES WILL THE TOTAL DAMAGES, INCLUDING EQUITABLE RELIEF AND MONETARY DAMAGES, FOR PLAINTIFFS AND THE ENTIRE CLASS, IN THE AGGREGATE, EXCEED $4,995,000, EXCLUDING INTEREST AND COSTS.**

## FIRST CAUSE OF ACTION

### MISREPRESENTATION

24.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in

Paragraphs 1 through 23, as though fully set forth herein.

8

25.    At all times material hereto, Defendant was under a duty to not misrepresent the true nature of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees. Defendant intentionally, recklessly or negligently misrepresented that the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees were legitimate charges, when in fact, such charges were improper as set out herein.

26.    Defendant intentionally misled Plaintiffs and putative class members as to the true nature and purpose of their above "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, and/or other similar fees for the purpose of persuading customers to pay such charges without question or negotiation. At the time Defendant made these representations to Plaintiffs, Defendant knew that these representations were false.

27.    Specifically, Defendant misrepresented or caused to be misrepresented to Plaintiffs and other members of the putative class the following information:

a. that the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "Equity Builder" fees, and "pay by phone" fees are legitimate charges.

b. the other facts set out herein.

c. that such fees bore a rational relationship to expenses actually incurred by Defendants.

28.    By intentionally, recklessly or negligently misrepresenting or causing to be misrepresented the nature of the "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees, as set out herein, Defendant has taken advantage of Plaintiffs and other putative class members, who based upon such misrepresentations, were misled into paying such fees and charges.

9

29.     The misrepresentations have damaged Plaintiffs and other putative class members for which damages are sought.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and others similarly situated, seeks to recover compensatory and punitive damages and are entitled to damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

## SECOND CAUSE OF ACTION

### SUPPRESSION

30.     Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 29, as though fully set forth herein.

31.     Defendant suppressed or caused to be suppressed from Plaintiffs and putative class members the true nature of their fees and charges as set out hereinabove, with the result that customers paid such charges without question or negotiation. At the time Defendant suppressed this information from Plaintiffs, Defendants knew or should have known that they were under a duty to communicate the true nature of their fees and charges.

32.     By suppressing the nature of their fees and charges and not disclosing material information concerning such fees and charges, Defendant has taken advantage of Plaintiffs, who based upon such omissions, were misled into paying such fees and charges. Specifically, Defendant failed to disclose the following facts:

a. That Defendant was deceptively causing to be placed "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees on Plaintiffs and other customers' invoices so

that these charges would be paid without their conscious permission, which resulted in Defendant's engagement in unfair and fraudulent business practices.

b.  The true nature of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees and the fact that such fees and charges are not necessary.

c.  The true nature, including the excessiveness thereof, of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees.

d.  That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees are excessive and not allowed by law or by the contract;

e.  That Plaintiffs and other customers were not required to pay the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees.

f.  That Defendant would fail to send Plaintiffs and other customers enough information to make an informed decision regarding the "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees.

g.  The unconscionability of the fees and the fact that Defendant was engaging in unconscionable practices as set out herein.

h.  The fact that Defendant determined to unilaterally increasing payments when it is not allowed by law or the contract.

11

i. That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire

fees, "Equity Builder" fees, and "pay by phone" fees are excessive.

l. That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire

fees, "pay by phone" fees, and "Equity Builder" fees are not legitimate charges.

m. That the late fees are not rationally related to any damage suffered by Defendant

and/or that such fees are "penalties" under applicable law;

n. The other facts set out herein.

o. That such fees bore a rational relationship to expenses actually incurred by Defendant.

Defendant also failed to disclose other facts as set out herein. Such nondisclosure

constitutes suppression as Defendant knew or should have known of such facts and Defendant

further had a duty to communicate such facts.

33.    Defendant's suppression has damaged Plaintiffs and putative class members.  As

a result, damages are sought.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and

others similarly situated, seeks to recover compensatory and punitive damages and are entitled to

damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each

class member.

### THIRD CAUSE OF ACTION

### CONSPIRACY

34.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in

Paragraphs 1 through 33, as though fully set forth herein.

35.    Defendant conspired and combined with unnamed third parties, property

inspection companies, related entities, and other individuals, to do the acts complained herein.

Plaintiffs and putative class members have been billed and Plaintiffs and putative class members have paid improper fees and charges to Defendant, for which Plaintiffs and putative class members have been damaged.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover and are entitled to compensatory and punitive damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

<u>**FOURTH CAUSE OF ACTION**</u>

**UNJUST ENRICHMENT/CONSTRUCTIVE TRUST**

36.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 35, as though fully set forth herein.

37.    Defendant, by suppressing or causing to be suppressed from Plaintiffs and putative class members the material facts set forth herein, by misrepresenting or causing to be misrepresented the material facts set forth herein and by engaging in the other unlawful and wrongful conduct set out herein, knowingly obtained or exerted unauthorized control over Plaintiffs' property and putative class members' property with the intent to deprive Plaintiffs and putative class members of their property and/or knowingly obtained control over said property by deception and with the intent to deprive Plaintiffs and putative class members of their property by:

a. creating or confirming an impression in Plaintiffs and putative class members which was false and which Defendant did not believe to be true; and/or

b. failing to correct a false impression which Defendant previously created or affirmed; and/or

13

c. failing to correct a false impression which Defendant was under a duty to correct; and/or

d. preventing Plaintiffs and putative class members from acquiring information pertinent to the disposition of their property; and/or

e. the other actions and/or inactions set out herein.

38.    Such illegal and wrongful fees charged to Plaintiffs and putative class members by Defendants has resulted in Defendant obtaining money, which in equity and good conscience, belong to Plaintiffs and putative class members.

39.    Plaintiffs and putative class members further request that the Court impose a Constructive Trust on such monies and require Defendant to repay such monies to Plaintiffs and putative class members.

40.    As a direct result thereof, Defendant has been unjustly enriched, and Plaintiffs have been injured and damaged and seeks recovery of all monies improperly procured.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover and are entitled to damages in an amount which do not exceed $74,500.00 in the aggregate for each Plaintiffs and each class member.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE

41.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 40 as though fully set forth herein.

42.    Defendant's conduct as set out herein constitutes negligence. Such conduct has proximately caused damage to Plaintiffs and putative class members.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover compensatory damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

Respectfully submitted,


 /s/ Nicholas W. Armstrong
Robert G. Methvin, Jr. (MET009)
Nicholas W. Armstrong (ARM025)
Attorneys for Plaintiffs

**OF COUNSEL:**
**MCCALLUM, METHVIN & TERRELL, P.C.**
2201 Arlington Avenue South
Birmingham, Alabama 35205
(205) 939-0199 - telephone
(205) 939-0399 - facsimile

Albert Adams
Post Office Box 670
Eufaula, AL 36072-0670
(334) 687-1326 - telephone
(866) 910-9989 - facsimile

Charles A. McCallum III
R. Brent Irby
McCallum, Hoagland, Cook & Irby, LLP
905 Montgomery Highway
Suite 201
Vestavia Hills, AL 36216
(205) 824-7767 - telephone
(205) 824-7768 - facsimile

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 21, 2014, I electronically filed the foregoing with the Clerk of Court using the Alacourt system, which will send notification of such filing to all counsel of record.

 /s/ Nicholas W. Armstrong
OF COUNSEL

**<u>Exhibit 15</u>**

**Robinson Third Amended Complaint**



AlaFile E-Notice

69-CV-2008-900007.00

To:   NICHOLAS WILLIAM ARMSTRONG
      narmstrong@mmlaw.net

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

RUBY ROBINSON V. HOMECOMINGS FINANCIAL, LLC
69-CV-2008-900007.00

The following complaint was FILED on 3/21/2014 3:01:39 PM

Notice Date:     3/21/2014 3:01:39 PM

DAVID NIX
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
303 EAST BROAD STREET
ROOM 201
EUFAULA, AL 36027

334-687-1500
david.nix@alacourt.gov

ELECTRONICALLY FILED
3/21/2014 3:01 PM
69-CV-2008-900007.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
DAVID NIX, CLERK

## IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
### EUFAULA DIVISION

| | | |
|---|---|---|
| RUBY ROBINSON and WILLIE CLARA HILL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NUMBER |
| v. | ) | |
| | ) | CV-2008-900007 |
| ALLY FINANCIAL, INC. f/k/a GMAC INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### THIRD AMENDED COMPLAINT

COME NOW the Plaintiffs, Ruby Robinson ("Robinson") and Willie Clara Hill ("Hill"), individually and on behalf of a class of all persons or entities in Alabama who are similarly situated, file this Amended and Restated Class Action Complaint against the Defendant, ALLY FINANCIAL, INC. f/k/a/ GMAC Inc.[1] In support thereof, the Plaintiffs state the following:

### NATURE OF THE CASE

1.     Plaintiffs bring this action pursuant to applicable state law, on behalf of themselves and an Alabama putative class consisting of residential mortgage borrowers who have been charged improper fees, costs and charges, including property inspection fees, late fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and fees for using their "Speedpay" automated payment system, in connection with the servicing of their mortgages.

2.     Defendant Ally was directly involved in the determination, implementation and assessment of these improper fees, costs and charges (collectively the "improper charges") to borrowers' accounts in order to maximize their profits, and with the goal of putting borrowers into default status. Defendant Ally was involved in the collection of the improper fees in various

---

[1] Plaintiff dismisses without prejudice Defendant Homecomings Financial, LLC. Plaintiff claims are brought solely against Ally Financial, Inc. for its direct conduct alleged herein.

1

contexts including, without limitation, monthly bills, reinstatement demands, payoff statements, court pleadings, collection letters and collection calls. The improper charges described herein have a snowball effect, often forcing the consumers into default status and foreclosure, resulting in further improper and unauthorized fees and charges. Defendant Ally unjustly profited from the collection of the improper charges from borrowers' monthly payments, and also from the proceeds of foreclosure sales and loan payoffs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action. Defendant does business in the State of Alabama and has received and continues to receive substantial revenue and profits from the improper charges in the State of Alabama. Defendant transacts business in the Eufaula Division of Barbour County, Alabama and has received and continues to receive substantial revenue and profits from the improper charges in the Eufaula Division of Barbour County, Alabama and has further made material omissions and misrepresentations, as well as engaged in other misconduct, in the Eufaula Division of Barbour County, Alabama.

4.      Venue in this case is proper in Barbour County, Alabama, in that a substantial portion of the conduct which forms the basis of this action occurred in such venue, and Plaintiff Squires resides in such venue.

## PARTIES

5.      Plaintiff Ruby Robinson is a resident citizen of Jefferson County, Alabama.

6.      Plaintiff Willie Clara Hill is a resident citizen of Barbour County, Alabama.

7.      Defendant Ally Financial, Inc. is a Delaware corporation headquartered in Detroit, Michigan that is qualified to do business and is doing business in the State of Alabama. Ally Financial was known as General Motors Acceptance Corporation until July 20, 2006 when

2

it became a Delaware limited liability company under the name GMAC LLC. On June 30, 2009 GMAC LLC was converted from a Delaware limited liability company to a Delaware corporation under the name GMAC Inc. On May 7, 2010 GMAC Inc. changed its corporate name to Ally Financial. Its appointed agent for service of process in Alabama is CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, Alabama 36014.

8.      Defendant does business in the Eufaula Division of Barbour County, Alabama and Defendant acted in an unlawful manner when it implemented and determined to collected money from the improper charges through a coordinated inter-corporate relationship. Defendant was and is an active participant in the wrongful practices described herein.

9.      Plaintiffs bring this action as an Alabama class action pursuant to Rule 23 of the Alabama Rules of Civil Procedure. This class is more specifically defined as follows:

"all Alabama residents who paid late fees, property inspection fees, "Speed pay" fees, fax payoff fees, wire fees, "Equity Builder" fees, "pay by phone" fees and/or other similar charges, any portion of which was received or retained by Defendant."

10.     Plaintiffs maintain the right to create subclasses, if necessary.

11.     Excluded from the proposed class is Defendant, any entity in which Defendant has a controlling interest and any agents, employees, officers and/or directors of Defendant or any other such entities and their representatives, heirs, successors and/or assigns, as well as any people who paid the alleged improper charges and who are or where in bankruptcy and received a discharge within the time period six years prior to the filing of the original complaint.

3

12. The exact number of Class members is unknown to Plaintiffs at this time, but such information can be ascertained through appropriate discovery, specifically from records maintained by Defendants and their agents.

## EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS OF LAW AND FACT

13.    There are common questions of law and fact applicable to the class. These common questions of law and fact predominate over any questions affecting only individual members of the class. Said common questions include, but are not limited to, the following:

a. Whether Defendant was involved in the determination and implementation of the excessive and improper fees at issue in this case.

b. Whether Defendant was involved in a widespread and systematic practice of charging excessive amounts for the fees at issue in this case.

c. Whether the fees at issue in this case are designed as profit enhancers for Defendant.

d. Whether Defendant received monies from the charging of the fees at issue in this case.

e. Whether it would be inequitable and unjust for Defendant to retain the monies received from the wrongful and excessive fees at issue in this case.

f. Whether Defendant conspired to commit the wrongful acts alleged herein.

g. Whether Plaintiffs and class members are entitled to class relief as requested herein.

h. Whether the fees at issue herein are excessive under the terms of the contract and/or applicable law.

i. Whether Defendant was involved in the determination and assessment of charges for unnecessary and unauthorized property inspections and/or whether such property inspection fees are excessive.

4

j. Whether Defendant was involved in the determination and assessment of improper and excessive late fees.

k. Whether the late fees are intended to be a penalty.

l. Whether Defendant was involved in the determination and assessment of unauthorized and excessive "Speedpay" and/or other electronic payment processing fees.

m. Whether Defendant was involved in the determination and assessment of improper and excessive fax, "Equity Builder" fees, payoff fees and wire fees.

n. Whether Defendant has been unjustly enriched.

o. Whether an injunction is necessary to keep Defendant from charging the unnecessary and excessive fees in this case.

p. Whether the fees at issue in this case are unconscionable.

## TYPICALITY AND NUMEROSITY

14.    The claims of the named Plaintiffs are typical of the claims of the class. The proposed class exceeds 40 members.

## ADEQUATE REPRESENTATION

15.    The Plaintiffs will fairly and adequately protect the interests of the members of the class and have no interest antagonistic to those of other class members. Plaintiffs have retained class counsel competent to prosecute class actions and such class counsel is financially able to represent the class.

## SUPERIORITY

16.    The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is

5

impracticable. The interests of judicial economy favor adjudicating the claims for the Plaintiffs class rather than on an individual basis.

17.    Questions of law and fact predominate over any questions affecting only individual members.

## **FACTUAL ALLEGATIONS**

18.    Plaintiffs and putative class members took out a mortgage through a local lender. Defendant Ally was directly involved in the servicing Plaintiffs and putative class members' mortgages. The only profit generated in the servicing of mortgages is through the implementation and collection of fees and other charges. To enhance their profits, Defendant engaged in the unfair, unlawful, fraudulent, wrongful and deceptive practice of adding and/or force-placing the fees, costs and charges on Plaintiffs and putative class members' mortgage accounts.

19.    Mortgage servicing abuses, such as those alleged herein, are standard operating procedure for Defendant, as part of its goal to maximize profits on the backs of struggling homeowners. Defendant makes even more profits if a loan goes into default, because Defendant received revenue from additional fees, including but not limited to demand fees, inspection fees, overnight delivery fees, fax fees, attorneys' fees, and payoff statement charges.

20.    Throughout the time relevant hereto, Defendant engaged in a uniform scheme and course of conduct to inflate its corporate profits by charging and collecting various fees not authorized by the loan documents or applicable law. The components of this scheme involve common tactics, including, but not limited to:

a. Unauthorized and excessive "Speedpay" and/or other electronic payment processing fees;

6

b. Assessment of charges of unnecessary and unauthorized property inspections;

c. Improper and excessive assessment of "Equity Builder" fees, payoff fees, and late fees; and

d. Other improper charges set out herein.

21.     Defendant was directly involved in the determination to charge customers a monthly "Speedpay" or "pay by phone fee" of $7.50 to $10.00 or more, merely for the electronic processing of a mortgage payment. Customers are forced to pay this fee because their payments are routinely lost or are often failed to be processed in a timely fashion. Thus, Plaintiffs and the Class must pay this fee in order to avoid late fees and other charges, and Defendant profits from the collection of this improper charge.

22.     Defendant was also directly involved in the determination to charge customers multiple, unnecessary, and excessive "property inspection" fees, often on a monthly basis, without any notice that customers' property was being inspected, or any explanation of why any inspection was necessary. Upon information and belief, Defendant determined the amounts, methodology, and terms by which the fees were charged and collected. Defendants also received or retained a portion of the unlawful fees. When customers of the Class called to ask why the fee was assessed, they were told that people were sent to drive by their homes to confirm that someone is still living there. In reality, most, if not all, monthly inspections are not done at all. Nevertheless, the "property inspection" fee was charged and collected, and Defendant profited as a result. Even if such property inspections are done, the amount charged is well in excess of the cost of the property inspections, resulting in addition unjust profits to Defendant. Such excessive fees are not permitted.

23.     Defendant was also involved in the determination to charge late fees in excess of

that permitted by loan documents and other applicable law.

**PLAINTIFFS, INDIVIDUALLY AND ON BEHALF OF THE PUTATIVE CLASS, MAKE NO CLAIMS PURSUANT TO FEDERAL LAW AND FURTHER MAKE NO CLAIMS WHICH WOULD GIVE RISE TO ANY FEDERAL CAUSE OF ACTION. PLAINTIFFS' CLAIMS ARE BASED SOLELY UPON STATE LAW. ADDITIONALLY, PLAINTIFFS ON BEHALF OF THEMSELVES AND PUTATIVE CLASS MEMBERS, DO NOT MAKE ANY CLAIM FOR RELIEF, INCLUDING BOTH EQUITABLE RELIEF AND MONETARY DAMAGES, IN EXCESS OF $74,500.00 IN THE AGGREGATE FOR PLAINTIFFS OR ANY CLASS MEMBER. UNDER NO CIRCUMSTANCES WOULD THE TOTAL AMOUNT OF RELIEF, INCLUDING BOTH EQUITABLE RELIEF AND MONETARY DAMAGES, EXCEED $74,500.00 IN THE AGGREGATE FOR PLAINTIFFS OR EACH CLASS MEMBER. EVEN IF PLAINTIFFS AND EACH CLASS MEMBER RECOVERED UNDER EACH COUNT OF THE COMPLAINT, THE TOTAL RECOVERY FOR PLAINTIFFS AND EACH PUTATIVE CLASS MEMBER WOULD NOT EXCEED $74,500 IN THE AGGREGATE FOR PLAINTIFFS OR EACH CLASS MEMBER AND THE TOTAL DAMAGES FOR THE ENTIRE CLASS WOULD NOT EXCEED $4,995,000, IN THE AGGREGATE, EXCLUDING INTEREST AND COSTS. PLAINTIFFS, ON BEHALF OF THEMSELVES AND THE PUTATIVE CLASS, STATE THAT THE TOTAL DAMAGES FOR THE ENTIRE CLASS, INCLUDING EQUITABLE RELIEF AND MONETARY DAMAGES, ARE $4,995,000 OR LESS, EXCLUDING INTEREST AND COSTS AND UNDER NO CIRCUMSTANCES WILL THE TOTAL DAMAGES, INCLUDING EQUITABLE RELIEF AND MONETARY DAMAGES, FOR PLAINTIFFS AND THE ENTIRE CLASS, IN THE AGGREGATE, EXCEED $4,995,000, EXCLUDING INTEREST AND COSTS.**

## FIRST CAUSE OF ACTION

### MISREPRESENTATION

24.     Plaintiffs adopt, re-allege and incorporate herein each and every allegation in

Paragraphs 1 through 23, as though fully set forth herein.

25.     At all times material hereto, Defendant was under a duty to not misrepresent the

true nature of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire

fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees. Defendant

intentionally, recklessly or negligently misrepresented that the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees were legitimate charges, when in fact, such charges were improper as set out herein.

26.     Defendant intentionally misled Plaintiffs and putative class members as to the true nature and purpose of their above "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, and/or other similar fees for the purpose of persuading customers to pay such charges without question or negotiation. At the time Defendant made these representations to Plaintiffs, Defendant knew that these representations were false.

27.     Specifically, Defendant misrepresented or caused to be misrepresented to Plaintiffs and other members of the putative class the following information:

a. that the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "Equity Builder" fees, and "pay by phone" fees are legitimate charges.

b. the other facts set out herein.

c. that such fees bore a rational relationship to expenses actually incurred by Defendants.

28.     By intentionally, recklessly or negligently misrepresenting or causing to be misrepresented the nature of the "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees, as set out herein, Defendant has taken advantage of Plaintiffs and other putative class members, who based upon such misrepresentations, were misled into paying such fees and charges.

29.     The misrepresentations have damaged Plaintiffs and other putative class members for which damages are sought.

9

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and others similarly situated, seeks to recover compensatory and punitive damages and are entitled to damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

## SECOND CAUSE OF ACTION

### SUPPRESSION

30.     Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 29, as though fully set forth herein.

31.     Defendant suppressed or caused to be suppressed from Plaintiffs and putative class members the true nature of their fees and charges as set out hereinabove, with the result that customers paid such charges without question or negotiation. At the time Defendant suppressed this information from Plaintiffs, Defendants knew or should have known that they were under a duty to communicate the true nature of their fees and charges.

32.     By suppressing the nature of their fees and charges and not disclosing material information concerning such fees and charges, Defendant has taken advantage of Plaintiffs, who based upon such omissions, were misled into paying such fees and charges. Specifically, Defendant failed to disclose the following facts:

a. That Defendant was deceptively causing to be placed "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees on Plaintiffs and other customers' invoices so that these charges would be paid without their conscious permission, which resulted in Defendant's engagement in unfair and fraudulent business practices.

10

b.  The true nature of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees and the fact that such fees and charges are not necessary.

c.  The true nature, including the excessiveness thereof, of the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees.

d.  That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees are excessive and not allowed by law or by the contract;

e.  That Plaintiffs and other customers were not required to pay the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees.

f.  That Defendant would fail to send Plaintiffs and other customers enough information to make an informed decision regarding the "property inspection" fees, late charges, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, "Equity Builder" fees, and/or other similar fees.

g.  The unconscionability of the fees and the fact that Defendant was engaging in unconscionable practices as set out herein.

h.  The fact that Defendant determined to unilaterally increasing payments when it is not allowed by law or the contract.

i.  That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "Equity Builder" fees, and "pay by phone" fees are excessive.

11

l. That the "property inspection" fees, late fees, "Speedpay" fees, fax payoff fees, wire fees, "pay by phone" fees, and "Equity Builder" fees are not legitimate charges.

m. That the late fees are not rationally related to any damage suffered by Defendant and/or that such fees are "penalties" under applicable law;

n. The other facts set out herein.

o. That such fees bore a rational relationship to expenses actually incurred by Defendant.

Defendant also failed to disclose other facts as set out herein. Such nondisclosure constitutes suppression as Defendant knew or should have known of such facts and Defendant further had a duty to communicate such facts.

33.     Defendant's suppression has damaged Plaintiffs and putative class members.  As a result, damages are sought.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and others similarly situated, seeks to recover compensatory and punitive damages and are entitled to damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

### THIRD CAUSE OF ACTION

### CONSPIRACY

34.     Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 33, as though fully set forth herein.

35.     Defendant conspired and combined with unnamed third parties, property inspection companies, related entities, and other individuals, to do the acts complained herein. Plaintiffs and putative class members have been billed and Plaintiffs and putative class members

have paid improper fees and charges to Defendant, for which Plaintiffs and putative class members have been damaged.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover and are entitled to compensatory and punitive damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

### FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

36.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 35, as though fully set forth herein.

37.    Defendant, by suppressing or causing to be suppressed from Plaintiffs and putative class members the material facts set forth herein, by misrepresenting or causing to be misrepresented the material facts set forth herein and by engaging in the other unlawful and wrongful conduct set out herein, knowingly obtained or exerted unauthorized control over Plaintiffs' property and putative class members' property with the intent to deprive Plaintiffs and putative class members of their property and/or knowingly obtained control over said property by deception and with the intent to deprive Plaintiffs and putative class members of their property by:

a. creating or confirming an impression in Plaintiffs and putative class members which was false and which Defendant did not believe to be true; and/or

b. failing to correct a false impression which Defendant previously created or affirmed; and/or

13

c. failing to correct a false impression which Defendant was under a duty to correct; and/or

d. preventing Plaintiffs and putative class members from acquiring information pertinent to the disposition of their property; and/or

e. the other actions and/or inactions set out herein.

38.    Such illegal and wrongful fees charged to Plaintiffs and putative class members by Defendants has resulted in Defendant obtaining money, which in equity and good conscience, belong to Plaintiffs and putative class members.

39.    Plaintiffs and putative class members further request that the Court impose a Constructive Trust on such monies and require Defendant to repay such monies to Plaintiffs and putative class members.

40.    As a direct result thereof, Defendant has been unjustly enriched, and Plaintiffs have been injured and damaged and seeks recovery of all monies improperly procured.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover and are entitled to damages in an amount which do not exceed $74,500.00 in the aggregate for each Plaintiffs and each class member.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE

41.    Plaintiffs adopt, re-allege and incorporate herein each and every allegation in Paragraphs 1 through 40 as though fully set forth herein.

42.    Defendant's conduct as set out herein constitutes negligence. Such conduct has proximately caused damage to Plaintiffs and putative class members.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and putative class members, seek to recover compensatory damages in an amount which does not exceed $74,500.00 in the aggregate for Plaintiffs and each class member.

Respectfully submitted,

 /s/ Nicholas W. Armstrong
Robert G. Methvin, Jr. (MET009)
Nicholas W. Armstrong (ARM025)
Attorneys for Plaintiffs

**OF COUNSEL:**
**MCCALLUM, METHVIN & TERRELL, P.C.**
2201 Arlington Avenue South
Birmingham, Alabama 35205
(205) 939-0199 - telephone
(205) 939-0399 - facsimile

Albert Adams
Post Office Box 670
Eufaula, AL 36072-0670
(334) 687-1326 - telephone
(866) 910-9989 - facsimile

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 21, 2014, I electronically filed the foregoing with the Clerk of Court using the Alacourt system, which will send notification of such filing to all counsel of record.


 /s/ Nicholas W. Armstrong_____
OF COUNSEL

## **Exhibit 16**

**March 27, 2014 Letter**

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Judson Brown
To Call Writer Directly:
(202) 879-5082
judson.brown@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

March 27, 2014

<u>Via Email and Federal Express</u>

Robert G. Methvin, Jr.
McCallum, Methvin, Terrell
The Highland Building
2201 Arlington Avenue South
Birmingham, Alabama 35205

Re:    *Chatman, et al v. GMAC Mortgage Corporation*, et al, CV-2008-9000015,
Barbour County Circuit Court, Eufala, Alabama
*Donaldson, et al v. GMAC Mortgage, LLC*, SU 09 CV 3359D, Superior
Court of Muscogee County, Georgia
*Robinson, et al v. Homecomings Financial, LLC*, et al, CV-2008-900007,
Barbour County Circuit Court, Eufala, Alabama

Dear Robert:

I write concerning the amended complaints that you filed on Friday, March 21, 2014 in a brazen attempt to circumvent the Plan's Third Party Release and injunction.

As I stated in my March 20, 2014 letter, amending the complaints would not—and do not—save your clients' claims from the terms of the Third Party Release. Those claims arise from and relate to fees charged for residential mortgages originated and serviced by GMAC Mortgage, LLC and Homecomings Financial, LLC, both Debtor entities. In amending the complaints, you merely drop these two Debtor entities as named defendants and instead attribute to Ally the claims your clients had against the Debtor entities, baldly alleging that Ally directly determined, implemented, and assessed fees on residential mortgages. But as I previously stated, Ally is not—and never has been—engaged in the residential mortgage business. Ally does not establish or assess fees related to residential mortgage loans. These are all business activities of the Debtor entities, regardless how many times or ways you amend the complaints. Your clients' claims, therefore, fall squarely within Plan's Third Party Release and the injunction.

On a related note, I wanted to inform you that yesterday, the Bankruptcy Court granted Ally's motion to enforce the Third Party Release and injunction against a pro se plaintiff with similar claims that arose from the business conduct of Debtor entities. Like your clients, the

Beijing    Chicago    Hong Kong    London    Los Angeles    Munich    New York    Palo Alto    San Francisco    Shanghai

## KIRKLAND & ELLIS LLP

Robert G. Methvin, Jr.
March 27, 2014
Page 2

plaintiff there conflated the conduct of Debtor entities with Ally, and refused to dismiss his claims against Ally.  The Bankruptcy Court ordered the pro se plaintiff to dismiss his claims against Ally and granted Ally the right to seek reasonable fees and costs to enforce the Court's order.  I have attached the pleadings and the Court's order for your review.

Ally reiterates its demand that you dismiss with prejudice your clients' claims against Ally.  If you have not done so **by 4 p.m. ET tomorrow**, Ally will move to enforce the Third Party Release and injunction and will seek the fees and costs it has incurred for seeking such relief.

Sincerely,

Judson Brown

Enclosures