UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

FOR PUBLICATION

In re:

RESIDENTIAL CAPITAL, LLC, *et al*.

Debtors.

Case No. 12-12020 (MG)

Jointly Administered

---

**MEMORANDUM OPINION AND ORDER SUSTAINING BORROWER CLAIMS
TRUST'S OBJECTION TO CLAIM NOS. 4754 AND 7181**

*A P P E A R A N C E S:*

THOMAS J. SINNICKSON, P.C.
*Attorneys for Caren J. Wilson*
176 Main Street
Center Moriches, NY 11934
By:     Thomas J. Sinnickson, Esq.

        and

ACCESS LEGAL SERVICES
*Attorneys for Caren J. Wilson*
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
By:     Wendy Alison Nora, Esq., *pro hac vice*


MORRISON & FOERSTER LLP
*Counsel for the ResCap Borrower Claims Trust*
425 Market Street
San Francisco, CA 94105
By:     Adam A. Lewis

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

        Before the Court is *The ResCap Borrower Claims Trust's Objection to Proofs of Claim
Filed by Caren Wilson (Claim Nos. 4754 and 7181)* (the "Objection," ECF Doc. # 6268).  The

ResCap Borrower Claims Trust (the "Trust") seeks to disallow and expunge Claim Nos. 4754

and 7181 of Caren Wilson (the "Claims").  The Claims assert (1) a $5,050,000 secured claim and

(2) a $4,150,000 unsecured and $350,000 secured claim, respectively, both against Residential

Capital, LLC ("ResCap").  The Objection is supported by the Declaration of Lauren Graham

Delehey (the "Delehey Decl.," Ex. 2 to the Objection).  Wilson's counsel filed the *Declaration of*

*Attorney Wendy Alison Nora in Support of Motion to Strike Objection Filed by Disqualified*

*Counsel for Trustee as Initial Response of Caren Wilson to Objection to Claim #4754 in the*

*Record of Kurtzman Carlson* [sic] *Consultants, LLC (KCC, LLC) Amended as Claim 18 and*

*Renumbered by KCC, LLC as Claim # 7181 in These Proceedings* (the "Response," ECF Doc.

# 6427).  In response, the Trust filed *The ResCap Borrower Claims Trust's Reply in Support of*

*the ResCap Borrower Claims Trust's Objection to Proofs of Claim Filed by Caren Wilson*

*(Claim Nos. 4754 and 7181)* (the "Reply," ECF Doc. # 6493).

On February 20, 2014, the Court held a hearing on the Objection.  The Court, on the

record and by Order, denied Nora's motion to strike or seal documents.  (*See* ECF Doc. # 6507.)

The Court reserved decision on the Objection.  For the reasons that follow, the Court

**SUSTAINS** the Objection and **EXPUNGES** Claims 4754 and 7181.  The Court recounts below

the convoluted history and arguments made by Wilson in two prior litigations in state and federal

courts in Virginia because, for the most part, the Court's ruling is based on *res judicata* arising

from the earlier disposition of her case in Virginia federal district court.

## I.    BACKGROUND

### A.    Procedural History

On March 21, 2013, the Court entered an order approving procedures for the filing of

objections to proofs of claim filed in these Chapter 11 Cases (the "Procedures Order," ECF Doc.

# 3294), applicable to objections to claims filed by current or former borrowers (collectively, the

"Borrower Claims," and the procedures relating thereto, the "Borrower Claim Procedures").  The

Procedures Order includes specific protections for borrowers and sets forth a procedure the

Debtors must follow before objecting to certain categories of Borrower Claims.  Specifically,

before objecting to a borrower's claim, the Debtors must furnish the borrower with a letter

requesting additional documentation in support of the purported claim (the "Request Letter").

(Procedures Order at 4.)

    The Debtors sent a Request Letter to Wilson on June 21, 2013.  (Delehey Decl. ¶ 12 n.5,

Ex. F.)  Wilson did not respond.  (*Id.* ¶ 12 n.5.)  Thereafter, the Debtors objected to Claim No.

4754 in the *Debtors' Omnibus Objection to Claims (No Liability Borrower Claims – Books and

Records)* (the "Thirtieth Omnibus Objection," ECF Doc. # 4887).  Three weeks after the Debtors

filed the Thirtieth Omnibus Objection, Wilson, through her counsel, filed an "amendment" to

Claim No. 4754 by submitting Claim No. 7181.  At a hearing on October 9, 2013, the Debtors

withdrew the Thirtieth Omnibus Objection as it related to Claim No. 4754 and the Court

approved an adjournment of the matter to allow the Debtors to address both of Wilson's Claims

together.  (Oct. 9, 2013 Tr. 145:8–9.)

    On December 11, 2013, the Court entered an *Order Confirming Second Amended Joint

Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and The Official Committee of

Unsecured Creditors* (the "Confirmed Plan," ECF Doc. # 6065).  The Confirmed Plan

established the Trust, (*id.*), and became effective on December 17, 2013 (ECF Doc. # 6137).

    **B.    The Wilson Loan and Prior Litigation**

    On December 13, 2006, Wilson obtained a home mortgage loan (the "Loan"), evidenced

by a note (the "Note") in favor of Debtor Homecomings Financial, LLC ("Homecomings").

(Delehey Decl. ¶ 4.)  The Note was secured by a deed of trust ("DOT") on property located at

211 W. Chandler Street, Culpeper, Virginia 22701 (the "Property") and was endorsed from

Homecomings to Debtor Residential Funding Company, LLC ("RFC"), and then from RFC to

Deutsche Bank Trust Company America as Trustee.  (*Id.* ¶ 4, n.2.)  The Property was subject to

four foreclosure referrals[1] before a fifth referral on February 11, 2012 resulted in a foreclosure

sale on October 4, 2012.  (*Id.* ¶ 5.)  A third party bought the Property at the foreclosure sale.

(*Id.*)

Before the foreclosure sale, Wilson filed two lawsuits in Virginia state court related to the

Property.  First, Wilson filed an emergency motion in the Culpeper County Circuit Court[2] (the

"State Court") against six identified defendants[3] seeking to enjoin a foreclosure sale scheduled

for April 19, 2011 (the "First State Action").[4]  (*Id.* ¶ 6.)  On April 20, 2011, Wilson filed a

complaint in the First State Action.  (*Id.*)

---

[1]    The foreclosure referrals occurred on December 10, 2008, January 29, 2010, May 20, 2010, and October 26, 2010.  (Delehey Decl. ¶ 5.)  The four foreclosure referrals were vacated for "different reasons, including the negotiation of a repayment plan, a foreclosure being opened in error and Ms. Wilson's bankruptcy filing."  (*Id.*)

[2]    Case No. CL11000304-00.

[3]    The Defendants in the First State Action originally included GMAC Mortgage LLC ("GMACM") and Samuel White, PC, the original Trustee under the deed of trust securing the Loan.  (Delehey Decl. Ex. A at 1.)  The Amended Wilson Complaint (defined below) lists GMACM, Homecomings, Deutsche Bank Trust America Inc. ("Deutsche Bank"), RALI 2007 QSI, ETS of Virginia, Mortgage Electronic Registration Systems, Inc. ("MERS"), and John and Jane Does, et al. as defendants.  (Delehey Decl. Ex. B at 1.)

[4]    The State Court granted a temporary injunction and Wilson posted a bond with surety following the April 19, 2011 hearing on her emergency motion.  (Wilson Letter (defined below) at 1.)  Wilson failed to serve the Defendants with notice of the injunction in advance of the foreclosure, which  proceeded as scheduled.  (*Id.*)  At a subsequent hearing on April 26, 2011, the Defendants in the First State Action represented to the State Court that the foreclosure proceeding was in the process of being rescinded and that the noteholder did not intend to record a deed of foreclosure or otherwise transfer ownership of the property as a consequence of the foreclosure.  (*Id.* at 2.)  The State Court therefore declined to extend the injunction.  (*Id.*)

4

While the First State Action was pending, Wilson filed a second complaint (the "Second

Wilson Complaint," Delehey Decl. Ex. C) against the eight identified defendants (the

"Defendants")[5] in the State Court[6] (the "Second State Action"), alleging fraud, wrongful

foreclosure, breach of contract, breach of implied covenant of good faith and fair dealing, unjust

enrichment, action to quiet title, slander of title arising out of the origination of the Note and

DOT, and seeking to void or cancel assignment of deed.  The Second Wilson Complaint

additionally asserted causes of action under the Federal Truth in Lending Act and the Fair Debt

Collection Practices Act.  (Second Wilson Complaint ¶ 5.)  In the Second Wilson Complaint,

Wilson challenged the securitization process, arguing that MERS "cannot be a beneficiary of the

Deed of Trust because it was not a creditor."  (*Id.* ¶ 18.)  By naming MERS as a beneficiary on

the Deed of Trust even though MERS was not a creditor, Wilson argued, the Defendants

"separated the Deed of Trust from the Note," rendering the Deed of Trust unenforceable.  (*Id.*

¶¶ 18–19.)  According to Wilson, this meant that "[t]he obligation is still there but it is not

secured."  (*Id.* ¶ 20.)  Presumably, Wilson was referring to her obligation to pay her mortgage.

In support of the Second Wilson Complaint, Wilson attached a "Mortgage Forensic

Securitization Analysis Report" by M. Nawaz Raja (the "Forensic Report," *id.* Ex. B), claiming

that the Defendants used her Note to create an "unregistered and un-regulated security."  (*Id.*

¶¶ 21, 26.)  Wilson further alleged that the Defendants did not properly transfer her mortgage in

the securitization process, meaning that the "Chain of Transfer of Note is broken and not perfect"

and therefore the Defendants lacked standing to foreclose.  (*Id.* ¶¶ 27–29.)

---

[5]      The defendants in the Second Wilson Complaint include:  GMACM, David Applegate (whom Wilson identifies as the CEO/President of GMACM), Homecomings, Deutsche Bank, RALI 2007 QSI, Seth H. Waugh (whom Wilson identifies as the CEO of Deutsche Bank), ETS of Virginia, Inc., MERS, John Does ("Investors") 1-10,000, and "John Roes" 1-10, "et al."  (Second Wilson Complaint at 1.)

[6]      Case No. 2011-L-578.

The Defendants removed the Second State Action to the United States District Court for the Western District of Virginia, Charlottesville Division (the "District Court") on federal question and supplemental jurisdictional grounds (the "Federal Action").[7]  (*See* Case No. 3:11-cv-00057, ECF Doc. # 1.)  On September 16, 2011, the Defendants in the Federal Action, including Debtors Homecomings and GMAC Mortgage, LLC ("GMACM"), filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  The District Court sent Wilson a *Roseboro* Notice[8] of the Defendants' Motion to Dismiss on September 19, 2011.  (*See* Case No. 3:11-cv-00057, Doc. # 9 ("Roseboro Notice mailed to plaintiff this day," dated 9/19/2011).  The Notice informed Wilson that, should she fail to respond to the Defendants' Motion, the District Court would dismiss her case for failure to prosecute.  (*Id.*)  Wilson did not respond to the Defendants' motion or the District Court's *Roseboro* Notice and, on October 26, 2011, the District Court entered an order (the "Dismissal Order," Delehey Decl. Ex. D) dismissing the Federal Action pursuant to Federal Rule of Civil Procedure 41(b) for "failure to prosecute this action or otherwise respond to court orders." (Delehey Decl. ¶ 9; Dismissal Order at 1.)  Wilson did not appeal the Dismissal Order and it has since become final.  (Delehey Decl. ¶ 9.)

The First State Action remained pending after the Federal Action was dismissed.  After finding that Wilson's original complaint in the First State Action did not comply with pleading

---

[7]        Case No. 3:11-cv-00057.  Complete diversity appears to be lacking so the state law claims could only proceed on the basis of supplemental jurisdiction.

[8]        In the Fourth Circuit, based on *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), a "*Roseboro* Notice" must be sent to *pro se* litigants in some instances.  "A *Roseboro* notice informs a *pro se* litigant that a motion for summary judgment has been filed against him and advises him of his right to file affidavits before a court considers the summary disposition of the case." *Nance v. Quickrete Co.*, 2007 WL 1655154, at *2 n.2 (W.D. VA June 5, 2001).  The Fourth Circuit observed in *Roseboro* that "a pro se plaintiff is entitled to such a reasonable safeguard [as fair notice of the requirements of the summary judgment rule] when confronted with the possibility of summary disposition of his case." *Roseboro*, 528 F.2d at 310.

standards, Virginia State Judge John G. Berry issued a letter to the parties on November 8, 2011 (the "Wilson Letter"), requiring Wilson to file an amended complaint by November 29, 2011.[9] (*Id.* Ex. A.)  On November 28, 2011, Wilson filed an amended complaint (the "Amended Wilson Complaint," *id.* Ex. B) against the Defendants, seeking to quiet title in connection with the Property and to prosecute claims for fraud and deceit relating to the origination of the Loan.

Specifically, the Amended Wilson Complaint alleged that, after Wilson investigated the securitization process of her mortgage, Wilson "was not fully informed of the facts surrounding what she thought to be a loan provided to her from HOMECOMINGS FINANCIAL LLC, AKA, GMAC BANK."  (Amended Wilson Complaint at 2–3.)  Wilson claimed to have investigated the "Defendants['] history," concluding that "it was clear that they were at the top of the list which named several banks that are currently under investigation in numerous jurisdictions with regard to mortgage and foreclosure fraud."  (*Id.* at 3.)  Due to this investigation, Wilson argued there may be clouded title to her Property.  (*Id.*)  Wilson placed a great deal of weight on the Forensic Report, from which Wilson concluded that "she . . . has been a victim of deceptive practices and that there is a preponderance of evidence that cloud on her title exists."  (*Id.* at 3.)  Consequently, she requested that the State Court require the Defendants to present to the court "any <u>original evidence of indebtedness</u> (i.e. Promissory Note) with [Wilson's] <u>wet ink autograph</u> upon it for forensic examination" along with tax histories and live witness testimony.  (*Id.* at 4 (emphasis in original).)  Wilson asserted that under the law of the case doctrine, the "instrument" (presumably, the Note) should be cancelled.[10]  (*Id.*)

---

[9]    The Amended Wilson Complaint incorrectly identifies the State Court's Order as dated November 9, 2011. (Amended Wilson Complaint at 1.)

[10]    It is unclear why Wilson believed that the "law of the case" doctrine applied; she attached to the Amended Wilson Complaint a document entitled "LAW OF THE CASE" that includes a list of seemingly random quotes from various cases from different jurisdictions, statements made by former Supreme Court justices, statutes, MERS announcements, and Black's Law Dictionary.  (Amended Wilson Complaint at Ex. C.)

On December 16, 2011, the Debtors filed a motion to dismiss (the "Motion to Dismiss")

the Amended Wilson Complaint in the First State Action on the grounds that it was barred by *res*

*judicata* by virtue of the Dismissal Order.  (Delehey Decl. ¶ 10.)  Before ruling on the Motion to

Dismiss, the State Court nonsuited the First State Action on February 28, 2012, as a dismissal

without prejudice at Wilson's request.  (*Id.* Ex. E.)

### C.    Wilson's Claims

According to KCC's records, Claim No. 4754 asserts a $5,050,000 million secured claim

against ResCap[11] and Claim No. 7181 asserts a $4,150,000 general unsecured and $350,000

secured claim against ResCap.[12]  Wilson filed Claim No. 4754 on November 14, 2012; she filed

Claim No. 7181 on September 23, 2013 as an "amendment" to Claim No. 4754.

#### a.    Claim No. 4754

Wilson filed Claim No. 4754 *pro se*.  In Box 2 on the face of the proof of claim, Wilson

asserted as the basis for the claim:  "My note was sold as unregistered and unregulated to an

investor as a bond."  Wilson attached:  (1) a copy of her birth certificate, (2) the Forensic Report

by Wilson's alleged expert that was attached to the Amended Wilson Complaint and the Second

Wilson Complaint, (3) the DOT, and (4) the Note.

#### b.    Claim No. 7181

Following the Debtors' objection to Claim No. 4754 in the Thirtieth Omnibus Objection,

and nearly a year after she first filed the claim (as well as 311 days after the Bar Date passed),

Wilson filed Claim No. 7181 by counsel, apparently to "amend" her original claim.  Box 2 on the

---

[11]    Although Claim No. 4754  is asserted against ResCap, the proof of claim refers to "Exhibit A," which
contains a list of all of the Debtors and handwritten numbers next to 21 Debtor entities.  (Claim No. 4754 Ex. A.)

[12]    Although Claim No. 7181 is asserted against ResCap, the proof of claim lists the specific case numbers for
Homecomings (Case No. 12-12042) and Residential Funding Company, LLC ("RFC," Case No. 12-12019).

face of the "amended" claim states that the claim seeks "disgorgement of profits from sale of

note, RICO, fraud, etc.  Does not include post-petition civil rights claims v. Ocwen and state

actors for which Ally Financial Inc. may be liable."  Nothing in the "amended" claim describes

the factual basis for these alleged claims and no documents are attached to Clam No. 7181.

Furthermore, Claim No. 7181 does not discuss how, if at all, it relates to Claim No. 4754.[13]

### D.    The Trust's Objection

The Trust initially objected to the original Wilson claim as part of the Thirtieth Omnibus

Objection.  But after Wilson filed Claim No. 7181, she argued that the Thirtieth Omnibus

Objection was moot because Claim No. 7181 amended the original claim.  (*See Response to

Objection to Claim #4754 in the Record of Kurtzman Carson Consultants, LLC (KCC LLC) of

Caren Wilson Amended as Claim 18 in These Proceedings* ("Original Wilson Response," ECF

Doc. # 5222) ¶ 24.)  Consequently, the Debtors withdrew their pending objection and filed a new

objection addressing both of the Wilson Claims.  (*See Debtors' Omnibus Reply in Support of

Debtors' Thirtieth Omnibus Objection to Claims (No Liability Borrower Claims – Books and

Records)*, ECF Doc. # 5297.)

The Trust asserts that the allegations in the First State Action and the Federal Action arise

from the same underlying nucleus of facts.  (*Id.* ¶ 20.)  Since the District Court dismissed the

Federal Action pursuant to Federal Rule of Civil Procedure 41(b), which Wilson did not appeal,

that action was adjudicated "on the merits."[14]  Therefore, all claims that were or could have been

---

[13]    The Original Wilson Response (defined below) states that "[u]pon consultation with counsel, Ms. Wilson has amended her Proof of Claim 4754, filed with the private database operated by KCC, LLC and Proof of Claim 4754 is no longer pending before the Court.  It has been replaced with Proof of Claim [7181], which amends the previously filed claim, except that it incorporates the documentation attached to Proof of Claim 4574 [sic] by reference thereto."  (Original Wilson Response ¶ 23.)

[14]    Federal Rule of Civil Procedure 41(b) provides:

brought relating to those facts are barred.  The Trust then argues that Claim No. 4754 is also

based on the same underlying nucleus of facts that were the subject of the Federal Action.  So

Claim No. 4754 is barred by *res judicata* and should be expunged according to the Trust.

To the extent that the "amended" Claim No. 7181 is not based on the same underlying

nucleus of facts as the original Claim No. 4754, the Trust argues that it must be disallowed as

late-filed, and to the extent it does relate to the same underlying nucleus of facts, it is barred by

*res judicata* for the same reasons Claim No. 4754 is barred.

Finally, the Trust argues that the Wilson Claims fail to appropriately plead facts to

support a RICO claim under Federal Rule of Civil Procedure 8(a) or a fraud claim under Federal

Rule of Civil Procedure 9(b).  The Trust asserts that Claim No. 7181 fails to state any facts and

that Claim No. 4745 fails to provide a "short and plain statement of facts" giving rise to relief

under RICO.  The Trust also argues that Wilson fails to allege any specific facts necessary to

plead a fraud claim under Federal Rule of Civil Procedure 9(b).

### E.    Wilson's Response

Wilson's Response does not address the Trust's arguments why the Claims should be

disallowed and expunged.  Instead, Wilson argues that Claim No. 4754 "has been amended and

replaced" by Claim No. 7181 and is "moot."  (Response ¶ 1.)  The Response then argues what

appear to be the merits of the First State Action and Federal Action, asserting that the Debtors

(1) attempted to "illegally foreclose on her home through forged and perjured documents," and

(2) took profits "by the theft of her identity consisting of her mortgage loan documents to be sold

---

If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may
move to dismiss the action or any claim against it.  Unless the dismissal order states otherwise, a
dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of
jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication
on the merits.

FED. R. CIV. P. 41(b).

and re-sold in the 'securitization' process without her knowledge and consent." (*Id.* ¶ 2.)

Wilson alleges that when Homecomings originated her Loan, it was "not the real party in

interest" but was instead acting as a "'straw man' . . . on behalf of the real party in interest, a

securitization trust, which had already been funded by investors." (*Id.* ¶ 21.) Consequently, the

loan closing was not actually a loan closing but a "concealed securities transaction intended to

deceive Ms. Wilson into believing that Homecomings was a mortgage lender, when, in fact,

Homecomings was purchasing the securities which had already been sold" to the securitization

trust. (*Id.* ¶ 22.) Eventually, Wilson's Note was indorsed by Judy Faber, whose signature line

indicated she was a Vice President of RFC. Wilson contends that Judy Faber "never had any

duties beyond that of a 'Records Services Manager'" and attaches as an exhibit a deposition

transcript of Faber from August 14, 2009 in another matter. (*Id.* ¶ 23, Ex. B.) Since Faber later

testified in yet another case (a copy of the transcript is provided at *id.* Ex. C) that she was a Vice

President at RFC, Wilson argues, "[a] reasonable inference arises that . . . Residential Funding

Company, LLC and GMAC Mortgage, LLC decided that she should identify herself in the

fictitious capacity of a Vice President because her position as 'Director of Records Management'

did not conform to the capacity in which her signature had appeared." (*Id.* ¶ 25.)

Wilson also asserts that she has filed a post-petition civil rights claim related to "state

action in the illegal confiscation of her home by foreclosure proceedings founded on forged,

perjured and fictitious documents as well as for illegal eviction . . . after the date of the filing of

the Debtors' bankruptcy proceedings and which was ultimately completed after the date of the

sale of the Debtors' servicing rights to Ocwen." (*Id.*) According to Wilson, her post-petition

state and federal law claims include (but are not limited to):  violations of her First, Fourth, Fifth,

and Fourteenth Amendment rights; RICO violations; state claims for "abuse of legal process,"

conversion of her Property, and seizure of her personal property (apparently in the form of files

she needs to prove her claims against the Debtors); common law fraud; personal injury;

intentional infliction of emotional harm; and punitive damages "not subject to the automatic

stay." (*Id.* ¶ 3.) Wilson claims that, by the Objection, the Debtors/Trust are attempting to

deprive Wilson of her day in court. (*Id.* ¶ 4.)

Wilson makes a variety of arguments concerning the Debtors' original Thirtieth Omnibus

Objection. First, Wilson contends that omnibus objections based on the grounds that the

Debtors' books and records show no liability are unlawful because they are not listed in

Bankruptcy Rule 3007(e). (*Id.* ¶ 12.) Second, she claims that she did not receive a copy of the

Debtors' original Thirtieth Omnibus Objection but was instead instructed to "serve herself" by

looking up the objection on ECF. (Response ¶¶ 13–14.) Wilson therefore argues that the

Debtors violated Bankruptcy Rule 3007(a), which provides that "[a] copy of the objection with

notice of the hearing thereon shall be mailed or otherwise delivered to the claimant . . . at least 30

days prior to the hearing." FED. R. BANKR. P. 3007(a). Third, Wilson argues that the notice

regarding the hearing on the Debtors' Thirtieth Omnibus Objection, which indicates that it was

mailed to Wilson, "is a fraudulent document transmitted by mail with the intent to defraud them

[apparently borrowers whose claims were objected to in the Thirtieth Omnibus Objection, but it

is unclear] into believing there are grounds to disallow their Proof of Claims [*sic*]." (Response

¶ 18.) According to Wilson, this constituted wire fraud.

Wilson further alleges that she was never served with either the "*Roseboro* Notice" or the

Dismissal Order in the Federal Action. (*Id.* ¶¶ 42–43.) According to Wilson, the Dismissal

Order was only placed electronically on the Court's docket and was not mailed to her. (*Id.* ¶ 43.)

Wilson claims that she did not know how the Federal Action had been dismissed until her

counsel in these chapter 11 cases inspected the District Court's docket. (*Id.*) Wilson contends

that the Dismissal Order was therefore fraudulently obtained by the Debtors.

Finally, the Response attaches as Exhibit C the "Confidential Declaration of Attorney

Wendy Alison Nora," "believed to be confidential as pertaining to a confidential settlement

agreement and is filed under seal." (Response ¶ 33.) The declaration is apparently meant to

corroborate a claim in the Response that the "Debtors have not returned a single **original** note to

its maker marked PAID, DISCHARGED or SATISFIED upon foreclosure of the underlying

security interest and are believed to have conspired with the purported trustees of the empty

REMIC Trusts to sell and resell the notes as a form of counterfeit currency in overseas market,

conveying the notes to unidentified real parties in interest for value, who may be the ultimate

holders in due course of the notes, yet to claim payment thereunder." (*Id.* ¶ 33 (emphasis in

original).)

### F.    The Trust's Reply

In the Reply, the Trust reiterates its bases for objecting to Wilson's Claims. The Trust

correctly notes that Wilson did not respond to any of the Trust's arguments advanced in the

Objection. The Trust further argues that the Wilson Claims are unsupported by competent

evidence, asserting that after the Trust successfully shifted the burden to Wilson through the

Objection, Wilson failed to carry her burden to establish the enforceability of the Claims by a

preponderance of the evidence.   For example, Wilson failed to present any evidence verifying

her assertion that the Defendants in the Federal Action failed to serve a *Roseboro* Notice on

Wilson. (*Id.*) Indeed, the Trust attaches a copy of a Notice from the Federal Action to the Reply

at Exhibit 1, which states that it was "[i]ssued and mailed this 19th day of September, 2011" and

was signed by the Deputy Clerk. (*Id.* Ex. 1.) The Notice provides:

13

> If plaintiff does not respond to defendants' pleadings, the court will assume that
> plaintiff has lost interest in the case, and/or that plaintiff agrees with what the
> defendants state in their responsive pleadings.  If plaintiff wishes to continue with
> the case, it is necessary that plaintiff respond in an appropriate fashion.  Plaintiff
> may wish to respond with counter-affidavits or other additional evidence . . . .
> <u>However, if plaintiff does not file some response within the twenty (20) day
> period, the court will dismiss the case for failure to prosecute.</u>

(*Id.* (emphasis in original).)  The Trust contends that the Dismissal Order itself required that the Clerk of the Court in Virginia serve the Dismissal Order on Wilson.  (*Id.* ¶ 10.)  Furthermore, the Trust argues that whether Wilson received notice of the Dismissal Order is irrelevant because, under federal law, the District Court's judgment in the Federal Action is final for *res judicata* purposes even if it had been appealed.  (*Id.* ¶¶ 10–11.)

Finally, the Trust provides an affidavit of service indicating that Wilson was properly served with notice and a copy of the Thirtieth Omnibus Objection.  (*Id.* ¶ 15.)  Pursuant to the Procedures Order, the Debtors were authorized to serve notice of an omnibus objection without a copy of the entire objection on the affected claimant.  (Procedures Order at 7.)  Moreover, the Trust argues that the Thirtieth Omnibus Objection is irrelevant because the Debtors withdrew the Thirtieth Omnibus Objection as it related to the Original Wilson Claim.  (ECF Doc. # 5297.) And the Trust also argues that it served Wilson and her counsel with the notice of the Thirtieth Omnibus Objection as well as the objection itself in its entirety, as indicated in the Affidavit of Service attached to the Reply at Exhibit 2.  (*Id.* at Ex. 2.)

### G.    February 20, 2014 Hearing

At the February 20, 2014 hearing, the Court denied Nora's motions to seal various documents, to strike the Objection, and to disqualify the Trust's counsel, as well as Wilson's request for an adjournment to allow her time to vacate the Dismissal Order.  (Feb. 20, 2014 Tr. 13:13–14; 24:23–24; 31:2–4.)  Wilson's attorneys claimed that she had not had an opportunity to

14

object to removal, had not received proper *Roseboro* Notice related to the Motion to Dismiss, had not received notice of the Dismissal Order, and was unaware that the Federal Action had been dismissed. (*Id.* at 31:15–16; 32:14, 16; 33:24; 34:1, 3–7.) Wilson did know that the action had been removed to federal court, but she contends that she did not object to removal within the thirty day time frame because she believed there would be a hearing. (*Id.* 34:13–15.) Wilson's counsel indicated to the Court that they would seek to have the Western District of Virginia's Dismissal Order vacated but agreed that, if the Dismissal Order stands, Wilson's Claims are barred by *res judicata*. (*Id.* 38:7–11.)[15]

Finally, Wilson spoke at the hearing about what she thought was a lack of notice as to the activities in the Federal Action, claiming that she had been temporarily living outside of Virginia during the relevant time period, seeking employment in Texas. (*Id.* 43:15–23.) She was not collecting mail while she was out of town, nor was she having her mail forwarded to her. (*Id.* 44:6–7, 11–12.)

The Court took the Objection under submission.

## II.    DISCUSSION

### A.    Claims Objections

Federal Rule of Bankruptcy Procedure 3007 permits a debtor to make omnibus objections to disallow up to 100 claims per motion. Parties making omnibus objections may object to proofs of claim on the following grounds:

    1)  they duplicate other claims;
    2)  they have been filed in the wrong case;

---

[15]    THE COURT: . . . If the order in Virginia stands, if the dismissal is effective, if it's not vacated, I take it, you agree that Ms. Wilson's claims in this court are barred by the doctrine of res judicata?

    MS. NORA:  Yes, Your Honor.

(Feb. 20, 2014 Tr. 38:7–11.)

3)  they have been amended by subsequently filed proofs of claim;

4)  they were not timely filed;

5)  they have been satisfied or released during the case in accordance with the Code, applicable rules, or a court order;

6)  they were presented in a form that does not comply with applicable rules, and the objection states that the objector is unable to determine the validity of the claim because of the noncompliance;

7)  they are interests, rather than claims; or

8)  they assert priority in an amount that exceeds the maximum amount under § 507 of the Code.

FED. R. BANKR. P. 3007(d).  Pursuant to the Procedures Order, the Debtors may object to proofs of claim on the following additional grounds:

1)  the amount claimed contradicts the Debtors' books and records;

2)  they were incorrectly classified;

3)  they seek recovery of amounts for which the Debtors' estates are not liable;

4)  they do not include sufficient documentation to ascertain the validity of the Claims;

5)  the y are objectionable under Bankruptcy Code section 502(e)(1);

6)  they are filed against more than one Debtor entity;

7)  they have not specified the Debtor against whom the Claim has been filed;

8)  they do not specify any amount of the claim (other than Claims explicitly asserted as "unliquidated"); and

9)  they are facially defective

(Procedures Order at 2–3.)

Rule 3007(e) requires omnibus objections to conform to procedural requirements. Specifically, an omnibus objection must:

1)  state in a conspicuous space that claimants receiving the objection should locate their names and claims in the objection;

2)  list claimants alphabetically, provide a cross-reference to claim numbers, and, if appropriate, list claimants by category of claims;

3)  state the grounds for objection and a cross-reference to the pages in the motion supporting those grounds;

4)  state in the title the identity of the objector;

5)  be numbered consecutively with other omnibus objections; and

6)  contain objections to no more than 100 claims.

FED. R. BANKR. P. 3007(e).

16

Correctly filed proof of claims "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 U.S. Dist. LEXIS 143957, at *12–13 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4-502 COLLIER ON BANKRUPTCY ¶ 502.02 (16th rev. ed. 2013).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

**B.    Res Judicata**

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). The doctrine of *res judicata* precludes the same parties from litigating claims in a subsequent suit based on the same cause of action if there has been a final judgment on those claims. *Id.* When federal jurisdiction in a prior case is based on federal question jurisdiction, with the court exercising supplemental—not diversity—jurisdiction over the plaintiff's

17

remaining claims, federal preclusion doctrine applies. *See U.S. v. Ringley*, 750 F. Supp. 750, 755 (W.D. Va. 1990) ("'Federal law governs the question whether a prior federal court judgment based on federal question jurisdiction is *res judicata* in a [subsequent] case also brought under federal question jurisdiction.'") (quoting 21 Fed. Proc., L. Ed. § 51:211 (1985)); *Chudacoff v. Univ. Med. Ctr.*, 525 Fed. App'x 530, 531 (9th Cir. 2013) (applying federal common law rules of res judicata to a judgment rendered by a federal court exercising federal-question jurisdiction and supplemental jurisdiction over state law claims); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (federal rule of *res judicata* applied when court in federal question case exercised supplemental jurisdiction over some state law claims); *In re Zaharescu*, Case Nos. CV 12-9767-CAS, CV 12-9773-CAS, 2013 WL 3762285 (C.D. Ca. Jul. 11, 2013) (same).

The Federal Action was removed from state court to federal district court in the Western District of Virginia based on federal question jurisdiction over the federal claims and supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(a). As further explained below, this Court applies federal *res judicata* law to the federal claims for which jurisdiction was based on federal question jurisdiction and also to the state law claims on which the federal court exercised supplemental jurisdiction.

In a federal question case, the Court applies the "uniform federal rules" of *res judicata* announced by the Supreme Court. *See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law. . . . For judgments in federal-question cases . . . federal courts participate in developing 'uniform federal

18

rule[s]' of res judicata.") (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–08 (2001)).[16]  The "uniform federal rules" do not incorporate state law.

*Res judicata* "applies to preclude later litigation if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same [claim, or] cause of action."  *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985).  The Trust asserts that the causes of action asserted in Claim No. 4754 are barred by *res judicata* because:  (1) they were decided in the Federal Action; (2) by the District Court; (3) are between the same parties as in the Federal Action, or their privies; and (4) are based on the same cause of action and the same nucleus of operative facts as in the dismissed Federal Action and based on legal theories that might have been raised in the Federal Action.

There is no question that the parties are the same.  Both Wilson and the Debtors identified in Wilson's documentation attached to Claim No. 4754 were parties to the prior Federal Action.  Additionally, Wilson has not pointed to any reason that would indicate the District Court was not a court of "competent jurisdiction" to render a judgment.  Thus, the Court need only analyze the first and fourth prongs.

### 1.    Final Judgment on the Merits

The Dismissal Order constitutes a final judgment on the merits.  Under Rule 41(b) of the Federal Rules of Civil Procedure, plaintiffs have an obligation to diligently prosecute their case. *See Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982); *see also Plaut v.*

---

[16]    By contrast, in diversity cases, "federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Taylor*, 553 U.S. at 892 (citing *Semtek*, 531 U.S. at 507–08); *cf. Robinson v. City of Phoenix*, Case No. CV10-1044 PHX DGC, 2010 WL 4054167, at *2 n.1 (D. Az. Oct. 15, 2010) (citing *Semtek* to explain that "[a]lthough a federal court sitting in diversity must apply the *res judicata* doctrine of the state in which it sits,  this is not a diversity case—it is a case involving federal-question and supplemental jurisdiction.").

*Spendthrift Farm*, 514 U.S. 211, 228 (1995) ("The rules of finality, both statutory and judge

made, treat a dismissal . . . for failure to prosecute[ ] as a judgment on the merits.") (citing FED.

R. CIV. P. 41(b)); *Lucien v. Breweur*, 9 F.3d 26, 29 (7th Cir. 1993). "[A] dismissal for failure to

prosecute an action 'operates as an adjudication upon the merits,' unless the court specifies

otherwise." *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265,

1275 (2d Cir. 1974) (citing FED. R. CIV. P. 41).[17]  For non-enumerated dismissals (i.e., dismissals

that do not state whether they are with or without prejudice), "res judicata would preclude a

subsequent action on the same claim." *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 896 (2d

Cir. 1983).

     The District Court's Dismissal Order granting the Defendants' Motion to Dismiss stated

that the Federal Action was dismissed under Rule 41(b) for "failure to prosecute this action or

otherwise respond to court orders."  (Dismissal Order at 1.)  The order did not specify that the

dismissal did *not* operate as an adjudication on the merits.  Because a dismissal for failure to

prosecute under Rule 41 is an "adjudication on the merits" by its own terms, the Dismissal Order

constitutes a final judgment for *res judicata* purposes.  Moreover, the Dismissal Order did not

provide that any claims were dismissed without prejudice and, therefore, the Court interprets the

---

[17]     Although the Supreme Court's decision in *Semtek* notes that "it is no longer true that a judgment 'on the merits' is *necessarily* a judgment entitled to claim-preclusive effect," 531 U.S. at 503 (emphasis added), that case was decided in the context of a dismissal of a diversity case.  Since the *Semtek* decision, federal courts reviewing Rule 41 dismissals for failure to prosecute federal question cases have continued to treat Rule 41 dismissals as decisions rendered "on the merits."  *See, e.g.*, *Moutsinas v. Dep't of Educ. of City of New York*, Case No. 05 Civ. 3096 (SHS), 2006 WL 1996737, at *3 (S.D.N.Y. Jul. 18, 2006) ("Judge Richard Berman dismissed Moutsinas' action for failure to prosecute pursuant to Rules 4 and 41(b) of the Federal Rules of Civil Procedure on July 18, 2005. . . . [The] Order dismissing the case did not expressly set forth that it was 'without prejudice .'  Thus, the prior dismissal of Moutsinas' claims operated as an adjudication on the merits."); *see also O'Diah v. City of New York*, No. 02 Civ. 274, 2003 U.S. Dist. LEXIS 15658, at *7 (S.D.N.Y. 2003).

20

Dismissal Order as a dismissal of all of Wilson's Federal Action claims with prejudice.[18]

Consequently, the first prong of *res judicata* is satisfied.

### 2.    Identity of Cause of Action

*Res judicata* applies "not only as to what was pleaded, but also as to what could have

been pleaded." *Teltronics*, 762 F.2d at 193. Therefore, *res judicata* bars cases that arise from

the same "operative nucleus of fact." *Olmstead v. Amoco Oil Co.*, 725 F.2d 627, 632 (11th Cir.

1984). "New legal theories do not amount to a new cause of action so as to defeat the

application of the principle of *res judicata.*" *Teltronics*, 762 F.2d at 193. "To ascertain whether

two actions spring from the same 'transaction' or 'claim,' we look to whether the underlying

facts are 'related in time, space, origin, or motivation, whether they form a convenient trial unit,

and whether their treatment as a unit conforms to the parties' expectations . . . .'" *Interoceanica

Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997) (quoting Restatement (Second) of

Judgments § 24(2) (1982)).

Where material factual allegations overlap, "the facts essential to the barred second suit

need not be the same as the facts that were necessary to the first suit. It is instead enough

that 'the facts *essential to the second* were [already] present in the first.'" *Waldman v. Vill. of

Kiryas Joel*, 207 F.3d 105, 110–11 (2d Cir. 2000) (emphasis in original) (citations omitted).

---

[18]    When a Court's basis for hearing a claim is established by supplemental jurisdiction, a federal court has discretion to dismiss the supplemental claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). *Andochick v. Byrd*, No. 1:11-cv-739, 2012 WL 1656311, at *13 (E.D. Va. May 9, 2012); *see also Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990) (Where federal claims were dismissed with prejudice for lack of prosecution and disregard of a court order pursuant to Rule 41(b), the court noted on appeal that "[t]he district court's blanket dismissal with prejudice *seemingly encompasses* all claims in the amended complaint" and held that the pendent claims over which the district court exercised supplemental jurisdiction should have been dismissed without prejudice for want of jurisdiction. "The federal claims being dismissed, we think the preferable course is to dismiss the pendent claims without prejudice for want of jurisdiction." (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (emphasis added))). This Court is not an appeals court and cannot overturn the Dismissal Order or alter its seemingly blanket dismissal. Because the Dismissal Order does not specify that the claims over which the District Court exercised supplemental jurisdiction were dismissed without prejudice, and the District Court had discretion to dismiss those claims either with or without prejudice, the District Court's language in the Dismissal Order indicates that the claims were dismissed with prejudice.

"[A] plaintiff cannot avoid the effects of *res judicata* by 'splitting' his claim into various suits, based on different legal theories (with different evidence 'necessary' to each suit)." *Id.* at 110 (citations omitted).  The essential question is whether the overlapping facts sufficiently relate to each other to constitute a single transaction or series of transactions.  *Id.* at 111.

Wilson's Claim No. 4754 is based upon the same nucleus of facts that were or could have been alleged in the Federal Action, and the claim relies upon the same Forensic Report attached to the Second Wilson Complaint.  Consequently, the fourth and final prong of the federal *res judicata* analysis is satisfied, and Claim No. 4754 is barred by *res judicata*.

Though Wilson contends that she did not receive her mail—either because it was not delivered or because she was out of town— that argument does not alter the Court's decision. This Court does not review the decisions of the Western District of Virginia.  The Court has reviewed the docket for the Federal Action; there is no indication that the *Roseboro* Notice or the Dismissal Order were undelivered or returned by mail.  Instead, the entries on the docket indicate that the notices were "mailed."  This Court does not determine the sufficiency of any notice—or alleged lack thereof—sent to Wilson by the District Court.  In any event, Wilson did not appeal the District Court's dismissal and the time to do so has expired.  Whether Wilson will file a motion in the Western District of Virginia to have the Dismissal Order vacated for lack of notice is another matter and, should the District Court grant such a motion, Wilson could move to have her Claims reinstated under Bankruptcy Code section 502(j).

### C.    Claims Amendment

Federal Rule of Bankruptcy Procedure 3003(c)(3) directs bankruptcy courts "to establish a bar date beyond which proofs of claim are disallowed in a chapter 11 case."  *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 94 (Bankr. S.D.N.Y. 2007).  The bar date "is critically

important to the administration of a successful chapter 11 case for it is intended to be a

mechanism providing the debtor and its creditors with finality." *Id.* (internal quotations omitted).

Where the bar date has passed and a creditor seeks to file an amended proof of claim, "the

decision to allow the amendment of the claim is committed to the discretion of the bankruptcy

judge." *In re Asia Global Crossing, Ltd.*, 324 B.R. 503, 507 (Bankr. S.D.N.Y. 2005) (internal

citations omitted).

> In the Second Circuit, while amendment to a claim is
>
> freely allowed where the purpose is to cure a defect in the claim as originally
> filed, to describe the claim with greater particularity, or to plead a new theory of
> recovery on the facts set forth in the original claim.  However, the court must
> subject post bar date amendments to careful scrutiny to assure that there was no
> attempt to file a new claim under the guise of amendment.

*Integrated Res., Inc. v. Ameritrust Co., N.A. (In re Integrated Res., Inc.)*, 157 B.R. 66, 70

(S.D.N.Y. 1993) (citations omitted).

Courts apply a two-step inquiry when considering whether to allow post bar date

amendments to proofs of claim.  *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.*

*(In re Enron Corp.)*, 419 F.3d 115, 133 (2d Cir. 2005); *In re Barquet Grp. Inc.*, 477 B.R. 454,

464 (Bankr. S.D.N.Y. 2012), *aff'd*, 477 B.R. 454 (S.D.N.Y. 2012).  First, the court must

determine "whether there was a timely assertion of a similar claim or demand evidencing an

intention to hold the estate liable." *Enron*, 419 F.3d at 133 (quotation omitted).  A claim satisfies

this first prong if it: "1) corrects a defect of form in the original claim; 2) describes the original

claim with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the

original claim." *Id.* (quoting *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y.

1990)).  In other words, the amendment must relate back to the original proof of claim.

23

If this "relation back" inquiry is satisfied, courts then examine whether it would be

equitable to allow the amendment.  *Id.*; *Integrated Res.*, 157 B.R. at 70.  Courts consider the

following five equitable factors in determining whether to allow an amendment:

> (1) undue prejudice to opposing party; (2) bad faith or dilatory behavior on the
> part of the claimant; (3) whether other creditors would receive a windfall were the
> amendment not allowed; (4) whether other claimants might be harmed or
> prejudiced; and (5) the justification for the inability to file the amended claim at
> the time the original claim was filed.

*Integrated Res.*, 157 B.R. at 70 (citation omitted); *Enron*, 419 F.3d at 133.  "The critical

consideration is whether the opposing party will be unduly prejudiced by the amendment."

*Integrated Res.*, 157 B.R. at 70 (citation omitted).

Wilson argues that Claim No. 7181 amends and supersedes Claim No. 4754.  But to the

extent Claim No. 7181 is *not* based on the same underlying nucleus of facts as the original claim,

it must be disallowed as having been late-filed because it does not "relate back" to Claim No.

4754.  To the extent it *does* relate back to the original claim (which is unclear because Claim No.

7181 merely contains a one-sentence statement that the claim relates to "disgorgement of profits

from sale of note, RICO, fraud, etc."), it is barred by *res judicata* as discussed above.

### D.    Pleading Standards

In addition to being barred by *res judicata*, Wilson's Claims are deficiently pled.

Specifically, Wilson fails to allege any facts or submit any documents that would support a

RICO claim.  To establish a claim under RICO, a plaintiff must allege (1) a person who engages

in (2) a pattern of racketeering activity[19] (3) connected to the acquisition, establishment, conduct,

or control of an enterprise.  18 U.S.C. § 1962.  The Second Circuit has explained:

> To state a claim for damages under RICO a plaintiff has two pleading burdens.
> First, he must allege that the defendant has violated the substantive RICO statute,

---

[19]    Racketeering activity is defined under 18 U.S.C. § 1961 to include dozens of predicate offenses, including
extortion, bribery, counterfeiting, and mail fraud.

commonly known as "criminal RICO."  In so doing, he must allege the existence
of seven constituent elements:  (1) that the defendant (2) through the commission
of two or more acts (3) constituting a "pattern" (4) of "racketeering activity"
(5) directly or indirectly invests in, or maintains an interest in, or participates in
(6) an "enterprise" (7) the activities of which affect interstate or foreign
commerce.  Plaintiff must allege adequately defendant's violation of section 1962
before turning to the second burden—*i.e.*, invoking RICO's civil remedies of
treble damages, attorneys['] fees and costs.  To satisfy this latter burden, plaintiff
must allege that he was "injured in his business or property *by reason of* a
violation of section 1962."

*Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (emphasis in original) (citations

omitted); *see also Zavalidroga v. Cote*, 395 Fed. App'x 737, 740–41 (2d Cir. 2010) (applying

*Moss*).

Even if a plaintiff can demonstrate a substantive RICO violation, the plaintiff must also

show "injury to the plaintiff's business or property" and "that such injury was by reason of the

substantive RICO violation."  *Catholic Health Care W. v. US Foodserv. (In re US FoodServ.*

*Pricing Litig.)*, 729 F.3d 108, 117 (2d Cir. 2013).  The "enterprise" complained of in a civil

RICO action must be "distinct from those persons or entities who stand accused of conducting

that racketeering activity."  *Allstate Ins. Co. v. Rozenberg*, 590 F. Supp. 2d 384, 390 (E.D.N.Y.

2008).  Additionally, courts have found that failure to file a RICO case statement may warrant

dismissal of RICO claims.  *See Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243, 259

(W.D.N.Y. 2010); *Pierce v. Ritter, Chusid, Bivonia & Cohen*, 133 F. Supp. 2d 1344, 1346 (S.D.

Fla. 2001); *Walker v. Stanton*, No. EDCV 08–24, 2008 WL 4401388, at *5–6 (C.D. Cal. Sept. 2,

2008); *see also Lui Ciro, Inc. v. Ciro, Inc.*, 895 F. Supp. 1365, 1377–78 (D. Haw. 1995)

(analyzing dismissal of RICO claim for failure to file RICO case statement under Rule 41(b)).

Here, Claim No. 7181 (the only claim purporting to raise a RICO claim) provides no

allegations necessary to support a civil RICO claim and does not present any evidence of a

pattern of racketeering activity, definition of any enterprise, or a RICO case statement.  Indeed,

Claim No. 7181 fails to state any facts beyond a reference to the original documentation, none of which supports a RICO claim. Claim No. 7181, even if not barred by *res judicata* or as a late-filed claim, fails to support a RICO claim.

Additionally, Rule 9(b) imposes heightened pleading standards for fraud-based claims. Pursuant to Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake" if making allegations of fraud. FED. R. CIV. P. 9(b). "In order to meet the 'particularity' requirement of Rule 9(b), a plaintiff [must] allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Ind. State Dist. Council v. Omnicare, Inc.*, 719 F.3d 498, 503 (6th Cir. 2013) (internal quotation marks omitted). "The purpose of Rule 9(b) is to provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999). Wilson fails to state her fraud allegations against the Debtors with the particularity required to plead a fraud claim under Rule 9(b). Simply alleging fraud without detail, as Wilson has done here, does not suffice.

## III.    CONCLUSION

For the foregoing reasons, the Court **SUSTAINS** the Objection and **EXPUNGES** both of Wilson's Claims. Claim No. 4754 is barred by *res judicata*; Claim No. 7181 fails because to the extent that it relates back to the original claim, it is barred by *res judicata* and, to the extent it does not relate back to the original claim, Claim No. 7181 was late-filed. Finally, to the extent Wilson alleges RICO violations or fraudulent actions by the Debtors, she has failed to adequately plead those causes of action.

26

Wilson's two lawyers in this Court have argued that they (or still other counsel) plan to challenge the Dismissal Order in the Virginia District Court. If the challenge to the Dismissal Order at this late date is successful, Wilson may move to reinstate those claims dismissed under this Order as barred by *res judicata*. *See* 11 U.S.C. § 502(j) ("A claim that has been allowed or disallowed may be reconsidered for cause . . . ."). To the extent necessary, the Court **ORDERS** that the automatic stay arising under Bankruptcy Code section 362 is modified to permit Wilson to pursue a challenge to the Dismissal Order in the District Court.

**IT IS SO ORDERED.**

Dated:  April 2, 2014
         New York, New York

_Martin Glenn_
MARTIN GLENN
United States Bankruptcy Judge