**Hearing Date: May 15, 2014 at 10:00 a .m. (Prevailing Eastern Time)**
**Objection Deadline: April 30, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

| | |
|---|---|
| MORRISON & FOERSTER LLP | BRADLEY ARANT BOULT |
| 1290 Avenue of the Americas | CUMMINGS, LLP |
| New York, New York 10104 | One Federal Place |
| Telephone:    (212) 468-8000 | 1819 Fifth Avenue North |
| Facsimile:    (212) 468-7900 | Birmingham, AL 35203 |
| Gary S. Lee | Telephone:    205.521.8521 |
| Norman S. Rosenbaum | Facsimile:    205.488.6521 |
| Adam A. Lewis | John W. Smith T |

*Counsel for the ResCap Borrower Claims Trust*    *Special Litigation Counsel to the ResCap*
*Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------)
In re:                                                        )    Case No. 12-12020 (MG)
                                                              )
RESIDENTIAL CAPITAL, LLC, et al.,                             )    Chapter 11
                                                              )
                                   Debtors.                   )    Jointly Administered
                                                              )
-------------------------------------------------------------)

**RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO PROOF**
**OF CLAIM NO. 386 FILED BY BARRY AND CHERYL MACK**

## TABLE OF CONTENTS

**Page**

JURISDICTION, VENUE AND STATUTORY PREDICATE ....................................................1

PRELIMINARY STATEMENT ..............................................................................................2

BACKGROUND ....................................................................................................................2

    A.    The Chapter 11 Cases ..............................................................................2

    B.    The Proof of Claim ..................................................................................5

    C.    Prepetition Events and Litigation ............................................................6

RELIEF REQUESTED ..........................................................................................................10

OBJECTION ........................................................................................................................10

    A.    Generally Applicable Law ......................................................................10

    B.    The Claim is Barred by Res Judicata .....................................................12

    C.    The Claim Is Barred by Estoppel by Election of Remedies ...................17

    D.    Personal Injury .......................................................................................18

    E.    The Claim Fails to State a Claim for Relief Under RESPA ....................19

    F.    Any Claims Under RESPA §§ 2607 and 2608 Also Were Barred by the
        Statute of Limitations .............................................................................19

NOTICE ..............................................................................................................................20

CONCLUSION ....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aerojet-Gen. Corp. v. Askew*,
  511 F.2d 710 (5th Cir. 1975) ............................................................. 16

*AMEC Civil, LLC v. Fla. Dept. of Transp.*,
  41 So. 3d 235 .................................................................................... 13

*Amey, Inc. v. Gulf Abstract & Title, Inc.*,
  758 F.2d 1486 (11th Cir. 1985) ........................................................ 14

*Atl. Cylinder Corp. v. Henter*,
  438 So. 2d 922 (Fla. Dist. Ct. App. 1983) ....................................... 17

*Bedford v. Florida*,
  970 So. 2d 935 (Fla. Dist. Ct. App. 2008) ....................................... 13

*Citibank, N.A. v. Data Lease Fin. Corp.*,
  904 F.2d 1498 (11th Cir. 1990) ........................................................ 15

*Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.*,
  945 So. 2d 1216 (Fla. 2006) ........................................................ 13, 17

*DiSorbo v. Hoy*,
  343 F.3d 172 (2d Cir. 1996) ............................................................. 12

*Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.)*,
  398 B.R. 736 (S.D.N.Y. 2008) ......................................................... 12

*Gordon v. Gordon*,
  59 So. 2d 40 (Fla. 1952) ................................................................... 13

*Hay v. Salisbury*,
  109 So. 617 (Fla. 1926) .................................................................... 14

*Hinton v. Iowa Nat'l Mut. Ins. Co.*,
  317 So. 2d 832 (Fla. Dist. Ct. App. 1975) ....................................... 17

*In re DJK Residential LLC*,
  416 B.R. 100 (Bankr. S.D.N.Y. 2009) ............................................. 12

*In re Hess*,
  404 B.R. 747 (Bankr. S.D.N.Y. 2009) ............................................. 12

*In re Oneida Ltd.*,
  400 B.R. 384 (Bankr. S.D.N.Y. 2009), *aff'd, Peter J. Solomon Co. v. Oneida Ltd.*,
  No. 09-Civ-2229, 2010 U.S. Dist. LEXIS 6500 (Jan. 22, 2010) ............ 11

## TABLE OF AUTHORITIES

**Page(s)**

*In re MF Global Holdings, Ltd.*,
  Nos. 11-15059 (MG), 11-02790 (MG) (SIPA), 2012 WL 5499847 (Bankr. S.D.N.Y.
  Nov. 13, 2012) ................................................................................................................ 11

*In re Rockefeller Ctr. Props.*,
  272 B.R. 529 (Bankr. S.D.N.Y. 2000), *aff'd sub nom., NBC v. Rockefeller Ctr. Props.
  (In re Rockefeller Ctr. Props.)*, 226 B.R. 52 (S.D.N.Y. 2001), *aff'd*, 46 Fed. Appx. 40
  (2d Cir. 2002) ................................................................................................................ 12

*In re Smith*,
  No. 12-10142, 2013 WL 665991 (Bankr. D. Vt. Feb. 22, 2013) ................................... 11

*In re W.R. Grace & Co.*,
  346 B.R. 672 (Bankr. D. Del. 2006) .............................................................................. 12

*Jenkins v. Lennar Corp.*,
  972 So. 2d 1064 (Fla. Dist. Ct. App. 2008) ................................................................... 14

*Kuxhausen Constr. Co. v. Ardaman & Assocs., Inc.*,
  No. 2011-CA-10401, 2012 WL 7017988 (Fla. Cir. Ct. Aug. 9, 2012) .......................... 13

*Larimore v. Florida*,
  76 So. 3d 1121 ............................................................................................................... 14

*M.C.G. v. Hillsborough Cnty. Sch. Bd.*,
  927 So. 2d 224 (Fla. Dist. Ct. App. 2006) .............................................................. 13, 14

*Massey v. David*,
  831 So. 2d 226 (Fla. Dist. Ct. App. 2002) ................................................................... 16

*Migra v. Warrant City Sch. Dist. Bd. Of Educ.*,
  465 U.S. 75 (1984) ......................................................................................................... 12

*Norris Grain Co. v. Transworld Foods, Inc. (In re Transworld Foods, Inc.)*,
  41 B.R. 363 (Bankr. M.D. Fla. 1984) ............................................................................ 13

*Omernick v. LaRocque*,
  406 F. Supp. 1156 (W.D. Wis. 1976), *aff'd sub nom., Omernick v. Wisconson*, 539
  F.2d 715 (7th Cir. 1976) ................................................................................................ 12

*Phillips v. Hall*,
  297 So. 2d 136 (Fla. Dist. Ct. App. 1974) ................................................................... 17

*Radle v. Allstate Ins. Co.*,
  758 F. Supp. 1464 (M.D. Fla. 1991) ....................................................................... 16, 17

iii

## TABLE OF AUTHORITIES

**Page(s)**

*Vanston Bondholders Protective Comm. v. Green,*
  329 U.S. 156 (1946) ................................................................................................ 12

**STATUTES**

11 U.S.C. § 502(a) ..................................................................................................... 10

11 U.S.C. § 502(b)(1) ............................................................................................... 11

12 U.S.C. § 2614 ....................................................................................................... 19

28 U.S.C. § 1738 ....................................................................................................... 13

**OTHER AUTHORITIES**

4 COLLIER ON BANKRUPTCY ¶ 502.02[2] (16th ed. rev. 2012) .................................. 11

FED. R. BANKR. P. 3001(f) .......................................................................................... 10

iv

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

Pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code")

and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the

ResCap Borrower Claims Trust (the "Trust") as successor in interest to Residential Capital, LLC

("ResCap") and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the

"Debtors") with respect to Borrower Claims (defined herein),[1] hereby files this objection

(the "Objection") seeking to disallow and expunge proof of claim No. 386 (the "Claim") filed as

a general unsecured claim in the amount of $32,850,000 against GMAC Mortgage LLC

("GMACM") by Barry F. Mack and Cheryl M. Mack (the "Claimants").

The Trust seeks entry of an order substantially in the form annexed hereto as Exhibit 1

(the "Proposed Order") granting the requested relief.  In support of the Objection, the Trust

submits the Declaration of Lauren Graham Delehey, Chief Litigation Counsel to the ResCap

Liquidating Trust, in Support of the ResCap Borrower Claims Trust's Objection to Proof of

Claim No. 386 Filed by Barry and Cheryl Mack (annexed hereto as Exhibit 2, the "Delehey

Declaration") and respectfully represent as follows:

## JURISDICTION, VENUE AND STATUTORY PREDICATE

1.      This Court has jurisdiction over this Objection under 28 U.S.C. § 1334.

This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court

under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicate for the relief requested herein is section 502(b) of

the Bankruptcy Code and Bankruptcy Rule 3007(a).

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 6], dated May 14, 2012.

1

<u>**PRELIMINARY STATEMENT**</u>

3.      The Claim arises out of GMACM's having mistakenly filed a foreclosure action as servicer for Deutsche Bank Trust Company Americas as Trustee of the RALI 2007-QS3 Trust (the "<u>Bank</u>") in the Bank's name against the Claimants when the Claimants, though struggling to make their payments and already having listed their property for sale, were not actually in default.  This was a misstep that GMACM immediately attempted to correct upon realizing its mistake, but its counsel failed to follow GMACM's instructions to dismiss the action promptly and later failed to respond to counterclaims the Claimants made that resulted in a judgment against the Bank, a judgment that underlies some of GMACM's objections here.  The Claim asserts claims for "Personal Injury, Wrongful Death, Violation of RESPA, and Malicious Prosecution" and briefly describes the Claimants' version of the facts  (Delehey Declaration, ¶ 6, Ex. A (the Claim), Addendum to Claim (the "<u>Addendum</u>".)

4.      Because of applicable Florida and Federal law, including the preclusive effects of the judgment, each of the four claims asserted in the Claim must be disallowed and expunged.[2]

<u>**BACKGROUND**</u>

A.      **The Chapter 11 Cases**

*Overview of the Chapter 11 Cases*

5.      On May 14, 2012, each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>").  These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

---

[2] The Trust reserves the rights to amend this Objection, supplement it or file new objections.

sf-3332518

6.      On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine member official committee of unsecured creditors (the "Creditors Committee") [Docket No. 102].

7.      On December 11, 2013, the Court entered an *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred, and, among other things, the Trust and the ResCap Liquidating Trust were established [Docket No. 6137].

8.      The Plan provides for the creation and implementation of the Trust, which is established for the benefit of Borrowers who filed Borrower Claims (as such terms are defined in the Plan) to the extent such claims are ultimately allowed either through settlement or pursuant to an order of the Court.  *See* Plan, Art. IV.F.  The Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims."  *See id*.

*Claims Specific Background*

9.      On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain, record and otherwise

sf-3332518

administer the proofs of claim filed in these Chapter 11 cases and (b) maintain official claims registers for each of the Debtors.

10.    On August 29, 2012, this Court entered an order approving the Debtors' motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No. 1309] (the "Bar Date Order").[3]

11.    On March 21, 2013, the Court entered an order approving procedures for the filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket No. 3294] (the "Procedures Order"), which approved certain procedures to be applied in connection with objections to claims filed by current or former borrowers (collectively, the "Borrower Claims," and the procedures relating thereto, the "Borrower Claim Procedures").  Based on substantial input from the Creditors' Committee and Special Counsel to the Creditors' Committee for Borrower Issues ("Special Counsel"), the Procedures Order includes specific protections for borrowers and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims.  For example, the Borrower Claim Procedures require that prior to objecting to certain categories of Borrower Claims, the Debtors must furnish the individual borrower with a letter, with notice to Special Counsel, requesting additional documentation in support of the purported claim (a "Request Letter").  *See* Procedures Order at 4.

12.    In this instance, prior to the Plan Effective Date, the Debtors did not send the Claimants a Request Letter after consulting with Special Counsel because the Debtors felt they had sufficient information to address the Claim.  (Delehey Declaration ¶ 5.)

---

[3] The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribing the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "Governmental Bar Date").  (Bar Date Order ¶¶ 2, 3).  On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093].  The Governmental Bar Date was **not** extended.

4

B.        **The Proof of Claim**

13.        On August 8, 2012, Claimants filed the Claim against GMACM, asserting

a claim in the amount of $32,850,000.  The Claim is one of the largest claims (by amount) filed

against any of the Debtors' estates by individuals.  (Delehey Declaration ¶ 6.)  The Claim

attached the page-and-one-half, double-spaced Addendum providing a brief description of the

alleged basis for the Claim.  There, the Claimants described how GMACM, as servicer for the

Bank, filed a foreclosure action against them even though Claimants were not in default,

although they were struggling to make their payments and trying to sell the property.  Claimants

allege that the wrongful foreclosure forced them to sell the property at a price below its value.

Moreover, according to the Claimants, Ms. Mack later took an overdose of drugs in despondency

over the foreclosure lawsuit.  The drug overdose caused such physical damage to Ms. Mack, the

Claimants say, that as of the filing of the Claim in August of 2012 she was "expected to die

within the next six months."  (Addendum 2.)  Evidently, the Claimants' counsel in the

foreclosure action, David F. Garber, prepared the Claim.  He signed it, and his address, telephone

number and email address are listed in the box for the address to which notices should be sent.

14.        The Addendum to the Claim asserts that the facts it summarizes give rise

to claims for "Personal Injury; Wrongful Death; Violation of RESPA; [and] Malicious

Prosecution."  (Addendum 1.)  The Claimants seek $350,000 for the lower sale price of their

home they claim they suffered as a result of the pending foreclosure, $2.5 million for Ms.

Mack's pain, suffering, medical expenses and wrongful death, and $30 million in punitive

damages.

5

C.        **Prepetition Events and Litigation[4]**

15.        The Bank was the trustee for the RALI 2007-QS3 Trust that held various mortgages.  One of the mortgages included in the trust was a 2006 mortgage on the Claimants' home in Florida (the "Property").  GMACM serviced the mortgage on behalf of the Bank, and at all times relevant hereto GMACM was acting pursuant to its contractual obligations as servicer for the Bank.  (Delehey Declaration ¶ 7, Exs. B-1 through B-3 (the "Servicing Agreements").).  Specifically, Residential Accredit Loans, Inc. ("RALI"), Residential Funding Company ("RFC"), as Master Servicer, and the trustee named in the applicable Series Supplement  are parties to the Standard Terms of Pooling and Servicing Agreement, dated as of December 1, 2006 with respect to Residential Accredit Loans, Inc. Mortgage Asset-Backed Pass-Through Certificates (the "Standard Terms") (Ex. B-1 to the Delehey Declaration).  The Series Supplement in issue, dated as of February 1, 2007 (Ex. B-2 to the Delehey Declaration) is between RALI, RFC as Master Servicer and the Bank as Trustee for the Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QS3 (the "Series Supplement").  The Standard Terms are incorporated by reference into the Series Supplement.  Delehey Declaration at ¶ 7, Ex. B-1 at 1.  Pursuant to section 3.02 of the Standard Terms, RFC is entitled to utilize its existing subservicing agreements or enter into new subservicing agreements.  Standard Terms at 50.  RFC and GMACM were parties to (i) the Seller/Servicer Contract dated November 24, 1992 as amended by the First Amendment to Seller/Servicer Contract dated August 28, 2009 and (ii) the Client Contract dated March 6, 2006,

---

[4] The Debtors and Trust have a very different view of many of the key facts alleged by the Claimants.  For example, the Trust is confident that it can demonstrate that Ms. Mack's mental distress began long before GMACM filed the foreclosure action at issue here.  However, as the Trust is attempting on this occasion to avoid for all concerned the financial and other costs of litigating the Claim on the merits by arguing for disallowance on other grounds, this is not the time for the Trust to address the merits.  The Trust of course reserves the right to litigate the Claim on the merits with the aid of discovery.

pursuant to which GMACM agreed to service mortgage loans for RFC (Ex. B-3 to Delehey

Declaration).

16.    According to the Claimants, by at least late 2007, the Claimants were

struggling to make their mortgage payments; they were dipping into their savings to do so and

applied for relief under the federal HAMP program.  (Addendum 1.)  To deal with their financial

distress, the Claimants put their home up for sale, first listing it in March of 2008, which is over

seventeen months before the foreclosure action was commenced.  (*Id*.; Delehey Declaration, Ex.

D (the "Final Judgment"), ¶ 6).

17.    On August 20, 2009, GMACM retained the Law Offices of David J. Stern,

P.A. ("Stern") to initiate a foreclosure action against the Claimants in the name of the Bank (the

"Florida Action").  GMACM was not a party to the Florida Action.  The case was entitled

*Deutsche Bank Trust Co. Americas as Trustee for RALI 2007QS3 v. Mack*, Circuit Court for the

Twentieth Judicial District in and for Collier County, Florida (the "Florida Court").  Soon

realizing that the loan was not, in fact, in default, just thirteen days after the Florida action was

filed, GMACM directed Stern to dismiss the complaint and close the file on September 2, 2009.

Stern acknowledged the instructions to dismiss the Florida Action and close the file, but

inexplicably and without GMACM's knowledge, Stern did not do so until December 2, 2009,

when Stern submitted a notice of voluntary dismissal.  (Delehey Declaration, ¶ 8.)

18.    On September 11, 2009, nine days after GMACM directed Stern to

dismiss the Florida Action, the Claimants answered the complaint and filed a two-count

counterclaim (the latter are the "Counterclaims").  The first count alleged violations of the Real

Estate Settlement Procedures Act (12 U.S.C. §§ 2601 *et seq.*) ("RESPA"), and the second count

alleged slander of title arising from the foreclosure proceeding.  (Delehey Declaration, ¶ 9, Ex.

sf-3332518

C (Answer to Complaint to Foreclose Mortgage, Affirmative Defenses and Counterclaim).)  The

Claimants made no other claims either then or at any time later in the Florida Action.  It is

undisputed that the Claimants were aware of GMACM's involvement in their loan and in the

loan foreclosure process (Addendum 1 ("The Macks wrote [to] GMAC Mortgage, LLC and

called them to complain of the foreclosure . . . .")), yet they never sought to add GMACM as a

defendant to the Florida Action.  Even though Stern received the Counterclaims, the Stern firm

never appeared in response to the them, never notified the Bank (or GMACM) of them, and

never took any steps to defend against them.  (Delehey Declaration, ¶ 9.)

19.     The Claim alleges that sometime in October of 2009, Ms. Mack took an

overdose of sleeping pills which she now attributes to emotional distress arising from the

foreclosure proceedings.  According to the Claim, the 2009 overdose resulted in kidney and liver

failure that have put her life in danger.  (Addendum 2.)

20.     On October 21, 2009, following Claimants' request, the Florida Court

entered a default against the Bank.  (Delehey Declaration ¶ 10; and Ex. D, Final Judgment ¶ 2.)

Stern provided no notice of the default to the Bank or GMACM.  (Delehey Declaration ¶ 11.)

About 1 ½ years later, Claimants moved for the entry of judicial default.  (See Final Judgment).

Again, Stern did not notify GMACM or the Bank.  (Delehey Declaration ¶ 11.)

21.     On May 5, 2011, the Florida Court conducted an evidentiary hearing to

receive evidence and arguments on Claimants' Counterclaims against the Bank.  (See Final

Judgment, introductory paragraph.)  The Claimants presented a number of witnesses.  (See Ex.

D, Final Judgment, introductory paragraph ("testimony of witnesses"); and ¶ 9 (expert witness));

Delehey Declaration, ¶ 12, Ex. E (Final Order on Plaintiff's Motion to Set Aside Final Judgment

and Set New Trial ("Final Order") ¶ 3iii.).)  Once again, Stern did not appear and did not

8

otherwise provide any defense at the hearing, nor did Stern provide any notice to the Bank (or

GMACM) which was unrepresented at the proceeding.  (Ex. E, Final Order ¶ 2.b; Delehey

Declaration ¶ 11.)  On May 5, 2011, the Florida Court entered the Final Judgment in Claimants'

favor.  The Final Judgment granted the Claimants $296,920.05 for lost sale value of their home,

$150,000 for Ms. Mack's "emotional anguish and pain and suffering," and prejudgment interest

of $22,550.22 on the real estate damages, for a total of $469,470.27 plus fees and costs.  Based

on the evidence presented by the Claimants, the Florida Court addressed Ms. Mack's emotional

distress and resulting hospitalization, stating in paragraph 11 of the Final Judgment:

> Defendant, CHERYL M. MACK, experienced great mental
> distress, pain and suffering, including physical symptoms,
> including hospitalization, resulting therefrom as a result of the
> stress during the foreclosure action wrongfully filed against
> Defendants MACK.

Final Judgment ¶ 11.

22.     Following entry of the Final Judgment, the Bank received *direct* service of

process of the Final Judgment from the Florida Court.  This was its *first* notice that (a) Stern had

not timely dismissed the original foreclosure complaint; (b) the Counterclaims had been filed;

and (c) no defense had been provided to the Counterclaims or any of the other case proceedings,

precipitating the Final Judgment award.  (Delehey Declaration ¶ 12.)  Retaining new counsel, on

July 13, 2011 the Bank moved to set aside the Final Judgment and set a new trial.  (*Id.*)  The

Bank argued that the Final Judgment should be vacated based on several grounds, including that

Stern's failures constituted excusable neglect and because the Counterclaims were void.[5]  (*See*

Ex. E, Final Order.)

---

[5] The Bank also argued that the Florida Court's award of damage for loss in value of the property ($296,920.05) was
patently erroneous based on the factual findings made by the Florida Court and included in the Final Judgment
which showed a grossly different amount (*See* Ex. D, Final Judgment ¶ 10 (finding $118,500 in actual damages)).

sf-3332518

23.     On February 26, 2013, the Florida Court entered the Final Order. The Final Order partially vacated the Final Judgment.  Specifically, the Florida Court agreed that Claimants' RESPA Counterclaim was void as a matter of law and any amounts awarded thereon were due to be vacated, but the Florida Court otherwise denied the motion to set aside the Final Judgment.  The Florida Court reduced the amount of the monetary damages originally awarded in the Final Judgment by $150,000 leaving the amount awarded as $321,970.77, plus attorneys' fees to be determined. (Delehey Declaration Ex. E, Final Order ¶¶ 2-3.)

24.     The parties cross appealed the Final Order.  On October 18, 2013, the Florida District Court of Appeal for the Second District affirmed the Final Order (the "Fla. Appellate Court".  (Delehey Declaration ¶ 12.).  The Bank moved for a reheaing in banc or in the alternative, rehearing.  By order dated December 16, 2013, the Fla. Appellate Court denied the motion. (Delehey Declaration ¶ 12.)

25.     In March of 2013, the bond surety (NGM) paid to Claimants the $321,970.77 awarded by the Final Order, and on March 20, 2013, Claimants submitted an Acknowledgement of the payment.  (Delehey Declaration, ¶ 13, Ex. G.).

26.     The Claim has not been amended.

### RELIEF REQUESTED

27.     The Trust files this Objection pursuant to section 502(b) of the Bankruptcy Code to disallow and expunge the Claim from the Debtors' claims register in its entirety.

### OBJECTION

#### A.    Generally Applicable Law

28.     A filed proof of claim is "deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  A properly completed proof of claim is prima facie evidence of the validity and amount of a claim.  *See* FED. R. BANKR. P. 3001(f).  A party in interest may

10

object to a proof of claim, and once an objection is made, the court must determine whether the objection is well founded. *See* 4 COLLIER ON BANKRUPTCY ¶ 502.02[2] (16th ed. rev. 2012).

29.     Although Bankruptcy Rule 3001(f) establishes the initial evidentiary effect of a filed claim, the burden of proof "[r]ests on different parties at different times." *In re Smith*, No. 12-10142, 2013 WL 665991, at *6 (Bankr. D. Vt. Feb. 22, 2013) (citation omitted). The party objecting to the proof of claim "bears the initial burden of providing evidence to show that the proof of claim should not be allowed." *In re MF Global Holdings, Ltd.*, Nos. 11-15059 (MG), 11-02790 (MG) (SIPA), 2012 WL 5499847, at * 3 (Bankr. S.D.N.Y. Nov. 13, 2012). If the objecting party satisfies its initial burden and "the presumption of prima facie validity is overcome—e.g., the objecting party establishes that the proof of claim lacks a sound legal basis—the burden shifts to the claimant to support its proof of claim unless the claimant would not bear that burden outside of bankruptcy." *Id*. (citing *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, *Peter J. Solomon Co. v. Oneida Ltd.*, No. 09-Civ-2229, 2010 U.S. Dist. LEXIS 6500 (Jan. 22, 2010)) ("A proof of claim is prima facie evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion. The burden then shifts to the claimant if the objector produces evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.")). Once the burden is shifted back to the claimant, it must prove its claim by a preponderance of the evidence. *Id*. (citations omitted).

30.     Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. § 502(b)(1). Whether a claim is allowable "generally is determined by applicable nonbankruptcy law." *In re*

sf-3332518

*W.R. Grace & Co.*, 346 B.R. 672, 673 (Bankr. D. Del. 2006). "What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law." *In re Hess*, 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009) (quoting *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946)). In this matter, Florida law governs.

31.    In addition, Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)), as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure, should apply to objections to proofs of claim. Several courts, including those in this district, have applied the federal pleadings standards when assessing the validity of a proof of claim. *See In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure.") (citing *In re Rockefeller Ctr. Props.*, 272 B.R. 529, 542, n.17 (Bankr. S.D.N.Y. 2000), *aff'd sub nom., NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props.)*, 226 B.R. 52 (S.D.N.Y. 2001), *aff'd*, 46 Fed. Appx. 40 (2d Cir. 2002); *Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.)*, 398 B.R. 736, 748 (S.D.N.Y. 2008) ("The documents attached to the proofs of claim should be treated, for purposes of a motion to disallow claims, like documents that are attached to or relied upon in a complaint are treated on a Rule 12(b)(6) motion to dismiss. . . .") (citation omitted). Accordingly, the substantive adequacy of the Claim on its face should be judged by Rule 12(b)(6), which tests whether a pleading states a claim for relief.

### B.    The Claim is Barred by Res Judicata

32.    Federal courts look to state law for the preclusive effects of a state court judgment. *See, e.g., Migra v. Warrant City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 81 (1984); *DiSorbo v. Hoy*, 343 F.3d 172, 182-83 (2d Cir. 1996); *Omernick v. LaRocque*, 406 F. Supp.

sf-3332518

1156, 1159 (W.D. Wis. 1976), *aff'd sub nom., Omernick v. Wisconson*, 539 F.2d 715 (7th Cir.

1976); *see also* 28 U.S.C. § 1738 (federal courts must afford state court decisions full faith and

credit).

33.     In Florida, *res judicata* prohibits litigation of issues already decided or that

could have been decided by a final judgment in prior litigation.  *Bedford v. Florida*, 970 So. 2d

935, 938 (Fla. Dist. Ct. App. 2008).  "[E]very justiciable controversy should be settled in one

action. . . ."  *Gordon v. Gordon*, 59 So. 2d 40, 44 (Fla. 1952).  Thus, the doctrine applies both to

issues actually litigated *and* to "every other matter which the parties might have litigated and had

determined, within the issues as [framed] by the pleadings or as incident to or essentially

connected with the subject matter of the first litigation." *AMEC Civil, LLC v. Fla. Dept. of

Transp.*, 41 So. 3d 235, 238 (Fla. Dist. Ct. App. 2010) (citation omitted).  The underlying

judgment must be final.  *Gordon*, 59 So. 2d at 43.  In Florida, a judgment is final for preclusion

purposes even if it is on appeal.  *See, e.g., Norris Grain Co. v. Transworld Foods, Inc. (In re

Transworld Foods, Inc.)*, 41 B.R. 363, 364-65 (Bankr. M.D. Fla. 1984); *M.C.G. v. Hillsborough

Cnty. Sch. Bd.*, 927 So. 2d 224, 227 (Fla. Dist. Ct. App. 2006); *Kuxhausen Constr. Co. v.

Ardaman & Assocs., Inc.*, No. 2011-CA-10401, 2012 WL 7017988, at *8 (Fla. Cir. Ct. Aug. 9,

2012).

34.     For *res judicata* to apply, there must be:  (1) identity of the thing sued for;

(2) identity of the cause of action; (3) identity of persons and parties to the action; and (4)

identity of the quality of the persons for or against whom the claim is made. *Dadeland Depot,

Inc. v. St. Paul Fire and Marine Ins. Co.*, 945 So. 2d 1216, 1235 (Fla. 2006).  The Florida Action

and the Claim satisfy these elements.

35.    *Identity of the Thing Sued For.*    There is "identity of the thing sued for" if

both lawsuits seek the same kind of relief.  *See Jenkins v. Lennar Corp.*, 972 So. 2d 1064, 1065

(Fla. Dist. Ct. App. 2008).  Here, in both the Florida Action and the Claim, the Claimants seek

only money damages, thereby establishing this element.  *See Amey, Inc. v. Gulf Abstract & Title,*

*Inc.*, 758 F.2d 1486, 1509 (11th Cir. 1985) (applying Florida law and finding same thing sued for

when both cases sought money damages, although in substantially differing amounts).  Indeed,

as stated in their Addendum to the Claim, the Macks seek to recover purely monetary damages

for the lower sale price of their home and for Ms. Mack's pain, suffering, and medical expenses,

which are exactly what they sought (and were awarded) in the Florida Action.  (*See* ¶¶ 16, 19

*supra*; Ex. C, Counterclaims.)

36.    *Identity of the Causes of Action.*    "[I]dentity of causes of action" requires

"an identity of the facts essential to the maintenance of the action.'" *Larimore v. Florida*, 76 So.

3d 1121, 1123 (Fla. Dist. Ct. App. 2012) (quoting *M.C.G. v. Hillsborough Cnty. Sch. Bd.*, 927

So. 2d at 227.  Thus,

> When the second suit is between the same parties as the first and
> on the same cause of action, the judgment in the former is
> conclusive in the latter, not only as to every question which was
> decided, but also as to every other matter which the parties might
> have litigated and had determined within the issues as they were
> made or tendered by the pleadings or as incident to or essentially
> connected with the subject-matter of the litigation, whether the
> same, as a matter of fact, were or were not considered. As to such
> matters a new suit on the same cause of action cannot be
> maintained between the same parties. This rule applies to every
> question falling within the purview of the original action, both in
> respect to matters of claim and defense, which could have been
> presented by the exercise of due diligence.

*Hay v. Salisbury*, 109 So. 617, 621 (Fla. 1926) (citation omitted).  Accordingly, it is not the

theories or labels of the claims that counts, but whether "a case arises out of the same nucleus of

operative fact, or is based upon the same factual predicate, as a former action, [then] the two

14

cases are really the same 'claim' or 'cause of action' for purposes of res judicata." *Citibank, N.A.*

*v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990) (citation omitted).  The Florida

Action and the Claim plainly are based upon the "same nucleus of operative facts."  All of the

claims grow out of the alleged wrongful foreclosure and its alleged monetary and personal

impacts on the Claimants.  In their Claims filed in this matter, Claimants allege:

- ■ "Due to the prospect of losing their home through the pending foreclosure, Mrs.
  Mack took an overdose of sleeping pills in October 2009" resulting in "Mrs. Mack's
  injuries, hospital bills, pain and suffering [of] $2.5 million;"

- ■ "Mr. and Mrs. Mack lost the full value of their home by having to sell it under
  pressure at a reduced price while the foreclosure was pending;"

- ■ "GMAC's actions causing the foreclosure were deliberate, intentional and malicious .
  . . ;" and

- ■ GMAC used the information obtained  . . . to bring the foreclosure and pressure a sale
  of their home and damaged their credit.

These allegations, among others, make clear that their Claims relate directly – indeed,

exclusively – to the Florida Action.  (*See* Delehey Declaration Ex. C, Counterclaims ¶ 11 ("The

institution of this mortgage foreclosure action has damaged the credit of Defendants Mack.");

¶ 21 (Macks' "efforts [to sell their home] have been severely hampered due to the wrongful

recordation of the notice of lis pendens against the property…"); Delehey Declaration Ex. D,

Final Judgment ¶ 11 ("Defendant, CHERYL M. MACK, experienced great metal [sic] distress,

pain and suffering including physical symptoms, including hospitalization, resulting therefrom as

a result of the stress during the foreclosure action wrongfully filed against Defendants MACK.").

In fact, one theory *expressly* is common to both:  the purported RESPA claim.

15

37.    *Identity of The Parties to the Action.*  Identity of the parties exists when the same parties, or their privies, participated in prior litigation that resulted in a judgment by which they are mutually bound.  *Massey v. David*, 831 So. 2d 226, 232 (Fla. Dist. Ct. App. 2002).  "[A] person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interest as to be his virtual representative."  *Aerojet-Gen. Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975) (applying Florida law).  GMACM, of whose role the Claimants knew when they filed Counterclaims in the Florida Action, was, at all times, acting pursuant to its contractual obligations as servicer for the Bank.  Moreover, as the Claim reflects, GMACM faced the same potential liability from claims by the Claimants as did the Bank.  That is, GMACM's interests were essentially identical to the Bank's regarding the consequences of the "nucleus of operative facts."  Such an identity of interests creates an identity of the parties for purposes of *res judicata*.  *Massey*, 831 S.2d at 233.

38.    *Identity of the Quality of the Persons for or Against Whom the Claim Is Made.*  There is identity of the quality of the parties for or against whom the claims are made when "the [parties to the first action] had the incentive to adequately litigate the claims in the same character or capacity as would the parties to the [second] action." *Radle v. Allstate Ins. Co.*, 758 F. Supp. 1464, 1468 (M.D. Fla. 1991) (citation omitted).  Clearly, the parties are qualitatively the same in both cases, since the subject matter of both matters is identical as demonstrated above.  There is no doubt that Claimants were knowledgeable about, and therefore had every incentive to litigate, any claims relating to the "wrongful foreclosure," including of course Ms. Mack's alleged mental anguish and her alleged personal injuries.  As the Final Judgment makes clear, she did actually litigate her claim for alleged personal injuries.  And

16

because the Claimants' claims against the Bank and GMACM are against privies on the same

underlying facts, this test is also met. *See id.*

39.     Accordingly, the Claim is barred altogether by Florida's doctrine of *res
judicata*. *See Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.*, *supra*.  This means that

the Claimants not only cannot assert the causes of action they allege in the Claim, but they

cannot seek damages or any other form of relief, including punitive damages, that they sought --

or could have sought -- in the Florida Action.  To put it differently, the Florida Action was and is

their only day in court arising out of the foreclosure.  Thus, the Claim should be disallowed and

expunged.

### C.     The Claim Is Barred by Estoppel by Election of Remedies

40.     Claimants previously elected to litigate over the foreclosure in the Florida

Case.  They are prohibited from repetitive litigation through Florida's doctrine of estoppel by

election of remedies.

41.     In Florida, when one party's liability is based not on its own wrongful

conduct but that of another party, a plaintiff may not sue and get a collectible judgment against

the former and then sue the latter for the same conduct.  *See, e.g., Atl. Cylinder Corp. v. Henter*,

438 So. 2d 922 (Fla. Dist. Ct. App. 1983) (judgment for defendants on claim against corporation

based solely on conduct of officers barred subsequent action against officers themselves);

*Phillips v. Hall*, 297 So. 2d 136, 137-39 (Fla. Dist. Ct. App. 1974) (plaintiff barred from suing

employee for negligence when plaintiff had already obtained a judgment against the employer

for the employee's conduct); *Hinton v. Iowa Nat'l Mut. Ins. Co.*, 317 So. 2d 832, 837 (Fla. Dist.

Ct. App. 1975)  (action against driver for his conduct bars action against truck owner based

solely on driver's conduct) ("[T]he weight of authority is on the side of barring a plaintiff from

sf-3332518

relitigating his claim against the servant when a judgment has been entered in a prior suit brought against the master involving the same issues.").

42.     Here, the Claimants have not only obtained a judgment against the Bank for claims arising solely out of the commencement of the foreclosure action by GMACM as servicer without the Bank's involvement, but they have been paid in full on that judgment.  Now, the Claimants assert claims against the Bank's servicer for the very same conduct. Claimants do not allege that GMACM engaged in any wrongful conduct that was not the subject of the Florida Case.  To permit Claimants to proceed with their Claim would be to facilitate potential duplicative recovery.

43.     Accordingly, the Court should disallow and expunge the Claim in its entirety.

**D.     Personal Injury**

44.     The Addendum to the Claim states that one of the Claimants' theories is "Personal Injury".  To the Debtors' knowledge, there is no such tort under Florida law.  There are only specific torts that are customarily classified as personal injury claims (e.g., negligence, products liability). Absent some authority to the contrary, the Claim should be dismissed and expunged insofar as it seeks recovery for "Personal Injury" because it fails to state a claim for relief per Rule 12(b)(6).[6]

---

[6] Regardless, Claimants have already litigated claims for "personal injury" in the Florida action, having received a Final Judgment awarding them damages for "metal [sic] distress, pain and suffering including physical symptoms, including hospitalization, resulting therefrom…."  (Ex. D, Final Judgment ¶ 11).  As noted above, any such claim(s) are therefore barred by *res judicata*.

sf-3332518

### E.    The Claim Fails to State a Claim for Relief Under RESPA

45.    In addition to being barred by *res judicata* and estoppel by election, the Claim's purported RESPA claim is invalid on its face.  Accordingly, the RESPA claim should also be dismissed for failure to state a claim under Rule 12(b)(6).

46.    Three sections of RESPA provide a private right of action, but Claimants do not invoke any of them, nor do Claimants include any allegations in their "Addendum to Proof of Claim" that would state a colorable claim under RESPA.  12 U.S.C.§ 2605 covers notice of the assignment of servicing and a servicer's duty to respond to borrower inquiries; 12 U.S.C. § 2607 covers kickbacks and the like; and 12 U.S.C. § 2608 covers title insurance issues.  The Claim fails to assert facts that relate to any of these private rights of action.  There is no allegation that GMACM took kickbacks or did anything else prohibited by § 2607.  Nor is there any allegation that the servicing of the loan was ever transferred (which, in fact, it was not) or that GMACM failed to respond to a qualifying inquiry under § 2605 (that the Claimants may not have been satisfied with the response is a different matter).  Finally, there are no allegations concerning title insurance per § 2608.  Consequently, to the extent it seeks to assert a claim under RESPA, the Claim should also be disallowed for failure to state a claim upon which relief may be granted.

### F.    Any Claims Under RESPA §§ 2607 and 2608 Also Were Barred by the Statute of Limitations.

47.    The statute of limitations for RESPA claims under §§ 2607 and 2608 is one year.  12 U.S.C. § 2614.  By the time the Claimants filed the Claim in August of 2012, almost three years had passed since the events of which the Claims complain occurred.  Indeed, it had been over two years since the underlying events when the Debtors filed their voluntary

19

petitions.  Thus, even if the RESPA claim is not barred by res judicata and otherwise passes

12(b)(6) muster, any claims under §§ 2607 and 2608 are untimely on their face.

## NOTICE

48.    The Trust has provided notice of this Motion in accordance with the Case

Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

## CONCLUSION

WHEREFORE, the Trust respectfully requests entry of the Proposed Order

granting the relief requested herein and such other and further relief as the Court may deem

proper.

Dated: April 9, 2014

/s/ Norman S. Rosenbaum
Gary S. Lee
Norman S. Rosenbaum
Adam A. Lewis
Naomi Moss
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*


-and-

BRADLEY ARANT BOULT
CUMMINGS, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone:    205.521.8521
Facsimile:    205.488.6521
John W. Smith T

*Special Litigation Counsel to the ResCap
Borrower Claims Trust*