## **Exhibit B-2**

**Series Supplement**

# RESIDENTIAL ACCREDIT LOANS, INC.,

Company,

# RESIDENTIAL FUNDING COMPANY, LLC,

Master Servicer,

and

# DEUTSCHE BANK TRUST COMPANY AMERICAS,

Trustee

## SERIES SUPPLEMENT,

### Dated as of February 1, 2007,

## TO

## STANDARD TERMS OF
## POOLING AND SERVICING AGREEMENT
dated as of December 1, 2006

Mortgage Asset-Backed Pass-Through Certificates

Series 2007-QS3

Article I    DEFINITIONS.................................................................................4

    Section 1.01.  Definitions. .............................................................................4

    Section 1.02.  Use of Words and Phrases.....................................................14

Article II    CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF
    CERTIFICATES.........................................................................15

    Section 2.01.  Conveyance of Mortgage Loans............................................15

    Section 2.02.  Acceptance by Trustee. .........................................................15

    Section 2.03.  Representations, Warranties and Covenants of the Master Servicer and
    the Company...............................................................................18

    Section 2.04.  Representations and Warranties of Sellers. (See Section 2.04 of the
    Standard Terms) ........................................................................18

    Section 2.05.  Execution and Authentication of Certificates/Issuance of Certificates
    Evidencing Interests in the REMIC............................................18

    Section 2.06.  [Reserved] ..............................................................................18

    Section 2.07.  [Reserved] ..............................................................................18

    Section 2.08.  Purposes and Powers of the Trust. (See Section 2.08 of the Standard
    Terms). ......................................................................................18

Article III    ADMINISTRATION AND SERVICING OF MORTGAGE LOANS.................23

    Section 3.01.  Master Servicer to Act as Servicer ........................................19

    Section 3.02.  Subservicing Agreements Between Master Servicer and Subservicers;
    Enforcement of Subservicers' and Sellers' Obligations...........19

    Section 3.03.  Successor Subservicers...........................................................19

    Section 3.04.  Liability of the Master Servicer.............................................19

    Section 3.05.  No Contractual Relationship Betwee Subservicer and Trustee or
    Certificateholders. .....................................................................19

    Section 3.06.  Assumption or Termination of Subservicing Agreements by Trustee ... 19

    Section 3.07.  Collection of Certain Mortgage Loan Paymenst; Deposits to Custodial
    Account .....................................................................................19

    Section 3.08.  Subservicing Accounts; Servicing Accounts. ........................21

    Section 3.09.  Access to Certain Documentation and Information Regarding the
    Mortgage Loans.........................................................................21

    Section 3.10.  Permitted Withdrawals from the Custodial Account. ............21

    Section 3.11.  Maintenance of the Primary Insurance Policies;

    Collections Thereunder ............................................................21

    Section 3.12.  Maintenance of Fire Insurance and Omissions and Fidelity Coverage..21

i

Section 3.13.  Enforcement of Due-on-Sale Clauses; Assumption and Modification Agreements; Certain Assignments. .......................................................21

Section 3.14.  Realization Upon Defaulted Mortgage Loans ........................................21

Section 3.15.  Trustee to Cooperate; Release of Mortgage Files ..................................21

Section 3.16.  Servicing and Other Compensation; Compensating Interest. .................21

Section 3.17.  Reports to the Trustee and the Company ...............................................22

Section 3.18.  Annual Statement as to Compliance. ....................................................22

Section 3.19.  Annual Independent Public Accountants' Servicing Report .................22

Section 3.20.  Rights of the Company in Respect of the Master Servicer ....................22

Section 3.21.  Administration of Buydown Funds. ......................................................22

Section 3.22.  Advance Facility..................................................................................22

Article IV       PAYMENTS TO CERTIFICATEHOLDERS........................................23

Section 4.01.  Certificate Account. (See Section 4.01 of the Standard Terms) ............23

Section 4.02.  Distributions ........................................................................................23

Section 4.03.  Statements to Certificateholders; Statements to the Rating Agencies; Exchange Act Reporting. (See Section 4.03 of the Standard Terms) ....30

Section 4.04.  Distribution of Reports to the Trustee and the Company; Advances by the Master Servicer. (See Section 4.04 of the Standard Terms).............30

Section 4.05.  Allocation of Realized Losses ...............................................................30

Section 4.06.  Reports of Foreclosures and Abandonment of Mortgaged Property. (See Section 4.06 of the Standard Terms)...............................................31

Section 4.07.  Optional Purchase of Defaulted Mortgage Loans. (See Section 4.07 of the Standard Terms) .........................................................................31

Section 4.08.  Surety Bond. (See Section 4.08 of the Standard Terms)........................31

Section 4.09.  Class P Reserve Account.......................................................................31

Article V        THE CERTIFICATES ..........................................................................35

Article VI       THE COMPANY AND THE MASTER SERVICER.............................36

Article VII      DEFAULT .............................................................................................37

Article VIII     CONCERNING THE TRUSTEE............................................................38

Article IX       TERMINATION.....................................................................................39

Article X        REMIC PROVISIONS ..........................................................................40

Section 10.01. REMIC Administration.  (See Section 10.01 of the Standard Terms) ...40

Section 10.02. Master Servicer; REMIC Administrator and Trustee Indemnification. (See Section 10.02 of the Standard Terms). ........................................40

OHS EAST:160174663.4

Section 10.03. Designation of REMIC. .......................................................................40

Section 10.04. Distributions on the Uncertificated REMIC Regular Interests Z. ..........40

Section 10.05. Compliance with Withholding Requirements. .......................................40

Article XI    MISCELLANEOUS PROVISIONS ......................................................42

Section 11.01. Amendment. (See Section 11.01 of the Standard Terms) .....................42

Section 11.02. Recordation of Agreement; Counterparts. (See Section 11.02 of the
                Standard Terms). ...................................................................................42

Section 11.03. Limitation on Rights of Certificateholders. (See Section 11.03 of the
                Standard Terms). ...................................................................................42

Section 11.04. Governing Law. (See Section 11.04 of the Standard Terms). ................42

Section 11.05. Notices. ................................................................................................42

Section 11.06. Required Notices to Rating Agency and Subservicers.
                (See Section 11.06 of the Standard Terms) ...........................................43

Section 11.07. Severability of Provisions. (See Section 11.07 of the Standard
                Terms) ..................................................................................................43

Section 11.08. Supplemental Provisions for Resecuritization.
                (See Section 11.08 of the Standard Terms) ...........................................43

Section 11.09. Allocation of Voting Rights. .................................................................43

Section 11.10. No Petition. ..........................................................................................43

OHS EAST:160174663.4

## EXHIBITS

| | |
|---|---|
| Exhibit One: | Mortgage Loan Schedule |
| Exhibit Two: | Schedule of Discount Fractions |
| Exhibit Three: | Information to be Included in Monthly Distribution Date Statement |
| Exhibit Four: | Standard Terms of Pooling and Servicing Agreement Dated as of December 1, 2006 |
| Exhibit Five: | Form of Rule 144A Global Class P Certificate |

OHS EAST:160174663.4

This is a Series Supplement, dated as of February 1, 2007 (the "Series Supplement"), to the Standard Terms of Pooling and Servicing Agreement, dated as of December 1, 2006 and attached as Exhibit Four hereto (the "Standard Terms" and, together with this Series Supplement, the "Pooling and Servicing Agreement" or "Agreement"), among RESIDENTIAL ACCREDIT LOANS, INC., as the company (together with its permitted successors and assigns, the "Company"), RESIDENTIAL FUNDING COMPANY, LLC, as master servicer (together with its permitted successors and assigns, the "Master Servicer"), and DEUTSCHE BANK TRUST COMPANY AMERICAS, as Trustee (together with its permitted successors and assigns, the "Trustee").

## PRELIMINARY STATEMENT:

The Company intends to sell mortgage asset-backed pass-through certificates (collectively, the "Certificates"), to be issued hereunder in multiple classes, which in the aggregate will evidence the entire beneficial ownership interest in the Mortgage Loans (as defined herein). As provided herein, the REMIC Administrator will make an election to treat the entire segregated pool of assets described in the definition of REMIC, and subject to this Agreement (including the Mortgage Loans), as a real estate mortgage investment conduit (a "REMIC") for federal income tax purposes.

The terms and provisions of the Standard Terms are hereby incorporated by reference herein as though set forth in full herein. If any term or provision contained herein shall conflict with or be inconsistent with any provision contained in the Standard Terms, the terms and provisions of this Series Supplement shall govern. All capitalized terms not otherwise defined herein shall have the meanings set forth in the Standard Terms. The Pooling and Servicing Agreement shall be dated as of the date of this Series Supplement.

The following table sets forth the designation, type, Pass-Through Rate, aggregate Initial Certificate Principal Balance, Maturity Date, initial ratings and certain features for each Class of Certificates comprising the interests in the Trust Fund created hereunder.

| Designation | Pass-Through Rate | Aggregate Initial Certificate Principal Balance | Features[1] | Maturity Date | Fitch/Moody's/S&P | Minimum Denominations[2] |
|---|---|---|---|---|---|---|
| Class A-1 | 6 50% | $300,000,000 00 | Senior/Fixed Rate | February 25, 2037 | AAA/Aaa/AAA | $25,000 00 |
| Class A-2 | 6 00% | $300,000,000 00 | Senior/Fixed Rate | February 25, 2037 | AAA/Aaa/AAA | $25,000 00 |
| Class A-3 | 6 25% | $165,158,000 00 | Senior/ /Fixed Rate | February 25, 2037 | AAA/Aaa/AAA | $25,000 00 |
| Class A-4 | 6 25% | $19,620,000 00 | Senior/Super Senior/Fixed Rate | February 25, 2037 | AAA/Aaa/AAA | $25,000 00 |
| Class A-5 | 6 25% | $106,896,000 00 | Senior/Super Senior/Lockout/ Fixed Rate | February 25, 2037 | AAA/Aaa/AAA | $25,000 00 |
| Class A-6 | 6 25% | $9,063,000 00 | Senior/Senior Support/Lockout/Fixed Rate | February 25, 2037 | AAA/Aaa/AAA | $25,000 00 |
| Class A-P | 0 00% | 5,290,212 93 | Senior/Principal Only | February 25, 2037 | AAA/Aaa/AAA | $25,000 00 |
| Class A-V | Variable Rate[3] | $0 00[4] | Senior/Interest Only/Variable Rate | February 25, 2037 | AAA/Aaa/AAA | $2,000,000 00 |
| Class P | 0 00% | $100 00 | Senior/Prepayment Charge | February 25, 2037 | AAA/Aaa/AAA | $100 00 |
| Class R | 6 25% | $200 00 | Senior/Residual/Fixed Rate | February 25, 2037 | AAA/Aaa/AAA | [5] |
| Class M-1 | 6 25% | $32,063,500 00 | Mezzanine/Fixed Rate | February 25, 2037 | AA/NA/NA | $25,000 00 |
| Class M-2 | 6 25% | $11,173,500 00 | Mezzanine/Fixed Rate | February 25, 2037 | A/NA/NA | $250,000 00 |
| Class M-3 | 6 25% | $8,258,700 00 | Mezzanine/Fixed Rate | February 25, 2037 | BBB/NA/NA | $250,000 00 |
| Class B-1 | 6 25% | $5,829,700 00 | Subordinate/Fixed Rate | February 25, 2037 | BB/NA/NA | $250,000 00 |
| Class B-2 | 6 25% | $4,372,200 00 | Subordinate/Fixed Rate | February 25, 2037 | B/NA/NA | $250,000 00 |
| Class B-3 | 6 25% | $3,866,523 93 | Subordinate/Fixed Rate | February 25, 2037 | NA/NA/NA | $250,000 00 |

The Mortgage Loans have an aggregate principal balance as of the Cut-off Date of $971,611,636.86.

---

[1] The Certificates, other than the Class B Certificates and Class R Certificates, shall be Book-Entry Certificates The Class B Certificates and the Class R Certificates shall be delivered to the holders thereof in physical form

[2] The Certificates, other than the Class R Certificates, shall be issuable in minimum dollar denominations as indicated above (by Certificate Principal Balance or Notional Amount, as applicable) and integral multiples of $1 (or $1,000 in the case of the Class B-1, Class B-2 and Class B-3 Certificates) in excess thereof, except that one Certificate of any of the Class B-1, Class B-2 or Class B-3 Certificates that contains an uneven multiple of $1,000 shall be issued in a denomination equal to the sum of the related minimum denomination set forth above and such uneven multiple for such Class or the sum of such denomination and an integral multiple of $1,000

[3] The initial Pass-Through Rate on the Class A-V Certificates is 0 3835%

[4] The Class A-V Certificates do not have a principal balance   For the purpose of calculating interest payments, interest on the Class A-V Certificates will accrue on a notional amount equal to the aggregate stated principal balance of the mortgage loans, which is initially equal to $971,611,636 86

[5] The Class R Certificates shall be issuable in minimum denominations of not less than a 20% Percentage Interest; provided, however, that one Class R Certificate will be issuable to Residential Funding as "tax matters person" pursuant to Sections 10.01(c) and (e) in a minimum denomination representing a Percentage Interest of not less than 0.01%.

In consideration of the mutual agreements herein contained, the Company, the Master Servicer and the Trustee agree as follows:

3

# ARTICLE I

## DEFINITIONS

Section 1.01    Definitions.

Whenever used in this Agreement, the following words and phrases, unless the context otherwise requires, shall have the meanings specified in this Article.

Bankruptcy Amount:    As of any date of determination prior to the first anniversary of the Cut-off Date, an amount equal to the excess, if any, of (A) $353,310 over (B) the aggregate amount of Bankruptcy Losses allocated solely to one or more specific Classes of Certificates in accordance with Section 4.05 of this Series Supplement. As of any date of determination on or after the first anniversary of the Cut-off Date, an amount equal to the excess, if any, of

(1) the lesser of (a) the Bankruptcy Amount calculated as of the close of business on the Business Day immediately preceding the most recent anniversary of the Cut-off Date coinciding with or preceding such date of determination (or, if such date of determination is an anniversary of the Cut-off Date, the Business Day immediately preceding such date of determination) (for purposes of this definition, the "Relevant Anniversary") and (b) the greatest of:

(A)    (i) if the aggregate principal balance of the Non-Primary Residence Loans as of the Relevant Anniversary is less than 10% of the Stated Principal Balance of the Mortgage Loans as of the Relevant Anniversary, $0.00, or (ii) if the aggregate principal balance of the Non-Primary Residence Loans as of the Relevant Anniversary is equal to or greater than 10% of the Stated Principal Balance of the Mortgage Loans as of the Relevant Anniversary, the sum of (I) the aggregate principal balance of the Non-Primary Residence Loans with a Loan-to-Value Ratio of greater than 80.00% but less than or equal to 90.00% (other than Additional Collateral Loans), times 0.25%, (II) the aggregate principal balance of the Non-Primary Residence Loans with a Loan-to-Value Ratio of greater than 90.00% but less than or equal to 95.00% (other than Additional Collateral Loans), times 0.50%, and (III) the aggregate principal balance of the Non-Primary Residence Loans with a Loan-to-Value Ratio of greater than 95.00% (other than Additional Collateral Loans) times 0.75%, in each case as of the Relevant Anniversary;

(B)    the greater of (i) the product of (x) an amount equal to the largest difference in the related Monthly Payment for any Non-Primary Residence Loan remaining in the Mortgage Pool (other than Additional Collateral Loans) which had an original Loan-to-Value Ratio of 80% or greater that would result if the Net Mortgage Rate thereof was equal to the weighted average (based on the principal balance of the Mortgage Loans as of the Relevant Anniversary) of the Net Mortgage Rates of all Mortgage Loans as of the Relevant Anniversary less 1.25% per annum, (y) a number equal to the weighted average remaining term to maturity, in months, of all Non-Primary Residence Loans remaining in the

Mortgage Pool as of the Relevant Anniversary, and (z) one plus the quotient of the number of all Non-Primary Residence Loans remaining in the Mortgage Pool divided by the total number of Outstanding Mortgage Loans in the Mortgage Pool as of the Relevant Anniversary, and (ii) $50,000; and

(C)    the greater of (i) 0.0006 times the aggregate principal balance of all the Mortgage Loans in the Mortgage Pool as of the Relevant Anniversary having a Loan-to-Value Ratio (other than Additional Collateral Loans) at origination which exceeds 75% and (ii) $100,000,

over (2) the aggregate amount of Bankruptcy Losses allocated solely to one or more specific Classes of Certificates in accordance with Section 4.05 since the Relevant Anniversary.

The Bankruptcy Amount may be further reduced by the Master Servicer (including accelerating the manner in which such coverage is reduced) provided that prior to any such reduction, the Master Servicer shall (i) obtain written confirmation from each Rating Agency that such reduction shall not reduce the rating assigned to any Class of Certificates by such Rating Agency below the lower of the then-current rating or the rating assigned to such Certificates as of the Closing Date by such Rating Agency and (ii) provide a copy of such written confirmation to the Trustee.

Certificate:   Any Class A, Class P, Class M, Class B or Class R Certificate.

Certificate Account:   The separate account or accounts created and maintained pursuant to Section 4.01 of the Standard Terms, which shall be entitled "Deutsche Bank Trust Company Americas, as trustee, in trust for the registered holders of Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QS3" and which must be an Eligible Account.

Certificate Policy:   None.

Class A Certificate:   Any one of the Class A-1, Class A-2, Class A-3, Class A-4, Class A-5, Class A-6, Class A-V or Class A-P Certificates, executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed to the Standard Terms as Exhibit A.

Class A-5/A-6 Lockout Amount:   With respect to any Distribution Date, an amount equal to (A) the product of (i) the Lockout Percentage for that Distribution Date, (ii) a fraction, the numerator of which is the aggregate Certificate Principal Balance of the Class A-5 Certificates and Class A-6 Certificates for that Distribution Date and the denominator of which is the then aggregate Stated Principal Balance of the Mortgage Loans other than, with respect to the Discount Mortgage Loans, the Discount Fraction of each such Discount Mortgage Loan and (iii) the aggregate of all collections described in clauses (A), (B), (D) and (E) (net of amounts described in clause (F)) of Section 4.02(a)(ii)(Y), without regard to the Senior Percentage or Senior Accelerated Distribution Percentage plus (B) the product of (i) a fraction, the numerator of which is the aggregate Certificate Principal Balance of the Class A-5 Certificates and Class A-6 Certificates for that Distribution Date and the denominator of which is the then aggregate

OHS EAST:160174663.4

Stated Principal Balance of the Mortgage Loans other than, with respect to the Discount Mortgage Loans, the Discount Fraction of each such Discount Mortgage Loan, (ii) the Prepayment Lockout Percentage for that Distribution Date and (iii) the collections described in clause (C) of Section 4.02(a)(ii)(Y), without regard to the Senior Percentage or Senior Accelerated Distribution Percentage.

Class P Certificate:    Any one of the Class P Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed hereto as Exhibit Five and evidencing a percentage interest in any Prepayment Charges.

Class P Reserve Account:    The account established and maintained by the Trustee pursuant to Section 4.09 hereof.

Class R Certificate:    Any one of the Class R Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed to the Standard Terms as Exhibit D and evidencing an interest designated as a "residual interest" in the REMIC for purposes of the REMIC Provisions.

Closing Date:    February 27, 2007.

Corporate Trust Office:    The principal office of the Trustee at which at any particular time its corporate trust business with respect to this Agreement shall be administered, which office at the date of the execution of this instrument is located at 1761 East St. Andrew Place, Santa Ana, California 92705-4934, Attention:   Residential Funding Company, LLC Series 2007-QS3.

Custodial File:    Any mortgage loan document in the Mortgage File that is required to be delivered to the Trustee or Custodian pursuant to Section 2.01(b) of this Agreement.

Cut-off Date:    February 1, 2007.

Determination Date:    With respect to any Distribution Date, the second Business Day prior to such Distribution Date.

Discount Net Mortgage Rate:    6.25% per annum.

Due Period:    With respect to each Distribution Date, the calendar month in which such Distribution Date occurs.

Eligible Funds:    On any Distribution Date, the excess, if any, of the Available Distribution Amount over the sum of (i) the aggregate amount of Accrued Certificate Interest on the Senior Certificates, (ii) the Senior Principal Distribution Amount (determined without regard to Section 4.02(a)(ii)(Y)(D) hereof), (iii) the Class A-P Principal Distribution Amount (determined without regard to clause (E) of the definition of Class A-P Principal Distribution Amount) and (iv) the aggregate amount of Accrued Certificate Interest on the Class M, Class B-1 and Class B-2 Certificates.

6

Fraud Loss Amount:   As of any date of determination after the Cut-off Date, an amount equal to:  (X) prior to the first anniversary of the Cut-off Date an amount equal to 3.00% of the aggregate outstanding principal balance of all of the Mortgage Loans as of the Cut-off Date minus the aggregate amount of Fraud Losses allocated solely to one or more specific Classes of Certificates in accordance with Section 4.05 of this Series Supplement since the Cut-off Date up to such date of determination, (Y) from the first to, but not including, the second anniversary of the Cut-off Date, an amount equal to (1) the lesser of (a) the Fraud Loss Amount as of the most recent anniversary of the Cut-off Date and (b) 2.00% of the aggregate outstanding principal balance of all of the Mortgage Loans as of the most recent anniversary of the Cut-off Date minus (2) the aggregate amount of Fraud Losses allocated solely to one or more specific Classes of Certificates in accordance with Section 4.05 since the most recent anniversary of the Cut-off Date up to such date of determination, and (Z) from the second to, but not including, the fifth anniversary of the Cut-off Date, an amount equal to (1) the lesser of (a) the Fraud Loss Amount as of the most recent anniversary of the Cut-off Date and (b) 1.00% of the aggregate outstanding principal balance of all of the Mortgage Loans as of the most recent anniversary of the Cut-off Date minus (2) the aggregate amount of Fraud Losses allocated solely to one or more specific Classes of Certificates in accordance with Section 4.05 since the most recent anniversary of the Cut-off Date up to such date of determination. On and after the fifth anniversary of the Cut-off Date, the Fraud Loss Amount shall be zero.

The Fraud Loss Amount may be further reduced by the Master Servicer (including accelerating the manner in which such coverage is reduced) provided that prior to any such reduction, the Master Servicer shall (i) obtain written confirmation from each Rating Agency that such reduction shall not reduce the rating assigned to any Class of Certificates by such Rating Agency below the lower of the then-current rating or the rating assigned to such Certificates as of the Closing Date by such Rating Agency and (ii) provide a copy of such written confirmation to the Trustee.

Initial Monthly Payment Fund:  $0, representing scheduled principal amortization and interest at the Net Mortgage Rate payable during the March 2007 Due Period, for those Mortgage Loans for which the Trustee will not be entitled to receive such payment.

Initial Subordinate Class Percentage:   With respect to each Class of Subordinate Certificates, an amount which is equal to the initial aggregate Certificate Principal Balance of such Class of Subordinate Certificates divided by the aggregate Stated Principal Balance of all the Mortgage Loans as of the Cut-off Date as follows:

| | | | |
|---|---|---|---|
| Class M-1: | 3.30% | Class B-1: | 0.60% |
| Class M-2: | 1.15% | Class B-2: | 0.45% |
| Class M-3: | 0.85% | Class B-3: | 0.40% |

Interest Accrual Period:   With respect to any Class of Certificates and any Distribution Date, the calendar month preceding the month in which such Distribution Date occurs.

Interest Only Certificates:   Any one of the Class A-V Certificates.  The Interest Only Certificates will have no Certificate Principal Balance.

7

Lockout Certificates:  Any one of the Class A-5Certificates or Class A-6 Certificates.

Lockout Percentage—For any Distribution Date occurring prior to the Distribution Date in March 2012, 0%, and for any Distribution Date thereafter, 100%.

Lockout Prepayment Percentage—For any Distribution Date occurring prior to the Distribution Date in March 2012, 0%. For any Distribution Date thereafter, as follows:  30% for any Distribution Date on or after March 2012 and prior to March 2013; 40% for any Distribution Date on or after March 2013 and prior to March 2014; 60% for any Distribution Date on or after March 2014 and prior to March 2015; 80% for any Distribution Date on or after March 2015 and prior to March 2016; and 100% for any Distribution Date thereafter.

Maturity Date:  February 25, 2037, the Distribution Date immediately following the latest scheduled maturity date of any Mortgage Loan.

Mortgage Loan Schedule:    The list or lists of the Mortgage Loans attached hereto as Exhibit One (as amended from time to time to reflect the addition of Qualified Substitute Mortgage Loans), which list or lists shall set forth the following information as to each Mortgage Loan:

(i)      the Mortgage Loan identifying number ("RFC LOAN #");

(ii)     the maturity of the Mortgage Note ("MATURITY DATE");

(iii)    the Mortgage Rate ("ORIG RATE");

(iv)     the applicable Subservicer pass-through rate ("CURR NET");

(v)      the Net Mortgage Rate ("NET MTG RT");

(vi)     the Pool Strip Rate ("STRIP");

(vii)    the initial scheduled monthly payment of principal, if any, and interest ("ORIGINAL P & I");

(viii)   the Cut-off Date Principal Balance ("PRINCIPAL BAL");

(ix)     the Loan-to-Value Ratio at origination ("LTV");

(x)      the rate at which the Subservicing Fee accrues ("SUBSERV FEE") and at which the Servicing Fee accrues ("MSTR SERV FEE");

(xi)     a code "T," "BT" or "CT" under the column "LN FEATURE," indicating that the Mortgage Loan is secured by a second or vacation residence;

(xii)    a code "N" under the column "OCCP CODE," indicating that the Mortgage Loan is secured by a non-owner occupied residence; and

OHS EAST:160174663.4

(ix)    a code "Y" under the column "PREPAY_PENALTY_IND," indicating that the Mortgage Loan is a Prepayment Charge Loan.

Such schedule may consist of multiple reports that collectively set forth all of the information required.

Notional Amount:    As of any Distribution Date, with respect to any Class A-V Certificates or Subclass thereof issued pursuant to Section 5.01(c) of the Standard Terms, the aggregate Stated Principal Balance of the Mortgage Loans corresponding to the Uncertificated REMIC Regular Interests Z represented by such Class or Subclass immediately prior to such date.

Pass-Through Rate:    With respect to the Senior Certificates (other than the Class A-V, Class A-P and Class P Certificates), Class M Certificates and Class B Certificates and any Distribution Date, the per annum rates set forth in the Preliminary Statement hereto.

With respect to the Class A-V Certificates (other than any Subclass thereof) and any Distribution Date, a rate equal to the weighted average, expressed as a percentage, of the Pool Strip Rates of all Mortgage Loans as of the Due Date in the related Due Period, weighted on the basis of the respective Stated Principal Balances of such Mortgage Loans as of the day immediately preceding such Distribution Date (or, with respect to the initial Distribution Date, at the close of business on the Cut-off Date). With respect to the Class A-V Certificates and the initial Distribution Date the Pass-Through Rate is equal to 0.3835% per annum. With respect to any Subclass of Class A-V Certificates and any Distribution Date, a rate equal to the weighted average, expressed as a percentage, of the Pool Strip Rates of all Mortgage Loans corresponding to the Uncertificated REMIC Regular Interests Z represented by such Subclass as of the Due Date in the related Due Period, weighted on the basis of the respective Stated Principal Balances of such Mortgage Loans as of the day immediately preceding such Distribution Date (or with respect to the initial Distribution Date, at the close of business on the Cut-off Date). The Principal Only Certificates and the Class P Certificates have no Pass-Through Rate and are not entitled to Accrued Certificate Interest.

Prepayment Assumption:    The prepayment assumption to be used for determining the accrual of original issue discount and premium and market discount on the Certificates for federal income tax purposes, which assumes a constant prepayment rate of 6.0% per annum of the then outstanding principal balance of the related Mortgage Loans in the first month of the life of such Mortgage Loans and an additional approximately 1.0909090909% per annum in each month thereafter until the twelfth month, and beginning in the twelfth month and in each month thereafter during the life of the Mortgage Loans, a constant prepayment rate of 18.0% per annum.

Prepayment Charge:    With respect to any Mortgage Loan, the charges or premiums, if any, received in connection with a full or partial prepayment of such Mortgage Loan in accordance with the terms thereof.

OHS EAST:160174663.4

Prepayment Charge Loan:  Any Mortgage Loan for which a Prepayment Charge may be assessed and to which such Prepayment Charge the Class P Certificates are entitled, as indicated on the Mortgage Loan Schedule.

Prepayment Distribution Percentage:  With respect to any Distribution Date and each Class of Subordinate Certificates, under the applicable circumstances set forth below, the respective percentages set forth below:

(i)    For any Distribution Date prior to the Distribution Date in March 2012 (unless the Certificate Principal Balances of the Senior Certificates (other than the Class A-P Certificates) have been reduced to zero), 0%.

(ii)    For any Distribution Date not discussed in clause (i) above on which any Class of Subordinate Certificates are outstanding:

(a)    in the case of the Class of Subordinate Certificates then outstanding with the Highest Priority and each other Class of Subordinate Certificates for which the related Prepayment Distribution Trigger has been satisfied, a fraction, expressed as a percentage, the numerator of which is the Certificate Principal Balance of such Class immediately prior to such date and the denominator of which is the sum of the Certificate Principal Balances immediately prior to such date of (1) the Class of Subordinate Certificates then outstanding with the Highest Priority and (2) all other Classes of Subordinate Certificates for which the respective Prepayment Distribution Triggers have been satisfied; and

(b)    in the case of each other Class of Subordinate Certificates for which the Prepayment Distribution Triggers have not been satisfied, 0%.

Notwithstanding the foregoing, if the application of the foregoing percentages on any Distribution Date as provided in Section 4.02 of this Series Supplement (determined without regard to the proviso to the definition of "Subordinate Principal Distribution Amount") would result in a distribution in respect of principal of any Class or Classes of Subordinate Certificates in an amount greater than the remaining Certificate Principal Balance thereof (any such class, a "Maturing Class"), then:  (a) the Prepayment Distribution Percentage of each Maturing Class shall be reduced to a level that, when applied as described above, would exactly reduce the Certificate Principal Balance of such Class to zero; (b) the Prepayment Distribution Percentage of each other Class of Subordinate Certificates (any such Class, a "Non-Maturing Class") shall be recalculated in accordance with the provisions in paragraph (ii) above, as if the Certificate Principal Balance of each Maturing Class had been reduced to zero (such percentage as recalculated, the "Recalculated Percentage"); (c) the total amount of the reductions in the Prepayment Distribution Percentages of the Maturing Class or Classes pursuant to clause (a) of this sentence, expressed as an aggregate percentage, shall be allocated among the Non-Maturing Classes in proportion to their respective Recalculated Percentages (the portion of such aggregate reduction so allocated to any Non-Maturing Class, the "Adjustment Percentage"); and (d) for purposes of such Distribution Date, the Prepayment Distribution Percentage of each Non-Maturing Class shall be equal to the sum of (1) the Prepayment Distribution Percentage thereof,

OHS EAST:160174663.4

calculated in accordance with the provisions in paragraph (ii) above as if the Certificate Principal Balance of each Maturing Class had not been reduced to zero, plus (2) the related Adjustment Percentage.

Principal Only Certificates:  The Class A-P Certificates.

Record Date:  With respect to each Distribution Date and each Class of Certificates, the close of business on the last Business Day of the month preceding the month in which the related Distribution Date occurs.

REMIC:  The segregated pool of assets with respect to which a REMIC election is to be made, consisting of:

(i)     the Mortgage Loans and the related Mortgage Files,

(ii)    all payments and collections in respect of the Mortgage Loans due after the Cut-off Date (other than Monthly Payments due in the month of the Cut-off Date) as shall be on deposit in the Custodial Account or in the Certificate Account and identified as belonging to the Trust Fund, including the proceeds from the liquidation of Additional Collateral for any Additional Collateral Loan, but not including amounts on deposit in the Initial Monthly Payment Fund or any Prepayment Charges,

(iii)   property which secured a Mortgage Loan and which has been acquired for the benefit of the Certificateholders by foreclosure or deed in lieu of foreclosure,

(iv)    the hazard insurance policies and Primary Insurance Policies, if any, the Pledged Assets with respect to each Pledged Asset Mortgage Loan, and the interest in the Surety Bond transferred to the Trustee pursuant to Section 2.01 herein, and

(v)     all proceeds of clauses (i) through (iv) above.

Rule 144A: Rule 144A under the Securities Act of 1933, as in effect from time to time.

Rule 144A Global Offered Certificate: Any one of the Class P Certificates substantially in the form of Exhibit Five hereto, and as more fully described in Section 5.02(i) hereof.

Senior Certificate:  Any one of the Class A, Class P or Class R Certificates, executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed to the Standard Terms as Exhibit A (Class A) and Exhibit D (Class R) and annexed hereto as Exhibit Five (Class P).

Senior Interest Distribution Amount:    With respect to any Distribution Date, the aggregate amount of Accrued Certificate Interest to be distributed to the Holders of the Senior Certificates for that Distribution Date.

Senior Percentage:   As of any Distribution Date, the lesser of 100% and a fraction, expressed as a percentage, the numerator of which is the aggregate Certificate Principal Balance of the Senior Certificates (other than the Class A-P Certificates) immediately prior to such Distribution Date and the denominator of which is the aggregate Stated Principal Balance of all of the Mortgage Loans (or related REO Properties) (other than the related Discount Fraction of each Discount Mortgage Loan) immediately prior to such Distribution Date.

Senior Principal Distribution Amount:  With respect to any Distribution Date, the lesser of (a) the balance of the Available Distribution Amount remaining after the distribution of all amounts required to be distributed therefrom pursuant to Section 4.02(a)(i) and Section 4.02(a)(ii)(W) (excluding any amount distributable pursuant to clause (E) of the definition of "Class A-P Principal Distribution Amount") and (b) the sum of the amounts required to be distributed to the Senior Certificateholders on such Distribution Date pursuant to Sections 4.02(a)(ii)(Y), 4.02(a)(xvi) and 4.02(a)(xvii).

Special Hazard Amount:  As of any Distribution Date, an amount equal to $9,716,116 minus the sum of (i) the aggregate amount of Special Hazard Losses allocated solely to one or more specific Classes of Certificates in accordance with Section 4.05 of this Series Supplement and (ii) the Adjustment Amount (as defined below) as most recently calculated.  For each anniversary of the Cut-off Date, the Adjustment Amount shall be equal to the amount, if any, by which the amount calculated in accordance with the preceding sentence (without giving effect to the deduction of the Adjustment Amount for such anniversary) exceeds the greater of (A) the greater of (i) the product of the Special Hazard Percentage for such anniversary multiplied by the outstanding principal balance of all the Mortgage Loans on the Distribution Date immediately preceding such anniversary and (ii) twice the outstanding principal balance of the Mortgage Loan with the largest outstanding principal balance as of the Distribution Date immediately preceding such anniversary and (B) the greater of (i) the product of 0.50% multiplied by the outstanding principal balance of all Mortgage Loans on the Distribution Date immediately preceding such anniversary multiplied by a fraction, the numerator of which is equal to the aggregate outstanding principal balance (as of the immediately preceding Distribution Date) of all of the Mortgage Loans secured by Mortgaged Properties located in the State of California divided by the aggregate outstanding principal balance (as of the immediately preceding Distribution Date) of all of the Mortgage Loans, expressed as a percentage, and the denominator of which is equal to 17.05% (which percentage is equal to the percentage of Mortgage Loans by aggregate principal balance initially secured by Mortgaged Properties located in the State of California) and (ii) the aggregate outstanding principal balance (as of the immediately preceding Distribution Date) of the largest Mortgage Loan secured by a Mortgaged Property (or, with respect to a Cooperative Loan, the related Cooperative Apartment) located in the State of California.

The Special Hazard Amount may be further reduced by the Master Servicer (including accelerating the manner in which coverage is reduced) provided that prior to any such reduction, the Master Servicer shall (i) obtain written confirmation from each Rating Agency that such reduction shall not reduce the rating assigned to any Class of Certificates by such Rating Agency below the lower of the then-current rating or the rating assigned to such Certificates as of the Closing Date by such Rating Agency and (ii) provide a copy of such written confirmation to the Trustee.

Special Hazard Percentage:  As of each anniversary of the Cut-off Date, the greater of (i) 1.0% and (ii) the largest percentage obtained by dividing the aggregate outstanding principal balance (as of immediately preceding Distribution Date) of the Mortgage Loans secured by Mortgaged Properties located in a single, five-digit zip code area in the State of California by the outstanding principal balance of all the Mortgage Loans as of the immediately preceding Distribution Date.

Subordinate Principal Distribution Amount:  With respect to any Distribution Date and each Class of Subordinate Certificates, (a) the sum of (i) the product of (x) the related Subordinate Class Percentage for such Class and (y) the aggregate of the amounts calculated (without giving effect to the related Senior Percentages) for such Distribution Date under clauses (1), (2) and (3) of Section 4.02(a)(ii)(Y)(A); (ii) such Class's pro rata share, based on the Certificate Principal Balance of each Class of Subordinate Certificates then outstanding, of the principal collections described in Section 4.02(a)(ii)(Y)(B)(b) (without giving effect to the Senior Accelerated Distribution Percentage) to the extent such collections are not otherwise distributed to the Senior Certificates; (iii) the product of (x) the related Prepayment Distribution Percentage and (y) the aggregate of all Principal Prepayments in Full received in the related Prepayment Period and Curtailments received in the preceding calendar month  (other than the related Discount Fraction of such Principal Prepayments in Full and Curtailments with respect to a Discount Mortgage Loan) to the extent not payable to the Senior Certificates; (iv) if such Class is the Class of Subordinate Certificates with the Highest Priority, any Excess Subordinate Principal Amount for such Distribution Date not paid to the Senior Certificates; and (v) any amounts described in clauses (i), (ii) and (iii) as determined for any previous Distribution Date, that remain undistributed to the extent that such amounts are not attributable to Realized Losses which have been allocated to a Class of Subordinate Certificates; minus (b) the sum of (i) with respect to the Class of Subordinate Certificates with the Lowest Priority, any Excess Subordinate Principal Amount for such Distribution Date; and (ii) the Capitalization Reimbursement Amount for such Distribution Date, other than the related Discount Fraction of any portion of that amount related to each Discount Mortgage Loan, multiplied by a fraction, the numerator of which is the Subordinate Principal Distribution Amount for such Class of Subordinate Certificates, without giving effect to this clause (b)(ii), and the denominator of which is the sum of the principal distribution amounts for all Classes of Certificates other than the Class A-P Certificates, without giving effect to any reductions for the Capitalization Reimbursement Amount.

Uncertificated Accrued Interest:   With respect to each Distribution Date, as to each Uncertificated REMIC Regular Interest Z, an amount equal to one month's interest at the Pool Strip Rate of the related Mortgage Loan on the principal balance of such Mortgage Loan reduced by such Interest's pro-rata share of any prepayment interest shortfalls or other reductions of interest allocable to the Class A-V Certificates.

Uncertificated Pass-Through Rate:  With respect to each Uncertificated Regular Interest Z, the Pool Strip Rate for the related Mortgage Loan.

Uncertificated Regular Interests Z:  Each of the 3,594 uncertificated partial undivided beneficial ownership interests in the Trust Fund, numbered sequentially from 1 to 3,594, each relating to the particular Mortgage Loan identified by such sequential number on the Mortgage

13

Loan Schedule, each having no principal balance, and each bearing interest at the respective Pool Strip Rate on the Stated Principal Balance of the related Mortgage Loan.

<u>Uncertificated REMIC Regular Interests Z Distribution Amount</u>:    With respect to any Distribution Date, the sum of the amounts deemed to be distributed on the Uncertificated REMIC Regular Interests Z for such Distribution Date pursuant to Section 10.04(a).

<u>Underwriter</u>: Greenwich Capital Markets, Inc.

Section 1.02    <u>Use of Words and Phrases</u>.

"Herein," "hereby," "hereunder," "hereof," "hereinbefore," "hereinafter" and other equivalent words refer to the Pooling and Servicing Agreement as a whole.  All references herein to Articles, Sections or Subsections shall mean the corresponding Articles, Sections and Subsections in the Pooling and Servicing Agreement.  The definitions set forth herein include both the singular and the plural.

References in the Pooling and Servicing Agreement to "interest" on and "principal" of the Mortgage Loans shall mean, with respect to the Sharia Mortgage Loans, amounts in respect profit payments and acquisition payments, respectively.

OHS EAST:160174663.4

## ARTICLE II

## CONVEYANCE OF MORTGAGE LOANS;
## ORIGINAL ISSUANCE OF CERTIFICATES

Section 2.01    Conveyance of Mortgage Loans. (See Section 2.01 of the Standard Terms)

Section 2.02    Acceptance by Trustee. (See Section 2.02 of the Standard Terms)

Section 2.03    Representations, Warranties and Covenants of the Master Servicer and the Company.

(a)    (See Section 2.03(a) of the Standard Terms)

(b)    The Company hereby represents and warrants to the Trustee for the benefit of Certificateholders that as of the Closing Date (or, if otherwise specified below, as of the date so specified):

(i)    No Mortgage Loan is 30 or more days Delinquent in payment of principal and interest as of the Cut-off Date and no Mortgage Loan has been so Delinquent more than once in the 12-month period prior to the Cut-off Date;

(ii)    The information set forth in Exhibit One hereto with respect to each Mortgage Loan or the Mortgage Loans, as the case may be, is true and correct in all material respects at the date or dates respecting which such information is furnished;

(iii)    The Mortgage Loans are fully-amortizing (subject to interest only periods, if applicable), fixed-rate mortgage loans with level Monthly Payments due, with respect to a majority of the Mortgage Loans, on the first day of each month and terms to maturity at origination or modification of not more than 30 years;

(iv)    To the best of the Company's knowledge, except in the case of 0.2% of the aggregate principal balance of the Mortgage Loans, if a Mortgage Loan is secured by a Mortgaged Property with a Loan-to-Value Ratio at origination in excess of 80%, such Mortgage Loan is the subject of a Primary Insurance Policy that insures (a) at least 35% of the Stated Principal Balance of the Mortgage Loan at origination if the Loan-to-Value Ratio is between 100.00% and 95.01%, (b) at least 30% of the Stated Principal Balance of the Mortgage Loan at origination if the Loan-to-Value Ratio is between 95.00% and 90.01%, (c) at least 25% of such balance if the Loan-to-Value Ratio is between 90.00% and 85.01% and (d) at least 12% of such balance if the Loan-to-Value Ratio is between 85.00% and 80.01%.    To the best of the Company's knowledge, each such Primary Insurance Policy is in full force and effect and the Trustee is entitled to the benefits thereunder;

(v)    The issuers of the Primary Insurance Policies are insurance companies whose claims-paying abilities are currently acceptable to each Rating Agency;

15

(vi)    No more than 0.5% of the Mortgage Loans by aggregate Stated Principal Balance as of the Cut-off Date are secured by Mortgaged Properties located in any one zip code area in Michigan and no more than 0.4% of the Mortgage Loans by aggregate Stated Principal Balance as of the Cut-off Date are secured by Mortgaged Properties located in any one zip code area outside Michigan;

(vii)    The improvements upon the Mortgaged Properties are insured against loss by fire and other hazards as required by the Program Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The Mortgage requires the Mortgagor to maintain such casualty insurance at the Mortgagor's expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at the Mortgagor's expense and to seek reimbursement therefor from the Mortgagor;

(viii)    Immediately prior to the assignment of the Mortgage Loans to the Trustee, the Company had good title to, and was the sole owner of, each Mortgage Loan free and clear of any pledge, lien, encumbrance or security interest (other than rights to servicing and related compensation) and such assignment validly transfers ownership of the Mortgage Loans to the Trustee free and clear of any pledge, lien, encumbrance or security interest;

(ix)    No more than 48.5% of the Mortgage Loans by aggregate Stated Principal Balance as of the Cut-off Date were underwritten under a reduced loan documentation program, no more than 16.1% of the Mortgage Loans by aggregate Stated Principal Balance as of the Cut-off Date were underwritten under a no-stated income program, and no more than 12.4% of the Mortgage Loans by aggregate Stated Principal Balance as of the Cut-off Date were underwritten under a no income/no asset program;

(x)    Except with respect to no more than 13.3% of the Mortgage Loans by aggregate Stated Principal Balance as of the Cut-off Date, the Mortgagor represented in its loan application with respect to the related Mortgage Loan that the Mortgaged Property would be owner-occupied;

(xi)    No more than 0.2% of the Mortgage Loans by aggregate Stated Principal Balance as of the Cut-off Date are Buy-Down Mortgage Loans;

(xii)    Each Mortgage Loan constitutes a qualified mortgage under Section 860G(a)(3)(A) of the Code and Treasury Regulations Section 1.860G-2(a)(1), (2), (4), (5) and (6), without reliance on the provisions of Treasury Regulation Section 1.860G-2(a)(3) or Treasury Regulation Section 1.860G-2(f)(2) or any other provision that would allow a Mortgage Loan to be treated as a "qualified mortgage" notwithstanding its failure to meet the requirements of Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5) and (6);

(xiii)    A policy of title insurance was effective as of the closing of each Mortgage Loan and is valid and binding and remains in full force and effect, unless the

OHS EAST:160174663.4

Mortgaged Properties are located in the State of Iowa and an attorney's certificate has been provided as described in the Program Guide;

(xiv)    No more than 0.02% of the Mortgage Loans by aggregate Stated Principal Balance as of the Cut-off Date are Cooperative Loans;

(xv)    With respect to each Mortgage Loan originated under a "streamlined" Mortgage Loan program (through which no new or updated appraisals of Mortgaged Properties are obtained in connection with the refinancing thereof), the related Seller has represented that either (a) the value of the related Mortgaged Property as of the date the Mortgage Loan was originated was not less than the appraised value of such property at the time of origination of the refinanced Mortgage Loan or (b) the Loan-to-Value Ratio of the Mortgage Loan as of the date of origination of the Mortgage Loan generally meets the Company's underwriting guidelines;

(xvi)    Interest on each Mortgage Loan is calculated on the basis of a 360-day year consisting of twelve 30-day months;

(xvii)    None of the Mortgage Loans contain in the related Mortgage File a Destroyed Mortgage Note;

(xviii)    None of the Mortgage Loans has been made to an International Borrower, and no such Mortgagor is a member of a foreign diplomatic mission with diplomatic rank;

(xix)    No Mortgage Loan provides for payments that are subject to reduction by withholding taxes levied by any foreign (non-United States) sovereign government; and

(xx)    None of the Mortgage Loans is an Additional Collateral Loan and none of the Mortgage Loans is a Pledged Asset Loan.

It is understood and agreed that the representations and warranties set forth in this Section 2.03(b) shall survive delivery of the respective Custodial Files to the Trustee or the Custodian.

Upon discovery by any of the Company, the Master Servicer, the Trustee or the Custodian of a breach of any of the representations and warranties set forth in this Section 2.03(b) that materially and adversely affects the interests of the Certificateholders in any Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties (the Custodian being so obligated under a Custodial Agreement); provided, however, that in the event of a breach of the representation and warranty set forth in Section 2.03(b)(xii), the party discovering such breach shall give such notice within five days of discovery. Within 90 days of its discovery or its receipt of notice of breach, the Company shall either (i) cure such breach in all material respects or (ii) purchase such Mortgage Loan from the Trust Fund at the Purchase Price and in the manner set forth in Section 2.02; provided that the Company shall have the option to substitute a Qualified Substitute Mortgage Loan or Loans for such Mortgage Loan if such substitution occurs within two years following the Closing Date; provided that if the omission or defect would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure or repurchase must occur within 90

OHS EAST:160174663.4

days from the date such breach was discovered.  Any such substitution shall be effected by the
Company under the same terms and conditions as provided in Section 2.04 for substitutions by
Residential Funding.  It is understood and agreed that the obligation of the Company to cure such
breach or to so purchase or substitute for any Mortgage Loan as to which such a breach has
occurred and is continuing shall constitute the sole remedy respecting such breach available to
the Certificateholders or the Trustee on behalf of the Certificateholders.

        Section  2.04  Representations and Warranties of Sellers. (See Section 2.04 of the
Standard Terms)

        Section  2.05  Execution and Authentication of Certificates/Issuance of
Certificates Evidencing Interests in the REMIC.

      The Trustee acknowledges the assignment to it of the Mortgage Loans and the delivery of
the Custodial Files to it, or the Custodian on its behalf, subject to any exceptions noted, together
with the assignment to it of all other assets included in the Trust Fund and/or the REMIC, receipt
of which is hereby acknowledged.  Concurrently with such delivery and in exchange therefor, the
Trustee, pursuant to the written request of the Company executed by an officer of the Company,
has executed and caused to be authenticated and delivered to or upon the order of the Company
all Classes of Certificates in authorized denominations which evidence the beneficial interest in
the REMIC.

        Section  2.06  Reserved.

        Section  2.07  Reserved.

        Section  2.08  Purposes and Powers of the Trust. (See Section 2.08 of the
Standard Terms).

OHS EAST:160174663.4

ARTICLE III

ADMINISTRATION AND SERVICING
OF MORTGAGE LOANS

Section 3.01   Master Servicer to Act as Servicer. (See Section 3.01 of the Standard Terms)

Section 3.02   Subservicing Agreements Between Master Servicer and Subservicers; Enforcement of Subservicers' and Sellers' Obligations. (See Section 3.02 of the Standard Terms)

Section 3.03   Successor Subservicers. (See Section 3.03 of the Standard Terms)

Section 3.04   Liability of the Master Servicer. (See Section 3.04 of the Standard Terms)

Section 3.05   No Contractual Relationship Between Subservicer and Trustee or Certificateholders. (See Section 3.05 of the Standard Terms).

Section 3.06   Assumption or Termination of Subservicing Agreements by Trustee. (See Section 3.06 of the Standard Terms).

Section 3.07   Collection of Certain Mortgage Loan Payments; Deposits to Custodial Account.

(a)          (See Section 3.07(a) of the Standard Terms)

(b)   The Master Servicer shall establish and maintain a Custodial Account in which the Master Servicer shall deposit or cause to be deposited on a daily basis, except as otherwise specifically provided herein, the following payments and collections remitted by Subservicers or received by it in respect of the Mortgage Loans subsequent to the Cut-off Date (other than in respect of principal and interest on the Mortgage Loans due on or before the Cut-off Date):

(i)   All payments on account of principal, including Principal Prepayments made by Mortgagors on the Mortgage Loans and the principal component of any Subservicer Advance or of any REO Proceeds received in connection with an REO Property for which an REO Disposition has occurred;

(ii)   All payments on account of interest at the Adjusted Mortgage Rate on the Mortgage Loans, including Buydown Funds, if any, and the interest component of any Subservicer Advance or of any REO Proceeds received in connection with an REO Property for which an REO Disposition has occurred;

(iii)   Insurance Proceeds, Subsequent Recoveries and Liquidation Proceeds (net of any related expenses of the Subservicer);

(iv)    All proceeds of any Mortgage Loans purchased pursuant to Section 2.02, 2.03, 2.04 or 4.07 (including amounts received from Residential Funding pursuant to the last paragraph of Section 4 of the Assignment Agreement in respect of any liability, penalty or expense that resulted from a breach of the Compliance With Laws Representation and all amounts required to be deposited in connection with the substitution of a Qualified Substitute Mortgage Loan pursuant to Section 2.03 or 2.04;

(v)    Any amounts required to be deposited pursuant to Section 3.07(c) or 3.21;

(vi)    All amounts transferred from the Certificate Account to the Custodial Account in accordance with Section 4.02(a);

(vii)    Any amounts realized by the Subservicer and received by the Master Servicer in respect of any Additional Collateral;

(viii)    Any amounts received by the Master Servicer in respect of Pledged Assets; and

The foregoing requirements for deposit in the Custodial Account shall be exclusive, it being understood and agreed that, without limiting the generality of the foregoing, payments on the Mortgage Loans which are not part of the Trust Fund (consisting of payments in respect of principal and interest on the Mortgage Loans due on or before the Cut-off Date) and payments or collections in the nature of late payment charges or assumption fees may but need not be deposited by the Master Servicer in the Custodial Account. In the event any amount not required to be deposited in the Custodial Account is so deposited, the Master Servicer may at any time withdraw such amount from the Custodial Account, any provision herein to the contrary notwithstanding. Amounts received by the Master Servicer in connection with Prepayment Charges on the Prepayment Charge Loans shall be remitted by the Master Servicer, upon receipt thereof, to the Trustee and shall be deposited by the Trustee, upon the receipt thereof and written direction with respect thereto, into the Class P Reserve Account. The Custodial Account may contain funds that belong to one or more trust funds created for mortgage pass-through certificates of other series and may contain other funds respecting payments on Mortgage Loans belonging to the Master Servicer or serviced or master serviced by it on behalf of others. Notwithstanding such commingling of funds, the Master Servicer shall keep records that accurately reflect the funds on deposit in the Custodial Account that have been identified by it as being attributable to the Mortgage Loans.

With respect to Insurance Proceeds, Liquidation Proceeds, REO Proceeds and the proceeds of the purchase of any Mortgage Loan pursuant to Sections 2.02, 2.03, 2.04 and 4.07 received in any calendar month, the Master Servicer may elect to treat such amounts as included in the Available Distribution Amount for the Distribution Date in the month of receipt, but is not obligated to do so. If the Master Servicer so elects, such amounts will be deemed to have been received (and any related Realized Loss shall be deemed to have occurred) on the last day of the month prior to the receipt thereof.

(c)    (See Section 3.07(c) of the Standard Terms)

(d)    (See Section 3.07(d) of the Standard Terms)

OHS EAST:160174663.4

(e)    Notwithstanding Section 3.07(a), The Master Servicer shall not waive (or permit a Subservicer to waive) any Prepayment Charge unless: (i) the enforceability thereof shall have been limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally, (ii) the enforcement thereof is illegal, or any local, state or federal agency has threatened legal action if the prepayment penalty is enforced, (iii) the collectability thereof shall have been limited due to acceleration in connection with a foreclosure or other involuntary payment or (iv) such waiver is standard and customary in servicing similar Mortgage Loans and relates to a default or a reasonably foreseeable default and would, in the reasonable judgment of the Master Servicer, maximize recovery of total proceeds taking into account the value of such Prepayment Charge and the related Mortgage Loan.  In no event will the Master Servicer waive a Prepayment Charge in connection with a refinancing of a Mortgage Loan that is not related to a default or a reasonably foreseeable default.  If a Prepayment Charge is waived, but does not meet the standards described above, then the Master Servicer is required to deposit into the Class P Reserve Account the amount of such waived Prepayment Charge at the time that the amount prepaid on the related Mortgage Loan is required to be deposited into the Custodial Account. Notwithstanding any other provisions of this Agreement, any payments made by the Master Servicer in respect of any waived Prepayment Charges pursuant to this Section shall be deemed to be paid outside of the Trust Fund and not part of any REMIC.

Section 3.08    Subservicing Accounts; Servicing Accounts.  (See Section 3.08 of the Standard Terms)

Section 3.09    Access to Certain Documentation and Information Regarding the Mortgage Loans.  (See Section 3.08 of the Standard Terms)

Section 3.10.    Permitted Withdrawals from the Custodial Account. (See    Section 3.10 of the Standard Terms)

Section 3.11.    Maintenance of the Primary Insurance    Policies;  Collections Thereunder. (See Section 3.11 of the Standard Terms)

Section 3.12.    Maintenance of Fire Insurance and    Omissions and Fidelity Coverage. (See Section 3.12 of the Standard Terms)

Section 3.13.    Enforcement of    Due-on-Sale    Clauses;    Assumption    and Modification Agreements; Certain Assignments.    (See Section 3.13 of the Standard Terms)

Section 3.14.    Realization Upon Defaulted Mortgage Loans. (See Section 3.14 of the Standard Terms)

Section 3.15.    Trustee to Cooperate; Release of Mortgage Files.    (See Section 3.15 of the Standard Terms)

Section 3.16.    Servicing and Other Compensation; Compensating Interest.

(a)    (See Section 3.16(a) of the Standard Terms)

21

(b)    Additional servicing compensation in the form of assumption fees, late payment charges, investment income on amounts in the Custodial Account or the Certificate Account or otherwise (but not including Prepayment Charges) shall be retained by the Master Servicer or the Subservicer to the extent provided herein, subject to clause (e) below. Prepayment Charges shall be deposited into the Class P Reserve Account and shall be paid on each Distribution Date to the Holders of the Class P Certificates.

(c)    (See Section 3.16(c) of the Standard Terms)

(d)    (See Section 3.16(d) of the Standard Terms)

(e)    (See Section 3.16(e) of the Standard Terms)

Section 3.17.  Reports to the Trustee and the Company.    (See Section 3.17 of the Standard Terms)

Section 3.18.  Annual Statement as to Compliance. (See Section 3.18 of the Standard Terms)

Section 3.19.  Annual Independent Public Accountants' Servicing Report. (See Section 3.19 of the Standard Terms)

Section 3.20.  Rights of the Company in Respect of the Master Servicer.   (See Section 3.20 of the Standard Terms)

Section 3.21.  Administration of Buydown Funds.   (See Section 3.21 of the Standard Terms)

Section 3.22   Advance Facility. (See Section 3.22 of the Standard Terms)

OHS EAST:160174663.4

## ARTICLE IV

## PAYMENTS TO CERTIFICATEHOLDERS

Section 4.01  <u>Certificate Account.</u>  (See Section 4.01 of the Standard Terms)

Section 4.02  <u>Distributions.</u>

(a)    On each Distribution Date the Master Servicer on behalf of the Trustee (or the Paying Agent appointed by the Trustee) shall distribute to the Master Servicer, in the case of a distribution pursuant to Section 4.02(a)(iii) below, and to each Certificateholder of record on the next preceding Record Date (other than as provided in Section 9.01 of the Standard Terms respecting the final distribution) either in immediately available funds (by wire transfer or otherwise) to the account of such Certificateholder at a bank or other entity having appropriate facilities therefor, if such Certificateholder has so notified the Master Servicer or the Paying Agent, as the case may be, or, if such Certificateholder has not so notified the Master Servicer or the Paying Agent by the Record Date, by check mailed to such Certificateholder at the address of such Holder appearing in the Certificate Register, such Certificateholder's share (which share (A) with respect to each Class of Certificates (other than any Subclass of the Class A-V Certificates), shall be based on the aggregate of the Percentage Interests represented by Certificates of the applicable Class held by such Holder or (B) with respect to any Subclass of the Class A-V Certificates, shall be equal to the amount (if any) distributed pursuant to Section 4.02(a)(i) below to each Holder of a Subclass thereof) of the following amounts, in the following order of priority (subject to the provisions of Section 4.02(b), (c) and (e) below, in each case to the extent of the Available Distribution Amount, and further subject to the provisions of Section 4.02(a)(ii)(X) below with respect to Prepayment Charges, to the extent of Prepayment Charges on deposit in the Class P Reserve Account):

(i)    to the Senior Certificates (other than the Class A-P Certificates and Class P Certificates), on a pro rata basis based on Accrued Certificate Interest payable on such Certificates with respect to such Distribution Date, Accrued Certificate Interest on such Classes of Certificates (or Subclasses, if any, with respect to the Class A-V Certificates) for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date, except as provided in the last paragraph of this Section 4.02(a); and

(ii)    (W)    to the Class A-P Certificates, the Class A-P Principal Distribution Amount (applied to reduce the Certificate Principal Balance of such Senior Certificates);

(X)    to the Class P Certificates, the Prepayment Charges on deposit in the Class P Reserve Account; and

(Y)    to the Senior Certificates (other than the Class A-P Certificates and Class A-V Certificates), in the priorities and amounts set forth in Section 4.02(b) and (c), the sum of the following (applied to reduce the Certificate Principal Balances of such Senior Certificates, as applicable):

23

(A)    the Senior Percentage for such Distribution Date times the sum of the following:

(1)    the principal portion of each Monthly Payment due during the related Due Period on each Outstanding Mortgage Loan (other than the related Discount Fraction of the principal portion of such payment with respect to a Discount Mortgage Loan), whether or not received on or prior to the related Determination Date, minus the principal portion of any Debt Service Reduction (other than the related Discount Fraction of the principal portion of such Debt Service Reductions with respect to each Discount Mortgage Loan) which together with other Bankruptcy Losses exceeds the Bankruptcy Amount;

(2)    the Stated Principal Balance of any Mortgage Loan repurchased during the preceding calendar month (or deemed to have been so repurchased in accordance with Section 3.07(b) of the Standard Terms) pursuant to Section 2.02, 2.03, 2.04 or 4.07 and the amount of any shortfall deposited in the Custodial Account in connection with the substitution of a Deleted Mortgage Loan pursuant to Section 2.03 or 2.04 during the preceding calendar month (other than the related Discount Fraction of such Stated Principal Balance or shortfall with respect to each Discount Mortgage Loan); and

(3)    the principal portion of all other unscheduled collections (other than Principal Prepayments in Full and Curtailments and amounts received in connection with a Cash Liquidation or REO Disposition of a Mortgage Loan described in Section 4.02(a)(ii)(Y)(B) of this Series Supplement, including without limitation Insurance Proceeds, Liquidation Proceeds and REO Proceeds), including Subsequent Recoveries, received during the preceding calendar month (or deemed to have been so received in accordance with Section 3.07(b) of the Standard Terms) to the extent applied by the Master Servicer as recoveries of principal of the related Mortgage Loan pursuant to Section 3.14 of the Standard Terms (other than the related Discount Fraction of the principal portion of such unscheduled collections, with respect to each Discount Mortgage Loan);

(B)    with respect to each Mortgage Loan for which a Cash Liquidation or a REO Disposition occurred during the preceding calendar month (or was deemed to have occurred during such period in accordance with Section 3.07(b) of the Standard Terms) and did not result in any Excess Special Hazard Losses, Excess Fraud Losses, Excess Bankruptcy Losses or Extraordinary Losses, an amount equal to the lesser of (a) the Senior Percentage for such Distribution Date times the Stated Principal Balance of such Mortgage Loan (other than the related Discount Fraction of such Stated Principal Balance, with respect to each Discount Mortgage Loan) and (b) the Senior Accelerated Distribution Percentage for such Distribution Date times the related unscheduled collections (including without limitation Insurance Proceeds, Liquidation Proceeds and REO Proceeds) to the

24

extent applied by the Master Servicer as recoveries of principal of the related Mortgage Loan pursuant to Section 3.14 of the Standard Terms (in each case other than the portion of such unscheduled collections, with respect to a Discount Mortgage Loan, included in clause (C) of the definition of Class A-P Principal Distribution Amount);

(C)    the Senior Accelerated Distribution Percentage for such Distribution Date times the aggregate of all Principal Prepayments in Full received in the related Prepayment Period and Curtailments received in the preceding calendar month (other than the related Discount Fraction of such Principal Prepayments in Full and Curtailments, with respect to each Discount Mortgage Loan);

(D)    any Excess Subordinate Principal Amount for such Distribution Date; and

(E)    any amounts described in subsection (ii)(Y), clauses (A), (B) and (C) of this Section 4.02(a), as determined for any previous Distribution Date, which remain unpaid after application of amounts previously distributed pursuant to this clause (E) to the extent that such amounts are not attributable to Realized Losses which have been allocated to the Subordinate Certificates; minus

(F)    the Capitalization Reimbursement Amount for such Distribution Date, other than the related Discount Fraction of any portion of that amount related to each Discount Mortgage Loan, multiplied by a fraction, the numerator of which is the Senior Principal Distribution Amount, without giving effect to this clause (F), and the denominator of which is the sum of the principal distribution amounts for all Classes of Certificates other than the Class A-P Certificates, without giving effect to any reductions for the Capitalization Reimbursement Amount;

(iii)    if the Certificate Principal Balances of the Subordinate Certificates have not been reduced to zero, to the Master Servicer or a Sub-Servicer, by remitting for deposit to the Custodial Account, to the extent of and in reimbursement for any Advances or Sub-Servicer Advances previously made with respect to any Mortgage Loan or REO Property which remain unreimbursed in whole or in part following the Cash Liquidation or REO Disposition of such Mortgage Loan or REO Property, minus any such Advances that were made with respect to delinquencies that ultimately constituted Excess Special Hazard Losses, Excess Fraud Losses, Excess Bankruptcy Losses or Extraordinary Losses;

(iv)    to the Holders of the Class M-1 Certificates, the Accrued Certificate Interest thereon for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date, except as provided below;

(v)    to the Holders of the Class M-1 Certificates, an amount equal to (x) the Subordinate Principal Distribution Amount for such Class of Certificates for such Distribution Date, minus (y) the amount of any Class A-P Collection Shortfalls for such Distribution Date or remaining unpaid for all previous Distribution Dates, to the extent the amounts available pursuant to clause (x) of Sections 4.02(a)(vii), (ix), (xi), (xiii), (xiv)

25

and (xv) of this Series Supplement are insufficient therefor, applied in reduction of the Certificate Principal Balance of the Class M-1 Certificates;

(vi)    to the Holders of the Class M-2 Certificates, the Accrued Certificate Interest thereon for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date, except as provided below;

(vii)    to the Holders of the Class M-2 Certificates, an amount equal to (x) the Subordinate Principal Distribution Amount for such Class of Certificates for such Distribution Date, minus (y) the amount of any Class A-P Collection Shortfalls for such Distribution Date or remaining unpaid for all previous Distribution Dates, to the extent the amounts available pursuant to clause (x) of Sections 4.02(a) (ix), (xi), (xiii), (xiv) and (xv) are insufficient therefor, applied in reduction of the Certificate Principal Balance of the Class M-2 Certificates;

(viii)    to the Holders of the Class M-3 Certificates, the Accrued Certificate Interest thereon for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date, except as provided below;

(ix)    to the Holders of the Class M-3 Certificates, an amount equal to (x) the Subordinate Principal Distribution Amount for such Class of Certificates for such Distribution Date minus (y) the amount of any Class A-P Collection Shortfalls for such Distribution Date or remaining unpaid for all previous Distribution Dates, to the extent the amounts available pursuant to clause (x) of Sections 4.02(a)(xi), (xiii), (xiv) and (xv) are insufficient therefor, applied in reduction of the Certificate Principal Balance of the Class M-3 Certificates;

(x)    to the Holders of the Class B-1 Certificates, the Accrued Certificate Interest thereon for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date, except as provided below;

(xi)    to the Holders of the Class B-1 Certificates, an amount equal to (x) the Subordinate Principal Distribution Amount for such Class of Certificates for such Distribution Date minus (y) the amount of any Class A-P Collection Shortfalls for such Distribution Date or remaining unpaid for all previous Distribution Dates, to the extent the amounts available pursuant to clause (x) of Sections 4.02(a)(xiii), (xiv) and (xv) are insufficient therefor, applied in reduction of the Certificate Principal Balance of the Class B-1 Certificates;

(xii)    to the Holders of the Class B-2 Certificates, the Accrued Certificate Interest thereon for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date, except as provided below;

(xiii)    to the Holders of the Class B-2 Certificates, an amount equal to (x) the Subordinate Principal Distribution Amount for such Class of Certificates for such Distribution Date minus (y) the amount of any Class A-P Collection Shortfalls for such Distribution Date or remaining unpaid for all previous Distribution Dates, to the extent the amounts available pursuant to clause (x) of Sections 4.02(a)(xiv) and (xv) are

26

insufficient therefor, applied in reduction of the Certificate Principal Balance of the Class B-2 Certificates;

(xiv)    to the Holders of the Class B-3 Certificates, an amount equal to (x) the Accrued Certificate Interest thereon for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date, except as provided below, minus (y) the amount of any Class A-P Collection Shortfalls for such Distribution Date or remaining unpaid for all previous Distribution Dates, to the extent the amounts available pursuant to clause (x) of Section 4.02(a)(xv) are insufficient therefor;

(xv)    to the Holders of the Class B-3 Certificates, an amount equal to (x) the Subordinate Principal Distribution Amount for such Class of Certificates for such Distribution Date minus (y) the amount of any Class A-P Collection Shortfalls for such Distribution Date or remaining unpaid for all previous Distribution Dates applied in reduction of the Certificate Principal Balance of the Class B-3 Certificates;

(xvi)    to the Senior Certificates, on a pro rata basis in accordance with their respective outstanding Certificate Principal Balances, the portion, if any, of the Available Distribution Amount remaining after the foregoing distributions applied to reduce the Certificate Principal Balances of such Senior Certificates, but in no event more than the aggregate of the outstanding Certificate Principal Balances of each such Class of Senior Certificates, and thereafter, to each Class of Subordinate Certificates then outstanding beginning with such Class with the Highest Priority, any portion of the Available Distribution Amount remaining after the Senior Certificates have been retired, applied to reduce the Certificate Principal Balance of each such Class of Subordinate Certificates, but in no event more than the outstanding Certificate Principal Balance of each such Class of Subordinate Certificates; and

(xvii)    to the Class R Certificates, the balance, if any, of the Available Distribution Amount.

Notwithstanding the foregoing, on any Distribution Date, with respect to the Class of Subordinate Certificates outstanding on such Distribution Date with the Lowest Priority, or in the event the Subordinate Certificates are no longer outstanding, the Senior Certificates, Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date will be distributable only to the extent that (1) a shortfall in the amounts available to pay Accrued Certificate Interest on any Class of Certificates results from an interest rate reduction in connection with a Servicing Modification, or (2) such unpaid Accrued Certificate Interest was attributable to interest shortfalls relating to the failure of the Master Servicer to make any required Advance, or the determination by the Master Servicer that any proposed Advance would be a Nonrecoverable Advance with respect to the related Mortgage Loan where such Mortgage Loan has not yet been the subject of a Cash Liquidation or REO Disposition or the related Liquidation Proceeds, Insurance Proceeds and REO Proceeds have not yet been distributed to the Certificateholders.

(b)    Distributions of principal on the Senior Certificates on each Distribution Date will be made as follows:

(i)    the Class A-P Principal Distribution Amount shall be distributed to the Class A-P Certificates, until the Certificate Principal Balance thereof has been reduced to zero;

(ii)    the Senior Principal Distribution Amount shall be distributed sequentially to the Class R Certificates and the Class P Certificates, in that order, until the Certificate Principal Balances thereof have been reduced to zero;

(iii)    the balance of the Senior Principal Distribution Amount remaining after the distributions, if any, described in Section 4.02(b)(ii) above shall be distributed as follows:

(A)    *first*, to the Class A-5 Certificates and Class A-6 Certificates, an amount equal to the Class A-5/A-6 Lockout Amount, on a pro rata basis in accordance with their respective Certificate Principal Balances, until the Certificate Principal Balances thereof have been reduced to zero;

(B)    *second*, to the Class A-1, Class A-2 and Class A-3 Certificates, on a pro rata basis in accordance with their respective Certificate Principal Balances, until the Certificate Principal Balances thereof have been reduced to zero;

(C)    *third*, to the Class A-4 Certificates, until the Certificate Principal Balance thereof has been reduced to zero; and

(D)    *fourth*, to the Class A-5 Certificates and Class A-6 Certificates, on a pro rata basis in accordance with their respective Certificate Principal Balances, until the Certificate Principal Balances thereof have been reduced to zero.

(c)    Notwithstanding Section 4.02(b), on or after the Credit Support Depletion Date, an amount equal to the Class A-P Principal Distribution Amount will be distributed to the Class A-P Certificates and then the Senior Principal Distribution Amount will be distributed to the remaining Senior Certificates (other than the Class A-P Certificates and the Class A-V Certificates) pro rata in accordance with their respective outstanding Certificate Principal Balances.

(d)    After the reduction of the Certificate Principal Balances of the Senior Certificates (other than the Class A-P Certificates) to zero but prior to the Credit Support Depletion Date, the Senior Certificates (other than the Class A-P Certificates) will be entitled to no further distributions of principal thereon and the Available Distribution Amount will be distributed solely to the holders of the Class A-P, Class A-V and Subordinate Certificates, in each case as described herein.

(e)    In addition to the foregoing distributions, with respect to any Subsequent Recoveries, the Master Servicer shall deposit such funds into the Custodial Account pursuant to Section 3.07(b)(iii) of the Standard Terms. If, after taking into account such Subsequent Recoveries, the amount of a Realized Loss is reduced, the amount of such Subsequent Recoveries will be applied to increase the Certificate Principal Balance of the Class of

OHS EAST:160174663.4

Subordinate Certificates with a Certificate Principal Balance greater than zero with the highest payment priority to which Realized Losses, other than Excess Bankruptcy Losses, Excess Fraud Losses, Excess Special Hazard Losses and Extraordinary Losses, have been allocated, but not by more than the amount of Realized Losses previously allocated to that Class of Certificates pursuant to Section 4.05. The amount of any remaining Subsequent Recoveries will be applied to increase from zero the Certificate Principal Balance of the Class of Certificates with the next lower payment priority, up to the amount of Realized Losses previously allocated to that Class of Certificates pursuant to Section 4.05. Any remaining Subsequent Recoveries will in turn be applied to increase from zero the Certificate Principal Balance of the Class of Certificates with the next lower payment priority up to the amount of Realized Losses previously allocated to that Class of Certificates pursuant to Section 4.05, and so on. Holders of such Certificates will not be entitled to any payment in respect of Accrued Certificate Interest on the amount of such increases for any Interest Accrual Period preceding the Interest Accrual Period that relates to the Distribution Date on which such increase occurs. Any such increases shall be applied to the Certificate Principal Balance of each Certificate of such Class in accordance with its respective Percentage Interest.

(f)    [Reserved]

(g)    Each distribution with respect to a Book-Entry Certificate shall be paid to the Depository, as Holder thereof, and the Depository shall be solely responsible for crediting the amount of such distribution to the accounts of its Depository Participants in accordance with its normal procedures. Each Depository Participant shall be responsible for disbursing such distribution to the Certificate Owners that it represents and to each indirect participating brokerage firm (a "brokerage firm") for which it acts as agent. Each brokerage firm shall be responsible for disbursing funds to the Certificate Owners that it represents. None of the Trustee, the Certificate Registrar, the Company or the Master Servicer shall have any responsibility therefor.

(h)    Except as otherwise provided in Section 9.01 of the Standard Terms, if the Master Servicer anticipates that a final distribution with respect to any Class of Certificates will be made on the next Distribution Date, the Master Servicer shall, no later than the Determination Date in the month of such final distribution, notify the Trustee and the Trustee shall, no later than two (2) Business Days after such Determination Date, mail on such date to each Holder of such Class of Certificates a notice to the effect that: (i) the Trustee anticipates that the final distribution with respect to such Class of Certificates will be made on such Distribution Date but only upon presentation and surrender of such Certificates at the office of the Trustee or as otherwise specified therein, and (ii) no interest shall accrue on such Certificates from and after the end of the related Interest Accrual Period. In the event that Certificateholders required to surrender their Certificates pursuant to Section 9.01(c) of the Standard Terms do not surrender their Certificates for final cancellation, the Trustee shall cause funds distributable with respect to such Certificates to be withdrawn from the Certificate Account and credited to a separate escrow account for the benefit of such Certificateholders as provided in Section 9.01(d) of the Standard Terms.

OHS EAST:160174663.4

Section 4.03    Statements to Certificateholders; Statements to the Rating
Agencies; Exchange Act Reporting. (See Section 4.03 of the Standard Terms)

Section 4.04    Distribution of Reports to the Trustee and the Company; Advances
by the Master Servicer. (See Section 4.04 of the Standard Terms)

Section 4.05    Allocation of Realized Losses.

Prior to each Distribution Date, the Master Servicer shall determine the total amount of
Realized Losses, if any, that resulted from any Cash Liquidation, Servicing Modification, Debt
Service Reduction, Deficient Valuation or REO Disposition that occurred during the related
Prepayment Period or, in the case of a Servicing Modification that constitutes a reduction of the
interest rate on a Mortgage Loan, the amount of the reduction in the interest portion of the
Monthly Payment due during the related Due Period.  The amount of each Realized Loss shall be
evidenced by an Officers' Certificate.  All Realized Losses, other than Excess Special Hazard
Losses, Extraordinary Losses, Excess Bankruptcy Losses or Excess Fraud Losses, shall be
allocated as follows:  first, to the Class B-3 Certificates, until the Certificate Principal Balance
thereof has been reduced to zero; second, to the Class B-2 Certificates until the Certificate
Principal Balance thereof has been reduced to zero; third, to the Class B-1 Certificates until the
Certificate Principal Balance thereof has been reduced to zero; fourth, to the Class M-3
Certificates until the Certificate Principal Balance thereof has been reduced to zero; fifth, to the
Class M-2 Certificates until the Certificate Principal Balance thereof has been reduced to zero;
sixth, to the Class M-1 Certificates until the Certificate Principal Balance thereof has been
reduced to zero; and, thereafter, if any such Realized Loss is on a Discount Mortgage Loan, to
the Class A-P Certificates in an amount equal to the related Discount Fraction of the principal
portion of the Realized Loss until the Certificate Principal Balance of the Class A-P Certificates
has been reduced to zero, and the remainder of such Realized Losses on the Discount Mortgage
Loans and the entire amount of such Realized Losses on the Non-Discount Mortgage Loans shall
be allocated among all Senior Certificates (other than the Class A-P Certificates) on a pro rata
basis, as described below, provided, however, that up to $1,325,000 of Realized Losses
otherwise allocable to the Class A-4 Certificates and up to $7,738,000 of Realized Losses
otherwise allocable to the Class A-5 Certificates, will be allocated to the Class A-6 Certificates,
in each case, until the Certificate Principal Balance of the Class A-6 Certificates has been
reduced to zero.  The principal portion of any Excess Special Hazard Losses, Excess Bankruptcy
Losses, Excess Fraud Losses and Extraordinary Losses on the Discount Mortgage Loans shall be
allocated to the Class A-P Certificates in an amount equal to the related Discount Fraction
thereof and the remainder of the principal portion and the entire interest portion of such Realized
Losses on the Discount Mortgage Loans and the entire principal and interest portion of such
Realized Losses on Non-Discount Mortgage Loans will be allocated among the Senior
Certificates (other than the Class A-P Certificates) and the Subordinate Certificates, on a pro rata
basis, as described below.

As used herein, an allocation of a Realized Loss on a "pro rata basis" among two or more
specified Classes of Certificates means an allocation on a pro rata basis, among the various
Classes so specified, to each such Class of Certificates, on the basis of their then outstanding
Certificate Principal Balances prior to giving effect to distributions to be made on such
Distribution Date in the case of the principal portion of a Realized Loss or based on the Accrued

OHS EAST:160174663.4

Certificate Interest thereon payable on such Distribution Date (without regard to any Compensating Interest for such Distribution Date) in the case of an interest portion of a Realized Loss. Except as provided in the following sentence, any allocation of the principal portion of Realized Losses (other than Debt Service Reductions) to a Class of Certificates shall be made by reducing the Certificate Principal Balance thereof by the amount so allocated, which allocation shall be deemed to have occurred on such Distribution Date; provided that no such reduction shall reduce the aggregate Certificate Principal Balance of the Certificates below the aggregate Stated Principal Balance of the Mortgage Loans. Any allocation of the principal portion of Realized Losses (other than Debt Service Reductions) to the Subordinate Certificates then outstanding with the Lowest Priority shall be made by operation of the definition of "Certificate Principal Balance" and by operation of the provisions of Section 4.02(a). Allocations of the interest portions of Realized Losses (other than any interest rate reduction resulting from a Servicing Modification) shall be made in proportion to the amount of Accrued Certificate Interest and by operation of the definition of "Accrued Certificate Interest" and by operation of the provisions of Section 4.02(a). Allocations of the interest portion of a Realized Loss resulting from an interest rate reduction in connection with a Servicing Modification shall be made by operation of the provisions of Section 4.02(a). Allocations of the principal portion of Debt Service Reductions shall be made by operation of the provisions of Section 4.02(a). All Realized Losses and all other losses allocated to a Class of Certificates hereunder will be allocated among the Certificates of such Class in proportion to the Percentage Interests evidenced thereby; provided that if any Subclasses of the Class A-V Certificates have been issued pursuant to Section 5.01(c) of the Standard Terms, such Realized Losses and other losses allocated to the Class A-V Certificates shall be allocated among such Subclasses in proportion to the respective amounts of Accrued Certificate Interest payable on such Distribution Date that would have resulted absent such reductions.

Section 4.06    Reports of Foreclosures and Abandonment of Mortgaged Property. (See Section 4.06 of the Standard Terms)

Section 4.07    Optional Purchase of Defaulted Mortgage Loans. (See Section 4.07 of the Standard Terms)

Section 4.08    Surety Bond. (See Section 4.08 of the Standard Terms)

Section 4.09    Class P Reserve Account.

(a)    On or before the Closing Date, the Trustee shall establish a Class P Reserve Account on behalf of the Holders of the Class P Certificates. The Class P Reserve Account must be an Eligible Account. The Class P Reserve Account shall be entitled "Class P Reserve Account, Deutsche Bank Trust Company Americas, as Trustee for the benefit of Holders of Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QS3," (the "Class P Reserve Account"). All amounts received by the Master Servicer in connection with Prepayment Charges on the Prepayment Charge Loans shall be deposited by the Master Servicer into the Class P Reserve Account upon receipt thereof. Funds on deposit in the Class P Reserve Account shall be held in trust by the Trustee for the holder of the Class P Certificates. Amounts on deposit in the Class P Reserve Account shall be held uninvested, and the Trustee shall have no liability for interest or other compensation thereon.

31

(b)      On each Distribution Date, the Master Servicer on behalf of the Trustee (or the Paying Agent appointed by the Trustee) shall withdraw the amount then on deposit in the Class P Reserve Account representing Prepayment Charges in respect of the Prepayment Charge Loans received after the immediately preceding Distribution Date, and distribute such amounts to the Holders of the Class P Certificates in accordance with Section 4.02(a)(ii)(X).

OHS East:160174663.4

## ARTICLE V

## THE CERTIFICATES

(a)     (See Section 5.02(a) of the Standard Terms)

(b)     (See Section 5.02(b) of the Standard Terms)

(c)     (See Section 5.02(c) of the Standard Terms)

(d)     No transfer, sale, pledge or other disposition of a Class B Certificate or Class P Certificate shall be made unless such transfer, sale, pledge or other disposition is exempt from the registration requirements of the Securities Act of 1933, as amended, and any applicable state securities laws or is made in accordance with said Act and laws. In the event that a transfer of a Class B or Class P Certificate, other than the transfer of an interest in a Class P Certificate that is held by a Transferor and to be held by a Transferee as an interest in a Rule 144A Global Offered Certificate, either (i)(A) the Trustee shall require a written Opinion of Counsel acceptable to and in form and substance satisfactory to the Trustee and the Company that such transfer may be made pursuant to an exemption, describing the applicable exemption and the basis therefor, from said Act and laws or is being made pursuant to said Act and laws, which Opinion of Counsel shall not be an expense of the Trustee, the Company or the Master Servicer (except that, if such transfer is made by the Company or the Master Servicer or any Affiliate thereof, the Company or the Master Servicer shall provide such Opinion of Counsel at their own expense); provided that such Opinion of Counsel will not be required in connection with the initial transfer of any such Certificate by the Company or any Affiliate thereof to the Company or an Affiliate of the Company, (B) the Trustee shall require the transferee to execute a representation letter, substantially in the form of Exhibit H to the Standard Terms (other than paragraph 6.(b) thereto with respect to a transfer of a Class P Certificate), and (C) the Trustee shall require the Transferor to execute a representation letter, substantially in the form of Exhibit I to the Standard Terms, each acceptable to and in form and substance satisfactory to the Company and the Trustee certifying to the Company and the Trustee the facts surrounding such transfer, which representation letters shall not be an expense of the Trustee, the Company or the Master Servicer; provided, however, that such representation letters will not be required in connection with any transfer of any such Certificate by the Company or any Affiliate thereof to the Company or an Affiliate of the Company, and the Trustee shall be entitled to conclusively rely upon a representation (which, upon the request of the Trustee, shall be a written representation) from the Company, of the status of such transferee as an Affiliate of the Company or (ii) the prospective transferee of such a Certificate shall be required to provide the Trustee, the Company and the Master Servicer with an investment letter substantially in the form of Exhibit J to the Standard Terms (other than paragraph 3.(b) thereto with respect to a transfer of a Class P Certificate) (or such other form as the Company in its sole discretion deems acceptable), which investment letter shall not be an expense of the Trustee, the Company or the Master Servicer, and which investment letter states that, among other things, such transferee (A) is a "qualified institutional buyer" as defined under Rule 144A, acting for its own account or the accounts of other "qualified institutional buyers"

OHS EAST:160174663.4

as defined under Rule 144A, and (B) is aware that the proposed transferor intends to rely on the exemption from registration requirements under the Securities Act of 1933, as amended, provided by Rule 144A.

The Holder of any such Class B Certificate or Class P Certificate desiring to effect any such transfer, sale, pledge or other disposition shall, and does hereby agree to, indemnify the Trustee, the Company, the Master Servicer and the Certificate Registrar against any liability that may result if the transfer, sale, pledge or other disposition is not so exempt or is not made in accordance with such federal and state laws. If any transfer of a Class P Certificate held by a Transferor and to be held by a Transferee as an interest in a Rule 144A Global Offered Certificate is to be made without registration under the 1933 Act, the Transferor shall be deemed to have made each of the certifications set forth in Exhibit I and Exhibit J to the Standard Terms as of the transfer date and the Transferee shall be deemed to have made each of the certifications set forth in Exhibit J to the Standard Terms (other than as set forth in paragraph 3(b) with respect to the Class P Certificates) as of the transfer date as if such Class P Certificate were in physical form.

(e)    (i)    In the case of any Class B, Class P or Class R Certificate presented for registration in the name of any Person, either (A) the Trustee shall require an Opinion of Counsel addressed to the Trustee, the Company and the Master Servicer, acceptable to and in form and substance satisfactory to the Trustee to the effect that the purchase or holding of such Class B, Class P or Class R Certificate is permissible under applicable law, will not constitute or result in any non-exempt prohibited transaction under Section 406 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or Section 4975 of the Code (or comparable provisions of any subsequent enactments), and will not subject the Trustee, the Company or the Master Servicer to any obligation or liability (including obligations or liabilities under ERISA or Section 4975 of the Code) in addition to those undertaken in this Agreement, which Opinion of Counsel shall not be an expense of the Trustee, the Company or the Master Servicer or (B) the prospective Transferee shall be required to provide the Trustee, the Company and the Master Servicer with a certification to the effect set forth in paragraph 6 of Exhibit H to the Standard Terms (with respect to any Class B Certificate), paragraph 6(b) of Exhibit H to the Standard Terms (with respect to any Class P Certificate), or Exhibit G-1 (with respect to any Class R Certificate), which the Trustee may rely upon without further inquiry or investigation, or such other certifications as the Trustee may deem desirable or necessary in order to establish that such Transferee or the Person in whose name such registration is requested either (a) is not an employee benefit plan or other plan subject to the prohibited transaction provisions of ERISA or Section 4975 of the Code, or any Person (including an investment manager, a named fiduciary or a trustee of any such plan) who is using "plan assets" of any such plan to effect such acquisition (each, a "Plan Investor") or (b) in the case of any Class B Certificate, the following conditions are satisfied: (i) such Transferee is an insurance company, (ii) the source of funds used to purchase or hold such Certificate (or interest therein) is an "insurance company general account" (as defined in U.S. Department of Labor Prohibited Transaction Class Exemption ("PTCE") 95-60,

OHS EAST:160174663.4

and (iii) the conditions of PTCE 95-60 have been satisfied (each entity that satisfies this clause (b), a "Complying Insurance Company").  In the case of any Class P Certificate to be held by a Transferee as an interest in a Rule 144A Global Offered Certificate, the Transferee shall be deemed by virtue of its purchase or holding of an interest in such Certificate to have made each of the certifications set forth in paragraph 6(a) of Exhibit H to the Standard Terms as of the transfer date, as if such Class P Certificate were in physical form.

(ii)    Any Transferee of a Class M Certificate will be deemed to have represented by virtue of its purchase or holding of such Certificate (or interest therein) that either (a) such Transferee is not a Plan Investor, (b) it has acquired and is holding such Certificate in reliance on Prohibited Transaction Exemption ("PTE") 94-29, as most recently amended, PTE 2002-41, 67 Fed. Reg. 54487 (August 22, 2002) (the "RFC Exemption"), and that it understands that there are certain conditions to the availability of the RFC Exemption including that such Certificate must be rated, at the time of purchase, not lower than "BBB-" (or its equivalent) by Standard & Poor's, Fitch or Moody's or (c) such Transferee is a Complying Insurance Company.

(iii)    (A)  If any Certificate (or any interest therein) is acquired or held by any Person that does not satisfy the conditions described in paragraph (i) or (ii), as applicable, above, then the last preceding Transferee that either (I) is not a Plan Investor or (II) acquired such Certificate in compliance with the conditions described in paragraph (i) or (ii), as applicable, shall be restored, to the extent permitted by law, to all rights and obligations as Certificate Owner thereof retroactive to the date of such Transfer of such Certificate.  The Trustee shall be under no liability to any Person for making any payments due on such Certificate to such preceding Transferee.

(B)    Any purported Certificate Owner whose acquisition or holding of any Certificate (or interest therein) was effected in violation of the restrictions in this Section 5.02(e) shall indemnify and hold harmless the Company, the Trustee, the Master Servicer, any Subservicer, the Underwriters and the Trust Fund from and against any and all liabilities, claims, costs or expenses incurred by such parties as a result of such acquisition or holding.

(f)    (See Section 5.02(f) of the Standard Terms)

(g)    (See Section 5.02(g) of the Standard Terms)

(h)    (See Section 5.02(h) of the Standard Terms)

35

# ARTICLE VI

## THE COMPANY AND THE MASTER SERVICER

### (See Article VI of the Standard Terms)

OHS East:160174663.4

# ARTICLE VII

## DEFAULT

**(See Article VII of the Standard Terms)**

.

OHS East:160174663.4

## ARTICLE VIII

## CONCERNING THE TRUSTEE

## (See Article VIII of the Standard Terms)

.

.

OHS EAST:160174663.4

# ARTICLE IX

## TERMINATION

### (See Article IX of the Standard Terms)

OHS East:160174663.4

## ARTICLE X

## REMIC PROVISIONS

Section 10.01        REMIC Administration. (See Section 10.01 of the Standard Terms)

Section 10.02        Master Servicer; REMIC Administrator and Trustee Indemnification. (See Section 10.02 of the Standard Terms)

Section 10.03        Designation of REMIC.

The REMIC Administrator shall make an election to treat the entire segregated pool of assets described in the definition of REMIC and subject to this Agreement (including the Mortgage Loans) as a REMIC (the "REMIC") for federal income tax purposes.

The Class A-1, Class A-2, Class A-3, Class A-4, Class A-5, Class A-6, Class A-P, Class M-1, Class M-2, Class M-3, Class B-1, Class B-2 and Class B-3 Certificates and the Uncertificated REMIC Regular Interests Z, the rights in and to which will be represented by the Class A-V Certificates, will be "regular interests" in the REMIC, and the Class R Certificates will be the sole class of "residual interests" in the  REMIC for purposes of the REMIC Provisions (as defined herein) under the federal income tax law.  The Class P Certificates will not be "regular interests" in the REMIC.  On and after the date of issuance of any Subclass of Class A-V Certificates pursuant to Section 5.01(c) of the Standard Terms, any such Subclass will represent the Uncertificated REMIC Regular Interest or Interests Z specified by the initial Holder of the Class A-V Certificates pursuant to said Section.

Section 10.04        Distributions on the Uncertificated REMIC Regular Interests Z.

(a) The amounts distributed hereunder with respect to the Class A-V Certificates shall be deemed to have been distributed in respect of the Uncertificated REMIC Regular Interests Z in accordance with their respective Uncertificated REMIC Regular Interest Z Distribution Amounts, as such Uncertificated REMIC Regular Interests Z comprise the Class A-V Certificates.

(b) Realized Losses allocated to the Class A-V Certificates under Section 4.05 shall be deemed allocated to the Uncertificated REMIC Regular Interests Z pro rata  according to the respective amounts of Uncertificated Accrued Interest that would have accrued on such Uncertificated REMIC Regular Interests Z for the Distribution Date for which such allocation is being made in the absence of such allocations.

Section 10.05        Compliance with Withholding Requirements.

Notwithstanding any other provision of this Agreement, the Trustee or any Paying Agent, as applicable, shall comply with all federal withholding requirements respecting

OHS EAST:160174663.4

payments to Certificateholders, including interest or original issue discount payments or advances thereof that the Trustee or any Paying Agent, as applicable, reasonably believes are applicable under the Code. The consent of Certificateholders shall not be required for such withholding. In the event the Trustee or any Paying Agent, as applicable, does withhold any amount from interest or original issue discount payments or advances thereof to any Certificateholder pursuant to federal withholding requirements, the Trustee or any Paying Agent, as applicable, shall indicate the amount withheld to such Certificateholder pursuant to the terms of such requirements.

OHS EAST:160174663.4

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

Section 11.01    <u>Amendment</u>.  (See Section 11.01 of the Standard Terms)

Section 11.02    <u>Recordation of Agreement; Counterparts</u>.  (See Section 11.02 of the Standard Terms)

Section 11.03    <u>Limitation on Rights of Certificateholders</u>.  (See Section 11.03 of the Standard Terms)

Section 11.04    <u>Governing Law</u>.  (See Section 11.04 of the Standard Terms)

Section 11.05    <u>Notices</u>.  All demands and notices hereunder shall be in writing and shall be deemed to have been duly given if personally delivered at or mailed by registered mail, postage prepaid (except for notices to the Trustee which shall be deemed to have been duly given only when received), to the appropriate address for each recipient listed in the table below or, in each case, such other address as may hereafter be furnished in writing to the Master Servicer, the Trustee and the Company, as applicable:

| Recipient | Address |
|---|---|
| Company | 8400 Normandale Lake Boulevard<br>Suite 250, Minneapolis, Minnesota 55437,<br>Attention: President |
| Master Servicer | 2255 N. Ontario Street, Suite 400<br>Burbank, California 91504-2130,<br>Attention: Managing Director/Master Servicing |
| Trustee | Corporate Trust Office<br>1761 East St. Andrew Place<br>Santa Ana, California 92705-4934,<br>Attention: Residential Accredit Loans, Inc. Series 2007-QS3<br><br>The Trustee designates its offices located at DB Services Tennessee, 648 Grassmere Park Road, Nashville, TN 37211-3658, Attn: Transfer Unit, for the purposes of Section 8.12 of the Standard Terms |
| Fitch Ratings | One State Street Plaza<br>New York, New York 10004 |
| Moody's Investors Service, Inc. | 99 Church Street, 4th Floor<br>New York, New York 10004 |

| Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. | 55 Water Street New York, New York 10041 |
|---|---|

Any notice required or permitted to be mailed to a Certificateholder shall be given by first class mail, postage prepaid, at the address of such holder as shown in the Certificate Register. Any notice so mailed within the time prescribed in this Agreement shall be conclusively presumed to have been duly given, whether or not the Certificateholder receives such notice.

Section 11.06    Required Notices to Rating Agency and Subservicers. (See Section 11.06 of the Standard Terms)

Section 11.07    Severability of Provisions. (See Section 11.07 of the Standard Terms)

Section 11.08    Supplemental Provisions for Resecuritization. (See Section 11.08 of the Standard Terms)

Section 11.09    Allocation of Voting Rights.

Ninety-eight percent of all Voting Rights will be allocated among all Holders of the Certificates, other than the Interest Only Certificates and Class R Certificates, in proportion to their then outstanding Certificate Principal Balances of their respective Certificates, in accordance with each Class's Percentage Interests; 1.0% of all Voting Rights shall be allocated among the Holders of the Class A-V Certificates, in accordance with their respective Percentage Interests and 1.0% of all Voting Rights shall be allocated among the Holders of the Class R Certificates, in accordance with their respective Percentage Interests.

Section 11.10    No Petition.

The Company, Master Servicer and the Trustee, by entering into this Agreement, and each Certificateholder, by accepting a Certificate, hereby covenant and agree that they will not at any time institute against the Trust Fund, or join in any institution against the Trust Fund of, any bankruptcy proceedings under any United States federal or state bankruptcy or similar law in connection with any obligation with respect to the Certificates or this Agreement.

OHS EAST:160174663.4

IN WITNESS WHEREOF, the Company, the Master Servicer and the Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized and their respective seals, duly attested, to be hereunto affixed, all as of the day and year first above written.

RESIDENTIAL ACCREDIT LOANS, INC.

By:_____
    Name:  Heather Anderson
    Title:   Vice President

RESIDENTIAL FUNDING COMPANY, LLC

By:_____
    Name: Marguerite Steffes
    Title:  Associate

DEUTSCHE BANK TRUST COMPANY
    AMERICAS, as Trustee

By:_____
    Name:
    Title:

By:_____
    Name:
    Title:

IN WITNESS WHEREOF, the Company, the Master Servicer and the Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized and their respective seals, duly attested, to be hereunto affixed, all as of the day and year first above written.

RESIDENTIAL ACCREDIT LOANS, INC.

By:_____
       Name: Heather Anderson
       Title:  Vice President

RESIDENTIAL FUNDING COMPANY, LLC

By:_____
       Name: Marguerite Steffes
       Title:  Associate

DEUTSCHE BANK TRUST COMPANY
     AMERICAS, as Trustee

By:_____
       Name:
            Karlene Benvenuto
       Title:   Authorized Signer

By:_____
       Name:
       Title:     Amy Stoddard
             Authorized Signer

STATE OF MINNESOTA        )
                                     ) ss.:

COUNTY OF HENNEPIN     )

       On the 27th day of February, 2007 before me, a notary public in and for said State, personally appeared Heather Anderson, known to me to be a Vice President of Residential Accredit Loans, Inc., one of the corporations that executed the within instrument, and also known to me to be the person who executed it on behalf of said corporation, and acknowledged to me that such corporation executed the within instrument.

       IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

AMY SUE OLSON
Notary Public
Minnesota
My Commission Expires Jan 31 2010

_____
Notary Public

[Notarial Seal]

STATE OF MINNESOTA        )
                          ) ss.:
COUNTY OF HENNEPIN        )

On the 27th day of February, 2007 before me, a notary public in and for said State, personally appeared Marguerite Steffes, known to me to be an Associate of Residential Funding Company, LLC, one of the corporations that executed the within instrument, and also known to me to be the person who executed it on behalf of said corporation, and acknowledged to me that such corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

AMY SUE OLSON
Notary Public
Minnesota
My Commission Expi 25 Jan 31 2010

_____
Notary Public

[Notarial Seal]

STATE OF CALIFORNIA          )
                             ) ss.:
COUNTY OF ORANGE             )

On the 22nd day of February, 2007 before me, a notary public in and for said State, personally appeared Amy Stoddard known to me to be a(n) authorized officer Deutsche Bank Trust Company Americas, the New York banking corporation that executed the within instrument, and also known to me to be the person who executed it on behalf of said banking corporation and acknowledged to me that such banking corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

_____
                    Notary Public

[Notarial Seal]

ERICA MARIE JUDD
Commission # 1650482
Notary Public - California
Orange County
My Comm. Expires Mar 10, 2010

STATE OF CALIFORNIA          )
                             ) ss.:
COUNTY OF ORANGE             )

On the 22nd day of February, 2007 before me, a notary public in and for said State, personally appeared Karleno Benton Uto known to me to be a(n) authorized signer Deutsche Bank Trust Company Americas, the New York banking corporation that executed the within instrument, and also known to me to be the person who executed it on behalf of said banking corporation and acknowledged to me that such banking corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

_____
                    Notary Public

[Notarial Seal]



ERICA MARIE JUDD
Commission # 1650482
Notary Public - California
Orange County
My Comm. Expires Mar 10, 2010

Series Supplement

# EXHIBIT ONE

## MORTGAGE LOAN SCHEDULE

[held by the Master Servicer]

.

# EXHIBIT TWO

## SCHEDULE OF DISCOUNT FRACTIONS

[held by the Master Servicer]

**EXHIBIT THREE**

## INFORMATION TO BE INCLUDED IN
## MONTHLY DISTRIBUTION DATE STATEMENT

(i)    the applicable Record Date, Determination Date and Distribution Date;

(ii)    the aggregate amount of payments received with respect to the Mortgage Loans, including prepayment amounts;

(iii)    the Servicing Fee and Subservicing Fee payable to the Master Servicer and the applicable Subservicer;

(iv)    the amount of any other fees or expenses paid;

(v)    (a) the amount of such distribution to the Certificateholders of such Class applied to reduce the Certificate Principal Balance thereof, and (b) the aggregate amount included therein representing Principal Prepayments;

(vi)    the amount of such distribution to Holders of such Class of Certificates allocable to interest;

(vii)    if the distribution to the Holders of such Class of Certificates is less than the full amount that would be distributable to such Holders if there were sufficient funds available therefor, the amount of the shortfall;

(viii)    the aggregate Certificate Principal Balance of each Class of Certificates before and after giving effect to the amounts distributed on such Distribution Date, separately identifying any reduction thereof due to Realized Losses other than pursuant to an actual distribution of principal;

(ix)    the aggregate Certificate Principal Balance of each of the Class A Certificates, Class M Certificates and Class B Certificates as of the Closing Date;

(x)    the weighted average remaining term to maturity of the Mortgage Loans after giving effect to the amounts distributed on such Distribution Date;

(xi)    the weighted average Mortgage Rates of the Mortgage Loans after giving effect to the amounts distributed on such Distribution Date;

(xii)    if applicable, the Special Hazard Amount, Fraud Loss Amount and Bankruptcy Amount and as of the close of business on the applicable Distribution Date;

(xiii)    the Pool Stated Principal Balance and number of the Mortgage Loans after giving effect to the distribution of principal on such Distribution Date and the number of Mortgage Loans at the beginning and end of the related Due Period;

(xiv)    on the basis of the most recent reports furnished to it by Sub-Servicers, the number and Stated Principal Balances of Mortgage Loans that are Delinquent (A) 30-59 days, (B) 60-89 days and (C) 90 or more days and the number and Stated Principal Balances of Mortgage Loans that are in foreclosure;

(xv)    the aggregate amount of Realized Losses for such Distribution Date;

(xvi)    the amount, terms and general purpose of any Advance by the Master Servicer pursuant to Section 4.04;

(xvii)    any material modifications, extensions or waivers to the terms of the Mortgage Loans during the Due Period or that have cumulatively become material over time;

(xviii)    any material breaches of Mortgage Loan representations or warranties or covenants in the Agreement;

(xix)    the related Subordinate Principal Distribution Amount;

(xx)    the number, aggregate principal balance and Stated Principal Balances of any REO Properties;

(xxi)    the aggregate Accrued Certificate Interest remaining unpaid, if any, for each Class of Certificates, after giving effect to the distribution made on such Distribution Date;

(xxii)    the Pass-Through Rate with respect to the Class A-V Certificates;

(xxiii)    the Notional Amount with respect to each class of Interest Only Certificates;

(xxiv)    the occurrence of the Credit Support Depletion Date;

(xxv)    the related Senior Accelerated Distribution Percentage applicable to such distribution;

(xxvi)    the related Senior Percentage and Subordinate Class Percentage for such Distribution Date;

(xxvii)    the aggregate amount of any recoveries on previously foreclosed loans; and

(xxviii)    the amount of any payment made from the Class P Reserve Account on such Distribution Date and the balance of the Class P Reserve Account after giving effect to such amounts.

In the case of information furnished pursuant to clauses (i) and (ii) above, the amounts shall be expressed as a dollar amount per Certificate with a $1,000 denomination.

The Trustee's internet website is www.tss.db.com/invr.

# EXHIBIT FOUR

## STANDARD TERMS OF POOLING AND SERVICING
## AGREEMENT DATED AS OF DECEMBER 1, 2006