## Exhibit B-3

### Seller/Servicer Contract and Client Contract

# SELLER/SERVICER CONTRACT

GMAC ⧉ RFC

This Seller/Servicer Contract (as may be amended, supplemented or otherwise modified from time to time, this "Contract") is made this ___24th__ day of ___November___, 19_92_, by and between Residential Funding Corporation, its successors and assigns ("Residential Funding®") and ____GMAC Mortgage Corporation of Iowa____ (the "Seller/Servicer", and, together with Residential Funding, the "parties" and each, individually, a "party").

WHEREAS, the Seller/Servicer desires to sell Loans to, and/or service Loans for, Residential Funding, and Residential Funding desires to purchase Loans from the Seller/Servicer and/or have the Seller/Servicer service various of its Loans, pursuant to the terms of this Contract and the Residential Funding Seller and Servicer Guides incorporated herein by reference, as amended, supplemented or otherwise modified, from time to time (together, the "Guides").

NOW, THEREFORE, in consideration of the premises, and the terms, conditions and agreements set forth below, the parties agree as follows:

**1. Incorporation of Guides by Reference.**

The Seller/Servicer acknowledges that it has received and read the Guides. All provisions of the Guides are incorporated by reference into and made a part of this Contract, and shall be binding upon the parties; *provided, however*, that the Seller/Servicer shall be entitled to sell Loans to and/or service Loans for Residential Funding only if and for so long as it shall have been authorized to do so by Residential Funding in writing; *provided, further* that if the Seller/Servicer does not service Loans for Residential Funding, the provisions of the Residential Funding Servicer Guide shall be inapplicable, and if the Seller/Servicer does not sell Loans to Residential Funding, the provisions of the Residential Funding Seller Guide shall be inapplicable, in each case until such time as the Seller/Servicer does service Loans for or, as appropriate, does sell Loans to Residential Funding. Specific reference in this Contract to particular provisions of the Guides and not to other provisions does not mean that those provisions of the Guides not specifically cited in this Contract are not applicable. All terms used herein shall have the same meanings as such terms have in the Guides, unless the context clearly requires otherwise.

**2. Amendments.**

This Contract may not be amended or modified orally, and no provision of this Contract may be waived or amended except in writing signed by the party against whom enforcement is sought. Such a written waiver or amendment must expressly reference this Contract. However, by their terms, the Guides may be amended or supplemented by Residential Funding from time to time. Any such amendment(s) to the Guides shall be binding upon the parties hereto.

**3. Representations and Warranties.**

    a. *Reciprocal Representations and Warranties.*

    The Seller/Servicer and Residential Funding each represents and warrants to the other that as of the date of this Contract:

        (1) Each party is duly organized, validly existing, and in good standing under the laws of its jurisdiction of organization, is qualified, if necessary, to do business in each jurisdiction in which it is required to be so qualified, and has the requisite power and authority to enter into this Contract and all other agreements which are contemplated by this Contract and to carry out its obligations hereunder and under the Guides.

        (2) This Contract has been duly authorized, executed and delivered by each party and constitutes a valid and legally binding agreement of each party enforceable in accordance with its terms.

        (3) There is no action, proceeding or investigation pending or threatened, nor any basis therefor known to either party, that questions the validity or prospective validity of this Contract.

(4) Insofar as its capacity to carry out any obligation under this Contract is concerned, neither party is in violation of any charter, articles of incorporation, bylaws, mortgage, indenture, indebtedness, agreement, instrument, judgment, decree, order, statute, rule or regulation and no such obligation adversely affects its capacity to fulfill any of its promises or duties under this Contract. Its execution of, and performance pursuant to, this Contract will not result in a violation of any of the foregoing.

b. *Seller/Servicer's Representations, Warranties and Covenants.*

In addition to the representations, warranties and covenants made by the Seller/Servicer pursuant to subparagraph (a) of this paragraph 3, the Seller/Servicer makes the representations, warranties and covenants set forth in the Guides and, upon request, agrees to deliver to Residential Funding the certified Resolution of Board of Directors which authorizes the execution and delivery of this Contract.

**4. Remedies of Residential Funding.**

If an Event of Seller Default, or an Event of Servicer Default shall occur, Residential Funding may, at its option, exercise one or more of those remedies set forth in the Guides.

**5. Seller/Servicer's Status as Independent Contractor.**

At no time shall the Seller/Servicer represent that it is acting as an agent of Residential Funding. The Seller/Servicer shall, at all times, act as an independent contractor.

**6. Prior Agreements Superseded.**

This Contract restates, amends and supersedes any and all prior Seller Contracts or Servicer Contracts between the parties except that any subservicing agreement executed by the Seller/Servicer in connection with any loan-security exchange transaction shall not be affected.

**7. Assignment.**

This Contract may not be assigned or transferred, in whole or in part, by the Seller/Servicer without the prior written consent of Residential Funding. Residential Funding may sell, assign, convey, hypothecate, pledge or in any other way transfer, in whole or in part, without restriction, its rights under this Contract and the Guides with respect to any Commitment or Loan. Unless Residential Funding specifies otherwise, any such sale, assignment, conveyance, hypothecation, pledge or transfer shall be effective upon written notice by Residential Funding to the Seller/Servicer.

**8. Notices.**

All notices, requests, demands or other communications that are to be given under this Contract shall be in writing, addressed to the appropriate parties and sent by certified mail, return receipt requested, postage prepaid, to the addresses below. However, another name or address or both may be substituted by the Seller/Servicer pursuant to the requirements of this paragraph 8, or by Residential Funding pursuant to an amendment to the Guides.

If to Residential Funding, notice must be sent to the appropriate address specified in the Guides.

If to the Seller/Servicer, notice must be sent to:

GMAC Mortgage Corporation of Iowa

3451 Hammond Avenue / PO Box 780

Waterloo, IA 50704-0780

Attention:   Beth Kirkevold, Servicing Accounting

9.    **Jurisdiction and Venue.**

Each of the parties irrevocably submits to the jurisdiction of any state or federal court located in Hennepin County, Minnesota, over any action, suit or proceeding to enforce or defend any right under this Contract or otherwise arising from any loan sale or servicing relationship existing in connection with this Contract, and each of the parties irrevocably agrees that all claims in respect of any such action or proceeding may be heard or determined in such state or federal court. Each of the parties irrevocably waives the defense of an inconvenient forum to the maintenance of any such action or proceeding and any other substantive or procedural rights or remedies it may have with respect to the maintenance of any such action or proceeding in any such forum. Each of the parties agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment or in any other manner provided by law. Each of the parties further agrees not to institute any legal actions or proceedings against the other party or any director, officer, employee, attorney, agent or property of the other party, arising out of or relating to this Contract in any court other than as hereinabove specified in this paragraph 9.

10.    **Miscellaneous.**

This Contract, including all documents incorporated by reference herein, constitutes the entire understanding between the parties hereto and supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether written or oral, with respect to the transactions contemplated by this Contract. All section headings contained herein are for convenience only and shall not be construed as part of this Contract. Any provision of this Contract that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction, and, to this end, the provisions hereof are severable. This Contract shall be governed by, and construed and enforced in accordance with, applicable federal laws and the laws of the State of Minnesota.

IN WITNESS WHEREOF, the duly authorized officers of the Seller/Servicer and Residential Funding have executed this Seller/Servicer Contract as of the date first above written.

ATTEST:                                        SELLER/SERVICER

[Corporate Seal]
(If none, so state.)

_____          GMAC Mortgage Corporation of Iowa
                                                (Name of Seller/Servicer)

_____          By: _____
                                                (Signature)

_____Laurie A. Arwine_____                    _____Beth Kirkevold_____
        (Typed Name)                                (Typed Name)

Title: _Secretary_____                        Title: _Vice President_____

ATTEST:                                        RESIDENTIAL FUNDING CORPORATION

_____          By: _____
                                                (Signature)

_____Cynthia A. Fuhrman_____                  _Jeffery E. Polkinghorne_____
        (Typed Name)                                (Typed Name)

Title: _Administrative Asst_____              Title: _Vice President_____

FIRST AMENDMENT TO
SELLER/SERVICER CONTRACT


This first amendment dated as of August 28, 2009 (the "Amendment"), to THE
RESIDENTIAL FUNDING CORPORATION SELLER/SERVICER CONTRACT dated November
24, 1992 (the "Contract") by and between GMAC Mortgage, LLC, formerly known as GMAC
Mortgage Corporation ("GMACM") and Residential Funding Company, LLC, formerly known as
Residential Funding Corporation ("Master Servicer"), amends certain provisions of the Contract.

GMACM, as Servicer, shall continue to Service loans in accordance with the GMAC-RFC
Servicer Guide as so stated in the Contract, subject to the following stated exceptions:

1. GMACM has been granted Delegated Authority within the parameters in **Exhibit A**
   pertaining to all decision making for Loss Mitigation as well as Servicing decisions except
   that GMACM must follow investor special handling requirements.
2. GMACM has been granted Delegated Authority within the parameters in **Exhibit B** for all
   decision making that pertains to the Charge Off process.
3. GMACM has been granted Delegated Authority to determine whether advances are
   recoverable from proceeds within the parameters in **Exhibit C**, which may be revised
   from time to time by GMACM and Master Servicer and to discontinue making P&I
   Advances where the related deal allows.
4. GMACM shall be compensated within the parameters of **Exhibit D** from each related
   securitization trust or whole loan investor for management of marketing and disposition of
   serviced-by-other REOs.
5. Servicer P&I Advances shall be reimbursed to GMACM within 48 hours of Master
   Servicer allocating sale proceeds.
6. GMACM shall only submit a Post Claim including pre-foreclosure expenses (and not a
   pre foreclosure claim) for REO's. No supporting back-up documentation shall be
   submitted for any Claim submission, but claims shall be subject to audit review and
   documentation shall be provided upon request by the Master Servicer.
7. P&I shall be remitted monthly on the second business day preceding Master Servicer's
   remittance date to the Trustee.
8. Master Servicer shall reimburse GMACM for P&I advances upon determination of non-
   recoverability and movement of loans to a "stop-advance" S/S id.
9. No penalties/cash adjustments shall be assessed for Servicer Guide infractions (where a
   cash adjustment would normally be called for) unless the infraction caused an additional
   loss to the Investor or demanded by the Investor.
10. Master Servicer shall reimburse GMACM legal costs for ongoing litigation prior to
    liquidation/resolution for litigation that is not due to Servicer error, origination issues or
    costs that could be filed on standard claim reimbursement process.
11. GMACM may invest Custodial account deposits in money market funds rated by Moody's
    and Standard & Poor's rating agencies having the highest long-term rating available.

This Amendment is intended to be read in conjunction with the GMAC-RFC Servicer Guide and
the Contract. Except as modified by this Amendment, the Contract and the GMAC-RFC Servicer
Guide shall continue in full force and effect in accordance with its terms.

Master Servicer may terminate this Amendment without cause or revoke any number of the
above exceptions at any time upon thirty (30) days written notice to GMACM. Upon any such
termination or revocation, GMACM shall service loans in accordance with the Contract and
GMAC-RFC Servicer Guide without application of any such terminated or revoked exceptions.

IN WITNESS WHEREOF, each of the undersigned parties to this Amendment has caused this Amendment to be duly executed in its corporate name by one of its duly authorized Officers, effective as of the date first above written.

RESIDENTIAL FUNDING COMPANY, LLC

By: _____

Name: Tim Witten

Vice President, Master Servicing

GMAC MORTGAGE, LLC

By: _____

Name: Darsi Meyer

SVP Investor Reporting and Master Servicing

<u>EXHIBIT A</u>

**<u>To The Seller/Servicer Contract Dated</u>**

**<u>September 15, 1999</u>**

**<u>Servicer Guide Amendments</u>**
**<u>HomeComings Financial Network, Inc.</u>**

This RFC Servicer Guide Addendum sets forth certain modifications and additions to the RFC Servicer Guide (as amended from time to time), primarily with respect to the servicing of mortgage loans on behalf of Residential Funding by Servicer. This addendum, is intended to be read in conjunction with the RFC Servicer Guide. Except as modified by this addendum, the RFC Servicer Guide shall continue in full force and effect in accordance with its terms.

# DEFINITIONS

All capitalized terms not otherwise defined herein have the respective meanings set forth in the RFC Servicer Guide.

# MODIFICATIONS TO THE RFC SERVICER GUIDE

**I.**    **Section 431 — Partial Release, Easements, and Eminent Domain**

The first sentence of Section 431(a) of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentence:

> Residential Funding's Servicer Management in Los Angeles must be notified in written/electronic format by the Servicer within two (2) Business Days after the Servicer's approval of any applications for partial release of the lien on the Mortgaged Premises, easements, consent to substantial alterations, removal, demolition, taking or dividing the Mortgaged Premises, and other matters relating to changes affecting the Loan or the Mortgaged Premises; provided, none of the above may cause the value of the collateral for the Loan to be adversely affected or result in a substantial replacement of the collateral for the Loan, without Residential Funding's prior approval.

**II.**    **Section 440 — Insurance**

The fourth sentence in the second paragraph of Section 440(d) of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentence:

**If the Borrower refuses to reimburse the Servicer, the Servicer may cause acceleration for the Borrower's default under the terms of the Security Instrument.**

In addition, the third paragraph of Section 440(d) of the RFC Servicer Guide shall be deemed deleted.

**III.**    **Section 454 — Adverse Matters:  Abandonment**

The fourth sentence of Section 454 of the RFC Servicer Guide shall be deemed deleted.

**IV.**    **Section 455 — Property Seizures**

The last sentence in the second paragraph of Section 455(f)(3) of the RFC Servicer Guide shall be deemed deleted.

**V.**    **Section 456 — Notice of Liens, Vacancy, Waste, Etc.**

The last sentence in the first paragraph of Section 456 of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentence:

**The Servicer must exercise diligence to prevent any losses and must immediately take the appropriate action on notification or discovery of any of the following conditions:**

**VI.**    **Section 463 — Special Forbearance Relief Agreement**

The second sentence of Section 463(7) of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentence:

**If an inspection, required before the execution of the forbearance agreement, reveals that the Mortgaged Premises have been abandoned or are in poor physical condition, the Servicer may enter into a forbearance agreement without Residential Funding's prior approval, provided that the Servicer secures the Mortgaged Premises and takes all necessary action to protect the value of, and to prevent any deterioration of, the Mortgaged Premises; and provided further that no forbearance should impair coverage by any Mortgage Insurer, materially adversely affect the lien of the mortgage, result in principal and interest advances that would be nonrecoverable or be materially adverse to the interests of investors in the Loan.**

VII.    Section 465 — Loss Mitigation Workouts

The second paragraph of Section 465 of the RFC Servicer Guide shall be deemed deleted and replaced with the following paragraph:

All loan workout options, which involve loan modifications which are in a Pool that has not been identified as being eligible for a loan modification, shall be subject to Residential Funding approval.

In addition, the third paragraph of Section 465 of the RFC Servicer Guide shall be deemed deleted and replaced with the following paragraph:

If a foreclosure action is in progress, the proceedings must continue concurrently with the analysis of workout options. The Servicer may postpone the foreclosure sale if necessary to avoid delay in finalizing a workout.

In addition, the second paragraph of Section 465(a) of the RFC Servicer Guide shall be deemed deleted and replaced with the following paragraph:

"Servicer must obtain prior approval from Mortgage Insurer or Pool Insurer when applicable."

In addition, the second sentence in the first paragraph of Section 465(b) of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentence:

To expedite the transaction, HFN need not contact Residential Funding's Investor Services in Los Angeles for approval if such expenses exceed the allowable guidelines as defined in Exhibit 2471. HFN will be required to support, with written documentation, any expenses that exceed RFC guidelines and understand that they will be held to the same expectations that are in effect for all other Servicers that service loans for the benefit of RFC and or it's investors.

In addition, the heading of Section 465(c)(2) of the RFC Servicer Guide shall be deemed deleted and replaced with the following heading: "Procedures." In addition, the first sentence in the first paragraph of Section 465(c)(2) shall be deemed deleted. In addition, the first paragraph of Section 465(d) shall be deemed deleted and replaced with the following paragraph:

Details of the Servicers comparative loss analysis must be reported to Residential Funding Servicer Management in Los Angeles, in written/electronic format within one (1) Business Day after the close of escrow. In the case of a loan modification, copies of the business plan with a copy of the executed (not recorded) Modification Agreement along with any detail notification that will be needed by the accounting area in changing the RFC system (capitalization breakdown, etc.) will be forwarded within 24 hours of the original (Modification Agreement) being sent for deed recordation, but in all cases prior to the effective date of the modified terms.

VIII.    Section 466 — Deed-In-Lieu of Foreclosure

The first sentence in the first paragraph of Section 466(a) of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentence: "The Servicer is authorized to accept a deed-in-lieu of foreclosure." In addition, Section 466(b) of the RFC Servicer Guide shall be deemed deleted and replaced with the following paragraph:

**Details of the Servicers comparative loss analysis must be reported to Residential Funding Servicer Management in Los Angeles, in written/electronic format within one (1) Business Day of the acceptance of the executed Deed-in-Lieu.**

In addition, the first sentence of Section 466(c) of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentence:

**"The Servicer or its counsel must prepare any documents necessary to process the deed-in-lieu of foreclosure."**

IX.    Section 471 — Institution of Foreclosure

The first sentence in the third paragraph of Section 471(h) of the RFC Servicer Guide shall be deemed deleted. In addition, the third sentence in the third paragraph of Section 471(h) of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentence:

**HFN need not contact Residential Funding's Investor Services in Los Angeles for approval of additional funds in excess of the allowable amount for judicial foreclosure referenced in the Expense Reimbursement Guidelines (RFC Form 2471). HFN will be required to support, with written documentation, any expenses that exceed RFC guidelines and understand that they will be held to the same expectations that are in effect for all other Servicers that service loans for the benefit of RFC and or it's investors.**

X.    Section 473 — Offer of Payment During Foreclosure

The second and third sentences of Section 473(b) of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentences:

**Prior to accepting such an offer from the Borrower, the Servicer must prepare a written agreement which permits the institution or continuation of foreclosure proceedings in the event of any default under the terms of that agreement. The Servicer's workout analysis must include the Servicer's justification for the suspension or dismissal of the foreclosure action, and specify the method by which the remaining delinquency will be cured.**

XI.    Section 474 — Foreclosure Sale Bidding Instructions

The first sentence in the second paragraph of Section 474(a) of the RFC Servicer Guide shall be deemed deleted and replaced with the following language:

**For home mortgages that are not insured by a Mortgage Insurer, the Servicer may enter a bid on behalf of the record owner of the Loan equal to the lesser of no less than 85% of the fair market value of the property, or the total indebtedness, as allowable under State law.**

In addition, the first sentence in the third paragraph of Section 474(a) of the RFC Servicer Guide shall be deemed deleted and replaced with the following language:

**The fair market value must be supported by a Brokers Price Opinion (BPO), reviewed and agreed to (as to estimated value), by the Servicer and obtained no more than ninety (90) days prior to a scheduled foreclosure sale.**

XII.    Section 494 — Request for Loan Service Approval

The second sentence and all bullet points in the first paragraph of Section 494 of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentence:

**The Servicer must use a Request for Loan Service Approval to obtain Residential Funding's approval for the following actions:**

- Acceptance of a Loan (note) modification;
- Modification of a Security Instrument; and/or
- Any other action which requires Residential Funding's approval in accordance with the terms of this Servicer Guide.

A.    Section 495 — Document Release Transmittal

The first sentence of Section 495 of the RFC Servicer Guide shall be deemed deleted.

**EXCEPTIONS to delegated authorities:** There are a number of RFC securitized loans that are subject to "special handling" investor requirements. RFC will provide to you, on a monthly basis, in MS Excel format, a list of those loans in Pools that have special handling. HFN –San Diego has been provided connectivity to Rules Viewer, a software application that identifies the specific special handling requirements that a loan is subject to. HFN – San Diego will be required to comply with the requirements indicated on Rules Viewer. Where investor approval is indicated HFN – San Diego will forward a file (put together with the information outlined in the RFC Servicer Guide for that particular situation) to the assigned RFC Asset Manager for submission of the file to the appropriate investor for investor approval.

# EXHIBIT B

## Delegated Charge – Off's
## Video Conference Call
## January 17, 2002
## Meeting Minutes

**Attendees – HCF:**    Jason Allnut, Kathy Holmes, Monica Gonzalez, Jamie Jeffers

**Attendees – RFC:**    Anthony Golden, Marcia Neira, Yolanda Garcia, Jill Wheeler, Beatrice
Davis-Williams, Angela Razo, Patrick O'Donnell

**Subject:**    Delegated Charge – Off's

**Purpose:**    The purpose of this meeting was to discuss RFC's expectations and
requirements in order to delegate the Charge-Off process to HCF. It was
mutually agreed that RFC would delegate the Charge – Off process to
HCF effective 02/01/2002.

**Charge – Off Requirements:**

- Revise the analysis worksheet template. *Jason explained the current analysis worksheet is
actually a two page analysis, which includes the REO calculator. Jason agreed to include
both pages of the analysis worksheet when submitting the charge – off packages.*

- Flags that should raise awareness and question present value:

  1. The borrower has notified HCF of the condition of the property. The property should be
  inspected and present value determined. *Jason explained that they have recently
  developed an automated process with Safeguard Properties (on delinquent loans), where
  they will automatically pass damaged property information to Julpha Maniquis –
  Insurance Specialist for claim filing purposes.*

     *Anthony will follow-up with Patrick Couture regarding Hazard Insurance Claims, during
     his visit to HCF – Dallas in February 2002. To ascertain that any Hazard Insurance
     proceeds that are collected after the loan is charged – off can be passed through as
     recovery proceeds.*

  2. Property Inspection report states certain negativities.
  3. BPO's thoroughly reviewed. Do comps support stated value? *Jason explained that a
  desk appraiser at HCF reviews every value that is received with a 10% variance.
  Anthony recommended that HCF train and/or shares this type of experience with their
  internal processors.*
  4. Lien position/Equity on 1st and 2nd. *A lengthy discussion ensued, it was agreed that a
  good rule of thumb was that we typically would not protect a 2nd with an unpaid principal
  balance of $10K or less. As the unpaid principal balance on the 2nd increases, we start to
  reconsider. There may be instances when we would opt to protect these small balance
  2nd's; however, they are rare. Ultimately, it will be up to HCF to make that determination,
  and be in a position to support it should the need arise.*
  5. Hazard Claims. Is there claimable damage or a total loss? Has a claim been filed? Have
  proceeds been paid? If applicable, has the Mortgage Instrument been reviewed to
  determine the proper application of the claim proceeds? *Marcia explained that the status
  of the hazard insurance claim and/or proceeds needs to be <u>clearly defined</u> either on CCS
  or within the charge-off package that is submitted to RFC. During his visit to HCF –*

# EXHIBIT B

*Dallas, Anthony will discuss this with Patrick Couture and try to obtain a copy of state that
have restrictions on how Hazard Insurance proceeds can be applied.*

- Payoff statement with itemized breakdown must be provided to RFC as part of the charge-off
  package.  The payoff statement should include the following information:

  1. UPB
  2. Interest to Date
  3. Per Diem Interest
  4. Corporate Advances – Broken Down
  5. Legal Fees to Date (foreclosure, bankruptcy, etc.)

  *All parties were in agreement with this requirement.*

- Time Frame/Ideally – Charge-Off's should be completed and referred to RFC within 30 days
  of the reported questionable value or awareness/knowledge of damaged property.  *It was
  mutually agreed that RFC would use discretion in assessing penalties for delays in this area.
  However, CCS must be clearly documented as to the reason for the delay.*

- In addition to the timeframe detailed above, HCF will be responsible for notifying their
  respective internal departments (i.e. Jan Johnson, & Lori Liddicoat), as well as RFC within 72
  hours from the date the charge-off is approved. This notification should be sent electronically
  and should precede the submission of the charge – off package.  *All parties were in
  agreement with this requirement.*

- The Charge – Off package must be reviewed and signed off by a HCF Loss Mitigation
  Representative.  *All parties were in agreement with this requirement.*

- HCF should document CCS with a summary of their charge-off analysis.  *All parties were in
  agreement with this requirement.*

- Anthony discussed charge – off's of 2nd TD's in chapter # 7 bankruptcy, if HCF's value and
  analysis supports the fact that there's no equity, there's no need to wait for discharge. On 2nd
  TD's in a Chapter #13 that are pre-and/or post-petition delinquent and there's been no
  communication with the debtor. Anthony will discuss with Dyck/O'Neal to verify if they will
  accept these and continue to collect on them. He will issue an email when he has verified this
  information.

- Charge – Off packages submitted to RFC should include the following documentation:

  1. HCF analysis/recommendation
  2. Itemized payoff statement for both 1st and 2nd TD's (as previously discussed)
  3. BPO no older than 4 months
  4. Title report (this should be available if HCF services both 1st and 2nd TD and the 1st is in
     foreclosure)
  5. Credit Report
  6. Delinquent tax information
  7. Hazard insurance claim status (as previously discussed)
  8. Evidence supporting denial of a hazard insurance claim

  *All parties were in agreement with this requirement.*

Marcia suggested that a monthly meeting be scheduled beginning 03/2002, to discuss any issues
surrounding the delegated Charge – Off process.  These meetings should continue over the next

# EXHIBIT B

several months.  Marcia suggested this would be an ideal forum in which to discuss the methodology used in any particular charge – off, prior to RFC issuing a penalty letter.

Yolanda will schedule the monthly meetings.

# Exhibit C

# GMAC ResCap Primary Servicing

## *Non-Recoverable Asset Identification*

UPDATED:  March 19, 2009

## Summary

ResCap conducts a monthly process to examine and identify loans within the portfolio that are expected to liquidate with fewer proceeds than delinquent advances over the life of the asset disposition.  Delinquent high-risk loans that require scheduled advances are deemed 'non-recoverable' when the expected liquidation proceeds are less than the payment advances.  High-risk loans meeting the criteria for non-recoverability are identified, and have their remit type changed in order to mitigate severity loss for investors and delinquent advance exposure, and maintain prudent servicing practices.

The test for non-recoverability is conducted each month across the portfolio, excluding only the Agency and Government loans.  Eligible loans progress through a robust model that accounts for existing and anticipated delinquent advances, as well as market fades in property value.

Loans receive a different test for non-recoverability based on the lien type.

1st lien loans are eligible to be tested after they reach 60 days delinquent.  Loans that are less than 90 days delinquent qualify for eligibility using the transition roll rates for each delinquent bucket.  Loans that are forecasted to eventually roll to 90 days delinquent are then further filtered using Early Indicator (EI) scores, FICO, and borrower contact history.

The eligible population of loans are then processed through the model to determine anticipated delinquent advances and expected liquidation proceeds.  Delinquent advances are established using the existing delinquent advances (a sum of principle, interest, taxes, insurance, and corporate advances) plus one month of P&I to cover interest arrears.  Average default timelines (including bankruptcy) are applied to each asset by state, and the resulting number of months until liquidation is calculated from where the loan currently resides within those timelines.  Appropriate T&I and Corporate advances are then assessed to the overall advances using the determined number of months.  All existing delinquent advances, and anticipated T&I/Corp. advances are added together to form the total delinquent advances for the loan.

Expected proceeds are established from the most current recorded value for the asset
(Broker Price Opinion, Original Appraised Value, or Estimated Market Value).  This
current value then progresses through a series of market driven and state-specific fades
to arrive at a more precise proceeds estimate.  The value initially receives a fade based
on the observed drift in pre-foreclosure value to REO market value.  The historical REO
net/net execution to the Estimated Market Value (EMV) is then applied by state and
value segment – this accounts for the fade in actual REO net proceeds compared to the
established market value.  Home price indices are then applied to the value to account
for current future price adjustments by state and metropolitan statistical area (MSA).
The resulting net proceeds are then compared to the delinquent advances.  Any loan
with higher advances than proceeds is recommended as non-recoverable.

2nd lien loans are deemed non-recoverable after they reach 90 days delinquent.  Loans
that are 30-89 days delinquent are also available for non-recoverable status – but must
first pass through the equity evaluation process or have a loan-to-value that is greater
than 120.  The Equity Evaluation process examines loans beginning at 30 days
delinquent for potential charge-off based on senior lien status and balance, value, and
REO net execution, and returns an equity result (equity or no-equity).  2nd liens meeting
this charge-off criteria are also deemed non-recoverable.

*GMAC ResCap primary servicing has established a process to re-validate the non-
recoverable identification model on a quarterly basis in order to adjust for updated
market conditions.*


## Overview of Model

1st liens pass through the following model to determine non-recoverability; and the
decision is made to halt advances if it is determined that the estimated proceeds will
not be enough to cover the anticipated delinquent advances on the loan.  The base
calculation to determine non-recoverability is as follows:

**[ If 'Delq. Advances' / 'Estimated Proceeds' is >= 100%, Stop Advances ]**

There are three (3) components within the model and test for 1st lien non-recoverable
loans:  Eligibility, Advances, and Proceeds.  These variables are defined and utilized
within the current model as follows:

## Eligibility

The following criteria must be met in order to be eligible for this test for non-
recoverability.
- ✓ 1st Lien
- ✓ Exclude only Agency/Gov
- ✓ Remit types equal to s/s, s/a,  a/a (for Master Servicing/RFC)
- ✓ Delinquency Status includes: 60+, FCL, BK, REO

Loans 60 days delinquent are selected for eligibility based on their anticipated roll to
90 using transition roll rates.  Loans are filtered for eligibility based on EI Score,
FICO fade, and borrower contact history.


## Advances
The following steps are followed for all eligible loans in order to determine the
Advances in the calculation:

A. Sum of existing P&I+1, T&I, and Corporate advances is determined
B. Application of future T&I, and Corp. Advances:  The number of months to apply
   is based on the average default timelines for each state from the present
   delinquent status.

   ✓ Foreclosure timeline:  state-specific averages
   ✓ Bankruptcy Timeline:  Average BK timelines applied
   ✓ Redemption timeline:  Redemption period applied for each state
   ✓ REO timeline:  Average REO timeline applied at the state level based on
     actual 3-month rolling historical averages (REO board to close)

   60-90 Pre-foreclosure loans receive all applicable projected months, as well as
   added months if pre-90 status.  Loans 90+ already in foreclosure may receive
   pro-rated projected months depending on their current progress into these
   timelines.  One month is added to Non-BK loans to account for the historical roll
   to bankruptcy.  Corporate advances are applied using the average monthly
   corporate/expenses advance for loans in REO.

   These existing and projected delinquent advances are added together for each
   eligible loan to form the numerator in the model.


## Estimated Proceeds
The following steps are followed for all eligible loans in order to determine the
Estimated Proceeds in the calculation:

A. Begin with the most current value: Broker Price Opinion (BPO), or Estimated
   Market Value (EMV) if in REO.   OAV is applied for loans with no BPO / EMV
B. Apply the 'Value to Market' fade:  This accounts for the fade in BPO/OAV value to
   the time the Estimated Market Value is Set.  This is applied at a state-level with
   corresponding value tier.  The resulting fade percentage is reconciled to the
   current 'mark to market' value fades for by value band.  Assets already with
   EMVs skip this step.
C. Apply the 'Market to Execution' fade:  This accounts for the fade from EMV to
   actual REO Net/Net execution.  This average performance is applied by state and
   value band on a rolling 3-month historical basis.
D. Apply 'HPA Fade':  State specific home price index fade applied per OFHEO.


GMAC ResCap Proprietary

E.  Apply 'Home Price Index Future' fade:  Applies the forward-looking market fades
at the MSA level.

*[ See complete 1st lien model on next page ]*

GMAC ResCap Proprietary



**“Eligibility – 1st Lien (exc/Agency/Gov)”**

Loans 60+FCL/BK/REO with remit types s/s, s/a, and a/a (Master Servicing). Early stage delinquent loans selected for eligibility based on EI, FICO, and forecasted roll rates per Stragytics.

The number of forecasted months to liquidation for each loan is based on the average default timelines by state from the present delinquent status:

**Present Loan Delinquent Status**
60, 90, FCL, BK, REO

+

**BK Timeline**
Average Bankruptcy timeline applied for loans in BK (10 months); 1 mo added to non-BK loans per BK inventory volume

+

**Foreclosure Timeline**
Average state-specific timeline applied

+

**Redemption Timeline**
Average state-specific redemption period applied (KS, MN, CO, ND, NM, SD, MI, VT, WY)

+

**REO**
Average state-REO timeline applied (Board to Close)

Note: Eligible loans 60-90 / Pre-foreclosure receive all applicable timeline months as well as the months applied if pre-90; Loans 90+ already in foreclosure may receive pro-rated timeline months depending on their current progress into these timelines.

**“Delinquent Advances”**
Sum of all existing Delinquent advances – to include P&I, T&I, and Corporate advances. Includes 1 additional P&I for Interest arrears.

+

**“Projected T&I Advances”**
Applies 2% of value divided by 12 months; and applied at the loan-level based on the determined number of months to liquidation. Minumum of $350/mo applied.

+

**“Projected Corporate Advances”**
Applies the average corporate advance per month for loans in REO to each loan based on the determined number of months to liquidation. (approx. $230/mo)

= Delinquent Advances “x”

**If x / y is > = 100%, then halt servicer advance**

**“Asset Value”**
Most recent Broker Price Opinion (BPO), or Estimated Market Value (EMV) used if already in REO

X

**“Value to Market Fade”**
Accounts for fade from BPO (or OAV) to established market value; additionally reconciles to the existing ‘Mark to Market’ fades by value band

X

**“Market to Execution Fade”**
Accounts for fade from the Estimated Market Value to REO Net/Net Execution

X

**“HPA Index”**
Accounts for Housing Price fade for assets by state

X

**“HPA Future Markets”**
Fade accounts for the forward-looking market adjustments by MSA
(per economy.com)

= Estimated Proceeds “y”

OAV applied for loans with no BPO / EMV value.

3 month rolling historical value performance to EMV, by state and value tier. Assets already with EMVs skip this step.

3 month rolling historical REO performance – averaged by state and value band.

OFHEO Index, by state

# APPENDIX:  SOURCE DETAIL

<u>Eligibility:</u>  60 roll to 90 (Source: Stragytics), transition rates by delinquent bucket filtered by FICO and FICO fade, EI score, and borrower contact

<u>Eligibility:</u>  90+REO (Source: Business Objects query), defines the remaining population to include REO by remit type (s/s, s/a, and a/a for Master Servicing)

<u>Delinquent Advances:</u>  Sum of existing delinquent advances (Source:  Business Objects query), returns the current delinquent P&I, T&I, and corporate advances for each loan.  T&I calculation uses 2% of value / 12 months.  Corporate Advances are calculated using the average corporate advances for REO assets/avg. default timelines (approx. $230/mo).

<u>Delinquent Advances:</u>  Anticipated months for future advances are applied within the model.
- Foreclosure timeline (Source:  Business Objects), average state-specific timelines applied
- Bankruptcy timeline (Source:  MortgageServ / B.O.), applies the average BK timeline per BK inventory
- Redemption Timeline (Source: ResCap P&P Redemption state timelines), applies the redemption timelines to applicable states (KS, MN, CO, ND, NM, SD, MI, VT, WY)
- REO Timeline (Source: Business Objects), applies the average REO liquidation timelines from Board to Close

<u>Delinquent Advances:</u>  Anticipated T&I monthly minimum set at $350 / mo; and assumes $2000 for Tax, $2000 for Ins., and $600 for REO ($4600/12 = $383/mo.  If T&I model determination is < $350/mo, use the $350 minimum).

<u>Estimated Proceeds:</u>  Current value is used to start the proceeds modeling.  (Source:  BPO per Valuations, OAV, per MortgageServ, and EMV, per Valuations).

<u>Estimated Proceeds:</u>  Pre-foreclosure value fade to market for OAV and BPO (Source: Valuation Review, Risk Valuation Analytics), fades provided by state and value tier.

<u>Estimated Proceeds:</u>  REO execution to market value (Source: Business Objects query), actual REO net/net execution performance is applied by state and value band.

<u>Estimated Proceeds:</u>  HPA Index (Source: OFHEO), applies historical market adjustments.

<u>Estimated Proceeds:</u>  HPA Index – 12 month futures (Source:  economy.com), applies a forward-looking HPA index

GMAC ResCap Proprietary

## APPENDIX B:  1st LIEN LOAN LEVEL EXAMPLE



**Status:  1st Lien, 90+FCL**

ID#: 7435276126
State:  OH
Value (BPO):  $64,000
Expected Mo to Liq.:  14

$$\frac{\$27,934}{\$17,302} = 161\%$$

**161% > 100%, Asset Determined to be Non-Recoverable at this time**

7                                                            GMAC ResCap Proprietary

## EXHIBIT D

Compensation on REO properties transferred to the GMACM / HFN Liquidation area that had been foreclosed upon by Servicers other than the GMACM / HFN Servicing Platform's will be compensated based on the greater of the following schedules:

1. For REO properties received by GMACM / HFN to liquidate GMAC-RFC and I or it's investors will compensate GMACM / HFN the sum of $1,500.00 per asset liquidated subject to the following:

• The expectation is that the REO would be liquidated within six months or less from the acquisition date.

• An adjustment of $250.00 per month (only until the $1,500.00 is exhausted) would be deducted from the Management & Marketing fee for each month (a month will be considered a whole month when more than half of it had expired, anything less than half a month is not counted as a month) the REO exceeds the six month expected liquidation timeframe. NOTE: There will be no adjustments made on properties that exceed the 6 month timeline mentioned above if the REO property was the subject of a lengthy eviction, the property had substantial damage to it or the REO was subjected to litigation (including Title Issues) and or bankruptcy. For REO properties meeting this exception the Servicer will mention the applicable delay on the Claim Reimbursement request.

• The full $1500.00 fee is earned regardless of when, within the initial six months, the REO is liquidated.

• The management fee must be claimed as a line item along with any other reimbursement item within the existing reimbursement timelines.

OR

2. In the cases where GMACM / FIFN holds a Broker's license in the particular State and is able to negotiate the Real Estate Sales Commission to 5%, 1% of the Sales Price.

# GMAC RFC

## CLIENT CONTRACT

Client Contract dated as of March 6, 2006 ("Contract") between Residential Funding Corporation ("GMAC-RFC"), and GMAC Mortgage Corporation and Ditech.com, LLC (GMAC Mortgage Corporation and Ditech.com, LLC. are individually and collectively the "Client").

Client desires to sell Loans to or service Loans for GMAC-RFC and GMAC-RFC desires to purchase Loans from, or to have Client service Loans for GMAC-RFC, pursuant to the terms and conditions of this Contract and the applicable Guides.

Client and GMAC-RFC agree as follows:

1. **Guides.** The GMAC-RFC Client Guide, as amended, ("Client Guide") applies to the Loans and to the sale of the Loans to GMAC-RFC. If Client services Loans, the terms and conditions of the GMAC-RFC Servicer Guide, as amended, ("Servicer Guide") apply. Client agrees to all of the terms and conditions of the applicable Guides, including the representations, warranties and covenants. The Client Guide and Servicer Guide are each individually a "Guide" and together the "Guides".

2. **Commitment Letters.** GMAC-RFC may offer to enter into one or more commitment letters with Client ("Commitment Letters"). By executing and delivering a Commitment Letter, Client agrees to its terms and conditions.

3. **Incorporation by Reference.** The Guides, Commitment Letters, and any related documents (together with this Contract, the "Program Documents") are incorporated by reference into this Contract as if fully set forth in it.

4. **Amendments.** This Contract and Commitment Letters may be amended only by a writing signed by both parties. The Guides may be amended as set forth in the applicable Guide.

5. **Governing Agreement.** This Contract's terms and conditions will control in the event of any direct conflict between this Contract and the applicable Guide. The Commitment Letter's terms and conditions will control in the event of any direct conflict between (i) this Contract and the Commitment Letter, or (ii) the applicable Guide and the Commitment Letter.

6. **Directors' Resolution.** Along with the execution of this Contract, Client must deliver to GMAC-RFC a certified resolution of its board of directors (or its equivalent if Client is an entity other than a corporation) authorizing the execution, delivery and performance of this Contract. Client must deliver to GMAC-RFC other evidence of existence, good standing and authority as GMAC-RFC may require.

7. **GMAC-RFC's Remedies.** If a default or an Event of Default occurs, GMAC-RFC may exercise one or more of the remedies set forth in the applicable Guides.

8. **Suspension and Termination.** GMAC-RFC may suspend or terminate the Program Documents, and Client's ability to sell Loans to GMAC-RFC, as set forth in the applicable Guides.

9. **Relationship of the Parties.** As further described in the Guides, the relationship between Client and GMAC-RFC is limited to that of a seller on the part of Client and that of a buyer on the part of GMAC-RFC (with respect to Loan sales under the Client Guide) and to that of an independent contractor (with respect to servicing by Client under the Servicer Guide). Client will not represent that it is acting as GMAC-RFC's agent or partner.

10. **Assignment.** Client cannot transfer or assign the Program Documents. GMAC-RFC may at any time, without Notice to or the consent of Client, transfer or assign, in whole or in part its rights

under the Program Documents, with respect to any Commitment Letter or Loan, and the benefits under the Program Documents will inure to the benefit of GMAC-RFC's successors and assigns.

11.   **Notices.** All notices, requests, demands or other communications under this Contract ("Notices") must conform to the requirements of the applicable Guide. Notices to GMAC-RFC must be directed to the address for Notice set forth in the Guides. Notices to Client will be addressed as follows (or at such other address as may be designated by Client in a Notice to GMAC-RFC):

|  | GMAC Mortgage Corporation |
| --- | --- |
|  | Ditech.com, LLC |
|  | 3200 Park Center Drive, Suite 150 |
|  | Costa Mesa, CA 92626 |
| Attention: | Robert A. Camerota, Sr. |
| Facsimile Number: | 714-800-7496 |
| E-Mail: | rcamerota@ditech.com |

12.   **Governing Law.** The Program Documents are governed by the laws of the State of Minnesota, without reference to its principles of conflicts of laws.

13.   **Jurisdiction and Venue.** At the option of GMAC-RFC the Program Documents may be enforced in any state or federal court within the State of Minnesota. Client consents to the jurisdiction and venue of those courts, and waives any objection to the jurisdiction or venue of any of those courts, including the objection that venue in those courts is not convenient. Any such suit, action or proceeding may be commenced and instituted by service of process upon Client by first class registered or certified mail, return receipt requested, addressed to Client at its address last known to GMAC-RFC. Client's consent and agreement under this section does not affect GMAC-RFC's right to accomplish service of process in any other manner permitted by law or to commence legal proceedings or otherwise proceed against Client in any other jurisdiction or court. In the event Client commences any action in another jurisdiction or venue under any tort or contract theory arising directly or indirectly from the relationship created by the Program Documents, GMAC-RFC at its option may have the case transferred to a state or federal court within the State of Minnesota or, if a transfer cannot be accomplished under applicable law, may a have Client's action dismissed without prejudice.

14.   **Waiver of Jury Trial.** Client and GMAC-RFC each promises and agrees not to elect a trial by jury of any issue triable of right by a jury, and fully waives any right to trial by jury to the extent that any such right now exists or arises after the date of this Contract. This waiver of the right to trial by jury is separately given, knowingly and voluntarily, by Client and GMAC-RFC and is intended to encompass each instance and each issue for which the right to trial by jury would otherwise apply. GMAC-RFC and Client are each authorized and directed to submit the Program Documents to any court having jurisdiction over the subject matter and the parties to this Contract as conclusive evidence of this waiver of the right to trial by jury. Further, Client and GMAC-RFC each certifies that no representative or agent of the other party's counsel, have represented, expressly or otherwise, to any of its representatives or agents that the other party will not seek to enforce the waiver of right to trial by jury.

15.   **Waiver of Punitive, Consequential, Special or Indirect Damages.** Client waives any right it may have to seek punitive, consequential, special or indirect damages from GMAC-RFC or any of GMAC-RFC's affiliates, officers, directors, employees or agents with respect to any and all issues presented in any action, proceeding, claim or counterclaim brought by Client against GMAC-RFC or any of GMAC-RFC's affiliates officers, directors, employees or agents with respect to any matter arising out of or in connection with the Program Documents. This waiver of the right to seek punitive, consequential, special or indirect damages is knowingly and voluntarily given by Client, and is intended to encompass each

instance and each issue for which the right to seek punitive, consequential, special or indirect damages would otherwise apply. GMAC-RFC is authorized and directed to submit this Contract to any court having jurisdiction over the subject matter and the parties to this Contract as conclusive evidence of this waiver of the right to seek punitive, consequential, special or indirect damages.

16. **Force Majeure.** Notwithstanding Client's satisfaction of the conditions set forth in this Contract or the existence of an outstanding commitment by GMAC-RFC to purchase Loans, GMAC-RFC has no obligation to purchase any Loan if GMAC-RFC is prevented from obtaining the funds necessary to purchase Loans as a result of any fire or other casualty, failure of power, strike, lockout or other labor trouble, banking moratorium, embargo, sabotage, confiscation, condemnation, riot, civil disturbance, insurrection, act of terrorism, war or other activity of armed forces, act of God or other similar reason beyond the control of GMAC-RFC.

17. **Entire Agreement.** This Contract (including all documents incorporated by reference) represents the final agreement between the parties with respect to its subject matter, may not be contradicted by evidence of prior or contemporaneous oral or written agreements among the parties and supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether written or oral, with respect to the transactions contemplated by this Contract, except that any existing Commitment Letters are not affected.

18. **Defined Terms; General Rules of Interpretation.** Capitalized terms used in this Contract without further definition have the meanings given to them in the applicable Guide. Defined terms may be used in the singular or plural, as the context requires. Unless the context in which it is used otherwise clearly requires, the word "or" has the inclusive meaning represented by the phrase "and/or." The words "include," "includes" and "including" are deemed to be followed by the phrase "without limitation".

19. **Headings for Convenience.** All captions or paragraph headings in the Program Documents are for convenience only and in no way define, limit or describe the scope or intent of any provision of the Program Documents.

20. **Severability.** If any provision of the Program Documents is declared to be illegal or unenforceable in any respect, that provision is null and void and of no force and effect to the extent of the illegality or unenforceability, and does not affect the validity or enforceability of any other provision of the Program Documents.

21. **Counterparts.** This Contract may be executed in any number of counterparts, each of which will be deemed an original, but all of which together constitute but one and the same instrument.

22. **Agency, Joint and Several Liability.** Each Client hereby appoints each other Client as its agent for purposes of carrying out activities in connection with this Client Contract, including without limitation, signing amendments and receiving notices. Each Client is jointly and severally liable for all of Client's obligations under this Client Contract.

IN WITNESS WHEREOF, Client and GMAC-RFC have caused this Contract to be duly executed as of the date first written above.

**CLIENT: GMAC MORTGAGE CORPORATION**

By: _____

(Signature)

Name: Robert A. Camerota, Sr.

(Typed or Printed)

Title: Senior Vice President

**CLIENT: DITECH.COM, LLC**

By: _____

(Signature)

Name: Robert A. Camerota, Sr.

(Typed or Printed)

Title: Executive Vice President

**RESIDENTIAL FUNDING CORPORATION**

By: Debra A. Casale

(Signature)

Name: Debra A. Casale

(Typed or Printed)

Title: Managing Director