## Exhibit C

**Answer and Counterclaims**

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR COLLIER COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

DEUTSCHE BANK TRUST COMPANY
AMERICAS AS TRUSTEE FOR RALI 2007QS3,

    Plaintiff,

v.                                      Case No.: 09-7336-CA

BARRY F. MACK A/K/A BARRY FRITZ
MACK A/K/A BERRY FRITZ MACK, ET AL.

    Defendants.

_____/

### ANSWER TO COMPLAINT TO FORECLOSE MORTGAGE, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

    COME NOW the Defendants, BARRY F. MACK and CHERYL M. MACK, by and through the undersigned counsel, and for answer to Plaintiff's Complaint to Foreclose Mortgage would state as follows:

### COUNT I

1.    Admitted for jurisdictional purposes only.

2.    Admitted.

3.    Admitted.

4.    Denied.

5.    Denied.

6.    Admitted, in that BARRY F. MACK and CHERYL M. MACK are the current owners and possessors of the property.

7.    Denied.

8.    Denied.

9.    Denied.

10.    Denied.

11.    Denied.

12.    Denied.

13.    Denied.

WHEREFORE, Defendants, BARRY F. MACK and CHERYL M. MACK, pray that this Complaint be dismissed, that Defendants, BARRY F. MACK and CHERYL M. MACK, be awarded their reasonable attorney's fees and costs herein expended.

### FIRST AFFIRMATIVE DEFENSE

No default has occurred, but if a default has occurred, the note holder has waived such default and accepted payments not only for the principal and interest, but all late fees and costs associated with such late payments.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff is a stranger to the note and mortgage owed by Defendants MACK and has no right, title or interest in the note or mortgage, and has filed this foreclosure without authority.

### THIRD AFFIRMATIVE DEFENSE

If Plaintiff has actually acquired an interest in the note and mortgage by assignment, it has not done so according to the terms of law, and Defendants MACK have never been notified of such transfer.  Therefore, Plaintiff is not entitled to bring this action, as it has no standing.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff, by filing this foreclosure action, has damaged the credit of Defendants MACK, and should be liable in setoff for any such damages.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff has slandered the title of Defendants MACK and should be liable in setoff for any such slander of title.

### COUNTERCLAIM

COME NOW the Defendants, BARRY F. MACK and CHERYL M. MACK, by and through the undersigned counsel, and sue Plaintiff, DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE FOR RALI 2007QS3, and allege:

1.    This is an action for damages which exceed $15,000.00.

2.    Plaintiff, DEUTSCHE BANK TRUST COMPANY AMERICAS, ("Plaintiff DEUTSCHE BANK") is a Foreign Corporation registered to do business in the State of Florida.

3.    Defendants, BARRY F. MACK and CHERYL M. MACK, ("Defendants MACK") are residents of Naples, Collier County, Florida.

## COUNT I
### (Violation of 12 U.S.C. §2601, et seq. – Real Estate Settlement Procedures Act)

4.    Defendants MACK reallege the allegations contained in paragraphs 1 through 3 as though fully stated herein.

5.    Defendants MACK signed and delivered a Mortgage to Primary Residential Mortgage, Inc. on or about October 6, 2006 (Exhibit "A").

6.    Defendants MACK have a claim against Plaintiff DEUTSCHE BANK pursuant to 12 U.S.C. §2601 et seq. (Real Estate Settlement Procedures Act). This Court has jurisdiction pursuant to 12 U.S.C. §2614.

7.    Plaintiff DEUTSCHE BANK was required by 12 U.S.C. §2605(c) to provide notice that the loan which Plaintiff DEUTSCHE BANK seeks to foreclose on had been assigned to them within fifteen (15) days of the assignment.

8.    Plaintiff DEUTSCHE BANK failed to give notice of such transfer to Defendants MACK within fifteen (15) days.

9.    Because Defendants MACK were never notified of a transfer of the loan in question from the predecessor banking institution, GMAC, to Plaintiff DEUTSCHE BANK, Defendants MACK continued to make monthly payments to GMAC, and is, in fact, current with their payment obligations under the mortgage of October 6, 2006.

10.    Plaintiff DEUTSCHE BANK wrongfully filed a mortgage foreclosure action against Defendants MACK because they had not received the mortgage payments that were paid by Defendants MACK directly to GMAC, and not to Plaintiff DEUTSCHE BANK.

11.    The institution of this mortgage foreclosure action has damaged the credit of Defendants MACK.

12.    Plaintiff DEUTSCHE BANK has attempted to impose late fees on Defendants MACK in violation of 12 U.S.C. §2605(d).

13.    12 U.S.C. §2605(f)(3) provides for attorney's fees to be awarded to Defendants MACK should they be successful in this matter.

14.    Defendants MACK have been forced to hire the services of an attorney licensed in the state of Florida to defend the foreclosure and to bring this Counterclaim, and to pay him a reasonable fee therefor.

15.    Pursuant to 12 U.S.C. §2605(f), Defendants MACK are entitled to actual damages as well as additional damages in the amount of $1,000.00.

WHEREFORE, Defendants MACK pray that Plaintiff DEUTSCHE BANK's foreclosure action be dismissed, that Defendants MACK be awarded their damages plus $1,000.00, as well as their attorney's fees and costs herein expended.

## COUNT II
### (Slander of Title)

16.    Defendants MACK reallege the allegations contained in paragraphs 1 through 3 as though fully stated herein.

17.    This is an action for slander of title with damages that exceed $15,000.00.

18.    Defendants MACK own the following described property in Collier County, Florida:

> Lot 36, Block S, of that certain Subdivision known as Conner's Vanderbilt Beach Estates, Unit No. 3, according to the plat thereof recorded in Plat Book 3, Page 89, Public Records of Collier County, Florida

19.    Plaintiff DEUTSCHE BANK filed the instant foreclosure action against Defendants MACK and caused a notice of lis pendens to be recorded against the property on or about August 17, 2009 (Exhibit "B").

20.    Defendants MACK are not, and have not been, in default under the terms of the mortgage attached hereto as Exhibit "A".

21.    Defendants MACK are currently in the process of trying to sell their property, but such efforts have been severely hampered due to the wrongful recordation of the notice of lis pendens against the property, which serves to discourage potential purchasers.

22.    Plaintiff DEUTSCHE BANK's recordation of the notice of lis pendens against Defendants MACK's property has caused Defendants MACK to suffer actual damages.

23.    Defendants MACK have been forced to hire the services of an attorney licensed in the state of Florida to defend the foreclosure and to bring this Counterclaim, and to pay him a reasonable fee therefor.

WHEREFORE, Defendants MACK demand monetary damages against Plaintiff DEUTSCHE BANK, for slander of title and all such other relief this Court deems just and proper.

David F. Garber, Esq.
Florida Bar No. 0672386

GARBER, HOOLEY & HOLLOWAY, LLP
700 Eleventh Street South, Suite 202
Naples, Florida 34102-6777
(239) 774-1400 Telephone
(239) 774-6687 Facsimile

## CERTIFICATE OF SERVICE

I certify that a copy of this document was faxed and mailed to the person listed below on this  9  day of  Sep  , 2009.

Elsa Hernandez Shum, Esq.
Law Offices of David J. Stern, P.A.
900 South Pine Island Road, Suite 400
Plantation, Florida 33324-3920
954.233.8333 Facsimile

David F. Garber, Esq.
Attorney for Defendants MACK

*L 25.*

**3917813 OR: 4123 PG: 0804**

RECORDED in OFFICIAL RECORDS of COLLIER COUNTY, FL
10/17/2006 at 11:53AM DWIGHT E. BROCK, CLERK

| | |
|---|---|
| OBLD | 990000.00 |
| OBLI | 990000.00 |
| REC FEE | 171.50 |
| DOC-.35 | 3465.00 |
| INT-.002 | 1980.00 |

Return To:

**PRIMARY RESIDENTIAL MORTGAGE INC.**
**4750 WEST WILEY POST WAY #200**
**SALT LAKE CITY, UTAH 84116**
Attn.: **SHIPPING DEPT./DOC. CONTROL**
This document was prepared by:
**DANETTE NIX**
**PRIMARY RESIDENTIAL MORTGAGE INC.**
**4750 WEST WILEY POST WAY, #200**
**SALT LAKE CITY, UTAH 84116**

Retn:

PALM TITLE ASSOC
12590 1 WHITEHALL DR
FT MYERS FL 33907 4680

*1-06-0529-es*

[Space Above This Line For Recording Data]

# MORTGAGE

MIN 1001464-0609002738-6
**MERS TELEPHONE:** (888) 679-6377

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated October 6, 2006, together with all Riders to this document.
**(B) "Borrower"** is **BARRY FRITZ MACK AND CHERYL MARGRET MACK, JOINT TENANTS.**
Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is PRIMARY RESIDENTIAL MORTGAGE INC.. Lender is a corporation organized and existing under the laws of **the State of NEVADA.** Lender's address is 4750 **WEST WILEY POST WAY #200, SALT LAKE CITY, UTAH 84116.**
**(E) "Note"** means the promissory note signed by Borrower and dated October 6, 2006. The Note states that Borrower owes Lender **Nine Hundred Ninety Thousand And 00/100** Dollars (U.S. $ 990,000.00)

**FLORIDA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**        Form 3010 1/01
Page 1 of 18

Initials: *BFM cmm*

flcmertd



179700007

DEED

EXHIBIT
A

OR: 4123 PG: 0805

plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **November 1, 2036.**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

[ ] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider
[ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] 1-4 Family Rider
[ ] VA Rider    [ ] Biweekly Payment Rider    [ ] Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS     Form 3010 1/01
Page 2 of 18

Initials

OR: 4123 PG: 0806

a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or
not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions
and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to
MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and
assigns of MERS, the following described property located in the County [Type of Recording Jurisdiction] of
**COLLIER** [Name of Recording Jurisdiction]:

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**



Parcel ID Number:

which currently has the address of

**287 EGRET AVE**                                                                              [Street]
**NAPLES** [City], Florida **34108** [Zip Code] ("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all
easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and
additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this
Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title
to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or
custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any
or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take
any action required of Lender including, but not limited to, releasing and canceling this Security
Instrument.

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS              Form 3010 1/01
Page 3 of 18

Initials: _BXTK_  _cmm_

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3010 1/01
Page 4 of 18

Initials: _____

OR: 4123 PG: 0808

the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually

OR: 4123 PG: 0809

analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the
Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing
or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower
any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest
shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the
Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to
Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow,
as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to
Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12
monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall
notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make
up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly
refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions
attributable to the Property which can attain priority over this Security Instrument, leasehold payments or
ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To
the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument
unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner
acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in
good faith by, or defends against enforcement of the lien in legal proceedings which in Lender's opinion
operate to prevent the enforcement of the lien while those proceedings are pending, but only until such
proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender
subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is
subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice
identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the
lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or
reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected
on the Property insured against loss by fire, hazards included within the term "extended coverage," and any
other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.
This insurance shall be maintained in the amounts (including deductible levels) and for the periods that
Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of
the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's
right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may
require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone
determination, certification and tracking services; or (b) a one-time charge for flood zone determination

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS                    Form 3010 1/01
Page 6 of 18

Initials: _____ _____

OR: 4123 PG: 0810

and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by the Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS                    Form 3010 1/01
Page 7 of 18

Initials: *BRM  CMM*

OR: 4123 PG: 0811

period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.  Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7.  Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.  Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS                          Form 3010 1/01
Page 8 of 18

Initials: _____ _____

OR: 4123 PG: 0812

rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 9 of 18

Form 3010 1/01
Initials: *BZM* CMM

OR: 4123 PG: 0813

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

OR: 4123 PG: 0814

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS                Form 3010 1/01
Page 11 of 18

Initials: _BZM_ _onim_

exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.   **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14.   **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note).  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15.   **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting

**FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
Page 12 of 18

Form 3010 1/01
Initials: _____

OR: 4123 PG: 0816

Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS                    Form 3010 1/01
Page 13 of 18

Initials: ___

OR: 4123 PG: 0817

Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the

FLORIDA - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**
Page 14 of 18

Form 3010 1/01
Initials: BZM cmm

OR: 4123 PG: 0818

following substances:  gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (d) any condition caused by the presence, use or release of Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

22.  Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 15 of 18

Form 3010 1/01
Initials: _____

OR: 4123 PG: 0819

provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.



FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 16 of 18

Form 3010 1/01

Initials: _____

OR: 4123 PG: 0820

.BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.
Signed, sealed and delivered in the presence of:

_____   *Barry Fritz Mack*   (Seal)
                          BARRY FRITZ MACK          -Borrower

                          287 EGRET AVE
                          NAPLES, FLORIDA 34108

                                                    (Address)

_____   *Cheryl Margaret Mack*   (Seal)
                          CHERYL MARGRET MACK        -Borrower

                                                    (Address)

_____                            (Seal)
                                                    -Borrower

                                                    (Address)

_____                            (Seal)
                                                    -Borrower

                                                    (Address)

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3010 1/01
Page 17 of 18                                                       Initials: BFM CMM

OR: 4123 PG: 0821

STATE OF FLORIDA,                                                    *LEE*            County ss:

The foregoing instrument was acknowledged before me this _6TH_ _day of October 196_ by
~~BARRY FRITZ MACK~~ and **CHERYL MARGRET MACK**,
who is personally known to me or who has produced _FL DR. LICENSE_ as identification.

Notary Public

COLLIER COUNTY
COPY
CLERK OF THE CIRCUIT COURT

**FLORIDA** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**
Page 18 of 18

Form 3010 1/01

Initials _____

OR: 4123 PG: 0822

STATE OF ___FL___
COUNTY OF ___Lee___

The foregoing instrument was acknowledged before me this ___6th___
day of ___October___, 200__ by Berry Fritz Mack
He is personally known to me or has produced a
___Driver License___ as identification and who did not
take an oath.

Seal

Erica M. Scimeca

*** OR: 4123 PG: 0823 ***

Lot 36, Block S, of that certain Subdivision known as Conner's Vanderbilt Beach Estates, Unit No. 3, according to the plat thereof recorded in Plat Book 3, Page 89, Public Records of Collier County, Florida.



BOX 481

INSTR 4333096  OR 4484  PG 15  RECORDED 07/20/2009 3:59 PM  PAGES 2
DWIGHT E. BROCK, COLLIER COUNTY CLERK OF THE CIRCUIT COURT
REC $9.00



This space is for recording purposes only

IN THE CIRCUIT COURT OF THE 20TH JUDICIAL
CIRCUIT, IN AND FOR COLLIER COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO.: 09-7336-CA

DEUTSCHE BANK TRUST COMPANY AMERICAS
AS TRUSTEE FOR RALI 2007QS5

    PLAINTIFF

VS.

BARRY F. MACK A/K/A BARRY FRITZ MACK A/K/A
BERRY FRITZ MACK; CHERYL M. MACK A/K/A
CHERYL MARGRET MACK A/K/A CHERYL
MARGRET MACK; ANY AND ALL UNKNOWN
PARTIES CLAIMING BY, THROUGH, UNDER, AND
AGAINST THE HEREIN NAMED INDIVIDUAL
DEFENDANT(S) WHO ARE NOT KNOWN TO BE
DEAD OR ALIVE , WHETHER SAID UNKNOWN
PARTIES MAY CLAIM AN INTEREST AS SPOUSES,
HEIRS, DEVISEES, GRANTEES OR OTHER
CLAIMANTS; JOHN DOE AND JANE DOE AS
UNKNOWN TENANTS IN POSSESSION
    DEFENDANT(S)

FILED 12
COLLIER COUNTY, FLORIDA
2009 AUG 20  AM 9: 59
CLERK OF COURTS
BY _____ D.C.
Filed in Computer
C. Florino

NOTICE OF LIS PENDENS

1. TO: The above named Defendants, AND ALL OTHERS WHOM IT MAY CONCERN:

2. YOU ARE NOTIFIED of the institution of this action by the Plaintiff against you seeking to foreclose the Note and Mortgage encumbering the described property and the decreeing of a sale of the property under the direction of the court in default of the payment of the amount found to be due the Plaintiff under the Note and Mortgage, and for other, further and general relief set forth in the Complaint.

3. The property involved is that certain parcel, lot or unit situate, lying and being in COLLIER County, Florida, as set forth in the mortgage recorded in Official Records Book 4123, at Page 804, more particularly described as follows:

F:\GROUPS\FCDOCS\COMPLAIN\0909\75969.CMP

EXHIBIT
B

LOT 36, BLOCK S, CONNOR'S VANDERBILT BEACH ESTATES, UNIT NO. 3, ACCORDING TO THE PLAT
THEREOF RECORDED IN PLAT BOOK 3, PAGE 89, OF THE PUBLIC RECORDS OF COLLIER COUNTY,
FLORIDA.

Dated at Plantation, Broward County, Florida, this _____ day of _____, 2009.

ELSA HERNANDEZ SHUM
Bar #: 29554
Miriam Mendieta
Bar #: 0866880
Law Offices of David J. Stern, P.A.
Attorney for Plaintiff
900 South Pine Island Road SUITE 400
Plantation, FL 33324-3920
(954) 233-8000

09-75969 GMAP

