**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

    RESIDENTIAL CAPITAL, LLC, *et al.*

Debtors.

**NOT FOR PUBLICATION**

Case No. 12-12020 (MG)

Jointly Administered

**MEMORANDUM OPINION AND ORDER SUSTAINING BORROWER CLAIMS
TRUST'S SIXTIETH OMNIBUS OBJECTION TO CLAIM NOS. 4133 AND 4199**

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is the *ResCap Borrower Claims Trust's Sixtieth Omnibus Objection to Claims (Res Judicata Borrower Claims)* (the "Objection," ECF Doc. # 6457). The ResCap Borrower Claims Trust (the "Trust") seeks an order disallowing and expunging Claim Nos. 4133 and 4199 filed by Allison L. Randle on the basis that the claims are barred by *res judicata*. The Objection is supported by the Declaration of Lauren Graham Delehey (Objection Ex. 1) and the Declaration of Norman S. Rosenbaum (Objection Ex. 2). Randle filed an opposition (the "Response," ECF Doc. ## 6664, 6695), and the Trust filed a reply (the "Reply," ECF Doc. # 6678). The Court held a hearing on March 26, 2014 (the "Hearing"). Randle did not appear at the Hearing, but on March 25, 2014, she sent the Court an Emergency Motion for Leave to File a Sur-Reply and to Reschedule Hearing Date (the "Emergency Motion," ECF Doc. # 6709), which was docketed on the Court's electronic case filing system on March 27, 2014. In ruling on the Objection, the Court will consider the arguments raised by Randle in the Emergency Motion, but the request to reschedule the hearing is **DENIED**. For the reasons stated below, the Court **SUSTAINS** the Objection to Randle's claims and **EXPUNGES** Claim Nos. 4133 and 4199 on the terms set forth below.

# I. BACKGROUND

On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition for chapter 11 relief. On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter11 Plan Proposed by Residential Capital, LLC, et al. and The Official Committee of Unsecured Creditors* (the "Plan," ECF Doc. # 6065). The Plan became effective on December 17, 2013. (ECF Doc. # 6137.) The Trust was established as successor in interest to each of the Debtors (for Borrower Claims) pursuant to the terms of the confirmed Plan.

## A. Randle's Massachusetts Litigation

Randle was a party to two prepetition lawsuits with Debtor GMAC Mortgage, LLC ("GMACM"), both relating to real property located at Unit 83, 83-85 Whitney Street, Northborough, Massachusetts (the "Property") and a mortgage secured by the Property (the "Mortgage"). GMACM commenced the first case (the "Servicemembers Action"[1]) against Randle on January 14, 2008, in the Commonwealth of Massachusetts, Trial Court, Land Court Department (the "MA Land Court"). The limited issue in that action was whether Randle was entitled to relief under the Servicemembers Civil Relief Act, 50 U.S.C. App. §§ 501 *et seq.*, and Acts 1942, c. 57, §§ 1–3, both as amended (the "Servicemembers Act").[2] Randle removed the Servicemembers Action to the United States District Court for the District of Massachusetts (the "District Court"), but the case was remanded to the MA Land Court. On August 10, 2009, the

---

[1]   *GMAC Mortg., LLC v. Randle*, Misc. Case No. MISC-08-369658 (GHP).

[2]   The Servicemembers Act imposes restrictions on foreclosures of homes owned by military personnel. *See Beaton v. Land Court*, 326 N.E.2d 302, 305 (Mass. 1975). Massachusetts is a non-judicial foreclosure state, meaning that a foreclosure can occur without any judicial process, so the Servicemembers Action was not a statutory requirement to foreclose. Rather, to prevent a post-foreclosure cloud on title resulting from a claim under the Servicemembers Act, GMACM sought a declaration that Randle was not entitled to relief under the Act. *See, e.g., id.*

2

MA Land Court entered an order requiring Randle to show cause why a judgment authorizing foreclosure should not be issued in the Servicemembers Action.

On August 12, 2009, Randle commenced an action against GMACM in the MA Land Court (the "Declaratory Action"[3]) seeking a declaration that GMACM (1) did not hold any claim secured by the Mortgage; and (2) lacked standing to prosecute the Servicemembers Action. Randle also requested a temporary restraining order to enjoin GMACM from conducting a foreclosure sale on the published date, August 24, 2009. On August 24, 2009, the MA Land Court held a hearing in the Declaratory Action and denied Randle's injunction request, permitting GMACM to hold the foreclosure sale. GMACM held an initial foreclosure sale on August 24, 2009, but the sale of the Property subsequently fell through.

On October 12, 2010, the MA Land Court granted GMACM's motion for summary judgment in the Declaratory Action, dismissing that action with prejudice. *See Randle v. GMAC Mortg., LLC*, No. MISC-09-408202 (GHP), 2010 WL 3984714 (Mass. Land Ct. Oct. 12, 2010) (the "Summary Judgment Decision"). The court found that GMACM had the right to foreclose on the Property because it "held the mortgage when it published notices of, and when it conducted, the foreclosure sale." *Id.* at *7. The court also held that any alleged deficiencies in the Servicemembers Action could not invalidate an otherwise lawful foreclosure by GMACM because Randle was indisputably not entitled to relief under the Servicemembers Act. *Id.* at *6. In reaching this decision, the court specifically considered Randle's claims that GMACM (1) acted inappropriately in the Servicemembers Action, resulting in irregular proceedings; and (2) lacked standing to bring the Servicemembers Action. The court concluded that these issues were irrelevant because "GMAC Mortgage could conduct a valid foreclosure sale, and pass an

---

[3]    *Randle v. GMAC Mortg., LLC*, Case No. MISC-09-408202 (GHP).

3

effective title to the high bidder at the auction, even if GMAC Mortgage never had even commenced a servicemembers case . . . ." *Id.* (citing *Beaton v. Land Court*, 326 N.E.2d 302, 305 (Mass. 1975)).

Randle filed a motion for reconsideration of the Summary Judgment Decision, arguing in part that title to the Property was defective because GMAC Bank was not in existence when it supposedly acquired an interest in her loan in 2003. GMACM opposed the reconsideration motion, arguing that this was not "newly discovered" evidence because Randle could have easily discovered and raised these alleged facts during the hearing on the motion for summary judgment. (*See* GMACM Objection to Reconsideration Motion, Reply Ex. 6 at 6.) On August 25, 2011, the MA Land Court denied Randle's motion for reconsideration "substantially for the reasons set forth at length in the opposing papers filed by GMAC Mortgage, LLC." (*See* Reply Ex. 3 at 2.) Randle filed a notice of appeal dated September 23, 2011, which the MA Land Court docketed on September 27, 2011.

GMACM scheduled a renewed foreclosure sale of the Property for September 23, 2011, but twice postponed that sale by public proclamation, first to September 27, 2011, and again to October 26, 2011. On October 26, 2011, GMACM held an auction (the "Auction") and sold the Property to Debtor Residential Funding Company, LLC ("RFC").

After the Auction, Randle continued occupying the Property. On June 7, 2013, RFC brought a summary process eviction action against Randle (the "Eviction Action") in the Worcester Housing Court.[4] Randle filed an answer asserting sixteen affirmative defenses and five counterclaims. Certain of those affirmative defenses and counterclaims were identical to the claims raised by Randle in the Declaratory Action and relied on the argument that GMACM, as

---

[4] A tenant of the Property, Ara Eresian Jr., was also named as a defendant in the Eviction Action. The Debtors are permitted to pursue foreclosure and eviction proceedings pursuant to this Court's order, dated July 13, 2012, granting limited stay relief for that purpose. (ECF Doc. # 774.)

4

assignee of GMAC Bank, never held any interest in the Mortgage because GMAC Bank did not exist before March 24, 2004. Randle then removed the case to the District Court. *See Residential Funding Co., LLC v. Randle*, No. 13-40076-TSH (D. Mass. June 27, 2013).

RFC filed a Motion to Strike and to Dismiss Defendants' Affirmative Defenses and Counterclaims; the District Court granted the motion in part and denied it in part. *See Residential Funding Co., LLC v. Randle*, 2013 WL 6195624 (D. Mass. Nov. 25, 2013) ("*Eviction Decision*").[5] Specifically, the District Court held that any counterclaims and affirmative defenses relating to GMACM's interest in the Mortgage "clearly raise the same claims that the Land Court conclusively ruled on" and were therefore barred by *res judicata*. *Id.* at *2. But the District Court also held that "affirmative defenses and counterclaims relating to the conducting of October 26, 2011 foreclosure sale were not . . . previously litigated and are not barred by res judicata."[6] *Id.* at *3. Thus, Randle has at least some surviving claims relating to the Property pending in the Eviction Action.

On March 19, 2014, the District Court consolidated the Eviction Action with another action pending in that court initiated against GMACM by the holder of a second mortgage on the

---

[5] Neither the Trust's Objection nor its Reply mentions the District Court decision that specifically addresses the *res judicata* issue. This Court first became aware of the District Court decision as a result of Randle's Emergency Motion. The Trust's counsel should have disclosed and discussed the prior decision in its pleadings in this Court.

[6] The District Court's order does not specifically identify the affirmative defenses and counterclaims that the court concluded were *not* barred by *res judicata*. *See Eviction Decision* at *4 ("[The] second, fourth, fifth, and tenth affirmative defenses are stricken. [The] first and second counterclaims are dismissed. The remaining affirmative defenses and counterclaims are neither stricken nor dismissed."). A review of the pleadings in the District Court shows that the following affirmative defenses survived: one (failure to state a claim), three (failure to strictly comply with the statutory scheme set forth in G.L. c. 244, secs. 11–17C), six (negligence in scheduling and conducting the foreclosure sale; holding the sale an hour before the scheduled time), seven (failure to hold the sale at the scheduled date, time, and place), eight (GMACM was actually the high bidder at the sale, *not* RFC), nine (same), eleven (lack of jurisdiction), twelve (same), thirteen (insufficient service), fourteen (fraud upon the court), fifteen (unclean hands), and sixteen (slander of title). The following counterclaims also survived: three (declaratory judgment that GMACM violated G.L. c. 244, sec. 14 by holding the foreclosure auction earlier than scheduled), four (wrongful foreclosure, fraud by omission or non-disclosure, for failing to disclose relationship between GMACM and RFC), and five (violation of 42 U.S.C. § 1983 (Due Process and Equal Protection Clauses)).

5

Property. *See El Dorado Canyon Props., LLC v. GMAC Mortg., LLC*, No. 11-cv-12111-RWZ, ECF Doc. # 61 (D. Mass. Mar. 19, 2014). GMACM argued in its Motion to Consolidate that the only remaining factual issues in the Eviction Action are (1) whether GMACM acted appropriately and in compliance with the Massachusetts statutes when it rescheduled and conducted the Auction; and (2) whether GMACM concealed material facts from Randle related to RFC, in violation of Massachusetts statutes. *See id.*, ECF Doc. # 56 at 4 (Jan. 27, 2014). According to GMACM, if Randle succeeds in her wrongful foreclosure counterclaims, the foreclosure sale to RFC would be reversed, and GMACM and the second mortgagee would be put back in their respective positions with relation to the Property. *Id.* at 5. GMACM further argued that money damages are not available in the District Court actions because GMACM and RFC are both Debtors in these cases and are protected by the automatic stay. *Id.* at n.2.

GMACM is correct that, absent an order from this Court lifting the automatic stay, Randle is limited to pursuing equitable relief in the District Court, in the form of reversing the foreclosure sale. *Id.* As indicated below, however, the Court will lift the automatic stay to permit all claims that are not barred by *res judicata* to be adjudicated in the District Court— including, if permitted by the District Court, a claim for damages. But the Court lifts the stay without deciding now whether Randle will be permitted to assert a monetary claim in this case in the event she recovers a money judgment in the District Court.

### B. The Proofs of Claim

Randle filed two timely proofs of claim in these cases: (1) claim number 4133 against GMACM (the "GMACM Claim"), asserting a $234,200 general unsecured claim for "wrongful/invalid foreclosure of real property"; and (2) claim number 4199 against RFC (the

6

"RFC Claim"), asserting a $234,200 general unsecured claim for "wrongful/invalid claim of title to real property." Randle did not submit supporting documentation with either claim.

The Debtors filed the *Debtors' Fiftieth Omnibus Objection to Claims (No Liability Borrower Claims – Books and Records)* on September 20, 2013, objecting to the RFC Claim on the basis that a review of the Debtors' books and records showed no liability to Randle. On October 23, 2013, Randle filed a response to the Fiftieth Omnibus Objection, explaining the basis of her claim and attaching supporting documentation.[7] (ECF Doc. # 5468.) In that response, Randle alleged that (1) GMACM never had any legal right to the property because GMAC Bank was not in existence when it acquired its interest in her loan in 2003, and any subsequent assignment to GMACM was therefore ineffective; (2) GMACM's foreclosure of the property was improper because of irregularities in the Servicemembers Action; (3) GMACM wrongfully seized and sold the Property because the Auction was improperly conducted; and (4) RFC wrongfully seized and sold the Property because any assignment of the Property to RFC was ineffective. On December 12, 2013, the Debtors withdrew the Fiftieth Omnibus Objection without prejudice as to the RFC Claim. (ECF Doc. # 6073.) Because Randle did not incorporate her response to the Fiftieth Omnibus Objection into her current Response, the Court will not consider that earlier response here.

On February 10, 2014, the Trust filed the Objection, seeking to disallow and expunge Randle's proofs of claim on the grounds that they are barred by *res judicata*. On March 14, 2014, Randle filed the Response, asserting that (1) the Summary Judgment Decision is stayed

---

[7] Pursuant to this Court's Procedures Order (ECF Doc. # 3294), the Debtors were required to send a request letter ("Request Letter") to Randle seeking additional documentation before objecting to her claims. (*See, e.g.*, Objection Ex. 3.) Randle's response to the Fiftieth Omnibus Objection may have also been her response to the Debtors' Request Letter, but this is unclear. (*See* Reply ¶ 20 ("Respondent appended to the Response what appears to be her answer to the Debtors' Request Letter and related documents allegedly in support of Respondent's Claim No. 4199.").)

7

and not final because an appeal is pending; (2) her proofs of claim cannot be barred by *res judicata* because they are based on the seizure and sale of the Property at the October 26, 2011 Auction in violation of the Massachusetts statutes—after the October 12, 2010 Summary Judgment Decision was entered;[8] and (3) *res judicata* does not apply to the RFC Claim because RFC was not a named party to either of the prepetition lawsuits.

## II.    DISCUSSION

### A.    Claims Objections

Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim." 11 U.S.C. § 501(a). "The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes prima facie evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)." 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2013). Section 502(a) provides that a properly filed claim "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If an objection is made, the court shall determine the amount of such claim "as of the filing date." *In re Solutia, Inc.*, 379 B.R. 473, 483 (Bankr. S.D.N.Y. 2007) (citation omitted). If an objection refuting at least one of the claim's essential allegations

---

[8]    Specifically, in reference to the GMACM Claim, Randle states that

> the claim is a result of damages sustained as a result of the wrongful seizure by debtor, GMAC, LLC of the residence of Randle pursuant to a non-judicial foreclosure sale of [the Property], **which occurred on Wednesday, October 26, 2011, more than one (1) year after the entry of judgment in the referenced Land Court case**.

(Response at 2.)

In reference to the RFC Claim, Randle states that GMACM's "seizure" of the Property "was wrongful as a matter of law, as such seizure was in violation of the statutory scheme established for the non-judicial foreclosure of mortgage deeds in the Commonwealth pursuant [to] G.L. c. 183, s. 21, the statutory power of sale. *See*, G.L. c. 244, ss. 11–17C." (*Id.* at 3.) Further, she explains that the RFC Claim "arose as a result of events and claims that occurred *subsequent* to October 12, 2011, and thus are **not** subject to the defenses of *res judicata* since they had yet to occur." (*Id.*)

8

is asserted, the claimant has the burden to demonstrate the validity of the claim. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000). Section 502(b)(1) provides, in relevant part, that a claim may not be allowed to the extent that "such a claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." 11 U.S.C. § 502(b)(1).

Claims objections have a shifting burden of proof. Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Reilly*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000); *see also In re Allegheny Intern., Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) ("In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."). Once this is done, the burden then shifts back to the claimant to produce additional evidence to prove the validity of the claim by a preponderance of the evidence. *Allegheny*, 954 F.2d at 174.

### B. The Proofs of Claim Are Barred by Res Judicata[9]

*Res judicata*, or claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *see also O'Neill v. City Manager of Cambridge*, 700 N.E.2d

---

[9] The District Court's *Eviction Decision* includes an extensive and persuasive analysis of the *res judicata* issue and reaches the same conclusions that this Court independently reaches. Of course, it would have been helpful if the Trust had brought that decision to the attention of the Court. Randle, appearing here *pro se,* likewise ignored the *Eviction Decision* until filing the Emergency Motion. Randle's Response rehashes the arguments on *res judicata* that she previously argued unsuccessfully in the District Court without disclosing that fact.

530, 532 (Mass. 1998). "[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred . . . ." *New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997) (citing 28 U.S.C. § 1738). "In applying the doctrine of *res judicata*, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994) (citation omitted).

Under Massachusetts law, "[t]hree elements are essential for invocation of claim preclusion: (1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." *DaLuz v. Dep't of Corr.*, 746 N.E.2d 501, 505 (Mass. 2001). Privity exists where a party's interests were represented in the prior litigation. *Mongeau v. Boutelle*, 407 N.E.2d 352, 356 (Mass. App. Ct. 1980) (requiring "sufficient legal identity" between the interests of the parties alleged to be in privity and holding that "the rules of prior adjudication apply to nonparties only where a person's interest was represented by a party to the prior litigation"). "Massachusetts deems causes of action identical for claim preclusion purposes if they 'grow[ ] out of the same transaction, act, or agreement, and seek[ ] redress for the same wrong.'" *Andrew Robinson Intern., Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 52 (1st Cir. 2008) (quoting *Brunson v. Wall*, 541 N.E.2d 338, 341 n.9 (Mass. 1989)). Massachusetts state courts, similar to those in a majority of the states, follow the federal rule that, for preclusion purposes, "a trial court judgment is final and has preclusive effect regardless of the fact that it is on appeal." *O'Brien v. Hanover Ins. Co.*, 692 N.E.2d 39, 44 (Mass. 1998); *see also Currie v. Grp. Ins. Comm'n*, 290 F.3d 1, 16 (1st Cir. 2002).

Starting with the third element of *res judicata* (final judgment on the merits), the parties do not dispute that the MA Land Court entered the Summary Judgment Decision in the

10

Declaratory Action dismissing that action with prejudice; that decision constituted a judgment on the merits. Randle argues that the Summary Judgment Decision is not a final judgment for *res judicata* purposes because there is a pending appeal of that decision. Randle relies on Massachusetts Rule of Civil Procedure 62(d), which states that "the taking of an appeal from a judgment shall stay execution upon the judgment during the pendency of the appeal." MASS. R. CIV. P. 62(d). But that rule applies to stay proceedings to enforce a judgment pending appeal; it does not affect the finality of a judgment for *res judicata* purposes. As explained above, Massachusetts follows the majority rule that a judgment is final even if there is a pending appeal. *O'Brien*, 692 N.E. 2d at 44. Therefore, this element for application of *res judicata* is satisfied.[10]

As to the first element of *res judicata* (identity or privity of parties), GMACM and Randle were both parties to the Declaratory Action. RFC was not a party to that action, so the RFC Claim can only be barred if GMACM represented RFC's interests in the Declaratory Action. *See Mongeau*, 407 N.E. 2d at 356. Because the RFC Claim stems from GMACM's alleged defective title or wrongful foreclosure, GMACM's interests in the Declaratory Action were aligned with RFC's interests, and Randle is barred from bringing that claim against RFC (as successor in interest to GMACM) to the same extent she is barred from bringing it against GMACM.

As to the second element of *res judicata* (identity of the cause of action), "[c]laim preclusion . . . prevents relitigation of all matters that were *or could have been* adjudicated in the action." *O'Neill*, 700 N.E.2d at 532 (emphasis added) (citation omitted). In her Response,

---

[10] As an alternative argument, the Trust asserts that Randle failed to timely file her appeal. Randle had thirty days to file her appeal pursuant to MASS. R. APP. P. 4(a), and, according to the Trust, that period lapsed on September 26, 2011. Randle's appeal, although dated September 23, 2011, was not docketed by the MA Land Court until September 27, 2011. The Trust contends that her appeal was therefore untimely. The docket for these cases reveals no activity related to the appeal after the filing of the notice of appeal, and a search of the online docket for the Massachusetts Appeals Court shows no record of any active appeal by Randle. In any event, an active appeal of the Summary Judgment Decision would not affect the finality of that judgment.

11

Randle asserts that her claims could not have been adjudicated in the Declaratory Action because the claims are based on the wrongful foreclosure of her Property, an event that took place *after* the MA Land Court had granted summary judgment to GMACM and denied her motion for reconsideration. But Randle's claims are clearly based, at least in part, on GMACM's right to foreclose on the Property. Those allegations were, *or could have been*, adjudicated in the Declaratory Action, and are therefore barred by *res judicata*.

But claims against the Debtors for GMACM's actions in conducting the foreclosure sale—other than claims based on GMACM's alleged defective title and lack of standing to foreclose (which claims *are* barred by *res judicata*)—were not (and could not have been) previously litigated, and are not barred by *res judicata*. *See Eviction Decision*, 2013 WL 6195624, at *3. Despite repeated opportunities, however, Randle did not articulate to this Court—in her proofs of claim, her Response, the Emergency Motion, or at the Hearing (at which she did not appear)—what the basis of those claims might be, other than citing generally to the Massachusetts statutes. None of that is sufficient to overcome expunging of her bankruptcy claims. Thus, even though a portion of her claims may not be barred by *res judicata*, Randle's claims are not entitled to *prima facie* weight since the Trust shifted the burden back to her in the Objection and Reply, and Randle failed to adequately carry her burden to prove her claims by a preponderance of the evidence. Her filings, including her proofs of claim, do not assert facts supporting claims based upon the way the Auction was conducted. Randle had an opportunity in her Response to explain why she has claims for money damages against GMACM or RFC, but she failed to do so; the Response simply argued that her claims are not barred by *res judicata* because they are based on the Debtors' conduct in connection with the Auction, citing generally to the Massachusetts statutes without indicating what conduct by the Debtors violated those

statutes. Thus, Randle's claims must be disallowed and expunged. As explained below, however, the Court will lift the automatic stay to permit Randle to continue prosecuting her affirmative defenses and counterclaims in the District Court, including any related damages claims that the District Court permits Randle to assert in that action.

        **C.**      **The Automatic Stay Is Lifted to Permit Randle to Pursue Her Remaining Affirmative Defenses and Counterclaims in the District Court**

Presently, the Eviction Action in the District Court appears to involve only claims for equitable relief—RFC seeks to evict Randle or her tenant from the Property, and Randle seeks to bar that relief on equitable grounds. It is questionable whether Randle has suffered any damages since she is still in possession of the Property, but that is not an issue before the Court at this time. Randle's Claim Nos. 4133 and 4199 do not articulate a basis for any claim for damages based on the Debtors' sale of her home and their efforts to evict her from the Property; therefore, the claims must be expunged. As explained below, however, to the extent necessary, the Court lifts the automatic stay to permit Randle to prosecute any claims against GMACM and RFC that are not barred by *res judicata*. If Randle recovers a money judgment against GMACM or RFC, she will have to return to this Court to seek to have any monetary claims allowed under section 502(j) of the Bankruptcy Code; any distribution to Randle on an allowed claim would then be subject to the waterfall provisions of the confirmed Plan.

Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not, however, define the phrase "for cause." In determining whether "cause" exists to lift the stay to permit litigation to

proceed against debtors outside of the bankruptcy courts, courts consider the following factors (the "*Sonnax* Factors"):

> (1) whether relief would result in a partial or complete resolution of the issues,
> (2) the lack of any connection with or interference with the bankruptcy case,
> (3) whether the other proceeding involves the debtor as a fiduciary,
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action,
> (5) whether the debtor's insurer has assumed full responsibility for defending the action,
> (6) whether the action primarily involves third parties,
> (7) whether litigation in another forum would prejudice the interests of other creditors,
> (8) whether the judgment claim arising from the other action is subject to equitable subordination,
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor,
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation,
> (11) whether the parties are ready for trial in the other proceeding and
> (12) the impact of the stay on the parties and the balance of harms.

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990). Not all of the *Sonnax* Factors are relevant in every case, and "cause" is a broad and flexible concept that must be determined on a case-by-case basis. *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999)).

The Court concludes that the relevant *Sonnax* Factors weigh in favor of lifting the stay to allow all claims related to the Property to be adjudicated in the District Court. It is more efficient for all of Randle's claims to be resolved in a single proceeding rather than split between the District Court and this Court. Because the Debtors are actively litigating the Eviction Action in the District Court, creditors or other parties in interest will not be prejudiced by lifting the stay. Allowing Randle to pursue her monetary claims—if she has any—in the pending Eviction Action will result in a complete resolution of these issues. If the District Court permits Randle to

14

assert and prosecute counterclaims for damages, and she is able to secure a judgment in the District Court based on claims not barred by *res judicata*, Randle can then seek to reinstate her claims in these cases pursuant to Bankruptcy Code section 502(j). *See* 11 U.S.C. § 502(j) ("A claim that has been allowed or disallowed may be reconsidered for cause . . . .").

### III. CONCLUSION

For the above reasons, the Court **SUSTAINS** the Objection to Randle's claims and **EXPUNGES** Claim Nos. 4133 and 4199. Randle's allegations against the Debtors were, or could have been, adjudicated in the Declaratory Action before the MA Land Court. To the extent the GMACM Claim is barred by *res judicata*, so is the RFC Claim.

The automatic stay is lifted to the extent required to permit the District Court to adjudicate all claims, affirmative defenses and counterclaims properly asserted in the action pending in that court. If Randle is successful in recovering damages in the District Court, she will have to return here seeking to reinstate her claims pursuant to Bankruptcy Code section 502(j).

**IT IS SO ORDERED.**

Dated: April 10, 2014
      New York, New York

                                                    ___*Martin Glenn*_____
                                                        MARTIN GLENN
                                         United States Bankruptcy Judge