

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Hon. Judge Martin Glenn, Presiding |
| | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

## MOTION TO RECONSIDER THE ORDER DENYING THE PRO SE MOTION BY FRANCINE SILVER FOR PAYMENT OF CLAIM # 61

Movant hereby respectfully requests that the Honorable Judge reconsiders his order denying payment of claim # 61.

The Order denying the Motion argues on Debtors behalf but ignores and fails to address the Motions arguments. The Order states that the Plan provides that the ResCap Borrower Claims Trust and Liquidating Trust have 270 days after the effective date to object but ignores the Motions argument that Article VIII - 2 of the plan makes it clear that claims that were allowed on the effective date can no longer be objected to. It also fails to properly address the plans definition of what an allowed claim is, and when it should have been paid had the Debtors abided by the settlement agreement.

The Order states *"Pursuant to Bankruptcy Code section 502, "[a] claim or interest . . . is*

1

*deemed allowed, <u>unless a party in interest . . . objects.</u>*" The claim was not objected to and under Article VIII - 2 can no longer be objected to. The 270 day objection deadline would only be applicable if the claim had been listed as disputed on the confirmation date. Absent an objection, as per the above quote, the claim is <u>deemed allowed</u>. No further approval by the Court, the Trust or the Debtors is required. The language of the plan is contractually binding.

The Order also ignores my argument regarding promissory estoppel and my argument that payment of the claim in accordance with the settlement agreement would not effect the Debtors ability to object to a claim, although Article VIII would still apply.

It seems the order is not impartial but instead argues for the Debtors and against the motion by cherry picking and taking definitions out of context like for example the 270 day objection deadline. Other definitions are also ignored along with most of my arguments.

The rules listed on NYCOURTS.gov state " *Most important of all, judges are impartial decision-makers in the pursuit of justice. We have what is known as an adversarial system of justice - legal cases are contests between opposing sides, which ensures that evidence and legal arguments will be fully and forcefully presented. The judge, however, remains above the fray, providing an <u>independent and impartial</u> assessment of the facts and how the law applies to those facts.*"

*"Impartiality" denotes absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintaining an open mind in considering issues that may come before the judge. (B) A judge shall not allow family, social, political or <u>other relationships</u> to influence the judge's judicial conduct or judgment.*

*(7) A judge shall dispose of all judicial matters promptly, efficiently and fairly.*

*(E) Disqualification. (1) A judge shall disqualify himself or herself in a proceeding in which the judge's <u>impartiality might reasonably be questioned</u>, including but not limited to instances where: (a) (i) the judge has a personal bias or prejudice concerning a party or (ii) the judge has personal knowledge of disputed evidentiary facts concerning the proceeding; (b) the judge knows that (i) the judge served as a lawyer in the matter in controversy, or (ii<u>) a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter,</u> or (iii) the judge has been a material witness concerning it;"*

In preparing this motion to reconsider I came across the attached EXHIBIT 1, a press release stating that the Honorable Bankruptcy Judge James Peck mediated and was instrumental in brokering the Rescap settlement, the terms of which are now in dispute. He was a colleague of yours and retired from the bench of this very Court before joining the law firm of Debtor's counsel Morrison Foerster, apparently in the same week my motion was filed.

3

It is very difficult to explain how Debtors and their counsel, a self described "leading global law firm" with such a powerful and well qualified army of lawyers were either unwilling, unable and/or for some reason felt or knew that it was unnecessary to respond to my pro se motion unless they recognized the merits of my arguments and were willing to see my motion granted and finally pay the claim.

The Honorable Judge should be impartial and make his Judgment based on the evidence submitted in favor of the motion and the response of the Debtors who in this case decided not to respond. The Honorable Judge should give appropriate consideration to the motions arguments and refrain from asserting a defense for the Debtors especially as they have such extremely highly qualified counsel at their disposal. The Debtors failure to respond to the motion should be regarded as their conceding to my well articulated arguments and their willingness to pay the claim.

THE MOTION SHOULD BE RECONSIDERED AND GRANTED.

Respectfully,

Francine Silver

**EXHIBIT 1**

12-12020-mg    Doc 6774    Filed 04/09/14    Entered 04/11/14 15:28:41    Main Document
Pg 5 of 11

# THE WALL STREET JOURNAL.
WSJ.com

February 19, 2014, 10:50 AM ET

# Lehman Bankruptcy Judge Peck to Join Morrison & Foerster



Lehman Brothers' 2008 filing was the largest-ever U.S. bankruptcy.

Zuma Press

*By Emily Glazer*

As U.S. Bankruptcy Judge James Peck leaves the bench, one object is definitely going with him: a Lehman Brothers baby rattle.

Judge Peck, who presided over the Lehman Brothers bankruptcy, is joining law firm Morrison & Foerster LLP after stepping down from the Manhattan bankruptcy court. The rattle was purchased at an auction of Lehman memorabilia by a participant in the case who also was involved in the Residential Capital LLC Chapter 11 case, in which Judge Peck served as mediator.

Judge Peck spent thousands of hours over 5½ years working on Lehman's U.S. bankruptcy case and related insolvency proceedings in courts around the world. More than 42,000 docket entries were filed in the case, the largest ever U.S. bankruptcy filing.

The judge says the rattle bearing the Lehman name and with links to ResCap is a fitting memento. It was delivered to his chambers with a letter explaining its relation to the

Lehman case after he announced his retirement from the bench. Judge Peck declined to name the rattle's sender but said it wasn't a lawyer involved in the case.

"How do you come up with one item that is emblematic of perhaps the two most significant things I've done in my career?" he said. "This is definitely coming with me."

Judge Peck, who is slated to join the firm March 3, will serve as co-chairman of Morrison & Foerster's global business-restructuring and insolvency group in New York, alongside Gary Lee, who co-heads the firm's finance department.

Judge Peck will focus on cross-border cases, mediation and complex "safe harbor" provisions that shield certain derivatives products in bankruptcy, Mr. Lee said.

Mr. Lee spoke with bankruptcy partner Brett Miller as soon as Judge Peck announced his retirement in hopes the judge might join the firm. "He knows the techniques for mediation…understands the commercial levers, the law, and where the law will go," Mr. Lee said.

Judge Peck, 68 years old, said the Lehman bankruptcy has given him an appreciation for the increasingly global nature of corporate restructuring and insolvency. Lehman collapsed into Chapter 11 protection in September 2008, with affiliates around the world following the U.S. holding company and its brokerage into insolvency proceedings.

Under Judge Peck's purview, an army of lawyers and advisers sorted out tens of thousands of claims and hundreds of disputes among the company's thousands of creditors.

In 2009, about a year into the case, Judge Peck helped initiate a protocol for cross-border communication in the case, allowing parties around the globe to communicate and resolve disputes. In December 2011, three years after the historic filing, Judge Peck signed off a creditor-payment plan for Lehman that is expected to return about $80 billion to creditors, an outcome few thought possible when the investment bank failed with $613 billion in debt.

Cross-border mediation will play a larger role in so-called "mega" bankruptcy cases moving forward, he said, since there is no mechanism for enforcing cooperation between jurisdictions. That was the case with MF Global Holdings Ltd., the commodities brokerage that collapsed into bankruptcy in October 2011. Judge Peck served as the mediator in the case, helping to, among other things, resolve disputes dealing with MF Global affiliates in the U.S. and U.K., including one involving a client of Morrison & Foerster.

Judge Peck's work as mediator in the ResCap Chapter 11 case put him in close quarters

with lawyers at Morrison & Foerster, which represented the mortgage lender. During one negotiating session, Judge Peck traveled among 14 conference rooms in a law office and met with about 140 people in an attempt to reach a deal, Messrs. Lee and Peck said, adding that some mediation sessions lasted until the early hours of the morning. Ultimately, Judge Peck was instrumental in brokering former ResCap parent Ally Financial Inc.'s $2.1 billion settlement with the unit's creditors.

Judge Peck said the cost of the ResCap bankruptcy case, which racked up more than $100 million in legal fees, helped push the parties toward an agreement. Failure in mediation would have led to expensive litigation that would have cut into creditor recoveries, he said.

Judge Peck has also presided over the Chapter 11 cases of cable-TV company <u>Charter Communications</u> Inc. and Extended Stay Hotels, which filed for an initial public offering in July 2013. He brokered in the Chapter 11 cases of American Airlines parent <u>AMR</u> Corp. and <u>Syms</u> Corp., which owned retailer Filene's Basement.

Judge Peck was appointed to the U.S. Bankruptcy Court of the Southern District of New York in January 2006. Before his appointment, he was a partner in the business reorganization practice at Schulte Roth & Zabel LLP.

Copyright 2014 Dow Jones & Company, Inc. All Rights Reserved
This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at
1-800-843-0008 or visit
www.djreprints.com

# MEMORANDUM OF LAW

FED. R. BANKR. P. 3021 ("[A]fter a plan is confirmed, distribution shall be made to creditors whose claims have been allowed, to interest holders whose interests have not been disallowed, and to indenture trustees who have filed claims under Rule 3003(c)(5) that have been allowed.").

Bankruptcy Code section 502, "[a] claim or interest . . . is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502

## ARTICLE I – DEFINITIONS
**"Allowed Unsecured Claims"** means collectively, the GMACM Unsecured Claims, the ResCap Unsecured Claims and the RFC Unsecured Claims that are at any relevant time Allowed.

"Allowed" means, with respect to a Claim against any Debtor, except as otherwise provided herein, (a) a Claim that is (i) listed in the Schedules as of the Effective Date as neither disputed, contingent nor unliquidated, and for which no Proof of Claim has been timely filed, or (ii) evidenced by a valid Proof of Claim or request for payment of Administrative Claim, as applicable, Filed by the applicable Bar Date, and as to which the Debtors or other parties-in-interest have not Filed an objection to the allowance thereof by the Claims Objection Deadline, or (b) a Claim that is Allowed under the Plan or any stipulation or settlement approved by, or Final Order of, the Bankruptcy Court; provided, however, that any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court will not be considered "Allowed Claims" under the Plan, provided further, however, any Claims expunged or disallowed under the Plan or otherwise shall not be Allowed Claims. If a Claim is Allowed only in part, references to Allowed Claims include and are limited to the Allowed portion of such Claim. Notwithstanding anything to the contrary herein, no Claim that is disallowed in accordance with Bankruptcy Rule 3003 or section 502(d) of the Bankruptcy Code is Allowed and each such Claim shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

"Disputed Borrower Claim" means any Borrower Claim that is not Allowed, until it is disallowed or expunged by Final Order, written agreement, or under the Plan.

"Claims Objection Deadline" means (i) two hundred seventy (270) days following the Effective Date or (ii) such other later date the Bankruptcy Court may establish upon a motion by the Liquidating Trust, which motion may be approved without a hearing and without notice to any party.

1

4.2 Borrower Claims Payments.
(a) As soon as practicable following the Effective Date, the Borrower Claims Trust shall make a Borrower Claims Payment to each holder of a Borrower Claim that is Allowed as of the Effective Date. (b) Each holder of a Borrower Claim that was not Allowed as of the Effective Date and that is subsequently Allowed, in whole or in part, shall receive from the Disputed Claims Reserve a Borrower Claims Payment in respect of such Claim following the date such Claim becomes Allowed. Such Borrower Claims Payments shall be made at such time and from time to time as determined by the Trust Committee, provided that a Borrower Claims Payment shall be made no later than ninety (90) days following date on which therespective Borrower Claim becomes Allowed.

### ARTICLE VIIII – 2 -- Allowance of Claims

On or after the Effective Date, the Liquidating Trust shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim (i) deemed Allowed as of the Effective Date or (ii) waived, relinquished, exculpated, released, compromised, settled, or Allowed in the Plan or in a Final Order. Except as otherwise provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date, including the Confirmation Order, no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed (a) under the Plan or the Bankruptcy Code or (b) by Final Order of the Bankruptcy Court, including the Confirmation Order.

## PROOF OF SERVICE
### Case No. 12-12020 (MG) In re Residential Capital, LLC et al.

**Delivery by U.S. Mail**: Proof of Service by Mail.

I, Marcus Silver, declare that I am over the age of eighteen years and not a party to the action. My address is 8613 Franklin Avenue, Los Angeles, CA 90069.

On March 31, 2014, I served conforming copies of the Motion for Reconsideration of Order denying the Pro Se Motion for payment of Claim # 61 by placing a true copy in the United States mail enclosed in a sealed envelope with postage fully prepaid, addressed to as follows:

**United States Bankruptcy Court**
Honorable Judge Martin Glenn
Southern District of New York
One Bowling Green
New York, NY 10004

**Counsel to the Debtors**
The Honorable Judge James Peck
Norman Rosenabaum
Larren M. Nashelsky
Gary S. Lee
Lorenzo Marinuzzi
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on March 31st, 2014 in Los Angeles, California.

_____          MARCUS SILVER
Signature                                         Type or Print Name