Hearing Date: May 15, 2014 at 10:00 a.m. (Prevailing Eastern Time)
Response Deadline: April 28, 2014 at 4:00 p.m. (Prevailing Eastern Time)

**MORRISON & FOERSTER LLP**
250 West 55th St.
New York, New York 10019
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for The ResCap Borrower*
*Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

--------------------------------------------------------------

## NOTICE OF THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NO. 3582 OF JUDITH AND JAMES C. WINKLER

**PLEASE TAKE NOTICE** that the undersigned have filed the attached *ResCap Borrower Claims Trust's Objection to Claim No. 3582 of Judith and James C. Winkler* (the "Objection").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Objection will take place on **May 15, 2014 at 10:00 a.m. (Eastern Time)** before the Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District of New York,

Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Room 501.

**PLEASE TAKE FURTHER NOTICE** that responses, if any, to the Objection must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to be received no later than **April 28, 2014 at 4:00 p.m. (Eastern Time)**, upon (a) Chambers of the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408; (b) counsel to the ResCap Borrower Claims Trust, Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019 (Attention: Gary S. Lee, Norman S. Rosenbaum, Jordan A. Wishnew and Jonathan M. Petts); (c) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention: Linda A. Riffkin and Brian S. Masumoto); and (d) The ResCap Borrower Claims Trust, Polsinelli PC, 900 Third Avenue, 21st Floor, New York, NY 10022, (Attn: Daniel J. Flanigan).

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written response to the relief requested in the Objection, the Bankruptcy Court may deem any opposition waived, treat the Objection as conceded, and enter an order granting the relief requested in the Objection without further notice or hearing.

Dated:  April 11, 2014

/s/ Norman S. Rosenbaum

Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

**Hearing Date: May 15, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: May 2, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for the ResCap Borrower Claims
Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------

| | ) | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

-------------------------------------------------------

**RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NO. 3582 OF**
**<u>JUDITH A. AND JAMES C. WINKLER</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

JURISDICTION, VENUE, AND STATUTORY PREDICATE ................................................. 2

BACKGROUND .............................................................................................. 3

RELIEF REQUESTED......................................................................................... 5

OBJECTION.................................................................................................. 5

NOTICE..................................................................................................... 15

CONCLUSION............................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Feinberg*,
   442 B.R. 215 (Bankr. S.D.N.Y. 2010) ...........................................................................................6

*In re Oneida Ltd.*,
   400 B.R. 384 (Bankr. S.D.N.Y. 2009), *aff'd sub nom.*, *Peter J. Solomon Co., L.P. v.
   Oneida Ltd.*, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010) ......................................2

*In re Rockefeller Center Properties*,
   272 B.R. 524 (Bankr. S.D.N.Y. 2000)..........................................................................................2

STATUTES

11 U.S.C. § 502(a) ........................................................................................................................5

11 U.S.C. § 502(b)(1) ...................................................................................................................5

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Borrower Claims Trust (the "Trust"), established pursuant to the

terms of the Chapter 11 plan confirmed in the above captioned bankruptcy cases (the "Chapter

11 Cases") [Docket No. 6065], as successor in interest to the debtors  (collectively, the

"Debtors") in the above captioned Chapter 11 Cases with respect to Borrower Claims, hereby

submits this objection (the "Objection") seeking to disallow and expunge, without leave to

amend, proof of claim no. 3582 (the "Claim") filed by Judith A. Winkler and James C. Winkler

(collectively, the "Claimants") against ResCap in the face amount of $298,682.96, pursuant to

section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), on the grounds that the

Claim fails to state a basis for liability against the Debtors.[1]  The Trust seeks entry of an order

substantially in the form annexed hereto as Exhibit 1 (the "Proposed Order") granting the

requested relief.  In support of the Objection, the Trust submits the declaration of Lauren

Graham Delehey, Chief Litigation Counsel for the ResCap Liquidating Trust (the "Delehey

Declaration"), attached hereto as Exhibit 2, and the declaration of Norman S. Rosenbaum of

Morrison & Foerster LLP, counsel to the Borrower Trust (the "Rosenbaum Declaration"),

attached hereto as Exhibit 4.

**PRELIMINARY STATEMENT**

1.      The Trust examined the Claim as well as the Response (defined below)

and the statements and exhibits submitted in support thereof.  A copy of the Claim and

---

[1] The Trust reserves all of its rights to object on any other basis to the Claim not set forth in this Objection, and the Trust reserves all of its rights to amend this Objection should any further bases come to light.

ny-1134866

Response is attached hereto as Exhibit 3. The proof of claim filed by the Claimants did not

state a cognizable factual or legal basis for the claim, but based on a review of the

supporting materials the Trust understands the Claim to relate to loan modification requests

and alleged late and/or misapplied payments. The Trust examined the Debtors' books and

records in an effort to assess the Claimants' allegations, and as described in greater detail

herein, discovered that in 2013 the Claimants received a permanent loan modification from

the Debtors. As a result, the Trust asserts that no basis exists for a valid claim against the

Debtors. The Debtors have remedied the Claimants' purported concerns and provided the

Claimants with a loan modification that they accepted and that was consummated.

2.      If an objection refuting at least one of the claim's essential allegations

is asserted, the claimant has the burden to demonstrate the validity of the claim by a

preponderance of the evidence. See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y.

2009), aff'd sub nom., Peter J. Solomon Co., L.P. v. Oneida, Ltd., No. 09-cv-2229, 2010

U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); In re Rockefeller Ctr. Props., 272 B.R.

524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr. Props. (In re

Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed. Appx. 40 (2d Cir.

2002). The Claimants have failed to provide a sufficient explanation as to why the Claim

represents a valid claim that should be allowed against the Debtors' estate. Accordingly,

the relief sought in the Objection should be granted with respect to the Claimants.

2

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

3.      This Court has jurisdiction over this Objection under 28 U.S.C.

§ 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before

this Court under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein are section

502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

## BACKGROUND

5.      On May 14, 2012, each of the Debtors filed a voluntary petition in this

Court for relief under chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases are

being jointly administered pursuant to Bankruptcy Rule 1015(b).

6.      On May 26, 2012, the Court entered an order [Docket No. 96]

appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in

these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain,

and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and

(b) maintain the official Claims Register for the Debtors (the "Claims Register").

7.      On March 21, 2013, this Court entered an order approving procedures

for the filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket

No. 3294] (the "Procedures Order").  The Procedures Order includes specific protections for

Borrowers[2] and sets forth a process for the Debtors to follow before objecting to certain

categories of Borrower Claims (the "Borrower Claim Procedures").

---

[2] As used herein, the terms "Borrower" and "Borrower Claims" have the meanings ascribed to them in the
Procedures Order [Docket No. 3294].

ny-1134866

8.      On December 11, 2013, the Court entered an *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "<u>Confirmation Order</u>") approving the terms of the Chapter 11 plan, as amended (the "<u>Plan</u>"), filed in these Chapter 11 Cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred [Docket No. 6137].

9.      The Plan provides for the creation and implementation of the Trust, which is established for the benefit of Borrowers who filed claims to the extent such claims are ultimately allowed either through settlement or pursuant to an Order of the Court.  <u>See</u> Plan, Art. IV.F.  The Trust was established to, among other things, "(i) direct the process, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust or use in satisfying the Allowed Borrower Claims."  <u>See</u> <u>id</u>.

10.     The Debtors previously objected to the Claim in the *Debtors' Thirtieth Omnibus Objection to Claims (No Liability Borrower Claims – Books and Records)* (the "<u>Omnibus Objection</u>") [Docket No. 4887].  The Claimants responded to the Omnibus Objection on October 8, 2013 (the "<u>Response</u>") [Docket No. 5306], and the Debtors submitted a Reply on November 13, 2013 [Docket No. 5728] (the "<u>Reply</u>").  In the Omnibus Objection, the Debtors unintentionally misidentified the basis of the objection to the Claim and subsequently corrected the basis for the objection to the Claim in the Reply.  As a result, the Court found that the Omnibus Objection did not sufficiently shift the burden of proof to the Claimants, and therefore, the Claimants did not receive a sufficient opportunity

4

to respond to the Objection [Docket No. 6334].  For this reason, the Court denied the

Omnibus Objection with regard to the Claim without prejudice.

## RELIEF REQUESTED

11.     The Trust files this Objection, pursuant to Bankruptcy Code section

502(b) and Bankruptcy Rule 3007, and seeks entry of an order, substantially in the form

annexed hereto as Exhibit 1, disallowing and expunging the Claim from the Claims Register

in its entirety.

## OBJECTION

12.     A filed proof of claim is "deemed allowed, unless a party in interest …

objects."  11 U.S.C. §502(a).  Moreover, section 502(b)(1) of the Bankruptcy Code

provides, in relevant part, that a claim may not be allowed to the extent that "such claim is

unenforceable against the debtor and property of the debtor, under any agreement or

applicable law…." 11 U.S.C. 502(b)(1).  Furthermore, once the objection refutes at least one

of the essential allegations of the claim, the burden of persuasion is on the holder of a proof

of claim to establish a valid claim against a debtor.  Feinberg v. Bank of N.Y. (In re

Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

13.     Upon review of the Claim and the Response, as explained in further

detail below and in the Delehey Declaration, the Debtors and the Trust conducted an

exhaustive examination of the Debtors' books and records to assess the allegations made in

the Claim and Response.  The Trust asserts that the Claimants' allegations of liability have

no validity and are simply unsubstantiated and devoid of fact and without legal basis.

5

Accordingly, for the reasons discussed herein, the Claim should be disallowed and expunged from the Claims Register.

14.     The Claimants filed proof of claim number 3582 against Residential Capital, LLC in the amount of $298,682.96 in relation to their mortgage note, which secured a loan (the "Loan") that originated with GMAC Mortgage, LLC ("GMACM") on January 28, 2008.   Federal Home Loan Mortgage Corporation ("Freddie Mac") is the investor for the Loan.  GMACM began servicing the Loan on January 28, 2008, and on February 16, 2013, servicing of the Loan was transferred to Ocwen Loan Servicing, LLC ("Ocwen").  See Delehey Declaration at ¶ 6.

15.     The Claim lists nothing in the box provided for Claimants to state the basis for their Claim. Nonetheless, the Trust understands that the Claim relates to loan modification requests and alleged late and/or misapplied payments occurring after the conclusion of litigation in the District Court of Minnesota.  See Delehey Declaration at ¶ 7. Specifically, the letter from claimants' counsel attached to the Claim advises that the Claimants will "seek redress through litigation" until GMACM "offers the Winklers a permanent modification under fair and equitable terms."

16.     In connection with the reconciliation of the Claim, the Liquidating Trust, on behalf of the Trust, reviewed the Claimants' payment history, the Debtors' internal servicing notes, as well as the Claimants' loan modification applications, loan modification denial letters, loan modification document request letters and any applicable investor guidelines.  Based on such review, the Trust verified that from April 2012 through July 2013 GMACM and the Claimants, and/or their authorized representatives, engaged in

6

regular communication regarding loan modification requests and payment issues.  See

Delehey Declaration at ¶ 8. More importantly, in 2013 the Claimants obtained a permanent

loan modification from the Debtors. Therefore, the Claimants state no valid basis for a claim

against Residential Capital or any of its debtor-affiliates.

GMACM's Effort to Furnish the Claimants with a Loan Modification

17.    Below, the Trust provides the Court with a summary of the servicing

notes maintained by the Debtors in the ordinary course of their business, which detail

GMACM's interactions with the Claimants while the Claimants sought to obtain a

modification of the Loan.  A copy of the servicing notes is attached to the Delehey

Declaration as Exhibit A.

18.    On April 3, 2012, the Claimants were denied a HAMP loan

modification because GMACM misapplied the Claimants' March 2012 payment, which was

supposed to be applied to a trial HAMP loan modification.[3]  As a result of GMACM's error,

the Claimants' April 2012 payment could not be applied toward the trial HAMP loan

modification because the trial plan was not active.  Ultimately, the Claimants were denied a

HAMP permanent loan modification (the "First HAMP Modification") due to GMACM's

misapplication of the March 2012 payment.  See Delehey Declaration at ¶ 9.  As explained

below, GMACM undertook exhaustive and successful efforts to rectify this error.

---

[3] GMACM erroneously placed the Claimants' March  2012 payment into a suspense account instead of applying
such payment toward the trial loan modification.  A "suspense account" refers to an account in which payments that
are less than the amount of the regular monthly payment are held until such time that payments totaling the regular
monthly payment have been received.  See Delehey Declaration at ¶ 9.

7

19.     On June 20, 2012, the Debtors received a new loan modification request from the Claimants; however, certain documents were missing from the information submitted to the Debtors.  The Debtors informed the Claimants' attorney, Patrick Boyle, of the missing documents on June 26, 2012, and the Debtors mailed missing item letters to the Claimants on June 25, 2012 and July 27, 2012. See Delehey Declaration at ¶ 10.

20.     On August 9, 2012, GMACM spoke with the Claimants' authorized representative, Austin Bowyer, regarding the misapplication of the Claimants' March 2012 payment and the denial of the First HAMP Modification.  Mr. Bowyer was advised that if the Claimants would make the April 2012 payment required to complete the HAMP trial loan modification, then the Claimants would be approved for a HAMP permanent loan modification (the "Second HAMP Modification").  Mr. Bowyer was further informed that payment would remain due on the Loan for the months of June 2012 through August 2012 because the HAMP trial loan modification had only been in effect through May 2012.  On August 10, 2012, Mr. Bowyer inquired about certain property inspection fees that were incurred by the Claimants for the months of June 2012 through August 2012, and noted that such fees would not have been incurred had the First HAMP Modification been approved.  Due to the fact that the First HAMP Modification was denied due to GMACM's error, GMACM agreed to waive the property inspection fees, which totaled $56.50.  See Delehey Declaration at ¶ 11.

21.     On August 10, 2012, a GMACM representative again spoke with Mr. Bowyer, who indicated that the Claimants would submit the final trial loan modification payment that was due in April 2012 and would make the required payments for June 2012 through August 2012.  See Delehey Declaration at ¶ 12.

8

22.     On August 14, 2012, the Claimants submitted a payment of $2,169.43, plus $8.15 for the pay-by-phone fee, to complete the April 2012 HAMP trial loan modification payment.  Mr. Bowyer then inquired as to whether two of the Claimants' remaining due payments could be included in the loan modification.  GMACM advised that the Claimants could make two payments equal to one and a half payments to cover the amounts due on the Loan for the moths of June 2012 through August 2012.  Moreover, on August 16, 2012, GMACM sent a letter (the "August 16 Letter") to Mr. Boyle explaining: (i) why the First HAMP Modification was previously cancelled; (ii) that the Claimants' April payment was received; and (iii) that GMACM, in an effort to correct the cancellation of the First HAMP Modification resulting from the misapplication of the March 2012 payment, offered to the Claimants the Second HAMP Modification on the same terms as the First HAMP Modification and waived the $56.50 in property inspection fees.  The new principal balance on the Second HAMP modification was $298,682.96. See Delehey Declaration at ¶13.

23.     On August 20, 2012, a GMACM representative advised Mr. Bowyer that the Second HAMP Modification would be effective as of June 1, 2012 and that the Claimants would need to make payments on the Loan for the months of June 2012 through August 2012 to bring their account current.  On August 22, 2012, the Second HAMP Modification documents were mailed to the Claimants.  See Delehey Declaration at ¶ 14.

24.     On September 7, 2012, a GMACM representative advised Mr. Boyle, that the Claimants needed to sign the Second HAMP Modification documents and return such documents to GMACM no later than September 29, 2012.  Mr. Boyle was further advised that GMACM would work with the Claimants to establish a repayment plan to bring

ny-1134866

current the past due payments for June 2012 through August 2012.  Mr. Boyle requested

that GMACM refrain from assessing any fees or late charges while the parties were working

to establish a repayment plan.  GMACM agreed to waive any such late charges if the

Second HAMP Modification was executed.  See Delehey Declaration at ¶ 15.

25.    On September 18, 2012, Mr. Boyle inquired as to whether any funds

on the Claimants' account could be used toward the past due payments.  A GMACM

representative informed Mr. Boyle that any such funds have already been applied to the

Second HAMP Modification and could not be used by the Claimants toward payments due

on their account.[4]  In addition, Mr. Boyle was reminded that the signed Second HAMP

Modification documents needed to be received by GMACM no later than September 29,

2012.  On September 20, 2012, the Claimants inquired as to what payments would be due on

the Loan once the Second HAMP Modification became effective, and were advised that

payments would be due for the months of June 2012 through September 2012.  See Delehey

Declaration at ¶ 16.

26.    On September 26, 2012, Mr. Boyle spoke with a GMACM

representative and was advised that the Claimants could apply for a new loan modification

if they were unable to make payments on the Loan for the months of June 2012 through

September 2012; however, the Claimants would not qualify for another HAMP loan review

due to their account having already been approved for a HAMP permanent loan

---

[4] Specifically, Mr. Boyle wanted to use any of the Claimants' funds that were still held in a suspense account toward their mortgage account.  However, the Debtors were unable to do so because any of the Claimants' funds that were held in a suspense account would have been received as part of a trial loan modification, and thus would have already been included in the terms of the permanent loan modification offered to the Claimants.  See Delehey Declaration. at ¶ 16, n.4.

modification.  Mr. Boyle inquired as to whether eighteen months of late charges[5] could be

waived and was advised that GMACM would not approve such a waiver.  See Delehey

Declaration at ¶ 17.

      27.     On September 27, 2012, Mr. Boyle notified GMACM that the

Claimants had still not yet decided whether they wanted to accept the Second HAMP

Modification.  Mr. Boyle was again reminded that the signed Second HAMP Modification

documents needed to be received by GMACM no later than September 29, 2012.  See

Delehey Declaration at ¶ 18.

      28.     On September 28, 2012, Mr. Boyle inquired as to whether a manager

could re-review the Claimants' account for a new HAMP loan modification.  Mr. Boyle was

advised that a HAMP loan modification would no longer be an option for the Claimants,[6]

but that the Claimants could apply for a traditional loan modification.  See Delehey

Declaration at ¶ 19.

      29.     On October 12, 2012, a GMACM representative advised Mr. Boyle

that the Claimants could either (i) move forward with the Second HAMP Modification and

GMACM would provide a twelve month repayment plan to assist the Claimants with

bringing their account current or (ii) apply for a traditional loan modification.  On October

---

[5] The Claimants incurred late charges when they failed to make a mortgage payment by the 16th of any given
month.  GMACM received late payments from the Claimants for the following months: May and June 2008,
September and October 2008, December 2008 through March 2009, May 2009, July through November 2009, April
and May 2010 and July 2010 through April 2011.  See Delehey Declaration at ¶ 17, n. 5.

[6] In general, once a borrower is approved for a HAMP loan modification and such modification is put into place, the
borrower cannot obtain another HAMP loan modification in the future.  Moreover, if a borrower was approved for a
HAMP loan modification but does not return the necessary paperwork, does not accept the terms of the HAMP loan
modification or cancels the HAMP loan modification, then such borrower still would not be eligible for another
HAMP loan modification in the future.  See Delehey Declaration at ¶ 19, n. 6.

15, 2012, Mr. Boyle advised GMACM that he would be speaking with the Claimants regarding their loan modification options, and on October 16, 2012, a GMACM representative twice attempted to follow-up with Mr. Boyle, but such attempts were unsuccessful.  <u>See</u> Delehey Declaration at ¶ 20.

30.    On or about October 29, 2012, Mr. Boyle informed GMACM that the Claimants decided to apply for a traditional loan modification.  Accordingly, GMACM denied and closed-out the Second HAMP Modification, notified the Claimants of the denial of the Second HAMP Modification and mailed the Claimants a financial package to be completed in connection with the requested traditional loan modification.  <u>See</u> Delehey Declaration at ¶ 21.

31.    On November 14, 2012, GMACM received a blank loan modification package from the Claimants, and, on November 19, 2012, GMACM mailed to the Claimants a missing items letter.  On November 30, 2012, Mr. Boyle spoke with a GMACM representative and was advised of the missing items letter and the process for obtaining a loan modification package from GMACM's website.  On December 28, 2012, another missing items letter was mailed to the Claimants, and on January 16, 2013, GMACM mailed a loan modification denial letter to the Claimants because GMACM did not receive the requested missing information. On January 23, 2013, GMACM received another loan modification package from the Claimants, and on January 25, 2013, a follow-up missing items letter was mailed to the Claimants.  <u>See</u> Delehey Declaration at ¶ 22.

32.    As noted above, on February 16, 2013 servicing of the Claimants' loan was transferred to Ocwen.  On March 4, 2013, the Claimants' attorney inquired as to

ny-1134866

whether the Claimants could still submit the documents needed for a loan modification

review, and was advised that the Claimants could have until March 15, 2013 to submit the

documents.  On March 19, 2013, a letter was mailed to the Claimants informing them that

because they refused the Second HAMP Modification they could not be considered for a

HAMP loan modification at that time, but that their account would be reviewed for a

traditional loan modification. <u>See</u> Delehey Declaration at ¶ 23.

33.     On March 20, 2013, a traditional <u>trial</u> loan modification was approved.

On April 5, 2013, Mr. Boyle advised Ocwen that the Claimants accepted the trial plan and

would submit the executed trial loan modification documents.  The Claimants made three

payments under this traditional trial loan modification.  <u>See</u> Delehey Declaration at ¶ 24.

34.     On July 15, 2013, a traditional permanent loan modification (the

"<u>Traditional Modification</u>") was approved and, as of that date, the Claimants' account was

current.  Prior to the Traditional Modification, the Claimants' account was twenty-one

months delinquent.  The Traditional Modification brought their account current, reduced

their interest rate to 4% from 5.875%, and reduced their monthly payment to $1,780.73 from

$2,071.08.  This is a lower interest rate than was offered under the original loan and the

Second HAMP Modification and a lower monthly payment than what was offered to the

Claimants under the First and Second HAMP Modifications.[7] <u>See</u> Delehey Declaration at ¶

25.

---

[7] The First HAMP Modification did not include an agreement on a new interest rate, the interest rate offered under
the Second HAMP Modification was 4.875%.  The monthly payment under the First HAMP Modification was
$2,169.43 and under the Second HAMP Modification the monthly payment was $2,163.36.

35.     In addition to the above described correspondence, Mr. Boyle also sent several letters to GMACM, most of which requested, *inter alia*, information regarding the denial of the HAMP loan modifications and other loan modification options.  GMACM responded to Mr. Boyle's letters on the following dates: August 16, 2012; September 10, 2012; October 12, 2012; November 27, 2012; December 3, 2012; December 17, 2012; and January 18, 2013.  See Delehey Declaration at ¶ 26.

36.     While the Liquidating Trust does not have access to the last few months of the Claimants' payment history because it does not have access to Ocwen's 2014 servicing notes, the Claimants were making payments under the loan modification through December, 2013.  See Delehey Declaration ¶ 27. Therefore, it appears that the Claimants are able to make the payments required under the Traditional Modification.

37.     Based on the above information, the Trust believes that the Debtors do not have any liability with respect to the Claim because the Debtors, at all times, complied with the appropriate investor guidelines and policies governing the loan modification process and acted appropriately to correct GMACM's misapplication of the Claimants' March 2012 payment. The Debtors were available to the Claimants and responsive to their requests. The Debtors worked with the Claimants to offer them a modification that put them in the exact same position they would have been without the Debtors' error.  The amount listed on the proof of claim filed by the Claimants was the balance offered to them in the Second HAMP modification that they refused when they opted to apply for the Traditional Modification.  As the Traditional Modification was granted and accepted by the Claimants, even were the Claimants to have a cognizable legal basis for their Claim (and the Trust

14

submits there is none) the Claimants cannot show that they have been damaged in any way. In fact, the opposite is true, as they were afforded appreciable monetary relief.

38.    If the Claim is not disallowed and expunged in its entirety, the Claimants may potentially receive a wholly improper recovery to the detriment of other Trust beneficiaries.

39.    Accordingly, to avoid the possibility that the Claimants receive improper recovery against the Debtors' estates, and to ensure the Debtors' creditors are not prejudiced by such improper recoveries, the Trust requests that the Court disallow and expunge the Claim in its entirety.  Further, the Trust reserves the right to object on any other basis to the Claim should the Court not grant the relief requested herein.

## NOTICE

40.    The Trust has provided notice of this Objection in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141] and the Procedures Order.

## CONCLUSION

WHEREFORE, the Trust respectfully requests entry of the Proposed Order granting the relief requested herein and such other and further relief as this Court may deem proper.

ny-1134866

Dated:  April 11, 2014
         New York, New York

/s/  Norman S. Rosenbaum

Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

16