### Exhibit 3

**Proof of Claim and Response**

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
| --- | --- |

Name of Debtor and Case Number:
**Residential Capital, LLC, Case No. 12-12020**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Judith A. Winkler and James C. Winkler**

Name and address where notices should be sent:

**c/o Law Office of Patrick D. Boyle**
**222 South 9th Street, Suite 3220**
**Minneapolis, MN 55402**

Telephone number: (612) 353-6086          email: pboyle@boylelawbiz.com

Name and address where payment should be sent (if different from above):
1845 Dunkirk Lane
Plymouth, MN 55447

Telephone number: (763) 367-0569          email: jjwinkler@q.com

- ☐ Check this box if this claim amends a previously filed claim.

Court Claim
Number:_____
*(If known)*

Filed on:_____

- ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed: $  298,682.96**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**
(See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** | **3a. Debtor may have scheduled account as:** | **3b. Uniform Claim Identifier (optional):** |
| --- | --- | --- |
| 5356 | (See instruction #3a) | (See instruction #3b) |

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐Real Estate ☐Motor Vehicle ☐Other
Describe:

**Value of Property: $**_____ **Annual Interest Rate**_____% ☐Fixed ☐Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim,**

if any: $_____          **Basis for perfection:** _____

**Amount of Secured Claim: $**_____          **Amount Unsecured: $**_____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.

$_____ (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature:** (See instruction #9) Check the appropriate box.

☐ I am the creditor.   ☑ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or   ☐ I am a guarantor, surety,
(Attach copy of power of attorney, if any.)   their authorized agent.   indorser, or other codebtor.
(See Bankruptcy Rule 3004.)   (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Patrick D. Boyle
Title: Attorney
Company: Law Office of Patrick D. Boyle   (Signature)   10-30-12   (Date)
Address and telephone number (if different from notice address above):
222 South 9th Street, Suite 3220 / Minneapolis, MN 55402

222 South 9th Street, Suite 3220 / Minneapolis, MN 55402

Telephone number: (612) 353-6086          Email: pboyle@boylelawbiz.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both.

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**RECEIVED**

NOV 08 2012

KURTZMAN CARSON CONSULTANTS

12120201211080000000000021

06/15/2012  06:18    9528540901              BOB GAERTNER REMODEL                    PAGE  01/01

## **AUTHORIZATION**

We, Judith and James Winkler, are residents of the State of Minnesota and our mailing address is 1845 Dunkirk Lane North, Minneapolis, Minnesota, 55447. We hereby authorize Patrick Boyle, or any other attorney or paralegal at the law firm Law Office of Patrick D. Boyle, P.A., to discuss and negotiate on my behalf with respect to that certain loan I have with Bank of America, Mortgage Loan No. ████████ My attorney's phone number is (612) 746-2560. The property encumbered by this loan is located at 1845 Dunkirk Lane North, Minneapolis, Minnesota, 55447. Our telephone number is (763) 367-0569.


_____                    _____
Judith Winkler                             James Winkler


Subscribed this _15_ day of June, 2012.

(763) 367-0569

# LAW OFFICE OF PATRICK D. BOYLE

Campbell Mithun Tower
222 S. 9th St.  Suite 3220
Minneapolis, MN  55402
612.353.6086 (p)    651.344.4389    (f)
EMAIL:  pboyle@boylelawbiz.com

September 28, 2012

*VIA FACSIMILE AND U.S. MAIL*

Ms. Jennifer Vance
Loan Specialist
GMAC Mortgage
3451 Hammond Ave
Waterloo, IA 50702
313-665-6189 (facsimile)

Re:    My Client: James and Judith Winkler
        Matter: *Winkler v. GMAC Mortgage Services*
        Loan No. ████████

Dear Ms. Vance:

As you are aware, this firm represents James and Judith Winkler ("the Winklers") with respect to the above-referenced case and their mortgage with GMAC Mortgage Services ("GMAC"), referenced as Mortgage Loan No. Loan No. ████████

This letter is in response to the conveyances you made to this firm via telephone on September 27 and 28, 2012.  I will reiterate these conveyances in writing below:

First, on September 27, 2012, you stated during a telephonic conversation that the Winklers' would not be provided a separate written contract to cover the $8,653.44 arrearage for the months of June, July, August and September, 2012, which had been orally agreed to be satisfied through the Winklers' payments of $500.00 in monthly installments in addition to their regular $2,163.36 payments over the course of eighteen (18) months.

Additionally, on September 27, 2012, you confirmed my clients' fears that if they were to sign the permanent loan modification offered without a separate agreement covering the arrearages, then they would receive a letter every month from GMAC stating that they were in arrears or in breach of contract.  You then attempted to reassure me that GMAC's letters can be ignored and that the Winklers can make the $500.00 per month payments to cover the arrearage.  However, in light of recent case law's interpretation of Minn. Stat. 513.33, I cannot in good conscience advise my clients to agree to a contract of which they would be in instant breach.  I also cannot advise my clients to sign a document that has already been greatly modified orally.

Ms. Jennifer Vance
September 28, 2012
Page 2 of 3
Loan No. ███████

Second, on September 27, 2012, you stated during a telephonic conversation that although the Winklers would not be subject to interest on the $8,653.44 in arrearage, they would instead continue to receive penalties / fees for the due amounts. As explained below, the permanent modification was not offered until four months after the Winklers' full and adequate completion of the Trial Period Plan ("TPP") during which GMAC categorically refused to acknowledge its mistake. Because of this glaring fact, the Winklers' should in no way be assessed any fees / penalties for the delay in the permanent loan modification due to GMAC's blatant mistakes and misrepresentations.

It is undisputed that GMAC failed to honor the Winklers' timely payments for March, 2012 and April, 2012, and thus initiated this current fiasco. Because of GMAC's mistake, the Winklers incurred many additional expenses, including my own legal fees, for which they have been forced to accommodate.

As you recall, my office initially brought GMAC's mistake to its attention on a letter sent on June 19, 2012, in which I stated that "[t]he Winklers had made their payments pursuant to the TPP in a full and timely fashion, thus the currently foreclosure proceedings are unwarranted and invalid." Subsequently, during a June 26, 2012 telephonic communications, a GMAC agent named Ally expressed that the Winklers had failed to submit a full and timely TPP payment for the month of March, 2012. This, obviously, has been proven false. On June 29, 2012 – **nearly two months ago** – my firm disputed GMAC's conclusions and went so far as to provide copies of checks demonstrating unequivocally that the Winklers had fully performed under the TPP. Rather than acknowledging its clear error based on the checks provided, GMAC instead on July 16, 2012 – two more weeks later – provided my office with a payment history that clarified **none** of the pending issues. My office sent a letter detailing the inadequacies of GMAC's response on July 23, 2012. On July 25, 2012, GMAC sent my office a letter stating that "[o]n April 4, 2012, the HAMP trial modification was denied, **as only the February 2012 payment was received.**" As you have since acknowledged, the above emphasized statement was categorically false. On July 26, 2012, my office sent a final letter demonstrating the fallacy of GMAC's position and once again including proof of all TPP payments.

On August 15, 2012, nearly two months after my firm's initial letter to GMAC and only after the exchange of more than five letters, GMAC **finally** acknowledged that it had erred with respect to the manner in which it applied the Winklers' TPP payments. In other words, it took an attorney sending multiple letters, at least two of which directly included evidence of GMAC's mistake, for GMAC to cease its misrepresentations and admit an obvious truth.

GMAC did not instruct the Winklers to self-escrow their mortgage payments because, up until August 16, 2012, GMAC did not admit to any fault for rejecting the Winklers' April, 2012 payment. Despite multiple letters and phone calls between my office and GMAC personnel during the months of June, July and August, 2012, no one from GMAC ever indicated that any payments would be due or accepted for those months. For GMAC to demand payments for June, July, August, and September 2012 – months during which the Winklers were not making monthly payments only because of GMAC's fraud – is unconscionable. My office and my

Ms. Jennifer Vance
September 28, 2012
Page 3 of 3
Loan No.

clients demand that GMAC immediately relinquish its request for a lump sum payment of
$8,653.44, which should be added to the principal of the permanent modification, as well as any
penalties or fees associated with this arrearage.

Third, on September 28, 2012, you stated during a telephonic conversation that the Winklers
would not be (re)considered for a modification under the Home Affordable Modification
Program ("HAMP"). Despite my attempts to reach alternatives to an agreement that I cannot, in
good faith, advise my clients to accept, GMAC has rejected every proposal, including
reconsideration for a HAMP modification, even though this would easily rectify GMAC's
mistakes and put the parties back at square one. I find this position unconscionable because
since our discussions beginning on August 20, 2012, GMAC has emphatically rejected any
proposal which would put the Winklers in a fair position to modify the loan and save their home,
even though GMAC admitted to making the mistakes and misrepresentations which initiated this
dilemma.

As a result of your aforementioned conveyances, the Winklers cannot sign the permanent loan
modification offered and may seek redress through litigation until GMAC truly fulfills its
obligations under the TPP and offers the Winklers a permanent modification under fair and
equitable terms, as they are entitled.

This firm strongly suggests that GMAC offer the Winklers a permanent loan modification that
does not attempt to cover up GMAC's mistakes and misrepresentations, but rather waives the
payments due for June, July, August and September, 2012 or applies these payments to the
principal of the Winklers' permanent loan modification. Alternatively, this firm suggests that
GMAC offer a **written payment plan** for the back payments **without penalties or fees** so that
the Winklers can make themselves current under more reasonable terms, i.e. $500.00 per month.

These are reasonable requests, but your current conveyances cannot be accepted based on the
current status of this matter; therefore, I strongly suggest that GMAC adjust the terms of its
permanent modification offer so that these parties can amicably reach an agreement. If you have
any questions or concerns or would like to discuss the terms of the Winklers' permanent
modification further, please feel free to contact me by 5:00 p.m., Central Time, on October 7,
2012. Otherwise, my firm will seek redress through litigation for the above mentioned matters.

Very truly yours,

Law Office of Patrick D. Boyle, P.A.

Patrick D. Boyle
Attorney at Law

Cc:    Client (via electronic mail)

# LAW OFFICE OF PATRICK D. BOYLE
Campbell Mithun Tower
222 S. 9th St.  Suite 3220
Minneapolis, MN  55402
612.353.6086 (p)    651.344.4389    (f)
EMAIL:  pboyle@boylelawbiz.com

October 9, 2012

*VIA FACSIMILE AND U.S. MAIL*

Ms. Jennifer Vance
Loan Specialist
GMAC Mortgage
3451 Hammond Ave
Waterloo, IA 50702
313-665-6189 (facsimile)

Re:    My Client: James and Judith Winkler
       Matter: *Winkler v. GMAC Mortgage Services*
       Loan No. ███████████

Dear Ms. Vance:

As you are aware, this firm represents James and Judith Winkler ("the Winklers") with respect to the above-referenced case and their mortgage with GMAC Mortgage Services ("GMAC"), referenced as Mortgage Loan No. Loan No. ██████████

This letter is to follow up on my letter sent on September 28, 2012, where I stated that "as a result of your aforementioned conveyances, the Winklers cannot sign the permanent loan modification offered and may seek redress through litigation until GMAC truly fulfills its obligations under the TPP and offers the Winklers a permanent modification under fair and equitable terms, as they are entitled." As of this date, I have not received any response from GMAC regarding this request and would further request your attention to this matter; otherwise, I will be force to seek redress through litigation.

As I stated more thoroughly in my September 28, 2012 letter, I believe that GMAC's request for the Winklers to pay an $8,653.44 arrearage for the months of June, July, August and September, 2012, even though the Winklers had properly performed under the Trial Period Plan ("TPP") and it took an attorney sending multiple letters, at least two of which directly included evidence of GMAC's mistake, for GMAC to cease its misrepresentations and admit that this was true.

In my response to the conveyances you made to this firm via telephone on September 27 and 28, 2012, I requested that you address the three issues below:

Ms. Jennifer Vance
October 9, 2012
Page 2 of 3
Loan No ▮▮▮▮▮▮▮

(1) You stated that GMAC would not agree to a separate written-agreement covering the arrearages and that my Clients would receive a letter every month from GMAC stating that they were in arrears or in breach of contract.

However, as I stated in my September 28, 2012 letter, I cannot in good conscience advise my clients to agree to a contract of which they would be in instant breach. I also cannot advise my clients to sign a document that has already been greatly modified orally. **Therefore, I request (at a minimum) that the payment plan to the Winklers' supposed arrears be formally documented in writing and agreed upon by both parties.**

(2) You stated that although the Winklers would not be subject to interest on the $8,653.44 in arrearage, they would instead continue to receive penalties / fees for the due amounts.

However, as I stated in my September 28, 2012 letter, the permanent modification was not offered until four months after the Winklers' full and adequate completion of the Trial Period Plan ("TPP") during which GMAC categorically refused to acknowledge its mistake. Because of this glaring fact, the Winklers' should in no way be assessed any fees / penalties for the delay in the permanent loan modification due to GMAC's blatant mistakes and misrepresentations. **Therefore, I request (at a minimum) that any penalties or fees associated with this arrearage be ceased if the parties can agree to the above request.**

(3) You stated during a telephonic conversation that the Winklers would not be (re)considered for a modification under the Home Affordable Modification Program ("HAMP").

However, as stated in my September 28, 2012 letter and for the reasons set forth above, tI cannot, in good faith, advise my clients to accept GMAC's proposal and GMAC has rejected every proposal, including reconsideration for a HAMP modification, even though this would easily rectify GMAC's mistakes and put the parties back at square one. I find this position unconscionable because since our discussions beginning on August 20, 2012, GMAC has emphatically rejected any proposal which would put the Winklers in a fair position to modify the loan and save their home, even though GMAC admitted to making the mistakes and misrepresentations which initiated this dilemma. **Therefore, if the parties cannot agree to the requests above, I alternatively request that GMAC reconsider the Winkers for a permanent loan modification because they continue to be excellent candidates for HAMP.**

As a result of my aforementioned requests, the Winklers cannot sign the permanent loan modification offered and may seek redress through litigation until GMAC truly fulfills its obligations under the TPP and offers the Winklers a permanent modification under fair and equitable terms, as they are entitled.

Ms. Jennifer Vance
October 9, 2012
Page 3 of 3
Loan No. ███████

I once again strongly suggest that GMAC offer the Winklers a permanent loan modification that does not attempt to cover up GMAC's mistakes and misrepresentations, but rather waives the payments due for June, July, August and September, 2012 or applies these payments to the principal of the Winklers' permanent loan modification. Alternatively, this firm suggests that GMAC offer a **written payment plan** for the back payments **without penalties or fees** so that the Winklers can make themselves current under more reasonable terms, i.e. $500.00 per month.

These are reasonable requests, but your current conveyances cannot be accepted based on the current status of this matter; therefore, I strongly suggest that GMAC adjust the terms of its permanent modification offer so that these parties can amicably reach an agreement. If you have any questions or concerns or would like to discuss the terms of the Winklers' permanent modification further, please feel free to contact me by 5:00 p.m., Central Time, on October 17, 2012. Otherwise, my firm **will seek redress through litigation** for the above mentioned matters.

Very truly yours,

Law Office of Patrick D. Boyle, P.A.

Patrick D. Boyle
Attorney at Law

Cc:    Client (via electronic mail)

September 24, 2013

To Whom it May Concern,

I am writing to dispute your disallowance and show evidence of our affiliations.   Our business with GMAC is shown in the attached document showing transfer of our loan.  Original papers may have been filed by the Law Office of Patrick Boyle.

Thank you,

James and Judith Winkler

RECEIVED
SEP 3 0 2013
KURTZMAN CARSON CONSULTANTS

# GMAC Mortgage

**OCWEN**

## Notice of Servicing Transfer and Welcome to Ocwen Loan Servicing, LLC

February 6, 2013

```
1227/12 1869 3   0040932 201382050 B7VR1112 GOODBYE  2 OZ .DOM ISIVR10000* 18004* LT
```
JUDITH C WINKLER
JAMES A WINKLER
LAW OFFICE OF PATRICK D. BOYLE
711 HENNEPIN AVE STE 501
MINNEAPOLIS MN  55403-1836



Dear JUDITH C WINKLER and JAMES A WINKLER,

The servicing of your mortgage loan, that is, the right to collect payments from you, is transferring from your current servicer, GMAC Mortgage ("GMACM") to your new servicer, Ocwen Loan Servicing, LLC ("Ocwen") effective February 16, 2013.

Rest assured this transfer of servicing does not affect any term or condition of the mortgage documents, other than those directly related to the servicing of your loan.  There will be no change to your account number or payment address; only to the name of the company to which you make your payment.  All mailing addresses and phone numbers you previously used to contact GMACM will remain the same but, as of February 16, 2013, they will be maintained by Ocwen.  You will continue to be served in a knowledgeable and professional manner, just as you have in the past.

GMACM will stop accepting payments on February 15, 2013.  Ocwen will begin to accept payments on February 16, 2013.  Send all payments due on or after that date to Ocwen.  A temporary coupon is provided below for your convenience.  Any account notices prepared prior to February 16, 2013 will reflect GMACM; all notices prepared on or after February 16, 2013 will reflect Ocwen.  In addition any payments received by GMACM after February 15, 2013 will automatically be processed by Ocwen.

If you are currently using GMACM's automatic payment service, this program will continue with no lapse in service.  If you previously made your payment through GMACMortgage.com, on or after February 16, 2013 you can go to ocwen.mortgagebanksite.com and use your same login ID and password for account access.  If you use a third party payment service, please request they update their records to have payments made payable to Ocwen Loan Servicing, LLC effective February 16, 2013.

Because GMACM is the subject of a bankruptcy proceeding, federal law requires either GMACM or Ocwen to send you this notice not more than 30 days after the effective date of the transfer of the servicing of your loan.  In this case, all necessary information is combined in this one notice.  Please review the reverse side of this letter for legal disclosures, notices and state requirements.  It's our goal to make this transfer as seamless as possible.

We appreciate the opportunity to serve your home loan needs.  If you have questions relating to the transfer of servicing please contact our Transfer Hotline at 1-888-926-3479 weekdays from 8:00 AM to 7:00 PM, Central Time.  If you have questions about the general servicing of your loan please call GMACM Customer Care at 800-766-4622, 6:00 a.m. - 10:00 p.m. CT M-F and 8:00 a.m. - 2:00 p.m. Sat.

Sincerely,

Charles R. Hoecker
Sr. Vice President, Customer Care
GMAC Mortgage

Sincerely,

William C. Erbey
President and Chief Executive Officer
Ocwen Loan Servicing, LLC

Enclosure(s)

### Your Loan Account Details as of 02/04/2013

**Account Number:**

**Property Address:**
1845 DUNKIRK LANE NORTH
MINNEAPOLIS MN  55447

**Transfer Date:**
02/16/2013

**Principal Balance:**
$277,088.26

**Escrow Balance:**
-$8,300.99

**Loan Rate:**
5.875%

**Next Payment Due:**
8/1/2011

**Payment Amount:**
Please refer to your
mortgage account statement

### Ocwen Loan Servicing, LLC Customer Care Contact Information

➤**Phone:**
800-766-4622

**Personal assistance:**
6:00 a.m. - 10:00 p.m. CT M-F
and 8:00 a.m. - 2:00 p.m. Sat

24-hour automated service

**Email:**
ocwen@mortgagebanksite.com

**Web:**
ocwen.mortgagebanksite.com

**Mail:**
PO Box 780
Waterloo, IA  50704-0780

02-1x85-7300(1/13)