**Hearing Date and Time:  May 29, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Date and Time:  May 12, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
Jonathan M. Petts

*Counsel for The ResCap Borrower Claims*
*Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**NOTICE OF THE RESCAP BORROWER CLAIMS TRUST'S**
**SIXTY-FIRST OMNIBUS OBJECTION TO CLAIMS**
**(NO LIABILITY BORROWER CLAIMS)**

 **PLEASE TAKE NOTICE** that the undersigned have filed the attached *ResCap*
*Borrower Claims Trust's Sixty-First Omnibus Objection to Claims (No Liability*
*Borrower Claims)* (the "Omnibus Objection"), which seeks to alter your rights by
disallowing your claim against the above-captioned Debtors.

 **PLEASE TAKE FURTHER NOTICE** that a hearing on the Omnibus Objection
will take place on **May 29, 2014 at 10:00 a.m. (Prevailing Eastern Time)** before the
Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District

of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Room 501.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Omnibus Objection must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to be received no later than **May 12, 2014 at 4:00 p.m. (Prevailing Eastern Time)**, upon: (a) Chambers of the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408; (b) counsel to the ResCap Borrower Claims Trust, Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019 (Attention: Gary S. Lee, Norman S. Rosenbaum, Jordan A. Wishnew and Jonathan M. Petts); (c) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention: Linda A. Riffkin and Brian S. Masumoto); and (d) The ResCap Borrower Claims Trust, Polsinelli PC, 900 Third Avenue, 21st Floor, New York, NY 10022, (Attn: Daniel J. Flanigan).

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written response to the relief requested in the Omnibus Objection, the Bankruptcy Court may deem any opposition waived, treat the Omnibus Objection as conceded, and enter an order granting the relief requested in the Omnibus Objection without further notice or hearing.

Dated:  April 11, 2014
        New York, New York

Respectfully Submitted,

/s/ Norman S. Rosenbaum
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
Jonathan M. Petts
**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel for The ResCap Borrower
Claims Trust*

**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
Jonathan M. Petts

*Counsel for The ResCap Borrower*
*Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
                                                      )
In re:                                                )     Case No. 12-12020 (MG)
                                                      )
RESIDENTIAL CAPITAL, LLC, et al.,   )     Chapter 11
                                                      )
                        Debtors.          )     Jointly Administered
                                                      )
---------------------------------------------------------  )

**RESCAP BORROWER CLAIMS TRUST'S**
**SIXTY-FIRST OMNIBUS OBJECTION TO CLAIMS**
**(NO LIABILITY BORROWER CLAIMS)**

---

**THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM.  CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON <u>EXHIBIT A</u> ATTACHED TO THE PROPOSED ORDER.**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT THE RESCAP BORROWER CLAIMS TRUST'S COUNSEL, JORDAN A. WISHNEW, AT (212) 468-8000.**

---

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "Trust"), established pursuant to the terms of the Chapter 11 plan confirmed in the above captioned bankruptcy cases (the "Chapter 11 Cases"), as successor in interest to the above-captioned debtors (collectively, the "Debtors") for Borrower Claim (defined below) matters, by and through its undersigned counsel, respectfully represents:

## RELIEF REQUESTED

1.       The Trust files this sixty-first omnibus objection to claims (the "Objection") pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and this Court's order approving procedures for the filing of omnibus objections to proofs of claim filed in these Chapter 11 Cases (the "Procedures Order") [Docket No. 3294], and seeks entry of an order (the "Proposed Order"), in a form substantially similar to that attached hereto as Exhibit 4, to disallow and expunge the claims listed on Exhibit A[1] annexed to the Proposed Order.  In support of this Objection, the Debtors submit the Declaration of Deanna Horst, Chief Claims Officer for the ResCap Liquidating Trust (the "Horst Declaration," attached hereto as Exhibit 1) and the Declaration of Norman S. Rosenbaum of Morrison & Foerster LLP, counsel to the Trust (the "Rosenbaum Declaration," attached hereto as Exhibit 2).

2.       The Trust examined the proofs of claim identified on Exhibit A to the Proposed Order and determined that the proofs of claim listed on Exhibit A (collectively, the "No Liability Borrower Claims") are not liabilities of the Debtors.  This determination was made after the holders of the No Liability Borrower Claims were given an opportunity under the

---

[1]      Claims listed on Exhibit A are reflected in the same manner as they appear on the claims register maintained by KCC (defined herein).

Procedures Order to supply additional documentation to substantiate their respective claims.

Accordingly, the Trust seeks entry of the Proposed Order disallowing and expunging the No

Liability Borrower Claims from the Claims Register.

3.      The proofs of claim identified on <u>Exhibit A</u> annexed to the Proposed

Order solely relate to claims filed by current or former borrowers (collectively, the "<u>Borrower</u>

<u>Claims</u>" and each a "<u>Borrower Claim</u>").  As used herein, the term "Borrower" means a person

who is or was a mortgagor under a mortgage loan originated, serviced, and/or purchased or sold

by one or more of the Debtors.[2]

4.      The Trust expressly reserves all rights to object on any other basis to any

No Liability Borrower Claim as to which the Court does not grant the relief requested herein.

## JURISDICTION

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

*General Case Background*

6.      On May 14, 2012 (the "<u>Petition Date</u>"), each of the Debtors filed a

voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  These

Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

7.      On May 16, 2012, the United States Trustee for the Southern District of

New York appointed a nine member official committee of unsecured creditors [Docket No. 102]

(the "<u>Creditors' Committee</u>").

---

[2]      The terms "Borrower" and "Borrower Claims" are identical to those utilized in the Procedures Order [Docket No. 3294].

8.      On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as such term is defined in the Plan) of the Plan occurred, and, among other things, the Trust was established [Docket No. 6137].

9.      The Plan provides for the creation and implementation of the Trust, which is established for the benefit of Borrowers who filed Borrower Claims to the extent such claims are ultimately allowed either through settlement with the Borrower Claims Trustee or pursuant to an Order of the Court.  See Plan, at Art. IV.F.  The Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying Allowed Borrower Claims."  See id.

*Claims-related Background*

10.      On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

11.      On August 29, 2012, this Court entered an order approving the Debtors' motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No. 1309] (the "Bar Date Order").   The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of

4

claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribing the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "Governmental Bar Date"). Bar Date Order ¶¶ 2, 3. On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093]. The Governmental Bar Date was not extended.

12.     On March 21, 2013, the Court entered the Procedures Order, which authorizes the Debtors to, among other things, file omnibus objections to no more than 150 claims at a time, on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order. See Procedures Order at 2-3.

13.     Based on substantial input from counsel to the Creditors' Committee and its special counsel for Borrower issues, SilvermanAcampora LLP ("Special Counsel"), the Procedures Order includes specific protections for Borrowers and sets forth a process for the Debtors or any successor in interest to follow before objecting to certain categories of Borrower Claims (the "Borrower Claim Procedures"). The Borrower Claim Procedures provide, *inter alia*, that prior to objecting to Borrower Claims filed with no or insufficient documentation, the Debtors must send each such Borrower claimant a letter requesting additional documentation in support of the purported claim (the "Request Letter"). See Procedures Order at 4.

14.     Beginning in May of 2013, the Debtors sent Request Letters, substantially in the form as those attached as Exhibit 3, to those Borrowers who filed the No Liability Borrower Claims with insufficient documentation. The Request Letters state that the claimant must respond within thirty (30) days (the "Response Deadline") with an explanation that states the legal and factual reasons why the claimant believes it is owed money or is entitled to other relief from the Debtors and the claimant must provide copies of any and all documentation that

5

the claimant believes supports the basis for its claim.  <u>See</u> Request Letters at 1.  The Request

Letters further state that if the claimant does not provide the requested explanation and

supporting documentation within 30 days, the Debtors may file a formal objection to the

claimant's claim, seeking to have the claim disallowed and permanently expunged.  <u>Id</u>.

15.     The Response Deadline has passed, and the Debtors and the Trust either

did not receive any response to the Request Letters or received insufficient information to

establish a basis for liability with respect to the applicable No Liability Borrower Claims.  <u>See</u>

Horst Declaration at ¶ 4.

**THE NO LIABILITY BORROWER CLAIMS**
**SHOULD BE DISALLOWED AND EXPUNGED**

16.     Based upon its review of the proofs of claim filed on the Claims Register,

the Trust determined that the No Liability Borrower Claims identified on <u>Exhibit A</u> annexed to

the Proposed Order do not represent valid prepetition claims against the Debtors.   If the No

Liability Borrower Claims are not disallowed and expunged, then the parties who filed these

proofs of claim may receive a wholly improper recovery to the detriment of other creditors in

these Chapter 11 Cases.  <u>See</u> Horst Declaration ¶ 8.

17.     Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may

file a proof of claim."  11 U.S.C. § 501(a).  "The proof of claim, if filed in accordance with

section 501 and the pertinent Bankruptcy Rules, constitutes prima facie evidence of the validity

and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)."  4

COLLIER ON BANKRUPTCY ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer eds., 16th

ed. rev. 2013).  Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim

may not be allowed to the extent that "such a claim is unenforceable against the debtor and

property of the debtor, under any agreement or applicable law . . . ."  11 U.S.C. § 502(b)(1).

6

18.    If an objection refuting at least one of the claim's essential allegations is asserted, however, the claimant has the burden to demonstrate the validity of the claim.  See *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

19.    The Debtors and the Trust diligently analyzed the No Liability Borrower Claims and the allegations set forth therein and examined the Debtors' books and records in order to assess the alleged liabilities asserted.  See Horst Declaration at ¶¶ 3-5.  In addition, the Debtors sent Request Letters to those claimants who filed No Liability Borrower Claims with insufficient supporting documentation to allow such claimants to provide additional support for their claims.  The holders of the No Liability Borrower Claims that received Request Letters either failed to respond to the letters or failed to provide sufficient information to substantiate their claims. See id. at ¶ 4.

20.    The Trust's specific factual and/or legal reason(s) for objecting to the allowance of each No Liability Borrower Claim is set forth on Exhibit A to the Proposed Order under the heading titled "*Reason(s) for Disallowance*."  In general, the Trust's objection to each No Liability Borrower Claim falls under one or more of the following nine categories:

(i)    ***General No Liability***.  This category includes claims:
- relating to requests to reduce or forgive outstanding loan balances or to reduce interest rates;
- asserting that a Debtor is responsible for liabilities of non-Debtor entities;
- for which the claimants have, subsequent to filing the claims, admitted to the Debtors or Special Counsel that the Debtors have no liability;
- that the claimants lack standing to assert because the claims are property of the estate in the claimants' prior chapter 7 or chapter 13 bankruptcy cases; and
- that otherwise do not constitute a valid obligation of the Debtors (collectively, the "General No Liability Claims").

To assess the validity of these claims, the Trust reviewed the Debtors' books and records, including (a) the claimant's transaction history showing the payments the claimant has

7

made and the Debtors' application of those payments to principal, interest, fees, and escrows, as applicable (the "Loan Payment History"), (b) the Debtors' records tracking the history of the servicing of the claimant's loan, including but not limited to documenting instances of i) communication with the claimant, ii) letters and notices sent by the Debtors to the claimant, and iii) the Debtors' efforts to foreclose, conduct loss mitigation efforts, inspect properties, pay taxes and insurance on behalf of the claimant, and other standard servicing activity (collectively, the "Internal Servicing Notes"), and (c) other records as applicable.  See Horst Decl. at ¶ 7(i).  Based on its review, the Trust has determined that the Debtors are not liable for the General No Liability Claims.  See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as a General No Liability Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more[3] of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Records of the claimants' prior chapter 7 or chapter 13 bankruptcy cases; or
- Other documents that are relevant to the reconciliation of the claim.[4]

(ii) ***General Servicing Issues***.  This category includes claims based on general servicing issues, including assertions that a Debtor misapplied mortgage payments, provided incorrect information or reporting to the claimant, made improper collection calls, failed to release a lien on a timely basis, failed to respond to Qualified Written Requests, wrongfully transferred servicing or wrongfully sold the claimant's loan (the "General Servicing Issues Claims").  To assess the validity of these claims, the Trust reviewed Internal Servicing Notes, Loan Payment History, letters between the Debtors and the applicable Borrower(s), executed mortgage notes and deeds of trust, and other relevant documents.  See Horst Decl. at ¶ 7(ii).

Based on its review, the Trust has determined that the General Servicing Issues Claims are not valid obligations of the Debtors because: (a) the alleged events involving General Servicing Issues never took place; (b) the Debtor remedied the alleged error or mishandling, and as a result, the Claimant did not incur any damages, or failed to provide evidence of damages; and/or (c) the Debtor acted properly in servicing the loan, in

---

[3]    For the purpose of clarification, the Trust is not suggesting that each of the listed documents is relevant to every General No Liability Claim; rather, the Trust will provide the claimant and the Court with copies of only those relevant documents in its possession that substantiate the stated reason(s) for disallowance.

[4]    Generally, the production of documents by the Trust (to claimants under any of the stated objection categories) will be subject to all applicable privileges, including without limitation, attorney-client, and where necessary, will be subject to a mutually acceptable Confidentiality Agreement.

8

accordance with the Debtor's standard policies and procedures and the terms of the executed note and deed of trust.  See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as a General Servicing Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more[5] of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Debtors' written communications to the claimant;
- Copies of lien releases; or
- Other documents that are relevant to the reconciliation of the claim.

(iii) ***Origination Issues***.  This category includes claims based on loan origination issues, which include, without limitation, claims relating to disputes regarding the loan application and closing process, disclosures, loan terms, rights of rescission or a purportedly defective title exam.  To assess the validity of these claims (the "Origination Issues Claims"), the Trust reviewed the Debtors' books and records, including the claimants' executed mortgage notes, to determine whether any Debtor was involved in the origination of the applicable loans.  See Horst Decl. at ¶ 7(iii).

Based on its review of the Debtors' books and records and its review of applicable state and federal law, the Trust determined that the Debtors are not liable for the Origination Issues Claims because no Debtor entity was involved in the origination of the applicable loans and vicarious liability cannot be imputed to any Debtor in its capacity as servicer or assignee of the loans.[6]  See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as an Origination Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more[7] of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

---

[5]    For the purpose of clarification, the Trust is not suggesting that each of the listed documents is relevant to every General Servicing Issues Claim; rather, the Trust will provide the claimant and the Court with copies of only those relevant documents in its possession that substantiate the stated reason(s) for disallowance.

[6]    As noted in Exhibit A, to the extent the claimant asserts statutory claims related to origination of the loan, the Trust reviewed the applicable federal and state statutes and determined that such claims against servicers or loan assignees carry no successor liability.  To the extent claimant asserts common-law claims, the Trust found no case precedent establishing assignee liability when a party is not involved with the origination of the loan, and the claimant did not provide any specific legal authority to substantiate its allegation.

[7]    For the purpose of clarification, the Trust is not suggesting that each of the listed documents is relevant to every Origination Issues Claim; rather, the Trust will provide the claimant and the Court with copies of only those relevant documents in its possession that substantiate the stated reason(s) for disallowance.

9

- Internal Servicing Notes;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Origination File; or
- Other documents that are relevant to the reconciliation of the claim.

(iv) ***Escrow Issues***.  This category includes claims based on the alleged improper application or calculation of escrow amounts (the "Escrow Issues Claims").  To assess the validity of these claims, the Trust examined the Debtors' books and records, including the Debtors' escrow receipts and payments, the annual escrow analysis sent to Borrowers and any Internal Servicing Notes and written communication between the Debtors and the applicable Borrower(s).

Based on its review, the Trust determined that the Debtors are not liable for the Escrow Issues Claims.  See Horst Decl. at ¶ 7(iv).  In cases where a claimant asserted that the mortgage payments increased significantly to cover an escrow shortfall, the Trust determined that the mortgage payments received were all correctly applied.  In cases where a claimant asserted that the escrow collected was insufficient to cover the property taxes and insurance, the Trust reviewed the escrow statements issued to the claimant, which outlined the amounts paid that year compared to what was estimated, as well as Internal Servicing Notes to the extent that there was an escrow account added to the loan, and determined that they have no liability as long as all amounts received from the Borrower were accurately recorded because the Borrowers are liable for the taxes and insurance on their real property.  In cases where a claimant asserted that it was owed a refund, the Trust looked at (1) the escrow statement issued to the claimant to determine if there was a refund due, (2) the history of the loan to determine if a check was issued for the refund and (3) the internal account notes to determine if there were discussions with the claimant regarding an escrow refund not being received, and found that any refunds due were previously paid.  Moreover, to the extent that the Debtors' books and records indicated that the issues asserted by a claimant occurred after the Debtors ceased servicing the underlying loan, the Trust concluded that the Debtors had no liability for the claim.  See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as an Escrow Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more[8] of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;

---

[8]  For the purpose of clarification, the Trust is not suggesting that each of the listed documents is relevant to every Escrow Issues Claim; rather, the Trust will provide the claimant and the Court with copies of only those relevant documents in its possession that substantiate the stated reason(s) for disallowance.

ny-1135982

- Debtors' written communications to the claimant;
- Escrow Statement;
- Loan Modification Agreement, if applicable; or
- Other documents that are relevant to the reconciliation of the claim.

(v) ***Wrongful Foreclosure***.  This category includes claims based, either directly or indirectly, on allegations of wrongful foreclosure by the Debtors (the "<u>Wrongful Foreclosure Claims</u>").  To assess the validity of these claims, the Trust examined the Debtors' books and records to verify that the Debtors foreclosed properly and, where applicable, took the appropriate loss mitigation steps.  Specifically, the Trust reviewed Payment History, Internal Servicing Notes, as well as, where applicable, the claimants' loan modification applications, loan modification approval letters, loan modification denial letters, compliance with loan modifications (trial and/or permanent), compliance with any other payment plans (forbearance and repayment), short sale applications and history, investor guidelines and/or direction, breach letters, and/or foreclosure related documents.  Where a claimant asserted that he or she did not execute the mortgage note, the Trust also examined Internal Servicing Notes to determine whether any previous identity theft claims were alleged, and compared the signatures on other executed documents in the claimant's file, as well as examining the Loan Payment History and any other information in the Debtors' possession including tax records reflecting whether the claimant deducted interest on the mortgage.  Moreover, where a Wrongful Foreclosure Claim was based on issues related to a short sale, the Trust further reviewed the Debtors' records to determine whether a short sale approval had been requested, and, if so and if such request was denied, whether the reason for denial was proper.[9]  <u>See</u> Horst Decl. at ¶ 7(v).  Based on its review, the Trust determined that the Debtors are not liable for the Wrongful Foreclosure Claims.  <u>See</u> <u>id</u>.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as a Wrongful Foreclosure Claim on <u>Exhibit A</u> to the Proposed Order, upon their respective request, with copies of one or more[10] of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Loan Modification Agreement, if applicable;
- Debtors' written communications to Claimant, including the following, if applicable:

---

[9]   Appropriate reasons for denying a short sale request include, without limitation, a claimant's failure to submit executed sale contracts, a claimant's failure to obtain approval from second lien holders and/or a claimant's short sale request did not comply with the investor's requirements.

[10]   For the purpose of clarification, the Trust is not suggesting that each of the listed documents is relevant to every Wrongful Foreclosure Claim; rather, the Trust will provide the claimant and the Court with copies of only those relevant documents in its possession that substantiate the stated reason(s) for disallowance.

- ▪ Denial Letters,
- ▪ Missing Items Letters,
- ▪ Loan Modification Offers,
- ▪ Signed Modification Agreement(s),
- ▪ Breach of Contract Notice, and
- ▪ Trial, Forbearance, or Foreclosure Repayment Plan Letters;
- • Escrow Statement, if applicable;
- • Pooling and Servicing Agreements, if applicable; or
- • Other documents that are relevant to the reconciliation of the claim.

(vi) ***Standing Issues***.  This category includes claims alleging that the Debtors lacked the standing to service, foreclose or otherwise enforce the terms of the claimant's loan (the "Standing Issues Claims").  To assess the validity of these claims, the Trust reviewed the Debtors' books and records, including the claimant's mortgage or deed of trust, documents relating to chain of ownership, relevant assignments of interests in the loan, Loan Payment History, and Internal Servicing Notes.  See Horst Decl. at ¶ 7(vi).  Based on its review, the Trust has determined that the Debtors are not liable for the Standing Issues Claims because the Debtors had proper authority to service or foreclose the loan and to enforce the terms of the claimant's loan on behalf of the owner of the loan.  See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as a Standing Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more[11] of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:
- • Loan Payment History;
- • Internal Servicing Notes;
- • Note and riders to the Note, if applicable;
- • Mortgage/Deed of Trust;
- • Mortgage Assignments;
- • Loan Modification Agreement, if applicable;
- • Debtors' written communications to Claimant, if applicable; or
- • Other documents that are relevant to the reconciliation of the claim.

(vii) ***Credit Reporting Issues***.  This category includes claims that are based, either directly or indirectly, on alleged errors by the Debtors in how they reported the Borrower's loan performance to the credit reporting agencies, including claims alleging that the Debtors failed to apply or misapplied mortgage payments resulting in a negative report regarding the Borrower's loan performance (the "Credit Reporting Issues Claims").  To assess the validity of these claims, the Trust examined the Debtors' books and records for evidence that the alleged payments were made, which included reviewing Loan Payment History,

---

[11]    For the purpose of clarification, the Trust is not suggesting that each of the listed documents is relevant to every Standing Issues Claim; rather, the Trust will provide the claimant and the Court with copies of only those relevant documents in its possession that substantiate the stated reason(s) for disallowance.

ny-1135982

Internal Servicing Notes containing information reported to the credit bureaus, as well as any supporting documentation attached to the Credit Reporting Issues Claims.  See id.

Based on its review, the Trust has determined that the Debtors are not liable for the Credit Reporting Issues Claims.  See id.  To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as a Credit Reporting Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more[12] of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Loan Modification Agreement, if applicable;
- Debtors' written communications to the claimant, if applicable; or
- Other documents that are relevant to the reconciliation of the claim.

(viii) ***Interest Rates and Fees Collected***.  This category includes claims based on assertions that either (a) interest rates charged to the claimant were incorrect, incorrectly adjusted, or incorrectly not adjusted (the "Interest Rates Claims") or (b) the fees charged to the claimant were incorrect or inappropriate (the "Fees Collected Claims," and together with the Interest Rates Claims, the "Interest Rates and Fees Collected Claims").  To assess the validity of these claims, the Trust reviewed the Debtors' books and records, including the claimant's note, any adjustable rate rider and related documents, notices and/or adjustment letters sent to the claimant, Loan Payment History and fees charged.  See Horst Decl. at ¶ 7 (viii).

Based on its review, the Trust has determined that the Debtors are not liable for the Interest Rates and Fees Collected Claims because the interest rates and fees charged were consistent with the governing loan documents, the Debtors' servicing policies, and if applicable, investor guidelines and/or servicing agreements.  To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as an Interest Rates Claim or a Fees Collected Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more[13] of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;

---

[12]    For the purpose of clarification, the Trust is not suggesting that each of the listed documents is relevant to every Credit Reporting Issues Claim; rather, the Trust will provide the claimant and the Court with copies of only those relevant documents in its possession that substantiate the stated reason(s) for disallowance.

[13]    For the purpose of clarification, the Trust is not suggesting that each of the listed documents is relevant to every Interest Rates Claim or Fees Collected Claim; rather, the Trust will provide the claimant and the Court with copies of only those relevant documents in its possession that substantiate the stated reason(s) for disallowance.

13

- Internal Servicing Notes;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Loan Modification Agreement, if applicable;
- Investor guidelines, if applicable;
- Servicing agreement(s), if applicable;
- Debtors' written communications to the claimant, including, if applicable Rate Adjustment Letters; or
- Other documents that are relevant to the reconciliation of the claim.

(ix) ***Loan Modification***. This category includes claims based on loan modification issues (the "Loan Modification Claims"), which allege, among other things, that the Debtors (a) failed to provide a loan modification,[14] or (b) provided a loan modification, but the claimant believes the terms were not as favorable to the claimant as those to which claimant believed he or she was entitled. To assess the validity of these claims, the Trust examined the Debtors' books and records to verify that the Debtors followed the applicable investor guidelines and policies regarding loan modifications. Specifically, the Trust reviewed Internal Servicing Notes, Loan Payment History, and, where applicable, loan modification agreements, loan modification applications, loan modification denial letters, loan modification approval letters, the claimant's compliance with modifications (trial and/or permanent) and any instructions or guidelines provided by the investor for the claimant's loan. See Horst Decl. at ¶ 7(ix).

Based on its review, the Trust determined that the Debtors are not liable for the Loan Modification Claims because: (a) in cases where a loan modification request was denied, the Debtors complied with the applicable investor guidelines and policies governing the loan modification process; (b) in the cases where the claimant obtained a loan modification, the claimant was not damaged by the loan modification assistance provided; and (c) in the cases where the claimant disputes the terms of his or her loan modification, the Trust verified that (i) the claimant agreed to the terms by executing the underlying agreement, and (ii) the Debtors administered or serviced the loan modification in accordance with the governing loan documents, the Debtors' servicing policies, and if applicable, investor guidelines and/or servicing agreements. See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as a Loan Modification Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more[15] of the

---

[14] As a regular part of the Debtors' business practices, the Debtors offered mortgage loan modifications to Borrowers in financial distress, pursuant to certain guidelines established by the investors ("Traditional Modifications"). The Home Affordable Modification Program ("HAMP") is an administrative program that was implemented in April 2009 by the United States Treasury Department to help eligible homeowners with loan modifications on their home mortgage debt. HAMP provided the Debtors with an additional type of loan modification (a "HAMP Modification") for assisting eligible Borrowers experiencing financial distress.

[15] For the purpose of clarification, the Trust is not suggesting that each of the listed documents is relevant to every Loan Modification Claim; rather, the Trust will provide the claimant and the Court with copies of only those relevant documents in its possession that substantiate the stated reason(s) for disallowance.

ny-1135982

following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Loan Modification Agreement, if applicable;
- Investor guidelines, if applicable;
- Servicing agreement(s), if applicable;
- Workout Packages;
- Debtors' written communications to Claimant, including the following, if applicable:
  - Denial Letters,
  - Missing Items Letters,
  - Loan Modification Offers,
  - Signed Mod Agreement(s),
  - Breach of Contract Notice(s), and
  - Trial, Forbearance, or Foreclosure Repayment Plan Letters;
- Escrow Statement; or
- Other documents that are relevant to the reconciliation of the claim.

21.     To prevent the claimants that filed the No Liability Borrower Claims from receiving improper recoveries to the detriment of other creditors, the Trust requests that the Court disallow and expunge in their entirety each of the No Liability Borrower Claims.

## NOTICE

22.     The Trust has served notice of this Objection in accordance with the Case Management Procedures entered on May 23, 2012 [Docket No. 141] and the Procedures Order. The Trust submits that no other or further notice need be provided.

## NO PRIOR REQUEST

23.     No previous request for the relief sought herein as against the holders of the No Liability Borrower Claims has been made by the Trust to this or any other court.

## CONCLUSION

WHEREFORE, the Trust respectfully requests that the Court enter an order substantially in the form of the Proposed Order granting the relief requested herein and granting

such other relief as is just and proper.

Dated:  April 11, 2014
        New York, New York

                                        /s/ Norman S. Rosenbaum
                                        Gary S. Lee
                                        Norman S. Rosenbaum
                                        Jordan A. Wishnew
                                        Jonathan M. Petts
                                        MORRISON & FOERSTER LLP
                                        1290 Avenue of the Americas
                                        New York, New York 10104
                                        Telephone:  (212) 468-8000
                                        Facsimile:  (212) 468-7900

                                        *Counsel for The ResCap Borrower
                                        Claims Trust*

ny-1135982

## **Exhibit 1**

**Horst Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- )
                                                                       )
In re:                                                                 )    Case No. 12-12020 (MG)
                                                                       )
RESIDENTIAL CAPITAL, LLC, et al.,                                      )    Chapter 11
                                                                       )
                                        Debtors.                       )    Jointly Administered
                                                                       )
---------------------------------------------------------------------- )

### DECLARATION OF DEANNA HORST IN SUPPORT OF RESCAP BORROWER CLAIMS TRUST'S SIXTY-FIRST OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER CLAIMS)

I, Deanna Horst, hereby declare as follows:

1.      I am the Chief Claims Officer for The ResCap Liquidating Trust (the "Liquidating Trust"),[1] and I previously served as Chief Claims Officer for Residential Capital, LLC and its affiliates ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors").   I have been employed by affiliates of ResCap since August of 2001. In June 2012, I became Senior Director of Claims Management for ResCap and in October of 2013, I became the Chief Claims Officer.   I began my association with ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the Debtors' responsible lending on-site due diligence program.   In 2002, I became the Director of Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance—a position I held until 2006, at which time I became the Vice President of the Credit Risk Group, managing Correspondent and Broker approval and monitoring.   In 2011, I became the Vice President, Business Risk and Controls, and supported GMAC Mortgage, LLC and Ally Bank in this role.

---

[1]     The Liquidating Trust and the Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among of things, provides the Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Trust in performing its obligations.

In my current position, I am responsible for Claims Management and Reconciliation and Client Recovery.  I am authorized to submit this declaration (the "Declaration") in support of *ResCap Borrower Claims Trust's Sixty-First Omnibus Objection to Claims (No Liability Borrower Claims)* (the "Objection").[2]

       2.       Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents and information I have received through my discussions with other members of the Debtors' management or other former employees of the Debtors, the Debtors, the Liquidating Trust and the Trust's professionals and consultants, and/or Kurtzman Carson Consultants LLC ("KCC"), the Debtors' noticing and claims agent.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

       3.       In my capacity as Chief Claims Officer, I am intimately familiar with the claims reconciliation process in these Chapter 11 Cases.  Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' books and records, the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents.  I or my designee at my direction have reviewed and analyzed the proof of claim forms and supporting documentation, if any, filed by the claimants listed on Exhibit A annexed to the Proposed Order.  Since the Plan became effective and the Trust was established, I, along with other members of the Liquidating Trust's management or other employees of the Liquidating Trust have consulted with the Trust to continue the claims

---

[2]    Defined terms used but not defined herein shall have the meanings ascribed to such terms as set forth in the Objection.

ny-1136429

reconciliation process, analyze claims, and determine the appropriate treatment of the same.  In connection with such review and analysis, where applicable, I or the Liquidating Trust personnel under my supervision, and their professional advisors have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Debtors' books and records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the Claims Register maintained in the Debtors' Chapter 11 Cases.

4.    Under my supervision, considerable resources and time have been expended to ensure a high level of diligence in reviewing and reconciling the proofs of claim filed in these Chapter 11 Cases.  The Liquidating Trust, in support of the Trust, diligently evaluated any information provided by the claimants who filed the No Liability Borrower Claims, listed on Exhibit A to the Proposed Order.  In accordance with the Borrower Claim Procedures, the Debtors previously contacted those Borrowers who filed the No Liability Borrower Claims whose claims were filed with insufficient or no supporting documentation and requested that they provide additional information so that the Debtors could reconcile such claimants' filed claims with the Debtors' books and records.  Beginning in May of 2013, the Debtors sent Request Letters, substantially in the form as those attached at Exhibit 3 to the Objection, to the applicable Borrowers requesting additional documentation in support of their respective No Liability Borrower Claims.  The Borrowers who received the Request Letters either failed to respond to the Debtors' requests or failed to provide sufficient information to establish a basis for liability.

5.    At my direction and with my oversight, the Liquidating Trust, in support of the Trust, thoroughly reviewed the No Liability Borrower Claims listed under the heading

3

*"Claims to be Disallowed and Expunged"* on <u>Exhibit A</u> to the Proposed Order, together with information contained within the Debtors' books and records.

6.    These efforts led to the conclusion and belief that there is no present liability due and owing to such claimants and the specific objections to the allowance of such claims are set forth on <u>Exhibit A</u> to the Proposed Order in the column titled *"Reason(s) for Disallowance."*  The explanations for the requested disallowance of each claim set forth under the heading titled *"No Liability Summaries"* are incorporated by reference into this Declaration as if fully set forth herein.

7.    In general, the Trust's objection to each No Liability Borrower Claim falls under one or more of the following nine categories:

(i)    ***General No Liability***.  This category includes claims:
- relating to requests to reduce or forgive outstanding loan balances or to reduce interest rates;
- asserting that a Debtor is responsible for liabilities of non-Debtor entities;
- for which the claimants have, subsequent to filing the claims, admitted to the Debtors or Special Counsel that the Debtors have no liability;
- that the claimants lack standing to assert because the claims are property of the estate in the claimants' prior chapter 7 or chapter 13 bankruptcy cases; or
- that otherwise do not constitute a valid obligation of the Debtors (collectively, the "<u>General No Liability Claims</u>").

To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including (a) the claimant's transaction history showing the payments the claimant has made and the Debtors' application of those payments to principal, interest, fees, and escrows, as applicable (the "<u>Loan Payment History</u>"), (b) the Debtors' records tracking the history of the servicing of the claimant's loan, including but not limited to documenting instances of i) communication with the claimant, ii) letters and notices sent by the Debtors to the claimant, and iii) the Debtors' efforts to foreclose, conduct loss mitigation efforts, inspect properties, pay taxes and insurance on behalf of the claimant, and other standard servicing activity (collectively, the "<u>Internal Servicing Notes</u>"), and (c) other records that are specifically identified in the Objection. <u>See</u> Objection at p. 8.  Based on this review, the General No Liability Claims are not valid liabilities of the Debtors.

(ii) ***General Servicing Issues***.  This category includes claims based on general servicing issues, including assertions that a Debtor misapplied mortgage payments, provided incorrect information or reporting to the claimant, made improper collection calls, failed to release a lien on a timely basis, failed to respond to Qualified Written Requests, wrongfully transferred servicing or wrongfully sold the claimant's loan (the "General Servicing Issues Claims").  To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the Internal Servicing Notes, Loan Payment History, letters between the Debtors and the applicable Borrower(s), executed mortgage notes and deeds of trust, and other relevant documents that are specifically identified in the Objection. See Objection at p. 9.

Based on this review, the General Servicing Issues Claims are not valid obligations of the Debtors because: (a) the alleged events involving General Servicing Issues never took place; (b) the Debtor remedied the alleged error or mishandling, and as a result, the Claimant did not incur any damages, or failed to provide evidence of damages; and/or (c) the Debtor acted properly in servicing the loan, in accordance with the Debtor's standard policies and procedures and the terms of the executed note and deed of trust.

(iii) ***Origination Issues***.  This category includes claims based on loan origination issues, which include, without limitation, claims relating to disputes regarding the loan application and closing process, disclosures, loan terms, rights of rescission or a purportedly defective title exam (the "Origination Issues Claims").  To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the claimants' executed mortgage notes and other documents that are specifically identified in the Objection, see Objection at p. 10, to determine whether any Debtor was involved in the origination of the applicable loans.

Based on this review and the Trust's review of applicable state and federal law, the Origination Issues Claims are not valid liabilities of the Debtors because no Debtor entity was involved in the origination of the applicable loans and it is my understanding that vicarious liability cannot be imputed to any Debtor in its capacity as servicer or assignee of the loans.

(iv) ***Escrow Issues***.  This category includes claims based on the alleged improper application or calculation of escrow amounts (the "Escrow Issues Claims").  To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the Debtors' escrow receipts and payments, the annual escrow analysis sent to Borrowers, and any Internal Servicing Notes and written communication between the Debtors and the applicable Borrower(s) as well as other documents that are specifically identified in the Objection. See Objection at pp. 10-11.

ny-1136429

Based on this review, the Escrow Issues Claims are not valid liabilities of the Debtors.  In cases where a claimant asserted that the mortgage payments increased significantly to cover an escrow shortfall, the mortgage payments received were all correctly applied.  In cases where a claimant asserted that the escrow collected was insufficient to cover the property taxes and insurance, the Trust reviewed the escrow statements issued to the claimant, which outlined the amounts paid that year compared to what was estimated, as well as Internal Servicing Notes to the extent that there was an escrow account added to the loan, and determined that the Debtors have no liability as long as all amounts received from the Borrower were accurately recorded because the Borrowers are liable for the taxes and insurance on their real property.  In cases where a claimant asserted that it was owed a refund, the Trust looked at (1) the escrow statement issued to the claimant to determine if there was a refund due, (2) the history of the loan to determine if a check was issued for the refund and (3) the internal account notes to determine if there were discussions with the claimant regarding an escrow refund not being received, and found that any refunds due were previously paid.  Moreover, to the extent that the Debtors' books and records indicated that the issues asserted by a claimant occurred after the Debtors ceased servicing the underlying loan, the Debtors had no liability for the claim.

(v)    ***Wrongful Foreclosure***.  This category includes claims based, either directly or indirectly, on allegations of wrongful foreclosure by the Debtors (the "Wrongful Foreclosure Claims").

To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, to verify that the Debtors foreclosed properly and, where applicable, took the appropriate loss mitigation steps. Specifically, the Trust reviewed Payment History, Internal Servicing Notes, as well as, where applicable, the claimants' loan modification applications, loan modification approval letters, loan modification denial letters, compliance with loan modifications (trial and/or permanent), compliance with any other payment plans (forbearance and repayment), short sale applications and history, investor guidelines and/or direction, breach letters, and/or foreclosure related documents.  Where a claimant asserted that he or she did not execute the mortgage note, the Trust also examined Internal Servicing Notes to determine whether any previous identity theft claims were alleged, and compared the signatures on other executed documents in the claimant's file, as well as examining the Loan Payment History and any other information in the Debtors' possession including tax records reflecting whether the claimant deducted interest on the mortgage.  Moreover, where a Wrongful Foreclosure Claim was based on issues related to a short sale, the Trust further reviewed the Debtors' records to determine whether a short sale approval had been requested, and, if so and if such request was denied, whether the reason for denial was proper.[3]

---

[3]    Appropriate reasons for denying a short sale request include, without limitation, a claimant's failure to submit executed sale contracts, a claimant's failure to obtain approval from second lien holders and/or a claimant's short sale request did not comply with the investor's requirements.

ny-1136429

Based on this review, the Wrongful Foreclosure Claims are not valid liabilities of the Debtors.

(vi) ***Standing Issues***.  This category includes claims alleging that the Debtors lacked standing to service, foreclose or otherwise enforce the terms of the claimant's loan (the "Standing Issues Claims").  To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the claimant's mortgage or deed of trust, documents relating to chain of ownership, relevant assignments of interests in the loan, Loan Payment History, and Internal Servicing Notes.  Based on this review, the Standing Issues Claims are not valid liabilities of the Debtors because the Debtors had proper authority to service or foreclose the loan and to enforce the terms of the claimant's loan on behalf of the owner of the loan.

(vii) ***Credit Reporting Issues***.  This category includes claims that are based, either directly or indirectly, on alleged errors by the Debtors in how they reported the Borrower's loan performance to the credit reporting agencies, including claims alleging that the Debtors failed to apply or misapplied mortgage payments resulting in a negative report regarding the Borrower's loan performance (the "Credit Reporting Issues Claims").  To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, for evidence that the alleged payments were made, which included reviewing Loan Payment History, Internal Servicing Notes containing information reported to the credit bureaus, as well as any supporting documentation attached to the Credit Reporting Issues Claims, and other documents specifically identified in the Objection. See Objection at p. 13.  Based on this review, the Credit Reporting Issues Claims are not valid liabilities of the Debtors.

(viii) ***Interest Rates and Fees Collected***.  This category includes claims based on assertions that either (a) interest rates charged to the claimant were incorrect, incorrectly adjusted, or incorrectly not adjusted (the "Interest Rates Claims") or (b) the fees charged to the claimant were incorrect or inappropriate (the "Fees Collected Claims," and together with the Interest Rates Claims, the "Interest Rates and Fees Collected Claims").  To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the claimant's note, any adjustable rate rider and related documents, notices and/or adjustment letters sent to the claimant, Loan Payment History and fees charged, and other documents that are specifically identified in the Objection. See Objection at p. 14. Based on this review, the Interest Rates and Fees Collected Claims are not valid liabilities of the Debtors because the interest rates and fees charged were consistent with the governing loan documents, the Debtors' servicing policies, and if applicable, investor guidelines and/or servicing agreements.

7

(ix) **_Loan Modification_**. This category includes claims based on loan modification issues (the "Loan Modification Claims"), which allege, among other things, that the Debtors (a) failed to provide a loan modification,[4] or (b) provided a loan modification, but the or believes the terms were not as favorable to the claimant as those to which claimant believed he or she was entitled.  To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, to verify that the Debtors followed the applicable investor guidelines and policies regarding loan modifications.  Specifically, the Trust reviewed Internal Servicing Notes, Loan Payment History, and, where applicable, loan modification agreements, loan modification applications, loan modification denial letters, loan modification approval letters, the claimant's compliance with modifications (trial and/or permanent) and any instructions or guidelines provided by the investor for the claimant's loan.

Based on this review, the Loan Modification Claims are not valid liabilities of the Debtors because: (a) in cases where a loan modification request was denied, the Debtors complied with the applicable investor guidelines and policies governing the loan modification process; (b) in the cases where the claimant obtained a loan modification, the claimant was not damaged by the loan modification assistance provided; and (c) in the cases where the claimant disputes the terms of his or her loan modification, the Trust verified that (i) the claimant agreed to the terms by executing the underlying agreement, and (ii) the Debtors administered or serviced the loan modification in accordance with the governing loan documents, the Debtors' servicing policies, and if applicable, investor guidelines and/or servicing agreements.

8.      If the No Liability Borrower Claims are not disallowed and expunged, the parties asserting such claims may potentially receive an improper distribution on account of the asserted liabilities to the detriment of other claimants.

9.      Before filing this Objection, to the best of my knowledge, the Trust fully complied with all applicable provisions of the Borrower Claim Procedures set forth in the Procedures Order.

10.      Accordingly, based upon this review, and for the reasons set forth in the Objection and Exhibit A to the Proposed Order, I have determined that each No Liability

---

4    As a regular part of the Debtors' business practices, the Debtors offered mortgage loan modifications to Borrowers in financial distress, pursuant to certain guidelines established by the investors ("Traditional Modifications").  The Home Affordable Modification Program ("HAMP") is an administrative program that was implemented in April 2009 by the United States Treasury Department to help eligible homeowners with loan modifications on their home mortgage debt.  HAMP provided the Debtors with an additional type of loan modification (a "HAMP Modification") for assisting eligible Borrowers experiencing financial distress.

ny-1136429

Borrower Claim that is the subject of the Objection should be accorded the proposed treatment described in the Objection.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  April 11, 2014

 /s/ Deanna Horst
Deanna Horst
Chief Claims Officer for The ResCap
Liquidating Trust

9

## **Exhibit 2**

**Rosenbaum Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- )
                                                               )
In re:                                                         )      Case No. 12-12020 (MG)
                                                               )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,                       )      Chapter 11
                                                               )
                                          Debtors.             )      Jointly Administered
                                                               )
-------------------------------------------------------------- )

**DECLARATION OF NORMAN S. ROSENBAUM IN SUPPORT OF**
**RESCAP BORROWER CLAIMS TRUST'S SIXTY-FIRST OMNIBUS**
**OBJECTION TO CLAIMS (NO LIABILITY BORROWER CLAIMS)**

Norman S. Rosenbaum, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1.      I am a partner in the law firm of Morrison & Foerster LLP ("M&F").  M&F

maintains offices for the practice of law, among other locations in the United States and

worldwide, at 1290 Avenue of the Americas, New York, New York 10104.  I am an attorney

duly admitted to practice before this Court and the courts of the State of New York.  By this

Court's Order entered on July 16, 2012, M&F was retained as counsel to Residential Capital,

LLC and its affiliated debtors (the "Debtors").  Following the Effective Date,[1] M&F has been

retained as counsel to the ResCap Borrower Claims Trust (the "Trust").

2.      I submit this declaration in support of the Objection and in compliance with this

Court's Order entered March 21, 2013, pursuant to section 105(a) of the Bankruptcy Code and

Bankruptcy Rules 1009, 3007 and 9019(b), approving (i) claim objection procedures; (ii)

Borrower Claim procedures; (iii) settlement procedures; and (iv) schedule amendment

procedures [Docket No. 3294] (the "Claim Objection Procedures Order").

---

[1]     Unless otherwise indicated herein, capitalized terms shall have the meanings ascribed to them in the *ResCap Borrower Claims Trust's Sixty-First Omnibus Objection to Claims (No Liability Borrower Claims)* (the "Objection")

3.      I have been advised by M&F attorneys under my supervision that in accordance with the Claim Objection Procedures Order, prior to filing the Objection, the Debtors' or the Trust's personnel reviewed the No Liability Borrower Claims to determine if such claims contradicted the information in the Debtors' books and records, and thereafter sent a Request Letter to each claimant of the No Liability Borrower Claims, whose claim was supported by insufficient documentation to substantiate a valid claim against the Debtors.

4.      To the best of my knowledge, prior to the filing of the Objection, the Debtors and the Trust have fully complied with all other applicable terms of the Claim Objection Procedures Order.

I declare under penalty of perjury that the foregoing is true and correct.
Executed in New York, New York on April 11, 2014

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum

ny-1136774

## Exhibit 3

## Request Letters

                    MORRISON | FOERSTER

June 21, 2013

**Claim Number: <mark>XXX</mark>**

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case"), and we need additional information from you regarding the claim(s) ("claim") you are asserting against one or more of the Debtors.

**The Information we Need From You Regarding Your Proof of Claim:**
We reviewed a copy of the Proof of Claim form and documents, if any, that you filed in the ResCap bankruptcy case. A copy of your Proof of Claim form is enclosed for your reference. After reviewing the Proof of Claim form and any documents you submitted, we have determined that you did not provide sufficient information to support your "Basis for Claim" and we do not have sufficient information to understand the calculations you used to determine the amount you claim to be owed. In order to evaluate your claim, we need to understand the specific reasons as to why you believe you are owed money or are entitled to other relief from one or more of the Debtors. Please reply using the attached form and provide a written explanation, with supporting documentation, and include a detailed explanation of how you calculated the amount of your claim.

**You Must Respond to this Letter by no Later Than July 22, 2013:**
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than July 22, 2013 with an explanation stating the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases). You **must** provide copies of any and all documentation that you believe supports the basis for and amount of your claim. A form is included with this letter to assist you in responding to our request for additional information.

**Consequences of Failing to Respond:**
If you do not provide the requested information regarding the basis for and amount of your claim and the supporting documentation by July 22, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including that you failed to provide sufficient information and documentation to support your claim. If the Debtors file such an objection and it is successful, your claim may be disallowed and permanently expunged. If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied. Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for and amount of your claim.

**For Those With a Mortgage Loan Originated or Serviced by One of the Debtors**:

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and any documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Questions**:

If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney. You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] with general questions (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;**

      **(i)**     **Claims.Management@gmacrescap.com**; or
      **(ii)**    **Residential Capital, LLC**
            **P.O. Box 385220**
            **Bloomington, Minnesota 55438**

**Please mark each document you send with the Claim Number referenced above.**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

    MORRISON | FOERSTER

July 21, 2013

**Claim Number: <mark>XXX</mark>**

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case"), and we need additional information from you regarding the claim(s) ("claim") you are asserting against one or more of the Debtors.

**The Information we Need From You Regarding Your Proof of Claim:**
We reviewed a copy of the Proof of Claim form and documents, if any, that you filed in the ResCap bankruptcy case. A copy of your Proof of Claim form is enclosed for your reference. After reviewing the Proof of Claim form and any documents you submitted, we have determined that you did not provide sufficient information regarding the claim amount. In order to evaluate your claim, we need you to reply using the attached form and provide a specific explanation of how you calculated the amount of your claim and also provide sufficient documentation to support the amount you have claimed.

**You Must Respond to this Letter by no Later Than July 22, 2013:**
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than July 22, 2013 with an explanation stating the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases). You **must** provide copies of any and all documentation that you believe supports the basis for and amount of your claim. A form is included with this letter to assist you in responding to our request.

**Consequences of Failing to Respond:**
If you do not provide the requested information regarding the basis for and amount of your claim and the supporting documentation by July 22, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including that you failed to provide sufficient information and documentation to support your claim. If the Debtors file such an objection and it is successful, your claim may be disallowed and permanently expunged. If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied. Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for and amount of your claim.

**For Those With a Mortgage Loan Originated or Serviced by One of the Debtors:**

Residential Capital, LLC    P.O. Box 385220  Bloomington, Minnesota  55438

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and any documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Questions**:
If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney. You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] with general questions (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;**

(i)    **Claims.Management@gmacrescap.com**; or
(ii)   **Residential Capital, LLC**
       **P.O. Box 385220**
       **Bloomington, Minnesota 55438**

**Please mark each document you send with the Claim Number referenced above.**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

 MORRISON | FOERSTER

June 21, 2013

**Claim Number: XXX**

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case"), and we need additional information from you regarding the claim(s) ("claim") you are asserting against the Debtors.

**The Information we Need From You Regarding Your Proof of Claim**:
We reviewed a copy of the Proof of Claim form and documents that you filed in the ResCap bankruptcy case. A copy of your Proof of Claim form is enclosed for your reference. According to our records, you have filed a lawsuit against one or more of the Debtors. Please reply using the attached form and let us know whether the basis for and amount of the claim contained in the Proof of Claim form are the same or different in any way from the claim you have asserted in your lawsuit against the Debtors. Please ensure that you provide specific detail and support as to the basis for and amount of claim referenced in your Proof of Claim. If your lawsuit has been dismissed or withdrawn, please provide a specific explanation as to why you believe that you are still owed money or entitled to other relief from one or more of the Debtors.

**You Must Respond to this Letter by no Later Than July 22, 2013**:
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than July 22, 2013 with the requested information and an explanation stating the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases). You **must** also provide copies of any and all documentation that you believe supports the basis for and amount of your claim. A form is included with this letter to assist you in responding to our request for additional information.

**Consequences of Failing to Respond**:
If you do not provide the requested information regarding the basis for and amount of your claim and the supporting documentation by July 22, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including that you failed to provide sufficient information and documentation to support your claim. If the Debtors file such an objection and it is successful, your claim may be disallowed and permanently expunged. If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied. Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for and amount of your claim.

Residential Capital, LLC    P.O. Box 385220  Bloomington, Minnesota  55438

**For Those With a Mortgage Loan Originated or Serviced by One of the Debtors**:
If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and any documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Questions**:
If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney.  You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] with general questions (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com


**You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;**

       **(i)**      **Claims.Management@gmacrescap.com; or**
       **(ii)**     **Residential Capital, LLC**
                 **P.O. Box 385220**
                 **Bloomington, Minnesota 55438**


**Please mark each document you send with the Claim Number referenced above.**


Sincerely,

Claims Management
Residential Capital, LLC


---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

 MORRISON | FOERSTER

Claim Number: XXXX

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC, and other affiliated debtors and debtors in possession (collectively, the "Debtors"), pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case") and we need additional information from you regarding the claim(s) you are asserting against the Debtors.

**The Information we Need From You Regarding Your Proof of Claim**:
We received and reviewed a copy of the Proof of Claim form filed on your behalf, and noticed that it did not have any supporting documents attached to it.  In order to evaluate your claim, we need to specifically understand why you believe you are owed money or are entitled to other relief from one or more of the Debtors.  Although you may have stated the factual or legal basis for your claim on the first page of the Proof of Claim form, you have not provided any documentation to support this claim.  Therefore, we need you to provide us with documents that support the basis for your asserted claim.  A copy of your Proof of Claim form is enclosed for your reference.

**You Must Respond to this Letter by no Later Than June 24, 2013**:
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than June 24, 2013 with an explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases), and you **must** provide copies of any and all documentation that you believe supports the basis for your claim.   Included with this letter is a form to assist you in responding to our request.

**Consequences of Failing to Respond**:
If you do not provide the supporting documentation by June 24, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including the basis that you failed to provide sufficient information and documentation to support your claim, and your claim may be disallowed and permanently expunged.  If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied.  Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for your claim.

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim(s).

**Questions**:

If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney.  You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] with questions (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**You must send the requested information and document(s) supporting your claim(s) on or before the date provided in this letter to either:**

    (i)      **Claims.Management@gmacrescap.com; or**
    (ii)     **Residential Capital, LLC**
             **P.O. Box 385220**
             **Bloomington, Minnesota 55438**

**Please mark each piece of correspondence with the Claim Number referenced above.**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually, and therefore, cannot provide you with legal advice.

**ResCap**                     MORRISON | FOERSTER

**Claim Number:**

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case") and we need additional information from you regarding the claims you are asserting against the Debtors.

**The Information we Need From You Regarding Your Proof of Claim**:
We received and reviewed a copy of the Proof of Claim form and document(s), if any, that you filed in the ResCap bankruptcy case.  A copy of your Proof of Claim form is enclosed for your reference.  In the process of reviewing the Proof of Claim form and the document(s), if any, you submitted, we noticed that you left the "Basis for Claim" field on the Proof of Claim form blank, or indicated that the basis for your claim is "unknown".  In order to evaluate your claim, we need to understand why you believe you are owed money or are entitled to other relief from one of the Debtors.

**You Must Respond to this Letter by no Later Than June 17, 2013**:
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than June 17, 2013 with an explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim.   Included with this letter is a form to assist you in responding to our request.

**Consequences of Failing to Respond**:
If you do not provide the basis for your claim and the supporting documentation by June 17, 2013, the Debtors may file a formal objection to your Proof of Claim on, among others, the basis that you failed to provide sufficient information and documentation to support your claim, and your claim may be disallowed and permanently expunged.  If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied.  Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for your claim.

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Questions**:

If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney. You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;**

      **(i)**      **Claims.Management@gmacrescap.com, or**

      **(ii)**     **Residential Capital, LLC**
              **P.O. Box 385220**
             **Bloomington, Minnesota 55438**

**Please mark each piece of correspondence with the Claim Number referenced above.**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

                    MORRISON | FOERSTER

**Claim Number:**

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case") and we need additional information from you regarding the claims you are asserting against the Debtors.

**The Information we Need From You Regarding Your Proof of Claim:**
We received and reviewed a copy of the Proof of Claim form and document(s), if any, that you filed in the ResCap bankruptcy case.  A copy of your Proof of Claim form is enclosed for your reference.  We are unable to determine from the Proof of Claim form and the document(s), if any, you submitted why you believe you are owed money or other relief from one of the Debtors.  In order to evaluate your claim, we need to understand why you believe you are owed money or are entitled to other relief from one of the Debtors.

**You Must Respond to this Letter by no Later Than June 17, 2013:**
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you must respond to this letter by no later than June 17, 2013 with an explanation that states the legal and factual reasons why you believe that one of the Debtors owed you money as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you must provide copies of any and all documentation that you believe supports the basis for your claim.  Included with this letter is a form to assist you in responding to our request.

**Consequences of Failing to Respond:**
If you do not provide the requested explanation and supporting documentation by no later than June 17, 2013, the Debtors may file a formal objection to your Proof of Claim, and your claim may be disallowed and permanently expunged.  If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied.  Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for your claim.

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Note**: The Debtors previously provided notices about their bankruptcy filings and the claim process to current customers and mortgage loan applicants.  You may have received one or more of those notices. Nothing in those notices and nothing in this letter changes your obligations under your mortgage loan agreement (i.e. if you were obligated to make, or were making, mortgage loan payments before the ResCap bankruptcy case commenced, you should continue to make mortgage loan payments). However, if the only reason you filed a Proof of Claim was because you received a notice from the Debtors <u>and</u> you do not believe that ResCap, GMAC Mortgage or any of the other Debtors owes you money or other relief, please reply to us via email or letter stating so.  This information is necessary to evaluate your claim.

**Questions:**
If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney. You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;**

      (i)      **Claims.Management@gmacrescap.com, or**
      (ii)     **Residential Capital, LLC**
             **P.O. Box 385220**
             **Bloomington, Minnesota 55438**

**Please mark each piece of correspondence with the Claim Number referenced above.**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

## Exhibit 4

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ )
                                      )
In re:                               )      Case No. 12-12020 (MG)
                                        )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,    )      Chapter 11
                                        )
                   Debtors.     )      Jointly Administered
------------------------------------------------------------ )

## ORDER GRANTING RESCAP BORROWER CLAIMS TRUST'S SIXTY-FIRST OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER CLAIMS)

Upon the sixty-first omnibus objection to claims (the "<u>Objection</u>")[1] of the ResCap

Borrower Claims Trust (the "<u>Trust</u>"), as successor in interest to Residential Capital, LLC and its

affiliated debtors in the above-referenced Chapter 11 Cases (collectively, the "<u>Debtors</u>"), seeking

entry of an order, pursuant to section 502(b) of title 11 of the United States Code (the

"<u>Bankruptcy Code</u>"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, and this

Court's order approving procedures for the filing of omnibus objections to proofs of claim

[Docket No. 3294] (the "<u>Procedures Order</u>"), disallowing and expunging the No Liability

Borrower Claims, all as more fully described in the Objection; and it appearing that this Court

has jurisdiction to consider the Objection pursuant to 28 U.S.C. §§ 157 and 1334; and

consideration of the Objection and the relief requested therein being a core proceeding pursuant

to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409; and due and proper notice of the Objection having been provided, and it appearing that

no other or further notice need be provided; upon consideration of the Objection and the

Declaration of Deanna Horst and the Declaration of Norman S. Rosenbaum, annexed to the

---

[1]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

Objection as Exhibits 1-2, respectively; and the Court having found and determined that the relief sought in the Objection is in the best interests of the Trust, the Trust's constituents, the Debtors, and other parties in interest and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and the Court having determined that the Objection complies with the Borrower Claim Procedures set forth in the Procedures Order; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted to the extent provided herein; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the claims listed on Exhibit A annexed hereto under the heading "Claims to be Disallowed and Expunged" (collectively, the "No Liability Borrower Claims") are disallowed and expunged with prejudice; and it is further

ORDERED that Kurtzman Carson Consultants LLC, the Debtors' claims and noticing agent, is directed to disallow and expunge the No Liability Borrower Claims identified on the schedule attached as Exhibit A hereto so that such claims are no longer maintained on the Claims Register; and it is further

ORDERED that the Trust is authorized and empowered to take all actions as may be necessary and appropriate to implement the terms of this Order; and it is further

ORDERED that notice of the Objection, as provided therein, shall be deemed good and sufficient notice of such objection, and the requirements of Bankruptcy Rule 3007(a), the Case Management Procedures entered on May 23, 2012 [Docket No. 141], the Procedures Order, and the Local Bankruptcy Rules of this Court are satisfied by such notice; and it is further

ny-1136472

ORDERED that this Order has no res judicata, estoppel, or other effect on the validity, allowance, or disallowance of any claim not listed on Exhibit A annexed to this Order, and the Trust's and any party in interest's right to object on any basis are expressly reserved with respect to any such claim not listed on Exhibit A annexed hereto; and it is further

ORDERED that this Order shall be a final order with respect to each of the No Liability Borrower Claims identified on Exhibit A, annexed hereto, as if each such No Liability Borrower Claim had been individually objected to; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated:_____, 2014
        New York, New York

                                _____
                                THE HONORABLE MARTIN GLENN
                                UNITED STATES BANKRUPTCY JUDGE

3

ny-1136472

**Exhibit A**

ny-1136472

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Angelo Ravanello C/O Frank B. Watkins Frank B. Watkins, P.C. 2333 Rose Lane PO Box 1811 Riverton, WY 82501 | 726 | 09/24/2012 | $0.00 | Administrative Priority | Residential Capital, LLC | 12-12020 | General No Liability | Debtors have no connection to this loan or Residential Relief Foundation. | 7-8 |
| | | | | $0.00 | Administrative Secured | | | | Debtors have no liability because Claimant asserts a claim against a Debtor entity for liabilities of non-Debtor entities.  In response to Debtor's request for more information in support of the claim, Claimant stated that the basis of the claim arises from $1,095 paid to a "Residential Relief Foundation" for assistance in obtaining a loan modification. Claimant alleges that Residential Relief Foundation did not provide any assistance to Claimant. Residential Relief Foundation is not affiliated with any Debtor entity. | |
| | | | | $0.00 | Secured | | | | | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $1,095.00 | General Unsecured | | | | | |
| 2 | Ann J. Polk P.O. Box 575 Salem , NJ 08079 | 3504 | 11/07/2012 | $0.00 | Administrative Priority | Residential Capital, LLC | 12-12020 | Escrow Issues, Loan Modification, Interest Rates and Fees Collected | Debtors' involvement with Claimant's loan was limited to Debtors' roles as originator and servicer of the loan.  GMAC Mortgage, LLC, dba ditech.com, originated the loan on October 18, 2007 and transferred its interest in the loan to Fannie Mae on or about November 2, 2007.   Debtor GMAC Mortgage, LLC serviced the loan from October 17, 2007 until servicing transferred to GreenTree Servicing on February 1, 2013. | 10-11, 13-14, 14-15 |
| | | | | $0.00 | Administrative Secured | | | | Debtors have no liability for Claimant's assertion that Debtor improperly charged $7,557.49 for property taxes because Claimant was not damaged by Debtor's remittance of taxes. Debtor's records show the original tax bill received by Debtor was for $7,557.49. On 4/10/12, Debtor received a refund from Quinton Township, and a credit was applied to Claimant's escrow account.  Debtor received a corrected tax bill and the correct amount was paid. | |
| | | | | $9,697.50 | Secured | | | | Debtors have no liability for Claimant's assertion that Debtor continually charged late charges  because Debtor's records show  i) Claimant's mortgage note and deed, signed by Claimant, states Claimant has a 15-day grace period from the date payment is due (first of month) before a late charge would be applied to the account, ii) according to Debtor's servicing notes, Claimant paid past the grace period 29 times from 2010 to 2012, in each instance a late charge of $45.50 would have been applied to the account per the mortgage agreement. | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $0.00 | General Unsecured | | | | The improper fees alleged by Claimant were correctly assessed by Debtor because i) in each instance that Debtor charged late fees, Claimant's account was past due, and ii) in each instance that Debtor charged inspection fees, the loan was delinquent, and the Section 14 of the Deed of Trust states that "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purposes of protecting Lender's interest in the Property and rights under the security instrument, including but not limited to, attorney's fees, property inspection fees and valuation fees…" Claimant states their home was never inspected, but Debtor's records indicate the property was inspected in connection with each fee charged to Claimant. As part of Debtor's standard business practices, it was common for property inspections to consist of a visual assessment from the exterior of the property without any interaction with the homeowner. | |
| | | | | | | | | | Debtors have no liability for Claimant's assertion that Debtor did not handle Claimant's loan modification application appropriately because Debtor never received a workout package from Claimant. On the contrary, Debtor's records show i) Debtor mailed unsolicited workout packages to Claimant on 6/23/10, 2/28/11, 11/4/11, 3/20/12 and 4/5/12, however, in each instance, Claimant did not respond to Debtor or provide any information. Since no workout package was submitted, Debtor was unable to evaluate Claimant for a loan modification. | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 3 | Arlene M. Evans<br>3748 N 25th St<br>Milwaukee, WI 53206-0000 | 4700 | 11/13/2012 | $0.00 | Administrative Priority | Residential Capital, LLC | 12-12020 | General No Liability | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan.  Debtor Residential Funding Corp. purchased the loan from Paragon Home Lending, LLC on or about June 29, 2005 and subsequently transferred its interest and the loan was securitized on or about August 1, 2005, where US Bank, NA was appointed as Trustee.  Debtor Homecomings Financial, LLC serviced the loan from June 29, 2005 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013.<br><br>Claimant disputes the principal balance of her loan, and asserts her principal balance is more than what she owes on the property. In response to Debtor's request for more information in support of the claim, Claimant states her evidence in support of the claim "was destroyed" and that she has to "cancel my claim" because "[I] don't have enough paper to show."  Debtors have no liability to Claimant because i) Claimant has not provided any evidence or explanation of damages, ii) Debtor is not responsible for value decline to Claimant's property, iii) the principal balance of Claimant's loan and subsequent loan modification were agreed to by Claimant, and (iv) during a review of the loan payment history, the Debtor found no evidence of incorrectly reporting balances in Claimant's monthly mortgage statements. | 7-8 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | | |
| | | | | $0.00 | Priority | | | | | |
| | | | | UNLIQUIDATED | General Unsecured | | | | | |
| 4 | BROADLANDS MASTER ASSOC INC<br>8700 TURNPIKE DR STE 230<br>C O VISTA MANAGEMENT<br>WESTMINSTER, CO 80031 | 1050 | 10/09/2012 | $0.00 | Administrative Priority | Residential Capital, LLC | 12-12020 | General No Liability | Debtors' role with Claimant's loan is unknown because Claimant failed to provide any identifying information with respect to a subject loan. The proof of claim and the response to request for additional information confirms that Claimant is not owed any monies by the Debtors.<br><br>Debtors have no liability because i) Claimant failed to state a valid basis for its claim, ii) in a letter Debtor received from Claimant on July 8, 2013, Claimant admitted Claimant is not owed any monies by Debtor, and iii) Debtor reviewed its books and records and found no connection to Claimant. | 7-8 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $0.00 | General Unsecured | | | | | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 5 | Bruce Osojnak<br>218 E 900 S<br>Salt Lake City, UT 84111-4215 | 3781 | 11/08/2012 | $0.00 | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Loan Modification, Credit Reporting Issues, Wrongful Foreclosure | Debtors' involvement with Claimant's loan was limited to Homecomings Financial Network's roles as originator and servicer of the loan. Homecomings Financial Network originated the loan on or about November 11, 2002, and subsequently transferred the loan to Debtor GMAC Mortgage, LLC. Subsequently, Debtor GMAC Mortgage, LLC transferred its interest in the loan to Fannie Mae between November 2002 and February 2004. Debtor Homecomings Financial, LLC serviced the loan from November 11, 2002 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to GreenTree on February 1, 2013.<br><br>Claimant asserts claims for ""damage to credit report, stress with health, actions for communication and added paperwork to remedy."" In response to Debtor's request for more information in support of the claim, Claimant provided loan modification documentation and evidence of payments made to Debtor. As the basis for claim is not clear, Debtor evaluated Claimant's account for any possible obligations arising from wrongful foreclosure, loan modification issues, and improper credit reporting. Debtor found no instances of wrongdoing or obligations to Claimant. Allegations involving loan modification issues have no merit because Claimant never submitted a complete workout package for Debtor to review. Debtor's records show Claimant provided incomplete workout packages on July 21, 2009, April 7, 2010, June 17, 2010 and July 15, 2010. In each instance, Claimant failed to provide missing items to Debtor upon Debtor's timely written requests. Allegations involving damages from wrongful foreclosure have no merit because i) Claimant never lost his home to foreclosure, ii) Debtor postponed and/or cancelled foreclosure sales scheduled for July 22, 2009, April 7, 2010, May 12, 2010, and July 21, 2010 to allow Claimant time to submit complete workout packages for a loan modification review, or to reinstate Claimant's loan, iii) the foreclosure sale conducted by Debtor on May 19, 2010, which was rescinded by the third party buyer, was appropriate because Claimant was past due at the time of the foreclosure sale and had failed to respond to Debtor's request for missing items in support of a loan modification request. The allegation of improper credit reporting has no merit because i) Debtor confirmed that Debtor reported Claimant's delinquency information correctly, and ii) when Claimant's foreclosure sale was rescinded by the third party buyer, Debtor took appropriate steps to ensure the credit bureaus amended Claimant's credit history to remove the foreclosure from Claimant's record. Debtor notes that Claimant brought the loan current on July 22, 2010 and the loan was current at the time of servicing transfer to GreenTree on February 1, 2013. | 11-12, 12-13, 14-15 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | | |
| | | | | $0.00 | Priority | | | | | |
| | | | | BLANK | General Unsecured | | | | | |
| 6 | Daniel G. Gauthier & Kathryn A. Gauthier<br>7815 Brookpines Drive<br>Clarkston, MI 48348-4469 | 1994 | 10/30/2012 | $0.00 | Administrative Priority | Residential Capital, LLC | 12-12020 | General No Liability | Debtors' involvement with Claimants' loan was limited to Debtors' roles as originator, purchaser and servicer of the loan. Debtor GMAC Mortgage Corporation originated the loan on September 9, 1997. Debtor transferred its interest in the loan to Fannie Mae in or before February 2004. Debtor GMAC Mortgage, LLC serviced the loan from September 9, 1997 until servicing transferred to GreenTree on February 1, 2013.<br><br>Debtors have no liability because Claimants do not assert a valid basis for the claim. Claimants state they simply want to ensure their mortgage will be closed properly when it is paid off. According to Debtor's records, the loan was service released to GreenTree on February 1, 2013. At the time of release, the account was owing for March 1, 2013 payment, and there was an unpaid principal balance of $2,247.08. As the loan had an unpaid balance at the time of service release to GreenTree, Debtor has no responsibility for any subsequent handling of the loan. | 7-8 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $89,000.00 | General Unsecured | | | | | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|
| 7 | Daniel M Delluomo Inc DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE VS CORY L RICHARDSON 5617 N Classen Blvd Oklahoma City, OK 73118 | 697 | 09/24/2012 | $0.00 Administrative Priority $0.00 Administrative Secured $0.00 Secured $0.00 Priority $75,000.00 General Unsecured | Residential Capital, LLC | 12-12020 | Wrongful Foreclosure, General No Liability | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Company, LLC purchased the loan from WMC Mortgage Corp on or about January 1, 2007, transferred its interest and the loan was securitized on or about June 1, 2007, where Deutsche Bank National Trust Company was appointed as Trustee. Debtor GMAC Mortgage, LLC serviced the loan from January 24, 2007 until servicing transferred to Ocwen on February 16, 2013. Claimant asserts he is entitled to attorney's fees based on a foreclosure case that was dismissed. Debtors have no liability for this claim because Debtors verified that there were no counterclaims pending in the foreclosure action when the loan was paid off, so parties stipulated to dismissal of the foreclosure action. No fees or costs were awarded to parties to that foreclosure action. | 7-8, 11-12 |
| 8 | Daniel P. Hessburg 3490 Lythrum Way Minnetrista, MN 55364 | 2047 | 11/01/2012 | $0.00 Administrative Priority $0.00 Administrative Secured $109,077.02 Secured $0.00 Priority $0.00 General Unsecured | GMAC Mortgage, LLC | 12-12032 | General No Liability | Debtors' involvement with Claimant's loan was as originator and servicer. Debtor GMAC Mortgage, LLC originated the loan on February 2, 2008. Debtor subsequently sold the loan to Ally Bank in February 2008. Debtor GMAC Mortgage, LLC serviced the loan from February 2, 2008 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. Claimant asserts that since the mortgage is not perfected, pursuant to 11 U.S.C. 547 and 544 he can avoid his obligations under the mortgage. Debtors have no liability for Claimant's claim because the referenced statutes do not provide support for Claimant's position. The statutes permit a trustee to avoid a transfer of property or obligation of the Debtor. Claimant is not a bankruptcy panel trustee. Debtor verified that the trustee in this matter filed an identical claim and has resolved the title issue to the property, which Claimant includes as a basis of his claim. Claimant has no right or authority to prosecute this claim. | 7-8 |
| 9 | Deborah L. Campano 116 Choctaw Ridge Rd Branchburg, NJ 08876 | 4473 | 11/13/2012 | $0.00 Administrative Priority $0.00 Administrative Secured $0.00 Secured $0.00 Priority UNLIQUIDATED General Unsecured | GMAC Mortgage, LLC | 12-12032 | General Servicing Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor GMAC Mortgage, LLC purchased the loan from Gateway Funding Diversified Mortgage Services on or about May 5, 2010. Debtor transferred its interest in the loan to GNMA on or about May 24, 2010. Debtor GMAC Mortgage, LLC serviced the loan from May 5, 2010 until servicing transferred to Ocwen Loan Servicing, LLC on Feb 16th, 2013. Claimant asserts "paid extra to principal" in proof of claim. Claimant provided no additional explanation of the basis for claim in a response to Debtor's letter request for more information. Debtors have no liability because i) Claimant failed to provide evidence of damages, and ii) Debtor reviewed the instances where borrower voluntarily remitted additional funds over the required mortgage payment, and validated that the funds were appropriately applied toward Claimant's principal balance in accordance with the terms of the note. Debtor reviewed its books and records and found no evidence that monies are owed to Claimant. | 8-9 |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST  OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 10 | Edmo Valley Jr.<br>210 C.L. Bradford St.<br>Pineville, LA 71360 | 1311 | 10/16/2012 | $0.00 | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Origination Issues, General No Liability | Debtors' involvement with Claimant's loan was limited to Debtors' roles as originator and servicer of the loan.  Debtor GMAC Mortgage, LLC originated the loan on April 11, 2008. Debtor GMAC Mortgage, LLC serviced the loan from April 11, 2008 until servicing transferred to Ocwen on February 16, 2013.<br><br>Debtors have no liability for Claimant's origination-based claims because Debtor's records show that Claimant i) received all the appropriate rate disclosure documents, ii) signed a loan application for the loan indicating a 6% interest rate and iii) signed the Note with a fixed rate of 6%.  The combined monthly mortgage payment of principal and interest has been $693.74 since origination. | 7-8, 9-10 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | | |
| | | | | UNLIQUIDATED | Priority | | | | | |
| | | | | $0.00 | General Unsecured | | | | | |
| 11 | Erin Gleason<br>Home Team Law Offices, PLLC<br>1800 Crooks Road, Suite C<br>Troy, MI 48084 | 371 | 08/07/2012 | $0.00 | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Standing Issues, General No Liability | Debtors' involvement with Claimant's loan was limited to Debtor Homecomings Financial, LLC's role as originator, and Debtor Residential Funding Company, LLC's roles as servicer and purchaser of the loan. Debtor Residential Funding Company, LLC purchased the loan from Homecomings Financial, LLC on or about October 21, 2005. Residential Funding Company, LLC transferred its interest and the loan was securitized on or about November 1, 2005, where Deutsche Bank Trust Company Americas ("Deutsche Bank") was appointed as Trustee.  Debtor Homecomings Financial, LLC serviced the loan from October 14, 2005 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013.<br><br>Claimant alleges that Deutsche Bank does not have authority to foreclose.  Debtors have no liability for Claimant's lack-of-standing claims because Debtor has verified that the assignment and endorsement chains are complete and valid.  Debtor's records show i) the loan was originated by Homecomings Financial Network on October 14, 2005, ii) the Note was endorsed from Homecomings to Residential Funding Corp and from Residential Funding Corp to Deutsche Bank, as Trustee, iii) assignment of the mortgage was recorded from MERS as nominee for lender to Deutsche Bank, as Trustee, iv) Debtor serviced the loan until servicing transferred to Ocwen, and v) Debtor has no interest in any future foreclosure. | 7-8, 12 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $156,270.00 | General Unsecured | | | | | |
| 12 | Estelle Thompson Jones<br>8153 S. Throop St<br>Chicago, IL 60620 | 2166 | 11/05/2012 | $0.00 | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Origination Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan.  Debtor GMAC Mortgage, LLC purchased the loan from Quicken Loans, Inc. on or about September 24, 2003.  Debtor transferred its interest and the loan was securitized on or about November 29, 2005, where Deutsche Bank National Trust Company was appointed as Trustee. Debtor GMAC Mortgage, LLC serviced the loan from September 17, 2005 until servicing transferred to Ocwen on February 16, 2013.<br><br>Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by Quicken Loans, Inc. on August 22, 2003. Section 3A of the Mortgage Note signed by Claimant states the loan will be interest only for the first 120 months and then will switch to principal and interest payments. | 9-10 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $80,000.00 | General Unsecured | | | | | |

In re RESIDENTIAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|
| 13 | FRAN YEGANEH vs GMAC MORTGAGE LLC<br>4437 FELLOWS ST<br>UNION CITY, CA 94587 | 1893 | 10/29/2012 | $0.00 Administrative Priority<br><br>$0.00 Administrative Secured<br><br>$0.00 Secured<br><br>$0.00 Priority<br><br>$512,563.24 General Unsecured | GMAC Mortgage, LLC | 12-12032 | Escrow Issue, General No Liability | Debtors' involvement with assertions in Claimant's claim was limited to Debtor's role as servicer on a loan not held by the claimant. Debtor GMAC Mortgage, LLC serviced the loan identified in the claim from February 14, 2005 until servicing transferred to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013; however, the claimant was not the borrower under the loan.<br><br>Claimant asserts Debtor improperly retained insurance proceeds and would not allow her to take over mortgage loan (as she is not the Borrower). Debtors have no liability for Claimant's escrow related claims. Debtor's records show that assumption paperwork was not received for Claimant and therefore she never assumed liability for the loan. Debtor's records reflect a conversation with the borrower on August 3, 2009 that Claimant took over property against borrower's wishes and Claimant had been calling in trying to get insurance funds released. Borrower advised Debtor this is "fraud" and funds were not to be released to Claimant and Claimant was not authorized on the loan. Therefore, the Debtors are not a party in privity with the claimant. | 7-8, 10-11 |
| 14 | Gabriel J. & Grace G. Huba<br>1177 Kirkwall Drive<br>Copley, OH 44321-1728 | 1058 | 10/09/2012 | UNLIQUIDATED Administrative Priority<br><br>$0.00 Administrative Secured<br><br>UNLIQUIDATED Secured<br><br>$0.00 Priority<br><br>UNLIQUIDATED General Unsecured | Residential Capital, LLC | 12-12020 | General No Liability | Debtors' involvement with Claimants' loan was limited to Debtors' roles as purchaser and servicer of the loan. Debtor transferred its interest in the loan to Fannie Mae in or about September 23, 2011. Debtor transferred its interest in the loan to Fannie Mae in or about November 2011. Debtor GMAC Mortgage, LLC serviced the loan from September 23, 2011 until servicing transferred to Ocwen on February 16, 2013.<br><br>Debtors have no liability because i) Claimants failed to state a basis for claim other than "contact from Morrison & Foerster LLP", and ii) in response to Debtor's letter requesting more information in support of claim, Claimants state "We are not sure of any discrepancies or wrongdoing by GMAC", and iii) Debtor reviewed its books and records and determined that no monies are owed to Claimants. | 7-8 |
| 15 | Gilbert P. Gia - Ramona C. Gia<br>4104 Boise St<br>Bakersfield, CA 93306-1102 | 1363 | 10/17/2012 | $0.00 Administrative Priority<br><br>$0.00 Administrative Secured<br><br>$0.00 Secured<br><br>$0.00 Priority<br><br>$83,000.00 General Unsecured | GMAC Mortgage, LLC | 12-12032 | General No Liability | Debtors' involvement with Claimants' loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor GMAC Mortgage, LLC purchased the loan from Golden Empire Mortgage, Inc., doing busines as Home Mortgage Company on or about September 20, 2010. Debtor transferred its interest in the loan to the Federal National Mortgage Association ("Fannie Mae") on or about November 10, 2010. Debtor GMAC Mortgage, LLC serviced the loan from October 20, 2010 until servicing transferred to Ocwen on February 16, 2013.<br><br>The Debtors have no liability because Claimants stated in a letter to Debtor dated June 12, 2013 that i) Claimants filed the claim only because they were sent notice of the Debtors' bankruptcy, and ii) they are not aware of any wrongdoing against them. Special Counsel contacted Claimants seeking a withdrawal of their claim, however, Claimants refused to execute the withdrawal form. | 7-8 |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 16 | Gloria L Mason<br>1525 Old Buckroe Road<br>Hampton, CA 23664 | 2404 | 11/05/2012 | $0.00 | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Loan Modification, Origination Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor GMAC Mortgage, LLC purchased the loan from Metamerica Mortgage Bankers, Inc. on or about June 18, 2009. Debtor transferred its interest in the loan on or about July 20, 2009 to GNMA. Debtor GMAC Mortgage, LLC serviced the loan from June 18, 2009 until servicing transferred to Ocwen on February 16, 2013. | 9-10, 14-15 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | Claimant failed to state a basis for the proof of claim. In response to Debtor's letter requesting additional information in support of the Claimant's proof of claim, Claimant states the basis of her claim is "paying too much" in her monthly mortgage payment and wrongful denial of loan modification. Debtors have no liability for the allegation that Claimant was "paying too much" in her monthly mortgage payment because i) Debtor's servicing records show that the monthly payments required from Claimant were consistent with the terms of Claimant's note, and ii) Debtor was not involved in the origination of Claimant's loan or the payment terms agreed to by Claimant under the note. Claimant's loan was originated by Metamerica Mortgage Bankers, Inc., a non-Debtor entity. | |
| | | | | $0.00 | Priority | | | | | |
| | | | | UNLIQUIDATED | General Unsecured | | | | Debtor appropriately denied Claimant for a HAMP modification because HAMP guidelines at the time did not allow modification for loans originated after January 1, 2009. Claimant's loan was originated on January 18, 2009. Claimant was also properly denied a traditional modification in accordance with the investor guidelines due to insufficient income. Debtor's records show i) Debtor mailed a denial letter to Claimant on 12/23/10, and ii) Debtor spoke with Claimant by phone on 2/25/11 and advised Claimant that they would be denied for modification if their financial situation had not changed since their December 2010 application. | |
| 17 | Gloria W Rutledge<br>5020 Rodgers Drive<br>Clinton, MD 20735 | 2265 | 11/05/2012 | $0.00 | Administrative Priority | Residential Capital, LLC | 12-12020 | General No Liability | Debtors' involvement with Claimant's loan was limited to Debtors' roles as purchaser and servicer of the loan. Debtor GMAC Mortgage Corporation purchased the loan from Mortgage Investors Corp. on or about August 5, 2011. Debtor transferred its interest in the loan to GNMA in or about September 2011. Debtor GMAC Mortgage, LLC serviced the loan from August 5, 2011 until servicing transferred to Ocwen Loan Servicing, LLC on Feb 16th, 2013. | 7-8 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $159,607.14 | Secured | | | | Debtors have no liability because i) Claimant failed to state a valid basis for the claim, ii) Claimant admits that she is unaware of any funds due to Claimant by Debtor, iii) Claimant asserts her mortgage is with a non-debtor entity, and iv) Debtor reviewed its books and records and found no evidence that monies are owed to Claimant. | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $0.00 | General Unsecured | | | | In a letter response to Debtor's request for more information in support of the claim, Claimant states "Responding to documents recv'd May 14, 2012, instructions stated Claimant only had a one time opportunity to file if they believed they were owed any relief. Because I was not sure and did not want to be left out, I filed a claim. My mortgage loan is with Mortgage Investors Corp and I owe for the finance of my mortgage. The relief I'm seeking is to be relieved/removed from any bankruptcy proceedings and to have my home safe/free from any liens/obligations other than my loan payments." | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 18 | Gwenn Ferris
4601 N. 102nd Ave # 1043
Phoenix, AZ 85037 | 4451 | 11/12/2012 | $0.00 | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Interest Rates and Fees Collected | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan.  Debtor Residential Funding Corporation purchased the loan from Hamilton Mortgage Company on or about August 13, 2004, subsequently transferred its interest and the loan was securitized on or about September 1, 2004, where JP Morgan Chase Bank was appointed as Trustee. Debtor Homecomings Financial, LLC serviced the loan from August 13, 2004 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013.

The improper fees alleged by Claimant were correctly assessed by Debtor because the loan was delinquent by 45 days or more for 15 months from September 2007 to November 2008. Section 14 of the Deed of Trust states that "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purposes of protecting Lender's interest in the Property and rights under the security instrument, including but not limited to, attorney's fees, property inspection fees and valuation fees..."  Although Claimant states her home was never inspected, Debtor verified through its servicing records that the property was inspected on 14 occasions. As part of Debtor's standard business practices, it was common for property inspections to consist of a visual assessment from the exterior of the property without any interaction with the homeowner. | 13-14 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | | |
| | | | | $0.00 | Priority | | | | | |
| | | | | UNLIQUIDATED | General Unsecured | | | | | |
| 19 | Johnny H. Murphy
6615 Carloway Dr.
Fayetteville, NC 28304 | 4411 | 11/09/2012 | $0.00 | Administrative Priority | Residential Capital, LLC | 12-12020 | Loan Modification, Interest Rates and Fees Charged, Escrow Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Company, LLC purchased the loan from Concorde Acceptance Corp., on or about April 30, 2003. Debtor transferred its interest and the loan was securitized on or about May 1, 2003, where JPMorgan Chase Bank was appointed as Trustee.  Debtor Homecomings Financial, LLC serviced the loan from April 4, 2003 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013.

Claimant asserts the monthly payment required under his loan modification improperly increased from $888.12 to $901.00 and then to $930.64. The alleged increases to Claimant's monthly payment were correctly assessed by Debtor due to increases in the Claimant's escrow obligations for taxes and insurance. Under the terms of the loan modification, Claimant was required to escrow for taxes and insurance. In the event Claimant's taxes or insurance obligations increase, Debtor can increase the escrow portion of Claimant's monthly mortgage payment to cover an existing or foreseen shortfall in the escrow account. Debtor confirmed that the principal and interest portion of Claimant's monthly payment did not increase after consummation of the loan modification. | 10-11, 13-14, 14-15 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | | |
| | | | | $0.00 | Priority | | | | | |
| | | | | UNLIQUIDATED | General Unsecured | | | | | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|
| 20 | JULIO AND TOMASA GALVAN AND 1620 ALTA VISTA DR S COAST ROOFING ALVIN, TX 77511 | 620 | 09/21/2012 | $239.47 Administrative Priority<br><br>$0.00 Administrative Secured<br><br>$98,000.00 Secured<br><br>$103,585.03 Priority<br><br>UNLIQUIDATED General Unsecured | Homecomings Financial, LLC | 12-12042 | Loan Modification Escrow Issues | Debtors' involvement with Claimants' loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Company, LLC purchased the loan from Decision One Mortgage Company, LLC, on or about October 28, 2004. Debtor transferred its interest and the loan was securitized on or about November 1, 2004, where JP Morgan Chase Bank, NA was appointed as Trustee.  Debtor Homecomings Financial, LLC serviced the loan from November 12, 2004 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013.<br><br>Claimants failed to state a basis for the proof of claim.  In response to Debtor's letter requesting information in support of the proof of claim, Claimant asserts that when they received their loan modification, the payment was to be $622.62, but they are paying $878.14, and the payments keep increasing. Debtors have no liability for the allegations because all payment amounts required by Debtor have been in accordance with the terms of the loan modification agreement executed by Claimant. Debtor's records show i) the principal and interest portion of Claimants required monthly mortgage payment under the loan modification agreement is $622.62 and has never changed, ii) under the terms of the modification agreement, Claimants monthly required payment also includes amounts necessary to pay Claimants property taxes and insurance obligations. Debtor validated that all amounts in excess of Claimants' monthly principal and interest were attributable to the required amounts for taxes and insurance, and all increases to Claimants' monthly mortgage payments were attributable to increases in the property taxes and insurance obligations.<br><br>The modification agreement is dated November 15, 2010 and became effective with the December 1, 2010 payment on the account.  According to the terms of the agreement, the principal and interest portion of Claimants required monthly payment is $622.62, and the starting required monthly escrow payment is $255.52. The starting escrow payment is equal to one-twelfth (or one month) of Claimants' annual obligations for i) the estimated property taxes and insurance of $1,010 and $1,846.25, respectively, plus ii) the Claimants existing escrow shortfall of $209.97 at the time the loan modification commenced. The sum of this calculated annual escrow obligation is $3,066.24, and equals 255.52 when divided by 12 monthly payments. Therefore, the total monthly required payment at inception of the loan modification was $878.14 ($622.62 plus $255.52), the sum of the monthly required amounts for principal, interest and escrows. | 10-11, 14-15 |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 21 | Laudis W & Deborah B. Perry Jr 2302 Nash St. N. Ste E141 Wilson, NC 27896 | 3970 | 11/09/2012 | $0.00 | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Wrongful Foreclosure, Loan Modification, General Servicing Issues, General No Liability | Debtors had involvement with two of Claimants' loans, a first lien mortgage loan and a second lien mortgage loan secured by Claimants' property. Debtors' involvement with Claimants' first lien mortgage loan was limited to Debtors' roles as originator and servicer of the loan. Debtor GMAC Mortgage Corporation originated the loan on or about October 6, 2005. Debtor transferred its interest in the loan to Freddie Mac on or about November 18, 2005. Debtor GMAC Mortgage, LLC serviced the first lien loan from October 6, 2005 until servicing transferred to Ocwen on February 13, 2013. Debtors' involvement with Claimants' second lien mortgage loan was limited to Debtors' role as originator, owner and servicer of the loan. Debtor GMAC Mortgage Corporation originated the loan on or about April 2, 2007. Debtor transferred its interest and the loan was securitized on or about June 28, 2007 where The Bank of New York Trust Co. was appointed as trustee. Debtor GMAC Mortgage, LLC serviced the second lien loan from April 2, 2007 until servicing transferred to Specialized Loan Servicing, LLC on or about October 1, 2009.<br><br>Claimants assert Debtor i) wrongfully "foreclosed on our property - even as we were going through modification process", and ii) wrongfully "sold our second mortgage" to Specialized Loan Servicing, LLC, a collection firm allegedly affiliated with Debtor, while Claimants were in discussions with Debtor to modify the loan. Debtors have no liability for the allegations of wrongful foreclosure and improper handling of the loan modification process because i) when Claimants' first mortgage was referred to foreclosure and Claimants' second mortgage was sold, Debtor had not offered or promised Claimants any modification, nor had Debtor received a loan modification package from Claimants. Debtor's records show the first mortgage was referred to foreclosure on September 2, 2009 as the loan was past due. Debtor provided notice to Claimants of the sale of the second mortgage on September 16, 2009. Claimants contacted Debtor on September 17, 2009 asking if it would be a waste of time to provide a loan modification package, as foreclosure had begun. Debtor advised Claimants to submit a loan modification package. Claimants submitted for the first time a loan modification package to Debtor on September 30, 2009. Debtor advised Claimants on October 9, 2009 that Debtor could only evaluate the first mortgage for modification because the second mortgage had been sold, and Debtor no longer serviced the second mortgage. Debtor approved Claimants for a trial modification of the first mortgage on October 28, 2009 and provided Claimants with a permanent modification on February 12, 2010.<br><br>Debtors have no liability for the allegation that Debtor wrongfully sold Claimants' second mortgage because the sale of Claimants' loan to Specialized Loan Servicing, LLC was a lawful, arms-length transaction. To the extent Claimants have asserted damages arising from their interaction with Specialized Loan Servicing LLC, Debtors have no liability because Specialized Loan Servicing, LLC is a non-debtor entity. | 7-8, 8-9, 11-12, 14-15 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $158,225.90 | General Unsecured | | | | | |
| 22 | Lettie Tice 4604 49th St North #57 St Petersburg, FL 33709-3842 | 2405 | 11/05/2012 | $0.00 | Administrative Priority | Residential Capital, LLC | 12-12020 | General No Liability | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Corp purchased the loan from Pinnacle Direct Funding Corp., on or about January 1, 2002. Debtor transferred its interest and the loan was securitized on or about March 1, 2002, where Bank One, N.A., was appointed as Trustee. Debtor Homecomings Financial, LLC serviced the loan from January 28, 2002 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Debtors have no liability because i) Claimant failed to state a valid basis for her claim, ii) Claimant contacted Special Counsel by phone on July 3, 2013 and stated she does not believe she has a valid claim against Debtor, but Claimant failed to execute and deliver a withdrawal form, and iii) Debtor reviewed its books and records and found no evidence that monies are owed to Claimant. | 7-8 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | | |
| | | | | $0.00 | Priority | | | | | |
| | | | | UNLIQUIDATED | General Unsecured | | | | | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST  OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 23 | Linda Hill<br>613 Emerson Street, NW<br>Washington, DC 20011 | 1478 | 10/22/2012 | $123,000.00 | Administrative Priority | Residential Capital, LLC | 12-12020 | General No Liability | Debtors' involvement with Claimant's loan was limited to Debtors' roles as originator and servicer of the loan.  Debtor GMAC Mortgage Corp. (now known as GMAC Mortgage, LLC) originated the loan on March 15, 2004.  Debtor transferred its interest in the loan to Fannie Mae on or about March 29, 2004. Debtor GMAC Mortgage, LLC serviced the loan from March 15, 2004 until servicing transferred to GreenTree Servicing, LLC ("Green Tree") on February 1, 2013. | 7-8 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | Debtors have no liability because i) Claimant failed to state a valid basis for her claim, and ii) in a phone conversation with Silverman Acampora, Claimant stated she does not believe Debtors owe her anything, and iii) Debtor reviewed its books and records and determined that no monies are owed to Claimant. Special Counsel contacted Claimant seeking a withdrawal of her claim, however, Claimant refused to execute the withdrawal form. | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $0.00 | General Unsecured | | | | | |
| 24 | Lisa Medina<br>3570 Manresa Drive<br>Madera , CA 93637 | 4572 | 11/13/2012 | $0.00 | Administrative Priority | Residential Capital, LLC | 12-12020 | Origination Issues, Loan Modification, Wrongful Foreclosure, Standing Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and investor of the loan.  Debtor GMAC Mortgage, LLC purchased the loan from Mountain States Mortgage Centers, Inc., on or about October 24, 2009 and is the current investor of the loan. Debtor GMAC Mortgage, LLC serviced the loan from October 24, 2009 until servicing transferred to Ocwen on February 16, 2013. | 9-10, 11-12, 12, 14-15 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by Mountain States Mortgage Centers, Inc. on October 24, 2009. In addition, there is no assignee liability that would extend to Debtor on these claims.  A claim under California Business and Professions Code § 17200 has three prongs: unlawfulness, unfairness, and fraud.  In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices.   The claimant has not provided any specific evidence to substantiate its general allegations of fraud and unlawful practices. | |
| | | | | $0.00 | Priority | | | | Debtors have no liability for Claimant's lack-of-standing claims because the assignment and endorsement chains are complete and valid. Debtor's records show i) the note is endorsed from originator to Ally Bank, from Ally Bank to GMAC Mortgage, LLC and from GMAC Mortgage, LLC to Blank, and ii) the assignment of mortgage was recorded from MERS, as nominee for originator, to GMAC Mortgage, LLC. | |
| | | | | UNLIQUIDATED | General Unsecured | | | | Debtors have no liability for wrongful foreclosure claims because i) the loan was delinquent and paid through only December 11, 2011 when foreclosure proceedings commenced on May 23, 2012, and ii) foreclosure proceedings were appropriately halted each time a loan modification option was approved. | |
| | | | | | | | | | Debtors have no liability for loan modification claims because Debtor handled all aspects of the loan modification process appropriately, and Claimant was not damaged by the assistance Debtor provided to Claimant. Debtor's records show Claimant was approved for a HAMP trial modification on October 2, 2012.  Claimant made the first payment but failed to make subsequent payments, and the modification was denied January 7, 2013.  Claimant was approved for a HAMP trial modification on April 3, 2013.  Claimant did not return the signed modification agreement by the deadline, and modification was denied.  Claimant was approved for another HAMP trial modification on July 26, 2013.  Claimant completed the trial successfully. As a result, Debtor approved a permanent modification on November 19, 2013, which was executed December 9, 2013. | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 25 | Michael Rodgers Walker 7114 Garden Green Dr. Arlington, TX 76001 | 487 | 09/14/2012 | $0.00 | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | General Servicing Issues, Standing issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor GMAC Mortgage, LLC purchased the loan from Alethes, LLC on or about March 10, 2005. Debtor transferred its interest and the loan was securitized on or about April 21, 2005 where HLSS Mortgage Master Trust was the sole investor of the security. Debtor GMAC Mortgage, LLC serviced the loan from March 10, 2005 until servicing transferred to Ocwen on February 16, 2013. | 8-9, 12 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $97,227.01 | Secured | | | | Claimant asserts Debtor destroyed the original note and mortgage, illegally transferred Claimant's loan to Ocwen, and failed to respond to Qualified Written Responses ("QWR"). Debtors have no liability for the allegations because i) Claimant failed to demonstrate that he was damaged in any way, ii) Debtor found no record reflecting that it destroyed the original note and mortgage, iii) Ocwen lawfully assumed the right to service Claimant's loan from Debtor when Ocwen purchased Debtor's servicing business, and all proper notices of the servicing transfer were provided to Claimant, and ii) Debtor's records show Claimant's first submission of a QWR occurred in February 2013, after the Petition Date. Notwithstanding the fact that the QWR issues occurred post-petition, Debtor's research shows Ocwen responded timely, sufficiently and appropriately to these requests. Debtor's records show that on February 8, 2013 and February 12, 2013 Debtor received duplicative QWR's that were dated February 8, 2013. Servicing of Claimant's loan transferred from Debtor to Ocwen on February 16, 2013. Ocwen responded to Claimant's QWR's on February 27, 2013. Ocwen received a QWR on March 26, 2013 that was dated March 19, 2013, and Ocwen responded on April 10, 2013. Ocwen received a QWR on May 21, 2013 and responded on June 6, 2013. | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $0.00 | General Unsecured | | | | | |
| 26 | Neil Larkins PO Box 12 Keno, OR 97627 | 6423 | 01/11/2013 | $150,000.00 | Administrative Priority | Residential Capital, LLC | 12-12020 | Origination Issues, Standing Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Company, LLC purchased the loan from National City Bank of Indiana on or about July 24, 2006. Debtor transferred its interest and the loan was securitized on or about October 30, 2006, where Deutsche Bank Trust Company Americas was appointed as Trustee. | 9-10, 12 |
| | | | | $0.00 | Administrative Secured | | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by National City Bank of Indiana on May 1, 2006, and such claims should be asserted against the originating party. | |
| | | | | $0.00 | Secured | | | | | |
| | | | | $0.00 | Priority | | | | Debtors have no liability for Claimant's lack-of-standing claims because the assignment and endorsement chains are complete and valid. Debtor's records show the note is endorsed from originator to National City Mortgage, from National City Mortgage to Residential Funding Company, and from Residential Funding Company to Deutsche Bank Trust Company of Americas, as Trustee. The assignment of the mortgage was recorded from originator to National City Mortgage, from National City Mortgage to MERS as nominee for National City Mortgage and finally from MERS to Deutsche Bank Trust Company Americas, as Trustee. | |
| | | | | $0.00 | General Unsecured | | | | | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST  OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 27 | Patricia Diddon Blades 19169 Rolling Pines Rd Amite, LA 70422 | 5541 | 11/16/2012 | $0.00 | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Loan Modification Wrongful Foreclosure | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Company, LLC purchased the loan from American Fidelity, on or about January 21, 2003. Debtor transferred its interest and the loan was securitized on or about March 1, 2003, where JPMorgan Chase Bank was appointed as Trustee.  Debtor Homecomings Financial, LLC serviced the loan from January 21, 2003 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on Feb 16th, 2013. | 11-12, 14-15 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | | |
| | | | | $0.00 | Priority | | | | Claimant's allegation that Debtor failed to provide loan modification and loss mitigation assistance carry no merit because i) Debtor provided Claimant with a traditional loan modification on July 25, 2006, but Claimant defaulted by failing to make payments beginning February 1, 2008, ii) Debtor approved a Repayment Plan for Claimant on May 14, 2009, but Claimant failed to return the executed agreement to Debtor, and iii) Debtor evaluated two loan modification applications submitted by Claimant between January and April 2010, and in each instance, Debtor appropriately denied Claimant for HAMP and traditional loan modification options because Claimant's income was insufficient to meet applicable investor guidelines.  Specifically, under HAMP and Traditional guidelines, the Claimant's monthly payment was too high to meet the maximum debt-to-income ratio of 31% because reducing to this point would have required Debtor to implement two prohibited actions under the guidelines:  a) reducing a borrower's interest rate to less than half of the interest rate on the original loan, and b) forgiving principal such that the loan-to-value would drop below 70%. | |
| | | | | $122,000.00 | General Unsecured | | | | | |
| | | | | | | | | | Debtor found no evidence to support Claimant's allegations that Debtor wrongfully refused payments or wrongfully foreclosed. On the contrary, Debtor's records show i) Claimant never attempted to send in funds sufficient to reinstate the account, and Debtor never refused payments it promised to accept or was obligated to accept, ii) Claimant told Debtor by phone on several occasions that she did not have the ability to reinstate her account, iii) Debtor acted appropriately in evaluating and denying Claimant's loan modification requests, and iv) at the time Debtor completed foreclosure on May 18, 2011, Claimant's account was in default and due for May 1, 2009 payment. | |
| 28 | Patricia Graulty PO Box 12983 Tucson, AZ 85732 | 4427 | 11/09/2012 | $0.00 | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Escrow Issues, General No Liability | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan.  Debtor GMAC Mortgage, LLC purchased the loan from Nova Financial & Investment on or about September 28, 2009.  Debtor transferred its interest to the Government National Mortgage Assocation ("GNMA") on or about November 20, 2009. Debtor GMAC Mortgage, LLC serviced the loan from September 28, 2009 until servicing transferred to Ocwen on February 16, 2013. | 7-8, 10-11 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | Claimant asserts "I am placing a claim, if required, for the amount in my escrow account and any other monies that are held for insurance, taxes, etc, if required. I want to ensure I have any monies owed to me returned". Debtors have no liability because i) Debtor no longer services Claimant's loan or manages Claimant's escrow account, and ii) Debtor's records show that all escrow information and escrow balances were properly transferred to Ocwen in February 2013, at which time there was no escrow refund or any other monies were due to Claimant. | |
| | | | | $0.00 | Priority | | | | | |
| | | | | UNLIQUIDATED | General Unsecured | | | | | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 29 | Robert Andrew Romero PO Box 2905 Hillsboro, OR 97123 | 2303 | 11/06/2012 | $0.00 | Administrative Priority | GMAC Model Home Finance I, LLC | 12-12030 | Origination Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Corporation purchased the loan from Sierra Pacific Mortgage Company on or about November 29, 2004, subsequently transferred its interest and the loan was securitized on or about December 1, 2004, where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial, LLC serviced the loan from November 29, 2004 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013. | 9-10 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by Sierra Pacific Mortgage Company, Inc. on October 18, 2004. | |
| | | | | $0.00 | Priority | | | | There is no assignee liability that would extend to Debtor on these claims in its role as servicer or owner of the loan. The Claimant cites the following California statutes as the basis for liability: | |
| | | | | $230,000.00 | General Unsecured | | | | • Civil Code § 1572, in connection with allegations of fraud/forgery in the origination documents. However, the assignee or purchaser of an asset generally does not become vicariously liable for its predecessor's fraud or other torts without an explicit contractual agreement to assume such liability. Claimant does not provide evidence of any such contractual agreement; | |
| | | | | | | | | | • Civil Code §§ 1411, 1511 and 1595, arguing that the servicer and all affiliated agents should have known he could not perform under the note. However, these are simply general statutes governing the law of contracts in California and the general rule is that a successor does not succeed to the contractual liabilities of the predecessor, except where there was a de facto merger, a continuation of the corporation, an agreement to assume liability, or a fraudulent attempt to avoid liability. Again no evidence is proffered to support such exceptions; | |
| | | | | | | | | | • Civil Code § 1670.5(a), arguing that the loan contract was "unconscionable at the time it was made" and therefore should be voided. Claimant has not provided any facts to establish either procedural or substantive unconscionability as required to support a claim under this section; | |
| | | | | | | | | | • Civil Code § 1916.7, in connection with "failing to provide the disclosure notice required in a timely manner. I was not fully informed of the....adjustable rate (terms)" and other loan options "that might have been more beneficial". This statute governs disclosures that an originating lender is required to make at the origination of the mortgage loan, and the Debtors were not the originating lender; and | |
| | | | | | | | | | • Business & Professions Code § 17200, in connection with "RESPA and TILA violations". A claim under this statute has three prongs: unlawfulness, unfairness, and fraud. In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices. The Claimant has not provided any specific evidence to substantiate its general allegations of fraud and unlawful practices. | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 30 | Robert Andrew Romero<br>PO Box 2905<br>Hillsboro, OR 97123 | 2302 | 11/06/2012 | $0.00 | Administrative Priority | GMAC Mortgage USA Corporation | 12-12031 | Origination Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Corporation purchased the loan from Sierra Pacific Mortgage Company on or about November 29, 2004, subsequently transferred its interest and the loan was securitized on or about December 1, 2004, where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial, LLC serviced the loan from November 29, 2004 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013. | 9-10 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by Sierra Pacific Mortgage Company, Inc. on October 18, 2004. | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $230,000.00 | General Unsecured | | | | There is no assignee liability that would extend to Debtor on these claims in its role as servicer or owner of the loan. The Claimant cites the following California statutes as the basis for liability:<br><br>• Civil Code § 1572, in connection with allegations of fraud/forgery in the origination documents. However, the assignee or purchaser of an asset generally does not become vicariously liable for its predecessor's fraud or other torts without an explicit contractual agreement to assume such liability. Claimant does not provide evidence of any such contractual agreement;<br><br>• Civil Code §§ 1411, 1511 and 1595, arguing that the servicer and all affiliated agents should have known he could not perform under the note. However, these are simply general statutes governing the law of contracts in California and the general rule is that a successor does not succeed to the contractual liabilities of the predecessor, except where there was a de facto merger, a continuation of the corporation, an agreement to assume liability, or a fraudulent attempt to avoid liability. Again no evidence is proffered to support such exceptions;<br><br>• Civil Code § 1670.5(a), arguing that the loan contract was "unconscionable at the time it was made" and therefore should be voided. Claimant has not provided any facts to establish either procedural or substantive unconscionability as required to support a claim under this section;<br><br>• Civil Code § 1916.7, in connection with "failing to provide the disclosure notice required in a timely manner. I was not fully informed of the....adjustable rate (terms)" and other loan options "that might have been more beneficial". This statute governs disclosures that an originating lender is required to make at the origination of the mortgage loan, and the Debtors were not the originating lender; and<br><br>• Business & Professions Code § 17200, in connection with "RESPA and TILA violations". A claim under this statute has three prongs: unlawfulness, unfairness, and fraud. In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices. The Claimant has not provided any specific evidence to substantiate its general allegations of fraud and unlawful practices. | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 31 | Robert Andrew Romero<br>PO Box 2905<br>Hillsboro, OR 97123 | 2301 | 11/06/2012 | $0.00 | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Origination issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Corporation purchased the loan from Sierra Pacific Mortgage Company on or about November 29, 2004, subsequently transferred its interest and the loan was securitized on or about December 1, 2004, where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial, LLC serviced the loan from November 29, 2004 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013. | 9-10 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by Sierra Pacific Mortgage Company, Inc. on October 18, 2004. | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $230,000.00 | General Unsecured | | | | There is no assignee liability that would extend to Debtor on these claims in its role as servicer or owner of the loan. The Claimant cites the following California statutes as the basis for liability:<br><br>• Civil Code § 1572, in connection with allegations of fraud/forgery in the origination documents. However, the assignee or purchaser of an asset generally does not become vicariously liable for its predecessor's fraud or other torts without an explicit contractual agreement to assume such liability. Claimant does not provide evidence of any such contractual agreement;<br><br>• Civil Code §§ 1411, 1511 and 1595, arguing that the servicer and all affiliated agents should have known he could not perform under the note. However, these are simply general statutes governing the law of contracts in California and the general rule is that a successor does not succeed to the contractual liabilities of the predecessor, except where there was a de facto merger, a continuation of the corporation, an agreement to assume liability, or a fraudulent attempt to avoid liability. Again no evidence is proffered to support such exceptions;<br><br>• Civil Code § 1670.5(a), arguing that the loan contract was "unconscionable at the time it was made" and therefore should be voided. Claimant has not provided any facts to establish either procedural or substantive unconscionability as required to support a claim under this section;<br><br>• Civil Code § 1916.7, in connection with "failing to provide the disclosure notice required in a timely manner. I was not fully informed of the....adjustable rate (terms)" and other loan options "that might have been more beneficial". This statute governs disclosures that an originating lender is required to make at the origination of the mortgage loan, and the Debtors were not the originating lender; and<br><br>• Business & Professions Code § 17200, in connection with "RESPA and TILA violations". A claim under this statute has three prongs: unlawfulness, unfairness, and fraud. In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices. The Claimant has not provided any specific evidence to substantiate its general allegations of fraud and unlawful practices. | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 32 | Robert Andrew Romero<br>PO Box 2905<br>Hillsboro, OR 97123 | 2300 | 11/06/2012 | $0.00 | Administrative Priority | GMAC Residential Holding Company, LLC | 12-12033 | Origination Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Corporation purchased the loan from Sierra Pacific Mortgage Company on or about November 29, 2004, subsequently transferred its interest and the loan was securitized on or about December 1, 2004, where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial, LLC serviced the loan from November 29, 2004 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013.<br><br>Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by Sierra Pacific Mortgage Company, Inc. on October 18, 2004.<br><br>There is no assignee liability that would extend to Debtor on these claims in its role as servicer or owner of the loan. The Claimant cites the following California statutes as the basis for liability:<br><br>• Civil Code § 1572, in connection with allegations of fraud/forgery in the origination documents. However, the assignee or purchaser of an asset generally does not become vicariously liable for its predecessor's fraud or other torts without an explicit contractual agreement to assume such liability. Claimant does not provide evidence of any such contractual agreement;<br><br>• Civil Code §§ 1411, 1511 and 1595, arguing that the servicer and all affiliated agents should have known he could not perform under the note. However, these are simply general statutes governing the law of contracts in California and the general rule is that a successor does not succeed to the contractual liabilities of the predecessor, except where there was a de facto merger, a continuation of the corporation, an agreement to assume liability, or a fraudulent attempt to avoid liability. Again no evidence is proffered to support such exceptions;<br><br>• Civil Code § 1670.5(a), arguing that the loan contract was "unconscionable at the time it was made" and therefore should be voided. Claimant has not provided any facts to establish either procedural or substantive unconscionability as required to support a claim under this section;<br><br>• Civil Code § 1916.7, in connection with "failing to provide the disclosure notice required in a timely manner. I was not fully informed of the....adjustable rate (terms)" and other loan options "that might have been more beneficial". This statute governs disclosures that an originating lender is required to make at the origination of the mortgage loan, and the Debtors were not the originating lender; and<br><br>• Business & Professions Code § 17200, in connection with "RESPA and TILA violations". A claim under this statute has three prongs: unlawfulness, unfairness, and fraud. In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices. The Claimant has not provided any specific evidence to substantiate its general allegations of fraud and unlawful practices. | 9-10 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $230,000.00 | General Unsecured | | | | | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 33 | Robert Andrew Romero PO Box 2905 Hillsboro, OR 97123 | 2299 | 11/06/2012 | $0.00 | Administrative Priority | GMAC RH Settlement Services, LLC | 12-12034 | Origination Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Corporation purchased the loan from Sierra Pacific Mortgage Company on or about November 29, 2004, subsequently transferred its interest and the loan was securitized on or about December 1, 2004, where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial, LLC serviced the loan from November 29, 2004 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013. | 9-10 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by Sierra Pacific Mortgage Company, Inc. on October 18, 2004. | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $230,000.00 | General Unsecured | | | | There is no assignee liability that would extend to Debtor on these claims in its role as servicer or owner of the loan. The Claimant cites the following California statutes as the basis for liability:

• Civil Code § 1572, in connection with allegations of fraud/forgery in the origination documents. However, the assignee or purchaser of an asset generally does not become vicariously liable for its predecessor's fraud or other torts without an explicit contractual agreement to assume such liability. Claimant does not provide evidence of any such contractual agreement;

• Civil Code §§ 1411, 1511 and 1595, arguing that the servicer and all affiliated agents should have known he could not perform under the note. However, these are simply general statutes governing the law of contracts in California and the general rule is that a successor does not succeed to the contractual liabilities of the predecessor, except where there was a de facto merger, a continuation of the corporation, an agreement to assume liability, or a fraudulent attempt to avoid liability. Again no evidence is proffered to support such exceptions;

• Civil Code § 1670.5(a), arguing that the loan contract was "unconscionable at the time it was made" and therefore should be voided. Claimant has not provided any facts to establish either procedural or substantive unconscionability as required to support a claim under this section;

• Civil Code § 1916.7, in connection with "failing to provide the disclosure notice required in a timely manner. I was not fully informed of the....adjustable rate (terms)" and other loan options "that might have been more beneficial". This statute governs disclosures that an originating lender is required to make at the origination of the mortgage loan, and the Debtors were not the originating lender; and

• Business & Professions Code § 17200, in connection with "RESPA and TILA violations". A claim under this statute has three prongs: unlawfulness, unfairness, and fraud. In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices. The Claimant has not provided any specific evidence to substantiate its general allegations of fraud and unlawful practices. | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 34 | Robert Andrew Romero<br>PO Box 2905<br>Hillsboro, OR 97123 | 2305 | 11/06/2012 | $0.00 | Administrative Priority | GMACM Borrower LLC | 12-12035 | Origination Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Corporation purchased the loan from Sierra Pacific Mortgage Company on or about November 29, 2004, subsequently transferred its interest and the loan was securitized on or about December 1, 2004, where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial, LLC serviced the loan from November 29, 2004 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013. | 9-10 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by Sierra Pacific Mortgage Company, Inc. on October 18, 2004. | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $230,000.00 | General Unsecured | | | | There is no assignee liability that would extend to Debtor on these claims in its role as servicer or owner of the loan. The Claimant cites the following California statutes as the basis for liability:<br><br>• Civil Code § 1572, in connection with allegations of fraud/forgery in the origination documents. However, the assignee or purchaser of an asset generally does not become vicariously liable for its predecessor's fraud or other torts without an explicit contractual agreement to assume such liability. Claimant does not provide evidence of any such contractual agreement;<br><br>• Civil Code §§ 1411, 1511 and 1595, arguing that the servicer and all affiliated agents should have known he could not perform under the note. However, these are simply general statutes governing the law of contracts in California and the general rule is that a successor does not succeed to the contractual liabilities of the predecessor, except where there was a de facto merger, a continuation of the corporation, an agreement to assume liability, or a fraudulent attempt to avoid liability. Again no evidence is proffered to support such exceptions;<br><br>• Civil Code § 1670.5(a), arguing that the loan contract was "unconscionable at the time it was made" and therefore should be voided. Claimant has not provided any facts to establish either procedural or substantive unconscionability as required to support a claim under this section;<br><br>• Civil Code § 1916.7, in connection with "failing to provide the disclosure notice required in a timely manner. I was not fully informed of the....adjustable rate (terms)" and other loan options "that might have been more beneficial". This statute governs disclosures that an originating lender is required to make at the origination of the mortgage loan, and the Debtors were not the originating lender; and<br><br>• Business & Professions Code § 17200, in connection with "RESPA and TILA violations". A claim under this statute has three prongs: unlawfulness, unfairness, and fraud. In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices. The Claimant has not provided any specific evidence to substantiate its general allegations of fraud and unlawful practices. | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|
| 35 | Robert Andrew Romero PO Box 2905 Hillsboro, OR 97123 | 2307 | 11/06/2012 | $0.00 Administrative Priority | GMACM REO LLC | 12-12036 | Origination Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Corporation purchased the loan from Sierra Pacific Mortgage Company on or about November 29, 2004, subsequently transferred its interest and the loan was securitized on or about December 1, 2004, where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial, LLC serviced the loan from November 29, 2004 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013. | 9-10 |
| | | | | $0.00 Administrative Secured | | | | | |
| | | | | $0.00 Secured | | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by Sierra Pacific Mortgage Company, Inc. on October 18, 2004. | |
| | | | | $0.00 Priority | | | | | |
| | | | | $230,000.00 General Unsecured | | | | There is no assignee liability that would extend to Debtor on these claims in its role as servicer or owner of the loan. The Claimant cites the following California statutes as the basis for liability: | |

• Civil Code § 1572, in connection with allegations of fraud/forgery in the origination documents. However, the assignee or purchaser of an asset generally does not become vicariously liable for its predecessor's fraud or other torts without an explicit contractual agreement to assume such liability. Claimant does not provide evidence of any such contractual agreement;

• Civil Code §§ 1411, 1511 and 1595, arguing that the servicer and all affiliated agents should have known he could not perform under the note. However, these are simply general statutes governing the law of contracts in California and the general rule is that a successor does not succeed to the contractual liabilities of the predecessor, except where there was a de facto merger, a continuation of the corporation, an agreement to assume liability, or a fraudulent attempt to avoid liability. Again no evidence is proffered to support such exceptions;

• Civil Code § 1670.5(a), arguing that the loan contract was "unconscionable at the time it was made" and therefore should be voided. Claimant has not provided any facts to establish either procedural or substantive unconscionability as required to support a claim under this section;

• Civil Code § 1916.7, in connection with "failing to provide the disclosure notice required in a timely manner. I was not fully informed of the….adjustable rate (terms)" and other loan options "that might have been more beneficial". This statute governs disclosures that an originating lender is required to make at the origination of the mortgage loan, and the Debtors were not the originating lender; and

• Business & Professions Code § 17200, in connection with "RESPA and TILA violations". A claim under this statute has three prongs: unlawfulness, unfairness, and fraud. In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices. The Claimant has not provided any specific evidence to substantiate its general allegations of fraud and unlawful practices.

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 36 | Robert Andrew Romero PO Box 2905 Hillsboro, OR 97123 | 2308 | 11/06/2012 | $0.00 | Administrative Priority | GMACR Mortgage Products, LLC | 12-12037 | Origination issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Corporation purchased the loan from Sierra Pacific Mortgage Company on or about November 29, 2004, subsequently transferred its interest and the loan was securitized on or about December 1, 2004, where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial, LLC serviced the loan from November 29, 2004 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013. | 9-10 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by Sierra Pacific Mortgage Company, Inc. on October 18, 2004. | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $230,000.00 | General Unsecured | | | | There is no assignee liability that would extend to Debtor on these claims in its role as servicer or owner of the loan. The Claimant cites the following California statutes as the basis for liability: | |

• Civil Code § 1572, in connection with allegations of fraud/forgery in the origination documents. However, the assignee or purchaser of an asset generally does not become vicariously liable for its predecessor's fraud or other torts without an explicit contractual agreement to assume such liability. Claimant does not provide evidence of any such contractual agreement;

• Civil Code §§ 1411, 1511 and 1595, arguing that the servicer and all affiliated agents should have known he could not perform under the note. However, these are simply general statutes governing the law of contracts in California and the general rule is that a successor does not succeed to the contractual liabilities of the predecessor, except where there was a de facto merger, a continuation of the corporation, an agreement to assume liability, or a fraudulent attempt to avoid liability. Again no evidence is proffered to support such exceptions;

• Civil Code § 1670.5(a), arguing that the loan contract was "unconscionable at the time it was made" and therefore should be voided. Claimant has not provided any facts to establish either procedural or substantive unconscionability as required to support a claim under this section;

• Civil Code § 1916.7, in connection with "failing to provide the disclosure notice required in a timely manner. I was not fully informed of the….adjustable rate (terms)" and other loan options "that might have been more beneficial". This statute governs disclosures that an originating lender is required to make at the origination of the mortgage loan, and the Debtors were not the originating lender; and

• Business & Professions Code § 17200, in connection with "RESPA and TILA violations". A claim under this statute has three prongs: unlawfulness, unfairness, and fraud. In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices. The Claimant has not provided any specific evidence to substantiate its general allegations of fraud and unlawful practices.

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 37 | Robert Andrew Romero<br>PO Box 2905<br>Hillsboro, OR 97123 | 2306 | 11/06/2012 | $0.00 | Administrative Priority | GMAC-RFC Holding Company, LLC | 12-12029 | Origination Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Corporation purchased the loan from Sierra Pacific Mortgage Company on or about November 29, 2004, subsequently transferred its interest and the loan was securitized on or about December 1, 2004, where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial, LLC serviced the loan from November 29, 2004 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013. | 9-10 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by Sierra Pacific Mortgage Company, Inc. on October 18, 2004. | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $230,000.00 | General Unsecured | | | | There is no assignee liability that would extend to Debtor on these claims in its role as servicer or owner of the loan. The Claimant cites the following California statutes as the basis for liability:<br><br>• Civil Code § 1572, in connection with allegations of fraud/forgery in the origination documents. However, the assignee or purchaser of an asset generally does not become vicariously liable for its predecessor's fraud or other torts without an explicit contractual agreement to assume such liability. Claimant does not provide evidence of any such contractual agreement;<br><br>• Civil Code §§ 1411, 1511 and 1595, arguing that the servicer and all affiliated agents should have known he could not perform under the note. However, these are simply general statutes governing the law of contracts in California and the general rule is that a successor does not succeed to the contractual liabilities of the predecessor, except where there was a de facto merger, a continuation of the corporation, an agreement to assume liability, or a fraudulent attempt to avoid liability. Again no evidence is proffered to support such exceptions;<br><br>• Civil Code § 1670.5(a), arguing that the loan contract was "unconscionable at the time it was made" and therefore should be voided. Claimant has not provided any facts to establish either procedural or substantive unconscionability as required to support a claim under this section;<br><br>• Civil Code § 1916.7, in connection with "failing to provide the disclosure notice required in a timely manner. I was not fully informed of the....adjustable rate (terms)" and other loan options "that might have been more beneficial". This statute governs disclosures that an originating lender is required to make at the origination of the mortgage loan, and the Debtors were not the originating lender; and<br><br>• Business & Professions Code § 17200, in connection with "RESPA and TILA violations". A claim under this statute has three prongs: unlawfulness, unfairness, and fraud. In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices. The Claimant has not provided any specific evidence to substantiate its general allegations of fraud and unlawful practices. | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST  OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 38 | Robert Andrew Romero PO Box 2905 Hillsboro, OR 97123 | 2309 | 11/06/2012 | $0.00 | Administrative Priority | HFN REO Sub II, LLC | 12-12038 | Origination Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan.  Debtor Residential Funding Corporation purchased the loan from Sierra Pacific Mortgage Company on or about November 29, 2004, subsequently transferred its interest and the loan was securitized on or about December 1, 2004, where Deutsche Bank Trust Company Americas was appointed as Trustee.  Debtor Homecomings Financial, LLC serviced the loan from November 29, 2004 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013. | 9-10 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan.  The loan was originated by Sierra Pacific Mortgage Company, Inc. on October 18, 2004. | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $230,000.00 | General Unsecured | | | | There is no assignee liability that would extend to Debtor on these claims in its role as servicer or owner of the loan.  The Claimant cites the following California statutes as the basis for liability: | |

• Civil Code § 1572, in connection with allegations of fraud/forgery in the origination documents.  However, the assignee or purchaser of an asset generally does not become vicariously liable for its predecessor's fraud or other torts without an explicit contractual agreement to assume such liability.  Claimant does not provide evidence of any such contractual agreement;

• Civil Code §§ 1411, 1511 and 1595, arguing that the servicer and all affiliated agents should have known he could not perform under the note.  However, these are simply general statutes governing the law of contracts in California and the general rule is that a successor does not succeed to the contractual liabilities of the predecessor, except where there was a de facto merger, a continuation of the corporation, an agreement to assume liability, or a fraudulent attempt to avoid liability.  Again no evidence is proffered to support such exceptions;

• Civil Code § 1670.5(a), arguing that the loan contract was "unconscionable at the time it was made" and therefore should be voided.  Claimant has not provided any facts to establish either procedural or substantive unconscionability as required to support a claim under this section;

• Civil Code § 1916.7, in connection with "failing to provide the disclosure notice required in a timely manner. I was not fully informed of the....adjustable rate (terms)" and other loan options "that might have been more beneficial".  This statute governs disclosures that an originating lender is required to make at the origination of the mortgage loan, and the Debtors were not the originating lender; and

• Business & Professions Code § 17200, in connection with "RESPA and TILA violations".  A claim under this statute has three prongs: unlawfulness, unfairness, and fraud.  In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices.  The Claimant has not provided any specific evidence to substantiate its general allegations of fraud and unlawful practices.

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|
| 39 | Robert Andrew Romero<br>PO Box 2905<br>Hillsboro, OR 97123 | 2311 | 11/06/2012 | $0.00 Administrative Priority<br><br>$0.00 Administrative Secured<br><br>$0.00 Secured<br><br>$0.00 Priority<br><br>$230,000.00 General Unsecured | Homecomings Financial Real Estate Holdings, LLC | 12-12040 | Origination Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Corporation purchased the loan from Sierra Pacific Mortgage Company on or about November 29, 2004, subsequently transferred its interest and the loan was securitized on or about December 1, 2004, where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial, LLC serviced the loan from November 29, 2004 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013.<br><br>Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by Sierra Pacific Mortgage Company, Inc. on October 18, 2004.<br><br>There is no assignee liability that would extend to Debtor on these claims in its role as servicer or owner of the loan. The Claimant cites the following California statutes as the basis for liability:<br><br>• Civil Code § 1572, in connection with allegations of fraud/forgery in the origination documents. However, the assignee or purchaser of an asset generally does not become vicariously liable for its predecessor's fraud or other torts without an explicit contractual agreement to assume such liability. Claimant does not provide evidence of any such contractual agreement;<br><br>• Civil Code §§ 1411, 1511 and 1595, arguing that the servicer and all affiliated agents should have known he could not perform under the note. However, these are simply general statutes governing the law of contracts in California and the general rule is that a successor does not succeed to the contractual liabilities of the predecessor, except where there was a de facto merger, a continuation of the corporation, an agreement to assume liability, or a fraudulent attempt to avoid liability. Again no evidence is proffered to support such exceptions;<br><br>• Civil Code § 1670.5(a), arguing that the loan contract was "unconscionable at the time it was made" and therefore should be voided. Claimant has not provided any facts to establish either procedural or substantive unconscionability as required to support a claim under this section;<br><br>• Civil Code § 1916.7, in connection with "failing to provide the disclosure notice required in a timely manner. I was not fully informed of the....adjustable rate (terms)" and other loan options "that might have been more beneficial". This statute governs disclosures that an originating lender is required to make at the origination of the mortgage loan, and the Debtors were not the originating lender; and<br><br>• Business & Professions Code § 17200, in connection with "RESPA and TILA violations". A claim under this statute has three prongs: unlawfulness, unfairness, and fraud. In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices. The Claimant has not provided any specific evidence to substantiate its general allegations of fraud and unlawful practices. | 9-10 |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|
| 40 | Robert Andrew Romero PO Box 2905 Hillsboro, OR 97123 | 2310 | 11/06/2012 | $0.00 Administrative Priority | Homecomings Financial, LLC | 12-12042 | Origination Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Corporation purchased the loan from Sierra Pacific Mortgage Company on or about November 29, 2004, subsequently transferred its interest and the loan was securitized on or about December 1, 2004, where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial, LLC serviced the loan from November 29, 2004 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013.

Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by Sierra Pacific Mortgage Company, Inc. on October 18, 2004.

There is no assignee liability that would extend to Debtor on these claims in its role as servicer or owner of the loan. The Claimant cites the following California statutes as the basis for liability:

• Civil Code § 1572, in connection with allegations of fraud/forgery in the origination documents. However, the assignee or purchaser of an asset generally does not become vicariously liable for its predecessor's fraud or other torts without an explicit contractual agreement to assume such liability. Claimant does not provide evidence of any such contractual agreement;

• Civil Code §§ 1411, 1511 and 1595, arguing that the servicer and all affiliated agents should have known he could not perform under the note. However, these are simply general statutes governing the law of contracts in California and the general rule is that a successor does not succeed to the contractual liabilities of the predecessor, except where there was a de facto merger, a continuation of the corporation, an agreement to assume liability, or a fraudulent attempt to avoid liability. Again no evidence is proffered to support such exceptions;

• Civil Code § 1670.5(a), arguing that the loan contract was "unconscionable at the time it was made" and therefore should be voided. Claimant has not provided any facts to establish either procedural or substantive unconscionability as required to support a claim under this section;

• Civil Code § 1916.7, in connection with "failing to provide the disclosure notice required in a timely manner. I was not fully informed of the....adjustable rate (terms)" and other loan options "that might have been more beneficial". This statute governs disclosures that an originating lender is required to make at the origination of the mortgage loan, and the Debtors were not the originating lender; and

• Business & Professions Code § 17200, in connection with "RESPA and TILA violations". A claim under this statute has three prongs: unlawfulness, unfairness, and fraud. In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices. The Claimant has not provided any specific evidence to substantiate its general allegations of fraud and unlawful practices. | 9-10 |
| | | | | $0.00 Administrative Secured | | | | | |
| | | | | $0.00 Secured | | | | | |
| | | | | $0.00 Priority | | | | | |
| | | | | $230,000.00 General Unsecured | | | | | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 41 | Robert Andrew Romero<br>PO Box 2905<br>Hillsboro, OR 97123 | 2304 | 11/06/2012 | $0.00 | Administrative Priority | Residential Capital, LLC | 12-12020 | Origination Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Corporation purchased the loan from Sierra Pacific Mortgage Company on or about November 29, 2004, subsequently transferred its interest and the loan was securitized on or about December 1, 2004, where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial, LLC serviced the loan from November 29, 2004 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013. | 9-10 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by Sierra Pacific Mortgage Company, Inc. on October 18, 2004. | |
| | | | | $0.00 | Priority | | | | There is no assignee liability that would extend to Debtor on these claims in its role as servicer or owner of the loan. The Claimant cites the following California statutes as the basis for liability: | |
| | | | | $230,000.00 | General Unsecured | | | | • Civil Code § 1572, in connection with allegations of fraud/forgery in the origination documents. However, the assignee or purchaser of an asset generally does not become vicariously liable for its predecessor's fraud or other torts without an explicit contractual agreement to assume such liability. Claimant does not provide evidence of any such contractual agreement; | |

• Civil Code §§ 1411, 1511 and 1595, arguing that the servicer and all affiliated agents should have known he could not perform under the note. However, these are simply general statutes governing the law of contracts in California and the general rule is that a successor does not succeed to the contractual liabilities of the predecessor, except where there was a de facto merger, a continuation of the corporation, an agreement to assume liability, or a fraudulent attempt to avoid liability. Again no evidence is proffered to support such exceptions;

• Civil Code § 1670.5(a), arguing that the loan contract was "unconscionable at the time it was made" and therefore should be voided. Claimant has not provided any facts to establish either procedural or substantive unconscionability as required to support a claim under this section;

• Civil Code § 1916.7, in connection with "failing to provide the disclosure notice required in a timely manner. I was not fully informed of the....adjustable rate (terms)" and other loan options "that might have been more beneficial". This statute governs disclosures that an originating lender is required to make at the origination of the mortgage loan, and the Debtors were not the originating lender; and

• Business & Professions Code § 17200, in connection with "RESPA and TILA violations". A claim under this statute has three prongs: unlawfulness, unfairness, and fraud. In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices. The Claimant has not provided any specific evidence to substantiate its general allegations of fraud and unlawful practices.

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 42 | Robert Andrew Romero PO Box 2905 Hillsboro, OR 97123 | 2298 | 11/06/2012 | $0.00 | Administrative Priority | Residential Funding Company, LLC | 12-12019 | Origination Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Corporation purchased the loan from Sierra Pacific Mortgage Company on or about November 29, 2004, subsequently transferred its interest and the loan was securitized on or about December 1, 2004, where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial, LLC serviced the loan from November 29, 2004 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen on February 16, 2013. | 9-10 |
| | | | | $0.00 | Administrative Secured | | | | | |
| | | | | $0.00 | Secured | | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by Sierra Pacific Mortgage Company, Inc. on October 18, 2004. | |
| | | | | $0.00 | Priority | | | | | |
| | | | | $230,000.00 | General Unsecured | | | | There is no assignee liability that would extend to Debtor on these claims in its role as servicer or owner of the loan. The Claimant cites the following California statutes as the basis for liability: | |

• Civil Code § 1572, in connection with allegations of fraud/forgery in the origination documents. However, the assignee or purchaser of an asset generally does not become vicariously liable for its predecessor's fraud or other torts without an explicit contractual agreement to assume such liability. Claimant does not provide evidence of any such contractual agreement;

• Civil Code §§ 1411, 1511 and 1595, arguing that the servicer and all affiliated agents should have known he could not perform under the note. However, these are simply general statutes governing the law of contracts in California and the general rule is that a successor does not succeed to the contractual liabilities of the predecessor, except where there was a de facto merger, a continuation of the corporation, an agreement to assume liability, or a fraudulent attempt to avoid liability. Again no evidence is proffered to support such exceptions;

• Civil Code § 1670.5(a), arguing that the loan contract was "unconscionable at the time it was made" and therefore should be voided. Claimant has not provided any facts to establish either procedural or substantive unconscionability as required to support a claim under this section;

• Civil Code § 1916.7, in connection with "failing to provide the disclosure notice required in a timely manner. I was not fully informed of the....adjustable rate (terms)" and other loan options "that might have been more beneficial". This statute governs disclosures that an originating lender is required to make at the origination of the mortgage loan, and the Debtors were not the originating lender; and

• Business & Professions Code § 17200, in connection with "RESPA and TILA violations". A claim under this statute has three prongs: unlawfulness, unfairness, and fraud. In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices. The Claimant has not provided any specific evidence to substantiate its general allegations of fraud and unlawful practices.

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-FIRST OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|
| 43 | Suzanne Koegler and Edward Tobias 75 Princeton Oval Freehold, NJ 07728 | 1467 | 10/22/2012 | $0.00 Administrative Priority<br><br>$0.00 Administrative Secured<br><br>$0.00 Secured<br><br>$0.00 Priority<br><br>$1,000,000.00 General Unsecured | Residential Capital, LLC | 12-12020 | Wrongful Foreclosure, General No Liability | Debtors' involvement with Claimants' loan was limited to Debtors' roles as originator and servicer of the loan. Debtor GMAC Mortgage Corporation originated the loan on or about May 9, 2003. Debtor transferred its interest in the loan to Fannie Mae in or about February 2004. Debtor GMAC Mortgage, LLC serviced the loan from May 9, 2003 until servicing transferred to GreenTree on February 1, 2013.<br><br>Claimants assert "consumer fraud" and "affirmative defenses to foreclosure" as the basis for the claim, but Claimants provided no evidence or additional explanation in either the proof of claim or their response to Debtor's request for additional information. Debtor reviewed its records in connection with Claimants' loan and found no evidence to support the stated basis. Debtor's records show Debtor currently has no interest in the loan. At the time servicing transferred from Debtor to Green Tree in February 2013, the loan was owned by Fannie Mae. The loan has never been referred to foreclosure and the only delinquency ever reported on the account was a 30-day late payment in 2004. The terms of Claimants' loan application are consistent with the terms of the note and mortgage executed by Claimants, and other than the proof of claim, Claimants have never disputed the terms of the loan with Debtor. | 7-8, 11-12 |
| 44 | Thomas Mccue 2157 Stockman Circle Folsom, CA 95630 | 4755 | 11/14/2012 | $0.00 Administrative Priority<br><br>$0.00 Administrative Secured<br><br>$0.00 Secured<br><br>$0.00 Priority<br><br>UNLIQUIDATED General Unsecured | GMAC Mortgage, LLC | 12-12032 | Origination Issues, Loan Modification , Wrongful Foreclosure | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor GMAC Mortgage, LLC purchased the loan from Central Pacific Mortgage Company on or about April 21, 2003. Debtor transferred its interest and the loan was securitized on or about March 30, 2006, where JPMorgan Chase Bank, NA was appointed as Trustee. Debtor GMAC Mortgage, LLC serviced the loan from December 12, 2005 until servicing transferred to Ocwen on February 16, 2013.<br><br>Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by Central Pacific Mortgage Company. Thus, there is no assignee liability that would extend to Debtor on these claims. In general, an unfair practices claim under California Business and Professions Code § 17200 cannot be predicated on vicarious liability. To be liable, a defendant must personally participate in unlawful, unfair or fraudulent practices.<br><br>Debtors have no liability for wrongful foreclosure claims because Debtor confirmed that this loan has never been referred to foreclosure. As of September 10, 2013, this loan is current and serviced by Ocwen.<br><br>Debtors have no liability for this loan modification claim because Debtor handled all aspects of the loan modification process appropriately, and Claimant was not damaged by the assistance Debtor provided to Claimant. Debtor's records show that a workout package was received on August 19, 2009. On September 21, 2009, Claimant was denied for both a HAMP modification and traditional modification because the debt-to-income ratio indicated Claimant could afford the mortgage payment. A new workout package was submitted on February 23, 2010. Modification was again denied on March 2, 2010 for the same reason. A new workout package was submitted on June 29, 2012. Modifications were denied on July 27, 2012 (HAMP) and on July 31, 2012 (traditional), for the same reason. | 9-10, 11-12, 14-15 |