## Exhibit 3

**The Claim and Response**

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY **COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number: **Residential Capital, LLC, Case No. 12-12020**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

**James Jackson**

Name and address where notices should be sent:

c/o Jessica Tovrov
Goodman Law Offices
105 West Madison St.
Suite 1500
Chicago IL 60602

Telephone number: 312.252.7362         email: jessica@tovrovlaw.com

Name and address where payment should be sent (if different from above):

Telephone number:                    email:

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
   *(If known)*

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed: $** unknown

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** debtor holds mortgage on property sold to creditor fraudulently or negligently (see attached complaint)
   (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** | **3a. Debtor may have scheduled account as:** | **3b. Uniform Claim Identifier (optional):** |
|---|---|---|
| ___  ___  ___  ___ | (See instruction #3a) | (See instruction #3b) |

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**

**Value of Property: $**_____  **Annual Interest Rate**_____%  ☐ Fixed  ☐ Variable
   **(when case was filed)**

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim,**

if any: $_____         **Basis for perfection:** _____

**Amount of Secured Claim: $**_____     **Amount Unsecured: $**_____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
                    $_____     (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature:** (See instruction #9) Check the appropriate box.
☐ I am the creditor.  ☑ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or  ☐ I am a guarantor, surety,
              (Attach copy of power of attorney, if any.)   their authorized agent.   indorser, or other codebtor.
                                    (See Bankruptcy Rule 3004.)   (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Jessica Tovrov
Title: attorney
Company: Goodman Law Offices                (Signature)                    November 9, 2012
Address and telephone number (if different from notice address above):                                     (Date)

Telephone number: 312.252.7362           Email: jessica@tovrovlaw.com

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**RECEIVED**

NOV 1 3 2012

KURTZMAN CARSON CONSULTANTS
COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

12120201211130000000000087

FIRM ID #36443

FILED

**CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT, LAW DIVISION** PM 3:07

|  |  |  |
|---|---|---|
| WINIFRED COLLINS-LEE, | ) | |
| RASHEEDA L. FISHER, AND JAMES | ) | |
| JACKSON, | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | |
| v. | ) | Case No. 11 L 8162 |
|  | ) | |
| FOREIT PROPERTIES, LLC AND | ) | |
| MARK FOREIT | ) | |
|  | ) | |
| Defendants. | ) | |

## FOURTH AMENDED COMPLAINT

Plaintiffs Winifred Collins-Lee, Rasheeda L. Fisher and James Jackson, by and through

their attorneys, Goodman Law Offices LLC, for their complaint against Foreit Properties, LLC

("Foreit") and Mark Foreit ("Mark) state and allege as follows:

### Facts Common to All Counts

1.      This matter arises out of the development of a condominium building and sale

of condominiums located at 5936-5948 South King Drive, Chicago, Illinois, commonly

referred to as the Courtyard on the Park Condominiums (the "Building").

2.      Beginning sometime prior to December 31, 2004, Foreit was the developer of

the Building.

3.      Presently and at all times referred to herein, Mark is and was a Foreit manager.

4.      Sometime prior to December 31, 2004, Foreit reconfigured and renovated the

Building, including modifying the Building's lower levels from spaces not designed as living

quarters into garden apartments (the "Garden Units").

1



EXHIBIT
A

5.      The Garden Units are partially below ground and the front door of each Garden Unit faces the Building's open courtyard.

6.      On or about January 10, 2005, Foreit sold one of the Garden Units, specifically the unit located at 5940 S. King Drive, Unit 1W ("One West") to James Jackson. (Copy of Deed attached as Exhibit 1.)

7.      At some point prior to September 11, 2006, Foreit sold one of the Garden Units, specifically the unit located at 5948 S. Martin Luther King Drive Unit 1 ("One") to Claire Okula.

8.      On or about September 13, 2006, the Garden Units flooded during a rainfall.

9.      Drainage from the Building's gutters collected and rainwater fell into the courtyard, and flowed into unit One, unit One West and the Garden Unit located at 5944 S. Martin Luther King Dr. Unit 1E ("One East").

10.     Rainwater from the gutters located in the rear of the Building drained into unit One, unit One West and unit One East through the units' doors.

11.     Many of Jackson's personal belongings were damaged or destroyed as a result of this flooding.

12.     Many of Okula's personal belongings were damaged or destroyed as a result of this flooding.

13.     Following the flooding, Foreit, through its agents and representatives, including Mark, promised Jackson that the water damage would be properly repaired and that the Building would be reconfigured to ensure that Garden Units would not flood again.

2

14.     In reliance upon these promises, Jackson continued to live in unit One West, did not investigate or attempt to remediate the cause of the flooding, and did not take other action to compel Foreit to do so or seek other remedies against Defendants.

15.     At some point after September 11, 2006 but before June 14, 2007, Defendants installed a sump pump at the Building in such a way that it would not prevent the Garden Units from flooding again in the same manner as in the September 11, 2006 flood.

16.     At some point after September 11, 2006 but before June 14, 2007, Foreit purchased unit One back from Okula.

17.     On or about June 14, 2007, Foreit resold unit One to Winifred Collins-Lee ("Lee"). (Copy of Purchase Agreement attached as Exhibit 2.)

18.     Prior to the sale, Foreit, through its agents and representatives, including Mark, told Lee that unit One was brand new and had not been previously owned or occupied.

19.     Defendants did not disclose to Lee that the unit had previously been owned and occupied by Okula or that Foreit had purchased unit One back from Okula after the unit flooded.

20.     Prior to the sale, Foreit, through its agents and representatives, including Mark, informed Lee that unit One had experienced water infiltration caused by a backup of the city storm drain system that caused water to infiltrate unit One from underneath the unit's back door, that the city had corrected the problem and that Defendants had installed a sump pump to prevent this occurrence from happening again.   (Copy of Residential Real Property Disclosure Report attached as Exhibit 3.)

21.     At the time of this representation, Defendants knew or should have known that back-up of a city storm drain was not the sole cause of the flooding.

3

22.    At the time of this representation, Defendants knew or should have known that the sump pump was not properly installed, was installed without a permit and would not prevent the Garden Units from flooding again in the same manner as in the September 13, 2006 flood.

23.    At the time of this representation, Defendants knew or should have known that the cause of the flooding was latent defects in the design, construction and management of the reconfiguration of the Building's lower level into residential condominiums, which caused the Building's drain water to drain into units One, One West and One East.

24.    Defendants did not disclose to Lee that the Garden Units, including unit One, had had substantial flooding.

25.    Defendants did not disclose to Lee that the Garden Units, including unit One, had experienced flooding due to latent defects in the design, construction and management of the reconfiguration and renovation of the Building's lower level into residential condominiums.

26.    Defendants did not disclose to Lee that Defendants did not properly install a sump pump or that the sump pump installed would not prevent flooding from happening again.

27.    In reliance upon these representations and omissions, Lee purchased unit One from Foreit.

28.    On or about October 8, 2007, Foreit sold unit One East to Rasheeda Fisher. (Copy of Deed attached as Exhibit 4.)

29.    Prior to the sale, Foreit, through its agents and representatives, including Mark, informed Fisher that unit One East had experienced water infiltration caused by a backup of

4

the city storm drain system that caused water to infiltrate unit One East from underneath the unit's back door, that the city had corrected the problem and that Defendants had installed a sump pump to prevent this occurrence from happening again. (Copy of Residential Real Property Disclosure Report attached as Exhibit 5.)

30.    At the time of this representation, Defendants knew or should have known that back-up of a city storm drain was not the sole cause of the flooding.

31.    At the time of this representation, Defendants knew or should have known that the sump pump was not properly installed, was installed without a permit and would not prevent the Garden Units from flooding again in the same manner as in the September 13, 2006 flood.

32.    At the time of this representation, Defendants knew or should have known that the cause of the flooding was latent defects in the design, construction and management of the reconfiguration of the Building's lower level into residential condominiums, which caused the Building's drain water to drain into units One, One West and One East.

33.    Defendants did not disclose to Fisher that the Garden Units, including unit One East, had had substantial flooding.

34.    Defendants did not disclose to Fisher that the Garden Units, including unit One East, had experienced flooding due to latent defects in the design, construction and management of the reconfiguration and renovation of the Building's lower level into residential condominiums.

35.    Defendants did not disclose to Fisher that Defendants did not properly install a sump pump or that the sump pump installed would not prevent flooding from happening again.

5

36.     In reliance upon these representations and omissions, Fisher purchased unit One East from Foreit.

37.     On or about August 11, 2008, units One, One West and One East all flooded in the same manner as in the September 13, 2006 flood.

38.     On or about July 13, 2010, units One, One West and One East all flooded again in the same manner.

39.     On or about July 24, 2011, units One, One West and One East all flooded again in the same manner.

40.     At some point following the August 11, 2008 flood, units One, One West and One East became infested with mold.

41.     On or about October 5, 2010, the Defendants were ordered by the City of Chicago Department of Buildings to remove the sump pump they had installed. (Copy of City of Chicago Department of Buildings citation instructing Defendants to remove sump pump and other outdoor plumbing attached as Exhibit 6.)

42.     On or about April 8, 2011, the Building was inspected by a private inspection company that determined that the cause of flooding was latent defects in the design, construction and management of the reconfiguration of the Building's lower level into residential condominiums, which caused the Building's drain water to drain into units One, One West and One East. (Copy of inspection report attached as Exhibit 7.)

43.     As a result of the August 11, 2008, July 13, 2010 and July 24, 2011 flooding and of the mold infestation, many of Jackson's, Lee's and Fisher's personal belongings were damaged or destroyed; units One, One West and One East were damaged and lost value;

Plaintiffs suffered emotional distress and Lee suffered severe physical injuries requiring significant past and ongoing medical treatment.

### Count I – Negligence
### Jackson v. Foreit

44.    Jackson re-allege paragraphs 1-43.

45.    Jackson brings Count I against Foreit.

46.    Sometime prior to December 31, 2004, Foreit reconfigured and renovated the Building, including modifying the Building's lower levels from spaces not designed as living quarters into garden apartments.

47.    The Garden Units are partially below ground and the front door of each Garden Unit faces the Building's open courtyard.

48.    On or about January 10, 2005, Foreit sold one of the Garden Units, specifically the unit One West, to Jackson.

49.    As developer of the Building and the Garden Units, Foreit had a duty to Jackson to properly design and manage the construction of the reconfiguration of the Building's lower levels into garden unit condominiums, including a duty to design and manage the reconfiguration of the Building in such a way that would not cause the Garden Units, including Jackson's unit, to experience flooding in the manner described herein.

50.    As developer of the Building and the Garden Units and due to its promises and affirmative undertakings described herein, Foreit had a duty to properly repair and manage the repairs to Jackson's units following the flooding.

51.    As developer of the Building and the Garden Units and due to its statements and affirmative undertakings described herein, Foreit had a duty to investigate the source of the

flooding and correctly reconfigure the Building as necessary to prevent the Garden Units, including Jackson's unit from flooding in the manner described herein.

52.     Foreit breached its duties by designing, managing the design, modifying and supervising the modification of the Building improperly, in such a way that caused the Garden Units, including Jackson's unit, to experience flooding in the manner described herein.

53.     Foreit breached its duties by failing to repair and manage the repairs to clean and dry Jackson's units following the flooding.

54.     Foreit breached its duties by failing to investigate the source of the September 13, 2006 flooding or to correctly reconfigure the Building as necessary to prevent the Garden Unit, including Jackson's unit, from subsequent flooding in the manner described herein (as it did on August 11, 2008, July 23, 2010, and July 24, 2011).

55.     Foreit breached its duties by failing to correct the condition of the Building to prevent additional flooding to Jackson's unit.

56.     As a direct and proximate result of one or more of the aforesaid breaches, Jackson's condominium unit was damaged, his personal belongings were damaged or destroyed and the value of his condominium greatly reduced.

57.     As a direct and proximate result of one or more of the aforesaid breaches Jackson suffered real and compensatory damages.

WHEREFORE, Plaintiff, James Jackson, requests judgment against Foreit Properties, LLC and in his behalf, in excess of $50,000 as shall represent fair and just compensation.

### Count II – Negligence
### Lee v. Foreit

58.     Lee re-allege paragraphs 1-43.

59.     Lee brings Count II against Foreit.

8

60.    Sometime prior to December 31, 2004, Foreit reconfigured and renovated the Building, including modifying the Building's Garden Units.

61.    The Garden Units are partially below ground and the front door of each Garden Unit faces the Building's open courtyard.

62.    On or about June 14, 2006, Foreit sold unit One to Lee.

63.    As developer of the Building and the Garden Units, Foreit had a duty to Lee to properly design and manage the construction of the reconfiguration of the Building's lower levels into garden unit condominiums, including a duty to design and manage the reconfiguration of the Building in such a way that would not cause the Garden Units, including Lee's unit, to experience flooding in the manner described herein (flooding on August 11, 2008, July 13, 2010, and July 24, 2011).

64.    Foreit breached its duties by designing, managing the design, modifying and supervising the modification of the Building improperly, in such a way that caused the Garden Units, including Lee's unit, to experience flooding in the manner described herein.

65.    As a direct and proximate result of one or more of the aforesaid breaches, Lee's condominium unit became infested with toxic mold.

66.    As a direct and proximate result of one or more of the aforesaid breaches, Lee's condominium units was damaged, her personal belongings were damaged or destroyed and the value of his condominium unit is greatly reduced.

67.    As a direct and proximate result of one or more of the aforesaid breaches Lee suffered real and compensatory damages including damage to his personal property, decreased value of her condominium, and mental anguish.

9

68.     As a direct and proximate result of one or more of the aforesaid breaches, Plaintiff Lee suffered severe physical injuries, required significant medical treatment, and will require ongoing medical treatment.

WHEREFORE, Plaintiff Lee requests judgment against Foreit and in her behalf, in excess of $50,000 as shall represent fair and just compensation.

### Count III Negligence
### Fisher v. Foreit

69.     Fisher re-allege paragraphs 1-43.

70.     Fisher brings Count III against Foreit.

71.     Sometime prior to December 31, 2004, Foreit reconfigured and renovated the Building, including modifying the Building's Garden Units.

72.     The Garden Units are partially below ground and the front door of each Garden Unit faces the Building's open courtyard.

73.     On or about October 8, 2007, Foreit sold unit One East to Fisher.

74.     As developer of the Building and the Garden Units, Foreit had a duty to Fisher to properly design and manage the construction of the reconfiguration of the Building's lower levels into garden unit condominiums, including a duty to design and manage the reconfiguration of the Building in such a way that would not cause the Garden Units, including Fisher's unit, to experience flooding in the manner described herein (flooding on August 11, 2008, July 13, 2010, and July 24, 2011).

75.     Foreit breached its duties by designing, managing the design, modifying and supervising the modification of the Building improperly, in such a way that caused the Garden Units, including Fisher's unit, to experience flooding in the manner described herein.

76.    As a direct and proximate result of one or more of the aforesaid breaches, Fisher's condominium unit became infested with toxic mold.

77.    As a direct and proximate result of one or more of the aforesaid breaches, Fisher's condominium units was damaged, her personal belongings were damaged or destroyed and the value of his condominium unit is greatly reduced.

78.    As a direct and proximate result of one or more of the aforesaid breaches Fisher suffered real and compensatory damages including damage to his personal property, decreased value of her condominium, and mental anguish.

WHEREFORE, Plaintiff Fisher requests judgment against Foreit and in her behalf, in excess of $50,000 as shall represent fair and just compensation.

### Count IV – Breach of Implied Warranty of Workmanship
### Jackson v. Foreit

79.    Jackson re-alleges paragraphs 1-43.

80.    Jackson brings Count IV against Foreit.

81.    In developing and reconfiguring the Building to include the Garden Units, Foreit impliedly warranted to perform the work in a reasonably workmanlike manner.

82.    In agreeing to repair Jackson's units and modify his unit and the Building to prevent future flooding, Foreit impliedly warranted to perform the work in a reasonably workmanlike manner.

83.    The development and reconfiguration of the Building and Jackson's unit were not performed in a reasonable workmanlike manner.

84.    Repairs to Jackson's unit were not performed in a reasonably workmanlike manner.

11

85.    Repairs to and reconfiguration of Jackson's units and the Building to prevent additional flooding were not performed in a reasonably workmanlike manner.

86.    As a result of Foreit's breaches of the implied warranty Jackson suffered pecuniary damages and the loss of value of the Property.

WHEREFORE, Jackson requests judgment against Foreit Properties, LLC and in her behalf, in excess of $50,000 as shall represent fair and just compensation.

### Count V – Fraud
### Lee and Fisher v. Foreit and Mark

87.    Lee and Fisher re-allege paragraphs 1-43.

88.    Lee and Fisher bring Count III against Foreit and Mark.

89.    During Lee's and Fisher's respective purchases of their Garden Units, Foreit, through its agents and representatives, including Mark, made the following misrepresentations:

   a.  failed to disclose at any time the latent defects described above;

   b.  failed to disclose to Lee and Fisher the extent to which the Garden Units they purchased had previously flooded;

   c.  incorrectly informed Lee and Fisher that the defect that had caused water to infiltrate the units had been corrected;

   d.  stated in writing to Lee and Fisher that "water infiltration" into the units had been caused by a backup of the city storm drain, that the city had corrected the problem and that Defendants had installed a sump pump to prevent future flooding;

   e.  told Lee that unit One was brand new and had never been lived in.

90.    At the time Defendants made these statements they knew or should have known:

   a.  that back-up of a city storm drain was not the sole cause of the flooding;

12

b. that the sump pump was not properly installed, was installed without a permit and would not prevent the Garden Units from flooding again in the same manner as in the September 11, 2006 flood;

c. that the cause of flooding in the Garden Units was latent defects in the design, construction and management of the reconfiguration of the Building's lower level into residential condominiums, which caused the Building's drain water to drain into units One, One West and One East.

d. that unit One had previously been owned and occupied by Okula and that Foreit had purchased unit One back from Okula after the unit flooded.

91.    All of the misrepresentations and omissions were made with the intention of inducing Lee and Fisher to purchase Garden Units.

92.    Lee and Fisher relied on the misrepresentations listed above in deciding to purchase Garden Units.

93.    As a result, Lee and Fisher have each suffered pecuniary damages, emotional distress and the loss of value of the Property and Lee suffered personal injury.

WHEREFORE, Plaintiffs, Winifred Collins-Lee and Rasheeda L. Fisher, each request judgment against Foreit Properties, LLC and Mark Foreit and in their behalf in excess of $50,000 as shall represent fair and just compensation.

## Count VI – Consumer Fraud Act
### Lee and Fisher v. Foreit and Mark

94.    Plaintiffs re-allege paragraphs 1-43.

95.    Plaintiffs Lee and Fisher bring Count IV against Foreit and Mark.

96.    During the purchase of their Garden Units, Defendants made the following misrepresentations to Lee and Fisher:

a. failed to disclose at any time the latent defects described above;

b. failed to disclose to Lee and Fisher the extent to which the Garden Units they purchased had previously flooded;

13

    c.  provided false statements to Lee and Fisher that the defect that had caused water to infiltrate the units had been corrected;

    d.  stated in writing to Lee and Fisher that the "water infiltration" had been caused by a back-up of the city storm drain, that the city had corrected the problem and that Defendants had installed a sump pump to prevent future flooding;

    e.  provided false statements to Lee that unit One was brand new and had never been lived in.

    97.    All of the misrepresentations were made with the intention of inducing Lee and Fisher to purchase Garden Units.

    98.    Lee and Fisher relied on the misrepresentations listed above in deciding to purchase Garden Units.

    99.    At the time Defendants made these statements they knew or should have known:

    a.  that the flooding was not solely the result of a backup of a city storm drain;

    b.  that the sump pump was not properly installed, was installed without a permit and would not prevent future flooding;

    100.    As a result, Lee and Fisher have each suffered pecuniary damages, emotional distress and the loss of value of the Property, and Lee suffered personal injury.

WHEREFORE, Plaintiffs, Winifred Collins-Lee and Rasheeda L. Fisher, each request judgment against Foreit Properties, LLC., and Mark Foreit and in their behalf in excess of $50,000 as shall represent fair and just compensation, plus attorneys' fees, exemplary damages and court costs.

14

Respectfully submitted,

By:_____
One of the attorneys for Plaintiffs, Winifred
Collins-Lee, Rasheeda L. Fisher and James
Jackson

Gabriel P. Hardy
Adam Goodman
Jessica Tovrov
Wesley Johnson
Alexis Hawker
GOODMAN LAW OFFICES LLC
105 West Madison Street, Suite 1500
Chicago, IL 60602
(312) 752-4756
Fax: (312)264-2535
gabe@thehardylawoffices.com

## CERTIFICATE OF SERVICE

I, Gabriel Hardy, an attorney, hereby certify that a copy of the attached Fourth Amended Complaint was served on November 6, 2012 via U.S. mail upon the following:

Jaffe & Berlin, L.L.C.
111 W. Washington, Suite 900
Chicago, Illinois 60602
*Counsel for Foreit Properties, LLC*

Gabriel Hardy

Record & Return To:

GMAC Mortgage, LLC
Attention: Loss Mitigation
3451 Hammond Avenue
Waterloo, IA 50702

————————————————————[Space Above This Line For Recorder's Use]————————————————————

## FIXED RATE LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement") made this December 9, 2009 ("Effective Date")
between JAMES C JACKSON          ("Borrower") and GMAC Mortgage, LLC ("Lender"), amends and
supplements that certain promissory note ("Note") dated January 10, 2005 in the original principal sum of One
Hundred Thirty Five Thousand Eight Hundred Sixty Dollars and No Cents ($ 135,860.00)executed by Borrower
except that since Borrower has received a chapter 7 bankruptcy discharge, this Agreement will not create personal
liability under the Note.. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security
Instrument"), dated the same date as the Note, and if applicable, recorded on  with Instrument Number  in Book
and/or Page Number  of the real property records of  COOK County, IL. Said Security Instrument covers the real
and personal property described in such Security Instrument (the "Property") located at 5940 SOUTH KING
DRIVE #1W  CHICAGO IL 60637, which real property is more particularly described as follows:

### (Legal Description -- Attach as Exhibit if Recording Agreement)

Borrower acknowledges that Lender is the legal holder and the owner of the Note and Security Instrument
and further acknowledges that if Lender transfers the Note, as amended by this Agreement, the transferee shall be
the "Lender" as defined in this Agreement.

Borrower has requested, and Lender has agreed, to extend or rearrange the time and manner of payment of
the Note and to extend and carry forward the lien(s) on the Property whether or not created by the Security
Instrument.

Borrower understands that Borrower is not personally obligated to repay the mortgage loan and that
[GMAC Mortgage, LLC] is not attempting to collect any debt from Borrower. Signing this Agreement will not
make Borrower personally liable for the mortgage loan. Borrower understands that [GMAC Mortgage, LLC] will
continue to retain its lien on the Property, along with all rights to enforce such lien against the Property. Whether
Borrower chooses to make voluntary payments in the amount of the original monthly payment as set forth in the
Note or the modified monthly payments as set forth in this Agreement, such payments will reduce the amount of
the lien.

Now, therefore, in consideration of the mutual promises and agreements contained herein, and other good
and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be
legally bound, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or
Security Instrument):

1. Borrower acknowledges that as of the Effective Date, the amount payable under the Note and secured by
the Security Instrument (the "Principal Balance") is One Hundred Thirty Thousand Six Hundred Fifty Four Dollars
and Seventy Cents $ 130,654.70.

EXHIBIT
B
Blumberg No. 5119

2. Interest will be charged on the unpaid Principal Balance until the full amount of principal has been paid. Borrower will pay interest at the rate of 3.25000% per year from the Effective Date.

3. Borrower promises to make monthly principal and interest payments of $ 635.32, beginning on January 9, 2010, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on January 9, 2035 (the "Maturity Date"), amounts remain due under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower will make such payments at 3451 Hammond Avenue, Waterloo, IA 50702 or at such other place as Lender may require. The amounts indicated in this paragraph do not include any required escrow payments for items such as hazard insurance or property taxes; if such escrow payments are required the monthly payments will be higher and may change as the amounts required for escrow items change.

4. If Lender has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, Borrower will pay a late charge to Lender. The amount of the charge will be the late charge percentage provided for in the Note multiplied by the overdue payment of principal and interest required under this Agreement. Borrower will pay this late charge promptly but only once on each late payment. The late charge is not in lieu of any other remedy of Lender, including any default remedy.

5. It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the indebtedness evidenced by the Note and this Agreement has been fully paid. Lender and Borrower acknowledge and agree that such renewal, amendment, modification, rearrangement or extension (if applicable) shall in no manner affect or impair the Note or liens and security interests securing same, the purpose of this Agreement being simply to modify, amend rearrange or extend (if applicable) the time and the manner of payment of the Note and indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

6. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower. For purposes of this paragraph, "interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is transfer of title by Borrower at a future date to a purchaser.

7. As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, except that since Borrower has received a chapter 7 bankruptcy discharge, this Agreement will not create personal liability under the Note. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement, including but not limited to, in the case of the Borrower, the obligation to pay items such as taxes, insurance premiums or escrow items, as applicable. Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument. **Notwithstanding the foregoing, Lender cannot enforce the debt against Borrower personally and Lender's only remedy upon default is to enforce the lien against the Property.**

8. Lender does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto. This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement. EACH OF THE BORROWER AND THE LENDER ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN. THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.

Executed effective as of the day and year first above written.

JAMES C JACKSON

**BORROWER ACKNOWLEDGMENT**

State of _Illinois_
County of _Cook_

On this 23 day of _Nov_ _2009_, before me, the undersigned, a Notary Public in and for said county and state, personally appeared JAMES C JACKSON   personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

Notary Public

"OFFICIAL SEAL"
CATRICE D. THOMAS
Notary Public, State of Illinois
My Commission Expires May 09, 2011

My Commission Expires: _5-9-2011_

James C. Jackson
Unit 1W
5940 S. King Dr.
Chicago, Ill 60637
(773) 493-8693 hm
(773) 406-3973 cell
(773) 855-9649 fax
JJAC326060@aol.com

10/21/13

United States Bankruptcy Court for the Southern District of New York
Alexander Hamilton Custom House
ATTN: Honorable Martin Glenn
Court Room 501
One Bowling Green
New York, New York 10004-1408



Kramer Levin Naftalis & Frankel LLC
ATTN: Kenneth H. Eckstein, Esq.
           Douglas H. Mannal, Esq.
1117 Avenue of the Americas
New York, New York 10104

Re: Response to Debtors' Fiftieth Omnibus Objection (Case No. 12-12020 MG) / Claim # 4664

To whom it may concern:

Here are my answers:

i). United States Bankruptcy Court for the Southern District of New York; Debtors:
RESIDENTIAL CAPITAL, LLC, et al., (Case No. 12-12020 MG); NOTICE OF HEARING ON
DEBTORS' FIFTIETH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER
CLAIMS - BOOKS AND RECORDS.

ii). James Conlee Jackson – I purchased a defective garden unit condo that should have never
been sold to me.

iii). It is in my humble opinion that the Bankruptcy Court of the Southern District of New York
SHOULD NOT sustain this Third Omnibus Objection in my case because I purchased my first
home (a garden level condo) in good faith, only to realize that it has a serious structural defect
that causes flooding to my living space. I am currently involved in a lawsuit with the City of
Chicago who levied violations against our condo association for these flooding issues (amongst
other things). I also was involved in a lawsuit against the developer who I purchased the condo
from (you are already in receipt of the fourth amended complaint).

The lawsuit against the developer has been "settled" but the flooding issue has NOT been remedied and so we are back at square one (sigh). The attorney in my lawsuit against the developer (Gabriel Hardy), as well as two unit owners (Nanette Stevens & Venell Slaughter) are demanding that my condo association or the developer fix the flooding issue to my unit, but the condo association is resisting in an attempt to retaliate and punish me for bringing the flooding issue to the city's attention in the first place. This flooding situation has been terribly draining on my family and me emotionally, spiritually and financially (replacing carpeting and missing work due to the stress from this situation, etc). So, in conclusion, it is my sincere hope that the court DOES NOT dismiss my claim and hopefully my claim can be resolved in a fair and just way.

iv). I am including the following documentation to add as a part of my claim:

    1). DVD video of the initial flooding incident back on 13 September 2006.
    2). DVD video of flooding incidents on 07/24/11, 04/18/13, 05/21/13 and other dates.
    3). Settlement Agreement against developer
    4). Letter from attorney Gabriel Hardy to condo association to fix flooding.
    5). Motion from James Jackson to housing court to have developer fix flooding.
    6). Motions from Nanette Stevens and Venell Slaughter to housing court to have flooding fixed.
    7). Summons from City of Chicago for code violations.

v). PLEASE FORWARD ANY AND ALL REPLIES AND RESPONSES TO:

                James C. Jackson
                Unit 1W
                5940 S. King Dr.
                Chicago, IL  60637
                (773) 406-3973 cell
                (773) 493-8693 hm
                (773) 855-9649 fax

vi). The same as above in response v.

This ends my response. If anyone has any questions of me, please feel free to contact me via any of the means above. Thank you.

                            Sincerely,

                            *James C. Jackson*

                            James C. Jackson

OFFICIAL SEAL
DIANA CARTER
Notary Public - State of Illinois
My Commission Expires Mar 11, 2015

*Diana Carter*
for James C Jackson
10/21/13

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is made and entered into by and between WINIFRED COLLINS-LEE ("LEE"), RASHEEDA FISHER ("FISHER"), and JAMES JACKSON ("JACKSON") on the one hand (LEE, FISHER and JACKSON will sometimes be collectively referred to hereafter as "Plaintiffs"), and MARK FOREIT ("MARK") and FOREIT PROPERTIES LLC ("FOREIT"), (FOREIT and MARK will sometimes be collectively referred to hereafter as "Defendants") on the other hand, on the following terms and conditions:

## RECITALS

WHEREAS, FOREIT was the developer of a condominium building located at or near 5936-5948 South King Drive, Chicago, Illinois (the "Property") and is commonly known as the Courtyard on the Park Condominiums; and

WHEREAS, on or about January 10, 2005, JACKSON purchased from FOREIT a condominium unit at the Property, specifically 5940 South King Drive, Unit 1W; and

WHEREAS, on or about June 14, 2007, LEE purchased from FOREIT a condominium unit at the Property, specifically 5948 South King Drive, Unit 1; and

WHEREAS, on or about October 8, 2007, FISHER purchased from FOREIT a condominium unit at the Property, specifically 5944 South King Drive, Unit 1E; and

WHEREAS, Plaintiffs allege that in about September 2006 they noticed water leaking into the garden units of the Property and, some time later, they noticed water leaking again into the garden units at the Property; and

EXHIBIT

_B_

WHEREAS, Plaintiffs allege that FOREIT and MARK were aware of prior leaking conditions at the Property that should have been disclosed to them prior to their respective purchases at the Property; and

WHEREAS, the City of Chicago filed an action against Courtyard on the Park Condominium Association, among other parties, for certain City of Chicago Building Code violations at the Property, said action is presently pending under case number 2012 M1 402170 ("Building Litigation"); and

WHEREAS, Plaintiffs filed a Third Amended Complaint against FOREIT and MARK, said Complaint is currently pending in the Circuit Court of Cook County, Illinois, County Department, Law Division and proceeding under case number 11 L 008162 (the "Litigation") and FOREIT and MARK have filed an Answer denying the allegations in their entirety; and

WHEREAS, the FOREIT and MARK deny each and every allegation of wrongdoing made against them in the Litigation and enter into this Agreement denying any liability herein to Plaintiffs; and

WHEREAS, Defendants expressly deny and disclaim any wrongdoing or liability of any kind whatsoever, and the parties agree to enter into this Agreement in order to avoid further expense, inconvenience, and the distraction of Litigation and to put to rest all claims among the parties hereto relating to claims that were or might have been alleged in the Litigation;

NOW THEREFORE, in consideration of the foregoing and recognition of the mutual covenants contained herein, and other good and valuable consideration, the parties hereby agree as follows:

- 2 -

## TERMS AND CONDITIONS

1. <u>Recitals</u>. The parties adopt and incorporate each of the foregoing recitals as paragraph 1.

2. <u>Representations and Warranties</u>. LLE, FISHER, JACKSON, FOREIT and MARK represent and warrant to each other that:

   a. Each has the legal capacity and authority to compromise and release all claims that have been or could have been raised or asserted by the parties herein with regard to the Litigation;

   b. Each has the legal capacity and authority to enter into and perform all of the terms of this Agreement, which constitute the voluntary, legal, valid and binding obligation of said party;

   c. There has not been an assignment or transfer by operation of law of any claim or part thereof that any party has or may have had against any other;

   d. Each has read this Agreement, understands this Agreement, and intends to be legally bound by this Agreement; and

   e. The signator on behalf of each has the legal capacity and authority to execute and deliver this Agreement on behalf of the parties and to bind each, respectively, hereunder.

3. <u>Settlement Payment to Plaintiffs</u>. Within twenty one (21) days after the execution of this Agreement by all parties hereto, Defendants shall pay the total amount of $15,000.00 (Fifteen Thousand Dollars) to Plaintiffs. Said payment shall be made by check and shall be made payable to "Winifred Collins-Lee, Rasheeda Fisher, James Jackson and Goodman Law Offices. " Plaintiffs, in consultation with their counsel, Goodman Law Office, shall determine

on their own how they will divide the settlement payment of $15,000.00 amongst themselves. Plaintiffs' failure to reach such agreement with respect to the division of the settlement payment, however, shall have no effect whatsoever on the binding nature of this Agreement, which shall remain fully valid and enforceable, including but not limited to the Dismissal of the Litigation with Prejudice as set forth in Paragraph 4 and the Mutual Release of Claims as set forth in Paragraph 6.

4. _Dismissal of Litigation With Prejudice_. Plaintiffs acknowledge that the Litigation was dismissed with prejudice on April 29, 2013 and the parties further acknowledge that each shall bear its own fees and costs.

5. _Objections in Building Litigation_. FOREIT and MARK agree that neither party will raise an objection to a proper petition filed in the Building Action by the Courtyard on the Park Condominium Association seeking permission from the City of Chicago to allow the installation of a sewer check valve at or near the north side of the Property. FOREIT and MARK reserve the right and do not waive their right to object to any other matter raised in the Building Action he/they find objectionable. Nothing herein shall be construed in any way to obligate FOREIT as a unit owner in the Courtyard on the Park Condominium Association to pay any more than its pro rata share relating to any relief sought by the Association in the Building Action.

6. _Mutual Release of Claims._ Except for the obligations set forth herein, LEE, FISHER and JACKSON, their successors, assigns, employees, heirs, beneficiaries, agents, attorneys, representatives, and spouses, do hereby remise, release and forever discharge FOREIT and MARK, its/their affiliates, subsidiaries, successors, assigns, directors, shareholders, officers, managers, members, employees, heirs, beneficiaries, spouses, agents, attorneys, insurers,

- 4 -

representatives, and owners, of and from any and all manner of action, cause or causes of action, suits, debt, bills, liens, specialties, covenants, contracts, sums of money, commissions, compensation, controversies, agreements, promises, trespasses, damages, judgments, executions, claims, and demands, whatsoever, in law or in equity, that Plaintiffs have, had or will have against the FOREIT and/or MARK as the result of any act or omission and/or event from the beginning of time through the execution of this Agreement. Without limiting the generality of the foregoing, this release specifically includes the claims comprising the Litigation and any claims that could have been raised in the Litigation.

Except for the obligations set forth herein, FOREIT and MARK, its/their affiliates, subsidiaries, successors, assigns, directors, shareholders, officers, managers, members, employees, heirs, beneficiaries, agents, attorneys, representatives, and owners, do hereby remise, release and forever discharge Plaintiffs, their successors, assigns, employees, agents, heirs, beneficiaries, attorneys, representatives, insurers, and spouses, of and from any and all manner of action, cause or causes of action, suits, debts, bills, liens, specialties, covenants, contracts, sums of money, commissions, compensation, controversies, agreements, promises, trespasses, damages, judgments, executions, claims, and demands, whatsoever, in law or in equity, that the FOREIT and/or MARK has, had or will have against Plaintiffs as the result of any act or omission and/or event from the beginning of time through the execution of this Agreement. Without limiting the generality of the foregoing, this release specifically includes the claims comprising the Litigation and any claims that could have been raised in the Litigation.

7.    <u>Further Assurances</u>.  The parties hereto agree to execute such other documents and to take such other action as may be reasonably necessary to further the purposes of this Agreement.

- 5 -

8. <u>Governing Law</u>. This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Illinois.

9. <u>Amendments and Waivers</u>. This Agreement may not be modified, amended, or terminated except by an instrument in writing, signed by each of the parties affected thereby. No failure to exercise and no delay in exercising any right, remedy, or power under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, or power under this Agreement preclude any other or further exercise thereof, or the exercise of any other right, remedy, or power provided herein or by law or in equity.

10. <u>Severability</u>. If for any reason any provision of this Agreement is determined to be invalid or unenforceable, the remaining provisions of this Agreement nevertheless shall be construed, performed, and enforced as if the invalidated or unenforceable provision had not been included in the text of the Agreement.

11. <u>Drafting</u>. The drafting and negotiation of this Agreement have been participated in by each of the parties, and for all purposes this Agreement shall be deemed to have been drafted jointly by all of the parties.

12. <u>Successor and Assigns</u>. This Agreement shall inure to the benefit of and be binding upon the parties herein and their respective heirs, personal representatives, successors and permitted assigns.

13. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the parties and supersedes all prior agreements, representations, warranties, statements, promises, and understandings, whether oral or written. The use of headings in this Agreement is merely for convenience and shall have no legal effect, and such headings shall not be referred to in construing any provisions of this Agreement. None of the parties hereto shall be bound by or

- 6 -

charged with any oral or written agreements, representations, warranties, statements, promises or understandings with respect to the subject matter hereof, not specifically set forth or referred to in this Agreement.

14.   <u>Non-Disparagement</u>.   Each party shall refrain from either directly or indirectly making any negative or disparaging remark about the other.

15.   <u>Separate Execution</u>.   This Agreement may be signed by each party separately, in which case attachment of each party's signature page to this Agreement shall constitute a fully-executed Agreement.   Facsimile-copy signatures shall have the same effect as original signatures.

[THIS PORTION OF THE PAGE INTENTIONALLY LEFT BLANK]

12-12020-mg   Doc 6778-3   Filed 04/11/14   Entered 04/11/14 16:44:52   Exhibit 2
Pg 10 of 30

THE PARTIES HERETO ACKNOWLEDGE THAT THEY HAVE READ THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE; THAT THEY HAVE DISCUSSED WITH THEIR ATTORNEY THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE; AND ITS TERMS AND PROVISIONS; THAT THEY FULLY KNOW, UNDERSTAND, AND APPRECIATE THE CONTENTS AND EFFECT OF THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE; AND THAT THEY EXECUTE THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE VOLUNTARILY AND OF THEIR OWN FREE WILL.

IN WITNESS WHEREOF, the undersigned parties have executed this Agreement on the date identified below.

WINIFRED COLLINS-LEE

By: _____

Date: _____

FOREIT PROPERTIES, LLC

By: _____

Title: _____

Date: _____

RASHEEDA FISHER

By: _____

Date: _____

MARK FOREIT

By: _____

Date: _____

JAMES JACKSON

By: _James C. Jackson_____

Date: _9/11/13_____

- 8 -

**Goodman Tovrov Hardy & Johnson LLC**
**105 West Madison Street**
**Suite 1500**
**Chicago, IL 60602**
<u>(312) 752-4756</u>  **Fax:** <u>(312) 264-2535</u>
**gabe@thehardylawoffices.com**


July 23, 2013


Kovits, Shifrin & Nesbit
750 West Lake Cook Road
Buffalo Grove, Illinois, 60089

RE:     Park Condominium Association


Dear Counsel,

I represent James Jackson, a unit owner at 5940 S. King Drive, Unit 1W.  As the Condominium Association is aware, Mr. Jackson's apartment, with other units on the north side of the building, are experiencing continued flooding.  The flooding can be prevented by the installation of a backflow device.  The Association has taken steps to correct and repair a similar problem on the south side of the building, but as of the date of this letter, has neglected to take the same steps to repair problems on the north side.

The Association has a duty to repair or modify the common areas of the building that are causing the flooding

of Mr. Jackson's unit, which would include the installation of a backflow device on the north side.

Please insure that necessary repairs are completed on the North side of the building in a timely manner. Mr. Jackson wants avoid any unnecessary confrontation with the Association, but he will take all available legal action to him to insure that the necessary repairs are made.

Sincerely,

Gabriel Hardy

Motion – General Form (This form replaces CCMD-39)                    (2/24/05) CCG N702

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

City of Chicago
                                        **Plaintiff(s)**

                        v.                              No. 12M1402178

Courtyard or the fort Green Association
                                        **Defendant(s)**

TO: City of Chicago – Corporation Council # 90909

MOTION BY James C. Jackson FOR Fixing Elevation to act 5990 to

Requesting that the developer fort Forest be ordered to fix the Elevation
issue to my unit which is on the northside of my building as
1941 S. King Dr. Unit 2w Chicago IL per the recently reach settlement
in my court case # 11L8163. My unit was recently rehabed or 4/18/13
along with a least two units on the southside of the block, with
the same people I served BEFORE the developer has fixed the flood
issue. Its too fast to Resolve one if I get the limited
repairs be tougher to ... the flooding issue and fixes within a 30d
order to make the unit and address. The violation and ...
the building issue ... to ... once ... fixing ...

I (We) do hereby certify that a copy of this instrument was served upon all parties who have appeared
and have not previously been found by the Court to be in default for failure to plead.

Dated: 5/3/13

Attorney Certification

Atty. No.: "Pro Se -99500"

Name: James C. Jackson

Atty. for: _____

Address: 5990 S. King Dr. Unit 2w

City/State/Zip: Chicago IL 60637

Telephone: (773) 406-7893 (cell) (773) 493-8693 (hm)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

EXHIBIT
F

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

City of Chicago

Courtyard on the Lake Condo Association          No. 12 M1 402170

**NOTICE OF MOTION**

To: Corporation Counsel #96909
30 N. Lasalle. Rm 700
Chicago, IL 60602

On June 3rd, 2013 at 10:30 ☐.M. or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge William G. Pileggi or any Judge sitting in that Judge's stand, in the courtroom usually occupied by him/her, located at Rm 1109 Richard Daley Center 50 W. Washington Chicago, Illinois, and present

Name James C. Jackson                    Atty. No. _____  Pro Se  99500
Address 5511 S. Kimbark Unit 1W          Attorney for _____
City/State/Zip Chicago IL 60637          Telephone _____

☐ **PROOF OF SERVICE BY DELIVERY**

I, _____ ☐ the attorney ☐ non-attorney certify that on the _____ day of
_____, I served this notice by delivering a copy personally to each person to whom it is directed.

Date _____

_____
Signature/Certification

☐ **PROOF OF SERVICE BY MAIL**

I, James C. Jackson ☐ the attorney ☑ non-attorney certify that I served this notice by mailing
a copy to Kevatz Shefsic Nesbit at 750 Lr Coit Riey Code 350 IL 60685
and depositing the same in the U.S. Mail at U.S. Post Office 780 E 61st St Chicago IL 60637
at 11:42 ☐.M. on the 3rd day of May 2013 with proper postage prepaid.

Date May 3rd, 2013

_____
Signature/Certification

☐ **PROOF OF ELECTRONIC SERVICE (WHERE PERMISSIBLE)**

I, _____ ☐ the attorney ☐ non-attorney certify that on this _____ day of
_____, _____, I served this notice electronically ☐ via the Clerk's office E-filing system, or ☐ by
telefax transmission (_____ pages) with consent of the recipient where permissible under Ill. Sup Ct. R.11,
at _____ a.m./p.m., from _____
(Place)

Date _____

_____
Signature/Certification

NOTE: If more than one person is served by delivery or mail, additional proof of service may be made by attaching an additional sheet to this Notice of Motion.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Copy Distribution - White: 1. ORIGINAL - COURT FILE  Canary: 2. COPY  Pink: 3. COPY  Gold: 4. COPY/ORIGINAL - COURT FILE

**Motion - General Form** (This form replaces CCMD53) (2/24/05) CCG N702

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED

13 JUL 18 PM 3:06

CLERK OF THE CIRCUIT COURT
CIVIL DIVISION
CLERK DOROTHY BROWN

City Of Chicago

**Plaintiff(s)**

v.

No. 12M1402170

Courtyard on the Park Condominium Association

**Defendant(s)**

---

**TO:** City of Chicago – Corporation Counsel # 91919

---

**MOTION BY** Nanette Stevens **FOR** Fixing Flooding to Northside of Building

As a member of the Courtyard on the Park Condominium Association I am demanding that whatever flooding solution (back-flow device) that is being applied to the south side of the building, be also equally applied to the north side of the building where there has been an equal history of flooding, particularly in regards to unit 5940-1W (James Jackson). I am in possession of video, pictures and documentation that attest to this fact. Mr. Jackson as well as several other unit owners on the opposite side of the building have suffered water intrusion into their units as recent as 4/18/13 and 5/20/13. The first court date for these violations was last year on 9/24/12 and no progress has been made in respect to the flooding of these units (on BOTH sides of the building)! I am demanding an immediate acceleration of whatever process it takes to fix this persistent seven (7) year flooding issue. We demand a "camera in the pipe" on the northside of the building to check for gravity and any blockages, breakages, compatibility, etc (Mr. Jones Richmond promised this would be done). I also demand that the "pitching" at Mr. Jackson's rear door be fixed as this is believed to contribute to the water breach and subsequent water intrusions into his unit. Also, it may be possible to build a "trench" to tie Mr. Jackson's drain at his backdoor into the drain in the parking lot behind the building. In either case, I demand that these options be explored or something else be considered to stop and arrest this flooding problem.

I (We) do hereby certify that a copy of this instrument was served upon all parties who have appeared and have not previously been found by the Court to be in default for failure to plead.

**Dated:** July 17 , 2013

_____
**Attorney Certification**

**Atty. No.:** "Pro Se – 99500"

**Name:** Nanette Stevens

**Atty. for:** _____

**Address:** 5938 Unit 2, South King Drive

**City/State/Zip:** Chicago, IL 60637

**Telephone:** (773) 456-9170 or (773) 752-8377

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

(7/08/10) CCG N003

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

City of Chicago

v.    FILED-50

Courtyard on the Park Condominium Association

No. 12M1402170

13 JUL 18  PM 3:07

## NOTICE OF MOTION

CLERK OF THE CIVIL DIVISION

To: Corporation Counsel #91919

30 North Lasalle, Room 703

CLERK

DOROTHY BROWN

Chicago, IL 60662

On July 22nd , 2013 , at 9:30 a.m. p.m. or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge William G. Pileggi or any Judge sitting in that Judge's stead, in the courtroom usually occupied by him/her, located at Room 1109 Richard J. Daley Center, 50 West Washington St. Chicago , Illinois, and present

Name Nanette Stevens  Atty. No. _____  Pro Se 99500

Address 5938 Unit 2, South King Drive  Attorney for _____

City/State/Zip Chicago, IL  60637  Telephone _____

### ☐ PROOF OF SERVICE BY DELIVERY

I, _____, ☐ the attorney ☐ non-attorney certify that on the _____ day of _____, _____, I served this notice by delivering a copy personally to each person to whom it is directed.

Date _____, _____

Signature/Certification

### ☑ PROOF OF SERVICE BY MAIL

I, Nanette Stevens , ☐ the attorney ☑ non-attorney certify that I served this notice by mailing a copy to Jaffe & Berlin, L.L.C. at 111 West Washington Street, Suite 900, Chicago IL 60602

(address on envelope)

and depositing the same in the U.S. Mail at U.S. Post Office, 700 East 61st Street, Chicago, IL  60637

(place of mailing)

at 4:25 a.m. p.m. on the 18th day of July , 2013 , with proper postage prepaid.

Date July 17 , 2013

X Nanette Stevens

Signature/Certification

### ☐ PROOF OF ELECTRONIC SERVICE (WHERE PERMISSIBLE)

I, _____, ☐ the attorney ☐ non-attorney certify that on the _____ day of _____, _____, I served this notice electronically ☐ via the Clerk's Office E-filing system, or ☐ by telefax transmission (_____ pages) with consent of the recipient where permissible under Ill. Sup Ct. R.11, at fax no. _____, at _____ a.m./p.m., from _____

(Place)

Date _____, _____

Signature/Certification

NOTE: If more than one person is served by delivery or mail, additional proof of service may be made by attaching an additional sheet to this Notice of Motion.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

ORIGINAL - COURT FILE

Motion – General Form (This form replaces CCMD-3979)                           **(2/24/05) CCG N702**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED-50

13 JUL 18 PM 3:04

City Of Chicago

CLERK OF THE CIRCUIT COURT
CIVIL DIVISION   **Plaintiff(s)**

       **v.**         **CLERK**
      DOROTHY BROWN

**No.** 12M1402170

Courtyard on the Park Condominium Association

                        **Defendant(s)**

**TO:** City of Chicago - Corporation Counsel # 91919

**MOTION BY** Venell Slaughter            **FOR** Fixing Flooding to Northside of Building

As the legally installed Secretary of the Courtyard on the Park Condominium Association I am demanding that whatever flooding solution (back-flow device) that is being applied to the south side of the building, be also equally applied to the north side of the building where there has been an equal history of flooding, particularly in regards to unit 5940-1W (James Jackson). I am in possession of video, pictures and documentation that attest to this fact. Mr. Jackson as well as several other unit owners on the opposite side of the building have suffered water intrusion into their units as recent as 4/18/13 and 5/20/13. The first court date for these violations was last year on 9/24/12 and no progress has been made in respect to the flooding of these units (on BOTH sides of the building)! I am demanding an immediate acceleration of whatever process it takes to fix this persistent seven (7) year flooding issue. We demand a "camera in the pipe" on the northside of the building to check for gravity and any blockages, breakages, compatibility, etc (Mr. Jones Richmond promised this would be done). I also demand that the "pitching" at Mr. Jackson's rear door be fixed as this is believed to contribute to the water breach and subsequent water intrusions into his unit. Also, it may be possible to build a "trench" to tie Mr. Jackson's drain at his backdoor into the drain in the parking lot behind the building. In either case, I demand that these options be explored or something else be considered to stop and arrest this flooding problem.

     **I (We) do hereby certify that a copy of this instrument was served upon all parties who have appeared and have not previously been found by the Court to be in default for failure to plead.**

**Dated:** July 17            , 2013                                   

                                                          **Attorney Certification**

**Atty. No.:** "Pro Se - 99500"

**Name:** Venell Slaughter

**Atty. for:**

**Address:** 5936 Unit 3, South King Drive

**City/State/Zip:** Chicago, IL 60637

**Telephone:** (312) 446-5875 or (773) 370-6361

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

(7/08/10) CCG N003

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

City of Chicago

v.                                                        No. 12M1402170

Courtyard on the Park Condominium Association

FILED-50
13 JUL 18 PH 3:05
CLERK OF THE CIRCUIT COURT
CIVIL ACTION
DOROTHY BROWN          CLERK

### NOTICE OF MOTION

To: Corporation Counsel #91919

30 North Lasalle, Room 703

Chicago, IL 60662

On July 22nd _____, 2013 , at 9:30 _____ **a.m** **p.m.** or as soon thereafter as counsel

may be heard, I shall appear before the Honorable Judge William G. Pileggi _____ or any Judge sitting in that

Judge's stead, in the courtroom usually occupied by him/her, located at Room 1109 _____

Richard J. Daley Center, 50 West Washington St. Chicago _____, Illinois, and present

Name Venell Slaughter _____ Atty. No. _____ **Pro Se** 99500

Address 5936 Unit 3, South King Drive _____ Attorney for _____

City/State/Zip Chicago, IL 60637 _____ Telephone _____

### ☐ PROOF OF SERVICE BY DELIVERY

I, _____, ☐ the attorney ☐ non-attorney certify that on the _____ day of

_____, _____, I served this notice by delivering a copy personally to each person to whom it is directed.

Date _____

Signature/Certification

### ☑ PROOF OF SERVICE BY MAIL

I, Venell Slaughter _____, ☐ the attorney ☑ non-attorney certify that I served this notice by mailing

a copy to Kovitz, Shifrin & Nesbit _____ at 750 Lake Cook Road, Suite 350, Buffalo Grove, IL 60089

(address on envelope)

and depositing the same in the U.S. Mail at U.S. Post Office, 700 East 61st Street, Chicago, IL 60637

(place of mailing)

at 4:25 **a.m. p.m.** on the 18th day of July _____, 2013 , with proper postage prepaid.

Date July 17 _____ 2013

*Venell Slaughter*
Signature/Certification

### ☐ PROOF OF ELECTRONIC SERVICE (WHERE PERMISSIBLE)

I, _____, ☐ the attorney ☐ non-attorney certify that on the _____ day of

_____, _____, I served this notice electronically ☐ via the Clerk's Office E-filing system, or ☐ by

telefax transmission (_____ pages) with consent of the recipient where permissible under Ill. Sup Ct. R.11, at fax no. _____,

at _____ a.m./p.m., from _____

(Place)

Date _____

Signature/Certification

NOTE: If more than one person is served by delivery or mail, additional proof of service may be made by attaching an additional sheet to this Notice of Motion.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

ORIGINAL - COURT FILE

**IN THE CIRCUIT COURT OF COOK COUNTY**
**MUNICIPAL DEPARTMENT – FIRST DISTRICT**

THE CITY OF CHICAGO, a municipal corporation,

    Plaintiff,

                  v.

COURTYARD ON THE PARK CONDOMINIUM ASSOCIATION ,

CARLOS VILAMIL-HERRANS,

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
AS NOMINEE FOR MARIBELLA MORTGAGE, LLC,

JAMES JACKSON,

MAISHA PEARSON,

HOUSEHOLD FINANCE CORPORATION III,

URBAN PARTNERSHIP BANK AS SUCCESSOR TO SHORE
BANK,

KAREN LINDSEY,

JEWELLE HICKS,

FOREIT PROPERTIES LLC,

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
AS NIMINEE FOR PERL MORTGAGE,

FEDERAL HOME LOAN MORTGAGE CORPORATION,

RASHEEDA L FISHER ,

BMO HARRIS BANK NATIONAL ASSOCIATION.

WINIFRED COLLINS-LEE,

UNIVERSAL MORTGAGE CORPORATION,

A2 LOVE SUPREME TRUST, VITAL A HOUENOU, TRUSTEE
UNDER A CERTAIN TRUST AGREEMENT DATED JUNE 8TH,
2009,

JP MORGAN CHASE,

DENISE HUDSON,

JOSLYN KELLER,

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS
TRUSTEE FOR FFMLT 2006-FF13,

NANETTE STEVENS,

NEW YORK COMMUNITY BANK ,

FIRST AMERICAN BANK ,

US BANK NA, AS TRUSTEE FOR WACHOVIA MORTGAGE
LOAN TRUST, ASSET-BACKED CERTIFICATES, SERIES
2006-AMN1,

COLES PRICE ,

ANN CHAMPMAN,

PROSPECT MORTGAGE LLC ,

Case No.

# 12M1 402170

Address:    5936-48 S. DR.
                MARTIN LUTHER
                KING JR. DRIVE
                CHICAGO, IL 60637

Amount claimed per day: $5,000.00

Courtroom 1109

PROTIUM REO I LP ,

LCM PROPERTIES, I LLC ,

CARLI CURATOLA ,

DALLAS BELSER ,

BAC HOME LOANS SERVICING ,

LATRICE M. PHILLIPS ,

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
AS NOMINEE FOR CITIMORTGAGE INC.,

LAURA VELA ,

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
AS NOMINEE FOR CHICAGO FUNDING INC.,

LACHANDRA SIMON,

JESSICA REYNOLDS ,

MATTHEW REYNOLDS,

FIFTH THIRD MORTGAGE,

JULIO CRUZ ,

ANA GONZALES,

VENELL SLAUGHTER,

LATRESS SMITH,

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS AS
NOMINEE FOR WINTRUST MORTGAGE CORPORATION,

BRIAN MUNJODZI,

CHASTITY CRYER,

ABN AMRO MORTGAGE GROUP, INC.,

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS AS
NOMINEE FOR FIRST HORIZON HOME LOANS,

LILLIAN SERGENTON,

THE BANK OF NEW YORK TRUST CO.,

JOHN KOS,

BRENDA WALKER,

KEVIN A. JOHNSON,

JANET JOHNSON,

ANNA ABRAMOVITCH,

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS AS
NOMINEE FOR DRAPER AND KRAMER MORTGAGE CORP.,

STACIE DOUBLIM,

ARGENT MORTGAGE COMPANY LLC,

TENESHA HANDY,

ING BANK FSB,

CEDRIC ROBERTS,

RON DOWELL,

KAMILAH DOWELL,

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
AS NOMINEE FOR NFS LOANS, INC.,

CITIMORTGAGE, INC,

JAIME DAWKINS ,

REEDA HAWKINS,

NORTHERN TRUST COMPANY ,

PHOENIX BOND & INDEMNITY CO.,

UNKNOWN OWNERS and NONRECORD CLAIMANTS

     Defendants.

## COMPLAINT FOR EQUITABLE AND OTHER RELIEF

Plaintiff City of Chicago ("City"), by its attorney, Stephen R. Patton, Corporation Counsel, complains of the Defendants as follows:

### GENERAL ALLEGATIONS

#### Nature of the Case

1.     The City brings this action pursuant to its police power as a home rule unit under Article VII of the Illinois Constitution, which includes "the power to regulate for the protection of the public health, safety, morals and welfare." Ill. Const. art. VII, par. 6(a). As a further grant of authority, the City brings this action pursuant to the Injunctive Relief Statute for Building and Zoning Violations, 65 ILCS 5/11-13-15 (2004). Finally, the City brings this action pursuant to the Illinois Condominium Property ("Distressed Condominium") Act, 765 ILCS 605/14.5 (2009). By bringing this action, the City seeks, among other things, to abate the conditions at the property in question and to obtain equitable relief, civil penalties, attorney's fees and costs in this matter.

## THE PARTIES AND THE PROPERTY AT ISSUE

2.     The City is a municipal corporation organized and existing under the laws of the State of Illinois.

3.   Within the corporate limits of Chicago, there is a parcel of real estate legally described as:

a. UNDERLYING   PIN:   20-15-305-014,   20-15-305-015,   20-15-305-016,   20-15-305-028

b. UNIT PIN(s): 20-15-305-035-1001, 20-15-305-035-1002, 20-15-305-035-1003, 20-15-305-035-1004, 20-15-305-035-1005, 20-15-305-035-1006, 20-15-305-035-1007, 20-15-305-035-1008, 20-15-305-035-1009, 20-15-305-035-1010, 20-15-305-035-1011, 20-15-305-035-1012, 20-15-305-035-1013, 20-15-305-035-1014, 20-15-305-035-1015, 20-15-305-035-1016, 20-15-305-035-1017, 20-15-305-035-1018, 20-15-305-035-1019, 20-15-305-035-1020, 20-15-305-035-1021, 20-15-305-035-1022, 20-15-305-035-1023, 20-15-305-035-1024, 20-15-305-035-1025, 20-15-305-035-1026, 20-15-305-035-1027, 20-15-305-035-1028, 20-15-305-035-1029, 20-15-305-035-1030, 20-15-305-035-1031, 20-15-305-035-1032, 20-15-305-035-1033, 20-15-305-035-1034, 20-15-305-035-1035, 20-15-305-035-1036, 20-15-305-035-1037, 20-15-305-035-1038

c. LEGAL DESCRIPTION:
UNITS 5938-1, 5940-1W, 5940-1E, 5936-1, 5944-1W, 5944-1E, 5946-1, 5948-1, 5942-2N, 5940-2W, 5940-2E, 5938-2, 5936-2, 5942-2S, 5944-2W, 5944-2E, 5946-2, 5948-2, 5942-3N, 5940-3W, 5940-3E, 5938-3, 5936-3, 5942-3S, 5944-3W, 5944-3E, 5946-3, 5948-3, 5942-4N, 5940-4W, 5940-4E, 5938-4, 5942-4S, 5944-4W, 5944-4E, 5946-4, 5936-4, 5948-4, P-1, P-2, P-3, P-4, P-5, P-6, P-7, P-8, P-9, P-10, P-11, P-12, P-13, P-14, P-15, P-16, P-17, P-18, P-19, P-20, P-21, P-22, P-23, P-24, P-25, P-26, P-27, P-28, P-29, P-30, P-31, P-32, P-33, P-34, P-35, P-36, P-37, P-38, P-39, P-40, P-41, P-42, P-43, P-44, P-45, AND P-46, A LIMITED COMMON ELEMENT, TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS IN COURTYARD ON THE PARK CONDOMINIUMS, AS DELINEATED AND DEFINED IN THE DECLARATION RECORDED AS DOCUMENT NUMBER 0418227015, IN THE SOUTHWEST QUARTER OF SECTION 15, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIIRD PRINCIPAL MERIDIANS, IN COOK COUNTY, ILLINOIS.

This parcel is commonly known as 5936-48 S. DR. MARTIN LUTHER KING JR. DRIVE CHICAGO, IL 60637, (the "subject property").

4.   On information and belief, located on the subject property is a 4-story building, with 38 dwelling units and zero non-dwelling units.

5.   At all times relevant to this Complaint, the Defendants owned, managed, controlled, collected rents from, had a legal or equitable interest in, or contributed to the ongoing violations at, the subject property. More specifically:

a.   Unit 5938-1, PIN: 20-15-305-035-1001
The current owner is Carlos A Villamil-Herrans.  The mortgagee is Mortgage Electronic Registration Systems as nominee for Maribella Mortgage, LLC.  The last taxpayer of record is Carlos A Villamil-Herrans.

b.   Unit: 5940-1W, PIN: 20-15-305-035-1002
The current owner is James Conlee Jackson.  The mortgagee is Bank of New York Mellon Trust Company.  The last taxpayer of record is JAMES CONLEE JACKSON

c.   UNIT: 5940-1E, PIN: 20-15-305-035-1003
The current owner is Maisha Pearson.  The mortgagee is Household Finance Corporations III and Shorebank.  The last taxpayer of record is Foreit Properties, LLC.

d.   UNIT: 5936-1, PIN: 20-15-305-035-1004
The current owner is Karen Lindsey.  The last taxpayer of record is Foreit Properties, LLC.

5

e.  UNIT: 5944-1W,  PIN: 20-15-305-035-1005
The current owner and last taxpayer of record is Jewelle Hicks.  The mortgagee is Mortgage Electronic Registration Systems as nominee for Perl Mortgage Inc.

f.  UNIT: 5944-1E, PIN: 20-15-305-035-1006
The current owner is Federal Home Loan Mortgage Corporation.  The last taxpayer of record is Rasheeda Fisher.

g.  UNIT: 5946-1, PIN: 20-15-305-035-1007
The current owner and last taxpayer of record is Forfeit Properties LLC.  The mortgagee is Harris, NA.

h.  UNIT: 5948-1, PIN: 20-15-305-035-1008
The current owner and last taxpayer of record is Winifred Collins Lee.  The mortgagee  is Universal Mortgage Corporation.

i.  UNIT: 5942-2N, PIN: 20-15-305-035-1009
The current owner is A2 Love Supreme Trust, Vital A Houenou as trustee.  The mortgagee is JP Morgan Chase.  The last taxpayer of record is Vital A Houenou.

j.  UNIT: 5940-2W, PIN: 20-15-305-035-1010
The current owner and last taxpayer of record is Denise Hudson.  The mortgagee is Harris Trust and Savings Bank.

k.  UNIT: 5940-2E, PIN: 20-15-305-035-1011
The current owner and last taxpayer of record is Joslyn Keller.  The mortgagee is Deutsche Bank National Trust Co.

l.  UNIT: 5938-2, PIN: 20-15-305-035-1012
The current owner and last taxpayer of record is Nanette Stevens.  The mortgagee is First American Bank and New York Community Bank.

m. UNIT: 5936-2, PIN: 20-15-305-035-1013
The current owner and last taxpayer of record is US BK.

n.  UNIT: 5942-2S, PIN: 20-15-305-035-1014
The current owners are Colles Price and Ann Champman.  The mortgagee is Prospect Mortgage LLC.  The last taxpayer of record is Protium REO I LP.

o.  UNIT: 5944-2W, PIN: 20-15-305-035-1015
The current owner is LCM Properties I LLC.  The last taxpayer of record is Carli Curatola.

p.  UNIT: 5944-2E, PIN: 20-15-305-035-1016
The current owner and last taxpayer of record is Dallas Belser.  The mortgagee is BAC Home Loans.

q.  UNIT: 5946-2, PIN: 20-15-305-035-1017
The current owner and last taxpayer of record is Latrice M. Phillips.  The mortgagee is Mortgage Electronic Registration Systems a nominee for CitiMortgae.

r.  UNIT: 5948-2, PIN: 20-15-305-035-1018
The current owner is Laura Vela.  The mortgagee is Mortgage Electronic Registration Systems as nominee for Chicago Funding Inc. The last taxpayer of record is Foreit Properties, LLC.

s.   UNIT: 5942-3N, PIN: 20-15-305-035-1019
     The current owner is A2 Love Supreme Trust, Vital A Houenou as trustee.  The mortgagee is
     JP Morgan Chase.  The last taxpayer of record is Vital A Houenou.

t.   UNIT: 5940-3W, PIN: 20-15-305-035-1020
     The current owner is Lachandra Simon.  The mortgagee is JP Morgan Chase.  The last
     taxpayer of record is Foreit Properties, LLC.

u.   UNIT: 5940-3E, PIN: 20-15-305-035-1021
     The current owners and last taxpayer of record is Jessica Reynold and Matthew Reynolds.
     The mortgagee is Fifth Third Mortgage.

v.   UNIT: 5938-3, PIN: 20-15-305-035-1022
     The current owners and last taxpayers of record are Julio Cruz and Ana Gonzales.

w.   UNIT: 5936-3, PIN: 20-15-305-035-1023
     The current owners and last taxpayers of record are Venell Slaughter and Latress Smith.  The
     mortgagee is Mortgage Electronic Registration Systems as nominee for Wintrust Mortgage
     Corp.

x.   UNIT: 5942-3S, PIN: 20-15-305-035-1024
     The current owner and last taxpayer of record is Brian Munjodzi.  The mortgagee is BAC
     Home Loans.

y.   UNIT: 5944-3W, PIN: 20-15-305-035-1025
     The current owner and last taxpayer of record is Foreit Properties LLC.  Phoenix Bond &
     Indemnity Co. is the tax purchaser.

z.   UNIT: 5944-3E, PIN: 20-15-305-035-1026
     The current owner is Federal Home Loan Mortgage Corporation.

aa.  UNIT: 5946-3, PIN: 20-15-305-035-1027
     The current owner and last taxpayer of record is Chastity Cryer.  The mortgages are ABN
     AMRO Mortgage Group and Mortgage Electronic Registration Systems as nominee for First
     Horizon Home Loans.

bb.  UNIT: 5948-3, PIN: 20-15-305-035-1028
     The current owner and last taxpayer of record is Lillian Sergenton. The mortgagee is Bank NY
     Trust Co.

cc.  UNIT: 5942-4N, PIN: 20-15-305-035-1029
     The current owners are John C Kos and Brenda Kos.  The mortgagee is Fifth Third Mortgage
     Co.  The last taxpayer of record is Foreit Properties, LLC.

dd.  UNIT: 5940-4W, PIN: 20-15-305-035-1030
     The current owners are John C Kos and Brenda Kos.  The last taxpayer of record is Kevin &
     Janet Johnson.

ee.  UNIT: 5940-4E, PIN: 20-15-305-035-1031
     The current owner and last taxpayer of record is Anna Abramovitch.  The mortgagee is
     Mortgage Electronic Registration Systems as nominee for Draper and Kramer Mortgage Corp.

ff.  UNIT: 5938-4, PIN: 20-15-305-035-1032
     The current owner and last taxpayer of record is Stacie Doublin.  The mortgagee is Argent
     Mortgage Company LLC.

7

gg. UNIT: 5942-4S, PIN: 20-15-305-035-1033
   The current owner and last taxpayer of record is Tanesha Handy. The mortgagees are ING
   Bank, FSB and First American Bank.

hh. UNIT: 5944-4W, PIN: 20-15-305-035-1034
   The current owners and last taxpayers of record are Rom Dowell and Kamilah Dowell. The
   mortgagee is Mortgage Electronic Registration Systems as nominee for NFS Loans Inc.

ii. UNIT: 5944-4E, PIN: 20-15-305-035-1035
   The current owner is CitiMortgae Inc. The last taxpayer of record is Jamie Dawkins.

jj. UNIT: 5946-4, PIN: 20-15-305-035-1036
   The current owner and last taxpayer of record is Reeda Hawkins. The mortgagee is Northern
   Trust Co.

kk. UNIT: 5936-4, PIN: 20-15-305-035-1037
   The current owner and last taxpayer of record is Cedric Roberts. The mortgagee is Deutsche
   Bank National Trust Co.

ll. UNIT: 5948-4, PIN: 20-15-305-035-1038
   The current owners and last taxpayers of record are Julio Cruz and Ana Gonzales.

mm.    The developer of the property was Foreit Properties LLC.

nn. COURTYARD ON THE PARK CONDOMINIUM ASSOCIATION is the registered corporate
   not-for-profit condominium association.

oo. Defendants also include all unknown owners and non-record claimants.

## Violations of the Chicago Municipal Code

7.     On MARCH 22, 2012, and on each succeeding day, and on numerous
other occasions, Defendants have failed to comply with the Municipal Code of Chicago as
follows:

1) NC2111
   Failed to obtain certificate of occupancy before occupying space for multiple dwelling buildings of
   four units or more. (13-36-010, 13-36-040, 13-36-050)
   FAILURE TO OBTAIN CERTIFICATE OF OCCUPANY AS REQUIRED UNDER PERMIT
   #10035968.

2) NC2011
   Performed or allowed work to be performed without submitting plans prepared, signed and sealed
   by a licensed architect or registered structural engineer for approval and without obtaining a permit
   to perform the work. (13-32-010, 13-32-040, 13-40-020, 13-12-050)
   SUBMIT THE PLANS AND PERMITS UTILIZED TO RENVOATE ENTIRE BUILDING UNDER
   PERMIT #100035968.

3) CN 070024
   Failed to repair or replace defective or missing members of porch systems. (13-196-570, 13-196-
   641)
   ALL SYSTEMS WITH THE FOLLOWING, BUT NOT LIMITED TO, DEFECTS/DEFICIENT
   CONDITIONS. 1. UNKNOWN FOOTING AND PEDESTAL UNDER COLUMNS, SEE SURFACE
   POURED CONCRETE BLOCKS. 2 COLUMNS WITH IMPROPER LAP JOINT AND LOCATIONS,
   TOO CLOSE TO BEAMS AND INSUFFICIENT BOLTS AND SIZE. 3 RIM JOISTS ACTING AS
   BEAMS UNDER SIZED AND NOT ANCHORED TO BRICK WALL, MISSING METAL ANCHOR
   BRACKETS AND ONLY TOE NAILED AT COLUMNS. 6X6 BEAMS WITHOUT PROPER WALL

8

AND COLUMN METAL BRACKETS. 4. DECK JOIST OVER SPANNED, VISIBILE SAG AT FRONT JOISTS. UNDER SIZED HANGERS ANCHORED WITH MPROPER FASTENERS. 5. STRINGERS TOE NAILED AT ANCHOR AREAS. 6. GUARD RAILS ANCHORED TO WALL WITH CUT NAILS OR TAP-CON SCREWS, PICKETS ANCHORED OUTSIDE OF RAILING.  7. SUBMIT PLANS TO UPGRADE EXTERIOR STAIR SYSTEMS.

4)   CN 074024
Failed to provide porch which is more than two risers  high with rails not less than three and one-half feet above the floor of the porch.  (13-196-570(b), 13-196-641)
MISSING GUARD RAILING AND HAND RAILS.

5)   CN 1194029
Provide
AS PER 18-27-230.70(a) A TWO HOUR FIRE RATED REQUIREMENT AT THE WALL AND CEILING IS REQUIRED, SEE EXPOSED CEILING JOISTS AND UNDER RATED AND UNFINISHED WALL SECTIONS, OPEN PIPE PENETRATIONS.  ELECTRICAL ROOM.

6)   CN 012022
Failed to construct floor over basement with materials of at least one hour fire resistance other than in single family and two family dwellings.  (13-60-200)
EXPOSED CEILING JOISTS AT STORAGE LCOKER AREAS AND AN UNRATED ACOUSTICAL PANEL CEILING AT THE HALL COVERING EXPOSED JOISTS.

7)   CN 105025
Repair or replace door frame. (13-196-550)
BROKEN DOOR FRAME AT LOCK STRICKE PLATE AREA.

8)   PL 168014
Repair or replace house drain to receive and convey discharges from plumbing fixtures to sewer.  (18-29-102.3)
ALL BASEMENT UNITS.

9)   PL 232050
Remove roughed in water supply, soil, waste, and vent piping installed without permit.  (13-12-050, 13-32-010)
ALL UNDER GROUND OF ALL BASEMENT UNITS.

10)  PL 233020
Remove water pressure ejector or siphon.  (18-29-608.17.12) — Notice) on 8/23/12
ALL BASEMENT UNITS.          that this was done,

**\*\*End of Violations\*\***

**Count I - Civil Penalties Against the Owners**

8.      The City realleges and incorporates paragraphs 1 through 7 of the General Allegations as paragraph 8 of Count I.

9.      Section 13-12-020 of the Municipal Code of Chicago provides that: "the owner, his agent for the purpose of managing, controlling or collecting rents and any other person managing or controlling a building or premises in any part of which there is a violation of the provisions of this Code … shall be liable for any violation therein, existing or occurring, or which may have existed or occurred, at or during any time when such person is or was the person owning or managing, controlling, or acting as agent in regard to said buildings or premises and is subject to injunctions, abatement orders or other remedial orders."  Municipal Code of Chicago, Ill. ("MCC") § 13-12-020.

10.     Section 13-12-040 further states: "Any violation of . . . any of the provisions of this code . . . shall be punishable by a fine of not less than $200.00 and not more than $500.00, and each day such violation shall continue shall constitute a separate and distinct offense for which a fine herein provided shall be imposed." MCC § 13-12-040.

11.     The City seeks the maximum fine for each day against

CARLOS VILAMIL-HERRANS, owner of 5938-1

JAMES JACKSON, owner of 5940-1W

MAISHA PEARSON, owner of 5940-1E

KAREN LINDSEY, Owner of 5936-1

JEWELLE HICKS, owner of 5944-1W

FEDERAL HOME LOAN MORTGAGE CORPROATION, owner of 5944-1E and 5944-3E

WINIFRED COLLINS-LEE, owner of 5948-1

A2 LOVE SUPREME TRUST, VITAL A HOUENOU, TRUSTEE UNDER A CERTAIN TRUST AGREEMENT DATED JUNE 8TH, 2009, owner of 5942-2N and 5942-3N

DENISE HUDSON, owner of 5940-2W

JOSLYN KELLER, owner of 5940-2E

NANETTE STEVENS, owner of 5938-2

US BANK NA, AS TRUSTEE FOR WACHOVIA MORTGAGE LOAN TRUST, ASSET-BACKED CERTIFICATES, SERIES 2006-AMN1, owner of 5936-2

COLES PRICE , owner of 5942-2S

ANN CHAMPMAN, owner of 5942-2S

LCM PROPERTIES, I LLC , owner of 5944-2W

CARLI CURATOLA , last taxpayer of record of 5944-2W

DALLAS BELSER , owner of 5944-2E

LATRICE M. PHILLIPS , owner of 5946-2

LAURA VELA , owner of 5948-2

LACHANDRA SIMON, owner of 5940-3W

JESSICA REYNOLDS , owner of 5940-3E

MATTHEW REYNOLDS,  owner of 5940-3E

JULIO CRUZ , owner of 5938-3 and 5948-4

ANA GONZALES, owner of 5938-3 and 5948-4

VENELL SLAUGHTER, owner of  5936-3

LATRESS SMITH, owner of  5936-3

BRIAN MUNJODZI, owner of 5942-3S

CHASTITY CRYER, owner of 5946-3

LILLIAN SERGENTON, owner of 5948-3

JOHN KOS, owner of 5942-4N and 5940-4W

BRENDA WALKER, owner of 5942-4N and 5940-4W

ANNA ABRAMOVITCH, owner of 5940-4E

STACIE DOUBLIM, owner of 5938-4

10

TENESHA HANDY, owner of 5942-4S

RON DOWELL, owner of 5944-4W

KAMILAH DOWELL, owner of 5944-4W

CITIMORTGAGE, INC, owner of 5944-4E

REEDA HAWKINS, owner of 5946-4

("Owners"), have maintained the building on the subject property, or allowed the building on the subject property to remain, in violation of the Chicago Municipal Code.

WHEREFORE, the City prays for a fine against the defendant Owners, as provided under 13-12-020, for each day said violations have existed and/or exist, said fine computed in accordance with Section 13-12-040 of the Municipal Code of Chicago.

## Count II- Injunctive Relief

12.    The City realleges and incorporates paragraphs 1 through 7 of the General Allegations as paragraph 12 of Count II.

13.    All buildings in the City of Chicago must meet the minimum requirements for electrical, plumbing, heating and ventilation and general building requirements.  Municipal Code of Chicago § 13-196-010 (2000) ("Every existing building shall comply with the code requirements in force and applicable to such building. . . .").

14.    The subject property fails to meet the minimum requirements of the Code as described in the preceding paragraphs.

15.    Municipal Code of Chicago Chapter 18-27 sets forth the electrical requirements for buildings in Chicago.  The defendants who own, control or otherwise manage the subject property have violated, and continue to violate, this provision by failing to provide legally installed, operable electricity on the subject property.

16.    Municipal Code of Chicago Chapter 18-29 sets forth the plumbing requirements for buildings in Chicago.  The defendants who own, control or otherwise manage the subject property have violated, and continue to violate, this provision by failing to provide legally installed, operable plumbing with hot and cold water on the subject property.

17.    Municipal Code of Chicago Chapter 18-28 sets forth the heating requirements for buildings in Chicago.  The defendants who own, control or otherwise manage the subject property have violated, and continue to violate, this provision by failing to provide legally installed, operable heating on the subject property.

18.    Municipal Code of Chicago Chapter 18-28 sets forth the ventilation requirements for buildings in Chicago.  The defendants who own, control, or otherwise manage the subject property have violated, and continue to violate, this provision by failing to provide legally installed adequate ventilation on the subject property.

19.    The Injunction Statute for Building and Zoning Violations provides, in pertinent part, that:

11

In case any building or structure, including fixtures, is constructed . . . or maintained, or any building or structure, including fixtures, or land, is used in violation of an ordinance or ordinances . . . the proper local authorities of the municipality . . . in addition to other remedies, may institute any appropriate action or proceeding . . . (4) to restrain, correct or abate the violation.

See 65 ILCS 5/11-31-2(a) (2004); see also Municipal Code of Chicago § 13-12-070 (2000) (City may obtain an injunction requiring compliance with the provisions of the Building Code.).

20.     The Illinois Municipal Code provides, in pertinent part, that:

If the appropriate official of any municipality determines, upon due investigation, that any building or structure therein fails to conform to the minimum standards of health and safety as set forth in the applicable ordinances of such municipality, and the owner or owners of such building or structure fails, after due notice, to cause such property so to conform, the municipality may make application to the circuit court for an injunction requiring compliance with such ordinances or for such other order as the court may deem necessary or appropriate to secure such compliance.

See 65 ILCS 5/11-31-2 (2004)

21.     Preliminary and permanent injunctive relief is necessary to end the conduct of those defendants who own, control or otherwise manage the subject property in violation of the requirements of the Municipal Code of Chicago.

22.     Moreover, the failure of the defendants who own, control or otherwise manage the subject property to maintain the subject property according to the minimum requirements of the Municipal Code of Chicago constitutes an ongoing injury to the public health, safety and welfare, for which there is no adequate remedy at law. See Municipal Code of Chicago §13-12-010 (2000) ("In interpreting and applying said provisions of this code, such provisions shall in every instance be held to be the minimum requirements adopted for the protection and promotion of the public health, safety and welfare."). The prosecution and fining alone of these defendants will not promptly abate the nuisance.

23.     Where a statute or ordinance authorizes injunctive relief, a municipality need only show that the statute or ordinance was violated to obtain injunctive relief. See Allied Waste Trans., 334 Ill. App. 3d at 228-29; Krisjon, 246 Ill. App. 3d at 959; Piotrowski, 215 Ill. App. 3d at 834-35.

WHEREFORE, the City prays:

A.     For a temporary and permanent injunction requiring the defendant owners to correct the violations alleged in the complaint and to restrain future violations permanently, pursuant to 65 ILCS 5/11-31-1 (a), 5/11-31-2 and 5/11-13-15.

B.     For the appointment of receiver, if necessary, to correct the conditions alleged in the First Amended Complaint with the full powers of receivership including the right to issue and sell receivers certificates in accordance with Section 5/11-31-2 of Chapter 65 of the Illinois Compiled Statutes, as amended.

12

C.    For an order authorizing the City to demolish, repair, enclose or clean up said premises, if necessary, and a judgment against the defendant unit owners and a lien on the subject property for these costs in accordance with Section 5/11-31-1 (a) of Chapter 65 of the Illinois Compiled Statutes, as amended.

D.    If appropriate and under proper petition, for an order declaring the property abandoned under Section 5/11-31-1 (d) of Chapter 65 of the Illinois Compiled Statutes, as amended, and for an order granting City of Chicago a judicial deed to the property if declared abandoned.

E.    If a statutory lien is obtained in this proceeding under Section 5/11-31-1 or 5/11-31-2 of Chapter 65 of the Illinois Compiled Statutes, as amended, for an order permitting foreclosure of said lien in this proceeding.

F.    For reasonable attorney fees and litigation and court costs.

G.    For such other and further relief as may be necessary in the premises and which the court shall deem necessary.

Respectfully submitted,

Stephen R. Patton
Corporation Counsel

By:_____
Greg Janes
Assistant Corporation Counsel

Attorney for Plaintiff
30 N. LaSalle, #700
Chicago, IL 60602
(312) 742-0336
Atty No. 90909

**VERIFICATION BY CERTIFICATION**

Pursuant to Section 5/1-109 of the Code of Civil Procedure, the undersigned certifies that he/she is an assistant corporation counsel for the City of Chicago and that he/she is the duly authorized agent of the Plaintiff for the purpose of making this certification, and that the statements set forth in this Petition are true and correct, except as to matters therein stated to be on information and belief and as to such matters he certifies as aforesaid that he/she believes the same to be true.

_____
Greg Janes
Assistant Corporation Counsel