**Hearing Date: May 15, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline: May 2, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

**MORRISON & FOERSTER LLP**
250 West 55th St.
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for The ResCap Borrower*
*Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------
                                              )
In re:                                        )          Case No. 12-12020 (MG)
                                              )
RESIDENTIAL CAPITAL, LLC, et al.,             )          Chapter 11
                                              )
                          Debtors.            )          Jointly Administered
                                              )
----------------------------------------------------------------

## NOTICE OF OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST
## TO CLAIM NUMBER 4167 FILED BY GERALD GANDRUP

**PLEASE TAKE NOTICE** that the undersigned has filed the attached *Objection of The ResCap Borrower Claims Trust to Claim Number 4167 Filed by Gerald Gandrup* (the "Objection").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Objection will take place on **May 15, 2014 at 10:00 a.m. (Prevailing Eastern Time)** before the Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Room 501.

**PLEASE TAKE FURTHER NOTICE** that responses, if any, to the Objection must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed

electronically by registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to be received no later than **May 2, 2014 at 4:00 p.m. (Prevailing Eastern Time)**, upon: (a) counsel to The ResCap Borrower Claims Trust, Morrison & Foerster LLP, 250 W. 55th Street, New York, NY 10019 (Attention: Norman S. Rosenbaum and Jordan A. Wishnew); (b) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY   10014 (Attention: Linda A. Riffkin and Brian S. Masumoto); (c) the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408; and (d) The ResCap Borrower Claims Trust, Polsinelli PC, 900 Third Avenue, 21st Floor, New York, NY 10022, (Attn: Daniel J. Flanigan).

PLEASE TAKE FURTHER NOTICE that if you do not timely file and serve a written response to the relief requested in the Objection, the Bankruptcy Court may deem any opposition waived, treat the Objection as conceded, and enter an order granting the relief requested in the Objection without further notice or hearing.

Dated:  April 11, 2014
         New York, New York

Respectfully Submitted,

/s/ Norman S. Rosenbaum
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*

ny-1135273

**Hearing Date:  May 15, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline:  May 2, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for The ResCap Borrower*
*Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------)
In re:                                                       )        Case No. 12-12020 (MG)
                                                             )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,        )        Chapter 11
                                                             )
                                Debtors.        )        Jointly Administered
-----------------------------------------------------------------------)

**OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST**
**<u>TO CLAIM NUMBER 4167 FILED BY GERALD GANDRUP</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................ 1

JURISDICTION, VENUE AND STATUTORY PREDICATE ................................... 3

BACKGROUND .............................................................................. 3

    A.    Chapter 11 Case Background.............................................. 3

    B.    The Gandrup Loan ......................................................... 5

    C.    The Gandrup Litigation.................................................... 7

    D.    The Gandrup Claim........................................................ 9

RELIEF REQUESTED........................................................................ 10

OBJECTION.................................................................................. 10

    A.    Legal Standard ............................................................ 11

    B.    Mr. Gandrup's Right To Challenge The Foreclosure Sale Was Terminated....... 12

    C.    Gandrup Fails To Rebut The Presumption That The Foreclosure Sale Was Proper .................................................................... 12

    D.    Mr. Gandrup's Entire Complaint Fails As He Did Not Tender The Loan Amount .................................................................. 15

    E.    Securitizing A Loan Is Not Improper ................................... 16

    F.    Mr. Gandrup's Claim for Violation of TILA Fails ................... 18

    G.    Mr. Gandrup's Claims Under RESPA Fail.......................... 20

    H.    Mr. Gandrup's Fraud Claim Fails ...................................... 21

    I.    Mr. Gandrup's Claim For Civil RICO Violations Fails ................... 24

    J.    Mr. Gandrup's Rescission Claim Fails Because Plaintiff Cannot Void the Deed Of Trust Without Repaying His Debt............................... 25

    K.    Mr. Gandrup's Invasion of Constitutional Right to Privacy Claim Fails ............ 26

    L.    The Amount of the Gandrup Claim is Not Supported by Sufficient Documentation .......................................................... 28

NOTICE....................................................................................... 29

CONCLUSION................................................................................ 29

Page

## **Exhibit List**

Exhibit 1        The Gandrup Claim

Exhibit 2        Proposed Order

Exhibit 3        Delehey Declaration

            Exhibit A        Request Letter

            Exhibit B        Deed of Trust

            Exhibit C        Substitution of Trustee

            Exhibit D        Payment Records

            Exhibit E        Notice of Default

            Exhibit F        Notice of Trustee's Sale

            Exhibit G        Trustee's Deed Upon Sale

            Exhibit H        Dismissal Order

            Exhibit I        Second Amended Complaint

            Exhibit J        Notice of Voluntary Dismissal

            Exhibit K        Voluntary Dismissal Order

Exhibit 4        Rosenbaum Declaration

ny-1135273

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.,
  85 Cal.App.4th 1279 (2001) ...................................................13

Abdallah v. United Savings Bank,
  43 Cal.App.4th 1101 (1996) ...........................................15, 25

Aguilar v. Bocci,
  39 Cal.App.3d 475 (1974) ....................................................25

Arnolds Management Corp. v. Eischen,
  158 Cal.App.3d 575 (1984) ...................................................15

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)........................................................11, 21

Associated General Contractors of California, Inc. v. California State Council of
  Carpenters,
  459 U.S. 519 (1983)...............................................................12

Ballengee v. Sadlier,
  179 Cal.App.3d 1 (1986) .......................................................12

Bascos v. Federal Home Loan Mortgage Corp.,
  No. CV 11-3968-JFW, 2011 WL 3157063 (C.D. Cal. July 22, 2011) ...................................17

Benham v. Aurora Loan Services,
  No. C-09-2059 SC, 2009 WL 2880232 (N.D. Cal. Sep. 1, 2009) ...........................................16

Betancourt v. Countrywide Home Loans, Inc.,
  344 F. Supp. 2d 1253 (D. Colo. 2004)...................................................19

Blaylock v. First American Title Insurance Co.,
  504 F. Supp. 2d 1091 (W.D. Wash. 2007).............................................20

Bumb v. Bennett,
  51 Cal.2d 294 (1958) ............................................................18

Bundren v. Superior Court,
  145 Cal.App.3d 784 (1983) ...................................................27

Chaset v. Fleer/Skybox International, LP,
  300 F.3d 1083 (9th Cir. 2002) ..............................................24

Chua v. IB Property Holdings, LLC,
  No. CV 11-05894, 2011 WL 3322884 (C.D. Cal. Aug. 1, 2011)...........................................14

Competitive Technologies v. Fujitsu Ltd.,
  286 F. Supp. 2d 1118 (N.D. Cal. 2003) ...........................................................................22

Copsey v. Sacramento Bank,
  133 Cal. 659 (1901) ...........................................................................................................25

Edwards v. First American Corp.,
  517 F. Supp. 2d 1199 (C.D. Cal. 2007) ............................................................................20

Edwards v. Marin Park, Inc.,
  356 F.3d 1058 (9th Cir. 2004) ...........................................................................................24

F.P.C.I. Re-hab 01 v. E & G Investments, Ltd.,
  207 Cal.App.3d 1018 (1989) .............................................................................................15

Feinberg v. Bank of New York (In re Feinberg),
  442 B.R. 215 (Bankr. S.D.N.Y. 2010)...............................................................................10

Fontenot v. Wells Fargo Bank, N.A.,
  198 Cal.App.4th 256 (2011) ..............................................................................................18

Hafiz v. Greenpoint Mortgage Funding, Inc.,
  652 F. Supp. 2d 1039 (N.D. Cal. 2009) ............................................................................16

Hatch v. Collins,
  225 Cal.App.3d 1104 (1990) .............................................................................................13

Hill v. National Collegiate Athletic Association,
  7 Cal. 4th 1 (1994) .......................................................................................................26, 27

In re Correia,
  452 B.R. 319 (BAP 1st Cir. 2011) .....................................................................................17

In re DePugh,
  409 B.R. 125 (Bankr. S.D. Tex. 2009) ..............................................................................28

In re Gilead Sciences Securities Litigation,
  536 F.3d 1049 (9th Cir. 2008) ...........................................................................................11

In re Hight,
  393 B.R. 484 (Bankr. S.D. Tex. 2008) ..............................................................................28

In re Minbatiwalla,
  424 B.R. 104 (Bankr. S.D.N.Y. 2010)...............................................................................28

iv

In re Oneida Ltd.,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co., L.P. v.
    Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010) .........10

In re Porter,
    374 B.R. 471 (Bankr. D. Conn. 2007) ....................................................................................28

In re Rockefeller Center Properties,
    272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Center
    Properties (In re Rockefeller Center Properties), 266 B.R. 52 (S.D.N.Y. 2001), aff'd,
    46 Fed. Appx. 40 (2d Cir. 2002) ............................................................................................10

Ingle Manufacturing Co. v. Scales,
    36 Cal.App. 410 (1918) .........................................................................................................18

International Federation of Professional and Technical Engineers, Local 21, AFL-CIO v.
    Superior Court,
    42 Cal.4th 319 (2007) ...........................................................................................................26

Jenkins v. JP Morgan Chase Bank, N.A.,
    216 Cal.App.4th (2013) .........................................................................................................17

Johnson v. Riverside Healthcare Systems,
    534 F.3d 1116 (9th Cir. 2008) ..............................................................................................11

Karlsen v. American Savings & Loan Association,
    15 Cal.App.3d 112 (1971) ...............................................................................................15, 25

Lane v. Vitek Real Estate Industries Group,
    713 F. Supp. 2d 1092 (E.D. Cal. 2010)..................................................................................16

Leonard v. Bank of America,
    16 Cal.App.2d 341 (1936) .....................................................................................................25

Marceau v. Blackfeet Housing Authority,
    540 F.3d 916 (9th Cir. 2008) ................................................................................................11

Melendrez v. D & I Inv., Inc.,
    127 Cal.App.4th 1238 (2005) ...............................................................................................13

Moeller v. Lien,
    25 Cal.App.4th 822 (1994) ...................................................................................................12

Mulato v. WMC Mortgage Corp.,
    No. C 09-03443 CW, 2010 WL 1532276 (N.D. Cal. Apr. 16, 2010)......................................16

Multifamily Captive Group, LLC v. Assurance Risk Managers Inc.,
    578 F. Supp. 2d 1242 (E.D. Cal. 2008)..................................................................................22

Navarro v. Block,
        250 F.3d 729 (9th Cir. 2001) ................................................................................11

Nguyen v. Calhoun,
        105 Cal.App.4th 428 (2003) .................................................................................13

Pantoja v. Countrywide Home Loans, Inc.,
        640 F. Supp. 2d 1177 (N.D. Cal. 2009) ..............................................................17

Peter J. Solomon Co., L.P. v. Oneida, Ltd.,
        No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010) ..............10

Pioneer Electronics (USA), Inc. v. Superior Court,
        40 Cal. 4th 360 (2007) ........................................................................................26

Robinson Helicopter Co., Inc. v. Dana Corp.,
        34 Cal.4th 979 (2004) .........................................................................................22

Rosal v. First Federal Bank of California,
        671 F. Supp. 2d 1111 (N.D. Cal. 2009) ....................................................22, 23, 24

Sedima, S.P.R.L. v. Imrex Co.,
        473 U.S. 479 (1985)............................................................................................24

Semar v. Platte Valley Federal Savings and Loan Association,
        791 F.2d 699 (9th Cir. 1986) ...............................................................................19

Smith v. Allen,
        68 Cal.2d 93 (1968) ...........................................................................................12

Smith v. Capital One Financial Corp.,
        No. C 11-3425 PJH, 2012 WL 3138024 (N.D. Cal., Aug. 1, 2012).......................27

Snow v. First American Title Insurance Co.,
        332 F.3d 356 (5th Cir. 2003) ...............................................................................20

Sprewell v. Golden State Warriors,
        266 F.3d 979 (9th Cir. 2001) ...............................................................................11

Stansfield v. Starkey,
        220 Cal.App.3d 59 (1990) ...................................................................................22

Swartz v. KPMG LLP,
        476 F.3d 756 (9th Cir. 2007) ..........................................................................23, 24

U.S. Cold Storage v. Great Western Savings & Loan Association,
        165 Cal.App.3d 1214 (1985) ...............................................................................15

Vess v. Ciba-Geigy Corp. USA,
        317 F.3d 1097 (9th Cir. 2003) ..............................................................................23

ny-1135273

Vignolo v. Miller,
   120 F.3d 1075 (9th Cir. 1997) ..............................................................11

Warren v. Fox Family Worldwide, Inc.,
   328 F.3d 1136 (9th Cir. 2003) ..............................................................11

Warth v. Seldin,
   422 U.S. 490 (1975).............................................................................18

Watts v. Decision One Mortgage Co.,
   LLC, No. 09 CV 0043 JM (BLM), 2009 WL 648669 (S.D. Cal. Mar. 9, 2009)....................21

Yamamoto v. Bank of N.Y.,
   329 F.3d 1167 (9th Cir. 2003) ..............................................................20

**STATUTES**

11 U.S.C. 502(b)(1) ....................................................................10, 28

11 U.S.C. § 502(a) ..........................................................................10

12 U.S.C. § 2601 ............................................................................20

12 U.S.C. § 2614 ............................................................................20

15 U.S.C. § 1602(g) .........................................................................19

15 U.S.C. § 1635(f) .........................................................................19

15 U.S.C. § 1640(e) .........................................................................19

Cal. Civ. Code § 1709, 1710 .................................................................22

Cal. Civ. Code § 2924 .......................................................................12

Cal. Code Civ. Proc. § 338(d) ...............................................................21

California Civil Code Section 2924(a)(1).....................................................14

**OTHER AUTHORITIES**

12 C.F.R. § 226.2(a)(13) ....................................................................19

4 Miller & Starr, Cal. Real Estate § 10:212 (3d ed. 2003) ...................................25

4 Miller & Starr, Cal. Real Estate § 9:152 (3d ed. 2003) ....................................12

Fed. R. Bankr. P. 3001(f)....................................................................28

Fed. R. Civ. P. 12(b)(6).....................................................................11

vii

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Chapter 11 plan in the above captioned bankruptcy cases (the "Chapter 11 Cases") [Docket No. 6065], as successor in interest to the above-captioned debtors (collectively, the "Debtors") for Borrower Claims (defined below) matters, hereby submits, on behalf of Residential Capital, LLC ("ResCap") and the Debtors in the Chapter 11 Cases,  this objection (the "Objection") seeking to disallow and expunge claim number 4167 (the "Gandrup Claim"), a copy of which is attached hereto as Exhibit 1, filed by Gerald Gandrup ("Mr. Gandrup"), pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), on the grounds that the Gandrup Claim fails to state a basis for liability against the Debtors.[1]   The Borrower Trust seeks the entry of an order, substantially in the form annexed hereto as Exhibit 2, granting the requested relief.  In support of the Objection, the Borrower Trust relies upon and incorporates by reference the Declaration of Lauren Graham Delehey, Chief Litigation Counsel for the ResCap Liquidating Trust, annexed hereto as Exhibit 3 (the "Delehey Declaration") and the declaration of Norman S. Rosenbaum of Morrison & Foerster LLP, counsel to the Borrower Trust (the "Rosenbaum Declaration"), annexed hereto as Exhibit 4.  In further support hereof, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The Gandrup Claim, which alleges $1,000,000.00 in claims against ResCap, should be disallowed and expunged pursuant to section 502(b) of the Bankruptcy Code

---

[1] The Borrower Trust reserves all of its rights to object on any other basis to the Gandrup Claim not set forth in this Objection, and to amend this Objection should any further bases come to light.

on the grounds that Mr. Gandrup fails to state a claim against any of the Debtors under applicable law.[2]  As discussed in detail below, the Gandrup Claim is based on claims arising from litigation initiated by Mr. Gandrup in February 2011 in the United States District Court for the Northern District of California in relation to a loan obtained by Mr. Gandrup that is secured by a Deed of Trust (defined below) on the Gandrup Property (defined below).

2.       More specifically, Mr. Gandrup, through the Gandrup Litigation (defined below), asserts claims against the Debtors in relation to alleged violations of the Truth in Lending Act ("TILA"), and the Real Estate Settlement Procedures Act ("RESPA"), fraud, civil violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, rescission-mistake-void agreement and invasion of Constitutional right to privacy.  Mr. Gandrup fails to provide a sufficient explanation as to why his claim represents a valid claim that should be allowed against the Debtors.  As set forth in further detail below, (i) Mr. Gandrup's allegations are devoid of fact in that, *inter alia*, Mr. Gandrup fails to allege facts that rebut the common law and statutory presumptions that the sale of the Gandrup Property was properly conducted and fails to set forth factual allegations specific to the Debtors in relation to Mr. Gandrup's RESPA claim, fraud claim, RICO claim and invasion of Constitutional right to privacy claim, (ii) certain of Mr. Gandrup's claims, such as the alleged RESPA and TILA violations, are time-barred by applicable statutes of limitations and (iii) other of Mr. Gandrup's claims, such as his ability to challenge the foreclosure, the alleged TILA violations and his ability to seek rescission are barred by his failure to tender the balance of the Gandrup Loan (defined below).

---

[2] The Debtors initially objected to the Gandrup Claim as part of the Fiftieth Omnibus Objection (defined below); however, as discussed in greater detail below, the Borrower Trust and Mr. Gandrup entered into a stipulation agreeing to withdraw, without prejudice, the Fiftieth Omnibus Objection with respect to the Gandrup Claim.

2

3.      Therefore, the Gandrup Claim is without merit and fails to articulate a valid legal basis that would give rise to liability on the part of any Debtor with respect to the Claim.  Moreover, Mr. Gandrup fails to set forth any evidence of how he arrived at $1,000,000 in damages, and thus has not met his burden to prove damages.

4.      Accordingly, the Gandrup Claim should be disallowed and expunged from the Claims Register (defined below).

### JURISDICTION, VENUE AND STATUTORY PREDICATE

5.      This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Bankruptcy Code section 502(b) and Bankruptcy Rule 3007.

### BACKGROUND

**A.      Chapter 11 Case Background**

*General Overview*

6.      On December 11, 2013, the Court entered an *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred, and, among other things, the Borrower Trust and the ResCap Liquidating Trust were established [Docket No. 6137].

7.      The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed Borrower Claims (as such terms are defined in the Plan) to the extent such claims are ultimately allowed either through

3

settlement or pursuant to an order of the Court.  See Plan, Art. IV.F.  The Borrower Trust was

established to, among other things, "(i) direct the processing, liquidation and payment of the

Allowed Borrower Claims in accordance with the Plan, and the distribution procedures

established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the

assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims."  See id.

*Claim Specific Background*

8.      On July 17, 2012, the Court entered an order [Docket No. 96] appointing

Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11

Cases.   Among other things, KCC is authorized to (a) receive, maintain, and record and

otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the

official claims register for the Debtors (the "Claims Register").

9.      On August 29, 2012, this Court entered an order approving the Debtors'

motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No.

1309] (the "Bar Date Order").[3]

10.     On March 21, 2013, the Court entered an order (the "Procedures Order")

[Docket No. 3294] approving, among other things, certain procedures to be applied in connection

with objections to claims filed by current or former borrowers (collectively, the "Borrower

Claims," and the procedures relating thereto, the "Borrower Claims Procedures").   The

Procedures Order includes specific protections for borrowers and sets forth a process for the

Debtors to follow before objecting to certain categories of Borrower Claims.  For example, the

---

[3] The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribing the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "Governmental Bar Date").  Bar Date Order ¶¶ 2, 3.  On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093].  The Governmental Bar Date was not extended.

4

Borrower Claims Procedures provide, in part, that prior to objecting to certain categories of Borrower Claims, the Debtors may furnish the individual borrower with a letter requesting additional documentation in support of the purported claim.  See Procedures Order at 4.

11.    On June 21, 2013, the Debtors sent a request letter to Mr. Gandrup requesting additional information and documentation in support of the Gandrup Claim (the "Request Letter").  A true and correct copy of the Request Letter is attached to the Delehey Declaration as Exhibit A; see also Delehey Declaration at ¶ 6; Rosenbaum Declaration at ¶ 3.

12.    The Request Letter states that Mr. Gandrup must respond within thirty (30) days with an explanation that states the legal and factual reasons why he believes he is owed money or is entitled to other relief from the Debtors; it further advises that Mr. Gandrup must provide copies of any and all documentation that he believes supports the basis for the Gandrup Claim.  See Request Letter, Exhibit A to Delehey Declaration.  The Request Letter further states that if Mr. Gandrup does not provide the requested explanation and supporting documentation within 30 days (the "Response Deadline"), the Debtors may file a formal objection to the Gandrup Claim, seeking to have the Gandrup Claim disallowed and permanently expunged.  Id.

13.    The Response Deadline passed, and Mr. Gandrup never responded to the Request Letter.  See Delehey Declaration at ¶ 6.

## B.    The Gandrup Loan

14.    On or about April 4, 2007, Mr. Gandrup obtained a loan from Atlantic Savings of America ("Atlantic Savings") in the amount of $880,000.00 (the "Gandrup Loan").  See Delehey Declaration at ¶ 8.  The Gandrup Loan was secured by a deed of trust (the "Deed of Trust"), dated April 4, 2007 and recorded on April 12, 2007, on real property located at 200 Gregory Court, Scotts Valley, California 95066 (the "Gandrup Property").  See id.; see also Deed of Trust, Exhibit B to Delehey Declaration.  On April 27, 2007, GMAC Mortgage, LLC

("GMACM") began servicing the Gandrup Loan.   See Delehey Declaration at ¶ 8.   A Substitution of Trustee was recorded on August 23, 2010 (the "Substitution of Trustee"), which substituted Executive Trustee Services, LLC ("ETS"), as Successor Trustee for the original Trustee.   See id.; see also Substitution of Trustee, Exhibit C to Delehey Declaration.   On February 16, 2013, servicing of the Gandrup Loan transferred to Ocwen Loan Servicing, LLC ("Ocwen").   See Delehey Declaration at ¶ 8.

15.   According to the Debtors' payment records (the "Payment Records"), Mr. Gandrup has failed to make monthly payments on the Gandrup Loan since April 2010.   See id. at ¶ 9; see also Payment Records, Exhibit D to Delehey Declaration.[4]   On August 23, 2010, as a result of the missed payments, a notice of default (the "Notice of Default") was recorded in Santa Cruz County.   See Delehey Declaration at ¶ 9; see also Notice of Default, Exhibit E to Delehey Declaration.   The Notice of Default invited Mr. Gandrup to contact the beneficiary under the Deed of Trust, Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Atlantic Savings, through its agent, ETS, to make arrangements to stop the foreclosure.   See Delehey Declaration at ¶ 9; see also Notice of Default, Exhibit E to Delehey Declaration.   Mr. Gandrup failed to take any steps to cure his default, and, on November 23, 2010, a Notice of Trustee's Sale (the "Notice of Trustee's Sale") was recorded in Santa Cruz County.   See Delehey Declaration at ¶ 9; see also Notice of Trustee's Sale, Exhibit F to Delehey Declaration.   On April 4, 2011, the Gandrup Property was sold at a trustee's sale to HSBC as the Trustee for DBALT 2007-OA4, and on May 19, 2011, a Trustee's Deed Upon Sale (the "Trustee's Deed Upon Sale") was recorded in Santa Cruz County.   See Delehey Declaration at ¶ 9; see also Trustee's Deed

---

[4] Due to the voluminous nature of Mr. Gandrup's complete payment record, attached as Exhibit D to the Delehey Declaration is a summary of the payment record.  A complete copy of Mr. Gandrup's payment record is available upon request.

Upon Sale, <u>Exhibit G</u> to Delehey Declaration.  As of the April 4, 2011 sale, Mr. Gandrup's interest in the Gandrup Property was extinguished.[5]  <u>See</u> Delehey Declaration at ¶ 9.

### C.    The Gandrup Litigation

16.    On February 14, 2011, Mr. Gandrup initiated litigation (the "<u>Gandrup Litigation</u>") in the United States District Court for the Northern District of California (the "<u>District Court</u>") against, among other defendants, GMACM and ETS (together, the "<u>Debtor Defendants</u>"), and alleged four causes of action including (i) violations of TILA, (ii) violations of the Home Ownership Equity Protection Act ("<u>HOEPA</u>") and the Federal Trade Commission ("<u>FTC</u>") Act, (iii) prohibited loan terms and (iv) quiet title.  <u>See</u> Delehey Declaration at ¶ 10.

17.    On September 23, 2011, Mr. Gandrup filed an amended complaint (the "<u>Amended Complaint</u>") against the Debtor Defendants and other defendants alleging the following ten causes of action: (i) violations of TILA; (ii) violations of RESPA; (iii) fraud; (iv) unjust enrichment; (v) civil violations of RICO; (vi) breach of security instrument; (vii) wrongful foreclosure; (viii) quiet title; (ix) rescission-mistake-void agreement; and (x) invasion of Constitutional right to privacy.  <u>See</u> <u>id</u>. at ¶ 11.

18.    On October 10, 2011, the Debtor Defendants filed a motion to dismiss the Amended Complaint, and on September 10, 2012, the District Court entered an order (the "<u>Dismissal Order</u>") dismissing Mr. Gandrup's claims for unjust enrichment, breach of security

---

[5] After the April 4, 2011 sale to HSBC as the Trustee for DBALT 2007-OA4, GMACM continued in its role as servicer.  <u>See</u> Delehey Declaration at ¶ 9, fn. 4.  In its capacity as servicer, GMACM continued to service the Gandrup Loan and the Gandrup Property was managed through GMACM's real estate owned ("<u>REO</u>") department. <u>See</u> <u>id</u>.  On April 13, 2012, HSBC, as the Trustee for DBALT 2007-OA4, sold the property in REO to a private third party for $701,000.  <u>See</u> <u>id</u>.  At the time the property was sold to a private third party, a claim was filed by GMACM to Atlantic Savings as the original investor of the loan in an effort to recoup some of the principal balance that was outstanding from the REO sale.  <u>See</u> <u>id</u>.  Due to this claim, the Gandrup Loan remained active on GMACM's system until February 16, 2013, at which time the Gandrup Loan was transferred to Ocwen.  <u>See</u> <u>id</u>.  The transfer to Ocwen occurred due to outstanding litigation fees that still showed as owing to GMACM by Atlantic Savings.  Such fees were resolved in May 2013.  <u>See</u> <u>id</u>.

7

interest, wrongful foreclosure and quiet title without leave to amend, and dismissing the

remaining claims with leave to amend. See id. at ¶ 12; see also Dismissal Order, Exhibit H to

Delehey Declaration.

19.    On October 1, 2012, Mr. Gandrup filed a second amended complaint (the

"Second Amended Complaint") against the Debtor Defendants, among other defendants, alleging

the following six causes of action: (i) violations of TILA; (ii) violations of RESPA; (iii) fraud;

(iv) civil RICO violations; (v) rescission-mistake-void agreement; and (vi) invasion of

Constitutional right to privacy.  See Delehey Declaration at ¶ 13; see also Second Amended

Complaint, Exhibit I to Delehey Declaration.  In response to the Second Amended Complaint,

the Debtor Defendants, on October 8, 2012, filed a motion to dismiss the Second Amended

Complaint, arguing that, although the Second Amended Complaint had been "amended," the

Second Amended Complaint still contained overly broad allegations and the same flawed

arguments and theories that were present in the prior complaint.  See Delehey Declaration at ¶

13.

20.    On October 22, 2012, Mr. Gandrup filed a notice of voluntarily dismissal

(the "Notice of Voluntary Dismissal") indicating that he was voluntarily dismissing the Gandrup

litigation, without prejudice, as to all defendants, including the Debtor Defendants.  See Delehey

Declaration at ¶ 14; see also Notice of Voluntary Dismissal, Exhibit J to Delehey Declaration.

On October 23, 2012, the District Court entered an order (the "Voluntary Dismissal Order")

dismissing the Gandrup Litigation without prejudice.  See Delehey Declaration at ¶ 14; see also

Voluntary Dismissal Order, Exhibit K to Delehey Declaration.

### D.    The Gandrup Claim

21.    On November 9, 2012, Mr. Gandrup filed the Gandrup Claim as a general unsecured claim against ResCap in the amount of $1,000,000.00.[6]  See Exhibit 1.  The Gandrup Claim appears to be a continuation of the Gandrup Litigation.  See id.

22.    On September 20, 2013, the Debtors filed the *Debtors' Fiftieth Omnibus Objection to Claims (No Liability Borrower Claims – Books and Records)* (the "Fiftieth Omnibus Objection") [Docket No. 5162], which objected to the Gandrup Claim, among other claims, on the basis that the Debtors' books and records showed no liability in relation to the Gandrup Claim because Mr. Gandrup voluntarily dismissed the Gandrup Litigation.

23.    On October 25, 2013, Mr. Gandrup filed a response to the Fiftieth Omnibus Objection (the "Response") [Docket No. 5541].   In the Response, Mr. Gandrup indicates that he dismissed the Gandrup Litigation without prejudice due to the Chapter 11 Cases and the fact that the Gandrup Litigation would have been stayed as a result of such Cases.  See Response.   In addition, in the Response, Mr. Gandrup incorporates, *inter alia*, the Second Amended Complaint.  See id.

24.    In light of the fact that it appeared Mr. Gandrup was seeking to preserve the issues addressed in the Gandrup Litigation through the Gandrup Claim, the Borrower Trust and Mr. Gandrup, on or around January 23, 2014, entered into a stipulation to withdraw, without prejudice, the Fiftieth Omnibus Objection as to the Gandrup Claim.

---

[6] Mr. Gandrup also filed proofs of claim numbers 2615 and 3859.  On July 15, 2013, claim number 2615 was expunged in accordance with the *Order Granting Debtors' Seventh Omnibus Objection to Claims (Amended and Superseded Borrower Claims)* [Docket No. 4238] and claim number 3859 was expunged in accordance with the *Order Granting Debtors' Sixth Omnibus Objection to Claims (Duplicate Borrower Claims)* [Docket No. 4243].

## RELIEF REQUESTED

25.    The Borrower Trust hereby files this renewed Objection pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007, and seeks the entry of an order, substantially in the form annexed hereto as Exhibit 2, disallowing and expunging the Gandrup Claim from the Claims Register because: (i) the Claim fails to state a valid legal basis giving rise to liability on the part of any Debtor; and (ii) if such Claim is not disallowed, then Mr. Gandrup may potentially receive a wholly improper recovery to the detriment of other Borrower Trust beneficiaries.

## OBJECTION

26.    A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co., L.P. v. Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed. Appx. 40 (2d Cir. 2002).  Moreover, section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. 502(b)(1).  Furthermore, the burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor.  Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

27.    As explained in further detail below and in the Delehey Declaration, the Liquidating Trust, in support of the Borrower Trust, conducted an exhaustive examination of the

10

Debtors' books and records to assess the allegations made in the Gandrup Claim, the Response and the Second Amended Complaint, and believes that there is no merit with respect to Mr. Gandrup's asserted claims. Accordingly, the Borrower Trust now files this renewed Objection to the Gandrup Claim, which addresses the merits of the allegations set forth in the Second Amended Complaint and the Gandrup Claim.

### A.    Legal Standard

28.    Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

29.    In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1997). The Court, however, is not required to "'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)). Although they may provide the framework for a complaint, legal conclusions need not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).

ny-1135273

30.     The process of "determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Ashcroft, 556 U.S. at 663-64.  As a result, courts do not assume (i) that plaintiffs can prove facts that they have not alleged or (ii) that defendants have violated laws in a manner that has not been alleged.  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

**B.     Mr. Gandrup's Right To Challenge The Foreclosure Sale Was Terminated**

31.     As a general rule, in California, the purchaser at a non-judicial foreclosure sale receives title under a trustee's deed free and clear of any right, title or interest of the trustor. 4 Miller & Starr, Cal. Real Estate § 9:152, p. 502 (3d ed. 2003).

32.     "A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender." Moeller v. Lien, 25 Cal.App.4th 822, 831 (1994) (citing Smith v. Allen, 68 Cal.2d 93, 96 (1968)).  Once the trustee's sale is completed, the trustor has no further rights of redemption.  Ballengee v. Sadlier, 179 Cal.App.3d 1, 5 (1986).

33.     The subject property was sold at a trustee's sale on April 4, 2011. See Trustee's Deed Upon Sale, Exhibit G to Delehey Declaration.  As explained in greater detail in Section C below, Mr. Gandrup has not proffered any facts to either establish that the foreclosure sale was not properly conducted or to overcome the presumption of the same.  Consequently, Mr. Gandrup cannot state any cause of action against the Debtors.

**C.     Gandrup Fails To Rebut The Presumption That The Foreclosure Sale Was Proper**

34.     California Civil Code section 2924(c) states that if a trustee's deed recites that it has complied with all the statutory notice requirements and procedures, the deed recital constitutes "prima facie evidence of compliance with these requirements and conclusive

12

evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice." Cal. Civ. Code § 2924.

35.    In Nguyen v. Calhoun, the court held that there is a rebuttable presumption that the foreclosure sale was conducted regularly and properly "[i]f the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied." 105 Cal.App.4th 428, 441 (2003) (citation omitted).

36.    To rebut this presumption, the plaintiff must produce "substantial evidence of prejudicial procedural irregularity." Melendrez v. D & I Inv., Inc., 127 Cal.App.4th 1238, 1258 (2005) (citing 6 Angels, Inc. v. Stuart-Wright Mortg., Inc., 85 Cal.App.4th 1279, 1284 (2001)). Further, "[i]t is the burden of the party challenging the trustee's sale to prove such irregularity and thereby overcome the presumption of the sale's regularity." Melendrez, 127 Cal.App.4th at 1258. (citing Hatch v. Collins, 225 Cal.App.3d 1104, 1113 (1990)).

37.    Here, the Trustee's Deed Upon Sale contains a recital that conforms to the requirements of California Civil Code section 2924(c). See Trustee's Deed Upon Sale, Exhibit G to Delehey Declaration. The Trustee's Deed Upon Sale recital gives rise to both a rebuttable common law and statutory presumption that the Trustee's sale was properly conducted. After being given the opportunity to twice amend his complaint, Mr. Gandrup does not allege any facts in the Gandrup Claim to rebut these presumptions, and therefore his claims fail.

38.    First, Mr. Gandrup's contention that MERS lacks the authority to substitute a trustee or exercise the power of sale under the Deed of Trust is meritless. See Second Amended Complaint at ¶¶ 37-49, 62-64, Exhibit I to Delehey Declaration. The Deed of Trust specifically provides that MERS is "a nominee for Lender and Lender's successors and

13

assigns." <u>See</u> Deed of Trust, p.1, Definition (E), p. 2-3, <u>Exhibit B</u> to Delehey Declaration.  The

Deed of Trust further provides that "MERS is the beneficiary" and that:

> Borrower understands and agrees that MERS holds only legal title
> to the interests granted by Borrower in this Security Instrument,
> but, if necessary to comply with law or custom, MERS (as
> nominee for Lender and Lender's successors and assigns) has the
> right: to exercise any or all of those interests, including, but not
> limited to, the right to foreclose and sell the Property; and to take
> any action required of Lender . . . .

<u>See</u> Deed of Trust, p. 3, <u>Exhibit B</u> to Delehey Declaration.  Mr. Gandrup has stated no viable

irregularity in this regard.

39.    <u>Second</u>, Mr. Gandrup's contention that the Notice of Default is void

because "no valid substitution of trustee was recorded naming ETS as the authorized trustee,"

fails.  <u>See</u> Second Amended Complaint at ¶ 62, <u>Exhibit I</u> to Delehey Declaration.  California

Civil Code Section 2924(a)(1) states that "[t]he trustee, mortgagee, or beneficiary, or any of their

authorized agents shall first file for record . . . a notice of default."  Cal. Civ. Code Section

2924(a)(1).  Mr. Gandrup has not proven any irregularity in this regard, especially since the

Substitution of Trustee was recorded on August 23, 2010, contemporaneous with the Notice of

Default.  <u>See</u> ¶ 14 supra.

40.    <u>Third</u>, Mr. Gandrup's robo-signing allegations are meritless.  <u>See</u> Second

Amended Complaint at ¶¶ 59-61, <u>Exhibit I</u> to Delehey Declaration.  Courts have rejected bare

allegations of "robo-signing" by defaulting borrowers who attack the validity of the foreclosure

by attacking the authority of the persons who sign documents, which is precisely what Mr.

Gandrup does here.  <u>See, e.g.</u>, <u>Chua v. IB Prop. Holdings, LLC</u>, No. CV 11-05894 (SPx), 2011

WL 3322884, at *2 (C.D. Cal. Aug. 1, 2011).  Mr. Gandrup has stated no viable irregularity in

this regard.

41.     In sum, Mr. Gandrup has simply not alleged any viable irregularity in the non-judicial foreclosure proceedings to rebut the common law and statutory presumption that the Trustee's sale was properly conducted.

**D.     Mr. Gandrup's Entire Complaint Fails As He Did Not Tender The Loan Amount**

42.     Under California law, a plaintiff challenging a foreclosure sale under any cause of action or theory must tender the amount received under the loan. See Abdallah v. United Sav. Bank, 43 Cal.App.4th 1101, 1109 (1996); U.S. Cold Storage v. Great W. Sav. & Loan Ass'n, 165 Cal.App.3d 1214, 1225 (1985); Arnolds Mgmt. Corp. v. Eischen, 158 Cal.App.3d 575, 578-79 (1984); Karlsen v. Am. Sav. & Loan Ass'n, 15 Cal.App.3d 112, 117 (1971). This is because "if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs." F.P.C.I. Re-hab 01 v. E & G Invs., Ltd., 207 Cal.App.3d 1018, 1022 (1989). Thus, tender is considered a condition precedent to challenge a foreclosure sale.

43.     Mr. Gandrup failed to comply with the tender rule. According to the Debtors' records, including the Payment Records, the Debtors have no record of Mr. Gandrup ever tendering the loan balance to the Debtors. See Delehey Declaration at ¶ 9; see also Payment Records, Exhibit D to Delehey Declaration. Moreover, in the Second Amended Complaint, Mr. Gandrup did not even allege an ability to tender the full amount owed on the Gandrup Loan. See Second Amended Complaint, Exhibit I to Delehey Declaration. As a result, the Gandrup Claim should be disallowed and expunged because Mr. Gandrup lacks standing to proceed with his claims.

15

### E.    Securitizing A Loan Is Not Improper

44.    Mr. Gandrup maintains that securitization of a loan is improper. <u>See</u> Second Amended Complaint at ¶¶ 65-68.  Securitization refers to the process of pooling debt obligations and selling them to investors in the form of mortgage-backed securities.  However, "[t]he argument that parties lose their interest in a loan when it is assigned to a trust pool has also been rejected by many district courts." <u>Lane v. Vitek Real Estate Indus. Grp.</u>, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010) (citing <u>Benham v. Aurora Loan Servs.</u>, No. C-09-2059 SC, 2009 WL 2880232, at *3 (N.D. Cal. Sep. 1, 2009)) ("Other courts… have summarily rejected the argument that companies like MERS lose their power of sale pursuant to the deed of trust when the original promissory note is assigned to a trust pool"); <u>Hafiz v. Greenpoint Mortg. Funding, Inc.</u>, 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009); <u>see also</u> <u>Mulato v. WMC Mortg. Corp.</u>, No. C 09-03443 CW, 2010 WL 1532276, at *2 (N.D. Cal. Apr. 16, 2010) (rejecting plaintiff's claim that securitization of her mortgage note deprived defendants of standing to foreclose).  If the exhaustive framework that governs non-judicial foreclosure sales does not require possession of the original promissory note and expressly contemplates the possibility of allowing others to act on behalf of the beneficiary when foreclosing, then it defies reason that securitizing a loan could in any way be improper.

45.    Moreover, the Deed of Trust expressly states that his promissory note and deed of trust could be sold one or more times without prior notice to him. <u>See</u> Deed of Trust at ¶ 20, <u>Exhibit B</u> to the Delehey Declaration.  Thus, Mr. Gandrup himself authorized the very transfer that he now challenges.

46.    To the extent Mr. Gandrup attempts to challenge how the securitization occurred, this too fails. <u>See</u> Second Amended Complaint at ¶¶ 64, 66-68, <u>Exhibit I</u> to Delehey Declaration.  Mr. Gandrup lacks standing to challenge how the securitization occurred because

16

he is not a party to the pooling and servicing agreements that govern securitization of the loan. See Jenkins v. JP Morgan Chase Bank, N.A., 216 Cal.App.4th, 497, 515 (2013) ("As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, Jenkins lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions.").

47.    Such pooling and servicing agreements concern the duty owed by a loan servicer to parties in a loan pool or trust.  Gandrup does not, and cannot, allege that he is a loan servicer, a party in a loan pool, or an investor in the loan trust.  See In re Correia, 452 B.R. 319, 324 (BAP 1st Cir. 2011) (finding that borrowers were neither a party, nor third-party beneficiaries, of the pooling and servicing agreement, and therefore lacked standing to bring claims based on alleged breaches of the pooling and servicing agreement); see also Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1188 (N.D. Cal. 2009); Bascos v. Federal Home Loan Mortg. Corp., No. CV 11-3968-JFW (JCx), 2011 WL 3157063, at *6 (C.D. Cal. July 22, 2011).  Thus, whether or not a note was properly endorsed and transferred is irrelevant because even if Mr. Gandrup's unsubstantiated allegations were true, which the Borrower Trust contends they are not, Mr. Gandrup cannot state any viable legal claim to enforce the pooling and servicing agreements.

48.    Further, any such transfer of the note and deed of trust to a new party had no impact on Mr. Gandrup.  As the Court in Jenkins v. JP Morgan Chase Bank, N.A. explained,

> [E]ven if any subsequent transfers of the promissory note were invalid, Jenkins is not the victim of such invalid transfers because her obligations under the note remained unchanged.  Instead, the true victim may be an entity or individual who believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of their interest in the note.

216 Cal.App.4th at 515; see also Fontenot v. Wells Fargo Bank, N.A., 198 Cal.App.4th 256, 272 (2011) (if "MERS indeed lacked authority to make [an] assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note"). The requirement under California law that a party must show injury to challenge the validity of an assignment is well established. See, e.g., Bumb v. Bennett, 51 Cal.2d 294, 300 (1958) ("[b]ut even assuming that this condition might render the assignment invalid as against a nonconsenting secured creditor, defendants have no standing to raise this objection since they could not be injured by enforcement of the condition"); Ingle Mfg. Co. v. Scales, 36 Cal.App. 410, 412 (1918).

49.     Indeed, if the transfer of the Gandrup Loan was defective, it was the Gandrup Loan's owner who was harmed, and only the true owner of the Gandrup Loan may sue to protect its interests. See Warth v. Seldin, 422 U.S. 490, 499 (1975) (noting that a plaintiff cannot rest his claim to relief on the legal rights or interests of third parties). As Mr. Gandrup has not alleged any harm for which he has potential redress, he has no standing to challenge the validity of any assignment of the Gandrup Loan to the trust pool.

### F.     Mr. Gandrup's Claim for Violation of TILA Fails

50.     Mr. Gandrup alleges that GMACM violated TILA. More specifically, Mr. Gandrup avers that "Defendants failed to disclose the material terms of Plaintiff's transaction in a clear and conspicuous manner and provide rescission rights in a lawful manner." See Second Amended Complaint at ¶ 83.

51.     Setting aside the glaring (and fatal) fact that GMACM was not the originating lender of the Gandrup Loan, Mr. Gandrup's TILA claims also fail because they are wholly time-barred.

18

52.    Damage claims under TILA (and its implementation regulation, Regulation Z) have a one (1) year statute of limitations. 15 U.S.C. § 1640(e). The violation occurs upon consummation of the loan. Betancourt v. Countrywide Home Loans, Inc., 344 F. Supp. 2d 1253, 1258 (D. Colo. 2004). A loan is deemed consummated at "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). Here, the Deed of Trust was recorded on April 12, 2007. See Deed of Trust. The Gandrup Litigation was filed on February 14, 2011 (nearly four years after the Gandrup Loan was originated), and the Gandrup Claim was not filed until November 9, 2012. Accordingly, Mr. Gandrup's TILA claims should be disallowed on this basis alone.

53.    Moreover, Mr. Gandrup's claim fails because GMACM did not originate the Gandrup Loan. GMACM was not a "creditor" for TILA purposes since Mr. Gandrup's debt was not originally owed to GMACM. See 15 U.S.C. § 1602(g). The Gandrup Loan was originated with Atlantic Savings. Atlantic Savings was the lender, and as plaintiff states, "ATLANTIC was required to provide Plaintiff certain disclosures pursuant to the TILA." See Second Amended Complaint at ¶ 84. Thus, because GMACM was not the originating lender, Mr. Gandrup's TILA claims fail against GMACM.

54.    Mr. Gandrup also seeks rescission based on the alleged TILA violations. See Second Amended Complaint at ¶ 99. However, Mr. Gandrup is not entitled to rescission for two reasons. First, there is a three-year statute of limitations on rescission under TILA. See 15 U.S.C. § 1635(f). Mr. Gandrup has brought his claim more than three years after the loan origination, which occurred in April 2007. Second, rescission under TILA requires that the borrower return the loan principal minus all interest and fees paid to the creditor after closing. Semar v. Platte Valley Fed. Sav. and Loan Ass'n, 791 F.2d 699, 705 (9th Cir. 1986). As the

19

Ninth Circuit has held, a borrower must return the loan's principal balance to the creditor before

rescission is granted.  <u>Yamamoto v. Bank of N.Y.</u>, 329 F.3d 1167, 1171 (9th Cir. 2003).  In this

case, Mr. Gandrup, as previously mentioned, has not provided tender and thus, Mr. Gandrup's

TILA rescission claim should also be disallowed.

### G.    Mr. Gandrup's Claims Under RESPA Fail

55.    Mr. Gandrup alleges violations of RESPA, 12 U.S.C. §§ 2601, et seq.

Specifically, Mr. Gandrup contends that GMACM "violated RESPA and fraudulently attempted

to circumvent the consumer protections of RESPA and create a transaction in which they are

fraudulently attempting to secure a 'holder in due course' status."  <u>See</u> Second Amended

Complaint at ¶ 108.

56.    Mr. Gandrup's RESPA claim is time-barred.  Any claim for a section

2607 violation must be brought within one year of the alleged violation.  12 U.S.C. § 2614 ("Any

action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought …

[within] 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the

occurrence of the violation"); <u>Edwards v. First Am. Corp.</u>, 517 F. Supp. 2d 1199, 1204 (C.D.

Cal. 2007); <u>Blaylock v. First Am. Title Ins. Co.</u>, 504 F. Supp. 2d 1091, 1106 (W.D. Wash. 2007).

57.    The one-year statute of limitations begins to run when the violation, if

any, occurs, e.g. when the alleged kickback was paid or the defendants failed to make proper

disclosures about them (i.e., at loan closing).  <u>Snow v. First Am. Title Ins. Co.</u>, 332 F.3d 356,

359-60 (5th Cir. 2003) (the "ill occurs, if at all, when the plaintiff pays for the [tainted] service,

typically at the closing).  Here, the loan closed in April of 2007.  <u>See</u> Deed of Trust.  Mr.

Gandrup did not file the Gandrup Litigation until February 2011 and did not file the Gandrup

Claim until November 9, 2012.  Accordingly, Mr. Gandrup's claims for alleged RESPA

20

violations are time-barred.  Watts v. Decision One Mortg. Co., LLC, No. 09 CV 0043 JM (BLM), 2009 WL 648669 at *4 (S.D. Cal. Mar. 9, 2009).

58.    Moreover, the Second Amended Complaint and the Gandrup Claim are devoid of any factual allegations specific to the Debtors.  See Second Amended Complaint at ¶¶ 100-115, Exhibit I to Delehey Declaration.  A factual basis for Mr. Gandrup's RESPA claim against the Debtors—if indeed one exists—is entirely absent from the Second Amended Complaint and the Gandrup Claim.  For example, in the Second Amended Complaint, Mr. Gandrup alleges, inter alia, that Atlantic Savings and GMACM "devised a scheme in which they attempted to create secondary market transaction when in fact the acts of ATLANTIC were truly a 'table funded' transaction by a mortgage broker"; however, Mr. Gandrup fails to provide additional details or evidence of the alleged "scheme" between GMACM and Atlantic Savings.  See Second Amended Complaint at ¶ 108, Exhibit I to Delehey Declaration.  For this reason, the Debtors are left without notice of the nature of the charges against them.  In other words, the Second Amended Complaint and the Gandrup Claim fail to meet the basic standards of notice pleading.  See Ashcroft, 556 U.S. at 698-99 (explaining that a defendant is entitled to "fair notice of what the . . . claim is and the grounds upon which it rests" (omission in original) (internal quotation marks omitted)).

59.    Therefore, Mr. Gandrup's RESPA claims should be disallowed because they lack a factual basis and are time barred.

**H.    Mr. Gandrup's Fraud Claim Fails**

60.    Mr. Gandrup also alleges claims based on fraud.  As a preliminary matter, to the extent any portion of the fraud claim is grounded in origination, such claim is time-barred.  The statute of limitations for fraud is three years.  See Cal. Code Civ. Proc. § 338(d).

The Gandrup Loan originated in April 2007, more than three years before the Gandrup Litigation was filed in February 2011.

61.    Mr. Gandrup avers that GMACM "held itself out as having the sole authority to modify Plaintiff." See Second Amended Complaint at ¶ 139, Exhibit I to Delehey Declaration. Mr. Gandrup further avers that certain of the defendants, including GMACM and ETS fraudulently misled him in that the "Defendants . . . knowingly and willfully used the void Assignment of Deed of Trust to claim an interest in Plaintiff's Note, foreclose on and sell Plaintiff's Property."[7] See id. at ¶ 151.

62.    The elements of fraud are well-settled in California, and require showing of (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of statement's falsity; (c) intent to defraud; (d) justifiable reliance; and (e) resulting damage. See, e.g., Competitive Techs. v. Fujitsu Ltd., 286 F. Supp. 2d 1118, 1148 (N.D. Cal. 2003) (citing Cal. Civ. Code §§ 1709, 1710; Stansfield v. Starkey, 220 Cal.App.3d 59, 72-73 (1990)); Multifamily Captive Grp., LLC v. Assurance Risk Managers Inc., 578 F. Supp. 2d 1242, 1250 (E.D. Cal. 2008) (citing Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal.4th 979, 990 (2004)).

63.    Mr. Gandrup's fraud claim fails as a matter of law because Mr. Gandrup falls well short of alleging facts to support his claim with particularity as required by Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that where averments of fraud are made, the allegations be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge. Rosal v. First Fed. Bank of Cal., 671 F. Supp. 2d 1111, 1127

---

[7] Mr. Gandrup's allegation regarding the assignment of Deed of Trust fails not only because it does not meet the particularity standard required for a claim of fraud (as explained in further detail above), but also because such allegation is based on Mr. Gandrup's assertion that the securitization of a loan is improper, which, as explained in section E. of this Objection, is a meritless theory.

(N.D. Cal. 2009).   When several defendants are sued, the complaint must "'inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'"  See id. (quoting Swartz v. KPMG LLP, 476 F.3d 756, 765-66 (9th Cir. 2007)).

64.    The Ninth Circuit has affirmed that "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).  The Ninth Circuit continued to emphasize that "'[a] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.'"  Id. (citation omitted)

65.    This particularity requirement is further heightened where the claim is alleged against a corporate defendant, such as the case here.   As the District Court for the Northern District of California explained, "'[i]n such a case, the plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'"  Rosal, 671 F.Supp.2d at 1127 (citation omitted).

66.    Mr. Gandrup falls well short of this established standard. Mr. Gandrup simply states that GMACM "suppressed and concealed . . . facts for the purpose of obtaining an advantage or benefit over Plaintiff."  Second Amended Complaint at ¶ 140, Exhibit I to Delehey Declaration.  Nowhere does Mr. Gandrup elaborate what specific facts GMACM suppressed and concealed, nor does he specifically allege the who, what, when, where, and how of the misconduct charged.  Instead, Mr. Gandrup attempts to circumvent this fatal defect by making extremely overbroad allegations.  See id. at ¶ 104.  Such allegations are far too broad to meet the particularity standard of fraud.  Furthermore, Mr. Gandrup does not adequately make any effort

ny-1135273

to allege "'the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'"  Rosal, 671 F.Supp.2d at 1127 (citation omitted).

67.    The vague, conclusory and unintelligible allegations that comprise Mr. Gandrup's fraud allegation fail to state any claim against defendants.  As such, Mr. Gandrup's fraud claim should be disallowed.

## I.    Mr. Gandrup's Claim For Civil RICO Violations Fails

68.    Mr. Gandrup contends that the Debtors violated RICO.

69.    To state a civil RICO claim, a plaintiff must allege five elements: (i) conduct, (ii) of an enterprise, (iii) through a pattern, (iv) of racketeering activity, establishing that (v) the defendant caused injury to the plaintiff's business or property.  See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985); Swartz v. KPMG LLP, 476 F.3d at 760-61; Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1086-87 (9th Cir. 2002).

70.    Mr. Gandrup's RICO claim neither avers facts showing any of the required elements, nor does it meet the heightened pleading requirement for stating a RICO claim.  See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065-66 (9th Cir. 2004) (the elements of a RICO claim must be pleaded with particularity).  Mr. Gandrup's RICO claim is riddled with general allegations that GMACM, and other defendants in the Gandrup Litigation, conspired or committed wrongful conduct, but does not inform any individual defendant of the particulars of its conduct.  See Second Amended Complaint at ¶¶ 156 – 209, Exhibit I to Delehey Declaration; see also Swartz, 476 F.3d at 764-65 (explaining that when several defendants are sued, the complaint must "'inform each defendant separately of the allegations surrounding his alleged participation in the fraud'").  As supported by a recent decision of this Court, RICO allegations that are deficiently pled should be denied.  See Memorandum Opinion and Order Sustaining

24

*Borrower Claims Trust's Objection to Claim Nos. 4754 and 7181* at 24-26 [Docket No. 6739] (denying a borrower's RICO claim because, *inter alia*, such claim "provides no allegations necessary to support a civil RICO claim and does not present any evidence of a pattern of racketeering activity, definition of any enterprise, or a RICO case statement").

71.    Mr. Gandrup does not allege any time, place, or person, nor does he identify any specific misrepresentations.    Accordingly, Mr. Gandrup's RICO claim is inadequately pled and should be disallowed.

**J.    Mr. Gandrup's Rescission Claim Fails Because Plaintiff Cannot Void the Deed Of Trust Without Repaying His Debt**

72.    Rescission is an equitable claim, and a plaintiff in equity must do equity to receive equitable relief.  Under California law, a plaintiff challenging a foreclosure sale under any cause of action or theory must tender the amount received under the loan.  See Abdallah v. United Sav. Bank, 43 Cal.App.4th at 1109.

73.    Here, doing equity means repaying the money borrowed before voiding the security for the loan.  See 4 Miller & Starr, Cal. Real Estate § 10:212, pp. 686-87 (3d ed. 2003); Karlsen v. Am. Sav. & Loan Ass'n, 15 Cal.App.3d at 117-18; Copsey v. Sacramento Bank, 133 Cal. 659, 662 (1901); Leonard v. Bank of Am., 16 Cal.App.2d 341, 344 (1936).  A trustor cannot "quiet title without discharging his debt.  The cloud upon his title persists until the debt is paid." Aguilar v. Bocci, 39 Cal.App.3d 475, 477 (1974).

74.    Mr. Gandrup has not repaid what he owes, nor has he alleged an ability and willingness to tender his obligations.  Mr. Gandrup is therefore not entitled to void the Deed of Trust.

75.    Additionally, as mentioned in the Dismissal Order, Mr. Gandrup's rescission claim also fails because it does not meet the Rule 9(b) pleading standard.  See

25

Dismissal Order at 11.  Mr. Gandrup's allegations in the Second Amended Complaint, and thus in the Gandrup Claim, continue to lack the requisite specificity to constitute a valid claim against the Debtors.

### K.    Mr. Gandrup's Invasion of Constitutional Right to Privacy Claim Fails

76.    Mr. Gandrup alleges invasion of his right to privacy under the California Constitution.  This claim is insufficiently plead and fails as a matter of law.  Mr. Gandrup alleges that GMACM, and other defendants in the Gandrup Litigation, ran credit checks that were "outsourced, meaning that private data and other information was sent off-site."  See Second Amended Complaint at ¶ 235, Exhibit I to Delehey Declaration.  Mr. Gandrup provides no support for this conclusive statement and more importantly provides no factual allegations demonstrating that (i) this alleged practice was done to Mr. Gandrup by GMACM or (ii) that it resulted in any damage to Mr. Gandrup.  Mr. Gandrup's conclusions and deductions, without factual allegations supporting his claim of invasion of privacy, are insufficient to form the basis for a claim.  As a result, Mr. Gandrup's claim for invasion of the constitutional right to privacy should be disallowed.

77.    In addition, Mr. Gandrup's claim simply does not and cannot meet the minimum standard for maintaining a claim for invasion of privacy.  In Pioneer Elecs. (USA), Inc. v. Superior Court, the Supreme Court of California made clear that "the right of privacy protects the individual's *reasonable* expectation of privacy against a serious invasion." 40 Cal. 4th 360, 370 (2007) (emphasis added) (citing Hill v. Nat'l Collegiate Athletic Ass'n, 7 Cal. 4th 1, 26 (1994)).  "The party claiming a violation of the constitutional right of privacy established in article I, section 1 of the California Constitution must establish (1) a legally protected privacy interest, (2) a reasonable expectation of privacy under the circumstances, and (3) a serious invasion of the privacy interest." Int'l Fed'n of Prof'l and Technical Eng'rs, Local 21, AFL-CIO

26

v. Superior Court, 42 Cal.4th 319, 338 (2007) (citing Hill v. Nat'l Collegiate Athletic Ass'n, 7

Cal. 4th 1, 39-40 (1994)).  "A defendant may prevail in a state constitutional privacy case by

negating any of the three elements just discussed or by pleading and proving, as an affirmative

defense, that the invasion of privacy is justified because it substantively furthers one or more

countervailing interests."  Hill v. Nat'l Collegiate Athletic Ass'n, 7 Cal. 4th 1, 40 (1994).  "The

particular context, i.e., the specific kind of privacy interest involved and the nature and

seriousness of the invasion and any countervailing interests, remains the critical factor in the

analysis."  Id. at 34.

78.     The basis of Mr. Gandrup's claim is that GMACM, as well as other

defendants in the Gandrup Litigation, ran credit checks through third parties to determine the

ability of borrowers to repay their loans.  See Second Amended Complaint at ¶¶ 222-41.  Even if

true and even if it actually did happen to Mr. Gandrup (which is not specifically pled), a credit

check is by no means a serious invasion of his privacy interests.  Consequently, even if Mr.

Gandrup's conclusive statement is taken as true, the claim for invasion of the constitutional right

to privacy is insufficient and should be disallowed.  See Smith v. Capital One Fin. Corp., No. C

11-3425 PJH, 2012 WL 3138024, at *3 (N.D. Cal., Aug. 1, 2012) ("[B]ecause plaintiff concedes

that she incurred a financial obligation, she 'impliedly consent[ed] for the creditor to take

reasonable steps to pursue payment even though it may result in actual, though not actionable,

invasion of privacy.'" "'[D]ebtors' tender sensibilities are protected only from oppressive,

outrageous conduct.'") (quoting Bundren v. Superior Court, 145 Cal.App.3d 784, 789 (1983)).

79.     Moreover, to the extent that Mr. Gandrup contends securitization of the

loan was an invasion of privacy, Mr. Gandrup expressly agreed to assignment of the note and

Deed of Trust without notice when he executed the Deed of Trust.  See Deed of Trust, Exhibit B

to the Delehey Declaration.  Thus, Mr. Gandrup himself authorized the very transfer that he now challenges.

### L.    The Amount of the Gandrup Claim is Not Supported by Sufficient Documentation

80.    The Borrower Trust has determined that the Gandrup Claim should be disallowed and expunged because it lacks sufficient documentation supporting the amount of damages identified in the Gandrup Claim.  Although a properly filed proof of claim constitutes *prima facie* evidence of the validity of the claim, Fed. R. Bankr. P. 3001(f), "[f]ailure to attach the documentation required by [Bankruptcy] Rule 3001 will result in the loss of the *prima facie* validity of the claim."  In re Minbatiwalla, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010) (citation omitted); In re Hight, 393 B.R. 484, 495 (Bankr. S.D. Tex. 2008).

81.    Failure to attach sufficient documentation to a proof of claim can result in disallowance of the claim under appropriate circumstances because absent adequate documentation, the proof of claim is not sufficient for the objector to concede the validity of the claim.  See Minbatiwalla, 424 B.R. at 119 (citing In re Porter, 374 B.R. 471, 480 (Bankr. D. Conn. 2007) ("under some circumstances lack of [documentation required by Rule 3001(c)] followed by a creditor's failure to appear or otherwise respond to an objection . . . made on the grounds of insufficient annexed documentation may result in a disallowance of the claim on procedural (i.e., default) grounds")); see also In re DePugh, 409 B.R. 125, 137-38 (Bankr. S.D. Tex. 2009) (holding that insufficient documentation is a valid basis for disallowing a claim as "'unenforceable against the debtor . . . under . . . applicable law'" under 11 U.S.C. § 502(b)(1) because of a lack of compliance with Bankruptcy Rule 3001).

82.    The Gandrup Claim lacks sufficient supporting documentation as to its amount.  Specifically, Mr. Gandrup has not provided any explanation as to why he is entitled to a

28

$1,000,000 claim against the Debtors, nor has he provided any calculation of the $1,000,000

claim amount.  Rather, Mr. Gandrup only states that the Gandrup Litigation "seeks $1,000,000

(One Million Dollars) in compensatory damages for said wrongful foreclosure on GMAC's first

deed of trust on the property."  See Gandrup Claim, a copy of which is attached hereto as Exhibit

1.  However, the Second Amended Complaint does not specify the amount of damages allegedly

owed to Mr. Gandrup, let alone provide a calculation of damages.

83.    Accordingly, the Gandrup Claim is not *prima facie* valid and the burden

remains with Mr. Gandrup to provide sufficient evidence as to the amount of his claim.  Unless

the Gandrup Claim is disallowed and expunged in its entirety, Mr. Gandrup—who does not hold

a valid claim against the Debtors—would be entitled to recover from the Borrower Trust

unjustifiably to the detriment of the Borrower Trust and its constituents.

## NOTICE

84.    The Borrower Trust has provided notice of this Objection in accordance

with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket

No. 141], and the Procedures Order.

## CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of an order, substantially

in the form of Exhibit 2 attached hereto, (i) disallowing and expunging the Gandrup Claim and

(ii) granting such other and further relief as is just and proper.


*[Signature Page to Follow]*

29

Dated:  April 11, 2014
         New York, New York

/s/  Norman S. Rosenbaum
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*

30