**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

RESIDENTIAL CAPITAL, LLC, *et al.*,

Debtors.

**FOR PUBLICATION**

Case No. 12-12020 (MG)

Jointly Administered

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION FOR RECONSIDERATION**

*A P P E A R A N C E S:*

MORRISON & FOERSTER
*Counsel for Residential Capital, LLC, et al.*
1290 Avenue of the Americas
New York, NY 10104
By:   Norman S. Rosenbaum, Esq.
      Jordan A. Wishnew, Esq.


KATHERINE S. PARKER-LOWE
*Attorney for Rex T. Gilbert, Jr. and Daniela L. Gilbert*
35 Miss Elecia Lane, Suite 101
Post Office Box 730
Ocracoke, North Carolina 27960


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *Motion for Reconsideration of the Memorandum and Order Sustaining in Part and Overruling in Part Debtors' Objection to Proof of Claim No. 1984 Filed by Katherine Parker-Lowe and Proof of Claim No. 1991 Filed by Rex T. Gilbert, Jr. and Daniela Gilbert* (ECF Doc. #5983), filed by Rex T. Gilbert, Jr. and Daniela Gilbert (collectively, "the Gilberts"). The Gilberts filed an Amended Motion for Reconsideration (the "Motion," ECF Doc. # 6386), clarifying that they seek relief pursuant to Rule 3008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and 11 U.S.C. § 502(j), which relate to

reconsideration of an order disallowing a claim. The Gilberts ask the Court to reconsider its opinion and order (the "Original Opinion") granting in part and denying in part an objection to the separate claims filed by the Gilberts and their attorney. *See In re Residential Capital, LLC*, 501 B.R. 531 (Bankr. S.D.N.Y. 2013). In the Original Opinion, the Court deemed a portion of the parties' dispute to be a contested matter. The Gilberts raise several issues warranting further discussion. As explained below, the Court **GRANTS** the Motion in part and **DENIES** it in part.

## I. BACKGROUND

The Court's prior opinion contains an extensive description of the facts. *See Residential Capital*, 501 B.R. at 535–38. This Opinion recounts the facts only to the extent relevant to this decision.

The Gilberts filed proof of claim no. 1991 against the Debtors in the amount of $5,948,900 ("Claim No. 1991"); Katherine Parker-Lowe, ("Parker-Lowe" and together with the Gilberts, the "Claimants"), filed proof of claim no. 1984 in the amount of $83,181.11, seeking payment of attorney's fees for her representation of the Gilberts ("Claim No. 1984").

The Debtors filed the *Debtors' Objection to Proofs of Claim Filed by Rex and Daniela Gilbert and Katherine Parker-Lowe* (the "Claims Objection," ECF Doc. # 4767). The Claimants filed a response to the Claims Objection (the "Claimants' Response," ECF Doc. # 5004), and the Debtors filed a reply to the Claimants' Response (the "Debtors' Reply," ECF Doc. # 5129).

The Court issued the Original Opinion on November 12, 2013. On December 2, 2013, the Claimants filed the Motion, which they amended on January 30, 2014. The ResCap Borrower Claims Trust, the Debtors' successor in interest, filed an objection to the Motion (ECF Doc. # 6269).

## II.     DISCUSSION

Under Section 502(j), "[a] claim that has been allowed or disallowed may be reconsidered for cause." 11 U.S.C. § 502(j). The Bankruptcy Code does not define "cause," but when deciding a motion under section 502(j), the court should:

> [a]pply the same analysis that it would to a motion under Fed. R. Bankr. P. 9023 (incorporating Fed. R. Civ. P. 59) or Fed. R. Bankr. P. 9024 (incorporating Fed. R. Civ. P. 60), depending on whether the movant . . . sought reconsideration within [fourteen] days after the entry of the order disallowing the claim, or did so only later.

*In re Terrestar Networks, Inc.*, No. 10–15446 (SHL), 2013 WL 781613, at *2 (Feb. 28, 2013) (collecting cases).

Bankruptcy Rule 9023 incorporates Federal Rule of Civil Procedure 59, which regulates motions for amendment of a judgment. Rule 9023 states: "[a] motion . . . to alter or amend a judgment shall be filed . . . *no later* than 14 days after entry of judgment." FED. R. BANKR. P. 9023 (emphasis added). The Gilberts filed the Motion twenty days after the Court entered the Opinion, which prevents them from obtaining relief under Bankruptcy Rule 9023. *See In re Terrestar Networks, Inc.*, 2013 WL 781613, at *2. Therefore, the Court will apply Rule 9024, which incorporates Federal Rule of Civil Procedure 60.

Rule 60 permits a court to grant relief from a final judgment or order for the following reasons: (1) "mistake, inadvertence, surprise, excusable neglect"; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct. (4) the judgment is void; (5) the judgment has been satisfied, released, discharged, or it is "no longer equitable"; or (6) "any other reason that justifies relief." FED. R. CIV. P. 60(b). A motion for reconsideration "is generally not favored and is properly granted only upon a showing of exceptional circumstances." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (citation omitted); *see also United States v.*

3

*Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) (same). "A motion for reconsideration should be granted *only* when the [moving party] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (emphasis added) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

The party seeking Rule 60 relief bears the burden of proof. *See Int'l Bhd. of Teamsters*, 247 F.3d at 391. Whether to grant a motion for relief under Rule 60 is within the discretion of the court. *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012).

The Gilberts have neither identified any intervening change of controlling law nor introduced new evidence. Thus, to prevail, the Gilberts must show the need to correct clear error of law or to prevent manifest injustice. The Court addresses each of the Gilberts' requests in turn.

### A. *Truth in Lending Act Claims*

The Gilberts concede that their claim for monetary damages pursuant to the Truth in Lending Act ("TILA") is time-barred. (Motion ¶ 20.) The Court need not revisit that issue.

Instead, the Motion asks the Court to reconsider its finding that GMAC Mortgage, LLC ("GMACM") cannot be liable for a claim for rescission or rescissionary damages. (Motion ¶ 38.) As an initial matter, GMACM is no longer the servicer of the loan, so it cannot be ordered to rescind the loan. *Residential Capital*, 501 B.R. at 539. Consequently, the Gilberts challenge the Court's finding that rescissionary damages cannot be imposed against GMACM for failing to comply with the Gilberts' letter purporting to exercise their right to rescind. (*See* Motion ¶¶ 11–19.)

4

The Gilberts previously argued they did not know who owned their loan, so when they sent their letter purporting to rescind the loan and GMACM replied, GMACM essentially rendered itself a "functional holder" of the loan subject to TILA liability. (*See* Claimants' Response ¶ 4.) In response, the Debtors asserted that GMACM never held any ownership stake in the loan and never held itself out to be the owner. (*See* Debtors' Reply ¶ 3.) The Court rejected the "functional holder" theory and held that since GMACM was only the loan servicer, it could not be liable for TILA violations. *See* 15 U.S.C. § 1641(f)(1) (precluding a loan servicer from liability unless the servicer is or was the owner of the loan).

The Gilberts now ask the Court to reconsider its ruling that GMACM cannot be liable for TILA violations on two grounds: (1) GMACM explicitly agreed to become the assignee of the loan; and (2) other courts have adopted a "functional holder" theory and imposed TILA liability on loan servicers. In support of the first theory, the Gilberts now argue that as part of an agreement with third parties, GMACM explicitly agreed to become the assignee and functional holder of the loan. (Motion ¶¶ 13–19.) The Gilberts cite the Standard Terms of Pooling and Servicing Agreement between and among Residential Accredit Loans, Inc., Residential Funding Company, LLC and Deutsche Bank Trust Company Americas as Trustee:

> Section 3.01 <u>Master Servicer to Act as Servicer</u>.
>
> (a)     The Master Servicer shall service and administer the Mortgage Loans in accordance with the terms of this Agreement and the respective Mortgage Loans and shall have full power and authority, acting along or through Subservicers as provided in Section 3.02, to do any and all things which it may deem necessary or desirable in connection with such servicing and administration.

(Motion ¶ 13.) This agreement was entered into on March 1, 2006; it is not the type of newly discovered evidence for which relief may be granted upon a motion for reconsideration. *See Webb v. City of New York*, No. 08 Civ. 5145 (CBA), 2011 WL 5824690, at *1 (S.D.N.Y. Nov.

5

17, 2011) ("[T]o the extent that a motion for reconsideration relies on new evidence, the movant must demonstrate that the newly discovered evidence could not have been discovered 'with reasonable diligence' prior to the court's ruling."). More importantly, this provision does not change the Court's analysis. The plain language of this contractual provision indicates that the master servicer and subservicers "shall have full power and authority . . . to do any and all things which [they] may deem necessary or desirable in connection with such *servicing and administration*." (Motion ¶ 13 (emphasis added).) This term does not transform servicers and subservicers into "owners," "functional holders," or "assignees" of the note. Accordingly, contrary to the Gilberts' assertion, GMACM did not "explicitly h[o]ld itself out as the assignee and functional holder of the obligation." *Id.*

The Gilberts' second claim that, through its conduct, GMACM implicitly represented itself as the functional holder of the obligation is equally unavailing. Citing *Smith v. Argent Mortgage Co., LLC*, 447 F. Supp. 2d 1194 (D. Colo. 2006), and *In re Meyer*, 379 B.R. 529 (Bankr. E.D. Pa. 2007)—two cases the Gilberts failed to cite in their brief in response to the Claims Objection—the Gilberts argue that TILA does not protect servicers that exercise decisionmaking authority. (*See* Claimants' Response ¶¶ 14–28.) To the contrary, the statutory language is clear; a loan servicer will not be treated as an assignee liable for TILA violations "unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f). Even assuming the Gilberts are correct that GMACM held itself out as the decision maker regarding rescission of the Gilberts' loan, the statute does not impose TILA liability on a loan servicer that was the decision maker.

The Gilberts' attempted end-run around section 1641(f) must fail—loan servicers typically are authorized to act as the agent for the owner of the note, handling all aspects of loan

6

servicing, including in most circumstances responding to demands for rescission. This does not convert a loan servicer into a "functional holder," a theory offered by the Gilberts for statutory liability that is not supported by the statute. The limitation imposed by section 1641(f) cannot be so easily evaded. GMACM was never the owner of the obligation and cannot be liable under TILA.

The Gilberts' TILA claim can be asserted against the owner of the note, not against GMACM. As the Court stated in the Original Opinion, "it appears that Deutsche Bank, as trustee for RAL, is the current holder of the note."[1] *Residential Capital*, 501 B.R. at 536. In fact, the Gilberts named Deutsche Bank as a defendant in their state court action that was then removed to federal court, alleging that Deutsche Bank Trust Company Americas was the "owner and holder of the [note]." (*See* Claims Objection, Ex. 3 at 269 ¶ 2.)

Neither of the cases cited by the Claimants alter the Court's determination in the Original Opinion that GMACM cannot be held liable for the alleged TILA violations. In *Smith*, the court interpreted a *pro se* plaintiff's complaint as sufficient to survive a motion to dismiss. There, the court concluded that the complaint:

> could support a reasonable inference that [the loan servicer] is, at least in part, responsible for decisions regarding rescission of the transaction. Assuming the allegations in the Complaint to be true, it is conceivable that the plaintiffs could prove facts entitling them to relief against [the loan servicer] on claim two.

447 F. Supp. 2d at 1199. The court did not cite any authority for this statement and, most importantly, the court did not discuss TILA section 1641(f). This is a weak reed to support the

---

[1] While the Court notes that the North Carolina Court of Appeals found that "the record is lacking of competent evidence sufficient to support that [Deutsche] is the owner and holder of Mr. Gilbert's note and deed of trust," *In re Simpson*, 711 S.E.2d 165, 175 (N.C. Ct. App. 2011), the Court draws a distinction between what was known to the Gilberts and what Deutsche was able to sufficiently demonstrate in a court of law, *see Gilbert v. Residential Funding LLC*, 678 F.3d 271, 281 (4th Cir. 2012).

7

argument about liability extending to a "functional holder." The Court declines to follow the *Smith* case.

*Meyer* also does not support extending liability to GMACM. There, in order to initiate a claim of rescission, the plaintiffs made a qualified written request under RESPA, seeking the identity of the current owner or master servicer of a loan from both the prior holder of the loan and the current loan servicer. *See Meyer*, 379 B.R. at 551. In response, the current loan servicer—a previous owner of the loan—failed to provide the requested information. By the time the plaintiffs learned the current owner's identity, the statute of limitations had run on the rescission claim and no claim could be asserted against the current owner. *See id.* at 549–52. Under those circumstances, the bankruptcy court concluded that the facts of the case supported application of equitable estoppel, barring the loan servicer from denying that it was a holder (*i.e.*, creditor) of the loan. *See id.* at 554. The court did not adopt either a functional holder or "decision maker" theory of liability. The Gilberts never asserted that equitable estoppel applies here, and the facts clearly do not support its application.

The Gilberts did not request the identity of the noteholder so they could send a rescission letter. Instead, the Gilberts sent the rescission letter to the loan servicer, GMACM, addressed to the "Holder of Loan # _____2713." (*See* Claims Objection, Ex. 2-B at 99–100.) GMACM responded, refusing to rescind the loan. (*See id.* at 101.) The Gilberts obviously determined who owned the loan because the Gilberts sued Deutsche Bank as the purported "owner and holder of the [note]" and timely requested rescission. (*See id.* Ex. 3 at 269 ¶ 2.)

Both *Smith* and *Meyer* were decided well before the Gilberts filed the Claimants' Response—a motion for reconsideration is not an opportunity for making arguments that could have been previously advanced. *See Associated Press*, 395 F. Supp. 2d at 19. In any event, the

8

Court is not persuaded that *Smith* or *Meyer* should lead the Court to change the result reached in the Original Opinion.

For these reasons, the Court rejects the "functional holder" or "decision maker" theories of liability and **DENIES** this portion of the Motion.

### B.    *Attempted Wrongful Foreclosure Claim*

The Opinion concluded that the Gilberts may not pursue a claim against the Debtors for "attempted wrongful foreclosure." *See Residential Capital*, 501 B.R. at 540. While North Carolina recognizes a civil cause of action for wrongful foreclosure, there has been no foreclosure in this case. *See id.* at 542. Moreover, no North Carolina court has ever recognized "attempted wrongful foreclosure" as a cause of action.

The Gilberts fail to satisfy the standards for reconsideration in asking the Court to revisit this issue. They assert that they "respectfully reject the idea that simply because a cause of action has not previously been brought there can never ever be such a cause of action." (Motion ¶ 39.) But the Gilberts have neither introduced any new evidence related to the Court's previous ruling on this matter nor established that the Court's Opinion was based upon a "clear error of law." The Gilberts simply disagree with the Court, which is an insufficient basis for reconsideration. *See Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

As it relates to the Gilberts' "attempted wrongful disclosure" claim, the Motion is **DENIED**.

### C.    *North Carolina Unfair and Deceptive Trade Practices Act Claim*

The Gilberts next argue that under North Carolina law a "violation of a statutory provision designed to protect the consuming public may constitute an unfair and deceptive practice as a matter of law." (Motion ¶ 50.) They claim that GMACM could have violated the

9

North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") by violating TILA. *See* N.C. Gen. Stat. 75–1.1, *et seq.* As both the Fourth Circuit and this Court have already held, though, GMACM cannot be liable for the original creditor's conduct. *See Gilbert*, 678 F.3d at 280; *Residential Capital*, 501 B.R. at 544.

The elements of a claim for unfair and deceptive trade practices in violation of UDTPA are: (1) an unfair or deceptive act or practice, or an unfair method of competition; (2) in or affecting commerce; (3) which proximately caused actual injury to the plaintiff or to his business. *See Dolan v. Dickson Props., Inc.*, 735 S.E.2d 632, 632 (N.C. Ct. App. 2012) (citing N.C. Gen. Stat. § 75–1.1). According to N.C. Gen. Stat. § 75–1.1 and 75–16, recovery is limited to those situations where plaintiffs can show that they detrimentally relied upon a statement or misrepresentation, and they suffered actual injury as a proximate result of the deceptive statement or misrepresentation. The Gilberts ask the Court to reconsider several elements of its UDTPA analysis.

*First*, the Motion argues that by conflating the Gilberts' usury claim with a disclosure violation under TILA, the Court erred as a matter of law. (*See* Motion ¶ 51.) The Court did not conflate the two arguments. As the Gilberts concede, the Court found that the collection of interest in excess of the rate provided for by agreement could constitute a UDTPA violation. Even so, the Court reviewed the evidence and found no indication that GMACM collected interest at a higher rate than what was indicated in the Gilberts' loan documents and TILA disclosure. *Residential Capital*, 501 B.R. at 546. The Court further concluded that "the Gilberts failed to substantiate the $37,076.92 claimed in damages for this portion of the claim." *Id.* The Gilberts do not present any new evidence or controlling law to rebut this finding. Instead, they concede that they "do not have sufficient information at this stage . . . to do more than state that

10

the Fourth Circuit found they had stated a claim." (Motion ¶ 54.) The Gilberts therefore fail to meet their burden in requesting reconsideration because they present no new evidence or controlling law and instead only reiterate facts that the Court considered upon its first ruling. *See Int'l Bhd. of Teamsters*, 247 F.3d at 391.

As it relates to the purported collection of usurious interest rates constituting a violation of the UDTPA, the Motion is **DENIED**.

*Second*, the Gilberts argue that the Court erred by finding that GMACM's refusal to honor rescission does not rise to the level of an unfair and/or deceptive act or practice under North Carolina law. Rather than addressing the Court's conclusion that "GMACM's conduct in denying the Gilberts' demand for rescission does not rise to the level of unfair or deceptive practices as defined by UDTPA," *see Residential Capital*, 501 B.R. at 547, the Gilberts launch a strongly worded attack on GMACM. The Gilberts state that GMACM's refusal to rescind the loan:

> absolutely evinces unfairness to the point of immorality, oppressiveness, and offends established public policy. It is unfair, immoral[,] and oppressive for GMAMC[*sic*][,] a major mortgage servicing company[,] to willfully violate an Act designed to promote the informed use of credit by the consuming public. It is unfair, immoral[,] and oppressive for GMACM, a major mortgage servicing company, to wrongfully place the burden upon the borrower to initial legal action to protect his right to rescind.

(Motion ¶ 61.) This argument presents no new facts or controlling law and only states the Gilberts' opinion about GMACM's conduct. It does not suffice to warrant reconsideration of the Court's earlier ruling, and that portion of the Motion is **DENIED**.

*Third*, the Gilberts assert that "GMACM's conduct in attempting to proceed with a foreclosure of Gilberts' home without an order authorizing the sale constitutes an unfair and/or deceptive act or practice under the UDTPA." Motion ¶ 67. This is the first time the Gilberts

11

have raised this issue with the Court. *See Residential Capital*, 501 B.R. at 544[2]; *see also* Claimants' Response, Ex. A. A motion for reconsideration is not a vehicle to present the case under new theories. *See Analytical Surveys*, 684 F.3d at 52.

The Gilberts' request for reconsideration on the grounds that GMACM's attempted foreclosure violated the UDTPA is therefore **DENIED**.

*Fourth*, the Gilberts argue that the Court should revive their UDTPA claim against the GMACM for creating a new indorsement to the allonge to their note (the "Allonge," Motion Ex. 2). The Gilberts did not articulate this claim in their original proof of claim or original lawsuits against the GMACM, nor did the Gilberts brief this argument before the Court's Original Opinion. Instead, the Gilberts attached to the Claimants' Response a purported amended proof of claim and they filed that amended claim with the Debtors' claims agent on September 13, 2013. The amended proof of claim includes a "Summary of Damages," which alleges damages for "[c]reation of a new indorsement to the Note outside the chain of title together with threats to reinstitute foreclosure using said false indorsement."

A motion for reconsideration is not the proper instrument to advance arguments for the first time. Since the Gilberts did not previously raise this issue and the Court did not consider this argument in its Original Opinion, this portion of the Motion is **DENIED**.

*Fifth*, the Gilberts argue that GMACM's "attempted wrongful foreclosure" violated the UDTPA. But the Gilberts previously presented GMACM's "attempted wrongful foreclosure" as a separate cause of action, not as a violation of the UDTPA. (*See* Claimants' Response, Ex. A.)

---

[2]   In their complaint, the Gilberts identify several causes of action under the UDTPA: "(a) disclosing, charging and collecting usurious rates of interest; (b) failing to make material disclosures pursuant to the requirements of the federal Truth in Lending Act; (c) failing to take affirmative steps to cancel the plaintiffs' Deed of Trust upon their notice of rescission; (d) falsely representing to be the owner and holder of plaintiffs' note and deed of trust [.]" *Residential Capital*, 501 B.R. at 544 (quoting ECF Doc. # 4767, Ex. B ¶ 82 (the "Complaint")).

12

Therefore, the Court need not entertain this claim upon a motion for reconsideration. *See Associated Press*, 395 F. Supp. 2d at 19 (a motion consideration is not an opportunity for making arguments that could have been previously advanced).

This portion of the Motion is therefore **DENIED**.

### D.    *Debt collection violations*

In the Complaint, the Gilberts alleged that GMACM "falsely represented the character, extent, or amount of debt to a consumer pursuant to N.C. Gen Stat. § 75-54(4) . . . ." In partially defining fraudulent representations, section 75-54(4) reads:

> Falsely representing the character, extent, or amount of a debt against a consumer or its status in any legal proceeding; falsely representing that the collector is in any way connected with any agency of the federal, State or local government; or falsely representing the creditor's rights or intentions.

N.C. Gen. Stat. § 75-54(4).

In the Original Opinion, the Court found that "the purported false representation must occur 'in a legal proceeding.'" *Residential Capital*, 501 B.R. at 548 (citing *Key v. Dirty S. Custom Sound & Wheels*, No. 09 Civ. 32, 2009 U.S. Dist. LEXIS 46907, at *4 (E.D.N.C. June 3, 2009)). The Court sustained the objection to the Gilberts' claim under the North Carolina Debt Collection Act ("NCDCA"). But, the Original Opinion overlooked the statute's language regarding the debt's "status in any legal proceeding . . . ." N.C. Gen. Stat. § 75-54(4).

In support of their request for reconsideration, the Gilberts reference affidavits used by the Debtor in the state foreclosure proceedings that conflict with the deposition testimony of Jeffrey Stephan in another case. (*See* Motion ¶ 83.) The Gilberts argue that the affidavits used in this case falsely represented the identity of the holder of the note at the time of the foreclosure suit. (*See id.* ¶ 84.) GMACM has maintained throughout this litigation that Deutsche Bank was the owner of the Gilberts' note at the time the foreclosure proceeding was commenced. But the

13

state appellate court, in reversing the trial court foreclosure judgment against the Gilberts, concluded that Deutsche Bank failed to definitively prove that it had standing to foreclose on the Gilbert's property. *See In re Simpson*, 711 S.E.2d 165, 175 (N.C. Ct. App. 2011). The court was troubled by the fact that a court in Maine concluded that Stephan had submitted a false affidavit on behalf of GMACM in the case in Maine. *Id.* at 494 n.2. Of course, the issue here is not whether a false affidavit was used in another case in another state; the Gilberts need to demonstrate that a false affidavit was used in this case.

In the Original Opinion, the Court overruled the objection to a portion of the UDPTA claim because of the allegation that "GMACM provided false affidavits in the foreclosure suit." *Residential Capital*, 501 B.R. at 547. The Court further stated:

> If the Debtors' were able to show that the assertions in the Stephan[]'[s] affidavit were true, it may constitute a defense against a suit based on the allegedly fraudulent affidavit. But the proposition that Deutsche Bank is the rightful noteholder has not been proven conclusively in the preceding litigation and the Debtors have not offered evidence supporting the assertion. The identity of the noteholder is unclear, and so the Gilberts may be correct in their assertion that the Stephan affidavit was fraudulent.

*Id.* at 548. As a result, the UDPTA claim survived the Claims Objection. The same logic applies to the NCDPA claim.

To the extent that the Gilberts argue that the fraudulent affidavit used in a legal proceeding raises an issue of the "status of the debt," the NCDPA claim should survive. To be sure, the Court has not determined whether the affidavits advanced in the foreclosure proceeding were fraudulent. The identity of the noteholder at the time of the foreclosure is an unresolved question of fact. The Court **GRANTS** this portion of the Motion and reinstates this portion of the claim under the N.C. Gen. Stat. § 75-54(4) to the extent that the Gilberts assert that the affidavits filed in the state foreclosure proceedings contained fraudulent misrepresentations. It

should be noted, however, that section 75–54(4) applies to "debt collectors."  In further proceedings in connection with this matter, both parties should address whether GMACM is a "debt collector" under the statute.

### III.     CONCLUSION

Based on the foregoing, the Motion is **DENIED** in part and **GRANTED** in part.  The Court will enter a separate order scheduling a conference to establish procedures for resolving the remaining issues concerning the Gilberts' claim.

**IT IS SO ORDERED.**

Dated:  April 14, 2014
         New York, New York


                                            _____/s/Martin Glenn_____
                                                MARTIN GLENN
                                            United States Bankruptcy Judge