G L Philpot
407 Valley Drive
PO Box 667
Attalla, AL 35954-0667



212-668-2870

Attention: **Annya Acosta, Deputy Clerk of Court**
United States Bankruptcy Court
for the Southern District of New York,
Alexander Hamilton Custom House
One Bowling Green, Room 501
New York, NY 10004

Ms Acosta, Please File the enclosed main
document with an assigned
number in the Case No 12-12020(MG)
and if acceptable, e-mail to
me the document number and
filing date.

Gwendell L. Philpot 4/10/2014

GWENDELL L. PHILPOT
*Creditor/Claimant*, Claim Number 5067
PO BOX 667
Attalla, Alabama, 35954
Telephone: 256-309-9850

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**CREDITOR/CLAIMANT:**
GWENDELL L. PHILPOT, Claim Number 5067, Date Filed: November 15, 2012

### CREDITOR/CLAIMANT'S REPLY AGAINST DEBTORS' SECOND SUPPLEMENTAL OMNIBUS REPLY Doc 6089 AND THIRD SUPPLEMENTAL DECLARATION OF DEANNA HORST Doc 6089-2 REGARDING DEBTORS' THIRTIETH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER CLAIMS – BOOKS AND RECORDS)

GWENDELL L. PHILPOT (the "Claimant") in the above-captioned chapter 11 case (the "Chapter 11Case") hereby submits this reply to and against Residential Capital, LLC (ResCap) and its affiliated debtors and debtors in possession (collectively, the "Debtors") the Debtors supplemental omnibus reply (the "Second Supplemental Reply" 6089) and (the "Third Supplemental Declaration of Deanna Horst 6089-2) only relating to that certain response (the "Response") interposed by Claimant, the claimant Gwendell L. Philpot [Docket No. 5233] to the *Debtors' Thirtieth Omnibus Objection to Claims (No Liability Borrower Claims – Books and Records)* [Docket No. 4887] (the "Objection").

### PRELIMINARY STATEMENT

1.      Debtors assert they examined their books and records and found no liability with respect to the claims asserted by Claimant. Having continually in all communication relating to Claimant's claim #5067, referenced and designated the computer log files of the Debtor's "Pay-by-Phone" "Payment Processing System" on September 30, 2008 as part of the Debtor's books

and records, being the primary evidence of Claimant's claim as to the failure of the Debtors to properly manage said payment and the Debtors clearly having an understanding of the basis of Claimant's claim as they referenced in paragraph 11 on page 5 of 9 and in said document of Deanna Horst, paragraph 6 on page 4 of 6, the Debtors continue to fail to respond to such books and records including, as of today, the Debtors failure to respond to or comply with the Subpoena to Deanna Horst for delivery of the items listed below to Claimant by January 28, 2014, such Subpoena, attached hereto as **Exhibit 1**, having been properly and timely served with "Proof of Service" having been timely filed with this Court:

> ***YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):*** *Computer code and software operational diagrams which provide and show human user interface with verbal prompts correlated to corresponding telephone key actuation commands of software as in operation on September 30, 2008 between the hours of 10:00PM and midnight Central Time, such software code and version which was in use by HOMECOMINGS FINANCIAL, LLC, GMAC Mortgage, LLC (ResCap) within its data processing center for "Pay-By-Phone" mortgage account Payment Processing System which serviced Loan Account Number:7412259657. With specificity, requesting all "Pay-By-Phone" logs related to Loan Account Number: 7412259657 (Claimant's account) between September 15 and October 15, 2008. Integral to Claimant's account information, provide the related transactional records (Log Files) of the same account and dates stated above with all data related to calls originating at telephone number 1-256-280-9128 including voice/key actuation command/prompt/reply and (System Administrative Log Files) of same activity and events. Include with production of above the product names of software, developers, copyright holders, service providers and computer operating systems of operations.*
> **PLACE**
> 407 Valley Drive, Attalla, Alabama 35954 *with copy to* the clerk of the Honorable Martin Glenn at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, Room 501, New York, NY 10004
> **DATE AND TIME**
> January 28, 2014, 5:00 PM

Such documents and objects as books and records of Debtor's "Pay-By-Phone" would clearly show the failure of Debtors to properly process Claimant's phone payment in a timely manner, a process as Claimant's diligently communicated to the Debtors in e-mails which were included in Claimant's "Proof of Claim." Had Debtors "Pay-By-Phone" system operated properly or had the Debtors corrected their system error by processing Claimant's payment as it was actuated on September 30, 2008, there would not have been a foreclosure, but such failure by the Debtors along with the Debtors' erroneous methods of mortgage servicing were the causes of Claimant's financial loss and is the basis of Claimant's claim.

2.    The failure of Deanna Horst to provide such log file software code does not negate the fact that such records exist and can be reviewed by competent information technology professionals employed by the Debtors at the direction of Deanna Horst with such records provided to this Court for review. Claimant's diligent repeated reference to such September 30, 2008 log files of Debtors, Homecomings Finance, in claimant's e-mails to Debtors and as integral statements of Claimant's claim, Debtors are well aware of such log files being part of its "Records" and "documents and objects" therefore, such failure by Debtors to produce such does not negate the fact that computer generated log files existed as an integral function of computer processing software development code used and maintained by Debtors in its ordinary course of

business for its own "Pay-by-Phone" system on September 30, 2008 between the hours of 10:00 PM and midnight Central Time, and Debtors having been immediately notified of its "Payment Processing Failure" and so requested to rectify such failure, that Debtors would have such "Log file Records" in its possession for reference as evidence to this Court, Debtors apparently believe they can assert incorrect aspects of Claimant's mortgage management that are immaterial to this claim as though Claimant's was in error in managing the mortgage.

3.      Contrary to Doc 6089 paragraph 2, Claimant's claim provides clear explanation as to why Claimant's claim is valid and such proof to demonstrate the validity of claim rest with the "documents and objects" referenced above relating to the stated subpoena.
The Proof of Claim itself is prima facie evidence of the amount owed and included supporting documents with the claim make the extent and nature of the debts clear.  Contrary to the statements in the "Reply," Debtors never requested of Claimant to provide additional supporting documents, and Debtors are well aware of the basis of the claim as evidenced in e-mails to Homecomings Financial immediately after the failure of its system to properly manage the payment Claimant's made on September 30, 2008, copies of which are in records of Debtors and were included with Claimant's original claim.  In addition, the Debtors were provided with full financial records in Claimant's request for loan modification, such records included copies of bank statements showing the funds available for withdrawal as was normal in past payment transactions.

4.      In addition, Claimant  has before asserted and do herein assert Claimant had an agreement with Debtors, which allowed Claimant to be thirty (30) days late in Claimant's payment, and as long as Claimant was not sixty (60) days late, there would be no action of foreclosure taken against Claimant despite the normal thirty day notices.

5.      In paragraph 3 Doc 6089, Debtors state they did not receive an online payment from Claimant on or around September 30, 2008 and (ii) the Debtors did not receive payments from Claimant for the months of August 2008 through the foreclosure sale in February 2013. Claimant never made any statement to the contrary.  The failure of the September 30, 2008 payment was due to the failure of the "Pay-By-Phone" system of the Debtors and Claimant's refused to make any additional payments unless the Debtors first corrected the error of their system such that it reflected the true accurate actuation of Claimant's payment to the Debtors in a timely manner as has been stated before.  In addition, Claimant tried to obtain a settlement by way of a short sale to secure the Debtors' mortgage funds in an agreement with a real estate agent, then affiliated with GMAC, but as is evidenced in **Exhibit 6** herein included, the realtor states the Debtors did not cooperate with such process. As to the foreclosure, such only occurred after the Debtors, in failing to correct their errors, caused Claimant's financial collapse which resulted in Claimant's bankruptcy, after which Claimant's attempted to keep the property by exercising Claimant's only financial option of obtaining a loan modification, a process that contrary to the Debtor's statements in the paragraph that Claimant's failed to execute and/or return the necessary loan modification documents, Claimant followed correctly and completely as requested by the Debtors with the exception of conflicting instructions by the Debtors to Claimant and the attorneys that represented Claimant in discussions with the Debtors at that time. Despite this aspect not being part of Claimant's claim against the Debtors, they have referenced such as though Claimant was negligent in trying to obtain a loan modification when

in fact the Debtors did not maintain consistent communications between various internal staff and departments causing conflicting information to be communicated to Claimant and his attorneys, Pamela Jackson, Glynn Tubb and Nick Roth. **Exhibit 2** attached hereto is a table composed and written by Claimant whereon he documented on the date of each communication, the contacts with the Debtors including date, time, person contacted, contact phone number, contact's department, location and comments relating to each communication, of which such documentation is a record of the Claimant showing the chaos and inconsistency on the part of the Debtors with respect to improper management by the Debtors in regard to efforts by the Claimant and Claimant's attorneys to properly obtain a loan modification. With respect to said paragraph 3, page 3 of 9, Debtors' assertion that Claimant's loan modifications were ultimately unsuccessful due to Claimant's failure to execute and/or return the necessary loan modification documents, such assertion is completely false, and such records of Claimant included within **Exhibit 2** clearly document the dates which Claimant met all requirements of Debtors with respect to all loan modification attempts, therefore Debtors' mismanagement by Debtors' staff in various departments caused the failure of the loan modifications.

6.    Concerning paragraph 6, page 3 of 9, the Debtors have never provided one single point of contradiction filed by Claimant relating to any books and records of Debtors, and Claimant has clearly defined the basis of the liability of Debtors with respect to Claimant.

7.    Concerning paragraph 7, page 4 of 9, the Claimant never received any such "Request Letters."

8.    Claimant has established proof of injury by Debtors to Claimant.

9.    Concerning paragraph 9. Page 4 of 9, the Debtors did not exhaust a complete examination of their books and records in the Debtors' failure to comply with the Subpoena per **Exhibit 1**.

10.    Concerning paragraph 11, page 5 of 9, Claimant agrees that Debtor clearly now understands the rationale of Claimant's claim.

11.    Concerning the payment history referenced in paragraph 12, page 5 of 9, and paragraph 13, page 6 of 9, Claimant agrees that the Debtors' payment history books and records may not show a payment of September 30, 2008 because the Debtors "Pay-By-Phone" system failed, yet the Debtors "Pay-By-Phone" computer log files, as an integral part of the Debtors books and records, as required by the Subpoena of **Exhibit 1** would show the error of the Debtors system to properly record and process said payment which caused the Claimant's loss. In addition, the Debtors were requested by the Claimant to correct the error of said payment, back dating such per the log files, yet the Debtor refused to comply and still refuses to provide such log files as evidence to this Court.

12.    Concerning paragraphs 14 and 15, page 6 of 9, the Debtors advice to the Claimant to contact the bank of the Claimant was done by the Claimant which showed the funds allocated for the payment were still in the designated bank account and such funds were available for the Debtors to obtain if the Debtors reviewed their log files and corrected their error, a process the

Debtors refused to do, yet stated they did have a "Voice Recognition Unit" error, a process not used by the telephone key actuated "Pay-By-Phone" system failure. Still, the Debtors recognize and admit to such error and failure of their system.

13.     Concerning paragraph 16, page 6 of 9, the Debtors state the Claimant still owed for the loan after the Claimant's bankruptcy discharge on May 21, 2009, and improperly and illegally reported the same to the credit bureau and sent Claimant such statement as in **Exhibit 7**.

14.     Concerning the paragraphs 17 and 18, page 7 of 9, the loan modification was not denied on the basis that the Claimant did not timely submit the follow-up documentation. Also, contrary to statements in paragraph 17, per the guidelines of the loan modification process, the Claimant and his wife together did have an income that qualified for a loan modification. As referenced herein in **Exhibit 2**, the Claimant herewith affirms he fulfilled all required documentation requested by the Debtors despite the Debtors mismanagement between various departments and staff to properly process the documentation submitted by both the Claimant and his attorneys, as Claimant has stated in paragraph 5 above. As referenced in **Exhibit 3** in a letter of July 15, 2009 to Ken Fisher, Manager, Loss Mitigation Department, GMAC Mortgage, the communication record as delineated in **Exhibit 2** on row 7/15/2009 of attorney Pamela Jackson's communication record and rows 7/15/2009 through 7/22/2009 of Claimant's record which shows the result of such documentation being received by Debtors such that the foreclosure sale was postponed by Debtors' attorney, Colleen McMullough, the Claimant did clarify to the Debtors that he and his attorney, Pamela Jackson did, in difference to such comments in Debtors' paragraph 17, page 7 of 9, submit all documentation as requested which was included with said letter and included written background as to the financial history of the Claimant with respect to his diligent efforts to fulfill any obligations to the Debtors within the scope of the Debtors' errors of 2008 as had been communicated in previous documentation to the Debtors and the subsequent inability of the Claimant to secure financing in October 2008 for continued operation of a business plan, the results of the Debtors "Pay-By-Phone" processing failure, the sole basis of the Claimant's claim #5067, did by such letter to Ken Fisher, requested a Loan Modification "Making Homes Affordable" Program, which the Claimant properly followed the US FHA guidelines to obtain counseling from an approved agency, Housing Education Program, 595 Market Street, San Francisco, CA, who took the Claimant's application and filed same with GMAC Mortgage, such application which the Claimant also included with the Claimant's documentation to the Debtors, as a pre-qualified loan application.

15.     The Claimant herewith asserts that despite his loss of business loans caused by the Debtors' system failure, which caused his inability to continue his commitments of the mortgage with the Debtors and the subsequent bankruptcy which eliminated the Claimant's equity in said property related to this claim, the Claimant afterward, diligently did seek a loan modification with the Debtors within all legal remedies which would allow the Claimant to maintain his family home in good condition after repairs owed to Claimant, being the home-place of deceased U.S. Federal Judge Seybourn H. Lynne, such property that the Claimant did use all his retirement funds and financial resources to maintain for historic preservation and continued family unity. Yet, as recorded by the Claimant in **Exhibit 2**, rows 8/11/2009 through 5/17/2010, the Debtors continued to mismanage such loan modification request by a process that could best be described as, "the left hand does not know what the right hand is doing" as the mismanagement process of

the Debtors during this time period, a systemic failure of the Debtors which the Claimant, himself being a computer designer, now believes was caused by the Debtors change in its antiquated non-integrated computer system during its migration to a new system as a result of financial mergers causing gross lack of communication between the various Debtors' staff in Loss Mitigation, Loan Servicing, and Loan Modification, including attorney for Debtors, Sirote & Permutt, such that contacts by the Claimant and his attorneys with one department of the Debtors or their attorneys did not properly show in computer files regarding the Claimant's record in other Debtors' departments. Still, Claimant had no control over the Debtors' systematic inadequacies or failures or the Debtors' staff to properly manage the Claimant's requests, yet the Claimant continued to diligently comply with all the Debtors' communication, himself and by his wife and attorneys, as in Claimant's June 30, 2010 letter herein as **Exhibit 4** to GMAC Mortgage, LLC, Loss Mitigation seeking clarification of any discrepancies of the effective dates and other points contained within the agreement. The Claimant even continued to seek to obtain from Nationwide Insurance Company, the agreement to repair said property, including himself managing the construction of a new roof and foundation structural repairs, repairs which were performed by December 28, 2012, just prior to the 2013 foreclosure as described by the Debtors, all while the Claimant continued to work with the contractor to complete those repairs to the property as caused by the 2009 Easter storm damage to the property prior to the discharge of the Claimant's bankruptcy, such diligence which demonstrates the extent to which the Claimant exercised his integrity in caring for the continued maintenance for the property after knowing the Debtors would not properly manage the Claimant's request for a loan modification and the Claimant's knowledge he would not be able to keep the property. Such integrity of the Claimant to keep the property in excellent marketable condition and for the property's historic importance as a contributing structure to the Bank Street/Old Decatur Historic District as listed on the National Register of Historic Places, is in difference to that which the Debtors have stated by their statements related to only limited documents of the Debtors books and records, rather than a complete analysis of the total communications between all the Debtors' staff and attorneys between the Claimants and the attorneys who represented him, evidenced by the Debtors' lack of complying with the referenced subpoena of **Exhibit 1**.

16.    With regard to the Debtors' statements that the Claimant did not properly comply with the Debtors' request for the loan modifications, the Claimant requested and obtained an agreement for Colleen McCullough, Attorney at Law with Sirotte & Permutt for the Debtors to handle all documentation between the Claimant and Debtors, as evidenced by a letter which described the historic problems between Claimant and Debtors to Colleen McCullough on February , 2011 as contained herein as **Exhibit 5**, with copy to the then attorney for Claimant, J. Glynn Tubb of EysterKey. Still, after which, the Debtors continued to mismanage the loan modification.

17.    As to the Debtors comments in paragraph 18, page 7 of 9, the Claimant's letter to the Debtors,  included herein as **Exhibit 3**, clearly states the history of the Claimant's efforts to work out a solution which would allow the Claimant to satisfy all responsibilities to the Debtors with respect to managing the mortgage or sale of the property, a process which would satisfy the financial requirements to the Debtors with regard to the mortgage agreements and only after the Debtors' failure to manage their "Pay-By-Phone" system or correct the errors of such system failure did the Claimant seek other means to either sale in a manner approved by Debtors or maintain possession of his family home-place by legal means including a loan modification, a process which the Debtors publically stated in written documentation, the Debtors supported, yet

such application by the Claimant to the Debtors was grossly mismanaged by the Debtors, yet such mismanagement of such by the Debtors is not the basis of the Claimant's claim #5076, and the Claimant herein only references such in response to the Debtors incorrect comments against the Claimant and the Claimant's response herein to refute such inaccurate comments.

18.     On July 26, 2013 GMAC Mortgage, a Debtor in this action, reached an agreement with the Federal Reserve Board to pay $230 million in direct cash payments to eligible borrowers of which Claimant is listed.  The Federal Reserve Board issued enforcement actions against GMAC Mortgage in April 2011. Under those actions, GMAC Mortgage was required to retain an independent consultant to review foreclosures that were initiated, pending, or completed during 2009 or 2010. The review determined if borrowers suffered financial harm directly resulting from errors, misrepresentations, or other deficiencies that may have occurred during the foreclosure process. After such review of Claimant's documentation to the independent consultant, Claimant was categorized as a recipient in that process having suffered financial harm directly resulting from errors, misrepresentations, or other deficiencies that occurred during the foreclosure process as referenced by Debtors herein and Rust Consulting has sent a portion of the $630,000.00 claim to Claimant which will be deducted from the Claimant's claim #5067 against the Debtors.  This statement is listed that contrary to the Debtors' statement in paragraph 19, page 8 of 9,  that the Debtors, "*at all times, complied with the appropriate guidelines and policies governing the loan modification process and acted properly with respect to Mr. Philpot's late payments, loan modification requests, credit reporting and foreclosure.*", the Debtors did not.

19.     With respect the Claimant and to the information contained above, the relief sought by Debtors in the Objection referenced in paragraph 5, page 3 of 9, should not be granted.

Reply to Claimant at address below:

Dated: April 10, 2014

GWENDELL L. PHILPOT, CREDITOR/CLAIMANT, #5067
PO BOX 667
Attalla, Alabama, 35954
Telephone: 256-309-9850

### Exhibit 1

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

# UNITED STATES BANKRUPTCY COURT

Southern District                          of          New York

In re  RESIDENTIAL CAPITAL, LLC, et al

Debtors

**SUBPOENA IN A CASE UNDER
THE BANKRUPTCY CODE**

Case No. *          12-12020 (MG)

To:    Deanna Horst
       Senior Director of Claims Management for
       Residential Capital, LLC
       1100 Virginia Drive
       Fort Washington, PA 19034

Chapter          11
                 Jointly Administered

C/O Norman S. Rosenbaum
MORRISON & FOERSTER LLP, *Counsel for the Debtors and Debtors in Possession*
1290 Avenue of the Americas
New York, New York 10104

- YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| Not applicable | DATE AND TIME |

- YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Not applicable | |

**X**  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): Computer code and software operational diagrams which provide and show human user interface with verbal prompts correlated to corresponding telephone key actuation commands of software as in operation on September 30, 2008 between the hours of 10:00PM and midnight Central Time, such software code and version which was in use by HOMECOMINGS FINANCIAL, LLC, GMAC Mortgage, LLC (ResCap) within its data processing center for "Pay-By-Phone" mortgage account Payment Processing System which serviced Loan Account Number: 7412259657. With specificity, requesting all "Pay-By-Phone" logs related to Loan Account Number: 7412259657 (my account) between September 15 and October 15, 2008. Integral to my account information, provide the related transactional records (Log Files) of the same account and dates stated above with all data related to calls originating at telephone number 1-256-280-9128 including voice/key actuation command/prompt/reply and (System Administrative Log Files) of same activity and events. Include with production of above the product names of software, developers, copyright holders, service providers and computer operating systems of operations.

| PLACE 407 Valley Drive, Attalla, Alabama 35954  *with copy to the clerk of the Honorable Martin Glenn at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, Room 501, New York, NY 10004* | DATE AND TIME  January 28, 2014, 5:00 PM |
|---|---|

- YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| Not applicable | |

Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in bankruptcy cases and proceedings by Rules 1018, 7030, and 9014, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE | CLERK OF COURT | DATE |
|---|---|---|
| Annya Acosta<br>Deputy Clerk | *Annya S. Acosta*<br>Signature of Clerk or Deputy Clerk | 1/17/2014 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
Vito Genna, Clerk of Court
United States Bankruptcy Court, SDNY, One Bowling Green, NY, NY 10004-1408

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

Case No. 12-12020 (MG)  RESIDENTIAL CAPITAL, LLC, et al., Debtors. VS  GWENDELL L. PHILPOT, Claim Number 5067

**Exhibit 2**

Philpot / GMAC Mortgage Loan Modification Contact Info relating to documents (Dates are in Reverse order) Attn'y Pamela Jackson's comments at bottom.

| Date | Time | Contact | Phone # | Dept | Location | Comments |
|---|---|---|---|---|---|---|
| 5/17/2010 | 1:47 PM | | 800-799-9250 | LoanMod | Dallas | Pending sale-28th, "Funds will only be received by certified check" If approved, trial mod, if successful, ???? |
| 5/11/2010 | 2:15PM | Coco | 800-799-9250 | LoanService | Dallas | Got letter from GMAC dated 4/29/2010 requesting info I had sent 4/30/2010, They said Send Cert. CK $56,534.31 |
| 5/10/2010 | | Letter from GMAC | | | | Fax sent from Faulkville USA Healthcare will visiting mother; Refaxed what I faxed 4/27/2010 |
| 4/30/2010 | 4:51 PM | Faxed to GMAC | | LoanService | Dallas | Resend what I sent 4/22/2010 |
| 4/30/2010 | 3:26 PM | Keanna | | LoanService | Dallas | |
| 4/29/2010 | | Letter from GMAC | | LosMita | Dallas | Letter sent from GMAC advising -Still under review, Need additional info- Resend what I sent 4/22/2010 |
| 4/22/2010 | 7:31 AM | Lasharron | 800-799-9250 | LosMita | Dallas | **I advised that I faxed bank statement** |
| 4/22/2010 | 2:44-47 PM | Faxed to GMAC | | LosMita | Dallas | **Another Updated Regions Bank Statement** |
| 4/22/2010 | 7:31 AM | Misha | 800-799-9250 | LosMita | Dallas | **Items needed: One more bank statement** |
| 4/19/2010 | 10:53 AM | Bobby | 800-799-9250 | LosMita | Dallas | Lloyd called & Confirmed as Postponed "no sale date" via Sirote & Permutt computer |
| 4/16/2010 | 11:10 AM | Dan | 800-799-9250 | LosMita | Dallas | Lloyd called and was told the April 21st sale was postponed one month, call back Monday |
| 4/16/2010 | | | | | | Lloyd starts making contact because of Pam Jackson's overloaded work on same issues with others Lloyd talked to Pam about what her legal limitations are to help us. |
| 4/15/2010 | | Pam Jackson | | LegalServ | Huntsville, AL | Pam gave Annette Contract Tracking Info Form & Data; Shown below |
| 4/14/2010 | | Pam Jackson | | LegalServ | Huntsville, AL | EG36 1587 5264US OVERNIGHT EXPRESS RECEIVED, SIGNED BY LEON [illegible] |
| 4/14/2010 | 11:15 AM | GMAC MORTGAGE | | LOSS MIT | HORSHAM | EG36 1587 5264US OVERNIGHT EXPRESS SENT |
| 4/13/2010 | 4+pm | Post Office | | Attn'y | Decatur, AL | |
| 4/12/2010 | | Glynn Tubb | | Attn'y | Decatur, AL | Exter/Key Letter to Colleen McMullough about issue, Lloyd talked to Glynn |
| 4/5/2010 | 1:43 PM | Colleen McMullough | | LosMita | Decatur, AL | Letter from Colleen McMullough, Sirote & Permutt, Attn'y to Glynn Tubb about Loss Mitigation |
| 3/19/2010 | | | | | | Letter about Making Home Affordable Mod |
| 3/12/2010 | letter | Colleen McMullough | | S&P | B'ham | Mortgage Foreclosure Sale Rescheduled Foreclosure for April 21, 2010, Lloyd's Aunt's Birthday. _Refused to discuss account with Annette_, stating Annette is not on account. On speaker phone, Ana & Lloyd heard. Lloyd stated emphatically to Sandy that Annette is on account and has the same rights as himself to receive information concerning account. She stated status was: No decision because of bankruptcy and they were covered up with debtors. Lloyd told her about the house damage and Nationwide's refusal to do anything causing an issue with winterizing the house. |
| 10/12/2009 | 11:20 AM | Sandy | 800-799-9250 | LosMita | Dallas | Sale Date 10/26/2009, but on another screen says currently postponed after additional checking. |
| 9/14/2009 | 4:41 PM | Blake | 800-850-4622 | LosMita | Dallas | Status: Loan Modification was approved 8/27/2009. Note : by Kimberly, cannot qualify for Mod bu can do three month trial. I said we do qualify and sent proof, which they have somewhere in their office. And, Nothing ever sent to us. |

**Exhibit 2**

| Date | Time | Contact | Phone # | Dept | Location | Comments |
|---|---|---|---|---|---|---|
| 9/2/2009 | 2:30 PM | Eric | 800-799-9250 | LosMita | Dallas | $39,714.90 is overdue and sale date is 9/26, but sale on hold pending modification. Lloyd told him we have not received any FedEx or letters. Lloyd said we get different info from each agent we speak with at GMAC and different computer screens or databases have different info, so their data is wrong. He said Raju is Agent on Account. Lloyd said he gets nothing but run-around on the mod without being allowed to speak with any one of authority who can make data corrections and work with approvals. Please contact Pamela Jackson about getting info correct. Send any mail to her. |
| 9/2/2009 | 2:15 PM | Alpha [redacted] | 800-799-9250 | LosMita | Dallas | Verify info & transferred me to Loss Mitigation |
| 9/2/2009 | 10:30 AM | Amalia | 800-799-9250 | LosMita | Dallas | She cut Lloyd off without any words other than verification of numbers. Confusing. |
| 9/2/2009 | 10:00 AM | Steven | 800-799-9250 | LosMita | Dallas | Stated potential Modification approved 8/27/2009.Lloyd ask about fax he sent 8/29. Steve refused to trace it. I said any numbers would not be accurate without the info in fax. |
| 8/31/2009 | Letter | GMAC | | | | Letter says only names listed on the loan documents are authorized to obtain info. Annette's name |
| 8/31/2009 | 4:30 PM | Mishi/Champ | 800-799-9250 | LosMita | Dallas | Mishi said team of specialists working on the account, put on hold & cut off. I called back and got Karen who said Lost Mitigation # was 800-850-4622 & transferred Lloyd. Entered account #, got: *"Thank you for calling loan servicing. Please hold for your call to be answered by the next representative."* Then Champ picked up and said sell date is 16th, but another screen says sell date is on hold pending modification, letter mailed 8/31/2009. I told him about inaccuracies and assessment showing property value to less than mortgage and wanted to add that information to the modification package. He referenced BPO, Broker's Price Opinion done on house. I said it was done before storm and was not complete. |
| 8/29/2009 | | GMAC | 866-709-4744 | LosMita | Dallas | Annette Faxed from 256-280-9128 from Staples # 256 353-6299, Ser# 00016J677718 Cover plus 3 pages containing: +Amended Financial Analysis Form, stating error of $150.00 (potential) rental income : (Ana). + State of Alabama Unemployment Compensation Final Notice + Copy of Extension to File 2009 Income Tax Form 4868    Ref from 8/21 Fax. |
| 8/28/2009 | 2:59 PM | Sanceria | 800-799-9250 | LosMita | Dallas | Say they have correct phone #s for us. Shows sale date is 9/16/2009. Said FedEx package is being sent to us. New balance is $236,011.75. She says they did not receive our fax of 8/21 that Lloyd sent from 256-280-9128 with all sounds of complete process. |

**Exhibit 2**

| Date | Time | Name | Phone | | | Notes |
|---|---|---|---|---|---|---|
| 8/28/2009 | 2:37 PM | Shebra | 800-799-9250 | LosMita | Dallas | Says Modification Approved 5.87%, but payment would be $1601.21 / month and package being mailed. Lloyd ask how they arrived at that payment which was above 31% of our gross. They would check. _Lloyd was told he was being transferred to loan mod persons fee._ We never received any package. _Lloyd was told he was being transferred to loan mod persons fee._ Use as what's the situation, "your call was bounced to me." I told him that 31% would be $1345.40 based on our total income. He refused to provide Lloyd a breakdown of where their total came from. He said that number was not what we provided & when Lloyd stated that no one there would provide us any information about we sent. he hung up. |
| 8/26/2009 | 1:33 PM | ? | 800-799-9250 | LosMita | Dallas | Says sale date is 9/26/2009 |
| 8/25/2009 | 12:10 PM | Charles | 800-799-9250 | LosMita | Dallas | Charles said he tried to reach Arron but could not. Charles is trying to find out why we're classified as not qualified on the "Making Home Affordable" criteria. What criteria, we are per the gov website. Charles said person that processed application is not available but he is trying to reach his manager, will call Lloyd back but never did. |
| 8/25/2009 | 12:10 PM | Arron | 800-799-9250 | LosMita | Dallas | _Modification denied_ on 8/24 because they said we do not meet prequalification criteria, to which Lloyd responded, we already passed that test, and still meet all the qualifications, but the person would not acknowledge his statement. Then Annette called them but Arron emp [illegible] refused to talk to her about the file. |
| 8/21/2009 | | GMAC | 866-709-4744 | LosMita | Dallas | Faxed from 256-280-9128 Cover plus 3 pages containing. All sounded complete.   Ref 8/29 Fax<br>+ Amended Financial Analysis Form, stating error of $150.00 (potential) rental income : (Ana).<br>+ State of Alabama Unemployment Compensation Final Notice<br>+ Copy of Extension to File 2008 Income Tax Form 4868 |
| 8/21/2009 | | GMAC | 800-799-9250 | LosMita | Dallas | Kimberly not responding. Lloyd got Imran who said missing rental agreement, 2008 Schedule E, Statement of no rental income, Letter from Alabama. All Faxed at 3:49 that afternoon |
| 8/21/2009 | | GMAC | 800-799-9250 | LosMita | Dallas | *In process of setting up trial payment at reduced amount.* Transfer to Modification dept. Kimberly |
| 8/20/2009 | | Sergio & Kimberly | | LosMita | Dallas | Status: No Change. Kimberly: "Previous Bankruptcy?" |
| 8/14/2009 | 1:54 PM | Fax | 866-709-4744 | LosMita | Dallas | Lloyd Faxed update on our package with all info requested on 8/11 from Staples # 256 353-6299, Sent# 0001636777718, 7 Pages, Dur. 2min39sec OK<br>+ Regions Bank Statement  6-7/24/2009<br>+ Annette's ISC Employee Payroll Check Copy showing $2917.00 Gross/month<br>+ Lloyd's Social Security Letter showing $1423.50/month<br>+ Alabama Industrial Relations, Unemployment Balance<br>+ Bankruptcy Court Discharge |

**Exhibit 2**

| Date | Time | Contact | Phone # | Dept | Location | Comments |
|---|---|---|---|---|---|---|
| 8/11/2009 | letter | Ray | 800-799-9250 | LosMita | Dallas | Lloyd called Ray & ask for status on Mod. "Do we need to send any more data?" Yes<br>+ Unemployment with # months remaining<br>+ SS Benefits<br>+ 2 most recent rental income: This was misunderstanding about Ana living here.<br>+ Additional Full Pay Stub for Annette |
| | letter | Colleen McMullough | | S&P | B'ham | Postponed Foreclosure from July 22, 2009. Today, till Sept. 16, 2009 |
| 7/21/2009 | 10:00 AM | Ms Latonia | | | Hartselle | Said Christofe■ is in IT dept, angry and hung up. Lloyd called back and they said email went to Rebecca ■, who placed sale on hold 30 days to provide time to review workout package, modification package. |
| 7/21/2009 | 10:30 AM | Tami/Long | 256-773-5355 | Asst. | | Lloyd called Tami at Long&Long, who called Diana Murray, Serotte&Permut, 205-930-5100. Afterwards, Lloyd called Collene's asst, Kevin Sargent 205-918-5047, who verified delay of sale. |
| 7/20/2009 | 9:25 AM | Steven | 800-799-9250 | | | STATUS: Steven said he was checking with Christofer ■ on postponing sale, but Rebecca has authority to postpone and "I'm writing on phone to talk to her," told Lloyd to call back later today.<br>Later told no Rebecca or Christofer, but Rebecca ■ ??? Deception??? |
| 7/20/20 09 | 5:00 PM | Ms Erica | 800-799-9250 | | Waterloo | Lloyd Called back, waited 16 min then put on hold a long time after verification, then told Lloyd about pending sale, Lloyd referenced modification, but agent did not respond. Ms Erica said supervisor was Shanetra and Christofer■ sent email to her. Check back with them next AM.<br>During this call Lloyd related that a Ms Chante' said Ken■ was the manager of Lost Mitigation and Ms Erica said she didn't know a Ken■. I told her we sent letter on 7/15 to him. |
| 7/17/20 09 | letter | from GMAC | | | Waterloo | Same form letter as 7/14 Obama Making Home Affordable Refinance or Modification Plan info |
| 7/16/20 09 | letter | from GMAC | | | Waterloo | GMAC received authorization to release info to Pamela Jackson |
| 7/15/20 09 | packag e | Ken■GMAC | | LosMita | Dallas | We sent letter to Ken■, Mgr Loss Mitigation, Never received reply. Ref June 8, 2009 letter |
| 7/15/20 09 | | GMAC | | LosMita | Dallas | Phone call to GMAC re letter to Ken■ above. |
| 7/15/20 09 | 8:30 AM | Pam Jackson | 256-536-9645 | x3315 | HSV | Call to GMAC and planning for modification process. She has no experience in this area. |
| 7/14/20 09 | letter | from GMAC | | | Waterloo | Obama Making Home Affordable Refinance or Modification Plan info |
| 7/12/20 09 | letter | Philpot to GMAC | | | Waterloo | Case of Hardship letter by Philpot's |

**Exhibit 2**

| Date | Type | Name | Phone | Category | Location | Description |
|---|---|---|---|---|---|---|
| 7/10/20 09 | 1:09 PM | Pam Jackson | 256-536-9645 | x3315 | HSV | Counseling, set Meeting. Started getting help from legal aid attn'y Pam Jackson. |
| 6/23/20 09 | | GMAC | 800-206-2901 | | | Annette Called & about Hope plan. Given Lost Mitigation # 800-799-9250 |
| 6/23/20 09 | | Ms Chante' | 800-799-9250 | LosMita | Dallas | Annette called Gave out phone #s 256-520-4526 & 266-309-9850 Ref. to: Ken ▓ Mgr. Left VM |
| 6/22/20 09 | | GMAC | 800-766-4622 | | | Annette Called & left message about Hope plan |
| 6/15/20 09 | letter | Emmylou ▓ | 866-520-0922 | HoEdPro | SF, CA | Consumer Credit Counseling for Making Home Affordable loan Modification Document. Post M 6/19 |
| 6/11/20 09 | call | Emmylou ▓ | 866-520-0922 makinghomeaff... gov | HoEdPro | SF, CA | Call about Consumer Credit Counseling for Making Home Affordable loan Modification Phone x302.  She will send package to me and to GMAC per interview today. She said based on our gross monthly income, payment could be reduced to $1370. Recomendation: Push down payments to 31% or maybe 25% of our gross. The makinghomeaffordable.gov people forwarded me to her as an approved counselor. |
| 6/11/20 09 | call | Terry | | | DC | Re: Hope for Homeowners , government will encourage GMAC to participate |
| 6/10/20 09 | letter | Charles ▓, GMAC | | | | Application package from GMAC re Hope for Homeowners |
| 6/9/201 0 | call | Erica | 800-206-2901 | | Dallas | Workorder opened for workout Hope for Homeowners  S.896  Keyani   I.D. # 21299 |
| 6/8/200 9 | letter | C. McCullough | 205-918-5047 | | | Notice of Acceleration to sell on July 22. 2009   Sirote&Permutt |
| 6/1/200 9 | | DP Green | 251-402-9110 | | | Project Assessment shows loss for would deplete all equity of Philpot's |
| 5/21/20 9 | | Bankruptcy Court | | | | Bankruptcy Discharged, 50th anniversary of Lloyd's bother's death |
| 5/6/200 9 | | Bankruptcy Court | | | | Homeomings granted Motion for Relief, no consideration for our loss of equity by storms on 4/12 weekend |
| 4/12/20 09 | | | | | | Granted with cause to negotiate a loss mitigation. See 3/31/2009 Court statement, Homecomings Financial did not follow courts directive, and never showed good faith and with no help with storm insurance issue. |
| 3/13/20 09 | | | | | | Easter Storms |
| 2/5/200 9 | | Bankruptcy Court | 256-468-8169 | Short Sale | | Homecomings filed Motion for Relief to Bankruptcy Court |
| 2/4/2009 | Letter | Sirote & Permutt | | Foreclosure | | Letter about Homecomings Loss Mitigation mishandled Short Sale forcing Philpot's bankruptcy to protect equally. |
| | Letter | Steven ▓ | | | | Sale cancelled due to bankruptcy file. |

Exhibit 2

**Homecomings never addressed the failed system or Log file of the 9/30/2008 call.**

**Note:** RESPA, Real Estate Settlement and Procedures Act, Section 6, requires lenders must acknowledge inquiry within 20 days and respond "thoroughly" within 60 days to that inquiry.
TILA, Truth in Lending Act gives right to Timely & Thourough response to written request.
**QWR=** Qualified Written Request. All faxes were QWRs, so we were suppose to get priority
1st offer is always unacceptable. Ask for additional concessions in QWR.

| Date | Time | Contact | Phone # | Dept | Location | Comments |
|---|---|---|---|---|---|---|
| 1/../2009 | Letter | Sirote & Permutt | Att'y | Foreclosure | | Sale scheduled to sell property, but rescheduled till February 4, 2009 |
| 12/17/2008 | Letter | Sirote & Permutt | Att'y | Foreclosure | | Sale scheduled to sell property, but rescheduled till January |
| 11/20/2008 | Letter | GMAC | 866-709-4744 | LossMit | Dallas | Letter and financial analysis documents requesting short sale status. |
| 11/14/2008 | Contract | Distinctive GMAC | 256-468-8169 | Short Sale | | Hired Steven ████, Distinctive GMAC to sell property in effort to prevent foreclosure |
| 11/14/2008 | Letter | Homecomings | customer_service@homecomings.com | | | Lloyds and Arnella's letter to Homecomings authorizing real estate agents of Distinctive GMAC access to data |
| 11/14/2008 | e-mail | Homecomings | customer_service@homecomings.com | | | Lloyd's e-mail to Homecomings requesting they correct payment errors, |
| 10/8/2008 | e-mail | Homecomings | customer_service@homecomings.com | | | **Reply from Homecomings Financial, without Logfile data.** |
| 10/7/2008 | Letter | Legal Services | 256-536-9645 | Services | Alabama | **Michael Forton letter to Lloyd starting legal services** |
| 10/3/2008 | e-mail | Homecomings | customer_service@homecomings.com | | | **Lloyd's e-mail to Homecomings Loan Servicing Dir., and ResCap COO & CFO** |
| 10/3/2008 | e-mail | Homecomings | customer_service@homecomings.com | | | Reply from Homecomings Financial |
| 10/1/2008 | e-mail | Homecomings | customer_service@homecomings.com | | | Reply from Homecomings Financial |
| 10/1/2008 | e-mail | Homecomings | customer_service@homecomings.com | | | Lloyd's e-mail to Homecomings requesting they correct system payment errors. |
| 10/1/2008 | Phone | Homecomings | | CustServ | | Called about problems with Pay-By-Phone last night, but got auto responder, voice syn, system indicating no payment |
| **9/30/2008** | **Phone** | **GMAC** | **800-206-2901** | **Payment Attemp** | | **Executed payment to Pay-By-Phone of $2268.46 with verification of Lloyd's SS#(Last 4 digits) with acceptance** |
| 9/30/2008 | computer | GMAC | | | | Payment system login failure and lockout |
| 3/21/2008 | Letter | Homecomings | | | | 3/14/2008 Request denied by GMAC to correct 12/31/2007 payment data error |
| 3/14/2008 | Letter | Fax to GMAC | 319-236-5167 | | | After leaning from local bank that 12/31/2007 payment was not corrected, Lloyd requested correction |
| 1st wk/2008 | Calls | | | | | Called about 12/31 payment problem and was told the account would be corrected. |
| 12/31/2007 | | GMAC Computer | | | | GMAC Payment computer system failure to process payment on 12/31. 1st line system failure on payment. |

Exhibit 2

## Data from attorney Pamela Jackson's Contact Tracking Form

| Date | Time | Contact | Phone # | Dept | Location | Comments |
|------|------|---------|---------|------|----------|----------|
| 3/18/2010 | 11:45AM | Tyler | 800-799-9250 | | | 10-15 min call  F/C Date April 21-No Mod  b/c submitted as short sell / Start over will mail new package |
| 3/18/2010 | 11:45AM | Tyler cont | 800-799-9250 | | | Originally August. Resubmitted paperwork, Closed 17 Fob., Updated complete paperwork Package, Download Docs |
| 1/25/2010 | 11:24AM | Chris | 800-799-9250 | LossMit | | Re\xspending modification no timeframe. He knows it takes a long time, can't tell anything more |
| 11/12/2009 | 1:23pm | ? Rodeen Santara trans | 800-799-9250 | LossMit | | Pending Modification?  No decision  Can't follow-up  Still under review    follow up in a week |
| 9/26/2009 | | Carolyn | 800-766-4622 | LossMit | LoanServ | Forebearance Plan for 3 months, Special Services Dept. |
| 9/26/2009 | | trans to Carolyn | 800-766-4622 | Loan Ser | LoanServ | still pending modification  under rev  She will eMail underwriter  Call back tomorrow |
| 9/23/2009 | 1:20pm | Keith/Lance | | LossMit | | Pending modification transferred to Loan Servicing  F/C- Closed out/completed 9/23 |
| 9/10/2009 | | Customer Serv | 800-766-4622 | | #2 | Loan Servicing |
| 9/9/2009 | | | | LossMit | | Philpol - loan mod to be sent overnight (2 wks ago)  mailed last week.  We still have not received |
| 8/27/2009 | | Cedric / Mary | 800-799-9250 | LossMit | | denied MHA documents not good?  eMail to underwriter |
| 8/26/2009 | | Mary | 800-799-9250 | LossMit | | She will e-mail underwriter. call back tomorrow |
| 7/15/2009 | | Sandra | 800-799-9250 | LossMit | | Authorization Fax# (Call w/client) Options to avoid F/C  Need to submit hardship package |

Except attorneys, all Debtors' employee and other family names have been redacted.

## Exhibit 3

**Gwendell Lloyd Philpot and Annette Green Philpot**
503 Ferry Street
Decatur, Alabama

*Copy*

July 15, 2009

Ken ████, Manager
Loss Mitigation Department
GMAC Mortgage
2711 North Haskell Ave, Suite 900,
Dallas, TX 75204

Re: GMAC Mortgage/Homecomings Financial Loan Number: 7412259657:    Concerning the property at 503 Ferry St NE, Decatur, Alabama, Promissory Note and Mortgage as recorded with Morgan County, Alabama, related to such property and all information and data stated in the first paragraph of the letter dated June 8, 2009 from Colleen McCullough of the firm Sirote and Permutt, and letter dated June 10, 2009 from Charles ████, SVP, Customer Care, Homecomings Financial and GMAC Mortgage, LLC ; Subsequent application to GMAC requesting workout following guidelines of Hope for Homeowners, Obama Plan of May 20, 2009;

We seek your approval in the modification of the home loan under the Obama Loan Modification "Making Homes Affordable" Program . We have followed the US FHA guidelines to obtain counseling from an approved agency, Housing Education Program, 595 Market Street, San Francisco, CA, who took our application and filed same with GMAC Mortgage.  We have spoken to personnel within your department and left a phone message on your voice mail requesting status of our application. Today, Pamela Jackson, Attorney, and ourselves called your office to obtain the status of the account and found your office is waiting on us to file the documentation contained herein. We had not known such was needed from your office. Since the courthouse sale is scheduled for July 22, 2009 and your personnel have stated that your department may take up to ninety days to process, which would be past the July 22nd date, we ask you direct Colleen McCullough of the firm Sirote and Permutt to delay the sale action to permit your office to finish processing our Hope for Homeowners Loan Modification application.

Following the loss of a job in 2008 and other financial hardships referenced above we were unable to continue making our mortgage payment in the fall of 2008. In an effort to address the problem, from November, 2008 –June, 2009 we worked closely with GMAC Distinctive Real Estate in Huntsville, Alabama trying to sell our home. During that time the price was lowered offering it as a Short Sale and we participated in numerous Open Houses with our realtor.  No interested party ever offered an amount equal to the remaining mortgage due GMAC.  We also sought financial counseling from an approved HUD legal advisor in 2008. Due to the following changes to the status of our financial situation that have occurred in 2009 please consider the following: We filed bankruptcy in order to remove other financial obligations so that we might direct resources to our home mortgage. The bankruptcy was discharged on May 21, 2009; Annette Philpo't was hired full time on May 13, 2009 with a corporation she had provided part time consulting in 2007-2008; Lloyd Philpo't is now drawing his Social Security and continues to actively seek employment.

Over the thirty years that we have invested in home ownership we have never been in this position.
However, since 2002, we encountered substantial storm damage on two separate occasions.  In an effort to make repairs, we secured additional financing and corrected most of the damage to the house, which prevents water leaking and provides structural stability, but did not provide for typical marketable improvement characteristics associated with such a house.  This exhausted our financial reserve and led to additional financial obligations on the house and a value below its appraised value prior to 2002. Nationwide, our insurance carrier, failed to compensate us properly on the claims, rather paying us for only a small portion of the cost associated with the damage.  That situation, in addition to HVAC and plumbing problems with past medical bills, recent loss of jobs with current unemployment by Lloyd and our inability to secure financing in October 2008 for continued operation of a business has impacted our ability to replay the loan at its present structure.

Lloyd secured Social Security this year, is still actively seeking employment, and in May, Annette obtained employment with an established organization.  We are asking your help in modifying the mortgage for this home that we have lived in and poured all of our resources into for over twenty-six years. Given your mission to provide funds so that individuals can obtain homes, I am

## Exhibit 3

*Copy*

sure that you can understand our concern that our home not be foreclosed and we be allowed to remain living in and maintaining the property. Should Lloyd obtain employment, he will provide funding to maintain the home and correct deficiencies. If he cannot obtain employment, he is a graduate of Auburn University, College of Architecture, Design and Construction, with master craftsman skills to provide the labor to maintain the home and upgrade the deficiencies. We will also continue to seek an ongoing legal remedy from Nationwide Insurance to re-roof the house and garage from recent storm damage this year.

With respect to our integrity to follow through on the terms of this document, we obtained the referenced mortgage and note in good faith and have made every attempt to fulfill our obligation since December 2000. When the insurance company refused to compensate us for repairs which we paid relating to temporary repairs from the hail damage of April 11, 2007, we placed the property for sale with a realtor, listed with MLS in the summer of 2007 and contacted Homecomings Financial to make an agreement to become thirty days late without being designated for foreclosure. We received earnest money to sell the property, but could not complete the sale because of the inspection, which referenced the damages from the storms that the insurance company had refused to pay as well as other labor intensive aesthetic marketable issues needing correction. Subsequently, we were advised by a real estate consultant that we should either "short-sale" or allow foreclosure at that time, September 2007. Instead, with the approval of Homecomings Financial not to foreclose, as we continued being over thirty days late with our monthly mortgage payment, we spent the vast amount of our resources to continue making needed repairs to maintain the property in such condition as we had committed to Homecomings Financial, all while living in a extremely frugal manner. After making many of the repairs necessary, our situation became dire, as stated above. We sought means to prevent foreclosure while following our long-standing reputation in our city to foster the preservation of historic properties such as this property. We have never used any funds to buy luxurious items or for extravagant pleasures. Since we have now exhausted our resources to fulfill our prior decision to sell this property. We will make efforts as best we can to maintain the property with respect to its structure and historic reputation in our city, in order to continue to live in the property and return it to its highest market value.

Thank you for consideration of this request.
Sincerely,

*Gwendell Lloyd Philpot and Annette Green Philpot*    7/15/2009

Gwendell Lloyd Philpot and Annette Green Philpot

### Exhibit 4

June 30, 2010

*cmp/*

**GMAC Mortgage, LLC**
Attention: Loss Mitigation
3451 Hammond Avenue
Waterloo, IA 50702

Custodian ID: W1
Investor Number: 4081766s

Account Number: 7412259657
Property Address: 503 Ferry St NE, Decatur, AL 35601

In connection with my requests of 2009 and 2010 for a loan modification, I have received what appears to be conflicting letters from your office with dates of 05/19/2010, 5/26/2010 and 6/11/2010, each as a reply to said requests. The first reply denied my request, the second provided a loan modification and the third changed the date of that loan modification. It is my intention to agree to a loan modification, but I request you clarify any discrepancies of the effective dates and other points contained within the agreement as well as data in your records on which such agreement is based. This effort on my part to show good faith in responding to your communication is being provided after consultation with attorneys for advise regarding my lack of understanding about what seems to be ambiguities in the agreement and my need for clarification of same. Additionally, I am enclosing a Brokers Price Opinion, BPO, from Distinctive **GMAC** Real Estate of Huntsville, AL, completed by Steven Payne on June 13, 2010, providing a value of $165, 000 to $170,000 in present condition, with an estimate of $146,000 needed for repairs to bring the house up to a market price for the area. Such repairs include damages due to the 2009 Easter weekend storm which damaged roof and structure, subsequent deterioration from storm damage, as well as marketable changes such as kitchen finish. Note that we removed the property from the market only after the storm and Nationwide Insurance has not compensated me for said storm damage, as such, it is my understanding that an agreement with GMAC Mortgage which recognizes the decreased present value of the property to be less than the total balance due on the lien including fees, and my agreement to a new loan modification relative to such decreased value, would allow the second lien to be deleted, leaving GMAC and myself with an opportunity to take action against Nationwide to repair the damage to the property as well as provide for continued investment on my part to return the property value to be consistent with market values in the area. It is my hope to remain living on the property and make the necessary investments to return it to a marketable condition which is respectful of the historical significance of the property, an effort which I have diligently performed in the past until the storms damaged the property. As well, I need to know the total of all fees and cost associated with a loan modification agreement, such that no hidden costs or unforeseen cost would prevent me from meeting my obligations of said new agreement. It is my hope that I may sign an agreement and meet the provisions of the August 1, 2010 date defined in the agreement sent to me. I wait for your urgent reply.

Sincerely,

Gwendell L. Philpot          6/30/2010
                             Dates

## **Exhibit 5**

February 7, 2011

Colleen McCullough
Attorney at Law                                                                                            *Coll*
Assistant Secretary and Vice President of
Mortgage Electronic Registration Systems, Inc.

Sirote & Permutt, P.C.
2311 Highland Ave. S.
Birmingham, AL 35205

Re: Loan Number: 7412259657
Property Address: 503 Ferry Street Northeast, Decatur, AL 35601

Within thirty days after receipt of your letter of January 7, 2011, we do hereby dispute the debt referred
to, including the entire remaining balance of said debt or any portion thereof, including fees, accrued
interest, and other charges.

You being the attorney representing GMAC Mortgage, LLC, here-in-after GMAC, being a corporate
officer, namely, Assistant Secretary and Vice President of Mortgage Electronic Registration Systems,
Inc., here-in-after MERS, I request that you convey to the respective corporate executive officers of each
organization having authority to approve this request and all owners of any portion of the mortgage or
note and any party of record who would be financially affected including those referenced in your letter,
this request to stop the foreclosure and sale of said property and to negotiate a loan modification with
respect to our original request of June 2009 and April 2010, including an enclosed new updated loss
mitigation package.

In consideration of that communication and a December 20, 2010 loan modification letter sent to me
directly from GMAC with a first modified payment of March 1, 2011, I was surprised to receive your
notice of advertisements starting this January and foreclosure sale scheduled for February 16th.

These and past conflicting communications from different GMAC agents or departments have caused
much confusion in the past. So, I was glad to see your new offer to handle documents from me, to be
presented to GMAC for a loan modification. In past conversations with GMAC, I was told that your firm
only handled actions of foreclosure by directives from GMAC. With your involvement as an
intermediary located in Alabama, being a legal representative with whom I can have a consistent
communication of continuity, I hope it will be possible to obtain a comprehensive complete offer from
GMAC, having no ambiguities or further delays caused by the inactivity of GMAC as has been an
underlying problem with which I have dealt these past two years.

The significant discrepancy between financial figures of your letter VS the December GMAC offer letter,
such referenced above, is cause for confusion. As well, neither documents respond to the Brokers Price
Opinion, BPO, of *Distinctive GMAC Realty*, I supplied to GMAC, showing the market value to be
$165,000 - $170,000, reflecting the damage to the property caused by the 2009 Easter weekend storms
and the prevailing market trends since 2008 and my request to have the second mortgage lien eliminated
because, subsequent to those storms, such lien is now an unsecured lien because the property value is
below the first mortgage. I have never received any reply with respect to such decreased value. Although
you stated that I should contact GMAC about the decrease in property value, I have previously done so
with no response, therefore, I request that this be included herewith such that all issues can be processed,

## Exhibit 5

*Con*

including those of my June 30, 2010 letter enclosed, with a consistent continuity, thereby eliminating conflicting communications from different parties of GMAC.

When I obtained the mortgage and note in December 2000, I had good income with over 21% equity in the property and minimal debts. Additionally, we purchased the property in December 1982 , maintained and continuously renovated it, investing significant funds to be good stewards of this historically significant home-place of the late Federal Judge Seybourn H. Lynne. Only after storm damage and an accident in 2002 of which I only received a small fraction of the damage did I use my retirement funds to repair the house and garage in an attempt to increase the integrity, value and marketability of the property. After receiving additional income, I obtained a second mortgage to continue the repairs and renovations and in 2007 again suffered hail damage of which I received no funds from the insurance company. After temporary repairs to the roof and aesthetic investments to the exterior of the property to increase "curb appeal," I placed the property with a real estate firm and widely advertised it for sale. After many showings and open houses I received an offer but mishandling by the real estate firm led to the offer being rescinded. Having spent all of my reserve on the property and with a significant loss in consulting revenue because of my personal care provided to my late mother, who was then suffering with Alzheimer's, I obtained full employment for myself and retained caregivers for her. I entered into an agreement with GMAC to be one month late on my payment  but such that the payment would not be entered as being 60 days late as long as the payment was made prior to the first day of the second month from the due date. All this I did, though GMAC's database shows the payment made December 31, 2007 was credited after the first of January 2008, a situation which I did then and still do refute. However, at the end of January 2008 until September 30, 2008, I continued as per our agreement in the summer of 2007, that no foreclosure would occur as long as I maintained being late one month in payment. After becoming unemployed in August/ September 2008, I immediately sought employment as-well-as SBA funding to start a new business designing systems for Alzheimer's patients and caregivers. Working with a business incubator and small business consultants at the University of Alabama in Huntsville and an SBA loan credit union, I had a verbal agreement of a working capital loan to secure in October 2008. The possibility of that loan disappeared when the GMAC payment system failed on September 30, 2008 as I attempted to make a payment. The payment which I entered electronically, as I have stated in previous letters and e-mails, was not processed correctly by GMAC and GMAC informed the credit bureaus that my payment was more than sixty days late. Despite numerous immediate attempts of e-mails and phone calls to GMAC to obtain a correction to the error created by GMAC's payment system, the company never corrected the error but instead started foreclosure. We immediately entered into an agreement with *Distinctive GMAC Real Estate* to again place the property on the market for sale. During that time an offer was received on a short sale in January 2009 for $189,000 which GMAC declined, an offer of a value higher than the house is now worth given the storm damage incurred later that spring. The foreclosure process was stopped in February 2009 when we filed for Chapter 7 bankruptcy. Afterwards, during Easter weekend of 2009, the property was hit with multiple storms after which the property was removed from the market because of significant damage to the property and loss in value which a June 2010 BPO we supplied to GMAC substantiates. On May 21, 2009 the bankruptcy was discharged and we immediately began efforts to obtain a loan modification from GMAC, an option which Homecomings Financial, LLC assured the United States Bankruptcy Court in its Motion for Relief of Automatic Stay it would offer as an option. Practically on a weekly basis, we contacted GMAC to find out the status of our loan application but were met with conflicting status reports from employees and delays caused by GMAC, all the while GMAC has been accessing the account of fees and penalties, even after updating our loan mitigation package on April 22, 2010. After the Easter 2009 storm, we made temporary repairs to stop further damage as best we could. This included HVAC repairs. However, recently either lightning or a utility company power surge caused damage to both HVAC systems, appliances, lighting, stereo systems and my computers, a situation which we believe was lightning but cannot determine. This further reduces the value of the property.

## Exhibit 5

*Copy*

Of note, should the sale proceed on February 16th, logic would follow that GMAC could not submit a non-competitive bid greater than the market value without perpetuating fraud against those designated as your clients in your January 7th letter, especially since the estimated foreclosure fees and cost of $82, 445.32 are not representative of any failure on the part of anyone other than GMAC, in its inefficiency to properly service our loan modification request of June 2009 in a timely manner, thus its delayed action was of its own making and the resulting fees could not be charged to either myself or your other clients as part of the resulting bid. Neither myself or my representatives caused any delay by GMAC Mortgage LLC to process such request of a modification, a process Homecomings Financial, LLC stated to the court as an option and which GMAC then publicly advertised as having strong support.

Although, I was reported as being 30 days late for several months in 2007 and 2008, I was diligent in my efforts to fulfill my obligation and with respect to my long successful professional background, had I obtained the SBA loan in October 2008, I would have succeeded in having the working capital to develop the Alzheimer's product and thereby becoming current on the loan and avoiding bankruptcy.

Since the bankruptcy, our only debts are for remaining medical co-payments and a student loan. We have not requested charge cards or other loans including automobile loans, maintaining an advanced cash/check payment system for all goods and services.

Please accept the updated application for a loan modification.
I request a halt to the sale scheduled for February 16, 2011, so that we may complete the actions to fulfill such modification and further request that GMAC and MERS appoint you as a local Alabama representative to engage in a good faith attempt to negotiate a lost mitigation plan with us.

Gwendell L. Philpot   2/7/2011

Annette Green Philpot

256-309-9850

503 Ferry St NE
Decatur, AL 35601

Enclosures
cc: Mr. J. Glynn Tubb

## Exhibit 6

Steven L. ████
Distinctive GMAC Real Estate
7618 Memorial Parkway SW
Huntsville AL 35802
256-468-8169

To whom it may concern:

I was hired by Lloyd and Annette Philpo't, on November 14th, to implement a listing and short sale effort for the sale of their home at 503 Ferry Street, Decatur. I contacted the loss mitigator, Christine Simpson, at Homecomings Financial and sent her the necessary paper work. At the time the foreclosure sale was supposed to occur on December 17.

I later learned that the foreclosure attorney, Sirote & Permutt, P.C., had delayed the foreclosure until January. Later, they delay it again until February 4th.

I received two offers for the property in January and submitted both. Each was very low offers in the low $100K's. The loss mitigator never considered them viable offers but did counter the first one at $200K. The first buyer's never accepted or a countered with another offer, nor did they rejected the offer. They were still in consideration mode.

In faxes, I explained to the loss mitigator that the property was worth much more then the payoff of $217K. I expressed that, in my professional opinion, the property was worth around $300K. I told her that with a bit more time I was confident we would receive an offer more then the payoff which would go toward the balance owed to Redstone Federal Credit Union on a second mortgage. From her replies I could tell she had not read my faxes. My only means of talking to her was sending her a fax, asking her to call me. She would not give me a direct phone number or an e-mail address. When we talked she would not even consider delaying the foreclosure sale. The reasoning she gave is because Alabama is a one year right of redemption state. She said they could not afford to delay the foreclosure anytime.

I have had considerable training in implementing short sales and debating objections. I have never heard any reason to foreclose on a property, in an equity position, simply because the state has a one year right of redemption. I could not understand the reasoning and she would not explain.

The day before the short sale was to occur on February 4th, the second buyer's raised their cash offer to $189K. I told Ms. Simpson the contract was being prepared and signed by the "out of state" buyer, and what the offer entailed. She still proclaimed the foreclosure sale would occur on the following morning, leaving the Philpo't with no choice but to file for bankruptcy to delay the sale and lose of their home.

The next morning when Ms. Simpson learned of the bankruptcy, she said she did plan to delay the foreclosure sale because of the second offer by the "out of state" buyers. If she had relayed that information to me the day before the Philpo'ts would not have had to file chapter 7.

A short sale saves the mortgage company money over a foreclosure, especially when there is equity on the home. I felt the loss mitigator was not working in her company's best interest by being irrational and closed minded. I admit, the last offer was not acceptable, but we were in a situation where there were two buyers desiring to purchase the home. With negotiations it could have been reasonable to expect an offer which could have covered the full payoff of the primary and at least partial payment on the secondary.

Respectfully;

_Steven ████_

## Exhibit 7



### GMAC Mortgage Account Statement

**CUSTOMER INFORMATION**
Name: Gwendell L Philpot
Account Number: 7412259657
Home Phone #:

**PROPERTY ADDRESS**
503 FERRY ST. N.E.
DECATUR    AL 35601

**GMAC** Mortgage

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

GWENDELL L. PHILPOT
503 FERRY ST. N.E.
PO BOX 1088
DECATUR AL 35602-1088

Please verify your mailing address, borrower and co-borrower information.  Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

Customer Care Inquiries:    1-800-766-4622

| Account Information | | Details of Amount Due/Paid | |
|---|---|---|---|
| Account Number | 7412259657 | Principal and Interest | $1,971.42 |
| Current Statement Date | June 18, 2010 | Subsidy/Buydown | $0.00 |
| Maturity Date | December 01, 2030 | Escrow | $284.96 |
| Interest Rate | 10.25000 | Unpaid Amount | $51,977.38 |
| Current Principal Balance* | $207,191.52 | Late Charges | $3,647.09 |
| Current Escrow Balance | $6,320.95- | Other | $8,031.70 |
| Interest Paid Year-to-Date | $0.00 | Total Unpaid Amount | $65,912.55 |
| Taxes Paid Year-to-Date | $0.00 | Payment Date | August 01, 2008 |

For questions on the servicing of your account,
call 1-800-766-4622.

### Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| PROP INSPECTION FEE | 07/01/08 | 05/31/10 | $11.25 | | | | | | $11.25 |
| EXPENSE ADVANCES | 07/01/08 | 05/27/10 | $50.00 | | | | | | $50.00 |
| EXPENSE ADVANCES | 07/01/08 | 05/27/10 | $275.00 | | | | | | $275.00 |
| EXPENSE ADVANCES | 07/01/08 | 05/27/10 | $22.00 | | | | | | $22.00 |
| EXPENSE ADVANCES | 07/01/08 | 05/27/10 | $1,017.46 | | | | | | $1,017.46 |
| EXPENSE ADVANCES | 07/01/08 | 05/27/10 | $950.00 | | | | | | $950.00 |
| EXPENSE ADVANCES | 07/01/08 | 05/27/10 | $75.00 | | | | | | $75.00 |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

### Important News

Our records indicate that you have filed for bankruptcy protection.  This statement applies to our lien on your property and is being provided for informational purposes only.  If you choose to continue to remit payments, please include the coupon below with any payments you send.  If you do not want us to send you mortgage account statements in the future, please contact us at the number listed above.