1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, ET AL.,

9

10           Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14           United States Bankruptcy Court

15           One Bowling Green

16           New York, New York

17

18           April 10, 2014

19           10:05 AM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

2

1

2    (Doc. No. 6535, CC: Doc. No. 6682) Hearing for a Motion

3    Shortening the Notice Period for Certain Emergency Relief from

4    the Automatic Stay, Filed by Yosef Le Roi Mustafanos

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    Transcribed by:  Dena Page

21    eScribers, LLC

22    700 West 192nd Street, Suite #607

23    New York, NY 10040

24    (973)406-2250

25    operations@escribers.net

3

1

2   A P P E A R A N C E S :

3   MORRISON FOERSTER

4        Attorneys for Debtors

5        1290 Avenue of the Americas

6        New York, NY 10104

7

8   BY:   DANIEL J. HARRIS, ESQ.

9

10

11   KIRKLAND & ELLIS LLP

12        Attorneys for Ally Financial

13        655 Fifteenth Street, N.W.

14        Washington, DC 20005

15

16   BY:   JUDSON D. BROWN, ESQ.

17

18

19   WILLIAMS KASTNER

20        Attorneys for Ally Financial

21        888 SW Fifth Avenue

22        Suite 600

23        Portland, OR 97204

24

25   BY:   RACHEL A. ROBINSON, ESQ.

4

1

2   KRAMER LEVIN NAFTALIS & FRANKEL LLP

3         Attorneys for the Creditors' Committee

4         1177 Avenue of the Americas

5         New York, NY 10036

6

7   BY:  JOSEPH A. SHIFER, ESQ.

8

9

10  WALKER WILCOX MATOUSEK LLP

11        Attorneys for Everest International Reinsurance

12        1001 McKinney Street

13        Suite 2000

14        Houston, TX 77002

15

16  BY:  TONY L. DRAPER, ESQ. (TELEPHONICALLY)

17

18

19  KIRKLAND & ELLIS LLP

20        Attorneys for Freddie Mac

21        601 Lexington Avenue

22        New York, NY 10022

23

24  BY:  MICHAEL MELTZER, ESQ. (TELEPHONICALLY)

25

5

1

2    ALSO PRESENT:

3         CAROLE DELEHEY, Residential Capital (TELEPHONICALLY)

4         YOSEF LE ROI MUSTAFANOS, Party Pro Se (TELEPHONICALLY)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**RESIDENTIAL CAPITAL LLC, ET AL.**

6

1                    P R O C E E D I N G S

2            THE COURT:  All right.  We're here on Residential

3    Capital, number 12-12020.

4            Mr. Harris?

5            MR. HARRIS:  Good morning, Your Honor.  Daniel Harris

6    from Morrison & Foerster on behalf of the ResCap liquidating

7    trust.

8            There's one matter on today's -- this morning's

9    agenda.  That's the ex parte motion of Reverend Yosef Le Roi

10   Mustafanos for emergency relief from the automatic stay.

11   That's at docket number 6535 and 6682.

12           The liquidating trust filed a short statement in

13   response.  That's at docket number 6747 and Ally Financial,

14   Inc. filed an objection.  That's at docket 6748.

15           I'm happy to say a few words with respect to the

16   relief sought on behalf of the liquidating trust or --

17           THE COURT:  No, go ahead.  Then I'll hear from Ally's

18   counsel.  Go ahead.

19           MR. HARRIS:  Your Honor, as we explained in our

20   statement, Mr. Mustafanos, if I'm pronouncing his name

21   correctly, filed a motion on behalf of his father, Sergeant

22   Marshall (ph.), ostensibly seeking relief from the automatic

23   stay to assert claims against GMAC Mortgage, LLC and Ally

24   arising from a foreclosure action pending in Oregon all of

25   which relates to a loan issued to Sergeant Marshall in 2004 by

1   Mortgage Investors Corp.

2           After doing some digging, the liquidating trust

3   determined that we were not involved in the origination of the

4   loan and, in fact, we had very little to do with the loan at

5   all.  As it turns out, GMAC Mortgage Corp. which was the

6   predecessor to GMAC Mortgage, LLC serviced the loan from its

7   inception in 2004 to 2008 when servicing rights were

8   transferred to a third party, Everhome (sic).

9           That's the extent of the debtors' involvement and

10  contrary to what Mr. Mustafanos alleges in his papers, GMAC did

11  not serve as broker of the loan and that is confirmed by the

12  documentation that we located in our files.  On that basis, we

13  don't believe there's any need to lift the automatic stay to

14  allow Mr. Mustafanos to pursue claims in Oregon against GMAC in

15  the foreclosure action.

16          THE COURT:  So have you reviewed the docket in the

17  Oregon foreclosure action?

18          MR. HARRIS:  We have, yes.

19          THE COURT:  And what's the status of the foreclosure

20  action?

21          MR. HARRIS:  Ms. Robinson, who is Ally's local counsel

22  in Oregon, I think, is probably best suited to --

23          THE COURT:  Okay, that's fine.

24          MR. HARRIS:  -- answer those questions.

25          THE COURT:  I'm happy to hear from her about it.

**RESIDENTIAL CAPITAL LLC, ET AL.**

8

1   Anything else you wanted to add, Mr. Harris?

2        MR. HARRIS:  Nothing from me.

3        THE COURT:  Okay.

4        MR. HARRIS:  Thank you, Your Honor.

5        THE COURT:  Thank you.

6        MS. ROBINSON:  Your Honor, the Oregon matter --

7        THE COURT:  Just identify yourself for the record.

8        MS. ROBINSON:  Oh, Rachel Robinson from Williams

9   Kastner.

10        The Oregon matter is currently scheduled for trial to

11   begin on April 29th.  There's two motions for summary judgment

12   pending.  EverBank has filed a motion for summary judgment

13   against Reverend Mustafanos and Reverend Mustafanos has filed a

14   motion for summary judgment against Ally.  That is scheduled to

15   be heard next week.

16        THE COURT:  So fill me in on when was Ally -- how was

17   Ally brought into the case?

18        MS. ROBINSON:  So Reverend Mustafanos filed a

19   counterclaim after EverBank filed its complaint for judicial

20   foreclosure.  The initial counterclaim was filed by Reverend

21   Mustafanos back in March of 2013.  In August -- and Ally was

22   not named in that counterclaim.

23        He amended the counterclaim in August of 2013.

24   Although Ally wasn't named in the caption, the caption was

25   subsequently changed and Ally was served in October of 2013.

**RESIDENTIAL CAPITAL LLC, ET AL.**

9

1   There were no allegations against Ally in the amended

2   counterclaim.  So we appeared in December of 2013 and filed a

3   motion to dismiss for failure to state a claim.  That was

4   granted in January of 2014 but Reverend Mustafanos was granted

5   leave to amend.

6          He amended in February of 2014 and that's the

7   complaint that's currently pending in Oregon.  And in that, he

8   alleges that Ally was doing business as GMAC Mortgage and that

9   GMAC Mortgage and Ally are one and the same for purposes of

10  this refinanced loan in 2004.

11         THE COURT:  Are there any specific allegations of

12  conduct, let alone misconduct, by GMAC?

13         MS. ROBINSON:  What Reverend Mustafanos alleges is

14  that GMAC, GMAC Mortgage was the mortgage broker for the 2004

15  refinance and essentially that Reverend Mustafanos' father was

16  not competent to enter into the 2004 refinance.

17         THE COURT:  Okay.  All right.  Anything else you want

18  to add at this point?

19         MS. ROBINSON:  No, thank you.

20         THE COURT:  Okay.

21         Mr. Mustafanos, are you on the phone?

22         MR. MUSTAFANOS:  Yes, sir.  Reverend Mustafanos

23  presenting here.

24         THE COURT:  Just speak up if you would, okay?

25         MR. MUSTAFANOS:  Yes, this is Reverend Yosef

**RESIDENTIAL CAPITAL LLC, ET AL.**

10

1    Mustafanos.

2              THE COURT:  Go ahead.  Let me hear your argument.

3              MR. MUSTAFANOS:  My father, Sergeant James Marshall,

4    entered into a fixed-rate loan mortgage, assisted by his

5    family, and then shortly after GMAC Mortgage then coaxed him

6    into a new loan, an adjustable rate loan which brought his

7    mortgage outside of his financial capabilities.

8              GMAC Mortgage should have known that Mr. Marshall was

9    not competent by all of the behaviors displayed but continued

10   on.  Documents were not appropriately notarized and it was just

11   a situation where Mr. Marshall was, you know, not -- could not

12   understand and appreciate what the value of, you know, the

13   loans that were placed before him, was lethargic and his

14   behavior during those times and it should've -- it should have

15   been clearly -- clear that he was incompetent but they

16   proceeded forward.

17             I am asking the Court if Ally Financial, if they filed

18   for bankruptcy protection in this Court and if GMAC Mortgage

19   filed for bankruptcy protection in this Court?

20             THE COURT:  Let me ask first off, have you appeared as

21   a party in the Oregon foreclosure action?

22             MR. MUSTAFANOS:  Yes, sir.  I am the party in the

23   Oregon foreclosure process.

24             THE COURT:  Let me ask; is your father still alive?

25             MR. MUSTAFANOS:  No, sir.  We -- I am a representative

**RESIDENTIAL CAPITAL LLC, ET AL.**

11

1    of his estate.

2              THE COURT:  Okay.

3              MR. MUSTAFANOS:  And through probate.

4              THE COURT:  All right.  When did your father pass

5    away?

6              MR. MUSTAFANOS:  It was March of 2010.

7              THE COURT:  Okay.  What is it that you believe that

8    Ally Financial did in connection with any loan to your father?

9              MR. MUSTAFANOS:  Ally Financial has been involved with

10   the national attorney generals and U.S. Attorney General's

11   investigation and had confessed through -- that they have acted

12   in collusion with -- as one with all of its subsidiaries in

13   committing fraudulent acts against the consumers of the United

14   States, as well as fraud, as well as racketeering.  They have

15   confessed to that in a 328-page document and yet they are

16   claiming that they are operating separately.  Yet, they have

17   confessed to the Attorney General and the Attorney Generals of

18   the United States of all fifty states.  They have promised to

19   make settlements with the AGs' offices in July of 2012 to

20   settle for homes that are under water.  They failed to do so by

21   filing bankruptcy immediately after, agreeing with the AGs to

22   stop their investigation.

23             Ally Financial refused to state in the Oregon court

24   that they are and have in the past worked as one with all of

25   its subsidiaries.  They refused to even respond to that

**RESIDENTIAL CAPITAL LLC, ET AL.**

12

1    question by the judge and now they're stand -- standing here

2    acting as though they're operating separate when they are not.

3            We're going to present the Oregon case with the

4    328-page document with them confessing that they have been

5    working together and committing racketeering and fraud against

6    the public.

7            And so, to me, I don't know why they haven't just come

8    forward and just dealt with this matter.  I don't know if this

9    Court has received any filed documents seeking protection for

10   Ally Financial or any document seeking protection from GMAC

11   Mortgage.  Residential Capital, according to all the attorneys

12   (sic) generals, have been working together with Ally for

13   financial and operating as one.

14           And so I am asking for this Court to lift the stay

15   with Residential Capital and to make notice that Ally

16   Financial, whether they have sought protection from this

17   bankruptcy -- through bankruptcy or if they have not and if

18   GMAC Mortgage have sought bankruptcy protection or have not.

19   If that's the case, then we proceed forward in the Oregon

20   matter.

21           THE COURT:  May I ask you this?  Are you represented

22   by a lawyer in the case in Oregon?

23           MR. MUSTAFANOS:  No, sir, but there is a lawyer who is

24   standing by who's willing to take the matter on.

25           THE COURT:  But at this point, you're not represented?

**RESIDENTIAL CAPITAL LLC, ET AL.**

13

1          MR. MUSTAFANOS:  They're -- they're willing to -- they

2      said that they would get back with me here in the next day or

3      two.

4          THE COURT:  Okay.  I'll give you a further chance to

5      respond.  I don't know whether Mr. Brown or Ms. Robinson,

6      whether you're going to address the issues, the effect of the

7      release provided in the confirmed bankruptcy plan.  Who is

8      going to respond to that?  Let me -- come on up to the

9      microphone but Ms. Robinson, I assume -- maybe I shouldn't

10     assume -- but I assume that you have had communications from

11     Ally's counsel -- we'll put aside GMAC -- you've had

12     communications from Ally's counsel regarding the bankruptcy

13     plan that was confirmed by this court and became effective in

14     December 2013.  Are you aware of that?

15         MS. ROBINSON:  Your Honor, I am, and --

16         THE COURT:  Well, wait a minute.  I want to ask Mr.

17     Mustafanos first whether -- so, were you provided with

18     information about the bankruptcy case, Reverend Mustafanos?

19         MR. MUSTAFANOS:  I received the information on the

20     bankruptcy case in February of 2014.

21         THE COURT:  Okay.  And were you aware of the

22     Residential Capital bankruptcy before that time?

23         MR. MUSTAFANOS:  No, sir, I was not.

24         THE COURT:  Okay.

25         All right.  Ms. Robinson, go ahead.  Why don't you --

**RESIDENTIAL CAPITAL LLC, ET AL.**

14

1      and I'm going to give you a chance after Ms. Robinson or Mr.

2      Brown, both of whom represent Ally, have had a chance to

3      address the issues because from the stand point of -- well,

4      with respect to GMAC Mortgage, LLC and Residential Capital,

5      LLC, are -- let me ask first, Ms. Robinson, is both GMACM and

6      ResCap, are they both defendants on the counterclaims?

7              MS. ROBINSON:  GMAC is the only --

8              THE COURT:  Not ResCap?

9              MS. ROBINSON:  GMAC Mortgage; yes.

10             THE COURT:  Okay.

11             MS. ROBINSON:  Not ResCap.

12             THE COURT:  All right.  So let me ask you another

13     question, Ms. Robinson.  Has Ally -- what I have in what I've

14     reviewed is -- I mean, I've seen your papers here but what I

15     have is Reverend Mustafanos' motion to lift the automatic stay.

16     Has Ally filed a motion to enforce the third-party nondebtor

17     release that's included in the plan?

18             MS. ROBINSON:  In the Oregon court, what we've done is

19     in February of 2010, after it became apparent that Reverend

20     Mustafanos was going to file an amended complaint, we filed

21     with the Court notice of the confirmation plan and a copy of

22     the confirmation plan was also sent to Reverend Mustafanos at

23     that time on February 10, 2014.

24             What we've done now is we've filed a motion to stay or

25     postpone the trial in the Oregon case, so that this Court can

**RESIDENTIAL CAPITAL LLC, ET AL.**

15

1    decide the issues presented in Reverend Mustafanos' motion and

2    the relief Ally has requested.  So no specific order has been

3    filed or motion in Oregon has been filed to enforce the

4    confirmation plan.  That's the relief they're requesting here.

5          THE COURT:  Is the matter assigned to a specific judge

6    at this point?

7          MS. ROBINSON:  It is, Your Honor.

8          THE COURT:  And so has there been a hearing where

9    there's at least been a discussion about the ResCap and its

10    affiliates' bankruptcy case and the third-party nondebtor

11    release provided to Ally Financial as part of the confirmed

12    plan?

13          MS. ROBINSON:  I don't believe there is.  That's

14    scheduled for a hearing next week on Monday.

15          THE COURT:  What is scheduled for a hearing next week?

16          MS. ROBINSON:  The motion to stay or postpone --

17          THE COURT:  Okay.

18          MS. ROBINSON:  -- is scheduled for a hearing and the

19    reason we've asked for the stay or postponement is because of

20    the confirmation order and plan.

21          MR. BROWN:  Your Honor, if I may?

22          THE COURT:  Yes, go ahead, Mr. Brown.

23          MR. BROWN:  Judson Brown from Kirkland & Ellis on

24    behalf of Ally Financial.

25          Your Honor, to answer your direct question, Ally has

**RESIDENTIAL CAPITAL LLC, ET AL.**

16

1    not filed a motion to enforce the stay in the bankruptcy

2    proceeding.  Once Reverend Mustafanos filed his motion to lift

3    the stay, we reached out to Your Honor's clerks and understood

4    that filing an opposition to Reverend Mustafanos' motion to

5    lift the stay on the basis of the third-party release would be

6    sufficient.

7            THE COURT:  All right.

8            MR. BROWN:  If Your Honor would like us to file a

9    formal motion, we're happy to do that, though.

10           THE COURT:  And I think what Mr. Brown is referring to

11   is what Ally filed here; it's styled, "Ally Financial, Inc.'s

12   objection to ex parte motion of the movant Yosef Le Roi

13   Mustafanos for an order shortening the notice period for

14   certain emergency relief from the automatic stay."  And it's

15   filed on this Court's docket as ECF docket number 6748.  That's

16   what you filed here.

17           MR. BROWN:  That's correct, Your Honor.

18           THE COURT:  Okay.  And in support of that, Ally

19   submitted the declaration of Rachel A. Robinson that's attached

20   as Exhibit A to the objection that I've just referred to.

21           MR. BROWN:  That is correct, Your Honor.

22           THE COURT:  And further attached was various copies of

23   pleadings in Oregon and correspondence with Reverend Mustafanos

24   regarding the third-party release and plan injunction.  Those

25   are attached as exhibits to the objection that Ally filed and

**RESIDENTIAL CAPITAL LLC, ET AL.**

17

1   there also is a certificate of service showing that all of

2   those materials were served on Reverend Mustafanos.

3          Reverend Mustafanos, you did receive the materials

4   from Ally, I take it, that they filed here?  Did you receive a

5   copy?

6          MR. MUSTAFANOS:  I have no idea what documents that

7   you're speaking of.

8          THE COURT:  Well, there was a package of documents, a

9   group of documents that Ally's counsel filed in this Court.

10  There's a certificate of service showing that it was served on

11  you.  Did you receive copies of -- the lead document is

12  entitled, "Ally Financial, Inc.'s objection to ex parte motion

13  of the movant Yosef Le Roi Mustafanos for an order shortening

14  the notice period for certain emergency relief from the

15  automatic stay."  And it had a long list of attachments.  Did

16  you receive that?

17         MR. MUSTAFANOS:  I received an e-mail of such

18  documents.  I read those documents.

19         THE COURT:  Okay.

20         MR. MUSTAFANOS:  But I did not receive anything in the

21  mail.

22         THE COURT:  Okay.  But you received -- you did receive

23  a copy by -- you're saying they were attached to an e-mail?  Is

24  that what you're saying?

25         MR. MUSTAFANOS:  An e-mail.  I did.

**RESIDENTIAL CAPITAL LLC, ET AL.**

18

1       THE COURT:  All right.  Mr. Brown, did you serve it by

2  mail?

3       MR. BROWN:  We served it by mail, Your Honor.  We,

4  frankly, don't even have an e-mail address for Reverend

5  Mustafanos.

6       THE COURT:  Okay.  All right.

7       MR. BROWN:  We served the pleading --

8       THE COURT:  Did you serve it by mail or personally?

9  Because there's an issue about serving the form the same way in

10  which a summons is served.

11      MR. BROWN:  Yes.  And Your Honor, we -- contrary to

12  how we served Mr. Lahrman --

13      THE COURT:  Yes.

14      MR. BROWN:  -- as we discussed at the previous

15  hearing, here, because Reverend Mustafanos had actually filed

16  the motion to which we were responding, we did not --

17      THE COURT:  Yes.

18      MR. BROWN:  -- personally serve him.

19      THE COURT:  Okay.

20      MR. BROWN:  We served him by mail.

21      THE COURT:  Okay.  All right.  So whoever's going on

22  behalf of Ally -- I don't know whether you, Mr. Brown, or

23  Ms. Robinson, but why don't you address for the Court the

24  issues of the third-party release and plan injunction and the

25  impact on the matter pending before me.

**RESIDENTIAL CAPITAL LLC, ET AL.**

1          MR. BROWN:  Yes, Your Honor.  Again, for the record,

2     Judson Brown of Kirkland & Ellis on behalf of Ally.

3          Your Honor, as Mr. Harris discussed previously, the

4     basis for Reverend Mustafanos' claims against Ally are tied to

5     a foreclosure matter.  And Reverend Mustafanos makes literally

6     no allegations with respect to Ally Financial's conduct.  There

7     are a few allegations concerning GMAC Mortgage, and all of

8     those allege that GMAC Mortgage was the broker of the refinance

9     loan at issue.

10         We understand from the debtors' liquidating trust's

11    counsel that GMAC Mortgage wasn't the broker; they were

12    actually a servicer at some period of time.  Ally Financial had

13    no involvement with this loan.  And literally the only times

14    that Ally Financial is mentioned in Reverend Mustafanos'

15    complaint are in two instances:  first, in stating that Ally

16    Financial is doing business as GMAC Mortgage, and second, in

17    stating that Ally Financial and GMAC Mortgage operate as a

18    single entity.

19         So there's no doubt here, Your Honor, that the claims

20    against Ally, the claims at issue in Reverend Mustafanos'

21    claim, concern the debtors; they arise and relate to the

22    debtors and, as a result, they fall squarely within the

23    language of the third-party release that this Court, Your

24    Honor, previously confirmed.

25         I think the debtors agree -- I actually don't think

**RESIDENTIAL CAPITAL LLC, ET AL.**

20

1    that Reverend Mustafanos disagrees -- that the claims relate to

2    GMAC Mortgage and the debtors and, thus, they fall squarely

3    within the third-party release.  And that's why we would ask

4    Your Honor to deny the relief that Reverend Mustafanos

5    requests.  If Your Honor would like a formal motion to enforce

6    the third-party release and the plan injunction, we can do

7    that.  But alternatively, we understood that our objection to

8    Reverend Mustafanos' motion to lift the stay would suffice, and

9    we would therefore ask Your Honor for the order to enforce the

10    plan injunction previously confirmed and to order Reverend

11    Mustafanos to dismiss his claims not only against GMAC Mortgage

12    but also against Ally Financial.

13          THE COURT:  All right, so first on the procedural

14    issue of what's before me, the pleadings that are before me in

15    Reverend Mustafanos' motion to lift the stay and in the

16    objections that have been filed, clearly -- and particularly

17    all the papers that Ally Financial filed, clearly put in issue

18    and put Reverend Mustafanos on notice -- on fair notice, that

19    Ally asserts and seeks relief enforcing the third-party

20    nondebtor release of Ally Financial that was included in the

21    confirmed plan in this case.

22          And so the Court concludes that that matter is

23    properly before me, although this was initiated by the motion

24    by Reverend Mustafanos.  The Court treats Ally's objection

25    essentially as a cross-motion for relief.  It is correct that

1    your office, Mr. Brown, contacted my chambers; obviously didn't

2    speak with me.  But that was the guidance that my chambers

3    provided.  It wasn't necessary to file a separate motion.  All

4    of this is presently before me today, and I certainly consider

5    it all before me.

6            So it's unnecessary -- at least on this part I'm going

7    to say it's unnecessary that a separate motion be filed; to the

8    extent that one separate motion would be, I consider this to be

9    an oral motion, but it's -- and properly before me, because all

10    of the arguments and issues have properly been placed before

11    the Court today, in Ally's filing and its exhibits, and were

12    served on Reverend Mustafanos.  And I'm going to give him a

13    chance, if he wants to, to address those issues.

14            Let me ask you this, though, Mr. Brown --

15            MR. MUSTAFANOS:  This is --

16            THE COURT:  Not --

17            MR. MUSTAFANOS:  -- Rev --

18            THE COURT:  Reverend Mustafanos, I want to ask

19    Mr. Brown a few more questions; then I'll give you an

20    opportunity, okay?

21            MR. MUSTAFANOS:  Okay.

22            THE COURT:  All right.  So one issue I have is,

23    certainly during the course of the ResCap bankruptcy cases,

24    early on, the so-called supplemental servicing order was

25    entered.  And it permitted parties essentially facing a

**RESIDENTIAL CAPITAL LLC, ET AL.**

22

1  foreclosure action to assert as affirmative defenses --

2  however, the local pleading rules require, whether it's

3  counterclaims or affirmative defenses -- essentially an

4  equitable defense to foreclosure; what they couldn't do was

5  recover an affirmative damages claim.

6       And how, if at all, does the plan -- the third-party

7  releases and plan injunction affect a borrower's ability to

8  assert, as a defense to foreclosure, allegations with respect

9  to either Ally or GMACM?  In other words, whether Ally decides

10  to appear -- it already has appeared in the matter in Oregon.

11  I'm not ruling yet, but I think any fair reading of the plan

12  release and injunction release Ally from monetary claims.

13  What's less clear to me that I would like you to address is

14  whether it prevents Reverend Mustafanos or any other borrower

15  who is asserting defenses in a foreclosure action from -- I'm

16  not sure what good it does them to have Ally there, but I

17  guess, Mr. Harris, I'll ask you the same question in a few

18  minutes with respect to GMAC.

19       Let's assume for the minute that they were able to

20  show that GMAC had engaged in -- had put the reverend's father

21  into an unsuitable loan and that was actionable in Oregon, and

22  that was -- that could constitute a defense to foreclosure.

23  Those are all facts that may not be supported by any evidence,

24  but let's assume that for purposes of discussion.

25       But Mr. Brown, does the third-party nondebtor release

**RESIDENTIAL CAPITAL LLC, ET AL.**

23

1    and plan injunction preclude a borrower from asserting that

2    kind of equitable defense to foreclosure?

3            MR. BROWN:  So two things, Your Honor.  First, I think

4    you hit on it when you said you're not even sure how Ally could

5    be involved in a defense to foreclosure.  I don't see how that

6    situation as a matter of fact could arise, given the nature of

7    the businesses here.  And so there's no question that an

8    affirmative action against Ally -- separate from a defense, but

9    an affirmative action against Ally is covered by the third-

10   party release.

11           We would --

12           THE COURT:  Affirmative action in the sense --

13   affirmative --

14           MR. BROWN:  But an affirmative claim.

15           THE COURT:  -- in seeking monetary recovery.

16           MR. BROWN:  Or any recovery, I think, Your Honor,

17   monetary or equitable, of any sort of recovery against Ally

18   would be covered by the third-party release.  The more nuanced

19   issue of whether someone such as Reverend Mustafanos could

20   proceed on the basis of a defense against Ally I think is a

21   closer question.  I think, however, the language of the third-

22   party release and the plan injunction are broad enough to cover

23   that.

24           And, for example, Your Honor the plan injunction

25   section 9(i) of the plan, Your Honor -- the plan injunction is

**RESIDENTIAL CAPITAL LLC, ET AL.**

24

1    quite broad.  And subsection (e) of the injunction enjoins any

2    party from commencing or continuing in any manner -- in any

3    manner -- or action or other proceeding of any kind against any

4    released party, on account of or in connection with or with

5    respect to any released claim.  Here there's no doubt Ally is a

6    released party, and these claims are foreclo -- the released

7    claims -- the foreclosure-related claims are released claims.

8              So I think that language, "continuing in any manner or

9    action or other proceeding of any kind", is broad enough to

10   cover this situation that Your Honor is hypothesizing.  I'm

11   more than happy to let Mr. Harris respond with respect to GMAC

12   Mortgage, as well.

13             THE COURT:  Okay.  All right.  Mr. Harris, let me hear

14   from you.  So is somebody representing GMAC Mortgage in --

15             MR. HARRIS:  We have not --

16             THE COURT:  -- Oregon?

17             MR. HARRIS:  We have not appeared in the case at all.

18             THE COURT:  Okay.

19             MR. HARRIS:  In fact, we haven't gotten notice of any

20   activity in the case.  And obviously, had we gotten notice, we

21   would have appeared.  At this point --

22             THE COURT:  Okay.

23             MR. HARRIS:  -- we haven't been involved at all, no.

24             THE COURT:  All right.

25             MR. HARRIS:  As to Mr. Brown's point, I think -- I

**RESIDENTIAL CAPITAL LLC, ET AL.**

25

1    agree that the -- we read the injunction the same way.

2    Subsection (a) of the injunction provision is also similar

3    insofar as it enjoins someone from commencing or continuing in

4    any manner or action or other proceeding of any kind against

5    any released party, whether directly, derivatively or

6    otherwise.

7        So between subsection (a) and subsection (e), I would

8    argue that any defenses to foreclosure are enjoined by the

9    injunction provisions as well.

10        THE COURT:  Quite frankly, the defenses to fore --

11    there may not -- if, as you've represented, GMAC wasn't

12    involved in the loan -- I'm having a little more trouble about

13    the issue of whether the effect of the confirmed plan is to

14    take away what was true throughout the ResCap case because of

15    the supplemental servicing order, that borrowers were free to

16    assert, as defenses to foreclosure, whatever arguments they

17    had; they couldn't recover any monetary recovery.  This may not

18    be the case where the question really arises very clearly,

19    because GMAC's role is certainly not at all clear; in some ways

20    it seems like a stranger to the proceedings; it hasn't been

21    brought in.

22        And certainly if Reverend Mustafanos, or his father

23    before him, thought they had a claim against GMAC, it should

24    have been filed here.

25        MR. HARRIS:  That's correct, Your Honor.  Neither

**RESIDENTIAL CAPITAL LLC, ET AL.**

26

1    party filed a claim in the case.

2        (Pause)

3        THE COURT:  Reverend Mustafanos, you want to add

4    anything now?  And I really need to hear you with respect to

5    the issues arising from the confirmed plan that includes a plan

6    injunction and certainly as to Ally very clearly, a release of

7    all claims against Ally.  It seems to me in many ways an

8    inseparable obstacle to your proceeding with claims against

9    Ally or GMAC either for affirmative recovery or in defense of

10   foreclosure.  But go ahead and address that, if you would.

11       MR. MUSTAFANOS:  This is Reverend Mustafanos.

12       First of all, Ally Financial and GMAC Mortgage, they

13   share an agent that acts on their behalf called CT Corporation.

14   And they were adequately served.  GMAC had chose to stand on

15   the side and allow Ally Financial to do all the talking for it.

16   They are clearly saying they were not given an opportunity to

17   be served -- or admission that they are in default.  My

18   concerns about the whole thing is that here we have in front of

19   us actions that were malicious and intentional.  And I don't

20   know how the law will -- if the law has any provision that

21   covers -- that protects those who engage in malicious and

22   intentional fraudulent acts.

23       I assumed that the law doesn't protect that kind of

24   behavior.  So I'm -- and you know, all I can do on behalf of my

25   father's estate is to stand back and say, these are malicious,

**RESIDENTIAL CAPITAL LLC, ET AL.**

27

1    they're intentional acts that are committed by people with

2    great power and great money, and the consumer needs some form

3    of protection against malicious and intentional fraudulent

4    acts.

5          And once again, Ally Financial, GMAC Mortgage, all of

6    them have consented that they have conducted malicious and

7    intentional acts in defrauding the public.

8          THE COURT:  Reverend Mustafanos, before you go on,

9    rather than having Ally's counsel or ResCap's counsel argue,

10   that's just flat out wrong.  I mean, I've lived with this case

11   for several years.  I'm very familiar with the consent order

12   settling the Federal Reserve Board investigation, settling the

13   attorney -- the state attorney's general action.

14         So if you're making those statements and

15   representations to the court in Oregon, you better be very

16   careful because they're completely inaccurate.  They don't

17   really bear on what's going to be my decision here.  But there

18   is absolutely no support for what you're representing to the

19   Court was included in the settlements that Ally did participate

20   in and the relief that was provided as a result of those

21   settlements.

22         But go ahead.  You're not a lawyer, and I'll let you

23   proceed.

24         MR. MUSTAFANOS:  I apologize if I have my facts

25   incorrect.  But in regards to my father and the actions that

**RESIDENTIAL CAPITAL LLC, ET AL.**

28

1    were -- and behaviors that were displayed on his -- you know,

2    towards him, those acts were clearly intentional and they were

3    clearly malicious.  And I -- I'm asking the Court to not allow

4    malicious and intentional behavior to be protected by the

5    Court.

6            You know, whatever's happened between the state's and

7    the AG's office, that's one thing, but we're talking about, you

8    know, my father who -- a wartime veteran, and this was -- this

9    behavior was intentionally inflicted upon him.  And I do not

10   want, you know, to offend this Court in any way, shape or --

11           THE COURT:  I want to make clear, you're not offending

12   the Court, but go ahead, Reverend Mustafanos.

13           MR. MUSTAFANOS:  So in regards to Ally Financial's

14   claim that they have no part in this, that's -- and that any

15   actions, no matter what it is, they're protected from it.

16   There has to be some clause that addresses, you know,

17   fraudulent behavior and intentional actions.

18           I can see that if it was just simply a monetary issue,

19   that would be -- I would consent myself, but this is not just

20   simply a monetary issue.  These are behaviors that you or I

21   would go to prison over and -- for committing fraud.  And they

22   are seeking protection from those actions.

23           Like I said, if it was simply monetary, then I have no

24   leg to stand on, but this is not just simply monetary.  And so

25   I -- for them to say that in any action in any way -- well, if

**RESIDENTIAL CAPITAL LLC, ET AL.**

29

1  you're talking monetarily versus, you know, separating monetary

2  from behaviors, I -- they're seeking protection for their

3  behaviors.  And I don't think the public would like to see them

4  just walk out the door this way.

5      THE COURT:  All right.  Anything you want to add,

6  Reverend Mustafanos?  Is there anything you wish to add?

7      MR. MUSTAFANOS:  Are you -- are you --

8      THE COURT:  I'm asking you, yes.  I just want to make

9  sure that I've heard your arguments.  Is there anything else

10  you want to add to what you said?

11      MR. MUSTAFANOS:  Are you talking me?  Reverend

12  Mustafanos?

13      THE COURT:  Yes, I am.

14      MR. MUSTAFANOS:  Sir, no, I can't add anything else to

15  it.

16      THE COURT:  Okay.  Mr. Harris.

17      MR. HARRIS:  Nothing further from me, Your Honor.

18      THE COURT:  Mr. Brown.

19      MR. BROWN:  Nothing further, Your Honor.

20      THE COURT:  All right.  Ms. Robinson.

21      MS. ROBINSON:  Nothing, Your Honor.

22      THE COURT:  All right.  Tell me again, Ms. Robinson,

23  when is the next hearing before the judge in Oregon.

24      MS. ROBINSON:  It's this coming Monday, which is the

25  14th, I believe.

**RESIDENTIAL CAPITAL LLC, ET AL.**

30

1           THE COURT:  And you'll be at that hearing?

2           MS. ROBINSON:  I will.

3           THE COURT:  Okay.  You should advise the judge that we

4   had this hearing today, that the bankruptcy court has taken the

5   matter under submission and intends to issue an opinion or

6   order dealing with the issues raised by Reverend Mustafanos'

7   motion for relief from the automatic stay and Ally Financial's

8   request for relief to enforce the third-party nondebtor release

9   and injunction that are included in the confirmed plan.  I

10  doubt whether my written disposition will be completed before

11  Monday.

12          And Reverend Mustafanos, I assume you'll be in court

13  in Oregon; you can -- I just ask you, Ms. Robinson, advise the

14  judge that I understand the importance of a prompt ruling

15  because of the matters pending before the court in Oregon with

16  the schedule.  What's the next hearing after next Monday?  Is

17  there a further schedule?

18          MS. ROBINSON:  There is no scheduled hearing after

19  next Monday.  There's trial scheduled until the -- for April

20  29th.

21          THE COURT:  Okay.  There will be a ruling --

22          MS. ROBINSON:  But that's what we've requested --

23          THE COURT:  Yeah.  There will be a ruling --

24          MS. ROBINSON:  -- be postponed.

25          THE COURT:  -- well in advance of them.  But I'm not

**RESIDENTIAL CAPITAL LLC, ET AL.**

31

1  going to rule from the bench.  I want to make sure that my

2  ruling is clear, and I'll try and provide it with reasonable

3  dispatch, but I don't think it's going to be by Monday, okay?

4         MS. ROBINSON:  Thank you, Your Honor.

5         THE COURT:  And Reverend Mustafanos, I appreciate your

6  appearing by telephone today.

7         MR. MUSTAFANOS:  And I appreciate you, Judge.

8         THE COURT:  Okay.  And I would just ask Mr. Harris and

9  Mr. Brown that when I do enter a ruling that you promptly

10 provide the written ruling to Reverend Mustafanos so he has

11 that as well.

12        MR. HARRIS:  We will, Your Honor.

13        THE COURT:  Okay.  All right.  We're in recess.  Thank

14 you.

15    (Whereupon these proceedings were concluded at 10:50 AM)

16

17

18

19

20

21

22

23

24

25

32

1

2                          C E R T I F I C A T I O N

3

4    I, Dena Page, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6

7

8

9    _____

10   DENA PAGE

11   AAERT-CERTIFIED TRANSCRIBER, CET D**629

12

13   eScribers

14   700 West 192nd Street, Suite #607

15   New York, NY 10040

16

17   Date:  April 10, 2014

18

19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, ET AL.

Case No. 12-12020-mg

April 10, 2014

## A

**ability (1)**
22:7
**able (1)**
22:19
**absolutely (1)**
27:18
**according (1)**
12:11
**account (1)**
24:4
**acted (1)**
11:11
**acting (1)**
12:2
**action (15)**
6:24;7:15,17,20;
10:21;22:1,15;23:8,9,
12;24:3,9;25:4;
27:13;28:25
**actionable (1)**
22:21
**actions (5)**
26:19;27:25;28:15,
17,22
**activity (1)**
24:20
**acts (7)**
11:13;26:13,22;
27:1,4,7;28:2
**actually (3)**
18:15;19:12,25
**add (7)**
8:1;9:18;26:3;29:5,
6,10,14
**address (7)**
13:6;14:3;18:4,23;
21:13;22:13;26:10
**addresses (1)**
28:16
**adequately (1)**
26:14
**adjustable (1)**
10:6
**admission (1)**
26:17
**advance (1)**
30:25
**advise (2)**
30:3,13
**affect (1)**
22:7
**affiliates' (1)**
15:10
**affirmative (9)**
22:1,3,5;23:8,9,12,
13,14;26:9
**Again (3)**
19:1;27:5;29:22
**against (21)**
6:23;7:14;8:13,14;

9:1;11:13;12:5;19:4,
20;20:11,12;23:8,9,
17,20;24:3;25:4,23;
26:7,8;27:3
**agenda (1)**
6:9
**agent (1)**
26:13
**agree (2)**
19:25;25:1
**agreeing (1)**
11:21
**AGs (1)**
11:21
**AGs' (1)**
11:19
**AG's (1)**
28:7
**ahead (8)**
6:17,18;10:2;
13:25;15:22;26:10;
27:22;28:12
**alive (1)**
10:24
**allegations (5)**
9:1,11;19:6,7;22:8
**allege (1)**
19:8
**alleges (3)**
7:10;9:8,13
**allow (3)**
7:14;26:15;28:3
**Ally (63)**
6:13,23;8:14,16,17,
21,24,25;9:1,8,9;
10:17;11:8,9,23;
12:10,12,15;14:2,13,
16;15:2,11,24,25;
16:11,11,18,25;17:4,
12;18:22;19:2,4,6,12,
14,15,17,20;20:12,
17,19,20;22:9,9,12,
16;23:4,8,9,17,20;
24:5;26:6,7,9,12,15;
27:5,19;28:13;30:7
**Ally's (8)**
6:17;7:21;13:11,
12;17:9;20:24;21:11;
27:9
**alone (1)**
9:12
**alternatively (1)**
20:7
**Although (2)**
8:24;20:23
**amend (1)**
9:5
**amended (4)**
8:23;9:1,6;14:20
**Americas (1)**
4:4
**apologize (1)**
27:24

**apparent (1)**
14:19
**appear (1)**
22:10
**appeared (5)**
9:2;10:20;22:10;
24:17,21
**appearing (1)**
31:6
**appreciate (3)**
10:12;31:5,7
**appropriately (1)**
10:10
**April (2)**
8:11;30:19
**argue (2)**
25:8;27:9
**argument (1)**
10:2
**arguments (3)**
21:10;25:16;29:9
**arise (2)**
19:21;23:6
**arises (1)**
25:18
**arising (2)**
6:24;26:5
**aside (1)**
13:11
**assert (4)**
6:23;22:1,8;25:16
**asserting (2)**
22:15;23:1
**asserts (1)**
20:19
**assigned (1)**
15:5
**assisted (1)**
10:4
**assume (6)**
13:9,10,10;22:19,
24;30:12
**assumed (1)**
26:23
**attached (4)**
16:19,22,25;17:23
**attachments (1)**
17:15
**Attorney (5)**
11:10,10,17,17;
27:13
**Attorneys (4)**
4:3,11,20;12:11
**attorney's (1)**
27:13
**August (2)**
8:21,23
**automatic (7)**
6:10,22;7:13;
14:15;16:14;17:15;
30:7
**Avenue (2)**
4:4,21

**aware (2)**
13:14,21
**away (2)**
11:5;25:14

## B

**back (3)**
8:21;13:2;26:25
**bankruptcy (15)**
10:18,19;11:21;
12:17,17,18;13:7,12,
18,20,22;15:10;16:1;
21:23;30:4
**basis (4)**
7:12;16:5;19:4;
23:20
**bear (1)**
27:17
**became (2)**
13:13;14:19
**begin (1)**
8:11
**behalf (8)**
6:6,16,21;15:24;
18:22;19:2;26:13,24
**behavior (5)**
10:14;26:24;28:4,
9,17
**behaviors (5)**
10:9;28:1,20;29:2,
3
**bench (1)**
31:1
**best (1)**
7:22
**better (1)**
27:15
**Board (1)**
27:12
**borrower (2)**
22:14;23:1
**borrowers (1)**
25:15
**borrower's (1)**
22:7
**both (3)**
14:2,5,6
**broad (3)**
23:22;24:1,9
**broker (4)**
7:11;9:14;19:8,11
**brought (3)**
8:17;10:6;25:21
**Brown (30)**
13:5;14:2;15:21,
22,23,23;16:8,10,17,
21;18:1,3,7,11,14,18,
20,22;19:1,2;21:1,14,
19;22:25;23:3,14,16;
29:18,19;31:9
**Brown's (1)**
24:25

## C

**called (1)**
26:13
**can (5)**
14:25;20:6;26:24;
28:18;30:13
**capabilities (1)**
10:7
**Capital (6)**
5:3;6:3;12:11,15;
13:22;14:4
**caption (2)**
8:24,24
**careful (1)**
27:16
**CAROLE (1)**
5:3
**case (15)**
8:17;12:3,19,22;
13:18,20;14:25;
15:10;20:21;24:17,
20;25:14,18;26:1;
27:10
**cases (1)**
21:23
**certain (2)**
16:14;17:14
**certainly (5)**
21:4,23;25:19,22;
26:6
**certificate (2)**
17:1,10
**chambers (1)**
21:1,2
**chance (4)**
13:4;14:1,2;21:13
**changed (1)**
8:25
**chose (1)**
26:14
**claim (8)**
9:3;19:21;22:5;
23:14;24:5;25:23;
26:1;28:14
**claiming (1)**
11:16
**claims (14)**
6:23;7:14;19:4,19,
20;20:1,11;22:12;
24:6,7,7,7;26:7,8
**clause (1)**
28:16
**clear (5)**
10:15;22:13;25:19;
28:11;31:2
**clearly (8)**
10:15;20:16,17;

25:18;26:6,16;28:2,3
**clerks (1)**
    16:3
**closer (1)**
    23:21
**coaxed (1)**
    10:5
**collusion (1)**
    11:12
**coming (1)**
    29:24
**commencing (2)**
    24:2;25:3
**committed (1)**
    27:1
**Committee (1)**
    4:3
**committing (3)**
    11:13;12:5;28:21
**communications (2)**
    13:10,12
**competent (2)**
    9:16;10:9
**complaint (4)**
    8:19;9:7;14:20;
    19:15
**completed (1)**
    30:10
**completely (1)**
    27:16
**concern (1)**
    19:21
**concerning (1)**
    19:7
**concerns (1)**
    26:18
**concluded (1)**
    31:15
**concludes (1)**
    20:22
**conduct (2)**
    9:12;19:6
**conducted (1)**
    27:6
**confessed (3)**
    11:11,15,17
**confessing (1)**
    12:4
**confirmation (4)**
    14:21,22;15:4,20
**confirmed (10)**
    7:11;13:7,13;
    15:11;19:24;20:10,
    21;25:13;26:5;30:9
**connection (2)**
    11:8;24:4
**consent (2)**
    27:11;28:19
**consented (1)**
    27:6
**consider (2)**
    21:4,8
**constitute (1)**

22:22
**consumer (1)**
    27:2
**consumers (1)**
    11:13
**contacted (1)**
    21:1
**continued (1)**
    10:9
**continuing (3)**
    24:2,8;25:3
**contrary (2)**
    7:10;18:11
**copies (2)**
    16:22;17:11
**copy (3)**
    14:21;17:5,23
**Corp (2)**
    7:1,5
**Corporation (1)**
    26:13
**correctly (1)**
    6:21
**correspondence (1)**
    16:23
**counsel (8)**
    6:18;7:21;13:11,
    12;17:9;19:11;27:9,9
**counterclaim (5)**
    8:19,20,22,23;9:2
**counterclaims (2)**
    14:6;22:3
**course (1)**
    21:23
**COURT (103)**
    6:2,17;7:16,19,23,
    25;8:3,5,7,16;9:11,
    17,20,24;10:2,17,18,
    19,20,24;11:2,4,7,23;
    12:9,14,21,25;13:4,
    13,16,21,24;14:8,10,
    12,18,21,25;15:5,8,
    15,17,22;16:7,10,18,
    22;17:8,9,19,22;18:1,
    6,8,13,17,19,21,23;
    19:23;20:13,22,24;
    21:11,16,18,22;
    23:12,15;24:13,16,
    18,22,24;25:10;26:3;
    27:8,15,19;28:3,5,10,
    11,12;29:5,8,13,16,
    18,20,22;30:1,3,4,12,
    15,21,23,25;31:5,8,
    13
**Court's (1)**
    16:15
**cover (2)**
    23:22;24:10
**covered (2)**
    23:9,18
**covers (1)**
    26:21
**Creditors' (1)**

4:3
**cross-motion (1)**
    20:25
**CT (1)**
    26:13
**currently (2)**
    8:10;9:7

**D**

**damages (1)**
    22:5
**Daniel (1)**
    6:5
**day (1)**
    13:2
**dealing (1)**
    30:6
**dealt (1)**
    12:8
**debtors (4)**
    19:21,22,25;20:2
**debtors' (2)**
    7:9;19:10
**December (2)**
    9:2;13:14
**decide (1)**
    15:1
**decides (1)**
    22:9
**decision (2)**
    27:17
**declaration (1)**
    16:19
**default (1)**
    26:17
**defendants (1)**
    14:6
**defense (8)**
    22:4,8,22;23:2,5,8,
    20;26:9
**defenses (6)**
    22:1,3,15;25:8,10,
    16
**defrauding (1)**
    27:7
**DELEHEY (1)**
    5:3
**deny (1)**
    20:4
**derivatively (1)**
    25:5
**determined (1)**
    7:3
**digging (1)**
    7:2
**direct (1)**
    15:25
**directly (1)**
    25:5
**disagrees (1)**
    20:1
**discussed (2)**

18:14;19:3
**discussion (2)**
    15:9;22:24
**dismiss (2)**
    9:3;20:11
**dispatch (1)**
    31:3
**displayed (2)**
    10:9;28:1
**disposition (1)**
    30:10
**docket (6)**
    6:11,13,14;7:16;
    16:15,15
**document (4)**
    11:15;12:4,10;
    17:11
**documentation (1)**
    7:12
**Documents (7)**
    10:10;12:9;17:6,8,
    9,18,18
**done (2)**
    14:18,24
**door (1)**
    29:4
**doubt (3)**
    19:19;24:5;30:10
**DRAPER (1)**
    4:16
**during (2)**
    10:14;21:23

**E**

**early (1)**
    21:24
**ECF (1)**
    16:15
**effect (2)**
    13:6;25:13
**effective (1)**
    13:13
**either (2)**
    22:9;26:9
**ELLIS (3)**
    4:19;15:23;19:2
**else (4)**
    8:1;9:17;29:9,14
**e-mail (4)**
    17:17,23,25;18:4
**emergency (3)**
    6:10;16:14;17:14
**enforce (6)**
    14:16;15:3;16:1;
    20:5,9;30:8
**enforcing (1)**
    20:19
**engage (1)**
    26:21
**engaged (1)**
    22:20
**enjoined (1)**

25:8
**enjoins (2)**
    24:1;25:3
**enough (2)**
    23:22;24:9
**enter (2)**
    9:16;31:9
**entered (2)**
    10:4;21:25
**entitled (1)**
    17:12
**entity (1)**
    19:18
**equitable (3)**
    22:4;23:2,17
**ESQ (3)**
    4:7,16,24
**essentially (4)**
    9:15;20:25;21:25;
    22:3
**estate (2)**
    11:1;26:25
**even (3)**
    11:25;18:4;23:4
**EverBank (2)**
    8:12,19
**Everest (1)**
    4:11
**Everhome (1)**
    7:8
**evidence (1)**
    22:23
**ex (3)**
    6:9;16:12;17:12
**example (1)**
    23:24
**Exhibit (1)**
    16:20
**exhibits (2)**
    16:25;21:11
**explained (1)**
    6:19
**extent (2)**
    7:9;21:8

**F**

**facing (1)**
    21:25
**fact (3)**
    7:4;23:6;24:19
**facts (2)**
    22:23;27:24
**failed (1)**
    11:20
**failure (1)**
    9:3
**fair (2)**
    20:18;22:11
**fall (2)**
    19:22;20:2
**familiar (1)**
    27:11

**family (1)**
10:5
**father (10)**
6:21;9:15;10:3,24;
11:4,8;22:20;25:22;
27:25;28:8
**father's (1)**
26:25
**February (4)**
9:6;13:20;14:19,23
**Federal (1)**
27:12
**few (4)**
6:15;19:7;21:19;
22:17
**fifty (1)**
11:18
**file (3)**
14:20;16:8;21:3
**filed (31)**
6:12,14,21;8:12,13,
18,19,20;9:2;10:17,
19;12:9;14:16,20,24;
15:3,3;16:1,2,11,15,
16,25;17:4,9;18:15;
20:16,17;21:7;25:24;
26:1
**files (1)**
7:12
**filing (3)**
11:21;16:4;21:11
**fill (1)**
8:16
**Financial (23)**
6:13;10:7,17;11:8,
9,23;12:10,13,16;
15:11,24;16:11;
17:12;19:12,14,16,
17;20:12,17,20;
26:12,15;27:5
**Financial's (1)**
19:6;28:13;30:7
**fine (1)**
7:23
**first (7)**
10:20;13:17;14:5;
19:15;20:13;23:3;
26:12
**fixed-rate (1)**
10:4
**flat (1)**
27:10
**Foerster (1)**
6:6
**fore (1)**
25:10
**foreclo (1)**
24:6
**foreclosure (18)**
6:24;7:15,17,19;
8:20;10:21,23;19:5;
22:1,4,8,15,22;23:2,
5;25:8,16;26:10

**foreclosure-related (1)**
24:7
**form (1)**
18:9;27:2
**formal (2)**
16:9;20:5
**forward (1)**
10:16;12:8,19
**FRANKEL (1)**
4:2
**frankly (1)**
18:4;25:10
**fraud (3)**
11:14;12:5;28:21
**fraudulent (4)**
11:13;26:22;27:3;
28:17
**Freddie (1)**
4:20
**free (1)**
25:15
**front (1)**
26:18
**further (5)**
13:4;16:22;29:17,
19;30:17

**G**

**General (2)**
11:17;27:13
**generals (3)**
11:10,17;12:12
**General's (1)**
11:10
**given (2)**
23:6;26:16
**GMAC (36)**
6:23;7:5,6,10,14;
9:8,9,12,14,14;10:5,
8,18;12:10,18;13:11;
14:4,7,9;19:7,8,11,
16,17;20:2,11;22:18,
20;24:11,14;25:11,
23;26:9,12,14;27:5
**GMACM (2)**
14:5;22:9
**GMAC's (1)**
25:19
**Good (2)**
6:5;22:16
**granted (2)**
9:4,4
**great (2)**
27:2,2
**group (1)**
17:9
**guess (1)**
22:17
**guidance (1)**
21:2

**H**

**happened (1)**
28:6
**happy (4)**
6:15;7:25;16:9;
24:11
**Harris (24)**
6:4,5,5,19;7:18,21,
24;8:1,2,4;19:3;
22:17;24:11,13,15,
17,19,23,25;25:25;
29:16,17;31:8,12
**hear (5)**
6:17;7:25;10:2;
24:13;26:4
**heard (2)**
8:15;29:9
**hearing (10)**
15:8,14,15,18;
18:15;29:23;30:1,4,
16,18
**hit (1)**
23:4
**homes (1)**
11:20
**Honor (31)**
6:5,19;8:4,6;13:15;
15:7,21,25;16:8,17,
21;18:3,11;19:1,3,19,
24;20:4,5,9;23:3,16,
24,25;24:10;25:25;
29:17,19,21;31:4,12
**Honor's (1)**
16:3
**Houston (1)**
4:14
**hypothesizing (1)**
24:10

**I**

**idea (1)**
17:6
**identify (1)**
8:7
**immediately (1)**
11:21
**impact (1)**
18:25
**importance (1)**
30:14
**inaccurate (1)**
27:16
**Inc (1)**
6:14
**inception (1)**
7:7
**included (4)**
14:17;20:20;27:19;
30:9
**includes (1)**

26:5
**incompetent (1)**
10:15
**incorrect (1)**
27:25
**Inc's (2)**
16:11;17:12
**inflicted (1)**
28:9
**information (2)**
13:18,19
**initial (1)**
8:20
**initiated (1)**
20:23
**injunction (16)**
16:24;18:24;20:6,
10;22:7,12;23:1,22,
24,25;24:1;25:1,2,9;
26:6;30:9
**inseparable (1)**
26:8
**insofar (1)**
25:3
**instances (1)**
19:15
**intends (1)**
30:5
**intentional (8)**
26:19,22;27:1,3,7;
28:2,4,17
**intentionally (1)**
28:9
**International (1)**
4:11
**into (5)**
8:17;9:16;10:4,6;
22:21
**investigation (3)**
11:11,22;27:12
**Investors (1)**
7:1
**involved (5)**
7:3;11:9;23:5;
24:23;25:12
**involvement (2)**
7:9;19:13
**issue (11)**
18:9;19:9,20;
20:14,17;21:22;
23:19;25:13;28:18,
20;30:5
**issued (1)**
6:25
**issues (8)**
13:6;14:3;15:1;
18:24;21:10,13;26:5;
30:6

**J**

**James (1)**
10:3

**January (1)**
9:4
**JOSEPH (1)**
4:7
**judge (6)**
12:1;15:5;29:23;
30:3,14;31:7
**judgment (2)**
8:11,12,14
**judicial (1)**
8:19
**Judson (2)**
15:23;19:2
**July (1)**
11:19

**K**

**Kastner (1)**
8:9
**kind (5)**
23:2;24:3,9;25:4;
26:23
**KIRKLAND (3)**
4:19;15:23;19:2
**known (1)**
10:8
**KRAMER (1)**
4:2

**L**

**Lahrman (1)**
18:12
**language (3)**
19:23;23:21;24:8
**law (3)**
26:20,20,23
**lawyer (3)**
12:22,23;27:22
**LE (4)**
5:4;6:9;16:12;
17:13
**lead (1)**
17:11
**least (2)**
15:9;21:6
**leave (1)**
9:5
**leg (1)**
28:24
**less (1)**
22:13
**lethargic (1)**
10:13
**LEVIN (1)**
4:2
**Lexington (1)**
4:21
**lift (7)**
7:13;12:14;14:15;
16:2,5;20:8,15
**liquidating (5)**

6:6,12,16;7:2;
19:10
**list (1)**
17:15
**literally (2)**
19:5,13
**little (2)**
7:4;25:12
**lived (1)**
27:10
**LLC (4)**
6:23;7:6;14:4,5
**LLP (3)**
4:2,10,19
**loan (14)**
6:25;7:4,4,6,11;
9:10;10:4,6,6;11:8;
19:9,13;22:21;25:12
**loans (1)**
10:13
**local (2)**
7:21;22:2
**located (1)**
7:12
**long (1)**
17:15

## M

**Mac (1)**
4:20
**mail (5)**
17:21;18:2,3,8,20
**makes (1)**
19:5
**making (1)**
27:14
**malicious (7)**
26:19,21,25;27:3,
6;28:3,4
**manner (4)**
24:2,3,8;25:4
**many (1)**
26:7
**March (2)**
8:21;11:6
**Marshall (5)**
6:22,25;10:3,8,11
**materials (2)**
17:2,3
**MATOUSEK (1)**
4:10
**matter (14)**
6:8;8:6,10;12:8,20,
24;15:5;18:25;19:5;
20:22;22:10;23:6;
28:15;30:5
**matters (1)**
30:15
**May (5)**
12:21;15:21;22:23;
25:11,17
**maybe (1)**

13:9
**McKinney (1)**
4:12
**mean (2)**
14:14;27:10
**MELTZER (1)**
4:24
**mentioned (1)**
19:14
**MICHAEL (1)**
4:24
**microphone (1)**
13:9
**minute (2)**
13:16;22:19
**minutes (1)**
22:18
**misconduct (1)**
9:12
**Monday (6)**
15:14;29:24;30:11,
16,19;31:3
**monetarily (1)**
29:1
**monetary (9)**
22:12;23:15,17;
25:17;28:18,20,23,
24;29:1
**money (1)**
27:2
**more (2)**
21:19;23:18;24:11;
25:12
**morning (1)**
6:5
**morning's (1)**
6:8
**Morrison (1)**
6:6
**Mortgage (28)**
6:23;7:1,5,6;9:8,9,
14,14;10:4,5,7,8,18;
12:11,18;14:4,9;19:7,
8,11,16,17;20:21;21:1;
24:12,14;26:12;27:5
**motion (27)**
6:9,21;8:12,14;9:3;
14:15,16,24;15:1,3,
16;16:1,2,4,9,12;
17:12;18:16;20:5,8,
15,23;21:3,7,8,9;30:7
**motions (1)**
8:11
**movant (2)**
16:12;17:13
**MUSTAFANOS (72)**
5:4;6:10,20;7:10,
14;8:13,13,18,21;9:4,
13,21,22,22,25;10:1,
3,22,25;11:3,6,9;
12:23;13:1,17,18,19,
23;14:20,22;16:2,13,
23;17:2,3,6,13,17,20,

25;18:5,15;19:5;
20:1,4,11,18,24;
21:12,15,17,18,21;
22:14;23:19;25:22;
26:3,11,11;27:8,24;
28:12,13;29:6,7,11,
12,14;30:12;31:5,7,
10
**Mustafanos' (10)**
9:15;14:15;15:1;
16:4;19:4,14,20;20:8,
15;30:6
**myself (1)**
28:19

## N

**NAFTALIS (1)**
4:2
**name (1)**
6:20
**named (2)**
8:22,24
**national (1)**
11:10
**nature (1)**
23:6
**necessary (1)**
21:3
**need (2)**
7:13;26:4
**needs (1)**
27:2
**Neither (1)**
25:25
**New (3)**
4:5,22;10:6
**next (8)**
8:15;13:2;15:14,
15;29:23;30:16,16,19
**nondebtor (5)**
14:16;15:10;20:20;
22:25;30:8
**notarized (1)**
10:10
**notice (8)**
12:15;14:21;16:13;
17:14;20:18,18;
24:19,20
**nuanced (1)**
23:18
**number (4)**
6:3,11,13;16:15
**NY (2)**
4:5,22

## O

**objection (7)**
6:14;16:12,20,25;
17:12;20:7,24
**objections (1)**
20:16

**obstacle (1)**
26:8
**obviously (2)**
21:1;24:20
**October (1)**
8:25
**off (1)**
10:20
**offend (1)**
28:10
**offending (1)**
28:11
**office (2)**
21:1;28:7
**offices (1)**
11:19
**Once (2)**
16:2;27:5
**one (8)**
6:8;9:9;11:12,24;
12:13;21:8,22;28:7
**only (3)**
14:7;19:13;20:11
**operate (1)**
19:17
**operating (3)**
11:16;12:2,13
**opinion (1)**
30:5
**opportunity (2)**
21:20;26:16
**opposition (1)**
16:4
**oral (1)**
21:9
**order (10)**
15:2,20;16:13;
17:13;20:9,10;21:24;
25:15;27:11;30:6
**Oregon (24)**
6:24;7:14,17,22;
8:6,10;9:7;10:21,23;
11:23;12:3,19,22;
14:18,25;15:3;16:23;
22:10,21;24:16;
27:15;29:23;30:13,
15
**origination (1)**
7:3
**ostensibly (1)**
6:22
**otherwise (1)**
25:6
**out (4)**
7:5;16:3;27:10;
29:4
**outside (1)**
10:7
**over (1)**
28:21

## P

**package (1)**
17:8
**papers (3)**
7:10;14:14;20:17
**part (3)**
15:11;21:6;28:14
**parte (3)**
6:9;16:12;17:12
**participate (1)**
27:19
**particularly (1)**
20:16
**parties (1)**
21:25
**Party (11)**
5:4;7:8;10:21,22;
23:10,22;24:2,4,6;
25:5;26:1
**pass (1)**
11:4
**past (1)**
11:24
**Pause (1)**
26:2
**pending (5)**
6:24;8:12;9:7;
18:25;30:15
**people (1)**
27:1
**period (3)**
16:13;17:14;19:12
**permitted (1)**
21:25
**personally (2)**
18:8,18
**ph (1)**
6:22
**phone (1)**
9:21
**placed (2)**
10:13;21:10
**plan (25)**
13:7,13;14:17,21,
22;15:4,12,20;16:24;
18:24;20:6,10,21;
22:6,7,11;23:1,22,24,
25,25;25:13;26:5,5;
30:9
**pleading (2)**
18:7;22:2
**pleadings (1)**
16:23;20:14
**point (6)**
9:18;12:25;14:3;
15:6;24:21,25
**postpone (2)**
14:25;15:16
**postponed (1)**
30:24
**postponement (1)**
15:19
**power (1)**
27:2

**preclude (1)**
  23:1
**predecessor (1)**
  7:6
**PRESENT (2)**
  5:2;12:3
**presented (1)**
  15:1
**presenting (1)**
  9:23
**presently (1)**
  21:4
**prevents (1)**
  22:14
**previous (1)**
  18:14
**previously (3)**
  19:3,24;20:10
**prison (1)**
  28:21
**Pro (1)**
  5:4
**probably (1)**
  7:22
**probate (1)**
  11:3
**procedural (1)**
  20:13
**proceed (3)**
  12:19;23:20;27:23
**proceeded (1)**
  10:16
**proceeding (5)**
  16:2;24:3,9;25:4;
  26:8
**proceedings (2)**
  25:20;31:15
**process (1)**
  10:23
**promised (1)**
  11:18
**prompt (1)**
  30:14
**promptly (1)**
  31:9
**pronouncing (1)**
  6:20
**properly (3)**
  20:23;21:9,10
**protect (1)**
  26:23
**protected (2)**
  28:4,15
**protection (9)**
  10:18,19;12:9,10,
  16,18;27:3;28:22;
  29:2
**protects (1)**
  26:21
**provide (2)**
  31:2,10
**provided (5)**
  13:7,17;15:11;

  21:3;27:20
**provision (2)**
  25:2;26:20
**provisions (1)**
  25:9
**public (3)**
  12:6;27:7;29:3
**purposes (2)**
  9:9;22:24
**pursue (1)**
  7:14
**put (4)**
  13:11;20:17,18;
  22:20

## Q

**quite (2)**
  24:1;25:10

## R

**Rachel (2)**
  8:8;16:19
**racketeering (2)**
  11:14;12:5
**raised (1)**
  30:6
**rate (1)**
  10:6
**rather (1)**
  27:9
**reached (1)**
  16:3
**read (2)**
  17:18;25:1
**reading (1)**
  22:11
**really (3)**
  25:18;26:4;27:17
**reason (1)**
  15:19
**reasonable (1)**
  31:2
**receive (6)**
  17:3,4,11,16,20,22
**received (4)**
  12:9;13:19;17:17,
  22
**recess (1)**
  31:13
**record (2)**
  8:7;19:1
**recover (2)**
  22:5;25:17
**recovery (5)**
  23:15,16,17;25:17;
  26:9
**referred (1)**
  16:20
**referring (1)**
  16:10
**refinance (3)**

  9:15,16;19:8
**refinanced (1)**
  9:10
**refused (2)**
  11:23,25
**regarding (2)**
  13:12;16:24
**regards (2)**
  27:25;28:13
**Reinsurance (1)**
  4:11
**relate (2)**
  19:21;20:1
**relates (1)**
  6:25
**release (18)**
  13:7;14:17;15:11;
  16:5,24;18:24;19:23;
  20:3,6,20;22:12,12,
  25;23:10,18,22;26:6;
  30:8
**released (6)**
  24:4,5,6,6,7;25:5
**releases (1)**
  22:7
**relief (13)**
  6:10,16,22;15:2,4;
  16:14;17:14;20:4,19,
  25;27:20;30:7,8
**represent (1)**
  14:2
**representations (1)**
  27:15
**representative (1)**
  10:25
**represented (3)**
  12:21,25;25:11
**representing (2)**
  24:14;27:18
**request (1)**
  30:8
**requested (2)**
  15:2;30:22
**requesting (1)**
  15:4
**requests (1)**
  20:5
**require (1)**
  22:2
**ResCap (7)**
  6:6;14:6,8,11;15:9;
  21:23;25:14
**ResCap's (1)**
  27:9
**Reserve (1)**
  27:12
**Residential (6)**
  5:3;6:2;12:11,15;
  13:22;14:4
**respect (8)**
  6:15;14:4;19:6;
  22:8,18;24:5,11;26:4
**respond (4)**

  11:25;13:5,8;24:11
**responding (1)**
  18:16
**response (1)**
  6:13
**result (2)**
  19:22;27:20
**Rev (1)**
  21:17
**Reverend (48)**
  6:9;8:13,13,18,20;
  9:4,13,15,22,25;
  13:18;14:15,19,22;
  15:1;16:2,4,23;17:2,
  3;18:4,15;19:4,5,14,
  20;20:1,4,8,10,15,18,
  24;21:12,18;22:14;
  23:19;25:22;26:3,11;
  27:8;28:12;29:6,11;
  30:6,12;31:5,10
**reverend's (1)**
  22:20
**reviewed (2)**
  7:16;14:14
**right (17)**
  6:2;9:17;11:4;
  13:25;14:12;16:7;
  18:1,6,21;20:13;
  21:22;24:13,24;29:5,
  20,22;31:13
**rights (1)**
  7:7
**Robinson (34)**
  7:21;8:6,8,8,18;
  9:13,19;13:5,9,15,25;
  14:1,5,7,9,11,13,18;
  15:7,13,16,18;16:19;
  18:23;29:20,21,22,
  24;30:2,13,18,22,24;
  31:4
**ROI (4)**
  5:4;6:9;16:12;
  17:13
**role (1)**
  25:19
**rule (1)**
  31:1
**rules (1)**
  22:2
**ruling (7)**
  22:11;30:14,21,23;
  31:2,9,10

## S

**same (4)**
  9:9;18:9;22:17;
  25:1
**saying (3)**
  17:23,24;26:16
**schedule (2)**
  30:16,17
**scheduled (7)**

  8:10,14;15:14,15,
  18;30:18,19
**Se (1)**
  5:4
**second (1)**
  19:16
**section (1)**
  23:25
**seeking (6)**
  6:22;12:9,10;
  23:15;28:22;29:2
**seeks (1)**
  20:19
**seems (2)**
  25:20;26:7
**sense (1)**
  23:12
**sent (1)**
  14:22
**separate (5)**
  12:2;21:3,7,8;23:8
**separately (1)**
  11:16
**separating (1)**
  29:1
**Sergeant (3)**
  6:21,25;10:3
**serve (4)**
  7:11;18:1,8,18
**served (11)**
  8:25;17:2,10;18:3,
  7,10,12,20;21:12;
  26:14,17
**service (2)**
  17:1,10
**serviced (1)**
  7:6
**servicer (1)**
  19:12
**servicing (3)**
  7:7;21:24;25:15
**serving (1)**
  18:9
**settle (1)**
  11:20
**settlements (3)**
  11:19;27:19,21
**settling (2)**
  27:12,12
**several (1)**
  27:11
**shape (1)**
  28:10
**share (1)**
  26:13
**SHIFER (1)**
  4:7
**short (1)**
  6:12
**shortening (2)**
  16:13;17:13
**shortly (1)**
  10:5

**show (1)**
  22:20
**showing (2)**
  17:1,10
**sic (2)**
  7:8;12:12
**side (1)**
  26:15
**similar (1)**
  25:2
**simply (4)**
  28:18,20,23,24
**single (1)**
  19:18
**situation (3)**
  10:11;23:6;24:10
**so-called (1)**
  21:24
**somebody (1)**
  24:14
**someone (2)**
  23:19;25:3
**sort (1)**
  23:17
**sought (3)**
  6:16;12:16,18
**speak (2)**
  9:24;21:2
**speaking (1)**
  17:7
**specific (3)**
  9:11;15:2,5
**squarely (2)**
  19:22;20:2
**stand (5)**
  12:1;14:3;26:14,
  25;28:24
**standing (2)**
  12:1,24
**state (3)**
  9:3;11:23;27:13
**statement (2)**
  6:12,20
**statements (1)**
  27:14
**States (3)**
  11:14,18,18
**state's (1)**
  28:6
**stating (2)**
  19:15,17
**status (1)**
  7:19
**stay (16)**
  6:10,23;7:13;
  12:14;14:15,24;
  15:16,19;16:1,3,5,14;
  17:15;20:8,15;30:7
**still (1)**
  10:24
**stop (1)**
  11:22
**stranger (1)**

  25:20
**Street (1)**
  4:12
**styled (1)**
  16:11
**submission (1)**
  30:5
**submitted (1)**
  16:19
**subsection (4)**
  24:1;25:2,7,7
**subsequently (1)**
  8:25
**subsidiaries (2)**
  11:12,25
**suffice (1)**
  20:8
**sufficient (1)**
  16:6
**Suite (1)**
  4:13
**suited (1)**
  7:22
**summary (3)**
  8:11,12,14
**summons (1)**
  18:10
**supplemental (2)**
  21:24;25:15
**support (2)**
  16:18;27:18
**supported (1)**
  22:23
**sure (4)**
  22:16;23:4;29:9;
  31:1

**T**

**talking (4)**
  26:15;28:7;29:1,11
**telephone (1)**
  31:6
**TELEPHONICALLY (4)**
  4:16,24;5:3,4
**therefore (1)**
  20:9
**third (1)**
  7:8
**third- (2)**
  23:9,21
**third-party (13)**
  14:16;15:10;16:5,
  24;18:24;19:23;20:3,
  6,19;22:6;25;23:18;
  30:8
**though (3)**
  12:2;16:9;21:14
**thought (1)**
  25:23
**throughout (1)**
  25:14
**thus (1)**

  20:2
**tied (1)**
  19:4
**times (2)**
  10:14;19:13
**today (4)**
  21:4,11;30:4;31:6
**today's (1)**
  6:8
**together (2)**
  12:5,12
**TONY (1)**
  4:16
**towards (1)**
  28:2
**transferred (1)**
  7:8
**treats (1)**
  20:24
**trial (3)**
  8:10;14:25;30:19
**trouble (1)**
  25:12
**true (1)**
  25:14
**trust (4)**
  6:7,12,16;7:2
**trust's (1)**
  19:10
**try (1)**
  31:2
**turns (1)**
  7:5
**two (4)**
  8:11;13:3;19:15;
  23:3
**TX (1)**
  4:14

**U**

**under (2)**
  11:20;30:5
**understood (2)**
  16:3;20:7
**United (1)**
  11:13,18
**unnecessary (2)**
  21:6,7
**unsuitable (1)**
  22:21
**up (2)**
  9:24;13:8
**upon (1)**
  28:9

**V**

**value (1)**
  10:12
**various (1)**
  16:22
**versus (1)**

  29:1
**veteran (1)**
  28:8

**W**

**wait (1)**
  13:16
**walk (1)**
  29:4
**WALKER (1)**
  4:10
**wants (1)**
  21:13
**wartime (1)**
  28:8
**water (1)**
  11:20
**way (5)**
  18:9;25:1;28:10,
  25;29:4
**ways (2)**
  25:19;26:7
**week (3)**
  8:15;15:14,15
**whatever's (1)**
  28:6
**what's (5)**
  7:19;20:14;22:13;
  27:17;30:16
**Whereupon (1)**
  31:15
**whoever's (1)**
  18:21
**whole (1)**
  26:18
**who's (1)**
  12:24
**WILCOX (1)**
  4:10
**Williams (1)**
  8:8
**willing (2)**
  12:24;13:1
**wish (1)**
  29:6
**within (2)**
  19:22;20:3
**words (2)**
  6:15;22:9
**worked (1)**
  11:24
**working (2)**
  12:5,12
**written (2)**
  30:10;31:10
**wrong (1)**
  27:10

**Y**

**years (1)**
  27:11

**York (1)**
  4:5,22
**YOSEF (5)**
  5:4;6:9;9:25;
  16:12;17:13

**1**

**10 (1)**
  14:23
**10:50 (1)**
  31:15
**1001 (1)**
  4:12
**10022 (1)**
  4:22
**10036 (1)**
  4:5
**1177 (1)**
  4:4
**12-12020 (1)**
  6:3
**14th (1)**
  29:25

**2**

**2000 (1)**
  4:13
**2004 (5)**
  6:25;7:7;9:10,14,
  16
**2008 (1)**
  7:7
**2010 (2)**
  11:6;14:19
**2012 (1)**
  11:19
**2013 (5)**
  8:21,23,25;9:2;
  13:14
**2014 (4)**
  9:4,6;13:20;14:23
**29th (2)**
  8:11;30:20

**3**

**328-page (2)**
  11:15;12:4

**6**

**601 (1)**
  4:21
**6535 (1)**
  6:11
**6682 (1)**
  6:11
**6747 (1)**
  6:13
**6748 (2)**
  6:14;16:15

| **7** |
| --- |

**77002 (1)**
  4:14

| **9** |
| --- |

**9i (1)**
  23:25