Max Weinstein
Legal Services Center
of Harvard Law School
122 Boylston St.
Jamaica Plain, MA 02130
617-390-2694
Facsimile: 617-522-0715

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE: ) | Case No. 12-12020 (MG) |
| ) | Chapter 11 |
| ) | Jointly Administered |
| RESIDENTIAL CAPITAL, LLC,  et al., ) |  |
| ) |  |
| Debtors ) |  |

# KARLA BROWN'S OPPOSITION TO THE MOTION OF THE LIQUIDATING FOR AN ORDER ENFORCING PLAN INJUNCTION <u>AGAINST KARLA BROWN</u>

i

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| **1.** | **STATEMENT OF UNDISPUTED MATERIAL FACTS ESTABLISHED IN THE STATE COURT ACTION**……………………………………………….. | 2 |
| **2.** | **THE PLAN'S THIRD PARTY RELEASE APPLIES *SOLELY* TO CLAIMS AGAINST DIRECTORS, OFFICERS AND EMPLOYEES IN THEIR REPRESENTATIVE CAPACITIES**……………………………………….. | 3 |
| **3.** | **A BROAD INTERPRETATION OF THE THIRD PARTY RELEASE PRESENTS SERIOUS CONSTITUTIONAL ISSUES OF BANKRUPTCY COURT JURISDICTION UNDER THE STERN DECISION** ……………….... | 5 |
| **4.** | **THE PLAIN TERMS OF THE THIRD PARTY RELEASE AVOID CONFLICT WITH BOTH THE LETTER AND THE SPIRIT OF THE BANKRUPTCY ACT** ……………………………………….......................... | 6 |
| **CONCLUSION**……………………………………………………………………... | | 7 |

## **TABLE OF AUTHORITIES**

**Cases**

*Cohen v. CDR Creances S.A.S. (In re Euro-American Lodging Corp.*, No. 13-1308, 2014 WL 103556, *2 3 (2d Cir., Jan. 10, 2014)……………………………………………….  3

*Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*), 416 F.3d 136, 142 (2d Cir. 2005) ……………………..  3,7

*Donsco, Inc. v. Casper Corp.,* 587 F.2d 602, 606 (3d Cir. 1978)…………………………  4

*Lyon v. Morphew*, 424 Mass. 828, 831-832 (1997)………………………………………...  4

*Stern v. Marshall*, 131 S. Ct. 2594, 2611 (2011)…………………………………………...  5

*Travelers Indem. Co. v. Bailey,* 557 U.S. 137 (2009) ……………………………………..  5-6

**Statute**

11 U.S.C. § 523(a)(2)(A)…………………………………………………………………...  6

In its Motion for an Order Enforcing Plan Injunction against Karla Brown (the "Motion"), the Liquidating Trust moves that this Court enter an order barring Karla Brown's 2009 state court action against Philip Brown for breach of contract, fraud, and unfair and deceptive practices in his brokering of a residential loan. In that action, it has been stipulated that Philip Brown is being sued solely in his individual capacity, and solely for his individual actions, primarily his own intentional torts.[1] No claims are made against him in a representative capacity, and no claims are made against him for corporate actions of GMAC Mortgage Corp. ("GMAC"). The Debtors' Third Party Release – which, the Liquidating Trust argues, requires releasing non-debtor Philip Brown from liability for his own intentional fraud – provides protection solely for claims against GMAC representatives in their representative capacity:

> ***Representatives***, means a person's or entity's former and current officers, former and current directors, former and current principals, employees, agent … ***each solely in its capacity as such.***

Plan Art. I.A.245 (emphasis added).

The Court should deny the Liquidating Trust's Motion, as the Plan's Third Party Release is properly interpreted as barring only claims against GMAC's "officers, directors, principals, employees and agents" *solely* in a representative capacity. The boundless interpretation of the Third Party Release proposed by the Liquidating Trust implicates problematic constitutional and jurisdictional issues and undermines other provisions of the Bankruptcy Code – a result that may be avoided if the Third Party Release is reasonably construed.

---

[1] In the state court action, Philip Brown moved for summary judgment, and Karla Brown cross-moved, Briefing and oral argument are complete. The undisputed facts established on summary Judgment were that Philip Brown *personally* falsely inflated the income stated on Karla Brown's loan application, misrepresented the contents of the loan application, and then coerced Karla Brown into closing by wrongfully threatening the loss of her deposit. See State Court Action Statement of Undisputed Material Facts, attached as Exhibit 1 to the Weinstein Declaration. Counsel for Philip Brown raised the issue of the Third Party Release only after the second day of the summary judgment hearing.

1. **STATEMENT OF UNDISPUTED MATERIAL FACTS ESTABLISHED IN THE STATE COURT ACTION.**

The state court action brought by Karla Brown against Philip Brown, and others, has been pending since 2009.[2] On July 19, 2013, Philip Brown filed a motion for summary judgment in that action, and Karla Brown cross-moved. The Massachusetts Superior Court heard argument on January 22 and 24, 2014, and the cross-motions remain pending.

As part of the summary judgment proceedings, the parties filed a statement of undisputed material facts. These facts establish that Karla Brown provided Philip Brown with her pay stubs and W-2 forms as part of her loan application, which showed she earned $42,152 as a social worker for a non-profit organization. Statement of Undisputed Material Facts at ¶ 4.[3] Philip Brown received this documentation, but he then prepared a loan application which falsely stated that Karla Brown earned $87,600 annually as social worker. *Id*. at ¶ 25. When Karla Brown objected to this statement, Philip Brown told her that the income on her loan application was a "complicated calculation" standard for a "stated income" loan. *Id*. at ¶ 8. Philip Brown proceeded to submit the loan application to a third-party subprime lender, which agreed to issue a mortgage loan whose monthly payments exceeded 110% of Karla Brown's gross salary. *Id*. at 24. Philip Brown then told Karla Brown that unless she went ahead with the closing on this mortgage loan, she would lose her loan and her entire down payment. *Id*. at ¶ 12, 13, 20, 25 – 26..

---

[2] Although the state court action has been pending for nearly five years, and may be nearing resolution, the Liquidating Trust concedes that Philip Brown has never filed any claim – for indemnification or otherwise – against the successor entities of his employer, GMAC. Motion at p, 23, fn. 11.

[3] A copy of the Statement of Undisputed Material Facts is attached to Declaration of Max Weinstein, filed herewith, as Exhibit 1.

The claims in Karla Brown's state court action against Philip Brown are based solely upon Philip Brown's above-described individual conduct. These claims are not barred by the Plan's Third Party Release, reasonably construed.

**2.    THE PLAN'S THIRD PARTY RELEASE APPLIES *SOLELY* TO CLAIMS AGAINST DIRECTORS, OFFICERS AND EMPLOYEES IN THEIR REPRESENTATIVE CAPACITIES.**

The Third Party Release applies only to representatives of GMAC, and "solely" for claims against those representatives in their representative capacity:

> Representatives, means a person's or entity's former and current officers, former and current directors, former and current principals, employees, agents … ***each solely in its capacity as such.***

Plan Art. I.A.245 (emphasis added). This explicit limitation is appropriate in light of the Second Circuit's concerns regarding the abuse and unfairness inherent in broad and unlimited Third Party Releases:

> [A] nondebtor release is a device that lends itself to abuse. By it, a nondebtor can shield itself from liability to third parties. In form, it is a release; in effect, it may operate as a bankruptcy discharge arranged without a filing and without the safeguards of the Code. The potential for abuse is heightened when releases afford blanket immunity. Here, the releases protect against any claims relating to the debtor, 'whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured.'

*Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*), 416 F.3d 136, 142 (2d Cir. 2005); *see also Cohen v. CDR Creances S.A.S.* (*In re Euro-American Lodging Corp.*, No. 13-1308, 2014 WL 103556, *2 3 (2d Cir., Jan. 10, 2014) ("The release or discharge of a nondebtor is permissible only upon a finding by the Bankruptcy Court that "truly unusual circumstances render the release terms important to success of the plan.")

3

Moreover, the limitation of the Third Party Release to representatives "solely in [their] capacity as such" corresponds to the common law rule that corporate representatives are not ordinarily derivatively liable for the conduct of the corporation, but they do remain liable for their own personal conduct. *See, e.g., Lyon v. Morphew*, 424 Mass. 828, 831-832 (1997) ("Officers and employees of a corporation do not incur personal liability for torts committed by their employer merely by virtue of the position they hold in the corporation … Employees are liable for torts in which they personally participated."); *Donsco, Inc. v. Casper Corp.,* 587 F.2d 602, 606 (3d Cir. 1978) ("A corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort.")

The plain language of Third Party Release is explicitly limited to claims asserted against representatives "solely in [their] capacity as such," and does not enjoin claims arising out a non-debtor's personal liability for his or her own conduct. The Liquidating Trust does not propose any alternative understanding of this limitation, but simply insists that the limiting language does not mean what it says, and suggests that the Court should hold that the Third Party Release has "an extremely broad reach." Motion at p. 23. Both the explicit language of the Plan and necessary limitations on Third Party Releases prohibit such an interpretation.

The Court should simply hold that the Third Party Release does not apply to Karla Brown's claims against Philip Brown.

3.  **A BROAD INTERPRETATION OF THE THIRD PARTY RELEASE PRESENTS SERIOUS CONSTITUTIONAL ISSUES OF BANKRUPTCY COURT JURISDICTION UNDER THE STERN DECISION.[4]**

Separate from concerns about the authority to adopt "extremely broad" third party releases, and separate from the concerns about the abusive effects of such releases, the Supreme Court of the United States has warned that there are constitutional restrictions upon the authority of the bankruptcy courts to adjudicate, release or determine state common law claims other than filed proofs of claim against the bankruptcy debtor – and particularly claims against a party not participating in the bankruptcy proceeding:

> It is clear that the Bankruptcy Court in this case exercised the 'judicial Power of the United States' in purporting to resolve and enter final judgment on a state common law claim … [Claimant] argues that this case is different because the defendant is a creditor in the bankruptcy. But the debtors' claims in the cases on which she relies were themselves federal claims under bankruptcy law, which would be completely resolved in the bankruptcy process of allowing or disallowing claims. Here [Claimant's] claim is a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy.

*Stern v. Marshall*, 131 S. Ct. 2594, 2611 (2011). Where "[t]he claim is … one under state common law between two private parties," the Supreme Court concluded that Bankruptcy courts lack "constitutional authority to enter a final judgment." *Id*. at 2614, 2620.

Under the plain holding of the *Stern* decision, the claims in the state court action against Philip Brown are not within the Bankruptcy Court's adjudicative authority. The Liquidating Trust does not actually suggest any basis for distinguishing *Stern* from this case. Instead, the Liquidating Trust relies on *Travelers Indem. Co. v. Bailey,* 557 U.S. 137 (2009), decided two years before *Stern*, and insists that the issue of the Court's

---

[4] One of the canons of judicial construction is that courts should, "where possible, construe federal statutes so as 'to avoid serious doubt of their constitutionality.'" *Stern v. Marshall*, 131 S. Ct. 2594, 2605 (2011) (citations omitted). The same prudential considerations apply to the interpretation of the Third Party Release.

5

constitutional authority was waived when the Court's order approving the plan became final. However, *Traveler's* conclusion was necessarily predicated on its holding that the scope of the third party release at issue was "clear and unambiguous" and "not even remotely amenable to [] a narrow construction." *Id.* at 149 - 150.  Accordingly, when the parties left the third party release unappealed, the *Travelers* court concluded that "where the plain terms of a court order unambiguously apply, as they do here, they are entitled to their effect." *Id.* Only where the terms of a third party release are "plain" and apply "unambiguously," objections to the application of the release not presented on direct appeal are waived.

Not so here.  The Third Party Release does not clearly and unambiguously apply to claims based on a state court defendant's personal liability for his own conduct, but only to liability based *solely* on representative status.  Unless and until the Third Party Release is found to apply more broadly, an appeal would be premature, as Karla Brown would be left to argue that the Third Party Release "might" be applied to her state court claims against Philip Brown.  Consequently, *Travelers* does not bar Karla Brown from raising the constitutional authority of the Bankruptcy Court to enter judgment on her state law claim against Philip Brown.

**4.  THE PLAIN TERMS OF THE THIRD PARTY RELEASE AVOID CONFLICT WITH BOTH THE LETTER AND THE SPIRIT OF THE BANKRUPTCY ACT.**

Finally, a narrow interpretation of the Third Party Release is necessary to avoid undermining the purpose of other provisions of the Bankruptcy Act.  The Bankruptcy Code exempts from discharge debts obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). As the parties' Statement of Undisputed Material Facts demonstrates, most of the causes of action asserted by Karla Brown are based upon Philip

6

Brown's express misrepresentations, and should be adjudicated non-dischargeable by Philip Brown as a debtor in any bankruptcy proceeding.

The Liquidating Trust does not dispute that Philip Brown would be unable to discharge Karla Brown's claims as a debtor himself, but insists that this Court may nevertheless discharge an individual's liability even for deliberate fraud through application of the Third Party Release. This is precisely the sort of perverse result envisioned by the Second Circuit in *Metromedia*, when the court warned that "a nondebtor release is a device that lends itself to abuse … it may operate as a bankruptcy discharge arranged without a filing and without the safeguards of the Code." *Metromedia*, 416 F.3d at 142. However, the Court need not choose between undermining § 523 and applying the Third Party Release – the plain terms of the Third Party Release do not apply to Karla Brown's claims against Philip Brown, preserving Karla Brown's recourse for Philip Brown's actual fraud.

## CONCLUSION

The terms of the Third Party Release are plain – it enjoins actions solely against a party in his derivative, representative capacity, and does not enjoin claims against an individual for his individual actions. The Court should accordingly hold that the Third Party Release does not enjoin Karla Brown's state court claims against non-debtor Philip Brown. By applying the Third Party Release according to its express terms, the Court need not reach problematic constitutional issues, and need not bring the spirit of multiple provisions of the Bankruptcy Code into direct conflict.

Perhaps more importantly, there is simply no need for the imposition of "blanket immunity" in this instance. *Metromedia*, 416 F.3d at 142. Despite the Liquidating Trust's invocation of "potentially serious consequences," Motion at p. 22, Philip Brown has made no

7

claim against the Debtors, for indemnification or on any other basis, and the deadline for him to do so has long since passed. Permitting Karla Brown's state court action to proceed against Philip Brown would accordingly not adversely affect the Liquidating Trust. The Motion of the Liquidating Trust for an Order Enforcing Plan Injunction against Karla Brown should accordingly be denied.

                              Respectfully submitted,

                              Karla Brown
                              By her attorneys,

                              /s/ Max Weinstein
                              Max Weinstein
                              Legal Services Center
                              of Harvard Law School
                              122 Boylston Street
                              Jamaica Plain, MA 02130
                              (617) 522-3003
                              Facsimile: (617) 522-0715
                              mmweinstein@law.harvard.edu

Dated: April 17, 2014