COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 09-1812-E

KARLA BROWN,

        Plaintiff,

v.

ACCREDITED HOME LENDERS, INC.,
DEUTSCHE BANK NATIONAL TRUST
COMPANY, PHILIP BROWN, BARRANDO
BUTLER, GMAC MORTGAGE
CORPORATION, HSBC MORTGAGE
SERVICES, INC. and SAXON MORTGAGE
SERVICES, INC.

        Defendants.

## SUPER. CT. R. 9A(b)(5) STATEMENT OF FACTS

Defendant Philip Brown ("Brown") and Plaintiff Karla Brown ("Plaintiff") hereby submit the following Statement of Undisputed Material Facts, along with responses thereto, in support of the Defendant's Motion for Summary Judgment pursuant to Mass. R. Civ. P. 56 (c) and Plaintiff's Opposition to Defendant's Motion.

*Loan Origination*

1.    Plaintiff Karla Brown ("Plaintiff") is an African-American single mother of two that holds a bachelor's degree from Suffolk University. Complaint at ¶ 16, attached as Exhibit 1 to Briansky Affidavit; Plaintiff's Deposition Transcript, at pp. 125-26, relevant excerpts of which are attached as Exhibit 2 to Briansky Affidavit.

**Plaintiff's Reply:** Plaintiff does not dispute this fact.

2. After "seriously looking" at homes for months, Plaintiff submitted an offer (the "Offer") for a two-family property located at 52-54 Mather Street in Dorchester, Massachusetts (the "Property") in the amount of $479,000 with a $500 deposit to bind the Offer. Exhibit 2 at pp. 99, 186, 193; Offer to Purchase at ¶¶ 1(a) and (e), attached as Exhibit 3 to Briansky Affidavit.

**Plaintiff's Reply:** Plaintiff does not dispute this fact.

3. After Plaintiff's Offer was accepted, she retained Attorney Barrando Butler ("Attorney Butler") to represent her in purchase of the Property. Exhibit 2 at pp. 39-41, 203-06; Exhibit 1 at ¶ 23; Barrando Butler's Deposition Transcript, at pp. 24-28, relevant excerpts of which are attached as Exhibit 4 to Briansky Affidavit. To finance the Property, Plaintiff worked with a local mortgage broker, Philip Brown ("Brown.") Exhibit 1 at ¶ 17; Exhibit 2 at pp. 10; 13-14; Cindy Kovacevic Deposition Transcript at p. 49, relevant excerpts of which are attached as Exhibit 5 to Briansky Affidavit; Philip Brown Deposition Transcript, at pp. 87-88, relevant excerpts of which are attached as Exhibit 6 to Briansky Affidavit.

**Plaintiff's Reply:** Plaintiff does not dispute this fact.

4. During Plaintiff's first telephone conversation with Brown, Brown informed Plaintiff of the information that he would need to process her loan application, including her income, pay stubs, W-2 forms and a bank statement, all of which Plaintiff subsequently provided to him. Exhibit 2 at pp. 10-12, 14-15, 22. Brown then filled out the loan application with the information Plaintiff provided to him. Exhibit 6 at p. 71. Once the application was complete, Brown sent Plaintiff a copy, which she signed and promptly returned to Brown. Exhibit 2 at pp. 23-28; Uniform Residential Loan Application, a copy of which is attached as Exhibit 7 to

2

1654807-1

Briansky Affidavit. According to Plaintiff's testimony, she understood that by signing the application she was verifying the information contained therein. Exhibit 2 at p. 119.

**Plaintiff's Reply:** Plaintiff does not dispute that "Brown informed Plaintiff of the information that he would need to process her loan application, including her income, pay stubs, W-2 forms and a bank statement, all of which Plaintiff subsequently provided to him."

Plaintiff does not dispute that "[o]nce the application was complete, Brown sent Plaintiff a copy, which she signed and promptly returned to Brown," but she avers that Brown did not mail this copy until several weeks after he had submitted the application to Accredited Home Lenders, Inc. Kovacevic Dep. 239:5 – 11; Loan Application attached as Exhibit 7.

Plaintiff disputes the assertion that "Brown then filled out the loan application with the information Plaintiff provided to him" to the extent that the loan application states her annual salary as $87,800, but her 2005 W-2 Form, which she provided, evidences a salary of $42,152. Loan Application attached as Exhibit 7; Form W-2 attached as Exhibit 18.

The cited testimony does not support the claim that Karla Brown "understood that by signing the application she was verifying the information contained therein" and she denies that assertion. Karla Brown Dep. 119:2-6 ("Q.  Did you understand by signing this application, you were verifying the information contained in it? A.  Yeah. **That information contained based on information we had spoken about and I'd sent to him.** So yes.")

5. By mid-April, Brown had provided Plaintiff's application to Accredited Home Lenders, Inc. ("Accredited"), a third-party lender for whom GMAC brokered loans. Exhibit 5 at pp. 88, 151, 239, 241; Exhibit 6 at pp. 87-88; Applicant Brokering Notice, attached as Exhibit 8 to Briansky Affidavit. Pursuant to the Applicant Brokering Notice, Plaintiff expressly authorized GMAC to receive a mortgage brokerage fee in the amount of 1.625% of the total loan amount, or

3

1654807-1

$7,605. Exhibit 8; see also Exhibit 5 at pp. 101-02 ("[I]n May of 2006… GMAC [provisions] kept mortgage broker fees at 3.5 percent unless applicable state law or an agreement with broker provided otherwise.")

**Plaintiff's Reply:** Plaintiff does not dispute this fact.

6.  At or around this time, Attorney Butler drafted and negotiated a purchase and sale agreement ("P&S") for Plaintiff's purchase of the Property. Purchase and Sale Agreement, attached as Exhibit 9 to Briansky Affidavit; Exhibit 4 at pp. 30-32. The P&S set a purchase price of $468,000 and also contained a Mortgage Contingency Clause that allowed Plaintiff to terminate the P&S if she was unable to secure an unconditional commitment letter for a conventional bank or other institutional mortgage loan. Exhibit 1 at ¶ 24; Exhibit 9 at ¶ 26. On or about April 28, 2008, Plaintiff executed the P&S and paid an additional $2,000 to the seller as a deposit. Exhibit 1 at ¶ 24; Exhibit 2 at pp. 99-100; Exhibit 3 at ¶ 1(b); Exhibit 4 at pp. 30-32. According to Plaintiff, her $2,500 deposit could not be recovered unless she received a disqualification letter from Brown. Exhibit 2 at pp. 46, 50-51.

**Plaintiff's Reply:** Excluding the last sentence, Plaintiff does not dispute the facts set forth in this paragraph. Plaintiff does not dispute that her understanding at the time – correct or incorrect – was that "her $2,500 deposit could not be recovered unless she received a disqualification letter from Brown."

7.  Per Plaintiff's Complaint, after Plaintiff signed the P&S, and after Brown submitted her loan application to Accredited, Brown presented her with a "loan package." Exhibit 1 at ¶ 25. The loan package contained an "80/20" loan for 100 percent financing in the amount of $468,000 with a total monthly payment of "3,000-plus dollars." Exhibit 2 at pp. 49, 73-76, 232-33. The 80/20 loan consists of two (2) loans originated by Accredited. The first was

4

1654807-1

a 30-year adjustable rate note in the original principal amount of $374,400.00. See First Promissory Note, attached as Exhibit 10 to Briansky Affidavit. The First Promissory Note carried a 9.378% adjustable rate, contained a so-called "balloon" payment in the amount of $236,565.21, and required monthly payments in the amount of $2,498.98. Id. The second loan was a fixed 15-year note with a 12.99% interest rate with monthly payments of $1,034.68 and also contained a so-called "balloon" payment of $82,842.93. Exhibit 1 at ¶ 32; see also, Second Promissory Note, attached as Exhibit 11 to Briansky Affidavit.

**Plaintiff's Reply:** Plaintiff does not dispute this fact.

8.      Upon reviewing the loan package, Plaintiff raised some of her concerns with Brown. Exhibit 2 at pp. 64-66, 68-69. First, Plaintiff questioned the $7,500 income figure on the loan documents asserting, "[t]hat number seems kind of high." Exhibit 2 at pp. 65-66. Brown explained that the income included the rental income Plaintiff expected from the Property and that it was the result of a "complicated calculation" standard for a "stated income loan." Exhibit 1 at ¶¶ 25-26; Exhibit 2 at pp. 65-66, 241, 244.

**Plaintiff's Reply:** Plaintiff does not dispute this fact, but avers that Philip Brown's "explanation" was false. Kovacevic Dep. 175:21 – 176:11

9.      Plaintiff also expressed dissatisfaction at the 12.99% interest rate that the second loan carried, as well as the amount of the total monthly payment. Exhibit 2 at p. 48-50.

**Plaintiff's Reply:** Plaintiff does not dispute this fact.

10.     According to Plaintiff, Brown attempted to pacify her concerns by telling her that she could refinance the loan in six (6) months. Id. at pp. 32-33, 49-50, 57, 74.

**Plaintiff's Reply:** Plaintiff does not dispute this fact

11. After reviewing the loan package, Plaintiff feared that her monthly payment would be too high and approached her friend, "Keke," who was employed as a mortgage broker to get his opinion. Exhibit 1 at ¶ 27; Exhibit 2 at pp. 53-54, 313-14. Once Keke had reviewed the loan package and the P&S, he advised Plaintiff that it was not a good transaction for her, that she should cancel it pursuant to the Mortgage Contingency Clause, and that she should request "a disqualification letter [from Brown] and get her deposit back." Exhibit 1 ¶ 27; Exhibit 2 at pp. 174, 223, 313-17; Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment Against Barrando Butler at pp. 5-6, attached as Exhibit 12 to Briansky Affidavit. ("[Plaintiff] spoke with another mortgage broker, and concluded that she could not afford the loan package she was being offered").

**Plaintiff's Reply:** Plaintiff does not dispute this fact

12. Plaintiff then called Brown to request a disqualification letter so that she could get back the $2,500 deposit that she paid for the purchase of the Property. Exhibit 1 at ¶ 28; Exhibit 2 at pp. 38-39, 46.

**Plaintiff's Reply:** Plaintiff does not dispute this fact.

13. Brown declined to provide Plaintiff with a disqualification letter based on the fact that Accredited had actually approved Plaintiff's application. Exhibit 2 at pp. 38-39, 50.

**Plaintiff's Reply:** Plaintiff does not dispute this fact, but avers that Brown's implication that she qualified for a mortgage requiring monthly principal and interest payments of $3533.16 based on her actual income – approximately $3512.67 gross per month – was false. See Form W-2 attached as Exhibit 18.

14. Unhappy with this response, Brown called Lawton who solicited the help of Attorney Butler to speak with Plaintiff about the loan package. Id. at pp. 45, 50. According to

6

1654807-1

Plaintiff's testimony, she "wasn't comfortable with the answer from Mr. Brown, so [she] went to Mr. Butler to further ask more probing questions," and "to find out if this information was actually correct and to look over any information [Attorney Butler] had, to make sure...Brown was actually looking to [her] best interest..." Exhibit 2 at p. 325.

**Plaintiff's Reply:** Plaintiff does not dispute this fact.

15. When Attorney Butler contacted Plaintiff, Plaintiff informed him that she was "not happy" and "ready to walk away" from the transaction. Exhibit 1 ¶ 29; Exhibit 2 at pp. 45-46, 50-51, 225, 437; Exhibit 12 at p. 6 ("Ms. Brown told Butler that she was 'ready to walk away' and wished to terminate the [P&S]"). Attorney Butler told Plaintiff that he would call Brown and get back to Plaintiff at that time. Exhibit 2 at p. 51.

**Plaintiff's Reply:** Plaintiff does not dispute this fact.

16. After speaking with Brown, Attorney Butler called Plaintiff and assured her that everything was "okay,"; her loan documents were "in order"; it all looked "fine"; she qualified for the loan; and "she was receiving a good deal." Exhibit 1 ¶ 29; Exhibit 2 at pp. 47, 51-52, 80-82, 221, 319. Attorney Butler also informed Brown that she would lose her deposit if she canceled the loan. Exhibit 2 at pp. 51-52, 224, 235; Exhibit 12 at p. 6.

**Plaintiff's Reply:** Plaintiff does not dispute this fact.

17. Attorney Butler's assurances assuaged Plaintiff's concerns and caused her to become comfortable in moving forward with the transaction. Exhibit 2 at p. 225; Exhibit 12 at pp. 6-7.

**Plaintiff's Reply:** The cited testimony and exhibit do not support the claim that Karla Brown was "comfortable" with the Accredited mortgages. Karla Brown Dep. 56 ("I don't feel I had a choice.").

7

1654807-1

18.   Plaintiff testified as follows about her conversation with Attorney Butler:

Q:   And armed with the information provided to you from [another broker] and that conversation you had with your attorney, Mr. Butler, you felt comfortable going forward with the package that was presented to you by Mr. Brown?

Mr. Weinstein:   Objection to form.

A:   ***I was basically going on the advice of my attorney that he felt that this was fine,*** based on what Mr. Brown told him. And since he was an attorney and this is what he did, I assumed that they knew that they were doing.

Q:   When he said this was fine, do you know what he was referring to?

A:   He said that Philip Brown said this package is a good package for me. It's a package that I can afford and it works for me and that – you know. And I do remember him saying that Mr. Brown said that I could be refinanced in six months and so I should be ok. It will be all right. In six months of good payments, you'll be all set. You can refinance out of this and get yourself into a better package.

Q:   So you felt comfortable, based on the representations of Mr. Butler, that you could afford this mortgage?

Mr. McClure:   Objection.

A:   Yeah.

Exhibit 2 at pp. 54-55 (emphasis supplied).

**Plaintiff's Reply:** Plaintiff does not dispute the content of her testimony.

19.   According to Plaintiff, she decided to go ahead with the loan transaction based on her conversation with Attorney Butler. Exhibit 12 at pp. 6-7 ("Based on Butler's advice, Karla Brown believed she had two options: 'to walk away and leave the $2,500 deposit money that it took her years to save up, or go forward with the transaction. Fearing the loss of her deposit money, which amounted to her life savings, she went forward with the deal"); Id. at p. 17 ("[Attorney Butler's] negligent advice compelled Karla Brown to enter into an unfair and

8

1654807-1

deceptive mortgage agreement that she would not have accepted had it not been for the defendant's legal advice. She felt trapped by the prospect of losing her down payment and believed based on the advice of her attorney that her only option was to go forward with the purchase"); Id. at p. 19 ("Butler's misrepresentations very clearly caused her to act differently than she would have absent them, compelling her to proceed with the Agreement and accept a wholly unaffordable sub-prime loan package that she would have avoided had she been counseled appropriately . . .").

**Plaintiff's Reply:** Plaintiff does not dispute this fact, but avers that she not **exclusively** decided to go ahead with the loan transaction based on her conversation with Attorney Butler. Karla Brown Dep. 46:15-24.

20. Plaintiff's loans closed on June 6, 2006. Exhibit 1 at ¶ 30; Exhibit 2 at pp. 172-73. Plaintiff executed the First and Second Promissory Note, each made payable to Accredited. Exhibit 1 at ¶ 30. The First Promissory Note specified that Plaintiff would make monthly payments in the amount of $2,498.48 for a period of two (2) years, after which her interest rate could adjust. Exhibit 1 at ¶ 31; Exhibit 10. The Second Promissory Note specified a monthly payment of $1,034.68 for a period of fifteen (15) years. Exhibit 1 at ¶ 32; Exhibit 11. Both the First and Second Promissory Note were secured by a mortgage on the Property. See First Mortgage, attached as Exhibit 13 to Briansky Affidavit; see also Second Mortgage, attached as Exhibit 14 to Briansky Affidavit. GMAC received a fee of $6,080.75 for its brokerage services, or approximately 1.3% of the total loan amount. Exhibit 2 at p. 228; HUD-1 Settlement Statement, at Line 801, attached as Exhibit 15 to Briansky Affidavit.

**Plaintiff's Reply:** Plaintiff does not dispute this fact.

21. Plaintiff defaulted under the First and Second Promissory Note for failing to make all of her requirement payments. Exhibit 1 at ¶ 34. As a result, Plaintiff claims she has incurred emotional distress in the form of a "fear of losing her home." Plaintiff's Answer to GMAC's "Second" Set of Interrogatories, at No. 13, attached as Exhibit 16 to Briansky Affidavit.

**Plaintiff's Reply:** Plaintiff does not dispute this fact.

*Plaintiff's Allegations and Procedural History*

22. On May 1, 2009, Plaintiff filed her Complaint alleging that Brown falsified her income on the loan application, that he coerced the her to go through with the transaction by falsely informing her that she qualified for a mortgage and that she would lose her deposit paid upon signing the Purchase and Sale Agreement, and falsely assured her that she would be able to refinance in six (6) months and receive lower interest rates and payments. Exhibit 1 at Introduction; Exhibit 2 at pp. 58-60, 64-65, 71-75.

**Plaintiff's Reply:** Plaintiff does not dispute this fact

### PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

23. In 2006, Philip Brown was a "Loan Originator" employed by GMAC Mortgage Corp. ("GMAC"). Philip Brown Dep. 10:2-11:22.

**Response:** Undisputed.

24. In 2006, Karla Brown was employed as a social worker at Choice Community Supports, Inc. Her W-2 Form from Choice Community Support, attached as Exhibit 18, indicates that she earned $42,152 from her employment in 2005.

**Response:** Undisputed that Plaintiff was employed as a social worker at Choice Community Supports, Inc. Responding further, Brown disputes that Plaintiff provided him with the attached W-2, or any W-2. Brown only received the Plaintiff's bank statement. Brown Dep. Tr. 73.

25. The loan application included in the joint appendix as Exhibit 7 indicates that Karla Brown earned $7,300 per month from Choice Community Supports, or $87,600 per year. Kovacevic Dep. 175:21 – 176:11.

**Response:** Undisputed that the application states that Plaintiff earned $7,300 per month or $87,600 per year as a social worker. Responding further, Brown states that this paragraph references a written document the terms of which speak for themselves.

26. Karla Brown's initial principal and interest payments were $3,533.16. Philip Brown's Stat. of Undisp. Mat. Facts at ¶ 20. GMAC projected additional monthly tax and insurance escrow payments of $343.00, Loan Application attached as Exhibit 7, bringing Karla Brown's total monthly payment to $3,876.16.

**Response:** Undisputed that Plaintiff's initial principal and interest payments were $3,533.16. Responding further, Brown states that this paragraph references a written document the terms of which speak for themselves.

27. The Accredited mortgage loans encumbered 100% of the value of 52-54 Mather Street. HUD-1 Settlement Statement lines 101, 202, attached as Exhibit 15.

**Response:** Brown states that this paragraph references a written document the terms of which speak for themselves.

28. On June 30, 2010, Defendant Deutsche Bank National Trust Co. mailed Karla Brown a letter identifying itself as "the present holder of your mortgage." This letter informed Karla Brown that:

> [T]he Holder hereby elects to accelerate the entire indebtedness ... The Current outstanding balance on the debt as of the date of this letter is $436,648.54 ... You are hereby further notified that it is the intention of the Holder to foreclose said Mortgage under the Power of Sale for breach of the conditions of the loan documents.

11

1654807-1

Correspondence from Korde & Associates, P.C., attached as Exhibit 19. On August 16, 2010, Deutsche Bank mailed a document purporting to be a "Notice of Default" pursuant to M.G.L. c. 244, § 35A, the first necessary prerequisite to conducting a power of sale foreclosure pursuant to M.G.L. c. 244, § 14. Id.

**Response**: Undisputed. Responding further, Defendants state that this paragraph references written documents the terms of which speak for themselves.

Respectfully Submitted,

| **KARLA BROWN**<br>By her attorneys,<br><br>_/s/ Max Weinstein_<br>Max Weinstein, Esq.<br>BBO No. 600982<br>Legal Services Center<br>of Harvard Law School<br>122 Boylston Street<br>Jamaica Plain, MA  02130<br>(617) 390-2694<br>Facsimile: (617) 522-0715<br>mmweinstein@law.harvard.edu<br><br>_/s/ Paul Collier_<br>Paul R. Collier III, Esq.<br>BBO No. 092040<br>678 Massachusetts Avenue, 3rd Floor<br>Cambridge, MA  02139<br>(617)441-3303<br>paul.collier@paulcollierlawoffice.com | **PHILIP BROWN**,<br>By his attorneys,<br><br>_/s/ Richard Briansky_<br>Richard E. Briansky, Esq. (BBO # 632709)<br>rbriansky@princelobel.com<br>Julie A. Brennan, Esq. (BBO # 676497)<br>jbrennan@princelobel.com<br>PRINCE LOBEL TYE LLP<br>100 Cambridge Street, Suite 2200<br>Boston, MA  02114<br>Phone:    (617) 456-8000<br>Fax:       (617) 456-8100 |

DATED: July 19, 2013

1654807-1

12-12020-mg    Doc 6794-2    Filed 04/17/14    Entered 04/17/14 15:53:48    Exhibit 1 -
Statement of Undisputed Material Facts    Pg 13 of 13

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document was served upon the following parties by first class mail, postage prepaid, on July 19, 2013, at the following addresses:

Max Weinstein, Esq.
Legal Services Center of Harvard Law School
122 Boylston Street
Jamaica Plain, MA  02130
mmweinstein@law.harvard.edu

Paul R. Collier III, Esq.
678 Massachusetts Avenue, 3rd Floor
Cambridge, MA  02139
paul.collier@paulcollierlawoffice.com

Barrando Butler, Esq.
258 Blue Hill Parkway
Milton, MA 02186
brentbutlerlaw@yahoo.com

_____
Julie A. Brennan

13

1654807-1