UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

RESIDENTIAL CAPITAL, LLC, *et al.*

Debtors.

FOR PUBLICATION

Case No. 12-12020 (MG)

Jointly Administered

# MEMORANDUM OPINION AND ORDER DENYING MOTION TO LIFT THE AUTOMATIC STAY AND ENFORCING RELEASE OF CLAIMS AGAINST ALLY FINANCIAL INC.

*A P P E A R A N C E S:*

YOSEF LE ROI MUSTAFANOS
*Pro Se*
5400 Railroad Street
Silver Springs, Nevada 89429
By:    Yosef Le Roi Mustafanos

MORRISON & FOERSTER LLP
*Counsel for the Liquidating Trust*
1290 Avenue of the Americas
New York, New York 10104
By:    Daniel J. Harris, Esq.

KIRKLAND & ELLIS LLP
*Counsel for Ally Financial Inc.*
655 15th Street, N.W., Ste. 1200
Washington, D.C. 20005
By:    Judson D. Brown, Esq.

WILLIAMS KASTNER
*Counsel for Ally Financial Inc.*
888 SW Fifth Avenue, Ste. 600
Portland, Oregon 97204
By:    Rachel A. Robinson, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Yosef Le Roi Mustafanos ("Mustafanos"), on behalf of the estate of his deceased father,

James Jackson Marshall ("Marshall"), wants to prosecute claims in an Oregon state court against

Debtors GMAC Mortgage LLC ("GMACM") and Residential Capital LLC ("ResCap"), and against non-debtor Ally Financial Inc. ("AFI"). All claims against the Debtors (defined below), except for claims that are allowed in Debtors' chapter 11 cases, were discharged as part of the Debtors' confirmed chapter 11 Plan (defined below), which became effective on December 17, 2013. Mustafanos did not file any proof of claim in the bankruptcy case, and he is barred from doing so now. The effect of the Plan is to bar Mustafanos from proceeding with claims against GMACM and ResCap.

Furthermore, the confirmed Plan includes release and injunction provisions that bar assertion of any covered claims against AFI. The third-party release and injunction provisions in favor of AFI are enforceable against Mustafanos, and he will be enjoined from proceeding with his claims against AFI.

## I.    BACKGROUND

### A.    The Pending Requests for Relief

Pending before the Court is the *Ex Parte Motion of the Movant Yosef Le Roi Mustafanos for an Order Shortening the Notice Period for Certain Emergency Relief from the Automatic Stay* (the "Motion," ECF Doc. # 6535), which Mustafanos filed on behalf of Marshall, his deceased father.[1] Mustafanos seeks relief from the automatic stay to pursue foreclosure-related claims against non-debtor AFI and Debtors GMACM and ResCap in a foreclosure action commenced by non-debtor EverBank, Inc. ("EverBank") in the District Court in Multnomah County, Oregon (the "State Court").

The ResCap Liquidating Trust (the "Liquidating Trust") submitted a *Statement of the Liquidating Trust in Connection with Motion of Movant Yosef Le Roi Mustafanos for an Order*

---

[1] Mustafanos also sought to have his Motion heard on shortened notice. The Court denied his request and the Motion was scheduled for April 10, 2014—the next ResCap omnibus date that would allow Mustafanos time to serve notice on the Debtors and AFI.

*Shortening Notice Period for Certain Emergency Relief from the Automatic Stay* (the "Statement," ECF Doc. # 6747). In support of the Statement, the Liquidating Trust submitted the Declaration of Lauren Graham Delehey (the "Delehey Decl.," Statement Ex. 1). The Liquidating Trust contends that there is no basis to grant Mustafanos relief from the automatic stay because (1) GMACM acted only as servicer of Marshall's loan and transferred the servicing rights to Everhome Mortgage Company ("Everhome") in 2008 and (2) neither GMACM nor ResCap received notice of the state court proceeding.

AFI submitted *Ally Financial Inc.'s Objection to Ex Parte Motion of the Movant Yosef Le Roi Mustafanos for an Order Shortening the Notice Period for Certain Emergency Relief from the Automatic Stay* (the "Objection," ECF Doc. # 6748, and together with the Statement, the "Responses"). In support of the Objection, AFI submitted the Declaration of Rachel A. Robinson (the "Robinson Decl.," Objection Ex. A). Also attached to the Objection are: (1) the original counterclaim in the underlying state court action (the "Original Counterclaim," Objection Ex. 1); (2) the February 10, 2014 letter from AFI's local counsel informing Mustafanos of the Third Party Release and Plan Injunctions (defined below) (Objection Ex. 2); (3) Mustafanos' amended counterclaim in the state court action (the "Amended Counterclaim," Objection Ex. 3); (4) the February 14, 2014 letter from AFI's local counsel to Mustafanos regarding the Amended Counterclaim (Objection Ex. 4); and (5) the February 24, 2014 letter from AFI's counsel in these chapter 11 cases, Kirkland & Ellis LLP ("Kirkland"), again informing Mustafanos of the Third Party Release and Plan Injunctions (Objection Ex. 5). While styled as an objection to the Motion, the Court permitted AFI to request affirmative relief as part of its Objection—specifically, enforcement of the Third Party Release and Plan Injunction (as defined below). AFI contends that Mustafanos' state court action against AFI is barred by the

3

Court's order confirming the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (the "Plan," ECF Doc. # 6065-1). The Plan released and enjoined the pursuit of claims against AFI "arising from or related in any way to the Debtors." (Plan Art. IX.D.) AFI timely served the Objection on Mustafanos, and the Court considers the Objection as a cross-motion for relief seeking enforcement of the Third Party Release and Injunction provisions of the Plan.

As explained below, Mustafanos's Motion for relief from stay is **DENIED** and Mustafanos is **ENJOINED** from proceeding against GMACM and ResCap. Furthermore, AFI's request for relief is **GRANTED** and Mustafanos is **ENJOINED** from prosecuting his claims against AFI and he is **ORDERED** to dismiss with prejudice his claims against AFI in the State Court no later than fourteen (14) days from the date of this Order. Should Mustafanos fail to dismiss his claims, AFI may seek further relief from this Court with a motion to hold Mustafanos in contempt under Bankruptcy Rule 9020. Nothing in the Court's ruling affects the defenses to foreclosure or counterclaims that Mustafanos may assert against parties other than GMACM, ResCap and Ally; those issues are controlled by state law.

### B. Marshall's Mortgage Loan

On March 3, 2004, Marshall entered into a mortgage loan (the "Mortgage Loan") with Mortgage Investors Corporation. (Delehey Decl. ¶ 4.) GMACM serviced the Mortgage Loan from March 3, 2004 until it transferred its servicing responsibilities to Everhome in November 2008.[2] (*Id.*)

---

[2] At the hearing on the Motion, the Liquidating Trust indicated that GMAC Corp., predecessor in interest to GMACM, originally serviced the Mortgage Loan. (*See* Apr. 10, 2014 Tr. at 7:5–6.)

On March 3, 2007, Mortgage Investors Corporation "funded a refinance" of the mortgage. (Original Counterclaim ¶ 6; *see also* Robinson Decl. ¶ 5 (indicating that the mortgage was refinanced in 2007).) Mortgage Investors Corporation is unrelated to the Debtors or Ally. Mustafanos alleges that on March 3, 2004, GMACM "went to Mr. Marshall's house[,] picked him up[,] and [t]ransported him to the GMAC Mortgage office and had him sign the mortgage deed of Trust without aid and attendance from his children." (Motion ¶ 4.) At its office, Mustafanos alleges, GMACM had Marshall replace a "first position loan" financed by Sierra Pacific Mortgage at a five percent interest rate with an adjustable interest rate loan that "became toxic, considering that Mr. Marshall was on a fixed income." (*Id*. at 9.) Additionally, Mustafanos argues that the loan note and adjustable rate rider agreement may not have been signed on the same date "due to the absence of a notary Certification." (*Id.* ¶ 4.) He appears to allege that Marshall's signature may have been copied and pasted into the relevant documents. (*Id.*) Additionally, Mustafanos argues that GMACM "should have clearly noticed that Mr. Marshall would hallucinate, was unable to hold his attention and would drift off into sleep." (*Id.* ¶ 5.) Mustafanos further alleges that he "discovered senior abuse and fraud in the transactions involving GMAC Mortgage and began a counterclaim against EverBank." (*Id.* ¶ 13.) According to the Debtors, however, GMACM did not act as broker for the Mortgage Loan, and after it transferred its servicing duties in 2008, GMACM no longer had any involvement with Marshall or the Mortgage Loan. (Delehey Decl. ¶ 4.) Mustafanos disputes this alleged fact, asserting that GMACM "brokered" the refinance transaction. Because of the Court's disposition of the pending matters, this factual dispute is not material.

Mustafanos additionally claims to have made various discoveries in February 2014 related to AFI that he believes impact his counterclaims. First, he purportedly discovered that

5

AFI "settled and consented to the charges of fraud and unfair lending against the United States consumers by its subsidiaries and daughter companies as well as GMAC Mortgage, Inc. and settled for $25 billion dollars with the United States Attorneys General on April 4, 2012." (*Id.* ¶ 17.) Second, he claims to have "discovered that Ally Financial, Inc. consented to permit lawsuits and claims being brought against them by individuals, class action and associations for injurious conduct inflicted by GMAC Mortgage, Residential Capital, Inc."[3] (*Id.* ¶ 18.) Third, he learned that GMACM and ResCap filed for bankruptcy on May 14, 2012. (*Id.* ¶ 19.) Finally, he received a phone call from counsel for AFI "threatening to contact the bankruptcy court and have Judge Glenn to hold him in contempt" if he failed to dismiss his claims against AFI with prejudice. (*Id.* ¶ 20.)

Marshall died on March 20, 2010. (Motion ¶ 10.) After Marshall's death, Mustafanos, Marshall's son and the representative of Marshall's estate, was listed as the Successor of the Estate. (*See* Original Counterclaim, Letter from Everhome Mortgage.) Mustafanos contacted Everhome to request payment assistance in December 2010 and was approved for a permanent loan modification. (*Id.*) But Mustafanos did not return the signed modification agreement to Everhome, so Everhome closed his file on February 17, 2011. (*Id.*)

C.     **State Court Foreclosure Proceedings and Mustafanos' Counterclaims**

On May 10, 2012, EverBank filed a complaint for judicial foreclosure against Mustafanos and others[4] in the State Court. (Robinson Decl. ¶ 3.) The State Court entered a default order as

---

[3] As the Court noted at the April 10, 2014 hearing, some of Mr. Mustafanos's "discoveries" are based on his erroneous interpretation of the Consent Order settling the Federal Reserve Board investigation and the state attorneys general action. *See* Apr. 10, 2014 Tr. 27:8–21.

[4] Though it is not entirely clear, the "others" presumably include those listed as defendants (in addition to Mustafanos) in Mustafanos' Original Counterclaim—Tonny D. Marshall, James M. Marshall, Don E. Marshall, Cherry Bush Lane Homeowners' Association, Inc., NW Professional Judgment Recovery, and occupants of the premises. (*See* Original Counterclaim at 1.)

6

to all named defendants except Mustafanos on August 28, 2012.  (*Id.*)  Mustafanos filed the Original Counterclaim in March 2013.  (*Id.* ¶ 4.)  In the Original Counterclaim, Mustafanos alleges that GMACM "is the mortgage broker who prepared all documents and shopped and secured the Lender (Mortgage Investors Corporation)" for Marshall.  (Original Counterclaim ¶ 6.)  The majority of Mustafanos's claims in the Original Counterclaim are related to the origination of the Mortgage Loan.  Mustafanos claims that his father was "incompetent" for various reasons, including that he "suffered from:  Type 2 Diabetes, High blood pressure, obesity, cataracts, dementia, paranoid schitzophrenia [*sic*], obsessive compulsion [*sic*] disorder, disorientation, fainting spells, kidney and liver dialysis dependency."  (*Id.* ¶ 14.)

On August 22, 2013, Mustafanos filed his first amended counterclaim,[5] naming AFI as a counterclaim defendant.[6]  (Robinson Decl. ¶ 6.)  AFI moved to dismiss the first amended counterclaim on December 5, 2013, on the grounds that the first amended counterclaim did not include specific allegations against AFI.  (*Id.* ¶ 7.)  The State Court granted AFI's motion to dismiss on January 28, 2014, but granted Mustafanos leave to amend his counterclaim to describe the relationship between AFI and GMACM.  (*Id.*)

AFI's local counsel in Oregon sent Mustafanos a letter on February 10, 2014, informing Mustafanos that this Court had confirmed the Plan, and providing Mustafanos with copies of the Confirmation Order and the Plan.  (*Id.*; *see also* Objection Ex. 2.)  Mustafanos filed the Amended Counterclaim on February 14, 2014, alleging that AFI "does business as" GMACM

---

[5]    It appears that GMACM was never served with the first (or second) amended counterclaim(s).  At the hearing on April 10, 2014, Mustafanos indicated that he believed GMACM was "adequately served" because he had served AFI's agent, and believed AFI and GMACM share the same agent, "CT Corporation."  (*See* Apr. 10, 2014 Tr. 26:12–14.)  The Court need not resolve this dispute.  In any event, the Court was not provided a copy of the first amended counterclaim.

[6]    Although Mustafanos did not initially list AFI as a counterclaim defendant in the version of the first amended counterclaim that he filed with the State Court, he did add AFI to the caption in the version that he served on AFI in October 2013.  (Robinson Decl. ¶ 6 n.1.)

7

and EverBank. (Amended Counterclaim at 1, ¶ 6.) Also on February 14, 2014, AFI's local counsel sent Mustafanos a second letter, highlighting the Plan's Third Party Release and Injunction provisions. (Robinson Decl. ¶ 10; Objection Ex. 4.) Finally, after no response from Mustafanos, Kirkland sent Mustafanos a third letter on February 24, 2014, explaining that the Third Party Release bars Mustafanos's claims against AFI and warning Mustafanos that if he did not dismiss his claims against AFI with prejudice by March 3, 2014, AFI would seek relief in this Court. (Objection Ex. 5 at 2.) Mustafanos has not dismissed his claims against AFI; instead, after he received the letter from Kirkland, Mustafanos filed the instant Motion seeking to lift the automatic stay.

### D. ResCap Bankruptcy Plan Confirmation

ResCap and various related entities (the "Debtors") filed chapter 11 bankruptcy petitions on May 14, 2012 (the "Petition Date"). On August 29, 2012, the Court entered an order setting the bar date of November 9, 2012 for filing non-governmental proofs of claim in the chapter 11 cases. (ECF Doc. # 1309.) The Court thereafter entered an Order Extending the Bar Date for Filing Proofs of Claim to November 16, 2012 (the "Bar Date"). (ECF Doc. # 2093.) Mustafanos did not file a proof of claim.

On December 11, 2013, the Court confirmed the Plan. (ECF Doc. # 6065.) Pursuant to the Plan,

> Except as otherwise agreed by the Debtors, the Liquidating Trust, or the Borrower Claims Trust, as applicable, or ordered by the Bankruptcy Court, any and all proofs of claim filed after the applicable Bar Date shall be deemed disallowed, discharged, released, and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless such late proof of claim is deemed timely filed by a final order of the Bankruptcy Court.

(Plan Art. VIII.B (formatting altered from original).)

To define the term "Claim," the Plan adopts the definition contained in Bankruptcy Code section 101(5). (Plan Art. I.A.53.) Section 101(5), in turn, defines a "claim" as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5).

The Plan also includes the release of the Debtors' parent company AFI (the "Third Party Release") in exchange for a contribution from AFI of $2.1 billion to the Debtors' estate (the "AFI Contribution"). (*See* Plan Art. IV.A.) The Third Party Release extends to

> **any and all Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws, veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to the Debtors.**

(Plan Art. IX.D.)[7] The Third Party Release further provides:

> **On and as of the Effective Date of the Plan . . ., the holders of Claims and Equity Interests shall be deemed to provide a full and complete discharge and release to the Ally Released Parties and their respective property from any and all Causes of Action . . . arising from or related in any way to the Debtors, including those in any way related to RMBS issued and/or sold by the Debtors or their affiliates and/or the Chapter 11 Cases or the Plan, the Consent Order, and the Order of Assessment.**

(*Id.*) A "Cause of Action" under the Plan is defined as:

> any and all Claims, actions, causes of action, choses in action, rights, demands, suits, claims, liabilities, encumbrances, lawsuits, adverse consequences, debts, damages, dues, sums of money, accounts, reckonings, deficiencies, bonds, bills, disbursements, expenses, losses, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims,

---

[7] Capitalized terms used but not defined herein have the meanings given to such terms in the Plan.

>indemnity claims, counterclaims, and cross-claims (including those of the Debtors, and/or the bankruptcy estate of any Debtor created pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases), including, without limitation, any claims, causes of action, objections, rights, remedies arising under Chapter 5 of the Bankruptcy Code pursuant to, among others, sections 502, 510, 542 through 545 and 547 through 553 or 558 thereof, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, whether held in a personal or representative capacity, that are or may be pending as of the date hereof or instituted hereafter against any entity, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date hereof.

(*Id.* Art. I.A.50.) Thus, Claims or Causes of Action asserted against AFI "arising from or related in any way related to the Debtors" are "Released Claims" under the Plan. (*See id.* Art. I.A.242; *see also id.* IX.D.)

>The Plan "**permanently enjoin[s] and preclude[s]**" all parties
>
>**who have held, hold or may hold Claims, . . . [or] Causes of Action . . . that constitute Released Claims . . . from and after the effective date of the Plan, from: (a) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party whether directly, derivatively or otherwise, on account of or in connection with or with respect to any Released Claims; . . . [and] (e) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party on account of or in connection with or respect to any Released Claims . . .**

(*Id.* Art. IX.I.)

The Plan became effective on December 17, 2013 (the "Effective Date"). (*See* ECF Doc. # 6137.)

10

## II.    DISCUSSION

### A.    The Debtors' Discharge Under the Plan

Section 1141 of the Bankruptcy Code, titled "Effect of Confirmation," generally provides that a plan of reorganization is binding upon a broad list of entities once it is confirmed. *See* 8 COLLIER ON BANKRUPTCY ¶ 1141.02 (16th ed. rev. 2013).

> Under [section 1141], subject to compliance with the requirements of due process under the Fifth Amendment, a confirmed plan of reorganization is binding upon every entity that holds a claim against or interest in the debtor even though a holder of a claim or interest is not scheduled, has not filed a claim, does not receive a distribution under the plan or is not entitled to retain an interest under such plan. *In other words, a confirmed plan precludes parties from raising claims or issues that could have or should have been raised before confirmation but were not*.

*Id.* (emphasis added) (footnotes omitted).

Section 1141(d)(1)(A) provides:

> (1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
>     (A) *discharges the debtor* from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, *whether or not*—
>         (i) a *proof of the claim based on such debt is filed* or deemed filed under section 501 of this title;
>         (ii) such claim is allowed under section 502 of this title; or
>         (iii) the holder of such claim has accepted the plan.

11 U.S.C. § 1141(d)(1)(A) (emphasis added).

Confirmation of a plan operates as a final judgment for *res judicata* purposes. *See First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.)*, 81 F.3d 1310, 1315 (4th Cir. 1996). "Under the doctrine [of *res judicata*], questions concerning the treatment of any creditor under the plan, discharge of liabilities, or disposition of property, may no longer be raised after plan confirmation. These issues must be raised in the context of

objections to confirmation of the plan." 8 COLLIER ON BANKRUPTCY ¶ 1141.02[4] (footnotes omitted).

Since he is asserting a right of payment, Mustafanos is a holder of a "Claim" pursuant to the Plan and the Bankruptcy Code. *See* 11 U.S.C. § 101(5); 8 COLLIER ON BANKRUPTCY ¶ 1141.02 n.2. Mustafanos did not file a proof of claim in these chapter 11 cases, and did not object to confirmation.

The Plan clearly provides that

> Any and all proofs of claim filed after the applicable Bar Date shall be deemed disallowed, discharged, released, and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless such late proof of claim is deemed timely filed by a final order of the Bankruptcy Court.

(Plan Art. VIII.B (formatting altered from original).)

Despite the fact that Mustafanos did not file a claim before the Bar Date, he later sought to bring a claim against the Debtors and AFI in the form of counterclaims to the foreclosure action—initiated by EverBank, a non-debtor that is unrelated to any of the Debtors or AFI—raising allegations of misconduct related to the origination, securitization, servicing, and foreclosure of the Mortgage Loan, and seeking to recover monetary damages for the alleged misconduct. A review of the Amended Counterclaim makes clear that Mustafanos seeks to sidestep the confirmed chapter 11 Plan to pursue his claim in another forum. If Mustafanos had a claim, he should have timely filed it in these bankruptcy cases; he did not do so, and it is too late to do so now. Any unasserted claims Mustafanos had against the Debtors' estate were discharged pursuant to the Plan. Consequently, for the reasons explained in the next section, his Motion for relief from the automatic stay is **DENIED**; the relief he seeks from GMACM and ResCap in the State Court is precluded under the Plan.

12

### B. Mustafanos Has Not Established Cause to Lift the Automatic Stay

Mustafanos has not established cause to lift the stay. Section 362(a)(1) of the Bankruptcy Code provides that the filing of a bankruptcy petition automatically stays

> the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Evntl. Prot.*, 474 U.S. 494, 503 (1986). The stay maintains the status quo and protects the debtor's ability to formulate a plan for the sale or other disposition of property of the estate. 3 COLLIER ON BANKRUPTCY ¶ 362.03.

Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not, however, define the phrase "for cause." In determining whether "cause" exists to lift the stay for prepetition litigation, courts consider the so-called "*Sonnax* Factors." *See Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990); *In re Residential Capital, LLC*, 501 B.R. 624, 643 (Bankr. S.D.N.Y. 2013); *In re New York Medical Grp., PC*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001).

Not all of the *Sonnax* Factors are relevant in every case, and "cause" is a broad and flexible concept that must be determined on a case-by-case basis. *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167

13

F.3d 139, 143 (2d Cir. 1999)). The moving party bears the initial burden to demonstrate that "cause" exists to lift the stay. *See Sonnax*, 907 F.2d at 1285; *Capital Comm. Fed. Credit Union v. Boodrow* (*In re Boodrow*), 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause.") (internal quotation marks omitted). "If the movant is an unsecured creditor, the policies of the automatic stay weigh against granting the relief requested. [T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." *Residential Capital*, 501 B.R. at 643–44 (alteration in original) (internal quotation marks omitted). Under section 362(d)(1), Mustafanos bears the initial burden of showing "cause" to lift the stay. *See id.* at 1285 ("If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.").

Since the claims Mustafanos seeks to assert against GMACM and ResCap are barred and discharged by the Plan, Mustafanos cannot establish cause to lift the stay—litigating those claims in *any* forum would be futile. Therefore, Mustafanos's Motion to lift the stay is **DENIED**. This ruling does not prevent Mustafanos from asserting any equitable or legal defenses or counterclaims he may have in the foreclosure action against EverBank, or against any of the other non-debtor defendants, except for AFI. What he cannot do is drag GMACM or ResCap into the foreclosure action in support of his defenses to foreclosure. And as explained below, he also cannot assert any counterclaims against AFI.

### C.     Enforcement of Third Party Release and Plan Injunction

The Court considers AFI's Objection as a cross-motion for relief under the Third Party Release and Injunction provisions of the Plan. Mustafanos received fair notice of AFI's requested relief and it is properly before the Court even though Mustafanos initiated the current Motion.

*1.     The Third Party Release and Plan Injunction are Appropriate in these Cases*

In the Second Circuit, non-debtor releases are permissible under certain circumstances. "[A] bankruptcy court only has jurisdiction to enjoin third party non-debtor claims that directly affect the res of the bankruptcy estate." *In re Johns-Manville Corp.*, 600 F.3d 135, 152 (2d Cir. 2010) (citation omitted). Because AFI filed proofs of claim for indemnification against the Debtors, and because AFI and the Debtors shared insurance policies, third-party claims such as the ones asserted by Mustafanos would affect the *res* of the estate, satisfying the jurisdictional underpinnings for the third-party release approved by the Court.

In *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 293 (2d Cir. 1992), the Second Circuit noted that "[i]n bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan." In its decision in *In re Metromedia Fiber Network Inc.*, 416 F.3d 136 (2d Cir. 2005), the Second Circuit further clarified the standard under which it is appropriate to grant non-debtor releases. The court identified two factors that are necessary for court approval of a non-debtor release: (1) the release must itself be important to the plan; and (2) the scope of the release must be necessary to the plan. *Id.* at 143. Thus, a non-debtor release is not justifiable simply on the ground that it was offered in exchange for a monetary contribution. *Id.*

15

During the Plan confirmation hearing, the Court considered all of the factors under *Metromedia* and *Johns-Manville* and their progeny and determined that the Court had the jurisdiction to enter the third party non-debtor release in favor of AFI. (*See* ECF Doc. # 6065, *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order"), ¶ UU.) The Court found that the *Metromedia* factors, which establish a high burden before a court will grant non-debtor releases, were satisfied in this case. The AFI Contribution was the "lynchpin of the Plan, without which the cases would devolve into endless litigation, the Plan would not be confirmable or feasible, and the recoveries currently contemplated by the Plan would not exist." (*Id.* ¶ RR.) As stated in the Plan, the Third Party Release was "an essential component and critical to the success of the Plan." (Plan Art. IX.D.) The Court found that "[t]hese facts are unprecedented and justify the approval of the Third Party Releases." (Confirmation Order ¶ RR.)

> 2. *The Court Has Authority to Enforce the Third Party Release and Plan Injunction Against Mustafanos*

"All courts retain the jurisdiction to interpret and enforce their own orders." *In re Charter Commc'ns*, No. 09-11435, 2010 WL 502764, at *4 (Bankr. S.D.N.Y. Feb. 8, 2010); *see also Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151 (2009) ("[A]s the Second Circuit recognized . . . the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."). While a bankruptcy court's jurisdiction diminishes in importance following plan confirmation, *In re Gen. Media, Inc.*, 335 B.R. 66 (S.D.N.Y. 2005), the action in this case is "sufficiently close in time to confirmation of the Plan and sufficiently critical to the integrity of the Plan's structure that it is proper for this Court to take firm control and decide" the Motion. *Charter Commc'ns*, 2010 WL 502764, at *4.

16

As the court explained in *Charter Communications*, where a motion seeks to "prevent the prosecution of causes of action expressly prohibited by the confirmation order," it would be "difficult to identify judicial acts that are any more critical to the orderly functioning of the bankruptcy process or more closely tethered to core bankruptcy jurisdiction." *Id.* (citing *In re Petrie Retail, Inc.*, 304 F.3d 223, 230 (2d Cir. 2002) (finding that bankruptcy court retained core jurisdiction post-confirmation "to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization")).[8]

The $2.1 billion AFI Contribution to the successful Plan in this case was a significant factor to achieving Plan confirmation and a global resolution of the Debtors' bankruptcies. A key component of Ally's willingness to provide the Contribution was the Plan Injunction and Third Party Release. The Court carefully considered the record and weighed the relevant factors. Initially, the U.S. Trustee, which rigorously enforces the law with respect to third party non-debtor releases, had objected to the Third Party Release. That objection was withdrawn. By the time of confirmation, there were no objections to the non-debtor release included in the Plan. After considering the applicable case law and the U.S. Trustee's withdrawal of its objection, the Court approved the Plan, which included the Third Party Release and Injunction.

Mustafanos did not name AFI as a counter-defendant in his foreclosure proceeding until August 22, 2013; he did not serve AFI with the Amended Counterclaim until October 2013. He did not object to the Third Party Release or Injunction contained in the Plan.

---

[8] While both this Court and the Oregon state court are competent to rule on the Plan Injunction and Third Party Release, the "bankruptcy court is more closely connected to the current dispute and is the proper forum to rule with respect to" enforcement of third party releases pursuant to the Plan. *Charter Commc'ns*, 2010 WL 502764, at *3 (explaining that the bankruptcy court was the appropriate court to interpret the plan releases in that case, for reasons that apply equally here: (1) the bankruptcy court had natural familiarity with the full record of the confirmation hearing and process; and (2) if the bankruptcy court interprets the plan confirmation order, there is a much smaller risk of erosion of its provisions and the injunction due to inconsistent interpretations across courts).

Mustafanos's claims against AFI in the Amended Counterclaim relate to the origination of the Mortgage Loan, the assignment of the recorded mortgage, the securitization of the Mortgage Loan, the servicing of the Loan, and attempts to foreclose upon the Loan and the secured real property. Mustafanos names AFI as a counter-defendant in the case, describing AFI as "*doing Business as* GMAC Mortgage Corporation"; he uses "Ally" and "GMAC Mortgage" interchangeably in his pleadings. (Amended Counterclaim ¶ 6 (emphasis added).) The asserted bases for AFI's purported liability are derivative of the alleged misconduct of GMACM and ResCap. Mustafanos does not allege any independent actions taken by AFI or its non-debtor subsidiaries.[9] Such claims fall squarely within the Plan's Third Party Release, which releases AFI from claims "arising from or related in any way to the Debtors." (Plan Art. IX.D.)

Consequently, Mustafanos is bound by the Third Party Release and is therefore "permanently enjoin[ed] and preclude[ed]" from continuing his lawsuit against AFI. (*See* Plan Art. IX.I (enjoining all entities who hold "Claims . . . from: (a) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party whether directly, derivatively or otherwise, on account of or in connection with or with respect to any Released Claims; . . . [and] (e) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party on account of or in connection with or with respect to any Released Claims").)

After Mustafanos filed the Amended Counterclaim, AFI's counsel served him with copies of the Plan and Confirmation Order, as well as letters explaining the Plan's Third Party

---

[9] At the hearing on April 10, 2014, Mustafanos alleged that AFI had "confessed" to acting in collusion with its subsidiaries, apparently including GMACM, as well as to fraud and racketeering, in July 2012. As the Court explained on the record, to the extent Mustafanos is basing his action against AFI on these allegations, he is mistaken in his interpretation of the agreement AFI signed at the conclusion of the Attorney General's investigation. *See* Apr. 10, 2014 Tr. 27:8–21. However, it is not necessary for the Court to consider the merits of these allegations to resolve the Motion or AFI's request for relief.

18

Release and Injunction. Mustafanos has failed to dismiss his counterclaims against AFI. Instead, he filed the current Motion. Mustafanos is bound by the Third Party Release since he is a "holder[] of [a] Claim[] . . . arising from or related in any way to the Debtors."

The Court hereby **ORDERS** Mustafanos to dismiss his claims against AFI with prejudice no later than fourteen (14) days from the date of this Order. If Mustafanos fails to do so, AFI may file a motion seeking to hold Mustafanos in contempt.

### III.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion to lift the stay, and **ENJOINS** Mustafanos from pursuing claims in the State Court against GMACM and ResCap. Additionally, Mustafanos is **ENJOINED** from prosecuting his claims against AFI. The Court also **ORDERS** that Mustafanos shall dismiss his claims in the State Court against AFI with prejudice no later than fourteen (14) days from the date of this Order. As noted above, the Court's ruling does not affect the defenses to foreclosure or claims against other parties that Mustafanos may be permitted to assert; such issues are controlled by state law.

**IT IS SO ORDERED.**

Dated: April 21, 2014
      New York, New York

                                                 ___*Martin Glenn*_____
                                                 MARTIN GLENN
                                        United States Bankruptcy Judge