KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
David E. Blabey, Jr.
1177 Avenue of the Americas
New York, New York  10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) Chapter 11 |
| Debtors. | ) Jointly Administered |

**REPLY OF THE RESCAP LIQUIDATING TRUST IN SUPPORT OF ITS MOTION FOR AN ORDER ENFORCING PLAN INJUNCTION AGAINST KARLA BROWN**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Liquidating Trust (the "**Liquidating Trust**"), as successor to the debtors (the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), hereby files this reply (the "**Reply**") in support of the *Motion of the Rescap Liquidating Trust for an Order Enforcing Plan Injunction Against Karla Brown* [Docket No. 6687] (the "**Motion**")[1] and in response to *Karla Brown's Opposition to the Motion of the Liquidating* [sic] *for an Order Enforcing Plan Injunction Against Karla Brown* [Docket No. 6794] (the "**Objection**").  In support of this Reply, the Liquidating Trust respectfully represents as follows:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

## REPLY

1.  The Liquidating Trust was constrained to file the Motion because the Claimant collaterally attacked the Plan Injunction and the Third Party Release before the Massachusetts Superior Court.[2] Since filing the Motion, the Liquidating Trust has made diligent efforts to apprise the Claimant's counsel of the Court's previous enforcement of the Plan Injunction and to reach a consensual resolution of the Motion and the Claimant's claim against the estates. Despite these efforts, the Claimant regrettably insists on continuing to prosecute claims that are plainly and unambiguously released under the Plan pursuant to the Third Party Release. Moreover, the Objection fails to raise any arguments not anticipated and addressed in the Motion.

2.  In the Objection, the Claimant raises three arguments: First, the Claimant argues that its claims against Mr. Brown fall outside the ambit of the Third Party Release. Second, the Claimant argues that the broad nature of the Third Party Release is somehow unconstitutional and contrary to the standard for approving third party releases. Third, the Claimant argues that the Third Party Release does not comport with the Bankruptcy Code. Each of these arguments is without merit and is already addressed at length in the Motion. With respect to the Claimant's arguments that the Third Party Release is in contravention of the Court's authority under the Bankruptcy Code, the Claimant failed to avail herself of the many previous opportunities she was afforded to raise such issues. *See* Motion ¶¶ 17-28. The time to oppose the Third Party Release has long since passed.[3]

---

[2] On March 26, 2014, the Motion and supporting Shifer Declaration were served on the Claimant by personal service, in addition to service on the Claimant's counsel via overnight mail and email.

[3] Not only did the Claimant fail to object to the Third Party Release, she elected not to vote on the Plan, and her failure to return her ballot constitutes consent to the Third Party Release. *See* Ex. A-7 (Form General Ballot B) to *Notice of Filing of Approved Solicitation Materials in Connection with Solicitation of the Disclosure Statement and Joint Chapter 11 Plan* [Docket No. 4814].

### A.     The Third Party Release Plainly Applies to the Claims Against Mr. Brown.

3.     The Claimant devotes much of the Objection to arguing that her claims fall outside the ambit of the Third Party Release because the claims are against Mr. Brown in his "individual" capacity. *See* Obj. at 1-4. In doing so, the Claimant conflates (x) the fact that her claims are direct claims against Mr. Brown, with (y) the fact that the Third Party Release is, by its terms, limited to claims brought against former employees "in [their] capacity as such." The Liquidating Trust does not dispute that the Claimant is asserting claims directly against Mr. Brown. Indeed, the Third Party Release could *only* be applicable to claims brought directly against its beneficiaries; if it were otherwise, there would be nothing to release. But the crucial question is not whether the Claimant is seeking to recover against Mr. Brown for his "individual conduct," Obj. at 3, but rather whether that alleged conduct was taken in Mr. Brown's capacity as an employee of GMAC Mortgage. If so, he is covered by the Third Party Release.

4.     As explained in detail in the Motion, there is no question that Mr. Brown was acting in the capacity of an employee in the allegations made by the Claimant. *See* Motion ¶¶ 52-56. Among other things, Mr. Brown and GMAC Mortgage are alleged to have committed the very same wrongful acts (in a "common plan and scheme"), virtually every allegation made against Mr. Brown is also levelled against GMAC Mortgage, and GMAC Mortgage is alleged to have profited from the allegedly wrongful acts. Moreover, because no other employee of GMAC Mortgage is named in the Complaint, GMAC Mortgage could not have been named a defendant without the implicit acknowledgment that Mr. Brown was acting as its agent or employee.

5.     Indeed, the Claimant does not seemingly dispute that, according to her allegations, Mr. Brown was acting in his capacity as an employee when he undertook the actions alleged in the Complaint. Notably, there is no assertion in the Objection that Mr. Brown's actions were outside the scope of his employment, and the statement of undisputed material facts

- 3 -

filed in the Massachusetts Action acknowledges that (i) Mr. Brown was an employee of GMAC Mortgage, (ii) GMAC Mortgage was the actual broker of her loan, and (iii) GMAC Mortgage, not Mr. Brown, received a brokerage fee. *See Attachment to Declaration of Max Weinstein* [Docket No. 6794-2] ¶ 23; *id*. ¶ 5; *id*. ¶ 20.[4]

6. Rather than dispute that Mr. Brown was acting within the scope of his employment, the Claimant seeks to create a false dichotomy between claims brought against a beneficiary of the Third Party Release in its "representative capacity" and claims brought against a beneficiary in its "individual capacity." *See* Obj. at 3. According to the Claimant, the Third Party Release "does not enjoin claims arising out [sic] a non-debtor's personal liability for his or her own conduct." *Id.* at 4. But this cannot be true. As noted above, the Third Party Release, insofar as it applies to individuals, would *only* be likely to apply to the extent an individual faces "personal liability for his or her own conduct." Where such conduct was performed as an employee, the employee is protected by the Third Party Release.

7. The Claimant's statement that "corporate representatives are not ordinarily derivatively liable for the conduct of the corporation," Obj. at 4, while perhaps true, is a complete non-sequitur. First, the allegation here appears to be that GMAC Mortgage is responsible for the actions of its employee, Mr. Brown, not the other way around. Second, the Claimant seems to believe that the term "Representative," as used in the Plan, incorporates some concept of derivative liability. There is no textual or legal basis for this assertion, and it is

---

[4] In the Objection, the closest thing to an assertion that Mr. Brown was acting outside the scope of his employment is the Claimant's statement that she is suing Mr. Brown for his "own intentional torts." Obj. at 1. It bears noting, however, that even intentional torts may be committed in the scope of an individual's employment. *See, e.g., Hadley Pollett, LLC v. Yun Zhu*, No. 07-1488, 2009 WL 5909268, *2 (Mass. Super. Ct. Dec. 10, 2009) ("An employer will be liable for the intentional torts of its employee through the doctrine of *respondeat superior* where the tort occurred within the scope of employment, and in furtherance of the employer's work."); *Howard v. Town of Burlington*, 399 Mass. 585, 590 (Mass. 1987) ("The general respondeat superior test involving intentional torts considers whether the act was within the course of employment, and in furtherance of the employer's work.").

undermined by the very legal proposition the Claimant cites, namely, that an employee is not derivatively liable for its employer's wrongful conduct absent its own wrongful conduct. If the Claimant's statement of the law and interpretation of the Third Party Release were correct, it would render the release superfluous insofar as it applies to the Debtors' former employees.

8. Contrary to the Claimant's assertion, the Liquidating Trust does not read the limiting phrase "solely in its capacity as such" out of the Third Party Release. That phrase limits the Third Party Release to claims in which the beneficiary of the release was acting in its defined capacity (*e.g.*, in its capacity as an employee).[5] For example, if Mr. Brown were sued by someone who was injured by Mr. Brown's conduct unrelated to his employment by GMAC Mortgage, the Third Party Release would be inapplicable. Here, however, there is no question that Mr. Brown's actions were undertaken as an employee of GMAC Mortgage and therefore within the scope of the Third Party Release.

### B. The Third Party Release Comports with the Standard for Approving Such Releases.

9. In the Objection, the Claimant argues that the Third Party Release is somehow limited by the Supreme Court's decision in *Stern v. Marshall*. Not only is this attack on the Third Party Release untimely, it is also wrong.

10. As discussed in the Motion, the Second Circuit has held that the Supreme Court's holding in *Stern* "was a narrow one," and continues to cite *Metromedia* as the standard for approving third party releases. *See* Motion ¶ 50. The Claimant fails to cite a single case from any court that holds that *Stern* altered the applicable standard for approving a third party release. Instead, the Claimant argues that "[u]nder the plain holding of the *Stern* decision, the

---

[5] The Claimant seems to read the phrase "in its capacity as such" in the definition of "Representative" to mean (for example) an "employee . . . in its capacity as [a Representative]." *See* Obj. at 1. The more natural, less circular, reading of this definition is an "employee . . . in its capacity as [an employee]."

claims in the state court action against Philip Brown are not within the Bankruptcy Court's adjudicative authority." However, the question currently before the Court is not whether the Court has the power to adjudicate the Massachusetts Action. Rather the question is whether the Court had the authority to approve the Third Party Release.

11. Not only was the Court well within its authority to approve the Third Party Release under the exacting *Metromedia* standard—there can be no doubt that the facts surrounding the Third Party Release, including the $2.1 billion contribution from Ally Financial, Inc. as part of a global settlement that resolved more than $10 billion in highly complex claims, are unique in the annals of the Bankruptcy Code—but the Claimant repeatedly failed to contest the terms of the Third Party Release.

12. The Claimant also asserts there is some ambiguity in the Third Party Release and until such time as the ambiguity is resolved, she is unable to appeal the Third Party Release. For the reasons stated above and in the Motion, the Claimant cannot credibly argue that the Third Party Release is ambiguous. It is clear that the Third Party Release applies to conduct by a beneficiary of the release so long as such conduct was, in this case, in its capacity as a former employee of the Debtors.

13. In any event, the time to appeal the Confirmation Order is long past. The proper remedy for the Claimant's alleged uncertainty as to whether the Third Party Release applied to her claims against Mr. Brown was to object to the Plan at the Confirmation Hearing and seek whatever clarity she needed at that time, rather than to sit on her rights.

C. **The Third Party Release Comports with Other Provisions of the Bankruptcy Code.**

14. In the Objection, the Claimant argues that "a narrow interpretation of the Third Party Release is necessary to avoid undermining the purpose of other provisions of the

Bankruptcy Act [sic]." Obj. at 6. This argument is premised on the idea that the Court's ability to grant the Third Party Release was prohibited by the limited bar to discharge of certain fraud claims in section 523(a)(2)(A) of the Bankruptcy Code. In so arguing, the Claimant presents the Court with a false choice between "undermining § 523 and applying the Third Party Release." *Id.* at 7.

15. Other than a generic cite to *Metromedia*, the Claimant fails to identify any case that holds that section 523(a)(2)(A) is a limit on the Court's ability to grant a Third Party Release.[6] Nor is the Claimant's invocation of *Metromedia*'s concern with the "safeguards" of the Bankruptcy Code well-grounded. As noted in the Motion, section 523(a)(2)(A) does not operate as a blanket bar on the discharge of claims related to fraud. *See* Motion ¶ 49. In fact, pursuant to section 523(c) of the Bankruptcy Code, a debtor will receive a discharge of claims that would otherwise be barred by section 523(a)(2)(A) unless a creditor actively raises an objection to the discharge. Moreover, pursuant to Bankruptcy Rule 4007(c), such an objection must be brought no later than 60 days after the first date set for the meeting of creditors under section 341(a) of the Bankruptcy Code.

16. If the Claimant believed that the Third Party Release—of which it received abundant notice—was somehow impermissible under section 523(a) or any other provisions of the Bankruptcy Code, the Claimant had ample opportunity to do so prior to and at the Confirmation Hearing. Notably, the Claimant does not offer any explanation as to why she neglected to participate in the Chapter 11 Cases at any point other than to file a proof of claim. The Court should not afford the Claimant a "do over" now, and certainly not with respect to the

---

[6] As noted in the Motion, section 523(a) of the Bankruptcy Code provides for limiting the discharge granted to *individual* debtors and does not have any applicability to third party releases. *See* Motion ¶ 49; *see also United States v. Hawker Beechcraft Corp. (In re Hawker Beechcraft, Inc.)*, 2014 U.S. Dist. Lexis 42425, *21-22 (S.D.N.Y. Mar. 27, 2014) (holding § 523(a)(2)(A) limited to individual debtors).

provisions of the Third Party Release which were central to the successful resolution of these Chapter 11 Cases.

## CONCLUSION

WHEREFORE, the Liquidating Trust respectfully requests that the Motion be granted and the Enforcement Order be entered, the Objection be overruled, and such other and further relief as is just and proper.

Dated:   New York, New York
April 22, 2014

        KRAMER LEVIN NAFTALIS & FRANKEL LLP

        /s/  Douglas H. Mannal
        Kenneth H. Eckstein
        Douglas H. Mannal
        David E. Blabey, Jr.
        1177 Avenue of the Americas
        New York, New York  10036
        Telephone: (212) 715-9100
        Facsimile: (212) 715-8000