**Hearing Date and Time: June 10, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Date and Time: May 22, 2014 at 4:00 p.m. (Prevailing Eastern Time)**


**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
Jonathan M. Petts

*Counsel for The ResCap Borrower Claims Trust*


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**NOTICE OF RESCAP BORROWER CLAIMS TRUST'S**
**SIXTY-SECOND OMNIBUS OBJECTION TO CLAIMS**
<u>**(NO LIABILITY BORROWER CLAIMS)**</u>


      **PLEASE TAKE NOTICE** that the undersigned have filed the attached *ResCap*

*Borrower Claims Trust's Sixty-Second Omnibus Objection to Claims (No Liability*

*Borrower Claims)* (the "<u>Omnibus Objection</u>"), which seeks to alter your rights by

disallowing your claim against the above-captioned Debtors.

      **PLEASE TAKE FURTHER NOTICE** that a hearing on the Omnibus Objection

will take place on **June 10, 2014 at 10:00 a.m. (Prevailing Eastern Time)** before the

Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District

of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Room 501.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Omnibus Objection must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to be received no later than **May 22, 2014 at 4:00 p.m. (Prevailing Eastern Time)**, upon: (a) Chambers of the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408; (b) counsel to the ResCap Borrower Claims Trust, Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019 (Attention: Gary S. Lee, Norman S. Rosenbaum, Jordan A. Wishnew and Jonathan M. Petts); (c) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention: Linda A. Riffkin and Brian S. Masumoto); and (d) The ResCap Borrower Claims Trust, Polsinelli PC, 900 Third Avenue, 21st Floor, New York, NY 10022 (Attn: Daniel J. Flanigan).

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written response to the relief requested in the Omnibus Objection, the Bankruptcy Court may deem any opposition waived, treat the Omnibus Objection as conceded, and enter an order granting the relief requested in the Omnibus Objection without further notice or hearing.

ny-1138906

Dated:  April 22, 2014
        New York, New York

Respectfully Submitted,

/s/ Norman S. Rosenbaum
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
Jonathan M. Petts
**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel for The ResCap Borrower*
*Claims Trust*

**Hearing Date and Time:  June 10, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Date and Time:  May 22, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
Jonathan M. Petts

*Counsel for The ResCap Borrower*
*Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------
                                                    )
In re:                                              )        Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, et al.,                   )        Chapter 11
                                                    )
                              Debtors.              )        Jointly Administered
                                                    )
------------------------------------------------------------

**RESCAP BORROWER CLAIMS TRUST'S**
**SIXTY-SECOND OMNIBUS OBJECTION TO CLAIMS**
**(NO LIABILITY BORROWER CLAIMS)**

---

**THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM.  CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON EXHIBIT A ATTACHED TO THE PROPOSED ORDER.**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT THE RESCAP BORROWER CLAIMS TRUST'S COUNSEL, JORDAN A. WISHNEW, AT (212) 468-8000.**

---

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "<u>Trust</u>"), established pursuant to the

terms of the Chapter 11 plan confirmed in the above captioned bankruptcy cases (the "<u>Chapter</u>

<u>11 Cases</u>"), as successor in interest to the above-captioned debtors (collectively, the "<u>Debtors</u>")

for Borrower Claims (defined below) matters, by and through its undersigned counsel,

respectfully represents:

## RELIEF REQUESTED

1.      The Trust files this sixty-second omnibus objection to claims (the

"<u>Objection</u>") pursuant to section 502(b) of title 11 of the United States Code (the "<u>Bankruptcy</u>

<u>Code</u>"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"),

and this Court's order approving procedures for the filing of omnibus objections to proofs of

claim filed in these Chapter 11 Cases (the "<u>Procedures Order</u>") [Docket No. 3294], and seeks

entry of an order (the "<u>Proposed Order</u>"), in a form substantially similar to that attached hereto as

<u>Exhibit 4</u>, to disallow and expunge the claims listed on <u>Exhibit A</u>[1] annexed to the Proposed

Order.  In support of this Objection, the Debtors submit the Declaration of Deanna Horst, Chief

Claims Officer for the ResCap Liquidating Trust (the "<u>Horst Declaration</u>," attached hereto as

<u>Exhibit 1</u>) and the Declaration of Norman S. Rosenbaum of Morrison & Foerster LLP, counsel to

the Trust (the "<u>Rosenbaum Declaration</u>," attached hereto as <u>Exhibit 2</u>).

2.      The Trust examined the proofs of claim identified on <u>Exhibit A</u> to the

Proposed Order and determined that the proofs of claim listed on <u>Exhibit A</u> (collectively, the

"<u>No Liability Borrower Claims</u>") are not liabilities of the Debtors.  This determination was made

after the holders of the No Liability Borrower Claims with insufficient supporting documentation

---

[1]     Claims listed on <u>Exhibit A</u> are reflected in the same manner as they appear on the claims register maintained
by KCC (defined herein).

ny-1138803

were given an opportunity under the Procedures Order to supply additional support for their respective claims. Accordingly, the Trust seeks entry of the Proposed Order disallowing and expunging the No Liability Borrower Claims from the Claims Register.

3.       The proofs of claim identified on <u>Exhibit A</u> annexed to the Proposed Order solely relate to claims filed by current or former Borrowers (collectively, the "<u>Borrower Claims</u>" and each a "<u>Borrower Claim</u>"). As used herein, the term "Borrower" means a person who is or was a mortgagor under a mortgage loan originated, serviced, and/or purchased or sold by one or more of the Debtors.[2]

4.       The Trust expressly reserves all rights to object on any other basis to any No Liability Borrower Claim as to which the Court does not grant the relief requested herein.

## <u>JURISDICTION</u>

5.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## <u>BACKGROUND</u>

*General Case Background*

6.       On May 14, 2012 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

7.       On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine member official committee of unsecured creditors [Docket No. 102] (the "<u>Creditors' Committee</u>").

---

[2]     The terms "Borrower" and "Borrower Claims" are identical to those utilized in the Procedures Order [Docket No. 3294].

ny-1138803

8.      On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as such term is defined in the Plan) of the Plan occurred, and, among other things, the Trust was established [Docket No. 6137].

9.      The Plan provides for the creation and implementation of the Trust, which is established for the benefit of Borrowers who filed Borrower Claims to the extent such claims are ultimately allowed either through settlement with the Borrower Claims Trustee or pursuant to an Order of the Court.  See Plan, at Art. IV.F.  The Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying Allowed Borrower Claims."  See id.

*Claims-related Background*

10.      On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

11.      On August 29, 2012, this Court entered an order approving the Debtors' motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No. 1309] (the "Bar Date Order").  The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of

4

claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribing the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "Governmental Bar Date").    Bar Date Order ¶¶ 2, 3.    On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093].    The Governmental Bar Date was not extended.

12.    On March 21, 2013, the Court entered the Procedures Order, which authorizes the Debtors to, among other things, file omnibus objections to no more than 150 claims at a time, on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order.  See Procedures Order at 2-3.

13.    Based on substantial input from counsel to the Creditors' Committee and its special counsel for Borrower issues, SilvermanAcampora LLP ("Special Counsel"), the Procedures Order includes specific protections for Borrowers and sets forth a process for the Debtors or any successor in interest to follow before objecting to certain categories of Borrower Claims (the "Borrower Claim Procedures").  The Borrower Claim Procedures provide, *inter alia*, that prior to objecting to Borrower Claims filed with no or insufficient documentation, the Debtors must send each such Borrower claimant a letter requesting additional documentation in support of the purported claim (the "Request Letter").  See Procedures Order at 4.

14.    Beginning in May of 2013, the Debtors sent Request Letters, substantially in the form as those attached as Exhibit 3, to those Borrowers who filed the No Liability Borrower Claims with insufficient documentation.  The Request Letters state that the claimant must respond within thirty (30) days (the "Response Deadline") with an explanation that states the legal and factual reasons why the claimant believes it is owed money or is entitled to other relief from the Debtors and the claimant must provide copies of any and all documentation that

5

the claimant believes supports the basis for its claim.  See Request Letters at 1.  The Request

Letters further state that if the claimant does not provide the requested explanation and

supporting documentation within 30 days, the Debtors may file a formal objection to the

claimant's claim, seeking to have the claim disallowed and permanently expunged.  Id.

15.    The Response Deadline has passed, and the Debtors and the Trust either

did not receive any response to the Request Letters or received insufficient information to

establish a basis for liability with respect to the applicable No Liability Borrower Claims.  See

Horst Declaration at ¶ 4.

## THE NO LIABILITY BORROWER CLAIMS
## SHOULD BE DISALLOWED AND EXPUNGED

16.    Based upon its review of the proofs of claim filed on the Claims Register,

the Trust determined that the No Liability Borrower Claims identified on Exhibit A annexed to

the Proposed Order do not represent valid prepetition claims against the Debtors.  If the No

Liability Borrower Claims are not disallowed and expunged, then the parties who filed these

proofs of claim may receive a wholly improper recovery to the detriment of other creditors in

these Chapter 11 Cases.  See Horst Declaration ¶ 8.

17.    Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may

file a proof of claim."  11 U.S.C. § 501(a).  "The proof of claim, if filed in accordance with

section 501 and the pertinent Bankruptcy Rules, constitutes prima facie evidence of the validity

and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)."  4

COLLIER ON BANKRUPTCY ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer eds., 16th

ed. rev. 2013).  Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim

may not be allowed to the extent that "such a claim is unenforceable against the debtor and

property of the debtor, under any agreement or applicable law . . . ." 11 U.S.C. § 502(b)(1).

6

18.     If an objection refuting at least one of the claim's essential allegations is asserted, however, the claimant has the burden to demonstrate the validity of the claim.  See *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

19.     The Debtors and the Trust diligently analyzed the No Liability Borrower Claims and the allegations set forth therein and examined the Debtors' books and records in order to assess the alleged liabilities asserted.  See Horst Declaration at ¶¶ 3-5.  In addition, the Debtors sent Request Letters to those claimants who filed No Liability Borrower Claims with insufficient supporting documentation to allow such claimants to provide additional support for their claims.  The holders of the No Liability Borrower Claims that received Request Letters either failed to respond to the letters or failed to provide sufficient information to substantiate their claims.  See id. at ¶ 4.

20.     The Trust's specific factual and/or legal reason(s) for objecting to the allowance of each No Liability Borrower Claim is set forth on Exhibit A to the Proposed Order under the heading titled "*Reason(s) for Disallowance*."  In general, the Trust's objection to each No Liability Borrower Claim falls under one or more of the following eleven categories:

(i)  ***General No Liability***.  This category includes claims:
   - relating to requests to reduce or forgive outstanding loan balances or to reduce interest rates;
   - asserting that a Debtor is responsible for liabilities of non-Debtor entities;
   - for which the claimants have, subsequent to filing the claims, admitted to the Debtors or Special Counsel that the Debtors have no liability;
   - that the claimants are estopped from asserting and/or lack standing to assert based on the claimants' prior bankruptcy cases; and
   - that otherwise do not constitute a valid obligation of the Debtors (collectively, the "General No Liability Claims").

To assess the validity of these claims, the Trust reviewed the Debtors' books and records, including (a) the claimant's transaction history showing the payments the claimant has

7

made and the Debtors' application of those payments to principal, interest, fees, and escrows, as applicable (the "Loan Payment History"), (b) the Debtors' records tracking the history of the servicing of the claimant's loan, including but not limited to documenting instances of i) communication with the claimant, ii) letters and notices sent by the Debtors to the claimant, and iii) the Debtors' efforts to foreclose, conduct loss mitigation efforts, inspect properties, pay taxes and insurance on behalf of the claimant, and other standard servicing activity (collectively, the "Internal Servicing Notes"), and (c) other records as applicable. See Horst Decl. at ¶ 7(i). Based on its review, the Trust has determined that the Debtors are not liable for the General No Liability Claims. See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as a General No Liability Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more[3] of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Records of the claimants' prior chapter 7 or chapter 13 bankruptcy cases; or
- Other documents that are relevant to the reconciliation of the claim.[4]

(ii) **_General Servicing Issues_**. This category includes claims based on general servicing issues, including assertions that a Debtor misapplied mortgage payments, provided incorrect information or reporting to the claimant, made improper collection calls, failed to release a lien on a timely basis, failed to respond to Qualified Written Requests, wrongfully transferred servicing or wrongfully sold the claimant's loan (the "General Servicing Issues Claims"). To assess the validity of these claims, the Trust reviewed Internal Servicing Notes, Loan Payment History, letters between the Debtors and the applicable Borrower(s), executed mortgage notes and deeds of trust, and other relevant documents. See Horst Decl. at ¶ 7(ii).

Based on its review, the Trust has determined that the General Servicing Issues Claims are not valid obligations of the Debtors because: (a) the alleged events involving General Servicing Issues never took place; (b) the Debtor remedied the alleged error or mishandling, and as a result, the Claimant did not incur any damages, or failed to provide evidence of damages; and/or (c) the Debtor acted properly in servicing the loan, in

---

[3]     To clarify, for the General No Liability Claims as well as all other objection categories described herein, the Trust is not suggesting that each of the listed documents is relevant to every claim; rather, the Trust will provide the claimant and the Court with copies of only those relevant documents in its possession that substantiate the stated reason(s) for disallowance.

[4.]     The furnishing of documents by the Trust to claimants under any of the stated objection categories will be subject to all applicable privileges, including without limitation, attorney-client, and where necessary, will be subject to a mutually acceptable Confidentiality Agreement.

ny-1138803

accordance with the Debtor's standard policies and procedures and the terms of the executed note and deed of trust.  See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as a General Servicing Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Debtors' written communications to the claimant;
- Copies of lien releases; or
- Other documents that are relevant to the reconciliation of the claim.

(iii) ***Origination Issues***.  This category includes claims based on loan origination issues, which include, without limitation, claims relating to disputes regarding the loan application and closing process, disclosures, loan terms, rights of rescission or a purportedly defective title exam.  To assess the validity of these claims (the "Origination Issues Claims"), the Trust reviewed the Debtors' books and records, including the claimants' executed mortgage notes, to determine whether any Debtor was involved in the origination of the applicable loans.  See Horst Decl. at ¶ 7(iii).

Based on its review of the Debtors' books and records and its review of applicable state and federal law, the Trust determined that the Debtors are not liable for the Origination Issues Claims because no Debtor entity was involved in the origination of the applicable loans and vicarious liability cannot be imputed to any Debtor in its capacity as servicer or assignee of the loans.[5]  See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as an Origination Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Internal Servicing Notes;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Origination File; or
- Other documents that are relevant to the reconciliation of the claim.

---

[5.]   As noted in Exhibit A, to the extent the claimant asserts statutory claims related to origination of the loan, the Trust reviewed the applicable federal and state statutes and determined that such claims against servicers or loan assignees carry no successor liability.  To the extent claimant asserts common-law claims, the Trust found no case precedent establishing assignee liability when a party is not involved with the origination of the loan, and the claimant did not provide any specific legal authority to substantiate its allegation.

9

(iv) ***Escrow Issues***.  This category includes claims based on the alleged improper application or calculation of escrow amounts (the "Escrow Issues Claims").  To assess the validity of these claims, the Trust examined the Debtors' books and records, including the Debtors' escrow receipts and payments, the annual escrow analysis sent to Borrowers and any applicable Internal Servicing Notes and written communication between the Debtors and the applicable Borrower(s).

Based on its review, the Trust determined that the Debtors are not liable for the Escrow Issues Claims.  See Horst Decl. at ¶ 7(iv).  In cases where a claimant asserted that the mortgage payments increased significantly to cover an escrow shortfall, the Trust determined that the mortgage payments were correctly calculated and all payments received were correctly applied.  In cases where a claimant asserted that the escrow collected was insufficient to cover the property taxes and insurance, the Trust reviewed the escrow statements issued to the claimant, which outlined the amounts paid that year compared to what was estimated, as well as Internal Servicing Notes to the extent that there was an escrow account added to the loan, and determined that they have no liability as long as all amounts received from the Borrower were accurately recorded because the Borrowers are liable for the taxes and insurance on their real property.  In cases where a claimant asserted that it was owed a refund, the Trust looked at (1) the escrow statement issued to the claimant to determine if there was a refund due, (2) the history of the loan to determine if a check was issued for the refund and (3) the internal account notes to determine if there were discussions with the claimant regarding an escrow refund not being received, and found that any refunds due were previously paid.  Moreover, to the extent that the Debtors' books and records indicated that the issues asserted by a claimant occurred after the Debtors ceased servicing the underlying loan, the Trust concluded that the Debtors had no liability for the claim.  See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as an Escrow Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:
  • Loan Payment History;
  • Internal Servicing Notes;
  • Note and riders to the Note, if applicable;
  • Mortgage/Deed of Trust;
  • Debtors' written communications to the claimant;
  • Escrow Statement;
  • Loan Modification Agreement, if applicable; or
  • Other documents that are relevant to the reconciliation of the claim.

(v) ***Wrongful Foreclosure***.  This category includes claims based, either directly or indirectly, on allegations of wrongful foreclosure by the Debtors (the "Wrongful Foreclosure Claims").  To assess the validity of these claims, the Trust examined the Debtors' books and records to verify that the Debtors foreclosed properly and, where applicable, took the appropriate loss mitigation steps.  Specifically, the Trust reviewed Payment History,

10

Internal Servicing Notes, as well as, where applicable, the claimants' loan modification applications, loan modification approval letters, loan modification denial letters, compliance with loan modifications (trial and/or permanent), compliance with any other payment plans (forbearance and repayment), short sale applications and history, investor guidelines and/or direction, breach letters, and/or foreclosure related documents. Where a claimant asserted that he or she did not execute the mortgage note, the Trust also examined Internal Servicing Notes to determine whether any previous identity theft claims were alleged, and compared the signatures on other executed documents in the claimant's file, as well as examining the Loan Payment History and any other information in the Debtors' possession including tax records reflecting whether the claimant deducted interest on the mortgage. Moreover, where a Wrongful Foreclosure Claim was based on issues related to a short sale, the Trust further reviewed the Debtors' records to determine whether a short sale approval had been requested, and, if so and if such request was denied, whether the reason for denial was proper.[6] See Horst Decl. at ¶ 7(v). Based on its review, the Trust determined that the Debtors are not liable for the Wrongful Foreclosure Claims. See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as a Wrongful Foreclosure Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Loan Modification Agreement, if applicable;
- Debtors' written communications to Claimant, including the following, if applicable:
  - Denial Letters,
  - Missing Items Letters,
  - Loan Modification Offers,
  - Signed Modification Agreement(s),
  - Breach of Contract Notice, and
  - Trial, Forbearance, or Foreclosure Repayment Plan Letters;
- Escrow Statement, if applicable;
- Pooling and Servicing Agreements, if applicable; or
- Other documents that are relevant to the reconciliation of the claim.

(vi) **_Standing Issues_**. This category includes claims alleging that the Debtors lacked the standing to service, foreclose or otherwise enforce the terms of the claimant's loan (the "Standing Issues Claims"). To assess the validity of these claims, the Trust reviewed the

---

[6.] Appropriate reasons for denying a short sale request include, without limitation, a claimant's failure to submit executed sale contracts, a claimant's failure to obtain approval from second lien holders and/or a claimant's short sale request did not comply with investor requirements.

Debtors' books and records, including the claimant's mortgage or deed of trust, documents relating to chain of ownership, relevant assignments of interests in the loan, Loan Payment History, and Internal Servicing Notes. See Horst Decl. at ¶ 7(vi). Based on its review, the Trust has determined that the Debtors are not liable for the Standing Issues Claims because the Debtors had proper authority to service or foreclose the loan and to enforce the terms of the claimant's loan on behalf of the owner of the loan. See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as a Standing Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Mortgage Assignments;
- Loan Modification Agreement, if applicable;
- Debtors' written communications to Claimant, if applicable; or
- Other documents that are relevant to the reconciliation of the claim.

(vii) ***Credit Reporting Issues***.  This category includes claims that are based, either directly or indirectly, on alleged errors by the Debtors in how they reported the Borrower's loan performance to credit reporting agencies, including claims alleging that the Debtors failed to apply or misapplied mortgage payments resulting in a negative report regarding the Borrower's loan performance (the "Credit Reporting Issues Claims").  To assess the validity of these claims, the Trust examined the Debtors' books and records for evidence that the alleged payments were made, which included reviewing Loan Payment History, Internal Servicing Notes containing information reported to the credit bureaus, as well as any supporting documentation attached to the Credit Reporting Issues Claims.  See Horst Decl. at ¶ 7(vii).

Based on its review, the Trust has determined that the Debtors are not liable for the Credit Reporting Issues Claims.  See id.  To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as a Credit Reporting Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Loan Modification Agreement, if applicable;
- Debtors' written communications to the claimant, if applicable; or
- Other documents that are relevant to the reconciliation of the claim.

(viii) ***Interest Rates and Fees Collected***.  This category includes claims based on assertions that either (a) interest rates charged to the claimant were incorrect, incorrectly adjusted, or incorrectly not adjusted (the "<u>Interest Rates Claims</u>") or (b) the fees charged to the claimant were incorrect or inappropriate (the "<u>Fees Collected Claims</u>," and together with the Interest Rates Claims, the "<u>Interest Rates and Fees Collected Claims</u>").  To assess the validity of these claims, the Trust reviewed the Debtors' books and records, including the claimant's note, any adjustable rate rider and related documents, notices and/or adjustment letters sent to the claimant, Loan Payment History and fees charged.  <u>See</u> Horst Decl. at ¶ 7(viii).

Based on its review, the Trust has determined that the Debtors are not liable for the Interest Rates and Fees Collected Claims because the interest rates and fees charged were consistent with the governing loan documents, the Debtors' servicing policies, and if applicable, investor guidelines and/or servicing agreements.  <u>See id</u>.  To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as an Interest Rates Claim or a Fees Collected Claim on <u>Exhibit A</u> to the Proposed Order, upon their respective request, with copies of one or more[7] of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Loan Modification Agreement, if applicable;
- Investor guidelines, if applicable;
- Servicing agreement(s), if applicable;
- Debtors' written communications to the claimant, including, if applicable Rate Adjustment Letters; or
- Other documents that are relevant to the reconciliation of the claim.

(ix) ***Loan Modification***.  This category includes claims based on loan modification issues (the "<u>Loan Modification Claims</u>"), which allege, among other things, that the Debtors (a) failed to provide a loan modification,[8] or (b) provided a loan modification, but the claimant believes the terms were not as favorable to the claimant as those to which claimant believed he or she was entitled.  To assess the validity of these claims, the Trust

---

[7]   For the purpose of clarification, the Trust is not suggesting that each of the listed documents is relevant to every Interest Rates Claim or Fees Collected Claim; rather, the Trust will provide the claimant and the Court with copies of only those relevant documents in its possession that substantiate the stated reason(s) for disallowance.

[8.]   As a regular part of the Debtors' business practices, the Debtors offered mortgage loan modifications to Borrowers in financial distress, pursuant to certain guidelines established by the investors ("<u>Traditional Modifications</u>").  The Home Affordable Modification Program ("<u>HAMP</u>") is an administrative program that was implemented in April 2009 by the United States Treasury Department to help eligible homeowners with loan modifications on their home mortgage debt.  HAMP provided the Debtors with an additional type of loan modification (a "<u>HAMP Modification</u>") for assisting eligible Borrowers experiencing financial distress.

examined the Debtors' books and records to verify that the Debtors followed the applicable investor guidelines and policies regarding loan modifications. Specifically, the Trust reviewed Internal Servicing Notes, Loan Payment History, and, where applicable, loan modification agreements, loan modification applications, loan modification denial letters, loan modification approval letters, the claimant's compliance with modifications (trial and/or permanent) and any instructions or guidelines provided by the investor for the claimant's loan. See Horst Decl. at ¶ 7(ix).

Based on its review, the Trust determined that the Debtors are not liable for the Loan Modification Claims because: (a) in cases where a loan modification request was denied, the Debtors complied with the applicable investor guidelines and policies governing the loan modification process; and (b) in the cases where the claimant disputes the terms of his or her loan modification, the Trust verified that (i) the claimant agreed to the terms by executing the underlying agreement, and (ii) the Debtors administered or serviced the loan modification in accordance with the governing loan documents, the Debtors' servicing policies, and if applicable, investor guidelines and/or servicing agreements. See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as a Loan Modification Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Loan Modification Agreement, if applicable;
- Investor guidelines, if applicable;
- Servicing agreement(s), if applicable;
- Workout Packages;
- Debtors' written communications to Claimant, including the following, if applicable:
  - Denial Letters,
  - Missing Items Letters,
  - Loan Modification Offers,
  - Signed Mod Agreement(s),
  - Breach of Contract Notice(s), and
  - Trial, Forbearance, or Foreclosure Repayment Plan Letters;
- Escrow Statement; or
- Other documents that are relevant to the reconciliation of the claim.

(x) ***Wrong Debtor***. This category includes claims against one or more Debtors as the obligor when such claims are properly asserted, if at all, against another Debtor in the Chapter 11 Cases (the "Wrong Debtor Claims"). To assess the validity of the Wrong Debtor Claims, the Trust reviewed the Debtors' books and records. See Horst Decl. at ¶ 7(x). Based on its review, the Trust determined that the Debtors are not liable for the Wrong Debtor

14

Claims because the alleged Debtors that are subject to the claims were not in contractual privity with the claimants.  See id.[9]  The documents reviewed by the Trust in reaching this determination are the same documents that support the other applicable bases for the Trust's objection to each Wrong Debtor Claim.

(xi) ***HELOC Suspension***.  This category includes claims based on assertions that the Debtors improperly suspended advances on the claimant's home equity line of credit agreement (the "HELOC Suspension Claims").  To assess the validity of these claims, the Trust examined the Debtors' books and records to verify the events and circumstances preceding the suspension of credit.  Specifically, the Trust reviewed Internal Servicing Notes, Loan Payment History, letters between the Debtors and the claimant, documented correspondence between the Debtors and the investors, the executed note and mortgage/deed of trust, and the proofs of claim themselves.  See Horst Decl. at ¶ 7(xi).

Based on its review, the Trust determined that the Debtors are not liable for the HELOC Suspension Claims because (a) the Debtors acted in accordance with the terms of the home equity line of credit agreements, (b) the claimants failed to provide evidence of damages relating to the suspension, or (c) the Debtors lack the authority to grant the claimants' requests to reinstate the home equity line of credit agreements or modify their terms as the Debtors no longer service the accounts.  See id.  To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as a HELOC Suspension Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Debtors' written communications to the claimant; and
- Other documents that are relevant to the reconciliation of the claim.

21.    To prevent the claimants that filed the No Liability Borrower Claims from receiving improper recoveries to the detriment of other creditors, the Trust requests that the Court disallow and expunge in their entirety each of the No Liability Borrower Claims.

---

[9]    Nevertheless, if a Wrong Debtor Claim is not expunged as a result of this Objection, the Trust reserves the right to redesignate the claim against the correct Debtor entity.

## NOTICE

22.     The Trust has served notice of this Objection in accordance with the Case

Management Procedures entered on May 23, 2012 [Docket No. 141] and the Procedures Order.

The Trust submits that no other or further notice need be provided.

## NO PRIOR REQUEST

23.     No previous request for the relief sought herein as against the holders of

the No Liability Borrower Claims has been made by the Trust to this or any other court.

## CONCLUSION

WHEREFORE, the Trust respectfully requests that the Court enter an order

substantially in the form of the Proposed Order granting the relief requested herein and granting

such other relief as is just and proper.

Dated:  April 22, 2014
         New York, New York

                                         /s/ Norman S. Rosenbaum
                                        Gary S. Lee
                                        Norman S. Rosenbaum
                                        Jordan A. Wishnew
                                        Jonathan M. Petts
                                        MORRISON & FOERSTER LLP
                                        1290 Avenue of the Americas
                                        New York, New York 10104
                                        Telephone:  (212) 468-8000
                                        Facsimile:  (212) 468-7900

                                        *Counsel for The ResCap Borrower
                                        Claims Trust*

16

## Exhibit 1

**Horst Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------- )
                                                          )
In re:                                                    )      Case No. 12-12020 (MG)
                                                          )
RESIDENTIAL CAPITAL, LLC, et al.,                         )      Chapter 11
                                                          )
                                        Debtors.          )      Jointly Administered
                                                          )
-------------------------------------------------------------------------- )

### DECLARATION OF DEANNA HORST IN SUPPORT OF
### RESCAP BORROWER CLAIMS TRUST'S SIXTY-SECOND OMNIBUS
### OBJECTION TO CLAIMS (NO LIABILITY BORROWER CLAIMS)

I, Deanna Horst, hereby declare as follows:

        1.      I am the Chief Claims Officer for The ResCap Liquidating Trust (the

"Liquidating Trust"),[1] and I previously served as Chief Claims Officer for Residential Capital,

LLC and its debtor affiliates ("ResCap"), a limited liability company organized under the laws of

the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11

Cases (collectively, the "Debtors").  I have been employed by affiliates of ResCap since August

of 2001. In June 2012, I became Senior Director of Claims Management for ResCap and in

October of 2013, I became the Chief Claims Officer.  I began my association with ResCap in

2001 as the Director, Responsible Lending Manager, charged with managing the Debtors'

responsible lending on-site due diligence program.  In 2002, I became the Director of Quality

Asset Management, managing Client Repurchase, Quality Assurance and Compliance—a

position I held until 2006, at which time I became the Vice President of the Credit Risk Group,

managing Correspondent and Broker approval and monitoring.  In 2011, I became the Vice

President, Business Risk and Controls, and supported GMAC Mortgage, LLC and Ally Bank in

---

[1]    The Liquidating Trust and the Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among of things, provides the Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Trust in performing its obligations.

this role.  In my current position, I am responsible for Claims Management and Reconciliation

and Client Recovery.  I am authorized to submit this declaration (the "Declaration") in support of

the *ResCap Borrower Claims Trust's Sixty-Second Omnibus Objection to Claims (No Liability*

*Borrower Claims)* (the "Objection").[2]

2.      Except as otherwise indicated, all facts set forth in this Declaration are

based upon my personal knowledge of the Debtors' operations and finances, information learned

from my review of relevant documents and information I have received through my discussions

with other members of the Debtors' management or other former employees of the Debtors, the

Debtors', the Liquidating Trust's and the Trust's professionals and consultants, and/or Kurtzman

Carson Consultants LLC ("KCC"), the Debtors' noticing and claims agent.  If I were called upon

to testify, I could and would testify competently to the facts set forth in the Objection on that

basis.

3.      In my capacity as Chief Claims Officer, I am intimately familiar with the

claims reconciliation process in these Chapter 11 Cases.  Except as otherwise indicated, all

statements in this Declaration are based upon my familiarity with the Debtors' books and

records, the Debtors' schedules of assets and liabilities and statements of financial affairs filed in

these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims,

and/or my review of relevant documents.  I or my designee at my direction have reviewed and

analyzed the proof of claim forms and supporting documentation, if any, filed by the claimants

listed on Exhibit A annexed to the Proposed Order.  Since the Plan became effective and the

Trust was established, I, along with other members of the Liquidating Trust's management or

other employees of the Liquidating Trust have consulted with the Trust to continue the claims

---

[2]    Defined terms used but not defined herein shall have the meanings ascribed to such terms as set forth in the
Objection.

reconciliation process, analyze claims, and determine the appropriate treatment of the same.  In connection with such review and analysis, where applicable, I or the Liquidating Trust personnel under my supervision, and their professional advisors have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Debtors' books and records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the Claims Register maintained in the Debtors' Chapter 11 Cases.

4.    Under my supervision, considerable resources and time have been expended to ensure a high level of diligence in reviewing and reconciling the proofs of claim filed in these Chapter 11 Cases.  The Liquidating Trust, in support of the Trust, diligently evaluated any information provided by the claimants who filed the No Liability Borrower Claims, listed on Exhibit A to the Proposed Order.  In accordance with the Borrower Claim Procedures, the Debtors previously contacted those Borrowers who filed the No Liability Borrower Claims whose claims were filed with insufficient or no supporting documentation and requested that they provide additional information so that the Debtors could reconcile such claimants' filed claims with the Debtors' books and records.  Beginning in May of 2013, the Debtors sent Request Letters, substantially in the form as those attached at Exhibit 3 to the Objection, to the applicable Borrowers requesting additional documentation in support of their respective No Liability Borrower Claims.  The Borrowers who received the Request Letters either failed to respond to the Debtors' requests or failed to provide sufficient information to establish a basis for liability.

5.    At my direction and with my oversight, the Liquidating Trust, in support of the Trust, thoroughly reviewed the No Liability Borrower Claims listed under the heading

3

*"Claims to be Disallowed and Expunged"* on <u>Exhibit A</u> to the Proposed Order, together with information contained within the Debtors' books and records.

6.    These efforts led to the conclusion and belief that there is no present liability due and owing to such claimants and the specific objections to the allowance of such claims are set forth on <u>Exhibit A</u> to the Proposed Order in the column titled *"Reason(s) for Disallowance."*  The explanations for the requested disallowance of each claim set forth under the heading titled *"No Liability Summaries"* are incorporated by reference into this Declaration as if fully set forth herein.

7.    In general, the Trust's objection to each No Liability Borrower Claim falls under one or more of the following eleven categories:

(i) ***General No Liability***.  This category includes claims:
- relating to requests to reduce or forgive outstanding loan balances or to reduce interest rates;
- asserting that a Debtor is responsible for liabilities of non-Debtor entities;
- for which the claimants have, subsequent to filing the claims, admitted to the Debtors or Special Counsel that the Debtors have no liability;
- that the claimants are estopped from asserting or lack standing to assert based on the claimants' prior bankruptcy cases; or
- that otherwise do not constitute a valid obligation of the Debtors (collectively, the "<u>General No Liability Claims</u>").

To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including (a) the claimant's transaction history showing the payments the claimant has made and the Debtors' application of those payments to principal, interest, fees, and escrows, as applicable (the "<u>Loan Payment History</u>"), (b) the Debtors' records tracking the history of the servicing of the claimant's loan, including but not limited to documenting instances of i) communication with the claimant, ii) letters and notices sent by the Debtors to the claimant, and iii) the Debtors' efforts to foreclose, conduct loss mitigation efforts, inspect properties, pay taxes and insurance on behalf of the claimant, and other standard servicing activity (collectively, the "<u>Internal Servicing Notes</u>"), and (c) other records that are specifically identified in the Objection.  <u>See</u> Objection at p. 8.  Based on this review, the General No Liability Claims are not valid liabilities of the Debtors.

(ii) ***General Servicing Issues***.  This category includes claims based on general servicing issues, including assertions that a Debtor misapplied mortgage payments, provided incorrect information or reporting to the claimant, made improper collection calls, failed to release a lien on a timely basis, failed to respond to Qualified Written Requests, wrongfully transferred servicing or wrongfully sold the claimant's loan (the "General Servicing Issues Claims").  To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the Internal Servicing Notes, Loan Payment History, letters between the Debtors and the applicable Borrower(s), executed mortgage notes and deeds of trust, and other relevant documents that are specifically identified in the Objection.  See Objection at p. 9.

Based on this review, the General Servicing Issues Claims are not valid obligations of the Debtors because: (a) the alleged events involving General Servicing Issues never took place; (b) the Debtor remedied the alleged error or mishandling, and as a result, the Claimant did not incur any damages, or failed to provide evidence of damages; and/or (c) the Debtor acted properly in servicing the loan, in accordance with the Debtor's standard policies and procedures and the terms of the executed note and deed of trust.

(iii) ***Origination Issues***.  This category includes claims based on loan origination issues, which include, without limitation, claims relating to disputes regarding the loan application and closing process, disclosures, loan terms, rights of rescission or a purportedly defective title exam (the "Origination Issues Claims").  To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the claimants' executed mortgage notes and other documents that are specifically identified in the Objection, see Objection at p. 9, to determine whether any Debtor was involved in the origination of the applicable loans.

Based on this review and the Trust's review of applicable state and federal law, the Origination Issues Claims are not valid liabilities of the Debtors because no Debtor entity was involved in the origination of the applicable loans and it is my understanding that vicarious liability cannot be imputed to any Debtor in its capacity as servicer or assignee of the loans.

(iv) ***Escrow Issues***.  This category includes claims based on the alleged improper application or calculation of escrow amounts (the "Escrow Issues Claims").  To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the Debtors' escrow receipts and payments, the annual escrow analysis sent to Borrowers, and any applicable Internal Servicing Notes and written communication between the Debtors and the applicable Borrower(s) as well as other documents that are specifically identified in the Objection. See Objection at pp. 10.

5

Based on this review, the Escrow Issues Claims are not valid liabilities of the Debtors.  In cases where a claimant asserted that the mortgage payments increased significantly to cover an escrow shortfall, the mortgage payments were correctly calculated and all payments received were correctly applied.  In cases where a claimant asserted that the escrow collected was insufficient to cover the property taxes and insurance, the Trust reviewed the escrow statements issued to the claimant, which outlined the amounts paid that year compared to what was estimated, as well as Internal Servicing Notes to the extent that there was an escrow account added to the loan, and determined that the Debtors have no liability as long as all amounts received from the Borrower were accurately recorded because the Borrowers are liable for the taxes and insurance on their real property.  In cases where a claimant asserted that it was owed a refund, the Trust looked at (1) the escrow statement issued to the claimant to determine if there was a refund due, (2) the history of the loan to determine if a check was issued for the refund, and (3) the internal account notes to determine if there were discussions with the claimant regarding an escrow refund not being received, and found that any refunds due were previously paid.  Moreover, to the extent that the Debtors' books and records indicated that the issues asserted by a claimant occurred after the Debtors ceased servicing the underlying loan, the Debtors had no liability for the claim.

(v)    ***Wrongful Foreclosure***.  This category includes claims based, either directly or indirectly, on allegations of wrongful foreclosure by the Debtors (the "Wrongful Foreclosure Claims").  To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, to verify that the Debtors foreclosed properly and, where applicable, took the appropriate loss mitigation steps.  Specifically, the Trust reviewed Payment History, Internal Servicing Notes, as well as, where applicable, the claimants' loan modification applications, loan modification approval letters, loan modification denial letters, compliance with loan modifications (trial and/or permanent), compliance with any other payment plans (forbearance and repayment), short sale applications and history, investor guidelines and/or direction, breach letters, and/or foreclosure related documents.  Where a claimant asserted that he or she did not execute the mortgage note, the Trust also examined Internal Servicing Notes to determine whether any previous identity theft claims were alleged, and compared the signatures on other executed documents in the claimant's file, as well as examining the Loan Payment History and any other information in the Debtors' possession including tax records reflecting whether the claimant deducted interest on the mortgage.  Moreover, where a Wrongful Foreclosure Claim was based on issues related to a short sale, the Trust further reviewed the Debtors' records to determine whether a short sale approval had been requested, and, if so and if such request was denied, whether the reason for denial was proper.[3]  Based on this review, the Wrongful Foreclosure Claims are not valid liabilities of the Debtors.

---

[3]    Appropriate reasons for denying a short sale request include, without limitation, a claimant's failure to submit executed sale contracts, a claimant's failure to obtain approval from second lien holders and/or a claimant's short sale request did not comply with investor requirements.

ny-1138802

(vi) ***Standing Issues***.  This category includes claims alleging that the Debtors lacked standing to service, foreclose or otherwise enforce the terms of the claimant's loan (the "Standing Issues Claims").  To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the claimant's mortgage or deed of trust, documents relating to chain of ownership, relevant assignments of interests in the loan, Loan Payment History, and Internal Servicing Notes.  Based on this review, the Standing Issues Claims are not valid liabilities of the Debtors because the Debtors had proper authority to service or foreclose the loan and to enforce the terms of the claimant's loan on behalf of the owner of the loan.

(vii) ***Credit Reporting Issues***.  This category includes claims that are based, either directly or indirectly, on alleged errors by the Debtors in how they reported the Borrower's loan performance to credit reporting agencies, including claims alleging that the Debtors failed to apply or misapplied mortgage payments resulting in a negative report regarding the Borrower's loan performance (the "Credit Reporting Issues Claims").  To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, for evidence that the alleged payments were made, which included reviewing Loan Payment History, Internal Servicing Notes containing information reported to the credit bureaus, as well as any supporting documentation attached to the Credit Reporting Issues Claims, and other documents specifically identified in the Objection. See Objection at p. 12.  Based on this review, the Credit Reporting Issues Claims are not valid liabilities of the Debtors.

(viii) ***Interest Rates and Fees Collected***.  This category includes claims based on assertions that either (a) interest rates charged to the claimant were incorrect, incorrectly adjusted, or incorrectly not adjusted (the "Interest Rates Claims") or (b) the fees charged to the claimant were incorrect or inappropriate (the "Fees Collected," and together with the Interest Rates Claims, the "Interest Rates and Fees Collected Claims").  To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the claimant's note, any adjustable rate rider and related documents, notices and/or adjustment letters sent to the claimant, Loan Payment History and fees charged, and other documents that are specifically identified in the Objection. See Objection at p. 13. Based on this review, the Interest Rates and Fees Collected Claims are not valid liabilities of the Debtors because the interest rates and fees charged were consistent with the governing loan documents, the Debtors' servicing policies, and if applicable, investor guidelines and/or servicing agreements.

(ix) ***Loan Modification***. This category includes claims based on loan modification issues (the "Loan Modification Claims"), which allege, among other things, that the Debtors (a)

failed to provide a loan modification,[4] or (b) provided a loan modification, but the claimant believes the terms were not as favorable to the claimant as those to which claimant believed he or she was entitled.  To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, to verify that the Debtors followed the applicable investor guidelines and policies regarding loan modifications.  Specifically, the Trust reviewed Internal Servicing Notes, Loan Payment History, and, where applicable, loan modification agreements, loan modification applications, loan modification denial letters, loan modification approval letters, the claimant's compliance with modifications (trial and/or permanent) and any instructions or guidelines provided by the investor for the claimant's loan.

Based on this review, the Loan Modification Claims are not valid liabilities of the Debtors because: (a) in cases where a loan modification request was denied, the Debtors complied with the applicable investor guidelines and policies governing the loan modification process; and (b) in the cases where the claimant disputes the terms of his or her loan modification, the Trust verified that (i) the claimant agreed to the terms by executing the underlying agreement, and (ii) the Debtors administered or serviced the loan modification in accordance with the governing loan documents, the Debtors' servicing policies, and if applicable, investor guidelines and/or servicing agreements.

(x) ***Wrong Debtor***.  This category includes claims against one or more Debtors as the obligor when such claims are properly asserted, if at all, against another Debtor in the Chapter 11 Cases (the "Wrong Debtor Claims").  To assess the validity of the Wrong Debtor Claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records.  Based on this review, the Wrong Debtor Claims are not valid liabilities of the Debtors because the alleged Debtors that are subject to the claims were not in contractual privity with the claimants.  The documents that were reviewed in reaching this determination are the same documents that support the other applicable bases for the Trust's objection to each Wrong Debtor Claim.

(xi) ***HELOC Suspension***.  This category includes claims based on assertions that the Debtors improperly suspended advances on the claimant's home equity line of credit agreement (the "HELOC Suspension Claims").  To assess the validity of these claims, the Liquidating Trust, in support of the Trust, examined the Debtors' books and records, including Internal Servicing Notes, Loan Payment History, letters between the Debtors and the claimant, documented correspondence between the Debtors and the investors, the executed note and mortgage/deed of trust, and the proofs of claim themselves.  See Objection at p. 15.

---

4    As a regular part of the Debtors' business practices, the Debtors offered mortgage loan modifications to Borrowers in financial distress, pursuant to certain guidelines established by the investors ("Traditional Modifications").  The Home Affordable Modification Program ("HAMP") is an administrative program that was implemented in April 2009 by the United States Treasury Department to help eligible homeowners with loan modifications on their home mortgage debt.  HAMP provided the Debtors with an additional type of loan modification (a "HAMP Modification") for assisting eligible Borrowers experiencing financial distress.

8

Based on this review, the HELOC Suspension Claims are not valid liabilities of the Debtors because: (a) the Debtors acted in accordance with the terms of the home equity line of credit agreements, (b) the claimants failed to provide evidence of damages relating to the suspension, or (c) the Debtors lack the authority to grant the claimants' requests to reinstate the home equity line of credit agreements or modify their terms as the Debtors no longer service the accounts.

8.      If the No Liability Borrower Claims are not disallowed and expunged, the parties asserting such claims may potentially receive an improper distribution on account of the asserted liabilities to the detriment of other claimants.

9.      Before filing this Objection, to the best of my knowledge, the Trust fully complied with all applicable provisions of the Borrower Claim Procedures set forth in the Procedures Order.

10.     Accordingly, based upon this review, and for the reasons set forth in the Objection and Exhibit A to the Proposed Order, I have determined that each No Liability Borrower Claim that is the subject of the Objection should be accorded the proposed treatment described in the Objection.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  April 22, 2014

                                         /s/ Deanna Horst
                                        Deanna Horst
                                        Chief Claims Officer for The ResCap
                                        Liquidating Trust

9

## Exhibit 2

### Rosenbaum Declaration

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- )
                                                                 )
In re:                                                           )      Case No. 12-12020 (MG)
                                                                 )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,                         )      Chapter 11
                                                                 )
                                             Debtors.            )      Jointly Administered
                                                                 )
---------------------------------------------------------------- )

**DECLARATION OF NORMAN S. ROSENBAUM IN SUPPORT OF**
**RESCAP BORROWER CLAIMS TRUST'S SIXTY-SECOND OMNIBUS**
<u>**OBJECTION TO CLAIMS (NO LIABILITY BORROWER CLAIMS)**</u>

Norman S. Rosenbaum, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1.      I am a partner in the law firm of Morrison & Foerster LLP ("<u>M&F</u>").  M&F maintains offices for the practice of law, among other locations in the United States and worldwide, at 250 West 55th Street, New York, New York 10019.  I am an attorney duly admitted to practice before this Court and the courts of the State of New York.  By this Court's Order entered on July 16, 2012, M&F was retained as counsel to Residential Capital, LLC and its affiliated debtors (the "<u>Debtors</u>").  Following the Effective Date,[1] M&F has been retained as counsel to the ResCap Borrower Claims Trust (the "<u>Trust</u>").

2.      I submit this declaration in support of the Objection and in compliance with this Court's Order entered March 21, 2013, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1009, 3007 and 9019(b), approving (i) claim objection procedures; (ii) Borrower Claim procedures; (iii) settlement procedures; and (iv) schedule amendment procedures [Docket No. 3294] (the "<u>Claim Objection Procedures Order</u>").

---

[1]      Unless otherwise indicated herein, capitalized terms shall have the meanings ascribed to them in the *ResCap Borrower Claims Trust's Sixty-Second Omnibus Objection to Claims (No Liability Borrower Claims)* (the "<u>Objection</u>")

3.      I have been advised by M&F attorneys under my supervision that in accordance

with the Claim Objection Procedures Order, prior to the filing of the Objection, the Debtors'

personnel reviewed the No Liability Borrower Claims to determine if such claims contradicted

the information in the Debtors' books and records, and thereafter sent a Request Letter to those

claimants whose claims contained insufficient documentation in support of their claims.

4.      To the best of my knowledge, prior to the filing of the Objection, the Debtors and

the Trust have fully complied with all other applicable terms of the Claim Objection Procedures

Order.

        I declare under penalty of perjury that the foregoing is true and correct.
        Executed in New York, New York on April 22, 2014

                                        /s/ Norman S. Rosenbaum
                                        Norman S. Rosenbaum

ny-1138862

## Exhibit 3

**Request Letters**

     MORRISON | FOERSTER

June 21, 2013

**Claim Number:** <mark>XXX</mark>

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case"), and we need additional information from you regarding the claim(s) ("claim") you are asserting against one or more of the Debtors.

**The Information we Need From You Regarding Your Proof of Claim**:
We reviewed a copy of the Proof of Claim form and documents, if any, that you filed in the ResCap bankruptcy case. A copy of your Proof of Claim form is enclosed for your reference. After reviewing the Proof of Claim form and any documents you submitted, we have determined that you did not provide sufficient information to support your "Basis for Claim" and we do not have sufficient information to understand the calculations you used to determine the amount you claim to be owed. In order to evaluate your claim, we need to understand the specific reasons as to why you believe you are owed money or are entitled to other relief from one or more of the Debtors. Please reply using the attached form and provide a written explanation, with supporting documentation, and include a detailed explanation of how you calculated the amount of your claim.

**You Must Respond to this Letter by no Later Than July 22, 2013**:
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than July 22, 2013 with an explanation stating the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases). You **must** provide copies of any and all documentation that you believe supports the basis for and amount of your claim. A form is included with this letter to assist you in responding to our request for additional information.

**Consequences of Failing to Respond**:
If you do not provide the requested information regarding the basis for and amount of your claim and the supporting documentation by July 22, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including that you failed to provide sufficient information and documentation to support your claim. If the Debtors file such an objection and it is successful, your claim may be disallowed and permanently expunged. If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied. Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for and amount of your claim.

**<u>For Those With a Mortgage Loan Originated or Serviced by One of the Debtors</u>**:
If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and any documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**<u>Questions</u>**:
If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney. You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] with general questions (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**<u>You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;</u>**

        **(i)**       **<u>Claims.Management@gmacrescap.com</u>**; or
        **(ii)**      **Residential Capital, LLC**
                 **P.O. Box 385220**
                 **Bloomington, Minnesota 55438**

**<u>Please mark each document you send with the Claim Number referenced above.</u>**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

                        MORRISON | FOERSTER

July 21, 2013

**Claim Number:** <mark>XXX</mark>

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case"), and we need additional information from you regarding the claim(s) ("claim") you are asserting against one or more of the Debtors.

**The Information we Need From You Regarding Your Proof of Claim:**
We reviewed a copy of the Proof of Claim form and documents, if any, that you filed in the ResCap bankruptcy case.  A copy of your Proof of Claim form is enclosed for your reference.  After reviewing the Proof of Claim form and any documents you submitted, we have determined that you did not provide sufficient information regarding the claim amount.  In order to evaluate your claim, we need you to reply using the attached form and provide a specific explanation of how you calculated the amount of your claim and also provide sufficient documentation to support the amount you have claimed.

**You Must Respond to this Letter by no Later Than July 22, 2013:**
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than July 22, 2013 with an explanation stating the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases).  You **must** provide copies of any and all documentation that you believe supports the basis for and amount of your claim.   A form is included with this letter to assist you in responding to our request.

**Consequences of Failing to Respond:**
If you do not provide the requested information regarding the basis for and amount of your claim and the supporting documentation by July 22, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including that you failed to provide sufficient information and documentation to support your claim. If the Debtors file such an objection and it is successful, your claim may be disallowed and permanently expunged.  If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied.  Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for and amount of your claim.

**For Those With a Mortgage Loan Originated or Serviced by One of the Debtors:**

Residential Capital, LLC     P.O. Box 385220  Bloomington, Minnesota  55438

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and any documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Questions**:
If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney. You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] with general questions (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com


**You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;**

       **(i)**      **Claims.Management@gmacrescap.com**; or
       **(ii)**     **Residential Capital, LLC**
                    **P.O. Box 385220**
                    **Bloomington, Minnesota 55438**


**Please mark each document you send with the Claim Number referenced above.**


Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.



MORRISON | FOERSTER

June 21, 2013

**Claim Number:** <mark>XXX</mark>

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case"), and we need additional information from you regarding the claim(s) ("claim") you are asserting against the Debtors.

**The Information we Need From You Regarding Your Proof of Claim**:
We reviewed a copy of the Proof of Claim form and documents that you filed in the ResCap bankruptcy case. A copy of your Proof of Claim form is enclosed for your reference. According to our records, you have filed a lawsuit against one or more of the Debtors. Please reply using the attached form and let us know whether the basis for and amount of the claim contained in the Proof of Claim form are the same or different in any way from the claim you have asserted in your lawsuit against the Debtors. Please ensure that you provide specific detail and support as to the basis for and amount of claim referenced in your Proof of Claim. If your lawsuit has been dismissed or withdrawn, please provide a specific explanation as to why you believe that you are still owed money or entitled to other relief from one or more of the Debtors.

**You Must Respond to this Letter by no Later Than July 22, 2013**:
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than July 22, 2013 with the requested information and an explanation stating the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases). You **must** also provide copies of any and all documentation that you believe supports the basis for and amount of your claim. A form is included with this letter to assist you in responding to our request for additional information.

**Consequences of Failing to Respond**:
If you do not provide the requested information regarding the basis for and amount of your claim and the supporting documentation by July 22, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including that you failed to provide sufficient information and documentation to support your claim. If the Debtors file such an objection and it is successful, your claim may be disallowed and permanently expunged. If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied. Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for and amount of your claim.

Residential Capital, LLC    P.O. Box 385220  Bloomington, Minnesota  55438

**For Those With a Mortgage Loan Originated or Serviced by One of the Debtors**:
If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and any documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Questions**:
If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney.  You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] with general questions (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;**

      **(i)**        **Claims.Management@gmacrescap.com; or**
      **(ii)**       **Residential Capital, LLC**
              **P.O. Box 385220**
              **Bloomington, Minnesota 55438**

**Please mark each document you send with the Claim Number referenced above.**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

    MORRISON | FOERSTER

**Claim Number: XXXX**

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC, and other affiliated debtors and debtors in possession (collectively, the "Debtors"), pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case") and we need additional information from you regarding the claim(s) you are asserting against the Debtors.

**The Information we Need From You Regarding Your Proof of Claim**:
We received and reviewed a copy of the Proof of Claim form filed on your behalf, and noticed that it did not have any supporting documents attached to it.  In order to evaluate your claim, we need to specifically understand why you believe you are owed money or are entitled to other relief from one or more of the Debtors.  Although you may have stated the factual or legal basis for your claim on the first page of the Proof of Claim form, you have not provided any documentation to support this claim.  Therefore, we need you to provide us with documents that support the basis for your asserted claim.  A copy of your Proof of Claim form is enclosed for your reference.

**You Must Respond to this Letter by no Later Than June 24, 2013**:
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than June 24, 2013 with an explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases), and you **must** provide copies of any and all documentation that you believe supports the basis for your claim.   Included with this letter is a form to assist you in responding to our request.

**Consequences of Failing to Respond**:
If you do not provide the supporting documentation by June 24, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including the basis that you failed to provide sufficient information and documentation to support your claim, and your claim may be disallowed and permanently expunged.  If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied.  Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for your claim.

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim(s).

<u>Questions</u>:

If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney.  You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] with questions (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**<u>You must send the requested information and document(s) supporting your claim(s) on or before the date provided in this letter to either:</u>**

        **(i)**     **Claims.Management@gmacrescap.com; or**

        **(ii)**    **Residential Capital, LLC**
               **P.O. Box 385220**
               **Bloomington, Minnesota 55438**

**<u>Please mark each piece of correspondence with the Claim Number referenced above.</u>**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually, and therefore, cannot provide you with legal advice.

 MORRISON | FOERSTER

**Claim Number:**

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case") and we need additional information from you regarding the claims you are asserting against the Debtors.

**The Information we Need From You Regarding Your Proof of Claim**:
We received and reviewed a copy of the Proof of Claim form and document(s), if any, that you filed in the ResCap bankruptcy case.  A copy of your Proof of Claim form is enclosed for your reference.  In the process of reviewing the Proof of Claim form and the document(s), if any, you submitted, we noticed that you left the "Basis for Claim" field on the Proof of Claim form blank, or indicated that the basis for your claim is "unknown".  In order to evaluate your claim, we need to understand why you believe you are owed money or are entitled to other relief from one of the Debtors.

**You Must Respond to this Letter by no Later Than June 17, 2013**:
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than June 17, 2013 with an explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim.   Included with this letter is a form to assist you in responding to our request.

**Consequences of Failing to Respond**:
If you do not provide the basis for your claim and the supporting documentation by June 17, 2013, the Debtors may file a formal objection to your Proof of Claim on, among others, the basis that you failed to provide sufficient information and documentation to support your claim, and your claim may be disallowed and permanently expunged.  If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied.  Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for your claim.

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

<u>**Questions**</u>:
If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney. You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com


**<u>You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;</u>**

>       (i)      **<u>Claims.Management@gmacrescap.com</u>, or**
>       (ii)     **Residential Capital, LLC**
>                **P.O. Box 385220**
>                **Bloomington, Minnesota 55438**


**<u>Please mark each piece of correspondence with the Claim Number referenced above.</u>**



Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

    MORRISON | FOERSTER

Claim Number:

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case") and we need additional information from you regarding the claims you are asserting against the Debtors.

**The Information we Need From You Regarding Your Proof of Claim:**
We received and reviewed a copy of the Proof of Claim form and document(s), if any, that you filed in the ResCap bankruptcy case. A copy of your Proof of Claim form is enclosed for your reference. We are unable to determine from the Proof of Claim form and the document(s), if any, you submitted why you believe you are owed money or other relief from one of the Debtors. In order to evaluate your claim, we need to understand why you believe you are owed money or are entitled to other relief from one of the Debtors.

**You Must Respond to this Letter by no Later Than June 17, 2013:**
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you must respond to this letter by no later than June 17, 2013 with an explanation that states the legal and factual reasons why you believe that one of the Debtors owed you money as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you must provide copies of any and all documentation that you believe supports the basis for your claim. Included with this letter is a form to assist you in responding to our request.

**Consequences of Failing to Respond:**
If you do not provide the requested explanation and supporting documentation by no later than June 17, 2013, the Debtors may file a formal objection to your Proof of Claim, and your claim may be disallowed and permanently expunged. If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied. Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for your claim.

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Note**: The Debtors previously provided notices about their bankruptcy filings and the claim process to current customers and mortgage loan applicants.  You may have received one or more of those notices.  Nothing in those notices and nothing in this letter changes your obligations under your mortgage loan agreement (i.e. if you were obligated to make, or were making, mortgage loan payments before the ResCap bankruptcy case commenced, you should continue to make mortgage loan payments).  However, if the only reason you filed a Proof of Claim was because you received a notice from the Debtors <u>and</u> you do not believe that ResCap, GMAC Mortgage or any of the other Debtors owes you money or other relief, please reply to us via email or letter stating so.  This information is necessary to evaluate your claim.

<u>**Questions:**</u>
If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney. You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

<u>**You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;**</u>

      (i)        **Claims.Management@gmacrescap.com, or**
      (ii)       **Residential Capital, LLC**
                   **P.O. Box 385220**
                   **Bloomington, Minnesota 55438**

<u>**Please mark each piece of correspondence with the Claim Number referenced above.**</u>

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

**Exhibit 4**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

| | ) | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

---------------------------------------------------------------

## ORDER GRANTING RESCAP BORROWER CLAIMS TRUST'S SIXTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER CLAIMS)

Upon the sixty-second omnibus objection to claims (the "<u>Objection</u>")[1] of the

ResCap Borrower Claims Trust (the "<u>Trust</u>"), as successor in interest to Residential Capital, LLC

and its affiliated debtors in the above-referenced Chapter 11 Cases (collectively, the "<u>Debtors</u>")

with respect to Borrower Claims, seeking entry of an order, pursuant to section 502(b) of title 11

of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 3007(d) of the Federal Rules of

Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus

objections to proofs of claim [Docket No. 3294] (the "<u>Procedures Order</u>"), disallowing and

expunging the No Liability Borrower Claims, all as more fully described in the Objection; and it

appearing that this Court has jurisdiction to consider the Objection pursuant to 28 U.S.C. §§ 157

and 1334; and consideration of the Objection and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Objection having been provided,

and it appearing that no other or further notice need be provided; upon consideration of the

Objection and the Declaration of Deanna Horst and the Declaration of Norman S. Rosenbaum,

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

annexed to the Objection as Exhibits 1-2, respectively; and the Court having found and

determined that the relief sought in the Objection is in the best interests of the Trust, the Trust's

constituents, the Debtors, and other parties in interest and that the legal and factual bases set

forth in the Objection establish just cause for the relief granted herein; and the Court having

determined that the Objection complies with the Borrower Claim Procedures set forth in the

Procedures Order; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted to the extent

provided herein; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the claims

listed on Exhibit A annexed hereto under the heading "Claims to be Disallowed and Expunged"

(collectively, the "No Liability Borrower Claims") are disallowed and expunged with prejudice;

and it is further

ORDERED that Kurtzman Carson Consultants LLC, the Debtors' claims and

noticing agent, is directed to disallow and expunge the No Liability Borrower Claims identified

on the schedule attached as Exhibit A hereto so that such claims are no longer maintained on the

Claims Register; and it is further

ORDERED that the Trust is authorized and empowered to take all actions as may

be necessary and appropriate to implement the terms of this Order; and it is further

ORDERED that notice of the Objection, as provided therein, shall be deemed

good and sufficient notice of such objection, and the requirements of Bankruptcy Rule 3007(a),

the Case Management Procedures entered on May 23, 2012 [Docket No. 141], the Procedures

Order, and the Local Bankruptcy Rules of this Court are satisfied by such notice; and it is further

ny-1138859

ORDERED that this Order has no res judicata, estoppel, or other effect on the validity, allowance, or disallowance of any claim not listed on <u>Exhibit A</u> annexed to this Order, and the Trust's and any party in interest's right to object on any basis are expressly reserved with respect to any such claim not listed on <u>Exhibit A</u> annexed hereto; and it is further

ORDERED that this Order shall be a final order with respect to each of the No Liability Borrower Claims identified on <u>Exhibit A</u>, annexed hereto, as if each such No Liability Borrower Claim had been individually objected to; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated:_____, 2014
        New York, New York

_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

ny-1138859

**Exhibit A**

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-SECOND OMNIBUS OBJECTION - NO LIABILITY (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Adam Diers 667 Empire Ave West Babylon, NY 11704 | 1362 | 10/17/2012 | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Interest Rates and Fees Collected, Origination Issues, General Servicing Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Company purchased the loan from First West Mortgage Bankers Ltd. on or about June 1, 2006, and Debtor transferred its interest in the loan to Etrade Bank on or about July 26, 2006. Debtor Homecoming Financial serviced the loan from June 1, 2006 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. | 8-9, 9-10, 13 |
| | | | | Administrative Secured | | | | | |
| | | | | Secured | | | | Claimant asserts claims for "charges to account without any reason, refinance charges." In a letter response to Debtor's request for more information in support of claim, Claimant asserts he was "charged a lot of interest, did not receive statements and my loan was transferred to another company." Debtors have no liability for assertion of improper fees and interest charged because all fees and interest charged to Claimant's account were assessed in accordance with Debtor's servicing policies, the note, and section 7 of the mortgage executed by Claimant. Debtor's records show Claimant's account was charged a total of $530.44 for late fees and property valuation fees between July 2009 and May 2013, all of which were appropriately charged to Claimant because the Claimant was past due on his account. Debtor's records show claimant first became past due by failing to make the payment required on May 1, 2009. The next payment received was not until Oct 14, 2009. Thereafter, claimant remained past due by at least 5 months of payments on his account. | |
| | | | | Priority | | | | | |
| | | | | $81,611.77 General Unsecured | | | | Debtors have no liability for "refinance charges" assessed at origination because Debtors were not involved with the origination of the loan.  The loan was originated by First West Mortgage Bankers, a non-Debtor entity. Debtors have no liability for the assertion that Debtor failed to send account statements to Claimant because Debtor's records indicate Debtor sent account statements to Claimant by mail on a monthly basis. Debtors have no liability for claimant's assertion that their loan was "transferred to another company" because i) there is no evidence that Claimant was damaged by the transfer of servicing to Ocwen in February 2013, and ii) Debtor provided Claimant notice of of the servicing transfer within the 15-day window prior to the transfer date as required under section 3500.21 of the Real Estate Settlement Procedures Act. | |
| 2 | Angie Young 7011 W. Voltaire Peoria, AZ 85381 | 4100 | 11/09/2012 | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Loan Modification, Wrongful Foreclosure | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Company, LLC purchased the loan from First National Bank of AZ, on or about January 27, 2006. Debtor transferred its interest and the loan was securitized on or about February 1, 2006, where JP Morgan Chase Bank, NA was appointed as Trustee. Debtor GMAC Mortgage, LLC serviced the loan from March 14, 2006 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. | 10-11, 13-14 |
| | | | | Administrative Secured | | | | Claimant's allegation that Debtor improperly foreclosed on March 9th, 2012 when the foreclose sale date was June 24, 2012 is incorrect. Debtor referred the account for foreclosure to Executive Trustee Services LLC on March 9th, 2012, and the foreclosure sale occurred on 6/25/12. Claimant's loan was in default and due for 9/1/11 payment at the time of foreclosure. | |
| | | | | Secured | | | | | |
| | | | | Priority | | | | Claimant's allegation that Debtor improperly denied Claimant a loan modification is false. Debtor's records show Claimant applied for modification on several occasions between December 2011 and June 2012. In each instance, Debtor appropriately denied Claimant for HAMP and Traditional Modifications in accordance with applicable investor guidelines because i) all loan modification packages submitted by Claimant were incomplete, and Claimant failed to provide the missing items to Debtor as requested by Debtor, and ii) with respect to HAMP, Claimant was ineligible because Claimant's property was non-owner occupied and was subject to code violations issued by the county. In each instance, Debtor's records show Debtor issued timely missing items letters and denial letters and claimant did not provide required information to Debtor. | |
| | | | | $136,000.00 General Unsecured | | | | | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-SECOND OMNIBUS OBJECTION - NO LIABILITY (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Claims to be Disallowed and Expunged | | | | |
| 3 | Brian Lee Christianson 8316 W Woodward Drive Lakewood, CO 80227 | 4597 | 11/13/2012 | | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Origination Issues, Loan modification , Wrongful foreclosure | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor GMAC Mortgage, LLC purchased the loan from Megastar Financial Corp on or about August 20, 2009, and Debtor transferred its interest in the loan on or about October 31, 2009 to GNMA.  Debtor GMAC Mortgage LLC serviced the loan from May 21, 2004 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. | 9, 10-11, 13-14 |
| | | | | | Administrative Secured | | | | | |
| | | | | | Secured | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan.  The loan was originated by Megastar Financial Corp on August 20, 2009. In addition, Debtor has confirmed that there is no assignee liability that would extend to Debtor on these claims. Claimant cites to California Business and Professions Code §17200, however this property is located in Colorado, so the cited California statute is not applicable. | |
| | | | | | Priority | | | | | |
| | | | | UNLIQUIDATED | General Unsecured | | | Debtors have no liability for the loan modification claims because Debtor handled all aspects of the loan modification process appropriately. Debtor's records show that Claimant was approved for a traditional trial modification on 11/4/2011.  Claimant did not return signed documents or payment which resulted in a denial letter being sent on 12/19/2011. A new workout package was received on 2/20/2012, which was denied for traditional modification on 3/8/2012 for insufficient income and denied for HAMP modification on 3/13/2012 because the payment could not be lowered sufficiently within program guidelines.  Claimant sent another complete package on 6/22/2012.  Claimant was approved for traditional trial modification on 7/20/2012. Claimant completed the trial successfully.  A permanent traditional loan modification was completed on 11/5/2012, bringing the loan current. | |
| | | | | | | | | Debtors have no liability for wrongful foreclosure claims because the loan was delinquent and due for the July 1, 2007 payment, foreclosure proceedings commenced on December 27, 2011 due to Claimant not taking the trial plan referenced above.  On 1/10/2012, the foreclosure sale was scheduled for 5/9/2012: however, the Claimant contested the foreclosure hearing, and the sale was postponed pending the results of the hearing. On 7/6/2012, the foreclosure was placed on hold to allow time for the traditional trial modification. According to the Debtors' books and records, on 11/6/2012, the foreclosure attorney was notified to dismiss the foreclosure due to the completed permanent modification, and on 12/11/12 a motion to dismiss was filed and subsequently granted, dismissing the foreclosure action. | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-SECOND OMNIBUS OBJECTION - NO LIABILITY OBJECTION (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|
| 4 | Brock Williams 940 College Drive San Jose , CA 95128 | 3699 | 11/08/2012 | Administrative Priority<br><br>Administrative Secured<br><br>$176,383.36 Secured<br><br>Priority<br><br>General Unsecured | Residential Capital, LLC | 12-12020 | Standing Issues, Loan Modification, General Servicing Issues | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Company, LLC purchased the loan from American Mortgage Express Corp on or about January 24, 2006, and transferred  its interest when the loan was securitized on or about February 1, 2006, where US Bank, NA was appointed as Trustee.  Debtor Homecomings Financial serviced the loan from February 8, 2006 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts Debtor failed to respond to Qualified Written Requests.  Debtors have no liability for the allegation because Debtor verified that responses to the QWRs were sent on 4/5/2012, 5/11/2012, 6/15/2012, and 6/20/2012.<br><br>The loan was originated by American Mortgage Express Corp on December 27, 2005.  Debtors have no liability for Claimant's lack-of-standing claims because Debtor has verified that the assignment and endorsement chains are complete and valid. Debtor's records show i) the note is endorsed from originator to Residential Funding Corp and from Residential Funding Corp to US Bank, NA, as Trust and, ii) the assignment of mortgage was recorded from MERS, as nominee for originator, to US Bank, NA, as Trustee.<br><br>Debtors have no liability for the loan modification claims because Debtor handled all aspects of the loan modification process appropriately.  Debtor's records show Claimant applied for multiple loan modifications, as listed below.  Claimant received a traditional loan modification on 1/22/10.<br><br>• Package received on 6/4/09. Loan denied 6/18/09 due to not being able to come to an affordable payment based on claimant's income and value of property.<br>• Package was received on 7/17/09. Loan was denied HAMP due to being non-owner occupied on 8/27/09. Claimant was approved for traditional trial plan on 8/31/09. A permanent traditional modification was completed on 1/22/10.<br>• Package was received 4/17/12. Loan was denied HAMP on 4/25/12 and traditional on 4/30/12 due to  non-owner occupied.<br>• Package was received on 5/10/12. Claimant was approved for a HAMP trial plan on  6/1/12, however Claimant called in on 7/18/12 stating the payment setup was not correct and he would send in a new workout package for review.<br>• Package was received on 7/16/12. Loan was denied HAMP on 10/3/12 due to post modification payment not being reduced by at least 10% from the mortgage payment at time of review. The loan was denied traditional modification on 10/8/12 due to insufficient income to support loan modification request.<br>• Package was received on 10/23/12. The loan was denied traditional modification 12/10/12 due to post modification payment not being reduced by at least 10% from the mortgage payment at time of review.  The loan was denied HAMP modification on 2/14/13 because Debtors were not able lower payment enough to make it affordable. | 8-9, 11-12, 13-14 |
| 5 | Claudio & Lauren Scirocco 1950 Paradise Ave Hamden, CT 06518 | 4439 | 11/12/2012 | Administrative Priority<br><br>Administrative Secured<br><br>Secured<br><br>Priority<br><br>UNLIQUIDATED General Unsecured | GMAC Mortgage, LLC | 12-12032 | Origination Issues, Loan Modification | Claimant had two loans that involved Debtor.  Debtor's involvement with the first loan was as originator and servicer of the loan. The first loan was originated on November 21, 2002 (the "2002 Loan") by GMAC Mortgage  and subsequently serviced by Debtor. Debtor's review of the origination file does not show any excessive fees or costs associated with the transaction.  Specifically, a review of the HUD-1 Settlement Statement shows the lender paid Claimant's origination fees, and that Claimant was only required to pay the appraisal, document, title, and closing agent fees, which is consistent with general industry practice.<br><br>Claimant's second loan was a refinance loan on the subject property, and was not originated by any Debtor entity.  The second loan was originated by Ally Bank on April 18, 2012.  Debtors' involvement with Claimant's second loan was limited to Debtors' role as servicer of the loan.  Debtor GMAC Mortgage serviced the second loan from April 18, 2012 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Debtors have no liability for loan modification claims because Debtor handled all aspects of the loan modification process appropriately.  Debtor's records show that Claimant's loan modification allegations all relate to activity on the 2002 loan.  A Loan Modification was denied on 10/07/2009 because Claimant's financial information indicated that Claimant should be able to afford the existing mortgage payments.  A forbearance plan was approved on 10/9/2009 stating Claimant needs to make payments from 11/1/09 to 4/1/10 and the account would be reviewed for loan options (including loan modification) while in the forbearance: the documents were sent to Claimant on 10/14/2009.  The forebearance plan required the borrower to pay $953.16 from 11/01/2009 to 04/01/20120. A review of the loan servicing notes, the borrower did not want the plan and it was subsequently canceled.  Claimant requested a loan modification on 3/25/2010 and was advised by the Debtor that based on the financial information provided they would be denied because the Debt to Income ratio was less than 31%, which indicated that they could afford the mortgage payments on their existing loan. | 9, 13-14 |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-SECOND OMNIBUS OBJECTION - NO LIABILITY (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|
| 6 | Edward M. Rego and Emanuela R. Rego<br>Attorney Jennifer L. Kurrus<br>Merrimack Valley Legal Services, Inc.<br>35 John St, Ste 302<br>Lowell, MA 01852 | 5613 | 11/16/2012 | Administrative Priority<br><br>Administrative Secured<br><br>Secured<br><br>Priority<br><br>$320,000.00 General Unsecured | GMAC Mortgage, LLC | 12-12032 | Wrongful Foreclosure, Loan Modification | Debtors' involvement with Claimants' loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor GMAC Mortgage, LLC purchased the loan from Mid-Coast Mortgage on or about May 31, 1997, and Debtor transferred its interest to Fannie Mae thereafter. Debtor GMAC Mortgage, LLC serviced the loan from May 31, 1997 until servicing transferred to GreenTree on February 1, 2013.<br>Claimants are in litigation with Fannie Mae in a contested eviction, where no Debtor is a party.<br><br>Debtors have no liability for wrongful foreclosure and loan modification claims because Debtor handled all aspects of the loan modification process appropriately. Debtor's records show that the account had been referred initially to foreclosure on March 10, 2007, but the Claimants reinstated on March 30, 2007. The account was referred to foreclosure a second time on September 9, 2007 and was closed November 21, 2007 due to loan modification activity. Claimants entered into a traditional loan modification on December 1, 2007 which brought the account current. Claimants fell behind on payments when the June 1, 2008 payment was not paid on time and the account was referred to foreclosure again on June 5, 2009. Claimants submitted a workout package on June 16, 2009. A HAMP trial modification was set up and Claimants completed the HAMP trial plan on November 10, 2009. Claimants were approved for a permanent HAMP loan modification on April 6, 2010, however it was denied April 29, 2010 due to Claimants' failure to accept the terms of the modification and refusal to execute the loan modification agreement. Claimants sent in loan modification packages on the following dates:<br><br>- July 14, 2010 - This was denied due to the previous HAMP denial. Traditional modification review was to be completed once all missing items were received.<br><br>- August 8, 2010 - Missing items received and package complete. Traditional modification denied August 18, 2010 as it was determined Claimants could not afford payments.<br><br>- October 8, 2010 - HAMP denied again due to previous denial. Traditional modification denied October 15, 2010 for insufficient income.<br><br>Foreclosure sale was set for February 10, 2011. Claimants requested a postponement to try another work out/loan modification review, but the investor (Fannie Mae) did not allow postponements at the time. The foreclosure sale was hold on February 10, 2011, but was later deemed invalid as Claimants filed bankruptcy. The bankruptcy was dismissed on March 14, 2011 and a new sale date was set for May 27, 2011. Claimants contacted Debtor on May 23, 2011 to inquire about a short payoff, and stated that they were receiving a reverse mortgage payoff from another bank. Debtor advised to fax the approval letter for review. Debtor also advised that there would be no guarantee that the foreclosure sale would be postponed. Servicing notes state that Fannie Mae would not pursue a settlement or short payoff as the foreclosure sale was too close. Package was received from Claimants on May 24, 2011 but too close to the sale and denial was sent out May 26, 2011. Property was sold on May 27, 2011. Claimants assert that the modification should have included principal forgiveness; however, the Debtor acted within HAMP and investor guidelines at the time of each loan modification request. Fannie Mae's servicing guide gives the servicer authority to service these loans, including the authority to foreclose on behalf of Fannie Mae, in accordance with the terms of the underlying note(s) and mortgages. | 10-11, 13-14 |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-SECOND OMNIBUS OBJECTION - NO LIABILITY OBJECTION (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Claims to be Disallowed and Expunged | | | |
| 7 | Forman, Mary Kelly and Michael, pro se MICHAEL FORMAN VS GMAC MORTGAGE LLC P.O. Box 43490 Tuscon, AZ 85733 | 1252 | 10/15/2012 | Administrative Priority<br><br>Administrative Secured<br><br>Secured<br><br>Priority<br><br>$780,000.00 General Unsecured | GMAC Mortgage, LLC | 12-12032 | Wrongful Foreclosure, Escrow Issues, Fees Charged | Debtors' involvement with Claimants' loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor GMAC Mortgage, LLC purchased the loan from Nova Financial and Investment Corp. on or about July 21, 2005, and Debtor transferred its interest when the loan was securitized on or about October 1, 2005, where US Bank, NA was appointed as Trustee. Debtor GMAC Mortgage, LLC serviced the loan from January 24, 2007 until servicing transferred to Ocwen on February 16, 2013.<br><br>Claimant states "Breach of Contract - Arizona Superior Court Pima County case #C20108512" as the basis for claim. The causes of action include allegations related to wrongful foreclosure, escrow issues, wrongful charging of fees, and wrongful return and/or application of payments made by Claimant. Debtor's records show a portion of the claim was dismissed on July 23, 2012 , leaving the breach of contract claim and equitable/non-monetary claims. Thereafter, the equitable claims/non-monetary claims were waived as a result of Claimant not opposing Debtor's Motion for Relief from Stay filed in Claimants' bankruptcy case, which was granted on June 11, 2013. Additionally, Claimants have vacated the property. The only remaining claim pertained to the alleged misapplication of payments, which was dismissed by the Court for lack of prosecution on January 3, 2014. Debtors have no liability for the claims that Debtor mishandled certain payments. Debtor's records show on November 5, 2009 Claimants were sent a notice informing them of the escrow shortage of $700.12. Claimants did not pay the shortage and beginning on January 1, 2010, the monthly payments were increased to cover the shortage, which was spread out over 12 months. In January and February of 2010, Claimants sent payments without the increase needed to satisfy the shortage amount. The January check of $2,389.45 was held as unapplied since it was not sufficient to pay the entire payment. When the February check of $2,389.45 was received, a portion of that payment was applied to the January shortage and the full payment was then applied as the January payment, bringing the account due for the February 2010 payment. The remainder of the February payment was applied to principal reduction of the account. Further payments were not received and the loan subsequently went into default and Claimants received a notice of breach in May 2010. The property was sold at a foreclosure sale on October 26, 2010.<br><br>In connection with the litigation, Claimants allege that checks dated 2/28/10, 3/12/10 and 4/7/10, were mailed to Debtor to cure the default. Debtor reviewed its records and could not find any records of those alleged payments. The alleged checks were written against an account not normally used by Claimants for payment of the mortgage debt. Copies of the checks obtained through discovery indicated the checks were never received at a payment center, based on the lack of a "Scan Line" on the check. All checks received at a payment center are first marked with a Scan Line, regardless if the check is applied or returned.<br><br>Additionally, as part of the litigation, bank records were subpoenaed which showed that the account the checks were written against would not have had sufficient funds to honor such checks around the dates allegedly written by Claimants. Therefore, even if Debtor had received the checks, they would have been insufficient to cure the default. | 10-11, 10, 13 |
| 8 | Gabriel Toala-Moreno 636 SW 107th Ave. Pembroke Pines, FL 33025 | 4210 | 11/09/2012 | Administrative Priority<br><br>Administrative Secured<br><br>Secured<br><br>Priority<br><br>UNLIQUIDATED General Unsecured | GMAC Mortgage, LLC | 12-12032 | Wrongful Foreclosure, Loan Modification | This claim includes allegations relating to two different properties.<br><br>Debtors' involvement with Claimant's loan on the St. Augustine property was limited to Debtors' roles as servicer and purchaser of the loan. Debtor GMAC Mortgage, LLC, purchased the loan from USAA Federal Savings Bank on or about August 28, 2007, and transferred its interest in the loan to Fannie Mae on or about October 2007. Debtor GMAC Mortgage, LLC serviced the loan from August 28, 2007 until the foreclosure in 2011.<br><br>Debtors' involvement with Claimant's loan on the Miramar property was limited to Debtors' roles as servicer and purchaser of the loan. Debtor GMAC Mortgage, LLC purchased the loan from USAA Federal Savings Bank on or about June 3, 2004, and transferred its interest in the loan to Fannie Mae on or about August 16, 2004. Debtor GMAC Mortgage, LLC serviced the loan from July 13, 2004 until servicing was transferred to GreenTree Servicing on 02/01/2013.<br><br>Debtors have no liability for allegations of wrongful foreclosure or wrongful denial of a loan modification in connection with the St. Augustine loan because i) Claimant was due for 2/01/2009 at the time of foreclosure referral, and ii) Claimant failed to take the required steps to obtain loan modification or other alternatives to foreclosure. Debtor's records show i) Claimant's loan was appropriately referred to foreclosure on 5/9/2009 and Debtor received Final Judgment of Foreclosure on 7/15/10 in the Circuit Court of St. Johns County, FL. Debtor performed an independent analysis to determine if Claimant was eligible for traditional modification, and on 6/15/11, Debtor sent an unsolicited offer by mail to Claimant for a permanent modification. Claimant never returned the executed modification documents, and as a result, the foreclosure sale was held on 7/29/2011.<br><br>Debtors have no liability for allegations of wrongful foreclosure or wrongful denial of a loan modification in connection with the Miramar loan because Debtor followed all appropriate policies, procedures and applicable guidelines in considering Claimant for loan modification. Debtor's records show Debtor approved a HAMP modification for Claimant on or about 8/31/10, but the co-borrower failed to execute the documents and a modification was not completed on that basis. Subsequently, a second modification was approved and completed on 7/8/11. Debtor's records show that the Claimant was current on the modication as the time of transfer to GreenTree. | 10-11, 13-14 |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-SECOND OMNIBUS OBJECTION - NO LIABILITY (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Claims to be Disallowed and Expunged | | |
| 9 | Godfrey Comrie 20275 NE 2nd Ave L-24 Miami, FL 33179 | 2173 | 11/05/2012 | | Administrative Priority | Residential Capital, LLC | 12-12020 | Loan Modification, Wrongful Foreclosure, Wrong Debtor | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Company, LLC purchased the loan from Pinnacle Direct Funding Corp., on or about January 26, 2006, and transferred its interest when the loan was securitized on or about February 1, 2006, where JP Morgan Chase Bank, NA was appointed as Trustee. Debtor Homecomings Financial serviced the loan from January 26, 2006 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. | 10-11, 13-14, 14-15 |
| | | | | | Administrative Secured | | | | | |
| | | | UNLIQUIDATED Secured | | | | | | Claimant did not assert a basis for liability in the proof of claim. In response to Debtor's letter requesting additional information in support of claim, Claimant states he is a victim of predatory lending in connection with his attempts to modify his loan, which ended in the subject property being lost to foreclosure. | |
| | | | | | Priority | | | | | |
| | | | | | General Unsecured | | | | Debtors have no liability for allegations of improper denial of loan modification because Debtor took all appropriate steps in evaluating the Claimant for a loan modification in accordance with applicable investor guidelines and Debtor's servicing policies and procedures. Debtor approved Claimant for a permanent modification on 11/20/2008, however, Claimant did not make the contribution payment required to execute the modification, and it was denied on 3/13/09. Claimant applied again for modification and it was denied on 11/24/09 due to Claimant not making all of the required trial payments. | |
| | | | | | | | | | Debtors have no liability for the allegation of wrongful foreclosure because i) Claimant was past due at the time of foreclosure sale and Debtor was within its rights to foreclose. Debtor's records show Claimant's account was referred to foreclosure on June 17, 2008 because the the account was due for March through June 2008 payments; and ii) Debtor provided several opportunities for loan modification to prevent foreclosure, but in each instance, Claimant failed to make required contribution or trial payments to obtain modification. Debtor's records show Claimant was advised by the Debtor on 11/30/09 that a payment of $2,316.31 had to be made by 12/3/09 in order to prevent foreclosure sale. Claimant failed to make the required payment to prevent foreclosure. | |
| | | | | | | | | | In addition to the aforementioned reasons for disallowance, this claim does not sit at ResCap but at GMAC Mortgage, LLC. | |
| 10 | Herbert Collins 10745 Tara Village Way Jonesboro, GA 30238 | 3772 | 11/08/2012 | | Administrative Priority | Residential Capital, LLC | 12-12020 | Origination Issues, Loan Modification, General No Liability | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Company, LLC purchased the loan from AmeriTrust Mortgage Company, LLC, on or about August 16, 2005, and transferred its interest and the loan was securitized on or about September 1, 2005, where JP Morgan Chase Bank, NA was appointed as Trustee. Debtor Homecomings Financial serviced the loan from August 16, 2005 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. | 7-8, 9, 13-14 |
| | | | | | Administrative Secured | | | | | |
| | | | $100,000.00 Secured | | | | | | Claimant alleges that the Debtor never disbursed loan proceeds in the amount of $122,000 to him directly, and further asserts that he is seeking the return of all monies paid to the Debtor as well as forgiveness of the original obligation. Claimant further alleges that the loan modification entered into 4/1/2010 "amended and supplemented" the original note and therefore invalidates the original mortgage. | |
| | | | | | Priority | | | | Debtor has no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The purchase money loan was originated by AmeriTrust Mortgage Company LLC on July 14, 2005. No Debtor was involved with the closing of the loan or disbursement of funds at closing: a review of the HUD-1 Settlement Statement shows the funds were disbursed to the seller to fund the purchase of the property and not to Claimant. | |
| | | | | | General Unsecured | | | | | |
| | | | | | | | | | Debtors have no liability for loan modification claims because Debtor handled all aspects of the loan modification process appropriately. Debtor's records show that on 3/5/2009, Claimant requested loss mitigation assistance from the Debtor, as he could no longer afford payments. Debtor approved Claimant for a loan Modification on 03/09/2009: however, Claimant contacted Debtor on 03/16/2009 to reject the terms of the modification. A permanent Modification was later fully executed by Claimant on 04/01/2010. | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-SECOND OMNIBUS OBJECTION - NO LIABILITY (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Claims to be Disallowed and Expunged | | | | |
| 11 | Jennifer Mccue 2157 Stockman Circle Folsom, CA 95630 | 4733 | 11/14/2012 | Administrative Priority<br><br>Administrative Secured<br><br>Secured<br><br>Priority<br><br>UNLIQUIDATED General Unsecured | GMAC Mortgage, LLC | 12-12032 | Origination Issues, Loan Modification, Wrongful Foreclosure | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor GMAC Mortgage, LLC purchased the loan from Central Pacific Mortgage Company, which originated the loan on December 12, 2005. Debtor subsequently transferred its interest and the loan was securitized on or about March 30, 2006, where JP Morgan Chase Bank, NA was appointed as Trustee. Debtor GMAC Mortgage, LLC serviced the loan from December 12,2005 until servicing transferred to Ocwen Loan Servicing, LLC on Feb 16th, 2013.<br><br>Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan by Central Pacific Mortgage Company. In addition, Debtor has confirmed that there is no assignee liability that would extend to Debtor on these claims. A claim under California Business and Professions Code 17200 has three prongs: unlawfulness, unfairness, and fraud. In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices. Accordingly, Debtor would not assume these liabilities in its role as servicer or owner of the loan.<br><br>Debtors have no liability for wrongful foreclosure claims because Debtor confirmed that this loan has never been referred to foreclosure. As of 9/10/2013 this loan is current and serviced by Ocwen.<br><br>Debtors have no liability for loan modification claims because Debtor handled all aspects of the loan modification process appropriately. Debtor's records show that a workout package was received on 8/19/2009. On 9/21/2009 Claimant was denied for both HAMP modification and traditional modification because the debt-to-income ratio indicated the borrower could afford the mortgage payment. A new workout package was submitted on 2/23/2010. Modification was again denied on 3/2/2010 for the same reason. A new workout package was submitted on 6/29/2012. Again the modification was denied on 7/27/12 for HAMP modification and 7/31/12 for traditional, for the same reasons. | 9, 10-11, 13-14 |
| 12 | Jose Melendez 10357 Gaynor Avenue Granada Hills, CA 91344 | 4625 | 11/13/2012 | Administrative Priority<br><br>Administrative Secured<br><br>Secured<br><br>Priority<br><br>UNLIQUIDATED General Unsecured | GMAC Mortgage, LLC | 12-12032 | Origination Issues, Wrongful Foreclosure, Standing Issues, Loan Modification, General No Liability | Debtor's involvement with Claimant's loan was limited to its roles as servicer and purchaser of the loan. The loan was originated by Brighton Lending on September 11, 2009. Debtor GMAC Mortgage, LLC purchased the loan from Brighton Lending and transferred its interest in the loan to Freddie Mac on or about October 16, 2009. Debtor GMAC Mortgage LLC serviced the loan from September 11, 2009 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan by Brighton Lending. In addition, Debtor has confirmed that there is no assignee liability that would extend to Debtor for claims under California Business & Professions Code § 17200. A claim under this statute has three prongs: unlawfulness, unfairness, and fraud. In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices. The Claimant has not provided any specific evidence to substantiate its general allegations of fraud and unlawful practices.<br><br>Debtors have no liability for Claimant's lack-of standing claims because Debtor has verified that the endorsement chain is complete and valid. Debtor's records show that the note is endorsed from originator to Blank.<br><br>Debtors have no liability for the wrongful foreclosure claims because i) the loan was current as of the date of service transfer to Ocwen on February 16, 2013 and ii) was never referred to foreclosure.<br><br>Debtors have no liability for the loan modification claims because Debtor handled all aspects of the loan modification process appropriately. Debtor's records show that a HAMP modification was denied on 9/7/2012 because the loan origination date (9/11/2009) was after the final eligibility date for the HAMP program (1/1/2009). Traditional modification was denied by the investor on 10/24/2012 due to investor limitations. Claimant needed to explain in detail the hardship as the loan was current at time of modification review. | 7-8, 9, 10-11, 11-12, 13-14 |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-SECOND OMNIBUS OBJECTION - NO LIABILITY (BORROWER CLAIMS)

Claims to be Disallowed and Expunged

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|
| 13 | Joseph J. Cozzolino and/or JoJo Asset Mgmt LLC PO Box 317 Sweet Valley, PA 18656 | 1372 | 10/17/2012 | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Standing Issues, General No Liability | Debtors' involvement with Claimant's loan was limited to Debtors' role as servicer of the loan. Debtor GMAC Mortgage LLC serviced the loan from May 29, 2007 until servicing transferred to Countrywide Loan Servicing on July 2nd, 2007.

Debtors have no liability for Claimant's lack-of-standing claims because Debtor at no time had an ownership interest in this loan. The only relationship Debtor had to this loan was as subservicer on behalf of the investor, beginning on May 29, 2007. The loan was service released to Countrywide on July 2, 2007, and Debtor properly notified Claimant by letter dated June 15, 2007 of the pending servicing transfer. | 7-8, 11-12 |
| | | | | Administrative Secured | | | | | |
| | | | | Secured | | | | | |
| | | | | Priority | | | | | |
| | | | | $193,274.41 General Unsecured | | | | | |
| 14 | Karen W. Officer and Robert W. Officer 3225 McLeod Dr. Suite 100 Las Vegas, NV 89121 | 3895 | 11/09/2012 | Administrative Priority | Residential Capital, LLC | 12-12020 | Origination Issues | Debtors' involvement with Claimant's loans was limited to Debtors' roles as servicer and purchaser of the loans. The loans were originated by United Mortgage Corporation on October 18, 2007. Debtor GMAC Mortgage, LLC purchased the loans from United Mortgage Corporation and subsequently transferred its interest in the loans to Fannie Mae in March and April of 2008. Debtor GMAC Mortgage LLC serviced the loans from October 18, 2007 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.

Debtors have no liability for Claimant's origination-based claims because the Debtors were not involved in the origination of these loans and are not liable for alleged wrongdoing of Claimant's loan broker, a non-debtor entity. In addition, a claim under California Business and Professions Code 17200 is not valid because the properties at issue are located in Mississippi and that state's law should govern the dispute. | 9 |
| | | | | Administrative Secured | | | | | |
| | | | | Secured | | | | | |
| | | | | Priority | | | | | |
| | | | | UNLIQUIDATED General Unsecured | | | | | |
| 15 | Katherine Staehly 4125 Brickyard Road Tillamook, OR 97141 | 4539 | 11/13/2012 | Administrative Priority | Residential Capital, LLC | 12-12020 | Origination Issues, Loan Modification, Wrongful Foreclosure | Debtor's involvement with Claimant's loan was limited to its roles as servicer and investor of the loan. The loan was originated by Golf Savings Bank on December 15, 2009. Debtor GMAC Mortgage, LLC subsequently purchased the loan and is the current investor. Debtor GMAC Mortgage LLC serviced the loan from December 15, 2009 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.

Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan by Golf Savings Bank.

Debtors have no liability for wrongful foreclosure claims because i) the loan was delinquent and due for June 1, 2010 payment, ii) foreclosure was commenced on November 3, 2010, and iii) the assignment and endorsement chains are complete and valid to have initiated foreclosure. Debtor's records show i) the note is endorsed from originator to Ally Bank, from Ally Bank to GMAC Mortgage and from GMAC Mortgage to Blank, ii) the assignment of mortgage was recorded from MERS, as nominee for originator to GMAC Mortgage. The account was again referred to foreclosure November 8, 2011 because the account was owing for July 2010 through November 2011 payments. The foreclosure sale has not been completed but is still active and being pursued by Ocwen.

Debtors have no liability for loan modification claims because Debtor handled all aspects of the loan modification process appropriately. Debtor's records show Claimant's loan was reviewed for a loan modification 6 times, each time the process was followed correctly and the information was requested when necessary. Claimant applied for modifications on 9/10/10, 9/13/10, 11/5/10 and 1/12/11, and in each instance, Claimant was denied because the account needed to have had at least 12 prior payments made to be considered for modification under applicable investor guidelines. Claimant applied for a loan modification 3/30/11 and was approved for HAMP trial modification 4/11/11. Claimant was denied HAMP trial plan 5/11/11 due to Claimant not sending in the executed modification agreement. Claimant applied for modification on 6/22/11 and 7/18/11, and in both instances, Claimant was denied because loan could not be more than 12 months delinquent in order to be considered for modification under applicable modification guidelines. Claimant has only made February through June 2010 payments, there has never been 12 mortgage payments made since origination. Claimant applied for a loan modification on 10/10/11, which was denied because Claimant failed to provide the missing information for the workout package that was requested by Debtor. | 9, 10-11, 13-14 |
| | | | | Administrative Secured | | | | | |
| | | | | Secured | | | | | |
| | | | | Priority | | | | | |
| | | | | UNLIQUIDATED General Unsecured | | | | | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-SECOND OMNIBUS OBJECTION - NO LIABILITY (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|
| 16 | Leo Vigildo Solano 570 Park Way Chula Vista, CA 91910 | 4726 | 11/14/2012 | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Origination Issues, Wrongful Foreclosure, Standing Issues, Loan Modification | Debtor's involvement with Claimant's loan was limited to Debtor's role as servicer. Debtor GMAC Mortgage LLC serviced the loan from September 19, 2006 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. | 9, 10-11, 11-12, 13-14 |
| | | | | Administrative Secured | | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by SBMC Mortgage on June 9, 2006. In addition, Debtor has confirmed that there is no assignee liability that would extend to Debtor on these claims under California Business & Professions Code § 17200. A claim under this statute has three prongs: unlawfulness, unfairness, and fraud. In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices. The Claimant has not provided any specific evidence to substantiate its general allegations of fraud and unlawful practices. | |
| | | | | Secured | | | | | |
| | | | | Priority | | | | | |
| | | | | UNLIQUIDATED General Unsecured | | | | Debtors have no liability for Claimant's lack-of-standing claims because Debtor has verified that the assignment and endorsement chains are complete and valid. Debtor's records show i) the note is endorsed from originator to blank, and ii) the assignment of mortgage was recorded from MERS, as nominee for originator, to Deutsche Bank National Trust Company, as Trustee for HarborView Mortgage Loan Trust Mortgage Loan Pass Through Certificates, Series 2006-SB1. | |
| | | | | | | | | Debtors have no liability for wrongful foreclosure claims because i) the loan was delinquent and due for 5/1/2008 payment when foreclosure proceedings commenced on 8/7/2008, and ii) foreclosure proceedings were cancelled once the permanent loan modification was entered in 2009. | |
| | | | | | | | | Debtors have no liability for loan modification claims because Debtor handled all aspects of the loan modification process appropriately. Debtor's records show that a workout package was received on 8/19/2008. Debtor reviewed the package and recommended a loan modification on 9/18/2008, but the proposed modification was denied by the investor on 9/22/2008. Debtor performed a second review of the same workout package and a loan modification was approved on 10/21/2008. Claimant did not return the required documents and make the required payment. Claimant called on 12/8/2008 to advise that he was unable to make the required payment. Debtor reviewed the loan a third time without requesting additional documents from the claimant. A loan modification was approved on 12/15/2008. Claimant returned the executed modification documents and required payment on 1/7/2009. The loan was brought current and the foreclosure was terminated. Since then, Debtor has sent additional work out packages at Claimant's request. However: a completed package was never returned. | |
| 17 | Michelle Lawson, et al. 226 East Gorgas Lane Philadelphia, PA 19119 | 5282 | 11/16/2012 | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Origination Issues | Debtor's involvement with Claimant's second lien loan was limited to its roles as servicer and purchaser of the loan. Debtor GMAC Mortgage, LLC purchased the loan from Trident Second Mortgage Company on or about February 21, 2007. Debtor transferred its interest when the loan was securitized on or about March 30, 2007, where Citibank, NA was appointed as Trustee. Debtor GMAC Mortgage, LLC serviced the loan from March 13, 2007 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. | 9 |
| | | | | Administrative Secured | | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. Claimant asserts she has no knowledge of the second lien loan that was taken out at the same time as the first lien loan. Debtors have no connection to the first lien loan. Debtor verified the existence of a first mortgage in amount of $273,600.00 and a second mortgage in the amount of $51,300.00, both of which were originated by Trident Mortgage Company on 2/8/10, which Debtor provided to Claimant on 2/12/10. Claimant has made monthly payments on time, and without late charge application. Affidavit of Borrower's Certification signed by Claimants on 12/03/04 show that Claimants acknowledged that they received copies of the Truth in Lending Good Faith Estimate – all providing information about the second loan. In addition, Claimants included a copy of the second lien Note with the claim. | |
| | | | | Secured | | | | | |
| | | | | Priority | | | | | |
| | | | | $140,967.98 General Unsecured | | | | | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-SECOND OMNIBUS OBJECTION - NO LIABILITY (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Claims to be Disallowed and Expunged | | | | |
| 18 | Milagro Melendez 10357 Gaynor Avenue Granada Hills, CA 91344 | 4607 | 11/13/2012 | | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Origination Issues: Loan Modification; Wrongful Foreclosure; Standing Issues | Debtor's involvement with Claimant's loan was limited to its roles as servicer and purchaser of the loan. The loan was originated by Brighton Lending on September 11, 2009. Debtor GMAC Mortgage, LLC subsequently purchased the loan from Brighton Lending and transferred its interest in the loan to Freddie Mac on or about October 16, 2009. Debtor GMAC Mortgage LLC serviced the loan from September 11, 2009 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. | 9, 10-11, 11-12, 13-14 |
| | | | | | Administrative Secured | | | | | |
| | | | | | Secured | | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan by Brighton Lending. In addition, Debtor has confirmed that there is no assignee liability that would extend to Debtor on these claims under California Business & Professions Code § 17200. A claim under section 17200 has three prongs: unlawfulness, unfairness, and fraud. In general, an unfair practices claim under section 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices. The Claimant has not provided any specific evidence to substantiate its general allegations of fraud and unlawful practices. | |
| | | | | | Priority | | | | | |
| | | | | UNLIQUIDATED | General Unsecured | | | | Debtors have no liability for Claimant's lack-of-standing claims because Debtor has verified that the endorsement chain is complete and valid. Debtor's records show that the note is endorsed from originator to Blank. | |
| | | | | | | | | | Debtors have no liability for the wrongful foreclosure claims because i) the loan was current as of the date of service transfer to Ocwen on February 16, 2013 and ii) was never referred to foreclosure. | |
| | | | | | | | | | Debtors have no liability for the loan modification claims because Debtor handled all aspects of the loan modification process appropriately. Debtor's records show that a HAMP modification was denied on 9/7/2012 because the loan origination date (9/11/2009) was after the final eligibility date for the HAMP program (1/1/2009). Traditional modification was denied by the investor on 10/24/2012 due to investor limitations. Claimant failed to explain in detail the hardship as the loan was current at time of modification review. | |
| 19 | Ngan Moy 1189 Pine Tree Drive Lake Villa, IL 60046 | 4613 | 11/13/2012 | | Administrative Priority | Residential Capital, LLC | 12-12020 | Origination Issues; Loan Modification; Wrongful Foreclosure; Standing Issues; Wrong Debtor | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Company, LLC purchased the loan from First National Bank of Nevada on or about November 23, 2005, and transferred its interest when the loan was securitized on or about January 1, 2006, where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial serviced the loan from December 8, 2005 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. | 9, 10-11, 11-12, 13-14, 14-15 |
| | | | | | Administrative Secured | | | | | |
| | | | | | Secured | | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by First National Bank of Arizona on September 30, 2005. In addition, Debtor has confirmed that there is no assignee liability that would extend to Debtor on these claims. Claimant cites to California Business and Professions Code 17200, however this loan is not on a property in California, but in Illinois, so the cited statute is irrelevant. | |
| | | | | | Priority | | | | | |
| | | | | UNLIQUIDATED | General Unsecured | | | | Debtors have no liability for Claimant's lack-of-standing claims because Debtor has verified that the assignment and endorsement chains are complete and valid. Debtor's records show i) the note is endorsed from originator to First National Bank of Nevada, from First National Bank of Nevada to Residential Funding Corporation and from Residential Funding Corporation to Deutsche Bank National Trust Company Americas, as Trustee, ii) the assignment of mortgage was recorded from MERS, as nominee for originator, to Deutsche Bank National Trust Company Americas, as Trustee. | |
| | | | | | | | | | Debtors have no liability for wrongful foreclosure claims because the loan was delinquent and due for the October 2010 payment and foreclosure proceedings commenced on January 1, 2011. Debtors' records show that the foreclosure has not been completed on this property, and Ocwen is currently handling the foreclosure action. There have been no payments since 2010. | |
| | | | | | | | | | Debtors have no liability for loan modification claims because Debtor handled all aspects of the loan modification process appropriately. Debtor's records show that a HAMP modification was denied on 3/12/2010 and 6/15/2010 because the financials submitted by Claimant indicated Claimant should be able to afford the existing payments. According to the workout package received the Claimant's DTI was 20.647%. The account was denied due to the payment already being affordable. The Claimant reapplied for loan modification 6/2/10 which reflected that their DTI was 22.424%. The goal for HAMP is to reduce the payment to 31%, since the payment was already well below the target payment the account did not qualify for a loan modification. | |
| | | | | | | | | | In addition to the aforementioned reasons for disallowance, this claim does not sit at ResCap but at GMAC Mortgage, LLC. | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-SECOND OMNIBUS OBJECTION - NO LIABILITY (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Claims to be Disallowed and Expunged | | |
| 20 | Rafael Estrada Anna G Estrada v US Bank N A as Trustee for RAMP 2006 SP4 Alias GMAC Mortgage LLC Alias and et al JOHN B ENNIS ATTORNEY AT LAW 1200 RESERVOIR AVE CRANSTON, RI 02920 | 3554 | 11/08/2012 | Administrative Priority<br><br>Administrative Secured<br><br>Secured<br><br>Priority<br><br>$125,000.00 General Unsecured | GMAC Mortgage, LLC | 12-12032 | Standing Issues, Wrongful Foreclosure | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Company, LLC purchased the loan from Northeast Savings on or about September 28, 2006. Debtor transferred its interest and the loan was securitized on or about November 1, 2006, where US Bank, NA was appointed as Trustee. Debtor GMAC Mortgage, LLC serviced the loan from November 10, 2006 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Loan was originated by Columbian Credit Union on November 16, 1990. Debtors have no liability for Claimant's lack-of-standing or authority to foreclose claims because Debtor has verified that the assignment and endorsement chains are complete and valid. Debtor's records show i) the note is endorsed from originator to blank, ii) the assignment of mortgage was recorded from originator to Northeast Savings, FA, from Northeast Savings to Residential Funding Company and from Residential Funding Company to US Bank, NA, as Trustee. Foreclosure Deed was recorded in the name of US Bank, NA, as Trustee. Debtor's records show that all individuals who signed documents related to the foreclosure had the appropriate authority to do so. | 10-11, 11-12 |
| 21 | Rafael Estrada Anna G Estrada v US Bank N A as Trustee for RAMP 2006 SP4 Alias GMAC Mortgage LLC Alias and et al JOHN B ENNIS ATTORNEY AT LAW 1200 RESERVOIR AVE CRANSTON, RI 02920 | 3562 | 11/08/2012 | Administrative Priority<br><br>Administrative Secured<br><br>Secured<br><br>Priority<br><br>$125,000.00 General Unsecured | Residential Funding Company, LLC | 12-12019 | Standing Issues, Wrongful Foreclosure | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Company, LLC purchased the loan from Northeast Savings on or about September 28, 2006. Debtor transferred its interest and the loan was securitized on or about November 1, 2006, where US Bank, NA was appointed as Trustee. Debtor GMAC Mortgage, LLC serviced the loan from November 10, 2006 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Loan was originated by Columbian Credit Union on November 16, 1990. Debtors have no liability for Claimant's lack-of-standing or authority to foreclose claims because Debtor has verified that the assignment and endorsement chains are complete and valid. Debtor's records show i) the note is endorsed from originator to blank, ii) the assignment of mortgage was recorded from originator to Northeast Savings, FA, from Northeast Savings to Residential Funding Company and from Residential Funding Company to US Bank, NA, as Trustee. Foreclosure Deed was recorded in the name of US Bank, NA, as Trustee. Debtor's records show that all individuals who signed documents related to the foreclosure had the appropriate authority to do so. | 10-11, 11-12 |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-SECOND OMNIBUS OBJECTION - NO LIABILITY (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | **Claims to be Disallowed and Expunged** | | |
| 22 | Rozalynne Roelen Bowen<br>36 Bloomdale<br>Irvine, CA 92614 | 3526 | 11/07/2012 | Administrative Priority<br><br>Administrative Secured<br><br>Secured<br><br>Priority<br><br>UNLIQUIDATED General Unsecured | GMAC Mortgage, LLC | 12-12032 | Loan Modification, Interest Rates and Fees Collected, General Servicing Issues | Debtor's involvement with Claimant's loan was limited to Debtor's roles as originator, servicer and purchaser of the loan. GMAC Mortgage, LLC originated the loan on 11/14/2006. Debtor Residential Funding Company, LLC purchased the loan from GMAC Mortgage, LLC, on or about December 14, 2006. Debtor transferred its interest and the loan was securitized on or about January 1, 2007, where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor GMAC Mortgage, LLC serviced the loan from November 14, 2006 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>In Claimant's proof of claim, Claimant states "mortgage refi" as basis for claim. In response to Debtor's letter requesting information in support of Claimant's proof of claim, Claimant asserts Debtor failed to change the timing of automatic withdrawals as agreed, wrongfully declined to accept Claimant's payments, and set the unpaid principal balance too high on Claimant's loan modification.<br><br>Debtors have no liability for the allegation that Claimant failed to change the timing of automatic withdrawals as agreed because i) Claimant's automatic withdrawals were managed by an agreement between Claimant and a Non-Debtor entity, BiSaver. Debtor's records show Claimant called in 3/17/09 requesting Bisaver automatic withdrawal dates to be adjusted and she was advised to call 1800BISAVER because Debtor did not administer the automatic withdrawals.  Debtor does not have the ability or authority to validate if Claimant called Bisaver for changes to the automatic payment.<br><br>Debtors have no liability for the allegation that Debtor wrongfully declined Claimant's payments because the returned funds were insufficient to reinstate Claimant's account, and Debtor had not promised to accept amounts less than the full amount necessary to reinstate Claimant's account.  As part of Debtor's standard business practices for loans in a foreclosure status, Debtor returned funds remitted by a borrower that were insufficient to fully reinstate (or bring current) a borrower's account, unless an accommodation to accept a lower amount was explicitly agreed to by Debtor. Debtor's records show a trial modification was set up for Claimant on 8/13/2010. Claimant completed the trial modification, but Claimant failed to execute the permanent modification agreement sent to Claimant on 11/15/10. As a result, the permanent modification was appropriately denied, and the Claimant's account reverted back to a foreclosure status. Subsequently, Debtor received and returned Claimant's payment because Claimant's loan was in a foreclosure status, and the sum of five payments ($23,511.70) plus additional fees was due to reinstate Claimant's loan.  Debtor's records also show a subsequent HAMP modification denial on 2/11/11 was appropriate because Claimant had insufficient income at the time to meet HAMP guidelines.  Finally a Traditional Modification was approved with 3 trial payments due between April and June 2011. Claimant completed the trial plan and obtained a permanent loan modification from Debtor on or about 6/22/11.<br><br>Debtors have no liability for the allegation that Debtor set the unpaid balance too high under the Claimant's loan modification because Debtor's records show i) the permanent modification sent to Claimant on 11/15/2010, which Claimant failed to execute and was subsequently denied on that basis, had a correctly proposed principal balance of $692,427.87, and ii) the permanent modification subsequently executed by Claimant on 6/22/11 correctly reduced the principal balance to the agreed to balance of $639,294.53, providing significant benefit to Claimant. | 8-9, 13, 13-14 |
| 23 | Scott W or Linda C Ewing<br>27 Jersey Fleur Dr #9271<br>Ellijay, GA 30540-6911 | 2152 | 11/05/2012 | Administrative Priority<br><br>Administrative Secured<br><br>Secured<br><br>Priority<br><br>$100,000.00 General Unsecured | GMAC Mortgage, LLC | 12-12032 | Origination Issues, Loan Modification, General No Liability | Debtor's involvement with Claimant's loan was limited to its roles as servicer and purchaser of the loan. Debtor GMAC Mortgage, LLC purchased the loan from Ally Bank on or about March 3, 2011, and then transferred  its interest in the loan to Fannie Mae on or about March 29, 2011. Debtor GMAC Mortgage LLC serviced the loan from March 3, 2011 until servicing transferred to Ocwen Loan Servicing, LLC on Feb 16, 2013.<br><br>Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination or appraisal of this loan.  The loan was originated by Ally Bank Corp. on March 3, 2011.<br><br>Claimant alleges having issues getting a response for loan modification assistance from the new servicer, Ocwen.  Debtors have no liability for Claimant's loan modification claims because no Debtor is involved in the current servicing of this loan.  Debtor's records show that prior to the transfer to Ocwen, there was no workout package ever received.   Debtor's records show that Claimant spoke with Debtor via phone on June 1, 2012 inquiring about principal reduction.  Claimant was advised they do not not qualify for HAMP modification as property is not owner occupied.   The loan was due for March 1, 2013 payment at time of transfer to Ocwen on February 16, 2013. | 7-8, 9, 13-14 |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-SECOND OMNIBUS OBJECTION - NO LIABILITY (BORROWER CLAIMS)

Claims to be Disallowed and Expunged

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|
| 24 | Sean Dustin Lopez<br>140 S. Zephyr St<br>Lakewood, CO 80226 | 5667 | 11/16/2012 | Administrative Priority<br><br>Administrative Secured<br><br>Secured<br><br>Priority<br><br>$129,000.00 General Unsecured | GMAC Mortgage, LLC | 12-12032 | Loan Modification | Debtor's involvement with Claimant's loan was limited to its roles as servicer and purchaser of the loan. Debtor GMAC Mortgage, LLC purchased the loan from Wallick & Volk, Inc., on or about April 6, 2009. Debtor transferred its interest on or about April 21, 2009 to GNMA. Debtor GMAC Mortgage, LLC serviced the loan from April 6, 2009 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "services provided/denied loan modification" as basis for claim. Debtor sent a letter to Claimant on June 27, 2013 requesting additional information in support of the proof of claim, but Claimant failed to respond. The allegation that Debtor improperly denied Claimant loan modification is incorrect because Claimant never submitted a complete workout package for Debtor to review. Debtor's records show that Claimant inquired about loan modification options on 12/21/2010 and 01/19/2011. Debtor received a workout package from Claimant via fax on 04/12/2011, which was missing the required paystubs for all borrowers. Debtor requested missing items by 4/29/11, but Claimant failed to provide them to Debtor, and on that basis, Debtor sent a denial letter to Claimant on 05/03/2011. Claimant advised that a new package would be sent in on 05/09/2011, however, Debtor did not receive another loan modification request package from Claimant. | 13-14 |
| 25 | Somphone Vongsavanh,<br>Songchantha Vongsavanh<br>Somphone Vongsavanh<br>1665 GA Hwy 18 East<br>Macon, GA 31217-9448 | 1136 | 10/10/2012 | Administrative Priority<br><br>Administrative Secured<br><br>$3,588.11 Secured<br><br>Priority<br><br>General Unsecured | Residential Capital, LLC | 12-12020 | General No Liability | Debtors' involvement with Claimant's loan was limited to Debtors' roles as originator and servicer of the loan. Debtor Homecomings Financial, LLC originated the loan on or about July 20, 2007. Debtor transferred its interest and the loan was securitized on or about August 1, 2007, where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial serviced the loan from July 20, 2007 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant states "mortgage note" as basis for claim. Debtors have no liability because Claimant failed to state a valid basis for claim, and in an email dated 5/26/13 that Debtor received from Claimant, Claimant advised that they do not believe that they have a valid claim against one or more of the Debtors. In response, Debtor mailed a letter and claim withdrawal form for execution to Claimant on or about June 11, 2013. However, Claimant never executed and delivered the withdrawal form to Debtors, and Debtor reviewed its books and records and found no connection to Claimant. | 7-8 |
| 26 | Terence J. Radzik and Donna L. Radzik<br>1191 W. Kraml Court<br>Palatine, IL 60067 | 4316 | 11/09/2012 | Administrative Priority<br><br>Administrative Secured<br><br>Secured<br><br>Priority<br><br>$156,500.00 General Unsecured | GMAC Mortgage, LLC | 12-12032 | HELOC Suspension | Debtor's involvement with Claimant's loan was limited to Debtors' role as servicer and purchaser of the loan. Debtor GMAC Mortgage, LLC purchased the loan from RPM Mortgage Company, LLC on or about March 22, 2004. Debtor transferred its interest when the loan was securitized on or about June 30, 2004 where Wells Fargo Bank, NA, was appointed as trustee. Debtor GMAC Mortgage, LLC serviced the loan from March 22, 2004 until servicing transferred to Specialized Loan Servicing on December 1, 2010.<br><br>In response to Debtors' letter requesting additional information in support of the claim, Claimant states that Debtor wrongfully terminated Claimant's HELOC in connection with an unspecified bankruptcy filing, which inhibited Claimant's ability to do home improvements. Debtors have no liability for this claim because the Debtors never terminated or suspended the Claimant's HELOC while the Debtors had an interest in the loan. | 15 |
| 27 | Tomas Diaz<br>5200 SW 122 Ave<br>Miami, FL 33175 | 4702 | 11/14/2012 | Administrative Priority<br><br>Administrative Secured<br><br>$400,000.00 Secured<br><br>Priority<br><br>General Unsecured | Homecomings Financial, LLC | 12-12042 | Origination Issues, Standing Issues, General No Liability | Debtors' involvement with Claimant's loan was limited to Debtors' roles as servicer and purchaser of the loan. Debtor Residential Funding Company, LLC purchased the loan from Platinum Capital Group on or about May 24, 2006. Debtor transferred its interest when the loan was securitized on or about June 1, 2006, where Deutche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial serviced the loan from May 24, 2006 until servicing transferred to Aurora Loan Servicing on April 1, 2008.<br><br>Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by Platinum Capital Group on April 27, 2006.<br><br>Debtors have no liability for Claimant's lack-of-standing claims because the assignment and endorsement chains are complete and valid. Debtor's records show the note is endorsed from originator to Residential Funding Corporation, from Residential Funding Corporation to Deutsche Bank Trust Company Americas, as Trustee. The servicing of the loan was transferred to Aurora Loan Serving on April 1, 2008. | 7-8, 9, 11-12 |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-SECOND OMNIBUS OBJECTION - NO LIABILITY (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|---|
| 28 | W Dale Michael<br>61875 SE 27th Street<br>Bend, OR 97702 | 4594 | 11/13/2012 | | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Origination Issues: Loan Modification: Wrongful Foreclosure: Standing Issues: Wrong Debtor | Debtors' involvement with Claimant's loan was limited to Homecomings Financial, LLC's role as originator and GMAC Mortgage, LLC's roles as servicer and purchaser of the loan. Homecomings Financial, LLC originated the loan on or about November 27, 2007 and subsequently transferred it to GMAC Mortgage, LLC, which then transferred its interest in the loan to Fannie Mae on or about January 3, 2008.  Debtor Homecomings Financial serviced the loan from November 21, 2007 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on Feb 16, 2013. | 9-10, 10-11, 11-12, 13-14, 14-15 |
| | | | | | Administrative Secured | | | | | |
| | | | | | Secured | | | | Claimant asserts that Debtor provided a loan that Debtor knew Claimant would default on.  In originating this loan on November 21, 2007, Debtor reviewed Claimant's loan application, credit, and appraisal, which showed no unusual activity and revealed no signs of alleged fraud.  There are no servicing records indicating Claimant ever mentioned this issue before.  Based on the information used to underwrite and approve the loan, the debtor would have had no prior knowledge or information that would suggest the Claimant would later default.  Furthermore, a review of the payment history and servicing notes revealed the reason Borrower defaulted on the mortgage was "marital difficulties", and until that point, Claimant was voluntarily paying additional principal each month above the required monthly mortgage payment. | |
| | | | | | Priority | | | | | |
| | | | | UNLIQUIDATED | General Unsecured | | | | | |
| | | | | | | | | | Debtors have no liability on Claimant's lack-of-standing claims because the assignment and endorsement chains are complete and valid.  Debtor's records show i) the note is endorsed from Homecomings Financial to GMAC Bank, from GMAC Bank to GMAC Mortgage, from GMAC Mortgage to blank, ii) the assignment of mortgage was recorded from MERS as nominee for originator to GMAC Mortgage. | |
| | | | | | | | | | Debtors have no liability for the wrongful foreclosure claims because i) the loan was delinquent and due for March 1, 2011 when foreclosure commenced on June 6, 2011 and, ii) the foreclosure has not been completed and the loan was never serviced by Ocwen. | |
| | | | | | | | | | Debtors have no liability for the loan modification claims because Debtor handled all aspects of the loan modification process appropriately. Debtor's records reflect that Claimant submitted only one incomplete workout packet on July 30, 2010, and has never submitted a completed workout package for loss mitigation review. | |
| | | | | | | | | | In addition, Claimant asserts a claim under California Business and Professional Code §17200. However, this property is not in California, but is in Oregon and therefore the cited statute doesn't apply. | |
| | | | | | | | | | In addition to the aforementioned reasons for disallowence,  this claim does not sit at ResCap but at GMAC Mortgage, LLC. | |
| 29 | Charles L. Carlin and Phyllis Carlin<br>8600 N.E. 10th Ct.<br>Miami, FL 33138-3411 | 3879 | 11/09/2012 | | Administrative Priority | GMAC Mortgage, LLC | 12-12032 | Origination Issues, Escrow Issues, General No Liability | Debtor's involvement with Claimant's loan was limited to Debtor's role as servicer. Debtor GMAC Mortgage, LLC serviced the loan from April 18, 2007 until servicing transferred to Ocwen Loan Servicing, LLC on Feb 16th, 2013. | 7-8, 9, 10 |
| | | | | | Administrative Secured | | | | Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan. The loan was originated by Bank United, FSB on November 16, 2006.  Debtor's only role in connection with the loan was as servicer and Debtor was not an investor or party to the PSA. | |
| | | | | | Secured | | | | Claimants allege Debtors failed to distinguish between Mr. Carlin as obligated borrower and Mrs. Carlin as non-obligated borrower and that caused the Claimants damages.  Again, Debtor had no involvement in the origination of the loan or in determining which party would be obligated under the Note.  Debtor only serviced the loan after origination.  Debtors' records show that Mrs. Carlin was an authorized party on the account as of 3/31/2008. | |
| | | | | | Priority | | | | | |
| | | | | UNLIQUIDATED | General Unsecured | | | | Debtors have no liability for Claimant's escrow claim because Debtor provided payment histories several times as requested (2/11/2011: 5/17/2012).  Debtor verified that escrow for insurance (wind, fire and flood) was added to the loan after origination due to borrower not providing proof of insurance when requested. Claimant was provided notice on 8/4/2011 and 9/18/2011 indicating Debtor required proof of insurance.  On 11/6/2011 Claimant was notified that because no proof of insurance had been received a lender-placed policy was purchased and $17,272.26 was advanced from escrow to cover this policy, including the need for additional amount needed to fund the escrow account for future disbursements.  Section 3 of Mortgage indicates how escrow is applied and authorizes establishment of an escrow account.  Debtors further responded to an inquiry of the Claimant on 5/23/2012 by providing a detailed escrow history and explanation. | |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

SIXTY-SECOND OMNIBUS OBJECTION - NO LIABILITY (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|---|
| 30 | Yeon Lim<br>50650 Colchester<br>Canton, MI 48187 | 3876 | 11/09/2012 | Administrative Priority<br><br>Administrative Secured<br><br>$0.00 Secured<br><br>Priority<br><br>UNLIQUIDATED General Unsecured | GMAC Mortgage, LLC | 12-12032 | Interest Rates and Fees Collected | Debtor's involvement with Claimant's loan was limited to its roles as originator and servicer of the loan. Debtor GMAC Mortgage, LLC, originated the loan on or about August 5, 2008. Debtor transferred its interest in the loan to Fannie Mae on or about September 9, 2008. Debtor GMAC Mortgage, LLC serviced the loan from August 5, 2008 until servicing transferred to GreenTree Servicing on February 1, 2013.<br><br>Claimant asserts improper fees in proof of claim, but provides no evidence of the fees at issue. Claimant failed to respond to Debtor's letter request for more information in support of damages. Nonetheless, a review of Debtor's records found that the only fees charged to the Claimant's account were two fees totaling $40 for payoff statements, which Debtor subsequently waived. | 13 |
| 30 | Joseph and Elizabeth La Costa<br>7840 Mission Center Court #104<br>San Diego, CA 92108 | 7160 | 08/28/2013 | Administrative Priority<br><br>Administrative Secured<br><br>Secured<br><br>Priority<br><br>$150,000.00 General Unsecured | GMAC Mortgage, LLC | 12-12032 | General Servicing Issues, Standing Issues | Debtor's involvement with Claimant's loan was limited to its roles as servicer and purchaser of the loan. Debtor GMAC Mortgage, LLC purchased the loan from Quicken Loans, Inc., on or about October 22, 2008, and transferred its interest in the loan to Fannie Mae on or about October 2008. Debtor GMAC Mortgage, LLC serviced the loan from September 26, 2008 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Debtor found no evidence to support the allegations that Debtor purportedly violated TILA and the FDCPA, and that Debtor did not have standing to service Claimant's loan. With respect to the TILA allegations, Claimant provided no specificity that would allow Debtor to research the allegations.<br><br>Debtor's records show i) Claimant's loan originated with Quicken Loans, a Non-Debtor entity, on 09/26/2008, ii) Claimant received proper notification that Debtor would be servicing the loan effective 10/22/2008, iii) Debtor continued to service the loan on behalf of investor FNMA until servicing was transferred to Ocwen on 02/16/2013, iv) Debtor properly mailed Claimant a notification of the servicing transfer to Ocwen on 02/05/2013, and v) Ocwen transferred servicing back to Quicken Loans effective 08/01/2013 and Ocwen provided proper notification by mail to the Claimant on 07/15/2013. Debtors have no liability for Standing Issues claims because at all times the note was properly endorsed and all assignments properly recorded giving Debtor standing to service the loan on behalf of the respective investor(s).<br><br>Debtor verified that i) no unwarranted fees were assessed to Claimant's account, ii) credit was reported appropriately, and iii) payments were applied in accordance with the terms of the note. Debtor's research shows Claimant filed a Qualified Written Request ("QWR") on August 26, 2013 in which Claimant disputed credit reporting and the Claimant's debt. Ocwen responded to Claimant on September 17, 2013 and provided a copy of the signed note and payment history to address the requests and challenges presented in Claimant's QWR. | 8-9, 11-12 |