UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

RESIDENTIAL CAPITAL, LLC, *et al.*

Debtors.

NOT FOR PUBLICATION

Case No. 12-12020 (MG)

Jointly Administered

## MEMORANDUM OPINION AND ORDER DENYING TIMOTHY J. LAHRMAN'S MOTION FOR RECONSIDERATION OF ORDER ENFORCING THE CHAPTER 11 PLAN INJUNCTION

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *Motion to Reconsider or Otherwise Alter, Amend and Modify Order or Judgment and Motion for Releif* [sic] *from Judgment or Order* (the "Motion," ECF Doc. # 6772) filed by Timothy J. Lahrman ("Lahrman"). In support of the Motion, Lahrman submits the Declaration of Timothy J. Lahrman (the "Lahrman Decl.," ECF Doc. # 6772-2) and attaches various documents, including emails sent to the Debtors' counsel, court pleadings, and guardianship proceedings (*see* ECF Doc. # 6772-3).[1] Lahrman asks the Court to reconsider its *Order Granting Ally Financial Inc.'s Motion for an Order Enforcing the Chapter 11 Plan Injunction* (the "Order," ECF Doc. # 6702), which enforced the Third Party Release and Injunction provisions (defined below) of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (the

---

[1] In the Motion, Lahrman purports to incorporate by reference Exhibits A–C of a previous "Letter Motion" dated March 7, 2014, which Lahrman also refers to as a "Complaint on Note and to Foreclose Mortgage." Neither Lahrman nor AFI filed anything on March 7, 2014 in these chapter 11 cases. Lahrman has filed only three documents in these chapter 11 cases: (1) the Motion; (2) a "Special Appearance for the Limited Purposes of Presenting Objections and Raising Jurisdictional Issues Warranting Dismissal with Prejudice of the AFI Motion" (the "Response," ECF Doc. # 6635); and (3) a "Declaration of Timothy Lahrman" (the "Original Declaration," ECF Doc. # 6715). The Response filed by AFI is dated March 8, 2014, but it only attaches one exhibit. Thus, it is unclear what Lahrman seeks to incorporate by reference in the pending Motion. For the purposes of the Motion, however, the exhibits Lahrman references are not necessary. Even assuming the documents referenced in the Lahrman Declaration are what he claims they are, they do not alter the Court's analysis or conclusion.

"Plan," ECF Doc. # 6065-1) as to claims Lahrman asserts in an Indiana state court proceeding (the "State Court") against Ally Financial Inc. ("AFI").

The Court entered the Order enforcing the Plan Injunction following a court hearing on AFI's motion (the "AFI Motion," ECF Doc. # 6527) on March 26, 2014. Lahrman did not appear at the hearing in person or by telephone, despite having notice of the AFI Motion and of the hearing. The Court ruled from the bench and the Order was entered following the hearing.

Because Lahrman has failed to satisfy the standards for a motion for reconsideration, the Motion is **DENIED**.

## I.   BACKGROUND

### A.   ResCap Bankruptcy Plan Confirmation

On May 14, 2012 (the "Petition Date"), ResCap and various related entities (the "Debtors") filed chapter 11 bankruptcy petitions. On August 29, 2012, the Court entered an order setting the bar date of November 9, 2012 for filing non-governmental proofs of claim in the chapter 11 cases. (ECF Doc. # 1309.) The Court thereafter entered an Order Extending the Bar Date for Filing Proofs of Claim to November 16, 2012 (the "Bar Date"). (ECF Doc. # 2093.) Neither Lahrman nor Cynthia Damron, Lahrman's "significant other," filed a proof of claim in these chapter 11 cases.

On December 11, 2013, the Court confirmed the Plan by entering the Confirmation Order. (ECF Doc. # 6065.) The Plan includes the release of the Debtors' parent company AFI (the "Third Party Release") in exchange for a contribution from AFI of $2.1 billion to the Debtors' estate (the "AFI Contribution"). (*See* Plan Art. IV.A.) The Third Party Release extends to

> **any and all Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or**

2

> **unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws, veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to the Debtors.**

(Plan Art. IX.D.)[2]  The Third Party Release further provides:

> **On and as of the Effective Date of the Plan . . ., the holders of Claims and Equity Interests shall be deemed to provide a full and complete discharge and release to the Ally Released Parties and their respective property from any and all Causes of Action . . . arising from or related in any way to the Debtors, including those in any way related to RMBS issued and/or sold by the Debtors or their affiliates and/or the Chapter 11 Cases or the Plan, the Consent Order, and the Order of Assessment.**

(*Id.*)  To define the term "Claim," the Plan adopts the definition contained in Bankruptcy Code section 101(5).  (Plan Art. I.A.53.)  Section 101(5), in turn, defines a "claim" as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5).  Thus, Claims asserted against AFI "arising from or related in any way to the Debtors" are "Released Claims" under the Plan.  (*See id.* Art. I.A.242; *see also id.* IX.D.)  The Plan "**permanently enjoin[s] and preclude[s]**" all parties

> **who have held, hold or may hold Claims, . . . [or] Causes of Action . . . that constitute Released Claims . . . from and after the effective date of the Plan, from:  (a) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party whether directly, derivatively or otherwise, on account of or in connection with or with respect to any Released Claims; . . . [and] (e) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party on account of or in connection with or respect to any Released Claims . . . .**

(*Id.* Art. IX.I.)

---

[2]  Capitalized terms used but not defined herein have the meanings given to such terms in the Plan.

3

The Plan became effective on December 17, 2013 (the "Effective Date"). (*See* ECF Doc. # 6137.)

### B. Lahrman's State Court Action

On January 3, 2014, nearly one month after the Court confirmed the Plan, Lahrman filed a *pro se* complaint (the "Compl.," ECF Doc. # 6621, Ex. A) in Indiana state court (the "State Court Action") against a number of defendants (the "Defendants"),[3] including AFI, related to a mortgage foreclosure. (*See id.*, Exs. A, B.) On January 21, 2014, Lahrman filed a supplemental complaint in the State Court Action adding additional foreclosure-related claims against the Supplemental Defendants (the "Supp. Compl.," and together with the "Compl.," the "Complaints").[4] (*Id.* Ex. B.) In the Complaints, Lahrman alleges that AFI does business as GMAC Mortgage, LLC ("GMACM"), GMACM's predecessor-in-interest GMAC Mortgage Corp. ("GMACM Corp."), and Residential Funding Company, LLC ("RFC").[5] (Compl. at 1; Supp. Compl. at 1.) GMAC Mortgage Corp. merged with GMACM in 2006, but for the purposes of this Opinion, the Court will refer to both entities as GMACM.

### 1. The Complaint

In the Complaint, Lahrman alleges that he is associated with Cynthia Damron, whom he identifies as his "'significant other[]'/'life partner[].'" (Compl. ¶ 2 n.1.) According to Lahrman,

---

[3] The Defendants named in the Complaint are: "Green Tree Servicing, LLC as assignee of and/or successor to GMAC Mortgage, LLC; Ally Financial, Inc., d/b/a GMAC Mortgage, LLC/GMAC Mortgage Corp/Residential Funding Company, LLC; Federal National Mortgage Association (Fannie Mae); Mortgage Electronic Registration Systems, Inc. (MERS, Inc.); and, unnamed, unknown and yet to be identified persons, entities and/or membership associated common agents of MERS, Inc." (Complaint at 1.)

[4] The Supplemental Complaint names five additional defendants (the "Supplemental Defendants"): "James M. Boyers, both individually and professionally as Attorney at Law; Joel F. Bornkamp, both individually and professionally as Attorney at Law; Leah Bell Silverthorn, both individually and professionally as Attorney at Law; Wooden & McLaughlin, LLP; and Reisenfeld & Assoc., LPA LLC." (Supplemental Complaint at 1.)

[5] Throughout the Complaint, Lahrman refers to GMACM as "Ally.01," to RFC as "Ally.02," and to GMACM Corp. as "Ally.03." Lahrman alleges that AFI was "doing business as" each of these entities when he refers to them. Lahrman does not name any of the Debtors as defendants in the State Court Action.

Damron granted him "legal and equitable rights and interests" in a home located in Elkhart County, Indiana (the "Property"), pursuant to a "long-standing agreement." (*Id.* ¶ 1–2.) As evidence that Damron, the "deed holder," granted Lahrman these rights, Lahrman attached to the Complaint a Limited (Special) Warranty Deed. (*Id.* ¶ 2, Ex. A[6].) Lahrman claims that he and Damron have "resided together and maintained their lives' [*sic*] mutually in the subject real estate as their homestead and common household" for 22 years. (*Id.* ¶ 2 n.1.) Lahrman claims that

> Defendant Ally Financial, Inc. d/b/a GMAC Mortgage, LLC is likewise known by as many as fifty-two other recognized trade names and business entities serving the home mortgage business of defendant Ally Financial, Inc. By reference and unless otherwise specified, references to 'Ally' includes [*sic*] any and all Ally related mortgage entities known, or which come to be known, to have associated with the subject real estate and its title.

(*Id.* ¶ 3 n.2.)

Lahrman's Complaint alleges that (1) "Ally.01" "claimed interest" in the Property as holder of a promissory note and mortgagee is false and fraudulent (*id.* ¶ 8); (2) "Ally.03" filed a false and fraudulent mortgage lien with the Elkhart County Recorder's Office on September 14, 2005, at which time GMACM did not own the promissory note or debt obligation (*id.* ¶ 10); (3) "Ally.03" attempted to fraudulently assign its false and fraudulent mortgage to "Ally.01" on

---

[6] The "Limited (Special) Warranty Deed" provides:

> **KNOW TO ALL MEN BY THESE PRESENTS**, that Grantor, in and for valuable consideration sufficient and received by Grantor from Grantee and acknowledged by Grantor, has granted, bargained, sold and released, and by these presents does grant, bargain, sell and release unto Grantee, subject to any valid and legally enforceable encumbrances, a one-half undivided share of, and life estate expectancy in the entirety to subject solely to the right of Grantee surviving the Grantor, the real estate ("the Premises") described as follows and as evidence [*sic*] by the attached Exhibit A.

(Compl. Ex. A.) The Limited (Special) Warranty Deed was signed by Damron and a notary public on May 13, 2013. It is unclear if it was recorded. If Lahrman acquired an interest in the Property from Damron on May 13, 2013, he did so after the Bar Date (November 16, 2012); Damron did not file a proof of claim. By acquiring an interest in the Property after the Bar Date, Lahrman could not revive a claim that was already barred.

November 23, 2009, at which time "Ally.03" was no longer a legal entity (*id.* ¶ 11); and (4) "Ally.02" has no legal or equitable rights to the Property (*id.* ¶ 15).[7] Lahrman seeks to quiet title on the Property against the Defendants and "in particular as against defendants Ally.03 for its false lien filed on or about September 14, 2005, and Ally.01 for the false, fraudulent and defective assignment(s) dated November 23, 2009 and any mortgage lien recorded and associated therewith." (*Id.* at 5–6.) Lahrman also seeks damages for: (1) common law and actual fraud; (2) breach of contract; (3) violation of the Deceptive Consumer Sales Act (I.C. § 24-5-0.5 *et seq.*); (4) unfair and deceptive mortgage practices; (5) unfair and deceptive mortgage servicing practices; (6) unfair and deceptive debt collection practices; (7) unfair and deceptive mortgage foreclosure practices; (8) tortious interference; (9) nuisance *ad in factum*; and (10) intentional infliction of emotional distress.

          2.    *The Supplemental Complaint*

On January 21, 2014, Lahrman filed the Supplemental Complaint to add a fourth count against the Supplemental Defendants. Count 4 essentially charges the Supplemental Defendants with engaging in fraudulent actions associated with the Property.

**C.    The AFI Motion**

After Lahrman filed the State Court Action, AFI's counsel sent him two letters. First, AFI's local counsel sent a letter dated January 29, 2014, informing Lahrman that the Court

---

[7]     The Court omits additional causes of action that Lahrman alleges against Green Tree Servicing, LLC ("Green Tree"), Fannie Mae, and MERS because they are unrelated to Lahrman's claim against entities he identifies as "Ally Financial, Inc."

    Green Tree is involved in the state court foreclosure proceedings because it acquired GMACM's servicing rights on January 31, 2013 and filed a Motion to intervene and substitute party plaintiff in the foreclosure proceedings instituted by GMACM against Damron. (Compl. Ex. B ¶ 2.) In connection with the sale of those rights, GMACM transferred the Note to the Property to Green Tree (endorsed in blank). (*Id.* ¶ 4.) Green Tree's motion to intervene and substitute party plaintiff was granted on April 23, 2013, despite objection from Damron. (*See* State of Indiana Elkhart County Superior Court Docket, Case No. 20D02-1008-MF-00312.)

entered the Confirmation Order confirming the Plan and that AFI "is not a proper defendant in this matter" (the "First Letter," ECF Doc. # 6621 Ex. C, at 1). Copies of the Confirmation Order and Plan were attached to the First Letter. Lahrman did not respond to the First Letter. Instead, he filed a motion for sanctions against AFI and its counsel in the State Court Action.

On February 21, 2014, Kirkland & Ellis LLP ("Kirkland"), AFI's counsel in these bankruptcy proceedings, sent Lahrman a second letter (the "Second Letter," ECF Doc. # 6621 Ex. D) reiterating its position that the Third Party Release "releases all claims against AFI that are 'arising from or related in any way to the Debtors,' including ResCap, GMAC Mortgage, LLC and Residential Funding Company, LLC." (Second Letter at 1 (quoting Plan Art. IX.D).) Kirkland warned that if Lahrman failed to dismiss his claims and withdraw his motion for sanctions against AFI by February 25, 2014, AFI would seek relief from the Court. (*Id.*) Lahrman did not dismiss the State Court Action claims against AFI or withdraw his motion for sanctions, nor did he contact AFI's counsel to discuss the matter, so AFI filed the AFI Motion in this Court. Lahrman filed a response (the "Response," ECF Doc. # 6635) and AFI filed a reply (the "Reply," ECF Doc. # 6661). By its motion, AFI sought an order from the Court (1) finding that Lahrman's claim against AFI in the State Court Action is covered by the Plan's Injunction; (2) enforcing the Plan Injunction; and (3) permanently enjoining Lahrman from continuing his lawsuit against AFI. (AFI Motion at 2.)

A hearing was held on the AFI Motion on March 26, 2014 at 10:00 a.m. Lahrman did not appear in person or by phone, despite being personally served with the AFI Motion and notice of the hearing by special process server, and the Court entered the Order and so ordered the transcript. (*See* ECF Doc. # 6702, 6725.) The Court further noted that

> [i]f Lahrman fails to comply with the order, [AFI] can bring on another
> motion to enforce this order, with contempt. The contempt sanctions . . .

7

> should include any additional attorney's fees from today on, in bringing on an additional motion. Civil contempt is intended to compel compliance with a lawful order of a court and can include a compensatory award including attorney's fees. . . . [I]f [AFI has] to go through further action in this court, [AFI] can make an appropriate motion to include [attorney's fees].

(Mar. 26, 2014 Tr. 64:15–25.)

### D.     The Motion

The Court received the Motion on April 11, 2014—seventeen days after the Order was entered. The Motion reiterates Lahrman's arguments in the Complaints and the Response, namely that AFI did not comply with the "Consent Order(s)" and "Consent Judgment" to which it is a party, along with various government entities.

Lahrman further argues that the Court's Order misunderstands the nature of Lahrman's State Court Action for five reasons. First, Lahrman asserts, without explaining, that "[t]he Court has misapprehended and misunderstood the nature and character of Lahrman's 'Action' against *Ally* to the extent that Lahrman does not alleges [*sic*] that *Ally* is directly engaged in any wrongs other than failing to ensure that *Ally's* mortgage industry related subsidiaries are conducting themselves in compliance with all relevant and applicable state and federal law and, in compliance with the express terms of the 'Consent Order(s)' and 'Consent Judgment' to which *Ally et al.* are parties." (Motion ¶ 1.) Second, Lahrman asserts, again without explanation, that "[t]he Court has misapprehended and misunderstood the nature and character of Lahrman's 'Action' against *Ally* to the extent that Lahrman does not complain that he is damaged by Ally in any manner other than by those damages flowing from Ally's failure to ensure that its mortgage industry related subsidiaries cease and desist in those specific business practices and conducts which are expressly prohibited by and enjoined under the 'Consent Order(s)' and 'Consent Judgment' to which *Ally et al.* are parties." (*Id.* ¶ 2.) Third, Lahrman argues that the Court

8

"abused its discretion, made error of both fact and law, and applied an improper standard of legal analysis when concluding that the Third-Party Release is a complete and absolute bar to Lahrman's '*Action*' against *Ally*" because the Court was not the proper venue to determine the ultimate issues involved in the State Court Action, and the Plan does not bar post-confirmation conduct by "*Ally et al.*" (*Id.* ¶ 3.) Fourth, Lahrman alleges that AFI "engaged in misconduct and in conduct prejudicial to the administration of justice in and during these proceedings." (*Id.* ¶ 4.) Additionally, Lahrman disputes AFI's contention that he was not known to AFI before filing the State Court Action because he was referenced by Damron in an affidavit in the foreclosure proceedings between GMACM (and later Green Tree) and Damron. (Lahrman Decl. ¶ 5.) Finally, Lahrman argues that the Court abused its discretion "by reaching the merits of the dispute while Lahrman is not properly before the court and properly represented in the cause [*sic*]." (Motion ¶ 5.)[8]

## II.    DISCUSSION

### A.    Lahrman Fails to Satisfy the Standards for a Motion for Reconsideration

Bankruptcy Rule 9023 incorporates Federal Rule of Civil Procedure 59, which governs motions for amendment of a judgment. Rule 9023 states: "[a] motion . . . to alter or amend a judgment shall be filed . . . *no later* than 14 days after entry of judgment." FED. R. BANKR. P. 9023 (emphasis added). Lahrman filed the Motion seventeen days after the Court entered the Order, which prevents him from obtaining relief under Bankruptcy Rule 9023. Therefore, the Court will apply Rule 9024, which incorporates Federal Rule of Civil Procedure 60.

---

[8]    Lahrman also claims that AFI failed to comply with "L.R. 7.2," which, according to Lahrman, required AFI to provide him with copies of "numerous documents and select case law which are only available on digital databases to which Lahrman has no access, subscription, or membership." (Lahrman Decl. ¶ 8.) Lahrman appears to be referencing Local Rule 7.2 of the United States District Court for the Southern District of New York ("Authorities to be Provided to Pro Se Litigants"), which is not applicable to proceedings in this Court.

Rule 60 permits a court to grant relief from a final judgment or order for the following reasons: (1) "mistake, inadvertence, surprise, excusable neglect"; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct. (4) the judgment is void; (5) the judgment has been satisfied, released, discharged, or it is "no longer equitable"; or (6) "any other reason that justifies relief." FED. R. CIV. P. 60(b). A motion for reconsideration "is generally not favored and is properly granted only upon a showing of exceptional circumstances." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (citation omitted); *see also United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) (same). "A motion for reconsideration should be granted *only* when the [moving party] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (emphasis added) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). The party seeking Rule 60 relief bears the burden of proof. *See Int'l Bhd. of Teamsters*, 247 F.3d at 391. Whether to grant a motion for relief under Rule 60 is within the discretion of the court. *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012).

Because Lahrman is *pro se*, the Motion is held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, the Motion fails to identify adequate grounds for relief. Lahrman has neither identified any intervening change of controlling law nor introduced new evidence. Thus, to prevail, Lahrman must show the need to correct clear error of law or to prevent manifest injustice. He has not done so.

Instead, Lahrman focuses on what he alleges is "post-plan confirmation" conduct by GMACM, which he claims justifies his State Court Action against AFI. Lahrman claims that the Court misunderstood the nature of the State Court Action because it did not realize that Lahrman

10

is pursuing claims for post-confirmation acts. But Lahrman's assertion that the State Court Action is based on post-confirmation conduct is simply not true. He claims to base his theory for recovery in the State Court Action on a January 31, 2014[9] Cross Motion for Summary Judgment filed by Green Tree in the foreclosure proceedings initiated by GMACM against Damron in July 2010. As noted above, Green Tree acquired GMACM's servicing rights to Damron's mortgage after the Debtors filed these chapter 11 cases, and Green Tree filed a motion to intervene and substitute as plaintiff for GMACM in that foreclosure action. Green Tree has been the plaintiff in that action since April 23, 2013. Even so, its attorneys indicated that the January 31, 2014 summary judgment motion was submitted on behalf of both Green Tree and GMACM. But given that GMACM is no longer a plaintiff, this was merely a clarification that Green Tree was submitting the filing as the substituted plaintiff for GMACM. GMACM is not a plaintiff and is not engaged in affirmative conduct in that foreclosure action. Moreover, Lahrman's Complaints do not allege causes of action based upon this alleged post-confirmation "misconduct" of "filing" a motion for summary judgment. Lahrman's State Court Action instead alleges a claim against AFI based upon pre-confirmation, pre-petition conduct by Debtor GMACM.

> Lahrman asserts that he filed claims against AFI
>
> because GMAC Mortgage, LLC continues, <u>post-plan confirmation</u>, to engage in those same business practices and conducts previously enjoined by the foregoing "Consent Order(s)" and "Consent Judgment" . . . and because Ally has failed to provide that 'source of strength' which Ally agreed to provide in correcting the business practices and conducts of its mortgage industry related subsidiaries, Ally is both a proper party to and liable under "*the action*".

---

[9] Lahrman's State Court Action was filed on January 2, 2014, nearly a month before the alleged "post-plan confirmation" conduct. Additionally, Lahrman filed the State Court Action the same day his second Motion to Intervene in the state court foreclosure proceedings against Damron was denied. *See* State of Indiana Elkhart County Superior Court Docket, Case No. 20D02-1008-MF-00312.

11

(Lahrman Decl. ¶ 7.) But, as noted above, GMACM *did not* act post-Plan confirmation, nor is it a party to either the foreclosure proceeding or the State Court Action. Consequently, this is not a basis upon which Lahrman can assert a cause of action against AFI.

Lahrman also asserts that he is an "adjudicated incapacitated person" (Motion ¶ 4 n.1), but this does not alter the Court's analysis. The Court already applies the standard enunciated in *Haines v. Kerner* to *pro se* filings; the fact that Lahrman may have been adjudicated as incapacitated in the past does not alter the *Haines v. Kerner* analysis.

### B.     The Court Properly Enforced the Third Party Release and Plan Injunction

Lahrman argues that the Court abused its discretion by issuing the Order "while Lahrman is not properly before the court and properly represented in the cause [*sic*]." (*Id.* ¶ 5.) This argument is without merit. Lahrman was served with copies of the AFI Motion and notice of the hearing by special process server (*see* Reply Ex. A) and did not appear at the hearing, either in person or telephonically. The AFI Motion was properly before the Court and the Court rendered its decision on the record and in the Order under its authority to enforce previous orders (in this case, the Confirmation Order). The Third Party Release and Injunction provisions included in the Plan are enforceable against Lahrman.

#### 1.     *The Third Party Release and Plan Injunction are Appropriate in these Cases*

In the Second Circuit, non-debtor releases are permissible under certain circumstances. "[A] bankruptcy court only has jurisdiction to enjoin third party non-debtor claims that directly affect the res of the bankruptcy estate." *In re Johns-Manville Corp.*, 600 F.3d 135, 152 (2d Cir. 2010) (citation omitted). Because AFI filed proofs of claim for indemnification against the Debtors, and because AFI and the Debtors shared insurance policies, third-party claims such as

the ones asserted by Lahrman would affect the *res* of the estate, satisfying the jurisdictional underpinnings for the third-party release approved by the Court.

In *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 293 (2d Cir. 1992), the Second Circuit noted that "[i]n bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan." In its decision in *In re Metromedia Fiber Network Inc.*, 416 F.3d 136 (2d Cir. 2005), the Second Circuit further clarified the standard under which it is appropriate to grant non-debtor releases. The court identified two factors that are necessary for court approval of a non-debtor release: (1) the release must itself be important to the plan; and (2) the scope of the release must be necessary to the plan. *Id.* at 143. Thus, a non-debtor release is not justifiable simply on the ground that it was offered in exchange for a monetary contribution. *Id.*

During the Plan confirmation hearing, the Court considered all of the factors under *Metromedia* and *Johns-Manville* and their progeny and determined that the Court had the jurisdiction to enter the third party non-debtor release in favor of AFI. (*See* ECF Doc. # 6065, *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order"), ¶ UU.) The Court found that the *Metromedia* factors, which establish a high burden before a court will grant non-debtor releases, were satisfied in this case. The AFI Contribution was the "lynchpin of the Plan, without which the cases would devolve into endless litigation, the Plan would not be confirmable or feasible, and the recoveries currently contemplated by the Plan would not exist." (*Id.* ¶ RR.) As stated in the Plan, the Third Party Release was "an essential component and critical to the success of the Plan." (Plan Art. IX.D.) The Court found that "[t]hese facts are unprecedented and justify the approval of the Third Party Releases."

13

(Confirmation Order ¶ RR.) No appeal was taken from the Confirmation Order. It is a final order and may not be collaterally attacked. *Celotex Corp. v. Edward*, 514 U.S. 300, 313 (1995).

> 2. *The Court Has Authority to Enforce the Third Party Release and Plan Injunction Against Lahrman*

"All courts retain the jurisdiction to interpret and enforce their own orders." *In re Charter Commc'ns*, No. 09-11435, 2010 WL 502764, at *4 (Bankr. S.D.N.Y. Feb. 8, 2010); *see also Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151 (2009) ("[A]s the Second Circuit recognized . . . the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."). While a bankruptcy court's jurisdiction diminishes in importance following plan confirmation, *In re Gen. Media, Inc.*, 335 B.R. 66 (S.D.N.Y. 2005), the action in this case is "sufficiently close in time to confirmation of the Plan and sufficiently critical to the integrity of the Plan's structure that it is proper for this Court to take firm control and decide" the Motion. *Charter Commc'ns*, 2010 WL 502764, at *4.

As the court explained in *Charter Communications*, where a motion seeks to "prevent the prosecution of causes of action expressly prohibited by the confirmation order," it would be "difficult to identify judicial acts that are any more critical to the orderly functioning of the bankruptcy process or more closely tethered to core bankruptcy jurisdiction." *Id.* (citing *In re Petrie Retail, Inc.*, 304 F.3d 223, 230 (2d Cir. 2002) (finding that bankruptcy court retained core jurisdiction post-confirmation "to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization")).[10]

---

[10] While both this Court and the Indiana state court are competent to rule on the Plan Injunction and Third Party Release, the "bankruptcy court is more closely connected to the current dispute and is the proper forum to rule with respect to" enforcement of third party releases pursuant to the Plan. *Charter Commc'ns*, 2010 WL 502764, at *3 (explaining that the bankruptcy court was the appropriate court to interpret the plan releases in that case, for reasons that apply equally here: (1) the bankruptcy court had natural familiarity with the full record of the confirmation hearing and process; and (2) if the bankruptcy court interprets the plan confirmation order, there is a much smaller risk of erosion of its provisions and the injunction due to inconsistent interpretations across courts).

The $2.1 billion AFI Contribution to the successful Plan in this case was a significant factor to achieving Plan confirmation and a global resolution of the Debtors' bankruptcies. A key component of Ally's willingness to provide the Contribution was the Plan Injunction and Third Party Release. The Court carefully considered the record and weighed the relevant factors. Initially, the U.S. Trustee, which rigorously enforces the law with respect to third party non-debtor releases, had objected to the Third Party Release. That objection was withdrawn. By the time of confirmation, there were no objections to the non-debtor release included in the Plan. After considering the applicable case law and the U.S. Trustee's withdrawal of its objection, the Court approved the Plan, which included the Third Party Release and Injunction.

As explained above, Lahrman's claims against AFI relate to alleged prepetition conduct by GMACM or AFI—despite his assertions now that he is challenging postpetition conduct. As already mentioned, Lahrman alleges that AFI does business as GMAC Mortgage, LLC and Residential Funding, LLC, two of the Debtors in the chapter 11 case. (Compl. at 1; Supp. Compl. at 1.) Lahrman's claims fall squarely within the language of the release and injunction, "arising from or related in any way to the Debtors." (*See* Plan Art. IX.D.) Lahrman is bound by the Third Party Release and is therefore "permanently enjoin[ed] and preclude[ed]" from continuing his lawsuit against AFI. (*See* Plan Art. IX.I (enjoining all entities who hold "Claims . . . from: (a) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party whether directly, derivatively or otherwise, on account of or in connection with or with respect to any Released Claims; . . . [and] (e) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party on account of or in connection with or with respect to any Released Claims").)

15

### III.  CONCLUSION

As the Court determined at the March 26, 2014 hearing and by Order, Lahrman asserts a Claim as that term is defined in the Plan against AFI; he cannot do so.  None of the arguments Lahrman makes in the Motion support reconsideration under Federal Rule of Civil Procedure 60, so his Motion is **DENIED**.  The Order previously entered by the Court requires Lahrman to dismiss State Court complaint against AFI with prejudice.  Failure to comply with the Order may be punishable by contempt pursuant to Bankruptcy Rule 9020.

**IT IS SO ORDERED.**

Dated:    April 23, 2014
         New York, New York

                                    _____/s/Martin Glenn_____
                                    MARTIN GLENN
                                    United States Bankruptcy Judge