**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*<br><br>Debtors. | **NOT FOR PUBLICATION**<br><br>Case No. 12-12020 (MG)<br><br>Jointly Administered |

**MEMORANDUM OPINION AND ORDER SUSTAINING DEBTORS'**
**FIFTIETH OMNIBUS OBJECTION TO CLAIM NO. 3502**

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Jacqueline A. Warner ("Warner") alleges that in June 2009, she rescinded a loan secured by a lien on her home in California. She claims that despite the purported rescission, the Debtors initiated foreclosure proceedings in 2012, forcing Warner to sell her property on her own to avoid foreclosure. After Warner sold the property, Debtor GMAC Mortgage, LLC ("GMACM") took a portion of the sale proceeds, ostensibly to satisfy the outstanding balance on Warner's loan. Warner asserts that this taking was wrongful, that GMACM had no right to the money because the loan had been rescinded, and that GMACM must return the money to her. Warner would be correct if she had indeed rescinded her loan. But in fact, she had not. Warner never obtained acknowledgment of rescission, nor did she obtain a court order entitling her to rescission. Without either of those things, Warner never completed a rescission and never terminated the lien on her property. Indeed, Warner took actions during her individual bankruptcy that contradict her stated belief that she rescinded the loan in June 2009. The Court therefore **SUSTAINS** the objection to her claim.

## I. BACKGROUND

### A. The Motion

Pending before the Court is the *Debtors' Fiftieth Omnibus Objection to Claims (No Liability Borrower Claims – Books and Records)* (the "Objection," ECF Doc. # 5162), solely as it relates to Claim No. 3502 filed by Warner (the "Warner Claim"). The Debtors filed the initial briefing regarding the Objection, but the Plan has since become effective in these chapter 11 cases, so the Borrower Claims Trust (the "Trust") is now pursuing the Objection. The Trust seeks an order expunging the Warner Claim, which states a $1,049,290.15 secured claim against GMAC-RFC Holding Company, LLC ("GMAC-RFC"). Although filed against GMAC-RFC, the Warner Claim actually relates to the conduct of Debtor GMACM. In the interest of deciding this matter on the merits, the Court will treat the claim as having been stated against GMACM.

In response to the Objection, Warner filed an opposition (the "Opposition," ECF Doc. # 5454), and the Debtors filed a reply (the "Reply," ECF Doc. # 5736), supported by the Supplemental Declaration of Deanna Horst (the "Supp. Horst Decl.," ECF Doc. # 5736-3). Warner then submitted a sur-reply (the "Sur-Reply," ECF Doc. # 6601). After the Court issued an *Order Requiring Parties to Submit Supplemental Briefing* (ECF Doc. # 6592), both the Trust and Warner submitted additional five-page briefs describing the nature of Warner's loan (ECF Doc. ## 6652, 6657). The Trust's supplemental brief was supported by a further Supplemental Declaration of Deanna Horst (the "Second Supp. Horst Decl.," ECF Doc. # 6652-1). Warner submitted a second sur-reply responding to the Trust's supplemental brief (ECF Doc. # 6672). After the Hearing, Warner submitted further pleadings and affidavits (ECF Doc. ## 6757–58). Additionally, following the Court's request at the Hearing, the Trust submitted supplemental

2

documentation of the transfer of funds from GMACM to Ally Bank ("Ally") following the Property Sale.

### B.     The Warner Claim

Warner's proof of claim asserts a secured claim because: "Alleged loan is claim as Asset in GMAC Bankruptcy when already paid in full and no long value to GMAC."  In a later filing, Warner submitted what appears to be an amended proof of claim, stating a $1,026,026.90 secured claim against GMAC-RFC on the basis of "Loan Rescission tender paid security instrument" (the "Amended Proof of Claim," ECF Doc. # 6601-1).  The Warner Claim centers on her attempted rescission of her November 9, 2007 loan (the "Loan") executed with CMG Mortgage, Inc. ("CMG"), secured by her property in Redwood City, California (the "Property"). According to Warner, even though she rescinded that Loan, GMACM wrongly collected money to satisfy the outstanding balance after she sold her Property under the threat of foreclosure.

Warner has submitted the following relevant documents, among others:

- A June 29, 2009 letter from Warner to CMG, Ally, GMACM, and GMAC Mortgage Corporation, purporting to rescind the Loan pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635 (the "First Rescission Notice," *id*. Ex. 3);
- A November 16, 2009 Notice of Right to Cancel sent by Warner to GMACM, CMG, the Mortgage Electronic Registration System ("MERS"), and First American Title Insurance Company ("First American"), again purporting to rescind her Loan (the "Second Rescission Notice," *id*. Ex. 6);
- A December 3, 2009 Notice of Right to Cancel sent by Warner to Pite Duncan, LLP as the lender's agent (the "Third Rescission Notice," *id*. Ex. 4);
- A December 9, 2009 proof of claim filed by Ally in Warner's own bankruptcy in the Northern District in California.  Ally asserted a $990,742.62 secured claim for "money loaned," and the amount of the claim matches the principal balance that Warner owed on the Loan at the time (*id*. Ex. 7);
- A September 22, 2010 document evidencing Warner's discharge in her bankruptcy (the "Warner Discharge," *id*. Ex. 8);
- An August 22, 2012 Assignment of Deed of Trust transferring CMG's beneficial interest in Warner's Property to Ally (*id*. Ex. 1-A);

3

- A September 11, 2012 Notice of Default regarding Warner's Property, filed by Executive Trustee Services, LLC (Sur-Reply Ex. 1-B);

- A Loan payoff statement dated October 10, 2012, indicating that Warner owed $1,049,290.15 on the Loan (the "Payoff Statement," ECF Doc. # 5736-2 at 255);

- A December 11, 2012 final closing statement detailing the consideration paid for Warner's Property (Sur-Reply Ex. 1-C).

- Invoices showing the money paid to GMACM following the Property Sale (*id.* Exs. 1-D, 9–10).

This dispute raises questions of what occurred during Warner's bankruptcy, so aside from examining the exhibits submitted here, the Court also reviewed the docket from Warner's bankruptcy (the "Warner Docket").[1] The following narrative reflects the Court's review of the parties' filings here and the filings from Warner's bankruptcy.

### 1.    *The Loan*

GMACM serviced the Loan from the origination until transferring the servicing rights to Ocwen Loan Servicing, LLC in February 2013. (Second Supp. Horst Decl. ¶ 4.) GMACM never maintained any ownership interest in the Loan. (*Id.*) Non-Debtor Ally, on the other hand, acquired an ownership interest at least before June 29, 2009. (*See* Sur-Reply Exs. 3, 7.)

### 2.    *The First Rescission Notice*

On June 19, 2009, Warner attempted to rescind her Loan by sending the First Rescission Notice to CMG, Ally, GMACM, GMAC Mortgage Corporation. (Sur-Reply Ex. 3.) In that Notice, Warner stated that she was exercising her rights under TILA to rescind the Loan due to six defects in the Loan documentation. (*Id.* at 1.) Warner claimed that due to the defects, she had three years from the date of execution to rescind the Loan. (*Id.* at 2.) She also asserted that the recipients' "security interest in my home is now void . . . and you have twenty-days to return all of the payments I have made on this loan and to do your part to terminate the security interest

---

[1]    *In re Jacqueline Anne Warner*, No. 09-33436 (Bankr. N.D. Cal.).

in my home." (*Id*.) Finally, Warner stated that the First Rescission Notice also constituted a Qualified Written Request, and she demanded an accounting of her loan, including "loan disbursements, charges, all payments paid to date, and the principal balance." (*Id*.) None of the recipients responded to the First Rescission Notice.

*3.    Warner's Bankruptcy and the Second and Third Rescission Notices*

Warner filed a voluntary chapter 13 petition on November 4, 2009, and converted her bankruptcy to chapter 7 on December 22, 2009. On her amended schedules, Warner indicated that Ally was a secured creditor, and its debt was secured by the Property. (*See* Warner Docket # 65 at 1, 12.) Warner indicated that she intended to retain the Property and "pay pursuant to contract," and she valued Ally's secured claim at $990,743.00. (*Id*. at 1, 12) Additionally, Ally filed a proof of claim, asserting the same debt ($990,742.62, *see* Sur-Reply Ex. 7), and Warner never objected to the proof of claim. Nor did Warner initiate an adversary proceeding pursuant to Bankruptcy Rule 7001(2) to challenge Ally's lien on her Property.

After filing the chapter 13 petition, but before converting the case to chapter 7, Warner sent the Second Rescission Notice to GMACM, CMG, MERS, and First American on November 16, 2009. (*Id*. Ex. 6.) In this Notice, Warner alleged that the Loan was obtained by "wrongful acts of fraud, fraudulent inducement, concealment, and fraudulent misrepresentation." (*Id*. at 2.) She referenced the First Rescission Notice and stated that CMG never provided her with "true, complete, accurate, or timely documents." (*Id*.) Additionally, she stated that in lieu of tendering payment in exchange for rescission of the Loan, she would forgive GMACM, CMG, MERS, and First American "any liability incurred by [their] wrongful actions." (*Id*.) Warner also made "the one time demand of $2,967,247.00 from [GMACM] and [CMG] for any loss, damage, and injury" that she sustained. (*Id*. at 2–3.) Finally, she demanded that the recipients remove

5

negative comments from her credit report related to the Loan, and she stated that the recipients' failure to perform would render the Second Rescission Notice "as valid and fully agreed/accepted pursuant to the terms and conditions" of the Notice. (*Id*. at 3.)

Although the Second Rescission Notice alleges fraudulent conduct, Warner never scheduled a fraud claim against CMG, Ally, or GMACM, either in her original or amended bankruptcy schedules. (*See* Warner Docket ## 12,65.) Warner also sent the Third Rescission Notice during the pendency of her bankruptcy, but before conversion to chapter 7. (*See* Sur-Reply Ex. 4.) She only addressed that notice to Pite Duncan, LLP, as attorney for CMG. (*Id*. at 1.) In this Notice, Warner recited largely similar allegations from the Second Rescission Notice, including purported fraudulent conduct related to the Loan origination. (*Id*.) She also offered to forgive Pite Duncan's "liability incurred by its wrongful actions" in exchange for rescission. (*Id*. at 2.) Warner never scheduled a fraud claim against Pite Duncan.

### 4. *Warner's Discharge and Ally's Lien*

Warner received a discharge in her bankruptcy on September 22, 2010 (*see id*. Ex. 8), and her bankruptcy case was closed on December 16, 2010. (*See* Warner Docket # 147). Warner's discharge, though, did not eliminate Ally's lien on her Property. The chapter 7 trustee's final report in Warner's bankruptcy indicates that the trustee abandoned the Property back to Warner, meaning that the trustee did not dispose of the property to satisfy creditors. (*See id*. ECF Doc. # 113); *see also In re Wilson*, 492 B.R. 691, 695–96 (Bankr. S.D.N.Y. 2013) ("Upon the closing of a case, any remaining property of the estate abandoned by the chapter 7 trustee revests in the debtor[] . . . ."). The Warner Discharge explicitly stated that "a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the discharged [] debtor's property after the bankruptcy, if that lien was not avoided or eliminated in

6

the bankruptcy case." (Sur-Reply Ex. 8.) Since Ally asserted its interest in the Property during Warner's bankruptcy, and Warner did not object to the claim or avoid the lien during the case, Ally's lien survived Warner's bankruptcy, even though Warner's personal liability was discharged. *See*, 492 B.R. at 695–96 (explaining that the bankruptcy discharge injunction "only prevents enforcement of personal liability; it does not prevent foreclosure of a mortgage that remains in default after a discharge is issued and a chapter 7 case is closed").

### 5. *Default, Foreclosure Initiation, and Property Sale*

Warner stopped making Loan payments in November 2009. (*See* Payoff Statement; Sur-Reply Ex. 1-B. at 2.) Although Ally had apparently maintained an ownership interest in the Loan since 2009, CMG did not record an assignment of the deed of trust to Ally until August 22, 2012. (*See* Sur-Reply Ex. 1-A.) Then, in September 2012, nearly two years after Warner's bankruptcy closed and nearly three years after Warner's last Loan payment, Ally engaged Debtor Executive Trustee Services, LLC ("ETS") to begin foreclosure proceedings on the Property. (*See* Sur-Reply Ex. 1-B.) ETS sent Warner a Notice of Default and Election to Sell Under Deed of Trust, which ETS intended to record. (*Id.*) At the time, Warner owed more than $1 million under the Loan, including the principal balance, late fees, interest, and other fees and costs. (*See* Payoff Statement.)

Under the threat of foreclosure, Warner decided to sell the Property independently. (Mar. 26, 2014 Tr. at 73:5–25.) She found a buyer willing to pay $1.735 million, and she sold the Property on November 19, 2012, for that amount. (*See* Amended Proof of Claim at 4.) When settling the Property Sale proceeds, the title company acting as settlement agent disbursed $1,049,761.96 to GMACM, and after payment of other costs, Warner retained $595,330.12. (*See id.* at 5; *see also* Mar. 26, 2014 Tr. at 73:5–25.) On November 27, 2012, ETS recorded a Notice

7

of Rescission of Notice of Default due to the Property Sale and satisfaction of Ally's lien. (*See* Supp. Horst Decl. Ex. D-1.) On December 6, 2012, ETS recorded a Full Reconveyance of the Property. (*See* Amended Proof of Claim at 7.)

At the Hearing, the Trust represented to the Court that GMACM paid Ally the proceeds it received from the Property Sale. (Mar. 26, 2014 Tr. at 72:10–12.) The Court asked the Trust to submit documentation to both the Court and Warner verifying this payment from GMACM to Ally. (*Id.* at 86:13–23.) The Trust complied with this request on April 2, 2014 by e-mail, and even though Warner challenges the submission because the Trust did not submit a sworn affidavit verifying the accuracy of the submission (*see* ECF Doc. # 6758), the Court accepts the Trust's representations and supplemental submission as accurate.

## II. DISCUSSION

Warner argues that GMACM wrongly took proceeds from her Property Sale. Her Claim hinges on her contention that she successfully rescinded the Loan in 2009, so there was no debt for GMACM to collect. In support, Warner cites 12 C.F.R. § 226.15(d)(1), which is part of the Federal Reserve Board's Regulation Z, implementing TILA. That provision of Regulation Z states that "[w]hen a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void . . . ." 12 C.F.R. § 226.15(d)(1). Section 226.15(d)(2) provides that within twenty days "after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction . . . ."

Case law interpreting TILA is not uniform across the country. The Court will apply the Ninth Circuit's case law with respect to loan rescissions under TILA because (1) Warner's Property was located in California, (2) her personal bankruptcy case was filed in the Northern District of California, and (3) she purported to rescind the Loan under federal law (TILA) while

8

she lived in California. In *Yamamoto v. Bank of New York*, the Ninth Circuit held that neither TILA nor the Regulation Z gives "a borrower's mere assertion of the right of rescission . . . the automatic effect of voiding the contract." 329 F.3d 1167, 1172 (quoting *Large v. Conseco Fin. Serv. Corp.*, 292 F.3d 49, 54–55 (1st Cir. 2002)) (internal quotation marks omitted). Other courts have adopted this view, which is indeed the majority view. *See Am. Mortg. Netweork, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007) ("[U]nilateral notification of cancellation does not automatically void the loan contract."). The Ninth Circuit recognized the risk that if rescission were automatic, borrowers could free themselves of secured loans simply by claiming TILA violations regardless of the veracity of those claims. *See Yamamoto*, 329 F.3d at 1172. Under Ninth Circuit precedent, Ally's lien would have been void only after Ally "acknowledge[d] that the right of rescission is available, or because the appropriate decision maker . . . so determined." *Id.* (quoting *Large*, 292 F.3d at 54–55) (internal quotation marks omitted); *see also Iroanyah v. Bank of Am., N.A.*, 851 F. Supp. 2d 1115, 1124 (N.D. Ill. 2012) (holding that TILA and Regulation Z only render security interests void when rescission is completed, "which does not occur immediately upon the sending of a rescission notice").

Warner argues that *Yamamoto* is inapposite because it involved a contested rescission, while here, the creditors simply never responded to Warner's notices. (*See* ECF Doc. # 6758 at 3.) But the creditors' silence does not alter the conclusion here. The truth remains that Warner's unilateral act of sending the rescission notices did not complete rescission or void Ally's security interest. Warner is correct that *Yamamoto* involved a contested rescission, but the Ninth Circuit explained the standard for completing rescission in both contested scenarios and outside the courtroom. In the context of a contested rescission, a security interest is voided only "when the right to rescind is determined in the borrower's favor." *Yamamoto*, 329 F.3d at 1171. Where the

9

parties have not litigated the rescission, though, the security interest is voided only when the "creditor acknowledges that the right of rescission is available." *Id*. at 1172 ("If [the creditor] had acquiesced in [the borrower's] notice of rescission, then the transaction would have been rescinded automatically, thereby causing the security interest to become void . . . .") (citation omitted); *see also Cromwell v. Countrywide Home Loans, Inc.*, 483 B.R. 36, 46 (D. Mass. 2012) ("[R]escission is only appropriate where it is undisputed or a judge finds the necessary conditions.").

Courts applying this standard have required that absent the creditor's acknowledgment of rescission, "the borrower must file a lawsuit so that the court may enforce the right to rescind." *Gilbert v. Residential Funding LLC*, 678 F.3d 271 (4th Cir. 2012). To be sure, not all circuits agree with this conclusion. *See, e.g., Sherzer v. Homestar Mortgage Services*, 707 F.3d 255, 265 (3d Cir. 2013) (holding that rescission is achieved when borrower "with a *valid* TILA claim provides the lender with written notice" and if the lender believes the borrower's notice is invalid, the lender "may choose to file suit to resolve any uncertainty") (emphasis in original). But this Court's Opinion is guided by the Ninth Circuit, and the law in the Ninth Circuit is that Warner's letters alone did not void Ally's lien.

Trying to spin *Yamamoto* in her favor, Warner argues that even if her rescission notices alone did not automatically rescind the Loan, Ally's failure to respond resulted in rescission. (*See* ECF Doc. # 6758 at 4.) Warner construes Ally's silence as an "acquiescence," and *Yamamoto* holds that a creditor's acquiescence automatically results in transaction rescission. *See Yamamoto*, 329 F.3d at 1172. But Ally did not acquiesce. It took no action to remove the lien on her Property. Had Ally done that, or had Ally explicitly acknowledged the rescission to Warner, then it would have acquiesced. Silence alone in this context does not suffice, though.

10

Moreover, Ally actively sought to protect its interest in the Property. During Warner's bankruptcy, Ally filed a proof of claim relating to the Loan. (*See* Sur-Reply Ex. 7.) Indeed, Warner scheduled Ally's claim, acknowledged that it was secured, and stated her intention to "pay pursuant to [the Loan] contract." (Warner Docket # 65 at 1, 12.) Thus, neither party acted as though Ally had acquiesced in the purported rescission.

Warner was not without options in the face of Ally's silence. She could have initiated a lawsuit to enforce the purported rescission. Or during her bankruptcy, she could have initiated an adversary proceeding to (1) confirm that the lien on her Property was terminated, (2) strip the lien, or even (3) pursue a fraud claim regarding the Loan origination.[2] She also could have objected to Ally's proof of claim. Or she could have filed a suit in response to the foreclosure initiation in 2012. But she did none of those things.

Underlying all of this, of course, is that GMACM was only the servicer throughout. Since Warner did not effectively complete rescission of the Loan, GMACM was entitled to

---

[2] Warner never scheduled a fraud claim or any other claim relating to the origination of the Loan. Since the Loan origination and her First Rescission Notice preceded Warner's bankruptcy, any claim for which she sought rescission would have been property of her bankruptcy estate—either her chapter 13 estate, or her chapter 7 estate after the case was converted from a case under chapter 13 to a case under chapter 7. Warner's Second Rescission Notice alleging fraud was filed while her chapter 13 case was pending; the fraud claim would have become part of the estate then. *See* 11 U.S.C. § 1306(a) ("Property of the estate includes, in addition to property specified in section 541 of this title—(1) property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 . . . .").

When she converted the case to case under chapter 7, Warner filed updated schedules of assets pursuant to Federal Rule of Bankruptcy Procedure 1019(1). She still did not schedule a fraud claim. "[A] debtor's asset schedules are filed under the penalty of perjury, and the debtor's failure to comply can result in the revocation of discharge and other civil penalties." *In re Easley-Brooks*, 487 B.R. 400, 408 (Bankr. S.D.N.Y. 2013) (quoting *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 378 (2007)) (internal quotation marks omitted). If Warner believed that she was the victim of a fraud entitling her to rescind her Loan, she did not disclose the claim as she was required to do under the penalty of perjury.

The point is not to chastise Warner for her conduct during her bankruptcy. Rather, the Court is highlighting yet another inconsistency between Warner's actions in her bankruptcy and her positions taken now. During her bankruptcy, Warner scheduled Ally's secured claim and stated that she intended to pay pursuant to the contract. She never scheduled a fraud claim; she never objected to Ally's claim; and she never attempted to avoid the lien by commencing an adversary proceeding under Bankruptcy Rule 7001(2). The Court rejects Warner's effort now to argue that she had completed the rescission before her bankruptcy case was even initiated (*see* ECF Doc. # 6758 at 2–3); her actions simply belie that position.

11

continue servicing the Loan, including collecting the proceeds from the Property Sale required to satisfy the outstanding balance on the Loan. Given that conclusion, Warner's claim against GMACM must be disallowed and expunged.

### III.    CONCLUSION

The evidence indicates that Warner's attempts to rescind the Loan never resulted in a completed rescission. Warner did not schedule a claim against GMACM in her bankruptcy, and she did not file an adversary proceeding to avoid the lien. Ally's lien therefore rode through the bankruptcy. While Warner's personal liability was discharged, commencing foreclosure after the bankruptcy case closed was proper. When Warner sold the Property to prevent the foreclosure sale, the sale proceeds were properly applied to satisfy the outstanding mortgage, with the surplus paid to Warner. All of this was as it should be.

Therefore, the Court **SUSTAINS** the Objection to the Warner Claim, and her Claim is disallowed and expunged.

It is so ordered.

Dated:  April 25, 2014
        New York, York

                                        ___*Martin Glenn*_____
                                           MARTIN GLENN
                                        United States Bankruptcy Judge