IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR COLLIER COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

DEUTSCHE BANK TRUST COMPANY
AMERICAS AS TRUSTEE FOR RALI 2007QS3,

    Plaintiff,

v.                                                              Case No.: 09-7336-CA

BARRY F. MACK A/K/A BARRY FRITZ
MACK A/K/A BERRY FRITZ MACK, ET AL.

    Defendants.
_____/

### JUDGMENT CREDITORS/DEFENDANTS MACK'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO SET ASIDE FINAL JUDGMENT AND FOR NEW TRIAL

COME NOW Judgment Creditors/Defendants, BARRY F. MACK and CHERYL M. MACK, and file their Memorandum of Law in Opposition to Plaintiff's Motion to Set Aside Final Judgment and for New Trial of Plaintiff, DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE FOR RALI 2007QS3, as follows:

### SUMMARY OF THE ARGUMENT

Judgment Creditor/Defendants MACK obtained a judgment against Plaintiff on a counterclaim to Plaintiff's suit to foreclose a mortgage that was initiated in August of 2009 and concluded with a judgment in favor of the Macks on May 5, 2011.

Plaintiff filed a motion dated July 11, 2011 that the judgment should be vacated pursuant to Fla. R. Civ. P. 1.540(b), which provides equitable authority to a court to reverse a default judgment if the moving party can show three factors:

1. Excusable neglect during the course of litigation;
2. Diligence in bringing the motion to vacate upon learning of the judgment; and
3. Meritorious defense.

Defendants MACK respond and state that under the facts of the case and the law of the State of Florida, Plaintiff's motion to vacate does not show excusable neglect, due diligence or a meritorious defense. Since 1.540, Fla. R. Civ. P. provides motions to vacate should be entertained by courts on such conditions that are deemed just, it is an equitable remedy, and subject to equitable attacks. Defendants MACK maintain that Plaintiff acted inequitably in bringing the foreclosure suit, acted inequitably in maintaining the foreclosure suit, and has not acted equitably in bringing its motion to vacate. Defendants MACK further maintain they would be irreversibly harmed if the court vacated their judgment and order a new trial against Plaintiff DEUTSCHE BANK.

## ARGUMENT

### I. Excusable Neglect

Plaintiff maintains that the excusable neglect entitles them to a reversal of the judgment of May 5, 2011, is based on the fact that their attorney, the Law Offices of David J. Stern, P.A. informed them the file had been closed on September 3, 2009 and despite receiving a shower of legal pleadings from the Macks over the next 18 months, failed to notify the attorney for Deutsche Bank of the record activity and Deutsche Bank had no knowledge whatsoever of the proceedings until they received a copy of the judgment sent directly to them by the Court and received on May 11, 2011.

In support of their motion, they proffer four cases. The first, *Beasley v. Girten*, 61 So.2d 179 (Fla. 1952), was a case where the court ordered a pretrial conference and neither the plaintiff nor his counsel appeared and did not give reason for their actions. The court dismissed the case with prejudice. The Supreme Court granted to Plaintiff under the precursor to our modern rule Fla. R. Civ. P. 1.540, which was as follows:

> "Although persistent refusal to attend might, in the interest of the justice, require a dismissal without prejudice, we think for the reasons given that such a dismissal upon the first infraction is too severe."

Plaintiff also tenders the case of *Anthony v. Schmitt*, 557 So.2d 656 (Fla. 2d DCA 1990). In the Anthony case the plaintiff was suing for wrongful death and the record demonstrated an abysmal record of prosecution. When plaintiff's counsel failed to appear for a scheduled status conference, a trial court refused to consider a rehearing with motion and affidavits by the

plaintiff's counsel. The Second District Court of Appeal granted plaintiff relief and reversed the dismissal stating, "typically, it is more appropriate for the trial court to require the trial attorney to atone for his own sins rather than visit them upon the attorney's unfortunate client."

The case of *Wilson v. Woodward*, 602 So.2d 547 (Fla. 2d DCA 1992), the trial court dismissed the case upon the failure of Wilson's attorney to appear at a summary judgment hearing because of a secretarial error in the attorney's office. The Second District Court of Appeal reversed stating that, "the attorney presented uncontroverted evidence that he failed to appear at the hearing because of a mistake and not because of any willful or flagrant act."

Plaintiff presents *Yusem v. Butler*, 683 So.2d 1170 (Fla. 4th DCA 1996), where the trial court refused to vacate a default stating, "appellant's attorney, Richard H. Pearlman abandoned his client without notice and vacated his Florida office. Accordingly, service of an amended complaint by appellees on Perlman at the lawyers' vacated Florida office and at some California address could not be considered notice to his abandoned clients, whose failure to respond constituted excusable neglect."

The first three cases are cases in which cases were dismissed for an attorney's failure to appear at a hearing. In each case a motion to vacate the dismissal was brought showing a clerical or scheduling error. The courts found that a dismissal with prejudice was too harsh for a single instance of mistake when coupled with a showing of communication breakdown. The case of *Yusem v. Butler*, was a case where a clerk's default had been entered upon the failure of the appellant's attorney to respond to an amended complaint after he abandoned his clients without notice and vacated his Florida office *Id*.

These four cases are not on point. In the Mack case, there was case a cascade of pleadings beginning in September 2009 and up to and including the very date of a trial in which live testimony and evidence was presented overwhelmingly showing that Deutsche Bank improperly maintained a foreclosure suit against the Macks and the Macks suffered severe economic damages by being forced to sell their house under threat of foreclosure at a reduced price and severe physical damages with the hospitalization of Mrs. Mack for a suicide attempt, which ultimately led to renal damage and presently, Hospice care.

The shower of correspondence and legal documents that were served on the attorney Deutsche Bank by Defendants MACK and the court were as follows:

1. Answer to Complaint to Foreclose Mortgage, Affirmative Defenses and Counterclaim – September 9, 2009.
2. Motion for Default – October 16, 2009.
3. Default – October 21, 2009.
4. Defendants' First Request for Production – November 2, 2009.
5. Defendants' Request for Designation of Corporate Representative – November 2, 2009.
6. Letter to Elsa Shum – November 18, 2009.
7. Defendants' Notice for Trial – November 18, 2009.
8. Letter to Elsa Shum – December 28, 2009.
9. Motion for Referral to General Magistrate – July 30, 2010.
10. Notice of Case Management Conference – July 30, 2010.
11. Letter to Judge Hayes – July 30, 2010.
12. Order of Referral to General Magistrate – August 2, 2010.
13. Defendants' Second Request for Production – September 21, 2010.
14. Letter to Judge Hayes - October 14, 2010.
15. Letter to Magistrate – October 14, 2010.
16. Recommended Order of General Magistrate on Case Management Conference – October 21, 2010.
17. Order on Recommended Order of General Magistrate on Case Management Conference – November 9, 2010.
18. Letter to Judge Monaco – with a copy sent certified mail to Elsa Shum on January 31, 2011.
19. Defendants' Motion to Compel Discovery – February 2, 2011.
20. Cover letter to Clerk – February 2, 2011.
21. Letter to Shum – February 2, 2011.
22. Notice of Hearing Before General Magistrate – February 8, 2011.
23. Motion of Referral to General Magistrate – February 8, 2011.
24. Cover letter to clerk – February 8, 2011.
25. Letter to Judge Hayes – February 8, 2011.
26. Order of Referral to General Magistrate – February 10, 2011.
27. Order Setting Docket Sounding – February 16, 2011.
28. Order Setting Non-Jury Trial – March 16, 2011.
29. Report and Recommended Order on Defendants Motion to Compel Discovery – March 17, 2011.
30. Order on Recommended Order of General Magistrate on Defendants' Motion to Compel Discovery – April 12, 2011.
31. Final Judgment – May 5, 2011.

A partial review of the file that Plaintiffs DEUTSCHE produced as the contents of the Stern file, showed the following were present:

1. Notice of Hearing Before General Magistrate – February 8, 2011. *
2. Cover letter to clerk – February 8, 2011.
3. Motion for Referral to General Magistrate – February 8, 2011.
4. Letter to Judge Hayes – February 8, 2011.

5. Letter to Shum – February 2, 2011.*
6. Copy of cover letter to Clerk – February 2, 2011
7. Defendants' Motion to Compel Discovery – February 2, 2011.
8. E-mail from GHH to Stern – February 4, 2011. *
9. Letter to Judge Monaco – January 31, 2011. *
10. Order on Recommended Order of General Magistrate on Case Management Conference – November 9, 2010.
11. Report and Recommended Order on Case Management Conference – October 21, 2010.
12. Letter to Judge Hayes – October 14, 2010.
13. Letter to Magistrate – October 14, 2010.
14. Cover letter to clerk - September 21, 2010.
15. Order of Referral to General Magistrate – August 2, 2010. *
16. Cover letter to clerk – July 30, 2010.
17. Notice of Case Management Conference – July 30, 2010.
18. Motion for Referral to General Magistrate – July 30, 2010.
19. Letter to Judge Hayes – July 30, 2010.
20. Letter to Shum – December 28, 2009.
21. Defendants' Notice for Trial – November 18, 2009.
22. Default – October 21, 2009.
23. Answer to Complaint to Foreclose Mortgage, Affirmative Defenses and Counterclaim – September 9, 2009.
24. Order of Referral to General Magistrate – undated. *
25. Order Setting Case for Docket Sounding – undated. *
26. Order on Recommended Order of General Magistrate on Case Management Conference – undated.*
27. Order of Referral to General Magistrate – undated.

Each document produced to date in the Stern file shows receipt by the attorney for Deutsche Bank; those with an asterisk were bar coded and entered into the data system of Stern's office. There can be no question this was a clerical error, but rather was a concerted, intentional effort and act by the attorney of record for Deutsche Bank to not respond or participate in any way.

Florida courts have overwhelmingly refused to entertain motions to vacate judgment pursuant to Fla. R. Civ. P. 1.540(b) where an attorney failed to respond to pleadings, hearings and other court activities. (See *Herrick v. Southeast Bank, N.A.*, 512 So.2d 1029 (Fla. 3rd DCA 1997) - "excusable neglect sufficient to warrant vacating a default is not shown by mere proof that a defendant relied upon another to defend the action.")

*Bequer v. National City Bank*, 46 So.3d 1199 (Fla. 4th DCA 2010), the appellate court found that the trial court erred in setting aside a default where the appellee failed to establish

excusable neglect stating, "[w]hile appellee's inaction to respond to the complaint alone might have constituted excusable neglect given the system appellees had in place, the failure to respond to the complaint, when coupled with the correspondence sent on three different occasions constitutes gross negligence." Further, the court stated:

> This court recognizes the 'extremely high standard of review' when reviewing for gross abuse of discretion. *Allstate Floridian Insurance Company v. Ronco Inventions, LLC*, 890 So.2d 300 (Fla. 2d DCA 2004). However, if the court were to find that the particular facts of this case did not violate the standard of gross abuse of discretion for failure to demonstrate excusable neglect, we would be hard pressed to find violations of this standard in other cases, and ultimately the standard would effectively countenance any type of negligence as being 'excusable'."

The case of *Rivera v. Dept. of Revenue*, 899 So.2d 1265 (Fla. 2d DCA 2005) is a child support case where appellant appealed from an order setting aside a supplemental judgment modifying child support where the appellant had filed a petition to modify his child support. The DOR, representing his former wife, failed to file a responsive pleading or appear on a motion for default. Mrs. Rivera filed a motion to set aside the final judgment pursuant to 1.540(b) contending that the Department's neglect of her case was excusable. The appellate court reversed the order setting aside the supplemental order of child support stating that, "our review of the record indicates that the trial judge intended to protect Ms. Rivera from the failure of counsel provided to her by the Department of Revenue. Although we understand this laudable motivation, it is the duty of the Department, not the trial court, to insure their clients receive adequate representation."

In the case of *Wycoff v. Wycoff*, 374 So.2d 614 (Fla. 4th DCA 1979) Aetna filed a motion for relief from a judgment pursuant to Fla. R. Civ. P. 1.550(b) alleging that it had relied on defendant Ewing's attorney to provide a defense for Aetna, and by oversight or neglect no such representation was provided. The appellate court reversed the trial court which granted a motion for a stay of execution pursuant to Rule 1.550 that errors of law do not constitute good cause for granting a stay of execution on a final judgment any more than it can be treated as good cause for relief under 1.540(b). Further, "negligence of counsel will not support the setting aside of default judgment absent exigent circumstances." (See also *Westinghouse Credit Corp. v. Steven Lake Masonry, Inc.*, 356 So.2d 1329 (Fla. 4th DCA 1978); *Allen v. Wright*, 350 So.2d 111 (F;a/

1st DCA 1977); *Sun Finance Corp. v. Friend,* 139 So.2d 484 (Fla. 3d DCA 1962); *Wrigtht v,. Spears,* 123 So.2d 689 (Fla. 3d DCA 1960).

The case of *Kandell v. Patten,* 375 So.2d 356 (Fla. 4th DCA 1979), is a case in which a trial court notified counsel of its intention to dismiss for lack of prosecution. Counsel overlooked the case and it was dismissed. Abatement was sought pursuant to Fla. R. Civ. P. 1.540(b) on the grounds of excusable neglect. The trial court granted reinstatement, the appellate court reversed stating; "[t]o characterize the appellee's inattention to this case over a period of nearly two years as excusable neglect would emasculate the finality of dismissals for lack of prosecution and allow almost any inattention to a case to be described as excusable."

The appellate courts in the State of Florida have uniformly found that a party will be responsible for the inaction, inattention or failure to respond of its attorney, unless that inattention is a unique, single act, coupled with some understandable mistake. Courts have persistently maintained that when a party hires an attorney and entrusts a legal proceeding to that attorney, any failure of counsel is their responsibility – not the court's or the other party.

If the facts alleged by Deutsche Bank were supported by evidence that, in fact, Stern consistently failed to attend to the counterclaim over a period of 18 months, then undoubtedly Deutsche Bank would have a cause of action against Stern for a lack of professional responsibility. However, Plaintiff's remedy is not to disturb a final judgment entered after a trial on the facts and damages together with witnesses and documentation for which Deutsche Bank chose not to request a rehearing and chose not to pursue an appeal.

It should be noted nowhere in the affidavits and discovery adduced to date is there any evidence that the Law Offices of David J. Stern, P.A. failed to adequately communicate with its clients, GMAC and Deutsche Bank. Rather, Deutsche Bank relies solely on records exclusively maintained by GMAC and partially adduced through discovery which do not show any communication between GMAC and the Law Offices of David J. Stern, P.A. of the counterclaim or knowledge of the suit after September 3, 2009. Further, numerous affidavits by employees and officers of GMAC and Deutsche Bank all state that they have no personal knowledge of any communication and in almost every single case, nor would they have had any knowledge because they did not ordinarily deal with Stern. However, the Macks maintain they were continually calling GMAC during the fall of 2009 and into 2010 and have presented a letter dated October 26, 2009, (Exhibit "A") specifically referring to the foreclosure suit more than a

month after DEUTSCHE BANK claimed that it had no further knowledge of the foreclosure suit or counterclaim. For some completely unexplained reason on December 9, 2009, the Law Offices of David J. Stern, P.A. filed a unilateral dismissal of its foreclosure suit (but which did not disturb the Macks' counterclaim) when DEUTSCHE BANK and its agent GMAC had been claiming that the file was closed on September 2, 2009 and there was no further activity whatsoever.

The facts alleged by DEUTSCHE BANK allow only one of three different interpretations:

1. That Stern was grossly negligent and that Deutsche Bank, his client, was the unparticipating victim.
2. That Deutsche Bank and its agent/servicer GMAC did not maintain or produce viable records to make any determination.
3. That Stern knowingly and actively failed to make any response to the Macks' counterclaim and did so with the full consent and cooperation and knowledge of his clients, Deutsche Bank and its servicer, GMAC.

Since the third possibility is the one most consistent with attorney-client relationships, it should be the presumed fact in the absence of a strong showing of evidence to the contrary by Deutsche Bank. Deutsche Bank and GMAC have failed to produce any affirmative proof of a continuous failure to respond by Stern to almost 20 separate letters, pleadings and orders over a period of 18 months. If GMAC had something to hide because they had guilty knowledge as to why the foreclosure suit was wrongfully brought in the first place, the presumption would be strengthened by showing a motive on the part of GMAC, as agent for Deutsche Bank, to conceal its misdeed in bringing the foreclosure. This presumption is further strengthened by the continual refusal by GMAC to allow discovery into the circumstances involved in bringing the foreclosure in the first place instead of honestly and openly admitting a mistake and throwing itself on the equitable discretion of the court.

## II.    Due Diligence

The second prong that Plaintiff must meet is proving that it acted with due diligence in moving to vacate the judgment once they learned of the existence of the judgment.

To meet the due diligence requirements, Plaintiff alleges as follows:

> Deutsche Bank first received notice of Defendant's countersuit and the final judgment on May 12, 2011. It quickly retained undersigned counsel, conducted an immediate internal investigation and has attempted to contact the attorneys at Stern, including Shum. Deutsche Bank is prepared to move as quickly as the court desires to redress this situation.

If the assertion by Plaintiff that it received notice of the judgment on May 12, 2011 is correct, then the motion to vacate on July 13, 2011 was exactly 62 days after Plaintiff first received notice. The evidence will show that Plaintiff actually received notice of the final judgment on May 11, 2011, by acknowledging receipt of a final judgment on that day from the court (attached hereto as Exhibit "B").

Plaintiff gives no reason for the 62-day delay from the notice of the judgment to the filing of the motion to vacate. Plaintiff had knowledge of the judgment on May 11, 2011. The judgment was entered on May 5, 2011. Therefore, Plaintiff still had 4 days under the Florida Rules of Civil Procedure to bring a motion for rehearing pursuant to Fla. R. Civ. P. 1.530. Plaintiff also had 30 days to file a notice of appeal pursuant to Fla. R. App. P. 9.110(b). Although Plaintiff DEUTSCHE maintains that it immediately contacted its attorneys to perform an investigation, the attorneys elected not to file an appeal within the time limits set forth in Fla. R. App. P. 9.110. Instead, Plaintiff waited until July 13, 2011, after Plaintiff had been served with a Subpoena for Deposition in Aid of Execution (attached hereto as Exhibit "C"). Further, GMAC Mortgage, LLC, the servicer and corporation responsible for the conduct of the lawsuit and the handling of the Mack loan was also served with a Subpoena Duces Tecum for Deposition in Aid of Execution on June 22, 2011 (attached hereto as Exhibit "D"). Only after receiving notice of efforts to execute on the judgment did Plaintiff respond with their motion to vacate. When presented with facts similar to the ones at issue in this case, Florida appellate courts have not hesitated to reverse trial courts that granted motions to vacate pursuant to Rule 1.540(b). Fla. R. Civ. P., with uniformity.

In the case of *Otero v. Gov't Employees Insurance Company*, 606 So.2d 443 (Fla. 2d DCA 1992), the court found that the appellant, GEICO, did not move to vacate a default until May 3, 1991, after having been mailed a copy of the final judgment on March 6, 1991, and was guilty of gross negligence for failing to promptly moving to vacate and that, "it was therefore a gross abuse of discretion to vacate the final judgment and the underlying default." Further in

*Trinka v. Struna*, 913 So.2d 626 (Fla. 4th DCA 2005), where the trial court set aside a final default judgment, the appellate court reversed the order. Here, the attorney for the appellant became aware of a clerk's default on the case he had been retained in to represent Struna. The attorney failed to take any action or file a paper at that time, and a final judgment was entered on July 1, 2003. On July 3, 2003, Struna filed a motion to vacate the default (some two days after the entry of the final judgment). The court denied Struna's claim of excusable neglect citing *Somero v. Hendry General Hosp.*, 467 So.2d 1103 (Fla. 4th DCA 1985) stating, "[t]he pattern which emerges from these and the myriad of cases not cited here is best stated negatively: a default will **not** be set aside where the defaulted party or his attorney (1) simply forgot or (2) intentionally ignored the necessity to take appropriate action." The court went on to cite *Westinghouse Credit Corp. v. Steven Lake Masonry, Inc.*, 356 So.2d 1329 (Fla. 4th DCA 1978), "swift action must be taken upon first receiving knowledge of any default. Further delay in excess of the time reasonably necessary to prepare and file a notice to vacate should prove fatal absent some exceptional circumstance." In *Allen v. Wright*, 350 So.2d 111 (Fla. 1st DCA 1997) the appellate court struck down the trial court's interlocutory order reversing a default noting that the defendant became aware of the default in February 1997, and did not file a motion to vacate until March 21, 1997. The appellate court found the lower court abused its discretion in setting aside the default against Wright when he failed to move to vacate from time of learning of the default of February and the filing of the motion on March 21, 1997.

In *Bennett v. Halper*, 248 So.2d 522 (Fla. 3d DCA 1971), the appellate court approved a trial court's decision to deny a motion to vacate where counsel did not move to vacate within 34 days after knowledge of the judgment.

In the case of *Lazcar Int'l, Inc. v. Caraballo*, 957 So.2d 1191 (Fla. 3d DCA 2007), the court found that a six-week delay from learning of a judgment to the filing of a motion to vacate is a lack of due diligence as a matter of law. That court cited to *Westinghouse*, 356 So.2d at 1330, finding a six-week delay in the filing of a motion to vacate constituted a lack of due diligence as a matter of law. The court also cited *Fischer v. Barnett Bank of South Florida, N.A*, 511 So.2d 1087 (Fla. 3d DCA 1987), finding a five week delay in filing a motion to vacate entirely inexcusable. They further referred to *Bayview Tower Condo Association v. Schweitzer*, 475 So.2d 982 (Fla. 3d DCA 1985) finding a one-month delay showed a lack of due diligence. Also referred to was *Allstate Floridian Ins. Co. v. Ronco Inventions, LLC*, 890 So.2d 300 (Fla.

2d DCA 2004) finding a seven-week delay was unreasonable.

In the case of *Westinghouse*, 356 So.2d at 1329, the appellate court did not hesitate to reverse a trial court that had set aside a final judgment after default stating, "[y]et there are two areas where the courts have consistently upheld defaults and both are factors in this case. First, failure of the attorney to act with no good reason given (citation omitted). Second, failure to immediately act upon learning of the default. (citation omitted)." In the Westinghouse case, the defendants turned over the complaint to a lawyer who failed to do anything to justify his inactions by reporting a disappearance of the pleadings. Four weeks after three copies of the complaint were served, the defendants waited a further seven weeks before attempting to vacate, which was 30 days after receipt of the final judgment. The appellate court stated:

> The message is clear. Negligence by a litigant's representative may be grounds for an independent suit, but it will not support the setting aside of a default judgment save under exceptional circumstance. Moreover, swift action must be taken upon first receiving knowledge of the default. Further delay in excess of the time reasonably necessary to prepare and file a notice to vacate should prove fatal, absent some exceptional circumstance. In the case at bar, we find the attorney's inaction unacceptable and the delay, after learning of the default, unexceptional. As such, there exists no excusable neglect under Fla. R. Civ. P. 1.540(b).

The appellate court in *Allstate Floridian Ins. Co.*, found that the trial court's entry of an order setting aside a default upon a motion filed seven weeks after learning of the entry of a final judgment was a gross abuse of discretion by the trial court and reversed. The appellate court cited several cases regarding due diligence and found that a one-week delay had been ruled to be due diligence, a three delay was a reasonable exercise of diligence; 6 days was considered due diligence; and 15 days was accepted due diligence; and a next-day filing was reasonable. The court suggested that a rule of thumb in determining what is a reasonable amount of time to bring a motion to vacate a default after learning of a default should be 20 days. In this case, the appellate court found there was a shower of notices leading up to the default, and therefore a seven-week delay was unreasonable.

In *Bailey v. Deebold*, 351 So.2d 355 (Fla. 2d DCA 1977), the appellate court reversed the trial court which had set aside a default upon a motion to vacate finding the moving party was guilty of gross neglect stating, "[w]here a party, as here, admits to notice of default in May, the subsequent entry of a final judgment against him, two separate garnishment judgments and the

institution of a separate creditor's complaint before he initiates a response he does not justify the delay or show 'excusable neglect'."

Plaintiff's explained delay in failing to immediately moving the court to vacate the default was 63 days after first learning of the default was gross negligence and inexcusable neglect, which alone would defeat their motion to vacate. However, coupled with the fact that Plaintiff only made efforts to vacate the default after being subject to execution, and further having its agent who was responsible for maintaining the suit served with a subpoena in aid of execution shows that it was not remorse over mistaken failure to attend to the counterclaim, but rather fear of collection efforts instituted by the Macks that motivated Plaintiff's motion to vacate.

### III. Meritorious Defense

Plaintiff maintains in its motion to vacate pursuant to 1.540(b), Fla. R. Civ. P. that it has a meritorious defense. However, it admits the basic facts of the counterclaim leading to the judgment in favor of the Macks because GMAC as the agent for Plaintiff wrongfully filed a foreclosure suit against the Macks, and wrongfully maintained the foreclosure suit when the Macks were not in arrears on their payments. The meritorious defenses they discuss then fall into three categories.

   a. Plaintiff complains under its allegations of a meritorious defense that the filing of lis pendens is insufficient to constitute actionable publication. They fail to acknowledge that the foreclosure lawsuit was actionable because it was wrongfully filed. The lis pendens was filed in support of a wrongfully filed action. Additionally, Plaintiffs maintain Defendants Mack failed to allege that Plaintiff knew or should of known that the filing of a lis pendens resulted in reluctance by other parties to deal with Defendants. This allegation is not only countered by the direct quote from the Mack's complaint, it is also contrary to a basic understanding of what a lis pendens is, which is a notice to all parties to induce them not to deal with a defendant under foreclosure because all rights acquired would be secondary to the foreclosure judgment.

   b. Plaintiff also claims the complaint failed to allege special damages. However, special damages have been defined to be those damages which would not necessarily flow from the lawsuit as maintained, and must be specifically plead *Land Title of Central Fla. v. Jimenee*, 946 So.2d 90 (Fla. 5th DCA 2006). The Macks allege their efforts to sell the property were hampered by Plaintiff's foreclosure suit and therefore it would naturally flow that the sale price

would be less than if the Macks were not hampered by the actions of Plaintiff.

    c. Plaintiff goes on to complain about the amount of damages. However, they do not cite a single case where a judgment debtor has received relief from the amount of damages under a 1.540(b) motion.

    d. Plaintiff saves its most detailed argument for an apparent inconsistency in the preliminary findings of fact in the judgment, and cite the specifically listed sale price of $1,156,000.00 from paragraph 8 as opposed to the appraisal by the expert of $1,275,000.00. This difference was calculated to be $118,500.00. However, the Macks testified their property was worth at least as much as the appraiser had valued it, and in fact should have been worth in a range up to the listing price in paragraph 6 of $1,499,000.00. The actual finding of damages in the judgment was $296,920.05, which was an amount of money approximately between the two valuations presented by the real estate appraiser and the Macks, less the actual sale price of the property. The judgment is clear and without ambiguity that the damages are $296,920.05 for damages to the value of the real estate, $150,000.00 in emotional anguish pain and suffering of Defendant, Cheryl Mack, and prejudgment interest from the date of sale to the date of judgment of $22,550.22, for a total of $469,470.27 "for which let execution issue forthwith." Plaintiff is arguing that this judgment is inconsistent, which not only is untrue, but an objection to an inconsistent judgment must be made in a timely fashion (10 days from entry for a rehearing, or 30 days for an appeal). Courts in the State of Florida have uniformly found that failure to make timely objection to verdict cannot be waived by the passage of the time period for motions for new trial and appeals. See *Repub. Svcs. of Florida v. Poucher*, 851 So.2d 866 (Fla. 1st DCA 2003); *Keys Co. v. Rocky Graziani, Inc.*, 406 So.2d 100 (Fla. 3d DCA 1981); *Wiggs & Maale Const. Co. v. Harris*, 348 So.2d 914 (Fla. 1st DCA 1977); *Tunnage v. Green*, 947 So. 2d 687 (Fla. 4th DCA 2007).

    Further, courts have denied this type of relief under Rule 1.540(b). See *Commonwealth Land Title v. Freeman*, 884 So.2d 164 (Fla. 2d DCA 2004), stating "Rule 1.5640(b) is intended to provide relief from a judgment only under a limited set of circumstances." Florida courts have further maintained that it is a "well-settled" rule that "where a court is legally organized and has jurisdiction of the subject matter and the adverse parties are given an opportunity to be heard, then errors, irregularities or wrongdoing in proceedings, short of illegal deprivation of opportunity to be heard, will not render the judgment void." See

13

*Phenion Dev. Group, Inc. v. Love*, 940 So.2d 1179 (Fla. 5th DCA 2006); *Leach v. Salehpour*, 19 So.3d 342 (Fla. 2d DCA 2009), citing *Pompano Atlantis Condo Ass'n v. Merlino*, 415 So.2d 153, 154 (Fla. 4th DCA 1982) - "[Rule 1.540] only envisions 'mistakes' made in the ordinary course of litigation and does not contemplate judicial error." Further, the court in *Leech* cited to Malone v. Percival, 875 So.2d 1286, 1288 (Fla. 2d DCA 2004) (citations omitted), stating:, "Instead, 'judicial errors' which include errors that affect the substance of a judgment must be corrected within ten days pursuant to [*rule 1.530*] or by appellate review." The court went on to state, " a trial court may vacate a final judgment and order a new trial 'on its own initiative'. However, in order to do so, the court must act '[n]ot later than 10 days after entry of judgment." In the *Leach* case, the appellate court reversed an order setting aside a final judgment in the trial court that was against appellant Leach and noted that if the trial court treated the motion of Salehpour's motion as one filed pursuant to Rule 1.540 it abused its discretion by vacating the judgment and granting Salampour new trial because such relief exceeds the scope of 1.540. *Leach*, 19 So.3d at 345. However, if the trial court ordered a new trial on its own initiative pursuant to Rule 1.530(d) it erred as a matter of law by not adhering to the time limits of the rule. *Id.*

Federal courts have also been in line with Florida courts as to the definition of what constitutes excusable neglect. In the case of *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), although the United States Supreme Court found excusable neglect where there was a late filing of a proof of claim in bankruptcy, it found the lower appellate court erred when it failed to attribute to the client the fault of their counsel, "thus, in determining whether respondent's failure to timely file was excusable, the proper focus is upon whether the neglect of respondents **and** their counsel was excusable." *Id.* (emphasis added). Further, "petitioner voluntary chose this attorney as his representative in this action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney." *Id.* The Supreme Court went on to say that it would not have overturned the bankruptcy court denying excusable neglect, "were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect 'excusable.'" *Id.*

### IV. Adverse and Prejudicial Effect on Defendants' MACK to vacation of judgment

Mr. and Mrs. Mack were awarded $150,000.00 for pain and suffering for the filed and maintained foreclosure against them in the fall of 2009. The pain and suffering element came about because Mrs. Mack, under pressure from the threat of foreclosure, took an overdose of Ambien at her home in a suicide attempt. When her neighbor called a short time later and spoke to her, she realized Mrs. Mack was incoherent and sent an EMS crew to her home to take her to the hospital. She was hospitalized for seven days, leaving her with permanent kidney damage. This evidence was presented to the trial court at the trial on May 5, 2011, which was the basis for the award of damages. Mrs. Mack currently resides in New Jersey and is under Hospice care for several conditions, including kidney damage. She maintained at her deposition of April 4, 2012 that the kidney failure had either caused or exacerbated her other conditions which led her to be placed under Hospice care. Mr. Mack maintained in his deposition of April 4, 2012 that her condition is terminal and her prognosis is that she will die within six months.

Should Mrs. Mack die due to the injuries for which she received the pain and suffering award, and if Plaintiff DEUTSCHE BANK's motion to set aside were granted and trial ensued, it those claims would have to be filed by her estate under the Florida Wrongful Death Act. Under the Florida Wrongful Death Act, Fla. Stat. § 768.16, *et seq.*, a decedent may not recover for pain and suffering, but rather the damages are limited to those suffered by the survivors as enumerated in the statute. Mr. Mack, her only survivor, is 74 years old, and any loss of income or companionship that would be authorized under the statute to him would have to be amortized over his life expectancy according to mortality tables. Therefore, the damages recoverable by Mrs. Mack's estate would be significantly impacted and reduced from those awarded to her at trial, since her pain and suffering would not now be recognized.

Florida courts have maintained that one of the factors to be considered as to whether or not a judgment should be vacated would be prejudice that would inure to adverse party upon a motion to vacate a judgment (see *John Crescent, Inc. v. Schwartz*, 382 So.2d 383 (Fla. 4th DCA 1980), "the failure of a party to take the required steps necessary to protect its own interests cannot, standing alone, be grounds to vacate judicially authorized acts to the detriment of other innocent parties. The law requires certain diligence of those subject to it, and which diligence is not likely excused." See also, *Carter v. Lake County*, 840 So.2d 1153 (Fla. 5th DCA 2003)

"whether the failure to abide by a specified time limit constitutes excusable neglect is in essence an equitable one which should take into account all of the relevant circumstances including prejudice to the other party, the reason for the delay, the duration of the delay, and whether the movant acted in good faith."

### V. Inequitable Conduct of Plaintiff Prevents the Court from Granting Equitable Relief to Deutsche Bank

Plaintiff seeks relief pursuant to Rule 1.540(b), Fla. R. Civ. P., which provides that the court should grant relief on such terms as to it may seem just. In *Carter*, the court determined that this, in fact, is an equitable remedy and subject to equitable principles and equitable defenses *Carter*, 840 So.2d at 1153. Defendants MACK maintain that the evidence generated in discovery shows that Plaintiff wrongfully filed the foreclosure suit when Defendants Mack were not in default; that the filing of suit was done only after Defendants MACK came to GMAC Mortgage, LLC, the agent for Plaintiff seeking government-mandated relief under the HAMP program, which allows for payment reductions and a reduction of interest rate and an extension of a term of a mortgage; and that GMAC Mortgage, LLC, realizing in July and August 2009 that the income of the Macks ($5,800.00) was insufficient to support a mortgage payment of $5,100.00, sought to foreclose on the home to reduce their exposure on a sub-standard loan, instead of helping under HAMP. However, Plaintiff had no authority to initiate foreclosure action as long as the Mack loan was current, even if it came to the conclusion there was insufficient income to make the payments. Upon the transmission of the foreclosure suit to the offices of the Law Offices of David J. Stern, P.A., the attorney for Plaintiff, GMAC Mortgage, LLC, GMAC was advised of difficulties in bringing the foreclosure suit. Since GMAC Mortgage, LLC has redacted the notes from the Title Information Sheet of the Law Offices of David J. Stern, P.A. dated August 8, 2009, Defendants MACK do not know exactly what the substance of the difficulty was. However, a reasonable inference can be made that, in fact, continuance of the foreclosure suit was not legally supportable. Even though Plaintiff, through its agent GMAC, maintains that it told its attorney, Law Offices of David J. Stern, P.A. to close the file on September 2, 2009, the file was not closed by the time the Mack's filed an answer and counterclaim on September 9, 2009 challenging, among other things, the authority and right of GMAC and Deutsche Bank to bring the foreclosure in the first place. The bank, through its

agent, GMAC, has exclusive knowledge of the advice given by their attorney, David J. Stern, and their conduct and knowledge during the suit. GMAC has controlled all of the discovery, only allowing those portions of discovery that would be of benefit to their case. They have redacted and resisted any discovery concerning GMAC's actual conduct during the foreclosure and counterclaim and have continuously cited a lack of knowledge.

If the court were to now grant Plaintiff's motion to vacate, the Court would be allowing GMAC as the agent for Plaintiff to have a second bite at the apple despite the following:

a. GMAC had unclean hands in bringing the foreclosure suit in the first place because there was no default and they knew it.
b. GMAC negligently failed to recover Stern's files in a timely manner and to review them to determine what must be done. Had GMAC recovered the files in a timely fashion, it would have discovered the litigation was continuing because Stern's files contained notification of the continuing counterclaim, not only through the discovery requests, but the multiple and continuing orders and pleadings filed in the Collier County Circuit Court and received by Stern as indicated in Plaintiff's discovery responses.

WHEREFORE, Defendants, BARRY F. MACK and CHERYL M. MACK, pray that Plaintiff's Motion to Set Aside Judgment and for New Trial be denied; that the amount of the judgment plus accrued interest be paid from the bond; that the remainder of the bond be held in escrow pending determination of an award of attorney's fees, and; all such other relief as this court deems just and proper.

David F. Garber, Esq.
Florida Bar No. 0672386

GARBER, HOOLEY & HOLLOWAY, LLP
700 Eleventh Street South, Suite 202
Naples, Florida 34102-6777
(239) 774-1400 Telephone
(239) 774-6687 Facsimile

## CERTIFICATE OF SERVICE

    I certify that a copy of this document was faxed and mailed to the persons listed below on this __15__ day of April, 2012.

Christian W. Hancock, Esq.
Bradley Arant Boult Cummings LLP
Bank of America Corporate Center
100 N. Tryon Street, Suite 2690
Charlotte, NC 28202
704.332.8858 Facsimile

John Smith T, Esq.
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
205.521.8800 Facsimile

Stanley A. Bunner, Jr., Esq.
Salvatori, Wood, & Buckel, P.L.
9132 Strada Place, Fourth Floor
Naples, FL 34108
239.649.1706 Facsimile

_____
David F. Garber, Esq.
Attorney for Defendants MACK