**IN THE CIRCUIT COURT OF THE
TWENTIETH JUDICIAL CIRCUIT IN AND
FOR COLLIER COUNTY, FLORIDA**

**CASE NO.: 09-7336-CA**

DEUTSCHE BANK TRUST COMPANY
AMERICAS AS TRUSTEE FOR RALI2007QS3,

Plaintiff,

v.

BARRY F. MACK, et al.,

Defendant.



## PLAINTIFF'S MOTION TO SET ASIDE
## FINAL JUDGMENT AND SET NEW TRIAL

Plaintiff Deutsche Bank Trust Company Americas as Trustee for RALI2007QS3 ("Deutsche Bank") moves this Court to set aside the Final Judgment against Deutsche Bank and set a new trial. In support of this Motion, Deutsche Bank, **which was never informed by previous counsel of Defendants' countersuit or any of the court filings or other activities leading up to the default judgment**, states as follows:

### INTRODUCTION

Deutsche Bank hired counsel to prosecute a foreclosure action against Defendants and shortly thereafter instructed counsel to voluntarily dismiss the suit. Completely unbeknownst to Deutsche Bank, Defendants filed an answer and counterclaims against Deutsche Bank. In the last communication received by Deutsche Bank, previous counsel informed Deutsche Bank that the lawsuit had been dismissed and that the case was over. For reasons presently known only to previous counsel, Deutsche Bank was never informed about Defendants' countersuit. Deutsche Bank only learned of the entry of the default when it received a copy of the Final Judgment after

1

1/2188969.11

it was entered on May 5, 2011. In the short time since learning of the default, Deutsche Bank

has retained counsel, conducted an intensive internal investigation, and endeavored to contact

prior counsel. As is well known, prior counsel is, and has been for some time, the subject of

widespread negative publicity and legal investigations for unethical conduct and malpractice. As

a result, Deutsche Bank terminated its relationship with prior counsel last year. Deutsche Bank

should not be penalized for the failures of its prior counsel to put forward any defense

whatsoever to Defendants' countersuit, a defense which as shown below, is meritorious and

should be at least given a proper hearing.

## STATEMENT OF UNDISPUTED FACTS

1.     Defendants Barry F. and Cheryl M. Mack ("Defendants" or the "Macks")

executed a mortgage, which is secured by property located at 287 Egret Avenue, Naples, FL

34108, and is the subject of this action (the "Mack Loan"). The Mack Loan is part of the

Residential Accredit Loans, Inc. Trust 2007-QS3, Mortgage Asset-Backed Pass-Through

Certificates Series 2007-QS3 (the "Trust"). (Affidavit of J. Aguirre, attached hereto as Ex. 1, at

¶ 3; Affidavit of R. Reyes, attached hereto as Ex. 2, at ¶ 3).

2.     The Trust is governed by a Pooling and Servicing Agreement ("PSA"), dated as

of December 1, 2006. Pursuant to the Series Supplement, dated as of February 1, 2007, to the

Standard Terms of the PSA, Deutsche Bank serves as the Trustee of the Trust and Residential

Funding Company, LLC ("RFC") as the Master Servicer. (Aff. of J. Aguirre, at ¶ 4; Affidavit of

R. Reyes, at ¶ 2).

3.     Pursuant to a sub-servicing agreement between RFC and GMAC, GMAC serves

as the sub-servicer of the Trust. (Aff. of J. Aguirre, at ¶ 5).

4.     On or about October 25, 2006, GMAC mailed to Defendants its Welcome Letter,

2

which advised Defendants that GMAC had obtained the servicing rights to their loan. GMAC

serviced the Mack Loan until the time that Defendants sold the subject property and satisfied the

mortgage debt. (*Id.* at ¶ 6).

5.      On July 24, 2009, GMAC instructed the Law Offices of David J. Stern, P.A.

("Stern") to prosecute a foreclosure action on behalf of Deutsche Bank against Defendants. (*Id.*

at ¶ 7).

6.      Pursuant to GMAC's instructions, on August 20, 2009, Elsa H. Shum ("Shum"),

an attorney with Stern, filed a Complaint to Foreclose Mortgage on behalf of Deutsche Bank.

(*Id.* at ¶ 8).

7.      At the time of the filing of the Complaint, GMAC believed that the Mack Loan

was in default, and the Macks and GMAC were engaged in loss mitigation discussions. (*Id.* at ¶

9).

8.      GMAC subsequently discovered that the loan was not in default and, on

September 2, 2009, instructed Stern to "close and bill" the file. That same day, Stern confirmed

that the file had been closed. (*Id.* at ¶ 10).

9.      Between September 2, 2009 and May 12, 2011, GMAC and Deutsche Bank **did**

**not receive any notices from Stern, the Defendants, Defendants' counsel or the clerk's**

**office regarding this action**. GMAC and Deutsche Bank believed the matter was closed. (*Id.* at

¶ 11; Aff. of R. Reyes, at ¶ 5).

10.     Unbeknownst to GMAC and Deutsche Bank, on September 11, 2009, Defendants

answered the Complaint, and asserted counterclaims against Deutsche Bank. Stern provided no

notice to GMAC or Deutsche Bank of Defendants' answer or counterclaims. (Aff. of J. Aguirre,

at ¶ 12; Aff. of R. Reyes, at ¶ 5).

3

11.    On October 19, 2009, Defendants filed a Motion for Default against Deutsche

Bank. The filed copy of the Motion for Default reflects service to Shum at Stern, but neither

Shum nor anyone at Stern provided any notice to GMAC or Deutsche Bank of the Motion for

Default. (*Id.* at ¶ 13; Aff. of R. Reyes, at ¶ 5).

12.    On October 21, 2009, the Court entered a default against Deutsche Bank. The

filed copy of the Clerk's entry of Default reflects service to Shum at Stern, but neither Shum nor

anyone at Stern provided any notice to GMAC or Deutsche Bank of the entry of Default. (Aff.

of J. Aguirre, at ¶ 14

13.    Thereafter, Defendants served various discovery requests and other filings on

Shum at Stern, including (a) on November 3, 2009, a Request for Production and a Request for

Designation of Corporate Representative; (b) on September 22, 2010, a Second Request for

Production on Stern; (c) on February 4, 2011, a Motion to Compel Discovery. Neither Shum nor

anyone at Stern communicated with GMAC or Deutsche Bank in any way about any of these

papers. (Aff. of J. Aguirre, at ¶ 15; Aff. of R. Reyes, at ¶ 5).

14.    On December 8, 2009, Stern filed a Notice of Voluntary Dismissal and Release of

Lis Pendens. (Aff. of J. Aguirre, at ¶ 16).

15.    On March 3, 2011, there was a hearing on Defendants' Motion to Compel. No

attorney appeared on behalf of Deutsche Bank, which had no notice of the hearing. (*Id.* at ¶ 17).

16.    On May 5, 2011, the Court held a non-jury trial in which it awarded damages in

the amount of $469,470.27 to Defendants and reserved ruling on attorneys' fees. No attorney

appeared on behalf of Deutsche Bank, which had no notice of the trial. (*Id.* at ¶ 18).

17.    To reiterate, between September 2, 2009 when GMAC instructed Stern to close

the file, and May 5, 2011 when the Court conducted a trial and entered Final Judgment, neither

GMAC nor Deutsche Bank received any notice regarding any of the pleadings, motions, and correspondence sent in this action. (*Id.* at ¶ 19; Aff. of R. Reyes, at ¶ 5).

18.    Deutsche Bank first learned about Defendants' countersuit and the subsequent case history on May 12, 2011. (Aff. of R. Reyes, at ¶ 5). Deutsche Bank immediately referred the matter to GMAC, which began investigating and hired the undersigned legal counsel. (Aff. of J. Aguirre, at ¶ 20).

19.    In 2010, national news reports were widely circulating about alleged unethical and possibly illegal conduct by Stern after Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corporation ("Freddie Mac") terminated their relationship with Stern on or about November 3, 2010. (*See id.* at ¶ 21; *see also* Nick Timiraos, *Fannie, Freddie Cut Ties to Firm,* Wall St. J., Nov. 3, 2010, http://online.wsj.com/article/SB10001424052748704462704575590342587988742.html.; Bloomberg News, *Fannie and Freddie Drop Florida Law Firm,* N.Y. Times, Nov. 2, 2010, http://www.nytimes.com/2010/11/03/business/03mortgage. html).

20.    In November 2010, in reaction to the allegations and upon conducting its own investigations into the files being handled by Stern, GMAC terminated its relationship with Stern. (Aff. of J. Aguirre, at ¶ 22).

21.    On March 4, 2011, Stern sent a letter to all of the chief judges of the Florida Circuit Courts in which he announced that he was stopping all foreclosure-related operations in the State of Florida as of March 31, 2011. (*See id.* at ¶ 23; *see also* Letter from David J. Stern regarding Law Offices of David J. Stern, P.A. cases in your circuit, dated March 4, 2011).

1/2188969.11

## ARGUMENT

I. **The Final Judgment against Deutsche Bank should be set aside.**

A.     **Deutsche Bank can establish excusable neglect and a meritorious defense.**

It is well established that under appropriate circumstances courts should "liberally set aside defaults for failure of a defendant to plead so as to allow a determination of the controversy on the merits." *Cnty Nat'l Bank of No. Miami Beach v. Sheridan*, 403 So. 2d 502, 503 (Fla. 4th DCA 1981); *N. Shore Hosp. Inc. v. Barber*, 143 So. 2d 849, 853 (Fla. 1962). If there is any reasonable doubt in the matter of vacating a default, it should be resolved in favor of granting the application and allowing the trial upon the merits. *See Barber*, 143 So. 2d at 853; *see also Khubani v. Mikulic*, 620 So. 2d 800, 801 (Fla. 2d DCA 1993).

Rule 1.540(b) of the Florida Rules of Civil Procedure sets forth the standard for relief from judgment, decrees, or orders as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, decree, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . The motion shall be filed within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment, decree, order, or proceeding was entered or taken. A motion under this subdivision does not affect the finality of a judgment or decree or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, decree, order, or proceeding or to set aside a judgment or decree for fraud upon the court.

Fla. R. Civ. P. 1.540(b). In Florida, the party seeking to set aside a final judgment bears the burden of demonstrating (1) excusable neglect, (2) a meritorious defense, and (3) due diligence. *See Geer v. Jacobsen*, 880 So. 2d 717, 720 (Fla. 2d DCA 2004) (citing *Coquina Beach Club Condo. Ass'n Inc. v. Wagner*, 813 So. 2d 1061, 1063 (Fla. 2d DCA 2002)).

### 1.    Excusable Neglect

"Excusable neglect must be proven by sworn statements or affidavits." *Id.* (quoting *DiSarrio v. Mills*, 711 So.2d 1355, 1356 (Fla. 2d DCA 1998)). In the present case, Deutsche Bank has attached sworn affidavits demonstrating that, until May 12, 2011, Deutsche Bank (and its servicer, GMAC) had no notice of Defendants' countersuit or any court paper served in this action after September 2, 2009. (*See* Aff. of J. Aguirre, at ¶¶ 11-15, 19; Aff. of R.Reyes, at ¶ 5.) According to file-stamped copies, the Answer and Counterclaims were served on Shum at Stern on September 11, 2009. However, as attested in the affidavits, neither Shum nor anyone at Stern gave any notice to Deutsche Bank or GMAC of the Defendants' countersuit. Deutsche Bank's failure to respond to the Counterclaim and subsequent motions and papers is solely the result of the acts and omissions of Stern.

Deutsche Bank only became aware of Defendants' counterclaims after the Final Judgment had already been entered by the Court. Consequently, this is not a case where an attorney committed a tactical error or a judgmental mistake. Nor is this a situation where a party either intentionally or negligently ignored notices or simply chose not to respond. Rather, this is a case where a client was completely unaware of claims against it because of its former attorney's failure to take any action whatsoever, such failure constituting an abdication of the attorney's ethical responsibilities to the client.

Deutsche Bank should not be penalized for the gross misconduct of its prior counsel. *See Wilson v. Woodward*, 602 So. 2d 547, 549 (Fla. 2d DCA 1992) ("Although the court has the authority to discipline counsel for failure to comply with the rules of civil procedure, ordinarily any punishment should be imposed upon the attorney and not the litigant."); *see also Beasley v. Girten*, 61 So. 2d 179, 181 (Fla. 1952) (explaining that dismissal with prejudice would in effect

punish the litigant instead of his counsel); *Anthony v. Schmitt*, 557 So. 2d 656, 662 (Fla. 2d DCA 1990) ("Typically, it is more appropriate for the trial court to require the trial attorney to atone for his own sins rather than visit them upon the attorney's unfortunate client.").

The present case is similar to *Yusem v. Butler*, 683 So. 2d 1170 (Fla. 4th DCA 1996). In *Yusem*, the plaintiff's attorney served an amended complaint on the defendants' attorney, but the defendants' attorney had abandoned his clients without notice and vacated his office. *Id.* at 1171. The defendants failed to respond, and the trial court entered a default against them. *Id.* The defendants subsequently moved to vacate the default, but the trial court denied their motion to vacate. *Id.* On appeal, the Fourth District Court of Appeal reversed, holding that, under the circumstances, service on the defendants' attorney could not be considered notice to the clients. *Id.* Accordingly, the court found that the defendants' failure to respond constituted excusable neglect. *Id.*

As in *Yusem*, Stern failed to give Deutsche Bank or GMAC any information about Defendants' countersuit or the subsequent case events. Inexplicably, Stern appears to have received notices of court pleadings but did not forward anything to, or attempt to have any communication with, Deutsche Bank or GMAC. Such inaction undeniably resulted in material prejudice to Deutsche Bank – namely, a significant, adverse judgment being entered against it. Deutsche Bank's failure to respond to any court papers or otherwise defend the subject action constitutes excusable neglect. Therefore, the Final Judgment should be set aside.

Setting aside the Final judgment is further warranted by the circumstances surrounding Stern's inactivity in the case. Despite having made the initial filing and taking the voluntary dismissal, Stern made no filing or appearance in the case. With publicity swirling about Stern's problems, Defendants must have been aware by the time of trial that Stern had abdicated

responsibility for the case.

On March 4, 2011, Stern sent a letter to all of the chief judges of the Florida Circuit Courts in which he announced that he was stopping all foreclosure-related operations in the State of Florida as of March 31, 2011. (*See* Aff. of J. Aguirre, at ¶ 23). In his letter, Stern said that "[t]he majority of our clients have terminated the attorney-client relationship and have taken physical possession of their files." *See Id.* Deutsche Bank, like other clients, took possession of its files from Stern's office, but this file was classified as a "closed" matter. Had Deutsche Bank known that this "closed" matter was still being litigated by Defendants, it would have immediately taken steps to protect its interests.

Defendants never attempted to communicate with Deutsche Bank. On February 4, 2011, Defendants filed a Motion to Compel and represented that they had "made a good faith effort to resolve this discovery dispute with Plaintiff." Neither GMAC nor Deutsche Bank is aware of any such effort. Defendants should not be awarded an uncontested windfall under these circumstances.

### 2.    Meritorious Defense

A meritorious defense must be asserted either by a pleading or in an affidavit. *See Geer*, 880 So. 2d at 721 (citing *Schauer v. Coleman*, 639 So. 2d 637, 639 (Fla. 2d DCA 1994)). With regard to Defendants' claim for violation of the Real Estate Settlement Procedures Act ("RESPA"), Deutsche Bank has at all times complied with RESPA. Defendants specifically allege that Deutsche Bank failed to comply with 12 U.S.C. § 2605(c) by not providing notice that the loan had been assigned to Deutsche Bank within fifteen (15) days of the assignment. (*See* Counterclaim, ¶¶ 6-8). This is a misstatement of the requirements of 12 U.S.C. § 2605(c). Section 2605(c) is entitled "Notice by transferee of loan servicing at time of transfer," and it

1/2188969.11

provides as follows:

(1)    Notice requirement. **Each transferee servicer** to whom
the servicing of any federally related mortgage loan is
assigned, sold, or transferred shall notify the borrower of
any such assignment, sale, or transfer.

(2)    Time of notice

(A) In general.  Except as provided in subparagraphs (B)
and (C), the notice required under paragraph (1) shall be
made to the borrower not more than 15 days after the
effective date of transfer of the servicing of the mortgage
loan (with respect to which such notice is made).

12 U.S.C. § 2605(c)(1)-(2) (emphasis added).

At all times relevant to this action, GMAC has acted as servicer on behalf of Deutsche

Bank.  On or about October 25, 2006, GMAC mailed to Defendants its Welcome Letter, which

advised Defendants that GMAC had obtained the servicing rights to their loan.  (Aff. of J.

Aguirre, at ¶ 6).  GMAC serviced the Defendants' loan until the time that Defendants sold the

subject property and satisfied the mortgage debt.  Because the servicing rights were never

transferred to another entity after GMAC and because GMAC provided proper notice pursuant to

Section 2605(c), there is no violation of RESPA.  *See* 12 U.S.C. § 2605(c)(1)-(2).  Hence,

Deutsche Bank has a meritorious defense to Defendants' RESPA claim.

With regard to Defendants' slander of title claim, the Defendants must allege and prove

the following elements:

(1) A falsehood (2) has been published, or communicated to a third
person (3) when the defendant-publisher knows or reasonably
should know that it will likely result in inducing others not to deal
with the plaintiff and (4) in fact, the falsehood does play a material
and substantial part in inducing others not to deal with the plaintiff;
and (5) special damages are proximately caused as a result of the
published falsehood.

*McAllister v. Breakers Seville Ass'n, Inc.*, 981 So. 2d 566, 573 (Fla. 4th DCA 2008).

1/2188969.11

First, the filing of a lis pendens is insufficient to constitute "actionable publication" for a slander of title claim. *See Tishman-Speyer Equitable S. Fla. Venture v. Knight Invs, Inc.*, 591 So. 2d 213, 214 (Fla. 4th DCA 1991) ("Nor does actionable publication occur when a lis pendens is recorded."); *see also Procacci v. Zacco*, 402 So. 2d 425, 427 (Fla. 4th DCA 1981) (holding that the filing of a proper notice of lis pendens, as part of judicial proceeding to determine existence of easement, was encompassed within the judicial proceedings privilege, and thus, claims for slander of title could not be predicated on filing of the notice.)

Second, Defendants failed to allege that Deutsche Bank knew or reasonably should have known that the filing of the Lis Pendens would have resulted in inducing others not to deal with Defendants. Defendants only allege that "Defendants Mack are currently in the process of trying to sell their property, but such efforts have been hampered due to the wrongful recordation of the notice of its pendens against the property, which serves to discourage potential purchasers." *(See* Counterclaim, at ¶ 21). Defendants' failure to properly allege a cause of action for slander of title constitutes a meritorious defense.

Third, Defendants failed to allege special damages with the specificity required under Florida law. In *Land Title of Central Florida, LLC v. Jimenez*, 946 So. 2d 90 (Fla. 5th DCA 2006), the Fifth District Court of Appeal discussed the standard for pleading special damages in Florida as follows:

> The purpose of the special damages rule is to prevent surprise at trial. *See* Fla. R. Civ. P. 1.120(g); *Bialkowicz*, 215 So.2d at 770. **Special damages must, therefore, be particularly specified in a complaint in order to apprise the opposing party of the nature of the special damages claimed. If special damages are not specifically pled, then evidence of them is inadmissible.** *See Precision Tune Auto Care, Inc. v. Radcliffe*, 804 So.2d 1287 (Fla. 4th DCA 2002). More importantly for purposes of the present case, damages may not be awarded on a claim that is not contained within the pleadings. *See DeMello; Hooters of Am., Inc. v.*

11

*Carolina Wings, Inc.,* 655 So.2d 1231 (Fla. 1st DCA 1995).

*Id.* at 93 (emphasis added); *see also Continental Development Corp. of Fla. V. Duval Title & Abstract Co.*, 356 So. 2d 925, 927-28 (Fla. 2d DCA 1978) (finding that plaintiff failed to plead special damages with the requisite specificity so as to warrant an award for special damages on a slander of title claim). In their Counterclaim, Defendants simply claim that "Plaintiff Deutsche Bank's recordation of the notice of lis pendens against Defendants Mack's property has caused Defendants Mack to suffer actual damages." (*See* Counterclaim, at ¶ 22). Such a broad and conclusory allegation is insufficient to satisfy the specificity requirements as set forth in *Jimenez* and *Continental Development*. Accordingly, Defendants' failure to properly plead special damages with specificity constitutes a meritorious defense.

Fourth, there is a legitimate dispute about the damages allegedly suffered by Defendants as a result of the filing of the Complaint to Foreclose Mortgage on August 20, 2009. As noted, Defendants filed public denials to the claims in its Answer. On December 8, 2009, the Complaint was voluntarily dismissed and the Lis Pendens was released. The Final Judgment clearly states that the property was sold by Defendants on January 28, 2010, almost two months after the Notice of Voluntary Dismissal and Release of Lis Pendens had been filed with the Court. There is no reference in Defendants' Motion or in the findings of fact that the instant lawsuit played a material and substantial part in inducing others not to deal with Defendants. The publicly-filed withdrawal of the Lis Pendens and the absence of proof concerning prospective buyers not dealing with Defendants should all have been taken into account when estimating the value of Defendants' damages.

Fifth, in the Final Judgment, the Court made specific findings of fact with regard to the damages suffered by Defendants as a result of the slander of title as follows:

1/2188969.11

6.      Defendants, Barry F. Mack and Cheryl M. Mack, entered
        into a Listing of Residential Improved Property Exclusive
        Right and Authority to Sell Contract on March 26, 2008
        with Gulf Breeze Real Estate for a listing price of
        $1,969,000.

7.      The threat of pending foreclosure and the title slandered by
        Plaintiff's Notice of Lis Pendens.    Defendants Mack
        reduced the MLS listing price of their property to
        $1,499,000.00 on August 30, 2009.

8.      Defendants, Barry F. Mack and Cheryl M. Mack,
        ultimately sold their property for $1,156,000.00, which
        closing took place on January 28, 2010.

9.      The property of Defendants, Barry F. Mack and Cheryl M.
        Mack, had a value of $1,275,000.00 as of January 29, 2010
        according to the appraisal of trial expert and licensed
        appraiser, Ted Hofferber.

10.     **Defendants Mack suffered actual damages in the
        amount of $118,500.00, the difference between the sale
        price and the appraised price of the property.**

(*See* Final Judgment, p. 2, ¶¶ 6-10 (emphasis added)).

Notwithstanding these specific findings of fact, the Court awarded Defendants
$296,920.05 "for damages to the value of the real estate." (*See id.*, p. 3, ¶ 1).  The Final
Judgment is thus inconsistent.  In the findings of fact, it claims that the actual damages suffered
by Defendants were $118,500, yet it awards an amount that is almost one and a half (1.5) times
the amount supported by the facts.  This creates a legitimate dispute about damages suffered by
Defendants.

Lastly, Deutsche Bank is prepared to present evidence that the value of Defendants'
home was an effect of the overall decline in the housing market and not substantially affected by
the brief presence of the Lis Pendens in the Official Records.

1/2188969.11

3.    **Due Diligence**

Deutsche Bank first received notice of Defendants' countersuit and the Final Judgment

on May 12, 2011. It quickly retained undersigned counsel, conducted an immediate internal

investigation and has attempted to contact the attorneys at Stern, including Shum. Deutsche

Bank is prepared to move as quickly as the Court desires to redress this situation.

B.    **Deutsche Bank's due process rights would be violated if the Final Judgment
was not set aside.**

By the time of trial, it was well known that Stern was no longer in business and that he

would almost certainly not be responding to any court papers delivered to his offices.

Defendants, however, never reached out directly to Deutsche Bank and instead continued to send

court papers to a largely vacant office. To proceed with a trial in light of such widespread

reports of Stern's demise is contrary to Deutsche Bank's constitutionally protected due process

rights. In *N.C. v Anderson*, 882 So.2d 990 (Fla. 2004), the Florida Supreme Court stated:

> The Fourteenth Amendment to the United States Constitution
> provides that no state shall "deprive any person of life, liberty or
> property, without due process of law." This same protection is
> provided in the Florida Constitution. *See* Art. I, § 9, Fla. Const.
> "Procedural due process serves as a vehicle to ensure fair treatment
> through the proper administration of justice where substantive
> rights are at issue." *Dep't. of Law Enforcement v. Real Prop.*, 588
> So. 2d 957, 960 (Fla. 1991). Procedural due process requires both
> reasonable notice and a meaningful opportunity to be heard. *See
> id.* The notice must be "reasonably calculated, under all the
> circumstances, to apprise interested parties of the pendency of the
> action and afford them an opportunity to present their objections.
> The notice must be of such nature as reasonably to convey the
> required information, and it must afford a reasonable time for those
> interested to make their appearance." *Mullane v. Cent. Hanover
> Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

*Id.* at 993. In this case, Deutsche Bank was not provided with adequate notice or a meaningful

opportunity to be heard and was thus denied procedural due process.

1/2188969.11

II.     **The default judgment against Deutsche Bank should be set aside.**

A.     **Defendants failed to provide effective notice of application for default judgment.**

The default judgment was entered without effective notice to Deutsche Bank and must be set aside. Default judgments are disfavored, and Florida law requires a party seeking default to make every effort to resolve the action on its merits. *See Coggin v. Barfield*, 8 So. 2d 9, 11 (Fla. 1942). "[D]efault is not appropriate in cases where the plaintiff knows that a defendant is represented by counsel who intends to assert matters in defense of the cause of action." *Gulf Maint. & Supply, Inc. v. Barnett Bank of Tallahassee*, 543 So.2d 813, 816 (Fla. 1st DCA 1989). Accordingly, "plaintiff's counsel should contact the attorney known to be representing a defendant to determine whether the latter intends to proceed in the matter before causing a default to be entered." *Id.* Rule 1.500(b) of the Florida Rules of Civil Procedure codifies these principles:

> When a party against whom affirmative relief is sought has failed to plead or otherwise defend as provided by these rules or any applicable statute or any order of court, the court may enter a default against such party; provided that if such party has filed or served any paper in the action, that party shall be served with notice of the application for default.

Fla. R. Civ. P. 1.500(b).

In the present action, Plaintiff had filed a "paper in the action" – the Complaint to Foreclose Mortgage – that identified Stern as its counsel. *See Green Solutions Intern., Inc. v. Gilligan*, 807 So. 2d 693, 696 (Fla. 5th DCA 2002) (holding that "paper" under Fla. R. Civ. P. 1.500(b) includes "any paper that has been filed or served by the party's attorney"). Because Defendants knew that Deutsche Bank was represented by Stern in the matter, they had an obligation to inquire of Stern before seeking default. *See Gulf Maintenance*, 543 So.2d at 816

15

n.3 ("When [a lawyer] knows the identity of a lawyer representing an opposing party, he should

not take advantage of the lawyer by causing any default or dismissal to be entered without first

inquiring about the opposing lawyer's intention to proceed."). There is no indication from the

file that Defendants made any such inquiry. Indeed, had Defendants inquired of Stern,

Defendants would have learned that Stern was not communicating with Deutsche Bank, that

Deutsche Bank intended to defend the action, or both. Under these circumstances, Defendants'

service of default on Stern was ineffective as to Deutsche Bank, which received no notice of

default until after the judgment was entered.

In short, the default judgment should be set aside because of Defendants' failure to

provide Deutsche Bank with effective notice of the application for default. An improper *ex parte*

default "must be vacated without regard to whether the defendant can establish a meritorious

defense or whether the defendant can demonstrate inadvertence or excusable neglect." *Makes &*

*Models Magazines, Inc. v. Web Offset Printing Co. Inc.*, 13 So. 3d 178, 181 (Fla. 2d DCA 2009)

(quoting *U.S. Bank Nat'l Ass'n v. Lloyd*, 981 So. 2d 633, 640 (Fla. 2d DCA 2008)). Therefore,

this Court should set aside the default judgment against Deutsche Bank.

### B.    Defendants failed to allege that they satisfied an express condition precedent to this litigation.

A default judgment is void and should be set aside when the complaint fails to state a

cause of action. *See Southeast Land Developers, Inc. v. All Florida Site and Utilities, Inc.*, 28

So. 3d 166, 168 (Fla. 1st DCA 2010); *see also Moynet v. Courtois*, 8 So. 3d 377, 378-79 (Fla. 3d

DCA 2009) (citing *Becerra v. Equity Imports, Inc.*, 551 So.2d 486 (Fla. 3d DCA 1989), and

*Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So.2d 490, 493 (Fla. 3d DCA 1994)); *GAC Corp. v.*

*Beach*, 308 So. 2d 550 (Fla. 2d DCA 1975); *see generally Hooters of America, Inc. v. Carolina*

*Wings, Inc.*, 655 So. 2d 1231 (Fla. 1st DCA 1995) (damages award barred on default judgment

16

violated due process due to lack of well-pled allegations in complaint). Failure to allege that a

condition precedent is met renders a complaint fatally defective in that it fails to state a cause of

action. *See id.* (citing *Nguyen v. Roth Realty, Inc.*, 550 So. 2d 490 (Fla. 5th DCA 1989)).

Defendants' mortgage contains an express notice and cure period required before any

party can bring a judicial action arising in any way from the mortgage. Specifically, paragraph

20 of the mortgage states as follows:

> Neither Borrower nor Lender may commence, join, or be joined to
> any judicial action (as either an individual litigant or the member
> of a class) that arises from the other party's actions pursuant to this
> Security Instrument or that alleges that the other party has
> breached any provision of, or any duty owed by reason of, this
> Security Instrument, until such Borrower or Lender has notified the
> other party (with such notice given in compliance with the
> requirements of Section 15) of such alleged breach and afforded
> the other party hereto a reasonable period after the giving of such
> notice to take corrective action.

(*See* Exhibit A to Complaint, at ¶ 20).

Defendants' Counterclaims unquestionably arose out of Deutsche Bank's actions under

the mortgage. Defendants, however, failed to make any allegations, either general or specific,

that they complied with this notice and cure period. Because Defendants failed to allege that a

condition precedent was met, the Counterclaim is fatally defective, and thus the default judgment

is void and should be set aside.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff Deutsche Bank Trust Company

Americas as Trustee for RALI2007QS3 respectfully requests the Court set aside the Final

Judgment against Deutsche Bank, and set a new trial, and award such further relief as the Court

deems appropriate.

I/2188969.11

Respectfully submitted,

_____

José D. Vega (Florida Bar No. 0088872)
BRADLEY ARANT BOULT CUMMINGS, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
jvega@babc.com

Christian W. Hancock (Florida Bar No. 643521)
BRADLEY ARANT BOULT CUMMINGS, LLP
Bank of America Corporate Center
100 N. Tryon Street, Suite 2690
Charlotte, North Carolina 28202
Telephone: (704) 332-8842
Facsimile: (704) 332-8858
chancock@babc.com

Stanley A. Bunner, Jr. (Florida Bar No. 297010)
SALVATORI, WOOD, & BUCKEL, P.L.
9132 Strada Place, Fourth Floor
Naples, FL 34108-2683
Telephone: (239) 552-4100
Facsimile:    (239) 649-1706
sab@swbnaples.com

ATTORNEY FOR DEUTSCHE BANK TRUST
COMPANY AMERICAS AS TRUSTEE FOR
RALI2007QS3

18

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2011, I served the foregoing by Federal Express, upon the following:

David F. Garber, Esq.
Garber, Hooley & Holloway, LLP
700 Eleventh Street South, Suite 202
Naples, Florida 34102

_____
OF COUNSEL

1/2188969.11

# EXHIBIT 1

IN THE CIRCUIT COURT OF THE
TWENTIETH JUDICIAL CIRCUIT IN AND
FOR COLLIER COUNTY, FLORIDA

CASE NO.: 09-7336-CA

DEUTSCHE BANK TRUST COMPANY
AMERICAS AS TRUSTEE FOR RALI2007QS3,

Plaintiff,

v.

BARRY F. MACK, et al.,

Defendant.

### AFFIDAVIT OF JUAN ANTONIO AGUIRRE IN SUPPORT OF
### PLAINTIFF'S MOTION TO SET ASIDE FINAL JUDGMENT AND SET NEW TRIAL

I, Juan Antonio Aguirre, do state under oath as follows:

1.      My name is Juan Antonio Aguirre.  I am over twenty-one years of age, am of
sound mind, and am competent to make this affidavit.  The facts stated in this Affidavit are
within my personal knowledge based on a review of the business records for GMAC Mortgage,
LLC ("GMAC") and are true and correct to the best of my knowledge.

2.      I am employed as Manager-Litigation Support Department.  I am authorized to
submit this Affidavit on behalf of GMAC.

3.      Defendants Barry F. and Cheryl M. Mack ("Defendants") executed a mortgage,
which is secured by property located at 287 Egret Avenue, Naples, FL 34108, and is the subject
of this action (the "Mack Loan").  The Mack Loan is part of the Residential Accredit Loans, Inc.
Trust 2007-QS3, Mortgage Asset-Backed Pass-Through Certificates Series 2007-QS3 (the
"Trust").

4.      The Trust is governed by a Pooling and Servicing Agreement ("PSA"), dated as

of December 1, 2006. Pursuant to the Series Supplement, dated as of February 1, 2007, to the

Standard Terms of the PSA, Deutsche Bank serves as the Trustee of the Trust and Residential

Funding Company, LLC ("RFC") as the Master Servicer.

5.      Pursuant to a sub-servicing agreement between RFC and GMAC, GMAC serves

as the sub-servicer of the Trust.

6.      On October 25, 2006, GMAC mailed to Defendants its Welcome Letter, which

advised Defendants that GMAC had obtained the servicing rights to their loan. GMAC serviced

the Mack Loan until the time that Defendants sold the subject property and satisfied the

mortgage debt.

7.      On July 24, 2009, GMAC instructed the Law Offices of David J. Stern, P.A.

("Stern") to prosecute a foreclosure action on behalf of Deutsche Bank against Defendants.

8.      Pursuant to GMAC's instructions, on August 20, 2009, Elsa H. Shum ("Shum"),

an attorney with Stern, filed a Complaint to Foreclose Mortgage on behalf of Deutsche Bank.

9.      At the time of the filing of the Complaint, GMAC believed that the Mack Loan

was in default, and Defendants and GMAC were engaged in loss mitigation discussions.

10.     GMAC subsequently discovered that the Mack Loan was not in default. On

September 2, 2009, GMAC instructed Stern to "close and bill" the file. That same day, Stern

confirmed that the file had been closed.

11.     Between September 2, 2009 and May 12, 2011, GMAC did not receive any

notices from Stern, the Defendants, Defendants' counsel, or the Court regarding this action.

GMAC believed the matter was closed.

12.     Unbeknownst to GMAC, on September 11, 2009, Defendants answered the

Complaint, and asserted counterclaims against Deutsche Bank. Stern provided no notice to

GMAC of Defendants' answer or counterclaims.

13.    On October 19, 2009, Defendants filed a Motion for Default against Deutsche Bank.  The filed copy of the Motion reflects service to Shum at Stern, but neither Shum nor anyone at Stern provided any notice to GMAC of the Motion for Default.

14.    On October 21, 2009, the Court entered a default against Deutsche Bank.  The filed copy of the Clerk's entry of Default reflects service to Shum at Stern, but neither Shum nor anyone at Stern provided any notice to GMAC of the entry of Default.

15.    Thereafter, Defendants served various discovery requests and other filings on Shum at Stern, including (a) on November 3, 2009, Request for Production and a Request for Designation of Corporate Representative; (b) on September 22, 2010, Second Request for Production on Stern; (c) on February 4, 2011, a Motion to Compel Discovery.  Neither Shum nor anyone at Stern communicated with GMAC in any way about any of these papers.

16.    On December 8, 2009, Stern filed a Notice of Voluntary Dismissal and Release of Lis Pendens.

17.    On March 3, 2011, there was a hearing on Defendants' Motion to Compel.  No attorney appeared on behalf of Deutsche Bank, which had no notice of the hearing.

18.    On May 5, 2011, the Court held a non-jury trial in which it awarded damages in the amount of $469,470.27 to Defendants and reserved ruling on attorneys' fees.  No attorney appeared on behalf of Deutsche Bank which had no notice of the trial.

19.    To reiterate, between September 2, 2009, when GMAC instructed Stern to close the file, and May 5, 2011, when the Court conducted a trial and entered Final Judgment, GMAC did not receive notice regarding any of the pleadings, motions, and correspondence sent in this action.

20.     After Deutsche Bank first learned of Defendants' countersuit on May 12, 2011, Deutsche Bank immediately referred the matter to GMAC, which began investigating and hired the undersigned legal counsel.

21.     In 2010, national news reports were widely circulating about alleged unethical and possibly illegal conduct by Stern after Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corporation ("Freddie Mac") terminated their relationship with Stern on or about November 3, 2010.

22.     In November 2010, in reaction to the allegations and upon conducting its own investigations into the files being handled by Stern, GMAC terminated its relationship with Stern.

23.     On March 4, 2011, Stern sent a letter to all of the chief judges of the Florida Circuit Courts in which he announced that he was stopping all foreclosure-related operations in the State of Florida as of March 31, 2011.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

FURTHER AFFIANT SAITH NOT

Juan Antonio Aguirre

STATE OF _Texas_ )

COUNTY OF _Dallas_ )

Subscribed and sworn to before me this _11th_ day of July, 2011

MISTY RATLIFF
Notary Public, State of Texas
My Commission Expires
January 06, 2015

Notary Public

[NOTARIAL SEAL]                    My commission expires: _01/06/2015_

# EXHIBIT 2

IN THE CIRCUIT COURT OF THE
TWENTIETH JUDICIAL CIRCUIT IN AND
FOR COLLIER COUNTY, FLORIDA

CASE NO.: 09-7336-CA

DEUTSCHE BANK TRUST COMPANY
AMERICAS AS TRUSTEE FOR RALI2007QS3,

Plaintiff,

v.

BARRY F. MACK, et al.,

Defendant.

### AFFIDAVIT OF RONALDO REYES IN SUPPORT OF PLAINTIFF'S MOTION TO SET ASIDE FINAL JUDGMENT AND SET NEW TRIAL,

I, RONALDO REYES, do state under oath as follows:

1.    My name is Ronaldo Reyes. I am over twenty-one years of age, am of sound mind, and am competent to make this affidavit. I am a Vice President of Deutsche Bank Trust Company Americas ("DBTCA"). I am authorized to submit this Affidavit on behalf of DBTCA. The facts stated in this Affidavit are within my personal knowledge based on a review of the business records for DBTCA and are true and correct to the best of my knowledge.

2.    Pursuant to the Series Supplement, dated as of February 1, 2007, to the Standard Terms of Pooling and Servicing Agreement ("PSA"), dated as of December 1, 2006, DBTCA became the trustee ("Trustee") of Residential Accredit Loans, Inc. Trust 2007-QS3, Mortgage Asset-Backed Pass-Through Certificates Series 2007-QS3 (the "Trust").

3.    Pursuant to the Mortgage Loan Schedule, which is Exhibit I to the Series Supplement for the Trust, the Barry F. Mack loan, which is secured by property located at 287 Egret Avenue, Naples, FL 34108, and is the subject of this action (the "Mack loan"), is part of

the Trust, and is serviced by a servicer (either the Master Servicer or a Subservicer), pursuant to the Series Supplement and PSA governing the Trust.

4.      Pursuant to the terms of the Series Supplement and PSA, servicing responsibilities for the Mack Loan include the collection and application of mortgage payments, and the power · to initiate foreclosure on behalf of DBTCA if the loan defaulted.

5.      Prior to May 12, 2011, DBTCA had no knowledge of this action. It was not aware of any of the pleadings, motions or orders filed in the action, including the counterclaim filed by the defendants or the judgment that had been obtained against it, and received no notices in connection with this action until May 12, 2011, when it received a copy of the Final Judgment of Foreclosure.

FURTHER AFFIANT SAITH NOT

Ronaldo Reyes

State of California}
County of Orange}

On July 11, 2011, before me, ___TUAN QUACH___ Notary Public, personally appeared Ronaldo Reyes, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____
Notary signature

TUAN QUACH
Commission # 1838344
Notary Public - California
Orange County
My Comm. Expires Feb 26, 2013

IN THE CIRCUIT COURT OF THE
TWENTIETH JUDICIAL CIRCUIT IN AND
FOR COLLIER COUNTY, FLORIDA

CASE NO.: 09-7336-CA

DEUTSCHE BANK TRUST COMPANY
AMERICAS AS TRUSTEE FOR RALI2007QS3,

Plaintiff,

v.

BARRY F. MACK, et al.,

Defendant.

## AFFIDAVIT OF RONALDO REYES IN SUPPORT OF PLAINTIFF'S MOTION TO SET ASIDE FINAL JUDGMENT AND SET NEW TRIAL,

I, RONALDO REYES, do state under oath as follows:

1.     My name is Ronaldo Reyes.  I am over twenty-one years of age, am of sound mind, and am competent to make this affidavit.  I am a Vice President of Deutsche Bank Trust Company Americas ("DBTCA").  I am authorized to submit this Affidavit on behalf of DBTCA. The facts stated in this Affidavit are within my personal knowledge based on a review of the business records for DBTCA and are true and correct to the best of my knowledge.

2.     Pursuant to the Series Supplement, dated as of February 1, 2007, to the Standard Terms of Pooling and Servicing Agreement ("PSA"), dated as of December 1, 2006, DBTCA became the trustee ("Trustee") of Residential Accredit Loans, Inc. Trust 2007-QS3, Mortgage Asset-Backed Pass-Through Certificates Series 2007-QS3 (the "Trust").

3.     Pursuant to the Mortgage Loan Schedule, which is Exhibit I to the Series Supplement for the Trust, the Barry F. Mack loan, which is secured by property located at 287 Egret Avenue, Naples, FL 34108, and is the subject of this action (the "Mack loan"), is part of

the Trust, and is serviced by a servicer (either the Master Servicer or a Subservicer), pursuant to the Series Supplement and PSA governing the Trust.

4.    Pursuant to the terms of the Series Supplement and PSA, servicing responsibilities for the Mack Loan include the collection and application of mortgage payments, and the power to initiate foreclosure on behalf of DBTCA if the loan defaulted.

5.    Prior to May 12, 2011, DBTCA had no knowledge of this action. It was not aware of any of the pleadings, motions or orders filed in the action, including the counterclaim filed by the defendants or the judgment that had been obtained against it, and received no notices in connection with this action until May 12, 2011, when it received a copy of the Final Judgment of Foreclosure.

FURTHER AFFIANT SAITH NOT

_____
Ronaldo Reyes

State of California}
County of Orange}

On July 11, 2011, before me, ___TUAN QUACH___ Notary Public, personally appeared Ronaldo Reyes, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____
Notary signature

TUAN QUACH
Commission # 1838344
Notary Public - California
Orange County
My Comm Expires Feb 26, 2013