# EXHIBIT 1

RECORDING REQUESTED BY:
**Executive Trustee Services, LLC dba ETS Services, LLC**

AND WHEN RECORDED MAIL TO:
**GMAC MORTGAGE, LLC
FKA GMAC MORTGAGE CORPORATION
1100 VIRGINIA DRIVE
FORT WASHINGTON, PA 19034**

**Forward Tax Statements to
the address given above**

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder
9.00
* $ R 0 0 0 5 1 8 3 8 1 7 $ *
2012000564076 10:22 am 09/26/12
117 404 T09   2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

SPACE ABOVE LINE FOR RECORDER'S USE

TS # GM-278944-C
LOAN # 0818021144        INVESTOR #: 10895731
TITLE ORDER # 110113731-CA-MSI

# TRUSTEE'S DEED UPON SALE

APN 136-241-04        TRANSFER TAX: $00.00
"THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE, SECTION 480.3"
The Grantee Herein Was The Foreclosing Beneficiary.
The Amount Of The Unpaid Debt was $837,094.63
The Amount Paid By The Grantee was $348,500.00
Said Property Is In The City Of BUENA PARK, County of Orange

**Executive Trustee Services, LLC dba ETS Services, LLC**, as Trustee, (whereas so designated in the Deed of Trust
hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

**Bank of America, National Association as successor by merger to LaSalle Bank National
Association as Trustee RAMP 2007RP1 by Residential Funding Company, LLC fka Residential
Funding Corporation, Attorney-in-Fact**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and
now held by it as Trustee under the Deed of Trust in and to the property situated in the county of Orange, State of
California, described as follows:

LOT(S) 4 OF TRACT NO. 2630, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE,
STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 77, PAGE(S) 10-12
INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER
OF SAID COUNTY.

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **KAREN M.
ROZIER, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY** as Trustor, dated **12/23/2005** of the
Official Records in the office of the Recorder of Orange, California under the authority and powers vested in the Trustee
designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust
pursuant to the Notice of Default and Election to Sell under the Deed of Trust recorded on **01/04/2006** , instrument
number **2006000006922** (or Book XX, Page XX) of Official records. Trustee having complied with all applicable statutory
requirements of the State of California and performed all duties required by the Deed of Trust including ~~sending a Notice
of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale~~
Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b. .

**[Page 1 of 2]**

*EXHIBIT 11*

Branch :F32,User :W019
Station ID :NH1Y

# TRUSTEE'S DEED UPON SALE

Trustee's Deed
T.S.# GM-278944-C
Loan # 0810021144
Title Order # 110113731-CA-MSI

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on 09/24/2012. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being $348,500.00, in lawful money of the United States, in pro per, receipt there of is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, **Executive Trustee Services, LLC dba ETS Services, LLC**, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws

Date: *9-24-12*

**Executive Trustee Services, LLC dba ETS Services, LLC**

**"This instrument is being recorded as an ACCOMMODATION ONLY, with no Representation as to its effect upon title"**

By: _____
    **Luis Rodriguez, Authorized Officer**

State of California    } S.S.
County of Los Angeles }

On *9-24-2012* before me, **Sally Beltran** Notary Public, personally appeared **Luis Rodriguez** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____  (Seal)
         Sally Beltran

SALLY BELTRAN
Commission # 1962270
Notary Public - California
Los Angeles County
My Comm. Expires Dec 1, 2015

[Page 2 of 2]

# EXHIBIT 2

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|| ||| ||| | ||| | ||| || || ||| | 12.00
* S R 0 0 0 5 2 1 2 4 8 3 $ *
2012000604833 2:17 pm 10/04/12
117 404 N38   2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
EXECUTIVE TRUSTEE SERVICES, LLC
2255 NORTH ONTARIO STREET #400
BURBANK, CA 91504-3120

LOAN# 0810021144
T.S.#   GM-278944-C
136-241-04
    11011373 |

## NOTICE OF RESCISSION OF TRUSTEE'S DEED UPON SALE

This Notice of Rescission is made this day Oct 03, 2012 with respect to the following:

1.) THAT Executive Trustee Services, LLC dba ETS Services, LLC is the duly
appointed Trustee under that certain Deed of Trust dated 12/23/2005 and recorded
01/04/2006 as instrument number 2006000006922 in book XX page XX wherein
KAREN M. ROZIER, A MARRIED WOMAN AS HER SOLE AND SEPARATE
PROPERTY are named as trustors, WESTWOOD ASSOCIATES, A CALIFORNIA
CORPORATION is named as trustee, and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WMC MORTGAGE CORP.,
A CORPORATION ; is named as beneficiary;

2.) THAT Bank of America, National Association as successor by merger to LaSalle
Bank National Association as Trustee RAMP 2007RP1 is the beneficiary of record under
that Deed of Trust by virtue of an Assignment of Beneficial Interest recorded

3.) THAT THE DEED OF TRUST encumbers real property located in the County of
Orange, State of CA, described as follows:

LOT(S) 4 OF TRACT NO. 2630, IN THE CITY OF BUENA PARK, COUNTY OF
ORANGE,
STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 77, PAGE(S)
10-12
INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY
RECORDER
OF SAID COUNTY.

4.) THAT BY VIRTUE OF a default under the terms of the Deed of Trust, the
beneficiary did declare a default, as set forth in a Notice of Default recorded 04/11/2011
as instrument number 2011-181720 in book/page in the office of the Recorder of Orange
County, State of CA;

92

LOAN# 0810021144
T.S.#   GM-278944-C

5.) THAT THE TRUSTEE has been informed by the Beneficiary that the beneficiary desires to rescind the Trustee's Deed recorded upon the foreclosure sale which was conducted in error due to a failure to communicate timely, notice of conditions which would have warranted a cancellation of the foreclosure which did occur on 09/24/2012;

6.) THAT THE EXPRESS PURPOSE of this Notice of Rescission is to return the priority and existence of all title and lien holders to the status quo-ante as existed prior to the trustee's sale;

NOW THEREFORE, THE UNDERSIGNED HEREBY RESCINDS THE TRUSTEE'S SALE AND PURPORTED TRUSTEE'S DEED UPON SALE AND HEREBY ADVISES ALL PERSONS THAT THE TRUSTEE'S DEED UPON SALE DATED 09/24/2012 AND RECORDED 09/26/2012 AS INSTRUMENT NUMBER 201200056476 IN THE COUNTY OF  Orange , STATE OF CA, FROM Executive Trustee Services, LLC dba ETS Services, LLC (TRUSTEE) TO Bank of America, National Association as successor by merger to LaSalle Bank National Association as Trustee RAMP 2007RP1 by Residential Funding Company, LLC fka Residential Funding Corporation, Attorney-in-Fact (GRANTEE) IS HEREBY RESCINDED, AND IS AND SHALL BE OF NO FORCE AND EFFECT WHATSOEVER.  THE DEED OF TRUST DATED 12/23/2005 , RECORDED 01/04/2006 AS INSTRUMENT NUMBER 2006000006922 IN BOOK XX , PAGE XX , IS IN FULL FORCE AND EFFECT.

Executive Trustee Services, LLC dba ETS Services, LLC

Luis Rodriguez, Authorized Officer

State of California        } S.S.
County of Los Angeles  }

On Oct 03, 2012 ,before me  Sally Beltran, Notary Public, personally appeared Luis Rodriguez, ·who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the Instrument.
I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Sally Beltran

SALLY BELTRAN
Commission # 1982270
Notary Public - California
Los Angeles County
My Comm. Expires Dec 1, 2015

93

# EXHIBIT <u>3</u>



### ROZIER v. GMAC MORTGAGE, et al.

## ORDER OF PRELIMINARY INJUNCTION

The above-entitled cause came on for hearing on plaintiff's motion for preliminary injunction in the above-entitled court on February 5, 2013 in Department C-24, Honorable Derek W. Hunt judge presiding. Karen Rozier in propria persona appeared on behalf of plaintiff; Kiersten Kropp, Attorney at Law, of Bryan Cave LLP appeared telephonically on behalf of defendant Bank of America National Association, as successor by merger to LaSalle Bank, etc. ("Bank of America"); and Yaron Shaham, Esq. of Severson & Werson appeared for defendants GMAC Mortgage LLC, and Executive Trustee Service ("ETS") and also for U.S. Bank National Association.

The court, having considered the evidence, the briefs, and the arguments of counsel, and it appearing to the satisfaction of the court that under Civ. C § 3368 this is a proper case for granting such preliminary injunction limited to defendant Bank of America, and that unless the said preliminary injunction be granted, great and irreparable injury will result to plaintiff before trial can be had,

NOW THEREFORE IT IS ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. Defendant Bank of America and each of its officers, agents, assigns, attorneys, representatives, employees, sales representatives, and all persons acting under, in connection with, or for them are hereby preliminarily enjoined and restrained pending trial of this action from engaging in, committing, or performing, directly or indirectly, any and all of the following acts:

Selling or attempting to sell or causing to be sold, by foreclosure or otherwise, that certain real estate commonly known as _____ or authorizing or procuring others to do so.

2. IT IS FURTHER ORDERED that plaintiff is ordered to make personal service of this order on each defendant herein no later than 10 a.m. on February 13, 2013 and thereafter to file written proof of said service in court within seven days thereafter.

3. IT IS FURTHER ORDERED that bond on this preliminary injunction be hereby fixed in the sum of $5,000.

4. Trial of the action, heretofore scheduled for September 23, 2013, will remain.

5. Clerk to give notice.

Dated: 2-5-13

_____
Judge of the Superior Court
**DEREK W. HUNT**

1

**95**



# EXHIBIT 4

ELECTRONICALLY RECEIVED
Superior Court of California,
County of Orange

**02/08/2013** at 01:39:55 PM

Clerk of the Superior Court
By Amy Van Arkel,Deputy Clerk

1 | DAVID EUGENE ROZIER, SR.
DAVID BEAR IRREVOCABLE LIVING TRUST

2 | 7957 DAHLIA CIRCLE
BUENA PARK, CA 90620

3 | (410) 458-3772
*Propria Persona*

*FILED*

FEB 1 3 2013

4

5 | IN THE SUPERIOR COURT OF CALIFORNIA

6 | ORANGE COUNTY

7

8 | David Eugene Rozier, Sr., as Trustee for the
DAVID BEAR IRREVOCABLE LIVING TRUST

| Case No. 30-2012 00619543

9 | Plaintiffs,

vs.

**ORDER GRANTING TEMPORARY
RESTRAINING ORDER**

10 | U.S. BANK NATIONAL ASSOCIATION, As
Trustee, As Successor in Interest to BANK OF

11 | AMERICA, NATIONAL ASSOCIATION, As
Trustee, Successor by Merger to LASALLE

12 | BANK NATIONAL ASSOCIATION; As Trustee
RAMP 2007RP1; BANK OF AMERICA,
NATIONAL ASSOCIATION, As Trustee,

13 | Successor by Merger to LASALLE BANK
NATIONAL ASSOCIATION; As Trustee RAMP

14 | 2007RP1; LASALLE BANK NATIONAL
ASSOCIATION; As Trustee RAMP 2007RP1;

15 | WMC MORTGAGE COMPANY;PROSPER
MARKETPLACE, INC.;WACHOVIA DEALER
SERVICES;JOHN DOES 1-30.

16

| Defendants.

17

18

19

20 | ORDER- 1

21

1      Plaintiff sought an ex parte temporary restraining order to enjoin the foreclosure

2   sale of its property. Plaintiff alleges the house was scheduled for a foreclosure sale on

    February 6, 2013, twenty-four (24) hours after postponement of a foreclosure sale from

3   February 5, 2013. Amongst other arguments, Plaintiff alleges defendants failed to

4   record all assignments of the trust, forged and falsified assignments of the trust and

5   substitution of the trustee, securitized any and all notes securing any interest in the

    Deed. Plaintiff also alleges that defendant U.S. Bank National Association As Trustee, As

6   Successor in Interest to BANK OF AMERICA, NATIONAL ASSOCIATION, As Trustee,

7   Successor by Merger to LASALLE BANK NATIONAL ASSOCIATION; As Trustee RAMP

8   2007RP1 has not complied with the legal requirements for a valid non-judicial

    foreclosure and violated a federal bankruptcy stay in order to record their interest in

9   the Deed in the county land records prior to initiating the foreclosure proceedings

10  Defendant U.S. Bank opposed the Plaintiff's motion. ~~However, Defendant U.S. Bank~~

11  ~~wanted the court to believe that it did not receive notice of the *Ex Parte* hearing. The~~

12  ~~court does not accept that argument as the *Ex Parte* hearing was held at 8:00 AM in a~~

    ~~courtroom where neither party has previously appeared yet U.S. Bank was represented~~

13  ~~by counsel. Defendant U.S. Bank, through its counsel, admitted to being in court on~~

14  ~~Monday and Tuesday with the same Plaintiff, yet claimed it did not know the new sale~~

15  ~~date when asked something the court also has difficulty accepting given the urgency of~~

    ~~the hearing. Therefore, the court must rely on Plaintiff's assertion that the sale was~~

16  ~~scheduled for later that same day.~~

17  ~~Defendant U.S. Bank requested that the court order the Plaintiff to issue a bond but~~

18  ~~failed to provide any evidence that it was in a position to make such a request. This~~

19

20                                      ORDER- 2

21

1    ~~court finds it particularly troubling that U.S. Bank has failed to correct the property~~

2    ~~description of the subject property given the clear records from the Orange County Tax~~
     ~~Assessor.~~

3    *After weighing the relevant factors, the court ordered that*
     ~~Because of the alleged imminent foreclosure sale, and because likelihood of success on~~

4    ~~the merits of her claim that defendants did securitize, assign, or sell or transferred any~~

5    ~~and all debt, loan or promissory note,~~ Defendants, and their officers and agents, and

6    other persons in active concert or participation with defendants, who receive actual

7    notice of this order, are restrained from conducting a foreclosure sale for the following

     property: **7597 Dahlia Circle Buena Park, California 90620**, from this day until

8    Thursday, February 21, 2012, at 5:00 p.m. ~~Furthermore, finding good cause exists,~~

9    ~~this court expressively prohibits the conduct of the sale within the seven-day period~~

     ~~after the expiration or termination of this order.~~ *The court further directed plaintiffs*
10   *to prepare and submit an appropriate written TRO before the scheduled sale at noon*
     *on February 6, 2013*
     ~~A hearing will be held on whether to issue a preliminary injunction at 8:30 a.m. on~~

11   ~~February 21, 2013, in Department C24 of 700 Civic Center Drive in Santa Ana, CA.~~

12   *This case was transferred to Department C-24, with plaintiffs to seek and*
     ~~IT IS SO ORDERED.~~

13   *arrange a hearing there in order to obtain a preliminary injunction*
     ~~Plaintiff's allegations demonstrate a sufficient, I grant Plaintiff's request for a~~

14   ~~temporary restraining order.~~

15

16   *February 13 2013*                    Honorable Ronald Bauer

17

18

19

20                                    ORDER- 3

21

# EXHIBIT 6

1  **BRYAN CAVE LLP**
Sean D. Muntz, California Bar No. 223549
2  3161 Michelson Drive, Suite 1500
Irvine, California 92612-4414
3  Telephone:    (949) 223-7000
Facsimile:    (949) 223-7100
4  E-Mail:    sean.muntz@bryancave.com
5
Attorneys for Defendant
6  BANK OF AMERICA, N.A., as successor by merger to LaSalle
Bank National Association as Trustee for RAMP 2007RP1
7
8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9                     **FOR THE COUNTY OF ORANGE**
10

| | |
|---|---|
| 11  KAREN MICHELE ROZIER, an Individual, | Case No. 30-2012-00601310-CU-OR-CJC |
| 12  DAVID EUGENE ROZIER, SR., an Individual, | (Assigned to Hon. Sheila B. Fell) |
| 13 | |
| 14                            Plaintiff, | **NOTICE OF CONTINUED TRIAL DATE** |
| 15                  vs. | |
| 16  BANK OF AMERICA, NATIONAL ASSOCIATION as successor by merger to | <u>Current Trial Date:</u> Date:  February 2, 2015 |
| LASALLE BANK NATIONAL | Time:  9:00 a.m. |
| 17  ASSOCIATION as Trustee for RAMP 2007RP1 aka BANK OF AMERICA, | Dept.:  C22 |
| 18  NATIONAL ASSOCIATION as successor by merger to LASALLE BANK NATIONAL | |
| 19  ASSOCIATION as Trustee RAAC 2007RP1 | |
| 20  U.S. BANK NATIONAL ASSOCIATION as successor in interest to BANK OF AMERICA, | Complaint Filed:    September 27, 2012 |
| NATIONAL ASSOCIATION as Trustee, | FAC Filed:    October 29, 2012 |
| 21  successor by merger to LASALLE BANK | SAC Filed:    February 4, 2013 |
| NATIONAL ASSOCIATION as Trustee for | TAC Filed:    June 10, 2013 |
| 22  RAAC 2007RP1 | Trial Date:    February 2, 2015 |
| 23 | |
| 24  OCWEN HOME LOAN SERVICING COMPANY | |
| 25  RESIDENTIAL FUNDING COMPANY, LLC fka RESIDENTIAL FUNDING COMPANY, | |
| 26  ATTORNEY-IN-FACT | |
| 27  JOHN DOES 18-50, | |
| 28                      Defendants. | |

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

IR01DOCS\700979.1\C076608\0345565

1    **PLEASE TAKE NOTICE** the jury trial previously set for May 27, 2014 at 9:00 a.m. has

2    been continued to February 2, 2015 at 9:00 a.m., in Department C22 of the above-referenced

3    court.

4

5    Dated:  April 21, 2014                    **BRYAN CAVE LLP**

6

7                                             By: _____

8                                                 Sean D. Muntz
                                                Attorneys for Defendant
9    BANK OF AMERICA, N.A., as successor by merger
     to LaSalle Bank National Association as Trustee for
     RAMP 2007RP1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

NOTICE OF CONTINUED TRIAL DATE

# EXHIBIT 8

Case CC-12-1359

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

Appeals Case 13-60106

Bankruptcy Appellate Panel No. CC-12-1359

Bankruptcy Case No. 8:11-21727-CB

**In re KAREN MICHELE ROZIER**

**Karen Michele Rozier,**

*Debtor, and Appellant Without Legal Representation*

**vs.**

**U.S. Bank National Association, as Trustee, as successor in interest to Bank of America National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for RAAC 2007 RP1**

*Appellee*

# APPELLANT'S REPLY

**TABLE OF CONTENTS**

I.     JURISDICTION STATEMENT _____ Page 1

II.    APPELLANT'S REPLY _____ Page 1

       a. APPELLEE PRESENTED FLAWED ARGUMENTS _____-_____ Page 3

       b. APPELLEE FAILED TO REFUTE APPELLANT'S ARGUMENTS _____ Page 6

III.   AS TO STANDING _____ Page 7

IV.    STATEMENT OF RELATED CASES _____ Page 7

V.     U.S. BANK IS GUILTY OF INTENTIONAL DECEIT _____ Page 8

VI.    CONCLUSION _____ Page 11

Appellant Karen Michele Rozier, as the Pro Se Appellant and Debtor, submits this REPLY to APPELLEE'S BRIEF. Appellant used the Informal Brief and is not required to comply with the technical requirements of the Rules. 9th Cir. R. 28-1(c) & 32-5. Appellant apologizes in advance for not numbering the pages as she made the copies before she understood the requirement.

## I.   JURISDICTION STATEMENT

Appellant requested an extension of time to file her REPLY and was granted an extension until April 18, 2014. This REPLY is timely filed. Appellant's bankruptcy is still active and she is still in possession of the subject property.

The property subject to the Appeal is as described in APPELLANT'S EXCERPTS OF THE BRIEFS EXHIBIT A[1] and located within this Court's jurisdiction. The home situated on the subject property is commonly described as 7957 Dahlia Circle Buena Park, California 90620. A true and correct copy is attached hereto as EXHIBIT A.

## II.   APPELLANT'S REPLY

Appellant has never disputed whether the Deed of Trust exists. Appellant disputes whether it is void or valid and that is a

---

[1] Appellant is not including any new items in her excerpts. Each of the documents submitted with Appellant's excerpts was taken from Appellee's Excerpts submitted with its BRIEF. Appellant will refer to her excerpts as "Appellant's excerpts" or "AE" and Appellee's excerpts as "Appellee's Excerpts of the Brief "or "AEofB"

1   determination that can only be made by looking at all the evidence and

2   events, not just the DOT in a vacuum. This evidence includes:

3   -   the use of admitted robo-signer Juby Faber and Nikole Shelton,

    -   documents indicating fraud including one with the Appellant's
4
        middle name misspelled and several instances of forgery,
5
    -   an assignment of Deed of Trust to a fictional trust RAMP2007RP1,

6   -   assignments using bankrupted entities Executive Trustee Services

        aka ETS, PITE DUNCAN, LLP,
7
    -   assignments using both Mortgage Electronic Registration System
8
        Inc. and Mortgage Electronic Registration System Inc., also an
9
        indication of fraud based on the manner in which it was used and

10      the occurrences throughout California in property documents

        recorded throughout California.
11

12      Some of the documents described above are included in the

    Appellant's Excerpts. The missing two – the use of Nikole Shelton and
13
    the questionable MERS assignment – were previously provided and are
14
    attached hereto as 1 as a courtesy.

15
        In GLASKI v BANK OF AMERICA NATIONAL ASSOCIATION, et al, the
16
    court writes "*We reject the view that a borrower's challenge to an

17  *assignment must fail once it is determined that the borrower was not a*

    *borrower to, or a third party beneficiary of, the assignment*
18
    *agreement. Cases adopting that position "paint with too broad a*

19

20                              APPELLANT'S REPLY - 2 of 12

1   *brush.'* (*Culhane v. Aurora Loan Services of Nebraska, supra, 708 F.3d*

2   *at p. 290) Instead, courts should proceed to the question whether the*

3   *assignment was void."* [Page 18, line 28- 29 though Page 19, line 1-5]

It is a reasonable conclusion that the lower court should have

4   concerned itself with more than just whether or not Debtor had paid

5   U.S. Bank. Given that Debtor was challenging every aspect of the

transaction including the date of the transaction, the spelling of her

6   name, the value of her home, and the size of her home, the court

7   should have required U.S. Bank to prove that it was not attempting to

profit from the confusion when the lender named in the DOT, WMC

8   MORTGAGE CORP, was shut down by its parent company GE Capital due to

9   massive fraud.

10      *a. APPELLEE PRESENTED FLAWED ARGUMENTS*

11      In its reply, in addition to asserting its position that it had

12   standing to bring an action in Appellant's bankruptcy, Appellee

presented three main points:

13

14      1. That Plaintiff was in default of a note dated December 23,

         2005 by virtue of a Notice of Default recorded on March 4,

15         2008.

16      That Notice of Default was rescinded. (See Request for Judicial

17   Notice **EXHIBIT** A [RJN: ExA]) Appellee never alleged any other default.

18

19

20   APPELLANT'S REPLY - 3 of 12

1    Furthermore, California Civil Code SECTION 1688 et seq. permits

2    an attack on a judgment based upon an illegal contract if that

     contract is made part of the judgment roll and if further judicial

3    action is about to be taken to enforce the terms of the contract.

4    *Hunter v. Superior Court, 36 Cal.App.2d 100, 97 P.2d 492* (1939).

     Because the December 23, 2005 contract between Rozier and WMC are

5    "wholly void as being absolutely prohibited by statute," under

6    California law due to Rozier's February 2006 rescission, the

7    assignment to US Bank is a nullity. *Hunter, 36 Cal.App.2d at 114, 97

     P.2d 492.*  Ca Civil § 1692 expressly states that in an action to

8    enforce a rescission, the aggrieved party "shall be awarded complete

9    relief"; and it also states that a "claim for damages is not

10   inconsistent with a claim for relief based upon rescission." [Ca Civil

     § 1692] Thus, where the rescission is based upon fraud, and provided

11   plaintiff (rescinding party) satisfies the applicable statutory

12   standards (Ca Civil § 3294), the court apparently has discretion to

     award the rescinding party punitive damages. [See Mahon v. Berg (1968)

13   267 Cal.App.2d 588, 589-590, 73 Cal.Rptr. 356, 357-358] Appellee was

14   aware of the rescission when it submitted its BRIEF. APPELLANT'S

15   EXCERPTS **EXHIBIT** 1 provides the following pages from APPELLEE'S

     EXCERPTS OF THE BRIEF:106-109, 118-119, 121-125,130-131.

16

17

18

19

20                          APPELLANT'S REPLY - 4 of 12

Whether or not there was any note, valid Deed of Trust or default are disputed material facts that should have been examined before the court concluded that Appellee's assignments were valid.

> 2. That Plaintiff was upside down on a note of $575,000 secured
>      by a 2,096 square foot property located at 7957 Dahlia Circle
>      Buena Park, CA 90620;

As per the appraisal [RJN:Ex.B] submitted with this REPLY, the subject property is presently worth $750,000, exactly twice what the Appellee alleges in its BRIEF, supported by a declaration and Broker's Price Opinion. [See AB: **EXHIBIT** 2, AEoB pages 44 - 54]. As per RJN: ExC, the property was worth $925,000 in July 2007. Property values have only recently begun to improve but at no time had the subject property been worth less than the debt under dispute, or $576,000.

Appellee U.S. Bank submitted statements by employees of GMAC MORTGAGE, LLC,(GMACM), but GMACM was not a party to the suit and not a wholly-owned subsidiary of GMACM. Whether or not GMACM employee's statement are valid should be examined by cross-examination.

> 3. That Plaintiff alleged that BAP Judge Kirschner was biased by
>      some prior relationship with Bank of America.

Appellant made no such allegations.

1

2    *b. APPELLEE FAILED TO REFUTE APPELLANT'S ARGUMENTS*

3    Appellant alleged that the BAP misquoted the lower bankruptcy

4    court. Appellant claims that someone[2] committed fraud when it claimed

     that it reviewed the transcript and concluded that the lower court

5    read and considered Debtor's Opposition Motion. [See Appellant's

6    Informal Brief, page 2, #2, last two lines.] Appellee did not refute

     this allegation. Appellant asks that the Court compare what the lower

7    court said and did, to what the BAP wrote in its opinion that it did.

8    In the transcript provided with APPELLANT'S OPENING BRIEF, the Court

9    clearly states that it had not read and would not consider Debtor

     [Appellant's] Opposition Motion, and only cared if Debtor [Appellant]

10   was paying the party appearing by telephonic appearance. A courtesy

11   copy of that transcript is attached hereto as **EXHIBIT** 2. Debtor's

12   [Appellant] Opposition Motion included an appraisal which also showed

     the true size and value of the subject property. In the BAP's Opinion,

13   it wrote "After considering … Rozier's untimely opposition, and the

14   parties' oral arguments, the bankruptcy court granted U.S. Bank relief

15   from stay". [Page 6, line 14-15]. That is factually inaccurate and

     gives the impression that Appellant received a fair hearing and that

16   the decision was based after careful consideration of the evidence.

17   ————————————————————

     [2] Appellant apologizes for naming Judge Kirschner specifically. As Appellant has no insight into what was presented
18   to him, her accusation was premature.

19

1  III. AS TO STANDING

2  **Appellee claims it has rights based on standing.** The federal

3  court asked THE SUPREME COURT OF THE STATE OF WASHINGTON: Is Mortgage

   Electronic Registration Systems, Inc., a lawful "beneficiary" within

4  the terms of Washington's Deed of Trust Act, Revised Code of

5  Washington section 61.24.005(2), if it never held the promissory note

6  secured by the deed of trust? THE SUPREME COURT OF THE STATE OF

   WASHINGTON wrote in No. 86206-1 (consolidated with No. 86207-

7  9)"CONCLUSION: **Under the deed of trust act, the beneficiary must hold**

8  **the promissory note and we answer the first certified question "no."**

9  IV.    STATEMENT OF RELATED CASES

10     In its BRIEF, Appellee states that there are no known cases

11  before this court.  There are however, several cases involving

   APPELLANT with the APPELLEE, the subject property, or the Defendant's

12  agents including lawyers from Severson and Werson. Civil cases include

13  but are not limited to:

14  UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK:

15     12-12020 (MG) In Re RESIDENTIAL CAPITAL, et. al.

16  FOURTH APPELLATE DISTRICT, DIVISION THREE (CALIFORNIA):

17     G048311 SEVERSON AND WERSON APC VS. KAREN ROZIER

18

19

20                         APPELLANT'S REPLY - 7 of 12

1    G048312 SEVERSON AND WERSON APC VS. DAVID ROZIER

2    G048316 SEVERSON AND WERSON APC VS. DAVID ROZIER

3    G048321 SEVERSON AND WERSON APC VS. KAREN ROZIER

4    ORANGE COUNTY SUPERIOR COURT (CALIFORNIA), CENTRAL JUSTICE CENTER

5    30-2012 00601310-CU-OR-CJC, Karen Michele Rozier vs. BANK OF

6    AMERICA, NATIONAL ASSOCIATION AND U.S. BANK NATIONAL ASSOCIATION

7    30-2012 00619543, David Eugene Rozier, Sr., as Trustee for the

8    DAVID BEAR IRREVOCABLE LIVING TRUST vs. U.S. BANK NATIONAL

9    ASSOCIATION, et. al

10   **V.    APPELLEE IS GUILTY OF INTENTIONAL DECEIT**

11        In deciding whether to issue a preliminary injunction, the

12   superior court weighs the likelihood of the plaintiff prevailing at

     trial and the relative harm that would result if a preliminary

13   injunction does not issue. (King v. Meese (1997) 43 Cal.3d 1217, 1226.

14   Necessarily, the court must weigh evidence and resolve any conflicts

     in making these determinations. (Kohn v. Superior Court (1966) 239

15   Cal.App.2d 428, 430.) But the standard is whether there is a

16   likelihood of the plaintiff prevailing. A temporary injunction is not

17   a final determination of the merits of the lawsuit. (Paul v. Allied

     Dairymen, Inc. (1962) 209 Cal.App.2d 112, 121 ["the ultimate rights of

18

19

20

1    the parties are not determined in connection with the application for

2    preliminary injunction"].) In other words, the court determines

3    whether there is sufficient evidence to support issuing the

   preliminary injunction, not whether it is a lock the plaintiff will

4    prevail. Having found the evidence supported issuing the preliminary

5    injunction, the court did not have to find there was evidence

   permitting adverse inferences.

6

7       Two different California superior court judges weighed the

   evidence and concluded that there is something 'hinky' with the

8    Appellant's case file and held this case over for trial. One issued an

9    injunction and when the Appellee attempted to sell the home less than

   24-hours later, a different California judge reviewed the evidence and

10    issued a restraining order. [Exhibit 1] That indicates serious issues

11    with Appellee's claim of standing. Coupled with the evidence that the

   subject property is worth $750,000 and not $375,000, the Court should

12    also question Appellee's claims.

13

14       The Montana 18th Judicial District Court of Gallatin County

   recently held in *McCulley vs. U.S. Bank* that "U.S. Bank "blatantly

15    *misrepresented an important fact" in one of its briefs filed with this*

   *Court.* The court determined that "*This egregious behavior by the Bank*

16    *constitutes intentional deceit and supports the conclusion that the*

17    *Bank's conduct was reprehensible*" [para 8, page 13] A courtesy copy of

   that decision is attached hereto as **EXHIBIT** 3. In this case before the

18

19

20                    

1  Court, Appellee repeatedly submitted a SUPPLEMENTAL DECLARATION OF

2  BROKER MINI ALI IN SUPPORT OF MOTION FROM RELIEF FROM STAY claiming it

   has a secured debt of $576,000 on the subject property, which it

3  describes as 2,096 square feet and worth only $375,000. [AB, **EXHIBIT** 2]

4  U.S. Bank presented this declaration to the lower Court in order to

   obtain relief from stay and again made those representations in its

5  recent BRIEF.

6
        As the RJN **EXHIBIT** B shows, the subject property has a value of

7  $750,000. As per the appraiser's notes, she did not add value for its

8  large sunken operational Jacuzzi which comfortably seats 8- people.

   Also, not included in her total square footage are the permitted 250-

9  sq ft office over the garage, the permitted 60-sq ft third floor loft/

10 observation room, or the lovely open strawberry field adjacent

11 bordering the rear of the subject property.

12      Appellee has been made aware that the property is worth

   considerably more than $576,000, including being provided with

13 evidence from the Tax Assessor. [See RJN: **EXHIBIT** D] Despite being

14 aware of these facts, Appellee continues to represent to this Court

   that the subject property is worth less than the value of their

15 alleged interest and that they sought bankruptcy protection to protect

16 that interest.

17
        The December 23, 2005 note was rescinded which violated the

18 Pooling and Servicing Agreement of the RAMP2007 RP1 fictional trust

19

20                        APPELLANT'S REPLY - 10 of 12

1   and RAAC2007RP1 trust. The June 1, 2006 note was not properly secured

2   by any Deed of Trust. U.S. Bank could not risk the Trustee deciding to

3   sell Debtor [Appellant's] home for its true worth at that time,

    approximately $925,000, or $349,000 more than U.S. Bank's so-called

4   stated interest. U.S. Bank's wrongful and deceitful acts have caused

5   Appellant clear harm, including prolonging this bankruptcy.

6       In a recent class action case filed in New York April 4, US Bank

    is accused of **Violation of the Trust Indenture Act of 1939, 15**

7   **U.S.C. §77aaa et seq**. (see Royal Trust Investments SA v US BANK

8   NA 1:14-cv-02590-VM) This is yet another example of what Appellant

9   has been stating all long, that Appellee is not being truthful,

    and does not have standing as defined by the SEC. Appellant

10  suspects that her rescinded 2005 note, rescinded March 2006

11  note, rescinded March 2006 modification of note and rescinded

12  May 2006 modification of note were all securitized along with

13  the June 1, 2006 note that closed on 6-6-6. This briefing is due

    aka April 18, 2014, or Good Friday.

14

15  **VI.   CONCLUSION**

16      For the reasons listed above, Appellant requests that the Court

17  reverse the lower court's decision granting the Appellee U.S. Bank's

    request for relief from stay. Appellant also requests the Court

18  sanction the Appellee for submitting false documents with the intent

19

20                        APPELLANT'S REPLY - 11 of 12

1   to defraud the Court and or cause the Appellant financial and or

2   emotional harm. Appellant further requests that Appellee be required

    to fully extinguish, expunge and destroy every copy of every note,

3   mortgage and or debt it possesses related to the subject property and

4   compensate Appellant for two years of her time. Finally, Appellant

    requests a permanent injunction preventing Appellee or its agents

5   including Severson and Werson, APC from ever contacting her or her

6   family, slandering her name, or making false accusations including

7   defending all previous false acts and accusations. Appellant has not

    prepared the proper orders and prays that she is also not required to

8   comply with that technical requirement.

9

10  Executed in *Buena Park*, California

11
    Dated: April 17, 2014                           Respectfully Submitted:

12

13

                                                    Karen Michele Rozier

14                                                  Appellant- Debtor

15

16

17

18

19

                               APPELLANT'S REPLY - 12 of 12

20

21

Case CC-12-1359

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

Appeals Case 13-60106

Bankruptcy Appellate Panel No. CC-12-1359

Bankruptcy Case No. 8:11-21727-CB

**In re KAREN MICHELE ROZIER**

**Karen Michele Rozier,**

      *Debtor, and Appellant Without Legal Representation*

    **vs.**

**U.S. Bank National Association, as Trustee, as successor in interest to Bank of America National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for RAAC 2007 RP1**

      *Appellee*

# APPELLANT'S REPLY

# COURTESY EXHIBITS

# EXHIBIT 1

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

**FEB 05 2013**

ALAN CARLSON, Clerk of the Court

BY C. RIDENT

## ROZIER v. GMAC MORTGAGE, et al.
### 30-2012
### 00 601 310

## ORDER OF PRELIMINARY INJUNCTION

The above-entitled cause came on for hearing on plaintiff's motion for preliminary injunction in the above-entitled court on February 5, 2013 in Department C-24, Honorable Derek W. Hunt judge presiding. Karen Rozier in propria persona appeared on behalf of plaintiff; Kiersten Kropp, Attorney at Law, of Bryan Cave LLP appeared telephonically on behalf of defendant Bank of America National Association, as successor by merger to LaSalle Bank, etc. ("Bank of America"); and Yaron Shaham, Esq. of Severson & Werson appeared for defendants GMAC Mortgage LLC, and Executive Trustee Service ("ETS") and also for U.S. Bank National Association.

The court, having considered the evidence, the briefs, and the arguments of counsel, and it appearing to the satisfaction of the court that under Civ. C § 3368 this is a proper case for granting such preliminary injunction limited to defendant Bank of America, and that unless the said preliminary injunction be granted, great and irreparable injury will result to plaintiff before trial can be had,

NOW THEREFORE IT IS ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. Defendant Bank of America and each of its officers, agents, assigns, attorneys, representatives, employees, sales representatives, and all persons acting under, in connection with, or for them are hereby preliminarily enjoined and restrained pending trial of this action from engaging in, committing, or performing, directly or indirectly, any and all of the following acts:

Selling or attempting to sell or causing to be sold, by foreclosure or otherwise, that certain real estate commonly known as 7957 Dahlia Circle in Buena Park or authorizing or procuring others to do so.

2. IT IS FURTHER ORDERED that plaintiff is ordered to make personal service of this order on each defendant herein no later than 10 a.m. on February 13, 2013 and thereafter to file written proof of said service in court within seven days thereafter.

3. IT IS FURTHER ORDERED that bond on this preliminary injunction be hereby fixed in the sum of $5,000.

4. Trial of the action, heretofore scheduled for September 23, 2013, will remain.

5. Clerk to give notice.

Dated: 2-5-13

_____
Judge of the Superior Court
**DEREX W. HUNT**

1

ELECTRONICALLY RECEIVED
Superior Court of California,
County of Orange

02/08/2013 at 01:39:55 PM

Clerk of the Superior Court
By Amy Van Arkel, Deputy Clerk

*FILED*

*FEB 1 3 2013*

1    DAVID EUGENE ROZIER, SR.
     DAVID BEAR IRREVOCABLE LIVING TRUST
2    7957 DAHLIA CIRCLE
     BUENA PARK, CA 90620
3    (410) 458-3772
     *Propria Persona*

4

5            IN THE SUPERIOR COURT OF CALIFORNIA

6                 ORANGE COUNTY

7

8    David Eugene Rozier, Sr., as Trustee for the
     DAVID BEAR IRREVOCABLE LIVING TRUST       Case No. 30-2012 00619543

                  Plaintiffs,      **ORDER GRANTING TEMPORARY**
9                                 **RESTRAINING ORDER**
   vs.

10   U.S. BANK NATIONAL ASSOCIATION, As
     Trustee, As Successor in Interest to BANK OF
11   AMERICA, NATIONAL ASSOCIATION, As
     Trustee, Successor by Merger to LASALLE
     BANK NATIONAL ASSOCIATION; As Trustee
12   RAMP 2007RP1; BANK OF AMERICA,
     NATIONAL ASSOCIATION, As Trustee,
13   Successor by Merger to LASALLE BANK
     NATIONAL ASSOCIATION; As Trustee RAMP
14   2007RP1; LASALLE BANK NATIONAL
     ASSOCIATION; As Trustee RAMP 2007RP1;
15   WMC MORTGAGE COMPANY;PROSPER
     MARKETPLACE, INC.;WACHOVIA DEALER
     SERVICES;JOHN DOES 1-30.
16

                    Defendants.
17

18

19

20                           ORDER- 1

1      Plaintiff sought an ex parte temporary restraining order to enjoin the foreclosure

2   sale of its property. Plaintiff alleges the house was scheduled for a foreclosure sale on

3   February 6, 2013, twenty-four (24) hours after postponement of a foreclosure sale from

    February 5, 2013. Amongst other arguments, Plaintiff alleges defendants failed to

4   record all assignments of the trust, forged and falsified assignments of the trust and

5   substitution of the trustee, securitized any and all notes securing any interest in the

    Deed. Plaintiff also alleges that defendant U.S. Bank National Association As Trustee, As

6   Successor in Interest to BANK OF AMERICA, NATIONAL ASSOCIATION, As Trustee,

7   Successor by Merger to LASALLE BANK NATIONAL ASSOCIATION; As Trustee RAMP

    2007RP1 has not complied with the legal requirements for a valid non-judicial

8   foreclosure and violated a federal bankruptcy stay in order to record their interest in

9   the Deed in the county land records prior to initiating the foreclosure proceedings

10  Defendant U.S. Bank opposed the Plaintiff's motion. However, Defendant U.S. Bank

11  wanted the court to believe that it did not receive notice of the Ex Parte hearing. The

12  court does not accept that argument as the Ex Parte hearing was held at 8:00 AM in a

    courtroom where neither party has previously appeared yet U.S. Bank was represented

13  by counsel. Defendant U.S. Bank, through its counsel, admitted to being in court on

14  Monday and Tuesday with the same Plaintiff, yet claimed it did not know the new sale

15  date when asked something the court also has difficulty accepting given the urgency of

    the hearing. Therefore, the court must rely on Plaintiff's assertion that the sale was

16  scheduled for later that same day.

17  Defendant U.S. Bank requested that the court order the Plaintiff to issue a bond but

18  failed to provide any evidence that it was in a position to make such a request. This

19

20                              ORDER- 2

1    ~~court finds it particularly troubling that U.S. Bank has failed to correct the property~~

2    ~~description of the subject property given the clear records from the Orange County Tax~~
     ~~Assessor.~~

3    *After weighing the relevant factors, the court ordered that*
     ~~Because of the alleged imminent foreclosure sale, and because likelihood of success on~~

4    ~~the merits of her claim that defendants did securitize, assign, or sell or transferred any~~

5    ~~and all debt, loan or promissory note,~~ Defendants, and their officers and agents, and

6    other persons in active concert or participation with defendants, who receive actual

     notice of this order, are restrained from conducting a foreclosure sale for the following

7    property: **7597 Dahlia Circle Buena Park, California 90620**, from this day until

8    Thursday, February 21, 2012, at 5:00 p.m. ~~Furthermore, finding good cause exists,~~

9    ~~this court expressively prohibits the conduct of the sale within the seven-day period~~

     ~~after the expiration or termination of this order.~~ *The court further directed plaintiffs*
10   *to prepare and submit an appropriate written TRO before the scheduled 2 o.o.t next*
     *on February 6, 2013*
     ~~A hearing will be held on whether to issue a preliminary injunction at 8:30 a.m. on~~

11   ~~February 21, 2013, in Department C24 of 700 Civic Center Drive in Santa Ana, CA.~~

12   *This case was transferred to Department C-24, with plaintiffs to seek and*
     ~~IT IS SO ORDERED.~~

13   *arrange a hearing there in order to obtain a preliminary injunction*
     ~~Plaintiff's allegations demonstrate a sufficient, I grant Plaintiff's request~~ for a

14   ~~temporary restraining order.~~

15

16   *February 13 2013*                                    Honorable Ronald Bauer

17

18

19

20                                           ORDER- 3

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved.

**RECORDING REQUESTED BY:**

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

**LSI TITLE COMPANY, INC.**

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600

9.00

2011000181719 08:00am 04/11/11

37 402 S15 1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

TS NO : GM-276944-C
LOAN NO : 0810021144

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# SUBSTITUTION OF TRUSTEE

WHEREAS, *KAREN M. ROZIER*, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY was the original Trustor, WESTWOOD ASSOCIATES, A CALIFORNIA CORPORATION was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WMC MORTGAGE CORP., A CORPORATION was the original Beneficiary under that certain Deed of Trust dated 12/23/2005 and recorded on 1/4/2006 as Instrument No. 2006000006922, in Book XX, Page XX of Official Records of Orange County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned ~~desires to~~ *Hereby* substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned ~~desires to~~ *Hereby* substitute Executive Trustee Services, LLC dba ETS Services, LLC, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated : April 4, 2011

Bank of America, National Association as successor by merger to LaSalle Bank National Association as Trustee RAMP 2007RP1 by Residential Funding Company, LLC fka Residential Funding Corporation, Attorney-in-Fact

*Tracie Schmidheiser*
Tracie Schmidheiser    Authorized Officer

State of **Pennsylvania** } ss.
County of **Montgomery**

On APR 0 4 2011, before me, **Nicole Shelton** Notary Public, personally appeared **Tracie Schmidheiser** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of **Pennsylvania** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature *Nicole Shelton* (Seal)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Nicole Shelton, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Aug. 11, 2014
Member, Pennsylvania Association of Notaries

Identifi    REDACTED   Doc Type:NOTEN

11432468                                                              11432468

11432468   with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to
pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security
Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Karen M Rozier_  12/23/05

- Borrower - KAREN M ROZIER - Date -

Pay to the order of
RESIDENTIAL FUNDING COMPANY, LLC
With___
Monic___ ___ sect.
WMAC Mortgage Corp.

F.  PAY TO THE ORDER OF
LaSalle Bank, N.A. as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC

By: _Judy Faber_
Judy Faber, Vice President

[Sign Original Only]

DOCUNSF4
WMCDNSF4.VTX 09/14/2005

Page 4 of 4

Exhibit 1

*WMC*  0011432468NSF00400420051223164910t

21 of 215                                                   VOLUME 2

[Space Below This Line For Acknowledgment]

State of _California_
County of _Orange County_
On this ~~Dec.~~ 23 day of _Dec._ 2005 , before me, _Adrian R. Barajas_ (Notary Public)
personally appeared
_Karen Michelle Rozier aka Karen M. Rozier_

~~personally known to me~~ (or proven to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is     subscribed to the within instrument and acknowledged to me that _she_ executed the same in
authorized capacity(ies) , and that by _her_    signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

ADRIAN R. BARAJAS
COMM. #1616541
Notary Public-California
LOS ANGELES COUNTY
My comm. Expires Oct. 28, 2009

Notary Public

My Commission Expires: _Oct. 28, 2009_

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01        (page 14 of 14 pages)
DOCUKCA14
DOCUKCAR.VTX  08/25/2005
*WMC*  0011432468KCA01401420051223164921q

This Document was electronically re-recorded by
PSI Title Company

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

Requested and Prepared by:
ETS Services, LLC

|||||||||||||||||||||||||| 9.00
2011000126176 01:46pm 03/09/11

When Recorded Mail To:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

93 401 A32 1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

TS No: GM-278944-C

110113731

### ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

Bank of America, National Association as successor by merger to LaSalle Bank National
Association as Trustee RAMP 2007RP1

all beneficial interest under that certain Deed of Trust dated: 12/23/2005 executed by *KAREN M.
ROZIER*, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor(s), to
WESTWOOD ASSOCIATES, A CALIFORNIA CORPORATION, as Trustee, and recorded as
Instrument No. 2006000006922, on 1/4/2006, in Book XX, Page XX of Official Records, in the
office of the County Recorder of Orange County, California together with the Promissory Note
secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

DATE: 3-3-2-4

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

_Maribel Telles    Assistant Secretary_

State of Texas        } SS.
County of Dallas      }

On 3/3/11 before me, Ginger Harrison Notary Public, personally
appeared Maribel Telles who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of Texas that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Ginger Ann H_ (Seal)

Ginger Leeann Harrison
Notary Public,
State of Texas
Comm. Exp. 08-04-13

Exhibit 3

VOLUME 2

Exhibit C

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖    9.00

**RECORDING REQUESTED BY**
**FIRST AMERICAN TITLE COMPANY**
**AS AN ACCOMMODATION ONLY**

2012000022516 04:07pm 01/13/12

93 401 A32 1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

RECORDING REQUESTED BY:
Bank of America, National Association as successor by
merger to LaSalle Bank National Association as Trustee
RAMP 2007RP1

PREPARED BY AND WHEN
RECORDED MAIL TO:
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
(858) 750-7700    6451314

Property Address: 7957 Dahlia Circle, Buena Park, California 90620

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to U.S. Bank National Association, as Trustee, as successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for RAAC 2007RP1 all beneficial interest under that certain Deed of Trust dated December 23, 2005, executed by Karen M. Rozier, a married woman as her sole and separate property, to Westwood Associates, a California Corporation as trustee, for Mortgage Electronic Registration Systems Inc. as nominee for WMC Mortgage Corp., its successors and/or assigns, as beneficiary, and recorded as Instrument No. 2006000006922 on January 4, 2006, in the State of California, Orange County Recorder's Office.

Dated:    01/04/12    **Bank of America, National Association as successor by merger to LaSalle Bank National Association as Trustee RAMP 2007RP1**

By: _Helen Tyson_
Name: **Helen Tyson**
Title: **Authorized Officer**

State of PENNSYLVANIA    )
County of MONTGOMERY    )
On  1-4-12  before me, _JOHN J. CASTAGNA_, a Notary Public, personally appeared **Helen Tyson**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _PA_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_John J. Castagna_
Notary Public    2.25.14

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
John J. Castagna, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Feb. 25, 2014
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

(This Area for Official Notary Seal)

000001-017983.001-P
**Exhibit 3**

# EXHIBIT 2

~~ORIGINAL~~

1    UNITED STATES BANKRUPTCY COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    --oOo--

4  In Re:                         ) Case No. SA11-21727-CB
                                  )
5  KAREN MICHELE ROZIER,          ) Santa Ana, California
                                  ) Tuesday, July 10, 2012
6         Debtor.                 ) 10:30 a.m.
                                  )
7  _____
                                  NOTICE OF MOTION AND MOTION
8                                 FOR RELIEF FROM THE AUTOMATIC
                                  STAY WITH SUPPORTING
9                                 DECLARATIONS REAL PROPERTY RE:
                                  7957 DAHLIA CIRCLE, BUENA
10                                PARK, CALIFORNIA 90620

11

12             TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE CATHERINE BAUER
13           UNITED STATES BANKRUPTCY JUDGE

14 APPEARANCES:

15 For the Debtor:              ROBERT CHEN, ESQ.
                                1605 West Olympic Boulevard
16                              Suite 1008
                                Los Angeles, California 90015
17                              (213) 925-4105

18 For U.S. Bank National       JOSEPH DELMOTTE, ESQ.
     Association:               Pite Duncan, LLP
19                              4375 Jutland Drive, Suite 200
                                San Diego, California 92177
20

21 Court Recorder:             Denise Bustillos
                                United States Bankruptcy Court
22                              411 West Fourth Street
                                Suite 2030
23                              Santa Ana, California 92701

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

*Briggs Reporting Company, Inc.*

ii

1 Transcriber:                          Briggs Reporting Company, Inc.
                                        6336 Greenwich Drive, Suite B
2                                       San Diego, California 92122
                                        (310) 410-4151
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

<u>SANTA ANA, CALIFORNIA   TUESDAY, JULY 10, 2012   10:30 AM</u>

--oOo--

(Call to order of the Court.)

THE COURT:  We're on the 10:30 calendar.  We have request for priority on number 40.70, Karen Rozier.  This is a relief from stay on real property in Buena Park.  Moving party is U.S. Bank.

THE CLERK:  Your Honor, I think they just stepped out for a minute.

MR. DELMOTTE (Telephonic):  Your Honor, Joseph Delmotte for the moving party.

THE COURT:  All right.  Somebody is coming back in.  Are you my priority?

MR. CHEN:  Yes.

THE COURT:  All right.  Go ahead.

MR. CHEN:  Robert Chen appearing from the law offices of Brian Seahooth (phonetic) for the Debtor.

THE COURT:  I didn't see any kind of opposition.

MR. CHEN:  I see on the docket there was -- I have an opposition.  The opposition was filed on July 5th.  It's docket number 45.  It's pretty extensive.

THE COURT:  Mr. Delmotte, did you have an opportunity to look at the opposition?

MR. DELMOTTE:  I did not, your Honor.

MR. CHEN:  Your Honor, the Debtor is present also.

2

1          THE COURT:  Hello.  If you can tell me your name

2 for the record.

3          MS. ROZIER:  Karen Rozier, Karen Michele Rozier.

4          MR. CHEN:  The Debtor has a conformed copy of it.

5          THE COURT:  I have it right here.  Mr. Delmotte,

6 are you able to pull that up on ECF?

7          MR. DELMOTTE:  What docket number is that in

8 Pacer?

9          MR. CHEN:  Forty-five.

10          THE COURT:  Forty-five.  So, the Debtor says

11 there's no debt on this property?

12          MR. CHEN:  The Debtor is saying it's unclear who's

13 holding the note.  The Debtor is also saying that it's

14 possible that there is equity in the property because the

15 property was demolished in 1999 and rebuilt.  So, it's

16 actually doubled in size.  It's three floors.  I think it's

17 4,000 square feet instead of 2,000 square feet.

18          MS. ROZIER:  4,200 square feet.

19          THE COURT:  Who's paying the property taxes?

20          MS. ROZIER:  I'm working with the property tax

21 authority right now, and we're still trying to figure out

22 what the right square footage is.  So, I just started working

23 with them this week.  I'm not sure.  They said the property

24 taxes were actually based on the wrong value.  So, I started

25 working with them this week to get that all resolved.

3

1          THE COURT:  When was the last time you made a

2 payment?

3          MS. ROZIER:  I made a payment, I believe, in

4 February, and then they sent it back claiming they had

5 foreclosed on the wrong note and that's what started the

6 entire issue is because I was making payments and they sent

7 the payments back.  That was in March 2008 I believe when

8 they sent my payments back.

9          MR. DELMOTTE:  When did you say the property was

10 demolished and reconstructed?

11          MS. ROZIER:  July 1999 the property was

12 demolished, and the permits were pulled in 2000.  They were

13 signed off with the tax authority in 2005.  At the time when

14 I made this loan, the property was over 4,200 square feet,

15 and that's reflected in the appraisal at the time.

16          THE COURT:  Okay.  So, you took out the loan when?

17          MS. ROZIER:  June of 2006.

18          MR. DELMOTTE:  The reason I ask is because the

19 broker's price opinion we attached in support of our fair

20 market value was obtained in 2012.  So, it would have

21 reflected the current status of the property, and it shows a

22 fair market value of $375,000 which reflects the property

23 being about $200,000 under water.  That's in addition to the

24 54 delinquent payments on the property.  Regarding the

25 standing, we attached an assignment of deed of trust in

4

1 support of our motion.

2          THE COURT:  Fifty-four payments not been paid.

3          MS. ROZIER:  You realize that I've been suing them

4 since October --

5          THE COURT:  Okay.  So, you know how to go to state

6 court?

7          MS. ROZIER:  Well, it's in state court.  State

8 court and they asked the judge to set aside -- we went for a

9 TRO in September.  There was a quiet title, and the judge at

10 that time, and Bank of America was there at the hearing, said

11 well, we're going to put this on hold until the bankruptcy

12 because there was a stay regarding the bankruptcy.  And we

13 all agreed that they wouldn't move on the property until the

14 bankruptcy was resolved and that the superior court case

15 would be pending.

16          THE COURT:  Okay.  I'm going to grant relief from

17 stay.  You can go back to state court and deal with it.

18 These are state court issues.  They're not bankruptcy issues.

19 Ma'am, I'm going to grant relief from stay.  You're going to

20 need to go back to state court on these issues.  These are

21 not bankruptcy issues.  They're state court issues.

22          MR. CHEN:  Your Honor, will you please not waive

23 the 14 days?

24          THE COURT:  No, I'm waiving the 14 day stay.  This

25 woman hasn't paid in years.  You can go back to state court.

5

1 You know apparently how to get a TRO in state court, and you

2 can deal with it there.  No, I'm going to waive it

3          MS. ROZIER:  Even though there's equity in the

4 property?

5          THE COURT:  Yeah, you haven't paid.  That's cause

6 right there.  You haven't paid in 54 months.  That's cause.

7          MS. ROZIER:  If they were the lender -- also if

8 they don't have --

9          THE COURT:  Then you go to state court ma'am.

10 That's where you go.  You know how to do state court.

11          MS. ROZIER:  Can I withdraw my Chapter '

12 bankruptcy petition because I did not file a Chapter 7.  I

13 filed a 13.

14          THE COURT:  You filed a 13.  You converted to a 7.

15 I see.

16          MS. ROZIER:  I was converted to a 7.  I asked to

17 be converted to an 11.

18          THE COURT:  You need to go to state court and

19 resolve these issues.  I'm not going to resolve them here.

20 They're state court issues.

21          MR. CHEN:  Thank you, your Honor.

22          THE COURT:  Thank you.  I'm going to go back to

23 the beginning of the calendar.

24          MR. DELMOTTE:  Thank you, your Honor.

25          THE COURT:  Thank you.

6

1    (Proceedings concluded.)

2

3        I certify that the foregoing is a correct

4 transcript from the electronic sound recording of the

5 proceedings in the above-entitled matter.

6

7    _Holly Martens_____        _8-3-12_____
  **Transcriber**                     **Date**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT <u>3</u>

GALLATIN COUNTY CLERK
OF DISTRICT COURT
JENNIFER BRANDON

2014 APR 14 AM 9 50

FILED

BY _____

## MONTANA EIGHTEENTH JUDICIAL DISTRICT COURT
## GALLATIN COUNTY

| | |
|---|---|
| MARY McCULLEY,<br>　　　　　　　Plaintiff,<br>-vs-<br><br>US BANK OF MONTANA,<br>　　　　　　　Defendant. | ) Cause No. DV 09-562C<br>) Hon. John Brown<br>)<br>) **FINDINGS OF FACT, CONCLUSIONS OF**<br>) **LAW AND ORDER RE:  PUNITIVE**<br>) **DAMAGES**<br>) |

### INTRODUCTION

On February 7, 2014, the jury returned compensatory and punitive damage verdicts against Defendant US Bank ("US Bank" or "Bank"). The jury awarded damages for fraud and constructive fraud against US Bank in the amount of $1,000,000.00.  The jury also found that punitive damages should be assessed against US Bank.  In the second phase, the jury returned a verdict imposing punitive damages against US Bank in the amount of $5,000,000.

This matter now comes before the Court pursuant to § 27-1-221(7)(c), MCA, for review of the jury's punitive damage award.  US Bank filed its Motion to Reduce Punitive Damages Award on February 24, 2014, along with a supporting brief.  The parties have fully briefed the motion, as well as filed proposed findings of fact and conclusions of law.  This Court declines to grant US Bank's request for a hearing, as a hearing is unnecessary.  Having considered the

evidence presented at trial and the argument presented by the parties, this Court now makes the following:

## FINDINGS OF FACT

1.      In May of 2006, Mary McCulley ("McCulley") agreed to purchase a condominium on East Main Street in downtown Bozeman, Montana ("East Main Street condo"). The East Main Street condo was located on the top floor of a commercial building and was priced at $395,000. On May 25, 2006, the Buy-Sell Agreement was faxed to the Bank and it showed that the financing had to be approved by McCulley. Ex. 71.

2.      On May 25, 2006, McCulley called Heritage Bank (later purchased by US Bank) from Florida, and Bank General Manager Jeff Mortenson took her 30-year (360 months) residential loan application for $300,000 over the phone, application #0632146.  Apparently, the Bank later revised the 5/25/2006 loan application to $200,000.  Ex. 2.

3.      On May 26, 2006 – the following day – the Bank General Manager, Jeff Mortensen, prepared an internal credit memo and sent it by e-mail to the Bank Senior Vice-President Steve Feurt.    The internal credit memo favorably analyzed McCulley's credit worthiness for a $300,000 loan, but noted that while the East Main Street condo was "residential," the lot upon which it was built was zoned "commercial B-2." The Bank stated that such commercial zoning precluded the use of "standard secondary market sources for financing a residential condominium."   Ex. 73.  At trial, the Bank provided no evidence that the internal credit memo was provided to McCulley or that it was a term sheet. The Bank only testified that it was prepared for the Bank file.

4.      When Feurt received the internal credit memo, he responded via e-mail:

2

"It might be the only business we get from her," and that, "with the risk, might as
well make it worth our while."

Ex. 73 (emphasis added).

5.     The Bank categorized the proposed loan as an 18-month "consumer bridge" loan
because it could not sell the loan on the secondary market. Feurt's e-mail response evidences
that the Bank was more concerned with its own business than with McCulley's interests.
Without discussing it with McCulley, the Bank changed the terms of the loan to an 18-month
commercial interest-only demand note.

6.     Also, in the May 26, 2006 internal credit memo, the Bank identified the "primary
source" of repayment of the loan as a conversion of the loan to an in-house term loan upon the
sale of a separate residential condominium owned by McCulley and located in Bozeman,
referred to as the "Trakker Condo." Ex. 73.

7.     Truth-in-Lending ("TIL") is a regulation that requires mortgage lenders to provide
accurate information about the terms and conditions of a requested loan. The purpose of the TIL
Disclosure is to allow borrowers to make informed choices when borrowing money. The Bank
knew of the Truth-In-Lending regulations and understood that they needed to be accurate and
had to be done within three (3) days of a loan application and sent to the borrower.

8.     On May 30, 2006, the Bank sent McCulley the required statutory "Truth-In-
Lending" disclosure statement for application #0632146. It was dated May 25, 2006 and
provided the estimated monthly payment for the first 60 months, the estimated monthly payment
for the next 299 months, and that the final payment was due on July 1, 2036 – a total of 360
months. The only Truth-in-Lending disclosure dated May 25, 2006 was the one e-mailed on
May 30, 2006 with specific reference to application #0632146. Ex. 74. The Bank also generated

3

a Good Faith Estimate that expressly referenced 360 payments for McCulley's proposed loan specific to application #0632146. Ex. 75.

9.    At trial, the Bank attempted to say that what was sent on May 30, 2006 was not a 360-month disclosure, but rather a disclosure of an 18-month loan. Despite this, there was clear and convincing evidence that the May 25, 2006 disclosures sent on May 30, 2006 were for 360 months. The Bank assigned the loan application #50601131 to the 18-month loan. Further, the Bank did not save the 360-month disclosures in its original Bank file, although it was its practice to do so, and there was evidence that the disclosures were in the US Bank file on October 23, 2007. Ex. 91.

10.    Exhibit 91 was admitted into evidence. It is a US Bank fax dated October 23, 2007. On page 3 of Exhibit 91 there were two entries: one for "servicing Truth Disclosure" and one for "Good Faith Estimate." Each state that copies should be retained in the file. The date stated for the TIL disclosures is May 25, 2006. Exhibit 91. The only disclosures dated May 25, 2006 were the $200,000 360-month disclosures in Exhibits 74 and 75.

11.    During October 2007, McCulley attempted to find out why she had an 18-month loan, not a 30-year loan. At that time, the evidence established that the May 25, 2006 disclosures were in the Bank file. Yet, the Bank did not produce the disclosures in discovery, even though they were specifically referenced in US Bank's file on October 23, 2007.

12.    When McCulley received the initial May 25, 2006 Truth-in-Lending statement on May 30, 2006, the loan was for $200,000, so she called the Bank to discuss that issue. The Bank asked if she would put up another property she owned, the Trakker Condo, which had no debt, as additional collateral to get a $300,000 loan. The Bank explained it could just be added as

4

collateral and if she eventually sold it, she could pay down the debt by $100,000. McCulley
agreed and pledged her Trakker Condo as additional collateral on the loan.

13.    The initial handwritten Uniform Loan Application, taken over the telephone by
Mortensen, was for $300,000 which was crossed out and $200,000 written over it. Ex. 2. The
Bank never provided a written document explaining that the loan terms would be changed to 18
months. McCulley proceeded with the understanding that her home loan would be the 30-year
loan she had applied for on May 25, 2006 as reflected on the May 25, 2006 TIL Disclosure and
Good Faith Estimate.

14.    At all times, McCulley believed she was getting the 360 month loan – the loan she
applied for on May 25, 2006.

15.    McCulley testified, without contradiction, that after her discussion in which she
agreed to give the Trakker Condo as additional security, no further discussions occurred with the
Bank. She testified, without contradiction, that at no time did the Bank tell her the loan would be
for 18 months. McCulley testified, without contradiction, that the Bank did not inform her that
long-term financing was unavailable due to the "non-conforming" use of the building.

16.    A second set of TIL disclosures were provided at closing on June 16, 2006.  They
were in a stack of documents bound by a metallic clip, with directions to sign where the "sign
here" stickies were on the documents.

17.    The Bank knows that predatory lending is defined as giving people loans they
cannot pay back. Predatory lending is taking unfair advantage of somebody. The Bank testified
that it knew McCulley could not pay back a $300,000 loan in 18 months.

5

18.    Included in the Bank documents at closing were <u>three</u> additional, different loan applications disclosing three different and inconsistent loans to McCulley.  Ex. 3, 79, 80. Including the original loan May 25, 2006 application, there were four different and inconsistent loan applications as follows:

| | |
|---|---|
| May 25, 2006 - | Original loan amount of $300,000 (later revised to $200,000); term 360 months; rate N/A. |
| June 16, 2006 - | Loan amount $300,000; term 18 months; rate 8.75% (signed at closing) |
| June 16, 2006 - | Loan amount $200,000; term 12 months; rate 8.75% (signed at closing) |
| June 16, 2006 - | Loan amount $200,000; term 360 months; rate 7.75% (signed at closing) |

19.    On June 16, 2006, the loan closed.  The Bank indicated that it is <u>not</u> Bank procedure to have a borrower sign three different and inconsistent loan applications on the day of closing: "That would be misleading to the borrower because they are not the terms of the final loan."  Yet, that is exactly what occurred at McCulley's closing, during which the Bank required McCulley to sign three different and inconsistent loan applications.

20.    The Bank also provided a disclosure at closing on June 16, 2006 for McCulley to sign captioned: **"NON ASSUMABLE FIXED RATE LOAN DISCLOSURE."**  The disclosure described the term of McCulley's loan as 360 months and the interest rate of 7.75%.  Ex. 8. Mortensen admitted the Non-Assumable Fixed Rate Disclosure was a disclosure signed by McCulley at closing at the Bank's request.

21.    The 360-month disclosures were false representations of the terms of the loan that the Bank funded to McCulley, without disclosure to her, and is a bait-and-switch from 360

6

months at 7.75% to 18 months at 8.75%. The Bank's bait-and-switch was to the substantial and continuing financial detriment of McCulley.

22.    The Bank knows that a customer relies on what the Bank tells them. Here, the Bank knew that McCulley trusted the Bank's representations and that she trusted the Bank. McCulley was a relatively unsophisticated buyer and was vulnerable to the Bank's predatory practices.

23.    McCulley signed the documents the Bank put in front of her. She did not read them all, nor did she read all the small print because she trusted the Bank. The Bank claims the Promissory Note, which specifies an 18-month loan, controls and McCulley is bound to it.

24.    At closing, McCulley signed all documents in reliance on the terms and conditions contained in the initial May 25, 2006 Good Faith Estimate and the Truth-in-Lending disclosure statements the Bank provided on May 30, 2006 whereby it represented that the loan was for a term of 30 years.

25.    Customary banking practice is for a lender to provide a Loan Commitment Letter that indicates the buyer's home loan has been approved. The Bank failed to provide McCulley with a Loan Commitment Letter. Ex. 86. The Bank's land loan audit sheet is a checklist and the second line on that document is as follows: **"Loan Commitment Letter to Borrower."** Contrary to the other items on the checklist, this line item was <u>not</u> checked; the Bank failed to have that document in its file after the loan was closed and funded. The Bank failed to provide McCulley with a term sheet or any type of written commitment letter that contained the substantially changed terms and conditions before the closing of the loan.

7

26.    The Bank knew McCulley could not pay back a $300,000 loan in 18 months, and that she would find refinancing at the end "very difficult." Ex. 26, at p. M000103.

27.    At the time the Bank approved the loan, it knew that the East Main Street Condo was a mixed use building so the mortgage loan would not meet the underwriting standards of the secondary market into which such loans are sold. The consequence of this, which was known to the Bank, was that McCulley would be unlikely to obtain long-term financing. The Bank failed to disclose this fact to McCulley, either verbally or in writing.

28.    The Bank acted with indifference to McCulley by altering the terms of the loan, reducing the payoff period from 360 months to 18 months, with the knowledge that McCulley would find refinancing in 18 months "very difficult."

29.    McCulley made monthly payments to the Bank throughout 2006 and 2007 and thought she was making normal mortgage payments. The Bank claims she was making the required monthly interest payments.

30.    In 2007, the Bank sent McCulley notice that a balloon payment on her 18-month loan was due in December 2007. Only then did McCulley discover that she did not have the 30-year residential mortgage for which she had applied.

31.    Previously, the Bank required that it take a first lien on McCulley's Trakker Condo. In a Bank comment sheet, Ex. 18, and in communications to McCulley in 2007, the Bank agreed to release the lien on the Trakker Condo after McCulley made a principal reduction in the amount of $100,000 and that it was the Bank's intent to convert the loan to a term loan at that point. Yet, when McCulley offered to pay $100,000, the Bank gave McCulley written

8

notice in October of 2007 that it would instead require a principal reduction of $200,000, not the
$100,000 previously stated to convert to a term loan. Ex. 26, at p. M000099.

32.    Because she was not able to find suitable long-term residential financing, the loan
went into foreclosure. McCulley sold the East Main Street condo to a buyer one week before the
foreclosure sale.

33.    Based on the Bank's actions in structuring loan terms that were different from
what McCulley requested, McCulley was forced to sell her home, the East Main Street condo,
at a substantial loss. Because the Bank substantially changed the loan terms, failed to inform
McCulley of those changes, failed to disclose that McCulley would not be able to refinance in 18
months, and doubled the amount required to convert the loan to a term loan, McCulley incurred
substantial and continuing tangible and intangible damages.

34.    McCulley tried to convince the Bank to restructure the loan with a long-term
payoff. The Bank's refusal and ultimate foreclosure created a great deal of emotional distress for
McCulley. She was embarrassed and became depressed and reclusive. Before this happened,
McCulley was a healthy person, physically and mentally. She was an accomplished
photographer, an avid fisherwoman, and loved the outdoors. The Bank's conduct against her
caused her to suffer depression, isolation and a near-successful suicide. Ex. 97.

35.    During the course of the litigation, the Bank filed an affidavit and made
statements that were unsupported by the Bank's file. Ex. 46. Exhibit 46 was the May 25, 2011
Affidavit of US Bank Senior Vice-President Steve Feurt which had been filed with this Court in
2011. In his affidavit, Feurt attested that he acquired personal knowledge of the matters by
examining the business records. *Id.*, ¶ 3. Feurt stated the Bank provided notification of the

9

terms of McCulley's loan in a term sheet. *Id.*, ¶ 3.a. Feurt claimed the terms were never changed or altered. *Id.*, ¶ 3.k. He further attested that the Bank never promised McCulley, verbally or in writing, that she would be given a thirty (30) year mortgage. *Id.*, ¶ 3.m.

36.    Exhibit 98 - which the Bank represented as the original Bank file - establishes that Feurt misled the Court and McCulley in 2011. Exhibit 98 and witness testimony established that there was no term sheet. Exhibit 98 included a Bank Construction Loan Closing Checklist, and a loan commitment letter to borrower was not checked. Ex. 98, p. 0004. Exhibit 98 contains a Land Loan Audit Sheet and there was no loan commitment letter to borrower. Exhibit 98, p. 194. The Bank misrepresented to this Court that it had never provided McCulley a 30-year mortgage. This is evidenced by the fact that there were documents showing disclosures for a 30-year mortgage in the Bank's own file. Exhibit 98 has a new loan flow for $300,000 360-month loan. Ex. 98, p. 194. Exhibit 98, p. 26-29 has a Residential Loan Application for $300,000 for Loan # 0632146. Exhibit 98, p. 34-37 has a $200,000 360-month loan application. Exhibit 98 has a Fixed Rate loan disclosure for 360 months. Ex. 98, p. 112. In the Bank file, there is a New Loan Flow dated June 27, 2006 which has the loan amount of $300,000 and the loan term 360 months. Ex. 98, pp. 187-188. These documents establish that Feurt misled the Court to McCulley's detriment in 2011.

37.    In 2011, the Bank represented that the credit memo created for the file was a "letter" to McCulley, but there was no evidence of that at trial. The only evidence was that it was a Bank file credit memo, not a letter. The Bank made these false statements to the Court in 2011, and the Court relied on the false statements in its summary judgment order. When McCulley heard the Bank's misstatements, she lost all hope and attempted suicide in July 2011.

10

38.     Throughout the trial, this Court paid careful attention to the testimony of witnesses and the numerous exhibits upon which the parties relied. The Court also had the opportunity to observe the witnesses on direct and cross-examination and paid careful attention to the demeanor of each witness, as well as their reactions to the questions of counsel and the exhibits used in evidence. These Findings of Fact are based on the substance of the witnesses' testimony and the numerous exhibits in the original bank file that make up the record.

39.     Based upon the foregoing Findings, McCulley proved the Bank's actual fraud by clear and convincing evidence.

40.     Any factual findings contained in the following Conclusions of Law are incorporated by reference herein.

## CONCLUSIONS OF LAW

1.      Any conclusions of law stated in the above Findings of Fact are incorporated by reference herein.

2.      Pursuant to § 27-1-221(7)(c), MCA, this Court must review the jury's award of punitive damages considering the factors set forth in § 27-1-221(7)(b), MCA. Upon review, the Court may increase, decrease, or affirm the punitive damages award and must make findings of fact and conclusions of law stating the reasons for either affirming, decreasing, or increasing the jury award. § 27-1-221(7)(c), MCA; *Seltzer v. Morton*, 2007 MT 62, ¶ 165, 336 Mont. 225, 154 P.3d 561; *Marie Deonier & Assocs. v. Paul Revere Life Ins. Co.*, 2004 MT 297, ¶ 42, 323 Mont. 387, 101 P.3d 742 (*Deonier II*).

3.      The Court has broad discretion in deciding whether to increase, decrease, or affirm the jury's punitive damage verdict. *Cartwright v. Equitable Life Assurance Society*, 276

11

Mont. 1, 37, 914 P.2d 976, 997 (1996). Still, the trial court must give deference to the jury's findings of fact. While the trial court can and must exercise its own judgment with respect to the statutory criteria, its determination cannot be based on findings of fact that are inconsistent with findings that are implicit in the jury's verdict. *Debruycker v. Guarantee National Ins. Co.*, 266 Mont. 294, 300, 880 P.2d 819, 822 (1994); *Deonier II.*

4.      All elements of a claim for punitive damages must be proven by clear and convincing evidence. This is defined as "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." § 27-1-221(5), MCA. Clear and convincing evidence is "more than a preponderance of evidence but less than beyond a reasonable doubt." *Id.*

**§ 27-1-221(7)(b)(I) - Nature and Reprehensibility of Defendants' Conduct.**

5.      The first factor to apply is the "nature and reprehensibility of the defendant's wrongdoing." § 27-1-221(7)(b)(i), MCA. To determine reprehensibility, the trial court must consider whether: (a) the harm was physical rather than economic, (b) the conduct evinced indifference for the health and safety of others, (c) the victim is financially vulnerable, (d) the defendant is a repeat or first time offender, and (e) any intentional deceit or trickery that may exist. *Seltzer*, ¶ 167 (citing *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U. S. 408, 419, 123 S. Ct. 1513, 1521 (2003)).

6.      "Truth-in-Lending" is a regulation requiring mortgage lenders to provide accurate information about the terms and conditions of a requested loan. The Bank officers in this case were aware of the TIL regulations and understood that TIL disclosures were to be done within three (3) days of a loan application and sent to the borrower.

12

7.      The Bank sent out the May 25, 2006 TIL Disclosures to McCulley for a 360-month loan on May 30, 2006, after the Bank had already decided on an 18-month loan.    Those documents were missing from the Bank file, although there was clear and convincing evidence that they were e-mailed to McCulley on May 30, 2006.    There was also clear and convincing evidence those documents were to be retained in the file as shown in US Bank's Exhibit 91. Exhibit 91 also establishes that US Bank had the May 25, 2006 disclosures as of October 23, 2007, but the same were missing from the original Bank file formally produced to McCulley on January 26, 2014 - a week before trial.    When, as here, there is concealment of evidence of improper motive, the Court will consider this in assessing reprehensibility of the Bank's conduct. *Seltzer,* ¶ 171 (citing *BMW of North America v. Gore,* 517 U.S. 559, 579 (1996).

8.      Further, US Bank "blatantly misrepresented an important fact" in one of its briefs filed with this Court.    *Seltzer,* ¶ 174, n. 26.    In 2011, Feurt attested that the Bank provided McCulley with a term sheet for an 18-month loan.    In its summary judgment reply brief filed on or about May 27, 2011, US Bank represented that Ex. 73 was a letter sent to McCulley.    Relying upon Feurt's Affidavit, this Court granted summary judgment, in part, to the Bank on its fraud claim.    McCulley appealed to the Montana Supreme Court, which reversed on this issue. Subsequently, there was no evidence at trial that the Bank provided McCulley with a term sheet for an 18-month loan.    Instead, the evidence at trial revealed that Ex. 73 was an internal credit memo to the Bank file which was attached to an e-mail from Mortensen to Feurt.    The Bank never sent this memo to McCulley.    This egregious behavior by the Bank constitutes intentional deceit and supports the conclusion that the Bank's conduct was reprehensible:

> Abusive conduct toward an individual which causes the type of harm at issue here merits considerable punishment regardless of the setting in which it takes place.

However, the fact that [the Bank] utilized the judicial system as a tool to accomplish intimidation and oppression makes this behavior uniquely egregious."

*Id.*, ¶ 175.

9.    Contrary to the Bank's misrepresentation, described above, the second set of TIL disclosures identifying an 18-month loan were not provided until closing, along with many other documents.

10.    Contrary to the Bank's standard procedure, the Bank had McCulley sign three different and inconsistent loan applications on the day of closing. The Bank knew this would be misleading to the borrower because such abnormal practice did not inform the buyer of the terms of the final loan. Yet, this occurred at McCulley's closing. In all, the Bank file contained four different signed loan applications:

> May 25, 2006 - Original loan amount of $300,000; term 360 months; rate N/A
> June 16, 2006 - Loan amount $300,000; term 18 months; rate 8.75%
> June 16, 2006 - Loan amount $200,000; term 12 months; rate 8.75%
> June 16, 2006 - Loan amount $200,000; term 360 months; rate 7.75%

11.    The Bank knew that its customer - here, McCulley - relied on what the Bank told her.

12.    The Bank testified that it knew McCulley could not pay back a $300,000 loan in 18 months. The Bank's loan to McCulley was predatory. As such, the Bank engaged in predatory lending.

13.    Notably, Feurt's e-mail with respect to approving loan terms for McCulley, in which he stated, "Might be the only business we get from her" and, "With the risk, may as well make it worth our while" was never relayed to McCulley. Nor did the Bank ever provide any writing in which it explained the changed loan terms to McCulley.

14

14.     The Bank knew that McCulley trusted the Bank and its representations. It is the Bank's practice at closing to provide documents in loose form. That was not done in this case. At closing, the documents were presented to McCulley clamped at the top in a booklet, such that she was just asked to sign all of the tabbed pages. McCulley thought she was signing for a 30-year mortgage.

15.     McCulley was never provided with a complete set of the closing documents.

16.     The Bank contended that if McCulley would pay down the Note by $100,000, it would convert it to a term loan. Its policy is to explain that to McCulley before she signed any documents, but here, the Bank never explained this at closing. At all relevant times, McCulley thought she was obtaining the 30-year mortgage for which she had originally applied. Instead, the Bank kept important information from McCulley. For instance, the Bank did not disclose that the term of the loan was only 18 months, nor did it disclose that the loan refinancing would be "very difficult."

17.     Additionally, the Bank informed McCulley, shortly after she learned the loan had an 18-month term, that if she made a $100,000 principal reduction, it would convert the loan to a term loan. But as soon as McCulley offered to pay $100,000, the Bank immediately increased the required payment to $200,000. Based upon the facts in evidence, this conduct is further proof of intentional deceit or trickery by the Bank. *See Seltzer,* ¶ 167.

18.     The Bank was well collateralized at all times. At the time the Bank decided on an 18-month term, the loan-to-value ratio was 41%; before closing, the Bank increased the value of the Trakker Condo reducing the loan-to-value ratio to 36%. In its foreclosure analysis, the Bank calculated that it stood to recover a net gain of $346,800 on a foreclosure.

19.    The Bank knew that McCulley's income was low relative to the amount of the loan.

20.    Based upon the foregoing, this Court concludes that the foregoing actions of the Bank toward McCulley are reprehensible and weighs in favor of the jury's punitive damages award.

## § 27-1-221(7)(b)(ii) - Extent of the Defendant's Wrongdoing.

21.    Considering that McCulley was losing her home and that the Bank refused to correct the situation as it stated was its intent, US Bank acted in conscious or intentional disregard or indifference to the high probability of causing McCully to suffer financial damage and emotional distress. The Bank knew that McCulley trusted it, yet the Bank never provided any document that showed it was changing the term from 360 months to 18 months even though it misrepresented that fact to the Court in 2011.    That misrepresentation was wrong. Consequently, and unable to afford legal counsel, McCulley had file a *pro se* appeal.    The Montana Supreme Court reversed, and the jury trial established the Bank's wrongdoing.

22.    US Bank suppressed information that McCulley would be able to refinance only with "great difficulty." Further, the Bank had stated it intended to give McCulley a term loan if she paid $100,000. Yet, when she made that offer, the Bank required $200,000 and provided no reason or evidence for its decision. McCulley repeatedly requested the Bank work with her, and the Bank denied her requests and changed the rules.    McCulley was financially vulnerable and ended up losing her home as a result of the Bank's misconduct.

16

23.    The Bank's failure to honor its original intent promised to its client and then to further require $200,000 to convert to a term loan is evidence of the Bank's wrongdoing and weighs in favor of the jury's punitive damages award.

## § 27-1-221(7)(b)(iii) - Intent of the Defendant in Committing the Wrong.

24.    The jury found that the Bank had committed actual fraud. Fraudulent intent can be proven by circumstantial evidence. The jury determined that McCulley could not be held to the promissory note because the Bank was fraudulent and deceptive in obtaining her signature.

The Bank's fraud was three-fold:

(i)    Misrepresenting the terms of the loan;

(ii)    Suppressing the fact that refinancing at the maturity of the loan would be "very difficult," and

(iii)    arbitrarily and substantially increasing the amount of the principal reduction required for the Bank to convert the loan to a term loan.

25.    The Bank was well collateralized. The intent apparent from the Bank's internal communications and from the circumstantial evidence was to make the loan profitable and safe for the Bank without regard to the injury to McCulley. The Bank's profit motive trumped any concern it had for McCulley, which establishes intent that is consistent with the award of punitive damages in this case.

## § 27-1-221(7)(b)(iv) - Profitability of the Defendants' Wrongdoing.

26.    The fourth factor under § 27-1-221(7)(b) is the "profitability of the defendant's wrongdoing." Here, the Bank profited from its wrongful acts. The exact extent of the Bank's profit was unclear at trial, but the evidence demonstrated that the Bank calculated its net gain

17

from foreclosure would have been $346,800.00. Ex. 40. The Bank also profited by the interest payments McCulley paid to the Bank.

## § 27-1-221(7)(b)(v) - Amount of Actual Damages Awarded by the Jury.

27.    Section 27-1-221(7)(b)(v), MCA, requires the Court to consider the amount of actual damages awarded by the jury. Applying *BMW of North America v. Gore*, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996), the Montana Supreme Court has recognized that no "particular mathematical formula or ratio of compensatory to punitive damages" governs the constitutionality of a punitive damages award. *Deonier II*, ¶ 65 (rejecting trial court's "application of a 5:1 ratio of punitive damages to compensatory damages as a determination of the constitutionality of the jury's award," and reversing reduction of punitive damages award). In *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S. Ct. 1513, 1524 (2003), the United States Supreme Court held that although "there are no rigid benchmarks that a punitive damages award may not surpass . . .few awards exceeding a single digit ratio between compensatory and punitive damages, to a significant degree, will satisfy due process. . ." Citing *Campbell*, the Montana Supreme Court rejected a defendant's claim that a 9:1 ratio is in almost all cases the constitutional limit. *Seltzer*, ¶ 184.

28.    Here, the jury awarded McCulley $1,000,000 in actual damages and $5,000,000 in punitive damages. This computes to a ratio of 5 to 1 and is within the statutory limitations. The single digit ratio is constitutional and not excessive, especially since the Bank's conduct was particularly reprehensible. *See, e.g., Seltzer*, ¶ 199 (determining 7 to 1 ratio in penalty award "adequately serves Montana's interest in punishment and deterrence, thereby protecting its citizens and preserving the integrity of the judicial systems, while comporting with the

constraints of due process"); *see also Deonier II*, ¶ 67 (re-instating 7 to 1 ratio after district court

reduction to 5 to 1).

**§ 27-1-221-(7)(b)(vi) - Defendant's Net Worth.**

29.    The sixth factor under § 27-1-221(7)(b), MCA, is the defendant's net worth.

30.    The Bank had the burden of producing competent and reliable evidence at trial for

this purpose. *Blue Ridge Homes, Inc. v. Thein*, 2008 MT 264, ¶ 68, 345 Mont. 125, 191 P.3d

374; *Cartwright v. Equitable Life Assurance Society*, 276 Mont. 1, 37, 914 P.2d 976, 999 (1996).

31.    In *Maurer v. Clausen Distrib. Co.*, 275 Mont. 229, 912 P.2d 195 (1996), the

Montana Supreme Court reversed a trial court's order for a new trial on the issue of punitive

damages, after the trial court concluded that an absence of net worth evidence required it to order

a new trial. The Montana Supreme Court stated:

> In *Gurnsey v. Conklin Co.*, Inc. (1988), 230 Mont. 42, 55, 751 P.2d 151, 158, "we
> stated a plaintiff is not required to show proof that a defendant's net worth
> supports an award of punitive damages. If the defendant's net worth does not
> support an award of punitive damages, the defendant must produce evidence to
> that fact." *Gurnsey*, 751 P.2d at 158. Tucker should not gain an advantage from
> failing to produce evidence of his net worth. Accordingly, there was no evidence
> that Tucker's net worth could not support a punitive damage award of $75,000,
> and so, the District Court erred in vacating the jury's award of punitive damages
> against Tucker.

*Maurer*, 275 Mont. at 235-236.

32.    Following the verdict awarding McCulley compensatory damages and finding an

award of punitive damages appropriate, this Court held a hearing regarding US Bank's financial

affairs, financial condition, and net worth. At that hearing, the Court heard evidence, offered by

McCulley, through the United States Securities and Exchange Commission, September 2013,

Form 10-Q, filed by US Bank. The Form 10-Q shows the net worth of US Bank, as of

19

September 30, 2013, as $41,552,000,000. The Form 10-Q also shows net income for the nine months ending September 30, 2013 of $4,261,000,000; the net income shows an improvement over the same period for the preceding year. The Court finds US Bank has a strong financial condition, good financial affairs, and a substantial net worth.

33.     The failure of US Bank to offer any evidence of its financing standing, profitability, or net worth justifies reliance on Form 10-Q. The Bank's financial condition, financial affairs, and net worth supports the jury's award of $5,000,000 in punitive damages.

## § 27-1-221(7)(b)(vii) - Previous Awards of Punitive or Exemplary Damages Against Defendant Based on the Same Wrongful Act

34.     Section 27-1-221(7)(b)(vii), MCA, requires the Court to consider any previous awards of punitive damages against a defendant based upon the same wrongful conduct. There is no evidence of a prior punitive damage award against US Bank based on the wrongful conduct at issue here. Thus, there is no indication that upholding the punitive damage award will result in the Bank being punished more than once for the same conduct. *See Cartwright*, 276 Mont. at 42, 914 P. 2d at 1001. This weighs in favor of upholding the jury's punitive damage award.

## § 27-1-221(7)(b)(viii) - Potential or Prior Criminal Sanctions Against the Defendant Based Upon the Same Wrongful Act

35.     Section 27-1-221(7)(b)(viii), MCA, requires the Court to consider any potential or prior criminal sanctions based upon the defendant's same conduct. There is no evidence to suggest that the Bank has been or is at risk of being subjected to double punishment by virtue of any criminal sanction applicable to the harm caused to McCulley. Therefore, the punitive damage award is the only punishment that the Bank will face for its misconduct in this case and is the only practical way of making an example of the Bank and deterring further conduct of this

type. *See Cartwright*, 276 Mont. at 27, 914 P.2d at 992. This weighs in favor of the $5,000,000 punitive damage award.

### § 27-1-221(7)(b)(ix) - Any Other Circumstances that May Operate to Increase or Reduce, Without Wholly Defeating, Punitive Damages.

36.     Section 27-1-221(7)(b)(ix), MCA, requires the Court to consider any other circumstances that tend to increase or decrease the punitive damage award. After considering all of the evidence presented, there is no reason to either increase or decrease the jury's award of punitive damages.

37.     Pursuant to § 27-1-220(3), MCA, an award of punitive damages may not exceed $10 million or 3% of the defendant's net worth, whichever is less.

38.     The verdict form in this case made only one punitive damages award and specifically states: "We the jury, by a vote of at least 8 to 4, answers as follows: What amount of punitive damages do you award to Plaintiff Mary McCulley? Answer $5,000,000. *See* Special Verdict For Punitive Damages. Therefore, based upon the statutory limitation of § 27-1-220(3), MCA, the punitive damages may not exceed $10,000,000. The punitive damages verdict in this case is well below the statutory limitation.

39.     In conclusion, US Bank's wrongful treatment of McCulley is consistent with the purpose of punitive damages. The amount of punitive damages awarded by the jury is commensurate with the nature and degree of harm caused to McCulley by the Bank. Based on this Court's review of the record and the statutory factors above, the jury's punitive damages assessment against US Bank is affirmed in the amount of $5,000,000. US Bank's Motion to Reduce Punitive Damages Award is therefore denied.

21

Based upon the foregoing Findings of Fact and Conclusions of Law, the Court enters the following order:

## ORDER

THEREFORE, IT IS HEREBY ORDERED:

1.    US Bank's Motion to Reduce Punitive Damages Award is DENIED.

2.    Plaintiff Mary McCulley is entitled to JUDGMENT against Defendant US Bank for punitive damages in the amount of $5,000,000.

DATED this 14th day of APRIL, 2014.

_____

HON. JOHN BROWN
DISTRICT COURT JUDGE

Cc:    Patricia D. Peterman/James A. Patten -mail
       Mark C. Sherer -email
       Peter W. Carter/F. Matthew Ralph/Matt Woleske
       mail        email        mail

22

Case CC-12-1359

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

Appeals Case 13-60106

Bankruptcy Appellate Panel No. CC-12-1359

Bankruptcy Case No. 8:11-21727-CB

**In re KAREN MICHELE ROZIER**

**Karen Michele Rozier,**

*Debtor, and Appellant Without Legal Representation*

vs.

**U.S. Bank National Association, as Trustee, as successor in interest to Bank of America National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for RAAC 2007 RP1**

*Appellee*

# APPELLANT'S REQUEST FOR

# JUDICIAL NOTICE

1 | Karen Michele Rozier
7957 Dahlia Circle
Buena Park, CA 90620
2 | (714) 512-5740

3 |                    UNITED STATES COURT OF APPEALS

4 |                         FOR THE NINTH CIRCUIT

5 |

6 | In re: KAREN MICHELE ROZIER,    ) Case No. 13-60106
                                   )
7 | Karen Michele Rozier, an        ) B.A.P. No. CC-12-1359-KiPaD
    Individual                      )
                                    ) Case No. 8:11-bk-21727-RK
8 |         Plaintiff- Appellant     )
                                    ) Chapter 7
    v.                              )
9 | U.S. BANK NATIONAL ASSOCIATION, ) **APPELLANT'S REQUEST FOR JUDICIAL**
    AS TRUSTEE                       ) **NOTICE IN SUPPORT OF REPLY BRIEF**
                                    )
10|         Defendant- Appellee      )

11|

12| Appellant Karen Michele Rozier, as the Pro Se Appellant and Debtor,

13| hereby requests that the Court take judicial notice, pursuant to

    Federal Rules of Evidence 201, of the following:

14|

15|   1. **Exhibit A:** NOTICE OF RESCISSION OF NOTICE OF DEFAULT recorded in

      Official Records, Orange County as Instrument 2009000685227 11:59

16|      am 12/22/09.

17|   2. **Exhibit B:** APPRAISAL REPORT OF a Single Family Residence at 7957

      Dahlia Circle Buena Park, CA 90620 AS OF 04/02/14 PREPARED FOR

18|      David & Karen Rozier 7957 Dahlia Circle Buena Park, CA 90620

19|

20|              Request for Judicial Notice – Reply Brief- 1 of 4

PREPARED BY Molly Flaherty Molly Flaherty 519 19th Street, Suite 4 Huntington Beach, CA 92648.

3. **Exhibit C:** UNIFORM RESIDENTIAL APPRAISAL REPORT of a Single Family Residence at 7957 Dahlia Circle Buena Park, CA 90620 as of 07/17/07 prepared by RICHARD BRINSMADE 2746 E. CAMERON AVENUE WEST COVINA, CA 91791 submitted with invoice 698657 to FIRST CHOICE FUNDING.

4. **Exhibit D:** Orange County Tax Assessor report dated 12 NOV 12.

Executed in *Buena Park* , California

Dated: April 16, 2014                                     Respectfully Submitted:

                                                          Karen Michele Rozier
                                                          Appellant- Debtor


## MEMORANDUM OF POINTS AND AUTHORITIES

Judicial notice enables courts to accept as true facts that have not been proven by admissible evidence. Federal Rules of Evidence 201(f) explicitly provides that '[j]udicial notice may be taken at any stage of the proceeding.' "Any state of the proceeding" includes appeal. *In re Indian Palms Associates, LTD. 61 f.3D 197, 205-06 (3D Cir. 1995)* Further, the Rule mandates that judicial notice be taken when it is 'requested by a party and supplied with the necessary

1    information," Fed. Rule Evid. 201(d). *Singh v. Ashcroft, 393 F.3d 903,*

2    *905 (9th Cir. 2004)*

3        The court has a responsibility to treat pro se litigants and

     their pleadings with liberality. *Kashani v. Fulton (In re Kashani),*

4    *190, B.R., 875, 883 (9th Cir. BAP 1995)* Ms. Rozier files this request

5    for judicial notice concurrently with her Reply Brief.

6        Under Federal Rules of Evidence 201, "[a] judicially noticed fact

7    must be one not subject to reasonable dispute," which is (1) generally

     known within the territorial jurisdiction … or (2) capable or … ready

8    determination by resort to sources whose accuracy cannot reasonably be

9    questioned." Fed. R. Evid. 201(b) In this case, Appellant-Debtor

10   submits official documents from the Orange County Tax Assessor and two

     independent licensed California appraisers which directly refute the

11   Appellee's claims.

12       Judicial notice is also proper when events during the appeal

13   occur. At all times relevant to the proceeding, Appellant maintains

14   that she has never been in default of any loan secured by the subject

     property. In its answer to Appellant's Informal Brief, Appellee

15   alleges that Appellant was in default by virtue of a Notice of Default

16   recorded on 3/4/2008 knowing that notice was rescinded on 12/22/09. At

17   all times relevant to the proceeding, Appellant's real property is a

     legally-permitted, 3-story, 4,206 square foot home, according to the

18

19

20                      Request for Judicial Notice – Reply Brief- 3 of 4

21

1  man who built it. Appellant submitted a Request for Judicial Notice of

   the Orange County Tax Assessor report dated November 27, 2012 with her
2
   REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF APPELLANT'S STATUS REPORT
3
   PRIOR TO ORAL ARGUMENTS submitted on June 5, 2013. In its answer to
4
   Appellant's Informal Brief, Appellee continued to misrepresent the
5
   size and value of Appellant's home, a material fact in these

6  proceedings, prompting Appellant to order the new appraisal. A

   comparison of the two appraisals clearly show that the subject
7
   property has been improved over the past seven years and is twice the
8
   size and value of the property Appellee described. Appellee should be

9  sanctioned and forced to compensate the Appellant.

10 Executed in _Buena Park_, California

11 Dated: April 17, 2014                          Respectfully Submitted:

12                                                 _Karen M. Rozier_

13                                                 Karen Michele Rozier

                                                   Appellant- Debtor
14

15

16

17

18

19

20                       Request for Judicial Notice – Reply Brief- 4 of 4

21

# EXHIBIT "A"

Recorded In Official Records, Orange County

Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖    9.00

2009000685227 11:59am 12/22/09
217 406 N38 1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY
**RECORDING REQUESTED BY:**

<u>AND WHEN RECORDED MAIL TO</u>

ETS Services, LLC
2255 North Ontario Street. Suite 400

Loan No.: 0810021144   T.S. No.:  GM-134373-C

ACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF RESCISSION OF NOTICE OF DEFAULT

**NOTICE IS HEREBY GIVEN:** That **Executive Trustee Services, LLC dba ETS Services, LLC** is duly appointed Trustee under a Deed of Trust dated **12/23/2005**, executed by **KAREN M. ROZIER, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE FOR WMC MORTGAGE CORP.**, as Beneficiary, recorded 1/4/2006, as Instrument No.2006000006922, in book , page ,  of Official Records in the Office of the Recorder of Orange County, California describing land therein as more fully described on the above referenced deed of trust.

said obligations including one note for the sum of

Whereas, the present beneficiary under that certain Deed of Trust herein above described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and Whereas, Notice was heretofore given of breach of obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described; and Whereas, a Notice of Default was recorded on the day and in the book and page set forth below:

Notice was recorded on 3/4/2008 in the office of the Recorder of Orange County, California,  Instrument No. 2008-98586, in Book  , Page , of Official Records.

**NOW, THEREFORE, NOTICE IS HEREBY GIVEN** that the present Beneficiary and/or the Trustee, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale; it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach or default--past, present or future under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall nowise jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given.

Dated: 12/15/2009          ETS Services, LLC

By: _____
Nuvia Marquez TRUSTEE SALE OFFICER

# EXHIBIT "B"

# APPRAISAL REPORT OF

a Single Family Residence at

7957 Dahlia Circle

Buena Park, CA 90620

# AS OF

04/02/14

# PREPARED FOR

David & Karen Rozier
7957 Dahlia Circle
Buena Park, CA 90620

# PREPARED BY

Molly Flaherty
Molly Flaherty
519 19th Street, Suite 4
Huntington Beach, CA 92648



File No.    04ROZINFNLBP-14
Case No.   N/A

04/14/2014

David & Karen Rozier
7957 Dahlia Circle
Buena Park, CA 90620

File Number: 04ROZINFNLBP-14

Dear  David Bear & Karen Rozier,

In accordance with your request, I have personally inspected and appraised the real property at:

7957 Dahlia Circle
Buena Park, CA 90620

The purpose of this appraisal is to estimate the market value of the subject property, as improved. The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the estimated market value of the property as of _____ 04/02/14 _____  is:

$ _____ 750,000 _____

Seven Hundred and Fifty Thousand Dollars

The attached report contains the description, analysis and supportive data for the conclusions, final estimate of value, descriptive photographs, limiting conditions and appropriate certifications.

Respectfully submitted,

Appraiser: _____
Molly Flaherty

Supervisor: _____

File No.    04ROZINFNLBP-14
Case No.   N/A

# Table of Contents

| Page Title | Page # |
|---|---|
| Transmittal Letter | 1 |
| Residential Appraisal Page 1 | 2 |
| Residential Appraisal Page 2 | 3 |
| Residential Appraisal Page 3 | 4 |
| Extra Comps 4-5-6 | 5 |
| Comments | 6 |
| Comments Page 2 | 7 |
| Comments | 8 |
| Certification Page 1 | 9 |
| Certification Page 2 | 10 |
| Certification Page3 | 11 |
| Sketch | 12 |
| Location Map | 13 |
| Plat Map | 14 |
| Aerial Map | 15 |
| Photo Subject | 16 |
| Photo Subject Extra | 17 |
| Photo Subject Extra | 18 |
| Photo Subject Extra | 19 |
| Photo Subject Extra | 20 |
| Photo Subject Extra | 21 |
| Photo Comparables 1-2-3 | 22 |
| Photo Comparables 4-5-6 | 23 |

File No.   04ROZINFNLBP-14
Case No.   N/A

# Residential Appraisal Report

The purpose of this appraisal report is to provide the client with an accurate, and adequately supported, opinion of the market value of the subject property.

## SUBJECT

| Property Address | 7957 Dahlia Circle | City | Buena Park | State | CA | Zip Code | 90620 |
|---|---|---|---|---|---|---|---|

| Owner | David Bear & Karen Rozier | Intended User | David Bear & Karen Rozier | County | | Orange |
|---|---|---|---|---|---|---|

Legal Description    Lot 4 of Tract No. 2630

| Assessor's Parcel # | 136-241-04 | Tax Year | 2013 | R.E. Taxes $ | 4,532.00 |
|---|---|---|---|---|---|

| Neighborhood Name | N/A | Map Reference | 767~J3 | Census Tract | 1104.01 |
|---|---|---|---|---|---|

| Occupant | X Owner | Tenant | Vacant | Special Assessments $ | 0 | | PUD | HOA $ | 0 | per year | per month |
|---|---|---|---|---|---|---|---|---|---|---|---|

Property Rights Appraised    X Fee Simple    Leasehold    Other (describe)

Intended Use  Determination of Value for a Chapter 13.

| Client | David Bear & Karen Rozier | Address | 7957 Dahlia Circle, Buena Park, CA 90620 |
|---|---|---|---|

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?   Yes  X No

Report data source(s) used, offerings price(s), and date(s).   A combination of: Realist, Multiple Listing Service, various title companies, realtors and the Rozier's.

## CONTRACT

I  did   X  did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.  N/A

| Contract Price $ | N/A | Date of Contract | N/A | Is the property seller the owner of public record? | Yes | No | Data Source(s) | N/A |
|---|---|---|---|---|---|---|---|---|

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the purchaser?   Yes  No
If Yes, report the total dollar amount and describe the items to be paid.  N/A

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | | One-Unit Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Location | Urban | X Suburban | Rural | Property Values | X Increasing | Stable | Declining | PRICE $ (000) | AGE (yrs) | One-Unit | 89 % |
| Built-Up | X Over 75% | 25-75% | Under 25% | Demand/Supply | Shortage | X In Balance | Over Supply | Low 5 | | 2-4 Unit | 1 % |
| Growth | Rapid | X Stable | Slow | Marketing Time | Under 3 mths | X 3-6 mths | Over 6 mths | 300 High 58 | | Multi-Family | 5 % |
| | | | | | | | | 1 mil | | Commercial | 5 % |
| | | | | | | | | 440 Pred. 36 | | Other | 5 % |

Neighborhood Boundaries   The subject neighborhood is bounded by Rosecrans Avenue North, by Orange Avenue South, by Gilbert Street East, and by Beach Boulevard West.

Neighborhood Description  Residential properties located within the subject's market area are readily accessible and all properties appear to have adequate utilities available.  The neighborhood consists of mostly single family residences with generally conforming lot utilities. The major streets in the community provide for local shopping and commerce.

Market Conditions (including support for the above conclusions)  Most Southern California cities experienced price/value depreciation until 2011. The price/value trend has stabilized as the market strengthened 2012-2013.  While it is not for certain, it appears the price/value trend in this area of Buena Park, during the past three month, is increasing.  The neighborhood's typical exposure time is presently 0-90 days.

## SITE

| Dimensions | See Site Map for Area Calculation | Area | 8,276 SqFt | Shape | Cul-De-Sac/Irregular | View | Neighborhood |
|---|---|---|---|---|---|---|---|

Specific Zoning Classification    R-1    Zoning Description    (Single Family Residential)

Zoning Compliance   X Legal    Legal Nonconforming (Grandfathered Use)    No Zoning    Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?   X Yes    No If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | X | | Water | X | | Street | Asphalt | X | |
| Gas | X | None | Sanitary Sewer | X | | Alley | None | | |
| | | | | | In Area | | | | |

FEMA Special Flood Hazard Area   Yes  X No  FEMA Flood Zone     X     FEMA Map #    06059C-0126J    FEMA Map Date    12/03/2009

Are the utilities and/or off-site improvements typical for the market area?   X Yes    No  If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?   Yes  X No  If Yes, describe.

There are no apparent adverse easements, encroachments, special assessments or slide areas, illegal or legal nonconforming zoning land uses  noted other than typical utility lines.  Site backs to sidewalk fields and sides commercial.  This does not appear to have effect on value or marketability.  The appraiser is not an expert in the field of environmental analysis and/or inspection. There was no environmental report provided to the appraiser.

## IMPROVEMENTS

| General Description | | | Foundation | | Exterior Description materials/condition | | Interior | materials/condition |
|---|---|---|---|---|---|---|---|---|
| Units | X One | One with Accessory Unit | X Concrete Slab | Crawl Space | Foundation Walls | Concrete-Avg | Floors | Tile/Wood-Avg |
| # of Stories | Two | | Full Basement | Partial Basement | Exterior Walls | Stucco/Slate-Avg | Walls | Drywall/Birch-Avg |
| Type | X Det. | Att. | S-Det./End Unit | Basement Area | N/A | sq. ft. | Roof Surface | Comp Shingle-Avg | Trim/Finish | Wood/Paint-Avg |
| X Existing | Proposed | Under Const. | Basement Finish | N/A | % | Gutters & Downspouts | Adeq Overhang | Bath Floor | Tile-Avg |
| Design (Style) | Conventional/Avg | | Outside Entry/Exit | Sump Pump | Window Type | Alum Slider/Vinyl-Avg | Bath Wainscot | Tile-Avg |
| Year Built | 1957 / 2005 | | Evidence of | Infestation | Storm Sash/Insulated | No/Yes | Car Storage | None |
| Effective Age (Yrs) | 25 | | Dampness | Settlement | Screens | Screens-Avg | X Driveway | # of Cars 2 |
| Attic | | None | Heating | X FWA | HWBB | Radiant | Amenities | Woodstove(s) # | Driveway Surface | Concrete |
| | Drop Stair | Stairs | Other | Fuel | Gas | Fireplace(s) # | Fence | Block | X Garage | # of Cars 2 |
| | Floor | Scuttle | Cooling | X Central Air Conditioning | Patio/Deck | Cnc | X Porch | Tile | Carport | # of Cars |
| | Finished | Heated | Individual | Other | Pool | | Other | | Att. | X Det. | Built-in |

Appliances P Refrigerator X Range/Oven X Dishwasher X Disposal P Microwave P Washer/Dryer  Other

| Finished area above grade contains: | 8 Rooms | 3 Bedrooms | 3.50 Bath(s) | 3,763 Square Feet of Gross Living Area Above Grade |
|---|---|---|---|---|

Additional features (special energy efficient items, etc.)   See the attached addendum for a full summary of the subject's property features.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.)   The subject has received periodic replacements and upgrades and is maintained adequately. There appeared to be water stains from a prior leakage with none currently present per the homeowner. For the purpose of this appraisal study it is assumed to have been fixed. The Appraiser is not a roofer, and if there are concerns, an inspection performed by the appropriate contractor is recommended.  This is seen as a cosmetic repair, as reflected in subject's "Average" condition rating, with minimal effect upon marketability. The appraisal is completed under the extraordinary assumption that the above described inadequacies are not significant and there are no structural problems with the subject property. If my assumptions are found to be untrue, I reserve the right to change my appraisal.  The subject property is overbuilt for the area.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?   Yes  X No  If Yes, describe
The appraiser is not a licensed home inspector and this report is not a home inspection. The appraiser only performed a visual inspection of accessible areas and the appraisal cannot be relied upon to disclose conditions and/or defects in the property. The appraiser does not have the skill or expertise needed to make such inspections.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?   X Yes    No  If No, describe

File No.    04ROZINFNLBP-14
Case No.    N/A

# Residential Appraisal Report

There are    -    comparable properties currently offered for sale in the subject neighborhood ranging in price from $    -    to $    -    .
There are    -    comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $    -    to $    -    .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 7957 Dahlia Circle | 8524 Elm Circle | | 9532 Monterra Way | | 59 Centerstone Circle | |
| | Buena Park, CA 90620 | Buena Park, CA 90620 | | Buena Park, CA 90620 | | Buena Park, CA 90620 | |
| Proximity to Subject | | 0.83 miles S | | 2.18 miles SW | | 0.39 miles E | |
| Sale Price | $ N/A | $ 655,000 | | $ 680,000 | | $ 640,500 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 263.26 sq. ft. | | $ 239.44 sq. ft. | | $ 256.20 sq. ft. | |
| Data Source(s) | | CRMLS #OC13210043 | | CRMLS #PW13207738 | | CRMLS #PW13054210 | |
| Verification Source(s) | | Realist-Doc #18599 | | Realist-Doc #47880 | | Realist-Doc #317510 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | FHA;0 | | Conv;0 | | Conv;0 | |
| Date of Sale/Time | | 01/15/2014 | | 02/05/2014 | | 05/24/2013 | +17,000 |
| Location | Average | Average | | Average | | Average | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 8,276 SqFt | 5,663 SqFt +/- | +8,000 | 5,519 SqFt +/- | +8,500 | 4,635 SqFt +/- | +11,000 |
| View | Neighborhood | Neighborhood | | Neighborhood | | Neighborhood | |
| Design (Style) | Conventional/Avg | Conventional/Avg | | Conventional/Avg | | Conventional/Avg | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 57 | 31 | | 24 | | 13 | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total 8 Bdrms 3 Baths 3.50 | Total 8 Bdrms 4 Baths 3.00 | +3,000 | Total 8 Bdrms 4 Baths 3.50 | | Total 9 Bdrms 5 Baths 3.00 | +3,000 |
| Room Count | | | | | | | |
| Gross Living Area | 3,763 sq. ft. | 2,488 sq. ft. | +89,500 | 2,840 sq. ft. | +64,500 | 2,500 sq. ft. | +88,500 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/Central AC | FWA/Central AC | | FWA/Central AC | | FWA/Central AC | |
| Energy Efficient Items | None Noted | None Noted | | None Noted | | None Noted | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 3 Car Garage | -10,000 | 3 Car Garage | -10,000 |
| Porch/Patio/Deck | Prch/Ptio/2 Blcny | Patio/Porch | | Patio/Porch/Blcny | | Patio/Porch | |
| Fireplace(s) | No Fireplace | 1 Fireplace | | 1 Fireplace | | 2 Fireplaces | |
| Pool/Spa/Bltn BBQ/Fire Pit | None | None | | None | | None | |
| Net Adjustment (Total) | | X + - | $ 100,500 | X + - | $ 63,000 | X + - | $ 109,500 |
| Adjusted Sale Price | | Net Adj: 15% | | Net Adj: 9% | | Net Adj: 17% | |
| of Comparables | | Gross Adj: 15% | $ 755,500 | Gross Adj: 12% | $ 743,000 | Gross Adj: 20% | $ 750,000 |

I  X did    -    did not research the sale or transfer history of the subject property and comparable sales. If not, explain    High net/gross adjustments on comparable
3 were made due to the discrepancies between the subject and the comparables available.

My research    did  X    did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  Realist, Multiple Listing Service.
My research  X did    -    did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  Realist, Multiple Listing Service.
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 07/16/1999 | 06/28/2013 | 09/03/2013 | |
| Price of Prior Sale/Transfer | 185,000 | 435,000 | $0 | $0 |
| Data Source(s) | Realist. | Realist. | Realist. | Realist. |
| Effective Date of Data Source(s) | 04/03/2014 | 04/03/2014 | 04/03/2014 | 04/03/2014 |

Analysis of prior sale or transfer history of the subject property and comparable sales    The subject has not sold or transferred title in the last three years per the MLS
and Realist.  Comparable 2 had an interspousal deed on 09/03/2013 and a sale on 08/30/2013 for the amount of $615,000.  All comparables have not
had a prior sale within the past year except for the above noted transactions.

Summary of Sales Comparison Approach    See Addendum for comments on all market adjustments.

Indicated Value by Sales Comparison Approach $    750,000
Indicated Value by: Sales Comparison Approach $    750,000    Cost Approach (if developed) $    N/D    Income Approach (if developed) $    N/D

This appraisal is made  X "as is,"    -    subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed,    -    subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or    -    subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair.  This is a complete report.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$    750,000 , as of    04/02/14    .

NL - Residential 5/2007    This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.

File No.   04ROZINFNLBP-14
Case No.   N/A

## Residential Appraisal Report

**ADDITIONAL COMMENTS**

Signing appraiser's "License Status" or "Certification of Good Standing" within the State of California can be verified at: www.orea.ca.gov.

Please see the attached sketch for the subject's floor plan and square footage. The calculated square footage of gross living area is considered to an approximation, with minor variations in actual square footage to be insignificant as to the subject property. The sketch is used to assist reader only and is not an exact rendering. The cost approach was not carried out due to its inability to be accurate for residential properties in this area at this time.

**COST APPROACH**

### COST APPROACH TO VALUE (if applicable)

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   The appraiser does not support the Cost Approach as being a good determination of value and the below figures should not and are not accurate for insurance purposes. Marshall & Swift figures are for large tract developments, not individual reconstruction and also do not include demolition or clean up costs. (See Reconciliation in comment addendum)

| | | | | | | |
|---|---|---|---|---|---|---|
| ESTIMATED [ ] REPRODUCTION OR [X] REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ | 465,000 |
| Source of cost data  Local Builders/Developers/Brokers | Dwelling | 3,763 | Sq. Ft. @ $ | 95.00 | =$ | 357,485 |
| Quality rating from cost service    Avg    Effective date of cost data    04/14 | Bsmt. | | Sq. Ft. @ $ | | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Built-Ins | | | | | 20,000 |
| The appraiser estimated the physical depreciation of the subject by using | Garage/Carport | 500 | Sq. Ft. @ $ | 25.00 | =$ | 12,500 |
| the Age Life Method, which is calculated by dividing the effective age by | Total Estimate of Cost-new | | | | =$ | 389,985 |
| the total economic life.  See addendum for additional depreciation | Less    Physical 33 Functional  2 External | | | | | |
| information.  Below indicates the subject's estimated site value. **NOTE: | Depreciation 128,695 | 5,226 | 0 | | =$ ( | 133,921 ) |
| The land to building ratio exceeding 30% is typical for Orange County | Depreciated Cost of Improvements | | | | =$ | 256,064 |
| properties.** | *As-is* Value of Site Improvements | | | | =$ | 30,000 |
| Estimated Remaining Economic Life (HUD and VA only)         50        Years | Indicated Value By Cost Approach | | | | =$ | 751,064 |

**INCOME**

### INCOME APPROACH TO VALUE (if applicable)

Estimated Monthly Market Rent $        N/A        X Gross Multiplier        N/A        =$        N/A        Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)   N/A

**PUD INFORMATION**

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  [ ] Yes  [ ] No  Unit type(s)  [ ] Detached  [ ] Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|

| Total number of units rented | Total number of units for sale | Data source(s) |
|---|---|---|

Was the project created by the conversion of existing building(s) into a PUD?  [ ] Yes  [ ] No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?  [ ] Yes  [ ] No  Data source.  Inspection.

Are the units, common elements, and recreation facilities complete?  [ ] Yes  [ ] No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowner's Association?  [ ] Yes  [ ] No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

EXTRA COMPARABLES 4-5-6

File No.    04ROZINFNLBP-14
Case No.   N/A

Borrower  N/A
Property Address 7957 Dahlia Circle
City        Buena Park        County        Orange        State        CA        Zip Code        90620
Lender/Client        David & Karen Rozier        Address  7957 Dahlia Circle, Buena Park, CA 90620

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | +(-)$ Adjustment | COMPARABLE SALE # 5 | +(-)$ Adjustment | COMPARABLE SALE # 6 | +(-)$ Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 7957 Dahlia Circle | 8571 Monticello Avenue | | 8602 Los Coyotes Drive | | 8550 Buena Tierra Circle | |
| | Buena Park, CA 90620 | Buena Park, CA 90621 | | Buena Park, CA 90620 | | Buena Park, CA 90621 | |
| Proximity to Subject | | 2.18 miles N | | 2.97 miles N | | 3.03 miles N | |
| Sale Price | $ N/A | $ 850,000 | | $ 850,000 | | $ 998,000 | |
| Sale Price/Gross Liv. Area | $ 0.00  sq. ft. | $ 199.25  sq. ft. | | $ 260.58  sq. ft. | | $ 262.63  sq. ft. | |
| Data Source(s) | | CRMLS #S724272 | | CRMLS #PW13219222 | | CRMLS #PW14009612 | |
| Verification Source(s) | | Realist-Doc #298215 | | Realist-Doc #6129 | | Real Estate Broker | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sale or Financing | | ArmLth | | ArmLth | | Listing | |
| Concessions | | Cash;0 | | Conv;0 | | Conv;0 | |
| Date of Sale/Time | | 05/17/2013 | +22,500 | 01/07/2014 | | Active | -37,500 |
| Location | Average | Superior | -35,000 | Superior | -35,000 | Superior | -35,000 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 8,276 SqFt | 16,988 SqFt +/- | -26,000 | 13,939 SqFt +/- | -17,000 | 11,761 SqFt +/- | -10,500 |
| View | Neighborhood | Neighborhood | | Golf Course | -30,000 | Neighborhood | |
| Design (Style) | Conventional/Avg | Conventional/Avg | | Conventional/Avg | | Conventional/Avg | |
| Quality of Construction | Average | Average | | Superior | -10,000 | Superior | -10,000 |
| Actual Age | 57 | 42 | | 37 | | 36 | |
| Condition | Average | Average | | Superior | -10,000 | Superior | -10,000 |
| Above Grade | Total | Bdrms | Baths | Total | Bdrms | Baths | |
| Room Count | 8 | 3 | 3.50 | 11 | 5 | 4.00 | -3,000 | 8 | 3 | 3.00 | +3,000 | 8 | 4 | 2.50 | +5,000 |
| Gross Living Area | 3,763  sq. ft. | 4,266  sq. ft. | -35,000 | 3,262  sq. ft. | +35,000 | 3,800  sq. ft. | 0 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/Central AC | FWA/Central AC | | FWA/Central AC | | FWA/Central AC | |
| Energy Efficient Items | None Noted | None Noted | | None Noted | | None Noted | |
| Garage/Carport | 2 Car Garage | 3 Car Garage | -10,000 | 3 Car Garage | -10,000 | 3 Car Garage | -10,000 |
| Porch/Patio/Deck | Prch/Ptio/2 Blcny | Patio/Porch/Blcny | | Patio/Porch | | Patio/Porch | |
| Fireplace(s) | No Fireplace | 1 Fireplace | | 1 Fireplace | | 2 Fireplaces | |
| Pool/Spa/Bltn BBQ/Fire Pit | None | Built-In BBQ | -2,000 | IG Pool/IG Spa | -25,000 | Bltn BBQ/Fire Pit | -4,000 |
| Net Adjustment (Total) | | + X - | $ -88,500 | + X - | $ -99,000 | + X - | $ -112,000 |
| Adjusted Sale Price | | Net Adj: -10% | | Net Adj: -12% | | Net Adj: -11% | |
| of Comparables | | Gross Adj: 16% | $ 761,500 | Gross Adj: 21% | $ 751,000 | Gross Adj: 12% | $ 886,000 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 07/16/1999 | | | |
| Price of Prior Sale/Transfer | 185,000 | $0 | $0 | $0 |
| Data Source(s) | Realist. | Realist. | Realist. | Realist. |
| Effective Date of Data Source(s) | 04/03/2014 | 04/03/2014 | 04/03/2014 | 04/03/2014 |

Analysis of prior sale or transfer history of the subject property and comparable sales  Comparable 6 is an active listing with T.N.G. Real Estate Consultant (562) 315-9330 David Clesceri. This comparable was utilized as it is a good gauge of market trend, and is supportive of the final opinion of value. A 3.75% market adjustment was applied to account for the typical and probable difference between asking and contract sale price (rounded to the nearest $500). Comparable 6 was used mainly for its similar livable area and for bracketing purposes. Little, if any weight given to this comparable, due to it being in a different area. Listings are provided to demonstrate current market conditions (the subject's market conditions), and should not be construed as any indicator of current market value. Oftentimes properties sell below, as well as above, the listing price. Concessions, seller incentives, and discounts for listings are an ongoing unknown within a competitive market until the property actually sells. The appraiser cannot predict the motivations of parties involved in a transaction that has not occurred yet.  In this report, little weight is given to the above listing and it is adjusted for the benefit of the lender. Reconciling the estimate of the subject market value against unknown events (the eventual sale of a listing) would be forecasting and misleading. The listing provided is adjusted only in order to further provide additional information.

Summary of Sales Comparison Approach  See addendum.

SALES COMPARISON ANALYSIS

## COMMENT ADDENDUM

File No.    04ROZINFNLBP-14
Case No.    N/A

Borrower   N/A
Property Address   7957 Dahlia Circle
City        Buena Park        County        Orange        State        CA        Zip Code        90620
Lender/Client    David & Karen Rozier        Address 7957 Dahlia Circle, Buena Park, CA 90620

### DESCRIPTION OF IMPROVEMENTS FOR THE SUBJECT RESIDENCE

The subject's additional features include, but are not limited to:
The subject was a tract home built in 1957. It was torn down, leaving one wall, and was custom rebuilt in 2005. The subject
has floor and wall finishing of Travertine, porcelain and Italian tile. There is granite in the entry, kitchen, living room and
bathroom floors. The kitchen has newer stainless steel appliances and fixtures. The bathrooms have been remodeled.
There are French doors, sky lights and recessed lighting throughout. There are two balconies, a patio and porch. One
bathroom has a spa tub and there is a limestone lined spa in the bonus room.

### ESTIMATED REMAINING ECONOMIC LIFE

The building cost estimates were supported by Marshall-Swift Valuation service and market reaction. The subject's physical
depreciation of 34% is computed by dividing the effective age (25 years) by the total remaining economic life (25 + 50 = 75
years). The effective age is based on the appraiser's physical inspection, market analysis and matched  pair study, which
indicates that the subject's remaining economic life is average to good.

### MARKET APPROACH

The best comparable data is usually taken from the subject's immediate market area. However, because the subject is larger
than average, it was necessary to exceed typical guidelines and expand the search over the one mile radius and use mostly
smaller sales, due to the complexity of the appraisal assignment. It is the appraiser's opinion that the comparable sales are
from similar competing market areas and that a buyer for the subject might look in these areas for a similar home. Reader
must be aware of the uniqueness of the subject and the difficulties associated with estimating market value with limited recent
closed sales with the subject's size. All value affecting dissimilarities were adjusted according to market reaction. The
appraiser did not adjust for every line item amenity, but all factors were considered in the appraisal process.
Foreclosures/short sales in the neighborhood were somewhat common at the time of inspection leading to a range of sale
prices. There was no conclusive evidence that there's been time/value depreciation of comparables. Most weight given to
comparables 1, 2, and 3 due to being closest in proximity and in similar locations. Comparables 2 and 3 are in a gated
community. Secondary weight given to comparable 4 and 5. Least, if any, weight given to comparable 5. Upgrades adjusted
as recognized by the market.

The comparables are adjusted as follows:

NOTE:
The subject's value comes in above the predominant value for the neighborhood due primarily to the subject's improvement
size and lot being larger than the neighborhood average and the lack of similar sales. Also, due to being a newer construction
property.

ADDITION:
It was indicated through the appraiser's physical inspection and interview with the owner that gross living area was added to
the subject property in 2005. According to the owner all additions were permitted by the city of Buena Park. All
improvements have been completed in a workmanlike manner and conform to the subject property in both quality and
condition. (05/05/2005 - #2605). There is an office loft addition added above the garage.

TIME OF SALE ADJUSTMENTS:
Market statistics and analysis were derived from the appraiser's current knowledge of the subject market area and use of
statistics personally compiled within what would be considered an area with properties in direct comparison to the subject. A
.875% per month (3 months) adjustment was added to comparables 3 and 4 for being dated sales. These comparables are
dated more than 3 months, but it's only been in the past three months that the area has been increasing.

LOCATION:
Comparables 4, 5 and 6 are given negative adjustments due to their superior location. It was indicated to the appraiser
through market analysis and matched pair study, as well as with interviews with local real estate brokers that properties
located in close proximity to Los Coyotes Country Club and/or in the hills command higher prices on the open market. This
appears to be due to being close to the Los Coyotes Country Club and/or in the hills and/or having a view and/or having
larger lots. Based on this information the appraiser made the appropriate adjustments. (Adjustments rounded to the nearest
$500.00).

LOT SIZE:
It was indicated to the appraiser through a market analysis, matched pair study as well as interviews with local real estate
brokers that properties having larger lot areas demand higher prices on the open market. Based on this information the
appraiser made the appropriate adjustments at $3.00 per square foot of additional lot area. No lot adjustment for comparable
5 due to having an upslope in the rear yard minimizing lot utility. Comparable 5 has a 11,561 square foot site (judged
approximately 75% near-level/useable). (Adjustments rounded to the nearest $500.00).

QUALITY OF CONSTRUCTION:
Comparables 5 and 6 are given negative adjustments due to their superior quality of construction and/or upgrades. It  was
indicated to the appraiser through market analysis, matched pair study, a review of available MLS information (including
interior photos provided by MLS) and the external viewing of the comparables that properties having a higher improvement
price per square foot are superior in quality of construction compared to properties having a lower improvement price per
square foot (everything else being equal). Based on this information the appraiser made the appropriate adjustments.

## COMMENT ADDENDUM

File No.    04ROZINFNLBP-14
Case No.    N/A

Borrower  N/A

Property Address    7957 Dahlia Circle

| City  Buena Park | County | Orange | State | CA | Zip Code | 90620 |

Lender/Client    David & Karen Rozier                    Address 7957 Dahlia Circle, Buena Park, CA 90620

**AGE/YEAR BUILT:**
Based on market analysis, matched pair study, available MLS information, and the external viewing of the comparables the appraiser did not deem any adjustments appropriate or necessary for differences in age/year built.

**CONDITION:**
Comparables 5 and 6 are given negative adjustments due to their superior condition and/or upgrades. It was indicated to the appraiser through market analysis, matched pair study, a review of available MLS information (including interior photos provided by MLS), interviews with local real estate brokers and the external viewing of each comparable that properties having a lower improvement price per square foot are inferior in condition and/or upgrades compared to properties having a higher improvement price per square foot (everything else being equal). Adjustments based on research conducted.

**ROOM #:**
The appraiser has taken variances in room count into consideration in the Size section of this report. The appraiser has done so as to not make duplicate adjustments when determining additional size value. There is no adjustment for bedrooms. (Bathroom = $5,000, 1/2 Bathroom = $3,000).

**SIZE:**
Adjustments based on $70.00 per additional square foot of gross living area, (so as not to have a duplicate adjustment when determining additional room value), determined by market analysis and matched pair study. (Adjustments rounded to the nearest $500.00).

**POOL/SPA/FIRE PIT/BUILT-IN BARBECUE:**
The appraiser was unable to find a similar comparable with an in-ground spa inside the home. It should be noted that sometimes it is not possible to compare the subject ideally or bracket a specific attribute particularly in this limited segment of the market because of the lack of data available. No adjustment was made, but the spa was considered in the overall quality of the subject and the final opinion of value. (Pool = $20,000, Spa = $5,000, Fire Pit = $2,000, Built-In BBQ = $2,000).

**OTHER ADJUSTMENTS:**
All other Improvement Adjustments were based on market reaction and supported by Marshall and Swift's Cost Book. All sales verified through public records and/or Multiple Listing Service. The appraisal was completed as per requirements to the best of my abilities.

**COMPARABLE PROPERTY PHOTOS:**
Unless not possible (such as inaccessible due to a gated community, a long private driveway or road work), the appraiser personally drove by each of the comparable properties profiled in this report. Occasionally a comparable photo is downloaded from the MLS sources for the appraisal report due to the appraiser not being able to take a representative photo for any number of reasons, the most common reason being a person situated in front of the comparable property at the time of inspection.

**LEAD BASED PAINT:**
The presence of lead based paint and contamination cannot be ruled out based on properties constructed prior to 1978. If the client has any questions regarding these items, it is the client's responsibility to order the appropriate inspections with the final opinion of market of value being subject to a licensed professional's findings.

Additional Information and Conditions of the Appraisal:

**COMPETENCY PROVISION:**
The appraiser has the appropriate knowledge and experience to complete this assignment competently. Appraiser qualifications are maintained in Association files and can be provided upon request.

**PURPOSE AND INTENDED USERS:**
The purpose of this report is to estimate the market value of the subject property as of October 31, 2012 for Daniel Cruz. There are no other intended uses. If a third party receives a copy of this appraisal, this does not mean that the third party is an Intended User as that term is defined in the URAR form.

**SELF CONTAINMENT:**
This appraisal report is intended to be a complete summary report containing the information necessary to enable the reader to understand the appraiser opinion. Any third party studies referred to, such as pest, hazardous materials or structural reports have been verified by the appraiser to the extent of the assumptions and conclusions used.

**PERSONAL PROPERTY:**
Any personal property involved in the transaction has been excluded from the valuation of the real property. Should a transaction, which includes personal property of sufficient value to affect the market value of the real property, be evident, a separate assessment of the personal property fixtures or intangible items will be identified and included with the report as a separate valuation.

**DIGITAL SIGNATURE:**
This appraisal is digitally signed. This digital signature requires a security password known only by me, Molly Flaherty. No changes can be made to any portion of the appraisal once it has been digitally signed. The digital signature used on this appraisal is an accurate representation of my signature.

## COMMENT ADDENDUM

File No.    04ROZINFNLBP-14
Case No.    N/A

Borrower    N/A
Property Address    7957 Dahlia Circle
City    Buena Park    County    Orange    State    CA    Zip Code    90620
Lender/Client    David & Karen Rozier    Address 7957 Dahlia Circle, Buena Park, CA 90620

### EXPOSURE TIME

Exposure Time, at the estimated value, is considered to be at 1 to 3 months. This is typical for the subject's neighborhood and market area. Exposure Time is directly associated with the appraised value and is considered to be prior to the effective date of the appraisal. Marketing Time is also estimated at 1 to 3 months, but is considered after the appraisal date. These estimates are based upon the comparables' performance as well as typical marketing times evidenced by interviews of market participants and analysis of listing to closing dates indicated in MLS for the area. Exposure Time relates to the probable time the subject would likely have been exposed to the market to sell at its estimated Market Value. Marketing Time relates to the probable time that the subject will need to be exposed to the market in order to sell at the estimated Market Value.

### LIMITING CONDITIONS

I am not a licensed building contractor or professional building inspector. I am not qualified to survey or analyze physical items that are not readily visible. If any of the parties in this transaction have questions or concerns regarding any mechanical or structural physical problems, conditions, infestation, contamination or other issues regarding the subject property, an expert in that field or specialty should be consulted.

### RECONCILIATION

The Direct Sales comparison Approach is generally considered to be the best indicator of value for this type of property. The Cost Approach is usually considered to be a value indicator of secondary importance which provides supplementary support for the Direct Sales Comparison Approach. The Income Approach is usually not considered a reliable indicator of value for this type of property. Homes in this neighborhood similar to the subject are generally not purchased for th income stream they might produce. The majority of the properties in the neighborhood are owner occupied, and the Income Approach does not apply. The appraiser has given the greatest consideration in the final estimate of value to the Market Approach.

### EXTRAORDINARY ASSUMPTION

It is assumed that all structures given value in this report are legally permitted as stated. The land is assumed to have no unknown geological or environmental adverse issues. The physical characteristics of the comparables were either verified through county records, MLS, inspection from the street by the appraiser and/or homeowner verification and are assumed to be as stated. The comparables are assumed to have no sales concessions unless otherwise noted. Due to being market driven, the cost approach (if used) figures are assumed to be as stated in this report. The CC&Rs (if any) were not reviewed; therefore, all project information is assumed to be as stated. The current zoning and flood map information is assumed to be as stated in this report. The legal age of the home is assumed to be as stated. The type and condition of utilities is assumed to be as stated. The estimated cost to cure is assumed to be as stated. The type of foundation is assumed to be as stated. All rental information was obtained through MLS, homeowner, area brokers, homeowner, or tenant, and is assumed to be as stated. The local airport is assumed not to impose any adverse condition to the subject property. If any of these items are found not be true and correct, I reserve the right to change my appraisal.

*I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.*

File No.    04ROZINFNLBP-14
Case No.    N/A

This appraisal report is subject to the scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. The Appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment.

## SCOPE OF WORK:
The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

## DEFINITION OF MARKET VALUE:
As per Fannie Mae the definition of market value is the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:
The appraiser's certification in this report is subject to the following assumptions and limiting conditions.

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

File No.    04ROZINFNLBP-14
Case No.    N/A

## APPRAISER'S CERTIFICATION: The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event.

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

File No.    04ROZINFNLBP-14
Case No.  N/A

21. I am aware that any disclosure or distribution of this appraisal report by me or the client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

22. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _Molly Flaherty_ | Signature _____ |
| Name _Molly Flaherty_ | Name _____ |
| Company Name _____ | Company Name _____ |
| Company Address _519 19th Street, Suite 4_ | Company Address _____ |
| _Huntington Beach, CA 92648_ | |
| Telephone Number _(714) 536-4223_ | Telephone Number _____ |
| Email Address _molly.flaherty@verizon.net_ | Email Address _____ |
| Date of Signature and Report _04/14/2014_ | Date of Signature _____ |
| Effective Date of Appraisal _04/02/14_ | State Certification # _____ |
| State Certification # _____ | or State License # _____ |
| or State License # _AL026488 - Appraising for 15 Years_ | State _____ |
| or Other (describe) _____ State # _CA_ | Expiration Date of Certification or License _____ |
| State _CA_ | |
| Expiration Date of Certification or License _01/19/2013_ | |

ADDRESS OF PROPERTY APPRAISED
_7957 Dahlia Circle_
_Buena Park, CA 90620_

APPRAISED VALUE OF SUBJECT PROPERTY $   _750,000_
CLIENT
Name _David & Karen Rozier_
Company Name _David & Karen Rozier_
Company Address _7957 Dahlia Circle_
_Buena Park, CA 90620_
Email Address _rozier.karan@yahoo.com_

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
Date of Inspection _____
☐ Did inspect interior and exterior of subject property
Date of Inspection _____

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
Date of Inspection _____

NL - General Certification 5/2007        This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.

## SKETCH ADDENDUM

File No.    04ROZINFNLBP-14
Case No.    N/A

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | N/A | | | | | |
| Property Address | 7957 Dahlia Circle | | | | | |
| City Buena Park | | County | Orange | State | CA | Zip Code 90620 |
| Lender/Client | David & Karen Rozier | | Address | 7957 Dahlia Circle, Buena Park, CA 90620 | | |



Sketch by Apex Sketch v5 Standard™

Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA1 | First Floor | 2123.50 | 2123.50 |
| GLA2 | Second Floor | 1639.25 | 1639.25 |
| GAR | Garage | 500.00 | 500.00 |
| | | | |
| Net LIVABLE Area | (rounded) | | 3763 |

| LIVING AREA BREAKDOWN | | | |
|---|---|---|---|
| | Breakdown | | Subtotals |
| First Floor | | | |
| 0.5 x | 20.0 x | 0.0 | 0.00 |
| | 31.0 x | 1.0 | 31.00 |
| | 11.0 x | 29.0 | 319.00 |
| 0.5 x | 5.0 x | 6.0 | 15.00 |
| | 4.5 x | 18.0 | 81.00 |
| | 16.0 x | 47.0 | 752.00 |
| | 21.0 x | 23.0 | 483.00 |
| | 13.0 x | 6.0 | 78.00 |
| 0.5 x | 0.0 x | 18.0 | 0.00 |
| | 13.5 x | 27.0 | 364.50 |
| Second Floor | | | |
| | 19.0 x | 3.0 | 57.00 |
| | 45.9 x | 25.0 | 1148.21 |
| | 21.0 x | 13.0 | 273.00 |
| 0.5 x | 0.0 x | 10.0 | 0.14 |
| | 10.0 x | 9.0 | 90.00 |
| 0.5 x | 0.1 x | 25.0 | 0.89 |
| | 7.0 x | 10.0 | 70.00 |
| 17 Items | | (rounded) | 3763 |

## LOCATION MAP ADDENDUM

File No.   04ROZINFNLBP-14
Case No.   N/A

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 7957 Dahlia Circle | | | | | | |
| City | Buena Park | County | Orange | State | CA | Zip Code | 90620 |
| Lender/Client | David & Karen Rozier | | Address | 7957 Dahlia Circle, Buena Park, CA 90620 | | | |



## PLAT MAP

File No.   04ROZINFNLBP-14
Case No.   N/A

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | N/A | | | | | | |
| Property Address | 7957 Dahlia Circle | | | | | | |
| City | Buena Park | County | Orange | State | CA | Zip Code | 90620 |
| Lender/Client | David & Karen Rozier | | Address | 7957 Dahlia Circle, Buena Park, CA 90620 | | | |



**Aerial Map**

File No.    04ROZINFNLBP-14
Case No.  N/A

| Borrower | N/A | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 7957 Dahlia Circle | | | | | | | |
| City  Buena Park | | County | | Orange | State | CA | Zip Code | 90620 |
| Lender/Client    David & Karen Rozier | | | | Address  7957 Dahlia Circle, Buena Park, CA 90620 | | | | |



## SUBJECT PHOTO ADDENDUM

File No.    04ROZINFNLBP-14
Case No.    N/A

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | N/A | | | | | | |
| Property Address | 7957 Dahlia Circle | | | | | | |
| City | Buena Park | County | | Orange | State | CA | Zip Code | 90620 |
| Lender/Client | David & Karen Rozier | | Address | 7957 Dahlia Circle, Buena Park, CA 90620 | | | |



**FRONT OF
SUBJECT PROPERTY**
7957 Dahlia Circle
Buena Park, CA 90620



**REAR OF
SUBJECT PROPERTY**



**STREET SCENE**

## SUBJECT PHOTO ADDENDUM

File No.    04ROZINFNLBP-14
Case No.    N/A

| Borrower | N/A | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 7957 Dahlia Circle | | | | | | | |
| City | Buena Park | County | Orange | State | CA | Zip Code | 90620 | |
| Lender/Client | David & Karen Rozier | | Address | 7957 Dahlia Circle, Buena Park, CA 90620 | | | | |

1/2 Bathroom



Living Room



Bonus Room



**SUBJECT PHOTO ADDENDUM**

File No.   04ROZINFNLBP-14
Case No.  N/A

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower   N/A | | | | | | | |
| Property Address   7957 Dahlia Circle | | | | | | | |
| City  Buena Park | County | | Orange | State | CA | Zip Code | 90620 |
| Lender/Client   David & Karen Rozier | | | Address | 7957 Dahlia Circle, Buena Park, CA 90620 | | | |

Dining



Kitchen



Family Room



## SUBJECT PHOTO ADDENDUM

File No.    04ROZINFNLBP-14
Case No.  N/A

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower  N/A | | | | | | |
| Property Address    7957 Dahlia Circle | | | | | | |
| City  Buena Park | | County | Orange | State | CA | Zip Code    90620 |
| Lender/Client    David & Karen Rozier | | | Address | 7957 Dahlia Circle, Buena Park, CA 90620 | | |



Primary Bedroom



Primary Bathroom



Bedroom

## SUBJECT PHOTO ADDENDUM

File No.   04ROZINFNLBP-14
Case No. N/A

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 7957 Dahlia Circle | | | | | | |
| City  Buena Park | | County | Orange | State | CA | Zip Code | 90620 |
| Lender/Client | David & Karen Rozier | | Address | 7957 Dahlia Circle, Buena Park, CA 90620 | | | |

Steps



Bedroom



Bathroom



## SUBJECT PHOTO ADDENDUM

File No.    04ROZINFNLBP-14
Case No.   N/A

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | N/A | | | | | | |
| Property Address | 7957 Dahlia Circle | | | | | | |
| City  Buena Park | | County | Orange | State | CA | Zip Code | 90620 |
| Lender/Client | David & Karen Rozier | | Address | 7957 Dahlia Circle, Buena Park, CA 90620 | | | |

Bathroom





COMPARABLES 1-2-3

File No.    04ROZINFNLBP-14
Case No.   N/A

| | |
|---|---|
| Borrower    N/A | |
| Property Address    7957 Dahlia Circle | |
| City    Buena Park    County    Orange    State    CA    Zip Code    90620 | |
| Lender/Client    David & Karen Rozier    Address   7957 Dahlia Circle, Buena Park, CA 90620 | |



**COMPARABLE SALE #    1**
8524 Elm Circle
Buena Park, CA 90620



**COMPARABLE SALE #    2**
9532 Monterra Way
Buena Park, CA 90620



**COMPARABLE SALE #    3**
59 Centerstone Circle
Buena Park, CA 90620

COMPARABLES 4-5-6

File No.   04ROZINFNLBP-14
Case No.  N/A

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 7957 Dahlia Circle | | | | | | |
| City  Buena Park | | County | Orange | State | CA | Zip Code | 90620 |
| Lender/Client   David & Karen Rozier | | | Address   7957 Dahlia Circle, Buena Park, CA 90620 | | | | |



**COMPARABLE SALE #   4**
8571 Monticello Avenue
Buena Park, CA 90621



**COMPARABLE SALE #   5**
8602 Los Coyotes Drive
Buena Park, CA 90620



**COMPARABLE SALE #   6**
8550 Buena Tierra Circle
Buena Park, CA 90621

# INVOICE

**FROM:**
RICHARD BRINSMADE
2746 E. CAMERON AVENUE
WEST COVINA, CA. 91791

Telephone Number:          Fax Number:

| INVOICE NUMBER |
| --- |
| 698657 |

| DATE |
| --- |
| 7/17/2007 |

| REFERENCE |

**TO:**
FIRST CHOICE FUNDING
3237 GUASTI ROAD #300
ONTARIO, CA. 91761

ATTENTION: LY HOUNG
Telephone Number:          Fax Number:
Alternate Number:          E-Mail:

Internal Order #:
Lender Case #:
Client File #:
Main File # on form:    FCF BUENA PARK
Other File # on form:    ROZIER
Federal Tax ID:
Employer ID:

## DESCRIPTION

Lender: FIRST CHOICE FUNDING              Client: FIRST CHOICE FUNDING
Purchaser/Borrower: ROZIER
Property Address: 7957 DAHLIA CIRCLE
City: BUENA PARK
County: ORANGE              State: CA          Zip: 90620
Legal Description: LOT 4  TRACT 2630

| FEES | AMOUNT |
| --- | --- |
| URAR W/PHOTOS | 500.00 |
| **SUBTOTAL** | 500.00 |

| PAYMENTS | | | | AMOUNT |
| --- | --- | --- | --- | --- |
| Check #: | Date: | Description: PAID PARTIAL | | 350.00 |
| Check #: | Date: | Description: | | |
| Check #: | Date: | Description: | | |
| | | | **SUBTOTAL** | 350.00 |
| | | | **TOTAL DUE** | $    150.00 |

| Borrower/Client | ROZIER | | | File No. FCF BUENA PARK |
|---|---|---|---|---|
| Property Address | 7957 DAHLIA CIRCLE | | | |
| City | BUENA PARK | County ORANGE | State CA | Zip Code 90620 |
| Lender | FIRST CHOICE FUNDING | | | |

## TABLE OF CONTENTS

Summary of Salient Features ...... 1
URAR ...... 2
Additional Comparables 4-6 ...... 8
USPAP Identification ...... 9
Subject Photos ...... 10
Subject Photos Interior ...... 11
Subject Photos ...... 12
Comparable Photos 1-3 ...... 13
Comparable Photos 4-6 ...... 14
Full Page Letter - Page 1 ...... 15
Full Page Letter - Page 2 ...... 16
Full Page Letter - Page 3 ...... 17
Full Page Letter - Page 4 ...... 18
Full Page Letter - Page 1 ...... 19
Full Page Letter - Page 1 ...... 20

## SUMMARY OF SALIENT FEATURES

| | | |
|---|---|---|
| **SUBJECT INFORMATION** | Subject Address | 7957 DAHLIA CIRCLE |
| | Legal Description | LOT 4  TRACT 2630 |
| | City | BUENA PARK |
| | County | ORANGE |
| | State | CA |
| | Zip Code | 90620 |
| | Census Tract | 1104.01/3 |
| | Map Reference | 767 J-3 |
| **SALES PRICE** | Sale Price | $ N/A |
| | Date of Sale | N/A |
| **CLIENT** | Borrower / Client | ROZIER |
| | Lender | FIRST CHOICE FUNDING |
| **DESCRIPTION OF IMPROVEMENTS** | Size (Square Feet) | 3,825 |
| | Price per Square Foot | $ |
| | Location | AVERAGE |
| | Age | 50 YEARS |
| | Condition | GOOD |
| | Total Rooms | 10 |
| | Bedrooms | 3 |
| | Baths | 4 |
| **APPRAISER** | Appraiser | RICHARD BRINSMADE |
| | Date of Appraised Value | 7/17/2007 |
| **VALUE** | Final Estimate of Value | $ 925,000 |

**ROZIER**

## Uniform Residential Appraisal Report

File # FCF BUENA PARK

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address 7957 DAHLIA CIRCLE | City BUENA PARK   State CA   Zip Code 90620 |
| Borrower ROZIER   Owner of Public Record  ROZIER | County ORANGE |

Legal Description  LOT 4  TRACT 2630

| | | |
|---|---|---|
| Assessor's Parcel # 136-241-04 | Tax Year 2006 | R.E. Taxes $ 3,492.40 |
| Neighborhood Name BUENA PARK | Map Reference 767 J-3 | Census Tract 1104.01/3 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant   Special Assessments $ None   ☐ PUD   HOA $ ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☒ Refinance Transaction ☐ Other (describe)

Lender/Client  FIRST CHOICE FUNDING   Address  3237 E. GUASTI ROAD, STE #300, ONTARIO, CA, 91761

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).   FARES/MLS

☐ I did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.  N/A

Contract Price $ N/A   Date of Contract N/A   Is the property seller the owner of public record?  ☐ Yes ☐ No  Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?  ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.   N/A

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|
| Location | ☐ Urban ☒ Suburban ☐ Rural | | Property Values | ☐ Increasing ☒ Stable ☐ Declining | | PRICE $ (000) | AGE (yrs) | | One-Unit | 100 % |
| Built-Up | ☐ Over 75% ☒ 25-75% ☐ Under 25% | | Demand/Supply | ☐ Shortage ☒ In Balance ☐ Over Supply | | 250 Low | NEW | | 2-4 Unit | 0 % |
| Growth | ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time | ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | 900 High | 30 | | Multi-Family | 0 % |
| Neighborhood Boundaries   The subject is within the platted bounds of the neighborhood. | | | | | | 450 Pred. | 5 | | Commercial | 0 % |
| | | | | | | | | | Other | % |

Neighborhood Description   The neighborhood is primarily a residential area, composed of average homes with adequate maintenance and average appeal in the market.  The neighborhood appears to have reasonable access to schools, places of worship, employment, shopping, public transportation, freeway access and local CBD, and supporting services.  This neighborhood appears to have stable market value.

Market Conditions (including support for the above conclusions)   The market value in the area is stable, with supply remaining relatively the same, and values remaining stable.  Interest rates are low and points typically range from 0-3 points.  At this time, there is very little sales concessions or special financing.  Days on the market have remained relatively low.  This neighborhood is composed of similar housing with respect to design and quality

| | | |
|---|---|---|
| Dimensions SEE ATTACHED PLAT MAP | Area 8,366/SF   Shape RECTANGULAR | View CITY LIGHTS |

Specific Zoning Classification R-1   Zoning Description SINGLE FAMILY RESIDENTIAL

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?  ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street ASPHALT | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley NONE | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X500   FEMA Map # 0602150126H   FEMA Map Date 2/18/2004

Are the utilities and off-site improvements typical for the market area?  ☒ Yes ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?  ☐ Yes ☒ No  If Yes, describe

Site improvement and landscaping are typical for area.  No apparent encroachments, easements, or other detrimental conditions noted at time of inspection other than typical utility easements.  Site backs green belt area with power lines this doesnot appear to effect value or marketability.

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☒ Concrete Slab ☐ Crawl Space | | Foundation Walls | CONCRETE SLAB | Floors | CARPET/TILE/GD |
| # of Stories 2 | | ☐ Full Basement ☐ Partial Basement | | Exterior Walls | STUCCO/GOOD | Walls | DRYWALL/GOOD |
| Type ☒ Det. ☐ Att. ☐ S-Det/End Unit | | Basement Area  N/A sq.ft. | | Roof Surface | COMP ROOF/GOOD | Trim/Finish | WOOD/GOOD |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish  N/A % | | Gutters & Downspouts | ALUM/GOOD | Bath Floor | TILE/GOOD |
| Design (Style) 2 STORY | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type | DUAL PAN/GOOD | Bath Wainscot | TILE/GOOD |
| Year Built 1957/ 2005 | | Evidence of ☐ Infestation Unknown | | Storm Sash/Insulated | N/A | Car Storage | ☐ None |
| Effective Age (Yrs) 5 YEARS | | ☐ Dampness ☐ Settlement | | Screens | Yes/Yes | ☒ Driveway   # of Cars  2 |
| Attic | ☒ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities | ☐ Woodstove(s) # | Driveway Surface  Concrete |
| ☐ Drop Stair ☐ Stairs | | ☐ Other   Fuel  Elec. | | ☒ Fireplace(s) # 1 ☒ Fence | | ☒ Garage   # of Cars  2 |
| ☐ Floor ☒ Scuttle | | Cooling ☒ Central Air Conditioning | | ☒ Patio/Deck ☒ Porch | | ☐ Carport   # of Cars |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other | | ☐ Pool ☐ Other | | ☐ Att. ☒ Det. ☐ Built-In |

Appliances ☐ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains:   10 Rooms   3 Bedrooms   4 Bath(s)   3,825 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).   The rear patio and front porch;  insulated with double-paned windows.  Ceramic tile and A/C.  Ceiling fans; Vaulted ceilings; Mirrored wardrobe doors; patio with built-in spa; block wall. Total remodel with new additions new electrical.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   The property is in generally good condition and has been well maintained by the current owner.  Repairs and conditions are consistent of other properties in this age bracket, and are due primarily to normal wear & tear on the property. The subject has had over 1800/sf of permitted additions which are completed in a conforming and workman like manner.  The appraiser viewed the permits from the city of Buena Park.  Also a office loft above the garage.
#16293.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?  ☐ Yes ☒ No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?  ☒ Yes ☐ No  If No, describe

| | | |
|---|---|---|
| Freddie Mac Form 70 March 2005 | Page 1 of 6 | Fannie Mae Form 1004 March 2005 |

ROZIER
File # FCF BUENA PARK

# Uniform Residential Appraisal Report

| There are | 12 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ | 229,900 | | to $ | 799,900 | . |
|---|---|---|---|---|---|---|---|
| There are | 22 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ | 210,000 | | to $ | 675,000 | . |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 7957 DAHLIA CIRCLE | 5521 EMERYWOOD DRIVE | | 8310 WAVERLY CIRCLE | | 10 WOODSPRING COVE | |
| | BUENA PARK, CA 90620 | BUENA PARK, CA 90620 | | BUENA PARK, CA 90620 | | BUENA PARK, CA 90620 | |
| Proximity to Subject | | .78 MILE | | 1.52 MILE | | 1.62 MILE | |
| Sale Price | $ N/A | | $ 1,000,000 | | $ 870,000 | | $ 1,075,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 297.80 sq.ft. | | $ 302.29 sq.ft. | | $ 275.64 sq.ft. | |
| Data Source(s) | | MLS/FARES | | MLS/FARES | | MLS/FARES | |
| Verification Source(s) | | DOC# 586266 | | DOC# 730540 | | DOC# 702357 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | 1ST TD | | 1ST TD | | 1ST TD | |
| Concessions | | $806,400 | | $612,000 | | $940,000 | |
| Date of Sale/Time | | 5/29/2007 | | 3/15/2007 | | 5/18/2007 | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 8,366/SF | 12,150/SF | -10,000 | 52,750/SF | -20,000 | 7,300/SF | |
| View | CITY LIGHTS | CITY LIGHTS | | CITY LIGHTS | | CITY LIGHTS | |
| Design (Style) | 2 STORY | 2 STORY | | 2 STORY | | 2 STORY | |
| Quality of Construction | GOOD | GOOD | | GOOD | | GOOD | |
| Actual Age | 50 YEARS | 33 YEARS | | 48 YEARS | | 8 YEARS | -20,000 |
| Condition | GOOD | GOOD | | GOOD | | GOOD | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 10 3 4 | 9 5 3.5 | -10,000 | 6 3 2.5 | | 12 6 5.5 | -20,000 |
| Gross Living Area | 3,825 sq.ft. | 3,358 sq.ft. | +25,000 | 2,878 sq.ft. | +50,000 | 3,900 sq.ft. | |
| Basement & Finished | NONE | NONE | | NONE | | NONE | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | TYPICAL | TYPICAL | | TYPICAL | | TYPICAL | |
| Heating/Cooling | FAU/CAC | FAU/CAC | | FAU/CAC | | FAU/CAC | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | 2 GARAGE | 3 GARAGE | -10,000 | 2 GARAGE | | 2 GARAGE | |
| Porch/Patio/Deck | PORCH/PATIO | PORCH/PATIO | | PORCH/PATIO | | PORCH/PATIO | |
| | UPGRADES | UPGRADES | | INFERIOR | +10,000 | UPGRADES | |
| | REMODEL | REMODEL | | INFERIOR | +10,000 | REMODEL | |
| | | POOL/SPA | -20,000 | | | POOL&SPA | -20,000 |
| Net Adjustment (Total) | | ☐ + ☒ - | $ 25,000 | ☒ + ☐ - | $ 50,000 | ☐ + ☒ - | $ 60,000 |
| Adjusted Sale Price | | | | | | | |
| of Comparables | | | $ 975,000 | | $ 920,000 | | $ 1,015,000 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 7/16/1999 | 7/1/1983 | 5/22/2002 | 11/21/1999 |
| Price of Prior Sale/Transfer | $185,000 | $83,000 | $230,200 | $704,000 |
| Data Source(s) | MLS System | MLS System | MLS System | MLS System |
| Effective Date of Data Source(s) | 7/17/2007 | 7/17/2007 | 7/17/2007 | 7/17/2007 |

Analysis of prior sale or transfer history of the subject property and comparable sales   All of the comparable sales in the appraisal report appear to support the value estimate conclusion. They are all deemed very similar in age, style, condition and size as well as design & appeal. therefore the value estimate conclusion is considered to be very well supported.

Summary of Sales Comparison Approach   Sales recited are from subject neighborhood and are in acceptable proximity to the subject. They are the most recent and most comparable found. All value affecting dissimilarities were adjusted according to market reaction. Secondary market standards for net and gross adjustment percentages were met. The indicated range of values brackets the value of the subject. Greater weight is given Sales #1 and #2 in the reconciliation. Sale #4 also supports value. Comps in the report are further then typical due to the subject being larger the most of the dwellings and newly remodeled.

Indicated Value by Sales Comparison Approach $ 925,000

| Indicated Value by Sales Comparison Approach $ 925,000 | Cost Approach (if developed) $ 925,183 | Income Approach (if developed) $ |
|---|---|---|

Market actions of buyers and sellers are best analyzed by the Sales Comparison Approach. That approach is given greatest weight in the reconciliation. The Cost Approach provides confirmation of value only. The Income Approach was not developed.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: This is not a rental neighborhood, and insufficient data is available for the Income Approach. This is a summary report of a limited appraisal as defined by SR 2-2(b), USPAP.
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 925,000 , as of 7/17/2007 , which is the date of inspection and the effective date of this appraisal.

## Uniform Residential Appraisal Report

ROZIER
File # FCF BUENA PARK

**ADDITIONAL COMMENTS**

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

| | | | | | |
|---|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ | 475,000 |
| Source of cost data | DWELLING | 3,825 Sq.Ft. @ $ | 120.00 | =$ | 459,000 |
| Quality rating from cost service     Effective date of cost data | | Sq.Ft. @ $ | | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | SPA | | | =$ | 10,000 |
| N/A | Garage/Carport | 600 Sq.Ft. @ $ | 25.00 | =$ | 15,000 |
| | Total Estimate of Cost-New | | | =$ | 484,000 |
| | Less | Physical | Functional | External | |
| | Depreciation | 48,817 | 5,000 | =$( | 53,817) |
| | Depreciated Cost of Improvements | | | =$ | 430,183 |
| | "As-is" Value of Site Improvements | | | =$ | 20,000 |
| Estimated Remaining Economic Life (HUD and VA only)     55 Years | INDICATED VALUE BY COST APPROACH | | | =$ | 925,183 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $     N/A     X Gross Rent Multiplier     N/A     = $     Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☒ No     Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

Total number of phases     Total number of units     Total number of units sold

Total number of units rented     Total number of units for sale     Data source(s)

Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No If Yes, date of conversion.

Does the project contain any multi-dwelling units? ☐ Yes ☐ No Data Source

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.     Pool/Workout Area/Golf Course

File No. FCF BUENA PARK | Page #:9

## Uniform Residential Appraisal Report

ROZIER
File # FCF BUENA PARK

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. FCF BUENA PARK] Page #6

**Uniform Residential Appraisal Report**

ROZIER
File # FCF BUENA PARK

---

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

---

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. FCF BUENA PARK | Page #7

ROZIER

## Uniform Residential Appraisal Report

File # FCF BUENA PARK

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  RICHARD BRINSMADE | Name |
| Company Name  RICHARD BRINSMADE | Company Name |
| Company Address  2746 E. CAMERON AVENUE | Company Address |
| WEST COVINA, CA. 91791 | |
| Telephone Number  (626) 833-6649 | Telephone Number |
| Email Address  SHERRI@SHERRILANE.NET | Email Address |
| Date of Signature and Report  JULY 21, 2007 | Date of Signature |
| Effective Date of Appraisal  7/17/2007 | State Certification # |
| State Certification # | or State License # |
| or State License #  AL016406 | State |
| or Other (describe) ____ State # CA | Expiration Date of Certification or License |
| State  CA | |
| Expiration Date of Certification or License  12/2007 | SUBJECT PROPERTY |

| | |
|---|---|
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 7957 DAHLIA CIRCLE | Date of Inspection |
| BUENA PARK, CA 90620 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $   925,000 | Date of Inspection |
| LENDER/CLIENT | |
| Name  LY HOUNG | COMPARABLE SALES |
| Company Name  FIRST CHOICE FUNDING | |
| Company Address  3237 E. GUASTI ROAD, STE #300, ONTARIO, | ☐ Did not inspect exterior of comparable sales from street |
| CA. 91761 | ☐ Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection |

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. FCF BUENA PARK Page #8

## Uniform Residential Appraisal Report

ROZIER
File # FCF BUENA PARK

| FEATURE | SUBJECT | COMPARABLE SALE #4 | | COMPARABLE SALE #5 | | COMPARABLE SALE #6 | |
|---|---|---|---|---|---|---|---|
| Address 7957 DAHLIA CIRCLE BUENA PARK, CA 90620 | | 8392 BONNIE BRAE DRIVE BUENA PARK, CA 90620 | | | | | |
| Proximity to Subject | | 1.78 MILE | | | | | |
| Sale Price | $ N/A | $ 875,000 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 328.08 sq.ft. | | $ sq.ft. | | $ sq.ft. | |
| Data Source(s) | | MLS/FARES | | | | | |
| Verification Source(s) | | DOC# 805600 | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | 1ST TD | | | | | |
| Concessions | | $763,410 | | | | | |
| Date of Sale/Time | | 3/16/2007 | | | | | |
| Location | AVERAGE | AVERAGE | | | | | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | | | | |
| Site | 8,366/SF | 22,375/SF | -5,000 | | | | |
| View | CITY LIGHTS | CITY LIGHTS | | | | | |
| Design (Style) | 2 STORY | 2 STORY | | | | | |
| Quality of Construction | GOOD | GOOD | | | | | |
| Actual Age | 50 YEARS | 49 YEAR | | | | | |
| Condition | GOOD | GOOD | | | | | |
| Above Grade | Total 10 / Bdrms. 3 / Baths 4 | Total 8 / Bdrms. 4 / Baths 2.5 | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | | | | | | | |
| Gross Living Area | 3,825 sq.ft. | 2,667 sq.ft. | +55,000 | sq.ft. | | sq.ft. | |
| Basement & Finished | NONE | NONE | | | | | |
| Rooms Below Grade | N/A | N/A | | | | | |
| Functional Utility | TYPICAL | TYPICAL | | | | | |
| Heating/Cooling | FAU/CAC | FAU/CAC | | | | | |
| Energy Efficient Items | STANDARD | STANDARD | | | | | |
| Garage/Carport | 2 GARAGE | 2 GARGE | | | | | |
| Porch/Patio/Deck | PORCH/PATIO UPGRADES REMODEL | PORCH/PATIO UPGRADES REMODEL | | | | | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 50,000 | ☐ + ☐ - | $ | ☐ + ☐ - | $ |
| Adjusted Sale Price of Comparables | | | $ 925,000 | | $ | | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #4 | COMPARABLE SALE #5 | COMPARABLE SALE #6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 7/16/1999 | 1/31/1995 | | |
| Price of Prior Sale/Transfer | $185,000 | $150,000 | | |
| Data Source(s) | MLS System | MLS SYSTEM | | |
| Effective Date of Data Source(s) | 7/17/2007 | 7/17/2007 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

File No. FCF BUENA PARK| Page #31

| Borrower/Client | ROZIER | | | File No. FCF BUENA PARK |
|---|---|---|---|---|
| Property Address | 7957 DAHLIA CIRCLE | | | |
| City | BUENA PARK | County ORANGE | State CA | Zip Code 90620 |
| Lender | FIRST CHOICE FUNDING | | | |

## APPRAISAL AND REPORT IDENTIFICATION

**This appraisal conforms to one of the following definitions:**

☒ **Complete Appraisal** (The act or process of estimating value, or an opinion of value, performed without invoking the Departure Rule.)

☐ **Limited Appraisal** (The act or process of estimating value, or an opinion of value, performed under and resulting from invoking the Departure Rule.)

**This report is one of the following types:**

☐ **Self Contained** (A written report prepared under Standards Rule 2-2(a) of a Complete or Limited Appraisal performed under STANDARD 1.)

☒ **Summary** (A written report prepared under Standards Rule 2-2(b) of a Complete or Limited Appraisal performed under STANDARD 1.)

☐ **Restricted** (A written report prepared under Standards Rule 2-2(c) of a Complete or Limited Appraisal performed under STANDARD 1, restricted to the stated intended use by the specified client or intended user.)

## Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:

The statements of fact contained in this report are true and correct.
The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions and conclusions.
I have no (or the specified) present or prospective interest in the property that is the subject of this report, and no (or the specified) personal interest with respect to the parties involved.
I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
My engagement in this assignment was not contingent upon developing or reporting predetermined results.
My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
My analyses, opinions and conclusions were developed and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.
I have (or have not) made a personal inspection of the property that is the subject of this report.
No one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance must be stated.)

## Comments on Appraisal and Report Identification
Note any departures from Standards Rules 1-3 and 1-4, plus any USPAP-related issues requiring disclosure:

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: | Signature: |
| Name: RICHARD BRINSMADE | Name: |
| Date Signed: JULY 21, 2007 | Date Signed: |
| State Certification #: | State Certification #: |
| or State License #: AL016406 | or State License #: |
| State: CA | State: |
| Expiration Date of Certification or License: 12/2007 | Expiration Date of Certification or License: |
| | ☐ Did   ☐ Did Not   Inspect Property |

## Subject Photo Page

| Borrower/Client | ROZIER | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 7957 DAHLIA CIRCLE | | | | | |
| City | BUENA PARK | County | ORANGE | State | CA | Zip Code | 90620 |
| Lender | FIRST CHOICE FUNDING | | | | | |



**Subject Front**

7957 DAHLIA CIRCLE

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 3,825 |
| Total Rooms | 10 |
| Total Bedrooms | 3 |
| Total Bathrooms | 4 |
| Location | AVERAGE |
| View | CITY LIGHTS |
| Site | 8,366/SF |
| Quality | GOOD |
| Age | 50 YEARS |



**Subject Rear**



**Subject Street**

File No. FCF BUENA PARK | Page # 11

## Subject Interior Photo Page

| Borrower/Client | ROZIER | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 7957 DAHLIA CIRCLE | | | | | |
| City | BUENA PARK | County | ORANGE | State | CA | Zip Code 90620 |
| Lender | FIRST CHOICE FUNDING | | | | | |



**Subject Interior**

7957 DAHLIA CIRCLE
| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 3,825 |
| Total Rooms | 10 |
| Total Bedrooms | 3 |
| Total Bathrooms | 4 |
| Location | AVERAGE |
| View | CITY LIGHTS |
| Site | 8,366/SF |
| Quality | GOOD |
| Age | 50 YEARS |



**Subject Interior**



**Subject Interior**

## Subject Photo Page

| Borrower/Client | ROZIER | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 7957 DAHLIA CIRCLE | | | | | |
| City | BUENA PARK | County | ORANGE | State | CA | Zip Code 90620 |
| Lender | FIRST CHOICE FUNDING | | | | | |



**Subject Front**

7957 DAHLIA CIRCLE
Sales Price          N/A
Gross Living Area    3,825
Total Rooms          10
Total Bedrooms       3
Total Bathrooms      4
Location             AVERAGE
View                 CITY LIGHTS
Site                 8,366/SF
Quality              GOOD
Age                  50 YEARS



**Subject Rear**



**Subject Street**

## Comparable Photo Page

| | |
|---|---|
| Borrower/Client | ROZIER |
| Property Address | 7957 DAHLIA CIRCLE |
| City | BUENA PARK | County ORANGE | State CA | Zip Code 90620 |
| Lender | FIRST CHOICE FUNDING |



### Comparable 1

5521 EMERYWOOD DRIVE

| | |
|---|---|
| Prox. to Subject | .78 MILE |
| Sale Price | 1,000,000 |
| Gross Living Area | 3,358 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 3.5 |
| Location | AVERAGE |
| View | CITY LIGHTS |
| Site | 12,150/SF |
| Quality | GOOD |
| Age | 33 YEARS |



### Comparable 2

8310 WAVERLY CIRCLE

| | |
|---|---|
| Prox. to Subject | 1.52 MILE |
| Sale Price | 870,000 |
| Gross Living Area | 2,878 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | AVERAGE |
| View | CITY LIGHTS |
| Site | 52,750/SF |
| Quality | GOOD |
| Age | 48 YEARS |



### Comparable 3

10 WOODSPRING COVE

| | |
|---|---|
| Prox. to Subject | 1.62 MILE |
| Sale Price | 1,075,000 |
| Gross Living Area | 3,900 |
| Total Rooms | 12 |
| Total Bedrooms | 6 |
| Total Bathrooms | 5.5 |
| Location | AVERAGE |
| View | CITY LIGHTS |
| Site | 7,300/SF |
| Quality | GOOD |
| Age | 8 YEARS |

## Comparable Photo Page

| | |
|---|---|
| Borrower/Client | ROZIER |
| Property Address | 7957 DAHLIA CIRCLE |
| City | BUENA PARK |

| | | | | | | |
|---|---|---|---|---|---|---|
| City | BUENA PARK | County | ORANGE | State | CA | Zip Code | 90620 |

| | |
|---|---|
| Lender | FIRST CHOICE FUNDING |



### Comparable 4

8392 BONNIE BRAE DRIVE

| | |
|---|---|
| Prox. to Subject | 1.78 MILE |
| Sale Price | 875,000 |
| Gross Living Area | 2,667 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.5 |
| Location | AVERAGE |
| View | CITY LIGHTS |
| Site | 22,375/SF |
| Quality | GOOD |
| Age | 49 YEAR |

### Comparable 5

Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age

### Comparable 6

Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age

## Full Page Letter – Page 1



## Full Page Letter – Page 2

Ref ID: 1

# Property Detail Report

**RealQuest®.com**

For Property Located At

## 7957 DAHLIA CIR, BUENA PARK CA 90620-1901

### *Owner Information:*

| | |
|---|---|
| Owner Name: | **ROZIER KAREN M** |
| Mailing Address: | **7957 DAHLIA CIR, BUENA PARK CA 90620-1901 C019 (No Mail)** |
| Phone Number: | Vesting Codes: **MW / /** |

### *Location Information:*

| | | | |
|---|---|---|---|
| Legal Description: | **N TR 2630 LOT 4** | | |
| County: | **ORANGE, CA** | APN: | **136-241-04** |
| Census Tract / Block: | **1104.01 / 3** | Alternate APN: | |
| Township-Range-Sect: | | Subdivision: | **2630** |
| Legal Book/Page: | | Map Reference: | **10-C2 / 767-J3** |
| Legal Lot: | **4** | Tract #: | **2630** |
| Legal Block: | | School District: | **ANAHEIM UN** |
| Market Area: | | Munic/Township: | |
| Neighbor Code: | | | |

### *Owner Transfer Information:*

| | | | |
|---|---|---|---|
| Recording/Sale Date: | **11/29/1999 / 11/22/1999** | Deed Type: | **GRANT DEED** |
| Sale Price: | | 1st Mtg Document #: | **816084** |
| Document #: | **816083** | | |

### *Last Market Sale Information:*

| | | | |
|---|---|---|---|
| Recording/Sale Date: | **07/16/1999 / 06/24/1999** | 1st Mtg Amount/Type: | **$183,487 / FHA** |
| Sale Price: | **$185,000** | 1st Mtg Int. Rate/Type: | **/ ADJ** |
| Sale Type: | **FULL** | 1st Mtg Document #: | **524888** |
| Document #: | **524887** | 2nd Mtg Amount/Type: | **/** |
| Deed Type: | **GRANT DEED** | 2nd Mtg Int. Rate/Type: | **/** |
| Transfer Document #: | | Price Per SqFt: | **$88.14** |
| New Construction: | | Multi/Split Sale: | |
| Title Company: | **CHICAGO TITLE CO.** | | |
| Lender: | **MARBLE GEORGE & MCGINLEY INC** | | |
| Seller Name: | **BOBKO MICHAEL S** | | |

### *Prior Sale Information:*

| | | | |
|---|---|---|---|
| Prior Rec/Sale Date: | **03/07/1978 /** | Prior Lender: | |
| Prior Sale Price: | **$70,000** | Prior 1st Mtg Amt/Type: | **$70,000 / CONV** |
| Prior Doc Number: | **1265901767** | Prior 1st Mtg Rate/Type: | **/** |
| Prior Deed Type: | **DEED (REG)** | | |

### *Property Characteristics:*

| | | | | | |
|---|---|---|---|---|---|
| Gross Area: | **2,099** | Parking Type: | **GARAGE/ CARPORT** | Construction: | |
| Living Area: | **2,099** | Garage Area: | | Heat Type: | |
| Tot Adj Area: | | Garage Capacity: | **3** | Exterior wall: | |
| Above Grade: | | Parking Spaces: | | Porch Type: | |
| Total Rooms: | **6** | Basement Area: | | Patio Type: | |
| Bedrooms: | **3** | Finish Bsmnt Area: | | Pool: | |
| Bath(F/H): | **1 / 1** | Basement Type: | | Air Cond: | **CENTRAL** |
| Year Built / Eff: | **1957 /** | Roof Type: | | Style: | |
| Fireplace: | **Y / 1** | Foundation: | | Quality: | |
| # of Stories: | **3.00** | Roof Material: | | Condition: | |
| Other Improvements: | | | | | |

### *Site Information:*

| | | | | | |
|---|---|---|---|---|---|
| Zoning: | | Acres: | **0.19** | County Use: | **SINGLE FAM RESIDENCE (1)** |
| Flood Zone: | **X500** | Lot Area: | **8,366** | State Use: | |
| Flood Panel: | **0602150126H** | Lot Width/Depth: | **89 x 94** | Site Influence: | |
| Flood Panel Date: | **02/18/2004** | Res/Comm Units: | **/** | Sewer Type: | |
| Land Use: | **SFR** | | | Water Type: | **PUBLIC** |

### *Tax Information:*

| | | | | | |
|---|---|---|---|---|---|
| Total Value: | **$319,111** | Assessed Year: | **2006** | Property Tax: | **$3,492.40** |
| Land Value: | **$146,531** | Improve %: | **054%** | Tax Area: | **14070** |
| Improvement Value: | **$172,580** | Tax Year: | **2006** | Tax Exemption: | **HOMEOWNER** |

Form SCNLTR — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Full Page Letter – Page 3



## Full Page Letter – Page 4



ClickFORMS Appraisal Software 800-622-8727                          Page   10   of   18

**Full Page Letter – Page 1**



## Full Page Letter – Page 1



GENERAL STAR NATIONAL INSURANCE COMPANY
P.O. Box 10354
Stamford, Connecticut  06904

### REAL ESTATE APPRAISERS ERRORS & OMISSIONS LIABILITY INSURANCE POLICY

### DECLARATIONS PAGE

This is a claims made and reported policy.
Please read this policy and all endorsements and attachments carefully.

Policy Number:    NJA942877                    Renewal of Number:

1.  **NAMED INSURED:**     Richard Brinsmade
    **MAILING ADDRESS:**   2746 Cameron Avenue
                           West Covina, CA 91791

2.  **POLICY PERIOD:**  Inception Date: 09/26/2006          Expiration Date:  09/26/2007
    Effective 12:01 a.m. Standard Time at the mailing address of the Named Insured.

3.  **LIMIT OF LIABILITY:**
    Each Claim:            $ 1,000,000
    Aggregate:             $ 2,000,000
    Lock Box Liability:    N/A

4.  **CLAIM EXPENSES:**
    b.  Have a separate limit of liability.

5.  **STATUS OF INSURED:**  Sole Proprietorship

6.  **DEDUCTIBLE:**
    Each Claim:            $500/1,000
    b.  The deductible amount specified above applies to both Damages and Claims Expenses.

7.  **PRIOR ACTS DATE:**    09/26/2006
    If a date is indicated, this insurance will not apply to any regular act, error, omission or personal injury
    which occurred before such date.

8.  **PREMIUM:**            $   733.00

9.  **ENDORSEMENTS:**
    This policy is made and accepted such to the printed conditions in this policy together with the provisions,
    stipulations and agreements contained in the following form(s) or endorsement(s).
    GSN-06-RE-122 (07/2004)
    06-PL-201 (07/2004)    GSN-07-PL-375 (02/2006)

10. **MANAGING AGENT**
    Herbert H. Landy Insurance Agency, Inc.
    75 Second Avenue, Suite 410
    Needham, Massachusetts  02494-2876

    Producer Code: 00026230
    Date: 09/26/2006

    *Herb Sffandy*
    Authorized Representative

    Class Code: 73128
    SLAP:

GSN-06-RE-720 (03/2005)

# EXHIBIT "C"

# EXHIBIT "O"

# PUBLIC SERVICE INFORMATION FORM

**SFR / TH / CONDO**

ORANGE COUNTY ASSESSOR
WEBSTER J. GUILLORY

'2 NOV 27 PM 12:42

| REQUESTED BY | |
|---|---|
| ADDRESS | |
| | |
| TEL. # ( ) | |
| SIGNATURE | |

**DESIGN TYPE CODES**

001 - SINGLE FAMILY RESIDENCE

999 - MISC. IMPROVEMENTS

| 1 | 2 | 3 | 4 | 5 | BLDG SIZE | | | 8 | 9 | 10 | 11 | 12 | 13 | 14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| APN | BLDG# | CONST YEAR | USE CODE | DESIGN TYPE | 1st FL | 2nd FL | 3rd FL | ADD SIZE | | FINISHED BSMT SIZE | TOTAL BEDRMS & BATH | GARAGE/ CARPORT SIZE | POOL Y/N | LAND SIZE |
| 136.241.04 | 002 | 1999 | SF | SF | 2144 | 1321 | ✕ | ✕ | ✕ | ✕ | 3 4 | 500 | N | 836 |
| | (Re-hab) | | | | (tot = 3465 ) | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |

AUTHORIZED BY

| CHECK | AMOUNT $ |
|---|---|
| CASH | AMOUNT $ |
| MAILED DATE | BY |
| M.S. | |

MS excel (R 4/03)

ORANGE COUNTY ASSESSOR DEPARTMENT

NOTICE

## Property Characteristics Information

*The people of the State of California do enact as follows:*

SECTION 1. Section 408.3 added to the Revenue and Taxation Code, to read:

408.3 (d) The Legislature finds and declares that information concerning property characteristics is maintained solely for assessment purposes and is not continuously updated by the assessor. Therefore, neither the county nor the assessor shall incur any liability for errors, omissions, or approximations with respect to property characteristics information provided by the assessor to any party pursuant to this section. Further, this subdivision shall not be construed to imply liability on the part of the county or the assessor for errors, omissions, or other defects in any other information or records provided by the assessor pursuant to the provisions of this part.

Case CC-12-1359

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

Appeals Case 13-60106

Bankruptcy Appellate Panel No. CC-12-1359

Bankruptcy Case No. 8:11-21727-CB

**In re KAREN MICHELE ROZIER**

**Karen Michele Rozier,**

*Debtor, and Appellant Without Legal Representation*

**vs.**

**U.S. Bank National Association, as Trustee, as successor in interest to Bank of America National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for RAAC 2007 RP1**

*Appellee*

# APPELLANT'S
EXCERPTS OF RECORD

Branch :F7I,User :TZ12
Case 8:11-bk-21727-CB    Doc 42-1    Filed 06/18/12    Entered 06/18/12 11:20:04    Desc
Exhibit (s) 1 - 4    Page 24 of 35

Comment:                                         Station Id :V92Z

## EXHIBIT "A"

LOT(S) 4  OF TRACT NO. 2630, IN THE CITY OF BUENA PARK,
COUNTY OF ORANGE, STATE OF CALIFORNIA AS PER MAP RECORDED IN
BOOK 77, PAGE(S) 10-12 INCLUSIVE OF MISCELLANEOUS MAPS, IN
THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.



# EXHIBIT 1



A GE Money Company

WMC Mortgage Corp., 3100 Thornton Avenue, Burbank, California 91504
800 542 6508 • www.wmcmortgage.com

*(818) 615 107*

*7.6%*

*1 March / phone can w/ Nicole follow up on closing*

February 24, 2006

KAREN ROZIER
7957 DAHLIA CIRCLE
BUENA PARK, CA 90620

Dear KAREN ROZIER,

In an effort to maintain the highest level of customer service, WMC Mortgage Corp. routinely conducts self-audits of our originated loans. A review of your file indicated that the payment stream and/or other amounts disclosed (such as the finance charge and/or APR) on your final Truth-In-Lending Statement were based on an outdated index that was different than the one that should have been used. Enclosed with this letter is a new Final Truth-in-Lending Disclosure Statement, which reflects the correct payment stream and/or other disclosed amounts based on the index that should have been used.

Also enclosed are two (2) copies, for each person who is entitled to a copy, of the Notice of the Right to Cancel. Because your loan includes a three business day right to cancel period, and WMC is sending you a revised TIL Disclosure Statement, you have three business days to cancel this loan if you choose to. The instructions on the Notice will explain how the process works.

The monthly payments that you are making now, and the payments you will make during the remainder of the fixed rate period, are not affected in any way by this change. This change does not affect the terms of your loan, as outlined in the note and your other loan documents.

If you have any questions related to this correspondence, please do not hesitate to contact WMC, at (866) 642-2962.

Sincerely,

*EXHIBIT 5*   *Libor was used/ shall have been used*

WMC Mortgage Corp.

*to calculate payments*

*roothled @ WMCdirect.com*   *FReddy very efit manager Lead/Coll*

**A GE Money Company**
**wmcmortgage**

WMC Mortgage Corp., 3100 Thornton Avenue, Burbank, California 91504
800 542 6508 · www.wmcmortgage.com

May 05, 2006

Karen M. Rozier
7957 Dahlia Circle
Orange, CA 90620

Re:    Loan #: 11432468
Property Address: 7957 Dahlia Circle, Orange CA 90620
Loan Amount: $576,000.00

Mr. Karen M. Rozier

WMC Mortgage is in receipt of your "Notice of Right to Cancel" rescinding your loan with reference to Litton # 201141112 / WMC # 11432468. WMC Mortgage extends to you three options in response to your cancellation:

Option 1:    You may obtain financing to return to WMC Mortgage the original balance of the loan, less the fees and charges assessed to you for obtaining the home loan referenced above.

Option 2:    You may return to WMC Mortgage the original balance of the loan from cash assets you hold, less the fees and charges assessed to you for obtaining the home loan.

Option 3:    WMC Mortgage will modify your loan to the rate in effect on your previous mortgage loan which was paid off through this transaction as well refund the fees and charges you incurred in acquiring your WMC loan referenced above.

These options are designed to give you the flexibility to determine the best resolution for you. Please advise WMC Mortgage in writing which option is best for you as we look forward to the resolution of this matter.

Sincerely,

Robert Rothleder
Vice President Production Operations

EXHIBIT 6
107 of 215
VOLUME 2

 


A GE Money Company

WMC Mortgage Corp., 3100 Thornton Ave.,
P.O. Box 5534 • www.wmcmortgage.com

June 6, 2006

Karen Kozier
7957 Dahlia Circle
Buena Park CA 90620

RE:  WMC Loan # 11432468

Dear Karen,

Thank you for the opportunity to close your loan for the property located at 7957 Dahlia Circle,
Street. Buena Park CA 90620

Enclosed you will find a check in the amount of $28,352.20, which represents lender credit for
closing fees.

Should you have any questions, please feel free to contact me at (818) 736-5653.

Sincerely,

Robert Rothfeder
Vice President of
Production Operations
(818) 736-5653

EXHIBIT 7

KAREN M ROZIER

7957 DAHLIA CIR
BUENA PARK , CA   90620


GE Capital

1517733

ACCEPTANCE AND ENDORSEMENT WILL ACKNOWLEDGE PAYMENT IN FULL OF ACCOUNT DETAILED BELOW

CORRESPONDENCE SHOULD REFER
TO THE ABOVE VOUCHER NUMBER

| DATE | CHECK NO. | COMMENTS | AMOUNT |
|------|-----------|----------|--------|
| 06/06/06 | 1517733 | LOAN # 11432469 | $28,852.20 |

EX/7 8

DETATCH BEFORE DEPOSITING

A GE Money Company

wmcmortgage

WMC Mortgage Corp., 3100 Thornton Avenue, Burbank, California 91504
800 542 6508 · www.wmcmortgage.com

for (818) 615 1071

7.6%

1 March
phone call w/
Nicole follow
up on closing

February 24, 2006

KAREN ROZIER
7957 DAHLIA CIRCLE
BUENA PARK, CA 90620

Dear KAREN ROZIER,

In an effort to maintain the highest level of customer service, WMC Mortgage Corp. routinely conducts self-audits of our originated loans. A review of your file indicated that the payment stream and/or other amounts disclosed (such as the finance charge and/or APR) on your final Truth-In-Lending Statement were based on an outdated index that was different than the one that should have been used. Enclosed with this letter is a new Final Truth-in-Lending Disclosure Statement, which reflects the correct payment stream and/or other disclosed amounts based on the index that should have been used.

Also enclosed are two (2) copies, for each person who is entitled to a copy, of the Notice of the Right to Cancel. Because your loan includes a three business day right to cancel period, and WMC is sending you a revised TIL Disclosure Statement, you have three business days to cancel this loan if you choose to. The instructions on the Notice will explain how the process works.

The monthly payments that you are making now, and the payments you will make during the remainder of the fixed rate period, are not affected in any way by this change. This change does not affect the terms of your loan, as outlined in the note and your other loan documents.

If you have any questions related to this correspondence, please do not hesitate to contact WMC, at (866) 642-2962.

Sincerely,

EXHIBT 5   Libor was used
shall have been used

WMC Mortgage Corp.

rooth led @   to calculate payments   very high
WMCdirect.com   Freddy
manager

# NOTICE OF RIGHT TO CANCEL

LENDER: WMC MORTGAGE CORP.
3100 THORNTON AVE
BURBANK, CA 91504

DATE: 2/24/2006
LOAN NO.: 11432468
TYPE: Conventional

BORROWERS: KAREN ROZIER

| | |
|---|---|
| ADDRESS: | 7957 DAHLIA CIRCLE |
| CITY/STATE/ZIP: | BUENA PARK, CA 90620 |
| PROPERTY: | 7957 DAHLIA CIRCLE, BUENA PARK , CA 90620 |

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within **THREE BUSINESS DAYS** from whichever of the following events occurs **LAST**:

    (1) The date of the transaction, which is **12/23/2005**; or
    (2) The date you receive your Truth in Lending disclosures; or
    (3) The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing at:

    3100 THORNTON AVE. (CALL CENTER)
    BURBANK, CA 91504

You may use any written statement that is signed and dated by you and states your intention to cancel and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of **3/1/2006**
(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____          _____
CONSUMER'S SIGNATURE                                                              DATE

---

Each of the borrowers in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective as to all borrowers.

30 March 2006

WMC Mortgage Corp
3100 Thornton Avenue
Burbank, CA 91504

Re: 11432468

Dear Mr. Rothleder,

After careful consideration, I have decided that I don't want to sign a third set of
documents. I have cancelled the incorrect documents I signed last night and wish to be
put back into my original loan with Homecomings Financial as per my original request.
Please direct all further communication to my attorney, Mr. Roy Hoffman, who can be
reached at (714) 997-9222. Thank you. I will not be taking any
more of your phone calls.

Yours truly,

Karen M. Rozier

EXHIBIT 3

Case 8:11-bk-21727-CB    Doc 45    Filed 07/05/12    Entered 07/06/12 10:55:51    Desc
Main Document    Page 68 of 98

## NOTICE OF RIGHT TO CANCEL

Servicing #: 11432468

LENDER: WMC MORTGAGE CORP.

DATE: December 23, 2005
LOAN NO.: 11432468
TYPE:    Conventional

6320 CANOGA AVENUE 10TH FL (MAILROOM) WOODLAND HILLS, CA 91367
BORROWERS: KAREN N ROZIER

ADDRESS:    7957 DAHLIA CIRCLE
CITY/STATE/ZIP:    BUENA PARK, CA 90620
PROPERTY:    7957 DAHLIA CIRCLE BUENA PARK, CA 90620

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs LAST:

(1) The date of the transaction, which is ___March 29, 2006___ ; or
(2) The date you receive your Truth in Lending disclosures; or
(3) The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing at:
3100 Thornton Ave. (Call Center)
Burbank, CA 91504

You may use any written statement that is signed and dated by you and states your intention to cancel and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of ___April 1, 2006___ (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_Karen N Rozier_                        _3/29/06_
CONSUMER'S SIGNATURE                        DATE

Each of the borrowers in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective as to all borrowers.

I acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL.

_Karen N Rozier_        _4/1/2006_
- Borrower -    KAREN N ROZIER    - DATE -

DOCU01HO
JOOU5R0.FTT 01/23/2001

# JUDITH E. DEMING & ASSOCIATES
## ATTORNEYS AT LAW

☒ PLEASE REPLY TO:

ORANGE COUNTY OFFICE
5334 E. CHAPMAN AVENUE
SUITE 100
ORANGE, CA 92869-4235
TEL.: (714) 997-9222
FAX: (714) 997-5888

JUDITH E. DEMING
ROY A. HOFFMAN

☐ PLEASE REPLY TO:

DESERT OFFICE
1381 N. INDIAN CANYON DRIVE
PALM SPRINGS, CA 92262
TEL.: (760) 322-8844
FAX: (760) 322-8088

File No. 06-015

March 31, 2006

*Robert Rothleder*

**VIA FACSIMILE AND U.S. MAIL**
(818) 615-1071
*cell (818) 535-9779*

Mr. Albert Rothleader
WMC Mortgage Corp.
3100 Thornton Avenue
Burbank, California 91504

Re:    Karen Rozier
       Loan No. 11432468 – Notice of Recission

Dear Mr. Rothleader:

This office has been retained by Ms. Karen Rozier in connection with the above-referenced matter. As you know, Ms. Rozier mailed a notice of right to cancel the above-referenced loan on March 1, 2006, in accordance with 11 U.S.C. § 1635. It is our understanding that, rather than proceed in accordance with the provisions of the Truth in Lending Act and Regulation Z, you, on behalf of WMC Mortgage Corp. ("WMC"), contacted Ms. Rozier and attempted to "re-negotiate" the above loan. 11 U.S.C. § 1635(b) provides, in pertinent part:

> "(b)    When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, *becomes void upon such a rescission*. Within 20 days after receipt of a notice of rescission, the creditor *shall* return to the obligor any money or property given as earnest money, downpayment, *or otherwise*, and shall take any action necessary or appropriate to reflect the

*EXHIBIT 3*

Mr. Albert Rothleader
WMC Mortgage Corp.
March 31, 2006
Page 2 of 2

termination of any security interest created under the
transaction. . . ."   11 U.S.C. § 1635(b) [emphasis
added].

Given that Ms. Rozier mailed the notice of cancellation on March 1, 2006, any
interest in her property which WMC acquired as a result of its loan was void as
of that date.   WMC's failure to take the steps required by law subsequent to
Ms. Rozier's mailing of the notice of cancellation is itself a violation of 11 U.S.C.
§ 1635. *See, e.g., Egipciaco Ruiz v. R & G Financial Corp.*, (2005 D.Puerto
Rico), 383 F.Supp.2d 318.

Demand is hereby made that you immediately take steps to return Ms. Rozier
to the status quo prior to WMC's loan transaction, without cost or expense to
her.   In the event of WMC's failure to comply with its obligations under the law,
Ms. Rozier will proceed with all of her remedies provided by law, which may
include, but not be limited to, the remedies specified in 11 U.S.C. § 1640.

We look forward to WMC's prompt response to this matter.

Very truly yours,

Roy A. Hoffman

RAH/hs

cc:_   Ms. Karen Rozier

FROM : F E DEMING & ASSOCIATES   M2   05 2006 05:42PM   P2

FROM                                                    (FRI)MAY  5 2006 17:24/ST. 17:24/No. 6823231044 P  1



A GE Money Company

**WMCmortgage**

WMC Mortgage Corp., 3100 Thornton Avenue, Burbank, California 91504
800 542 6508 · www.wmcmortgage.com

May 05, 2006

Karen M. Rozier
7957 Dahlia Circle
Orange, CA 90620

Re:    Loan #: 11432468
Property Address: 7957 Dahlia Circle, Orange CA 90620
Loan Amount: $576,000.00

Mr. Karen M. Rozier

WMC Mortgage is in receipt of your "Notice of Right to Cancel" rescinding your loan
with reference to Litton # 20114112 / WMC # 11432468.  WMC Mortgage extends to
you three options in response to your cancellation:

Option 1:    You may obtain financing to return to WMC Mortgage the original
balance of the loan, less the fees and charges assessed to you for
obtaining the home loan referenced above.

Option 2:    You may return to WMC Mortgage the original balance of the loan
from cash assets you hold, less the fees and charges assessed to
you for obtaining the home loan.

Option 3:    WMC Mortgage will modify your loan to the rate in effect on your
previous mortgage loan which was paid off through this
transaction as well refund the fees and charges you incurred in
acquiring your WMC loan referenced above.

These options are designed to give you the flexibility to determine the best resolution for
you!  Please advise WMC Mortgage in writing which option is best for you as we look
forward to the resolution of this matter.

Sincerely,

Robert Rothleder
Vice President Production Operations

EXHIBIT 3

 

 A GE Money Company

WMC Mortgage Corp, 3100 Thornton Ave.,
800 947 3504 • www.wmcmortgage.com

June 6, 2006

Karen Rozier
7957 Dahlia Circle
Buena Park CA 90620

RE:  WMC Loan # 11432468

Dear Karen,

Thank you for the opportunity to close your loan for the property located at 7957 Dahlia Circle,
Street, Buena Park CA 90620

Enclosed you will find a check in the amount of $28,852.20, which represents lender credit for
closing fees.

Should you have any questions, please feel free to contact me at (818) 736-5653.

Sincerely,

Robert Rothfeder
Vice President of
Production Operations
(818) 736-5653

EXHIBIT 5

KAREN M ROZIER
7957 DAHLIA CIR
BUENA PARK , CA   90620

**GE Capital**

1517733

CORRESPONDENCE SHOULD REFER
TO THE ABOVE VOUCHER NUMBER

ACCEPTANCE AND ENDORSEMENT WILL ACKNOWLEDGE PAYMENT IN FULL OF ACCOUNT DETAILED BELOW

| DATE | CHECK NO. | COMMENTS | AMOUNT |
|------|-----------|----------|--------|
| 06/06/06 | 1517733 | LOAN # 11432469 | $28,852.20 |

EXHIBIT 5

DETACH BEFORE DEPOSITING

Identifi   REDACTED   Doc Type:NOTEN

11432468                                                                11432468

with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  12/23/05
- Borrower - KAREN M ROZIER - Date -

Pay to the order of
RESIDENTIAL FUNDING COMPANY, LLC
without ...
Monic...          Sect.
WMC Mortgage Corp.

F. PAY TO THE ORDER OF
LaSalle Bank, N.A. as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC

By: _____
Judy Faber, Vice President

*[Sign Original Only]*

Exhibit 1

[Space Below This Line For Acknowledgment]

State of *California*
County of *Orange County*
On this ~~Dec~~ *23* day of *Dec. 2005* , before me, *Adrian R. Barajas* (Notary public)
personally appeared

*Karen Michelle Rozier aka Karen M. Rozier*

~~personally known to me~~ (or proven to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
*is* subscribed to the within instrument and acknowledged to me that *she* executed the same in
authorized capacity(ies) , and that by *her* signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

ADRIAN R. BARAJAS
COMM. #1816541
Notary Public-California
LOS ANGELES COUNTY
My comm. Expires Oct. 28, 2009

Notary Public _____

My Commission Expires: *Oct. 28, 2009*

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    *(page 14 of 14 pages)*
DOCUKCAI4
DOCUKCAB.VTX   08/25/2005

*WMC* 0011432468KCA0140142005122316 4921q

Exhibit 2



**EXHIBIT 2**

Case 8:11-bk-21727-CB    Doc 42-1    Filed 06/18/12    Entered 06/18/12 11:20:04    Desc
Exhibit (s) 1 - 4    Page 28 of 35    Loan #REDACTED

| | |
|---|---|
| Address: 7957 DAHLIA CIR, BUENA PARK, CA 90620 | Inspection Type: Drive By |
| Borrower: KAREN ROZIER | Project Type: | APN: 13624104 |

**I. Order Information**

| | | | |
|---|---|---|---|
| Inspection Date: Mar 22 2012 | Deal Name: | | VMA Request ID: 2710313 |
| Client: BPO-NA | BPO Vendor: eMortgage Logic, LLC | | Vendor Tracking ID: 2436637 |
| Agent Name: Mina Ali | Brokerage: Savvy Plus Inc | | Agent Phone: (714) 417-7653 |

**II. Subject Property Information**

| | | | | |
|---|---|---|---|---|
| Occupied: Yes | Property Type: SF Detach | HOA Fees: | | Zoning: Residential |
| Last Sold Date: | Last Sale Price: | Data Source: County Tax | | Currently Listed: No |
| Agent Name: | Initial List Price: | Initial List Date: | | Current List Price: |
| Last Reduction Date: | MLS #: P662026 | Total Repair Cost: $0 | Est. Monthly Rent: $3,000 |

SUBJECT PROPERTY COMMENTS / EXTERNAL INFLUENCES: Subject property is located in a very nice established neighborhood with very easy access to major highway and other services

**III. Neighborhood Information**

| | | | |
|---|---|---|---|
| Location Type: Suburban | Supply/Demand: Increasing | Value Trend: Improving | Local Economic Trend: Depreciating |
| Price Range: 196800 to 789000 | | Median Price: $345,144 | Avg Marketing Time: 3 to 6 Mos. |

NEIGHBORHOOD COMMENTS: Subject neighborhood is average overall and is located in a conforming neighborhood with homes of similar style and age. Values have been steadily dec

**IV. Comparable Properties**

| | Subject | Sale 1 | Sale 2 | Sale 3 | Listing 1 | Listing 2 | Listing 3 |
|---|---|---|---|---|---|---|---|
| Address | 7957 DAHLIA CIR BUENA PARK,CA | 8145 POINSETTIA DR BUENA PARK,CA | 8181 CYCLAMEN WAY BUENA PARK,CA | 8297 CARNATION DR BUENA PARK,CA | 7838 BELLFLOWER DR BUENA PARK,CA | 8562 BEL AIR ST BUENA PARK,CA | 7059 SANTA PAULA CIR BUENA PARK,CA |
| Zip | 90620 | 90620 | 90620 | 90620 | 90620 | 90620 | 90620 |
| Data Source | County Tax | MLS | MLS | MLS | MLS | MLS | MLS |
| Proximity | | 0.43 Miles | 0.33 Miles | 0.41 Miles | 0.76 Miles | 0.89 Miles | 1.05 Miles |
| Sale Price | | $350,000 | $345,000 | $421,500 | | | |
| Sale Date | | Sep 30 2011 | Mar 6 2012 | Mar 13 2012 | | | |
| Orig. List Price | | $340,000 | $390,000 | $435,000 | $350,000 | $439,900 | $449,999 |
| Curr. List Price | | | | | $350,000 | $399,900 | $426,998 |
| DOM | | 152 | 285 | 79 | 26 | 45 | 182 |
| Lot Size | 0.19ac | 0.14ac | 0.14ac | 0.15ac | 0.13ac | 0.19ac | 0.14ac |
| View | Mountain View | Residential | Residential | Residential | Residential | Residential | Residential |
| Design/Style | 2-Story Conv | Single Story | Single Story | Single Story | 2-Story Conv | Single Story | 2-Story Conv |
| Type/#Units | SF Detach 1 | SF Detach 1 | SF Detach 1 | SF Detach 1 | SF Detach 1 | SF Detach 1 | SF Detach 1 |
| Age | 55yrs | 57yrs | 54yrs | 56yrs | 53yrs | 56yrs | 56yrs |
| Condition | Average | Average | Average | Average | Average | Average | Average |
| Above Grade SF | 2,096 | 1,711 | 2,158 | 2,000 | 2,079 | 1,897 | 2,194 |
| # Rooms/Bd/Bth | 6 3 2.5 | 6 3 2 | 7 4 2.5 | 9 6 2 | 8 5 3.5 | 7 4 2 | 7 4 2.5 |
| Basement SF | | 0 | 0 | 0 | 0 | 0 | 0 |
| % Finished | % | 0% | 0% | 0% | 0% | 0% | 0% |
| Garage Type | Detached | Attached | Attached | Detached | Attached | Attached | Attached |
| # Garage Stalls | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Pool/Spa | No Yes | No No | No No | No No | No No | No No | No No |
| Other Features | none | none | covered patio | covered patio | none | none | patio |
| Sales Type | | Short Sale | Short Sale | Fair Market | Short Sale | REO | Fair Market |
| HOA Fees | | 0/mo | 0/mo | 0/mo | 0/mo | 0/mo | 0/mo |

**COMPARABLE PROPERTY COMMENTS:**

| | |
|---|---|
| Sale 1: | See Addendum |
| Sale 2: | See Addendum |
| Sale 3: | See Addendum |
| List 1: | See Addendum |
| List 2: | See Addendum |
| List 3: | See Addendum |

**V. Marketing Strategy**

| | 'As-Is' | 'Repaired' | Estimated Marketing Time for Subject: 30-90 days |
|---|---|---|---|
| Estimated Sale Price: | $375,000 | $375,000 | CONCLUSION SUMMARY: |
| Recommended List Price: | $385,000 | $385,000 | Market has slowed for the past several months with an oversupply of houses on the current market, and prices have decreased. |

Exhibit 4

## VI. Repair Estimates

| Category | Comments | Estimated Cost |
|---|---|---|
| Roof | | $0 |
| Siding/Trim | | $0 |
| Windows/Doors | | $0 |
| Paint | | $0 |
| Foundation | | $0 |
| Garage | | $0 |
| Landscaping | | $0 |
| Fence | | $0 |
| Other | | $0 |
| | Estimated Exterior Repairs: | $0 |
| Paint | | $0 |
| Walls/Ceiling | | $0 |
| Floors | | $0 |
| Cabinets/Countertops | | $0 |
| Plumbing | | $0 |
| Electrical | | $0 |
| Heating/AC | | $0 |
| Appliances | | $0 |
| Doors/Trim | | $0 |
| Cleaning | | $0 |
| Other | | $0 |
| | Estimated Interior Repairs: | $0 |
| | Total Estimated Repairs: | $0 |

## VII. Prior Sales & Listing History

| Date Listed | Date Sold | List Price | Sale Price | Date Source | Notes |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

## VIII. Additional Comments

**BROKER COMMENTS:**
Subject is in good location, this is a desirable and high demand area/neighborhood that is close to all local amenities, there are NO signs of economic obsolescence. Subject located in an area with restaurants, parks, schools and major services. There are a high number of distress sales all over town, especially short sales 50% of the market share belong to them, equity sales 40% and REOS 10%. Subject is located in a conforming neighborhood with homes of similar style and age. I attest that I have researched the subject's sales history and found no sales within the past 3 years.

**VENDOR COMMENTS:**

**QUALITY CONTROL NOTES**
The sales date for Comparable Sale #1:comp just outside the 6 months, however best property available. The proximity for Comparable Listing #:Due to limited comp availability, it was necessary to exceed guidelines for distance.. The proximity for Comparable List #1: Due to limited comp availability, it was necessary to exceed guidelines for distance.The proximity for Comparable List #3:Due to limited comp availability, it was necessary to exceed guidelines for distance.. The proximity for Comparable List #3: Due to limited comp availability, it was necessary to exceed guidelines for distance.The proximity for Comparable Listing #:Due to limited comp availability, it was necessary to exceed guidelines for distance.. The proximity for Comparable List #2: Due to limited comp availability, it was necessary to exceed guidelines for distance. Sold Comp# 2 is most similar to the subject:same in style and design and in same location. Active Comp# 1 is most similar to the subject:same in style and design and in same location.

Mina Ali                                          Mar 27 2012 7:10AM
Broker Signature                                  Date
*Broker agreed to digital signature upon submission.*

Exhibit 4

Case 8:11-bk-21727-CB    Doc 42-1    Filed 06/18/12    Entered 06/18/12 11:20:04    Desc
Exhibit (B) 1 - 4    Page 30 of Pages



| | Address | City | BR | BA | LotSize | SaleDate | Yr Blt | Sale/List Price | Dist |
|---|---|---|---|---|---|---|---|---|---|
| | 7997 DAHLIA CIR | BUENA PARK | 3 | 2.5 | 0.19ac | | 1957 | | 0.76 Miles |
| A1 | 7818 BELLFLOWER DR | Buena Park | 5 | 3.5 | 0.13ac | | 1959 | $350,000 | 0.89 Miles |
| A2 | 8363 BEL AIR ST | Buena Park | 4 | 2.0 | 0.19ac | | 1956 | $399,900 | 1.05 Miles |
| A3 | 7059 SANTA PAULA CIR | Buena Park | 4 | 2.5 | 0.14ac | | 1956 | $426,998 | 0.43 Miles |
| S1 | 8145 POINSETTIA DR | Buena Park | 3 | 2.0 | 0.14ac | Sep 30 2011 | 1955 | $350,000 | 0.43 Miles |
| S2 | 8181 CYCLAMEN WAY | Buena Park | 4 | 2.5 | 0.14ac | Mar 8 2012 | 1958 | $345,000 | 0.33 Miles |
| S3 | 8397 CARNATION DR | Buena Park | 6 | 2.0 | 0.15ac | Mar 15 2012 | 1956 | $421,300 | 0.41 Miles |

Exhibit 4



Exhibit 4



Exhibit 4



Exhibit 4

LoanNumberREDACTED                    Photo (List ) : 11-7059SantaPaulaCir.jpg                    RefL: 2436637



Neither eMortgage Logic, LLC nor any of its affiliates, members, managers or contractors makes any representation or warranty as to the accuracy or completeness of the information contained in this broker price opinion. You should use good faith efforts in determining that the content of all information to be provided to or obtained by you is accurate. This analysis has been performed by a licensed real estate professional and is intended for the benefit of the addressee only. The Brokers Price Opinion is not to be construed as an appraisal and may not be used as such for any purpose. The purpose of this BPO is to provide an estimate of the probable sales price of the property and will not be used for loan origination. This opinion may not be used by any party as the primary basis to determine the value of a parcel of real property for a mortgage loan origination, including first and second mortgages, refinances or equity lines of credit. Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property. If an appraisal is desired, the services of a licensed appraiser must be obtained.

Exhibit 4

Sale 1: Comp is inferior to the subject based on total square footage. This is a short sale and S/S does take a long time to close

Sale 2: Sale 2 is the best comparable. It is same in location and style as the subject, and also has the similar GLA. \n

Sale 3: Comp 3 is rated equal to subject because of neighbour hood and similar total GLA

List 1: Listing 1 is the best comparable. it is same in style, design, and similar has GLA,

List 2: Comp is inferior to the subject based on total square footage. This is a short sale and S/S does take a long time to close

List 3: Comp is equal to subject because of total square footage. This is a standard sale not a Reo or short sale

Exhibit 4

1  Joseph C. Delmotte (SBN 259460)
   jdelmotte@piteduncan.com
2  Balpreet K Thiara (SBN 265150)
   bthiara@piteduncan.com
3  **PITE DUNCAN, LLP**
   4375 Jutland Drive, Suite 200
4  P.O. Box 17933
   San Diego, CA 92177-0933
5  Telephone: (858) 750-7600
   Facsimile: (619) 590-1385
6
   Attorneys for U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, AS SUCCESSOR IN
7      INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS
       TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL
8      ASSOCIATION, AS TRUSTEE

9                    **UNITED STATES BANKRUPTCY COURT**

10          **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

11  | In re | Case No. 8:11-BK-21727-CB |
12  | KAREN MICHELE ROZIER, | Chapter 7 |
13  | | **SUPPLEMENTAL DECLARATION OF** |
14  | | **BROKER MINA ALI IN SUPPORT OF** |
    | | **MOTION FOR RELIEF FROM** |
15  | | **AUTOMATIC STAY** |
16  | | |
17  | | DATE: July 10, 2012 |
    | | TIME: 10:30 A.M. |
18  | Debtor(s). | CTRM: 5D |
19

20       I, MINA ALI, declare:

21       1.      I am a Real Estate Broker/Agent and I am familiar with real estate values in the

22  area surrounding the subject real property.

23       2.      I have worked in this position since 3 years.

24       3.      As a licensed real estate agent, I am qualified to conduct property evaluations.

25       4.      On March 22, 2012, I conducted a property evaluation of 7957 Dahlia Circle,

26  Buena Park, California 90620 (the "Subject Property"), which is summarized in the Broker's

27  Price Opinion attached to Movant's Motion for Relief From Automatic Stay as Exhibit 4.

28  /./.

1    5.    In conducting my property evaluation, I relied primarily on the Sales Comparison

2    Method of evaluation. The cost approach was not utilized as I only inspected improvements

3    from the exterior. The income approach was not utilized as the Subject Property, being a single

4    family residence, would not typically trade based on income production.

5    6.    I compared the Subject Property to six other properties that have sold, or are

6    currently listed.

7    7.    Based on comparison of the Subject Property to the six examined properties, I

8    concluded that the fair market value of the Subject Property is $375,000.00, as of March 22,

9    2012.

10    8.    I have personal knowledge of the foregoing, as to those matters stated under

11    information and belief and as to those matters I believe to be true, and if called upon as a witness

12    I could and would competently testify thereto.

13    I declare under penalty of perjury under the laws of the United States of America that the

14    foregoing is true and correct. Executed this __12__ day of __June__, 2012, at

15    _Anaheim_ , _California_

16    (City)          (State)

17

18    MINA ALI

19

20

21

22

23

24

25

26

27

28

| In re:<br>KAREN MICHELE ROZIER Debtor(s), and JAMES J. JOSEPH (TR), Chapter 7 Trustee | CHAPTER 7<br><br>CASE NUMBER 8:11-BK-21727-CB |
|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

The foregoing document described **SUPPLEMENTAL DECLARATION OF BROKER MINA ALI IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>June 18, 2012</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
James J. Joseph (TR)          KValbuena@dgdk.com
☐ Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On <u>   June 18, 2012</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

- Hon Catherine E. Bauer, US Bkcy Court, 411 West 4th, Street, Ste 5153 - Crtm 5D, Santa Ana, CA 92701-4593
- Karen Michele Rozier, 7957 Dahlia Cir, Buena Park, CA 90920
☐ Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 18, 2012 | Christopher Guerrero | /s/ CHRISTOPHER GUERRERO |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

# EXHIBIT 9

1   Karen Michele Rozier
    7957 DAHLIA CIRCLE
2   BUENA PARK, CA 90620
    (714) 512-5740
3   *Propria Persona*

4

5                 IN THE SUPERIOR COURT OF CALIFORNIA

                              ORANGE COUNTY
6

7   Karen Michele Rozier, an Individual

                                          Case No. 30-2012-00601310-CU-OR-CJC
8   Plaintiff,
                                          **EMERGENCY MOTION FOR STAY OF**
    vs.                                   **PROCEEDINGS**
9
    BANK OF AMERICA, NATIONAL ASSOCIATION
10  as successor by merger to LASALLE BANK   Reservation Number: 71927592
    NATIONAL ASSOCIATION as Trustee for RAMP
    2007RP1;                              Hearing Date:  May 14, 2014
11
    U.S. BANK NATIONAL ASSOCIATION, as    Hearing Time: 10:00 a.m.
12  successor in interest to BANK OF AMERICA,
    NATIONAL ASSOCIATION as Trustee, successor by   Dept: 22
    merger to LASALLE BANK NATIONAL
13  ASSOCIATION as Trustee for RAAC 2007RP1;   Trial Date: May 27, 2014

14  JOHN DOES 18-50.

15  Defendants.

16

17      PLEASE TAKE NOTICE that PLAINTIFF Karen Michele Rozier will ask

18  the court for a temporary stay of proceedings for all matters. This is

19

20                      MOTION FOR STAY OF PROCEEDINGS- 1

21

1  Plaintiff's first request for a delay in proceedings. The motion

2  hearing is presently scheduled for May 14, 2014. Plaintiff intends to

   apply Ex Parte to have the matter heard prior to April 15, 2014.  All

3  matters will be heard at the designated time or as soon thereafter as

4  counsel may be heard, in Department C22 of Central Justice Center

   located at 700 W. Civic Center Drive, Santa Ana, California, unless

5  another place is selected. You will be notified of the actual date and

6  time.

7      **Reasons for Request**

8  This is Plaintiff's first request for a delay of proceedings and made

9  with good cause. Plaintiff, who is not a lawyer, initiated this action

   against Bank of America and Residential Capital due to a wrongful

10 foreclosure that was reversed on October 4, 2012. Since then, other

11 parties – namely U.S. Bank – have hijacked Plaintiff's suit and

12 morphed it into U.S. Bank attempting to claim this suit is about

   whether they have the right to foreclose in the future. The case has

13 mushroomed into a matter involving criminal accusation, harassment

14 charges, administrative claims of attorney malfeasance, criminal

15 assaults by bank agents, claims of judicial misconduct and

   incompetence. Plaintiff, who is not a lawyer, needs more time to

16 prepare for the case and to correct the harm caused by the intentional

17 false documents filed by Defendants in this proceeding as well as

   related cases.

18

19

20                         MOTION FOR STAY OF PROCEEDINGS- 2

21

1   Plaintiff, who is not a lawyer, makes this request pursuant to

2   relevant state law and public policy.

3       (1)   Pending bankruptcy cases in New York and California make it

             impossible to adjudicate this case completely. This case

4            was complicated by the addition of US Bank and with

5            Residential Capital electing to adjudicate in New York. It

             should be properly classified as Complex Civil due to the

6            parties, courts, and number of motion. Plaintiff initially

7            requested a Complex designation but was denied that option,

8            most likely due to race and class.

        (2)   Extreme emotional duress - Plaintiff was wrongfully

9            convicted in a fraudulent criminal trial in Los Angeles in

10           December 2013. Plaintiff is appealing that conviction and

11           suspects that one of both of the Defendants orchestrated

             the conviction. Plaintiff has already filed a formal

12           complaint against her court-appointed attorney Murray

13           Berns, who failed to disclose that his son works for Bank

             of America as a manager until after the trial concluded.

14           Plaintiff has also accused the presiding judicial officer

15           Renee Korn of witness tampering for her interference with

16           the December 11th hearing in this matter. Finally, it has

             recently come to Plaintiff's attention that the presiding

17           judicial officer had a $650,000 mortgage with Countrywide/

18           Bank of America that appears to have been satisfied the

19

20                         MOTION FOR STAY OF PROCEEDINGS- 3

21

1    week of the rushed and fraudulent trial. Plaintiff is

2    seeking or intends to seek civil, administrative, and

     criminal charges against all suspected parties.

3    (3)  Malfeasance of Defendant's counsel BRYAN CAVE, LLP - Mr.

4         Trevor Allen and his employees used the wrongful conviction

          which I suspect his company or orchestrating to obtain a
5
          restraining order against me. They did no serve me but
6
          instead sent thugs to my home to stalk me, harass me, steal
7         my mail, physically assault my husband, and otherwise

          harass me to the point where I felt the need to press
8
          criminal charges against all parties. I am also filing BAR
9         complaints against these attorneys for their bad acts. As

10        the court may be aware, the Ninth Circuit recently allowed

          the $100,000,000 lawsuit against BRYAN CAVE, LLP to
11
          proceed. They are accused of violating California law to
12        help their clients. As the court is also aware, BRYAN CAVE,

          LLP is a British Law Firm and not a U.S. citizen. I
13
          consider it an act of treason when any court official helps
14        foreign nationals steal from citizens of these united

15        States.

     (4)  Excusable unintentional neglect - Plaintiff, who is an
16
          Individual, has been forced to manage multiple assaults
17        orchestrated by trillion-dollar companies. Plaintiff is

18        only human and asks the court to accept that had it not

19

20                        MOTION FOR STAY OF PROCEEDINGS- 4

21

been for the side issues – the Severson and Werson
workplace violence TRO granted by accused sex criminal
Scott Steiner which is under appeal; the false and
orchestrated convenient conviction with so many Bank of
America hands that it should have been at BofA
headquarters; the physical and emotional harassment by
BRYAN CAVE employees to prevent Plaintiff from being able
to focus on hearings – so many foul tactics that I
understand while my countrymen feel the need to form Common
Law Grand Juries – so many reasons why Plaintiff needs time
to regroup and correct this litigation.


**RELEVANT CASES:**

1. In Re Residential Capital (12-12020 MG) United States Bankruptcy
Court, Southern District of New York: Initially a party to this
case, ResCap invoked bankruptcy protection, implying this matter
would be settled in New York. Plaintiff attempted to resolve this
in New York, but Judge Glenn gave ResCap until September 2014 to
resolve this issue. Originally the issue was presumed to have
been decided in December 2013 with the confirmation of the Plan,
but the latest ruling gave ResCap until September 2014 to
litigate this claim. As ResCap is the party that independently
directed colluded with both Defendants to commit the offenses

alleged, determination of Plaintiff's allegations against ResCap

should occur before this case is allowed to proceed.

2. Rozier vs. U.S. Bank, Case# 13-60601: The Ninth Circuit Court of

Appeals agreed to hear Plaintiff's request against U.S. Bank.

Plaintiff/ Appellant's reply brief is due on April 18, 2014. The

crux of Defendant's reply is that Plaintiff's 4,206 square foot

home is a 2,096 square foot home worth $375,000 and that they had

the right to initiate foreclosure because she was upside down in

her alleged loan. Plaintiff denies having any contractual

relationship with any of the parties. Plaintiff ordered an

appraisal on her home which will confirm the tax assessors

records. Plaintiff has filed a BAR complaint against U.S. Bank's

lawyer for their continual reliance on known false information. A

California lawyer may maintain only such actions as are "legal or

just," except when defending criminal actions, see B&PC Section

6068(c), and "must not encourage either the commencement or

continuance of an action or proceeding for any corrupt motive of

passion or interest."

3. Criminal case OCA01173, City of Los Angeles vs David and Karen

Rozier- Accused judge of witness tampering which directly

involves this case; accused Bank of America of tampering with

prosecution;

4. Rozier vs Severson and Werson APC (SWA) – SWA sought and obtained

a workplace violation TRO against Plaintiff and her spouse based

on lies, including the hateful lie that Plaintiff and her spouse
are anti-Semitic. The truth is that Plaintiff only hates liars
and wished they would all burst into flames in her presence so
she can fuel the flames. Plaintiff is not anti-Semitic. Plaintiff
accuses Yaron Shaham of perjury, FRAUD UPON THE COURT, libel, and
slander.

5. Rozier vs Severson and Werson APC – SWA sought and obtained a
workplace violation TRO against Plaintiff and her spouse based on
lies, including the hateful lie that Plaintiff and her spouse are
anti-Semitic. The truth is that Plaintiff only hates liars and
wished they would all burst into flames in her presence so she
can fuel the flames. Plaintiff is not anti-Semitic. Plaintiff
accuses Adam Barasch of perjury, FRAUD UPON THE COURT, libel, and
slander.

6. David Rozier vs Severson and Werson APC – SWA sought and obtained
a workplace violation TRO against Plaintiff and her spouse based
on lies, including the hateful lie that Plaintiff and her spouse
are anti-Semitic. The truth is that Plaintiff only hates liars
and wished they would all burst into flames in her presence so
she can fuel the flames. Plaintiff is not anti-Semitic.
Plaintiff's spouse – who was a party to this suit when the case
was being properly heard by a competent jurist – accuses Yaron
Shaham of perjury, FRAUD UPON THE COURT, libel, and slander.

MOTION FOR STAY OF PROCEEDINGS- 7

7. David Rozier vs Severson and Werson APC - SWA sought and obtained
a workplace violation TRO against Plaintiff and her spouse based
on lies, including the hateful lie that Plaintiff and her spouse
are anti-Semitic. The truth is that Plaintiff only hates liars
and wished they would all burst into flames in her presence so
she can fuel the flames. Plaintiff is not anti-Semitic.
Plaintiff's spouse - who was a party to this suit when the case
was being properly heard by a competent jurist - accuses Adam
Barasch of perjury, FRAUD UPON THE COURT, libel, and slander.

8. Criminal files resulting from their criminal acts:

    a. Case 13-30413 with Fullerton Police Department

    b. Case 13-18121 with Buena Park Police Department

    c. Case 13-18125 with Buena Park Police Department

    d. Case 13-18126 with Buena Park Police Department

9. BRYAN CAVE LLP vs Karen Michele Rozier

    a. Case 14-10170 with Buena Park Police Department for mail
       tampering.

    b. Case 14-04539 with Buena Park Police Department for
       harassment and threats.

    c. Case 14-12747 with Buena Park Police Department for mail
       tampering and physical assault.

Not unreasonable

  - Plaintiff's first request

MOTION FOR STAY OF PROCEEDINGS- 8

1       - Much of cause for delay directly attributed to Defendant's

2        Counsel's behavior

3    Plaintiff prays that the court grants this request and stay all

    proceedings until resolution of the underlying bankruptcy cases of

4    Residential Capital and of the Plaintiff. Plaintiff will keep the

5    court informed of changes in both cases. Plaintiff has not prepared an

    Order but will do so at the court's direction. Plaintiff would have

6    contacted opposing counsel for agreement but as each of the attorney's

7    have falsely accused the Plaintiff of making criminal threats each

8    time she attempts to resolve this case, Plaintiff is reluctant to

    attempt to work with either Counsel. Plaintiff previously relied on an

9    oral agreement made by BRYAN CAVE LLP attorney and provided a very

10   detailed personal description, only to see the attorney renege on his

11   agreement and then seek sanctions against Plaintiff, who regularly

    prays for the painful death of all those who try to harm her. Praying

12   is still not illegal and Plaintiff will continue to pray for relief.

13   Dated April 4, 2012

14                         Respectfully,

15                         ___ Karen M. Rozier ___

16                         Karen M. Rozier, an Individual

17

18

19

20                    MOTION FOR STAY OF PROCEEDINGS- 9

21

1  Karen Michele Rozier
   7957 DAHLIA CIRCLE
   BUENA PARK, CA 90620
2  (714) 512-5740
   *Propria Persona*
3

4

          IN THE SUPERIOR COURT OF CALIFORNIA
5
                    ORANGE COUNTY
6

7  Karen Michele Rozier, an Individual

   Plaintiff,                          Case No. 30-2012-00601310-CU-OR-CJC
8
   vs.                                 **DECLARATIONI N SUPPORT OF MOTION**
9
   BANK OF AMERICA, NATIONAL ASSOCIATION
   as successor by merger to LASALLE BANK   Reservation Number: 71927592
10 NATIONAL ASSOCIATION as Trustee for
   RAMP 2007RP1;                        Hearing Date:   May 14, 2014
11
   U.S. BANK NATIONAL ASSOCIATION, as   Hearing Time:   10:00 a.m.
   successor in interest to BANK OF
12 AMERICA, NATIONAL ASSOCIATION as     Dept:  22
   Trustee, successor by merger to
   LASALLE BANK NATIONAL ASSOCIATION as Trial Date: May 27, 2014
13 Trustee for RAAC 2007RP1;

   JOHN DOES 18-50.
14

   Defendants.
15

16

17    1    I am Karen Michele Rozier, the Plaintiff in the aforementioned

           case. I am over the age of 18. I am a resident of the State of
18
           California and a citizen of the state of Maryland, by birth. I
19

20                   MOTION FOR STAY OF PROCEEDINGS- 1

21

have personal knowledge of the facts herein, and, if called as a witness, could testify competently thereto.

2   I am competent to make this declaration and willing to testify should that be required.

3   I require a temporary stay of proceedings to synchronize cases. This was unforeseeable.

1. I truly fear for my life due to the harassment, stalking, physical assaults orchestrated by Bank of America agents. I honestly believe that Bank of America orchestrated my conviction because they knew they could not win this case on the merits. BRYAN CAVE, LLP has been accused of playing dirty previously. [*Jeremiassen v. Bryan Cave LLP* and *Sharp v. Bryan Cave LLP*] U.S. Bank also has a history of homeowners who have legitimate civil actions suddenly being convicted of ridiculous crimes. [*Mary McCulley vs. U.S. Bank*]

2. I will keep the court informed of updates to the best of my ability.

I declare under penalty of perjury in the State of California that the above is true to the best of my knowledge.

Executed in Buena Park, California

Dated April 4, 2012

Karen M. Rozier, an Individual

**MOTION FOR STAY OF PROCEEDINGS- 2**

## PROOF OF SERVICE

### CCP 1013A(3) Revised 5/1/88

### ROZIER VS. BANK OF AMERICA (CASE No. 30-2013 00611310)

I am a resident of the State of California. I am over the age of 18 and not a party to the within action. My business address is 7957 Dahlia Circle, Buena Park, CA 90620.

**PLAINTIFF'S EMERGENCY MOTION FOR STAY OF PROCEEDINGS**

Declaration in Support of Motion

On all interest parties in this action by adding them to electronic mail through e-filing addressed as follows:

Yaron Shaham, Severson and Werson, APC Attorney for Defendant U.S. Bank

19100 Von Karman Avenue, Suite 700

Irvine, CA 92612

ys@severson.com

Trevor Allen, BRYAN CAVE, LLP, Attorney for Defendant Bank of America

3161 Michelson Drive, Suite 1500

Irvine, CA 92612-4414

Trevor.Allen@bryancave.com

Karen M. Rozier, Plaintiff in Pro Per

7957 Dahlia Circle

Buena Park, CA 90620

Rozier.karen@yahoo.com

I declared under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 4, 2014

David E. Rozier, Sr

## PROOF OF SERVICE

### Case 12-12020 (MG)  In re Residential Capital, LL

I am a resident of the State of California. I am over the age of 18 and not a party to the within action. My business address is 7957 Dahlia Circle, Buena Park, CA 90620.

MOTION FOR RECONSIDERATION OF ORDER DATED 02/26/14 PURSUANT TO RULES 9023 and 9024 [Claims 4738 and 5632]

On all interest parties in this action by regular e mail as follows:

Counsel to the Debtors
Larren M. Nashelsky
Gary S. Lee
Lorenzo Marinuzzi
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104
lnashelsky@mofo.com
glee@mofo.com;
lmarinuzzi@mofo.com

Office of the United States Trustee
Tracy Hope Davis
Office of the United State Trustee
201 Varick Street, Suite 1006
New York, NY 10004
Tracy.Davis2@usdoj.gov;
Linda.Riffkin@usdoj.gov
Brian.Masumoto@usdoj.gov

Counsel to the Official Committee of
Unsecured Creditors
Kenneth H. Eckstein
Thomas Moers Mayer
Douglas H. Mannal
Kramer Levin Naftallis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
keckstein@kramerlevin.com;
tmayer@kramerlevin.com;
dmannal@kramerlevin.com;

I declare under penalty of perjury under the laws of the united States of America that the foregoing is true and correct.

Executed on April 28, 2014

David E. Rozier, Sr