# Exhibit A

# GMAC RFC

## CLIENT CONTRACT

Client Contract dated as of September 25, 2003 ("Contract") between Residential Funding Corporation ("GMAC-RFC") and Summit Financial, LLC, a Virginia limited liability company ("Client").

Client desires to sell Loans to or service Loans for GMAC-RFC and GMAC-RFC desires to purchase Loans from, or to have Client service Loans for GMAC-RFC, pursuant to the terms and conditions of this Contract and the applicable Guides.

Client and GMAC-RFC agree as follows:

1. **Guides.** The GMAC-RFC Client Guide, as amended, ("Client Guide") applies to the Loans and to the sale of the Loans to GMAC-RFC. If Client services Loans, the terms and conditions of the GMAC-RFC Servicer Guide, as amended, ("Servicer Guide") apply. Client agrees to all of the terms and conditions of the applicable Guides, including the representations, warranties and covenants. The Client Guide and Servicer Guide are each individually a "Guide" and together the "Guides".

2. **Commitment Letters.** GMAC-RFC may offer to enter into one or more commitment letters with Client ("Commitment Letters"). By executing and delivering a Commitment Letter, Client agrees to its terms and conditions.

3. **Incorporation by Reference.** The Guides, Commitment Letters, and any related documents (together with this Contract, the "Program Documents") are incorporated by reference into this Contract as if fully set forth in it.

4. **Amendments.** This Contract and Commitment Letters may be amended only by a writing signed by both parties. The Guides may be amended as set forth in the applicable Guide.

5. **Governing Agreement.** This Contract's terms and conditions will control in the event of any direct conflict between this Contract and the applicable Guide. The Commitment Letter's terms and conditions will control in the event of any direct conflict between (i) this Contract and the Commitment Letter, or (ii) the applicable Guide and the Commitment Letter.

6. **Directors' Resolution.** Along with the execution of this Contract, Client must deliver to GMAC-RFC a certified resolution of its board of directors (or its equivalent if Client is an entity other than a corporation) authorizing the execution, delivery and performance of this Contract. Client must deliver to GMAC-RFC other evidence of existence, good standing and authority as GMAC-RFC may require.

7. **GMAC-RFC's Remedies.** If a default or an Event of Default occurs, GMAC-RFC may exercise one or more of the remedies set forth in the applicable Guides.

8. **Suspension and Termination.** GMAC-RFC may suspend or terminate the Program Documents, and Client's ability to sell Loans to GMAC-RFC, as set forth in the applicable Guides.

9. **Relationship of the Parties.** As further described in the Guides, the relationship between Client and GMAC-RFC is limited to that of a seller on the part of Client and that of a buyer on the part of GMAC-RFC (with respect to Loan sales under the Client Guide) and to that of an independent contractor (with respect to servicing by Client under the Servicer Guide). Client will not represent that it is acting as GMAC-RFC's agent or partner.

10. **Assignment.** Client cannot transfer or assign the Program Documents. GMAC-RFC may at any time, without Notice to or the consent of Client, transfer or assign, in whole or in part its rights under the Program Documents, with respect to any Commitment Letter or Loan, and the benefits under the Program Documents will inure to the benefit of GMAC-RFC's successors and assigns.

11. **Notices.** All notices, requests, demands or other communications under this Contract ("Notices") must conform to the requirements of the applicable Guide. Notices to GMAC-RFC must be directed to the address for Notice set forth in the Guides. Notices to Client will be addressed as follows (or at such other address as may be designated by Client in a Notice to GMAC-RFC):

>   SUMMIT FINANCIAL, LLC.
>   13530 Dulles Technology Drive
>   HERNDON, VA 20171
>
>   Attention: THERESA RITTER
>
>   Facsimile Number: (703) 793-3626
>
>   E-Mail: tritter@summitfgi.com

12. **Governing Law.** The Program Documents are governed by the laws of the State of Minnesota, without reference to its principles of conflicts of laws.

13. **Jurisdiction and Venue.** At the option of GMAC-RFC the Program Documents may be enforced in any state or federal court within the State of Minnesota. Client consents to the jurisdiction and venue of those courts, and waives any objection to the jurisdiction or venue of any of those courts, including the objection that venue in those courts is not convenient. Any such suit, action or proceeding may be commenced and instituted by service of process upon Client by first class registered or certified mail, return receipt requested, addressed to Client at its address last known to GMAC-RFC. Client's consent and agreement under this section does not affect GMAC-RFC's right to accomplish service of process in any other manner permitted by law or to commence legal proceedings or otherwise proceed against Client in any other jurisdiction or court. In the event Client commences any action in another jurisdiction or venue under any tort or contract theory arising directly or indirectly from the relationship created by the Program Documents, GMAC-RFC at its option may have the case transferred to a state or federal court within the State of Minnesota or, if a transfer cannot be accomplished under applicable law, may a have Client's action dismissed without prejudice.

14. **Waiver of Jury Trial.** Client and GMAC-RFC each promises and agrees not to elect a trial by jury of any issue triable of right by a jury, and fully waives any right to trial by jury to the extent that any such right now exists or arises after the date of this Contract. This waiver of the right to trial by jury is separately given, knowingly and voluntarily, by Client and GMAC-RFC and is intended to encompass each instance and each issue for which the right to trial by jury would otherwise apply. GMAC-RFC and Client are each authorized and directed to submit the Program Documents to any court having jurisdiction over the subject matter and the parties to this Contract as conclusive evidence of this waiver of the right to trial by jury. Further, Client and GMAC-RFC each certifies that no representative or agent of the other party's counsel, have represented, expressly or otherwise, to any of its representatives or agents that the other party will not seek to enforce the waiver of right to trial by jury.

15. **Waiver of Punitive, Consequential, Special or Indirect Damages.** Client waives any right it may have to seek punitive, consequential, special or indirect damages from GMAC-RFC or any of GMAC-RFC's affiliates, officers, directors, employees or agents with respect to any and all issues presented in any action, proceeding, claim or counterclaim brought by Client against GMAC-RFC or any of GMAC-RFC's affiliates officers, directors, employees or agents with respect to any matter arising out of or in connection with the Program Documents. This waiver of the right to seek punitive, consequential, special or indirect damages is knowingly and voluntarily given by Client, and is intended to encompass each instance and each issue for which the right to seek punitive, consequential, special or indirect damages would otherwise apply. GMAC-RFC is authorized and directed to submit this Contract to any court having jurisdiction over the subject matter and the parties to

this Contract as conclusive evidence of this waiver of the right to seek punitive, consequential, special or indirect damages.

16. **Force Majeure.** Notwithstanding Client's satisfaction of the conditions set forth in this Contract or the existence of an outstanding commitment by GMAC-RFC to purchase Loans, GMAC-RFC has no obligation to purchase any Loan if GMAC-RFC is prevented from obtaining the funds necessary to purchase Loans as a result of any fire or other casualty, failure of power, strike, lockout or other labor trouble, banking moratorium, embargo, sabotage, confiscation, condemnation, riot, civil disturbance, insurrection, act of terrorism, war or other activity of armed forces, act of God or other similar reason beyond the control of GMAC-RFC.

17. **Entire Agreement.** This Contract (including all documents incorporated by reference) represents the final agreement between the parties with respect to its subject matter, may not be contradicted by evidence of prior or contemporaneous oral or written agreements among the parties and supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether written or oral, with respect to the transactions contemplated by this Contract, except that any existing Commitment Letters are not affected.

18. **Defined Terms; General Rules of Interpretation.** Capitalized terms used in this Contract without further definition have the meanings given to them in the applicable Guide. Defined terms may be used in the singular or plural, as the context requires. Unless the context in which it is used otherwise clearly requires, the word "or" has the inclusive meaning represented by the phrase "and/or." The words "include," "includes" and "including" are deemed to be followed by the phrase "without limitation".

19. **Headings for Convenience.** All captions or paragraph headings in the Program Documents are for convenience only and in no way define, limit or describe the scope or intent of any provision of the Program Documents.

20. **Severability.** If any provision of the Program Documents is declared to be illegal or unenforceable in any respect, that provision is null and void and of no force and effect to the extent of the illegality or unenforceability, and does not affect the validity or enforceability of any other provision of the Program Documents.

21. **Counterparts.** This Contract may be executed in any number of counterparts, each of which will be deemed an original, but all of which together constitute but one and the same instrument.

IN WITNESS WHEREOF, Client and GMAC-RFC have caused this Contract to be duly executed as of the date first written above.

CLIENT: SUMMIT FINANCIAL, LLC

By: _____ (Signature)

Name: CYNTHIA J. LAYMAN (Typed or Printed)

Title: SENIOR VICE PRESIDENT
OF SHENANDOAH VALLEY
NATIONAL BANK
Sole MEMBER OF SUMMIT
FINANCIAL, LLC

RESIDENTIAL FUNDING CORPORATION

By: _____ (Signature)

Name: Darrin George (Typed or Printed)

Title: _____

SUMMIT Financial, LLC
Revised: 9/25/2003

- 3 -

Printed: 9/25/2003

# GUARANTY

THIS GUARANTY dated as of September 25, 2003, by Shenandoah Valley National Bank (the "Guarantor"), a Virginia National Bank, for the benefit of GMAC Residential Funding ("RFC"), a Delaware corporation.

WITNESSETH, THAT:

WHEREAS, Summit Financial, LLC ("Client"), a Virginia corporation, desires to sell mortgage loans to RFC under a Client Contract between Client and RFC dated September 25, 2003, which incorporates by reference RFC's Client Guides (such Contract and Guides, as each may from time to time be amended, renewed, replaced, supplemented or otherwise modified, the "Client Contract"); and

WHEREAS, RFC will not consider purchasing such mortgage loans from Client for RFC unless the Guarantor executes this Guaranty relating to the performance by Client of all of its agreements, covenants and undertakings set forth in the Client Contract and all of the obligations and liabilities of Client incurred or to be incurred in respect of, or arising out of, the Client Contract and any of the transactions contemplated thereby (all of the foregoing agreements, covenants, undertakings, obligations and liabilities of Client being hereinafter collectively referred to as the "Guarantied Obligations"); and

WHEREAS, the Guarantor is affiliated with Client and thus finds it advantageous, desirable and in its best interests to comply with the condition precedent that it execute and deliver this Guaranty;

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Guarantor makes the following representations, warranties and agreements to and for the benefit of RFC:

1. The Guarantor hereby absolutely, irrevocably and unconditionally guarantees that Client will completely and faithfully keep, perform and pay in full when due all of the Guarantied Obligations.

2. The Guarantor waives notice of acceptance of this Guaranty and notice of any liability to which it may apply, and waives presentment, demand of payment or performance, protest, notice of dishonor, nonpayment or nonperformance of any such liabilities, and all other notices and demands of any kind and description relating to the Guarantied Obligations now or hereinafter provided for by any statutes, law, rule or regulation. Guarantor agrees that this Guaranty shall be effective and binding as to it notwithstanding that it shall not be signed by any other person or persons.

3. RFC may at any time and from time to time without the consent of, or notice to, the Guarantor, without incurring responsibility to the Guarantor, without affecting, impairing or releasing any of the obligations of the Guarantor hereunder:

- 1 -

(a) alter, change, modify, extend, release, renew, cancel, supplement or amend in any manner the Client Contract or any of the Guaranteed Obligations, and the guaranty and agreements herein made shall continue to apply to the Client Contract and the Guaranteed Obligations after giving effect to any such alterations, change, modification, extension, release, renewal, cancellation, supplement or amendment;

(b) sell, exchange, surrender, realize upon, release (with or without consideration) or otherwise deal with in any manner and in any order any property of any person or entity mortgaged to RFC or otherwise securing the Guaranteed Obligations or otherwise providing recourse to RFC with respect thereto;

(c) exercise or refrain from exercising any rights against Client or others (including the Guarantor) or otherwise act or refrain from acting;

(d) settle or compromise any of the Guaranteed Obligations, any security therefor or other recourse with respect thereto or subordinate the payment or performance of all or any part thereof to the payment of any liability (whether due or not) of Client to creditors of Client, other than RFC and the Guarantor;

(e) apply any sums by whomsoever paid or howsoever realized to any liability or liabilities of Client to RFC regardless of what liability or liabilities of Client remain unpaid;

(f) fail to set off and/or release, in whole or in part, any balance of account or any credit on its books in favor of Client or any other person, and extend credit in any manner whatsoever to Client and generally deal with Client and any security for the Guaranteed Obligations or any recourse with respect thereto as RFC may see fit; and/or

(g) consent to or waive any breach of, or any act, omission or default under, the Client Contract.

4. No invalidity, irregularity or unenforceability of all or any part of the Guaranteed Obligations or of any security therefor or other recourse with respect thereto shall affect, impair or be a defense to this Guaranty and the Guaranty is a primary obligation of the Guarantor.

5. The Guarantor hereby waives any claim, right or remedy which the Guarantor may now have or hereafter acquire against Client that arises hereunder and/or from the performance by the Guarantor hereunder, including without limitation, any claim, remedy or right of subrogation, reimbursement, contribution, exoneration, or indemnification, or any right to participate in any claim, right or remedy of RFC against Client or any security which RFC now has or hereafter acquires, in each case whether such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise.

- 2 -

6. Notwithstanding any other term or provision hereof, if claim is ever made upon RFC for repayment or recovery of any amount or amounts received by it from Client or any other claimant (excluding the Guarantor) in payment of or on account of any of the Guarantied Obligations and RFC is required to repay all or any part of said amount by reason of (i) any judgment, decree or order of any court or administrative body having jurisdiction over RFC or any of its property, or (ii) any settlement or compromise of any such claim effected by RFC with any such claimant (including Client), then and in such event the Guarantor agrees that any such judgment, decree, order, settlement or compromise shall be binding upon the Guarantor, and the Guarantor shall be and remain liable to RFC hereunder for the amount so repaid or recovered to the same extend as if such amount had never originally been received by RFC.

7. Until each and every one of the covenants and agreements of the Client Contract and this Guaranty are fully performed, the Guarantor's obligations hereunder shall not be released, in whole or in part, by any action or thing which might, but for this provision of this Guaranty, be deemed a legal or equitable discharge of a surety or guarantor, or by reason of any waiver, extension, modification, forbearance or delay or other act or omission of RFC or its failure to proceed promptly or otherwise, or by reason of any action taken or omitted by RFC whether or not such action or failure to act varies or increases the risk of, or affects the rights or remedies of, the Guarantor, nor shall any modification of any of the obligations of Client or release of any security therefor by operation of law or by the action of any third party affect in any way the Guarantor's obligations hereunder, and the Guarantor hereby expressly waives and surrenders any defense to its liability hereunder based upon any of the foregoing acts, omissions, things, agreements or waivers or any of them, it being the purpose and intent of the parties hereto that the Guarantied Obligations of Client constitute the direct and primary obligations of the Guarantor and that the covenants, agreements and all obligations of the Guarantor hereunder be absolute, unconditional and irrevocable.

8. The Guarantor hereby represents and warrants to RFC as follows:

   (a) Financial Statements. All financial statements and data which have heretofore been given to RFC with respect to the Guarantor fairly and accurately represent the financial condition of the Guarantor as of the date thereof, and, since the date thereof, there has been no material adverse change in the financial condition of the Guarantor. The Guarantor shall promptly deliver to RFC, or to the Client in time for the Client to deliver the same to RFC, all financial statements of the Guarantor required by the Client Contract.

   (b) No Default. The Guarantor is not in default with respect to any order, writ, injunction, decree or demand of any court or other governmental authority, in the payment of any material debt for borrowed money or under any material agreement evidencing or securing any such debt.

   (c) Solvent. The Guarantor is now solvent, and no bankruptcy or insolvency proceedings are pending or to the best of the Guarantor's knowledge contemplated by or against the Guarantor.

- 3 -

(d) Relationship to the Client. The value of the consideration received and to be received by the Guarantor is reasonably worth at least as much as the liability and obligation of the Guarantor incurred or arising under this Guaranty. The Guarantor has had full and complete access to the Client Contract and all other documents relating to the Guaranteed Obligations, has reviewed them and is fully aware of the meaning and effect of their contents. The Guarantor is fully informed of all circumstances which bear upon the risks of executing this Guaranty and which a diligent inquiry would reveal. The Guarantor has adequate means to obtain from the Client on a continuing basis information concerning the Client's financial condition, and is not depending on RFC to provide such information, now or in the future. The Guarantor agrees that RFC shall not have any obligation to advise or notify the Guarantor or to provide the Guarantor with any data or information. The execution and delivery of this Guaranty is not given in consideration of (and RFC has not in any way implied that the execution of this Guaranty is given in consideration of) RFC's making, extending or modifying any loan to the Guarantor or to any other financial accommodation to or for the Guarantor.

(e) Litigation. There is not now pending against or affecting the Guarantor, nor to the knowledge of the Guarantor is there threatened, any action, suit or proceeding at law or in equity or by or before any administrative agency that, if adversely determined, would materially impair or affect the financial condition of the Guarantor.

(f) Taxes. The Guarantor has filed all federal, state, provincial, county, municipal and other income tax returns required to have been filed by the Guarantor and has paid all taxes that have become due pursuant to such returns or pursuant to any assessments received by the Guarantor, and the Guarantor does not know of any basis for any material additional assessment against the Guarantor in respect of such taxes.

9. Any notice, demand or request by RFC to the Guarantor shall be in writing, and shall either be manually delivered or sent by telefacsimile to the Guarantor or mailed by first class United States mail, postage prepaid, properly addressed to the Guarantor at the address or, as appropriate, the telefacsimile number of the Guarantor specified on the signature page hereof, unless and until changed by notice as herein provided.

10. Any notice or communication shall be deemed effective when manually delivered to the Guarantor, or, if sent by telefacsimile, when sent to the specified telefacsimile number of the Guarantor, or, if mailed, four (4) business days after it was mailed to the specified address of the Guarantor. The Guarantor may change the address to which mailed notice, or the telefacsimile number to which telefacsimile notice is to be sent to the Guarantor by giving RFC not less than thirty (30) days advance written notice thereof sent via United States mail or telefacsimile to One Meridian Crossings, Suite 100 Minneapolis, Minnesota 55423, Attention: Seller Risk Management (telefacsimile (952) 979-2592) or such other address and/or telefacsimile number as RFC may from time to time provide to the Guarantor.

11. This Guaranty shall inure to the benefit of RFC, its successors and assigns, and shall bind the Guarantor and its successors and assigns.

12. Subject to Paragraph 6 hereof, this Guaranty shall terminate when, and only when all of the agreements and undertakings of Client have been fully performed, all in accordance with the provisions of the Client Contract.

13. All remedies afforded to RFC by reason of this Guaranty are separate and cumulative remedies and it is agreed that no one of such remedies, whether exercised by RFC or not, shall be deemed to be in exclusion of any of the other remedies available to RFC and shall in no way limit or prejudice any other legal or equitable remedy which RFC may have hereunder and with respect to the Guarantied Obligations. The Guarantor agrees that included within the equitable remedies available to RFC hereunder is the right of RFC to elect to have any and all of the obligations and agreements of the Guarantor wereunder specifically performed.

14. The Guarantor hereby waives any and all right to cause a marshalling of the assets of Client or any other action by any court or other governmental body with respect thereto or to cause RFC to proceed against any security for the Guarantied Obligations or any other recourse which RFC may have with respect thereto and further waives any and all requirements that RFC institute any action or proceeding at law or in equity against Client or anyone else, or with respect to the Client Contract or any collateral security therefor, as a condition precedent to making demand on, or bringing an action or obtaining and/or enforcing a judgment against, the Guarantor upon this Guaranty, it being agreed that upon failure of Client to perform its duties under the Client Contract or to pay any or all of the Guarantied Obligations, the Guarantor's obligations hereunder shall without further act mature immediately and automatically, without notice or demand or any other action by RFC. The Guarantor further acknowledges that time is of the essence with respect to its obligations under this Guaranty. The Guarantor shall not have any right of setoff against RFC with respect to any of its obligations hereunder. Any remedy or right hereby granted which shall be found to be unenforceable as to any person or under any circumstance, for any reason, shall in no way limit or prevent the enforcement of such remedy or right as to any other person or circumstance, nor shall such unenforceability limit or prevent enforcement of an other remedy or right hereby granted.

15. The Guarantor hereby agrees to indemnify RFC against any and all loss, cost, damage or expense of any nature whatsoever (including, without limitation, reasonable attorneys' fees) arising out of or in connection with the enforcement of the Client Contract or arising out of or in connection with any failure of the Guarantor to fully and timely perform its obligations under this Guaranty.

- 5 -

16. The Guarantor expressly agrees that its liability and obligations under this Guaranty shall not in any way be affected by the institution by or against Client or any other person or entity of any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or any other similar proceedings for relief under any bankruptcy law or similar law for the relief of debtors and that any discharge of any of the Guarantied Obligations pursuant to any such bankruptcy or similar law or other law shall not discharge or otherwise affect in any way the obligations of the Guarantor under this Guaranty, and that upon the institution of any of the above actions, at the sole discretion of RFC the Guarantor's obligations shall be enforceable against the Guarantor.

17. This Guaranty (a) constitutes the entire agreement of the Guarantor and RFC, for whose benefit this Guaranty is made, with respect thereto and supersedes any and all written or oral agreements with respect thereto, (b) may not be amended or supplemented except by a writing signed by the Guarantor and RFC, and (c) shall be construed and enforced in accordance with the internal law, and not the law of conflicts, of the State of Minnesota. In addition, no waiver of any right of RFC hereunder shall be effective unless given in a writing signed by RFC which specifically refers to this Paragraph 15 of this Guaranty and no such waiver shall imply the giving of, or obligate RFC to give, any other waiver hereunder.

18. THE GUARANTOR, BY EXECUTION AND DELIVERY HEREOF, AND RFC, BY ITS ACCEPTANCE HEREOF, HEREBY (i) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY A JURY, AND (ii) WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN, KNOWINGLY AND VOLUNTARILY, BY THE GUARANTOR AND BY RFC, AND THIS WAIVER IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT OF A JURY TRIAL WOULD OTHERWISE ACCRUE. RFC IS HEREBY AUTHORIZED AND REQUESTED TO SUBMIT THIS WAIVER TO ANY COURT HAVING JURISDICTION OVER THE SUBJECT MATTER AND THE PARTIES HERETO, SO AS TO SERVE AS CONCLUSIVE EVIDENCE OF THE FOREGOING WAIVER OF THE RIGHT TO JURY TRIAL. FURTHER, THE GUARANTOR HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF RFC, INCLUDING RFC'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, TO THE GUARANTOR OR HIS REPRESENTATIVES OR AGENTS THAT RFC WILL NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION.

IN WITNESS WHEREOF, the Guarantor has executed this Guaranty as of the date and year first above written.

By:
CYNTHIA J. LAYMAN
Its: SENIOR VICE PRESIDENT

Address and Telefacsimile Number for Notices
SHENANDOAH VALLEY NATIONAL BANK
100 WEST JUBAL EARLY DRIVE
WINCHESTER, VA 22601

Telefacsimile Number: 540-450-3293

- 7 -