# Exhibit A

# Correspondent Client Agreement

**GMAC RFC**
Correspondent Lending

This Agreement is made this ___7th___ day of ___August___, 19_98_ by and between GMAC/Residential Funding Corporation's Correspondent Division ("GMAC/RFC") and ___CMG Mortgage, Inc.___ ("the Client").

## RECITALS

A. The parties to this Agreement wish to establish a non-exclusive relationship whereby the Client will submit Loans secured by liens against 1-4 Family residential properties, or other property types described by amendment (the "Loans") to GMAC/RFC on behalf of the Client's clients ("Borrowers") for possible purchase by GMAC/RFC.

B. The parties wish to enter into this Agreement to set forth the terms of their relationship.

NOW, THEREFORE, the parties hereby agree as follows:

## AGREEMENT

**1. Relationship of Parties.**

The relationship between the parties is an independent contractor relationship. The Client is not an agent of GMAC/RFC and shall not represent to third parties that it is acting as an agent for GMAC/RFC, nor shall it use GMAC/RFC's name in any advertising without GMAC/RFC's express prior written consent. Nothing contained in this Agreement shall obligate the Client to submit all Loans to GMAC/RFC or obligate GMAC/RFC to purchase all Loans submitted by the Client.

**2. Loan Packages.**

The Client shall be responsible for the accurate preparation and execution of a complete property and credit Loan package on each Loan submitted for purchase. The Loan package shall conform to GMAC/RFC's policies and procedures as established and as may be modified from time to time. The Client hereby acknowledges receipt of a copy of the GMAC/RFC Client Guide. All loans sold by Client to GMAC/RFC shall be originated pursuant to the loan programs and underwriting guidelines set forth in the Client Guide. GMAC/RFC shall periodically inform the Client of its eligibility criteria and registration procedures for the making of Loans based on factors such a type of loan, loan limits, loan-to-value ratios, interest rates, points and fees, payment features, documentation requirements and credit standards. GMAC/RFC may also prescribe procedures for registration of Loans with GMAC/RFC, including, but not limited to, the procedure for locking-in the interest rate and/or points on Loans. GMAC/RFC is not required to accept any real estate appraiser or other vendor in connection with the preparation or submission of any Loan package that is not acceptable to GMAC/RFC.

**3. Submission of Loans; Decision to Purchase.**

With respect to each Loan, GMAC/RFC will review the related Loan Package to determine if it complies with GMAC/RFC requirements. GMAC/RFC shall not be under any obligation to purchase any Loan, and shall have the right to reject any Loan if GMAC/RFC determines in its sole discretion that the Loan is unacceptable. GMAC/RFC shall decide solely for its own benefit and account whether to purchase a Loan; provided, however, that in no event shall GMAC/RFC's decision to purchase a Loan affect any of Client's representations and warranties, repurchase and indemnification obligations, or other duties set forth in this Agreement.

From the date Client submits a Loan package to GMAC/RFC until (a) GMAC/RFC indicates to Client its determination not to purchase the Loan or (b) GMAC/RFC purchases the Loan, Client will not offer the Loan for purchase to any other person. GMAC/RFC shall, as promptly as possible, but not later than five (5) business days after Client's submission of the related Loan Package, communicate to Client GMAC/RFC's decision whether or not it will purchase the related Loan.



4. **Conditions Precedent to Purchase.**

GMAC/RFC's obligation to purchase and pay for a Loan is subject to the following conditions:

(a) <u>Delivery of Loan File</u>. Purchaser shall have received the Loan package containing executed originals of all Loan documents in form and substance satisfactory to GMAC/RFC, including, without limitation, the promissory note (the "Note") evidencing the borrower's obligation to repay the Loan (endorsed by an authorized officer of Client as follows: "*Pay to the order of GMAC/RFC without recourse*"), the related mortgage, deed of trust or other security instrument (the "Mortgage") and an instrument of assignment of the Mortgage duly executed by Client on or prior to the purchase date of the related Loan (the "Purchase Date"). In all instances where Client cannot deliver the originals of the recorded Mortgage or the original mortgagee policy of title insurance as a part of the Loan File because of a delay associated with recording (provided such delay is not caused by Client), Client may deliver certified true copies of the Mortgage or the mortgagee title insurance binder as the case may be, accompanied, in the case of Mortgage, by an affidavit of an authorized officer of Client stating that the original of such Mortgage was delivered to the appropriate recording office in the county wherein the Mortgaged Property is located. In such instances, Client shall deliver to GMAC/RFC the originals of these documents promptly upon receipt of same, but not later than one hundred twenty (120) days after the Purchase Date of the related Loan. If Client fails to deliver to GMAC/RFC said original Mortgage and mortgagee policy of title insurance within such 120-day period, Client shall repurchase the related Loan within ten (10) calendar days after GMAC/RFC's written request; provided, however, that Client may deliver to GMAC/RFC within such 120-day period in lieu of said original Mortgage a copy thereof, with recording information thereon, certified by the appropriate recording official of the county wherein the Mortgaged Property is located.

(b) <u>Loan Approval</u>. GMAC/RFC will notify Client of its decision to purchase or not to purchase each Loan submitted. Any decision to purchase a submitted Loan will be evidenced by a Loan Underwriting Transmittal Form, which will list additional conditions precedent that must be fulfilled before GMAC/RFC becomes obligated to purchase such Loan.

5. **Purchase of Loans.**

Subject to the terms and conditions set forth herein, Client shall sell, assign, and transfer to GMAC/RFC, and GMAC/RFC shall buy, on the Purchase Date, for the purchase price (the "Purchase Price"), all Client's right, title and interest in and to each Loan.

(a) <u>Purchase Price</u>. The Purchase Price for each Loan delivered by Client shall be calculated in accordance with the GMAC/RFC individual loan commitment price. Solely for purposes of determining the Purchase Price for each Loan to be purchased pursuant to the Agreement, GMAC/RFC shall be entitled to all payments of principal and interest collected on and after the Purchase Date. Any payments received by Client on or after the Purchase Date of the loan shall be forwarded to GMAC/RFC by overnight mail within one (1) business day of receipt.

(b) <u>Servicing</u>. It is the intention of GMAC/RFC and Client that the sale of each Loan thereunder shall be made on a servicing-released basis. Simultaneously with the purchase of each Loan thereunder and in consideration of GMAC/RFC's payment of the Purchase Price, Client shall transfer all servicing rights and benefits to GMAC/RFC. Client shall deliver within five (5) days of the Purchase Date such notices to the related borrowers concerning the transfer of the servicing of the Loans as may then be required by applicable state and federal law. Client shall within twenty (20) days of the Purchase Date (the "Servicing Transfer Date") deliver to GMAC/RFC documentation sufficient to enable GMAC/RFC or its designated representative to service such Loan in compliance in all material respects with all rules, orders and regulations of federal and state governments and other duly appointed authorities with jurisdiction over such Loan. Client shall take any and all action necessary to transfer to GMAC/RFC on or before the Servicing Transfer Date all interest of Client in, and to make GMAC/RFC the loss payee of, each mortgagee title insurance policy, hazard insurance policy and each other insurance policy constituting a portion of the Loan package.

## 6. The Client's Warranties.

The following representations and warranties are in lieu of *all* representations and warranties contained in the GMAC/RFC Client Guide. The Client Guide is intended to guide Client through GMAC/RFC's programs and procedures only, and is not intended to supplement or replace the warranties contained in this Agreement. The Client Guide's reference to condominium classifications remains in effect.

The Client represents and warrants to GMAC/RFC, as of (i) the time any Loan package is submitted to GMAC/RFC, and (ii) as of the time the Loan is purchased by GMAC/RFC, that:

### a. DULY LICENSED.
The Client possesses all necessary licenses, permits, and authority to engage in the activities contemplated by this Agreement.

### b. COMPLIANCE WITH LAWS.
With respect to each Loan submitted by the Client and purchased by GMAC/RFC, the Client has complied with all laws and regulations related to performance of the Client's responsibilities pursuant to this Agreement, including, but not limited to the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, and any other applicable local, state and federal laws and regulations.

### c. NO UNTRUE STATEMENTS.
The Client shall not submit in any Loan package any false, fraudulent or erroneous information or statements, or omit any material fact necessary to make any statement or information included in the Loan package true, accurate and understandable. For purposes of this warranty, the term "submit" shall mean (i) submitting a Loan package to GMAC/RFC with false, fraudulent or erroneous information, with actual knowledge thereof; or (ii) submitting a Loan package to GMAC/RFC with false, fraudulent or erroneous information after failing to follow standard practices and procedures prevalent in the mortgage banking industry which, if followed, would have led to the discovery or disclosure thereof, or (iii) submitting a Loan package to GMAC/RFC with false, fraudulent or erroneous information where such information was or should have been within the knowledge or control of the Client, or (iv) submitting a Loan package to GMAC/RFC containing an appraisal that contains false, fraudulent or erroneous information where such information was or should have been within the knowledge or control of the Client.

### d. OWNERSHIP.
Except as otherwise disclosed to GMAC/RFC in writing before the submission of any Loan package, the Client shall have no direct or indirect ownership interest in any property acting as security for the Loan, or any business or personal affiliation with or interest in, any provider of settlement services on the Loan, including, but not limited to, the credit reporting agency, real estate agents, appraiser, and title agent.

### e. ABSENCE OF CLAIMS.
Except as previously disclosed by the Client to GMAC/RFC in writing, there is not pending or, to the best of the Client's knowledge, threatened any suit, action, arbitration, or legal, administrative, or other proceeding or governmental investigation (including an investigation undertaken in response to an allegation of fraud by another lender or an investigation undertaken pursuant to a license revocation proceeding) against the Client which could have a materially adverse effect on the Client's business, assets, financial condition, operations or reputation.

### f. AUTHORITY
This Agreement and all actions provided for in the Agreement have been duly authorized by the Client's Board of Directors, if the Client is a corporation, or by such individual or individuals empowered and authorized to enter into agreements on behalf of the Client. This Agreement constitutes a valid and legally binding agreement of the Client enforceable in accordance with its terms.

### g. SALE OF LOANS.
The Client has no knowledge of any circumstances or conditions with respect to any Loan that can be reasonably expected to cause any governmental, quasi-governmental or private institutional investors to regard any Loan as an unacceptable investment, cause any Loan to become delinquent or adversely affect the value or marketability of any Loan.

### h. GOOD TITLE.




The Client has good title to, and is the sole owner of, each Loan delivered and sold to GMAC/RFC, and the assignment of the Loan by the Client validly transfers such Loan to GMAC/RFC free and clear of any pledge, lien, or security interest or other encumbrance.

*i. EVENT OF ACCELERATION.*
There is no default, breach, violation or event of acceleration existing under any Note or Security Instrument transferred to GMAC/RFC and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violations or event of acceleration has been waived by the Client or by any other entity involved in originating or servicing the Loan.

*j. NO DEFENSES.*
Except as provided in an buydown or subsidy agreement, if any, meeting GMAC/RFC requirements, the Borrower (including any party secondarily liable under the Loan Documents) has no right to set-off, defense, counterclaim or right of recession as to any Loan Document.

*k. SERVICING LICENSING.*
The Client and any other originator, servicer or other previous owner of each Loan has obtained all licenses and effected all registrations required under all applicable local, State and federal laws, regulations and orders by virtue of any of the activities conducted, or property owned, by the Client or any such other originator, servicer, or other previous owner of any Loan.

*l. SERVICING.*
The mortgage Loan has been serviced by the Client and any predecessor servicer in accordance with the terms of the mortgage Note. With respect to escrow deposits and escrow payments, if any, all such payments are in the possession of, or under the control of, the Client and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits or escrow payments or other charges or payments due the Client have been capitalized under any mortgage or the related mortgage Note.

*m. NO LOAN MODIFICATIONS.*
The provisions of the Loan have not been impaired, waived, altered or modified in any respect, unless approved in writing by GMAC/RFC.

*n. FULL DISBURSEMENT.*
Each Loan has been closed and fully disbursed, except permitted Escrows for postponed improvements and repairs. There are no payoffs, assumptions, or insurance claims pending on any Loan or pertaining to the Mortgaged Premises, and the Borrower may not exercise any option under any of the Loan Documents to borrow additional funds secured thereby from the Client or any other person or entity without the Noteholder's consent.

Additionally, the Client warrants that the Client has not made arrangements with any Borrower for any payment forbearance or future refinancing with respect to any Loan.

*o. TITLE INSURANCE.*
A policy of title insurance, in the form and amount required by GMAC/RFC, was effective as of the closing of each Loan, is valid an binding, and remains in full force and effect, unless the Mortgaged Premises are located in the State of Iowa and an attorney's certificate has been provided. No claims have been made under such title insurance policy and no holder of the related mortgage, including the Client, has done or omitted to do anything which would impair the coverage of such title insurance policy.

*p. VALID FIRST OR SECOND LIEN.*
Each Security Instrument submitted under a first lien loan program and transferred to GMAC/RFC constitutes a valid first lien on the Mortgaged premises subject only to the minor impediments as allowed by GMAC/RFC, and such impediments do not adversely affect the value, use, enjoyment or marketability of the Mortgaged Premises. Each Security Instrument and all related documents (including, without limitation, assumption agreements, assignments, amendments, powers of attorney, and modification, extension and consolidation agreements) that are required to be recorded or filed under applicable law in order to preserve in favor of GMAC/RFC the validity and enforceability of the Security Instrument and the liens created thereby, have been duly recorded in all appropriate recording offices and all associated recording fees or taxes have been paid.

Unless the Home Equity Loan is a valid first lien on the Mortgaged Premises, the following representation and warranty applies:

VALID SECOND LIEN:
Each Security Instrument submitted under a second lien loan program and transferred to GMAC/RFC constitutes a valid lien on the Mortgaged Premises which is subordinated only to a lien of the holder of a first mortgage Loan, and is subject only to the minor impediments as allowed by GMAC/RFC. No such impediment shall adversely affect the value, use, enjoyment or marketability of the Mortgaged Premises.

*q. NO ENCROACHMENTS BY ADJOINING PROPERTIES*
No improvements by adjoining properties encroach upon the Mortgaged Premises in any respect so as to affect the value or marketability of the Mortgaged Premises.

*r. SURVEY.*
All improvements which were considered in determining the appraised value of the Mortgaged Premises lie wholly within the boundaries and the building restriction lines of the Mortgaged Premises, or the policy of title insurance affirmatively insures against loss or damage by reason of any violations, variation, encroachment or adverse circumstance that either is disclosed or would have been disclosed by an accurate survey.

*s. NO LIENS.*
There are no delinquent tax or delinquent assessment liens against the Mortgaged Premises, and there are no mechanic's liens or claims for work, labor or material or any other liens affecting the Mortgaged Premises, which are or may be a lien prior to, or equal with, the lien of the Security Instrument assigned to GMAC/RFC, except those liens that are insured against by the policy of title insurance and described in (*o*) above.

*t. NO ADVERSE CIRCUMSTANCES.*
The Mortgaged Premises are free of damage and in good repair, and no notice of condemnation has been given with respect thereto and no circumstances exist involving the Loan Documents, the Mortgaged Premises or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the value or marketability of the Mortgaged Premises or the Loan. The Client warrants that it neither has actual knowledge of the presence of, nor reasonable grounds to suspect the presence of, any toxic materials or other environmental hazards on, in or that could affect any of the Mortgaged Premises. The Client warrants compliance with local, State or federal law or regulation designed to protect the health and safety of the occupants of the property.

*u. CASUALTY INSURANCE*
The improvements upon the Mortgaged Premises are insured against loss by fire and other hazards, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The Security Instrument requires that Borrower to maintain such casualty insurance at the Borrower's expense, and on the Borrower's failure to do so, authorizes the holder of the Security Instrument to obtain and maintain such insurance at the Borrower's expense and to seek reimbursement therefore from the Borrower.

*v. PRIMARY MORTGAGE INSURANCE.*
If required, primary mortgage insurance has been obtained, the premium has been paid, and the mortgage insurance coverage is in full force and effect.

*w. UNDERWRITING; APPRAISER; APPRAISAL.*
The Loan is of investment quality, and has been prudently originated and underwritten. The appraisal was made by an appraiser who meets GMAC/RFC' minimum qualifications for appraisers. The market value of the Mortgaged Premises is at least equal to the appraised value stated on the Loan appraisal except to the extent that the market value of the Mortgaged Premises is lower than the appraised value due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the Client has actual knowledge or reasonable grounds to suspect.

## 7. Indemnification.

In addition to any other rights and remedies that GMAC/RFC may have, the Client shall indemnify and hold harmless GMAC/RFC and its shareholders, directors, officers, agents, successors, and assignees from any losses (including loss of servicing rights) damages, suits, claims, or expenses of any nature (including attorney's fees) against GMAC/RFC resulting from (i) any breach of any representation or warranty contained in paragraph 6 above; or (ii) the Client's failure to perform any obligation set forth in this Agreement. The Client's obligation to indemnify GMAC/RFC under this Agreement shall not be affected by GMAC/RFC's taking any of the following actions with or without notice to the Client (i) liquidation, repayment, retirement or sale or resale of any Loan; (ii) foreclosure of any Loan; or (iii) sale or resale of the property securing the Loan.

## 8. Repurchase Agreement.

### A. CLIENT'S REPURCHASE OBLIGATIONS

1. Client shall repurchase any Loan sold to GMAC/RFC pursuant to this Agreement within twenty business days of receipt of written notice from GMAC/RFC of any of the following circumstances (the "Repurchase Obligation"):

(a) Client fails to deliver to GMAC/RFC within 120 days from the date each Loan was purchased the original documents as required by GMAC/RFC.

(b) GMAC/RFC determines that there is any evidence of fraud in the origination of the Loan or in the sale of the Loan to GMAC/RFC.

(c) Mortgage insurance coverage is denied on the Loan.

(d) Client shall not have the right to advance funds for or on behalf of a Borrower for any delinquent payment or to otherwise make funds available to any Borrower to avoid or cure a default by the Borrower. A payment for which GMAC/RFC deducted funds at the time it purchased the Loan from Client shall not be considered the first payment due GMAC/RFC.

(e) Client fails to observe or perform or breaches in any material respect any of the representations, warranties or agreements contained in this Agreement with respect to a particular Loan.

2. The option to request or accept repurchase of any Loan is at the sole discretion of GMAC/RFC. Notwithstanding that a Client may be obligated to pursuant to the terms of this Section 8.A to repurchase a Loan, if such Loan is in compliance with all requirements of this Agreement at the time of its purchase by GMAC/RFC and if there is no evidence of fraud or misrepresentation in connection with the Loan, GMAC/RFC, in its sole discretion and on the terms determined solely by GMAC/RFC, may consider permitting Client to indemnify GMAC/RFC against all suits, costs damages, losses, fees or claims, including without limitation reasonable attorney's fees, which may be incurred by GMAC/RFC in connection with such Loan. Such indemnification shall be substantially in the form of the applicable Indemnification Agreement, the provisions of which shall include without limitation, the requirement that the Client shall pay to GMAC/RFC, at the time that the Indemnification Agreement is executed, the amount specified by GMAC/RFC as the amount necessary to cover its projected and potential costs and losses, and including the service release premium and premium pricing paid by GMAC/RFC to the Client with respect to the Loan.

3. It is agreed by the parties that Client's Repurchase Obligation with respect to a Loan shall not be obviated by the fact that the property securing the Loan has been foreclosed upon and said property has been acquired by GMAC/RFC or a third party, it being understood that the term Repurchase Obligation encompasses within its meaning the repurchase to the property from GMAC/RFC if GMAC/RFC has acquired the property, or, if a third party has acquired the property, reimbursing GMAC/RFC in the amount specified in Section 8.B. of this Agreement.

4. It is further agreed by the parties that if GMAC/RFC has made demand on Client to repurchase a Loan pursuant to Section 8.A of this Agreement, GMAC/RFC shall have the right to withhold any monies due Client in connection with the Loan(s) subject to the Repurchase Obligation or any other Loans until the parties have agreed that the Repurchase Obligation is satisfied.

### B. REPURCHASE PRICE

1. The repurchase price for Loans subject to a Repurchase Obligation pursuant to Section 8.A hereof shall be as follows:

   (a) The current unpaid principal balance of such Loan; plus

   (b) All interest accrued but unpaid on the principal balance of the Loan from the paid-to-date of the loan through and including the last day of the month in which the repurchase is made; plus

   (c) Any pricing in excess of par paid by GMAC/RFC with respect to such Loan; plus

   (d) All costs and expenses, including but not limited to reasonable fees and expenses of counsel, incurred by GMAC/RFC in enforcing Client's Repurchase Obligations hereunder; less

   (e) Any proceeds of mortgage insurance with respect to the Loan collected by GMAC/RFC.

Upon any such repurchase of Loans by Client, GMAC/RFC shall endorse the promissory note (without recourse) and shall assign any security interest (in recordable form and without recourse) to Client.

### 9. Early Pay-Offs, Solicitations.

In the event that a Loan purchased by GMAC/RFC from Client under the terms of this Agreement is repaid by the Borrower within 90 days of the Purchase Date, Client shall remit to GMAC/RFC, within 10 business days of notification, all pricing in excess of par paid by GMAC/RFC in connection with the purchase of the Loan.

On any loan sold to GMAC/RFC, Client agrees to refrain from actively soliciting such borrower for any future mortgage products.

### 10. Termination of Agreement.

Either party may terminate this Agreement at any time, upon written notice to the other party. Any termination shall not affect (i) GMAC/RFC's obligations to purchase any Loan which GMAC/RFC has committed to purchase; (ii) GMAC/RFC's obligation to pay any amounts due the Client under this Agreement; or (iii) the obligations of the Client with respect to indemnification pursuant to paragraph 7, repurchase pursuant to paragraph 8 or early payoffs pursuant to paragraph 9.

### 11. Notice of Certain Matters.

The Client shall promptly give written notice to GMAC/RFC of (i) the occurrence of any breach of a representation or warranty as set forth in paragraph 6 of this Agreement; (ii) any event or condition which could have material adverse effect on the business, operations, assets or financial condition of the Client; and (iii) receipt by the Client of notice from any agency concerning revocation or suspension of the Client's license to conduct business.

### 12. Miscellaneous.

*a. GOVERNING LAW.*
This Agreement shall be governed by the laws of the State of Minnesota.

*b. NOTICES.*
All notices required to be provided pursuant to this Agreement shall be delivered to the addresses provided below. Notices shall be in writing and shall be deemed to have been given and received only (i) upon delivery, if personally delivered to a party; (ii) one business day after the date of dispatch, if by facsimile transmission; (iii) one business day after deposit, if delivered by a nationally recognized courier service offering guaranteed overnight delivery; or (iv) three business days after deposit in the United States first class mail, certified mail, postage prepaid, return receipt requested.

*c. ASSIGNMENT.*
The Client may not assign this Agreement without prior consent of GMAC/RFC. GMAC/RFC may assign this Agreement upon written notice to the Client.

*d. SEVERABILITY.*
If any provision of this Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision of this Agreement.

*e. ENTIRE AGREEMENT.*
This Agreement constitutes the entire agreement between the parties and supersedes all prior agreements and understandings. No supplement, modification, or amendment shall be binding unless executed in writing by both parties.

*f. WAIVERS.*
No waiver of any provision of the Agreement, whether by conduct or otherwise, shall be deemed or shall constitute a waiver of any other provision. No waiver shall be binding unless executed in writing by the party making the waiver.

*g. ATTORNEYS' FEES.*
If any legal action or other proceeding is brought for the enforcement of any provision of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement, the prevailing party or parties shall be entitled to reasonable attorneys' fees and other costs incurred in that action or proceeding.

IN WITNESS WHEREOF, the parties have signed this Agreement on the date set forth above.

**GMAC/RFC:** GMAC/RFC
Address: ONE MERIDIAN CROSSINGS    MINNEAPOLIS, MN
Fax: _____
By: *(Signature)* Brian Woodbury
(Print Name) BRIAN WOODBURY
(Title) DIRECTOR

**Client:** CMG Mortgage, Inc.
Address: 3160 Crow Canyon Road, Suite 240, San Ramon, CA 94583
Fax: (925) 866-1569
By: *(Signature)*
(Print Name) Christopher M. George
(Title) President

Correspondent Client Agreement

GMAC/RFC (051898)
Page 8 of 8

 

# Client Contract

**GMAC RFC**

This Client Contract (as amended from time to time, the "Contract") between Residential Funding Corporation ("GMAC-RFC") and  CXG Mortgage, Inc.  (the "Client") is dated as of  December 12 , 20 00 .

Client desires to sell residential mortgage loans ("Loans") to, and/or service Loans for, GMAC-RFC, and GMAC-RFC desires to purchase Loans from, and/or have Client service Loans for, GMAC-RFC pursuant to the terms and conditions of this Contract and the applicable Guides (as Guides is defined below).

In consideration of the above premises, and of the mutual agreements set forth below, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Client and GMAC-RFC agree as follows:

1.  **Guides.** GMAC-RFC has approved Client to sell Loans to, and/or service Loans for GMAC-RFC, under the Guide(s) checked below, which Guide(s) are incorporated by reference into this Contract (as amended from time to time, the "Guides").

**STATUS**
- ☒ Client Only
- ☐ Servicer Only
- ☐ Client and Servicer

**APPLICABLE GUIDES**
- ☒ Client Guide
- ☐ Servicer Guide

Upon the execution by GMAC-RFC and Client and delivery of an addendum to this Contract, GMAC-RFC may in the exercise of its sole discretion approve Client to sell Loans to, and/or service Loans for, GMAC-RFC under other Guides than those checked above. All capitalized terms used in this Contract and not otherwise defined shall have the meanings set forth in the applicable Guides.

2.  **Commitment Letters.** Pursuant to the applicable Guides' terms, GMAC-RFC may offer to enter into one or more Commitment Letters with Client. By executing a Commitment Letter and delivering it to GMAC-RFC, Client agrees to abide by its terms and conditions, which terms and conditions constitute a material part of this Contract, as if set forth expressly herein.

3.  **Amendments and Governing Contract.** This Contract and any Commitment Letter may only be amended in writing signed by both parties. The Guides may be amended only as set forth in the applicable Guide. In the case of any inconsistency between this Contract and the applicable Guide, this Contract's terms and conditions shall control. In the case of any inconsistency between either: (i) this Contract and any Commitment Letter; or (ii) the applicable Guide and any Commitment Letter, the Commitment Letter's terms and conditions shall control.

4.  **Representations and Warranties.** Client hereby makes to GMAC-RFC all of Client's representations and warranties set forth in the applicable Guides. Client also hereby covenants to GMAC-RFC that Client shall continue to comply with all of Client's covenants and obligations set forth in the applicable Guides, each Commitment Letter, and/or this Contract. Pursuant to the terms of the applicable Guides, GMAC-RFC's rights and remedies with respect to any breach of the above-referenced Client representations, warranties, and covenants will survive delivery and Funding of any Loan and the termination or suspension of this Contract, any Commitment Letter, any other program documents, or the applicable Guides.

5.  **Board of Directors Resolution.** Along with the execution of this Contract, Client shall delivery to GMAC-RFC the certified resolution of its Board of Directors authorizing this Contract's execution and delivery.

6.  **GMAC-RFC's Remedies.** If an event of default shall occur, GMAC-RFC may exercise, at its option, one or more of the remedies set forth in the applicable Guides.

7.  **Suspension and Termination.** This Contract, other program documents, Commitment Letters, and any applicable Guides may be suspended or terminated as set forth in the applicable Guides.

8. **Client's Status as Independent Contractor.** At no time shall Client represent that it is acting as GMAC-RFC's agent. Client shall act, at all times, as an independent contractor.

9. **Prior Agreements Superseded.** This Contract restates, amends and supersedes any and all prior Contracts or agreements between the parties except that any subservicing agreement executed by Client in connection with any loan-security exchange transaction shall not be affected.

10. **Assignment.** Client may not assign or transfer this Contract, in whole or in part, without GMAC-RFC's prior written consent. GMAC-RFC may sell, assign, convey, hypothecate, pledge, or in any other way transfer, in whole or in part, without restriction, its rights under this Contract and the applicable Guides with respect to any Commitment or Loan.

11. **Notices.** All notices, requests, demands or other communications that are to be given under this Contract shall, if to GMAC-RFC be as set forth in the applicable Guides and if to Client to the addresses and facsimile numbers specified in as set forth below.

> CMG Mortgage, Inc.
>
> 3160 Crow Canyon Road  # 300
>
> San Ramon, CA  94583

Attention: Christopher M. George

Facsimile Number: (925) 866-2002

12. **Jurisdiction and Venue.** The parties submit to the jurisdiction of any state or federal court located in Hennepin County, Minnesota, and the parties irrevocably agree that all claims may be heard or determined in such state or federal court. The parties waive the defense of an inconvenient forum and any other substantive or procedural rights or remedies it may have in any other forum. The parties agree that a final judgment in any action between the parties shall be conclusive and may be enforced in any other jurisdiction than that set forth above. The parties further agree not to institute any legal actions or proceedings against the other party, or any director, officer, employee, attorney, agent or property of the other party, arising out of or relating to this Contract in any court other than as specified in this paragraph.

13. **Miscellaneous.** This Contract, including all documents incorporated by reference, constitutes the entire understanding between the parties and supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether written or oral, with respect to the transactions contemplated by this Contract. All paragraph headings contained herein are for convenience only and shall not be construed as part of this Contract. Any Contract provision that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction, and, to this end, the provisions hereof are severable. This Contract shall be governed by, and construed and enforced in accordance with, applicable federal laws and the laws of the State of Minnesota. This Contract may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and either of the parties may execute this Contract by signing any such counterpart.

IN WITNESS WHEREOF, Client's and GMAC-RFC's duly authorized officers have executed this Contract as of the date first written above.

CLIENT: CMG Mortgage, Inc.

By: _____
    (Signature)

Name: Christopher M. George
      (Typed or Printed)

Title: President

RESIDENTIAL FUNDING CORPORATION

By: _____
    (Signature)

Name: Darrin George
      (Typed or Printed)

Title: Supervisor

JAN 16 2002 9:50AM    CMG MORTGAGE CO        9258668597        P.2
JAN 16 2002 12:06 FR RESIDENTIAL FUNDING    9529792592 TO 9192▓▓78082    P.01/02
01/15/02  12:25 FAX 5108670511    GATEWAY BANK F S B         ☒002/003
JAN 14 2002 16:21 FR RESIDENTIAL FUNDING    9529792592 TO 915106670511    P.02/03

**GMAC RFC**

January 14, 2002

CMG Mortgage Inc.                          Gateway Bank, FSB.
3160 Crow Canyon Road, Suite 350           2308 Merced St.
San Ramon, CA 94583                        San Leandro, CA 94577
Attention: Christopher M. George           Attention: Ron Klehm

Ladies and Gentlemen:

Reference is made to the Client Agreement dated as of December 12, 2000 ("Agreement"), by and between RESIDENTIAL FUNDING CORPORATION ("RFC") and CMG Mortgage Inc. ("Client"), the Client Guide referred to therein, and any commitments to purchase Loans issued thereunder (collectively, the "RFC Agreements"). Terms capitalized and used herein without being defined shall have the meanings given to them in the Agreement and the Client Guide.

Pursuant to the RFC Agreements, RFC may from time to time agree to purchase specific Loans from Client (each such agreement, a "Purchase Commitment"). Client may from time to time sell Loans covered by a Purchase Commitment ("RFC Loans") to, or finance RFC Loans with, Gateway Bank, FSB. ("Gestation Provider") prior to purchase the RFC Loans by RFC. Client has requested that RFC consent to the sale or pledge of Purchase Commitments to Gestation Provider in connection with the sale of the related RFC Loans.

RFC consents to the sale or pledge of Purchase Commitments to Gestation Provider as described above, subject to the following:

1. RFC is hereby authorized and directed by Client to remit proceeds of the purchase of RFC Loans to Gestation Provider as instructed by the Gestation Provider via the Bailee Letter. Any loans not purchased by RFC will be returned to the proper location via the terms of the Bailee Letter, which must be provided with each note. Thus RFC agrees to the remittance of proceeds or the return of the note(s) as outlined on each Bailee Letter. RFC shall otherwise have no obligation to comply with any instructions received by RFC from Gestation Provider.

2. All RFC Loans shall, for purposes of the RFC Agreements, be deemed to have been sold by Client to RFC, and Client shall remain responsible for all of its representations, warranties, indemnities and other agreements set forth in the RFC Agreements. No assignment of RFC Loans to Gestation Provider, and nothing in this consent letter, shall relieve Client of its obligation to indemnify and/or repurchase in accordance with the RFC Agreements or release Client from and any all obligations to RFC under the RFC Agreements.

3. Gestation Provider will have no greater rights under the Purchase Commitments than Client. Without limiting the generality of the foregoing, RFC's obligation to purchase each RFC Loan pursuant to the Purchase Commitment remains subject to all of the limitations, conditions and other terms of the RFC Agreements.

1 of 2

JAN 16 2002 9:50AM  CMG MORTGAGE CO                  9258668597           p.3
JAN 16 2002 12:06 FR RESIDENTIAL FUNDING  9529792592 TO 9192  78082       P.02/02
01/15/02  12:25 FAX 5106870511          GATEWAY BANK F S B                ☒003/003
     JAN 14 2002 15:22 FR RESIDENTIAL FUNDING  9529792592 TO 9151066870511  P.03/03

January 14, 2002
Page 2

If the foregoing is acceptable, please acknowledge your acceptance in the space indicated below. This consent will not be effective until RFC has received executed counterparts hereof from Client and Gestation Provider.

Very truly yours,

RESIDENTIAL FUNDING CORPORATION

By: _____

Its: Director

ACKNOWLEDGED AND AGREED TO
THIS 14th DAY OF January, 2002

[CMG Mortgage Inc.]

By: _____

Its: PRESIDENT

[Gateway Bank FSB]

By: _____

Its: President - CEO

2 of 2

** TOTAL PAGE.03 **

** TOTAL PAGE.02 **

# CLIENT CONTRACT

Client Contract dated as of October 30, 2008 ("Contract") between Residential Funding Company, LLC, a Delaware limited liability company ("RFC"), GMAC Bank, a Utah industrial bank ("GMACB"), GMAC Mortgage, LLC, a Delaware limited liability company ("GMACM") (individually and collectively, RFC, GMACB and GMACM are "Correspondent Funding") and CMG Mortgage, Inc., a California corporation ("Client").

Client desires to sell Loans to or service Loans for Correspondent Funding and Correspondent Funding desires to purchase Loans from Client, or to have Client service Loans for Correspondent Funding, in each case pursuant to the terms and conditions of this Contract and the applicable Guides. "Loans" means a residential mortgage loan sold or intended to be sold by the Client to Correspondent Funding, or a residential mortgage loan serviced or intended to be serviced by Client for Correspondent Funding and may be further described in the Guides.

Client and Correspondent Funding agree as follows:

1. **Guides.** The GMAC Bank Correspondent Manual, as amended or replaced ("Correspondent Manual") applies to the Loans that are sold to Correspondent Funding and to the sale of Loans to Correspondent Funding. If Client services Loans for Correspondent Funding the terms and conditions of the GMAC-RFC Servicer Guide as amended or replaced, ("Servicer Guide") apply. The Correspondent Manual, and the Servicer Guide are each individually a "Guide" and together the "Guides". Client agrees to all of the terms and conditions of the applicable Guides, including the representations, warranties and covenants.

2. **Commitment Letters.** Correspondent Funding may offer to enter into one or more commitment letters with Client, which may include forward commitments, pricing incentives, or other commitments ("Commitment Letters"). By executing and delivering a Commitment Letter, Client agrees to its terms and conditions.

3. **Incorporation by Reference.** The Guides, Commitment Letters, and any related documents (together with this Contract, the "Program Documents") are incorporated by reference into this Contract as if fully set forth in it.

4. **Amendments.** This Contract and Commitment Letters may be amended only by a writing signed by Correspondent Funding and Client. The Guides may be amended as set forth in the applicable Guide.

5. **Governing Agreement.** This Contract's terms and conditions will control in the event of any direct conflict between this Contract and the applicable Guide. The Commitment Letter's terms and conditions will control in the event of any direct conflict between (i) this Contract and the Commitment Letter, or (ii) the applicable Guide and the Commitment Letter.

6. **Directors' Resolution.** Together with the execution of this Contract, Client must deliver to Correspondent Funding (i) a certified resolution of its board of directors (or its equivalent if Client is an entity other than a corporation) authorizing the execution, delivery and performance of this Contract, (ii) other evidence of existence, good standing and authority as Correspondent Funding may require, and (iii) such other documents as Correspondent Funding may require.

7. **Correspondent Funding's Remedies.** If a default or an event of default (however defined in one or more of the Program Documents) occurs, Correspondent Funding may exercise one or more of the remedies set forth in the applicable Guides.

8. **Suspension and Termination.** Correspondent Funding may suspend or terminate the Program Documents, and Client's ability to sell Loans to, or to service Loans for Correspondent Funding as set forth in the applicable Guides.

9.  **Relationship of the Parties.** As may be further described in the Guides, the relationship between Client and Correspondent Funding is limited to that of a seller on the part of Client and that of a buyer on the part of Correspondent Funding (with respect to Loan sales) and to that of a servicer on the part of Client (with respect to servicing by Client). Client is not Correspondent Funding's agent or partner and will not represent that it is acting as Correspondent Funding's agent or partner.

10. **Assignment.** Client cannot transfer or assign the Program Documents. Correspondent Funding may at any time, without notice to or the consent of Client, transfer or assign, in whole or in part, its rights under the Program Documents, with respect to any Commitment Letter or Loan, and the benefits under the Program Documents will inure to the benefit of Correspondent Funding's successors and assigns.

11. **Notices.** All notices, requests, demands or other communications under this Contract ("Notices") must conform to the requirements of the applicable Guide. Notices to Correspondent Funding must be directed to the address for Notice set forth in the Guides. Notices to Client will be addressed as follows (or at such other address as may be designated by Client in a Notice to Correspondent Funding):

    Client Name: _CMG Mortgage_

    Client Address: _3160 Crow Canyon Rd #400_
    _San Ramon CA 94583_

    Attention: _Paul Chavez_

    Facsimile Number: _925-983-3113_

    E-Mail: _PCHEVEZ@CMGMORTGAGE.com_

12. **Governing Law.** The Program Documents are governed by the laws of the State of Minnesota, without reference to its principles of conflicts of laws.

13. **Jurisdiction and Venue.** At the sole option of Correspondent Funding, the Program Documents shall be enforced in any state or federal court within the State of Minnesota. Client consents to the jurisdiction and venue of those courts, and waives any objection to the jurisdiction or venue of any of those courts, including the objection that venue in those courts is not convenient. Any such suit, action or proceeding may be commenced and instituted by service of process upon Client by first class registered or certified mail, return receipt requested, addressed to Client at its address provided in paragraph 11, above. Client's consent and agreement under this section does not affect Correspondent Funding's right to accomplish service of process in any other manner permitted by law or to commence legal proceedings or otherwise proceed against Client in any other jurisdiction or court. In the event Client commences any action in another jurisdiction or venue under any theory arising directly or indirectly from the relationship created by the Program Documents, Correspondent Funding at its option may have the case transferred to a state or federal court within the State of Minnesota or, if a transfer cannot be accomplished under applicable law, may have Client's action dismissed without prejudice.

14. **Waiver of Jury Trial.** Client and Correspondent Funding each promise and agree not to elect a trial by jury of any issue triable of right by a jury, and fully waive any right to trial by jury to the extent that any such right now exists or arises after the date of this Contract. This waiver of the right to trial by jury is separately given, knowingly and voluntarily, by Client and Correspondent Funding and is intended to encompass each instance and each issue for which the right to trial by jury would otherwise apply. Correspondent Funding and Client are each authorized and directed to submit the Program Documents to any court having jurisdiction over the subject matter and the parties to this Contract as

conclusive evidence of this waiver of the right to trial by jury. Further, Client and Correspondent Funding each certify that no representative or agent of the other party's counsel, has represented, expressly or otherwise, to any of its representatives or agents that the other party will not seek to enforce the waiver of right to trial by jury.

15. Waiver of Punitive, Consequential, Special or Indirect Damages. Client waives any right it may have to seek punitive, consequential, special or indirect damages from Correspondent Funding or any of Correspondent Funding's affiliates, officers, directors, employees or agents with respect to any and all issues presented in any action, proceeding, claim or counterclaim brought by Client against Correspondent Funding or any of Correspondent Funding's affiliates, officers, directors, employees or agents with respect to any matter arising out of or in connection with the Program Documents. This waiver of the right to seek punitive, consequential, special or indirect damages is knowingly and voluntarily given by Client, and is intended to encompass each instance and each issue for which the right to seek punitive, consequential, special or indirect damages would otherwise apply. Correspondent Funding is authorized and directed to submit this Contract to any court having jurisdiction over the subject matter and the parties to this Contract as conclusive evidence of Client's waiver of the right to seek punitive, consequential, special or indirect damages.

16. Force Majeure. Notwithstanding Client's satisfaction of the conditions set forth in this Contract or the existence of an outstanding commitment by Correspondent Funding to purchase Loans, Correspondent Funding has no obligation to purchase any Loan if Correspondent Funding is prevented from obtaining the funds necessary to purchase Loans as a result of any fire or other casualty, failure of power, strike, lockout or other labor trouble, banking moratorium, embargo, sabotage, confiscation, condemnation, riot, civil disturbance, insurrection, act of terrorism, war or other activity of armed forces, act of God or other similar reason.

17. Entire Agreement. This Contract (including all documents incorporated by reference) represents the final agreement between the parties with respect to its subject matter, may not be contradicted by evidence of prior or contemporaneous oral or written agreements among the parties and supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether written or oral, with respect to Loans registered and sold after the effective date of this Contract, except that any existing Commitment Letters are not affected.

18. Defined Terms; General Rules of Interpretation. Defined terms may be used in the singular or plural, as the context requires. Unless the context in which it is used otherwise clearly requires, the word "or" has the inclusive meaning represented by the phrase "and/or". The words "include," "includes" and "including" are deemed to be followed by the phrase "without limitation".

19. Headings for Convenience. All captions or paragraph headings in the Program Documents are for convenience only and in no way define, limit or describe the scope or intent of any provision of the Program Documents.

20. Severability. If any provision of the Program Documents is declared to be illegal or unenforceable in any respect, that provision is null and void and of no force and effect to the extent of the illegality or unenforceability, and does not affect the validity or enforceability of any other provision of the Program Documents.

21. Counterparts. This Contract may be executed in any number of counterparts, each of which will be deemed an original, but all of which together constitute but one and the same instrument.

22. Several Liabilities. The liabilities of RFC, GMACB, and GMACM under this Contract are several, and not joint.

23. Delivery Agent. RFC, GMACB and GMACM may all act as the delivery agents for each other in connection with the purchase of Loans.

Client Contract-CF
Revised: July 2008

3

MP

IN WITNESS WHEREOF, Client and Correspondent Funding have caused this Contract to be duly executed as of the date first written above.

**CLIENT:**

CMG MORTGAGE, INC.

By: _____
(Signature)

Name: CHRISTOPHER M GROEBER
(Typed or Printed)

Title: PRESIDENT

**CORRESPONDENT FUNDING:**

RESIDENTIAL FUNDING COMPANY, LLC

By: _____
(Signature)

Name: Deanna Keith
(Typed or Printed)

Title: VP of Acquisitions Risk Management

GMAC BANK

By: _____
(Signature)

Name: Deanna Keith
(Typed or Printed)

Title: Assistant Secretary (Correspondent Funding)

GMAC MORTGAGE, LLC

By: _____
(Signature)

Name: Deanna Keith
(Typed or Printed)

Title: VP