**Hearing Date and Time: June 26, 2014 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: June 12, 2014 at 4:00 p.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Philip Bentley
Douglas H. Mannal
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**NOTICE OF RESCAP LIQUIDATING TRUST'S**
**SIXTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS**
**(NO LIABILITY – UNDERWRITER INDEMNIFICATION CLAIMS)**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

　　　　　1.　　　On May 22, 2014, the ResCap Liquidating Trust filed its *Sixty-Seventh Omnibus Objection to Claims (No Liability – Underwriter Indemnification Claims)* (the "**Omnibus Objection**").

　　　　　2.　　　A hearing (the "**Hearing**") to consider the Omnibus Objection shall be held before the Honorable Martin Glenn, United States Bankruptcy Judge, in Room 501 of the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York, 10004, on **June 26, 2014 at 10:00 a.m.** (prevailing Eastern Time).

　　　　　3.　　　Any responses to the Omnibus Objection must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules of the Southern District of New York, and the Notice, Case Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic filing system, and be served, so as to be received no later than **June 12, 2014 at 4:00 p.m.** (prevailing Eastern Time) upon (a) Chambers of the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408; (b) co-counsel to the ResCap Liquidating Trust, Kramer Levin Naftalis & Frankel, LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attention: Kenneth H. Eckstein, Philip

Bentley, and Douglas H. Mannal); (c) co-counsel to the ResCap Liquidating Trust, Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019 (Attention: Gary S. Lee, Norman S. Rosenbaum, Jordan A. Wishnew and Meryl L. Rothchild) (d) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention: Linda Riffkin and Brian S. Masumoto; and (e) The ResCap Liquidating Trust, Quest Turnaround Advisors, 800 Westchester Ave., Suite S-520, Rye Brook, NY 10573 (Attention: Jeffrey Brodsky).

        4.     If no responses to the Omnibus Objection are timely filed and served to the relief requested in the Omnibus Objection, the Bankruptcy Court may deem any opposition waived, treat the Omnibus Objection as conceded, and enter an order granting the relief requested in the Omnibus Objection without further notice or hearing.

        5.     A Copy of the Omnibus Objection can be obtained or viewed for a fee via PACER at www.pacer.gov or (without charge) on the Debtors' restructuring website at www.kccllc.net/rescap.

Dated: New York, New York
       May 22, 2014

                                       KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                       /s/ Douglas H. Mannal
                                       Kenneth H. Eckstein
                                       Philip Bentley
                                       Douglas H. Mannal
                                       1177 Avenue of the Americas
                                       New York, New York 10036
                                       Telephone: (212) 715-9100
                                       Facsimile: (212) 715-8000

**Hearing Date and Time: June 26, 2014 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: June 12, 2014 at 4:00 p.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Philip Bentley
Douglas H. Mannal
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**RESCAP LIQUIDATING TRUST'S SIXTY-SEVENTH OMNIBUS OBJECTION**
**TO CLAIMS (NO LIABILITY – UNDERWRITER INDEMNIFICATION CLAIMS)**

---

**THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN PROOFS OF CLAIM.
CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND
CLAIMS ON <u>EXHIBIT A</u> ATTACHED TO THE PROPOSED ORDER.**

**IF YOU HAVE QUESTIONS, OR YOU ARE UNABLE TO LOCATE YOUR CLAIM ON
<u>EXHIBIT A</u> ATTACHED TO THE PROPOSED ORDER, PLEASE CONTACT
THE LIQUIDATING TRUST'S COUNSEL, JOSEPH A. SHIFER, AT (212) 715-9100.**

---

# TABLE OF CONTENTS

Page

JURISDICTION ................................................................................................................1

BACKGROUND ...............................................................................................................2

RELIEF REQUESTED.......................................................................................................3

OBJECTION......................................................................................................................7

      A.     Applicable Legal Standard.................................................................. 7

      B.     The Underwriter Indemnification Claims Should Be Disallowed Under Section 502(e)(1)(B) .............................................................................. 8

      C.     The Underwriter Indemnification Claims Must Be Subordinated Under Section 510(b)..................................................................................... 13

             i.     The Underlying RMBS Constitute "Securities" .......................................... 14

             ii.    The Underwriter Indemnification Claims Arise From the Purchase or Sale of Debtor Securities. ............................................................. 15

             iii.   The RMBS are Securities of the Debtors.................................... 16

             iv.   The RMBS are Securities of Affiliates of the Debtors ............................... 18

      D.     Federal Securities Law Precludes the Underwriter Indemnification Claims........ 19

RESERVATION OF RIGHTS ..........................................................................................22

NOTICE............................................................................................................................22

NO PRIOR REQUEST .....................................................................................................23

CONCLUSION..................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp.*,
    No. 02-41729 (REG), 2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20,
    2007) ...........................................................................................................................7

*Aetna Cas. & Surety Co. v. Ga. Tubing Co. (In re Chateaugay Corp.)*,
    1995 WL 429018 (S.D.N.Y. July 20, 1995) ...........................................................11

*In re Allegheny Int'l, Inc.*,
    954 F.2d 167 (3d Cir. 1992)....................................................................................7

*In re Alper Holdings USA*,
    No. 07-12148 (BRL), 2008 WL 4186333 (Bankr. S.D.N.Y. Sept 10, 2008) ......8, 9

*In re Betacom of Phoenix, Inc.*,
    240 F.3d 823 (9th Cir. 2001) ................................................................................15

*In re Century Inv. Fund VII Ltd. P'ship*,
    96 B.R. 884 (Bankr. E.D. Wis. 1989) ...................................................................19

*In re Chemtura Corp.*,
    436 B.R. 286 (Bankr. S.D.N.Y. 2010) ..............................................................8, 10

*In re Chemtura Corp.*,
    443 B.R. 601 (Bankr. S.D.N.Y. 2011)...................................................................10

*In re Consol. Cos.*,
    113 B.R. 269 (Bankr. N.D. Tex. 1989)..................................................................19

*Credit Suisse First Boston, LLC v. Intershop Comm. AG*,
    407 F. Supp. 2d 541 (S.D.N.Y. 2006)....................................................5, 9, 20, 21

*In re Drexel Burnham Lambert Grp., Inc.*,
    148 B.R. 982 (Bankr. S.D.N.Y. 1992)................................................8, 10, 11, 12

*Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011).....................................................................14

*Eichenholtz v. Brennan*,
    52 F.3d 478 (3d. Cir. 1995)....................................................................................20

*In re Enron Corp.*,
    341 B.R. 141 (Bankr. S.D.N.Y. 2006)....................................................................15

*Federal Home Loan Bank of Boston v. Ally Financial, Inc. et al.*,
    No. 1:11-cv-10952-GAO (D. Mass.) .......................................................................10

*Feinberg v. Bank of N.Y. (In re Feinberg)*,
    442 B.R. 215 (Bankr. S.D.N.Y. 2010) ....................................................................7

*FHFA v. Ally Fin. Inc., et al.*,
    No. 11-cv-7010 (S.D.N.Y. Nov. 7, 2013) ..........................................................7, 10

*Fine Organics Corp. v. Hexcel Corp. (In re Hexcel Corp.)*,
    174 B.R. 807 (Bankr. N.D. Cal. 1994) ..................................................................11

*In re GCO, LLC*,
    324 B.R. 459 (Bankr. S.D.N.Y. 2005).............................................................8, 9, 11

*Globus v. Law Research Serv., Inc.*,
    418 F.2d 1276 (2d Cir. 1969)..............................................................................19, 20

*Greenwald v. American Medcare Corp.*,
    666 F. Supp. 489 (S.D.N.Y. 1987)........................................................................20

*Heimbach v. Metropolitan Transp. Auth.*,
    553 N.E.2d 242 (N.Y. 1990)................................................................................12

*In re Jacom Computer Servs., Inc.*,
    280 B.R. 570 (Bankr. S.D.N.Y. 2002)..................................................................15

*Jenkins v. Tomlinson (In re Basin Res. Corp.)*,
    190 B.R. 824 (Bankr. N.D. Tex. 1996).................................................................19

*Kira v. Holiday Mart, Inc. (In re Holiday Mart, Inc.)*,
    715 F.2d 430 (9th Cir. 1983) ..............................................................................8

*Levin v. Resolution Trust Corp. (In re Coronet Capital Co.).*
    1995 U.S. Dist. Lexis 10175 (S.D.N.Y. 1987) .....................................................14

*In re Mid-American Waste Sys.*,
    228 B.R. 816 (Bankr D. Del. 1999) .........................................................14, 16, 18

*In re Minton Grp., Inc.*,
    27 B.R. 385 (Bankr. S.D.N.Y. 1983), *aff'd*, 46 B.R. 222 (S.D.N.Y. 1985) ...........19

*In re NAL Fin. Group, Inc.*,
    237 B.R. 225 (Bankr. S.D. Fla. 1999) ..................................................................18

*In re Oneida Ltd.*,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009) ..................................................................7

*Official Comm. Of Creditors Holding Unsecured Claims v. PaineWebber Inc. (In
   re De Laurentiis Entm't. Grp., Inc.)*, 124 B.R. 305 (C.D. Cal. 1991) ....................................16

*In re Patriot Aviation Servs.*,
   396 B.R. 780 (Bankr. S.D. Fla. 2008) ....................................................................................14

*Matter of Provincetown-Boston Airlines, Inc.*,
   72 B.R. 307 (Bankr. M.D. Fla. 1987) ..........................................................................8, 10, 11

*In re Reynolds*,
   13 B.R. 658 (Bankr. N.D. Ga. 1981) .......................................................................................19

*In re Rockefeller Ctr. Props.*,
   272 B.R. 524 (Bankr. S.D.N.Y. 2000)........................................................................................7

*Route 21 Assocs. v. MHC, Inc.*,
   486 B.R. 75 (S.D.N.Y. 2012).......................................................................................................9

*Rombro v. Dufrayne (In re Med Diversified, Inc.)*,
   471 F.3d 251 (2d Cir. 2006)................................................................................................14, 15

*In re Touch Am. Holdings, Inc.*,
   381 B.R. 95 (Bankr. D. Del. 2008) ..........................................................................................15

*In re Washington Mutual*,
   462 B.R. 137 (Bankr. D. Del. 2011) .........................................................................................17

*In re Washington Mutual*,
   No. 08-12229 (MFW) (Bankr. D. Del. May 7, 2012)..............................................................17

*In re Wedtech Corp.*,
   85 B.R. 285 (Bankr. S.D.N.Y. 1988)....................................................................................9, 12

**Statutes**

11 U.S.C. § 101(2)(C)..........................................................................................................................18

11 U.S.C. § 101(49)(A)(i),(iv),(vi),(xiv) ..........................................................................................14

11 U.S.C. § 502(a) .................................................................................................................................7

11 U.S.C. § 502(b) ...........................................................................................................................1,2,7

11 U.S.C. § 502(e) .................................................................................................................................2

11 U.S.C. § 502(e)(1)(B) ..........................................................................................................*passim*

11 U.S.C. § 510(b) ....................................................................................................................*passim*

28 U.S.C. § 157 ................................................................................................................1

28 U.S.C. § 1334 ..............................................................................................................1

28 U.S.C. § 1408 ..............................................................................................................1

28 U.S.C. § 1409 ..............................................................................................................1

Fed R. Bank. P. 1015(b) ...................................................................................................2

Fed R. Bank. P. 3007(a) ...................................................................................................3

Fed R. Bank. P. 3007(d) ..............................................................................................1,2,3

**Other Authorities**

17 C.F.R. § 230.191(a) ...................................................................................................17

17 C.F.R. § 240.3b-19(a) ...............................................................................................17

15 U.S.C. § 78c(a)(8) .....................................................................................................16

15 U.S.C. § 77b(a)(4) ...............................................................................................16, 20

H.R. Rep. 95-595 (1977) at 195 ....................................................................................18

H.R. Rep. No. 85, 73, 1st Sess. 13 (1933) ...............................................................17, 19

SEC Rule 191 .................................................................................................................17

SEC Rule 3b-19 ..............................................................................................................17

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Liquidating Trust (the "**Liquidating Trust**"), as successor in interest to the debtors (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), hereby files this sixty-seventh omnibus objection to claims (the "**Objection**") pursuant to section 502(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and this Court's order approving procedures for the filing of omnibus objections to proofs of claim filed in these Chapter 11 Cases [Docket No. 3294] (the "**Claims Objection Procedures Order**"), seeking entry of an order (the "**Proposed Order**"), in a form substantially similar to that attached hereto as **Annex 2**, disallowing and expunging the claims listed on **Exhibit A** annexed to the Proposed Order.[1]  In support of the Objection, the Liquidating Trust submits the declaration of Deanna Horst, Chief Claims Officer for the Liquidating Trust (the "**Horst Declaration**"), attached hereto as **Annex 1**.  In support of the Objection, the Liquidating Trust respectfully represents as follows:

## **JURISDICTION**

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334,  and Article XII of the Plan (defined herein). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The statutory predicates for the relief requested herein are sections 502(b), 502(e), and 510(b) of the Bankruptcy Code and Rule 3007(d) of the Bankruptcy Rules.

---

[1] Claims listed on **Exhibit A** to the Proposed Order are reflected in the same manner as they appear on the claims register maintained by KCC (defined herein).

## BACKGROUND

3.    On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

4.    On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "**Confirmation Order**") approving the terms of the Chapter 11 plan, as amended (the "**Plan**"), filed in these Chapter 11 Cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as such term is defined in the Plan) of the Plan occurred, and, among other things, the Liquidating Trust was established [Docket No. 6137].

5.    The Liquidating Trust was established to, among other things, wind down the affairs of the Debtors, *see* Plan, Art. VI. Pursuant to the Plan, the Liquidating Trust has the exclusive authority to "[f]ile, withdraw, or litigate to judgment, objections to Claims or Equity Interests (other than Borrower Claims, Private Securities Claims, and the NJ Carpenters Claims)." Plan, Art. VIII.A.3.

6.    On July 17, 2012, the Court entered an order [Docket No. 798] appointing Kurtzman Carson Consultants LLC ("**KCC**") as the notice and claims agent in these Chapter 11 Cases. Among other things, KCC is authorized to (a) receive, maintain, record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "**Claims Register**").

7.    On August 29, 2012, this Court entered the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 1309] (the "**Bar Date Order**"). The Bar Date Order established, among other things, (i)

- 2 -

November 9, 2012 at 5:00 p.m. (prevailing Eastern Time) as the deadline to file proofs of claim

by virtually all creditors against the Debtors (the "**General Bar Date**") and prescribing the form

and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (prevailing

Eastern Time) as the deadline for governmental units to file proofs of claim (the "**Governmental**

**Bar Date**," with the General Bar Date, the "**Bar Date**").   Bar Date Order at ¶¶ 2-3.   On

November 7, 2012, the Court entered an order extending the General Bar Date to November 16,

2012 at 5:00 p.m. (prevailing Eastern Time) [Docket No. 2093].   The Governmental Bar Date

was **not** extended.

8.      On March 21, 2013, the Court entered the Claims Objection Procedures

Order, which authorizes the Debtors to file omnibus objections to up to 150 claims at a time on

various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional

grounds set forth in the Claims Objection Procedures Order.

9.      To date, over 7,400 proofs of claim have been filed in these Chapter 11

Cases as reflected on the Claims Register.

## RELIEF REQUESTED

10.      By this Objection, the Liquidating Trust seeks to disallow and expunge the

proofs of claim identified on **Exhibit A** to the Proposed Order (collectively, the "**Underwriter**

**Indemnification Claims**").[2]   The Liquidating Trust examined the Underwriter Indemnification

Claims   and   supporting   documents   filed   therewith.     As   detailed   below,   the   Underwriter

---

[2] No Borrower Claims (as defined in the Claims Objection Procedures Order) are included in this Objection. Claim
Nos. 87, 88, and 89 are included on **Exhibit A**, and are subject to the Liquidating Trust's pending *Sixty-Sixth
Omnibus Objection to Claims* [Docket No. 6848], as amended and superseded claims.  To the extent Claim Nos. 87,
88, and 89 are not disallowed and expunged pursuant to the *Sixty-Sixth Omnibus Objection to Claims*, the
Liquidating Trust objects to such claims on the grounds set forth herein, and as such, are included on **Exhibit A**.

Indemnification Claims fail to establish a claim for which the Debtors are liable, and should therefore be disallowed and expunged from the Claims Register.

11.    The Underwriter Indemnification Claims arise out of certain securitizations of residential mortgage loan-backed securities ("**RMBS**") that were both sponsored and issued by the Debtors. *See* Horst Declaration ¶ 5.   To issue the RMBS, the Debtors originated or purchased residential mortgage loans that were then deposited by the Debtors into an RMBS trust (each a "**RMBS Trust**" and collectively, the **RMBS Trusts**") with one or more Debtors acting as depositor. *See id.*   Pursuant to the terms of various underwriting agreements (the "**Underwriting Agreements**"), the Debtors sold the RMBS to various financial institutions (the "**Claimants**"), who would then market and sell the RMBS to investors. *See id.* The Debtors and the Claimants prepared offering materials in accordance with applicable securities law for offering the RMBS to investors. *See id.*

12.    The Claimants assert contractual rights of indemnity against the Debtors under the Underwriting Agreements between the Debtors and the Claimants.  The Claimants allege that the Underwriting Agreements require the Debtors to indemnify the Claimants for damages arising from pending or threatened litigation brought by  RMBS investors. *See id.* ¶ 6. These lawsuits generally assert violations of federal and/or state securities law, as well as common law fraud and negligent misrepresentation, in connection with the allegedly false and misleading statements and omissions in the offering materials pursuant to which the plaintiffs purchased the RMBS from the Claimants.

13.    As an initial matter, many of the Underwriter Indemnification Claims do not attach the relevant Underwriting Agreements, specify any pending lawsuits, identify with particularity the loss for which the Claimant is seeking indemnification, or are otherwise facially

defective. *See* Horst Declaration ¶ 7. On this basis alone, the Underwriter Indemnification

Claims should be disallowed.[3]  However, even assuming the Claimants could establish a facially

valid Underwriter Indemnification Claim, the Underwriter Indemnification Claims should be

disallowed and expunged for a number of other reasons.[4]

14.     <u>First</u>, the Underwriter Indemnification Claims are contingent

reimbursement claims arising from alleged shared liability, and to the extent they are contingent,

should be disallowed under section 502(e)(1)(B) of the Bankruptcy Code.

15.     <u>Second</u>, the Underwriter Indemnification Claims should be subordinated

pursuant to section 510(b) of the Bankruptcy Code, because such claims arise from the purchase

or sale of securities of the Debtors and are reimbursement or contribution claims on account of

such claims.

16.     <u>Third</u>, federal securities law precludes indemnification of underwriters for

liabilities related to misstatements or omissions in the securities offering materials.

17.     Notably, to the extent certain Claimants assert claims based on settlements

in the lawsuits underlying the Underwriter Indemnification Claims, such settlements are

expressly carved out of the indemnity under the Underwriting Agreements. Each of the

Underwriting Agreements attached to the Underwriter Indemnification Claims, as well as all

other Underwriting Agreements available to the Liquidating Trust from the Debtors' books and

---

[3] To the extent a Claimant supplements or amends an Underwriter Indemnification Claim with additional supporting information (or otherwise provides the Liquidating Trust with such information), the Liquidating Trust reserves all rights to raise additional objections to such supplemented or amended claims.

[4] In addition to asserting Underwriter Indemnification Claims, Claim Nos. 5046 and 5049, filed by Citigroup Global Markets Inc. ("**Citigroup**"), assert claims in connection with the Debtors' servicing advance facility (the "**GSAP Facility**"). *See* Horst Declaration ¶ 9. The GSAP Facility was paid in full on or about the Petition Date with the proceeds of the debtor-in-possession financing arrangement with Barclays, and Citigroup has not identified any basis for a claim under the GSAP Facility. *See id.*  Accordingly, the Liquidating Trust does not believe there are any valid claims under the GSAP Facility, and the Liquidating Trust requests the expungement of Claim Nos. 5046 and 5049 in their entirety.

records, provides that the Debtors are not liable for any settlement unless they have assumed

defense of the action or given their written consent to the settlement (emphasis added):

> **Unless it shall assume the defense of any proceeding, the indemnifying party shall not be liable for any settlement of any proceeding effected without its written consent**, but if settled with such consent or if there be a final judgment for the plaintiff, the indemnifying party agrees to indemnify the indemnified party from and against any loss or liability by reason of such settlement or judgment.

*See*, *e.g.*, Claim No. 3610, Exhibit B-1 to Proof of Claim, § 7.3 at 15, attached hereto as

**Annex 3**.  Thus, unless the Claimant can demonstrate that the Debtors have assumed the defense

of any litigation that is the basis for an Underwriter Indemnification Claim or consented in

writing to the settlement, such claim must be disallowed to the extent it seeks to recover settled

liabilities.

18.    In addition, to the extent a settlement includes a bar order preventing

parties from seeking indemnification or contribution from a co-defendant (such as the Debtors),

any claim seeking indemnification or contribution related to such settlement is barred. For

example, Credit Suisse recently entered into an $885 million settlement with FHFA, settling

FHFA's claims against Credit Suisse and certain of its affiliates relating to securities that were

underwritten or sponsored by Credit Suisse entities.  A portion of the settlement pertains to

FHFA's claims against Credit Suisse for Debtor-sponsored RMBS that were underwritten by

Credit Suisse pursuant to the Underwriting Agreements.  However, a bar order entered in

FHFA's litigation against Ally Financial Inc. ("**Ally**") and Credit Suisse relating to such RMBS

bars Credit Suisse from seeking indemnity or contribution against Ally and its affiliates, including the Debtors.[5]

## **OBJECTION**

### A.    **Applicable Legal Standard**

19.    A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).  The burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor.  *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992); *see also Feinberg v. Bank of N.Y. (In re Feinberg)*, 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010) (stating the claimant "bears the burden of persuasion as to the allowance of [its] claim.").  Moreover, section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).

20.    The Underwriter Indemnification Claims are contingent claims that are unenforceable and must be disallowed under section 502(e)(1)(B) of the Bankruptcy Code. To the extent any Underwriter Indemnification Claim or portion thereof is not disallowed, it must be

---

[5] *See FHFA v. Ally Fin. Inc., et al.*, No. 11-cv-7010 (S.D.N.Y. Nov. 7, 2013) [Docket No. 727 at 2] ("[Non-Settling Persons including Credit Suisse] are hereby permanently BARRED, ENJOINED and RESTRAINED from commencing, prosecuting, or asserting any claim for contribution or indemnity (whether styled as a claim for contribution, indemnity, or otherwise) against the Ally Defendants, its . . . subsidiaries, divisions and affiliates . . . that seeks to recover from any Settling Defendant any part of any judgment entered against the Non-Settling Persons and/or any settlement reached with any of the Non-Settling Persons…") (emphasis in original).

subordinated pursuant to Bankruptcy Code section 510(b) of the Bankruptcy Code. Furthermore, the Underwriter Indemnification Claims should be disallowed because federal securities law precludes indemnification of underwriters for liabilities related to misstatements or omissions in the securities offering materials.

**B.**   **The Underwriter Indemnification Claims Should Be Disallowed Under Section 502(e)(1)(B)**

21.    Section 502(e)(1)(B) of the Bankruptcy Code expressly provides for the disallowance of certain contingent claims:

> [T]he court **shall disallow** any claim for reimbursement or contribution of an entity that is liable with the debtor . . . to the extent that … such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.

11 U.S.C. § 502(e)(1)(B) (emphasis added).

22.    Courts have established the following three-part test to determine whether a claim should be disallowed under section 502(e)(1)(B) of the Bankruptcy Code:

> (a)    "the claim must be for reimbursement or contribution;"
>
> (b)    "the party asserting the claim must be 'liable with the debtor' on the claim;" and
>
> (c)    "the claim must be contingent at the time of its allowance or disallowance."

*In re Chemtura Corp.*, 436 B.R. 286, 292-93 (Bankr. S.D.N.Y. 2010); *Alper Holdings USA*, 2008 WL 4186333, at *4 (quoting *In re GCO, LLC*, 324 B.R. 459, 465 (Bankr. S.D.N.Y. 2005) and *In re Drexel Burnham Lambert Grp., Inc.*, 148 B.R. 982, 985 (Bankr. S.D.N.Y. 1992)). Applying this analysis, Courts in this District have repeatedly disallowed claims brought by securities underwriters based on securities fraud under section 502(e)(1)(B). *See In re Drexel Burnham Lambert Grp. Inc.*, 148 B.R. 982 (Bankr. S.D.N.Y. 1992); *see also Matter of Provincetown-*

*Boston Airlines, Inc.,* 72 B.R. 307 (Bankr. M.D. Fla. 1987) (disallowing underwriter claims for indemnification and contribution against debtor as issuer).

23.     Here, the Underwriter Indemnification Claims satisfy all three elements for mandatory disallowance pursuant to section 502(e)(1)(B) of the Bankruptcy Code.  <u>First</u>, the Underwriter Indemnification Claims plainly seek "reimbursement or contribution."  It is well established that contractual indemnification claims are claims for reimbursement or contribution within the meaning of section 502(e)(1)(B).  *See, e.g., Route 21 Assocs. v. MHC, Inc.,* 486 B.R. 75, 94-95 (S.D.N.Y. 2012) ("[A] reading of the terms 'reimbursement or contribution' that includes indemnity comports with the goal of section 502(e)(1)(B) – avoiding double liability. . . ."); *see also Alper Holdings USA*, 2008 WL 4186333, at *5; *In re GCO*, 324 B.R. at 465 ("Because the concept of reimbursement includes indemnity, any claims for indemnification also fall within the scope of the first prong of 502(e)(1)(B).") (internal quotation omitted).  Thus, the first element of section 502(e)(1)(B) is established.

24.     <u>Second</u>, the Claimants and the Debtors satisfy the "co-liability" requirement of section 502(e)(1)(B).  To determine co-liability under section 502(e)(1)(B), courts ask whether the "causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay."  *In re Wedtech Corp.*, 85 B.R. 285, 290 (Bankr. S.D.N.Y. 1988).  Here, the Claimants seek indemnification for losses incurred in defending securities law claims arising out of RMBS issuances sponsored by one or more of the Debtors that Claimants underwrote.   The Debtors, as the "issuer," "sponsor," and "originator" of the RMBS, would have liability to the same litigants asserting claims against the Claimants.  Indeed, a number of the complaints cited in the Underwriter Indemnification Claims name the

Debtors as co-defendants.[6]  *See, e.g., Drexel*, 148 B.R. at 986 (co-liability established because Drexel would have been a defendant in the action but for the automatic stay);  *Provincetown-Boston Airlines*, 72 B.R. at 310 (co-liability established because the debtor and underwriter were co-defendants).

25.    Further, courts have interpreted co-liability broadly, noting that "'Congress clearly meant to include all situations wherein indemnitors or contributors *could* be liable with the debtor within the scope of § 502(e)(1)(B).'"  *In re Chemtura Corp.*, 436 B.R. 286, 295-96 n.26 (Bankr. S.D.N.Y.) (emphasis added) (citation omitted).  Thus, even where the Debtors are not actually named as co-defendants along with the Claimants, it is enough that they could have been.  *See In re Chemtura Corp.*, 443 B.R. 601, at 613 n.19 (Bankr. S.D.N.Y. 2011) ("There is no statutory requirement, for example, that the debtor and the party asserting the claim be liable on the claim of the third party in the same action, under a common statute, or on the same legal theory.").

26.    The Debtors' potential co-liability is also demonstrated by the Debtors' settlements with the Private Securities Claimants, the NJ Carpenters, and the FHFA (among the most prominent RMBS investors in the world) under the Plan. The Debtors settled with these investors precisely because they asserted claims against the Debtors that both the Debtors and the Creditors' Committee believed had arguable merit. The Court approved these settlements,

---

[6] For example, in *FHFA v. Ally Fin. Inc.*, et al., No. 11-cv-7010 (S.D.N.Y.) – a lawsuit listed in nearly all the Underwriter Indemnification Claims – the complaint originally named the Debtors as defendants [Case No. 11-cv-7010, Docket No. 1].  The Amended Complaint [Case No. 11-cv-7010, Docket No. 114], filed after the Debtors' bankruptcy, notes that "non-party Ally Debtors have filed for Chapter 11 bankruptcy protection and are subject to an automatic stay. But for the automatic stay, plaintiff would have reasserted its claims against each of the Ally Debtors."  Amended Complaint at 10 n.4.  In *Federal Home Loan Bank of Boston v. Ally Financial, Inc. et al.*, No. 1:11-cv-10952-GAO (D. Mass.) – a lawsuit listed in certain other Underwriter Indemnification Claims – RALI is named as a Depositor/Issuer Defendant, and RFC is named as a Sponsor and Controlling Person Defendant. Amended Complaint [Docket No. 180] ¶¶ 109-10.

finding each of them to fall within the range of reasonableness. *See* Plan, Art. IV.E, IV.H; Confirmation Order ¶¶ 11, 13, 15-17.  Allowing the Underwriter Indemnification Claims would be duplicative of these settlements and is precisely the reason why section 502(e)(1)(B) was enacted. *See Aetna Cas. & Surety Co. v. Ga. Tubing Co. (In re Chateaugay Corp.)*, 1995 WL 429018, at *3 (S.D.N.Y. July 20, 1995) ("Section 502(e)(1)(B) 'seeks to preclude redundant recoveries on identical claims, or double-dipping.'") (citation omitted). *See also Fine Organics Corp. v. Hexcel Corp. (In re Hexcel Corp.)*, 174 B.R. 807, 811 (Bankr. N.D. Cal. 1994) ("The legislative history . . . reveals that § 502(e)(1)(B) was primarily intended to protect the limited assets of a bankruptcy estate from duplicative claims.").

27.    Accordingly, the Debtors are "co-liable" for purposes of section 502(e)(1)(B) in respect of claims seeking indemnification for a securities law violation.

28.    <u>Third</u>, the Underwriter Indemnification Claims also satisfy the third required element of section 502(e)(1)(B), because they are based on unresolved (or future) litigation and therefore remain contingent.  A contingent claim is a claim which "has not yet accrued and . . . is dependent upon a future event that may never happen." *In re GCO,* 324 B.R. at 466 (citation omitted).  *See also Provincetown-Boston Airlines*, 72 B.R. at 310 (future event on which the contingent claim is dependent is the establishment of claimant and debtor's liability in the class action litigation).  In *Drexel*, the court noted that similar to *Provincetown*, "the future event yet to be established . . . is a determination that Drexel and the Claimants' are liable in the civil actions."  *Drexel*, 148 B.R. at 987.  None of the Claimants provide any evidence of any court holding the Claimants liable to the RMBS investors, nor is the Liquidating Trust aware of such a ruling.

29.     Further, to the extent the Claimants seek indemnification for their defense costs under the Underwriting Agreements, such defense costs are also contingent, as the Debtors are not yet obligated to pay such costs under the Underwriting Agreements.  *See In re Wedtech Corp.*, 85 B.R. 285 (Bankr. S.D.N.Y. 1988) (disallowing claim for defense costs as contingent because underlying agreement provided for costs only where court determined parties acted in good faith or succeeded on the merits); *Drexel*, 148 B.R. at 990 (holding that whether defense costs are contingent depends upon the specific provisions of the parties' agreement).

30.     Here, the terms of the Underwriting Agreements provide that any claims for defense costs are contingent.   Section 7.5 of the Underwriting Agreements provides that indemnity available to the Claimants "shall be deemed to include . . . any legal or other expenses reasonably incurred by such indemnified party in connection with investigating or defending any such action or claim except where the indemnified party is required to bear such expenses pursuant to Section 7.4." *See* Annex 3, § 7.5 (emphasis added).  Section 7.4 of the Underwriting Agreements in turn provides for a balancing of the relative degrees of fault between the Debtors and the Claimants.  *See* Annex 3, § 7.4.[7]

31.     Indeed, the Underwriting Agreements do not provide for the current payment of legal expenses because, until a court absolves the Claimants from liability, the Debtors' obligation to indemnify such costs is contingent.  Instead the Underwriting Agreements provide that the Debtors are only obligated to pay defense costs, "to the extent that the indemnifying party [i.e., the Debtors] believes that it will be ultimately obligated to pay such

---

[7] Section 7.4 of the Underwriting Agreements appears to provide for a right of contribution where the indemnity provided for in the Underwriting Agreement is not available.  There are a number of reasons why the indemnity would not be available, including the fact that courts generally disfavor indemnification for a parties' own negligence.  This is true under New York common law (*see, e.g., Heimbach v. Metropolitan Transp. Auth.*, 553 N.E.2d 242 (N.Y. 1990)) and under federal common law (see section D below).

expenses." Thus, any claim for defense costs remains contingent until such time as it is possible to determine whether the Debtors are obligated to pay such expenses under section 7.4 of the Underwriting Agreements.

32.     Based upon a plain reading of the Underwriting Agreements, until such determination of relative fault is performed, the portion of the Underwriter Indemnification Claims seeking defense costs, even defense costs already incurred, are contingent under Section 502(e)(1)(B).[8]

33.     Because  all three required elements for disallowance of claims pursuant to section 502(e)(1)(B) are met, the Underwriter Indemnification Claims should be disallowed.

### C.     The Underwriter Indemnification Claims Must Be Subordinated Under Section 510(b)

34.     To the extent the Underwriter Indemnification Claims are not disallowed pursuant to the arguments discussed above, they should be disallowed because they arise from the purchase or sale of securities issued by the Debtors or its affiliates, and, as such, are subordinated to unsecured claims.  Section 510(b) of the Bankruptcy Code provides that claims:

> . . . arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security . . .

11 U.S.C. § 510(b).  The Underwriter Indemnification Claims should be subordinated under this provision because (i) the underlying RMBS constitute "securities," (ii) the Underwriter

---

[8] Section 7.5 of the Underwriting Agreements also provides that parties guilty of fraudulent misrepresentation shall not be entitled to contribution, and thus claims for defense costs also are contingent until a finding that the Claimants are not guilty of fraudulent misrepresentation.

Indemnification Claims "arise from" the purchase or sale of such securities, and (iii) the RMBS are "securities of the debtor or an affiliate of the debtor."  Furthermore, because unsecured creditors were not paid in full under the Plan, once subordinated, the Underwriter Indemnification Claims will not be entitled to any recovery and should be disallowed.

### i.    The Underlying RMBS Constitute "Securities"

35.    The RMBS at issue are "securities" within the meaning of section 510(b). Section 510(b) of  the Bankruptcy Code expressly applies to claims arising from the purchase or sale of a " security."  The Bankruptcy Code defines the term "security" to include "note," "bond," "collateral trust certificate," and "other claim or interest commonly known as 'security.'"  11  U.S.C.  § 101(49)(A)(i),(iv),(vi),(xiv).   Numerous courts have observed that RMBS and other types of pass-through certificates are essentially bonds. *See*, *e.g.*, *Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 182 (S.D.N.Y. 2011) (collecting cases).   It is well-settled that claims related to non-equity securities are subject to subordination under section 510(b). *See In re Mid-American Waste Sys.*, 228 B.R. 816 (Bankr D. Del. 1999) (subordinating indemnity claims related to notes); *Levin v. Resolution Trust Corp. (In re Coronet Capital Co.)*, 1995 U.S. Dist. Lexis 10175 (S.D.N.Y. 1995) (subordinating rescission claims related to promissory notes); *In re Patriot Aviation Servs.*, 396 B.R. 780 (Bankr. S.D. Fla. 2008) ("Although Congress primarily focused in § 510(b) on the concern that equity not be able to reap a benefit in bankruptcy by elevating an equity interest through rescission to a general unsecured status, the statute clearly applies more broadly.").

36.    That the Claimants do not actually hold the RMBS is beside the point. Section 510(b) applies when the claim arises out of a securities transaction involving the debtor or an affiliate of the debtor.  As the Second Circuit has stated, "a claimant need not be an actual shareholder for his claim to be covered by [section 510(b)]." *See Rombro v. Dufrayne (In re Med*

- 14 -

*Diversified, Inc.*), 461 F.3d 251, 258 (2d Cir. 2006) (affirming subordination of claim by former executive employee of debtor based on debtor's failure to issue common stock according to termination agreement). *See also In re Betacom of Phoenix, Inc.*, 240 F.3d 823, 829 (9th Cir. 2001) ("Nothing in § 510(b)'s text requires a subordinated claimant to be a shareholder").

### ii. The Underwriter Indemnification Claims Arise From the Purchase or Sale of Debtor Securities.

37.    Courts read the "arising from" language in Section 510(b) broadly; the section applies so long as "some nexus or causal relationship between the claims and the purchase of the securities" exists. *In re Enron Corp.*, 341 B.R. 141, 161 (Bankr. S.D.N.Y. 2006) (subordinating claims under employment agreement that provided for stock options) (citation omitted). *See also In re Med Diversified, Inc.*, 461 F.3d at 257-58 ("arising from" should be interpreted broadly and applied to claims that share a causal connection with a debtor's securities);

38.    Courts have specifically held that underwriter indemnification claims arising from litigation involving the debtor's securities should be subordinated under section 510(b).  *See In re Jacom Computer Servs., Inc.*, 280 B.R. 570, 572 (Bankr. S.D.N.Y. 2002) (indemnification claims for legal expenses incurred by a debtor's underwriters in defending securities fraud claims by the debtor's shareholders subordinated); *In re Touch Am. Holdings, Inc.*, 381 B.R. 95, 103 (Bankr. D. Del. 2008) ("The plain language of [section 510(b)] is broad enough to include indemnification claims for both liabilities and expenses incurred on account of a claim for 'damages arising from the purchase or sale' of the debtor's or its affiliate's securities.").

39.    As the court explained in *In re Jacom*, "underwriters are in a better position to allocate risks associated with the issuance of securities" and "it is inconsistent with

the policies articulated in the legislative history of section 510(b) to force unsecured creditors to subsidize the underwriters' litigation costs." 280 B.R. at 572. *See also In re Mid-American Waste Sys.*, 228 B.R. at 824 (subordinating claims for defense costs asserted by underwriters under indemnification agreement); *Official Comm. Of Creditors Holding Unsecured Claims v. PaineWebber Inc. (In re De Laurentiis Entm't. Grp., Inc.)*, 124 B.R. 305, 310 (C.D. Cal. 1991) (subordinating claim for reimbursement of attorney fees pursuant to underwriting agreement with debtor in connection with securities offerings).

40.    The claims asserted by the Claimants arise from the purchase and sale of Debtor-sponsored RMBS. Thus, the Underwriter Indemnification Claims "arise from" the sale of securities as contemplated in section 510(b).

### iii. The RMBS are Securities of the Debtors

41.    The RMBS at issue are also securities of the Debtors, thus satisfying the final requirement for subordination under section 510(b). The Underwriter Indemnification Claims arise out of mortgage securitization transactions in which the Debtors deposited mortgages they originated into trusts they created, which then issued securities they sponsored. Although the RMBS Trusts themselves were not Debtors, the depositors were Debtors. As such, the RMBS securities, under applicable securities law, were "issued" by the Debtors because the depositor entity that pools the mortgage loans for transfer to an RMBS Trust is an "issuer" of the certificates issued by the RMBS Trust. In the context of mortgage-backed securities, both the Securities Act of 1933 (the "**Securities Act**") and the Securities Exchange Act of 1934 (the "**Exchange Act**") provide as follows (emphasis added):

> The term "issuer" means every person who issues or proposes to issue any security; except that with respect to . . . collateral-trust certificates, or with respect to certificates of interest . . . , **the term "issuer" means the person or persons performing the acts and assuming the duties of depositor or manager pursuant to the**

> **provisions of the trust or other agreement or instrument under
> which such securities are issued** . . . .

Securities Act § 2(a), 15 U.S.C. § 77b(a)(4); Exchange Act § 3(a)(8), 15 U.S.C. § 78c(a)(8)

(same).  The applicable federal regulations promulgated under both the Securities Act and the

Exchange Act, SEC Rules 191 and 3b-19, respectively, similarly provide that, "[t]he depositor

for the asset-backed securities acting solely in its capacity as depositor to the issuing entity is the

'issuer' for purposes of the asset-backed securities of that issuing entity." 17 C.F.R. §

230.191(a); 17 C.F.R. § 240.3b-19(a) (same).[9]

> 42.    The legislative history to section 2(a)(4) of the Securities Act makes it

clear as to why the depositor is the "issuer" as a matter of securities law:

> > [A]lthough the actual issuer is the trustee, the depositor is the
> > person responsible for the flotation of the issue. Consequently,
> > information relative to the depositor and to the basic securities is
> > what chiefly concerns the investor—information respecting the
> > assets and liabilities of the trust rather than of the trustee. For these
> > reasons the duty of furnishing this information is placed upon the
> > actual manager of the trust and not the passive trustee, and this
> > purpose is accomplished by defining "issuer" as in such instances
> > referring to the depositor or manager.

H.R. Rep. No. 85, 73 Cong., 1st Sess. 13 (1933).

> 43.    In addition, it would be contrary to the policy underlying section 510(b) to

expose the Debtors' general unsecured creditors to costs arising from securities fraud; the costs

---

[9] It should be noted that the only court to have considered the application of section 510(b) to RMBS was in *In re Washington Mutual*, 462 B.R. 137 (Bankr. D. Del. 2011), in which Judge Walrath held that RMBS in that case were not securities issued by a debtor within the meaning of section 510(b). However, that case is distinguishable because the entity that pooled loans for transfer to an RMBS trust (*i.e.* the "depositor") was not a debtor in *Washington Mutual* – unlike here, where the depositors are Debtors. Further, Judge Walrath expressed doubt over her own decision because none of the parties advised her that the depositor in an RMBS securitization is the "issuer" for purposes of securities fraud liability, and the decision was subject to a motion for reconsideration that was settled by the parties before it could be heard. *See* Hr'g Tr., May 7, 2012, *In re Washington Mutual*, No. 08-12229 (MFW) (Bankr. D. Del.) [Docket No. 10154], at 125:10-14 ("[the decision] was not a final decision at all because of the pendency of the motion for reconsideration. I did not get the chance to address that motion or make any ruling on those arguments. So, quite frankly, it is not law of the case.").

of fraud by an issuer are generally recognized to be borne by the investors. *See, e.g.*, *Kira v. Holiday Mart, Inc. (In re Holiday Mart, Inc.)*, 715 F.2d 430, 433-34 (9th Cir. 1983) (only purchasers of debentures "assume the risk of fraud or securities act violations by *the issuers of the securities* they purchase, and there is no reason to ask general creditors who did not purchase debentures to share in any part of that risk") (emphasis added); *In re NAL Fin. Group, Inc.*, 237 B.R. 225, 233 (Bankr. S.D. Fla. 1999) (stating that two risks allocated in § 510(b) are "the risk of the debtor's insolvency" and "the risk of illegality in *the issuance* of the debtor's securities") (emphasis added); *In re Mid-American Waste Systems, Inc.*, 228 B.R. at 825-26 ("[I]n 1984 Congress made a legislative judgment that claims emanating from tainted securities law transactions should not have the same priority as the claims of general creditors of the estate."); H.R. Rep. 95-595 (1977) at 195 ("the risk of illegality in securities issuance should be borne by those investing in securities and not by general creditors").

44.    Furthermore, treating the RMBS as strictly securities "of" the RMBS Trusts (and not the Debtors) for purposes of section 510(b) would  lead to a result contrary to the purpose of securities law: in the event the RMBS investor was forced to pursue its claims against the RMBS Trusts, its claims would have no economic value, as any damages would be paid out of the investors' own assets (*i.e.,* the assets of the RMBS Trusts).   Thus, the very policy underlying federal securities law – providing investors a claim against the issuer of a security – would be thwarted.

### iv.  The RMBS are Securities of Affiliates of the Debtors

45.    Even if the Court were to rule that the RMBS are not "securities of the debtor," the Underwriter Indemnification Claims are also subject to subordination under section 510(b) because the RMBS Trusts are "affiliates" of the Debtors, and thus the RMBS are securities of "an affiliate of the debtor" under section 510(b).

- 18 -

46.    Under the Bankruptcy Code, an "affiliate" includes a "person whose business is operated under a lease or operating agreement by a debtor, or person substantially all of whose property is operated under an operating agreement with the debtor." 11 U.S.C. § 101(2)(C).   Under this definition, the RMBS Trusts are affiliates of the Debtors, because the Debtors operated substantially all of the business and property of the RMBS Trusts under an operating agreement. *See* H.R. Rep. No. 85, 73 Cong., 1st Sess. 13 (1933) (noting in the context of the securities law that the "depositor" is "the actual manager of the trust").

47.    The property being held in trust for the benefit of the certificate holders consists primarily of a pool of mortgage loans, and the business of each RMBS Trust is to manage that property for the benefit of the certificate holders.   At issuance, the Debtors managed every aspect of the mortgage loans under the operative securitization documents.   *See* Horst Declaration ¶ 5. Because the Debtors operated substantially all of the business and property of the RMBS Trusts at the time the claims arose, the RMBS Trusts were affiliates of the Debtors for purposes of Section 510(b) subordination.[10]

### D.    Federal Securities Law Precludes the Underwriter Indemnification Claims

48.    Indemnification of an underwriter that was not itself exonerated of securities violations is contrary to public policy. *See Globus v. Law Research Serv., Inc.*, 418 F.2d 1276, 1288-89 (2d Cir. 1969). Courts in the Second Circuit have denied indemnification

---

[10] *See Jenkins v. Tomlinson (In re Basin Res. Corp.)*, 190 B.R. 824, 825-27 (Bankr. N.D. Tex. 1996) (holding that joint venture is affiliate of debtor where debtor was manager of joint venture's properties); *In re Consol. Cos.*, 113 B.R. 269, 272-73 (Bankr. N.D. Tex. 1989) (property management company that managed debtor's properties and business was affiliate); *In re Century Inv. Fund VII Ltd. P'ship*, 96 B.R. 884, 892 (Bankr. E.D. Wis. 1989) (CMG was affiliate of debtor, because CMG managed all of debtor's property); *In re Minton Grp., Inc.*, 27 B.R. 385, 389 (Bankr. S.D.N.Y. 1983), *aff'd*, 46 B.R. 222 (S.D.N.Y. 1985) (limited partnership was affiliate of debtor where debtor operated business and managed property under limited partnership agreement); *In re Reynolds*, 13 B.R. 658, 659 (Bankr. N.D. Ga. 1981) (non-debtor business was affiliate where debtor was general manager of, and designated to operate, the business).

claims related to securities law violations because allowing wrongdoers to shift culpability for their own misconduct would hinder deterrence and run counter to the purposes of securities laws. *See id.*

49.    Courts are "particularly suspect" of indemnification of the underwriter by the issuer, as the deterrent effects of liability "might well be thwarted if underwriters were free to pass their liability on to the issuer." *Id.*  In *Globus*, the Second Circuit held that "to tolerate indemnity under these circumstances [*i.e.,* allowing indemnification for securities law violations] would encourage flouting the policy of the common law and the Securities Act.  It is well established that one cannot insure himself against his own reckless, wilful or criminal misconduct." *Id.* at 1288.

50.    This policy is not limited to only those cases where the party seeking indemnification "committed a sin graver than ordinary negligence."  *Id.* at 1288.  Rather, courts have extended *Globus* to preclude indemnification for mere negligence.  *Credit Suisse First Boston, LLC v. Intershop Comm. AG*, 407 F. Supp. 2d 541, 547 (S.D.N.Y. 2006) (collecting cases).  This extension adheres to the rationale of *Globus* because "indemnification for liability under a negligence standard would equally 'undermine the role of the underwriter as investigator and public advocate' in contravention of federal public policy."  *Id.* (quoting *Eichenholtz v. Brennan*, 52 F.3d 478, 485 (3d Cir. 1995)).

51.    Further, *Globus* has been extended to cover settlements, by prohibiting indemnification of a party who settles securities law claims without admitting fault, unless that party actually demonstrates that it is without fault.  *See Credit Suisse*, 407 F. Supp. 2d at 547; *Greenwald v. American Medcare Corp.*, 666 F. Supp. 489, 493 (S.D.N.Y. 1987) (allowing a

cross-claim for indemnification to continue where director settled, but only if he proved he was without fault and therefore entitled to indemnity).

52.     In *Credit Suisse*, the court identified the limited circumstances in which an indemnification agreement for securities law claims may be enforced, where the underlying claims were dismissed with prejudice or the claimant prevailed before a jury.  *See Credit Suisse*, 407 F. Supp. 2d at 548 ("[T]he policies underlying the securities laws are not offended by indemnification by the issuer where the indemnitee has successfully defended itself on the merits").  This situation is not present for the Underwriter Indemnification Claims, as the Claimants have not (and cannot) demonstrate they are without fault.  The Liquidating Trust is not aware of any instance where either the investors' claims against a Claimant were dismissed with prejudice or the Claimant prevailed in a verdict.

53.     Accordingly, the Underwriting Indemnification Claims should be disallowed because the Claimants cannot seek indemnification for the violation of federal securities law.

54.     For the reasons discussed above, to avoid the possibility that the claimants at issue receive improper recoveries against the Debtors' estates, and to ensure the Debtors' creditors are not prejudiced by such improper recoveries, the Liquidating Trust requests that the Court disallow and expunge in their entirety each of the Underwriter Indemnification Claims. Should any of the Underwriter Indemnification Claims not be disallowed and expunged for the reasons set forth in this Objection, the Liquidating Trust expressly reserves all rights to object to the Underwriter Indemnification Claims on any other basis.

## **RESERVATION OF RIGHTS**

55.    To the extent not expunged by this Objection, the Liquidating Trust reserves the right to object further to any of the Underwriter Indemnification Claims on any and all additional factual or legal grounds.  Without limiting the generality of the foregoing, the Liquidating Trust specifically reserves its right to amend this Objection, file additional papers in support of this Objection or take other appropriate actions, including to: (a) respond to any allegation or defense that may be raised in a Response filed in accordance with the Claims Objection Procedures Order by or on behalf of any of the Claimants or other interested parties; (b) object further to any Underwriter Indemnification Claims addressed in this Objection for which a claimant provides (or attempts to provide) additional documentation or substantiation; and (c) object further to any Underwriter Indemnification Claims addressed in this Objection based on additional information that may be discovered upon further review by the Liquidating Trust or through discovery.  In addition, as described above and as contemplated and permitted under the Claims Objection Procedures Order, the Liquidating Trust reserves and retains its rights to object to any Underwriter Indemnification Claim addressed in this Objection, but not ultimately expunged, on any and all available grounds.

## **NOTICE**

56.    The Liquidating Trust has served notice of the Objection in accordance with the Case Management Procedures [Docket No. 141] and the Claims Objection Procedures Order.  The Liquidating Trust submits that no other or further notice need be provided.

## NO PRIOR REQUEST

57.    No previous request for the relief sought herein as against the holders of the Underwriter Indemnification Claims has been made by the Liquidating Trust to this or any other court.

## CONCLUSION

WHEREFORE, the Liquidating Trust respectfully requests that the Court enter an order substantially in the form of the Proposed Order granting the relief requested herein and granting such other relief as is just and proper.

Dated: New York, New York
      May 22, 2014

                  KRAMER LEVIN NAFTALIS & FRANKEL LLP

                  /s/ Douglas H. Mannal
                  Kenneth H. Eckstein
                  Philip Bentley
                  Douglas H. Mannal
                  1177 Avenue of the Americas
                  New York, New York 10036
                  Telephone: (212) 715-9100
                  Facsimile: (212) 715-8000

                  *Counsel for the ResCap Liquidating Trust*

## Annex 1

**Horst Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|                          |   |                          |
|--------------------------|---|--------------------------|
|                          | ) |                          |
| In re:                   | ) | Case No. 12-12020 (MG)   |
|                          | ) |                          |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11      |
|                          | ) |                          |
| Debtors.                 | ) | Jointly Administered     |
|                          | ) |                          |

**DECLARATION OF DEANNA HORST IN SUPPORT OF THE RESCAP
LIQUIDATING TRUST'S SIXTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS
(NO LIABILITY – UNDERWRITER INDEMNIFICATION CLAIMS)**

I, Deanna Horst, hereby declare as follows:

1.      I am the Chief Claims Officer for the ResCap Liquidating Trust (the "**Liquidating Trust**"), and previously served as Chief Claims Officer for Residential Capital, LLC and its affiliates ("**ResCap**"), a limited liability company organized under the laws of the state of Delaware and the parent of the other post-effective date debtors in the above-captioned Chapter 11 Cases (collectively, the "**Debtors**").   I was formerly employed by affiliates of ResCap beginning in August of 2001.   In June 2012, I became Senior Director of Claims Management for ResCap and became Chief Claims Officer of ResCap in October of 2013.   I began my association with ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the Debtors' responsible lending on-site due diligence program.   In 2002, I became the Director of Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance—a position I held until 2006, at which time I became the Vice President of the Credit Risk Group, managing Correspondent and Broker approval and monitoring.   In 2011, I became the Vice President, Business Risk and Controls, and supported GMAC Mortgage, LLC and Ally Bank in this role.   In my current position, I am responsible for

Claims Management and Reconciliation and Client Recovery.  I am authorized to submit this declaration (the "**Declaration**") in support of the *ResCap Liquidating Trust's Sixty-Seventh Omnibus Objection to Claims (No Liability – Underwriter Indemnification Claims)* (the "**Objection**").[1]

2.    Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents and information I have received through my discussions with other members of the Debtors' management or other employees of the Debtors, the Debtors' professionals and consultants, and/or Kurtzman Carson Consultants LLC ("**KCC**"), the Debtors' notice and claims agent.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

3.    In my capacity as Chief Claims Officer, I am intimately familiar with the claims reconciliation process in these Chapter 11 cases.  Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' books and records (the "**Books and Records**"), the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "**Schedules**"), my review and reconciliation of claims, and/or my review of relevant documents.  I or my designee at my direction have reviewed and analyzed the proof of claim forms and supporting documentation, if any, filed by the claimants listed on **Exhibit A** annexed to the Proposed Order.  Since the Plan went effective, I, along with other members of the Debtors' management or other employees of the Debtors have continued the claims reconciliation process, analyzed claims, and determined

---

[1]    Defined terms used but not defined herein shall have the meanings ascribed to such terms as set forth in the Objection.

the appropriate treatment of the same.  In connection with such review and analysis, where applicable, the Liquidating Trust has reviewed (i) information supplied or verified by personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the Claims Register maintained in the Debtors' Chapter 11 Cases.

4.      Under my supervision, considerable resources and time have been expended to ensure a high level of diligence in reviewing and reconciling the proofs of claim filed in these Chapter 11 Cases.  Such claims were reviewed and analyzed by the appropriate personnel and professional advisors.   Based on a thorough review of the Underwriter Indemnification Claims at issue, it was determined that each Underwriter Indemnification Claim on **Exhibit A** annexed to the Proposed Order fails to establish a claim for which the Debtors are liable.

5.      The Underwriter Indemnification Claims arise out of certain securitizations of residential mortgage loan-backed securities ("**RMBS**") that were both sponsored and issued by the Debtors.  To issue the RMBS, the Debtors originated or purchased residential mortgage loans that were then deposited by the Debtors into an RMBS trust (each a "**RMBS Trust**" and collectively, the **RMBS Trusts**") with one or more Debtors acting as depositor. Pursuant to the terms of various underwriting agreements (the "**Underwriting Agreements**"), the Debtors sold the RMBS to various financial institutions (the "**Claimants**"), who would then market and sell the RMBS to investors.  The Debtors and the Claimants prepared offering materials in accordance with applicable securities law for offering the RMBS to investors.  The Debtors operated substantially all of the business and property of the RMBS

Trusts under an operating agreement; at issuance, the Debtors managed every aspect of the mortgage loans under the operative securitization documents.

6.      The Claimants assert contractual rights of indemnity against the Debtors under the Underwriting Agreements between the Debtors and the Claimants. The Claimants generally allege that the Underwriting Agreements require the Debtors to indemnify the Claimants for damages arising from pending or threatened litigation brought by  RMBS investors. These lawsuits generally assert violations of federal and/or state securities law, as well as common law fraud and negligent misrepresentation, in connection with the allegedly false and misleading statements and omissions in the offering materials pursuant to which the plaintiffs purchased the RMBS from the Claimants.

7.      Many of the Underwriter Indemnification Claims do not attach the relevant Underwriting Agreements, specify any pending lawsuits, identify with particularity the loss for which the Claimant is seeking indemnification, or are otherwise facially defective.

8.      Furthermore, the Underwriting Agreements that are attached to the Underwriter Indemnification Claims, as well as all other Underwriting Agreements available to the Liquidating Trust from the Books and Records, provide that the Debtors are not liable for any settlement unless they have assumed defense of the action or given their written consent to the settlement:

> Unless it shall assume the defense of any proceeding, the indemnifying party shall not be liable for any settlement of any proceeding effected without its written consent, but if settled with such consent or if there be a final judgment for the plaintiff, the indemnifying party agrees to indemnify the indemnified party from and against any loss or liability by reason of such settlement or judgment.

*See*, *e.g.*, Claim No. 3610, Exhibit B-1 to Proof of Claim, § 7.3 at 15, attached to the Objection as **<u>Annex 3</u>**.

9.     In addition to asserting Underwriter Indemnification Claims, Claim Nos. 5046 and 5049, filed by Citigroup Global Markets Inc. ("**<u>Citigroup</u>**"), assert claims in connection with the Debtors' servicing advance facility (the "**<u>GSAP Facility</u>**"). The GSAP Facility was paid in full on or about the Petition Date with the proceeds of the debtor-in-possession financing arrangement with Barclays, and Citigroup has not identified any basis for a claim under the GSAP Facility.  Accordingly, the Liquidating Trust does not believe there are any valid claims under the GSAP Facility, and the Liquidating Trust requests the expungement of Claim Nos. 5046 and 5049 in their entirety.

10.     If the Underwriter Indemnification Claims are not disallowed and expunged, the claimants who filed these Claims may potentially receive a wholly improper recover to the detriment of other creditors.

11.     Accordingly, based upon this review and for the reasons set forth in the Objection, I have determined that each Underwriter Indemnification Claim that is the subject of the Objection should be disallowed and expunged it its entirety.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  May 22, 2014

/s/ Deanna Horst
Deanna Horst
Chief Claims Officer for the ResCap
Liquidating Trust

## **Annex 2**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**ORDER GRANTING THE RESCAP LIQUIDATING TRUST'S SIXTY-SEVENTH**
**OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY –**
**UNDERWRITER INDEMNIFICATION CLAIMS)**

Upon the sixty-seventh omnibus objection to claims (the "**Objection**")[1] of the

ResCap Liquidating Trust (the "**Liquidating Trust**") established pursuant to the terms of the

confirmed Plan filed in the above-referenced Chapter 11 Cases and as successor in interest to the

Debtors, seeking entry of an order, pursuant to section 502(b) of title 11 of the United States

Code (the "**Bankruptcy Code**"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure,

and this Court's order approving procedures for the filing of omnibus objections to proofs of

claim [Docket No. 3294] (the "**Claims Objection Procedures Order**"), disallowing and

expunging the Underwriter Indemnification Claims, as more fully described in the Objection;

and it appearing that this Court has jurisdiction to consider the Objection pursuant to 28 U.S.C.

§§ 157 and 1334; and consideration of the Objection and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Objection having been provided,

and it appearing that no other or further notice need be provided; and upon consideration of the

---

[1]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms
    in the Objection.

Objection and the *Declaration of Deanna Horst in Support of the ResCap Liquidating Trust's Sixty-Seventh Omnibus Objection to Claims (No Liability – Underwriter Indemnification Claims)* annexed to the Objection as **Annex 1**; and the Court having found and determined that the relief sought in the Objection is in the best interests of the Liquidating Trust, the Liquidating Trust's beneficiaries, the Debtors, and all parties in interest and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and the Court having determined that the Objection complies with the Claims Objection Procedures Order; and after due deliberation and sufficient cause appearing therefor, it is hereby

### ORDERED, ADJUDGED, AND DECREED THAT:

1.      The relief requested in the Objection is granted to the extent provided herein.

2.      Pursuant to section 502(b) of the Bankruptcy Code, the claims listed on **Exhibit A** annexed hereto (collectively, the "**Underwriter Indemnification Claims**") are hereby disallowed and expunged in their entirety with prejudice.

3.      Kurtzman Carson Consultants LLC ("**KCC**"), the Debtors' claims and noticing agent, is directed to disallow and expunge the Underwriter Indemnification Claims identified on the schedule attached as **Exhibit A** hereto so that such claims are no longer maintained on the Debtors' Claims Register.

4.      The Liquidating Trust and KCC are authorized and empowered to take all actions as may be necessary and appropriate to implement the terms of this Order.

5.      Notice of the Objection as provided therein shall be deemed good and sufficient notice of such objection, and the requirements of Bankruptcy Rule 3007(a), the Case

Management Procedures entered on May 23, 2012 [Docket No. 141], the Claims Objection

Procedures Order, and the Local Bankruptcy Rules of this Court are satisfied by such notice.

6.     This Order has no res judicata, estoppel, or other effect on the validity,

allowance, or disallowance any claim not listed on **Exhibit A** annexed to this Order, and all

rights of the Liquidating Trust or any other party to object on any basis are expressly reserved

with respect to any claim that is not listed on **Exhibit A** annexed hereto.

7.     This Order shall be a final order with respect to each of the  Claims

identified on **Exhibit A** annexed hereto, as if each such Claim had been individually objected to.

8.     This Court shall retain jurisdiction to hear and determine all matters

arising from or related to this Order.


Dated:_____, 2014
       New York, New York

_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

**Claims to be Disallowed and Expunged**

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)
EXHIBIT A
SIXTY-SEVENTH OMNIBUS OBJECTION - NO LIABILITY - UNDERWRITER INDEMNIFICATION (NON-BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number |
|---|---|---|---|---|---|---|---|
| 1 | Barclays Capital Inc. Joshua Fritsch Sullivan & Cromwell LLP 125 Broad Street New York, NY 10004 | 5858 | 11/16/2012 | $0.00 $0.00 $0.00 $0.00 PARTIALLY UNLIQUIDATED | Administrative Priority Administrative Secured Secured Priority General Unsecured | Residential Funding Company, LLC | 12-12019 |
| 2 | Barclays Capital Inc. Joshua Fritsch Sullivan & Cromwell LLP 125 Broad Street New York, NY 10004 | 5859 | 11/16/2012 | $0.00 $0.00 $0.00 $0.00 PARTIALLY UNLIQUIDATED | Administrative Priority Administrative Secured Secured Priority General Unsecured | Residential Asset Mortgage Products, Inc. | 12-12053 |
| 3 | Barclays Capital Inc. Joshua Fritsch Sullivan & Cromwell LLP 125 Broad Street New York, NY 10004 | 5860 | 11/16/2012 | $0.00 $0.00 $0.00 $0.00 PARTIALLY UNLIQUIDATED | Administrative Priority Administrative Secured Secured Priority General Unsecured | Residential Accredit Loans, Inc. | 12-12052 |
| 4 | Barclays Capital Inc. Joshua Fritsch Sullivan & Cromwell LLP 125 Broad Street New York, NY 10004 | 5861 | 11/16/2012 | $0.00 $0.00 $0.00 $0.00 PARTIALLY UNLIQUIDATED | Administrative Priority Administrative Secured Secured Priority General Unsecured | Residential Asset Securities Corporation | 12-12054 |
| 5 | Citigroup Global Markets Inc Attn Edward Turan 388 Greenwich Street New York, NY 10013 | 5074 | 11/15/2012 | $0.00 $0.00 $0.00 $0.00 PARTIALLY UNLIQUIDATED | Administrative Priority Administrative Secured Secured Priority General Unsecured | Residential Accredit Loans, Inc. | 12-12052 |
| 6 | Citigroup Global Markets Inc. Attn Edward Turan 388 Greenwich Street, 17th Fl New York, NY 10013 | 5075 | 11/15/2012 | $0.00 $0.00 $0.00 $0.00 PARTIALLY UNLIQUIDATED | Administrative Priority Administrative Secured Secured Priority General Unsecured | Residential Funding Company, LLC | 12-12019 |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)
EXHIBIT A
SIXTY-SEVENTH OMNIBUS OBJECTION - NO LIABILITY - UNDERWRITER INDEMNIFICATION (NON-BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number |
|---|---|---|---|---|---|---|---|
| 7 | Citigroup Global Markets Inc. (on behalf of itself and certain of its affiliates) Edward Turan (Managing Director) Citigroup Global Markets Inc. 388 Greenwich St., 17th Floor New York, NY 10013 | 5036 | 11/16/2012 | $0.00 $0.00 $0.00 $0.00 UNLIQUIDATED | Administrative Priority Administrative Secured Secured Priority General Unsecured | Residential Funding Mortgage Securities II, Inc. | 12-12061 |
| 8 | Citigroup Global Markets Inc. (on behalf of itself and certain of its affiliates) Edward Turan (Managing Director) Citigroup Global Markets Inc. 388 Greenwich St., 17th Floor New York, NY 10013 | 5038 | 11/16/2012 | $0.00 $0.00 $0.00 $0.00 UNLIQUIDATED | Administrative Priority Administrative Secured Secured Priority General Unsecured | Residential Funding Mortgage Securities I, Inc. | 12-12060 |
| 9 | Citigroup Global Markets Inc. (on behalf of itself and certain of its affiliates) Edward Turan (Managing Director) Citigroup Global Markets Inc. 388 Greenwich St., 17th Floor New York, NY 10013 | 5043 | 11/16/2012 | $0.00 $0.00 $0.00 $0.00 UNLIQUIDATED | Administrative Priority Administrative Secured Secured Priority General Unsecured | Residential Asset Securities Corporation | 12-12054 |
| 10 | Citigroup Global Markets Inc. (on behalf of itself and certain of its affiliates) Edward Turan (Managing Director) Citigroup Global Markets Inc. 388 Greenwich St., 17th Floor New York, NY 10013 | 5044 | 11/16/2012 | $0.00 $0.00 $0.00 $0.00 UNLIQUIDATED | Administrative Priority Administrative Secured Secured Priority General Unsecured | Residential Asset Mortgage Products, Inc. | 12-12053 |
| 11 | Citigroup Global Markets Inc. (on behalf of itself and certain of its affiliates) Edward Turan (Managing Director) Citigroup Global Markets Inc. 388 Greenwich St., 17th Floor New York, NY 10013 | 5045 | 11/16/2012 | $0.00 $0.00 $0.00 $0.00 UNLIQUIDATED | Administrative Priority Administrative Secured Secured Priority General Unsecured | Residential Accredit Loans, Inc. | 12-12052 |
| 12 | Citigroup Global Markets Inc. (on behalf of itself and certain of its affiliates) Edward Turan (Managing Director) Citigroup Global Markets Inc. 388 Greenwich St., 17th Floor New York, NY 10013 | 5046 | 11/16/2012 | $0.00 $0.00 $0.00 $0.00 UNLIQUIDATED | Administrative Priority Administrative Secured Secured Priority General Unsecured | Residential Funding Company, LLC | 12-12019 |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)
EXHIBIT A
SIXTY-SEVENTH OMNIBUS OBJECTION - NO LIABILITY - UNDERWRITER INDEMNIFICATION (NON-BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number |
|---|---|---|---|---|---|---|---|
| 13 | Citigroup Global Markets Inc. (on behalf of itself and certain of its affiliates)<br>Edward Turan (Managing Director)<br>Citigroup Global Markets Inc.<br>388 Greenwich St., 17th Floor<br>New York, NY 10013 | 5049 | 11/16/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | GMAC Mortgage, LLC | 12-12032 |
| 14 | Country Securities Corporation<br>Michael W. Schloessmann<br>Bank of America<br>4500 Park Granada<br>Calabasas, CA 91302 | 4992 | 11/15/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Asset Mortgage Products, Inc. | 12-12053 |
| 15 | Credit Suisse Securities (USA) LLC f/k/a Credit Suisse First Boston LLC<br>R. Colby Allsbrook, Esq., Director & Counsel<br>11 Madison Avenue<br>New York, NY 10010 | 3610 | 11/07/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Asset Securities Corporation | 12-12054 |
| 16 | Credit Suisse Securities (USA) LLC f/k/a Credit Suisse First Boston LLC<br>R. Colby Allsbrook, Esq., Director & Counsel<br>11 Madison Avenue<br>New York, NY 10010 | 7292 | 10/21/2013 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Accredit Loans, Inc. | 12-12052 |
| 17 | Credit Suisse Securities (USA) LLC f/k/a Credit Suisse First Boston LLC<br>R. Colby Allsbrook, Esq., Director & Counsel<br>11 Madison Avenue<br>New York, NY 10010 | 7293 | 10/21/2013 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Funding Mortgage Securities II, Inc. | 12-12061 |
| 18 | Credit Suisse Securities (USA) LLC f/k/a Credit Suisse First Boston LLC<br>R. Colby Allsbrook, Esq., Director & Counsel<br>11 Madison Avenue<br>New York, NY 10010 | 7294 | 10/21/2013 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Asset Mortgage Products, Inc. | 12-12053 |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)
EXHIBIT A
SIXTY-SEVENTH OMNIBUS OBJECTION - NO LIABILITY - UNDERWRITER INDEMNIFICATION (NON-BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number |
|---|---|---|---|---|---|---|---|
| 19 | Goldman, Sachs & Co<br>Attn Jonathan A. Schorr, Esq.<br>200 West Street<br>New York, NY 10282 | 5076 | 11/15/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>PARTIALLY UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Accredit Loans, Inc. | 12-12052 |
| 20 | Goldman, Sachs & Co.<br>Attn Jonathan A. Schorr, Esq.<br>200 West Street<br>New York, NY 10282 | 5077 | 11/15/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>PARTIALLY UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Funding Company, LLC | 12-12019 |
| 21 | JPMorgan Securities, LLC<br>Brian D. Glueckstein<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004 | 3918 | 11/09/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>PARTIALLY UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Asset Mortgage Products, Inc. | 12-12053 |
| 22 | JPMorgan Securities, LLC<br>Brian D. Glueckstein<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004 | 3919 | 11/09/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>PARTIALLY UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Funding Company, LLC | 12-12019 |
| 23 | JPMorgan Securities, LLC<br>Brian D. Glueckstein<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004 | 3920 | 11/09/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>PARTIALLY UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | GMAC Mortgage, LLC | 12-12032 |
| 24 | JPMorgan Securities, LLC<br>Brian D. Glueckstein<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004 | 3923 | 11/09/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>PARTIALLY UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Asset Securities Corporation | 12-12054 |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)
EXHIBIT A
SIXTY-SEVENTH OMNIBUS OBJECTION - NO LIABILITY - UNDERWRITER INDEMNIFICATION (NON-BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number |
|---|---|---|---|---|---|---|---|
| 25 | JPMorgan Securities, LLC<br>Brian D. Glueckstein<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004 | 3924 | 11/09/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>PARTIALLY UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Accredit Loans, Inc. | 12-12052 |
| 26 | JPMorgan Securities, LLC<br>Brian D. Glueckstein<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004 | 3925 | 11/09/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>PARTIALLY UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Funding Mortgage Securities I, Inc. | 12-12060 |
| 27 | JPMorgan Securities, LLC<br>Brian D. Glueckstein<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004 | 3926 | 11/09/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>PARTIALLY UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Funding Mortgage Securities II, Inc. | 12-12061 |
| 28 | Merrill Lynch, Pierce, Fenner & Smith Incorporated<br>Jill Fairbrother<br>Global Banking & Markets Litigation<br>Bank of America<br>50 Rockefeller Plaza, NY1-050-07-01<br>New York, NY 10020 | 87 | 06/13/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Asset Securities Corporation | 12-12054 |
| 29 | Merrill Lynch, Pierce, Fenner & Smith Incorporated<br>Jill Fairbrother Assistant General Counsel<br>Global Banking & Markets Litigation<br>Bank of America<br>50 Rockefeller Plaza, NY1-050-07-01<br>New York, NY 10020 | 88 | 06/13/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Funding Company, LLC | 12-12019 |
| 30 | Merrill Lynch, Pierce, Fenner & Smith Incorporated<br>Jill Fairbrother Assistant General Counsel<br>Global Banking & Markets Litigation<br>Bank of America<br>50 Rockefeller Plaza, NY1-050-07-01<br>New York, NY 10020 | 89 | 06/13/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Asset Mortgage Products, Inc. | 12-12053 |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)
EXHIBIT A
SIXTY-SEVENTH OMNIBUS OBJECTION - NO LIABILITY - UNDERWRITER INDEMNIFICATION (NON-BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number |
|---|---|---|---|---|---|---|---|
| 31 | Merrill Lynch, Pierce, Fenner & Smith Incorporated<br>Jill Fairbrother Assistant General Counsel<br>Global Banking & Markets Litigation<br>Bank of America<br>50 Rockefeller Plaza, NY1-050-07-01<br>New York, NY 10020 | 2739 | 11/08/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Funding Mortgage Securities I, Inc. | 12-12060 |
| 32 | Merrill Lynch, Pierce, Fenner & Smith Incorporated<br>Jill Fairbrother Assistant General Counsel<br>Global Banking & Markets Litigation<br>Bank of America<br>50 Rockefeller Plaza, NY1-050-07-01<br>New York, NY 10020 | 2741 | 11/08/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | GMAC Mortgage, LLC | 12-12032 |
| 33 | Merrill Lynch, Pierce, Fenner & Smith Incorporated<br>Jill Fairbrother Assistant General Counsel<br>Global Banking & Markets Litigation<br>Bank of America<br>50 Rockefeller Plaza, NY1-050-07-01<br>New York, NY 10020 | 2742 | 11/08/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Accredit Loans, Inc. | 12-12052 |
| 34 | Merrill Lynch, Pierce, Fenner & Smith Incorporated<br>Jill Fairbrother Assistant General Counsel<br>Global Banking & Markets Litigation<br>Bank of America<br>50 Rockefeller Plaza, NY1-050-07-01<br>New York, NY 10020 | 2743 | 11/08/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Funding Mortgage Securities II, Inc. | 12-12061 |
| 35 | Merrill Lynch, Pierce, Fenner & Smith Incorporated<br>Jill Fairbrother<br>Global Banking & Markets Litigation<br>Bank of America<br>50 Rockefeller Plaza, NY1-050-07-01<br>New York, NY 10020 | 2745 | 11/08/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Asset Mortgage Products, Inc. | 12-12053 |
| 36 | Merrill Lynch, Pierce, Fenner & Smith Incorporated<br>Jill Fairbrother<br>Global Banking & Markets Litigation<br>Bank of America<br>50 Rockefeller Plaza, NY1-050-07-01<br>New York, NY 10020 | 2747 | 11/08/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Asset Securities Corporation | 12-12054 |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)
EXHIBIT A
SIXTY-SEVENTH OMNIBUS OBJECTION - NO LIABILITY - UNDERWRITER INDEMNIFICATION (NON-BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number |
|---|---|---|---|---|---|---|---|
| 37 | Merrill Lynch, Pierce, Fenner & Smith Incorporated<br>Jill Fairbrother<br>Global Banking & Markets Litigation<br>Bank of America<br>50 Rockefeller Plaza, NY1-050-07-01<br>New York, NY 10020 | 2748 | 11/08/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Funding Company, LLC | 12-12019 |
| 38 | Morgan Stanley & Co. Incorporated (n/k/a Morgan Stanley & Co. LLC)<br>c/o Kevin H. Marino<br>Marino, Tortorella & Boyle. P.C.<br>437 Southern Blvd<br>Chatham, NJ 07928 | 6431 | 01/16/2013 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Funding Mortgage Securities I, Inc. | 12-12060 |
| 39 | Morgan Stanley & Co. Incorporated (n/k/a Morgan Stanley & Co. LLC)<br>c/o Kevin H. Marino<br>Marino, Tortorella & Boyle. P.C.<br>437 Southern Blvd<br>Chatham, NJ 07928 | 6432 | 01/16/2013 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | GMAC Mortgage, LLC | 12-12032 |
| 40 | Morgan Stanley & Co. Incorporated (n/k/a Morgan Stanley & Co. LLC)<br>c/o Kevin H. Marino<br>Marino, Tortorella & Boyle. P.C.<br>437 Southern Blvd<br>Chatham, NJ 07928 | 6433 | 01/16/2013 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Asset Mortgage Products, Inc. | 12-12053 |
| 41 | Morgan Stanley & Co. Incorporated (n/k/a Morgan Stanley & Co. LLC)<br>c/o Kevin H. Marino<br>Marino, Tortorella & Boyle. P.C.<br>437 Southern Blvd<br>Chatham, NJ 07928 | 6434 | 01/16/2013 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Funding Company, LLC | 12-12019 |
| 42 | UBS Securities LLC<br>David L.Goldberg<br>Executive Director<br>Senior Associate General Counsel<br>1285 Avenue of the Americas, 14th Floor<br>New York, NY 10019-6028 | 4447 | 11/10/2012 | $0.00<br>$0.00<br>$0.00<br>$0.00<br>PARTIALLY UNLIQUIDATED | Administrative Priority<br>Administrative Secured<br>Secured<br>Priority<br>General Unsecured | Residential Funding Company, LLC | 12-12019 |

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)
EXHIBIT A
SIXTY-SEVENTH OMNIBUS OBJECTION - NO LIABILITY - UNDERWRITER INDEMNIFICATION (NON-BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number |
|---|---|---|---|---|---|---|---|
| 43 | UBS Securities LLC | 4450 | 11/10/2012 | $0.00 | Administrative Priority | Residential | 12-12060 |
| | David L.Goldberg | | | $0.00 | Administrative Secured | Funding | |
| | Executive Director | | | $0.00 | Secured | Mortgage | |
| | Senior Associate General Counsel | | | $0.00 | Priority | Securities I, Inc. | |
| | 1285 Avenue of the Americas, 14th Floor | | | PARTIALLY UNLIQUIDATED | General Unsecured | | |
| | New York, NY 10019-6028 | | | | | | |
| 44 | UBS Securities LLC | 4457 | 11/10/2012 | $0.00 | Administrative Priority | Residential | 12-12052 |
| | David L.Goldberg | | | $0.00 | Administrative Secured | Accredit Loans, | |
| | Executive Director | | | $0.00 | Secured | Inc. | |
| | Senior Associate General Counsel | | | $0.00 | Priority | | |
| | 1285 Avenue of the Americas, 14th Floor | | | PARTIALLY UNLIQUIDATED | General Unsecured | | |
| | New York, NY 10019-6028 | | | | | | |

**<u>Annex 3</u>**

**Proof of Claim No. 3610**

Claim #3610  Date Filed: 11/7/2012

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT    Southern District of New York | | PROOF OF CLAIM |
|---|---|---|

**Name of Debtor:**
Residential Asset Securities Corporation

**Case Number:**
12-12020-MG

RECEIVED

NOV 0 7 2012

KURTZMAN CARSON CONSULTANTS

**COURT USE ONLY**

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
Credit Suisse Securities (USA) LLC f/k/a Credit Suisse First Boston LLC

☑ Check this box if this claim amends a previously filed claim.

**Name and address where notices should be sent:**
R. Colby Allsbrook, Esq., Director & Counsel
11 Madison Avenue
New York, NY 10010

Telephone number: (212) 538-7802    email: colby.allsbrook@credit-suisse.com

**Court Claim Number:** 435
   (*If known*)

Filed on: 08/27/2012

**Name and address where payment should be sent** (if different from above):

Telephone number:    email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**    $ See Attached Rider

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

**2. Basis for Claim:**  See Attached Rider
   (See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:**

**3a. Debtor may have scheduled account as:**

(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**

(See instruction #3b)

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:

**Value of Property:** $

**Annual Interest Rate_____% ☐ Fixed  or  ☐ Variable**
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$

**Basis for perfection:**

**Amount of Secured Claim:** $

**Amount Unsecured:** $

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).  If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**

$

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)



B 10 (Official Form 10) (12/11)                                                                                                                2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**RECEIVED**

**8. Signature:** (See instruction #8)

Check the appropriate box.

NOV 0 7 2012

**KURTZMAN CARSON CONSULTANTS**

☐ I am the creditor.    ☒ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
(Attach copy of power of attorney, if any.)    or their authorized agent.    (See Bankruptcy Rule 3005.)
(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: R. Colby Allsbrook, Esq.
Title:       Director and Counsel
Company:     Credit Suisse Securities (USA) LLC
Address and telephone number (if different from notice address above):
11 Madison Avenue
New York, NY 10010

_(Signature)_                    10/19/12
                                 _(Date)_

Telephone number: 212-538-7802    email: colby.allsbrook@credit-suisse.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

# CRAVATH, SWAINE & MOORE LLP

STUART W. GOLD
JOHN W. WHITE
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
SUSAN WEBSTER

DAVID MERCADO
ROWAN D. WILSON
CHRISTINE A. VARNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KEITH R. HUMMEL
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE
SARKIS JEBEJIAN

**WORLDWIDE PLAZA**
**825 EIGHTH AVENUE**
**NEW YORK, NY 10019-7475**

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1856

DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK

LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ERIC L. SCHIELE
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO
KEVIN J. ORSINI
MATTHEW MORREALE
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

OF COUNSEL
PAUL C. SAUNDERS

November 6, 2012

<u>In re Residential Capital, LLC, et al., Case No. 12-12020 (MG)</u>

Dear Sir or Madam:

        Enclosed please four (4) signed original amended proofs of claim on behalf of Credit Suisse Securities (USA) LLC  (the "<u>CSSU Proofs of Claim</u>") and two (2) signed original amended proofs of claim on behalf of DLJ Mortgage Capital, Inc. (the "<u>DLJ Proofs of Claim</u>") for filing in the above-referenced chapter 11 bankruptcy case. The CSSU Proofs of Claim each amend claim number 435, and the DLJ Proofs of Claim each amend claim number 1371.

        Also enclosed are copies of each of the 6 signed cover pages and a self-addressed stamped envelope. Please acknowledge receipt by file-stamping and returning the cover pages in the envelope provided.

        Please feel free to contact me with any questions regarding the enclosures.

Very truly yours,

Stephanie R. Tumbiolo

ResCap Claims Processing Center
c/o KCC
2335 Alaska Avenue
El Segundo, CA 90245

Encls.

FEDEX OVERNIGHT DELIVERY

**Exhibit 1**
Debtor Names and Case Numbers

| Name of Debtor | Case Number |
| --- | --- |
| Residential Funding Company, LLC | 12-12019 (MG) |
| Residential Capital, LLC | 12-12020 (MG) |
| ditech, LLC | 12-12021 (MG) |
| DOA Holding Properties, LLC | 12-12022 (MG) |
| DOA Properties IX (Lots-Other), LLC | 12-12023 (MG) |
| EPRE LLC | 12-12024 (MG) |
| Equity Investment I, LLC | 12-12025 (MG) |
| ETS of Virginia, Inc. | 12-12026 (MG) |
| ETS of Washington, Inc. | 12-12027 (MG) |
| Executive Trustee Services, LLC | 12-12028 (MG) |
| GMAC-RFC Holding Company, LLC | 12-12029 (MG) |
| GMAC Model Home Finance I, LLC | 12-12030 (MG) |
| GMAC Mortgage USA Corporation | 12-12031 (MG) |
| GMAC Mortgage, LLC | 12-12032 (MG) |
| GMAC Residential Holding Company, LLC | 12-12033 (MG) |
| GMACRH Settlement Services, LLC | 12-12034 (MG) |
| GMACM Borrower LLC | 12-12035 (MG) |
| GMACM REO LLC | 12-12036 (MG) |
| GMACR Mortgage Products, LLC | 12-12037 (MG) |
| HFN REO Sub II, LLC | 12-12038 (MG) |
| Home Connects Lending Services, LLC | 12-12039 (MG) |
| Homecomings Financial Real Estate Holdings, LLC | 12-12040 (MG) |
| Homecomings Financial, LLC | 12-12042 (MG) |
| Ladue Associates, Inc. | 12-12043 (MG) |
| Passive Asset Transaction, LLC | 12-12044 (MG) |
| PATI A, LLC | 12-12045 (MG) |
| PATI B, LLC | 12-12046 (MG) |
| PATI Real Estate Holdings, LLC | 12-12047 (MG) |
| RAHI A, LLC | 12-12048 (MG) |
| RAHI B, LLC | 12-12049 (MG) |
| RAHI Real Estate Holdings, LLC | 12-12050 (MG) |
| RCSFJV2004, LLC | 12-12051 (MG) |
| Residential Accredit Loans, Inc. | 12-12052 (MG) |
| Residential Asset Mortgage Products, Inc. | 12-12053 (MG) |
| Residential Asset Securities Corporation | 12-12054 (MG) |
| Residential Consumer Services of Alabama, LLC | 12-12055 (MG) |
| Residential Consumer Services of Ohio, LLC | 12-12056 (MG) |
| Residential Consumer Services of Texas, LLC | 12-12057 (MG) |
| Residential Consumer Services, LLC | 12-12058 (MG) |
| Residential Funding Mortgage Exchange, LLC | 12-12059 (MG) |
| Residential Funding Mortgage Securities I, Inc. | 12-12060 (MG) |
| Residential Funding Mortgage Securities II, Inc. | 12-12061 (MG) |
| Residential Funding Real Estate Holdings, LLC | 12-12062 (MG) |
| Residential Mortgage Real Estate Holdings, LLC | 12-12063 (MG) |
| RFC-GSAP Servicer Advance, LLC | 12-12064 (MG) |
| RFC Asset Holdings II, LLC | 12-12065 (MG) |
| RFC Asset Management, LLC | 12-12066 (MG) |
| RFC Borrower LLC | 12-12068 (MG) |
| RFC Construction Funding, LLC | 12-12069 (MG) |
| RFC REO LLC | 12-12070 (MG) |
| RFC SFJV-2002, LLC | 12-12071 (MG) |

## RIDER TO PROOF OF CLAIM FILED ON BEHALF OF
## CREDIT SUISSE SECURITIES (USA) LLC

1.      Credit Suisse Securities (USA) LLC (formerly known as Credit Suisse First Boston LLC) ("Claimant") files this proof of claim (the "Proof of Claim") against Residential Asset Securities Corporation (the "Debtor"), as debtor and debtor-in-possession in a consolidated chapter 11 case (the "Case") commenced on May 14, 2012 (the "Petition Date").  This Proof of Claim amends claim number 435 for the purpose of notifying the Court of additional Litigation (as defined below) involving the Debtor and separately asserting Claimant's claims against each debtor in the Case.

2.      Before the Petition Date, Claimant served as an underwriter of mortgage-backed securities offerings for which the Debtor served as the depositor (the "Offerings").  See Exhibit A for a list of the Offerings.  As part of the Offerings, Claimant and the Debtor entered into underwriting agreements and indemnification and contribution agreements (the "Agreements").  Copies of the Agreements are attached hereto as Exhibit B.

3.      Section 7.1 of the Agreements provides, among other things, that the Debtor agrees to indemnify Claimant "from and against any and all losses, claims, damages and liabilities … caused by any untrue statement or alleged untrue statement of a material fact contained in the Registration Statement for the registration of the Certificates … or in the Prospectus … or caused by any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein … not misleading …."  See Exhibit B, Section 7.1.

4.      In addition, Section 7.4 of the Agreements provides, among other things, that "[i]f the indemnification provided for in this Section 7 is unavailable to an indemnified party under Section 7.1 or Section 7.2 hereof or insufficient in respect of any losses, claims, damages or liabilities referred to therein, then the indemnifying party, in lieu of indemnifying such indemnified party, shall contribute to the amount paid or payable by such indemnified party as a result of such losses, claims, damages or liabilities, in such proportion as is appropriate ...." See Exhibit B, Section 7.4.

5.      Claimant is a defendant in litigation arising out of the Offerings (the "Litigation"). See Exhibit A for a list of the Litigation. Claimant notified the Debtor in writing on November 16, 2011 of certain of the matters listed in Exhibit A commenced against Claimant and of Claimant's intention to seek indemnity from the Debtor to the maximum extent permitted in connection with such Litigation and such Offering pursuant to the Agreements. A copy of the written notification is attached hereto as Exhibit C. After the Petition Date, one additional matter was filed. See Complaint, National Credit Union Administration Board v. Credit Suisse Securities (USA) LLC, et. al., No. 12-3648 JWL/JPO (U.S. District Court for the District of Kansas, filed on October 4, 2012)

6.      Claimant asserts a claim against the Debtor for indemnification of losses, claims, damages and liabilities, including but not limited to fees and disbursements already incurred and to be incurred by legal counsel, arising as a result of the Litigation or any future litigation based on the Offerings or other mortgage-backed securities offerings where Claimant served as an underwriter and the Debtor served as the depositor (each an "Indemnification Claim"). As of the date hereof, no judgment has

been rendered in connection with the Litigation.   Therefore, the total amount of each Indemnification Claim is contingent and unliquidated as of the Petition Date.

7.    Claimant reserves the right to amend, modify or supplement this Proof of Claim in any manner and for any purpose and to assert and file any and all additional claims of whatever kind or nature that Claimant has or may hereinafter have against the Debtor.

8.    Claimant reserves all rights that Claimant has or may have in the future against the Debtor.  This Proof of Claim is not intended to be, and shall not be construed as (a) a waiver or release of any rights of Claimant against the Debtor not asserted in this Proof of Claim, (b) a consent by Claimant to the jurisdiction or authority of the Bankruptcy Court with respect to the subject matter of the claims set forth in this Proof of Claim or to the Bankruptcy Court's hearing, determining or entering orders or judgments in any proceedings on this Proof of Claim or (c) an election of remedies.

9.    All notices concerning this Proof of Claim should be sent to:

R. Colby Allsbrook, Esq.
Director & Counsel
Credit Suisse Securities (USA) LLC
11 Madison Avenue
New York, NY 10010
1 (212) 538-7802
colby.allsbrook@credit-suisse.com

With a copy to:

Michael T. Reynolds
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Ave
New York, NY 10019
1 (212) 474-1552
mreynolds@cravath.com

# **EXHIBIT A**

## Offerings and Related Litigation

|    | Offering (Tranche) | Indemnitor | Litigation | Venue |
|----|--------------------|------------|-----------|-------|
| 1. | RASC 2005-EMX3 (AII) | Residential Asset Securities Corporation | Federal Housing Finance Agency v. Ally Financial Inc. f/k/a GMAC, LLC No. 11-CIV-7010 | Southern District of New York |
| 2. | RASC 2005-KS11 (AII) | Residential Asset Securities Corporation | | |
| 3. | RASC 2007-EMX1 (AII) | Residential Asset Securities Corporation | | |
| 4. | RASC 2007-EMX1 (AI3) | Residential Asset Securities Corp. | National Credit Union Administration Board v. Credit Suisse Securities (USA) LLC, et. al. No. 12-3648 JWL/JPO | U.S. District Court for the District of Kansas |

# **EXHIBIT B**

Agreements

[[3350463]]

# **EXHIBIT B-1**

## RASC 2005- EMX3 (AII)

**EXECUTION COPY**

## RESIDENTIAL ASSET SECURITIES CORPORATION
### Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EMX3

| | | |
|---|---|---|
| $138,052,000 | Adjustable Rate | Class A-I-1 Certificates |
| $54,973,000 | Adjustable Rate | Class A-I-2 Certificates |
| $58,777,000 | Adjustable Rate | Class A-I-3 Certificates |
| $15,867,000 | Adjustable Rate | Class A-I-4 Certificates |
| $267,481,000 | Adjustable Rate | Class A-II Certificates |
| $26,950,000 | Adjustable Rate | Class M-1 Certificates |
| $24,150,000 | Adjustable Rate | Class M-2 Certificates |
| $15,750,000 | Adjustable Rate | Class M-3 Certificates |
| $12,250,000 | Adjustable Rate | Class M-4 Certificates |
| $11,900,000 | Adjustable Rate | Class M-5 Certificates |
| $11,200,000 | Adjustable Rate | Class M-6 Certificates |
| $11,550,000 | Adjustable Rate | Class M-7 Certificates |
| $8,750,000 | Adjustable Rate | Class M-8 Certificates |
| $9,100,000 | Adjustable Rate | Class M-9 Certificates |
| $7,700,000 | Adjustable Rate | Class M-10 Certificates |

## UNDERWRITING AGREEMENT

September 21, 2005

Residential Funding Securities Corporation,
(for itself and on behalf of the other Underwriters)
7501 Wisconsin Avenue
Suite 900
Bethesda MD, 20814

Ladies and Gentlemen:

Residential Asset Securities Corporation, a Delaware corporation (the "Company"), proposes to sell to the underwriters named in Schedule I attached hereto (the "Underwriters"), for whom you are acting as a representative (in such capacity, the "Representative"), the respective amounts set forth opposite their names in Schedule I attached hereto of Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EMX3, Class A-I-1,

agrees with the records of the Company and Residential Funding excluding any questions of legal interpretation and (b) the letter prepared pursuant to Section 5.9 hereof.

6.8     The Class A-I-1, Class A-I-2, Class A-I-3, Class A-I-4 and Class A-II Certificates shall have each been rated "AAA" by Standard & Poor's, a division of The McGraw-Hill Companies, Inc. ("Standard & Poor's") and "Aaa" by Moody's Investors Service, Inc. ("Moody's").  The Class M-1 Certificates shall have been rated "AA+" by Standard & Poor's and "Aa1" by Moody's.  The Class M-2 Certificates shall have been rated "AA+" by Standard & Poor's and "A2" by Moody's.  The Class M-3 Certificates shall have been rated "A-" by Standard & Poor's and "Aa3" by Moody's.  The Class M-4 Certificates shall have been rated "AA" by Standard & Poor's and "A1" by Moody's.  The Class M-5 Certificates shall have been rated "AA-" by Standard & Poor's and "A2" by Moody's.  The Class M-6 Certificates shall have been rated "A+" by Standard & Poor's and "A3" by Moody's.  The Class M-7 Certificates shall have been rated "A" by Standard & Poor's and "Baa1" by Moody's.  The Class M-8 Certificates shall have been rated "A-" by Standard & Poor's and "Baa2" by Moody's.  The Class M-9 Certificates shall have been rated "BBB" by Standard & Poor's and "Baa3" by Moody's.  The Class M-10 Certificates shall have been rated "BBB" by Standard & Poor's and "Ba1" by Moody's.

6.9     You shall have received the opinion of Chapman & Cutler LLP, counsel to the Trustee, dated the Closing Date, substantially to the effect set forth in Exhibit C.

6.10     You shall have received the opinion of Faegre & Benson, special Minnesota tax counsel for the Company, dated the Closing Date, substantially to the effect set forth in Exhibit D.

6.11     You shall have received from Orrick, Herrington & Sutcliffe LLP, special counsel to the Company, reliance letters with respect to any opinions delivered to Standard & Poor's and Moody's.

The Company will furnish you with conformed copies of the above opinions, certificates, letters and documents as you reasonably request.

7.     Indemnification and Contribution.

7.1     The Company and Residential Funding, jointly and severally, agree to indemnify and hold harmless each Underwriter and each person, if any, who controls any Underwriter within the meaning of either Section 15 of the Act or Section 20 of the Securities Exchange Act of 1934, as amended, from and against any and all losses, claims, damages and liabilities caused by any untrue statement or alleged untrue statement of a material fact contained in the Registration Statement for the registration of the Certificates as originally filed or in any amendment thereof or other filing incorporated by reference therein, or in the Prospectus or incorporated by reference therein (if used within the period set forth in Section 5.3 hereof and as amended or supplemented if the Company shall have furnished any amendments or supplements thereto), or caused by any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, except insofar as such losses, claims, damages, or

13

liabilities are caused by any such untrue statement or omission or alleged untrue statement or omission based upon any information with respect to which the Underwriters have agreed to indemnify the Company pursuant to Section 7.2; provided, however, that none of the Company, Residential Funding or any Underwriter will be liable in any case to the extent that any such loss, claim, damage or liability arises out of or is based upon any such untrue statement or alleged untrue statement or omission or alleged omission made therein relating to the Excluded Information or any information included in Computational Materials or ABS Term Sheets that is incorrect solely because the Pool Information deviates in any material respect from the parameters set forth in the bid sheet attached hereto as Exhibit H (the "Excluded Pool Information") provided that such Underwriter has complied with its obligations to circulate and deliver to the Company revised Computational Materials and ABS Term Sheets in accordance with Section 4.2(e).

7.2    Each Underwriter agrees, severally and not jointly, to indemnify and hold harmless the Company, Residential Funding, their respective directors or officers and any person controlling the Company or Residential Funding to the same extent as the indemnity set forth in Section 7.1 above from the Company and Residential Funding to each Underwriter, but only with respect to (i) the Underwriter Information as it relates to such Underwriter and (ii) the Computational Materials and ABS Term Sheets prepared by or at the direction of such Underwriter, except to the extent of any errors in the Computational Materials or ABS Term Sheets that are caused by errors in the Pool Information; provided, however, that the indemnification set forth in this Section 7.2 shall not apply to the extent of any errors in Computational Materials or ABS Term Sheets that are caused by Excluded Pool Information. In addition, each Underwriter agrees, severally and not jointly, to indemnify and hold harmless the Company, Residential Funding, their respective directors or officers and any person controlling the Company or Residential Funding against any and all losses, claims, damages, liabilities and expenses (including, without limitation, reasonable attorneys' fees) caused by, resulting from, relating to, or based upon any legend regarding original issue discount on any Certificate resulting from incorrect information provided by such Underwriter in the certificates described in Section 4.3 hereof.

7.3    In case any proceeding (including any governmental investigation) shall be instituted involving any person in respect of which indemnity may be sought pursuant to either Section 7.1 or Section 7.2, such person (the "indemnified party") shall promptly notify the person against whom such indemnity may be sought (the "indemnifying party") in writing and the indemnifying party, upon request of the indemnified party, shall retain counsel reasonably satisfactory to the indemnified party to represent the indemnified party and any others the indemnifying party may designate in such proceeding and shall pay the reasonable fees and disbursements of such counsel related to such proceeding. In any such proceeding, any indemnified party shall have the right to retain its own counsel, but the reasonable fees and expenses of such counsel shall be at the expense of such indemnified party unless (i) the indemnifying party and the indemnified party shall have mutually agreed to the retention of such counsel or (ii) the named parties to any such proceeding (including any impleaded parties) include both the indemnifying party and the indemnified party and representation of both parties by the same counsel would be inappropriate due to actual or potential differing interests between them. It is understood that the indemnifying party shall not, in connection with any proceeding or related proceedings in the same jurisdiction, be liable for the reasonable fees and expenses of

14

more than one separate firm for all such indemnified parties. Such firm shall be designated in writing by you, in the case of parties indemnified pursuant to Section 7.1 and by the Company or Residential Funding, in the case of parties indemnified pursuant to Section 7.2. The indemnifying party may, at its option, at any time upon written notice to the indemnified party, assume the defense of any proceeding and may designate counsel reasonably satisfactory to the indemnified party in connection therewith provided that the counsel so designated would have no actual or potential conflict of interest in connection with such representation. Unless it shall assume the defense of any proceeding the indemnifying party shall not be liable for any settlement of any proceeding effected without its written consent, but if settled with such consent or if there be a final judgment for the plaintiff, the indemnifying party agrees to indemnify the indemnified party from and against any loss or liability by reason of such settlement or judgment. If the indemnifying party assumes the defense of any proceeding, it shall be entitled to settle such proceeding with the consent of the indemnified party or, if such settlement provides for release of the indemnified party in connection with all matters relating to the proceeding which have been asserted against the indemnified party in such proceeding by the other parties to such settlement, without the consent of the indemnified party.

7.4     If the indemnification provided for in this Section 7 is unavailable to an indemnified party under Section 7.1 or 7.2 hereof or insufficient in respect of any losses, claims, damages or liabilities referred to therein, then the indemnifying party, in lieu of indemnifying such indemnified party, shall contribute to the amount paid or payable by such indemnified party as a result of such losses, claims, damages or liabilities, in such proportion as is appropriate to reflect not only the relative benefits received by the Company and Residential Funding on the one hand and the related Underwriter on the other from the offering of the Certificates but also the relative fault of the Company or Residential Funding on the one hand and of the related Underwriter on the other in connection with the statements or omissions which resulted in such losses, claims, damages or liabilities, as well as any other relevant equitable considerations. The relative fault of the Company and Residential Funding on the one hand and of any Underwriter on the other shall be determined by reference to, among other things, whether the untrue or alleged untrue statement of a material fact or the omission or alleged omission to state a material fact relates to information supplied by the Company or by such Underwriter, and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such statement or omission.

7.5     The Company, Residential Funding and the Underwriters agree that it would not be just and equitable if contribution pursuant to this Section 7 were determined by pro rata allocation or by any other method of allocation which does not take account of the considerations referred to in Section 7.4, above. The amount paid or payable by an indemnified party as a result of the losses, claims, damages and liabilities referred to in this Section 7 shall be deemed to include, subject to the limitations set forth above, any legal or other expenses reasonably incurred by such indemnified party in connection with investigating or defending any such action or claim except where the indemnified party is required to bear such expenses pursuant to Section 7.4; which expenses the indemnifying party shall pay as and when incurred, at the request of the indemnified party, to the extent that the indemnifying party believes that it will be ultimately obligated to pay such expenses. In the event that any expenses so paid by the indemnifying party are subsequently determined to not be required to be borne by the indemnifying party hereunder, the party which received such payment shall promptly refund the

15

amount so paid to the party which made such payment. No person guilty of fraudulent misrepresentation (within the meaning of Section 11 (f) of the Act) shall be entitled to contribution from any person who was not guilty of such fraudulent misrepresentation.

7.6    The indemnity and contribution agreements contained in this Section 7 and the representations and warranties of the Company and Residential Funding in this Agreement shall remain operative and in full force and effect regardless of (i) any termination of this Agreement, (ii) any investigation made by the Underwriters or on behalf of the Underwriters or any person controlling any Underwriter or by or on behalf of the Company or Residential Funding and their respective directors or officers or any person controlling the Company or Residential Funding and (iii) acceptance of and payment for any of the Certificates.

8.    <u>Termination</u>.    This Agreement shall be subject to termination by notice given to the Company and Residential Funding, if the sale of the Certificates provided for herein is not consummated because of any failure or refusal on the part of the Company or Residential Funding to comply with the terms or to fulfill any of the conditions of this Agreement, or if for any reason the Company or Residential Funding shall be unable to perform their respective obligations under this Agreement. If you terminate this Agreement in accordance with this Section 8, the Company or Residential Funding will reimburse you for all reasonable out-of-pocket expenses (including reasonable fees and disbursements of counsel) that shall have been reasonably incurred by the Underwriters in connection with the proposed purchase and sale of the Certificates.

9.    <u>Certain Representations and Indemnities to Survive</u>.    The respective agreements, representations, warranties, indemnities and other statements of the Company, Residential Funding or the officers of any of the Company, Residential Funding, and each Underwriter set forth in or made pursuant to this Agreement will remain in full force and effect, regardless of any investigation, or statement as to the results thereof, made by any Underwriter or on its behalf or made by or on behalf of any other Underwriter, the Company or Residential Funding or any of their respective officers, directors or controlling persons, and will survive delivery of and payment for the Certificates.

10.    <u>Notices</u>.    All communications hereunder will be in writing and effective only on receipt, and, if sent to an Underwriter will be mailed, delivered or telegraphed and confirmed to such Underwriter c/o Residential Funding Securities Corporation, 7501 Wisconsin Avenue, Suite 900, Bethesda, MD, Attention: Hu Benton, or if sent to the Company, will be mailed, delivered or telegraphed, and confirmed to it at Residential Asset Securities Corporation, Inc., 8400 Normandale Lake Boulevard, Suite 250, Minneapolis, Minnesota 55437, Attention: President; or, if sent to Residential Funding will be mailed, delivered or telegraphed and confirmed to it at Residential Funding Corporation, 8400 Normandale Lake Boulevard, Suite 250, Minneapolis, Minnesota 55437, Attention: President.

11.    <u>Successors</u>.    This Agreement will inure to the benefit of and be binding upon the parties hereto and their respective successors and the officers and directors and controlling persons referred to in Section 7 hereof, and their successors and assigns, and no other person will have any right or obligation hereunder.

16

If the foregoing is in accordance with your understanding of our agreement, please sign and return to us a counterpart hereof, whereupon this letter and your acceptance shall represent a binding agreement among the Company, Residential Funding and the Underwriters.

Very truly yours,

RESIDENTIAL ASSET SECURITIES
    CORPORATION

By: _____
    Name:  Pieter VanZyl
    Title:  Vice President


RESIDENTIAL FUNDING
    CORPORATION

By: _____
    Name:  Benita Bjorgo
    Title:  Associate


The foregoing Underwriting Agreement
is hereby confirmed and accepted as of
the date first above written.


RESIDENTIAL FUNDING SECURITIES
CORPORATION,
(for itself and on behalf of the other
Underwriters)


By: _____
Name:
Title:

If the foregoing is in accordance with your understanding of our agreement, please sign and return to us a counterpart hereof, whereupon this letter and your acceptance shall represent a binding agreement among the Company, Residential Funding and the Underwriters.

Very truly yours,

RESIDENTIAL ASSET SECURITIES
CORPORATION

By:_____
    Name:  Pieter VanZyl
    Title:  Vice President

RESIDENTIAL FUNDING
CORPORATION

By:_____
    Name:  Benita Bjorgo
    Title:  Associate

The foregoing Underwriting Agreement
is hereby confirmed and accepted as of
the date first above written.

RESIDENTIAL FUNDING SECURITIES
CORPORATION,
(for itself and on behalf of the other
Underwriters)

By: _____
Name: Dennis J. Crosson
Title: Director

## SCHEDULE I

| Underwriter | Principal Amount of Class A-I-1 Certificates |
|---|---|
| Residential Funding Securities Corporation | $69,026,000 |
| Credit Suisse First Boston LLC | $69,026,000 |

| Underwriter | Principal Amount of Class A-I-2 Certificates |
|---|---|
| Residential Funding Securities Corporation | $27,486,500 |
| Credit Suisse First Boston LLC | $27,486,500 |

| Underwriter | Principal Amount of Class A-I-3 Certificates |
|---|---|
| Residential Funding Securities Corporation | $29,388,500 |
| Credit Suisse First Boston LLC | $29,388,500 |

| Underwriter | Principal Amount of Class A-I-4 Certificates |
|---|---|
| Residential Funding Securities Corporation | $7,933,500 |
| Credit Suisse First Boston LLC | $7,933,500 |

| Underwriter | Principal Amount of Class A-II Certificates |
|---|---|
| Residential Funding Securities Corporation | $133,740,500 |
| Credit Suisse First Boston LLC | $133,740,500 |

| Underwriter | Principal Amount of Class M-1 Certificates |
|---|---|
| Residential Funding Securities Corporation | $13,745,000 |
| Credit Suisse First Boston LLC | $13,475,000 |

| Underwriter | Principal Amount of Class M-2 Certificates |
|---|---|
| Residential Funding Securities Corporation | $12,075,000 |
| Credit Suisse First Boston LLC | $12,075,000 |

SCHEDULE I-1

| Underwriter | Principal Amount of Class M-3 Certificates |
| --- | --- |
| Residential Funding Securities Corporation | $7,875,000 |
| Credit Suisse First Boston LLC | $7,875,000 |

| Underwriter | Principal Amount of Class M-4 Certificates |
| --- | --- |
| Residential Funding Securities Corporation | $6,125,000 |
| Credit Suisse First Boston LLC | $6,125,000 |

| Underwriter | Principal Amount of Class M-5 Certificates |
| --- | --- |
| Residential Funding Securities Corporation | $5,950,000 |
| Credit Suisse First Boston LLC | $5,950,000 |

| Underwriter | Principal Amount of Class M-6 Certificates |
| --- | --- |
| Residential Funding Securities Corporation | $5,600,000 |
| Credit Suisse First Boston LLC | $5,600,000 |

| Underwriter | Principal Amount of Class M-7 Certificates |
| --- | --- |
| Residential Funding Securities Corporation | $5,775,000 |
| Credit Suisse First Boston LLC | $5,775,000 |

| Underwriter | Principal Amount of Class M-8 Certificates |
| --- | --- |
| Residential Funding Securities Corporation | $4,375,000 |
| Credit Suisse First Boston LLC | $4,375,000 |

| Underwriter | Principal Amount of Class M-9 Certificates |
| --- | --- |
| Residential Funding Securities Corporation | $4,550,000 |
| Credit Suisse First Boston LLC | $4,550,000 |

SCHEDULE I-2

| Underwriter | Principal Amount of Class M-10 Certificates |
|---|---|
| Residential Funding Securities Corporation | $3,850,000 |
| Credit Suisse First Boston LLC | $3,850,000 |

**SCHEDULE I-3**

# EXHIBIT B-2

## RASC 2005- KS11 (AII)

Execution Copy

## RESIDENTIAL ASSET SECURITIES CORPORATION
### Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS11

| | | |
|---|---|---|
| $ 274,657,000 | Adjustable Rate | Class A-I-1 Certificates |
| $ 103,126,000 | Adjustable Rate | Class A-I-2 Certificates |
| $ 114,019,000 | Adjustable Rate | Class A-I-3 Certificates |
| $ 56,277,000 | Adjustable Rate | Class A-I-4 Certificates |
| $ 547,641,000 | Adjustable Rate | Class A-II Certificates |
| $ 49,680,000 | Adjustable Rate | Class M-1 Certificates |
| $ 44,850,000 | Adjustable Rate | Class M-2 Certificates |
| $ 30,360,000 | Adjustable Rate | Class M-3 Certificates |
| $ 22,080,000 | Adjustable Rate | Class M-4 Certificates |
| $ 22,770,000 | Adjustable Rate | Class M-5 Certificates |
| $ 20,700,000 | Adjustable Rate | Class M-6 Certificates |
| $ 21,390,000 | Adjustable Rate | Class M-7 Certificates |
| $ 16,560,000 | Adjustable Rate | Class M-8 Certificates |
| $ 15,180,000 | Adjustable Rate | Class M-9 Certificates |

## UNDERWRITING AGREEMENT

November 23, 2005

Credit Suisse First Boston LLC,
  (on behalf of itself and as representative
  of the other Underwriters)
270 Park Avenue, Floor 10
New York, New York 10017

Ladies and Gentlemen:

Residential Asset Securities Corporation, a Delaware corporation (the "Company"), proposes to sell to the underwriters named on Schedule I attached hereto (the "Underwriters"), for whom you are acting as a representative (in such capacity, the "Representative"), the respective amounts set forth opposite their names in Schedule I attached hereto of Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS11, Class A-I-1, Class A-I-2,

been rated "AA" by Standard & Poor's and "A1" by Moody's. The Class M-5 Certificates shall have been rated "AA" by Standard & Poor's and "A2" by Moody's. The Class M-6 Certificates shall have been rated "AA-" by Standard & Poor's and "A3" by Moody's. The Class M-7 Certificates shall have been rated "A+" by Standard & Poor's and "Baa1" by Moody's. The Class M-8 Certificates shall have been rated "A" by Standard & Poor's and "Baa2" by Moody's. The Class M-9 Certificates shall have been rated "BBB+" by Standard & Poor's and "Baa3" by Moody's.

      6.9    You shall have received the opinion of Chapman & Cutler LLP, counsel to the Trustee, dated the Closing Date, substantially to the effect set forth in Exhibit C.

      6.10    You shall have received the opinion of Faegre & Benson, special Minnesota tax counsel for the Company, dated the Closing Date, substantially to the effect set forth in Exhibit D.

      6.11    You shall have received and been addressed on (or received reliance letters with respect to) any opinions delivered to Standard & Poor's and Moody's by Orrick, Herrington & Sutcliffe LLP, special counsel to the Company, or Julianne M. Linder, associate counsel to the Company.

The Company will furnish you with conformed copies of the above opinions, certificates, letters and documents as you reasonably request.

      7.    <u>Indemnification and Contribution.</u>

      7.1    The Company and Residential Funding, jointly and severally, agree to indemnify and hold harmless each Underwriter and each person, if any, who controls any Underwriter within the meaning of either Section 15 of the Act or Section 20 of the Securities Exchange Act of 1934, as amended, from and against any and all losses, claims, damages and liabilities caused by any untrue statement or alleged untrue statement of a material fact contained in the Registration Statement for the registration of the Certificates as originally filed or in any amendment thereof or other filing incorporated by reference therein, or in the Prospectus or incorporated by reference therein (if used within the period set forth in Section 5.3 hereof and as amended or supplemented if the Company shall have furnished any amendments or supplements thereto), or caused by any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, except insofar as such losses, claims, damages, or liabilities are caused by any such untrue statement or omission or alleged untrue statement or omission based upon any information with respect to which the Underwriters have agreed to indemnify the Company pursuant to Section 7.2; <u>provided, however</u>, that none of the Company, Residential Funding or any Underwriter will be liable in any case to the extent that any such loss, claim, damage or liability arises out of or is based upon any such untrue statement or alleged untrue statement or omission or alleged omission made therein relating to the Excluded Information or any information included in Computational Materials or ABS Term Sheets that is incorrect solely because the Pool Information deviates in any material respect from the parameters set forth in the bid sheet attached hereto as Exhibit H  (the "Excluded Pool Information") provided that such Underwriter has complied with its obligations to circulate and

deliver to the Company revised Computational Materials and ABS Term Sheets in accordance with Section 4.2(e).

7.2      Each Underwriter agrees , severally and not jointly, to indemnify and hold harmless the Company, Residential Funding, their respective directors or officers and any person controlling the Company or Residential Funding to the same extent as the indemnity set forth in Section 7.1 above from the Company and Residential Funding to each Underwriter, but only with respect to (i) the Underwriter Information as it relates to such Underwriter and (ii) the Computational Materials and ABS Term Sheets prepared by or at the direction of such Underwriter, except to the extent of any errors in the Computational Materials or ABS Term Sheets that are caused by errors in the Pool Information; provided, however, that the indemnification set forth in this Section 7.2 shall not apply to the extent of any errors in Computational Materials or ABS Term Sheets that are caused by Excluded Pool Information. In addition, each Underwriter agrees, severally and not jointly, to indemnify and hold harmless the Company, Residential Funding, their respective directors or officers and any person controlling the Company or Residential Funding against any and all losses, claims, damages, liabilities and expenses (including, without limitation, reasonable attorneys' fees) caused by, resulting from, relating to, or based upon any legend regarding original issue discount on any Certificate resulting from incorrect information provided by such Underwriter in the certificates described in Section 4.3 hereof.

7.3      In case any proceeding (including any governmental investigation) shall be instituted involving any person in respect of which indemnity may be sought pursuant to either Section 7.1 or Section 7.2, such person (the "indemnified party") shall promptly notify the person against whom such indemnity may be sought (the "indemnifying party") in writing and the indemnifying party, upon request of the indemnified party, shall retain counsel reasonably satisfactory to the indemnified party to represent the indemnified party and any others the indemnifying party may designate in such proceeding and shall pay the reasonable fees and disbursements of such counsel related to such proceeding.   In any such proceeding, any indemnified party shall have the right to retain its own counsel, but the reasonable fees and expenses of such counsel shall be at the expense of such indemnified party unless (i) the indemnifying party and the indemnified party shall have mutually agreed to the retention of such counsel or (ii) the named parties to any such proceeding (including any impleaded parties) include both the indemnifying party and the indemnified party and representation of both parties by the same counsel would be inappropriate due to actual or potential differing interests between them.  It is understood that the indemnifying party shall not, in connection with any proceeding or related proceedings in the same jurisdiction, be liable for the reasonable fees and expenses of more than one separate firm for all such indemnified parties.  Such firm shall be designated in writing by you, in the case of parties indemnified pursuant to Section 7.1 and by the Company or Residential Funding, in the case of parties indemnified pursuant to Section 7.2.    The indemnifying party may, at its option, at any time upon written notice to the indemnified party, assume the defense of any proceeding and may designate counsel reasonably satisfactory to the indemnified party in connection therewith provided that the counsel so designated would have no actual or potential conflict of interest in connection with such representation.  Unless it shall assume the defense of any proceeding the indemnifying party shall not be liable for any settlement of any proceeding effected without its written consent, but if settled with such consent or if there be a final judgment for the plaintiff, the indemnifying party agrees to indemnify the

indemnified party from and against any loss or liability by reason of such settlement or judgment. If the indemnifying party assumes the defense of any proceeding, it shall be entitled to settle such proceeding with the consent of the indemnified party or, if such settlement provides for release of the indemnified party in connection with all matters relating to the proceeding which have been asserted against the indemnified party in such proceeding by the other parties to such settlement, without the consent of the indemnified party.

       7.4     If the indemnification provided for in this Section 7 is unavailable to an indemnified party under Section 7.1 or 7.2 hereof or insufficient in respect of any losses, claims, damages or liabilities referred to therein, then the indemnifying party, in lieu of indemnifying such indemnified party, shall contribute to the amount paid or payable by such indemnified party as a result of such losses, claims, damages or liabilities, in such proportion as is appropriate to reflect not only the relative benefits received by the Company and Residential Funding on the one hand and the related Underwriter on the other from the offering of the Certificates but also the relative fault of the Company or Residential Funding on the one hand and of the related Underwriter on the other in connection with the statements or omissions which resulted in such losses, claims, damages or liabilities, as well as any other relevant equitable considerations. The relative fault of the Company and Residential Funding on the one hand and of any Underwriter on the other shall be determined by reference to, among other things, whether the untrue or alleged untrue statement of a material fact or the omission or alleged omission to state a material fact relates to information supplied by the Company or by such Underwriter, and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such statement or omission.

       7.5     The Company, Residential Funding and the Underwriters agree that it would not be just and equitable if contribution pursuant to this Section 7 were determined by pro rata allocation or by any other method of allocation which does not take account of the considerations referred to in Section 7.4, above. The amount paid or payable by an indemnified party as a result of the losses, claims, damages and liabilities referred to in this Section 7 shall be deemed to include, subject to the limitations set forth above, any legal or other expenses reasonably incurred by such indemnified party in connection with investigating or defending any such action or claim except where the indemnified party is required to bear such expenses pursuant to Section 7.4; which expenses the indemnifying party shall pay as and when incurred, at the request of the indemnified party, to the extent that the indemnifying party believes that it will be ultimately obligated to pay such expenses. In the event that any expenses so paid by the indemnifying party are subsequently determined to not be required to be borne by the indemnifying party hereunder, the party which received such payment shall promptly refund the amount so paid to the party which made such payment. No person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Act) shall be entitled to contribution from any person who was not guilty of such fraudulent misrepresentation.

       7.6     The indemnity and contribution agreements contained in this Section 7 and the representations and warranties of the Company and Residential Funding in this Agreement shall remain operative and in full force and effect regardless of (i) any termination of this Agreement, (ii) any investigation made by the Underwriters or on behalf of the Underwriters or any person controlling any Underwriter or by or on behalf of the Company or Residential

DOCSLA1:510817.4

Funding and their respective directors or officers or any person controlling the Company or Residential Funding and (iii) acceptance of and payment for any of the Certificates.

8.    Termination.  This Agreement shall be subject to termination by notice given to the Company and Residential Funding, if the sale of the Certificates provided for herein is not consummated because of any failure or refusal on the part of the Company or Residential Funding to comply with the terms or to fulfill any of the conditions of this Agreement, or if for any reason the Company or Residential Funding shall be unable to perform their respective obligations under this Agreement.  If you terminate this Agreement in accordance with this Section 8, the Company or Residential Funding will reimburse you for all reasonable out-of-pocket expenses (including reasonable fees and disbursements of counsel) that shall have been reasonably incurred by the Underwriters in connection with the proposed purchase and sale of the Certificates.

9.    Certain Representations and Indemnities to Survive.  The respective agreements, representations, warranties, indemnities and other statements of the Company, Residential Funding or the officers of any of the Company, Residential Funding, and each Underwriter set forth in or made pursuant to this Agreement will remain in full force and effect, regardless of any investigation, or statement as to the results thereof, made by any Underwriter on its behalf or on behalf of any other Underwriter, the Company or Residential Funding or any of their respective officers, directors or controlling persons, and will survive delivery of and payment for the Certificates.

10.    Notices.  All communications hereunder will be in writing and effective only on receipt, and, if sent to an Underwriter will be mailed, delivered or telegraphed and confirmed to the Underwriter c/o Credit Suisse First Boston LLC, 11 Madison Avenue, 5th Floor, New York, New York 10010, Attention: Ronald Tarantino, or if sent to the Company, will be mailed, delivered or telegraphed, and confirmed to it at Residential Asset Securities Corporation, Inc., 8400 Normandale Lake Boulevard, Suite 250, Minneapolis, Minnesota 55437, Attention: President; or, if sent to Residential Funding will be mailed, delivered or telegraphed and confirmed to it at Residential Funding Corporation, 8400 Normandale Lake Boulevard, Suite 250, Minneapolis, Minnesota 55437, Attention: President.

11.    Successors.  This Agreement will inure to the benefit of and be binding upon the parties hereto and their respective successors and the officers and directors and controlling persons referred to in Section 7 hereof, and their successors and assigns, and no other person will have any right or obligation hereunder.

12.    Applicable Law.  This Agreement will be governed by and construed in accordance with the laws of the State of New York.

13.    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, which taken together shall constitute one and the same instrument.

If the foregoing is in accordance with your understanding of our agreement, please sign and return to us a counterpart hereof, whereupon this letter and your acceptance shall represent a binding agreement among the Company, Residential Funding and the Underwriters.

Very truly yours,

RESIDENTIAL ASSET SECURITIES
CORPORATION

By: _____
    Name: Pieter VanZyl
    Title:  Vice President

RESIDENTIAL FUNDING CORPORATION

By: _____
    Name:  Joseph Orning
    Title:   Associate

The foregoing Underwriting Agreement
is hereby confirmed and accepted as of
the date first above written.

CREDIT SUISSE FIRST BOSTON LLC,
    (on behalf of itself and as representative of
    the other Underwriters)

By:_____
Name:
Title:

If the foregoing is in accordance with your understanding of our agreement, please sign and return to us a counterpart hereof, whereupon this letter and your acceptance shall represent a binding agreement among the Company, Residential Funding and the Underwriters.

Very truly yours,

RESIDENTIAL ASSET SECURITIES CORPORATION

By: _____
    Name: Pieter VanZyl
    Title:  Vice President

RESIDENTIAL FUNDING CORPORATION

By: _____
    Name:  Joseph Orning
    Title:   Associate

The foregoing Underwriting Agreement
is hereby confirmed and accepted as of
the date first above written.

CREDIT SUISSE FIRST BOSTON LLC,
    (on behalf of itself and as representative of
    the other Underwriters)

By: _____
Name:
Title:    **John J. Herbert**
          **Director**

**SCHEDULE I**

| Underwriter | Principal Amount of Class A-I-1 Certificates |
|---|---|
| Credit Suisse Fist Boston LLC | $123,595,650 |
| Residential Funding Securities Corporation | $123,595,650 |
| Greenwich Capital Markets, Inc. | $ 27,465,700 |

| Underwriter | Principal Amount of Class A-I-2 Certificates |
|---|---|
| Credit Suisse Fist Boston LLC | $ 46,406,700 |
| Residential Funding Securities Corporation | $ 46,406,700 |
| Greenwich Capital Markets, Inc. | $ 10,312,600 |

| Underwriter | Principal Amount of Class A-I-3 Certificates |
|---|---|
| Credit Suisse Fist Boston LLC | $ 51,308,550 |
| Residential Funding Securities Corporation | $ 51,308,550 |
| Greenwich Capital Markets, Inc. | $ 11,401,900 |

| Underwriter | Principal Amount of Class A-I-4 Certificates |
|---|---|
| Credit Suisse Fist Boston LLC | $ 25,324,650 |
| Residential Funding Securities Corporation | $ 25,324,650 |
| Greenwich Capital Markets, Inc. | $ 5,627,700 |

| Underwriter | Principal Amount of Class A-II Certificates |
|---|---|
| Credit Suisse Fist Boston LLC | $246,438,450 |
| Residential Funding Securities Corporation | $246,438,450 |
| Greenwich Capital Markets, Inc. | $ 54,764,100 |

| Underwriter | Principal Amount of Class M-1 Certificates |
|---|---|
| Credit Suisse Fist Boston LLC | $ 22,356,000 |
| Residential Funding Securities Corporation | $ 22,356,000 |
| Greenwich Capital Markets, Inc. | $ 4,968,000 |

| Underwriter | Principal Amount of Class M-2 Certificates |
|---|---|
| Credit Suisse Fist Boston LLC | $ 20,182,500 |
| Residential Funding Securities Corporation | $ 20,182,500 |
| Greenwich Capital Markets, Inc. | $ 4,485,000 |

| Underwriter | Principal Amount of Class M-3 Certificates |
|---|---|
| Credit Suisse Fist Boston LLC | $ 13,662,000 |
| Residential Funding Securities Corporation | $ 13,662,000 |
| Greenwich Capital Markets, Inc. | $ 3,036,000 |

| Underwriter | Principal Amount of Class M-4 Certificates |
|---|---|
| Credit Suisse Fist Boston LLC | $ 9,936,000 |
| Residential Funding Securities Corporation | $ 9,936,000 |
| Greenwich Capital Markets, Inc. | $ 2,208,000 |

| Underwriter | Principal Amount of Class M-5 Certificates |
|---|---|
| Credit Suisse Fist Boston LLC | $ 10,246,500 |
| Residential Funding Securities Corporation | $ 10,246,500 |
| Greenwich Capital Markets, Inc. | $ 2,277,000 |

| Underwriter | Principal Amount of Class M-6 Certificates |
|---|---|
| Credit Suisse Fist Boston LLC | $ 9,315,000 |
| Residential Funding Securities Corporation | $ 9,315,000 |
| Greenwich Capital Markets, Inc. | $ 2,070,000 |

| Underwriter | Principal Amount of Class M-7 Certificates |
|---|---|
| Credit Suisse Fist Boston LLC | 9,625,500.00 |
| Residential Funding Securities Corporation | 9,625,500.00 |
| Greenwich Capital Markets, Inc. | 2,139,000.00 |

| Underwriter | Principal Amount of Class M-8 Certificates |
|---|---|
| Credit Suisse Fist Boston LLC | 7,452,000.00 |
| Residential Funding Securities Corporation | 7,452,000.00 |
| Greenwich Capital Markets, Inc. | 1,656,000.00 |

| Underwriter | Principal Amount of Class M-9 Certificates |
|---|---|
| Credit Suisse Fist Boston LLC | 6,831,000.00 |
| Residential Funding Securities Corporation | 6,831,000.00 |
| Greenwich Capital Markets, Inc. | 1,518,000.00 |

# **EXHIBIT B-3**

## RASC 2007- EMX1 (AI3, AII)

**Execution Copy**

## RESIDENTIAL ASSET SECURITIES CORPORATION

Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-EMX1

| Initial Principal Amount | Class | Initial Pass-Through Rate |
|---|---|---|
| $ 185,876,000 | Class A-I-1 Certificates | Adjustable Rate |
| $ 27,665,000 | Class A-I-2 Certificates | Adjustable Rate |
| $ 105,994,000 | Class A-I-3 Certificates | Adjustable Rate |
| $ 46,505,000 | Class A-I-4 Certificates | Adjustable Rate |
| $ 326,812,000 | Class A-II Certificates | Adjustable Rate |

## UNDERWRITING AGREEMENT

March 7, 2007

Residential Funding Securities, LLC
(on behalf of itself and as Representative
of the Underwriters)
7501 Wisconsin Avenue, Suite 900
Bethesda, Maryland 20814-6528

Ladies and Gentlemen:

Residential Asset Securities Corporation, a Delaware corporation (the "Company"), proposes to sell to the underwriters named in Schedule I attached hereto (the "Underwriters"), for whom you are acting as a representative (in such capacity, the "Representative"), the respective amounts set forth opposite their names in Schedule I attached hereto of Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-EMX1, Class A-I-1, Class A-I-2, Class A-I-3, Class A-I-4 and Class A-II Certificates (collectively, the "Certificates"). The Certificates, together with the Class SB and Class R Certificates of the same series, will evidence the entire beneficial interest in the Trust Fund (as defined in the Pooling and Servicing Agreement referred to below), consisting primarily of a pool (the "Pool") of adjustable-rate and fixed-rate one- to four-family residential first and junior lien mortgage loans (the "Mortgage Loans") as described in the Prospectus Supplement (as hereinafter defined) to be sold by the Company.

The Certificates will be issued pursuant to a pooling and servicing agreement (the "Pooling and Servicing Agreement") to be dated as of February 1, 2007 (the "Cut-off Date") among the Company, as seller, Residential Funding Company, LLC ("Residential Funding"), as master servicer, and U.S. Bank National Association, as trustee (the "Trustee"). The Certificates are described more fully in the Base Prospectus and the Prospectus Supplement (each as hereinafter defined), which the Company has furnished to the Underwriters.

6.10    You shall have received from Julianne M. Linder, associate counsel to the Company, a reliance letter with respect to any opinions delivered to the rating agencies, or you shall have been listed as an addressee on any such opinions.

The Company will furnish you with conformed copies of the above opinions, certificates, letters and documents as you reasonably request.

7.    <u>Indemnification and Contribution.</u>

7.1    The Company and Residential Funding, jointly and severally, agree to indemnify and hold harmless each Underwriter and each person, if any, who controls any Underwriter within the meaning of either Section 15 of the Act or Section 20 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), from and against any and all losses, claims, damages and liabilities (i) caused by any untrue statement or alleged untrue statement of a material fact contained in the Registration Statement for the registration of the Certificates as originally filed or in any amendment thereof or other filing incorporated by reference therein, or in the Approved Offering Materials or in the Prospectus and the Designated Static Pool Information taken together or incorporated by reference therein (if used within the period set forth in Section 5.3 hereof and as amended or supplemented if the Company shall have furnished any amendments or supplements thereto), or caused by any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, or (ii) caused by any untrue statement or alleged untrue statement of a material fact contained in any Issuer Free Writing Prospectus, or any omission or alleged omission to state therein a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, or (iii) caused by any untrue statement of a material fact or alleged untrue statement of a material fact contained in (x) any Underwriter Prepared Issuer FWP or any Underwriter Free Writing Prospectus or any omission or alleged omission to state therein a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, that in either case was caused by any error or omission in any Pool Information or (y) any information accurately extracted from the Preliminary Prospectus Supplement or any Issuer Free Writing Prospectus and included in any Underwriter Prepared Issuer FWP or Underwriter Free Writing Prospectus; except insofar as such losses, claims, damages, or liabilities are caused by any such untrue statement or omission or alleged untrue statement or omission based upon any information with respect to which the Underwriters have agreed to indemnify the Company pursuant to clause (i) of Section 7.2; <u>provided</u>, <u>however,</u> that none of the Company, Residential Funding or any Underwriter will be liable in any case to the extent that any such loss, claim, damage or liability arises out of or is based upon any such untrue statement or alleged untrue statement or omission or alleged omission made therein relating to the Excluded Information.

7.2    Each Underwriter agrees, severally and not jointly, to indemnify and hold harmless the Company, Residential Funding, their respective directors or officers and any person controlling the Company or Residential Funding within the meaning of either Section 15 of the Act or Section 20 of the Exchange Act from and against any and all losses, claims, damages and liabilities (i) caused by any untrue statement or alleged untrue statement of material fact contained in the Underwriter Information, or any omission or alleged omission to state therein any material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, (ii) caused by any untrue statement or alleged untrue statement of material fact contained in any Underwriter Free Writing

16

Prospectus, or any omission or alleged omission to state therein a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, (iii) caused by any untrue statement or alleged untrue statement of material fact contained in any Underwriter Prepared Issuer FWP (except for any information accurately extracted from the Preliminary Prospectus Supplement or any Issuer Free Writing Prospectus and included in such Underwriter Prepared Issuer FWP), or any omission or alleged omission to state therein a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, (iv) caused by any Underwriter Prepared Issuer FWP for which the conditions set forth in Section 4.4(e) above are not satisfied with respect to the prior consent by the Company, and (v) resulting from such Underwriter's failure to comply with Section 4.3 or failure to file any Underwriter Free Writing Prospectus required to be filed in accordance with Section 5.11; provided, however, that the indemnification set forth in clauses (ii) and (iii) of this Section 7.2 shall not apply to the extent of any error or omission in any Underwriter Prepared Issuer FWP or any Underwriter Free Writing Prospectus that was caused by any error or omission in any Pool Information unless such Underwriter has failed to comply with Section 4.3 and such error was corrected in the Approved Offering Materials; provided, further, that none of the Company, Residential Funding or any Underwriter will be liable in any case to the extent that any such loss, claim, damage or liability arises out of or is based upon any such untrue statement or alleged untrue statement or omission or alleged omission made therein relating to the Excluded Information. In addition, each Underwriter agrees, severally and not jointly, to indemnify and hold harmless the Company, Residential Funding, their respective directors or officers and any person controlling the Company or Residential Funding against any and all losses, claims, damages, liabilities and expenses (including, without limitation, reasonable attorneys' fees) caused by, resulting from, relating to, or based upon original issue discount reported by Residential Funding or the REMIC Administrator or the determination that a Certificate is or will or will not be issued with original issue discount, which determination resulted from incorrect information provided by such Underwriter in the certificates described in Section 4.5 hereof.

7.3    In case any proceeding (including any governmental investigation) shall be instituted involving any person in respect of which indemnity may be sought pursuant to either Section 7.1 or Section 7.2, such person (the "indemnified party") shall promptly notify the person against whom such indemnity may be sought (the "indemnifying party") in writing and the indemnifying party, upon request of the indemnified party, shall retain counsel reasonably satisfactory to the indemnified party to represent the indemnified party and any others the indemnifying party may designate in such proceeding and shall pay the reasonable fees and disbursements of such counsel related to such proceeding. In any such proceeding, any indemnified party shall have the right to retain its own counsel, but the reasonable fees and expenses of such counsel shall be at the expense of such indemnified party unless (i) the indemnifying party and the indemnified party shall have mutually agreed to the retention of such counsel or (ii) the named parties to any such proceeding (including any impleaded parties) include both the indemnifying party and the indemnified party and representation of both parties by the same counsel would be inappropriate due to actual or potential differing interests between them. It is understood that the indemnifying party shall not, in connection with any proceeding or related proceedings in the same jurisdiction, be liable for the reasonable fees and expenses of more than one separate firm for all such indemnified parties. Such firm shall be designated in writing by such Underwriter, in the case of parties indemnified pursuant to Section 7.1 and by the Company or Residential Funding, in the case of parties indemnified pursuant to Section 7.2. The indemnifying party may, at its option, at any time upon written notice to the indemnified party, assume the defense of any proceeding and may designate counsel reasonably satisfactory

to the indemnified party in connection therewith provided that the counsel so designated would have no actual or potential conflict of interest in connection with such representation. Unless it shall assume the defense of any proceeding the indemnifying party shall not be liable for any settlement of any proceeding, effected without its written consent, but if settled with such consent or if there be a final judgment for the plaintiff, the indemnifying party agrees to indemnify the indemnified party from and against any loss or liability by reason of such settlement or judgment. If the indemnifying party assumes the defense of any proceeding, it shall be entitled to settle such proceeding with the consent of the indemnified party or, if such settlement provides for release of the indemnified party in connection with all matters relating to the proceeding which have been asserted against the indemnified party in such proceeding by the other parties to such settlement, without the consent of the indemnified party.

      7.4    If the indemnification provided for in this Section 7 is unavailable to an indemnified party under Section 7.1 or Section 7.2 hereof or insufficient in respect of any losses, claims, damages or liabilities referred to therein, then the indemnifying party, in lieu of indemnifying such indemnified party, shall contribute to the amount paid or payable by such indemnified party as a result of such losses, claims, damages or liabilities, in such proportion as is appropriate to reflect not only the relative benefits received by the Company and Residential Funding on the one hand and the related Underwriter on the other from the offering of the Certificates but also the relative fault of the Company or Residential Funding on the one hand and of the related Underwriter on the other in connection with the statements or omissions which resulted in such losses, claims, damages or liabilities, as well as any other relevant equitable considerations. The relative fault of the Company and Residential Funding on the one hand and of any Underwriter on the other shall be determined by reference to, among other things, whether the untrue or alleged untrue statement of a material fact or the omission or alleged omission to state a material fact relates to information supplied by the Company or by such Underwriter, and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such statement or omission.

      7.5    The Company, Residential Funding and the Underwriters agree that it would not be just and equitable if contribution pursuant to this Section 7 were determined by pro rata allocation or by any other method of allocation which does not take account of the considerations referred to in Section 7.4 above. The amount paid or payable by an indemnified party as a result of the losses, claims, damages and liabilities referred to in this Section 7 shall be deemed to include, subject to the limitations set forth above, any legal or other expenses reasonably incurred by such indemnified party in connection with investigating or defending any such action or claim except where the indemnified party is required to bear such expenses pursuant to Section 7.4; which expenses the indemnifying party shall pay as and when incurred, at the request of the indemnified party, to the extent that the indemnifying party believes that it will be ultimately obligated to pay such expenses. In the event that any expenses so paid by the indemnifying party are subsequently determined to not be required to be borne by the indemnifying party hereunder, the party which received such payment shall promptly refund the amount so paid to the party which made such payment. No person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Act) shall be entitled to contribution from any person who was not guilty of such fraudulent misrepresentation.

      7.6    The indemnity and contribution agreements contained in this Section 7 and the representations and warranties of the Company and Residential Funding in this Agreement shall remain operative and in full force and effect regardless of (i) any termination of this Agreement, (ii) any investigation made by the Underwriters or on behalf of the Underwriters

or any person controlling any Underwriter or by or on behalf of the Company or Residential Funding and their respective directors or officers or any person controlling the Company or Residential Funding and (iii) acceptance of and payment for any of the Certificates.

8.    <u>Termination</u>.  This Agreement shall be subject to termination by notice given to the Company and Residential Funding, if the sale of the Certificates provided for herein is not consummated because of any failure or refusal on the part of the Company or Residential Funding to comply with the terms or to fulfill any of the conditions of this Agreement, or if for any reason the Company or Residential Funding shall be unable to perform their respective obligations under this Agreement.  If you terminate this Agreement in accordance with this Section 8, the Company or Residential Funding will reimburse you for all reasonable out-of-pocket expenses (including reasonable fees and disbursements of counsel) that shall have been reasonably incurred by the Underwriters in connection with the proposed purchase and sale of the Certificates.

9.    <u>Certain Representations and Indemnities to Survive</u>.  The respective agreements, representations, warranties, indemnities and other statements of the Company, Residential Funding or the officers of any of the Company, Residential Funding, and each Underwriter set forth in or made pursuant to this Agreement will remain in full force and effect, regardless of any investigation, or statement as to the results thereof, made by any Underwriter or on its behalf or made by or on behalf of the Company or Residential Funding or any of their respective officers, directors or controlling persons, and will survive delivery of and payment for the Certificates.

10.    <u>Notices</u>.  All communications hereunder will be in writing and effective only on receipt, and, if sent to an Underwriter will be mailed, delivered or telegraphed and confirmed to such Underwriter c/o Residential Funding Securities, LLC, 7501 Wisconsin Avenue, Suite 900, Bethesda, Maryland 20814, or if sent to the Company, will be mailed, delivered or telegraphed and confirmed to it at Residential Asset Securities Corporation, 8400 Normandale Lake Boulevard, Suite 250, Minneapolis, Minnesota 55437, Attention: President; or, if sent to Residential Funding will be mailed, delivered or telegraphed and confirmed to it at Residential Funding Company, LLC, 8400 Normandale Lake Boulevard, Suite 250, Minneapolis, Minnesota 55437, Attention: President.

11.    <u>Successors</u>.  This Agreement will inure to the benefit of and be binding upon the parties hereto and their respective successors and the officers and directors and controlling persons referred to in Section 7 hereof, and their successors and assigns, and no other person will have any right or obligation hereunder.

12.    <u>Applicable Law</u>.  This Agreement will be governed by and construed in accordance with the laws of the State of New York, without regard to the conflict of law principles thereof, other than Sections 5-1401 and 5-1402 of the New York General Obligations Law.

13.    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, which taken together shall constitute one and the same instrument.

14.    <u>Representation</u>.  The Representative will act for the several Underwriters in connection with the transactions contemplated by this Agreement, and any action under this Agreement taken by the Representative will be binding upon all of the Underwriters.

If the foregoing is in accordance with your understanding of our agreement, please sign and return to us a counterpart hereof, whereupon this letter and your acceptance shall represent a binding agreement among the Company, Residential Funding and the Underwriters.

Very truly yours,

RESIDENTIAL ASSET SECURITIES CORPORATION

By:_____
Name: Tim Jacobson
Title:  Vice President

RESIDENTIAL FUNDING COMPANY, LLC

By:_____
Name: Joseph Orning
Title:  Associate

The foregoing Underwriting Agreement is hereby confirmed and accepted as of the date first above written.

RESIDENTIAL FUNDING SECURITIES, LLC,
(on behalf of itself and as Representative of the Underwriters)

By: _____
Name:
Title:

If the foregoing is in accordance with your understanding of our agreement, please sign and return to us a counterpart hereof, whereupon this letter and your acceptance shall represent a binding agreement among the Company, Residential Funding and the Underwriters.

Very truly yours,

RESIDENTIAL ASSET SECURITIES
CORPORATION

By:_____
Name: Tim Jacobson
Title:   Vice President

RESIDENTIAL FUNDING COMPANY, LLC

By:_____
Name: Joseph Orning
Title:   Associate

The foregoing Underwriting Agreement
is hereby confirmed and accepted as of
the date first above written.

RESIDENTIAL FUNDING SECURITIES,
LLC,
(on behalf of itself and as Representative
of the Underwriters)

By: _____
Name: John F. Getchis
Title: Director

**CREDIT SUISSE SECURITIES (USA) LLC**
(on behalf of itself and expressly
acknowledges Residential Funding
Securities, LLC as representative
for the Underwriters)


By: _____
Name:      **John J. Herbert**
Title:           **Director**

**SCHEDULE I**

| Underwriter | Principal Amount of Class A-I-1 Certificates |
| --- | --- |
| Residential Funding Securities, LLC | $92,938,000 |
| Credit Suisse Securities (USA) LLC | $92,938,000 |

| Underwriter | Principal Amount of Class A-I-2 Certificates |
| --- | --- |
| Residential Funding Securities, LLC | $13,832,500 |
| Credit Suisse Securities (USA) LLC | $13,832,500 |

| Underwriter | Principal Amount of Class A-I-3 Certificates |
| --- | --- |
| Residential Funding Securities, LLC | $52,997,000 |
| Credit Suisse Securities (USA) LLC | $52,997,000 |

| Underwriter | Principal Amount of Class A-I-4 Certificates |
| --- | --- |
| Residential Funding Securities, LLC | $23,252,500 |
| Credit Suisse Securities (USA) LLC | $23,252,500 |

| Underwriter | Principal Amount of Class A-II Certificates |
| --- | --- |
| Residential Funding Securities, LLC | $163,406,000 |
| Credit Suisse Securities (USA) LLC | $163,406,000 |

# **EXHIBIT C**

## Written Notification to the Debtor

[[3350463]]

# CRAVATH, SWAINE & MOORE LLP

ALLEN FINKELSON
STUART W. GOLD
JOHN W. WHITE
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG

SUSAN WEBSTER
DAVID MERCADO
ROWAN D. WILSON
CHRISTINE A. VARNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK

THOMAS E. DUNN
MARK I. GREENE
SARKIS JEBEJIAN
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL

CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK
LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ERIC L. SCHIELE
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO
KEVIN J. ORSINI
MATTHEW MORREALE

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

OF COUNSEL
PAUL C. SAUNDERS

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1552

November 16, 2011

## Indemnification for Alleged Liabilities and Legal Costs Arising From Mortgage-Backed Securities Offerings

Dear Mr. Ware:

As you are aware, Credit Suisse Securities (USA) LLC (formerly Credit Suisse First Boston LLC) and affiliates thereof, including without limitation Credit Suisse (USA), Inc., Credit Suisse Holdings (USA), Inc., Credit Suisse (International) Holding AG, Credit Suisse Group AP, and Credit Suisse Management LLC (collectively "Credit Suisse") has retained Cravath, Swaine & Moore LLP to represent it in connection with litigation (the "Litigation") arising out of mortgage-backed securities offerings (the "Offerings") for which Residential Asset Mortgage Products, Inc., Residential Accredit Loans, Inc. and Residential Asset Securities Corporation (the "Residential Entities") served as the depositors. Such Litigation, in some of which cases the Residential Entities are named defendants, and such Offerings are identified in Schedule 1.

In accordance with the underwriting agreements and/or indemnification and contribution agreements (collectively, the "Agreements") that relate to the Offerings, Credit Suisse has asked me to notify you of its intention to seek indemnification to the maximum extent permitted in connection with such Litigation and such Offerings pursuant to the Agreements.

2

We look forward to continuing to coordinate closely with you and/or other outside counsel for Ally Financial in the defense of the litigation.  Please feel free to contact me if there is anything you would like to discuss in regard to the foregoing.

Sincerely,

Michael T. Reynolds

Michael O. Ware
Mayer Brown LLP
1675 Broadway
New York, NY  10019

U.S. MAIL

Copies to:

Residential Asset Mortgage Products, Inc.
Attention:  President
8400 Normandale Lake Boulevard, Suite 250
Minneapolis, MN 55437

Residential Asset Securities Corporation, Inc.
Attention:  President
8400 Normandale Lake Boulevard, Suite 250
Minneapolis, Minnesota 55437

Residential Accredit Loans, Inc.
Attention:  President
8400 Normandale Lake Boulevard, Suite 250
Minneapolis, MN 55437

GMAC Mortgage Corporation
Attention:  President
100 Witmer
Horsham, PA 19044

Residential Funding Company, LLC
Attention:  President
8400 Normandale Lake Boulevard, Suite 250
Minneapolis, MN 55437

U.S. MAIL

3

## Schedule 1

**Case:**  The Charles Schwab Corporation v. BNP Paribas Securities Corp.,
No. CGC-10-501610 (Superior Court of California, County of San Francisco)

**Transaction:**  GMACM 2005-AR5

**Depositor:**  Residential Asset Mortgage Products, Inc.

*    *    *

**Case:**  Federal Home Loan Bank of San Francisco v. Credit Suisse Securities (USA) LLC,
et al., No. CGC-10-497840 (Superior Court of California, County of San Francisco)

**Transaction:**  RALI 2007-Q01

**Depositor:**  Residential Accredit Loans, Inc.

*    *    *

**Case:**  Federal Housing Finance Agency v. Ally Financial Inc. f/k/a GMAC, LLC, No.
11 Civ. 7010 (Southern District of New York)

**Transaction:**  RAMP 2005-NC1

**Depositor:**  Residential Asset Mortgage Products, Inc.

*    *    *

**Case:**  Federal Housing Finance Agency v. Ally Financial Inc. f/k/a GMAC, LLC, No.
11 Civ. 7010 (Southern District of New York)

**Transaction:**  RAMP 2005-KS9

**Depositor:**  Residential Asset Mortgage Products, Inc.

*    *    *

**Case:**  Federal Housing Finance Agency v. Ally Financial Inc. f/k/a GMAC, LLC, No.
11 Civ. 7010 (Southern District of New York)

**Transaction:**  RAMP 2006-RS1

**Depositor:**  Residential Asset Mortgage Products, Inc.

4

\*   \*   \*

Case:  Federal Housing Finance Agency v. Ally Financial Inc. f/k/a GMAC, LLC, No. 11 Civ. 7010 (Southern District of New York)

Transaction:  RASC 2005-EMX3

Depositor:  Residential Asset Securities Corp.

\*   \*   \*

Case:  IKB Deutsche Industriebank AG, et al. v. Credit Suisse Securities (USA) LLC, No. 652500/2011 (New York Supreme Court, New York County)

Transaction:  RASC 2005-EMX3

Depositor:  Residential Asset Securities Corp.

\*   \*   \*

Case:  Federal Housing Finance Agency v. Ally Financial Inc. f/k/a GMAC, LLC, No. 11 Civ. 7010 (Southern District of New York)

Transaction:  RASC 2005-KS11

Depositor:  Residential Asset Securities Corp.

\*   \*   \*

Case:  Federal Housing Finance Agency v. Ally Financial Inc. f/k/a GMAC, LLC, No. 11 Civ. 7010 (Southern District of New York)

Transaction:  RASC 2007-EMX1

Depositor:  Residential Asset Securities Corp.

\*   \*   \*

Case:  IKB Deutsche Industriebank AG, et al. v. Credit Suisse Securities (USA) LLC, No. 652889/2011 (New York Supreme Court, New York County)

Transaction:  RAMP 2005-EFC2

Depositor:  Residential Asset Mortgage Products, Inc.

5

\*     \*     \*

<u>Case</u>:  IKB Deutsche Industriebank AG, et al. v. Credit Suisse Securities (USA) LLC,
No. 653122/2011 (New York Supreme Court, New York County)

<u>Transaction</u>:  RASC 2005-KS11

<u>Depositor</u>:  Residential Asset Securities Corp.