**Hearing Date: May 29th, 2014 at 10:00 A.M. (ET)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------
)
In re:                                      )    Case No. 12-12020 (MG)
)
RESIDENTIAL CAPITAL, LLC, <u>et al</u>.,    )    Chapter 11
)
Debtors.            )    Jointly Administered
---------------------------------------------------------------------- )

**RESCAP BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF ITS**
**SIXTY-FIRST OMNIBUS OBJECTION TO CLAIMS**
**(NO-LIABILITY BORROWER CLAIMS)**
<u>**AS TO CLAIM NOS. 1467 AND 6423**</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ **1**

BACKGROUND .................................................................................................................... **2**

     A.  Larkins Claim ................................................................................................ 3

     B  Tobias Claim ................................................................................................. 5

REPLY .................................................................................................................................. **6**

     A.  Larkins Claim ................................................................................................ 7

     B  Tobias Claim ................................................................................................. 11

CONCLUSION .................................................................................................................... **14**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*48th St. Steakhouse, Inc. v. Rockefeller Group, Inc.*
485 U.S. 1035 (1988)........................................................................................................12

*Aniel v. GMAC Mortg., LLC,*
2012 WL 5389706 (N.D. Cal. 2012) ...............................................................................10

*Brandrup v. ReconTrust Co., N.A.,*
353 Or 668 (Ore. 2013)......................................................................................................9

*Feinberg v. Bank of N.Y. (In re Feinberg),*
442 B.R. 213 (Bankr. S.D.N.Y. 2010)...............................................................................7

*Glaski v. Bank of America, N.A.,*
218 Cal. App. 4th 1079 (Cal. App. 5d 2013)...................................................................10

*In re Adelphia Commc'ns Corp.,*
2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. 2007) .............................................................7

*In re Allegheny Int'l, Inc.,*
954 F.2d 167 (3d Cir. 1992)................................................................................................7

*In re Best Payphones, Inc.*
279 B.R. 92 (S.D.N.Y. 2002).............................................................................................12

*In re Minbatiwalla,*
424 B.R. 104 (Bankr. S.D.N.Y. 2010) .............................................................................13

*In re Oneida Ltd.,*
400 B.R. 384 (Bankr. S.D.N.Y. 2009) ...............................................................................7

*In re Residential Capital, LLC,*
507 B.R 477 (Bankr. S.D.N.Y. 2014)...........................................................................6, 7

*In re Rockefeller Center Props.,*
272 B.R. 524 (Bankr. S.D.N.Y. 2000)...............................................................................7

*In re Sandri,*
501 B.R. 369 (Bankr. N.D. Cal. 2013) ............................................................................10

*In re WorldCom, Inc..*
325 B.R. 511 (S.D.N.Y. 2005)..........................................................................................11

*Niday v. GMAC Mortg. LLC,*
353 Or 648 (Ore. 2013)......................................................................................................9

*Patel v. Mortgage Electronic Registration System, Inc.*
2013 WL 4029277 (N.D. Cal. 2013) ..................................................................................10

*Rexnord Holdings, Inc. v. Biderman,*
21 F.3d 522 (2d Cir. 1994)...............................................................................................11

**STATUTES**

11 U.S.C. § 502(a) ............................................................................................................6

11 U.S.C. § 502(b)(1) .......................................................................................................6

15 U.S.C. §1635(f) .........................................................................................................11

**OTHER STATUTES**

American Securitization Forum White Paper, *"Transfer and Assignment of Residential
Mortgage Loans in the Secondary Mortgage Market,"* Nov. 16, 2010, p. 2.
http://www.americansecuritization.com/uploadedfiles/asf_white_paper_11_16_10.pdf................4

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Plan[1] in the above-captioned Chapter 11 Cases, as successor in interest to the above-captioned Debtors with respect to Borrower Claims, by and through its undersigned counsel, hereby submits this reply (the "Reply") and the Supplemental Declaration of Deanna Horst, Chief Claims Officer of the ResCap Liquidating Trust (the "Supplemental Declaration"), annexed hereto as Exhibit 1, to the Response filed by Neil Larkins ("Mr. Larkins") [Docket No. 6883] (the "Larkins Response") and the Response Filed by Edward Tobias ("Mr. Tobias" and with Mr. Larkins, the "Respondents") [Docket No. 6881] (the "Tobias Response" and collectively with the Larkins Response, the "Responses")[2] to the *ResCap Borrower Claims Trust's Sixty-First Omnibus Objection to Claims (No Liability Borrower Claims)* [Docket No. 6777] (the "Objection") and in further support of the Objection. The Borrower Trust respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Borrower Trust examined the Responses and the statements submitted in support thereof. For purposes of this Reply and the Objection, the Borrower Trust takes these statements at face value. If the Court is not prepared to rule on the Objection with respect to Respondents, the Borrower Trust reserves the right to take discovery from the Respondents.

2.      As described herein and in the Supplemental Declaration, the Borrower Trust thoroughly examined the Debtors' books and records in an effort to validate the accuracy

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

[2] The Responses are the only responses that the Borrower Trust received with regards to the Objection. The Borrower Trust also received the *Notice of Response to the ResCap Borrower Claims Trust's Sixty-First Omnibus Objection to Claims (No Liability Borrower Claims) and: Notice of Filing Documents and Claims in Related Federal Case* from Patrick Lorne Farrell on May 14, 2014, which was after the deadline for filing responses to the Objection. Since the claims filed by Mr. Farrell were not included in the Objection, his response is not addressed herein. The Borrower Trust will address the allowance of Mr. Farrell's claims in due course and will serve him with notice of such objection at the appropriate time.

of the allegations made in the Responses and the claims at issue, and the Debtors' books and records do not show any liability due and owing to either of the Respondents. As the Objection shifted the burden of persuasion back to the Respondents, the Respondents must demonstrate a valid claim against the Debtors' estates by a preponderance of the evidence. Mr. Larkins has not met this burden because he has failed to allege how he was damaged by any action of any of the Debtors. Similarly, Mr. Tobias has not met his burden because he does not state any specific actions or inactions of any Debtor that would give rise to a claim against the Debtors' estates.

3.       Therefore, for the reasons set forth in the Objection, this Reply, and the Supplemental Declaration, the Respondents have failed to provide any explanation as to why their claims are valid and should be allowed against the Debtors' estates. As a result, the Respondents have failed to meet their burden of proof, and the relief sought in the Objection should be granted with respect to the Respondents.

### BACKGROUND

4.       In connection with the claims reconciliation process, the Borrower Trust identified certain claims filed by Borrowers that are not liabilities of the Debtors (together, the "No Liability Borrower Clams"). See Supplemental Declaration ¶ 4.

5.       The Debtors sent Request Letters to certain Borrowers, including the Respondents, requesting additional documentation in support of the No Liability Borrower Claims.[3]   See Supplemental Declaration ¶ 5; see also Exhibit A-1 and Exhibit A-2 to the Supplemental Declaration. The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies

---

[3]A Request Letter was sent to Mr. Larkins on November 13, 2013 by email and to Mr. Tobias on May 24, 2013 by mail.

ny-1142689

of any and all documentation that the claimant believes supports the basis for his claim.  The

Request Letters further state that if the claimant does not provide the requested explanation and

supporting documentation within 30 days, the Debtors or the Borrower Trust, as applicable, may

file a formal objection to the claimant's claim, seeking to have the claim disallowed and

permanently expunged.  See Supplemental Declaration ¶ 5.

6.      The Debtors received responses to the Request Letters from both of the

Respondents (the "Diligence Responses"), copies of which are attached to the Supplemental

Declaration as Exhibit B-1 and Exhibit B-2.[4]  However, the Diligence Responses failed to allege

bases for claims against the Debtors' estates.  Further, for the reasons stated in the Objection, the

Debtors' books and records do not show any liability due and owing to the Respondents.  See id.

**A.      Larkins Claim**

7.      On or about January 11, 2013, Mr. Larkins filed a proof of claim against

Residential Capital, LLC ("ResCap"), Claim No. 6423 (the "Larkins Claim"), asserting an

administrative priority claim against ResCap in the amount of $150,000.  See Exhibit C to the

Supplemental Declaration.  In Box 2 of the proof of claim form (Basis for Claim), the Larkins

Claim provides that the basis for the claim is "Mortgage Note not put into Trust RALI -2006-

QS14 by closing date.  Basis is fraud, severe tax penalties not notified that GMAC-ResCap."

Appended to the proof of claim is a letter stating that Mr. Larkins is asserting his right to

"rescind the loan transaction in its entirety," as well as other documents related to the

origination, assignment, and servicing of his loan.  See Supplemental Declaration ¶ 7.

8.      According to the Debtors' books and records, National City Bank of

Indiana originated Mr. Larkins Loan (the "Larkins Loan") on May 4, 2006.  See Supplemental

---

[4]A Diligence Response was received from Mr. Larkins on November 18, 2013 and from Mr. Tobias on June 20,
 2013.

Declaration ¶ 9.    National City Bank of Indiana endorsed the Larkins Loan to National City

Mortgage Co.[5], who then endorsed the Larkins Loan to RFC.    See id.  RFC then transferred its

interest in the Larkins Loan to Residential Accredit Loans, Inc. ("RALI") on October 30, 2006.

See Assumption and Assignment Agreement dated October 30, 2006, which is attached to the

Supplemental Declaration as Exhibit F.[6]   That same day, RALI transferred the Larkins Loan to

the RALI 2006-QS14 Trust (the "RALI Trust"), where Deutsche Bank Company Americas

("Deutsche") was appointed as Trustee. See Series Supplement, which is attached to the

Supplemental Declaration as Exhibit G.  Accordingly, assignments of the Deed of Trust were

recorded transferring the Deed of Trust from National City Bank of Indiana to National City

Mortgage Co, from National City Mortgage Co. to MERS and its successors and assigns; and

finally from MERS to Deutsche.  See Supplemental Declaration ¶ 9.

> 9.    Intermediate transfers of the Deed of Trust, including the transfer to RFC,

were made within the MERS system[7] and are not recorded in the land records.    See

---

[5]To the best of the Debtors' knowledge National City Mortgage Co. is a subsidiary of National City Bank of
 Indiana.

[6]In the Larkins Response, Mr. Larkins references October 1, 2006 as the "closing date" for the RALI Trust.  As
 evidenced by the Assumption and Assignment Agreement, this is incorrect.

[7]See American Securitization Forum White Paper, *"Transfer and Assignment of Residential Mortgage Loans in the
 Secondary Mortgage Market,"* Nov. 16, 2010, p. 2.
 http://www.americansecuritization.com/uploadedfiles/asf_white_paper_11_16_10.pdf.  "The residential mortgage
 notes in common usage typically are negotiable instruments. As a general matter, under the UCC, a negotiable
 mortgage note can be transferred from the transferor to the transferee through the indorsement of the mortgage note
 and the transfer of possession of the note to the transferee or a custodian on behalf of the transferee. An assignment
 of the related mortgage is also typically delivered to the transferee or its custodian, except in cases where the
 related mortgage identifies the Mortgage Electronic Registration System ("MERS") as the mortgagee. Such
 assignments generally are in recordable form, but unrecorded, and are executed by the transferor without
 identifying a specific transferee – a so-called assignment "in blank." Intervening assignments, in some cases, may
 be recorded in the local real estate records. In some mortgage loan transactions, MERS becomes the mortgagee of
 record as the nominee of the loan originator and its assignees in the local land records where the mortgage is
 recorded, either when the mortgage is first recorded or as a result of the recording of an assignment of mortgage to
 MERS. This means that MERS is listed as the record title holder of the mortgage. MERS' name does not appear on
 the mortgage note, and the beneficial interest in the mortgage remains with the loan originator or its assignee. The
 documents pursuant to which MERS acts as nominee make clear that MERS is acting in such capacity for the
 benefit of the loan originator or its assignee. When a mortgage loan is originated with MERS as the nominal

4

ny-1142689

Supplemental Declaration ¶ 10. The final assignment out of MERS was completed by MERS to

Deutsche Bank National Trust Company Americas, as Trustee. See id.

       10. No Debtor ever serviced the Larkins Loan; the Larkins Loan was and

continues to be serviced by PNC Mortgage. See Supplemental Declaration ¶ 8. In addition, no

Debtor ever possessed the Larkins Loan other than the brief period from July 24 to October 30,

2006. See id.

### B. Tobias Claim

       11. On or about October 22, 2012, Mr. Tobias filed a proof of claim against

ResCap, Claim No. 1467 (the "Tobias Claim"), asserting a general unsecured claim against

ResCap in the amount of $1,000,000. See Exhibit I to the Supplemental Declaration. In Box 2

of the proof of claim form (Basis for Claim), the Tobias Claim provides that the basis for the

claim is "Damages based on Consumer Fraud or other claim/affirmative defense to foreclosure

requesting monetary relief." See id. In Box 8 of the proof of claim form (Documents), Mr.

Tobias wrote "Complaint has not yet been filed." See id. Nothing was attached to the proof of

claim. See id.

       12. On or around May 9, 2003, Debtor GMAC Mortgage Corporation

("GMACM") originated a loan to Mr. Tobias in the amount of $320,000.00 (the "Tobias Loan").

See Supplemental Declaration ¶ 12. GMACM transferred its interest in the Tobias Loan to

Fannie Mae in or around June 2003. See id.[8] GMACM serviced the Tobias Loan from May 9,

---

mortgagee (or is assigned to MERS post-origination), MERS tracks all future mortgage loan and mortgage loan
servicing transfers and other assignments of the mortgage loan unless and until ownership or servicing is
transferred (or the mortgage loan is otherwise assigned) to an entity that is not a MERS member. In this way,
MERS serves as a central system to track changes in ownership and servicing of the mortgage loan. Fannie Mae,
Freddie Mac and Ginnie Mae, among other governmental entities, permit mortgage loans that they purchase or
securitize to be registered with MERS."

[8]Pursuant to the Fannie Mae servicing guide, the Debtors, as servicer, only maintained temporary possession of the
note for the Tobias Loan and did not maintain actual ownership of the Tobias Loan after it was transferred to
Fannie Mae.

ny-1142689

2003 until servicing was transferred to Green Tree Servicing ("Green Tree") on February 1, 2013. See id.

13.    Prior to filing the Tobias Claim, Mr. Tobias never disputed the terms of the Tobias Loan with GMACM. See Supplemental Declaration ¶ 13. According to the Debtors' servicing notes for the Tobias Loan, the Tobias Loan was never referred to foreclosure and the only delinquency ever reported on the account was a 30-day late payment in 2004. See id.

14.    Attached to the Tobias Response is a complaint that Mr. Tobias filed on October 25, 2013 in the United States District Court for the District of New Jersey (the "Complaint"). Mr. Tobias did not seek relief from the automatic stay.[9] See Supplemental Declaration ¶ 14. He also never amended the Tobias Claim to incorporate the Complaint. The summons was issued to GMACM c/o Morrison & Foerster, LLP ("MoFo"), but the attached proof of service is blank, and Mr. Tobias provides no other support that either GMACM or MoFo were actually served. See Tobias Response at 24, 25.

## REPLY

15.    A filed proof of claim is "deemed allowed, unless a party in interest … objects." 11 U.S.C. §502(a). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. 502(b)(1). As this Court noted in a recent order, In re Residential Capital, LLC, 507 B.R. 477,

---

[9] As previously noted, the lawsuit that Claimant attaches to the response was not served on GMAC Mortgage. However, Ocwen Loan Servicing ("Ocwen"), which is also a defendant in the litigation, mistakenly entered an appearance for GMAC Mortgage in late 2013 in the litigation and included GMAC Mortgage in its Motion to Dismiss. Ocwen is currently servicing another loan involved in this litigation that was previously serviced by GMAC Mortgage and relates to Claim 1466 (Claim No. 1466 but is not subject to the 61st Omnibus Objection). Upon discovering that Ocwen entered an appearance for GMAC Mortgage, the ResCap Liquidating Trust retained separate counsel and a Notice of Bankruptcy was filed in the underlying litigation.

ny-1142689

490 (Bankr. S.D.N.Y. 2014), claims objections have a shifting burden of proof. Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a claimant establishes a prima facie case against a debtor upon filing a proof of claim alleging facts sufficient to support the claim. The objecting party is thereafter required to produce evidence equal in force to that provided by the claimant to rebut the presumption of the claimant's prima facie case. In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992). The burden of persuasion once an objection refutes an essential allegation of the claim is on the holder of a proof of claim to establish a valid claim against a debtor by a preponderance of the evidence. Residential Capital, 507 B.R at 490, Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010); In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); In re Adelphia Commc'ns Corp., Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

### A.    The Larkins Claim

16.    As the Objection refuted Mr. Larkins' allegations of wrongdoing, the burden to demonstrate the validity of the Larkins Claim shifted back to Mr. Larkins. The Borrower Trust asserts that the Larkins Response fails to state a coherent basis for liability for the Debtors' estates. While Mr. Larkins alleges that RFC should be held liable for "severely clouding his title" and "other ultra vires acts," he fails to provide the Court with a single piece of evidence to demonstrate (i) how his title has been clouded (i.e. identifying specific issues that previously caused him to be unable to transfer title), (ii) how he was damaged in any way as well as (iii) how a Debtor entity is responsible for such damages.

*Liability Arising from Origination*

17.    As noted above and in the Objection, Mr. Larkins' allegations as to issues relating to the origination of the Larkins Loan have no basis against the Debtors because the

7

Debtors did not originate the Larkins Loan.  Nowhere in the Response does Mr. Larkins refute this fact.  Furthermore, Mr. Larkins has not alleged that he was damaged in any way as a result of the origination of the Larkins Loan.  As a result, Mr. Larkins has not met his burden of persuasion with regard to any liability of the Debtors arising out of the origination of the Larkins Loan.

*Liability Arising from Assignment*

18.    In the Larkins Response, Mr. Larkins alleges that purported inconsistences in the documents evidencing the assignment of the Larkins Loan (the "Assignment Documents") means that RFC has purportedly committed "ultra vires acts" and that Mr. Larkins title has been clouded.  See Larkins Response at 4.  However, Mr. Larkins does not provide a basis for the assertion that the purported inconsistencies in the Assignment Documents are evidence of ultra vires acts by RFC or that they resulted in a clouded title.

19.    In the Larkins Response, Mr. Larkins alleges that the documents evidencing the assignment have inconsistent pool numbers written on them, and that this  fact purportedly demonstrates that the Larkins Loan is not part of the RALI Trust.  See Larkins Response at 3.  But Mr. Larkins fails to explain how the inconsistent pool numbers creates an invalid chain of title. A valid chain of title is dependent on a valid chain of assignment or endorsement from one entity to another, not from one pool number to another.  Nowhere in the Larkins Response does Mr. Larkins allege that the inconsistent pool numbers are evidence that the entities making the assignments are also inconsistent.  As demonstrated in the Objection and in Exhibit G attached to the Supplemental Declaration, there is a complete and valid chain of assignments and endorsements from the originator of the Larkins Loan to Deutsche.    Most importantly, Mr. Larkins does not explain how a debtor entity is responsible for the alleged

8

inconsistencies.    Therefore, Mr. Larkins has not met his burden of demonstrating that the inconsistent pool numbers constitute a valid claim against the Debtors' estates.

20.    Mr. Larkins also states (without any support) that because MERS was listed as beneficiary on one assignment and a nominee on the other that this somehow invalidates the chain of title.  However, he fails to provide any precedent that the different terms have the alleged effect of a defect in the assignment of the Larkins Loan.  Mr. Larkins cites two opinions by the Supreme Court of Oregon which held that a <u>foreclosure</u> under the Oregon Trust Deed Act is not valid when it is done in the name of MERS, i.e. when MERS is listed as either a nominee or a beneficiary of the loan.  See <u>Brandrup v. ReconTrust Co., N.A.</u>, 353 Or. 668 (2013); <u>Niday v. GMAC Mortg., LLC</u>, 353 Or. 648 (2013).  However, these cases have no relevance to Mr. Larkins' situation because he neither alleges that the Debtors had any involvement in a foreclosure proceeding, or any other proceeding under the Oregon Trust Deed Act, nor that such a proceeding has been initiated by the Debtors against him in MERS' name. As a result, Mr. Larkins fails to (i) demonstrate the relevance of these cases to the Larkins Loan and (ii) how the designation of MERS as nominee or beneficiary on some of the Assignment Documents proves to be a defect in his title that somehow gives rise to a claim against the Debtors' estates.

21.    Finally, Mr. Larkins alleges in the Response that the Larkins Loan was transferred to the RALI Trust after its closing date because the assignment was recorded on September 7, 2011 while the trust was closed on October 1, 2006.  As noted in the securitization documents, the RALI Trust closed on October 30, 2006, and the Larkins Loan was transferred to the Deutsche Trust on or that day.  See ¶ 8 *supra* regarding chain of title.   Because assignments of the Larkins Loan were made within the MERS system and were not necessarily recorded in the land records, the assignment from MERS to Deutsche on August 24, 2011 is not indicative or

9

dispositive of an untimely transfer from RFC to Deutsche and therefore is not evidence for a

defect in the assignment of the Larkins Loan into the RALI Trust. <u>See</u> Supplemental Declaration

¶ 10.

   22. Moreover, Mr. Larkins' allegations against the Debtors are equally

improper and invalid because Mr. Larkins, as a borrower under a note and deed of trust with

National City Mortgage, does not have standing to contest an assignment of his loan. <u>See</u> Deed

of Trust at ¶ 20. Mr. Larkins is not a party to the relevant pooling and servicing agreement (the

"<u>PSA</u>"), nor is he a beneficiary.  His contract is with the originator-National Bank City

Mortgage, who is also not a party to the PSA. Mr. Larkins cites to <u>Glaski v. Bank of Am., Nat'l

Assoc.</u>, 218 Cal. App. 4th 1079 (5th Dist. 2013) as the basis for his standing on this matter.

However, within the last year, <u>Glaski</u> has been questioned by numerous courts, all of which

found that a borrower does not have standing to attack a pooling and servicing agreement to

which it is not a party. <u>See</u> <u>In re Sandri</u>, 501 B.R. 369 (Bankr. N.D. Cal. 2013) (citing numerous

cases that have refused to follow <u>Glaski</u>); <u>Patel v. Mortg. Elec. Registration Sys., Inc.</u>, No. 13-

cv-1874, 2013 WL 4029277 (N.D. Cal. 2013) (finding that a borrower does not have standing to

assert a breach of a pooling and servicing agreement); <u>Aniel v. GMAC Mortg., LLC</u>, No. 12-

04201, 2012 WL 5389706 (N.D. Cal. 2012) (plaintiff borrowers lacked standing to challenge

assignment of deed of trust based on noncompliance with pooling and service agreements).

   23. Furthermore, the plaintiff in <u>Glaski</u> was seeking a cause of action for

wrongful foreclosure, which is a cognizable claim for damages.  In this case, Mr. Larkins has not

proffered a single allegation as to how he was damaged before the Petition Date by the Debtors

by the assignment of the Larkins Loan. Without any cognizable legal basis for or evidence of

damages, there can be no valid claim against the Debtors.

24.     Furthermore, Mr. Larkins seeks the remedy of "rescinding the loan" without any support as to why this remedy is justifiable or even legal. The only statute the Borrower Trust is aware of that allows for rescission of a loan is the Truth in Lending Act ("TILA"). However, under TILA, a borrower has up to three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first. See 15 U.S.C. §1635(f). Since the Larkins Loan was originated on May 1, 2006, he is well past the statute of limitations for rescission. He also gives no basis for why the Larkins Claim is an administrative priority claim, as all allegations are based on prepetition events. As a result, Mr. Larkins has failed to meet his burden of demonstrating a basis for claim against any of the Debtors' estates.

25.     Accordingly, for the reasons set forth in the Objection and the Reply, Claim No. 6423 should be disallowed and expunged because Mr. Larkins has failed to not only identify a valid claim against the Debtors but also quantify any liability of the Debtors to him.

**B.      The Tobias Claim**

26.     In the Response, Mr. Tobias alleges that the Trust cannot make a determination that it has no liability for his claim until there is a final disposition of the suit filed in the District Court of New Jersey. See Tobias Response at 3. However, the Complaint filed by Mr. Tobias was filed on October 25, 2013, one year and three days after he filed the Tobias Claim and more than **seventeen months after the Petition Date**. Furthermore, he did not seek leave to amend the Tobias Claim to incorporate the Complaint. As this Court is aware, the automatic stay was in force when Mr. Tobias filed the Complaint. "[A]ny Proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect." Rexnord Holdings, Inc. v. Biderman, 21 F.3d 522, 527 (2d Cir. 1994); 48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.), 835 F.2d 427, 431 (2d

11

Cir.1987), cert. denied, 485 U.S. 1035 (1988); In re Best Payphones, Inc., 279 B.R. 92 (S.D.N.Y. 2002). As noted above, Mr. Tobias did not seek any relief from the stay prior to filing the Complaint. As a result, because the Complaint was filed in violation of the automatic stay, it is void, and has no bearing on the liability of the Debtors' estates for the Tobias Claim.

27.     While the bankruptcy court has the power to validate an action in violation of the stay by annulling the automatic stay *nunc pro tunc* to before the violating action, the Court should not exercise this power here. Best Payphones, 279 B.R. at 98 (stating the rule and finding that a proceeding conducted in violation of the automatic stay was void). Mr. Tobias has not sought an order annulling the automatic stay, but even if he did, courts in this circuit have held that annulments should be allowed "only sparingly and in compelling circumstances." In re WorldCom, Inc., 325 B.R. 511, (Bankr. S.D.N.Y. 2005). Here, Mr. Tobias was clearly aware of the bankruptcy proceeding, having filed the Tobias Claim before filing the Complaint, and he has not proffered any additional reasons for granting such extraordinary relief. As a result, a compelling circumstance does not exist for annulling the automatic stay.

28.     In the Tobias Response, Mr. Tobias makes overly-broad, non-specific allegations, including that "defendants" engaged in "illegal or other adverse actions that negatively affected the nationwide real estate market." The Tobias Response neither identifies the specific defendants that engaged in this conduct, whether a debtor entity engaged in the alleged conduct, nor the exact nature of the purported illegal conduct. Furthermore, there is no evidence proffered in support of these spurious allegations. As a result, the allegations in the Tobias Response are not specific enough for Mr. Tobias to meet his burden of persuasion. See this Court's *Order Denying Mary Lynn Weber's Motion to Reconsider* [Docket No. 6874], (finding that if a claim fails to comply with the documentation requirements of Bankruptcy Rule

ny-1142689

3001(c), that is it does not provide anything other than unsupported, conclusory allegations, it is

not entitled to *prima facie* validity); <u>see</u> <u>also</u> *In re Minbatiwalla*, 424 B.R. 104, 119 (Bankr.

S.D.N.Y. 2010) (determining that "in certain circumstances, claims can be disallowed for failure

to support the claim with sufficient evidence … because absent adequate documentation, the

proof of claim is not sufficient for the objector to concede the validity of a claim.")

29.     Mr. Tobias also alleges that he contacted "defendants" and requested

assistance according to the terms of the mortgage on the property after Hurricane Sandy and that

these "defendants" failed according to the terms of the mortgage contract to adequately

compensate Mr. Tobias for damages sustained as a result of their wrongful acts. <u>See</u> Complaint

at 19.  Again, since the Tobias Response does not allege to which defendants it is referring, it is

not clear whether this refers to one of the Debtors or a non-debtor defendant.  The exact nature of

these "wrongful acts" is entirely unclear, and Mr. Tobias fails to specify how they resulted in

damages to him.  Nevertheless, the Borrower Trust reviewed the Debtors' books and records to

determine if there was any basis to these allegations, and it could not find any instance where

Mr. Tobias ever contacted the Debtors regarding a loan modification or any other loss mitigation

option.[10]   As a result, given the lack of specificity with regard to these allegations, Mr. Tobias

has failed to meet his burden of persuasion.

30.     Based on the information and documents provided (or lack thereof), Mr.

Tobias has not met his burden of demonstrating how the Debtors' connection to him gives rise to

any liability of ResCap or any other Debtor, and there is no support in the Debtors' books and

records for a prepetition liability to Mr. Tobias.  Accordingly, for the reasons set forth in the

---

[10]A hold was placed on Mr. Larkins account on November 11, 2012 to bypass late charges for the months of
   November, December, and January due to Hurricane Sandy, but this was done as a matter of course for all
   homeowners that were in a FEMA declared disaster area and was not the result of any contact that Mr. Tobias
   made with the Debtors.

ny-1142689

Objection and the Reply, the Tobias Claim should be disallowed and expunged because Mr.

Tobias has failed to substantiate any prepetition liability of the Debtors to him.

## CONCLUSION

31.     WHEREFORE, the Borrower Trust respectfully submits that the relief

sought in the Objection should be granted.


Dated:  May 23, 2014                                 /s/  Norman S. Rosenbaum
       New York, New York                          Norman S. Rosenbaum
                                   Jordan A. Wishnew
                                   MORRISON & FOERSTER LLP
                                   250 West 55th Street
                                   New York, New York 10019
                                   Telephone: (212) 468-8000
                                   Facsimile: (212) 468-7900

                                   *Counsel for the ResCap Borrower Claims Trust*

ny-1142689