MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
Meryl L. Rothchild

*Counsel to the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------
|                                    )
In re:                              )    Case No. 12-12020 (MG)
|                                    )
RESIDENTIAL CAPITAL, LLC, et al.,   )    Chapter 11
|                                    )
Debtors.       )    Jointly Administered
-------------------------------------------------------------

**OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST TO**
**KAREN MICHELE ROZIER'S MOTION FOR RECONSIDERATION OF ORDER**
**DENYING PAYMENT ON CLAIM NOS. 4738 AND 5632**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "Borrower Trust"), as successor-in-interest to

the debtors (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases")

with respect to Borrower Claims,[1] hereby files this objection (the "Objection") to the *Motion for*

*Reconsideration of Order Entered on 2/26/2014 Pursuant to Rules 9023 and 9024* [Docket No.

6861] (the "Reconsideration Motion") filed by Karen Michele Rozier (the "Movant" or "Ms.

Rozier"). In support of the Objection, the Borrower Trust submits the declaration of Deanna

Horst, Chief Claims Officer of the ResCap Liquidating Trust (the "Horst Declaration"), annexed

---

[1]    As such term is defined in the Plan (defined below).

hereto as <u>Exhibit 1</u>, and, by and through its undersigned counsel, respectfully represents as follows:

## BACKGROUND

### A.    General Background

1.    On May 14, 2012 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

2.    On December 11, 2013, the Bankruptcy Court entered an *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* approving the terms of the Chapter 11 plan, as amended (the "<u>Plan</u>"), filed in the Chapter 11 Cases [Docket No. 6065].

3.    On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred [Docket No. 6137], and the Plan was substantially consummated.  The Plan, among other things, provides for the establishment of the Borrower Trust to administer and reconcile Borrower Claims and provide distributions to holders of Allowed Borrower Claims (as defined in the Plan).  <u>See</u> Plan, Art. IV.F.

### B.    The FRB Consent Order

4.    Prior to the Petition Date, several of the Debtors and their affiliates were the subjects of an examination by the Board of Governors of the Federal Reserve System (the "<u>FRB</u>"), the Federal Deposit Insurance Corporation (the "<u>FDIC</u>"), the Office of the Comptroller of the Currency (the "<u>OCC</u>"), and the Office of Thrift Supervision (together with the FRB, the FDIC and the OCC, the "<u>Consent Order Regulators</u>").   The Consent Order Regulators investigated alleged abuses in the foreclosure processes employed by companies with major mortgage servicing operations, including the Debtors.  In order to avoid further disruption to the

Debtors' businesses as a result of the examination, and to avoid potentially lengthy litigation, Debtors Residential Capital, LLC ("ResCap") and GMAC Mortgage, LLC ("GMACM" and together with ResCap, the "Consent Order Debtors"), along with non-debtor affiliates Ally Financial Inc. ("AFI") and Ally Bank, entered into a consent order with the FRB and the FDIC (the "FRB Consent Order"), dated April 13, 2011. See Disclosure Statement [Docket No. 4819], at Art. III.D.3(a).

5.      Without admitting fault, the Consent Order Debtors, AFI, and Ally Bank agreed, pursuant to the FRB Consent Order, to develop and implement certain risk management and corporate governance procedures under the guidance of the FRB in order to ensure prospective compliance with applicable foreclosure-related regulations and laws. See generally, FRB Consent Order. See also Horst Declaration ¶ 4. Pursuant to the FRB Consent Order, the parties were required to undertake a risk assessment of their mortgage servicing operations and were responsible for making improvements to various aspects of their residential mortgage loan servicing business, including, among other things, compliance programs, internal audit, communications with Borrowers, vendor management, management information systems, employee training, and oversight by the boards of directors of ResCap and GMACM. See id. Additionally, pursuant to the FRB Consent Order, GMACM agreed to pay for an extensive, independent file review regarding certain residential foreclosure actions and foreclosure sales prosecuted by the Debtors (the "FRB Foreclosure Review"), and to prepare and submit a detailed report regarding the results of that review. See FRB Consent Order, ¶¶ 3-4; see also Horst Declaration ¶ 4. The FRB Consent Order further required that the Debtors remediate any financial harm to borrowers resulting from errors or misrepresentation of the Debtors that the

FRB Foreclosure Review uncovers. <u>See</u> FRB Consent Order, ¶ 3(c); <u>see also</u> Horst Declaration ¶ 4.

6.  In early 2013, the Consent Order Regulators began entering into settlements with various Consent Order parties and, in June 2013, a term sheet was executed among the FRB, ResCap and GMAC Mortgage suspending the FRB Foreclosure Review and the Debtors escrowed $230 million as their anticipated settlement amount. <u>See</u> Horst Declaration ¶ 5. Following execution of the term sheet, the Debtors' independent consultant, PricewaterhouseCoopers ("<u>PwC</u>"), conducted a review as to the population of borrowers who may have been eligible to receive payments from the settlement fund as designed, and then provided an initial "IFR Waterfall" to the FRB. <u>See</u> <u>id.</u> The settlement was designed to halt all individual foreclosure file reviews and, instead, provide a payment of some amount, with no determination having been made of actual harm, to each borrower in the final population, *i.e.*, all borrowers being serviced by the Debtors who had been subject to residential mortgage foreclosure actions or proceedings, including residential foreclosure sales, that were pending or occurred at any time from January 1, 2009 to December 31, 2010 (the "<u>Eligible Population</u>"). <u>See</u> <u>id.</u>

7.  A formal amendment to the FRB Consent Order was executed on July 26, 2013 and the previously escrowed funds were moved into a settlement fund outside the Debtors' control (the "<u>Settlement Fund</u>"). <u>See</u> Horst Declaration ¶ 6. Subsequent to that date, the Debtors provided data from its loan servicing system to an independent consultant and the FRB to finalize the IFR Waterfall, with the independent consultant and the FRB verifying the eligibility and placement of all the borrowers into the IFR Waterfall. <u>See</u> <u>id.</u> Once that was completed, the Debtors provided to Rust Consulting, Inc., as paying agent for the settlement, the specific

ny-1143237

borrower placement information on November 21, 2013 and the placement of borrowers into the IFR Waterfall was deemed final.  See id.  The paying agent is now in process of distributing the funds in the Settlement Fund to borrowers in accordance with a distribution plan implemented by the FRB.  See id.

8.    The payment that Ms. Rozier received in respect of the FRB settlement does not indicate or represent any determination or acknowledgement by the Debtors that claims made by Ms. Rozier have any merit or that she suffered any harm at the hands of the Debtors.  See Horst Declaration ¶ 8.  She was included in the Eligible Population because she was subject to a foreclosure proceeding during the time period referenced above.  See id. ¶ 7.

9.    As set forth in Article IV of the Plan, through the Effective Date, the Debtors were required to perform certain regulatory obligations, including "satisfying the settlement of the foreclosure review obligations under the [FRB] Consent Order, fulfilling all specific performance obligations, and satisfying all monetary obligations in full in Cash" with the exception of certain obligations carved out by the Ocwen APA (as such term is defined in the Plan).  See Plan, at Art. IV.B(e).[2]  The Plan goes on to provide that, on and subsequent to the Effective Date, the Liquidating Trust shall assume these rights and perform these obligations. See id.  If a Borrower Claim constitutes, in whole or in part, a Consent Order Borrower Claim,[3] the allowed amount of such Borrower Claim shall be reduced to the extent paid pursuant to the

---

[2]    The settlement referred to in that Plan provision is the settlement described in paragraph 6 above.

[3]    The term "Consent Order Borrower Claims" means claims held by Borrowers arising from residential mortgage foreclosure actions (including judicial and non-judicial foreclosures and related bankruptcy proceedings, and other related litigation) or proceedings (including foreclosures that were in process or completed) for loans serviced by the Mortgage Servicing Companies (as defined in the Consent Order), whether brought in the name of Ally Bank, the Mortgage Servicing Companies, the investor, or any agent for the mortgage note holder (including Mortgage Electronic Registration Systems, Inc.), that have been pending at any time from January 1, 2009 to December 31, 2010, as well as claims arising from residential foreclosure sales that occurred during this time period. See Plan, at Art. I.A.68.  This definition aligns with the criteria for inclusion in the Eligible Population for purposes of the FRB Foreclosure Review settlement.

ny-1143237

FRB Consent Order or any settlement of the Debtors' obligations thereunder, without further order of the Court.  See Plan, at Art. IV.F.6.

10.    The Debtors' role in the FRB Foreclosure Review settlement was limited to providing servicing system data to the independent consultant with respect to the Borrowers who, given the time period in which their foreclosure actions were pending, may have been eligible to be included in one of the various "potential harm" categories in the IFR Waterfall. See Horst Declaration ¶ 7.  After the Debtors provided that data, the independent consultant and the FRB finalized the Eligible Population and the placement of each eligible Borrower in the IFR Waterfall potential harm categories.  See id.  The FRB then determined payment amounts for each such category.  See id.  Ms. Rozier was determined to be eligible to receive $500 as a settlement payment, the lowest payout provided for in the IFR Waterfall.  See id.  Rust Consulting, Inc. distributed the remediation settlement payment to Ms. Rozier on January 27, 2014.[4] See id.

**C.    The California Action**

11.    On September 27, 2012, Ms. Rozier commenced an action in the Superior Court of California against certain defendants,[5] including GMACM and ETS (the "California Action"). See Horst Declaration ¶ 10.  As part of the California Action, on October 29, 2012, Ms. Rozier filed a *First Amended Verified Complaint for Injunctive Relief to Set Aside Trustee Sale, Enjoin Foreclosure Sale and Fraud* (the "Complaint"), alleging, among other things, wrongful foreclosure claims against GMACM and Executive Trustee Services, LLC ("ETS").  See id.  On

---

[4]    The settlement payments were first issued on January 27, 2014.  The lowest amount of such payments is $500, and Ms. Rozier's placement in that IFR Waterfall category means that there was no indication of even potential harm suffered by Ms. Rozier that would have placed her into a higher payout category.  See Horst Declaration ¶ 9, n.4.

[5]    The defendants include: (i) Bank of America, National Association ("BoA"), successor by merger to LaSalle Bank National Association, as Trustee for RAAC 2007RP1; (ii) GMACM; (iii) ETS; and (iv) John Does 1-100.

6

December 4, 2012, GMACM and ETS filed a Notice of Bankruptcy Stay and Suggestion of Automatic Stay (the "Bankruptcy Notice"). See id. On February 4, 2013 and June 10, 2013, respectively, Ms. Rozier further amended the Complaint to, among other things, add Residential Funding Company, LLC ("RFC") as a Debtor defendant. See id. The third amended Complaint, filed on June 10, 2013, no longer named GMACM or ETS, but added RFC as a defendant. See id. In response, the Debtors mailed Ms. Rozier letters dated February 11, 2013 and June 18, 2013, respectively, to remind Ms. Rozier of the Bankruptcy Notice and potential violations of the automatic stay. See id. The Debtors filed additional Bankruptcy Notices, one on February 13, 2013 when RFC was added as a party to the California Action, and another on June 18, 2013 in response to the third amended Complaint. See id.

12.    On January 8, 2014, defendant U.S. Bank National Association's ("U.S. Bank"[6]), as Trustee of the securitized trust that includes the Movant's loan (which was subserviced by GMACM, and now by Ocwen Loan Servicing, LLC ("Ocwen")[7]) filed a motion for summary judgment in the California Action. See Horst Declaration ¶ 11. The court ruled from the bench and granted the summary judgment and motion for terminating sanctions. See id. The court has not yet entered a written order or opinion documenting this ruling. See id. Despite the absence of a written order, on May 10, 2014, the Movant immediately filed an appeal from the court's oral ruling. See id. The trial in the California Action has been adjourned from May 27, 2014 to February 2, 2015. See id.; see also Reconsideration Motion ¶ 22 and Exhibit "6" annexed thereto.

---

[6]    U.S. Bank is successor in interest to BoA.

[7]    In the third amended Complaint, the Movant attempted to name Ocwen as a defendant to the California Action. The judge presiding over the California Action filed a Minute Order, dated September 12, 2013, declaring such amendment improper and dismissing Ocwen, without prejudice, as a party. See Horst Declaration ¶ 12, n.6.

D.    **The Ninth Circuit Action**

13.    On August 22, 2011, Ms. Rozier filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code, Case No. 8:11-bk-21727-CB, in the Bankruptcy Court for the Central District of California (the "Rozier Bankruptcy Case").  See Horst Declaration ¶ 12.  On January 12, 2012, a confirmation hearing was held in which the Rozier Bankruptcy Case was converted to a Chapter 7 case.  See id.  On June 18, 2012, U.S. Bank, as Trustee, filed a motion for relief from the automatic stay, to which Ms. Rozier filed a response.  See id.  On July 10, 2012, the bankruptcy court held a hearing on U.S. Bank's motion, and granted the motion.  Subsequent to this hearing, Ms. Rozier filed an appeal to the Court for the Ninth Circuit Bankruptcy Appellate Panel (the "BAP"), Case No. 12-1359.  See id.  While this appeal before the BAP was pending, Ms. Rozier filed a *Motion for Violation of the Automatic Stay* in the Rozier Bankruptcy Case in which she asserted against certain parties, including RFC, an illegal assignment of the beneficiary's interest under the deed of trust, when BoA assigned its interest to U.S. Bank.  See id.  On April 9, 2013, the bankruptcy court denied Ms. Rozier's motion.  See id.

14.    After review of the parties' briefing, the BAP upheld the bankruptcy court's ruling on U.S. Bank's motion for stay relief and entered an order to that effect on September 6, 2013.  See Horst Declaration ¶ 13.  Following the BAP's entered order, Ms. Rozier filed a notice of appeal to the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit"), Appeals Case No. 13-60106, captioned *Rozier v. U.S. Bank Nat'l Assoc., et al.* (the "Ninth Circuit Action").  See id.  Neither the Debtors nor the Borrower Trust is named as a party to the Ninth Circuit Action, which purportedly raises claims against U.S. Bank, including, but not limited to, allegations of wrongful acts and intentional deceit.  See id.  Briefing to the Ninth Circuit was completed on April 18, 2014.  See id.

8

15.     At present, the Rozier Bankruptcy Case is pending, and no discharge has been

granted to the Movant.  See Horst Declaration ¶ 14.  On December 16, 2013, over one year after

the filing of the Proofs of Claim at issue here, the Movant filed amended schedules to include

claims against the Debtors ("ResCap BK Claim 4738" in the amount of $29,175,120.01 and

"ResCap BK Claim 5632" for $666,000).  See id.

**E.     The Movant's Proofs of Claim**

16.     On November 14, 2012, Ms. Rozier timely filed claim number 4738 (the

"GMACM Claim") against Debtor GMACM in the amount of $666,000.[8]  See Horst Declaration

¶ 15; see also GMACM Claim, annexed to the Horst Declaration as Exhibit A.  The GMACM

Claim alleges liability for, among other things, the claims asserted in the California Action.  See

id.  On November 16, 2012, Ms. Rozier timely filed claim number 5632 (the "ETS Claim" and

together with the GMACM Claim, the "Proofs of Claim") against Debtor ETS in the amount of

$666,000.  See Horst Declaration ¶ 15; see also ETS Claim, annexed to the Horst Declaration as

Exhibit B.  The ETS Claim also alleges liability for the reasons asserted in the California Action.

See id.

17.     The Debtors did not object to the Proofs of Claim before the Effective Date, and

the Borrower Trust has not yet objected to the Proofs of Claim.  See Horst Declaration ¶ 16.

Since the Effective Date, approximately nine omnibus objections to claims have been filed, none

of which included the Proofs of Claim.  See id.  Under the terms of the Plan, the Borrower

Trust's deadline to object to the Proofs of Claim does not expire until two hundred seventy days

---

[8]     As described below, the increased amount the Movant seeks on account of the GMACM Claim—
$29,175,120.01 (which is 30.1% of $96,927,309.00)—was only made known to the Borrower Trust in the
Motions for Payment (as defined herein).  See Horst Declaration ¶ 16, n.7.

after the Effective Date—September 15, 2014[9]—or any other later date established by the Court

following a motion.  See Plan, at Art. I.A.54 ("Claims Objection Deadline").

**F.    The Movant's Prior Motions Before the Court**

18.    On December 23, 2013 and subsequently thereafter, the Movant requested

payment of her claims [Docket No. 6173, 6173-1, 6401, 6402] (collectively, the "Motions for

Payment").  See Horst Declaration ¶ 17.  In the Motions for Payment, the Movant sought

payment in the aggregate amount of $29,841,120.01, comprised of: (i) $666,000, which is

equivalent to 100% of the ETS Claim; and (ii) $29,175,120.01, which is equivalent to 30.1% of

the GMACM Claim (face amount of the GMACM Claim is $96,927,309.00).  See id.

19.    On February 11, 2014, in response to the Motions for Payment, the Borrower

Trust filed the *Objection of the Borrower Claims Trust to Motions of Karen Michele Rozier for

Payment on Claims* [Docket No. 6461] (the "Objection to Payment").  See Horst Declaration ¶

18.  In the Objection to Payment, the Borrower Trust asserted that there is no basis upon which

Ms. Rozier is entitled to relief because the Proofs of Claim have not yet been deemed "Allowed

Borrower Claims."  See id.

20.    On February 24, 2014, the Movant filed a reply in support of her Motions for

Payment [Docket No. 6597] (the "Reply") and described the Objection to Payment as

"nonresponsive, vague, and misleading" and challenged the Borrower Trust's right to evaluate

and determine the allowance or disallowance of claims within the timeframe described in

Paragraph 17 supra.  See Horst Declaration ¶ 19.

21.    On February 26, 2014, the Court entered the *Order Sustaining Objection to

Motions of Karen Michele Rozier for Payment on Claims* [Docket No. 6519] (the "Order").  See

---

[9]    Since 270 days from December 17, 2013—the Effective Date—is Saturday, September 13, 2014, the applicable date for this computation is Monday, September 15, 2014. FED. R. BANKR. P. 9006(a)(1)(C).

Horst Declaration ¶ 19.  The Court did not reference either the Reply or the Declaration in its reasoning for sustaining the Objection to Payment.

## G.    The Reconsideration Motion

22.    On April 30, 2014, sixty-three (63) days after the Court entered the Order, the Movant filed the Reconsideration Motion.  The Reconsideration Motion reiterates the wrongful foreclosure allegations from the Proofs of Claim, and cites Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and the Federal Rules of Civil Procedure (the "<u>Federal Rules</u>") incorporated thereby as legal predicates for the Court to reconsider the Order.  <u>See</u> Reconsideration Motion ¶¶ 12, 15, 18-19.

23.    The Movant asserts that she can demonstrate misrepresentation by the Debtors, and that newly discovered evidence has become available that makes the Order "no longer equitable, and that other causes exist to justify relief."  <u>See</u> Reconsideration Motion ¶ 12.  For instance, Movant alleges that ResCap, not Ocwen, foreclosed on the Movant's real property in September of 2012, and the Borrower Trust deliberately misrepresented this purported fact to the Court (evidenced by the notice of rescission of trustee deed upon sale, annexed to the Reconsideration Motion).  <u>See id.</u> ¶ 15(a).  The Movant argues that the Borrower Trust's purported intentional misrepresentation "should be viewed as an admission of guilt."  <u>See id.</u>

24.    Furthermore, the Movant alleges that the Proofs of Claim are related to matters in the Ninth Circuit Action and the California Action.  <u>See</u> Reconsideration Motion ¶¶ 18-23.  The Reconsideration Motion also requests that the Court enter an order allowing the Proofs of Claim as administrative expense claims and directing the Borrower Trust to remit immediate payment to the Movant on account of those claims.

25.    In addition, in the Reconsideration Motion, the Movant alleges, among other things, that upon consideration of a request (Reference No. 1000978665) submitted in

connection with the FRB Foreclosure Review, on January 27 2014, the Movant received a payment on account of the GMACM Claim and a letter informing her of her eligibility to receive such payment.  See Reconsideration Motion ¶¶ 6, 15(c).  The Movant argues that this contradicts the Borrower Trust's statement in its Objection to Payment that "'there has not yet been a determination by the Court or an acknowledgement by the [Borrower] Trust that the Claims are allowed' (see id. ¶ 6, 15(c)) and no longer subject to objection."  Objection to Payment ¶ 14.

26.    The Reconsideration Motion attaches:

(1) a Trustee's Deed Upon Sale, dated September 24, 2012, signed by an officer of ETS;

(2) a Notice of Rescission of Trustee's Deed Upon Sale, dated October 3, 2012, signed by an officer of ETS;

(3) Order of Preliminary Injunction entered on February 5, 2013 in the California Action limited to defendant BoA, enjoining BoA from selling or attempting to sell, through foreclosure or otherwise, the Movant's property;

(4) Order Granting Temporary Restraining Order in the California Action entered on February 13, 2013;

(5) Notice of Continued Trial Date for the California Action, rescheduling the jury trial previously set for May 27, 2014 to February 2, 2015;

(6) Appellant's Reply filed by Ms. Rozier in the Ninth Circuit Action, dated April 17, 2014;

(7) Appellant's Reply Courtesy Exhibits filed by Ms. Rozier in the Ninth Circuit Action, which include:

(i)    Order of Preliminary Injunction entered on February 5, 2013 in the California Action;

(ii)    Order Granting Temporary Restraining Order in the California Action entered on February 13, 2013;

(iii)    notice of Substitute of Trustee, dated April 4, 2011, signed by an officer of BoA;

(iv)    security instrument relating to the Deed of Trust, executed by Ms. Rozier on December 23, 2005;

ny-1143237

(v)     assignment of Deed of Trust from MERS, Inc. to BoA, dated
        March 3, 2011;

(vi)    assignment of Deed of Trust from BoA a to U.S. Bank, dated
        January 4, 2012;

(vii)   transcript excerpt from the Rozier Bankruptcy Case, dated July 10,
        2012, where the bankruptcy court granted U.S. Bank's request for
        relief from the automatic stay in connection with the Movant's real
        property, where the Movant discusses the issues surrounding
        property valuation and admits that as of that hearing she had not
        made mortgage payments (a total of 54) since February of 2008;

(viii)  Findings of Fact, Conclusions of Law and Order Re: Punitive
        Damages in *McCulley v. U.S. Bank of Montana*, dated April 14,
        2014, before the Montana 18th Judicial District Court, Gallatin
        County, No. DV 09-562C;

(ix)    Appellant's Request for Judicial Notice in support of Appellant's
        Reply Brief's arguments on the valuation of her home, filed by Ms.
        Rozier in the Ninth Circuit Action, dated April 17, 2014, which
        appends (a) a Notice of Rescission of Notice of Default, dated
        December 22, 2009 and executed by ETS, (b) appraisal report of
        the Movant's property, prepared on April 2, 2014, (c) a public
        service information form containing certain real property
        information, (d) an Orange County Assessor Department Notice
        relating to Section 408.3 ("Property Characteristics Information")
        added to the Revenue and Taxation Code;

(x)     Appellant's Excerpts of Record, filed by Ms. Rozier in the Ninth
        Circuit Action, dated April 17, 2014, which appends (a) a
        description of real property, (b) a letter dated February 24, 2006
        from WMCMortgage Corp. to Ms. Rozier notifying her that it is
        correcting outdated information initially used in the preparation of
        Ms. Rozier's final Truth-in-Lending Statement, and notifying her
        of her right to cancel the loan, (c) a notice dated May 5, 2006 from
        WMCMortgage Corp. to Ms. Rozier indicating receipt of Ms.
        Rozier's decision to rescind her loan, (d) a letter dated June 6,
        2006 from WMCMortgage Corp. to Ms. Rozier notifying her that
        it is enclosing a check in the amount of $28,852.20 representing
        lender credit for closing fees, (e) numerous letters between
        WMCMortgage Corp. and Ms. Rozier in connection with the
        cancellation of Ms. Rozier's loan, including a letter dated March
        30, 2006 to WMCMortgage Corp. from Judith E. Demings &
        Associates, retained by Ms. Rozier in connection with allegations
        of violations of TILA and Regulation Z, and (f) selected
        documentation and photos relating to the Movant's real property;

(xi)    Supplemental Declaration of Broker Mina Ali in Support of U.S. Bank's Motion for Relief from the Automatic Stay, filed in the Rozier Bankruptcy Case on June 12, 2012 and proof of service of same;

(xii)    Emergency Motion for Stay of Proceedings, filed by the Movant in the California Action and Rozier declaration in support of said motion, each dated April 4, 2012 (though upon information and belief, such filings were submitted on April 4, 2014); and

(xiii)    certain proofs of service of motions filed by the Movant.

## ARGUMENT

**A.    Applicable Standard of Review of the Reconsideration Motion**

27.    It is well established that *pro se* papers are to be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Satchell v. Dilworth, 745 F.2d 781, 785 (2d Cir. 1984) (instructing that "a pro se litigant should be afforded every reasonable opportunity to demonstrate that he [or she] has a valid claim"). Even under this flexible standard, however, based on the relief sought in the Reconsideration Motion, the Movant fails to satisfy any applicable standard for reconsideration of the Order. Specifically, the facts and allegations raised in the Reconsideration Motion do not satisfy the standards under the applicable Federal Rules, as incorporated by the Bankruptcy Rules. Similar to the reconsideration requested by other parties, and denied by this Court, the Movant's failure to meet the applicable standards warrants the denial of the Reconsideration Motion. See, e.g., Order Denying Mary Lynn Weber's Motion to Reconsider [Docket No. 6874], In re Residential Capital, LLC, et al., No. 12-12020 (MG) (Bankr. S.D.N.Y. May 9, 2014); Order Denying Francine Silver's Motion to Reconsider Order Denying Motion for Payment of Claim No. 61 [Docket No. 6818], In re Residential Capital, LLC, et al., No. 12-12020 (MG) (Bankr. S.D.N.Y. Apr. 24, 2014); Order Denying Diane W. Walker's Motion for Reconsideration of Order Disallowing Claim [Docket No. 6513], In re Residential Capital, LLC, et al., No. 12-12020

14

(MG) (Bankr. S.D.N.Y. Feb. 24, 2014); Order Denying Anaissa B. Gerwald's Motion for Reconsideration of Order Disallowing Claim [Docket No. 6506], In re Residential Capital, LLC, et al., No. 12-12020 (MG) (Bankr. S.D.N.Y. Feb. 10, 2014).

28.     Courts in this district hold that if a motion to reconsider an order disallowing a claim is filed within fourteen days after entry of the order, it is analogous to a motion under Bankruptcy Rule 9023 and should be governed by the same principles as a motion under Rule 59; however, if the motion to reconsider is filed any later, it should be considered as if it were filed pursuant to Rule 60.   See In re Terrestar Networks, Inc., No. 10-15446 (SHL), 2013 WL 781613, at *2 (Bankr. S.D.N.Y. Feb. 28, 2013) (applying a Rule 60 standard of review to a motion for reconsideration because the claimant filed his motion six months after the court entered the order expunging the claims and noting that the six-month time period precluded application of a Rule 59 standard); see also In re Enron Corp., 352 B.R. 363 (Bankr. S.D.N.Y. 2006) (treating a motion for reconsideration, filed outside the Rule 59 statutory period, as a motion for relief from judgment under Rule 9024).

29.     The Movant filed the Reconsideration Motion sixty-three (63) days after the Court issued the Order.  Therefore, the Court should apply a Rule 60 standard when evaluating the Reconsideration Motion.  For purposes of this Objection, as stated above, the Borrower Trust will demonstrate that the Movant fails both standards.

**B.      The Reconsideration Motion Fails to Satisfy Rule 60's Requirements**

30.     Bankruptcy Rule 9024 incorporates Rule 60, which sets forth the grounds for relief from a final judgment, order or proceeding.  Rule 60(b) provides that the Court may relieve a party from a final judgment, order or proceeding due to:

      1)  mistake, inadvertence, surprise, or excusable neglect;

2)  newly discovered evidence that, with reasonable diligence, could not
have been discovered in time to move for a new trial under Rule 59(b);

3)  fraud (whether previously called intrinsic or extrinsic),
misrepresentation, or misconduct by an opposing party;

4)  the judgment is void;

5)  the judgment has been satisfied, released, or discharged; it is based on an
earlier judgment that has been reversed or vacated; or applying it
prospectively is no longer equitable; or

6)  any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  "A motion for relief from judgment is generally not favored and is

properly granted only upon a showing of exceptional circumstances."  United States v. Int'l Bhd.

of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001).  Whether to grant a motion for relief under Rule

60 is within the discretion of the Court.  Terrestar Networks, No. 10-15446 (SHL), 2013 WL

781613, at *3.

31.    Movant fails to demonstrate that she should be relieved from the Order pursuant

to Bankruptcy Rule 9024.  As an initial matter, the Reconsideration Motion does not identify a

specific instance of mistake, inadvertence, surprise, or excusable neglect.  Further, and as

discussed herein, there is no evidence that a mistake, "newly discovered evidence that, with

reasonable diligence, could not have been discovered in time to move for a new trial under Rule

59(b)," or any other reason exists to justify reconsideration and alteration of the Order.  The

Movant attaches documents relating to the status of the California Action and Ninth Circuit

Action; however, a number of these documents pre-date the Motions for Payment, and were not

appended to those motions.  Thus, they do not qualify as "newly discovered" evidence.  Even if

these documents, together with the trial scheduling filings that post-date the Motions for

16

Payment, are considered to be "newly discovered," they are not relevant to, nor constitute a basis for, reconsideration of the Order under Rule 60.

32.     In addition, the Movant suggests that the Borrower Trust committed fraud or misconduct in obtaining the Order because of its purported intention to "play" the California court and this Court against each other in an effort to avoid accountability for purported hardship caused to the Movant.  See Reconsideration Motion ¶ 15(b).  Despite the Movant's allegations, there is no evidence of any act of fraud, misconduct, or misrepresentation in the Borrower Trust's filing of the Objection to Payment or acts that resulted in the Court's Order.  The Movant simply proffers conclusory accusations that, as discussed above, do not evidence or substantiate her claims or warrant the reconsideration of the Order.

33.     Importantly, the Movant is not prejudiced by the relief provided in the Order, as the Proofs of Claim remain on the Debtors' claims register.  Therefore, the Borrower Trust respectfully submits that for the aforementioned reasons, the Reconsideration Motion should be denied.

## C.     The Reconsideration Motion Fails to Satisfy Rule 59's Requirements

34.     Bankruptcy Rule 9023 incorporates Federal Rule 59, which regulates motions for amendment of a judgment.  Under Bankruptcy Rule 9023, "[a] court may reconsider an earlier decision when a party can point to 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  In re Miller, 2008 Bankr. LEXIS 3631, at *3, Case No. 07-13481 (MG) (Bankr. S.D.N.Y. Feb. 28, 2008) (citing Marrero Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004); see also Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004) ("reconsideration is proper 'to correct a clear error of law or prevent manifest injustice.'") (internal citations omitted).  "Generally, motions for reconsideration are not granted unless the moving party can point to controlling decisions or data

that the court overlooked – *matters, in other words, that might reasonably be expected to alter the conclusion reached by the court*." <u>In re BDC 56 LLC</u>, 330 F.3d 111, 123 (2d Cir. 2003) (internal quotation marks and citation omitted) (emphasis added). A motion for reconsideration may not be used "to enable a party to complete presenting his case after the court has ruled against him." <u>Frietsch v. Refco, Inc.</u>, 56 F.3d 825, 828 (7th Cir. 1995).

35.    The Movant fails to satisfy the requisite burden of proof required for relief pursuant to Bankruptcy Rule 9023. The Movant neither introduces any new evidence, establishes that the Court overlooked available evidence, identifies any new controlling case law, nor presents new facts to the Court not previously available to the Movant at the time the Movant filed the Motions for Payment that would warrant the Court's reconsideration and alteration of its Order denying the Movant immediate payment for the entirety of her Proofs of Claim.

36.    <u>First</u>, contrary to the Movant's allegations, the Borrower Trust did not intentionally misrepresent any facts to the Movant or the Court in the Objection to Payment or otherwise in an effort to obtain the Order in the Borrower Trust's favor. The Borrower Trust did not claim that the Debtors did not initially institute the foreclosure action against Ms. Rozier; instead, the Borrower Trust noted that Ocwen decided to file a foreclosure action once Ms. Rozier's loan was transferred from the Debtors to Ocwen. <u>Compare</u> Reconsideration Motion ¶ 15(a) <u>with</u> Objection to Payment n.1. There was no misrepresentation, let alone any intentional misrepresentation, on this fact, particularly not one that would alter the conclusion reached by the Court concerning the timing of any distribution to Movant on account of her Proofs of Claim.

37.    <u>Second</u>, reconsideration of the Order would not "prevent manifest injustice." The Movant's Proofs of Claim are still on the Debtors' claim register. Moreover, the Court did not rule on the merits of the claims. The Borrower Trust simply stated the process and timing in

connection with the review and any distribution from the Borrower Trust, if any, on account of the Proofs of Claim, and argued that the Movant, like all other Borrowers, is bound by the provisions of the confirmed Plan in the Chapter 11 Cases. The Borrower Trust's objective in filing the Objection to Payment was not to unjustly withhold distributions from the Movant, but rather explain the applicable provisions of the Plan relating to the Borrower Trust's administration of claims filed by Borrowers.

38.    Furthermore, as discussed below, the Movant's introduction of the receipt of a payment as a result of the FRB Foreclosure Review settlement does not constitute "new evidence" that warrants altering the Court's prior conclusion in the Order. As noted above, the Borrower Trust has not completed its diligence on the Proofs of Claim at this time, and continues to reserve its rights to file an objection to the Proofs of Claim at the appropriate time.

39.    The FRB Foreclosure Review payments made pursuant to the settlement described in paragraph 6 above are entirely separate and apart from the Borrower Trust's claims reconciliation process, and has absolutely no bearing on the allowance of the Movant's Proofs of Claim. See Horst Declaration ¶ 8. The payment that Ms. Rozier received in respect of the FRB settlement does not represent a determination or acknowledgement by the Debtors or the Borrower Trust that claims made by Ms. Rozier have any merit or that she was injured at the hands of the Debtors. See id. She was included in the FRB settlement population because she was subject to a foreclosure proceeding during the time period referenced above. See id. ¶ 7. The $500 paid to the Movant was a settlement payment,[10] one of many payments made to Borrowers in the Eligible Population, and was not made based on any determination or valuation by the Debtors or the Consent Order Regulators that the Movant suffered harm. See generally,

---

[10]    Importantly, such payment was made, but at no time did GMACM admit any fault or wrongdoing in connection with any alleged errors, misrepresentation, or other deficiencies of or injury caused by the Debtors. See Horst Declaration ¶ 8.

ny-1143237

FRB Consent Order; see Plan, at Art. IV.B(e) and Reconsideration Motion ¶ 15(c); see also Horst Declaration ¶ 8.  Further, the Plan contemplates that this independent foreclosure review process and the settlement payments provided thereunder are separate and apart from the Borrower Trust's review and determination of allowance of Borrower Claims.  See Plan, at Arts. IV.B(e), IV.F.6.  Specifically, the Plan provides that any portion of a Borrower Claim that is deemed a "Consent Order Borrower Claim" – whereby a Borrower is paid pursuant to the FRB Consent Order – the Allowed amount of such Borrower Claim shall be reduced to the extent paid pursuant to the FRB Consent Order or any settlement of the Debtors' obligations thereunder. See Plan, at Art. IV.F.6 (emphasis added).  Therefore, the payment that Movant received on account of the FRB Foreclosure Review was not intended by either the Debtors or the Borrower Trust to automatically render the entirety of a Borrower Claim to be allowed, even if a part of such claim qualifies as a "Consent Order Borrower Claim."

40.    Simply put, the FRB Foreclosure Review and any payment made thereunder has no bearing on the allowance of the Proofs of Claim and cannot be construed to overrule the express provisions of the Plan.

41.    Moreover, the Movant does not identify any "intervening change of controlling law" or any "clear error" by the Court that merits reconsideration.  Because the Reconsideration Motion fails to identify any change in the law in the Movant's favor, to adduce any new evidence in the Movant's favor of permitting payment on account of the Proofs of Claim from the Borrower Trust, or to point to any clear error by this Court that would require this Court to change its previous ruling, the Reconsideration Motion should be denied under Rule 59.

**D.**     **Receipt of a Settlement Payment Pursuant to the FRB Foreclosure Review Does Not Affect the Allowance of the Proofs of Claim.**

42.     Contrary to the Movant's assertions, GMACM entered into the FRB Consent Order without admitting any fault for wrongdoing alleged by the FRB or the FDIC.  See FRB Consent Order at 6 (indicating that the FRB Consent Order does not constitute an admission by AFI, Ally Bank, ResCap or GMACM or its subsidiaries of any allegation made or implied by the FRB or the FDIC).  Rather, the FRB Consent Order was entered into by the parties solely for the purpose of achieving a settlement without the need for a formal proceeding and protracted and extended hearings and testimony.  See id.  Furthermore, the FRB Consent Order does not require the Debtors to make Borrowers financially whole.  Instead, under the FRB Consent Order, GMACM agreed to, *inter alia*, (i) "remediate, as appropriate, errors, misrepresentations, or other deficiencies in any foreclosure filing or other proceeding," (ii) reimburse or provide other appropriate remediation for impermissible or unreasonable penalties, fees or expenses, or for certain other financial injuries and (iii) remediate any foreclosure sale where the foreclosure was not authorized as described in the FRB Consent Order.  More specifically, the FRB Consent Order required GMACM to retain and compensate an independent consultant to conduct an extensive review of past foreclosure proceedings and sales pending or completed during 2009 and 2010 with respect to loans serviced by GMACM and its subsidiaries, and to prepare and submit a report regarding the results of that review.  See Disclosure Statement [Docket No. 4819], at Art. III.D.3(a).  That review of past foreclosure proceedings was suspended in June 2013 and was replaced by the settlement reached with the FRB, resulting in payouts under an IFR Waterfall category rather than in remediation of specific determined harms to any given Borrower.

ny-1143237

43.     The Debtors have complied with their obligations pursuant to the settlement entered into with the FRB, including any obligations owed to the Movant.  See Horst Declaration ¶ 9.  In light of the facts at hand, the Movant has not established a basis for which she is entitled to any additional compensation, let alone funds to make her financially whole, under the terms of the FRB Consent Order.  See id.

44.     Importantly, payment pursuant to the FRB Consent Order does not mean that the Borrower Trust has completed its diligence in reviewing the facts and documentation surrounding the Proofs of Claim to warrant any payments from the Borrower Trust.  See Horst Declaration ¶ 8.  The work conducted by the independent file review consultants and analysis being conducted by the Borrower Trust, respectively, are separate and apart from one another, as contemplated by the Plan.  The Plan provides, in pertinent part, that if a Borrower Claim constitutes, in whole or in part, a Consent Order Borrower Claim, the allowed amount of such Borrower Claim shall be reduced to the extent paid pursuant to the FRB Consent Order or any settlement of the Debtors' obligations thereunder, without further order of the Court.  See Plan, at Art. VI.F.6.  Thus, the remaining claims and corresponding amounts asserted in the Proofs of Claim have not been deemed "ultimately allowed" by Court order, in whole or in part, or through a settlement with the Borrower Trust.  Accordingly, the Movant is not presently entitled to any distribution from the Borrower Trust on account of the Proofs of Claim.  For this reason, the Reconsideration Motion should be denied.

45.     The treatment and classification of the Proofs of Claim as a result of completion of diligence on the merits is yet to be determined.  Pursuant to the Plan and Confirmation Order, the Borrower Trust is afforded additional time to complete its analyses.  For the aforementioned reasons, the Reconsideration Motion should be denied.

ny-1143237

## **CONCLUSION**

For the reasons set forth above, the Borrower Trust respectfully submits that the

Reconsideration Motion should be denied.


Dated: May 23, 2014
      New York, New York

/s/  Norman S. Rosenbaum
              Gary S. Lee
              Norman S. Rosenbaum
              Jordan A. Wishnew
              Meryl L. Rothchild
              MORRISON & FOERSTER LLP
              250 West 55th Street
              New York, NY  10019
              Telephone:  (212) 468-8000
              Facsimile:  (212) 468-7900

              *Counsel to the ResCap Borrower Claims Trust*

ny-1143237