**Hearing Date: July 9, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline: June 19, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

| | |
|---|---|
| **MORRISON & FOERSTER LLP** | **REED SMITH LLP** |
| 250 West 55th Street | Princeton Forrestal Village |
| New York, New York 10019 | 136 Main Street, Suite 250 |
| Telephone:    (212) 468-8000 | Princeton, New Jersey 08540 |
| Facsimile:    (212) 468-7900 | Telephone:    (609) 987-0050 |
| Gary S. Lee | Facsimile:    (609) 951-0824 |
| Norman S. Rosenbaum | Diane A. Bettino |
| Jordan A. Wishnew | |
| Meryl L. Rothchild | |
| | |
| *Counsel for the ResCap Borrower Claims Trust* | *Co-Counsel for the ResCap Borrower Claims Trust* |

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

------------------------------------------------

## RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO PROOFS OF CLAIM
## FILED BY FRANK REED AND CHRISTINA REED
## PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE
## AND BANKRUPTCY RULE 3007

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................. 2

II.    JURISDICTION, VENUE, AND STATUTORY PREDICATE ....................................... 3

III.    BACKGROUND ............................................................................ 3

    A.    Chapter 11 Cases Background ............................................................ 3

    B.    The FRB Consent Order ................................................................. 5

    C.    The New Jersey Litigation ............................................................. 9

    D.    The Proofs of Claim ................................................................... 12

        i.    Proofs of Claim Numbers 3708 and 3759 ................................................ 12

        ii.    Proofs of Claim Numbers 4736 and 4759 ............................................... 14

IV.    RELIEF REQUESTED ...................................................................... 16

V.    OBJECTION ............................................................................. 16

    A.    Applicable Legal Standard ............................................................. 16

    B.    There is No Private Right of Action Under the Fair Foreclosure Act ..................... 17

    C.    The Proofs of Claim Fail to State a Valid Claim Against Any Debtor .................... 18

        i.    The Reeds Fail to Establish a Claim for Actual Malice Under New
                Jersey Law ........................................................................ 18

        ii.    The Reeds Had the Option of Reinstating the Loan, But Failed to
                Do So ............................................................................. 21

        iii.    The Reeds Fail to Establish a Claim for Malicious Use of Process
                Under New Jersey Law .............................................................. 22

        iv.    The Reeds Fail to Establish a Claim for Negligence ............................... 28

        v.    The Reeds Fail to Establish a Claim for Breach of Contract ....................... 30

        vi.    The Reeds Fail to Establish a Claim for Fraud ..................................... 30

        vii.    The Reeds Are Not Entitled to a Constructive Trust ............................... 33

        viii.    The Reeds Fail to Establish a Basis for Application of the Doctrine
                of Res Judicata ................................................................... 34

        ix.    The Reeds Are Not Entitled to be Made Whole Under the FRB
                Consent Order ..................................................................... 36

    D.    The Proofs of Claim Are Not Properly Asserted Against Debtor ResCap .................. 37

VI.    NOTICE ................................................................................ 38

VII.    CONCLUSION ........................................................................... 38

# TABLE OF CONTENTS
(continued)

**Page**

Exhibit 1-A:  Proof of Claim No. 3708

Exhibit 1-B:  Proof of Claim No. 3759

Exhibit 1-C:  Proof of Claim No. 4736

Exhibit 1-D:  Proof of Claim No. 4759

Exhibit 2:  Proposed Order

Exhibit 3:  Delehey Declaration

   Exhibit A:   Notice of Default Letter

   Exhibit B:   Foreclosure Complaint, dated May 19, 2008

   Exhibit C:   Answer, dated June 24, 2008

   Exhibit D:   Summary Judgment Motion, dated July 2008

   Exhibit E:   Summary Judgment Cross-Motion

   Exhibit F:   Docket for Foreclosure Action

   Exhibit G:   Order Denying Motion to Dismiss, dated July 2010

   Exhibit H:   Dismissal Order, dated February 9, 2012

   Exhibit I:   Servicing Notes[1]

---

[1]  In order to protect potentially private information, Exhibit I is only being produced to the Court, the U.S. Trustee, and Frank and Christina Reed.  The servicing notes will not be publicly filed on the docket with the other Exhibits included in the Objection.

ny-1108216

# TABLE OF AUTHORITIES

**Page(s)**

Cases

Allegheny International, Inc. v. Snyder (In re Allegheny International, Inc.),
    954 F.2d 167 (3d Cir. 1992)..........................................................................................16

Baglini v. Lauletta,
    768 A.2d 825 (N.J. Super. Ct. App. Div. 2001)..........................................................23

Braitman v. Overlook Terrace Corp.,
    346 A.2d 76 (N.J. 1975)...............................................................................................28

Chli Tital Insurance Co. v. Goldberg (In re Goldberg),
    12 B.R. 180 (Bankr. D.N.J. 1981) ...............................................................................19

Deutsche Bank National Trust Co. v. Mazzella,
    2013 WL 3984136 (N.J. Super. Ct. App. Div. Aug. 6, 2013) ......................17, 18, 21

Digiacomo v. Wal-Mart Stores Inc.,
    No. L1651–08, 2011 WL 2637189 (N.J. Super. Ct. App. Div. July 7, 2011) .........25

Eaton v. Eaton,
    575 A.2d 858 (N.J. 1990).............................................................................................28

EMC Mortgage Corp. v. Chaudhri,
    946 A.2d 578 (N.J. Super. Ct. App. Div. 2008)..........................................................24

Entegra Power Group LLC v. Dewey & Leboeuf LLP (In re Dewey & Leboeuf LLP),
    493 B.R. 421 (Bankr. S.D.N.Y. 2013)...................................................................33, 34

Feinberg v. Bank of N.Y. (In re Feinberg),
    442 B.R. 215 (Bankr. S.D.N.Y. 2010).........................................................................16

Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.),
    398 B.R. 736 (S.D.N.Y. 2008)....................................................................................31

Flanigan v. Munson,
    818 A.2d 1275 (N.J. 2003)...........................................................................................33

Gonzalez v. Wilshire Credit Corp.,
    25 A.3d 1103.................................................................................................................30

Hassoun v. Cimmino,
    126 F. Supp. 2d 353 (D.N.J. 2000) .............................................................................23

Hoffman v. Hampshire Labs, Inc.,
    963 A.2d 849 (N.J. Super. Ct. App. Div. 2009).......................................................................32

In re Adelphia Communications Corp.,
    No. 02-41729 (REG), 2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20, 2007) .................16

In re Cendant Corp. Security Litigation,
    139 F. Supp. 2d 585 (D.N.J. 2001) ........................................................................................30

In re DJK Residential LLC,
    416 B.R. 100 (Bankr. S.D.N.Y. 2009) ...................................................................................31

In re Estate of Stockdale,
    953 A.2d 454 (N.J. 2008).................................................................................................19, 21

In re Hess,
    404 B.R. 747 (Bankr. S.D.N.Y. 2009) ..............................................................................16, 17

In re Oneida Ltd.,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd. sub nom., Peter J. Solomon Co., L.P. v.
    Oneida Ltd., No. 09-CV-2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22,
    2010) ......................................................................................................................................16

In re Residential Capital, LLC, et al.,
    Case No. 12-12020 (Bankr. S.D.N.Y. Apr. 2, 2014) .............................................................35

In re Rockefeller Center Properties,
    272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Center
    Properties (In re Rockefeller Center Properties), 266 B.R. 52 (S.D.N.Y. 2001), aff'd,
    46 Fed. Appx. 40 (2d Cir. 2002) .....................................................................................16, 31

In re W.R. Grace & Co.,
    346 B.R. 672 (Bankr. D. Del. 2006) ...............................................................................16, 17

Lee v. Carter-Reed Co.,
    4 A.3d 561 (N.J. 2010)...........................................................................................................30

Levinson v. D'Alfonso & Stein,
    727 A.2d 87 (N.J. Super. Ct. App. Div. 1999)..................................................................31, 32

Miller v. Miller,
    237 N.E.2d 877 (N.Y. 1968)............................................................................................19, 22

Nolan v. First Colony Life Insurance Co.,
    784 A.2d 81 (N.J. Super. Ct. App. Div. 2001)..................................................................35, 36

Penwag Property Co. v. Landau,
    388 A.2d 1265 (N.J. 1978).....................................................................................................23

Public Service Entertainment Group, Inc. v. Philadelphia Electronic Co.,
    722 F. Supp. 184 (D.N.J. 1989) ..............................................................................30

Rappaport v. Nichols,
    156 A.2d 1 (N.J. 1959)............................................................................................28

Rego Industry v. American Modern Metals Corp.,
    221 A.2d 35 (N.J. Super. Ct. App. Div. 1966).......................................................32

Rickenbach v. Wells Fargo Bank, N.A.,
    635 F. Supp. 2d 389 (D.N.J. 2009) ..................................................................17, 21

Rivera v. Washington Mutual Bank,
    637 F. Supp. 2d 256 (D.N.J. 2009) ..................................................................17, 21

Sandler v. Lawn-a-Mat Chemical & Equipment Corp.,
    358 A.2d 805 (N.J. Super. Ct. App. Div. 1976).....................................................19

Sanyo Electronic, Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.),
    874 F.2d 88 (2d Cir. 1989)......................................................................................33

Smith v. Whitaker,
    734 A.2d 243 (N.J. 1999).........................................................................................19

Tekinsight.com, Inc. v. Stylesite Marketing, Inc. (In re Stylesite Marketing, Inc.),
    253 B.R. 503 (Bankr. S.D.N.Y. 2010).....................................................................33

Thiedemann v. Mercedes-Benz USA, L.L.C.,
    183 N.J. 234, 872 A.2d 783 (2005)..........................................................................32

Thompson v. City of Atlantic City,
    901 A.2d 428 (N.J. Super. App. Div. 2006) .....................................................33, 34

Townes v. Cove Haven, Inc.,
    No. 00-CV-5603, 2004 WL 2403467 (S.D.N.Y. Oct. 27, 2004)........................18, 22

U.S. Bank, N.A. v. Guillaume,
    38 A.3d 570.............................................................................................................24

Vanston Bondholders Protective Committee v. Green,
    329 U.S. 156, 161 (1946).........................................................................................17

Veazey v. Doremus,
    510 A.2d 1187 (N.J. 1986)...................................................................................19, 22

Video Pipeline Inc. v. Buena Vista Home Entertainment, Inc.,
    210 F. Supp. 2d 552 (D.N.J. 2002) .........................................................................30

Wartsila NSD North America, Inc. v. Hill International, Inc.,
  342 F. Supp. 2d 267 (D.N.J. 2004) ...................................................................28, 29

Watkins v. Resorts International Hotel and Casino, Inc.,
  591 A.2d 592 (N.J. 1991)..........................................................................................35

Whittingham v. Mortgage Electronic Registration Services, Inc.,
  No. 06-3016, 2007 WL 1456196 (D.N.J. May 15, 2007)........................................23

Zebrowski v. Wells Fargo Bank, N.A.,
  657 F. Supp. 2d 511 (D.N.J. 2009) ..........................................................................22

Ziemba v. Cascade International, Inc.,
  256 F.3d 1194 (11th Cir. 2001) ...............................................................................31

**STATUTES**

11 U.S.C. § 502(a) ..........................................................................................................16

11 U.S.C. § 502(b)(1) ...............................................................................................16, 37

N.J.S.A. 2A:15-5.13(b) ...................................................................................................19

N.J.S.A. 2A:15-5.12(a) ...................................................................................................19

N.J.S.A. 2A:50-56(a) .................................................................................................23, 24

N.J.S.A. 2A:50-57(a) .................................................................................................21, 29

N.J.S.A. 56:8-2................................................................................................................30, 31

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 3007 ...............................................................................................1, 3, 16

Fed. R. Bankr. P. 7008................................................................................................3, 16

Fed. R. Bankr. P. 7009 ...................................................................................................31

Fed. R. Civ. P. 8 .............................................................................................................31

Fed. R. Civ. P. 9 .............................................................................................................31

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "Borrower Trust") established pursuant to the terms of the confirmed Plan (defined below) filed in the above-captioned Chapter 11 cases (the "Chapter 11 Cases"),[1] as successor in interest to the above-captioned debtors (collectively, the "Debtors") with respect to Borrower Claims (as defined in the Plan), by and through its undersigned counsel, hereby files this objection (the "Objection") seeking to disallow and expunge proofs of claim 3708 and 4759 against Residential Capital, LLC ("ResCap") (together, the "ResCap Proofs of Claim"), and proofs of claim 3759 and 4736 against GMAC Mortgage, LLC ("GMACM") (together, the "GMACM Proofs of Claim" and, collectively with the ResCap Proofs of Claim, the "Proofs of Claim," copies of which are annexed hereto as Exhibits 1-A, 1-B, 1-C, and 1-D respectively), each filed by Frank Reed or Christina Reed[2] pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") on the grounds that (a) the Proofs of Claim fail to state a basis for liability against the Debtors and (b) the ResCap Proofs of Claim are not properly asserted against ResCap.[3]  The Borrower Trust seeks the entry of an order, substantially in the form annexed hereto as Exhibit 2, granting the requested relief.  In support of the Objection, the Borrower Trust relies upon and incorporates by reference the Declaration of Lauren Graham Delehey, Chief Litigation Counsel to the ResCap Liquidating

---

[1]    Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 Cases or the relief requested in this Objection may refer to http://www.kccllc.net/rescap for additional information.

[2]    Mr. Reed filed proof of claim 3708 against ResCap and proof of claim 3759 against GMACM.  Ms. Reed filed proof of claim 4736 against GMACM and proof of claim 4759 against ResCap.

[3]    The Borrower Trust reserves all rights to object on any other basis to the Proofs of Claim not set forth in this Objection, and the Borrower Trust reserves all rights to amend this Objection should any further bases come to light.

Trust (the "Delehey Declaration"), annexed hereto as Exhibit 3.   In further support of the

Objection, the Borrower Trust respectfully represents as follows:

## I.   PRELIMINARY STATEMENT

1.      The Proofs of Claim filed by the Reeds, each of which alleges claims of

$2,953,000.00 against ResCap and claims of $2,953,000.00 against GMACM, should be

disallowed and expunged with prejudice pursuant to section 502(b) of the Bankruptcy Code on

the grounds that the Reeds fail to state a valid claim against any of the Debtors under applicable

law.

2.      As discussed in detail below, the Proofs of Claim are based on claims

arising from two related prepetition lawsuits filed in the New Jersey state courts – a foreclosure

action and a lawsuit stemming from the foreclosure – and include claims alleging that the Debtors

acted with actual malice and/or negligence and engaged in fraud and misrepresentation in

pursuing a foreclosure action against the Reeds' property based on the Reeds' failure to make a

series of mortgage payments.   Despite the Reeds' attempt to characterize the Proofs of Claim as

valid and substantiated, a methodical examination of the merits of each of the claims from the

underlying litigation demonstrates that these claims all fail as a matter of law, and the damages

asserted on account of such claims are purely speculative.

3.      Specifically, the Reeds' attempt to describe the foreclosure action filed

against them as "wrongful" since GMACM could not show that it satisfied the Fair Foreclosure

Act's (the "FFA") pre-foreclosure requirement of serving a Notice of Intent to Foreclose ("NOI").

However, the Reeds conveniently omit a critical fact, which establishes that the foreclosure had a

sound legal basis, even if GMACM could not demonstrate compliance with the FFA:  the Reeds

defaulted on their loan by not making the requisite payments.   As such, the foreclosure was, in

fact, proper and reasonable, despite any technical noncompliance, and as a result, none of the Reeds' claims regarding the allegedly "improper" foreclosure action have merit.

4.      Furthermore, the Reeds also conveniently ignore a second critical fact regarding their alleged damages.  In particular – and indisputably – they could have reinstated the loan at any point before entry of the Final Judgment for Foreclosure.  Thus, the Reeds have no valid damages based on a theory that GMACM did not serve an NOI apprising them of their right to cure because the Reeds still could have exercised the reinstatement at any time.

5.      In sum, the Proofs of Claim are without merit and fail to articulate a valid legal basis that would give rise to liability on the part of any Debtor.  Further, the Reeds improperly assert claims against ResCap because such entity was not a party to the underlying state court litigation, and there is no independent basis for its liability.  Accordingly, the Proofs of Claim should be disallowed and expunged from the Claims Register (defined below) in their entirety.

## II.      JURISDICTION, VENUE, AND STATUTORY PREDICATE

6.      This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Bankruptcy Code section 502(b) and Bankruptcy Rule 3007.

## III.      BACKGROUND

### A.      Chapter 11 Cases Background

7.      On May 14, 2012, each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

-3-

8.      On May 16, 2012, the Court entered an order [Docket No. 96] appointing

Kurtzman Carson Consultants LLC ("KCC") as the noticing and claims agent in these Chapter 11

Cases.  Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise

administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims

register for the Debtors (the "Claims Register").

9.      On August 29, 2012, this Court entered an order approving the Debtors'

motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No.

1309] (the "Bar Date Order").[4]

10.     On December 11, 2013, the Court entered the *Order Confirming Second

Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official

Committee of Unsecured Creditors* [Docket No. 6065] (the "Confirmation Order") approving the

terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases.  On

December 17, 2013, the Effective Date (as such term is defined in the Plan) of the Plan occurred,

and, among other things, the Borrower Trust was established [Docket No. 6137].

11.     The Plan provides for the creation and implementation of the Borrower

Trust, which is established for the benefit of Borrowers[5] who filed Borrower Claims to the extent

such claims are ultimately allowed either through settlement with the Trustee for the Borrower

Trust or pursuant to an Order of the Court.  See Plan, at Art. IV.F.  The Borrower Trust was

established to, among other things, "(i) direct the processing, liquidation and payment of the

---

[4]    The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern
       Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar
       Date") and prescribing the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m.
       (Prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "Governmental
       Bar Date").  Bar Date Order ¶¶ 2, 3.  On November 7, 2012, the Court entered an order extending the General
       Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093].  The Governmental
       Bar Date was not extended.

[5]    As used herein, the term "Borrower" means an individual whose current or former mortgage loan was
       originated, serviced, sold, consolidated, or owned by any of the Debtors.  See Plan, at Art. I.A.38.

-4-

Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying Allowed Borrower Claims."  See id.

**B.      The FRB Consent Order**

12.      Prior to the Petition Date, several of the Debtors and their affiliates were the subjects of an examination by the Board of Governors of the Federal Reserve System (the "FRB"), the Federal Deposit Insurance Corporation (the "FDIC"), the Office of the Comptroller of the Currency (the "OCC"), and the Office of Thrift Supervision (together with the FRB, the FDIC and the OCC, the "Consent Order Regulators").   The Consent Order Regulators were investigating alleged abuses in the foreclosure processes employed by companies with major mortgage servicing operations, including the Debtors.  In order to avoid further disruption to the Debtors' businesses as a result of the examination, and to avoid potentially lengthy litigation, Debtors ResCap and GMACM (together, the "Consent Order Debtors"), along with non-debtor affiliates Ally Financial Inc. ("AFI") and Ally Bank, entered into a consent order with the FRB and the FDIC (the "FRB Consent Order"), dated April 13, 2011, a copy of which is attached to the Proofs of Claim as "Exhibit N."

13.      Without admitting fault, the Consent Order Debtors, AFI, and Ally Bank agreed, pursuant to the FRB Consent Order, to develop and implement certain risk management and corporate governance procedures under the guidance of the FRB in order to ensure prospective compliance with applicable foreclosure-related regulations and laws.  See generally, FRB Consent Order; see also Delehey Declaration at ¶ 7.  Pursuant to the FRB Consent Order, the parties were required to undertake a risk assessment of their mortgage servicing operations and were responsible for making improvements to various aspects of their residential mortgage loan servicing business, including, among other things, compliance programs, internal audit,

-5-

communications with Borrowers, vendor management, management information systems, employee training, and oversight by the boards of directors of ResCap and GMACM. See id. Additionally, pursuant to the FRB Consent Order, GMACM agreed to pay for an extensive, independent file review regarding certain residential foreclosure actions and foreclosure sales prosecuted by the Debtors (the "FRB Foreclosure Review"), and to prepare and submit a detailed report regarding the results of that review. See FRB Consent Order, ¶¶ 3-4; see also Delehey Declaration at ¶ 7. The FRB Consent Order further required that the Debtors remediate any financial harm to borrowers resulting from errors or misrepresentation of the Debtors that the FRB Foreclosure Review uncovers. See FRB Consent Order, ¶ 3(c); see also Delehey Declaration at ¶ 7.

14.    Pursuant to the FRB Foreclosure Review requirement, GMACM must "retain one or more independent consultant(s) acceptable to the [Federal] Reserve Bank [of Chicago] to conduct an independent review" of residential mortgage foreclosure actions prosecuted during the period from January 1, 2009 to December 31, 2010 (the "Consent Order Review Period"), as well as foreclosure sales pending or completed during the Consent Order Review Period. See FRB Consent Order, ¶ 3(a); see also Delehey Declaration at ¶ 8. The independent consultant is required to review, among other things, whether: (i) the Debtors had properly documented ownership of the promissory note and mortgage (or deed of trust) at the time they initiated a foreclosure; (ii) the foreclosure complied with state and federal law, including the Servicemembers Civil Relief Act; (iii) the procedures followed with respect to non-judicial foreclosures were in accordance with the terms of the mortgage loan and state law; (iv) the foreclosure occurred when the Borrower had a loan modification request under consideration or while the loan was performing under a trial or permanent loan modification; (v) impermissible

charges were applied to the Borrower's account; and (vi) any errors or omissions were identified

by the independent consultant that resulted in financial injury to the Borrower or owner of a loan.

See FRB Consent Order, ¶ 3(a)(i)-(vii); see also Delehey Declaration at ¶ 8.

15.     In early 2013, the Consent Order Regulators began entering into

settlements with various Consent Order parties and, in June 2013, a term sheet was executed

among the FRB, ResCap and GMAC Mortgage suspending the FRB Foreclosure Review and the

Debtors escrowed $230 million as their anticipated settlement amount.  See Delehey Declaration

at ¶ 9.    Following execution of the term sheet, the Debtors' independent consultant,

PricewaterhouseCoopers ("PwC"), conducted a review as to the population of borrowers who

may have been eligible to receive payments from the settlement fund as designed, and then

provided an initial "IFR Waterfall" to the FRB.  See id.  The settlement was designed to halt all

individual foreclosure file reviews and, instead, provide a payment of some amount, with no

determination having been made of actual harm, to each borrower in the final population, i.e., all

borrowers being serviced by the Debtors who had been subject to residential mortgage foreclosure

actions or proceedings, including residential foreclosure sales, that were pending or occurred at

any time during the Consent Order Review Period (the "Eligible Population").  See id.

16.     A formal amendment to the Consent Order was executed on July 26, 2013

and the previously escrowed funds were moved into a settlement fund outside the Debtors'

control (the "Settlement Fund").  See Delehey Declaration at ¶ 10.  Subsequent to that date, the

Debtors provided data from its loan servicing system to an independent consultant and the FRB to

finalize the IFR Waterfall, with the independent consultant and the FRB verifying the eligibility

and placement of all the borrowers into the IFR Waterfall.  See id.  Once that was completed, the

Debtors provided to Rust Consulting, Inc., as paying agent for the settlement, the specific

-7-

borrower placement information on November 21, 2013 and the placement of borrowers into the IFR Waterfall was deemed final.  See id.  The paying agent is now in process of distributing the funds in the Settlement Fund to borrowers in accordance with a distribution plan implemented by the FRB.  See id.

17.    The payment that the Reeds received in respect of the FRB settlement does not indicate or represent any determination or acknowledgement by the Debtors that claims made by the Reeds have any merit or that they suffered any harm at the hands of the Debtors.  See Delehey Declaration at ¶ 11.  The Reeds were included in the FRB settlement population because they were subject to a foreclosure proceeding during the Consent Order Review Period.  See id.

18.    As set forth in Article IV of the Plan, through the Effective Date, the Debtors were required to perform certain regulatory obligations, including "satisfying the settlement of the foreclosure review obligations under the [FRB] Consent Order, fulfilling all specific performance obligations, and satisfying all monetary obligations in full in Cash" with the exception of certain obligations carved out by the Ocwen APA (as such term is defined in the Plan).  See Plan, at Art. IV.B(e).[6]  The Plan goes on to provide that, on and subsequent to the Effective Date, the Liquidating Trust shall assume these rights and perform these obligations.  See id.  If a Borrower Claim constitutes, in whole or in part, a Consent Order Borrower Claim (as such term is defined in the Plan), the allowed amount of such Borrower Claim shall be reduced to the extent paid pursuant to the FRB Consent Order or any settlement of the Debtors' obligations thereunder, without further order of the Court.  See Plan, at Art. IV.F.6.

19.    The Debtors' role in the FRB Foreclosure Review settlement was limited to providing servicing system data to the independent consultant with respect to the Borrowers

---

[6]    The settlement referred to in that Plan provision is the settlement described in paragraph 15 above.

who, given the time period in which their foreclosure actions were pending, may have been eligible to be included in one of the various "potential harm" categories in the IFR Waterfall.  See Delehey Declaration at ¶ 12.  After the Debtors provided that data, the independent consultant and the FRB finalized the Eligible Population and the placement of each eligible Borrower in the IFR Waterfall potential harm categories.  See id.  The FRB then determined payment amounts for each such category.  See id.  The Reeds were determined to be eligible to receive $500 as a settlement payment, the lowest payout provided for in the IFR Waterfall.  See id.  Rust Consulting, Inc. distributed the remediation settlement payment to the Reeds on January 27, 2014.[7]  See id.

### C.    The New Jersey Litigation

20.    The Reeds are Borrowers under a loan (the "Reed Loan") evidenced by a note in the principal amount of $1,000,000.00 executed on May 31, 2006, in favor of Metrocities Mortgage, LLC, which is secured by a mortgage on real property located at 817 Matlack Drive, Moorestown, New Jersey.  See Delehey Declaration at ¶ 14.  GMACM began servicing the mortgage loan on June 27, 2006, but at no time did GMACM own the loan at issue.  See id. GMACM continued servicing the loan until the servicing transferred to Ocwen Loan Servicing, LLC ("Ocwen") on February 15, 2013.  See id.  Ocwen subsequently transferred servicing to 21st Mortgage Corp. on October 1, 2013.  See id.  Residential Funding Company, LLC ("RFC") acquired the loan on December 30, 2009, and transferred ownership of the loan to 21st Century Mortgage Corp. on February 6, 2013.  See id.

21.    In February 2008, the Reeds defaulted under the Reed Loan based upon their failure to timely make payments.  See Delehey Declaration at ¶ 15.  GMACM, prior to

---

[7]    The settlement payments were first issued on January 27, 2014.  The lowest amount of such payments is $500, and the Reeds' placement in that IFR Waterfall category means that there was no indication of even potential harm suffered by the Reeds that would have placed them into a higher payout category.  See Delehey Declaration at ¶ 12, n.3.

mailing the NOI, sent the Reeds at least one letter notifying them that their mortgage payments were delinquent and remained due and owing.  <u>See, e.g.</u>, Notice of Default Letter, annexed to the Delehey Declaration as <u>Exhibit A</u>.  <u>See also</u> <u>Delehey Declaration</u> at ¶ 15.  On May 19, 2008, GMACM filed a foreclosure complaint (the "<u>Foreclosure Complaint</u>") against the Reeds (the "<u>Foreclosure Action</u>") in the Superior Court of New Jersey, Chancery Division (the "<u>Chancery Division Court</u>").  <u>See</u> Foreclosure Complaint, a copy of which is annexed to the Delehey Declaration as <u>Exhibit B</u>.  The Reeds filed an answer (the "<u>Answer</u>") to the Foreclosure Complaint on June 24, 2008.  <u>See</u> Answer, a copy of which is annexed to the Delehey Declaration as <u>Exhibit C</u>.

22.     In July 2008, GMACM filed a motion for summary judgment (the "<u>Summary Judgment Motion</u>") in the Foreclosure Action seeking (i) to strike the Answer, (ii) entry of a default and (iii) transfer of the Foreclosure Action to the foreclosure unit.  <u>See</u> Delehey Declaration at ¶ 16; <u>see also</u> Summary Judgment Motion, a copy of which is annexed to the Delehey Declaration as <u>Exhibit D</u>.  In response, the Reeds filed a cross-motion for summary judgment (the "<u>Summary Judgment Cross-Motion</u>") seeking the dismissal of the Foreclosure Complaint for failure to provide a proper notice of intent ("<u>NOI</u>") as required under the New Jersey Fair Foreclosure Act ("<u>FFA</u>").  <u>See</u> Delehey Declaration at ¶ 16; <u>see also</u> Summary Judgment Cross-Motion, a copy of which is annexed to the Delehey Declaration as <u>Exhibit E</u>.  On February 9, 2009, the Chancery Division Court denied the Summary Judgment Motion and granted the Summary Judgment Cross-Motion (the "<u>Order Granting Cross-Motion</u>"), a copy of the Order Granting Cross-Motion is attached to the Proofs of Claim as "Exhibit A."  <u>See</u> Delehey Declaration at ¶ 17.  Specifically, the Chancery Division Court determined that the Foreclosure Complaint should be dismissed without prejudice because GMACM could not prove that it

-10-

delivered a NOI in accordance with N.J.S.A. 2A:50-56.  See id.; see also Order Granting Cross-Motion.  The docket for the Foreclosure Action, a copy of which is annexed to the Delehey Declaration as Exhibit F, reflects that this matter was not dismissed until August 9, 2013.

23.    On May 10, 2010, the Reeds filed a separate complaint (the "Reed Complaint") against GMACM, Residential Funding Corp.,[8] and unnamed defendants who allegedly were employees or agents of the other two defendants (the "Reed Action") in the Superior Court of New Jersey, Law Division (the "Law Division Court").  See Reed Complaint, a copy of which is attached to the Proofs of Claim as "Exhibit D."  See also Delehey Declaration at ¶ 18.  The claims asserted against GMACM in the Reed Action are predicated on the Foreclosure Action and GMACM's alleged failure to comply with NOI requirements of the FFA; however, the Reeds' claims did not address the merits of the Foreclosure Action.  See id.  Specifically, the Reeds asserted claims against GMACM for negligence, breach of contract, and estoppel.  See id. GMACM filed a motion to dismiss (the "Motion to Dismiss") the Reed Complaint, which the Law Division Court denied in July 2010 (the "Order Denying the Motion to Dismiss").  See Order Denying Motion to Dismiss, a copy of which is annexed to the Delehey Declaration as Exhibit G.

24.    The Reeds were permitted to amend the Reed Complaint, and on January 6, 2012, the Reeds filed an amended complaint (the "Amended Reed Complaint," a copy of which is attached to the Proofs of Claim as "Exhibit E").  See Delehey Declaration at ¶ 12.  In addition to the claims set forth in the Reed Complaint, the Amended Reed Complaint added purported claims for economic and non-economic losses stemming from the Foreclosure Action, punitive damages and consumer fraud.  See id.; see generally, Amended Reed Complaint.

---

[8]    Residential Funding Corp. is now known as Residential Funding Company, LLC, a Debtor entity.

25.    In early 2012, the Reeds sought entry of an order staying the Reed Action to allow time for participation in the Independent Foreclosure Review or, in the alternative, entry of an order granting leave to voluntarily dismiss the Reed Action without prejudice (the "Motion to Stay or Dismiss").  See Delehey Declaration at ¶ 13; see also Dismissal Order (defined below), a copy of which is annexed to the Delehey Declaration as Exhibit H.  On February 9, 2012, the Law Division Court entered an order (the "Dismissal Order") granting the Reeds leave to voluntarily dismiss the Reed Action without prejudice.  See id.

### D.    The Proofs of Claim

#### i.    *Proofs of Claim Numbers 3708 and 3759*

26.    On November 8, 2012, Mr. Reed filed proof of claim 3708 against ResCap and proof of claim 3759 against GMACM, asserting in each submission claims based on alleged "Negligence – Unjust Enrichment – Constructive Trust" in the amount of $2,953,000.00.  See Exhibit 1-A and Exhibit 1-B, annexed hereto.  Of the asserted $2,953,000.00, Mr. Reed claims that $1,650,000.00 is purportedly secured because that is the value he attributes to his property.  In addition, Mr. Reed claims that the remaining $1,303,000.00 is both unsecured and should be afforded priority status pursuant to section 507(a)(3) of the Bankruptcy Code.  Proofs of claim 3708 and 3759 each attach the following:[9]

- Certification of Creditor in Support of its Secured and Priority Claims Listed in Creditor's Proof of Claim;

- Order Granting Summary Judgment to Strike Defendant's Answer, to Enter Default and Transfer Case to the Foreclosure Unit (see "Exhibit A" to Exhibit 1-A and Exhibit 1-B);

- Letter from Frank Reed to Robert E. Curley, III Re: Declination of Cash out Refinance on 817 Matlack Drive, Moorestown, NJ 08057 (see "Exhibit B" to Exhibit 1-A and Exhibit 1-B);

---

[9]    The Borrower Trust reserves its right to challenge the admissibility of the attachments to the proofs of claim numbered 3708 and 3759 under the Federal Rules of Evidence.

- Fax from Thomas Tartamosa to Frank Reed regarding verification of Loan Officer  (see "Exhibit C" to Exhibit 1-A and Exhibit 1-B);

- Reed v. GMAC Mortgage LLC *et al*., Complaint and Demand for Jury Trial filed in the Superior Court of New Jersey, Burlington County (L-1526-10) (see "Exhibit D" to Exhibit 1-A and Exhibit 1-B);

- Reed v. GMAC Mortgage LLC *et al*., Amended Complaint filed in the Superior Court of New Jersey, Burlington County (L-1526-10) (see "Exhibit E" to Exhibit 1-A and Exhibit 1-B);

- Letter from BT Edgar & Son Realtors dated June 25, 2012, Re: Below Market Offer – Reed Home – 817 Matlack Drive, Moorestown, NJ 08057 (see "Exhibit F" to Exhibit 1-A and Exhibit 1-B);

- Letter from BT Edgar & Son Realtors dated July 2, 2012, Re: Below Market Offers – Reed Home – 817 Matlack Drive Moorestown, NJ 08057 (see "Exhibit G" to Exhibit 1-A and Exhibit 1-B);

- Letter from Long and Foster Real Estate dated June 20, 2012, Re: Lost Sale Profit for 9717 Old Dell Trace Richmond, Virginia 23238 (see "Exhibit H" to Exhibit 1-A and Exhibit 1-B);

- Plaintiff's Expert Witness Report of Evan Hendricks (see "Exhibit I" to Exhibit 1-A and Exhibit 1-B);

- Letter from Oxford House, Inc. dated July 10, 2012, Re: Frank Reed's Oxford House Rental Properties (see "Exhibit J" to Exhibit 1-A and Exhibit 1-B;

- Reed v. GMAC Mortgage LLC, Civil Motion Calendar Case Detail (see "Exhibit K" to Exhibit 1-A and Exhibit 1-B);

- Reed v. GMAC Mortgage LLC *et al*., Brief in Opposition to Defendants' Motion to Dismiss filed in the Superior Court of New Jersey, Burlington County (L-1526-10) (see "Exhibit L" to Exhibit 1-A and Exhibit 1-B);

- Interagency Review of Foreclosure Policies and Practices (see "Exhibit M" to Exhibit 1-A and Exhibit 1-B);

- United State of America before the Board of Governors of the Federal Reserve System and the Federal Deposit Insurance Corporation, Consent Order (FRB Docket Nos. 11-020-B-HC, 11-020-B-DEO, FDIC-1A23b) (see "Exhibit N" to Exhibit 1-A and Exhibit 1-B); and

- Excerpt from Testimony of Julie L. Williams, First Senior Deputy Comptroller and Chief Counsel, Office of the Comptroller of the Currency before the Subcommittee on Housing, Transportation, and Community Development of the Committee on Banking, Housing,

and Urban Affairs, United States Senate, dated December 13, 2011 (see "Exhibit O" to Exhibit 1-A and Exhibit 1-B).

> ii.      *Proofs of Claim Numbers 4736 and 4759*

27.      On November 14, 2012, Ms. Reed filed proof of claim 4736 against GMACM and proof of claim 4759 against ResCap, asserting in each submission claims based on alleged "Unjust Enrichment / Constructive Trust – Negligence" in the amount of $2,953,000.00. See Exhibit 1-C and Exhibit 1-D, annexed hereto.  Of the asserted $2,953,000.00, Ms. Reed claims that $1,650,000.00 is purportedly secured because that is the value she attributes to her property.  In addition, Ms. Reed claims that the remaining $1,303,000.00 is both unsecured and should be afforded priority status pursuant to section 507(a)(3) of the Bankruptcy Code.  Proofs of claim 4736 and 4759 each attach the following:[10]

- Certification of Creditor in Support of its Secured and Priority Claims Listed in Creditor's Proof of Claim;

- Order Granting Summary Judgment to Strike Defendant's Answer, to Enter Default and Transfer Case to the Foreclosure Unit (see "Exhibit A" to Exhibit 1-C and Exhibit 1-D);

- Letter from Frank Reed to Robert E. Curley, III Re: Declination of Cash out Refinance on 817 Matlack Drive, Moorestown, NJ 08057 (see "Exhibit B" to Exhibit 1-C and Exhibit 1-D);

- Fax from Thomas Tartamosa to Frank Reed regarding verification of Loan Officer  (see "Exhibit C" to Exhibit 1-C and Exhibit 1-D);

- Reed v. GMAC Mortgage LLC *et al*., Complaint and Demand for Jury Trial filed in the Superior Court of New Jersey, Burlington County (L-1526-10) (see "Exhibit D" to Exhibit 1-C and Exhibit 1-D);

- Reed v. GMAC Mortgage LLC *et al*., Amended Complaint filed in the Superior Court of New Jersey, Burlington County (L-1526-10) (see "Exhibit E" to Exhibit 1-C and Exhibit 1-D);

---

[10]     The Borrower Trust reserves its right to challenge the admissibility of the attachments to the proofs of claim numbered 4736 and 4759 under the Federal Rules of Evidence.

-14-

- Letter from BT Edgar & Son Realtors dated June 25, 2012, Re: Below Market Offer – Reed Home – 817 Matlack Drive, Moorestown, NJ 08057 (see "Exhibit F" to Exhibit 1-C and Exhibit 1-D);

- Letter from BT Edgar & Son Realtors dated July 2, 2012, Re: Below Market Offers – Reed Home – 817 Matlack Drive Moorestown, NJ 08057 (see "Exhibit G" to Exhibit 1-C and Exhibit 1-D);

- Letter from Long and Foster Real Estate dated June 20, 2012, Re: Lost Sale Profit for 9717 Old Dell Trace Richmond, Virginia 23238 (see "Exhibit H" to Exhibit 1-C and Exhibit 1-D);

- Plaintiff's Expert Witness Report of Evan Hendricks (see "Exhibit I" to Exhibit 1-C and Exhibit 1-D);

- Letter from Oxford House, Inc. dated July 10, 2012, Re: Frank Reed's Oxford House Rental Properties (see "Exhibit J" to Exhibit 1-C and Exhibit 1-D);

- Reed v. GMAC Mortgage LLC, Civil Motion Calendar Case Detail (see "Exhibit K" to Exhibit 1-C and Exhibit 1-D);

- Reed v. GMAC Mortgage LLC et al., Brief in Opposition to Defendants' Motion to Dismiss filed in the Superior Court of New Jersey, Burlington County (L-1526-10) (see "Exhibit L" to Exhibit 1-C and Exhibit 1-D);

- Interagency Review of Foreclosure Policies and Practices (see "Exhibit M" to Exhibit 1-C and Exhibit 1-D);

- United State of America before the Board of Governors of the Federal Reserve System and the Federal Deposit Insurance Corporation, Consent Order (FRB Docket Nos. 11-020-B-HC, 11-020-B-DEO, FDIC-1A23b) (see "Exhibit N" to Exhibit 1-C and Exhibit 1-D); and

- Excerpt from Testimony of Julie L. Williams, First Senior Deputy Comptroller and Chief Counsel, Office of the Comptroller of the Currency before the Subcommittee on Housing, Transportation, and Community Development of the Committee on Banking, Housing, and Urban Affairs, United States Senate, dated December 13, 2011 (see "Exhibit O" to Exhibit 1-C and Exhibit 1-D).

## IV.    RELIEF REQUESTED

28.    The Borrower Trust hereby files this Objection pursuant to section 502(b)

of the Bankruptcy Code and Bankruptcy Rule 3007, and seeks the entry of an order, substantially

in the form annexed hereto as <u>Exhibit 2</u>, disallowing and expunging the Proofs of Claim from the Claims Register.

## V.    OBJECTION

### A.    Applicable Legal Standard

29.    A filed proof of claim is "deemed allowed, unless a party in interest . . . objects."   11 U.S.C. § 502(a).   If an objection refuting at least one of the claim's essential allegations is asserted, the claimants have the burden to demonstrate the validity of the claim. <u>See</u> <u>In re Oneida Ltd.</u>, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), <u>aff'd. sub nom.</u>, <u>Peter J. Solomon</u> <u>Co., L.P. v. Oneida Ltd.</u>, No. 09-CV-2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); <u>In re Adelphia Commc'ns Corp.</u>, No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); <u>In re Rockefeller Ctr. Props.</u>, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), <u>aff'd sub nom.</u>, <u>NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props.)</u>, 266 B.R. 52 (S.D.N.Y. 2001), <u>aff'd</u>, 46 Fed. Appx. 40 (2d Cir. 2002).   The burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor. <u>Allegheny Int'l,</u> <u>Inc. v. Snyder</u> (<u>In re Allegheny Int'l, Inc.</u>), 954 F.2d 167, 173-74 (3d Cir. 1992); <u>see also</u> <u>Feinberg v. Bank of N.Y. (In re Feinberg)</u>, 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010) (stating the claimant "bears the burden of persuasion as to the allowance of [its] claim.").

30.    Further, Bankruptcy Code section 502(b)(1) provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law. . . ."   11 U.S.C. § 502(b)(1). Whether a claim is allowable "generally is determined by applicable nonbankruptcy law."   <u>In re</u> <u>W.R. Grace & Co.</u>, 346 B.R. 672, 674 (Bankr. D. Del. 2006).   "What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law."   <u>In re</u>

Hess, 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009) (quoting Vanston Bondholders Protective

Comm. v. Green, 329 U.S. 156, 161 (1946)).

31.    The Borrower Trust objects to the Proofs of Claim on the basis that, after

reviewing the Debtors' books and records and the supporting documentation attached to the

Proofs of Claim, (a) the Proofs of Claim fail to state a valid claim against the Debtors, and (b) the

ResCap Proofs of Claim are not properly asserted against ResCap.   For the reasons set forth

below, each of the Proofs of Claim fail to state a claim against any of the Debtors under

applicable law and should be disallowed and expunged in its entirety from the Claims Register.

**B.      There is No Private Right of Action Under the Fair Foreclosure Act**

32.    The Reeds' claims are predicated on allegations that GMACM initiated

the Foreclosure Action without first complying with the FFA's requirement of sending out an

NOI.   To the extent that the Reeds' claims seek damages arising from GMACM's alleged

noncompliance with the FFA, such claims fail as a matter of law.

33.    Courts have consistently stated that "there is no private right of action

under the Fair Foreclosure Act." Rickenbach v. Wells Fargo Bank, N.A., 635 F. Supp. 2d 389,

399 (D.N.J. 2009); see also Rivera v. Wash. Mut. Bank, 637 F. Supp. 2d 256, 266 n.19 (D.N.J.

2009) ("[T]he Fair Foreclosure Act claim must be dismissed because the Act creates no private

right of action.").   More specifically, the Superior Court of New Jersey, Appellate Division

recently reached this conclusion in Deutsche Bank Nat'l Trust Co. v. Mazzella, 2013 WL

3984136 (N.J. Super. Ct. App. Div. Aug. 6, 2013).   In Mazzella, like here, the plaintiff alleged

that the defendant had violated the FFA by instituting foreclosure proceedings without first

complying with the FFA's NOI requirements.   The trial court dismissed this FFA claim with

prejudice, and the Appellate Division affirmed, stating, "we agree with [defendant] that there is

-17-

nothing in the FFA or the Court's construction of the statute that hints at a cause of action for damages." Id., at *5.

34.    Since the FFA does not provide a private right of action, all of the Reeds' claims fail as a matter of law.

### C.    The Proofs of Claim Fail to State a Valid Claim Against Any Debtor

#### i.    *The Reeds Fail to Establish a Claim for Actual Malice Under New Jersey Law*

35.    The Reeds seek an award of punitive damages, in an unspecified amount,[11] based on assertions that GMACM's alleged failure to file the foreclosure action without first complying with the FFA was actuated by actual malice and/or accompanied by a wanton and willful disregard of the injuries that may be suffered by the Reeds.  See Proofs of Claims at "Exhibit E."  However, there is no basis for such claim or the award of punitive damages because the Debtors, at all times, acted in good faith (not with malice), with the intent of complying with the pre-foreclosure notice requirements.

36.    Under either a New York or New Jersey choice of law analysis, New Jersey law should dictate whether the Reeds can obtain punitive damages because the Reeds reside in New Jersey and all of the facts underlying their claims (*i.e.*, the Foreclosure Action) occurred in New Jersey.  Townes v. Cove Haven, Inc., No. 00-CV-5603, 2004 WL 2403467, at *2 (S.D.N.Y. Oct. 27, 2004) (explaining that, "under New York law, courts should apply the 'law of the jurisdiction having the greatest interest in the litigation . . . and . . . the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the

---

[11]    The Borrower Trust can only speculate that the Reeds, for each Proof of Claim, seek $1,303,000.00 as part of these "punitive damages" since this is the amount that is not secured by their purported valuation of their property.  Given that no figure has been actually designated as the amount of these punitive damages, the amount remains uncertain.

ny-1108216

particular law in conflict . . . Pennsylvania law governs whether Plaintiff can recover punitive damages because Pennsylvania was the place of the alleged tort.") (quoting <u>Miller v. Miller</u>, 237 N.E.2d 877, 879 (N.Y. 1968)); <u>Veazey v. Doremus</u>, 510 A.2d 1187, 1189 (N.J. 1986) ("Under that [choice of law] analysis, the determinative law is that of the state with the greatest interest in governing the particular issue.").

37.    Under New Jersey law, actual malice "is nothing more or less than intentional wrongdoing, an evil minded act or an act accompanied by a wanton and willful disregard of the rights of another." <u>Chli Tital Ins. Co. v. Goldberg</u> (<u>In re Goldberg</u>), 12 B.R. 180, 185 (Bankr. D.N.J. 1981) (citing <u>Sandler v. Lawn-a-Mat Chem. & Equip. Corp.</u>, 358 A.2d 805 (N.J. Super. Ct. App. Div. 1976). Moreover, under New Jersey law, punitive damages may be awarded only if the Reeds prove, by clear and convincing evidence, that the harm suffered was the result of GMACM's acts or omissions, and "that such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." <u>N.J.S.A.</u> 2A:15-5.12(a). Furthermore, to obtain punitive damages, the Reeds must first obtain an award of compensatory damages. <u>In re Estate of Stockdale</u>, 953 A.2d 454, (N.J. 2008) ("Therefore, as in all punitive awards, the requirements [include] that . . . there be an award of compensatory damages.") (citing <u>N.J.S.A.</u> 2A:15–5.13(b)); <u>Smith v. Whitaker</u>, 734 A.2d 243, 253 (N.J. 1999) ("[C]ompensatory damages [are] a statutory predicate for an award of punitive damages . . .").

38.    Here, the Reeds have not established a claim for malice or punitive damages. As GMACM explained in the Foreclosure Action, an NOI was, in fact, sent, but GMACM was unable to locate the NOI or the certified mail receipt. <u>See</u> Proofs of Claim at "Exhibit A." <u>See also</u> Delehey Declaration at ¶ 15. Further, GMACM attempted to correct any

noncompliance with the FFA by serving another NOI during the Foreclosure Action, but at the time, the Chancery Division Court did not approve this remedy. See Proofs of Claim at "Exhibit A." Thus, GMACM attempted, in good faith, to comply with the FFA. Moreover, despite any inadvertent noncompliance with the FFA's notice requirements, GMACM certainly had a good faith basis for filing the foreclosure because Mr. Reed had defaulted under the terms of the Reed Loan and remained delinquent for several months. See Delehey Declaration at ¶ 15. Accordingly, the Reeds have not established actual malice because there is no evidence that, out of malice or in willful disregard of its statutory obligations, GMACM filed the Foreclosure Action without complying with the FFA.

39.    Furthermore, the Reeds have provided no evidence that GMACM deceived them to believe that their "only option was to remit the entire principal balance and interest" [on their mortgage], which at that time was over $1,000,000." See Amended Reed Complaint, ¶ 5. The only business records that would show whether GMACM ever recommended that the Reeds pay that amount are the Debtors' servicing notes. In fact, according to the Debtors' servicing notes, no such recommendation was ever made. See Delehey Declaration at ¶ 21, and the claimants have not produced any objective evidence to substantiate their allegation. See Servicing Notes, Exhibit I.[12]

40.    Moreover, for the reasons set forth above and as explained in greater detail below, the Reeds are not entitled to compensatory damages because none of the Reeds' claims have any merit. Consequently, the Reeds are also not entitled to punitive damages. See In re

---

[12]    In order to protect potentially private information, Exhibit I is only being produced to the Court, the U.S. Trustee, and the Reeds, and will not be publicly filed on the docket with the other Exhibits included in the Objection. See Delehey Declaration at ¶ 21, n.5.

Estate of Stockdale, 953 A.2d at 473 (explaining that, to obtain punitive damages, a party must first obtain compensatory damages).

> ii.    *The Reeds Had the Option of Reinstating the Reed Loan, But Failed to Do So*

41.    In asserting that the Foreclosure Action somehow harmed them, the Reeds fail to acknowledge an important fact – namely, even if GMACM did not comply with the FFA and send an NOI prior to initiating the Foreclosure Action, the Reeds could have reinstated the Reed Loan at any point prior to the entry of Final Judgment for Foreclosure. See N.J.S.A. 2A:50-57(a):

> Notwithstanding the provisions of any other law to the contrary, as to any residential mortgage for which a notice of intention to foreclose is required to be given pursuant to section 4 of this act, whether or not such required notice was in fact given, the debtor, or anyone authorized to act on the debtor's behalf, shall have the right at any time, up to the entry of final judgment . . . to cure the default, de-accelerate and reinstate the residential mortgage.

See, e.g., Rickenbach, 635 F. Supp. 2d at 399; Rivera, 637 F. Supp. 2d at 266 n.19; Mazzella, 2013 WL 3984136.

42.    Furthermore, the Reeds' claim that GMACM "falsely [led] Plaintiff to believe that Plaintiff's only option was to remit the entire principal balance and interest" of the Reed Loan to prevent foreclosure is unsubstantiated. Nothing in the Debtors' servicing records indicates that GMACM either took this position or conveyed such position to Mr. or Ms. Reed. See Delehey Declaration at ¶ 14. The Debtors' servicing notes show that starting in March 2007, on dozens of occasions, the Debtors attempted to contact the Reeds but the Reeds generally did not answer. See id.; see also Exhibit I. Furthermore, the servicing notes show that Mr. Reed even met with a Hope Now representative in person on or about July 26, 2008, subsequent to which Mr. Reed indicated that he was not interested in a loan workout arrangement to keep his property, but only enough time to sell such property. See id. In addition, the servicing notes demonstrate

that the Debtors sent the Reeds a loss mitigation package, and approved them for a loan modification on a number of occasions; however, the Reeds never executed the loan modification papers. See id.

   *iii.*   <u>*The Reeds Fail to Establish a Claim for Malicious Use of Process Under New Jersey Law*</u>

  43.   All of the Reeds' claims are based on allegations that GMACM acted improperly by filing the Foreclosure Action without first complying with the FFA notice provisions. Thus, to the extent the Reeds assert a claim for malicious use of process, this claim fails as a matter of law.

  44.   Much like the claim for actual malice, New Jersey law controls this analysis because all of the facts for this alleged tort (*i.e.*, the Foreclosure Action) took place in New Jersey and the Reeds reside in New Jersey. <u>Zebrowski v. Wells Fargo Bank, N.A.</u>, 657 F. Supp. 2d 511, 517 n.10 (D.N.J. 2009) ("New Jersey state law is properly applied for the torts of abuse and use of process, as the alleged torts occurred in New Jersey and Plaintiffs appear to be New Jersey citizens, whom the state has an interest in protecting from conduct of this nature."). In fact, under either New York's or New Jersey's choice of law principles, New Jersey law should apply because of the significant contacts with New Jersey. <u>Townes</u>, 2004 WL 2403467, at *2 ("[U]nder New York law, courts should apply the 'law of the jurisdiction having the greatest interest in the litigation . . . and . . . the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict . . . Pennsylvania law governs whether Plaintiff can recover punitive damages because Pennsylvania was the place of the alleged tort.") (quoting <u>Miller</u>, 237 N.E.2d at 879); <u>Veazey</u>, 510 A.2d 1187, 1189 ("Under that [choice of law] analysis, the determinative law is that of the state with the greatest interest in governing the particular issue.").

45.     To state a claim for malicious use of process under New Jersey law, a plaintiff must allege and satisfy each of the following four elements: (1) the original suit was instituted without reasonable or probable cause; (2) the original suit was motivated by malice; (3) the original suit terminated favorably in favor of the plaintiff; and (4) the plaintiff suffered a special grievance.  See, e.g., Baglini v. Lauletta, 768 A.2d 825 (N.J. Super. Ct. App. Div. 2001) (stating the standards for a claim for malicious use of process under New Jersey law).  Here, the Reeds are unable to satisfy these elements.

46.     Malicious use of process is a highly disfavored cause of action under New Jersey law.  See, e.g., Hassoun v. Cimmino, 126 F. Supp. 2d 353 (D.N.J. 2000) (finding malicious use of process to be a disfavored cause of action under New Jersey law); Penwag Prop. Co. v. Landau, 388 A.2d 1265 (N.J. 1978) (finding malicious prosecution is not a favored cause of action because of the policy that people should not be inhibited in seeking redress in the courts); Baglini, 338 N.J. Super. 282 (finding the tort of malicious use of process to be disfavored out of fear that its use could chill free access to the courts).

47.     First, in analyzing whether reasonable or probable cause existed for the commencement of the Foreclosure Action, this element falls in GMACM's favor.  GMACM had reasonable cause for filing the Foreclosure Action because the Reeds had defaulted on the Reed Loan by not making the requisite payments.  See Delehey Declaration at ¶ 15.   The failure to send an NOI does not demonstrate that the Foreclosure Action lacked a reasonable basis; at most, failing to send an NOI only indicates noncompliance with the FFA's procedural notice provisions. See Whittingham v. Mortg. Elec. Registration Servs., Inc., No. 06-3016, 2007 WL 1456196, at *5 (D.N.J. May 15, 2007) (explaining that the FFA "is essentially a notice provision, which provides specific guidance to residential mortgage lenders on the steps necessary to foreclose."); see also

-23-

N.J.S.A. 2A:50-56(a) ("Upon failure to perform any obligation of a residential mortgage by the residential mortgage debtor . . . the residential mortgage lender shall give the residential mortgage debtor notice of such intention at least 30 days in advance of such action as provided in this section."). Therefore, even assuming GMACM did not send an NOI prior to initiating the Foreclosure Action, such failure does not support the Reeds' contention that the "original suit was instituted without reasonable or probable cause;" the Reeds have not demonstrated otherwise and they simply cannot do so in light of the facts.

48.     Second, for the same reasons, the Reeds have not demonstrated, and cannot demonstrate, that the Foreclosure Action was motivated by malice. Despite any inadvertent noncompliance with the FFA's procedural notice requirements, GMACM certainly had a good faith basis for filing the Foreclosure Action because Mr. Reed had defaulted under the terms of the Reed Loan. See Delehey Declaration at ¶ 15. Further, GMACM sought to correct any noncompliance with the FFA by serving an NOI during the Foreclosure Action, but the Chancery Division Court did not approve this remedy.[13] See Order Granting Cross-Motion; see also Delehey Declaration at ¶¶ 16-17. Thus, GMACM did not act with any malice.

49.     Third, the Reeds cannot show that the Foreclosure Action terminated in their favor. Although the Chancery Division Court granted the Summary Judgment Cross-Motion, the Chancery Division Court ruled only on the procedural FFA issue, it did not consider

---

[13]     It bears mentioning that, in reaching the conclusion that dismissal without prejudice was the appropriate remedy for not providing the NOI, the Chancery Division Court relied on EMC Mortg. Corp. v. Chaudhri, 946 A.2d 578, 587 (N.J. Super. Ct. App. Div. 2008). In that case, the Appellate Division "concur[red] with the trial judge's dismissal, without prejudice, of [the] foreclosure complaint due to the failure to send the notice of intent to foreclose prior to commencing suit." However, in 2012, the Supreme Court of New Jersey specifically addressed the issue of whether a lender could remedy non-compliance with the FFA by re-serving an NOI, and the Court held that a lender may do so: "We further hold that a court adjudicating a foreclosure action in which N.J.S.A. 2A:50–56(c)(11) is violated may dismiss the action without prejudice, permit a cure or impose such other remedy as may be appropriate to the specific case . . . ." U.S. Bank, N.A. v. Guillaume, 38 A.3d 570, 574 (N.J. 2012).

the merits of the foreclosure.  See Order Granting Cross-Motion ("The Court . . . finds that Plaintiff failed to comply with the notice requirements of N.J.S.A. 2A:50-56 . . . .  Accordingly, Plaintiff's Motion for Summary Judgment is hereby DENIED and Defendant's Cross-motion for Summary Judgment is GRANTED.").   Additionally, the Foreclosure Action was dismissed without prejudice.  See id. at 3 ("Plaintiff's Foreclosure Complaint is dismissed without prejudice.").  Accordingly, the Foreclosure Action did not terminate in favor of the Reeds:  the Chancery Division Court did not rule on the substance of the foreclosure, and dismissed the Foreclosure Action without prejudice.  See Digiacomo v. Wal-Mart Stores Inc., No. L1651–08, 2011 WL 2637189, at *2 n.1 (N.J. Super. Ct. App. Div. July 7, 2011) ("It is also questionable whether the proceedings terminated favorably to DiGiacomo.  While it is clear that the prosecutor moved for dismissal of the indictment, he did so because his expert could not establish DiGiacomo's guilt, not because the expert found him to be innocent.").

50.     Fourth, the Reeds cannot show a "special grievance" because they have not substantiated their speculative claims for damages with any credible evidence.[14]  For instance, that certain letter from Thomas Tartamosa, dated November 20, 2010 (the "Tartamosa Letter," a copy of which is attached to the Proofs of Claim as "Exhibit C"), references "loan programs" for which Mr. Reed allegedly qualified back in 2008, and indicates that Mr. Reed had "options" in case he could not sell his Moorestown, New Jersey property.  See Tartamosa Letter.  The Tartamosa Letter suggests that the foreclosure impeded those "options" from occurring; however, the Tartamosa Letter provides absolutely no indication as to what the "loan programs" or

---

[14]     The Borrower Trust reserves its right to challenge the admissibility of the letters appended as exhibits to the Proofs of Claim, including each letter's relevance, the qualifications of the purported experts, etc., under the Federal Rules of Evidence.

ny-1108216

"options" entailed.  See id.  Therefore, any claim for damages based on the vague Tartamosa

Letter is not substantiated, and therefore has no merit.

51.    Likewise, those certain letters from BT Edgar & Sons Realtors, dated June

25, 2012 and July 2, 2012 (together, the "BT Edgar Letters," copies of which are attached to the

Proofs of Claim as "Exhibit F" and "Exhibit G"), regarding "offers" that Mr. Reed allegedly

received for that certain property located in Moorestown, NJ, do not show any damages stemming

from the Foreclosure Action.  See BT Edgar Letters.  Importantly, neither of the BT Edgar Letters

includes a copy of the alleged "offers."  See id.  In addition, the BT Edgar Letter dated June 25,

2012, does not provide critical details regarding the alleged "offer," such as the amount of the

offer.  See id.  Similarly, the BT Edgar Letter dated July 2, 2012, does not indicate the reason that

the sale failed to close, which could have occurred for a number of reasons, including the buyer's

failure to qualify for a loan.  See id.  Consequently, GMACM and this Court can only speculate as

to the reason that the sale did not occur.  Simply stated, the BT Edgar Letters do not provide

sufficient details to demonstrate the validity and merits of the alleged damages.

52.    Moreover, that certain letter from Stevie Watson at Long and Foster Real

Estate, dated June 20, 2012 (the "Watson Letter," a copy of which is attached to the Proofs of

Claim as "Exhibit H"), also fails to demonstrate damages resulting from the Foreclosure Action

because the Watson Letter (i) pertains to a property located in Richmond, Virginia, while the

Foreclosure Action pertained to a property in New Jersey, and (ii) does not establish any

connection between the Foreclosure Action and the Virginia property.  See Watson Letter.  Thus,

the Watson Letter provides no reliable or relevant information regarding damages.

53.    Furthermore, that certain expert witness report of Evan Hendricks (the

"Hendricks Report," a copy of which is attached to the Proofs of Claim as "Exhibit I"), also does

not substantiate the Reeds' claim for damages. The Hendricks Report indicates that the Foreclosure Action damaged Mr. Reed's credit; however, as the Hendricks Report concedes, FICO scores are based on a number of factors, including payment history. See Hendricks Report at 10. Late payments, especially on an important account like a mortgage, are damaging to a credit score. Mr. Reed defaulted on the Reed Loan prior to GMACM initiating the Foreclosure Action. See Delehey Declaration at ¶ 15. Thus, by the time GMACM filed the Foreclosure Action, Mr. Reed had already damaged his credit. The Hendricks Report fails to account for this critical fact and, therefore, lacks credibility and does not establish damages. See Hendricks Report, at 3 n.1 (stating a "quick review" of one of Mr. Reed's credit reports "indicated that eight accounts where [sic] rendered derogatory in 2008 alone."). Moreover, while the Hendricks Report may put the Reeds' claims in context of issues that faced the credit-reporting industry, Mr. Hendricks gives no basis or calculations, other than citing to his experience in the field of credit reporting, to substantiate his valuation of Mr. Reed's non-economic damages of at least $350,000. See Hendricks Report, at 5. Notably, Mr. Hendricks does not approximate a dollar amount for Mr. Reed's economic damages.

54. Finally, that certain letter from Paul Molloy at Oxford House, Inc., dated July 10, 2012 (the "Molloy Letter," a copy of which is attached to the Proofs of Claim as "Exhibit J"), is entirely speculative on the issue of the Reeds' damages. The Molloy Letter states that Oxford House, Inc. had leased properties from Mr. Reed and that "Oxford House would most likely have continued to rent those houses from Mr. Reed but for [the] foreclosure action." See Molloy Letter (emphasis added). Thus, the Molloy Letter does not state that the Foreclosure Action directly impacted the leases and such a speculative letter cannot support a claim for damages.

55.     For the foregoing reasons, the Reeds have not sufficiently substantiated a claim for damages, and they have not satisfied any of the other elements for a malicious use of process claim.  As such, any claim for malicious use of process fails as a matter of law.

*iv.     The Reeds Fail to Establish a Claim for Negligence*

56.     The Reeds assert that GMACM negligently brought the Foreclosure Action without first complying with the FFA and that, as a result, the Reeds suffered damages.  See Proofs of Claim at "Exhibit D"; see also Proofs of Claim at Certifications of Creditors, ¶¶ 1-3.

57.     The elements of negligence under New Jersey law include: "(1) duty of care, (2) breach of duty, (3) proximate cause, and (4) actual damages."  Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc., 342 F. Supp. 2d 267, 278 (D.N.J. 2004) (citation omitted).  Here, the Reeds cannot satisfy these elements.  See Rappaport v. Nichols, 156 A.2d 1, 8 (N.J. 1959) ("the standard of care is the conduct of the reasonable person of ordinary prudence under the circumstances.").

58.     First, the Reeds have not established a breach of a duty of care, because they have not established that such a duty even exists.  In alleging a duty, the Reeds rely on a statutory duty, which they believe stems from N.J.S.A. 2A:50-57's requirement of providing an NOI before instituting a foreclosure action.  According to the Reeds, GMACM's alleged failure to comply with the statutory notice requirement means that GMACM acted negligently.  However, the Reeds misconstrue the law on statutory duties of care.  Under New Jersey law, a "violation of a statutory duty of care is *not conclusive* on the issue of negligence in a civil action but it is a circumstance which the trier of fact should consider in assessing liability."  Braitman v. Overlook Terrace Corp., 346 A.2d 76, 85 (N.J. 1975) (emphasis added).  This is because "statutes rarely define a standard of conduct in the language of common-law negligence."  Eaton v. Eaton, 575 A.2d 858, 866 (N.J. 1990).  In this case, N.J.S.A. 2A:50-57 does not incorporate the negligence

-28-

standard ("reasonableness"), so a violation of the statute does not, by itself, establish either the existence of a duty of care or a breach of such duty.

59.     In fact, GMACM acted reasonably under the circumstances.  See Delehey Declaration at ¶¶ 15-16.   After Mr. Reed defaulted on the Reed Loan, GMACM filed the Foreclosure Action.  See id. at ¶ 8.  Before filing the Foreclosure Complaint, GMACM served an NOI.  See id.  Upon learning that Mr. Reed may not have received the NOI that GMACM sent, GMACM attempted to re-serve the NOI.  See id. at ¶ 16.  Thus, GMACM acted reasonably in its capacity as servicer of the Reed Loan in filing the Foreclosure Action and attempting to remedy any inadvertent noncompliance with the FFA.

60.     Furthermore, as discussed in detail herein, the Reeds have not put forth any credible evidence to establish any damages.  They cannot establish any damages based on the alleged failure to serve an NOI apprising the Reeds of their right to cure because the Reeds still can cure the default at any point prior to the entry of Final Judgment for Foreclosure.  See N.J.S.A. 2A:50-57(a):

> Notwithstanding the provisions of any other law to the contrary, as to any residential mortgage for which a notice of intention to foreclose is required to be given pursuant to section 4 of this act, *whether or not such required notice was in fact given, the debtor, or anyone authorized to act on the debtor's behalf, shall have the right at any time, up to the entry of final judgment . . . to cure the default, de-accelerate and reinstate the residential mortgage . . . .*" (emphasis added).

Thus, even assuming *arguendo* GMACM acted negligently, which it did not, the negligence claim must still fail because the Reeds can neither establish a duty of care owing by GMACM to the Reeds nor the damages element for this claim (or that any negligence proximately caused the damages).  See Wartsila NSD N. A., Inc., 342 F. Supp. 2d at 278.

### v.    *The Reeds Fail to Establish a Claim for Breach of Contract*

61.    To state a claim for breach of contract under New Jersey law, the Reeds must establish: (1) the existence of a contract; (2) a breach of that contract; (3) damages flowing from that breach; and (4) that they performed their own contractual duties.  See Video Pipeline Inc. v. Buena Vista Home Entm't, Inc., 210 F. Supp. 2d 552, 561 (D.N.J. 2002) (citing Pub. Serv. Enter. Grp., Inc. v. Phila. Elec. Co., 722 F. Supp. 184, 219 (D.N.J. 1989)); see also In re Cendant Corp. Secs. Litig., 139 F. Supp. 2d 585, 604 n.10 (D.N.J. 2001) (noting that New Jersey law requires pleading of performance of the movant's own contractual duties).

62.    Here, the Reeds cannot possibly state a claim for breach of contract based on any alleged noncompliance with the FFA, since they, themselves, breached the loan agreement.  See In re Cendant Corp. Secs. Litig., 139 F. Supp. 2d at 604 n. 10.  The Reeds failed to make the requisite payments in accordance with the terms of their loan.  See Delehey Declaration at ¶ 8.  Thus, any breach of contract claim must fail as a matter of law.

### vi.    *The Reeds Fail to Establish a Claim for Fraud*

63.    To the extent that the Reeds attempt to raise a claim under the New Jersey Consumer Fraud Act ("CFA"), this claim must fail.  See Proofs of Claims at "Exhibit E."  A claim under the CFA consists of three elements: "(1) an unlawful practice, (2) an 'ascertainable loss,' and (3) 'a causal relationship between the unlawful conduct and the ascertainable loss. . . .'" Gonzalez v. Wilshire Credit Corp., 25 A.3d 1103, 1115 (N.J. 2011) (quoting Lee v. Carter-Reed Co., 4 A.3d 561, 576 (N.J. 2010)).  The CFA defines an "unlawful practice" as:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived, or damaged thereby. . . .

-30-

<u>N.J.S.A.</u> 56:8-2.

64.     Several courts, including those in this district, have applied the federal pleadings standards when assessing the validity of a proof of claim.  <u>See</u> Bankruptcy Rule 7008 (incorporating Fed. R. Civ. P. 8(a)(2) standard requiring a pleading to contain a "short and plain" statement of the claim showing that the pleader is entitled to relief) and Bankruptcy Rule 7009 (incorporating Fed. R. Civ. P. 9(b) heightened pleading standard); <u>see also</u> <u>In re DJK Residential LLC</u>, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure.") (citing <u>In re Rockefeller Ctr. Props.</u>, 272 B.R. at 542 n.17; <u>Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.)</u>, 398 B.R. 736, 748 (S.D.N.Y. 2008) ("The documents attached to the proofs of claim should be treated, for purposes of a motion to disallow claims, like documents that are attached to or relied upon in a complaint are treated on a Rule 12(b)(6) motion to dismiss. . .") (citation omitted).  Under Rule 9(b), for allegations involving fraud, "a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b).  "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'"  <u>Ziemba v. Cascade Int'l, Inc.</u>, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal citations omitted).

65.     Furthermore, under New Jersey law, allegations of fraud must be pled with particularity.  <u>See</u> <u>R.</u> 4:5-8(a); <u>see also</u> <u>Levinson v. D'Alfonso & Stein</u>, 727 A.2d 87, 88 (N.J. Super. Ct. App. Div. 1999); Bankruptcy Rules 7008 and 7009 (making Federal Rules of Civil Procedure 8 and 9 the applicable standard for claims pled within a complaint).  The New

Jersey Superior Court, Appellate Division has recognized that a claim under the CFA is essentially a claim for fraud, and as such, must be pled with specificity. Hoffman v. Hampshire Labs, Inc., 963 A.2d 849, 853 (N.J. Super. Ct. App. Div. 2009). Mere conclusory statements are insufficient to satisfy the particularity requirement. See Rego Indus. v. Am. Modern Metals Corp., 221 A.2d 35, 40 (N.J. Super. Ct. App. Div. 1966). To satisfy the heightened pleading standard, the Reeds' claims must state the particulars of the wrong, with dates and items if necessary. A court may dismiss a fraud claim if the allegations are not set forth with specificity. See Levinson, 320 N.J. Super. at 315.

66.    The Reeds have not pled the elements of a CFA claim, and failed to allege such claim with the specificity required. Instead, the CFA claim that the Reeds asserted in the Reed Action merely echoed the language of the CFA. The Reeds have not established an unlawful practice, nor could they. The history of this matter reveals no misrepresentation or omission of fact by GMACM. That is, even if GMACM did not comply with the FFA and send an NOI, this would not show that GMACM committed an unlawful practice (a misrepresentation, omission, etc.).

67.    Furthermore, the Reeds have not alleged an ascertainable loss – that is, that they "suffer[ed] a definite, certain and measurable loss, rather than one that is merely theoretical." Thiedemann v. Mercedes-Benz USA, L.L.C., 183 N.J. 234, 248, 872 A.2d 783 (2005). Instead, the Amended Reed Complaint in the Reed Action summarily asserted the existence of an ascertainable loss. See Proofs of Claims at "Exhibit E." Moreover, even the Hendricks Report does not point to a definite, certain amount of damages incurred by the Reeds; rather, the Hendricks Report is riddled with generalities. See generally, Hendricks Report.

Without the existence of an ascertainable loss, and since any loss attributable to the filing of the Foreclosure Action is merely speculative, the Reeds' lack standing to assert a CFA claim.

*vii.*    <u>The Reeds Are Not Entitled to a Constructive Trust</u>

68.    In their certifications in support of the Proofs of Claim, the Reeds assert that "a constructive trust should be recognized . . . over both the mortgage instrument and the real property on which the mortgage instrument exists."    <u>See</u> Proofs of Claim at Certifications of Creditors, ¶ 10.  This allegation has no basis.

69.    "The right to impose a constructive trust is determined by state law." <u>Tekinsight.com, Inc. v. Stylesite Mktg., Inc.</u>, <u>(In re Stylesite Mktg., Inc.)</u>, 253 B.R. 503, 508 (Bankr. S.D.N.Y. 2010) (citing <u>Sanyo Elec., Inc. v. Howard's Appliance Corp.</u> <u>(In re Howard's Appliance Corp.)</u>, 874 F.2d 88, 93-94 (2d Cir. 1989)); <u>Entegra Power Grp. LLC v. Dewey & Leboeuf LLP</u> <u>(In re Dewey & Leboeuf LLP)</u>, 493 B.R. 421, 431 (Bankr. S.D.N.Y. 2013) ("In determining whether to impose a constructive trust on property within the debtor's possession, the Court must look to state law.") (citing <u>In re Howard's Appliance Corp.</u>, 874 F.2d at 93).  As discussed above, New Jersey law controls this analysis because all of the critical facts in this matter stem from New Jersey.

70.    "A constructive trust is a remedial device through which the conscience of equity is expressed; it will be imposed when a person has acquired possession of or title to property under circumstances which, in good conscience, will not allow the property's retention." <u>Thompson v. City of Atl. City</u>, 901 A.2d 428, 438 (N.J. Super. App. Div. 2006) (citations and quotations omitted).  When evaluating whether to impose "a constructive trust, a court must find that a 'wrongful act' caused the property to come into the hands of the recipient and that the recipient will be 'unjustly enriched' if it is not returned."  <u>Id.</u> (citing  <u>Flanigan v. Munson</u>, 818 A.2d 1275, 1281 (N.J. 2003)).  If those elements are established, "the court of equity converts the

ny-1108216

recipient into a trustee and requires that he account for the res in whatever manner the court deems fair and just." Thompson, 901 A.2d at 439.

71.     This claim for a constructive trust fails.  First, a wrongful act did not cause the property to come into the hands of GMACM.  To the contrary, the Reeds willingly entered the loan transaction, which resulted in the Reeds obtaining a $1,000,000.00 loan to purchase their property and a mortgage being placed on the property in favor of GMACM.  See Delehey Declaration at ¶ 14.  In fact, the Reeds do not, and cannot, contend that a "wrongful act" resulted in the mortgage.  Further, GMACM's taking action to foreclose on a property where mortgage payments for such property were delinquent, as in the Reeds' case, which caused the property "to come into the hands" of GMACM, is not a wrongful act.  Second, there is simply no evidence of unjust enrichment.  There is nothing unjust about GMACM holding a lien on the property to secure the $1,000,000.00 loan (especially since there is no private right of action under the FFA, and none of the Reeds' claims have any merit), nor acting on its rights as holder of that lien. Lastly, it bears mentioning that "constructive trusts are disfavored in bankruptcy because they alter the distribution rules provided under the Bankruptcy Code." In re Dewey & Leboeuf LLP, 493 B.R. at 432.  Accordingly, the Reeds' claim for constructive trust should be denied.

> viii.    *The Reeds Fail to Establish a Basis for Application of the Doctrine of Res Judicata*

72.     In their certifications in support of the Proofs of Claim, the Reeds suggest that because their claims before the Law Division Court survived the Motion to Dismiss, the doctrine of res judicata applies and establishes the validity of the claims.  See Proofs of Claim at Certifications of Creditors, ¶ 13.  This assertion misconstrues the law and application of the doctrine of res judicata.

-34-

73.    Res judicata precludes the re-litigation of claims and prevents "the judicial inefficiency inherent in multiplicitous litigation." Watkins v. Resorts Int'l Hotel and Casino, Inc., 591 A.2d 592, 597 (N.J. 1991); see also R. 4:5-4[33]. See also Memorandum Opinion and Order Sustaining Borrower Claims Trust's Sixtieth Omnibus Objection to Claim Nos. 4133 and 4199, In re Residential Capital, LLC, et al., Case No. 12-12020 (Bankr. S.D.N.Y. Apr. 10, 2014) [Docket No. 6766] (sustaining objection to and expunging claims on grounds that res judicata barred such claims); Memorandum and Order Sustaining Borrower Claims Trust's Objection to Claim Nos. 4754 and 7181, In re Residential Capital, LLC, et al., Case No. 12-12020 (Bankr. S.D.N.Y. Apr. 2, 2014) [Docket No. 6739] (same).    This doctrine applies "not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined." Watkins, 591 A.2d at 599 (citations omitted).    In particular, the doctrine of res judicata works to bar a second lawsuit where: (1) the judgment in the first action is valid, final and on the merits; (2) the parties in both actions are the same or are in privity with each other; and (3) the claims in the second action arise from the same transaction or occurrence as the claims in the first action. Id.

74.    The Reeds' res judicata argument fails.    When the Law Division Court denied the Motion to Dismiss, the Law Division Court did not enter a final order on the merits.    In fact, that denial only meant that the Reeds had, at minimum, pled cognizable claims, not that the claims had any merit or that the Reeds had prevailed on the merits of such claims.    See R. 4:6-2(e) (claims must be dismissed "for failure to state a claim upon which relief can be granted").    Since the denial of a motion to dismiss does not constitute a final determination on the merits, the doctrine of res judicata does not apply.    Nolan v. First Colony Life Ins. Co., 784 A.2d 81, 88 (N.J.

Super. Ct. App. Div. 2001) (explaining that the denial of a motion to dismiss did "not have res judicata effect because no final judgment was entered.").

ix.    *The Reeds Are Not Entitled to be Made Whole Under the FRB Consent Order*

75.    In their certifications in support of the Proofs of Claim, the Reeds assert that, under the FRB Consent Order, the Debtors admitted and agreed that (i) they engaged in illegal behavior, (ii) their behavior caused individuals, such as the Reeds financial harm and (iii) they would make fully whole all those who have been financially harmed by their acts.  See Proofs of Claim at Certification of Creditors, ¶ 8; see also Delehey Declaration at ¶¶ 7-12.  Such assertions are not accurate.

76.    Contrary to the Reeds' assertions, GMACM and ResCap entered into the FRB Consent Order without admitting any fault for wrongdoing alleged by the FRB or the FDIC.  See FRB Consent Order, ¶ 6 (indicating that the FRB Consent Order does not constitute an admission by AFI, Ally Bank, ResCap or GMACM or its subsidiaries of any allegation made or implied by the FRB or the FDIC); see also Delehey Declaration at ¶ 7.  The parties entered into the FRB Consent Order solely for the purpose of achieving a settlement without the need for a formal proceeding and protracted and extended hearings and testimony.  See FRB Consent Order, ¶ 6.

77.    Furthermore, the FRB Consent Order does not require the Debtors to make Borrowers financially whole.  Instead, under the FRB Consent Order, GMACM agreed to, *inter alia*, (i) "remediate, as appropriate, errors, misrepresentations, or other deficiencies in any foreclosure filing or other proceeding," (ii) reimburse or provide other appropriate remediation for impermissible or unreasonable penalties, fees or expenses, or for certain other financial injuries and (iii) remediate any foreclosure sale where the foreclosure was not authorized as described in

the FRB Consent Order.  More specifically, the FRB Consent Order required GMACM to retain and compensate an independent consultant to conduct an extensive review of past foreclosure proceedings and sales pending or completed during 2009 and 2010 with respect to loans serviced by GMACM and its subsidiaries, and to prepare and submit a report regarding the results of that review.  See Disclosure Statement [Docket No. 4819], at Art. III.D.3(a).

78.     The Reeds submitted a "Request for Review" of the Reed Loan in the Debtors' foreclosure review process.  See Delehey Declaration at ¶ 13.  The Reed Loan was classified as a "Foreclosure in Process" and based on their placement in the IFR Waterfall, the Reeds were compensated $500 on account of their loan.  See id.  The Debtors have complied with their obligations pursuant to the settlement entered into with the FRB, including any obligations owed to the Reeds.  See id.  Therefore, in light of the facts at hand, the Reeds have not established a basis for which they are entitled to any additional compensation, let alone funds to make them financially whole, under the terms of the Consent Order.

### D.     The Proofs of Claim Are Not Properly Asserted Against Debtor ResCap

79.     Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law. . . ."  11 U.S.C. § 502(b)(1).

80.     The Borrower Trust diligently analyzed the ResCap Proofs of Claim and determined that the Reeds have no valid legal justification for asserting such Claims against ResCap because ResCap was not a named party in the Foreclosure Action or the Reed Action. Therefore, even if the Reeds held valid claims, which, based on the foregoing arguments, the Borrower Trust contends that they do not, such claims would not be properly asserted against ResCap, as ResCap has no liability due and owing to the Reeds in relation to the Foreclosure Action, the Reed Action or, consequently, the ResCap Proofs of Claim.

81.    Thus, for each of the reasons set forth above, to avoid the possibility that the Reeds receive improper recoveries to the detriment of the Borrower Trust's beneficiaries, the Borrower Trust requests that the Court disallow and expunge the Proofs of Claim in their entirety.

## VI.    NOTICE

82.    The Borrower Trust has provided notice of this Objection in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141], and the Procedures Order.

83.    No previous request for the relief sought in this Objection has been made by the Debtors or the Borrower Trust to this or any other court.

## VII.    CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of an order, substantially in the form of Exhibit 2 attached hereto, (i) disallowing and expunging the Proofs of Claim, and (ii) granting such other and further relief as is just and proper.

*[Remainder of Page Intentionally Left Blank]*

-38-

Dated: May 29, 2014
     New York, New York

/s/  Norman S. Rosenbaum

Norman S. Rosenbaum
Jordan A. Wishnew
Meryl L. Rothchild
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*

-and-

Diane A. Bettino
REED SMITH LLP
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Telephone: (609) 987-0050
Facsimile:  (609) 951-0824

*Co-Counsel for The ResCap Borrower Claims
Trust*

ny-1108216