GODFREY & KAHN, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, Wisconsin 53701-2719
(608) 257-3911

*Attorneys for ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------- x
                                      :

In re:                         :     Chapter 11

                                        :

RESIDENTIAL CAPITAL, LLC, *et al.,*   :     Case No. 12-12020 (MG)

                                        :

              Debtors.       :     Joint Administration

-------------------------------------------------- x

**LIMITED OBJECTION OF THE RESCAP LIQUIDATING TRUST**
**TO THE FINAL FEE APPLICATION AND AMENDED FINAL FEE APPLICATION OF**
**CHADBOURNE & PARKE LLP, COUNSEL TO THE EXAMINER, FOR ALLOWANCE**
**OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

**TO:    THE HONORABLE MARTIN GLENN**
          **UNITED STATES BANKRUPTCY JUDGE**

# TABLE OF CONTENTS

**<u>Page</u>**

TABLE OF AUTHORITIES ................................................................................................. ii

SUMMARY STATEMENT ................................................................................................ 1

INTRODUCTION ............................................................................................................... 1

OBJECTIONS...................................................................................................................... 3

BACKGROUND ................................................................................................................. 4

APPLICABLE STANDARDS ............................................................................................ 9

ARGUMENT ...................................................................................................................... 9

SPECIFIC OBJECTIONS ................................................................................................. 11

    Timekeeping and Billing Errors................................................................................. 11

    Routine Billing Activities .......................................................................................... 11

    Unadmitted Attorney, Summer Associate or Law Clerk Time.................................. 12

    Charges after the Examiner's Discharge.................................................................... 12

    Contract Attorneys ..................................................................................................... 12

    Typesetting Fees and Expenses ................................................................................. 14

    Unnecessarily High Billing Rates.............................................................................. 15

    Document Review....................................................................................................... 16

    Clawbacks ................................................................................................................... 16

CONCLUSION.................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page**

### CASES

*CT Commc'ns, Inc.*, No. 07-10210, 2010 WL 3386947 (Bankr. S.D.N.Y. Aug. 24, 2010) ........................................................................................................................ 11

*In re Asarco, L.L.C.*, No. 12-40997 ___ F.3d ___, 2014 WL 1698072 (5th Cir. Apr. 30, 2014) ........................................................................................................... 11

*In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833 (3d Cir. 1994) ........................................... 9

*In re Cenargo Int'l, PLC,* 294 B.R. 571 (Bankr. S.D.N.Y. 2003) ............................... 12

*In re Downs*, 103 F.3d 472 (6th Cir. 1996) ................................................................... 13

*In re Futuronics Corp.*, 655 F.2d 463 (2d Cir. 1981) ................................................... 13

*In re Mesa Air Group, Inc.*, 449 B.R. 441 (Bankr. S.D.N.Y. 2011) ............................ 11

*In re Midland Capital Corp.*, 82 B.R. 233 (Bankr. S.D.N.Y. 1988) ............................ 12

### OTHER AUTHORITIES

11 U.S.C. § 101, *et seq.* .................................................................................................. 1

11 U.S.C. § 329(a) ......................................................................................................... 13

11 U.S.C. § 330(a) ......................................................................................................... 11

11 U.S.C. § 1106(3) ......................................................................................................... 7

11 U.S.C. § 1106(4) ......................................................................................................... 7

*Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (June 4, 2004) ............................................................................................................................ 9

Rule 2014(a) ................................................................................................................... 13

Rule 2016 ....................................................................................................................... 13

ii

The ResCap Liquidating Trust (the "**Trust**"), by its counsel, Godfrey & Kahn, S.C.,
submits this *Limited Objection* in connection with the *Final Application of Chadbourne & Parke
LLP, Counsel to the Examiner, for Allowance of Compensation and Reimbursement of Expenses*
[Docket No. 5849] and the *Amended Final Application of Chadbourne & Park LLP, Counsel to
the Examiner, for Allowance of Compensation for Services Rendered and Reimbursement of
Expenses* [Docket No. 6577] (together, the "**Final Fee Application**").

### SUMMARY STATEMENT

With this limited objection, the Trust requests an order disallowing $3,875,538 in fees
and $371,405.20 in expenses for the period from the firm's retention (*nunc pro tunc*) on July 11,
2012 through December 17, 2013 (the "**Final Fee Period**").

### INTRODUCTION

The professional fees and expenses reviewable under the Bankruptcy Code in this
20-month long bankruptcy case total nearly $400 million.  Of that amount, 22 percent, or nearly
$90 million in fees and expenses, were incurred by just two professionals over a period of
approximately 10 months—the legal counsel and the financial advisor for the court-appointed
Chapter 11 Examiner.  The fees require the Court's approval, no less than and under no different
standards than the fees and expenses submitted by the counsel and advisors for the Debtor and
for the Creditors' Committee.  This limited objection addresses a discrete portion of the fees and
expenses of Chadbourne & Parke LLP ("**Chadbourne**") because they do not meet the
"reasonable and necessary" requirements of 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**").

Under the Second Amended Plan of Reorganization, confirmed on December 11, 2013,
the Trust has been deemed a representative of the Debtors' estates for the purposes of reviewing
all claims—including claims for professional fees—and prosecuting any objections.  Taking that

1

fiduciary responsibility seriously, the Trust has reviewed the final fee applications of more than

40 professional firms.  The Trust had no objection to many of the fee applications and for those

that were subject to a potential objection, the Trust has reached agreement with all but five

professionals.[1]  While the Trust remains open to a negotiated resolution with each of applicants

before the June 18, 2014 hearing date on final fee applications, to date, the Trust has been unable

to achieve a consensual resolution with Chadbourne, and thus, is required to file this objection.

All of the Trust's objections are supported by data drawn directly from the materials

submitted in support of the Final Fee Application.[2]  Some of the fee objections are typical and

will be familiar to the Court — vague entries, mathematical errors, too many professionals at

hearings or depositions.  Others, however, are unique to the facts and circumstances of this case.

For example, the examination process here culminated in a 2,245-page commercially printed

report.  That report no doubt provided some value to the Court and all of the parties interested in

this case, but the decision to typeset the report (with the attendant extra charges for professionals

to repeatedly proofread typeset drafts), instead of using standard software and reproduction

facilities, cost the estate more than $2 million.  In addition, Chadbourne performed much of the

"first-tier" document review underlying the Examiner's investigation at rates well above those of

the contract attorneys designated for that task.

The applications of professionals providing support to a court-appointed examiner are not

submitted or reviewed in a vacuum.  This district has seen other significant cases, to be sure,

---

[1] These professionals include Chadbourne & Parke LLP; Mesirow Financial Consulting, LLC; Bradley Arant Boult
Cummings ("**Bradley Arant**"); Morrison Cohen LLP ("**Morrison Cohen**"); and Carpenter Lipps & Leland LLP
("**Carpenter Lipps**").  Bradley Arant, Morrison Cohen, and Carpenter Lipps have granted the Trust an eight-day
extension of the June 2, 2014 objection bar date to facilitate further discussions.

[2] The itemized exhibits to this objection are voluminous and will not be electronically filed.  Complete sets of
exhibits are being provided to the Court, the Examiner's professionals, and to all of the notice parties listed in
paragraph 2(a) of the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of
Professionals* [Docket No. 0797] (the "**Interim Compensation Order**").  The itemized exhibits are available to any
party in interest that requests them.

with significant professional fees incurred to support an examiner.  Indeed, in the *Lehman Brothers* Chapter 11 cases, the court-appointed examiner, Anton Valukas, completed and a filed a report similar in length and detail to the one filed here.  Ultimately, the Court in the *Lehman* cases approved $51 million in attorneys' fees and $42 million in financial advisory fees for Mr. Valukas and his professionals.[3]  Relative comparisons are not dispositive, but they are helpful in providing context for the category-by-category review and line-by-line analysis of the professional compensation submitted for approval here, compensation only slightly less than that approved for the examiner's professionals in the *Lehman* case, the largest bankruptcy case ever filed.

The Trust's concerns are significant, both for their fiscal impact on the estate and for their reflection of the professionals' compliance (or non-compliance) with the Bankruptcy Code, the Court's billing guidelines, and the judicial decisions that have applied them.

## OBJECTIONS

The Final Fee Application requests a total of $46,890,806.66 in fees and $2,995,419.47 in expenses for the Final Fee Period.  Summarized in the attached **Summary Exhibit**, with this limited objection, the Trust identifies $3,875,538 in fees and $371,405.20 in expenses to which it objects.

TheTrust objects, in part, to Court approval of the Final Fee Application, including:

- $8,699 in fees and expenses attributable to overcharges and math errors; and

- $195,683 in fees to prepare routine billing statements, budgets, and/or to respond to U.S. Trustee inquiries about fee applications; and

- $5,757 in fees charged for summer associates or law clerks; and

---

[3] Both the examiner's counsel and financial advisor in the *Lehman* cases provided services at a discount of 10 percent off their regularly-stated rates.  Mr. Valukas's bills to the estates included his own time as well as that of his counsel, Jenner & Block.

- $403,435.50 for unadmitted attorneys billed at associate rates; and

- $200,963 in fees charged after the discharge of the Examiner; and

- $841,842 in unsubstantiated contract attorney fees; and

- $371,405.20 in typesetting expenses and $342,952.50 in fees for attorney quality control and proofreading necessitated by the decision to typeset the Examiner's report; and

- $756,254 in fees charged at higher-level associate or partner rates for contract attorney work such as "first-tier" document review; and

- $1,119,952 in fees charged for research and document review related to "clawback" requests.

In each instance, Chadbourne has failed to sustain its burden of proof under the Bankruptcy Code to demonstrate that the work described in the Final Fee Application was necessary and that the charges for that work are reasonable.

## BACKGROUND

1.     Commencing on May 14, 2012, Residential Capital, LLC and 50 of its affiliates (the "**Debtors**") filed in the Court voluntary cases under chapter 11 of the Bankruptcy Code.  On December 6, 2013, the Debtors and the Official Committee of Unsecured Creditors filed the *Revised Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030-1] (the "**Plan**").  The Plan was confirmed on December 11, 2013 [Docket No. 6065] with an effective date of December 17, 2013.

2.     On July 3, 2012, the Court entered the *Notice of Appointment of Examiner* [Docket No. 0665] (the "**Examiner Order**") appointing retired Judge Arthur J. Gonzalez as Examiner.

4

3.      On August 9, 2012, the Court entered the *Order Authorizing the Employment and Retention of Chadbourne & Parke LLP as Counsel to the Examiner Nunc Pro Tunc to July 11, 2012* [Docket No. 1073] (the "**Retention Order**").

4.      On October 19, 2012, Chadbourne filed the *First Interim Fee Application of Chadbourne & Parke LLP, Counsel to the Examiner, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses* (the "**First Fee Application**") [Docket No. 1897], seeking fees in the amount of $3,295,849.50 and expenses in the amount of $127,003.11.

5.      On December 28, 2012, the Court entered the *Order Granting Applications for Allowance of Interim Compensation and Reimbursement of Expenses* [Docket No. 2530]. Through that order, the Court approved the First Fee Application in the amount of $3,276,434.91 in fees and $127,003.11 in expenses, authorizing payment of $2,935,213.72 in fees and $113,425.41 in expenses, and requiring a continued holdback of 10 percent of Chadbourne's requested fees (but not expenses).

6.      On March 14, 2013, Chadbourne filed the *Second Interim Fee Application of Chadbourne & Parke LLP, Counsel to the Examiner, for Allowance of Compensation and Reimbursement of Expenses* (the "**Second Fee Application**") [Docket No. 3203], seeking fees in the amount of $17,301,345.50 and expenses in the amount of $563,507.73.

7.      On April 29, 2013, the Court entered an *Order Granting Applications for Allowance of Interim Compensation and Reimbursement of Expenses* [Docket No. 3556]. Through that order, the Court approved the Second Fee Application in the amount of $17,126,345.50 in fees and $563,507.73 in expenses, authorizing payment of $15,393,554.44 in

fees and $563,507.73 in expenses, and requiring a continued holdback of 10 percent of Chadbourne's requested fees.

8.      On August 7, 2013, Chadbourne filed the *Third Interim Fee Application of Chadbourne & Parke LLP, Counsel to the Examiner, for Allowance of Compensation and Reimbursement of Expenses* (the "**Third Fee Application**") [Docket No. 4565], seeking fees in the amount of $23,771,407.50 and expenses in the amount of $1,528,915.11.

9.      On September 25, 2013, the Court entered an *Order Granting Applications for Allowance of Interim Compensation and Reimbursement of Expenses* [Docket No. 5205]. Through that order, the Court approved the Third Fee Application in the amount of $23,687,407.75 in fees and $1,498,902.04 in expenses, authorizing payment of $21,288,653.91 in fees and $1,498,902.04 in expenses, and requiring a continued holdback of 10 percent of Chadbourne's requested fees.

10.      On November 18, 2013, Chadbourne filed the *Final Application of Chadbourne & Parke LLP, Counsel to the Examiner, for Allowance of Compensation and Reimbursement of Expenses* (the "**Fourth Fee Application**") [Docket No. 5849], seeking fees in the amount of $46,818,245.66 and expenses in the amount of $2,990,547.82.

11.      On December 26, 2013, the Court entered an *Order Granting Applications for Allowance of Interim Compensation and Reimbursement of Expenses* [Docket No. 6193]. Through that order, the Court approved the Fourth Fee Application in the amount of $2,628,057.50 in fees and $814,712.64 in expenses, authorizing payment of $2,360,895.39 in fees and $814,712.64 in expenses, and requiring a continued holdback of 10 percent of Chadbourne's requested fees.

12.     On March 3, 2014, Chadbourne filed the *Amended Final Application of Chadbourne & Park LLP, Counsel to the Examiner, for Allowance of Compensation and Reimbursement of Expenses* (the "**Fifth Fee Application**") [Docket No. 6577], seeking $46,890,806.66 in fees and $2,995,419.47 in expenses for the Final Fee Period.

13.     With the Final Fee Application, Chadbourne reports having been paid $47,077,246.96 in fees and expenses—with $2,631,546.52 in fees and expenses remaining unpaid. *See Amended Final Application of Chadbourne & Park LLP, Counsel to the Examiner, for Allowance of Compensation and Reimbursement of Expenses* [Docket No. 6577] at 3.

14.     Chadbourne served as counsel to Arthur Gonzalez in carrying out the statutory duties of an examiner under Section 1106(3) and (4) of the Bankruptcy Code and performing the tasks itemized in the Examiner Order and in the *Work Plan of Arthur J. Gonzalez, Examiner* [Docket No. 1010] (the "**Work Plan**"), as subsequently amended.  In the August 6, 2012 Work Plan, Examiner Gonzalez estimated—with caveats—that his professionals' fees would "range from $29 million to $36 million." *Id.* ¶ 28.

15.     The Examiner stated in the Work Plan that he would "*promptly* advise the Court and the parties as the Investigation proceeds if costs are expected to vary significantly from this preliminary estimate." *Id.* (emphasis added).

16.     In the *Supplement to Work Plan of Arthur J. Gonzalez, Examiner* [Docket No. 1240] (the "**Work Plan Supplement**"), dated August 23, 2012, the Examiner clarified his earlier fee estimates:

> [T]he Examiner hereby supplements paragraph 28 of the Work Plan to state that the aggregate fee and expense range of $29 to $36 million set forth therein comprises the following component ranges: (i) for the Examiner, $300,000 to $500,000, (ii) for the Examiner's counsel, $16.7 million to $19 million, and (iii) for the Examiner's financial advisor, $12 million to $16.5 million.

7

Work Plan Supplement ¶ 1.

17.     The Examiner filed three more supplements to the original Work Plan, each extending the original engagement period from six months—and each stipulating that "[t]he extension of time to complete the Examiner's report will have a correlative effect upon the estimated budget for fees and expenses to be incurred by the Examiner" as provided in the Work Plan [Docket Nos. 2263, 2868 and 3361].

18.     On April 5, 2013, nearly nine months after the appointment of the Examiner and only one month before work was completed, the *Fourth Supplement to Work Plan of Arthur J. Gonzalez, Examiner* [Docket No. 3361] quantified the "correlative effect" of the four-month expansion of his engagement:

> (a)  for the Examiner's counsel (both primary counsel and conflicts counsel): $44,000,000;
>
> (b)  for the Examiner's financial advisor: $38,200,000; and
>
> (c)  for the Examiner: $550,000.

*Id.* ¶ 4.

19.     The Examiner filed his final report under seal about a month later, on May 13, 2013 [Docket No. 3698], and was discharged from service on September 24, 2013 [Docket No. 5187].

20.     Notably, the Examiner's own fees increased by only $50,000 from the initial estimate to the final estimate.

21.     On May 26, 2014, the Trust voluntarily sent Chadbourne a detailed letter summarizing the grounds for this limited objection.

## APPLICABLE STANDARDS

22.     The Final Fee Application has been evaluated for compliance with all pertinent provisions of the Bankruptcy Code, the Interim Compensation Order, the Court's Administrative Orders M-104, M-151, and M-388 (the "**Local Guidelines**"), and the United States Trustee *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (June 4, 2004) (the "**U.S.T. Guidelines**").

23.     Chadbourne and the Trust participated in preliminary discussions about fees and expenses with the assistance of a fee consultant, Professor Nancy Rapoport, from March through early May of this year.  Though similar discussions yielded consensual resolutions with most of the retained professionals in this case, they did not result in a consensual resolution with Chadbourne.

## ARGUMENT

24.     Quantifying the value of any examiner's report is undoubtedly imprecise. However, one of the indicia of reasonableness under the Bankruptcy Code and precedent is the cost of comparable services in the market.  *See, e.g.*, *In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833, 849 (3d Cir. 1994).

25.     Others have served as examiner and professionals in recent large, complex, and high profile Chapter 11 cases; those engagements provide, at the least, a point of reference for any reasonableness analysis.

26.     Jenner & Block in the *Lehman* cases represented the examiner there, Anton Valukas, for a period of 18 months (compared to 10 months from Chadbourne's retention to the filing of the report here).

27.    During the *Lehman* examiner engagement, Jenner & Block billed around $51 million (135,244.5 hours) at an overall blended hourly rate of $379.10 to prepare a 2,208-page report, including 8,197 footnotes.

28.    Here, Chadbourne's engagement consumed 82,814.5 hours.  The blended hourly billing rates reflected in Chadbourne's final fee application are $824 for partners, $510 for associates, $256 for paralegals, and $600 for all attorneys.  The overall blended rate for all timekeepers in Jenner's final application was $379, compared to Chadbourne's $572 overall blended rate here.

29.    The *Lehman* examiner and his staff reviewed roughly 35 million pages of documents and interviewed more than 250 witnesses, compared to nine million documents and 83 witness interviews here.  Total pre-filing assets disclosed in the *Lehman* cases were approximately $640 billion.  Total pre-filing assets disclosed in this case were approximately $15 billion.

30.    While the circumstances of each Chapter 11 case undoubtedly vary in complexity and the circumstances of each examiner's engagement will differ, if the examiner in the largest and perhaps most complex Chapter 11 case in history can complete his work for so much less (proportionally), at the very least the comparison suggests a need to evaluate carefully the professional services charged to the estate here.

31.    The Trust's evaluation of the Final Fee Application has identified substantial fees and charges that do not conform to the basic standards of reasonableness under section 330 of the Bankruptcy Code.

32.    Through this objection, the Trust seeks disallowance of approximately $4 million in fees and expenses, most of which have been previously identified to Chadbourne in

10

correspondence sent on behalf of the Trust and in the discussions that preceded the

correspondence.

## SPECIFIC OBJECTIONS

### *Timekeeping and Billing Errors*

33.     The Trust identifies several billing discrepancies that have resulted in $8,699 in

overcharges to the estate as a result of timekeepers billing at rates higher than the stated hourly

rate in the fee application, or in calculation errors.  Those charges are itemized on **Exhibit A**.[4]

> *The Trust requests a disallowance of $8,699 in timekeeping and*
> *billing errors.*

### *Routine Billing Activities*

34.     The Trust objects to Chadbourne's request for compensation for time devoted to

routine billing activities.  The review and editing of time entries are not compensable—at any

rate or in any amount.  *See, e.g.*, *In re Mesa Air Group, Inc.*, 449 B.R. 441, 446 (Bankr. S.D.N.Y.

2011) (citing *CT Commc'ns, Inc.*, No. 07-10210, 2010 WL 3386947, at *9 (Bankr. S.D.N.Y.

Aug. 24, 2010)).  Time spent defending a fee applicant's request for fees and expenses is not

compensable under section 330(a) of the Bankruptcy Code.  *In re Asarco, L.L.C.*, No. 12-40997

___ F.3d ___, 2014 WL 1698072 (5th Cir. Apr. 30, 2014).

35.     Chadbourne billed $195,683, itemized on **Exhibit B**, for the preparation and

review of its own invoices (*not* including time spent preparing fee applications, which is

compensable), and responding to inquiries from the U.S. Trustee's office about its professional

fees.

> *The Trust requests a disallowance of $195,683 in fees charged for*
> *these routine billing activities.*

---

[4] For purposes of the Exhibits, some time entries appear in more than one objection category.  After the Court rules on the objections, the Trust will reconcile all objection amounts and proposed reductions to avoid double counting.

### *Unadmitted Attorney, Summer Associate or Law Clerk Time*

36.    Chadbourne billed a total of $5,757 in fees for the work of summer associates or law clerks.  **Exhibit C-1** itemizes time billed by law clerks.

37.    Summer associate time is not compensable in the Southern District of New York.

> *The Trust requests a disallowance of $5,757 in summer associate or law clerk charges.*

38.    Chadbourne billed a total of $2,451,646.50 in fees for attorneys not yet admitted to practice law (although peers in the same associate class had been admitted).

39.    Work performed by attorneys not yet admitted to the bar should be billed at a rate not to exceed the firm's highest paralegal rate.  For Chadbourne, that rate is $330 per hour.

**Exhibit C-2** itemizes the hours billed by non-admitted attorneys and adjusts the fees charged for those services to the paralegal rate.

> *The Trust requests a disallowance of $403,435.50 in non-admitted attorney charges.*

### *Charges after the Examiner's Discharge*

40.    The Examiner and his professionals were discharged from service on September 24, 2013 [Docket No. 5187].  Chadbourne billed the estates $200,963 in fees after that date.  These charges are itemized on **Exhibit D**.

> *The Trust objects to the payment of $200,963 in excess professional fees charged after the Examiner's service as an estate fiduciary had ended.*

### *Contract Attorneys*

41.    Chadbourne billed $841,842 in contract attorney fees as an expense to the estate.

42.    Legal fees for professional services are not reimbursable as expenses.  *In re Midland Capital Corp.*, 82 B.R. 233 (Bankr. S.D.N.Y. 1988); *In re Cenargo Int'l, PLC,* 294 B.R. 571, 606 (Bankr. S.D.N.Y. 2003).

43.      Attorney retentions require particular disclosures under the Bankruptcy Code and rules, including the requirement under section 329(a) to file with the court "a statement of the compensation paid or agreed to be paid," and the requirement under Rule 2014(a) to disclose "the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and" any connections the attorney may have to the parties to the bankruptcy case.

44.      The contract attorneys who provided services to the Examiner were not retained by the estates, did not make the required disclosures, and did not submit the itemized time records necessary for court approval of attorney fees in the Southern District of New York.

A.      Some courts have denied *all* fees to any attorney who fails to make the proper disclosure. *E.g.*, *In re Downs*, 103 F.3d 472 (6th Cir. 1996) (upholding sanctions and disgorgement); *In re Futuronics Corp.*, 655 F.2d 463 (2d Cir. 1981) (decided under precursor to Rule 2016).

B.      In the *Supplemental Declaration of Howard Seife in Connection with Retention and Employment of Chadbourne & Parke LLP as Counsel to the Examiner* [Docket No. 2653], Chadbourne disclosed that it had used, and would continue to use, contract attorneys from a legal staffing firm, Update Legal, to conduct document review.

C.      While Chadbourne asserted that it subjected each contract attorney to the same disclosure evaluation process that it applied to Chadbourne attorneys, Update Legal itself apparently undertook no such effort and did not file its own disclosure.

D.      Further, Chadbourne neither identified the contract attorneys by name nor disclosed its compensation arrangements with the contract attorneys or Update Legal in its disclosure materials.

E.      Finally, the invoices for contract attorney services provided to some of the

parties (but not filed publicly) were, in most cases, illegible and do not appear to contain

the itemized time entries required under the guidelines.

> *The Trust requests a disallowance of $841,842 in contract attorney fees.*

### Typesetting Fees and Expenses

45.      Chadbourne billed $342,952.50 in additional proofreading and quality control

charges necessitated solely by the decision to typeset the Examiner's report.  Chadbourne's fees

for this work are itemized on **Exhibit E**.

46.      Typesetting was unnecessary; generating the report using commercially-available

word processing software,[5] and copying it using a photocopying vendor would have achieved the

same result at a much lower cost to the estates.

47.      This Court has articulated the standard in the Southern District of New York for

determining whether services are necessary.

> [W]hether services are necessary is determined from the perspective of the time at which the services were rendered.  *See* 3 Collier on Bankruptcy ¶ 330.04 (1)(b)(iii).
>
> In the Second Circuit, the "necessary" standard in Section 330 is given a broad interpretation.  Services are "necessary" if they benefit the estate.  *See In re Keene Corp.*, 205 B.R. 690 at 695, Bankruptcy Court, Southern District of New York, 1997.  It's a decision by Judge Bernstein.
>
> The test considers whether services provided were "reasonably likely to benefit the estate" and is an objective test, considering the services that a reasonable lawyer would have performed in the same circumstances.  *See In re Ames Department Store, Inc.*, 76 F.3d 66 at 72, Second Circuit, 1996.

---

[5] As part of the fee review process, the Trust asked Attorney Valukas what method he chose to print and reproduce the *Lehman* examiner's report.  His answer: Microsoft Word.

> The Court has an independent duty to review fee applications and evaluate the compensation requested.  *See In re Keene*, 206 B.R. at 695.

> The Court may reduce or disallow or [sic] request if the services provided no real benefit to the estate.  And that's *Keene* at page 696.

*Transcript Regarding Hearing Held on Thursday April 11, 2013 at 10:02 a.m.* [Docket No. 3444] at 45-46.

48.     Evaluated under this standard, the printing method chosen by the examiner in *Lehman* demonstrates that a reasonable lawyer representing an examiner would not have incurred extra time and expense to typeset an examiner's report when printing using readily-available word processing software and photocopying services would have achieved the same result.

> *The Trust requests a disallowance of $342,952.50 in typesetting-related fees and expenses and $371,405.20 in direct expenses for typesetting the Examiner's report.*

### Unnecessarily High Billing Rates

49.     A financially and legally complex Chapter 11 case undoubtedly requires the contributions of highly skilled professionals with specialized expertise in many different areas of the law.  These experienced and specialized professionals may, if justified, command comparatively higher billing rates than an average Chapter 11 practitioner.

50.     Chadbourne, however, chose to staff even routine aspects of this engagement using senior attorneys at very high rates.  Many routine tasks such as document review, proofreading, editing, and redacting were performed by more experienced attorneys when junior associates or paralegals could have completed the work.  This staffing pattern resulted in an overall blended hourly rate of $572.

***Document Review***

51.     Document collection, cataloguing, and review are a significant part of any examiner's engagement; but it is generally appropriate for that work to be delegated to lower rate attorneys and staff wherever possible.

52.     Despite Chadbourne's representations, in the Second Fee Application, that contract attorneys would complete all "first-tier" document review, [Docket No. 3203] at n.4, the Trust has identified $1,311,843 in fees for "first-tier" document review by Chadbourne attorneys, not including more than $800,000 in contract attorney fees discussed at paragraphs 41-44, *supra*. "First-tier" document review should have been conducted by contract attorneys, as Chadbourne represented that it would be, with proper retention documentation and time records.  Of the $1,311,843 in fees, the Trust has identified $836,614 in "first-tier" document review that was performed by more senior associates or partners at an overall blended rate of $520.  These charges are itemized on **Exhibit F**.  While Chadbourne's expense records do not explicitly disclose the hourly rates charged for contract attorneys, it appears—based on summary data in the expenses records—that Chadbourne billed for the use of contract attorneys at around $50 per hour.  **Exhibit F** adjusts the $520 per hour blended rate to $50 per hour.

> *The Trust requests a disallowance of $756,254 to adjust first-tier document review charges to a contract attorney rate.*

***Clawbacks***

53.     The Examiner requested expansive document production from many interested parties and third parties as part of his investigation.  Most of these parties provided discovery responses to the Examiner through attorneys at Chadbourne.  Mesirow was responsible for uploading the documents into a database, and both Chadbourne and Mesirow reviewed them in detail.

16

54.    Occasionally, parties would notify the Examiner's professionals that certain documents or portions of documents (typically identified by the producing party by Bates number or range) had been inadvertently produced.

55.    Rather than having clerical staff at least initially identify and return these documents, Chadbourne professionals expended $1,119,952 in fees to review clawed back documents for privilege, challenge clawback requests, and research alternative sources of privileged information.

56.    As the Trust understands it, the document production was designed to save time and expense by permitting producing parties to release very broad and inclusive production sets initially.  This arrangement was accompanied by an understanding and an expectation that clawback requests would generally be honored promptly if the producing party later discovered that it had inadvertently produced privileged or non-responsive information.

57.    Instead of allowing the liberal use of clawback requests to streamline the document discovery process, both Chadbourne and Mesirow assumed the burden of using their professionals to independently verify claims of privilege and, in some instances, inappropriately challenge justified clawback requests.

58.    While time constraints may have driven some of this document related activity, Chadbourne has not met its burden to establish the need for more than $1.1 million in professional time, itemized on **Exhibit G**.

> *The Trust requests disallowance of $1,119,952 in fees charged for unnecessary privilege review and other time spent responding to clawback requests.*

17

## CONCLUSION

WHEREFORE, the Trust respectfully submits this *Limited Objection* to the Fifth and

Final Fee Application and requests a total disallowance of $3,875,538 in requested professional

fees and $371,405.20 in expenses.

Dated:  June 2, 2014.

**GODFREY & KAHN, S.C.**

By:    /s/ *Katherine Stadler*
Katherine Stadler (KS-6831)

GODFREY & KAHN, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, Wisconsin  53701-2719
(608) 257-3911

*Attorneys for ResCap Liquidating Trust*

11566560.3