UNITED STATES BANKRUPTCY COURT          Hearing Date: June 18, 2014
SOUTHERN DISTRICT OF NEW YORK           Hearing Time: 10:00 a.m.

--------------------------------------------------- x
                                                     :
In re                                                :          Chapter 11
                                                     :
RESIDENTIAL CAPITAL, LLC,                            :          Case No. 12-12020 (MG)
                                                     :
                                        Debtors.     :          Jointly Administered
                                                     :
--------------------------------------------------- x


**OMNIBUS RESPONSE OF THE UNITED STATES TRUSTEE
REGARDING FEE APPLICATIONS FOR FIFTH
INTERIM AND FINAL AWARDS OF COMPENSATION AND
<u>REIMBURSEMENT OF OUT-OF-POCKET EXPENSES</u>**

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2

By:   Brian S. Masumoto
      Michael T. Driscoll
      Eric J. Small
      Trial Attorneys
      Office of the United States Trustee
      U.S. Federal Office Building
      201 Varick Street, Suite 1006
      New York, NY 10014

# TABLE OF CONTENTS

TABLE OF CONTENTS...............................................................................................i

TABLE OF AUTHORITIES ........................................................................................iii

I.     JURISDICTION, VENUE, AND STATUTORY PREDICATE .......................5

II.    FACTUAL BACKGROUND .............................................................................5
       A.     General Background ..............................................................................5
       B.     Monthly Compensation and Ordinary Course Professional Orders ......6

III.   LEGAL STANDARDS ......................................................................................6
       A.     Reasonableness .....................................................................................6
       B.     Vague Time Entries ..............................................................................9
       C.     Overhead and Other Administrative Activities....................................11
       D.     Preparation of Fee Applications..........................................................12
       E.     "Lumping" or Block Billing.................................................................13
       F.     Actual and Necessary Expenses...........................................................14
       G.     Interim Compensation..........................................................................15
       H.     Certification ........................................................................................16

IV.    RESPONSE.......................................................................................................16
       A.     Debtors' Professionals .........................................................................16
              1.     Bradley Arant...........................................................................16
              2.     Centerview ...............................................................................17
              3.     Curtis Mallet ............................................................................17
              4.     Ernst & Young ..........................................................................17
              5.     FTI……....................................................................................18
              6.     Hudson Cook ............................................................................18
              7.     Mercer ......................................................................................18
              8.     Morrison Cohen ........................................................................19
              9.     Morrison Foerster......................................................................19
              10.    Orrick.......................................................................................19
              11.    Pepper Hamilton .......................................................................20
              12.    Perkins Coie..............................................................................20
              13.    Severson....................................................................................20

       B.     Committee's Professionals ....................................................................21
              1.     AlixPartners..............................................................................21
              2.     Carter Ledyard ..........................................................................21
                     i.     Objection to Fees Related to Conflict Checks ..................22
              3.     Epiq……...................................................................................22
              4.     Kramer Levin ............................................................................22
              5.     Moelis .......................................................................................23
              6.     Pachulski Stang.........................................................................23

       7.     Quest ...........................................................................................................23

       8.     Wilmer Hale.................................................................................................24

  C.    Examiner's Professionals ......................................................................................24

       1.     Chadbourne.................................................................................................24

       2.     Mesirow .....................................................................................................24

V.    CONCLUSION...............................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

In re ACT Mfg., Inc., 281 B.R. 468 (Bankr. D. Mass. 2002) .......................................................15

In re Am. Preferred Prescription, Inc., 218 B.R. 680 (Bankr. E.D.N.Y. 1998) ...........................15

In re Almacs, Inc., 178 B.R. 598 (Bankr. D. R.I. 1995) ..............................................................12

In re Baker, 374 B.R. 489 (Bankr. E.D.N.Y. 2007) ............................................................ passim

In re Barron, 73 B.R. 812 (Bankr. S.D. Cal. 1987) .............................................................15, 16

In re Bennett Funding Grp., 213 B.R. 234 (Bankr. N.D.N.Y. 1997) ................................... passim

In re Beverly Mfg. Corp., 841 F.2d 365 (11th Cir. 1988). ............................................................8

In re Brous, 370 B.R. 563 (Bankr. S.D.N.Y. 2007) ................................................................8, 14

In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833 (3d Cir. 1994) ...................................................9

In re CCT Commc'ns, Inc., No. 07–10210 (SMB), 2010 WL 3386947
    (Bankr. S.D.N.Y. Aug. 24, 2010) ................................................................................ passim

In re Child World, Inc., 185 B.R. 14 (Bankr. S.D.N.Y. 1995) ..............................................9, 15

In re Computer Learning Centers, Inc., 285 B.R. 191 (Bankr. E.D. Va. 2002)...........................12

In re Dimas, LLC, 357 B.R. 563 (Bankr. N.D. Cal. 2006) ..........................................................11

In re Engel, 124 F.3d 567 (3d Cir. 1997)......................................................................................8

In re Fibermark, Inc., 349 B.R. 385 (Bankr. D. Vt. 2006)....................................................10, 11

In re First Hartford Corp., 23 B.R. 729 (Bankr. S.D.N.Y. 1982) ...............................................16

In re First Software Corp., 79 B.R. 108 (Bankr. D. Mass. 1987) ................................................12

In re Hirsch, No. 1–02–17966–DEM, 2008 WL 5234057
    (Bankr. E.D.N.Y. Dec. 11, 2009) ........................................................................................10

In re Hudson, 364 B.R. 875 (Bankr. N.D.N.Y. 2007) ...........................................................10, 11

In re Joseph Charles & Assocs., Inc., 295 B.R. 399 (Bankr. S.D. Fla. 2003) .............................12

In re Keene Corp., 205 B.R. 690 (Bankr. S.D.N.Y. 1997) ......................................................8, 9

In re Korea Chosun Daily Times, Inc., 337 B.R. 758 (Bankr. E.D.N.Y. 2005) ...........................14

In re Lederman Enter., Inc., 997 F.2d 1321 (10th Cir. 1993) .......................................................8

In re Market Resources Dev., 320 B.R. 841 (Bankr. E.D. Va. 2004)...........................................11

In re Mesa Air Grp. Inc., 449 B.R. 441 (Bankr. S.D.N.Y. 2011) ................................................13

In re M. Fabrikant & Sons, Inc., Case No. 06-12737 (SMB)
    (Bankr. S.D.N.Y. Jan. 13, 2009)..........................................................................................14

In re Northwest Airlines Corp., 382 B.R. 632 (Bankr. S.D.N.Y. 2008).........................................8

In re S.T.N. Enters., Inc., 70 B.R. 823 (Bankr. D. Vt. 1987)......................................................14

n re Taxman Clothing Co., 49 F.3d 310 (7th Cir. 1995).................................................................8

In re Temple Retirement Cmty., Inc., 97 B.R. 333 (Bankr. W.D. Tex. 1989) ...............................9

In re Value City Holdings, Inc., 436 B.R. 300 (Bankr. S.D.N.Y. 2010) ...............................7, 8, 9

Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19
    (2d Cir. B.A.P. 1997) .............................................................................................................8

Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253 (3d Cir. 1995) .............................8

**Statutes & Rules**

11 U.S.C. § 330................................................................................................................. passim

11 U.S.C. § 331................................................................................................................. passim

28 U.S.C. § 157.................................................................................................................5
28 U.S.C. § 1334.............................................................................................................5
28 U.S.C. § 1408.............................................................................................................5

**Other Authorities**

Administrative Order M-447 ............................................................................... *passim*
United States Trustee Guidelines for Reviewing Applications for Compensation and
Reimbursement of Expenses Filed Under 11 U.S.C. § 330.................................... *passim*

TO:     THE HONORABLE MARTIN GLENN,
        UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2 (the "United States

Trustee"), respectfully submits this omnibus response (the "Response") to the fifth interim

and/or final fee applications (the "Applications") of the retained professionals (the "Retained

Professionals") seeking awards of compensation and reimbursement of out-of-pocket expenses

for the period of September 1, 2013 through December 17, 2013 (the "Interim Fee Period") and

May 14, 2012 through December 17, 2012 (the "Final Fee Period") set forth below:[1]

| Name | Retained As | Interim Fees | Interim Expenses | Final Fees | Final Expenses |
|---|---|---|---|---|---|
| Bradley Arant Boult Cummings LLP, ECF Doc. No. 6537. | Debtors' Special Litigation and Compliance Counsel | $577,839.60 | $33,756.83 | $11,959,869.89 | $613,918.47 |
| Bryan Cave LLP, ECF Doc. No. 6512. | Debtors' Ordinary Course Professional | $0.00 | $0.00 | $279,187.50 | $116.60 |
| Carpenter Lipps & Leland LLP, ECF Doc. No. 6543. | Debtors' Special Litigation Counsel | $851,039.00 | $253,922.08 | $6,163,425.00 | $2,609,058.89 |
| Centerview Partners LLC, ECF Doc. No. 6573. | Debtors' Investment Banker | $1,200,000.00 | $7,121.41 | $9,500,000.00 | $68,853.16 |
| Curtis, Mallet-Prevost, Colt & Mosle LLP, ECF Doc. No. 6588. | Debtors' Conflicts Counsel | $3,942,109.00 | $30,505.36 | $10,011,761.74 | $53,990.94 |
| Deloitte & Touche LLP, ECF Doc. No. 6531. | Debtors' Independent Auditor | $0.00 | $0.00 | $5,497,620.65 | $0.00 |

[1] As set forth more specifically in Section IV of this Omnibus Response, with the exception of one Application, the United States Trustee has no objection to the Applications which (i) reflect voluntary reductions based upon discussions between the Retained Professional and the United States Trustee, (ii) reflect the United States Trustee's determination that the voluntary reduction taken by the respective Retained Professional would be sufficient to address the United States Trustee's concerns, or (iii) do not give rise to any objections by the United States Trustee based on his review.

| Dorsey & Whitney LLP, ECF Doc. No. 6539. | Debtors' Special Securitization and Investigatory Counsel | $38,782.35 | $240.60 | $812,063.65 | $5,480.03 |
|---|---|---|---|---|---|
| Ernst & Young, LLP, ECF Doc. No. 6536. | Debtors' Tax Advisor | $941,770.00 | $7,782.51 | $1,886,517.75 | $43,285.29 |
| Fortace LLC, ECF Doc. Nos. 6570 & 6696. | Debtors' Consultant | $154,052.00 | $372,849.29 | $2,222,459.50 | $659,745.97 |
| FTI Consulting, Inc., ECF Doc. No. 6591. | Debtors' Financial Advisor | $3,633,019.50 | $46,041.87 | $32,491,560.75 | $920,158.65 |
| Hudson Cook, LLP, ECF Doc. No. 5980. | Debtors' Special Counsel | $0.00 | $0.00 | $2,284,737.50 | $30,550.67 |
| KPMG LLP, ECF Doc. No. 6542. | Debtors' Tax Compliance Professionals | $32,364.25 | $0.00 | $1,791,439.65 | $102,515.04 |
| Kurtzman Carson Consultants, LLC, ECF Doc. No. 6549. | Administrative Agent | $118,366.50 | $0.00 | $212,440.50 | $0.00 |
| Locke Lord LLP, ECF Doc. No. 6553. | Debtors' Litigation Counsel | $140,400.80 | $8,924.87 | $1,222,388.78 | $22,716.90 |
| Mercer (US) Inc., ECF Doc. No. 6571. | Debtors' Compensation Consultant | $46,497.16 | $5,054.46 | $317,003.56 | $45,041.90 |
| Morrison Cohen LLP, ECF Doc. No. 6555. | Attorneys for the Independent Directors | $656,310.00 | $11,472.41 | $4,212,750.50 | $105,565.95 |
| Morrison & Foerster LLP, ECF Doc. No. 6567. | Debtors' Bankruptcy Counsel | $18,626,667.90 | $1,118,669.96 | $98,457,127.80 | $3,043,012.82 |
| Orrick, Herrington & Sutcliffe LLP, ECF Doc. No. 6550. | Debtors' Special Securitization Transactional and Litigation Counsel | $120,018.94 | $2,290.80 | $1,844,902.19 | $4,807.25 |
| Pepper Hamilton LLP, ECF Doc. No. 5819. | Debtors' Special Foreclosure Review Counsel | $0.00 | $0.00 | $5,300,886.00 | $125,553.64 |
| Perkins Coie LLP, ECF No. 6552. | Debtors' Special Insurance Coverage Counsel | $154,754.25 | $873.63 | $1,469,618.00 | $14,725.01 |

| Prince Lobel Tye LLP, ECF Doc. No. 6541. | Debtors' Ordinary Course Professional | $0.00 | $0.00 | $222,328.00 | $29,451.34 |
| Rubenstein Associates, Inc., ECF Doc. No. 6579. | Corporate Communications Consultant | $0.00 | $0.00 | $38,276.00 | $9,920.93 |
| Severson & Werson, P.C., ECF Doc. No. 6561. | Debtors' Special California Litigation Counsel | $165,671.55 | $12,386.44 | $3,321,340.39 | $297,513.49 |
| Tilghman & Co., P.C., ECF Doc. No. 6556 | Noticing Agent for Kessler Settlement | $11,507.50 | $29,046.14 | $11,507.50 | $29,046.14 |
| Towers Watson Delaware Inc., ECF Doc. No. 6528. | Human Resources Consultant | $0.00 | $0.00 | $175,665.92 | $9,550.01 |
| Troutman Sanders LLP, ECF Doc. No. 6560. | Debtors' Ordinary Course Professional | $0.00 | $0.00 | $1,043,948.96 | $16,823.37 |
| Weir & Partners LLP, ECF Doc. No. 6562. | Debtors' Special Counsel | $2,583.00 | $159.28 | $2,583.00 | $159.28 |
| AlixPartners, LLP, ECF Doc. No. 6580. | Committee's Financial Advisor | $2,086,086.18 | $3,873.61 | $14,718,273.53 | $103,325.70 |
| Analytic Focus, LLC, ECF Doc. No. 6581. | Committee's Consultant | $0.00 | $0.00 | $592,840.25 | $355.29 |
| Carter Ledyard & Milburn LLP, ECF Doc. No. 6569. | Committee's Consultant | $121,101.75 | $707.01 | $121,101.75 | $707.01 |
| Coherent Economics, LLC, ECF Doc. No. 6586. | Committee's Consultant | $0.00 | $0.00 | $1,135,367.52 | $15,194.52 |
| Epiq Bankruptcy Solutions, LLC, ECF Doc. No. 6582. | Committee's Information Agent | $38,906.00 | $42,135.64 | $186,302.06 | $255,878.82 |
| JF Morrow, ECF Doc. No. 6587. | Committee's Consultant | $0.00 | $0.00 | $250,060.00 | $1,345.61 |
| Kramer Levin Naftalis & Frankel LLP, ECF Doc. No. 6589. | Committee's Bankruptcy Counsel | $12,927,413.00 | $516,511.68 | $65,000,300.55 | $2,416,309.04 |

| | | | | | |
|---|---|---|---|---|---|
| Moelis & Company LLC, ECF Doc. No. 6583. | Committee's Investment Banker | $7,525,000.00 | $5,172.69 | $14,616,129.03 | $250,527.01 |
| Pachulski Stang Ziehl & Jones LLP, ECF Doc. No. 6565. | Committee's Co-Counsel | $1,865,431.00 | $50,444.07 | $4,844,469.07 | $94,832.44 |
| Quest Turnaround Advisors, LLC, ECF Doc. No.6585. | Committee's Consultant | $345,646.12 | $17,614.09 | $345,646.12 | $17,614.09 |
| San Marino Business Partners LLC, ECF Doc. No. 6590. | Committee's Consultant | $0.00 | $0.00 | $236,157.38 | $11,404.30 |
| Silverman Acampora LLP, ECF Doc. No. 6559. | Committee's Special Counsel | $379,204.75 | $10,700.73 | $1,160,460.25 | $15,099.70 |
| Wilmer Cutler Pickering Hale and Dorr LLP, ECF Doc. No. 6584. | Committee's Special Regulatory Counsel | $128,252.50 | $1,026.67 | $831,751.50 | $3,713.58 |
| Arthur J. Gonzalez, ECF Doc. No. 5850. | Examiner | $0.00 | $0.00 | $568,612.50 | $0.00 |
| Chadbourne & Parke LLP, ECF Doc. No. 6577. | Examiner's Counsel | $172,561.00 | $4,871.65 | $46,890,806.66 | $2,995,419.47 |
| Leonard, Street and Deinard P.A., ECF Doc. No. 5844. | Examiner's Special Minnesota Counsel | $0.00 | $0.00 | $100,000.00 | $4,210.00 |
| Mesirow Financial Consulting, LLC ("Mesirow"), ECF Doc. No. 5848 & 6578. | Examiner's Financial Advisor | $57,179.00 | $0.00 | $39,492,705.00 | $344,747.00 |
| Wolf Halderstein Adler Freeman & Herz LLP; ECF Doc. No. 5846. | Examiner's Conflicts Counsel | $0.00 | $0.00 | $82,997.85 | $1,670.56 |
| | **Totals** | $57,060,534.60 | $2,594,155.78 | $393,927,391.70 | $15,393,915.88 |

## I.  JURISDICTION, VENUE, AND STATUTORY PREDICATE

1.      The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to

28 U.S.C. § 1408.

2.      The statutory predicates are Sections 330 and 331 of title 11, of the United States

Code (the "Bankruptcy Code").  These matters were initiated pursuant to Rule 2016 of the

Federal Rules of Bankruptcy Procedure, Rule 2016-1 of the Local Bankruptcy Rules for the

Southern District of New York, Amended Guidelines for Fees and Disbursements for

Professionals in Southern District of New York Bankruptcy Cases (the "General Order M-447"),

and the United States Trustee Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "UST Guidelines," together with

General Order M-447, the "Guidelines").

## II.  FACTUAL BACKGROUND

**A.**      **General Background**

3.      On May 14, 2012, Residential Capital, LLC and certain of its direct and indirect

subsidiaries (collectively, the "Debtors") each filed petitions for relief under Chapter 11 of the

Bankruptcy Code.  ECF Doc. No. 1.

4.      On May 16, 2012, pursuant to Section 1102 of the Bankruptcy Code, the United

States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in

these cases.  ECF Doc. No. 102.

5.      On July 3, 2012, the Court entered an order approving the United States Trustee's appointment of Arthur J. Gonzalez, Esq. as the Chapter 11 Examiner in these cases.  ECF Doc. No. 674.

6.      On May 13, 2013, the Examiner filed his report under seal.  ECF Doc. No. 3698.

7.      On September 24, 2013, the Court entered an order discharging the Examiner of his duties.  ECF Doc. No. 5187.

8.      On December 11, 2013, the Court entered an order confirming the Second Amended Joint Chapter 11 Plan (the "Plan").  ECF Doc. No. 6065.

9.      On December 17, 2013, Debtors filed a notice indicating that the Effective Date of the Plan occurred, and the Plan was substantially consummated.  ECF Doc. No. 6137.

**B.      Monthly Compensation and Ordinary Course Professional Orders**

10.     By Order entered July 17, 2012, the Court approved procedures for monthly compensation and reimbursement of out-of-pocket expenses (the "Monthly Compensation Order").  ECF Doc. No. 797.  Under the Monthly Compensation Order, the Retained Professionals may be paid 80 percent of fees incurred and 100 percent of expenses on a monthly basis.  Id.

11.     By Order entered on July 17, 2012, the Court approved procedures for the employment of professionals utilized in the ordinary course (the "OCP Order").  ECF Doc. No. 799.  On February 7, 2013, the Court approved amended procedures under the OCP Order, which do not require an ordinary course professional to file a fee application provided that the professional's compensation does not exceed $75,000 per month or $1 million during the pendency of the case.  ECF Doc. No. 2858.

## III.  LEGAL STANDARDS

**A.**    <u>**Reasonableness**</u>

12.    Bankruptcy Code Section 330(a)(1) provides that:

After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee . . . an examiner . . . or a professional person employed under section 327 or 1103 –

    (A)    reasonable compensation for actual, necessary services rendered by the trustee, examiner, . . . professional person, or attorney and by any paraprofessional person employed by any such person; and

    (B)    reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

13.    To determine reasonableness, Section 330(a)(3) instructs that:

the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

a.    the time spent on such services;

b.    the rates charged for such services;

c.    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

d.    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

e.    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

f.    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).  To determine "reasonable compensation," bankruptcy courts in this

district are guided by, among other things, the Guidelines.  <u>See</u> <u>In re Value City Holdings, Inc.</u>,

436 B.R. 300, 305 (Bankr. S.D.N.Y. 2010) ("In addition to conforming to the requirements of

the Bankruptcy Code, requests for professional compensation must also conform with the

Bankruptcy Rules, UST Fee Guidelines and the SDNY Guidelines.") (footnotes omitted); In re

Brous, 370 B.R. 563, 569, n.8. (Bankr. S.D.N.Y. 2007) (adopting the UST Guidelines).

14.     Section 330 requires the applicant to establish both reasonableness and benefit to

the estate from the professional's services.  In re Lederman Enter., Inc., 997 F.2d 1321, 1323

(10th Cir. 1993).  To be compensable, the professional's services must have been necessary and

beneficial to the estate or its creditors.  In re Engel, 124 F.3d 567, 573 (3d Cir. 1997).

15.     Each applicant bears the burden of proving the reasonableness of its fees and

expenses sought.  Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19, 24

(2d Cir. B.A.P. 1997); Value City, 436 B.R. at 305; In re CCT Commc'ns, Inc., No. 07–10210

(SMB), 2010 WL 3386947, at *4 (Bankr. S.D.N.Y. Aug. 24, 2010); In re Northwest Airlines

Corp., 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008) (citations omitted); In re Keene Corp., 205

B.R. 690, 695 (Bankr. S.D.N.Y. 1997).  To satisfy its burden, an applicant must justify its

charges with detailed, specific, itemized documentation.  In re Baker, 374 B.R. 489, 494 (Bankr.

E.D.N.Y. 2007); In re Bennett Funding Grp., 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997).

16.     If an applicant fails to sustain its burden on reasonableness, a court may properly

deny the application for compensation.  In re Beverly Mfg. Corp., 841 F.2d 365, 371 (11th Cir.

1988).  Similarly, a court may reduce a professional's fees or expenses when they are

disproportionate to the benefit to the estate, even if it already has approved the professional's

retention under Sections 327 and 328 of the Bankruptcy Code.  In re Taxman Clothing Co., 49

F.3d 310, 316 (7th Cir. 1995); Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253,

262–63 (3d Cir. 1995) (affirming lower court's denial of improperly documented and inadequately detailed expenses).

17.    The Court has an independent burden to review fee applications "lest overreaching . . . professionals drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors." Keene Corp., 205 B.R. at 695 (quoting In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 844 (3d Cir. 1994)); CCT, 2010 WL 3386947, at *4; Value City, 436 B.R. at 305. Accordingly, courts serve a vitally important gate-keeping role in enforcing the Code's requirements that only reasonable fees be approved and paid as well as maintaining public confidence in the bankruptcy system itself. In re Temple Retirement Cmty., Inc., 97 B.R. 333, 337 (Bankr. W.D. Tex. 1989). "[T]he judiciary should retain control of fees, given the sensitivities they generate and the need to promote public confidence in the system." In re Child World, Inc., 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995).

**B.    Vague Time Entries**

18.    Time entries may not be vague. The Retained Professionals have the burden of proving the reasonableness of their fee requests. Accordingly, they must provide specific and detailed time records. To that end, the UST Guidelines require:

> Time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication. Time entries for court hearings and conferences should identify the subject of the hearing or conference.

See UST Guidelines at (b)(4)(v).

19.    In order to enable the Court to determine whether a professional's time spent on a task is reasonable, time entries must be specific and the records must clearly identify each discrete task billed. Baker, 374 B.R. at 495 ("The records must be detailed enough to enable a Court to determine whether the attorneys are claiming compensation for hours that are

9

'redundant, excessive, or otherwise unnecessary.'"); see also Bennett Funding, 213 B.R. at 244

("In cases where the time entry is too vague or insufficient to allow for a fair evaluation of the

work done and the reasonableness and necessity for such work, the court should disallow

compensation for such services."). Such vague entries "make a fair evaluation of the work done

and the reasonableness and necessity for the work extremely difficult, if not impossible." In re

Hudson, 364 B.R. 875, 880 (Bankr. N.D.N.Y. 2007).

20.    Instead of embarking on a treasure hunt to determine what services were

performed on a specific date, the time entries submitted should allow the Court and a reviewer to

determine "the legal issues involved, the difficulties of the issues, and the resolution or results

obtained." Id. References to telephone calls that do not make clear who the call was with or the

subject matter discussed, preparation of memoranda of law that do not indicate the legal issues

involved, email communications without a description of the substance of the communications

and the recipients of such communications, and the review of documents without providing a

description of the document reviewed are all examples of vague time entries that make a fair

evaluation of the work done and its reasonableness impossible. See id.; CCT, 2010 WL

3386947, at *7 (disallowing time entries referring to telephone calls and emails without

identifying the subject matter of the call or email, referring to preparation of draft letters without

identifying the subject matter, and referring to vague description such as "work on fee

application" or "attention to Vlahos's request"); In re Fibermark, Inc., 349 B.R. 385, 396–97

(Bankr. D. Vt. 2006); In re Hirsch, No. 1–02–17966–DEM, 2008 WL 5234057, at *7 (Bankr.

E.D.N.Y. Dec. 11, 2009) ("Entries that contain such vague characterization of the services

performed as 'meeting with,' 'conversations with,' 'review materials or docket,' and 'draft

correspondence to' fail to adequately describe the services provided and are routinely disallowed.").

### C.    Overhead and Other Administrative Activities

21.    When determining whether requested fees are reasonable, courts consider, among other things, the professional's expertise or skills.  See, e.g., Fibermark, 349 B.R. at 396–97 ("The Court specifically considers where the task at hand could have been performed competently by a less experienced professional at a lower cost to the estate.  Whether it is reasonable for a certain professional to complete a task is to be determined by the level and skill reasonably required for the task.").

22.    Accordingly, many courts have taken the position that tasks that are clerical in nature and that are appropriate for office staff, which is considered part of a professional's overhead, may not be billed to the estate.  Id. (concluding that non-compensable administrative activities include tasks such as "mailing or delivering papers; photocopying; word processing, including but not limited to creating templates, adding pages to various stipulations, formatting, creating spreadsheets, scanning and saving files into the firm's computer system, creating and revising charts, inserting case numbers into orders and printing documents; organizing files; maintaining an internal calendar; checking for docket updates; updating a master service list; creating, organizing, and indexing binders; pulling precedent pleadings requested by an attorney; and making travel arrangements"); see also Hudson, 364 B.R. at 881 (holding that photocopying, organizing documents, and assembling exhibits constituted clerical tasks included in the firm's overhead); In re Dimas, LLC, 357 B.R. 563, 577 (Bankr. N.D. Cal. 2006) (disallowing services performed by professionals which were clerical in nature, such as indexing, organizing and

copying documents, conducting PACER searches to locate an order or other pleading, uploading

pleadings to CM-ECF, and filing pleadings); In re Market Resources Dev., 320 B.R. 841, 846

(Bankr. E.D. Va. 2004) (concluding that tasks such as sending documents, delivering documents,

printing, and copying were non-compensable overhead); In re Joseph Charles & Assocs., Inc.,

295 B.R. 399, 401 (Bankr. S.D. Fla. 2003) (holding that a paraprofessional's serving and filing

of an objection fell within the purview of clerical duties which were non-compensable).

23.     Word processing is also "a clerical service regardless of who performs it."

Bennett Funding, 213 B.R. at 428; UST Guidelines at 4(b)(5)(vii).  As an overhead expense,

word processing cannot be billed to the client.   Moreover, time spent by a firm's library staff is

considered overhead.  See In re Almacs, Inc., 178 B.R. 598, 606 (Bankr. D. R.I. 1995) (noting

that debtor's counsel use of librarian was "overhead" and was not properly charged to the estate);

In re First Software Corp., 79 B.R. 108, 123 (Bankr. D. Mass. 1987) (disallowing part of the

compensation for research performed by a librarian).  A court should therefore deny fees

associated with clerical tasks.

## D.      Preparation of Fee Applications

24.     While the United States Trustee acknowledges the allowance of a reasonable

amount of time for fee application preparation under the Bankruptcy Code, the fees related to

such task should be limited to the preparation of the actual fee application, and should not

encompass the review and correction of bills and response to the United States Trustee inquiries

or objections raised with respect to the fee applications.  Said differently, the Bankruptcy Code

does not give professionals carte blanche to charge debtors' estates for unreasonable fees to

prepare fee applications.  As a court in In re Computer Learning Centers, Inc., held:

> This does not mean that every aspect of preparing a fee application is
> compensable . . . portions of the billing process common to billing both

bankruptcy clients and non-bankruptcy clients are not compensable under §330 because they are part of the professional's overhead. They are not separately charged to non-bankruptcy clients and no additional effort is required to complete them for a bankruptcy client. For example, maintaining time records does not require additional effort. Lawyers and accountants maintain the same time records in a non-bankruptcy matter as in bankruptcy matters. Nor do lawyers or accountants charge for preparing their bills. Bills must be prepared in non-bankruptcy matters as well as bankruptcy matters. There may be some additional effort in putting the time records into the format required by the court. For example, the court requires time records to be maintained chronologically by task. While this may sometimes differ from the format of a non-bankruptcy bill, the additional effort is not generally significant if the records are initially properly set-up. Time records are almost universally maintained on computers with software that shows multiple formats, one of which will usually satisfy the bankruptcy requirements. "A computer billing package used by a professional that does not retrieve information in a format compatible with bankruptcy requirements and requires revisions to rectify the inadequacies, is not a deficiency the estate should pay for." This is especially true for professionals who regularly practice in this court and regularly prepare fee applications. Only those aspects of preparing a bankruptcy fee application that require additional-not merely different-efforts are compensable under §330(a)(6).

285 B.R. 191, 219–20 (Bankr. E.D. Va. 2002) (citations omitted); see also In re Mesa Air Grp. Inc., 449 B.R. 441, 445 (Bankr. S.D.N.Y. 2011) (quoting CCT, 2010 WL 3386947, at *9) ("'[T]he review and editing of time records – as opposed to fee applications – is not compensable.'"). Accordingly, billing a debtor's estate for time spent reviewing the firm's time entries to ensure compliance with the guidelines imposed by case law, the Court, and the United States Trustee as well as handling administrative matters in connection with billing for the engagement should not be compensable.

**E.    "Lumping" or Block Billing**

25.    According to the UST Guidelines, billing records must clearly identify each discrete task billed, indicate the date the task was performed, the precise amount of time spent (not to be billed in increments greater than one-tenth of an hour), who performed the task, the level of experience, and that person's hourly rate. See UST Guidelines at (b)(4)(v). Moreover,

13

the UST Guidelines provide that "[s]ervices should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." Id. The UST Guidelines only permit "lumping" where the aggregate time does not exceed a half-hour. Id.; see also General Order M-447 at (A)(4)(c)(iii) (same).

26.     Recording multiple tasks as one billing entry, typically referred to as "block billing" or "lumping," is routinely disallowed as it makes it exceedingly difficult to determine the reasonableness of the time spent on each of the individual tasks performed. See Baker, 374 B.R. at 494 (citations omitted) ("A professional is required to bill each task separately. That way, a Court can scrutinize the reasonableness of the time expended and counsel is not tempted to inflate the actual time spent and group multiple tasks together hoping to camouflage the true length of an individual task."). As a result of "lumping" time, the "timekeeper fails to sustain [his] burden of providing that [his] fees are reasonable." Brous, 370 B.R. at 576. Consequently, courts summarily will disallow time for discrete legal services merged together in a fee application. See, e.g., Baker, 374 B.R. at 496 (deducting 20% from the requested fees for improper block billing); see also In re M. Fabrikant & Sons, Inc., Case No. 06-12737 (SMB) (Bankr. S.D.N.Y. Jan. 13, 2009) (Memorandum Decision Regarding Applications for Professional Fees and Reimbursement of Expenses) (Docket No. 926) (allowing only 30 minutes for each "lumped" entry, irrespective of the aggregate time billed for that entry); CCT, 2010 WL 3386947 at *7 (allowing only 30 minutes of time for lumped entries).

F.     **Actual and Necessary Expenses**

27.     Under Section 330(a)(1)(B), only documented expenses that are actual and necessary are reimbursable. 11 U.S.C. § 330(a)(1)(B). Professionals must "furnish enough specificity for the Court to establish whether a given expense was both actual and necessary." In

re Korea Chosun Daily Times, Inc., 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005) (quoting In re

S.T.N. Enters., Inc., 70 B.R. 823, 834 (Bankr. D. Vt. 1987)). Expenses are "actual" if they are

incurred and not based on a formula or pro rata calculation. Bennett Funding, 213 B.R. at 398.

Expenses are "necessary" if they were "reasonably needed to accomplish proper representation

of the client." In re Am. Preferred Prescription, Inc., 218 B.R. 680, 686–87 (Bankr. E.D.N.Y.

1998).

28.    With respect to photocopying charges, General Order M-447, however, provide as

follows: "Photocopying shall be reimbursable at the lesser of $.10 or cost." General Order M-

447 at F(2) (emphasis added).

## G.    Interim Compensation

29.    Interim compensation to professionals, as reflected in Section 331, finds its

origins in the equity powers of the bankruptcy court. In re Barron, 73 B.R. 812, 814 (Bankr.

S.D. Cal. 1987). Therefore, the Bankruptcy Court has broad discretion in the course of

examining and awarding interim fee applications. Id.

30.    In particular, "whether interim allowances are awarded, and in what amounts,

[are] questions left by Congress to the sound discretion of the bankruptcy court." Id. Because

the pending Applications are interim in nature, the timing of any payments is also within the

parameters of the Court's discretion. Id. Furthermore, courts have discretion to defer ruling on

any or all of the Applications, until the time for final applications is proper. In re ACT Mfg.,

Inc., 281 B.R. 468, 474 (Bankr. D. Mass. 2002).

31.    Section 331 incorporates the requirements of 11 U.S.C. § 330, and the standards

are the same for interim and final awards of compensation. See Bennett Funding, 213 B.R. at

244. At the interim fee stage, "there is [no] legal entitlement to payment prior to the final fee

award." <u>Child World</u>, 185 B.R. at 17.  Section 331 "is permissive, nothing in that provision

requires a court to grant an application for interim compensation." <u>Id</u>.  Thus, the statute

"authorizes the award of interim compensation, but does not mandate it." <u>In re First Hartford</u>

<u>Corp.</u>, 23 B.R. 729, 732 (Bankr. S.D.N.Y. 1982); <u>see</u> <u>also</u> <u>Barron</u>, 73 B.R. at 814 (noting that

Congressional intent underlying Section 331 "was only to give officers of the estate an

<u>opportunity</u> to apply for reimbursement.") (emphasis in original).

**H.**     **Certification**

32.     Pursuant to General Order M-447, each fee application filed after February 5,

2013 must include a certification from a "Certifying Professional" that:

> (a) the Certifying Professional has read the application; (b) to the best of the
> Certifying Professional's knowledge, information and belief formed after
> reasonable inquiry, the fees and disbursements sought fall within these Amended
> Guidelines, except as specifically noted in the certification and described in the
> fee application; (c) except to the extent that fees or disbursements are prohibited
> by these Amended Guidelines, the fees and disbursements sought are billed at
> rates and in accordance with practices customarily employed by the applicant and
> generally accepted by the applicant's clients; and (d) in providing a reimbursable
> service, the applicant does not make a profit on the service, whether the service is
> performed by the applicant in-house or through a third party.

General Order M-447 at B(1).

### IV. RESPONSE

**A.**     **Debtors' Professionals**

**1.**     **Bradley Arant**

Bradley Arant seeks the allowance of fees aggregating $577,839.60 and reimbursement

of expenses aggregating $33,756.83 for the Interim Fee Period.  At the request of the United

States Trustee, based upon specifically identified vague or lumped time entries and entries

related to the use of transitory timekeepers, Bradley Arant agreed to reduce its fee request by

$2,915.53.  It also agreed to reduce its expense reimbursement request by $597.12, to eliminate

16

the charge for travel costs to New York for a hearing in which no Bradley Arant employee

served as a witness.  Accordingly, the United States Trustee has no objection to the allowance of

the interim fees or expenses in the reduced amounts.

        2.        **Centerview**

Centerview seeks the allowance of fees aggregating $1,200,000.00 and reimbursement of

out-of-pocket expenses aggregating $7,121.41 for the Interim Fee Period.  At the request of the

United States Trustee, Centerview agreed to reduce its expense request by $1,516.80 in

connection with certain professionals not working 4 hours per day to justify incurring a taxi or a

meal expense.  Accordingly, the United States Trustee has no objection to the allowance of the

interim fees in the requested amount or expenses in the reduced amount.

        3.        **Curtis Mallet**

Curtis Mallet seeks the allowance of fees aggregating $3,942,109.00 and reimbursement

of out-of-pocket expenses aggregating $30,505.36 for the Interim Fee Period.  At the request of

the United States Trustee based upon specifically identified time entries related to reviewing and

revising time narratives, Curtis Mallet agreed to reduce its fee request by $4,400.00.

Accordingly, the United States Trustee has no objection to the allowance of the interim fees or

expenses in the reduced fee amount.

        4.        **Ernst & Young**

Ernst & Young seeks an allowance of fees aggregating $941,770.00 and reimbursement

of expenses aggregating $7,782.51 for the Interim Fee Period.  At the request of the United

States Trustee, Ernst & Young agreed to reduce its fee request by $1,709.00 in connection with

certain instances of reviewing and revising time entries.  In addition, Ernst & Young agreed to

reduce its expense request by $54.81 for meal expenses that exceeded $20.00 per person.

Accordingly, the United States Trustee has no objection to the allowance of the interim fees or expenses in the reduced fee and expense amounts.

**5.**    **FTI**

FTI seeks an allowance of fees aggregating $3,633,019.50 and reimbursement of expenses aggregating $46,041.87 for the Interim Fee Period.  At the request of the United States Trustee, FTI agreed to reduce its expense request by $11,280.22 (in addition to its voluntary reduction of $28,047.20 set forth in its fee application) with respect to IT expenses, meal expenses and travel expenses.  Accordingly, the United States Trustee has no objection to the allowance of the interim reimbursement of expenses to FTI in the reduced expense amount.

**6.**    **Hudson Cook**

Hudson Cook seeks allowance of fees aggregating $219,318.00 for the Fourth Interim Fee Period.  Based upon a review of the confidentiality restriction imposed by the Federal Reserve Board and discussions relating to the services rendered, the United States Trustee has no objection to the allowance of the interim fees to Hudson Cook.

**7.**    **Mercer**

Mercer seeks an allowance of fees aggregating $46,497.16 and reimbursement of out-of-pocket expenses aggregating $5,054.46 during the Interim Fee Period.  At the request of the United States Trustee, Mercer agreed to reduce its fee request (included in its request for reimbursement of expenses) by $5,607.63 in connection with outside counsel fee application services and one instance of a meal and taxi expense not supported by the time entries.  Accordingly, the United States Trustee has no objection to the allowance of the interim fees or expenses in the reduced expense amount.

18

8.    **Morrison Cohen**

Morrison Cohen seeks the allowance of fees aggregating $656,310.00 and reimbursement of out-of-pocket expenses aggregating $11,472.41 for the Interim Fee Period.  At the request of the United States Trustee, Morrison Cohen agreed to reduce its fee request by $17,524.08 in connection with time spent preparing the fee application, the attendance by more than three attorneys at hearings or meetings, and vague or lumped time entries.  Morrison Cohen also agreed to reduce its meal expenses by $140.00.  Accordingly, the United States Trustee has no objection to the allowance of the interim fees or expenses in the reduced expense amounts.

9.    **Morrison Foerster**

Morrison Foerster seeks the allowance of fees aggregating $18,626,667.90 and reimbursement of expenses aggregating $1,118,669.96 for the Interim Fee Period.  Morrison Foerster voluntarily reduced its fees, of which reduction, according to Morrison Foerster, a minimum of $913,000.00 would be allocable to Interim Fee Period.  The United States Trustee did not find proposed reductions that would exceed the allocated voluntary reduction.  Accordingly, the United States Trustee has no objection to the already reduced fees sought by Morrison Foerster, and does not oppose the reimbursement of expenses in the amount requested.

10.    **Orrick**

Orrick seeks the allowance of fees aggregating $120,018.94 and reimbursement of out-of-pocket expenses aggregating $2,290.80 for the Interim Fee Period.  At the request of the United States Trustee, Orrick agreed to reduce its fee request by $11,746.00 in connection with its fee application preparation costs and its expense request by $57.30 for Pacer charges.  Accordingly, the United States Trustee has no objection to the allowance of the interim fees and reimbursement of expenses in the reduced fee and expense amounts.

11. **Pepper Hamilton**

Pepper Hamilton seeks the allowance of fees aggregating $1,164,392.25 and reimbursement of expenses aggregating $14,973.79 for its Fourth Interim Fee Period. The United States Trustee has received statistical reports supporting Pepper Hamilton's time entries and reviewed the confidentiality restrictions imposed the Federal Reserve Board, thereby resolving issues raised by the questioned time entries. At the request of the United States Trustee, Pepper Hamilton has agreed to reduce its fee request by $5,177.50 and its travel related expenses by $629.50. Accordingly, the United States Trustee has no objection to the allowance of the interim fees or expenses in the reduced fee and expense amounts.

12. **Perkins Coie**

Perkins Coie seeks the allowance of fees aggregating $154,754.25 and reimbursement of expenses aggregating $873.63 for the Interim Fee Period. At the request of the United States Trustee, Perkins Coie agreed to reduce its fee request by $7,233.79 relating to its fee application costs and its expense request by $739.73 for travel to New York City. Accordingly, the United States Trustee has no objection to the allowance of the interim fees or expenses in the reduced fee and expense amounts.

13. **Severson**

Severson seeks the allowance of fees aggregating $165,671.55 and reimbursement of expenses aggregating $12,386.44 for the Interim Fee Period. At the request of the United States Trustee, Severson agreed to reduce its expense reimbursement request by $2,473.14, relating to travel costs attendant to a trip to New York for a hearing in which no employee of Severson served as a witness, a duplicate expense item and various meals exceeding the $20.00 per person

limit.  Accordingly, the United States Trustee has no objection to the allowance of the interim fees or expenses in the reduced amounts.

**B.**     **Committee's Professionals**

**1.**     **AlixPartners**

AlixPartners seeks an allowance of fees aggregating $2,086,086.18 and reimbursement of out-of-pocket expenses aggregating $3,873.61 during the Interim Fee Period.  In its application, AlixPartners references its agreement with the ResCap Liquidating Trust Board to reduce its fees by $360,000.00.  See Application, ¶ 37.  While the United States Trustee identified a limited number of vague time entries in certain of the project categories, a successful objection to the identified entries would not exceed the voluntary reduction.  Accordingly, the United States Trustee has no objection to the already reduced fees sought by AlixPartners, and does not oppose reimbursement of expenses in the amount requested.

**2.**     **Carter Ledyard**

Carter Ledyard seeks an allowance of fees aggregating $121,101.75 and reimbursement of out-of-pocket expenses aggregating $707.01 during the Interim Fee Period.  At the request of the United States Trustee, Carter Ledyard agreed to reduce its fee request by $1,459.25 in connection with vague, lumped, unmatched, and mis-matched time entries, as well as time entries that were for impermissible revising and editing of time entries.  In addition, at the request of the United States Trustee, Carter Ledyard agreed to reduce its meal expenses by $33.75.  The United States Trustee, does however, object to the allowance of $31,494.25 in fees for the reason set forth below.

### i.    Objection to Fees Related Conflict Checks

Carter Ledyard has advised the United States Trustee that $31,494.25 of the $38,818.75 in fees under the project category "Retention" is attributable to services rendered in connection with checking conflicts.  This Court has previously disallowed fees incurred in checking conflicts in order to be retained in this case.   See Transcript of Hearing held on September 11, 2013, at 69-72.  Accordingly, the United States Trustee requests that the Court reduce the fees incurred in checking for conflicts in the amount of $31,494.25.

### 3.    Epiq

Epiq seeks the allowance of fees aggregating $38,906.00 and reimbursement of out-of-pocket expenses aggregating $42,135.64 for the Interim Fee Period.  At the request of the United States Trustee, Epiq agreed to reduce its fee request by $1,708.90 for its fee application costs. Accordingly, the United States Trustee has no objection to the allowance of the interim fees in the reduced amount and the reimbursement of expenses in the requested amount.

### 4.    Kramer Levin

Kramer Levin seeks the allowance of fees aggregating $12,927,413.00 and reimbursement of out-of-pocket expenses aggregating $516,511.68 during the Interim Fee Period.  Kramer Levin's voluntary reduced it fees, of which reduction, according to Kramer Levin, approximately $635,000 would be allocable to Interim Fee Period.  The United States Trustee's review of Kramer Levin's fee application did not find proposed reductions that would exceed the allocated voluntary reduction.  Accordingly, the United States Trustee has no objection to the already reduced fees sought by Kramer Levin, and does not oppose reimbursement of expenses in the amount requested.

5.    **Moelis**

Moelis seeks an allowance of fees aggregating $7,525,000.00 and reimbursement of out-of-pocket expenses aggregating $5,172.69 during the Interim Fee Period.  At the request of the United States Trustee, Moelis agreed to reduce its expense request by $862.59 for certain of its meal or taxi expenses that were not supported by adequate documentation or supported by the required 4 hours of work on the case on the date incurred.  Accordingly, the United States Trustee has no objection to the allowance of the interim fees in the requested amount and the reimbursement of expenses in the reduced expense amount.

6.    **Pachulski Stang**

Pachulski Stang seeks an allowance of fees aggregating $1,865,431.00 and reimbursement of out-of-pocket expenses aggregating $50,444.07 during the Interim Fee Period. At the request of the United States Trustee, Pachulski Stang agreed to reduce its fee request by $479.60 for lumped time entries and its expense request by $7,038.15 for certain of its expenses for travel to New York, meal expenses and other miscellaneous travel expenses.  Accordingly, the United States Trustee has no objection to the allowance of the interim fees and reimbursement of expenses in the reduced fee and expense amounts.

7.    **Quest**

Quest seeks allowance of $406,642.50 in fees and reimbursement of $17,614.09 in expenses for the Interim Fee Period.  In its application, Quest references its agreement with representatives of the Creditors Committee and the ResCap Liquidating Trust Board to reduce its fees by 15%, which is a reduction amounting to $60,996.38.  See Quest Application, ¶ 27.  As a result of that reduction, Quest's fees amount to $345,646.12.  While the United States Trustee identified certain questionable time entries, primarily related to the single billing rate of $795.00

23

for all types of services rendered, a successful objection to the identified entries would not exceed the voluntary reduction. Accordingly, the United States Trustee has no objection to the already reduced fees sought by Quest, and does not oppose reimbursement of expenses in the amount requested.

**8.** **Wilmer Hale**

Wilmer Hale seeks the allowance of fees aggregating $128,252.50 and reimbursement of expenses aggregating $1,026.67 for the Interim Fee Period. At the request of the United States Trustee, Wilmer Hale agreed to reduce its fee request by $3,071.00 for its fee application costs. Accordingly, the United States Trustee has no objection to the allowance of the interim fees in the reduced amount or the reimbursement of expenses in the requested amount.

**C.** **Examiner's Professionals**

**1.** **Chadbourne**

Chadbourne seeks the allowance of fees aggregating $172,561.00 and reimbursement of out-of-pocket expenses aggregating $4,871.65 for the Interim Fee Period. At the request of the United States Trustee, Chadbourne agreed to reduce its fee request by $30,000.00 relating to responding to the United States Trustee's objection, the attendance of by multiple professionals at a hearing, and fee application costs. Accordingly, the United States Trustee has no objection to the allowance of the interim fees in the reduced amount and the reimbursement of expenses in the requested amount.

**2.** **Mesirow**

Mesirow seeks the allowance of fees aggregating $57,179.00 for the Interim Fee Period. At the request of the United States Trustee, Mesirow agreed to reduce its fee request by $20,000.00 relating to fee application costs and responding to the previous United States Trustee

objection during the previous interim period.  Accordingly, the United States Trustee has no

objection to the allowance of the interim fees in the reduced amount and the reimbursement of

expenses in the requested amount.

## V.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court enter an

order (i) reducing the fees and expenses allowed to the Retained Professionals by the amounts set

forth herein,  and  (ii) granting such other relief as is just.

Dated: New York, New York
      June 2, 2014

                                  Respectfully submitted,

                                  WILLIAM K. HARRINGTON
                                  UNITED STATES TRUSTEE, REGION 2

                       By:      */s/ Brian S. Masumoto*
                                  Brian S. Masumoto
                                  Michael T. Driscoll
                                  Eric J. Small
                                  Trial Attorneys
                                  Office of the United States Trustee
                                  U.S. Federal Office Building
                                  201 Varick Street, Suite 1006
                                  New York, NY 10014
                                  Tel. No. (212) 510-0500