# Exhibit B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| _____ | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al. | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |

### DECLARATION OF MICHAEL J. TALARICO IN SUPPORT OF MOTION OF RESCAP BORROWER CLAIMS TRUST FOR ORDER ESTIMATING CLAIMS AND ESTABLISHING THE DISPUTED CLAIMS RESERVE

I, Michael J. Talarico, hereby declare as follows:

### BACKGROUND/QUALIFICATIONS

1.      I am currently employed as a Managing Director in the Corporate Finance/Restructuring practice at FTI Consulting, Inc. ("FTI"), where I have worked for approximately 12 years.  Prior to my time at FTI, I was employed by PricewaterhouseCoopers, LLP in its Business Recovery Services Practice.  I specialize in providing financial advisory services to stakeholders in connection with in-court and out-of-court restructurings.

2.      I have provided restructuring services on more than twenty engagements, including many billion dollar companies, including, but not limited to, Residential Capital, LLC, NewPage Corporation, Tower Automotive, Inc. and Wheeling-Pittsburgh Corporation.

3.      In many of my cases, I have assisted the Debtors and the Official Committee of Unsecured Creditors ("the Committees") in the analysis and estimation of claims. In addition to my experience in analyzing claims in the Residential Capital, LLC Chapter 11,

which I discuss in more detail below, I estimated the Secured, Administrative and Priority Claims in Tower Automotive, Inc. and prepared an affidavit in support of Plan Feasibility for the Debtors Plan of Reorganization.  In the Hussey Copper, LLC Chapter 11, I estimated claims at multiple Debtor entities to assist the Committee in estimating plan recoveries.  As part of the financial advisor team at NewPage Corporation, I assisted the Debtors in analyzing the claims register to respond to inquiries from various stakeholders as well as reviewed the estimation of the claims at the various plan classes in preparation of the Debtors' Plan of Reorganization.  I have also estimated employee and pension claims in many engagements where FTI has been retained as financial advisor to Committees.  These engagements include, Visteon Corporation, The Great Atlantic & Pacific Tea Company, Dana Corporation, Abitibi-Bowater, Inc. and Hawker-Beechcraft.  I have also assisted in the estimation of claims in an out-of-court matter that is confidential in nature.

4.    I have testified as a fact witness in the Bankruptcy Court for the Southern District of New York in the Tower Automotive, Inc. Chapter 11 as part of the Debtors' 1113/1114 proceedings.

5.    I received my Bachelor of Science degree in Accounting from Indiana University of Pennsylvania in 1989.  In 2007, I was awarded a Masters in Financial Economics degree from Ohio University.  I am a Certified Public Accountant (State of Pennsylvania), Certified Insolvency & Restructuring Advisor and a Chartered Financial Analyst.

6.    I am a member of several professional organizations, including the Pennsylvania Institute of Certified Public Accountants, the Association of Insolvency and Restructuring Advisors, the Turnaround Management Association and the CFA Institute.

7.     Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' claims analysis and resolution process, information received from the Debtors' and its successors, including the ResCap Liquidating Trust ("the Liquidating Trust"), their professionals and Kurtzman Carson Consultants, LLC ("KCC"), the Debtors' notice and claims agent.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Motion on that basis.

8.     I am part of the FTI team retained as financial advisor to Residential Capital, Inc., et al ("the Company" or "the Debtors") for their Chapter 11 proceedings.  As part of my duties, I led the efforts from FTI to assist the Debtors in the development of processes and tools for the analysis and resolution of claims.  As demonstrated in the table below, 3,034 claims were filed by Borrowers as that term is defined in the *Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1009, 3007, and 9019(b) for Approval of (I) Claim Objection Procedures, (II) Borrower Claims Procedures, (III) Settlement Procedures, and (IV) Schedule Amendment Procedures* [Docket No. 3123] ("the Borrower Claims").  2,221 Borrower Claims have been expunged or withdrawn by the claimant.  69 Borrower Claims are excluded from the Borrower DCR analysis as the claim is included on either the *ResCap Borrower Claims Trust Sixty-First Omnibus Objection to Claims (No Liability Borrower Claims)* [Docket No. 6777] or the *ResCap Borrower Claims Trust Sixty-Second Omnibus Objection to Claims (No Liability Borrower Claims)* [Docket No. 6815] and the claimant failed to file a response to the objection by the response deadline (May 12, 2014 and May 22, 2014, respectively).  63 Borrower Claims were excluded from the analysis because the claim was either resolved and paid prior the establishment of the ResCap Borrower Claims Trust ("the Borrower Trust"), are duplicates of or are amended by other Borrower Claims included in the Borrower

Claims Trust Disputed Claims Reserve ("the Borrower DCR"), or have been determined to not be Borrower claims.   Another 84 Borrower Claims have been allowed through a settlement between the Debtors and the claimant ("the Allowed Borrower Claims").   597 Borrower Claims remain unresolved ("the Borrower DCR Claims"), and serve as the basis for the Borrower DCR. Included in the Borrower DCR Claims are 131 Borrower Convenience Class Claims.   The Borrower Trust Agreement defines the Borrower Convenience Class Claims ("the Borrower Convenience Claims) as those claims at GMACM with an asserted amount equal to or less than $8,500 and those claims at RFC with an asserted amount equal to or less than $28,000.

|  | Claim Count | Asserted Amount |
| --- | --- | --- |
| **Total Borrower Claims** | **3,034** | **$15,397,228,911** |
| less: Expunged/Withdrawn Claims | (2,221) | (11,849,761,069) |
| less: Filed Objection - No Response by Deadline | (69) | (7,730,221) |
| less: Claims Reclassed to Non-Borrower | (2) | 0 |
| **Claims in the Borrower Claims Trust** | **742** | **$3,539,737,621** |
| less: Allowed Claims | (84) | (2,299,126,446) |
| less: Amended & Duplicate Claims | (44) | (137,415,421) |
| less: Claims also Filed at ETS | (5) | (3,435,015) |
| less: Paid Directly by the Estate | (12) | (273,739,604) |
| **Claims in Borrower Disputed Claims Reserve** | **597** | **$826,021,135** |
| Claims Analayzed - Objection | (65) | (685,371,518) |
| Claims in Review for Possible Objection | (401) | (140,252,498) |
| Convenience Class | (131) | (397,119) |
| **All Other Borrower Claims** | **0** | **($0)** |

9.       As part of the efforts to analyze claims, I assisted the Debtors in assessing whether there was a need for a Borrower Claims Trust True-up ("the True-up").  As indicated in the *Notice of Filing Exhibits 2 through 21 Comprising the Plan Supplement to the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 5342] and explained further in the *Direct Testimony of William R. Thompson* [Docket No. 5713], it was determined that a True-up was not required.

10.    FTI was retained by the Borrower Trust to analyze the Borrower Claims to assess the assumptions in the True-up and apply the same methodology to the current population of Borrower Claims.    Additionally, FTI was asked determine the amount to be funded by the Borrower Trust into the Borrower DCR.

**PROPOSED BORROWER DISPUTED CLAIMS RESERVE**

11.    The table below shows the results of the three scenarios that FTI analyzed for purposes of assisting the Borrower Trust in the establishment of the Borrower DCR.    The Borrower Trust has elected to use the most conservative of the three scenarios for the establishment of its DCR in the amount of $8.6 million.    The Declaration and attached Exhibits discusses the methodology employed in each of the three scenarios and demonstrates the conservative nature of the Proposed Borrower DCR (defined below).

5

| Analysis for Borrower Claims Trust Disputed Claims Reserve ($ in millions) Summary of Borrower Claims Trust Funds Required for Allowed Claims & Disputed Claims Reserve | | | |
|---|---|---|---|
| Complete Allocation of Borrower Trust Funds | Scenario 1 | Scenario 2 | Scenario 3 |
| **Resolved Claims** | | | |
| 1    Allowed- Individual Claims | $0.66 | $0.71 | $0.71 |
| 2    Allowed-Class Act Claims | 45.30 | 48.91 | 48.58 |
| 3    **Total Resolved Claims (Lines 1 and 2)** | **$45.96** | **$49.62** | **$49.29** |
| **Borrower DCR** | | | |
| 4    Claims Analyzed - Objections | 0.77 | 0.35 | 1.16 |
| 5    Remaining Claims (pending analysis for potential objection) | 7.72 | 4.47 | 4.00 |
| 6    Convenience Class | 0.15 | 0.15 | 0.15 |
| 7    **Total Borrower DCR  (Lines 4 - 6)** | **$8.64** | **$4.98** | **$5.31** |
| 8    **Total Resolved & Disputed Claims Reserve Claims (Lines 3 and 7)** | **$54.60** | **$54.60** | **$54.60** |
| 9    Amount Funded to Borrower Claims Trust | 56.10 | 56.10 | 56.10 |
| 10   Supplemental Allocation to Administrative Reserve Set-Aside | (1.50) | (1.50) | (1.50) |
| 11   **Additional Funds Available for Distribution on Borrower Claims (Line 9 minus Line 8 plus  line 10)** | **($0.00)** | **($0.00)** | **($0.00)** |

## INFORMATION REVIEWED/BORROWER CLAIMS DATA

12.    In order to establish the Borrower DCR, it was necessary to analyze the database of Borrower Claims and to segregate the Borrower Claims into categories, based on

their status of resolution, to determine those Borrower Claims needing to be estimated and/or dollarized in accordance with the parameters for the various Borrower DCR scenarios.

13.    The primary information used to analyze the Borrower Claims to establish the Borrower DCR is the claims database maintained by the Liquidating Trust's Claims Management & Resolution personnel ("CM&R").  This claims database is based on the claims register maintained by KCC ("the Claims Register"), claims agent for the Debtors.  In order to develop the population of Borrower Claims for  use in establishing the Borrower DCR the following steps were taken:

   i.    Identified Borrower Claims to exclude from the Borrower DCR analysis, including those claims that were ordered expunged, withdrawn by the claimant, claims on filed objections where the claimant failed to respond by the response deadline, and paid directly by the Estate prior to the establishment of the Borrower Trust.

   ii.    Added back to the population of the Borrower DCR Claims, those claims that were ordered expunged and where the claimant has appealed the order of the Bankruptcy Court, or where the automatic stay has been lifted for the claimant to pursue their litigation in state court.  See Exhibit 1 for a list of these Borrower Claims.

   iii.    Classified as "Unliquidated" the Borrower DCR Claims that are listed in the Claims Register as "Liquidated" with a zero asserted claim amount.  While the Proofs of Claim in many instances are blank and do not provide support, to be conservative, the Allowed Amount for these claims was estimated using the applicable scenario methodology for Unliquidated Claims.

7

iv.    Compared the Debtor Group in the Claims Register with the analysis of Debtor Group prepared by the CM&R personnel and made adjustments as necessary.

v.    Reviewed the Borrower DCR Claims to identify instances where there are multiple claims asserted by the same claimant, in the same amount and against the same Debtor Group and adjusted the Borrower DCR Claims so that only one instance of these duplicate claims is considered in the analysis of the Borrower DCR.

vi.    Reviewed the Borrower DCR Claims to identify instances where the claimant indicated their claim amended an earlier filed claim and adjusted the Borrower DCR to ensure that only the surviving claim is included.

vii.    Identified those claims in the Claims Analyzed – Objection (defined below) category where the objection seeks only to redesignate and/or reclassify the claim, and classified those in the Remaining Claims (defined below) category (see Analyses Performed section of this Declaration for difference in treatment).

viii.    Excluded Borrower Claims included in the Borrower Trust's Omnibus Objections 61 and 62 where the deadline to respond to the objection has passed and the claimant has not responded to the objection.

ix.    Updated the Claims Register to reflect miscellaneous edits to synchronize the updated Borrower Claims Database obtained from the CM&R personnel.

14.    In addition to the Claims Register and the Borrower Claims Database, I reviewed specific Borrower Proofs of Claim, Motions and Orders related to the objection to Borrower Claims.  Additionally, I had discussions with CM&R personnel to address questions about the information in the Borrower Claims Database.

8

## ANALYSES PERFORMED

15.    To establish the Borrower DCR, FTI analyzed the status of the Borrower Claims under three separate scenarios.  The scenarios are discussed in more detail in this Declaration, and were constructed using the following assumptions:

i.    Applied the Plan Recovery Rates[1] to the Allowed Borrower Claims (this is the same in all three scenarios);

ii.    Bifurcated the Borrower DCR Claims into (1) those where the analysis has been completed and the claim is part of a filed objection or is slated to be included on a future objection ("Claims Analyzed – Objection") and (2) claims that are under review by the Borrower Trust and its professionals for potential inclusion in a future objection ("Remaining Claims");

iii.    Analyzed the Borrower DCR Claims to identify claims that are duplicates of or amended by other claims that are included in the Disputed Claims Reserve.  These duplicative and amended claims are excluded from the Borrower DCR;

iv.    Assumed that 50% of the claims classified as Claims Analyzed - Objection will be expunged.  Approximately 97% of the claims included in previously filed objections have been ordered expunged by the Bankruptcy Court.

v.    Estimates were developed for the allowed amount for the 597 claims that are in the Borrower DCR.  To develop these estimates, FTI looked at the prepetition resolution of borrower claims (utilized in the Scenario 1 - Base Case), and the

---

[1] The Plan Recovery Rates are set forth in the Debtors' Chapter 11 Plan by the Debtor Group and are summarized as follows: Residential Capital ("ResCap") – 36.3%, GMAC Mortgage ("GMACM") – 30.1%, Executive Trustee Services ("ETS") – 100.0% and Residential Funding ("RFC") – 9.0%.

settlement of Allowed Borrower Claims filed in the Debtors' Chapter 11 (used in Scenarios 2 and 3).

vi.    The Plan Recovery Rates were applied to the estimated allowed amount for claims that are part of the Borrower DCR.

vii.    Reduced the funds available for distribution to allowed Borrower Claims and the Borrower DCR for additional funds needed by the Borrower Claims Trust to fund its administrative costs.

viii.    Lastly, it was determined how much, in addition to the Plan Recovery Rates, could be distributed by the Borrower Trust to both the Allowed Borrower Claims and the Borrower DCR on a pro-rata basis.

**Allowed Borrower Claims**

16.    78 Individual Borrower Claims and 6 Class Action Borrower Claims have been allowed.  A distribution of $32.7 million would be made from the Borrower Trust to fund these claims at the Plan Recovery Rates.

| Allowed Claims ($ in millions - except per claim amount) | | Allowed-Individual Claims | | Allowed-Class Action Claims | | Total Allowed Claims |
|---|---|---|---|---|---|---|
| Count of Claims (total) | | 78 | | 6 | | 84 |
| Asserted Amount | $ | 34.61 | $ | 2,264.52 | $ | 2,299.13 |
| Allowed Amount | $ | 2.15 | $ | 327.52 | $ | 329.67 |
| Cash Required to Fund at Plan Recovery Rates | $ | 0.47 | $ | 32.22 | $ | 32.69 |
| Average Allowed Amount for Individual Borrower Claims | $ | 27,584.20 | | | | |
| Percentage of Allowed Amount to Asserted Amount | | 6.22% | | | | |

**Bifurcation of Borrower DCR Claims**

17.    Of the 597 Borrower DCR Claims, 65 are classified as Claims Analyzed –
Objection and 532 are classified as Remaining Claims.  131 of the 532 Remaining Claims meet
the criteria for Borrower Convenience Class Claims as set forth in the Borrower Trust
Agreement.

18.    Claims Analyzed – Objection consists of Borrower Claims that are already
included in an objection as well as those slated to be included on a future objection.  As shown
on Exhibit 1, eleven of the claims included in this category have been ordered expunged by the
Bankruptcy Court, but the claimant has filed an appeal to the order expunging their claim or the
automatic stay has been lifted so that the claimant can pursue their claim in state court and if
successful petition to have an allowed claim against the Borrower Trust.

19.    The Remaining Claims continue to be analyzed by the Borrower Trust, its
professionals and the CM&R personnel (pursuant to the Cooperation Agreement between the
Liquidating Trust and the Borrower Trust).  To be conservative, all of these claims have been
assumed to be allowed (although not at their asserted amount) for purposes of establishing the
Borrower Claims DCR.

**Duplicate and Amended Borrower Claims**

20.    The Debtors' Chapter 11 Plan ("the Plan") establishes four Debtor Groups
for purposes of classifying and specifying recovery rates for Allowed Claims.  According to the
Plan, a claim that is filed against multiple Debtors within one Debtor Group is entitled to only
one claim at that Debtor Group.  The Disputed Claims Reserve Borrower Claims is adjusted to

remove multiple instances of a claim within a single Debtor Group, such that only one instance of the claim remains at that Debtor Group.

21.     In instances where a claimant filed the same claim at ETS and at a Debtor in a different Debtor Group, only the ETS claim is considered in the calculation of the Borrower DCR.  ETS claims are set to receive a 100% recovery on their Allowed Borrower Claim, and therefore would not be entitled to a recovery on account of the same claim being allowed at another Debtor Group.

22.     Additionally, Borrower Claims that have been identified by the claimant as being amended by a subsequent filed claim are excluded from the Borrower DCR.

23.     49 Borrower Claims asserting $140.8 million are excluded from the Borrower DCR for duplicate and amended claims.

**Adjustment for Borrower Claims on Filed/Future Objections**

24.     The analysis for the Borrower DCR assumes that 50% of the objections seeking to expunge Disputed Claims Reserve Borrower Claims, which are included in the Claims Analyzed – Objection category, will be sustained.   As shown on Exhibit 2, approximately 97% of the objections seeking to expunge the Borrower Claims have been ordered.  The ordered objections included procedural objections for claims being late filed, amended and superseded, and lacking evidence to support the amount claimed.  In part, for that reason and also to be conservative, the Borrower DCR assumes a lower sustainability rate than what has been achieved.

25.     As shown on Exhibit 3 and further discussed in FTI's presentation to the Borrower Trust attached as Exhibit 4, the Claims Analyzed – Objection category requires, depending on the scenario, between $.2 million and $.8 million in Borrower Trust funds to pay

the estimated allowed amount at the Plan Recovery Rates.    Even if none of the claims in this category are successfully expunged, the exposure would have a minimal impact on the size of the Borrower DCR (assuming the allowed amounts are consistent with the estimates).

**Scenario 1 – Base Case: Estimation of Allowed Amounts using Prepetition Resolution of Borrower Claims**

26.    The Proposed Borrower DCR in Scenario 1 – Base Case employs the same assumptions and methodology used in analyzing the True-up.    As discussed in more detail below, the application of the True-up assumptions and methodology to the current population of Allowed and Borrower DCR Claims results in less Borrower Trust Funds to make distributions at the Plan Recovery Percentages than the True-up calculation yielded in November, 2013.    This fact supports the belief that the True-up assumptions were and are conservative.    Scenario 1 uses the Debtors' historical borrower litigation resolution as a basis for assessing the estimated allowed amount of the Borrower DCR Claims.

27.    As discussed in Paragraphs 41 through 43 of the *Direct Testimony of William R. Thompson* [Docket No. 5713], approximately 3,600 closed litigation matters related to individual borrower matters (excluding class action matters) initiated between 2007 and the petition date were analyzed to assess the amounts of these settlements.

28.    376 (approximately 10%) of these closed litigation matters resulted in a payment to the borrower, with the following metrics:

    i.    Average settlement per claim: $16,734

    ii.    Median settlement amount: $5,000

    iii.    Maximum settlement amount: $412,500.

29.    The Borrower DCR Claims were segregated and their allowed amount estimated in the following manner for the Borrower DCR[2]:

i.    Disputed Claims Reserve Borrower Claims asserted at an amount greater than $100,000 (and all unliquidated claims) are assumed to all become Allowed Borrower Claims at a multiple of approximately 3 times or 4 times the average historical settlement (depending on whether the loan that is the subject of the Borrower Claim is currently being serviced).

ii.    For Borrower DCR Claims asserted at an amount greater than $100,000 where the loan that is the subject of the claim is currently being serviced, the claim is estimated at an allowed amount $45,000 (or approximately 3 times the average historical settlement of $16,734).  There are 77 claims included in this category.

iii.    For Borrower DCR Claims asserted at an amount greater than $100,000 where the loan is not currently being serviced (typically because the loan that is the subject of the claim has been foreclosed), the claim is estimated at an allowed amount of $60,000 (or approximately 4 times the average historical settlement of $16,734). There are 155 claims included in this category.

iv.    The reason for using two amounts to estimate the Allowed Amount for Borrower DCR Claims asserting claims in excess of $100,000 is those Borrower DCR Claims where the loan is currently being serviced, may be able to receive non-monetary relief such as a loan-modification in exchange for a withdrawal of their claim.  Therefore these claims are estimated at $45,000 per claim versus the

---

[2] The Borrower Trust believes that the assumptions employed in estimating the Borrower DCR are conservative. Therefore, the assumptions employed in developing the Borrower DCR do not represent the Borrower Trust's view of the actual value of these Claims.

$60,000 per claim where the loan that is the subject of the Borrower DCR Claim is not being serviced.

v.    For Borrower DCR Claims that are equal to or less than $100,000, the estimated allowed amount of the claim is the lesser of $60,000 or the amount asserted by the claimant.  There are 169 claims included in this category.

vi.    For Borrower DCR Claims that meet the criteria of the Borrower Convenience Class Claim set forth in the Borrower Trust Agreement, the asserted amount of the claim plus $500 is used as the allowed amount.  The Borrower Trust reserves the right to object to these claims, but for the sake of conservatism, the maximum exposure has been used to estimate the allowed amount.

vii.    For the Borrower DCR Claims described above, it is assumed that all of these claims become Allowed Borrower Claims (in the amounts described above).  Of the 2,437 Borrower Claims that are not part of Borrower DCR Claims, 2,239, or 92%, were included on objections seeking to expunge the claim.  As shown on Exhibit 2, approximately 97% of these claims have been ordered expunged.

viii.    For Borrower DCR Claims classified as Claims Analyzed - Objection, it is assumed that 50% of the claims would become Allowed Borrower Claims at an amount equal to $60,000 each.  There are 65 claims included in this category.

30.    In Paragraph 21 of the *Direct Testimony of William R. Thompson* [Docket No. 5713], the funds needed to pay the Actual and Estimated Allowed Borrower Claims at the Plan Recovery Rates were $47.9 million.  As shown on Exhibit 3, applying the same methodology to the current population of Actual Allowed Borrower Claims and Borrower DCR

Claim requires only $38.9 million to fund at the Plan Recovery Rates.  The decrease of $9.0
million is attributed to:

  i.    Settlements of Borrower Claims below the assumed $45,000 to $60,000 per
        claim;

  ii.   Additional Borrower Claims being expunged at a greater percentage than the
        assumed 50% (including claims where the response deadline to the claims
        objection has passed and the claimant did not respond);

  iii.  The reclassification to Individual Borrower Claim for purpose of the Borrower
        DCR of a claim that was classified as a Class Action Claim in the True-up.
        Additionally, the claim is reflected as Unliquidated because the claim's asserted
        amount was based on the claimant's believing their claim is a Class Action Claim;
        and

  iv.   The identification of additional Borrower Claims to be included in future
        objections that will seek to expunge the claim.

**Scenario 2 - Estimation of Allowed Amounts using the Settlement of Allowed Borrower
Claims**

        31.    As shown on Page 7 of Exhibit 4, 78 Individual Borrower Claims have
been settled (excluding Borrower Convenience Claims and Borrower Class Action Claims) for
$2.2 million.  The average allowed amount for these settled Individual Borrower Claims is
$27,584 per claim.  This amount is used in Scenario 2 (described in more detail below) to
dollarize the Borrower DCR Claims.  46 (approximately 59%) of these claims were settled
between $10,000 and $50,000 and 69% were settled at less than the average of $27,584.  The
median value of the 78 settled Allowed Borrower Claims is $15,000.  To be conservative, as well

as consistent with the statistical measures used in Scenario 1, the average was used as opposed to the median.

32.    The Borrower DCR Claims were segregated and their allowed amount estimated in the following manner for the Borrower DCR[3]:

i.    For Borrower DCR Claims that have been analyzed and are subject to a current or future objection, it is assumed that 50% of the claims would become Allowed Borrower Claims at an average amount of $27,584.  There are 65 claims included in this category.

ii.    For the remaining 401 Borrower DCR Claims (that are not Borrower Convenience Class Claims), all are assumed to become Allowed Borrower Claims at the lesser of the average amount of $27,584 or the actual amount asserted in the Borrower DCR Claims.

iii.    For Borrower DCR Claims that meet the criteria of the Borrower Convenience Class Claim set forth in the Borrower Trust Agreement, the asserted amount of the claim plus $500 is used as the allowed amount.  The Borrower Trust reserves the right to object to these claims, but for the sake of conservatism, all claims are assumed to become Allowed Borrower Claims and the maximum exposure has been used to estimate the allowed amount.

iv.    As mentioned earlier, of the 2,437 Borrower Claims that are not considered Borrower DCR Claims, 2,239, or 92%, were included on objections seeking to expunge the claim.  As shown on Exhibit 2, approximately 97% of these claims have been ordered expunged.

---

[3] The Borrower Trust believes that the assumptions employed in estimating the Borrower DCR are conservative. Therefore, the assumptions employed in developing the Borrower DCR do not represent the Borrower Trust's view of the actual value of these Claims.

**Scenario 3 - Estimation of Allowed Amounts using the Percentage of Allowed Amount versus Asserted Amount for Settled Borrower Claims**

33.     For the 78 Individual Borrower Claims that have been settled (as described in Paragraph 16 of the Declaration), FTI calculated the weighted-average percentage of the allowed amount to the amount asserted in the Borrower Claim.  The resulting weighted-average percent of allowed amount to the asserted amount is 6.22%, which is applied to the asserted amount to estimate the allowed amount for the Borrower DCR Claims in Scenario 3.

34.     The Borrower DCR Claims were segregated and their allowed amount estimated in the following manner for the Borrower DCR[4]:

   i.   For Disputed Claims Reserve Borrower Claims that have a liquidated amount (except for those claims asserting an amount in excess of $10 million), the asserted amount is multiplied by the 6.22% to estimate the allowed amount for the claim.

   ii.  For those Disputed Claims Reserve Borrower Claims that are unliquidated, the average settlement for Individual Borrower Claims of $27,584 was used to estimate the allowed amount.

   iii. There are five Disputed Claims Reserve Borrower Claims in excess of $10 million each.  These five claims assert $631.8 million in the aggregate.  Two of these five claims are for Borrower Claims that have been expunged by Order of the Bankruptcy Court, but the claimant has appealed the order expunging their claim.  For purposes of dollarizing the impact on the Borrower DCR, the asserted

---

[4] The Borrower Trust believes that the assumptions employed in estimating the Borrower DCR are conservative. Therefore, the assumptions employed in developing the Borrower DCR do not represent the Borrower Trust's view of the actual value of these Claims.

amounts for these claims were adjusted to $6.475 million, which is the highest asserted amount of the Disputed Claims Reserve Borrower Claims when ignoring the claims asserted in excess of $10 million.  As discussed earlier, these claims are outliers and assert amounts, which are grossly inflated when compared to the Debtors' historical experience for these types of matters.

iv.    For the DCR Borrower Claims that are categorized as Claims Analyzed – Objections, the estimated allowed amount determined in the steps above, the estimated allowed amount is multiplied by 50%, which is a conservative assumption of the percentage of objections sustained.

**Distributions in Excess of Plan Recovery Rates to Allowed Claims and the Disputed Claims Reserve**

35.    As shown on in Paragraph 11 of this Declaration and further discussed on page 5 of Exhibit 4, after providing for an additional $1.5 million as an administrative set-aside to fund the operating costs of the Borrower Trust, the remaining Borrower Trust Funds,  when distributed in same ratio as the Plan Recovery Rates, provides for the distribution to the Allowed Borrower Claims to increase to $46.0 million and the distribution to the Borrower DCR would increase to $8.6 million ("Proposed Borrower DCR").

36.    The Borrower Trust has elected to use the Scenario 1 - Base Case as the basis for establishing the Borrower DCR given that it is the most conservative of the three approaches.  Using this methodology, the Proposed Borrower DCR is $8.6 million.  The Proposed Borrower DCR Amount is not indicative of the Borrower Trust's estimate of the ultimate allowed amount of the Borrower DCR Claims, but rather represents an estimate of the

maximum liability that could reasonably be expected for the allowed amount, based on historical settlements of these types of claims (both prior to and during the Debtors' bankruptcy).

37.     It is my opinion that the assumptions employed in developing the Borrower DCR are conservative for the following reasons:

i.    For the Borrower DCR Claims classified as Claims Analyzed - Objection, the Borrower DCR assumes that 50% of the objections will be sustained and ordered expunged.  However, as shown on Exhibit 2, approximately 97% of the objections seeking to expunge the Borrower Claims have been ordered.

ii.    Borrower Claims that have been ordered expunged and where the claimants have appealed the objections are included in the Borrower DCR Claims as Claims Analyzed – Objection.

iii.    The Borrower DCR Claims that are classified as Remaining Claims are all assumed to be Allowed Borrower Claims in the amount described above.

iv.    The methodology employed in calculating the Borrower DCR is consistent with the methodology used for the True-up analysis prepared in November, 2013, and these assumptions have been demonstrated to be conservative.  This is evidenced by the decrease of $9.0 million in the cash needed to fund the Allowed Borrower Claims and the Borrower DCR at the Plan Recovery Rate in the current analysis.

v.    The Borrower DCR Claims are dollarized between $45,000 and $60,000 (unless the claim asserts a lower amount) and Debtors and the Borrower Trust have on average settled claims substantially below this level.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 28, 2014

Michael J. Talarico
Managing Director
FTI Consulting, Inc.

21

**EXHIBIT 1**

| | | ResCap Borrower Claims Trust | | |
|---|---|---|---|---|
| | | Disputed Claims Reserve | | |
| | | Expunged Borrower Claims on Appeal - Included in Borrower DCR | | |

| Claim # | Date Filed | Claimant | Asserted Amount | Ordered Objection |
|---|---|---|---|---|
| 1007 | 5-Oct-12 | Marlow Hooper and Monique Hooper | $ 460,000.00 | Docket No. 6202 |
| 1195 | 12-Oct-12 | Tom Franklin | $ 134,000.00 | Docket No. 5049 |
| 1541 | 23-Oct-12 | Jeffrey M Davis v GMAC Mortgage LLC Ally Bank and MERS | $ 195,450.00 | Docket No. 6333 |
| 1542 | 23-Oct-12 | Jeffrey M Davis v GMAC Mortgage LLC Ally Bank and MERS | $ 698,000.00 | Docket No. 6333 |
| 3856 | 9-Nov-12 | Thomas James La Casse | $ 26,500,000.00 | Docket No. 5620 |
| 3860 | 9-Nov-12 | Thomas James La Casse | $ 5,289,000.00 | Docket No. 5620 |
| 3893 | 9-Nov-12 | Sepideh Sally Cirino | UNLIQUIDATED | Docket No. 6201 |
| 4443 | 9-Nov-12 | Pro Se - Corla Jackson | $ 100,000,000.00 | Docket No. 6487 |
| 5422 | 16-Nov-12 | Jamie L. Gindele | $ 709,777.40 | Docket No. 6411 |
| 5431 | 16-Nov-12 | Jamie L. Gindele | $ 709,777.40 | Docket No. 6411 |
| 7181 | 23-Sep-13 | Caren Wilson | $ 4,500,000.00 | Docket No. 6739 |

**EXHIBIT 2**

| ResCap Borrower Claims Trust |
| --- |
| Borrower Disputed Claims Reserve |
| Summary of Percentage of Objections Seeking to Expunge Borrower Claims Sustained |

| Obection # | Objection Type | Number Filed | Number Expunged | % of Filed Claims Expunged |
| --- | --- | --- | --- | --- |
| Second | Duplicate | 1 | 1 | 100.0% |
| Third | Amended & Superseded | 5 | 5 | 100.0% |
| Fourth | Late Filed | 149 | 146 | 98.0% |
| Fifth | Late Filed | 34 | 32 | 94.1% |
| Sixth | Duplicate | 42 | 42 | 100.0% |
| Seventh | Amended & Superseded | 20 | 20 | 100.0% |
| Eighth | Redundant | 18 | 18 | 100.0% |
| Eighteenth | Insufficient Information | 150 | 146 | 97.3% |
| Nineteenth | Insufficient Information | 150 | 148 | 98.7% |
| Twentieth | Insufficient Information | 150 | 147 | 98.0% |
| Twenty-First | Insufficient Information | 150 | 146 | 97.3% |
| Twenty-Second | Insufficient Information | 33 | 32 | 97.0% |
| Twenty-Fifth | Amended & Superseded | 10 | 10 | 100.0% |
| Twenty-Sixth | Insufficient Information | 150 | 149 | 99.3% |
| Twenty-Seventh | Insufficient Information | 100 | 98 | 98.0% |
| Thirtieth | No Liability - Books & Record | 142 | 137 | 96.5% |
| Thirty-First | Late Filed | 11 | 11 | 100.0% |
| Forty-First A | Duplicate | 1 | 1 | 100.0% |
| Forty-First B | Amended & Superseded | 2 | 2 | 100.0% |
| Forty-Eighth B | Insufficient Information | 3 | 3 | 100.0% |
| Forty-Eighth A | No Liability - Books & Record (Tannor) | 50 | 50 | 100.0% |
| Forty-Ninth | No Liability - Books & Record (Loan Modification) | 32 | 22 | 68.8% |
| Fiftieth | No Liability - Books & Record | 149 | 126 | 84.6% |
| Fifty-First | No Liability - Res Judicata | 25 | 24 | 96.0% |
| Fifty-Eighth | Amended & Superseded/Late Filed/Non-Debtor | 15 | 12 | 80.0% |
| Fifty-Ninth | Insufficient Information | 18 | 16 | 88.9% |
| Sixtieth | Res Judicata | 8 | 8 | 100.0% |
| Torchia | Torchia | 607 | 607 | 100.0% |
| Individual | Individual | 14 | 9 | 64.3% |
| | **Total** | **2,239** | **2,168** | **96.8%** |

## EXHIBIT 3

| Analysis for Borrower Claims Trust Disputed Claims Reserve ($ in millions) | | | |
|---|---|---|---|
| **Summary of Borrower Claims Trust Funds Required for Allowed Claims & Disputed Claims Reserve** | | | |
| @ Plan Recovery Rates (ResCap - 36.3%, GMACM - 30.1%, RFC - 9.0%, ETS - 100.0%) | Scenario 1 | Scenario 2 | Scenario 3 |
| **Resolved Claims** | | | |
| 1  Allowed- Individual Claims | $0.47 | $0.47 | $0.47 |
| 2  Allowed-Class Act Claims | 32.22 | 32.22 | 32.22 |
| 3  **Total Resolved Claims (Lines 1 and 2)** | **$32.69** | **$32.69** | **$32.69** |
| **Borrower DCR** | | | |
| 4  Claims Analyzed - Objections | 0.57 | 0.24 | 0.79 |
| 5  Remaining Claims (pending analysis for potential objection) | 5.53 | 2.98 | 2.68 |
| 6  Convenience Class | 0.15 | 0.15 | 0.15 |
| 7  **Total Borrower DCR  (Lines 4 - 6)** | **$6.25** | **$3.37** | **$3.63** |
| 8  **Total Resolved & Disputed Claims Reserve Claims (Lines 3 and 7)** | **$38.94** | **$36.06** | **$36.32** |
| 9  Amount Funded to Borrower Claims Trust | 56.10 | 56.10 | 56.10 |
| 10  Supplemental Allocation to Administrative Reserve Set-Aside | (1.50) | (1.50) | (1.50) |
| 11  **Additional Funds Available for Distribution on Borrower Claims (Line 9 minus Line 8 plus  line 10)** | **$15.66** | **$18.54** | **$18.28** |

**EXHIBIT 4**

**Report to the ResCap Borrower Claims Trust on the Borrower Claims Disputed Claims
Reserve, dated May 28, 2014**



# ResCap Borrower Claims Trust Disputed Claims Reserve

*May 28, 2014*          ***Presented To: ResCap Borrower Claims Trust***

# Statement of Limitations

The information contained herein has been prepared based upon financial and other data obtained by FTI Consulting, Inc. ("FTI") from the management and staff of Residential Capital, LLC and its successors (the "Company"), including the Liquidating Trust.  FTI has relied on the assurance of management and staff of the Company that they were unaware of any facts that would make the information provided to FTI by them incomplete or misleading.

This Report ("Report") contains information on actual and hypothetical borrower claim settlements and resolutions to assist in developing a Disputed Claims Reserve for the ResCap Borrower Claims Trust.

FTI has not subjected the information contained herein to an examination in accordance with generally accepted auditing or attestation standards or the Statement on Standards for Prospective Financial Information issued by the AICPA. Further, the work involved did not include a detailed review of any transactions, and cannot be expected to identify errors, irregularities or illegal acts, including fraud or defalcations that may exist. Accordingly, FTI cannot and does not express an opinion or any other form of assurance on the financial information and does not assume any responsibility for the accuracy or correctness of the historical and forecasted financial data, information, assessments, and recommendations upon which the enclosed report is presented.







Executive Summary

# Executive Summary – Scenario Analysis

| Analysis for Borrower Claims Trust Disputed Claims Reserve  ($ in millions) | | | |
|---|---|---|---|
| **Summary of Borrower Claims Trust Funds Required for Allowed Claims & Disputed Claims Reserve** | | | |
| @ Plan Recovery Rates (ResCap - 36.3%, GMACM - 30.1%, RFC - 9.0%, ETS - 100.0%) | Scenario 1 | Scenario 2 | Scenario 3 |
| **Resolved Claims** | | | |
| 1   Allowed- Individual Claims | $0.47 | $0.47 | $0.47 |
| 2   Allowed-Class Act Claims | 32.22 | 32.22 | 32.22 |
| 3   **Total Resolved Claims (Lines 1 and 2)** | **$32.69** | **$32.69** | **$32.69** |
| **Borrower DCR** | | | |
| 4   Claims Analyzed - Objections | 0.57 | 0.24 | 0.79 |
| 5   Remaining Claims (pending analysis for potential objection) | 5.53 | 2.98 | 2.68 |
| 6   Convenience Class | 0.15 | 0.15 | 0.15 |
| 7   **Total Borrower DCR  (Lines 4 - 6)** | **$6.25** | **$3.37** | **$3.63** |
| 8   **Total Resolved & Disputed Claims Reserve Claims (Lines 3 and 7)** | **$38.94** | **$36.06** | **$36.32** |
| 9   Amount Funded to Borrower Claims Trust | 56.10 | 56.10 | 56.10 |
| 10  Supplemental Allocation to Administrative Reserve Set-Aside | (1.50) | (1.50) | (1.50) |
| 11  **Additional Funds Available for Distribution on Borrower Claims (Line 9 minus Line 8 plus  line 10)** | **$15.66** | **$18.54** | **$18.28** |

The table to the left summarizes the results of different methodologies applied to the resolved and unresolved claims (the  unresolved claims are included in the Disputed Claims Reserve) in the ResCap Borrower Claims Trust ("Borrower Claims") to determine an appropriate Borrower Claims Disputed Claims Reserve ("the Borrower DCR") and allow for an Initial Distribution to the allowed Borrower Claims.

- Claims in the Claims Analyzed -  Objection category assume only a 50% success rate in sustaining the objection, even though the Estate and it successors have successfully sustained ~97% of the Borrower Claim objections filed that sought to expunge Borrower Claims.  Allowed amounts for Resolved Claims and the estimates for Borrower Disputed Claims Reserve ("the Borrower DCR") are multiplied by the appropriate Plan Recovery Rate.

- Individual Borrower Claims that are asserted in an amount equal to or less than the convenience class level are included in the Borrower DCR – Convenience Class in line 6 and are reserved at the recovery amount set forth in the Borrower Trust Agreement in all scenarios.

- The Scenario 1 - Base Case ("Scenario 1") reflects the methodology used in the Borrower Trust True-Up Analysis prepared in October, 2013 and updated in November, 2013. This methodology applies various multiples of the pre-bankruptcy historical settlement average to Individual Borrower Claims.

- Scenario 2 uses the average allowed amount ($28k) determined from the individual Borrower Claims filed pursuant to the Debtors' Chapter 11 proceedings that have been resolved.

- Scenario 3 calculates the percent of the allowed amount to the asserted amount for the allowed Individual Borrower Claims to derive a weighted average percentage. It then applies that weighted average percentage to any unresolved claim with an asserted amount.  Unliquidated claims are estimated to be allowed at the average amount developed in Scenario 2. Because there are several claims asserted in excess of $10 million, the application of this percentage results in exaggerated estimates of allowed amounts for these claims.  These amounts are far in excess of any historical settlement of Individual Borrower Claims.  To correct for the distortion caused by these outliers, the asserted amount for these five claims was replaced with the highest asserted amount when ignoring the five exaggerated claims ($6.475 million).



# Executive Summary – Scenario Analysis

| Analysis for Borrower Claims Trust Disputed Claims Reserve  ($ in millions) | | | |
|---|---|---|---|
| **Summary of Borrower Claims Trust Funds Required for Allowed Claims & Disputed Claims Reserve** | | | |
| Complete Allocation of Borrower Trust Funds | Scenario 1 | Scenario 2 | Scenario 3 |
| **Resolved Claims** | | | |
| 1   Allowed- Individual Claims | $0.66 | $0.71 | $0.71 |
| 2   Allowed-Class Act Claims | 45.30 | 48.91 | 48.58 |
| 3   **Total Resolved Claims (Lines 1 and 2)** | **$45.96** | **$49.62** | **$49.29** |
| **Borrower DCR** | | | |
| 4   Claims Analyzed - Objections | 0.77 | 0.35 | 1.16 |
| 5   Remaining Claims (pending analysis for potential objection) | 7.72 | 4.47 | 4.00 |
| 6   Convenience Class | 0.15 | 0.15 | 0.15 |
| 7   **Total Borrower DCR  (Lines 4 - 6)** | **$8.64** | **$4.98** | **$5.31** |
| 8   **Total Resolved & Disputed Claims Reserve Claims (Lines 3 and 7)** | **$54.60** | **$54.60** | **$54.60** |
| 9   Amount Funded to Borrower Claims Trust | 56.10 | 56.10 | 56.10 |
| 10  Supplemental Allocation to Administrative Reserve Set-Aside | (1.50) | (1.50) | (1.50) |
| 11  **Additional Funds Available for Distribution on Borrower Claims (Line 9 minus line 8 plus  line 10)** | **($0.00)** | **($0.00)** | **($0.00)** |

**The table to the left shows the allocation of the amount provided by the ResCap Liquidating Trust ("the Liquidating Trust") to the Borrower Trust for recoveries on account of allowed Borrower Claims (both current and future).**

- An additional $1.5 million of the $56.1 million provided by the Liquidating Trust is allocated to the Administrative Reserve (see line 10).  This amount is in addition to the Administrative Reserve funded by the Liquidating Trust at the Effective Date.  Any excess Administrative Reserve funds not required to operate the Borrower Trust, will be distributed to the allowed Borrower Claims and the Borrower DCR, as applicable.

- This additional allocation to the Administrative Reserve is to ensure that there are sufficient funds to operate the Borrower Trust and to ensure that the currently Allowed Claims and the Disputed Claims Reserve Claims receive an equivalent recovery on a Debtor Group-by-Debtor Group basis.

- Based on the assumptions herein, under Scenario 1, the currently allowed Borrower Claims would receive $46.0 million.  The Disputed Claims Reserve under Scenario 1 would receive $8.6 million of funds. For distributions in excess of the Plan Recovery Rates, the ratio of the recovery rates by Debtor Group is maintained.

- Scenarios 2 and 3 both result in a lower Disputed Claims Reserve, so the Borrower Trust has selected the more conservative Disputed Claims Reserve resulting from the Scenario 1 methodology.

- ETS and Convenience Class Borrower Claims do not participate in distributions made in excess of the Plan Recovery Rates.  ETS Borrower Claims receive 100% of their allowed amount at the Plan Recovery Rates. The Borrower Trust Agreement sets forth that the recovery provided to Convenience Class claims is in full satisfaction of the claim.







Supporting Analysis

# Allowed Claims

| Allowed Claims ($ in millions - except per claim amount) | Allowed-Individual Claims | Allowed-Class Action Claims | Total Allowed Claims |
|---|---|---|---|
| Count of Claims (total) | 78 | 6 | 84 |
| Asserted Amount | $ 34.61 | $ 2,264.52 | $ 2,299.13 |
| Allowed Amount | $ 2.15 | $ 327.52 | $ 329.67 |
| Cash Required to Fund at Plan Recovery Rates | $ 0.47 | $ 32.22 | $ 32.69 |
| Average Allowed Amount for Individual Borrower Claims | $ 27,584.20 | | |
| Percentage of Allowed Amount to Asserted Amount | 6.22% | | |

**The table above shows the Allowed Individual Claims and Allowed Class Action claims. Since these claims have been allowed, the impact on the funding required from the Borrower Claims Trust  is the same in all the Borrower DCR Scenarios. The allowed individual claims are also used to develop metrics to employ in Scenarios 2 and 3 to estimate allowed amounts for the remaining unresolved claims.**

■ There is a total of 78 Allowed Individual Borrower Claims that consume $468k of the Borrower Claims Trust Funds at the Plan Recovery Rates.
   ■ $391k on account of allowed individual claims at GMACM
   ■ $77k on account of allowed individual claims at RFC
■ There is a total of 6 allowed class action claims that consume $32.2 million of the Borrower Claims Trust Funds.
   ■ $3.9 million against GMAC
   ■ $28.3 million against RFC
   ■ Other class action claims were resolved and paid at or shortly after the Effective Date
   ■ To be conservative, when the Borrower Claims Trust True-up analysis was prepared in November, 2013, the Class Action Claims estimate of Allowed Claims included a claim asserted in the amount of $5 million at GMACM.  The estimated allowed amount was assumed to be the asserted amount in the Borrower Claims Trust True-up.  Further review of this claim shows it not to be a Class Action Claim and because the asserted amount was based on the claimant's assumption of class certification, all Scenarios now treat this claim as a Borrower DCR claim that is unliquidated.
■ These allowed claims consume $32.7 million of the Borrower Claims Trust Funds (at the Plan Recovery Rates).



# Histogram of Allowed Individual Claims



- The average amount for the allowed individual claims is $28k and 54 of the 78 settled Individual Borrower Claims settled in an amount less than this average. The chart on the left shows that the population of allowed amounts for settled Individual Borrower Claims is skewed to the low-end of the settlement range and the average is being inflated by outliers on the higher end of the range.
- The median value for the allowed amount for the 78 settled Individual Borrower Claims is $15k, which is similar to the Debtors' experience with settling Individual Borrower Claims prior to filing for Chapter 11.
- The largest settled claim settled at $325k.



8



# Key Observations

Borrower Claims Register Rationalization

- Over 3,000 Borrower Claims were filed against the Debtors in their Chapter 11
- To date, over 2,200 Borrower Claims have been expunged through court ordered objections, settlements and withdrawals by the creditors
- All of the Class Action Borrower Claims have been resolved with some being paid outside of the Borrower Claims Trust (the Rothstein Class Action settlement has not been fully executed)
- 78 individual Borrower Claims have been allowed through negotiated settlements.
- The average amount of these allowed claims is approximately $28k.  The Debtors average settlement in the recent period prior to its filing of Chapter 11 was a cash payment of $16.8k per borrower claim.
- The review of the claims register indicates that there are 49 unresolved claims that are duplicates of claims or amend claims already being considered in the analysis of the Borrower Claims Trust Disputed Claims Reserve.  These claims have been disregarded in all Scenarios included in this presentation.
- There are 69 claims included on the Borrower Trust's Sixty-First Omnibus Objection where the response deadline has passed and the claimant failed to respond to the objection.  These claims are excluded from the Borrower DCR.
- There are 597 claims that are part of the Disputed Claims Reserve, which are asserted by the claimants at approximately $826 million.
  - The top five claims are asserted at an aggregate of $632 million; approximately 1% of the claims comprise over 75% of the asserted claims dollars.  Two of these claims have been ordered expunged by the Bankruptcy Court, but the claimant has filed an appeal to this order.  For conservatism, these claims have been included in the Disputed Claims Reserve calculation as part of the Claims Analyzed – Objections category; however the asserted amount has been modified to be the highest asserted amount of the claims in the Disputed Claims Reserve, when ignoring the 5 claims in excess of $10 million ($6.45 million).
  - 65 of the Disputed Claims Reserve Claims have either already been included in an objection or have been identified for inclusion in a future objection. The average asserted amount for these claims is $10.5 million.  When excluding the top 5 claims referenced above, the average asserted amount of the remaining 60 claims is $893k.
  - 532 of the Disputed Claims Reserve Claims are still being analyzed by the Borrower Claims Trust for potential objection and/or settlement.  The average asserted amount for these claims is $264k.  Included in this population of Borrower DCR claims are 131 Convenience Class claims.

Assumptions Employed

- The analysis of the Borrower Claims Trust Disputed Claims Reserve uses the following assumptions to estimate the funds required to pay the allowed Borrower Claims and the estimated Borrower Claims at the Plan Recovery Rate:
  - The percentage recovery applied to the estimated allowed claims is based on the recovery percentages for the Debtor Groups as set forth in the Debtors' Chapter 11 Plan.  The recovery percentage at GMACM is 30.1%, at ETS is 100.0% and at RFC is 9.0%.
  - Remaining Claims are further segregated into those that are asserted in excess of $100k (including wholly unliquidated) and those equal to or less than $100k.
  - For those claims that are classified as Claims Analyzed - Objection, it is assumed that 50% of the objections will be sustained, even though ~97% of the claims included in prior objections have been ordered expunged.
  - The estimated allowed claims were estimated using a variety of methodologies, including (1) 4x/3x pre-bankruptcy settlement amounts, which is used in the Scenario 1, (2) average allowed amount for resolved Individual Borrower Claims, which is used in Scenario 2, and (3) weighted-average percentage of allowed claims to asserted claims for resolved Individual Borrower Claims, which is used in Scenario 3.  For claims asserted at amounts less than the estimation factors described above, the asserted amount is used as the estimate for the allowed amount.



# Scenario 1 – Borrower Trust True-up Methodology

| | GMACM | | | | RFC | | | | ETS | | | | Total | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Scenario 1 - Base Case** | | | | | | | | | | | | | | | | |
| ($ in Millions) | Claims (Count) | Asserted Amount | Actual & Estimated Allowed Amount | Allocation of Borrower Claims Trust Funds | Claims (Count) | Asserted Amount | Actual & Estimated Allowed Amount | Allocation of Borrower Claims Trust Funds | Claims (Count) | Asserted Amount | Actual & Estimated Allowed Amount | Allocation of Borrower Claims Trust Funds | Claims (Count) | Asserted Amount | Actual & Estimated Allowed Amount | Allocation of Borrower Claims Trust Funds |
| **Resolved Claims** | | | | | | | | | | | | | | | | |
| 1  Allowed Claims- Individual | 66 | N/A | $1.30 | $0.39 | 12 | N/A | $0.85 | $0.08 | 0 | N/A | $0.00 | $0.00 | 78 | N/A | $2.15 | $0.47 |
| 2  Allowed/Remaining Claims- Class Action | 4 | N/A | 13.02 | 3.92 | 2 | N/A | 314.50 | 28.31 | 0 | N/A | 0.00 | 0.00 | 6 | N/A | 327.52 | 32.22 |
| **Total Resolved Claims** | 70 | | 14.32 | 4.31 | 14 | | 315.35 | 28.38 | 0 | | 0.00 | 0.00 | 84 | | 329.67 | 32.69 |
| **Disputed Claims Reserve** | | | | | | | | | | | | | | | | |
| 3  Claims Analyzed - Objections | 53 | 634.70 | 1.59 | 0.48 | 10 | 49.11 | 0.30 | 0.03 | 2 | 1.57 | 0.06 | 0.06 | 65 | 685.37 | 1.95 | 0.57 |
| 4  Remaining Claims > 100K- Active | 63 | 36.01 | 2.84 | 0.85 | 11 | 8.09 | 0.50 | 0.04 | 3 | 1.52 | 0.14 | 0.14 | 77 | 45.62 | 3.47 | 1.03 |
| 5  Remaining Claims > 100K- Foreclosed | 143 | 83.14 | 8.58 | 2.58 | 12 | 3.72 | 0.72 | 0.06 | 0 | 0.00 | 0.00 | 0.00 | 155 | 86.86 | 9.30 | 2.65 |
| 6  Remaining Claims < 100K | 157 | 7.07 | 5.95 | 1.79 | 12 | 0.70 | 0.62 | 0.06 | 0 | 0.00 | 0.00 | 0.00 | 169 | 7.77 | 6.57 | 1.85 |
| 7  Convenience Class | 119 | 0.25 | 0.25 | 0.13 | 12 | 0.15 | 0.15 | 0.02 | 0 | 0.00 | 0.00 | 0.00 | 131 | 0.40 | 0.40 | 0.15 |
| **Total Disputed Claims Reserve** | 535 | 761.16 | 19.21 | 5.84 | 57 | 61.77 | 2.28 | 0.21 | 5 | 3.09 | 0.20 | 0.20 | 597 | 826.02 | 21.68 | 6.25 |
| **Total** | 605 | $761.16 | $33.52 | $10.15 | 71 | $61.77 | $317.63 | $28.59 | 5 | $3.09 | $0.20 | $0.20 | 681 | $826.02 | $351.35 | $38.94 |

**Scenario 1 employs the same methodology that was used in the original Borrower Trust True-Up analysis. Set forth below are the assumptions used to calculate the contribution to the borrower trust in Scenario 1.**

■ **Claims Analyzed - Objections** – While the Borrower Trust believe all objections will ultimately be sustained, claims where there was a timely response to the objection or the objection deadline has not yet passed are assumed to be sustained 50% of the time and result in an allowed claim of $60,000 (approximately four times the historical settlement amount).  To date, ~97% of the objections seeking to expunge Borrower Claims have been successfully sustained.

■ **Remaining Claims > $100K- Active** – Because the loan is still being serviced, the borrower may receive a loan modification or other non-monetary relief from the party currently servicing the loan and in return, a corresponding release or settlement of the Borrower Claim is expected to be sought. It is assumed that all of the claims (100%) will become allowed at an average of $45,000 (approximately three times the historical settlement amount).

■ **Remaining Claims > $100K- Foreclosed** – Because the loan is not being serviced, there is no ability to resolve these claims through non- cash settlements with the current servicers. Thus, it is assumed that all of the claims (100%) will become allowed at an average of $60,000 (approximately four times the historical settlement amount).

■ **Remaining Claims <= $100K** – It is assumed that all of these claims (100%) will become allowed at the lesser of the asserted amount of the claims or $60,000.

■ **Estimated Percentage of Remaining Claims becoming Allowed  Claims-** Although, the Borrower Claims Trust and their professionals continue to analyze the Remaining Claims for inclusion in future objections, the methodology for Scenario 1 conservatively assumes that none of the these claims will be subject to further objections.



# Scenario 2 – Average Allowed Claim

| Scenario 2 | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | GMACM | | | | RFC | | | | ETS | | | | Total | | | |
| ($ in Millions) | Claims (Count) | Asserted Amount | Actual & Estimated Allowed Amount | Allocation of Borrower Claims Trust Funds | Claims (Count) | Asserted Amount | Actual & Estimated Allowed Amount | Allocation of Borrower Claims Trust Funds | Claims (Count) | Asserted Amount | Actual & Estimated Allowed Amount | Allocation of Borrower Claims Trust Funds | Claims (Count) | Asserted Amount | Actual & Estimated Allowed Amount | Allocation of Borrower Claims Trust Funds |
| **Resolved Claims** | | | | | | | | | | | | | | | | |
| 1  Allowed Claims- Individual | 66 | N/A | $1.30 | $0.39 | 12 | N/A | $0.85 | $0.08 | 0 | N/A | $0.00 | $0.00 | 78 | N/A | $2.15 | $0.47 |
| 2  Allowed/Remaining Claims- Class Action | 4 | N/A | 13.02 | 3.92 | 2 | N/A | 314.50 | 28.31 | 0 | N/A | 0.00 | 0.00 | 6 | N/A | 327.52 | 32.22 |
| **Total Resolved Claims** | 70 | | 14.32 | 4.31 | 14 | | 315.35 | 28.38 | 0 | | 0.00 | 0.00 | 84 | | 329.67 | 32.69 |
| **Disputed Claims Reserve** | | | | | | | | | | | | | | | | |
| 3  Claims Analyzed - Objections | 53 | 634.70 | 0.67 | 0.20 | 10 | 49.11 | 0.12 | 0.01 | 2 | 1.57 | 0.03 | 0.03 | 65 | 685.37 | 0.83 | 0.24 |
| 4  Remaining Claims | 363 | 126.21 | 9.32 | 2.81 | 35 | 12.52 | 0.97 | 0.09 | 3 | 1.52 | 0.08 | 0.08 | 401 | 140.25 | 10.37 | 2.98 |
| 5  Convenience Class | 119 | 0.25 | 0.25 | 0.13 | 12 | 0.15 | 0.15 | 0.02 | 0 | 0.00 | 0.00 | 0.00 | 131 | 0.40 | 0.40 | 0.15 |
| **Total Disputed Claims Reserve** | 535 | 761.16 | 10.25 | 3.14 | 57 | 61.77 | 1.24 | 0.12 | 5 | 3.09 | 0.11 | 0.11 | 597 | 826.02 | 11.59 | 3.37 |
| Total | 605 | $761.16 | $24.56 | $7.45 | 71 | $61.77 | $316.59 | $28.50 | 5 | $3.09 | $0.11 | $0.11 | 681 | $826.02 | $341.26 | $36.06 |

**In Scenario 2 the average allowed amount for individual Borrower Claims filed in the Debtors' Chapter 11 that have been settled and allowed was calculated ($28k) and this average is employed as described below.**

■ Claims Analyzed - Objections
- The average allowed amount for Individual Borrower Claims is assumed to be the estimated allowed amount per claim for those claims included in the Claims Analyzed – Objection category. Since Scenario 1 assumes the objections will be sustained 50% of the time, this same ratio is applied in Scenario 2.  In instances where the asserted amount is below the average allowed amount, the asserted amount is used.

■ Remaining Claims
- Claims > $100K and Unliquidated Claims– The average settlement used for the allowed individual claims is assumed to be the allowed settlement for this category.
- Claims <= $100K – The lesser of the average settlement and the amount asserted by the claimant is assumed to be the allowed settlement.



# Scenario 3 – Percentage of Allowed Claim to Asserted Claim

| ($ in Millions) | GMACM | | | | RFC | | | | ETS | | | | Total | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Claims (Count) | Asserted Amount | Actual & Estimated Allowed Amount | Allocation of Borrower Claims Trust Funds | Claims (Count) | Asserted Amount | Actual & Estimated Allowed Amount | Allocation of Borrower Claims Trust Funds | Claims (Count) | Asserted Amount | Actual & Estimated Allowed Amount | Allocation of Borrower Claims Trust Funds | Claims (Count) | Asserted Amount | Actual & Estimated Allowed Amount | Allocation of Borrower Claims Trust Funds |
| **Resolved Claims** | | | | | | | | | | | | | | | | |
| 1    Allowed Claims- Individual | 66 | N/A | $1.30 | $0.39 | 12 | N/A | $0.85 | $0.08 | 0 | N/A | $0.00 | $0.00 | 78 | N/A | $2.15 | $0.47 |
| 2    Allowed/Remaining Claims- Class Action | 4 | N/A | 13.02 | 3.92 | 2 | N/A | 314.50 | 28.31 | 0 | N/A | 0.00 | 0.00 | 6 | N/A | 327.52 | 32.22 |
|     **Total Resolved Claims** | 70 | | 14.32 | 4.31 | 14 | | 315.35 | 28.38 | 0 | | 0.00 | 0.00 | 84 | | 329.67 | 32.69 |
| | | | | | | | | | | | | | | | | |
| **Disputed Claims Reserve** | | | | | | | | | | | | | | | | |
| 3    Claims Analyzed - Objections | 53 | 634.70 | 2.15 | 0.65 | 10 | 49.11 | 0.88 | 0.08 | 2 | 1.57 | 0.06 | 0.06 | 65 | 685.37 | 3.09 | 0.79 |
| 4    Remaining Claims | 363 | 126.21 | 8.34 | 2.51 | 35 | 12.52 | 0.87 | 0.08 | 3 | 1.52 | 0.09 | 0.09 | 401 | 140.25 | 9.31 | 2.68 |
| 5    Convenience Class | 119 | 0.25 | 0.25 | 0.13 | 12 | 0.15 | 0.15 | 0.02 | 0 | 0.00 | 0.00 | 0.00 | 131 | 0.40 | 0.40 | 0.15 |
|     **Total Disputed Claims Reserve** | 535 | 761.16 | 10.74 | 3.29 | 57 | 61.77 | 1.90 | 0.18 | 5 | 3.09 | 0.16 | 0.16 | 597 | 826.02 | 12.80 | 3.63 |
| Total | 605 | $761.16 | $25.06 | $7.60 | 71 | $61.77 | $317.25 | $28.56 | 5 | $3.09 | $0.16 | $0.16 | 681 | $826.02 | $342.46 | $36.32 |

**In Scenario 3, the weighted-average percentage of the allowed amount to the asserted amount for the resolved Individual Borrower Claims is calculated (6.22%) and is applied to the claims in the following manner:**

■ **Claims where the creditor has asserted an amount** – The assumed allowed amount for these claims is determined by multiplying the asserted amount by the 6.22% factor.

■ **Unliquidated Claims** – The average settlement amount calculated in Scenario 2 is applied to these claims to estimate their allowed amount.

■ **Large Asserted Claims -** There are several claims asserted by the claimant in amounts in excess of $10 million. The top five claims assert amounts in excess of $631.8 million. Because this scenario uses a factor based on the percentage of the allowed claim amount to the amount asserted by the claimant, the inclusion of these five claims at their asserted amount would result in almost $5.9 million in funds in the Disputed Claims Reserve at the Plan Recovery Rates. To correct for the distortion caused by these outliers, the asserted amount for these five claims was replaced with the highest asserted amount when ignoring the five exaggerated claims ($6.475 million).



# Ratio of Allowed Estimate to Asserted for Borrower DCR Claims

| | Ratio of Allowed Estimate Amount to Asserted Amount for Borrower DCR Claims | Borrower DCR Claims | % of Borrower DCR Claims | Cumulative % of Borrower DCR Claims |
|---|---|---|---|---|
| 1 | Asserted Equal to or Less than Estimated Allowed Claim | 262 | 43.9% | 43.9% |
| 2 | Unliquidated | 75 | 12.6% | 56.4% |
| 3 | Asserted Greater than Estimated Allowed by less than 100% | 64 | 10.7% | 67.2% |
| 4 | Asserted Greater than Estimated Allowed by less than 500% | 79 | 13.2% | 80.4% |
| 5 | Asserted Greater than Estimated Allowed by greater than 500% | 117 | 19.6% | 100.0% |
| 6 | **Total** | **597** | **100.0%** | |

**Because of the inflated nature of the asserted amounts in the Borrower DCR Claims (as compared with historical settlements of Borrower Claims), it is not appropriate to use the asserted amounts as the basis for establishing the Borrower DCR claims. The chart above shows the relationship between the asserted amount to the estimated allowed amount in Scenario 1.**

- Approximately 44% of the Borrower DCR Claims use an amount equal to or less than the asserted amount and another 12% are unliquidated.
- The remaining 44% of the Borrower DCR Claims assert a claim in excess of what is estimated for purposed of establishing the Borrower DCR.
  - Claims where the asserted amount is greater than the estimated allowed amount by less than 100% represent claims asserted up to $90k or $120k (depending on whether the estimate is $45k or $60k).
  - Claims where the asserted amount is greater than the estimated amount by less than 500% represent claims asserted up to $270k or $360k.
  - Claims where the asserted amount is greater than the estimated amount by more than 500% represent claims asserted greater than $270k or $360k.

