**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | |
| | ) | |

## NOTICE OF CREDITOR'S OBJECTION TO DEBTOR'S SIXTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER CLAIMS)

Michelle Lawson, et al., in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), as a creditor in possession (the "Creditor"), respectfully represent:

### RELIEF REQUESTED

1. The Creditor files this objection to Debtor's filing of omnibus objections to proofs of claim (collectively, the "No Liability Borrower Claims").

2. The Creditor asserts that the proof of claim for Claim No. 5282 is a liability of the Debtor because there is sufficient supporting documentation. Even if the Procedures Order were applicable in this case and the opportunity to supply additional support for the claim existed, the Debtors have access to the records at issue in their capacity and/or roles as both the purchaser and servicer of the loan. Accordingly, the Creditor seeks to assert her rights by supplying a copy of the defective loan application and objecting in whole to the Debtor's request to disallow and expunge Claim No. 5282 from the Claims Register, as indicated on Exhibit A.

3. In addition, the Creditor asks that the status of general unsecured creditor remain and not be expunged and disallowed because the rights of the Creditor must be preserved in a situation in which the actions of fraud in the inducement and misrepresentation, among other things are at issue.

4. To preserve the Creditor's right to object later, among other rights, the Creditor expressly reserves all rights to object on any other basis to any Debtor's Claim to which this Court does not grant the relief requested herein.



## THE CREDITOR'S CLAIM SHOULD NOT BE DISALLOWED AND EXPUNGED

5. To disallow and expunge the Creditor's claim and claim status would result in the claimant not receiving a distribution, which would be to the detriment of the Creditor given the asserted improprieties herein and the egregious nature of the transaction.

6. The Creditor specifically requested, desired and expected a conventional mortgage as indicated in the good faith letter attached on Exhibit B not a sub-prime product.[1]

7. Although the proofs of claim identified by the Debtor in the omnibus objection of the No Liability Borrower Claims classify a borrower as "a person who is or was a mortgagor under a mortgage loan originated, serviced, and/or purchased or sold by one or more of the Debtor," that situation does not account for a person who was fraudulently induced to contract for the loan. In this case, the loan is the Secondary Mortgage Note as attached on Exhibit A.

8. The Creditor should be allowed to receive a recovery on the claim from the Debtor's estate given the business association and/or relationship between all parties designated as the Debtor. The Debtor's records and the record as presented in Exhibit A prove that the Debtor held the loan as both the purchaser and servicer.

9. Although the Debtors determined that the claim of Michelle Lawson, et al., Claim No. 5282, as identified on Exhibit A of the above-mentioned cases, fails to provide sufficient supporting documentation, the need to provide such documentation was a duplicative effort in this case. After numerous requests over time to the various loan servicers, on or about November 14, 2013, Ocwen, the current loan servicer provided a letter stating that the request had been processed, and provided copies of the loan application, the mortgage note and the loan, as attached on Exhibit A.

10. The Creditor further asserts that the Debtor has known of the existence of such supporting documentation and such documentation has been in the Debtor's possession since the purchase of the loan on or about February 21, 2007.

11. Because the Debtor is both a purchaser and servicer, agency principles apply in this case, and the owner of a mortgage loan may be held vicariously liable for the violations of its agent, the servicer.

12. In this case, the Debtor (the loan purchaser and servicer) had constructive notice of the fraud perpetrated because they had copies of the defective loan application as well as

---

[1] A sub-prime product in a residential mortgage context is defined as an "'80/20 mortgage', in which 80 percent of the purchase price was covered by a first…mortgage, and the remainder by a second mortgage, often with a much higher interest rate." See Elizabeth M. Lynch, *The Second-Mortgage Shell Game*, THE NEW YORK TIMES, February 18, 2013, *available in* LEXIS-NEXIS, News Library, http://www.lexisnexis.com. Lynch further states that it is well settled that these "notorious subprime loans…were marketed, often through predatory lending practices," to minority borrowers "during the housing bubble." See *id.*

requests for the loan application. Therefore, the fraud, unconscionability and other claims here can be asserted against the Debtors.

13. Under the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq. and 15 U.S.C. §§ 1640-1641, the Consumer Credit Protection Act and the implementation of Regulation Z, as well as the Home Ownership and Equity Protection Act, certain disclosure requirements, and prohibitions on steering, among other things, were put into place to protect consumers. In this case, those requirements were either met in an irregular manner or omitted.

14. During the subprime lending boom of 2004-2007, liberties, such as notes being endorsed or delivered, were taken with regard to the mortgage process.[2] The Creditor asserts that liberties were not limited to the loan originator, but the Debtor took liberties in its capacity as both the loan purchaser and the loan servicer. Further evidence of systemic abuse with respect to the mortgage business and processes include "irregularities...including, but not limited to...outright counterfeiting of documents."[3]

15. Debtor, (the subsequent loan purchaser and loan servicer) has a distinct discovery advantage over the Creditor because they have copies of the loan application but failed not only to disclose this information to the court but also chose to engage in sloppy discovery techniques and failed in their due diligence duties at best and at worst engaged in willful, knowing and intentional tactics that are tantamount to subterfuge and surreptitious activities directed purposefully at the Creditor. That is, the Debtor had access to copies of the loan application and still failed to disclose this information.

16. If diligence were truly exercised, the defective loan application should not have been ignored or omitted, as the subpoena powers of the Debtor are much greater than those of the Creditor.

17. Even if the underlying loan cannot be extinguished, the Creditor has a right to remain in the pool of Creditors because the practical effect here is limited to damages. That is, the

---

[2] *Robo-Signing, Chain of Title, Loss Mitigation, and Other Issues in Mortgage Servicing: Hearing Before the Subcomm. on Hous. and Comty. Opportunity of the H. Fin. Servs. Comm.*, 111th Cong. 2d Sess. (2010) (testimony of Adam J. Levitin, Associate Professor of Law, Georgetown University Law Center), *available at* http://scholarship.law.georgetown.edu/cgi/viewcontent.cgi?article=1110&context=cong and http://financialservices.house.gov/media/file/hearings/111/levitin111810.pdf.

[3] Although foreclosure is not at issue in this case, the processes, procedures and goals of the loan originator, loan purchaser and servicer in this case are similar and can be imputed to the servicing process, the loan purchasers and the Debtor. According to Professor Levitin's testimony, "faulty foreclosures due to irregularities ranging from procedural defects (including, but not limited to robosigning) to outright counterfeiting of documents; predatory servicing practices that precipitate borrower defaults and then overcharge for foreclosure services that are ultimately paid for by investors; and questions about the validity of transfers in private-label mortgage securitizations...These problems are very serious. At best they present problems of fraud on the court." See *Robo-Signing, Chain of Title, Loss Mitigation, and Other Issues in Mortgage Servicing: Hearing Before the Subcomm. on Hous. and Comty. Opportunity of the H. Fin. Servs. Comm.*, 111th Cong. 2d Sess. (2010) (testimony of Adam J. Levitin, Associate Professor of Law, Georgetown University Law Center), *available at* http://scholarship.law.georgetown.edu/cgi/viewcontent.cgi?article=1110&context=cong and http://financialservices.house.gov/media/file/hearings/111/levitin111810.pdf.

underlying debt has not been extinguished and the loan purchaser and loan servicers have and will continue to receive payments, including the balloon payment due on or about January 1, 2020.

18. Even if the mortgage has been ratified via timely payments, the underlying note is invalid due to mortgage application defects,[4] inadequate or no consideration, fraud and the unconscionable nature of the transaction. These facts cannot be ignored and the Creditor deserves relief because duress, unconscionability and fraud go to the very heart of the validity of the note, the mortgage, the transaction, the loan application and this bankruptcy process.

19. Creditor (all parties) received a copy of the mortgage application for the first time on or about November 20, 2013. This disclosure, nearly a decade in the making, is an example of the fraud alleged as part of the Creditor's claim. Quality control best practices[5] were probably not followed by either the loan originator or the purchaser and servicer, but that should not provide a license to the Debtor to continue to perpetuate the fraud. Expunging and disallowing the claim sends that very message to the Debtor and it allows the fraud to continue to the further detriment of the Creditor.

20. Accordingly, in order to properly reflect the Debtor against which these claims should be asserted, the Creditor requests that this Court not modify the claim of Michelle Lawson, et al., Claim No. 5282, because it properly reflects a claimed liability against the appropriate Debtor.

21. It is unlikely that bad acts and actors as well as errors and omissions of the Debtor were limited to the foreclosure[6] process. For example, in *Susanne Drakopoulos & another v. U.S. Bank National Association, trustee, & another*, 991 N.E.2d 1086 (Mass. 2013),[7] the loan servicer was able to avoid liability because the defendant could not prove that they were an assignee. In this case, the Debtors stated that they purchased and serviced the loan belonging to the Creditors. Purchasers of loans become by extension assignees.

---

[4] Loan defects, "which may be eligibility violations," include assets, borrower and mortgage eligibility, credit, liabilities, income/employment among other things. See FannieMae, *FNMA Loan Defect Categories* (2013), *available at* https://www.fanniemae.com/content/fact_sheet/loan-defect-categories.pdf.

[5] According to the quality control best practices enumerated by Freddie Mac, once a mortgage application has been executed, "a copy of the original, signed mortgage application should be mailed to the borrowers" along with requests to "acknowledge signatures," verify the validity of information, "state whether they were asked to sign a blank or incomplete mortgage application," and "whether they were asked to omit any information requested on the mortgage application." See Freddie Mac, *Quality Control Best Practices* (2012), *available at* http://www.freddiemac.com/singlefamily/pdf/qc_practices.pdf. Here, the Creditor saw a copy of the mortgage application for the first time since the mortgage note was executed.

[6] The Debtor's (d/b/a GMAC Mortgage, L.L.C. among other entities) actions as a loan purchaser, loan originator and mortgage servicer as well as the Debtor's errors and omissions during the foreclosure process have been the subject of litigation in numerous cases, including, but not limited to the cases of *Janos Farkas v. GMAC Mortgage, L.LC..; Deutsche Bank Trust Company Americas*, 737 F.3d 338 (2013) and *GMAC Mortgage., L.L.C. v. First American Title Insurance Company*, 464 Mass. 733, 985 N.E. 2d 823 (2013).

[7] See Susanne Drakopoulos & another vs. U.S. Bank National Association, trustee, & another, 465 Mass. 775, 991 N.E.2d 1086 (Mass. 2013). Here, the Debtor, by admission has affirmed its dual role as both loan purchaser and servicer.

Therefore, the Debtor is liable as an assignee even if the Debtor escapes liability under servicer status. Additionally, in this case, the borrowers alleged that the lender had rushed them into signing documents and that the loan application had false information on it. This case is analogous to the extent that there are other documented cases of fraud, irregularities, and defects among other things that have occurred at the loan application level, which cause the borrowers (and in this case the Creditor's) to allege fraud and unconscionability.

22. In this case, it follows by extension that loan purchasers are assignees; therefore, all of the rights and obligations of assignee are applicable to the Debtor. Accordingly, under 15 U.S.C. § 1641(c-g), the Debtor assumes the liabilities as not only an assignee, but also as a servicer.

23. Although the Debtor asserts that the Response Deadline has passed and that the Debtor received insufficient information to establish a basis for liability with respect to Claim No. 5282, this creates a situation in which there is a genuine issue of material facts as well as an incomplete presentation of the facts. This claim should not be time-barred because the copy of the loan application was just produced on or about November 20, 2013.

24. This entire process has wrought havoc on the lives of the Creditor as well as brought on varying degrees of emotional distress for the Creditor.

25. Considering the totality of the circumstances, this Court holds the power to declare this claim allowable and not to expunge it because to do otherwise contravenes public policy or at least violates not only the interests of the public, but also the interests of the Creditor.

26. In this case, to disallow this claim would further the already egregious nature of this transaction and an existing miscarriage of justice.

## CONCLUSION

27. In sum, the Creditor's claim should be moved to the liability borrower claims pool and retain its status as an active claim for which the Debtor is liable.

WHEREFORE, the Creditor respectfully requests that the Court enter an order in which the Creditor's claim is not disallowed and not expunged granting the relief herein and granting such other relief as is just and proper.

Dated: May 21, 2014
     Philadelphia, Pennsylvania

Respectfully Submitted,

Signature: _____

Name:       Michelle Lawson, et al.
Address:    226 East Gorgas Lane
              Philadelphia, PA 19119
              Telephone: (215) 843-0560
Claim:       Claim Number 5282

**Exhibit A**



OCWEN

*Ocwen Loan Servicing, LLC*
*PO Box 780*
*Waterloo IA 50704-0780*
HELPING HOMEOWNERS IS WHAT WE DO!™
OCWEN.MORTGAGEBANKSITE.COM

11/14/13


MICHELLE C LAWSON
MARGARET LAWSON
226 E GORGAS LN

PHILADELPHIA      PA 19119-1929



RE:    Account Number      0359473279
       Property Address    226 EAST GORGAS LANE

                           PHILADELPHIA      PA 19119-0000

Dear   MICHELLE C LAWSON
       MARGARET LAWSON

Thank you for contacting us about your account.  Enclosed is the information you
requested.

If you have any questions, we are here to help.  Please call our office at 800-766-4622
Monday through Friday, 7:00 a.m. to 8:00 p.m. CT, Saturday, 7:00 a.m. to 4:00 p.m. CT and
Sunday, 8 a.m. to 8 p.m. CT.


Customer Care
Loan Servicing


Enclosure


2:01

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 4,710.75 | $ | $ 4,710.75 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | | $ 2,009.83 |
| Bonuses | | | | Other Financing (P&I) | | 408.17 |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | | |
| Net Rental Income | | | | Mortgage Insurance | | |
| OTHER (before completing, see the notice in "describe other income." below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 4,710.75 | $ | $ 4,710.75 | Total | $ | $ 2,418.00 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    Notice:  Alimony, child support, or separate maintenance income need not be revealed if the Borrower
(B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly   ☐ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | LIABILITIES | | |
| | | Name and address of Company   AES/M T BANK | $ Payment/Months  156.00/36 | $ 5,488.00 |
| List checking and savings accounts below | | | | |
| Name and address of Bank, S&L, or Credit Union  PFFCU | | | | |
| | | Acct. no.   18048405900001 | | |
| | | Name and address of Company   Philadelphia Fed Cr Union | $ Payment/Months  224.00/22 | $ 4,745.00 |
| Acct. no.   885996 | $ 3,787.48 | | | |
| Name and address of Bank, S&L, or Credit Union | | Acct. no.   8859969 | | |
| | | Name and address of Company   PGW | $ Payment/Months  16.00/1 | $ 16.00 |
| Acct. no. | | | | |
| Name and address of Bank, S&L, or Credit Union | | Acct. no.   18640179 | | |
| | | Name and address of Company   Philadelphia Fed Cr Union | $ Payment/Months  279.00/50  revolving | $ 13,944.00 |
| Acct. no. | | | | |
| Name and address of Bank, S&L, or Credit Union | | Acct. no.   4306391000019501 | | |
| | | Name and address of Company   Citibank | $ Payment/Months  448.95/20  revolving | $ 8,979.00 |
| Acct. no. | $ | | | |
| Stocks & Bonds (Company name/number & description) | $ | Acct. no.   542418077499 | | |
| | | Name and address of Company | $ Payment/Months  $ | |
| Life insurance net cash value | $ | | | |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ 3,787.48 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | Acct. no. | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months  $ | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. No. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job Related Expense (child care, union dues, etc.) | $ | |
| | | | 1,123.95 | |
| | | Total Monthly Payments | $ | |
| Total Assets a. | $ 3,787.48 | Net Worth (a minus b) ► $  29,384.52 | Total Liabilities b. | $ 33,172.00 |

Freddie Mac Form 65  01/04                                          Page 3 of 4                                          Fannie Mae Form 1003  01/04

"I/We acknowledge that the information provided on this page is true and correct"

ISC/8RLA/0701/1003/0104-L

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if Sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | Totals | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ 342,000.00 |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | |
| e. Estimated prepaid items | 361.73 |
| f. Estimated closing costs | 100.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 342,461.73 |
| j. Subordinate financing | 273,600.00 |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 51,300.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 51,300.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 17,561.73 |

## VIII. DECLARATION

If you answer "Yes" to any questions a through i, please use continuation sheet for explanations.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | | X | | |
| (1) What type of property did you own – principal residence (PR), second home (SH), or investment property (IP)? | | | | |
| (2) How did you hold title to the home – solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et. seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 12.3.04 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish this information. | CO-BORROWER ☐ I do not wish to furnish this information. |
|---|---|
| Ethnicity: ☐ Hispanic or Latino ☒ Not Hispanic or Latino | Ethnicity: ☐ Hispanic or Latino ☐ Not Hispanic or Latino |
| Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☒ White | Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White |
| Sex: ☐ Female ☒ Male | Sex: ☐ Female ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) ROBIN BOWMAN | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | Interviewer's Signature | Date | TRIDENT SECOND MORTGAGE COMPANY |
| ☐ Face-to-face interview | | | 1409 NORTH KINGS HIGHWAY |
| ☐ Mail | | | CHERRY HILL, NJ 08034 |
| ☒ Telephone | Interviewer's Phone Number (incl. area code) | |
| ☐ Internet | (856) 428-3300 | |

| Continuation Sheet/Residential Loan Application | | |
|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: JOSHUA E. LISS | Agency Case Number: |
| | Co-Borrower: | Lender Case Number: 69498 |

THIS LOAN MUST EITHER BE PAID IN FULL AT MATURITY OR
REFINANCED TO A MARKET LEVEL FIXED-RATE MORTGAGE. YOU MUST
REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID
INTEREST THEN DUE IF YOU DO NOT QUALIFY FOR THE CONDITIONAL
RIGHT TO REFINANCE AS SPECIFIED IN THE NOTE ADDENDUM AND
MORTGAGE RIDER. THE LENDER IS UNDER NO OBLIGATION TO
REFINANCE THE LOAN IF QUALIFICATION CONDITIONS ARE NOT MET.
YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF
OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A
LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH,
WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN
AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING
COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN
REFINANCING FROM THE SAME LENDER.


NO ADDITIONAL DATA OR SCHEDULES ARE ATTACHED TO THIS LOAN APPLICATION

---

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | 12-5-04 | X | |

Fannie Mae Form 65  01/04

Page 4 of 4

Fannie Mae Form 1003  01/04

AFTER RECORDING MAIL TO:
Trident Second Mortgage Company, Inc.
1409 NORTH KINGS HIGHWAY
CHERRY HILL, NJ 08034

CERTIFIED TRUE COPY
BY *Ruth Morris*

LOAN NO. 69498

─────────────── [Space Above This Line For Recording Data] ───────────────

## MORTGAGE

THIS MORTGAGE is made this    3rd    day of    December 2004    , between the Mortgagor,
MICHELLE C. LAWSON, MARGARET LAWSON and JOSHUA E. LISS

Trident Second Mortgage Company, Inc. (herein "Borrower"), and the Mortgagee,
, a corporation organized and existing under the laws of    PENNSYLVANIA
and whose address is    1409 NORTH KINGS HIGHWAY, CHERRY HILL, NJ 08034
(herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $    51,300.00
which indebtedness is evidenced by Borrower's note dated    December 3, 2004    and extensions
and renewals thereof, (herein "Note"), providing for monthly installments of principal and interest, with the
balance of the indebtedness, if not sooner paid, due and payable on    January 1, 2020    ;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon;
the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the
security of this Mortgage; and the performance of the covenants and agreements of Borrower herein
contained, Borrower does hereby mortgage, grant and convey to Lender the following described
property located in the County of    Philadelphia    , State of Pennsylvania:

As more fully described in exhibit "A" which is hereto and made a part hereof:

Being tax parcel #

which has the address of       226 EAST GORGAS LANE
                                    [Street]

PHILADELPHIA              Pennsylvania          19119          ("Property Address");
    [City]                                         [Zip Code]

PENNSYLVANIA--SECOND MORTGAGE - 1/80 FNMA / FHLMC UNIFORM INSTRUMENT        FORM 3839 (9-94)
PAGE 1 OF

**LOAN NO.**

TOGETHER WITH all improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property".

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal of and interest indebtedness evidenced by the Note and late charges provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due date of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 17 hereof the Property is sold or the Property is otherwise aquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

LOAN NO.

**3. Aplication of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on Note, and then to the principal of the Note.

**4. Prior Mortgages and Deed of Trust; Charges; Liens.** Borrowers shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and any other hazards as Lender may require and in such amounts and for such periods as Lender may require.
The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.
In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.
If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender requires mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.
Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may take or cause to be made reasonable entries upon inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

LOAN NO.

**10. Borrower Not Released; Forbearance By Lender Not A Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co- signers.** The covenants and agreements herein contained shall bind, and the rights hereunder inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forebear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the property is located. The foregoing sentence shall not limit the applicability of federal laws to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses", and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims, or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full and all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. This notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

LOAN NO.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided by applicable law specifying, among other things; (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceedings all expenses of foreclosure, including but not limited to, reasonable attorneys' fees, and costs of documentary evidence, abstracts and title reports.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to at least one hour before the commencement of bidding at sheriff's sale or other sale pursuant to this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrowers pay all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage and in enforcing Lender's remedies as provided in paragraph 17 hereof, including but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointments of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on the receiver's bond and reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Release** Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

**21. Interest Rate After Judgement.** Borrower agrees that the interest rate payable after judgement is entered on the Note or in an action of mortgage foreclosure shall be the rate stated in the Note.

## BALLOON PAYMENT RIDER TO NOTE AND SECURITY AGREEMENT

THIS BALLOON PAYMENT RIDER ("Rider") is made on D e c e m b e r  3 ,  2 0 0 4 , and amends a note in the amount of $  5 1 . 3 0 0 . 0 0 ("the Note")made by the person(s) who sign below ("Borrower(s)") to T r i d e n t  S e c o n d  M o r t g a g e  C o m p a n y ,  I n c . ("Lender") and the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same date and given by the Borrower(s) to secure repayment of the Note.

In addition to the Agreements and Provisions made in the Note and the Security Instrument, both Borrower(s) and Lender further agree as follows:

**IF NOT PAID EARLIER, THIS LOAN IS PAYABLE IN FULL ON** J a n u a r y  1 ,  2 0 2 0 **(THE "MATURITY DATE"**

**THE FINAL PAYMENT UNDER THE NOTE IS SUBSTANTIALLY GREATER THAN THE PREVIOUS PAYMENTS. AT THE MATURITY DATE, YOU MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE LOAN AND UNPAI INTEREST THEN DUE. THIS IS CALLED A "BALLOON PAYMENT".**

**THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, B REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

At least ninety (90) but not more than than one hundred twenty (120) days prior to the Maturity Date, Lender must send Borrower(s) a notice which states the Maturity Date and the amount of the "Balloon Payment" which will be due on the Maturity Date (assuming all scheduled payments due between the date of the notice and the maturity date are made on time.)

Witness _____

Witness _____

Witness _____

Witness _____

X _____
Borrower  M I C H E L L E  C .  L A W S O N

_____
Borrower  M A R G A R E T  L A W S O N

_____
Borrower  J O S H U A  E .  L I S S

_____
Borrower

TSMC BALLOON RIDER 6/00 jue

LOAN NO.

### REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
### UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumberance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

Witness:

X _____ (Seal)
MICHELLE C. LAWSON                  -Borrower

X _____ (Seal)
MARGARET LAWSON                     -Borrower

X _____ (Seal)
JOSHUA E. LISS                      -Borrower

_____ (Seal)
                                    -Borrower

I hereby certify that the precise address of the Lender is
1409 NORTH KINGS HIGHWAY, CHERRY HILL, NJ 08034

On behalf of the Lender:

By: CHERYL GRABOWSKI                Agent of Lender

**COMMONWEALTH OF PENNSYLVANIA,** Philadelphia    **County ss:**

On this the 3rd    day of    December    , 2004  , before me, the undersigned officer, personally appeared    MICHELLE C. LAWSON, MARGARET LAWSON and JOSHUA E. LISS

known to me (or satisfactorily proven) to be the person(s)    whose name(s)    subscribed to the within instrument and acknowledged that    they    executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires:

NOTARIAL SEAL
RUTH TRAINOR, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 16, 2006

_____
Notary Public

PENNSYLVANIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT    FORM 3839 (9-94)
PAGE 6 OF

12-12020-mg    Doc 7040    Filed 05/22/14    Entered 06/03/14 16:04:42    Main Document
Claim Number 27    Pg 20 of 27

Michelle Lawson, et al.    Residential Capital, LLC Case No. 12-120020    Statement of Claims (3 pp.)

## Statement of Claims

1. Creditor is Michelle Lawson, et al., consumer and mortgagor residing at 226 East Gorgas Lane, Philadelphia, PA 19119. Creditor agreed to a single mortgage in the amount of $324,900.00 based upon a 30 year Fixed Rate Mortgage at an interest rate of 5.75%, a true and correct copy of which is attached hereto as Exhibit "A".

2. Debtor is Residential Capital, LLC, with a principal address as set forth in the claim and caption to complaint and Case No. 12-12020.

3. A promissory note (the "Note"), a true and correct copy of which is attached hereto as Exhibit "B" and is incorporated herein by reference, is secured by a secondary mortgage in the amount of $51,300.00 (the "Mortgage") dated December 3, 2004, executed by Trident Mortgage Company and its successors and assigns (also known as and doing business as the "Debtor") located at 1409 Kings Highway, Cherry Hill, NJ 08034.

4. The Mortgage and the Note should be considered voidable and rescinded upon the theory of mistake in that Creditor believed that the Note was one mortgage with a fixed rate of 5.75% and no balloon payment; whereas the Debtor was aware of the presence of the second mortgage and entered into the agreement on the basis of two mortgages, with one being the Note with a fixed interest rate of 8.8750% and a balloon payment of $40,945.67. Additionally, the Debtor knew or should have known that: (i) the Creditor would assume that it was one mortgage and one note rather than two; and (ii) the Creditor relied upon the Good Faith Estimate.

5. The Good Faith Estimate provided by Debtor did not disclose the presence of a second loan with a balloon payment as part of its terms among other provisions.

6. The Debtor did not provide a description and explanation of the nature and purpose of the Mortgage and the Note as well as specific information concerning balloon payments.

7. The Debtor did not supply Creditor with a Mortgage Servicing Disclosure Statement or a Servicing Disclosure Statement; hence, the Creditor was never notified of, made aware of or expected: (i) the possibility of multiple transfers of the Mortgage and the Note to other lenders and/or mortgage service providers; and (ii) that someone else would be servicing the Note and the Mortgage.

Michelle Lawson, et al.    Residential Capital, LLC Case No. 12-120020    Statement of Claims (3 pp.)

8. The Debtor and/or mortgage originator engaged in steering the Creditor to an unqualified loan and/or mortgage(s): (i) that had predatory characteristics including but not limited to abusive terms and excessive fees; (ii) when the consumers could obtain a "qualified loan": (iii) which had abusive or unfair lending practices that promote disparities among consumers of equal credit worthiness but of different race, ethnicity, gender or age; and (iv) mischaracterizing the consumer's credit history and/or the appraised value of the property.

9. The Creditor requested executed copies of the Mortgage and the Note from the Debtor but received unsigned copies of the Mortgage and the Note in response to the request.

10. Under this contract of adhesion, Creditor was led to believe that: (i) the down payment, good faith, and other purchase monies would be forfeited; and (ii) she would be in breach if the Mortgage and the Note were not signed. Furthermore, the Debtor should not be entitled to the benefit of this unfair bargain.

11. Furthermore, it is well settled that information in the Amortization Schedule (the "Schedule"), a true and correct copy of which is attached hereto as Exhibit "C" and is incorporated herein by reference, should match information in the GMAC Mortgage Account Statements (the "Statements"), true and correct copies of which are attached hereto as Exhibit "D" and is incorporated herein by reference; and any deviation constitutes misrepresentation and/or fraud. The principal, payment, payment number, interest and portion that are applied toward the principal as delineated on the Schedule provided by the Debtor *do not* match the interest paid year-to-date or the principal and interest amounts listed on the Statements.

12. This Mortgage and Note should be rescinded on the grounds of misrepresentation of fact and/or law with regard to the issuance of mortgage financing to purchase the property. Creditor was led to believe that she had to agree to the second mortgage or forgo financing altogether by *any* lender including Debtor. The Creditor relied upon this statement, and as a result the Creditor was fraudulently induced to contract for the Mortgage and the Note.

13. The grounds for rescission of the Mortgage and the Note include but are not limited to duress, coercion, unconscionability, failure of consideration and illegality. Because provisions in the Note, including the balloon payment and excessive interest rate, are such that the Creditor pays not only the principal and interest but also excessive fees

12-12020-mg    Doc 7040    Filed 05/22/14 on, Entered 06/03/14 16:04:42    Main Document
Claim Number 8280 27
Michelle Lawson, et al.        Residential Capital, LLC Case No. 12-120020    Statement of Claims (3 pp.)

and interest that amount to a penalty and contract that: (i) is illegal; and (ii) runs afoul of public policy.

14. Without express language to the contrary, in the case of Debtor's bankruptcy and/or insolvency, the Debtor should immediately investigate, address, and provide relief to Creditor regarding predatory, unlawful, unconscionable and other fraudulent practices with respect to: (i) the Mortgage terms and provisions; (ii) the Note terms and provisions; and (iii) the lending and creditworthiness process as applied to Creditor.

15. The agreement is silent with respect to Creditor's rights in case of Debtor's bankruptcy and/or insolvency among other things. Therefore, as part of the available remedies, the Creditor has a right to renegotiate the terms of the agreement, including but not limited to the interest rate, the "balloon payment," and the principal and monthly payments.

_____

Michelle Lawson, et al.
Creditor/Mortgagor

APP NO.  LAWSON10049PB

# SECONDARY MORTGAGE NOTE
### This Agreement is subject to the provisions of the Secondary Mortgage Loan Act.

December 3, 2004                    Devon                    Pennsylvania
[Date]                              [City]                   [State]

226 EAST GORGAS LANE, PHILADELPHIA PA 19119        *COPY*
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $   51,300.00   (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is   TRIDENT SECOND MORTGAGE COMPANY

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder".

## 2. INTEREST
I will pay interest at a yearly rate of   8.8750 %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

## 3. PAYMENTS
I will pay principal and interest by making payments every month of U.S. $   408.17
I will make my monthly payments on the   1st   day of each month beginning on   February 1, 2005  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. If, on   January 1, 2020  I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at   1409 NORTH KINGS HIGHWAY, CHERRY HILL, NJ 08034   or at a different place if required by the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED
(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any of my monthly payments by the end of   15   calender days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.00 %  of my overdue payment. I will pay this late charge only once on any late payment.

(B) Default
If I do not pay the full amount of each monthly payment by the date stated in Section 3 above, I will be in default.
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described below, the Note Holder will still have the right to do so if I am in default at a later time.
(C) Notice from Note Holder
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or, if it is not mailed, 30 days after the date on which it is delivered to me.
(D) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 5. THIS NOTE SECURED BY A MORTGAGE
In addition to the protections given to the Note Holder under this Note, a Mortgage, dated   December 3, 2004  protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That mortgage describes how and under what conditions I may be required to make immediate payments in full of all amounts that I owe under this Note.

## 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE
I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment". A prepayment of only part of the unpaid principal is known as a "partial prepayment".
I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

PENNSYLVANIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT                FORM 3939
PAGE 1 OF 2

LOAN NO.

**7. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer if to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**8. GIVING OF NOTICES**

Any notice that must be given to me under this Note, will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address. Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

**9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE.**

If more than one person signs this note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note ( as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

**NOTICE TO BORROWER:**

Read this promissory note before you sign.
Do not sign this promissory note if it contains blank spaces.
This promissory note is secured by a secondary mortgage on your real property.

| | |
|---|---|
| _____ | _____ (Seal) |
| -Witness | MICHELLE C. LAWSON            -Borrower |
| _____ | _____ (Seal) |
| -Witness | MARGARET LAWSON              -Borrower |
| _____ | _____ (Seal) |
| -Witness | JOSHUA E. LISS               -Borrower |
| _____ | _____ (Seal) |
| -Witness | -Borrower |

WITHOUT RECOURSE
PAY TO THE ORDER OF:


TRIDENT SECOND MORTGAGE COMPANY


_____

GERARD F. GRIESSER, PRESIDENT

In re RESIDENTIAL CAPITAL, LLC, et al (GA& MO 12-12020 MG) (JOINTLY ADMINISTERED)

SIXTY-SECOND OMNIBUS OBJECTION - NO LIABILITY BORROWERS CLAIMS

Claims to be Disallowed and Expunged

| Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page in Omnibus Objection |
|---|---|---|---|---|---|---|---|---|
| 16. Leo Vigillos Solano, 5297 Park Way, Chula Vista, CA 91910 | 4726 | 11/14/2012 | Administrative Secured; Secured; Priority; UNLIQUIDATED General Unsecured | GMAC Mortgage, LLC | 12-12032 | Origination Issues, Wrongful Foreclosure, Standing Issues, Loan Modification | Debtors' involvement with Claimant's loan was limited to Debtor's role as servicer. Debtor GMAC Mortgage, LLC serviced the loan from September 19, 2006 until servicing transferred to GreenTree Loan Servicing, LLC on February 16, 2011. Debtors have no liability for Claimant's origination based claims because Debtor entity was involved in the origination of this loan. The loan was originated by SB&C Mortgage on June 3, 2006. In addition, Debtor has confirmed that there is no assignee liability that would extend to Debtor on these claims under California Business & Professions § 17200. A claim under this statute has three prongs: unlawfulness, unfairness, and fraud. In order for a claim under § 17200 cannot be predicated on vicarious liability. A defendant's liability must be based on his personal participation in the unlawful, unfair or fraudulent practices. The Claimant has not provided any specific evidence to substantiate a general allegation of fraud and unlawful practices. | 9, 10-11, 11-12, 13-14 |
| 17. Michelle Lawson, et al, 226 East Gorgas Lane, Philadelphia, PA 19119 | 5282 | 11/16/2012 | Administrative Priority; Secured; Priority; $140,747.38 General Unsecured | GMAC Mortgage, LLC | 12-12032 | Origination Issues | Debtors' involvement with Claimant's second loan was limited to its role as servicer and purchaser of the loan. Debtor GMAC Mortgage, LLC purchased the loan from Federal Second Mortgage Company on or about February 21, 2007. Debtor transferred its interest when the loan was securitized on or about March 30, 2007, where Citibank, NA was appointed as Trustee. Debtor GMAC Mortgage, LLC serviced the loan from March 11, 2007 until servicing transferred to GreenTree Loan Servicing, LLC on February 16, 2011. Debtors have no liability for Claimant's origination based claims because no Debtor entity was involved in the origination of this loan. Claimant asserts she has no knowledge of the second lien loan that was taken out at the same time as the first lien loan. Debtors have no connection to the first lien loan. Debtor entitled the evidence of a first mortgage in amount of $371,000.00 and a second mortgage in the amount of $51,300.00, both of which were originated by Federal Mortgage Company on 1/19/07. Claimant requested executed copies of the Mortgage and the Note from the Debtor on 2/8/10, which Debtor provided to Claimant on 2/12/10. Claimant has made monthly payments on time, and without late charge application. Affidavit of Borrower's Certification signed by Claimants on 3/09/06 show that Claimant acknowledged receipt of the Truth-In-Lending Good Faith Estimate – all providing information about the second loan. In addition, Claimants included a copy of the second lien Note with the claim | 9 |

Page 9 of 15

**Exhibit B**

10/21/2004   01:55   TRIDENT BLUEBELL →   NO. 225   P02

Michelle Lawson, et al.
Claim Number 5282


**Trident Mortgage Company**

October 19, 2004

Mr. Rob Lamb
Prudential Fox and Roach Realtors
14 W. Evergreen Avenue
Philadelphia, PA 19118

RE: Ms. Michelle C. Lawson
    Ms. Margaret Lawson
    Mr. Joshua E. Liss

Dear Mr. Lamb:

This letter is to certify that I have pre-approved Ms. Michelle Lawson, Ms. Margaret Lawson and Mr. Joshua Liss for a mortgage amount of $324,900.00 and a sale price of $342,000.00. This is based on a 30 Year Fixed Rate Mortgage at a current interest rate of 5.75% with 0 points.

This statement is based on income and debt information obtained by Trident Mortgage Company. Final commitment is subject to a written application, an acceptable agreement of sale and an acceptable appraisal of the property to be acquired. Trident Mortgage Company has verified acceptable credit histories on all borrowers.

Should you have any questions or require additional information please do not hesitate to contact me at 215-619-0541.

Sincerely,

Robin L. Bowman
Mortgage Consultant

/rlb