**Hearing Date:  June 10, 2014 at 10:00 a.m. (ET)**
**Objection Deadline:  June 3, 2014 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
James A. Newton

*Counsel for the ResCap*
*Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------
|   )
In re:   |   )   Case No. 12-12020 (MG)
   |   )
RESIDENTIAL CAPITAL, LLC, et al.,   |   )   Chapter 11
   |   )
Debtors.   |   )   Jointly Administered
   |   )
---------------------------------------------------------------

# RESCAP LIQUIDATING TRUST'S OBJECTION TO CLIFF LANTZ'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO § 362 AND § 1301 [DOCKET NO. 6817]

ny-1145174

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

      I.      General Chapter 11 Case Background .................................................................. 2

      II.     The Note and Trust Deed ....................................................................................... 3

      III.    The Utah Action ..................................................................................................... 3

      IV.    The Liquidating Trust's Expectations Should the Utah Action Proceed ............... 5

OBJECTION .................................................................................................................................. 6

      I.      Applicable Authority ............................................................................................. 6

      II.     Movant has Failed to Provide Any Basis for Entitling Him to Relief From
            the Automatic Stay ................................................................................................. 7

      III.    Analysis of the Relevant Sonnax Factors ............................................................. 8

      IV.    None of the Other Sonnax Factors Weighs in Favor of Lifting the Stay ............. 12

CONCLUSION ............................................................................................................................ 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

American Towers Owners Association, Inc. v. CCI Mech., Inc.,
   930 P.2d 1182, 1189 (Sup. Ct. Utah 1996) *abrogated on other grounds by*
   Davencourt at Pilgrims Landing Homeowners Association v. Davencourt at Pilgrims
   Landing, LC, 221 P.3d 234, 242 (Sup. Ct. Utah 2009) ............................................................9

Capital Communications Federal Credit Union v. Boodrow (In re Boodrow),
   126 F.3d 43 (2d Cir. 1997) ...................................................................................................7, 8

In re Leibowitz,
   147 B.R. 341 (Bankr. S.D.N.Y. 1992) ......................................................................................7

In re Residential Capital, LLC,
   501 B.R. 624 (Bankr. S.D.N.Y. 2013) ................................................................................6, 11

Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.),
   Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 8, 2010) ...............................7

Mazzeo v. Lenhart (In re Mazzeo),
   167 F.3d 139 (2d Cir. 1999) ......................................................................................................7

Midlantic National Bank v. New Jersey Department of Environmental Protection,
   474 U.S. 494 (1986) ..................................................................................................................6

Publicker Industries Inc. v. United States (In re Cuyahoga Equipment Corp.),
   980 F.2d 110 (2d Cir. 1992) ................................................................................................6, 11

SME Industries, Inc. v. Thompson, Ventulett, Stainback & Associates, Inc.,
   28 P.3d 669, 680 (Sup. Ct. Utah 2001) .....................................................................................9

Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.),
   907 F.2d 1280 (2d Cir. 1990) ........................................................................................... passim

**STATUTES**

11 U.S.C. §362(d)(1) ..................................................................................................................6, 7

The ResCap Liquidating Trust (the "**Liquidating Trust**"), as successor in interest to Residential Capital, LLC ("**ResCap**") and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), including Homecomings Financial, LLC ("**Homecomings**"), with respect to certain matters as set forth in the Plan (as defined below), hereby submits this objection (the "**Objection**") to the *Motion for Relief from the Automatic Stay Pursuant to § 362 and § 1301* [Docket No. 6817] (the "**Motion**") filed by Cliff Lantz (the "**Movant**").  In support of the Objection, the Liquidating Trust submits the Declaration of Lauren Graham Delehey, dated June 3, 2014 (the "**Delehey Decl.**"), attached hereto as Exhibit 1, and respectfully represents:

## PRELIMINARY STATEMENT

1.  More than three years ago, Movant obtained summary judgment against Homecomings on a state court breach of contract claim.  Now, without explanation for the delay, Movant belatedly contends that he should be permitted to return to state court to liquidate his proof of claim.  The Motion is a misguided attempt to pursue liquidation of Movant's proof of claim in state court simply because he desires an adjudication in that court ahead of the adjudication of other claims in these chapter 11 cases.  In addition, the Motion seeks relief from the automatic stay to improperly convert a seven-year-old request for monetary damages into an equitable request to nullify a Trust Deed held by a non-party to the state court action and to pursue that request in state court.  For the reasons stated herein, the Motion should be denied on a number of grounds.

2.  Aside from Movant's failure to provide any legal or factual support for his request for relief from the automatic stay, bankruptcy policy strongly favors the efficient and centralized administration and resolution of claims in bankruptcy cases.  Movant recognizes that the only issue remaining with respect to his state court breach of contract claim is the appropriate

1

quantum of damages, an issue as to which the state court has not heard any evidence. Movant, however, ignores that two of Movant's other causes of action remain pending in state court and would require substantial time and cost to take through the summary judgment stage, potential mediation, and a potential trial. This Court is in a better position than the state court to facilitate an expeditious and cost-effective resolution of Movant's claim, especially since, as described below, the quantum of any damages, if any, will likely be relatively small in comparison to the costs of proceeding to trial. Having filed a proof of claim and submitted himself to the equitable jurisdiction of this Court, the Movant should not now be permitted to obtain relief from the automatic stay by simply asserting that he may choose to seek a post-judgment conversion of his claims for monetary damages to a claim for an equitable remedy.

## BACKGROUND

I.  **General Chapter 11 Case Background**

3.  On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

4.  On December 11, 2013, the Court entered its *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* approving the terms of the chapter 11 plan (as amended, the "**Plan**") filed in these chapter 11 cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred [see Docket No. 6137], and, among other things, the Liquidating Trust and the ResCap Borrower Claims Trust (the "**Borrower Trust**" and, together with the Liquidating Trust, the "**Plan Trusts**") were established.

ny-1145174

## II. The Note and Trust Deed

5. On or about September 13, 2000, Movant obtained a home loan from Old Kent Mortgage Company pursuant to an Adjustable Rate Note (the "**Note**"). See *Memorandum Decision* at 2, No. 060916737 (Dist. Ct. Utah Jan 7, 2011) (the "**Utah Decision**").[1] Movant's obligations under the Note were secured by an associated Trust Deed (the "**Trust Deed**"). Id.

6. At various points since the origination of the home loan, the Note and Trust Deed were serviced by Homecomings on behalf of Bank One, NA, as Trustee and Residential Funding Company ("**RFC**") (after the loan was removed from a securitization trust). See Delehey Decl. ¶4.[2] Servicing of the Note and Trust Deed were transferred to Ocwen Loan Servicing as part of the Debtors' sale of their mortgage servicing platform. Delehey Decl. ¶7.[3] In addition, RFC's interests in the Note and Deed of Trust were transferred in connection with the Berkshire Hathaway asset sale. Id.[4] As a result of the closing of the two asset sales effectuated by the Debtors in these chapter 11 cases in 2013, the Debtors (and the Liquidating Trust, as successor in interest to Homecomings and RFC) no longer have an interest in the Note or Trust Deed. See Id.

## III. The Utah Action

7. In 2001, as a result of Movant's payment default, Homecomings issued and recorded a Notice of Default. See Utah Decision at 2. Thereafter, a Notice of Trustee's Sale was issued and a foreclosure sale scheduled for July 10, 2002. Id.

---

[1] A copy of the Utah Decision is attached as Exhibit 1-A to the Delehey Declaration.
[2] The Trust Deed was also assigned to Homecomings for a period of time, but the assignment was subsequently corrected to indicate RFC as the correct beneficiary under the Trust Deed.
[3] See *Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing, LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Thereto; (D) Related Agreements; and (II) Granting Related Relief* [Docket No. 2246].
[4] See *Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Berkshire Hathaway, Inc.; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; and (C) Related Agreements; and (II) Granting Related Relief* [Docket No. 2247].

3

ny-1145174

8. On July 9, 2002, Movant filed a petition for chapter 13 relief in the United States Bankruptcy Court for the District of Utah. See id.

9. Through his chapter 13 plan, Movant cured his prepetition arrearages. See id. at 2-3. However, Movant once again became delinquent on his payments under the Note, and on September 15, 2006, Homecomings issued a second Notice of Trustee's Sale (the "**Second Sale Notice**"). Id. at 2.

10. On October 17, 2006, Movant filed a lawsuit in Utah state court (the "**Utah Action**") asserting causes of action for (i) breach of contract, (ii) breach of covenant of good faith and fair dealing, (iii) negligent infliction of emotional distress, and (iv) an injunction against Homecomings' proceeding with the trustee's sale scheduled pursuant to the Second Sale Notice. See Motion at ¶ 4. Movant thereafter sought summary judgment with respect to his breach of contract and injunction claims.

11. In accordance with its decision entered on January 7, 2011, the Utah court granted Movant's motion for summary judgment on his breach of contract and injunction causes of action. The Utah court reasoned that Movant's cure of his prepetition arrearages pursuant to his chapter 13 bankruptcy plan necessitated that Homecomings start the foreclosure process anew upon the occurrence of the subsequent default, including by issuing a new Notice of Default. See Utah Decision at 3-4. According to the Utah court, Homecomings' failure to issue a new Notice of Default prior to issuing the Second Sale Notice represented a breach of contract under the Note and Trust Deed. Id. Consequently, the Utah court enjoined Homecomings from proceeding with the foreclosure sale scheduled pursuant to the Second Sale Notice, and required Homecomings to issue a new Notice of Default and Notice of Trustee's Sale before completing a foreclosure of Movant's property. See id. The Utah court also ruled in favor of Movant on his

breach of contract cause of action. See Utah Decision at 4. For these reasons, the Utah court did not, however, make a determination regarding the amount of Movant's damages, if any. Instead, this issue was to be addressed at an unidentified future point in time.

12. Since the Utah court's decision on Movant's summary judgment motion, no determination has been made regarding the appropriate quantum of damages on Movant's breach of contract cause of action and the Utah court has not heard motion practice on or held a trial regarding the remaining two causes of action in Movant's complaint. See Delehey Decl. ¶9. As of the Petition Date, the Utah court had not set any deadline for discovery and had not set any hearings on the remaining issues in the Utah Action. See id. at 10.

13. Neither Homecomings, nor, as far as the Liquidating Trust is aware, any successor in interest to Homecomings has commenced a subsequent foreclosure with respect to Movant's property. See id. at 8.

**IV. The Liquidating Trust's Expectations Should the Utah Action Proceed**

14. The Liquidating Trust expects that it (and the Borrower Trust) will incur substantial expenses in the event that the automatic stay is lifted and the Utah Action proceeds with respect to the remaining issues. Issues related to the damages on the Movant's breach of contract cause of action and the merits of the two other counts in Movant's complaint have not been addressed in any material way. Based on discussions with Utah counsel, it is the Liquidating Trust's belief that in addition to any internal resources expended, pursuing additional discovery, participating in mediation (if necessary) and filing and resolve any appropriate dispositive motion practice could require at least fifty hours of attorney time. See id. at 11. Any attorney costs associated with trial preparation and a trial would be additive to the costs described above. See id.

**OBJECTION**

**I.     Applicable Authority**

15.    The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws." Midlantic Nat'l Bank v. N. J. Dep't of Envtl. Prot., 474 U.S. 494, 503 (1986) (citation and internal quotation marks omitted). The automatic stay also furthers the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court." Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 117 (2d Cir. 1992); In re Residential Capital, LLC, 501 B.R. 624, 644 (Bankr. S.D.N.Y. 2013).

16.    Section 362(d)(1) of the Bankruptcy Code provides that a court may grant relief from the automatic stay for "cause." See 11 U.S.C. § 362(d)(1). In the context of stayed prepetition litigation, the Second Circuit has outlined the following 12-factor test (each a "**Sonnax** Factor") to determine whether good cause exists to lift the stay to allow the litigation to proceed:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending [the action]; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) the impact of the stay on the parties and the balance of harms.

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir. 1990); see also Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999). In a given case, however, not all of the factors will be relevant, and the court may disregard irrelevant factors. See Mazzeo, 167 F.3d at 143.

17. The moving party bears the initial burden to demonstrate, using the relevant Sonnax factors, that good cause exists for lifting the stay.[5] The movant's burden is especially heavy if it is an unsecured creditor. "The general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief."[6]

## II. Movant has Failed to Provide Any Basis for Entitling Him to Relief From the Automatic Stay

18. Not only has Movant failed to identify the Sonnax factors in his Motion or attempt to demonstrate that "cause" exists under those factors; Movant has failed to provide *any* justification for granting relief from the stay. Instead, the Movant simply states, without any extraordinary justification, that he "now desires to lift the automatic stay to proceed to trial on his claims for damages." Motion at ¶ 7. However, as discussed herein, the Movant provides no basis upon which the Court may conclude that "cause" exists for the relief requested.

19. Apparently concluding that money damages (i.e., sharing equitably with other borrowers in the Borrower Trust's assets) no longer provides an ideal remedy, Movant also seeks relief from the automatic stay to pursue an alleged "equitable remedy." Movant's attempt to suddenly pursue an equitable remedy in connection with his breach of contract claim against

---

[5] See Sonnax, 907 F.2d at 1285; Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause." (quotation omitted)).

[6] In re Leibowitz, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); see also Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.), Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018, at *4 (S.D.N.Y. Nov. 8, 2010).

7

ny-1145174

Homecomings over seven years after initiating the Utah Action (which did not originally, and still does not purport to seek such a remedy) and more than three years after the Utah court's decision sustaining Movant's summary judgment, similarly fails to provide a basis for relief from the automatic stay.  In addition, Movant provides no legal or factual basis that would warrant providing him with such a remedy.  As described above, the Debtors' interests in the Note and Trust Deed were transferred to third parties over one year ago, and seeking equitable relief against a non-debtor does not require relief from the automatic stay in these chapter 11 cases.[7]  Movant's unsupported request (based on his self-serving revelations seven years after the commencement of the Utah Action) to seek an equitable remedy on the basis of a prior damages request cannot provide a basis for relief from the automatic stay, especially since such equitable relief cannot properly be asserted against the Debtors or Plan Trusts.

20.    Therefore, the Court should deny the Motion based solely on Movant's failure to provide any legal or factual bases upon which relief from the stay may be granted, as demonstrated above.  See In re Boodrow, 126 F.3d at 48 ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause." (quotation omitted)).

### III.    Analysis of the Relevant Sonnax Factors

21.    Relief from the automatic stay to permit the liquidation of Movant's damages through the Utah Action could result in the complete resolution of the issues (Sonnax Factor 1); however, this issue could just as easily (and likely much more economically) be resolved consensually or through the claims resolution process before this Court.  On balance, as

---

[7] Moreover, to the extent that Movant's equitable relief would mitigate any damages he asserts against the Debtors, a determination regarding Movant's damages may not be appropriate until after any claim for equitable relief is decided.

discussed herein, the relevant Sonnax factors weigh in favor of resolving Movant's damages claim before this Court and denying the Movant's request for stay relief.[8]

22.    The Utah court is not in any better position than this Court to render a determination regarding the appropriate quantum of damages in connection with Movant's breach of contract claim.  The Utah court rendered its summary judgment decision without a trial and without considering evidence regarding the quantum of Movant's damages.  See Delehey Decl. ¶9.  Now, having determined liability, the parties would be required to potentially engage in additional costly discovery and trial preparation, mediation, and then participate in a trial (which has not been scheduled) before the Utah court on the issue of damages.  See id. at 10.

23.    Moreover, the parties have barely begun the process of litigating the other two causes of action in Movant's complaint.  While the Liquidating Trust questions the added benefit to Movant of pursuing these claims, especially in light of Utah's economic loss doctrine – which provides that, where the parties' relationship is governed by contract, "economic damages are not recoverable in negligence absent physical property damage or bodily injury"[9] – liquidation of these claims could require the parties to engage in fulsome discovery, as well as expensive and time-intensive motion practice and trial.  Essentially, the parties could be required to start anew with a lawsuit regarding these remaining counts.

24.    The Liquidating Trust expects that should the Utah Action proceed, completing discovery on the remaining issues could take a minimum of four months, with additional time required for potential mediation, and dispositive motions followed by a trial (each as necessary).

---

[8] As described above, Movant provides no legal basis to justify his newly-found desire to pursue an equitable remedy except that, presumably, he does not like the fact that he will receive less than full payment on any allowed claim.  Accordingly, the Liquidating Trust will address herein the issue that is really before the Court – should Movant's damages claims be liquidated in this Court or in the Utah court.

[9] SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc., 28 P.3d 669, 680 (Sup. Ct. Utah 2001) quoting Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc., 930 P.2d 1182, 1189 (Sup. Ct. Utah 1996) *abrogated on other grounds by* Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC, 221 P.3d 234, 242 (Sup. Ct. Utah 2009)

Delehey Decl. ¶11. Moreover, based on discussions with Utah counsel, the Liquidating Trust understands that proceeding with the Utah Action could require up to fifty hours of attorney time or more. Id.

25.  In this Court, on the other hand, the Plan Trusts have had the benefit of being able to resolve extraordinarily complex claims in as little as five or six months, and without the need for expensive formal discovery and extended trials.[10] Over the past eighteen months, the Debtors and Plan Trusts have been working tirelessly to expeditiously resolve all proofs of claim filed against the Debtors' chapter 11 estates. In just over twelve months since this Court approved claims resolution procedures [see Docket No. 3294], the Plan Trusts estimate that they (and the Debtors) have collectively resolved (or addressed) in excess of 5,100 of over 7,400 filed proofs of claim. See Delehey Decl. ¶13. In many instances, the Debtors or Plan Trusts have been able to resolve claims consensually. Id. In other cases where consensual resolution was not possible, the claims resolution process has provided a forum for the expeditious exchange of informal discovery and an expeditious resolution of the disputes between the parties. Id.

26.  Given the Plan Trusts' fixed resources, resolution of claims before this Court is the most cost-effective manner for quantifying the Movant's claim and in the interest of all of the Plan Trusts' stakeholders. For instance, in connection with resolution of other borrower claims, the Court has permitted the parties to submit position statements to facilitate the Court's determination of the Debtors' liability for the underlying claims and to fix any such liability.[11] These procedures fostered productive discussions between the parties that, in certain cases,

---

[10] See, e.g., *Motion of Citibank, N.A. for an Order (I) Determining that it is Entitled to Post-Petition Interest on its Oversecured MSR Facility Claims at the Contractual Default, and (II) Directing Debtors to Pay Such Interest as well as Citibank's Due and Unpaid Counsel Fees and Expenses* [Docket No. 6174], filed on December 23, 2013, and *Memorandum Opinion and Order Granting Citibank's Motion for Default Interest and Counsel Fees and Expenses* [Docket No. 6811], entered on April 22, 2014.

[11] See *Order Establishing Procedures for the Adjudication of the Claims of William and Keiran Walker, Freddie Scott, Ron Bejaraon, and Paul and Marge Pfunder in Connection with the Debtors' Twenty-Second, Twenty-Seventh, and Thirteenth Omnibus Objections to Claims* [Docket No. 5390].

produced a consensual resolution. See Delehey Decl. ¶13. In short, proceeding before this Court affords flexibility to utilize efficient and cost-effective mechanisms for resolution of Movant's claim if no consensual resolution can be reached.

27.    Additionally, resolution of the Movant's claim in this Court will further the important bankruptcy goal of an efficient and centralized administration of claims (see In re Cuyahoga Equip. Corp., 980 F.2d at 117; In re Residential Capital, LLC, 501 B.R. at 644).

28.    In this situation, the potential costs of litigating the Movant's claim in Utah court create a particularly compelling case for a streamlined resolution process before this Court. In contrast to the potential costs to the Liquidating Trust of proceeding in the Utah Action through a potential trial, Movant's damages, if any, would appear to the Liquidating Trust to be relatively minimal. Movant obtained summary judgment on a breach of contract claim relating solely to Homecomings' failure to provide a contractual notice. Additionally, the Liquidating Trust is not aware of any renewed effort to foreclose on Movant's property. Accordingly, absent some other demonstration by Movant, his damages, if any, would appear to be limited to the costs of defending against and enjoining the 2006 foreclosure sale.

29.    Moreover, the liquidation of the Movant's claim in the Utah court (and the associated costs described above) will have a direct effect on the Plan Trusts and the assets remaining for the Debtors' other creditors. Movant's causes of action are directly against Homecomings, and any resulting claim will be against the Borrower Trust, especially since no insurer has assumed responsibility for defending the Utah Action. Delehey Decl. ¶12. Thus, Sonnax Factors 2 (connection with the bankruptcy case), 5 (whether the debtor's defense has been assumed by an insurer) and 6 (whether the action involves primarily third parties) all weigh in favor of resolving Movant's claim in this Court, where the claim can be resolved in an

11

efficient and cost-effective manner if a consensual resolution cannot be reached between the parties.  Moreover, for the same reasons, Sonnax Factors 7 (prejudice to creditors from litigation in another forum), 10 (interests of judicial economy) and 11 (whether the parties are ready for trial) weigh heavily against lifting the automatic stay.

**IV.     None of the Other Sonnax Factors Weighs in Favor of Lifting the Stay**

30.     None of the other Sonnax factors weigh in favor of lifting the stay and accordingly, the Court should deny the Motion and require the liquidation of Movant's claim through the claims resolution process being overseen by the Court.  First, the Utah Action does not involve Homecomings as a fiduciary (Sonnax Factor 3) and no specialized tribunal is required to resolve the ordinary state law causes of action raised in Movant's complaint (Sonnax Factor 4).

31.     Additionally, Sonnax Factor 12 does not weigh in favor of lifting the automatic stay.  Movant will experience little, if any, harm from not having his breach of contract claim liquidated in the Utah Action at this juncture.  Despite Movant's continuing default under the Note and Trust Deed, to date, Homecomings and, as far as the Liquidating Trust is aware, Homecomings' successor(s) in interest, have not initiated a new foreclosure proceeding.  See Delehey Decl. ¶8.  Moreover, Movant waited nearly three years after the Utah court's decision on his motion for summary judgment and nearly two years after the Petition Date to seek relief from the automatic stay.  It is difficult to understand how the liquidation of Movant's claim suddenly presents a harm that must be addressed by liquidating his claim in the Utah court.  Movant's failure to assert any harm consistent with his delay both before and after the Petition Date and, in any event, liquidation of Movant's claim in the Utah court will, in all likelihood, take longer than liquidating his filed claim in this Court.  Finally, liquidation of Movant's claim in Utah may not enable him to obtain a distribution on his claim any more quickly, since Movant

12

will be required to wait for distributions by the Borrower Trust just like all other similarly-situated creditors.

## CONCLUSION

32.     Based on the weight of settled authority and its application to the Motion as described above, the Liquidating Trust respectfully submits that the Movant has failed to meet his burden of demonstrating his entitlement to relief from the automatic stay.  Moreover, virtually none of the applicable Sonnax factors weigh in favor of maintaining the automatic stay; to the contrary, the Plan Trusts' and Bankruptcy Code's goals of expeditious and cost-effective resolution of claim demonstrate that relief from the automatic stay is not appropriate.  As such, the Court should deny the Motion.

WHEREFORE, for the foregoing reasons, the Liquidating Trust requests that the Court enter an Order denying the Motion and granting such other relief as the Court deems proper.

New York, New York                          /s/ Norman S. Rosenbaum
Dated: June 3, 2014                         Norman S. Rosenbaum
                                            Jordan A. Wishnew
                                            James A. Newton
                                            MORRISON & FOERSTER LLP
                                            250 West 55th Street
                                            New York, New York 10019
                                            Telephone: (212) 468-8000
                                            Facsimile: (212) 468-7900

                                            *Counsel for the ResCap*
                                            *Liquidating Trust*

ny-1145174