# **Exhibit 1**

**Delehey Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------
                                          )
In re:                                    )     Case No. 12-12020 (MG)
                                          )
RESIDENTIAL CAPITAL, LLC, et al.,         )     Chapter 11
                                          )
                    Debtors.              )     Jointly Administered
                                          )
---------------------------------------------------------------------------

**DECLARATION OF LAUREN GRAHAM
DELEHEY, CHIEF LITIGATION COUNSEL FOR THE RESCAP
LIQUIDATING TRUST, IN SUPPORT OF RESCAP LIQUIDATING
TRUST'S OBJECTION TO CLIFF LANTZ'S MOTION FOR RELIEF FROM
THE AUTOMATIC STAY PURSUANT TO § 362 AND § 1301 [DOCKET NO. 6817]**

I, Lauren Graham Delehey, declare as follows:

**I.    Background and Qualifications**

1.    I serve as Chief Litigation Counsel for the ResCap Liquidating Trust (the "**Liquidating Trust**") established pursuant to the terms of the Plan[1] in the above-captioned chapter 11 cases. During the chapter 11 cases, I served as Chief Litigation Counsel in the legal department at Residential Capital, LLC ("**ResCap**"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**"). I joined ResCap on August 1, 2011 as in-house litigation counsel.

2.    In my role as Chief Litigation Counsel at ResCap, I was responsible for the management of litigation, including, among others, residential mortgage-related litigation. I am generally familiar with the Debtors' litigation matters, including the Utah Action. In connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the chapter 11 cases, including the borrower litigation

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection (as defined below).

1

ny-1145184

matters pending before this Court. In my current position as Chief Litigation Counsel to the Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust and the Borrower Trust in connection with the claims reconciliation process.[2] I am authorized to submit this declaration (the "**Declaration**") in support of the *ResCap Liquidating Trust's Objection to Cliff Lantz's Motion for Relief from the Automatic Stay Pursuant to § 362 and § 1301 [Docket No. 6817]* (the "**Objection**").

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents (including litigation files) and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust's and the Borrower Trust's professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in this Declaration on that basis.

## II.     The History of the Note and Trust Deed

4. On or about September 13, 2000, Movant obtained a home loan from Old Kent Mortgage Company pursuant to an Adjustable Rate Note (the "**Note**"). Movant's obligations under the Note were secured by an associated Trust Deed (the "**Trust Deed**"). At various times after the origination of the loan, Homecomings serviced the Note and Trust Deed on behalf of Bank One, NA, as Trustee and Residential Funding Company ("**RFC**").

5. After an initial default under the Note and Trust Deed in 2001 and issuance of a Notice of Default and Notice of Trustee's Sale, Movant sought chapter 13 bankruptcy relief in

---

[2] The Liquidating Trust and the Borrower Trust are parties to an Access and Cooperation Agreement, dated December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

2

ny-1145184

2002. Despite paying prepetition arrearages under his chapter 13 plan, Movant had once again defaulted under the Note and Trust Deed by September of 2006.

6. Thereafter, a new Notice of Trustee sale was issued, leading to Movant's initiation of the Utah Action, described further below.

7. Servicing of the Note and Trust Deed were transferred to Ocwen Loan Servicing as part of the Debtors' sale of their mortgage servicing platform. In addition, RFC's interests in the Note and Deed of Trust were transferred in connection with the Berkshire Hathaway asset sale. As a result, I am unaware of any interest that any of the Debtors had in the Note or Trust Deed after the closing of the two sales of the Debtors' assets during the chapter 11 cases.

8. As far as I am aware, neither Homecomings, nor any successor in interest to Homecomings, has commenced a foreclosure with respect to Movant's property subsequent to the initiation of the Utah Action.

### III.    Status of the Utah Action

9. Movant commenced the Utah Action on or about October 17, 2006. The Utah court issued a decision on two causes of action in connection with Movant's summary judgment motion.[3] This decision was issued without a trial and without evidence regarding the quantum of Movant's damages. Since the Utah court's decision on Movant's summary judgment motion, no determination has been made regarding the appropriate quantum of damages on Movant's breach of contract cause of action and the Court has not heard motion practice on or held a trial regarding the remaining two causes of action in Movant's complaint.

10. As of the Petition Date, the Utah court also had not set any deadline for the completion of discovery and had not set any hearings on the remaining issues in the Utah Action.

---

[3] A true and correct copy of the Utah court's decision is attached hereto as Exhibit 1-A.

3

ny-1145184

11. In order to liquidate damages and resolve Movant's other two causes of action in the Utah Action, the parties would likely be required to engage in additional discovery (which, I understand may take four months, at a minimum) and, if necessary, trial preparation and a trial before the Utah court. I understand that in addition to any internal resources expended, pursing additional discovery, participating in mediation (if necessary) and filing and resolving any appropriate dispositive motion practice could require at least fifty hours of attorney time. However, any attorney costs associated with trial preparation and any necessary trial would be in addition to the costs described above.

IV. **Impact of the Costs of Defending the Utah Action and Paying Any Claim Relating Thereto**

12. In the vast majority of cases, including the Utah Action, the Debtors, and now the Plan Trusts, pay their legal defense fees out-of-pocket. Here, Movant's breach of contract cause of action is also asserted directly against Homecomings and any resulting monetary claim accruing prepetition will be against the Borrower Trust. Moreover, I am not aware of any insurance coverage that would cover any damages award in favor of Movant in connection with the causes of action asserted in the Utah Action, and no insurer has taken over the defense of the Utah Action.

V. **Efficient Resolution of Claims in the Bankruptcy Case**

13. In just over twelve months since this Court approved claims resolution procedures, the Plan Trusts estimate that they (and the Debtors) have collectively resolved (or addressed) in excess of 5,100 of over 7,400 filed proofs of claim. In many instances, the Debtors or Plan Trusts have been able to resolve claims consensually. For instance, in certain cases, the Court has implemented procedures permitting the parties to submit position statements to facilitate the Court's determination of the Debtors' liability for the underlying claims and to fix

any such liability. These procedures fostered productive discussions between the parties that, in certain cases, produced a consensual resolution. In other cases where consensual resolution was not possible, the claims resolution process has provided a forum for the expeditious exchange of informal discovery and an expeditious resolution of the disputes between the parties.

      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 3, 2014

                                         /s/ Lauren Graham Delehey
                                         Lauren Graham Delehey
                                         In-House Litigation Counsel for
                                         The ResCap Liquidating Trust

**<u>Exhibit 1-A</u>**

**Utah Decision**

ny-1145184

FILED DISTRICT COURT
Third Judicial District

JAN - 7 2011

SALT LAKE COUNTY
By_____ Deputy Clerk

IN THE DISTRICT COURT OF THE THIRD JUDICIAL DISTRICT

IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

---

| | |
|---|---|
| CLIFFORD F. LANTZ, | MEMORANDUM DECISION |
| Plaintiff, | CASE NO. 060916737 |
| vs. | |
| HOMECOMINGS FINANCIAL, | |
| Defendant. | |

---

This matter came before the Court for hearing on November 19, 2010, in connection with the plaintiff's Motion for Partial Summary Judgment. At the conclusion of the hearing, the Court took the matter under advisement to further consider the parties' written submissions, the relevant legal authorities and counsel's oral argument. Being now fully informed, the Court rules as stated herein.

### LEGAL ANALYSIS

At the outset, the Court notes that the plaintiff's Motion for Partial Summary Judgment seeks Summary Judgment as to the plaintiff's First Cause of Action for breach of contract and his Fourth Cause of Action for injunction against sale. The latter cause of action seeks to enjoin the defendant from selling the plaintiff's personal residence pursuant to a Notice of Trustee's Sale, dated September 15, 2006, which the plaintiff maintains has been wrongfully issued.

LANTZ V. HOMECOMINGS FINANCIAL    PAGE 2              MEMORANDUM DECISION

This case stems from an Adjustable Rate Note and accompanying Trust Deed securing the Note which the plaintiff executed on September 13, 2000. The original lender on the Note and Trust Deed was Old Kent Mortgage. The defendant is the successor in interest to Old Kent Mortgage.

Because of the plaintiff's payment delinquency on the Note, a Notice of Default was recorded on September 18, 2001, by the then-serving trustee. A Notice of Trustee's Sale was subsequently issued, with a scheduled sale date of July 10, 2002. The plaintiff filed a Chapter 13 bankruptcy on July 9, 2002.

During the course of the Chapter 13 bankruptcy proceeding, the plaintiff made payments on the pre-petition bankruptcy arrearage amount through the Chapter 13 Plan. The plaintiff also made payments due on the Note after the date of the bankruptcy filing (post-petition monthly payments). The defendant has submitted the Affidavit of Rosemary Meeker (titled "GMACM Affidavit"), a manager with GMAC Mortgage, LLC, which services the plaintiff's loan, indicating that the plaintiff defaulted in post-petition monthly payments to the defendant. According to Ms. Meeker, the plaintiff ultimately "made only the equivalent of 45 monthly payments due between the contractual payment period from August 2002 through August 2006, during which time 49 monthly payments came due." (Meeker Affidavit at para. 16).

LANTZ V. HOMECOMINGS FINANCIAL      PAGE 3                    MEMORANDUM DECISION

On July 17, 2006, the Chapter 13 Trustee issued a Final Report and Accounting of Completed Chapter 13 Plan. Exhibit A to the Final Report indicates that the defendant was paid 100% of the pre-petition default arrearage. On that same date, Judge William T. Thurman of the Bankruptcy Court issued a Discharge of Debtor After Completion of Chapter 13 Plan.

On September 15, 2006, the defendant issued a Notice of Trustee's Sale with respect to the plaintiff's house based on the plaintiff's alleged default in post-petition monthly payments to the defendant. The defendant concedes that it did not issue a new Notice of Default, but argues that one was not required because the September 18, 2001, Notice of Default remained in effect.

The primary issue raised by the plaintiff's Motion is whether his bankruptcy discharge mandated the defendant to begin the foreclosure process anew, including providing a new Notice of Default. The defendant argues that it was not required to re-start the entire foreclosure process because the plaintiff defaulted on his post-petition monthly payment obligations.

After considering the parties' respective legal positions, the Court determines that at the conclusion of the plaintiff's Chapter 13 bankruptcy proceeding, which resulted in the payment of 100% of the defendant's claim for pre-petition arrearage and a full discharge, the plaintiff's loan was reinstated. The reinstatement of the loan as of the discharge date eliminated the defendant's right to foreclose on the pre-

LANTZ V. HOMECOMINGS FINANCIAL    PAGE 4                MEMORANDUM DECISION

bankruptcy arrearage or to rely on the notices originally issued in connection with the pre-bankruptcy arrearage.

After the discharge date, in order to foreclose on the plaintiff's alleged default in post-petition monthly payments, the defendant was required to start the foreclosure process anew, including providing a notice of acceleration and notice of default. The defendant's failure to provide the plaintiff with these types of notices and instead proceeding to issue the September 15, 2006, Notice of Trustee's Sale was improper and constitutes a breach of the Note and Trust Deed. Accordingly, the plaintiff's Motion for Partial Summary Judgment is granted in full, including enjoining the defendant from proceeding with the trustee's sale which is the subject of the September 15, 2006, Notice of Trustee's Sale.

Counsel for the plaintiff is to prepare an Order consistent with this Memorandum Decision and submit the same to the Court for review and signature.

Dated this ___5___ day of January, 2011.

ROYAL I. HANSEN
DISTRICT COURT JUDGE

LANTZ V. HOMECOMINGS FINANCIAL    PAGE 5                MEMORANDUM DECISION

## MAILING CERTIFICATE

I hereby certify that I mailed a true and correct copy of the foregoing Memorandum Decision, to the following, this __7__ day of January, 2011:

David E. Hardy
Attorney for Plaintiff
5532 Lillehammer Lane, Suite 100
Park City, Utah 84098

Peter J. Salmon
Attorney for Defendant
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, California 92177-0935

_____