# PUBLIC NOTICE



RECEIVED
JUN - 2 2014
U.S. BANKRUPTCY COURT
SO DIST OF

**I, Karen Michele Rozier (nee Karen Michele Chapman DOB 06/26/1962, Baltimore, Maryland) DO <u>NOT</u> SUPPORT THE CITIZEN'S ACTION NETWORK.**

1. I do not believe that President Obama has committed treason. I am offended that others think that I would work to destroy his Presidency given that they know how I feel about my history. This country survived slavery. It can survive a Black President.

2. I do not support any militia. Anyone willing to take on our armed forces or who thinks the National Guard or police will stand with them during an insurrection is a fool. I do believe in the right to bear arms, but I don't support war on my soil.

3. I do not support forming a Fourth Branch of Government, including Citizen Grand Juries. I do believe in holding public officials liable for breaches of public trust.

4. I do not support returning to the original Constitution -- 1-2-3-**NO!** [That is the infamous 3/5th clause.]

5. Last and certainly not least, I favor federal rights over state rights. Although I feel that the state of California has an illegal and corrupt government, I'm good with the feds. They aren't perfect, but I still trust them more than I trust my local government.

5/23/2014

Karen Michele Rozier
7957 Dahlia Circle
Buena Park, CA 90620
(410) 458-3772

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re RESIDENTIAL CAPITAL, LLC et. al, Debtors. | ) Judge Hon. Martin Glenn, ) Presiding ) ) Case No. 12-12020 (MG) ) ) Chapter 11 ) ) |

## MOTION TO STRIKE AND REPLY TO OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST TO KAREN MICHELE ROZIER'S MOTION FOR RECONSIDERATION OF ORDER; DECLARATION OF Karen Michele Rozier IN SUPPORT THEREOF [CLAIMS 4738 AND 5632]

TO THE HONORABLE MARTIN GLENN, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL INTERESTED PARTIES:

Movant objects to Debtor(s) untimely filed objection. Movant respectfully requests the court strike Debtors' objection in its entirety. Movant moves to strike Debtors' objection in its entirety as untimely, nonresponsive and misleading.

1. Prior to filing her Certificate of No Objection, Movant contacted Debtors via telephone and left a phone message informing them of her intent as per her declaration[1]. Movant also caused Debtors to be served with the Certificate of No Objection via email prior to filing its answer. Movant filed her Certificate of No Objection

---

[1] Certificate of No Objection Regarding Claimant's Motion for Reconsideration of Order, paragraph 3 and 4.

after the time for debtor to file its response had lapsed.  A true
and correct copy of the email confirmation is attached hereto as
**Exhibit (1)**. Debtors were aware that its pleading was late when it
filed it, further wasting the court's and Movant's time

2. Debtors plead Rule 60, claiming that Movant's request was
   analogous to a motion under Bankruptcy Rule 9023.  Debtors also
   point out that this rule is applicable when a court *disallows* a
   claim.  The Court did not disallow Movant's claim. In Movant's
   request for reconsideration, she claims misrepresentation by
   Debtors and points over several specific instances of misconduct.
   As such, judicial discretion is proper in this instant case.

   a. Movant alleges that Debtors' allowed her claim when it chose
      to place her in the Waterfall. Debtors failed to show that
      they paid 100% of all claims made through the Independent
      Foreclosure Review. As per the AMENDMENT OF CONSENT ORDER,
      "Payments to Borrowers, Para 3 9c): *(c) Except as provided
      in paragraphs 3(f) through (h), ResCap and GMAC Mortgage
      shall promptly place the In-Scope Borrower Population into
      categories based upon loan file characteristics as
      determined by the Regulator (the "Borrower Waterfall")*. As
      such, the Debtors were required to conduct a review and
      determine if there was a possibility of guilt. In cases of
      doubt, Debtors were held to a *higher* standard, requiring a
      review before the Borrower would be paid.  A true and
      correct copy of that consent order is attached hereto as
      **Exhibit (2)**.

b. Debtors claim that Movant was paid the minimum amount.
According to their literature, the lowest amount for a no-
fault claim is $400. Movant received a higher payment, as
Debtors acknowledge. Movant received this payment despite
having successfully forced Debtors to rescind the March 2008
Notice of Default. Debtors caused Movant harm. A true and
correct copy of the Independent Foreclosure Review Payment
Agreement Details is attached hereto as **Exhibit (3)**.

3. Movant has two disputes with Debtors:

a. Dispute 1: Movant sued Debtors GMAC Mortgage [GMACM] and
Executive Trustee Services, LLC [ETS], which attempted to
enforce a rescinded note dated December 23, 2005 against
Movant, who signed her note on June 1, 2006. Movant's
arguments are detailed in her initial proofs of claim and
court action entitled Karen M. Rozier v. GMAC Mortgage, LLC
and Mortgage Electronic Registration Systems, Inc., Case No.
30-2008-00217056-CU-JR-CJC on October 28, 2008 in the
Superior Court of California, County of Orange (the "Initial
California Action").

b. Dispute 2: Movant sued Debtors GMACM, ETS, and Residential
Funding Company, Attorney-in-Fact for the Debtors' post-
bankruptcy behavior including the wrongful September 2012
foreclosure and other allegations detailed in her actions;
Movant included these allegations and damages into the final
proofs of claim after Debtors claimed they were immune from
prosecution in California due to the New York bankruptcy.

4. Movant alleges that Debtors have multiple co-conspirators
   including but not limited to Bank of America [RAMP 2007RP1] –
   Debtors refer to them as being the Trustee for RAAC 2007RP1[2].
   Recorded documentation refer to the trust as RAMP 2007RP1. Debtors
   and its assigns or successors cannot defend against Movant's
   allegations in either California or New York due to the underlying
   violations associated with both Trusts as detailed in Movant's
   pleadings.

5. Movant also has two actions U.S. Bank [RAAC 2007 RP1]:

   a. **Ninth Circuit Court of Appeals:** Movant believes the lower
      court ruled in error, whether through negligence or mistake.
      The facts are clear – U.S. Bank misstated the truth when it
      claimed that Movant's 4,206 square foot million-dollar home[3]
      was only 2,096 square feet and worth less than $350,000.
      U.S. Bank submitted grossly inaccurate information to the
      court claiming that its alleged $576,000 interest was not
      protected even though Movant's property was worth more than
      the indebtedness. Movant was involuntarily converted from a
      Chapter 13 to a Chapter 7 based on Debtor GMAC and US Bank's
      claims that she was upside-down on a note they didn't own,
      and using a gross under-valuation. Movant complied with the
      Court's order to bring it proof, supplying it with a
      licensed California appraiser's report. Movant previously
      supplied the Court with records from the Orange County Tax
      Assessor's Office verifying the size of her home, unaware

---

[2] Page 6, footnote 5.
[3] The latest www.zillow.com report is attached hereto as Attachment 1.

that she also needed to verify the value of her home, which
is mostly based on size.

b. **Superior Court of California:** Bank of America and debtors
GMACM, ETS, and ResCap foreclosed on Movant's home in
September 2012. Movant sued all parties and U.S. Bank,
asserting that U.S. Bank had attempted to coerce her
cooperation in the appeal. That sale was rescinded ten days
later and Movant dropped U.S. Bank as a defendant. Movant
believes that around January 2013, U.S. Bank's trust
division assumed the obligations of Bank of America's trust
division. Movant was forced to add U.S. Bank as a litigant
when U.S. Bank agreed to pay any award against Bank of
America. The hearings leading up to the summary judgment
were convoluted and a review of the full facts will
demonstrate that the lower court erred when it granted the
motion.  U.S. Bank's motion for summary judgment was based
on future event and not on the case before the court. Also,
Debtors were incorrect when they stated that Movant filed a
premature appeal. Movant filed a copy of the order with her
notice of appeal and was assigned a case number.

c. Ocwen Home Loan Servicing, LLC – To Movant's knowledge,
Ocwen has not initiated foreclosure proceedings against her
despite Debtors' assertions to the contrary. Movant has
received no documentation that Ocwen has initiated such an
action. Ocwen contacted Movant in 2013 and Movant responded.
A true and correct copy of her responses are attached hereto
as Exhibit 4 and Exhibit 5.

## CONCLUSION

The most basic function of the American state and federal judicial systems is clear: provide appropriate relief on the merits of valid claims. For the reasons set forth above and as argued in Movant's pleadings and letters, the Court should strike Debtors' objections, affirm Movant's request for reconsideration and order Debtors to pay the subject claims, or as an alternative require the Debtors to negotiate all claims within the next thirty-days or be forced to pay the Movant's claims in their entirety at the end of 30-days if no agreement is reached.

Dated: May 28, 2014

Executed in Buena Park, California

Karen Michele Rozier

**DECLARATION OF Karen Michele Rozier IN SUPPORT OF MOTION TO STRIKE AND REPLY TO OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST TO KAREN MICHELE ROZIER'S MOTION FOR RECONSIDERATION OF ORDER [CLAIMS 4738 AND 5632]**

1. I am the Pro se Movant. I am over the age of 18 and competent to testify as to the statements made in this declaration and in the underlying motion to strike and reply to objection. I have written every pleading without assistance and am willing to testify to any statement I've made.

2. On Wednesday May 28, 2014 at 5:25 PM California daylight savings time, I reviewed the court docket at http://www.kccllc.net/rescap. At that time, my **CERTIFICATE OF NO OBJECTION REGARDING CLAIMANT'S MOTION FOR RECONSIDERATION OF ORDER** ["Certificate"] was still not showing in the system.

3. I caused said Certificate to be served on Debtors and all applicable parties on Thursday May 22, 2014.

4. Debtors filed its Objection the next day, after being informed that the time had passed for it to file an objection.

5. I have verified that Debtors are not in the military.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 28, 2014                    Respectfully Submitted,

Buena Park, CA

Karen Michele Rozier
7957 Dahlia Circle
Buena Park, CA 90620

EXHIBIT "1"

**EXHIBIT "1"**

Print                                                          ᑐ

| | |
|---|---|
| Date: | Thursday, May 22, 2014 7:38 PM |
| From: | rozier.david@roadrunner.com |
| To: | LNASHELKSY@MOFO.COM, GLEE@MOFO.COM, LMARINUZZI@MOFO.COM, TRACY.DAVIS2@USDOJ.GOV, LINDA.RIFFKIN@USDOJ.GOV, BRIAN.MASUMOTO@USDOJ.GOV, KECKSSTEIN@KRAMERLEVIN.COM, TMAYERJ@KRAMERLEVIN.COM, DMANNAL@KRAMERLEVIN.COM |
| Cc: | rozier.karen@yahoo.com |
| Subject: | *** SERVICE *** Certificate of No Service 12-12020 (MG) |

```
TO ALL INTERESTED PARTIES: Attached is a Certificate of No Objection [Claims
4738 and 5632] with proposed ORDER.
```

David E. Rozier

📎 Certificate of No Objection.PDF

# EXIHIBIT "2"

EXHIBIT "2"

UNITED STATES OF AMERICA
BEFORE THE
BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
WASHINGTON, D.C.

| | |
|---|---|
| In the Matter of | Docket No.   11-020-B-HC |
| | 11-020-B-DEO |
| ALLY FINANCIAL INC. | |
| Detroit, Michigan | FDIC-11-123b |
| | |
| ALLY BANK | |
| Midvale, Utah | |
| | |
| RESIDENTIAL CAPITAL, LLC | |
| Minneapolis, Minnesota | |
| | |
| and | |
| | |
| GMAC MORTGAGE, LLC | |
| Fort Washington, Pennsylvania | |

## AMENDMENT OF CONSENT ORDER

WHEREAS, on April 13, 2011, Ally Financial Inc., Detroit, Michigan ("Ally Financial"),

a registered bank holding company, Residential Capital, LLC, Minneapolis, Minnesota

("ResCap"), and GMAC Mortgage, LLC, Fort Washington, Pennsylvania ("GMAC Mortgage")

consented to the issuance of a Consent Order (the "2011 Consent Order"), in recognition of the

common goal of the Board of Governors of the Federal Reserve System (the "Board of

Governors"), the Federal Reserve Bank of Chicago (the "Reserve Bank"), Ally Financial and its

direct and indirect subsidiaries that engaged in the business of servicing residential mortgage

loans, including GMAC Mortgage and its direct and indirect subsidiaries, to ensure that the

consolidated organization operates in a safe and sound manner and in compliance with all applicable Legal Requirements (as defined in the 2011 Consent Order);

WHEREAS, paragraphs 3 and 4 of the 2011 Consent Order required GMAC Mortgage, among other things, to retain an independent consultant to conduct an independent review of certain residential mortgage loan foreclosure actions or proceedings for borrowers who had a pending or completed foreclosure on their primary residence any time from January 1, 2009 to December 31, 2010 for loans serviced by the Mortgage Servicing Companies (as defined in the 2011 Consent Order) (the "In-Scope Borrower Population"), the purposes of which were set forth in paragraphs 3 and 4 of the 2011 Consent Order (the "Independent Foreclosure Review");

WHEREAS, GMAC Mortgage has taken steps to comply with its obligations under paragraphs 3 and 4 of the 2011 Consent Order;

WHEREAS, in the interest of providing the greatest benefit to borrowers potentially affected by the practices at the Mortgage Servicing Companies addressed in the 2011 Consent Order in a more timely manner than would have occurred under the Independent Foreclosure Review, the Board of Governors and the Office of the Comptroller of the Currency, within their respective jurisdictions, ResCap, GMAC Mortgage, and several other financial institutions with mortgage loan servicing operations agreed to amend their respective 2011 Consent Orders;

WHEREAS, ResCap, GMAC Mortgage, and the Board of Governors intend GMAC Mortgage's obligations under paragraphs 3 and 4 of the 2011 Consent Order to be replaced with the obligations specified in this amendment to the 2011 Consent Order (the "Amendment"), and ordered pursuant to section 8(b) of the Federal Deposit Insurance Act, as amended (the "FDI Act") (12 U.S.C. § 1818(b)), which include (i) making a cash payment in the amount specified herein to a Qualified Settlement Fund for distribution to the In-Scope Borrower

2

Population in accordance with a distribution plan developed by the Board of Governors in its discretion and (ii) taking other loss mitigation or other foreclosure prevention actions in the amount specified herein;

WHEREAS, ResCap and GMAC Mortgage filed a petition in bankruptcy on May 14, 2012; and, to facilitate the cash payment to the Qualified Settlement Fund during the pendency of those proceedings, ResCap and GMAC Mortgage retained an escrow agent and deposited the payment amount with that agent for subsequent disbursal to the Qualified Settlement Fund;

WHEREAS, the amount of any payments to borrowers made pursuant to this Amendment to the 2011 Consent Order does not in any manner reflect specific financial injury or harm that may have been suffered by borrowers receiving payments, except as expressly provided for in this Amendment to the 2011 Consent Order, nor do the payments constitute either an admission or a denial by ResCap or GMAC Mortgage of wrongdoing or a civil money penalty under section 8(i) of the FDI Act (12 U.S.C. § 1818(i));

WHEREAS, the boards of directors of ResCap and GMAC Mortgage, at duly constituted meetings, adopted resolutions authorizing and directing Lewis Kruger to enter into this Amendment to the 2011 Consent Order on behalf of ResCap and GMAC Mortgage, respectively, and consenting to compliance by ResCap and GMAC Mortgage, and their institution-affiliated parties, as defined in sections 3(u) and 8(b)(3) of the Federal Deposit Insurance Act, as amended (the "FDI Act") (12 U.S.C. §§ 1813(u) and 1818(b)(3)), with each and every applicable provision of the 2011 Consent Order as amended by this Amendment.

NOW, THEREFORE, IT IS HEREBY ORDERED pursuant to section 8(b) of the FDI Act (12 U.S.C. § 1818(b)) that the 2011 Consent Order is amended as follows:

1.     The recitations of the 2011 Consent Order are not amended.

3

2.    Paragraphs 1 and 2 of the 2011 Consent Order are not amended.

3.    Except as otherwise provided in this paragraph 3, any obligations of GMAC

Mortgage under paragraphs 3 and 4 of the 2011 Consent Order are hereby terminated, and

paragraphs 3 and 4, including their accompanying heading, are stricken and replaced with the

following:

**"Payments to Borrowers**

3.    (a)    Within one business day of the date of the amendment to this Order (the

"Amendment"), ResCap and GMAC Mortgage (defined for purposes of paragraphs 3 and 4 to

include ResCap's direct and indirect subsidiaries) collectively will, directly or through their

agent, make a cash payment that totals $198,077,499, plus any interest accrued on amounts held

by their agent, into a Qualified Settlement Fund (the "Fund") from which payments will be made

pursuant to a distribution plan developed by the Board of Governors (the "Regulator") in its

discretion to borrowers whose residential mortgage loan on their primary residence was serviced

by the Mortgage Servicing Companies and who were subject to a foreclosure action or

proceeding that was pending or completed any time from January 1, 2009 to December 31, 2010

(the "In-Scope Borrower Population").

(b)    Prior to ResCap's and GMAC Mortgage's cash payment into the Fund

required under paragraph 3(a), ResCap and GMAC Mortgage shall ensure that the Fund is

established. The Fund shall be established and is intended to be treated at all times as a

Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1 (26 C.F.R. § 1.468B-

1). A paying agent acceptable to the Regulator (the "Paying Agent") has been retained by

ResCap and GMAC Mortgage for the purpose of distributing payments as directed by the

Regulator from the Fund to Mortgage Servicing Companies' In-Scope Borrower Population.

4

The Paying Agent shall serve as the "administrator" at the direction of the Regulator within the

meaning of Treas. Reg. § 1.468B-2(k)(3) (26 C.F.R. § 1.468B-2(k)(3)). The agreement(s)

pursuant to which ResCap and GMAC Mortgage retain the Paying Agent shall be subject to the

Regulator's prior no objection, and the agreement(s) shall not be amended or modified without

obtaining a prior no objection from the Regulator. ResCap and GMAC Mortgage will be

responsible for all administrative costs related to the Fund and the Paying Agent. Neither

ResCap nor GMAC Mortgage may use any funds from their payment into the Fund or interest

accrued on amounts in the Fund for such costs.

(c)    Except as provided in paragraphs 3(f) through (h), ResCap and GMAC

Mortgage shall promptly place the In-Scope Borrower Population into categories based upon

loan file characteristics as determined by the Regulator (the "Borrower Waterfall").

(d)    The Reserve Bank may direct that ResCap's and GMAC Mortgage's

placement of the In-Scope Borrower Population into the Borrower Waterfall be reviewed

independently by ResCap's and/or GMAC Mortgage's internal audit or compliance function or,

if ResCap and GMAC Mortgage no longer have audit or compliance functions, by an

independent third party acceptable to the Regulator. Upon verification by the Reserve Bank, the

Reserve Bank will instruct ResCap and GMAC Mortgage to provide the Paying Agent with

ResCap's and GMAC Mortgage's placement of the In-Scope Borrower Population within the

Borrower Waterfall, and at that time ResCap's and GMAC Mortgage's placement of the In-

Scope Borrower Population within the Borrower Waterfall shall be deemed final.

(e)    The Regulator will determine the specific payment amounts applicable to

each category of borrower within the Borrower Waterfall in its sole discretion (the "Distribution

Plan") and will direct the Paying Agent to distribute payments from the Fund to the In-Scope

Borrower Population in accordance with the Distribution Plan established by the Regulator.

(f)    Notwithstanding paragraphs 3(d) and (e), with respect to borrowers in the

In-Scope Borrower Population who may have been entitled to protection under Section 521 or

Section 533 of the Servicemembers' Civil Relief Act, (the "SCRA"), 50 U.S.C. App. §§ 521 or

533, and borrowers who may not have been in default during the foreclosure process, ResCap

and GMAC Mortgage shall either: (i) place the borrower into the applicable category within the

Borrower Waterfall, which will result in the borrower automatically receiving payments made

from the Fund in accordance with the Distribution Plan for such category; or (ii) instruct the

independent consultant (the "IC") that ResCap and GMAC Mortgage retained to conduct an

independent review of residential mortgage loan foreclosure actions or proceedings for the In-

Scope Borrower Population (the "Independent Foreclosure Review") to complete file reviews for

such borrowers to determine financial injury related to Sections 521 or 533 or to not being in

default. For files reviewed under (ii), the borrower will receive payments from the Fund in

amounts specified in the June 21, 2012 Financial Remediation Framework where the IC makes a

determination of "harm." For files reviewed under (ii) where the IC makes a determination of

"no harm," ResCap and GMAC Mortgage will place the borrower into the next highest Borrower

Waterfall category for which such borrower is eligible, which will result in the borrower

receiving payment from the Fund in accordance with the Distribution Plan for such category.

(g)    Notwithstanding paragraphs 3(d) and (e), with respect to borrowers in the

In-Scope Borrower Population who may have been subject to interest rate protections under

Section 527 of the SCRA, 50 U.S.C. App. § 527, as part of the Borrower Waterfall placement,

ResCap and GMAC Mortgage shall either: (i) place the borrower into the highest category

6

within the Borrower Waterfall for which the borrower is eligible, which will result in the

borrower automatically receiving payments from the Fund in accordance with the Distribution

Plan for such category; or (ii) instruct the IC to complete file reviews for such borrowers to

determine financial injury related to Section 527. For files reviewed under (ii), the borrower will

receive payments as calculated pursuant to the methodology outlined in Department of

Justice/Department of Housing and Urban Development National Mortgage Settlement ("NMS")

Exhibit H (Consent Judgment entered April 4, 2012), where the IC makes a determination of "harm."

For files reviewed under (ii) where the IC makes a determination of "no harm," ResCap and

GMAC Mortgage will place the borrower into the next highest Borrower Waterfall category for

which such borrower is eligible, which will result in the borrower receiving payment from the

Fund in accordance with the Distribution Plan for such category.

(h)    If ResCap and GMAC Mortgage elect to have the IC continue file review

work as described in paragraphs 3(f) or (g), the IC review work for such files must be completed

prior to the verification specified in paragraph 3(d). If the IC review work is not completed by

such time, the Board of Governors may direct payments from the Fund to such borrowers in

accordance with the Distribution Plan for the highest category for which such borrower is

eligible.

(i)    Within three days of the effective date of the Amendment to this Order,

ResCap and GMAC Mortgage shall confirm that their IC has provided the Reserve Bank with

the most recent data report(s) previously provided by the IC to ResCap's and/or GMAC

Mortgage's board(s) or appropriate board committee(s). Within three days of the effective date

of the Amendment to this Order, ResCap and GMAC Mortgage shall confirm that their IC has

completed and provided to the Board of Governors the additional reporting specified by the

Board of Governors with information as of December 31, 2012 and as of June 30, 2013. ResCap

7

and GMAC Mortgage shall also take all reasonable steps to cause their IC to provide any existing information, as requested by the Reserve Bank, to assist the Reserve Bank and the Board of Governors in their analysis and public reporting of Independent Foreclosure Review related activities.

    (j)  Consistent with existing examination authority, the Reserve Bank maintains the right to obtain and access all existing material, information, records and/or files used or generated by ResCap, GMAC Mortgage, and/or their IC (including independent counsel to the IC) in connection with the Independent Foreclosure Review and implementation of the Amendment to this Order.

**Foreclosure Prevention**

    4.  (a)  By no later than June 27, 2015, ResCap and GMAC Mortgage shall collectively provide loss mitigation or other foreclosure prevention actions ("Foreclosure Prevention") that totals $316,923,998.

    (b)  ResCap's and GMAC Mortgage's Foreclosure Prevention actions shall be in addition to, and shall not be used to fulfill, ResCap's or GMACM's consumer relief obligations under the NMS.

    (c)  Well structured loss mitigation actions should focus on foreclosure prevention, which should typically result in benefitting the borrower. While ResCap's and GMAC Mortgage's actions may be affected by existing investor requirements, ResCap's and GMAC Mortgage's foreclosure prevention actions should reflect the following guiding principles:

    (i)  preference should be given to activities designed to keep the borrower in the home;

(ii)     foreclosure prevention actions should emphasize affordable, sustainable, and meaningful home preservation actions for qualified borrowers;

(iii)    foreclosure prevention actions should otherwise provide significant and meaningful relief or assistance to qualified borrowers; and

(iv)    foreclosure prevention actions should not disfavor a specific geography within or among states, nor disfavor low and moderate income borrowers, and not discriminate against any protected class of borrowers.

(d)     ResCap and GMAC Mortgage shall receive credit using the types of creditable activity set forth in the NMS for the following Foreclosure Prevention actions set forth in the NMS:

(i)     first lien modifications;

(ii)    second lien modifications; and

(iii)   short sales/deeds-in-lieu of foreclosure.

(e)     For purposes of paragraph 4(d), crediting will be based on the unpaid principal balance of the loan and there are no maximum or minimum restrictions on the amount of any particular activity that is creditable.

(f)     ResCap and GMAC Mortgage may also receive credit for other Foreclosure Prevention actions, subject to no objection from the Reserve Bank (including as to participation and conditions governing such participation), including:

(i)     interest rate modifications;

(ii)    deficiency waivers (measured by the amount of deficiency judgment credited at $.10 for every dollar);

9

20

        (iii)     other Foreclosure Prevention activities (measured by amounts incurred as owing to investors for such activities and including credit on ResCap's or GMAC Mortgage's or their affiliates' loans held-for-investment calculated using the note rate methodology as used by the Government-Sponsored Enterprises);

        (iv)     additional Foreclosure Prevention actions that are not expressly specified in this paragraph 4;

        (v)     the provision of additional cash payments to the Fund (measured as $7 to $10 of credit for each $1 cash commitment); and

        (vi)     the provision of cash or other resource commitments to borrower counseling or education (measured as $7 to $10 of credit for each $1 cash commitment).

        (g)     To the extent practicable and without prejudice to overall portfolio management, ResCap and GMAC Mortgage will attempt to prioritize their Foreclosure Prevention actions for the benefit of the In-Scope Borrower Population. However, all Foreclosure Prevention actions benefiting borrowers in the portfolio of ResCap or its subsidiaries or affiliates, whether or not in the In-Scope Borrower Population and whether held-for-investment or serviced-for-others, shall be eligible for credit towards ResCap's and GMAC Mortgage's Foreclosure Prevention actions; provided, the creditable activity occurs on or after June 27, 2013.

        (h)     ResCap and GMAC Mortgage will satisfy the Foreclosure Prevention obligations of this paragraph 4 by providing additional cash payments to the Fund in the amount of $31,692,400. Within one business day of this Amendment, ResCap and GMAC Mortgage collectively will, directly or through their agent, make this additional payment to the Fund, plus any interest accrued on amounts held by their agent.

(i)    By August 15, 2013, ResCap and GMAC Mortgage shall submit to the Reserve Bank a report, in a form and manner acceptable to the Reserve Bank, that details the Foreclosure Prevention actions taken by ResCap and GMAC Mortgage through July 31, 2013 to fulfill their obligations under this paragraph 4 and the amount of credit sought toward fulfilling those obligations. Nothing in this paragraph 4(i) shall require ResCap and GMAC Mortgage to report Foreclosure Prevention actions taken during a particular prior period for which ResCap and GMAC Mortgage may in the future seek credit or prohibit ResCap and GMAC Mortgage from seeking credit for the Foreclosure Prevention actions taken by ResCap and GMAC Mortgage during a later reporting period. Additionally, ResCap and GMAC Mortgage shall document their efforts to prioritize the In-Scope Borrower Population when considering creditable Foreclosure Prevention actions."

5.    Paragraphs 5 through 18 of the 2011 Consent Order are not amended.

6.    Paragraph 19(a) of the 2011 Consent Order is stricken and replaced with the following:

"19.    (a)    GMAC Mortgage, Ally Financial and ResCap, as applicable, shall submit written plans, programs, policies and procedures that are acceptable to the Reserve Bank and reports to the Reserve Bank within the applicable time periods set forth in paragraphs 2, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16 and 17 of this Order. An independent consultant acceptable to the Reserve Bank shall be retained by Ally Financial and ResCap within the applicable period set forth in paragraph 12 of this Order."

7.    Paragraph 19(b) of the 2011 Consent Order is not amended.

8.    Paragraph 19(c) of the 2011 Consent Order is amended by striking "letters" and replacing it with "letter" and otherwise is not amended.

11

9.    Paragraphs 19(d) through 28 of the 2011 Consent Order are not amended.

10.    Paragraph 29 of the 2011 Consent Order is amended by striking "ResCap,

GMACM Mortgage," and adding at the end the following new sentence: "Except as otherwise

provided in this paragraph 29, the Board of Governors hereby agrees not to initiate any further

enforcement actions, including for civil money penalties, against ResCap and GMAC Mortgage

with respect to (a) the conduct described in the WHEREAS clauses of this Order, (b) the matters

addressed in paragraphs 3 through 4 of this Order, including matters relating to the work or

findings of the IC or independent legal counsel to the IC, and (c) any other past mortgage

servicing and foreclosure-related practices that are addressed by this Order.  The preceding

release and discharge in paragraph 29(c) applies only with respect to borrowers in the In-Scope

Borrower Population.  The foregoing release and discharge shall not preclude or affect (i) any right

of the Board of Governors to determine and ensure compliance with this Order, as amended herein,

or (ii) any proceedings brought by the Board of Governors to enforce the terms of the Order, as

amended herein.  The preceding release and discharge in no way affects the Order of Assessment of a

Civil Money Penalty entered into by Ally Financial, ResCap, and GMAC Mortgage, on the one hand,

and the Board of Governors, on the other hand, effective February 10, 2012, which shall remain in

effect without modification."

11.    Paragraph 30 of the 2011 Consent Order is renumbered paragraph 31 and is

otherwise not amended.

12.    The following is inserted before paragraph 31 of the 2011 Consent Order as

paragraph 30 of the 2011 Consent Order:

"30.    In no event shall ResCap or GMAC Mortgage request or require any borrower to

execute a waiver of any claims against ResCap or GMAC Mortgage (including any agent or

affiliate of ResCap or GMAC Mortgage) in connection with any payment or Foreclosure

Prevention assistance provided pursuant to paragraphs 3 or 4 of this Order. However, nothing

herein shall operate to bar ResCap or GMAC Mortgage from asserting in the future in any

separate litigation, or as part of a settlement related to ResCap's or GMAC Mortgage's

foreclosure and servicing practices, any right that may exist under applicable law to offset the

amounts received by a borrower through the distribution process set forth above. Nothing herein

shall operate to amend or modify in any respect any preexisting settlement between ResCap,

GMAC Mortgage, or an affiliate of either and a borrower in the In-Scope Borrower Population."

By Order of the Board of Governors effective this 26th day of July, 2013.

RESIDENTIAL CAPITAL, LLC                    BOARD OF GOVERNORS OF THE
                                            FEDERAL RESERVE SYSTEM


By:  __/s/_____          By:    __/s/_____
        Lewis Kruger                          Robert deV. Frierson
        Chief Restructuring Officer           Secretary of the Board



GMAC MORTGAGE, LLC



By:  __/s/_____
        Lewis Kruger
        Chief Restructuring Officer

# EXHIBIT "3"

# **EXHIBIT "3"**

## Independent Foreclosure Review Payment Agreement Details – GMAC Mortgage

The table below includes the number of eligible borrowers and payment amounts in each category for borrowers covered by the Independent Foreclosure Review Payment Agreement whose mortgages were serviced by GMAC Mortgage. The agreement was announced in July 2013 between the Federal Reserve Board and GMAC Mortgage. The table contains only standard payout amounts; it does not include amounts for lost equity, which borrowers in the first and third categories may receive in addition to the standard payout amounts, the payments calculated on a case-by-case basis in the second category, or any tax withholding (if applicable). This table does not apply to borrowers covered by Independent Foreclosure Review Payment Agreement whose mortgages were serviced by the other mortgage servicers participating in the agreement. Tables that apply to those borrowers can be found at www.federalreserve.gov/consumerinfo/independent-foreclosure-review-payment-agreement.htm.

| Category | Foreclosure Stage | Borrowers Who Requested a Review | | All Other Borrowers | | Total Borrowers |
|---|---|---|---|---|---|---|
| | | Number of Borrowers | Payment | Number of Borrowers | Payment | |
| Servicer foreclosed on borrower eligible for Servicemembers Civil Relief Act (SCRA) protection (applies only to rescinded or completed foreclosures)* | Rescinded | 1 | $15,000 | 3 | $15,000 | 4 |
| | Completed | 16 | $125,000 | 89 | $125,000 | 105 |
| Servicer charged servicemembers interest rates that exceed SCRA Section 527 limits** | In process | 0 | >=$400 | - | >=$400 | - |
| | Completed | 0 | >=$400 | - | >=$400 | - |
| Servicer initiated or completed foreclosure on borrower who was not in default | In process | 61 | $5,000 | 544 | $5,000 | 605 |
| | Rescinded | 3 | $15,000 | 7 | $15,000 | 10 |
| | Completed | 0 | $125,000 | 1 | $125,000 | 1 |
| Servicer initiated or completed foreclosure on borrower who was protected by federal bankruptcy law | In process | 41 | $9,000 | 255 | $4,500 | 296 |
| | Rescinded | 0 | $9,000 | 13 | $4,500 | 13 |
| | Completed | 21 | $75,000 | 91 | $37,500 | 112 |
| Servicer completed foreclosure on borrower who was meeting all requirements of documented forbearance plan(applies only to rescinded or completed foreclosures) | Rescinded | 3 | $7,500 | 20 | $3,750 | 23 |
| | Completed | 15 | $30,000 | 45 | $15,000 | 60 |
| Servicer failed to convert borrower to permanent modification after three successful payments under a written trial-period plan | In process | 9 | $7,500 | 119 | $3,750 | 128 |
| | Rescinded | 2 | $7,500 | 2 | $3,750 | 4 |
| | Completed | 30 | $62,500 | 149 | $31,250 | 179 |
| Servicer completed foreclosure on borrower who was performing all requirements of the written trial-period plan | Rescinded | 1 | $7,500 | 7 | $3,750 | 8 |
| | Completed | 4 | $62,500 | 11 | $31,250 | 15 |
| Modification request approved | In process | 8,374 | $500 | 54,807 | $400 | 63,181 |
| | Rescinded | 288 | $500 | 1,234 | $400 | 1,522 |
| | Completed | 4,293 | $500 | 23,268 | $400 | 27,561 |
| Modification request denied | In process | 1,992 | $2,500 | 16,453 | $1,250 | 18,445 |
| | Rescinded | 140 | $2,500 | 650 | $1,250 | 790 |
| | Completed | 3,531 | $7,500 | 16,004 | $3,750 | 19,535 |
| Modification request received but no underwriting decision made | In process | 141 | $1,000 | 1,321 | $500 | 1,462 |
| | Rescinded | 18 | $1,000 | 70 | $500 | 88 |
| | Completed | 418 | $1,000 | 2,155 | $500 | 2,573 |
| Servicer did not engage with borrower in a loan modification or other loss mitigation action | In process | 663 | $800 | 11,208 | $400 | 11,871 |
| | Rescinded | 59 | $800 | 751 | $400 | 810 |
| | Completed | 2,634 | $800 | 37,996 | $400 | 40,630 |
| All other loans | In process | 1,400 | $500 | 20,933 | $400 | 22,333 |
| | Rescinded | 52 | $500 | 463 | $400 | 515 |
| | Completed | 2,178 | $500 | 16,957 | $400 | 19,135 |
| Totals | | 26,388 | | 205,626 | | 232,014 |

* Total amount received by borrower in the first and third categories listed here may differ from amount shown because of offsets resulting from other legal settlements.

** Servicemembers who were charged interest rates higher than limits allowed by the SCRA Section 527 will receive payments of $400 or the amount overcharged and paid by the borrower, whichever is greater.

EXHIBIT "4"

**EXHIBIT "4"**

Sent via First Class Mail

September 29, 2013

Zack Kazda
Servicing Risk Specialist
Ocwen Loan Servicing, LLC
PO. Box 780
Waterloo-IA 50704-0780

Re: 0810021144, dated September 11, 2013

Dear Zack,

Please read the following notice thoroughly and carefully before responding. It is a notice. It informs you. It means what it says.

I refer to your letter dated September 11, 2013. I need to be sure of your company's identity and the purpose of this communication. Is it OCWEN HOME LOAN SERVICING LLC identified as California Entity Number 200213810063? Is it a debt collector? Was this letter your response to my Qualified Written Request? If so, it was woefully inadequate and I reject it as though you did not respond at all. If you are the entity claiming to be OCWEN HOME LOAN SERVICING LLC identified as California Entity Number 200213810063, please respond within ten (10) days in full to the most recent QWR or be sued. This is OCWEN HOME LOAN SERVICING LLC's LAST warning.

Was your letter 9/11 in response to my DEMAND FOR SATISFACTION OF 'DEBT'/ INTENT TO SUE dated 16 August 2013? If so, you have failed to respond to my demands so expected to be sued. You can not introduce yourself to me, demand that I send you large sums of money, send me known false and fraudulent documents, and not expect me to question your unreasonable behavior. As you are fully aware, I sued OCWEN's predecessor GMAC Mortgage, LLC for the same wrongdoing and fraudulent acts.

You did not identify your company as a debt collection agency on your September 11, 2013 letter in violation of the Fair Debt Collection Practices Act or claim that you were attempting to collect a debt, but you did threaten to ruin my public reputation. Please be advised that continued violation of the FDCPA and other federal and California state law will result in you being sued for each violation.

§ 807. False or misleading representations [15 USC 1692e]
(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, **and the failure to disclose in subsequent communications that the communication is from a debt collector,** except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

**Notice of Request To Cease Harassment**

I don't know you. I have no contract with you and you have no right to act on my behalf, collect or use my data. You have no contract with any entity with which I have ever contracted. You are in violation of several federal and state laws by representing that you have any right to enforce or collect any debt from me.

§ 807.  False or misleading representations [15 USC 1692e]

(2) The false representation of (A) the character, amount, or legal status of any debt;

California § 1788.13. No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:  (i) The false representation of the true nature of the business or services being rendered by the debt collector;

Also in your letter, you threaten to "continue to show the loan as outstanding". Near as I can remember, if I did have a debt, that debt would still be under bankruptcy protection which would make your actions a violation of bankruptcy rules prohibiting "creditors" from taking any action, including the filing of a lawsuit, designed to collect a discharged debt. I dispute that you are a creditor of mine or that you are authorized to collect any debt authorized by me.

If instead you were merely attempting to intimidate me into paying you money not owed, please be advised that sort of behavior is also prohibited under California law.

§ 807.  False or misleading representations [15 USC 1692e]
(7) The false representation or implication that the consumer committed any crime *or other conduct in order to disgrace the consumer*. [emphasis added]

California § 1788.13. No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:

(f) The false representation that information concerning a debtor' s failure or alleged failure to pay a consumer debt has been or is about to be referred to a consumer reporting agency.

You will be deemed to have been served notice of my request and I will deem it served three (3) days from the date of this letter. This has been sent by regular first class mail. I am advising you that any communications from you including but not limited to letters, phone calls and email messages received after this date will be recorded/noted with the intention of them being used as evidence against you.  Please be advised that violations of federal and California law are subject to penalties of up to $1,000 per occurrence.

§ 813. Civil liability [15 USC 1692k]

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of --

(1) any actual damage sustained by such person as a result of such failure;

(2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000;

**Notice of Request To Cease Harassment**

(d) An action to enforce any liability created by this title may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

Finally, as you have insisted that you have an interest in a Deed of Trust executed by me and I know otherwise, I demand that you cancel that instrument Deed of Trust the Orange County Recorder's Office as instrument 2006000006922 on 01/04/06 at once or be sued for cancellation of false instrument/ or contract, forgery, fraud, unclean hands, slander, libel, and other violations as the evidence supports. You have ten (10) days from the date of this letter. You have been warned.


Sincerely and without ill will, vexation or frivolity,


Karen Michele Rozier, Without any admission of any liability whatsoever, and with all Natural, Inalienable, Rights reserved.

Encl: Original paperwork as received.

**Notice of Request To Cease Harassment**

# EXHIBIT "5"

# EXHIBIT "5"

Sent via Certified Mail

November 21, 2013

OCWEN LOAN SERVICING LLC
Insurance Department
P.O. Box 6723
Springfield, OH 45501

Re: 0810021144, dated November 9, 2013

**TO WHOM IT MAY CONCERN,**

Please read the following notice thoroughly and carefully before responding. It is a notice. It informs you. It means what it says.

I refer to your letter dated November 9, 2013. I need to be sure of your company's identity and the purpose of this communication. Is it OCWEN LOAN SERVICING LLC identified as California Entity Number 200213810063? Are you a subsidiary, call center or department? Are you commonly known as "Insurance Center" Is it a debt collector? Your letter did not identify yourself as a debt collector so it is unclear. Was this letter your response to my Qualified Written Request sent to Zack Kazda on September 11, 2013 or to my initial response to your first demand for insurance information? I have included a true and correct copy of both letters in case they are not in your file. You are welcome.

If you are the entity claiming to be OCWEN LOAN SERVICING LLC identified as California Entity Number 200213810063, please respond within ten (10) days **in full** to this letter or be sued. This is OCWEN LOAN SERVICING LLC's (hereinafter referred to as "Ocwen") first and only warning.

Also enclosed is a copy of the recorded documents demonstrating that I transferred my interest in the subject property on July 25, 2011. That interest was recorded in the Official Records, Orange County as Instrument 2011000361962 at 10:52 am on 07/26/11. A true and correct copy of that recorded instrument in enclosed with this letter. As Ocwen had ample time to review the loan file before acquiring it, Ocwen could clearly see that I have uncontested and scheduled proofs of claim for approximately $90,000,000 against GMAC Mortgage and Executive Trustee Services, LLC in the Residential Capital, LLC New York bankruptcy. Ocwen clearly knows that it acquired no interest in the subject property when it purchased the voided any note allegedly secured by the property commonly known as 7957 Dahlia Circle Buena Park, County of Orange, CA 90620 over **18-months** after the recorded transfer. I am sending a copy of this letter to the Trustee of the Trust as you are encumbering the Trust's property without the legal standing to do so.

Is your letter a reaction to my first response to your first demand letter? I was quite clear in my first response and you have failed to provide any evidence that contradicts my factual claims. I don't owe you or

**Notice of Request To Cease Harassment**

any company you are related to or the so-called trust you represent any money. However, since you claim I do, I demand that you provide answers to my questions within ten days or be sued in either California or federal court, depending on which questions you fail to answer. I am also sending a copy to Zack Kazda as a Qualified Written Request to formalize this demand.

Also in your letter, you claim that you are authorized to take such action according to my "loan documents". I dispute that you have or posses any such loan documents. I demand that you provide a copy of these "loan documents" at once. They had better not be the rescinded December 23, 2005 loan documents. Neither should they be the June 1, 2006 loan documents which U.S. Bank admitted was unsecured by any property in litigation 30 2012-006013010-CU-OR-CJC in the Superior Court of California, County of Orange. U.S. Bank's position is that the December 23, 2005 loan was securitized into the RAMP2007 trust and the June 1, 2006 loan was securitized into the RAAC2007 trust. As you know, that is a violation of federal law. You are using Fictitious Instruments with the intent to defraud or deceive another, a violation of California state and United States federal law. It also appears that you are Falsifying Business Records, Attempted Grand Larceny, Offering a False Instrument for Filing, Criminal Possession of Stolen Property, and potentially, Identity Theft. I consider all acts these a hostile attacks as an assault against my person or estate and will fully prosecute and persecute each and every one of my enemies, perceived or otherwise. Make no mistake, when you chose to lie, cheat and steal and attempt to bully me into paying you large sums of monies not owed, you became my enemy. You can stop it now or be sued and criminally prosecuted.

I have been working with the F.B.I. trying to get to the bottom of this fraud, and now you have involved yourself in a federal investigation. Consider yourself warned.

**Just to be sure we are on the same page, let's agree on these facts:**

1) **The lender WMC Mortgage Company that allegedly "gave me money"** is insolvent, no longer exists. It was shut down by its' parent company GE Money after the federal government launched an investigation into their massive fraudulent lending practices;

2) Resold the debt and was paid off

3) There is No Record of the transaction between the original lender WMC Mortgage Company and the new trustee U.S. BANK NATIONAL ASSOCIATION, as successor in interest to BANK OF AMERICA, NATIONAL ASSOCIATION as Trustee, successor by merger to LASALLE BANK NATIONAL ASSOCIATION as Trustee for RAAC 2007RP1, hereinafter referred to as "US Bank". US Bank is presently being sued in connection with the specific trust RAAC 2007RP1.

4) US Bank claims that it acquires rights from BANK OF AMERICA, NATIONAL ASSOCIATION as Trustee, successor by merger to LASALLE BANK NATIONAL ASSOCIATION as Trustee for RAMP 2007RP1,

**Notice of Request**

(hereinafter referred to as "Bank of America") is presently being sued in connection with the specific trust RAMP 2007RP1.

5) Bank of America claimed it acquired its rights from LaSalle Bank National Association, which was also shut down after being found guilty of massive illegally behavior.

7) You claim you acquired the "servicing rights" from GMAC Mortgage, LLC during their bankruptcy proceeding;

8) You filed multiple documents in federal court indicating that you paid less than full value for any debt purchased from GMACM;

9) You filed multiple documents in federal court in the state of New York indicating that you knew of problems with the loan documents you were receiving in GMACM's New York bankruptcy;

10) I have two uncontested scheduled proofs of claim in GMACM's New York bankruptcy including one where I allege that GMACM knowingly used a rescinded note and void Deed of Trust to initiate foreclosure;

11) GMACM rescinded their Notice of Default after I sued them in California and federal court;

13) Neither GMACM, Bank of America, US Bank nor Ocwen has ever executed a legal contract with me, nor I with them as it relates to subject property.

In addition to each and every demanded stated in prior paragraphs, I require the following from you:

1. The ORIGINAL signed loan documents and other supporting documentation that gave rise to YOUR ability to take your proposed action.

2. A sworn Affidavit signed by the Person in Interest, under penalty of perjury:

    a) that your client is the bona fide party in interest of the loan documents and will produce said ORIGINAL signed loan documents (#1 above) for my own and a judge's inspection should there be a trial to contest these matters.

    b) the name and address of all persons, corporations, associations, legal firms or any other parties and entities having a bona fide need for protection as well as agency relationship disclosures naming all parties involved in affidavit form.

    d) that you know and understand that certain clauses in a contract of adhesion are unenforceable unless the party to whom the contract is extended could have selectively rejected the clause.

    f) and, that US BANK has taken reasonable and prudent diligence to verify that the amount claimed owed is in fact a legitimate debt prior to instigating this action and making said claims, and that all relevant correspondence has been reviewed prior to initiating this claim in accordance with the published 16-point guidelines from the CFPB.

**Notice of Request**

You cannot introduce yourself to me, demand that I send you any sum of money or insure any property which you don't have a secured interest, and not expect me to question your unreasonable behavior. As you are fully aware, I sued OCWEN's predecessor GMAC Mortgage, LLC for the same wrongdoing and fraudulent acts. I did not sue Balboa Insurance, though you can be assured that I challenged each and every one of their attempts to coerce me into the similar behavior. I will not comply with your demand. I demand that you Cease and Desist creating bills using my name or identity or be sued. As the "loan documents" were securitized in any trust it was done in violation of the Pooling and Servicing Agreement. According to U.S. Bank's brochure, I am the primary party to the MSB, or securitization. Under Glaski vs. Bank of America, I have standing to challenge you as a party to the securitization.

You did not identify your company as a debt collection agency on your November 9, 2013 letter but I suspect that you are one. If so, you are in violation of the Fair Debt Collection Practices Act. Please be advised that continued violation of the FDCPA and other federal and California state law will result in you being sued for each violation.

§ 807. False or misleading representations [15 USC 1692e]
(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, **and the failure to disclose in subsequent communications that the communication is from a debt collector,** except that this paragraph shall not apply to a formal pleading made in connection with a legal action.
(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

I don't know you. I have no contract with you or your parent company and you have no right to act on my behalf, collect or use my data, create any warrants, contracts or insurance products, or otherwise pretend you have a relationship with KAREN MICHELE ROZIER or KAREN MICHELE CHAPMAN. You have no contract with any entity with which I have ever contracted. **You are in violation of several federal and state laws by representing that you have any right to create any insurance product on my behalf.**

§ 807. False or misleading representations [15 USC 1692e]
(2) The false representation of (A) the character, amount, or legal status of any debt;

**Notice of Request**

California § 1788.13. No debt collector shall collect or attempt to collect a consumer debt by means of the following practices: (i) The false representation of the true nature of the business or services being rendered by the debt collector;

If instead you were merely attempting to intimidate me into paying you money not owed, please be advised that sort of behavior is also prohibited under California law.

§ 807. False or misleading representations [15 USC 1692e]
(7) The false representation or implication that the consumer committed any crime *or other conduct in order to disgrace the consumer*. [emphasis added]

California § 1788.13. No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:
(f) The false representation that information concerning a debtor's failure or alleged failure to pay a consumer debt has been or is about to be referred to a consumer reporting agency.

You will be deemed to have been served notice of my request and I will deem it served three (3) days from the date of this letter. This has been sent by certified mail as you sent your letter by certified mail. I am advising you that any communications from you including but not limited to letters, phone calls and email messages received after this date will be recorded/noted with the intention of them being used as evidence against you. Please be advised that violations of federal and California law are subject to penalties of up to $1,000 per occurrence.

§ 813. Civil liability [15 USC 1692k]
(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of --
(1) any actual damage sustained by such person as a result of such failure;
(2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000;
(d) An action to enforce any liability created by this title may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

**Notice of Request**

Finally, as you insist that you have an interest in a Deed of Trust executed by me on a property I legally transferred long before you acquired said interest, I demand that you cancel the Deed of Trust recorded in the Orange County Recorder's Office as instrument 2006000006922 on 01/04/06 at once or be sued for cancellation of false instrument/ or contract, forgery, fraud, unclean hands, slander, libel, and other violations as the evidence supports. You have ten (10) days from the date of this letter. You have been warned.

Sincerely and without ill will, vexation or frivolity,

Karen Michele Rozier, Without any admission of any liability whatsoever, and with all Natural, Inalienable, Rights reserved.

Enclosures:

   (1)  Original paperwork as received. Please keep your trash to yourself. Thank you.
   (2)  Response to First Insurance Demand
   (3)  Letter to Ocwen dated September 29, 2013
   (4)  Grant Deed Trust Transfer

**Notice of Request**

Attachment 1

# ATTACHMENT <u>1</u>



# 7957 Dahlia Cir, Buena Park, CA 90620

## Off Market

Zestimate: $1,371,690

Rent Zestimate: $3,700/mo

Est. Refi Payment: $5,202/mo

| | |
|---|---|
| **Bedrooms:** | 5 beds |
| **Bathrooms:** | 5 baths |
| **Single Family:** | 4,215 sq ft |
| **Lot:** | 8,276 sqft |
| **Year Built:** | 1999 |
| **Last Sold:** | Jul 1999 for $185,000 |
| **Heating Type:** | Forced air |

## Description

TAX RECORDS REFLECT THE TRUE SIZE OF HOME -- 4215 SQ FEET.

| **Cooling** | **Parking** | **Basement Type** |
|---|---|---|
| Central | Garage - Detached | Unknown |
| **Fireplace** | **Floor Covering** | **Attic** |
| No | Unknown | No |

## Features

| | | |
|---|---|---|
| Sauna | Security System | Skylight |
| Vaulted Ceiling | Garden | Hot Tub/Spa |
| Jetted Tub | Patio | Barbecue |
| Cable Ready | Ceiling Fan | Deck |
| Double Pane/Storm Windows | Fenced Yard | |

## Other

### Additional Features

central a/c with dual zone; indoor jacuzzi and gym; large media room; low utilities; ample light

| **Roof Type** | **Room Count** | **# Stories** |
|---|---|---|
| Built up | 15 | 2.0 |
| **Structure Type** | **Unit Count** | **Zillow Home ID** |
| Modern | 1 | 25244884 |
| **Heating** | **Last Remodel Year** | **Parcel #** |
| Gas | 2004 | 13624104 |
| **Covered Parking Spaces** | **Exterior Material** | |
| 2 | Stucco | |

## Map



Map data ©2014 Google

5/28/2014                          7957 Dahlia Cir, Buena Park, CA 90620 - Zillow

## Home Values

**Zestimate**
## $1,371,690
+$119,591  Last 30 days

$1.12M         $1.55M
Zestimate range

**Rent Zestimate**
## $3,700/mo
-$52   Last 30 days

$2.6K          $5.9K
Zestimate range

**Zestimate forecast**
To see Zestimate forecast

0
One year



This home    90620    Buena Park    🅢 last sold

## Price History

| Date | Event | Price | | $/sqft | Source |
|------|-------|-------|---|--------|--------|
| 09/26/12 | Sold: Foreclosure Auction | $348,500 | -46.4% | $82 | Public Record |
| 05/01/09 | Listing removed | $650,000 | | $154 | -- |
| 10/25/08 | Listed for sale | $650,000 | +251% | $154 | -- |

## Tax History

| Year | Property taxes | Change | Tax assessment | Change |
|------|----------------|--------|----------------|--------|
| 2013 | $3,975 | 2.8% | $392,355 | 13% |

## Home Design

Thinking remodel? See home

Estimate $87,500