UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
Manhattan
One Bowling Green
New York, NY 10004-1408


Attn: HONORABLE MARTIN GLENN UNITED STATES BANKRUPTCY JUDGE CASE # 12-12020 (MG)

RE: Borrower's motion, exhibits and pertinent documentation for your consideration to be review at the court's hearing scheduled for June 26, 2014 at 10:00 a.m.


June 2, 2014


Honorable Martin Glenn:

My name is Jorge Cerron and I am a borrower affected by GMAC Mortgage LLC., false allegations stated in this bankruptcy court. Please find enclosed my supplement to be incorporated as a part of my motion for relief from the automatic stay, (Document # 6863 of the court's dockets), for the case No. 12-12020(MG).

I am a pro se litigant and I am currently defending from a wrongful foreclosure case initiated by GMAC MORTGAGE LLC. In 2009, GMACM vs. Jorge Cerron CASE # 2009 CA 015793 NC at the circuit court in Sarasota Florida.

It is a hearing for my motion scheduled for June 26, at 10:00 a.m. at your honorable court which I will be attending by telephone conference, please find enclosed for your cordial consideration my motions, exhibits and documents to be review at the above hearing.


In the spirit of justice and with bounteous gratitude I remain.


Sincerely and Respectfully,


Jorge Cerron
P. O. Box 18902
Sarasota, Florida 34276.

RECEIVED
JUN - 3 2014
U.S. BANKRUPTCY COURT, SDNY

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC. et al. | Chapter 11 |
| Debtors | Jointly Administered |

BANKRUPTCY BORROWER JORGE CERRON'S SUPPLEMENT TO BE
INCORPORATED INTO BORROWER'S MOTION FOR RELIEF FROM THE AUTOMATIC
STAY (Document # 6863 of the court's dockets).

COMES NOW, the borrower JORGE CERRON and **REALLEGES** its claims included in
his Motion for Relief From Stay and add this supplemental in support of his objections and
motions states:

1. That Before this Court the borrower Jorge Cerron(the borrower) is summiting this motion
   (the "Motion") seeking relief from the automatic stay.
2. That the borrower is currently in a wrongful foreclosure action on a secured interest in the
   borrower's real property that GMAC Mortgage LLC, (GMACM) claims to be the holder
   and/or owner of the note and mortgage, .(GMACM IS ONE OF THE DEBTORS UDER
   RESIDENTIAL CAPITAL LLC.).
3. The borrower contests GMACM's standing before this court and that should not be entitle
   to the bankruptcy stay's protection.
4. That the borrower argues that the only interest GMACM holds in the underlying mortgage
   was received by way of an assignment from the Mortgage Electronic Registration System
   a/k/a MERS, as a "nominee" for the original lender GreenPoint Mortgage Funding Inc.,
   who went out of business in August 2007. (when an entity cease to exist its delegating
   power cease to exist) (see exhibit G copy of some pages of the mortgage , and exhibit B).
5. That the borrower's argument raises a fundamental question as to whether MERS had the
   legal authority to assign a valid and enforceable interest in the subject mortgage. Because
   GMACM's rights can be no greater than the rights as transferred by its assignor – MERS
6. The borrower argues that GMACM, has failed to establish that it holds an enforceable
   right against the Property.
7. That GMACM may argues that MERS's authority to assign the mortgage to GMACM is
   derived from the mortgage itself which allegedly grants to MERS its status as both
   "nominee" of the mortgagee and "mortgagee of record.".
8. However GMACM's argument has been already denied by *In re: Ferrel L. Agard* Case 8-10-
   77338-reg in the Bankruptcy Court in the Eastern District of New York. (see exhibit C)
9. That GMACM may argue that it have standing to seek relief from stay by virtue of a
   judgment of foreclosure and sale entered in its favor by the Florida state circuit court and
   that the judgment of foreclosure is a final adjudication and therefore the *Rooker-Feldman*
   doctrine prohibits this Court from looking behind the judgment and questioning whether

GMACM has proper standing before this Court by virtue of a valid assignment of the mortgage from MERS. (however the assignment is invalid see exhibit B)

10. However GMACM is wrong because the final judgment of foreclosure in favor of GMACM was reversed by the Second District Court of Appeal in Lakeland Florida.(please see exhibit A copy of the 2DCA's opinion and mandate)

11. That the Rooker-feldman doctrine, does not apply in this case, this action is not barred because the final judgment of foreclosure in this case was reversed therefore this court must accept the Florida state court reversal as evidence of GMACM's lack of standing.

12. That the borrower has disputed sufficient basis to lift the stay under section 362(d) the borrower allege into other things that GMACM lacks standing to seek the relief requested because MERS the purported assignor to GMACM, did not have authority to assign the Mortgage and therefore GMACM cannot establish that is a bona fide holder of a valid secured interest in the property the alleged GMACM's status as a secured creditor or holder of the note and mortgage, and that its standing to seek relief from the automatic stay is a nullity unenforceable does not exist.

13. That GMACM has perpetuated fraud by committing an illegal seizure/ slander of Title on the borrower's property's title and it has committed fraud by using fraudulent documentations an invalid assignment of mortgage/ a fabricated backdated assignment from MERS in order to obtain a judgment of foreclosure. (see exhibit B copy of the invalid assignment ).

14. That GMACM's final Summary judgment was obtained by *extrinsic* fraud and/or collusion. ("Extrinsic fraud involves the parties' 'opportunity to have a full and fair hearing), because GMACM's invalid, fabricated, backdated, non-verified signatures, assignment of mortgage (please see exhibit B) submitted to the lower court in Sarasota Florida has mislead the court's decision and by means of fraud GMACM obtained a foreclosure sale of the subject property, in said sale GMACM obtained the certificate of title on its name (see exhibit D copy of Certificate of Title) thus causing a slander of title and the illegal seizure of the borrower's property certificate of title, thus injuring the borrower, however the borrower was able to obtained from the 2 DCA a reversal of the said Final summary Judgment, (please refer to exhibit A), GMACM did not obey the Second District Court of appeal's Mandate (see exhibit E, copy of the order of the 2 DCA sent to GMACM requesting its answer why it has not reversed the certificate of title back to the Borrower)

15. That MERS have no standing and it is not recognized by this court case laws as an entity to perform a legal transfer of the note and mortgage (see exhibit C copy of the bankruptcy court's Memorandum Decision *In re: Ferrel L. Agard* Case 8-10-77338-reg in the Bankruptcy Court in the Eastern District of New York.)

16. That GMACM may argue that New York state agency laws, give MERS the authority to assign the mortgage. " and therefore it have standing before this court, however the state law is very clear it states; 11 U.S.C. § 101(5)(A). In the context of a lift stay motion where the movant is seeking to commence or continue with an action to foreclose a mortgage against real property, the movant must show that it is a "party in interest" by showing that it is a creditor with a security interest in the subject real property. *See Mims*, 438 B.R. at 57 (finding that as movant "failed to prove it owns the Note, it has failed to establish that it has standing to pursue its state law remedies with regard to the Mortgage and

Property"). *Cf. Brown Bark I L.P. v. Ebersole (In re Ebersole)*, 440 B.R. 690, 694 (Bankr. W.D. Va. 2010) (finding that movant seeking relief from stay must prove that it is the holder of the subject note in order to establish a 'colorable claim' which would establish standing to seek relief from stay).

17. GMACM's noteholder status is challenge by this motion the borrower alleges that GMACM is not the note holder of the subject note.

18. That the under New York law, GMACM can prove that is the holder of the Note by providing the Court with proof of a written assignment of the Note, or by demonstrating that it has physical possession of the Note endorsed over to it.

19. That the only written assignment presented to the Court is not an assignment of the Note but rather an Assignment of Mortgage" which contains a vague reference to the Note. Tagged to the end of the provisions which purport to assign the Mortgage, there is language in the Assignment stating " to certain mortgage: Not only is the language vague and insufficient to prove an intent to assign the Note, but MERS is not a party to the Note and the record is barren of any representation that MERS, the purported assignee, had any authority to take any action with respect to the Note. (see exhibit B copy of assignment)

20. Therefore, this Court should find that the Assignment of Mortgage is not sufficient to establish an effective assignment of the Note.

21. That GMACM could have demonstrated that is the holder of the Note if it can show that has physical possession of the Note endorsed to its name. *See In re Mims*, 423 B.R. at 56-57. (in this action GMACM failed to do so, please see exhibit F copy of the blank endorsed note which is also undated).

22. That According to the evidence presented in this matter the manner in which the MERS system is structured this Court has no evidentiary basis to find that the Note was endorsed to GMACM or that GMACM has physical possession of the Note. Therefore, this Court should find that GMACM has not satisfied its burden of showing that it is the holder of the Note.

23. That there are several published New York state trial level decisions holding that the status of "nominee" or "mortgagee of record" bestowed upon MERS in the mortgage documents, by itself, does not empower MERS to effectuate an assignment of the mortgage. These cases hold that MERS may not validly assign a mortgage based on its nominee status, absent some evidence of specific authority to assign the mortgage. *See Bank of New York v. Mulligan*, No. 29399/07, 2010 WL 3339452, at *7 (N.Y. Sup. Ct. Aug. 25, 2010); *One West Bank, F.S.B. v. Drayton*, 910 N.Y.S.2d 857, 871 (N.Y. Sup. Ct. 2010); *Bank of New York v. Alderazi*, 900 N.Y.S.2d 821, 824 (N.Y. Sup. Ct. 2010) (the "party who claims to be the agent of another bears the burden of proving the agency relationship by a preponderance of the evidence"); *HSBC Bank USA v. Yeasmin*, No. 34142/07, 2010 WL 2089273, at *3 (N.Y. Sup. Ct. May 24, 2010); *HSBC Bank USA v. Vasquez*, No. 37410/07, 2009 WL 2581672, at *3 (N.Y. Sup. Ct. Aug. 21, 2010); *LaSalle Bank N.A. v. Lamy*, 824 N.Y.S.2d 769, 2006 WL 2251721, at *2 (N.Y. Sup. Ct. Aug. 7, 2006) ("A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee."). *See also MERS v. Saunders*, 2 A.3d 289, 295 (Me. 2010) ("MERS's only right is to record the mortgage. Its designation as the 'mortgagee of record' in the document does not change or expand that right...").

24. That GMACM's failure to show that it holds the Note it is fatal to the GMACM's standing and to establish that it holds the Mortgage in order to prove that it is a secured creditor with standing before this Court.

25. That in *Bank of New York v. Alderazi*, the court found "[t]he fact that the borrower acknowledged and consented to MERS acting as nominee of the lender has no bearing on what specific powers and authority the lender granted MERS." *Alderazi*, 900 N.Y.S.2d at 824. Even if it did bestow some authority upon MERS, the court in *Alderazi* found that the mortgage did not convey the specific right to assign the mortgage. The Court agrees with the reasoning and the analysis in *Bouloute* and *Alderazi*, and the other cases cited herein and finds that the Mortgage, by naming MERS a "nominee," and/or "mortgagee of record" did not bestow authority upon MERS to assign the Mortgage.

26. Under New York agency laws, an agency relationship can be created by a "manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act." *Meisel v. Grunberg*, 651 F.Supp.2d 98, 110 (S.D.N.Y. 2009) (citing *N.Y. Marine & Gen. Ins. Co. v. Tradeline, L.L.C.*, 266 F.3d 112, 122 (2d Cir.2001)).

27. Because MERS's members, the beneficial noteholders, purported to bestow upon MERS interests in real property sufficient to authorize the assignments of mortgage, the alleged agency relationship must be committed to writing by application of the statute of frauds. Section 5- 703(2) of the New York General Obligations Law states that: An estate or interest in real property, other than a lease for a term not exceeding one year, or any trust or power, over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same, *or by his lawful agent, thereunto authorized by writing*. See N.Y. Gen. Oblig. Law § 5-703(1) (McKinney 2011); *Republic of Benin v. Mezei*, No. 06 Civ. 870 (JGK), 2010 WL 3564270, at *3 (S.D.N.Y. Sept. 9, 2010); *Urgo v. Patel*, 746 N.Y.S.2d 733 (N.Y. App. Div. 2002) (finding that unwritten apparent authority is insufficient to satisfy the statute of frauds) (citing *Diocese of Buffalo v. McCarthy*, 91 A.D.2d 1210 (4th Dept. 1983)); *see also* N.Y. Gen. Oblig. Law § 5-1501 (McKinney 2011) ("'agent' means a person granted authority to act as attorney-in-fact for the principal under a power of attorney. . .").

28. That GMACM may argue for this Court to liberally interpret the laws of agency and find that MERS's agreement may take any form "desired by the parties concerned." However, this does not free GMACM or MERS from the constraints of applicable agency laws.

29. However, the fact that MERS is named "nominee" in the Mortgage is not dispositive of the existence of an agency relationship and does not, in and of itself, give MERS any "authority to act." *See Steinbeck v. Steinbeck Heritage Foundation*, No. 09-18360cv, 2010 WL 3995982, at *2 (2d Cir. Oct. 13, 2010) (finding that use of the words "attorney in fact" in documents can constitute evidence of agency but finding that such labels are not dispositive); *MERS v. Saunders*, 2 A.3d 289, 295 (Me. 2010) (designation as the 'mortgagee of record' does not qualify MERS as a "mortgagee").

30. That this Court will find that the record of this case is insufficient to prove that an agency relationship exists under the laws of the state of New York between MERS and its members.

31. That, it is notable in this case that the Assignment of Mortgage was by MERS, *as nominee for GreenPoint Mortgage Funding Inc.,*, the original lender. (Please see exhibit G, copy of pertinent pages of said mortgage showing GREENPOINT as the original lender) By the GMACM's and MERS's own admission, at the time the assignment was effectuated, (refer to exhibit B) GreenPoint Mortgage Funding Inc., held any interest in the Note or mortgage, GreenPoint closed for business on August 2007, (please see exhibit H copy of a news release showing that GreePoint closed), and the alleged assignment of mortgage took place on **November** 10, 2009, and GMACM filed its foreclosure complaint in the circuit court of Sarasota, Florida under case # 2009 CA 015793 NC, on September 14, 2009, (please see exhibit i copy of the Lis Pendens and GMACM complaint) which clearly shows that GMACM did not have standing at the inception of its lawsuit. (GMACM's complaint only attachments enclosed were the copy of the mortgage and a collection letter please see exhibit J copy of the collection letter) Both GMAC and MERS have represented to the Court that subsequent to the origination of the loan, on September 10, 2009 the Note was assigned, through the MERS tracking system, from GreenPoint Mortgage Funding Inc. to GMACM. Accordingly, at the time that MERS, *as nominee of GREENPOINT*, assigned the interest in the Mortgage to GMACM, GreenPoint Mortgage Funding Inc. no longer had any rights to the Note or the Mortgage and it was closed for business (refer to exhibit H)

32. That the documentation provided by GMACM to this Court in this case, is stunningly *inconsistent* with what GMACM define as the facts of this case.

33. As per the New York state law and the abundantly case law submitted this Court should find that MERS did not have authority, as "nominee" or agent, to assign the Mortgage absent a showing that it was given specific written directions by its principal

34. That GMACM's theory that MERS can act as a "common agent" for undisclosed principals is not support by the law. The relationship between MERS and its lenders and its distortion of its alleged "nominee" status was appropriately described by the Supreme Court of Kansas as follows: "The parties appear to have defined the word [nominee] in much the same way that the blind men of Indian legend described an elephant – their description depended on which part they were touching at any given time." *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 166-67 (Kan. 2010).

35. The added fact ( to all of the above), that GMACM has unlawfully kept the certificate of title for the subject property in its name which GMACM obtained by an unlawful foreclosure judgment that was reversed by the Second District Court of Appeal., shows that GMACM has not obeyed the direct court's order mandating the reversal of said certificate of title and also shows GMACM's track of unlawful behavior and disregard of the law and the Judicial System.(please refer to exhibits A,D, and E)

36. That as stated in the Memorandum decision issued in *In re: Ferrel L. Agard* Case 8-10-77338-reg in the Bankruptcy Court in the Eastern District of New York, (please refer to exhibit C page 36, last paragraph which continue in page 37), the Hon. Robert E. Grossman United States Bankruptcy Judge stated "**in all future cases which involve MERS, the moving party must show that it validly holds both the mortgage and the underlying note in order to prove standing before this Court**".

Therefore for all of the foregoing reasons, this Court should find that the borrower's Motion in this case should be granted.

WHEREFORE, the borrower Jorge Cerron request to this court to enter an order granting his Motion for the relief from the automatic stay, and for this honorable court to rule that;

    a. To declare that GMACM have not standing to seek the remedy of stay in this Bankruptcy court for the borrower's property.
    b. To declare that MERS's assignment of Mortgage does not convey standing to GMACM and that MERS assignment is invalid.
    c. To declare that indication of fraud on the assignment of mortgage submitted by GMACM is evident.
    d. To declare that the wrongful foreclosure action in the circuit court of Sarasota Florida must be dismiss.
    e. To declare a quite title in favor of the borrower Jorge Cerron, for being a just remedy of law to GMAC'S slander of title and illegal seizure of the borrower's certificate of title for the subject property.
    f. And or other reliefs that this court finds just.

### CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the forgoing has been furnished by certify return receipt U. S mail to the law offices of WOLFE & WYMAN LLP. Litigation Counsel to the Debtors and Debtors in Possession 11811 N. Tatum, Suite 3031 Phoenix, AZ 85028 ATTN: Colt B. Dodrill, Esq., on this 2nd day of June, 2014.

### CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the forgoing has been furnished by certify return receipt U. S mail to the law offices of MORRISON & FOERSTER Counsel for Residential Capital, LLC, et al. at 1290 Avenue of the Americas New York, NY 10104 ATTN: Norman S. Rosenbaum, Esq., on this 2nd day of June, 2014.

        Respectfully submitted,

        Jorge Cerron
        P.O. Box 18902
        Sarasota, Florida, 34276.

SERVICE LIST

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
Manhattan
One Bowling Green
New York, NY 10004-1408
Attn: Clerk of the Court /to file in Case No. 12-12020 (MG) RESIDENTIAL CAPITAL, LLC. et al. Chapter 11

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
Manhattan
One Bowling Green
New York, NY 10004-1408
Attn: HONORABLE MARTIN GLENN UNITED STATES BANKRUPTCY JUDGE

MORRISON & FOERSTER
Counsel for Residential Capital, LLC, et al.
1290 Avenue of the Americas
New York, NY 10104
ATTN: Norman S. Rosenbaum, Esq.

WOLFE & WYMAN LLP
Litigation Counsel to the Debtors and Debtors in Possession
11811 N. Tatum, Suite 3031
Phoenix, AZ 85028
By: Colt B. Dodrill, Esq.

The following exhibits and documents are enclosed;

EXHIBITS

Exhibit A, copy of the Second District Court of Appeal's opinion and mandate.

Exhibit B, copy of the invalid, fabricated backdated, non-verified signatures assignment of mortgage from MERS to GMACM.

Exhibit C, Memorandum Decision 37 pages of *In re: Ferrel L. Agard* Case 8-10-77338-reg in the Bankruptcy Court in the Eastern District of New York,

Exhibit D, Certificate of Title issued to GMACM, which it never reversed.

Exhibit E, Second District Court of Appeal's recent order, mandating GMACM to reverse the subject property's Certificate of Title

Exhibit F, copy of the subject note showing that it is blank endorsed and undated, and that does not convey interest to GMACM

Exhibit G, pertinent pages of the subject mortgage showing GREENPOINT as the original lender.

Exhibit H, copy of news release paper showing that GREENPOINT is closed in August 2007.

Exhibit i, copy of the Lis Pendens and complaint filed by GMACM on 9/14/2009 at the circuit court in Sarasota, FL., for case # 2009 CA 015793 NC.

Exhibit J, copy of the collection letter attached to GMACM's complaint.

Also for your consideration herein enclosed are the following documents;

Document numbered number 1, copy of pertinent page of GMACM''s allegations of its automatic stay protection and its allegations that the borrower Jorge Cerron's loan were either included in the sale or Ocwen Loan Servicing LLC., was made the sub-servicer of borrower's loan

Document numbered number 2, copy of BORROWER'S LETTER TO RESCIND sent to GMACM and copy of the US mail return receipt.

Document numbered number 3, copy of the circuit court's order denying GMACM''s request to trial only the issue of its failure to service the default notice. (GMCM was trying to avoid its issue of lack of standing).

Pg 1 of 4                     Exhibet "A"

# M A N D A T E

**from**

## DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA

### SECOND DISTRICT

THIS CAUSE HAVING BEEN BROUGHT TO THIS COURT BY APPEAL,
AND AFTER DUE CONSIDERATION THE COURT HAVING ISSUED ITS OPINION;

YOU ARE HEREBY COMMANDED THAT SUCH FURTHER PROCEEDINGS

BE HAD IN SAID CAUSE , IF REQUIRED, IN ACCORDANCE WITH THE OPINION OF

THIS COURT ATTACHED HERETO AND INCORPORATED AS PART OF THIS

ORDER, AND WITH THE RULES OF PROCEDURE AND LAWS OF THE STATE OF

FLORIDA.

WITNESS THE HONORABLE MORRIS SILBERMAN CHIEF JUDGE OF THE

DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA, SECOND DISTRICT,

AND THE SEAL OF THE SAID COURT AT LAKELAND, FLORIDA ON THIS DAY.

DATE: August 7, 2012

SECOND DCA CASE NO. 2D11-3425

COUNTY OF ORIGIN:   Sarasota

LOWER TRIBUNAL CASE NO. 2009 CA 015793 NC

CASE STYLE:   JORGE A. CERRON        v.   G M A C MORTGAGE, L L C

FILED FOR RECORD
2012 AUG -8 PM 3: 08
KAREN E RUSHING
CLERK OF CIRCUIT COURT
SARASOTA COUNTY FL



*James Birkhold*
James Birkhold
Clerk



cc: (Without Attached Opinion)
Jorge A. Cerron               Marc James Ayers, Esq.

me

*Page 2 of 4*          *Part of Exhibit A*          

## NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
## MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JORGE A. CERRON,                          )
                                          )
          Appellant,                      )
                                          )
v.                                        )          Case No. 2D11-3425
                                          )
GMAC MORTGAGE, LLC,                       )
                                          )
          Appellee.                       )
                                          )

Opinion filed July 18, 2012.

Appeal from the Circuit Court for Sarasota
County; Charles E. Roberts, Judge.

Jorge A. Cerron, pro se.

Marc James Ayers and Jose D. Vega of
Bradley Arant Boult Cummings LLP,
Birmingham, Alabama, for Appellee.


NORTHCUTT, Judge.

          Jorge Cerron, pro se, appeals a final summary judgment of foreclosure on

a mortgage in favor of GMAC Mortgage, LLC, the successor to the original lender. We

reverse because GMAC failed to refute Cerron's affirmative defense alleging lack of

notice.

          GMAC filed a complaint seeking to foreclose a mortgage given by Cerron,

and it alleged generally that all conditions precedent to acceleration had been

P3 3 of 4    Part of Exhibit "A"

performed or had occurred. The complaint attached a copy of the mortgage, paragraph 22 of which required the lender to give thirty days' written notice of default prior to acceleration. Cerron filed a pro se answer, which was not a model pleading. The answer set forth several pages of narrative in opposition to the foreclosure complaint and then alleged four affirmative defenses. The first affirmative defense asserted that GMAC failed to give timely notice of default and of the lender's intent to accelerate as required by the mortgage, note, and Florida law. Cerron's answer included a plea for the court to dismiss the action.

GMAC subsequently filed a motion for summary judgment and asserted, in part, that Cerron's affirmative defenses were legally insufficient. In support of its motion, GMAC filed an affidavit setting forth the amounts due and owing and an affidavit regarding attorney's fees and costs. It subsequently filed a notarized, recorded document recounting that the mortgage had been assigned to GMAC on a date just prior to the filing of the complaint. GMAC also filed the note that was indorsed in blank. None of GMAC's filings specifically addressed or refuted Cerron's affirmative defenses.

The circuit court denied Cerron's motion to dismiss and directed him to file an amended answer, which he did. In the amended answer, Cerron specifically alleged as his seventh affirmative defense that GMAC failed to give a notice of default and that it thus failed to comply with a contractual condition precedent. GMAC filed updated affidavits of amounts due and attorney's fees, but it never addressed Cerron's affirmative defenses, either by affidavit or by memorandum in support of summary judgment.

- 2 -

*Pg 4 of 4   Part of Exhibit "A"*

On appeal, Cerron argues that the circuit court erred in granting summary judgment when GMAC failed to refute his affirmative defenses. Based on our de novo review of the summary judgment, we agree. See Taylor v. Bayview Loan Servicing, LLC, 74 So. 3d 1115, 1117 (Fla. 2d DCA 2011) ("The standard of review on a summary judgment is de novo."). The party moving for summary judgment must show that there are no disputed issues of material fact and that it is entitled to judgment as a matter of law. Id. at 1116-17 (citing Fla. R. Civ. P. 1.150(c)). In addition, a plaintiff moving for summary judgment must refute the nonmoving party's affirmative defenses. Id.; see also Coral Wood Page, Inc. v. GRE Coral Wood, LP, 71 So. 3d 251, 253 (Fla. 2d DCA 2011).

On appeal, GMAC maintains that Cerron had the burden to file an affidavit stating that he never received a notice of default, at which point GMAC would have been required to refute the contention with contrary evidence. That is incorrect. A plaintiff moving for summary judgment must either conclusively refute the factual bases for the defendant's affirmative defenses or show that the defenses are legally insufficient. Coral Wood Page, 71 So. 3d at 253. As in Taylor and Konsulian v. Busey Bank, N.A., 61 So. 3d 1283 (Fla. 2d DCA 2011), when Cerron alleged GMAC's failure to provide a contractually required notice of default, GMAC's burden on summary judgment was to show that it had satisfied this condition precedent. It failed to do so.

Reversed and remanded.


SILBERMAN, C.J., and CRENSHAW, J., Concur.


-3-

B 1 of 2        Exhibit "B"    

## IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
## IN AND FOR SARASOTA COUNTY, FLORIDA
## CIVIL ACTION

GMAC MORTGAGE, LLC,
    Plaintiff,

vs.

                                   **CASE NO. 2009 CA 015793 NC**
                                    **DIVISION**

JORGE A. CERRON , et al,
    Defendant(s).
_____/

### NOTICE OF FILING

    Plaintiff, GMAC MORTGAGE, LLC, gives Notice of Filing of Copy of Assignment of Mortgage.

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail to all parties listed on the attached service list on this __22__ day of March, 2010.

                             Florida Default Law Group, P.L.
                             P.O. Box 25018
                             Tampa, Florida 33622-5018
                             (813) 251-4766

                             By: _____
                             Erik DeL'Etoile
                             Florida Bar No. 71675
                             Robert Schneider
                             Florida Bar No. 52854
                             Tamara M. Waiters
                             Florida Bar No. 922951

FILE_NUMBER: F09095434



DOC_ID: M003100

Pg 2.A2 Part of Exhibit "B"

RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2009161516 1 PG
2009 DEC 31 11:39 AM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FLORIDA
CEAGLETO    Receipt#1235704

# ASSIGNMENT OF MORTGAGE



2009151516

FOR VALUE RECEIVED, on or before September 09, 2009, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ("Assignor") whose address is _____ assigned, transferred and conveyed to: GMAC MORTGAGE, LLC, ("Assignee") whose address is 1100 Virginia Drive, , Fort Washington, PA 19034, its successors and/or assigns, all of the right, title, and interest of Assignor in and to that certain Mortgage (the "Mortgage") dated March 01, 2006 and recorded March 16, 2006 in Official Records Book 2006043901 at Page __ of the public records of SARASOTA County, Florida, encumbering the following-described real property:

> UNIT G-1, BEACH WAY APARTMENTS, A CONDOMINIUM AS PER DECLARATION OF CONDOMINIUM RECORDED IN OFFICIAL RECORDS BOOK 846, PAGES 731 ET SEQ., AND ALL AMENDMENTS THERETO, AND AS PER CONDOMINIUM PLAT RECORDED IN CONDOMINIUM BOOK 4, PAGES 6 ET SEQ., AND ALL AMENDMENTS THERETO, OF THE PUBLIC RECORDS OF SARASOTA COUNTY, FLORIDA. TOGETHER WITH ANY AND ALL AMENDMENTS TO THE DECLARATION AND ANY UNDIVIDED INTEREST IN THE COMMON ELEMENTS OR APPURTENANCES THERETO.

as the same may have been amended from time to time; together with the Note and indebtedness secured thereby.

MORTGAGOR(S): JORGE A. CERRON

IN WITNESS WHEREOF, Assignor has executed and delivered this instrument on _____, 2009.

By: _____
Print Name: _____    Jeffrey Stephan
Title: Vice President    Vice President

Witness
Print Name _____

Attest: _____
Print Name: _____    BRENDA STAHER
Title: _____    Vice President

Witness
Print Name: Willie Walton

(Affix Corporate Seal)

STATE OF PA
COUNTY OF Montgomery

BEFORE ME, the undersigned, personally appeared Jeffrey Steohan
and Brenda Staehle    as VP and VP
respectively, and known to me to be the persons that executed the foregoing instrument, and acknowledged that they executed the foregoing as its duly authorized officers and that such execution was done as the free act and deed of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC. this 10 day of NOV, 2009.

_____
Notary Public
My commission expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Trina Williams, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Sept. 10, 2010
Member, Pennsylvania Association of Notaries

Recording requested by, prepared by and return to:
Anabell Aruz
Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
F09095434-GMAC MORTGAGE, LLC.

FILE_NUMBER: F09095434

DOC_ID: M001100

# *F09095434*    *M001100*

Page 1 of 37    PART OF EXHIBIT "C"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
In re:

FERREL L. AGARD,

                       Debtor.

--------------------------------------------------------------------x

Case No. 810-77338-reg

Chapter 7

## MEMORANDUM DECISION

      Before the Court is a motion (the "Motion") seeking relief from the automatic stay

pursuant to 11 U.S.C. § 362(d)(1) and (2), to foreclose on a secured interest in the Debtor's real

property located in Westbury, New York (the "Property"). The movant is Select Portfolio

Servicing, Inc. ("Select Portfolio" or "Movant"), as servicer for U.S. Bank National Association,

as Trustee for First Franklin Mortgage Loan Trust 2006-FF12, Mortgage Pass-Through

Certificates, Series 2006-FF12 ("U.S. Bank"). The Debtor filed limited opposition to the Motion

contesting the Movant's standing to seek relief from stay. The Debtor argues that the only

interest U.S. Bank holds in the underlying mortgage was received by way of an assignment from

the Mortgage Electronic Registration System a/k/a MERS, as a "nominee" for the original

lender. The Debtor's argument raises a fundamental question as to whether MERS had the legal

authority to assign a valid and enforceable interest in the subject mortgage. Because U.S. Bank's

rights can be no greater than the rights as transferred by its assignor -- MERS -- the Debtor argues

that the Movant, acting on behalf of U.S. Bank, has failed to establish that it holds an

enforceable

Page 2 of 37   Part of Exhibit "C"

right against the Property.[1] The Movant's initial response to the Debtor's opposition was that

MERS's authority to assign the mortgage to U.S. Bank is derived from the mortgage itself which

allegedly grants to MERS its status as both "nominee" of the mortgagee and "mortgagee of

record." The Movant later supplemented its papers taking the position that U.S. Bank is a

creditor with standing to seek relief from stay by virtue of a judgment of foreclosure and sale

entered in its favor by the state court prior to the filing of the bankruptcy. The Movant argues

that the judgment of foreclosure is a final adjudication as to U.S. Bank's status as a secured

creditor and therefore the *Rooker-Feldman* doctrine prohibits this Court from looking behind the

judgment and questioning whether U.S. Bank has proper standing before this Court by virtue of a

valid assignment of the mortgage from MERS.

The Court received extensive briefing and oral argument from MERS, as an intervenor in

these proceedings which go beyond the arguments presented by the Movant. In addition to the

rights created by the mortgage documents themselves, MERS argues that the terms of its

membership agreement with the original lender and its successors in interest, as well as New

York state agency laws, give MERS the authority to assign the mortgage. MERS argues that it

holds legal title to mortgages for its member/lenders as both "nominee" and "mortgagee of

---

[1]    The Debtor also questions whether Select Portfolio has the authority and the standing to seek relief from the automatic stay. The Movant argues that Select Portfolio has standing to bring the Motion based upon its status as "servicer" of the Mortgage, and attaches an affidavit of a vice president of Select Portfolio attesting to that servicing relationship. Caselaw has established that a mortgage servicer has standing to seek relief from the automatic stay as a party in interest. *See, e.g., Greer v. O'Dell*, 305 F.3d 1297 (11th Cir. 2002); *In re Woodberry*, 383 B.R. 373 (Bankr. D.S.C. 2008). This presumes, however, that the lender for whom the servicer acts validly holds the subject note and mortgage. Thus, this Decision will focus on whether U.S. Bank validly holds the subject note and mortgage.

*Page 3 of 37    Part of Exhibit "C"*

record." As such, it argues that any member/lender which holds a note secured by real property, that assigns that note to another member by way of entry into the MERS database, need not also assign the mortgage because legal title to the mortgage remains in the name of MERS, as agent for any member/lender which holds the corresponding note. MERS's position is that if a MERS member directs it to provide a written assignment of the mortgage, MERS has the legal authority, as an agent for each of its members, to assign mortgages to the member/lender currently holding the note as reflected in the MERS database.

For the reasons that follow, the Debtor's objection to the Motion is overruled and the Motion is granted. The Debtor's objection is overruled by application of either the *Rooker-Feldman* doctrine, or *res judicata*. Under those doctrines, this Court must accept the state court judgment of foreclosure as evidence of U.S. Bank's status as a creditor secured by the Property. Such status is sufficient to establish the Movant's standing to seek relief from the automatic stay. The Motion is granted on the merits because the Movant has shown, and the Debtor has not disputed, sufficient basis to lift the stay under Section 362(d).

Although the Court is constrained in this case to give full force and effect to the state court judgment of foreclosure, there are numerous other cases before this Court which present identical issues with respect to MERS and in which there have been no prior dispositive state court decisions. This Court has deferred rulings on dozens of other motions for relief from stay pending the resolution of the issue of whether an entity which acquires its interests in a mortgage by way of assignment from MERS, as nominee, is a valid secured creditor with standing to seek relief from the automatic stay. It is for this reason that the Court's decision in this matter will address the issue of whether the Movant has established standing in this case notwithstanding the

*Page 4 of 37    Part of Exhibit "C"*

existence of the foreclosure judgment. The Court believes this analysis is necessary for the precedential effect it will have on other cases pending before this Court.

The Court recognizes that an adverse ruling regarding MERS's authority to assign mortgages or act on behalf of its member/lenders could have a significant impact on MERS and upon the lenders which do business with MERS throughout the United States. However, the Court must resolve the instant matter by applying the laws as they exist today. It is up to the legislative branch, if it chooses, to amend the current statutes to confer upon MERS the requisite authority to assign mortgages under its current business practices. MERS and its partners made the decision to create and operate under a business model that was designed in large part to avoid the requirements of the traditional mortgage recording process. This Court does not accept the argument that because MERS may be involved with 50% of all residential mortgages in the country, that is reason enough for this Court to turn a blind eye to the fact that this process does not comply with the law.

### Facts

### Procedural Background

On September 20, 2010, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. In Schedule A to the petition, the Debtor lists a joint ownership interest in the Property described as follows:

> A "[s]ingle family home owned with son, deed in son's name since 2007; used as primary residence . . . . Debtor was on original deed and is liable on the mortgage, therefore has equitable title. Debtor is in default of the mortgage with a principal balance of over $450,000.00. The house is worth approximately $350,000. A

Page 4 of 37

Page 5 of 37   Part of Exhibit "C"

foreclosure sale was scheduled 9/21/10."

According to Schedule D, the Property is valued at $350,000 and is encumbered by a mortgage

in the amount of $536,920.67 held by "SPS Select Portfolio Servicing."

On October 14, 2010, the Movant filed the Motion seeking relief from the automatic stay

pursuant to 11 U.S.C. §362(d) to foreclose on the Property. The Motion does not state that a

foreclosure proceeding had been commenced or that a judgment of foreclosure was granted prior

to the filing of the bankruptcy petition. Nor does it mention that the Debtor holds only equitable

title and does not hold legal title to the Property. Instead, Movant alleges that U.S. Bank is the

"holder" of the Mortgage; that the last mortgage payment it received from the Debtor was

applied to the July, 2008 payment; and that the Debtor has failed to make any post-petition

payments to the Movant. Movant also asserts that as of September 24, 2010, the total

indebtedness on the Note and Mortgage was $542,902.33 and the Debtor lists the value of the

Property at $350,000 in its schedules. On that basis, Movant seeks entry of an order vacating the

stay pursuant to 11 U.S.C. § 362(d)(1) and (d)(2).

Annexed to the Motion are copies of the following documents:

- Adjustable Rate Note, dated June 9, 2006, executed by the Debtor as borrower and listing First Franklin a Division of Na. City Bank of In. ("First Franklin") as the lender ("Note");

- Balloon Note Addendum to the Note, dated June 9, 2006;

- Mortgage, dated June 9, 2006 executed by the Debtor and listing First Franklin as lender, and MERS as nominee for First Franklin and First Franklin's successors and assigns ("Mortgage");

- Adjustable Rate and Balloon Rider, dated June 9, 2006;

- Addendum to Promissory Note and Security Agreement executed by the Debtor; and

*Page 6 of 37 Part of Exhibit "C"*

- Assignment of Mortgage, dated February 1, 2008, listing MERS as nominee for First
  Franklin as assignor, and the Movant, U.S. Bank National Association, as Trustee for
  First Franklin Mortgage Loan Trust 2006- FF12, Mortgage Pass-through Certificates,
  Series 2006-FF12, as assignee ("Assignment of Mortgage").

### *The Arguments of the Parties*

On October 27, 2010, the Debtor filed "limited opposition" to the Motion, alleging that

the Movant lacks standing to seek the relief requested because MERS, the purported assignor to

the Movant, did not have authority to assign the Mortgage and therefore the Movant cannot

establish that it is a bona fide holder of a valid secured interest in the Property.

The Movant responded to the Debtor's limited opposition regarding MERS's authority to

assign by referring to the provisions of the Mortgage which purport to create a "nominee"

relationship between MERS and First Franklin. In conclusory fashion, the Movant states that it

therefore follows that MERS's standing to assign is based upon its nominee status.

On November 15, 2010, a hearing was held and the Court gave both the Debtor and

Movant the opportunity to file supplemental briefs on the issues raised by the Debtor's limited

opposition.

On December 8, 2010, the Movant filed a memorandum of law in support of the Motion

arguing that this Court lacks jurisdiction to adjudicate the issue of whether MERS had authority

to assign the Mortgage, and even assuming the Court did have jurisdiction to decide this issue,

under New York law the MERS assignment was valid. In support of its jurisdictional argument,

the Movant advises the Court (for the first time) that a Judgement of Foreclosure and Sale

("Judgment of Foreclosure") was entered by the state court in favor of the Movant on November

24, 2008, and any judicial review of the Judgment of Foreclosure is barred by the doctrines of

*Page 7 of 37   Part of Exhibit "C"*

res judicata, *Rooker-Feldman,* and judicial estoppel.[2] The Movant argues that the Debtor had a

full and fair opportunity to litigate these issues in state court, but chose to default, and cannot

now challenge the state court's adjudication as to the Movant's status as a secured creditor or

holder of the Note and Mortgage, or its standing to seek relief from the automatic stay in this

Court. The Movant also notes that the Debtor admits in her petition and schedules that she is

liable on the Mortgage, that it was in default and the subject of a foreclosure sale, and thus

judicial estoppel bars her arguments to the contrary.

In addition to its preclusion arguments, on the underlying merits of its position the

Movant cites to caselaw holding that MERS assignments similar to the assignment in this case,

are valid and enforceable. *See U.S. Bank, N.A. v. Flynn,* 897 N.Y.S. 2d 855, 858 (N.Y. Sup. Ct.

2010); *Kiah v. Aurora Loan Services, LLC,* 2010 U.S. Dist. LEXIS 121252, at *1 (D. Mass. Nov.

16, 2010); *Perry v. Nat'l Default Servicing Corp.,* 2010 U.S. Dist. LEXIS 92907, at *1 (Dist.

N.D. Cal. Aug. 20, 2010). It is the Movant's position that the provisions of the Mortgage grant

to MERS the right to assign the Mortgage as "nominee," or agent, on behalf of the lender, First

Franklin. Specifically, Movant relies on the recitations of the Mortgage pursuant to which the

"Borrower" acknowledges that MERS holds bare legal title to the Mortgage, but has the right

"(A) to exercise any or all those rights, including, but not limited to, the right to foreclose and

---

[2]

     The Judgment of Foreclosure names the Debtor and an individual, Shelly English, as
defendants. Shelly English is the Debtor's daughter-in-law. At a hearing held on
December 13, 2010, the Debtor's counsel stated that he "believed" the Debtor transferred
title to the Property to her son, Leroy English, in 2007. This is consistent with
information provided by the Debtor in her petition and schedules. Leroy English,
however, was not named in the foreclosure action. No one in this case has addressed the
issue of whether the proper parties were named in the foreclosure action. However,
absent an argument to the contrary, this Court can only presume that the Judgment of
Foreclosure is a binding final judgment by a court of competent jurisdiction.

*Page 8 of 37   Part of Exhibit "C"*

sell the Property; and (B) to take any action required of Lender including, but not limited to, releasing and canceling [the Mortgage]." In addition, the Movant argues that MERS's status as a "mortgagee" and thus its authority to assign the Mortgage is supported by the New York Real Property Actions and Proceedings Law ("RPAPL") and New York Real Property Law ("RPL"). Movant cites to RPAPL § 1921-a which allows a "mortgagee" to execute and deliver partial releases of lien, and argues that MERS falls within the definition of "mortgagee" which includes the "current holder of the mortgage of record . . . or . . . their . . . agents, successors or assigns." N.Y. Real Prop. Acts. Law § 1921(9)(a) (McKinney 2011). Although the definition of "mortgagee" cited to by the Movant only applies to RPAPL § 1921, Movant argues that it is a "mortgagee" vested with the authority to execute and deliver a loan payoff statement; execute and deliver a discharge of mortgage and assign a mortgage pursuant to RPL §§ 274 and 275.

In addition to its status as "mortgagee," Movant also argues that the assignment is valid because MERS is an "agent" of each of its member banks under the general laws of agency in New York, *see* N.Y. Gen. Oblig. Law § 5-1501(1) (McKinney 2011),[3] and public policy requires the liberal interpretation and judicial recognition of the principal-agent relationship. *See Arens v. Shainswitt*, 37 A.D.2d 274 (N.Y. App. Div. 1971), *aff'd* 29 N.Y.2d 663 (1971). In the instant case, Movant argues, the Mortgage appoints MERS as "nominee," read "agent," for the original

---

[3]     Movant cites to New York General Obligations Law for the proposition that "an agency agreement may take any form 'desired by the parties concerned.'" The direct quote "desired by the parties concerned" seems to be attributed to the General Obligations Law citation, however, the Court could find no such language in the current version of § 5-1501(1). That provision, rather, defines an agent as "a person granted authority to act as attorney-in-fact for the principal *under a power of attorney*, and includes the original agent and any co-agent or successor agent. Unless the context indicates otherwise, an 'agent' designated in a power of attorney shall mean 'attorney-in-fact' for the purposes of this title. An agent acting under a power of attorney has a fiduciary relationship with the principal." N.Y. Gen. Oblig. Law § 5-1501(1) (McKinney 2011) (emphasis added).

Page 8 of 37

*Page 9 of 37    Part of Exhibit "C"*

lender and the original lender's successors and assigns. As nominee/agent for the lender, *and* as

mortgagee of record, Movant argues MERS had the authority to assign the Mortgage to the

Movant, U.S. Bank, "in accordance with the principal's instruction to its nominee MERS, to

assign the mortgage lien to U.S. Bank . . . ."

Finally, Movant argues that even absent a legally enforceable assignment of the

Mortgage, it is entitled to enforce the lien because U.S. Bank holds the Note. The Movant

argues that if it can establish that U.S. Bank is the legal holder the Note, the Mortgage by

operation of law passes to the Movant because the Note and the Mortgage are deemed to be

inseparable. *See In re Conde-Dedonato*, 391 B.R. 247 (Bankr. E.D.N.Y. 2008). The Movant

represents, but has not proven, that U.S. Bank is the rightful holder of the Note, and further

argues that the assignment of the Note has to this point not been contested in this proceeding.

MERS moved to intervene in this matter pursuant to Fed. R. Bankr. P. 7024 because:

> 12. The Court's determination of the MERS Issue directly affects the business model of MERS. Additionally, approximately 50% of all consumer mortgages in the United States are held in the name of MERS, as the mortgagee of record.
>
> 13. The Court's determination of the MERS Issue will have a significant impact on MERS as well as the mortgage industry in New York and the United States.
>
> 14. MERS has a direct financial stake in the outcome of this contested matter, and any determination of the MERS Issue has a direct impact on MERS.

(Motion to Intervene, ¶¶12-14).

Permission to intervene was granted at a hearing held on December 13, 2010.

In addition to adopting the arguments asserted by the Movant, MERS strenuously

defends its authority to act as mortgagee pursuant to the procedures for processing this and other

mortgages under the MERS "system." First, MERS points out that the Mortgage itself

*Page 10 of 37 Part of Exhibit "C"*

designates MERS as the "nominee" for the original lender, First Franklin, and its successors and

assigns. In addition, the lender designates, and the Debtor agrees to recognize, MERS "as the

mortgagee of record and as nominee for 'Lender and Lender's successors and assigns'" and as

such the Debtor "expressly agreed without qualification that MERS had the right to foreclose

upon the premises as well as exercise any and all rights as nominee for the Lender." (MERS

Memorandum of Law at 7). These designations as "nominee," and "mortgagee of record," and

the Debtor's recognition thereof, it argues, leads to the conclusion that MERS was authorized as

a matter of law to assign the Mortgage to U.S. Bank.

Although MERS believes that the mortgage documents alone provide it with authority to

effectuate the assignment at issue, they also urge the Court to broaden its analysis and read the

documents in the context of the overall "MERS System." According to MERS, each

participating bank/lender agrees to be bound by the terms of a membership agreement pursuant

to which the member appoints MERS to act as its authorized agent with authority to, among

other things, hold legal title to mortgages and as a result, MERS is empowered to execute

assignments of mortgage on behalf of all its member banks. In this particular case, MERS

maintains that as a member of MERS and pursuant to the MERS membership agreement, the

loan originator in this case, First Franklin, appointed MERS "to act as its agent to hold the

Mortgage as nominee on First Franklin's behalf, and on behalf of First Franklin's successors and

assigns." MERS explains that subsequent to the mortgage's inception, First Franklin assigned

the Note to Aurora Bank FSB f/k/a Lehman Brothers Bank ("Aurora"), another MERS member.

According to MERS, note assignments among MERS members are tracked via self-effectuated

and self-monitored computer entries into the MERS database. As a MERS member, by

*Page 11 of 37    Part of Exhibit "C"*

operation of the MERS membership rules, Aurora is deemed to have appointed MERS to act as

its agent to hold the Mortgage as nominee.  Aurora subsequently assigned the Note to U.S. Bank,

also a MERS member.  By operation of the MERS membership agreement, U.S. Bank is deemed

to have appointed MERS to act as its agent to hold the Mortgage as nominee.  Then, according to

MERS, "U.S. Bank, as the holder of the note, under the MERS Membership Rules, chose to

instruct MERS to assign the Mortgage to U.S. Bank prior to commencing the foreclosure

proceedings by U.S. Bank." (Affirmation of William C. Hultman, ¶12).

MERS argues that the express terms of the mortgage coupled with the provisions of the

MERS membership agreement, is "more than sufficient to create an agency relationship between

MERS and lender and the lender's successors in interest" under New York law and as a result

establish MERS's authority to assign the Mortgage. (MERS Memorandum of Law at 7).

On December 20, 2010, the Debtor filed supplemental opposition to the Motion.  The

Debtor argues that the *Rooker-Feldman* doctrine should not preclude judicial review in this case

because the Debtor's objection to the Motion raises issues that could not have been raised in the

state court foreclosure action, namely the validity of the assignment and standing to lift the stay.

The Debtor also argues that the *Rooker-Feldman* doctrine does not apply because the Judgment

of Foreclosure was entered by default.  Finally, she also argues that the bankruptcy court can

review matters "which are void or fraudulent on its face." *See In re Ward*, 423 B.R. 22 (Bankr.

E.D.N.Y. 2010).  The Debtor says that she is "alleging questionable, even possibly fraudulent

conduct by MERS in regards to transferring notes and lifting the stay." (Debtor's Supplemental

Opposition at 3).

The Movant filed supplemental papers on December 23, 2010 arguing that the Motion is

*Page 12 of 37   Part of Exhibit "C"*

moot because the Property is no longer an asset of the estate as a result of the Chapter 7

Trustee's "report of no distribution," and as such, the Section 362(a) automatic stay was

dissolved upon the entry of a discharge on December 14, 2010. *See Brooks v. Bank of New York*

*Mellon*, No. DKC 09-1408, 2009 WL 3379928, at *2 (D. Md. Oct. 16, 2009); *Riggs Nat'l Bank*

*of Washington, D.C. v. Perry*, 729 F.2d 982, 986 (4th Cir. 1984).

The Movant also maintains that *Rooker-Feldman does* apply to default judgments

because that doctrine does not require that the prior judgment be a judgment "on the merits."

*Charchenko v. City of Stillwater*, 47 F.3d 981, 983 n.1 (8th Cir. 1995); *see also Kafele v. Lerner,*

*Sampson & Rothfuss, L.P.A.*, No. 04-3659, 2005 WL 3528921, at *2-3 (6th Cir. Dec. 22, 2005);

*In re Dahlgren*, No. 09-18982, 2010 WL 5287400, at *1 (D.N.J. Dec. 17, 2010). The Movant

points out that the Debtor seems to be confusing the *Rooker-Feldman* doctrine with issue and

claim preclusion and that the Debtor has misapplied Chief Judge Craig's ruling in *In re Ward.*

### *Discussion*

As a threshold matter, this Court will address the Movant's argument that this Motion has

been mooted by the entry of the discharge order.

### *Effect of the Chapter 7 discharge on the automatic stay*

Section 362(c) provides that:

Except as provided in subsections (d), (e), (f), and (h) of this section--

(1) the stay of an act *against property of the estate* under subsection (a) of this
section continues until such property is no longer property of the estate;

Page 12 of 37

*Page 13 of 37   Part of Exhibit "C"*

(2) the stay of *any other act* under subsection (a) of this section continues until the earliest of--

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, *the time a discharge is granted or denied*;

11 U.S.C. § 362(c) (emphasis added).

Pursuant to Section 362(c)(1), the automatic stay which protects "property of the estate," as opposed to property of the debtor, continues until the property is no longer property of the estate regardless of the entry of the discharge. The provision of the statute relied upon by the Movant for the proposition that the automatic stay terminates upon the entry of a discharge, relates only to the stay of "any other act under subsection(a),", *i.e.*, an act against property that is *not* property of the estate, *i.e.*, is property "of the debtor." The relationship between property of the estate and property of the debtor is succinctly stated as follows:

Property of the estate consists of all property of the debtor as of the date of the filing of the petition. 11 U.S.C. § 541. It remains property of the estate until it has been exempted by the debtor under § 522, abandoned by the trustee under § 554(a), or sold by the trustee under § 363. If property of the estate is not claimed exempt, sold, or abandoned by the trustee, it is abandoned to the debtor at the time the case is closed if the property was scheduled under § 521(1). If the property is not scheduled by the debtor and is not otherwise administered, it remains property of the estate even after the case has been closed.

If the property in question is property of the estate, it remains subject to the automatic stay until it becomes property of the debtor and until the earlier of the time the case was closed, the case is dismissed, or a discharge is granted or denied in a chapter 7 case.

*In re Pullman*, 319 B.R. 443, 445 (Bankr. E.D. Va. 2004).

*Page 14 of 37   Part of Exhibit "C"*

Movant's position seems to be that the Chapter 7 Trustee's filing of a "report of no

distribution," otherwise known as a "no asset report," effectuated an abandonment of the real

property at issue in this case, and therefore the Property has reverted back to the Debtor.

However, Movant fails to cite the relevant statute. Section 554(c) provides that "[u]nless the

court orders otherwise, any property scheduled under section 521(1) of this title not otherwise

administered *at the time of the closing* of a case is abandoned to the debtor and administered for

purposes of section 350 of this title." 11 U.S.C. § 554(c) (emphasis added); Fed. R. Bankr. P.

6007. Cases interpreting Section 554(c) hold that the filing of a report of no distribution does

not effectuate an abandonment of estate property. *See, e.g.*, *In re Israel*, 112 B.R. 481, 482 n.3

(Bankr. D. Conn. 1990) ("The filing of a no-asset report does not close a case and therefore does

not constitute an abandonment of property of the estate.") (citing *e.g.*, *Zlogar v. Internal Revenue

Serv. (In re Zlogar)*, 101 B.R. 1, 3 n.3 (Bankr. N.D. Ill. 1989); *Schwaber v. Reed (In re Reed)*, 89

B.R. 100, 104 (Bankr. C.D. Cal. 1988); 11 U.S.C. § 554(c)).

Because the real property at issue in this case has not been abandoned it remains property

of the estate subject to Section 362(a) unless and until relief is granted under Section 362(d).

### *Rooker-Feldman and res judicata*[4]

The Movant argues that U.S. Bank's status as a secured creditor, which is the basis for its

standing in this case, already has been determined by the state court and that determination

cannot be revisited here. The Movant relies on both the *Rooker-Feldman* doctrine and *res*

---

[4]   Because the Debtor's objection is overruled under *Rooker-Feldman* and *res judicata*, the
Court will not address the merits of the Movant's judicial estoppel arguments.

Page 14 of 37

*Page 15 of 37   Part of Exhibit "C"*

*judicata* principles to support this position.

The *Rooker-Feldman* doctrine is derived from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), which together stand for the proposition that lower federal courts lack subject matter jurisdiction to sit in direct appellate review of state court judgments. The *Rooker-Feldman* doctrine is a narrow jurisdictional doctrine which is distinct from federal preclusion doctrines. *See McKithen v. Brown*, 481 F.3d 89, 96-97 (2d Cir. 2007) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), and *Hoblock v. Albany County Board of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). In essence, the doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Exxon Mobil*, 544 U.S. at 283.

The Second Circuit has delineated four elements that must be satisfied in order for *Rooker-Feldman* to apply:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain [ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment [ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"-i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

*McKithen*, 481 F.3d at 97 (internal citation omitted and alteration in original) (quoting *Hoblock*,

Page 16 of 37    Part of Exhibit "C"

422 F.3d at 85).

In a case with facts similar to the instant case, Chief Judge Craig applied the *Rooker-Feldman* doctrine to overrule a debtor's objection to a motion for relief from the automatic stay. *See In re Ward*, 423 B.R. 22 (Bankr. E.D.N.Y. 2010). In *In re Ward*, a foreclosure sale was conducted prior to the filing of the bankruptcy petition. When the successful purchaser sought relief from stay in the bankruptcy case to proceed to evict the debtor, the debtor opposed the motion. The debtor argued that the foreclosure judgment was flawed because "no original note was produced", "the mortgage was rescinded", "the plaintiff in the action doesn't exist" or "was not a proper party to the foreclosure action", and that "everything was done irregularly and underneath [the] table." *In re Ward*, 423 B.R. at 27. Chief Judge Craig overruled the debtor's opposition and found that each of the elements of the *Rooker-Feldman* doctrine were satisfied:

> The *Rooker-Feldman* doctrine applies in this case because the Debtor lost in the state court foreclosure action, the Foreclosure Judgment was rendered before the Debtor commenced this case, and the Debtor seeks this Court's review of the Foreclosure Judgment in the context of her opposition to the Purchaser's motion for relief from the automatic stay. The injury complained of, *i.e.*, the foreclosure sale to the Purchaser, was "caused by" the Foreclosure Judgment because "the foreclosure [sale] would not have occurred but-for" the Foreclosure Judgment. Accordingly, the *Rooker-Feldman* doctrine does not permit this Court to disregard the Foreclosure Judgment.

*In re Ward*, 423 B.R. at 28 (citations omitted and alteration in original).

In the instant case, the Debtor argues that the *Rooker-Feldman* doctrine does not apply because the Judgment of Foreclosure was entered on default, not on the merits. She also argues that *Rooker-Feldman* should not apply because she is alleging that the Judgment of Foreclosure was procured by fraud in that the MERS system of mortgage assignments was fraudulent in nature or void. However, this Court is not aware of any exception to the *Rooker-Feldman*

*Page 17 of 37   Part of Exhibit "C"*

doctrine for default judgments, or judgments procured by fraud and the Court will not read those exceptions into the rule. *See Salem v. Paroli*, 260 B.R. 246, 254 (S.D.N.Y. 2001) (applying *Rooker-Feldman* to preclude review of state court default judgment); *see also Lombard v. Lombard*, No. 00-CIV-6703 (SAS), 2001 WL 548725, at *3-4 (S.D.N.Y. May 23, 2001) (applying *Rooker-Feldman* to preclude review of stipulation of settlement executed in connection with state court proceeding even though applicant argued that the stipulation should be declared null and void because he was under duress at the time it was executed).

The Debtor also argues that *Rooker-Feldman* does not apply in this case because she is not asking this Court to set aside the Judgment of Foreclosure, but rather is asking this Court to make a determination as to the Movant's standing to seek relief from stay. The Debtor argues that notwithstanding the *Rooker-Feldman* doctrine, the bankruptcy court must have the ability to determine the standing of the parties before it.

Although the Debtor says she is not seeking affirmative relief from this Court, the net effect of upholding the Debtor's jurisdictional objection in this case would be to deny U.S. Bank rights that were lawfully granted to U.S. Bank by the state court. This would be tantamount to a reversal which is prohibited by *Rooker-Feldman*.

Even if *Rooker-Feldman* were found not to apply to this determination, the Court still would find that the Debtor is precluded from questioning U.S. Bank's standing as a secured creditor under the doctrine of *res judicata*. The state court already has determined that U.S. Bank is a secured creditor with standing to foreclose and this Court cannot alter that determination in order to deny U.S. Bank standing to seek relief from the automatic stay.

The doctrine of *res judicata* is grounded in the Full Faith and Credit Clause of the United

*Page 18 of 37    Part of Exhibit "C"*

States Constitution. U.S. Const. art. IV, § 1. It prevents a party from re-litigating any issue *or defense* that was decided by a court of competent jurisdiction and which could have been raised or decided in the prior action. *See Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (applying New York preclusion rules); *Swiatkowski v. Citibank*, No. 10-CV-114, 2010 WL 3951212, at *14 (E.D.N.Y. Oct. 7, 2010) (citing *Waldman v. Vill. of Kiryas Joel*, 39 F.Supp.2d 370, 377 (S.D.N.Y. 1999)). *Res judicata* applies to judgments that were obtained by default, *see Kelleran v. Andrijevic*, 825 F.2d 692, 694-95 (2d Cir. 1987), but it may not apply if the judgment was obtained by *extrinsic* fraud or collusion. "Extrinsic fraud involves the parties' 'opportunity to have a full and fair hearing,' while intrinsic fraud, on the other hand, involves the 'underlying issue in the original lawsuit.'" *In re Ward*, 423 B.R. at 29. The Debtor's assertions that the MERS system of assignments may have been fraudulent is more appropriately deemed an *intrinsic* fraud argument. The Debtor has not alleged any *extrinsic* fraud in the procurement of the Judgment of Foreclosure which prevented a full and fair hearing before the state court.

As a result, the Court finds that the Judgment of Foreclosure alone is sufficient evidence of the Movant's status as a secured creditor and therefore its standing to seek relief from the automatic stay. On that basis, and because the Movant has established grounds for relief from stay under Section 362(d), the Motion will be granted.

## *MERS*

Because of the broad applicability of the issues raised in this case the Court believes that it is appropriate to set forth its analysis on the issue of whether the Movant, absent the Judgment of Foreclosure, would have standing to bring the instant motion. Specifically MERS's role in

*Page 19 of 37    Part of Exhibit "C"*

the ownership and transfer of real property notes and mortgages is at issue in dozens of cases

before this Court. As a result, the Court has deferred ruling on motions for relief from stay

where the movants' standing may be affected by MERS's participation in the transfer of the real

property notes and mortgages. In the instant case, the issues were resolved under the *Rooker-*

*Feldman* doctrine and the application of *res judicata*. Most, if not all, of the remainder of the

"MERS cases" before the Court cannot be resolved on the same basis. For that reason, and

because MERS has intervened in this proceeding arguing that the validity of MERS assignments

directly affects its business model and will have a significant impact on the national mortgage

industry, this Court will give a reasoned opinion as to the Movant's standing to seek relief from

the stay and how that standing is affected by the fact that U.S. Bank acquired its rights in the

Mortgage by way of assignment from MERS.


### *Standing to seek relief from the automatic stay*

The Debtor has challenged the Movant's standing to seek relief from the automatic stay.

Standing is a threshold issue for a court to resolve. Section 362(d) states that relief from stay

may be granted "[o]n request of a party in interest and after notice and a hearing." 11 U.S.C. §

362(d). The term "party in interest" is not defined in the Bankruptcy Code, however the Court

of Appeals for the Second Circuit has stated that "[g]enerally the 'real party in interest' is the

one who, under the applicable substantive law, has the legal right which is sought to be enforced

or is the party entitled to bring suit." *See Roslyn Savings Bank v. Comcoach (In re Comcoach)*,

698 F.2d 571, 573 (2d Cir. 1983). The legislative history of Section 362 "suggests that,

notwithstanding the use of the term 'party in interest', it is only creditors who may obtain relief

Page 20 of 37   PART OF EXHIBIT "C"

from the automatic stay." *Id.* at 573-74. (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 175, reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 6136); *see also Greg Restaurant Equip. And Supplies v. Toar Train P'ship (In re Toar Train P'ship)*, 15 B.R. 401, 402 (Bankr. D. Vt.1981) (finding that a judgment creditor of the debtor was not a "party in interest" because the judgment creditor was not itself a direct creditor of the bankrupt).

Using the standard established by the Second Circuit, this Court must determine whether the Movant is the "one who, under applicable substantive law, has the legal right" to enforce the subject Note and Mortgage, and is therefore a "creditor" of this Debtor. *See In re Toar*, 15 B.R. at 402; *see also In re Mims*, 438 B.R. 52, 55 (Bankr. S.D.N.Y. 2010). The Bankruptcy Code defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief . . . ." 11 U.S.C. § 101(10). "Claim" is defined as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . . ." 11 U.S.C. § 101(5)(A). In the context of a lift stay motion where the movant is seeking to commence or continue with an action to foreclose a mortgage against real property, the movant must show that it is a "party in interest" by showing that it is a creditor with a security interest in the subject real property. *See Mims*, 438 B.R. at 57 (finding that as movant "failed to prove it owns the Note, it has failed to establish that it has standing to pursue its state law remedies with regard to the Mortgage and Property"). *Cf. Brown Bark I L.P. v. Ebersole (In re Ebersole)*, 440 B.R. 690, 694 (Bankr. W.D. Va. 2010) (finding that movant seeking relief from stay must prove that it is the holder of the subject note in order to establish a 'colorable claim' which would establish standing to seek relief from stay).

Page 21 of 37    Part of Exhibit "C"

### Noteholder status

In the Motion, the Movant asserts U.S. Bank's status as the "holder" of the Mortgage. However, in order to have standing to seek relief from stay, Movant, which acts as the representative of U.S. Bank, must show that U.S. Bank holds both the Mortgage and the Note. *Mims*, 438 B.R. at 56. Although the Motion does not explicitly state that U.S. Bank is the holder of the Note, it is implicit in the Motion and the arguments presented by the Movant at the hearing. However, the record demonstrates that the Movant has produced no evidence, documentary or otherwise, that U.S. Bank is the rightful holder of the Note. Movant's reliance on the fact that U.S. Bank's noteholder status has not been challenged thus far does not alter or diminish the Movant's burden to show that it is the holder of the Note as well as the Mortgage.

Under New York law, Movant can prove that U.S. Bank is the holder of the Note by providing the Court with proof of a written assignment of the Note, or by demonstrating that U.S. Bank has physical possession of the Note endorsed over to it. *See, eg., LaSalle Bank N.A. v. Lamy*, 824 N.Y.S.2d 769, 2006 WL 2251721, at *1 (N.Y. Sup. Ct. Aug. 7, 2006). The only written assignment presented to the Court is not an assignment of the Note but rather an "Assignment of Mortgage" which contains a vague reference to the Note. Tagged to the end of the provisions which purport to assign the Mortgage, there is language in the Assignment stating "To Have and to Hold the said Mortgage *and Note*, and also the said property until the said Assignee forever, subject to the terms contained in said Mortgage *and Note*." (Assignment of Mortgage (emphasis added)). Not only is the language vague and insufficient to prove an intent to assign the Note, but MERS is not a party to the Note and the record is barren of any representation that MERS, the purported assignee, had any authority to take any action with

Page 21 of 37

*Page 22 of 37   Part of Exhibit "C"*

respect to the Note. Therefore, the Court finds that the Assignment of Mortgage is not sufficient to establish an effective assignment of the Note.

By MERS's own account, it took no part in the assignment of the Note in this case, but merely provided a database which allowed its members to electronically self-report transfers of the Note. MERS does not confirm that the Note was properly transferred or in fact whether anyone including agents of MERS had or have physical possession of the Note. What remains undisputed is that MERS did not have any rights with respect to the Note and other than as described above, MERS played no role in the transfer of the Note.

Absent a showing of a valid assignment of the Note, Movant can demonstrate that U.S. Bank is the holder of the Note if it can show that U.S. Bank has physical possession of the Note endorsed to its name. *See In re Mims*, 423 B.R. at 56-57. According to the evidence presented in this matter the manner in which the MERS system is structured provides that, "[w]hen the beneficial interest in a loan is sold, the promissory note is [] transferred by an endorsement and delivery from the buyer to the seller [sic], but MERS Members are obligated to update the MERS® System to reflect the change in ownership of the promissory note. . . ." (MERS Supplemental Memorandum of Law at 6). However, there is nothing in the record to prove that the Note in this case was transferred according to the processes described above other than MERS's representation that its computer database reflects that the Note was transferred to U.S. Bank. The Court has no evidentiary basis to find that the Note was endorsed to U.S. Bank or that U.S. Bank has physical possession of the Note. Therefore, the Court finds that Movant has not satisfied its burden of showing that U.S. Bank, the party on whose behalf Movant seeks relief from stay, is the holder of the Note.

*Page 23 of 37    Part of Exhibit "C"*

### Mortgagee status

The Movant's failure to show that U.S. Bank holds the Note should be fatal to the Movant's standing. However, even if the Movant could show that U.S. Bank is the holder of the Note, it still would have to establish that it holds the Mortgage in order to prove that it is a secured creditor with standing to bring this Motion before this Court. The Movant urges the Court to adhere to the adage that a mortgage necessarily follows the same path as the note for which it stands as collateral. *See Wells Fargo Bank, N.A. v. Perry*, 875 N.Y.S.2d 853, 856 (N.Y. Sup. Ct. 2009). In simple terms the Movant relies on the argument that a note and mortgage are inseparable. *See Carpenter v. Longan*, 83 U.S. 271, 274 (1872). While it is generally true that a mortgage travels a parallel path with its corresponding debt obligation, the parties in this case have adopted a process which by its very terms alters this practice where mortgages are held by MERS as "mortgagee of record." By MERS's own account, the Note in this case was transferred among its members, while the Mortgage remained in MERS's name. MERS admits that the very foundation of its business model as described herein requires that the Note and Mortgage travel on divergent paths. Because the Note and Mortgage did not travel together, Movant must prove not only that it is acting on behalf of a valid assignee of the Note, but also that it is acting on behalf of the valid assignee of the Mortgage.[5]

---

[5]     MERS argues that notes and mortgages processed through the MERS System are never "separated" because beneficial ownership of the notes and mortgages are always held by the same entity. The Court will not address that issue in this Decision, but leaves open the issue as to whether mortgages processed through the MERS system are properly perfected and valid liens. *See Carpenter v. Longan*, 83 U.S. at 274 (finding that an assignment of the mortgage without the note is a nullity); *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 166-67 (Kan. 2009) ("[I]n the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable").

*Page 24 of 37  Part of Exhibit "C"*

MERS asserts that its right to assign the Mortgage to U.S. Bank in this case, and in what it estimates to be literally millions of other cases, stems from three sources: the Mortgage documents; the MERS membership agreement; and state law. In order to provide some context to this discussion, the Court will begin its analysis with an overview of mortgage and loan processing within the MERS network of lenders as set forth in the record of this case.

In the most common residential lending scenario, there are two parties to a real property mortgage – a mortgagee, *i.e.*, a lender, and a mortgagor, *i.e.*, a borrower. With some nuances and allowances for the needs of modern finance this model has been followed for hundreds of years. The MERS business plan, as envisioned and implemented by lenders and others involved in what has become known as the mortgage finance industry, is based in large part on amending this traditional model and introducing a third party into the equation. MERS is, in fact, neither a borrower nor a lender, but rather purports to be both "mortgagee of record" and a "nominee" for the mortgagee. MERS was created to alleviate problems created by, what was determined by the financial community to be, slow and burdensome recording processes adopted by virtually every state and locality. In effect the MERS system was designed to circumvent these procedures. MERS, as envisioned by its originators, operates as a replacement for our traditional system of public recordation of mortgages.

Caselaw and commentary addressing MERS's role in the mortgage recording and foreclosure process abound. *See* Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359 (2010). In a 2006 published opinion, the New York Court of Appeals described MERS system as follows:

> In 1993, the MERS system was created by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages.

*Page 25 of 37    Part of Exhibit "C"*

Mortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system.

The initial MERS mortgage is recorded in the County Clerk's office with 'Mortgage Electronic Registration Systems, Inc.' named as the lender's nominee or mortgagee of record on the instrument. During the lifetime of the mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members (MERS assignments), but these assignments are not publicly recorded; instead they are tracked electronically in MERS's private system. In the MERS system, the mortgagor is notified of transfers of servicing rights pursuant to the Truth in Lending Act, but not necessarily of assignments of the beneficial interest in the mortgage.

*Merscorp, Inc., v. Romaine*, 8 N.Y.3d 90 (N.Y. 2006) (footnotes omitted).

In the words of MERS's legal counsel, "[t]he essence of MERS' business is to hold legal title to beneficial interests under mortgages and deeds of trust in the land records. The MERS® System is designed to allow its members, which include originators, lenders, servicers, and investors, to accurately and efficiently track transfers of servicing rights and beneficial ownership." (MERS Memorandum of Law at 5). The MERS® System ". . . eliminate[s] the need for frequent, recorded assignments of subsequent transfers." (MERS Supplemental Memorandum of Law at 4). "Prior to MERS, every time a loan secured by a mortgage was sold, the assignee would need to record the assignment to protect the security interest. If a servicing company serviced the loan and the servicing rights were sold, – an event that could occur multiple times during the life of a single mortgage loan – multiple assignments were recorded to ensure that the proper servicer appeared in the land records in the County Clerk's office." (MERS Supplemental Memorandum of Law at 4-5).

"When the beneficial interest in a loan is sold, the promissory note is still transferred by

*Page 26 of 37    Part of Exhibit "C"*

an endorsement and delivery from the buyer to the seller, but MERS Members are obligated to update the MERS® System to reflect the change in ownership of the promissory note. . . . So long as the sale of the note involves a MERS Member, MERS remains the named mortgagee of record, and continues to act as the mortgagee, as the nominee for the new beneficial owner of the note (and MERS' Member). The seller of the note does not and need not assign the mortgage because under the terms of that security instrument, MERS remains the holder of title to the mortgage, that is, the mortgagee, as the nominee for the purchaser of the note, who is then the lender's successor and/or assign." (MERS Supplemental Memorandum of Law at 6). "At all times during this process, the original mortgage or an assignment of the mortgage to MERS remains of record in the public land records where the security real estate is located, providing notice of MERS's disclosed role as the agent for the MERS Member lender and the lender's successors and assigns." (Declaration of William C. Hultman, ¶9).

MERS asserts that it has authority to act as agent for each and every MERS member which claims ownership of a note and mortgage registered in its system. This authority is based not in the statutes or caselaw, but rather derives from the terms and conditions of a MERS membership agreement. Those terms and conditions provide that "MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time." (Declaration of William C. Hultman, ¶5). MERS "holds the legal title to the mortgage and acts as the agent or nominee for the MERS Member lender, or owner of the mortgage loan." (Declaration of William C. Hultman, ¶6). According to MERS, it is the "intent of the parties . . . for MERS to serve as the *common nominee or agent* for MERS Member lenders and their

*Page 27 of 37    Part of Exhibit "C"* (handwritten)

successors and assigns." (MERS Supplemental Memorandum of Law at 19) (emphasis added by the Court). "Because MERS holds the mortgage lien for the lender who may freely transfer its interest in the note, without the need for a recorded assignment document in the land records, MERS holds the mortgage lien for *any intended transferee of the note*." (MERS Supplemental Memorandum of Law at 15) (emphasis added by the Court). If a MERS member subsequently assigns the note to a non-MERS member, or if the MERS member which holds the note decides to foreclose, only then is an assignment of the mortgage from MERS to the noteholder documented and recorded in the public land records where the property is located. (Declaration of William C. Hultman, ¶12).

Before commenting on the legal effect of the MERS membership rules or the alleged "common agency" agreement created among MERS members, the Court will review the relevant portions of the documents presented in this case to evaluate whether the documentation, on its face, is sufficient to prove a valid assignment of the Mortgage to U.S. Bank.

### The Mortgage

First Franklin is the "Lender" named in the Mortgage. With reference to MERS's role in the transaction, the Mortgage states:

> MERS is a separate corporation that is *acting solely as a nominee for Lender and Lender's successors and assigns*. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679 MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE *MORTGAGEE OF RECORD*.**

(Mortgage at 1 (emphasis added by the Court)).

The Mortgage also purports to contain a transfer to MERS of the Borrower's (*i.e.*, the

*Page 28 of 37  Part of Exhibit "C"*

Debtor's) rights in the subject Property as follows:

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

[The Borrower] mortgage[s], grant[s] and convey[s] the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, [the Borrower is] giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgage on real property. [The Borrower is] giving Lender these rights to protect Lender from possible losses that might result if [the Borrower] fail[s] to [comply with certain obligations under the Security Instrument and accompanying Note.]

[The Borrower] understand[s] and agree[s] that MERS holds only legal title to the rights granted by [the Borrower] in this Security Instrument, but, if necessary to comply with law or custom, *MERS (as nominee for Lender and Lenders's successors and assigns) has the right: (A) to exercise any or all those rights, including, but not limited to, the right to foreclose and sell the Property; and (B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.*

[The Borrower gives] MERS (solely as nominee for Lender and Lender's successors in interest), rights in the Property . . .

(Mortgage at 3) (emphasis added).

The Assignment of Mortgage references the Mortgage and defines the "Assignor" as

"'Mers' Mortgage Electronic Registration Systems, Inc., 2150 North First Street, San Jose,

California 95131, *as nominee for First Franklin*, a division of National City Bank of IN, 2150

North First Street San Jose, California 95153." (Emphasis added by the Court). The "Assignee"

is U.S. Bank.

Premised on the foregoing documentation, MERS argues that it had full authority to

validly execute the Assignment of Mortgage to U.S. Bank on February 1, 2008, and that as of the

date the foreclosure proceeding was commenced U.S. Bank held both the Note and the

Mortgage. However, without more, this Court finds that MERS's "nominee" status and the

Page 29 of 37 PanT of EXHIBIT "C"

rights bestowed upon MERS within the Mortgage itself, are insufficient to empower MERS to effectuate a valid assignment of mortgage.

There are several published New York state trial level decisions holding that the status of "nominee" or "mortgagee of record" bestowed upon MERS in the mortgage documents, by itself, does not empower MERS to effectuate an assignment of the mortgage. These cases hold that MERS may not validly assign a mortgage based on its nominee status, absent some evidence of specific authority to assign the mortgage. *See Bank of New York v. Mulligan,* No. 29399/07, 2010 WL 3339452, at *7 (N.Y. Sup. Ct. Aug. 25, 2010); *One West Bank, F.S.B. v. Drayton,* 910 N.Y.S.2d 857, 871 (N.Y. Sup. Ct. 2010); *Bank of New York v. Alderazi,* 900 N.Y.S.2d 821, 824 (N.Y. Sup. Ct. 2010) (the "party who claims to be the agent of another bears the burden of proving the agency relationship by a preponderance of the evidence"); *HSBC Bank USA v. Yeasmin,* No. 34142/07, 2010 WL 2089273, at *3 (N.Y. Sup. Ct. May 24, 2010); *HSBC Bank USA v. Vasquez,* No. 37410/07, 2009 WL 2581672, at *3 (N.Y. Sup. Ct. Aug. 21, 2010); *LaSalle Bank N.A. v. Lamy,* 824 N.Y.S.2d 769, 2006 WL 2251721, at *2 (N.Y. Sup. Ct. Aug. 7, 2006) ("A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee."). *See also MERS v. Saunders,* 2 A.3d 289, 295 (Me. 2010) ("MERS's only right is to record the mortgage. Its designation as the 'mortgagee of record' in the document does not change or expand that right..."). *But see US Bank, N.A. v. Flynn,* 897 N.Y.S.2d 855 (N.Y. Sup. Ct. 2010) (finding that MERS's "nominee" status and the mortgage documents give MERS authority to assign); *Crum v. LaSalle Bank, N.A.,* No. 2080110, 2009 WL 2986655, at *3 (Ala. Civ. App., Sept. 18, 2009) (finding MERS validly assigned its and the lender's rights to

*Page 30 of-37    Part of EXHIBIT "C"*

assignee); *Blau v. America's Servicing Company, et al.*, No. CV-08-773-PHX-MHM, 2009 WL

3174823, at *8 (D. Ariz. Sept. 29, 2009) (finding that assignee of MERS had standing to

foreclose).

In *LaSalle Bank, N.A. v. Bouloute,* No. 41583/07, 2010 WL 3359552, at *2 (N.Y. Sup.

Aug. 26, 2010), the court analyzed the relationship between MERS and the original lender and

concluded that a nominee possesses few or no legally enforceable rights beyond those of a

principal whom the nominee serves. The court stated:

> MERS . . . recorded the subject mortgage as "nominee" for FFFC. The word
> "nominee" is defined as "[a] person designated to act in place of another, usu. in a
> very limited way" or "[a] party who holds bare legal title for the benefit of
> others." (Black's Law Dictionary 1076 [8th ed 2004] ). "This definition suggests
> that a nominee possesses few or no legally enforceable rights beyond those of a
> principal whom the nominee serves." (*Landmark National Bank v. Kesler*, 289
> Kan 528, 538 [2009] ). The Supreme Court of Kansas, in *Landmark National
> Bank*, 289 Kan at 539, observed that:
>
>> The legal status of a nominee, then, depends on the context of the
>> relationship of the nominee to its principal. Various courts have
>> interpreted the relationship of MERS and the lender as an agency
>> relationship. See *In re Sheridan*, 2009 WL631355, at *4 (Bankr. D. Idaho,
>> March 12, 2009) (MERS "acts not on its own account. Its capacity is
>> representative."); *Mortgage Elec. Registrations Systems, Inc. v. Southwest,*
>> 2009 Ark. 152 ----, 301 SW3d 1, 2009 WL 723182 (March 19, 2009)
>> ("MERS, by the terms of the deed of trust, and its own stated purposes,
>> was the lender's agent"); *La Salle Nat. Bank v. Lamy*, 12 Misc.3d 1191[A],
>> at *2 [Sup Ct, Suffolk County 2006] ) ... ("A nominee of the owner of a
>> note and mortgage may not effectively assign the note and mortgage to
>> another for want of an ownership interest in said note and mortgage by the
>> nominee.").

*LaSalle Bank, N.A. v. Bouloute,* No. 41583/07, 2010 WL 3359552, at *2; *see also Bank of New*

*York v. Alderazi*, 900 N.Y.S.2d 821, 823 (N.Y. Sup. Ct. 2010) (nominee is "'[a] person

designated to act in place of another, usually in a very limited way.'") (quoting Black's Law

*Page 31 of 37    Part of Exhibit "C"*

Dictionary)).

In *LaSalle Bank, N.A. v. Bouloute* the court concluded that MERS must have some evidence of authority to assign the mortgage in order for an assignment of a mortgage by MERS to be effective. Evidence of MERS's authority to assign could be by way of a power of attorney or some other document executed by the original lender. *See Bouloute*, 2010 WL 3359552, at *1; *Alderazi*, 900 N.Y.S.2d at 823 ("'To have a proper assignment of a mortgage by an authorized agent, a power of attorney is necessary to demonstrate how the agent is vested with the authority to assign the mortgage.'") (quoting *HSBC Bank USA, NA v. Yeasmin*, 866 N.Y.S.2d 92 (N.Y. Sup. Ct. 2008)).

Other than naming MERS as "nominee", the Mortgage also provides that the Borrower transfers legal title to the subject property to MERS, as the Lender's nominee, and acknowledges MERS's rights to exercise certain of the Lender's rights under state law. This too, is insufficient to bestow any authority upon MERS to assign the mortgage. In *Bank of New York v. Alderazi*, the court found "[t]he fact that the borrower acknowledged and consented to MERS acting as nominee of the lender has no bearing on what specific powers and authority the lender granted MERS." *Alderazi*, 900 N.Y.S.2d at 824. Even if it did bestow some authority upon MERS, the court in *Alderazi* found that the mortgage did not convey the specific right to assign the mortgage.

The Court agrees with the reasoning and the analysis in *Bouloute* and *Alderazi*, and the other cases cited herein and finds that the Mortgage, by naming MERS a "nominee," and/or "mortgagee of record" did not bestow authority upon MERS to assign the Mortgage.

*Page 32 of 37   Part of Exhibit "C"*

### The MERS membership rules

According to MERS, in addition to the alleged authority granted to it in the Mortgage itself, the documentation of the Assignment of Mortgage comports with all the legal requirements of agency when read in conjunction with the overall MERS System. MERS's argument requires that this Court disregard the specific words of the Assignment of Mortgage or, at the very least, interpret the Assignment in light of the overall MERS System of tracking the beneficial interests in mortgage securities. MERS urges the Court to look beyond the four corners of the Mortgage and take into consideration the agency relationship created by the agreements entered into by the lenders participating in the MERS System, including their agreement to be bound by the terms and conditions of membership.

MERS has asserted that each of its member/lenders agrees to appoint MERS to act as its agent. In this particular case, the Treasurer of MERS, William C. Hultman, declared under penalty of perjury that "pursuant to the MERS's Rules of Membership, Rule 2, Section 5. . . First Franklin appointed MERS to act as its agent to hold the Mortgage as nominee on First Franklin's behalf, and on behalf of First Franklin's successors and assigns." (Affirmation of William C. Hultman, ¶7). However, Section 5 of Rule 2, which was attached to the Hultman Affirmation as an exhibit, contains no explicit reference to the creation of an agency or nominee relationship. Consistent with this failure to explicitly refer to the creation of an agency agreement, the rules of membership do not grant any clear authority to MERS to take any action with respect to the mortgages held by MERS members, including but not limited to executing assignments. The rules of membership do require that MERS members name MERS as "mortgagee of record" and that MERS appears in the public land records as such. Section 6 of Rule 2 states that "MERS

*Page 33 of 37    Part of Exhibit "C"*

shall at all times comply with the instructions of the holder of mortgage loan promissory notes,"

but this does not confer any specific power or authority to MERS.

### State law

Under New York agency laws, an agency relationship can be created by a "manifestation

of consent by one person to another that the other shall act on his behalf and subject to his

control, and the consent by the other to act." *Meisel v. Grunberg*, 651 F.Supp.2d 98, 110

(S.D.N.Y. 2009) (citing *N.Y. Marine & Gen. Ins. Co. v. Tradeline, L.L.C.*, 266 F.3d 112, 122 (2d

Cir.2001)).

> 'Such authority to act for a principal may be actual or apparent.' . . . Actual
> authority arises from a direct manifestation of consent from the principal to the
> agent. . . . . The existence of actual authority 'depends upon the actual interaction
> between the putative principal and agent, not on any perception a third party may
> have of the relationship.'

*Meisel v. Grunberg*, 651 F.Supp.2d at 110 (citations omitted).

Because MERS's members, the beneficial noteholders, purported to bestow upon MERS

interests in real property sufficient to authorize the assignments of mortgage, the alleged agency

relationship must be committed to writing by application of the statute of frauds. Section 5-

703(2) of the New York General Obligations Law states that:

> An estate or interest in real property, other than a lease for a term not exceeding
> one year, or any trust or power, over or concerning real property, or in any
> manner relating thereto, cannot be created, granted, assigned, surrendered or
> declared, unless by act or operation of law, or by a deed or conveyance in writing,
> subscribed by the person creating, granting, assigning, surrendering or declaring
> the same, *or by his lawful agent, thereunto authorized by writing.*

*See* N.Y. Gen. Oblig. Law § 5-703(1) (McKinney 2011); *Republic of Benin v. Mezei*, No. 06 Civ.

870 (JGK), 2010 WL 3564270, at *3 (S.D.N.Y. Sept. 9, 2010); *Urgo v. Patel*, 746 N.Y.S.2d 733

*Page 34 of 37    Part of Exhibit "C"*

(N.Y. App. Div. 2002) (finding that unwritten apparent authority is insufficient to satisfy the statute of frauds) (citing *Diocese of Buffalo v. McCarthy*, 91 A.D.2d 1210 (4ᵗʰ Dept. 1983)); *see also* N.Y. Gen. Oblig. Law § 5-1501 (McKinney 2011) ("'agent' means a person granted authority to act as attorney-in-fact for the principal under a power of attorney. . .").  MERS asks this Court to liberally interpret the laws of agency and find that an agency agreement may take any form "desired by the parties concerned."  However, this does not free MERS from the constraints of applicable agency laws.

The Court finds that the record of this case is insufficient to prove that an agency relationship exists under the laws of the state of New York between MERS and its members. According to MERS, the principal/agent relationship among itself and its members is created by the MERS rules of membership and terms and conditions, as well as the Mortgage itself. However, none of the documents expressly creates an agency relationship or even mentions the word "agency."  MERS would have this Court cobble together the documents and draw inferences from the words contained in those documents.  For example, MERS argues that its agent status can be found in the Mortgage which states that MERS is a "nominee" and a "mortgagee of record."  However, the fact that MERS is named "nominee" in the Mortgage is not dispositive of the existence of an agency relationship and does not, in and of itself, give MERS any "authority to act." *See Steinbeck v. Steinbeck Heritage Foundation*, No. 09-18360cv, 2010 WL 3995982, at *2 (2d Cir. Oct. 13, 2010) (finding that use of the words "attorney in fact" in documents can constitute evidence of agency but finding that such labels are not dispositive); *MERS v. Saunders*, 2 A.3d 289, 295 (Me. 2010) (designation as the 'mortgagee of record' does not qualify MERS as a "mortgagee").  MERS also relies on its rules of membership as evidence

Page 34 of 37

*Page 35 of 37    Part of Exhibit "C"*

of the agency relationship. However, the rules lack any specific mention of an agency relationship, and do not bestow upon MERS any authority to act. Rather, the rules are ambiguous as to MERS's authority to take affirmative actions with respect to mortgages registered on its system.

In addition to casting itself as nominee/agent, MERS seems to argue that its role as "mortgagee of record" gives it the rights of a mortgagee in its own right. MERS relies on the definition of "mortgagee" in the New York Real Property Actions and Proceedings Law Section 1921 which states that a "mortgagee" *when used in the context of Section 1921*, means the "current holder of the mortgage of record . . . or their agents, successors or assigns." N.Y. Real Prop. Acts. L. § 1921 (McKinney 2011). The provisions of Section 1921 relate solely to the discharge of mortgages and the Court will not apply that definition beyond the provisions of that section in order to find that MERS is a "mortgagee" with full authority to perform the duties of mortgagee in its own right. Aside from the inappropriate reliance upon the statutory definition of "mortgagee," MERS's position that it can be both the mortgagee and an agent of the mortgagee is absurd, at best.

Adding to this absurdity, it is notable in this case that the Assignment of Mortgage was by MERS, *as nominee for First Franklin*, the original lender. By the Movant's and MERS's own admission, at the time the assignment was effectuated, First Franklin no longer held any interest in the Note. Both the Movant and MERS have represented to the Court that subsequent to the origination of the loan, the Note was assigned, through the MERS tracking system, from First Franklin to Aurora, and then from Aurora to U.S. Bank. Accordingly, at the time that MERS, *as nominee of First Franklin*, assigned the interest in the Mortgage to U.S. Bank, U.S.

Page 35 of 37

*Page 36 of 37    Part of EXHIBIT "C"*

Bank allegedly already held the Note and it was at U.S. Bank's direction, not First Franklin's, that the Mortgage was assigned to U.S. Bank. Said another way, when MERS assigned the Mortgage to U.S. Bank on First Franklin's behalf, it took its direction from U.S. Bank, not First Franklin, to provide documentation of an assignment from an entity that no longer had any rights to the Note or the Mortgage. The documentation provided to the Court in this case (and the Court has no reason to believe that any further documentation exists), is stunningly *inconsistent* with what the parties define as the facts of this case.

However, even if MERS had assigned the Mortgage acting on behalf of the entity which held the Note at the time of the assignment, this Court finds that MERS did not have authority, as "nominee" or agent, to assign the Mortgage absent a showing that it was given specific written directions by its principal.

This Court finds that MERS's theory that it can act as a "common agent" for undisclosed principals is not support by the law. The relationship between MERS and its lenders and its distortion of its alleged "nominee" status was appropriately described by the Supreme Court of Kansas as follows: "The parties appear to have defined the word [nominee] in much the same way that the blind men of Indian legend described an elephant – their description depended on which part they were touching at any given time." *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 166-67 (Kan. 2010).

## Conclusion

For all of the foregoing reasons, the Court finds that the Motion in this case should be granted. However, in all future cases which involve MERS, the moving party must show that it

*Page 37 of 37   Part of Exhibit "C"*

validly holds both the mortgage and the underlying note in order to prove standing before this

Court.

Dated: Central Islip, New York
February 10, 2011

                                        /s/ Robert E. Grossman
                                        Hon. Robert E. Grossman
                                        United States Bankruptcy Judge

Pg 1 of 4

Exhibit "D"

## KAREN E. RUBHING, CLERK OF THE CIRCUIT COURT
### SARASOTA COUNTY, FL
### Real Estate Index Search

Report # 5287256 Requested By WEBPUBLIC (WEBPUBLIC) Party Name Begins With CERRON Document Type
is CERT OF TITLE Permanent Index V

Page 1 of 1
Date: 05/14/2014 10:46 AM

| Instrument# | Book | Page | Date Filed | Document Type | Name | More? | Associated Name | More? | Image | Legal Description | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2011101428 | | | 08/31/2011 | CERT OF TITLE | R CERRON JORGE A | ✓ | E GMAC MORTGAGE LLC | ✓ | | 2008 CA 016793 NC UN 01 BEACH WAY APTS | Perm |

*Pg 2 of Part of Exhibit "D"*

## KAREN E. RUSHING, CLERK OF THE CIRCUIT COURT
### SARASOTA COUNTY, FL
**Real Estate Index Detail**

Date: 05/14/2014 10:45 AM

### Document Information

| | |
|---|---|
| Instrument #: 2011101428 | Document Type: CERT OF TITLE |
| Date Received: 08/31/2011 11:11:40 AM | Book Type: NONE |
| Index Status: Permanent Index | Book: |
| Image?: ✓ | Page: |
| Consideration: $162,000.00 | # Pages: 1 |
| File Page: NO | |
| Remarks: | |

### Grantors

1    CLERK CIRCUIT COURT SARASOTA
2    CERRON JORGE A
3    SUNTRUST BANK
4    BEACH WAY CONDOMINIUM ASSOCIATION INC

### Grantees

1    GMAC MORTGAGE LLC

### Legal Information

1    2009 CA 015793 NC UN G1 BEACH WAY APTS

### Returnee Information

CENTRAL RECORDS
ROOM 201

Pg 344    Part of Exhibit "D"

| ☒ IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT IN AND FOR SARASOTA COUNTY, FLORIDA ☐ IN THE COUNTY COURT IN AND FOR SARASOTA COUNTY, FLORIDA | | RECORDED IN OFFICIAL RECORDS INSTRUMENT #2011101428    1 PG |
|---|---|---|
| DIVISION: | CASE NUMBER: | 08/31/2011 11:11:40 AM |
| CIVIL | 2009 CA 015793 NC | KAREN E. RUSHING CLERK OF THE CIRCUIT COURT SARASOTA COUNTY, FLORIDA CIVIL COURTS 3    Receipt # 1418738 |

Doc Stamp-Mort:    $0.00
Doc Stamp-Deed: $1134.00
Intang. Tax:    $0.00
STAMP FOR RECORDING

**PLAINTIFF(S)**
GMAC MORTGAGE, LLC,

**VS. DEFENDANT(S)**
JORGE A. CERRON; THE UNKNOWN SPOUSE OF JORGE A. CERRON; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; SUNTRUST BANK; BEACH WAY CONDOMINIUM ASSOCIATION, INC.; TENANT #1, TENANT #2, TENANT #3, and TENANT #4 the names being fictitious to account for parties in possession

## CERTIFICATE OF TITLE

The undersigned Clerk of the Circuit Court certifies that he or she executed and filed a certificate of sale in this action on August 10, 2011 for the property described herein and that no objections to the sale have been filed within the time allowed for filing objections pursuant to §45.031(4) Florida Statutes.

The following property located in Sarasota County, Florida:

UNIT G-1, BEACH WAY APARTMENTS, A CONDOMINIUM AS PER DECLARATION OF CONDOMINIUM RECORDED IN OFFICIAL RECORDS BOOK 346, PAGES 731 ET SEQ., AND ALL AMENDMENTS THERETO, AND AS PER CONDOMINIUM PLAT RECORDED IN CONDOMINIUM BOOK 4, PAGES 6 ET SEQ., AND ALL AMENDMENTS THERETO, OF THE PUBLIC RECORDS OF SARASOTA COUNTY, FLORIDA. TOGETHER WITH ANY AND ALL AMENDMENTS TO THE DECLARATION AND ANY UNDIVIDED INTEREST IN THE COMMON ELEMENTS OR APPURTENANCES THERETO.

was sold to GMAC MORTGAGE, LLC,

whose address is 1100 Virginia Drive, Fort Washington, PA 19034.

WITNESS my hand and the seal of this Court on August 31, 2011.

FILED FOR RECORD
2011 AUG 31 AM 10:48
KAREN E RUSHING
CLERK OF CIRCUIT COURT
SARASOTA COUNTY, FLORIDA

KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT

BY: _____
Deputy Clerk

Sale Price # 162,000.00
☑ Doc. Stamp Paid $ 1,134.00
☐ Doc. Stamp Due $ _____ and outstanding



Jun 01 14 02:23p      George

941-966-1587

6/14/2014

www.sc-pa.com/testsearch/parcel/0107021019

Pg 444   Port of Exhibit

**Bill Furst**
**SARASOTA COUNTY**
**PROPERTY APPRAISER**

0107021019

Ownership:
GMAC MORTGAGE LLC
1100 VIRGINIA DR, FT WASHINGTON, PA, 19034

Situs Address:
5600 BEACH WAY DR G-1, SARASOTA, FL, 34242

Land Area: 0 Sq.Ft.
Municipality: Sarasota County
Subdivision: 7104 - BEACHWAY APTS
Property Use: 0403 - CONDO - Low-Rise 2-3 Stories
Status: OPEN
Sec/Twp/Rge: 13-37S-17E
Census: 121150019041
Zoning: RMF3 - RESIDENTIAL, MULTI-FAMILY (13 UNITS/ACRE)

Parcel Description: UNIT G-1 BEACHWAY APTS

| Buildings | Side # | Beds | Baths | Half Baths | Year Built | Gross Area | Living Area | Stories |
|---|---|---|---|---|---|---|---|---|
| Situs - click address for details | 1 | 2 | 2 | 0 | 1970 | 1282 | 1182 | 1 |
| 5600 BEACH WAY DR G-1, SARASOTA, FL, 34242 | | | | | | | | |

| Extra Features | | | | Units | Unit Type | Year |
|---|---|---|---|---|---|---|
| | | | | 1 | UT | 1970 |

| Line # | Building Number | Description |
|---|---|---|
| 1 | 1 | DECP - Carport Detached - CONDO |

| | | | | | | Taxable | Cap |
|---|---|---|---|---|---|---|---|
| | | | | | | $248,380 | $23,820 |

**Values**

| Year | Land | Building | Extra Feature | Just | Assessed | Exemptions | Taxable | Cap |
|---|---|---|---|---|---|---|---|---|
| 2013 | $0 | $271,000 | $1,200 | $272,200 | $248,380 | $0 | $248,380 | $23,820 |
| 2012 | $0 | $225,800 | $0 | $225,800 | $225,800 | $0 | $225,800 | $0 |
| 2011 | $0 | $234,000 | $0 | $234,000 | $234,000 | $0 | $234,000 | $0 |
| 2010 | $0 | $242,500 | $0 | $242,500 | $242,500 | $0 | $242,500 | $0 |
| 2009 | $0 | $267,200 | $0 | $267,200 | $267,200 | $0 | $267,200 | $0 |
| 2008 | $0 | $335,300 | $0 | $335,300 | $335,300 | $0 | $335,300 | $0 |
| 2007 | $0 | $390,400 | $0 | $390,400 | $390,400 | $0 | $390,400 | $0 |
| 2006 | $0 | $386,900 | $0 | $386,900 | $386,900 | $0 | $386,900 | $0 |
| 2005 | $0 | $316,718 | $0 | $316,718 | $316,718 | $0 | $316,718 | $0 |
| 2004 | $0 | $248,245 | $0 | $248,245 | $248,245 | $25,000 | $223,245 | $0 |

**Current Exemptions**

There are no exemptions associated with this parcel

**Sales & Transfers**

| Transfer Date | Recorded Consideration | Instrument Number | Qualification Code | Grantor/Seller | Instrument Type |
|---|---|---|---|---|---|
| 8/10/2011 | $162,000 | 2011101428 | 12 | CERRON, JORGE A | CT |
| 6/9/2005 | $550,000 | 2005133833 | 01 | LAZAREVA, ALEVTINA | WD |
| 8/13/2003 | $100 | 2003175883 | 11 | KOHLRIESER, STEVE | WD |
| 5/12/1998 | $130,000 | 2863/2553 | 01 | LEWIS ROBERT W & ETHEL M | WD |
| 4/1/1988 | $100,000 | 2023/2186 | X3 | | NA |

**Associated Tangible Accounts**

There are no associated tangible accounts for this parcel

Filed for record 05/01/2014 02:01 PM Karen E Rushing, Clerk of the Circuit Court - Sarasota County, FL

Exhibit "E"

# IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## SECOND DISTRICT, POST OFFICE BOX 327, LAKELAND, FL 33802-0327

April 30, 2014

**CASE NO.: 2D11-3425**
L.T. No. : 2009 CA 015793 NC

Jorge A. Cerron                     v.        G M A C Mortgage, L L C

Appellant / Petitioner(s),                   Appellee / Respondent(s).

## BY ORDER OF THE COURT:

Within fifteen days from the date of this order, Appellee shall file a response to the motion to enforce mandate. See Sundie v. Haren, 253 So. 2d 857, 858 (Fla. 1971) ("A party against whom an erroneous judgment has been made is entitled upon reversal to have his property restored to him by his adversary."). Appellee's response shall address whether relief is properly sought by motion to enforce mandate or by further proceedings in the circuit court.

I HEREBY CERTIFY that the foregoing is a true copy of the original court order.

Served:

Marc James Ayers, Esq.        Jorge A. Cerron        Karen Rushing, Clerk

ec

James Birkhold
Clerk

Pg. 1 of 6    Exhibit "F"    

### IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
### IN AND FOR SARASOTA COUNTY, FLORIDA
### CIVIL ACTION

GMAC MORTGAGE, LLC,
    **Plaintiff,**

vs.

    **CASE NO. 2009 CA 015793 NC**
    **DIVISION**

JORGE A. CERRON , et al,
    **Defendant(s).**

_____/

### NOTICE OF FILING

    Plaintiff, GMAC MORTGAGE, LLC, gives Notice of Filing of Original Mortgage and Note.

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail to all parties listed on the attached service list on this ___22___ day of March, 2010.

        Florida Default Law Group, P.L.
        P.O. Box 25018
        Tampa, Florida 33622-5018
        (813) 251-4766

        By: _____
        Erik DeL'Etoile
        Florida Bar No. 71675
        Robert Schneider
        Florida Bar No. 52854
        Tamara M. Walters
        Florida Bar No. 922951



FILED FOR RECORD
2010 MAR 24 PM 2: 49
KAREN E. RUSHING
CLERK OF CIRCUIT COURT
SARASOTA COUNTY FL

FILE_NUMBER: F09095434

DOC_ID: M003100



*(handwritten)* Pge 2 of 6  Part of Exhibet. F 4

Loan Number: 0088943212

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Payment and Rate Caps)

MIN: 100013800889432122

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES MAY BE LIMITED AND MY INTEREST RATE INCREASES ARE LIMITED.**

| | | |
|---|---|---|
| March 1, 2006 | VENICE | FLORIDA |
| *[Date]* | *[City]* | *[State]* |

**5600 Beach Way Unit 107, Sarasota, FL 34231**
*[Property Address]*

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $560,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is GreenPoint Mortgage Funding, Inc.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

**(A) Interest Rate**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **1.500%**. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B) Interest Change Dates**

The interest rate I will pay may change on the first day of **April, 2006**, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

The new rate of interest will become effective on each Interest Change Date.

**(C) Interest Rate Limit**

My interest rate will never be greater than 12.000%.

**(D) The Index**

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.

The most recent Index figure available as of the date 15 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(E) Calculation of Interest Rate Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **Two and 750/1000ths** percentage points (2.750%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the rounded amount will be my new interest rate until the next Interest Change Date.

Florida Adjustable Rate Note (LIBOR)— Single Family
GreenPoint Mortgage Funding                Page 1 of 4                H62000FL 06/05
March 1, 2006                                Modified By GreenPoint Mortgage Funding

G P M W D 0 0 8 8 9 4 3 2 1 2 1 4 0

*Page 3 of 6  Part of   Exhibit "F"*

3.  **PAYMENTS**

   **(A) Time and Place of Payments**
   I will pay principal and interest by making a payment every month.
   I will make my monthly payments on the first day of each month beginning on April 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on March 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at P.O. Box 1093, Branford, CT 06405-8093 or at a different place if required by the Note Holder.

   **(B) Amount of My Initial Monthly Payments**
   Each of my initial monthly payments will be in the amount of U.S. $1,932.68. This amount may change.

   **(C) Payment Change Dates**
   My monthly payment may change as required by Section 3(D) below beginning on the 1st day of April, 2008, and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay the Full Payment.
   I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

   **(D) Calculation of Monthly Payment Changes**
   At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." The Note Holder will then calculate the amount of my monthly payment due the month preceding the Payment Change Date multiplied by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, I may choose to pay the Limited Payment.

   **(E) Additions to My Unpaid Principal**
   My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder will also add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above.

   **(F) Limit on My Unpaid Principal; Increased Monthly Payment**
   My unpaid principal can never exceed a maximum amount equal to one hundred ten percent (110%) of the Principal amount I originally borrowed. My unpaid principal could exceed that maximum amount due to the Limited Payments and interest rate increases. If so, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount which would be sufficient to repay my then unpaid principal in full on the Maturity Date at my current interest rate in substantially equal payments.

   **(G) Required Full Payment**
   On April 1, 2011 and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I will also begin paying the Full Payment as my monthly payment on the final Payment Change Date.

4.  **NOTICE OF CHANGES**
   The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will contain the interest rate or rates applicable to my loan for each month since the prior notice or, for the first notice, since the date of this Note. The notice will also include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

---

Florida Adjustable Rate Note (LIBOR)— Single Family
GreenPoint Mortgage Funding                    **Page 2 of 4**                    H62800FL 06/05
March 1, 2006                                                        Modified By GreenPoint Mortgage Funding

G P M W D O O 8 8 9 4 3 2 1 2 1 4 0

*Page 4 of 6 Part of Exhibit "F"*

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

    **(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    **(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    **(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    **(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    **(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder

**Florida Adjustable Rate Note (LIBOR)— Single Family**
**GreenPoint Mortgage Funding**                    Page 3 of 4                    H62080FL 06/05
March 1, 2005                                                        Modified By GreenPoint Mortgage Funding

G P M W D 0 0 8 8 9 4 3 2 1 2 1 4 0

*Pg 5 of 6  Part of Exhibit "F"*

may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.    UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any Interest in the property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12.    DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the Mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
Jorge A. Cerron              -Borrower                                       -Borrower

_____ (Seal)        _____ (Seal)
                            -Borrower                                       -Borrower

*[Sign Original Only]*

Florida Adjustable Rate Note (LIBOR)— Single Family
GreenPoint Mortgage Funding                    Page 4 of 4                    H62000FL 06/05
March 1, 2006                                                          Modified By GreenPoint Mortgage Funding

G P M W D 0 0 8 8 9 4 3 2 1 2 1 4 0

Pge 6 of 6 Port of Exhebit "F"

**WITHOUT RECOURSE**
**PAY TO THE ORDER OF:**

GreenPoint Mortgage Funding, Inc.

Thomas K. Mitchell
Vice President

Copy obtained From the Clerk's Regenter-
on august before Hering 8/13/13

Cromarty v. Wells Forgo (Reversed (Fla 4-13)
the bonowers Argue That the note's blonk endor-
Sement was undated and the Bonk's Evidence
was insufficient to stablish that it
held the note and was entitled to enforce
the note At the time it Filed suit.
We Agree with the bonower's argument
as to standing and reverse.

Identifier:0307674906     Doc Type:MRGU

*Pg. 1 of 4*

● *Exhibit "G"* ●

Prepared by or under the supervision of:

**Brenda Akers**
*[Name of Natural Person]*

**1800 Pembrook Drive Suite 190**
*[Street Address]*

**Orlando, FL 32810**
*[City, State Zip Code]*

~~After recording please return to:~~

**GreenPoint Mortgage Funding, Inc.**
*[Company Name]*

*[Name of Natural Person]*

**981 Airway Court, Suite E**
*[Street Address]*

**Santa Rosa, CA, 95403-2049**
*[City, State Zip Code]*

*I CERTIFY THESE ARE TRUE AND ORIGINAL COPIES*
*M Jones*

260225        *[Space Above This Line For Recording Data]*

# MORTGAGE

MIN: 100913800689432122

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)    **"Security Instrument"** means this document, which is dated March 1, 2006, together with all Riders to this document.

(B)    **"Borrower"** is Jorge A Cerron, An Unmarried Man

. Borrower is the mortgagor under this Security Instrument.

(C)    **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Identifier:0307674906

Doc Type:MTGU

*P's 2 of 4    Part of Exhibit "G"*

(D)    "Lender" is GreenPoint Mortgage Funding, Inc..
Lender is a Corporation organized and existing under the laws of
the State of New York. Lender's address is 100 Wood Hollow Drive, Novato, CA 94945.

(E)    "Note" means the promissory note signed by Borrower and dated March 1, 2006. The Note states that
Borrower owes Lender Five Hundred Sixty Thousand and 00/100ths
Dollars (U.S. $560,000.00)
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not
later than March 1, 2036.

(F)    "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(G)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due
under the Note, and all sums due under this Security Instrument, plus interest.

(H)    "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider       ☒ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider               ☐ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider            ☐ Revocable Trust Rider
☒ Other(s) [specify] Occupancy & Interim Int. Rider

(I)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable
judicial opinions.

(J)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association or
similar organization.

(K)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer,
or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.

(L)    "Escrow Items" means those items that are described in Section 3.

(M)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to,
or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance
in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

G P M W D 0 0 8 8 9 4 3 2 1 2 1 1 7

Identifier:0307674906      Doc Type:MTGU



the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  Hazardous Substances.  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.  Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the

Identifier:0307674906    Doc Type:MTGU

*By 4 f 4 Port of Exhibit G 4*

action required to cure the default; (e) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release.  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees.  As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver.  The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

5/24/2014

Greenpoint Mortgage Closed | The Truth About Mortgage.com


*Exhibit "A"*

TheTruthAbout
**MORTGAGE**

Compare Today's
Mortgage Rates

**View Rates Now**

MORTGAGE NEWS    MORTGAGE TIPS    MORTGAGE 101    MORTGAGE RATES    LOAN TYPES    REFINANCE    VS.

# Greenpoint Mortgage Closed

Colin Robertson    August 20, 2007    Comments Off

Greenpoint Mortgage was shut down today by parent Capital One Financial Corp., who said weak demand for residential home loans forced the company to shut the ailing mortgage lender.

Capital One announced that it would cease loan origination operations at Greenpoint Mortgage immediately, and according to initial reports, cut roughly 1,900 jobs.

Loans that are already in the pipeline and locked will continue to be processed and should ultimately fund as scheduled.

The news followed similar statements made by the VP of investor relations for Capital One last week, who sparked employee concerns that the company was gearing up to close Greenpoint Mortgage.

[See the latest mortgage rates from dozens of lenders, updated daily.]

Greenpoint Mortgage headquarters in Novato, California will be closed, along with 31 other branches in 19 states throughout the United States.

Greenpoint Mortgage specialized in Alt-A loans, offering programs for borrowers with credit scores down to 620, as well as option-arms, second mortgages, jumbo loans, and other high-risk products.

But earlier this year Greenpoint narrowed their product offerings significantly, effectively sinking loan volume and forcing the closure of 13 branches and 440 layoffs.

Capital One picked up the wholesale lender in their $13.2 billion North Fork Bancorp purchase last December, with high hopes that Greenpoint would be a solid performer.

Unfortunately, the market turned at just the wrong time, quickly turning the lender's profits into losses.

Capital One had no intention of keeping mortgage loan balance sheets, and after winding up with more than $600 million in second mortgages on the books earlier this year, the company ultimately made the decision to shut the losing unit.

I received several e-mails from Greenpoint Mortgage employees this week who were concerned about their future at the company.

They mentioned that emergency meetings were held after the comments by their VP of investor relations last week, and that business was very slow, to the point where they felt it wouldn't go on.

And it seems their worries were well-founded, as yet another lender closes its doors.

Greenpoint was the nation's seventh largest originator of Alt-A mortgages.

The shutdown will cost Capital One about $860 million, or $2.15 per share, cutting its 2007 earnings forecast to $5 a share from $7.15.

Capital One stock dropped $2.03, or 2.95% to $66.72 in late trading, and an a    22 cents in after-hours trading on the news.

**Update:** According to an internal Greenpoint e-mail, the commercial lending division is still open.

## Search This Site

[            ]  Search

## Today's Mortgage Rates

*15 year fixed mortgage rates in Sarasota, FL.*

| | | |
|---|---|---|
| **ThirdFederal** NMLS #449401 | APR: 3.334% Payment: $1,186 Fees: $1,638 | **3.190%** RATE Go Fri May 23 |
| **ROUNDPOINT** NMLS #18825 StateLic #MLD672 | APR: 3.125% Payment: $1,149 Fees: $0 | **3.125%** RATE Go Fri May 23 |
| **Sebonic Financial** NMLS #66247 StateLic #MLD356 | APR: 3.270% Payment: $1,149 Fees: $0 | **3.125%** RATE Go Fri May 23 |

Criteria used    SEE ALL RATES



# KEEP CALM AND MORTGAGE ON

## Mortgage Q&A

Are Mortgage Points Worth It?

How Are Mortgage Rates Determined?

How Long After Foreclosure Can I Purchase a Home?

How Long Do You Plan to Keep Your Mortgage?

How Much House Can I Afford?

How to Pay Off the Mortgage Early

Pge 4 of 4
Pge 1 of 4

*Exhibit "i"*



RECORDED IN OFFICIAL RECORDS
INSTRUMENT #2009114600 1 PG

09/16/2009 02:06:01 PM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FLORIDA
CIVIL COURTS Receipt # 1202979

Doc Stamp-Mort:     $0.00
Intang. Tax:        $0.00

SPACE FOR RECORDING ONLY F.S.§695.26

IN THE CIRCUIT COURT OF THE TWELFTH
JUDICIAL CIRCUIT IN AND FOR SARASOTA COUNTY,
FLORIDA
CIVIL ACTION

GMAC MORTGAGE, LLC,
       Plaintiff,
vs.
                    CASE NO.
                    DIVISION
JORGE A. CERRON;  THE UNKNOWN SPOUSE OF JORGE A. CERRON; ANY AND ALL UNKNOWN
PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL
DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN
PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER
CLAIMANTS; SUNTRUST BANK;  BEACH WAY CONDOMINIUM ASSOCIATION, INC.; TENANT #1,
TENANT #2, TENANT #3, and TENANT #4 the names being fictitious to account for parties in possession
       Defendant(s).

## NOTICE OF LIS PENDENS

To the above-named Defendant(s) and all others whom it may concern:

You are notified of the institution of this action by the above-named Plaintiff, against you seeking to foreclose a
mortgage recorded on March 16, 2006, in Official Instrument # 2006049301 of the Public Records of SARASOTA
County, Florida

UNIT G-1, BEACH WAY APARTMENTS, A CONDOMINIUM AS PER DECLARATION OF
CONDOMINIUM RECORDED IN OFFICIAL RECORDS BOOK 846, PAGES 731 ET SEQ., AND
ALL AMENDMENTS THERETO, AND AS PER CONDOMINIUM PLAT RECORDED IN
CONDOMINIUM BOOK 4, PAGES 6 ET SEQ., AND ALL AMENDMENTS THERETO, OF THE
PUBLIC RECORDS OF SARASOTA COUNTY, FLORIDA. TOGETHER WITH ANY AND ALL
AMENDMENTS TO THE DECLARATION AND ANY UNDIVIDED INTEREST IN THE
COMMON ELEMENTS OR APPURTENANCES THERETO.
Dated this 14th day of September, 2009.

                              Florida Default Law Group, P.L.
                              P.O. Box 25018
                              Tampa, Florida 33622-5018
                              (813) 251-4766
                              By:
                              Robert Schneider
                              Florida Bar No. 52854
                              Nikolay Kolev
                              Florida Bar No. 0028005

GMAC-CONV—abiven

FILE_NUMBER: F09095434

DOC_ID: M000105

*Page 244 Part of Exhibit "1"*



### IN THE CIRCUIT COURT OF THE TWELFTH
### JUDICIAL CIRCUIT IN AND FOR SARASOTA COUNTY, FLORIDA
### CIVIL ACTION

**GMAC MORTGAGE, LLC,**
**Plaintiff,**

vs.

**CASE NO.**
**DIVISION**

**JORGE A. CERRON; THE UNKNOWN SPOUSE OF JORGE A. CERRON; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; SUNTRUST BANK; BEACH WAY CONDOMINIUM ASSOCIATION, INC.; TENANT #1, TENANT #2, TENANT #3, and TENANT #4 the names being fictitious to account for parties in possession**
**Defendant(s).**

_____/

## MORTGAGE FORECLOSURE COMPLAINT

Plaintiff, GMAC MORTGAGE, LLC, sues Defendants, JORGE A. CERRON, THE UNKNOWN SPOUSE OF JORGE A. CERRON; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; SUNTRUST BANK; BEACH WAY CONDOMINIUM ASSOCIATION, INC.; TENANT #1, TENANT #2, TENANT #3 and TENANT #4 the names being fictitious to account for parties in possession, and alleges:

### COUNT I - MORTGAGE FORECLOSURE

1.      This is an in rem action to foreclose a mortgage on real property located and situated in SARASOTA County, Florida.

2.      This firm has complied with the notice requirement of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq, as amended. The Notice(s) previously mailed by the firm is attached hereto and incorporated herein as an Exhibit.

**FILE_NUMBER: F09095434**



**DOC_ID: M000100**

Pg 3 of 4    Part of    Exhibit "J"

3. On March 1, 2006, there was executed and delivered a Promissory Note ("Mortgage Note") and a Mortgage ("Mortgage") securing the payment of the Mortgage Note. The Mortgage was recorded on March 16, 2006, in Official Instrument # 2006049301 of the Public Records of SARASOTA County, Florida, (All subsequent recording references are to the public records of SARASOTA County, Florida) and mortgaged the real and personal property ("Property") described therein, then owned by and in possession of the Mortgagor(s). Copies of the original Mortgage Note and Mortgage are attached hereto and incorporated herein as an Exhibit.

4. Plaintiff is now the holder of the Mortgage Note and Mortgage and/or is entitled to enforce the Mortgage Note and Mortgage.

5. The Property is now owned of record by Defendant(s), JORGE A. CERRON.

6. The Mortgage Note and Mortgage are in default. The required installment payment of June 1, 2009, was not paid, and no subsequent payments have been made. The Mortgage is contractually due for the June 1, 2009, payment. The last payment received was applied to the May 1, 2009, installment, and no subsequent payments have been applied to the loan.

7. Plaintiff declares the full amount payable under the Mortgage Note and Mortgage to be now due.

8. Plaintiff must be paid $607,361.65 in principal on the Mortgage Note and Mortgage, together with interest from May 1, 2009, late charges, and all costs of collection including title search expenses for ascertaining necessary parties to this action and reasonable attorney's fees.

9. All conditions precedent to the acceleration of the Mortgage Note and foreclosure of the Mortgage have been performed or have occurred.

10. Plaintiff has retained the law firm of Florida Default Law Group, P.L., in this action and is obligated to pay it a reasonable fee for its services in bringing this action as well as all costs of collection.

11. The interests of each Defendant are subject, subordinate, and inferior to the right, title, interest, and lien of Plaintiff's Mortgage with the exception of any special assessments that are superior pursuant to Florida Statutes §159 (2006) and Florida Statutes §170.09 (2006).

12. THE UNKNOWN SPOUSE OF JORGE A. CERRON may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of homestead rights, possession, or any right of redemption, or may otherwise claim an interest in the Property.

13. SUNTRUST BANK may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Mortgage recorded in Instrument No. 2006167429, or may otherwise claim an interest in the Property.

2

*[handwritten: Pg 4 of 4 Part of Exhibit ~ ??]*

14. BEACH WAY CONDOMINIUM ASSOCIATION, INC. may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of any unpaid condominium assessments levied pursuant to the Declaration of Condominium and any interest acquired pursuant to Chapter 718 F.S.; a Claim of Lien recorded in Instrument No. 2009070832, or may otherwise claim an interest in the Property.

15. TENANT #1, TENANT #2, TENANT #3 and TENANT #4, the names being fictitious to account for parties in possession may claim some interest in the Property that is the subject of this foreclosure action by virtue of an unrecorded lease or purchase option, by virtue of possession, or may otherwise claim an interest in the Property. The names of these Defendants are unknown to the Plaintiff.

WHEREFORE, Plaintiff requests that the Court ascertain the amount due Plaintiff for principal and interest on the Mortgage Note and Mortgage and for late charges, abstracting, taxes, expenses and costs, including attorney's fees, plus interest thereon; that if the sums due Plaintiff under the Mortgage Note and Mortgage are not paid immediately, the Court foreclose the Mortgage and the Clerk of the Court sell the Property securing the indebtedness to satisfy Plaintiff's mortgage lien in accordance with the provisions of Florida Statutes §45.031 (2006); that the rights, title and interest of any Defendant, or any party claiming by, through, under or against any Defendant named herein or hereafter made a Defendant be forever barred and foreclosed; that the Court appoint a receiver of the Property and of the rents, issues, income and profits thereof, or in the alternative, order sequestration of rents, issues, income and profits pursuant to Florida Statutes §697.07 (2006); and that the Court retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including the issuance of a writ of possession and the entry of a deficiency decree, when and if such deficiency decree shall appear proper, if borrower(s) has not been discharged in bankruptcy.

Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
(813) 251-4766

By: _____
Robert Schneider
Florida Bar No. 52854
Nikolay Kolev
Florida Bar No. 0028005

GMAC-CONV--abiven

3

*Exhibet "J"*



## FLORIDA DEFAULT LAW GROUP, P.L.
### ATTORNEYS AT LAW
9119 CORPORATE LAKE DRIVE
3RD FLOOR
TAMPA, FLORIDA 33634

Please reply to:
Post Office Box 25018
Tampa, FL 33622-5018

Telephone (813) 251-4766
Telefax (813) 251-1541

September 11, 2009

JORGE A. CERRON
PO BOX 18902
SARASOTA, FL 34276

Re:

| | |
|---|---|
| Loan Number: | 0307674906 |
| Mortgage Servicer | GMAC MORTGAGE, LLC |
| Creditor to whom the debt is owed: | GMAC MORTGAGE, LLC |
| Property Address: | 5600 BEACH WAY UNIT #107, SARASOTA, FL 34231 |
| Our File No.: | F09095434 |

Dear Borrower:

The law firm of Florida Default Law Group, P.L. (hereinafter referred to as "law firm") has been retained to represent GMAC MORTGAGE, LLC with regards to its interests in the promissory Note and Mortgage executed by JORGE A. CERRON on March 1, 2006. Pursuant to the terms of the promissory Note and Mortgage, our client has accelerated all sums due and owing, which means that the entire principal balance and all other sums recoverable under the terms of the promissory Note and Mortgage are now due.

As of the date of this letter, the amount owed to our client is $620,225.60, which includes the unpaid principal balance, accrued interest through today, late charges, and other default-related costs recoverable under the terms of the promissory Note and Mortgage. Additional interest will accrue after the date of this letter.

This correspondence is being sent to comply with the Fair Debt Collection Practices Act and should not be considered a payoff letter. Our client may make advances and incur fees and expenses after the date of this letter which are recoverable under the terms of the promissory Note and Mortgage. Therefore, if you wish to receive figures to reinstate (bring your loan current) or pay off your loan through a specific date, please contact this law firm at (813) 251-4766 or client.services@defaultlawfl.com.

Unless you notify this law firm within thirty (30) days after your receipt of this letter that the validity of this debt, or any portion thereof, is disputed, this law firm will assume that the debt is valid. If you do notify this law firm in writing within thirty (30) days after receipt of this letter that the debt, or any portion thereof, is disputed, this law firm will obtain verification of the debt or a copy of the judgment against you, if any, and mail it to you. Also, upon your written request within thirty (30) days after your receipt of this letter, this law firm will provide you with the name and address of the original creditor, if different from the current creditor. Florida Default Law Group, P.L. is a debt collector. This law firm is attempting to collect a debt, and any information obtained will be used for that purpose.

All written requests should be addressed to Robert Schneider, Florida Default Law Group, P.L., P.O. Box 25018, Tampa, Florida 33622-5018.

Document # 1

¶ 14(a)).[1] Claims for monetary relief of any kind or nature and claims "for relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction" are Stayed Claims. The prosecution of Stayed Claims is prohibited.

4.    With regard to this matter, Defendant Jorge A. Cerron's counterclaims against GMAC Mortgage, LLC have been categorized as follows:

    a.    First Counterclaim, Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, et. seq., is a Stayed Claim and the prosecution of this claim is prohibited;

    b.    Second Counterclaim, Fraud and Misrepresentation, is a Stayed Claim and the prosecution of this claim is prohibited; and

    c.    Third Counterclaim, Unconscionability[2], is a Stayed Claim and the prosecution of this claim is prohibited.

5.    On November 21, 2012, the Bankruptcy Court entered an order (the "Sale Order")[3] approving the sale of certain GMAC Mortgage, LLC assets to Ocwen Loan Servicing, LLC ("Ocwen"). On February 15, 2013 (the "Closing Date"), Ocwen purchased certain assets and mortgage servicing rights to mortgage loans from or became the sub-servicer of certain mortgage loans of Residential Capital, LLC and its subsidiaries, including GMAC Mortgage, LLC. The mortgage servicing rights for the Defendant Cerron's loan were either included in the sale or Ocwen was made the sub-servicer of Defendant Cerron's loan. As a result, said loan is currently serviced by Ocwen.

---

[1] A copy of the Final Supplemental Order was attached to GMACM's Notice of Bankruptcy and is also available at no charge at http://www.kccllc.net/rescap (Doc. 774).

[2] Plaintiff contends that the Third Counterclaim does not state a cause of action.

[3] A complete copy of the 174 page Sale Order may be found at no charge at http://www.kccllc.net/rescap (Doc. 2246).

*Ps 1 of 2*        *Document #2*



Jorge Cerron
P.O. Box 18902
Sarasota, Florida 34276


June 21, 2013


GMAC Mortgage, LLC,
1100 Virginia Drive
Fort Washington, PA 19034


RE: Mortgage Contract for property located at 5600 Beach Way Drive Unit 107, Sarasota, Florida, 34231 dated, March 1, 2006. See attached copy of mortgage contract with the legal description in schedule A

Dear Sir or Madam:

This is to notify you that I have elected to terminate/rescind the above written contract with you, effective June 21, 2013, as a result of your failure to meet the obligations under the terms of the contract and your subsequent failure to remedy the default. You are in default as a result of violation of section 22 of said contract.

Said breach has been verify by the Florida second district courts of appeal please see herein attached a copy of the court's opinion/ruling in the case # 2D11-3425 regarding your mortgage contract with Mr. Jorge Cerron for the subject property above listed.

Due to this breach of contract as clearly stated above and because said breach represented a substantial loss to Mr. Jorge Cerron he is entitle by the law to rescind/terminate the above contract therefore I am terminating/rescinding my entire Mortgage contract with you effective immediately and request for all the monies given to you be refund said amount it is in excess of $250,000.00.

Please comply with the law that in pertinent part reads: ."**Breach by Other Party:** When one party to a contract unjustifiably refuses to perform his agreement in whole, or in any substantial part, the other party has the option to rescind the entire contract".

You may contact me at the above address if you have any questions. I can also be contacted by E-Mail at gcerron@att.net

Sincerely,

Jorge Cerron
P.O. Box 18902
Sarasota, Florida 34276

Pse 2 of 2          Pat of Document #2

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

JUN 24 2013

1. Article Addressed to:

Florida default Law group
P.o Box 25018
Tampa FL 33622
Att: Nicolay Kaley

3. Service Type
☐ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)    7012 3460 0000 9428 3665

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

JUN 25 2013

1. Article Addressed to:

GMAC Mortgage LLC
1100 Virginia Drive
Fort Washington PA
ZIP 19034

3. Service Type
☐ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)    7012 3460 0000 9428 3641

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

DOCUMENT #3

**IN THE COUNTY/CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA**

Ocwn Loan servicing, LLC    CASE NO.: 2009 - CA - 15793

v.

Jorge A. cerrow

## ORDER

**THIS CAUSE** having come to be heard on  March 14, 2014  Defendant's
Motion to continue trial and Plaintiff's Partial Motion Regarding
Triable Issue of Fact
and the court having heard argument of counsel and/or the parties and being otherwise advised in
the premises, it is hereupon

**ORDERED AND ADJUDGED** that said Motion be and the same is hereby
Motion to continue Trial is GRANTED and continued
to June 23, 2014

Plaintiff's Partial motion regarding Triable issue of Fact
is DENIED

**DONE AND ORDERED** in Sarasota, Sarasota County, Florida on this  14th  day of
March              , 20 14 .

_____
**COUNTY/CIRCUIT JUDGE**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ) | Case No. 12-12020 (MG) |
| ) | |
| RESIDENTIAL CAPITAL, LLC. et al. ) | Chapter 11 |
| ) | |
| Debtors ) | Jointly Administered |
| ) | |

BANKRUPTCY BORROWER'S OBJECTION TO THE DEBTORS PROOF OF CLAIM,
BORROWER'S OBJECTION/MOTION TO RELIEF FROM THE AUTOMATIC STAY
FILED IN THIS CASE, BORROWER'S REQUEST OF THE INSPECTION OF GMACM'S
DOCUMENTS FILED IN THIS BANKRUPTCY CASE FOR THE BORROWER'S
PROPERTY AND, BORROWER'S MOTION TO SANCTION GMAC MORTGAGE LLC
FOR FRAUD ON THE BANKRUPTCY COURT. (GMACM IS ONE OF THE DEBTORS
UDER RESIDENTIAL CAPITAL LLC.)

        COMES NOW, the borrower JORGE CERRON and in support of his objections and
motions states:

Factual Facts History

1.  In 9/16/2009 GMAC Mortgage LLC., who is part of Residential Capital LLC., and
    named as a debtor in this instant case, filed a foreclosure complain against the borrower
    JORGE CERRON in the Circuit Court in SARASOTA FLORIDA under case # 2009 CA
    015793 NC.
2.  In 7/5/2011 a final judgment of foreclosure was entered filed and recorded against the
    borrower Jorge Cerron's property.
3.  On 8/10/2011 the foreclosure sale of the borrower's property took place.
4.  On 8/31/2011 GMACM obtained a certificate of title on said property by buying the
    borrower's property in the foreclosure sale for $162,000.00. (see copy attach).
5.  On May 14, 2012 took place GMACM's bankruptcy filing (Petition Date), at the
    UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW
    YORK.
6.  On 8/8/2012 the final Summary Judgment entered in favor of GMACM for the case #
    2009 CA 015793 NC **was reversed** and remanded by the SECOND DISTRICT COURT
    OF APPEAL under the case # 2D11-3425.
7.  On 10/23/2012 GMAC Mortgage LLC., filed its Suggestion of Bankruptcy in the lower
    court's case # 2009 CA 015793 NC GMACM vs. JORE CERRON
8.  On 11/21/2012 the bankruptcy court entered an order (the sale order) approving the sale
    of certain GMACM's assets to OCWEN LOAN SERVISING.
9.  GMACM claimed that OCWEN purchased the borrower's mortgage and note on
    2/15/2013 (the closing date),
10. On 11/21/2013 one year after the bankruptcy court's sale order (11/21/2012) and nine
    months after the bankruptcy court's closing date (2/15/2013) GMACM filed its CROSS-

NOTICE- OF HEARING ON PLAINTIFF'S MOTION TO SUBSTITUTE PARTY
PLAINTIFF OCWEN LOAN SERVICING LLC FOR GMAC MORTGAGE. At the
lower court in Sarasota Florida for the case of GMACM vs. Jorge Cerron Case # 2009
CA 015793 NC

11. On 12/17/2013 at the hearing for the PLAINTIFF'S MOTION TO SUBSTITUTE
PARTY PLAINTIFF OCWEN LOAN SERVICING LLC FOR GMAC MORTGAGE,
the borrower JORGE CERRON learned about the new discovery evidence and about the
plaintiff's false statements regarding the barrower's loan being sold or transfer to
OCWEN LOAN SERVISING at the bankruptcy court.

12. On 4/10/2014 the borrower Jorge Cerron send a letter to the SECOND DISTRICT
COURT OF APPEAL OF FLORIDA IN LAKELAND, FL. (see copy of letter).

I.      BORROWER JORGE CERRON'S CLAIMS.

A- GMACM had not included and/or filed the mortgage and note encumbering the borrower
Jorge Cerron's property in the bundle of loans that were transferred or sold to OCWEN
LOAN SERVISING in the bankruptcy court, because the mortgage and note for the
BORROWER'S property were never included in GMACM'S BANKRUPTCY FILING
on May 14, 2012 because SAID MORTGAGE AND NOTE did not existed in the first
place, the mortgage and note for the borrower's property were dissolved on 8/10/2011
when GMAC sold the borrower's property for $162,000.00 at the foreclosure sale, and
when a new certificate of title for the subject property was issued on 8/31/2011.(SEE
ATTACH).

B- GMACM committed fraud on the SECOND DISTRICT COURT OF APPEAL IN
LAKELAND, FLORIDA when it did not obeyed the 2DCA court's order of reversal of
the sale and of the certificate of title of the borrower's property. (Florida 2DCA case#
2D11-3425)

C- GMACM never reversed said title perpetuating fraud on the lower court in Sarasota
County, Florida on case # 2009 CA 015793 NC (GMACM vs. Jorge Cerron). In a
wrongful foreclosure case.

D- GMACM committed fraud on this Bankruptcy Court when it falsely stated that a
mortgage and note for the borrower Jorge Cerron's property were included in GMACM'S
filing of bankruptcy on May 14, 2012 (Petition Date), at the UNITED STATES
BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK.

E- GMACM committed perjury and fraud on this bankruptcy court when attested about facts
that it knew that were false and GMACM is continuing up to this date committing
FRAUD in this court and on all the above courts.

F- GMACM COULD NOT HAD INCLUDED the borrower Jorge Cerron's loan in May 14,
2012 when it filed for bankruptcy or after that date because at that time were not a
mortgage and a note encumbering the borrower's property, at that time and now
GMACM holds a certificate of title for the borrower's property illegally and fraudulently,
(see copy attach of said title) and there is not a mortgage or/and a note attached to said
title because GMACM acquired said title in a foreclosure sale by buying the borrower
Jorge Cerron's property for $162,000.00 in cash.

G- GMACM had collected from the default insurance placed on the mortgage and note
encumbering the borrower Jorge Cerron's property, GMACM was required by the default

insurances ensuring the borrower's property to show that the subject loan was defaulted and foreclosed therefore GMACM in order to collect and get paid from the various default insurances placed on the subject property ( PMI, LMI, and/or other default insurances) had to showed to the default insurance companies that a foreclosure sale on the subject property was done and it had to disclosed the amount recovered in said foreclosure sale, that is one of the reason that GMACM did not reversed the certificate of title for the subject property, title that had obtained after it foreclosed the subject loan.

H- GMACM collected and got paid over one million dollars from the subject loan's default insurances, and never informed to the default insurances companies that the foreclosed loan have to be reversed and remanded to continue litigation in the circuit court of Sarasota, Florida as per the Second District Court of Appeal's order.

I- GMACM had not informed to this bankruptcy court about the above facts, GMACM had failed to disclosed the amounts, checks, credits, received in all its defaulted and foreclosed loans, as well as the monies received by the default insurance companies.

J- GMACM had not reported properly all the above facts in its taxes submitted to the UNITED STATES GOVERNMENT AND TO THIS BANKRUPTCY COURT, further GMACM IS culpable of fraud.

K- The borrower Jorge Cerron's mortgage and note debt were paid and satisfied by the default insurances protecting said mortgage and note, further said mortgage and note were dissolved by the foreclosure sale and the new certificate of title issued for the subject property, said title does not have a mortgage or a note encumbering it.

L- GMACM bankruptcy petition approval is a void judgment because it was obtained by fraud.

The borrower Jorge Cerron has been directly affected by GMACM's false allegations and by GMACM's misrepresentation in the Bankruptcy Court when it filed its petition for bankruptcy under chapter 11, therefore the borrower Jorge Cerron requests to this court as follow:

1. Request for an evidentiary hearing. In order to inspect GMACM alleged documents filed in this bankruptcy court for the borrower's mortgage and note.
2. Request for copies of all default insurances coverage's checks, wire transfers, deposits, monies given and/or paid to GMACM.
3. Request to inspect GMACM's tax documents filed in this bankruptcy court, in order to check for tax fraud.
4. Request for the relief from the automatic stay filed in this case.
5. Request for discovery of all the documents filed by GMACM for the debtor's proof of claim.
6. And/or for this court to sanction GMACM accordingly.
7. Request for this honorable bankruptcy court to accept the borrower JORGE CERRON's Requests, Motions and Claims for being just and timely submitted because of the recently new discovery evidence discovered in this instant case and discovered in the above described court's cases involving the borrower Jorge Cerron's property, said property is in controversy in this bankruptcy petition filed by RESIDENTIAL CAPITAL LLC./GMAC MORTGAGE LLC..
8. And/or to accept borrower's filing of this document for being allow by the law when; 1- recently new discovery, 2- fraud on the court, 3- when the court's bankruptcy order was

induced by misrepresentation/fraud therefore it is void (void judgment) 4- there is not statute of limitation or barred time frame in effect for a void judgment ( the law of voids) 5- there is a lawful claim against a void judgment, 6- when a bankruptcy petition was done by committing fraud and false disclosures of the debts, liabilities, assets, tax documents and/or ledger accounting information and documents.

9.  And because of the above facts (consequently) the borrower Jorge Cerron's claims and motions submitted in this document are not barred by the bar date and shall be admitted also for the following reasons:

The Borrower Jorge Cerron's Claims are Supported by Sufficient Evidence

a-  The Claim should be admitted because it is supported by sufficient evidence documentation.

b-  The claimant Jorge Cerron had complied with the Rule 3001 documentation requirements, the claimant is entitled to prima facie validity of his claims. (see coy of the certificate of title ) Federal Rules of Evidence *Subdivision (d)*. "Satisfactory evidence" of perfection, which is to accompany the proof of claim, would include a duplicate of an instrument filed or recorded, a duplicate of a certificate of title when a security interest is perfected by notation on such a certificate, a statement that pledged property has been in possession of the secured party since a specified date, or a statement of the reasons why no action was necessary for perfection.

c-  Because there is not absent documentation, the proof of claim is sufficient for the objector to concede validity of the borrower's claim.

d-  Because is a likelihood that the borrower's vested rights will be prejudice if this court does not admits the borrower's claims and motions.

e-  Because the borrower Jorge Cerron will suffer irreparable loses, injury and prejudice if this court does not admit his motions and claims.

f-  Because the borrower has already being injured by GMACM misrepresentation and fraud in this court and in the lower circuit court in Sarasota Florida, especially when in that court GMACM was permitted to substitute the party plaintiff and have Ocwen Loan Servicing LLC., named as the new party plaintiff by alleging that GMACM has transferred to Ocwen Loan Servicing the borrower's loan under the bankruptcy court's approval for the sale date of GMACM's assets to Ocwen, however GMACM's statements about transferring the borrower Jorge Cerron's Mortgage and Note to Ocwen Loan Servicing are not true according to the new discovery evidence submitted with this document. (see copy of the certificate of title dated 8/31/2011 that showed that GMACM did not had a Mortgage or a Note encumbering the borrower's Jorge Cerron's property at the time of after the time that it filed for a bankruptcy petition on May 14, 20012, therefore GMACM could not had transferred a no existing mortgage and note to Ocwen Loan Servicing LLC., through the bankruptcy sale order in 2/15/2013 and GMACM had not included the borrower's loan in its bankruptcy petition because a mortgage or a note encumbering the borrower Jorge Cerron's property did not existed in the first place, GMACM committed fraud on the bankruptcy court)

10- Request for the wrongful foreclosure case GMACM vs. Jorge Cerron case # 2009 CA 015793 NC in the court of Sarasota, Florida to be dismiss (See Wilson v. Deutsche Bank Nat'l. Trust (In re Wilson), 410 Fed. App'x. 409, 410 (2d Cir. 2011) (wrongful foreclosure suit was properly dismissed by the bankruptcy court pursuant to Rooker-Feldman).

WHEREFORE, the borrower Jorge Cerron requests this court to enter an order granting its motion for the relief from the automatic stay, and also granting the above requests.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the forgoing has been furnished by certify return receipt U. S mail to the law offices of WOLFE & WYMAN LLP. Litigation Counsel to the Debtors and Debtors in Possession 11811 N. Tatum, Suite 3031 Phoenix, AZ 85028 ATTN: Colt B. Dodrill, Esq., on this 28 day of April, 20 14.

Respectfully submitted,

Jorge Cerron
P.O. Box 18902
Sarasota, Florida, 34276.

SERVICE LIST

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
Manhattan
One Bowling Green
New York, NY 10004-1408
Attn: Clerk of the Court /to file in Case No. 12-12020 (MG) RESIDENTIAL CAPITAL, LLC. et al. Chapter 11

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
Manhattan
One Bowling Green
New York, NY 10004-1408
Attn:  HONORABLE MARTIN GLENN UNITED STATES BANKRUPTCY JUDGE

MORRISON & FOERSTER
Counsel for Residential Capital, LLC, et al.
1290 Avenue of the Americas
New York, NY 10104
ATTN: Norman S. Rosenbaum, Esq.

WOLFE & WYMAN LLP
Litigation Counsel to the Debtors and Debtors in Possession
11811 N. Tatum, Suite 3031
Phoenix, AZ 85028
By: Colt B. Dodrill, Esq.

KAREN E. RUSHING, CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FL
Real Estate Index Search

Report # 5207256   Requested By WEBPUBLIC (WEBPUBLIC) Party Name Begins With CERRON Document Type
Is CERT OF TITLE Permanent Index  Y

Page  1  of  1
Date:   05/14/2014 10:48 AM

| Instrument # | Book | Page | Date Filed | Document Type | Name | More? | Associated Name | More? | Image | Legal Description | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2011101428 | | | 08/31/2011 | CERT OF TITLE | R  CERRON JORGE A | ✓ | E  GMAC MORTGAGE LLC | | ✓ | 2009 GA 0167593 NC UN 01 BEACH WAY APTS | Perm |

**KAREN E. RUSHING, CLERK OF THE CIRCUIT COURT**
**SARASOTA COUNTY, FL**
**Real Estate Index Detail**

Date: 05/14/2014 10:45 AM

## Document Information

| | |
|---|---|
| **Instrument #:** 2011101428 | **Document Type:** CERT OF TITLE |
| **Date Received:** 08/31/2011 11:11:40 AM | **Book Type:** NONE |
| **Index Status:** Permanent Index | **Book:** |
| **Image?:** ✓ | **Page:** |
| **Consideration:** $162,000.00 | **# Pages:** 1 |
| **File Page:** NO | |
| **Remarks:** | |

### Grantors

1   CLERK CIRCUIT COURT SARASOTA

2   CERRON JORGE A

3   SUNTRUST BANK

4   BEACH WAY CONDOMINIUM ASSOCIATION INC

### Grantees

1   GMAC MORTGAGE LLC

### Legal Information

1   2009 CA 015793 NC UN G1 BEACH WAY APTS

### Returnee Information

CENTRAL RECORDS
ROOM 201

☒ IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT IN AND FOR SARASOTA
COUNTY, FLORIDA
☐ IN THE COUNTY COURT IN AND FOR SARASOTA COUNTY, FLORIDA

| DIVISION: | CASE NUMBER: |
|---|---|
| CIVIL | 2009 CA 015793 NC |

RECORDED IN OFFICIAL RECORDS
INSTRUMENT #2011101428        1 PG

08/31/2011 11:11:40 AM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FLORIDA
CIVIL COURTS 3        Receipt # 1419739

Doc Stamp-Mort:   $0.00
Doc Stamp-Deed: $1134.00
Intang. Tax:      $0.00
STAMP FOR RECORDING

**PLAINTIFF(S)**
GMAC MORTGAGE, LLC,

**VS. DEFENDANT(S)**
JORGE A. CERRON; THE UNKNOWN SPOUSE OF JORGE A. CERRON; ANY AND ALL UNKNOWN
PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL
DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN
PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER
CLAIMANTS; SUNTRUST BANK; BEACH WAY CONDOMINIUM ASSOCIATION, INC.; TENANT #1,
TENANT #2, TENANT #3, and TENANT #4 the names being fictitious to account for parties in possession

**CERTIFICATE OF TITLE**

The undersigned Clerk of the Circuit Court certifies that he or she executed and filed a certificate of sale
in this action on August 10, 2011 for the property described herein and that no objections to the sale have been filed
within the time allowed for filing objections pursuant to §45.031(4) Florida Statutes.

The following property located in Sarasota County, Florida:

UNIT G-1, BEACH WAY APARTMENTS, A CONDOMINIUM AS PER
DECLARATION OF CONDOMINIUM RECORDED IN OFFICIAL RECORDS
BOOK 846, PAGES 731 ET SEQ., AND ALL AMENDMENTS THERETO, AND
AS PER CONDOMINIUM PLAT RECORDED IN CONDOMINIUM BOOK 4,
PAGES 6 ET SEQ., AND ALL AMENDMENTS THERETO, OF THE PUBLIC
RECORDS OF SARASOTA COUNTY, FLORIDA. TOGETHER WITH ANY
AND ALL AMENDMENTS TO THE DECLARATION AND ANY UNDIVIDED
INTEREST IN THE COMMON ELEMENTS OR APPURTENANCES
THERETO.

was sold to GMAC MORTGAGE, LLC,

whose address is 1100 Virginia Drive, Fort Washington, PA 19034.

WITNESS my hand and the seal of this Court on August 31, 2011.

FILED FOR RECORD
2011 AUG 31 AM 10:48
KAREN E. RUSHING
CLERK OF CIRCUIT COURT
SARASOTA COUNTY FLORIDA

KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT

BY: _____
Deputy Clerk

Sale Price # 162,000.00
☑ Doc. Stamp Paid $ 1,134.00
☐ Doc. Stamp Due $ _____
and outstanding



5/14/2014

www.sc-pa.com/testsearch/parcel/0107021019



**Bill Furst**
**SARASOTA COUNTY**
**PROPERTY APPRAISER**

0107021019

**Ownership:**

GMAC MORTGAGE LLC

1100 VIRGINIA DR, FT WASHINGTON, PA, 19034

**Situs Address:**

5600 BEACH WAY DR G-1, SARASOTA, FL, 34242

| | |
|---|---|
| Land Area: | 0 Sq.Ft. |
| Municipality: | Sarasota County |
| Subdivision: | 7104 - BEACHWAY APTS |
| Property Use: | 0403 - CONDO - Low-Rise 2-3 Stories |
| Status: | OPEN |
| Sec/Twp/Rge: | 13-37S-17E |
| Census: | 121150019041 |
| Zoning: | RMF3 - RESIDENTIAL, MULTI-FAMILY (13 UNITS/ACRE) |
| Parcel Description: | UNIT G-1 BEACHWAY APTS |

**Buildings**

**Situs - click address for details**

| | Bldg # | Beds | Baths | Half Baths | Year Built | Gross Area | Living Area | Stories |
|---|---|---|---|---|---|---|---|---|
| 5600 BEACH WAY DR G-1, SARASOTA, FL, 34242 | 1 | 2 | 2 | 0 | 1970 | 1282 | 1182 | 1 |

**Extra Features**

| line # | Building Number | Description | Units | Unit Type | Year |
|---|---|---|---|---|---|
| 1 | 1 | DECP - Carport Detached – CONDO | 1 | UT | 1970 |

**Values**

| Year | Land | Building | Extra Feature | Just | Assessed | Exemptions | Taxable | Cap |
|---|---|---|---|---|---|---|---|---|
| 2013 | $0 | $271,000 | $1,200 | $272,200 | $248,380 | $0 | $248,380 | $23,820 |
| 2012 | $0 | $225,800 | $0 | $225,800 | $225,800 | $0 | $225,800 | $0 |
| 2011 | $0 | $234,000 | $0 | $234,000 | $234,000 | $0 | $234,000 | $0 |
| 2010 | $0 | $242,500 | $0 | $242,500 | $242,500 | $0 | $242,500 | $0 |
| 2009 | $0 | $267,200 | $0 | $267,200 | $267,200 | $0 | $267,200 | $0 |
| 2008 | $0 | $335,300 | $0 | $335,300 | $335,300 | $0 | $335,300 | $0 |
| 2007 | $0 | $390,400 | $0 | $390,400 | $390,400 | $0 | $390,400 | $0 |
| 2006 | $0 | $386,900 | $0 | $386,900 | $386,900 | $0 | $386,900 | $0 |
| 2005 | $0 | $316,718 | $0 | $316,718 | $316,718 | $0 | $316,718 | $0 |
| 2004 | $0 | $248,245 | $0 | $248,245 | $248,245 | $25,000 | $223,245 | $0 |

**Current Exemptions**

There are no exemptions associated with this parcel

**Sales & Transfers**

| Transfer Date | Recorded Consideration | Instrument Number | Qualification Code | Grantor/Seller | Instrument Type |
|---|---|---|---|---|---|
| 8/10/2011 | $162,000 | 2011101428 | 12 | CERRON,JORGE A | CT |
| 6/9/2005 | $550,000 | 2005133833 | 01 | LAZAREVA,ALEVTINA | WD |
| 9/13/2003 | $100 | 2003175883 | 11 | KOHLRIESER,STEVE | WD |
| 6/12/1996 | $130,000 | 2869/2553 | 01 | LEWIS ROBERT W & ETHEL M | WD |
| 4/1/1988 | $100,000 | 2023/2186 | X3 | | NA |

**Associated Tangible Accounts**

There are no associated tangible accounts for this parcel

# M A N D A T E

from

## DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA

### SECOND DISTRICT

THIS CAUSE HAVING BEEN BROUGHT TO THIS COURT BY APPEAL, AND AFTER DUE CONSIDERATION THE COURT HAVING ISSUED ITS OPINION;

YOU ARE HEREBY COMMANDED THAT SUCH FURTHER PROCEEDINGS BE HAD IN SAID CAUSE , IF REQUIRED, IN ACCORDANCE WITH THE OPINION OF THIS COURT ATTACHED HERETO AND INCORPORATED AS PART OF THIS ORDER, AND WITH THE RULES OF PROCEDURE AND LAWS OF THE STATE OF FLORIDA.

WITNESS THE HONORABLE MORRIS SILBERMAN CHIEF JUDGE OF THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA, SECOND DISTRICT, AND THE SEAL OF THE SAID COURT AT LAKELAND, FLORIDA ON THIS DAY.

DATE: August 7, 2012

SECOND DCA CASE NO. 2D11-3425

COUNTY OF ORIGIN:   Sarasota

LOWER TRIBUNAL CASE NO.  2009 CA 015793 NC

CASE STYLE:   JORGE A. CERRON      v.   G M A C MORTGAGE, L L C

James Birkhold
Clerk

cc: (Without Attached Opinion)
Jorge A. Cerron            Marc James Ayers, Esq.

me

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JORGE A. CERRON,                           )
                                           )
            Appellant,                     )
                                           )
v.                                         )          Case No. 2D11-3425
                                           )
GMAC MORTGAGE, LLC,                        )
                                           )
            Appellee.                      )
_____)

Opinion filed July 18, 2012.

Appeal from the Circuit Court for Sarasota
County; Charles E. Roberts, Judge.

Jorge A. Cerron, pro se.

Marc James Ayers and Jose D. Vega of
Bradley Arant Boult Cummings LLP,
Birmingham, Alabama, for Appellee.


NORTHCUTT, Judge.

          Jorge Cerron, pro se, appeals a final summary judgment of foreclosure on

a mortgage in favor of GMAC Mortgage, LLC, the successor to the original lender.  We

reverse because GMAC failed to refute Cerron's affirmative defense alleging lack of

notice.

          GMAC filed a complaint seeking to foreclose a mortgage given by Cerron,

and it alleged generally that all conditions precedent to acceleration had been

performed or had occurred. The complaint attached a copy of the mortgage, paragraph 22 of which required the lender to give thirty days' written notice of default prior to acceleration. Cerron filed a pro se answer, which was not a model pleading. The answer set forth several pages of narrative in opposition to the foreclosure complaint and then alleged four affirmative defenses. The first affirmative defense asserted that GMAC failed to give timely notice of default and of the lender's intent to accelerate as required by the mortgage, note, and Florida law. Cerron's answer included a plea for the court to dismiss the action.

GMAC subsequently filed a motion for summary judgment and asserted, in part, that Cerron's affirmative defenses were legally insufficient. In support of its motion, GMAC filed an affidavit setting forth the amounts due and owing and an affidavit regarding attorney's fees and costs. It subsequently filed a notarized, recorded document recounting that the mortgage had been assigned to GMAC on a date just prior to the filing of the complaint. GMAC also filed the note that was indorsed in blank. None of GMAC's filings specifically addressed or refuted Cerron's affirmative defenses.

The circuit court denied Cerron's motion to dismiss and directed him to file an amended answer, which he did. In the amended answer, Cerron specifically alleged as his seventh affirmative defense that GMAC failed to give a notice of default and that it thus failed to comply with a contractual condition precedent. GMAC filed updated affidavits of amounts due and attorney's fees, but it never addressed Cerron's affirmative defenses, either by affidavit or by memorandum in support of summary judgment.

- 2 -

On appeal, Cerron argues that the circuit court erred in granting summary judgment when GMAC failed to refute his affirmative defenses. Based on our de novo review of the summary judgment, we agree. See Taylor v. Bayview Loan Servicing, LLC, 74 So. 3d 1115, 1117 (Fla. 2d DCA 2011) ("The standard of review on a summary judgment is de novo."). The party moving for summary judgment must show that there are no disputed issues of material fact and that it is entitled to judgment as a matter of law. Id. at 1116-17 (citing Fla. R. Civ. P. 1.150(c)). In addition, a plaintiff moving for summary judgment must refute the nonmoving party's affirmative defenses. Id.; see also Coral Wood Page, Inc. v. GRE Coral Wood, LP, 71 So. 3d 251, 253 (Fla. 2d DCA 2011).

On appeal, GMAC maintains that Cerron had the burden to file an affidavit stating that he never received a notice of default, at which point GMAC would have been required to refute the contention with contrary evidence. That is incorrect. A plaintiff moving for summary judgment must either conclusively refute the factual bases for the defendant's affirmative defenses or show that the defenses are legally insufficient. Coral Wood Page, 71 So. 3d at 253. As in Taylor and Konsulian v. Busey Bank, N.A., 61 So. 3d 1283 (Fla. 2d DCA 2011), when Cerron alleged GMAC's failure to provide a contractually required notice of default, GMAC's burden on summary judgment was to show that it had satisfied this condition precedent. It failed to do so.

Reversed and remanded.

SILBERMAN, C.J., and CRENSHAW, J., Concur.

- 3 -

Second District Court of Appeal

1005 E. Memorial Blvd.

Lakeland FL 33801

Tel: 863-499-2290

April 10, 2014


Honorable Northcutt, Judge, Honorable Silberman, C.J. and Honorable Crenshaw, J, Judges:

This letter is in reference to your order/opinion entered and filed on 7/18/2012 for the case number 2D11-3425, your order clearly stated that the previous Summary Judgment issue by the lower court was reversed and remanded, however GMAC Mortgage LLC., the plaintiff in the lower court case # 2009 CA 015793 NC, did not obeyed your order and have not reversed the title that it had obtained as a result of a foreclosure sale. (see attach copy)

GMAC holds the title for my property regardless of your order that clearly stated that the Summary Judgment of foreclosure on a mortgage in favor of GMAC Mortgage, LLC shall be reversed GMAC has disregarded the law by not obeying a clear court's order.

I am writing this letter to request to your honorable court to issue a dismissal on the above case for failure to obey your order/court's order and/or any other sanctions that you can enforce.

Thank you for your cordial attention to this matter. Please let me know if I have to file any papers and/or what to do in order to help expedite my request.


Sincerely and Respectfully,



Jorge Cerron

P.O. Box 827

Osprey, FL, 34229

Mailed 4/15/14