## **Exhibit 1**

**Supplemental Declaration**

ny-1141614

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------
                )

In re:                     )    Case No. 12-12020 (MG)
                )

RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,  )    Chapter 11
                )

            Debtors.   )    Jointly Administered
                )
---------------------------------------------------------------

**SUPPLEMENTAL DECLARATION OF DEANNA HORST IN SUPPORT OF THE**
**RESCAP LIQUIDATING TRUST'S REPLY IN SUPPORT OF ITS SIXTY-THIRD**
**OMNIBUS CLAIMS OBJECTION (PURPORTED ADMINISTRATIVE CLAIMS)**

I, Deanna Horst, hereby declare as follows:

        1.      I am the Chief Claims Officer for The ResCap Liquidating Trust (the

"<u>Liquidating Trust</u>"), and previously served as Chief Claims Officer for Residential Capital, LLC

and its affiliates ("<u>ResCap</u>"), a limited liability company organized under the laws of the state of

Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases

(collectively, the "<u>Debtors</u>").  I have been employed by affiliates of ResCap since August of

2001.  In June 2012, I became Senior Director of Claims Management for ResCap and in

October of 2013, I became Chief Claims Officer of ResCap.  I began my association with

ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the

Debtors' responsible lending on-site due diligence program.  In 2002, I became the Director of

Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance—

a position I held until 2006, at which time I became the Vice President of the Credit Risk Group,

managing Correspondent and Broker approval and monitoring.  In 2011, I became the Vice

President, Business Risk and Controls, and supported GMAC Mortgage, LLC and Ally Bank in

this role.  In my current position, I am responsible for Claims Management and Reconciliation

and Client Recovery.  I am authorized to submit this supplemental declaration (the

"Supplemental Declaration") in support of *The ResCap Liquidating Trust's Reply in Support of Its Sixty-Third Omnibus Claims Objection (Purported Administrative Claims)* (the "Reply") and the Objection.[1]

2.      Except as otherwise indicated, all facts set forth in this Supplemental Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust's professionals and consultants, and/or Kurtzman Carson Consultants LLC ("KCC"), the Debtors' noticing and claims agent. If I were called upon to testify, I could and would testify competently to the facts set forth in the Reply and the Objection on that basis.

3.      In my capacity as Chief Claims Officer, I am intimately familiar with the claims reconciliation process in these Chapter 11 Cases. Except as otherwise indicated, all statements in this Supplemental Declaration are based upon my familiarity with the Debtors' books and records that were prepared and kept in the course of their regularly conducted business activities (the "Books and Records"), the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents. I or my designee at my direction have reviewed and analyzed the claim forms or requests for payment of purported administrative claims, where applicable, and supporting documentation, if any, filed by the Respondents. Since the Plan became effective and the Liquidating Trust was established, I, along with other members of the Liquidating Trust's management or other employees of the

---

[1]     Defined terms used but not defined herein shall have the meanings ascribed to such terms as set forth in the Reply.

ny-1144885

Liquidating Trust have continued the claims reconciliation process, which includes analyzing

claims and determining the appropriate treatment of the same.  In connection with such review

and analysis, where applicable, I or the Liquidating Trust personnel under my supervision, and

the Liquidating Trust's professional advisors have reviewed (i) information supplied or verified

by former personnel in departments within the Debtors' various business units, (ii) the Books

and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the Claims Register.

4.      Under my supervision, considerable resources and time have been

expended to ensure a high level of diligence in reviewing and reconciling the proofs of claim and

the purported administrative expense claims that are the subject of the Objection and the Reply.

Such claims were reviewed and analyzed by the appropriate personnel and professional advisors.

A.    **Ms. West**

5.      On or about October 5, 2012, Ms. West filed a proof of claim against

GMACM, designated as Claim No. 995, asserting a secured claim in the amount of $443,359 and

an unsecured claim in the amount of $71,641.  See Exhibit A annexed hereto.  In Box 2 of the

proof of claim form (Basis for Claim), Claim No. 995 provides that the basis for the claim is

"mortgage notes."  The only documents appended to the proof of claim form are letters from

GMACM to Ms. West informing Ms. West that she was eligible for certain loan modifications,

and the related executed loan modification agreement.  No additional documentation was

provided along with the proof of claim form in support of Ms. West's claim against GMACM.

6.      On August 16, 2013, the Debtors objected to Claim No. 995 in the

*Debtors' Twenty-Seventh Omnibus Objection to Claims (Borrower Claims with Insufficient*

*Documentation)* [Docket No. 4735].  Ms. West did not file any response to this objection.  On

September 25, 2013, the Court entered an order sustaining the objection, which resulted in the

3

disallowance and expungement of Claim No. 995 from the Claims Register [Docket No. 5199]. KCC served upon Ms. West copies of the Twenty-Seventh Omnibus Claims Objection, as well as the order sustaining said claims objection, at the same address identified on Ms. West's purported administrative expense claim.  See Morrow Declaration ¶¶ 19, Exhibit 1-B annexed to the Objection; see also Exhibit A annexed hereto.

7.     On January 14, 2014, Ms. West submitted to KCC her purported administrative claim, Claim No. 7322, in the amount of $29,849.85.  Upon my review of Claim No. 7322, this submission is a letter statement from Ms. West, dated January 10, 2014, regarding Claim No. 995, in which Ms. West alleges that GMACM engaged in fraudulent and deceptive behavior by failing to fully explain the details and risks of mortgage loans to Ms. West prior to her purchase of two mortgage loans, the first dated March 22, 2006.  Appended to the letter statement is a marked-up Claim No. 995 submitted by Ms. West as a "revised claim."  Yet, in reviewing the content of Claim No. 7322, Ms. West never mentions any alleged claims that arose after the Petition Date of May 14, 2012, and neither explains nor provides any evidence to demonstrate how Claim No. 7322 is different from previously-expunged Claim No. 995 or why it could potentially qualifiy as a valid administrative expense claim.  In conducting diligence with respect to Claim No. 7322, the Debtors' books and records reflect that there are no amounts owing to Ms. West based on postpetition events.

8.     Ms. West did not file her request for payment of this purported administrative expense claim on the docket in the Chapter 11 Cases.  The West Response neglected to address this issue, which was raised in the Objection, or explain any reason for her lack of compliance with the requirements set forth in the Plan and Confirmation Order for filing requests for payment of administrative expense claims.

B.   **Mr. Franklin**

9.      On October 12, 2012, Mr. Franklin filed a proof of claim against EPRE

LLC, designated as Claim No. 1195, asserting an under-secured claim of which $78,031 of the

purported $134,000 claim was secured against EPRE LLC.   See Exhibit B annexed hereto.   In

Box 2 of the proof of claim form (Basis for Claim), Mr. Franklin provides that the basis for the

claim is "loan modification refused."   There were no documents appended to the proof of claim

form.

10.      On July 4, 2013, the Debtors objected to Claim No. 1195 in the *Debtors'*

*Twenty-First Omnibus Objection to Claims (Borrower Claims with Insufficient Documentation*

[Docket No. 4158] (the "Twenty-First Omnibus Claims Objection").   Mr. Franklin filed several

responses in connection with this objection [Docket Nos. 4282, 4961, 4980].   On August 28,

2013, the Debtors filed a reply to, among other things, the Twenty-First Omnibus Claims

Objection [Docket No. 4842].   On September 16, 2013, the Court entered the *Supplemental*

*Order Granting Debtors' Twenty-First Omnibus Objection to Claims (Borrower Claims with*

*Insufficient Documentation) with Respect to Claim No. 1195 of Tom Franklin* [Docket No.

5049], which resulted in the disallowance and expungement of Claim No. 1195 from the Claims

Register.[2]   KCC served upon Mr. Franklin copies of the Twenty-First Omnibus Claims

Objection, as well as the order sustaining said claims objection, at the same address identified on

Mr. Franklin's purported administrative expense claim.   See Morrow Declaration ¶ 18, Exhibit 1-

B annexed to the Objection; see also Exhibit B annexed hereto.

---

[2]      Since the entry of the order expunging Claim No. 1195, Mr. Franklin has liberally exercised his appellate
rights both in the U.S. District Court and the U.S. Court of Appeals for the Second Circuit, but has yet to
obtain a decision from any appellate court overturning this Court's decision.   See Case Nos. 13-civ-8317
(S.D.N.Y.) and 14-418 (2d Cir.).

ny-1144885

11.    On January 6, 2014, Mr. Franklin submitted to KCC his purported administrative expense claim, Claim No. 7335, in the amount of $131,000.00 alleging that he has a claim against the Debtor in said amount.  Furthermore, in Claim No. 7335, Mr. Franklin fails to assert any alleged claim that arose after the Petition Date of May 14, 2012 and also fails to provide any documentation to support its status as a valid administrative expense claim.  The Debtors' books and records reflect that there are no amounts owing to Mr. Franklin based on postpetition events.  Moreover, Similar to Ms. West, Mr. Franklin did not file his request for payment of this purported administrative expense claim on the docket in the Chapter 11 Cases, nor does the Franklin Response address this issue or explain any reason for such lack of compliance.

12.    Accordingly, based upon this review and in consultation with the Liquidating Trust, and for the reasons set forth in the Reply and the Objection, I have determined that the purported administrative claims filed by the Respondents should be accorded the proposed treatment described in the Objection.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  June 5, 2014

_/s/ Deanna Horst_____
Deanna Horst
Chief Claims Officer for The ResCap
Liquidating Trust

ny-1144885

**<u>Exhibit A</u>**

**Claim No. 995**

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number: **GMAC Mortgage #12-12020 (MG)**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): **Vicki R. West**

Name and address where notices should be sent:

**5328 7th Avenue
Los Angeles, CA 90043**

Telephone number:    email: **VRW4Kids@AOL.com**

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
*(If known)*

Filed on:_____

Name and address where payment should be sent (if different from above):

**5328 7th Avenue    (Same)
LA    CA    90043**
Telephone number: **323 299-2434**    email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed: $ 424,099**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim: Mortgage notes**
(See instruction #2)

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

| 3. Last four digits of any number by which creditor identifies debtor:  **1234** | 3a. Debtor may have scheduled account as: **Alison Tearnen** (See instruction #3a) | 3b. Uniform Claim Identifier (optional): (See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑Real Estate ☐Motor Vehicle ☐Other
Describe:
**Value of Property: $ 515,000** Annual Interest Rate **2** % ☐Fixed ☑Variable
(when case was filed)
Amount of arrearage and other charges, as of the time case was filed, included in secured claim,

if any: $_____    Basis for perfection: _____

**Amount of Secured Claim: $ 443,359**    **Amount Unsecured: $ 71,641**

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____ (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature:** (See instruction #9) Check the appropriate box.
☑ I am the creditor.    ☐ I am the creditor's authorized agent.
(Attach copy of power of attorney, if a

I declare under penalty of perjury that the information provided.
reasonable belief.
Print Name: **Vicki R. West**
Title: **Creditor**
Company:
Address and telephone number (if different from notice address above):
**Same as Above.**

Telephone number: **323 299-2434**    Email: **VRW4Kids@AOL.com**

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

☐Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11U.S.C. §507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

1212020121005000000000013

**RECEIVED**

**OCT 0 5 2012**

KURTZMAN CARSON CONSULTANTS

**COURT USE ONLY**

(Signature) **Vicki R. West**    (Date) **10/2/12**

6/14/2010                                              **GMAC** Mortgage

VICKI R WEST
5328 7TH AVE
LOS ANGELES  CA  90043

RE:      Account Number        ████████████
         Property Address
                               5328 7TH AVE
                               LOS ANGELES  CA  90043

Dear VICKI R WEST

**Congratulations!** You are eligible for a Home Affordable Modification.  As previously described, if you
comply with the terms of the Home Affordable Modification Trial Period Plan, we will modify your mortgage
loan and waive all prior late charges that remain unpaid.

The enclosed Home Affordable Modification Agreement ("Modification Agreement") reflects the proposed
terms of your modified mortgage.  The approval is subject to the receipt of the signed and notarized loan
modification agreement and any attachments and receipt of clear title, if applicable.

**How to Accept This Offer:**

### STEP 1   COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE

To accept this offer, <u>you must sign and return both copies</u> of the Modification Agreement <u>to us in the
enclosed, pre-paid envelope</u> by **6/21/2010.**  If the Modification Agreement has notary provisions at the end,
you must sign both copies before a notary public and return the notarized copies to us. We encourage you to
<u>make a copy</u> of all documents for your records. If you do not send both signed copies of the Modification
Agreement by the above date, you must contact us if you still wish to be considered for this program and
have your loan modified.

### STEP 2   CONTINUE TO MAKE YOUR TRIAL PERIOD PAYMENTS ON TIME

<u>Be certain to make any remaining trial period payments on or before the dates they are due</u>. If the trial period
payments are made after their due dates or in amounts different from the amount required, your loan may
not be modified.

**REQUIRED:  We are still in need of the following documentation to execute the
modification agreement:**
  • All required documents have been received.
To better understand the proposed terms of your modified mortgage, please read the attached summary of
your modified mortgage and the Modification Agreement.

We look forward to hearing from you no later than 6/21/2010.

Sincerely,

Loan Servicing
Enclosures

## SUMMARY

Here is a summary of your modified mortgage.

**NEW PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. **If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.**

**INTEREST RATE.** The interest rate on your modified loan will be adjusted as noted in the attached Modification Agreement in Section 3.C.

**TERM EXTENSION.** To reduce your mortgage payment, we will extend the term of your mortgage. This means we will spread your payments over a longer period.

**DEFERRAL OF PRINCIPAL.** To further reduce your mortgage payment, we will defer collection of and not collect interest on $45000.00 of your outstanding principal. You will not be required to make monthly payments on that portion. This portion of principal will be due when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due.

**PRINCIPAL FORGIVENESS.** To further reduce your mortgage payment, we will forgive a portion of your outstanding principal equal to $0.00. You will never be required to repay this amount. However, there could be income tax consequences related to this forgiveness, and you should consult a tax advisor.

**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. GMAC Mortgage, LLC will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that GMAC Mortgage, LLC must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be $242.42. This amount is included in the loan payment noted in Section 3.C. of the enclosed Modification Agreement; you do not need to remit this amount separately.

**ESCROW SHORTAGE.** Due to the timing of your tax and insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of $0.00. You may pay this amount over a 5 year (60 months) period. This monthly payment has already been included in the monthly escrow payment stated above. **If you wish to pay the total shortage now, please send the check to GMAC Mortgage, LLC, PO Box 79162, Phoenix AZ 85062-9162. Paying this amount now in a lump sum will reduce your new monthly mortgage payment.**

**PAYMENT SCHEDULE.** The enclosed Modification Agreement includes a payment schedule in Section 3.C. showing your payment plan for the life of your modified loan after the trial period.

**FEES.** There are no fees or other charges for this modification.

**REPRESENTATIONS.** Please read the enclosed Modification Agreement carefully and make sure that you understand it and that the statements set forth in the "My Representations" section are true and accurate. If you have any questions, please contact us at [1-800-850-4622].

**BORROWER INCENTIVE.** As long as your mortgage loan does not become 90 days delinquent, we will apply your accrued monthly benefit to your mortgage loan and reduce your principal balance after each of the first through fifth anniversaries of the month in which the Trial Period Plan is executed. If your modified mortgage loan ever becomes 90 days delinquent, you will lose all accrued but unapplied principal reduction benefits and will no longer be eligible to accrue additional principal reduction benefits even if the mortgage loan is later brought current.

Investor Loan # ████████

**After Recording Return To:**
GMAC Mortgage, LLC
3451 Hammond Avenue
Waterloo, IA 50702
Custodian ID:  K1

This document was prepared by <u>GMAC Mortgage, LLC</u>

_____[Space Above This Line For Recording Data]_____

# MODIFICATION AGREEMENT

Borrower ("I"): VICKI R WEST
Lender ("Lender"): GMAC Mortgage, LLC
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 03/27/2006
Loan Number: ████████
Property Address *[and Legal Description if recordation is necessary]* ("Property"):  5328 7TH AVE    LOS
ANGELES CA 90043

If my representations in Section 1 continue to be true in all material respects, then this Modification
Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the
Property, and (2) the Note secured by the Mortgage.  The Note is secured by a Mortgage, Deed of Trust, or
Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, and if applicable,
recorded on  with Instrument Number  in Book  and/or Page number  of the real property records of LOS
ANGELES County, CA.  Said Security Instrument covers the real and personal property described in such
Security Instrument (the "Property") located at 5328 7TH AVE   LOS ANGELES CA 90043, which real
property is more particularly described as follows.  "MERS" is Mortgage Electronic Registration Systems, Inc.
MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's Successors and
assigns.  MERS is organized and existing under the laws of Delaware, and has an address and telephone
number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. The Mortgage and Note together, as they
may previously have been amended, are referred to as the "Loan Documents."  Capitalized terms used in
this Agreement and not defined have the meaning given to them in Loan Documents.

### (Legal Description – Attached as Exhibit if Recording Agreement)

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.      **My Representations**. I certify, represent to Lender and agree:

    A.      I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan
            Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to
            make the monthly mortgage payments now or in the near future;
    B.      I live in the Property as my principal residence, and the Property has not been condemned;
    C.      There has been no change in the ownership of the Property since I signed the Loan
            Documents;
    D.      I have provided documentation for **all** income that I receive (and I understand that I am not
            required to disclose child support or alimony unless I chose to rely on such income when
            requesting to qualify for a modification of the Loan Documents);

_____
If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document
words signifying the singular (such as "I") shall include the plural (such as "we) and vice versa where appropriate.

E.    Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct; and,

F.    If Lender requires me to obtain credit counseling in connection with the Program, I will so; and;

G.    I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2.    **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.    TIME IS OF THE ESSENCE under this Agreement;

B.    If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

C.    I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.    **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 07/01/2010 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 07/01/2010.

A.    The new Maturity Date will be: 09/01/2046.

B.    The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Lender but not previously credited to my Loan. The new Principal balance of my Note will be $443,359.84 (the "New Principal Balance").

C.    $45000.00 of the New Principal Balance shall be deferred (the Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The new Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $398359.84. Interest at the rate of 2.00000% will begin to accrue on the Interest Bearing Principal Balance as of 6/1/2010 and the first new monthly payment on the Interest Bearing Principal will be due on 07/01/2010. My payment schedule for the modified Loan is as follows:

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Payment Ends on |
|---|---|---|---|---|---|---|
| 2.00000% | 6/1/2010 | 1288.23 | $242.42, adjusts annually after year 1 | 1530.65, adjusts annually after year 1 | 07/01/2010 | 06/01/2015 |
| 3.00000% | 06/01/2015 | 1476.31 | Adjusts Annually | Adjusts Annually | 07/01/2015 | 06/01/2016 |
| 4.00000 | 06/01/2016 | 1673.12 | Adjusts Annually | Adjusts Annually | 07/01/2016 | 06/01/2017 |
| 4.75000 | 06/01/2017 | 1825.10 | Adjusts Annually | Adjusts Annually | 07/01/2017 | 09/01/2046 |

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.   I agree to pay in full  the Deferred Principal Balance and  any other amounts still owed under the Loan Documents by the earliest of:  (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

G.   If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.   **Additional Agreements**.  I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

E.   That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents, except that the Note, and the payment obligation created thereunder, are not enforceable against me personally.

G.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows:  If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage.  However, Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.   That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan.  This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

I.   That, as of the Modification Effective Date, any provision in the Note, as amended for the assessment of a penalty for full or partial prepayment of the Note is null and void.

J.   That MERS holds only legal title to the interests granted by the Borrower in the mortgage, but if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of lender including, but not limited to, releasing and canceling the mortgage Loan.

In Witness Whereof, the Lender and I have executed this Agreement.

(Seal)_____    _____
VICKI R WEST                                      Witness

_____    _____
Date                               Print Name

(Seal)_____    _____
                                                  Witness

_____    _____
Date                               Print Name

(Seal)_____    _____
                                                  Witness

_____    _____
Date                               Print Name

(Seal)_____    _____
                                                  Witness

_____    _____
Date                               Print Name


GMAC Mortgage, LLC

By:    _____

Date    _____

Date:  6/14/2010                                    Loan# ▇▇▇▇▇▇▇

Borrower's Name:  VICKI R WEST

Lender's Name and Address:  GMAC Mortgage, LLC
                            3451 Hammond Ave
                            Waterloo, IA 50702

### IMPORTANT INFORMATION ABOUT
### YOUR LOAN MODIFICATION WHICH FEATURES A BALLOON PAYMENT
### Please Read Carefully

This disclosure describes the features of your loan modification.

### How Is Your Interest Rate and Initial Payment Determined?

- According to your mortgage payment calculated for long-term affordability, your modified loan will now be a balloon mortgage.
- The amount of the initial monthly payment on your modified loan will be based on three factors:
  - the interest rate reflected in the agreement;
  - the current balance of the loan; and
  - the remaining term \ amortization period of the loan.

Your new monthly payment of principal and interest will be calculated based on a remaining Term of 435  months. Although your new payment will be sufficient enough to substantially pay down your loan balance, a balloon payment in the amount of  $45000.00  will be due when the term of your loan expires or when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due, and the Lender will be under no obligation to refinance your loan.

### How Your Monthly Payment Can Change- Balloon Payment

You will be notified in writing at least 90 but not more than 120 days before the date the balloon payment is due. This notice will be mailed to you at the most current mailing address you supply and will contain information about the amount of the balloon payment, the date it is due and the telephone number of the Lender's representative (or loan servicer's representative) available to answer questions you may have about the notice.

THE MODIFIED TERM OF THE LOAN IS  MONTHS AS A RESULT, YOU WILL BE REQUIRED TO PAY THE ENTIRE REMAINING UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST OWING WHEN THE TERM OF YOUR LOAN EXPIRES, OR WHEN YOU PAY OFF THE MODIFIED LOAN, WHICH WILL BE WHEN YOU SELL OR TRANSFER AN INTEREST IN YOUR HOUSE, REFINANCE THE LOAN, OR WHEN THE LAST SCHEDULED PAYMENT IS DUE.

THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM. THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR YOU MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

ASSUMING THIS LENDER OR ANOTHR LENDER REFINANCES THE LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN.  YOU MAY ALSO HAVE TO PAY SOME OF ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

Example of Balloon Payment

- <<Amortization Extension Only>>  The payment amount due at loan maturity can change substantially based upon amount of the loan, interest rate, and any principal payments you choose to make before loan maturity, among other factors.

| | |
|---|---|
| Unpaid Loan Balance at Time of Modification | $100,000 |
| Interest Rate | 7.7500% |
| Remaining Loan Term | 20 years |
| Remaining Amortization Schedule | 40 years |
| Monthly Principal and Interest Payment | $658.07 |
| Balloon Payment Due | $94,115.71 |

In the example above, the outstanding loan balance of $x,xxx.xx would be due and payable at the end of 20 years.

- <<Amortization Extension and Principal Deferment>>  The payment amount due at loan maturity can change substantially based upon amount of the loan, interest rate, and any principal payments you choose to make before loan maturity, among other factors.

| | |
|---|---|
| Unpaid Loan Balance at Time of Modification | $100,000 |
| Loan Balance That Does Not Accrue Interest (Amount Forborne) | $25,000 |
| Loan Balance That Does Accrue Interest | $75,000 |
| Interest Rate | 7.7500% |
| Remaining Loan Term | 20 years |
| Remaining Amortization Schedule | 40 years |
| Monthly Principal and Interest Payment | $498.55 |
| Balloon Payment Due | $94,115.71 |

In the example above, the outstanding loan balance of $94,115.71 would be due and payable at the end of 20 years, which represents the unpaid loan amount resulting from the extended amortization and the $25,000 of loan balance that did not accrue interest.

This summary is intended for reference purposes only.  Important information relating specifically to your loan modification will be contained in the loan modification documents, which alone will establish your rights and obligations under the loan modification plan.  This disclosure does not address any other payments that may be required under the terms of your loan, for example, monthly escrow payments

THE PURPOSE OF THIS DISCLOSURE IS TO PROVIDE VARIOUS DETAILS ON THE TYPE OF LOAN MODIFICATION FOR WHICH YOU HAVE EXPRESSED INTEREST.  THE DISCLOSURE DOES NOT CONSTITUTE A COMMITMENT ON THE PART OF THE LENDER TO MODIFY YOUR LOAN.

Receipt of a copy of this Disclosure is hereby acknowledged.

| | | |
|---|---|---|
| _____ | | _____ |
| Date | | VICKI R WEST |
| _____ | | _____ |
| Date | | |
| _____ | | _____ |
| Date | | |
| _____ | | _____ |
| Date | | |

<u>GMAC</u> Mortgage

12/14/2011

VICKI R WEST
5328 7TH AVE
LOS ANGELES CA 90043

RE:   Account Number   ▮▮▮▮▮▮▮
      Property Address   5328 7TH AVE
                         LOS ANGELES CA 90043

Dear VICKI R WEST

**Congratulations!** You are eligible for a 2MP Second Lien Modification on your second mortgage. If you comply with the terms of the enclosed 2MP Modification Agreement, we will modify your second mortgage loan and waive all prior late charges that remain unpaid.

The enclosed 2MP Modification Agreement ("Agreement") reflects the proposed terms of your modified second mortgage. Approval, however, is subject to the receipt of the signed and notarized Agreement along with any attachments as well as receipt of clear title. ( if applicable )

**How to Accept This Offer:**

**STEP 1**   **COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE**

To accept this offer:

- Enclosed are multiple copies of the Agreement; please retain one copy for your own records and return all other originals of the Agreement.
- You must sign and return the copies of the Modification Agreement and Dodd-Frank Certification document to us in the enclosed, pre-paid envelope on or before 12/27/2011.
- If there are notary provisions at the end of the Agreement, DO NOT sign the enclosed Agreement(s) unless you are in the presence of a notary. The document(s) must be signed in the presence of a notary and (if applicable) other witnesses.
- All of the documents must be executed and the signatures must be exactly as the names are typed.
- If you do not send the Agreement(s) by the above date, you must contact us if you still wish to be considered for this program and have your loan modified.

**STEP 2**   **CONTINUE TO MAKE YOUR PAYMENTS ON TIME**

- Any funds received toward payments that come due, prior to the permanent modification being processed, will be deposited and applied toward the amount due after the modification is executed.

To better understand the proposed terms of your modified mortgage, please read the attached summary and the Modification Agreement.

You must respond no later than 12/27/2011.

Sincerely,
Loan Servicing
Enclosures

Investor Loan # ▮▮▮▮▮▮

**After Recording Return To:**
GMAC Mortgage, LLC
3451 Hammond Avenue
Waterloo, IA 50702
Custodian ID: RK1

This document was prepared by <u>GMAC Mortgage, LLC</u>

_____**[Space Above This Line For Recording Data]**_____

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"): VICKI R WEST
Lender ("Lender"): GMAC Mortgage, LLC
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 3/27/2006
Loan Number: ▮▮▮▮▮▮▮
Property Address *[and Legal Description if recordation is necessary]* ("Property"): 5328 7TH AVE    LOS
ANGELES CA 90043

If my representations in Section 1 continue to be true in all material respects, then this Modification
Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the
Property, and (2) the Note secured by the Mortgage. The Note is secured by a Mortgage, Deed of Trust,
or Deed to Secure Debt (the "Security Instrument), dated the same date as the Note, and if applicable,
recorded on  with Instrument Number in Book and/or Page number of the real property records of LOS
ANGELES County, CA.  Said Security Instrument covers the real and personal property described in such
Security Instrument (the "Property") located at 5328 7TH AVE  LOS ANGELES CA 90043, which real
property is more particularly described as follows.  MERS is a separate corporation that is acting solely as
a nominee for Lender and Lender's Successors and assigns.  MERS is organized and existing under the
laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026,
(888) 679-MERS. The Mortgage and Note together, as they may previously have been amended, are
referred to as the "Loan Documents."  Capitalized terms used in this Agreement and not defined have the
meaning given to them in Loan Documents.

**(Legal Description – Attached as Exhibit if Recording Agreement)**

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.    **My Representations**.  I certify, represent to Lender and agree:

    A.   I live in the Property as my principal residence, and the Property has not been condemned;

    B.   There has been no change in the ownership of the Property since I signed the Loan Documents;

    C.   Under penalty of perjury, all documents and information I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

    D.   If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Plan.

2.    **Acknowledgements and Preconditions to Modification**.  I understand and acknowledge that:

    A.   TIME IS OF THE ESSENCE under this Agreement;

    B.   If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate.  In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    C.   I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.    **The Modification**.  If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 2/1/2012 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived.  The Loan Documents will be modified and the first modified payment will be due on 2/1/2012.

    A.   The new Maturity Date will be: 3/1/2037.

    B.   The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Lender but not previously credited to my Loan.  The new Principal balance of my Note will be $23,782.41 (the "New Principal Balance").

    C.   $2,500.00 of the New Principal Balance shall be deferred (the Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount.  The new Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $21,282.41.  Interest at the rate of 1.00000% will begin to accrue on the Interest Bearing Principal Balance as of 1/1/2012 and the first new monthly payment on the Interest Bearing Principal will be due on 2/1/2012.

My payment schedule for the modified Loan is as follows:

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Payment Ends on |
|---|---|---|---|---|---|---|
| 1.00000% | 1/1/2012 | $79.73 | $0.00, adjusts periodically | $79.73, adjusts annually periodically | 2/1/2012 | 1/1/2017 |
| 2.00000% | 1/1/2017 | $87.78 | Adjusts Periodically | Adjusts Periodically | 2/1/2017 | 1/1/2018 |
| 3.00000% | 1/1/2018 | $95.90 | Adjusts Periodically | Adjusts Periodically | 2/1/2018 | 1/1/2019 |
| 4.00000% | 1/1/2019 | $104.04 | Adjusts Periodically | Adjusts Periodically | 2/1/2019 | 1/1/2020 |
| 4.75000% | 1/1/2020 | $110.09 | Adjusts Periodically | Adjusts Periodically | 2/1/2020 | 3/1/2037 |

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.  I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

G.  If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.  **Additional Agreements**.  I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C.  That this Agreement will change my Home Equity Line of Credit to a fully amortizing closed end mortgage and will terminate my option to draw funds off the previously active line.

D.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments, and all other payments, the amount of which may change periodically over the term of my Loan.

E.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as

expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents, except that the Note, and the payment obligation created thereunder, are not enforceable against me personally.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

I. I agree that the modification will be null and void if Lender does not receive the applicable title endorsement(s), title insurance product(s), and or subordination agreement(s).

J. I agree to execute any documents, including corrected documents and replacement documents for lost documents, necessary to complete the transactions presented in the modification agreement.

K. I consent to the disclosure of my personal information, including the terms of the modification, to (a) Treasury for purposes related to HAMP or 2MP, (b) any investor, insurer, or guarantor that owns, insures or guarantees my mortgage, (c) the 2MP servicer of my first lien, (d) the Program Administrator and MHA-C and (e) companies that perform support services for HAMP or 2MP, including marketing HAMP or 2MP, conducting surveys or providing marketing research or other borrower outreach, data processing, and technical systems consulting.

L. That, as of the Modification Effective Date, any provision in the Note, as amended for the assessment of a penalty for full or partial prepayment of the Note is null and void.

M. That MERS holds only legal title to the interests granted by the Borrower in the mortgage, but if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of lender including, but not limited to, releasing and canceling the mortgage Loan.

N. Important information regarding your loan modification.

## Initial Interest Rate and Initial Payment Amount

- According to your mortgage payment calculated for long-term affordability, your modified loan will include a deferred balance requiring a balloon payment.
- The amount of your initial monthly payment on your modified loan will be based on three factors:

  - the interest rate reflected in the agreement;
  - the current balance of the loan; and
  - the remaining term \ amortization period of the loan.

Your new monthly payment of principal and interest will be calculated based on a remaining Term of 302 months. Although your new payment will be sufficient enough to substantially pay down your loan balance, a balloon payment in the amount of $2,500.00 will be due when the term of your loan expires or when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due, and the Lender will be under no obligation to refinance your loan.

**How Your Monthly Payment Can Change- Balloon Payment**

- You will be notified in writing at least 90 but not more than 120 days before the date the balloon payment is due. This notice will be mailed to you at the most current mailing address you supply and will contain information about the amount of the balloon payment, the date it is due and the telephone number of the Lender's representative (or loan servicer's representative) available to answer questions you may have about the notice.

THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM. THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR YOU MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

ASSUMING THIS LENDER OR ANOTHR LENDER REFINANCES THE LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OF ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

---

**Example of Balloon Payment**

- The payment amount due at loan maturity can change substantially based upon amount of the loan, interest rate, and any principal payments you choose to make before loan maturity, among other factors.

| | |
|---|---|
| Unpaid Loan Balance at Time of Modification | $100,000 |
| Loan Balance That Does Not Accrue Interest (Deferred Principal) | $25,000 |
| Loan Balance That Does Accrue Interest | $75,000 |
| Interest Rate | 7.7500% |
| Deferred Principal Balance Due at Maturity | $25,000 |

In the **example** above, the outstanding loan balance of $25,000 would be due and payable at maturity.

**This summary is intended for reference purposes only.**

---

EACH OF THE BORROWER AND THE "LENDER" ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN. THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES. BORROWER ALSO ACKNOWLEDGES THE RECEIPT BY INCLUSION IN THIS AGREEMENT, OF SPECIFIC INFORMATION DISCLOSING THE FUNCTION OF A BALLOON PAYMENT.

_____ [Space Below This Line For Acknowledgement]_____

**CALIFORNIA ALL-PURPOSE**
**CERTIFICATE OF ACKNOWLEDGEMENT**

State of California

County of _LOS ANGELES_

On _DECEMBER 27, 2011_ before me, _KENNETH L. FERGUSON – NOTARY PUBLIC_,
(Here insert name and title of the officer)

Personally appeared _VICKI R. WEST_,

Who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed this instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Kenneth L. Ferguson_                    (Notary Seal)
Signature of Notary Public

KENNETH L. FERGUSON
Commission # 1942065
Notary Public - California
Los Angeles County
My Comm. Expires Jun 24, 2015

In Witness Whereof, the Lender and I have executed this Agreement.

(Seal)_____    _____
VICKI R WEST                                                                Witness

_____            _____
Date                                                                         Print Name

(Seal)_____    _____
                                                                             Witness

_____            _____
Date                                                                         Print Name

(Seal)_____    _____
                                                                             Witness

_____            _____
Date                                                                         Print Name

(Seal)_____    _____
                                                                             Witness

_____            _____
Date                                                                         Print Name

State of California County of
LOS ANGELES
Subscribed and sworn to (or affirmed)
before me on this 27 day of DECEMBER, 2011, by
VICKI R. WEST,
proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.

Signature Kenneth L. Ferguson

(Seal)



KENNETH L. FERGUSON
Commission # 1942065
Notary Public - California
Los Angeles County
My Comm. Expires Jun 24, 2015

Mortgage Electronic Registration Systems, Inc as nominee for Lender

By: _____
          Authorized Officer

Date: _____

**LENDER ACKNOWLEDGMENT**

State of ~~IOWA~~ *CALIFORNIA*
County of *Los ANGELES*

On this *27* day of *DECEMBER*, 20*11*, before me, the undersigned, a Notary Public in and for said county and
state, personally appeared *VICKI R. WEST*, personally known to me or
identified to my satisfaction to be the person who executed the within instrument as Authorized Officer of
Mortgage Electronic Registration Systems, Inc as nominee for Lender and they duly acknowledged that said
instrument is the act and deed of said entity, and that they, being authorized to do so, executed and delivered said
instrument for the purposes therein contained.

Witness my hand and official seal.

*Kenneth L. Ferguson*
Notary Public

My Commission Expires: *JUNE 24, 2015*

KENNETH L. FERGUSON
Commission # 1942065
Notary Public - California
Los Angeles County
My Comm. Expires Jun 24, 2015

In Witness Whereof, the Lender and I have executed this Agreement.

(Seal)_____    _____
VICKI R WEST                                Witness

_____            _____
Date                                        Print Name

(Seal)_____    _____
                                            Witness

_____            _____
Date                                        Print Name

(Seal)_____    _____
                                            Witness

_____            _____
Date                                        Print Name

(Seal)_____    _____
                                            Witness

_____            _____
Date                                        Print Name

_____[Space Below This Line For Acknowledgement]_____

**CALIFORNIA ALL-PURPOSE**
**CERTIFICATE OF ACKNOWLEDGEMENT**

State of California

County of _____

On_____ before me, _____,
                                    (Here insert name and title of the officer)

Personally appeared_____,

Who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed this instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____    (Notary Seal)
Signature of Notary Public

Mortgage Electronic Registration Systems, Inc as nominee for Lender

By:  _____
          Authorized Officer

Date:  _____

**LENDER ACKNOWLEDGMENT**

State of    IOWA
County of

On this ____day of _____, 20____, before me, the undersigned, a Notary Public in and for said county and
state, personally appeared _____ , personally known to me or
identified to my satisfaction to be the person who executed the within instrument as Authorized Officer of
Mortgage Electronic Registration Systems, Inc as nominee for Lender and they duly acknowledged that said
instrument is the act and deed of said entity, and that they, being authorized to do so, executed and delivered said
instrument for the purposes therein contained.

                        Witness my hand and official seal.

                        _____
                        Notary Public

                        My Commission Expires: _____

**<u>Exhibit B</u>**

**Claim No. 1195**

2

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY **COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** | Claim #1195    Date Filed: 10/12/2012 |
| --- | --- |

**PROOF OF CLAIM**

| Name of Debtor and Case Number:  **EPRE LLC, Case No. 12-12024** |
| --- |

*NOTE: This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

**TOM FRANKLIN**

Name and address where notices should be sent:

**TOM FRANKLIN
5633 OAK GROVE ROAD
FORT WORTH, TEXAS 76134**

Telephone number: 817-293-2960        email: FRENKLINART@AOL.COM

Name and address where payment should be sent (if different from above):

Telephone number:                       email:

❏ Check this box if this claim amends a previously filed claim.

**Court Claim
    Number:_____**
    *(If known)*

Filed on:_____

❏ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed: $         134,000**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

❏ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**   LOAN MODIFICATION REFUSED
(See instruction #2)

| **3.** Last four digits of any number by which creditor identifies debtor: ___ 1234 | **3a.** Debtor may have scheduled account as:  Alison Tearnen  (See instruction #3a) | **3b.** Uniform Claim Identifier (optional):  (See instruction #3b) |
| --- | --- | --- |

**4. Secured Claim** (See instruction #4)

Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ■ Real Estate  ❏ Motor Vehicle  ❏ Other

**Describe:**

**Value of Property: $** 78,031      **Annual Interest Rate_____%** ❏ Fixed ❏ Variable
                                        **(when case was filed)**

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim,**

**if any: $**_____          **Basis for perfection:** _____

**Amount of Secured Claim: $**_____      **Amount Unsecured: $**_____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**

Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.

$_____      (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature:** (See instruction #9) Check the appropriate box.

■ I am the creditor.    ❏ I am the creditor's authorized agent.    ❏ I am the trustee, or the debtor, or    ❏ I am a guarantor, surety,
                                (Attach copy of power of attorney, if any.)    their authorized agent.    indorser, or other codebtor.
                                                                        (See Bankruptcy Rule 3004.)    (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: TOM FRANKLIN
Title: OWNER
Company:                            *(Signature)*                    10/15/2012 *(Date)*
Address and telephone number (if different from notice address above):

Telephone number:                     Email:

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18*

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

❏ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

■ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

❏ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

❏ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

❏ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

❏ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

**\*** *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

RECEIVED
OCT 1 2 2012
KURTZMAN CARSON CONSULTANTS

**COURT USE ONLY**

121202412101200000000001