**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:                                              )

                                                    )

RESIDENTIAL CAPITAL LLC, et al.,    )

                                                    )

              Debtors.                          )

                                                    )

Case No. 12-12020 (MG)

Chapter 11

Jointly Administered

<u>RESPONSE TO DEBTOR'S OBJECTION TO CLAIM NO. 4702</u>, *SUPPLEMENTAL PARAGRAPH 12*

COMES NOW Tomas Diaz ("Mr. Diaz"), and files this Response to the Debtor's Objection to Claim No. 4702, and states as follows:

### FACTUAL BACKGROUND

1.      On April 17, 2006, Mr. Diaz obtained a loan modification with Platinum Capital Group, refinancing his homestead property located at 5200 SW 132nd Avenue, Miami, Florida 33175, loan No. 10500352, in the amount of $1,000,000.00 paying $400,000.00 in consideration to Platinum Capital Group. Thus, retaining $400,000 in equity of such homestead property with Platinum Capital Group.

2.      On October 26, 2006, Residential Funding Company, LLC ("RFC"), assigned this mortgage to Deutsche Bank Trust Company Americas Trustee ("Deutsche Bank Trust"), RFC loan No. 10624849.

3.      On April 30, 2007, RFC filed an affidavit of a lost note, whereas a photocopy of Note was attached to the Affidavit.

4.      On June 1st, 2007, Deutsche Bank Trust, initiated a mortgage foreclosure lawsuit against Mr. Diaz, case No. 2007-16754-CA-01, and failed to provide original Promissory Note, bearing no proper signatures.

RECEIVED
JUN - 4 2014
U.S. BANKRUPTCY COURT, SDNY

5.      On August 19th, 2010, Mr. Diaz recorded Affidavit of Title, stating the homestead property is "under investigation due of possible Fraud on the Plaintiff's side Rule 60.B Rule 9 B" and cannot be sold or tampered due to the fact that Plaintiff (Deutsche Bank Trust) did not present the original promissory note.

6.      On March 12, 2008 Deutsche Bank Trust sold this loan to Aurora Loan Servicing, LLC.

7.      On July 1, 2012, Aurora Loan Servicing LLC sold this mortgage to Nationstar Mortgage LLC. Olso on July 15 2012 on Behalf of Deutshe Bank.

8.      In August 2012, Mr. Diaz filed claim with Department of the Treasury of Internal Revenue Service, claim No. 2012-007551 (RALI Series 2006-QO6 Trust – Series) due to the fraudulent actions of RFC and the assignments of mortgage securing his homestead property.

9.      Claim No. 2012-007551 is under investigation of Whistleblower's Office, IRS.

10.     On October 28th, 2013, Mortgage Electronic Registration Systems, Inc., as nominee for Platinum Capital Group ("MERS"), its successors and assigns, **assigned this mortgage to Deutsche Bank Trust**, and recorded it on October 29th, 2013. On July 2013 my counsel Has defendants motion to vacate.

11.     Currently, Mr. Diaz's homestead property is valued at $568,962.00 according to Miami Dade Property Appraiser.

12. GENERAL NO LIABILITY CLAIMS MY RESPONSE : DENIAL LETTERS, MISSING ITEMS LETTERS, TRIAL, FORBEARANCE, FORECLOSURE, REPAYMENT PLAN letters, POOLING AND SERVICING FRAUD, LOAN MODIFICATION AGREEMENT, ADJUSTABLE RATE RIDER DISCREPANCE

2

## LEGAL BASIS FOR CLAIM NO. 4702

### Standard of Review

A "creditor . . . may file a proof of claim" in order to claim interest in Debtor's Bankruptcy estate. 11 U.S.C. § 501(a). Such a claim constitutes a prima faie evidence of the validity and the amount of the claim. Fed R. Bankr. 3001 (f); 11 U.S.C. 502(a). Such provisions establish that a claim is allowed unless the debtor files an objection. 11 U.S.C. § 502(a). Consequently, the claimant has a burden of proof demonstrating the validity of his claim. See generally In Re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); In Re Adelphia Commc'ns Corp., Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb 20, 2007); In Re Rockefeller Ctr. Props., 272 B.R. 524, 539 *Bankr. S.D.N.Y. 2000).

### Analysis

As per all the recorded assignments and purchases of the mortgage in question, there is no proof Mr. Diaz's loan was transferred, sold or assigned properly. (¶¶ 1-7).[1] There is a reasonable question as to how MERS assigned the mortgage to Deutsche Bank Trust not having a legal right or title to do so. (¶ 10). Additionally, RFC failed to provide the original Promissory Note. (¶ 3). Also, Nationstar Mortgage, LLC, failed to provide the original Promissory Note. (¶ 4). Moreover, their photocopy did not comply with the judicial foreclosure action requirements as to a true and correct copy of such note. (¶ 3-5).

Currently, there is an investigation by IRS office as to the tax consequences of the improper assignments and transfers of Mr. Diaz's mortgage, and Debtor's liability as to

---

[1] References to paragraphs of factual background will be referred as (⸀ ≠).

3

any and all tax deficiency in this matter. (¶¶ 8, 9). Therefore, it will be prejudicial to Mr. Diaz to disallow and expunge his claim in the amount of $400,000 as a secured claim under the Bankruptcy Code.

Moreover, due to the improper assignments and transfers of Mr. Diaz's mortgage, Debtor might still have equity in Mr. Diaz's homestead property. Mr. Diaz made a payment of $400,000.00 to refinance this homestead property. (¶ 1). The property is currently valued at $568,962 according to Miami Dade Property Appraiser. (¶ 11). Analogous to a relief from an automatic stay procedure by a secured creditor, Mr. Diaz should be protected by Bankruptcy Code as to his secured claim. 11 U.S.C. 362. Mr. Diaz, as a secured creditor of Debtor, is considered oversecured creditor due to the fact that the collateral is valued higher than the debt, and is entitled to the protection, including post-petition interest. *United Savings Ass. of Texas v. Timbers of Inwood Forest*, 484 U.S. 365 (1988). Consequently, if such creditor's protection is adequate in a relief from an automatic stay procedure having a higher standard of review, his claim may not be disallowed and expunged.

Currently, due to the improper or fraudulent assignments of this mortgage, Mr. Diaz is unable to refinance, sell or otherwise transfer the mortgage and the property, thus preventing him from exercising his legal rights as the owner of his homestead property.

Thus, Mr. Diaz respectfully requests this Honorable Court to allow his proof of claim, pay back $400,000, reduce the principal on such loan, and other relief Mr. Diaz is entitled to.

Date: May 21st, 2014

_____

Tomas Diaz

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this response was send on this **21st**

**day of May, 2014** upon all interested parties via email or regular U.S. Mail as provided

in the Service List Attached.

Date: May 21st, 2014                    _____

Tomas Diaz

Pro se Appelant/Creditor
5200 SW 122 Ave
Miami Fl 33175
305-2445159
Masterpicaiso@yahoo.com.

S PARAGRAPH 12

C/AIM 4702

April 3, 2012

TO:            AURORA LOAN SERVICES, LLC.
ATTN:          CUSTOMER SERVICE
               P.O. BOX 1706
               SCOTTSBLUFF, NE 69363-1706

SUBJECT LOAN NO.:   **0021953252**

FROM:          TOMAS DIAZ
               5200 SW 122ND AVE
               MIAMI, FL 33175

```
CORPORATE
APR -6 2012
CORRESPONDENCE
```

This is a "Qualified Written Request" under Section 6 of the Real Estate Settlement Procedures Act (RESPA).
I am writing to request:

(1) Original copies of all documents pertaining to the origination of my mortgage including my loan application, Right to Cancel, Deed of Trust, original note, adjustable rate note, addendum to the note for the interest only payment period, Truth in Lending statements, Good Faith Estimate (GFE), HUD 1, appraisal, and all required disclosures and rate sheets associated with this transaction for the above referenced loan. The original copies should be legible and all documents shall be copied in their entirety.
(2) A copy of the loan history including all payments made, all fees incurred, what has been paid out of the escrow account, and how all payments were applied. This information should cover the entire life of the loan.
(3) I have reasons to believe that the loan terms were misrepresented to me at the time of application and further obscured and/or modified prior to signing. I believe that our income was inflated on the application. I also have reason to believe that certain statements were not provided for my approval prior to closing, and that signatures may have been forged on various documents. It is also my belief that certain documents may have not presented at all. Additionally, I believe that a notary was not present to witness my signatures on several pertinent documents and that this transaction did not take place in a legitimate title/escrow/real-estate office with any title/escrow/real-estate professionals therefore leaving us ill advised at the time of closing.
I understand that under Section 6 of RESPA you are required to acknowledge our request within 20 business days and must try to resolve the issue within 60 business days. In closing, we want a payment we know we can live with one that will not get us in trouble again, and we want original copies of all our loan documents.

Sincerely,

_____                    04/03/2012
Tomas Diaz                                  Date

S. PARAGRAPH 12 CL 4702



# MTW

**McGinnis Tessitore Wutscher LLP**

City Tower
333 City Boulevard West
17th Floor
Orange, California 92868
Fax (866) 581-9302
www.mtwllp.com

**Raymond J. Snytsheuvel**
*Of Counsel*
Direct Dial (949) 683-7500
rsnytsheuvel@mtwllp.com

**Via Regular Mail**

April 24, 2012

Tomas Diaz
5200 SW 122nd Ave
Miami, FL 33175

> RE:    **Response to Allegations of Violations of Federal Law**
> **Aurora Loan No.  XXXXXX3252**
> **5200 SW 122nd Ave, Miami, FL 33175**

Dear Mr. Diaz:

We represent Aurora Loan Services LLC ("Aurora") in connection with the above-named matter. This is not an attempt to collect a debt. Rather, this letter responds to your allegations of violations of Federal law, including the federal Truth in Lending Act in connection with a loan that is secured by a mortgage on the real estate described above (the "Mortgage Loan").

In your letter, you suggest there may be issues with your file as it relates to compliance with federal law. Aurora denies any allegations of illegality or wrongdoing, and the existence of any violations of, among other things, the Truth in Lending Act in connection with the Mortgage Loan. Moreover, any supposed claim for damages is now time-barred.

If you have any specific allegations, documentation or other materials that you would like to provide to us in support of your demand, please do so at your earliest convenience.

Please direct all further communications to this office. Thank you.

Sincerely,

Raymond J. Snytsheuvel

CALIFORNIA - ILLINOIS - WASHINGTON, D.C.

S. PARAGRAPH 12
CL 4702



# MTW

**McGinnis Tessitore Wutscher LLP**

The Loop Center Building
105 W. Madison Street
Suite 1800
Chicago, Illinois 60602
Tel. (312) 416-6170
Fax (866) 581-9302
www.mtwllp.com

**Benjamin Hughes**
bhughes@mtwllp.com

May 29, 2012

**Via Regular Mail**

Tomas Diaz and ~~Jacob Franz Dyck~~
5200 SW 122nd Avenue
Miami, FL 33175

RE:     **Borrower: Tomas Diaz**
        **Property Location: 5200 Southwest 122nd Avenue, Miami, FL 33175**
        **Loan No. 0021953252**
        **FOR SETTLEMENT PURPOSES ONLY**

Dear Tomas Diaz and Jacob Franz Dyck:

We represent Aurora Bank FSB ("Aurora Bank") in connection with the above-named matter. This law firm and its lawyers are not debt collectors, and this is not an attempt to collect any debt. However, any information you provide to us may be provided to our client, and therefore may be used for the purpose of debt collection.

We previously denied your allegations and declined to accept your demands relating to the above-referenced mortgage loan. Nevertheless, we provided you with a loan modification workout letter and loss mitigation package from Aurora Bank in a recent communication, and asked that if you so chose, you could complete these materials and return them to Aurora Bank. We also attempted to contact you by phone, without success.

However, we understand that Aurora Bank has not yet received a loan modification application package from you as to this matter.

If you are interested in requesting a loan modification, please complete BOTH the HAMP and non-HAMP applications that are included with this letter. Please understand that Aurora Bank will not be able to evaluate which, if any, loan modification program(s) you are eligible for until it has received both applications in completed form, including all supporting information and documentation requested by each application.

Should you decide to submit a loan modification application, please return the applications and all supporting documentation directly to Aurora Bank at the address indicated in the enclosed loan modification application package.

CALIFORNIA - ILLINOIS - WASHINGTON, D.C.

S. *PARAGRAPH 12*

**MTW**
**McGinnis Tessitore Wutscher LLP**

CL 4702

**Benjamin Hughes**
**Page 2 of 2**

Sincerely,

Benjamin Hughes

Enc.

S *PARAGRAPH 12*

CL 4702

# AURORA LOAN SERVICES
*A Lehman Brothers Company*

May 22, 2008

3640021953252534FC80905-22-08

Thomas Diaz
5200 SW 122nd Ave
Miami FL 33175-

RE:  Loan No. 0021953252

Dear Borrower(s):

Enclosed please find your check number 213 in the amount of
$3671.17.  This check is being returned to you because it is not
sufficient to bring this loan current and we do not have arrangements
with you to bring your loan current.

Your loan has been referred for foreclosure.  To obtain reinstatement
figures, please contact our office at the address above or by calling
800-550-0509.

This is an attempt to collect a debt and any information obtained will
be used for that purpose.  However, if you have previously received
a discharge in bankruptcy, and you were a borrower on a loan with
Aurora Loan Services, or its predecessor(s), at the time of filing your
bankruptcy, this correspondence is not and should not be construed to
be an attempt to collect a debt or impose personal liability against you,
but solely an enforcement of a lien against the property.


Aurora Loan Services

Certified Return Receipt Requested:

*S. PARRAMORY '2*
*CL 4702*

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

## WORKOUT AGREEMENT

### BY AND BETWEEN AURORA LOAN SERVICES

### AND

### Thomas Diaz

**Property Address:** 5200 Sw 122nd Ave
Miami FL 33175

**Loan No. 0021953252**

This Workout Agreement is made September 15, 2008, by and between AURORA LOAN SERVICES ("Lender") located at 2617 College Park, Scottsbluff, NE  69361, and Thomas Diaz ("Customer").

**WHEREAS**, Lender is the servicing agent and/or the owner and holder of a certain Note dated 04-27-06, executed and delivered by Customer, in the original principal amount of $ 1,000,000 (the "Note"). The Note is secured by a mortgage, deed of trust or comparable security instrument dated 04-27-06, (the "Security Instrument"), on the property located at the address specified above (the "Property").  The Note and Security Instrument are collectively referred to as the "Loan Documents".

**WHEREAS**, Customer is in default under the Loan Documents, has failed to make payment of monthly installments of principal, interest, and escrow, if any, and has incurred additional expenses authorized under the Loan Documents, resulting in a total arrearage now due of $ 88,063.64, as more particularly set forth below:

| | |
|---|---:|
| Unpaid monthly payment(s) of PITI* from 11-01-06 through and including 09-15-08 | $ 89,154.26 |
| Accrued Late Charges | 345.12 |
| NSF Charges | .00 |
| Legal Fees | 1,065.00 |
| Corporate Advances** | .00 |
| Other Fees*** | .00 |
| Minus Credit (suspense balance/partial payment) | 2,500.74 |
| Total Amount Due (the "Arrearage") | $ 88,063.64 |

---

   * "PITI" means the monthly payment of principal, interest, and escrows, required, for taxes and insurance premium installments.
  ** "Corporate Advances" include, but are not limited to, property inspection fees, property preservation fees, legal fees, foreclosure fees and costs, appraisal fees, BPO (i.e. broker price opinion) fees, title report fees, recording fees, and subordination fees.
 *** "Other Fees" include, but are not limited to, short payment advances and Speed ACH fees.

 AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. 0021953252

Page 2 of 5

WHEREAS, as a result of Customer's default, Lender (i) has the right to accelerate, and to require Customer to make immediate payment in full, all of the sums owed under the Note and secured by the Security Instrument, (ii) has so accelerated and declared due in full all such sums, and (iii) may have already commenced foreclosure proceedings to sell the Property.

WHEREAS, as of the date of execution of the Agreement, Lender commenced Foreclosure proceedings to sell the property on 06/01/07 by legal filing in the county and state where the Property is located A Foreclosure sale has not yet been scheduled.

WHEREAS, customer has requested Lender's forbearance in exercising its rights and remedies under the default provisions of the Loan Documents and with regard to any foreclosure action that may now be pending.

WHEREAS, Customer has requested and Lender has agreed to allow Customer to repay the Arrearage pursuant to a loan work-out arrangement on the terms set forth herein.

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained, the parties hereto agree as follows:

1. Term. This Agreement shall expire on the "Expiration Date," as defined in Attachment A.

2. Lenders Forbearance. Lender shall forbear from exercising any or all of its rights and remedies now existing or arising during the term of this Agreement under the Loan Documents, provided there is no "Default", as such term is defined in paragraph 5.

3. Customer's Admissions. Customer admits that the Arrearage is correct and is currently owing under the Loan Documents, and represents, agrees and acknowledges that there are no defenses, offsets, or counterclaims of any nature whatsoever to any of the Loan Documents or any of the debt evidenced or secured thereby.

Customer admits and agrees that any and all postponements of a foreclosure sale, made during the term of this Agreement or in anticipation of this Agreement, are done by mutual consent of the Customer and Lender and that, to the extent allowed by applicable law, any such foreclosure sale may be postponed from time to time until the loan evidenced by the Note is fully reinstated or the foreclosure sale is consummated. Lender shall be under no obligation to dismiss a pending foreclosure proceeding until such time as all terms and conditions of this Agreement and Attachment A have been fully performed.

4. Terms of Workout. See Attachment A, which is made a part hereof.


AURORA LOAN SERVICES LLC.

**Independent Foreclosure Review**

December 20, 2012                    *S PARAGRAPH 12    CLAIM 4702*



```
*****  SINGLE PIECE
78549-14-V001-0000024-ACKL-M3106
Thomas Diaz
c/o Thomas Diaz
5200 Sw 122nd Ave
Miami FL 33175
```

**Your Request for Review Form
has been received.**

Reference Number:   0700254277

Property Address:

5200 sw 122nd Ave
Miami FL 33175

*Si usted habla español, tenemos representantes que
pueden asistirle en su idioma.*

Dear Thomas Diaz,

We have received a Request for Review Form for the property noted above. If you have requested an Independent Foreclosure Review, your request will now be evaluated to confirm eligibility.

~~If your request meets the eligibility requirements, it will be reviewed by an independent consultant. Your servicer~~ will provide relevant documents along with any findings and recommendations related to your request to the independent consultant for review. Your servicer may be asked to clarify or confirm facts and disclose reasons for events that occurred related to the foreclosure process. You could be asked to provide additional information or documentation.

The Independent Foreclosure Review will determine if you suffered financial injury as a result of errors or other problems during the foreclosure process. You will receive a letter with the findings of the review and information about possible compensation or other remedy. Because the review process will be a thorough and complete examination of many details and documents, the review could take several months.

Please note, if you do not meet the eligibility requirements or the information you provided was not about errors or other problems during the foreclosure process, we will notify you within 90 days of this letter that your submission will not be reviewed by the Independent Foreclosure Review process.

If you have questions or need a Form by mail, call 1-866-498-6347, Monday through Friday, 8 a.m.–10 p.m. ET or Saturday, 8 a.m.–5 p.m. ET.

Sincerely,

Independent Review Administrator - Rust Consulting, Inc.



**An important message directed by
the Board of Governors of the Federal Reserve System
and the Office of the Comptroller of the Currency**

November 13, 2012

*S PARAGRAPH 12
CL 4702*

Thomas Diaz
10420 SW 58th St
Miami, FL 33173-2835

| | |
|---|---|
| Loan Number: | 0021953252 |
| Reference Number: | 0700254277 |
| Property Address: | 5200sw122nd Ave |
| | Miami, FL 33175 |

Dear Thomas Diaz,

We are writing you because your mortgage loan was in the foreclosure process with Aurora Loan Services between January 1, 2009 and December 31, 2010. If you believe foreclosure errors cost you money, you can request a review of your mortgage file by a neutral party. You give up nothing by requesting a review and waive no rights by accepting compensation.

# IF AN ERROR IS FOUND, YOU COULD RECEIVE A PAYMENT OR OTHER COMPENSATION THAT MAY INCLUDE REFUNDED FEES, STOPPING OF A FORECLOSURE OR PAYMENTS UP TO $125,000 PLUS EQUITY.*

The request for review process is free. Federal bank regulators—the Board of Governors of the Federal Reserve System and the Office of the Comptroller of the Currency, a bureau of the U.S. Department of the Treasury—are directing and monitoring the review process.

### Visit IndependentForeclosureReview.com or call 1-866-498-6347 to request a review today. You must submit a Request for Review Form no later than December 31, 2012.

Sincerely,

Independent Review Administrator - Rust Consulting, Inc.

Si usted habla español, tenemos representantes que pueden asistirle en su idioma para darle información sobre la Revisión Independiente de Ejecución Hipotecaria.

Assistance is also available in over 200 languages, including: Chinese, Korean, Vietnamese, Tagalog, Hmong and Russian.

提供中文幫助。　　Помощь на русском языке.　　Peb muaj cov neeg hais lus Hmoob pab nej.
한국어 도움을 제공합니다.　Trợ giúp hiện có bằng tiếng Việt.　Available ang tulong sa wikang Tagalog.

* Any payments made to you if errors in your foreclosure are found may be reported to the IRS and may have tax implications. Consult a tax advisor to discuss those implications.

# Frequently Asked Questions and Answers

## What is the deadline to submit my Request for Review Form?

It must be postmarked or submitted online no later than December 31, 2012.

*1888 9529105* [handwritten]

## How do I know this is legitimate?

You can go to the federal regulators' websites to learn more about the purpose and the guidelines of the Independent Foreclosure Review.

**Office of the Comptroller of the Currency a bureau of the U.S. Department of the Treasury:**
Search for the Independent Foreclosure Review at occ.treas.gov
or go directly to occ.gov/independentforeclosurereview

*(FORM? www.INDEPENDENT Foreclosure Review.com)* [handwritten]

**Board of Governors of the Federal Reserve System**
Search for the Independent Foreclosure Review at federalreserve.gov
or go directly to federalreserve.gov/consumerinfo/independent-foreclosure-review.htm

## How do I know if I am eligible for the Independent Foreclosure Review? What determines if I am eligible for an Independent Foreclosure Review?

To be eligible for the Independent Foreclosure Review, your mortgage loan must meet the following initial eligibility criteria:

- Serviced by one of the participating mortgage servicers
- Active in the foreclosure process between January 1, 2009 and December 31, 2010
- Your primary residence

*DOJ SETTLEMENT?* [handwritten]

## Do I qualify for a review even if my house did not go all the way through a foreclosure sale?

Yes, your mortgage loan may qualify even if your property did not go all the way through foreclosure sale. This could mean that you are still living in the home.

*THE SLIDES FROM THE WEBINAR MARCH 6, 2012?* [handwritten]

## If I request an Independent Foreclosure Review, is there a cost?

No, there is no cost. The Independent Foreclosure Review is a free program. But beware of anyone who asks you to pay a fee in exchange for a service to complete the Request for Review Form.

## Does submitting a Request for Review Form prevent me from taking other action against my servicer?

*CCA.Policy.Webinar@FRB.Gov 1-888 664 0684* [handwritten]

No. Filing a request for an Independent Foreclosure Review will not prevent you from any other options you may take now or in the future related to your foreclosure.

## Will my credit be hurt if I have a review?

No, the Independent Foreclosure Review will not impact your credit report.

## What if I am working with my servicer on, or I have been approved for, a modification or another option to avoid foreclosure?

The Independent Foreclosure Review is a separate review of your mortgage loan file. A Request for Review will not impact any other options you may be approved for or may be working on with your Servicer.

## If I have already submitted a complaint to my servicer, do I need to submit a separate Request for Review Form to participate in this process?

Yes, the Request for Review Form must be completed to the best of your ability to be considered for the Independent Foreclosure Review process.

## Will I need an attorney to submit a Request for Review Form?

No. However, if you are currently represented by an attorney at law with respect to a foreclosure or bankruptcy case regarding this mortgage loan, please refer this letter to your attorney.

S. PARAGRAPH CC 4702
12

FOR OFFICIAL USE ONLY

01

# Independent Foreclosure Review

## Request for Review Form

**It is important that you complete the form to the best of your ability; all information you provide may be useful.**

If the foreclosure process was active on your primary residence between January 1, 2009 and December 31, 2010, you are eligible to request an Independent Foreclosure Review that may result in compensation or other remedy.

If you think you may have been financially injured as a result of errors, misrepresentations, or other deficiencies made during the foreclosure process, you may complete and submit a Request for Review Form.

**Send this completed form to:**
Independent Review Administrator - Rust Consulting, Inc.
PO Box 2589
Faribault, MN 55021-9804

Your form must be postmarked no later than **December 31, 2012 or your mortgage loan will not be eligible for the Independent Foreclosure Review.**

To find answers to your questions about the review process as well as information to help you complete the Request for Review Form, visit **IndependentForeclosureReview.com/Aurora**
or call **1-866-498-6347** Monday through Friday, 8:00 a.m.–10:00 p.m. ET or Saturday, 8:00 a.m.–5:00 p.m. ET

**Listed below are examples of situations that may have led to financial injury. This list does not include all situations.**

- The mortgage balance amount at the time of the foreclosure action was more than you actually owed

- You were doing everything the modification agreement required, but the foreclosure sale still happened

- The foreclosure action occurred while you were protected by bankruptcy

- You requested assistance/ modification, submitted complete documents on time, and were waiting for a decision when the foreclosure sale occurred

- Fees charged or mortgage payments were inaccurately calculated, processed, or applied

- The foreclosure action occurred on a mortgage that was obtained before active duty military service began and while on active duty, or within 9 months after the active duty ended

---

### Section 1: Property information

Aurora Loan Services

Mortgage loan number:
**0021953252**

Reference number:
**0700254277**

Property address:

5200sw122nd Ave
Miami FL 33175





0700254277-0000085

S PARAGRAPH 12          CL 4702

## Section 2: Your information

First name: **THOMAS**          Middle initial:          Last name: **DIAZ**

Address: **5200 SW 122 AVE**

City: **MIAMI**          State: **FlA**          ZIP: **33175**

Phone (day): 3 0 5 - 2 4 4 - 5 1 5 9          (evening) 3 0 5 - 2 4 4 - 5 1 5 9

Email address: **MASTER PICASSO @ YAHOO · COM**

### PREFERRED MAILING ADDRESS AND TELEPHONE NUMBERS

This information will be used to contact you throughout the Independent Foreclosure Review process.

☑ Check here if same as above

Mailing address:

City:          State:          ZIP:

Phone (day): ☐☐☐ - ☐☐☐ - ☐☐☐☐          (evening) ☐☐☐ - ☐☐☐ - ☐☐☐☐

## Section 3: Background

| | | | |
|---|---|---|---|
| 1. | Was this property your primary residence? | ☒ YES | ☐ NO |
| 2. | Were you under bankruptcy protection or waiting for the final ruling on your bankruptcy case when the foreclosure action happened? <br><br> If yes, date your bankruptcy case was filed: ____ / ____ / ____ (if available) | ☐ YES | ☒ NO |
| 3. | Do you believe that the mortgage balance amount at the time of the foreclosure action was more than the amount you actually owed on the mortgage? | ☒ YES | ☐ NO |
| 4. | Do you believe that the foreclosure action was pursued because your mortgage payments were inaccurately processed or applied? | ☒ YES | ☐ NO |
| 5. | Do you believe you were protected by an insurance policy issued by the servicer or an affiliate that would have made your payments in the event of unemployment, disability, or illness, but did not do so? | ☐ YES | ☒ NO |
| 6. | Did you attempt through the court to have the decision to foreclose on your home reversed? <br><br> If yes, court date: ____ / ____ / ____ (if available) | ☐ YES | ☒ NO |
| 7. | Do you believe you provided all the necessary documents required to obtain payment assistance or a mortgage modification before the foreclosure action occurred? | ☒ YES | ☐ NO |



S. PARAGRAPH 12

CL 4702

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. 0021953252

Page 3 of 5

**5. Default.** If Customer fails to make any of the payments specified in Attachment A on the due dates and in the amount stated, or otherwise fails to comply with any of the terms and conditions herein or therein (any such even hereby defined as a "Default"), Lender, at its sole option, may terminate this Agreement without further notice to Customer. In such case, all amounts that are then owing under the Note, the Security Instrument, and this Agreement shall become immediately due and payable, and Lender shall be permitted to exercise any and all rights and remedies provided for in the Loan Documents, including, but not limited to, immediate commencement of a foreclosure action or resumption of a pending foreclosure action without further notice to Customer.

**6. No Waiver.** Nothing contained herein shall constitute a waiver of any of all of the Lender's rights or remedies, including the right to commence or resume foreclosure proceedings. Failure by Lender to exercise any right or remedy under this Agreement or as otherwise provided by applicable law shall not be deemed to be a waiver thereof.1

**7. Status of Default and Foreclosure.** Customer acknowledges that if the Lender previously notified the Customer that the account was in default, that the Note and Security Instrument are accelerated and the debt evidenced by the Note is due in full, the account remains in default, such Loan Documents remain accelerated, and such debt due in full, although Customer may be entitled by law to cure such default by bringing the loan evidenced by Note current rather than paying it in full. Lender's acceptance of any payments from Customer which, individually, are less than the total amount due to cure the default described herein shall in no way prevent Lender from continuing with collection action, or require Lender to re-notify Customer of such default, re-accelerate the loan, re-issue any notice, or resume any process prior to Lender proceeding with collection action if Customer Defaults. Customer agrees that a foreclosure action if commenced by the Lender against Customer will not be withdrawn unless Lender determines to do so by applicable law. In the event Customer Defaults, the foreclosure will commence, or resume from the point at which it was placed on hold, without further notice.

**8. Limited Modification.** Except as otherwise provided in this Agreement, the Note and Security Instrument, and any amendments thereto, are ratified and confirmed and shall remain in full force and effect.

---

1 A typical example of this would be if Lender decides to accept a partial or untimely payment from Customer instead of returning such payment or terminating this Agreement as provided herein, Lender shall not be precluded from rejecting a subsequent partial or untimely payment, terminating this Agreement, or taking any other action permitted by applicable law.

TJ



*S. PAIRA BARBY 12*

*CL 4702*

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. 0021953252

Page 4 of 5

**9.  Application of Payments.**  The payments received by Lender from Customer pursuant to this Agreement shall be applied, at Lender's sole option, first to the earliest monthly payment under the Note that is due. Any amounts received by Lender that are less than the full payment under then due and owing under this Agreement shall be, at Lender's sole option, (1) returned to Customer, or (2) held by Lender in partial or suspense payment balance until sufficient sum is received by Lender to apply a full payment.  If this Agreement is canceled and/or terminated for any reason, any remaining funds in this partial or suspense payment balance shall be credited towards Customer's remaining obligation owing in connection with the loan and shall not be refunded.

**10.  Methods of Making Payments.**  All payments made to Lender under this Agreement shall (i) contain the Lender's loan number shown above, (ii) unless otherwise agreed to by the Lender, be payable in certified funds by means of cashier's check, Western Union (code city: Bluff,NB) money order, or certified check, and (iii) be sent to AURORA LOAN SERVICES as specified in Attachment A.  Any payment made other than strictly pursuant to the requirements of this paragraph 10 and Attachment A shall not be considered to have been received by Lender, although Lender may, in its sole discretion, decide to accept any non-conforming payment.

**11.  Credit Reporting.**  The payment status of Customer's loan in existence immediately prior to execution of this Agreement will be reported monthly to all credit reporting agencies for the duration of this Agreement and thereafter.  Accordingly, Lender will report the loan subject to this Agreement as delinquent if the loan is not paid current under the Loan Documents, even if Customer makes timely payments to Lender under this Agreement.  However, Lender may disclose that Customer is in a repayment or work-out plan.  This Agreement does not constitute an agreement by Lender to waive any reporting of the delinquency status of loan payments.

**12.  Property Taxes, Insurance, and Other Amounts.**  If Customer's loan is not escrowed for taxes and insurance premium payments, it is Customer's responsibility to pay all property taxes, premiums for insurance, and all other amounts Customer agreed to pay as required under the terms of the Loan Documents.  Customer's failure to pay property taxes, amounts owed on any senior lien security instrument, other amounts that may attain priority over the Security Instrument, or insurance premiums, in each case before their due date, shall constitute a Default hereunder.

**13.  The Entire Agreement.**  This Agreement sets forth all of the promises, covenants, agreements, conditions and understandings between the parties hereto with respect to the subject matter hereof.  This Agreement supersedes all prior understandings, inducements or conditions, express or implied, oral or written, with respect thereto except as contained or referred to herein.  This Agreement may not be amended, waived, discharged or terminated orally but only by an instrument in writing.

  AURORA LOAN SERVICES LLC.

S. PARAGRAPH 12
CL 4702

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. 0021953252

Please mail all correspondence, requested information and the executed
agreement to our Servicing Center at:

<u>Overnight Delivery Services</u>     or     <u>U.S. Postal Delivery Services</u>

Aurora Loan Services                    Aurora Loan Services
Attn:  Home Retention                   Attn:  Home Retention
2617 College Park                       P.O. Box 1706
Scottsbluff, NE  69361                  Scottsbluff, NE  69363-1706

Not withstanding anything to the contrary contained in the Special
Forbearance Agreement, the parties hereto acknowledge the effect of a
discharge in bankruptcy that may have been granted to the Borrower(s)
prior to the execution hereof and that the Lender may not pursue the
Borrower(s) for personal liability.  However, the parties acknowledge
that the Lender retains certain rights, including but not limited to
the right to foreclose its lien under appropriate circumstances.  The
parties agree that the consideration for this Agreement is Aurora's
forbearance from presently exercising its rights and pursuing its
remedies under the Security Instrument as a result of the Borrower's
default of its obligations there under.  Nothing herein shall be
construed to be an attempt to collect against the Borrower(s) personally
or an attempt to revive personal liability.

Signing the attached documents in no way affects or eliminates any
rights you have been given in this letter or any correspondence attached
hereto.

If you have any questions, please contact one of our Home Retention
Counselors at the address above or by calling 800-550-0509.

Sincerely,

Home Retention Group
Aurora Loan Services

Enclosure

TA

Aurora Loan Services is a debt collector. Aurora is attempting to
collect a debt and any information obtained will be used for that
purpose. However, if you are in bankruptcy or received a bankruptcy
discharge of this debt, this communication is not an attempt to
collect the debt against you personally, but is notice of a possible
enforcement of the lien against the collateral property.


AURORA LOAN SERVICES LLC.

**WESTERN UNION**

Customer Receipt / Recibo del Cliente

S. PARAGRAPH 12

| | |
|---|---|
| MIAMI CHECK CASHERS #3 | Oper ID: 007   Quick Collect |
| 8195 SW 40TH ST | 08/17/08 |
| MIAMI FL 33155 | 816P EDT      MTCN: 760-222-2404 |

Sender/Remitente: TOMAS DIAZ
Receiver/Destinatario: AURORA LOAN

Code City/Codigo de la ciudad: BLUFF NE
Account #/Numero de cuenta: 0021953252
Reference #/Numero de referencia:
Attn/Atencion:

Western Union Card Number / Numero de Tarjeta: 257872610
Total WU Card Points/Total puntos en tarjeta WU      : 35
Assigned WU Card Points/Puntos asignados a la tarjeta WU : 5

```
                        Amount/Cantidad:    $ 2500.00
                        Charge(s)/Cargos:
                          Service/Servicio:     12.99
                          Total/Total:      $ 2512.99
```

ADD PHONE TIME!  Your Gold Card has a rechargeable LONG DISTANCE phone card
feature. Rates as low as 3.9c/minute within continental U.S. No hidden fees.
Add time with cash at Agent. Call 1-888-520-7924 to use a credit/debit card.

Agent Signature /
Firma del Agente

Customer Signature /
Firma del Cliente

*IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY.
PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. *ADEMAS DE LOS CARGOS POR EL SERVICIO DE
TRANSFERENCIA, WESTERN UNION TAMBIEN GANA DINERO CUANDO CAMBIA SUS DOLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL
REVERSO MAS INFORMACION SOBRE EL CAMBIO DE MONEDA. * CERTAIN TERMS GOVERNING THIS TRANSACTION ARE ON THE REVERSE
SIDE. BY SIGNING THIS RECEIPT, YOU AGREE TO THOSE TERMS. IF LISTED ABOVE, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE
RATE FOR YOUR TRANSACTION WERE DETERMINED AT THE TIME OF SEND. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE
RECEIVER RECEIVES THE FUNDS. * ALGUNOS TERMINOS QUE RIGEN ESTA TRANSACCION SE ESTABLECEN AL REVERSO. AL FIRMAR ESTE
RECIBO USTED ACEPTA DICHOS TERMINOS Y CONDICIONES ADEMAS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA. SI APARECEN
MAS ARRIBA, LA MONEDA DE PAGO Y LA TASA DE CAMBIO DE SU TRANSACCION SE DETERMINARON EN EL MOMENTO DEL ENVIO. SI NO, LA
TASA DE CAMBIO SE ESTABLECERA CUANDO EL DESTINATARIO RECIBA EL DINERO.

YOU EARNED 3 (INT'L) OR 10 (US) MINUTES OF PHONE TIME! Your time is
loaded directly on your card. Calling instructions are on the card
back, or dial 888-628-8862 & enter your personal PIN: 678828932687.

1-800-325-4045.

DRCMICRNB 08/04
7108G

*PARAGRAPH 2*
*CL 4702*

Bank of America

No. 635553

Cashier's Check

30-1/1140
NTX

Notice to Purchaser - In the event the check is lost, misplaced or stolen, a report stating the type and/or a waiting period will be required prior to replacement. This check will be paid when placed within 90 days.

Banking Center    SUNSET

Date    JUNE 30, 2008

$    **5010.00**

0L01187B  80077    00635553

Remitter (Purchased By)    TOMAS DIAZ

Pay    **FIVE THOUSAND TEN DOLLARS AND 00 CENTS**

To
The
Order
Of    **, HOMEQ LOAN SERVICES**
**, OAN NO. 0801953252**

Non-Negotiable

VOID AFTER 90 DAYS

Authorized Signature

Customer Copy
Retain For Your Records

Bank of America, N.A.
San Antonio, Texas

09-14-3726B  09-2005

001641002062

0700254277-0000085

CL 4702
S. PARAGRAPH
12

**Section 3:** *continued*

13. Describe any other way in which you believe you may have been financially injured as a result of the mortgage foreclosure process. You may attach supporting documents.

(6) AFFIDAVIT OF ALEXIS NEIA IN OPPOSITION TO TRUSTEES LEGAL STANDING (PAGE 7) AURORA LOAN SERV NEVER ACQUIRED PROPERLY ANY ASSIGNMENTS OTHERS FABRICATED FRAUD. MISREPRESENTATION, SECURITIES FRAUD IN PROPER CONVEYANCE, DOUBLE DIPPING, BREACH ETC. (EXIBIT 6)

(7) DECLARATION OF ALEXIS NEIA (SELF EXPLANATION) (EXIBIT 7)

(8) EX PARTE MOTION TO RESET FORECLOSURE SALE AURORA DEUTSCHE BANK TRUST REQUEST TO TAKE TITLE IN THE NAME AURORA LOAN SERVICING LLC. but JUDGE ESQUIRE (DENIED M) (EXIBIT 8) LAW OFFICES OF DAVID J. STERN PA

(9) OCTOBER/15/2010 EX PARTE MOTION TO VACATE SUMMARY FINAL JUDGMENT LAW OFFICE OF DAVID J STERN PA (EXIBIT 9) AND SAMANTHA JANES STERN OFFICE ASK TO AMEND COMPLAINT FOR TO CHANGE PLAINTIFF'S NAME TO AURORA LOAN SERVICES LLC. by VIRTUE OF A RECORDED ASSIGNMENT OF MORTGAGE (NOT TRUST ASSIGNMENT but FABRICATED ONE JUST IN CASE)

(10) HOMECOMINGS FINANCIAL THE MORTGAGE SERVICE IN MY LOAN. (EXIBIT 10)

(11) AFFIDAVIT OF LOST NOTE RESIDENTIAL FUNDING COMPANY LLC. PAY TO THE ORDER OF DEUTSCHE BANK TRUST SIGNE by JUDY FABER THE NOTORIOUS ROBO-ENDORSEMENT, NON-SIGNOR/STAMPER JUDY FABER (EXIBIT 11)

(12) AURORA LOAN SERVICES "QUALIFIED WRITTEN REQUEST" AND RESPONSE TO ALLEGATIONS OF VIOLATIONS OF FEDERAL LAW APRIL/24/2012. SETTLEMENT PURPOSES ONLY MAY/29/2012 LAWYER by AURORA PROVIDED THE HAMP PLAN NON-HAMP. (EXIBIT 12)

(13) AURORA LOAN SERVICES LLC INSURANCE SERVICE LENDER PAPER. AURORA CHANGE INSURANCE ON MAY/27/2008 WITH OUT ASSIGNMENT

(14) AURORA LOAN SERVICES LLC NOTICE OF CHANGE THE INTEREST RATE (EXIBIT 14)

(15) TRANSFER - AURORA "BANK" TO NATIONSTAR MORTGAGE (EXIBIT 15)

(16) NOW THE "NATIONSTAR FRAUDS" PAPER AND EVASIVE PRACTICE ACTION WITH ALL IMPUNITY (EXIBIT 16) Q.W.R. TO NATIONSTAR AND THE SAME "MODUS OPERANDI", "MALUM PROHIBITUM", "MENS REA" (EXIBIT 16)

(17) NATIONSTAR ON BEHALF OF RALLI 2006-QO6 THE CREDITOR 09/05/2012 HOW? (EXIBIT 17)

(18) NATIONSTAR MOTION TO SUBSTITUTE PARTY PLAINTIFF AND CHANGE THE STYLE (EXIBIT 18)

(19) I HAVE NOT PAID ANYTHING UNDER FRAUDULENT CIRCUMSTANCES AND I REFUSE TO PARTAKE AND APPROVE THE PRACTICE OF THESE HEINOUS ACTS. OBJECTION JUDGE MARCHI GLENN (EXIBIT 19)



*4-5*

0700254277-0000085

S. PARAGRAPH 12

CLAIM 4702

---

**Section 3:** continued

8. Was a deficiency judgment obtained against you for an amount that included money that you should not have been required to pay?    [X] YES    [ ] NO

9. Do you believe you were making on-time monthly payments in the required dollar amount on your mortgage or an approved loan modification, trial modification, or payment plan, yet the foreclosure action still occurred?    [X] YES    [ ] NO

10. Do you believe that you were denied a modification when you qualified under the applicable program rules?    [X] YES    [ ] NO

If possible, provide dates and details if you believe you were wrongly denied assistance:

① AURORA LOAN SERVICES DENIED ;SAID FAILURE TO RETURN INITIAL PAYMENT (IS FALSE) (Exhibit 1)

② AURORA LOAN SERVICES APPROVAL S.F.A. CONDITIONAL INITIAL PAYMENT OF $7793.00 (IS FAKE)(Exibit 2) PLUS $97,762.33

③ AURORA LOAN SERVICES APPROVAL (SFA) CONDITIONAL INITIAL PAYMENT OF $4900.00 PLUS $89,154.26 (Exibit 3)

④ AURORA LOAN SERVICES AND OTHER SERVICES PAID IN ADVANCE TAX & INSURANCE BUT RIT IS NEGATIVE INSCROW

⑤ GMAC MORTGAGE LOAN # 7441375243 SERVICET HOMECOMINGS FINANCIAL SAME LOAN NUMBER (EXIBIT 5)

11. Do you believe you paid fees or charges that you should not have been required to pay in addition to your normally scheduled principal, interest, taxes, and insurance payments?    [X] YES    [ ] NO

If possible, provide dates, types of fees or charges, and amounts you paid:

I SEND TO AURORA MORE THAN $20,000 THOUSAND by WERSTERN UNION FORM INITIAL PAYMENT FOR BEHRANCE AGREEMENT AND ATTN CASHIERING DEPT. OISO, AURORA LOAN SERVICES AND HOMECOMINGS FINANCIAL PAID IN ADVANCE TAX AND INSURANCE but IS ESCROW PAYMENT NEGATIVE AGAINTS TO MY ACCOUNT AND HOME EQUITY. WHO FINALLY PAID? IM THOMAS DIAZ. IN FACT ALL IS REAL FAKE, FRAUD, THIEVES

---

**Important note:** The questions below are specific to military servicemembers. <u>If you or a co-borrower have not been in the military, go to question 13.</u>

12. Did you or a co-borrower have your mortgage loan before active duty military service began?    [ ] YES    [X] NO

If you responded yes to question number 12, complete the following:

Name of servicemember: _____

Date active duty began: ____/____/____

Date active duty ended: ____/____/____    OR    [ ] Still on active duty as of today



0700254277-0000085

S. PARAGRAPH CL 4702
12

## Section 4: Signature

I am submitting this "Request for Review" form to request an Independent Foreclosure Review of my foreclosure action by an independent consultant. This review is being required under orders by the Office of the Comptroller of the Currency and the Federal Reserve Board to identify customers who may have been financially injured as a result of errors or other deficiencies made during the foreclosure process on their loan. The Independent Review Administrator - Rust Consulting, Inc. receiving this "Request for Review" is acting pursuant to the requirements of this order.

I understand that I have the ability to separately submit a "qualified written request" relating to the servicing of my mortgage loan under the Real Estate Settlement Procedures Act. If I wish to do so, I should write separately to my servicer in accordance with the instructions below. I understand that the Independent Review Administrator - Rust Consulting, Inc. is not authorized to act as an agent to receive a "qualified written request" on behalf of my servicer.

By signing this document, I certify that all the information is truthful. I understand that knowingly submitting false information may constitute fraud. I affirm that I am the borrower or co-borrower of the mortgage loan on the property noted within this document, and I am authorized by all borrower(s) to have my signature grant permission to proceed with this request for review.

Signature

Date 12/10/2012

Print name    THOMAS DIAZ

**Mail this completed form to:**    **Independent Review Administrator - Rust Consulting, Inc.**
**PO Box 2589**
**Faribault, MN 55021-9804**

"Qualified written request" instructions: To submit a "qualified written request," I must write separately to Aurora Bank FSB, PO Box 1829, Scottsbluff, NE 69361, which is the exclusive address for the receipt and handling of my request.



S. PARAGRAPH 12

CL 4702

## Independent Foreclosure Review Payment Agreement

On March 18, 2013, more than 4.2 million people were sent postcard notices about payments they
will receive as a result of an agreement between federal banking regulators and 13 mortgage servicers.
For more information, please call 1-888-952-9105, which is the number for Rust Consulting—the
Paying Agent—that is printed on each postcard.

These 4.2 million people include eligible borrowers whose mortgages were serviced by **Aurora,
Bank of America, Citibank, Goldman Sachs, HSBC, JPMorgan Chase, MetLife Bank, Morgan
Stanley, PNC, Sovereign, SunTrust, U.S. Bank, and Wells Fargo**. In January 2013, these 13
mortgage servicing companies reached an agreement in principle with the Office of the Comptroller
of the Currency (OCC) and the Federal Reserve Board to pay more than $9.3 billion in cash payments
and other assistance to help borrowers. The settlement concluded the Independent Foreclosure
Review for these 13 servicers and will result in $3.6 billion in cash payments to nearly 4.2 million
eligible borrowers and $5.7 billion in additional assistance. More about the Independent Foreclosure
Review Agreements.

Borrowers will not be required to execute a waiver of any legal claims they may have against their
servicer as a condition for receiving payment. In addition, the servicers' internal complaint process
will remain available to borrowers.

*Watch out for scams*. Beware of anyone who asks you to call a different phone number than the
number above or to pay a fee to receive a payment under the agreement. See frequently asked
questions about the agreement.

## Continuing Reviews for Customers of EverBank, GMAC Mortgage, and OneWest

For borrowers with mortgage loans with the following servicers: **EverBank/EverHome Mortgage
Company, Financial Freedom (OneWest), GMAC Mortgage, and IndyMac Mortgage Services
(OneWest)**, the Independent Foreclosure Review process continues. More about the continuing
reviews.

OCC and Federal Reserve examiners are continuing to closely monitor the servicers' implementation
of plans required by the enforcement actions issued in April 2011 to correct the unsafe and unsound
mortgage servicing and foreclosure practices.

### Financial Remediation Framework for the Continuing Reviews

For servicers whose Independent Foreclosure Review continues, the consultants will use the
framework to recommend remediation for financial injury identified during the Independent
Foreclosure Review. The servicers will prepare remediation plans based on the consultants'
recommendations. The federal banking regulators must approve each servicer's remediation plan. The
framework helps ensure that similarly situated borrowers receive similar treatment.

- Borrowers Quick Reference Guide to the Financial Remediation Framework
- The Financial Remediation Framework
- Detailed Questions and Answers

## Foreclosure Prevention Assistance

Regulators encourage borrowers needing foreclosure prevention assistance to work directly with their
servicer or contact the Homeowner's HOPE Hotline at 888-995-HOPE (4673) (or at

www.makinghomeaffordable.gov) to be put you in touch with a U.S. Department of Housing and Urban Development approved nonprofit organization that can provide free assistance.

## Additional Background Information

### Request for Review Response Data

The OCC and Federal Reserve have released data on the number of eligible borrowers who have requested a review by state and county through the end of September 2012. Click to view that data.

### Engagement Letters

The OCC released engagement letters that describe how the independent consultants, retained by the servicers, will conduct their reviews and claims processes in accordance with the OCC's consent orders. See the engagement letters.

### Interim Report

On June 21, 2012, the OCC released its second interim report on the status of the Independent Foreclosure Review and actions required by consent orders issued in April 2011 to correct deficient mortgage servicing and foreclosure processes. Read the report.

## About the Enforcement Actions

The enforcement actions were based on interagency examinations conducted in the fourth quarter of 2010. A summary of the findings of the interagency reviews is available in the *Interagency Review of Foreclosure Policies and Practices*, which was produced by the OCC, the Board of Governors of the Federal Reserve System, and the OTS.

### Links to the OCC and former OTS Enforcement Actions (Issued April 2011):

- Consent Order for Aurora Bank, FSB (PDF)
- Consent Order for Bank of America (PDF)
- Consent Order for Citibank (PDF)
- Consent Orders for EverBank and EverBank Financial Corp. (PDF)
- Consent Order for HSBC Bank (PDF)
- Consent Order for JPMorgan Chase Bank, N.A. (PDF)
- Consent Order for LPS; DocX, LLC; and LPD Default Solutions, Inc. (PDF)
- Consent Order for MetLife Bank, N.A. (PDF)
- Consent Order for MERSCORP and Mortgage Electronic Registration Systems, Inc. (MERS) (PDF)
- Consent Orders for OneWest Bank, FSB and IMB HoldCo LLC (PDF)
- Consent Order for PNC Bank, N.A. (PDF)
- Consent Order for Sovereign Bank (PDF)
- Consent Order for U.S. Bank National Association, U.S. Bank National Association ND (PDF)
- Consent Order for Wells Fargo Bank, N.A. (PDF)

### Links to Enforcement Action Amendments for Servicers Entering the Independent Foreclosure Review Payment Agreement (Issued February 2013):

- Consent Order Amendment for Aurora Bank, FSB (PDF)
- Consent Order Amendment for Bank of America (PDF)

AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 303-...

*S. PARAGRAPH 12*

WORKOUT AGREEMENT

BY AND BETWEEN AURORA LOAN SERVICES

AND

Thomas Diaz

Property Address: 5200 Sw 122nd Ave              Loan No. 0021953252
                  Miami FL 33175

This Workout Agreement is made January 08, 2009, by and between AURORA LOAN
SERVICES ("Lender") located at 2617 College Park, Scottsbluff, NE 69361,
and Thomas Diaz ("Customer").

        WHEREAS, Lender is the servicing agent and/or the owner and
holder of a certain Note dated 04-27-06, executed and delivered by
Customer, in the original principal amount of $ 1,000,000 (the "Note").
The Note is secured by a mortgage, deed of trust or comparable security
instrument dated 04-27-06, (the "Security Instrument"), on the property
located at the address specified above (the "Property").  The Note and
Security Instrument are collectively referred to as the "Loan Documents".

        WHEREAS, Customer is in default under the Loan Documents,
has failed to make payment of monthly installments of principal,
interest, and escrow, if any, and has incurred additional expenses
authorized under the Loan Documents, resulting in a total arrearage
now due of $ 97,762.33, as more particularly set forth below:

```
Unpaid monthly payment(s) of PITI* from 01-01-07 through and including
01-08-09                                    $      98,645.21
Accrued Late Charges                                  345.12
NSF Charges                                              .00
Legal Fees                                               .00
Corporate Advances**                                1,228.00-
Other Fees***                                            .00
Minus Credit (suspense balance/partial payment)          .00
Total Amount Due (the "Arrearage")          $      97,762.33
```

---

    * "PITI" means the monthly payment of principal, interest, and escrows,
      required, for taxes and insurance premium installments.
   ** "Corporate Advances" include, but are not limited to, property
      inspection fees, property preservation fees, legal fees, foreclosure
      fees and costs, appraisal fees, BPO (i.e. broker price opinion) fees,
      title report fees, recording fees, and subordination fees.
  *** "Other Fees" include, but are not limited to, short payment advances
      and Speed ACH fees.



LENDER

AURORA LOAN SERVICES, 1,702

B- 90 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE 800-550-0108 • FAX 38...

S. PARAGRAPH 12

Loan No. 0021953252                                      Page 2 of 5

    WHEREAS, as a result of Customer's default, Lender (i) has the
right to accelerate, and to require Customer to make immediate payment in
full, all of the sums owed under the Note and secured by the Security
Instrument, (ii) has so accelerated and declared due in full all such
sums, and (iii) may have already commenced foreclosure proceedings to
sell the Property.

    WHEREAS, as of the date of execution of the Agreement,
Lender commenced Foreclosure proceedings to sell the property on 06/01/07
by legal filing in the county and state where the Property is located
A Foreclosure sale has not yet been scheduled.

    WHEREAS, customer has requested Lender's forbearance in
exercising its rights and remedies under the default provisions of the
Loan Documents and with regard to any foreclosure action that may now
be pending.

    WHEREAS, Customer has requested and Lender has agreed to allow
Customer to repay the Arrearage pursuant to a loan work-out arrangement
on the terms set forth herein.

    NOW, THEREFORE, in consideration of the promises and mutual
covenants herein contained, the parties hereto agree as follows:

    1. Term.  This Agreement shall expire on the "Expiration Date,"
as defined in Attachment A.

    2. Lenders Forbearance.  Lender shall forbear from exercising any
or all of its rights and remedies now existing or arising during the
term of this Agreement under the Loan Documents, provided there is no
"Default", as such term is defined in paragraph 5.

    3. Customer's Admissions.  Customer admits that the Arrearage
is correct and is currently owing under the Loan Documents, and
represents, agrees and acknowledges that there are no defenses, offsets,
or counterclaims of any nature whatsoever to any of the Loan Documents
or any of the debt evidenced or secured thereby.

Customer admits and agrees that any and all postponements of a
foreclosure sale, made during the term of this Agreement or in
anticipation of this Agreement, are done by mutual consent of the
Customer and Lender and that, to the extent allowed by applicable law,
any such foreclosure sale may be postponed from time to time until the
loan evidenced by the Note is fully reinstated or the foreclosure sale is
consummated.  Lender shall be under no obligation to dismiss a pending
foreclosure proceeding until such time as all terms and conditions of
this Agreement and Attachment A have been fully performed.

    4. Terms of Workout.  See Attachment A, which is made a part
hereof.



LENDER

S. PARAGRAPH 12

CLAIM 4702

interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above.

(F)  **Limit on My Unpaid Principal; Increased Monthly Payment**
The unpaid principal can never exceed a maximum amount equal to 115.000   % of the Principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

(G)  **Required Full Payment**
On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

**4.    NOTICE OF CHANGES**
The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.

TO

: 3184m3.rfc.3.tem

*S₀ PARAGRAPH 12*                                                  *CLAIM 4702*

Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

    If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
TOMAS DIAZ                        -Borrower                                      -Borrower


_____ (Seal)        _____ (Seal)
                                 -Borrower                                      -Borrower


_____ (Seal)        _____ (Seal)
                                 -Borrower                                      -Borrower


---

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE RIDER                    DocMagic *eFarms* 800 649-1362
RFC FORM 3184 (10/05) MODIFIED INSTRUMENT                          www.docmagic.com
                  Page 4 of 4

*S. PARAGRAPH 12*

*CLAIM # 4702*

# IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

DEUTSCHE BANK TRUST COMPANY
AMERICAS, AS TRUSTEE

     Plaintiff,

-vs.-

                                     **CASE NO.: 2007-16754 CA 01**
                                     DIVISION (10)

TOMAS DIAZ

     Defendant,

_____/

## AFFIDAVIT OF ALEXIS MESA
## IN OPPOSITION TO TRUSTEES LEGAL STANDING

BORROWER:         TOMAS DIAZ
LOAN NO.:          10500352 / 0010624849/ 0021953252
PROPERTY ADDRESS:  5200 SW 122ND AVE
                         MIAMI, FL 33175

I, Alexis Mesa, hereby swear and affirm as follows:

1. I am a subject matter expert on foreclosure litigation, the secondary mortgage market, Foreclosure Litigation, and Mortgage Asset-Backed Securitization and its effects and applications in Foreclosure and Loss Mitigation.

2. I subscribe to Bloomberg Professional Service and I have been trained at the Bloomberg Institute in New York City. I am certified to do Mortgage Security Audits and have knowledge on how to perform these searches.

1

CLAIM # 4702

¶ PARAGRAPH 12

3. I perform regular, ongoing searches into the securitization, sale and transfer aspect of residential mortgage loans and mortgage backed securities and am proficient in applying that research to the particular facts in a given foreclosure case.

4. This declaration is based upon my personal knowledge grounded in a thorough and complete review of the loan documents, servicing documents, trust documents and the other documents related to the instant case. If called upon as a factual witness in this matter I could and would competently testify to the facts as set forth below.

5. On April 6, 2012, I was retained by the Borrowers to conduct an investigation and audit of the securitization aspects of this mortgage loan transaction, conduct due diligence inquiries on the Special Purpose Vehicle (the "SPV and/or the "Issuer") known as RALI Series 2006-QO6 Trust along with the chain of ownership that all assets (i.e. Notes), relative to this specific Trust, have gone through as compared to the alleged chain of ownership by the Lender.

6. In conducting the investigation, I reviewed various documents that were filed with the Securities and Exchange Commission specific to this Trust and which are the operative documents governing the Trust and all parties acting on behalf of the trust in their various roles such as Trustee, Master Servicer, Sponsor, Depositor, etc.

7. I reviewed various documents filed with the Miami-Dade County Recorder's Office

8. I also specifically reviewed and analyzed the Adjustable Rate Note and the Mortgage dated April 27, 2006 recorded on May 15, 2006, between the Borrower and Platinum Capital Group, Corp.

9. My examination below reveals that the Borrowers' loan was securitized into the RALI Series 2006-QO6 Trust on or about June 29, 2006 and that DEUTSCHE BANK TRUST COMPANY AMERICAS attorney misrepresented Platinum Capital Group, Corp. status as owner and holder of the Borrowers' loan.

10. The form 424B prospectus Supplement governing this specific Trust outlines with absolute clarity and with particularity the entities that are and were involved in this trust from inception. **Exhibit A** attached to this Affidavit provides the exact chain of title and ownership of every Note and Mortgage that was selected for inclusion in this specific Trust.

11. This specific trust, as with all trust, is governed by certain operative documents that dictate the actions of any and all agents for the trust, their powers and how they may act

2

*CLAIM # 4702*

Ⓢ *PARAGRAPH 12*

on behalf of the trust. An agent for the trust, such as the trustee, has absolutely no power to act outside of the powers and authority vested in it by these documents.

12. The governing documents for this trust are the Prospectus, Prospectus Supplement, Pooling and Servicing Agreement and the Mortgage Loan Purchase Agreement referred to in the Pooling and Servicing Agreement.

13. Through access to the Electronic Data Gathering Analysis and Retrieval (EDGAR) System with the Securities and Exchange Commission (SEC), I was able to retrieve these governing documents which were filed with the SEC back in 2006

14. *Issuing Entity* of the Pooling and Servicing Agreement, attached as **Exhibit A to** this Affidavit clearly states on S-28 that "The pooling and servicing agreement provides that the depositor assigns to the trustee for the benefit of the certificateholders without recourse all the right, title and interest of the depositor in and to the mortgage loans. Furthermore, the pooling and servicing agreement states that, although it is intended that the conveyance by the depositor to the trustee of the mortgage
loans be construed as a sale, the conveyance of the mortgage loans shall also be deemed to be a grant by the depositor to the trustee of a security interest in the mortgage loans and related collateral."(Emphasis mine).

15. What this clause clearly stipulates is that the Depositor, Residential Accredit Loans, Inc., is the only entity that can assign, transfer and convey the mortgage loans to the Trustee for this Trust.

16. The Originator for Borrowers' loan was Platinum Capital Group, Corp. Platinum Capital Group, Corp. sold the Borrowers' loan into the trust on or about June 29, 2006. Therefore, it is entirely impossible, short of specific documentation to substantiate a claim that Platinum Capital Group, Corp. could assign anything after June 29, 2006.

17. There are enormous consequences, if any Assignment are not authentic, in that this Trust has elected to be a REMIC Trust (REMIC short Real Estate Mortgage Investment Conduit). According to the Prospectus on page. 73 under the heading " Federal Income Tax Consequences" the RALI Series 2006-QO6 Trust that this loan was deposited into elected to be treated as a REMIC , which provides for pass-through tax treatment of the income generated by the Trust assets, thus the name RALI Series 2006-QO6 Trust, Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QO6.

18. A REMIC trust has a special tax status with the Internal Revenue Status which allows the cash flow on the pool of loans to "pass through' to the individual certificate holders

3

10055 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 303-...

S. PARAGRAPH 12

Loan No. 0021953252                                                                    Page 3 of 5

    5. <u>Default</u>. If Customer fails to make any of the payments
specified in Attachment A on the due dates and in the amount stated, or
otherwise fails to comply with any of the terms and conditions herein or
therein (any such even hereby defined as a "Default"), Lender, at its
sole option, may terminate this Agreement without further notice to
Customer. In such case, all amounts that are then owing under the Note,
the Security Instrument, and this Agreement shall become immediately due
and payable, and Lender shall be permitted to exercise any and all
rights and remedies provided for in the Loan Documents, including, but
not limited to, immediate commencement of a foreclosure action or
resumption of a pending foreclosure action without further notice to
Customer.

    6. <u>No Waiver</u>. Nothing contained herein shall constitute a waiver
of any of all of the Lender's rights or remedies, including the right
to commence or resume foreclosure proceedings. Failure by Lender to
exercise any right or remedy under this Agreement or as otherwise
provided by applicable law shall not be deemed to be a waiver thereof.1

    7. <u>Status of Default and Foreclosure</u>. Customer acknowledges that
if the Lender previously notified the Customer that the account was in
default, that the Note and Security Instrument are accelerated and
the debt evidenced by the Note is due in full, the account remains in
default, such Loan Documents remain accelerated, and such debt due in
full, although Customer may be entitled by law to cure such default by
bringing the loan evidenced by Note current rather than paying it in
full. Lender's acceptance of any payments from Customer which,
individually, are less than the total amount due to cure the default
described herein shall in no way prevent Lender from continuing with
collection action, or require Lender to re-notify Customer of such
default, re-accelerate the loan, re-issue any notice, or resume any
process prior to Lender proceeding with collection action if Customer
Defaults. Customer agrees that a foreclosure action if commenced by
the Lender against Customer will not be withdrawn unless Lender
determines to do so by applicable law. In the event Customer Defaults,
the foreclosure will commence, or resume from the point at which it
was placed on hold, without further notice.

    8. <u>Limited Modification</u>. Except as otherwise provided in this
Agreement, the Note and Security Instrument, and any amendments
thereto, are ratified and confirmed and shall remain in full force and
effect.

---

1 A typical example of this would be if Lender decides to accept a partial
or untimely payment from Customer instead of returning such payment or
terminating this Agreement as provided herein, Lender shall not be
precluded from rejecting a subsequent partial or untimely payment,
terminating this Agreement, or taking any other action permitted by
applicable law.



LENDER

AURORA LOAN SERVICES 970 2

B-29 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 508-

S. PARAGRAPH 12

Loan No. 0021953252                                          Page 4 of 5

   9. **Application of Payments.** The payments received by Lender from
Customer pursuant to this Agreement shall be applied, at Lender's sole
option, first to the earliest monthly payment under the Note that is due.
Any amounts received by Lender that are less than the full payment under
then due and owing under this Agreement shall be, at Lender's sole
option, (1) returned to Customer, or (2) held by Lender in partial or
suspense payment balance until sufficient sum is received by Lender to
apply a full payment.  If this Agreement is canceled and/or terminated
for any reason, any remaining funds in this partial or suspense payment
balance shall be credited towards Customer's remaining obligation
owing in connection with the loan and shall not be refunded.

   10. **Methods of Making Payments.** All payments made to Lender under
this Agreement shall (i) contain the Lender's loan number shown above,
(ii) unless otherwise agreed to by the Lender, be payable in certified
funds by means of cashier's check, Western Union (code city: Bluff,NE)
money order, or certified check, and (iii) be sent to AURORA LOAN SERVICES
as specified in Attachment A.  Any payment made other than strictly
pursuant to the requirements of this paragraph 10 and Attachment A shall
not be considered to have been received by Lender, although Lender may,
in its sole discretion, decide to accept any non-conforming payment.

   11. **Credit Reporting.** The payment status of Customer's loan in
existence immediately prior to execution of this Agreement will be
reported monthly to all credit reporting agencies for the duration of
this Agreement and thereafter.  Accordingly, Lender will report the
loan subject to this Agreement as delinquent if the loan is not paid
current under the Loan Documents, even if Customer makes timely payments
to Lender under this Agreement.  However, Lender may disclose that
Customer is in a repayment or work-out plan.  This Agreement does not
constitute an agreement by Lender to waive any reporting of the
delinquency status of loan payments.

   12. **Property Taxes, Insurance, and Other Amounts.** If Customer's
loan is not escrowed for taxes and insurance premium payments, it is
Customer's responsibility to pay all property taxes, premiums for
insurance, and all other amounts Customer agreed to pay as required
under the terms of the Loan Documents.  Customer's failure to pay
property taxes, amounts owed on any senior lien security instrument,
other amounts that may attain priority over the Security Instrument,
or insurance premiums, in each case before their due date, shall
constitute a Default hereunder.

   13. **The Entire Agreement.** This Agreement sets forth all of the
promises, covenants, agreements, conditions and understandings between
the parties hereto with respect to the subject matter hereof.  This
Agreement supersedes all prior understandings, inducements or conditions,
express or implied, oral or written, with respect thereto except as
contained or referred to herein.  This Agreement may not be amended,
waived, discharged or terminated orally but only by an instrument in
writing.



LENDER

# AURORA LOAN SERVICES  Pg 37 of 73 9702

9055 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE 800-550-0508 • FAX 848-

S. PARAGRAPH 12

Loan No. 0021953252

b.   The aggregate Plan payment will be insufficient to pay the
     Arrearage. At the Expiration Date, a portion of the Arrearage will
     still be outstanding.  Because payment of the Plan payments will not
     cure the Arrearage, Customer's account will remain delinquent.
     Upon the Expiration Date, Customer must cure the Arrearage
     through a full reinstatement, payment in full, loan modification
     agreement or other loan workout option that Lender may offer
     (individually and collectively, a "Cure Method.")   Customer's
     failure to enter into a Cure Method will result in the loan being
     disqualified from any future Lender Home Retention Group program
     with respect to the loan evidenced by the Note, and regular
     collection activity will continue, including, but not limited to,
     commencement or resumption of the foreclosure process, as specified
     in paragraphs 5 and 7 of the Agreement.


        IN WITNESS HEREOF, the parties hereto have caused this Attachment A
     to be duly executed as of the date signed below.

Dated: _____1/12/2009_____          _____
                                    Thomas Diaz Borrower

Dated: _____       _____

Aurora Loan Services

Dated: _____       By: _____

                                     Title: _____


LENDER

*S. PARAGRAPH 12*        *CLAIM 4702*

MIN: 1000866-0010500352-1                    Loan Number: 10500352

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this 27th day of APRIL, 2006                    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Adjustable Rate Note (the "Note") to PLATINUM CAPITAL GROUP, A
CALIFORNIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

5200 SOUTHWEST 122ND AVENUE, MIAMI, FLORIDA 33175
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT
THAT THE MONTHLY PAYMENT CAN INCREASE. THE PRINCIPAL AMOUNT
TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY
BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

**2.    INTEREST**
**(A)  Interest Rate**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will
pay interest at a yearly rate of        1.500 %. The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any default
described in Section 7(B) of this Note.
**(B)  Interest Rate Change Dates**
The interest rate I will pay may change on the 1st  day of JULY, 2006        , and
on that day every month thereafter. Each date on which my interest rate could change is called an "Interest
Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.
**(C)  Interest Rate Limit**
My interest rate will never be greater than        9.950 %.
**(D)  Index**
Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an
Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States
Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board
in the Federal Reserve Statistical Release entitled "Selected Interest Rates (h.15)" (the "Monthly Yields").
The Twelve Month Average is determined by adding together the Monthly Yields for the most recently

---

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE RIDER
RFC FORM 3184 (10/05) MODIFIED INSTRUMENT            Page 1 of 4

DocMagic *eForms* 800-649-1362
www.docmagic.com

*S. PARAGRAPH 12*          *(CLAIM 4702*

available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(E)  Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate the new interest rate by adding THREE AND 400/1000                     percentage point(s) (        3.400  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the result of this addition will be the new interest rate until the next Interest Rate Change Date.

## 3.    PAYMENTS

**(A)  Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the              1st       day of each month beginning on JULY 1, 2006            . I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 1, 2036             , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 17101 ARMSTRONG AVENUE SUITE, 200, IRVINE, CALIFORNIA 92614
                                              or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 3,451.20          . This amount may change.

**(C)  Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the   1st day of  JULY, 2007              , and on that day every 12th   month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater than the amount of my last monthly payment due before the Payment Change Date.

**(E)  Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the

---

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE RIDER                    *DocMagic* **eFarms** *800-649-1362*
RFC FORM 3184 (10/05) MODIFIED INSTRUMENT                                      *www.docmagic.com*
                                   Page 2 of 4

*CLAIM #4702*

*S. PARAGRAPH 12*

thereby avoiding double taxation on the cash flow – a significant profit advantage for the investors of that trust and which can easily translate into millions of dollars in taxes saved.

19. Election by the Trust to be treated as one or more REMIC's impose strict and absolute requirements regarding transfers of assets (i.e. Mortgage loans or notes) to the Trust and IRC Section 860 outlines and governs these strict requirements.

20. According to 26 CFR § 1.860D-1 (c)(2) *Identification of assets.* Formation of the REMIC does not occur until-(i) The sponsor identifies the assets of the REMIC, such as through execution of indenture with respect to the assets; and (ii) The REMIC issues the regular and residual interest in the REMIC.

21. In other words, the REMIC is not officially formed until the Sponsor/Seller identifies the specific assets of the REMIC (the specific loans) and the REMIC subsequently issues the regular and residual interest in the REMIC.

22. The Prospectus and PSA specifically identify a Closing Date which is the last day that an asset (mortgage loan) can be "identified" for inclusion in the Trust/REMIC. The Closing Date also serves as the Startup Day for the REMIC. According to the Internal Revenue Code, Section 860G, "All of a REMIC's loans must be acquired on the startup day of the REMIC or within three months thereafter." Any contributions of an asset(other than cash) that is contributed to the REMIC after the Startup Day (or within the allowable 90 day window) is deemed an "unqualified contribution" and can cause the entire REMIC Trust to  lose its tax-free status which would be catastrophic to the Trust (and all the individual beneficiaries, shareholders or Certificateholder) because the Trust cash flow would be subject to double-taxation or at a minimum, the prohibited transaction is taxed at 100% to the Trust.

23. For this reason, all parties serving as agents for the Trust must strictly adhere to the guidelines and conveyance clauses specifically delineated in *Prohibited Transactions and Other Possible REMIC Taxes* of the PSA on page. 92,  The Internal Revenue Code imposes a prohibited transactions tax, which is a tax on REMICs equal to 100% of the net income derived from prohibited transactions.

24. The Closing Date/ Startup Day for this Trust/REMIC was: on or about June 29, 2006.

25. Also, in order for the Trust to qualify as a REMIC, all steps in the 'contribution" and transfer process (of the mortgage notes) must be true and complete sales between parties

*CLAIM #4702*

*S. PARAGRAPH 12*

and <u>within the three month time limit from the Startup Day.</u> Therefore, every transfer of the Note(s) for inclusion in the Trust *must be a true purchase and sale*, and consequently the Note must be endorsed from one entity to another and the corresponding mortgage must be assigned in the exact same chain.

26. Residential Funding Corporation is the Seller for this particular trust so it would have been Residential Funding Corporation that would have had to select the subject Note and Mortgage for inclusion into this trust to begin with.

27. Thus, Platinum Capital Group, Corp would have endorsed the Note to Residential Funding Corporation.

28. By virtue of that fact, there would have to be a corresponding Assignment, there would be a break in the chain of title and the Note and Mortgage would have been bifurcated or separated creating an unsecure debt (the Note without a Security Instrument).

29. If, in fact, Residential Funding Corporation, selected this loan to be included in this specific trust, then four very distinct actions would have been taken:

i. It would have included this mortgage loan on the Mortgage Loan Schedule as per *Description of the Mortgage Pool* of the Pooling and Servicing Agreement and this schedule would still, to this day, identify this loan directly.

ii. It would have specifically endorsed the Note to Residential Accredit Loans, Inc. – the depositor for this Trust; and,

iii. It would have drafted an Assignment of Mortgage, as Assignor, to Residential Accredit Loans, Inc. as Assignee

iv. Residential Accredit Loans, Inc. would have endorsed the note in blank and would have drafted an Assignment as Assignor to DEUTSCHE BANK TRUST COMPANY AMERICAS.

30. All four of these actions are specifically required by the governing document, Pooling and Servicing Agreement *Issuing Entity* of the pooling and servicing agreement states that, although it is intended that the conveyance by the depositor to the trustee of the mortgage loans be construed as a sale, the conveyance of the mortgage loans shall also be deemed to be a grant by the depositor to the trustee of a security interest in the mortgage loans and related collateral.

*CLAIM # 4702*

*S. PARAGRAPH 12*

31. ***THE TRUSTS*** of the PSA in the instant case specifically requires the Depositor (*and only the Depositor*) to convey the mortgage loans to the Trustee. Simply put, the PSA allows for absolutely no other form, method or chain of conveyances of mortgage loans to the Trust.

32. Any Assignments or Notices filed by the Lender in the instant case must meet these specific requirements or the notice is either (a) a fraud, or (b) an Assignment for this Trust which thus separated the Note from the Mortgage thereby likely rendering the Note an unsecured obligation or, in the alternative, indicating that this Note was in fact deposited into this Trust after the Closing Date/ Startup Day and is thereby an "unqualified contribution" into this Trust pursuant to IRC § 860 and thus subjects this entire Trust to a revocation of its REMIC tax status and possibly would subject all cash flow received by this Trust to be double taxation.

33. Due to the history of Borrowers' loan, I believe that nothing short of producing the original note with the proper endorsements will suffice to accurately clarify ownership of note and proper legal standing.

34. The Mortgage always follows the note unless they are purposefully separated for some obscure reason.

35. Given these issues, Platinum Capital Group, Corp. could not have assigned the Mortgage to anyone after the Closing Date/ Startup Day of on or about June 29, 2006.

36. These are all serious issues of fact that need to meted out properly to determine the authenticity of any mortgage assignment and the Lender's standing in the instant case.

37. In my investigative work for various attorneys, it has become highly evident that these "Assignments" are being called into question more and more by presiding judges, state attorney generals and the like.

38. These assignments seem to appear out of nowhere and usually have highly suspect dates appearing on them. Their authenticity have been called into question on numerous occasions; many questions have been asked of the Lenders supplying these purported assignments and the answers have only created more doubt about their validity.

39. The pooling and Servicing Agreement is the governing document for this Trust and all parties. The PSA clearly defines the conveyances method and order for all mortgage loans in this Trust. The Trustee cannot violate page S-28 of the PSA when it accepts the Note and Mortgage via any Assignment of Mortgage, together with the Note.

*CLAIM # 4702*

*S - PARAGRAPH 12*

40. The Lender would only have the right of enforcement of this Note if it had taken possession of this Note in the manner described in the PSA. No other manner of possession or conveyances is authorized and therefore if the Lender took possession of the Note after the Closing Date/Startup Day then it could not have the right of enforcement as Trustee for this Trust.

41. It is my opinion, after careful consideration of all the facts of this case along with a thorough review of the Trust documents filed with the SEC, that the Trustee's' legal standing in the instant case is not authentic and that it was merely fabricated at the request of the Lender or Lender's counsel to present an "appearance" of the legal ownership of the Note and Mortgage and the right to foreclose on the Borrowers. AURORA LOAN SERVICES, LLC is acting in the role of Servicer to Borrowers' loan and is not the true owner and holder of the Note and AURORA LOAN SERVICES, LLC is not a Servicer in this Trust and has no affiliation to this Trust and is attempting to collect on a debt that was never acquired properly. Any Assignments or Notices filed in the instant case must recognize the process of securitization that has occurred to Borrowers' loan and follow the requirements outlined above. The Lender can and is only acting in the capacity as Servicer for another entity. There is no authority the Lender has or would have to create any assignments and if Borrowers' loan was sold into this particular trust, the closing date was on or about June 29, 2006.

42. Another entity is likely to be found to be the true and actual owner and holder of the Note and Mortgage, however further discovery would need to be conducted to make a final determination of exactly who at this point does own the subject Note and Mortgage and to determine if the Note and Mortgage have been bifurcated or not.

43. Finally, I recommend that the activities by the Lender be reported to the Internal Revenue Service and the Securities and Exchange Commission for, what I deem to be violations of federal law, acceptance of a prohibited transaction for this trust and for breach of trust.

**I understand that I am swearing or affirming under oath to the truthfulness of the claims made in this petition and that the punishment for knowingly making a false statement includes fines and/or imprisonment.**

*S. PARAGRAPH 12*

Alexis Mesa

STATE OF FLORIDA

COUNTY OF MIAMI-DADE ss.

On the _6_ day of _April_ in the year 2012, **Alexis Mesa** personally appeared before me, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individuals acted, executed the instrument, and that such individual made such appearance before the undersigned in **Miami, Florida.**

NOTARY

DATE  4/6/12

8

@ PAIH # 4702

S. PARAGRAPH 12

| CF | Class | Orig(000) | Curr(000) | Cpn | OWAL | Orig Mty | Cusip | Description |
|---|---|---|---|---|---|---|---|---|
| • | RALI 2006-QO6 A1 | 725,353 | 367,899 | 0.422 | 3.49 | 6/25/46 | 75114NAA2 | FLT, STEP |
| • | RALI 2006-QO6 A2 | 302,230 | 155,888 | 0.472 | 3.49 | 6/25/46 | 75114NAB0 | FLT, STEP |
| • | RALI 2006-QO6 A3 | 181,338 | 93,533 | 0.502 | 3.49 | 6/25/46 | 75114NAC8 | FLT, STEP, SSNR, SSUP |
| Pd | RALI 2006-QO6 M1 | 26,040 | 0 | 0.559 | 6.44 | 6/25/46 | 75114NAD6 | MEZ, FLT, STEP |
| Pd | RALI 2006-QO6 M2 | 9,766 | 0 | 0.594 | 6.37 | 6/25/46 | 75114NAE4 | MEZ, FLT, STEP |
| Pd | RALI 2006-QO6 M3 | 6,510 | 0 | 0.616 | 6.31 | 6/25/46 | 75114NAF1 | MEZ, FLT, STEP |
| Pd | RALI 2006-QO6 M4 | 6,510 | 0 | 0.726 | 6.25 | 6/25/46 | 75114NAG9 | MEZ, FLT, STEP |
| Pd | RALI 2006-QO6 M5 | 6,510 | 0 | 0.785 | 6.18 | 6/25/46 | 75114NAH7 | MEZ, FLT, STEP |
| Pd | RALI 2006-QO6 M6 | 6,510 | 0 | 0.825 | 6.08 | 6/25/46 | 75114NAJ3 | MEZ, FLT, STEP |
| Pd | RALI 2006-QO6 M7 | 6,510 | 0 | 1.559 | 5.93 | 6/25/46 | 75114NAK0 | MEZ, FLT, STEP |
| Pd | RALI 2006-QO6 M8 | 6,510 | 0 | 1.759 | 5.7 | 6/25/46 | 75114NAL8 | MEZ, FLT, STEP |
| Pd | RALI 2006-QO6 M9 | 6,510 | 0 | 2.188 | 5.39 | 6/25/46 | 75114NAM6 | MEZ, FLT, STEP |
| Pd | RALI 2006-QO6 SB | 11,719 | 0 | 0 | 0 | 6/25/46 | BCC0RJB98 | SUB |
| | RALI 2006-QO6 R1 | 0 | 0 | 0 | 0 | 6/25/46 | 75114NAP9 | R |
| | RALI 2006-QO6 R2 | 0 | 0 | 0 | 0 | 6/25/46 | 75114NAQ7 | R |

MORTGAGE / NOTE TRANCHES

TOMAS DIAZ
LOAN NO.: 10500352 / 0010624849 / 0021953252
5200 SW 122 AVE
MIAMI, FL 33175

EXECUTION COPY

*S. PARAGRAPH 12*

**EXHIBIT B**

*C/AIM # 4702*

**ALLOCATION OF ALLOWED CLAIM**

1.     The Allowed Claim shall be allocated amongst the Accepting Trusts by the Trustees pursuant to the determination of a qualified financial advisor (the "Expert") who will make any determinations and perform any calculations required in connection with the allocation of the Allowed Claim among the Accepting Trusts. To the extent that the collateral in any Accepting Trust is divided by the Governing Agreements into groups of loans ("Loan Groups") so that ordinarily only certain classes of investors benefit from the proceeds of particular Loan Groups, those Loan Groups shall be deemed to be separate Accepting Trusts for purposes of the allocation and distribution methodologies set forth below. The Expert is to apply the following allocation formulas:

       (i)  *First,* the Expert shall calculate the amount of Net Losses for each Accepting Trust as a percentage of the sum of the Net Losses for all Accepting Trusts (such amount, the "Net Loss Percentage");

       (ii)  *Second,* the Expert shall calculate the "Allocated Depositor Claim" for each Accepting Trust by multiplying (A) the amount of the Allowed Claim by (B) the Net Loss Percentage for such Accepting Trust, expressed as a decimal; provided that the Expert shall be entitled to make adjustments to the Allocated Depositor Claim of each Accepting Trust to ensure that the effects of rounding do not cause the sum of the Allocated Depositor Claims for all Accepting Trusts to exceed the amount of the Allowed Claim; and

       (iii)  *Third,* the Expert shall calculate the "Allocated Seller Claim" for each Accepting Trust by multiplying (A) the amount of the Allowed Claim by (B) the Net Loss Percentage for such Accepting Trust, expressed as a decimal; provided that the Expert shall be entitled to make adjustments to the Allocated Seller Claim of each Accepting Trust to ensure that the effects of rounding do not cause the sum of the Allocated Seller Claims for all Accepting Trusts to exceed the amount of the Allowed Claim.

       (iv)  Any HoldCo Claim provided to an Accepting Trust making one or more HoldCo Elections, and any reduction to the Allocated Depositor Claim and Allocated Seller Claim of that Accepting Trust, shall be calculated pursuant to Section 6.02.

       (v)  For the avoidance of doubt, and subject to the HoldCo Election, each Accepting Trust shall receive an Allocated Claim only against its Seller Entity, which Allocated Claim its Depositor Entity is jointly liable for.

       (vi)  If applicable, the Expert shall calculate the portion of the Allocated Claim that relates to principal-only certificates or notes and the portion of the Allocated Claim that relates to all other certificates or notes.

2.     All distributions from the Estate to an Accepting Trust on account of any Allocated Claim shall be treated as Subsequent Recoveries, as that term is defined in the Governing Agreement for that trust; provided that if the Governing Agreement for a particular Accepting

-17-

| Deal Name | Cusip | Sum Of Original Face | Sum Of Current Face |
|---|---|---|---|
| RALI 2006-QO1 | 761118RJ9 | $78,443,000.00 | $24,013,603.76 |
| RALI 2006-QO1 | 761118RG5 | $5,400,000.00 | $838,109.67 |
| RALI 2006-QO1 | 761118RK6 | $10,496,000.00 | $0.03 |
| RALI 2006-QO10 | 751153AA5 | $99,395,000.00 | $56,761,261.83 |
| RALI 2006-QO10 | 751153AB3 | $81,000,000.00 | $41,396,225.42 |
| RALI 2006-QO2 | 761118VY1 | $265,842,000.00 | $94,138,538.93 |
| RALI 2006-QO2 | 761118VZ8 | $99,413,600.00 | $38,595,980.48 |
| RALI 2006-QO3 | 761118WP9 | $164,541,000.00 | $70,431,593.54 |
| RALI 2006-QO3 | 761118WQ7 | $34,747,000.00 | $16,745,355.27 |
| RALI 2006-QO4 | 75114GAC3 | $5,470,000.00 | $2,647,461.19 |
| RALI 2006-QO5 | 75114HAD9 | $66,000,000.00 | $35,286,331.22 |
| RALI 2006-QO5 | 75114HAK3 | $11,000,000.00 | $9,974,691.10 |
| RALI 2006-QO5 | 75114HAH0 | $29,397,000.00 | $7,731,231.07 |
| RALI 2006-QO5 | 75114HAE7 | $10,800,000.00 | $4,274,581.07 |
| RALI 2006-QO6 | 75114NAA2 | $532,153,000.00 | $268,255,921.95 |
| RALI 2006-QO6 | 75114NAB0 | $249,055,000.00 | $127,674,640.47 |
| RALI 2006-QO7 | 751150AD5 | $80,751,000.00 | $48,796,184.34 |
| RALI 2006-QO7 | 751150AH6 | $64,378,000.00 | $46,855,661.04 |
| RALI 2006-QO7 | 751150AJ2 | $37,954,000.00 | $32,438,418.87 |
| RALI 2006-QO7 | 751150AA1 | $12,000,000.00 | $7,142,533.74 |
| RALI 2006-QO8 | 75115FAS9 | $15,000,000.00 | $13,791,616.34 |
| RALI 2006-QO9 | 75115HAN6 | $548,514,000.00 | $257,600,151.69 |
| RALI 2006-QO9 | 75114PAC3 | $85,000,000.00 | $79,706,842.10 |
| RALI 2006-QO9 | 75114PAA7 | $1,700,000.00 | $0.00 |
| RALI 2006-QS1 | 761118SB5 | $22,000,000.00 | $5,271,753.67 |
| RALI 2006-QS10 | 751155AP7 | $66,810,666.00 | $29,334,407.16 |
| RALI 2006-QS10 | 751155AN2 | $15,810,666.00 | $6,941,953.19 |
| RALI 2006-QS10 | 751155BE1 | $5,293,385.00 | $2,509,526.92 |
| RALI 2006-QS11 | 75115EAA1 | $75,000,000.00 | $27,080,806.88 |
| RALI 2006-QS11 | 75115EAU7 | $17,284,000.00 | $13,187,758.02 |

THE CLAIM # 4702

S. PARAGRAPH 12

regarding a vast fraudulent tax avoidance scheme involving Platinum Capital Group Corp., Aurora Loan Services LLC, Residential Funding Company, LLC, Residential Accredit Loans, Inc., Residential Funding Corporation, Homecomings Financial LLC, Deutsche Bank Trust Company Americas, Wells Fargo Bank, N.A., Mortgage Electronic Registration Systems (MERS), and Goldman, Sachs & Co., and the **RALI Series 2006-QO6 Trust - series A1-A3; M1-M9, SB, R1 and R2,** *et al.,* **named below, as well as all related RALI Series Trusts starting in 1995 forward as indicated below,** which conduct, regarding each of the named trust(s), has resulted in excess of two million dollars ($2,000,000) in tax avoidance, or evasion, as the case may be.

### Tax Avoidance\Evasion Information & Issues:

**Various related entities involved:**

**RALI 2006-QO6 A1 for taxable years 2006 thru 2011**
**RALI 2006-QO6 A2 for taxable years 2006 thru 2011**
**RALI 2006-QO6 A3 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M1 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M2 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M3 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M4 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M5 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M6 for taxable years 2006 thru 2011**

1 \ PAGE

*(CLAIM # 4702*

S · PARAGRAPH 12

RALI 2006-QO6 M7 for taxable years 2006 thru 2011
RALI 2006-QO6 M8 for taxable years 2006 thru 2011
RALI 2006-QO6 M9 for taxable years 2006 thru 2011
RALI 2006-QO6 SB for taxable years 2006 thru 2011
RALI 2006-QO6 R1 for taxable years 2006 thru 2011
RALI 2006-QO6 R2 for taxable years 2006 thru 2011

**And all RALI Series Trust(s) – All Series 1995-2008 that engaged in similar conduct for all taxable years 1995 through 2011. (263 entities named in Exhibit Q)**

(a)    Each and every one of the above entities have failed to properly qualify as a real estate investment conduit (REMIC) pursuant to Internal Revenue Code Section 860D(a)(4),

(b)    Each and every one of the above entities have improperly & falsely filed IRS form 8811 under penalties of perjury to irrevocably elect tax exempt pass through status,

(c)    Each and every one of the above entities have improperly filed false income tax returns forms 1066, with the Internal Revenue Service, to avoid double taxation on income derived from securitized mortgage pools & interest income earned, thereon,

(d)    Each and every one of the above entities have improperly represented themselves to the IRS and investors to be a qualified tax exempt entity pursuant to IRC Section 860D and further failed to timely notify IRS via form 8811 that this entity no longer qualifies as tax exempt REMIC (Reg. Sec. 1.6049-7) at all relevant times herein,

(e)    Each and every one of the above entities have improperly reported income and expenses on forms 1066 for all relevant periods, encompassing all calendar years, 2007 through calendar year 2011 thereby delaying the running of the statute of limitations for tax assessment purposes, until proper income tax returns are filed,

(f)    Each and every one of the above entities have engaged in extensive & numerous illegal prohibited transactions pursuant to IRC Section 860F(a), which subject each of those relevant transactions to the 100% prohibited transaction tax.

(g)    All of the above IRS violations have been occasioned, by a flawed manner of custom and practice of selling notes of mortgage pools into flawed REMIC originations & securitizations, and specifically, by the failure of RALI Series 2006-QO6 Trust and each of the above named entities to substantially acquire all of the entities qualified assets (qualified mortgages or permitted investments), at the close of the third month, beginning after the relevant startup day and all times thereafter. (Code Section 860D(a)(4)).

*CLAIM #4702*

S · PARAGRAPH 12

(h)    The above alluded to IRS violations in paragraph (g) immediately above amount to a blatant pattern of financial fraud, which, directly or indirectly, were occasioned by the custom and practice of representatives of the trustees, and\or, the various named taxpayers, fabricating & falsifying foreclosure documents (by the collective conduct of the various mortgage servicers, agents, legal representatives and other related parties\professionals).    All parties involved herein, have acted in concert, conspired, and\or, aided and abetted in said illegal fraudulent tax evasive or tax avoidance conduct.

(i)    On information and belief, the claimants herein allege that the entities selling mortgage notes to this REMIC (& others) have treated the sales of billions of dollars of mortgage notes as a tax free exchanges presuming a transaction to be between a seller icon bank and a tax free pass through REMIC, (See IRC Section 860F(b); Reg. Sec. 1.860F(b)) and have avoided paying taxes thereon pursuant to IRC Section 453(b) dealing with each sale, exchange or, disposition of installment obligations and have thus failed to recognize income on these sale transactions with all non qualifying REMICs.

(j)    Claimants herein have identified numerous IRS "badges of fraud," "fraudulent filing of elections," "fraudulent filing of false tax returns," "fraudulent filing of false IRS information returns" as well as "fundamental fraudulent documentation fabrication which should subject all tax assessments herein, to the 50% income tax fraud penalty."

### Claimant's submission:

The above named joint claimants submit the following documents in support of their claims of (1) prima facie evidence of ongoing and continuing tax avoidance and evasion, (2) prima facie evidence of fabrication of false documents of ownership of mortgage note(s) in connection with relevant foreclosure proceedings\litigation with the Rev. Tomas Diaz, the principal claimant herein, (3) failure to acquire mortgage pools in a timely manner, (4) inconsistent requisite IRS Real Estate Mortgage Investment Conduits (REMICs) evidence of completing ownership and possession of note claims of qualified trust assets, of RALI Series 2006-QO6 Trust - series A1-A3; M1-M9, SB, R1, R2 in support of their claim for a reward pursuant to IRS Section 7623(b)):

*S. PARAGRAPH 12*   *CLAIM #4702*

Prospectus supplement dated June 28, 2006 (to prospectus dated March 3, 2006)

# $1,290,297,000
# RALI Series 2006-QO6 Trust
## Issuing Entity

# Residential Accredit Loans, Inc.
## Depositor

# Residential Funding Corporation
## Master Servicer and Sponsor

### Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QO6

The trust will hold a pool of one- to four-family residential, payment-option, adjustable-rate first lien mortgage loans with a negative amortization feature.

**Offered Certificates**

The trust will issue these classes of certificates that are offered under this prospectus supplement:

- 3 classes of senior certificates designated Class A-1, Class A-2 and Class A-3 Certificates; and
- 9 classes of subordinated certificates designated Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7, Class M-8 and Class M-9 Certificates

all as more fully described in the table on page S-6 of this prospectus supplement.

**Credit Enhancement**

Credit enhancement for the offered certificates consists of:

- excess cash flow;
- overcollateralization; and
- subordination provided to the Class A Certificates by the Class M Certificates, and subordination provided to the Class M Certificates by each class of Class M Certificates with a lower payment priority.

Distributions on the certificates will be on the 25th of each month or, if the 25th is not a business day, on the next business day, beginning July 25, 2006.

---

**You should consider carefully the risk factors beginning on page S-16 in this prospectus supplement.**

---

**Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of the offered certificates or determined that this prospectus supplement or the prospectus is accurate or complete. Any representation to the contrary is a criminal offense.**

**The Attorney General of the State of New York has not passed on or endorsed the merits of this offering. Any representation to the contrary is unlawful.**

**The certificates represent interests only in the trust, as the issuing entity, and do not represent interests in or obligations of Residential Accredit Loans, Inc., as the depositor, Residential Funding Corporation, as the sponsor, or any of their affiliates.**

Goldman, Sachs & Co., as underwriter, will purchase all of the offered certificates from the depositor. The certificates are offered by the issuing entity through the underwriters to prospective purchasers from time to time in negotiated transactions at varying prices to be determined at the time of sale. The net proceeds to the depositor from the sale of the underwritten certificates will be approximately 99.99% of the certificate principal balance of the underwritten certificates, plus accrued interest, before deducting expenses.

## Goldman, Sachs & Co.
### Underwriter

S·PARAGRAPH 12          CLAIM # 4702

## Summary

The following summary provides a brief description of material aspects of this offering, and does not contain all of the information that you should consider in making your investment decision. To understand all of the terms of the offered certificates, you should read carefully this entire document and the prospectus.

| | |
|---|---|
| Issuing Entity .................................. | RALI Series 2006-QO6 Trust. |
| Title of securities............................. | Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QO6. |
| Depositor........................................ | Residential Accredit Loans, Inc., an affiliate of Residential Funding Corporation. |
| Master servicer and sponsor........... | Residential Funding Corporation. |
| Subservicer...................................... | Homecomings Financial Network, Inc., a wholly-owned subsidiary of Residential Funding Corporation, will subservice substantially all of the mortgage loans. |
| Trustee............................................ | Deutsche Bank Trust Company Americas. |
| Mortgage pool ................................ | 3,651 payment-option, adjustable-rate mortgage loans with a negative amortization feature. The mortgage loans have an aggregate principal balance of approximately $1,302,015,741 as of the cut-off date, and are secured by first liens on one- to four- family residential properties. |
| Originators ..................................... | Approximately 40.5% by principal amount of the mortgage loans were originated by Homecomings Financial Network, Inc., a wholly-owned subsidiary of Residential Funding Corporation. |
| Cut-off date .................................... | June 1, 2006. |
| Closing date .................................... | On or about June 29, 2006. |
| Distribution dates............................ | The 25th of each month or, if the 25th is not a business day, on the next business day beginning in July 2006. |
| Scheduled final distribution date ... | The distribution date in June 2046. The actual final distribution date could be substantially earlier. See *"Certain Yield and Prepayment Considerations"* in this prospectus supplement. |

S· PARAGRAPH 12        CLAIM #4702

MERS holding of the note endorsed in blank as nominee of a mortgage sold to a
mortgage backed securities trust is a violation of warranties and representation contained
in the pooling and servicing agreement and the 424b5 prospectus.

An assignment of the Note from MERS to the servicer is of either no legal effect or an
illegal conversion of the note.

The Cut-Off Date for this trust of RALI Series 2006-QO6 Trust is June 1, 2006 and the
Closing Date for RALI Series 2006-QO6 Trust is on or about June 29, 2006. **What this
means is that the trust is unable to have any other assets put into this trust after the
closing date.**

According to the 424b5 Prospectus it states on page 27 under the heading of
"Assignment of the Contracts" The depositor will cause the contracts constituting the
contract pool to be assigned to the trustee or its nominee, which may be the custodian,
together with principal and interest due on or with respect to the contracts after the cut-
off date, but not including principal and interest due on or before the cut-off date or any
Spread. 28 Each contract will be identified in a schedule appearing as an exhibit to the
pooling and servicing agreement. The schedule will include, among other things,
information as to the principal amount and the adjusted principal balance of each contract
as of the close of business on the cut-off date, as well as information respecting the
mortgage rate, the current scheduled monthly level payment of principal and interest and
the maturity date of the contract. In addition, the depositor, the servicer or the master
servicer, as to each contract, will deliver to the trustee, or to the custodian, the original
contract and copies of documents and instruments related to each contract and the
security interest in the manufactured home securing each contract. The depositor, the
master servicer or the servicer will cause a financing statement to be executed by the
depositor identifying the trustee as the secured party and identifying all contracts as
collateral. However, the contracts will not be stamped or otherwise marked to reflect their
assignment from the depositor to the trust and no recordings or filings will be made in the
Jurisdictions in which the manufactured homes are located.  See "Certain Legal Aspects
of Mortgage Loans and Contracts—The Contracts."


On page 28 of the 424b5 Prospectus it is states "The trustee or the custodian will hold
documents in trust for the benefit of the certificateholders and, within 45 days after
receipt thereof, will review such documents. If any such document is found to be
defective in any material respect, the trustee or the custodian shall promptly notify
Residential Funding Corporation or the designated seller, if any, and the depositor. If
Residential Funding Corporation or the designated seller, as the case may be, cannot cure
the defect within 60 days, or within the period specified in the accompanying prospectus
supplement, after notice of the defect is given, Residential Funding Corporation or
designated seller, as applicable will be obligated no later than 90 days after such notice,
or within the period specified in the accompanying prospectus supplement, to either
repurchase the related mortgage loan or contract or any related property from the trustee

*S · PARAGRAPH /2*          *CLAIM # 4702*

or substitute a new mortgage loan or contract in accordance with the standards described in this prospectus under "The Trust — Repurchases of Mortgage Collateral." The obligation of Residential Funding Corporation and designated seller to repurchase or substitute for a mortgage loan or contract constitutes the sole remedy available to the certificateholders or the trustee for a material defect in a constituent document. Any mortgage loan not so purchased or substituted shall remain in the related trust."

There are enormous consequences, if the Corporation Assignment of Mortgage filed with the Miami-Dade County Recorder is NOT authentic, in that this trust has elected to be a REMIC Trust. According to the Prospectus, page S-189, under the heading **"Federal Income Tax Consequences."** The trust RALI Series 2006-QO6 shows that this loan was allegedly deposited into elected to be treated as a REMIC, which provides for pass-through tax treatment of the income generated by the Trust assets.

Internal Revenue Code Section 860 regulates the activities and requirements of a REMIC Trust.

According to 26 CFR§ 1.860D-1(c )(2) **Identification of assets.** The formation of the REMIC does not occur until (i) The sponsor identifies the assets of the REMIC, such as through execution an indenture with respect to the asset; and (ii) The REMIC issues the regular and residual interests in the REMIC. In other words, the REMIC is not officially formed until the Sponsor/ Seller identifies the specific assets of the REMIC (the specific loans).

The Prospectus and the Pooling and Servicing Agreement specifically identify a Closing Date which is the last day that an asset (loan) can be "identified "for inclusion in the Trust/REMIC. The Closing Date also serves as the Startup Day for the REMIC. According to Internal Revenue code Section, "All of a REMIC's loans must be acquired on the startup day of the REMIC or within three months thereafter".

The Closing Date/Startup Day for this Trust/REMIC was: on or about June 29, 2006.

I have had a securitization search done on my loan through the use of specialty licensed software which permits investors (or licensed users) access to any "named Trust Entity and shows the current status of the loan. After Cynthia Horner conducted a thorough search of the above mentioned Trust, she has found that the referenced loan is indeed in this Trust. She has also obtained and provided the 424B-5 Prospectus, the Pooling and Servicing Agreement and all other relevant filings for this Trust. The loan number in dispute is listed in **15** of the **15** classes of that trust. I have also included a copy of the Declaration provided to me from Cynthia Horner. Below is a listing of every class that the loan number appears in with its unique Cusip number;

| TOMAS DIAZ RALI 2006-QO6 RESIDENTIAL ACCREDIT LOANS, INC CLASSIC CLASSES | | |
|---|---|---|
| CF | Class | Cusip |
| * | RALI 2006 - QO6 A1 | 75114NAA2 |

Since Aurora Loan Services, LLC is just a servicer and the Note was sold and it was **obviously securitized**, Aurora Loan Services, LLC has forever lost the right to enforce or control the asset. The Note is invalid once it has been securitized, as it has ceased to function as a note, but more analogous to a stock. Pooling Notes into Trusts is analogous to taking a herd of cattle and then making thousands of pounds of hamburger. Once that is done, there is no way to reconstitute a single cow (i.e. return a single cow back to the farm, as the cow no longer exists in that form). Additionally, the Note MUST be transferred with the Deed of Trust, to the Real Party in Interest who could suffer a potential loss. That is the Certificate Holders and NOT the trust.

My loan started as a negotiable instrument. There are specific laws governing negotiable instruments detailed in the Uniform Commercial Code (UCC). I specifically demanded an a Verified Statement of Account as defined under UCC 9-210, to which I never received a response as legally required.

The right for a bank to enforce and foreclose on a property is subject to the claimant being a real party of interest. **This is protected under Federal Rule 17(a) and has not been proven.** The ability to prove that a party is a Real Party in interest is a hallmark our Constitution guaranteeing Due Process.

**No Entity can be a CREDITOR if they don't hold/own the asset in question [i.e. the NOTE and/or the property] a Mortgage Pass Through Trust [i.e. R.E.M.I.C., as defined in Title 26, Subtitle A, Chapter 1, Subchapter M, Part II §§ 850-862] cannot hold assets, for if they do, their tax exempt status is violated and the Trust itself is void *ab initio*. Therefore, either the Trust has either voided its intended Tax Free Status, or the asset is not in fact owned by it.**

Since the loan was sold, pooled and turned into a security, you, the bank, can no longer claim that you are a real party of interest, as you have been **paid in full.**

| | | |
|---|---|---|
| * | RALI 2006 - QO6 A2 | 75114NAB0 |
| * | RALI 2006 - QO6 A3 | 75114NAC8 |
| Pd | RALI 2006 - QO6 M1 | 75114NAD6 |
| Pd | RALI 2006 - QO6 M2 | 75114NAE4 |
| Pd | RALI 2006 - QO6 M3 | 75114NAF1 |
| Pd | RALI 2006 - QO6 M4 | 75114NAG9 |
| Pd | RALI 2006 - QO6 M5 | 75114NAH7 |
| Pd | RALI 2006 - QO6 M6 | 75114NAJ3 |
| Pd | RALI 2006 - QO6 M7 | 75114NAK0 |
| Pd | RALI 2006 - QO6 M8 | 75114NAL8 |
| Pd | RALI 2006 - QO6 M9 | 75114NAN6 |
| Pd | RALI 2006 - QO6 SB | BCC0RJB98 |
| | RALI 2006 - QO6 R1 | 75114NAP9 |
| | RALI 2006 - QO6 R2 | 75114NAQ7 |

S. PARAGRAPH 12                    CLAIM #4702

*S · PARAGRAPH 12*                    *CLAIM # 4702*

Not only that, once my Note was converted into a stock, or stock equivalent, it is no longer a Note. If both the Note and the stock, or stock equivalent, exist at the same time, that is known as double dipping. **Double dipping is a form of securities fraud.**

Once a loan has been securitized which my loan has had done many times, it **forever** loses its security component (i.e., the Deed of Trust), and the right to foreclose on through the Deed of Trust is forever lost.

The Promissory Note has been converted into a stock as a permanent fixture. It is now a stock and governed as a stock under the rules and regulations of the SEC, hence the requirement for the filings of the registration statements, pooling and servicing agreements form 424B-5 etc.. There is no evidence on the Record nor do I believe any evidence that the Mortgage was ever transferred concurrently with the purported legal transfer of the Note, such that the Mortgage/ Deed of Trust and Note have been irrevocably separated, thus making a nullity out of the purported security in a property.

Since the Mortgage secures the Promissory Note, once the Promissory Note is destroyed and made into a Stock, the Mortgage secures nothing. Therefore the Mortgage is invalid. Once a loan has been securitized, reattachment is impossible. Thus the entire process of inducing me to execute a Mortgage would legally be called adhesion. It could be legally argued that the Mortgage in the scenario described here in is an unconscionable contract and open to the perpetrators of such a contract to legal persecution.

When a loan goes into default, it gets written off by the REMIC which is the RALI Series 2006-QO6 Trust. Once an asset is written off, the debt is discharged since the owner of the asset has received compensation for the discharge in the form of tax credits from the IRS as well as insurance, as required in the 424B-5 Prospectus. **This means the Debt has been settled and there is NO loss.**

Aurora Loan Services admits to being a debt collector attempting to collect a debt. Since Aurora Loan Services is admittedly a debt collector, then it is strictly governed under the "Fair Debt Collections Practices Act." No one has listed RALI Series 2006-QO6 Trust, as the creditor and Aurora Loan Services, is not risking a loss. The chain of communications admits that you are not the real party of interest; you do not have the right to foreclose or proceed with any actions that are outlined in the communications sent to me.

I require a response (Within the next 10 days) from Deutsche Bank Trust Company Americas and Aurora Loan Services LLC that you have recused yourself from this foreclosure action. If no response from Deutsche Bank Trust Company Americas and Aurora Loan Services LLC has been received within 10 days it will be assumed that my request has been ignored. I will be inquiring and requesting for detailed Discovery for the explanations regarding the loan number being listed in so many classes within the Trust / REMIC, the Accounting treatment of the purported Note since inception as well as deposition and subpoenas. Additionally I will be seeking damages under the Fair Debt Collections Act. Please govern yourself accordingly.

S. PARAGRAPH 12 CLAIM #4702

## TRANSFER OF MORTGAGE LOANS

The diagram below illustrates the sequence of transfers of the mortgage loans that are included in the mortgage pool. Various mortgage loan sellers will, on or prior to the closing date, sell the mortgage loans to Residential Funding Corporation, as sponsor. Residential Funding Corporation will, simultaneously with the closing of the transaction described herein, sell the mortgage loans to Residential Accredit Loans, Inc., as the depositor. The depositor will then transfer the mortgage loans to the trustee, on behalf of the trust that is the issuing entity. The trustee will accordingly own the mortgage loans for the benefit of the holders of the certificates. See "Pooling and Servicing Agreement – The Trustee" in this prospectus supplement and in the prospectus. For a description of the affiliations among various transaction parties, see "Affiliations Among Transaction Parties" in this prospectus supplement.

Mortgage Loan Sellers
sale of mortgage loans
Residential Funding Corporation
(Master Servicer and Sponsor)
sale of mortgage loans
Residential Accredit Loans, Inc.
(Depositor)
sale of mortgage loans
Deutsche Bank Trust Company Americas
(Trustee)
(owner of mortgage loans on behalf of issuing entity
for the benefit of holders of certificates)

*CLAIM # 4702*

*S. PARAGRAPH 12*

# IN THE CIRCUIT COURT OF THE 11ᵀᴴ JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

DEUTSCHE BANK TRUST COMPANY
AMERICAS, AS TRUSTEE

     Plaintiff,

-vs.-

     **CASE NO.: 2007-16754 CA 01**
     **DIVISION (10)**

TOMAS DIAZ

     Defendant,

_____/

## <u>DECLARATION</u>

I, Alexis Mesa, subscribe to A Professional Data Service and I have been trained to do Mortgage Security Audits and have the Certification & knowledge on how to perform these searches.

On April 6, 2012, I researched the Bloomberg online Database at the request of Tomas Diaz. He allegedly signed a Note in favor of Platinum Capital Group, Corp. On April 27, 2006 with a loan #0010500352, then the mortgage was assigned to Deutsche Bank Trust Company Americas on October 26, 2006 the loan was identified as RALI Series 2006-QO6 Trust with a loan # 0010624849. The loan was assigned to Aurora Loan Services, LLC with a loan no.: 0021953252. After a Thorough search of Miami-Dade public records it results that no assignments were filed/recorded from Deutsche Bank National Trust Company Americas to Aurora Loan Services, LLC. The clarifying code and abbreviation on the Bloomberg Terminal is **RALI 2006-QO6.**

Pursuant to a thorough search I have found the aforementioned loan in the ACTIVE CLASS of the RALI 2006-QO6.   My research has showed that the loan level detail of this Trust which has a total of 3,651 loans and 2,293 which are Inactive Loans.  This loan also shows that it was **paid off** in 10 Tranches / Classes and appears to still be receiving periodic cash flows in 3 Tranches/ Classes. There are a total of 15 Tranches / Classes in this Trust.

1

1/AIM#4702

5. PARAGRAPH 12

I, Alexis Mesa hereby certify all the following is true obtained by my first hand investigation into this matter. I'm available for court appearance or via phone for further clarification or explanation. Please refer to the exhibits A, B, and C for more detailed information.

I Alexis Mesa declare, verify and state under penalty of perjury that the foregoing is true and correct.

BY: _____  EXECUTED ON: 4/6/2012

Alexis Mesa
11901 SW 45th ST
Miami, FL 33175
PH: 305-219-5670
FAX: 786-999-0990
mvrinter@aol.com


State of Florida County of Miami-Dade


Subscribed and sworn to (or affirmed) before me, Xiomara G. Endara, Notary Public, on this

_____ day of April, 2012 by Alexis Mesa, proved to me on the basis of satisfactory

evidence to be the person(s) who appeared before me.



WITNESS my hand and official seal


_____
Notary Public

XIOMARA G. ENDARA
MY COMMISSION EXPIRES
June 18, 2015
#EE 104010
Bonded thru
Budget Notary Service
NOTARY PUBLIC, STATE OF FLORIDA

2

S PARAGRAPH CLAIM 4702
CLAIM 12

<HELP> for explanation.
Screen saved as G:\BLOOMBERG\Clients\Tomas Dias\5200 SW 122nd Ave\RALI 2006-Q06

98) Stratify: None  ▼  99) Export

Group: ALL collateral

Mtge **CLP**
RALI 2006-Q06
Loan Details
As of: 05/11

| Active Loans | Count | Curr. Amt (USD) | Bal% | WALTV | Score | Orig. Amt | WAC | WAM | WALA |
|---|---|---|---|---|---|---|---|---|---|
| | 1,539 | 581,777,955 | 100 | 74.74 | 701 | 549,857,148 | 3.46 | 330 | 60 |

| Loan | Pay History | Curr. Amt | | †Group(s) | Modifications | Mod Date | Rate |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

Australia 61 2 9777 8600  Brazil 5511 3048 4500  Europe 44 20 7330 7500  Germany 49 69 9204 1210  Hong Kong 852 2977 6000
Japan 81 3 3201 8900  Singapore 65 6212 1000  U.S. 1 212 318 2000  Copyright 2011 Bloomberg Finance L.P.
SN 274327 EDT  GMT-4:00 H200-771-0 13-Jun-2011 22:01:10

S. PARAGRAPH 12  CL4702

<HELP> for explanation.

Mtge **CLP**

Enter 2<go> - 13<go> for loan level details

Grp ▮▮▮▮▮▮▮▮ Source ▮▮▮ 90) Options ▾    RALI 2006-Q06    Collateral Performance

| | Source | 05/2011 | 04/2011 | 03/2011 | 02/2011 | 01/2011 | 12/2010 | 11/2010 | 10/ |
|---|---|---|---|---|---|---|---|---|---|
| USD Bal Wtd | | | | | | | | | |
| Balance (M) | | | | | | | | | |
| Pool Factor | | | | | | | | | |
| # of Loans | | | | | | | | | |
| WAC | | | | | | | | | |
| WAM/Age | | | | | | | | | |
| WALTV (Amort) | | | | | | | | | |
| HPI WALTV (Amort) | | | | | | | | | |
| 4) Delinq 30 days | +85% | 5.10% | 5.50% | +8.% | +36% | 4.46% | 4.70% | |
| 4) Delinq 60 days | | | | | | | | |
| 5) Delinq 90 days | | 11.6% | 17.75% | 1952.% | 18.45% | 21.04% | 2 |
| Bankruptcy | | | | | | | | |
| 6) Foreclosure | 15.41% | 15.59% | 17.06% | 15.04% | 17.41% | 18.50% | 15.16% | 1 |
| 7) REO | | | | | | | | |
| 8) Delinq. 60+ | | | | | | | | |
| 9) Delinq. 90+ | | | | | | | | |
| Second Lien | | | | | | | | |
| Limited Doc. | | | | | | | | |
| Credit Score | | | | | | | | |
| 0) Mod # of loans | | | | | | | | |
| 11) Mod Balance (M) | | | | | | | | |

S. PARAGRAPH 14  CL 4702

Mtge **CLP**

<HELP> for explanation.
<MENU> Return to Previous Screen.
98) Stratify: None  ▾  99) Export

Group: ALL collateral

RAI 2006-Q06

Loan Details
As of: 05/11

| Active Loans | Count | Curr. Amt (USD) | Bal% | WALTV | Score | Orig. Amt | WAC | WAM | WALA |
|---|---|---|---|---|---|---|---|---|---|
| | 1,539 | 581,777,955 | 100 | 74.74 | 701 | 549,857,148 | 3.46 | 330 | 60 |

| Loan | Pay History | Curr. Amt | ↑Group(s) | Modifications | Mod Date | Rate |
|---|---|---|---|---|---|---|

Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2011 Bloomberg Finance L.P.
SN 274327 EOT GMT-4:00 H200-771-0 13-Jun-2011 21:54:36

S. PARAGRAPH 12  CL 4102

HELP> for explanation.

Mtge  **SFNS**

95) Documents▾

RALI 2006-Q06

Structured Finance Notes

Underwriter
Lead Manager

Master
Servicer

Originator/Seller

Trustee

Paying Agent

Deal: Asset Manager

Swap Counterparty

21) Related Parties  22) Trigger Details

Australia 61 2 9777 8600  Brazil 5511 3048 4500  Europe 44 20 7330 7500  Germany 49 69 9204 1210  Hong Kong 852 2977 6000
Japan 81 3 3201 8900      Singapore 65 6212 1000        U.S. 1 212 318 2000     Copyright 2011 Bloomberg Finance L.P.
SN 244327 EDT       GMT-4:00 H200-xxx-1-0 13-Jun-2011 22:04:56

S. PARAGRAPH 12   CL 4102

HELP? for explanation.

<MENU> for series list

95) Options ▾    RALI 2006-006 RESIDENTIAL ACCREDIT LOANS, INC.

Mtge

Template [_____]

15 Classes

| CF Class | Orig(000) | Curr(000) | Cpn | OWAL | Orig Mty | Cusip | Description |
|----------|-----------|-----------|-----|------|----------|-------|-------------|

1)
2)
3) *
4)
5)
6)
7)
8)
9)
10)
11)
12)
13)
14)
15)

Australia 61 2 9777 8600  Brazil 5511 3048 4500  Europe 44 20 7330 7500  Germany 49 69 9204 1210  Hong Kong 852 2977 6000
Japan 81 3 3201 8900      Singapore 65 6212 1000  U.S. 1 212 318 2000  Copyright 2011 Bloomberg Finance L.P.
                                                  SN 274327 EOT    GMT-4:00 H200-771-0 10-Jun-2011 20:58:59

S. PARAGRAPH 12    CL4702

<HELP> for explanation.
<MENU> for series list

95) Options ▾          RALI 2006-Q06 RESIDENTIAL ACCREDIT LOANS, INC.

Mtge

15 Classes

Template

| CF | Class | Orig(000) | Curr(000) | Cpn | OWAL | Factor | Description | Grp | MDY | Fitch | DBRS | S&P |
|----|-------|-----------|-----------|-----|------|--------|-------------|-----|-----|-------|------|-----|

Australia 61 2 9777 8600  Brazil 5511 3048 4500  Europe 44 20 7330 7500  Germany 49 69 9204 1210  Hong Kong 852 2977 6000
Japan 81 3 3201 8900                 Singapore 65 6212 1000         U.S. 1 212 318 2000         Copyright 2011 Bloomberg Finance L.P.
                                                                    SN 27A327 EDT   GMT-4:00 H200-721-0 10-Jun-2011 20:59:59

S. PARAGRAPH 12   CL 4702

HELP> for explanation.
<MENU> Return to Previous Screen.
98) Stratify: None   • 99) Export

Group: ALL collateral

RALI 2006-Q06   Mtge CLP
Loan Details
As of: 05/11

| Active Loans | Count | Curr. Amt (USD) | Bal% | WALTV | Score | Orig. Amt | WAC | WAM | WALA |
|---|---|---|---|---|---|---|---|---|---|
|  | 1,539 | 581,777,955 | 100 | 74.74 | 701 | 549,857,148 | 3.46 | 330 | 60 |

| Loan | Pay History | Curr. Amt | ↑Group(s) | Modifications | Mod Date | Rate |
|---|---|---|---|---|---|---|

Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2011 Bloomberg Finance L.P.
SN 274327 EDT GMT-4:00 H200-7731-0 13-Jun-2011 21:49:13

S. PARAGRAPH 12   CL 4702

Mtge **CLP**

\<HELP\> for explanation.

Enter 2\<go\> - 13\<go\> for loan level details

Grp [ ] Source [ ]   90) Options ▾   RALI 2006-Q06   Collateral Performance

|   | 05/2011 | 04/2011 | 03/2011 | 02/2011 | 01/2011 | 12/2010 | 11/2010 | 10/ |
|---|---|---|---|---|---|---|---|---|
| USD Bal Wtd | | | | | | | | |
| Balance (M) | | | | | | | | |
| Pool Factor | | | | | | | | |
| 2) # of Loans | | | | | | | | |
| WAC | | | | | | | | |
| WAM/Age | | | | | | | | |
| WALTV (Amort) | | | | | | | | |
| HPI WALTV (Amort) | | | | | | | | |
| 3) Delinq 30 days | 4.55% | 5.86% | 5.86% | 4.84% | 4.26% | 4.46% | 4.70% |
| 4) Delinq 60 days | | | | | | | 2.4% |
| 5) Delinq 90 days | | | | | | | 21.04% |
| Bankruptcy | | | | | | | |
| 6) Foreclosure | | | | | | | |
| 7) REO | | | | | | | |
| 8) Delinq. 60+ | | | | | | | |
| 9) Delinq. 90+ | | | | | | | |
| Second Lien | | | | | | | |
| Limited Doc. | | | | | | | |
| Credit Score | | | | | | | |
| 10) Mod # of loans | | | | | | | |
| 11) Mod Balance (M) | | | | | | | |

S. PARAGRAPH 12    CL47D2

Mtge **CLP**

<HELP> for explanation.
Enter 2<go> - 13<go> for loan level details
Grp [____] Source [____] 90) Options ▾    RALI 2006-Q06    Collateral Performance

| | 05/2011 | 04/2011 | 03/2011 | 02/2011 | 01/2011 | 12/2010 | 11/2010 | 10/ |
|---|---|---|---|---|---|---|---|---|
| USD Bal Wtd | | | | | | | | |
| Balance (M) | | | | | | | | |
| Pool Factor | | | | | | | | |
| # of Loans | | | | | | | | |
| WAC | | | | | | | | |
| WAM/Age | | | | | | | | |
| WALTV (Amort) | | | | | | | | |
| HPI WALTV (Amort) | | | | | | | | |
| Delinq 30 days | 4.85% | 5.10% | 5.20% | 4.84% | 4.26% | 4.44% | 4.70% | |
| Delinq 60 days | 2.1% | 2.34% | 2.35% | 1.7% | 2.06% | 2.6% | 2.74% | |
| Delinq 90 days | 17.33% | 17.62% | 17.70% | 19.5% | 18.92% | 18.65% | 21.04% | |
| Bankruptcy | | | | | | | | |
| Foreclosure | 15.41% | 15.59% | 17.66% | 15.04% | 17.11% | 18.50% | 16.16% | 1 |
| REO | 9.12% | 9.23% | 9.02% | 10.1% | 9.0% | 9.0% | 9.54% | |
| Delinq. 60+ | | | | | | | | |
| Delinq. 90+ | | | | | | | | |
| Second Lien | | | | | | | | 2 |
| Limited Doc. | | | | | | | | |
| Credit Score | | | | | | | | |
| Mod # of loans | | | | | | | | |
| Mod Balance (M) | | | | | | | | |

3)
4)
5)
6) Foreclosure
7) REO
8) Delinq. 60+
9) Delinq. 90+
10) Mod # of loans
11) Mod Balance (M)

S. PARAGRAPH 12   CL 4702

<HELP> for explanation.
<MENU> Return to Previous Screen.
98) Stratify: None  • 99) Export
Group: ALL collateral

Mtge CLP

RALI 2006-Q06
Loan Details
As of: 05/11

| Active Loans | Count | Curr. Amt (USD) | Bal% | WALTV | Score | Orig. Amt | WAC | WAM | WALA |
|---|---|---|---|---|---|---|---|---|---|
| | 1,539 | 581,777,955 | 100 | 74.74 | 701 | 549,857,148 | 3.46 | 330 | 60 |

| Loan | Pay History | Curr. Amt | †Group(s) | Modifications | Mod Date | Rate |
|---|---|---|---|---|---|---|

Australia 61 2 9777 8600  Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900                  Singapore 65 6212 1000      U.S. 1 212 318 2000          Copyright 2011 Bloomberg Finance L.P.
SN 274327 EDT       GMT-4:00 H200-271-0 13-Jun-2011 22:00:51

Loans Proof

S. PARAGRAPH 12    CL 4702

<HELP> for explanation.

98) Stratify: None ▼    99) Export

Group: All Collateral

RALI 2006-Q06                                 Mtge LLD

Loan Details
As of: 05/11

| Loan | Pay History | Curr. Amt | | | | Group(s) | Modifications | Mod Date | Rate |
|---|---|---|---|---|---|---|---|---|---|
| | | Bal% | WALTV | Score | Orig. Amt | WAC | WAM | WALA | |
| Active Loans | Count | Curr. Amt (USD) | 100 | 74.74 | 701 | 549,857,148 | 3.46 | 330 | 60 |
| | 1,539 | 581,777,955 | | | | | | | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

Australia 61 2 9777 8600  Brazil 5511 3048 4500  Europe 44 20 7330 7500  Germany 49 69 9204 1210  Hong Kong 852 2977 6000
Japan 81 3 3201 8900   Singapore 65 6212 1000   U.S. 1 212 318 2000   Copyright 2011 Bloomberg Finance L.P.
SN 274327 EST   GMT-4:00 H200-771-0 13-Jun-2011 21:46:02

S. PARAGRAPH 12     CL 4102

Mtge **CLP**

<HELP> for explanation.
<MENU> Return to Previous Screen.
 98) Stratify: None    • 99) Export

Group: ALL collateral

RALI 2006-Q006

Loan Details
As of: 05/11

| Active Loans | Count | Curr. Amt (USD) | Bal% | WALTV | Score | Orig. Amt | WAC | WAM | WALA |
|---|---|---|---|---|---|---|---|---|---|
| | 1,539 | 581,777,955 | 100 | 74.74 | 701 | 549,857,148 | 3.46 | 330 | 60 |

| Loan | Pay History | Curr. Amt | | †Group(s) | Modifications | Mod Date | Rate |
|---|---|---|---|---|---|---|---|

Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900        Singapore 65 6212 1000        U.S. 1 212 318 2000        Copyright 2011 Bloomberg Finance L.P.
                                                              SN 274327 EDT  GMT-4:00 H200-771-0 13-Jun-2011 21:55:09

S. PARAGRAPH 12

CL4 10c

Mtge **DES**

# RALI 2006-Q06 A1
## RESIDENTIAL ACCREDIT LOANS, INC.

.374%  6/25/46

| | | | |
|---|---|---|---|
| 75114NAA2 | 6/25/46 | 4) | |
| 2006-Q06 | A1 | | S&P CCC |
| FLT,STEP | | | MDY Caa2 |

| | | | |
|---|---|---|---|
| May11 | 398,172,660 USD | 725,353,000 | 1x |
| Fact | .548936394 VAL 3.5Yr | 25CPR | +18BP |
| May11 Cpn | .374% | 5.53% | Avail Funds Cap |
| Next Paymt | 6/27/11 1st coupon | 7/25/06 | @ 0.18% |
| Prd date | 6/26/11 1st paymt | 6/29/06 | Monthly reset |
| 1st date | 5/25/11 1st settle | 6/29/06 | |
| Reg accrue | 6/26/11 Dated date | 6/29/06 | pays 25th day |
| End accrue | 6/26/11 px | 6/27/06 | 0 day delay |
| Next reset | 6/27/11 1st reset | 7/25/06 | accrues ACT/360 |
| Class/Deal Pct | 68% Class/Deal Pct | 56% | AltAAR 3.034 S 330wam 3.46wac |
| 15) Personal Notes | 14) Identification | | TRACE Eligible |

CALLABLE
trustee GS
DBT
C FLUX 0.3

DTC Book Entry
DTC SameDay

| | May11 | Apr | Mar | Feb | Jan | Dec10 | Nov | Oct | Sep | Aug | Jul | Jun10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CPR | 24.6 | 27.5 | 20.4 | 17.1 | 23.2 | 18.8 | 13.8 | 25.3 | 22.3 | 17.4 | 19.4 | |
| PR | 18.0 | | | | | | | | | | | |
| SA | 410 | 458 | 299 | 340 | 285 | 387 | 313 | 230 | 421 | 371 | 290 | 324 |
| ACT | .55 | .55 | .56 | .57 | .57 | .58 | .58 | .59 | .59 | .60 | .61 | .61 |
| PN | 0.37 | 0.39 | 0.43 | 0.44 | 0.44 | 0.44 | 0.43 | 0.44 | 0.44 | 0.44 | 0.51 | 0.53 |

Australia 61 2 9777 8600  Brazil 5511 3048 4500  Europe 44 20 7330 7500  Germany 49 69 9204 1210  Hong Kong 852 2977 6000
Japan 81 3 3201 8900  Singapore 65 6212 1000  U.S. 1 212 318 2000  Copyright 2011 Bloomberg Finance L.P.
SN 274327 EDT  GMT-4:00 H200-771-0 13-Jun-2011 22:06:07

Backpage

S. PARAGRAPH 12

CL4702

Mtge **DES**

CREDIT ENHANCEMENT: Subordination; Spread Account; Over-Collateralization.

# Class: A1

Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2011 Bloomberg Finance L.P.
SN 274327 EDT GMT-4:00 H620-771-0 13-Jun-2011 22:06:32