**Hearing Date: June 10, 2014 at 10:00 A.M. (ET)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**RESCAP BORROWER CLAIMS TRUST'S OMNIBUS REPLY IN SUPPORT OF ITS
SIXTY-SECOND OMNIBUS OBJECTION TO CLAIMS
(NO-LIABILITY BORROWER CLAIMS)
AS TO CLAIM NOS. 1372, 2152, 4702, AND 5282**

ny-1144569


**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ............................................................................................................................ 2

    A.    The Cozzolino Claim ................................................................................................... 3

    B.    Ewing Claim ............................................................................................................... 11

    C.    Diaz Claim .................................................................................................................. 6

    D.    Lawson Claim ............................................................................................................. 7

REPLY ............................................................................................................................................ 9

    A.    The Cozzolino Claim ................................................................................................... 9

    B.    Ewing Claim ............................................................................................................... 11

    C.    Diaz Claim ................................................................................................................ 12

    D.    Lawson Claim ........................................................................................................... 13

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Feinberg v. Bank of New York (In re Feinberg),
  442 B.R. 215 (Bankr. S.D.N.Y. 2010) ................................................................................... 9

In re Adelphia Communications Corp.,
  Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20, 2007) .......... 9

In re Allegheny International, Inc.,
  954 F.2d 167 (3d Cir. 1992) ................................................................................................... 9

In re Asia Global Crossing, Ltd.,
  324 B.R. 503 (Bankr. S.D.N.Y. 2005) ................................................................................. 14

In re Oneida Ltd.,
  400 B.R. 384 (Bankr. S.D.N.Y. 2009) ................................................................................... 9

In re Residential Capital, LLC,
  507 B.R. 477 (Bankr. S.D.N.Y. 2014) ................................................................................... 9

In re Rockefeller Center Properties,
  272 B.R. 524 (Bankr. S.D.N.Y. 2000) ................................................................................... 9

Integrated Resources, Inc. v. Ameritrust Co. N.A. (In re Integrated Resources, Inc.),
  157 B.R. 66 (S.D.N.Y. 1993) ............................................................................................... 14

**STATUTES**

11 U.S.C. 502(b)(1) .................................................................................................................. 9

11 U.S.C. §502(a) .................................................................................................................... 9

15 U.S.C. §1635(f) ................................................................................................................. 13

Section 502(b)(1) of the Bankruptcy Code .............................................................................. 9

**OTHER AUTHORITIES**

F.R.B.P. 3001(f) ....................................................................................................................... 9

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Plan[1] in the above-captioned Chapter 11 Cases, as successor in interest to the above-captioned Debtors with respect to Borrower Claims, by and through its undersigned counsel, hereby submits this reply (the "Reply") and the Supplemental Declaration of Deanna Horst, Chief Claims Officer of the ResCap Liquidating Trust (the "Supplemental Declaration"), annexed hereto as Exhibit 1, to (i) the Response filed by Joseph Cozzolino ("Mr. Cozzolino") [Docket No. 6986] (the "Cozzolino Response"), (ii) the Response filed by Scott and Linda Ewing ("Mr. and Ms. Ewing") [Docket No. 6974] (the "Ewing Response"), (iii) the Response filed by Tomas Diaz ("Mr. Diaz") [Docket No. 7013] (the "Diaz Response"), and (iv) the Response Filed by Michelle Lawson ("Ms. Lawson," and collectively with Mr. Cozzolino, Mr. and Mrs. Ewing, and Mr. Diaz, the "Respondents") [Docket No. 7040] (the "Lawson Response" and collectively with the Cozzolino Response, Ewing Response, and Diaz Response, the "Responses")[2] to the *ResCap Borrower Claims Trust's Sixty-Second Omnibus Objection to Claims (No Liability Borrower Claims)* [Docket No. 6815] (the "Objection") and in further support of the Objection. The Borrower Trust respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Borrower Trust examined the Responses and the statements submitted in support thereof. For purposes of this Reply and the Objection, the Borrower Trust takes these statements at face value. If the Court is not prepared to rule on the Objection with respect to Respondents, then the Borrower Trust reserves the right to take discovery from the Respondents.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

[2] The Responses are the only responses that the Borrower Trust received with regards to the Objection. The Borrower Trust did receive a request for an adjournment from Charles & Phyllis Carlin (Claim No. 3879), and the Borrower Trust is adjourning the matter from June 10, 2014 to July 9, 2014 and allowing the Carlins until June 18, 2014 to file a response to the Objection.

ny-1144569

2.  As described herein and in the Supplemental Declaration, the Borrower Trust thoroughly examined the Debtors' books and records that were prepared and kept in the course of their regularly conducted business activities (the "Books and Records") in an effort to validate the accuracy of the allegations made in the Responses and the claims at issue, and the Books and Records do not show any liability due and owing to any of the Respondents.

3.  Moreover, as the Objection shifted the burden of proof back to the Respondents, the Respondents must demonstrate a valid claim against the Debtors' estates by a preponderance of the evidence. For the reasons set forth in the Objection, this Reply, and the Supplemental Declaration, the Respondents have failed to provide any explanation as to why their respective claims are valid and should be allowed against the Debtors' estates. More specifically, each of the Respondents fail to allege how they were damaged by the actions of the Debtors. Mr. Cozzolino fails to identify how any debtor entity is liable for his alleged clouded title. Mr. and Ms. Ewing's allegations of damages are predicated on actions taken only by non-debtor entities. Mr. Diaz fails to show both how any debtor is connected to and responsible for allegedly improper actions, as well as how he was damaged by the alleged wrongdoing. Finally, Ms. Lawson fails to address the basis for objecting to her claim stated in the Objection and instead improperly proffers an entirely new basis for her claim, and has failed to show how any Debtor is liable under that basis.

4.  The Respondents have failed to meet their burden of proof. Accordingly, the relief sought in the Objection should be granted with respect to each of the Respondents.

## BACKGROUND

5.  In connection with the claims reconciliation process, the Borrower Trust identified certain claims filed by Borrowers that are not liabilities of the Debtors (together, the "No Liability Borrower Clams"). See Supplemental Declaration ¶ 4.

2

ny-1144569

6.      The Debtors sent Request Letters to certain Borrowers, including the Respondents, requesting additional documentation in support of the No Liability Borrower Claims.[3]  See Supplemental Declaration ¶ 5.  The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for his claim.  The Request Letters further state that if the claimant does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged.  See Supplemental Declaration ¶ 5.

7.      The Debtors received responses to the Request Letters from each of the Respondents (the "Diligence Responses"), copies of which are attached to the Supplemental Declaration as Exhibit A-1, Exhibit A-2, Exhibit A-3, and Exhibit A-4.[4]  However, the Diligence Responses failed to allege bases for claims against the Debtors' estates.  Further, as stated in the Objection, the Books and Records do not show any liability due and owing to the Respondents. See Supplemental Declaration ¶ 6.

    **A.**    **Cozzolino Claim**

8.      On or about October 17, 2012, Mr. Cozzolino filed a proof of claim against GMAC Mortgage, LLC ("GMACM"), Claim No. 1372 (the "Cozzolino Claim"), asserting a general unsecured claim against Residential Capital, LLC ("ResCap") in the amount

---

[3] A Request Letter was sent to Mr. Cozzolino on May 30, 2013 and to Mr. and Ms. Ewing, Mr. Diaz and Ms. Lawson on June 21, 2013.

[4] A Diligence Response was received from Mr. Cozzolino on June 12, 2013 and from Mr. and Ms. Ewing, Mr. Diaz and Ms. Lawson on July 22, 2013.

3

ny-1144569

of $193,274.41.[5]  See Exhibit B to the Supplemental Declaration.  In Box 2 of the proof of claim form (Basis for Claim), the Cozzolino Claim provides that the basis for the claim is "Mortgage Loan."  Appended to the proof of claim is a letter stating that Mr. Cozzolino calculated the amount of the Cozzolino Claim based on the amount he has paid on his loan and the total amount of his future payments.  He also attaches various documents related to his mortgage.  See Supplemental Declaration ¶ 7.

9.    According to the Books and Records, MortgageIT, Inc. originated a loan to Mr. Cozzolino (the "Cozzolino Loan") on May 17, 2007.  See Supplemental Declaration ¶ 8.  The Deed of Trust was originated with the Mortgage Electronic Registration System ("MERS") listed as the nominee for MortgageIT.  See id; see also Deed of Trust, attached to the Cozzolino Claim.  No Debtor ever owned or was involved in the origination of the Cozzolino Loan.  See id.

10.    GMACM serviced the Cozzolino Loan as a subservicer on behalf of the investor from May 29, 2007 until it was service released to Countrywide on July 2, 2007.  See Supplemental Declaration ¶ 9.  The Debtors properly notified Mr. Cozzolino of the pending service transfer by letter dated June 15, 2007.  See Cozzolino Goodbye Letter, attached to the Supplemental Declaration as Exhibit D.

B.    **Ewing Claim**

11.    On or about November 5, 2012, Mr. and Ms. Ewing filed a proof of claim against GMACM, Claim No. 2152 (the "Ewing Claim"), asserting a priority claim against GMACM in the amount of $100,000.00.  See Exhibit E, attached to the Supplemental Declaration.  The Ewing Claim was reclassified as a general unsecured claim by this Court's

---

[5] The Cozzolino Claim amended a previous claim filed by Mr. Cozzolino, claim no. 448.  Claim no. 448 was expunged by this Court's *Order Granting Debtors' Twenty-Fifth Omnibus Objection to Claims (Amended and Superseded)* [Docket No. 5188].

4

ny-1144569

*Order Granting Debtors' Thirty-Sixth Omnibus Objection to Claims (Misclassified and Wrong Debtor Borrower Claims)* [Docket No. 5895]. In Box 2 of the proof of claim form (Basis for Claim), the Ewing Claim provides that the basis for the claim is "overestimated homes value/over charged." See id. Appended to the proof of claim is a Mortgage Account Statement from GMACM. See Supplemental Declaration ¶ 10.

12. On or around March 3, 2011, Ally Bank Corp. ("Ally"), a non-debtor entity, originated a loan to Mr. and Ms. Ewing (the "Ewing Loan") in the amount of $204,000.00. See Note, attached to the Supplemental Declaration as Exhibit F, see also Supplemental Declaration ¶ 11. On or around March 3, 2011, GMACM purchased the Ewing Loan from Ally, see id, and on or around March 29, 2011, GMACM transferred its interest in the loan to Fannie Mae. See id.

13. GMACM serviced the Ewing Loan from March 3, 2011 until servicing was transferred to Ocwen Loan Servicing LLC on February 16, 2013. See Supplemental Declaration ¶ 12.

14. On June 1, 2012, Mr. and Ms. Ewing spoke on the phone with the Debtors and requested a principal reduction. The Debtors advised Mr. and Ms. Ewing that the Ewing Loan did not qualify for a HAMP loan modification because the property securing the Ewing Loan was not owner occupied.[6] See Ewing Servicing Notes, attached to the Supplemental Declaration as Exhibit G. The Ewings did not make any additional requests for a loan modification while the Ewing Loan was being serviced by the Debtors. See Supplemental Declaration ¶ 12.

---

[6] Mr. and Ms. Ewing stated they had not moved into the property, and because they could not sell it, it remained vacant.

5
ny-1144569

### C. Diaz Claim[7]

15. On or around November 14, 2012, Mr. Diaz filed a proof of claim against Debtor Homecomings Financial, LLC ("Homecomings"), Claim No. 4702 (the "Diaz Claim") asserting a secured claim against Homecomings in the amount of $400,000.00. See Exhibit H to the Supplemental Declaration. In Box 2 of the proof of claim form (Basis for Claim), the Diaz Claim provides that the basis for the claim is "Mortgage/Note Down Payment." See id. Appended to the proof of claim are various documents related to the Diaz Loan (defined below), including a TILA disclosure statement and various servicing letters. See Supplemental Declaration ¶ 13.

16. On or around April 27, 2006, Platinum Capital Group originated a loan to Mr. Diaz (the "Diaz Loan") in the amount of $1,000,000.00. See Supplemental Declaration ¶ 14. The mortgage associated with the Diaz Loan (the "Diaz Mortgage"), which Mr. Diaz executed, names MERS as the nominee for the lender and specifically states "MERS is the mortgagee under this Security Instrument." See Diaz Mortgage, attached to the Supplemental Declaration as Exhibit I. On or around May 24, 2006, Platinum Capital Group endorsed the note for the Diaz Loan (the "Diaz Note") to Debtor Residential Funding Corporation ("RFC"). See Supplemental Declaration ¶ 14; see also Diaz Note, attached to the Supplemental Declaration as Exhibit J. RFC endorsed the Note to Deutsche Bank Trust Company Americas ("Deutsche") as Trustee to the RALI 2006-QO6 Trust. See id. Accordingly, consistent with the transfer of the Diaz Note, the Diaz Mortgage was assigned from MERS, as nominee for Platinum Capital Group, to Deutsche (the "Assignment"), a copy of which is attached to the Diaz Claim at 15. See

---

[7] The Debtors previously objected to a nearly identical claim filed by Mr. Diaz, claim no. 5935, in the 50th Omnibus Objection, which essentially amended and superseded claim 4702. Claim 5935 was expunged by the Court's *Supplemental Order Granting Debtors' Fiftieth Omnibus Objection to Claims (No Liability Borrower Claims – Books and Records) with Respect to Claim No. 5935 of Tomas Diaz* [Docket No. 6227].

6

Supplemental Declaration ¶ 14. The intermediate transfer of the Diaz Mortgage to RFC was made within the MERS system and was not recorded in the land records. See id.

17. On June 1, 2006, Homecomings Financial began servicing the Diaz Loan. On or around May 29, 2007, the Diaz Loan was referred to foreclosure. See Supplemental Declaration ¶ 15. At that time, there had been no payment on the account from October 1, 2006 through May 1, 2007. On April 1, 2008, servicing of the Diaz Loan was transferred to Aurora Loan Servicing ("Aurora"). A letter was sent to Mr. Diaz on March 14, 2008 informing him of the transfer. See Diaz Goodbye Letter, attached to the Supplemental Declaration as Exhibit L. At the time of transfer, the loan was in foreclosure status. See Supplemental Declaration ¶ 15. Neither Homecomings nor any of the Debtors have had any connection to the Diaz Loan since the transfer of servicing. See id.

18. Mr. Diaz sent a Qualified Written Request (QWR) to GMACM in 2012 requesting account information and loan documents in connection with the Debtors' involvement with the Diaz Loan from 2006 to 2008. See Supplemental Declaration ¶ 16. GMACM responded to Mr. Diaz in December 2012 and sent Mr. Diaz copies of pay history, TILA disclosures, the ARM note, HUD-1, and the mortgage application. See id.

**D.    Lawson Claim**

19. On or about November 16, 2012, Ms. Lawson filed a proof of claim against Debtor Residential Capital, LLC ("ResCap"), Claim No. 5282 (the "Lawson Claim"), asserting a general unsecured claim against ResCap in the amount of $140,967.98. See Exhibit N to the Supplemental Declaration. In Box 2 of the proof of claim form (Basis for Claim), the Lawson Claim provides that the basis for the claim is "Secondary Mortgage Note." See id. Appended to the proof of claim is a statement of claims alleging that her loan should be considered "voidable and rescinded" upon theory that she believed the loan was a fixed rate of

5.75% and that the "Debtor did not disclose the presence of a second loan with a balloon payment." Also attached is a copy of the Second Mortgage (defined below). See Supplemental Declaration ¶ 18.

20. According to the Books and Records, on or around December 3, 2004, Trident Second Mortgage Company originated a loan to Ms. Lawson. See Supplemental Declaration ¶ 19. The loan involved a first mortgage in the amount of $273,600.00 (the "First Mortgage") and a second mortgage in the amount of $51,300.00 (the "Second Mortgage"), the latter of which was subject to a balloon payment (the "Balloon Payment"). See id. At the time the mortgages were originated on December 3, 2004, Ms. Lawson signed a Second Mortgage Note for the Second Mortgage, a copy of which is attached to the Supplemental Declaration as Exhibit P. She also signed a balloon payment rider, which explicitly states the Second Mortgage is subject to a balloon payment. See Balloon Payment Rider, attached to the Supplemental Declaration as Exhibit Q. She also signed an Affidavit of Borrower's Certifications, which shows that Ms. Lawson acknowledged that she received copies of the Truth in Lending Good Faith Estimate, which provided information about the Second Mortgage and the Balloon Payment (the "TILA Estimate"). A copy of the Affidavit of Borrower's Certifications and the TILA Estimate are attached to the Supplemental Declaration as Exhibit R.

21. No Debtor was involved in the origination of either the First Mortgage or Second Mortgage. See Supplemental Declaration ¶ 20.

22. GMACM serviced the Second Mortgage from March 13, 2007 until servicing was transferred to Ocwen on February 16, 2013. See Supplemental Declaration ¶ 21.

23. According to the Books and Records, before filing a proof of claim, Ms. Lawson never contacted the Debtors with regard to the Second Mortgage. See Supplemental

8

ny-1144569

Declaration ¶ 22. Furthermore, Ms. Lawson made timely payments on the Second Mortgage and never incurred a late charge. See id.

## REPLY

24. A filed proof of claim is "deemed allowed, unless a party in interest … objects." 11 U.S.C. §502(a). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. 502(b)(1). As noted by this Court in a recent decision, claims objections have a shifting burden of proof. Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a claimant establishes a prima facie case against a debtor upon filing a proof of claim alleging facts sufficient to support the claim. The objecting party is thereafter required to produce evidence equal in force to that provided by the claimant to rebut the presumption of the claimant's prima facie case. In re Residential Capital, LLC, 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014). See also In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992).

25. Once an objection refutes an essential allegation of the claim, the burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor by a preponderance of the evidence. Residential Capital, 507 B.R at 490, Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010); In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); In re Adelphia Commc'ns Corp., Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

### A. The Cozzolino Claim

26. As the Objection refuted Mr. Cozzolino's allegations of wrongdoing, the burden to demonstrate the validity of the Cozzolino Claim shifted back to Mr. Cozzolino. The

9

ny-1144569

Cozzolino Response fails to state a coherent basis for any liability against the Debtors. While Mr. Cozzolino <u>alleges</u> that GMACM should be held liable for "unlawful and illegal activities" that placed "a cloud on the title to his property," he fails to provide the Court with a single piece of evidence to demonstrate (i) <u>how</u> his title has been clouded (i.e. identifying specific issues that previously caused him to be unable to transfer title), (ii) how he was damaged in any way, as well as (iii) how a Debtor entity is responsible for such damages.

27. As noted above and in the Objection, Mr. Cozzolino's allegations as to issues relating to the origination of the Cozzolino Loan have no basis against the Debtors because the Debtors did not originate the Cozzolino Loan. In the Cozzolino Response, Mr. Cozzolino frequently states that GMACM provided him with his original mortgage. <u>See</u> Cozzolino Response at pp. 2, 3. However, he does not provide any evidence to support this statement. Furthermore, while Mr. Cozzolino alleges that he is unable to sell his house because he cannot deliver clear title, he fails to provide any specific evidence of the alleged deficiency that purportedly hampers his ability to transfer title to his property. <u>See id</u>. As a result, Mr. Cozzolino has not met his burden of proving any liability of the Debtors arising out of the origination of the Cozzolino Loan.

28. Mr. Cozzolino also asserts as a basis for his claim the fact that MERS placed a fraudulent lien on his property without his knowledge.[8] <u>See</u> Cozzolino Response at pp. 2, 3. However, the Deed of Trust, which Mr. Cozzolino attaches to his proof of claim, explicitly notes that MERS is the nominee for the Lender and the beneficiary under the Deed of Trust. Furthermore, Mr. Cozzolino provides no reason as to why any Debtor is liable for this purportedly illegal lien, nor can he, because the Debtors were not involved in placing the lien on

---

[8] Based on a review of the documentation attached to the Cozzolino Response, it appears that the lien he is referring to is the lien that arose from the Cozzolino Loan. <u>See</u> Cozzolino Response at 5.

the property.  As a result, Mr. Cozzolino has not met his burden of persuasion with regard to any liability of the Debtors arising from a lien on his property.

29. Accordingly, for the reasons set forth herein and in the Objection, Claim No. 1372 should be disallowed and expunged because Mr. Cozzolino has failed to identify a valid claim against the Debtors.

**B.    Ewing Claim**

30. As the Objection refuted Mr. and Ms. Ewing's allegations of wrongdoing, the burden to demonstrate the validity of the Ewing Claim shifted back to Mr. and Ms. Ewing. The Borrower Trust asserts that the Ewing Response fails to state a coherent basis for liability as against the Debtors' estates.  The Ewing Response reiterates the allegations in the Ewing Claim that GMACM overvalued the price of their home.  However, as noted in the Objection and in ¶ 12 *supra*, no Debtor was involved in the origination of the Ewing Loan, and therefore had nothing to do with the valuation of their home.

31. Furthermore, the Ewing Response alleges that the Debtors are liable for Ocwen not providing them with a loan modification.  Again, as noted in the objection and in ¶ 14 *supra*, the Debtors only received one request for a loan modification from Mr. and Ms. Ewing, which they could not grant because Mr. and Ms. Ewing did not occupy the property.  The Debtors are not liable for any action or lack of action taken by Ocwen after the servicing of the Ewing Loan was transferred from the Debtors to Ocwen.

32. As a result, Mr. and Ms. Ewing have not met their burden of demonstrating any valid basis for a claim against the Debtors' estates arising out of the origination or servicing of the Ewing Loan, and Claim no. 2152 should be disallowed and expunged.

11

### C. Diaz Claim

33. As the Objection refuted Mr. Diaz's allegations of wrongdoing, the burden to demonstrate the validity of the Ewing Claim shifted back to Mr. Diaz. In the Diaz Response, Mr. Diaz asserts that there is no proof that the Diaz Loan was transferred, sold, or assigned properly. His basis for this assertion is that MERS was listed as the assignee on the Assignment and that RFC filed a Lost Note Affidavit in relation to the foreclosure proceeding initiated by Deutsche. See Diaz Response at 3. As noted above, the intermediate transfers from Platinum Capital Group to RFC and from RFC to Deutsche were done within the MERS system, which is why MERS is listed as nominee on the Assignment. This has no impact on the chain of title, which was proper, as evidenced by the endorsement of the Note at each transfer. See Diaz Note.

34. Additionally, the Lost Note Affidavit is not evidence of an improper assignment. Rather, it merely provides that the original note could not be located. Lost Note Affidavits frequently take the place of original notes in a foreclosure complaint/lis pendens. See Supplemental Declaration at ¶17. Mr. Diaz has provided no factual or legal basis for his assertion that the Lost Note Affidavit is evidence of an improper transfer.

35. Furthermore, while Mr. Diaz alleges that the purported improper chain of title has prevented him from selling or transferring his property, he does not provide any specific evidence to substantiate his purported inability to transfer his property. As a result, Mr. Diaz has not met his burden to show by a preponderance of the evidence that he has a legal basis for a claim against the Debtors.

36. Additionally, Mr. Diaz does not allege a proper basis for a secured claim against the Debtors. In the Diaz Response, Mr. Diaz alleges that he has a secured claim because he has equity in the property securing the Diaz Loan. Mr. Diaz's home is not property of the Debtor, and therefore there can be no basis for a secured claim against the Debtors' estates. As a

result, even if the Court were to find that there is a basis for the Diaz Claim, which there is not, it should not be allowed as a secured claim.

37. As a result, Mr. Diaz has not met his burden of persuasion as to any valid basis for a claim against the Debtors' estates arising out of the origination or servicing of the Diaz Loan, and Claim no. 4702 should be disallowed and expunged.

**D.  Lawson Claim**

38. In the Lawson Response, Ms. Lawson fails to address the basis of the objection to the Lawson Claim, which was that no Debtor was involved in the origination of the Second Mortgage and therefore could not be liable for her origination-based claim. Rather, Ms. Lawson asserts <u>for the first time</u> that her claim arises from a violation of the Truth in Lending Act ("<u>TILA</u>") even though she does not allege that disclosure under TILA was not provided. She alleges that she never received information about the Second Mortgage or the Balloon Payment. However, as noted above in ¶ 20 *supra*, notwithstanding that the Debtors were not responsible for providing Ms. Lawson with disclosures under TILA, she did in fact receive the Second Mortgage and TILA Estimate at the closing of her loan, which contained the information in dispute. Therefore, assuming *arguendo* that Ms. Lawson could assert a TILA claim against the Debtors, no such claim would lie against the Debtors for failure to provide the requisite disclosures.

39. Furthermore, even if Ms. Lawson did have a claim for a TILA violation, the statute of limitations for such a claim has passed. Pursuant to 15 U.S.C. §1635(f), a borrower has up to three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, to rescind a loan. <u>See</u> 15 U.S.C. §1635(f). Since the Lawson

13

Loan was originated on December 3, 2004, she is well past the statute of limitations for rescission (and a rescission claim is between a borrower and investor/lender, not a servicer).[9]

40. Furthermore, neither the proof of claim nor the Diligence Response received from Ms. Lawson asserts TILA as a basis for a claim. As a result, the Lawson Response is improperly amending her claim. When a bar date has passed, and a creditor seeks to file an amended proof of claim "[t]he decision to allow the amendment of the claim is committed to the discretion of the bankruptcy judge." In re Asia Global Crossing, Ltd., 324 B.R. 503, 507 (Bankr. S.D.N.Y. 2005). In the Second Circuit, the court may only allow a late amended proof of claim when there was an "assertion of a similar claim or demand evidencing an intention to hold the estate liable." Enron, 419 F.3d at 133 (quoting Integrated Res., Inc. v. Ameritrust Co. N.A. (In re Integrated Res., Inc.), 157 B.R. 66, 70 (S.D.N.Y. 1993)). See also this Court's *Memorandum Opinion and Order Sustaining Borrower Claims Trust's Objection to Claim Nos. 4754 and 7181* [Docket No. 6739] (April 2, 2014).

41. In this case, nothing in the Lawson Claim demonstrates an intention to hold the estates liable for rescission under TILA. As a result, the new basis asserted in the Lawson Response should be barred as untimely because it fails to satisfy the applicable standards relating to amendments to proofs of claim and works significant prejudice against the Debtors' estates.

42. In addition to the claim for rescission under TILA, another basis for a purported claim against the Debtors is that the underlying note for the Lawson Loan is inadequate and was acquired by fraud. See Lawson Response at 4. However, as noted in ¶ 21

---

[9] TILA claims can only be made against the lender of a loan, not a servicer. See e.g. *Memorandum Opinion and Order Sustaining Debtors' Fiftieth Omnibus Objection to Claim No. 3502 (Jacqueline A. Warner)* [Docket No. 6824].

*supra*, the Debtors were not involved in the origination of the Lawson Loan, and therefore cannot be liable for any purported fraud that occurred during the origination.

43. In the Lawson Response (see ¶¶ 21,22), Ms. Lawson also asserts that the Debtors have liability as an assignee of the loan. Besides for the fact that Ms. Lawson fails to cite any factual or legal basis for such a conclusory allegation, the Debtors' interest in the loan passed to the securitization trustee when the loan was delivered to the trust in March 2007. See Objection, Exh. H at p. 9. Therefore, as of the Petition Date, the Debtors did not maintain an ownership interest in the loan and assignee liability could not attach to the Debtors.

44. As a result, Ms. Lawson has not met her burden of demonstrating how the Debtors' connection to the Second Mortgage gives rise to any liability of GMACM or any other Debtor, and there is no support in the Books and Records for a prepetition liability to Ms. Lawson. Accordingly, for the reasons set forth in the Objection and the Reply, the Lawson Claim should be disallowed and expunged because Ms. Lawson has failed to substantiate any prepetition liability of the Debtors to her.

## CONCLUSION

45. WHEREFORE, the Borrower Trust respectfully submits that the relief requested in the Objection should be granted in its entirety.

Dated: June 5, 2014  
      New York, New York

/s/ Norman S. Rosenbaum  
Norman S. Rosenbaum  
Jordan A. Wishnew  
MORRISON & FOERSTER LLP  
250 West 55th Street  
New York, New York 10019  
Telephone: (212) 468-8000  
Facsimile: (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

15

ny-1144569