**<u>Exhibit 1</u>**

**Supplemental Declaration**

ny-1144569

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------

|                                         |     |                            |
|-----------------------------------------|-----|----------------------------|
|                                         | )   |                            |
| In re:                                  | )   | Case No. 12-12020 (MG)     |
|                                         | )   |                            |
| RESIDENTIAL CAPITAL, LLC, et al.,       | )   | Chapter 11                 |
|                                         | )   |                            |
| Debtors.                                | )   | Jointly Administered       |
|                                         | )   |                            |

-------------------------------------------------------------------

### DECLARATION OF DEANNA HORST IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF ITS SIXTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO-LIABILITY BORROWER CLAIMS) AS TO CLAIM NOS. 1372, 2152, 4702, AND 5282

I, Deanna Horst, hereby declare as follows:

1.  I am the Chief Claims Officer for The ResCap Liquidating Trust (the "Liquidating Trust"), and previously served as Chief Claims Officer for Residential Capital, LLC and its affiliates ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I have been employed by affiliates of ResCap since August of 2001. In June 2012, I became Senior Director of Claims Management for ResCap and in October of 2013, I became the Chief Claims Officer of ResCap. I began my association with ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the Debtors' responsible lending on-site due diligence program. In 2002, I became the Director of Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance—a position I held until 2006, at which time I became the Vice President of the Credit Risk Group, managing Correspondent and Broker approval and monitoring. In 2011, I became the Vice President, Business Risk and Controls, and supported GMAC Mortgage, LLC and Ally Bank in this role. In my current position, I am responsible for Claims Management and Reconciliation

1

and Client Recovery.  I am authorized to submit this declaration (the "<u>Declaration</u>") in support of

*ResCap Borrower Claims Trust's Reply in Support of Its Sixty-Second Omnibus Objection to*

*Claims (No-Liability Borrower Claims) as to Claim Nos. 1372, 2152, 4702, and 5282* (the

"<u>Reply</u>").[1]

2.      Except as otherwise indicated, all facts set forth in this Declaration are

based upon my personal knowledge of the Debtors' operations and finances, information learned

from my review of relevant documents and information I have received through my discussions

with other former members of the Debtors' management or other former employees of the

Debtors, the Liquidating Trust's employees, professionals and consultants, and/or Kurtzman

Carson Consultants LLC ("<u>KCC</u>"), the Debtors' noticing and claims agent.  If I were called upon

to testify, I could and would testify competently to the facts set forth in the Objection on that

basis.

3.      In my capacity as Chief Claims Officer, I am intimately familiar with the

claims reconciliation process in these Chapter 11 Cases.  Except as otherwise indicated, all

statements in this Declaration are based upon my familiarity with the Debtors' books and records

that were prepared and kept in the course of their regularly conducted business activities (the

"<u>Books and Records</u>"), the Debtors' schedules of assets and liabilities and statements of financial

affairs filed in these Chapter 11 Cases (collectively, the "<u>Schedules</u>"), my review and

reconciliation of claims, and/or my review of relevant documents.  I or other Liquidating Trust

personnel under my supervision have reviewed and analyzed the proof of claim forms and

supporting documentation filed by the Respondents.  Since the Plan went effective and the

Borrower Trust was established, I, along with other members of the Liquidating Trust have

consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims,

---

[1]      Capitalized terms not defined herein shall have the meanings ascribed to them in the Reply.

2

and determine the appropriate treatment of the same.[2]   In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with the Liquidating Trust's and the Borrower Trust's professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the official claims register maintained in the Debtors' Chapter 11 Cases.

4.      In connection with the claims reconciliation process, the Borrower Trust identified certain claims filed by Borrowers that are not liabilities of the Debtors (together, the "No Liability Borrower Clams").

5.      The Debtors sent a Request Letter to certain Borrowers, including the Respondents, requesting additional documentation in support of the No Liability Borrower Claims.[3]   The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for his claim.   The Request Letters further state that if the claimant does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged.

6.      The Debtors received responses to the Request Letters from all of the Respondents (the "Diligence Responses"), copies of which are attached hereto as Exhibit A-1,

---

[2] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.
[3] A Request Letter was sent to Mr. Cozzolino on May 30, 2013 and to Mr. and Ms. Ewing, Mr. Diaz and Ms. Lawson on June 21, 2013.

3

Exhibit A-2, Exhibit A-3, and Exhibit A-4.[4]  However, the Diligence Responses failed to allege

bases for claims against the Debtors' estates.  Further, as stated in the Objection, the Books and

Records do not show any liability due and owing to the Respondents.


**The Cozzolino Claim**

7.    In connection with the claims reconciliation process, the Borrower Trust

identified Mr. Cozzolino's Claim No. 1372, attached hereto as Exhibit B (the "Cozzolino

Claim"), as a claim that did not identify a liability of the Debtors.  The Cozzolino Claim, filed on

or around October 17, 2012, asserts a general unsecured claim against ResCap in the amount of

$193,274.41.  See Cozzolino Claim. In Box 2 of the proof of claim form (Basis for Claim), the

Cozzolino Claim provides that the basis for the claim is "Mortgage Loan."  See id.  Appended to

the proof of claim is a letter stating that Mr. Cozzolino calculated the amount of the Cozzolino

Claim based on the amount he has paid on his loan and the total amount of his future payments.

He also attaches various documents related to his mortgage. See id.

8.    Based upon my review of the Books and Records, MortgageIT, Inc.

originated a loan to Mr. Cozzolino (the "Cozzolino Loan") on May 17, 2007.  The Deed of Trust

was originated with the Mortgage Electronic Registration System ("MERS") listed as the

nominee for MortgageIT.  See Deed of Trust, attached to the Cozzolino Claim.  No Debtor ever

owned or was involved in the origination of the Cozzolino Loan.

9.    GMACM serviced the Cozzolino Loan as a subservicer on behalf of the

investor from May 29, 2007 until it was service released to Countrywide on July 2, 2007.  See

the Cozzolino Servicing Notes, attached hereto as Exhibit C.  The Debtors properly notified Mr.

---

[4] A Diligence Response was received from Mr. Cozzolino on June 12, 2013 and from Mr. and Ms. Ewing, Mr. Diaz and Ms. Lawson on July 22, 2013.

Cozzolino of the pending service transfer by letter dated June 15, 2007. See Cozzolino Goodbye

Letter, attached hereto as Exhibit D.


**The Ewing Claim**

10.     The Borrower Trust identified Mr. and Ms. Ewing's Claim No. 2152,

attached hereto as Exhibit E (the "Ewing Claim"), as a claim that did not identify a liability of

the Debtors.  The Ewing Claim, filed on or around November 5, 2012, asserted a priority claim

against GMACM in the amount of $100,000.  See Ewing Claim. The Ewing Claim was

reclassified as a general unsecured claim by this Court's *Order Granting Debtors' Thirty-Sixth*

*Omnibus Objection to Claims (Misclassified and Wrong Debtor Borrower Claims)* [Docket No.

5895].  In Box 2 of the proof of claim form (Basis for Claim), the Ewing Claim provides that the

basis for the claim is "overestimated homes value/over charged." See id.  Appended to the proof

of claim is a Mortgage Account Statement from GMACM.

11.     On or around March 3, 2011, Ally Bank Corp. ("Ally") originated a loan

to Mr. and Ms. Ewing (the "Ewing Loan") in the amount of $204,000.00.  See Note, attached

hereto as Exhibit F.  On or around March 3, 2011, GMACM purchased the Ewing Loan from

Ally.  See id.  On or around March 29, 2011, GMACM transferred its interest in the loan to

Fannie Mae.  See id.

12.     GMACM serviced the Ewing Loan from March 3, 2011 until servicing

transferred to Ocwen Loan Servicing LLC on February 16, 2013. See Ewing Servicing Notes,

attached hereto as Exhibit G.  On June 1, 2012, Mr. and Ms. Ewing spoke on the phone with the

Debtors and requested a principal reduction.  The Debtors advised Mr. and Ms. Ewing that the

Ewing Loan did not qualify for a HAMP loan modification because the property securing the

Ewing Loan was not owner occupied, as Mr. and Ms. Ewing stated they had not moved into the property and therefore it was vacant.  See id at June 1, 2012.  The Debtors' records reflect that the Ewings did not make any additional requests for a loan modification while the Ewing Loan was being serviced by the Debtors.  See id.

**The Diaz Claim**

13.    The Borrower Trust identified Mr. Diaz's Claim No. 4702, attached hereto as Exhibit H (the "Diaz Claim"), as a claim that did not identify a liability of the Debtors.  The Diaz Claim, filed on or around November 14, 2012, asserted a secured claim against Homecomings Financial, LLC ("Homecomings") in the amount of $400,000.00.  See Diaz Claim. In Box 2 of the proof of claim form (Basis for Claim), the Diaz Claim provides that the basis for the claim is "Mortgage/Note Down Payment."  See id.  Appended to the proof of claim are various documents related to the Diaz Loan (defined below), including a TILA disclosure statement and various servicing letters.

14.    On or around April 27, 2006, Platinum Capital Group originated a loan to Mr. Diaz (the "Diaz Loan") in the amount of $1,000,000.00.  The mortgage associated with the Diaz Loan (the "Diaz Mortgage"), which Mr. Diaz executed, names MERS as the nominee for the lender and specifically states "MERS is the mortgagee under this Security Instrument."  See Diaz Mortgage, attached hereto as Exhibit I.  See Diaz Note, attached hereto as Exhibit J.  On or around May 24, 2006, Platinum Capital Group endorsed the Note for the Diaz Loan (the "Diaz Note") to Debtor Residential Funding Corporation ("RFC").  See id.  RFC endorsed the Note to Deutsche Bank Trust Company Americas ("Deutsche") as Trustee to the RALI 2006-QO6 Trust. See id.  Accordingly, consistent with the transfer of the Diaz Note, the Diaz Mortgage was

6

assigned from MERS, as nominee for Platinum Capital Group, to Deutsche.  See Diaz

Assignment, attached to the Diaz Claim at 15.  Because the intermediate transfer from Platinum

Capital Group to RFC was recorded in the MERS system, it was not recorded in the land records.

15.     On June 1, 2006, Homecomings Financial began servicing the Diaz Loan.

On or around May 29, 2007, the Diaz Loan was referred to foreclosure.  See Diaz Servicing

Notes, attached hereto as Exhibit K.  At that time, there had been no payment on the account

from October 1, 2006 through May 1, 2007.  See id. On April 1, 2008, servicing of the Diaz

Loan was transferred to Aurora Loan Servicing ("Aurora").  A letter was sent to Mr. Diaz on

March 14, 2008 informing him of the transfer.  See Diaz Goodbye Letter, attached hereto as

Exhibit L.  At the time of transfer, the loan was in foreclosure status.  See id..  Neither

Homecomings nor any of the Debtors have had any connection to the Diaz Loan since the

transfer of servicing.  See id.

16.     Mr. Diaz sent a Qualified Written Request (QWR) to GMACM in 2012

requesting account information and loan documents in connection with the Debtors' involvement

with the Diaz Loan from 2006 to 2008.  See Diaz QWR Response, attached hereto as Exhibit M.

GMACM responded to Mr. Diaz in December 2012 and sent Mr. Diaz copies of pay history,

TILA disclosures, the ARM note, HUD-1, and the mortgage application.  See id.

17.     Mr. Diaz references a lost note affidavit in the Diaz Response.  Lost note

affidavits frequently take the place of original notes in a foreclosure complaint/lis pendens

**The Lawson Claim**

18.     The Borrower Trust identified Ms. Lawson's Claim No. 5282, attached

hereto as Exhibit N (the "Lawson Claim"), as a claim that did not identify a liability of the

Debtors.  The Lawson Claim, filed on or around November 16, 2012, asserted a general

unsecured claim against ResCap in the amount of $140,967.98.  <u>See</u> Lawson Claim. In Box 2 of

the proof of claim form (Basis for Claim), the Lawson Claim provides that the basis for the claim

is "Secondary Mortgage Note."  <u>See id.</u>  Appended to the proof of claim is a statement of claims

alleging that her loan should be considered "voidable and rescinded" upon theory that she

believed the loan was a fixed rate of 5.75% and that the "Debtor did not disclose the presence of

a second loan with a balloon payment."  Also attached is a copy of the Second Mortgage

(defined below).

19.    According to the Books and Records, on or around December 3, 2004,

Trident Second Mortgage Company originated a loan to Ms. Lawson.  <u>See</u> Lawson Deed of

Trust, attached hereto as <u>Exhibit O</u>.  The loan involved a first mortgage in the amount of

$273,600.00 and a second mortgage in the amount of $51,300.00 (the "<u>Second Mortgage</u>"), the

latter of which was subject to a balloon payment (the "<u>Balloon Payment</u>").  <u>See id</u>.  At the time

the mortgages were originated on December 3, 2004, Ms. Lawson signed a Second Mortgage

Note for the Second Mortgage, a copy of which is attached to the hereto as <u>Exhibit P</u>.  She also

signed a balloon payment rider, attached hereto as <u>Exhibit Q</u>, which explicitly states the Second

Mortgage is subject to a balloon payment.  She also signed an Affidavit of Borrower's

Certifications, which shows that Ms. Lawson acknowledged that she received copies of the Truth

in Lending Good Faith Estimate, which provided information about the Second Mortgage and

the Balloon Payment.  A copy of the Affidavit of Borrower's Certifications and the TILA

Disclosure Statement are attached hereto as <u>Exhibit R</u>.

20.    No Debtor was involved in the origination of either the First or Second

Mortgage.

8

21.     GMACM serviced the Second Mortgage from March 13, 2007 until servicing was transferred to Ocwen on February 16, 2013.  <u>See</u> Lawson Servicing Notes, attached hereto as <u>Exhibit S</u>.

22.     According to the Books and Records, before filing a proof of claim, Ms. Lawson never contacted the Debtors with regard to the Second Mortgage.  <u>See</u> Lawson Servicing Notes.  Furthermore, Ms. Lawson made timely payments on the Second Mortgage and never incurred a late charge.  <u>See</u> <u>id</u>.

23.     Accordingly, based upon this detailed review of the Books and Records, together with a review of the Claims and the Responses, the Borrower Trust determined that the Responses fail to substantiate the validity of Respondents' claims against ResCap.

*(Signature Page to Follow)*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated:  June 5, 2014


  /s/ Deanna Horst
Deanna Horst
Chief Claims Officer for ResCap
Liquidating Trust

## Exhibit A-1
### Cozzolino Diligence Response

Sent/Received

# RESCAP

JUN 1 2 2013

To _____
By _____

**MORRISON | FOERSTER**

### Claim Information

| **Claim Number** | 1372 |
|---|---|

| **Basis of Claim** | PLEASE REFER TO EXHIBIT "A" |
|---|---|
| Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim. | |

**If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.**

| **Loan Number:** ORIGINAL LOAN # [REDACTED]    } PLEASE REFER TO INFORMATION |
|---|
| CURRENT LOAN # [REDACTED]    ) IN EXHIBIT "A" |
| **Address of property related to the above loan number:**    585 EAST CANYON ROAD |

| **City:** EPHRAIM | **State:** UT | **ZIP Code:** 84627 |
|---|---|---|

**Additional resources may be found at - http://www.kccllc.net/rescap**

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN 55438

Claim Number: 1372
Joseph J. Cozzolino and/or JoJo Asset Mgmt LLC

001KC0002 58316 2_domestic 2110001210000183

# R E S C A P

### MORRISON | FOERSTER

**Claim Number:** 448   *# 1372*

Dear Claimant:  Joseph J. Cozzolino and/ or JO JO Asset. Mgmt LLC

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case") and we need additional information from you regarding the claims you are asserting against the Debtors.

**The Information we Need From You Regarding Your Proof of Claim:**
We received and reviewed a copy of the Proof of Claim form and document(s), if any, that you filed in the ResCap bankruptcy case.  A copy of your Proof of Claim form is enclosed for your reference.  We are unable to determine from the Proof of Claim form and the document(s), if any, you submitted why you believe you are owed money or other relief from one of the Debtors.  In order to evaluate your claim, we need to understand why you believe you are owed money or are entitled to other relief from one of the Debtors.

**You Must Respond to this Letter by no Later Than June 20, 2013**:
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you must respond to this letter by no later than June 20, 2013 with an explanation that states the legal and factual reasons why you believe that one of the Debtors owed you money as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you must provide copies of any and all documentation that you believe supports the basis for your claim.  Included with this letter is a form to assist you in responding to our request.

**Consequences of Failing to Respond**:
If you do not provide the requested explanation and supporting documentation by no later than June 20, 2013, the Debtors may file a formal objection to your Proof of Claim, and your claim may be disallowed and permanently expunged.  If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied.  Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for your claim.

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

Residential Capital, LLC   P.O. Box 385220  Bloomington, MN 55438
Morrison & Foerster LLP   New York, New York 10104

Claim Number: 44
Joseph J. Cozzolino and/ or JO JO Asset. Mgmt LL

**Note**: The Debtors previously provided notices about their bankruptcy filings and the claim process to current customers and mortgage loan applicants.  You may have received one or more of those notices. Nothing in those notices and nothing in this letter changes your obligations under your mortgage loan agreement (i.e. if you were obligated to make, or were making, mortgage loan payments before the ResCap bankruptcy case commenced, you should continue to make mortgage loan payments). However, if the only reason you filed a Proof of Claim was because you received a notice from the Debtors <u>and</u> you do not believe that ResCap, GMAC Mortgage or any of the other Debtors owes you money or other relief, please reply to us via email or letter stating so.  This information is necessary to evaluate your claim.

**Questions:**
If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney. You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**<u>You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;</u>**

      (i)    Claims.Management@gmacrescap.com, **or**
      (ii)   **Residential Capital, LLC**
            **P.O. Box 385220**
            **Bloomington, Minnesota 55438**

**<u>Please mark each piece of correspondence with the Claim Number referenced above.</u>**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

Claim Number: 44
Joseph J. Cozzolino and/ or JO JO Asset. Mgmt LL

Joseph J Cozzolino / JO JO Asset. Mgm't LLC       June 5, 2013
PO Box 317
Sweet Valley, PA 18656
e-mail: jcjosjoh581@gmail.com…..Phone: 570-445-3991

RE:  United States Bankruptcy Court Southern District of New York
Residential Capital, LLC Et. Al. Debtors Chapter 11
Case numbers 12-12020 ( MG ) and 12-12032 ( MG )
Claim numbers 448 and 1372

Original Lender:

Morgageit,Inc.
147 West Election Road, Suite 200
Draper, UT. 84020-6436

Original Mortgage Loan Number:

Original Servicer:

GMAC Mortgage LLC
Po Box 780
Waterloo, IA 50704-O780

Dear Residential Capital LLC ( RESCAP ):

I am responding to your recent correspondence to me regarding my two claims, numbers 448 and 1372 in reference to the two case numbers referenced above. But before I specifically respond to your request that I submit a Basis of Claim ( included herein ), that states the Legal and Factual reasons why I believe I am owed money or entitled to other relief relating to the above referenced two cases and two claim numbers, I first want to go on record to show and report to you the various Banks, Lenders, Government Agencies Et Al who were directly and indirectly involved with my mortgage for the home and property I purchased in June of 2007 located at: 585 East Canyon Road, Ephraim, UT 84627 and how these entities conspired and were involved with what I believe was a pre-planned, pre-engineered Conspiracy ( RICCO ) racketeering fraud against me and millions of other unsuspecting home buyers across the nation who believed they were buying properties with clear titles…titles clear of any clouds of any type. Properties that could easily be resold without causing any legal headaches or hardships of any kind to the home owner when trying to re-sell said property.

The following is a list of Banks, Lenders, Government Agencies etc. who played a role in causing my Mortgage to be compromised  by having a cloud placed on the chain of title . This will cause me a great deal of legal trouble , hardships and a lot of money at the time I try to sell what I had believed was my legal property. All these companies have been involved one way or another with the scandalous Mortgage Backed Securities Fraud that has caused many millions of people to lose their homes and many others still going thru Foreclosure. I don't know when this bad situation will finally catch up with me and I'm

(2).          Claim numbers 448 & 1372

worried sick about what has been done to me and my life savings invested in my house.

The name of these institutions are as follows:

1. Morgageit, Inc    My original Lender    Original Loan ████████
        147 Election Road, ste 200 Draper, UT 84020-6436
        1350 Deming Way, 3rd. fl. Middletown, WI 53562
        5022 Gate Parkway, ste.400, Jacksonville, FL 32256

2. GMAC Mortgage LLC    My original servicer,    Loan ████████
        PO Box780  Waterloo, IA, 50704-0780

3. Mortgage Electronic Registration Systems ( MERS )   Beneficiary of loan as of
        5/17/2007…..My MERS Identification # is: ████████████
        Phone: 1-800-646-6377

4. Freddie Mac….Owner/investor of my Mortgage as of 06/22/2007
        8609 Westwood Center, Vienna, VA 22183

5. Countrywide Home Loan Inc. ( Funding )…second loan servicer
        Effective 7/2/2007    Loan # ████████
        PO Box10334, Van Nuys, CA 91410-0334
        PO Box 10229. Van Nuys, CA 91410-0229
        PO Box 650070, Dallas, TX 75265-0076

6. Bank of America N.A.   Third load servicer   Loan ████████
        PO Box 15222  Wilmington, DE 19886

7. Nationstar Mortgage   Fourth Loan servicer   Loan # ████████
        PO Box 650787  Dallas, TX 75265-0783

BASES OF MY CLAIMS

The Bases of My  Claims:

Claim number 448 and claim number 1372….RE:Residential Capital LLC ET. AL
( Debtor ) Case number 12-12020 ( MG ) & specifically Case  number 12-12032 ( MG)
has its beginnings with a Company called Mortgage Electronic Registration Systems
( MERS ). It has been proven in several lawsuits that MERS created a massive fraud
program centered around the origination of mortgages and the transfer of ownership from
the seller to the buyer. MERS was accused of getting involved with and taking control of
millions of Mortgages across the nation. They would take all the original documents from
each sale and scan those documents into their massive computer data base. Once the
documents were safely recorded they would destroy all the original documents.

( 3 )          Claim numbers 448 & 1372

Once this was accomplished they could say they were the owners. They did this for two very important reasons. They packaged these mortgages and resold them as Mortgage Backed Securities to millions of Investors, Financial Institutions, Governments, Government Agencies etc. By doing this they kept getting paid over and over again on the same mortgages and by participating in this illegal activity, the home owner/borrower is actually paying on a mortgage that the lenders had already been paid. In effect, a borrower whose mortgage was resold as a mortgage backed security should not be legally liable to continue to make mortgage payments where the lenders were paid on the mortgages many times over. The so called money that was supposedly lent to the borrower was created out of thin air. It was just an electronic entry into the lenders computer.

The second part of the fraud occurred because in a normal Real Estate Transaction, the sale of a property to a new buyer has to be recorded by the County Recorder where the property is located. This normally takes time and a recording fee. Because MERS was processing so many Mortgages they devised a scheme to by pass the normal recording of the documents, thus saving millions of dollars of Recording Fees, and cheating the Counties where these properties were located from receiving these fees. Millions of lost revenue to all the County Governments across the country. There are numerous lawsuits pending by the Counties to recover the recording fees that MERS deliberately cheated them out of.

When I purchased my home in Utah in June of 2007, I was not aware of the Mortgage Fraud that was intentionally taking place across the nation and involving Major Banks and Mortgage Lending Companies. It wasn't until a couple of years ago that I began to hear and read about all the bad news about Mortgage Fraud and began to get concerned.

I contacted the County Recorder that handled the recording of my home purchase and was shocked to learn that MERS had somehow infiltrated the recording process on my loan ( I don't know how ) and they were listed in  the chain of title and their MERS ID number ( 10011206574625889-2 ) was on some of my paperwork. This means they have placed a cloud on my Title and I won't be able to deliver a clear title to a prospective buyer causing me to lose a sale. Many people have lost and are currently losing their homes because of this Mortgage Fraud. Many are being foreclosed upon and worst of all, even those who have paid cash for their property and those who are current in their payments are also losing their homes because of this fraudulent scheme.

When a lender can't determine who the true owner of a property is, they won't lend on it, and because all the original documents were destroyed by MERS, when a new lender tries to obtain the original documents, they are told the original documents are lost. Instead, they are offered an affidavit that says their copies are just as good as the originals but current lenders are not falling for this chicanery any more. I had committed my life savings to buy my home in Utah and now, because of all the Mortgage Fraud going on

(4)        Claim numbers 448 & 1372

I'm afraid I won't be able to get the money invested in it, especially since I am now 74 years old, money I will need to sustain myself in these very bad economic times.

My original Mortgage was with a company called Morgageit, Inc, but within a month of the purchase and before I could make my first Mortgage payment they sent me a letter and told me the servicer for my loan would be GMAC Mortgage LLC and I should send my payments to them.

As I continued to look into my situation I found out that Freddie Mac was the owner of my Mortgage. I don't know how these things were taking place without my knowledge. After a period of time, GMAC Mortgage LLC sold or transferred the servicing of my Mortgage to Countrywide Home Loan Inc. Then after another period of time Countrywide Home Loan Inc. sold or transferred the servicing of my Mortgage to Bank of America N.A..Just a few months ago Bank of America N.A. sold or transferred the servicing to: Nationstar Mortgage, the current servicer.

Anyone can easily see that what has been taking place with my Mortgage is not legitimate. All these different lenders being involved with my Mortgage. Who knows where all the original documents have gone. Oh, that's right MERS got a hold of and destroyed everything. Ladies and Gentlemen if that isn't Mortgage Fraud, then you tell me what it is.

The only remedy that I might have at this point in time is through the US Bankruptcy Law Suit mentioned above. I sure hope I can get some help and relief regarding this bad situation. I just pray I can recover the money I've invested.

I did some follow up research on this Mortgage Backed Securities Fraud and have obtained information from various articles that have been written about it. I will include some excerpts from some of these news articles and findings that I believe will add support for my Basis of Claims.

The following are excerpts from various news articles I collected regarding the Mortgage Backed Securities Fraud during my research into this fraud.

- Bank of America paid a settlement in the amount of $500 Million to Investors that claimed they were mislead by Countrywide Funding ( Countywide Home Loans ). This settlement is separate from an $8.5 Billion Bank of America Settlement being reviewed in a NY State Court over Countrywide Securities.

* Many Mortgage Lenders were and are being sued for submitting Fraudulent Documents to the Federal Government asserting that they owned loans issued by The FHA. Their paper work was Fraudulent.

- Mortgage Electronic Registration Systems ( MERS ) Fraud

**(5)**          Claim numbers 448 & 1372

\* MERS is a shell company with no employees, but with thousands of officers
owned by giant banks. MERS was one of the many ways the swindle was done
and the main way in which Counterfeit Mortgages were laundered by the banks.
MERS threw out centuries of well established laws about how Real Estate is
Transferred and cheated the Government out of many tens or hundreds of billions
Of dollars in recording fees.

- In 2009, Kansas became the first state to have its Supreme Court rule against
MERS.

  Adam Levitin, a Georgetown University Law Professor who specializes in,
  among many other Financial Regulatory Issues, Mortgage Finance. Levitin
  says the documentation problems involved in the Mortgage Mess have the
  potential "To cloud title on not just foreclosed Mortgages but on Performing
  Mortgages" as well.

  MERS may have literally rendered millions of Mortgages Unsecured.

  If the growing line of cases asserting that MERS is neither a Mortgage nor a
  Deed of Trust……Beneficiary is correct, then courts must soon confront
  Profound questions about the very enforcing of MERS Security Agreement.
  There is a compelling legal argument that loan origination through the MERS
  System fail to create enforceable items.

- Foreclosure Fraud in Maryland

  Bank's lawyer accused of Forging 1000+ Deeds.
  RE: Dailyfinance.com   03/09/2011

  The false Deeds Cloud the Property's Title creating a Nightmare for the innocent
  people who bought their homes.

  \*Countrywide routinely failed to sign key documents to MBS Trustee, Bank of
  America employee says.  By Kate Berry, American Banker.

  Countrywide, the Mortgage Giant that's now part of Bank of America, didn't
  bother to transfer essential Documents for loans sold to Investors an employee
  testified. ( Economicview.typepad.com ) 11/20/2010

  A story regarding a Florida Bankers Association assertion that notes were
  routinely destroyed after they had been scanned and entered into the Electronic
  System ( MERS ). The story goes on to say that it was easier to simply monitor
  ownership of the note in the database, and if the notes were needed for a
  foreclosure, a lost note Affidavit could simply be generated. ( 11/20/2010 )

(6)          Claim numbers 448 & 1372

\*      Monday Feb. 25,  12:33 PM

O. Max Gardner III
maxgardner@maxgardner.com          wrote:

Five States have held that the Mortgage Servicers must prove up the original note
In order to proceed with a foreclosure. The allegation of, we own the note will
NOT work any more. The Bank ( Lender ) must produce the "ACTUAL " piece of
Paper and it must be the original. A lost Note Affidavit will "NOT" work.

All consumers should challenge the Foreclosure Services and  Require Proof of the
Original Note.

- Why the Foreclosure Mess Settlement can't fix the damage by Abigail Field with
The Daily Financeance…posted 6:00 PM  03/18/11

When the Mortgage Industry's Robo signing scandal first broke last year, people
have been aware that Banks and Foreclosure Agents have been illegally
Foreclosing on homes.

\*    The Enormous Clouded Title Problem.

One of the most confounding problems the Banks ( Lenders ) have created is the
millions of Properties Nationwide that now have " CLOUDED TITLES "

Because of these bad titles, Property Owners can't prove that they own the
Properties they actually bought ( purchased )…and Banks can't prove they have
the right to sell them.

You can't sell Real Estate when you can't establish that you own it !

- Who  bears the blame  for the MERS problem?

Fannie May and Freddie Mac helped in setting up MERS. The Covington and
Burling Law Firm and Moodys , the Rating Agency blessed the MERS
Organization and the Big Banks ( Lenders ) who ran with this Fraud System and
made it what it is today..

\*    Bank of America Corp. ( BAC ) was sued by the U.S. Attorney in Manhattan  for
allegedly engaging in a scheme to defraud Fannie Mae and Freddie Mac.

The complaint alleges that Countrywide Financial Corp., which was later bought
by Bank of America, implemented  a Loan- Origination Process that generated

(7)                    Claim numbers 448 & 1372

Thousands of fraudulent or defective loans that were sold to Fannie May and Freddie
Mac, according to a statement from the Manhattan U.S. Attorney's office.

The United States filed a Fraud Lawsuit against Bank of America Corp. accusing it of
causing taxpayers more than $ 1 Billion of losses by selling thousands of Toxic Mortgage
Loans to Fannie Mae and Freddie Mack.

Reference information:

This information is associated with two claim numbers:    448 & 1372

My original Mortgage Loan Number was: ▮▮▮▮▮▮▮
My original lender was: Morgageit, Inc. 147 Election Road, suite 200, Draper, UT84020
My original servicer was: GMAC Mortgage LLC   PO Box 780  Waterloo, IA 50704
My current loan number is ▮▮▮▮▮▮▮
My current servicer is;  Nationstar Mortgage   PO Box 650787
The address of the property related to the above mentioned loan numbers is :
                        585 East Canyon Road
                        Ephraim, UT 84627

#

*handwritten: RE: JOSEPH J. COZZOLINO, JR / JO JO ASSET MGMT*
*handwritten: BACK UP*
*handwritten: AND PROPOSED P 328 - B*

# SANPETE COUNTY CORPORATION
### Parcel Abstract for 0000000860
Date Range: 03/01/1993 through 10/02/2012

*handwritten: EPHRAIM UT 84627*
*handwritten: REF. EXIBIT "A" ENCLOSED*

10/02/2012
10:59:43AM

Page: 1

| Entry | Kind of Instrument | Consideration | Book/Page | DOF | DOI | Filing Fee |
|-------|-------------------|---------------|-----------|-----|-----|------------|

Red Noting
Grantors

Grantees

This abstract is complete as of September 26, 2012

This abstract may or may not be complete. There are several other search areas
that should also be checked.

---

**184846 EASEMENTS**                           0.00 0633/0682 07/30/2012 07/27/2012          0.00
EPHRAIM CITY CORPORATION              NOTICE TO THE PUBLIC

---

**173364 ASSIGNMENT OIL & GAS**          10.00 0609/0263 10/14/2010 10/12/2010        105.00
RedNote  1: 123438 OIL & GAS LEASE (0503/0495)
RedNote  2: 158445 OIL & GAS LEASE (0577/0591)
RedNote  3: 160517 OIL & GAS LEASE (0581/1159)
RedNote  4: 160518 OIL & GAS LEASE (0581/1162)
RedNote  5: 160519 OIL & GAS LEASE (0581/1166)
RedNote  6: 160520 OIL & GAS LEASE (0581/1169)
 INTERNATIONAL PETROLEUM LIMITED LIABILITPIONEER OIL AND GAS   50%
 INTERNATIONAL PETROLEUM LLC AKA
 INTERNATIONAL PETROLEUM LLC AKA
 INTERNATIONAL PETROLEUM LLC AKA

---

**158445 OIL & GAS LEASE**                   10.00 0577/0591 09/30/2008 03/01/2006         77.00
RedNote  1: 173364 ASSIGNMENT OIL & GAS LEASE (0609/0263)
 CORP OF PRESIDING BISHOP OF CJCLDS      INTERNATIONAL PETROLEUM LLC

---

**146972 DEED OF RECONVEYANCE**           0.00 0552/1617 07/03/2007 06/26/2007         12.00
RedNote  1: 139413 DEED OF TRUST (0537/0321)
 RECONTRUST COMPANY NA                     CONGDON CHARLES RICH JR

---

**146971 SUBSTITUTION OF TRUS**           0.00 0552/1615 07/03/2007 06/26/2007         12.00
RedNote  1: 139413 DEED OF TRUST (0537/0321)
 MORTGAGE ELECTRONIC REGISTRATION SYSTEMSRECONTRUST COMPANY NA

---

**146483 SPECIAL WARRANTY DEE**          10.00 0552/0061 06/15/2007 05/21/2007         12.00
 COZZOLINO JOSEPH J                     JO JO ASSET MANAGEMENT LLC

---

**145902 DEED OF TRUST**             100,000.00 0550/0992 05/25/2007 05/17/2007         42.00
 COZZOLINO JOSEPH J                      MORTGAGEIT INC ETAL
                                         MERS AS NOMINEE ETAL

---

**145901 WARRANTY DEED**                     10.00 0550/0990 05/25/2007 05/21/2007         12.00
 CONGDON CHARLES RICHARD JR ETAL      COZZOLINO JOSEPH J
 CONGDON NAOMI H ETAL

---

**141438 DEED OF RECONVEYANCE**           0.00 0541/0892 12/14/2006 12/06/2006         10.00
RedNote  1: 107095 DEED OF TRUST (0483/1160)
 RECONTRUST COMPANY NA                     CONGDON CHARLES RICH JR ETAL
                                           CONGDON NAOMI H ETAL

---

**141437 SUBSTITUTION OF TRUS**           0.00 0541/0891 12/14/2006 12/06/2006         10.00
RedNote  1: 107095 DEED OF TRUST (0483/1160)
 MORTGAGE ELECTRONIC REGISTRATION SYS INCRECONTRUST COMPANY NA

---

06/15/07

JOSEPH J COZZOLINO

585 EAST CANYON ROAD

EPHRAIM UT 84627-0000

GMAC Mortgage, LLC                      Account Number: ▮▮▮▮▮
COUNTRYWIDE HOME LOANS INC              Account Number: ▮▮▮▮▮

Property Address:  585 EAST CANYON ROAD

                    EPHRAIM UT 84627-0000

Dear JOSEPH J COZZOLINO

Effective 07/02/07, the servicing of the above referenced
account, that is, the right to collect payments from you, is
being assigned, sold, or transferred from
GMAC Mortgage, LLC                      to
COUNTRYWIDE HOME LOANS INC              . The assignment, sale, or
transfer of servicing does not affect the terms or conditions of
your mortgage documents/security instruments, other than the
terms directly related to the servicing of your account.

Your present servicer is GMAC Mortgage, LLC                      .
Prior to 07/02/07, any questions regarding your account should be
directed to our Customer Care Department at 866-725-0782.

Your new servicer will be COUNTRYWIDE HOME LOANS INC              .
Beginning 07/02/07, any questions you have regarding your account
should be directed to COUNTRYWIDE HOME LOANS INC              . You
can contact their Customer Service Department at 800-669-6607.
Also beginning 07/02/07, written inquiries regarding your account
should be directed to COUNTRYWIDE HOME LOANS INC              's
Customer Service Department at the address below.

Payment Information - Effective 07/02/07, please direct payments
to COUNTRYWIDE HOME LOANS INC              's Payment Processing

epartment at the address below. Payments will be processed by
MAC Mortgage, LLC                    if received prior to
7/02/07, and will be forwarded to
OUNTRYWIDE HOME LOANS INC                    if received on or after
7/02/07.

COUNTRYWIDE HOME LOANS INC
PO BOX 10334
VAN NUYS              CA  91410-0334

s of 06/15/07, your Current Principal Balance is $    100000.00.
our current escrow balance is $        0.00, your current
nterest rate is   5.87500%, your total monthly payment is
        591.54, and your next due date is 07/01/07.

utomatic Payment Deduction - If you currently have your
ayments automatically withdrawn from your financial institution,
his service will be transferred to
OUNTRYWIDE HOME LOANS INC        . If this service is not
ransferable, you will receive a letter under separate cover
roviding further direction.

overnment Allotment/Bill Pay Service - If you currently make
our payment through a third party entity (e.g. government
llotment, biweekly, or bill-pay service), please advise them of
our new account number and change the payee to
OUNTRYWIDE HOME LOANS INC        . In the event of a payment
hange, it is your responsibility to notify the third party of
he new payment amount. If you have been using the bill-pay
ervice on GMAC Mortgage, LLC              's website, this
ervice will be deactivated after 07/02/07.

ptional Insurance - If you have taken advantage of any of our
ptional insurance plans or optional products, this service will
e transferred to COUNTRYWIDE HOME LOANS INC        . If any of
hese plans or products are not transferable, you will receive a
etter under separate cover providing further direction.

ear-End Statement - You will receive a year-end statement from
MAC Mortgage, LLC                reflecting account activity
his year. COUNTRYWIDE HOME LOANS INC        should provide
heir own statement for the period of time they serviced your
ccount this year. You will need to combine these two statements
or income tax purposes.

scrow Account - If you have an escrow account,
MAC Mortgage, LLC                will send you, within 45
ays, an escrow history statement reflecting escrow deposits,
isbursements and balances for the period of time we serviced
our account since your last escrow analysis. The transferring
scrow balance will be reflected on this statement.

06/15/07

Account Number ████████████

Page Three

Except in limited circumstances, the law requires that your
present servicer send you this notice at least 15 days before the
effective date of the transfer. Your new servicer must also send
you this notice no later than 15 days after the effective date of
transfer.

If you have filed for bankruptcy or have been discharged of your
personal liability for repayment of this debt, be advised this is
for informational purposes only. Furthermore, this is not an
attempt to collect on the debt and should not be misconstrued to
be so.

You should be aware of the following information, which is set
out in more detail in Section 6 of the Real Estate Settlement
Procedures Act (RESPA) (12 USC 2605):

> During the 60 day period following the effective date of the
> transfer of the account servicing, a payment received by
> your old servicer, before its due date, may not be treated
> by the new servicer as late, and a late fee may not be
> imposed on you.

> Section 6 of RESPA (12 USC s2605) gives you certain consumer
> rights. If you sent a "qualified written request" to your
> servicer concerning the servicing of your account, your
> servicer must provide you with a written acknowledgment
> within 20 business days of receipt of your request. A
> "qualified written request" is written correspondence, other
> than notice on a payment coupon or other payment medium
> supplied by the serivcer, which includes your name, account
> number, and reason for the request.

> No later than 60 business days after receiving your
> request, your servicer must make appropriate corrections to
> your account, and must provide you with a written
> clarification regarding any dispute. During this 60 business
> day period, your servicer may not provide information to a
> consumer reporting agency concerning any overdue payment
> related to such period or qualified written request.
> However, this does not prevent the servicer from initiating
> foreclosure if proper grounds exist under the mortgage
> documents/security instruments.

> A "business day" is a day on which the offices of the
> business entity are open to the public for carrying on
> substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for
individuals or classes of individuals in circumstances
where servicers are shown to have violated the requirements
of that Section. You should seek legal advice if you
believe your rights have been violated.

GMAC Mortgage, LLC   .                  appreciated the opportunity
to service your account. We wish you a successful relationship
with COUNTRYWIDE HOME LOANS INC               .

Sincerely,


GMAC Mortgage, LLC
6020

Return To:
MORTGAGEIT

1350 DEMING WAY, 3RD FLOOR
MIDDLETON, WI 53562

Prepared By:

SHAWNA FARRELL , DOC DRAWER

9290 W. BARNES
BOISE IDAHO 83709

————————————————— [Space Above This Line For Recording Data] —————————————————

# DEED OF TRUST

LOAN NO.:
ESCROW NO                          MIN

MERS Phone: 1-888-679-

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are define
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated
together with all Riders to this document.                          MAY 17, 2007
(B) "Borrower" is
JOSEPH J. COZZOLINO, AN UNMARRIED MAN

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
MORTGAGEIT, INC.

Lender is a  CORPORATION
organized and existing under the laws of   NEW YORK

UTAH-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
V-6A(UT) (0005).01                                                        Initials:_____
                                                                          Form 3045  1/01
                          Page 1 of 15
                                        LENDER SUPPORT SYSTEMS, INC. MERS6AUT.NEW (05/06

ESCROW GENERAL

# NOTE

MIN:
MERS Phone: 1-888-679-6377

LOAN NO.:

MAY 17, 2007
[Date]

EPHRAIM
[City]

UTAH
[State]

585 EAST CANYON ROAD, EPHRAIM, UT 84627
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   100,000.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is

MORTGAGEIT, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     5.875    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1st    day of each month beginning on          JULY, 2007        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on      JUNE 01, 2037      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at GMAC MORTGAGE, LLC                          or at a different place if required by the Note Holder.
PO BOX 780, WATERLOO, IA  50704-0780

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $      591.54      .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Initials:_____

Form 3200 1/01

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

V-5N (0207).01

Page 1 of 3

LENDER SUPPORT SYSTEMS, INC. 5N.NEW (08/06)

**TEMPORARY PAYMENT COUPON**

**MORTGAGEIT, INC.**

147 W. ELECTION RD., STE 200
DRAPER, UT 84020-

Borrower Name:  JOSEPH J. COZZOLINO

Property Address:  585 EAST CANYON ROAD, EPHRAIM, UT 84627

Date:  MAY 17, 2007

Loan #:

Dear:  JOSEPH J. COZZOLINO

Your monthly payment amount has not changed and consists of:

| | | |
|---|---|---|
| Principal and Interest | $ | 591.54 |
| Property Taxes | $ | -0- |
| Hazard Insurance | $ | -0- |
| MMI/PMI Monthly Premium | $ | |
| Flood Insurance Reserve | $ | |
| City Property Taxes | $ | |
| Annual Assessments | $ | |
| Other | $ | |
| Other | $ | |
| Other | $ | |
| Total Payment | $ | 591.54 |

**GMAC MORTGAGE, LLC**

will forward payment infor
coupons to you soon.  In the event these coupons are delayed, please send your payment directly to
GMAC MORTGAGE, LLC

referencing your loan number.  If a payment is in transit to
forward your payment on to GMAC MORTGAGE, LLC                                                    i

Should you have further questions, please call  (866) 725-0782  or e-mail customer.service@gmacm.com.
GMAC MORTGAGE, LLC

or the undersigned for assistance.  We thank you for your coo

Servicing Dept.
GMAC MORTGAGE, LLC
PO BOX 780
WATERLOO, IA 50704-0780

LENDER SUPPORT SYSTEMS INC. M

| Loan Number | Due Date | Amount |
|---|---|---|
| | 07/01/2007 | $ 591.54 |

Remit to:
GMAC        MORTGAGE,        LLC
PO BOX 780
WATERLOO , IA 50704-0780

| Loan Number | Due Date | Am |
|---|---|---|
| | 08/01/2007 | $ 59 |

Remit to:
GMAC        MORTGAGE,
PO BOX 780
WATERLOO , IA 50704-0780

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10



• Sender: Please print your name, address, and ZIP+4 in this box

Joseph J. Cozzolino
10 10 Asset Mgmt LLC
Po Box 317
Sweet Valley PA 18656

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

RESIDENTIAL CAPITAL LLC
PO BOX 385220
BLOOMINGTON, MN.
55438

2. Article Number
*(Transfer from service label)*

7011 0470 0000 7716 9325

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                    ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery
Melissa Winzler    6.12.13

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*    ☐ Yes



**<u>Exhibit A-2</u>**
**Ewing Diligence Response**

**Sent/Received**

# RESCAP

JUL 2 2 2013

**MORRISON | FOERSTER**

To _____ KT
By _Claim Information_

| Claim Number | 2152 |
|---|---|
| **Basis of Claim** <br><br> Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim. | Bank overestimate the homes value for the sale + refinance. Home still has a negative equity balance — even after we put down #50,000. A Propert Record Cards Attached show same exact home, in same Eagle Mtn POA as of today only have a value of #186,200 and #165,300. — We did a re-fi with GMAC + asked for Principal releif and did not receive any.  (over) ✱ |

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

| Loan Number: | ████████ | |
|---|---|---|
| Address of property related to the above loan number: <br> 377 Jersey Fleur    #9271 | | |
| City: <br> Ellijay | State: <br> GA | ZIP Code: <br> 30540 |

✓ Please add the #9271 to our address for your records. 941-576-7037

Additional resources may be found at - http://www.kccllc.net/rescap

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 2152
Scott W or Linda C Ewing
Type: CC

001KC0002_59050-2_domestic_271/00028/001119

As was explained GMAC when asked for assitance — that my husband was ill + was not going to able to work much longer. We received just a re-fi of the interest rate only. Right after that my husband; had a head injury at work, could no longer work — had to leave with an early retirement, with a small pension — we left FL + move to this home in GA → where due to the stress of this, I had a heart attack in Feb/Mar 2013. We asked for help several times with GMAC — but nothing to reduce our payment, Yet GMAC receive help for their problems, and now our mortgage was turned over to Ocwen → who when we called them — they said they don't do any type of mortgage help → because they are a debt agency — not a mortgage company. We still know that our home was over valved, and are still filing a claim. Scott + Linda Ewing   7/17/13



Residential Capital, LLC
c/o KCC
2335 Alaska Ave
El Segundo, CA 90245

**000280**

PRF # 59050***
Case No.: 12-12020
Svc: 2

PackID: 280
NameID: 21914333

Scott W or Linda C Ewing
Scott W or Linda C Ewing
27 Jersey Fleur Dr
Ellijay, GA 30540

#95271



**3052-AK -043 -**

## 2013 Gilmer County Property Record Card

MARTINSVILLE, NJ 08836

Physical Address  171  FRIGATE DR
Legal Description  LT 2543 EAGLE MTN PH 95
Tax District  County    Homestead    S0
Total Acres  0.70    LL    112  GMD    0
Zoning  R2    LD    11    Acc/Des    0.000000

| | | | | |
|---|---|---|---|---|
| Topography | 1.00 | Water | 1.00 | Other | 1.00 |
| Corner | 1.00 | Transitional | 1.00 | |
| View | 1.00 | Neighborhood | 1.00 | UL-Coosawattee - Eagle Mtn | 1.00 |

Improvements  177,700
Accessories  4,000
Land  4,500
Total  186,200

ADDRESS CORRECTED PER POSTOFFICE 6/10/2008 TS PB 16-121

---

**3038-D  -015 -**

## 2013 Gilmer County Property Record Card

Acct #  12076

ELLIJAY, GA 30540

Physical Address  54  JERSEY CT
Legal Description  LT 612 EAGLE MTN PH 8 PB-12-153
Tax District  County    Homestead    S0
Total Acres  0.62    LL    181  GMD    0
Zoning  R2    LD    11    Acc/Des    0.000000

| | | | | |
|---|---|---|---|---|
| Topography | 1.00 | Water | 1.00 | Other | 1.00 |
| Corner | 1.00 | Transitional | 1.00 | |
| View | 1.00 | Neighborhood | 1.00 | UL-Coosawattee - Eagle Mtn | 1.00 |

Improvements  156,800
Accessories  4,000
Land  4,500
Total  165,300

11/30/12 FOR 2013  REMOVED L4 HS AS THEY HAVE HS IN DOUGLAS COUNTY SINCE 2005-WILL REFER TO TAX COM OFC TO SEEK BACK TAXES FOR '2010 ,2011 & 2012-DL    4/21/10  FOR 2010 L6 HS AND SCHOOL TAX EXEMPT FOR RICKEY VARNUM-DL

Claim #2152  Date Filed: 11/5/2012

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number: Gmac  12-12020 (MG)

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): GMAC ?

Name and address where notices should be sent:
Scott W or Linda L Ewing    both address
21238 Hubbard Avenue
Pt Charlotte, FL 33952

Telephone number: 941-276-7037    email: slewing@embaqmail.com

Name and address where payment should be sent (if different from above):
27 Jersey Fleur
Ellijay, GA 30540    slewing@embaqmail.com

Telephone number: 941-276-7037    email:

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
(if known)

Filed on:_____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed: $ 180,000.—
If all or part of the claim is secured, complete item 4.
If all or part of the claim is entitled to priority, complete item 5.
☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: Over estimated homes value over charged
(See instruction #2)

3. Last four digits of any number by which creditor identifies debtor:
1234

3a. Debtor may have scheduled account as:
Alison Teamen
(See instruction #3a)

3b. Uniform Claim Identifier (optional):
_____
(See instruction #3b)

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☒ Real Estate ☐ Motor Vehicle ☐ Other
Describe:
Value of Property: $ 150,000  Annual Interest Rate 4.875 % ☒ Fixed ☐ Variable
(when case was filed)
Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
if any: $_____    Basis for perfection: _____

Amount of Secured Claim: $_____    Amount Unsecured: $_____

6. Claim Pursuant to 11 U.S.C. § 503(b)(9):
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____    (See instruction #6)

7. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. Documents: Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #8, and the definition of "redacted".)
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

9. Signature: (See instruction #9) Check the appropriate box.
☒ I am the creditor.  ☐ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or  ☐ I am a guarantor, surety,
(Attach copy of power of attorney, if any.)    their authorized agent.    indorser, or other codebtor.
    (See Bankruptcy Rule 3004.)    (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.
Print Name: Scott/Linda Ewing    10/29/12
Title:    (Signature)    (Date)
Company:
Address and telephone number (if different from notice address above):

Telephone number:    Email:

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☒ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:

$_____

* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

RECEIVED
NOV 05 2012
KURTZMAN CARSON CONSULTANTS
COURT USE ONLY

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both.

☒ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

01KC0002 RXXXXXX XXXXXXF00028/0011206

1212020121105000000000007

## GMAC Mortgage Account Statement

**GMAC** Mortgage

**CUSTOMER INFORMATION**

Name:  Scott W Ewing
Linda C Ewing

Account Number:
Home Phone #:  (941)625-9508

**PROPERTY ADDRESS**

27 JERSEY FLEUR DR
ELLIJAY        GA 30540

Visit us at www.gmacmortgage.com for
account information or to apply on-line.



Interest Rate
Interest Paid Year-to-Date
Taxes Paid Year-to-Date
Escrow Balance
Principal Balance (PB)*

For Customer Care inquiries call 1-800-766-4622
For Insurance inquiries call 1-800-206-1356
For Payment Arrangements call 1-800-850-4622

### Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 10/01/12 | 09/24/12 | $1,079.58 | $269.85 | $809.73 | | | | |
| Additional Principal | 09/01/12 | 09/24/12 | $0.42 | $0.42 | | | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full. For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

### Important News

Considering a refinance or the purchase of a new home? We're here to help - call a loan specialist today at 877-528-3817 to review all of the financing options available to you.

Your home is turning another year older. Protect it with TotalProtect--please see the enclosed information.

See Reverse Side For Important Information and State Specific Disclosures

# RESCAP

MORRISON | FOERSTER

June 21, 2013

**Claim Number:** 2152

Dear Claimant: Scott W or Linda C Ewing

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case"), and we need additional information from you regarding the claim(s) ("claim") you are asserting against one or more of the Debtors.

**The Information we Need From You Regarding Your Proof of Claim:**
We reviewed a copy of the Proof of Claim form and documents, if any, that you filed in the ResCap bankruptcy case. A copy of your Proof of Claim form is enclosed for your reference. After reviewing the Proof of Claim form and any documents you submitted, we have determined that you did not provide sufficient information to support your "Basis for Claim" and we do not have sufficient information to understand the calculations you used to determine the amount you claim to be owed. In order to evaluate your claim, we need to understand the specific reasons as to why you believe you are owed money or are entitled to other relief from one or more of the Debtors. Please reply using the attached form and provide a written explanation, with supporting documentation, and include a detailed explanation of how you calculated the amount of your claim.

**You Must Respond to this Letter by no Later Than July 22, 2013:**
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than July 22, 2013 with an explanation stating the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases). You **must** provide copies of any and all documentation that you believe supports the basis for and amount of your claim. A form is included with this letter to assist you in responding to our request for additional information.

**Consequences of Failing to Respond:**
If you do not provide the requested information regarding the basis for and amount of your claim and the supporting documentation by July 22, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including that you failed to provide sufficient information and documentation to support your claim. If the Debtors file such an objection and it is successful, your claim may be disallowed and permanently expunged. If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied. Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for and amount of your claim.

Residential Capital, LLC    P.O. Box 385220  Bloomington, Minnesota 55438

Claim Number: 2152
Scott W or Linda C Ewing
Type: CC

**For Those With a Mortgage Loan Originated or Serviced by One of the Debtors:**
If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and any documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Questions:**
If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney. You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] with general questions (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either:**

      (i)    **Claims.Management@gmacrescap.com; or**
     (ii)    **Residential Capital, LLC**
           **P.O. Box 385220**
           **Bloomington, Minnesota 55438**

**Please mark each document you send with the Claim Number referenced above.**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

Claim Number: 215
Scott W or Linda C Ewin
Type: C

Ewing
211 Jersey Fleur
#2371
Ellijay, GA 30540

claim # 2152

Residential Capital, LLC
PO Box 385580
Bloomington, Minnesota
55438

U.S. POSTAGE
PAID
ELLIJAY, GA
30540
JUL 17, 13
AMOUNT
$0.66
000-8450-04

UNITED STATES
POSTAL SERVICE

1000

55438

**<u>Exhibit A-3</u>**
**Diaz Diligence Response**

Sentx/Received

# RESCAP

JUL 2 2 2013

To ____
By ____



MORRISON | FOERSTER

## Claim Information

| Claim Number | 4702 |
|---|---|
| **Basis of Claim**<br><br>Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim. | 1- PROOF OF CLAIM, MONEY INVESTMENT OVER $400,000. (SEE EXHIBIT)<br><br>2- PROOF OF MY INVESTMENT IN COLLATERAL THE PROPERTY OF 5200 SW 122 AVE MIAMI 33175. (SEE EXHIBIT)<br><br>3- PROOF OF MY CLAIM, THE FRAUDULENT SCHEMES OF THESE FINANCIAL INSTITUTIONS, PLATINUM CAPITAL, RESIDENTIAL CAPITAL LLC, HOMECOMINGS FINANCIAL LLC, DEUTSCHE BANK TRUST COMPANY, AURORA LOAN SERVICES, NATIONSTAR MORTGAGE LLC, AND ITS AFFILIATES. (SEE EXHIBIT)<br><br>4- PROOF OF MY CLAIM, THE INVESTIGATION HAS BEEN IN PROCESS SINCE APRIL 2012 AGAINST THESE BANKING INSTITUTIONS AND THEIR INDIVIDUAL AGENTS FOR THE IRS WHISTLEBLOWER OFFICE, DEPARTMENT OF THE TREASURY IRS, WASHINGTON DC 20224. (SEE EXHIBIT).<br><br>5- PROOF OF MY CLAIM AFFIDAVIT AND DECLARATION OF ALEX MESA IN OPPOSITION TO TRUSTEES LEGAL STANDING (SEE EXHIBIT)<br><br>6- PROOF OF MY CLAIM, ALLOCATION OF ALLOWED MY CLAIM AND RAL 2006-Q06 (EXHIBIT)<br><br>7- PROOF OF MY CLAIM FIRM LETTER TO ESTABLISH A CLAIM AGAINST CASE #12-12042, 12-12019, 12-12020 AND ITS AFFILIATES. (SEE EXHIBITS) |

**If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.**

| Loan Number: ① LOAN #   ② LOAN # |
|---|
| ① LOAN #  [redacted]   ② LOAN # [redacted]   ③ LOAN # [redacted]   ④ LOAN # [redacted] |

Address of property related to the above loan number:

TOMAS DIAZ  5200 SW 122 AVE

| City: MIAMI | State: FLORIDA | ZIP Code: 33175 |
|---|---|---|

**Additional resources may be found at - http://www.kccllc.net/rescap**

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 4702
Tomas Diaz
Type: POC

**UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

Claim #4702   Date Filed: 11/14/2012

**PROOF OF CLAIM**

| Name of Debtor: HOMECOMINGS FINANCIAL LLC | Case Number: 12-12042 (MG) |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
TOMAS DIAZ

Name and address where notices should be sent:
TOMAS DIAZ
5200 SW 122 AVE
MIAMI FLA 33175

Telephone number: (305) 244-5159    email: MASTERPICASSO@YAHOO.COM

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____ (if known)

Filed on: _____

Name and address where payment should be sent (if different from above):
TOMAS DIAZ
5200 SW 122 AVE
MIAMI FL 33175

Telephone number: (305) 244-5159    email: MasterPicasso@Yahoo.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ 400,000.00
- If all or part of the claim is secured, complete item 4.
- If all or part of the claim is entitled to priority, complete item 5.
- ☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** MORTGAGE / NOTE DOWN PAYMENT
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** 5243

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):** _____
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☒ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

**Value of Property:** $ 600,000.00   **Annual Interest Rate** 7.498 % ☐ Fixed ☒ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:** $ _____    **Basis for perfection:** _____

**Amount of Secured Claim:** $ 400,000.00    **Amount Unsecured:** $ _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**
$ _____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.   0   (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #7, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

12120421211140000000000003

* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**9. Signature: (See instruction #9)** Check the appropriate box.

☒ I am the creditor.  ☐ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)

☐ I am the trustee, or the debtor, or their authorized agent.
(See Bankruptcy Rule 3004.)

☐ I am a guarantor, surety, indorser, or other codebtor.
(See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: TOMAS DIAZ
Title: _____
Company: _____
Address and telephone number (if different from notice address above): _____

(Signature)  [signature]    10/23/12 (Date)

**RECEIVED**
NOV 14 2012
KURTZMAN CARSON CONSULTANTS

Telephone number: (305) 244-5159    Email: MasterPicasso@Yahoo.com

**COURT USE ONLY**

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

## Service Mailing List

ResCap Claims Processing Center
c/o Kurtzman Carson Cosultants LLC
2335 Alaska Avenue
El Segundo, CA 90245

United States Trustee
33 Whitehall Street
21st Floor
New York, NY 10004

Judge Martin Glenn
The United States Bankruptcy Court
For the Southern District of New Cork
One Bowling Green, Room 501
New York, NY 10004

Kramer Levin Naftallis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10005

Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104

AlixPartners LLP
200 Town Center, Suite 2400
Southfiled, MI 48075

Moelis & Company LLC
399 Park Avenue
5th Floor
Ney York, NY 10022

Curtis, Mallet- Prevost , Colt & Mosle LLP
101 Park Avenue
New York, NY 10178-0061

FTI Consulting Inc.
3 Times Square, 9th Floor
New York , NY 10036

Centerview Parters LLC
31 West 52nd Street, 22nd Floor
New York, NY 10019

Arthur J. Gonzalez Esq.
New York University School of Law
40 Washington Square South , 314A
New York, NY 10012

**Special Service List**

## Office of the United States Trustee for the Southern District of New York

Office of the United States Trustee
33 Whitehall Street
21st Floor
New York, NY 10004
Attn:   Tracy Hope Davis, Esq.
        Brian Masumoto, Esq.
        Linda Riffkin, Esq.
Phone: (212) 510-0500
Facsimile: (212) 668-2255
Email:  Tracy.Davis2@usdoj.gov
        Brian.Masumoto@usdoj.gov
        Linda.Riffkin@usdoj.gov

## Office of the United States Attorney General

U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001
Attn:   US Attorney General, Eric H. Holder, Jr.
Phone: (202) 514-2063
Facsimile: (202)307-6777
Email: AskDOJ@usdoj.com

## Office of the New York Attorney General

Office of the New York State Attorney General
The Capitol
Albany, NY 12224-0341
Attn:   Nancy Lord, Esq.
        Neal Mann, Esq.
Phone: (518) 474-5481
Email: Nancy.Lord@OAG.State.NY.US
       Neal.Mann@OAG.State.NY.US

## Office of the U.S. Attorney for SDNY

Office of U.S. Attorney for the Southern District of New York
One St. Andrews Plaza
New York, NY 10007
Attn:   Joseph N. Cordaro, Esq.,
Phone: (212) 637-2200
Facsimile: (212) 637-2745

**Debtors**

Residential Capital, LLC
1177 Avenue of the Americas
New York, NY 10036
Attn: Tammy Hamzehpour
Email: Tammy.Hamzehpour@gmacrescap.com


**Counsel to the Debtors**

Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104
Attn:   Larren Nashelskly, Esq.
        Gary S. Lee, Esq.
        Lorenzo Marinuzzi, Esq.
Phone: (212) 468-8000
Facsimile: (212) 468-7900
Email: LNashelskly@mofo.com
        Glee@mofo.com
        LMarinuzzi@mofo.com


**Counsel to the Creditors' Committee**

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
Attn:   Ken Eckstein
        Doug Mannal
Phone:  (212) 715-9100
Facsimile:  (212) 715-8000
Email:  keckstein@kramerlevin.com
        dmannal@kramerlevin.com

**Prepetition Lenders**

Citibank N.A.
390 Greenwich Street, 6th Floor
New York, NY 10013
Attn:  Bobbie Theivakurnaran
Phone:  (212) 723-6753
Facsimile:  (646) 291-3799
Email:  bobbie.theivakurnaran@citi.com


Fannie Mae

15

3900 Wisconsin Avenue NW
Mail Stop 8H-504
Washington DC 20016
Attn: Vice President, Credit Management, John S. Forlines
Facsimile: (202) 752-2208
Email: john_s_forlines@fanniemae.com

## Counsel to Ally Financial Inc.

Kirkland & Ellis
601 Lexington Avenue
New York, NY 10022
Attn:   Ray C. Schrock
        Richard M. Cieri
Phone: (212) 446-4800
Facsimile: 212) 446-4900
Email:  richard.cieri@kirkland.com
        stephen.hessler@kirkland.com
        projectrodeo@kirkland.com
        william.b.solomon@ally.com
        timothy.devine@ally.com

## Indenture Trustees

Deutsche Bank Trust Company Americas
25 DeForest Avenue
Summit, NJ 07901
Attn: Kevin Vargas
Phone: (201) 593-2456
Email: kevin.vargas@db.com

The Bank of New York Mellon
Asset Backed Securities Group
101 Barclay Street 4W
New York, NY 10286

U.S. Bank National Association
50 South 16th Street, Suite 2000
Philadelphia, PA 19102
Attn: George Rayzis
Phone: (215) 761-9317
Email: george.rayzis@usbank.com


U.S. Bank National Association

60 Livingston Avenue
EP-MN-WS1D
St. Paul, MN 55107
Attn: Irina Palchuk
Phone: (651) 495-3404
Facsimile: (651) 495-8100
Email: irinia.palchuk@usbank.com

## Counsel to U.S. Bank National Association

Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
Attn:   James S. Carr
        Eric R. Wilson
Phone: (212) 808-7800
Facsimile:  (212) 808-7987
Email: kdwbankruptcydepartment@kelleydrye.com

Wells Fargo Bank, N.A.
P.O. Box 98
Columbia, MD 21046
Attn:  Corporate Trust Services, GMACM Home Equity Notes 2004 Viable Funding Trust

## Counsel to Administrative Agent for the Debtors' Providers of Debtor in Possession Financing

Skadden Arps Slate Meagher & Flom LLP
Four Times Square
New York, NY 10036
Attn:   Jonathan H. Hofer
        Ken Ziman
Phone: (212) 735-3849
Facsimile:  (917) 777-3849
Email: jhofer@skadden.com
        kziman@skadden.com

## Nationstar Mortgage LLC

Nationstar Mortgage LLC
350 Highland Drive
Lewisville, TX 75067
Attn:  General Counsel
Phone:  (469) 549-2000
Facsimile:  (972) 315-8637

**Counsel to Nationstar Mortgage LLC**

Sidley Austin LLP
One Dearborn
Chicago, IL 60603
Attn:   Larry J. Nyhan
        Jessica CK Boelter
Phone:  (312) 853-7710
Facsimile:  (312) 853-7036
Email:  lnyhan@sidley.com
        jboelter@sidley.com
        bmyrick@sidley.com

**Internal Revenue Service**

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346
Facsimile:  (267) 941-1015

Overnight mail should be directed to:
Internal Revenue Service
2970 Market Street
Mail Stop 5-Q30.133
Philadelphia, PA 19104-5016

**U.S. Securities and Exchange Commission**

Securities and Exchange Commission, New York Regional Office
3 World Financial Center, Suite 400
New York, NY 10281-1022
Attn:  George S. Canellos, Regional Director
Phone:  (212) 336-1100
Email:  newyork@sec.gov

# RESCAP

**MORRISON | FOERSTER**

June 21, 2013

**Claim Number: 4702**

Dear Claimant: Tomas Diaz

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case"), and we need additional information from you regarding the claim(s) ("claim") you are asserting against one or more of the Debtors.

**The Information we Need From You Regarding Your Proof of Claim:**
We reviewed a copy of the Proof of Claim form and documents, if any, that you filed in the ResCap bankruptcy case. A copy of your Proof of Claim form is enclosed for your reference. After reviewing the Proof of Claim form and any documents you submitted, we have determined that you did not provide sufficient information to support your "Basis for Claim" and we do not have sufficient information to understand the calculations you used to determine the amount you claim to be owed. In order to evaluate your claim, we need to understand the specific reasons as to why you believe you are owed money or are entitled to other relief from one or more of the Debtors. Please reply using the attached form and provide a written explanation, with supporting documentation, and include a detailed explanation of how you calculated the amount of your claim.

**You Must Respond to this Letter by no Later Than July 22, 2013:**
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than July 22, 2013 with an explanation stating the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases). You **must** provide copies of any and all documentation that you believe supports the basis for and amount of your claim. A form is included with this letter to assist you in responding to our request for additional information.

**Consequences of Failing to Respond:**
If you do not provide the requested information regarding the basis for and amount of your claim and the supporting documentation by July 22, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including that you failed to provide sufficient information and documentation to support your claim. If the Debtors file such an objection and it is successful, your claim may be disallowed and permanently expunged. If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied. Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for and amount of your claim.

Residential Capital, LLC    P.O. Box 385220    Bloomington, Minnesota 55438

Claim Number: 4702
Tomas Diaz
Type: POC

Claim # 4702
Tomas Diaz
5200 SW 122 Ave
Miami, FL 33175

Claims Management
Residential Capital LLC
P.O Box 385220
Bloomington, Minnesota
55438
Claim # 4702

Dear Claims Debtor (s),

By these means I'm sending the explanation of why I'm making this claim, along with its corresponding factual and legal evidence. The following are in chronological order.

Versus Residential Capital LLC and its affiliates

1. I purchased a home with land located in 5200 SW 122 Ave, Miami Florida 33175, as an investment, and considering my retirement.
2. I paid a value of 1.4 Million Dollars for the property. I gave a $400,000 dollar down payment ( Exhibit 1)
3. I'm a farmer and live of what the land produces, I sell animals, fruits and from this I survive. Proof of my investment claim #4702
4. My funding was for 1 million dollars with Bank United ( exhibit 2), my investment of 400,000 , which I had in collateral the property of 5200 S W 122 Ave , Miami Fl 33175
5. In the month of April of 2006 Platinum Capital group ( an affiliate of Residential Capital LLC.Case # 12-12020mg) offered to refinance to reduce my payments with a negative amortization , I accepted , from therein the problems with bank fraud commenced. ( Exhibit 3)
6. Attached is a letter I sent to the Honorable Judge Peter Lopez, the letter explains for itself all the fraudulent schemes of these financial institutions "Residential Capital LLC, Homecomings Financial LLC, Deutsche Bank Trust Company < Aurora Loan Services, Nationstar Mortgage LLC." ( Exhibit 4)
7. These financial institutions and agents involved have tried to take my property and now my investment of $400,000. ( exhibit 5)
8. I'm an informant for the IRS Whistleblower office, Department of the Treasury IRS, Washington DC.20224, and we fight against these Banking Institutions and their individual agents. The investigation has been in process since April 2012. My Claim number is ███████ 1 which include Raly # ███████ Loan # ███████ Loan ███████ (Exhibit 6) Loan # ███████
9. Other documents supporting my claim #4702 is the declaration of Alexis Mesa in opposition to trustees legal standing (Exhibit 7) it is evident that Residential Capital LLC, used my money and identity without my consent, to fabricate

documents and personal fraud to make large profits. Now they've filed for bankruptcy, and wash their hands from the fraud committed , and sell these schemes to Nationstar and other institutions.

10. I respectfully direct myself to the Morrison and Forrester law firm, LLP- I have read about your frivolous acts and the forms of your arguments and I must say that I feel not one bit intimidated. I believe in the God of all justice and trust, the Honorable Judge Martin Glenn, and to him this information has been sent as well.

11. Another proof for my claim is the allocation of allowed claim among the accepting trust (exhibit 8 ) My Rali ███████ correspond to the loan #██████████ Signed a note in favor of Platinum capital group on April 26, 2006. The mortgage then was identified as Rali Series 2006-trust a loan #██████████ The Loan was assigned to Aurora Loan Service LLC. With a loan ██████████ After a thorough search in Miami Dade County Public Records it results that no assignments were filed/ record from Deutsche Bank National Trust Company to Aurora loan Services LLC. This transaction was illegal, fraudulent, and criminal. This is yet another consistent proof of my claim 4702. I solicit that Residential Funding LLC reimburses my investment of $400,000.00 Dollars or give me for free the title of my home.

Respectfully,

Tomas Diaz

07/15/2013

*Claim # 4702*

# EXHIBIT    1

*CLAIM # 4702*

## "As Is" Residential Purchase Contract

**1. SALE AND PURCHASE:** _____ Joaquin Valor _____ ("Seller")
and _____ Tomas Diaz / _____ ("Buyer")
agree to sell and buy on the terms and conditions specified below the property described as:
Address: __5200   SW 122 Avenue  Miami, Fl. 33175_____
_____ County: _____ Miami-Dade _____
Legal Description: Bird Road Farmsites PB 46-3
Tax ID No: ████████
together with all improvements and attached items, including fixtures, built-in furnishings, built-in appliances, ceiling fans,
light fixtures, attached wall-to-wall carpeting, rods, draperies and other window coverings. The only other items included
in the purchase are: _____
_____
The following attached items are excluded from the purchase: _____
_____
The real and personal property described above as included in the purchase is referred to as the "Property." Personal property
listed in this Contract is included in the purchase price, has no contributory value and is being left for Seller's convenience.

### PRICE AND FINANCING

**2. PURCHASE PRICE:** $___1,400,000.00____ payable by Buyer in U.S. currency as follows:
  (a) $___30,000.00____ Deposit received (checks are subject to clearance) ___March      25      2005__ by
    _____ for _____Global Title Group_____ ("Escrow Agent")
    Signature                                    Name of Company
  (b) $_____ Additional deposit to be delivered to Escrow agent by _____
    or ____days from Effective Date (10 days if left blank).
  (c) ___75%____ Total financing (see Paragraph 3 below) (express as a dollar amount or percentage)
  (d) $_____ Other: _____
  (e) $__At closing__ Balance to close (not including Buyer's closing costs, prepaid items and prorations). All funds
    paid at closing must be paid by locally drawn cashier's check, official bank check or wired funds

**3. FINANCING:** (Check as applicable)
  ☐ (a) Buyer will pay cash for the Property with no financing contingency.
  ☒ (b) Buyer will apply for the financing specified in Paragraph 2(c) at the prevailing interest rate and loan costs based on
Buyer's creditworthiness (the "Financing") within ___3___ days from Effective Date (5 days if left blank) and provide Seller
with a written Financing commitment or approval letter ("Commitment") within ___7___ days from Effective Date (30 days if
left blank) ("Commitment Period"). Buyer will keep Seller and Broker fully informed of the loan application status, progress
and Commitment issues and authorizes the lender and mortgage broker to disclose all such information to Seller and
Broker. Once Buyer provides the Commitment to Seller, the financing contingency is waived and Seller will be entitled to
retain the deposits if the transaction does not close by the Closing Date unless (1) the Property appraises below the
purchase price and either the parties cannot agree on a new purchase price or Buyer elects not to proceed, or (2) another
provision of this Contract requires the deposits to be returned. If Buyer, using diligence and good faith, cannot provide the
Commitment within the Commitment Period, this Contract will be terminated and Buyer's deposits refunded.

### CLOSING

**4. CLOSING DATE; OCCUPANCY:** Unless extended by other provisions of this Contract, this Contract will be closed on
__15 days__ ("Closing Date") at the time established by the closing agent, by which time **Seller** will (a) have
removed all personal items and trash from the Property and swept the Property clean and (b) deliver the deed, occupancy
and possession, along with all keys, garage door openers and access codes, to Buyer. If on Closing Date insurance
underwriting is suspended, **Buyer** may postpone closing up to 5 days after the insurance suspension is lifted. If this
transaction does not close for any reason, Buyer will immediately return all Seller-provided title evidence, surveys,
association documents and other items.

Buyer (_TD_)(____) and Seller (____)(____) acknowledge receipt of a copy of this page, which is Page 1 of 6 Pages.
ASIS-8    Rev 10/04    © 2004    Florida Association of Re...

**5. CLOSING PROCEDURE; COSTS:** Closing will take place in the county where the Property is located and may be conducted by mail or electronic means. If title insurance insures **Buyer** for title defects arising between the title binder effective date and recording of **Buyer's** deed, closing agent will disburse at closing the net sale proceeds to **Seller** and brokerage fees to Broker as per Paragraph **19.** In addition to other expenses provided in this Contract, **Seller** and **Buyer** will pay the costs indicated below.

  **(a) Seller Costs: Seller** will pay taxes and surtaxes on the deed and recording fees for documents needed to cure title;
  Other: _____

  **(b) Buyer Costs: Buyer** will pay taxes and recording fees on notes and mortgages; recording fees on the deed and financing statements; loan expenses; lender's title policy; inspections; survey; flood insurance; home warranty plan;
  Other: _____

  **(c) Title Evidence and Insurance: Check (1) or (2):**
    ❑ **(1)** The title evidence will be a Paragraph 10(a)(1) owner's title insurance commitment as title evidence. ❑ **Seller** ❑ **Buyer** will select the title agent. ❑ **Seller** ❑ **Buyer** will pay for the owner's title policy, search, examination and related charges. Each party will pay its own closing fees.
    ☒ **(2) Seller** will provide an abstract as specified in Paragraph 10(a)(2) as title evidence. ❑ **Seller** ☒ **Buyer** will pay for the owner's title policy and select the title agent. **Seller** will pay fees for title searches prior to closing, including tax search and lien search fees, and **Buyer** will pay fees for title searches after closing (if any), title examination fees and closing fees.

  **(d) Prorations:** The following items will be made current (if applicable) and prorated as of the day before Closing Date: real estate taxes, interest, bonds, assessments, association fees, insurance, rents and other current expenses and revenues of the Property. If taxes and assessments for the current year cannot be determined, the previous year's rates will be used with adjustment for exemptions and improvements. **Buyer** is responsible for property tax increases due to change in ownership.

  **(e) Special Assessment by Public Body:** Regarding special assessments imposed by a public body, **Seller** will pay (i) the full amount of liens that are certified, confirmed and ratified before closing and (ii) the amount of the last estimate of the assessment if an improvement is substantially completed as of Effective Date but has not resulted in a lien before closing, and **Buyer** will pay all other amounts.

  **(f) Tax Withholding: Buyer** and **Seller** will comply with the Foreign Investment in Real Property Tax Act, which may require **Seller** to provide additional cash at closing if **Seller** is a "foreign person" as defined by federal law.

**PROPERTY CONDITION**

**6. INSPECTION PERIODS: Buyer** will complete any and all inspections of the Property by ___3 days___, _____ (within 10 days from Effective Date if left blank) ("Inspection Period"); the walk-through inspection on the day before Closing Date or any other time agreeable to the parties; and the survey referenced in Paragraph 10(c) by _____, _____ (at least 5 days prior to closing if left blank).

**7. REAL PROPERTY DISCLOSURE: Seller** represents that **Seller** does not know of any facts that materially affect the value of the Property, including but not limited to violations of governmental laws, rules and regulations, other than those that **Buyer** can readily observe or that are known by or have been disclosed to **Buyer.**

  **(a) Energy Efficiency: Buyer** acknowledges receipt of the energy-efficiency information brochure required by Section 553.996, *Florida Statutes.*

  **(b) Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit. **Buyer** may, within the Inspection Period, have an appropriately licensed person test the Property for radon. If the radon exceeds acceptable EPA standards, Seller may choose to reduce the radon level to an acceptable EPA level, failing which either party may cancel this Contract.

  **(c) Flood Zone: Buyer** is advised to verify by survey, with the lender and with appropriate government agencies which flood zone the Property is in, whether flood insurance is required and what restrictions apply to improving the Property and rebuilding in the event of casualty. If the Property is in a Special Flood Hazard Area or Coastal High Hazard area and the buildings are built below the minimum flood elevation, **Buyer** may cancel this Contract by delivering written notice to **Seller** within 20 days from Effective Date, failing which **Buyer** accepts existing elevation of the buildings and zone designation of the Property.

  **(d) Homeowners' Association:** If membership in a homeowners' association is mandatory, an association disclosure summary is attached and incorporated into this Contract. BUYER SHOULD NOT SIGN THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE DISCLOSURE SUMMARY.

  **(e) PROPERTY TAX DISCLOSURE SUMMARY: BUYER** SHOULD NOT RELY ON THE **SELLER'S** CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT **BUYER** MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR FURTHER INFORMATION.

**Buyer (** TD **) (____) and Seller (____) (____)** acknowledge receipt of a copy of this page, which is Page 2 of 6 Pages.

ASIS-8    Rev. 10/04    © 2004    Florida Association of REALTORS®    All Rights Reserved

**(c) Survey: Buyer** may, at **Buyer's** ~~expense~~, have the Property surveyed and deliver ~~writt~~en notice to **Seller**, within 5 days from receipt of survey but no later than closing, of any encroachments on the Property, encroachments by the Property's improvements on other lands or deed restriction or zoning violations. Any such encroachment or violation will be treated in the same manner as a title defect and **Buyer's** and **Seller's** obligations will be determined in accordance with subparagraph **(b)** above. If any part of the Property lies seaward of the coastal construction control line, **Seller** will provide **Buyer** with an affidavit or survey as required by law delineating the line's location on the property, unless **Buyer** waives this requirement in writing.

## MISCELLANEOUS

**11. EFFECTIVE DATE; TIME:** The "Effective Date" of this Contract is the date on which the last of the parties initials or signs the latest offer. **Time is of the essence for all provisions of this Contract.** All time periods will be computed in business days (a "business day" is every calendar day except Saturday, Sunday and national legal holidays). If any deadline falls on a Saturday, Sunday or national legal holiday, performance will be due the next business day. All time periods will end at 5:00 p.m. local time (meaning in the county where the Property is located) of the appropriate day.

**12. NOTICES:** All notices will be made to the parties and Broker by mail, personal delivery or electronic media. **Buyer's failure to deliver timely written notice to Seller, when such notice is required by this Contract, regarding any contingencies will render that contingency null and void and the Contract will be construed as if the contingency did not exist.** Any notice, document or item given to or received by an attorney or Broker (including a transaction broker) representing a party will be as effective as if given to or by that party.

**13. COMPLETE AGREEMENT:** This Contract is the entire agreement between Buyer and Seller. **Except for brokerage agreements, no prior or present agreements will bind Buyer, Seller or Broker unless incorporated into this Contract.** Modifications of this Contract will not be binding unless in writing, signed or initialed and delivered by the party to be bound. This Contract, signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. **Buyer** and **Seller** will use diligence and good faith in performing all obligations under this Agreement. This Contract will not be recorded in any public records.

**14. ASSIGNABILITY; PERSONS BOUND: Buyer** may **not** assign this Contract without **Seller's** written consent. The terms "**Buyer**," "**Seller**," and "**Broker**" may be singular or plural. This Contract is binding on the heirs, administrators, executors, personal representatives and assigns (if permitted) of **Buyer**, **Seller** and Broker.

## DEFAULT AND DISPUTE RESOLUTION

**15. DEFAULT: (a) Seller Default:** If for any reason other than failure of **Seller** to make **Seller's** title marketable after diligent effort, **Seller** fails, refuses or neglects to perform this Contract, **Buyer** may choose to receive a return of **Buyer's** deposit without waiving the right to seek damages or to seek specific performance as per Paragraph 16. **Seller** will also be liable to Broker for the full amount of the brokerage fee. **(b) Buyer Default:** If **Buyer** fails to perform this Contract within the time specified, including timely payment of all deposits, **Seller** may choose to retain and collect all deposits paid and agreed to be paid as liquidated damages or to seek specific performance as per Paragraph 16; and Broker will, upon demand, receive 50% of all deposits paid and agreed to be paid (to be split equally among cooperating brokers except when closing does not occur due to **Buyer** not being able to secure Financing after providing a Commitment, in which case Broker's portion of the deposits will go solely to the listing broker) up to the full amount of the brokerage fee.

**16. DISPUTE RESOLUTION:** This Contract will be construed under Florida law. All controversies, claims, and other matters in question arising out of or relating to this transaction or this Contract or its breach will be settled as follows:

**(a) Disputes concerning entitlement to deposits made and agreed to be made: Buyer** and **Seller** will have 30 days from the date conflicting demands are made to attempt to resolve the dispute through **mediation.** If that fails, Escrow Agent will submit the dispute, if so required by Florida law, to Escrow Agent's choice of arbitration, a Florida court or the Florida Real Estate Commission. **Buyer** and **Seller** will be bound by any resulting award, judgment, or order.

**(b) All other disputes: Buyer** and **Seller** will have 30 days from the date a dispute arises between them to attempt to resolve the matter through mediation, failing which the parties may resolve the dispute through neutral binding **arbitration** in the county where the Property is located. The arbitrator may not alter the Contract terms or award any remedy not provided for in this Contract. The award will be based on the greater weight of the evidence and will state findings of fact and the contractual authority on which it is based. If the parties agree to use discovery, it will be in accordance with the Florida Rules of Civil Procedure and the arbitrator will resolve all discovery-related disputes. Any disputes with a real estate licensee named in Paragraph **19** will be submitted to arbitration only if the licensee's broker consents in writing to become a party to the proceeding. This clause will survive closing.

**(c) Mediation and Arbitration; Expenses:** "Mediation" is a process in which parties attempt to resolve a dispute by submitting it to an impartial mediator who facilitates the resolution of the dispute but who is not empowered to impose a

Buyer ( _TD_ ) ( ) and Seller ( _HV_ ) ( ) acknowledge receipt of a copy of this page, which is Page 4 of 6 Pages.

settlement on the parties. Mediator ___ be in accordance with the rules of the ___ in Arbitration Association ("AAA") or other mediator agreed on by the parties. The parties will equally divide the mediation fee, if any. "Arbitration" is a process in which the parties resolve a dispute by a hearing before a neutral person who decides the matter and whose decision is binding on the parties. Arbitration will be in accordance with the rules of the AAA or other arbitrator agreed on by the parties. Each party to any arbitration will pay its own fees, costs and expenses, including attorneys' fees, and will equally split the arbitrators' fees and administrative fees of arbitration.

## ESCROW AGENT AND BROKER

**17. ESCROW AGENT: Buyer** and **Seller** authorize Escrow Agent to receive, deposit and hold funds and other items in escrow and, subject to clearance, disburse them upon proper authorization and in accordance with Florida Law and the terms of this Contract, including disbursing brokerage fees. The parties agree that Escrow Agent will not be liable to any person for misdelivery of escrowed items to **Buyer** or **Seller**, unless the misdelivery is due to Escrow Agent's willful breach of this Contract or gross negligence. If Escrow Agent interpleads the subject matter of the escrow, Escrow Agent will pay the filing fees and costs from the deposit and will recover reasonable attorneys' fees and costs to be paid from the escrowed funds or equivalent and charged and awarded as court costs in favor of the prevailing party. All claims against Escrow Agent will be arbitrated, so long as Escrow Agent consents to arbitrate.

**18. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises **Buyer** and **Seller** to verify all facts and representations that are important to them and to consult an appropriate professional for legal advice (for example, interpreting contracts, determining the effect of laws on the Property and transaction, status of title, foreign investor reporting requirements, etc.) and for tax, property condition, environmental and other specialized advice. Buyer acknowledges that Broker does not reside in the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. Buyer agrees to rely solely on Seller, professional inspectors and governmental agencies for verification of the Property condition, square footage and facts that materially affect Property value. Buyer and Seller respectively will pay all costs and expenses, including reasonable attorneys' fees at all levels, incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from Buyer's or Seller's misstatement or failure to perform contractual obligations. **Buyer and Seller** hold harmless and release Broker and Broker's officers, directors, agents and employees from all liability for loss or damage based on (1) Buyer's or Seller's misstatement or failure to perform contractual obligations; (2) Broker's performance, at Buyer's and/or Seller's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor; (3) products or services provided by any vendor; and (4) expenses incurred by any vendor. **Buyer** and **Seller** each assume full responsibility for selecting and compensating their respective vendors. This paragraph will not relieve Broker of statutory obligations. For purposes of this paragraph, Broker will be treated as a party to this Contract. This paragraph will survive closing.

**19. BROKERS:** The licensee(s) and brokerage(s) named below are collectively referred to as "Broker." **Instruction to Closing Agent:** Seller and **Buyer** direct closing agent to disburse at closing the full amount of the brokerage fees as specified in separate brokerage agreements with the parties and cooperative agreements between the brokers, except to the extent Broker has retained such fees from the escrowed funds. In the absence of such brokerage agreements, closing agent will disburse brokerage fees as indicated below. This paragraph will not be used to modify any MLS or other offer of compensation made by Seller or listing broker to cooperating brokers.

| | |
|---|---|
| Virginia Costa P.A. | Coldwell Banker |
| Selling Sales Associate/License No. _____ | Selling Firm/Brokerage Fee: ($ or % of Purchase Price) ___ 2% |
| Julio Cotera | Cotera Realty |
| Listing Sales Associate/License No. _____ | Listing Firm/Brokerage fee: ($ or % of Purchase Price) ___ 2% |

## ADDENDA AND ADDITIONAL TERMS

**0. ADDENDA:** The following additional terms are included in addenda and incorporated into this Contract (check if applicable):

| | | |
|---|---|---|
| ❏ A. Condo. Assn. | ❏ H. As Is w/Right to Inspect | ❏ O. Interest-Bearing Account | ❏ V. Prop. Disclosure Stmt. |
| ❏ B. Homeowners' Assn. | ❏ I. Inspections | ❏ P. Back-up Contract | ❏ W. FIRPTA |
| ❏ C. Seller Financing | ❏ J. Insulation Disclosure | ❏ Q. Broker - Pers. Int. in Prop. | ❏ X. 1031 Exchange |
| ❏ D. Mort. Assumption | ☒ K. Pre-1978 Housing Stmt. (LBP) | ❏ R. Rentals | ❏ Y. Additional Clauses |
| ❏ E. FHA Financing | ❏ L. Insurance | ❏ S. Sale/Lease of Buyer's Property | ❏ Other_____ |
| ❏ F. VA Financing | ❏ M. Housing Older Persons | ❏ T. Rezoning | ❏ Other_____ |
| ❏ G. New Mort. Rates | ❏ N. Unimproved/Ag. Prop. | ❏ U. Assignment | ❏ Other_____ |

**1. ADDITIONAL TERMS:**

Buyer (___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 5 of 6 Pages.

AS-8   Rev 10/04   © 2004   Florida Association of Realtors®

**(f) Mold:** Mold is part of the natural environment that, when accumulated in sufficient quantities, may present health risks to susceptible persons. For more information, contact the county/indoor air quality specialist or other appropriate professional.

**8. As Is With Right to Inspect:** **Seller** makes no warranties other than marketability of title. **Seller** will keep the Property in the same condition from Effective Date until closing, except for normal wear and tear ("maintenance requirement"), and will convey the Property in its "as is" condition with no obligation to make any repairs.

(a) **Inspection Right; Seller Obligations: Buyer** may, at **Buyer's** expense, conduct professional and walk-through inspections as described below. If **Buyer** fails to timely conduct any inspection which **Buyer** is entitled to make under this paragraph, **Buyer** waives the right to the inspection and accepts the Property "as is." **Seller** will provide access and utilities for **Buyer's** inspections. **Buyer** will repair all damages to the Property resulting from the inspections and return the Property to its pre-inspection condition.

(b) **Professional Inspections:** The inspection(s) will be by a person who specializes in and holds an occupational license (if required by law) to conduct home inspections or who holds a Florida license to repair and maintain the items inspected.

(c) **Cancellation Right: Buyer** may cancel this Contract by written notice to **Seller** within  1  days (within 5 days if left blank) from the end of the Inspection Period if the estimated cost of treatment and repairs determined to be necessary by **Buyer** is greater than $   0.00   . For the cancellation to be effective, **Buyer** must include in the written notice a copy of the inspector's written report, if any, and treatment and repair estimates from the inspector or person(s) holding an appropriate Florida license to repair the items inspected. Any conditions not reported in a timely manner will be deemed acceptable to **Buyer**.

(d) **Walk-through Inspection: Buyer** may walk through the Property solely to verify that **Seller** has fulfilled the contractual obligations. No other issues may be raised as a result of the walk-through inspection.

**9. RISK OF LOSS:** If any portion of the Property is damaged by fire or other casualty before closing and can be restored within 45 days from the Closing Date to substantially the same condition as it was on Effective Date, Seller will, at Seller's expense, restore the Property and the Closing Date will be extended accordingly. **Seller** will not be obligated to replace trees. If the restoration cannot be completed in time, **Buyer** may accept the Property "as is" with existing damage, in which case **Seller** will credit the deductible and assign the insurance proceeds, if any, to **Buyer** at closing in such amounts as are (i) attributable to the Property and (ii) not yet expended in making repairs and (iii) sufficient to restore the Property to its "as is" condition as of the Effective Date, failing which either party may cancel this Contract. If the Property is a condominium, this paragraph applies only to the unit and limited common elements appurtenant to the unit; if the Property is in a homeowners' association, this paragraph will not apply to common elements or recreation or other facilities.

## TITLE

**10. TITLE: Seller** will convey marketable title to the Property by statutory warranty deed or trustee, personal representative or guardian deed as appropriate to **Seller's** status.

(a) **Title Evidence:** Title evidence will show legal access to the Property and marketable title of record in **Seller** in accordance with current title standards adopted by the Florida Bar, subject only to the following title exceptions, none of which prevent residential use of the Property: covenants, easements and restrictions of record; matters of plat; existing zoning and government regulations; oil, gas and mineral rights of record if there is no right of entry; current taxes; mortgages that **Buyer** will assume; and encumbrances that **Seller** will discharge at or before closing. **Seller** will deliver to **Buyer Seller's** choice of one of the following types of title evidence, which must be generally accepted in the county where the Property is located (specify in Paragraph 5(c) the selected type). **Seller** will use option (1) in Palm Beach County and option (2) in Miami-Dade County.

(1) **A title insurance commitment** issued by a Florida-licensed title insurer in the amount of the purchase price and subject only to title exceptions set forth in this Contract and delivered no later than 2 days before Closing Date.

(2) **An existing abstract of title** from a reputable and existing abstract firm (if firm is not existing, then abstract must be certified as correct by an existing firm) purporting to be an accurate synopsis of the instruments affecting title to the Property recorded in the public records of the county where the Property is located and certified to Effective Date. However if such an abstract is not available to **Seller**, then a **prior owner's title policy** acceptable to the proposed insurer as a base for reissuance of coverage. **Seller** will pay for copies of all policy exceptions and an update in a format acceptable to **Buyer's** closing agent from the policy effective date and certified to **Buyer** or **Buyer's** closing agent, together with copies of all documents recited in the prior policy and in the update. If a prior policy is not available to **Seller** then (1) above will be the title evidence. Title evidence will be delivered no later than 10 days before Closing Date.

(b) **Title Examination: Buyer** will examine the title evidence and deliver written notice to **Seller**, within 5 days from receipt of title evidence but no later than closing, of any defects that make the title unmarketable. **Seller** will have 30 days from receipt of **Buyer's** notice of defects ("Curative Period") to cure the defects at **Seller's** expense. If **Seller** cures the defects within the Curative Period, **Seller** will deliver written notice to **Buyer** and the parties will close the transaction on Closing Date or within 10 days from **Buyer's** receipt of **Seller's** notice if Closing Date has passed. If **Seller** is unable to cure the defects within the Curative Period, **Seller** will deliver written notice to **Buyer** and **Buyer** will, within 10 days from receipt of

Buyer ( TO )(     ) and Seller (     )(     ) acknowledge receipt of a copy of this page, which is Page 3 of 6 Pages.

ASIS-8   Rev. 10/04   © 2004   Florida Association of REALTORS®   All Rights Reserved

instanet

*CLAIM # 4702*

6 % Seller contribution

*T.D. J.V.*

*Seller will stay on property 30 days after closing on or before - J.V.*

This is intended to be a legally binding contract. If not fully understood, seek the advice of an attorney prior to signing.

## OFFER AND ACCEPTANCE

**(Check if applicable: ❑ Buyer** received a written real property disclosure statement from **Seller** before making this Offer.)
**Buyer** offers to purchase the Property on the above terms and conditions. Unless this Contract is signed by **Seller** and a copy delivered to **Buyer** no later than _____ ❑ a.m.❑ p.m. on _____, _____, this offer will be revoked and **Buyer's** deposit refunded subject to clearance of funds.

Date: _____     Buyer: _____
                          Print name: _____TOMAS DIAZ_____

Date: _____     Buyer: _____
Phone: _____     Print name: _____
Fax: _____     Address: _____
E-mail: _____

Date: _____     Seller: _____
                          Print name: _____JOAQUIN VALOR_____

Date: _____     Seller: _____
Phone: _____     Print name: _____
Fax: _____     Address: _____
E-mail: _____

## COUNTER OFFER/REJECTION

❑ **Seller** counters **Buyer's** offer (to accept the counter offer, **Buyer** must sign or initial the counter offered terms and deliver a copy of the acceptance to **Seller** by 5:00 p.m. on _____, _____). ❑ **Seller** rejects **Buyer's** offer.

Effective Date: _3-25-05_ (The date on which the last party signed or initialed acceptance of the final offer.)

**Buyer** (_TD_) (____) and **Seller** (_V_) (____) acknowledge receipt of a copy of this page, which is Page 6 of 6 Pages.

The Florida Association of REALTORS and local Board/Association of REALTORS make no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark that may be used only by real estate licensees who are members of the National Association of REALTORS and who subscribe to its Code of Ethics.
The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of blank forms by any means including facsimile or computerized forms.
ASIS-8   Rev. 10/04   © 2004 Florida Association of REALTORS®   All Rights Reserved

Instanet forms

*CLAIM #4702*

**Addendum to Contract dated _03/25/2005_ between Joaquin Valor (Seller) and Tomas Diaz (Buyer)**

**April 8, 2005**

I, Joaquin Valor (Seller), agree to give Tomas Diaz (Buyer), $56,000.00 from my proceeds of the sale of the property located at 5200 S.W. 122nd Avenue, Miami, Florida.

I, Joaquin Valor further agree to lend Tomas Diaz $100,000.00 for the purchase of same property, which will be paid within 60 to 90 days from date of Closing.

_____
JOAQUIN VALOR

_____
TOMAS DIAZ

**Eastern National Bank**

# CASHIERS CHECK ORDER

Customer Name: _Tomas Diaz_                     Account No. �_____

| Payable to: (please print) | CHARGE | C.C. NBR | CHECK AMOUNT |
|---|---|---|---|
| Experence Tile Solutions Inc. | 10 | 69105 | 72,300 — |
| | | | |
| | | | |
| | | | |

DATE 4/18/05   PURCHASER'S SIGNATURE _____

CASHIERS CHECK CPU   72,310 —

DEPARTMENT COPY

| Payable to: (please print)  _TITLE_ | CHARGE | C.C. NBR | CHECK AMOUNT |
|---|---|---|---|
| Experence Tile Salution Inc. | 10 | 69106 | 200,400 — |
| | | | |
| | | | |
| | | | |

DATE 4/18/05   PURCHASER'S SIGNATURE _____   200,410 —

DEPARTMENT COPY

Proof of my investment
Claim # 4702

Total - $412,720

72,310
200,410
70,000
70,000

CLAIM #4702

CLAIM #4702

CFN 2005R0410672
OR Bk 23304 Pgs 3069 - 3077; (9pgs)
RECORDED 04/25/2005 10:42:16
MTG DOC TAX 140.00
INTANG TAX 80.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

This Instrument Prepared by:
GASTON R. ALVAREZ, P.A.
City National Bank Building
2701 LeJeune Road, Suite 607
Coral Gables, Florida 33134

THIS MORTGAGE DEED Executed the _15TH_ day of _April_, 2005, by TOMAS DIAZ, a single man, whose post office address is _5200 S. W. 122 Avenue, Miami, Fl. 33175_, hereinafter called the MORTGAGOR, which term as used in every instance shall include the MORTGAGOR'S herein, their executors, administrators, successors, legal representatives and assigns, either voluntary by act of the parties, or involuntary by operation of law, and shall denote the singular and/or plural, and the masculine and/or feminine and natural and/or artificial person, whenever and wherever the context so requires or admits, party of the first part, in favor of JOAQUIN VALOR, a single man, whose post office address is _3191 Coral Way, Suite 637, Miami, Fl.33145_, hereinafter called the Mortgagee:

WITNESSETH, that for good and valuable consideration, and also in consideration of the aggregate sum named in the promissory note of even date herewith, hereinafter described, the mortgagor hereby grants, bargains, sells, aliens, remises, conveys and confirms unto the mortgagee all the certain tract of land, of which the mortgagor is now seized and in possession, situated in Miami-Dade County, Florida, to wit:

LOT 2, OF ANCHELL TRACT, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 64, PAGE 142, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

Together with all structures, buildings, improvements and fixtures now or hereinafter contained on the above described land (collectively, the "Mortgaged Property.")

THIS IS A SECOND MORTGAGE. The Mortgagor shall not create or suffer to be created any lien or encumbrance on the Mortgaged Property superior to or on a parity with the lien of this Mortgage in said Mortgaged Property.

TO HAVE AND TO HOLD the same, together with the tenements, hereditaments and appurtenances thereto belonging, and the rents, issues and profits, unto the mortgagee, in fee simple.

AND the mortgagor covenants with the mortgagee that the mortgagor is indefeasibly seized of said land in fee simple; that the mortgagor has good right and lawful authority to convey said land as aforesaid; that the mortgagor will make such further assurances to perfect the fee simple title to said land in the mortgagee as may reasonably be required; that the mortgagor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free and clear of all encumbrances.

PROVIDED ALWAYS, that if said mortgagor shall pay in full unto said mortgagee the certain promissory note hereinafter substantially copied or identified, to-wit:

"Promissory Note from TOMAS DIAZ, a single man, dated _April 15, 2005_, in the principal amount of $40,000.00, a copy of which is attached hereto (the "Note")".

1



*CLAIM # 4702*

IN WITNESS WHEREOF, the said mortgagor has hereunto signed and sealed these presents the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____
Witness Signature
Marianne Marquez

_____
Printed Name

_____
Witness Signature

Julio Cotera
Printed Name

_____
TOMAS DIAZ

_____


STATE OF   FLORIDA )

COUNTY OF MIAMI-DADE )

I HEREBY CERTIFY that on this ____ day of April, 2005, before me, an officer duly authorized in the State and County aforesaid to take acknowledgment, personally appeared TOMAS DIAZ, a single man , who produced ___ valid driver's license as identification, and who did take an oath.

_____
Notary Public, State of Florida
Marianne Marquez

_____
Print Notary Signature

Rubber Stamp Seal:

F:\RealEstate\MortgageDeed\JACK VALOR DIAZ).wpd

Marianne Marquez
My Commission DD201957
Expires April 09, 2007

8

OR B ) 23304 PG 3077
LAST PAGE

CIAIM # 471

## PROMISSORY NOTE

**$70,000.00**                                    Miami, Florida, April 15, 2005

    **FOR VALUE RECEIVED** the undersigned, jointly and severally, promises to pay to the order of___**JOAQUIN VALOR**___, the principal sum of **SEVENTY THOUSAND AND NO/100 ($70,000.00) DOLLARS**, together with interest thereon from date at the rate of **SEVEN (7%) percent** per annum until maturity, all payable in lawful money of the United States of America, as follows:

    **THE ENTIRE PRINCIPAL BALANCE TOGETHER WITH ACCRUED INTEREST SHALL BE DUE AND PAYABLE ON JUNE 15, 2005.**

    All payments shall apply first to accrued interest, and the remainder, if any, to the reduction of principal. If any installment of principal or interest is not paid when due, or upon any default in the performance of any of the covenants or agreements of this note, or of any instrument now or hereafter evidencing or securing this note or the obligation represented hereby, then the whole indebtedness (including principal and interest) remaining unpaid, shall, at the option of the holder, become immediately due, payable and collectible, and while in default, this note and deferred interest shall bear interest at the rate of__18%__ percent per annum.

Each maker and endorser further agrees, jointly and severally, to pay all costs of collection, including reasonable attorney's fees in case the principal of this note or any payment of the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

Payable at:3191 Coral Way, Suite 637, Miami, Fl. 33145.
or such other place as shall be designated by the holder of this Note in writing.

This Note is secured by a Mortgage of even date herewith and is to be construed and enforced according to the laws of the State of Florida.

5200 S. W.122 Ave. Miami, Fl.33175            _____
    **Makers Address**                                    **TOMÁS DIAZ**

CFN 2005R0410673
OR Bk 23304 Pgs 3078 - 30861 (9pgs)
RECORDED 04/25/2005 10:42:16
MTG DOC TAX 245.00
INTANG TAX 140.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

THIS MORTGAGE DEED Executed the _15TH_ day of _April_, 2005, by TOMAS DIAZ, a single man, whose post office address is _5200 S. W. 122 Avenue, Miami, Fl. 33175_, hereinafter called the MORTGAGOR, which term as used in every instance shall include the MORTGAGOR'S herein, their executors, administrators, successors, legal representatives and assigns, either voluntary by act of the parties, or involuntary by operation of law, and shall denote the singular and/or plural, and the masculine and/or feminine and natural and/or artificial person, whenever and wherever the context so requires or admits, party of the first part, in favor of JOAQUIN VALOR, a single man, whose post office address is _3191 Coral Way, Suite 637, Miami, Fl.33145_, hereinafter called the Mortgagee:

WITNESSETH, that for good and valuable consideration, and also in consideration of the aggregate sum named in the promissory note of even date herewith, hereinafter described, the mortgagor hereby grants, bargains, sells, aliens, remises, conveys and confirms unto the mortgagee all the certain tract of land, of which the mortgage is now seized and in possession, situated in Miami-Dade County, Florida, to wit:

> LOT 26, BLOCK 5, OF AMENDED PLAT OF CENTRAL MIAMI, PART ONE, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 10, PAGE 75, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

Together with all structures, buildings, improvements and fixtures now or hereinafter contained on the above described land (collectively, the "Mortgaged Property.")

THIS IS A THIRD MORTGAGE.   The Mortgagor shall not create or suffer to be created any lien or encumbrance on the Mortgaged Property superior to or on a parity with the lien of this Mortgage in said Mortgaged Property.

TO HAVE AND TO HOLD the same, together with the tenements, hereditaments and appurtenances thereto belonging, and the rents, issues and profits, unto the mortgagee, in fee simple.

AND the mortgagor covenants with the mortgagee that the mortgagor is indefeasibly seized of said land in fee simple; that the mortgagor has good right and lawful authority to convey said land as aforesaid; that the mortgagor will make such further assurances to perfect the fee simple title to said land in the mortgagee as may reasonably be required; that the mortgagor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free and clear of all encumbrances.

PROVIDED ALWAYS, that if said mortgagor shall pay in full unto said mortgagee the certain promissory note hereinafter substantially copied or identified, to-wit:

> "Promissory Note from TOMAS DIAZ, a single man , dated _April 15, 2005_, in the principal amount of $70,000.00, a copy of which is attached hereto (the "Note")".

1



*CLAIM # 4702*

IN WITNESS WHEREOF, the said mortgagor has hereunto signed and sealed these presents the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____
Witness Signature

Marianne Marquez
_____
Printed Name

_____
Witness Signature

Julio Cotera
_____
Printed Name

TOMAS DIAZ
_____

_____

STATE OF    FLORIDA )

COUNTY OF MIAMI-DADE )

I HEREBY CERTIFY that on this 15TH day of April, 2005, before me, an officer duly authorized in the State and County aforesaid to take acknowledgment, personally appeared TOMAS DIAZ, a single man , who produced valid driver's license as identification, and who did take an oath.

Notary Public, State of Florida

Marianne Marquez
_____
Print Notary Signature

Rubber Stamp Seal:

F:\RealEstate\MortgageDeed\JACK VALOR DIAZ).wpd

Marianne Marquez
My Commission DD201957
Expires April 08, 2007

8

OR 23304 PG 3086
LAST PAGE

## PROMISSORY NOTE

**$70,000.00**                                    Miami, Florida, April 15, 2005

**FOR VALUE RECEIVED** the undersigned, jointly and severally, promises to pay to the order of____JOAQUIN VALOR____, the principal sum of **SEVENTY THOUSAND AND NO/100 ($70,000.00) DOLLARS**, together with interest thereon from date at the rate of **SEVEN (7%) percent** per annum until maturity, all payable in lawful money of the United States of America, as follows:

**THE ENTIRE PRINCIPAL BALANCE TOGETHER WITH ACCRUED INTEREST SHALL BE DUE AND PAYABLE ON JUNE 15, 2005.**

All payments shall apply first to accrued interest, and the remainder, if any, to the reduction of principal. If any installment of principal or interest is not paid when due, or upon any default in the performance of any of the covenants or agreements of this note, or of any instrument now or hereafter evidencing or securing this note or the obligation represented hereby, then the whole indebtedness (including principal and interest) remaining unpaid, shall, at the option of the holder, become immediately due, payable and collectible, and while in default, this note and deferred interest shall bear interest at the rate of_18%_ percent per annum.

Each maker and endorser further agrees, jointly and severally, to pay all costs of collection, including reasonable attorney's fees in case the principal of this note or any payment of the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

Payable at:3191 Coral Way, Suite 637, Miami, Fl. 33145.
or such other place as shall be designated by the holder of this Note in writing.

This Note is secured by a Mortgage of even date herewith and is to be construed and enforced according to the laws of the State of Florida.

5200 S. W.122 Ave. Miami, Fl.33175
     **Makers Address**                         TOMAS DIAZ

CTA/14 # 4702

CFN  2005R0407938
OR BK 23302 Ps 0698l (1ps)
RECORDED 04/22/2005 14:06:55
DEED DOC TAX 8,400.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

This Instrument Prepared by:
GASTON R. ALVAREZ, P.A.
Attorney at Law
City Landmark Bank Building
3700 Lejeune Road, Suite 407
Coral Gables, Florida 33134

Property Appraisers Parcel Identification No.(
Question(s) E.A.:

THIS WARRANTY DEED Made the __14TH__ day of __APRIL__, A.D. 2005 by JOAQUIN  VALOR, a single man, hereinafter called the Grantor, to TOMAS DIAZ, a single man, whose address is: __5200  S.  W.  122 Avenue, Miami, Fl. 33175__, hereinafter called the Grantees.

WITNESSETH: That the Grantors, for and in consideration of the sum of $10.00 and other good valuable considerations, receipt whereof is hereby acknowledged, hereby grant, bargain, sell, aliens, remise, release, convey and confirm unto the Grantees, all that certain land situated in Miami-Dade County, Florida, to-wit:

SOUTH ONE-HALF OF TRACT 226, OF BIRD ROAD FARMSITES, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 46, AT PAGE 3, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

Subject to:  Conditions, restrictions, limitations and easements of records, if any, without reimposing same, applicable zoning regulations and taxes for the year 2005 and subsequent years.

TOGETHER with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

TO HAVE AND TO HOLD, the same in fee simple forever.

AND the Grantors hereby covenant with said grantees that the grantors are lawfully seized of said land in fee simple; that the grantors have good right and lawful authority to sell and convey said land; that the grantors hereby fully warrant the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except taxes accruing subsequent to December 31, 2004.

IN WITNESS WHEREOF, the said Grantors have signed and sealed these presents the day and year first above written.

Signed, sealed and delivered
in the presence of:

Signature  Marianne Marquez

Print Signature

Signature  Elisabet Valls

Print Signature

_____ L.S.
JOAQUIN VALOR
Address:   __3191 Coral Way, Suite 637
Miami, Fl. 33145__

STATE OF FLORIDA    }
: SS
COUNTY OF MIAMI-DADE)

I Hereby Certify that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, personally appeared JOAQUIN VALOR, a single person, who is personally known to me or who produced valid drivers license as identification and who did not take an oath.

WITNESS my hand and official seal in the County and State last aforesaid this 14 day of April, 2005.

Notary Seal:

NOTARY PUBLIC, State of FLORIDA
Print Notary Signature

Marianne Marquez
My Commission DD201557
Expires April 09, 2007

F:\RealEstate\VALOR 97 DELGADO ET AL\WarrantyDeed.Valorwpd.wpd

per title

CLAIM # 4702

## My Home



miamidade.gov    **ACTIVE TOOL: SELECT**

**Show Me:**

Property Information

**Search By:**

Select Item

Text only

Property Appraiser Tax Estimator

### Summary Details:

| Folio No.: | 30-4924-001-2322 |
| --- | --- |
| Property: | 5200 SW 122 AVE |
| Mailing Address: | TOMAS DIAZ |
| | 5200 SW 122 AVE MIAMI FL 33175-5529 |

### Property Information:

| Primary Zone: | 9000 AGRICULTURE |
| --- | --- |
| CLUC: | 0001 RESIDENTIAL- SINGLE FAMILY |
| Beds/Baths: | 5/3 |
| Floors: | 1 |
| Living Units: | 1 |
| Adj Sq Footage: | 5.735 |
| Lot Size: | 2 ACRES |
| Year Built: | 1970 |
| Legal Description: | 24 54 39 2.33 AC BIRD ROAD FARMSITES PB 46-3 S1/2 OF TR 226 LOT SIZE IRREGULAR OR 19560-3055 032001 1 COC 23302-0698 04 2005 1 |

### Sale Information:

| Sale O/R: | 23302-0698 |
| --- | --- |
| Sale Date: | 4/2005 |
| Sale Amount: | $1,400,000 |

### Assessment Information:

| Year: | 2006 | 2005 |
| --- | --- | --- |
| Land Value: | $733,950 | $559,200 |
| Building Value: | $385,109 | $316,979 |
| Market Value: | $1,119,059 | $876,179 |
| Assessed Value: | $1,119,059 | $535,974 |
| Homestead Exemption: | $0 | $25,000 |
| Total Exemptions: | $0 | $25,000 |
| Taxable Value: | $1,119,059 | $510,974 |



Digital Orthophotography - 2006    0 ——— 134 ft

We appreciate your feedback, please take a minute to complete our survey.

My Home | Property Information | Property Taxes
| My Neighborhood | Property Appraiser

Home | Using Our Site | About | Phone Directory | Privacy | Disclaimer

**If you experience technical difficulties with the Property Information application, please click here to let us know.**

E-mail your comments, questions and suggestions to Webmaster

Web Site
© 2002 Miami-Dade County.
All rights reserved.

*CIAIM #4702*

CFN 2005R0919548
OR Bk 23735 Ps 4847; (1ps)
RECORDED 09/01/2005 08:44:34
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

This Instrument Prepared by:
GASTON R. ALVAREZ, P.A.
City National Bank Building
2701 La Jeune Road, Suite 407
Coral Gables, FL 33134

## SATISFACTION OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS: That JOAQUIN VALOR, the owner and holder of a certain Mortgage Deed executed by TOMAS DIAS, a single man, bearing date the 15th day of April, 2005, recorded April 25, 2005, in Official Records Book 23304, Page 3078, in the office of the Clerk of the Circuit Court of MIAMI-DADE County, State of Florida, securing a certain note in the principal sum of SEVENTY THOUSAND AND NO/100 ($70,000.00) DOLLARS; in the office of the Clerk of the Circuit Court of MIAMI-DADE County, State of Florida, and certain promises and obligations set forth in said mortgage deed, upon the property situated in said State and County described as follows, to wit:

LOT 26, IN BLOCK 5 OF AMENDED PLAT OF CENTRAL MIAMI, PART ONE, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 16, AT PAGE 75, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

I HEREBY acknowledge full payment and satisfaction of said note and mortgage deed, and surrender the same as canceled, and hereby direct the Clerk of the said Circuit Court to cancel the same of record.

WITNESS MY hand and seal this 1st day of Aug., 2005.

Signed, Sealed and Delivered
in Presence of:

_____
Signature
Rianna B. Sicre
Print Name

_____
Signature
Virginia Campo
Print Name

_____ L.S.
JOAQUIN VALOR
Address: 3191 Coral Way, Suite 637

Miami, Florida 33145

STATE OF FLORIDA      )
                      )
COUNTY OF MIAMI-DADE  )

I HEREBY CERTIFY that on this 1st day of Aug, 2005, before me, an officer duly authorized in the State aforesaid and in the County aforesaid, to take acknowledgments, personally appeared JOAQUIN VALOR, who produced personally known as identification and who did not take an oath.

WITNESS my hand and official seal in the County and State last aforesaid this 1st day of August, A.D., 2005.

Notary Rubber Stamp Seal:

_____
Notary Public-State of Florida

_____
Print Notary Signature

GASTON R. ALVAREZ
MY COMMISSION # DD375083
EXPIRES: February 19, 2009
Ft. Notary Discount Assoc. Co.

F:\RealEstate\SatMortg[VALOR & GARCIA].001.wpd

# LOCAL BUSINESS TAX

JUNE 30, 2013

SEE REVERSE SIDE FOR MORE INFORMATION

140166

| ACCOUNT NUMBER | RECEIPT NUMBER | EXEMPTION | TOTAL NO. OF RECEIPTS | STATE/CC# |
|---|---|---|---|---|
|  | 7136088 |  | 1 OF 1 |  |

**DBA:** FRESH FISH MARKET & FRUITS

**Business Location:** OPERATING IN DADE COUNTY

**Municipality:** UNIN DADE COUNTY

**Owner/Corporation:** ATTENTION UNLIMITED CNTR FGP CORP

**Mailing Address:** 5200 SW 122 AVE MIAMI, FL 33175

**Business Type:** 220 LUNCH WAGON / TRUCK

**NAICS Code:** 722330

**Phone:** 305-244-5159

| DESCRIPTION OF TAXES | | TAXES LEVIED |
|---|---|---|
| (Past Due) | Prior Years | 225.00 |
| Current Year | 2014 | |
| County Wide Tax | | 40.00 |
| Beacon Council - Economic Dev | | 20.00 |
| Unincorporated Area Tax | | 40.00 |

**Amount Due by September 30, 2013    $325.00**

### Amount due with penalties if paid after due date

| OCTOBER 10% | NOVEMBER 15% | DECEMBER 20% | JANUARY 25% | FEBRUARY 25% + $100 |
|---|---|---|---|---|
| 335.00 | 340.00 | 345.00 | 350.00 | 450.00 |

↑ RETAIN FOR YOUR RECORDS ↑

↓ IF REQUESTING CHANGES, DETACH HERE AND RETURN THIS PORTION WITH YOUR PAYMENT ↓

Items with a ★ require documentation for requested change    **Receipt Number:** 7136088

| ★ Business Name | Phone Number |
|---|---|
| Business Address | Employees/Units |
| Mailing Address | ★ Owner Name |
| ★ C/O (President) | ★ Employer Identification Number or Social Security Number |
| State License or Certificate | |

**Your receipt is on hold.** To receive your receipt, you must submit copies of the following documents

↑ RETAIN FOR YOUR RECORDS ↑

↓ DETACH HERE AND RETURN THIS PORTION WITH YOUR PAYMENT ↓

**7136088**
RECEIPT NUMBER

FRESH FISH MARKET & FRUITS
OPERATING IN DADE COUNTY

140166

*7136088*

### Amount due with penalties if paid after due date    2013-14 LOCAL BUSINESS TAX

| OCTOBER 10% | NOVEMBER 15% | DECEMBER 20% | JANUARY 25% | FEBRUARY 25% + $100 |
|---|---|---|---|---|
| 335.00 | 340.00 | 345.00 | 350.00 | 450.00 |

**Amount Due**
by September 30, 2013
**$325.00**

Make checks payable to:
**Miami-Dade County Tax Collector** (in U.S. funds drawn on U.S. banks)

ATTENTION UNLIMITED CNTR FGP CORP
TOMAS DIAZ PRES
5200 SW 122 AVE
MIAMI, FL 33175

SIGNATURE REQUIRED

Application is hereby made for a receipt or permit for the business profession or occupation described hereon. I swear/affirm that the information is true and correct.

7000000000000000000000007136088201400000010000000000000008

# EXHIBIT 2

*CLAIM #4702*

# BankUnited
Banking For Locals, By Locals

REQ BY SHA                                  7815 NW 148 Street, Miami Lakes, FL 33016    PAGE    1
                                            ☎ 305.231.6400

TOMAS DIAZ                         DETAILED LOAN INFORMATION CAN BE FOUND
5200 SW 122ND AVE                 ON THE BANKUNITED WEBSITE:
MIAMI          FL 33175
                                  WWW.BANKUNITED.COM

                                  PLEASE CONTACT US AT 1-866-731-3454.

LOAN NUMBER: ▓▓▓▓▓▓
*************************************************************************************

------------------- CURRENT ACCOUNT INFORMATION -------------------

| DATE PAYMENT DUE | TOTAL PAYMENT AMOUNT | PRINCIPAL & INTEREST PAYMENT | LOAN INTEREST RATE | CURRENT PRINCIPAL BALANCE | ESCROW BALANCE |
|---|---|---|---|---|---|
| 05-01-06 | 2,504.99 | 0.00 | 7.50000 | 0.00 | 0.00 |

*************************************************************************************

                    ACTIVITY FOR PERIOD 01/01/01 - 06/01/06

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|---|
| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | AMOUNT | ----OTHER---- CODE/DESCRIPTION |

| PROCESS DATE | DUE DATE | CODE | DESCRIPTION | | | EFF DATE |
|---|---|---|---|---|---|---|
| 05-15-06 | 00-00 | 307 | ESCROW REFUND | | | |
| 2,253.32- | 0.00 | | 2253.32- | | | |
| | | | 0.00 | | NEW PRINCIPAL/ESCROW BALANCES | |
| 05-05-06 | 05-06 | 181 | LOAN PAID IN FULL | | | |
| 0.00 | 0.00 | 37,500.00 | 0.00 | | | |
| 05-05-06 | 05-06 | 181 | LOAN PAID IN FULL | | | |
| 0.00 | 1008,927.15 | 7,148.87 | 2253.32 | 55,829.34- | | |
| | | | 2253.32 | | NEW PRINCIPAL/ESCROW BALANCES | |
| 05-05-06 | 05-06 | 145 | ADJUSTMENT | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 05-05-06 | 05-06 | 173 | PAYMENT | | | |
| 55,829.35 | 0.00 | 0.00 | 0.00 | 55,829.35 | | |
| 05-05-06 | 05-06 | 173 | PAYMENT | | | |
| 999,999.99 | 0.00 | 0.00 | 0.00 | 999,999.99 | | |
| 05-05-06 | 05-06 | 173 | PAYMENT | | | |
| 125.25 | 0.00 | 0.00 | 0.00 | 125.25 1 | | |
| 05-05-06 | 05-06 | 173 | PAYMENT | | | |
| 8.75 | 0.00 | 0.00 | 0.00 | 8.75 P COURIER FEE | | |
| 05-05-06 | 05-06 | 173 | PAYMENT | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | 15.00 A FAX FEE | | |
| 04-24-06 | 05-06 | 493 | ARM LOAN ADJUSTMENT | | | |
| NEW INTEREST RATE: 0.07500 | | | NEW PRIN & INT PAYMENT:    2,504.99 | | | |
| 04-24-06 | 04-06 | 173 | PAYMENT | | | |
| 2,504.99 | 3,673.13- | 6,178.12 | 0.00 | | | |
| | 1,008,927.15 | | | | NEW PRINCIPAL/ESCROW BALANCES | |
| 04-17-06 | 04-06 | 152 | LATE CHARGE ASSESSMENT | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 125.25-1 | | |
| 03-16-06 | 04-06 | 175 | PRINCIPAL PAYMENT | | | |
| 2.00 | 2.00 | 0.00 | 0.00 | | | |
| | 1,005,254.02 | | | | NEW PRINCIPAL/ESCROW BALANCES | |

CIATH #4702

# BankUnited
Banking For Locals, By Locals

CUSTOMER ACCOUNT ACTIVITY STATEMENT                    DATE 06/13/06

REQ BY SHA                                                                    PAGE    2

7815 NW 148 Street, Miami Lakes, FL 33016
● 305.231.6400

TOMAS DIAZ
LOAN NUMBER: ▮▮▮▮

```
                 ACTIVITY FOR PERIOD 01/01/01 - 06/01/06
PROCESS    DUE    TRANSACTION           TRANSACTION              EFFECTIVE DATE
DATE       DATE   CODE                  DESCRIPTION              OF TRANSACTION
------------------------------------------------------------------------------
  TRANSACTION    PRIN. PAID/        ESCROW PAID/ ------------OTHER------------
  AMOUNT         BALANCE    INTEREST  BALANCE   AMOUNT  CODE/DESCRIPTION
------------------------------------------------------------------------------
03-16-06   04-06   493   ARM LOAN ADJUSTMENT
    NEW INTEREST RATE:  0.07375      NEW PRIN & INT PAYMENT:     2,504.99
03-16-06   03-06   173   PAYMENT
    2,504.00   3,547.00-  6,051.99      0.00        0.99-
             1,005,256.02                   NEW PRINCIPAL/ESCROW BALANCES
02-16-06   03-06   493   ARM LOAN ADJUSTMENT
    NEW INTEREST RATE:  0.07250      NEW PRIN & INT PAYMENT:     2,504.99
02-16-06   02-06   173   PAYMENT
    2,504.99   3,422.34-  5,927.33      0.00
             1,001,709.02                   NEW PRINCIPAL/ESCROW BALANCES
01-13-06   02-06   493   ARM LOAN ADJUSTMENT
    NEW INTEREST RATE:  0.07125      NEW PRIN & INT PAYMENT:     2,504.99
01-13-06   01-06   173   PAYMENT
    2,504.99   1,713.32    791.67      0.00
               998,286.68                   NEW PRINCIPAL/ESCROW BALANCES
01-11-06   01-06   170   INITIAL ESCROW DEPOSIT, CLOSING INTEREST
      26.39-      0.00     26.39-      0.00
01-11-06   01-06   142   LOAN SETUP
       0.00 1000,000.00-    0.00      0.00
             1,000,000.00                   NEW PRINCIPAL/ESCROW BALANCES
```

CLAIM # 4702

# EXHIBIT   3

CLAIM #4702

MIN: ████████████████          Loan Number: ████████████

# ADJUSTABLE RATE NOTE

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT
THE MONTHLY PAYMENT CAN INCREASE. THE PRINCIPAL AMOUNT TO REPAY
COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT
MORE THAN THE LIMIT STATED IN THIS NOTE.**

APRIL 27, 2006                    IRVINE                    CALIFORNIA
[Date]                            [City]                    [State]

5200 SOUTHWEST 122ND AVENUE, MIAMI, FLORIDA 33175
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 1,000,000.00        (this amount is called
"Principal"), plus interest, to the order of Lender.  Lender is PLATINUM CAPITAL GROUP, A
CALIFORNIA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

(A)  Interest Rate
Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest
at a yearly rate of        1.500  %.  The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in
Section 7(B) of this Note.

(B)  Interest Rate Change Dates
The interest rate I will pay may change on the 1st  day of  JULY, 2006                , and on
that day every month thereafter.  Each date on which my interest rate could change is called an "Interest Rate Change
Date."  The new rate of interest will become effective on each Interest Rate Change Date.

(C)  Interest Rate Limit
My interest rate will never be greater than        9.950 %.

(D)  Index
Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an index.  The
"Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities
adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve
Statistical Release entitled "Selected Interest Rates (h.15)" (the "Monthly Yields").  The Twelve Month Average is
determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.
The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the
"Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable
information.  The Note Holder will give me notice of this choice.

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE NOTE                    DocMagic ℮Ｆｏｒｍｓ 800-649-1362
RPC FORM 3524 (10/05) MODIFIED INSTRUMENT                                      www.docmagic.com
For Use in FLORIDA Only                    Page 1 of 5

CLAIM # 4702



PAY TO THE ORDER OF
RESIDENTIAL FUNDING CORPORATION
WITHOUT RECOURSE
PLATINUM CAPITAL GROUP,
A CALIFORNIA CORPORATION

BY
ABBE GERMINARY
Collena Fulton, II

PAY TO THE ORDER OF
Deutsche Bank Trust Company Americas as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

By
Judy Faber, Vice President

## Judy Faber - improper GMAC Affidavits Leading to Charges of Document Fabrication to Change Title

Ah, what a tangled web we weave when first we practice to deceive, said the bard.

And the web emanating from the GMAC affidavit improprieties extend much further than most may realize. Although GMAC continues to maintain that having its "robot signor" officers like Jeffrey Stephan provide affidavits on matters they know nothing about is a mere technical problem that they can remedy. In fact, an affidavit is a statement of someone with personal knowledge of a matter. Stephan signed as many as 10,000 documents a month and clearly could not have personal knowledge of the underlying situations. Deliberately preparing and submitting inaccurate documents in a legal proceeding is a fraud on the court, something most judges really do not like.

Predictably, lawyers who are contesting foreclosures are jumping on the affidavit issue and using it to open up broader issues with foreclosures where GMAC was the servicer of the loan. For instance, this letter to a judge in South Carolina, a judicial foreclosure state, discusses not only the role of an apparent fellow robot signor of Stephan, one Jack Kerr, but more critically, another document provided in this case stamped (not signed) by one Judy Faber, also of GMAC. **The Faber document transferred title to the party foreclosing in the case, so if the document is invalid, the plaintiff, in this case a Deutsche Bank trust, will lack standing to foreclose (legalese for "no tickie, no laundry"). Here is the critical section of the letter (on page 2):**

**Upon information and believe, Judy Faber has instructed document custodians in thousands of foreclosure cases to apply her stamped endorsement bearing her name after foreclosure commenced to an allonge and after a consumer had challenged the chain of title in the case. Upon information and belief, Ms. Faber and her document custodian team at facilities described in the Washington Post article attached to this letter have fabricated and changed title in thousands of foreclosure cases.**

This takes a wee bit of unpacking. The pooling and servicing agreement, which governs who does what when in a mortgage securitization, requires the note to be endorsed (just like a check, signed by one party over to the next), showing the full chain of title, and the minimum conveyance chain is A (originator) => B (sponsor) => C (depositor) => D (trust). The note, which is the borrower's IOU, is the critical document in 45 states. The mortgage, which is the lien, is a mere accessory to the note and can be enforced only by the proper note holder (the legalese is "real party of interest"). The required endorsements were never done.

Page 1

1   STATE OF INDIANA          MARION COUNTY SUPERIOR COURT

2   COUNTY OF MARION          CAUSE NO.: 49D06-0703-MF-013045
                   consolidated with: 49D10-0609-PL-40167
3   ----------------------------------------------------

4   U.S. Bank, NA as Trustee,

5            Plaintiff(s),

6       vs.

7   Mamie Robinson, Individually
    and as Personal Representative
8   of Jessie Robinson,

9            Defendant.
    ----------------------------------------------------

10

11             DEPOSITION TRANSCRIPT OF

12                  JUDY FABER

13               August 14, 2009

14                 10:10 A.M.

15                    at

16

17                GMAC RFC, LLC
               One Meridian Crossings
18          Minneapolis, Minnesota  55423

19

20

21

22

23

24

25   REPORTED BY:  Janet D. Winberg, RPR

**Page 1**

```
 1   STATE OF INDIANA          MARION COUNTY SUPERIOR COURT
 2   COUNTY OF MARION          CAUSE NO.: 49D06-0703-MF-012046
                               consolidated with: 49D10-0608-PL-461d7
 3   -----------------------------------------------
 4   U.S. Bank, NA as Trustee,
             Plaintiff(s),
 5
 6          vs.
 7   Wanie Robinson, Individually
     and as Personal Representative
 8   of Jessie Robinson,
 9          Defendant.
10   -----------------------------------------------
11           DEPOSITION TRANSCRIPT OF
12                JUDY FABER
13            August 14, 2008
14              10:10 A.M.
15                 at
16           GMAC RFC, LLC
            One Meridian Crossings
17       Minneapolis, Minnesota  55423
18
19
20
21
22
23
24
25   REPORTED BY:  James D. Winberg, RPR
```

CHASER COURT REPORTING
Phone (612) 888-8888 ** Fax (952) 228-1784 ** chaserreporting@aol.com

**Page 2**

```
     APPEARANCES:
       On Behalf of the Plaintiff(s):
 3
 4     Christine M. Jackson
       Chris Jackson Law, LLC.
 5     8953 Cedar Place Drive
       Suite 111-A
 6     Indianapolis, IN 46240
       chris@chrisjacksonlaw.com
 7
       On Behalf of the Defendants:
 8
       James M. Boyers
 9     Wooden & McLaughlin, LLP
       211 North Pennsylvania
10     One Indiana Square
       Suite 1800
11     Indianapolis, IN 46204
       jboyers@woodmclaw.com
12
     Also Present:
13
       Kathy Priore
14     Christine Buss
15
16
17
18
19
20
21
22
23
     NOTE:  Pursuant to Minnesota Rule of Civil Procedure
24            30.06, the original transcript will be
              delivered to the noticing party.
     NOTE:  Exhibits 1 - 8 were marked.
```

CHASER COURT REPORTING
Phone (612) 888-8888 ** Fax (952) 228-1784 ** chaserreporting@aol.com

**Page 3**

```
 1                 EXAMINATION INDEX
 2   By Mr. Boyers:  174 - 176, 181 - 181
 3   By Ms. Jackson:  4 - 174, 77 - 181
 4   -----------------------------------------------
 5                 OBJECTION INDEX
 6   Mr. Boyers:  9, 10, 12, 22, 68, 77, 88, 98, 107, 112,
 7   134, 138, 139, 139, 142, 190, 152, 154, 164, 166
     -----------------------------------------------
 8                 EXHIBIT INDEX
 9   Exhibit No. 1
     (Purchase Advice)
10   Marked.....................................4
11   Exhibit No. 2
     (Interim Certification/Exemption Report)
12   Marked.....................................4
13   Exhibit No. 3
     (Corporation Assignment of Mortgage)
14   Marked.....................................4
15   Exhibit No. 4
     (Complaint on Note and to Foreclose Mortgage...)
16   Marked.....................................4
17   Exhibit No. 5
     (Complaint on Note and to Foreclose Mortgage...)
18   Marked.....................................4
19   Exhibit No. 6
     (Note)
20   Marked.....................................4
21   Exhibit No. 7
     (Note)
22   Marked.....................................4
23   Exhibit No. 8
     (Affidavit of Judy Faber)
24   Marked.....................................4
25
```

Phone (612) 888-8888 ** Fax (952) 228-1784 ** chaserreporting@aol.com

**Page 4**

```
 1                 PROCEEDINGS
 2
 3           (Exhibits 1 - 8 marked.)
 4                  * * *
 5   (Witness sworn.)
 6                JUDY FABER,
 7       called as a witness, being first duly sworn,
 8       was examined and testified as follows:
 9                  * * *
10                EXAMINATION
11   BY MS. JACKSON:
12   Q.   Can you please say and spell your name for the
13        record?
14   A.   Judy Faber, F as in Frank.  A.  B as in Boy.
15        E-R.
16   Q.   And what is your current job position?
17   A.   I am a Vice President and a Director of
18        Residential Funding Corporation or Residential
19        Funding Company, LLC and GMAC Mortgage Company,
20        LLC.
21   Q.   Wow.
22   A.   Pretty impressive.
23   Q.   Does it all fit on your card?
24   A.   No.  I don't have cards.  Too expensive.
25   Q.   Ready.
```

**Page 5**

1    And how long have you worked for Residential
2  Funding Corporation?
3  A.    A little over 13 years.
4  Q.    Okay. And when you first started with
5  Residential Funding Corporation what was your
6  first job?
7  A.    A Records Services Manager.
8  Q.    Okay. And then at what time period did you move
9  to your new position?
10 A.    Well, it's the same position.
11 Q.    Okay.
12 A.    I received the title probably about a year after
13 I started.
14 Q.    Okay. Did your job duties change?
15 A.    No.
16 Q.    Okay. That makes it much easier.
17    Okay. And then I just want to ask just a
18 little bit...
19    First of all, have you ever been deposed
20 before?
21 A.    Yes.
22 Q.    Okay. So just briefly, if I say anything and
23 you don't understand it, --
24 A.    Uh-huh.
25 Q.    -- like I said, tell me and let me know.

**Page 6**

1    I'm struggling, trying to understand some of
2  your terminology and stuff. At times I'm just
3  trying to figure out how the process works.
4  A.    Okay.
5  Q.    If you need a restroom break, water break, any
6  kind of break, just let us know. If I've asked
7  you a question I would just like you to finish
8  answering the question before you go.
9  A.    Okay.
10 Q.    And yesterday I forgot to tell the witness, but
11 make sure that you try to always answer either
12 Yes or No because the court reporter can't do
13 the Uh-huhs and, --
14 A.    Okay.
15 Q.    -- you know, head bobs.
16    So can you tell me just a little bit about
17 your educational background?
18 A.    I have an undergraduate degree from the
19 University of Minnesota --
20 Q.    Uh-huh.
   A.    -- in business.
22 Q.    Okay.
23 A.    High school?
24 Q.    Well, yeah. And did you have any other
25 education beyond your undergraduate?

**Page 7**

1  A.    I do have a 2-year certificate, legal assistant
2  certificate --
3  Q.    Good.
4  A.    -- from North Hennepin Community College.
5  Q.    Okay. And part of the reason that you have been
6  offered to testify today is that you are
7  supposed to have knowledge of how the documents
8  are handled from the beginning of the loan
9  process when the documents first come into RFC
10 and then through the point they may be
11 transferred over to another entity; --
12 A.    Right.
13 Q.    -- is that correct?
14    MR. BOYERS: I'd just note an
15 objection --
16    MS. JACKSON: Uh-huh.
17    MR. BOYERS: -- because you talked about
18 the beginning of the loan process.
19    MS. JACKSON: Uh-huh.
20    MR. BOYERS: The beginning of the loan
21 process occurs before anything comes in to GMAC.
22 Just for clarity.
23    So if you're asking about the process from
24 the time it comes in to RFC, that's fine, but
25 the way you asked it suggested that the

**Page 8**

1  beginning of the loan process itself started
2  with RFC and that's a fact not in evidence.
3    MS. JACKSON: Absolutely.
4  BY MS. JACKSON:
5  Q.    You don't think I was asking you about what
6  another company did that you have no knowledge
7  of, did you?
8  A.    (Nodding.)
9  Q.    Okay.
10    So we are talking about just your duties at
11 Residential Funding Corporation.
12 A.    Okay.
13 Q.    And if I get any acronyms mixed up, please stop
14 and correct me; okay?
15 A.    (Nodding.)
16 Q.    So if you could tell me your job...
17    Have your job duties changed from 2005 from
18 what you do now?
19 A.    Um...
20    MR. BOYERS: Asked and answered.
21    MS. JACKSON: Well, she said she did the
22 same thing for 13 years. I don't know...
23    MR. BOYERS: If you can answer, --
24    THE WITNESS: Um...
25    MR. BOYERS: -- you can answer.

Page 9

1    THE WITNESS: They have changed. I
2    guess I would say Yes.
3    MS. JACKSON: Okay.
4    BY MS. JACKSON:
5    Q.    This is the other Pre thing we need to tell you
6    about depositions.
7        At various points in time Jim Boyers, with
8    an S, may go ahead and object and that has to do
9    with literally if we can use the information
10    later on, when everybody is basically noting it
11    for the objection.
12        Most of the time he's going to allow you to
13    answer the question. I mean he will tell you
14    specifically, *Do not answer that,* if not. So
15    a lot of times there will be objections, but we
16    will just kind of continue on.
17    BY MS. JACKSON:
18    Q.    So can you tell me what your job duties were in
19    2005?
20    A.    Well, in 2005 I directly managed people that did
21    the work.
22        In 2007 all those people were released and
23    the functions went to a vendor who does the work
24    for us now. So I now manage the vendor as
25    opposed to directly managing people.

Page 10

1    Q.    And when you say you managed people who did the
2    work, what type of work are we talking about?
3    A.    Work around managing both the origination files,
4    as they were received by the organization and
5    the collateral files as they were received by
6    the organization. And then also fulfillment of
7    requests, internal requests, external requests
8    for those documents or files.
9    Q.    Okay. And you just made a distinction between
10    original files and custodial files. Can you
11    explain to me...
12    A.    I don't think I --
13        MR. BOYERS: Could you read back her
14    answer, please?
15        (Record read.)
16        MS. JACKSON: Thank you.
17    BY MS. JACKSON:
18    Q.    The difference between the origination files and
19    the collateral files.
20    A.    Uh-huh.
21    Q.    Can you explain to me -- I mean you made a
22    distinction between the two, --
23    A.    Okay.
24    Q.    -- so can you tell me what the difference is?
25    A.    An origination file, which we also call a credit

Page 11

1    file, would be the documents that are used by
2    the underwriter, by the processor, to make the
3    decision as to whether they want to fund the
4    loan or not.
5    Q.    Okay.
6    A.    The collateral file/legal file we refer to as
7    the folder that contains the original Note and
8    copies of the mortgage and assignments, if any.
9        The legal file/collateral file is what is
10    held at the custodian.
11        The legal -- or the credit file is what's
12    held at off-site storage.
13    Q.    And was -- in 2005 was the legal file held off
14    site or was it still here at this location?
15        MR. BOYERS: At what point in the --
16        MS. JACKSON: 2005.
17        MR. BOYERS: In the process, though. At
18    what point in the process are you asking about?
19        MS. JACKSON: In 2005.
20    BY MS. JACKSON:
21    Q.    In 2005 were the collateral files still
22    maintained here at Residential Funding
23    Corporation by the custodian, as opposed to
24    off site?
25        MR. BOYERS: If you understand the

Page 12

1    question, you can answer.
2        My objection is not to the year you're
3    asking about, --
4        MS. JACKSON: Uh-huh.
5        MR. BOYERS: -- but to what point in
6    the process you are talking about.
7        MS. JACKSON: At what point in the
8    process.
9    BY MS. JACKSON:
10    Q.    Well, let's just start at the beginning.
11        So a file comes in from -- and how do you
12    want me to refer to -- in this particular case
13    the loan originator was Mercantile Mortgage. So
14    I want to refer to that type of entity.
15    A.    Okay.
16    Q.    Do you call them loan originators? Or what do
17    you --
18    A.    Or clients.
19    Q.    Clients. Okay.
20        Okay. So when a client file comes in...
21    A.    (Gesturing.)
22    Q.    No, that doesn't?
23    A.    No -- yeah, it's very difficult to answer to the
24    extent that we had different processes for
25    different clients and it's hard -- I didn't

## Page 145

1  or the signing of the endorsements and then the
2  date that they actually completed it.
3  Q.  Okay. All right. The Interim Certification
4      would also provide information about exceptions
5      to Notes?
6  A.  Um...
7  Q.  And just --
8  A.  Correct. Right.
9  Q.  And just for your ease, I'm going to --
10  A.  I think that was Exhibit 2.
11      MS. JACKSON:  Exhibit 2.
12      MR. BOYERS:  Yes.
13  BY MR. BOYERS:
14  Q.  Exhibit 2 is a copy of the Interim
15      Certification, which...
16      When you were talking about the Interim
17      Certification, is this an example of that?
18  A.  This is the detail behind it. There was another
19      piece of the Interim Certification that talked
20      about the stamping and endorsing piece that's
21      not included here.
22  Q.  Okay. Okay.
23  A.  But again, that was a summary, it wasn't a
24      detail.
25  Q.  Okay. Now this Exception Report, though, only

## Page 146

1  identified those -- it identified those loans
2  for which something had not been completed?
3  A.  Correct.
4      MS. JACKSON:  Objection. She didn't
5      prepare that document, so...
6  BY MR. BOYERS:
7  Q.  Your understanding of what this report provides
8      from Wells Fargo, as part of the standard
9      procedure, was the loans in which exceptions
10     remained to be resolved?
11  A.  Correct.
12  Q.  Okay. And then with respect to Exhibit 9, you
13     again testified that you didn't recall the
14     specific act of signing this affidavit; is that
15     your signature?
16  A.  Correct, it is.
17  Q.  And is that your handwriting --
18  A.  Yes.
19  Q.  -- with the date there?
20  A.  Yes.
21  Q.  And would you have signed this if the
22     information was not true and correct?
23  A.  No, I would not.
24  Q.  Okay. Ms. Jackson asked you some questions
25     about the use of the name of the actual trust on

## Page 147

1  some mortgage assignments and the use of the
2  trustee's name on mortgage assignments; do you
3  recall that?
4  A.  Yes.
5  Q.  Okay. To this day does Residential Funding
6      Company continue to endorse -- or I'm sorry --
7      prepare assignments which show the name of the
8      trustee?
9  A.  Yes.
10  Q.  Okay. And you testified earlier only in a few
11      limited jurisdictions is the actual security
12      identified by name?
13  A.  Correct.
14  Q.  Okay.
15  A.  And that's a very recent development.
16  Q.  Okay. Now she also asked you some questions
17      about assignments, preparing the assignments
18      and asked about the information that was put in
19      the mortgage assignment.
20      Whoever requested that an assignment be
21      prepared, was your department responsible for
22      independently verifying that the information
23      provided in that assignment was correct?
24  A.  Yes.
25  Q.  And that verification was based on the data

## Page 148

1  maintained on the specific loan?
2  A.  Yes.
3      MR. BOYERS:  I don't have any further
4      questions.
5      MS. JACKSON:  I just have a real quick
6      follow-up, since you introduced Exhibit 2. I
7      think we referred to that as an *Exception Sheet,*
8      *Exception Log.*
9      MR. BOYERS:  I think it was called an
10      *Interim --*
11      MS. JACKSON:  No, that was --
12      MR. BOYERS:  -- *Certification Report.*
13      MS. JACKSON:  But that's not -- you said
14      that was the backup -- backup information and
15      there was another document that went to it that
16      was the Interim Certification.
17      I think she said -- she said this was a
18      detail...
19      THE WITNESS:  The --
20      FURTHER EXAMINATION
21  BY MS. JACKSON:
22  Q.  I guess what is this report?
23  A.  This is a -- I would call this the *Exception,*
24      the *Interim Exception Report.*
25  Q.  Okay.

**Page 149**

1  A.  What Wells calls it, I'm not sure. That's what
2      I would call it.
3  Q.  Okay. That's how we'll call it, too.
        This *Interim Exception Report*, when your
        department received it, did it require that you
6       do anything with that information?
7  A.  This was not in my department.
8  Q.  Okay. Do you know what department it went to?
9  A.  It was another area within Records.
10 Q.  Do you know what they called it?
11 A.  Deal Support.
12 Q.  Deal Support?
13 A.  Well, no. Panel Certification.
14 Q.  Okay. Okay. And when you said that Wells Fargo
15     provided you Interim Certifications, were you
16     required to do anything with that information?
17 A.  Again, what they provided to me --
18 Q.  Uh-huh.
19 A.  -- was the report that showed them where they
20     were at as far as the endorsement stamping. It
21     was tied to the *Interim*. They did the stamping
22     and endorsing when they reviewed the file for
23     the Interim Certification.
24 Q.  Okay. And is that the report that you were
25     talking about where they told you if there was a

**Page 151**

1      here.
2  Q.  Okay.
3  A.  So, yes, there is a way.
4  Q.  Okay. And outside of receiving the Interim
5      Certificate and noting the progress, was there
6      anything else you had to do with that
7      information, your department, your Records
8      Department?
9  A.  No.
10 Q.  Okay.
11        MS. JACKSON: (Nodding.)
12        THE WITNESS: That's it.
13        MS. JACKSON: That's it.
14        (Discussion had off the record.)
15        MR. BOYERS: The witness will read and
16 sign her transcript.
17        (Concluded at 2:48 P.M.)
18            * * *

**Page 150**

1  percentage done for it?
2  A.  Correct.
3  Q.  Okay. And was there any way to determine from
4      the report whether a specific loan was stamped
5      or not?
6        MR. BOYERS: Object to the form of the
7  question. You're asking her if there's any way.
8        MS. JACKSON: Right.
9        MR. BOYERS: I think you're asking her
10 about her personal knowledge; right? And
11 you're -- therefore, if you're saying is there
12 any way, you're asking for opinion.
13       MS. JACKSON: Okay.
14       MR. BOYERS: She can answer, but I'm
15 just going to object.
16 Go ahead.
17       MS. JACKSON: On this particular
18 report --
19       MR. BOYERS: Pointing to Exhibit 2.
20 BY MS. JACKSON:
21 Q.  Exhibit 2. Is there any way to tell which one
22     has the Notes endorsed and which one does not?
23 A.  If they were not endorsed, --
24 Q.  Uh-huh.
25 A.  -- they would have shown up as an exception on

**Page 152**

1  STATE OF MINNESOTA  )
2                      :  ss  CERTIFICATE
   COUNTY OF WASHINGTON )
3
   I, Janet D. Winberg, hereby certify
4  that I reported the deposition of JUDY FABER, on
   the 14th day of August, 2009, in Minneapolis,
5  Minnesota, and that the witness was, by me,
   first duly sworn to tell the truth;
6
   That the testimony was transcribed by me and is
7  a true record of the testimony of the witness;
8  That I am not a relative, or employee, or
   attorney, or counsel of any of the parties; or a
9  relative or employee of such attorney or
   counsel;
10 That I am not financially interested in the
   action and have no contract with the parties,
11 attorneys or persons with an interest in the
   action that effects or has a substantial
12 tendency to affect my impartiality;
13 That the right to read and sign the transcript
   by the witness was reserved.
14
   WITNESS MY HAND AND SEAL THIS 31st day of
15 August, 2009.
16
17        JANET D. WINBERG
          Registered Professional Reporter
18        Notary Public
          Washington County, Minnesota.
19

CLAIM # 4702

# EXHIBIT    4

CLAIM # 4702

HONORABLE JUDGE PETER LOPEZ
73 WEST FLAGLER STREET OOM : OOCC 1201
MIAMI, FL 33130

> IN THE CIRCUIT COUT OF THE ELEVENTH
> JUDICIAL CIRCUIT OF FLORIDA IN AND FOR
> MIAMI-DADE COUNTY
> GENERAL JURISDICTION DIVISION
> CASE NO. 2007-16754-CA-01

TOMAS DIAZ- DEFENDANT
TO: PLAINTIFFS, IN REQUEST OF PRODUCTION

AFFIDAVIT BASED ON THE EVIDENCE PROVIDED

HONORABLE JUDGE, IM GRATEFUL FOR YOUR TIME AND THE
OPPORTUNITY TO DIRECT MYSELF TO YOU REGARDING THE CASE OF MY
PROPERTY. I WOULD LIKE TO ADD SOME MORE INFORMATION THAT WILL
SERVE AS AID IN MY CASE, SHOWN IN THE FOLLOWING ORDER OF
DOCUMENTS ATTACHED WITH THIS LETTER,

1. DEUTCHE BANK TR CO. AMERICAS AND THEIR AGENTS: MARSHALL C,
WATSON, P.A NOTOTORIOUS FOR FRAUD ACTIVITY AND PLEAD GUILTY
(EXHIBIT 1) PRESENT IN COURT MOTION FOR SUMMARY JUDGEMENT IN
MY CASE # 2006-23056-CA-01 DATE 02/20/2006. BETHANY HOOD IN NAME OF
DEUTCHE BANK NS MARSHALL C WATSON AGENTS AFFIDAVIT LEADING
TO CHARGES OF DOCUMENT FABRICATION TO CHANGE TITLE.

2. DEPOSITION OF BETHANY HOOD AND AFFIDAVIT (EXHIBIT 2) DISPLAYS
AS EVIDENCE THE NATURE OF HIS FRUDULENT ACTS IN MY CASE.

3. ORDER OF DIMISSAL, DISCHARGE./RELEASE OF HIS PENDING ORDER TO
VACATE JUDGEMENT CASE # 2006-23056 CA-01 (EXHIBIT 3) AND
REOPENING.

4. OPENING NEW COMPLAINT BY DEUTCHE BANK TR CO AMERICA CASE #
2007-16754-CA-01 AND NEW AGENTS LAW OFFICE OF DAVID J. STERN PA
NOTORIOUS FOR FRAUDULENT FABRICATION OF DOCUMENTS (EXHIBIT 4)
AND AFFIDAVIT IN SUPPORT OF PLAINTIFF MOTION FOR SUMMARY
JUDGEMENT SHERYL SAMNON ROBOSIGNER AS AUTHORIZED SIGNATURE
OF THE LAW OFFICE OF DAVID J STERN P.A

5. DEPOSITION OF CHERYL SAMONS (EXHIBIT 5)

6. JUDY FABER, IMPROPER AFFIDAVITS LEADING TO CHARGES OF
DOCUMENT FABRICATION IN MY CASE # 2007-16754-CA-0110, CHANGED

TITLE AND MANAGED TO DECEIVE THE COURT (EXHIBIT 6). JUDY FABER,
SIGNER VICE PRESIDENT RESIDENTIAL FUNDING CORPORATION.

7. DEPOSITION TRANSCRIPT OF JUDY FABER (EXHIBIT 7)

8 NOTARY PUBLIC STATE OF FLORIDA, NOTORIOUS FRAUDULENT
DOCUMENTS SIGNED BY RUTH MARIE PINERO ON AFFIDAVIT OF COSTS OF
THE LAW OFFICES OF DAVID J,. STERN (EXHIBIT 8)

9.FRAUDULENT MOTION FOR SUBSTITUTION OF PARTIES , DEUTCHE BANK
TRUST COMPANY PLAINTIFF REQUESTS TO TAKE TITLE IN THE NAME OF
AURORA LOAN SERVICING LLC. THE HONORABLE MARGARITA ESQUIROZ
CIRCUIT COURT JUDGE, WHOM PASSED AWAY, DID NOT GRANT THE
REQUEST FROM AURORA. (EXHIBIT 9)

10. AURORA LOAN SERVICING (AURORA BANK FSB TODAY) FRAUDULENT
ACT WITH MALICE. UNITED STATES OF AMERICA DEPARTMENT OF THE
TREASURY CONTROLLER OF THE CURRENCY (AMENDS OTD ORDER NO: ne
11-16 (EXHIBIT 10)

11. AURORA LOAN SERVICING (AURORA BANK) AND THEIR AGENTS
WITHOUT ASSIGNMENT LEGALLY AND CRIMINAL ACTIVITIES TRANSFER
TO NATIONSTAR. THE MORTGAGE (EXHIBIT 11)

12. QUALIFIED WRITTEN REQUEST UNDER RESPA AND FDCPA DEBT
VALIDATION DEMAND TO NATIONSTAR MORTAGE LLC ( JULY 30 2012) AND
AURORA LOAN SERVICING (EXHIBIT 12)

13. AFFIDAVIT OF ALEXIS MESA IN OPPOSITION TO TRUSTEES LEGAL
STANDING (EXHIBIT 13)

14. DECLARATION OF ALEXIS MESA (EXHIBIT 14)

15. FRAUDULENT FABRICATION OF ASSIGNMENT OF MORTGAGE BY
AGENT ABLITTSCOFIELD PC TO REVIEW TO NATIONSTAR LLC. IN BLANK
TO CHANGE TITLE MANAGED TO DECEIVE THE COURT (EXHIBIT 15) HOW
AURORA LOAN SERVICES ASSIGNMENT, SALE, OR TRANSFER OF
SERVICING RIGHTS TO NATIONSTAR WITHOUT POSSESION OF MORTGAGE,
NOTE OR ASSINMENT LEGALLY? THIS IS FRAUD. I WANT TO SEE THE
ORIGINAL PAPER IN MY CASE, THEY'RE LOST, DESTRYED OR MISPLACED
CONFIDENTIALITY AGREEMENTS.

16. RESIDENTIAL CAPITAL LLC AND CERTIAN OF ITS AFFILIATES HAVE
BANKRUPTCY CHAPTER 11 . DEUTSCHE BANK TRUST COMPANY IS
AFFILIATED TO THEM.I HAVE CLAIMS IN THE UNITED STATES
BANKRUPTCY COURT SOUTHERN DISTRICT IF NEW YORK ( EXHIBIT 16)

*Claim # 4702*

17. IM AN INFORMANT OF CLAIMS TO THE IRS WHISTLEBLOWER OFFICE DEPARTMENT OF THE TREASURY INTERNAL REVENUE SERVICE, WASHINGTON DC. 20224 AGAINST INSTITUTIONS AND INDIVIDUAL AGENTS INVESTIGATION IN PROGRESS FROM APRIL 2012. MY CLAIM # 20120075541 AND OBJECTION TO HONORABLE JUDGE MARTIN GLENN US BANKRUPTCY COURT OF NEW YORK. (EXHIBIT 17)
HONORABLE JUDGE LOPEZ BASED ON THE EVIDENCE PROVIDED I ASK OF YOU TO SAVE MY HOME, WHICH IS IN HANDS OF THESE FRAUDSTERS OR FRAUDULENT BANK ENTITIES.
I HAVE NOT PAID ANYTHING UNDER FRAUDULENT CIRCUMSTANCES.

RESPECTFULLY,


TOMAS DIAZ.

*[signature]* 07/10/2013

*Claim # 4702*

IN THE SUPREME COURT OF FLORIDA

THE FLORIDA BAR,

     Complainant,

v.

MARSHALL CRAIG WATSON,

     Respondent.

_____/

Supreme Court Case
No. SC-

The Florida Bar File Nos.
2011-51,042(17I); 2011-50,500(17I);
2011-50,734(17I); 2011-50,737(17I);
2011-51,143(17I); 2011-51,312(17I);
2011-51,783(17I); 2012-50,148(17I);
2012-51,090(17I); 2012-51,662(17I);
2012-51,774(17I); 2013-50,511(17I).

## CONDITIONAL GUILTY PLEA FOR CONSENT JUDGMENT

COMES NOW, the undersigned respondent, Marshall Craig Watson, and files this Conditional Guilty Plea pursuant to R. Regulating Fla. Bar 3-7.9(a).

1.     Respondent is, and at all times mentioned herein was, a member of The Florida Bar, subject to the jurisdiction of the Supreme Court of Florida.

2.     The respondent is currently the subject of Florida Bar disciplinary matters which have been assigned The Florida Bar File Nos.: 2011-51,042(17I); 2011-50,500(17I); 2011-50,734(17I); 2011-50,737(17I); 2011-51,143(17I); 2011-51,312(17I); 2011-51,783(17I); 2012-50,148(17I); and 2012-51,090(17I).

3.     As to the cases listed above in paragraph 2, there has been a finding of probable cause by the Seventeenth Judicial Circuit Grievance Committee "I". The following cases are pending at staff level: The Florida Bar File Nos.:

1

MCW

DAW   JGA

*Claim #4702*

compliance with paragraphs 5(A) and 11, nothing in this consent judgment shall preclude respondent from filing for reinstatement pursuant to rule 3-7.10.

13.   This Conditional Guilty Plea for Consent Judgment fully complies with all requirements of The Rules Regulating The Florida Bar.

Dated this ___7___ day of _____, 2012.

_____
Marshall Craig Watson
Respondent
1800 N.W. 49th Street, Suite 120
Fort Lauderdale, FL 33309-3092
(954) 453-0365
Florida Bar ID No.: 365505
mwatson@marshallwatson.com

Dated this _____ day of _____, 2012.

_____
Donald A. Wich, Jr.
Co-Counsel for Respondent
Donald A. Wich, Jr., P.A.
2036 N.E. 36th Street
Lighthouse Point, FL 33064-7596
(954) 785-3181
Florida Bar ID No.: 149718
wich3@msn.com

11

CLAIM #4702

DEUTSCHE BANK TRUST COMPANY
AMERICAS AS TRUSTEE,
Plaintiff,
vs.
TOMAS DIAZ, et al,
Defendants.

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT, IN AND FOR DADE
COUNTY, FLORIDA
CIVIL DIVISION
CASE NO.: 06-23056 CA 11

## ORDER ON PLAINTIFF'S EX PARTE MOTION TO DISSOLVE LIS PENDENS, DISMISS COMPLAINT, VACATE FINAL JUDGMENT, AND RELEASE ORIGINAL DOCUMENTS

**THIS CAUSE**, having come before the Court on Plaintiff's Ex Parte Motion to Dissolve Lis Pendens, Dismiss Complaint, Vacate Final Judgment, And Release Original Documents, and the Court being fully advised in the premises, it is hereby:

**ORDERED AND ADJUDGED** that:

1. The Plaintiff's Ex parte Motion to Dissolve Lis Pendens, Dismiss Complaint, Vacate Final Judgment is hereby **GRANTED**.

2. The Clerk of the Court shall release all the original documents forthwith to Plaintiff's counsel.

**DONE AND ORDERED** in Chambers at Miami, Dade County, Florida, this ___ day of _____, 2007.

_____
Circuit Judge

Book 26206 Page 4124 Total Pages 2
CFN # 20080109979 Case # 06-023056-CA-01
Rec. Date 02/08/2008 Amoorer

*Claim # 4702*

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT, IN AND FOR
DADE COUNTY, FLORIDA
CIVIL DIVISION
CASE NO.: 06-28056 CA 11

DEUTSCHE BANK TRUST COMPANY AMERICAS AS
TRUSTEE,
       Plaintiff,

vs.

TOMAS DIAZ, et al,
       Defendants.

---

## AFFIDAVIT OF INDEBTEDNESS

STATE OF _____MN_____ )
                        ) SS:
COUNTY OF _____Dakta_____ )

      BEFORE ME, the undersigned authority, personally appeared _____Bethany Hood_____, who being duly sworn, deposes and says:

    1.    Affiant is _Default Services Junior Officer_ of the servicing agent of the Plaintiff and is personally familiar with the loan, which is owned by the Plaintiff and is the subject matter of this action. The information hereinafter given as to the indebtedness arising by virtue of the execution of the note and mortgage sued upon in this action is contained in the original books and records maintained in the office of said servicing agent. Affiant has personal knowledge of the books and records of the servicing agent and how they are maintained as they relate to the mortgage loan owned by Plaintiff. These books and records include data compilations of the payments, including escrow payments and advances made and received on the mortgage loan in question, and are kept in the course of a regularly conducted business activity by said servicing agent. The entries are made at or near the time that each payment is received by persons with knowledge of the information being recorded. It is the regular practice of said servicing agent to make these entries at the time the payments are received. Affiant has actual and personal knowledge of the facts stated herein and is authorized to make this Affidavit.

    2.    The allegations of the Complaint filed in this action are true and correct.

06-09296
0441375243

*CLAIM#4702*

3.   There is now due and owing to the Plaintiff upon said note and mortgage the following amounts:

| | | |
|---|---|---|
| a. | Principal balance on note and mortgage | $ 997,798.80 |
| b. | Accrued interest through from 8/1/06 to | |
| | 12/20/06 (per diem: 222.11 ) | $ 37,494.35 |
| c. | Restructured Interest | $ |
| d. | Escrow: | $ 2,639.67 |

| | |
|---|---|
| Taxes | |
| Hazard Insurance | |
| Flood Insurance | 2,639.67 |
| Mortgage Insurance Premiums | |

| | | |
|---|---|---|
| e. | Pre-Acceleration Late Charges | $ 517.68 |
| f. | Property Appraisal | $ |
| g. | Property Inspections | $ 9.00 |
| h. | Non-Sufficient Funds | $ 15.00 |
| i. | Interest on Advances | $ |
| j. | Brokers Price Opinion | $ |
| k. | Bankruptcy Fees and Costs | $ |
| l. | Property Preservation | $ |
| m. | Escrow/Suspense Credit | -( $                    ) |

4.    On account of Defendants default under the note and mortgage sued upon herein, Plaintiff retained its attorney of record and instructed the filing of this action and agreed, bound and obligated itself to pay said attorney for his/her services on its behalf such sum as the Court shall adjudge to be reasonable.

_____
Affiant

Bethany Hood - Default Servicer
                    Junior officer

Sworn to and subscribed before me this
6 day of Nov , 2006.

_____

NOTARY PUBLIC, STATE OF MN
Commissioned Name of Notary Public James C. Morris
Personally known  X   or produced identification
Type of Identification Produced _____

06-09296
0441375243

JAMES C. MORRIS
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2 0 0 9

*CLAIM #4702*

**Brian Davies**

From:           Lynn Szymoniak [szymoniak@mac.com]
Sent:           Wednesday, October 20, 2010 6:16 PM
To:             Foreclosure Hamlet; Foreclosure Fraud; StopForeclosureFraud (DinSFLA);
                mortgagefrauds@aol.com; Deontos .is; JEFFREY BRODE; George Gingo; Adam Lamb;
                Lawrence J. Shapiro; adennis270@aol.com; Alina Virani; Ariane Ice; Brian Davies; Bruce
                Gittleman; Glenn Augenstien; Michael Olenick
Subject:        Please Circulate!


Mortgage Fraud

Bethany Hood
Lender Processing Services, Inc.
MERS

Action Date: October 20, 2010
Location: South Bend, IN

On September 30, 2010, U.S. Bankruptcy Judge Harry C. Dees, Jr., Northern District of
Indiana, South Bend Division, confronted head-on the widespread practice of employees of
mortgage servicing companies signing Mortgage Assignments with false job titles, in Koontz v.
EverHome Mortgage and Mortgage Electronic Registration Systems, Inc., Case No. 09-30024,
Proc. No. 10-3005. In this contested foreclosure, EverHome and MERS moved for summary
judgment, while the plaintiff homeowners argued that there were genuine issues of material
fact that precluded summary judgment. One such issue involved a Mortgage Assignment signed by
Bethany Hood as Vice President of Mortgage Electronic Registration Systems, Inc. ("MERS").
(Regular readers of Fraud Digest will recognize that Bethany Hood is a clerical employee of
Lender Processing Services who works in the Mendota Heights, MN office and who signs
thousands of mortgage documents monthly using at least 20 different job titles.) Here is what
the Court said about this: "MERS, in its Answer to the plaintiff's Complaint, admit(ted) that
Bethany Hood is not an employee of MERS. (cite omitted). The debtor claimed that the document
[assignment signed by Bethany Hood as a MERS officer] was fabricated and MERS has offered no
other explanation, nor has it submitted properly authenticated documentation of an
assignment. It appears to this Court that a fraudulent recorded Assignment of Mortgage might
still be found today in the St. Joseph's County Recorder's Office, despite MERS' knowledge of
the false signature. Indeed, MERS has completely sidestepped the fact that this Assignment
was signed by someone representing herself to be a Vice President of MERS, and it has
declined to explain why this false document was attached to the amended Proof of Claim... In
the view of this court, the conduct of the EverHome defendants and the MERS defendant -
reflecting a lack of transparency and determination not to provide information or documents
until required - has burdened both the debtor and this Court...On this case, the Creditors
have been forced to admit that a non-employee signed the Assignment of Mortgage, representing
herself to be a Vice President of MERS and other banks or mortgage companies held the
Mortgage and or Note at issue... Having determined that genuine issues of material fact
exist, the Court denies the Motions for Summary Judgment filed by the EverHome defendants and
MERS..." How many other Mortgage Assignments signed by individuals falsely claiming to be
Vice Presidents of MERS have been filed since 2008? It is likely that the number is greater
than ten million.

TRI-COUNTY
WILL CALL
WATSON TITLE & INSURANCE, INC.

WATSON TITLE INSURANCE, INC.
1800 N.W. 49th ST.
SUITE 120
FT. LAUDERDALE, FL 33309

CFN 2007R0084035
OR Bk 25305 Pg 0654 (1pg)
RECORDED 01/25/2007 08:40:02
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

CLAIM #4702

RECORD AND
RETURN TO

## CORPORATION ASSIGNMENT of MORTGAGE

Return To:
RESIDENTIAL FUNDING COMPANY, LLC
One Meridian Crossings
Minneapolis, MN 55423

MIN:                          MERS Phone: 1-888-679-6377
RPC Loan Number:
Seller Loan Number:

FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc. ("MERS")
AS NOMINEE FOR PLATINUM CAPITAL GROUP

the undersigned hereby grants, assigns and transfers to

Deutsche Bank Trust Company Americas as Trustee

3 Park Plaza, 16th Floor, Irvine, CA 92714-8505

all beneficial interest under that certain Mortgage dated 04/27/2006
executed by THOMAS DIAZ

TO/FOR:    THE UNDERSIGNED

and recorded in Book 24526 on Page 3829 as Instrument No. _____ on 5/15/2006 of official
Records in the County Recorder's Office of MIAMI-DADE County, Florida.

LEGAL:    AS IN MORTGAGE REFERENCED HEREIN

MORTGAGE AMOUNT: $1,000,000.00
PROPERTY ADDRESS:    5200 SOUTHWEST 122ND AVENUE MIAMI, FL 33175
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest,
and all rights accrued or to accrue under said Mortgage.

Mortgage Electronic Registration Systems, Inc. ("MERS")

BY: _____
NAME: Matt Favorite
TITLE: Vice President

STATE OF                    Minnesota )
COUNTY OF                  Hennepin )

On 10/26/2006 before me, the undersigned, a Notary Public in and for said State personally appeared Matt Favorite, Vice
President of Mortgage Electronic Registration Systems, Inc. ("MERS") personally known to me to be the person whose
name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized
capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the
instrument. WITNESS my hand and official seal.

_____
Notary Public in and for said State

KAREN E. STEFFENSEN
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 1-31-2010

Prepared 10/26/2006 by Matt Favorite, Residential
Funding Company, LLC, One Meridian Crossings,
Suite 100, Minneapolis, MN 55423, (952) 979-4000.

06-09296

**LOST NOTE AFFIDAVIT**

**AFFIDAVIT OF LOST NOTE**

**(Photocopy of Note Attached)**

**Loan Number** ▮▮▮▮▮

**STATE OF MINNESOTA**

**COUNTY OF HENNEPIN**

**On this 30 day of May 2007 before me appeared S. Seidel, Assistant Secretary who being first duly sworn, does depose and say that**

**Residential Funding Company, LLC**

Was the holder of a certain NOTE dated April 27, 2006 in the amount of **One Million  Dollars and 0/100 ($1,000,000.00)** made by THOMAS  DIAZ to Platinum Capital Group. and does further depose and say that said NOTE, a copy of which is attached as a true and correct photocopy of the front and back and any and all endorsements, has either been lost, misplaced, or destroyed and can not be produced.

**IN THE EVENT THE ORIGINAL NOTE IS HEREAFTER LOCATED, RESIDENTIAL FUNDING COMPANY, LLC SHALL DELIVER IT TO THE APPROPRIATE CUSTODIAN**

Residential Funding Company, LLC

By: _S. Seidel_

**S. Seidel**
**Assistant Secretary**

On _5-30-07_ before me, **B.Nolan**, personally appeared S. Seidel ☒ personally known to me - ☐ or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacity, and that by their signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

B. NOLAN
NOTARY PUBLIC-MINNESOTA

CR/A/A # 4702

AL NEWS STARTS HERE | TUESDAY, FEBRUARY 5, 2013

# ess

(561) 820-3704 or pb_business@pbpost.com

iness

THE MARKET REPORT

| | | |
|---|---|---|
| ▼ DOW | 13,880.08 | -129.71 |
| ▼ NASDAQ | 3,131.17 | -47.93 |
| ▼ S&P 500 | 1,495.71 | -17.46 |
| ▼ RUSSELL 2000 | 899.28 | -11.92 |
| ▼ 10-YR NOTE | 1.96% | -0.06 |
| ▼ CRUDE OIL | $96.17 | -$1.60 |

## FORECLOSURE ATTORNEY

# Bar ethics probe targets Stern

### Grievance panels find probable cause to pursue discipline in 17 cases against foreclosure mill boss

**By Kimberly Miller**
Palm Beach Post Staff Writer

The Florida Bar is seeking disciplinary action against Florida foreclosure baron David J. Stern, whose massive law firm collapsed in 2011 amid allegations that it mishandled the cases of the nation's largest mortgage holders by filing forged and fraudulent court documents.

Grievance committees found probable cause to pursue punishment in 17 cases stemming from formal complaints made by homeowners, defense attorneys, judges and a bank representative.

It's the first attempt by the Bar to hold Stern accountable for actions that occurred at his so-called "foreclosure mill," which grew quickly following the real estate crash to more than 1,500 employees and more than 140,000 cases

statewide. Ten probable cause findings were approved Jan. 25 with seven more following on Friday.

Stern's company closed in March 2011 after losing most of its clients, including federal mortgage backers Fannie Mae and Freddie Mac, as concerns about robo-signing hit lenders and law firms nationwide.

The allegations against Stern in which probable cause was found include notary fraud, backdating documents, misleading the court, failing to appear before the Fifth District Court of Appeal, failure of his attorneys to appear at hearings, and the inability of a Michigan-based bank to get clear title to a property because a lawsuit notice was never withdrawn from official records.

Attorney Jeff Tew, who is representing Stern, said he will defend against the charg-

es. The Bar has closed 19 complaints against Stern with no findings.

"Our position is David didn't do anything wrong, ethically or otherwise," Tew said. "He had a very complete system of supervision and didn't participate in any of the individual situations."

Stern, as well as a handful of other large law firms that represent banks in foreclosures, escaped state scrutiny when the courts ruled the attorney general's office could not subpoena law firms in its investigation of the companies.

"I was greatly relieved to hear that the Florida Bar is doing its job," said Fort Lauderdale attorney Kenneth Trent, who filed a complaint against Stern in August 2010, and was recently told that probable cause was found to move forward. "They still teach you in law school about ethics and these guys made a mockery of it."

The next step is for the Bar

to file a formal complaint with the Florida Supreme Court, which typically assigns the case to a circuit court chief judge, who then assigns it to a circuit judge who will act as a referee in the case. Because cases are referred to judges in the adjoining district, it is likely Palm Beach County Chief Judge Peter Blanc will get the case from the Supreme Court, said Ken Marvin, director of lawyer regulation for the Florida Bar. Stern's firm was based in Broward County.

In December, the owner of the Law Offices of Marshall C. Watson in Fort Lauderdale agreed to plead guilty to foreclosure-related offenses found during a Florida Bar investigation. A consent judgment signed by attorney Marshall C. Watson included a 91-day suspension, which requires him to close his firm and show proof of rehabilitation before being reinstated to the practice of law.

kmiller@pbpost.com

## TRAVEL ROYAL CARIBBEAN EARNINGS

# Royal Caribbean earnings fall

### Giant loses $393 million in fourth quarter as its Spanish cruise line declines

Associated Press

NEW YORK

"Looking forward, we see a tale of two continents; North

June 13, 2006

#BWNFNYZ
#ZSSPRWTQSR1#
+ 0006519 000002204 09ATRL  0932826  P38
Thomas Diaz
5200 SW 122nd Ave
Miami FL 33175-5529

Re: Homecomings Financial Loan Number ████████
    Property Address  5200 Southwest 122nd Avenu
                      Miami, FL 33175

Dear Thomas Diaz:

Welcome to Homecomings Financial℠, your new mortgage servicer!  Effective 07/01/06, your mortgage transfers to
Homecomings Financial from Platinum Capital Group.

**Your new Homecomings Financial loan number is 0441375243.  It is important that you write your loan number on all
payments and correspondence, so that we can identify your account and post your payments quickly and accurately.  Please
know that the transfer of your mortgage does not in any way affect the terms and conditions of your loan.**

**Payments** - Payments will be accepted by your current mortgage holder until 07/01/06.  Please mail any payments due on
or after  07/01/06 to:

                          Homecomings Financial
                          P.O. Box 650515
                          Dallas, TX  75265-0515

If you have already sent a payment for the current month, simply use one of the coupons attached for your next payment
due.  By sending your check to us, you authorize Homecomings Financial to convert the check into an electronic funds
transfer.  Your bank account may be debited the same day we receive your payment.  You will soon begin receiving
monthly billing statements from us.  Please keep this letter and extra coupons in case you need to make a payment before
you receive your first monthly billing statement.  After receiving your first statement, you can discard any remaining
coupons attached and use the coupon and return envelope provided in the monthly statement.

We invite you to enroll in our automated payment program, in which your monthly payments are automatically withdrawn
from your bank account on the day you specify.  Just visit us on the Internet at www.homecomings.com or call our
Customer Service Department at the number below and sign up today!

**CONTACTING US—You can access your up-to-date loan information via the Internet.  Just go to
www.homecomings.com and select the "View My Account Info" button.**  In addition, you are welcome to contact us at
1.800.206.2901.  Our automated phone system, which provides specific loan information and can answer many of your
questions, is available 24 hours a day, 7 days a week, and our helpful Account Managers are available from 8:00 a.m. to
7:00 p.m., Monday through Thursday, and 8:00 a.m. to 5:00 p.m. on Fridays, Central time.  We also provide the special
address below for your qualified, written requests.  Please be sure to note your loan number on your correspondence.

                          Correspondence Address:

                          Homecomings Financial
                          P.O. Box 890036
                          Dallas, TX  75389

Again, welcome to Homecomings Financial!  We look forward to having you as a customer and serving all of your
financing needs.

Sincerely,

Homecomings Financial

SX0289-0

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN
AND FOR MIAMI-DADE COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION
CASE NO: 2007-16754-CA

DEUTSCHE BANK TRUST COMPANY AMERICAS,
AS TRUSTEE
      PLAINTIFF

VS.

TOMAS DIAZ, ET AL
      DEFENDANT(S)

## EX PARTE MOTION TO RESET FORECLOSURE SALE

Plaintiff, by and through its undersigned counsel, hereby files this Ex Parte Motion to Reset Foreclosure Sale and in support thereof states:

1.    The Plaintiff filed its Complaint on JUNE 1, 2007.

2.    The Summary Final Judgment was entered on JANUARY 8, 2008 and the Foreclosure Sale was scheduled for MARCH 12, 2008. Then reset for AUGUST 1, 2008.

3.    On or about July 1, 2008, the Plaintiff voluntarily canceled the foreclosure sale while it pursued a possible settlement with the Defendant(s), TOMAS DIAZ.

4.    No settlement has been achieved and the Plaintiff now elects to proceed with the foreclosure sale.

WHEREFORE, Plaintiff requests that this Court enter an Order to Reset the Foreclosure Sale in this Cause.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Ex Parte Motion to Reset Sale was mailed this 15 day of October, 2008 to:

RANDALL NORDLUND, ESQUIRE
ATTORNEY FOR TOMAS DIAZ
ONE SE 3RD AVENUE
SUNTRUST INTERNATIONAL CENTER
SUITE 1980
MIAMI, FL 33131

UNKNOWN SPOUSE OF TOMAS DIAZ
10420 SW 58TH ST
MIAMI, FL 2835

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
1595 SPRING HILL ROAD, SUITE 310
VIENNA, VA 22182

BENEFICIAL FLORIDA, INC.
C/O CT CORPORATION SYSTEM, REGISTERED AGENT
1200 S. PINE ISLAND ROAD
PLANTATION, FL 33324

NELSON QUEVEDO
ANA VICKY QUEVEDO
1415 GARCIA AVENUE
CORAL GABLES, FL 33134

CURRENT TENANTS
5200 SW 122ND AVE
MIAMI, FL 33175

MARC BROWN
Law Offices of David J. Stern, P.A.
Attorney for Plaintiff
900 South Pine Island Road Suite 400
Plantation, FL 33324-3920
(954) 233-8000
Florida Bar #: 30077

Case #: 07-88388(HCNW)

CIAIM # 4702

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO: 2007-16754-CA

DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE

   PLAINTIFF

VS.

TOMAS DIAZ, ET AL

   DEFENDANT(S)

## AFFIDAVIT IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### EXHIBIT "A"

STATE OF FLORIDA

COUNTY OF BROWARD

BEFORE ME, an officer authorized to take oaths this day personally appeared CHERYL

SAMONS who, being first duly sworn, deposes and says:

1.     That your affiant is an authorized signatory of the Law Offices of David J. Stern,

P.A., as Attorney-in-Fact for HOMECOMINGS FINANCIAL, LLC, mortgage loan servicing

agent on behalf of the Plaintiff in the above styled action.  HOMECOMINGS FINANCIAL, LLC

has custody of and supervises the mortgage accounts and records of the Plaintiff including the

accounts and records of the note and mortgage herein involved.

2.     I have personal knowledge of the facts set forth herein and am authorized to make

this Affidavit on behalf of the Plaintiff.

3.     I have direct access to or have been provided with the business records of the

Plaintiff concerning the Note and Security Agreement, the Mortgage and other loan documents

CLAIM # 4702

which are the subject matter of this lawsuit, such records were made at or near the time by, or
from information transmitted by, a person with knowledge, such records were kept in the course
of the regularly conducted business activity of the plaintiff, and it was the regular practice of the
plaintiff to make such records.

4.      That each and every allegation in the Complaint is true.

5.      Plaintiff is the owner and holder of said Note and Mortgage; none of the defaults
alleged in the Complaint filed herein has been cured; and there remains due to Plaintiff on
account of said Note and Mortgage, the following sums:

| | |
|---|---|
| PRINCIPAL BALANCE OF NOTE: | $1,003,803.59 |
| INTEREST THEREON AT $220.01 PER DIEM FROM SEPTEMBER 1, 2006 TO OCTOBER 2, 2007: | $90,593.83 |
| LATE CHARGES: | $1,898.16 |
| INSPECTIONS CONDUCTED ON PROPERTY: | $130.50 |
| APPRAISAL(S): | $95.00 |
| NON-SUFFICIENT FUNDS: | $15.00 |
| AD VALOREM TAXES: | $27.274.68 |
| HAZARD INSURANCE PREMIUMS: | $23,310.74 |
| TOTAL DUE TO PLAINTIFF AS OF THE DATE HEREOF (EXCLUSIVE OF COSTS INCURRED BY PLAINTIFF'S ATTORNEY): | $1,147,121.50 |

5a.     All late charges were accrued prior to acceleration of the loan.

6.      The street address of the subject property is 5200 SE 122ND AVE, MIAMI, FL
33175.

7.      Interest on the note at the aforesaid rate shall continue to accrue at the daily rate of
$220.01 for each day after the date of this affidavit; and subsequent to the defaults alleged in the

*CLAIM # 4702*

7.    Interest on the note at the aforesaid rate shall continue to accrue at the daily rate of $220.01 for each day after the date of this affidavit; and subsequent to the defaults alleged in the Complaint filed herein, Plaintiff engaged its attorney of record and in so doing agreed and obligated itself to pay said attorneys a reasonable fee for their services.

8.    This affidavit is intended to show that there is available competent testimony which can be introduced at trial, if necessary.

9.    The undersigned Agent further states that the below-described Power of Attorney has not been heretofore revoked by the Principal and is still in full force and effect.

HOMECOMINGS FINANCIAL, LLC

By:
CHERYL SAMONS
as Authorized Signatory of The Law Offices of David J. Stern, P.A., pursuant to Corporate Resolution, Its Attorney-in-Fact, pursuant to Power of Attorney, both recorded in the Public Records of Broward County, Florida

STATE OF FLORIDA
COUNTY OF BROWARD

PERSONALLY APPEARED BEFORE ME, the undesigned authority in and for the aforesaid County and State, on this, the 10 day of September, 2007 within my jurisdiction, the within named CHERYL SAMONS, as Authorized Signatory of the Law Offices of David J. Stern, P.A., as Attorney in Fact for and on behalf of HOMECOMINGS FINANCIAL, LLC, known to me to be the person whose name is subscribed to the foregoing instrument, and she acknowledged to me that she executed the same for the purpose and consideration therein expressed as the act and deed of said corporation and in the capacity therein stated. She is personally known to me and did take an oath.

WITNESS my hand and official seal in the County and State last aforesaid this 10 day of September, 2007.

RUTH MARIE PINERO
MY COMMISSION # DD355210
EXPIRES: May 22, 2010
(407) 398-0163    Florida Notary Service.com

NOTARY PUBLIC: *Ruth Pinero*
MY COMMISSION EXPIRES: *May 22, 2010*

Sensor & Associates

Reporting and Transcription, Inc.

CIAIH # 4702

Page 1

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL
CIRCUIT IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO:   50 2008 CA 028558 XXXX MB

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS
TRUSTEE FOR MORGAN STANLEY ABS CAPITAL 1 INC.
TRUST 2006-HE4,

                    Plaintiff,

vs.

█████████████████████████ ; ANY AND ALL
UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER
AND AGAINST THE HEREIN NAMED INDIVIDUAL
DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR
ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM
AN INTEREST AS SPOUSES, HEIRS, DEVISEES,
GRANTEES OR OTHER CLAIMANTS; HYPOLUXO WEST
PROPERTY OWNERS ASSOCIATION, INC. F/K/A
CONCEPT HOMES OF LANTANA, PHASE 9, PROPERTY
OWNERS ASSOCIATION, INC; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC; JOHN DOE AND JANE
DOE AS UNKNOWN TENANTS IN POSSESSION,

                    Defendants.

_____/

                    900 South Pine Island Road
                    Plantation, Florida
                    Wednesday, May 20th, 2009
                    2:15 p.m.

            DEPOSITION OF CHERYL SAMONS

        Taken before Ruthanne Machson, Notary Public, in
and for the State of Florida at large in the above cause.

```
1              C E R T I F I C A T E   of   O A T H

2

3

4    The State of Florida, )

5    County of Broward    . )

6

7

8

9

10

11         I, the undersigned authority, certify that

12   CHERYL SAMONS did personally appeared before me on the

13   20th day of May, 2009 and was duly sworn.

14

15         WITNESS my hand and official seal this 31st of

16   May, 2009.

17

18

19

20   _____

     RUTHANNE MACHSON, Court Report

21   Notary Public - State of Florida
     Commission No. DD 774525

22   Expires March 31, 2012

23

24

25                   ---
```

nsor & Associates

Reporting and Transcription, Inc.

C l a i m # 4 7 0 2

1              A P P E A R A N C E S

2

3

4    ON BEHALF OF THE PLAINTIFF:

5

6         Law Offices of David J. Stern, P.A.

          900 S. Pine Island Road, Suite 400

7         Plantation, Florida 33324

          BY:  DONNA EVERTZ, ESQUIRE

8

9

10   ON BEHALF OF THE DEFENDANTS:

11

12        Ice Legal, P.A.

          1975 Sansburys Way, Suite 115

13        West Palm Beach, Florida 33411

          BY:  THOMAS E. ICE, ESQUIRE

14

15

16   ON BEHALF OF THE WITNESS:

17

18        DAVID C. BAKALAR, ESQUIRE

          450 N. Park Road, Suite 410

19        Hollywood, Florida 33021

20

21

22

23

24

25                      ---

CLAIM # 4702

nsor & Associates
Reporting and Transcription, Inc.

Page 3

```
 1                    I N D E X
 2
 3
        DIRECT EXAMINATION by Mr. Ice....................4
 4      CROSS EXAMINATION by Ms. Evertz...............114
        REDIRECT EXAMINATION by Mr. Ice..............115
 5      CROSS EXAMINATION by Mr. Bakalar.............118
 6
 7
 8                    E X H I B I T S
 9
10
11
12
        Exhibit:           Description:              Page:
13
14
15
16      A                  Assignment of Mortgage
                           for ███████████
17      ██████████                                    38
        B                  Mortgage for █████
18                         first three pages          49
        C                  MIN Summary                53
19      D                  Notice of Deposition       66
        E                  Corporate Resolution       68
20      F                  Agreement for Signing
                           Authority                  73
21      G                  Loan Information           79
        H                  Composite of Assignments
22                         Executed                   87
23
24
25                         ---
```

Sensor & Associates
Reporting and Transcription, Inc.

1    Thereupon,

2                         CHERYL SAMONS

3    having been first duly sworn or affirmed, was examined

4    and testified as follows:

5                         DIRECT EXAMINATION

6    BY MR. ICE:

7            Q.    Could you state your full name for the

8    record, please.

9            A.    Cheryl Samons.

10           Q.    Do you have a middle name?

11           A.    Lynn.

12           Q.    What is your business address?

13           A.    900 South Pine Island Road.

14           Q.    That's in Plantation?

15           A.    Yes.

16           Q.    What business is located there?

17           A.    The Law Offices of David Stern.

18           Q.    That is where you are employed?

19           A.    Yes, sir.

20           Q.    How long have you been employed here?

21           A.    Fourteen years.

22           Q.    I take it you have been deposed many times

23   before?

24           A.    Yes, sir.

25           Q.    How many times roughly?

**nsor & Associat.s** *CLAIM # 4702*
Reporting and Transcription, Inc.

Page 5

1        A.     Oh, four or five.  Really not many.  Four

2    or five.

3        Q.     Is it always in connection with your

4    execution of documents for Stern clients?

5        A.     No.

6        Q.     Okay.  How many cases have you given

7    depositions for your role in executing documents for

8    clients of David J. Stern, P.A?

9        A.     This will be my first.

10        Q.     Do you feel comfortable -- I mean you are

11    familiar with depositions?  I mean, I don't need to go

12    through the formalities?

13        A.     No, sir.

14        Q.     No, you don't feel comfortable or --

15        A.     No, you don't need to go through the

16    formalities.

17        Q.     What is your job title here?

18        A.     Operations Manager.

19        Q.     How long have you had that job title?

20        A.     Since I started.

21        Q.     Fourteen years?

22        A.     Yes, sir.

23        Q.     I understand you joined David Stern when he

24    left Shapiro and Fishman?

25        A.     Yes, sir.

**nsor & Associates**
Reporting and Transcription, Inc.

Page 7

```
 1          A.     Yes, sir.

 2          Q.     In addition to assignments you sometimes

 3   sign affidavits?

 4          A.     Yes, sir.

 5          Q.     How many documents do you sign, on average,

 6   say a week?

 7          A.     To be honest with you, sir, I don't know.

 8          Q.     Do you have any way of estimating how many

 9   documents you sign over a given time period?

10          A.     No, sir.

11          MR. BAKALAR:  Object to the form.  Document

12   is vague and over.

13          THE WITNESS:  Because I do sign a lot of

14   documents.

15          MR. BAKALAR:  A letter is a document.

16          THE WITNESS:  Right.  I sign letters, I

17   signs checks, I sign -- I mean, I sign a lot.

18   BY MR. ICE:

19          Q.     Fair enough.  I'm interested right now in

20   documents that are filed in Stern cases such as

21   assignments, affidavits, things that you are signing on

22   behalf of David Stern clients.

23          Can you estimate --

24          MR. BAKALAR:  Filed where, filed in a

25   recorder's office, in a court file?  Could you be
```

Ph. 561.682.0905 - Fax. 561.682.1771
1655 Palm Beach Lakes Blvd., Suite 500 - West Palm Beach, FL 33401

**Censor & Associates** *CLAIM # 4702*
Reporting and Transcription, Inc.

```
 1          more specific?

 2              MR. ICE:  Well, either one.

 3              THE WITNESS:  I don't have an estimate,

 4      sir.  I really don't.

 5  BY MR. ICE:

 6          Q.   Do you sign these kinds of documents,

 7      affidavits, assignments every day?

 8          A.   Yes, sir.

 9          Q.   How long do you spend each day executing

10      these kinds of documents?

11          A.   Probably two hours.

12          Q.   When you spend the two hours, can you

13      estimate how many of these assignments and affidavits and

14      documents you are executing you do in that two hours?

15          A.   Again, I would just be giving a random

16      guess, sir.  I don't know.  There are four floors.  There

17      are documents on every floor.  It would be just a number.

18      I have no idea.

19          Q.   Well, just so we can kind of get an idea.

20      I mean, we're not talking about four or five documents,

21      correct?

22          A.   No, sir.

23          Q.   Would you say that it's more than a

24      hundred?

25          A.   If I had to guess, yes, sir.
```

nsor & Associates   CLAIM # 4702
Reporting and Transcriptions, Inc.

Page 48

1       Q.      Is Wells Fargo Home Mortgage a client of

2  David J. Stern, P.A?

3       A.      Yes.

4       Q.      Just to be clear, before I had asked about

5  Wells Fargo Bank, NA?

6       A.      Uh-huh.

7       Q.      Is that a yes?

8       A.      Yes.

9       Q.      Is there a written agreement between Wells

10 Fargo Home Mortgage and David J. Stern, P.A. for legal

11 services?

12      A.      Off the top of my head, I do not know.

13      Q.      Is Deutsche Bank National Trust Company a

14 client of David J. Stern, P.A?

15      A.      No.

16      Q.      Exhibit A also says that MERS is assigning

17 the note, correct?

18      A.      Yes.

19      Q.      Did MERS ever have any ownership of the

20 note in order to assign it?

21      A.      Yes.

22      Q.      When did it acquire ownership of the note?

23      A.      I do not know.

24      Q.      Why is it that you believe MERS had

25 ownership of the note?

nsor & Associates *CLAIM # 4702*
Reporting and Transcription, Inc.

Page 90

1    printout from MyFlorida.com Notary Public Commission

2    Detail for Valerie Nemes, correct?

3         A.    Yes.

4         Q.    And it shows that the issue date for her

5    commission was August 20th of 2008, correct?

6         A.    That's what it says, yes.

7         Q.    So how is it possible that this was

8    notarized on June 19th, 2007 over a year before she was

9    issued that commission?

10        A.    I can't testify to that.  I didn't notarize

11   it.

12        Q.    Okay.  Do you know what the real date this

13   was executed?

14        A.    I don't off the top of my head because I

15   don't remember this particular piece of paper.

16        Q.    Is there any way to reconstruct that

17   now?

18        A.    Not to my knowledge, no.

19        Q.    Would you agree with the statement that

20   this assignment was backdated so that it would appear to

21   have been executed right before the case was filed?

22        A.    No, I would not.

23        Q.    Michele Grant is one of the witnesses on

24   that assignment, correct?

25        A.    Yes.

1          you mean by pertaining when you say it.

2                    MR. ICE:  Any document that lists the name

3          of the Plaintiff.

4                    MR. BAKALAR:  Okay.

5     BY MR. ICE:

6               Q.    Plaintiff's name is Deutsche Bank National

7     Trust Company, as Trustee for Morgan Stanley ABS Capital

8     1 Inc. Trust 2006-HE4?

9               A.    Okay.

10              Q.    Everything after the 4, which would be

11    Morgan Stanley ABS Capital 1 Inc. Trust 2006-HE4, is the

12    name of the trust?

13              A.    Okay.

14              Q.    Correct?

15              A.    Yes.

16              Q.    That's not the name of a company?

17              A.    Are you asking me or telling me?

18              Q.    I'm asking you.

19                    MR. BAKALAR:  What is your question?

20          Objection to the form of the question.  It doesn't

21          seem like you're asking any questions.

22                    MR. ICE:  Objection noted.  You can answer.

23                    THE WITNESS:  I don't know.

24    BY MR. ICE:

25              Q.    Do you know what the initials ABS stand for

**ensor & Associates**
Reporting and Transcription, Inc.

CTA/4 # 4702

Page 120

1                    C E R T I F I C A T E
2
3
    The State of Florida,        )
4   County of Broward.           )
5
6
              I, RUTHANNE MACHSON, Court Reporter and Notary
7   Public in and for the State of Florida at large, do
    hereby certify that I was authorized to and did
8   stenographically report the deposition of CHERYL SAMONS;
    that a review of the transcript was not requested; and
9   that the foregoing pages, numbered from 1 to 118,
    inclusive, are a true and correct transcription of my
10  stenographic notes of said deposition.
11            I further certify that said deposition was
    taken at the time and place hereinabove set forth and
12  that the taking of said deposition was commenced and
    completed as hereinabove set out.
13
              I further certify that I am not an attorney or
14  counsel of any of the parties, nor am I a relative or
    employee of any attorney or counsel of party connected
15  with the action, nor am I financially interested in the
    action.
16
              The foregoing certification of this transcript
17  does not apply to any reproduction of the same by any
    means unless under the direct control and/or direction of
18  the certifying reporter.
19            DATED this 31st day of May, 2009.
20
21        *Ruthanne Machson*
22        ────────────────────────────
          RUTHANNE MACHSON, Court Report
          Notary Public - State of Florida
23           Commission No. DD 774525
             Expires March 31, 2012
24
25                     ---

FILE COPY

IN THE CIRCUIT COURT OF 11TH JUDICIAL
CIRCUIT, IN AND FOR MIAMI-DADE COUNTY,
FLORIDA
GENERAL JURISDICTION DIVISION
CASE NO: 2007-16754-CA

*CLAIM #4705*

DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE

    PLAINTIFF    *Trust*

VS.

TOMAS DIAZ, ET AL

    DEFENDANT(S)

## EX PARTE MOTION TO VACATE SUMMARY FINAL JUDGMENT

COMES NOW, Plaintiff, DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE, by and through its undersigned counsel, hereby files this Ex Parte Motion to Vacate Summary Final Judgment and in support therefore states:

1.    That on JANUARY 10, 2008, a Summary Final Judgment of Foreclosure was entered.

2.    Plaintiff has discovered additional and necessary defendant(s) to this action.

WHEREFORE, Plaintiff respectfully request that this Court enter an Order Vacating Summary Final Judgment.

I HEREBY CERTIFY that on this 1st day of September, 2010, a true and correct copy of the foregoing Motion to Vacate Summary Final Judgment was mailed to:

RANDALL NORDLUND, ESQUIRE
ATTORNEY FOR TOMAS DIAZ
ONE SE 3RD AVENUE
SUNTRUST INTERNATIONAL CENTER, SUITE 1980
MIAMI, FL 33131

UNKNOWN SPOUSE OF TOMAS DIAZ
10420 SW 58TH ST
MIAMI, FL 2835

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.
C/O CORPORATE COUNSEL
3300 S. W. 34th AVE., SUITE #101
OCALA, FL 34474

BENEFICIAL FLORIDA, INC.
C/O CT CORPORATION SYSTEM, R. A.
1200 S. PINE ISLAND ROAD
PLANTATION, FL 33324

NELSON QUEVEDO AND ANA VICKY QUEVEDO
1415 GARCIA AVE.
CORAL GABLES, FL 33134

CURRENT TENANTS
5200 SW 122ND AVE.
MIAMI, FL 33175

RYAN D. JOHNSON
Law Offices of David J. Stern, P.A.
900 South Pine Island Road, #400
Plantation, Florida 33324-3920
(954) 233-8000
Fla. Bar No.: 69156

07-88388 (HCNW)

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL
CIRCUIT, IN AND FOR MIAMI-DADE COUNTY,
FLORIDA
GENERAL JURISDICTION DIVISION
CASE NO: 2007-16754-CA

DEUTSCHE BANK TRUST COMPANY
AMERICAS, AS TRUSTEE
      PLAINTIFF

VS.

TOMAS DIAZ, ET AL
      DEFENDANT(S)

**ORDER GRANTING PLAINTIFF'S EX PARTE MOTION TO RESET FORECLOSURE SALE**

    **THIS CAUSE,** having come before the Court upon Plaintiff's Ex Parte Motion to Reset Foreclosure Sale, and the same having been considered, and the Court being otherwise fully advised in the premises, it is hereby:

    **ORDERED AND ADJUDGED** as follows:

    1. That Plaintiff's Motion to Reset Foreclosure Sale be and the same is hereby **GRANTED**.

    2. That the foreclosure sale in this cause is reset for _2/4/09_, 2008 at ROOM 908 of the MIAMI-DADE County Courthouse, at 11:00 a.m. at 140 W. FLAGLER STREET, MIAMI, Florida.

    **DONE AND ORDERED** in Chambers at MIAMI-DADE County, MIAMI, this ____ day of _____, 2008.

                                _____
                                Margarita Esquiroz, Circuit Court Judge

Copies to:
LAW OFFICE OF DAVID J. STERN, P.A.
900 SOUTH PINE ISLAND ROAD, SUITE 400
PLANTATION, FL 33324-3920

*C/AIM # 4702*

**Mario Kenny ™**

---

# CASE NO.: 50 2008 CA 035677 XXXX MB+AURORA LOAN SERVICES, LLC.,+EDZER B. RICHARD a/k/a EDZER RICHARD, et al.,+DEPOSITION OF JASON BURGE+ full deposition transcript+by Brian Korte

Posted on March 31, 2012 | Leave a comment

Rate This

1

1 IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

2
CASE NO.: 50 2008 CA 035677 XXXX MB

3

4 AURORA LOAN SERVICES, LLC.,

5 Plaintiff(s),

6 vs.

7 EDZER B. RICHARD a/k/a
EDZER RICHARD, et al.,

8
Defendant(s).

9 _____/

10
DEPOSITION OF JASON BURGE

11

12

Follow

CLAIM #4702

13 Tuesday, January 31, 2012

1:00 p.m. – 1:35 p.m.

*Theme: Coraline by Automattic.*
*Blog at WordPress.com.*

14

15

16 2041 Vista Parkway
Suite 102
17 West Palm Beach, Florida 33411

1 APPEARANCES:

2 ON BEHALF OF THE PLAINTIFF(S):

3 JOHN A. SALCEDO, ESQUIRE
LAW OFFICES OF MARSHALL C. WATSON, P.A.
4 1800 N.W. 49th Street, Suite 120
Fort Lauderdale, Florida 33309
5
ON BEHALF OF THE DEFENDANT(S):
6
BRIAN W. KORTE, ESQUIRE
7 -and-
ALLEGRA FUNG, ESQUIRE
8 KORTE & WORTMAN, P.A.
2041 Vista Parkway, Suite 102
9 West Palm Beach, Florida 33411

1 – – –
I N D E X
2 – – –

3 WITNESS DIRECT CROSS REDIRECT RECROSS

4 JASON BURGE

5 By Mr. Korte: 4

6

– – –
E X H I B I T S
10 – – –

Follow

*CLAIM # 4702*

37

1 C E R T I F I C A T E

2 STATE OF FLORIDA

3 COUNTY OF PALM BEACH

4

5 I, Tracy Lyn Fazio, Notary Public in and
for the State of Florida at Large, do hereby certify
6 that the aforementioned witness was by me first duly
sworn to testify the whole truth; that I was
7 authorized to and did report said deposition in
stenotype; and that the foregoing pages are a true
8 and correct transcription of my shorthand notes of
said deposition.
9
I further certify that said deposition was
10 taken at the time and place hereinabove set forth
and that the taking of said deposition was commenced
11 and completed as hereinabove set out.

12 I further certify that I am not attorney or
counsel of any of the parties, nor am I a relative or
13 employee of any attorney or counsel of party connected
with the action, nor am I financially interested in the
14 action.

15 The foregoing certification of this
transcript does not apply to any reproduction of the
16 same by any means unless under the direct control
and/or direction of the certifying reporter.
17
Dated this 1st day of February, 2012.
18

19

20

21 _____

Follow

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN
AND FOR MIAMI-DADE COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION
CASE NO: 2007-16754-CA

*CLAIM #4702*
*TOMAS DIAZ*
*5200 SW 122 AVE MIAMI*
*33175*

DEUTSCHE BANK TRUST COMPANY AMERICAS,
AS TRUSTEE
       PLAINTIFF

VS.

TOMAS DIAZ, ET AL
       DEFENDANT(S)

## EX PARTE MOTION TO RESET FORECLOSURE SALE

Plaintiff, by and through its undersigned counsel, hereby files this Ex Parte Motion to Reset Foreclosure Sale and in support thereof states:

1. The Plaintiff filed its Complaint on JUNE 1, 2007.

2. The Summary Final Judgment was entered on JANUARY 8, 2008 and the Foreclosure Sale was scheduled for MARCH 12, 2008.

3. On or about MARCH 12, 2008, the Plaintiff voluntarily canceled the foreclosure sale. DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE sold the loan to AURORA LOAN SERVICING, LLC.

4. No settlement has been achieved and the Plaintiff now elects to proceed with the foreclosure sale.

5. Plaintiff request to take title in the name of **AURORA LOAN SERVICING, LLC.**

WHEREFORE, Plaintiff requests that this Court enter an Order to Reset the Foreclosure Sale in this Cause.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Ex Parte Motion to Reset Sale was mailed this _9_ day of _May_, 2008 to:

RANDALL NORDLUND, ESQUIRE
ATTORNEY FOR TOMAS DIAZ
ONE SE 3RD AVENUE
SUNTRUST INTERNATIONAL CENTER
SUITE 1980
MIAMI, FL 33131

UNKNOWN SPOUSE OF TOMAS DIAZ
10420 SW 58TH ST
MIAMI, FL 2835

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
1595 SPRING HILL ROAD, SUITE 310
VIENNA, VA 22182

BENEFICIAL FLORIDA, INC.
C/O CT CORPORATION SYSTEM, REGISTERED AGENT
1200 S. PINE ISLAND ROAD
PLANTATION, FL 33324

NELSON QUEVEDO
ANA VICKY QUEVEDO
1415 GARCIA AVENUE
CORAL GABLES, FL 33134

MATTHEW L. KAHL
Law Offices of David J. Stern, P.A.
Attorney for Plaintiff
900 South Pine Island Road Suite 400
Plantation, FL 33324-3920
(954) 233-8000
Florida Bar #: 766801

Case #: 07-88388(HCNW)

IN THE CIRCUIT COURT THE 11TH JUDICIAL
CIRCUIT, IN AND FOR MIAMI-DADE COUNTY,
FLORIDA
GENERAL JURISDICTION DIVISION
CASE NO: 2007-16754-CA

DEUTSCHE BANK TRUST COMPANY
AMERICAS, AS TRUSTEE
             PLAINTIFF

VS.

TOMAS DIAZ, ET AL
             DEFENDANT(S)

## ORDER GRANTING PLAINTIFF'S EX PARTE MOTION TO RESET FORECLOSURE SALE

**THIS CAUSE,** having come before the Court upon Plaintiff's Ex Parte Motion to Reset Foreclosure Sale and the same having been considered, and the Court being otherwise fully advised in the premises, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. That Plaintiff's Motion to Reset Foreclosure Sale be and the same is hereby **GRANTED**.

2. That the foreclosure sale in this cause is reset for _August 1_, 2008 in Room 908 of the MIAMI-DADE County Courthouse, at 11:00 a.m. at 140 W. FLAGLER STREET, MIAMI, Florida.

3. Plaintiff request to take title in the name of **AURORA LOAN SERVICING, LLC** _is granted. w/_

**DONE AND ORDERED** in Chambers at MIAMI-DADE County, MIAMI, this ____ day of _____, 2008.

_JUL 01 2008_

_Margarita_
Margarita Esquiroz, Circuit Court Judge

Copies to:

LAW OFFICE OF DAVID J. STERN, P.A.
900 SOUTH PINE ISLAND ROAD, SUITE 400
PLANTATION, FL 33324-3920

RANDALL NORDLUND, ESQUIRE
ATTORNEY FOR TOMAS DIAZ
ONE SE 3RD AVENUE
SUNTRUST INTERNATIONAL CENTER
SUITE 1980
MIAMI, FL 33131

UNKNOWN SPOUSE OF TOMAS DIAZ
10420 SW 58TH ST
MIAMI, FL 2835

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
1595 SPRING HILL ROAD, SUITE 310
VIENNA, VA 22182

BENEFICIAL FLORIDA, INC.
C/O CT CORPORATION SYSTEM, REGISTERED AGENT
1200 S. PINE ISLAND ROAD
PLANTATION, FL 33324

NELSON QUEVEDO
ANA VICKY QUEVEDO
1415 GARCIA AVENUE
CORAL GABLES, FL 33134

Case #: 07-88388(HCNW)

*CLAIM # 4702*

## UNITED STATES OF AMERICA
### Before The
### OFFICE OF THRIFT SUPERVISION

|  |  |
|---|---|
| In the Matter of ) | Order No.: NE-11-16 |
| ) | |
| **AURORA BANK FSB** ) | Effective Date: April 13, 2011 |
| ) | |
| Wilmington, Delaware ) | |
| OTS Docket No. 06069 ) | |

## STIPULATION AND CONSENT TO ISSUANCE OF A CONSENT ORDER

The Office of Thrift Supervision (OTS) intends to impose a Consent Order on

Aurora Bank FSB (Association) pursuant to 12 U.S.C. § 1818(b), for unsafe or unsound banking

practices relating to mortgage servicing and the initiation and handling of foreclosure

proceedings;

The Association, in the interest of compliance and cooperation, enters into this

Stipulation and Consent to Issuance of a Consent Order (Stipulation) and consents to the

issuance of a Consent Order (Order);

In consideration of the above premises, the OTS, through its authorized representative,

and the Association, through its duly elected and acting Board of Directors, stipulate and agree to

the following:

### Jurisdiction.

1.      The Association is a "savings association" within the meaning of 12 U.S.C. § 1813(b)

and 12 U.S.C. § 1462(4).  Accordingly, the Association is "an insured depository institution" as

Aurora Bank FSB
Stipulation and Consent to Issuance of a Consent Order
Page 1 of 5

*CLAIM # 4702*

that term is defined in 12 U.S.C. § 1813(c).

2.      Pursuant to 12 U.S.C. § 1813(q), the Director of the OTS is the "appropriate Federal banking agency" with jurisdiction to maintain an administrative enforcement proceeding against a savings association. Therefore, the Association is subject to the authority of the OTS to initiate and maintain an administrative cease and desist proceeding against it pursuant to 12 U.S.C. § 1818(b).

**Consent.**

3.      The Association, without admitting or denying any wrongdoing, consents to the issuance by the OTS of the accompanying Order. The Association further agrees to comply with the terms of the Order upon the Effective Date of the Order and stipulates that the Order complies with all requirements of law.

**Finality.**

4.      The Order is issued by the OTS under 12 U.S.C. § 1818(b). Upon the Effective Date, the Order shall be a final order, effective, and fully enforceable by the OTS under the provisions of 12 U.S.C. § 1818(i).

**Waivers.**

5.      The Association waives the following:

(a)      the right to be served with a written notice of the OTS's charges against it as provided by 12 U.S.C. § 1818(b) and 12 C.F.R. Part 509;

(b)      the right to an administrative hearing of the OTS's charges as provided by 12 U.S.C. § 1818(b) and 12 C.F.R. Part 509;

Aurora Bank FSB
Stipulation and Consent to Issuance of a Consent Order
Page 2 of 5

*CLAIM # 4702*

(c)    the right to seek judicial review of the Order, including, without limitation, any such right provided by 12 U.S.C. § 1818(h), or otherwise to challenge the validity of the Order; and

(d)    any and all claims against the OTS, including its employees and agents, and any other governmental entity for the award of fees, costs, or expenses related to this OTS enforcement matter and/or the Order, whether arising under common law, federal statutes, or otherwise.

**OTS Authority Not Affected.**

6.    Nothing in this Stipulation or accompanying Order shall inhibit, estop, bar, or otherwise prevent the OTS from taking any other action affecting the Association if at any time the OTS deems it appropriate to do so to fulfill the responsibilities placed upon the OTS by law.

**Other Governmental Actions Not Affected.**

7.    The Association acknowledges and agrees that its consent to the issuance of the Order is solely for the purpose of resolving the matters addressed herein, consistent with Paragraph 6 above, and does not otherwise release, discharge, compromise, settle, dismiss, resolve, or in any way affect any actions, charges against, or liability of the Association that arise pursuant to this action or otherwise, and that may be or have been brought by any governmental entity other than the OTS.

**Miscellaneous.**

8.    The laws of the United States of America shall govern the construction and validity of this Stipulation and of the Order.

Aurora Bank FSB
Stipulation and Consent to Issuance of a Consent Order
Page 3 of 5

*CLAIM # 4707*

9.    If any provision of this Stipulation and/or the Order is ruled to be invalid, illegal, or

unenforceable by the decision of any Court of competent jurisdiction, the validity, legality, and

enforceability of the remaining provisions hereof shall not in any way be affected or impaired

thereby, unless the Regional Director in his or her sole discretion determines otherwise.

10.    All references to the OTS in this Stipulation and the Order shall also mean any of the

OTS's predecessors, successors, and assigns.

11.    The section and paragraph headings in this Stipulation and the Order are for convenience

only and shall not affect the interpretation of this Stipulation or the Order.

12.    The terms of this Stipulation and of the Order represent the final agreement of the parties

with respect to the subject matters thereof, and constitute the sole agreement of the parties with

respect to such subject matters.  Nothing in this Stipulation or the Order, express or implied,

shall give to any person or entity, other than the parties hereto, and their successors hereunder,

any benefit or any legal or equitable right, remedy or claim under this Stipulation or the Order.

13.    The Stipulation and Order shall remain in effect until terminated, modified, or suspended

in writing by the OTS, acting through its Regional Director or other authorized representative.

14.    For purposes of, and within the meaning of 12 C.F.R. §§ 563.555, 563.560, and 565.4,

this Consent Order shall not be construed to be a "cease-and-desist order", "consent order", or

"order", unless the OTS informs the Association otherwise.

**Signature of Directors/Board Resolution.**

15.    Each Director signing this Stipulation attests that he or she voted in favor of a Board

Resolution authorizing the consent of the Association to the issuance of the Order and the

execution of the Stipulation.

Aurora Bank FSB
Stipulation and Consent to Issuance of a Consent Order
Page 4 of 5

CLAIM # 4702

**WHEREFORE**, the Association, by its directors, executes this Stipulation.

**AURORA BANK FSB**
**Wilmington, Delaware**

**OFFICE OF THRIFT SUPERVISION**

By: _____/s/_____

    William A. Wesp, Chairman

By: _____/s/_____

    Michael E. Finn
    Regional Director, Northeast Region

Date: See Effective Date on page 1

_____/s/_____
Theodore Janulis, Director

_____/s/_____
Lana Harber, Director

_____/s/_____
Douglas Lambert, Director

_____/s/_____
Dan Rabinowitz, Director

*CLAIM # 4702*

# UNITED STATES OF AMERICA
## DEPARTMENT OF THE TREASURY
## COMPTROLLER OF THE CURRENCY

| | |
|---|---|
| **In the Matter of:**     ) <br> ) <br> ) <br> Aurora Bank FSB     ) <br> Littleton, Colorado     ) <br> ) <br> ) | **AMENDS OTS Order No.: NE-11-16** |

## STIPULATION AND CONSENT TO THE ISSUANCE OF AN AMENDMENT TO APRIL 13, 2011 CONSENT ORDER

The Comptroller of the Currency of the United States of America ("Comptroller") intends to amend the existing Office of Thrift Supervision ("OTS") Consent Order No. NE-11-16 that was issued against Aurora Bank FSB, Littleton, Colorado ("Bank") on April 13, 2011 ("2011 Consent Order"),[1] pursuant to 12 U.S.C. § 1818(b).

The Bank, in the interest of compliance and cooperation, enters into this Stipulation and Consent to the Issuance of an Amendment to the 2011 Consent Order ("Amendment to the Consent Order"), dated February 28, 2013 ("Stipulation").

In consideration of the above premises, the Comptroller, through his authorized representative, and the Bank, through its duly elected and acting Board of Directors, stipulate and agree to the following:

---

[1] Since July 21, 2011, the 2011 Consent Order has been administered by the Comptroller pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. Law No. 111-203, § 311, 124 Stat. 1520-21 (2010).

*CLAIM # 4702*

# ARTICLE I

## JURISDICTION

(1)     The Bank is a Federal savings association, which was chartered and examined by the OTS pursuant to the Home Owners' Loan Act, as amended, 12 U.S.C. § 1461 *et seq.*

(2)     Pursuant to Title III of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203, 124 Stat. 1376 (2010), all functions of the OTS related to Federal savings associations were transferred to the Comptroller.[2]

(3)     The Comptroller is "the appropriate Federal banking agency" regarding the Bank pursuant to 12 U.S.C. §§ 1813(q) and 1818(b).

(4)     The Bank is an "insured depository institution" within the meaning of 12 U.S.C. § 1818(b)(1).

(5)     For the purposes of, and within the meaning of 12 C.F.R. §§ 163.555, the Amendment to the Consent Order shall not be construed to be a "cease and desist order" or "consent order," unless the OCC informs the Bank otherwise.

# ARTICLE II

## AGREEMENT

(1)     The Bank, without admitting or denying any wrongdoing, consents and agrees to issuance of the Amendment to the Consent Order by the Comptroller.

(2)     The Bank consents and agrees that the Amendment to the Consent Order shall: (a) be deemed an "order issued with the consent of the depository institution"

---

[2] *See* Dodd-Frank Act § 312(b), 12 U.S.C. § 5412.

*CLAIM # 4702*

pursuant to 12 U.S.C. § 1818(h)(2); (b) become effective upon its execution by the Comptroller through his authorized representative; and (c) be fully enforceable by the Comptroller pursuant to 12 U.S.C. § 1818(i).

(3)    Notwithstanding the absence of mutuality of obligation, or of consideration, or of a contract, the Comptroller may enforce any of the commitments or obligations herein undertaken by the Bank under his supervisory powers, including 12 U.S.C. § 1818(i), and not as a matter of contract law. The Bank expressly acknowledges that neither the Bank nor the Comptroller has any intention to enter into a contract.

(4)    The Bank declares that no separate promise or inducement of any kind has been made by the Comptroller, or by his agents or employees, to cause or induce the Bank to consent to the issuance of the Amendment to the Consent Order and/or execute the Amendment to the Consent Order.

(5)    The Bank expressly acknowledges that no officer or employee of the Comptroller has statutory or other authority to bind the United States, the United States Treasury Department, the Comptroller, or any other federal bank regulatory agency or entity, or any officer or employee of any of those entities to a contract affecting the Comptroller's exercise of his supervisory responsibilities.

(6)    The terms and provisions of this Stipulation and the Amendment to the Consent Order shall be binding upon, and inure to the benefit of, the parties hereto and their successors in interest. Nothing in this Stipulation or the Amendment to the Consent Order, express or implied, shall give to any person or entity, other than the parties hereto,

3

*CLAIM # 4702*

and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under this Stipulation or the Amendment to the Consent Order.

## ARTICLE III

## WAIVERS

(1)    The Bank, by consenting to this Stipulation, waives:

(a)    any and all procedural rights available in connection with the issuance of the Amendment to the Consent Order;

(b)    all rights to a hearing and a final agency decision pursuant to 12 U.S.C. §§ 1818(b) and (h), 12 C.F.R. Part 19;

(c)    all rights to seek any type of administrative or judicial review of the Amendment to the Consent Order;

(d)    any and all claims for fees, costs or expenses against the Comptroller, or any of his agents or employees, related in any way to this enforcement matter or the Amendment to the Consent Order, whether arising under common law or under the terms of any statute, including, but not limited to, the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

(e)    any and all rights to challenge or contest the validity of the Amendment to the Consent Order.

## ARTICLE IV

## OTHER PROVISIONS

(1)    The provisions of this Stipulation shall not inhibit, estop, bar, or otherwise prevent the Comptroller from taking any other action affecting the Bank if, at any time, it

4

*C/AIM # 4702*

deems it appropriate to do so to fulfill the responsibilities placed upon it by the several

laws of the United States of America.

(2)     Nothing in this Stipulation shall preclude any proceedings brought by the

Comptroller to enforce the terms of the Amendment to the Consent Order, and nothing in

this Stipulation constitutes, nor shall the Bank contend that it constitutes, a waiver of any

right, power, or authority of any other representative of the United States or an agency

thereof, including, without limitation, the United States Department of Justice, to bring

other actions deemed appropriate.

(3)     The terms of this Stipulation and the Amendment to the Consent Order are

not subject to amendment or modification by any extraneous expression, prior

agreements or prior arrangements between the parties, whether oral or written.

IN TESTIMONY WHEREOF, the undersigned, authorized by the Comptroller as

his representative, has hereunto set his hand on behalf of the Comptroller.

*/s/Kristina B. Whittaker*                         *February 28, 2013*

_____              _____
Kristina B. Whittaker                              Date
Deputy Comptroller
Special Supervision

5

*CLAIM # 4702*

IN TESTIMONY WHEREOF, the undersigned, as the duly elected and acting

Board of Directors of the Bank, have hereunto set their hands on behalf of the Bank.


_____              _____
William Wesp                                    Date


/s/                                                    *2/22/13*
_____              _____
Theodore Janulis                              Date


/s/                                                    *2/22/13*
_____              _____
Douglas Lambert                              Date


/s/                                                    *2/22/13*
_____              _____
Daniel Rabinowitz                            Date


/s/                                                    *2/22/13*
_____              _____
Michael Milversted                          Date


/s/                                                    *2/25/13*
_____              _____
Paul Makowski                                Date


6

*C, AIM #4702*

**#2013-123**
*Amends #NE-11-16*

UNITED STATES OF AMERICA
DEPARTMENT OF THE TREASURY
COMPTROLLER OF THE CURRENCY

|  |  |  |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| | ) | **AMENDS OTS Order No.: NE-11-16** |
| Aurora Bank FSB | ) | |
| Littleton, Colorado | ) | |
| | ) | |
| | ) | |

## AMENDMENT TO APRIL 13, 2011 CONSENT ORDER

The Comptroller of the Currency of the United States of America ("Comptroller") and

Aurora Bank FSB, Littleton, Colorado ("Bank") hereby agree to the following modifications to

Office of Thrift Supervision ("OTS") Order No. NE-11-16 dated April 13, 2011 ("2011 Consent

Order").[1]  The Bank, by and through its duly elected and acting Board of Directors ("Board"),

has executed a Stipulation and Consent to the Issuance of an Amendment to 2011 Consent Order

("Amendment to the Consent Order"), dated February 28, 2013 ("Stipulation"), which is

accepted by the Comptroller and incorporated by reference herein.  Paragraphs 14 to 19 of the

2011 Consent Order are hereby superseded by this Amendment to the Consent Order.  This

Amendment to the Consent Order, however, does not replace the other remaining Paragraphs of

the 2011 Consent Order, which shall remain in effect without modification.

WHEREAS, Paragraphs 14 to 19 of the 2011 Consent Order required the Bank, among

other things, to retain an independent consultant (the "IC") to conduct an independent review of

certain residential mortgage loan foreclosure actions or proceedings for borrowers who had a

pending or completed foreclosure on their primary residence any time from January 1, 2009 to

---

[1] Since July 21, 2011, the 2011 Consent Order has been administered by the Comptroller pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. Law No. 111-203, § 311, 124 Stat. 1520-21 (2010).

*C I A I M # 4702*

for such category; or (b) instruct the Bank's IC to complete file reviews for such borrowers to

determine financial injury related to Sections 521 or 533 or to not being in default. For files

reviewed under (b), the borrower will receive payments from the Fund in amounts specified in

the June 21, 2012 Financial Remediation Framework where the IC makes a determination of

"harm." For files reviewed under (b) where the IC makes a determination of "no harm," the

Bank will place the borrower into the next highest Borrower Waterfall category for which such

borrower is eligible, which will result in the borrower receiving payment from the Fund in

accordance with the Distribution Plan for such category.

    (5)    With respect to the borrowers in the In-Scope Borrower Population who may have

been subject to interest rate protections under Section 527 of the SCRA, 50 U.S.C. App. § 527,

as part of the Borrower Waterfall placement, the Bank shall either: (a) place the borrower into

the highest category within the Borrower Waterfall for which the borrower is eligible, which will

result in the borrower automatically receiving payments made from the Fund in accordance with

the Distribution Plan for such category; or (b) instruct the IC to complete file reviews for such

borrowers to determine financial injury related Section 527. For files reviewed under (b), the

borrower will receive payments from the Fund for the actual amount in error, in an amount not

less than $250, where the IC makes a determination of "harm." For files reviewed under (b)

where the IC makes a determination of "no harm," the Bank will place the borrower into the next

highest Borrower Waterfall category for which such borrower is eligible, which will result in the

borrower receiving payment from the Fund in accordance with the Distribution Plan for such

category.

    (6)    If the Bank elects to have the IC continue file review work as described in

Paragraphs (4) or (5) above, the IC review work for such files must be completed prior to the

CLAIM #4702

Prevention actions; provided, that the creditable activity occurs on or after January 7, 2013.

Additionally, creditable Foreclosure Prevention actions undertaken by the Bank's parent,

affiliate, or subsidiary also subject to an Amendment to the April 13, 2011 Consent Order of the

Board Governors shall operate to satisfy the requirements under this Article.

(6)     By May 15, 2013, the Bank shall submit to the OCC a report, in a form and

manner acceptable to the OCC, that details the Foreclosure Prevention actions taken by the Bank

through April 30, 2013 to fulfill its obligations under this Article and the amount of credit sought

towards fulfilling those obligations.  Thereafter, the Bank shall submit such report every forty-

five (45) days.  Nothing herein shall require the Bank to report Foreclosure Prevention Actions

taken during a particular prior period for which the Bank may in the future seek credit or prohibit

the Bank from seeking credit for the Foreclosure Prevention actions taken by the bank during a

later reporting period.  Additionally, the Bank shall document its efforts to prioritize the In-

Scope Borrower Population when considering creditable Foreclosure Prevention actions.

ARTICLE V

RELEASES

(1)     In recognition of the Bank's cash payments of $93,237,805.00 to the Fund and

Foreclosure Prevention commitments made pursuant to this Amendment to the Consent Order,

under 12 U.S.C. § 1818(b), the Comptroller will not assess a civil money penalty, under 12

U.S.C. § 1818(i), or initiate any further enforcement actions against the Bank or its subsidiaries

or affiliates, including for remedies available pursuant to 12 U.S.C. § 1818(b), with respect to:

(a) the findings contained in Paragraphs 1 to 2 of the 2011 Consent Order; (b) the matters

addressed in Paragraphs 14 to 19 of the 2011 Consent Order (including matters relating to the

work or findings of the IC or IC counsel under the IFR); and (c) any other past mortgage

*CLAIM # 4702*

including the non-discrimination provisions of the Equal Credit Opportunity Act,

15 U.S.C. §§ 1691, *et seq.*, or under the Federal Trade Commission Act, 15

U.S.C. §§ 41, *et seq.*, or any other statute or law that prohibits unfair or deceptive

practices;

(e)     any and all claims against individuals, including current and former

employees, agents, officers, directors, or contractors of the Bank; and

(f)     any and all actions to enforce the terms and conditions of this Amendment

to the Consent Order.

(3)     In no event shall the Bank request or require any borrower to execute a waiver of

any claims against the Bank (including any agent of the Bank) in connection with any payment

or Foreclosure Prevention assistance pursuant to this Amendment to the Consent Order.

However, nothing herein shall operate to bar the Bank from asserting in the future in any

separate litigation, or as part of a settlement related to the Bank's foreclosure and servicing

practices, any right that may exist under applicable law to offset the amounts received by a

borrower through the distribution process set forth above.  Nothing herein shall operate to amend

or modify in any respect any preexisting settlement between the Bank or an affiliate thereof and

a borrower in the In-Scope Borrower Population.

ARTICLE VI

EXTENSIONS AND COMMUNICATIONS

(1)     If the Bank contends that compliance with any provision of this Amendment to

the Consent Order requires an exemption or any extension of any timeframe stated within this

Amendment to the Consent Order, the Board shall submit a written request to the Deputy

Comptroller asking for relief.  Any written requests submitted pursuant to this Article shall

11

*CLAIM # 4702*

include a statement setting forth in detail the special circumstances that prevent the Bank from

complying with a provision of this Amendment to the Consent Order, that require the Deputy

Comptroller to exempt the Bank from a provision of this Amendment to the Consent Order, or

that require an extension of a timeframe within this Amendment to the Consent Order. The

Deputy Comptroller's decision concerning a request is final and not subject to further review.

    (2)    All communication regarding this Amendment to the Consent Order shall be sent

to:

        (a)    Deputy Comptroller for Special Supervision
                Office of the Comptroller of the Currency
                400 7th Street, SW
                Washington, DC 20219

        (b)    Director for Special Supervision
                Office of the Comptroller of the Currency
                400 7th Street, SW
                Washington, DC 20219

## ARTICLE VII

## OTHER PROVISIONS

    (1)    Notwithstanding the execution of this Amendment to the Consent Order, the

remaining Paragraphs of the 2011 Consent Order aside from Paragraphs 14 to 19 of the 2011

Consent Order remain in full force and effect.

    (2)    If, at any time, the Comptroller deems it appropriate in fulfilling the

responsibilities placed upon him by the several laws of the United States to undertake any action

affecting the Bank, nothing in this Amendment to the Consent Order shall in any way inhibit,

estop, bar, or otherwise prevent the Comptroller from so doing.

    (3)    This Amendment to the Consent Order is and shall become effective upon its

execution by the Comptroller, through his authorized representative whose hand appears below.

*Claim # 4702*

This Amendment to the Consent Order shall remain effective and enforceable, except to the extent that, and until such time as, any provision of this Amendment to the Consent Order shall be amended, suspended, waived, or terminated in writing by the Comptroller.

(4)    Any time limitations imposed by this Amendment to the Consent Order shall begin to run from the effective date of this Amendment to the Consent Order, as shown below, unless the Amendment to the Consent Order specifies otherwise.

(5)    The terms and provisions of this Amendment to the Consent Order apply to the Bank and its subsidiaries, even though those subsidiaries are not named parties to this Amendment to the Consent Order.  The Bank shall ensure that its subsidiaries comply with all terms and provisions of this Amendment to the Consent Order.

(6)    This Amendment to the Consent Order is intended to be, and shall be construed to be, a final order issued pursuant to 12 U.S.C. § 1818(b), and expressly does not form, and may not be construed to form, a contract binding the Comptroller or the United States.  Nothing in this Amendment to the Consent Order shall affect any action against the Bank or its institution-affiliated parties by another bank regulatory agency, the United States Department of Justice, or any other law enforcement agency, to the extent permitted under applicable law.

(7)    The terms of this Amendment to the Consent Order, including this paragraph, are not subject to amendment or modification by any extraneous expression, prior agreements, or prior arrangements between the parties, whether oral or written.

(8)    Nothing in the Stipulation or this Amendment to the Consent Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation or this Amendment to the Consent Order.

*CLAIM #4702*

IT IS SO ORDERED, this 28 day of February, 2013.

*/s/Kristina B. Whittaker*

Kristina B. Whittaker
Deputy Comptroller
Special Supervision

*Claim # 4702*

# EXHIBIT   5

Docket #1446  Date Filed: 9/14/2012

*CLAIM# 4702*

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

## AMENDED NOTICE OF PUBLIC AUCTIONS AND SALE HEARING TO SELL CERTAIN OF DEBTORS' ASSETS PURSUANT TO ASSET PURCHASE AGREEMENTS WITH NATIONSTAR MORTGAGE LLC AND BERKSHIRE HATHAWAY INC. AND RELATED RELIEF AND DATES

PLEASE TAKE NOTICE THAT upon the motion (the "Motion") of Residential Capital LLC ("ResCap") and its debtor subsidiaries, as debtors in possession (collectively, the "Debtors" or the "Company"), dated May 14, 2012, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has issued an order dated June 28, 2012 (the "Sale Procedures Order"), among other things, (i) authorizing and approving certain procedures for the submission and acceptance of any competing bids (the "Sale Procedures"); (ii) scheduling a bid deadline, auctions and a sale hearing (the "Sale Hearing") to approve asset sales by certain of the Debtors of: (a) the Purchased Assets (as such term is defined in the Asset Purchase Agreement by and between Nationstar Mortgage LLC ("Nationstar") and certain of the Debtors (the "Nationstar APA") and (b) the Purchased Assets (as such term is defined in the Asset Purchase Agreement by and between Berkshire Hathaway Inc. ("BH") and certain of the Debtors (the "BH Legacy APA," together with the Nationstar APA, the "APAs"), free and clear of all liens, claims, encumbrances, and other interests, and subject to higher or better offers (the "Sale Transactions" or the "Sales") subject to the submission of higher or better offers in auction processes (the "Auctions"); (iii) approving the Break-Up Fees; (iv) approving forms of notice; and (v) granting related relief.

A.    AUCTIONS

**PLEASE TAKE FURTHER NOTICE** that the Auctions and sales of the Purchased Assets by the Debtors will occur in accordance with procedures established by the Sale Procedures Order, entered on June 28, 2012 (Dkt. No. 538). The Sale Procedures Order can be viewed electronically at www.kccllc.net/rescap.

1212020120914000000000009

*www. Kcclle . Net/ocwHoAs/121202d12*

*PDf 1.544 x 9f33 - Kcclle . net*

*(/AIM # 4702*

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Procedures Order, any party wishing to participate in the Auctions must do so in accordance with the Sale Procedures Order, including, without limitation, the requirements for qualifying as a "Qualified Bidder" and submitting a "Qualified Bid" such that it is actually **received not later than October 19, 2012, at 5:00 p.m. (ET)** by the parties identified in the Sale Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing bids within the requirements and time frame specified by the Sale Procedures, the Debtors will conduct the Auction for the Purchased Assets (as defined in the Nationstar APA) (the "Platform Auction") on **October 23, 2012 at 10:00 a.m. (ET)** at the Sheraton New York Hotel, 811 Seventh Avenue, New York, NY 10019. The Debtors will conduct the Auction for the Purchased Assets (as defined in the BH Legacy APA) (the "Whole Loan Auction") one day after completion of the Platform Auction, which will be no earlier than **October 24, 2012 at 10:00 a.m. (ET),** at the Sheraton New York Hotel, 811 Seventh Avenue, New York, NY 10019. If the Platform Auction has not been completed by October 23, 2012 at 9:00 p.m. (ET), the Debtors shall timely notify by email all Qualified Bidders for the Whole Loan Auction and the Notice Parties (as defined in the Sale Procedures Order) of the location, date, and time for the Whole Loan Auction.

B.   SALE HEARING

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing will be held before the Honorable Martin Glenn, United States Bankruptcy Judge, in Courtroom 501 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408, on **November 19, 2012, at 10:00 a.m. (ET).** The Sale Hearing may be conducted in connection with, and as part of, a hearing to consider confirmation of a plan of reorganization under section 1129 of the Bankruptcy Code and may be adjourned without notice by an announcement of the adjourned date at the Sale Hearing.

C.   SALE FREE AND CLEAR

**PLEASE TAKE FURTHER NOTICE** that the order approving each of the Sale Transactions will provide that, except for any Assumed Liabilities set forth in each of the APAs, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets purchased by Nationstar and BH, respectively, shall be transferred to Nationstar and BH, and the Assumed Contracts under the Nationstar APA shall be assumed and assigned to Nationstar, and such transfer and assignment shall be free and clear of all claims, liabilities, interests, liens, obligations, and encumbrances of any Person (including, without limitation, claims, obligations or liabilities based on any successor or transferee theory of liability or relating to any act or omission of any originator, holder or servicer of mortgage loans prior to the Closing Date, and any indemnification claims, obligations or liabilities relating to any act or omission of the Sellers or any other person prior to the Closing Date) and any and all rights and claims under any bulk transfer statutes and similar laws, whether arising by agreement, by statute or otherwise and whether occurring or arising before, on or after the date on which the Chapter 11 cases were

2

*CLAIM # 4702*

commenced, whether known, unknown, contingent or unliquidated, arising prior to the Closing Date. Any person holding any such claims, liabilities, interests, liens, obligations, or encumbrances shall be enjoined and forever barred from asserting such claims, liabilities, interests, liens, obligations, or encumbrances against Nationstar or BH, respectively, the Purchased Assets purchased by Nationstar and BH and any of their affiliates, as more particularly described and provided for in the proposed order approving the Sale Transactions to Nationstar and BH, respectively.

D.    OBJECTIONS

PLEASE TAKE FURTHER NOTICE THAT RESPONSES OR OBJECTIONS, IF ANY, TO THE RELIEF SOUGHT IN THE MOTION SHALL BE FILED with the Clerk of the Bankruptcy Court and served upon: (i) Morrison & Foerster LLP, attorneys for the Debtors, 1290 Avenue of the Americas, New York, NY 10104 (Attn: Gary S. Lee, Esq. (glee@mofo.com) and Alexandra Steinberg Barrage (abarrage@mofo.com)); (ii) Sidley Austin LLP, attorneys for Nationstar, One South Dearborn, Chicago IL 60603 (Attn: Larry Nyhan (lnyhan@sidley.com) and Jessica C.K. Boelter (jboelter@sidley.com); (iii) Kirkland & Ellis LLP, attorneys for AFI, 601 Lexington Avenue, New York, NY 10022 (Attn: Ray C. Schrock (rschrock@kirkland.com), Richard M. Cieri (richard.cieri@kirkland.com), and Stephen E. Hessler (stephen.hessler@kirkland.com)); (v) Kramer Levin Naftalis & Frankel LLP, attorneys for the Creditors' Committee, 1177 Avenue of the Americas, New York, NY 10036 (Attn: Kenneth H. Eckstein (keckstein@kramerlevin.com) and Douglas H. Mannal (dmannal@kramerlevin.com)); (vi) Munger, Tolles & Olson LLP, attorneys for BH, 355 South Grand Avenue, Los Angeles, CA 90071 (Attn: Seth Goldman (seth.goldman@mto.com) and Thomas Walper (twalper@mto.com)); and (vii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY 10004 (Attn: Brian Masumoto), SO AS TO BE RECEIVED NO LATER THAN October 29, 2012, AT 5:00 P.M. (EASTERN TIME) (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that the failure of any person or entity to file a response or objection on or before the Objection Deadline shall be deemed a consent to the Sale Transactions and the other relief requested in the Motion, and shall bar the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Procedures, the Motion, the Sale Transactions, the approval of related agreements, and the Debtors' consummation of the Sale Transactions.

E.    COPIES OF THE MOTION AND RELATED SALE DOCUMENTS

PLEASE TAKE FURTHER NOTICE that this Notice provides only a partial summary of the relief sought in the Motion, the terms of the Sale Procedures Order, and the Sale Approval Orders. Copies of such documents are available for inspection (i) by accessing (a) the website of the Bankruptcy Court at http://www.nysb.uscourts.gov, or (b) the website of the Debtors' claims and noticing agent, Kurtzman Carson Consultants, at www.kccllc.net/rescap or (ii) by visiting the Office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, NY 10004-1408. Copies also may be obtained by faxing a written request to the attorneys for the Debtors, Morrison & Foerster LLP

3

*CLAIM# 4702*

(Attn: Gary S. Lee, Esq. at (212) 468-7900). The terms of such documents shall control in the event of any conflict with this Notice.

Dated: New York, New York
September 14, 2012

Gary S. Lee
Gary S. Lee
Todd M. Goren
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

Alexandra Steinberg Barrage
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue
Washington, DC 20006
Telephone: (202) 887-1500
Facsimile: (202) 887-0763

*Counsel for the Debtors and
Debtors in Possession*

4

AhlingScofield, P.C.
The Blackstone Building
100 South Dixie Highway, Suite 200
West Palm Beach, FL 33401

Return to:

Nationstar Mortgage LLC
350 Highland Drive
Lewisville, TX 75067

File No.: C49.0279

*CLAIM# 4702*

*→ THE FABRICATED ASSIGNMENTS AND*
*FABRICATION OF DOCUMENTS WITH t HIS Claim*
*THE DEMONSTRATES INDISPUTABLE that the trustee's Have*
*ACTED OUTSIDE THE POWERS AND AUTHORITY t IS FRAUD.*

| APN #: ▮▮▮▮▮ | |
| Lender Loan #: ▮▮▮▮ | |
| MIN: ▮▮▮▮▮▮▮▮ | MERS Phone: 1-888-679-6377 |

The area above this line is for the use of recording official

## ASSIGNMENT OF MORTGAGE

Deutsche Bank Trust Company Americas As Trustee, its successors and assigns ("Assignor"), located at 3 Park Plaza, 16th Floor, Irvine, CA 92714, which is organized and existing under the laws of United States of America, for adequate consideration from Nationstar Mortgage LLC ("Assignee"), located at 350 Highland Drive, Lewisville, TX 75067, has granted, bargained, sold, assigned, transferred and set over, and by these presents does grant, bargain, sell, transfer and set over unto Assignee the following described Mortgage recorded in the Public Records of Miami-Dade County, State of Florida.

Original Mortgagor(s): Tomas Diaz
Date of Mortgage: 04/27/2006
Mortgage Recording Date: 05/15/2006
Book: 24525, Page: 3829
Property Address: 5200 SW 122nd Avenue, Miami, FL 33175
Legal Description: South one-half of tract 266, of Bird Road Farmsites, According to the Plat thereof, recorded in Plat Book 46, at Page 3, of the Public Records of Miami-Dade County, Florida.

Assignor hereby acknowledges that this assignment is being recorded as a formality pursuant to requirements set forth under §701.02, but that such be the intention of the parties herein that delivery of the subject note and mortgage be established as evidenced by electronic or physical delivery, of the note and mortgage and related documents, that such delivery occurred prior to the date of any litigation with respect to the Mortgage and that the delivery date of the Note and Mortgage have been established by the express intention of the parties, herein.

        This Assignment of Mortgage is made without recourse against Assignor.

IN WITNESS WHEREOF, Assignor has caused these presents to be executed this _____ day of _____, 2012.

IN THE PRESENCE OF:

                                          Deutsche Bank Trust Company Americas As Trustee, its
                                          successors and assigns

                                                              *IN BLANK*
                                                        *? WHO ?*

Print Name_____          Print Name_____
Witness                                       Assignor

Print Name_____
Witness

ACKNOWLEDGMENT:

STATE OF _____
COUNTY OF _____

        On _____ before me, _____ Notary Public, personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon the behalf of which the person(s) acted, executed the instrument.

        I certify under PENALTY OF PERJURY under the Laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

*(handwritten)* C/AIM # 4702

**Nationstar** MORTGAGE
PO BOX ????
DALLAS, TX ?????
www.MyNationstarMtg.com

*(handwritten, circled)* July 15, 2012

*(handwritten, vertical left margin)* Same Date Transfer! 63529 0006577 Aurora and Deutsche Bank XO To Nationstar and Nationstar? How

*(handwritten across top)* NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS; IS FAKE, FABRICATED ASSIGNMENTS IS FALSE AND FABRICATED DOCUMENTS IN VARIOUS COURTS AND WITH IRS THUS CONSTITUTING FRAUDULENT CONDUCT AND ENDLESS BADGES OF FRAUD

New Nationstar Loan Number: ▮▮▮▮▮▮

## NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

Dear Tomas Diaz:

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from AURORA LOAN SERVICES LLC to Nationstar Mortgage LLC, effective 07/01/12.

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires Nationstar Mortgage send you this notice no later than 15 days after the effective date of the transfer.

Your new servicer is Nationstar Mortgage LLC.

Nationstar Mortgage's business address is: .

Nationstar Mortgage LLC
350 Highland Drive
Lewisville, Texas 75067
www.MyNationstarMTG.com

Nationstar Mortgage's toll free number is 1-888-850-9398. If you have any questions relating to the transfer of servicing to Nationstar Mortgage, call 1-888-850-9398 between 8 a.m. and 8 p.m. on the following days Monday - Thursday, 8 a.m. and 5 p.m. on Friday, or visit us anytime at www.MyNationstarMTG.com.

The date that Nationstar Mortgage will start accepting payments from you is 07/01/12. You can pay online via the Nationstar Mortgage website at www.MyNationstarMTG.com, or you can send all payments due on or after that date for

Nationstar Mortgage LLC
PO Box 650783
Dallas, Texas 75265

Your mortgage life insurance, disability insurance and/or other optional products will not continue. If you wish to retain optional products, you will need to contact your current optional product/service provider.

Enclosed is your Welcome Letter which includes a payment coupon with detailed loan information.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 5 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to this address:

Nationstar Mortgage LLC
Attention Research Department
350 Highland Drive
Lewisville, Texas 75067
www.MyNationstarMTG.com

Not later than 30 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A Business Day is a day on which the offices of the business are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

**Important Loan Transfer "Home Affordable Modification Program" Information**

Home Affordable Modification Program: If you are currently participating in (or being considered for) a loan modification program, we will be transferring all your documentation to the new servicer. Until the transfer date, you should continue to make your payments (e.g., trial payments if attempting to qualify for a modification under the Home Affordable Modification Program) to Aurora Loan Services Llc. After transfer, you should make all payments to Nationstar until such time that you are provided additional direction. Decisions regarding qualification will be made by Nationstar. All information regarding other loss mitigation activities (forbearance agreements, short sales, refinances and deed-in-lieu of foreclosure) will be forwarded to Nationstar for processing. Please be advised that this transfer may extend the time needed for a final decision.

Sincerely,
Nationstar Mortgage LLC



INTERNET REPRINT

*C/AIM # 4702*



**Nationstar** MORTGAGE   350 Highland Drive Lewisville, TX 75067

July 15, 2012

TOMAS DIAZ
[redacted] AVE 137
[redacted]
[redacted]

RE: Nationstar Mortgage LLC Loan Number [redacted]

*⟶ FLAWED FORMATION OF REMICS (SECTION 860 IRE)*

Dear TOMAS DIAZ

Welcome to Nationstar Mortgage!

We look forward to servicing your loan on behalf of DEUTSCHE BANK, TRUSTEE, RALI SERIES 2006-QO6.

- Your total debt at the time of the transfer is $1,414,207.81. This amount includes your outstanding Unpaid Principal Balance of $997,206.01, $380,109.88 in Interest, $345.12 from Fees, and $185.00 from expenses paid on your behalf.

- This debt is owed to DEUTSCHE BANK, TRUSTEE, RALI SERIES 2006-QO6, but is being serviced by Nationstar.

- Unless you dispute the validity of this debt, or any portion thereof, in writing within thirty (30) days after receipt of this notice, the debt will be assumed to be valid by Nationstar.

- If you notify Nationstar in writing within this thirty (30) day period that the debt, or any portion thereof, is disputed, Nationstar will obtain verification of the debt and a copy of such verification will be sent to you.

We welcome you to Nationstar Mortgage and look forward to being your mortgage servicer.

Mail written disputes to:
Nationstar Mortgage LLC
Attn: Research Department
350 Highland Drive
Lewisville, TX 75067

For Customer Service Inquiries, call toll free at 1-888-850-9398.

Sincerely,

Nationstar Mortgage LLC

*THE DOCUMENTS FILED IN THE COURT AND THE ASSIGNMENTS OF MORTGAGE INDICATE THAT NO MORTGAGE NOTES WERE TRANSFERRED TO THE REMIC IN A PROPER MANNER.*

Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.



www.MyNationstarMtg.com

INTERNET REPRINT

CLAIM # 4702

MORTGAGE / NOTE TRANCHES

TOMAS DIAZ
LOAN NO.
5200 SW 122 AVE
MIAMI, FL 33175

| CF Class | Orig(000) | Curr(000) | Cpn | OWAL | Orig Mty | Cusip | Description |
|---|---|---|---|---|---|---|---|
| Pd RALI 2006-QO6 A1 | 725,353 | 367,899 | 0.422 | 3.49 | 6/25/46 | 75114NAA2 | FLT, STEP |
| • RALI 2006-QO6 A2 | 302,230 | 155,888 | 0.472 | 3.49 | 6/25/46 | 75114NAB0 | FLT, STEP |
| • RALI 2006-QO6 A3 | 181,338 | 93,533 | 0.502 | 3.49 | 6/25/46 | 75114NAC8 | FLT, STEP, SSNR, SSUP |
| Pd RALI 2006-QO6 M1 | 26,040 | 0 | 0.559 | 8.44 | 6/25/46 | 75114NAD6 | MEZ, FLT, STEP |
| Pd RALI 2006-QO6 M2 | 9,766 | 0 | 0.594 | 6.37 | 6/25/46 | 75114NAE4 | MEZ, FLT, STEP |
| Pd RALI 2006-QO6 M3 | 6,510 | 0 | 0.616 | 6.31 | 6/25/46 | 75114NAF1 | MEZ, FLT, STEP |
| Pd RALI 2006-QO6 M4 | 6,510 | 0 | 0.728 | 6.25 | 6/25/46 | 75114NAG9 | MEZ, FLT, STEP |
| Pd RALI 2006-QO6 M5 | 6,510 | 0 | 0.785 | 6.18 | 6/25/46 | 75114NAH7 | MEZ, FLT, STEP |
| Pd RALI 2006-QO6 M6 | 6,510 | 0 | 0.825 | 6.08 | 6/25/46 | 75114NAJ3 | MEZ, FLT, STEP |
| Pd RALI 2006-QO6 M7 | 6,510 | 0 | 1.569 | 5.93 | 6/25/46 | 75114NAK0 | MEZ, FLT, STEP |
| Pd RALI 2006-QO6 M8 | 6,510 | 0 | 1.759 | 5.7 | 6/25/46 | 75114NAL8 | MEZ, FLT, STEP |
| Pd RALI 2006-QO6 M9 | 6,510 | 0 | 2.188 | 5.39 | 6/25/46 | 75114NAM6 | MEZ, FLT, STEP |
| Pd RALI 2006-QO6 SB | 11,719 | 0 | 0 | 0 | 6/25/46 | BCC0RJB96 | SUB |
| RALI 2006-QO6 R1 | 0 | 0 | 0 | 0 | 6/25/46 | 75114NAP9 | R |
| RALI 2006-QO6 R2 | 0 | 0 | 0 | 0 | 6/25/46 | 75114NAQ7 | R |

CLAIM # 4702

# EXHIBIT 6



## DEPARTMENT OF THE TREASURY
### INTERNAL REVENUE SERVICE
#### WASHINGTON, D.C. 20224

*CLAIM # 4702*

**WHISTLEBLOWER OFFICE**

**August 3, 2012**

Rev. Tomas Diaz
c/o  A.

Dear Mr. Diaz:

We received your Form 211 and it has been assigned claim number:

- **2012-007551 (RALI Series 2006-QO6 Trust – Series)**

The information you provided will be evaluated to determine if an investigation is warranted and an award is appropriate. Although we may need to contact you to discuss the information submitted, we can not tell you specific details about what actions we will be taking, if any, using the information you gave us. Internal Revenue Code Section 6103 protects the tax information of all taxpayers and prevents us from making these disclosures. At the conclusion of the review and investigation, we will only be able to tell you whether or not the information you provided met our criteria for paying an award.

Should you have any questions, Whistleblower Office analyst ████████████ has been assigned to your claim and can be reached at (███) ████████.

Sincerely,

Management and Program Analyst
Whistleblower Office

CC:

CLAIM # 4702

# EXHIBIT    7

*CIAIH # 4702*

# IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

**DEUTSCHE BANK TRUST COMPANY
AMERICAS, AS TRUSTEE**

      Plaintiff,

-vs.-

                                CASE NO.: **2007-16754 CA 01**
                                DIVISION (10)

**TOMAS DIAZ**

      Defendant,

_____/

## **DECLARATION**

I, Alexis Mesa, subscribe to A Professional Data Service and I have been trained to do Mortgage Security Audits and have the Certification & knowledge on how to perform these searches.

On April 6, 2012, I researched the Bloomberg online Database at the request of Tomas Diaz. He allegedly signed a Note in favor of Platinum Capital Group, Corp. On April 27, 2006 with a loan #0010500352, then the mortgage was assigned to Deutsche Bank Trust Company Americas on October 26, 2006 the loan was identified as RALI Series 2006-QO6 Trust with a loan # 0010624849. The loan was assigned to Aurora Loan Services, LLC with a loan no.: 0021953252. After a Thorough search of Miami-Dade public records it results that no assignments were filed/recorded from Deutsche Bank National Trust Company Americas to Aurora Loan Services, LLC. The clarifying code and abbreviation on the Bloomberg Terminal is **RALI 2006-QO6**.

Pursuant to a thorough search I have found the aforementioned loan in the ACTIVE CLASS of the RALI 2006-QO6. My research has showed that the loan level detail of this Trust which has a total of 3,651 loans and 2,293 which are Inactive Loans. This loan also shows that it was **paid off** in 10 Tranches / Classes and appears to still be receiving periodic cash flows in 3 Tranches/ Classes. There are a total of 15 Tranches / Classes in this Trust.

1

CLAIM # 4702

I, Alexis Mesa hereby certify all the following is true obtained by my first hand investigation into this matter. I'm available for court appearance or via phone for further clarification or explanation. Please refer to the exhibits A, B, and C for more detailed information.

I Alexis Mesa declare, verify and state under penalty of perjury that the foregoing is true and correct.

BY: _____   EXECUTED ON: 4/6/2012

Alexis Mesa
11901 SW 45th ST
Miami, FL 33175
PH: 305-219-5670
FAX: 786-999-0990
mvrinter@aol.com

State of Florida County of Miami-Dade

Subscribed and sworn to (or affirmed) before me, Xiomara Endara, Notary Public, on this 6 day of April, 2012 by Alexis Mesa, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

WITNESS my hand and official seal

_____
Notary Public

XIOMARA G. ENDARA
MY COMMISSION EXPIRES
June 16, 2015
#EE 104010
Bonded thru
Budget Notary Services
NOTARY PUBLIC, STATE OF FLORIDA

2

*CIAIM # 4702*

# IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

DEUTSCHE BANK TRUST COMPANY
AMERICAS, AS TRUSTEE

      Plaintiff,

-vs.-

                                    CASE NO.: **2007-16754 CA 01**
                                    DIVISION (10)

TOMAS DIAZ

      Defendant,

_____/

## AFFIDAVIT OF ALEXIS MESA
## IN OPPOSITION TO TRUSTEES LEGAL STANDING

| | |
|---|---|
| BORROWER: | TOMAS DIAZ |
| LOAN NO.: | 10500352 / 0010624849/ 0021953252 |
| PROPERTY ADDRESS: | 5200 SW 122ND AVE |
| | MIAMI, FL 33175 |

I, Alexis Mesa, hereby swear and affirm as follows:

1. I am a subject matter expert on foreclosure litigation, the secondary mortgage market, Foreclosure Litigation, and Mortgage Asset-Backed Securitization and its effects and applications in Foreclosure and Loss Mitigation.

2. I subscribe to Bloomberg Professional Service and I have been trained at the Bloomberg Institute in New York City. I am certified to do Mortgage Security Audits and have knowledge on how to perform these searches.

1

*CLAIM # 4702*

3. I perform regular, ongoing searches into the securitization, sale and transfer aspect of residential mortgage loans and mortgage backed securities and am proficient in applying that research to the particular facts in a given foreclosure case.

4. This declaration is based upon my personal knowledge grounded in a thorough and complete review of the loan documents, servicing documents, trust documents and the other documents related to the instant case. If called upon as a factual witness in this matter I could and would competently testify to the facts as set forth below.

5. On April 6, 2012, I was retained by the Borrowers to conduct an investigation and audit of the securitization aspects of this mortgage loan transaction, conduct due diligence inquiries on the Special Purpose Vehicle (the "SPV and/or the "Issuer") known as RALI Series 2006-QO6 Trust along with the chain of ownership that all assets (i.e. Notes), relative to this specific Trust, have gone through as compared to the alleged chain of ownership by the Lender.

6. In conducting the investigation, I reviewed various documents that were filed with the Securities and Exchange Commission specific to this Trust and which are the operative documents governing the Trust and all parties acting on behalf of the trust in their various roles such as Trustee, Master Servicer, Sponsor, Depositor, etc.

7. I reviewed various documents filed with the Miami-Dade County Recorder's Office

8. I also specifically reviewed and analyzed the Adjustable Rate Note and the Mortgage dated April 27, 2006 recorded on May 15, 2006, between the Borrower and Platinum Capital Group, Corp.

9. My examination below reveals that the Borrowers' loan was securitized into the RALI Series 2006-QO6 Trust on or about June 29, 2006 and that DEUTSCHE BANK TRUST COMPANY AMERICAS attorney misrepresented Platinum Capital Group, Corp. status as owner and holder of the Borrowers' loan.

10. The form 424B prospectus Supplement governing this specific Trust outlines with absolute clarity and with particularity the entities that are and were involved in this trust from inception. **Exhibit A** attached to this Affidavit provides the exact chain of title and ownership of every Note and Mortgage that was selected for inclusion in this specific Trust.

11. This specific trust, as with all trust, is governed by certain operative documents that dictate the actions of any and all agents for the trust, their powers and how they may act

2

on behalf of the trust. An agent for the trust, such as the trustee, has absolutely no power to act outside of the powers and authority vested in it by these documents.

12. The governing documents for this trust are the Prospectus, Prospectus Supplement, Pooling and Servicing Agreement and the Mortgage Loan Purchase Agreement referred to in the Pooling and Servicing Agreement.

13. Through access to the Electronic Data Gathering Analysis and Retrieval (EDGAR) System with the Securities and Exchange Commission (SEC), I was able to retrieve these governing documents which were filed with the SEC back in 2006

14. *Issuing Entity* of the Pooling and Servicing Agreement, attached as **Exhibit A to** this Affidavit clearly states on S-28 that "The pooling and servicing agreement provides that the depositor assigns to the trustee for the benefit of the certificateholders without recourse all the right, title and interest of the depositor in and to the mortgage loans. Furthermore, the pooling and servicing agreement states that, although it is intended that the conveyance by the depositor to the trustee of the mortgage
loans be construed as a sale, the conveyance of the mortgage loans shall also be deemed to be a grant by the depositor to the trustee of a security interest in the mortgage loans and related collateral."(Emphasis mine).

15. What this clause clearly stipulates is that the Depositor, Residential Accredit Loans, Inc., is the only entity that can assign, transfer and convey the mortgage loans to the Trustee for this Trust.

16. The Originator for Borrowers' loan was Platinum Capital Group, Corp. Platinum Capital Group, Corp. sold the Borrowers' loan into the trust on or about June 29, 2006. Therefore, it is entirely impossible, short of specific documentation to substantiate a claim that Platinum Capital Group, Corp. could assign anything after June 29, 2006.

17. There are enormous consequences, if any Assignment are not authentic, in that this Trust has elected to be a REMIC Trust (REMIC short Real Estate Mortgage Investment Conduit). According to the Prospectus on page. 73 under the heading " Federal Income Tax Consequences" the RALI Series 2006-QO6 Trust that this loan was deposited into elected to be treated as a REMIC , which provides for pass-through tax treatment of the income generated by the Trust assets, thus the name RALI Series 2006-QO6 Trust, Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QO6.

18. A REMIC trust has a special tax status with the Internal Revenue Status which allows the cash flow on the pool of loans to "pass through' to the individual certificate holders

*C/AIM # 4702*

thereby avoiding double taxation on the cash flow – a significant profit advantage for the investors of that trust and which can easily translate into millions of dollars in taxes saved.

19. Election by the Trust to be treated as one or more REMIC's impose strict and absolute requirements regarding transfers of assets (i.e. Mortgage loans or notes) to the Trust and IRC Section 860 outlines and governs these strict requirements.

20. According to 26 CFR § 1.860D-1 (c)(2) *Identification of assets*. Formation of the REMIC does not occur until-(i) The sponsor identifies the assets of the REMIC, such as through execution of indenture with respect to the assets; and (ii) The REMIC issues the regular and residual interest in the REMIC.

21. In other words, the REMIC is not officially formed until the Sponsor/Seller identifies the specific assets of the REMIC (the specific loans) and the REMIC subsequently issues the regular and residual interest in the REMIC.

22. The Prospectus and PSA specifically identify a Closing Date which is the last day that an asset (mortgage loan) can be "identified" for inclusion in the Trust/REMIC. The Closing Date also serves as the Startup Day for the REMIC. According to the Internal Revenue Code, Section 860G, "All of a REMIC's loans must be acquired on the startup day of the REMIC or within three months thereafter." Any contributions of an asset(other than cash) that is contributed to the REMIC after the Startup Day (or within the allowable 90 day window) is deemed an "unqualified contribution" and can cause the entire REMIC Trust to lose its tax-free status which would be catastrophic to the Trust (and all the individual beneficiaries, shareholders or Certificateholder) because the Trust cash flow would be subject to double-taxation or at a minimum, the prohibited transaction is taxed at 100% to the Trust.

23. For this reason, all parties serving as agents for the Trust must strictly adhere to the guidelines and conveyance clauses specifically delineated in *Prohibited Transactions and Other Possible REMIC Taxes* of the PSA on page. 92, The Internal Revenue Code imposes a prohibited transactions tax, which is a tax on REMICs equal to 100% of the net income derived from prohibited transactions.

24. The Closing Date/ Startup Day for this Trust/REMIC was: on or about June 29, 2006.

25. Also, in order for the Trust to qualify as a REMIC, all steps in the 'contribution" and transfer process (of the mortgage notes) must be true and complete sales between parties

4

and <u>within the three month time limit from the Startup Day.</u> Therefore, every transfer of the Note(s) for inclusion in the Trust *must be a true purchase and sale*, and consequently the Note must be endorsed from one entity to another and the corresponding mortgage must be assigned in the exact same chain.

26. Residential Funding Corporation is the Seller for this particular trust so it would have been Residential Funding Corporation that would have had to select the subject Note and Mortgage for inclusion into this trust to begin with.

27. Thus, Platinum Capital Group, Corp would have endorsed the Note to Residential Funding Corporation.

28. By virtue of that fact, there would have to be a corresponding Assignment, there would be a break in the chain of title and the Note and Mortgage would have been bifurcated or separated creating an unsecure debt (the Note without a Security Instrument).

29. If, in fact, Residential Funding Corporation, selected this loan to be included in this specific trust, then four very distinct actions would have been taken:

i.      It would have included this mortgage loan on the Mortgage Loan Schedule as per *Description of the Mortgage Pool* of the Pooling and Servicing Agreement and this schedule would still, to this day, identify this loan directly.

ii.     It would have specifically endorsed the Note to Residential Accredit Loans, Inc. – the depositor for this Trust; and,

iii.    It would have drafted an Assignment of Mortgage, as Assignor, to Residential Accredit Loans, Inc. as Assignee

iv.     Residential Accredit Loans, Inc. would have endorsed the note in blank and would have drafted an Assignment as Assignor to DEUTSCHE BANK TRUST COMPANY AMERICAS.

30. All four of these actions are specifically required by the governing document, Pooling and Servicing Agreement *Issuing Entity* of the pooling and servicing agreement states that, although it is intended that the conveyance by the depositor to the trustee of the mortgage loans be construed as a sale, the conveyance of the mortgage loans shall also be deemed to be a grant by the depositor to the trustee of a security interest in the mortgage loans and related collateral.

5

*CLAIM # 4702*

31. **THE TRUSTS** of the PSA in the instant case specifically requires the Depositor (*and only the Depositor*) to convey the mortgage loans to the Trustee. Simply put, the PSA allows for absolutely no other form, method or chain of conveyances of mortgage loans to the Trust.

32. Any Assignments or Notices filed by the Lender in the instant case must meet these specific requirements or the notice is either (a) a fraud, or (b) an Assignment for this Trust which thus separated the Note from the Mortgage thereby likely rendering the Note an unsecured obligation or, in the alternative, indicating that this Note was in fact deposited into this Trust after the Closing Date/ Startup Day and is thereby an "unqualified contribution" into this Trust pursuant to IRC § 860 and thus subjects this entire Trust to a revocation of its REMIC tax status and possibly would subject all cash flow received by this Trust to be double taxation.

33. Due to the history of Borrowers' loan, I believe that nothing short of producing the original note with the proper endorsements will suffice to accurately clarify ownership of note and proper legal standing.

34. The Mortgage always follows the note unless they are purposefully separated for some obscure reason.

35. Given these issues, Platinum Capital Group, Corp. could not have assigned the Mortgage to anyone after the Closing Date/ Startup Day of on or about June 29, 2006.

36. These are all serious issues of fact that need to meted out properly to determine the authenticity of any mortgage assignment and the Lender's standing in the instant case.

37. In my investigative work for various attorneys, it has become highly evident that these "Assignments" are being called into question more and more by presiding judges, state attorney generals and the like.

38. These assignments seem to appear out of nowhere and usually have highly suspect dates appearing on them. Their authenticity have been called into question on numerous occasions; many questions have been asked of the Lenders supplying these purported assignments and the answers have only created more doubt about their validity.

39. The pooling and Servicing Agreement is the governing document for this Trust and all parties. The PSA clearly defines the conveyances method and order for all mortgage loans in this Trust. The Trustee cannot violate page S-28 of the PSA when it accepts the Note and Mortgage via any Assignment of Mortgage, together with the Note.

6

*CLAIM # 4702*

40. The Lender would only have the right of enforcement of this Note if it had taken possession of this Note in the manner described in the PSA. No other manner of possession or conveyances is authorized and therefore if the Lender took possession of the Note after the Closing Date/Startup Day then it could not have the right of enforcement as Trustee for this Trust.

41. It is my opinion, after careful consideration of all the facts of this case along with a thorough review of the Trust documents filed with the SEC, that the Trustee's' legal standing in the instant case is not authentic and that it was merely fabricated at the request of the Lender or Lender's counsel to present an "appearance" of the legal ownership of the Note and Mortgage and the right to foreclose on the Borrowers. AURORA LOAN SERVICES, LLC is acting in the role of Servicer to Borrowers' loan and is not the true owner and holder of the Note and AURORA LOAN SERVICES, LLC is not a Servicer in this Trust and has no affiliation to this Trust and is attempting to collect on a debt that was never acquired properly. Any Assignments or Notices filed in the instant case must recognize the process of securitization that has occurred to Borrowers' loan and follow the requirements outlined above. The Lender can and is only acting in the capacity as Servicer for another entity. There is no authority the Lender has or would have to create any assignments and if Borrowers' loan was sold into this particular trust, the closing date was on or about June 29, 2006.

42. Another entity is likely to be found to be the true and actual owner and holder of the Note and Mortgage, however further discovery would need to be conducted to make a final determination of exactly who at this point does own the subject Note and Mortgage and to determine if the Note and Mortgage have been bifurcated or not.

43. Finally, I recommend that the activities by the Lender be reported to the Internal Revenue Service and the Securities and Exchange Commission for, what I deem to be violations of federal law, acceptance of a prohibited transaction for this trust and for breach of trust.

**I understand that I am swearing or affirming under oath to the truthfulness of the claims made in this petition and that the punishment for knowingly making a false statement includes fines and/or imprisonment.**

Alexis Mesa

STATE OF FLORIDA

COUNTY OF MIAMI-DADE ss.

On the __6__ day of __April__ in the year 2012, **Alexis Mesa** personally appeared before me, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individuals acted, executed the instrument, and that such individual made such appearance before the undersigned in **Miami, Florida.**

NOTARY

DATE  4/6/12

8

CLAIM # 4702

# EXHIBIT   8

*CLAIM # 4702*

TOMAS DIAZ
LOAN NO.
5200 SW 122 AVE
MIAMI, FL 33175

## MORTGAGE / NOTE TRANCHES

| | CF Class | Orig(000) | Curr(000) | Cpn | OWAL | Orig Mty | Cusip | Description |
|---|---|---|---|---|---|---|---|---|
| * | RALI 2006-QO6 A1 | 725,353 | 367,899 | 0.422 | 3.49 | 6/25/46 | 75114NAA2 | FLT, STEP |
| * | RALI 2006-QO6 A2 | 302,230 | 155,888 | 0.472 | 3.49 | 6/25/46 | 75114NAB0 | FLT, STEP |
| * | RALI 2006-QO6 A3 | 181,338 | 93,533 | 0.502 | 3.49 | 6/25/46 | 75114NAC8 | FLT, STEP, SSNR, SSUP |
| Pd | RALI 2006-QO6 M1 | 26,040 | 0 | 0.559 | 6.44 | 6/25/46 | 75114NAD6 | MEZ, FLT, STEP |
| Pd | RALI 2006-QO6 M2 | 9,766 | 0 | 0.594 | 6.37 | 6/25/46 | 75114NAE4 | MEZ, FLT, STEP |
| Pd | RALI 2006-QO6 M3 | 6,510 | 0 | 0.616 | 6.31 | 6/25/46 | 75114NAF1 | MEZ, FLT, STEP |
| Pd | RALI 2006-QO6 M4 | 6,510 | 0 | 0.726 | 6.26 | 6/25/46 | 75114NAG9 | MEZ, FLT, STEP |
| Pd | RALI 2006-QO6 M5 | 6,510 | 0 | 0.785 | 6.18 | 6/25/46 | 75114NAH7 | MEZ, FLT, STEP |
| Pd | RALI 2006-QO6 M6 | 6,510 | 0 | 0.825 | 6.08 | 6/25/46 | 75114NAJ3 | MEZ, FLT, STEP |
| Pd | RALI 2006-QO6 M7 | 6,510 | 0 | 1.559 | 5.93 | 6/25/46 | 75114NAK0 | MEZ, FLT, STEP |
| Pd | RALI 2006-QO6 M8 | 6,510 | 0 | 1.759 | 5.7 | 6/25/46 | 75114NAL8 | MEZ, FLT, STEP |
| Pd | RALI 2006-QO6 M9 | 6,510 | 0 | 2.188 | 5.39 | 6/25/46 | 75114NAM6 | MEZ, FLT, STEP |
| Pd | RALI 2006-QO6 SB | 11,719 | 0 | | | 6/25/46 | BCC0RJB98 SUB | |
| | RALI 2006-QO6 R1 | 0 | 0 | | | 6/25/46 | 75114NAP9 R | |
| | RALI 2006-QO6 R2 | 0 | 0 | | | 6/25/46 | 75114NAQ7 R | |

EXECUTION COPY

*CLAIM # 4702*

## EXHIBIT B

## ALLOCATION OF ALLOWED CLAIM

1.     The Allowed Claim shall be allocated amongst the Accepting Trusts by the Trustees pursuant to the determination of a qualified financial advisor (the "Expert") who will make any determinations and perform any calculations required in connection with the allocation of the Allowed Claim among the Accepting Trusts. To the extent that the collateral in any Accepting Trust is divided by the Governing Agreements into groups of loans ("Loan Groups") so that ordinarily only certain classes of investors benefit from the proceeds of particular Loan Groups, those Loan Groups shall be deemed to be separate Accepting Trusts for purposes of the allocation and distribution methodologies set forth below. The Expert is to apply the following allocation formulas:

(i)  *First*, the Expert shall calculate the amount of Net Losses for each Accepting Trust as a percentage of the sum of the Net Losses for all Accepting Trusts (such amount, the "Net Loss Percentage");

(ii)  *Second*, the Expert shall calculate the "Allocated Depositor Claim" for each Accepting Trust by multiplying (A) the amount of the Allowed Claim by (B) the Net Loss Percentage for such Accepting Trust, expressed as a decimal; provided that the Expert shall be entitled to make adjustments to the Allocated Depositor Claim of each Accepting Trust to ensure that the effects of rounding do not cause the sum of the Allocated Depositor Claims for all Accepting Trusts to exceed the amount of the Allowed Claim; and

(iii)  *Third,* the Expert shall calculate the "Allocated Seller Claim" for each Accepting Trust by multiplying (A) the amount of the Allowed Claim by (B) the Net Loss Percentage for such Accepting Trust, expressed as a decimal; provided that the Expert shall be entitled to make adjustments to the Allocated Seller Claim of each Accepting Trust to ensure that the effects of rounding do not cause the sum of the Allocated Seller Claims for all Accepting Trusts to exceed the amount of the Allowed Claim.

(iv)  Any HoldCo Claim provided to an Accepting Trust making one or more HoldCo Elections, and any reduction to the Allocated Depositor Claim and Allocated Seller Claim of that Accepting Trust, shall be calculated pursuant to Section 6.02.

(v)  For the avoidance of doubt, and subject to the HoldCo Election, each Accepting Trust shall receive an Allocated Claim only against its Seller Entity, which Allocated Claim its Depositor Entity is jointly liable for.

(vi)  If applicable, the Expert shall calculate the portion of the Allocated Claim that relates to principal-only certificates or notes and the portion of the Allocated Claim that relates to all other certificates or notes.

2.     All distributions from the Estate to an Accepting Trust on account of any Allocated Claim shall be treated as Subsequent Recoveries, as that term is defined in the Governing Agreement for that trust; provided that if the Governing Agreement for a particular Accepting

-17-

CLAIM #4702

| Deal Name | Cusip | Sum Of Original Face | Sum Of Current Face |
|-----------|-------|----------------------|---------------------|
| RALI 2006-QO1 | 761118RJ9 | $78,443,000.00 | $24,013,603.76 |
| RALI 2006-QO1 | 761118RG5 | $5,400,000.00 | $838,109.67 |
| RALI 2006-QO1 | 761118RK6 | $10,496,000.00 | $0.03 |
| RALI 2006-QO10 | 751153AA5 | $99,395,000.00 | $56,761,261.83 |
| RALI 2006-QO10 | 751153AB3 | $81,000,000.00 | $41,396,225.42 |
| RALI 2006-QO2 | 761118VY1 | $265,842,000.00 | $94,138,538.93 |
| RALI 2006-QO2 | 761118VZ8 | $99,413,600.00 | $38,595,980.48 |
| RALI 2006-QO3 | 761118WP9 | $164,541,000.00 | $70,431,593.54 |
| RALI 2006-QO3 | 761118WQ7 | $34,747,000.00 | $16,745,355.27 |
| RALI 2006-QO4 | 75114GAC3 | $5,470,000.00 | $2,647,461.19 |
| RALI 2006-QO5 | 75114HAD9 | $66,000,000.00 | $35,286,331.22 |
| RALI 2006-QO5 | 75114HAK3 | $11,000,000.00 | $9,974,691.10 |
| RALI 2006-QO5 | 75114HAH0 | $29,397,000.00 | $7,731,231.07 |
| RALI 2006-QO5 | 75114HAE7 | $10,800,000.00 | $4,274,581.07 |
| RALI 2006-QO6 | 75114NAA2 | $532,153,000.00 | $268,255,921.95 |
| RALI 2006-QO6 | 75114NAB0 | $249,055,000.00 | $127,674,640.47 |
| RALI 2006-QO7 | 751150AD5 | $80,751,000.00 | $48,796,184.34 |
| RALI 2006-QO7 | 751150AH6 | $64,378,000.00 | $46,855,661.04 |
| RALI 2006-QO7 | 751150AJ2 | $37,954,000.00 | $32,438,418.87 |
| RALI 2006-QO7 | 751150AA1 | $12,000,000.00 | $7,142,533.74 |
| RALI 2006-QO8 | 75115FAS9 | $15,000,000.00 | $13,791,616.34 |
| RALI 2006-QO9 | 75115HAN6 | $548,514,000.00 | $257,600,151.69 |
| RALI 2006-QO9 | 75114PAC3 | $85,000,000.00 | $79,706,842.10 |
| RALI 2006-QO9 | 75114PAA7 | $1,700,000.00 | $0.00 |
| RALI 2006-QS1 | 761118SB5 | $22,000,000.00 | $5,271,753.67 |
| RALI 2006-QS10 | 751155AP7 | $66,810,666.00 | $29,334,407.16 |
| RALI 2006-QS10 | 751155AN2 | $15,810,666.00 | $6,941,953.19 |
| RALI 2006-QS10 | 751155BE1 | $5,293,385.00 | $2,509,526.92 |
| RALI 2006-QS11 | 75115EAA1 | $75,000,000.00 | $27,080,806.88 |
| RALI 2006-QS11 | 75115EAU7 | $17,284,000.00 | $13,187,758.02 |

...THE furnishing original information regarding a vast fraudulent tax avoidance scheme involving Platinum Capital Group Corp., Aurora Loan Services LLC, Residential Funding Company, LLC, Residential Accredit Loans, Inc., Residential Funding Corporation, Homecomings Financial LLC, Deutsche Bank Trust Company Americas, Wells Fargo Bank, N.A., Mortgage Electronic Registration Systems (MERS), and Goldman, Sachs & Co., and the **RALI Series 2006-QO6 Trust - series A1-A3; M1-M9, SB, R1 and R2,** *et al.,* **named below, as well as all related RALI Series Trusts starting in 1995 forward as indicated below,** which conduct, regarding each of the named trust(s), has resulted in excess of two million dollars ($2,000,000) in tax avoidance, or evasion, as the case may be.

### Tax Avoidance\Evasion Information & Issues:

**Various related entities involved:**

**RALI 2006-QO6 A1 for taxable years 2006 thru 2011**
**RALI 2006-QO6 A2 for taxable years 2006 thru 2011**
**RALI 2006-QO6 A3 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M1 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M2 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M3 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M4 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M5 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M6 for taxable years 2006 thru 2011**

1 | PAGE

**RALI 2006-QO6 M7 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M8 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M9 for taxable years 2006 thru 2011**
**RALI 2006-QO6 SB for taxable years 2006 thru 2011**
**RALI 2006-QO6 R1 for taxable years 2006 thru 2011**
**RALI 2006-QO6 R2 for taxable years 2006 thru 2011**

**And all RALI Series Trust(s) – All Series 1995-2008 that engaged in similar conduct for all taxable years 1995 through 2011. (263 entities named in Exhibit Q)**

**(a)      Each and every one of the above entities have failed to properly qualify as a real estate investment conduit (REMIC) pursuant to Internal Revenue Code Section 860D(a)(4),**

**(b)      Each and every one of the above entities have improperly & falsely filed IRS form 8811 under penalties of perjury to irrevocably elect tax exempt pass through status,**

**(c)      Each and every one of the above entities have improperly filed false income tax returns forms 1066, with the Internal Revenue Service, to avoid double taxation on income derived from securitized mortgage pools & interest income earned, thereon,**

**(d)      Each and every one of the above entities have improperly represented themselves to the IRS and investors to be a qualified tax exempt entity pursuant to IRC Section 860D and further failed to timely notify IRS via form 8811 that this entity no longer qualifies as tax exempt REMIC (Reg. Sec. 1.6049-7) at all relevant times herein,**

**(e)      Each and every one of the above entities have improperly reported income and expenses on forms 1066 for all relevant periods, encompassing all calendar years, 2007 through calendar year 2011 thereby delaying the running of the statute of limitations for tax assessment purposes, until proper income tax returns are filed,**

**(f)      Each and every one of the above entities have engaged in extensive & numerous illegal prohibited transactions pursuant to IRC Section 860F(a), which subject each of those relevant transactions to the 100% prohibited transaction tax.**

**(g)      All of the above IRS violations have been occasioned, by a flawed manner of custom and practice of selling notes of mortgage pools into flawed REMIC originations & securitizations, and specifically, by the failure of RALI Series 2006-QO6 Trust and each of the above named entities to substantially acquire all of the entities qualified assets (qualified mortgages or permitted investments), at the close of the third month, beginning after the relevant startup day and all times thereafter. (Code Section 860D(a)(4)).**

*CLAIM # 4702*

(h)    The above alluded to IRS violations in paragraph (g) immediately above amount to a blatant pattern of financial fraud, which, directly or indirectly, were occasioned by the custom and practice of representatives of the trustees, and\or, the various named taxpayers, fabricating & falsifying foreclosure documents (by the collective conduct of the various mortgage servicers, agents, legal representatives and other related parties\professionals).  All parties involved herein, have acted in concert, conspired, and\or, aided and abetted in said illegal fraudulent tax evasive or tax avoidance conduct.

(i)    On information and belief, the claimants herein allege that the entities selling mortgage notes to this REMIC (& others) have treated the sales of billions of dollars of mortgage notes as a tax free exchanges presuming a transaction to be between a seller icon bank and a tax free pass through REMIC, (See IRC Section 860F(b); Reg. Sec. 1.860F(b)) and have avoided paying taxes thereon pursuant to IRC Section 453(b) dealing with each sale, exchange or, disposition of installment obligations and have thus failed to recognize income on these sale transactions with all non qualifying REMICs.

(j)    Claimants herein have identified numerous IRS "badges of fraud," "fraudulent filing of elections," "fraudulent filing of false tax returns," "fraudulent filing of false IRS information returns" as well as "fundamental fraudulent documentation fabrication which should subject all tax assessments herein, to the 50% income tax fraud penalty."

### Claimant's submission:

The above named joint claimants submit the following documents in support of their

claims of (1) prima facie evidence of ongoing and continuing tax avoidance and evasion,

(2) prima facie evidence of fabrication of false documents of ownership of mortgage

note(s) in connection with relevant foreclosure proceedings\litigation with the Rev. Tomas

Diaz, the principal claimant herein, (3) failure to acquire mortgage pools in a timely

manner, (4) inconsistent requisite IRS Real Estate Mortgage Investment Conduits

(REMICs) evidence of completing ownership and possession of note claims of qualified

trust assets, of RALI Series 2006-QO6 Trust - series A1-A3; M1-M9, SB, R1, R2 in

support of their claim for a reward pursuant to IRS Section 7623(b)):

*Claim # 4702*

A.      (i) **Final Judgment of Foreclosure**; Deutsche Bank Trust Company Americas as Trustee v. Tomas Diaz, et al., Case#: 2007-16754-CA on January 8th, 2008. And further, the (ii) **False\Fabricated Affidavit in Support of Plaintiff's Motion for Summary Judgment** filed September 6th 2007, verified by affiant Cheryl Samons (Notorious Robo-Signer working in the Law Offices of David J. Stern, P.A.), as Authorized Signatory of the Law Offices of David J. Stern, P.A., on behalf of Homecomings Financial, LLC, under penalties of perjury, and notarized by Ruth Pinero, all evidencing ongoing litigation that resulted in the discovery of original information available only to Rev. Tomas Diaz by virtue of his pursuit of his foreclosure defense litigation.

B.      As further evidence of ongoing litigation: (i) Affidavit of Lost Note dated May 30th, 2007 by Residential Funding Company, LLC and (ii) Ex Parte Motion To Vacate Summary Final Judgment dated October 15th, 2010.

C.      REV. TOMAS DIAZ mortgage note was securitized and selected by the RALI Series 2006-QO6; **15 TRANCHES** – as per Bloomberg excel worksheets.

D.      REV. TOMAS DIAZ MORTGAGE NOTE **DETAIL** IN LOAN POOL for RALI Series 2006-QO6.

E.      REV. TOMAS DIAZ **ENTIRE LOAN POOL** for RALI Series 2006-QO6 – per Bloomberg excel worksheets.

F.      Notice of judicial filing of **Declaration** of Alexis Mesa of Forensic Loan Audit indicating securitization of claimants mortgage note and Excel Work papers of Mortgage Pools of RALI Series 2006-QO6 4-6-2012 with the 11th Judicial Circuit Court of Miami-Dade County, Florida.

G.      Notice of filing of Affidavit of Alexis Mesa in opposition to Lender's Legal Standing.

H.      Copy of original mortgage from Platinum Capital Group, as mortgagee, to Rev. Tomas Diaz, mortgagor, in the original amount of $1,000,000., as recorded in OR Book 24526 pages 3829-3850, recorded 5-15-2006, Public Records of Miami-Dade County, Florida.

I.      Copy of promissory note attached to mortgage referenced in exhibit G executed by Rev. Tomas Diaz and dated April 27th, 2006, to lender Platinum Capital Group with the allonge and the assignments on same from Platinum Capital Group to Residential Funding Corporation by it's Asst. Secretary Carleton Pyfrom II, and from Residential Funding Corporation to Deutsche

*CLAIM # 4702*

Bank Trust Company Americas as Trustee executed by the notorious robo-endorsement, non-signer/stamper, Judy Faber.

J.     Deposition of Judy Faber 8-14-2009. U.S. Bank, NA, as Trustee vs. Robinson @ GMAC FRC, LLC, One Meridian Crossings, Minneapolis, Minnesota 55423.

K.     Richard & Moses LLC letter to Judge Joseph M Strickland advising of improprieties associated with Judy Faber "endorsement stamp" and "residential funding company L.L.C. dated 9-22-10.

L.     Judy Faber - improper GMAC Affidavits Leading to Charges of Document Fabrication to Change Title (article posted on the Internet)

M.     Form 424B prospectus which outlines the terms and conditions of the offering and the prospectus supplement which identifies: Platinum Capital Group, Corp as the Seller; Residential Accredit Loans, Inc., as the Depositor; Residential Funding Corporation as the Master Servicer and Sponsor, Wells Fargo Bank, N.A., as the custodian of the mortgage loans; RALI Series 2006-QO6 Trust as the Issuing Entity; and Goldman, Sachs & Co. as the Underwriter. **RALI Series 2006-QO6 Trust Prospectus supplement, dated, June 28th, 2006:**

   i.   RALI Series 2006-QO6 Trust has been advised by counsel that it will qualify as two Real Estate Mortgage Investment Conduits (REMICs) and the prospectus refers to REMIC I and REMIC II. According to the Prospectus on page S-100 under the heading "Material Federal Income Tax Consequences" the RALI Series 2006-QO6 Trust that this loan was deposited into indicates that it will be treated as a REMIC.
   ii.  On page S-4 of the prospectus, the cutoff date for IRS REMIC qualification purposes is shown as June 1, 2006.
   iii. On page S-28 of the prospectus, it clearly states in a section identified as "Issuing Entity" that the "Depositor" assigns to the trustee for the benefit of the certificateholders without recourse all right, title and interest of the Depositor in the mortgage loans.
   iv.  On page S-4 the depositor in this securitized arrangement is named as Residential Accredit Loans Inc., an affiliate of Residential Funding Company, LLC.

N.     Corporate Assignment of Mortgage from MERS as nominee for Platinum Capital Group to Deutsche Bank Trust Company Americas as Trustee dated October 26th, 2006 and signed by the purported MERS Vice President Matt Favorite, who is also identified on the document as the "preparer" of the document for Residential Funding Company, LLC, a party to the securitization

*Claim # 4702*

trust RALI Series 2006-QO6 and notarized by Karen E. Steffensen in the state of Minnesota and as recorded in the public records of Miami-Dade County OR BK 25305, page 0654, on January 25th, 2007; long after the trust that allegedly holds this mortgage and note was prohibited from any transactions given the REMIC status elected.

O.      Deposition of Cheryl Samons identifying the systemic fraudulent document fabrication & robo-signing processes used at the Law Offices of David J. Stern P.A. to prepare foreclosure files. In this deposition it is made clear that David Stern prepares the documents he needs and Cheryl Samons signs them.

P.      The Florida Attorney General's Economic Crimes Division Report on the Unfair, Deceptive, and Unconscionable Acts in Foreclosure Cases. This report specifically targets the practices of the Law Offices of David J. Stern P.A., please take notice as it is directly related to this claim. This report identifies fraudulent practices that have been used by banks, loan servicers and their agents to forge or manufacture documents. Specifically and particularly in this claim there is a document where the MERS assignment of the lead claimant's property matches an example provided in the Florida AG's report. See page 80 and also on page 79 and 81 of the report an excerpt from the Testimony of Tammie Lou Kapusta, former employee of Law Offices of David J. Stern, P.A.

| | |
|---|---|
| Q | Would these notaries be there watching her [Cheryl Samons] as she signed? |
| A | No. |
| Q | She would just sit there and sign stacks of them? |
| A | Correct. As far as notaries go in the firm I don't think any notary actually used their own notary stamp. The team used them. |
| Q | There were just stamps around? |
| A | Yes. |
| Q | And you actually saw that? |
| A | I was part of that. |
| Q | So this was an assignment signing table? |
| A | Correct. Assignments or Affidavit A's that she was signing. |
| Q | What's an Affidavit A? |
| A | The indebtedness affidavit. |
| Q | Okay. |
| A | I think that's all Cheryl signed for. I think Beth signed for the rest. There's your Exhibit E's. We had different exhibits. That's how they signed them. When Cheryl was out of the office Tammie would sign them or Beth would go sign them. |

*CLAIM # 4702*

| | |
|---|---|
| Q | Beth would sign but it would say Cheryl Samons? |
| A | Correct. |
| Q | And Beth would be the signer? |
| A | Correct. |
| Q | Or Tammie Sweat? |
| A | Right. |

This rampant fraud is further corroborated on page 83 of the report by the testimony of Kelly Scott, former employee of the Law Offices of David J. Stern, P.A.

Q. Other than Cheryl going around twice a day to sign the documents that she was reading, was there anyone else that did that, as well?

A. Only Cheryl. And only when Cheryl was out of town, that she would go on vacation, there was someone else that would sign on her behalf. Who was it? I really don't know.

Q. But they signed Cheryl's name?

A. Yes.

Q. And when you said those were the papers that were up on the long table on the four floors, what types of documents were those?

A. Motions for Summary Judgment and Assignments of Mortgage.

\* \* \*

Q. But whatever was on those long tables, nobody was reading? They were just putting their names on them?

A. Yes, they were just putting their names.

Q. Yes, there was no one reading them?

A. Yes, there was no reading them.

Q. Claimants incorporate by reference the attached article of **WHY ALL THE ROBO-SIGNING? SHEDDING LIGHT ON THE SHADOW BANKING SYSTEM**, Ellen Brown. January 24, 2012.

R. Claimants incorporate by reference, the attached list of 263 Special Purpose Vehicles (SPVs) wrongfully claiming REMIC status: RALI Series Trust(s) – All Series 1995-2008 that engaged in similar conduct for all taxable years 1995 through 2011; 263 SPVs listed having engaged in similar conduct of tax avoidance, prohibited transactions, and tax fraud for all taxable years 1995 through 2012.

S. Letter from Rev. Tomas Diaz to Aurora Loan Services, a Truth In Lending Act Request, sent on April 3rd, 2012 to verify the misrepresentation of loan terms and to corroborate Deutsche Bank Trust Company Americas as the

*CLAIM # 4702*

beneficial owner of the loan in the RALI Series 2006-QO6 REMIC. Also included is the signed certified receipt from Aurora Loan Services.

## Background & Legal Arguments of Claimant(s):

1.    Pursuant to the attached exhibits, a foreclosure complaint was filed against Rev. Tomas Diaz on or about October 31, 2006.  Rev. Tomas Diaz's loan was securitized and ownership was to be transferred into the RALI Series 2006-QO6 on or about June 29, 2006; and DEUTSCHE BANK TRUST COMPANY AMERICAS attorney, in the above referenced foreclosure litigation, represented that Platinum Capital Group, Corp., in the legal status therein, was the owner and holder of the Borrower's loan.

2.    The form 424B prospectus Supplement governing this specific Trust outlines with absolute clarity and with particularity the entities that are and were involved in this trust from inception. Exhibit M, the form 424B prospectus, provides a road map of the exact chain of title and ownership of every Note and Mortgage that was selected for inclusion in this specific Trust. See page 19 et. seq. for a discussion of the Representations with Respect to Mortgage Collateral, criteria for mortgage loans included in the trust and the ongoing trustee responsibilities with regards to the servicing agents, periodic reviews, oversight, etc.

3.    This specific trust is governed by certain operative documents that dictate the actions of any and all agents for the trust, their powers and how they may act on behalf of the trust. An agent for the trust, such as the trustee, has absolutely no power to act outside of the powers and authority vested in it by these documents.  The fabricated assignments and fabrication of documents associated with this claim (& attached hereto) demonstrates indisputably that the trustee's have acted outside the powers and authority vested in their positions, by acting in concert, aiding and abetting, conspiring, with their selected agents,

*CLAIM # 4702*

representatives, mortgage servicers, legal counsel, in the filing of numerous false and fabricated documents in various courts and with the Internal Revenue Service thus constituting fraudulent conduct and endless badges of fraud.

4.    The governing documents for this trust (& others named) are the Prospectus, Prospectus Supplement, Pooling and Servicing Agreement and the Mortgage Loan Purchase Agreement referred to in the Pooling and Servicing Agreement.

5.    Through access to the Electronic Data Gathering Analysis and Retrieval (EDGAR) System with the Securities and Exchange Commission (SEC) and from other sources relating to the personal foreclosure litigation of the principal claimant, Rev. Tomas Diaz, and the other related claimants herein, were able to retrieve the various submitted documents, some of which were filed with the SEC in 2006 relative to the 2006 trust named herein, which allegedly holds Rev. Tomas Diaz's mortgage loan.

6.    **THE TRUST PROSPECTUS**, attached as **Exhibit**    clearly states on page S-91. "Custodial Arrangements: The trustee will be directed to appoint Wells Fargo Bank, N.A., to serve as custodian of the mortgage loans. The custodian is not an affiliate of the depositor, the master servicer or the sponsor. No servicer will have custodial responsibility for the mortgage notes. Residential Funding is required to deliver only the notes to the custodian. The custodian will maintain mortgage loan files that contain originals of the notes and, to the extent delivered to the custodian by Residential Funding, the mortgages, assignments and allonges, in vaults that may be located at the premises of the sponsor or an affiliate. Only the custodian has access to these vaults. A shelving and filing system segregates the files relating to the mortgage loans from other assets serviced by the master servicer." In this case a fabricated assignment (see exhibit N) was filed

upon the public records of Miami-Dade County, is false, and is in conflict with the requirements of page S-91 of the prospectus in the manner in which the trustee shall act.

7.    **Flawed formation of REMICs – Section 860 IRC.** As a result of all of the fabricated documents herein, the requirement of taking ownership and possession of their mortgage pools in a timely manner was not satisfied and numerous prohibited transactions unfolded thereafter.   This conduct violates IRC Section 860 F (a) and constitutes prohibited transactions.

8.    The prospectus clearly stipulates that the Depositor, Residential Accredit Loans, Inc., an affiliate of Residential Funding Corporation is the only entity that can assign, transfer and convey the mortgage loans to the Trustee for this Trust.  The documents filed in the foreclosure action and the assignments of mortgage indicate that no mortgage notes were transferred to the REMIC in a proper manner.

9.    The Originator for Rev. Tomas Diaz's loan was Platinum Capital Group Corp..

10.    Residential Accredit Loans, Inc. was to purchase the Rev. Tomas Diaz's loan from Platinum Capital Group Corp. and thereafter transfer said purchased mortgage notes, into the trust on or about June 29th, 2006. Therefore, it is impossible in light of the presented documentation of the servicers of this loan to make a claim that Platinum Capital Group Corp. could assign anything after June 29th, 2006 which was the closing date of the trust.

11.    **All prior court filings by Judy Faber, Cheryl Samons, and the Law Offices of David J. Stern P.A. foreclosure mill are sullied and called into question.**  The result of these aforedescribed improper actions cause the named REMIC herein to lack the documentation to demonstrate that they acquired their mortgage pools within a 90 startup period circa June 29, 2006.  The assignments provided are clearly fabricated, as implied

CLAIM #4702

from a reading of the Cheryl Samons, deposition and the David J. Stern representation in *The Florida Attorney General's Economic Crimes Division Report on the Unfair, Deceptive, and Unconscionable Acts in Foreclosure Cases*. The false assignments attached hereto, are in violation of the tax compliance expectations of the trustee as to the representations in the Prospectus Supplement, on page 78 under the heading "Material Federal Income Tax Consequences" the RALI Series 2006-QO6 wherein it was represented that this loan was to be properly deposited into a properly tax qualified and elected REMIC, which provides for pass-through tax treatment of the income generated by the Trust assets.

12.    These trusts have been receiving favorable tax treatment illegally. A REMIC trust has a special tax status with the Internal Revenue which allows the cash flow on the pool of loans to "pass through' to the individual certificate holders thereby avoiding double taxation on the cash flow – a significant profit advantage for the investors in that trust and which can easily translate into millions of dollars in taxes saved.

13.    Election by the Trust to be treated as one or more REMICs imposes strict and absolute requirements regarding transfers of assets (i.e. Mortgage loans or notes) to the Trust and IRC Section 860 outlines and governs these strict requirements.

14.    According to 26 CFR § 1.860D-1 (c)(2) *Identification of assets*. Formation of the REMIC does not occur until:  (i) The sponsor identifies the assets of the REMIC, such as through execution of indenture with respect to the assets; and (ii) The REMIC issues the regular and residual interest in the REMIC.

15.    RALI Series 2006-QO6 did not qualify as a tax exempt REMIC due to the failure to own and possess qualified mortgage pools in a timely manner: The Prospectus and PSA specifically identify a Closing Date, which is the last day that an asset (mortgage loan) can

*CLAIM # 4702*

be "identified" for inclusion in the Trust/REMIC. The Closing Date also serves as the Startup Day for the REMIC. According to the Internal Revenue Code, Section 860G, "All of a REMIC's loans must be acquired on the startup day of the REMIC or within three months thereafter." Any contributions of an asset (other than cash) that is contributed to the REMIC after the Startup Day (or within the allowable 90 day window) is deemed an "unqualified contribution" and causes the entire REMIC Trust to lose its tax-free status which would create tax liabilities to the Trust (and all the individual beneficiaries, shareholders or Certificate holders) because the Trust cash flow would be subject to double-taxation, or, at a minimum, the prohibited transaction is taxed at 100% to the Trust. Due to the fabricated assignments of mortgage notes, fabricated assignments of mortgages, there is no evidence of proper transfer of mortgage notes to the RALI Series 2006-QO6.

16.    **Failed Securitization of Trust(s).** Since the parties serving as agents for the Trust did not strictly adhere to the guidelines and conveyance clauses specifically delineated in the PSA the Trust herein never obtained its special REMIC tax status, which results in double taxation on all trust income, and, subjects the Trust to a 100% tax on any and all prohibited transactions.

17.    The Closing Date for this Trust/REMIC was: on or about June 29, 2006. The foreclosure litigation and assignments demonstrate non compliance with this IRS qualification requirement.

18.    Additionally, the creation of the trust is flawed due to the fact that all steps in the 'contribution" and transfer process (of the mortgage notes) must be true and complete sales between parties and within the three month time limit from the Startup Day. Therefore, every transfer of the Note(s) for inclusion in the Trust *must be a true purchase and sale*, and

*CLAIM # 4702*

consequently the Note must be endorsed from one entity to another and the corresponding mortgage must be assigned in the exact same chain. The exhibits submitted indicate that this did not happen. Claimants contend that the transactions involved herein constitute a failed securitization of the relevant mortgage notes and the paperwork contradicts the claimed tax status of the named remics.

19.    The Pooling and Servicing Agreement (PSA), specifically requires the Depositor Residential Accredit Loans, Inc. (*and only the Depositor*) to convey the mortgage loans to the Trustee in a timely manner. Simply put, the PSA allows for absolutely no other form, method or chain of conveyances of mortgage loans to the Trust.

20.    **The Assignments filed by MERS as nominee for the Platinum Capital Group Corp. (see exhibit N) indicate that this Note was in fact deposited into this Trust after the Closing Date and is thereby an "unqualified contribution" into this Trust pursuant to IRC § 860, also constitutes a prohibited transaction, and thus subjects this entire Trust to a revocation of its REMIC tax status, taxation of the prohibited transaction, and subjects all cash flow received by this Trust to double taxation at corporate levels.**

21.    The pooling and Servicing Agreement is the governing document for this Trust and all parties. The PSA clearly defines the conveyances method and order for all mortgage loans in this Trust. The Trustee cannot violate the PSA when it accepts the Note and Mortgage via any Assignment of Mortgage, together with the Note.

22.    **The term "tax evasion" can be reserved for conduct that entails deception, concealment, destruction of records and the like, while tax avoidance refers to behavior that the taxpayer hopes will serve to reduce his tax liability but that he is prepared to disclose fully to the IRS.** The submitters herein, believe this is a case of tax

*CLAIM #4702*

evasion due to the lack of any reasonable business purposes to explain the conduct of all relevant parties herein, other than to avoid double taxation on the income of the alleged named trust entity. The conduct of Judy Faber, Cheryl Samons, and the Law Offices of David J. Stern P.A., etc., is beyond reasonable explanation.

23.   **Filing of false forms 8811.** A REMIC is required to elect REMIC status by filing under the penalties of perjury an irrevocable election to be taxed as a non taxable remic. Claimants submit that all forms 8811 filed by all of the named taxpayers herein were false and fraudulent.

24.   **IRS has ample authority to properly reflect this transaction correctly and subject it to U.S. Taxation at corporate rates.** Sections 61 & 482 of the Internal Revenue Code are the controlling authorities for the IRS to correct this tax avoidance scam. The substance vs. the form of this transaction lends itself not as a qualified REMIC, but, solely to being characterized as a corporate money lending operation, or, an insurance operation, and should be adjusted under Section 482 of the Internal Revenue Code so that these parties are taxed as a corporation since they began operations in 2007, or, the earliest date these activities began. Delinquent corporate tax returns are now due from 2007 forward and all related taxpayers should also file delinquent tax returns as this appears to be the custom and practice of Residential Accredit Loans, Inc., etc.

25.   **Mortgage of Rev. Tomas Diaz or others, may have implicitly been satisfied\paid in full due to credit enhancements without the mortgagors knowledge thereof.** The prospectus indicates that there are credit enhancements to insure against loss to the investors.

*CLAIM #4702*

**Prospectus supplement dated June 28, 2006 (to prospectus dated March 3, 2006)**

# $1,290,297,000
# RALI Series 2006-QO6 Trust
### Issuing Entity

# Residential Accredit Loans, Inc.
### Depositor

# Residential Funding Corporation
### Master Servicer and Sponsor

## Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QO6

The trust will hold a pool of one- to four-family residential, payment-option, adjustable-rate first lien mortgage loans with a negative amortization feature.

**Offered Certificates**

The trust will issue these classes of certificates that are offered under this prospectus supplement:

- 3 classes of senior certificates designated Class A-1, Class A-2 and Class A-3 Certificates; and
- 9 classes of subordinated certificates designated Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7, Class M-8 and Class M-9 Certificates

all as more fully described in the table on page S-6 of this prospectus supplement.

**Credit Enhancement**

Credit enhancement for the offered certificates consists of:

- excess cash flow;
- overcollateralization; and
- subordination provided to the Class A Certificates by the Class M Certificates, and subordination provided to the Class M Certificates by each class of Class M Certificates with a lower payment priority.

Distributions on the certificates will be on the 25th of each month or, if the 25th is not a business day, on the next business day, beginning July 25, 2006.

---

**You should consider carefully the risk factors beginning on page S-16 in this prospectus supplement.**

---

**Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of the offered certificates or determined that this prospectus supplement or the prospectus is accurate or complete. Any representation to the contrary is a criminal offense.**

**The Attorney General of the State of New York has not passed on or endorsed the merits of this offering. Any representation to the contrary is unlawful.**

**The certificates represent interests only in the trust, as the issuing entity, and do not represent interests in or obligations of Residential Accredit Loans, Inc., as the depositor, Residential Funding Corporation, as the sponsor, or any of their affiliates.**

Goldman, Sachs & Co., as underwriter, will purchase all of the offered certificates from the depositor. The certificates are offered by the issuing entity through the underwriters to prospective purchasers from time to time in negotiated transactions at varying prices to be determined at the time of sale. The net proceeds to the depositor from the sale of the underwritten certificates will be approximately 99.99% of the certificate principal balance of the underwritten certificates, plus accrued interest, before deducting expenses.

# Goldman, Sachs & Co.
### Underwriter

CLAIM # 4702

## Table of Contents

**Page**

SUMMARY .......................................S-4
RISK FACTORS ..............................S-16
    Negative Amortization Loans
        and Deferred Interest .............S-16
    Risk of Loss ...............................S-17
    Risks Relating to Primary
        Mortgage Insurers .................S-21
    Limited Obligations ...................S-22
    Liquidity Risks ..........................S-22
    Bankruptcy Risks .......................S-22
    Special Yield and Prepayment
        Considerations .......................S-23
ISSUING ENTITY ...........................S-28
SPONSOR AND MASTER SERVICER ........S-28
    Sponsor Securitization
        Experience .............................S-29
    Master Servicer Servicing
        Experience .............................S-32
AFFILIATIONS AMONG
    TRANSACTION PARTIES ................S-35
DESCRIPTION OF THE MORTGAGE
    POOL .........................................S-36
    General ......................................S-36
    Mortgage Pool Characteristics .........S-36
    Compliance with Local, State
        and Federal Laws ...................S-38
    Mortgage Rate Adjustment ...............S-38
    Characteristics of the Mortgage
        Loans.....................................S-41
    Balloon Mortgage Loans.................S-43
    Static Pool Information ...................S-43
    Standard Hazard Insurance and
        Primary Mortgage
        Insurance...............................S-44
    The Program ..............................S-45
    Underwriting Standards .................S-47
    Originators ................................S-47
    Additional Information ..................S-47
DESCRIPTION OF THE
    CERTIFICATES............................S-49
    General ......................................S-49
    Glossary of Terms........................S-50
    Interest Distributions....................S-65
    Basis Risk Shortfall Reserve
        Fund .....................................S-66
    Determination of One-Month
        LIBOR ..................................S-66
    Principal Distributions ..................S-67

**Page**

    Excess Cash Flow and
        Overcollateralization ..............S-69
    Allocation of Losses .....................S-71
    Advances ...................................S-72
    Residual Interests.........................S-73
CERTAIN YIELD AND
    PREPAYMENT
    CONSIDERATIONS.......................S-74
    General .......................................S-74
    Prepayment Considerations .................S-74
    Allocation of Principal
        Payments...............................S-77
    Realized Losses and Interest
        Shortfalls...............................S-78
    Pass-Through Rates ......................S-79
    Purchase Price.............................S-80
    Assumed Final Distribution
        Date.......................................S-80
    Weighted Average Life ......................S-80
POOLING AND SERVICING
    AGREEMENT..............................S-91
    General ......................................S-91
    Custodial Arrangements .....................S-91
    The Master Servicer and
        Subservicer ...........................S-91
    Servicing and Other
        Compensation and
        Payment of Expenses...........S-96
    Reports to Certificateholders ..............S-97
    Voting Rights..............................S-97
    Termination ................................S-98
    The Trustee.................................S-99
LEGAL PROCEEDINGS....................S-100
MATERIAL FEDERAL INCOME
    TAX CONSEQUENCES ................S-100
    Tax Return Disclosure and
        Investor List
        Requirements.........................S-104
    Penalty Protection.........................S-104
METHOD OF DISTRIBUTION ..................S-105
USE OF PROCEEDS ........................S-106
LEGAL OPINIONS ..........................S-106
RATINGS.....................................S-106
LEGAL INVESTMENT.....................S-107
ERISA CONSIDERATIONS ...............S-108
ANNEX I — MORTGAGE LOAN
STATISTICAL INFORMATION .......................I-1

*CLAIM #4702*

### Summary

The following summary provides a brief description of material aspects of this offering, and does not contain all of the information that you should consider in making your investment decision. To understand all of the terms of the offered certificates, you should read carefully this entire document and the prospectus.

| | |
|---|---|
| Issuing Entity .................................... | RALI Series 2006-QO6 Trust. |
| Title of securities............................ | Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QO6. |
| Depositor....................................... | Residential Accredit Loans, Inc., an affiliate of Residential Funding Corporation. |
| Master servicer and sponsor........... | Residential Funding Corporation. |
| Subservicer..................................... | Homecomings Financial Network, Inc., a wholly-owned subsidiary of Residential Funding Corporation, will subservice substantially all of the mortgage loans. |
| Trustee............................................ | Deutsche Bank Trust Company Americas. |
| Mortgage pool ............................... | 3,651 payment-option, adjustable-rate mortgage loans with a negative amortization feature. The mortgage loans have an aggregate principal balance of approximately $1,302,015,741 as of the cut-off date, and are secured by first liens on one- to four- family residential properties. |
| Originators ..................................... | Approximately 40.5% by principal amount of the mortgage loans were originated by Homecomings Financial Network, Inc., a wholly-owned subsidiary of Residential Funding Corporation. |
| Cut-off date .................................... | June 1, 2006. |
| Closing date .................................... | On or about June 29, 2006. |
| Distribution dates............................ | The 25th of each month or, if the 25th is not a business day, on the next business day beginning in July 2006. |
| Scheduled final distribution date ... | The distribution date in June 2046. The actual final distribution date could be substantially earlier. See "Certain Yield and Prepayment Considerations" in this prospectus supplement. |

*CLAIM # 4702*

### Issuing Entity

The depositor will establish a trust with respect to Series 2006-QO6 on the closing date, under a series supplement, dated as of June 1, 2006, to the standard terms of pooling and servicing agreement, dated as of March 1, 2006, among the depositor, the master servicer and the trustee. The pooling and servicing agreement is governed by the laws of the State of New York. On the closing date, the depositor will deposit into the trust a pool of mortgage loans that in the aggregate will constitute a mortgage pool, secured by first liens on one- to four-family residential properties with terms to maturity of not more than 40 years. The trust will not have any additional equity. The pooling and servicing agreement authorizes the trust to engage only in selling the certificates in exchange for the mortgage loans, entering into and performing its obligations under the pooling and servicing agreement, activities necessary, suitable or convenient to such actions and other activities as may be required in connection with the conservation of the trust fund and making distributions to certificateholders.

The pooling and servicing agreement provides that the depositor assigns to the trustee for the benefit of the certificateholders without recourse all the right, title and interest of the depositor in and to the mortgage loans. Furthermore, the pooling and servicing agreement states that, although it is intended that the conveyance by the depositor to the trustee of the mortgage loans be construed as a sale, the conveyance of the mortgage loans shall also be deemed to be a grant by the depositor to the trustee of a security interest in the mortgage loans and related collateral.

Some capitalized terms used in this prospectus supplement have the meanings given below under "*Description of the Certificates—Glossary of Terms*" or in the prospectus under "*Glossary*."

### Sponsor and Master Servicer

Residential Funding Corporation, a Delaware corporation, buys residential mortgage loans under several loan purchase programs from mortgage loan originators or sellers nationwide, including affiliates, that meet its seller/servicer eligibility requirements and services mortgage loans for its own account and for others. See "*The Trusts—Mortgage Collateral Sellers*" and "*—Qualifications of Sellers*" in the prospectus for a general description of applicable seller/servicer eligibility requirements. Residential Funding Corporation's principal executive offices are located at 8400 Normandale Lake Boulevard, Suite 250, Minneapolis, Minnesota 55437. Its telephone number is (952) 857-7000. Residential Funding Corporation conducts operations from its headquarters in Minneapolis and from offices located primarily in California, Texas, Maryland, Pennsylvania and New York. Residential Funding Corporation finances its operations primarily through its securitization program.

Residential Funding Corporation was founded in 1982 and began operations in 1986, acquiring, servicing and securitizing residential jumbo mortgage loans secured by first liens on one- to four-family residential properties. General Motors Acceptance Corporation purchased Residential Funding Corporation in 1990. In 1995, Residential Funding Corporation expanded its business to include "Alt-A" first lien mortgage loans, such as some of the mortgage loans described in this prospectus supplement. Residential Funding Corporation also began to acquire and service "subprime", closed-end and revolving loans secured by second liens in 1995.

*Claim # 4702*

## Sponsor Securitization Experience

The following tables set forth the aggregate principal amount of publicly offered securitizations of mortgage loans sponsored by Residential Funding Corporation for the past five years and for the first three months ended March 31, 2006. Residential Funding Corporation sponsored approximately $23.9 billion and $2.4 billion in initial aggregate principal amount of mortgage-backed securities in the 2001 calendar year backed by first lien mortgage loans and junior lien mortgage loans, respectively. Residential Funding Corporation sponsored approximately $52.1 billion and $2.4 billion in initial aggregate principal amount of mortgage-backed securities in the 2005 calendar year backed by first lien mortgage loans and junior lien mortgage loans, respectively. The percentages shown under "Percentage Change from Prior Year" represent the ratio of (a) the difference between the current and prior year volume over (b) the prior year volume.

### Sponsor Securitization Experience

### First Lien Mortgage Loans

| Volume by Principal Balance | 2001 | 2002 | 2003 | 2004 | 2005 | Three Months Ended 3/31/06 |
|---|---|---|---|---|---|---|
| Prime Mortgages(1) | $16,387,846,100 | $16,177,753,813 | $18,964,072,062 | $11,953,278,792 | $24,149,038,614 | $ 7,135,030,878 |
| Non-Prime Mortgages(2) | $ 7,566,949,253 | $15,475,700,554 | $27,931,235,627 | $24,408,531,445 | $27,928,496,334 | $ 8,748,631,665 |
| Total | $23,954,795,353 | $31,653,454,367 | $46,895,307,689 | $36,361,810,237 | $52,077,534,948 | $15,883,662,543 |
| Prime Mortgages(1) | 68.41% | 51.11% | 40.44% | 32.87% | 46.37% | 44.92% |
| Non-Prime Mortgages(2) | 31.59% | 48.89% | 59.56% | 67.13% | 53.63% | 55.08% |
| Total | 100.00% | 100.00% | 100.00% | 100.00% | 100.00% | 100.00% |
| Percentage Change from Prior Year(3) | | | | | | |
| Prime Mortgages(1) | 98.71% | (1.28)% | 17.22% | (36.97)% | 102.03% | - |
| Non-Prime Mortgages(2) | 2.60% | 104.52% | 80.48% | (12.61)% | 14.42% | |
| Total Volume | 53.34% | 32.14% | 48.15% | (22.46)% | 43.22% | - |

*Claim # 4702*

## Description of the Mortgage Pool

### General

The mortgage pool will consist of 3,651 payment-option, adjustable-rate mortgage loans with a negative amortization feature, with an aggregate principal balance outstanding as of the cut-off date after deducting payments of principal due during the month of the cut-off date, of approximately $1,302,015,741. The mortgage loans are secured by first liens on fee simple or leasehold interests in one- to four-family residential real properties.

None of the mortgage loans have a due date other than the first of each month. The mortgage loans will consist of mortgage loans with terms to maturity of not more than 40 years from the date of origination.

All percentages of the mortgage loans described in this prospectus supplement are approximate percentages by aggregate principal balance as of the cut-off date after deducting payments of principal due during the month of the cut-off date, unless otherwise indicated.

All of the mortgage loans were purchased by the depositor through its affiliate, Residential Funding. No unaffiliated seller sold more than 9.7% of the mortgage loans to Residential Funding Corporation. Approximately 40.5% of the mortgage loans were purchased from Homecomings Financial Network, Inc., which is an affiliate of Residential Funding Corporation and is referred to in this prospectus supplement as Homecomings. Substantially all of the mortgage loans are being subserviced by Homecomings.

The mortgage loans were selected for inclusion in the mortgage pool from among mortgage loans purchased in connection with the Expanded Criteria Program described below based on the Sponsor's assessment of investor preferences and rating agency criteria.

The depositor and Residential Funding will make certain limited representations and warranties regarding the mortgage loans as of the date of issuance of the certificates. The depositor and Residential Funding will be required to repurchase or substitute for any mortgage loan as to which a breach of its representations and warranties with respect to that mortgage loan occurs, if such breach affects materially and adversely affects the interests of the certificateholders in any of those mortgage loans. Residential Funding will not assign to the depositor, and consequently the depositor will not assign to the trustee for the benefit of the certificateholders, any of the representations and warranties made by the sellers or the right to require the related seller to repurchase any such mortgage loan in the event of a breach of any of its representations and warranties. Accordingly, the only representations and warranties regarding the mortgage loans that will be made for the benefit of the certificateholders will be the limited representations and warranties made by Residential Funding and the depositor to the limited extent described above. See *"The Trusts—Representations with Respect to Mortgage Collateral"* in the prospectus.

### Mortgage Pool Characteristics

None of the mortgage loans will have been originated prior to May 6, 2005 or will have a maturity date later than June 1, 2046. No mortgage loan will have a remaining term to stated maturity as of the cut-off date of less than 348 months. The weighted average remaining term to

*Claim # 4702*

stated maturity of the mortgage loans as of the cut-off date will be approximately 387 months. The weighted average original term to maturity of the mortgage loans as of the cut-off date will be approximately 387 months.  As used in this prospectus supplement the remaining term to maturity means, as of any date of determination and with respect to any mortgage loan, the number of months equaling the number of scheduled monthly payments necessary to reduce the then-current stated principal balance of that mortgage loan to zero, assuming the related mortgagor will make all scheduled monthly payments but no prepayments, on the mortgage loan thereafter.

The original mortgages for many of the mortgage loans have been, or in the future may be, at the sole discretion of the master servicer, recorded in the name of Mortgage Electronic Registration Systems, Inc., or MERS, solely as nominee for the originator and its successors and assigns, and subsequent assignments of those mortgages have been, or in the future may be, at the sole discretion of the master servicer, registered electronically through the MERS® System. In some other cases, the original mortgage was recorded in the name of the originator of the mortgage loan, record ownership was later assigned to MERS, solely as nominee for the owner of the mortgage loan, and subsequent assignments of the mortgage were, or in the future may be, at the sole discretion of the master servicer, registered electronically through the MERS® System.  For each of these mortgage loans, MERS serves as mortgagee of record on the mortgage solely as a nominee in an administrative capacity on behalf of the trustee, and does not have any interest in the mortgage loan.  As of the cut-off date, approximately 96.5% of the mortgage loans were recorded in the name of MERS.  For additional information regarding the recording of mortgages in the name of MERS see "*Yield and Prepayment Considerations— General*" in this prospectus supplement and "*Description of the Certificates—Assignment of Mortgage Loans*" in the prospectus.

92.7% of the mortgage loans provide for payment of a prepayment charge.  With respect to some of these mortgage loans, the prepayment charge provisions provide for payment of a prepayment charge for partial prepayments and full prepayments made within up to three years following the origination of that mortgage loan, in an amount not to exceed the maximum amount permitted by state law.  Generally, such amount is equal to six months' interest on any amounts prepaid during any twelve-month period in excess of 20% of the original principal balance of the related mortgage loan or a specified percentage of the amounts prepaid.  The amount of the applicable prepayment charge, to the extent permitted under applicable law, is as provided in the related mortgage note.  Applicable law may impose limitations on the amount of the prepayment charge or render such prepayment charge unenforceable.  In addition, under certain circumstances the master servicer may waive a prepayment charge.  The holders of the Class SB Certificates will be entitled to all prepayment charges received on the mortgage loans, and these amounts will not be available for distribution on the offered certificates. See "*Certain Legal Aspects of Mortgage Loans and Contracts—Default Interest and Limitations on Prepayments*" in the prospectus.

As used in this prospectus supplement, a loan is considered to be "30 to 59 days" or "30 or more days" delinquent when a payment due on any scheduled due date remains unpaid as of the close of business on the next following monthly scheduled due date: "60 to 89 days" or "60 or more days" delinquent when a payment due on any scheduled due date remains unpaid as of the close of business on the second following monthly scheduled due date; and so on.  The

*Claim # 4702*

determination as to whether a mortgage falls into these categories is made as of the close of business on the last business day of each month.

**Compliance with Local, State and Federal Laws**

Residential Funding, as seller, will represent and warrant, as of the date of issuance of the certificates, the following:

- Each mortgage loan at the time it was made complied in all material respects with applicable local, state and federal laws, including, but not limited to, all applicable anti predatory lending laws.

- None of the mortgage loans were subject to the Home Ownership and Equity Protection Act of 1994. None of the mortgage loans are loans that, under applicable state or local law in effect at the time of origination of the loan, are referred to as (1) "high cost" or "covered" loans or (2) any other similar designation if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees. See *"Certain Legal Aspects of the Mortgage Loans – The Mortgage Loans – Homeownership Act and Similar State Laws"* in the prospectus.

- None of the proceeds for the mortgage loans were used to finance the purchase of single premium credit insurance policies.

- None of the mortgage loans contain prepayment charges that extend beyond three years after the date of origination.

Residential Funding will be required to repurchase or substitute for any mortgage loan that violates any of these representations and warranties, if that violation materially and adversely affects the interests of the certificateholders in that mortgage loan. Residential Funding maintains policies and procedures that are designed to ensure that it does not purchase mortgage loans subject to the Homeownership Act. However, there can be no assurance that these policies and procedures will assure that each and every mortgage loan complies with all applicable origination laws in all material respects. Residential Funding is opposed to predatory lending practices, as a matter of corporate policy. In addition, Residential Funding's Servicer Guide requires that each subservicer accurately and fully report its borrower credit files to credit repositories in a timely manner.

See *"Certain Legal Aspects of Mortgage Loans and Contracts"* in the prospectus.

**Mortgage Rate Adjustment**

The interest rates on the mortgage loans adjust monthly, after an initial fixed rate period of one month. The mortgage rate for each mortgage loan will be adjusted to equal the sum of the index applicable to that mortgage loan and a fixed percentage amount, or note margin, for the mortgage loan, subject to rounding and the limitations described in this prospectus supplement. Subject to the maximum mortgage rate specified in the related mortgage note, none of the mortgage loans have a cap on the amount by which the interest rate may be adjusted on any adjustment date.

*Claim #4702*

## Description of the Certificates

### General

The Series 2006-QO6 Mortgage Asset-Backed Pass-Through Certificates will include the following fifteen classes:

- Class A-1 Certificates;

- Class A-2 Certificates;

- Class A-3 Certificates, which together with the Class A-1 Certificates and Class A-2 Certificates are sometimes referred to as the Class A Certificates;

- Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7, Class M-8 and Class M-9 Certificates, which together are sometimes referred to as the Class M Certificates;

- Class SB Certificates; and

- Class R-I Certificates and Class R-II Certificates, which together are sometimes referred to as the Residual Certificates, or Class R Certificates.

Only the Class A Certificates and Class M Certificates are offered hereby. See "*Glossary*" in the prospectus for the meanings of capitalized terms and acronyms not otherwise defined in this prospectus supplement.

The certificates, in the aggregate, will evidence the entire beneficial ownership interest in the trust. The trust will consist of:

- the mortgage loans;

- the cash deposited in respect of the mortgage loans in the Custodial Account and in the Certificate Account and belonging to the trust;

- property acquired by foreclosure of the mortgage loans or deed in lieu of foreclosure;

- any applicable primary insurance policies and standard hazard insurance policies;

- the Basis Risk Shortfall Reserve Fund; and

- all proceeds of any of the foregoing.

The offered certificates will be available only in book-entry form through facilities of The Depository Trust Company, and are collectively referred to as the DTC registered certificates. The Class A Certificates and the Class M-1, Class M-2, Class M-3 and Class M-4 Certificates will be issued in minimum denominations of $100,000 and integral multiples of $1 in excess of $100,000. The Class M-5, Class M-6, Class M-7, Class M-8 and Class M-9

*Claim # 4702*

## Pooling and Servicing Agreement

**General**

The certificates will be issued under a series supplement, dated as of June 1, 2006, to the standard terms of pooling and servicing agreement, dated as of March 1, 2006, together referred to as the pooling and servicing agreement, among the depositor, the master servicer, and Deutsche Bank Trust Company Americas, as trustee.   Reference is made to the prospectus for important information in addition to that described herein regarding the terms and conditions of the pooling and servicing agreement and the offered certificates.   The trustee, or any of its affiliates, in its individual capacity or any other capacity, may become the owner or pledgee of certificates with the same rights as it would have if it were not trustee.

The offered certificates will be transferable and exchangeable at the corporate trust office of the trustee, which will serve as certificate registrar and paying agent.   The depositor will provide a prospective or actual certificateholder without charge, on written request, a copy, without exhibits, of the pooling and servicing agreement.   Requests should be addressed to the President, Residential Accredit Loans, Inc., 8400 Normandale Lake Boulevard, Suite 250, Minneapolis, Minnesota 55437.   In addition to the circumstances described in the prospectus, the depositor may terminate the trustee for cause under specified circumstances.   See *"The Pooling and Servicing Agreement—The Trustee"* in the prospectus.

**Custodial Arrangements**

The trustee will be directed to appoint Wells Fargo Bank, N.A., to serve as custodian of the mortgage loans.   The custodian is not an affiliate of the depositor, the master servicer or the sponsor.   No servicer will have custodial responsibility for the mortgage notes.   Residential Funding is required to deliver only the notes to the custodian.   The custodian will maintain mortgage loan files that contain originals of the notes and, to the extent delivered to the custodian by Residential Funding, the mortgages, assignments and allonges, in vaults that may be located at the premises of the sponsor or an affiliate.   Only the custodian has access to these vaults.   A shelving and filing system segregates the files relating to the mortgage loans from other assets serviced by the master servicer.

**The Master Servicer and Subservicer**

*Master Servicer*.  The master servicer, an affiliate of the depositor, will be responsible for master servicing the mortgage loans.  Master servicing responsibilities include:

- receiving funds from subservicers;
- reconciling servicing activity with respect to the mortgage loans;
- calculating remittance amounts to certificateholders;
- sending remittances to the trustee for distributions to certificateholders;
- investor and tax reporting;
- coordinating loan repurchases;
- oversight of all servicing activity, including subservicers;
- following up with subservicers with respect to mortgage loans that are delinquent or for which servicing decisions may need to be made;
- approval of loss mitigation strategies;

*Claim # 4702*

- management and liquidation of mortgaged properties acquired by foreclosure or deed in lieu of foreclosure; and
- providing certain notices and other responsibilities as detailed in the pooling and servicing agreement.

The master servicer may, from time to time, outsource certain of its servicing functions, such as foreclosure management, although any such outsourcing will not relieve the master servicer of any of its responsibilities or liabilities under the pooling and servicing agreement.

For a general description of the master servicer and its activities, see "*Sponsor and Master Servicer*" in this prospectus supplement. For a general description of material terms relating to the master servicer's removal or replacement, see "*The Pooling and Servicing Agreement Rights Upon Event of Default*" in the prospectus.

*Subservicer Responsibilities.* Subservicers are generally responsible for the following duties:

communicating with borrowers;
sending monthly remittance statements to borrowers;
collecting payments from borrowers;
recommending a loss mitigation strategy for borrowers who have defaulted on their loans (i.e. repayment plan, modification, foreclosure, etc.);
accurate and timely accounting, reporting and remittance of the principal and interest portions of monthly installment payments to the master servicer, together with any other sums paid by borrowers that are required to be remitted;
accurate and timely accounting and administration of escrow and impound accounts, if applicable;
accurate and timely reporting of negative amortization amounts, if any;
paying escrows for borrowers, if applicable;
calculating and reporting payoffs and liquidations;
maintaining an individual file for each loan; and
maintaining primary mortgage insurance commitments or certificates if required, and filing any primary mortgage insurance claims.

*Homecomings Financial Network, Inc.* Homecomings will subservice substantially all of the mortgage loans pursuant to the terms of a subservicing agreement with the master servicer. The subservicing agreement provides that Homecomings will provide all of the services described in the preceding paragraph. Homecomings is a Delaware corporation and has been servicing mortgage loans secured by first liens on one-to four-family residential properties since 1996. Homecomings was incorporated as a wholly-owned subsidiary of Residential Funding Corporation in 1995 to service and originate mortgage loans. In 1996, Homecomings acquired American Custody Corporation to begin servicing subprime mortgage loans, and in 1999 Homecomings acquired Capstead Inc. to focus on servicing prime loans such as the mortgage loans described herein. After Capstead Inc. was acquired, Homecomings' total servicing portfolio was 164,000 loans with an aggregate principal balance of $25 billion with 20% being subprime. The three servicing locations were integrated onto one servicing system/platform by the end of 2001 becoming one of the first servicing operations to service all loan products on one servicing system. The operations of each of the acquired companies have been integrated into Homecomings' servicing operations. Approximately 85% of the mortgage loans currently

*Claim # 4702*

master serviced by Residential Funding Corporation are subserviced by Homecomings.  As of December 31, 2005, Homecomings serviced approximately 782,000 mortgage loans with an aggregate principal balance of approximately $104 billion.  In addition to servicing mortgage loans secured by first liens on one-to-four family residential properties, Homecomings services mortgage loans secured by more junior second liens on residential properties, and mortgage loans made to borrowers with imperfect credit histories, and subprime mortgage loans. Homecomings also performs special servicing functions where the servicing responsibilities with respect to delinquent mortgage loans that have been serviced by third parties is transferred to Homecomings.  Homecomings' servicing activities have included the activities specified above under "—Subservicer responsibilities."

Homecomings may, from time to time, outsource certain of its subservicing functions, such as contacting delinquent borrowers, property tax administration and hazard insurance administration, although any such outsourcing will not relieve Homecomings of any of its responsibilities or liabilities as a subservicer.  If Homecomings engages any subservicer to subservice 10% or more of the mortgage loans, or any subservicer performs the types of services requiring additional disclosures, the issuing entity will file a Report on Form 8-K providing any required additional disclosure regarding such subservicer.

The following table sets forth the aggregate principal amount of mortgage loans serviced by Homecomings for the past five years and the three months ended March 31, 2006.  The percentages shown under "Percentage Change from Prior Year" for years 2001 through 2005 represent the ratio of (a) the difference between the current and prior year volume over (b) the prior year volume.

*Claim # 4702*

My name is Tomas Diaz and I'm one of the many victims, of criminal bank fraud. The purpose of this letter is to establish a claim against: Case # 12-12042, 12-12019, 12-12020 Residential Funding Company LLC, Home Comings Financial LLC.

The criminal act of these delinquents, such as signature falsifications, robosigner, assignment fabrication and false testimonials under judgment are among the things they're capable of.

Breaking the chain of title and note and mortgage would have been fabricated or separated creating an insecure debt (the note without a security instrument    endorsed the note in Blank (&) Fraud of the trust documents, (filed with the sec.)    Fraudulent and fabricated (criminal hands) the to right foreclosure to my house

Fraudulent tax avoidance scheme involving platinum capital group corp. aurora loan services, residential funding company LLC, residential accredit loans inc, residential funding corp., homecomings financial LLC. Deutsche bank, trust company Americas, Nationstar, Wells Fargo Bank N, A Mers, Goldman, Sachs Co.

I know, I'm fighting against a "Goliath" with this claim and that these banking predators and their attorneys implied in my case are liars, thieves, and delinquents, now they've filed for Chapter 11 bankruptcy. Case # 12-12020, violating all the laws of IRS, SEC, OCC federal reservation, State and federal laws.

The matter with these Agents, bankers, and Service agencies is the change of semantics = such as changing the signatures, and false documentation.

I want to be able to redeem my property, reverse my mortgage, and hopefully receive the reimbursement of $400,000.00 that I've e spent on my home and the case here presented. I am a farmer and I have plans to stay in my home for a very long time. All I want is justice to be done, these heinous acts cannot continue to take place in our society, it is required to stand up for what is just and right. I respectfully direct myself to you and hope that we have a mutual agreement on these beliefs.

Cordially,

Tomas Diaz    07/15/2013

SEPT 2012
Outer Dimension: 1

t from your home or office at usps.com/pickup
s usps.com/postageonline

FIRMLY

USPS TRACKING NUMBER



# PRIORITY® MAIL

UNITED STATES POSTAL SERVICE

**Visit us at usps.com**

Label 107R, January 2008

:PRESS

Label 228, January 2008

expediteur:

To/Destinataire:

# PRIORITY® MAIL

UNITED STATES POSTAL SERVICE

**From**

TOMAS DIAZ
5200 SW 122 AVE
MIAMI, FLA 33175

**TO**  CLAIMS MANAGEMENT
RESIDENTIAL CAPITAL LLC
P O BOX 385220 BLOOMINGTON,
MINNESOTA 55438

CLAIM # 4702

**For Domestic and International Use**



1004





U. S. POSTAGE
PAID
MIAMI, FL
33175
JUL 16, '13
AMOUNT

**$10.25**

**<u>Exhibit A-4</u>**
**Lawson Diligence Response**



# ResCap

**MORRISON | FOERSTER**

## Claim Information

| Claim Number | 5282 |
|---|---|

| **Basis of Claim** | |
|---|---|
| Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim. | *See Attached  24 pages* |

**If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.**

| Loan Number: ACCT. # ███████ |
|---|

**Address of property related to the above loan number:**
*226 E. GORGAS LANE*

| City: PHILADELPHIA | State: PENNSYLVANIA | ZIP Code: 19119 |
|---|---|---|

**Additional resources may be found at  -  http://www.kccllc.net/rescap**

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 5282
Michelle Lawson, et al.
Type: POC

Claim #5282  Date Filed: 11/16/2012

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number:
**Residential Capital, LLC, Case No. 12-12020**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Michelle Lawson, et al.

☐ Check this box if this claim amends a previously filed claim.

Name and address where notices should be sent:

**Michelle Lawson, et al.
226 East Gorgas Lane
Philadelphia, PA 19119**

**Court Claim
Number:**
*(If known)*

Filed on: 11/8/2012

Telephone number: (215) 843-0560          email: michellec_lawson@hotmail.com

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**Same as above**

Telephone number: (267) 736-3985          email: michellec_lawson@hotmail.com

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

**1. Amount of Claim as of Date Case Filed:** $ **89,667.98**

If all or part of the claim is secured, complete item 4

If all or part of the claim is entitled to priority, complete item 5

■ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Secondary Mortgage Note
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:**
**3279**

**3a. Debtor may have scheduled account as:**
Michelle Lawson, et al.
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
(See instruction #3b)

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4)

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5)

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7)

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8)

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(**4**)

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ■ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**
**Value of Property:** $ **250,000**    **Annual Interest Rate 8.8750** % ■ Fixed ☐ Variable
(when case was filed)
**Amount of arrearage and other charges, as of the time case was filed, included in secured claim,**
if any: $ 0                       **Basis for perfection:** Deed of Trust

**Amount of Secured Claim:** $ **51,300.00**          **Amount Unsecured:** $ 0

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$ 0                (See instruction #6)

**Amount entitled to priority:**

$ **89,667.98**

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #8, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**9. Signature:** (See instruction #9) Check the appropriate box.
■ I am the creditor. ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Michelle Lawson, et al.
Title: _____
Company: _____
Address and telephone number (if different from notice address above):

*Michelle* (Signature)          11/8/2012 (Date)

**RECEIVED**
NOV 1 6 2012
KURTZMAN CARSON CONSULTANTS

Telephone number: (215) 843-0560          Email: michellec_lawson@hotmail.com

COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both.

Claim #5282  Date Filed: 11/16/2012

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |

Name of Debtor and Case Number: **Residential Capital, LLC, Case No. 12-12020**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. §503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (The person or other entity to whom the debtor owes money or property):
**Michelle Lawson, et al.**

Name and address where notices should be sent:

**Michelle Lawson, et al.**
**226 East Gorgas Lane**
**Philadelphia, PA 19119**

Telephone number  (215) 843-0560          email  michellec_lawson@hotmail.com

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
*(if known)*

Filed on  11/8/2012

Name and address where payment should be sent (if different from above):

**Same as above**

Telephone number  (267) 738-3985          email  michellec_lawson@hotmail.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $  **89,667.98**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**  Secondary Mortgage Note
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:**  **3279**

**3a. Debtor may have scheduled account as:**  Michelle Lawson, et al.
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

**Value of Property:** $ **250,000**   **Annual Interest Rate** **8.8750** % ☑ Fixed ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:** $ **0**

**Basis for perfection:**  Deed of Trust

**Amount of Secured Claim:** $ **51,300.00**   **Amount Unsecured:** $ **0**

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.   $ **0**   (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #6, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature:** (See instruction #9) Check the appropriate box.

☑ I am the creditor.   ☐ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)   ☐ I am the trustee, or the debtor, or their authorized agent.
(See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor.
(See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Michelle Lawson, et al.
Title:
Company:
Address and telephone number (if different from notice address above):

(Signature)  *Michelle*   (Date)  **11/8/2012**

Telephone number  (215) 843-0560          Email  michellec_lawson@hotmail.com

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both.

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier — 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan — 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use — 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units — 11 U.S.C. §507 (a)(8).

☐ Other — Specify applicable paragraph of 11 U.S.C. §507 (a)(_4_).

**Amount entitled to priority:**
$ **89,667.98**

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**RECEIVED**
**NOV 1 6 2012**
KURTZMAN CARSON CONSULTANTS
COURT USE ONLY

| Calculation of amount claimed as of May 14, 2012 | |
|---|---|
| *Monthly Principal and Interest Payment Amount* | *$408.17* |
| Amount paid toward Secondary Mortgage Note over six (6) years and eleven months, which is equivalent to eighty-three (83) payments (February  2005 - December 2011), where the monthly principal and interest payment amount is $408.17 | $33,878.11 |
| Amount paid toward Secondary Mortgage Note over five (5) months (January 2012 – May 2012), where the monthly principal and interest payment amount is $408.17 | $2,040.85 |
| Principal of Secondary Mortgage Note | $51,300.00 |
| *Amount of Claim as of May 14, 2012 where the principal of Secondary Mortgage Note is added to eighty-nine (89) monthly principal and interest payments* | **$87,218.96** |

| Calculation of amount of claim as of November 8, 2012 | |
|---|---|
| Principal of Secondary Mortgage Note | $51,300.00 |
| Amount paid toward Secondary Mortgage Note over six (6) years and eleven (11) months, which Is equivalent to eighty-three (83) payments, (February 2005 – December 2011), where the monthly principal and interest payment amount is $408.17 | $33,878.11 |
| Amount paid toward Secondary Mortgage Note over eleven (11) months, (January 1, 2012 – November 1, 2012, where the monthly principal and interest payment amount is $408.17 | $4,489.87 |
| *Amount of claim as of November 8, where the principal of Secondary Mortgage Note Is added to ninety- four (94) monthly principal and interest payments @ $408.17* | **$89,667.98** |

Michelle Lawson, et al.          Residential Capital, LLC Case No. 12-120020          Statement of Claims (3 pp.)

## Statement of Claims

1. Creditor is Michelle Lawson, et al., consumer and mortgagor residing at 226 East Gorgas Lane, Philadelphia, PA 19119. Creditor agreed to a single mortgage in the amount of $324,900.00 based upon a 30 year Fixed Rate Mortgage at an interest rate of 5.75%, a true and correct copy of which is attached hereto as Exhibit "A".

2. Debtor is Residential Capital, LLC, with a principal address as set forth in the claim and caption to complaint and Case No. 12-12020.

3. A promissory note (the "Note"), a true and correct copy of which is attached hereto as Exhibit "B" and is incorporated herein by reference, is secured by a secondary mortgage in the amount of $51,300.00 (the "Mortgage") dated December 3, 2004, executed by Trident Mortgage Company and its successors and assigns (also known as and doing business as the "Debtor") located at 1409 Kings Highway, Cherry Hill, NJ 08034.

4. The Mortgage and the Note should be considered voidable and rescinded upon the theory of mistake in that Creditor believed that the Note was one mortgage with a fixed rate of 5.75% and no balloon payment; whereas the Debtor was aware of the presence of the second mortgage and entered into the agreement on the basis of two mortgages, with one being the Note with a fixed interest rate of 8.8750% and a balloon payment of $40,945.67. Additionally, the Debtor knew or should have known that: (i) the Creditor would assume that it was one mortgage and one note rather than two; and (ii) the Creditor relied upon the Good Faith Estimate.

5. The Good Faith Estimate provided by Debtor did not disclose the presence of a second loan with a balloon payment as part of its terms among other provisions.

6. The Debtor did not provide a description and explanation of the nature and purpose of the Mortgage and the Note as well as specific information concerning balloon payments.

7. The Debtor did not supply Creditor with a Mortgage Servicing Disclosure Statement or a Servicing Disclosure Statement; hence, the Creditor was never notified of, made aware of or expected: (i) the possibility of multiple transfers of the Mortgage and the Note to other lenders and/or mortgage service providers; and (ii) that someone else would be servicing the Note and the Mortgage.



Michelle Lawson, et al.        Residential Capital, LLC Case No. 12-120020        Statement of Claims (3 pp.)

8. The Debtor and/or mortgage originator engaged in steering the Creditor to an unqualified loan and/or mortgage(s): (i) that had predatory characteristics including but not limited to abusive terms and excessive fees; (ii) when the consumers could obtain a "qualified loan": (iii) which had abusive or unfair lending practices that promote disparities among consumers of equal credit worthiness but of different race, ethnicity, gender or age; and (iv) mischaracterizing the consumer's credit history and/or the appraised value of the property.

9. The Creditor requested executed copies of the Mortgage and the Note from the Debtor but received unsigned copies of the Mortgage and the Note in response to the request.

10. Under this contract of adhesion, Creditor was led to believe that: (i) the down payment, good faith, and other purchase monies would be forfeited; and (ii) she would be in breach if the Mortgage and the Note were not signed. Furthermore, the Debtor should not be entitled to the benefit of this unfair bargain.

11. Furthermore, it is well settled that information in the Amortization Schedule (the "Schedule"), a true and correct copy of which is attached hereto as Exhibit "C" and is incorporated herein by reference, should match information in the GMAC Mortgage Account Statements (the "Statements"), true and correct copies of which are attached hereto as Exhibit "D" and is incorporated herein by reference; and any deviation constitutes misrepresentation and/or fraud. The principal, payment, payment number, interest and portion that are applied toward the principal as delineated on the Schedule provided by the Debtor *do not* match the interest paid year-to-date or the principal and interest amounts listed on the Statements.

12. This Mortgage and Note should be rescinded on the grounds of misrepresentation of fact and/or law with regard to the issuance of mortgage financing to purchase the property. Creditor was led to believe that she had to agree to the second mortgage or forgo financing altogether by *any* lender including Debtor. The Creditor relied upon this statement, and as a result the Creditor was fraudulently induced to contract for the Mortgage and the Note.

13. The grounds for rescission of the Mortgage and the Note include but are not limited to duress, coercion, unconscionability, failure of consideration and illegality. Because provisions in the Note, including the balloon payment and excessive interest rate, are such that the Creditor pays not only the principal and interest but also excessive fees

Michelle Lawson, et al.        Residential Capital, LLC Case No. 12-120020        Statement of Claims (3 pp.)

and interest that amount to a penalty and contract that: (i) is illegal; and (ii) runs afoul of public policy.

14. Without express language to the contrary, in the case of Debtor's bankruptcy and/or insolvency, the Debtor should immediately investigate, address, and provide relief to Creditor regarding predatory, unlawful, unconscionable and other fraudulent practices with respect to: (i) the Mortgage terms and provisions; (ii) the Note terms and provisions; and (iii) the lending and creditworthiness process as applied to Creditor.

15. The agreement is silent with respect to Creditor's rights in case of Debtor's bankruptcy and/or insolvency among other things.  Therefore, as part of the available remedies, the Creditor has a right to renegotiate the terms of the agreement, including but not limited to the interest rate, the "balloon payment," and the principal and monthly payments.

_Michelle Lawson_

Michelle Lawson, et al.
Creditor/Mortgagor



APP NO. ██████

## SECONDARY MORTGAGE NOTE

This Agreement is subject to the provisions of the Secondary Mortgage Loan Act.

December 3, 2004               Devon                    Pennsylvania
[Date]                         [City]                   [State]

226 EAST GORGAS LANE, PHILADELPHIA, PA 19119
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    51,300.00    (this amount will be called "principal"), plus interest, to the order of the Lender.  The Lender is    TRIDENT SECOND MORTGAGE COMPANY

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder".

### 2. INTEREST

I will pay interest at a yearly rate of  8.8750 %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

### 3. PAYMENTS

I will pay principal and interest by making payments every month of U.S. $    408.17
I will make my monthly payments on the    1st  day of each month beginning on    February 1, 2005    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. If, on    January 1,    2020, I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at    1409 NORTH KINGS HIGHWAY, CHERRY HILL, NJ 08034
or at a different place if required by the Note Holder.

### 4. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any of my monthly payments by the end of    15  calender days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.00%  of my overdue payment. I will pay this late charge only once on any late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment by the date stated in Section 3 above, I will be in default.
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described below, the Note Holder will still have the right to do so if I am in default at a later time.

**(C) Notice from Note Holder**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or, if it is not mailed, 30 days after the date on which it is delivered to me.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 5. THIS NOTE SECURED BY A MORTGAGE

In addition to the protections given to the Note Holder under this Note, a Mortgage, dated    December 3, 2004 protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That mortgage describes how and under what conditions I may be required to make immediate payments in full of all amounts that I owe under this Note.

### 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment". A prepayment of only part of the unpaid principal is known as a "partial prepayment".
I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

## 7. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer if to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 8. GIVING OF NOTICES

Any notice that must be given to me under this Note, will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address. Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

## 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE.

If more than one person signs this note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be requried to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note ( as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

**NOTICE TO BORROWER:**
Read this promissory note before you sign.
Do not sign this promissory note if it contains blank spaces.
This promissory note is secured by a secondary mortgage on your real property.

| | | |
|---|---|---|
| | | (Seal) |
| _____ | MICHELLE C. LAWSON | -Borrower |
| -Witness | | |
| | | (Seal) |
| _____ | MARGARET LAWSON | -Borrower |
| -Witness | | |
| | | (Seal) |
| _____ | JOSHUA E. LISS | -Borrower |
| -Witness | | |
| | | (Seal) |
| _____ | | -Borrower |
| -Witness | | |

WITHOUT RECOURSE
PAY TO THE ORDER OF:

TRIDENT SECOND MORTGAGE COMPANY

_____
GERARD F. GRIESSER, PRESIDENT

**PENNSYLVANIA** - SECOND MORTGAGE - 1/80 · FNMA/FHLMC UNIFORM INSTRUMENT          FORM 3939 (12/93)
PAGE 2 OF 2

Exhibit number 5282

Date: 12/01/04          App#  ████████          Page:  2
Borrower: MICHELLE C. LAWSON
                    AMORTIZATION SCHEDULE

Note amount   51300.00      Note rate  8.875000     Note term 180 months
Loan Program  ████████      PURCHASE MONEY SECOND MORTGAGE

| Pmnt# | Principal | Payment | Interest | Princ. part | M.I. |
|---|---|---|---|---|---|
| 1 | 51,300.00 | 408.17 | 379.41 | 28.76 | 0.00 |
| 2 | 51,271.24 | 408.17 | 379.19 | 28.98 | 0.00 |
| 3 | 51,242.26 | 408.17 | 378.98 | 29.19 | 0.00 |
| 4 | 51,213.07 | 408.17 | 378.76 | 29.41 | 0.00 |
| 5 | 51,183.66 | 408.17 | 378.55 | 29.62 | 0.00 |
| 6 | 51,154.04 | 408.17 | 378.33 | 29.84 | 0.00 |
| 7 | 51,124.20 | 408.17 | 378.11 | 30.06 | 0.00 |
| 8 | 51,094.14 | 408.17 | 377.88 | 30.29 | 0.00 |
| 9 | 51,063.85 | 408.17 | 377.66 | 30.51 | 0.00 |
| 10 | 51,033.34 | 408.17 | 377.43 | 30.74 | 0.00 |
| 11 | 51,002.60 | 408.17 | 377.21 | 30.96 | 0.00 |
| 12 | 50,971.64 | 408.17 | 376.98 | 31.19 | 0.00 |
| 13 | 50,940.45 | 408.17 | 376.75 | 31.42 | 0.00 |
| 14 | 50,909.03 | 408.17 | 376.51 | 31.66 | 0.00 |
| 15 | 50,877.37 | 408.17 | 376.28 | 31.89 | 0.00 |
| 16 | 50,845.48 | 408.17 | 376.04 | 32.13 | 0.00 |
| 17 | 50,813.35 | 408.17 | 375.81 | 32.36 | 0.00 |
| 18 | 50,780.99 | 408.17 | 375.57 | 32.60 | 0.00 |
| 19 | 50,748.39 | 408.17 | 375.33 | 32.84 | 0.00 |
| 20 | 50,715.55 | 408.17 | 375.08 | 33.09 | 0.00 |
| 21 | 50,682.46 | 408.17 | 374.84 | 33.33 | 0.00 |
| 22 | 50,649.13 | 408.17 | 374.59 | 33.58 | 0.00 |
| 23 | 50,615.55 | 408.17 | 374.34 | 33.83 | 0.00 |
| 24 | 50,581.72 | 408.17 | 374.09 | 34.08 | 0.00 |
| 25 | 50,547.64 | 408.17 | 373.84 | 34.33 | 0.00 |
| 26 | 50,513.31 | 408.17 | 373.59 | 34.58 | 0.00 |
| 27 | 50,478.73 | 408.17 | 373.33 | 34.84 | 0.00 |
| 28 | 50,443.89 | 408.17 | 373.07 | 35.10 | 0.00 |
| 29 | 50,408.79 | 408.17 | 372.82 | 35.35 | 0.00 |
| 30 | 50,373.44 | 408.17 | 372.55 | 35.62 | 0.00 |
| 31 | 50,337.82 | 408.17 | 372.29 | 35.88 | 0.00 |
| 32 | 50,301.94 | 408.17 | 372.02 | 36.15 | 0.00 |
| 33 | 50,265.79 | 408.17 | 371.76 | 36.41 | 0.00 |
| 34 | 50,229.38 | 408.17 | 371.49 | 36.68 | 0.00 |
| 35 | 50,192.70 | 408.17 | 371.22 | 36.95 | 0.00 |
| 36 | 50,155.75 | 408.17 | 370.94 | 37.23 | 0.00 |
| 37 | 50,118.52 | 408.17 | 370.67 | 37.50 | 0.00 |
| 38 | 50,081.02 | 408.17 | 370.39 | 37.78 | 0.00 |
| 39 | 50,043.24 | 408.17 | 370.11 | 38.06 | 0.00 |
| 40 | 50,005.18 | 408.17 | 369.83 | 38.34 | 0.00 |
| 41 | 49,966.84 | 408.17 | 369.55 | 38.62 | 0.00 |
| 42 | 49,928.22 | 408.17 | 369.26 | 38.91 | 0.00 |
| 43 | 49,889.31 | 408.17 | 368.97 | 39.20 | 0.00 |
| 44 | 49,850.11 | 408.17 | 368.68 | 39.49 | 0.00 |
| 45 | 49,810.62 | 408.17 | 368.39 | 39.78 | 0.00 |
| 46 | 49,770.84 | 408.17 | 368.10 | 40.07 | 0.00 |
| 47 | 49,730.77 | 408.17 | 367.80 | 40.37 | 0.00 |
| 48 | 49,690.40 | 408.17 | 367.50 | 40.67 | 0.00 |
| 49 | 49,649.73 | 408.17 | 367.20 | 40.97 | 0.00 |
| 50 | 49,608.76 | 408.17 | 366.90 | 41.27 | 0.00 |
| 51 | 49,567.49 | 408.17 | 366.59 | 41.58 | 0.00 |
| 52 | 49,525.91 | 408.17 | 366.29 | 41.88 | 0.00 |
| 53 | 49,484.03 | 408.17 | 365.98 | 42.19 | 0.00 |

| | | | | |
|---|---|---|---|---|
| 13 | 50,940.45 | 408.17 | | 31.42 | |
| 14 | 50,909.03 | 408.17 | 376.51 | 31.66 | |
| 15 | 50,877.37 | 408.17 | 376.28 | 31.89 | |
| 16 | 50,845.48 | 408.17 | 376.04 | 32.13 | 0.00 |
| 17 | 50,813.35 | 408.17 | 375.81 | 32.36 | 0.00 |
| 18 | 50,780.99 | 408.17 | 375.57 | 32.60 | 0.00 |
| 19 | 50,748.39 | 408.17 | 375.33 | 32.84 | 0.00 |
| 20 | 50,715.55 | 408.17 | 375.08 | 33.09 | 0.00 |
| 21 | 50,682.46 | 408.17 | 374.84 | 33.33 | 0.00 |
| 22 | 50,649.13 | 408.17 | 374.59 | 33.58 | 0.00 |
| 23 | 50,615.55 | 408.17 | 374.34 | 33.83 | 0.00 |
| 24 | 50,581.72 | 408.17 | 374.09 | 34.08 | 0.00 |
| 25 | 50,547.64 | 408.17 | 373.84 | 34.33 | 0.00 |
| 26 | 50,513.31 | 408.17 | 373.59 | 34.58 | 0.00 |
| 27 | 50,478.73 | 408.17 | 373.33 | 34.84 | 0.00 |
| 28 | 50,443.89 | 408.17 | 373.07 | 35.10 | 0.00 |
| 29 | 50,408.79 | 408.17 | 372.82 | 35.35 | 0.00 |
| 30 | 50,373.44 | 408.17 | 372.55 | 35.62 | 0.00 |
| 31 | 50,337.82 | 408.17 | 372.29 | 35.88 | 0.00 |
| 32 | 50,301.94 | 408.17 | 372.02 | 36.15 | 0.00 |
| 33 | 50,265.79 | 408.17 | 371.76 | 36.41 | 0.00 |
| 34 | 50,229.38 | 408.17 | 371.49 | 36.68 | 0.00 |
| 35 | 50,192.70 | 408.17 | 371.22 | 36.95 | 0.00 |
| 36 | 50,155.75 | 408.17 | 370.94 | 37.23 | 0.00 |
| 37 | 50,118.52 | 408.17 | 370.67 | 37.50 | 0.00 |
| 38 | 50,081.02 | 408.17 | 370.39 | 37.78 | 0.00 |
| 39 | 50,043.24 | 408.17 | 370.11 | 38.06 | 0.00 |
| 40 | 50,005.18 | 408.17 | 369.83 | 38.34 | 0.00 |
| 41 | 49,966.84 | 408.17 | 369.55 | 38.62 | 0.00 |
| 42 | 49,928.22 | 408.17 | 369.26 | 38.91 | 0.00 |
| 43 | 49,889.31 | 408.17 | 368.97 | 39.20 | 0.00 |
| 44 | 49,850.11 | 408.17 | 368.68 | 39.49 | 0.00 |
| 45 | 49,810.62 | 408.17 | 368.39 | 39.78 | 0.00 |
| 46 | 49,770.84 | 408.17 | 368.10 | 40.07 | 0.00 |
| 47 | 49,730.77 | 408.17 | 367.80 | 40.37 | 0.00 |
| 48 | 49,690.40 | 408.17 | 367.50 | 40.67 | 0.00 |
| 49 | 49,649.73 | 408.17 | 367.20 | 40.97 | 0.00 |
| 50 | 49,608.76 | 408.17 | 366.90 | 41.27 | 0.00 |
| 51 | 49,567.49 | 408.17 | 366.59 | 41.58 | 0.00 |
| 52 | 49,525.91 | 408.17 | 366.29 | 41.88 | 0.00 |
| 53 | 49,484.03 | 408.17 | 365.98 | 42.19 | 0.00 |
| 54 | 49,441.84 | 408.17 | 365.66 | 42.51 | 0.00 |
| 55 | 49,399.33 | 408.17 | 365.35 | 42.82 | 0.00 |
| 56 | 49,356.51 | 408.17 | 365.03 | 43.14 | 0.00 |
| 57 | 49,313.37 | 408.17 | 364.71 | 43.46 | 0.00 |
| 58 | 49,269.91 | 408.17 | 364.39 | 43.78 | 0.00 |
| 59 | 49,226.13 | 408.17 | 364.07 | 44.10 | 0.00 |
| 60 | 49,182.03 | 408.17 | 363.74 | 44.43 | 0.00 |
| 61 | 49,137.60 | 408.17 | 363.41 | 44.76 | 0.00 |
| 62 | 49,092.84 | 408.17 | 363.08 | 45.09 | 0.00 |
| 63 | 49,047.75 | 408.17 | 362.75 | 45.42 | 0.00 |
| 64 | 49,002.33 | 408.17 | 362.41 | 45.76 | 0.00 |
| 65 | 48,956.57 | 408.17 | 362.07 | 46.10 | 0.00 |
| 66 | 48,910.47 | 408.17 | 361.73 | 46.44 | 0.00 |
| 67 | 48,864.03 | 408.17 | 361.39 | 46.78 | 0.00 |

Date: 12/01/04                App#: ███████████              Page: 2
Borrower: MICHELLE L. LAWSON
AMORTIZATION SCHEDULE

Note amount: 51311.00        Note rate: 8.87500      Note term: 180 months
Loan Program: █████████      PURCHASE MONEY SECOND MORTGAGE

| Pmnt# | Principal | Payment | Interest | Princ. pant | V I |
|---|---|---|---|---|---|
| 68 | 48,817.05 | 408.17 | 361.04 | 47.13 | 0.00 |
| 69 | 48,770.10 | 408.17 | 360.70 | 47.47 | 0.00 |
| 70 | 48,722.00 | 408.17 | 360.34 | 47.83 | 0.00 |
| 71 | 48,674.50 | 408.17 | 359.99 | 48.18 | 0.00 |
| 72 | 48,626.54 | 408.17 | 359.63 | 48.54 | 0.00 |
| 73 | 48,578.11 | 408.17 | 359.28 | 48.89 | 0.00 |
| 74 | 48,529.01 | 408.17 | 358.91 | 49.26 | 0.00 |
| 75 | 48,479.95 | 408.17 | 358.55 | 49.62 | 0.00 |
| 76 | 48,430.33 | 408.17 | 358.18 | 49.99 | 0.00 |
| 77 | 48,380.34 | 408.17 | 357.81 | 50.36 | 0.00 |
| 78 | 48,329.98 | 408.17 | 357.44 | 50.73 | 0.00 |
| 79 | 48,279.25 | 408.17 | 357.07 | 51.10 | 0.00 |
| 80 | 48,228.15 | 408.17 | 356.69 | 51.48 | 0.00 |
| 81 | 48,176.67 | 408.17 | 356.31 | 51.86 | 0.00 |
| 82 | 48,124.81 | 408.17 | 355.92 | 52.25 | 0.00 |
| 83 | 48,072.56 | 408.17 | 355.54 | 52.63 | 0.00 |
| 84 | 48,019.93 | 408.17 | 355.15 | 53.02 | 0.00 |
| 85 | 47,966.91 | 408.17 | 354.76 | 53.41 | 0.00 |
| 86 | 47,913.50 | 408.17 | 354.36 | 53.81 | 0.00 |
| 87 | 47,859.69 | 408.17 | 353.96 | 54.21 | 0.00 |
| 88 | 47,805.48 | 408.17 | 353.56 | 54.61 | 0.00 |
| 89 | 47,750.87 | 408.17 | 353.16 | 55.01 | 0.00 |
| 90 | 47,695.86 | 408.17 | 352.75 | 55.42 | 0.00 |
| 91 | 47,640.44 | 408.17 | 352.34 | 55.83 | 0.00 |
| 92 | 47,584.61 | 408.17 | 351.93 | 56.24 | 0.00 |
| 93 | 47,528.37 | 408.17 | 351.51 | 56.66 | 0.00 |
| 94 | 47,471.71 | 408.17 | 351.09 | 57.08 | 0.00 |
| 95 | 47,414.63 | 408.17 | 350.67 | 57.50 | 0.00 |
| 96 | 47,357.13 | 408.17 | 350.25 | 57.92 | 0.00 |
| 97 | 47,299.21 | 408.17 | 349.82 | 58.35 | 0.00 |
| 98 | 47,240.86 | 408.17 | 349.39 | 58.78 | 0.00 |
| 99 | 47,182.08 | 408.17 | 348.95 | 59.22 | 0.00 |
| 100 | 47,122.86 | 408.17 | 348.51 | 59.66 | 0.00 |
| 101 | 47,063.20 | 408.17 | 348.07 | 60.10 | 0.00 |
| 102 | 47,003.10 | 408.17 | 347.63 | 60.54 | 0.00 |
| 103 | 46,942.56 | 408.17 | 347.18 | 60.99 | 0.00 |
| 104 | 46,881.57 | 408.17 | 346.73 | 61.44 | 0.00 |
| 105 | 46,820.13 | 408.17 | 346.27 | 61.90 | 0.00 |
| 106 | 46,758.23 | 408.17 | 345.82 | 62.35 | 0.00 |
| 107 | 46,695.88 | 408.17 | 345.35 | 62.82 | 0.00 |
| 108 | 46,633.06 | 408.17 | 344.89 | 63.28 | 0.00 |
| 109 | 46,569.78 | 408.17 | 344.42 | 63.75 | 0.00 |
| 110 | 46,506.03 | 408.17 | 343.95 | 64.22 | 0.00 |
| 111 | 46,441.81 | 408.17 | 343.48 | 64.69 | 0.00 |
| 112 | 46,377.12 | 408.17 | 343.00 | 65.17 | 0.00 |
| 113 | 46,311.95 | 408.17 | 342.52 | 65.65 | 0.00 |
| 114 | 46,246.30 | 408.17 | 342.03 | 66.14 | 0.00 |
| 115 | 46,180.16 | 408.17 | 341.54 | 66.63 | 0.00 |
| 116 | 46,113.53 | 408.17 | 341.05 | 67.12 | 0.00 |
| 117 | 46,046.41 | 408.17 | 340.55 | 67.62 | 0.00 |
| 118 | 45,978.79 | 408.17 | 340.05 | 68.12 | 0.00 |
| 119 | 45,910.67 | 408.17 | 339.55 | 68.62 | 0.00 |
| 120 | 45,842.05 | 408.17 | 339.04 | 69.13 | 0.00 |

Date: 12/01/04             App# ███████████                    Page  3
Borrower: MICHELLE C. LAWSON
                    AMORTIZATION SCHEDULE

Note amount    51300.00        Note rate  8.875000       Note term 180 months
Loan Program  ██████████     PURCHASE MONEY SECOND MORTGAGE

| Pmnt# | Principal | Payment | Interest | Princ. part | M.I |
|---|---|---|---|---|---|
| 135 | 44,749.65 | 408.17 | 330.96 | 77.21 | 0.00 |
| 136 | 44,672.44 | 408.17 | 330.39 | 77.78 | 0.00 |
| 137 | 44,594.66 | 408.17 | 329.81 | 78.36 | 0.00 |
| 138 | 44,516.30 | 408.17 | 329.24 | 78.93 | 0.00 |
| 139 | 44,437.37 | 408.17 | 328.65 | 79.52 | 0.00 |
| 140 | 44,357.85 | 408.17 | 328.06 | 80.11 | 0.00 |
| 141 | 44,277.74 | 408.17 | 327.47 | 80.70 | 0.00 |
| 142 | 44,197.04 | 408.17 | 326.87 | 81.30 | 0.00 |
| 143 | 44,115.74 | 408.17 | 326.27 | 81.90 | 0.00 |
| 144 | 44,033.84 | 408.17 | 325.67 | 82.50 | 0.00 |
| 145 | 43,951.34 | 408.17 | 325.06 | 83.11 | 0.00 |
| 146 | 43,868.23 | 408.17 | 324.44 | 83.73 | 0.00 |
| 147 | 43,784.50 | 408.17 | 323.82 | 84.35 | 0.00 |
| 148 | 43,700.15 | 408.17 | 323.20 | 84.97 | 0.00 |
| 149 | 43,615.18 | 408.17 | 322.57 | 85.60 | 0.00 |
| 150 | 43,529.58 | 408.17 | 321.94 | 86.23 | 0.00 |
| 151 | 43,443.35 | 408.17 | 321.30 | 86.87 | 0.00 |
| 152 | 43,356.48 | 408.17 | 320.66 | 87.51 | 0.00 |
| 153 | 43,268.97 | 408.17 | 320.01 | 88.16 | 0.00 |
| 154 | 43,180.81 | 408.17 | 319.36 | 88.81 | 0.00 |
| 155 | 43,092.00 | 408.17 | 318.70 | 89.47 | 0.00 |
| 156 | 43,002.53 | 408.17 | 318.04 | 90.13 | 0.00 |
| 157 | 42,912.40 | 408.17 | 317.37 | 90.80 | 0.00 |
| 158 | 42,821.60 | 408.17 | 316.70 | 91.47 | 0.00 |
| 159 | 42,730.13 | 408.17 | 316.02 | 92.15 | 0.00 |
| 160 | 42,637.98 | 408.17 | 315.34 | 92.83 | 0.00 |
| 161 | 42,545.15 | 408.17 | 314.66 | 93.51 | 0.00 |
| 162 | 42,451.64 | 408.17 | 313.97 | 94.20 | 0.00 |
| 163 | 42,357.44 | 408.17 | 313.27 | 94.90 | 0.00 |
| 164 | 42,262.54 | 408.17 | 312.57 | 95.60 | 0.00 |
| 165 | 42,166.94 | 408.17 | 311.86 | 96.31 | 0.00 |
| 166 | 42,070.63 | 408.17 | 311.15 | 97.02 | 0.00 |
| 167 | 41,973.61 | 408.17 | 310.43 | 97.74 | 0.00 |
| 168 | 41,875.87 | 408.17 | 309.71 | 98.46 | 0.00 |
| 169 | 41,777.41 | 408.17 | 308.98 | 99.19 | 0.00 |
| 170 | 41,678.22 | 408.17 | 308.25 | 99.92 | 0.00 |
| 171 | 41,578.30 | 408.17 | 307.51 | 100.66 | 0.00 |
| 172 | 41,477.64 | 408.17 | 306.76 | 101.41 | 0.00 |
| 173 | 41,376.23 | 408.17 | 306.01 | 102.16 | 0.00 |
| 174 | 41,274.07 | 408.17 | 305.26 | 102.91 | 0.00 |
| 175 | 41,171.16 | 408.17 | 304.50 | 103.67 | 0.00 |
| 176 | 41,067.49 | 408.17 | 303.73 | 104.44 | 0.00 |
| 177 | 40,963.05 | 408.17 | 302.96 | 105.21 | 0.00 |
| 178 | 40,857.84 | 408.17 | 302.18 | 105.99 | 0.00 |
| 179 | 40,751.85 | 408.17 | 301.39 | 106.78 | 0.00 |
| 180 | 40,645.07 | 40,945.67 | 300.60 | 40,645.07 | 0.00 |

Claim Number 5282



▲ Trident Mortgage
Company℠

October 19, 2004


Mr. Rob Lamb
Prudential Fox and Roach Realtors
14 W. Evergreen Avenue
Philadelphia, PA 19118

RE:  Ms. Michelle C. Lawson
     Ms. Margaret Lawson
     Mr. Joshua E. Liss

Dear Mr. Lamb:

This letter is to certify that I have pre-approved Ms. Michelle Lawson, Ms. Margaret
Lawson and Mr. Joshua Liss for a mortgage amount of $324,900.00 and a sale price of
$342,000.00.  This is based on a 30 Year Fixed Rate Mortgage at a current interest rate of
5.75% with 0 points.

This statement is based on income and debt information obtained by Trident Mortgage
Company.  Final commitment is subject to a written application, an acceptable agreement
of sale and an acceptable appraisal of the property to be acquired.  Trident Mortgage
Company has verified acceptable credit histories on all borrowers.

Should you have any questions or require additional information please do not hesitate to
contact me at 215-619-0541.

Sincerely,

Robin L. Bowman
Mortgage Consultant

/rlb

## CUSTOMER INFORMATION

| | |
|---|---|
| Name: | Michelle C Lawson<br>Margaret Lawson |
| Account Number: | |
| Home Phone #: | (215)843-0560 |

**PROPERTY ADDRESS**

226 EAST GORGAS LANE
PHILADELPHIA        PA 19119

# GMAC Mortgage

Visit us at www.gmacmortgage.com for
account information or to apply on-line.



MICHELLE C LAWSON
MARGARET LAWSON
226 E GORGAS LN
PHILADELPHIA PA   19119-1929

For information about your existing account,
please call: 1-800-766-4622.

For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information    Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side

## Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | March 01, 2011 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $761.35 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $48,362.10 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | April 01, 2011 |

For Customer Care inquiries call: **1-800-766-4622**
For Insurance inquiries call:        **1-800-256-9962**
For Payment Arrangements call:   **1-800-850-4622**

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 03/01/11 | 03/01/11 | $408.17 | | $408.17 | | | | $38.68- |

*This is your Principal Balance only, not the amount required to pay the loan in full. For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

### Important News

**!Attention Military Families!  At GMAC Mortgage we are committed to doing what we can to
support our customers in the military.  If you or a member of your family  are in the military
and are experiencing a financial hardship, please contact us at 866-961-1412 or email us at
Military.Families@gmacm.com to discuss your situation and identify possible alternatives.**

**See Reverse Side For Important Information And State Specific Disclosures**

# GMAC Mortgage

**CUSTOMER INFORMATION**

Name: Michelle C Lawson
Margaret Lawson

Account Number:
Home Phone #: (215)843-0560

**PROPERTY ADDRESS**
226 EAST GORGAS LANE
PHILADELPHIA    PA 19119

Visit us at www.gmacmortgage.com for
account information or to apply on-line

---

02.11/10.11 00 3   0015640 20110510 KE091855 GMREG   1 OZ 0GM KE0415XXXT TAU5N   0A1

MICHELLE C LAWSON
MARGARET LAWSON
226 E GORGAS LN
PHILADELPHIA PA  19119-1929



For information about your existing account,
please call: 1-800-766-4622.

For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information.   Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | May 09, 2011 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $1,572.74 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)☆ | $48,357.15 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | June 01, 2011 |

For Customer Care inquiries call:  1-800-766-4622
For Insurance inquiries call:       1-800-256-9962
For Payment Arrangements call:      1-800-850-4622

### Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 05/01/11 | 05/07/11 | $408.17 | | $408.17 | | | | $25.12- |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

### Important News

Have you considered refinancing your loan?  With rates still near historic lows, now may be the
perfect time.  Call 877-528-3817 today to have a refinancing specialist review your account.

The Ally Bank No Penalty 11-Month CD: get a great fixed rate CD with no early
withdrawal penalty. Visit allybank.com or call 877-247-2559. Member FDIC.

**See Reverse Side For Important Information And State Specific Disclosures**

Claim Number 5282

**CUSTOMER INFORMATION**

| | |
|---|---|
| Name: | Michelle C Lawson<br>Margaret Lawson |
| Account Number: | |
| Home Phone #: | (215)843-0560 |

**PROPERTY ADDRESS**

226 EAST GORGAS LANE
PHILADELPHIA     PA 19119

# GMAC Mortgage

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

0211-10 11 00 3   0013936 20111006 KJ061805 GMREG   1 OZ GOM KJ061800000* 146318   GM

MICHELLE C LAWSON
MARGARET LAWSON
226 E GORGAS LN
PHILADELPHIA PA  19119-1929



For information about your existing account,
please call: 1-800-766-4622.

For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information.   Make necessary corrections on this portion of the statement, detach and mail to address listed  for inquiries on the reverse side

## Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | October 03, 2011 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $3,311.59 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $48,055.15 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | November 01, 2011 |

**For Customer Care inquiries call:  1-800-766-4622**
**For Insurance inquiries call:     1-800-256-9962**
**For Payment Arrangements call:   1-800-850-4622**

| Description | Pmt Date | Tran. Date | Tran Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 10/01/11 | 10/01/11 | $408.17 | $34.00 | $374.17 | | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

**The Ally Bank High Yield 12-Month CD was named one of MONEY Magazine's "Best Money Moves" of 2011,
MONEY® Magazine, May 2011. See the enclosed insert or visit allybank.com for details. Member FDIC.**

See Reverse Side For Important Information And State Specific Disclosures

Claim Number 5282

**CUSTOMER INFORMATION**

Name:    Michelle C Lawson
         Margaret Lawson

Account Number:
Home Phone #:   (215)843-0560

**PROPERTY ADDRESS**

226 EAST GORGAS LANE
PHILADELPHIA    PA 19119

# GMAC Mortgage

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

02/15/10 11 00 3   0012020 20120207 LB067805 GMREG   1 OZ DOM LB0K7K0XX07 146316   GM

MICHELLE C LAWSON
MARGARET LAWSON
226 E GORGAS LN
PHILADELPHIA PA  19119-1929



For information about your existing account,
please call: 1-800-766-4622.


For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information.  Make necessary corrections on this portion of the statement, detach and mail to address listed  for inquires on the reverse side

## Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | February 03, 2012 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $408.17 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $47,833.98 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | March 01, 2012 |

**For Customer Care inquiries call:** 1-800-766-4622
**For Insurance inquiries call:** 1-800-256-9962
**For Payment Arrangements call:** 1-800-850-4622

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 02/01/12 | 02/03/12 | $408.17 | | $408.17 | | | | $45.43 |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

**Considering a refinance or the purchase of a new home? We're here to help - call a loan
specialist today at 877-528-3817 to review all of the financing options available to you.**

**Ally Bank offers IRA CDs and an IRA Online Savings Account with rates that are consistently among
the most competitive in the country. Call 1-877-247-ALLY (2559) or visit allybank.com.  Member FDIC.**

See Reverse Side For Important Information And State Specific Disclosures

Claim Number 5282

**CUSTOMER INFORMATION**

| | | PROPERTY ADDRESS | **GMAC** Mortgage |
|---|---|---|---|
| Name: | Michelle C Lawson<br>Margaret Lawson | 226 EAST GORGAS LANE<br>PHILADELPHIA      PA 19119 | |
| Account Number: | | | Visit us at www.gmacmortgage.com for |
| Home Phone #: | (215)843-0560 | | account information or to apply on-line. |

02|1\|10 11 003  0010765 20120306 LC054804 GMREG  1 OZ DOM LC054800007 145316  GM



MICHELLE C LAWSON
MARGARET LAWSON
226 E GORGAS LN
PHILADELPHIA PA  19119-1929

> For information about your existing account,
> please call: 1-800-766-4622.
>
> For information about refinancing or obtaining
> a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower or co-borrower information    Make necessary corrections on this portion of the statement, detach and mail to address listed  for inquiries on the reverse side

## Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | March 02, 2012 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $767.63 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $47,785.27 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | April 01, 2012 |

**For Customer Care inquiries call:  1-800-766-4622**
**For Insurance inquiries call:       1-800-256-9962**
**For Payment Arrangements call:  1-800-850-4622**

### Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 03/01/12 | 03/02/12 | $408.17 | $48.71 | $359.46 | | | | $45.43 |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

### Important News

**Ally Bank offers IRA CDs and an IRA Online Savings Account with rates that are consistently among
the most competitive in the country. Call 1-877-247-ALLY (2559) or visit allybank.com.  Member FDIC.**

26

See Reverse Side For Important Information And State Specific Disclosures

## GMAC Mortgage

**CUSTOMER INFORMATION**

Name: Michelle C Lawson
Margaret Lawson

PROPERTY ADDRESS
226 EAST GORGAS LANE
PHILADELPHIA        PA 19119

Account Number:
Home Phone #:            (215)843-0560

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

MICHELLE C LAWSON
MARGARET LAWSON
226 E GORGAS LN
PHILADELPHIA PA   19119-1929

For information about your existing account,
please call: 1-800-766-4622.

For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information.   Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

### Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | May 03, 2012 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $1,487.32 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)☆ | $47,688.62 |

### Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | June 01, 2012 |

For Customer Care inquiries call: **1-800-766-4622**
For Insurance inquiries call:       **1-800-256-9962**
For Payment Arrangements call:  **1-800-850-4622**

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 05/01/12 | 05/03/12 | $408.17 | $13.81 | $394.36 | | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign up information and other payment options.

Now is a great time to buy a home! If you're in the market for your next home, our trained loan
agents will help you review all of the financing options available to you – call 877-528-3817 today!



See Reverse Side For Important Information And State Specific Disclosures

# GMAC Mortgage

**CUSTOMER INFORMATION**

| | | **PROPERTY ADDRESS** |
|---|---|---|
| Name: | Michelle C Lawson | 226 EAST GORGAS LANE |
| | Margaret Lawson | PHILADELPHIA     PA 19119 |
| Account Number: | | |
| Home Phone #: | (215)843-0560 | |

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

02/11/10 11 003   0000943 20120705 LG023802 GMREG    I OZ DOM LG023800000* 145316   GM

MICHELLE C LAWSON
MARGARET LAWSON
226 E GORGAS LN
PHILADELPHIA PA   19119-1929

For information about your existing account,
please call: 1-800-766-4622.

For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information   Make necessary corrections on this portion of the statement, detach and mail to address listed  for inquiries on the reverse side

## Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | July 02, 2012 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $2,115.80 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $47,500.76 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | August 01, 2012 |

**For Customer Care inquiries call: 1-800-766-4622**
**For Insurance inquiries call:     1-800-256-9962**
**For Payment Arrangements call:    1-800-850-4622**

### Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 07/01/12 | 06/29/12 | $408.17 | | $408.17 | | | | $30.72- |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

### Important News

Now is a great time to buy a home! If you're in the market for your next home, our trained loan
agents will help you review all of the financing options available to you – call 877-528-3817 today!



Claim Number 5282

## GMAC Mortgage

**CUSTOMER INFORMATION**

Name: Michelle C Lawson
Margaret Lawson

Account Number:
Home Phone #: (215)843-0560

**PROPERTY ADDRESS**
226 EAST GORGAS LANE
PHILADELPHIA     PA 19119

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

0211/10 11 00 3    0020650 20120903 LH017807 GMREG   1 OZ DOM LH01780000* 146316   GM

MICHELLE C LAWSON
MARGARET LAWSON
226 E GORGAS LN
PHILADELPHIA PA   19119-1929



For information about your existing account,
please call: 1-800-766-4622.

For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information   Make necessary corrections on this portion of the statement, detach and mail to address listed  for inquiries on the reverse side

## Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | August 01, 2012 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $2,504.57 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $47,481.36 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | September 01, 2012 |

**For Customer Care inquiries call:  1-800-766-4622**
**For Insurance inquiries call:        1-800-256-9962**
**For Payment Arrangements call:   1-800-850-4622**

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 08/01/12 | 07/30/12 | $408.17 | $19.40 | $388.77 | | | | $30.72 |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

### Important News

Now is a great time to buy a home! If you're in the market for your next home, our trained loan
agents will help you review all of the financing options available to you – call 877-528-3817 today!

a\

**See Reverse Side For Important Information And State Specific Disclosures**

Claim Number 5282

**CUSTOMER INFORMATION**

| | | |
|---|---|---|
| Name: | Michelle C Lawson | **PROPERTY ADDRESS** |
| | Margaret Lawson | 226 EAST GORGAS LANE |
| | | PHILADELPHIA    PA 19119 |
| Account Number: | | |
| Home Phone #: | (215)843-0560 | |

# GMAC Mortgage

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

02:11:10 11 00 3   0007370 20120906 L 058603 GUREG   I 0Z 0OM L-0588/000F 14631S   GU

MICHELLE C LAWSON
MARGARET LAWSON
226 E GORGAS LN
PHILADELPHIA PA  19119-1929

---

For information about your existing account,
please call: 1-800-766-4622.

For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

---

Please verify your mailing address, borrower and co-borrower information   Make necessary corrections on this portion of the statement, detach and mail to address listed  for inquiries on the reverse side

## Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | September 04, 2012 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $2,912.74 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $47,481.36 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | October 01, 2012 |

**For Customer Care inquiries call:  1-800-766-4622**
**For Insurance inquiries call:        1-800-256-9962**
**For Payment Arrangements call:  1-800-850-4622**

| Description | Pmt Date | Tran Date | Tran Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 09/01/12 | 09/04/12 | $408.17 | | $408.17 | | | | $2.43- |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign up information and other payment options.

**Considering a refinance or the purchase of a new home? We're here to help - call a loan
specialist today at 877-528-3817 to review all of the financing options available to you.**



See Reverse Side For Important Information And State Specific Disclosures

## CUSTOMER INFORMATION

| | | |
|---|---|---|
| Name: | Michelle C Lawson<br>Margaret Lawson | PROPERTY ADDRESS<br>226 EAST GORGAS LANE<br>PHILADELPHIA    PA 19119 |
| Account Number: | 0359473279 | |
| Home Phone #: | (215)843-0560 | |

# GMAC Mortgage

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

02/11/10 11 003   0021289 20121107 LK064807 GMREG   1 OZ COM LK064800007 146316  GM

MICHELLE C LAWSON
MARGARET LAWSON
226 E GORGAS LN
PHILADELPHIA PA  19119-1929



For information about your existing account,
please call: 1-800-766-4622.

For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information.  Make necessary corrections on this portion of the statement, detach and mail to address listed  for inquiries on the reverse side

## Account Information

| | |
|---|---|
| Account Number | ▉▉▉▉▉ |
| Statement Date | November 05, 2012 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $3,612.18 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $47,364.46 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | December 01, 2012 |

For Customer Care inquiries call:  1-800-766-4622
For Insurance inquiries call:    1-800-256-9962
For Payment Arrangements call:  1-800-850-4622

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 11/01/12 | 11/05/12 | $408.17 | $27.90 | $380.27 | | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

Considering a refinance or the purchase of a new home?  We're here to help - call a loan
specialist today at 877-528-3817 to review all of the financing options available to you.

94

See Reverse Side For Important Information And State Specific Disclosures

**<u>Exhibit B</u>**
**Cozzolino Claim**

ny-1145045

Claim #1372  Date Filed: 10/17/2012

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF New York | PROOF OF CLAIM |
|---|---|

Name of Debtor:
**GMAC MORTGAGE, LLC**

Case Number:
*12-12020(MG)*

RECEIVED
OCT 17 2012
U.S. BANKRUPTCY COURT
SO DIST OF NEW YORK

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
JOSEPH J. COZZOLINO AND/OR JO JO ASSET MGM'T LLC

Name and address where notices should be sent:
JOSEPH J. COZZOLINO
PO BOX 317
SWEET VALLEY, PA 18656
Telephone number: 570-256-0971   email: JCJOSJOH581@GMAIL.COM

☑ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: 08/31/2012

Name and address where payment should be sent (if different from above):

Telephone number:     email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

RECEIVED

**1. Amount of Claim as of Date Case Filed:**   $ *193,274.41* ✱

If all or part of the claim is secured, complete item 4.     ✱ REFER TO COVER LETTER

If all or part of the claim is entitled to priority, complete item 5.

OCT 22 2012
KURTZMAN CARSON CONSULTANTS

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**   MORTGAGE LOAN
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** __ __ __ __

**3a. Debtor may have scheduled account as:**
_____
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
_____
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:** ✱✱

**Value of Property:** $ 365,000
5.875

**Annual Interest Rate** _____% ☑ Fixed or ☐ Variable
(when case was filed)   ✱✱ ORIGINAL PURCHASE PRICE WAS $400,000.00

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$_____

**Basis for perfection:** _____

**Amount of Secured Claim:** $_____

**Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.   N/A

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

Amount entitled to priority:

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

☑ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

1212032121017000000000004

B 10 (Official Form 10) (12/11)                                                                                                              2

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

RECEIVED

OCT 2 2 2012

KURTZMAN CARSON CONSULTANTS

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.        ☐ I am the creditor's authorized agent.        ☐ I am the trustee, or the debtor,        ☐ I am a guarantor, surety, indorser, or other codebtor.
                              (Attach copy of power of attorney, if any.)      or their authorized agent.              (See Bankruptcy Rule 3005.)
                                                                               (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: JOSEPH J. COZZOLINO
Title: OWNER
Company:                                                          (Signature)                OCT 14, 2012
Address and telephone number (if different from notice address above):                      (Date)


Telephone number: 570-256-0971 email: JCJOSJOH581@GMAIL.COM

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there are exceptions to these general rules may apply.*

Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

**Office of the Clerk**                                              **Oct. 14, 2012**
**United States Bankruptcy Court**
**One Bowling Green**                          **Re: amendment to original document**
**New York, New York  10004**

**Dear Clerk:**

Enclosed please find my amended B 10 form. In the original B 10 form dated Aug. 27,
2012 I made an error ( act of omission ) on item 1. ( amount of claim as of date filed ).
The correct figure that I should have placed on that line should have been $193,274.41.
The breakdown of this number is as follows:

> $44,797.87 represents the amount of money I have paid ( to date )
> on my mortgage loan. $148,476.54 is the the amount I still owe
> ( remaining balance ) on my mortgage. This number is derived as
> follows:

>> $591.54 are my monthly payments times the remaining
>> number of months left to pay on my mortgage ( 251 ).
>> 251 times $591.54 = $148,476.54 plus the amount I
>> have already paid, $44,797.87 = a grand total of
>> $193,274.41 which I have placed as the corrected
>> amount on line 1. of the enclosed amended B 10 form.

I trust that the above explanation is clear enough to explain why I had to summit the
enclosed amended B 10 form.

Sincerely, 

Joseph J Cozzolino

PO Box 317, Sweet Valley, PA 18656
e-mail: jcjosjoh581@gmail.com
phone: 570-256-0971

RECEIVED
OCT 1 7 2012
U.S. BANKRUPTCY COURT
SO. DIST. OF NEW YORK

OMB Approval No ████

| A. Settlement Statement | B. Type of Loan |
|---|---|

## First American Title Insurance Agency, LLC
### Settlement Statement

| | |
|---|---|
| 1-5. Loan Type  Conv. Unins. | |
| 6.    File Number ████ | |
| 7.    Loan Number ████ | |
| 8.    Mortgage Insurance Case Number | |

C.    Note:    This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside this closing; they are shown here for informational purposes and are not included in the totals.

D.    Name of Borrower:  Joseph J. Cozzolino
16701 Main Street #119, Hesperia, CA 92345

E.    Name of Seller:  Charles Richard Congdon, Jr., Naomi H. Congdon
585 East Canyon Road Ephraim, UT 84627

F.    Name of Lender: Mortgageit, Inc.
147 West Election Road, Suite 200
Draper, UT 84020-8436

G.    Property Location: 585 East Canyon Road, Ephraim, UT 84627

| | |
|---|---|
| H.    Settlement Agent: First American Title Insurance Agency, LLC<br>Address: 320 South 50 West, Ephraim, UT 84627 | I.<br>Settlement Date: 05/21/2007 |
| Place of Settlement Address: 320 South 50 West, Ephraim, UT 84627 | Print Date: 05/17/2007, 5:05 PM |
| | Disbursement Date: 05/23/2007 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | 400. Gross Amount Due To Seller | |
| 101. Contract Sales Price | 400,000.00 | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 4,894.61 | 403. Total Deposits | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 120. Gross Amount Due From Borrower | 404,894.61 | 420. Gross Amount Due To Seller | |
| 200. Amounts Paid By Or In Behalf of Borrower | | 500. Reductions In Amount Due To Seller | |
| 201. Deposit or earnest money | 1,000.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 100,000.00 | 502. Settlement charges (line 1400) | |
| 203. Existing loan(s) taken subject | | 503. Existing loan(s) taken subject | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes  01/01/07 to 05/23/07 @$1640.94/yr | 638.39 | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513 | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 101,638.39 | 520. Total Reduction Amount Due Seller | |
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | |
| 301. Gross amount due from Borrower (line 120) | 404,894.61 | 601. Gross amount due to Seller (line 420) | |
| 302. Less amounts paid by/for Borrower (line 220) | 101,638.39 | 602. Less reductions in amounts due to Seller (line 520) | |
| 303. Cash (X From) ( To) Borrower | 303,256.22 | 603. | |

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: _____    Date: _____

## L. Settlement Charges

| | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|
| **700. Total Sales/Broker's Commission based on price** | | |
| Division of Commission (line 700) as follows | | |
| 701. | | |
| 702. | | |
| 703. Commission paid at Settlement | | |
| 704. | | |
| **800. Items Payable in Connection with Loan** | | |
| 801. Loan Origination Fee | | |
| 802. Loan Discount - Mortgageit, Inc. | 930.00 | |
| 803. Appraisal Fee | | |
| 804. Credit Report | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Premium | | |
| 807. Assumption Fee | | |
| 808. Tax Service Contract - Mortgageit, Inc. | 69.00 | |
| 809. Administration Fee - Mortgageit, Inc. | 535.00 | |
| 810. Flood Certification Fee - Mortgageit, Inc. | 10.00 | |
| 811. Wire Fee - Mortgageit, Inc. | 19.00 | |
| 812. Loan Origination Fee - Moroni Feed Credit Union | 750.00 | |
| 813. Appraisal Fee - Moroni Feed Credit Union | 400.00 | |
| 814. Processing Fee - Moroni Feed Credit Union | 100.00 | |
| Supplemental Summary | | |
| **900. Items Required by Lender to be Paid in Advance** | | |
| 901. Interest 05/23/07 to 06/01/07 @$16.319400/day - Mortgageit, Inc. | 146.87 | |
| 902. | | |
| 903. Hazard Insurance Premium for 1 year(s) to To Be Determined | 765.74 | |
| 904. | | |
| 905. | | |
| Supplemental Summary | | |
| **1000. Reserves Deposited with Lender** | | |
| 1001. Hazard Insurance | | |
| 1002. Mortgage Insurance | | |
| 1003. City Property Taxes | | |
| 1004. County Property Taxes | | |
| 1005. Annual assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Accounting Adjustment | | |
| **1100. Title Charges** | | |
| 1101. Settlement or closing fee - First American Title Insurance Agency, LLC | 150.00 | |
| 1102. Abstract or title search | | |
| 1103. Title examination | | |
| 1104. Title Insurance Binder | | |
| 1105. Document Fee - First American Title Insurance Agency, LLC | 50.00 | |
| 1106. Notary Fee | | |
| 1107. Attorney Fee | | |
| (includes above item numbers: ) | | |
| 1108. Title Insurance -- See supplemental page for breakdown of individual fees and payees | 459.00 | |
| (includes above item numbers: ) | | |
| 1109. Lender's coverage $100,000.00 Premium: $459.00 | | |
| 1110. Owner's coverage $400,000.00 | | |
| 1111. Overnight Delivery (UPS, Federal Express, etc.) - First American Title Insurance Agency, LLC | 40.00 | |
| 1112. Incoming Wire Fee - First American Title Insurance Agency, LLC | 20.00 | |
| 1113. | | |
| 1114. | | |
| 1115. | | |
| 1116. | | |
| 1117. | | |
| **1200. Government Recording and Transfer Charges** | | |
| 1201. *Recording fees: Deed $20.00 Mortgage $55.00 Release $0.00 | 75.00 | |
| 1202. City/county tax/stamps: | | |
| 1203. State tax/stamps: | | |
| 1204. | | |
| 1205. | | |
| 1206. | | |
| **1300. Additional Settlement Charges** | | |
| 1301. Survey to | | |
| 1302. Pest Inspection to | | |
| 1303. Home Warranty to First American Home Buyers Protection | 275.00 | |
| 1304. Accomodation Signing Fee to Signature Company | 100.00 | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| 1310. | | |
| 1311. | | |
| 1312. | | |
| 1313. | | |
| 1314. | | |
| Supplemental Summary | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | 4,894.61 | |

INSTRUCTIONS TO ESCROW
Page 2 of 3

LOAN NO: ███████
LOAN NAME: JOSEPH J. COZZOLINO

Borrower's Vesting:
    JOSEPH J. COZZOLINO, AN UNMARRIED MAN

Property Address:
    585 EAST CANYON ROAD, EPHRAIM, UT 84627

County: SANPETE          Case No.:          First Payment Date: 07/01/2007

Interest Rate: 5.875 %    Term: 360 mos.    Last Payment Date: 06/01/2037

DO NOT RECORD OUR DEED OF TRUST IF YOU HAVE KNOWLEDGE OF A CONCURRENT OR SUBSEQUENT ESCROW TO BE OPENED OR CLOSED UPON COMPLETION OF THIS ESCROW, WHICH WILL TRANSFER SUBJECT PROPERTY.

| Fees | Broker | Borrower Due | Seller Due | Borrower POC | Pay To |
|---|---|---|---|---|---|
| TAX SERVICE FEE | $ | $ 69.00 | $ | $ | MIT |
| PROCESSING FEE | $ 100.00 | $ 100.00 | $ | $ | |
| FLOOD CERTIFICATION FEE | $ | $ 10.00 | $ | $ | MIT |
| ADMINISTRATION FEE | $ | $ 535.00 | $ | $ | MIT |
| WIRE FEE TO MORTGAGEIT | $ | $ 19.00 | $ | $ | MIT |
| ORIGINATION FEE BROKER | $ 750.00 | $ 750.00 | $ | $ | |
| COURIER FEE | $ | $ 20.00 | $ | $ | |
| WIRE TRANSFER FEE | $ | $ 20.00 | $ | $ | ESC |
| DISCOUNT POINT TO MIT | $ | $ 930.00 | $ | $ | MIT |
| ESCROW FEE | $ | $ 150.00 | $ | $ | |
| RECORDING FEE | $ | $ 75.00 | $ | $ | |
| APPRAISAL FEE | $ | $ 400.00 | $ | $ | APPR |
| DOCUMENT PREPARATION FEE | $ | $ 50.00 | $ | $ | ESC |
| TITLE INSURANCE - LENDER | $ | $ 459.00 | $ | $ | |
| HAZARD INSURANCE PREMIUM | $ | $ 765.74 | $ | $ | INS |
| 14 DAYS @ $ 16.319 | $ | $ | $ | $ | |
| | $ | $ | $ | $ | |
| | $ | $ | $ | $ | |
| | $ | $ | $ | $ | |
| | $ | $ | $ | $ | |
| | $ | $ | $ | $ | |
| | $ | $ | $ | $ | |
| | $ | $ | $ | $ | |
| | $ | $ | $ | $ | |
| | $ | $ | $ | $ | |
| | $ | $ | $ | $ | |
| | $ | $ | $ | $ | |
| TOTALS: | $ 850.00 | $ 4,352.74 | $ | $ | |

IMPOUNDS:

PAYOFFS:
☐ Closing Agent to pay directly to creditor.

| |
|---|
| $ |
| $ |
| $ |
| $ |
| $ |
| $ |
| $ |
| $ |
| $ |
| $ |

| SALES PRICE | |
|---|---|
| $ | 400,000.00 |

| LOAN AMOUNT | |
|---|---|
| $ | 100,000.00 |

| DEDUCTION SUBTOTAL | $ |
|---|---|

$ 16.3194
FROM 05/18/2007 TO 06/01/2007

| PER DIEM INTEREST = | $ | 228.47 |
|---|---|---|

| TOTAL IMPOUNDS | $ |
|---|---|

| WIRE/CHECK AMOUNT | $ |
|---|---|

These are FEES NOT paid by the Borrower

| % = $ |
|---|
| % = $ |
| % = $ |
| % = $ |

Ent 145901 Bk 550 Pg 990
Date: 25-MAY-2007  2:10PM
Fee: $12.00 Check
Filed By: RDH
REED D HATCH, Recorder
SANPETE COUNTY CORPORATION
For: FIRST AMERICAN TITLE COMPANY
10-17- 3E

Recording Requested by:
First American Title Insurance Agency, LLC
320 South 50 West
Ephraim, UT 84627
(435)283-4900

AFTER RECORDING RETURN TO:
Joseph J. Cozzolino
16701 Main Street #119
Hesperia, CA 92345

*SPACE ABOVE THIS LINE (3 ½" X 5") FOR RECORDER'S USE*

# WARRANTY DEED

Escrow No. █████████
A.P.N.: █████████

**Charles Richard Congdon, Jr. and Naomi H. Congdon**, Grantor, of **Ephraim, Sanpete** County, State of **UT**, hereby CONVEY AND WARRANT to

**Joseph J. Cozzolino, an unmarried man**, Grantee, of **Hesperia, San Bernardino** County, State of **CA**, for the sum of Ten Dollars and other good and valuable considerations the following described tract(s) of land in **Sanpete** County, State of **Utah**:

**BEGINNING 1540 FEET EAST AND 495 FEET NORTH OF THE SOUTHWEST CORNER OF SECTION 10, TOWNSHIP 17 SOUTH, RANGE 3 EAST, SALT LAKE BASE AND MERIDIAN; THENCE NORTH 495 FEET; THENCE EAST 440 FEET; THENCE SOUTH 473 FEET; THENCE WEST 422 FEET; THENCE SOUTH 517 FEET; THENCE WEST 18 FEET; THENCE NORTH 495 FEET, MORE OR LESS, TO THE POINT OF BEGINNING. (860)**

Subject to easements, restrictions and rights of way appearing of record or enforceable in law and equity and general property taxes for the year **2007** and thereafter.

Witness, the hand(s) of said Grantor(s), this **May 21, 2007**.

*signature: Charles Richard Congdon Jr.*        *signature: Naomi H. Congdon*

**Charles Richard Congdon, Jr.**                **Naomi H. Congdon**

FIRST AMERICAN TITLE INSURANCE CO.

A.P.N.: ███                    Warranty Deed - continued                    File No. ███

STATE OF _____Utah_____ )
COUNTY OF _____Sanpete_____ )Ss.
                                )

On _____May 21_____, 20_07_, personally appeared before me, **Charles Richard Congdon, Jr.
and Naomi H. Congdon,** the signer of the within instrument, who duly acknowledged to me that he executed
the same.

_____Angie Faris_____
Notary Public

_____
(Printed Name)
My Commission expires: _____Jan. 31, 2009_____          {Seal or Stamp}

| | File No. ▮▮▮▮ |
|---|---|
| Supplemental Page<br>HUD-1 Settlement Statement | |
| **First American Title Insurance Agency, LLC**<br>Settlement Statement | Loan No. ▮▮▮▮ |
| | Settlement Date:<br>05/21/2007 |

Borrower Name & Address:  Joseph J. Cozzolino
16701 Main Street #119, Hesperia, CA 92345

Seller Name & Address:  Charles Richard Congdon, Jr., Naomi H. Congdon
585 East Canyon Road Ephraim, UT 84627

| Section L. Settlement Charges continued | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| 1108.   Supplemental Summary | 459.00 | | |
| a) Eagle Lender's Policy - First American Title Insurance Agency, LLC | | 459.00 | |
| 1201.   Supplemental Summary | 75.00 | | |
| a) Record Warranty Deed - First American Title Insurance Agency, LLC | | 20.00 | |
| b) Record Deed of Trust - First American Title Insurance Agency, LLC | | 55.00 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and distributions made on my account or by me in this transaction.  I further certify that I have received a copy of the HUD-1 Settlement Statement.

*[handwritten notes]*

Servicer:
Bank of America N.A.

Investor: Fed Home Loan
Mtg. Corp
(Freddie Mac)

↓

Owner of Mtg

HUD Case No.

# SELLER'S AND/OR PURCHASER'S/BORROWER'S STATEMENT

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

I hereby authorize the Settlement Agent to make expenditures and disbursements as shown and approve same for payment.

## ACCEPTED AND APPROVED:

**Borrower(s)/Purchaser(s)**                    **Seller(s)**

_____             _____
Joseph J. Cozzolino                          Charles Richard Congdon Jr.

                                             _____
                                             Naomi H. Congdon

Date: _____             Date: _____

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

**Settlement Agent:**

_____    Date: _____
Angie Parish, Escrow Officer

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details, see: Title 18 U.S. Code Sections 1001 and 1010.

File No.: ██████████                                                    Date: 01/24/2007

signatures. Escrow Agent may furnish copies of any and all documents to the lender(s), real estate agent(s), attorney(s) and/or accountant(s) involved in this transaction upon their request.

## 22. Tax Reporting, Withholding & Disclosure

The parties are advised to seek independent advice concerning the tax consequences of this transaction, including but not limited to, their withholding, reporting and disclosure obligations. Escrow Agent does not provide tax or legal advice and the parties agree to hold Escrow Agent harmless from any loss or damage that the parties may incur as a result of their failure to comply with federal and/or state tax laws. WITHHOLDING OBLIGATIONS ARE THE EXCLUSIVE OBLIGATIONS OF THE PARTIES. ESCROW AGENT IS NOT RESPONSIBLE TO PERFORM THESE OBLIGATIONS UNLESS ESCROW AGENT AGREES IN WRITING.

### A. Taxpayer Identification Number Reporting

Federal law requires Escrow Agent to report Seller's social security number and/or tax identification number, forwarding address, and the gross sales price to the Internal Revenue Service ("IRS"). Escrow can not be closed nor any documents recorded until the information is provided and Seller certifies its accuracy to Escrow Holder.

### B. Federal Withholding & Reporting

Certain federal reporting and withholding requirements exist for real estate transactions where the seller (transferor) is a non-resident alien, a non-domestic corporation or partnership, a domestic corporation or partnership controlled by non-residents or non-resident corporations or partnerships.

### C. Taxpayer Identification Disclosure

Parties to a residential real estate transaction involving seller-provided financing are required to furnish, disclose, and include taxpayer identification numbers in their tax returns. Escrow Agent is not required to transmit the real estate I.D. numbers of the parties to the IRS. Escrow Agent is authorized to release any party's taxpayer I.D. numbers to any other party upon receipt of a written request. The parties waive all rights of confidentiality regarding their taxpayer I.D. numbers and agree to hold Escrow Agent harmless against any fees, costs, or judgments incurred and/or awarded because of the release of taxpayer I.D. numbers.

### 23. Privacy Policy

The undersigned Buyer and Seller hereby acknowledge receipt of a copy of the Privacy Policy of First American Corporation and Escrow Agent.

Dated:   May 21, 2007

**SELLER(S):**                                              **BUYER(S):**

_____         _____
Charles Richard Congdon Jr.                     Joseph J. Cozzolino

_____
Naomi H. Congdon

**ESCROW AGENT:**

First American Title Insurance Agency, LLC

By: _____
        Angie Parish

## PAYMENT LETTER TO BORROWER

FROM:    MORTGAGEIT, INC.

147 W. ELECTION RD., STE 200, DRAPER, UT 84020-

TO:    JOSEPH J. COZZOLINO

Property Address:    585 EAST CANYON ROAD, EPHRAIM, UT 84627

Loan Number: ███████

Dear Borrower:

Disclosed below is the final amount of your initial monthly payment for the loan referred to above. Payments are scheduled to begin _____ JULY 01, 2007 _____ , with the final payment due on _____ JUNE 01, 2037 _____ .

A.  [XX]  The interest rate and payment amount are scheduled to remain level throughout the loan term.

B.  [    ]  This is a Graduated Payment loan which means that even though the interest rate will not change, the payments will increase in the second year and each year thereafter for the next _____ years.  A schedule of the subsequent monthly payment amounts is provided to you on the Federal Truth In Lending Disclosure Statement.

C.  [    ]  This is an Adjustable Rate loan which means that the monthly payment amounts may vary from time to time in conjunction with adjustments in the interest rate.  Review the Federal Truth In Lending Disclosure Statement and your Promissory Note for more information concerning future payment amounts.

Your initial monthly payment amount will consist of the following:

| | | |
|---|---|---|
| PRINCIPAL AND INTEREST | ..................................... | $ _____ 591.54 |
| MMI/PMI MONTHLY PREMIUM | ........................................... | $ _____ -0- * |
| RESERVE FOR COUNTY PROPERTY TAXES | ......................... | $ _____ -0- * |
| HAZARD INSURANCE RESERVE | ......................................... | $ _____ -0- * |
| FLOOD INSURANCE RESERVE | ........................................... | $ _____ -0- * |
| CITY PROPERTY TAXES | .................................................. | $ _____ -0- * |
| ANNUAL ASSESSMENTS | .................................................. | $ _____ -0- * |
| OTHER: _____ | | $ _____ * |
| OTHER: _____ | | $ _____ * |
| OTHER: _____ | | $ _____ * |
| TOTAL INITIAL MONTHLY PAYMENT | ................................ | $ _____ 591.54 |

### IMPORTANT NOTICE

We have entered into an agreement with GMAC Mortgage LLC (GMAC) to service your mortgage loan. GMAC will be responsible for handling all aspects of your loan, including providing monthly statements, posting your payments, and handling any customer service issues you may have.

If you do not receive your initial monthly statement 10 days prior to the date your first payment is due, please follow the instructions on the enclosed Temporary Payment Coupon.  If you have any questions prior to receiving your first statement from GMAC, please contact them at 1-866-725-0782 and they will be pleased to assist you.  In the unlikely event GMAC is not able to help you with any questions or concerns you may have, please feel free to contact MortgageIT's Customer Service Department at 1-888-546-8448 for further assistance.

We sincerely appreciate the opportunity to provide your mortgage financing and we will do everything possible to ensure that both MortgageIT and GMAC provide you with the courteous and professional service you deserve.

BY SIGNING BELOW, Borrower acknowledges reading this Payment Letter and receiving a copy of same.

_____    _____
JOSEPH J. COZZOLINO                              Date                                                      Date

_____    _____
                                                             Date                                                      Date

TEMPORARY PAYMENT COUPON

**MORTGAGEIT, INC.**
147 W. ELECTION RD., STE 200
DRAPER, UT 84020-

Borrower Name:   JOSEPH J. COZZOLINO

Property Address:   585 EAST CANYON ROAD, EPHRAIM, UT 84627

Date:  MAY 17, 2007

Loan #:  ███████

Dear:   JOSEPH J. COZZOLINO

Your monthly payment amount has not changed and consists of:

| | |
|---|---:|
| Principal and Interest | $ 591.54 |
| Property Taxes | $ -0- |
| Hazard Insurance | $ -0- |
| MMI/PMI Monthly Premium | $ |
| Flood Insurance Reserve | $ |
| City Property Taxes | $ |
| Annual Assessments | $ |
| Other | $ |
| Other | $ |
| Other | $ |
| Total Payment | $ 591.54 |

GMAC MORTGAGE, LLC                                                will forward payment information and coupons to you soon.  In the event these coupons are delayed, please send your payment directly to GMAC MORTGAGE, LLC                                              referencing your loan number.  If a payment is in transit to us, we will forward your payment on to GMAC MORTGAGE, LLC                                               immediately.

Should you have further questions, please call   (866) 725-0782   or e-mail customer.service@gmacm.com.
GMAC MORTGAGE, LLC
                                                          or the undersigned for assistance.  We thank you for your cooperation.

Servicing Dept.
GMAC MORTGAGE, LLC
PO BOX 780
WATERLOO, IA 50704-0780

LENDER SUPPORT SYSTEMS INC. MIT-05.MIT (07/05)

| Loan Number | Due Date | Amount |
|---|---|---|
| ██████ | 07/01/2007 | $591.54 |

Remit to:
GMAC           MORTGAGE,           LLC
PO BOX 780
WATERLOO , IA 50704-0780

| Loan Number | Due Date | Amount |
|---|---|---|
| | 08/01/2007 | $591.54 |

Remit to:
GMAC           MORTGAGE,
PO BOX 780
WATERLOO , IA 50704-0780

# NOTE

LOAN NO.: █████████

MIN: 100112065746258892
MERS Phone: 1-888-679-6377

| MAY 17, 2007 | EPHRAIM | UTAH |
|---|---|---|
| [Date] | [City] | [State] |

585 EAST CANYON ROAD, EPHRAIM, UT 84627
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    100,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is

MORTGAGEIT, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    5.875    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1st    day of each month beginning on    JULY, 2007    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    JUNE 01, 2037    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at GMAC MORTGAGE, LLC

PO BOX 780, WATERLOO, IA  50704-0780    or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    591.54    .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Initials:_____

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3200 1/01

V-5N (0207).01

Page 1 of 3

LENDER SUPPORT SYSTEMS, INC. 5N.NEW (08/06)

Return To:
MORTGAGEIT

1350 DEMING WAY, 3RD FLOOR
MIDDLETON, WI 53562

Prepared By:

SHAWNA FARRELL , DOC DRAWER

9290 W. BARNES
BOISE IDAHO 83709

——————————————————— [Space Above This Line For Recording Data] ———————————————————

# DEED OF TRUST

LOAN NO.:  ████████████          MIN  ████████████████
ESCROW NO ████████████           MERS Phone: 1-888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated    MAY 17, 2007
together with all Riders to this document.

**(B) "Borrower"** is
JOSEPH J. COZZOLINO, AN UNMARRIED MAN

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is
MORTGAGEIT, INC.

Lender is a  CORPORATION
organized and existing under the laws of  NEW YORK

Initials:_____

Form 3045  1/01

UTAH-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

V-6A(UT) (0005).01                    Page 1 of 15                    LENDER SUPPORT SYSTEMS, INC. MERS6AUT.NEW (05/06)

Lender's address is

33 MAIDEN LANE, 6TH FLOOR, NEW YORK, NY 10038-

(D) "Trustee" is

FIRST AMERICAN TITLE INSURANCE AGENCY LLC

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated          MAY 17, 2007
The Note states that Borrower owes Lender

ONE HUNDRED THOUSAND AND NO/100 X X X X X X X X X X X X X X X X X X X X X X X X X X

                                                     Dollars

(U.S. $ 100,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than     JUNE 01, 2037

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials:_____

V-6A(UT) (0005).01                     Page 2 of 15                     Form 3045  1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, conveys and warrants to Trustee, in trust, with power of sale, the following described property located in the    COUNTY    [Type of Recording Jurisdiction]
of    SANPETE    [Name of Recording Jurisdiction]:

SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Tax Serial Number: TAX PARCEL NO. ███    which currently has the address of
585 EAST CANYON ROAD    [Street]
EPHRAIM    [City] , Utah    84627    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials:_____
Form 3045    1/01

V-6A(UT) (0005).01    Page 3 of 15

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

**Creditor:**
MORTGAGEIT, INC.

**Borrower:**
JOSEPH J. COZZOLINO

147 W. ELECTION RD., STE 200
DRAPER, UT 84020-

585 EAST CANYON ROAD
EPHRAIM, UT 84627

**Date:** MAY 17, 2007

**Loan Number:** ▊▊▊▊▊▊▊

Check box if applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 6.143 %    % | $ 115,785.87 | $ 97,168.53 | $ 212,954.40 |

[ ]  REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit.
PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning: | Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning: | Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning: |
|---|---|---|---|---|---|---|---|---|
| 360 | 591.54 | 07/01/2007 | | | | | | |

[ ]  DEMAND FEATURE:  This obligation has a demand feature.
[ ]  VARIABLE RATE:  Your loan contains variable rate features.
    [ ]  Information regarding the variable rate features of your loan have been provided to you earlier in a separate document.
    [ ]  Information regarding the variable rate features of your loan are provided hereinafter.  The annual percentage rate may increase or decrease during the term of this transaction with increases or decreases in the value of the "Index" (or "Reference Rate").  The rate that you will pay may may not be changed more often than every _____ _____ commencing _____.
    [ ]  Rate Change Limits:  The rate may not increase or decrease by more than _____ %
    [ ]  The rate will never be greater than _____ %
    [ ]  Any increase in the rate will result in a corresponding increase in the payment.
    [ ]  Rate increases may occur without immediate and/or corresponding payment increases.
    [ ]  Unpaid interest will be added to the principal.
    The "Index" (or "Reference Rate") is the:

INSURANCE:  The following insurance is required to obtain credit:
[ ]  Credit life insurance and credit disability    [X]  Property insurance    [ ]  Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor.
[ ]  If you purchase  [ ]  property  [ ]  flood insurance from creditor you will pay $ _____ for one year term.
SECURITY:  You are giving a security interest in:
585 EAST CANYON ROAD, EPHRAIM, UT  84627
[X]  The goods or property being purchased    [ ]  Real property you already own.
FILING FEES:  $  75.00
LATE CHARGE:  If a payment is more than  15  days late, you will be charged  5.00  % of the payment.
PREPAYMENT:  If you pay off early, you
[ ]  may  [X]  will not    have to pay a penalty.
[ ]  may  [X]  will not    be entitled to a refund of part of the finance charge.
ASSUMPTION:  Someone buying your property
[ ]  may  [ ]  may, subject to conditions  [X]  may not    assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
[ ]  e means an estimate    [ ]  all dates and numerical disclosures except the late payment disclosures are estimates.

The undersigned acknowledge receiving and reading a completed copy of this disclosure.
Neither you nor the creditor previously has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure.
[ ]  I/We have received the Variable Rate Disclosure for the loan program for which I/We have applied.

JOSEPH J. COZZOLINO    Date        Date

    Date        Date

LENDER SUPPORT SYSTEMS INC.  MIT-02 MIT (03/03)

## "FEDERAL TRUTH - IN - LENDING DISCLOSURE STATEMENT" - PAGE 2
## "ITEMIZATION OF AMOUNT FINANCED"

Creditor:
MORTGAGEIT, INC.

Re:
JOSEPH J. COZZOLINO

147 W. ELECTION RD., STE 200
DRAPER, UT 84020-

585 EAST CANYON ROAD
EPHRAIM, UT 84627

Date: MAY 17, 2007
Interest Rate: 5.875 %
BROKER'S LICENSE #: BANK EXEMPT
DEPT. OF REAL ESTATE LICENSE INFO LINE: (916) 227-0931

Loan Number: ▮▮▮▮▮
Loan Amount: 100,000.00

| Ref HUD-1 Statement | | ** Amount Paid on your Account | *Broker = B   Other = O | |
|---|---|---|---|---|
| | | | PAID | FINANCED | * |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |

| | **Amount Paid To Others on your Behalf:** | | | |
|---|---|---|---|---|
| 809 | APPRAISAL FEE TO APPR | | $ | 400.00 | |
| 1105 | DOCUMENT PREPARATION FEE TO ESC | | $ | 50.00 | |
| 1201 | RECORDING FEE | | $ | 75.00 | |
| | TITLE INSURANCE - LENDER | | $ | 459.00 | |
| | HAZARD INSURANCE PREMIUM TO INS | | $ | 785.74 | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | LOAN PROCEEDS PAID TO: FIRST AMERICAN TITLE INSURANCE AGENCY LLC | | $ | 95,418.79 | |

AMOUNT FINANCED  $  97,168.53

| Prepaid Finance Charge: | PAID | FINANCED | * |
|---|---|---|---|
| PROCESSING FEE | | $ | 100.00 | B |
| TAX SERVICE FEE TO MIT | | $ | 69.00 | |
| 901 | INTEREST 14 DAYS @ $ 16.319 /DAY | | $ | 228.47 | |
| FLOOD CERTIFICATION FEE TO MIT | | $ | 10.00 | |
| ADMINISTRATION FEE TO MIT | | $ | 535.00 | |
| WIRE FEE TO MORTGAGEIT TO MIT | | $ | 19.00 | |
| ORIGINATION FEE BROKER | | $ | 750.00 | B |
| COURIER FEE | | $ | 20.00 | |
| WIRE TRANSFER FEE TO ESC | | $ | 20.00 | |
| DISCOUNT POINT TO MIT TO MIT | | $ | 930.00 | |
| ESCROW FEE | | $ | 150.00 | |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| Total Prepaid Finance Charge: | | $ | 2,831.47 | |

| These are FEES NOT paid by the Borrower | | |
|---|---|---|
| | $ | |
| | $ | |

| Total Estimated Funds needed to close | | Total Estimated Monthly Payment | |
|---|---|---|---|
| Down Payment | $ 300,000.00 | Principal & Interest | $ 591.54 |
| Estimated Closing Costs | $ 4,352.74 | Total Real Estate Taxes | $ |
| Estimated Prepaid Items/Reserves | $ 228.47 | Flood & Hazard Insurance | $ |
| Other:  TOTAL PAYOFFS | $ | Mortgage Insurance | $ |
| TOTAL EST. FUNDS NEEDED TO CLOSE | $ 304,581.21 | Total Other Impounds | $ |
| | | TOTAL MONTHLY PAYMENT | $ 591.54 |

This form does not cover all items you will be required to pay in cash at settlement; for example, deposits in escrow for real estate taxes and insurance may be different. You may wish to inquire as to the amounts of such other items. You may be required to pay other additional amounts at settlement.

Neither you nor the lender previously has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure. Each of the Undersigned acknowledge receiving and reading a completed copy of this disclosure.
[ ] All disclosures are estimates

_____    _____    _____    _____
JOSEPH J. COZZOLINO                Date                                                    Date

# UTAH
## Disclosure of Servicer
## UT Code Ann Section 70D-1-7

**Loan Number**

▬▬▬

**Borrower**

JOSEPH J. COZZOLINO

**Property Address**

585 EAST CANYON ROAD, EPHRAIM, UT 84627

Utah Code requires that you receive written notification naming the servicer on your loan and the address where monthly payments are to be sent.

**Servicer:**
GMAC MORTGAGE, LLC
P.O. BOX 4622
WATERLOO , IA 50704-4622

**Mail monthly payments to:**
GMAC MORTGAGE, LLC
PO BOX 780
WATERLOO , IA 149

Your acknowledgment below signifies that written notice was provided to you pursuant to the state code.

---

JOSEPH J. COZZOLINO                    (Date)                    (Date)

---

(Date)                    (Date)

---

(Date)                    (Date)

---

(Date)                    (Date)

7/03

VMP-1059(UT) (0307)                    LENDER SUPPORT SYSTEMS INC. UT-1059.UT (12/03)

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____     Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☑ Conventional  ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|
| | ☐ FHA  ☐ USDA/Rural Housing Service | | |

| Amount $ 100,000 | Interest Rate 5.875 % | No. of Months 360/360 | Amortization Type: ☑ Fixed Rate  ☐ GPM | ☐ Other (explain): ☐ ARM (type): |
|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | No. of Units |
|---|---|
| 585 EAST CANYON RD, Ephraim, UT 84627   County: Sanpete | |
| Legal Description of Subject Property (attach description if necessary) | Year Built |
| SEE TITLE | |

| Purpose of Loan ☑ Purchase  ☐ Construction  ☐ Other (explain): ☐ Refinance  ☐ Construction-Permanent | Property will be: ☑ Primary Residence  ☐ Secondary Residence  ☐ Investment |
|---|---|

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost $ | Amount Existing Liens $ | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made Cost: $ | |
|---|---|---|---|---|---|

| Title will be held in what Name(s) JOSEPH J COZZOLINO | Manner in which Title will be held Single man | Estate will be held in: ☑ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) JOSEPH J COZZOLINO | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|

| Social Security Number | Home Phone (incl. area code) 760-240-1208 | DOB (mm/dd/yyyy) | Yrs. School 18+ | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married ☑ Unmarried (include single, ☐ Separated     divorced, widowed) | Dependents (not listed by Co-Borrower) no. 0   ages 0 | ☐ Married ☐ Unmarried (include single, ☐ Separated     divorced, widowed) | Dependents (not listed by Borrower) no.   ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☐ Own ☑ Rent 7 No. Yrs. 16701 MAIN ST #119 Hesperia, CA 92345 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

*If residing at present address for less than two years, complete the following:*

| Former Address (street, city, state, ZIP) ☑ Own ☐ Rent 10 No. Yrs. 233 LINDEN AVE Belleville, NJ 07109 | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

| Fannie Mae Form 1003   07/05 CALYX Form Loanapp1.frm 09/05 | Page 1 of 5 | Borrower _____ Co-Borrower _____ | Freddie Mac Form 65   07/05 |
|---|---|---|---|

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ 400,000.00 |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | |
| e. Estimated prepaid items | 912.61 |
| f. Estimated closing costs | 3,982.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 404,894.61 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
|    Cash Deposit on sales contract | 1,000.00 |
|    Seller Credit | 638.39 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 100,000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 100,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 303,256.22 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|:---:|:---:|:---:|:---:|
| a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☐ |
| d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐ | ☑ | ☐ | ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☐ |
| h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☐ |
| j. Are you a U. S. citizen? | ☑ | ☐ | ☐ | ☐ |
| k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ | ☐ | ☐ | ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☐ | ☐ |

(1) What type of property did you own-principal residence (PR), second home (SH), or investment property (IP)?　　PR

(2) How did you hold title to the home-solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)?　　S

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its agents, brokers, insurers, servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature X | Date | Co-Borrower's Signature X | Date |
|---|---|---|---|

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

**BORROWER** ☐ I do not wish to furnish this information

Ethnicity: ☐ Hispanic or Latino　☑ Not Hispanic or Latino

Race: ☐ American Indian or Alaska Native　☐ Asian　☐ Black or African American
☐ Native Hawaiian or Other Pacific Islander　☑ White

Sex: ☐ Female　☑ Male

**CO-BORROWER** ☐ I do not wish to furnish this information

Ethnicity: ☐ Hispanic or Latino　☐ Not Hispanic or Latino

Race: ☐ American Indian or Alaska Native　☐ Asian　☐ Black or African American
☐ Native Hawaiian or Other Pacific Islander　☐ White

Sex: ☐ Female　☐ Male

| To be Completed by Interviewer This application was taken by: ☑ Face-to-face interview ☐ Mail ☐ Telephone ☐ Internet | Interviewer's Name (print or type) Karl Cox | Name and Address of Interviewer's Employer MORONI FEED C.U. 268 S MAIN EPHRAIM, UT 84627 (P) 435-283-8288 (F) 435-283-5266 |
|---|---|---|
| | Interviewer's Signature　　　　　Date | |
| | Interviewer's Phone Number (incl. area code) 435-283-8288 | |

CLOSING INSTRUCTIONS

MORTGAGEIT, INC.

147 W. ELECTION RD., STE 200
DRAPER, UT 84020-

FUND DEPT
PHONE: 801-456-3725         FAX: 801-456-3726

DOCUMENT DATE:   MAY 17, 2007
FUNDING DATE:

TO:
FIRST AMERICAN TITLE INSURANCE AGENCY LLC
320 SOUTH 50 WEST
EPHRAIM, UT 84627-

ATTN: ANGIE PARISH
(435) 283-4900

▪   FIRST AMERICAN TITLE INSURANCE AGENCY LLC
▪   320 SOUTH 50 WEST
▪   EPHRAIM, UT 84627-

ATTN: ANGIE PARISH
(435) 283-4900

LOAN NO:
ESCROW NO:
ORDER NO:
LOAN NAME:   JOSEPH J. COZZOLINO

**MONTHLY PAYMENT**

| | |
|---|---|
| P & I | 591.54 |
| TAX | |
| INSURANCE | |
| PMI/MMI | |
| TOTAL | 591.54 |

ALL DOCUMENTS MUST BE IN OUR OFFICE

24 HOURS

AFTER SIGNING

We enclose the following documents necessary to complete the above-captioned loan.  No changes, revisions or modifications to any of the closing documents or to any of the fees or charges associated with this transaction may be made without the prior approval of your designated MortgageIT Closer.  Any such change, revision or modification may require some or all of the closing documentation to be redrawn; funds returned and re-wired; and/or a new rescission period to commence (if applicable).  If you have any questions, please contact your MortgageIT Closer.  Return all documents completed as shown at the time funds are requested.  Deliver to Borrower one copy of each document signed by Borrower.  Each Borrower must receive 2 copies of Notice of Right to Cancel.

[ X ]  **Deed of Trust or Mortgage:** *Conform and Certify  copies; Deliver original to Title Company along with other originals to be recorded.*
[ X ]  **Note:**  *Conform and Certify  copies*

| | | |
|---|---|---|
| ADD. TO CLOSING INSTR. - CONDITIONS | T.I.L. DISCLOSURE STMT (2pgs) | FEDERAL T.I.L. DISC STMT (Page 2) |
| PAYMENT LETTER W/COUPON | COMPLIANCE AGREEMENT | IMPOUND ACCOUNT DISC AGREEMENT |
| HAZARD INSURANCE AUTHORIZATION | W-9(s) | Form 4506-T REQ FOR TRANSCRIPT |
| NOTICE TO APPLICANT | BIRTH DATE CERTIFICATION | SIGNATURE AFFIDAVIT |
| CORRECTION AGRMT/LIMITED POWER | BORROWER'S CERT. & AUTHORIZATION | PAYMENT LETTER TO BORROWER |
| RESPA SERVICING DISCLOSURE | ESCROW WAIVER AGREEMENT | MAILING ADDRESS CERTIFICATION |
| CREDIT SCORE NOTICE | DISCLOSURE OF CREDIT SCORE INFO | NOTICE FURNISHING OF NEGATIVE INFO |
| OWNER OCCUPANCY AGREEMENT | APPLICATION DISCLOSURE | DISCLOSURE OF SERVICER |
| FLOOD ZONE NOTIFICATION | | |

[  ]  FHA 2900 or VA 1876/1820 - Borrower to execute and return all copies. **DO NOT DATE.**
IN ADDITION TO THE ABOVE, FURNISH US THE FOLLOWING WHEN REQUESTING FUNDS:
[  ]  Termite Report and Clearance: *In duplicate.  Required FHA/VA statement must be typed on the report/clearance and signed by borrowers.*

SEE "ADDENDUM TO CLOSING INSTRUCTIONS" ATTACHED HERETO AND MADE A PART HEREOF.

The Title Company/Settlement Agent must return an original recorded security instrument and satisfactory Title Policy within thirty (30) days of recording o the security instrument along with all other required recorded documents. Attention: Final Docs, MortgageIT, 1350 Deming Way, 3rd Floor, Middleton, W 53562

PRIOR TO CLOSING WE WILL OBTAIN:
[XX] Final Compliance Inspection Report.
     ALTA POLICY must contain Endorsements 100, 116, 8.1 and 8.1,100,116
     with liability in the amount of our loan on property described herein.
     LIABILITY SUBJECT ONLY TO:  (Gen. & Spec. taxes) Fiscal Year  2007
     THIS LOAN TO CLOSE AND RECORD IN FIRST LIEN POSITION.

CONDITIONS TO CLOSE:
     Closing agent shall notify the lender in writing prior to closing the loan, if title to the subject property has changed hands within the past 180 days, and/or the new mortgage represents an increase of over twenty-five percent (25%) of a previous mortgage made during that same period; and/or if the agent has knowledge of previous, concurrent or subsequent transactions involving the borrowers or the subject property.

_____
Closing Agent

Page 1 of 3                                        Borrowers Initials _____

LSSI - MIT-01.MIT (07/05)

CLOSING INSTRUCTIONS

| MORTGAGEIT, INC. | LOAN NO: |
|---|---|
| 147 W. ELECTION RD., STE 200 DRAPER , UT 84020- | ESCROW NO: |
| FUND DEPT | ORDER NO: |
| PHONE 801-458-3725     FAX: 801-456-3726 | LOAN NAME:   JOSEPH J. COZZOLINO |

DOCUMENT DATE:   MAY 17, 2007
FUNDING DATE:

**MONTHLY PAYMENT**

| P & I | 591.54 |
|---|---|
| TAX | |
| INSURANCE | |
| PMI/MMI | |
| TOTAL | 591.54 |

TO:
FIRST AMERICAN TITLE INSURANCE AGENCY LLC
320 SOUTH 50 WEST
EPHRAIM, UT 84627-

ATTN: ANGIE PARISH
(435) 283-4900

- FIRST AMERICAN TITLE INSURANCE AGENCY LLC
- 320 SOUTH 50 WEST
- EPHRAIM, UT 84627-

ATTN: ANGIE PARISH
(435) 283-4900

> ALL DOCUMENTS MUST BE IN OUR OFFICE
>
> 24 HOURS
>
> AFTER SIGNING

We enclose the following documents necessary to complete the above-captioned loan. No changes, revisions or modifications to any of the closing documents or to any of the fees or charges associated with this transaction may be made without the prior approval of your designated MortgageIT Closer. Any such change, revision or modification may require some or all of the closing documentation to be redrawn; funds returned and re-wired; and/or a new rescission period to commence (if applicable). If you have any questions, please contact your MortgageIT Closer. Return all documents completed as shown at the time funds are requested. Deliver to Borrower one copy of each document signed by Borrower. Each Borrower must receive 2 copies of Notice of Right to Cancel.

[ X ]  **Deed of Trust or Mortgage:** *Conform and Certify  copies; Deliver original to Title Company along with other originals to be recorded.*
[ X ]  **Note:** *Conform and Certify  copies*

| ADD. TO CLOSING INSTR. - CONDITIONS | T.I.L. DISCLOSURE STMT (2pgs) | FEDERAL T.I.L. DISC STMT (Page 2) |
|---|---|---|
| PAYMENT LETTER W/COUPON | COMPLIANCE AGREEMENT | IMPOUND ACCOUNT DISC AGREEMENT |
| HAZARD INSURANCE AUTHORIZATION | W-9(s) | Form 4506-T REQ FOR TRANSCRIPT |
| NOTICE TO APPLICANT | BIRTH DATE CERTIFICATION | SIGNATURE AFFIDAVIT |
| CORRECTION AGRMT/LIMITED POWER | BORROWER'S CERT. & AUTHORIZATION | PAYMENT LETTER TO BORROWER |
| RESPA SERVICING DISCLOSURE | ESCROW WAIVER AGREEMENT | MAILING ADDRESS CERTIFICATION |
| CREDIT SCORE NOTICE | DISCLOSURE OF CREDIT SCORE INFO | NOTICE FURNISHING OF NEGATIVE INFO |
| OWNER OCCUPANCY AGREEMENT | APPLICATION DISCLOSURE | DISCLOSURE OF SERVICER |
| FLOOD ZONE NOTIFICATION | | |

[   ]  FHA 2900 or VA 1876/1820 - Borrower to execute and return all copies.  **DO NOT DATE.**
IN ADDITION TO THE ABOVE, FURNISH US THE FOLLOWING WHEN REQUESTING FUNDS:
[   ]  Termite Report and Clearance: *in duplicate. Required FHA/VA statement must be typed on the report/clearance and signed by borrowers.*

SEE "ADDENDUM TO CLOSING INSTRUCTIONS" ATTACHED HERETO AND MADE A PART HEREOF.

The Title Company/Settlement Agent must return an original recorded security instrument and satisfactory Title Policy within thirty (30) days of recording o the security instrument along with all other required recorded documents. Attention: Final Docs, MortgageIT, 1350 Deming Way, 3rd Floor, Middleton, W 53562

PRIOR TO CLOSING WE WILL OBTAIN:
[XX ] Final Compliance Inspection Report.
    ALTA POLICY must contain Endorsements 100, 116, 8.1 and 8.1,100,116
    with liability in the amount of our loan on property described herein.
    LIABILITY SUBJECT ONLY TO:  (Gen. & Spec. taxes) Fiscal Year  2007
    THIS LOAN TO CLOSE AND RECORD IN FIRST LIEN POSITION.

CONDITIONS TO CLOSE:
    Closing agent shall notify the lender in writing prior to closing the loan, if title to the subject property has changed hands within the past 180 days, and/or the new mortgage represents an increase of over twenty-five percent (25%) of a previous mortgage made during that same period; and/or if the agent has knowledge of previous, concurrent or subsequent transactions involving the borrowers or the subject property.

_____
                    Closing Agent

Borrowers Initials _____

LSSI - MIT-01.MIT (07/05)

# CLOSING INSTRUCTIONS

MORTGAGEIT, INC.

147 W. ELECTION RD., STE 200
DRAPER, UT 84020-

FUND DEPT
PHONE: 801-456-3725          FAX: 801-456-3726

DOCUMENT DATE:  MAY 17, 2007
FUNDING DATE:

TO: FIRST AMERICAN TITLE INSURANCE AGENCY LLC
320 SOUTH 50 WEST
EPHRAIM, UT 84627-

ATTN:  ANGIE PARISH
(435) 283-4900

- FIRST AMERICAN TITLE INSURANCE AGENCY LLC
- 320 SOUTH 50 WEST
- EPHRAIM, UT 84627-

ATTN:  ANGIE PARISH
(435) 283-4900

LOAN NO:
ESCROW NO:
ORDER NO:
LOAN NAME:  JOSEPH J. COZZOLINO

MONTHLY PAYMENT
P & I               591.54
TAX
INSURANCE
PMI/MMI
TOTAL               591.54

| ALL DOCUMENTS MUST BE IN OUR OFFICE |
| :---: |
| 24 HOURS |
| AFTER SIGNING |

We enclose the following documents necessary to complete the above-captioned loan.  No changes, revisions or modifications to any of the closing documents or to any of the fees or charges associated with this transaction may be made without the prior approval of your designated MortgageIT Closer.  Any such change, revision or modification may require some or all of the closing documentation to be redrawn; funds returned and re-wired; and/or a new rescission period to commence (if applicable).  If you have any questions, please contact your MortgageIT Closer.  Return all documents completed as shown at the time funds are requested.  Deliver to Borrower one copy of each document signed by Borrower.  Each Borrower must receive 2 copies of Notice of Right to Cancel.

[ X ] **Deed of Trust or Mortgage:** *Conform and Certify   copies; Deliver original to Title Company along with other originals to be recorded.*
[ X ] **Note:** *Conform and Certify   copies*

| | | |
| --- | --- | --- |
| ADD. TO CLOSING INSTR. - CONDITIONS | T.I.L. DISCLOSURE STMT (2pgs) | FEDERAL T.I.L. DISC STMT (Page 2) |
| PAYMENT LETTER W/COUPON | COMPLIANCE AGREEMENT | IMPOUND ACCOUNT DISC AGREEMENT |
| HAZARD INSURANCE AUTHORIZATION | W-9(s) | Form 4506-T REQ FOR TRANSCRIPT |
| NOTICE TO APPLICANT | BIRTH DATE CERTIFICATION | SIGNATURE AFFIDAVIT |
| CORRECTION AGRMT/LIMITED POWER | BORROWER'S CERT. & AUTHORIZATION | PAYMENT LETTER TO BORROWER |
| RESPA SERVICING DISCLOSURE | ESCROW WAIVER AGREEMENT | MAILING ADDRESS CERTIFICATION |
| CREDIT SCORE NOTICE | DISCLOSURE OF CREDIT SCORE INFO | NOTICE FURNISHING OF NEGATIVE INFO |
| OWNER OCCUPANCY AGREEMENT | APPLICATION DISCLOSURE | DISCLOSURE OF SERVICER |
| FLOOD ZONE NOTIFICATION | | |

[   ] FHA 2900 or VA 1876/1820 - Borrower to execute and return all copies. DO NOT DATE.
IN ADDITION TO THE ABOVE, FURNISH US THE FOLLOWING WHEN REQUESTING FUNDS:
[   ] Termite Report and Clearance: *In duplicate.  Required FHA/VA statement must be typed on the report/clearance and signed by borrowers.*

SEE "ADDENDUM TO CLOSING INSTRUCTIONS" ATTACHED HERETO AND MADE A PART HEREOF.

The Title Company/Settlement Agent must return an original recorded security instrument and satisfactory Title Policy within thirty (30) days of recording of the security instrument along with all other required recorded documents.  Attention: Final Docs, MortgageIT, 1350 Deming Way, 3rd Floor, Middleton, WI 53562

PRIOR TO CLOSING WE WILL OBTAIN:
[ XX ] Final Compliance Inspection Report.
ALTA POLICY must contain Endorsements 100, 116, 8.1 and 8.1,100,116
with liability in the amount of our loan on property described herein.
LIABILITY SUBJECT ONLY TO: (Gen. & Spec. taxes) Fiscal Year 2007
THIS LOAN TO CLOSE AND RECORD IN FIRST LIEN POSITION.

CONDITIONS TO CLOSE:
Closing agent shall notify the lender in writing prior to closing the loan, if title to the subject property has changed hands within the past 180 days, and/or the new mortgage represents an increase of over twenty-five percent (25%) of a previous mortgage made during that same period; and/or if the agent has knowledge of previous, concurrent or subsequent transactions involving the borrowers or the subject property.

_____
Closing Agent

Borrowers Initials _____

LSSI - MIT-01.MIT (07/05)

**<u>Exhibit C</u>**
**Cozzolino Servicing Notes**

Date Data as-of: November 14, 2013

| Account Number | Name Primary Borrower | Name Secondary Borrower | Property Address | Mailing Address |
|---|---|---|---|---|
| ███████ | JOSEPH J COZZOLINO | | 585 EAST CANYON ROAD | PO BOX 458 |
| | | | EPHRAIM | EPHRAIM |
| | | | UT | UT |
| | | | 84627-0000 | 84627-0000 |

**Investor Info**

Investor Acct No - ████████
Investor Number ████
Investor Name Full MORTGAGE IT HOLDING - PRIVATE LABEL
Investor Id PRIME&ALTA

**Previous Servicer Info**

Seller Company Name MORTGAGE IT

**Loan Info**

| | | **Dates** | | **Current Balances** | | **Uncollected** | | **Year-To-Date** | |
|---|---|---|---|---|---|---|---|---|---|
| Arm Flag | N | Int Collected To | 06/01/2007 | Principal | $0.00 | Late Charges | $0.00 | Interest | $0.00 |
| Loan Type | Conventional | Next Due | 07/01/2007 | Escrow | $0.00 | Interest | $0.00 | Taxes | $0.00 |
| Lien Position | 01 | Last Payment | | Unapplied | $0.00 | Fees | $0.00 | | |
| Interest Rate | 5.875% | Last Activity | 07/02/2007 | Buydown | $0.00 | Opt | $0.00 | | |
| Collection Status | PO | Setup Date | 05/29/2007 | | | | | | |
| | | Maturity Date | 06/01/2037 | | | | | | |

**Financial**

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction | Description | Transaction Reason Code | Trans Type | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ███ | 07/02/2007 | 06/01/2007 | $0.00 | Service Release | | | SV | $0.00 | $100,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ███ | 07/02/2007 | 06/01/2007 | $100,000.00 | Service Release | | | SVT | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**Comments:**

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ███ | | 08/10/2007 | CBR | SERVICE RELEASE: EFFECTIVE DATE =07/02/07 | SYSTEM ID |
| ███ | | 08/10/2007 | CBR | PURCHASED<60 DAYS:SERVICE DT =  07/02/07 | SYSTEM ID |
| ███ | | 07/26/2007 | OL | WDOYCUS - GENERAL INQUIRY INFO ENCLOSED | JO GORDON |
| ███ | PRD05 | 07/26/2007 | CIT | 001 DONE 07/26/07 BY TLR 08164 | JO GORDON |
| ███ | PRD05 | 07/26/2007 | CIT | TSK TYP 103-DOCUMENT REQUES | JO GORDON |
| ███ | PRD05 | 07/26/2007 | CIT | 001 closing cit mailing gb ltr jgordon/temp | JO GORDON |
| ███ | INQ75 | 07/18/2007 | CIT | 001 new cit 103 pls send copy of goodbye letter to | JVAMI DESSERY CALSIE |
| ███ | INQ75 | 07/18/2007 | CIT | b1's new mailing add. thank you. nymphab73860 | JVAMI DESSERY CALSIE |
| ███ | INQ | 07/18/2007 | NT | b1 ci re mas. adv b1 twas not sent to him bcoz | JVAMI DESSERY CALSIE |
| ███ | INQ | 07/18/2007 | NT | acct has been transfered to countrywide. adv b1 to | JVAMI DESSERY CALSIE |
| ███ | INQ | 07/18/2007 | NT | call 800-669-6607.b1 updated m/a. nymphab73860 | JVAMI DESSERY CALSIE |
| ███ | | 07/13/2007 | CBR | PURCHASED<60 DAYS:SERVICE DT =  05/29/07 | SYSTEM ID |

| | CSH | 06/25/2007 | NT | b1 cld abt pmt snt 6/15/07 ck#9348 for $91.54 not | MARY KAMMEYER |
| | CSH | 06/25/2007 | NT | showing on loan or in spreadsheet, advzd b1 to ck | MARY KAMMEYER |
| | CSH | 06/25/2007 | NT | with bank to see if pmt clrd also allow more time | MARY KAMMEYER |
| | CSH | 06/25/2007 | NT | if ck rcvd will be forwarded mary | MARY KAMMEYER |
| | | 06/22/2007 | CBR | PURCHASED<60 DAYS:SERVICE DT =   05/29/07 | SYSTEM ID |
| | STOP | 06/15/2007 | NT | WC2: 7/1/07 payment due Countrywide (102) per | PHILIP FRANKS |
| | STOP | 06/15/2007 | NT | spreadsheet received from MIT. | PHILIP FRANKS |
| | | 06/04/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| | | 05/30/2007 | D19 | WELCOME LETTER ELIGIBLE | SYSTEM ID |
| | | 05/29/2007 | CLS | 0000O/B 000100000.00 P/B 000100000.00 06/01/07 | LOI |

## **Exhibit D**
**Cozzolino Goodbye Letter**

06/15/07


JOSEPH J COZZOLINO

585 EAST CANYON ROAD

EPHRAIM UT 84627-0000


GMAC Mortgage, LLC          Account ███████████████

COUNTRYWIDE HOME LOANS INC          Account Number: ██████████


Property Address:  585 EAST CANYON ROAD

                                EPHRAIM UT 84627-0000


Dear JOSEPH J COZZOLINO

Effective 07/02/07, the servicing of the above referenced account, that is, the right to collect payments from you, is being assigned, sold, or transferred from GMAC Mortgage, LLC to COUNTRYWIDE HOME LOANS INC. The assignment, sale, or transfer of servicing does not affect the terms or conditions of your mortgage documents/security instruments, other than the terms directly related to the servicing of your account.

 Your present servicer is GMAC Mortgage, LLC. Prior to 07/02/07, any questions regarding your account should be directed to our Customer Care Department at 866-725-0782.


Your new servicer will be COUNTRYWIDE HOME LOANS INC.  Beginning 07/02/07, any questions you have regarding your account should be directed to COUNTRYWIDE HOME LOANS INC. You can contact their Customer Service Department at 800-669-6607. Also beginning 07/02/07, written inquiries regarding your account should be directed to COUNTRYWIDE HOME LOANS INC 's Customer Service Department at the address below.

 Payment Information - Effective 07/02/07, please direct payments to COUNTRYWIDE HOME LOANS INC's Payment Processing

06/15/07

Account Number ▉▉▉▉▉▉

Page Two


Department at the address below.  Payments will be processed by GMAC Mortgage, LLC if received prior to 07/02/07, and will be forwarded to COUNTRYWIDE HOME LOANS INC if received on or after 07/02/07.

> COUNTRYWIDE HOME LOANS INC
>
> PO BOX 10334
>
> VAN NUYS        CA  91410-0334


As of 06/15/07, your Current Principal Balance is $   100000.00. your current escrow balance is $ 0.00, your current interest rate is   5.87500%, your total monthly payment is $ 591.54, and your next due date is 07/01/07.

Automatic Payment Deduction - If you currently have your payments automatically withdrawn from your financial institution, this service will be transferred to COUNTRYWIDE HOME LOANS INC. If this service is not transferable, you will receive a letter under separate cover providing further direction.

Government Allotment/Bill Pay Service - If you currently make your payment through a third party entity (e.g. government allotment, biweekly, or bill-pay service), please advise them of your new account number and change the payee to COUNTRYWIDE HOME LOANS INC . In the event of a payment change, it is your responsibility to notify the third party of the new payment amount. If you have been using the bill-pay service on GMAC Mortgage, LLC's website, this service will be deactivated after 07/02/07.

 Optional Insurance - If you have taken advantage of any of our optional insurance plans or optional products, this service will be transferred to COUNTRYWIDE HOME LOANS INC . If any of these plans or products are not transferable, you will receive a letter under separate cover providing further direction.

 Year-End Statement - You will receive a year-end statement from GMAC Mortgage, LLC reflecting account activity this year. COUNTRYWIDE HOME LOANS INC should provide their own statement for the period of time they serviced your account this year. You will need to combine these two statements for income tax purposes.

 Escrow Account - If you have an escrow account, GMAC Mortgage, LLC will send you, within 45 days, an escrow history statement reflecting escrow deposits, disbursements and balances for the period of time we serviced your account since your last escrow analysis. The transferring escrow balance will be reflected on this statement.

06/15/07

Account Number ████████

Page Three


Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of the transfer. Your new servicer must also send you this notice no later than 15 days after the effective date of transfer.

 If you have filed for bankruptcy or have been discharged of your personal liability for repayment of this debt, be advised this is for informational purposes only. Furthermore, this is not an attempt to collect on the debt and should not be misconstrued to be so.

 You should be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 USC 2605):

    During the 60 day period following the effective date of the transfer of the account servicing, a payment received by your old servicer, before its due date, may not be treated by the new servicer as late, and a late fee may not be imposed on you.

    Section 6 of RESPA (12 USC s2605) gives you certain consumer rights. If you sent a "qualified written request" to your servicer concerning the servicing of your account, your servicer must provide you with a written acknowledgment within 20 business days of receipt of your request. A "qualified written request" is written correspondence, other than notice on a payment coupon or other payment medium     supplied by the serivcer, which includes your name, account number, and reason for the request.

    No later than 60 business days after receiving your request, your servicer must make appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60 business day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.     However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents/security instruments.

     A "business day" is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

06/15/07

Account Number ████████

Page Four


     Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

 GMAC Mortgage, LLC appreciated the opportunity to service your account. We wish you a successful relationship with COUNTRYWIDE HOME LOANS INC.


Sincerely,


 GMAC Mortgage, LLC

6020

**Exhibit E**
**Ewing Claim**

ny-1145045

B 10 Modified (Official Form 10) (12/11)

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** | **PROOF OF CLAIM** |

Claim #2152   Date Filed: 11/5/2012

Name of Debtor and Case Number: GmAC 12-12020 (MG)

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): ~~GmAC~~

Name and address where notices should be sent:

Scott W or Linda G Ewing    both
21238 Hubbard Avenue    address
Pt. Charlotte, FL 33952

Telephone number: 941-276-7037   email: Slewing@embarq mail.com

Name and address where payment should be sent (if different from above):
24 Jersey Fleur
Ellijay, GA 30540   Slewing@embarq mail.com
Telephone number: 941-276-7037   email:

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
*(If known)*

Filed on:_____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ 100,000.—

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Over estimated homes Value / over charged
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:**
1234

**3a. Debtor may have scheduled account as:**
Alison Tearnen
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☒ Real Estate ☐ Motor Vehicle ☐ Other
**Describe:**
**Value of Property:** $ 150,000   **Annual Interest Rate** 4.875 % ☒ Fixed ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
if any: $ _____   Basis for perfection: _____

Amount of Secured Claim: $ _____   Amount Unsecured: $ _____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$ _____ (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are *redacted* copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and *redacted* copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☒ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**

$ _____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**9. Signature:** (See instruction #9) Check the appropriate box.

☒ I am the creditor.   ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Scott/Linda Ewing   Date: 10/29/12
Title: _____
Company: _____   (Signature)   (Date)
Address and telephone number (if different from notice address above):

RECEIVED
NOV 05 2012
KURTZMAN CARSON CONSULTANTS
COURT USE ONLY

Telephone number: _____   Email: _____

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both

☒ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return


12120201211050000000000007

## GMAC Mortgage Account Statement

**CUSTOMER INFORMATION**

Name:      Scott W Ewing
       Linda C Ewing

Account Number:
Home Phone #:    (941)625-9508

**PROPERTY ADDRESS**

27 JERSEY FLEUR DR
ELLIJAY      GA 30540

# GMAC Mortgage

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

0211/10 11.00.5  0004894 2012/1004 L65J103 GMREG  2 OZ.DOM L65J10000* 146316  GM

SCOTT W EWING
LINDA C EWING
21238 HUBBARD AVE
PORT CHARLOTTE FL  33952-2504



For information about your existing account,
please call 1-800-766-4622.

For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information.   Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

### Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | October 01, 2012 |
| Maturity Date | March 01, 2041 |
| Interest Rate | 4.87500 |
| Interest Paid Year-to-Date | $7,326.53 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $199,047.58 |

### Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $1,079.58 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $1,079.58 |
| Account Due Date | November 01, 2012 |

**For Customer Care inquiries call: 1-800-766-4622**
**For Insurance inquiries call:      1-800-256-9962**
**For Payment Arrangements call: 1-800-850-4622**

### Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 10/01/12 | 09/24/12 | $1,079.58 | $269.85 | $809.73 | | | | |
| Additional Principal | 09/01/12 | 09/24/12 | $0.42 | $0.42 | | | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

### Important News

Considering a refinance or the purchase of a new home?  We're here to help - call a loan specialist
today at 877-528-3817 to review all of the financing options available to you.

Your home is turning another year older.  Protect it with TotalProtect--please see the
enclosed information.

**See Reverse Side For Important Information And State Specific Disclosures**

**Exhibit F**
**Ewing Note**

ny-1145045

# NOTE

**March 3, 2011**          **Port Charlotte**                    **FL**
_[Date]_                   _[City]_                    _[State]_

**27 Jersey Fleur Dr, Ellijay, GA    30540**
                          _[Property Address]_

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **204,000.00**     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Ally Bank Corp. f/k/a GMAC Bank**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.875**    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **First**    day of each month beginning on **April 1 , 2011**     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **March 1, 2041**    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 79135, Phoenix, AZ   85062-9135**
                                        or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ **1,079.58**

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

1005H
MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        March 1, 2011 12:25pm
VMP ®                                                                    Form 3200 1/01
Wolters Kluwer Financial Services                                        VMP6N (1001).01
                                                                         Page 1 of 3
000587098486

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000             % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

1006N                                                                    000687868106                              March 1, 2011 12:28pm
MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3200 1/01
VMP ®                                                                                                      VMP5N (1001).01
Wolters Kluwer Financial Services                                                                          Page 2 of 3

**19. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Pay to the order of
GMAC Mortgage, LLC
Without Recourse:

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Helen Miller, Assistant Secretary
Ally Bank Corp. f/k/a GMAC Bank

Borrower

_____    3-7-11    _____    3/3/11
Scott W. Ewing                     Date       Linda C. Ewing                      Date
                                   (Seal)                                         (Seal)

Pay to the order of
Fannie Mae
Without Recourse:

_____    Date       _____    Date
                                   (Seal)      Mona Gerhart, Authorized Officer    (Seal)
                                               GMAC Mortgage, LLC f/k/a
                                               GMAC Mortgage Corporation       [Sign Original Only]

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

**<u>Exhibit G</u>**
**Ewing Servicing Notes**

| Account Number | 1 |
|---|---|
| ████████ | |

# Loan History

Date Data as-of:  March 5, 2014

| Account Number | Name Primary Borrower | Name Secondary Borrower | Property Address | Mailing Address |
|---|---|---|---|---|
| ■■■■■ | SCOTT W EWING | LINDA C EWING | 27 JERSEY FLEUR DR | 27 JERSEY FLEUR #9271 |
| | | | ELLIJAY | ELLIJAY |
| | | | GA | GA |
| | | | 30540 | 30540 |

**Investor Info**

| | |
|---|---|
| Investor Acct No - Prim | ■■■■■ |
| Investor Number | 10257 |
| Investor Name Full | FANNIE MAE |
| Investor Id | 26061-003-1 |

**Previous Servicer Info**

| | |
|---|---|
| Previous Account Number | 0602022283 |
| Seller Company Name | |

**Loan Info**

| | |
|---|---|
| Arm Flag | N |
| Loan Type | Conventional |
| Lien Position | 01 |
| Interest Rate | 4.875% |
| Collection Status | CUR |

**Dates**

| | |
|---|---|
| Int Collected To | 03/01/2014 |
| Next Due | 04/01/2014 |
| Last Payment | 02/26/2014 |
| Last Activity | 02/26/2014 |
| Setup Date | 03/09/2011 |
| Maturity Date | 03/01/2041 |

**Current Balances**

| | |
|---|---|
| Principal | $194,281.24 |
| Escrow | $0.00 |
| Unapplied | $0.00 |
| Buydown | $0.00 |

**Uncollected**

| | |
|---|---|
| Late Charges | $0.00 |
| Interest | $0.00 |
| Fees | $0.00 |
| Opt | $0.00 |

**Year-To-Date**

| | |
|---|---|
| Interest | $1,582.05 |
| Taxes | $0.00 |

**Financial**

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ■ | 02/26/2014 | 02/01/2014 | $194,570.38 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ■ | 02/26/2014 | 03/01/2014 | $194,281.24 | PAYMENT | | AP | 00603 | $1,079.58 | $289.14 | $790.44 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ■ | 01/29/2014 | 01/01/2014 | $194,858.77 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ■ | 01/29/2014 | 02/01/2014 | $194,570.80 | PAYMENT | | AP | 00603 | $1,079.58 | $287.97 | $791.61 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ■ | 12/30/2013 | 12/01/2013 | $195,145.99 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ■ | 12/30/2013 | 01/01/2014 | $194,859.19 | PAYMENT | | AP | 00603 | $1,079.58 | $286.80 | $792.78 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ■ | 11/29/2013 | 11/01/2013 | $195,432.05 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ■ | 11/29/2013 | 12/01/2013 | $195,146.41 | PAYMENT | | AP | 00603 | $1,079.58 | $285.64 | $793.94 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ■ | 10/31/2013 | 10/01/2013 | $195,716.95 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ■ | 10/31/2013 | 11/01/2013 | $195,432.47 | PAYMENT | | AP | 00603 | $1,079.58 | $284.48 | $795.10 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ■ | 10/01/2013 | 10/01/2013 | $195,717.37 | Curtailment | | CWA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ■ | 10/01/2013 | 10/01/2013 | $195,717.79 | PAYMENT | | AP | 00603 | $1,079.58 | $283.33 | $796.25 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**Loan History**

Date Data as-of:  March 5, 2014

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 08/30/2013 | 08/01/2013 | $196,283.30 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 08/30/2013 | 09/01/2013 | $196,001.12 | PAYMENT | | AP | 00603 | $1,079.58 | $282.18 | $797.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 07/30/2013 | 07/01/2013 | $196,564.76 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 07/30/2013 | 08/01/2013 | $196,283.72 | PAYMENT | | AP | 00603 | $1,079.58 | $281.04 | $798.54 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 06/28/2013 | 06/01/2013 | $196,845.08 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 06/28/2013 | 07/01/2013 | $196,565.18 | PAYMENT | | AP | 00603 | $1,079.58 | $279.90 | $799.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 05/29/2013 | 05/01/2013 | $197,124.26 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 05/29/2013 | 06/01/2013 | $196,845.50 | PAYMENT | | AP | 00603 | $1,079.58 | $278.76 | $800.82 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 04/26/2013 | 04/01/2013 | $197,402.31 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 04/26/2013 | 05/01/2013 | $197,124.68 | PAYMENT | | AP | 00603 | $1,079.58 | $277.63 | $801.95 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 03/26/2013 | 03/01/2013 | $197,679.24 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 03/26/2013 | 04/01/2013 | $197,402.73 | PAYMENT | | AP | 00603 | $1,079.58 | $276.51 | $803.07 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 03/12/2013 | 03/01/2013 | $197,679.66 | Curtailment | | CWA | 00325 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 03/12/2013 | 03/01/2013 | $197,680.08 | PAYMENT | | AP | 00325 | $1,079.58 | $275.39 | $804.19 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 02/04/2013 | 02/01/2013 | $197,955.47 | Curtailment | | CWA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 02/04/2013 | 02/01/2013 | $197,955.89 | PAYMENT | | AP | 00603 | $1,079.58 | $274.27 | $805.31 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 12/26/2012 | 12/01/2012 | $198,503.32 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 12/26/2012 | 01/01/2013 | $198,230.16 | PAYMENT | | AP | 00603 | $1,079.58 | $273.16 | $806.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 11/26/2012 | 11/01/2012 | $198,775.79 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 11/26/2012 | 12/01/2012 | $198,503.74 | PAYMENT | | AP | 00603 | $1,079.58 | $272.05 | $807.53 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 10/23/2012 | 10/01/2012 | $199,047.16 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 10/23/2012 | 11/01/2012 | $198,776.21 | PAYMENT | | AP | 00603 | $1,079.58 | $270.95 | $808.63 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 09/24/2012 | 09/01/2012 | $199,317.43 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 09/24/2012 | 10/01/2012 | $199,047.58 | PAYMENT | | AP | 00603 | $1,079.58 | $269.85 | $809.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 08/23/2012 | 08/01/2012 | $199,586.61 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 08/23/2012 | 09/01/2012 | $199,317.85 | PAYMENT | | AP | 00603 | $1,079.58 | $268.76 | $810.82 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 07/24/2012 | 07/01/2012 | $199,854.70 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 07/24/2012 | 08/01/2012 | $199,587.03 | PAYMENT | | AP | 00603 | $1,079.58 | $267.67 | $811.91 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 06/22/2012 | 06/01/2012 | $200,121.71 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 06/22/2012 | 07/01/2012 | $199,855.12 | PAYMENT | | AP | 00603 | $1,079.58 | $266.59 | $812.99 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 05/22/2012 | 05/01/2012 | $200,387.64 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 05/22/2012 | 06/01/2012 | $200,122.13 | PAYMENT | | AP | 00603 | $1,079.58 | $265.51 | $814.07 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

# Loan History

Date Data as-of:  March 5, 2014

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 04/24/2012 | 04/01/2012 | $200,652.49 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 04/24/2012 | 05/01/2012 | $200,388.06 | PAYMENT | | AP | 00603 | $1,079.58 | $264.43 | $815.15 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 03/19/2012 | 03/01/2012 | $200,916.27 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 03/19/2012 | 04/01/2012 | $200,652.91 | PAYMENT | | AP | 00603 | $1,079.58 | $263.36 | $816.22 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 02/24/2012 | 02/01/2012 | $201,178.98 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 02/24/2012 | 03/01/2012 | $200,916.69 | PAYMENT | | AP | 00603 | $1,079.58 | $262.29 | $817.29 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 01/27/2012 | 01/01/2012 | $201,440.63 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 01/27/2012 | 02/01/2012 | $201,179.40 | PAYMENT | | AP | 00603 | $1,079.58 | $261.23 | $818.35 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 12/27/2011 | 12/01/2011 | $201,701.22 | Curtailment | | CTA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 12/27/2011 | 01/01/2012 | $201,441.05 | PAYMENT | | AP | 00603 | $1,079.58 | $260.17 | $819.41 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 11/25/2011 | 11/01/2011 | $201,960.75 | Curtailment | | CWA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 11/25/2011 | 12/01/2011 | $201,701.64 | PAYMENT | | AP | 00603 | $1,079.58 | $259.11 | $820.47 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 10/21/2011 | 10/01/2011 | $202,219.23 | Curtailment | | CWA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 10/21/2011 | 11/01/2011 | $201,961.17 | PAYMENT | | AP | 00603 | $1,079.58 | $258.06 | $821.52 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 09/29/2011 | 09/01/2011 | $202,476.67 | Curtailment | | CWA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 09/29/2011 | 10/01/2011 | $202,219.65 | PAYMENT | | AP | 00603 | $1,079.58 | $257.02 | $822.56 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 08/24/2011 | 08/01/2011 | $202,733.07 | Curtailment | | CWA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 08/24/2011 | 09/01/2011 | $202,477.09 | PAYMENT | | AP | 00603 | $1,079.58 | $255.98 | $823.60 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 07/26/2011 | 07/01/2011 | $202,988.43 | Curtailment | | CWA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 07/26/2011 | 08/01/2011 | $202,733.49 | PAYMENT | | AP | 00603 | $1,079.58 | $254.94 | $824.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 06/23/2011 | 06/01/2011 | $203,242.76 | Curtailment | | CWA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 06/23/2011 | 07/01/2011 | $202,988.85 | PAYMENT | | AP | 00603 | $1,079.58 | $253.91 | $825.67 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 05/23/2011 | 05/01/2011 | $203,496.06 | Curtailment | | CWA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 05/23/2011 | 06/01/2011 | $203,243.18 | PAYMENT | | AP | 00603 | $1,079.58 | $252.88 | $826.70 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 04/29/2011 | 04/01/2011 | $203,748.33 | Curtailment | | CWA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 04/29/2011 | 05/01/2011 | $203,496.48 | PAYMENT | | AP | 00603 | $1,079.58 | $251.85 | $827.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 03/29/2011 | 03/01/2011 | $204,000.00 | PAYMENT | | RT | 00000 | ($1,079.58) | ($250.83) | ($828.75) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 03/29/2011 | 04/01/2011 | $203,749.17 | Curtailment | | CTB | 00000 | ($0.42) | ($0.42) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 03/29/2011 | 04/01/2011 | $203,748.75 | Curtailment | | CTT | 00000 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 03/29/2011 | 04/01/2011 | $203,748.75 | Curtailment | | CWA | 00603 | $0.42 | $0.42 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 03/29/2011 | 04/01/2011 | $203,749.17 | PAYMENT | | AP | 00603 | $1,079.58 | $250.83 | $828.75 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 03/29/2011 | 04/01/2011 | $203,749.17 | PAYMENT | | PT | 00000 | $1,079.58 | $250.83 | $828.75 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

# Loan History

Comments:

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| | | 03/04/2014 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| | | 02/13/2014 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| | | 02/04/2014 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| | | 01/09/2014 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| | | 01/02/2014 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| | ALT | 12/20/2013 | NT | b1 ci to ask if we do recast/advsd acct is | GERALD ALENZUELA |
| | ALT | 12/20/2013 | NT | eligible for recast/b2 said will send | GERALD ALENZUELA |
| | ALT | 12/20/2013 | NT | 20000.00/asked for new p&i amt, advsd | GERALD ALENZUELA |
| | ALT | 12/20/2013 | NT | 968.86/GeraldA 2001312 | GERALD ALENZUELA |
| | | 12/12/2013 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| | | 12/03/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| | | 11/14/2013 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| | | 11/04/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| | | 10/15/2013 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| | | 10/02/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| | | 09/12/2013 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| | | 09/03/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| | | 08/08/2013 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| | | 08/02/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| | LMT | 07/31/2013 | NT | b2 ci: inq about loan mod - has a long term | LEA ANN PALACIOS |
| | LMT | 07/31/2013 | NT | hardship. used pre30. adv bec of the her acct | LEA ANN PALACIOS |
| | LMT | 07/31/2013 | NT | status; since acct is paid ahead we wont be able | LEA ANN PALACIOS |
| | LMT | 07/31/2013 | NT | to send mod package. adv if owing for the month or | LEA ANN PALACIOS |
| | LMT | 07/31/2013 | NT | being delinquent doesnt guarantee that acct will | LEA ANN PALACIOS |
| | LMT | 07/31/2013 | NT | be approved for loan mod. adv to call us by sept | LEA ANN PALACIOS |
| | LMT | 07/31/2013 | NT | 1; she asked to speak to a sup; adv she will also | LEA ANN PALACIOS |
| | LMT | 07/31/2013 | NT | be informed the same thing. she insisted to speak | LEA ANN PALACIOS |
| | LMT | 07/31/2013 | NT | to a sup. i tried to get a sup but sup line is | LEA ANN PALACIOS |
| | LMT | 07/31/2013 | NT | busy. she said she will call back; adv she can | LEA ANN PALACIOS |
| | LMT | 07/31/2013 | NT | call back and ask for a sup. then she hung up. | LEA ANN PALACIOS |
| | LMT | 07/31/2013 | NT | leap8412851 | LEA ANN PALACIOS |
| | PQSTP | 07/31/2013 | NT | PQSTP PQSTP/no/OK HARDSTOPS/Select | LEA ANN PALACIOS |
| | PQSTP | 07/31/2013 | NT | Response/ FHA/no/OK ASFAM/Select | LEA ANN PALACIOS |
| | PQSTP | 07/31/2013 | NT | Response TXEQD/no/OK LMSITE/no/OK Occupy/yes/OK Re | LEA ANN PALACIOS |
| | PQSTP | 07/31/2013 | NT | nt/Select Response/ HMPMODAlert/no/OK HMP | LEA ANN PALACIOS |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ███ | PQSTP | 07/31/2013 | NT | DNQ/Select Response/ Loan | LEA ANN PALACIOS |
| ███ | PQSTP | 07/31/2013 | NT | Mod/no/OK DueDate/09/01/13/Mod Denial Code = | LEA ANN PALACIOS |
| ███ | PQSTP | 07/31/2013 | NT | PDAHD Able to Pay/Select Response/ V2013.3 | LEA ANN PALACIOS |
| ███ | PRD | 07/30/2013 | NT | b2 ci reg a refi and a loan mod advi that she did | ALDIJANA MUSTEDANAGI |
| ███ | PRD | 07/30/2013 | NT | speak with someone regarding the two and someone | ALDIJANA MUSTEDANAGI |
| ███ | PRD | 07/30/2013 | NT | told her that we didnt have neither advi with a | ALDIJANA MUSTEDANAGI |
| ███ | PRD | 07/30/2013 | NT | refi we are not offering any type as of right now | ALDIJANA MUSTEDANAGI |
| ███ | PRD | 07/30/2013 | NT | and to look with a thirrd party but when it comes | ALDIJANA MUSTEDANAGI |
| ███ | PRD | 07/30/2013 | NT | to loan mod we do have them but wld need to see if | ALDIJANA MUSTEDANAGI |
| ███ | PRD | 07/30/2013 | NT | she does pre-qual advi will call back later, | ALDIJANA MUSTEDANAGI |
| ███ | PRD | 07/30/2013 | NT | provided 800-766-4622 to call. aldijanam8164 | ALDIJANA MUSTEDANAGI |
| ███ | | 07/10/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| ███ | | 07/02/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | | 06/13/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| ███ | | 06/04/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | | 05/09/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| ███ | | 05/02/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | PRD | 04/29/2013 | NT | b2 ci reg refi. adv we are not offering refi since | RACHEL VILLARUEL |
| ███ | PRD | 04/29/2013 | NT | we don't have origination dept. adv to contact | RACHEL VILLARUEL |
| ███ | PRD | 04/29/2013 | NT | local bank. info was provided. rachelv8413540 | RACHEL VILLARUEL |
| ███ | | 04/11/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| ███ | | 04/02/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | | 03/18/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| ███ | COL05 | 03/15/2013 | CIT | 004 DONE 03/15/13 BY TLR 22311 | CAIN CAVENDER |
| ███ | COL05 | 03/15/2013 | CIT | TSK TYP 941-TEAM LEAD ELEVA | CAIN CAVENDER |
| ███ | COL05 | 03/15/2013 | CIT | 004 clsng cit 941: ttb2,mm,qa, adv rtrn call per | CAIN CAVENDER |
| ███ | COL05 | 03/15/2013 | CIT | b2 req to spk with suprvr, b2 adv upst rec | CAIN CAVENDER |
| ███ | COL05 | 03/15/2013 | CIT | call as pmt always md, aplgz to b2, adv int of | CAIN CAVENDER |
| ███ | COL05 | 03/15/2013 | CIT | call nt to upst, conf b2 will do aprl pmt on | CAIN CAVENDER |
| ███ | COL05 | 03/15/2013 | CIT | 1st of mnth in aprl. | CAIN CAVENDER |
| ███ | | 03/13/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | | 03/11/2013 | DM | PROMISE BROKEN 03/11/13 PROMISE DT 03/09/13 | SYSTEM ID |
| ███ | | 03/05/2013 | DM | EARLY IND: SCORE 068 MODEL EI16C | SYSTEM ID |
| ███ | | 03/05/2013 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ | | 03/05/2013 | DMD | 03/05/13 10:38:50 AUTOVOICE | DAVOX INCOMING FILE |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| | | 03/05/2013 | DMD | 03/05/13 20:28:20 RINGING | DAVOX INCOMING FILE |
| | COL05 | 03/05/2013 | CIT | 004 new cit 941: opn cit for cb per b2 req for cb | CAIN CAVENDER |
| | COL05 | 03/05/2013 | CIT | frm suprvr. | CAIN CAVENDER |
| | COL05 | 03/05/2013 | CIT | 003 DONE 03/05/13 BY TLR 22311 | CAIN CAVENDER |
| | COL05 | 03/05/2013 | CIT | TSK TYP 940-TEAM LEAD ELEVA | CAIN CAVENDER |
| | COL05 | 03/05/2013 | CIT | 003 clsng cit 940, opn cit 941 for cb. | CAIN CAVENDER |
| | COL05 | 03/05/2013 | CIT | 003 CIT 940- Caller's name :LINDA C EWING | APRIL TARWATER |
| | COL05 | 03/05/2013 | CIT | Caller's phone number :9412767037 | APRIL TARWATER |
| | COL05 | 03/05/2013 | CIT | Best time to return the call : 3/6/13 b2 h/u | APRIL TARWATER |
| | COL05 | 03/05/2013 | CIT | b/f call back time could be req | APRIL TARWATER |
| | COL05 | 03/05/2013 | CIT | Time of the day the call was taken : 7:43pm | APRIL TARWATER |
| | COL05 | 03/05/2013 | CIT | Description of the elevated issue: b2 upset by | APRIL TARWATER |
| | COL05 | 03/05/2013 | CIT | continued collections calls and time of calls | APRIL TARWATER |
| | COL05 | 03/05/2013 | CIT | b2 demanded sup c/b nxt day 3/6/13 and h/u | APRIL TARWATER |
| | | 03/05/2013 | DM | IBC TT B2 TAD B2 RETURNING CALL ADV BANK BILL PAY | APRIL TARWATER |
| | | 03/05/2013 | DM | ON 3/1/13 IAO 1079.58 B2 UPSET BY CONTINUED CALLS | APRIL TARWATER |
| | | 03/05/2013 | DM | ADV RFD DUE TO MED ISSUES ON 2/29/13, AND DUE TO | APRIL TARWATER |
| | | 03/05/2013 | DM | EXTENDED RECIEVING TIME FRAME DUE TO REBRANDING B2 | APRIL TARWATER |
| | | 03/05/2013 | DM | DEMANDED SUP C/B NXT DAY 3/6/13 AND H/U B/F COULD | APRIL TARWATER |
| | | 03/05/2013 | DM | DE-ESCALATE | APRIL TARWATER |
| | | 03/05/2013 | DM | DFLT REASON 1 CHANGED TO: ILLNESS OF MORTGAGOR | APRIL TARWATER |
| | | 03/05/2013 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO BRCP | APRIL TARWATER |
| | | 03/05/2013 | DM | OR ADV COULD XFR TO ESCALATION LINE ON CALL | APRIL TARWATER |
| | | 03/05/2013 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI | APRIL TARWATER |
| | | 03/05/2013 | DM | GAIN THE CUSTOMERS COMMITMENT TO RESOLVE THE | APRIL TARWATER |
| | | 03/05/2013 | DM | DELINQUENCY THROUGH A PROMISE TO PAY OR REPAYMENT | APRIL TARWATER |
| | | 03/05/2013 | DM | PLAN. OUTBOUND CALL | APRIL TARWATER |
| | | 03/05/2013 | DM | ACTION/RESULT CD CHANGED FROM BRSS TO OAAI | APRIL TARWATER |
| | RFDNT | 03/05/2013 | NT | rfd due to med issues on 2/29/13, and due to | APRIL TARWATER |
| | RFDNT | 03/05/2013 | NT | extended recieving time frame due to rebranding | APRIL TARWATER |
| | | 02/14/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| | | 02/05/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| | | 01/10/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| | | 01/10/2013 | CBR | CHANGE IN SECNDRY BORROWERS ADDR | SYSTEM ID |
| | | 01/10/2013 | CBR | CHANGE IN PRIMARY BORROWERS ADDR | SYSTEM ID |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ■ | OCC | 01/09/2013 | NT | Updated occupancy due to address change | DAWNA STEINFELDT |
| ■ | WEB | 01/08/2013 | NT | Address change via Web. | API WEB |
| ■ | | 01/02/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 12/14/2012 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| ■ | | 12/04/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 11/09/2012 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| ■ | | 11/02/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 10/02/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | OPT | 09/05/2012 | NT | 3p melanie j/ins dept id # 3551 ci xferd b2, tt b2 | FRACHEZCA MACEDO |
| ■ | OPT | 09/05/2012 | NT | sd that she wants to have mortgage life ins; adv | FRACHEZCA MACEDO |
| ■ | OPT | 09/05/2012 | NT | to call the vendor Assurant gave the phone # | FRACHEZCA MACEDO |
| ■ | OPT | 09/05/2012 | NT | 1-866-399-6020.  franchezca m. 8412680 | FRACHEZCA MACEDO |
| ■ | HAZ | 09/05/2012 | NT | b2 ci inq to asked if we ofer any life or | DAVID SAMANO |
| ■ | HAZ | 09/05/2012 | NT | accidental ins advise we dont ofer type of ins any | DAVID SAMANO |
| ■ | HAZ | 09/05/2012 | NT | more will need to obtain a outsourse ins | DAVID SAMANO |
| ■ | HAZ | 09/05/2012 | NT | davids/8406227 | DAVID SAMANO |
| ■ | | 09/04/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 08/02/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | EOY50 | 07/17/2012 | CIT | 002 DONE 07/17/12 BY TLR 23218 | RHIANNON VICE |
| ■ | EOY50 | 07/17/2012 | CIT | TSK TYP 121-UPDATE CURRENT | RHIANNON VICE |
| ■ | EOY50 | 07/17/2012 | CIT | 002 open/close cit 121. recvd req. to update occ | RHIANNON VICE |
| ■ | EOY50 | 07/17/2012 | CIT | stat w/ utility bill as proof. updated occ | RHIANNON VICE |
| ■ | EOY50 | 07/17/2012 | CIT | stat to a 1. docs sent to be imgd as CORR. | RHIANNON VICE |
| ■ | EOY50 | 07/17/2012 | CIT | rhiannonv4150 | RHIANNON VICE |
| ■ | | 07/03/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | FSV | 06/05/2012 | NT | Closing cit 815 b2 sd prop is a 2nd home, sd | RAVI BABU THOTA |
| ■ | FSV | 06/05/2012 | NT | prop  vacant, sd goes 3-4 times a yr, no | RAVI BABU THOTA |
| ■ | FSV | 06/05/2012 | NT | damage, sd under prop owner association sd | RAVI BABU THOTA |
| ■ | FSV | 06/05/2012 | NT | utilities on,next due on 07/01/2012, Shutdown | RAVI BABU THOTA |
| ■ | FSV | 06/05/2012 | NT | PP, Inspections going on, Ravi 14855. | RAVI BABU THOTA |
| ■ | COL40 | 06/05/2012 | CIT | 001 DONE 06/05/12 BY TLR 14855 | RAVI BABU THOTA |
| ■ | COL40 | 06/05/2012 | CIT | TSK TYP 815-PROP PRES RESEA | RAVI BABU THOTA |
| ■ | COL40 | 06/05/2012 | CIT | 001 Closing cit 815 b2 sd prop is a 2nd home, sd | RAVI BABU THOTA |
| ■ | COL40 | 06/05/2012 | CIT | prop  vacant, sd goes 3-4 times a yr, no | RAVI BABU THOTA |
| ■ | COL40 | 06/05/2012 | CIT | damage, sd under prop owner association sd | RAVI BABU THOTA |

# Loan History

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▬ | COL40 | 06/05/2012 | CIT | utilities on,next due on 07/01/2012, Shutdown | RAVI BABU THOTA |
| ▬ | COL40 | 06/05/2012 | CIT | PP, Inspections going on, Ravi 14855. | RAVI BABU THOTA |
| ▬ | | 06/04/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▬ | COL | 06/01/2012 | NT | b2 ci, sd been trying to move in the prop since | RICHARD FRANCISCO |
| ▬ | COL | 06/01/2012 | NT | 2008, sd not abel to sell prop in fl as it is | RICHARD FRANCISCO |
| ▬ | COL | 06/01/2012 | NT | upside down, sd was contacted previously & and was | RICHARD FRANCISCO |
| ▬ | COL | 06/01/2012 | NT | adv qualified for prin reduction, sd b1 unable to | RICHARD FRANCISCO |
| ▬ | COL | 06/01/2012 | NT | do previous work, sd b2 work, sd wants to keep the | RICHARD FRANCISCO |
| ▬ | COL | 06/01/2012 | NT | prop, sd prop vacant, sd goes 3-4 times a yr, no | RICHARD FRANCISCO |
| ▬ | COL | 06/01/2012 | NT | damage, sd under prop owner association, pre-30 | RICHARD FRANCISCO |
| ▬ | COL | 06/01/2012 | NT | -prop is not owner occupied -does not qualify for | RICHARD FRANCISCO |
| ▬ | COL | 06/01/2012 | NT | hamp, sd property is underwater -does not qualify | RICHARD FRANCISCO |
| ▬ | COL | 06/01/2012 | NT | for refi, adv mm & qad, adv pd ahead, adv hhf, not | RICHARD FRANCISCO |
| ▬ | COL | 06/01/2012 | NT | able to provide fins -adv to cb, adv bus hours, | RICHARD FRANCISCO |
| ▬ | COL | 06/01/2012 | NT | -richardf 8412351 | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | B2 CI, SD BEEN TRYING TO MOVE IN THE PROP SINCE | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | 2008, SD NOT ABEL TO SELL PROP IN FL AS IT IS | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | UPSIDE DOWN, SD WAS CONTACTED PREVIOUSLY & AND WAS | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | ADV QUALIFIED FOR PRIN REDUCTION, SD B1 UNABLE TO | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | DO PREVIOUS WORK, SD B2 WORK, SD WANTS TO KEEP THE | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | PROP, SD | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | DFLT REASON 1 CHANGED TO: EXCESSIVE OBLIGATIONS | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO BRSS | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | PROP VACANT, SD GOES 3-4 TIMES A YR, NO DAMAGE, SD | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | UNDER PROP OWNER ASSOCIATION, PRE-30 -PROP IS NOT | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | OWNER OCCUPIED -DOES NOT QUALIFY FORHAMP, SD | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | PROPERTY IS UNDERWATER -DOES NOT QUALIFY FOR REFI, | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | ADV MM & QAD, ADV PD AHEAD, ADV HHF, NOT ABLE TO | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | PROVIDE FINS | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | -ADV TO CB, ADV BUS HOURS, -RICHARDF 8412351 | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | OCCUPANCY_OBTAINED | RICHARD FRANCISCO |
| ▬ | | 06/01/2012 | DM | ACTION/RESULT CD CHANGED FROM     TO OAAI | RICHARD FRANCISCO |
| ▬ | HMPVB | 06/01/2012 | NT | prop is not owner occupied -does not qualify for | RICHARD FRANCISCO |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▇ | HMPVB | 06/01/2012 | NT | hamp, sd property is underwater -does not qualify | RICHARD FRANCISCO |
| ▇ | HMPVB | 06/01/2012 | NT | for refi | RICHARD FRANCISCO |
| ▇ | COL64 | 06/01/2012 | CIT | 001 new cit 815 b2 sd prop is a 2nd home, sd prop | RICHARD FRANCISCO |
| ▇ | COL64 | 06/01/2012 | CIT | vacant, sd goes 3-4 times a yr, no damage, sd | RICHARD FRANCISCO |
| ▇ | COL64 | 06/01/2012 | CIT | under prop owner association sd utilities on | RICHARD FRANCISCO |
| ▇ | HHFSL | 06/01/2012 | NT | Solicited HHF program | RICHARD FRANCISCO |
| ▇ | | 05/02/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▇ | | 04/03/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▇ | | 03/02/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▇ | | 02/02/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▇ | | 01/03/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▇ | | 12/02/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▇ | | 11/02/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▇ | | 10/04/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▇ | | 09/02/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▇ | | 08/02/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▇ | | 07/04/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▇ | | 06/02/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▇ | | 05/03/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▇ | | 04/15/2011 | CBR | REFINANCED LOAN: CLOSING DATE =  03/03/11 | SYSTEM ID |
| ▇ | | 04/04/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▇ | | 03/10/2011 | D19 | WELCOME LETTER ELIGIBLE | SYSTEM ID |
| ▇ | | 03/09/2011 | CLN | 0000O/B 000204000.00 P/B 000204000.00 03/03/11 | LOI |

**<u>Exhibit H</u>**
**Diaz Claim**

ny-1145045

Claim #4702    Date Filed: 11/14/2012

UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK    PROOF OF CLAIM

| Name of Debtor: HOMECOMINGS FINANCIAL LLC | Case Number: 12-12042 (MG) |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
TOMAS DIAZ

☐ Check this box if this claim amends a previously filed claim.

Name and address where notices should be sent:
TOMAS DIAZ
5200 SW 122 AVE
MIAMI FLA 33175

**Court Claim Number:**
(If known)

Filed on:

Telephone number: (305) 244-5159    email: MASTERPICASSO@YAHOO.COM

Name and address where payment should be sent (if different from above):
TOMAS DIAZ
5200 SW 122 AVE
MIAMI FL 33175

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Telephone number: (305) 244-5159    email: MASTERPICASSO@YAHOO.COM

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

1. Amount of Claim as of Date Case Filed: $ 400,000.00
If all or part of the claim is secured, complete item 4.
If all or part of the claim is entitled to priority, complete item 5.
☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: MORTGAGE / NOTE DOWN PAYMENT
(See instruction #2)

3. Last four digits of any number by which creditor identifies debtor: ▮▮▮▮

3a. Debtor may have scheduled account as:
(See instruction #3a)

3b. Uniform Claim Identifier (optional):
(See instruction #3b)

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☑ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:
Value of Property: $ 1600,000.00    Annual Interest Rate 7.498 %  ☐ Fixed ☑ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
if any: $ _____    Basis for perfection: _____

Amount of Secured Claim: $ 400,000.00    Amount Unsecured: $ _____

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

6. Claim Pursuant to 11 U.S.C. § 503(b)(9):
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.

0    (See instruction #6)

**Amount entitled to priority:**

$ _____

7. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. Documents: Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #7, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DO

If the documents are not available, please explain:

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

|||||||||||| 1212042121114000000000003

9. Signature: (See instruction #9) Check the appropriate box.
☑ I am the creditor.  ☐ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)
☐ I am the trustee, or the debtor, or their authorized agent.
(See Bankruptcy Rule 3004.)
☐ I am a guarantor, surety, indorser, or other codebtor.
(See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.
Print Name: TOMAS DIAZ
Title: _____
Company: _____
Address and telephone number (if different from notice address above):

(Signature)    10/23/12    (Date)

RECEIVED
NOV 14 2012
KURTZMAN CARSON CONSULTANTS

Telephone number: (305) 244-5159    Email: MASTERPICASSO@YAHOO.COM

COURT USE ONLY

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

## Marsh, Shirley

| | |
|---|---|
| **From:** | Marsh, Shirley |
| **Sent:** | Tuesday, November 06, 2012 11:25 AM |
| **To:** | ResCapInfo@kccllc.com |
| **Cc:** | Crespo, Melissa M.; Marinuzzi, Lorenzo |
| **Subject:** | ResCap Documents from L. Marinuzzi/M. Crespo |

### You have received 3 files.
Use the secure links below to download.

A hard copy will be sent to you via first class mail.
Please contact me if you have any questions.
Thank you and regards,
Shirley Marsh
212-336-4203
smarsh@mofo.com

### Download Files

Available until: **06 December 2012**

Download File: 0522_001.pdf
    3,505.14 KB

Download File: 0523_001.pdf
    5,551.72 KB

Download File: 0524_001.pdf
    1,581.75 KB

MORRISON | FOERSTER

LORENZO MARINUZZI
PARTNER

MORRISON & FOERSTER LLP
1290 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK 10104-0050
TELEPHONE:212.468.8045 FACSIMILE:212.468.7900
E-MAIL:LMARINUZZI@MOFO.COM  WWW.MOFO.COM

You have received attachment link(s) within this email sent via Accellion Secure File Transfer. To retrieve the attachment(s), please click on the link(s). To learn how your company can benefit from Accellion Secure File Transfer, please visit http://www.accellion.com

*Secured by Accellion*™

**Attention: Honorable Judge Martin Glenn,**
United States Bankruptcy in Courtroom 501,
Of the United States Bankruptcy Court for the Southern District of New York
One Bowling Green, New York NY 10004-1408

## CONFIDENTIAL OBJECTION

**Case Number**: 12-12042(MG)

I formally present to you my objection and claim for $400,000.00, money given as down
payment by myself, creditor and investor, Tomas Diaz. *(Exhibit t)*

Respectfully,

Rev. Tomas Diaz
5200 SW 122nd Ave
Miami, FL 33175

Note: The documents here presented as evidence are only summaries of the 800+ pages
of documents that proof all I've affirmed. If all documentation is needed I have it all
under my possession and can submit it electronically.

# EXHIBIT I

Tomas Diaz
5200 SW 122nd Ave
Miami, FL 33175
masterpicasso@yahoo.com

October 3, 2012

*Gary S. Lee*
*Lorenzo Marinzzi*
MORRISON & FORESTER LLP
1290 Avenue of the Americas
New York, New York 10104
*(sent via US Mail)*

Re: *Request for Proof of Claim form for Residential Capital, LLC / Case No.: 12-12020 (MG) BK court S.District of New York.*

My name is Tomas Diaz and I am requesting the proof of claim form for the above referenced specifically for Case No.: 12-12042(MG). My information regarding Homecomings Financial is as follows;

|  |  |
|---|---|
| Borrower: | Thomas Diaz ███████ |
| Loan Number: |  |
| Property Address: | 5200 SW 122nd Ave Miami, FL 33175 |

Thank you,

*[signature]*

_____

Tomas Diaz



## My Home

**miamidade.gov**



ACTIVE TOOL: SELECT

**Show Me:**

Property Information

**Search By:**

Select Item

Text only

Property Appraiser Tax Estimator

### Summary Details:

| | |
|---|---|
| Folio No.: | 30-4924-001-2322 |
| Property: | 5200 SW 122 AVE |
| Mailing Address: | TOMAS DIAZ |
| | 5200 SW 122 AVE MIAMI FL 33175-5529 |

### Property Information:

| | |
|---|---|
| Primary Zone: | 9000 AGRICULTURE |
| CLUC: | 0001 RESIDENTIAL- SINGLE FAMILY |
| Beds/Baths: | 5/3 |
| Floors: | 1 |
| Living Units: | 1 |
| Adj Sq Footage: | 5,735 |
| Lot Size: | 2 ACRES |
| Year Built: | 1970 |
| Legal Description: | 24 54 39 2.33 AC BIRD ROAD FARMSITES PB 46-3 S1/2 OF TR 226 LOT SIZE IRREGULAR OR 19560-3055 032001 1 COC 23302-0698 04 2005 1 |

### Sale Information:

| | |
|---|---|
| Sale O/R: | 23302-0698 |
| Sale Date: | 4/2005 |
| Sale Amount: | $1,400,000 |

### Assessment Information:

| Year: | 2006 | 2005 |
|---|---|---|
| Land Value: | $733,950 | $559,200 |
| Building Value: | $385,109 | $316,979 |
| Market Value: | $1,119,059 | $876,179 |
| Assessed Value: | $1,119,059 | $535,974 |
| Homestead Exemption: | $0 | $25,000 |
| Total Exemptions: | $0 | $25,000 |
| Taxable Value: | $1,119,059 | $510,974 |



SW 61ST ST

SW 122ND AVE

Digital Orthophotography - 2006

0 ———— 134 ft

We appreciate your feedback, please take a minute to complete our survey.

My Home | Property Information | Property Taxes
| My Neighborhood | Property Appraiser

Home | Using Our Site | About | Phone Directory | Privacy | Disclaimer

**If you experience technical difficulties with the Property Information application,
please click here to let us know.**

E-mail your comments, questions and suggestions to Webmaster

Web Site
© 2002 Miami-Dade County.
All rights reserved.

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Loan Number: ▉▉▉▉▉▉          Date: APRIL 27, 2006

Creditor: PLATINUM CAPITAL GROUP

Address: 17101 ARMSTRONG AVENUE SUITE 200, IRVINE, CALIFORNIA 92614

Borrower(s): TOMAS DIAZ

Address: 5200 SOUTHWEST 122ND AVENUE, MIAMI, FLORIDA 33175

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price<br>The total cost of your purchase on credit including your down-payment of<br>$ |
|---|---|---|---|---|
| 7.498 % | $1,777,571.91 | $981,107.00 | $2,758,678.91 | $ |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due<br>Monthly Beginning | Number of Payments | Amount of Payment ** | When Payments Are Due<br>Monthly Beginning | Number of Payments | Amount of Payment ** | When Payments Are Due<br>Monthly Beginning |
|---|---|---|---|---|---|---|---|---|
| 1 | 3,451.20 | 07/01/06 | | | | | | |
| 11 | 3,451.20 | 08/01/06 | | | | | | |
| 12 | 3,710.04 | 07/01/07 | | | | | | |
| 12 | 3,988.29 | 07/01/08 | | | | | | |
| 12 | 4,287.41 | 07/01/09 | | | | | | |
| 11 | 4,608.97 | 07/01/10 | | | | | | |
| 300 | 8,381.18 | 06/01/11 | | | | | | |
| 1 | 8,382.96 | 06/01/36 | | | | | | |

_____ DEMAND FEATURE: This obligation has a demand feature.

__X__ VARIABLE RATE FEATURE: Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:
    _____ Credit life insurance and credit disability __X__ Property Insurance __X__ Flood Insurance _____ Private Mortgage Insurance
    You may obtain property insurance from any insurer that is acceptable to the Lender.

SECURITY: You are giving a security interest in: 5200 SOUTHWEST 122ND AVENUE, MIAMI, FLORIDA 33175
    _____ The goods or property being purchased __X__ Real property you already own.

FILING FEES: $225.00

LATE CHARGE: If payment is more than _____ 15 _____ days late, you will be charged _____ 5.000 _____ % of the payment.

PREPAYMENT: If you pay off early, you
__X__ may _____ will not have to pay a penalty.
_____ may __X__ will not be entitled to a refund of part of the finance charge.

ASSUMPTION: Someone buying your property
_____ may _____ may, subject to conditions __X__ may not assume the remainder of your loan on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

**Homecomings Financial**

*A GMAC Company*

Homecomings Financial
P.O. Box 890036
Dallas TX 75389

www.homecomings.com

June 13, 2006

#BWNFNYZ
#ZSSPRWTQSR1#
+ 0006519 000002204 09ATRL 0932826 P18
Thomas Diaz
5200 SW 122nd Ave
Miami FL 33175-5529

Re: **Homecomings Financial Loan Number** ███████████
        Property Address  5200 Southwest 122nd Avenu
        Miami, FL 33175

Dear Thomas Diaz:

Welcome to Homecomings Financial℠, your new mortgage servicer!  Effective 07/01/06, your mortgage transfers to Homecomings Financial from Platinum Capital Group.

**Your new Homecomings Financial loan number is 0441375243.**  It is important that you write your loan number on all payments and correspondence, so that we can identify your account and post your payments quickly and accurately.  Please know that the transfer of your mortgage does not in any way affect the terms and conditions of your loan.

**Payments -** Payments will be accepted by your current mortgage holder until 07/01/06.  Please mail any payments due on or after  07/01/06 to:

Homecomings Financial
P.O. Box 650515
Dallas, TX  75265-0515

If you have already sent a payment for the current month, simply use one of the coupons attached for your next payment due.  By sending your check to us, you authorize Homecomings Financial to convert the check into an electronic funds transfer.  Your bank account may be debited the same day we receive your payment.  You will soon begin receiving monthly billing statements from us.  Please keep this letter and extra coupons in case you need to make a payment before you receive your first monthly billing statement.  After receiving your first statement, you can discard any remaining coupons attached and use the coupon and return envelope provided in the monthly statement.

We invite you to enroll in our automated payment program, in which your monthly payments are automatically withdrawn from your bank account on the day you specify.  Just visit us on the Internet at www.homecomings.com or call our Customer Service Department at the number below and sign up today!

**CONTACTING US—You can access your up-to-date loan information via the Internet.  Just go to www.homecomings.com and select the "View My Account Info" button.**  In addition, you are welcome to contact us at 1.800.206.2901.  Our automated phone system, which provides specific loan information and can answer many of your questions, is available 24 hours a day, 7 days a week, and our helpful Account Managers are available from 8:00 a.m. to 7:00 p.m., Monday through Thursday, and 8:00 a.m. to 5:00 p.m. on Fridays, Central time.  We also provide the special address below for your qualified, written requests.  Please be sure to note your loan number on your correspondence.

Correspondence Address:

Homecomings Financial
P.O. Box 890036
Dallas, TX  75389

Again, welcome to Homecomings Financial!  We look forward to having you as a customer and serving all of your financing needs.

Sincerely,

Homecomings Financial

SX0289-00A

Homecomings Financial
(NOT A PAYMENT ADDRESS)
P.O. Box 890036
Dallas TX 75389

# Homecomings Financial
*A GMAC Company*

www.homecomings.com

## CUSTOMER INFORMATION

#BWNFNYZ
#ZSSPRWTQSR1#

+ 0119477 000001853 09AHST  0932855  P8
Thomas Diaz
5200 SW 122nd Ave
Miami FL 33175-5529

| | |
|---|---|
| Loan Number: | 0441375243 |
| Borrower: | Thomas Diaz |
| Property Address: | 5200 Southwest 122nd Avenu<br>Miami FL 33175 |
| Home Phone #: | 786-326-7808 |
| Work Phone #1: | 305-244-5159 |
| Work Phone #2: | 000000000000 |

*Please use the form on the back of the coupon to update this information.*

## CURRENT ACCOUNT DETAILS

### Payment Options
| | |
|---|---|
| Minimum Payment Due: | 3,451.20 |
| Interest-Only Payment: | 6,567.01 |
| Amortizing Payment: | 7,265.71 |
| Full 15-Year Amortized Payment: | 9,547.00 |
| Principal | -3,115.81 |
| Interest | 6,567.01 |
| Non-escrowed Advance | 2,639.67 |

| | |
|---|---|
| **Minimum Amount Due on 09/01/06** | **6,090.87** |

## INFORMATION ABOUT YOUR ACCOUNT

The terms of your Adjustable Rate Mortgage indicate an upcoming interest rate change. Information about this change is as follows:

| | |
|---|---|
| New interest rate effective  10/01/06 | 8.000 |
| New index rate: | 4.563 |
| Margin: | 3.400 |
| Rounding factor: | 0.001 |

In accordance with your Deed of Trust/Mortgage, $2,639.67 has been advanced on your behalf to pay your taxes and/or insurance. This amount has been added to your payment and is reflected in the "Remit With Coupon" amount shown below. If you have any questions regarding this matter, please contact our Customer Service Department.

### CheckPoint Information

Please note that on 00/26/39 your mortgage payment will be drafted from your account. Please use the payment coupon below to remit additional funds or to make changes to your address or phone number. If at some point you wish to cancel this service, you must provide 30 day prior written notice, so that we can properly notify the bank and discontinue drafting.

Please note the following draft return policy: If your regularly scheduled draft is returned due to insufficient funds (NSF) in your bank account, a second draft will be attempted two business days later. If the second draft is returned NSF, a third attempt will be made ten days later. If the third attempt is returned, your Monthly Automated Payment Option will be terminated. If three drafts are returned NSF within one calendar year, the drafting will automatically terminate. Each NSF will result in a fee.

Your loan is currently going through the process of negative amortization. Negative amortization is when the outstanding obligation increases over time, rather than declines over time. Your interest rate adjusts more often than the payment amount due adjusts. When the monthly payments are insufficient to pay the interest accruing on the unpaid principal balance, the unpaid interest is added to the remaining principal due. This is the nature of your Pay Option ARM Mortgage.

## MORTGAGE ACCOUNT SUMMARY

| | |
|---|---|
| Payment Due Date: | 09/01/06 |
| Statement Date: | 08/09/06 |

### Account Information as of 08/09/06
| | |
|---|---|
| Current Principal Balance * | 1,000,687.78 |
| Current Escrow Balance | -2,639.67 |
| Year to Date Interest | 7,590.18 |
| Interest Rate: | 7.875% |

## PRIOR PERIOD ACTIVITY

### Activity from 07/11/06 to 08/09/06
| | | |
|---|---|---|
| 08/05/06 | 08/01/06 Payment: -2,888.98 principal,<br>6,340.18 interest | 3,451.20 |
| 08/09/06 | Flood Insurance paid to WNC Insurance Se | 2,639.67 |

Make same-day mortgage payments with your ATM/Debit card. Call **1.800.206.2901** or visit **www.homecomings.com.**

*Like Coming Home*

* The Current Principal Balance does not reflect the total amount required to pay your loan in full.
Please call 1.800.206.2901 to obtain the payoff amount for your loan.

Pay online: www.homecomings.com

ST G98 001

## LOST NOTE AFFIDAVIT

**AFFIDAVIT OF LOST NOTE**

### (Photocopy of Note Attached)

**Loan Number** ▮▮▮▮▮▮     *Tohar Diaz*
                           *5200 SW 122 Ave*
**STATE OF MINNESOTA**      *Miami FLA 33175*

**COUNTY OF HENNEPIN**

**On this 30 day of May 2007 before me appeared S. Seidel, Assistant Secretary
who being first duly sworn, does depose and say that**

**Residential Funding Company, LLC**

Was the holder of a certain NOTE dated April 27, 2006 in the amount of
One Million   Dollars and 0/100 ($1,000,000.00) made by THOMAS  DIAZ to Platinum
Capital Group. and does further depose and say that said NOTE, a copy of which is
attached as a true and correct photocopy of the front and back and any and all
endorsements, has either been lost, misplaced, or destroyed and can not be produced.

**IN THE EVENT THE ORIGINAL NOTE IS HEREAFTER LOCATED, RESIDENTIAL
FUNDING COMPANY, LLC SHALL DELIVER IT TO THE APPROPRIATE
CUSTODIAN**

Residential Funding Company, LLC

By: *S. Seidel*

**S. Seidel
Assistant Secretary**

On __5-30-07__ before me,           **B.Nolan** personally appeared
S. Seidel           ☒ personally known to me -  ☐ or proved to me on the basis of
satisfactory evidence to be the person whose name is subscribed to the within instrument and
acknowledged to me that they executed the same in their authorized capacity, and that by their
signatures on the instrument the person or the entity upon behalf of which the person acted,
executed the instrument.

Witness my hand and official seal.

*(notary seal: B. NOLAN NOTARY PUBLIC-MINNESOTA MY COMMISSION EXPIRES JAN 31 2011)*

*B. Nolan*

CFN 2007R0084035
OR Bk 25305 Ps 0654; (1ps)
RECORDED 01/25/2007 09:40:02
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

CORPORATION ASSIGNMENT of MORTGAGE

Return To:
RESIDENTIAL FUNDING COMPANY, LLC
One Meridian Crossings
Minneapolis, MN 55423

MIN: ▉▉▉▉▉    MERS Phone: 1-888-679-6377
RFC Loan Number: ▉▉▉▉
Seller Loan Number: ▉▉▉▉

FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc. ("MERS")
AS NOMINEE FOR PLATINUM CAPITAL GROUP

the undersigned hereby grants, assigns and transfers to

**Deutsche Bank Trust Company Americas as Trustee**

**3 Park Plaza, 16th Floor, Irvine, CA  92714-8505**

all beneficial interest under that certain Mortgage dated 04/27/2006
executed by THOMAS  DIAZ

TO/FOR:    THE  UNDERSIGNED

and recorded in Book _24526_  on Page _3829_  as Instrument No. _____  on _5/15/2006_  of Official
Records in the County Recorder's Office of    _MIAMI-DADE_    County,  Florida.

LEGAL:    AS  IN  MORTGAGE  REFERENCED  HEREIN

MORTGAGE AMOUNT:  $1,000,000.00
PROPERTY ADDRESS:    5200 SOUTHWEST 122ND AVENUE  MIAMI, FL 33175
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest,
and all rights accrued or to accrue under said Mortgage.

Mortgage Electronic Registration Systems, Inc. ("MERS")

STATE OF                                   Minnesota )
COUNTY OF                                   Hennepin )

BY: _Matt Favorite_

NAME: Matt Favorite

TITLE: Vice President

On 10/26/2006 before me, the undersigned, a Notary Public in and for said State personally appeared Matt Favorite, Vice
President of Mortgage Electronic Registration Systems, Inc. ("MERS") personally known to me to be the person whose
name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized
capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the
instrument. WITNESS my hand and official seal.

_Karen E. Steffensen_
Notary Public in and for said State

KAREN E. STEFFENSEN
MY COMMISSION EXPIRES 1-31-2010

Prepared 10/26/2006 by Matt Favorite, Residential
Funding Company, LLC, One Meridian Crossings,
Suite 100, Minneapolis, MN 55423, (952) 979-4000.

TRI-COUNTY
WILL CALL
WATSON TITLE & INSURANCE, INC.

WATSON TITLE INSURANCE, INC.
1800 N.W. 49th ST.
SUITE 120
F. LAUDERDALE, FL 33809

RECORD AND
RETURN TO

06- 07296

PAY TO THE ORDER OF
RESIDENTIAL FUNDING CORPORATION
WITHOUT RECOURSE
PLATINUM CAPITAL GROUP
A CALIFORNIA CORPORATION

BY _____
ASST. SECRETARY
Carleton Fynboe II

PAY TO THE ORDER OF
Deutsche Bank Trust Company Americas as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

By _____
Judy Faber, Vice President

**Homecomings Financial**
*A GMAC Company*
PO Box 205
Waterloo, IA 50704-0205


01/18/08


THOMAS DIAZ

5200 SW 122ND AVE

MIAMI FL 33175-5529


RE:   Account Number      ███████████
      Property Address   5200 SOUTHWEST 122ND AVENUE

                    MIAMI FL 33175

Dear THOMAS DIAZ


       **IMPORTANT NOTICE REGARDING INTEREST RATE CHANGE**

The interest rate on your loan is scheduled to adjust on 02/01/08
and will be effective with the 03/01/08 payment.

Projected principal balance after 02/01/08 payment $   1063309.41

| | | | |
|---|---|---|---|
| Previous index value | 4.66170% | New index value | 4.52170% |
| Current interest rate | 8.00000% | New interest rate | 7.87500% |
| Current P&I payment $ | 3451.20 | Margin | 3.40000% |

Rate Next Change Date                    03/01/08
Principal and Interest Next Change       07/01/08

Your new interest rate is calculated by adding the margin to the
new index value as defined in your loan documents. The result of
this addition is subject to rounding and rate cap limitations
according to the terms of your loan documents. If you would like
to make a payment based on a 15-year amortization, please call
800-206-2901.

|  | MINIMUM REQUIRED | INTEREST ONLY | FULLY AMORTIZING |
|---|---|---|---|
| New P&I pmt* $ | 3451.20 $ | 6977.96 $ | 7824.41 |
| Escrow** $ | 219.97 $ | 219.97 $ | 219.97 |
| Total $ | 3671.17 $ | 7197.93 $ | 8044.38 |

*INTEREST ONLY and FULLY AMORTIZING amounts subject to change if
any payment received after the date of this notice are other than
MINIMUM REQUIRED payment amount.

April 3, 2012

TO:              AURORA LOAN SERVICES, LLC.
ATTN:            CUSTOMER SERVICE
                 P.O. BOX 1706
                 SCOTTSBLUFF, NE 69363-1706

SUBJECT LOAN NO.:     ███████

FROM:            TOMAS DIAZ
                 5200 SW 122ND AVE
                 MIAMI, FL 33175

This is a "Qualified Written Request" under Section 6 of the Real Estate Settlement Procedures Act (RESPA).

I am writing to request:

(1) Original copies of all documents pertaining to the origination of my mortgage including my loan application, Right to Cancel, Deed of Trust, original note, adjustable rate note, addendum to the note for the interest only payment period, Truth in Lending statements, Good Faith Estimate (GFE), HUD 1, appraisal, and all required disclosures and rate sheets associated with this transaction for the above referenced loan. The original copies should be legible and all documents shall be copied in their entirety.

(2) A copy of the loan history including all payments made, all fees incurred, what has been paid out of the escrow account, and how all payments were applied. This information should cover the entire life of the loan.

(3) I have reasons to believe that the loan terms were misrepresented to me at the time of application and further obscured and/or modified prior to signing. I believe that our income was inflated on the application. I also have reason to believe that certain statements were not provided for my approval prior to closing, and that signatures may have been forged on various documents. It is also my belief that certain documents may have not presented at all. Additionally, I believe that a notary was not present to witness my signatures on several pertinent documents and that this transaction did not take place in a legitimate title/escrow/real-estate office with any title/escrow/real-estate professionals therefore leaving us ill advised at the time of closing.

I understand that under Section 6 of RESPA you are required to acknowledge our request within 20 business days and must try to resolve the issue within 60 business days. In closing, we want a payment we know we can live with one that will not get us in trouble again, and we want original copies of all our loan documents.

Sincerely,

_Tomas Diaz_ (signature)
Tomas Diaz

04/03/2012
Date

REPRESENTATION OF PRINTED DOCUMENT

 **AuroraBank**ₓₛ

June 15, 2012

████████████████

TOMAS DIAZ
137
3876 SW 112TH AVE
MIAMI FL 33165-4434

RE: Aurora Bank FSB
Loan # ████████
Nationstar Mortgage ██████
Loan # ████████

Dear Customer(s):

You are hereby notified that the servicing of your loan, that is, the right to collect payments from you, is being transferred from Aurora Bank FSB (Aurora Bank) to Nationstar Mortgage LLC effective July 1, 2012. The assignment, sale or transfer of the servicing of the loan does not affect any terms or conditions of the loan instruments, other than terms directly related to the servicing of your loan.

Questions relating to the transfer of servicing from Aurora Bank before July 1, 2012 should be directed to Aurora Bank Customer Service Department at 1-800-550-0508 between 8:00 AM and 11:00 PM, Eastern Time Monday through Thursday, 8:00 AM to 9:00 PM ET Friday, and 8:00 AM to 4:00 PM ET Saturday.

If you have questions relating to your loan after June 30, 2012, please contact Nationstar Mortgage LLC's Customer Service. The business address, toll-free telephone number and customer service hours for Nationstar Mortgage LLC are:

Nationstar Mortgage LLC
Customer Service
350 Highland Drive
Lewisville, Texas 75067
1-877-372-0512 Ext 95
8:00 AM to 8:00 PM CT, Monday through Thursday
8:00 AM to 5:00 PM CT, Friday

Effective July 1, 2012, please make your checks payable to Nationstar Mortgage LLC and mail to the address below. Aurora Bank will forward any payments or correspondence received after June 30, 2012 to Nationstar Mortgage LLC for processing. If your payments are currently paid through an automatic deduction from your checking or savings account, this service will continue uninterrupted.

Nationstar Mortgage LLC
Attn: Payment Processing
P. O. Box 650783
Dallas, Texas 75265-0783

If you are currently making your loan payment through government allotment or have established a third party relationship to automatically make payments on your behalf, please ensure that (1) you take the necessary steps to advise them of your new loan number and (2) that the payee's name is changed to Nationstar Mortgage LLC.

If you are currently a biweekly payment customer, this service will continue. An agent for Nationstar Mortgage LLC will contact you with regard to your mortgage payments.

If you have been paying premiums for optional life, disability or accidental death insurance, these policies will not transfer to Nationstar Mortgage LLC.

In January 2013, you will receive a year-end statement from Nationstar Mortgage LLC reflecting loan activity occurring between January 1, 2012 and December 31, 2012. This statement will be mailed no later than January 31, 2013.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. Section 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by Aurora Bank before its due date may not be treated by your new servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 business days of receipt of your request. A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number and your reason for the request.

Not later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute. During this 60-day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

Section 6 of RESPA also provides the damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that section. You should seek legal advice if you believe your rights have been violated.

**Home Affordable Modification Program:**
If you previously provided information or documentation to Aurora Bank in support of your request for a possible loan modification under the federal government's Home Affordable Modification Program ("HAMP") or you have been established on a HAMP Trial Period Plan, Aurora Bank will be transferring all your documentation to Nationstar Mortgage LLC.

Until the transfer date, you should continue to make your monthly Trial Period Plan payments to Aurora Bank. After the transfer date, you should make all Trial Period Plan payments to Nationstar Mortgage LLC, until such time that you are provided additional direction.

Prior to the transfer date, approval decisions regarding your request for a possible HAMP loan modification will be made by Aurora Bank. After the transfer date, approval decisions regarding your HAMP loan modification request will be made by Nationstar Mortgage LLC.

**Other Loss Mitigation Options:**
If you have previously provided information and documentation in support of your request for approval of other possible loss mitigation options (including a loan modification, repayment agreement, forbearance agreement, short sale, refinance or deed-in-lieu of foreclosure) Aurora Bank will be transferring all of your documentation to Nationstar Mortgage LLC.

Prior to the transfer date, approval decisions regarding your request for other possible loss mitigation options will be made by Aurora Bank. After the transfer date, approval decisions regarding your loss mitigation option request will be made by Nationstar Mortgage LLC.

Please retain this information with your loan documentation for future reference. Aurora Bank appreciates the opportunity to provide service on your loan and for allowing us to be of service to you.

Sincerely,

Cassie Leet
Customer Service Manager

## QUALIFIED WRITTEN REQUEST UNDER RESPA
## AND FDCPA DEBT VALIDATION DEMAND

July 30, 2012

TO:      Nationstar Mortgage, LLC.
         350 Highland Drive
         Lewisville, Texas 75067

FROM:    Tomas Diaz
         5200 SW 122nd Ave
         Miami, FL 33175

SUBJECT: Loan No.: ███████████

ATTN:    Attention Research Department

Dear Sir or Madam:

This is a "Qualified Written Request" under Section 6 of the Real Estate Settlement Procedures Act (RESPA), and a demand for validation of the alleged debt as authorized by the Fair Debt Collections Practices Act.

We are writing to request:

(1) Copies of the originals of all documents pertaining to the origination of my mortgage including the loan application, Right to Cancel, Deed of Trust, note, adjustable rate note, addendum to the note for the interest only payment period, Truth in Lending statements, Good Faith Estimate (GFE), HUD 1, appraisal, and all required disclosures and rate sheets associated with this transaction for the above referenced loan. The copies should be legible and all documents shall be copied in their entirety.

(2) A copy of the loan history including all payments made, all fees incurred, what has been paid out of the escrow account, and how all payments were applied. This information should cover the entire life of the loan.

(3) All documents listed in the attached Schedule A.

We have reasons to believe that the loan terms were misrepresented to us at the time of application and further obscured and/or modified prior to signing. I believe that our income was inflated on the application. I also have reason to believe that certain statements were not provided for my approval prior to closing, and that signatures may have been forged on various documents. It is also my /ours belief that certain documents may have not presented at all. Additionally, I believe that a notary was not present to witness my signatures on several pertinent documents and that this transaction did not take place in a legitimate title/escrow/real-estate office with any title/escrow/real-estate professionals therefore leaving us ill advised at the time of closing.

Most recently you have sent a demand for payment. This is an enormous amount which just cannot be paid at this time due to very hardship. The situation is urgent.

We do not want to incur further inflated fees or suffer foreclosure.

We are very proactive in keeping our home. We do not want to lose it nor do we have to, since we are able to make a reasonable payment.

We have been given the runaround by your voice recognition call routing system on numerous occasions.

We have talked to various agents with different versions of what the loan modification process really entails.

We have been re-routed to the wrong department or individual at dozens of times.

We have been disconnected from helpful individuals, when I unsuccessfully tried to call her back I am told it is because she has no extension.

We have been told that the negotiator handling my loan is unavailable to speak to anyone via telephone. All of these calls are documented in your records.
The customer service provided to us has been less than adequate.

We understand that under Section 6 of RESPA you are required to acknowledge our request within 20 business days and must try to resolve the issue within 60 business days.

## Schedule A

1. A complete listing of all of the persons and/or entities that have held an ownership interest in the Promissory Note since the date it was allegedly signed by me;

2. A complete listing of all of the persons and/or entities that have held an ownership interest in the Mortgage instrument since the date it was allegedly signed by me;

3. A copy of the Pooling and Service Agreement that this mortgage loan is subject to;

4. A detailed break-down of all payments made by all sources to the subject Pooling and Service Agreement;

5. A copy of all assignments, allonges and endorsements to the Promissory Note and to the Mortgage Instrument;

6. A direct copy of the Promissory Note made from the original Promissory Note;

7. A direct copy of the Mortgage Instrument made from the original Mortgage Instrument;

8. A complete payment history, including but not limited to the dates and amounts of all the payments we have made on the mortgage loan to date;

9. A complete payment break-down, showing exactly to whom my payments went and the dates paid;

10. A breakdown of the amount of claimed arrears or delinquencies, including an itemization of all fees charged to the account;

11. An explanation of how the amount due on the Monthly Billing Statement was calculated;

12. The payment dates, purpose of payment and recipient of any and all default and any and all foreclosure fees and costs that have been charged to our account;

13. The payment dates, purpose of payment and recipient of all escrow items charged to our account;

14. A breakdown of the current escrow charge showing how it is calculated and the reasons for any increase within the last 24 months; and

15. A copy of any annual escrow statements and notices of a shortage, deficiency or surplus, sent to us within the last three (5) years.



09/05/2012                                                                    Sent Via Certified Mail
                                                                   7196 9006 9296 2089 9042

TOMAS DIAZ
5200 SW 122ND AVE
MIAMI, FL 33175-5529

Loan Number:          ████████
Property Address:     5200 SW 122ND AVE
                      MIAMI, FL 33175

Dear TOMAS DIAZ :

You are hereby provided formal notice by Nationstar Mortgage, LLC, the Servicer of the above-referenced loan, on behalf of RALI 2006-QO6, the Creditor to whom the debt is owed, that you are in default under the terms and conditions of the Note and Security Instrument (i.e. Deed of Trust, Mortgage, etc.), for failure to pay the required installments when due.

This letter serves as further notice that Nationstar Mortgage, LLC intends to enforce the provisions of the Note and Security Instrument. You must pay the full amount of the default on this loan by the thirtieth (30th) day from the date of this letter which is 10/05/2012 (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter). If you do not pay the full amount of the default, we shall accelerate the entire sum of both principal and interest due and payable, and invoke any remedies provided for in the Note and Security Instrument, including but not limited to the foreclosure sale of the property. If you received a bankruptcy discharge which included this debt, this notice is not intended and does not constitute an attempt to collect a debt against you personally; notice provisions may be contained within your mortgage/deed of trust which notice may be required prior to foreclosure.

You are hereby informed that you have the right to "cure" or reinstate the loan after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense you may have to acceleration and sale.

As of 09/05/2012 the amount of the debt that we are seeking to collect is $643,369.09, which includes the sum of payments that have come due on and after the date of default 01/01/2007, any late charges, periodic adjustments to the payment amount (if applicable) and expenses of collection. Because of interest, late charges, and other charges or credits that may vary from day to day, or be assessed during the processing of this letter, the amount due on the day that you pay may be greater. Please contact Nationstar Mortgage, LLC at (888) 480-2432 on the day that you intend to pay for the full amount owed on your account. This letter is in no way intended as a payoff statement for your mortgage, it merely states an amount necessary to cure the current delinquency.

Please note, however, that your right to cure this default as referenced herein does not suspend your payment obligations. Pursuant to the terms of the Note, your 10/01/2012 installment is still due on 10/01/2012 (or if said date(s) falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter). In addition, any subsequent advances made by the Servicer to protect their lien position must be added to the total amount necessary to cure the default. Please disregard this notice if a payment sufficient to cure the default has already been sent.

A "CURE" or "Reinstatement Right" similar to that described in the prior paragraph may be available in many states. If, at any time, you make a written request to us not to be contacted by phone at your place of



FL_NOI
Page 1 of 2                                                                7196 9006 9296 2089 9042

## Exhibit I
**Diaz Mortgage**

CFN 2006R0525334
OR Bk 24526 Pgs 3829 - 3850; (22pgs)
RECORDED 05/15/2006 15:25:53
MTG DOC TAX 3,500.00
INTANG TAX 2,000.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

This Instrument Prepared By:

J. James

After Recording Return To:
PLATINUM CAPITAL GROUP
17101 ARMSTRONG AVENUE SUITE, 200
IRVINE, CALIFORNIA 92614
Loan Number: [■■■■■■]

**RETURN TO:**
**MISSY DOMINGUEZ**
**LENDER RECORDING SERVICES**
**25111 COUNTRY CLUB BLVD #275**
**N. OLMSTED, OH 44070**



──────────────────────── [Space Above This Line For Recording Data] ────────

LRS-64407

## MORTGAGE

MIN: [■■■■■■■■■■]

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated APRIL 27, 2006 , together with all Riders to this document.
**(B)** **"Borrower"** is TOMAS DIAZ, A SINGLE MAN

5200 SW 122ND AVE.
Miami, Florida 33175

Borrower is the mortgagor under this Security Instrument.
**(C)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D)** **"Lender"** is PLATINUM CAPITAL GROUP

Lender is a CALIFORNIA CORPORATION                                    organized
and existing under the laws of CALIFORNIA .
Lender's address is 17101 ARMSTRONG AVENUE SUITE 200, IRVINE, CALIFORNIA
92614

**(E)** **"Note"** means the promissory note signed by Borrower and dated APRIL 27, 2006 .
The Note states that Borrower owes Lender ONE MILLION AND 00/100
Dollars (U.S. $ 1,000,000.00 ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
JUNE 1, 2036 .
**(F)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

TD

**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider     ☐ Condominium Rider          ☐ Second Home Rider

☐ Balloon Rider             ☐ Planned Unit Development Rider  ☒ Other(s) [specify]

☐ 1-4 Family Rider          ☐ Biweekly Payment Rider     PREPAYMENT RIDER TO
                                                         SECURITY INST

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

F130102.mzm.2.tem

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

<table>
<tr><td></td><td>COUNTY</td><td>of</td><td>MIAMI-DADE</td><td>:</td></tr>
<tr><td></td><td>[Type of Recording Jurisdiction]</td><td></td><td>[Name of Recording Jurisdiction]</td><td></td></tr>
</table>

SOUTH ONE-HALF OF TRACT 226, OF BIRD ROAD FARMSITES, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 46, AT PAGE 3, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.
A.P.N.: 30-4924-001-2322

which currently has the address of   5200 SOUTHWEST 122ND AVENUE
[Street]

MIAMI              , Florida      33175      ("Property Address"):
[City]                           [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

TD

R30103.mzm.3.tem

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder

of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01
Page 6 of 15

DocMagic *EZ*Forms  800-649-1362
www.docmagic.com

Fl30106.mzm.6.tem

If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument; including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

Fl30108.mzm.8.tem

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate

Fl30109 mzm.9.tem

as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other

means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.

Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance

or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
TOMAS DIAZ                      -Borrower
5200 SOUTHWEST 122ND AVENUE,
MIAMI, FLORIDA 33175

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

Signed, sealed and delivered in the presence of:

_____
Witness  Martha Mozo

_____
Witness

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

    The foregoing instrument was acknowledged before me this 27 day of April 2006
by TOMAS DIAZ

who is personally known to me or who has produced Florida Driver License
as identification.
                                                        (Type of Identification)

Martha Mozo
Commission # DD270849
Expires:  Dec. 1, 2007
Aaron Notary
1-800-350-5161



Signature

**Martha Mozo**
_____
Name of Notary



Title

(Seal)

TD

MIN: &#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;          Loan Number: &#9608;&#9608;&#9608;&#9608;&#9608;&#9608;

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this 27th day of APRIL, 2006          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Adjustable Rate Note (the "Note") to PLATINUM CAPITAL GROUP, A
CALIFORNIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

5200 SOUTHWEST 122ND AVENUE, MIAMI, FLORIDA 33175
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT
THAT THE MONTHLY PAYMENT CAN INCREASE. THE PRINCIPAL AMOUNT
TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY
BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

## 2.   INTEREST
### (A)   Interest Rate
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will
pay interest at a yearly rate of          1.500 %. The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any default
described in Section 7(B) of this Note.
### (B)   Interest Rate Change Dates
The interest rate I will pay may change on the 1st day of JULY, 2006          , and
on that day every month thereafter. Each date on which my interest rate could change is called an "Interest
Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.
### (C)   Interest Rate Limit
My interest rate will never be greater than          9.950 %.
### (D)   Index
Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an
Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States
Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board
in the Federal Reserve Statistical Release entitled "Selected Interest Rates (h.15)" (the "Monthly Yields").
The Twelve Month Average is determined by adding together the Monthly Yields for the most recently

---

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE RIDER
RFC FORM 3184 (10/05) MODIFIED INSTRUMENT

DocMagic *eForms* 800-649-1362
www.docmagic.com

available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(E)   Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate the new interest rate by adding THREE AND 400/1000                percentage point(s) (      3.400  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the result of this addition will be the new interest rate until the next Interest Rate Change Date.

**3.   PAYMENTS**

**(A)   Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the          1st          day of each month beginning on JULY 1, 2006                . I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 1, 2036                , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 17101 ARMSTRONG AVENUE SUITE, 200, IRVINE, CALIFORNIA 92614

or at a different place if required by the Note Holder.

**(B)   Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 3,451.20          . This amount may change.

**(C)   Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the   1st day of JULY, 2007                , and on that day every 12th   month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)   Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater than the amount of my last monthly payment due before the Payment Change Date.

**(E)   Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE RIDER
RFC FORM 3184 (10/05) MODIFIED INSTRUMENT
Page 2 of 4

DocMagic eForms  800-649-1362
www.docmagic.com

Us3184m2.rfc2.tem

interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above.

**(F)   Limit on My Unpaid Principal; Increased Monthly Payment**
The unpaid principal can never exceed a maximum amount equal to 115.000      % of the Principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

**(G)   Required Full Payment**
On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

## 4.   NOTICE OF CHANGES
The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE RIDER                    DocMagic *eFarms* 800-649-1362
RFC FORM 3184 (10/05) MODIFIED INSTRUMENT                          *www.docmagic.com*
                              Page 3 of 4

TD

Us3184m3.rfc.3.tem

Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
TOMAS DIAZ                      -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                               -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                               -Borrower                                        -Borrower

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE RIDER
RFC FORM 3184 (10/05) MODIFIED INSTRUMENT          *DocMagic eForms* 800-649-1362
Page 4 of 4                                        *www.docmagic.com*

Us3184ms4.rfc.4.tem

# PREPAYMENT RIDER

Loan Number ████████

Date: APRIL 27, 2006

Borrower(s): TOMAS DIAZ

THIS PREPAYMENT RIDER (the "Rider") is made this 27th day of APRIL , 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of PLATINUM CAPITAL GROUP, A CALIFORNIA CORPORATION

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at

5200 SOUTHWEST 122ND AVENUE, MIAMI, FLORIDA 33175

[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.  PREPAYMENT CHARGE**

The Note provides for the payment of a prepayment charge as follows:

**5  . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase. If this Note provides for a variable interest rate or finance charge, and the interest rate or finance charge at any time exceeds the legal limit under

Usprl.ppf.1.tem

*T0*

which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.

If within THIRTY-SIX ( 36 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)          _____ (Seal)
TOMAS DIAZ                        -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower

DocMagic eForms 800-649-1362
www.docmagic.com

OR BK 24526 PG 3850
LAST PAGE

**SCHEDULE A — CONTINUED**                                     Commitment No.: 16541

**EXHIBIT "A"**

**ALL THAT LAND SITUATE IN MIAMI-DADE COUNTY, FLORIDA, TO-WIT:**

**SOUTH ONE-HALF OF TRACT 226, OF BIRD ROAD FARMSITES, ACCORDING TO THE PLAT THEREOF, AS
RECORDED IN PLAT BOOK 46, AT PAGE 3, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.**

**PARCEL ID # : 30-4924-001-2322**

**PROPERTY ADDRESS:**
**5200 SW 122ND AVENUE**
**MIAMI, FLORIDA 33175**

**Southern Title Insurance Company**        **This commitment is invalid unless the**        **Page 2**
                                            **Insuring Provisions and Schedules A &**
                                            **B are attached.**

**<u>Exhibit J</u>**
**Diaz Note**

ny-1145045



MIN: [REDACTED]        Loan Number [REDACTED]

# ADJUSTABLE RATE NOTE

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

APRIL 27, 2006                    IRVINE                    CALIFORNIA
[Date]                              [City]                     [State]

5200 SOUTHWEST 122ND AVENUE, MIAMI, FLORIDA 33175
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 1,000,000.00     (this amount is called "Principal"), plus interest, to the order of Lender. Lender is PLATINUM CAPITAL GROUP, A CALIFORNIA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

**(A)  Interest Rate**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     1.500  %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B)  Interest Rate Change Dates**

The interest rate I will pay may change on the 1st   day of JULY, 2006          , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

**(C)  Interest Rate Limit**

My interest rate will never be greater than     9.950 %.

**(D)  Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (h.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE NOTE
RFC FORM 3524 (10/05) MODIFIED INSTRUMENT
For Use in FLORIDA Only                    Page 1 of 5

DocMagic *eForms* 800-649-1362
www.docmagic.com

F13524m1.rfc.1.tem




**(E)   Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate the new interest rate by adding THREE AND 400/1000                        percentage point(s) (      3.400 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the result of this addition will be the new interest rate until the next Interest Rate Change Date.

## 3.   PAYMENTS

**(A)   Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st    day of each month beginning on JULY 1                  .
2006    . I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 1, 2036                , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 17101 ARMSTRONG AVENUE SUITE, 200, IRVINE, CALIFORNIA 92614
                                    or at a different place if required by the Note Holder.

**(B)   Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 3,451.20          . This amount may change.

**(C)   Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the 1st    day of JULY, 2007    , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date."  My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)   Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater than the amount of my last monthly payment due before the Payment Change Date.

**(E)   Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above.

**(F)   Limit on My Unpaid Principal; Increased Monthly Payment**

The unpaid principal can never exceed a maximum amount equal to 115.000 % of the Principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE NOTE
RFC FORM 3524 (10/05) MODIFIED INSTRUMENT
For Use in FLORIDA Only                    Page 2 of 5

DocMagic *eForms* 800-649-1362
*www.docmagic.com*

F13524m2.rfc.2.tem

sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

(G)  **Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

## 4.  NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  **Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)  **Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  **Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  **No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE NOTE
RFC FORM 3524 (10/05) MODIFIED INSTRUMENT
For Use in FLORIDA Only                    Page 3 of 5

DocMagic *eForms* 800-649-1362
www.docmagic.com

F13524m3.rfc.3.tem

*TO*

**(E)   Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  These expenses include, for example, reasonable attorneys' fees.

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all the amounts owed under this Note.

## 10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of these conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE NOTE
RFC FORM 3524 (10/05) MODIFIED INSTRUMENT
For Use in FLORIDA Only                                    Page 4 of 5

DocMagic *eForms* 800-649-1362
www.docmagic.com

F13524m4.rfc.4.tem

agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the Mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
TOMAS DIAZ                       -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                      -Borrower

*[Sign Original Only]*

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE NOTE                    DocMagic *eForms* 800-649-1362
RFC FORM 3524 (10/05) MODIFIED INSTRUMENT                         *www.docmagic.com*
For Use in FLORIDA Only                    Page 5 of 5

F13524m5.rfc.5.tem

PAY TO THE ORDER OF RESIDENTIAL FUNDING CORPORATION
WITHOUT RECOURSE
PLATINUM CAPITAL GROUP
A CALIFORNIA CORPORATION

BY _____
ASST. SECRETARY
Carleton Pyfrom II

PAY TO THE ORDER OF
Deutsche Bank Trust Company Americas as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

By _____
Judy Faber, Vice President



# PREPAYMENT ADDENDUM TO NOTE

Loan Number: ████████

Date: APRIL 27, 2006

Borrower(s): TOMAS DIAZ

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this      27th      day of
APRIL,   2006            , and is incorporated into and shall be deemed to amend and supplement
that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of PLATINUM
CAPITAL GROUP, A CALIFORNIA CORPORATION

("Lender") and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date
as this Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the
Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower
and Lender further covenant and agree as follows:

Section 5    of the Note is amended to read in its entirety as follows:

### 5 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due. A payment
of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note
Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not
made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that I owe
under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid
interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount
of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my
monthly payment unless the Note Holder agrees in writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment may
reduce the amount of my monthly payments after the first Change Date following my partial
Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest
rate increase. If this Note provides for a variable interest rate or finance charge, and the interest
rate or finance charge at any time exceeds the legal limit under which a Prepayment penalty is
allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under
applicable law.
If within THIRTY-SIX( 36  ) months from the date the Security Instrument is
executed I make a full Prepayment or one or more partial Prepayments, and the total of all such
Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount
of the loan, I will pay a Prepayment charge in an amount equal to     SIX   (  6  )
months' advance interest on the amount by which the total of my Prepayments within any 12-month
period exceeds twenty percent (20%) of the original Principal amount of the loan.

DocMagic *eForms* 800-649-1362
www.docmagic.com

*TD*

Uspatnl.ppf.1.tem

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

_____ 09/27/06        _____
Borrower TOMAS DIAZ        Date          Borrower                    Date


_____          _____
Borrower                    Date          Borrower                    Date


_____          _____
Borrower                    Date          Borrower                    Date

**Exhibit K**
**Diaz Servicing Notes**

| Account Number | 1 |
|---|---|
| ███████ | |
| | |

# Loan History

Date Data as-of:  March 6, 2014

| Account Number | Name Primary Borrower | Name Secondary Borrower | Property Address | Mailing Address |
|---|---|---|---|---|
| ████████ | THOMAS DIAZ | | 5200 SOUTHWEST 122ND AVENUE | 5200 SW 122ND AVE |
| | | | MIAMI | MIAMI |
| | | | FL | FL |
| | | | 33175 | 33175-5529 |

**Investor Info**

| | |
|---|---|
| Investor Acct No - Prim | 0010624849 |
| Investor Number | 90615 |
| Investor Name Full | RESIDENTIAL FUNDING CORP |
| Investor Id | BJG |

**Previous Servicer Info**

| | |
|---|---|
| Seller Company Name | PLATINUM CAPITAL GROUP |

**Loan Info**

| | |
|---|---|
| Arm Flag | Y |
| Loan Type | Conventional |
| Lien Position | 01 |
| Interest Rate | 8.000% |
| Collection Status | PO |

**Dates**

| | |
|---|---|
| Int Collected To | 09/01/2006 |
| Next Due | 10/01/2006 |
| Last Payment | 03/27/2007 |
| Last Activity | 04/01/2008 |
| Setup Date | 05/24/2006 |
| Maturity Date | 06/01/2036 |

**Current Balances**

| | |
|---|---|
| Principal | $0.00 |
| Escrow | $0.00 |
| Unapplied | $0.00 |
| Buydown | $0.00 |

**Uncollected**

| | |
|---|---|
| Late Charges | $0.00 |
| Interest | $0.00 |
| Fees | $0.00 |
| Opt | $0.00 |

**Year-To-Date**

| | |
|---|---|
| Interest | $0.00 |
| Taxes | $0.00 |

**Financial**

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ████ | 04/01/2008 | 09/01/2006 | $0.00 | FEE | 003 | FWV | 32580 | ($15.00) | $0.00 | $0.00 | $0.00 | ($15.00) | $0.00 | $0.00 | $0.00 |
| ████ | 04/01/2008 | 09/01/2006 | $0.00 | FEE | 011 | FWV | 32580 | ($186.75) | $0.00 | $0.00 | $0.00 | ($186.75) | $0.00 | $0.00 | $0.00 |
| ████ | 04/01/2008 | 09/01/2006 | $0.00 | FEE | 040 | FWV | 32580 | ($5,214.70) | $0.00 | $0.00 | $0.00 | ($5,214.70) | $0.00 | $0.00 | $0.00 |
| ████ | 04/01/2008 | 09/01/2006 | $0.00 | FEE | 164 | FWV | 32580 | ($180.00) | $0.00 | $0.00 | $0.00 | ($180.00) | $0.00 | $0.00 | $0.00 |
| ████ | 04/01/2008 | 09/01/2006 | $0.00 | Service Release | | SV | 32580 | $0.00 | $1,003,803.59 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $345.12 |
| ████ | 04/01/2008 | 09/01/2006 | $1,003,803.59 | Service Release | | SVT | 32580 | $65,096.10 | $0.00 | $0.00 | $67,753.76 | $0.00 | ($2,657.66) | $0.00 | $0.00 |
| ████ | 04/01/2008 | 09/01/2006 | $0.00 | Unapplied | | UFU | 32580 | ($2,657.66) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ████ | 04/01/2008 | 09/01/2006 | $0.00 | Unapplied | | UI | 32580 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $345.12 |
| ████ | 03/12/2008 | 09/01/2006 | $0.00 | FEE | 011 | FB | 32506 | $11.25 | $0.00 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 |
| ████ | 03/12/2008 | 09/01/2006 | $0.00 | FEE | 040 | FB | 32551 | $1,171.50 | $0.00 | $0.00 | $0.00 | $1,171.50 | $0.00 | $0.00 | $0.00 |
| ████ | 02/07/2008 | 09/01/2006 | $0.00 | FEE | 011 | FB | 32506 | $11.25 | $0.00 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 |
| ████ | 01/31/2008 | 09/01/2006 | $0.00 | FEE | 163 | FE | 01755 | $18,168.34 | $0.00 | $0.00 | $0.00 | $18,168.34 | $0.00 | $0.00 | $0.00 |
| ████ | 01/31/2008 | 09/01/2006 | $1,003,803.59 | PAYMENT | | PT | 12928 | ($130,192.20) | $0.00 | $0.00 | ($135,507.52) | $0.00 | $5,315.32 | $0.00 | $0.00 |

**Loan History**

Date Data as-of:  March 6, 2014

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 01/31/2008 | 09/01/2006 | $1,003,803.59 | PAYMENT | | RT | 12928 | $130,192.20 | $0.00 | $0.00 | $0.00 | $0.00 | ($5,315.32) | $0.00 | $0.00 |
| | 01/31/2008 | 09/01/2006 | $1,003,803.59 | PAYMENT | | SR0 | 01755 | ($18,168.34) | $0.00 | $0.00 | ($18,168.34) | $0.00 | $0.00 | $0.00 | $0.00 |
| | 01/31/2008 | 09/01/2006 | $0.00 | Unapplied | | UFU | 12928 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 01/30/2008 | 09/01/2006 | $0.00 | FEE | 163 | FB | 05006 | $18,168.34 | $0.00 | $0.00 | $0.00 | $18,168.34 | $0.00 | $0.00 | $0.00 |
| | 01/28/2008 | 09/01/2006 | $0.00 | FEE | 164 | FB | 20808 | $85.00 | $0.00 | $0.00 | $0.00 | $85.00 | $0.00 | $0.00 | $0.00 |
| | 01/08/2008 | 09/01/2006 | $0.00 | FEE | 011 | FB | 32506 | $11.25 | $0.00 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 |
| | 12/18/2007 | 09/01/2006 | $0.00 | FEE | 011 | FB | 32506 | $11.25 | $0.00 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 |
| | 11/19/2007 | 09/01/2006 | $0.00 | FEE | 011 | FB | 32506 | $11.25 | $0.00 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 |
| | 10/16/2007 | 09/01/2006 | $0.00 | FEE | 011 | FB | 32506 | $11.25 | $0.00 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 |
| | 09/17/2007 | 09/01/2006 | $0.00 | FEE | 011 | FB | 32506 | $11.25 | $0.00 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 |
| | 08/07/2007 | 09/01/2006 | $0.00 | FEE | 011 | FB | 32506 | $11.25 | $0.00 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 |
| | 07/09/2007 | 09/01/2006 | $0.00 | FEE | 011 | FB | 32506 | $11.25 | $0.00 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 |
| | 06/15/2007 | 09/01/2006 | $0.00 | FEE | 011 | FB | 32506 | $11.25 | $0.00 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 |
| | 06/13/2007 | 09/01/2006 | $0.00 | FEE | 040 | FB | 32551 | $1,493.50 | $0.00 | $0.00 | $0.00 | $1,493.50 | $0.00 | $0.00 | $0.00 |
| | 06/07/2007 | 09/01/2006 | $1,003,803.59 | Escrow Disb-Tax County | | M90 | 13859 | ($27,274.68) | $0.00 | $0.00 | ($27,274.68) | $0.00 | $0.00 | $0.00 | $0.00 |
| | 05/22/2007 | 09/01/2006 | $0.00 | FEE | 011 | FB | 32506 | $11.25 | $0.00 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 |

Comments:

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| | | 09/14/2009 | FOR | 09/14/09 - 15:53 - 45823 | NEW TRAK SYSTEM ID |
| | | 09/14/2009 | FOR | Intercom From: Burks, Jaime - To: | NEW TRAK SYSTEM ID |
| | | 09/14/2009 | FOR | Sakamoto, Samantha, ; / Subject: | NEW TRAK SYSTEM ID |
| | | 09/14/2009 | FOR | Issue Request/ | NEW TRAK SYSTEM ID |
| | INQ | 06/13/2008 | NT | u3p dee with belmont default services cld, sd she | DEBBIE WILSON |
| | INQ | 06/13/2008 | NT | sent information on 5/5/08 showing she is | DEBBIE WILSON |
| | INQ | 06/13/2008 | NT | authorized, advsd her a ltr was sent on 5/12/08, | DEBBIE WILSON |
| | INQ | 06/13/2008 | NT | sd she never got it, advsd transferred to auro | DEBBIE WILSON |
| | INQ | 06/13/2008 | NT | loan services.  debw/2367582 | DEBBIE WILSON |
| | INQ30 | 05/12/2008 | CIT | 003 DONE 05/12/08 BY TLR 17474 | BRIDGITTE DUFFY |
| | INQ30 | 05/12/2008 | CIT | TSK TYP 102-CC COR TRACKING | BRIDGITTE DUFFY |
| | INQ30 | 05/12/2008 | CIT | 003 closing cit 102~ mailed letter stating where | BRIDGITTE DUFFY |
| | INQ30 | 05/12/2008 | CIT | loan was tranfd and contact number bd7522 | BRIDGITTE DUFFY |
| | | 05/09/2008 | CBR | SERVICE RELEASE: EFFECTIVE DATE =04/01/08 | SYSTEM ID |
| | INQ30 | 05/06/2008 | CIT | 003 new cit 102 corres recvd | HARITHA GANNA |

# Loan History

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ■■■■ | INQ | 05/05/2008 | NT | 3p susan/delmar default services ci wanna know the | TARA FINK |
| ■■■■ | INQ | 05/05/2008 | NT | new the mortgage compny,adv to have verbal auth | TARA FINK |
| ■■■■ | INQ | 05/05/2008 | NT | she said she will fax auth adv corr dept. | TARA FINK |
| ■■■■ | INQ | 05/05/2008 | NT | judyg73577 | TARA FINK |
| ■■■■ | | 04/25/2008 | CBR | DELINQUENT:  180+ DAYS | SYSTEM ID |
| ■■■■ | OTH10 | 04/18/2008 | NT | cit474 sending fcls subpoena notice to Aurora | JENEE SIMON |
| ■■■■ | OTH10 | 04/18/2008 | NT | SHanson@alservices.com  ICN:0810806081 | JENEE SIMON |
| ■■■■ | | 04/09/2008 | FOR | FILE CLOSED        (1000) COMPLETED 04/01/08 | KRIS WILSON |
| ■■■■ | | 04/01/2008 | FSV | INSP TYPE F CANCELLED;   REQ CD =AUTO DELQ | SYSTEM ID |
| ■■■■ | | 03/31/2008 | FSV | INSP TYPE F ORDERED;   REQ CD =AUTO DELQ | SYSTEM ID |
| ■■■■ | FSV | 03/27/2008 | NT | loan on SR2 - stop inspection and place | MIKE TANYAVIRIYA |
| ■■■■ | FSV | 03/27/2008 | NT | stop and cancel all. mike tx 3184 | MIKE TANYAVIRIYA |
| ■■■■ | | 03/26/2008 | FOR | 03/26/08 - 07:44 - 51625 | NEW TRAK SYSTEM ID |
| ■■■■ | | 03/26/2008 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ■■■■ | | 03/26/2008 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ■■■■ | | 03/26/2008 | FOR | step Sale Held to 4/8/2008. Reason: | NEW TRAK SYSTEM ID |
| ■■■■ | | 03/26/2008 | FOR | Other. Comments: service release  . | NEW TRAK SYSTEM ID |
| ■■■■ | | 03/26/2008 | FOR | 03/26/08 - 07:44 - 51625 | NEW TRAK SYSTEM ID |
| ■■■■ | | 03/26/2008 | FOR |  Status: Active, approval not | NEW TRAK SYSTEM ID |
| ■■■■ | | 03/26/2008 | FOR | required. | NEW TRAK SYSTEM ID |
| ■■■■ | | 03/21/2008 | CBR | FORECLOSURE STARTED | SYSTEM ID |
| ■■■■ | | 03/21/2008 | CBR | DELINQUENT:  180+ DAYS | SYSTEM ID |
| ■■■■ | | 03/19/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■■■■ | | 03/18/2008 | ET | ARM CHANGE NOTICE SCHEDULED FOR   03/19/08 | SYSTEM ID |
| ■■■■ | PARPK | 03/18/2008 | NT | rcvd incmp wk03 missing poi bnkstmts po rental | JEANA MOORE |
| ■■■■ | PARPK | 03/18/2008 | NT | income inc 7900 exp 4500 gain 3400 rfd problems | JEANA MOORE |
| ■■■■ | PARPK | 03/18/2008 | NT | with health *jmoore 2838  *imaged as wout *sent | JEANA MOORE |
| ■■■■ | PARPK | 03/18/2008 | NT | to talbert | JEANA MOORE |
| ■■■■ | | 03/18/2008 | DM | RANDALL NORDLUND 305-347-4070 FAX 305-347-4077 | JEANA MOORE |
| ■■■■ | | 03/18/2008 | DM | IMAGED AS ARTP JMOORE 2838 | JEANA MOORE |
| ■■■■ | | 03/18/2008 | DM | ACTION/RESULT CD CHANGED FROM LMDC TO OAAI | JEANA MOORE |
| ■■■■ | | 03/17/2008 | D19 | 6020 - S&A - GOODBYE LETTER | SYSTEM ID |
| ■■■■ | | 03/14/2008 | PPT | FILE CLOSED        (2)    COMPLETED 03/14/08 | JENEE ROBLEDO |
| ■■■■ | | 03/14/2008 | PPT | PURSUE PROP PRES    (1)    COMPLETED 03/14/08 | JENEE ROBLEDO |
| ■■■■ | | 03/13/2008 | FOR | 03/12/08 - 22:16 - 32012 | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| | | 03/13/2008 | FOR | Uploaded Comment: LOAN SERVICE | NEW TRAK SYSTEM ID |
| | | 03/13/2008 | FOR | RELEASED. FILE TO CHERYL 3/12. (DIS) | NEW TRAK SYSTEM ID |
| | | 03/13/2008 | FOR | 03/13/08 - 14:52 - 38933 | NEW TRAK SYSTEM ID |
| | | 03/13/2008 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 03/13/2008 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| | | 03/13/2008 | FOR | step Sale Held to 3/25/2008. | NEW TRAK SYSTEM ID |
| | | 03/13/2008 | FOR | Reason: Other. Comments: service rel | NEW TRAK SYSTEM ID |
| | | 03/13/2008 | FOR | 03/13/08 - 14:52 - 38933 | NEW TRAK SYSTEM ID |
| | | 03/13/2008 | FOR | ease  . Status: Active, approval | NEW TRAK SYSTEM ID |
| | | 03/13/2008 | FOR | not required. | NEW TRAK SYSTEM ID |
| | | 03/12/2008 | FSV | INSP TP F RESULTS RCVD;  ORD DT=02/29/08 | SYSTEM ID |
| | | 03/12/2008 | FOR | 03/12/08 - 11:49 - 09714 | NEW TRAK SYSTEM ID |
| | | 03/12/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| | | 03/12/2008 | FOR | following event: Service Release FC | NEW TRAK SYSTEM ID |
| | | 03/12/2008 | FOR | Invoice Submitted, completed on | NEW TRAK SYSTEM ID |
| | | 03/12/2008 | FOR | 3/12/2008 | NEW TRAK SYSTEM ID |
| | | 03/11/2008 | FOR | 03/10/08 - 22:15 - 32012 | NEW TRAK SYSTEM ID |
| | | 03/11/2008 | FOR | Uploaded Comment: FILE TO BILLING | NEW TRAK SYSTEM ID |
| | | 03/11/2008 | FOR | 3/10 (DIS) | NEW TRAK SYSTEM ID |
| | | 03/11/2008 | FOR | 03/10/08 - 22:15 - 32012 | NEW TRAK SYSTEM ID |
| | | 03/11/2008 | FOR | Uploaded Comment: SERVICE RELEASE. | NEW TRAK SYSTEM ID |
| | | 03/11/2008 | FOR | SALE CANCELED, PUB PAID (DIS) | NEW TRAK SYSTEM ID |
| | | 03/11/2008 | DM | TT 3P, CALLED TO TRY AND SETUP ARRANGEMENTS TO | JAVIER GRAVES |
| | | 03/11/2008 | DM | STOP FCL, ADV HIM THAT THE ONLY WAY WE CAN | JAVIER GRAVES |
| | | 03/11/2008 | DM | POSTPONE SALE IS IF PROP IS LISTED AND WE HAVE | JAVIER GRAVES |
| | | 03/11/2008 | DM | PROOF SO WE CAN SETUP A TEMP PLAN TO ALLOW TIME TO | JAVIER GRAVES |
| | | 03/11/2008 | DM | SALE, GAVE 3P DIRECT FAX AND PHONE #'S, ADV HIM TO | JAVIER GRAVES |
| | | 03/11/2008 | DM | GET INFO TO ME ASAP, JGRAVES6807 | JAVIER GRAVES |
| | | 03/11/2008 | DM | ACTION/RESULT CD CHANGED FROM LMDC TO LMDC | JAVIER GRAVES |
| | LMT | 03/11/2008 | NT | Mod Rep Josh Yaklin confirmed that there will be | SANJAY PATEL |
| | LMT | 03/11/2008 | NT | no options for a mod therefore prop will go to | SANJAY PATEL |
| | LMT | 03/11/2008 | NT | sell. Patels 6266 | SANJAY PATEL |
| | | 03/11/2008 | DM | TT BRRW SD THAT HE WANTED TO STOP F/C, SD HE HAS | SANJAY PATEL |
| | | 03/11/2008 | DM | $20K THAT HE CAN SEND IN TODAY, WANTS TO KEEP HIS | SANJAY PATEL |
| | | 03/11/2008 | DM | PROP, UNABLE TO RI, NO 401K, OFFERED TO GO THROUGH | SANJAY PATEL |

# Loan History

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| | | 03/11/2008 | DM | FINA HOWEVER HE DID NOT HAVE FIGS ADV TO HAVE THEM | SANJAY PATEL |
| | | 03/11/2008 | DM | FAXED TO ME ON 866 502 5499 FOR POSS | SANJAY PATEL |
| | | 03/11/2008 | DM | OPTIONS.EMAILED JYAKLIN IF MOD MAY BE POSS.PATELS | SANJAY PATEL |
| | | 03/11/2008 | DM | ACTION/RESULT CD CHANGED FROM LMDC TO LMDC | SANJAY PATEL |
| | | 03/11/2008 | FOR | LMT BORR FIN REC ADDED | SANJAY PATEL |
| | FCL | 03/11/2008 | NT | b1 ci trying to recover prop & ff up for | ALMA BOTOR |
| | FCL | 03/11/2008 | NT | arrangement of pmt. trf him to lmt. almab/73754 | ALMA BOTOR |
| | | 03/10/2008 | FOR | 03/07/08 - 21:38 - 32012 | NEW TRAK SYSTEM ID |
| | | 03/10/2008 | FOR | Uploaded Comment: TO CANCEL | NEW TRAK SYSTEM ID |
| | | 03/10/2008 | FOR | SALE/BILL ASAP 3/7 (DIS) | NEW TRAK SYSTEM ID |
| | | 03/10/2008 | FOR | 03/07/08 - 21:38 - 32012 | NEW TRAK SYSTEM ID |
| | | 03/10/2008 | FOR | Uploaded Comment: LOAN SERVICE | NEW TRAK SYSTEM ID |
| | | 03/10/2008 | FOR | RELEASED. NEED (DIS) | NEW TRAK SYSTEM ID |
| | | 03/07/2008 | FOR | 03/07/08 - 11:38 - 09714 | NEW TRAK SYSTEM ID |
| | | 03/07/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| | | 03/07/2008 | FOR | following event: Service Release | NEW TRAK SYSTEM ID |
| | | 03/07/2008 | FOR | Notification Received By Attorney, | NEW TRAK SYSTEM ID |
| | | 03/07/2008 | FOR | completed on 3/7/2008 | NEW TRAK SYSTEM ID |
| | | 03/07/2008 | FOR | 03/07/08 - 09:27 - 39011 | NEW TRAK SYSTEM ID |
| | | 03/07/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| | | 03/07/2008 | FOR | following event: Service Release | NEW TRAK SYSTEM ID |
| | | 03/07/2008 | FOR | Effective Date, completed on | NEW TRAK SYSTEM ID |
| | | 03/07/2008 | FOR | 4/1/2008 | NEW TRAK SYSTEM ID |
| | | 03/07/2008 | DM | A3P CALLED IN WANTING OPTIONS. DIDN'T HAVE | JUSTIN HALBACK |
| | | 03/07/2008 | DM | ANYTHING CONCRETE TO OFFER. ADVSD HAVE SOMETHING | JUSTIN HALBACK |
| | | 03/07/2008 | DM | TO OFFER & WE WILL SEE IF THAT IS SUFFICIENT. | JUSTIN HALBACK |
| | | 03/07/2008 | DM | A3P WILL CALL BACK ON MONDAY. | JUSTIN HALBACK |
| | | 03/07/2008 | DM | JPH X6265 | JUSTIN HALBACK |
| | | 03/07/2008 | DM | ACTION/RESULT CD CHANGED FROM LMDC TO LMDC | JUSTIN HALBACK |
| | | 03/06/2008 | FOR | 03/06/08 - 14:16 - 00007 | NEW TRAK SYSTEM ID |
| | | 03/06/2008 | FOR | Service transfer from ResCap | NEW TRAK SYSTEM ID |
| | | 03/06/2008 | FOR | scheduled for 4/1/2008. Billing cut | NEW TRAK SYSTEM ID |
| | | 03/06/2008 | FOR | off date is 3/14/2008 and billing | NEW TRAK SYSTEM ID |
| | | 03/06/2008 | FOR | Good Through Date is 4/1/2008. The n | NEW TRAK SYSTEM ID |
| | | 03/06/2008 | FOR | 03/06/08 - 14:16 - 00007 | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ███ | | 03/06/2008 | FOR | ew vendor is AURORA LOAN SERVICES, | NEW TRAK SYSTEM ID |
| ███ | | 03/06/2008 | FOR | REGINA LASHLEY, PO BOX | NEW TRAK SYSTEM ID |
| ███ | | 03/06/2008 | FOR | 5180--CASHERING DEPARTMENT  DENVER | NEW TRAK SYSTEM ID |
| ███ | | 03/06/2008 | FOR | CO  80217-5180, 800-550-0508. Invoic | NEW TRAK SYSTEM ID |
| ███ | | 03/06/2008 | FOR | 03/06/08 - 14:16 - 00007 | NEW TRAK SYSTEM ID |
| ███ | | 03/06/2008 | FOR | e must be submitted within 48 hours | NEW TRAK SYSTEM ID |
| ███ | | 03/06/2008 | FOR | of the billing cut-off date or | NEW TRAK SYSTEM ID |
| ███ | | 03/06/2008 | FOR | invoice will not be paid. | NEW TRAK SYSTEM ID |
| ███ | | 03/06/2008 | FOR | 03/06/08 - 13:50 - 00007 | NEW TRAK SYSTEM ID |
| ███ | | 03/06/2008 | FOR | Process opened 3/6/2008 by user | NEW TRAK SYSTEM ID |
| ███ | | 03/06/2008 | FOR | Fidelity AutoProc. | NEW TRAK SYSTEM ID |
| ███ | | 03/06/2008 | FOR | 03/06/08 - 12:13 - 32012 | NEW TRAK SYSTEM ID |
| ███ | | 03/06/2008 | FOR | Uploaded Comment: PKG DONE SENT TO | NEW TRAK SYSTEM ID |
| ███ | | 03/06/2008 | FOR | VENICE (DIS) | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | 03/05/08 - 10:39 - 45823 | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | event: User has created a | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | Process-Level issue for this | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | loan.Issue Type: FC Escrow/Corp Brea | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | 03/05/08 - 10:39 - 45823 | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | kdown Needed. Issue Comments: | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | Please provide advances breakdown | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | in the amount of $4,043.20.  Thank | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | you. Status: Active | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | 03/05/08 - 10:51 - 49504 | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | event: User has ended the Issue | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | associated with this loan. Issue | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | Type: FC Escrow/Corp Breakdown Neede | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | 03/05/08 - 10:51 - 49504 | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | d. Comments: $2,549.70 prior | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | servicer foreclosure fee ** | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | $258.00 filing fee **  $900.00 | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | foreclosure fee **  $10.50 recording | NEW TRAK SYSTEM ID |
| ███ | | 03/05/2008 | FOR | 03/05/08 - 10:51 - 49504 | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| | | 03/05/2008 | FOR | fee ** $150.00 title costs ** | NEW TRAK SYSTEM ID |
| | | 03/05/2008 | FOR | $175.00 title search ** | NEW TRAK SYSTEM ID |
| | | 03/05/2008 | FOR | $4,043.20 Total Advances    . | NEW TRAK SYSTEM ID |
| | | 03/05/2008 | FOR | 03/05/08 - 10:03 - 45823 | NEW TRAK SYSTEM ID |
| | | 03/05/2008 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 03/05/2008 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| | | 03/05/2008 | FOR | step Bidding Instructions To | NEW TRAK SYSTEM ID |
| | | 03/05/2008 | FOR | Attorney to 3/10/2008. Reason: Other | NEW TRAK SYSTEM ID |
| | | 03/05/2008 | FOR | 03/05/08 - 10:03 - 45823 | NEW TRAK SYSTEM ID |
| | | 03/05/2008 | FOR | . Comments: Confirming advance | NEW TRAK SYSTEM ID |
| | | 03/05/2008 | FOR | amount before preparing bid.  . | NEW TRAK SYSTEM ID |
| | | 03/05/2008 | FOR | Status: Active, approval not | NEW TRAK SYSTEM ID |
| | | 03/05/2008 | FOR | required. | NEW TRAK SYSTEM ID |
| | | 03/05/2008 | FOR | 03/05/08 - 09:05 - 57322 | NEW TRAK SYSTEM ID |
| | | 03/05/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| | | 03/05/2008 | FOR | following event: Original Documents | NEW TRAK SYSTEM ID |
| | | 03/05/2008 | FOR | Returned to Client, completed on | NEW TRAK SYSTEM ID |
| | | 03/05/2008 | FOR | 2/20/2008 | NEW TRAK SYSTEM ID |
| | | 02/29/2008 | FSV | INSP TYPE F ORDERED;    REQ CD =AUTO DELQ | SYSTEM ID |
| | | 02/22/2008 | CBR | FORECLOSURE STARTED | SYSTEM ID |
| | | 02/22/2008 | CBR | DELINQUENT:  180+ DAYS | SYSTEM ID |
| | | 02/19/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| | | 02/15/2008 | ET | ARM CHANGE NOTICE SCHEDULED FOR  02/15/08 | SYSTEM ID |
| | LMT | 02/13/2008 | NT | Loss Mitigation Letter Campaign | ROSEMARY LOVE |
| | LMT | 02/13/2008 | NT | 30 days to sale/no contact letter | ROSEMARY LOVE |
| | LMT | 02/13/2008 | NT | please refer to digit split in P&P | ROSEMARY LOVE |
| | | 02/12/2008 | FOR | 02/12/08 - 13:17 - 47491 | NEW TRAK SYSTEM ID |
| | | 02/12/2008 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 02/12/2008 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| | | 02/12/2008 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| | | 02/12/2008 | FOR | Client to 2/26/2008. Reason: Court D | NEW TRAK SYSTEM ID |
| | | 02/12/2008 | FOR | 02/12/08 - 13:17 - 47491 | NEW TRAK SYSTEM ID |
| | | 02/12/2008 | FOR | elay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| | | 02/12/2008 | FOR | release docs sent to clerk; as of | NEW TRAK SYSTEM ID |
| | | 02/12/2008 | FOR | 2/12/08 the original docs have not | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| | | 02/12/2008 | FOR | been returned by the clerk; will fol | NEW TRAK SYSTEM ID |
| | | 02/12/2008 | FOR | 02/12/08 - 13:17 - 47491 | NEW TRAK SYSTEM ID |
| | | 02/12/2008 | FOR | low up on 2/26/08  . Status: | NEW TRAK SYSTEM ID |
| | | 02/12/2008 | FOR | Active, approval not required. | NEW TRAK SYSTEM ID |
| | | 02/07/2008 | FSV | INSP TP F RESULTS RCVD;  ORD DT=01/30/08 | SYSTEM ID |
| | | 01/31/2008 | NT | 18168.34      REVERSED-MISAPPLIED | PAULA BRUNS |
| | | 01/30/2008 | FSV | INSP TYPE F ORDERED;    REQ CD =YG-BPO | SYSTEM ID |
| | | 01/30/2008 | ET | 10200 AMORT FEE PAYMENT ASSESSMENT  01/30 | CORP ADV TLR |
| | | 01/25/2008 | FOR | 01/25/08 - 13:49 - 47491 | NEW TRAK SYSTEM ID |
| | | 01/25/2008 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 01/25/2008 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| | | 01/25/2008 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| | | 01/25/2008 | FOR | Client to 2/9/2008. Reason: Court De | NEW TRAK SYSTEM ID |
| | | 01/25/2008 | FOR | 01/25/08 - 13:49 - 47491 | NEW TRAK SYSTEM ID |
| | | 01/25/2008 | FOR | lay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| | | 01/25/2008 | FOR | release docs sent to clerk; as of | NEW TRAK SYSTEM ID |
| | | 01/25/2008 | FOR | 1/25/08 the original docs have not | NEW TRAK SYSTEM ID |
| | | 01/25/2008 | FOR | been returned by the clerk; will fol | NEW TRAK SYSTEM ID |
| | | 01/25/2008 | FOR | 01/25/08 - 13:49 - 47491 | NEW TRAK SYSTEM ID |
| | | 01/25/2008 | FOR | low up on 2/9/08  Due date pushed | NEW TRAK SYSTEM ID |
| | | 01/25/2008 | FOR | forward from weekend or holiday to | NEW TRAK SYSTEM ID |
| | | 01/25/2008 | FOR | next available business day. Date | NEW TRAK SYSTEM ID |
| | | 01/25/2008 | FOR | moved from 2/9/2008 to 2/11/2008.. S | NEW TRAK SYSTEM ID |
| | | 01/25/2008 | FOR | 01/25/08 - 13:49 - 47491 | NEW TRAK SYSTEM ID |
| | | 01/25/2008 | FOR | tatus: Active, approval not | NEW TRAK SYSTEM ID |
| | | 01/25/2008 | FOR | required. | NEW TRAK SYSTEM ID |
| | | 01/25/2008 | LMT | LMT BPO/APPRAISAL REC ADDED | ADAM BJORKLUND |
| | | 01/22/2008 | FSV | INSP TP R RESULTS RCVD;  ORD DT=01/16/08 | ADAM BJORKLUND |
| | COL | 01/22/2008 | NT | BPO VALUE RECEIVED FROM CLEAR CAPITAL | ADAM BJORKLUND |
| | | 01/21/2008 | DM | LEFT MSG TO SET UP REPAY PLAN LDAWN IF CALL XFER | LATINA DAWN |
| | | 01/21/2008 | DM | TO 8746534 | LATINA DAWN |
| | | 01/21/2008 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO LMDC | LATINA DAWN |
| | | 01/21/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| | | 01/18/2008 | ET | ARM CHANGE NOTICE SCHEDULED FOR  01/18/08 | SYSTEM ID |
| | | 01/16/2008 | FSV | INSP TYPE R ORDERED;    REQ CD =1150 | ADAM BJORKLUND |

# Loan History

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▇ | DM | 01/14/2008 | NT | automated bpo ff to rfc | BARBRA COOPER-GRIME |
| ▇ | | 01/11/2008 | CBR | FORECLOSURE STARTED | SYSTEM ID |
| ▇ | | 01/11/2008 | CBR | DELINQUENT: 180+ DAYS | SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | 01/09/08 - 12:45 - 32012 | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | Uploaded Comment: FSJ ENTRD 1/8. | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | SALE SET 3/12. (DIS) | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | 01/09/08 - 12:45 - 32012 | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | Uploaded Comment: N/U. AWT BID/PUB. | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | (DIS) | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | 01/08/08 - 22:37 - 09714 | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | following event: Sale Scheduled | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | For, completed on 3/12/2008 | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | 01/08/08 - 22:37 - 09714 | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | following event: Judgment Entered, | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | completed on 1/8/2008 | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | 01/08/08 - 22:37 - 09714 | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | Process opened 1/8/2008 by user | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | Jason Bennett. | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | TASK:0605-FCL-CHANGD FUPDT  03/12/08 | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | JUDGMENT DATE      (602)  COMPLETED 01/08/08 | NEW TRAK SYSTEM ID |
| ▇ | | 01/09/2008 | FOR | SALE SCHEDULED      (604)  COMPLETED 01/08/08 | NEW TRAK SYSTEM ID |
| ▇ | | 01/08/2008 | FSV | INSP TP F RESULTS RCVD;   ORD DT=01/02/08 | SYSTEM ID |
| ▇ | | 01/07/2008 | FOR | 01/04/08 - 21:14 - 32012 | NEW TRAK SYSTEM ID |
| ▇ | | 01/07/2008 | FOR | Uploaded Comment: MSJ SET 1/8/08 | NEW TRAK SYSTEM ID |
| ▇ | | 01/07/2008 | FOR | (CAL) NT (DIS) | NEW TRAK SYSTEM ID |
| ▇ | | 01/07/2008 | FOR | 01/04/08 - 21:14 - 32012 | NEW TRAK SYSTEM ID |
| ▇ | | 01/07/2008 | FOR | Uploaded Comment: READY FOR HEARING | NEW TRAK SYSTEM ID |
| ▇ | | 01/07/2008 | FOR | (DIS) | NEW TRAK SYSTEM ID |
| ▇ | LMT | 01/07/2008 | NT | RCVD BANK STATEMENT. IMAGED AS WOUT | MARY GRACIA |
| ▇ | LMT | 01/07/2008 | NT | JCOUNCIL2899 | MARY GRACIA |
| ▇ | | 01/07/2008 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI | MARY GRACIA |
| ▇ | | 01/02/2008 | FSV | INSP TYPE F ORDERED;    REQ CD =AUTO DELQ | SYSTEM ID |
| ▇ | | 12/31/2007 | FOR | 12/31/07 - 14:31 - 47491 | NEW TRAK SYSTEM ID |

**Loan History**

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| | | 12/31/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 12/31/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| | | 12/31/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| | | 12/31/2007 | FOR | Client to 1/11/2008. Reason: Court D | NEW TRAK SYSTEM ID |
| | | 12/31/2007 | FOR | 12/31/07 - 14:31 - 47491 | NEW TRAK SYSTEM ID |
| | | 12/31/2007 | FOR | elay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| | | 12/31/2007 | FOR | release docs sent to clerk; as of | NEW TRAK SYSTEM ID |
| | | 12/31/2007 | FOR | 12/31/07 the original docs have not | NEW TRAK SYSTEM ID |
| | | 12/31/2007 | FOR | been returned by the clerk; will fol | NEW TRAK SYSTEM ID |
| | | 12/31/2007 | FOR | 12/31/07 - 14:31 - 47491 | NEW TRAK SYSTEM ID |
| | | 12/31/2007 | FOR | low up on 1/11/08  . Status: | NEW TRAK SYSTEM ID |
| | | 12/31/2007 | D28 | Active, approval not required. | NEW TRAK SYSTEM ID |
| | | 12/19/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| | | 12/18/2007 | ET | ARM CHANGE NOTICE SCHEDULED FOR  12/19/07 | SYSTEM ID |
| | | 12/18/2007 | FSV | INSP TP F RESULTS RCVD;  ORD DT=12/03/07 | SYSTEM ID |
| | | 12/17/2007 | FOR | 12/17/07 - 12:26 - 32012 | NEW TRAK SYSTEM ID |
| | | 12/17/2007 | FOR | Uploaded Comment: MSJ SET 1/8/08 | NEW TRAK SYSTEM ID |
| | | 12/17/2007 | FOR | (CAL) NT (DIS) | NEW TRAK SYSTEM ID |
| | | 12/17/2007 | FOR | 12/17/07 - 12:26 - 32012 | NEW TRAK SYSTEM ID |
| | | 12/17/2007 | FOR | Uploaded Comment: 2ND HALF DUE OUT | NEW TRAK SYSTEM ID |
| | | 12/17/2007 | FOR | 1/2/08 (DIS) | NEW TRAK SYSTEM ID |
| | LMT | 12/17/2007 | NT | Letter Campaign | ROSEMARY LOVE |
| | LMT | 12/17/2007 | NT | New wout (reg mail) | ROSEMARY LOVE |
| | LMT | 12/17/2007 | NT | please refer to digit split | ROSEMARY LOVE |
| | | 12/14/2007 | CBR | FORECLOSURE STARTED | SYSTEM ID |
| | | 12/14/2007 | CBR | DELINQUENT:  180+ DAYS | SYSTEM ID |
| | | 12/14/2007 | FOR | 12/14/07 - 12:19 - 32012 | NEW TRAK SYSTEM ID |
| | | 12/14/2007 | FOR | Uploaded Comment: FILE TO ATTY FOR | NEW TRAK SYSTEM ID |
| | | 12/14/2007 | FOR | REVIEW (DIS) | NEW TRAK SYSTEM ID |
| | | 12/14/2007 | FOR | 12/14/07 - 12:19 - 32012 | NEW TRAK SYSTEM ID |
| | | 12/14/2007 | FOR | Uploaded Comment: MSJ SET 1/8/08 | NEW TRAK SYSTEM ID |
| | | 12/14/2007 | FOR | (CAL) NT (DIS) | NEW TRAK SYSTEM ID |
| | | 12/13/2007 | FOR | 12/13/07 - 08:44 - 35704 | NEW TRAK SYSTEM ID |
| | | 12/13/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 12/13/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |

# Loan History

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ | | 12/13/2007 | FOR | step Judgment Entered to 1/8/2008. | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | Reason: Hearing to Hearing Delay. Co | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | 12/13/07 - 08:44 - 35704 | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | mments: HEARING SET 1/8/08 -JUDGE'S | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | CALENDAR SUSPENDED   . Status: | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | Active, awaiting approval. | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | 12/13/07 - 13:49 - 16623 | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | 12/13/07 - 13:49 - 16623 | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR |  to Client. Status: Active, | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | 12/13/07 - 12:25 - 47491 | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | Client to 12/29/2007. Reason: Court | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | 12/13/07 - 12:25 - 47491 | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | Delay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | release docs sent to clerk; as of | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | 12/14/07 the original docs have not | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | been returned by the clerk; will fol | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | 12/13/07 - 12:25 - 47491 | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | low up on 12/29/07   Due date | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | pushed forward from weekend or | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | holiday to next available business | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | day. Date moved from 12/29/2007 to 1 | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | 12/13/07 - 12:25 - 47491 | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | 2/31/2007.. Status: Active, | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | awaiting approval. | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | 12/13/07 - 12:18 - 32012 | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | Uploaded Comment: RCVD CORRP. FRM | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | OPP COUNSEL (DIS) | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ | | 12/13/2007 | FOR | 12/13/07 - 12:18 - 32012 | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | Uploaded Comment: MSJ SET 1/8/08 | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | (CAL) NT (DIS) | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | 12/12/07 - 21:38 - 32012 | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | Uploaded Comment: HRGS. NEED TO | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | RESET. (DIS) | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | 12/12/07 - 21:38 - 32012 | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | Uploaded Comment: HRG SET 12/12 NOT | NEW TRAK SYSTEM ID |
| ▮ | | 12/13/2007 | FOR | ENTRD. JDG CUTOFF (DIS) | NEW TRAK SYSTEM ID |
| ▮ | | 12/12/2007 | FOR | 12/12/07 - 16:25 - 09714 | NEW TRAK SYSTEM ID |
| ▮ | | 12/12/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 12/12/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▮ | | 12/12/2007 | FOR | step Judgment Entered to | NEW TRAK SYSTEM ID |
| ▮ | | 12/12/2007 | FOR | 12/21/2007. Reason: Judge Delay. Com | NEW TRAK SYSTEM ID |
| ▮ | | 12/12/2007 | FOR | 12/12/07 - 16:25 - 09714 | NEW TRAK SYSTEM ID |
| ▮ | | 12/12/2007 | FOR | ments: Judge cutoff hearing | NEW TRAK SYSTEM ID |
| ▮ | | 12/12/2007 | FOR | calendar. Need to reset 12/12 | NEW TRAK SYSTEM ID |
| ▮ | | 12/12/2007 | FOR | hearing.   . Status: Active, | NEW TRAK SYSTEM ID |
| ▮ | | 12/12/2007 | FOR | approval not required. | NEW TRAK SYSTEM ID |
| ▮ | | 12/11/2007 | FOR | 12/10/07 - 21:16 - 32012 | NEW TRAK SYSTEM ID |
| ▮ | | 12/11/2007 | FOR | Uploaded Comment: READY FOR HEARING | NEW TRAK SYSTEM ID |
| ▮ | | 12/11/2007 | FOR | (DIS) | NEW TRAK SYSTEM ID |
| ▮ | | 12/11/2007 | FOR | 12/10/07 - 21:16 - 32012 | NEW TRAK SYSTEM ID |
| ▮ | | 12/11/2007 | FOR | Uploaded Comment: MSJ SET 12/12/07 | NEW TRAK SYSTEM ID |
| ▮ | | 12/11/2007 | FOR | (CAL) NT (DIS) | NEW TRAK SYSTEM ID |
| ▮ | | 12/10/2007 | DM | AUTHORIZED: RANDALL NORDLUND, ESQ. IMAGED AS ARTP, | GEVONA LEE |
| ▮ | | 12/10/2007 | DM | GLEE1@2863. | GEVONA LEE |
| ▮ | | 12/10/2007 | DM | ACTION/RESULT CD CHANGED FROM LMDC TO OAAI | GEVONA LEE |
| ▮ | | 12/10/2007 | DM | U3P - STS SENT AUTH VIA FAX, PLACED ON HOLD AND | CANDACE WILLIAMS |
| ▮ | | 12/10/2007 | DM | CALL DISCONNECTED CWILLIAMS/6761 | CANDACE WILLIAMS |
| ▮ | | 12/10/2007 | DM | ACTION/RESULT CD CHANGED FROM LMDC TO LMDC | CANDACE WILLIAMS |
| ▮ | | 12/07/2007 | DM | TT UA 3/P FAXING IN ARTP ADV 24 HOUR TURNAROUND | PAUL VILSMEIER |
| ▮ | | 12/07/2007 | DM | SGODWIN 874-6833 | PAUL VILSMEIER |
| ▮ | | 12/07/2007 | DM | ACTION/RESULT CD CHANGED FROM NOTE TO LMDC | PAUL VILSMEIER |
| ▮ | | 12/07/2007 | DM | 3RD C.O TO DISCUSS PMT ARRANGEMENTS. I FAXED AUTH | SHOUA LOR |

**Loan History**

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| | | 12/07/2007 | DM | FORM TO 3053474077. ERIC 6841 | SHOUA LOR |
| | | 12/07/2007 | DM | ACTION/RESULT CD CHANGED FROM BRUN TO NOTE | SHOUA LOR |
| | INQ | 12/07/2007 | NT | Ltr fxd: Randy N | SHOUA LOR |
| | INQ | 12/07/2007 | NT | Fax number: 3053474077 | SHOUA LOR |
| | INQ | 12/07/2007 | NT | Letter: 2:68 | SHOUA LOR |
| | INQ | 12/07/2007 | NT | Copy not mailed to customer. | SHOUA LOR |
| | | 12/07/2007 | OL | WDOYCUS - RELEASE OF INFO COVER LTR & AU | SHOUA LOR |
| | | 12/04/2007 | FOR | 12/03/07 - 21:51 - 32012 | NEW TRAK SYSTEM ID |
| | | 12/04/2007 | FOR | Uploaded Comment: FILE TO ATTY FOR | NEW TRAK SYSTEM ID |
| | | 12/04/2007 | FOR | REVIEW  (DIS) | NEW TRAK SYSTEM ID |
| | | 12/04/2007 | FOR | 12/03/07 - 21:51 - 32012 | NEW TRAK SYSTEM ID |
| | | 12/04/2007 | FOR | Uploaded Comment: MSJ SET 12/12/07 | NEW TRAK SYSTEM ID |
| | | 12/04/2007 | FOR | (CAL) NT (DIS) | NEW TRAK SYSTEM ID |
| | | 12/03/2007 | FSV | INSP TYPE F ORDERED;    REQ CD =AUTO DELQ | SYSTEM ID |
| | | 12/03/2007 | FOR | 12/03/07 - 13:22 - 16623 | NEW TRAK SYSTEM ID |
| | | 12/03/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 12/03/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| | | 12/03/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |
| | | 12/03/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| | | 12/03/2007 | FOR | 12/03/07 - 13:22 - 16623 | NEW TRAK SYSTEM ID |
| | | 12/03/2007 | FOR | to Client. Status: Active, | NEW TRAK SYSTEM ID |
| | | 12/03/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| | | 11/30/2007 | FOR | 11/30/07 - 16:45 - 17482 | NEW TRAK SYSTEM ID |
| | | 11/30/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 11/30/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| | | 11/30/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| | | 11/30/2007 | FOR | Client to 12/14/2007. Reason: Court | NEW TRAK SYSTEM ID |
| | | 11/30/2007 | FOR | 11/30/07 - 16:45 - 17482 | NEW TRAK SYSTEM ID |
| | | 11/30/2007 | FOR | Delay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| | | 11/30/2007 | FOR | release docs sent to clerk; as of | NEW TRAK SYSTEM ID |
| | | 11/30/2007 | FOR | 11/30/07 the original docs have not | NEW TRAK SYSTEM ID |
| | | 11/30/2007 | FOR | been returned by the clerk; will fol | NEW TRAK SYSTEM ID |
| | | 11/30/2007 | FOR | 11/30/07 - 16:45 - 17482 | NEW TRAK SYSTEM ID |
| | | 11/30/2007 | FOR | low up on 12/14/07  . Status: | NEW TRAK SYSTEM ID |
| | | 11/30/2007 | FOR | Active, awaiting approval. | NEW TRAK SYSTEM ID |

**Loan History**

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| | | 11/28/2007 | FOR | 11/28/07 - 12:04 - 32012 | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | Uploaded Comment: FILE TO JASON | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | 11/28 (DIS) | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | 11/28/07 - 12:04 - 32012 | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | Uploaded Comment: MSJ SET 12/12/07 | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | (CAL) NT (DIS) | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | 11/28/07 - 09:32 - 35704 | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | step Judgment Entered to | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | 12/12/2007. Reason: Hearing to Heari | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | 11/28/07 - 09:32 - 35704 | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | ng Delay. Comments: HEARING SET | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | 12/12/07 -JUDGES CALENDAR SUSPENDED | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | . Status: Active, approval not | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | required. | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | 11/27/07 - 20:58 - 09714 | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | step Judgment Entered to 12/6/2007. | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | Reason: Judge Delay. Comments: Judge | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | 11/27/07 - 20:58 - 09714 | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | suspended calendar for 3rd time. | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | Need to reset hearing.  . Status: | NEW TRAK SYSTEM ID |
| | | 11/28/2007 | FOR | Active, approval not required. | NEW TRAK SYSTEM ID |
| | | 11/20/2007 | D28 | FORCED BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| | | 11/19/2007 | FSV | INSP TP F RESULTS RCVD;  ORD DT=11/02/07 | SYSTEM ID |
| | LMT | 11/19/2007 | NT | CAMPAIGN: new wout (reg mail) | ROSEMARY LOVE |
| | | 11/16/2007 | ET | ARM CHANGE NOTICE SCHEDULED FOR   11/16/07 | SYSTEM ID |
| | PARPK | 11/14/2007 | NT | rec. incomp. wout. missing bk stmt. Poi. Inc. | RICKEY YOUNG |
| | PARPK | 11/14/2007 | NT | 7900. Exp. 4500 rfd. illness. order f/c. imaged as | RICKEY YOUNG |
| | PARPK | 11/14/2007 | NT | wout. sent to Latina Dawn. | RICKEY YOUNG |
| | | 11/13/2007 | FOR | 11/13/07 - 10:37 - 32677 | NEW TRAK SYSTEM ID |
| | | 11/13/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 11/13/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▬ | | 11/13/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | 11/13/07 - 10:37 - 32677 | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | to Client. Status: Active, | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | 11/12/07 - 19:18 - 47491 | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | Client to 11/22/2007. Reason: Court | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | 11/12/07 - 19:18 - 47491 | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | Delay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | release docs sent to clerk; as of | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | 11/12/07 the original docs have not | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | been returned by the clerk; will fol | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | 11/12/07 - 19:18 - 47491 | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | low up on 11/22/07   Due date | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | pushed forward from weekend or | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | holiday to next available business | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | day. Date moved from 11/22/2007 to 1 | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | 11/12/07 - 19:18 - 47491 | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | 1/23/2007.. Status: Active, | NEW TRAK SYSTEM ID |
| ▬ | | 11/13/2007 | FOR | awaiting approval. | NEW TRAK SYSTEM ID |
| ▬ | | 11/09/2007 | CBR | FORECLOSURE STARTED | SYSTEM ID |
| ▬ | | 11/09/2007 | CBR | DELINQUENT:  180+ DAYS | SYSTEM ID |
| ▬ | | 11/09/2007 | CBR | CHANGE IN PRIMARY BORROWERS ADDR | SYSTEM ID |
| ▬ | | 11/02/2007 | FSV | INSP TYPE F ORDERED;    REQ CD =AUTO DELQ | SYSTEM ID |
| ▬ | | 11/02/2007 | FOR | 11/02/07 - 11:57 - 32012 | NEW TRAK SYSTEM ID |
| ▬ | | 11/02/2007 | FOR | Uploaded Comment: MSJ SET 11/21/07 | NEW TRAK SYSTEM ID |
| ▬ | | 11/02/2007 | FOR | (CAL) NT (DIS) | NEW TRAK SYSTEM ID |
| ▬ | | 11/02/2007 | FOR | 11/02/07 - 11:57 - 32012 | NEW TRAK SYSTEM ID |
| ▬ | | 11/02/2007 | FOR | Uploaded Comment: 2ND HALF DUE OUT | NEW TRAK SYSTEM ID |
| ▬ | | 11/02/2007 | FOR | 11/14 (DIS) | NEW TRAK SYSTEM ID |
| ▬ | | 10/31/2007 | FOR | 10/31/07 - 11:00 - 27892 | NEW TRAK SYSTEM ID |
| ▬ | | 10/31/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ███████ | | 10/31/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| ███████ | | 10/31/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |
| ███████ | | 10/31/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| ███████ | | 10/31/2007 | FOR | 10/31/07 - 11:00 - 27892 | NEW TRAK SYSTEM ID |
| ███████ | | 10/31/2007 | FOR | to Client. Status: Active, | NEW TRAK SYSTEM ID |
| ███████ | | 10/31/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | 10/30/07 - 15:26 - 47491 | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | Client to 11/10/2007. Reason: Court | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | 10/30/07 - 15:26 - 47491 | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | Delay. Comments: Awaiting the | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | clerks to release the docs back to | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | our office. Once the docs have been | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | received, we will forward. Will foll | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | 10/30/07 - 15:26 - 47491 | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | ow up on 11/10/07 Thank you   Due | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | date pushed forward from weekend or | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | holiday to next available business | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | day. Date moved from 11/10/2007 to 1 | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | 10/30/07 - 15:26 - 47491 | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | 1/12/2007.. Status: Active, | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | awaiting approval. | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | 10/30/07 - 12:04 - 32012 | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | Uploaded Comment: FILE TO CHRISTINA | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | 10/30 | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | 10/30/07 - 12:04 - 32012 | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | Uploaded Comment: MSJ SET 11/21/07 | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | (CAL) NT | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | 10/30/07 - 10:13 - 35704 | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | step Judgment Entered to | NEW TRAK SYSTEM ID |
| ███████ | | 10/30/2007 | FOR | 11/21/2007. Reason: Hearing to Heari | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▇ | | 10/30/2007 | FOR | 10/30/07 - 10:13 - 35704 | NEW TRAK SYSTEM ID |
| ▇ | | 10/30/2007 | FOR | ng Delay. Comments: HEARING SET | NEW TRAK SYSTEM ID |
| ▇ | | 10/30/2007 | FOR | 11/21/07 -JUDGE'S CALENDAR | NEW TRAK SYSTEM ID |
| ▇ | | 10/30/2007 | FOR | SUSPENDED   . Status: Active, | NEW TRAK SYSTEM ID |
| ▇ | | 10/30/2007 | FOR | awaiting approval. | NEW TRAK SYSTEM ID |
| ▇ | LMT | 10/30/2007 | NT | CAMPAIGN: new wout (reg mail) | ROSEMARY LOVE |
| ▇ | | 10/29/2007 | FOR | 10/26/07 - 21:11 - 32012 | NEW TRAK SYSTEM ID |
| ▇ | | 10/29/2007 | FOR | Uploaded Comment: SUSPENDED. F/U | NEW TRAK SYSTEM ID |
| ▇ | | 10/29/2007 | FOR | 11/6 | NEW TRAK SYSTEM ID |
| ▇ | | 10/29/2007 | FOR | 10/26/07 - 21:11 - 32012 | NEW TRAK SYSTEM ID |
| ▇ | | 10/29/2007 | FOR | Uploaded Comment: HEARING SET 10/25 | NEW TRAK SYSTEM ID |
| ▇ | | 10/29/2007 | FOR | NOT HEARD. CAL | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | 10/26/07 - 16:39 - 09714 | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | step Judgment Entered to 11/2/2007. | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | Reason: Judge Delay. Comments: Judge | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | 10/26/07 - 16:39 - 09714 | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR |  suspended hearing cal on 10/25. | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | Need to reset hearing   . Status: | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | Active, awaiting approval. | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | 10/26/07 - 12:13 - 27892 | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | Intercom From: Donnett Jones, | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | Fidelity - To: Katherine Montes | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | (at-stern) / Message: This has been | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | forwarded to your state rep Kim Sanf | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | 10/26/07 - 12:13 - 27892 | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | ord. | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | 10/25/07 - 17:25 - 09714 | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | step Judgment Entered to | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | 10/26/2007. Reason: Judge Delay. Com | NEW TRAK SYSTEM ID |
| ▇ | | 10/25/07 - 17:25 - 09714 | FOR | 10/25/07 - 17:25 - 09714 | NEW TRAK SYSTEM ID |
| ▇ | | 10/26/2007 | FOR | ments: Await hearing results.   . | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| | | 10/26/2007 | FOR | Status: Active, awaiting approval. | NEW TRAK SYSTEM ID |
| | | 10/26/2007 | FOR | 10/25/07 - 16:55 - 43793 | NEW TRAK SYSTEM ID |
| | | 10/26/2007 | FOR | Intercom From: Katherine Montes, | NEW TRAK SYSTEM ID |
| | | 10/26/2007 | FOR | at-stern - To: Donnett Jones | NEW TRAK SYSTEM ID |
| | | 10/26/2007 | FOR | (Fidelity) / Message: Please be | NEW TRAK SYSTEM ID |
| | | 10/26/2007 | FOR | advised that there is $2,549.70 incl | NEW TRAK SYSTEM ID |
| | | 10/26/2007 | FOR | 10/25/07 - 16:55 - 43793 | NEW TRAK SYSTEM ID |
| | | 10/26/2007 | FOR | uded in the  advances  quote that | NEW TRAK SYSTEM ID |
| | | 10/26/2007 | FOR | is NOT collectible. This is from | NEW TRAK SYSTEM ID |
| | | 10/26/2007 | FOR | previous attorney fees that were | NEW TRAK SYSTEM ID |
| | | 10/26/2007 | FOR | not with our firm. Thank you. | NEW TRAK SYSTEM ID |
| | | 10/25/2007 | FOR | 10/25/07 - 13:57 - 48661 | NEW TRAK SYSTEM ID |
| | | 10/25/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 10/25/2007 | FOR | event: User has ended the Issue | NEW TRAK SYSTEM ID |
| | | 10/25/2007 | FOR | associated with this loan. Issue | NEW TRAK SYSTEM ID |
| | | 10/25/2007 | FOR | Type: Reinstatement Quote Request. C | NEW TRAK SYSTEM ID |
| | | 10/25/2007 | FOR | 10/25/07 - 13:57 - 48661 | NEW TRAK SYSTEM ID |
| | | 10/25/2007 | FOR | omments: Reinstatement figures will | NEW TRAK SYSTEM ID |
| | | 10/25/2007 | FOR | be sent to borrower as soon as | NEW TRAK SYSTEM ID |
| | | 10/25/2007 | FOR | possible.. | NEW TRAK SYSTEM ID |
| | | 10/25/2007 | FOR | 10/25/07 - 13:55 - 48661 | NEW TRAK SYSTEM ID |
| | | 10/25/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 10/25/2007 | FOR | event: User has approved the issue. | NEW TRAK SYSTEM ID |
| | | 10/25/2007 | FOR | issue type: Reinstatement Quote | NEW TRAK SYSTEM ID |
| | | 10/25/2007 | FOR | Request. Status: Active, Approved. | NEW TRAK SYSTEM ID |
| | | 10/25/2007 | NT | Outstanding FC Advances =2116.50 | HOLLY BREWER |
| | | 10/25/2007 | NT | Other Fees =15.00 | HOLLY BREWER |
| | | 10/25/2007 | NT | BPO/Appraisal =110.00 | HOLLY BREWER |
| | | 10/25/2007 | NT | Escrow Advances =0.00 | HOLLY BREWER |
| | | 10/25/2007 | NT | Input Prop Pres =0.00 | HOLLY BREWER |
| | | 10/25/2007 | NT | Total =59370.84 | HOLLY BREWER |
| | BKR20 | 10/25/2007 | CIT | 002 DONE 10/25/07 BY TLR 29128 | HOLLY BREWER |
| | BKR20 | 10/25/2007 | CIT | TSK TYP 860-REINSTATEMENT Q | HOLLY BREWER |
| | BKR20 | 10/25/2007 | CIT | 002 Reinstatement Quote Good Thru:11/30/07 | HOLLY BREWER |
| | BKR20 | 10/25/2007 | CIT | 9PMT @3671.17=33040.53 | HOLLY BREWER |

# Loan History

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▉ | BKR20 | 10/25/2007 | CIT | 4PMT @3930.01=15720.04 | HOLLY BREWER |
| ▉ | BKR20 | 10/25/2007 | CIT | 1 pmt @3930.01 | HOLLY BREWER |
| ▉ | BKR20 | 10/25/2007 | CIT | Late Charges =2812.72 | HOLLY BREWER |
| ▉ | BKR20 | 10/25/2007 | CIT | Unapplied Credit =2657.66 | HOLLY BREWER |
| ▉ | BKR20 | 10/25/2007 | CIT | Inspections =145.50 | HOLLY BREWER |
| ▉ | BKR20 | 10/25/2007 | CIT | Advances =4138.20 | HOLLY BREWER |
| ▉ | BKR20 | 10/25/2007 | CIT | 002 Reinstatement Quote Good Thru:11/30/07 | HOLLY BREWER |
| ▉ | BKR20 | 10/25/2007 | CIT | 9PMT @3671.17=33040.53 | HOLLY BREWER |
| ▉ | BKR20 | 10/25/2007 | CIT | 4PMT @3930.01=15720.04 | HOLLY BREWER |
| ▉ | BKR20 | 10/25/2007 | CIT | 1 pmt @3930.01 | HOLLY BREWER |
| ▉ | BKR20 | 10/25/2007 | CIT | Late Charges =2812.72 | HOLLY BREWER |
| ▉ | BKR20 | 10/25/2007 | CIT | Unapplied Credit =2657.66 | HOLLY BREWER |
| ▉ | BKR20 | 10/25/2007 | CIT | Inspections =145.50 | HOLLY BREWER |
| ▉ | BKR20 | 10/25/2007 | CIT | Advances =4138.20 | HOLLY BREWER |
| ▉ | | 10/24/2007 | FOR | 10/24/07 - 13:39 - 48704 | NEW TRAK SYSTEM ID |
| ▉ | | 10/24/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▉ | | 10/24/2007 | FOR | event: User has created a | NEW TRAK SYSTEM ID |
| ▉ | | 10/24/2007 | FOR | Process-Level issue for this | NEW TRAK SYSTEM ID |
| ▉ | | 10/24/2007 | FOR | loan.Issue Type: Reinstatement Quote | NEW TRAK SYSTEM ID |
| ▉ | | 10/24/2007 | FOR | 10/24/07 - 13:39 - 48704 | NEW TRAK SYSTEM ID |
| ▉ | | 10/24/2007 | FOR |  Request. Issue Comments: B1 is | NEW TRAK SYSTEM ID |
| ▉ | | 10/24/2007 | FOR | requesting RI good for 30 days to | NEW TRAK SYSTEM ID |
| ▉ | | 10/24/2007 | FOR | be sent to property address. | NEW TRAK SYSTEM ID |
| ▉ | | 10/24/2007 | FOR | Status: Active | NEW TRAK SYSTEM ID |
| ▉ | | 10/24/2007 | DM | B1 CI VER INFO. ADV LOAN IS IN FCL, XFRD CALL TO | GURURAJ LAXMAN |
| ▉ | | 10/24/2007 | DM | LOSS MIT. | GURURAJ LAXMAN |
| ▉ | | 10/24/2007 | DM | ACTION/RESULT CD CHANGED FROM LMDC TO BRUN | GURURAJ LAXMAN |
| ▉ | | 10/24/2007 | DM | B1 CALLED ABOUT RI-ADV WOULD NEED TO CONTACT | RODERICK ALEXANDER |
| ▉ | | 10/24/2007 | DM | ATTNY-WILL REQ THRU NEWTRAK | RODERICK ALEXANDER |
| ▉ | | 10/24/2007 | DM | ACTION/RESULT CD CHANGED FROM BRTR TO LMDC | RODERICK ALEXANDER |
| ▉ | | 10/24/2007 | DM | T B1. VAI. TRANSF TO LOSS MIT. C.GIBSON-DUNAWAY | CAREROSEBIA DUNAWAY |
| ▉ | | 10/24/2007 | DM | 6708 | CAREROSEBIA DUNAWAY |
| ▉ | | 10/24/2007 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO BRTR | CAREROSEBIA DUNAWAY |
| ▉ | | 10/24/2007 | DM | GAVE 800 # TO FAX WKOOU-MMARTIN | THERESA BOCCHINO |
| ▉ | | 10/24/2007 | DM | ACTION/RESULT CD CHANGED FROM LMDC TO OAAI | THERESA BOCCHINO |

**Loan History**

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ | | 10/24/2007 | DM | SPK TO H/O AND CCRC REP; ADV TO SEND WK03 TO 800#. | CHARLES OLIVARES |
| ▮ | | 10/24/2007 | DM | SHE UNDERSTOOD. OLIVARES 6164 | CHARLES OLIVARES |
| ▮ | | 10/24/2007 | DM | ACTION/RESULT CD CHANGED FROM LMDC TO LMDC | CHARLES OLIVARES |
| ▮ | FCL | 10/24/2007 | NT | b1 ci says he dont want the house to be foreclosed | PATRICK JAY POLINAR |
| ▮ | FCL | 10/24/2007 | NT | trans fcl dept -patrick p 73800 | PATRICK JAY POLINAR |
| ▮ | | 10/19/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ | | 10/18/2007 | ET | ARM CHANGE NOTICE SCHEDULED FOR  10/19/07 | SYSTEM ID |
| ▮ | | 10/18/2007 | FOR | 10/17/07 - 08:32 - 27892 | NEW TRAK SYSTEM ID |
| ▮ | | 10/18/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 10/18/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| ▮ | | 10/18/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |
| ▮ | | 10/18/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| ▮ | | 10/18/2007 | FOR | 10/17/07 - 08:32 - 27892 | NEW TRAK SYSTEM ID |
| ▮ | | 10/18/2007 | FOR | to Client. Status: Active, | NEW TRAK SYSTEM ID |
| ▮ | | 10/18/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | FOR | 10/16/07 - 21:21 - 32012 | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | FOR | Uploaded Comment: READY FOR HEARING. | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | FOR | 10/16/07 - 21:21 - 32012 | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | FOR | Uploaded Comment: MSJ SET 10/25/07 | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | FOR | (CAL) NT | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | FOR | 10/16/07 - 07:58 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | FOR | Client to 10/30/2007. Reason: Court | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | FOR | 10/16/07 - 07:58 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | FOR | Delay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | FOR | release docs sent to clerk; as of | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | FOR | 10/16/07 the original docs have not | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | FOR | been returned by the clerk; will fol | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | FOR | 10/16/07 - 07:58 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | FOR | low up on 10/30/07  . Status: | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | FOR | Active, awaiting approval. | NEW TRAK SYSTEM ID |
| ▮ | | 10/17/2007 | PPT | FILE CLOSED      (2)    COMPLETED 10/17/07 | JENEE ROBLEDO |
| ▮ | | 10/17/2007 | PPT | PURSUE PROP PRES    (1)   COMPLETED 10/17/07 | JENEE ROBLEDO |

# Loan History

**Date Data as-of:** March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▇ | | 10/16/2007 | FSV | INSP TP F RESULTS RCVD;  ORD DT=10/03/07 | SYSTEM ID |
| ▇ | | 10/12/2007 | CBR | FORECLOSURE STARTED | SYSTEM ID |
| ▇ | | 10/12/2007 | CBR | DELINQUENT:  180+ DAYS | SYSTEM ID |
| ▇ | | 10/09/2007 | FOR | 10/09/07 - 16:59 - 32012 | NEW TRAK SYSTEM ID |
| ▇ | | 10/09/2007 | FOR | Uploaded Comment: 2ND HALF DUE OUT | NEW TRAK SYSTEM ID |
| ▇ | | 10/09/2007 | FOR | 10/18/07 (NTIEE) | NEW TRAK SYSTEM ID |
| ▇ | | 10/09/2007 | FOR | 10/09/07 - 16:59 - 32012 | NEW TRAK SYSTEM ID |
| ▇ | | 10/09/2007 | FOR | Uploaded Comment: MSJ SET 10/25/07 | NEW TRAK SYSTEM ID |
| ▇ | | 10/09/2007 | FOR | (CAL) NT (NTIEE) | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | 10/08/07 - 13:16 - 16623 | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | 10/08/07 - 13:16 - 16623 | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR |  to Client. Status: Active, | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | 10/08/07 - 11:15 - 47491 | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | Client to 10/15/2007. Reason: Court | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | 10/08/07 - 11:15 - 47491 | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | Delay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | release docs sent to clerk; as of | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | 10/8/07 the original docs have not | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | been returned by the clerk; will fol | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | 10/08/07 - 11:15 - 47491 | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | low up on 10/15/07  . Status: | NEW TRAK SYSTEM ID |
| ▇ | | 10/08/2007 | FOR | Active, awaiting approval. | NEW TRAK SYSTEM ID |
| ▇ | | 10/05/2007 | FOR | 10/04/07 - 16:38 - 32012 | NEW TRAK SYSTEM ID |
| ▇ | | 10/05/2007 | FOR | Uploaded Comment: FILE TO LANCE FOR | NEW TRAK SYSTEM ID |
| ▇ | | 10/05/2007 | FOR | REVIEW OF RE-NOTICE 10/4 (NTIEE) | NEW TRAK SYSTEM ID |
| ▇ | | 10/05/2007 | FOR | 10/04/07 - 16:38 - 32012 | NEW TRAK SYSTEM ID |
| ▇ | | 10/05/2007 | FOR | Uploaded Comment: MSJ SET 10/25/07 | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| | | 10/05/2007 | FOR | (CAL) NT (NTIEE) | NEW TRAK SYSTEM ID |
| | PARPK | 10/05/2007 | NT | RCVD WOUT/INCOMPLETE. MISSING POI, PO BNK STMNT. | MARY GRACIA |
| | PARPK | 10/05/2007 | NT | INC:7900 EXP:6339 RFD:HEALTH. IMAGED AS WOUT | MARY GRACIA |
| | PARPK | 10/05/2007 | NT | FWD TO LATINA DAWN. ORDER FC GTC 11/05/07 | MARY GRACIA |
| | PARPK | 10/05/2007 | NT | JCOUNCIL2899 | MARY GRACIA |
| | | 10/04/2007 | FOR | 10/03/07 - 16:54 - 32012 | NEW TRAK SYSTEM ID |
| | | 10/04/2007 | FOR | Uploaded Comment: RESET. F/U 10/8 | NEW TRAK SYSTEM ID |
| | | 10/04/2007 | FOR | (NTIEE) | NEW TRAK SYSTEM ID |
| | | 10/04/2007 | FOR | 10/04/07 - 06:07 - 35704 | NEW TRAK SYSTEM ID |
| | | 10/04/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 10/04/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| | | 10/04/2007 | FOR | step Judgment Entered to | NEW TRAK SYSTEM ID |
| | | 10/04/2007 | FOR | 10/25/2007. Reason: Hearing to Heari | NEW TRAK SYSTEM ID |
| | | 10/04/2007 | FOR | 10/04/07 - 06:07 - 35704 | NEW TRAK SYSTEM ID |
| | | 10/04/2007 | FOR | ng Delay. Comments: HEARING SET | NEW TRAK SYSTEM ID |
| | | 10/04/2007 | FOR | 10/25/07 -JUDGE'S CALENDAR WAS | NEW TRAK SYSTEM ID |
| | | 10/04/2007 | FOR | SUSPENDED   . Status: Active, | NEW TRAK SYSTEM ID |
| | | 10/04/2007 | FOR | awaiting approval. | NEW TRAK SYSTEM ID |
| | | 10/04/2007 | FOR | 10/03/07 - 16:54 - 32012 | NEW TRAK SYSTEM ID |
| | | 10/04/2007 | FOR | Uploaded Comment: CALENDAR | NEW TRAK SYSTEM ID |
| | | 10/04/2007 | FOR | SUSPENDED. NEED TO  (NTIEE) | NEW TRAK SYSTEM ID |
| | | 10/03/2007 | FSV | INSP TYPE F ORDERED;    REQ CD =AUTO DELQ | SYSTEM ID |
| | | 10/03/2007 | FOR | 10/02/07 - 20:48 - 09714 | NEW TRAK SYSTEM ID |
| | | 10/03/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 10/03/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| | | 10/03/2007 | FOR | step Judgment Entered to 10/9/2007. | NEW TRAK SYSTEM ID |
| | | 10/03/2007 | FOR | Reason: Judge Delay. Comments: Calen | NEW TRAK SYSTEM ID |
| | | 10/03/2007 | FOR | 10/02/07 - 20:48 - 09714 | NEW TRAK SYSTEM ID |
| | | 10/03/2007 | FOR | dar suspended. Need to reset.   . | NEW TRAK SYSTEM ID |
| | | 10/03/2007 | FOR | Status: Active, awaiting approval. | NEW TRAK SYSTEM ID |
| | | 10/02/2007 | DM | EARLY IND: SCORE 208 MODEL EIFRC | SYSTEM ID |
| | | 09/26/2007 | FOR | 09/26/07 - 09:58 - 27892 | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |

**Loan History**

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| | | 09/26/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | 09/26/07 - 09:58 - 27892 | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | to Client. Status: Active, | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | 09/26/07 - 08:34 - 47491 | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | Client to 10/6/2007. Reason: Court D | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | 09/26/07 - 08:34 - 47491 | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | elay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | release docs sent to clerk on | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | 5/8/07 & 6/15/07; as of 9/26/07 the | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | original docs have not been returned | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | 09/26/07 - 08:34 - 47491 | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | by the clerk; will follow up on | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | 10/6/07   Due date pushed forward | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | from weekend or holiday to next | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | available business day. Date moved f | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | 09/26/07 - 08:34 - 47491 | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | rom 10/6/2007 to 10/8/2007.. | NEW TRAK SYSTEM ID |
| | | 09/26/2007 | FOR | Status: Active, awaiting approval. | NEW TRAK SYSTEM ID |
| | LMT | 09/26/2007 | NT | BLANKET CAMPAIGN: NEW WOUT (REG MAIL) | ROSEMARY LOVE |
| | ALT | 09/24/2007 | NT | Correct Index 1122 available for 8/06/07 | ANN MCCAHEN |
| | ALT | 09/24/2007 | NT | loaded as 4.9830 and should be loaded | ANN MCCAHEN |
| | ALT | 09/24/2007 | NT | as4.9833. Due to rounding there is not | ANN MCCAHEN |
| | ALT | 09/24/2007 | NT | impact to the rate change for | ANN MCCAHEN |
| | ALT | 09/24/2007 | NT | September. | ANN MCCAHEN |
| | TAX | 09/20/2007 | NT | recd tax cert redemption receipt dated 08/02/07 | EDUARDO COELLO |
| | TAX | 09/20/2007 | NT | for taxes pd on 06/14/07 for $27,274.68 for 2006 - | EDUARDO COELLO |
| | TAX | 09/20/2007 | NT | filed. | EDUARDO COELLO |
| | | 09/19/2007 | FOR | 09/19/07 - 13:14 - 27892 | NEW TRAK SYSTEM ID |
| | | 09/19/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 09/19/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| | | 09/19/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |

**Loan History**

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▆ | | 09/19/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| ▆ | | 09/19/2007 | FOR | 09/19/07 - 13:14 - 27892 | NEW TRAK SYSTEM ID |
| ▆ | | 09/19/2007 | FOR | to Client. Status: Active, | NEW TRAK SYSTEM ID |
| ▆ | | 09/19/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| ▆ | | 09/19/2007 | FOR | 09/19/07 - 11:00 - 47491 | NEW TRAK SYSTEM ID |
| ▆ | | 09/19/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▆ | | 09/19/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▆ | | 09/19/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| ▆ | | 09/19/2007 | FOR | Client to 9/26/2007. Reason: Court D | NEW TRAK SYSTEM ID |
| ▆ | | 09/19/2007 | FOR | 09/19/07 - 11:00 - 47491 | NEW TRAK SYSTEM ID |
| ▆ | | 09/19/2007 | FOR | elay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| ▆ | | 09/19/2007 | FOR | release docs sent to clerk on | NEW TRAK SYSTEM ID |
| ▆ | | 09/19/2007 | FOR | 5/8/07 & 6/15/07; as of 9/19/07 the | NEW TRAK SYSTEM ID |
| ▆ | | 09/19/2007 | FOR | original docs have not been returned | NEW TRAK SYSTEM ID |
| ▆ | | 09/19/2007 | FOR | 09/19/07 - 11:00 - 47491 | NEW TRAK SYSTEM ID |
| ▆ | | 09/19/2007 | FOR | by the clerk; will follow up on | NEW TRAK SYSTEM ID |
| ▆ | | 09/19/2007 | FOR | 9/26/07  . Status: Active, | NEW TRAK SYSTEM ID |
| ▆ | | 09/19/2007 | FOR | awaiting approval. | NEW TRAK SYSTEM ID |
| ▆ | | 09/19/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▆ | | 09/17/2007 | ET | ARM CHANGE NOTICE SCHEDULED FOR   09/18/07 | SYSTEM ID |
| ▆ | | 09/17/2007 | FSV | INSP TP F RESULTS RCVD;  ORD DT=09/03/07 | SYSTEM ID |
| ▆ | | 09/14/2007 | CBR | FORECLOSURE STARTED | SYSTEM ID |
| ▆ | | 09/14/2007 | CBR | DELINQUENT: 180+ DAYS | SYSTEM ID |
| ▆ | | 09/12/2007 | FOR | 09/12/07 - 05:34 - 32012 | NEW TRAK SYSTEM ID |
| ▆ | | 09/12/2007 | FOR | Uploaded Comment: 2nd HALF DUE OUT | NEW TRAK SYSTEM ID |
| ▆ | | 09/12/2007 | FOR | 9/24 (NTIEE) | NEW TRAK SYSTEM ID |
| ▆ | | 09/12/2007 | FOR | 09/12/07 - 05:34 - 32012 | NEW TRAK SYSTEM ID |
| ▆ | | 09/12/2007 | FOR | Uploaded Comment: MSJ SET 10/2/07 | NEW TRAK SYSTEM ID |
| ▆ | | 09/12/2007 | FOR | (CAL) NT (NTIEE) | NEW TRAK SYSTEM ID |
| ▆ | | 09/06/2007 | FOR | 09/06/07 - 09:29 - 27892 | NEW TRAK SYSTEM ID |
| ▆ | | 09/06/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▆ | | 09/06/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| ▆ | | 09/06/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |
| ▆ | | 09/06/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| ▆ | | 09/06/2007 | FOR | 09/06/07 - 09:29 - 27892 | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▉ | | 09/06/2007 | FOR | to Client. Status: Active, | NEW TRAK SYSTEM ID |
| ▉ | | 09/06/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| ▉ | | 09/06/2007 | FOR | 09/06/07 - 09:26 - 27892 | NEW TRAK SYSTEM ID |
| ▉ | | 09/06/2007 | FOR | Intercom From: Donnett Jones, | NEW TRAK SYSTEM ID |
| ▉ | | 09/06/2007 | FOR | Fidelity - To: Arlene Ramirez | NEW TRAK SYSTEM ID |
| ▉ | | 09/06/2007 | FOR | (at-wats) / Message: Your | NEW TRAK SYSTEM ID |
| ▉ | | 09/06/2007 | FOR | reprojection has been approved; howe | NEW TRAK SYSTEM ID |
| ▉ | | 09/06/2007 | FOR | 09/06/07 - 09:26 - 27892 | NEW TRAK SYSTEM ID |
| ▉ | | 09/06/2007 | FOR | ver is there something else that | NEW TRAK SYSTEM ID |
| ▉ | | 09/06/2007 | FOR | can be done to have the docs | NEW TRAK SYSTEM ID |
| ▉ | | 09/06/2007 | FOR | returned from the clerk s office? | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | 09/05/07 - 15:22 - 17482 | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | Client to 9/19/2007. Reason: Court D | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | 09/05/07 - 15:22 - 17482 | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | elay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | release docs sent to clerk on | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | 5/8/07 & 6/15/07; as of 9/5/07 the | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | original docs have not been returned | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | 09/05/07 - 15:22 - 17482 | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | by the clerk; will follow up on | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | 9/19/07  . Status: Active, | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | awaiting approval. | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | 09/05/07 - 07:02 - 43850 | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | Reprojection Type Hearing to | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | Hearing Delay for the step Judgment | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | 09/05/07 - 07:02 - 43850 | NEW TRAK SYSTEM ID |
| ▉ | | 09/05/2007 | FOR | Entered. Status: Active, Approved. | NEW TRAK SYSTEM ID |
| ▉ | | 09/04/2007 | DM | EARLY IND: SCORE 227 MODEL EIFRC | SYSTEM ID |
| ▉ | | 09/03/2007 | FSV | INSP TYPE F ORDERED;    REQ CD =AUTO DELQ | SYSTEM ID |
| ▉ | | 08/29/2007 | FOR | 08/29/07 - 10:14 - 32012 | NEW TRAK SYSTEM ID |

# Loan History

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ | | 08/29/2007 | FOR | Uploaded Comment: FILE TO CHRISTINA | NEW TRAK SYSTEM ID |
| ▮ | | 08/29/2007 | FOR | 8/28 (NTIEE) | NEW TRAK SYSTEM ID |
| ▮ | | 08/29/2007 | FOR | 08/29/07 - 10:14 - 32012 | NEW TRAK SYSTEM ID |
| ▮ | | 08/29/2007 | FOR | Uploaded Comment: MSJ SET 10/2/07 | NEW TRAK SYSTEM ID |
| ▮ | | 08/29/2007 | FOR | (CAL) NT (NTIEE) | NEW TRAK SYSTEM ID |
| ▮ | LMT | 08/29/2007 | NT | Blanket Campaign: New WOUT | ROSEMARY LOVE |
| ▮ | | 08/28/2007 | FOR | 08/28/07 - 11:12 - 35704 | NEW TRAK SYSTEM ID |
| ▮ | | 08/28/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 08/28/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▮ | | 08/28/2007 | FOR | step Judgment Entered to 10/2/2007. | NEW TRAK SYSTEM ID |
| ▮ | | 08/28/2007 | FOR | Reason: Hearing to Hearing Delay. Co | NEW TRAK SYSTEM ID |
| ▮ | | 08/28/2007 | FOR | 08/28/07 - 11:12 - 35704 | NEW TRAK SYSTEM ID |
| ▮ | | 08/28/2007 | FOR | mments: HEARING SET 10/2/07 | NEW TRAK SYSTEM ID |
| ▮ | | 08/28/2007 | FOR | -JUDGE'S CALENDAR SUSPENDED  . | NEW TRAK SYSTEM ID |
| ▮ | | 08/28/2007 | FOR | Status: Active, awaiting approval. | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | 08/21/07 - 14:49 - 27892 | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | 08/21/07 - 14:49 - 27892 | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR |  to Client. Status: Active, | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | 08/21/07 - 11:39 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | Client to 9/4/2007. Reason: Court De | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | 08/21/07 - 11:39 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | lay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | release docs sent to clerk on | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | 5/8/07 & 6/15/07; as of 8/21/07 the | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | original docs have not been returned | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | 08/21/07 - 11:39 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR |  by the clerk; will follow up on | NEW TRAK SYSTEM ID |

# Loan History

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ | | 08/21/2007 | FOR | 9/4/07          . | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | FOR | Status: Active, awaiting approval. | NEW TRAK SYSTEM ID |
| ▮ | | 08/21/2007 | D28 | FORCED BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ | | 08/17/2007 | ET | ARM CHANGE NOTICE SCHEDULED FOR   08/17/07 | SYSTEM ID |
| ▮ | | 08/10/2007 | CBR | FORECLOSURE STARTED | SYSTEM ID |
| ▮ | | 08/10/2007 | CBR | DELINQUENT:  180+ DAYS | SYSTEM ID |
| ▮ | | 08/10/2007 | FOR | 08/09/07 - 17:37 - 00007 | NEW TRAK SYSTEM ID |
| ▮ | | 08/10/2007 | FOR | Foreclosure (NIE Id# 3523912) | NEW TRAK SYSTEM ID |
| ▮ | | 08/10/2007 | FOR | picked up by firm LAW OFFICES OF | NEW TRAK SYSTEM ID |
| ▮ | | 08/10/2007 | FOR | DAVID J. STERN, P.A. at 8/9/2007 | NEW TRAK SYSTEM ID |
| ▮ | | 08/10/2007 | FOR | 5:30:41 PM by Glen Lewin | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | 08/09/07 - 11:45 - 27892 | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | 08/09/07 - 11:45 - 27892 | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | to Client. Status: Active, | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | 08/09/07 - 10:22 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | Client to 8/21/2007. Reason: Court D | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | 08/09/07 - 10:22 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | elay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | release docs sent to clerk on | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | 5/8/07 & 6/15/07; as of 8/9/07 the | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | original docs have not been returned | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | 08/09/07 - 10:22 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | by the clerk; will follow up on | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | 8/21/07   . Status: Active, | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | awaiting approval. | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | 08/09/07 - 13:37 - 00007 | NEW TRAK SYSTEM ID |
| ▮ | | 08/09/2007 | FOR | Foreclosure (NIE Id# 3523912) sent | NEW TRAK SYSTEM ID |

# Loan History

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ■■■■ | | 08/09/2007 | FOR | to LAW OFFICES OF DAVID J. STERN, | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/09/2007 | FOR | P.A. at 8/9/2007 10:49:32 AM by | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/09/2007 | FOR | Deloris Barnes | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/09/2007 | FOR | 08/09/07 - 10:49 - 36719 | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/09/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/09/2007 | FOR | event: User has ended the Issue | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/09/2007 | FOR | associated with this loan. Issue | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/09/2007 | FOR | Type: FC Escrow/Corp Breakdown Neede | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/09/2007 | FOR | 08/09/07 - 10:49 - 36719 | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/09/2007 | FOR | d. Comments: uploaded to nie- | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/09/2007 | FOR | breakdown. | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | 08/08/07 - 16:26 - 44773 | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | event: User has created a | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | Process-Level issue for this | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | loan.Issue Type: FC Escrow/Corp Brea | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | 08/08/07 - 16:26 - 44773 | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | kdown Needed. Issue Comments: | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | PLEASE PROVIDE A BREAKDOWN OF THE | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | $4,043.20 IN EXPENSE ADVANCES. | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | THANK YOU. Status: Active | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | 08/08/07 - 16:25 - 00007 | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | step Judgment Entered to 9/4/2007. | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | Reason: Hold Ended. Comments: Hold E | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | 08/08/07 - 16:25 - 00007 | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | nded  . Status: Active, approval | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | not required. | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | 08/08/07 - 16:25 - 44773 | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | Intercom From: Christina Andrews, | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | at-stern - To: Jason Bennett | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | (at-stern) / Subject: Hold | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | Request/Message: System updated for | NEW TRAK SYSTEM ID |
| ■■■■ | | 08/08/2007 | FOR | 08/08/07 - 16:25 - 44773 | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ | | 08/08/2007 | FOR | the following event: User has ended | NEW TRAK SYSTEM ID |
| ▮ | | 08/08/2007 | FOR | the hold. Hold End Date: | NEW TRAK SYSTEM ID |
| ▮ | | 08/08/2007 | FOR | 09/04/2007. Hold type: Judgment | NEW TRAK SYSTEM ID |
| ▮ | | 08/08/2007 | FOR | Hearing Set | NEW TRAK SYSTEM ID |
| ▮ | | 08/08/2007 | FOR | 08/08/07 - 15:00 - 09714 | NEW TRAK SYSTEM ID |
| ▮ | | 08/08/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 08/08/2007 | FOR | event: User has ended the Issue | NEW TRAK SYSTEM ID |
| ▮ | | 08/08/2007 | FOR | associated with this loan. Issue | NEW TRAK SYSTEM ID |
| ▮ | | 08/08/2007 | FOR | Type: FC Escrow/Corp Breakdown Neede | NEW TRAK SYSTEM ID |
| ▮ | | 08/08/2007 | FOR | 08/08/07 - 15:00 - 09714 | NEW TRAK SYSTEM ID |
| ▮ | | 08/08/2007 | FOR | d. Comments: c. | NEW TRAK SYSTEM ID |
| ▮ | | 08/07/2007 | FSV | INSP TP F RESULTS RCVD;  ORD DT=08/03/07 | SYSTEM ID |
| ▮ | | 08/06/2007 | FOR | 08/04/07 - 09:09 - 44773 | NEW TRAK SYSTEM ID |
| ▮ | | 08/06/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 08/06/2007 | FOR | event: User has created a | NEW TRAK SYSTEM ID |
| ▮ | | 08/06/2007 | FOR | Process-Level issue for this | NEW TRAK SYSTEM ID |
| ▮ | | 08/06/2007 | FOR | loan.Issue Type: FC Escrow/Corp Brea | NEW TRAK SYSTEM ID |
| ▮ | | 08/06/2007 | FOR | 08/04/07 - 09:09 - 44773 | NEW TRAK SYSTEM ID |
| ▮ | | 08/06/2007 | FOR | kdown Needed. Issue Comments: | NEW TRAK SYSTEM ID |
| ▮ | | 08/06/2007 | FOR | PLEASE PROVIDE BREAKDOWN OF ESCROW | NEW TRAK SYSTEM ID |
| ▮ | | 08/06/2007 | FOR | AND CORPORATE ADVANCES.  THANK YOU. | NEW TRAK SYSTEM ID |
| ▮ | | 08/06/2007 | FOR | Status: Active | NEW TRAK SYSTEM ID |
| ▮ | | 08/03/2007 | FSV | INSP TYPE F ORDERED;    REQ CD =AUTO DELQ | SYSTEM ID |
| ▮ | | 08/02/2007 | DM | EARLY IND: SCORE 227 MODEL EIFRC | SYSTEM ID |
| ▮ | | 07/31/2007 | FOR | 07/31/07 - 08:30 - 24910 | NEW TRAK SYSTEM ID |
| ▮ | | 07/31/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 07/31/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| ▮ | | 07/31/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |
| ▮ | | 07/31/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| ▮ | | 07/31/2007 | FOR | 07/31/07 - 08:30 - 24910 | NEW TRAK SYSTEM ID |
| ▮ | | 07/31/2007 | FOR | to Client. Status: Active, | NEW TRAK SYSTEM ID |
| ▮ | | 07/31/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| ▮ | | 07/30/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮ | | 07/30/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮ | | 07/30/2007 | DMD | 07/28/07 10:40:58  MSG ANS MACH | DAVOX INCOMING FILE |

# Loan History

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ | | 07/30/2007 | FOR | 07/30/07 - 16:44 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 07/30/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 07/30/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▮ | | 07/30/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| ▮ | | 07/30/2007 | FOR | Client to 8/9/2007. Reason: Court De | NEW TRAK SYSTEM ID |
| ▮ | | 07/30/2007 | FOR | 07/30/07 - 16:44 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 07/30/2007 | FOR | lay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| ▮ | | 07/30/2007 | FOR | release docs sent to clerk on | NEW TRAK SYSTEM ID |
| ▮ | | 07/30/2007 | FOR | 5/8/07 & 6/15/07; as of 7/30/07 the | NEW TRAK SYSTEM ID |
| ▮ | | 07/30/2007 | FOR | original docs have not been returned | NEW TRAK SYSTEM ID |
| ▮ | | 07/30/2007 | FOR | 07/30/07 - 16:44 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 07/30/2007 | FOR | by the clerk; will follow up on | NEW TRAK SYSTEM ID |
| ▮ | | 07/30/2007 | FOR | 8/9/07  . Status: Active, awaiting | NEW TRAK SYSTEM ID |
| ▮ | | 07/30/2007 | FOR | approval. | NEW TRAK SYSTEM ID |
| ▮ | TAX | 07/30/2007 | NT | Taxes paid current per Redemption Statement | YOLANDA COLE |
| ▮ | | 07/25/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮ | | 07/25/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮ | | 07/25/2007 | DMD | 07/25/07 13:48:43  MSG ANS MACH | DAVOX INCOMING FILE |
| ▮ | LMT | 07/25/2007 | NT | Blanket Campaign | ROSEMARY LOVE |
| ▮ | LMT | 07/25/2007 | NT | WOUT sent to borrower(s) | ROSEMARY LOVE |
| ▮ | | 07/23/2007 | FOR | 07/22/07 - 12:08 - 32012 | NEW TRAK SYSTEM ID |
| ▮ | | 07/23/2007 | FOR | Uploaded Comment: 1ST HALF DUE OUT | NEW TRAK SYSTEM ID |
| ▮ | | 07/23/2007 | FOR | 8/1 (NTIEE) | NEW TRAK SYSTEM ID |
| ▮ | | 07/23/2007 | FOR | 07/22/07 - 12:08 - 32012 | NEW TRAK SYSTEM ID |
| ▮ | | 07/23/2007 | FOR | Uploaded Comment: MSJ SET 9/4/07 | NEW TRAK SYSTEM ID |
| ▮ | | 07/23/2007 | FOR | (CAL). N/U. (NTIEE) | NEW TRAK SYSTEM ID |
| ▮ | | 07/19/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ | | 07/18/2007 | ET | ARM CHANGE NOTICE SCHEDULED FOR   07/19/07 | SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | 07/17/07 - 17:17 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | Client to 7/30/2007. Reason: Court D | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | 07/17/07 - 17:17 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | elay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ | | 07/18/2007 | FOR | release docs sent to clerk on | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | 5/8/07; as of 7/17/07 the original | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | docs have not been returned by the c | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | 07/17/07 - 17:17 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | lerk; will follow up on 7/30/07   . | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | Status: Active, awaiting approval. | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | 07/18/07 - 08:26 - 32677 | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | 07/18/07 - 08:26 - 32677 | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | to Client. Status: Active, | NEW TRAK SYSTEM ID |
| ▮ | | 07/18/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| ▮ | | 07/13/2007 | CBR | FORECLOSURE STARTED | SYSTEM ID |
| ▮ | | 07/13/2007 | CBR | DELINQUENT:  180+ DAYS | SYSTEM ID |
| ▮ | | 07/09/2007 | FSV | INSP TP F RESULTS RCVD;   ORD DT=07/04/07 | SYSTEM ID |
| ▮ | | 07/09/2007 | FOR | 07/09/07 - 08:28 - 27892 | NEW TRAK SYSTEM ID |
| ▮ | | 07/09/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 07/09/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| ▮ | | 07/09/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |
| ▮ | | 07/09/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| ▮ | | 07/09/2007 | FOR | 07/09/07 - 08:28 - 27892 | NEW TRAK SYSTEM ID |
| ▮ | | 07/09/2007 | FOR | to Client. Status: Active, | NEW TRAK SYSTEM ID |
| ▮ | | 07/09/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| ▮ | | 07/06/2007 | FOR | 07/06/07 - 15:08 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 07/06/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 07/06/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▮ | | 07/06/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| ▮ | | 07/06/2007 | FOR | Client to 7/17/2007. Reason: Court D | NEW TRAK SYSTEM ID |
| ▮ | | 07/06/2007 | FOR | 07/06/07 - 15:08 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 07/06/2007 | FOR | elay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| ▮ | | 07/06/2007 | FOR | release docs sent to clerk on | NEW TRAK SYSTEM ID |
| ▮ | | 07/06/2007 | FOR | 5/8/07; as of 7/6/07 the original | NEW TRAK SYSTEM ID |
| ▮ | | 07/06/2007 | FOR | docs have not been returned by the c | NEW TRAK SYSTEM ID |

# Loan History

**Date Data as-of:** March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ | | 07/06/2007 | FOR | 07/06/07 - 15:08 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 07/06/2007 | FOR | lerk; will follow up on 7/17/07  . | NEW TRAK SYSTEM ID |
| ▮ | | 07/06/2007 | FOR | Status: Active, awaiting approval. | NEW TRAK SYSTEM ID |
| ▮ | | 07/04/2007 | FSV | INSP TYPE F ORDERED;    REQ CD =AUTO DELQ | SYSTEM ID |
| ▮ | | 07/03/2007 | DM | EARLY IND: SCORE 235 MODEL EIFRC | SYSTEM ID |
| ▮ | EOY | 07/03/2007 | NT | Corrected Y to D interest field for 2007 YE | API CSRV |
| ▮ | EOY | 07/03/2007 | NT | reporting. Y to D amount converted subtracted | API CSRV |
| ▮ | EOY | 07/03/2007 | NT | negative AM principal payments. Correction added | API CSRV |
| ▮ | EOY | 07/03/2007 | NT | negative principal back in to ensure 2007 YE | API CSRV |
| ▮ | EOY | 07/03/2007 | NT | reporting accuracy. | API CSRV |
| ▮ | | 06/29/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮ | | 06/29/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮ | | 06/29/2007 | DMD | 06/30/07 10:26:01  MSG ANS MACH | DAVOX INCOMING FILE |
| ▮ | | 06/28/2007 | FOR | 06/28/07 - 03:12 - 32012 | NEW TRAK SYSTEM ID |
| ▮ | | 06/28/2007 | FOR | Uploaded Comment: FILE TO LANCE | NEW TRAK SYSTEM ID |
| ▮ | | 06/28/2007 | FOR | 6/26 W/RTNS (NTIEE) | NEW TRAK SYSTEM ID |
| ▮ | | 06/28/2007 | FOR | 06/28/07 - 03:12 - 32012 | NEW TRAK SYSTEM ID |
| ▮ | | 06/28/2007 | FOR | Uploaded Comment: MSJ SET 9/4/07 | NEW TRAK SYSTEM ID |
| ▮ | | 06/28/2007 | FOR | (CAL) (NTIEE) | NEW TRAK SYSTEM ID |
| ▮ | | 06/27/2007 | FOR | 06/27/07 - 10:55 - 00007 | NEW TRAK SYSTEM ID |
| ▮ | | 06/27/2007 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ▮ | | 06/27/2007 | FOR | following event: Judgment Figure | NEW TRAK SYSTEM ID |
| ▮ | | 06/27/2007 | FOR | Data Received, completed on | NEW TRAK SYSTEM ID |
| ▮ | | 06/27/2007 | FOR | 6/27/2007 | NEW TRAK SYSTEM ID |
| ▮ | | 06/27/2007 | FOR | 06/27/07 - 10:53 - 00007 | NEW TRAK SYSTEM ID |
| ▮ | | 06/27/2007 | FOR | Foreclosure - Judgment Figures (NIE | NEW TRAK SYSTEM ID |
| ▮ | | 06/27/2007 | FOR | Id# 3724656) picked up by firm LAW | NEW TRAK SYSTEM ID |
| ▮ | | 06/27/2007 | FOR | OFFICES OF DAVID J. STERN, P.A. at | NEW TRAK SYSTEM ID |
| ▮ | | 06/27/2007 | FOR | 6/27/2007 10:48:13 AM by Christian L | NEW TRAK SYSTEM ID |
| ▮ | | 06/27/2007 | FOR | 06/27/07 - 10:53 - 00007 | NEW TRAK SYSTEM ID |
| ▮ | | 06/27/2007 | FOR | opez | NEW TRAK SYSTEM ID |
| ▮ | | 06/27/2007 | FOR | 06/27/07 - 10:34 - 36124 | NEW TRAK SYSTEM ID |
| ▮ | | 06/27/2007 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ▮ | | 06/27/2007 | FOR | following event: Judgment Figure | NEW TRAK SYSTEM ID |
| ▮ | | 06/27/2007 | FOR | Data Referred, completed on | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▉ | | 06/27/2007 | FOR | 6/27/2007 | NEW TRAK SYSTEM ID |
| ▉ | | 06/27/2007 | FOR | 06/27/07 - 08:41 - 35704 | NEW TRAK SYSTEM ID |
| ▉ | | 06/27/2007 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ▉ | | 06/27/2007 | FOR | following event: Judgment Figure | NEW TRAK SYSTEM ID |
| ▉ | | 06/27/2007 | FOR | Data Requested, completed on | NEW TRAK SYSTEM ID |
| ▉ | | 06/27/2007 | FOR | 6/27/2007 | NEW TRAK SYSTEM ID |
| ▉ | | 06/27/2007 | FOR | 06/27/07 - 08:40 - 35704 | NEW TRAK SYSTEM ID |
| ▉ | | 06/27/2007 | FOR | User has completed the | NEW TRAK SYSTEM ID |
| ▉ | | 06/27/2007 | FOR | F91_JFIGDueDate data form with the | NEW TRAK SYSTEM ID |
| ▉ | | 06/27/2007 | FOR | following entries:  Judgment | NEW TRAK SYSTEM ID |
| ▉ | | 06/27/2007 | FOR | Figures Needed Good Through?: : 9/4/ | NEW TRAK SYSTEM ID |
| ▉ | | 06/27/2007 | FOR | 06/27/07 - 08:40 - 35704 | NEW TRAK SYSTEM ID |
| ▉ | | 06/27/2007 | FOR | 07 | NEW TRAK SYSTEM ID |
| ▉ | | 06/27/2007 | FOR | 06/27/07 - 10:47 - 00007 | NEW TRAK SYSTEM ID |
| ▉ | | 06/27/2007 | FOR | Foreclosure - Judgment Figures (NIE | NEW TRAK SYSTEM ID |
| ▉ | | 06/27/2007 | FOR | Id# 3724656) sent to LAW OFFICES OF | NEW TRAK SYSTEM ID |
| ▉ | | 06/27/2007 | FOR | DAVID J. STERN, P.A. at 6/27/2007 | NEW TRAK SYSTEM ID |
| ▉ | | 06/27/2007 | FOR | 10:40:38 AM by Sherrell Butler | NEW TRAK SYSTEM ID |
| ▉ | LMT | 06/27/2007 | NT | Blanket WOUT pkg sent to bwr | LUKE DEAN |
| ▉ | | 06/26/2007 | FOR | 06/26/07 - 14:20 - 36124 | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | Sherrell Butler - (Cont) - ally, or | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | another issue opened the day prior | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | to the actual g/t date needed.  We | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | apologize for any inconvenience this | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | 06/26/07 - 14:20 - 36124 | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR |  may cause. . | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | 06/26/07 - 14:20 - 36124 | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | event: User has ended the Issue | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | associated with this loan. Issue | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | Type: Jfigs Needed. Comments: Closed | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | 06/26/07 - 14:20 - 36124 | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR |  issue, Jfigs process opened. | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | Attorney will need to complete the | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | 1st event under the judgment | NEW TRAK SYSTEM ID |

**Loan History**

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▉ | | 06/26/2007 | FOR | figures process and provide good thr | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | 06/26/07 - 14:20 - 36124 | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | ough date in the Data Form (only | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | good through today s date). Please | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | note we can only provide figures | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | good through the current day (today) | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | 06/26/07 - 14:20 - 36124 | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | only. If figures with a future | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | date are needed, we recommend that | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | the interest be calculated manu | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | 06/26/07 - 14:20 - 36124 | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | Process opened 6/26/2007 by user | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | Sherrell Butler. | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | 06/26/07 - 14:20 - 36124 | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | event: User has approved the issue. | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | issue type: Jfigs Needed. Status: | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | Active, Approved. | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | 06/26/07 - 14:03 - 35704 | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | event: User has created a | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | Process-Level issue for this | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | loan.Issue Type: Jfigs Needed. Issue | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | 06/26/07 - 14:03 - 35704 | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | Comments: GOOD THRU 9/4/07 Status: | NEW TRAK SYSTEM ID |
| ▉ | | 06/26/2007 | FOR | Active | NEW TRAK SYSTEM ID |
| ▉ | | 06/22/2007 | CBR | FORECLOSURE STARTED | SYSTEM ID |
| ▉ | | 06/22/2007 | CBR | DELINQUENT: 180+ DAYS | SYSTEM ID |
| ▉ | | 06/22/2007 | FOR | 06/22/07 - 13:47 - 19695 | NEW TRAK SYSTEM ID |
| ▉ | | 06/22/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▉ | | 06/22/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| ▉ | | 06/22/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |
| ▉ | | 06/22/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| ▉ | | 06/22/2007 | FOR | 06/22/07 - 13:47 - 19695 | NEW TRAK SYSTEM ID |
| ▉ | | 06/22/2007 | FOR | to Client. Status: Active, | NEW TRAK SYSTEM ID |

**Loan History**

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ■■■■ | | 06/22/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/22/2007 | FOR | 06/22/07 - 12:51 - 34015 | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/22/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/22/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/22/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/22/2007 | FOR | Client to 7/6/2007. Reason: Court De | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/22/2007 | FOR | 06/22/07 - 12:51 - 34015 | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/22/2007 | FOR | lay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/22/2007 | FOR | release docs sent to clerk on | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/22/2007 | FOR | 5/8/07; as of 6/22/07 the original | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/22/2007 | FOR | docs have not been returned by the c | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/22/2007 | FOR | 06/22/07 - 12:51 - 34015 | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/22/2007 | FOR | lerk; will follow up on 7/6/07  . | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/22/2007 | FOR | Status: Active, awaiting approval. | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/19/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■■■■ | | 06/18/2007 | FOR | 06/14/07 - 15:06 - 35704 | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/18/2007 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/18/2007 | FOR | following event: Service Complete, | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/18/2007 | FOR | completed on 6/7/2007 | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/18/2007 | FOR | 06/15/07 - 04:45 - 32012 | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/18/2007 | FOR | Uploaded Comment: no d&d's, awt | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/18/2007 | FOR | rtns, 6/14 (NTIEE) | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/18/2007 | FOR | 06/15/07 - 04:44 - 32012 | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/18/2007 | FOR | Uploaded Comment: per provest web, | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/18/2007 | FOR | lds 6/7/07 (NTIEE) | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/15/2007 | ET | ARM CHANGE NOTICE SCHEDULED FOR   06/18/07 | SYSTEM ID |
| ■■■■ | | 06/15/2007 | FSV | INSP TP F RESULTS RCVD;  ORD DT=06/04/07 | SYSTEM ID |
| ■■■■ | | 06/15/2007 | FOR | SERVICE COMPLETED   (625)  COMPLETED 06/07/07 | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/12/2007 | FOR | 06/12/07 - 07:20 - 32677 | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/12/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/12/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/12/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/12/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/12/2007 | FOR | 06/12/07 - 07:20 - 32677 | NEW TRAK SYSTEM ID |
| ■■■■ | | 06/12/2007 | FOR |  to Client. Status: Active, | NEW TRAK SYSTEM ID |

# Loan History

**Date Data as-of:** March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ | | 06/12/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| ▮ | | 06/12/2007 | FOR | 06/12/07 - 06:27 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 06/12/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 06/12/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▮ | | 06/12/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| ▮ | | 06/12/2007 | FOR | Client to 6/22/2007. Reason: Court D | NEW TRAK SYSTEM ID |
| ▮ | | 06/12/2007 | FOR | 06/12/07 - 06:27 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 06/12/2007 | FOR | elay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| ▮ | | 06/12/2007 | FOR | release docs sent to clerk on | NEW TRAK SYSTEM ID |
| ▮ | | 06/12/2007 | FOR | 5/8/07; as of 6/12/07 the original | NEW TRAK SYSTEM ID |
| ▮ | | 06/12/2007 | FOR | docs have not been returned by the c | NEW TRAK SYSTEM ID |
| ▮ | | 06/12/2007 | FOR | 06/12/07 - 06:27 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 06/12/2007 | FOR | lerk; will follow up on 6/22/07 | NEW TRAK SYSTEM ID |
| ▮ | | 06/12/2007 | FOR | . Status: | NEW TRAK SYSTEM ID |
| ▮ | | 06/12/2007 | FOR | Active, awaiting approval. | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | 06/09/07 - 10:12 - 10371 | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | following event: Original Note Sent | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | to Attorney, completed on 6/6/2007 | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | 06/09/07 - 10:12 - 10371 | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | following event: Document requested | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | from Client, completed on 6/6/2007 | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | 06/09/07 - 10:11 - 10371 | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | User has completed the | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | OrigNoteCarrier_Dtl data form with | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | the following entries:  Is Original | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | Document Available?: : Other  Commen | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | ts:: : Sent LNA, original recorded | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | mortgage, and original title to | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | David Stern Fed Ex # 791697990657 | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | Overnight Carrier:: :  Tracking Num | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | 06/09/07 - 10:11 - 10371 | NEW TRAK SYSTEM ID |
| ▮ | | 06/11/2007 | FOR | ber:: : | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ██████ | | 06/08/2007 | FOR | 06/08/07 - 01:51 - 32012 | NEW TRAK SYSTEM ID |
| ██████ | | 06/08/2007 | FOR | Uploaded Comment: AWAIT SERVICE | NEW TRAK SYSTEM ID |
| ██████ | | 06/08/2007 | FOR | (NTIEE) | NEW TRAK SYSTEM ID |
| ██████ | | 06/08/2007 | FOR | 06/08/07 - 01:51 - 32012 | NEW TRAK SYSTEM ID |
| ██████ | | 06/08/2007 | FOR | Uploaded Comment: COMPLT FILED | NEW TRAK SYSTEM ID |
| ██████ | | 06/08/2007 | FOR | 06/1/07 (NTIEE) | NEW TRAK SYSTEM ID |
| ██████ | | 06/08/2007 | FOR | 06/08/07 - 00:18 - 32012 | NEW TRAK SYSTEM ID |
| ██████ | | 06/08/2007 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ██████ | | 06/08/2007 | FOR | following event: Original Note | NEW TRAK SYSTEM ID |
| ██████ | | 06/08/2007 | FOR | Received by Attorney, completed on | NEW TRAK SYSTEM ID |
| ██████ | | 06/08/2007 | FOR | 6/6/2007 (NTIEE) | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | 06/07/07 - 15:18 - 31969 | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | Process opened 6/7/2007 by user | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | Maria Ayala. | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | 06/07/07 - 15:18 - 31969 | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | following event: Complaint Filed, | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | completed on 6/1/2007 | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | 06/07/07 - 16:17 - 00007 | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | Foreclosure - Judgment Figures (NIE | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | Id# 3594151) sent to LAW OFFICES OF | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | DAVID J. STERN, P.A. at 6/7/2007 | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | 4:07:19 PM by Sherrell Butler | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | 06/07/07 - 16:17 - 00007 | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | following event: Judgment Figure | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | Data Received, completed on 6/7/2007 | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | 06/07/07 - 16:07 - 36124 | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | following event: Judgment Figure | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | Data Referred, completed on 6/7/2007 | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | 06/07/07 - 15:19 - 31969 | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | following event: Judgment Figure | NEW TRAK SYSTEM ID |
| ██████ | | 06/07/2007 | FOR | Data Requested, completed on | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ | | 06/07/2007 | FOR | 6/7/2007 | NEW TRAK SYSTEM ID |
| ▮ | | 06/07/2007 | FOR | 06/07/07 - 15:19 - 31969 | NEW TRAK SYSTEM ID |
| ▮ | | 06/07/2007 | FOR | User has completed the | NEW TRAK SYSTEM ID |
| ▮ | | 06/07/2007 | FOR | F91_JFIGDueDate data form with the | NEW TRAK SYSTEM ID |
| ▮ | | 06/07/2007 | FOR | following entries:  Judgment | NEW TRAK SYSTEM ID |
| ▮ | | 06/07/2007 | FOR | Figures Needed Good Through?: : 07/3 | NEW TRAK SYSTEM ID |
| ▮ | | 06/07/2007 | FOR | 06/07/07 - 15:19 - 31969 | NEW TRAK SYSTEM ID |
| ▮ | | 06/07/2007 | FOR | 0/07 | NEW TRAK SYSTEM ID |
| ▮ | | 06/07/2007 | FOR | FIRST LEGAL ACTION   (601)  COMPLETED 06/01/07 | NEW TRAK SYSTEM ID |
| ▮ | TAX20 | 06/07/2007 | CIT | 001 DONE 06/07/07 BY TLR 13859 | LUKAS ROHM |
| ▮ | TAX20 | 06/07/2007 | CIT | TSK TYP 551-TAX REQUEST FRO | LUKAS ROHM |
| ▮ | TAX20 | 06/07/2007 | CIT | 001 closing cit 551 paid 11/06 taxes 23655.89 base | LUKAS ROHM |
| ▮ | TAX20 | 06/07/2007 | CIT | 3618.79 penalty. rolling taxes lines to 11/07 | LUKAS ROHM |
| ▮ | | 06/06/2007 | FOR | 06/06/07 - 14:51 - 32012 | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | following event: Attorney Recd | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | Original Documents, completed on | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | 6/6/2007 (NTIEE) | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | 06/06/07 - 13:38 - 25451 | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | Reprojection Type Other for the | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | step Attorney Recd Original Document | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | 06/06/07 - 13:38 - 25451 | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | s. Status: Active, Approved. | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | 06/06/07 - 12:58 - 40264 | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | following event: Original Note | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | Requested, completed on 6/6/2007 | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | 06/06/07 - 12:58 - 40264 | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | User has completed the | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | OrigNoteReq_Dtl data form with the | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | following entries:  Special | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | Requirements:: :  Approaching Deadl | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | 06/06/07 - 12:58 - 40264 | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of:   March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ | | 06/06/2007 | FOR | ines:: : | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | 06/06/07 - 10:35 - 25451 | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | the step Complaint Filed. Status: Ac | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | 06/06/07 - 10:35 - 25451 | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | tive, Approved. | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | 06/06/07 - 12:57 - 40264 | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | step Attorney Recd Original | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | Documents to 6/20/2007. Reason: Othe | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | 06/06/07 - 12:57 - 40264 | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | r. Comments: original note not recd | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | . Status: Active, awaiting | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | approval. | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | 06/06/07 - 12:58 - 40264 | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | Process opened 6/6/2007 by user | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | Cynthia Zayas. | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | 06/06/07 - 08:23 - 31969 | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | step Complaint Filed to 6/7/2007. | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | Reason: Court Delay. Comments: COMPL | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | 06/06/07 - 08:23 - 31969 | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | T SENT FOR FILING ON 05/31/07, WILL | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | F/U ON 06/7/07   . Status: Active, | NEW TRAK SYSTEM ID |
| ▮ | | 06/06/2007 | FOR | awaiting approval. | NEW TRAK SYSTEM ID |
| ▮ | | 06/04/2007 | FSV | INSP TYPE F ORDERED;    REQ CD =AUTO DELQ | SYSTEM ID |
| ▮ | | 06/04/2007 | DM | EARLY IND: SCORE 244 MODEL EIFRC | SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | 06/01/07 - 00:24 - 32012 | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | following event: Title Report | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | Received, completed on 5/31/2007 | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ | | 06/01/2007 | FOR | (NTIEE) | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | 06/01/07 - 10:21 - 25744 | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | event: User has ended the Issue | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | associated with this loan. Issue | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | Type: Delinquent Taxes. Comments: A | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | 06/01/07 - 10:21 - 25744 | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | task has been entered in the client | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | system. Thank-You.. | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | 06/01/07 - 10:20 - 25744 | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | event: User has approved the issue. | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | issue type: Delinquent Taxes. | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | Status: Active, Approved. | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | 06/01/07 - 08:44 - 31847 | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | following event: Original Documents | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | Sent To Attorney, completed on | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | 6/1/2007 | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | 06/01/07 - 08:44 - 31847 | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | User has completed the | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | Document(s)Sent data form with the | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | following entries:  Document(s) | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | Sent: : Sent LNA, original recorded | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | 06/01/07 - 08:44 - 31847 | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | mortgage, and original title to | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | David Stern Fed Ex # 791697990657 | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | 06/01/07 - 01:29 - 32012 | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | Uploaded Comment: 05/31/07 await | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | return (NTIEE) | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | 06/01/07 - 01:29 - 32012 | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | Uploaded Comment: complaint sent | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | for filing (NTIEE) | NEW TRAK SYSTEM ID |
| ▮ | | 06/01/2007 | FOR | TITLE RECEIVED      (623)  COMPLETED 05/31/07 | NEW TRAK SYSTEM ID |
| ▮ | BKR | 06/01/2007 | CIT | 001 FOLIO #30-4924-001-2322, 2006 TAXES ARE | REBBECA ASIF |

# Loan History

**Date Data as-of:** March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▉ | BKR | 06/01/2007 | CIT | DELINQUENT IN THE AMOUNT OF $ 24,369.07 DUE BY | REBBECA ASIF |
| ▉ | BKR | 06/01/2007 | CIT | 5/31/07 PAYABLE TO: MIAMI-DADE COUNTY TAX | REBBECA ASIF |
| ▉ | BKR | 06/01/2007 | CIT | COLLECTOR | REBBECA ASIF |
| ▉ | | 05/31/2007 | FOR | 05/31/07 - 11:15 - 31773 | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | Intercom From: Etta Taylor, ResCap | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | - To: Kelly Rivera (Fidelity) / | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | Message: Foreclose in Deutsche Bank | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | Trust Company Americas as Trustee | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | 05/31/07 - 15:32 - 32012 | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | Uploaded Comment: 5/31/07 REQUESTED | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | PLAINTIFF INFO VIA NT (NTIEE) | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | 05/31/07 - 15:32 - 32012 | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | Uploaded Comment: TCLAIM SENT - | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | FILE TO CARL FOR WRITE-UP 5/31/07 | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | (NTIEE) | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | 05/31/07 - 13:50 - 37782 | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | event: User has created a | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | Process-Level issue for this | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | loan.Issue Type: Delinquent Taxes. I | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | 05/31/07 - 13:50 - 37782 | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | ssue Comments: FOLIO | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | #30-4924-001-2322, 2006 TAXES ARE | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | DELINQUENT IN THE AMOUNT OF $ | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | 24,369.07 DUE BY 5/31/07 PAYABLE TO: | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | 05/31/07 - 13:50 - 37782 | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | MIAMI-DADE COUNTY TAX COLLECTOR | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | Status: Active | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | 05/31/07 - 11:29 - 27142 | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | event: User has ended the Issue | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | associated with this loan. Issue | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | Type: Action in the Name of. Comment | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | 05/31/07 - 11:29 - 27142 | NEW TRAK SYSTEM ID |
| ▉ | | 05/31/2007 | FOR | s: Foreclose in Deutsche Bank Trust | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ | | 05/31/2007 | FOR | Company Americas as Trustee. | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | 05/31/07 - 09:51 - 13457 | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | event: User has updated a | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | Process-Level issue for this loan. | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | Issue updated to: Issue Type: Actio | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | 05/31/07 - 09:51 - 13457 | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | n in the Name of. Issue Comments: | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | PLEASE ADVISE THE NAME WE ARE TO | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | FORECLOSE IN ASPA Status: Active | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | Projected End: 5/31/2007 changed to | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | 05/31/07 - 09:51 - 13457 | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | 06/04/2007 | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | 05/31/07 - 09:51 - 27142 | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | Intercom From: Kelly Rivera, | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | Fidelity - To: Karen Steffensen | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | (ResCap) / Message: Please provide | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | action in the name of information. T | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | 05/31/07 - 09:51 - 27142 | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | hanks! | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | 05/31/07 - 08:10 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | Client to 6/12/2007. Reason: Court D | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | 05/31/07 - 08:10 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | elay. Comments:  Dismissal and M/to | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | release docs sent to clerk on | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | 5/8/07; as of 5/31/07 the original | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | docs have not been returned by the c | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | 05/31/07 - 08:10 - 34015 | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | lerk; will follow up on 6/12/07 | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | . Status: Active, awaiting | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | approval. | NEW TRAK SYSTEM ID |
| ▮ | | 05/31/2007 | FOR | 05/31/07 - 01:07 - 32012 | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▆ | | 05/31/2007 | FOR | Uploaded Comment: 5/30 FILE TO JIM | NEW TRAK SYSTEM ID |
| ▆ | | 05/31/2007 | FOR | TO FILE CLAIM PRIOR TO PROCEEDING | NEW TRAK SYSTEM ID |
| ▆ | | 05/31/2007 | FOR | (NTIEE) | NEW TRAK SYSTEM ID |
| ▆ | | 05/31/2007 | FOR | 05/31/07 - 08:41 - 32677 | NEW TRAK SYSTEM ID |
| ▆ | | 05/31/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▆ | | 05/31/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| ▆ | | 05/31/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |
| ▆ | | 05/31/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| ▆ | | 05/31/2007 | FOR | 05/31/07 - 08:41 - 32677 | NEW TRAK SYSTEM ID |
| ▆ | | 05/31/2007 | FOR | to Client. Status: Active, | NEW TRAK SYSTEM ID |
| ▆ | | 05/31/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| ▆ | | 05/31/2007 | FOR | FORECLOSURE LA CHANGED FROM 0071019 TO 0070485 | CARLOS LEON |
| ▆ | | 05/30/2007 | FOR | 05/30/07 - 15:30 - 10196 | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | Intercom From: Becky North, | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | Fidelity - To: Karen Steffensen | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | (ResCap) / Message: Please confirm | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | who to action in the name of for thi | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | 05/30/07 - 15:30 - 10196 | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | s loanThansk | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | 05/30/07 - 08:02 - 13457 | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | event: User has created a | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | Process-Level issue for this | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | loan.Issue Type: Action in the Name | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | 05/30/07 - 08:02 - 13457 | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | of. Issue Comments: PLEASE ADVISE | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | THE NAME WE ARE TO FORECLOSE IN | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | ASPA Status: Active | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | 05/30/07 - 02:11 - 32012 | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | Uploaded Comment: TITLE SEARCH | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | ORDERED (NTIEE) | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | 05/30/07 - 02:11 - 32012 | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | Uploaded Comment: File Received | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | 5/29/2007 (NTIEE) | NEW TRAK SYSTEM ID |
| ▆ | | 05/30/2007 | FOR | 05/30/07 - 15:31 - 13457 | NEW TRAK SYSTEM ID |

**Loan History**

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| | | 05/30/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | event: User has updated a | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | Process-Level issue for this loan. | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | Issue updated to: Issue Type: Actio | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | 05/30/07 - 15:31 - 13457 | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | n in the Name of. Issue Comments: | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | PLEASE ADVISE THE NAME WE ARE TO | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | FORECLOSE IN ASPA Status: Active | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | Projected End: 12:00:00 AM changed t | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | 05/30/07 - 15:31 - 13457 | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | o 05/31/2007 | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | 05/30/07 - 15:30 - 10196 | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | event: User has approved the issue. | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | issue type: Action in the Name of. | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | Status: Active, Approved. | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | 05/30/07 - 15:19 - 32012 | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | Uploaded Comment: 5/30 FILE TO | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | CHERYL/ MTG ALREADY F/C'D PER | NEW TRAK SYSTEM ID |
| | | 05/30/2007 | FOR | EXAMINER (NTIEE) | NEW TRAK SYSTEM ID |
| | | 05/29/2007 | FOR | 05/29/07 - 07:16 - 00007 | NEW TRAK SYSTEM ID |
| | | 05/29/2007 | FOR | Foreclosure (NIE Id# 3523912) | NEW TRAK SYSTEM ID |
| | | 05/29/2007 | FOR | picked up by firm LAW OFFICES OF | NEW TRAK SYSTEM ID |
| | | 05/29/2007 | FOR | DAVID J. STERN, P.A. at 5/29/2007 | NEW TRAK SYSTEM ID |
| | | 05/29/2007 | FOR | 7:11:14 AM by Glen Lewin | NEW TRAK SYSTEM ID |
| | | 05/29/2007 | FOR | 05/29/07 - 07:13 - 00007 | NEW TRAK SYSTEM ID |
| | | 05/29/2007 | FOR | Process opened 5/29/2007 by user | NEW TRAK SYSTEM ID |
| | | 05/29/2007 | FOR | Fidelity AutoProc. | NEW TRAK SYSTEM ID |
| | | 05/29/2007 | FOR | 05/29/07 - 07:13 - 00007 | NEW TRAK SYSTEM ID |
| | | 05/29/2007 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| | | 05/29/2007 | FOR | following event: File Received By | NEW TRAK SYSTEM ID |
| | | 05/29/2007 | FOR | Attorney, completed on 5/29/2007 | NEW TRAK SYSTEM ID |
| | | 05/29/2007 | FOR | FORECLOSURE LA CHANGED FROM 0070485 TO 0071019 | CARLOS LEON |
| | | 05/28/2007 | FOR | 05/28/07 - 07:31 - 00007 | NEW TRAK SYSTEM ID |
| | | 05/28/2007 | FOR | Foreclosure (NIE Id# 3523912) sent | NEW TRAK SYSTEM ID |

**Loan History**

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▉ | | 05/28/2007 | FOR | to LAW OFFICES OF DAVID J. STERN, | NEW TRAK SYSTEM ID |
| ▉ | | 05/28/2007 | FOR | P.A. at 5/28/2007 7:27:15 AM by | NEW TRAK SYSTEM ID |
| ▉ | | 05/28/2007 | FOR | Automated Tasks | NEW TRAK SYSTEM ID |
| ▉ | | 05/28/2007 | FOR | 05/28/07 - 07:32 - 00007 | NEW TRAK SYSTEM ID |
| ▉ | | 05/28/2007 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ▉ | | 05/28/2007 | FOR | following event: File Referred To | NEW TRAK SYSTEM ID |
| ▉ | | 05/28/2007 | FOR | Attorney, completed on 5/28/2007 | NEW TRAK SYSTEM ID |
| ▉ | | 05/28/2007 | FOR | 05/28/07 - 05:12 - 00007 | NEW TRAK SYSTEM ID |
| ▉ | | 05/28/2007 | FOR | Process opened 5/28/2007 by user | NEW TRAK SYSTEM ID |
| ▉ | | 05/28/2007 | FOR | Fidelity AutoProc. | NEW TRAK SYSTEM ID |
| ▉ | | 05/28/2007 | FOR | REFERRED TO ATTORNEY (2)   COMPLETED 05/28/07 | NEW TRAK SYSTEM ID |
| ▉ | | 05/25/2007 | CBR | PURCHASED LOAN:  SERVICING DATE =05/24/06 | SYSTEM ID |
| ▉ | | 05/25/2007 | CBR | DELINQUENT:  180+ DAYS | SYSTEM ID |
| ▉ | FOR | 05/25/2007 | NT | *** Foreclosure Referral Review Completed and | NISHANTH KALATHIL |
| ▉ | FOR | 05/25/2007 | NT | Management Approved *** | NISHANTH KALATHIL |
| ▉ | | 05/25/2007 | FOR | FORECLOSURE APPROVAL (1)   COMPLETED 05/25/07 | NISHANTH KALATHIL |
| ▉ | | 05/25/2007 | FOR | APPROVED FOR FCL 05/25/07 | NISHANTH KALATHIL |
| ▉ | | 05/24/2007 | D19 | ARM CHANGE NOTICE CREATED - LETTER | SYSTEM ID |
| ▉ | | 05/22/2007 | FSV | INSP TP D RESULTS RCVD;  ORD DT=05/04/07 | SYSTEM ID |
| ▉ | | 05/21/2007 | FOR | 05/21/07 - 11:21 - 19695 | NEW TRAK SYSTEM ID |
| ▉ | | 05/21/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▉ | | 05/21/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| ▉ | | 05/21/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |
| ▉ | | 05/21/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| ▉ | | 05/21/2007 | FOR | 05/21/07 - 11:21 - 19695 | NEW TRAK SYSTEM ID |
| ▉ | | 05/21/2007 | FOR | to Client. Status: Active, | NEW TRAK SYSTEM ID |
| ▉ | | 05/21/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| ▉ | | 05/20/2007 | FOR | 05/20/07 - 20:30 - 34015 | NEW TRAK SYSTEM ID |
| ▉ | | 05/21/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| ▉ | | 05/21/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| ▉ | | 05/21/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| ▉ | | 05/21/2007 | FOR | Client to 5/31/2007. Reason: Court D | NEW TRAK SYSTEM ID |
| ▉ | | 05/21/2007 | FOR | 05/20/07 - 20:30 - 34015 | NEW TRAK SYSTEM ID |
| ▉ | | 05/21/2007 | FOR | elay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| ▉ | | 05/21/2007 | FOR | release docs sent to clerk on | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| | | 05/21/2007 | FOR | 5/8/07; as of 5/22/07 the original | NEW TRAK SYSTEM ID |
| | | 05/21/2007 | FOR | docs have not been returned by the c | NEW TRAK SYSTEM ID |
| | | 05/21/2007 | FOR | 05/20/07 - 20:30 - 34015 | NEW TRAK SYSTEM ID |
| | | 05/21/2007 | FOR | lerk; will follow up on 5/31/07 | NEW TRAK SYSTEM ID |
| | | 05/21/2007 | FOR | . Status: Active, awaiting approval. | NEW TRAK SYSTEM ID |
| | | 05/21/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| | | 05/18/2007 | ET | ARM CHANGE NOTICE SCHEDULED FOR   05/18/07 | SYSTEM ID |
| | TAX | 05/14/2007 | NT | *taxnon-FA mailed dlq. tax letter 5/14/07. ac | MARY JONES |
| | | 05/11/2007 | DM | AUTH TP CAROLINA DAHL CI; STTD THERE IS A BUYER | VONNE MELLO |
| | | 05/11/2007 | DM | FOR PROP, WANTED TO KNOW NEXT STEP FOR SPO; ADV | VONNE MELLO |
| | | 05/11/2007 | DM | HER TO PROVIDE US W/ CONTRACT AND NET SHEET AND | VONNE MELLO |
| | | 05/11/2007 | DM | FAX TO 800#; SHE ALSO STTD THERE WAS A 2ND AND | VONNE MELLO |
| | | 05/11/2007 | DM | 3RD; ADV HER TO CONTACT THEM FIRST, SHE | VONNE MELLO |
| | | 05/11/2007 | DM | UNDERSTOOD. RMCKINZIE6713 | VONNE MELLO |
| | | 05/11/2007 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO LMDC | VONNE MELLO |
| | | 05/08/2007 | FOR | 05/08/07 - 12:52 - 38470 | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | FOR | event: User has approved the | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | FOR | Reprojection Type Court Delay for | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | FOR | the step Original Documents Returned | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | FOR | 05/08/07 - 12:52 - 38470 | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | FOR | to Client. Status: Active, | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | FOR | Approved. | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | FOR | 05/08/07 - 08:46 - 34015 | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | FOR | step Original Documents Returned to | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | FOR | Client to 5/22/2007. Reason: Court D | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | FOR | 05/08/07 - 08:46 - 34015 | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | FOR | elay. Comments: Dismissal and M/to | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | FOR | release docs sent to clerk on | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | FOR | 5/8/07; will follow up on 5/22/07 | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | FOR | . Status: Active, awaiting approval | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | FOR | 05/08/07 - 08:46 - 34015 | NEW TRAK SYSTEM ID |
| | | 05/08/2007 | DM | AUTH FOR: CAROLINA DAHI | KARYN REA |

# Loan History

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ■■■ | | 05/08/2007 | DM | PH: 786/853.9417 | KARYN REA |
| ■■■ | | 05/08/2007 | DM | IMAGED AS ARTP | KARYN REA |
| ■■■ | | 05/08/2007 | DM | JTERRY 2897 | KARYN REA |
| ■■■ | | 05/08/2007 | DM | ACTION/RESULT CD CHANGED FROM      TO OAAI | KARYN REA |
| ■■■ | LMT | 05/08/2007 | NT | t/t Carolina Dong, a friend of h/o's who is | ALEX ANGELO |
| ■■■ | LMT | 05/08/2007 | NT | trying help h/o with a possible short sale.  I gv | ALEX ANGELO |
| ■■■ | LMT | 05/08/2007 | NT | her our 1-800 fax # to fax the authorization. | ALEX ANGELO |
| ■■■ | LMT | 05/08/2007 | NT | Brent L x6844 | ALEX ANGELO |
| ■■■ | LMT | 05/08/2007 | NT | 3p carolina team hope ci short sale package xfrd | DESIREE MAGALLANES |
| ■■■ | LMT | 05/08/2007 | NT | to los mit  desiree m. 73627 | DESIREE MAGALLANES |
| ■■■ | | 05/04/2007 | FSV | INSP TYPE D ORDERED;    REQ CD =AUTO DELQ | SYSTEM ID |
| ■■■ | | 05/04/2007 | DM | BREACH HOLD PLACED-EXPIRATION DATE 06/07/07 | TRENT LITTLETON |
| ■■■ | | 05/03/2007 | DM | AUTOMATED INTEREST ACCRUAL HOLD ACTIVE | SYSTEM ID |

**<u>Exhibit L</u>**
**Diaz Goodbye Letter**

ny-1145045

{{DPLX}}

03/14/08

THOMAS DIAZ

5200 SW 122ND AVE

MIAMI FL 33175-5529

Homecomings Financial, LLC          Acct Number:
AURORA LOAN SERVICES                Acct Number:

Property Address:  5200 SOUTHWEST 122ND AVENUE

                   MIAMI FL 33175

Dear THOMAS DIAZ


Effective 04/01/08, the servicing of the above referenced
account, that is, the right to collect payments from you, is
being assigned, sold, or transferred from
Homecomings Financial, LLC          to
AURORA LOAN SERVICES                 . The assignment, sale, or
transfer of servicing does not affect the terms or conditions of
your mortgage documents/security instruments, other than the
terms directly related to the servicing of your account.

Your present servicer is Homecomings Financial, LLC          .
Prior to 04/01/08, any questions regarding your account should be
directed to our Customer Care Department at 800-206-2901.

Your new servicer will be AURORA LOAN SERVICES               .
Beginning 04/01/08, any questions you have regarding your account
should be directed to AURORA LOAN SERVICES              . You
can contact their Customer Service Department at 800-550-0508.
Also beginning 04/01/08, written inquiries regarding your account
should be directed to AURORA LOAN SERVICES               's
Customer Service Department at the address below.

Payment Information - Effective 04/01/08, please direct payments
to AURORA LOAN SERVICES                  's Payment Processing




03/14/08
Account Number
Page Two


Department at the address below. Payments will be processed by
Homecomings Financial, LLC          if received prior to
04/01/08, and will be forwarded to
AURORA LOAN SERVICES                 if received on or after
04/01/08.

          AURORA LOAN SERVICES
          PO BOX 5180--CASHERING DEPARTMENT
          DENVER           CO   80217-5180

As of 03/14/08, your Current Principal Balance is $   1003803.59.
your current escrow balance is $   -67753.76, your current
interest rate is   8.00000%, your total monthly payment is
$        3671.17, and your next due date is 10/01/06.

Automatic Payment Deduction - If you currently have your
payments automatically withdrawn from your financial institution,
this service will be transferred to
AURORA LOAN SERVICES                . If this service is not
transferable, you will receive a letter under separate cover
providing further direction.

Government Allotment/Bill Pay Service - If you currently make
your payment through a third party entity (e.g. government
allotment, biweekly, or bill-pay service), please advise them of
your new account number and change the payee to
AURORA LOAN SERVICES                . In the event of a payment
change, it is your responsibility to notify the third party of
the new payment amount. If you have been using the bill-pay
service on Homecomings Financial, LLC         's website, this
service will be deactivated after 04/01/08.

Optional Insurance - If you have taken advantage of any of our
optional insurance plans or optional products, this service will
be transferred to AURORA LOAN SERVICES                . If any of
these plans or products are not transferable, you will receive a
letter under separate cover providing further direction.

Year-End Statement - You will receive a year-end statement from
Homecomings Financial, LLC         reflecting account activity
this year. AURORA LOAN SERVICES                should provide
their own statement for the period of time they serviced your
account this year. You will need to combine these two statements
for income tax purposes.

Escrow Account - If you have an escrow account,
Homecomings Financial, LLC         will send you, within 45
days, an escrow history statement reflecting escrow deposits,
disbursements and balances for the period of time we serviced
your account since your last escrow analysis. The transferring
escrow balance will be reflected on this statement.

03/14/08
Account Number 
Page Three

Except in limited circumstances, the law requires that your
present servicer send you this notice at least 15 days before the
effective date of the transfer. Your new servicer must also send
you this notice no later than 15 days after the effective date of
transfer.

If you have filed for bankruptcy or have been discharged of your
personal liability for repayment of this debt, be advised this is
for informational purposes only. Furthermore, this is not an
attempt to collect on the debt and should not be misconstrued to
be so.

You should be aware of the following information, which is set
out in more detail in Section 6 of the Real Estate Settlement
Procedures Act (RESPA) (12 USC 2605):

    During the 60 day period following the effective date of the
    transfer of the account servicing, a payment received by
    your old servicer, before its due date, may not be treated
    by the new servicer as late, and a late fee may not be
    imposed on you.

    Section 6 of RESPA (12 USC s2605) gives you certain consumer
    rights. If you sent a "qualified written request" to your
    servicer concerning the servicing of your account, your
    servicer must provide you with a written acknowledgment
    within 20 business days of receipt of your request. A
    "qualified written request" is written correspondence, other
    than notice on a payment coupon or other payment medium
    supplied by the serivcer, which includes your name, account
    number, and reason for the request.

    No later than 60 business days after receiving your
    request, your servicer must make appropriate corrections to
    your account, and must provide you with a written
    clarification regarding any dispute. During this 60 business
    day period, your servicer may not provide information to a

consumer reporting agency concerning any late payment
related to such period or qualified written request.
However, this does not prevent the servicer from initiating
foreclosure if proper grounds exist under the mortgage
documents/security instruments.

A "business day" is a day on which the offices of the
business entity are open to the public for carrying on
substantially all of its business functions.

03/14/08
Account Number 
Page Four

Section 6 of RESPA also provides for damages and costs for
individuals or classes of individuals in circumstances
where servicers are shown to have violated the requirements
of that Section. You should seek legal advice if you
believe your rights have been violated.

Homecomings Financial, LLC          appreciated the opportunity
to service your account. We wish you a successful relationship
with AURORA LOAN SERVICES          .

Sincerely,


Homecomings Financial, LLC
6020

**<u>Exhibit M</u>**
**Diaz QWR Response**

ny-1145045

# **GMAC** Mortgage

December 3, 2012

Tomas Diaz
5200 SW 122rd Avenue
Miami, FL 33175

RE:    Account Number    █████████
       Property Address    5200 SW 122nd Avenue
                          Miami, FL 33175

Dear Tomas Diaz:

This letter is in response to your request for documentation on the above-referenced purged account.

Please find enclosed the documentation as requested.

If you have any further questions, please contact Customer Care at 1-800-766-4622, during the following hours: Monday through Friday 6:00 am to 10:00 pm CT or Saturday 9:00 am to 1:00 pm CT.

Customer Care
Loan Servicing

Enclosure

JP

GMAC Mortgage LLC     www.gmacmortgage.com
3451 Hammond Avenue
PO Box 780
Waterloo IA 50704-0780

**Exhibit N**
**Lawson Claim**

ny-1145045

Claim #5282    Date Filed: 11/16/2012

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor and Case Number:** Residential Capital, LLC, Case No. 12-12020

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
Michelle Lawson, et al.

**Name and address where notices should be sent:**

Michelle Lawson, et al.
226 East Gorgas Lane
Philadelphia, PA 19119

Telephone number: (215) 843-0560    email: michellec_lawson@hotmail.com

**Name and address where payment should be sent (if different from above):**

Same as above

Telephone number: (267) 738-3985    email: michellec_lawson@hotmail.com

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
(*If known*)

Filed on: 11/8/2012

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ 89,667.98

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

■ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Secondary Mortgage Note
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:**

3279

**3a. Debtor may have scheduled account as:**
Michelle Lawson, et al.
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**

(See instruction #3b)

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ■ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:
**Value of Property:** $ 250,000    **Annual Interest Rate** 8.8750 % ■ Fixed ☐ Variable
(when case was filed)
**Amount of arrearage and other charges, as of the time case was filed, included in secured claim,**
if any: $ 0    **Basis for perfection:** Deed of Trust

**Amount of Secured Claim:** $ 51,300.00    **Amount Unsecured:** $ 0

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$ 0    (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are *redacted* copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and *redacted* copies of documents providing evidence of perfection of a security interest are attached. (*See instruction #8, and the definition of "redacted".*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature:** (See instruction #9) Check the appropriate box.
■ I am the creditor.  ☐ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or  ☐ I am a guarantor, surety,
(Attach copy of power of attorney, if any.)    their authorized agent.    indorser, or other codebtor.
(See Bankruptcy Rule 3004.)    (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Michelle Lawson, et al.
Title:
Company:    *(Signature)*    11/8/2012  *(Date)*
Address and telephone number (if different from notice address above):

Telephone number: (215) 843-0560    Email: michellec_lawson@hotmail.com

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

■ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(4).

**Amount entitled to priority:**

$ 89,667.98

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**RECEIVED**
NOV 16 2012
KURTZMAN CARSON CONSULTANTS

**COURT USE ONLY**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both

Michelle Lawson, et al.        Residential Capital, LLC Case No. 12-120020        Statement of Claims (3 pp.)

## Statement of Claims

1. Creditor is Michelle Lawson, et al., consumer and mortgagor residing at 226 East Gorgas Lane, Philadelphia, PA 19119. Creditor agreed to a single mortgage in the amount of $324,900.00 based upon a 30 year Fixed Rate Mortgage at an interest rate of 5.75%, a true and correct copy of which is attached hereto as Exhibit "A".

2. Debtor is Residential Capital, LLC, with a principal address as set forth in the claim and caption to complaint and Case No. 12-12020.

3. A promissory note (the "Note"), a true and correct copy of which is attached hereto as Exhibit "B" and is incorporated herein by reference, is secured by a secondary mortgage in the amount of $51,300.00 (the "Mortgage") dated December 3, 2004, executed by Trident Mortgage Company and its successors and assigns (also known as and doing business as the "Debtor") located at 1409 Kings Highway, Cherry Hill, NJ 08034.

4. The Mortgage and the Note should be considered voidable and rescinded upon the theory of mistake in that Creditor believed that the Note was one mortgage with a fixed rate of 5.75% and no balloon payment; whereas the Debtor was aware of the presence of the second mortgage and entered into the agreement on the basis of two mortgages, with one being the Note with a fixed interest rate of 8.8750% and a balloon payment of $40,945.67. Additionally, the Debtor knew or should have known that: (i) the Creditor would assume that it was one mortgage and one note rather than two; and (ii) the Creditor relied upon the Good Faith Estimate.

5. The Good Faith Estimate provided by Debtor did not disclose the presence of a second loan with a balloon payment as part of its terms among other provisions.

6. The Debtor did not provide a description and explanation of the nature and purpose of the Mortgage and the Note as well as specific information concerning balloon payments.

7. The Debtor did not supply Creditor with a Mortgage Servicing Disclosure Statement or a Servicing Disclosure Statement; hence, the Creditor was never notified of, made aware of or expected: (i) the possibility of multiple transfers of the Mortgage and the Note to other lenders and/or mortgage service providers; and (ii) that someone else would be servicing the Note and the Mortgage.

1

8.  The Debtor and/or mortgage originator engaged in steering the Creditor to an unqualified loan and/or mortgage(s): (i) that had predatory characteristics including but not limited to abusive terms and excessive fees; (ii) when the consumers could obtain a "qualified loan": (iii) which had abusive or unfair lending practices that promote disparities among consumers of equal credit worthiness but of different race, ethnicity, gender or age; and (iv) mischaracterizing the consumer's credit history and/or the appraised value of the property.

9.  The Creditor requested executed copies of the Mortgage and the Note from the Debtor but received unsigned copies of the Mortgage and the Note in response to the request.

10. Under this contract of adhesion, Creditor was led to believe that: (i) the down payment, good faith, and other purchase monies would be forfeited; and (ii) she would be in breach if the Mortgage and the Note were not signed.  Furthermore, the Debtor should not be entitled to the benefit of this unfair bargain.

11. Furthermore, it is well settled that information in the Amortization Schedule (the "Schedule"), a true and correct copy of which is attached hereto as Exhibit "C" and is incorporated herein by reference, should match information in the GMAC Mortgage Account Statements (the "Statements"), true and correct copies of which are attached hereto as Exhibit "D" and is incorporated herein by reference; and any deviation constitutes misrepresentation and/or fraud.  The principal, payment, payment number, interest and portion that are applied toward the principal as delineated on the Schedule provided by the Debtor *do not* match the interest paid year-to-date or the principal and interest amounts listed on the Statements.

12. This Mortgage and Note should be rescinded on the grounds of misrepresentation of fact and/or law with regard to the issuance of mortgage financing to purchase the property.  Creditor was led to believe that she had to agree to the second mortgage or forgo financing altogether by *any* lender including Debtor.  The Creditor relied upon this statement, and as a result the Creditor was fraudulently induced to contract for the Mortgage and the Note.

13. The grounds for rescission of the Mortgage and the Note include but are not limited to duress, coercion, unconscionability, failure of consideration and illegality.  Because provisions in the Note, including the balloon payment and excessive interest rate, are such that the Creditor pays not only the principal and interest but also excessive fees

Michelle Lawson, et al.      Residential Capital, LLC Case No. 12-120020      Statement of Claims (3 pp.)

and interest that amount to a penalty and contract that: (i) is illegal; and (ii) runs afoul of public policy.

14. Without express language to the contrary, in the case of Debtor's bankruptcy and/or insolvency, the Debtor should immediately investigate, address, and provide relief to Creditor regarding predatory, unlawful, unconscionable and other fraudulent practices with respect to: (i) the Mortgage terms and provisions; (ii) the Note terms and provisions; and (iii) the lending and creditworthiness process as applied to Creditor.

15. The agreement is silent with respect to Creditor's rights in case of Debtor's bankruptcy and/or insolvency among other things. Therefore, as part of the available remedies, the Creditor has a right to renegotiate the terms of the agreement, including but not limited to the interest rate, the "balloon payment," and the principal and monthly payments.

Michelle Lawson, et al.
Creditor/Mortgagor

3

Exhibit A

 **Trident Mortgage Company**

October 19, 2004

Mr. Rob Lamb
Prudential Fox and Roach Realtors
14 W. Evergreen Avenue
Philadelphia, PA 19118

RE: Ms. Michelle C. Lawson
    Ms. Margaret Lawson
    Mr. Joshua E. Liss

Dear Mr. Lamb:

This letter is to certify that I have pre-approved Ms. Michelle Lawson, Ms. Margaret Lawson and Mr. Joshua Liss for a mortgage amount of $324,900.00 and a sale price of $342,000.00. This is based on a 30 Year Fixed Rate Mortgage at a current interest rate of 5.75% with 0 points.

This statement is based on income and debt information obtained by Trident Mortgage Company. Final commitment is subject to a written application, an acceptable agreement of sale and an acceptable appraisal of the property to be acquired. Trident Mortgage Company has verified acceptable credit histories on all borrowers.

Should you have any questions or require additional information please do not hesitate to contact me at 215-619-0541.

Sincerely,

Robin L. Bowman
Mortgage Consultant

/rlb

APP NO. ██████████

SECONDARY MORTGAGE NOTE

**This Agreement is subject to the provisions of the Secondary Mortgage Loan Act.**

December 3, 2004                 Devon                      Pennsylvania
[Date]                            [City]                       [State]

226 EAST GORGAS LANE,PHILADELPHIA,PA 19119
[Property Address]

*MORTGAGOR COPY*

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    51,300.00    (this amount will be called "principal"), plus interest, to the order of the Lender.  The Lender is    TRIDENT SECOND MORTGAGE COMPANY

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder".

## 2. INTEREST

I will pay interest at a yearly rate of    8.8750 %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

## 3. PAYMENTS

I will pay principal and interest by making payments every month of U.S. $    408.17
I will make my monthly payments on the    1st  day of each month beginning on    February 1, 2005  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. If, on    January 1  ,    2020  I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at    1409 NORTH KINGS HIGHWAY, CHERRY HILL, NJ 08034
or at a different place if required by the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any of my monthly payments by the end of    15  calender days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.00 % of my overdue payment. I will pay this late charge only once on any late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment by the date stated in Section 3 above, I will be in default.
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described below, the Note Holder will still have the right to do so if I am in default at a later time.

**(C) Notice from Note Holder**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or, if it is not mailed, 30 days after the date on which it is delivered to me.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 5. THIS NOTE SECURED BY A MORTGAGE

In addition to the protections given to the Note Holder under this Note, a Mortgage, dated    December 3, 2004 protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That mortgage describes how and under what conditions I may be required to make immediate payments in full of all amounts that I owe under this Note.

## 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment". A prepayment of only part of the unpaid principal is known as a "partial prepayment".

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

**PENNSYLVANIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT                    FORM 3939**

LOAN NO.

## 7. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer if to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 8. GIVING OF NOTICES

Any notice that must be given to me under this Note, will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address. Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

## 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE.

If more than one person signs this note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be requried to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note ( as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

**NOTICE TO BORROWER:**
**Read this promissory note before you sign.**
**Do not sign this promissory note if it contains blank spaces.**
**This promissory note is secured by a secondary mortgage on your real property.**

_____          _____ (Seal)
-Witness                                                                              MICHELLE C. LAWSON                    -Borrower

_____          _____ (Seal)
-Witness                                                                              MARGARET LAWSON                       -Borrower

_____          _____ (Seal)
-Witness                                                                              JOSHUA E. LISS                        -Borrower

_____          _____ (Seal)
-Witness                                                                                                                    -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF:

TRIDENT SECOND MORTGAGE COMPANY

_____
GERARD F. GRIESSER, PRESIDENT

**PENNSYLVANIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT**                    FORM 3939 (12/93)

EXHIBIT

Date: 12/01/04              App#  ▓▓▓▓▓▓▓              Page: 1
Borrower: MICHELLE C. LAWSON
                    AMORTIZATION SCHEDULE

Note amount    51300.00      Note rate  8.875000     Note term 180 months
Loan Program  ▓▓▓▓▓▓         PURCHASE MONEY SECOND MORTGAGE

| Pmnt# | Principal | Payment | Interest | Princ. part | M.I. |
|---|---|---|---|---|---|
| 1 | 51.300.00 | 408.17 | 379.41 | 28.76 | 0.00 |
| 2 | 51.271.24 | 408.17 | 379.19 | 28.98 | 0.00 |
| 3 | 51.242.26 | 408.17 | 378.98 | 29.19 | 0.00 |
| 4 | 51.213.07 | 408.17 | 378.76 | 29.41 | 0.00 |
| 5 | 51.183.66 | 408.17 | 378.55 | 29.62 | 0.00 |
| 6 | 51.154.04 | 408.17 | 378.33 | 29.84 | 0.00 |
| 7 | 51.124.20 | 408.17 | 378.11 | 30.06 | 0.00 |
| 8 | 51.094.14 | 408.17 | 377.88 | 30.29 | 0.00 |
| 9 | 51.063.85 | 408.17 | 377.66 | 30.51 | 0.00 |
| 10 | 51.033.34 | 408.17 | 377.43 | 30.74 | 0.00 |
| 11 | 51.002.60 | 408.17 | 377.21 | 30.96 | 0.00 |
| 12 | 50.971.64 | 408.17 | 376.98 | 31.19 | 0.00 |
| 13 | 50.940.45 | 408.17 | 376.75 | 31.42 | 0.00 |
| 14 | 50.909.03 | 408.17 | 376.51 | 31.66 | 0.00 |
| 15 | 50.877.37 | 408.17 | 376.28 | 31.89 | 0.00 |
| 16 | 50.845.48 | 408.17 | 376.04 | 32.13 | 0.00 |
| 17 | 50.813.35 | 408.17 | 375.81 | 32.36 | 0.00 |
| 18 | 50.780.99 | 408.17 | 375.57 | 32.60 | 0.00 |
| 19 | 50.748.39 | 408.17 | 375.33 | 32.84 | 0.00 |
| 20 | 50.715.55 | 408.17 | 375.08 | 33.09 | 0.00 |
| 21 | 50.682.46 | 408.17 | 374.84 | 33.33 | 0.00 |
| 22 | 50.649.13 | 408.17 | 374.59 | 33.58 | 0.00 |
| 23 | 50.615.55 | 408.17 | 374.34 | 33.83 | 0.00 |
| 24 | 50.581.72 | 408.17 | 374.09 | 34.08 | 0.00 |
| 25 | 50.547.64 | 408.17 | 373.84 | 34.33 | 0.00 |
| 26 | 50.513.31 | 408.17 | 373.59 | 34.58 | 0.00 |
| 27 | 50.478.73 | 408.17 | 373.33 | 34.84 | 0.00 |
| 28 | 50.443.89 | 408.17 | 373.07 | 35.10 | 0.00 |
| 29 | 50.408.79 | 408.17 | 372.82 | 35.35 | 0.00 |
| 30 | 50.373.44 | 408.17 | 372.55 | 35.62 | 0.00 |
| 31 | 50.337.82 | 408.17 | 372.29 | 35.88 | 0.00 |
| 32 | 50.301.94 | 408.17 | 372.02 | 36.15 | 0.00 |
| 33 | 50.265.79 | 408.17 | 371.76 | 36.41 | 0.00 |
| 34 | 50.229.38 | 408.17 | 371.49 | 36.68 | 0.00 |
| 35 | 50.192.70 | 408.17 | 371.22 | 36.95 | 0.00 |
| 36 | 50.155.75 | 408.17 | 370.94 | 37.23 | 0.00 |
| 37 | 50.118.52 | 408.17 | 370.67 | 37.50 | 0.00 |
| 38 | 50.081.02 | 408.17 | 370.39 | 37.78 | 0.00 |
| 39 | 50.043.24 | 408.17 | 370.11 | 38.06 | 0.00 |
| 40 | 50.005.18 | 408.17 | 369.83 | 38.34 | 0.00 |
| 41 | 49.966.84 | 408.17 | 369.55 | 38.62 | 0.00 |
| 42 | 49.928.22 | 408.17 | 369.26 | 38.91 | 0.00 |
| 43 | 49.889.31 | 408.17 | 368.97 | 39.20 | 0.00 |
| 44 | 49.850.11 | 408.17 | 368.68 | 39.49 | 0.00 |
| 45 | 49.810.62 | 408.17 | 368.39 | 39.78 | 0.00 |
| 46 | 49.770.84 | 408.17 | 368.10 | 40.07 | 0.00 |
| 47 | 49.730.77 | 408.17 | 367.80 | 40.37 | 0.00 |
| 48 | 49.690.40 | 408.17 | 367.50 | 40.67 | 0.00 |
| 49 | 49.649.73 | 408.17 | 367.20 | 40.97 | 0.00 |
| 50 | 49.608.76 | 408.17 | 366.90 | 41.27 | 0.00 |
| 51 | 49.567.49 | 408.17 | 366.59 | 41.58 | 0.00 |
| 52 | 49.525.91 | 408.17 | 366.29 | 41.88 | 0.00 |
| 53 | 49.484.03 | 408.17 | 365.98 | 42.19 | 0.00 |

Handwritten annotations in left margin: 2/05 (at row 1), 2/06 (at row 13), 2/07 (at row 25), 2/08 (at row 37), 2/09 (at row 49)

| 13 | 50,940.45 | 408.17 |  | 31.42 | 0.00 |
| 14 | 50,909.03 | 408.17 | 376.51 | 31.66 | 0.00 |
| 15 | 50,877.37 | 408.17 | 376.28 | 31.89 | 0.00 |
| 16 | 50,845.48 | 408.17 | 376.04 | 32.13 | 0.00 |
| 17 | 50,813.35 | 408.17 | 375.81 | 32.36 | 0.00 |
| 18 | 50,780.99 | 408.17 | 375.57 | 32.60 | 0.00 |
| 19 | 50,748.39 | 408.17 | 375.33 | 32.84 | 0.00 |
| 20 | 50,715.55 | 408.17 | 375.08 | 33.09 | 0.00 |
| 21 | 50,682.46 | 408.17 | 374.84 | 33.33 | 0.00 |
| 22 | 50,649.13 | 408.17 | 374.59 | 33.58 | 0.00 |
| 23 | 50,615.55 | 408.17 | 374.34 | 33.83 | 0.00 |
| 24 | 50,581.72 | 408.17 | 374.09 | 34.08 | 0.00 |
| 25 | 50,547.64 | 408.17 | 373.84 | 34.33 | 0.00 |
| 26 | 50,513.31 | 408.17 | 373.59 | 34.58 | 0.00 |
| 27 | 50,478.73 | 408.17 | 373.33 | 34.84 | 0.00 |
| 28 | 50,443.89 | 408.17 | 373.07 | 35.10 | 0.00 |
| 29 | 50,408.79 | 408.17 | 372.82 | 35.35 | 0.00 |
| 30 | 50,373.44 | 408.17 | 372.55 | 35.62 | 0.00 |
| 31 | 50,337.82 | 408.17 | 372.29 | 35.88 | 0.00 |
| 32 | 50,301.94 | 408.17 | 372.02 | 36.15 | 0.00 |
| 33 | 50,265.79 | 408.17 | 371.76 | 36.41 | 0.00 |
| 34 | 50,229.38 | 408.17 | 371.49 | 36.68 | 0.00 |
| 35 | 50,192.70 | 408.17 | 371.22 | 36.95 | 0.00 |
| 36 | 50,155.75 | 408.17 | 370.94 | 37.23 | 0.00 |
| 37 | 50,118.52 | 408.17 | 370.67 | 37.50 | 0.00 |
| 38 | 50,081.02 | 408.17 | 370.39 | 37.78 | 0.00 |
| 39 | 50,043.24 | 408.17 | 370.11 | 38.06 | 0.00 |
| 40 | 50,005.18 | 408.17 | 369.83 | 38.34 | 0.00 |
| 41 | 49,966.84 | 408.17 | 369.55 | 38.62 | 0.00 |
| 42 | 49,928.22 | 408.17 | 369.26 | 38.91 | 0.00 |
| 43 | 49,889.31 | 408.17 | 368.97 | 39.20 | 0.00 |
| 44 | 49,850.11 | 408.17 | 368.68 | 39.49 | 0.00 |
| 45 | 49,810.62 | 408.17 | 368.39 | 39.78 | 0.00 |
| 46 | 49,770.84 | 408.17 | 368.10 | 40.07 | 0.00 |
| 47 | 49,730.77 | 408.17 | 367.80 | 40.37 | 0.00 |
| 48 | 49,690.40 | 408.17 | 367.50 | 40.67 | 0.00 |
| 49 | 49,649.73 | 408.17 | 367.20 | 40.97 | 0.00 |
| 50 | 49,608.76 | 408.17 | 366.90 | 41.27 | 0.00 |
| 51 | 49,567.49 | 408.17 | 366.59 | 41.58 | 0.00 |
| 52 | 49,525.91 | 408.17 | 366.29 | 41.88 | 0.00 |
| 53 | 49,484.03 | 408.17 | 365.98 | 42.19 | 0.00 |
| 54 | 49,441.84 | 408.17 | 365.66 | 42.51 | 0.00 |
| 55 | 49,399.33 | 408.17 | 365.35 | 42.82 | 0.00 |
| 56 | 49,356.51 | 408.17 | 365.03 | 43.14 | 0.00 |
| 57 | 49,313.37 | 408.17 | 364.71 | 43.46 | 0.00 |
| 58 | 49,269.91 | 408.17 | 364.39 | 43.78 | 0.00 |
| 59 | 49,226.13 | 408.17 | 364.07 | 44.10 | 0.00 |
| 60 | 49,182.03 | 408.17 | 363.74 | 44.43 | 0.00 |
| 61 | 49,137.60 | 408.17 | 363.41 | 44.76 | 0.00 |
| 62 | 49,092.84 | 408.17 | 363.08 | 45.09 | 0.00 |
| 63 | 49,047.75 | 408.17 | 362.75 | 45.42 | 0.00 |
| 64 | 49,002.33 | 408.17 | 362.41 | 45.76 | 0.00 |
| 65 | 48,956.57 | 408.17 | 362.07 | 46.10 | 0.00 |
| 66 | 48,910.47 | 408.17 | 361.73 | 46.44 | 0.00 |
| 67 | 48,864.03 | 408.17 | 361.39 | 46.78 | 0.00 |

Date: 12/01/04              App#                              Page: 2
Borrower: MICHELLE C. LAWSON
                       AMORTIZATION SCHEDULE

Note amount    51300.00      Note rate   8.875000     Note term 180 months
Loan Program                 PURCHASE MONEY SECOND MORTGAGE

| Pmnt# | Principal | Payment | Interest | Princ. part | M.I. |
|---|---|---|---|---|---|
| 68 | 48,817.25 | 408.17 | 361.04 | 47.13 | 0.00 |
| 69 | 48,770.12 | 408.17 | 360.70 | 47.47 | 0.00 |
| 70 | 48,722.65 | 408.17 | 360.34 | 47.83 | 0.00 |
| 71 | 48,674.82 | 408.17 | 359.99 | 48.18 | 0.00 |
| 72 | 48,626.64 | 408.17 | 359.63 | 48.54 | 0.00 |
| 73 | 48,578.10 | 408.17 | 359.28 | 48.89 | 0.00 |
| 74 | 48,529.21 | 408.17 | 358.91 | 49.26 | 0.00 |
| 75 | 48,479.95 | 408.17 | 358.55 | 49.62 | 0.00 |
| 76 | 48,430.33 | 408.17 | 358.18 | 49.99 | 0.00 |
| 77 | 48,380.34 | 408.17 | 357.81 | 50.36 | 0.00 |
| 78 | 48,329.98 | 408.17 | 357.44 | 50.73 | 0.00 |
| 79 | 48,279.25 | 408.17 | 357.07 | 51.10 | 0.00 |
| 80 | 48,228.15 | 408.17 | 356.69 | 51.48 | 0.00 |
| 81 | 48,176.67 | 408.17 | 356.31 | 51.86 | 0.00 |
| 82 | 48,124.81 | 408.17 | 355.92 | 52.25 | 0.00 |
| 83 | 48,072.56 | 408.17 | 355.54 | 52.63 | 0.00 |
| 84 | 48,019.93 | 408.17 | 355.15 | 53.02 | 0.00 |
| 85 | 47,966.91 | 408.17 | 354.76 | 53.41 | 0.00 |
| 86 | 47,913.50 | 408.17 | 354.36 | 53.81 | 0.00 |
| 87 | 47,859.69 | 408.17 | 353.96 | 54.21 | 0.00 |
| 88 | 47,805.48 | 408.17 | 353.56 | 54.61 | 0.00 |
| 89 | 47,750.87 | 408.17 | 353.16 | 55.01 | 0.00 |
| 90 | 47,695.86 | 408.17 | 352.75 | 55.42 | 0.00 |
| 91 | 47,640.44 | 408.17 | 352.34 | 55.83 | 0.00 |
| 92 | 47,584.61 | 408.17 | 351.93 | 56.24 | 0.00 |
| 93 | 47,528.37 | 408.17 | 351.51 | 56.66 | 0.00 |
| 94 | 47,471.71 | 408.17 | 351.09 | 57.08 | 0.00 |
| 95 | 47,414.63 | 408.17 | 350.67 | 57.50 | 0.00 |
| 96 | 47,357.13 | 408.17 | 350.25 | 57.92 | 0.00 |
| 97 | 47,299.21 | 408.17 | 349.82 | 58.35 | 0.00 |
| 98 | 47,240.86 | 408.17 | 349.39 | 58.78 | 0.00 |
| 99 | 47,182.08 | 408.17 | 348.95 | 59.22 | 0.00 |
| 100 | 47,122.86 | 408.17 | 348.51 | 59.66 | 0.00 |
| 101 | 47,063.20 | 408.17 | 348.07 | 60.10 | 0.00 |
| 102 | 47,003.10 | 408.17 | 347.63 | 60.54 | 0.00 |
| 103 | 46,942.56 | 408.17 | 347.18 | 60.99 | 0.00 |
| 104 | 46,881.57 | 408.17 | 346.73 | 61.44 | 0.00 |
| 105 | 46,820.13 | 408.17 | 346.27 | 61.90 | 0.00 |
| 106 | 46,758.23 | 408.17 | 345.82 | 62.35 | 0.00 |
| 107 | 46,695.88 | 408.17 | 345.35 | 62.82 | 0.00 |
| 108 | 46,633.06 | 408.17 | 344.89 | 63.28 | 0.00 |
| 109 | 46,569.78 | 408.17 | 344.42 | 63.75 | 0.00 |
| 110 | 46,506.03 | 408.17 | 343.95 | 64.22 | 0.00 |
| 111 | 46,441.81 | 408.17 | 343.48 | 64.69 | 0.00 |
| 112 | 46,377.12 | 408.17 | 343.00 | 65.17 | 0.00 |
| 113 | 46,311.95 | 408.17 | 342.52 | 65.65 | 0.00 |
| 114 | 46,246.30 | 408.17 | 342.03 | 66.14 | 0.00 |
| 115 | 46,180.16 | 408.17 | 341.54 | 66.63 | 0.00 |
| 116 | 46,113.53 | 408.17 | 341.05 | 67.12 | 0.00 |
| 117 | 46,046.41 | 408.17 | 340.55 | 67.62 | 0.00 |
| 118 | 45,978.79 | 408.17 | 340.05 | 68.12 | 0.00 |
| 119 | 45,910.67 | 408.17 | 339.55 | 68.62 | 0.00 |
| 120 | 45,842.05 | 408.17 | 339.04 | 69.13 | 0.00 |

Date: 12/01/04                    App#                                      Page: 3
Borrower: MICHELLE C. LAWSON
                        AMORTIZATION SCHEDULE

Note amount    51300.00    Note rate  8.875000    Note term  180 months
Loan Program                         PURCHASE MONEY SECOND MORTGAGE

| Pmnt# | Principal | Payment | Interest | Princ. part | M.I. |
|---|---|---|---|---|---|
| 135 | 44,749.65 | 408.17 | 330.96 | 77.21 | 0.00 |
| 136 | 44,672.44 | 408.17 | 330.39 | 77.78 | 0.00 |
| 137 | 44,594.66 | 408.17 | 329.81 | 78.36 | 0.00 |
| 138 | 44,516.30 | 408.17 | 329.24 | 78.93 | 0.00 |
| 139 | 44,437.37 | 408.17 | 328.65 | 79.52 | 0.00 |
| 140 | 44,357.85 | 408.17 | 328.06 | 80.11 | 0.00 |
| 141 | 44,277.74 | 408.17 | 327.47 | 80.70 | 0.00 |
| 142 | 44,197.04 | 408.17 | 326.87 | 81.30 | 0.00 |
| 143 | 44,115.74 | 408.17 | 326.27 | 81.90 | 0.00 |
| 144 | 44,033.84 | 408.17 | 325.67 | 82.50 | 0.00 |
| 145 | 43,951.34 | 408.17 | 325.06 | 83.11 | 0.00 |
| 146 | 43,868.23 | 408.17 | 324.44 | 83.73 | 0.00 |
| 147 | 43,784.50 | 408.17 | 323.82 | 84.35 | 0.00 |
| 148 | 43,700.15 | 408.17 | 323.20 | 84.97 | 0.00 |
| 149 | 43,615.18 | 408.17 | 322.57 | 85.60 | 0.00 |
| 150 | 43,529.58 | 408.17 | 321.94 | 86.23 | 0.00 |
| 151 | 43,443.35 | 408.17 | 321.30 | 86.87 | 0.00 |
| 152 | 43,356.48 | 408.17 | 320.66 | 87.51 | 0.00 |
| 153 | 43,268.97 | 408.17 | 320.01 | 88.16 | 0.00 |
| 154 | 43,180.81 | 408.17 | 319.36 | 88.81 | 0.00 |
| 155 | 43,092.00 | 408.17 | 318.70 | 89.47 | 0.00 |
| 156 | 43,002.53 | 408.17 | 318.04 | 90.13 | 0.00 |
| 157 | 42,912.40 | 408.17 | 317.37 | 90.80 | 0.00 |
| 158 | 42,821.60 | 408.17 | 316.70 | 91.47 | 0.00 |
| 159 | 42,730.13 | 408.17 | 316.02 | 92.15 | 0.00 |
| 160 | 42,637.98 | 408.17 | 315.34 | 92.83 | 0.00 |
| 161 | 42,545.15 | 408.17 | 314.66 | 93.51 | 0.00 |
| 162 | 42,451.64 | 408.17 | 313.97 | 94.20 | 0.00 |
| 163 | 42,357.44 | 408.17 | 313.27 | 94.90 | 0.00 |
| 164 | 42,262.54 | 408.17 | 312.57 | 95.60 | 0.00 |
| 165 | 42,166.94 | 408.17 | 311.86 | 96.31 | 0.00 |
| 166 | 42,070.63 | 408.17 | 311.15 | 97.02 | 0.00 |
| 167 | 41,973.61 | 408.17 | 310.43 | 97.74 | 0.00 |
| 168 | 41,875.87 | 408.17 | 309.71 | 98.46 | 0.00 |
| 169 | 41,777.41 | 408.17 | 308.98 | 99.19 | 0.00 |
| 170 | 41,678.22 | 408.17 | 308.25 | 99.92 | 0.00 |
| 171 | 41,578.30 | 408.17 | 307.51 | 100.66 | 0.00 |
| 172 | 41,477.64 | 408.17 | 306.76 | 101.41 | 0.00 |
| 173 | 41,376.23 | 408.17 | 306.01 | 102.16 | 0.00 |
| 174 | 41,274.07 | 408.17 | 305.26 | 102.91 | 0.00 |
| 175 | 41,171.16 | 408.17 | 304.50 | 103.67 | 0.00 |
| 176 | 41,067.49 | 408.17 | 303.73 | 104.44 | 0.00 |
| 177 | 40,963.05 | 408.17 | 302.96 | 105.21 | 0.00 |
| 178 | 40,857.84 | 408.17 | 302.18 | 105.99 | 0.00 |
| 179 | 40,751.85 | 408.17 | 301.39 | 106.78 | 0.00 |
| 180 | 40,645.07 | 40,945.67 | 300.60 | 40,645.07 | 0.00 |

**CUSTOMER INFORMATION**

Name: Michelle C Lawson
Margaret Lawson

PROPERTY ADDRESS

## GMAC Mortgage

Account Number:
Home Phone #: (215)843-0560

Visit us at www.gmacmortgage.com for
account information or to apply on-line.


*Exhibit D*

00/11/10 11 00 3   0025062 20110302 KC020808 GMREG   1 0Z.DOM KC02080000* 146316   GM

MICHELLE C LAWSON
MARGARET LAWSON

Please verify your mailing address, borrower and co-borrower information.   Make necessary corrections on this portion of the statement, detach and mail to address listed for Inquiries on the reverse side.

For information about your existing account,
please call: 1-800-766-4622.

For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

### Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | March 01, 2011 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $761.35 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $48,362.10 |

### Details of Amount Due Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | April 01, 2011 |

**For Customer Care inquiries call: 1-800-766-4622**
**For Insurance inquiries call:      1-800-256-9962**
**For Payment Arrangements call:  1-800-850-4622**

### Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 03/01/11 | 03/01/11 | $408.17 | | $408.17 | | | | $38.68- |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week). See back for automatic payment sign-up information and other payment options.

### Important News

!Attention Military Families!  At GMAC Mortgage we are committed to doing what we can to support our customers in the military.  If you or a member of your family  are in the military and are experiencing a financial hardship, please contact us at 866-961-1412 or email us at Military.Families@gmacm.com to discuss your situation and identify possible alternatives.

74

**See Reverse Side For Important Information And State Specific Disclosures**

# GMAC Mortgage

**CUSTOMER INFORMATION**

PROPERTY ADDRESS

Name: Michelle C Lawson
Margaret Lawson

Account Number:
Home Phone #: (215)843-0560

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

MICHELLE C LAWSON
MARGARET LAWSON



| For information about your existing account, please call: 1-800-766-4622. |
| For information about refinancing or obtaining a new loan, please call: 1-866-690-8322 |

Please verify your mailing address, borrower and co-borrower information.   Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | May 09, 2011 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $1,572.74 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $48,357.15 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | June 01, 2011 |

**For Customer Care inquiries call:  1-800-766-4622**
**For Insurance inquiries call:      1-800-256-9962**
**For Payment Arrangements call:  1-800-850-4622**

## Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 05/01/11 | 05/07/11 | $408.17 | | $408.17 | | | | $15.12- |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

## Important News

Have you considered refinancing your loan?  With rates still near historic lows, now may be the perfect time.  Call 877-528-3817 today to have a refinancing specialist review your account.

The Ally Bank No Penalty 11-Month CD: get a great fixed rate CD with no early withdrawal penalty. Visit allybank.com or call 877-247-2559. Member FDIC.

**See Reverse Side For Important Information And State Specific Disclosures**

# GMAC Mortgage

**CUSTOMER INFORMATION**

Name: Michelle C Lawson
Margaret Lawson

Account Number:
Home Phone #: (215)843-0560

PROPERTY ADDRESS

Visit us at www.gmacmortgage.com for
account information or to apply on-line.



0211/10 11 093   0013038 20111008 KJ061805 GMREG   1 OZ 00M KJ06180000* 146316   GM

MICHELLE C LAWSON
MARGARET LAWSON



For information about your existing account,
please call: 1-800-766-4622.

For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information.  Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | October 03, 2011 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $3,311.59 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $48,055.15 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | November 01, 2011 |

**For Customer Care inquiries call: 1-800-766-4622**
**For Insurance inquiries call:       1-800-256-9962**
**For Payment Arrangements call:  1-800-850-4622**

## Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 10/01/11 | 10/01/11 | $408.17 | $34.00 | $374.17 | | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

## Important News

**The Ally Bank High Yield 12-Month CD was named one of MONEY Magazine's "Best Money Moves" of 2011,
MONEY® Magazine, May 2011. See the enclosed insert or visit allybank.com for details. Member FDIC.**

81




# GMAC Mortgage

| CUSTOMER INFORMATION | PROPERTY ADDRESS |
|---|---|
| Name: Michelle C Lawson Margaret Lawson | |
| Account Number: | |
| Home Phone #: (215)843-0560 | |

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

02/11/10 11:003  0012020 20120207 LB067805 GMREG  1 OZ DOM LB0678000P 146316  GM

MICHELLE C LAWSON
MARGARET LAWSON



For information about your existing account,
please call: 1-800-766-4622.

For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information.  Make necessary corrections on this portion of the statement, detach and mail to address listed  for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | February 03, 2012 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $408.17 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $47,833.98 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | March 01, 2012 |

**For Customer Care inquiries call:  1-800-766-4622**
**For Insurance inquiries call:  1-800-256-9962**
**For Payment Arrangements call:  1-800-850-4622**

## Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 02/01/12 | 02/03/12 | $408.17 | | $408.17 | | | | $45.43- |

*This is your Principal Balance only, not the amount required to pay the loan in full. For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

## Important News

**Considering a refinance or the purchase of a new home? We're here to help - call a loan
specialist today at 877-528-3817 to review all of the financing options available to you.**

**Ally Bank offers IRA CDs and an IRA Online Savings Account with rates that are consistently among
the most competitive in the country. Call 1-877-247-ALLY (2559) or visit allybank.com.  Member FDIC.**

85

See Reverse Side For Important Information And State Specific Disclosures

 

PROPERTY ADDRESS

# GMAC Mortgage

**CUSTOMER INFORMATION**

Name: Michelle C Lawson
Margaret Lawson

Account Number:
Home Phone #: (215)843-0560

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

02|19|10 11 00 3   0010785 20120006 LC054804 GMREG   1 OZ DOM LC05480000* 145316   GM

MICHELLE C LAWSON
MARGARET LAWSON



For information about your existing account,
please call: 1-800-766-4622.

For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information.   Make necessary corrections on this portion of the statement, detach and mail to address listed  for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | March 02, 2012 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $767.63 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $47,785.27 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | April 01, 2012 |

**For Customer Care inquiries call:** 1-800-766-4622
**For Insurance inquiries call:** 1-800-256-9962
**For Payment Arrangements call:** 1-800-850-4622

## Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 03/01/12 | 03/02/12 | $408.17 | $48.71 | $359.46 | | | | $45.43 |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

## Important News

Ally Bank offers IRA CDs and an IRA Online Savings Account with rates that are consistently among
the most competitive in the country. Call 1-877-247-ALLY (2559) or visit allybank.com.  Member FDIC.

86

**See Reverse Side For Important Information And State Specific Disclosures**



# GMAC Mortgage

## CUSTOMER INFORMATION

**PROPERTY ADDRESS**

Name: Michelle C Lawson
Margaret Lawson

Account Number:
Home Phone #: (215)843-0560

Visit us at www.gmacmortgage.com for account information or to apply on-line.



02/11/10 11 00 3    0007025 20120507 LE060803 GMREG    1 OZ DOM LE0608000* 146316    GM

MICHELLE C LAWSON
MARGARET LAWSON

For information about your existing account, please call: 1-800-766-4622.

For information about refinancing or obtaining a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information.    Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | May 03, 2012 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $1,487.32 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $47,688.62 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | June 01, 2012 |

For Customer Care inquiries call: **1-800-766-4622**
For Insurance inquiries call: **1-800-256-9962**
For Payment Arrangements call: **1-800-850-4622**

## Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 05/01/12 | 05/03/12 | $408.17 | $13.81 | $394.36 | | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full. For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

## Important News

Now is a great time to buy a home! If you're in the market for your next home, our trained loan agents will help you review all of the financing options available to you – call 877-528-3817 today!



**See Reverse Side For Important Information And State Specific Disclosures**

 **GMAC Mortgage Account Statement**

 **GMAC** Mortgage

### CUSTOMER INFORMATION
PROPERTY ADDRESS

Name: Michelle C Lawson
Margaret Lawson

Account Number:
Home Phone #: (215)843-0560

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

0211/10 11 00 3   0000943 20120705 LG023902 GMREG  1 OZ DOM LG02380000* 148318   GM

MICHELLE C LAWSON
MARGARET LAWSON



For information about your existing account,
please call: 1-800-766-4622.

For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information.   Make necessary corrections on this portion of the statement, detach and mail to address listed  for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | July 02, 2012 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $2,115.80 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $47,500.76 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | August 01, 2012 |

**For Customer Care inquiries call: 1-800-766-4622**
**For Insurance inquiries call:     1-800-256-9962**
**For Payment Arrangements call:  1-800-850-4622**

## Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 07/01/12 | 06/29/12 | $408.17 | | $408.17 | | | | $30.72- |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

## Important News

**Now is a great time to buy a home! If you're in the market for your next home, our trained loan
agents will help you review all of the financing options available to you – call 877-528-3817 today!**

90



# GMAC Mortgage

**CUSTOMER INFORMATION**

Name: Michelle C Lawson
Margaret Lawson

Account Number:
Home Phone #: (215)843-0560

PROPERTY ADDRESS

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

0211\10 11 003  0020650 20120603 LH017807 GMREG  1 OZ DOM LH017800000* 146318  GM

MICHELLE C LAWSON
MARGARET LAWSON



| For information about your existing account, please call: 1-800-766-4622. |
|---|
| For information about refinancing or obtaining a new loan, please call: 1-866-690-8322 |

Please verify your mailing address, borrower and co-borrower information.  Make necessary corrections on this portion of the statement, detach and mail to address listed  for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | August 01, 2012 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $2,504.57 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $47,481.36 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | September 01, 2012 |

**For Customer Care inquiries call:** 1-800-766-4622
**For Insurance inquiries call:** 1-800-256-9962
**For Payment Arrangements call:** 1-800-850-4622

## Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 08/01/12 | 07/30/12 | $408.17 | $19.40 | $388.77 | | | | $30.72 |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).

See back for automatic payment sign-up information and other payment options.

## Important News

Now is a great time to buy a home! If you're in the market for your next home, our trained loan agents will help you review all of the financing options available to you – call 877-528-3817 today!

## See Reverse Side For Important Information And State Specific Disclosures



**CUSTOMER INFORMATION**　　　　PROPERTY ADDRESS

# GMAC Mortgage

Name:　　　Michelle C Lawson
　　　　　　Margaret Lawson

Account Number:
Home Phone #:　　(215)843-0560

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

02/11/10 11 00:3  0007570 20120906 L/058803 GMREG  1 OZ DOM L/058900XX* 146318  GM

MICHELLE C LAWSON
MARGARET LAWSON



| For information about your existing account, |
| please call: 1-800-766-4622. |
| |
| For information about refinancing or obtaining |
| a new loan, please call: 1-866-690-8322 |

Please verify your mailing address, borrower and co-borrower information.   Make necessary corrections on this portion of the statement, detach and mail to address listed  for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | September 04, 2012 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $2,912.74 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $47,481.36 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | October 01, 2012 |

**For Customer Care inquiries call:  1-800-766-4622**
**For Insurance inquiries call:  1-800-256-9962**
**For Payment Arrangements call:  1-800-850-4622**

## Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 09/01/12 | 09/04/12 | $408.17 | | $408.17 | | | | $7.45- |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

## Important News

**Considering a refinance or the purchase of a new home? We're here to help - call a loan
specialist today at 877-528-3817 to review all of the financing options available to you.**



See Reverse Side For Important Information And State Specific Disclosures



## GMAC Mortgage

**CUSTOMER INFORMATION**
**PROPERTY ADDRESS**

Name: Michelle C Lawson
Margaret Lawson

Account Number:
Home Phone #: (215)843-0560

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

02/1/10 11:003  0021288 20121107 LR06480T GMREG  1 OZ DOM LK08480000* 148318  GM

MICHELLE C LAWSON
MARGARET LAWSON



| For information about your existing account, please call: 1-800-766-4622. |
| For information about refinancing or obtaining a new loan, please call: 1-866-690-8322 |

Please verify your mailing address, borrower and co-borrower information. Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | |
| Statement Date | November 05, 2012 |
| Maturity Date | January 01, 2020 |
| Interest Rate | 8.87500 |
| Interest Paid Year-to-Date | $3,612.18 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $47,364.46 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $408.17 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $408.17 |
| Account Due Date | December 01, 2012 |

**For Customer Care inquiries call: 1-800-766-4622**
**For Insurance inquiries call: 1-800-256-9962**
**For Payment Arrangements call: 1-800-850-4622**

## Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 11/01/12 | 11/05/12 | $408.17 | $27.90 | $380.27 | | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full. For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

## Important News

Considering a refinance or the purchase of a new home? We're here to help - call a loan specialist today at 877-528-3817 to review all of the financing options available to you.



See Reverse Side For Important Information And State Specific Disclosures

## Exhibit O
**Lawson Deed of Trust**

AFTER RECORDING MAIL TO:
Trident Second Mortgage Company, Inc.
1409 NORTH KINGS HIGHWAY
CHERRY HILL, NJ 08034

CERTIFIED TRUE COPY

BY _Ruta Morris_

LOAN NO ▆▆▆▆▆

―――――――――――――――― [Space Above This Line For Recording Data] ――――――――――――――――

## MORTGAGE

THIS MORTGAGE is made this    3rd  day of  December 2004    , between the Mortgagor,
MICHELLE C. LAWSON, MARGARET LAWSON and JOSHUA E. LISS

(herein "Borrower"), and the Mortgagee,
Trident Second Mortgage Company, Inc.
, a corporation organized and existing under the laws of    PENNSYLVANIA
and whose address is    1409 NORTH KINGS HIGHWAY, CHERRY HILL, NJ 08034
(herein "Lender").
WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $   51,300.00
which indebtedness is evidenced by Borrower's note dated    December 3, 2004  and extensions
and renewals thereof, (herein "Note"), providing for monthly installments of principal and interest, with the
balance of the indebtedness, if not sooner paid, due and payable on    January 1, 2020        ;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon;
the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the
security of this Mortgage; and the performance of the covenants and agreements of Borrower herein
contained, Borrower does hereby mortgage, grant and convey to Lender the following described
property located in the County of    Philadelphia                    , State of Pennsylvania:

**As more fully described in exhibit "A" which is hereto and made a part hereof:**

**Being tax parcel #**

which has the address of        226 EAST GORGAS LANE
                                              [Street]

PHILADELPHIA              Pennsylvania            19119            ("Property Address");
[City]                                                        [Zip Code]

PENNSYLVANIA–SECOND MORTGAGE - 1/80 FNMA / FHLMC UNIFORM INSTRUMENT            FORM 3839 (9-94)
PAGE 1 OF

LOAN NO.

TOGETHER WITH all improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property".

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal of and interest indebtedness evidenced by the Note and late charges provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due date of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 17 hereof the Property is sold or the Property is otherwise aquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

LOAN NO.

**3. Aplication of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on Note, and then to the principal of the Note.

**4. Prior Mortgages and Deed of Trust; Charges; Liens.** Borrowers shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and any other hazards as Lender may require and in such amounts and for such periods as Lender may require.
The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.
In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.
If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender requires mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.
Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may take or cause to be made reasonable entries upon inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

LOAN NO.

**10. Borrower Not Released; Forbearance By Lender Not A Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co- signers.** The covenants and agreements herein contained shall bind, and the rights hereunder inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forebear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the property is located. The foregoing sentence shall not limit the applicability of federal laws to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses", and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims, or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full and all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. This notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

LOAN NO.

**NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:**

**17. Acceleration; Remedies. Upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided by applicable law specifying, among other things; (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceedings all expenses of foreclosure, including but not limited to, reasonable attorneys' fees, and costs of documentary evidence, abstracts and title reports.**

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to at least one hour before the commencement of bidding at sheriff's sale or other sale pursuant to this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrowers pay all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage and in enforcing Lender's remedies as provided in paragraph 17 hereof, including but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointments of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.
Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on the receiver's bond and reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Release** Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

**21. Interest Rate After Judgement.** Borrower agrees that the interest rate payable after judgement is entered on the Note or in an action of mortgage foreclosure shall be the rate stated in the Note.

## BALLOON PAYMENT RIDER TO NOTE AND SECURITY AGREEMENT

THIS BALLOON PAYMENT RIDER ("Rider") is made on December 3, 2004 , and amends a note in the amount of $ 51,300.00 ("the Note")made by the person(s) who sign below ("Borrower(s)") to Trident Second Mortgage Company, Inc. ("Lender") and the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same date and given by the Borrower(s) to secure repayment of the Note.

In addition to the Agreements and Provisions made in the Note and the Security Instrument, both Borrower(s) and Lender further agree as follows:

IF NOT PAID EARLIER, THIS LOAN IS PAYABLE IN FULL ON January 1, 2020 (THE "MATURITY DATE"

THE FINAL PAYMENT UNDER THE NOTE IS SUBSTANTIALLY GREATER THAN THE PREVIOUS PAYMENTS. AT THE MATURITY DATE, YOU MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE LOAN AND UNPAI INTEREST THEN DUE. THIS IS CALLED A "BALLOON PAYMENT".

THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, B REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

At least ninety (90) but not more than one hundred twenty (120) days prior to the Maturity Date, Lender must send Borrower(s) a notice which states the Maturity Date and the amount of the "Balloon Payment" which will be due on the Maturity Date (assuming all scheduled payments due between the date of the notice and the maturity date are made on time.)

Witness

Witness

Witness

Witness

X Borrower  MICHELLE C. LAWSON

Borrower  MARGARET LAWSON

Borrower  JOSHUA E. LISS

Borrower

TSMC BALLOON RIDER 6/00 jac

LOAN NO.

## REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
## UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

Witness:

| | |
|---|---|
| | X _____ (Seal) |
| | MICHELLE C. LAWSON -Borrower |
| | X _____ (Seal) |
| | MARGARET LAWSON -Borrower |
| | X _____ (Seal) |
| | JOSHUA E. LISS -Borrower |
| | _____ (Seal) |
| | -Borrower |

I hereby certify that the precise address of the Lender is
1409 NORTH KINGS HIGHWAY. CHERRY HILL.. NJ 08034

On behalf of the Lender:

By: CHERYL GRABOWSKI                    Agent of Lender

**COMMONWEALTH OF PENNSYLVANIA,** Philadelphia                    County ss:

On this the  3rd  day of  December  ,  2004  , before me, the undersigned officer, personally appeared   MICHELLE C. LAWSON. MARGARET LAWSON and JOSHUA E. LISS

known to me (or satisfactorily proven) to be the person(s)       whose name(s)      subscribed to the within instrument and acknowledged that   they   executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires:

```
NOTARIAL SEAL
RUTH TRAINOR, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 16, 2006
```

_____
Notary Public

PENNSYLVANIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT          FORM 3839 (9-94)
PAGE 6 OF

**<u>Exhibit P</u>**
**Lawson Second Mortgage Note**

CERTIFIED TRUE COPY

APP NO. [REDACTED]    SECONDARY MORTGAGE NOTE
This Agreement is subject to the provisions of the Secondary Mortgage Loan Act.    BY _Ruth Iron_

December 3, 2004                    Devon                    Pennsylvania
[Date]                             [City]                    [State]

226 EAST GORGAS LANE,PHILADELPHIA,PA 19119
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S. $    51,300.00    (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is    TRIDENT SECOND MORTGAGE COMPANY

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder".

**2. INTEREST**
    I will pay interest at a yearly rate of    8.8750%.
    Interest will be charged on unpaid principal until the full amount of principal has been paid.

**3. PAYMENTS**
    I will pay principal and interest by making payments every month of U.S. $    408.17
    I will make my monthly payments on the    1st    day of each month beginning on    February 1, 2005    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. If, on    January 1  ,  2020 I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
    I will make my monthly payments at    1409 NORTH KINGS HIGHWAY, CHERRY HILL, NJ 08034
    or at a different place if required by the Note Holder.

**4. BORROWER'S FAILURE TO PAY AS REQUIRED**
    **(A) Late Charge for Overdue Payments**
    If the Note Holder has not received the full amount of any of my monthly payments by the end of    15    calender days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.0 %    of my overdue payment. I will pay this late charge only once on any late payment.

    **(B) Default**
    If I do not pay the full amount of each monthly payment by the date stated in Section 3 above, I will be in default.
    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described below, the Note Holder will still have the right to do so if I am in default at a later time.
    **(C) Notice from Note Holder**
    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me, or, if it is not mailed, 30 days after the date on which it is delivered to me.
    **(D) Payment of Note Holder's Costs and Expenses**
    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**5. THIS NOTE SECURED BY A MORTGAGE**
    In addition to the protections given to the Note Holder under this Note, a Mortgage, dated    December 3, 2004 protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That mortgage describes how and under what conditions I may be required to make immediate payments in full of all amounts that I owe under this Note.

**6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE**
    I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment". A prepayment of only part of the unpaid principal is known as a "partial prepayment".
    I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

PENNSYLVANIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT            FORM 3939
PAGE 1 OF 2

LOAN NO.

**7. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer if to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**8. GIVING OF NOTICES**

Any notice that must be given to me under this Note, will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.  Any notice that must be given to the Note Holder will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

**9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE.**

If more than one person signs this note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be requried to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note ( as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

**NOTICE TO BORROWER:**
**Read this promissory note before you sign.**
**Do not sign this promissory note if it contains blank spaces.**
**This promissory note is secured by a secondary mortgage on your real property.**

| | | |
|---|---|---|
| _____ | _Michelle C___ (Seal) | |
| -Witness | MICHELLE C. LAWSON    -Borrower | |
| _____ | _Margaret Lawson___ (Seal) | |
| -Witness | MARGARET LAWSON    -Borrower | |
| _____ | _____ (Seal) | |
| -Witness | JOSHUA E. LISS    -Borrower | |
| _____ | _____ (Seal) | |
| -Witness | -Borrower | |

WITHOUT RECOURSE
PAY TO THE ORDER OF:


TRIDENT SECOND MORTGAGE COMPANY


_____
GERARD F. GRIESSER, PRESIDENT


PENNSYLVANIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT                    FORM 3939 (12/93)
                                        PAGE 2 OF 2

**<u>Exhibit Q</u>**
**Lawson Balloon Payment Rider**

## BALLOON PAYMENT RIDER TO NOTE AND SECURITY AGREEMENT

THIS BALLOON PAYMENT RIDER ("Rider") is made on December 3, 2004, and amends a note in the amount of $ 51,300.00 ("the Note")made by the person(s) who sign below ("Borrower(s)") to Trident Second Mortgage Company, Inc. ("Lender") and the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same date and given by the Borrower(s) to secure repayment of the Note.

In addition to the Agreements and Provisions made in the Note and the Security Instrument, both Borrower(s) and Lender further agree as follows:

**IF NOT PAID EARLIER, THIS LOAN IS PAYABLE IN FULL ON** January 1, 2020 **(THE "MATURITY DATE"**

**THE FINAL PAYMENT UNDER THE NOTE IS SUBSTANTIALLY GREATER THAN THE PREVIOUS PAYMENTS. AT THE MATURITY DATE, YOU MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE LOAN AND UNPAI INTEREST THEN DUE. THIS IS CALLED A "BALLOON PAYMENT".**

**THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, B REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

At least ninety (90) but not more than than one hundred twenty (120) days prior to the Maturity Date, Lender must send Borrower(s) a notice which states the Maturity Date and the amount of the "Balloon Payment" which will be due on the Maturity Date (assuming all scheduled payments due between the date of the notice and the maturity date are made on time.)

Witness _____    X _____
                                      Borrower  MICHELLE C. LAWSON

Witness _____    _____
                                      Borrower  MARGARET LAWSON

Witness _____    _____
                                      Borrower  JOSHUA E. LISS

Witness _____    _____
                                      Borrower

TSMC BALLOON RIDER 6/00 jac

## Exhibit R
**Lawson Affidavit of Borrower's Certification and TILA Disclosure Statement**

**AFFIDAVIT OF**
**BORROWER'S CERTIFICATIONS**

**LENDER:** Trident Second Mortgage Company, Inc.

**DATE:** 12/03/04

**LOAN NUMBER:** ████████

**MORTGAGOR:** MICHELLE C. LAWSON, MARGARET LAWSON and JOSHUA E. LISS

**PROPERTY:** 226 EAST GORGAS LANE
PHILADELPHIA, PA 19119

**Employment Status:** I/We am/are currently employed in the same position, and that my/our income has not adversely changed since the time I/we made application for this mortgage loan.

**Mailing Adress:** My/our correct mailing address is the address listed above, or as indicated below if different

MAILING ADDRESS:    *226 E. Gorgas Lane*
*Phila Pa 19119*

My/Our **occupancy** intention is as follows:

A.    (X)    I/We will occupy the above property as my/our primary residence within thirty days of closing. The property is being purchased for my/our use and occupancy.

B.    ( )    If REFINANCE, as of the date of my/our application, I/we presently occupy the above property as my/our primary residence. I/we will continue to occupy the property as my/our primary residence.

C.    ( )    I/We will use the above property as a second/vacation home. It is being purchased for my/our use and occupancy.

D.    ( )    If REFINANCE, as of the date of my/our application, I/we presently use the above property as a second/vacation home. I/We will continue to occupy the property as my/our second/vacation home.

E.    ( )    I/We do not intend to occupy the property as my/our primary residence.

**Prior Financing:** I/We did not obtain financing prior to our mortgage with    TRIDENT SECOND MORTGAGE CO and no part of our down payment was borrowed.

**Disclosures:** We, the undersigned, hereby acknowledge having received a copy of the attached GOOD FAITH ESTIMATE OF SETTLEMENT COSTS, FEDERAL TRUTH-IN-LENDING DISCLOSURE, HUD GUIDE TO HOME BUYERS (purchases), the correct PROGRAM DISCLOSURE for the Loan which I/we take today and the CONSUMER HANDBOOK ON ADJUSTABLE RATE MORTGAGES (if an adjustable rate loan) prior to the payment of any settelement costs or within three (3) business days of my/our application, whichever was earlier.

I/WE CERTIFY THAT THE ABOVE IS TRUE AND CORRECT.

X _(Michelle C. Lawson)_____    X _(Margaret Lawson)_____
(Borrower) MICHELLE C. LAWSON        (Borrower) MARGARET LAWSON

X _(Joshua E. Liss)_____    X _____
(Borrower) JOSHUA E. LISS        (Borrower)

STATE OF: *Pennsylvania*        COUNTY OF: *Philadelphia*

Sworn and subscribed to me this *3rd* day of *December*, *2004*

Notary Public: _Ruth Trainor_

My Commission Expires:

> NOTARIAL SEAL
> RUTH TRAINOR, Notary Public
> City of Philadelphia, Phila. County
> My Commission Expires April 16, 2006

TSMC Affidavit of Borrower
6/00 Jac

## FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

APPLICATION [REDACTED]                    11/01/04

### Borrowers

MICHELLE C. LAWSON
MARGARET LAWSON
JOSHUA E. LISS

7918 ARDLEIGH STREET
PHILADELPHIA, PA 19119

LOAN #:
TRIDENT SECOND MORTGAGE COMPANY
1409 NORTH KINGS HIGHWAY
CHERRY HILL, NJ 08034

### Property

226 E. GORGAS LANE
PHILADELPHIA, PA 19119

### Itemization of Amount Financed

| | | |
|---|---|---|
| $ | 51,187.74 (e) Total amount financed | $   51,187.74 (e) |
| $ | 112.26 (e) Interim Interest | |
| $ | 112.26 (e) Total prepaid finance charges | $    112.26 (e) |
| $ | 100.00 (e) Recording Fees | |
| $ | 100.00 (e) Total amount paid to others | |

LOAN AMOUNT     $   51,300.00 (e)

THE FIRST PAYMENT FOR YOUR
PURCHASE MONEY SECOND MORTGAGE

FOR:      $   51,300.00
AT:             8.875000%
WHICH WILL PAY OFF IN   180 PAYMENTS

IS BROKEN DOWN AS FOLLOWS:

| | |
|---|---|
| PRINCIPAL &/OR INTEREST | $   408.17(e) |
| Mortgage Insurance | 0.00(e) |
| Taxes | 0.00(e) |
| Insurance | 0.00(e) |
| Other | 0.00(e) |
| TOTAL PAYMENT | $   408.17(e) |

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.8747% (e) | $   62,820.36 (e) | $   51,187.74 (e) | $   114,008.10 (e) |

### Your Payment Schedule Will Be:

179 payments monthly of $     408.17 (e)  beginning January 1, 2005
1 payment of $   40,945.67(e)  due on December 1, 2019

*PLEASE SIGN AND RETURN*

Security Interest:  You are giving a security interest in the property located at
226 E. GORGAS LANE, PHILADELPHIA, PA 19119.
Late Charge:  If payment is 15 days late, you will be charged  5.0000% of the payment.
Prepayment:  If you pay off early, you will not have to pay a penalty.
If you pay off early, you will not be entitled to a refund of part of the finance charge.
Assumption:  Someone buying your home cannot assume the remainder of the mortgage
on the original terms.
This Obligation:  WILL have a demand feature.
Insurance: You may obtain property insurance from anyone you want that is acceptable to Lender.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties.

e means an estimate

I (We) hereby acknowledge receiving a completed copy of this disclosure.          Date 11 / 4 / 04

_Michelle Lawson_
MICHELLE C. LAWSON

_Margaret Lawson_
MARGARET LAWSON

_Joshua Liss_
JOSHUA E. LISS

ICS/MWRGZ1/I/6/92/LASER

## FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

— Borrowers —

MICHELLE C. LAWSON
MARGARET LAWSON
JOSHUA E. LISS

7918 ARDLEIGH STREET
PHILADELPHIA, PA 19119

APPLICATI███  11/01/04
LOAN #:
TRIDENT SECOND MORTGAGE COMPANY
1409 NORTH KINGS HIGHWAY
CHERRY HILL, NJ 08034
— Property —
226 E. GORGAS LANE
PHILADELPHIA, PA 19119

### Itemization of Amount Financed

| | | |
|---|---|---|
| $ | 51,187.74 (e) Total amount financed | $   51,187.74 (e) |
| $ | 112.26 (e) Interim Interest | |
| $ | 112.26 (e) Total prepaid finance charges | $    112.26 (e) |
| $ | 100.00 (e) Recording Fees | |
| $ | 100.00 (e) Total amount paid to others | |

LOAN AMOUNT   $   51,300.00 (e)

THE FIRST PAYMENT FOR YOUR
PURCHASE MONEY SECOND MORTGAGE

FOR:    $   51,300.00
AT:      8.875000%
WHICH WILL PAY OFF IN   180 PAYMENTS

IS BROKEN DOWN AS FOLLOWS:

| | | |
|---|---|---|
| PRINCIPAL &/OR INTEREST | $ | 408.17(e) |
| Mortgage Insurance | | 0.00(e) |
| Taxes | | 0.00(e) |
| Insurance | | 0.00(e) |
| Other | | 0.00(e) |
| TOTAL PAYMENT | $ | 408.17(e) |

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.8747% (e) | $   62,820.36 (e) | $   51,187.74 (e) | $   114,008.10 (e) |

### Your Payment Schedule Will Be:

179 payments monthly of $    408.17 (e) beginning January 1, 2005
1 payment of $   40,945.67(e)  due on December 1, 2019

Security Interest:   You are giving a security interest in the property located at
                     226 E. GORGAS LANE, PHILADELPHIA, PA 19119.
Late Charge:   If payment is 15 days late, you will be charged  5.0000% of the payment.
Prepayment:   If you pay off early, you will not have to pay a penalty.
              If you pay off early, you will not be entitled to a refund of part of the finance charge.
Assumption:   Someone buying your home cannot assume the remainder of the mortgage
              on the original terms.
This Obligation:   WILL have a demand feature.
   Insurance: You may obtain property insurance from anyone you want that is acceptable to Lender.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date,
prepayment refunds and penalties.

e means an estimate

I (We) hereby acknowledge receiving a completed copy of this disclosure.        Date 11/4/04

_Michelle C. Lawson_                          _Margaret Lawson_
MICHELLE C. LAWSON                            MARGARET LAWSON

_Joshua E. Liss_
JOSHUA E. LISS

ICS/MWRGZ1//6/92/LASER

**FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT**

APPLICAT█ ██████████     12/03/04

───── Borrowers ─────

MICHELLE C. LAWSON
MARGARET LAWSON
JOSHUA E. LISS

7918 ARDLEIGH STREET
PHILADELPHIA, PA 19119

LOAN #:
TRIDENT SECOND MORTGAGE COMPANY
1409 NORTH KINGS HIGHWAY
CHERRY HILL, NJ 08034
───── Property ─────
226 EAST GORGAS LANE
PHILADELPHIA, PA 19119

───── Itemization of Amount Financed ─────

| $ | 50,938.27 | Total amount financed | $ | 50,938.27 |
|---|---|---|---|---|
| $ | 361.73 | Interim Interest | | |
| $ | 361.73 | Total prepaid finance charges | $ | 361.73 |
| $ | 100.00 | Recording Fees | | |
| $ | 100.00 | Total amount paid to others | | |

THE FIRST PAYMENT FOR YOUR
PURCHASE MONEY SECOND MORTGAGE

FOR:    $  51,300.00
AT:        8.875000%
WHICH WILL PAY OFF IN   180 PAYMENTS

IS BROKEN DOWN AS FOLLOWS:

| PRINCIPAL &/OR INTEREST | $ | 408.17 |
|---|---|---|
| Mortgage Insurance | | 0.00 |
| Taxes | | 0.00 |
| Insurance | | 0.00 |
| Other | | 0.00 |
| TOTAL PAYMENT | $ | 408.17 |

LOAN AMOUNT    $    51,300.00

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.8744% | $    63,069.83 | $    50,938.27 | $    114,008.10 |

───── Your Payment Schedule Will Be: ─────

179 payments monthly of $    408.17  beginning February 1, 2005
  1 payment of $   40,945.67  due on January 1, 2020

Security Interest:   You are giving a security interest in the property located at
226 EAST GORGAS LANE, PHILADELPHIA, PA 19119.

Late Charge:   If payment is 15 days late, you will be charged  5.0000% of the payment.

Prepayment:   If you pay off early, you will not have to pay a penalty.
If you pay off early, you will not be entitled to a refund of part of the finance charge.

Assumption:   Someone buying your home cannot assume the remainder of the mortgage
on the original terms.

This Obligation:   WILL have a demand feature.

Insurance: You may obtain property insurance from anyone you want that is acceptable to Lender.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties.

e means an estimate

I (We) hereby acknowledge receiving a completed copy of this disclosure.

Date 12/3/04

_Michelle C. _____
MICHELLE C. LAWSON

_Margaret Lawson_
MARGARET LAWSON

_Joshua _____
JOSHUA E. LISS

ICS/MWRG2L//6/92/LASER

**Exhibit S**
**Lawson Servicing Notes**

ny-1145045

| Account Number | 1 |
| --- | --- |
| ███████ | |

# Loan History

Date Data as-of: March 5, 2014

| Account Number | Name Primary Borrower | Name Secondary Borrower | Property Address | Mailing Address |
|---|---|---|---|---|
| ███████ | MICHELLE C LAWSON | MARGARET LAWSON | 226 EAST GORGAS LANE | 226 E GORGAS LN |
| | | | PHILADELPHIA | PHILADELPHIA |
| | | | PA | PA |
| | | | 19119-0000 | 19119-1929 |

**Investor Info**

| | |
|---|---|
| Investor Acct No - Prim | ████████ |
| Investor Number | 42080 |
| Investor Name Full | WELLS FARGO BANK, N.A. |
| Investor Id | |

**Previous Servicer Info**

| | |
|---|---|
| Previous Account Number | 9067362468 |
| Seller Company Name | SOVEREIGN BANK |

**Loan Info**

| | |
|---|---|
| Arm Flag | N |
| Loan Type | Conventional |
| Lien Position | 02 |
| Interest Rate | 8.875% |
| Collection Status | PO |

**Dates**

| | |
|---|---|
| Int Collected To | 01/01/2014 |
| Next Due | 02/01/2014 |
| Last Payment | 01/02/2014 |
| Last Activity | 02/03/2014 |
| Setup Date | 03/20/2007 |
| Maturity Date | 01/01/2020 |

**Current Balances**

| | |
|---|---|
| Principal | $0.00 |
| Escrow | $0.00 |
| Unapplied | $0.00 |
| Buydown | $0.00 |

**Uncollected**

| | |
|---|---|
| Late Charges | $0.00 |
| Interest | $0.00 |
| Fees | $0.00 |
| Opt | $0.00 |

**Year-To-Date**

| | |
|---|---|
| Interest | $350.97 |
| Taxes | $0.00 |

**Financial**

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ███ | 02/03/2014 | 01/01/2014 | $0.00 | Service Release | | SV | 32580 | $0.00 | $46,505.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ███ | 02/03/2014 | 01/01/2014 | $46,505.03 | Service Release | | SVT | 32580 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ███ | 01/02/2014 | 01/01/2014 | $46,505.03 | PAYMENT | | AP | 00301 | $408.17 | $57.20 | $350.97 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ███ | 12/03/2013 | 12/01/2013 | $46,562.23 | PAYMENT | | AP | 00322 | $408.17 | $135.07 | $273.10 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ███ | 11/25/2013 | 11/01/2013 | $0.00 | FEE | 003 | FWV | 08178 | ($40.00) | $0.00 | $0.00 | $0.00 | ($40.00) | $0.00 | $0.00 | $0.00 |
| ███ | 11/21/2013 | 11/01/2013 | $46,697.30 | PAYMENT | | AP | 00322 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ███ | 11/19/2013 | 10/01/2013 | $0.00 | Comment | | SLC | 00000 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ███ | 11/13/2013 | 10/01/2013 | $0.00 | FEE | 003 | FB | 19332 | $40.00 | $0.00 | $0.00 | $0.00 | $40.00 | $0.00 | $0.00 | $0.00 |
| ███ | 11/13/2013 | 10/01/2013 | $46,697.30 | PAYMENT | | PR1 | 19332 | ($408.17) | ($44.83) | ($363.34) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ███ | 11/04/2013 | 11/01/2013 | $46,652.47 | PAYMENT | | AP | 00330 | $408.17 | $44.83 | $363.34 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ███ | 10/03/2013 | 10/01/2013 | $46,697.30 | PAYMENT | | AP | 00330 | $408.17 | $67.05 | $341.12 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ███ | 09/03/2013 | 09/01/2013 | $46,764.35 | PAYMENT | | AP | 00330 | $408.17 | $77.87 | $330.30 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

# Loan History

Date Data as-of: March 5, 2014

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 08/05/2013 | 08/01/2013 | $46,842.22 | PAYMENT | | AP | 00330 | $408.17 | $88.65 | $319.52 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 07/10/2013 | 07/01/2013 | $46,930.87 | PAYMENT | | AP | 00321 | $408.17 | $8.70 | $399.47 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 06/03/2013 | 06/01/2013 | $46,939.57 | PAYMENT | | AP | 00330 | $408.17 | $53.95 | $354.22 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 05/03/2013 | 05/01/2013 | $46,993.52 | PAYMENT | | AP | 00330 | $408.17 | $99.00 | $309.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 04/08/2013 | 04/01/2013 | $47,092.52 | PAYMENT | | AP | 00330 | $408.17 | $75.57 | $332.60 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 03/08/2013 | 03/01/2013 | $47,168.09 | PAYMENT | | AP | 00312 | $408.17 | $24.57 | $383.60 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 02/04/2013 | 02/01/2013 | $47,192.66 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 12/31/2012 | 01/01/2013 | $47,192.66 | PAYMENT | | AP | 00330 | $408.17 | $109.13 | $299.04 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 12/03/2012 | 12/01/2012 | $47,301.79 | PAYMENT | | AP | 00330 | $408.17 | $62.67 | $345.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 11/05/2012 | 11/01/2012 | $47,364.46 | PAYMENT | | AP | 00330 | $408.17 | $27.90 | $380.27 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 10/01/2012 | 10/01/2012 | $47,392.36 | PAYMENT | | AP | 00330 | $408.17 | $89.00 | $319.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 09/04/2012 | 09/01/2012 | $47,481.36 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 07/30/2012 | 08/01/2012 | $47,481.36 | PAYMENT | | AP | 00330 | $408.17 | $19.40 | $388.77 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 06/29/2012 | 07/01/2012 | $47,500.76 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 05/22/2012 | 06/01/2012 | $47,500.76 | PAYMENT | | AP | 00330 | $408.17 | $187.86 | $220.31 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 05/03/2012 | 05/01/2012 | $47,688.62 | PAYMENT | | AP | 00330 | $408.17 | $13.81 | $394.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 03/30/2012 | 04/01/2012 | $47,702.43 | PAYMENT | | AP | 00330 | $408.17 | $82.84 | $325.33 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 03/02/2012 | 03/01/2012 | $47,785.27 | PAYMENT | | AP | 00330 | $408.17 | $48.71 | $359.46 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 02/03/2012 | 02/01/2012 | $47,833.98 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 12/26/2011 | 01/01/2012 | $47,833.98 | PAYMENT | | AP | 00330 | $408.17 | $81.95 | $326.22 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 11/28/2011 | 12/01/2011 | $47,915.93 | PAYMENT | | AP | 00330 | $408.17 | $58.22 | $349.95 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 10/31/2011 | 11/01/2011 | $47,974.15 | PAYMENT | | AP | 00330 | $408.17 | $81.00 | $327.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 10/01/2011 | 10/01/2011 | $48,055.15 | PAYMENT | | AP | 00330 | $408.17 | $34.00 | $374.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 08/30/2011 | 09/01/2011 | $48,089.15 | PAYMENT | | AP | 00330 | $408.17 | $103.50 | $304.67 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 08/04/2011 | 08/01/2011 | $48,192.65 | PAYMENT | | AP | 00330 | $408.17 | $21.30 | $386.87 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 07/04/2011 | 07/01/2011 | $48,213.95 | PAYMENT | | AP | 00330 | $408.17 | $79.38 | $328.79 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 06/06/2011 | 06/01/2011 | $48,293.33 | PAYMENT | | AP | 00330 | $408.17 | $63.82 | $344.35 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 05/07/2011 | 05/01/2011 | $48,357.15 | PAYMENT | | AP | 00312 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 04/04/2011 | 04/01/2011 | $48,357.15 | PAYMENT | | AP | 00322 | $408.17 | $4.95 | $403.22 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 03/01/2011 | 03/01/2011 | $48,362.10 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 01/24/2011 | 02/01/2011 | $48,362.10 | PAYMENT | | AP | 00330 | $408.17 | $54.99 | $353.18 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 12/23/2010 | 01/01/2011 | $48,417.09 | PAYMENT | | AP | 00330 | $408.17 | $89.72 | $318.45 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

# Loan History

Date Data as-of: March 5, 2014

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ▮ | 11/26/2010 | 12/01/2010 | $48,506.81 | PAYMENT | | AP | 00330 | $408.17 | $77.40 | $330.77 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 11/01/2010 | 11/01/2010 | $48,584.21 | PAYMENT | | AP | 00301 | $408.17 | $71.02 | $337.15 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 10/02/2010 | 10/01/2010 | $48,655.23 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 08/27/2010 | 09/01/2010 | $48,655.23 | PAYMENT | | AP | 00330 | $408.17 | $111.73 | $296.44 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 08/02/2010 | 08/01/2010 | $48,766.96 | PAYMENT | | AP | 00330 | $408.17 | $21.52 | $386.65 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 07/05/2010 | 07/01/2010 | $48,788.48 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 05/27/2010 | 06/01/2010 | $48,788.48 | PAYMENT | | AP | 00330 | $408.17 | $75.49 | $332.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 04/29/2010 | 05/01/2010 | $48,863.97 | PAYMENT | | AP | 00330 | $408.17 | $4.17 | $404.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 03/26/2010 | 04/01/2010 | $48,868.14 | PAYMENT | | AP | 00330 | $408.17 | $74.95 | $333.22 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 02/26/2010 | 03/01/2010 | $48,943.09 | PAYMENT | | AP | 00330 | $408.17 | $74.45 | $333.72 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 01/29/2010 | 02/01/2010 | $49,017.54 | PAYMENT | | AP | 00330 | $408.17 | $64.47 | $343.70 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 01/02/2010 | 01/01/2010 | $49,082.01 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 11/27/2009 | 12/01/2009 | $49,082.01 | PAYMENT | | AP | 00330 | $408.17 | $73.51 | $334.66 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 10/30/2009 | 11/01/2009 | $49,155.52 | PAYMENT | | AP | 00330 | $408.17 | $61.13 | $347.04 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 10/01/2009 | 10/01/2009 | $49,216.65 | PAYMENT | | AP | 00330 | $408.17 | $48.80 | $359.37 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 09/01/2009 | 09/01/2009 | $49,265.45 | PAYMENT | | AP | 00330 | $408.17 | $48.93 | $359.24 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 08/03/2009 | 08/01/2009 | $49,314.38 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 06/29/2009 | 07/01/2009 | $49,314.38 | PAYMENT | | AP | 00330 | $408.17 | $107.74 | $300.43 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 06/04/2009 | 06/01/2009 | $49,422.12 | PAYMENT | | AP | 00330 | $408.17 | $11.52 | $396.65 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 05/02/2009 | 05/01/2009 | $49,433.64 | PAYMENT | | AP | 00330 | $408.17 | $23.35 | $384.82 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 03/31/2009 | 04/01/2009 | $49,456.99 | PAYMENT | | AP | 00330 | $408.17 | $23.17 | $385.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 02/27/2009 | 03/01/2009 | $49,480.16 | PAYMENT | | AP | 00330 | $408.17 | $70.82 | $337.35 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 01/30/2009 | 02/01/2009 | $49,550.98 | PAYMENT | | AP | 00330 | $408.17 | $56.43 | $351.74 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 01/06/2009 | 01/01/2009 | $49,607.41 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 11/28/2008 | 12/01/2008 | $49,607.41 | PAYMENT | | AP | 00330 | $408.17 | $22.01 | $386.16 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 10/27/2008 | 11/01/2008 | $49,629.42 | PAYMENT | | AP | 00330 | $408.17 | $102.88 | $305.29 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 10/04/2008 | 10/01/2008 | $49,732.30 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 08/29/2008 | 09/01/2008 | $49,732.30 | PAYMENT | | AP | 00330 | $408.17 | $57.09 | $351.08 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 07/31/2008 | 08/01/2008 | $49,789.39 | PAYMENT | | AP | 00330 | $408.17 | $60.88 | $347.29 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 07/03/2008 | 07/01/2008 | $49,850.27 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 05/30/2008 | 06/01/2008 | $49,850.27 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 04/26/2008 | 05/01/2008 | $49,850.27 | PAYMENT | | AP | 00330 | $408.17 | $56.26 | $351.91 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

# Loan History

Date Data as-of:  March 5, 2014

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ▮ | 03/28/2008 | 04/01/2008 | $49,906.53 | PAYMENT | | AP | 00330 | $408.17 | $58.21 | $349.96 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 02/29/2008 | 03/01/2008 | $49,964.74 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 02/02/2008 | 02/01/2008 | $49,964.74 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 12/22/2007 | 01/01/2008 | $49,964.74 | PAYMENT | | AP | 00330 | $408.17 | $134.17 | $274.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 12/03/2007 | 12/01/2007 | $50,098.91 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 10/29/2007 | 11/01/2007 | $50,098.91 | PAYMENT | | AP | 00330 | $408.17 | $30.00 | $378.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 10/01/2007 | 10/01/2007 | $50,128.91 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 08/30/2007 | 09/01/2007 | $50,128.91 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 07/23/2007 | 08/01/2007 | $50,128.91 | PAYMENT | | AP | 00330 | $408.17 | $102.82 | $305.35 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 06/26/2007 | 07/01/2007 | $50,231.73 | PAYMENT | | AP | 00330 | $408.17 | $118.51 | $289.66 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 06/04/2007 | 06/01/2007 | $50,350.24 | PAYMENT | | AP | 00330 | $408.17 | $0.00 | $408.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 04/30/2007 | 05/01/2007 | $50,350.24 | PAYMENT | | AP | 00730 | $408.17 | $28.43 | $379.74 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ▮ | 04/02/2007 | 04/01/2007 | $50,378.67 | PAYMENT | | AP | 00321 | $408.17 | $28.22 | $379.95 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

Comments:

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ | | 02/13/2014 | CBR | CR BUR RPT STATUS=N;EXPIRE DT =  02/27/14 | SYSTEM ID |
| ▮ | | 02/13/2014 | CBR | CHANGE IN CB 01  BORROWERS NAME,SSN,ADDR | SYSTEM ID |
| ▮ | | 02/13/2014 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| ▮ | CBR | 01/13/2014 | NT | acdv rcvd from b2 Disputes present/previous | JUDY PABIONA |
| ▮ | CBR | 01/13/2014 | NT | Account Status/Payment History Profile/Payment | JUDY PABIONA |
| ▮ | CBR | 01/13/2014 | NT | Rating. reported acccnt current (11). in rev | JUDY PABIONA |
| ▮ | CBR | 01/13/2014 | NT | 09/11-12/13 no late/s. credit reporting remains | JUDY PABIONA |
| ▮ | CBR | 01/13/2014 | NT | off due to qwr  // judyp2001268 | JUDY PABIONA |
| ▮ | | 01/09/2014 | CBR | CR BUR RPT STATUS=N;EXPIRE DT =  02/27/14 | SYSTEM ID |
| ▮ | | 01/09/2014 | CBR | CHANGE IN CB 01  BORROWERS NAME,SSN,ADDR | SYSTEM ID |
| ▮ | | 01/09/2014 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| ▮ | INQ90 | 01/08/2014 | CIT | 017 DONE 01/08/14 BY TLR 01443 | LATONYA ROBERTSON |
| ▮ | INQ90 | 01/08/2014 | CIT | TSK TYP 103-DOCUMENT REQUES | LATONYA ROBERTSON |
| ▮ | INQ90 | 01/08/2014 | CIT | 017 closing cit mailed HUD & APP to m/a on file | LATONYA ROBERTSON |
| ▮ | INQ90 | 01/08/2014 | CIT | thnxs lr 4073 | LATONYA ROBERTSON |
| ▮ | | 01/08/2014 | OL | WDOYCUS - GENERAL INQUIRY INFO ENCLOSED | LATONYA ROBERTSON |
| ▮ | | 01/03/2014 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ███ | INQ | 12/30/2013 | NT | b2 ci re credit reporting amendment...since there | EMMANUEL VILLAR |
| ███ | INQ | 12/30/2013 | NT | are three names on the note...which includes | EMMANUEL VILLAR |
| ███ | INQ | 12/30/2013 | NT | joshua liss but not reported on the credit | EMMANUEL VILLAR |
| ███ | INQ | 12/30/2013 | NT | reporting agency...adv to send supporting doc to | EMMANUEL VILLAR |
| ███ | INQ | 12/30/2013 | NT | credit reporting agency and process the review | EMMANUEL VILLAR |
| ███ | INQ | 12/30/2013 | NT | within 3 biz days from the date it was | EMMANUEL VILLAR |
| ███ | INQ | 12/30/2013 | NT | received...emmanuelv2001017 | EMMANUEL VILLAR |
| ███ | INQ | 12/30/2013 | NT | b1 ci asked who are the borrowers on the loan , | MONALISA AMOTO |
| ███ | INQ | 12/30/2013 | NT | adv the  3  borrowers , lisaa2001080 | MONALISA AMOTO |
| ███ | INQ75 | 12/30/2013 | CIT | 017 NEW CIT103-DOCUMENT REQUESTS-MAIL TO CUST | MONALISA AMOTO |
| ███ | INQ75 | 12/30/2013 | CIT | new cit 103 , pls send the ff docs to b2 | MONALISA AMOTO |
| ███ | INQ75 | 12/30/2013 | CIT | mailing add on file , said for personal copy , | MONALISA AMOTO |
| ███ | INQ75 | 12/30/2013 | CIT | hud1 imaged# 682831389 dated 2007-08-08 , tapp | MONALISA AMOTO |
| ███ | INQ75 | 12/30/2013 | CIT | imaged# 682831386 dated 2007-08-08 , adv tat | MONALISA AMOTO |
| ███ | INQ75 | 12/30/2013 | CIT | thanks lisaa2001080 | MONALISA AMOTO |
| ███ | | 12/12/2013 | CBR | CR BUR RPT STATUS=N;EXPIRE DT =  02/27/14 | SYSTEM ID |
| ███ | | 12/12/2013 | CBR | CHANGE IN CB 01   BORROWERS NAME,SSN,ADDR | SYSTEM ID |
| ███ | | 12/12/2013 | CBR | CURRENT:    < 30 DAYS | SYSTEM ID |
| ███ | INQ | 12/08/2013 | NT | b2 ci inq next payment due adv 01/01/14 iao | DON ANTHONY EUSEBIO |
| ███ | INQ | 12/08/2013 | NT | 408.17 don e 200103.3 | DON ANTHONY EUSEBIO |
| ███ | INQ | 12/06/2013 | NT | b1 inq about outs fees, adv not outs fees on | ISIS MUNOZ |
| ███ | INQ | 12/06/2013 | NT | account. isis m 8406224 | ISIS MUNOZ |
| ███ | CBR | 12/04/2013 | NT | CBR Suppressed for QWR | RACHEL KRUGER |
| ███ | INQ30 | 12/04/2013 | CIT | 016 DONE 12/04/13 BY TLR 23694 | DAWN VAUGHN |
| ███ | INQ30 | 12/04/2013 | CIT | TSK TYP 258-CC COR TRACKING | DAWN VAUGHN |
| ███ | INQ30 | 12/04/2013 | CIT | 016 clsngcit 258- multiple corr rec one resp sent | DAWN VAUGHN |
| ███ | INQ30 | 12/04/2013 | CIT | both corr inaged with resp DV 5549 | DAWN VAUGHN |
| ███ | INQ30 | 12/04/2013 | CIT | 014 DONE 12/04/13 BY TLR 23694 | DAWN VAUGHN |
| ███ | INQ30 | 12/04/2013 | CIT | TSK TYP 258-CC COR TRACKING | DAWN VAUGHN |
| ███ | INQ30 | 12/04/2013 | CIT | 014 clsng cit 258- orig ltr with pymnt hist sent | DAWN VAUGHN |
| ███ | INQ30 | 12/04/2013 | CIT | reg two corr rec verified last two pymnts and | DAWN VAUGHN |
| ███ | INQ30 | 12/04/2013 | CIT | gaves status of acct DV 5549 | DAWN VAUGHN |
| ███ | INQ10 | 12/04/2013 | CIT | 015 DONE 12/04/13 BY TLR 01234 | MICHELLE MCNAMEE |
| ███ | INQ10 | 12/04/2013 | CIT | TSK TYP 187-ORIGINAL LETTER | MICHELLE MCNAMEE |
| ███ | INQ10 | 12/04/2013 | CIT | 015 closing cit 630/187 - snt ltr to cust adv of | MICHELLE MCNAMEE |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ | INQ10 | 12/04/2013 | CIT | DSI/nov pmt rflcts uncoll int due snce pmt | MICHELLE MCNAMEE |
| ▮ | INQ10 | 12/04/2013 | CIT | rcvd past due date. snt ltr for imaging. | MICHELLE MCNAMEE |
| ▮ | INQ10 | 12/04/2013 | CIT | michellem | MICHELLE MCNAMEE |
| ▮ | | 12/04/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ | INQ30 | 12/03/2013 | CIT | 016 NEW CIT258-CC COR TRACKING: PAYMENT DISPUTE | SUSAN PARKER |
| ▮ | INQ30 | 12/03/2013 | CIT | corr rcvd | SUSAN PARKER |
| ▮ | INQ30 | 12/03/2013 | NT | Issued Correspondence Acknowledgement | RACHEL KRUGER |
| ▮ | INQ30 | 12/03/2013 | NT | Letter. | RACHEL KRUGER |
| ▮ | | 12/03/2013 | OL | WDOYCorr recvd-response pending1 | RACHEL KRUGER |
| ▮ | INQ25 | 12/02/2013 | NT | ENHANCED HISTORY LETTER PRINTED | TINA JARAMILLO |
| ▮ | INQ25 | 12/02/2013 | CIT | 010 DONE 12/02/13 BY TLR 01369 | TINA JARAMILLO |
| ▮ | INQ25 | 12/02/2013 | CIT | TSK TYP 103-DOCUMENT REQUES | TINA JARAMILLO |
| ▮ | INQ25 | 12/02/2013 | CIT | 010 closing cit mailed hsty. | TINA JARAMILLO |
| ▮ | INQ25 | 11/29/2013 | CIT | 010 fyi prntd/mld nsf ltr-retargeting to 110 as | KRIS RUDDY |
| ▮ | INQ25 | 11/29/2013 | CIT | requested-kris r 7504 | KRIS RUDDY |
| ▮ | | 11/29/2013 | OL | WDOYCUS - GENERAL INQUIRY INFO ENCLOSED | KRIS RUDDY |
| ▮ | ALT03 | 11/26/2013 | CIT | 015 Retargeting cit 630 to 187-Please send ltr | DIANE KOHRS |
| ▮ | ALT03 | 11/26/2013 | CIT | explaining the o/s amt of $125.49 is due to | DIANE KOHRS |
| ▮ | ALT03 | 11/26/2013 | CIT | uncollected interest since the payment posted | DIANE KOHRS |
| ▮ | ALT03 | 11/26/2013 | CIT | late. | DIANE KOHRS |
| ▮ | CBR | 11/26/2013 | NT | CBR Suppressed for QWR | RACHEL KRUGER |
| ▮ | CBR | 11/26/2013 | NT | CBR Suppressed for QWR | RACHEL KRUGER |
| ▮ | | 11/25/2013 | DM | PROMISE BROKEN 11/25/13 PROMISE DT 11/25/13 | SYSTEM ID |
| ▮ | INQ85 | 11/25/2013 | CIT | 015 NEW CIT630-HELOC RESEARCH | DANIELA FLORES |
| ▮ | INQ85 | 11/25/2013 | CIT | Open new cit 630. B2 cld re the outs item on | DANIELA FLORES |
| ▮ | INQ85 | 11/25/2013 | CIT | the act of $125.49, adv her that is outs | DANIELA FLORES |
| ▮ | INQ85 | 11/25/2013 | CIT | interest on the act due to int being | DANIELA FLORES |
| ▮ | INQ85 | 11/25/2013 | CIT | calculated per day, she understood but wants | DANIELA FLORES |
| ▮ | INQ85 | 11/25/2013 | CIT | explanation in writting. Pls send her a ltr | DANIELA FLORES |
| ▮ | INQ85 | 11/25/2013 | CIT | explaining the $125.49 outs on the loan, | DANIELA FLORES |
| ▮ | INQ85 | 11/25/2013 | CIT | Thanks!! Send it to m/a on file .. | DANIELA FLORES |
| ▮ | INQ85 | 11/25/2013 | CIT | DanielaF/8406031 | DANIELA FLORES |
| ▮ | INQ30 | 11/25/2013 | CIT | 014 NEW CIT258-CC COR TRACKING: PAYMENT DISPUTE | SUSAN PARKER |
| ▮ | INQ30 | 11/25/2013 | CIT | corr rcvd | SUSAN PARKER |
| ▮ | LTLTR | 11/25/2013 | NT | Payment Reminder Sent 11.18.13. | API CSRV |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ | INQ85 | 11/23/2013 | CIT | 013 DONE 11/23/13 BY TLR 05068 | RODRIGO ZARATE |
| ▮ | INQ85 | 11/23/2013 | CIT | TSK TYP 252-TEAM LEAD ONLY: | RODRIGO ZARATE |
| ▮ | INQ85 | 11/23/2013 | CIT | 013 CLOSE CIT 123 as the third bwr is added on the | RODRIGO ZARATE |
| ▮ | INQ85 | 11/23/2013 | CIT | acct and run a po calculated 11/30/13 Rodrigo | RODRIGO ZARATE |
| ▮ | INQ85 | 11/23/2013 | CIT | Z/8406228 | RODRIGO ZARATE |
| ▮ | | 11/23/2013 | NT | TellerID:5068 | RODRIGO ZARATE |
| ▮ | | 11/23/2013 | NT | Fax Number: | RODRIGO ZARATE |
| ▮ | | 11/23/2013 | NT | Phone Number:2158430560 | RODRIGO ZARATE |
| ▮ | | 11/23/2013 | NT | 46987.69: Final Payoff Amount | RODRIGO ZARATE |
| ▮ | | 11/23/2013 | NT | Requestor Name:MARGARET LAWSON | RODRIGO ZARATE |
| ▮ | | 11/23/2013 | PAY | ORIG TO: MARGARET LAWSON | RODRIGO ZARATE |
| ▮ | | 11/23/2013 | PAY | INT TO 113013 EXP DT 122313 AMT 0046987.69 | RODRIGO ZARATE |
| ▮ | INQ75 | 11/22/2013 | CIT | 011 DONE 11/22/13 BY TLR 20061 | MA GUIA CENTENO |
| ▮ | INQ75 | 11/22/2013 | CIT | TSK TYP 250-TEAM LEAD ONLY: | MA GUIA CENTENO |
| ▮ | INQ75 | 11/22/2013 | CIT | 011 closing cit 250 2nd attempt called b1 at the | MA GUIA CENTENO |
| ▮ | INQ75 | 11/22/2013 | CIT | hp# 215-843-0560 @5:28pm lvm to cb 18007664622 | MA GUIA CENTENO |
| ▮ | INQ75 | 11/22/2013 | CIT | opt5 exnt2001134 this is discussed b1 on why | MA GUIA CENTENO |
| ▮ | INQ75 | 11/22/2013 | CIT | the pmt went to $533.66 is bec the interval of | MA GUIA CENTENO |
| ▮ | INQ75 | 11/22/2013 | CIT | pmt from 10/03/13 to 11/19/13 were 47 days | MA GUIA CENTENO |
| ▮ | INQ75 | 11/22/2013 | CIT | interest are being calculated in per day and | MA GUIA CENTENO |
| ▮ | INQ75 | 11/22/2013 | CIT | based on the mtg note the hierchy of pmt is | MA GUIA CENTENO |
| ▮ | INQ75 | 11/22/2013 | CIT | int first before prin gia c2001134 | MA GUIA CENTENO |
| ▮ | EOY50 | 11/22/2013 | CIT | 012 DONE 11/22/13 BY TLR 01053 | PAT PEXA |
| ▮ | EOY50 | 11/22/2013 | CIT | TSK TYP 123-NAME/PROPERTY A | PAT PEXA |
| ▮ | EOY50 | 11/22/2013 | CIT | 012 cit 123 - added joshua liss as 3rd bor per | PAT PEXA |
| ▮ | EOY50 | 11/22/2013 | CIT | imaged docs. closing cit pat p x5485 | PAT PEXA |
| ▮ | INQ85 | 11/22/2013 | CIT | 013 NEW CIT252-TEAM LEAD ONLY: RUSH REQUEST | RODRIGO ZARATE |
| ▮ | INQ85 | 11/22/2013 | CIT | OPEN CIT 252 sent email to pat pexa to req to | RODRIGO ZARATE |
| ▮ | INQ85 | 11/22/2013 | CIT | rush the adding of the name of the third party | RODRIGO ZARATE |
| ▮ | INQ85 | 11/22/2013 | CIT | as the cit 123 is being open Rodrigo Z/8406228 | RODRIGO ZARATE |
| ▮ | INQ85 | 11/22/2013 | CIT | 009 DONE 11/22/13 BY TLR 05068 | RODRIGO ZARATE |
| ▮ | INQ85 | 11/22/2013 | CIT | TSK TYP 656-OPTL PRDT-CNCLT | RODRIGO ZARATE |
| ▮ | INQ85 | 11/22/2013 | CIT | 009 CLOSE CIT 656 AS INCORRECT CIT IS BEING OPEN | RODRIGO ZARATE |
| ▮ | INQ85 | 11/22/2013 | CIT | AND WILL OPEN A CIT 252 TO FOLLOW UP roDRIGO | RODRIGO ZARATE |
| ▮ | INQ85 | 11/22/2013 | CIT | z/8406228 | RODRIGO ZARATE |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| | INQ85 | 11/22/2013 | CIT | 012 NEW CIT123-NAME/PROPERTY ADDRESS CORRECTIONS | MARTIN PEREZ |
| | INQ85 | 11/22/2013 | CIT | open new cit 123 pls add 3 brr on act  is on | MARTIN PEREZ |
| | INQ85 | 11/22/2013 | CIT | note image id  682831397martinp 8046651 | MARTIN PEREZ |
| | INQ75 | 11/22/2013 | CIT | 011 fyi cit 250 1st attempt called b1 at the hp# | MA GUIA CENTENO |
| | INQ75 | 11/22/2013 | CIT | 215-843-0560 @12:31PM cst b1 is not available | MA GUIA CENTENO |
| | INQ75 | 11/22/2013 | CIT | lvm to cb 18007664622 opt5 ext2001134 for | MA GUIA CENTENO |
| | INQ75 | 11/22/2013 | CIT | further assistance giac2001134 | MA GUIA CENTENO |
| | INQ | 11/22/2013 | NT | b2 ci to see what does are the outstanding bal | ARTURO NAVARRETE |
| | INQ | 11/22/2013 | NT | that she have  adv are  fees iao 40 and interest | ARTURO NAVARRETE |
| | INQ | 11/22/2013 | NT | iao 125.49, and also b2 wants to know how what | ARTURO NAVARRETE |
| | INQ | 11/22/2013 | NT | happend with the 3 person on the note, xfer to | ARTURO NAVARRETE |
| | INQ | 11/22/2013 | NT | specialty.arturo8407350 | ARTURO NAVARRETE |
| | INQ75 | 11/22/2013 | CIT | 011 fyi to cit 250. --i got back & asked for few | ABIGAIL MARASIGAN |
| | INQ75 | 11/22/2013 | CIT | more min she asked for sup. was about to xfr | ABIGAIL MARASIGAN |
| | INQ75 | 11/22/2013 | CIT | to sup but she hu while on hold. abbiem2001174 | ABIGAIL MARASIGAN |
| | INQ75 | 11/22/2013 | CIT | 011 NEW CIT250-TEAM LEAD ONLY: TL FOLLOW UP | ABIGAIL MARASIGAN |
| | INQ75 | 11/22/2013 | CIT | new cit 250. 11/22 1:23 ET. b2 ci re her nov | ABIGAIL MARASIGAN |
| | INQ75 | 11/22/2013 | CIT | mtg pmt. her initial pmt for nov got reversed | ABIGAIL MARASIGAN |
| | INQ75 | 11/22/2013 | CIT | due to nsf. & confirmed to her that we have | ABIGAIL MARASIGAN |
| | INQ75 | 11/22/2013 | CIT | rcvd replacement pmt posted 11/21. adv $408.17 | ABIGAIL MARASIGAN |
| | INQ75 | 11/22/2013 | CIT | all went to int & she got unpaid int for nov | ABIGAIL MARASIGAN |
| | INQ75 | 11/22/2013 | CIT | iao $125.49. adv acct is a daily simple int | ABIGAIL MARASIGAN |
| | INQ75 | 11/22/2013 | CIT | acct, & it accrued int-- b2 asked how int was | ABIGAIL MARASIGAN |
| | INQ75 | 11/22/2013 | CIT | computed. placed her on hold to check but when | ABIGAIL MARASIGAN |
| | SBO01 | 11/22/2013 | NT | ENHANCED HISTORY LETTER PRINTED | API VRU |
| | | 11/21/2013 | DM | PROMISE KEPT 11/19/13 PROMISE DT 11/25/13 | SYSTEM ID |
| | INQ85 | 11/20/2013 | CIT | 008 DONE 11/20/13 BY TLR 05065 | DAVID SANCHEZ |
| | INQ85 | 11/20/2013 | CIT | TSK TYP 256-LATE CHARGE WAI | DAVID SANCHEZ |
| | INQ85 | 11/20/2013 | CIT | 008 CLOSING CIT 256--->Late fee Freeze open on | DAVID SANCHEZ |
| | INQ85 | 11/20/2013 | CIT | account, Dave S/8406229 | DAVID SANCHEZ |
| | | 11/20/2013 | DM | LATE CHARGE FREEZE UPDATE 11/01/13 11/30/13 P | DAVID SANCHEZ |
| | INQ75 | 11/20/2013 | CIT | 010 fyi.,,. plsretarget to cit 110, to  snd a | LORNA TINOSO |
| | INQ75 | 11/20/2013 | CIT | complte copy ofhte pmt histry  since 2/2005 as | LORNA TINOSO |
| | INQ75 | 11/20/2013 | CIT | b2  nweeds to  get it for refin purpose. | LORNA TINOSO |
| | INQ75 | 11/20/2013 | CIT | thanks  laura t2001154 | LORNA TINOSO |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ■ | INQ75 | 11/20/2013 | CIT | 010 NEW CIT103-DOCUMENT REQUESTS-MAIL TO CUST | LORNA TINOSO |
| ■ | INQ75 | 11/20/2013 | CIT | new cit 103. pls snd a copy of the  letter | LORNA TINOSO |
| ■ | INQ75 | 11/20/2013 | CIT | sent showing nsf dated 11/13/13 and mail it to | LORNA TINOSO |
| ■ | INQ75 | 11/20/2013 | CIT | b2  asher req,  thanks laura t2001154 | LORNA TINOSO |
| ■ | INQ | 11/20/2013 | NT | the pmt histry  since 2005 sd she will refin adv | LORNA TINOSO |
| ■ | INQ | 11/20/2013 | NT | we wil procs req for  it and tat 3d    laura | LORNA TINOSO |
| ■ | INQ | 11/20/2013 | NT | t2001154 | LORNA TINOSO |
| ■ | INQ | 11/20/2013 | NT | b2 ci sd  she sent another chck  on 11/15/13 | LORNA TINOSO |
| ■ | INQ | 11/20/2013 | NT | adv we hvnt rcd   it  adv she has to allw time for | LORNA TINOSO |
| ■ | INQ | 11/20/2013 | NT | the mail to arrive ,   sd she sent it iao $ | LORNA TINOSO |
| ■ | INQ | 11/20/2013 | NT | 408.17  adv to cb on 11/27/13 to chck if we rcd | LORNA TINOSO |
| ■ | INQ | 11/20/2013 | NT | it .s so  that if we are nt able to rcd it we will | LORNA TINOSO |
| ■ | INQ | 11/20/2013 | NT | be able to procss a replcemnt pmt  on the accnt . | LORNA TINOSO |
| ■ | INQ | 11/20/2013 | NT | and she cn make bank arrngmnt on the 2nd chk thats | LORNA TINOSO |
| ■ | INQ | 11/20/2013 | NT | mailed,  also  re amt due adv it  include the  lc | LORNA TINOSO |
| ■ | INQ | 11/20/2013 | NT | and nsf  for $40 adv we will  wve  lc  once pmt | LORNA TINOSO |
| ■ | INQ | 11/20/2013 | NT | got posted as prev rep.  also req for  a copy of | LORNA TINOSO |
| ■ | INQ | 11/20/2013 | NT | the letter showing nsf., adv we wil snd a copy  of | LORNA TINOSO |
| ■ | INQ | 11/20/2013 | NT | the nsf letter sent to  her also  req for a copy | LORNA TINOSO |
| ■ | CSH | 11/20/2013 | NT | b2 ci reg the pmt has been received. Adv that we | ANGELICA JOY JAVIER |
| ■ | CSH | 11/20/2013 | NT | haven't received the pmt yet that she sent iao | ANGELICA JOY JAVIER |
| ■ | CSH | 11/20/2013 | NT | $408.17 last 11/15/13 with the check# 259, adv | ANGELICA JOY JAVIER |
| ■ | CSH | 11/20/2013 | NT | allow time for us to receive that pmt. She also | ANGELICA JOY JAVIER |
| ■ | CSH | 11/20/2013 | NT | wants to know reg the check# 260 that was sent | ANGELICA JOY JAVIER |
| ■ | CSH | 11/20/2013 | NT | last 11/01/13, adv that we had that pmt returned | ANGELICA JOY JAVIER |
| ■ | CSH | 11/20/2013 | NT | last 11/13/13. She will be mailed of the advisory | ANGELICA JOY JAVIER |
| ■ | CSH | 11/20/2013 | NT | of the pmts on her acct once we have received the | ANGELICA JOY JAVIER |
| ■ | CSH | 11/20/2013 | NT | pmt.    AngieJ2001048 | ANGELICA JOY JAVIER |
| ■ | | 11/18/2013 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■ | | 11/18/2013 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■ | | 11/18/2013 | DMD | 11/16/13 10:25:27 RPC RESOLUTION | DAVOX INCOMING FILE |
| ■ | INQ85 | 11/18/2013 | CIT | 009 open cit 656 b1 ci to rqst us to send hr a po | JOSE JAIMES |
| ■ | INQ85 | 11/18/2013 | CIT | with tree signiture line cause there is tree | JOSE JAIMES |
| ■ | INQ85 | 11/18/2013 | CIT | name in accnt adv we can no ther e is only two | JOSE JAIMES |
| ■ | INQ85 | 11/18/2013 | CIT | in accnt but thwew is tree on note it will be | JOSE JAIMES |

# Loan History

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ██████ | INQ85 | 11/18/2013 | CIT | ok with just two singnitures but she no she | JOSE JAIMES |
| ██████ | INQ85 | 11/18/2013 | CIT | rqst a superviser josephj/8406643 | JOSE JAIMES |
| ██████ | INQ85 | 11/18/2013 | CIT | 009 NEW CIT656-OPTL PRDT-CNCLTN RQST-INS RQRS LTR | JOSE JAIMES |
| ██████ | INQ85 | 11/18/2013 | CIT | open cit 656 b1 ci to rqst us to send hr a po | JOSE JAIMES |
| ██████ | INQ85 | 11/18/2013 | CIT | with tree signiture line cause there is tree | JOSE JAIMES |
| ██████ | INQ85 | 11/18/2013 | CIT | name in accnt adv we can no ther e is only two | JOSE JAIMES |
| ██████ | INQ85 | 11/18/2013 | CIT | in accnt but thwew is tree on note it will be | JOSE JAIMES |
| ██████ | INQ85 | 11/18/2013 | CIT | ok with just two singnitures but she no she | JOSE JAIMES |
| ██████ | INQ85 | 11/18/2013 | CIT | rqst a superviser josephj/8406643 | JOSE JAIMES |
| ██████ | INQ85 | 11/18/2013 | CIT | 008 NEW CIT256-LATE CHARGE WAIVER | JOSE JAIMES |
| ██████ | INQ85 | 11/18/2013 | CIT | 11/18/2013 8:20:35 PM ET; Amt of late chg to | JOSE JAIMES |
| ██████ | INQ85 | 11/18/2013 | CIT | be waived :20.00;Reason for waiver :pls remove | JOSE JAIMES |
| ██████ | INQ85 | 11/18/2013 | CIT | lc for month of nov for 20.00 as b1 send pmmnt | JOSE JAIMES |
| ██████ | INQ85 | 11/18/2013 | CIT | from bank but they did error and pmnt was | JOSE JAIMES |
| ██████ | INQ85 | 11/18/2013 | CIT | return she rest a lttr to have bank cover adv | JOSE JAIMES |
| ██████ | INQ85 | 11/18/2013 | CIT | statemnt but say bank don,t take that adv i | JOSE JAIMES |
| ██████ | INQ85 | 11/18/2013 | CIT | will remove as a one time curtesy thankyou | JOSE JAIMES |
| ██████ | INQ85 | 11/18/2013 | CIT | josephj/8406643 | JOSE JAIMES |
| ██████ | | 11/18/2013 | DM | B2 CI TO SAY SHE SEND PMNT OF 408.17 FOR NOV SHE | JOSE JAIMES |
| ██████ | | 11/18/2013 | DM | RE SEND IT ON FRIDAY ADV  WE STILL DON,T HAVE SHE | JOSE JAIMES |
| ██████ | | 11/18/2013 | DM | WE SHU BE RESIVING IT JOSEPHJ/8406643 | JOSE JAIMES |
| ██████ | | 11/18/2013 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO BRCP | JOSE JAIMES |
| ██████ | | 11/18/2013 | DM | GAIN THE CUSTOMERS COMMITMENT TO RESOLVE THE | JOSE JAIMES |
| ██████ | | 11/18/2013 | DM | DELINQUENCY THROUGH A PROMISE TO PAY OR REPAYMENT | JOSE JAIMES |
| ██████ | | 11/18/2013 | DM | PLAN. INBOUND CALL | JOSE JAIMES |
| ██████ | | 11/18/2013 | DM | ACTION/RESULT CD CHANGED FROM BRCP TO OAAI | JOSE JAIMES |
| ██████ | | 11/16/2013 | DM | OB::REACHED B1,SD THAT PMT WILL BE RCV BY THE 30TH | CHRISTINE OJERIO |
| ██████ | | 11/16/2013 | DM | AND IT WAS MAILED REG MAIL -ADV PMT\ GOT RETURNED | CHRISTINE OJERIO |
| ██████ | | 11/16/2013 | DM | DUE NSF - SD  SHE WILL CB  CHRISTINE O 2001012 | CHRISTINE OJERIO |
| ██████ | | 11/16/2013 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO BRCP | CHRISTINE OJERIO |
| ██████ | | 11/16/2013 | DM | GAIN THE CUSTOMERS COMMITMENT TO RESOLVE THE | CHRISTINE OJERIO |
| ██████ | | 11/16/2013 | DM | DELINQUENCY THROUGH A PROMISE TO PAY OR REPAYMENT | CHRISTINE OJERIO |
| ██████ | | 11/16/2013 | DM | PLAN. OUTBOUND CALL | CHRISTINE OJERIO |
| ██████ | | 11/16/2013 | DM | ACTION/RESULT CD CHANGED FROM BRCP TO OAAI | CHRISTINE OJERIO |
| ██████ | | 11/16/2013 | DM | OB::REACHED B1,SD THAT PMT WILL BE RCV BY THE 30TH | CHRISTINE OJERIO |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ■■■■■ | | 11/16/2013 | DM | AND IT WAS MAILED REG MAIL  CHRISTINE O 2001012 | CHRISTINE OJERIO |
| ■■■■■ | | 11/16/2013 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO BRCP | CHRISTINE OJERIO |
| ■■■■■ | | 11/16/2013 | DM | GAIN THE CUSTOMERS COMMITMENT TO RESOLVE THE | CHRISTINE OJERIO |
| ■■■■■ | | 11/16/2013 | DM | DELINQUENCY THROUGH A PROMISE TO PAY OR REPAYMENT | CHRISTINE OJERIO |
| ■■■■■ | | 11/16/2013 | DM | PLAN. INBOUND CALL | CHRISTINE OJERIO |
| ■■■■■ | | 11/16/2013 | DM | ACTION/RESULT CD CHANGED FROM BRSS TO OAAI | CHRISTINE OJERIO |
| ■■■■■ | | 11/14/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| ■■■■■ | | 11/14/2013 | D19 | CSH - NSF/REVERSAL LETTER (10010) | SYSTEM ID |
| ■■■■■ | INQ25 | 11/14/2013 | CIT | 007 DONE 11/14/13 BY TLR 17660 | JEAN BRIMM |
| ■■■■■ | INQ25 | 11/14/2013 | CIT | TSK TYP 103-DOCUMENT REQUES | JEAN BRIMM |
| ■■■■■ | INQ25 | 11/14/2013 | CIT | 007 clsg cit 103  mailed req doc(s) (note & | JEAN BRIMM |
| ■■■■■ | INQ25 | 11/14/2013 | CIT | applctn) w/2:01 ltr  sjb\7424 | JEAN BRIMM |
| ■■■■■ | | 11/14/2013 | OL | WDOYCUS - GENERAL INQUIRY INFO ENCLOSED | JEAN BRIMM |
| ■■■■■ | | 11/13/2013 | PAY | AMENDED: MARGARET LAWSON | |
| ■■■■■ | | 11/13/2013 | PAY | INT TO 112913 EXP DT 112913 AMT 0047404.51 | |
| ■■■■■ | | 11/13/2013 | NT | CHECK DATED 11/04/13 FOR 408.17 | JONATAN FLORES |
| ■■■■■ | | 11/13/2013 | NT | RETURNED-NSF | JONATAN FLORES |
| ■■■■■ | | 11/13/2013 | ET | 10010 NON-SUFFICIENT FUNDS -NSF      11/13 | JONATAN FLORES |
| ■■■■■ | INQ75 | 11/11/2013 | CIT | 007 NEW CIT103-DOCUMENT REQUESTS-MAIL TO CUST | MARY JANE SIANQUITA |
| ■■■■■ | INQ75 | 11/11/2013 | CIT | new cit 103-b2 ci reqsting for a copy of not | MARY JANE SIANQUITA |
| ■■■■■ | INQ75 | 11/11/2013 | CIT | w/ image id#682831397 and also a copy of the | MARY JANE SIANQUITA |
| ■■■■■ | INQ75 | 11/11/2013 | CIT | signed application w/ image id#682831386 both | MARY JANE SIANQUITA |
| ■■■■■ | INQ75 | 11/11/2013 | CIT | docs were imaged on 08/08/2007 on looking | MARY JANE SIANQUITA |
| ■■■■■ | INQ75 | 11/11/2013 | CIT | glass.adv tat.thanks marys2001141 | MARY JANE SIANQUITA |
| ■■■■■ | INQ | 11/09/2013 | NT | b2 ci re to check when was the last day of the gp | LEOS ESPOLE |
| ■■■■■ | INQ | 11/09/2013 | NT | adv adv it is til the 16th but the nov payment was | LEOS ESPOLE |
| ■■■■■ | INQ | 11/09/2013 | NT | posted on 11/04/13 /lei e 2001107 | LEOS ESPOLE |
| ■■■■■ | | 11/05/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■■■■■ | INQ20 | 10/30/2013 | CIT | 006 DONE 10/30/13 BY TLR 01394 | NORMA JEAN MANGRICH |
| ■■■■■ | INQ20 | 10/30/2013 | CIT | TSK TYP 103-DOCUMENT REQUES | NORMA JEAN MANGRICH |
| ■■■■■ | INQ20 | 10/30/2013 | CIT | 006 close cit 103-clsg docs mld. nj | NORMA JEAN MANGRICH |
| ■■■■■ | | 10/30/2013 | OL | WDOYCUS - GENERAL INQUIRY INFO ENCLOSED | NORMA JEAN MANGRICH |
| ■■■■■ | PAY | 10/30/2013 | NT | B2 CLD INQ TO KNOW PAYOFF AMOUNT AND ALSO INQ IF | NANCY ALAREZ |
| ■■■■■ | PAY | 10/30/2013 | NT | CAN HAVE LOAN DOQ SHE SIGEND AT CLOSING 47364.51: | NANCY ALAREZ |
| ■■■■■ | PAY | 10/30/2013 | NT | Final Payoff Amount NANCY/8406207. | NANCY ALAREZ |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▉ | INQ85 | 10/30/2013 | CIT | 006 NEW CIT103-DOCUMENT REQUESTS-MAIL TO CUST | NANCY ALAREZ |
| ▉ | INQ85 | 10/30/2013 | CIT | OPEN NEW CIT 103 PLEASE SEND A COPY OF THE | NANCY ALAREZ |
| ▉ | INQ85 | 10/30/2013 | CIT | NOTE AND COPY OF THE CLOSING DOQ TO HO MAILING | NANCY ALAREZ |
| ▉ | INQ85 | 10/30/2013 | CIT | ADDRESS DATED IN ISS  REASON OF REQ HO WILL PO | NANCY ALAREZ |
| ▉ | INQ85 | 10/30/2013 | CIT | THE ACCOUNT 08/11/2007 IMAGE | NANCY ALAREZ |
| ▉ | INQ85 | 10/30/2013 | CIT | ID#682831397-682831397 THNAKS NANCY/8406207. | NANCY ALAREZ |
| ▉ | | 10/30/2013 | NT | TellerID:5048 | NANCY ALAREZ |
| ▉ | | 10/30/2013 | NT | Fax Number: | NANCY ALAREZ |
| ▉ | | 10/30/2013 | NT | Phone Number:2158430560 | NANCY ALAREZ |
| ▉ | | 10/30/2013 | NT | 47364.51: Final Payoff Amount | NANCY ALAREZ |
| ▉ | | 10/30/2013 | NT | Requestor Name:MARGARET LAWSON | NANCY ALAREZ |
| ▉ | | 10/30/2013 | PAY | ORIG TO: MARGARET LAWSON | NANCY ALAREZ |
| ▉ | | 10/30/2013 | PAY | INT TO 112913 EXP DT 112913 AMT 0047364.51 | NANCY ALAREZ |
| ▉ | | 10/29/2013 | LIT | provided fact pkg | ALEXANDRA FECHT |
| ▉ | | 10/25/2013 | LIT | provided fact pkg | ALEXANDRA FECHT |
| ▉ | | 10/15/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| ▉ | | 10/04/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉ | | 09/12/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| ▉ | | 09/04/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉ | | 08/08/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| ▉ | | 08/06/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉ | | 07/11/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉ | | 07/10/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| ▉ | | 07/05/2013 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| ▉ | | 06/13/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| ▉ | | 06/04/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉ | | 05/09/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| ▉ | | 05/06/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉ | | 04/11/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| ▉ | | 04/09/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉ | | 04/05/2013 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| ▉ | | 03/18/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| ▉ | | 03/11/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉ | | 03/05/2013 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| ▉ | | 02/14/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |

# Loan History

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| █████ | | 02/05/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| █████ | | 01/10/2013 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| █████ | | 01/02/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| █████ | | 12/14/2012 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| █████ | | 12/04/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| █████ | | 11/09/2012 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| █████ | | 11/06/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| █████ | | 10/02/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| █████ | | 09/05/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| █████ | | 08/02/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| █████ | | 07/03/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| █████ | | 06/04/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| █████ | | 05/04/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| █████ | | 05/03/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| █████ | | 05/03/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| █████ | | 05/03/2012 | DMD | 05/03/12 11:48:54 MSG ANS MACH | DAVOX INCOMING FILE |
| █████ | | 04/03/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| █████ | | 03/05/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| █████ | | 02/06/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| █████ | | 01/03/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| █████ | INQ20 | 12/30/2011 | CIT | 005 DONE 12/30/11 BY TLR 01401 | KAREN MCAHREN |
| █████ | INQ20 | 12/30/2011 | CIT | TSK TYP 103-DOCUMENT REQUES | KAREN MCAHREN |
| █████ | INQ20 | 12/30/2011 | CIT | 005 Closing 103 mailed Note. Karen M  4040 | KAREN MCAHREN |
| █████ | | 12/30/2011 | OL | WDOYCUS - GENERAL INQUIRY INFO ENCLOSED | KAREN MCAHREN |
| █████ | INQ | 12/20/2011 | NT | b2 ci to verif the borrowrs on the loan. adv only | ROBERTO CARRILLO |
| █████ | INQ | 12/20/2011 | NT | of b1+. b2 states should be a 3rd one and wanted | ROBERTO CARRILLO |
| █████ | INQ | 12/20/2011 | NT | to rcv a doc that states that there was 3 | ROBERTO CARRILLO |
| █████ | INQ | 12/20/2011 | NT | borrowers. offered to send a copy of the Note. edu | ROBERTO CARRILLO |
| █████ | INQ | 12/20/2011 | NT | tat. Open CIT 103. roberto c/22047 | ROBERTO CARRILLO |
| █████ | INQ85 | 12/20/2011 | CIT | 005 Open CIT 103-please send a copy of the Note | ROBERTO CARRILLO |
| █████ | INQ85 | 12/20/2011 | CIT | tothe address on file. cx is looking to amend | ROBERTO CARRILLO |
| █████ | INQ85 | 12/20/2011 | CIT | credit report. roberto c/22047 | ROBERTO CARRILLO |
| █████ | DIS | 12/12/2011 | NT | FEMA moratorium has expired. | ASHLEY BONNER-SCRIPT |
| █████ | DIS | 12/12/2011 | NT | Disaster coding being removed. | ASHLEY BONNER-SCRIPT |
| █████ | DIS | 12/10/2011 | NT | FEMA moratorium has expired. | JAMES KLATT-SCRIPT |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ■■■■■ | DIS | 12/10/2011 | NT | Disaster coding being removed. | JAMES KLATT-SCRIPT |
| ■■■■■ | | 12/02/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■■■■■ | | 11/02/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■■■■■ | | 10/04/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■■■■■ | DIS | 09/13/2011 | NT | FEMA declaration due to Hurricane Irene. | API CSRV |
| ■■■■■ | DIS | 09/13/2011 | NT | Individual assistance declared on 9/3/11. | API CSRV |
| ■■■■■ | | 09/13/2011 | DM | BREACH HOLD PLACED-EXPIRATION DATE 12/02/11 | API CSRV |
| ■■■■■ | | 09/02/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■■■■■ | | 08/05/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■■■■■ | | 08/04/2011 | DM | PROMISE KEPT 08/04/11 PROMISE DT 08/11/11 | SYSTEM ID |
| ■■■■■ | | 08/04/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■■■■■ | | 08/04/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■■■■■ | | 08/04/2011 | DMD | 08/03/11 15:04:50 SUCCESSFUL | DAVOX INCOMING FILE |
| ■■■■■ | | 08/03/2011 | DM | OBC. TT B2. B2 SAID THAT TAD PMT SENT REG MAIL | MARINA KRISTINA FABR |
| ■■■■■ | | 08/03/2011 | DM | 08/01.ADV TAT FOR PMT POSTING. ADV CC. | MARINA KRISTINA FABR |
| ■■■■■ | | 08/03/2011 | DM | KRISTINAF8930364 | MARINA KRISTINA FABR |
| ■■■■■ | | 08/03/2011 | DM | DFLT REASON 1 CHANGED TO: EXCESSIVE OBLIGATIONS | MARINA KRISTINA FABR |
| ■■■■■ | | 08/03/2011 | DM | ACTION/RESULT CD CHANGED FROM NOTE TO BRSS | MARINA KRISTINA FABR |
| ■■■■■ | | 07/05/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■■■■■ | | 06/07/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■■■■■ | | 06/03/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■■■■■ | | 06/03/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■■■■■ | | 06/03/2011 | DMD | 06/03/11 12:15:57 AUTOVOICE | DAVOX INCOMING FILE |
| ■■■■■ | | 05/10/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■■■■■ | | 05/09/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■■■■■ | | 05/09/2011 | DMD | 05/09/11 13:33:09 INVALID NUMBER | DAVOX INCOMING FILE |
| ■■■■■ | | 05/09/2011 | DMD | 05/09/11 11:07:46 NO ANSWER | DAVOX INCOMING FILE |
| ■■■■■ | | 05/09/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■■■■■ | | 05/09/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■■■■■ | | 05/09/2011 | DMD | 05/07/11 10:26:39 ANSWERING MACHINE | DAVOX INCOMING FILE |
| ■■■■■ | | 05/06/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■■■■■ | | 05/06/2011 | DMD | 05/06/11 12:09:14 AUTOVOICE | DAVOX INCOMING FILE |
| ■■■■■ | | 05/06/2011 | DMD | 05/06/11 19:38:19 AUTOVOICE | DAVOX INCOMING FILE |
| ■■■■■ | | 05/05/2011 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| ■■■■■ | | 05/05/2011 | DMD | 05/05/11 16:01:04 ANSWERING MACHINE | DAVOX INCOMING FILE |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▆ | | 05/05/2011 | DMD | 05/05/11 13:25:32 ANSWERING MACHINE | DAVOX INCOMING FILE |
| ▆ | | 05/05/2011 | DMD | 05/05/11 10:18:15 ANSWERING MACHINE | DAVOX INCOMING FILE |
| ▆ | | 05/05/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▆ | | 05/05/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▆ | | 05/05/2011 | DMD | 05/04/11 14:27:50 LEFT_MSG | DAVOX INCOMING FILE |
| ▆ | | 05/04/2011 | DM | OBC; LM, JOHNA 8930301 | JOHN ARRIESGADO |
| ▆ | | 05/04/2011 | DM | ACTION/RESULT CD CHANGED FROM OAPC TO NOTE | JOHN ARRIESGADO |
| ▆ | | 05/03/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▆ | | 05/03/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▆ | | 05/03/2011 | DMD | 05/03/11 13:27:19 ANSWERING MACHINE | DAVOX INCOMING FILE |
| ▆ | | 04/05/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▆ | | 03/02/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▆ | | 02/12/2011 | NT | PO Total Amount =48632.56 | API VRU |
| ▆ | | 02/12/2011 | NT | PO Principal =48362.10 | API VRU |
| ▆ | | 02/12/2011 | NT | PO Interest =270.46 | API VRU |
| ▆ | | 02/12/2011 | NT | PO Latecharge =0.00 | API VRU |
| ▆ | | 02/12/2011 | NT | PO Unpaid Fees =0.00 | API VRU |
| ▆ | | 02/12/2011 | NT | PO Escrow Balance =0.00 | API VRU |
| ▆ | | 02/12/2011 | NT | PO Interest To Date =02/14/11 | API VRU |
| ▆ | | 02/12/2011 | NT | PO PHN =2158430560 | API VRU |
| ▆ | | 02/12/2011 | NT | PO FAX =0000000000 | API VRU |
| ▆ | | 02/12/2011 | NT | PO TYPE =VERBAL | API VRU |
| ▆ | | 02/02/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▆ | | 01/04/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▆ | | 12/02/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▆ | | 11/02/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▆ | | 10/05/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▆ | | 09/02/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▆ | | 08/03/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▆ | | 07/06/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▆ | | 06/02/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▆ | | 05/04/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▆ | | 04/02/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▆ | | 03/02/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▆ | INQ20 | 02/12/2010 | CIT | 004 DONE 02/12/10 BY TLR 01401 | KAREN MCAHREN |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ■ | INQ20 | 02/12/2010 | CIT | TSK TYP 103-DOCUMENT REQUES | KAREN MCAHREN |
| ■ | INQ20 | 02/12/2010 | CIT | 004 Closing 103 mailed Note. Karen M  4040 | KAREN MCAHREN |
| ■ | | 02/12/2010 | OL | WDOYCUS - GENERAL INQUIRY INFO ENCLOSED | KAREN MCAHREN |
| ■ | INQ | 02/08/2010 | NT | b1 ci inq why diff amts put to prin each pmt adv | TAMMI MOOTHART-SCRP |
| ■ | INQ | 02/08/2010 | NT | pay int first and apply leftover amt to prin | TAMMI MOOTHART-SCRP |
| ■ | INQ | 02/08/2010 | NT | varying amts b/c varying dates making pmt so int | TAMMI MOOTHART-SCRP |
| ■ | INQ | 02/08/2010 | NT | due is diff each time. b1 inq about refi transf. | TAMMI MOOTHART-SCRP |
| ■ | INQ | 02/08/2010 | NT | danette k/4115 | TAMMI MOOTHART-SCRP |
| ■ | INQ | 02/08/2010 | NT | b1 ci req for an amortization schedule to be | GLEN VILLANUEVA |
| ■ | INQ | 02/08/2010 | NT | mailed adv not avail for her acct because of loan | GLEN VILLANUEVA |
| ■ | INQ | 02/08/2010 | NT | type adv acct is dsi adv reg loan terms req for a | GLEN VILLANUEVA |
| ■ | INQ | 02/08/2010 | NT | copy of the note be mailed adv tat    // glen | GLEN VILLANUEVA |
| ■ | INQ | 02/08/2010 | NT | v8978178 | GLEN VILLANUEVA |
| ■ | INQ75 | 02/08/2010 | CIT | 004 new cit 103 pls mail a copy of the note on the | GLEN VILLANUEVA |
| ■ | INQ75 | 02/08/2010 | CIT | m/a on file as for b1 req thanks // glen | GLEN VILLANUEVA |
| ■ | INQ75 | 02/08/2010 | CIT | v8978178 | GLEN VILLANUEVA |
| ■ | | 02/02/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 01/05/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 12/02/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 11/03/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 10/02/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 09/02/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 08/04/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 07/02/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 06/05/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 05/05/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 04/02/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 03/03/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 02/03/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 01/07/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 01/06/2009 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| ■ | | 12/02/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■ | | 11/14/2008 | CBR | CHANGE IN PRIMARY BORROWERS ADDR | SYSTEM ID |
| ■ | OPT | 11/14/2008 | CIT | 003 DONE 11/14/08 BY TLR 02223 | ELLIE SMELSER |
| ■ | OPT | 11/14/2008 | CIT | TSK TYP 656-OPTL PRDT-CNCLT | ELLIE SMELSER |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ███ | OPT | 11/14/2008 | CIT | 003 clsg cit #656 cxld home wrnty per req | ELLIE SMELSER |
| ███ | OPT | 11/14/2008 | NT | b2 ci re opt prod iao$29.95,she prev cancelled | GRACE TANG |
| ███ | OPT | 11/14/2008 | NT | this & called vendor but was not cancelled adv | GRACE TANG |
| ███ | OPT | 11/14/2008 | NT | there is aopen wo for cancellation adv an send | GRACE TANG |
| ███ | OPT | 11/14/2008 | NT | 408.17  //grace t*8978177 | GRACE TANG |
| ███ | INQ75 | 11/14/2008 | CIT | 003 FYI: b2 ci re optl prod added on her acct, | NINA KILLEN |
| ███ | INQ75 | 11/14/2008 | CIT | wants to cancel it, adv to call vendor but b2 | NINA KILLEN |
| ███ | INQ75 | 11/14/2008 | CIT | said she called vendor twice but refuses to | NINA KILLEN |
| ███ | INQ75 | 11/14/2008 | CIT | cancel it for her, said she's not in the | NINA KILLEN |
| ███ | INQ75 | 11/14/2008 | CIT | system. pls cancel optl product. thanks. may/s | NINA KILLEN |
| ███ | INQ75 | 11/14/2008 | CIT | 8978234 | NINA KILLEN |
| ███ | INQ75 | 11/14/2008 | CIT | 003 new cit 656.. pls cancel the optional product, | NELIAN FACIOL |
| ███ | INQ75 | 11/14/2008 | CIT | system protect w/ fee of $29.95. thanks! | NELIAN FACIOL |
| ███ | INQ75 | 11/14/2008 | CIT | nelian f 8978211 | NELIAN FACIOL |
| ███ | | 11/04/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | | 10/07/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | ALT | 09/29/2008 | NT | updated receipt opt and partial pmt code | JAN DRUVENGA |
| ███ | | 09/02/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | | 08/04/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | | 07/04/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | | 06/03/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | | 05/02/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | | 04/02/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | | 03/04/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | | 02/05/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | | 01/02/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | | 12/04/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | | 12/03/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ | | 12/03/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ | | 12/03/2007 | DMD | 12/01/07 15:44:18        LEFT MESSAGE | DAVOX INCOMING FILE |
| ███ | | 11/02/2007 | D28 | MANUAL BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | | 10/03/2007 | D28 | MANUAL BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | | 09/04/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███ | CSH30 | 08/17/2007 | CIT | 002 DONE 08/17/07 BY TLR 19332 | JONATAN FLORES |
| ███ | CSH30 | 08/17/2007 | CIT | TSK TYP 720-PO STMT SCRIPT | JONATAN FLORES |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ | CSH30 | 08/17/2007 | CIT | 001 DONE 08/17/07 BY TLR 19332 | JONATAN FLORES |
| ▮ | CSH30 | 08/17/2007 | CIT | TSK TYP 720-PO STMT SCRIPT | JONATAN FLORES |
| ▮ | | 08/17/2007 | PAY | ORIG TO: MICHELLE C LAWSON | JONATAN FLORES |
| ▮ | | 08/17/2007 | PAY | INT TO 083107 EXP DT 083107 AMT 0050628.65 | JONATAN FLORES |
| ▮ | PPD | 08/16/2007 | NT | Per truth in lending there isn't a ppp,remove | MONIQUE HARVEY |
| ▮ | PPD | 08/16/2007 | NT | payoff flag of 1. | MONIQUE HARVEY |
| ▮ | SBO01 | 08/11/2007 | CIT | 002 OPEN CIT 720 | API VRU |
| ▮ | SBO01 | 08/11/2007 | CIT | PHN =2154393475 | API VRU |
| ▮ | SBO01 | 08/11/2007 | CIT | FAX =0000000000 | API VRU |
| ▮ | SBO01 | 08/11/2007 | CIT | PAYOFF INTEREST THRU DATE =08/14/07 | API VRU |
| ▮ | SBO01 | 08/11/2007 | CIT | BYPASS =Payoff Flag 1-9 A-Z | API VRU |
| ▮ | SBO01 | 08/11/2007 | CIT | PAYOFF TYPE=VERBAL | API VRU |
| ▮ | SBO01 | 08/11/2007 | CIT | 001 OPEN CIT 720 | API VRU |
| ▮ | SBO01 | 08/11/2007 | CIT | PHN =2158430560 | API VRU |
| ▮ | SBO01 | 08/11/2007 | CIT | FAX =0000000000 | API VRU |
| ▮ | SBO01 | 08/11/2007 | CIT | PAYOFF INTEREST THRU DATE =08/14/07 | API VRU |
| ▮ | SBO01 | 08/11/2007 | CIT | BYPASS =Payoff Flag 1-9 A-Z | API VRU |
| ▮ | SBO01 | 08/11/2007 | CIT | PAYOFF TYPE=VERBAL | API VRU |
| ▮ | | 08/02/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ | INQ | 07/16/2007 | NT | B1 ci adv only 2 borrowers, adv can file quit | JANYCE LITA HALL |
| ▮ | INQ | 07/16/2007 | NT | claim deed at courthouse to remove ex-husband from | JANYCE LITA HALL |
| ▮ | INQ | 07/16/2007 | NT | deed amandas/7550 | JANYCE LITA HALL |
| ▮ | | 07/13/2007 | CBR | PURCHASED LOAN:  SERVICING DATE =03/13/07 | SYSTEM ID |
| ▮ | | 07/03/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ | | 06/22/2007 | CBR | PURCHASED<60 DAYS:SERVICE DT =  03/13/07 | SYSTEM ID |
| ▮ | | 06/05/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ | | 06/04/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮ | | 06/04/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮ | | 06/04/2007 | DMD | 06/04/07 10:38:49  MSG ANS MACH | DAVOX INCOMING FILE |
| ▮ | | 05/25/2007 | CBR | PURCHASED<60 DAYS:SERVICE DT =  03/13/07 | SYSTEM ID |
| ▮ | | 05/02/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ | | 04/13/2007 | CBR | PURCHASED<60 DAYS:SERVICE DT =  03/13/07 | SYSTEM ID |
| ▮ | | 04/03/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ | | 03/21/2007 | D19 | WELCOME LETTER ELIGIBLE | SYSTEM ID |
| ▮ | | 03/20/2007 | CLS | 0000O/B 000051300.00 P/B 000050406.89 02/27/07 | LOI |