**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

    RESIDENTIAL CAPITAL, LLC, *et al*.

                                        Debtors.

**NOT FOR PUBLICATION**

Case No. 12-12020 (MG)

Jointly Administered

---

### MEMORANDUM OPINION AND ORDER SUSTAINING RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO PROOFS OF CLAIM FILED BY GREGORY C. MORSE

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Gregory C. Morse ("Morse") filed four proofs of claim in these chapter 11 cases, each in the amount of $6,475,662:  (1) Claim No. 5656 against GMAC Mortgage, LLC ("GMACM"); (2) Claim No. 5658 against Homecomings Financial, LLC ("Homecomings"); (3) Claim No. 5680 against GMACM; and (4) Claim No. 5682 against Homecomings.  Claims No. 5656 and 5658 were expunged pursuant to the *Debtors' Sixth Omnibus Objection to Claims (Duplicate Borrower Claims)*.  The ResCap Borrower Claims Trust (the "Trust") objects to Claims No. 5680 and 5682 (the "Morse Claims") on the grounds that they fail to state a basis for liability against the Debtors.[1]  The Morse Claims are based on a "[RICO] fraud complaint filed in E.

---

[1]     *The ResCap Borrower Claims Trust Objection to Proofs of Claim Filed by Gregory C. Morse Pursuant to Section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007* (the "Objection," ECF Doc. # 6743).  The Objection is supported by the Declaration of Lauren Graham Delehey (the "Delehey Decl.," Obj. Ex. 3) and the Declaration of Norman S. Rosenbaum (the "Rosenbaum Decl.," Obj. Ex. 4).  Also attached to the Objection are various state court pleadings for the Texas Action (defined below), including the original complaint (the "Orig. Compl.," Obj. Ex. 6), the amended original complaint (the "Am. Orig. Compl.," Obj. Ex. 7), the defendants' motion to dismiss and supporting memorandum of legal authority (the "Motion to Dismiss," Obj. Ex. 8), Homecomings' and GMACM's notice of bankruptcy filing and supplemental servicing order (the "Notice of Bankruptcy," Obj. Ex. 9), the report and recommendation of the United States Magistrate Judge (the "Magistrate Recommendation," Obj. Ex. 10), the civil docket sheet for Case # 4:12-CV-00375-RC-DDB (Obj. Ex. 11), the Order Adopting Report and Recommendation of United States Magistrate Judge (the "Texas Court Order," Obj. Ex. 12), and the Order Denying Motion to Proceed *In Forma Pauperis* (Obj. Ex. 13).

District of Texas Federal Court" concerning a mortgage loan refinancing agreement.  (Claims No. 5680, 5682.)

The Trust contends that the Morse Claims (1) fail to establish a claim for fraud under Texas law; (2) fail to establish a claim for breach of contract; (3) fail to establish a claim for violations of either the Texas Mortgage Broker License Act, Texas Finance Code § 156.001, *et seq.*, or the Texas Mortgage Banker Registration and Residential Mortgage Loan Originator License Act, Texas Finance Code § 157.001 *et seq.*; and (4) fail to establish any other causes of action against the Debtors.

Morse filed a response (the "Response," ECF Doc. # 6825),[2] and the Trust filed a reply (the "Reply," ECF Doc. # 6892).  Morse also delivered to Chambers two boxes of documents containing (1) a whistleblower package and (2) exhibits to his Response; but Morse did not serve (and, indeed, refused to serve) copies of these voluminous documents on the Trust.  On April 30, 2014, the Court entered an order explaining that the Court "will not consider the documents Morse sent to the Court on April 22 and 23, 2014, that were not filed on ECF and not served on the Trust."  (*Order Regarding Ex Parte Documents sent to Court by Gregory C. Morse*, dated April 30, 2014 (ECF Doc. # 6842).)

A hearing on the Objection was scheduled for May 15, 2014.  On May 7, 2014, Morse filed a *Request for an Adjournment of Hearing on Objection to Claim*, requesting that the Court adjourn the hearing on the Objection until July.  (ECF Doc. # 6880.)  The Court denied Morse's request, but agreed that Morse could appear by telephone; the Court further stated:  "If [Morse] chooses not to appear, the Court will take the matter under submission without argument by any of the parties and the objection will be decided on the papers alone."  (ECF Doc. # 6931.)  Morse

---

[2]     Unless otherwise indicated, all references to the docket are to *In re Residential Capital, LLC, et al.*, Case No. 12-12020.

did not appear at the May 15, 2014 hearing in person or by telephone, so the Court took the

matter under submission without any further argument from the Trust.

For the following reasons, the Court **SUSTAINS** the Trust's Objection and **EXPUNGES**

the Morse Claims.

## I.    BACKGROUND

### A.    Facts

#### 1.    *Procedural History*

On May 14, 2012 (the "Petition Date"), Residential Capital, LLC ("ResCap") and various

related entities (collectively, the "Debtors") filed chapter 11 bankruptcy petitions.  The bar date

for filing non-governmental proofs of claim was November 16, 2012.  (*See* ECF Doc. # 2093.)

Morse timely filed all four of his claims on November 16, 2012.

On December 11, 2013, the Court entered an order (ECF Doc. # 6065) confirming the

*Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and*

*Official Committee of Unsecured Creditors* (the "Confirmed Plan," ECF Doc. # 6065-1).  The

Confirmed Plan became effective on December 17, 2013 (the "Effective Date").  (ECF Doc.

# 6137.)  On the Effective Date, the Trust and the ResCap Liquidating Trust were established as

successors in interest to  the Debtors—the Trust is the successor in interest with respect to

Borrower Claims.  (*Id.*)  The Trust was established to, among other things, "(i) direct the

processing, liquidation and payment of the Allowed Borrower Claims in accordance with the

Plan, and the distribution procedures established under the Borrower Claims Trust Agreement,

and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying

the Allowed Borrower Claims."  (Confirmed Plan, Art. IV.F.)  The Trust is empowered to object

to borrower claims that it believes do not reflect liability of the Debtors.

2.      *The Morse Loan*

On March 3, 2008, Morse entered into a mortgage loan refinancing agreement (the

"Loan") with Homecomings in the amount of $414,500.00, reflected by a note (the "Note") and

secured by real property located in Plano, Texas (the "Property").[3]  (Delehey Decl. ¶ 4.)  The

Morse Loan was evidenced by a Deed of Trust executed by Morse on the same day in favor of

Homecomings, with MERS named as nominee for Homecomings.  (*Id.*)  GMACM was the

original servicer.  (*Id.*)  The Loan refinanced a first priority mortgage with EMC Mortgage Corp.

and a second priority mortgage with Homecomings.  (*Id.*)

Homecomings endorsed the Note and Deed of Trust to GMACM.  GMACM, in turn,

transferred the Note and Deed of Trust to the Federal National Mortgage Association ("Fannie

Mae").  (*Id.*)  GMACM transferred servicing of the Loan to Green Tree Servicing, LLC in

February 2013.  (*Id.*)

Morse last made a mortgage payment on the Loan in March 2011.  (*Id.* ¶ 5.)  He is

currently in default on the Note, but the Property has not yet been foreclosed; Morse retains

possession.  (*Id.*)

3.      *The Texas Litigation*

Morse has pursued two lawsuits in Texas related to the Loan.  He filed his first lawsuit

(the "First Morse Action")[4] on April 26, 2011 in the United States District Court for the Eastern

District of Texas ("Texas District Court").  The First Morse Action asserted six causes of action:

(1) common-law fraud; (2) fraud under Tex. Bus. & Com. Code §§ 27.01(b) and (e); (3) breach

---

[3]      Morse contends that the Property is located in the City of Murphy, Texas, and not in Plano, Texas.
(Response ¶¶ 30–31.)  But the address listed on the Note is 223 High Point Dr., Plano, Texas 75094.  (*See* Motion to
Dismiss, Ex. A.)  Whether the Property is in Murphy or Plano has no bearing on the outcome of the Objection.

[4]      Case No. 4:11-cv-00230.

of contract; (4) violation of the Texas Mortgage Broker License Act; (5) violation of the Texas

Mortgage Banker Registration and Residential Mortgage Loan Originator License Act; and

(6) claims under the Real Estate Settlement Procedures Act ("RESPA") and the Truth in Lending

Act ("TILA").  (*See Memorandum Opinion and Order Granting Motions to Dismiss*, Case No.

4:11-cv-00230 ECF Doc. # 31.)  Debtors GMACM and Homecomings were among the

defendants in the First Morse Action.  The Texas District Court dismissed the First Morse Action

because the RESPA and TILA claims were barred by the statute of limitations.  (*Id.* at 5.)  Since

those claims were dismissed, and diversity jurisdiction did not exist because several defendants

were Texas citizens, the court declined to exercise supplemental jurisdiction over the remaining

claims.  (*Id.* at 4 n.1, 7.)  The court dismissed the First Morse Action without prejudice.  (*Id.* at

7.)

        Morse's second lawsuit (the "Texas Action") forms the basis for the Morse Claims in

these chapter 11 cases.  Morse initiated the Texas Action by filing a complaint (the "Original

Complaint") in Texas state court in Collin County on May 18, 2012,[5] naming as defendants

Debtors GMACM and Homecomings, as well as non-debtors Commonwealth Land Title

Insurance Company, Homecomings Wholesale Funding,[6] Ally Bank ("Ally"), Mortgage

Electronic Registration Systems, Inc. ("MERS"), MERSCORP, Inc., and Fannie Mae

(collectively, the "Defendants").  (Orig. Compl. at 1.)  On June 20, 2012, the Defendants

removed the Texas Action to the Texas District Court on the basis of federal question

---

[5]        Cause No. 199-01915-2012.

[6]        Morse argues that the Defendants committed various acts of fraud relating to Homecomings Wholesale
Funding.  Homecomings Wholesale Funding never made an appearance in the Texas Action and claims against that
entity were dismissed pursuant to Federal Rule of Civil Procedure 4(m).  (*See* Magistrate Recommendation at 3 n.3;
Texas Court Order at 4–5.)

jurisdiction with respect to the RICO claim and diversity and supplemental jurisdiction with

respect to the state law claims.  (*See* Case No. 4:12-cv-00375 ECF Doc. # 1 ¶ 13.)

On June 22, 2012, Magistrate Judge Amos Mazzant ordered Morse to replead to comply

with the Federal Rules of Civil Procedure (the "FRCP"), including FRCP 8 and 9, and the

Eastern District of Texas local rules.  (*Id.* ECF Doc. #10.)  On August 20, 2012, Morse filed the

Amended Complaint.  The Amended Complaint asserts the following causes of action:

(1) fraud; (2) breach of contract; (3) violation of the Texas Mortgage Broker License Act, Texas

Finance Code § 156.001, *et seq.*; (4) violations of the Texas Mortgage Banker Registration and

Residential Mortgage Loan Originator License Act, Texas Finance Code § 157.001, *et seq.*;

(5) violations of the Texas Deceptive Trade Practices Act ("DTPA"); and (6) violations of the

Racketeer Influenced and Corrupt Organizations Act ("RICO").  (Am. Compl. ¶¶ 163–76.)

Additionally, Morse seeks a declaratory judgment that (1) he does not currently have clear title to

the Property; (2) there was not a lender at closing; (3) the lender was not Homecomings; (4) no

entity had the right to transfer interests to Fannie Mae; (5) there is no lien on the Property as a

result of Morse's refinance; and (6) he is entitled to treble civil damages under RICO.  (*Id.*

¶ 162.)  Morse also asks the court to determine what entities have an interest in his mortgage and

in his Property.  Finally, Morse demands an "accounting" "for the funds that each and/or all

Defendants were associated with" because "[t]he numbers don't make sense" and "appear to be

dishonest."  (*Id.* ¶ 175.)

On September 10, 2012, defendants Homecomings, GMACM, Ally, MERS,

MERSCORP., Inc., and Fannie Mae filed a Motion to Dismiss.  They argued that the Amended

Complaint should be dismissed because the Amended Complaint failed to adequately plead the

asserted causes of action.  (Motion to Dismiss at 5–14.)  Morse opposed the Motion to Dismiss.
(Case No. 4:12-cv-00375 ECF Doc. # 19.)

Also on September 10, 2012, Debtor defendants GMACM and Homecomings filed the
Notice of Bankruptcy.  The Notice of Bankruptcy addressed this Court's *Final Supplemental
Order Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and
Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation
Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims,
Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and
Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV)
Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* (the
"Foreclosure Stay Relief Order," ECF Doc. # 774).  Pursuant to the Foreclosure Stay Relief
Order, Morse was free to pursue his declaratory judgment action to the extent that action was an
attack on the validity of any lien on his Property (the "Lien Claims"), but his claims for
damages—including his claims for fraud, breach of contract, and violations of RICO, the Texas
Mortgage Broker License Act, and the Texas Mortgage Baker Registration and Residential
Mortgage Loan Originator License Act (the "Non-Lien Claims")—were stayed as a result of
these chapter 11 proceedings, to the extent Morse sought a recovery from any of the Debtors.
The Non-Lien Claims could, however, proceed against non-debtor defendants.  (Notice of
Bankruptcy ¶¶ 7–8.)  The Debtor defendants—GMACM and Homecomings—only moved to
dismiss the Lien Claims; all Non-Lien Claims against the Debtor defendants were stayed.

On November 11, 2012, United States District Judge Ron Clark referred the Texas
Action to Magistrate Judge Don D. Bush for pretrial purposes.  (*See* Case No. 4:12-cv-00375
ECF Doc. # 24).  On August 13, 2013, Judge Bush entered the Magistrate Recommendation,

recommending dismissal with prejudice of (1) all claims against the non-debtor Defendants (with

the exception of Homecomings Wholesale Funding); and (2) the Lien Claims regarding Morse's

lien against Debtor defendants GMACM and Homecomings, for failure to state a claim.  The

remaining Non-Lien Claims against GMACM and Homecomings were and remain stayed.  The

Magistrate Recommendation noted, however, that

> upon the lifting of any stay, the analysis in this report finding that Plaintiff
> has stated no statutory or common law fraud, breach of contract, RICO,
> DTPA, Texas Mortgage Broker License Act, Texas Mortgage Banker
> Registration and Residential Mortgage Loan Originator License Act,
> accounting or "other" claims against Defendants Commonwealth Land
> Title Insurance Company, MERS, MERSCORP, Inc., Ally and Fannie
> Mae would be equally applicable to Homecomings and GMAC, and, upon
> the lifting of the stay, a separate report and recommendations will be
> entered recommending that they be applied accordingly.

(Magistrate Recommendation at 21.)

The Texas District Court adopted the Magistrate Recommendation on September 25,

2103, and dismissed Morse's motions seeking discovery and sanctions against counsel, as well

as objections to the Magistrate Recommendation.  (*See* Texas Court Order.)  The Texas Court

Order dismissed the Texas Action (1) with prejudice as to all the non-Debtor defendants (except

Homecomings Wholesale Funding, which was dismissed without prejudice pursuant to FRCP

4(m)); (2) with prejudice as to the Lien Claims against GMACM and Homecomings, and

(3) continued the stay of proceedings against GMACM and Homecomings as to the Non-Lien

Claims.  (*Id.*)

On October 23, 2013, Morse filed a Notice of Appeal of the Order Adopting the

Magistrate's Recommendations and a Motion to Proceed *In Forma Pauperis*.  On November 15,

2013, the Texas District Court denied the Motion to Proceed *In Forma Pauperis* without

prejudice.  (Obj. Ex. 13.)  Morse's appeal of the Texas Court Order remains pending in the Fifth

Circuit.[7]

> ### 4.    *The Morse Claims*

Morse filed the Morse Claims on November 16, 2012.  Each claim is for $6,475,662.00,

and each states the basis for the claim as:  "[RICO] fraud complaint filed in E. District of Texas

Federal Court."  Presumably, the Morse Claims refer to the Amended Complaint.  Each Claim

attaches (1) a "Summary of Unsecured Claim of Gregory C. Morse"; (2) an "Amortizing Loan

Calculator"; and (3) an "Affidavit of Secured Interest in the Property of Gregory C. Morse."  The

"Summary of Unsecured Claim of Gregory C. Morse" indicates that Morse seeks reimbursement

of the mortgage principal ($414,500.00), mortgage interest ($480,147.00), "[e]quity—(in

property)" ($848,400.00), maintenance and improvements ($415,507.00), and treble damages

($4,317,108.00), for a total of $6,475,662.00.

> ## B.    **The Parties' Arguments**

The Trust argues that the Court should apply federal pleading standards when assessing

the validity of the Morse Claims.  The Trust further asserts that FRCP 9(b)—imposing

heightened pleading standards on fraud claims–applies in contested matters such as claim

objections.  *See* FED. R. BANKR. P. 9014(c), 7009.  Consequently, the Trust argues that the

sufficiency of the pleading of the Morse Claims should be determined by applying FRCP 8(a)(2),

9(b), and 12(b)(6).  The Court agrees.

In the Objection and the Reply, the Trust details each of the alleged deficiencies in

Morse's Amended Complaint, which form the basis of his Claims.  Morse's Response contains

invective primarily targeted at the Debtors; he also attempts to reargue issues that were carefully

addressed and decided against him in the Texas Action.  To the extent necessary, the Court

---

[7]    *Gregory Morse v. Homecomings Financial, L.L.C., et al.*, Case No. 13-41141 (5th Cir. 2013).

addresses Morse's arguments below, but a full recitation of the parties' arguments is

unnecessary.[8]

## II.    DISCUSSION

### A.    Claims Objections

Claims objections have a shifting burden of proof.  Correctly filed proofs of claim

"constitute prima facie evidence of the validity and amount of the claim . . . .  To overcome this

prima facie evidence, an objecting party must come forth with evidence which, if believed,

would refute at least one of the allegations essential to the claim."  *Sherman v. Novak (In re

Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000).  By producing "evidence equal in force to the

prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting

the burden back to the claimant to "prove by a preponderance of the evidence that under

applicable law the claim should be allowed."  *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr.

S.D.N.Y. 2009) (internal quotation marks omitted).  If the objector does not "introduce[]

evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need

offer no further proof of the merits of the claim."  4 COLLIER ON BANKRUPTCY ¶ 502.02 (16th

rev. ed. 2013).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if

"unenforceable against the debtor and property of the debtor, under any agreement or applicable

law."  To determine whether a claim is allowable by law, bankruptcy courts look to "applicable

nonbankruptcy law."  *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

Several courts, including those in this district, have applied the federal pleading standards

when assessing the validity of a proof of claim.  *See In re DJK Residential LLC*, 416 B.R. 100,

---

[8]       All of Morse's arguments have been considered in connection with this decision, whether or not
specifically addressed below.

106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure.") (citing *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 542 (Bankr. S.D.N.Y. 2000)).  Thus, to the extent the Amended Complaint provides the basis for the Morse Claims, it must satisfy the federal pleading requirements.  For the reasons discussed below, it does not.

Pursuant to FRCP 8(a)(2), a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  FRCP 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  While a claim "does not need detailed factual allegations, . . . [it] requires more than labels and conclusions . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The Claimant must assert 'enough facts to state a claim to relief that is plausible on its face.'" *DJK Residential*, 416 B.R. at 106 (quoting *Twombly*, 550 U.S. at 570).  "To show facial plausibility, the Claimant must plead 'factual content that allows the court to draw the reasonable inference that the [Debtor] is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

FRCP 9(b) imposes heightened pleading standards for fraud-based claims.  Pursuant to FRCP 9(b), "a party must state with particularity the circumstances constituting fraud or mistake" if making allegations of fraud. FED. R. CIV. P. 9(b).  "In order to meet the 'particularity' requirement of FRCP 9(b), a plaintiff [must] allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d 498, 503 (6th

Cir. 2013) (alteration in original) (internal quotation marks omitted).  "The purpose of Rule 9(b)

is to provide fair notice to the defendant so as to allow him to prepare an informed pleading

responsive to the specific allegations of fraud."  *Advocacy Org. for Patients & Providers v. Auto*

*Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999).

Assuming that Morse's proofs of claim constitute *prima facie* evidence of the validity

and amount of his Claims, the Trust's Objection brought forward sufficient evidence to refute

essential elements of the Morse Claims, thereby shifting the burden back to Morse.  The vague,

conclusory allegations contained in the Amended Complaint do not support a reasonable

inference that Homecomings and GMACM are liable for the alleged misconduct.  Morse's

Response, rather than asserting any meaningful bases for the Claims, is littered with

(1) conclusory allegations of fraudulent activity insufficient to establish a basis for fraud under

relevant statutes or pleading standards and (2) unsupported allegations of misconduct on the part

of the Debtors' counsel in these cases.  The procedural "deficiencies" Morse identifies in the

Trust's Objection are meritless—the Trust may object to both of his Claims through a single

objection and was not required to seek additional documentation from him since the basis for the

Objection was not insufficient documentation.[9]  (*See* ECF Doc. # 3294 (sending a request letter

is mandatory when the Debtors/Trust seek to disallow a claim on an insufficient documentation

basis, but discretionary otherwise).)  Finally, his allegations of misconduct regarding

Homecomings Wholesale Funding are not here because Homecomings Wholesale Funding (if it

---

[9]    The Trust claims that it sent Morse a request letter to request additional supporting documentation and
explanation in support of the Morse Claims on June 11, 2013.  (*See* Rosenbaum Decl. ¶ 3; Obj. Ex. 5.)  Morse
claims that he never received a request letter.  (*See* Response ¶ 26(K).)  But even assuming that Morse did not
receive a request letter, this is not a basis upon which to deny the Objection; as explained above, the Trust was not
required to send any such letter prior to filing its Objection.

exists) is not a Debtor.  Additionally, as further explained below, the Morse Claims fail to state a

basis of liability against either GMACM or Homecomings.

### B.    Quiet Title Claims

Unlike Morse's Non-Lien Claims, which were stayed pursuant to the Foreclosure Stay

Relief Order, Morse's claims for declaratory relief to quiet title were adjudicated by the Texas

District Court.  *See* Texas Court Order at 7 ("As to the claims against defendants Homecomings

and GMAC, the declaratory judgment action . . . is **DISMISSED** with prejudice.  All remaining

claims against Homecomings and GMAC are and shall remain **STAYED** pending the resolution

of the bankruptcy proceedings.").  The Court cannot and will not review the decision of the

Texas District Court as to the quiet title claims.  Morse represents that he is pursuing an appeal to

the Fifth Circuit—that is the appropriate court to review the Texas District Court's

determinations.[10]

### C.    Fraud Claims

To assert a claim of fraud under Texas law, a plaintiff must allege:  (1) a material

representation was made; (2) the representation was false; (3) when the representation was made,

the speaker knew it was false or made it recklessly without any knowledge of the truth and as a

positive assertion; (4) the speaker made the representation with the intent that the other party

should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby

suffered injury.  *Flaherty & Crumrine Preferred Income Fund, Inc.*, 565 F.3d 200, 212 (5th Cir.

2009) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

FRCP 9(b) requires that a fraud claim in federal court be pled with particularity.

---

[10]        "A case pending appeal is res judicata and entitled to full faith and credit unless and until reversed on
appeal."  *Fid. Standard Life Ins. Co. v. First Nat'l Bank & Trust Co.*, 510 F.2d 272, 273 (5th Cir. 1975); *see also In
re Marriage of Brown*, 870 S.W.2d 600, 604 (Tex. App. 1993) (a judgment is final for the purposes of res judicata
despite the pendency of an appeal).

Morse alleges that the "Defendants made false, material misrepresentations to Plaintiff to secure his business and to induce him into the refinancing." (Am. Compl. ¶ 164.) Morse groups together *all* of the Defendants and does not identify with specificity the "who, what, when, where, and how" of representations made to *him* with intent to defraud *him*, as is required under FRCP 9(b). Additionally, Morse does not identify (1) how he relied on a fraudulent misrepresentation or (2) how he was injured by a fraudulent misrepresentation. Consequently, he has not sufficiently pled a claim for fraud under Texas law.

> 1.    *Fraud Claim Under Texas Bus. & Com. Code § 27.01*

Morse alleges in the Amended Complaint that the "Defendants violated [the] protections" of section 27.01 of the Texas Business and Commerce Code. (Am. Compl. ¶¶ 166–67.) Texas Business and Commerce Code section 27.01, "Fraud in Real Estate and Stock Transactions," states:

> Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a
>
> > (1) false representation of a past or existing material fact, when the false representation is
> >
> > > (A) made to a person for the purpose of inducing that person to enter into a contract; and
> > >
> > > (B) relied upon by that person in entering into that contract.

TEX. BUS. & COM. CODE § 27.01. "That statute, by its own terms, applies only to fraud in real estate or stock transactions." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 343 (5th Cir. 2008) (citing *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 611 (Tex. App. 2000)). It "applies to misrepresentations of material fact made to induce another to enter into a contract for the sale of land or stock," but "[a] loan transaction, even if secured by land, is not considered to come under the statute." *Burleson State Bank*, 27 S.W.3d at 611; *see also Greenway Bank &*

14

*Trust of Houston v. Smith*, 679 S.W.2d 592, 596 (Tex. App. 1984) ("The statute makes no

mention of any application to guaranty agreements, secured by real estate, or to a party who

'merely' loaned money for the purchase of real estate.").

Since Morse alleges only a loan refinancing, even though the refinancing was secured by

land, his claims fail. The claims additionally lack the specificity required by FRCP 9(b).

> ### 2.    *Fraud Claim Under RICO*

To establish a claim under RICO, a plaintiff must allege harm from (1) a person who

engages in (2) a pattern of racketeering activity[11] (3) connected to the acquisition, establishment,

conduct, or control of an enterprise. 18 U.S.C. § 1962. The Second Circuit has explained:

> To state a claim for damages under RICO a plaintiff has two pleading burdens.
> First, he must allege that the defendant has violated the substantive RICO statute,
> commonly known as "criminal RICO." In so doing, he must allege the existence
> of seven constituent elements: (1) that the defendant (2) through the commission
> of two or more acts (3) constituting a "pattern" (4) of "racketeering activity"
> (5) directly or indirectly invests in, or maintains an interest in, or participates in
> (6) an "enterprise" (7) the activities of which affect interstate or foreign
> commerce. Plaintiff must allege adequately defendant's violation of section 1962
> before turning to the second burden—*i.e.*, invoking RICO's civil remedies of
> treble damages, attorneys['] fees and costs. To satisfy this latter burden, plaintiff
> must allege that he was "injured in his business or property *by reason of* a
> violation of section 1962."

*Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (emphasis in original) (citations

omitted); *see also Zavalidroga v. Cote*, 395 Fed. App'x 737, 740–41 (2d Cir. 2010) (applying

*Moss*); *In re Residential Capital, LLC*, 507 B.R. 477, 494–95 (Bankr. S.D.N.Y. 2014).

The enterprise must be "an entity separate and apart from the pattern of activity in which

it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also Whelan v. Winchester*

*Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (concluding that "an enterprise is a group of

persons or entities associating together for the common purpose of engaging in a course of

---

[11]    Racketeering activity is defined under 18 U.S.C. § 1961 to include dozens of predicate offenses, including
extortion, bribery, counterfeiting, and mail fraud.

conduct"; and explaining that "an enterprise may be a legal entity or any union or group of

individuals associated in fact"); *Allstate Ins. Co. v. Rozenberg*, 590 F. Supp. 2d 384, 390

(E.D.N.Y. 2008) (stating that the enterprise must be "distinct from those persons or entities who

stand accused of conducting that racketeering activity").

Failure to file a RICO case statement may warrant dismissal of RICO claims. *See Barrus

v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243, 259 (W.D.N.Y. 2010); *Walker v. Stanton*,

No. EDCV 08–24, 2008 WL 4401388, at *5–6 (C.D. Cal. Sept. 2, 2008); *Pierce v. Ritter,

Chusid, Bivonia & Cohen*, 133 F. Supp. 2d 1344, 1346 (S.D. Fla. 2001); *see also Lui Ciro, Inc.

v. Ciro, Inc.*, 895 F. Supp. 1365, 1377–78 (D. Haw. 1995) (analyzing dismissal of RICO claim

for failure to file RICO case statement under Rule 41(b)).

Even if a plaintiff can demonstrate a substantive RICO violation, the plaintiff must also

show "injury to the plaintiff's business or property" and "that such injury was by reason of the

substantive RICO violation." *Catholic Health Care W. v. US Foodserv. (In re US FoodServ.

Pricing Litig.)*, 729 F.3d 108, 117 (2d Cir. 2013).

Even in a *civil* RICO case, a plaintiff must allege criminal activity. To plead a "pattern of

racketeering activity," the plaintiff must identify two or more predicate criminal acts that are

both (1) related and (2) amount to or pose a threat of continued criminal activity. *St. Germain v.

Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (per curiam) (analyzing civil RICO pleading

standards). "To establish an 'association in fact' enterprise under 18 U.S.C. § 1961(4) plaintiffs

must show 'evidence of an ongoing organization, formal or informal, and . . . evidence that the

various associates function as a continuing unit.'" *Atkinson v. Andarko Bank & Trust Co.*, 808

F.2d 438, 441 (5th Cir. 1987) (quoting *Turkette*, 452 U.S. at 583).

Morse fails to identify *specific facts* in the Amended Complaint that would show an

enterprise of individuals *associated in fact* with GMACM and Homecomings. Additionally, his

allegations do not connect any injury to substantive RICO violations, and Morse does not

identify two or more predicate criminal acts that pose a threat of continued criminal activity.

Consequently, Morse fails to state a claim for RICO liability.

         3.    *Fraud Claim Under Texas Deceptive Trade Practices Act*

Morse alleges that the Debtor defendants violated "18 U.S.C. §§ 1341 and 1343, 18

U.S.C. § 1961, 18 U.S.C. § 1963 and Texas Business and Commerce Code § 17.45 and 27.01."

(Am. Compl. ¶ 166.) As a preliminary matter, these bare allegations are conclusory and do not

plead fraud with the requisite factual particularity required by FRCP 9(b). Moreover, Morse

cannot state a claim under the DTPA because he cannot show that he is a consumer within the

meaning of the statute. To qualify as a consumer under the DTPA, a plaintiff must establish that

he is "an individual . . . who seeks or acquires by purchase or lease, any goods or services . . . ."

TEX. BUS & COM. CODE § 17.45(4). In general, loans of money or extensions of credit are not

considered goods or services that can form the basis of a DTPA claim. *Gomez v. Wells Fargo*

*Bank, N.A.*, 2010 WL 2900351, *3 (N.D. Tex. 2010) (concluding that mortgagor who attempted

to modify her home loan with mortgagee to avoid repossession of her home was not a consumer

under the DTPA because she was attempting to borrow money and not purchase a good or

service); *see also Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 175–76 (Tex. 1980) (stating

that a party who "seeks only money in a transaction is not a consumer" under the DTPA);

*Maginn v. Norwest*, 919 S.W.2d 164, 167 (Tex. App. 1996) (holding that a party was not a

consumer where purpose of transaction was only to obtain a mortgage loan). It is true that a

party who obtains a loan that is "inextricably intertwined" in the purchase or lease of a good or

17

service may qualify as a consumer.  *See Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382, 389 (Tex. 1982) (concluding that a bank customer qualified as a consumer because he sought financing to purchase a dump truck).  But "[t]he determining factor is whether the purchase or lease of a good or service was 'an objective of the transaction, not merely incidental to it.'"  *Gomez*, 2010 WL 2900351, at * 3 (quoting *Fed. Deposit Ins. Corp. v. Munn*, 804 F.2d 860, 865 (5th Cir. 1986)).

Morse used his loan to refinance his *home*.  This does not qualify as a "good" or "service" under the DTPA.  *See, e.g.*, *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 160 (Tex. App. 2007) (concluding that the refinance of home equity loan cannot qualify as a good or a service under the DTPA); *Marketic v. U.S. Bank Nat. Ass'n*, 436 F. Supp. 2d 842, 85 (N.D. Tex. 2006) (concluding that a home equity loan is not a "good" or a "service" under the DTPA).  Since Morse was not a consumer under the DTPA, he cannot recover on a DTPA fraud claim against the Defendant Debtors.

### D.    Breach of Contract Claim

There are four elements of a breach of contract claim under Texas law:  (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) the defendant's breach of the contract; and (4) resulting damages to the plaintiff.  *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App. 2005)); *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. 2001)); *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App. 2010).  To plead a breach of contract claim, a plaintiff must point to a specific provision in the contract that the defendant breached.  *Coleman v. Bank of Am., N.A.*, 2011 WL 2516169, at *1 (N.D. Tex. 2011) (citation omitted)

18

(dismissing breach of contract claim for failure to state a claim where "plaintiff points to no specific provision in the Deed of Trust that was breached by defendant").

Morse alleges that there "is a valid, enforceable contract," that he "performed, tendered performance of or was excused from performing his contractual obligations," that "Defendants breached the contract," and that he was injured by the Defendants' breach.  (Am. Compl. ¶ 169.) But Morse does not *actually identify* anywhere in the Amended Complaint (1) the contract at issue; (2) the *provision* that the Debtor defendants breached; (3) *how* the Debtor defendants breached the contract; or (4) *how* he was injured.  Nor does he identify *which* of the defendants—and whether the Debtor defendants were included—breached the contract. Consequently, he has not adequately alleged that either GMACM or Homecomings breached a contract to which they were parties.

### E.      Texas Mortgage Broker License Act

Morse alleges that one or more of the Defendants failed to register as required by the Texas Mortgage Broker License Act and is therefore liable under Tex. Fin. Code section 156.406.  That section provides:

> (b) A person who received money, or the equivalent of money, as a fee or profit because of or in consequence of the person acting as a residential mortgage loan originator without an active license or being exempt under this chapter is liable for damages in an amount that is not less than the amount of the fee or profit received and not to exceed three times the amount of the fee or profit received, as may be determined by the court. An aggrieved person may recover damages under this subsection in a court.

TEX. FIN. CODE § 156.406(b).  To be an "aggrieved person" under the statute, "the claimant must have paid all or part of the fee or profit to the unlicensed mortgage broker or loan officer."

*Dohalick v. Moody Nat'l Bank*, 375 S.W.3d 537, 541 (Tex. App. 2012).

As a preliminary matter, Morse does not identify *which* Defendants acted without an active license, so Morse fails to satisfy Rule 8(a)(2). Moreover, he has not adequately pled that he is an "aggrieved person" eligible for relief under this statute. Consequently, he fails to state a claim for violation of the Texas Mortgage Broker License Act.

### F.    Texas Mortgage Banker Registration and Residential Mortgage Loan Originator License Act

Morse alleges that one or more of the Defendants is not registered in violation of section 157.003 of the Texas Finance Code. Again, he does not identify *which* of the Defendants is not registered. Additionally, he failed to specify the actual damages he suffered as a result of the alleged violation, as required by the Act. *See* Tex. Fin. Code § 157.027. Consequently, he fails to state a claim under the Texas Mortgage Banker Registration and Residential Mortgage Loan Originator License Act.

### G.    "Other Causes of Action"

To the extent that Morse claims that "other causes of action" will come to light after discovery, these allegations are not sufficient to establish liability for GMACM or Homecomings. A complaint cannot "le[ave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." *Twombly*, 550 U.S. at 561. These undisclosed causes of action are not sufficient to support a claim in these chapter 11 cases.

To the extent that Morse alleges "accounting" as an individual basis for relief, he is mistaken. Accounting is generally considered to be an equitable *remedy. See Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. Appx. 707, 709 (5th Cir. 2007). As Morse has failed to establish a basis of *independent liability*, he is not entitled to this equitable remedy.

20

### III.    CONCLUSION

For all of the foregoing reasons, the Objection is **SUSTAINED**, and claim numbers 5680

and 5682 are hereby disallowed and expunged.

**IT IS SO ORDERED.**

Dated:  June 6, 2013
         New York, New York

*Martin Glenn*
_____
MARTIN GLENN
United States Bankruptcy Judge