1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - - -x

4   In the Matters of:

5   RESIDENTIAL CAPITAL, LLC, et al.,        Case No. 12-12020-mg

6                 Debtors.

7   - - - - - - - - - - - - - - - - - - -x

8   GMAC MORTGAGE, LLC,                      Case No. 12-12032-mg

9                 Debtor.

10  - - - - - - - - - - - - - - - - - - -x

11  HEYWARD,

12                    Plaintiff,

13          - against                       Adv. Proc. 14-017784-mg

14  GMAC MORTGAGE, et al.,

15                    Defendants.

16  - - - - - - - - - - - - - - - - - - -x

17                United States Bankruptcy Court

18                One Bowling Green

19                New York, New York

20                May 29, 2014

21                10:02 AM

22

23  B E F O R E :

24  HON. MARTIN GLENN

25  U.S. BANKRUPTCY JUDGE

1

2   (CC: Doc# 5161) Adj. Hrg. RE: Motion for Omnibus Objection to

3   Claim(s) / Debtors' Forty-Ninth Omnibus Objection to Claims (No

4   Liability Borrower Claims - Books and Records)

5   Going Forward solely as to the claim filed by Mary R.

6   Biancavilla (Claim No. 4397).

7

8   (CC: Doc# 6777) Motion for Omnibus Objection to Claim(s) / The

9   ResCap Borrower Claims Trust's Sixty-First Omnibus Objection to

10  Claims (No Liability Borrower Claims).

11

12  Adversary proceeding: 14-01778

13  (CC: Doc no. 1) Status Conference

14

15

16

17

18

19

20  Transcribed by:  Penina Wolicki

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

1

2    A P P E A R A N C E S :

3    MORRISON & FOERSTER LLP

4          Attorneys for ResCap Liquidating Trust and

5          ResCap Borrower Claims Trust

6          250 West 55th Street

7          New York, NY 10019

8

9    BY:   JORDAN A. WISHNEW, ESQ.

10

11

12   MARY BIANCAVILLA

13         Pro Se (TELEPHONICALLY)

14

15

16   NEIL LARKINS

17         Pro Se (TELEPHONICALLY)

18

19

20   LAW OFFICES OF EDWARD N. TOBIAS, L.L.C.

21         75 Princeton Oval

22         Freehold, NJ 07728

23

24   BY:   EDWARD N. TOBIAS, ESQ. (TELEPHONICALLY)

25

1                    P R O C E E D I N G S

2            THE COURT:  Please be seated.  We're here in

3    Residential Capital, number 12-12020.  Mr. Wishnew?

4            MR. WISHNEW:  Good morning, Your Honor.  Jordan

5    Wishnew of Morrison & Foerster for the ResCap Borrower Claims

6    Trust.

7            Your Honor, the first matter being addressed on

8    today's agenda is on page 5 under "Claim Objections", the

9    debtors' forty-ninth omnibus objection to claims, solely as it

10   relates to the claim of Mary Biancavilla.

11           The purpose -- we kept this on today's calendar simply

12   because we wanted to let the Court know that we are in active

13   settlement discussions with Ms. Biancavilla.  She previously

14   had counsel.  I don't want to represent whether she still is or

15   is not working with counsel.  But we have given her a

16   settlement agreement consistent with our discussions with her

17   that she is considering.  We've had a lengthy discussion with

18   her yesterday about the terms of the settlement agreement.  She

19   is still reviewing it.  She's asking questions of us, which

20   we're going back to the Borrower Trust for.

21           We are optimistic that it will ultimately get

22   resolved.  If this matter needs to get back on the Court's

23   calendar, we will so advise the Court, but for now, we are

24   actively trying to resolve this matter consensually.

25           THE COURT:  Thank you.

1    MR. WISHNEW:  Your Honor, the next matter on the

2  calendar is item 2, page 6, the Borrower Claims Trust's sixty-

3  first omnibus objection to claims.  We labeled them as no-

4  liability borrower claims.

5        Identified on Exhibit A to the form of order are

6  forty-one claims that the Borrower Claims Trust asserts have no

7  liability or no basis for liability against the debtors and the

8  Borrower Claims Trust.  The reasons for the objections are set

9  forth in detail on the Exhibit A to the order.

10        Ms. Horst, the debtors' -- the chief claims officer

11  for the ResCap Liquidating Trust and the debtors, is in the

12  court here to support her declaration if the Court should have

13  any questions.

14        It is the Borrower Claims Trust's position that the

15  allegations and the objections set forth in Exhibit A to the

16  order refute essential elements of each of the claims that are

17  in dispute and identified.  Responses to the objection were due

18  May 12th.  We received two objections, one from Mr. Tobias, a

19  second from Mr. Larkins, and a third from Mr. Farrell, but Mr.

20  Farrell is actually not identified in any way in the Exhibit A

21  to the sixty-first omnibus objection, and I think he's eager to

22  have his claim addressed by the Court, and the Borrower Claims

23  Trust will do so, but Mr. Farrell is not subject to the sixty-

24  first omnibus objection, so we will not address that objection

25  today.

1          THE COURT:  All right.  Before you go on, I see -- Ms.

2    Biancavilla, are you on the phone?

3          MS. BIANCAVILLA:  Yes, I am, Your Honor.  Good

4    morning.

5          THE COURT:  All right.  Good morning.  And you heard

6    Mr. Wishnew describe, without going into details -- which I

7    don't want -- is it correct that you're in the process of

8    considering a proposed settlement with the trust?

9          MS. BIANCAVILLA:  Yeah.  My previous attorney, he

10   signed off -- I don't know if he did it officially with the

11   court -- but he had sent me a letter, and he had entered into

12   settlement negotiations on my behalf.  And so I'm feeling a

13   little outside of my comfort zone in trying to continue without

14   counsel.

15         But the -- Kurtzman Carson Associates, I believe

16   that's the name -- Stacy and Mr. Wishnew, they've been very

17   engaging and very kind.  I just don't know a lot of the legal

18   ramifications.  So that -- but they've been, you know, good in

19   explaining things.

20         THE COURT:  Okay.  Ma'am I just asked --

21         MS. BIANCAVILLA:  I'm not sure if I want --

22         THE COURT:  -- I just want to be clear about one

23   thing.  Is it correct that you no longer have an attorney

24   representing you?

25         MS. BIANCAVILLA:  That is my understanding.  There's

1  been quite a bit of confusion through this process as to what

2  exactly he's doing, when -- so that he cited at some point that

3  it was taking a long time and so, you know, and I couldn't

4  agree more with him, because there was some confusion inserted

5  that I didn't, you know, understand where that was coming from,

6  exactly.  But and there was maybe an illness in his family, and

7  I felt well, maybe that's the connection and he might be --

8      THE COURT:  So let me just explain.  The reason I'm

9  inquiring is that if you're represented by counsel, the legal

10 ethics rules require that the Trust's counsel not speak

11 directly to you but to your counsel.

12     MS. BIANCAVILLA:  Right.

13     THE COURT:  If you're no longer represented by

14 counsel, it's perfectly appropriate for them to speak to you

15 directly.

16     MS. BIANCAVILLA:  Right.  Okay.

17     THE COURT:  And that's what I --

18     MS. BIANCAVILLA:  Well, I appreciate that.  Yeah.  So

19 that, you know, it's my understanding that he is no longer

20 involved.

21     THE COURT:  Okay.

22     MS. BIANCAVILLA:  I don't know if he -- he said he was

23 filing whatever paperwork to, you know, make it right with the

24 court.  I'm not aware of what that would be.

25     THE COURT:  Well, let me just ask, in your view, he's

1   not representing you; you're acting on your own behalf for now?

2            MS. BIANCAVILLA:  Well, in my view, it would appear

3   that he's not representing me.

4            THE COURT:  Okay.

5            MS. BIANCAVILLA:  There's -- there's other things that

6   would make it seem that he thinks he's still involved,

7   because -- you know, and I don't like to get the Court involved

8   in all of this, but you know, he would be contingency --

9   believes that he's still --

10            THE COURT:  Okay.

11            MS. BIANCAVILLA:  -- to receive payment for work

12   that's no longer doing.

13            THE COURT:  I'm not going to get in the middle of --

14            MS. BIANCAVILLA:  I know, I know.

15            THE COURT:  -- the issues between you and --

16            MS. BIANCAVILLA:  I'm sorry.  So --

17            THE COURT:  No, I just --

18            MS. BIANCAVILLA:  -- it's hard for me to answer that

19   question as to where exactly he is.  So that's -- he may end up

20   showing up just to, you know, get paid.

21            THE COURT:  Okay.

22            MS. BIANCAVILLA:  I don't know.  I haven't --

23            THE COURT:  But let me just --

24            MS. BIANCAVILLA:  -- but that's further --

25            THE COURT:  -- okay.  But as far as you're concerned,

1  you're acting, at this stage, on your own behalf.

2          MS. BIANCAVILLA:  Yeah.

3          THE COURT:  And you want to continue to have your

4  discussions with Mr. Wishnew or his colleagues to see whether

5  you can resolve the matter.  Am I correct in that?

6          MS. BIANCAVILLA:  Yeah, yeah.

7          THE COURT:  Okay.  That's fine.

8          MS. BIANCAVILLA:  You know, they're kind and they've

9  been, you know, forthcoming.

10          THE COURT:  Okay.

11          MS. BIANCAVILLA:  You know, again, as I said, I'm a

12  little, you know, out of my comfort zone --

13          THE COURT:  Okay.

14          MS. BIANCAVILLA:  -- with the, you know, legal

15  matters.

16          THE COURT:  Okay.

17          MS. BIANCAVILLA:  So that I'm not sure that at some

18  point I might want to bring in some legal counsel, but right

19  now I am acting on my own behalf.

20          THE COURT:  Okay, that's fine.

21          MS. BIANCAVILLA:  That's correct.

22          THE COURT:  That's the only thing I wanted to resolve.

23          MS. BIANCAVILLA:  Yeah, I appreciate your clarifying

24  that for me.

25          THE COURT:  Okay.  And so I'm going to adjourn the

1  matter from today, so that you and Mr. Wishnew or his

2  colleagues can continue your discussions.  And we'll see

3  hopefully -- if it can't be resolved, this will get put back on

4  the calendar.  But I'm not taking any action with respect to

5  the issues of your claim at this point.

6          You're free to stay on the phone, but you also are

7  excused if you want.  So it's up to you.

8          MS. BIANCAVILLA:  I appreciate that.  May I ask you a

9  question?

10         THE COURT:  You can ask.  I might not be able to

11 answer it.  But go ahead.

12         MS. BIANCAVILLA:  Okay, that's fair.  Sure, yeah.  I

13 appreciate a couple of minutes.

14         So that's -- if I get to a place in the negotiations

15 where I'm not comfortable with moving forward, and I decide

16 that I'd like to move forward on my own, in the court, is that

17 possible to do by way of CourtCall?

18         THE COURT:  Yes, it is.

19         MS. BIANCAVILLA:  Okay, and just like faxing,

20 e-mailing documents?

21         THE COURT:  Yes, it is.  And there are a reasonable

22 number of -- we call them "pro ses" that represent themselves,

23 they're not lawyers.  And I absolutely permit pro se parties to

24 appear by telephone.  Where do you live, Ms. Biancavilla?

25         MS. BIANCAVILLA:  I'm in the State of Pennsylvania.

1        THE COURT:  Okay.

2        MS. BIANCAVILLA:  And I'm really unable to travel.

3        THE COURT:  That's fine.  No, we -- these hearings, I

4   regularly have people appear by telephone, and I'm certainly --

5   it's satisfactory to have you do that.  So you don't have to

6   physically be here.  The only time you'd have to be here is if

7   it were actually a trial where witnesses testify.  I don't do

8   those by telephone.  But if it ever got to that, we'll talk

9   about it, okay?

10        MS. BIANCAVILLA:  I appreciate that.  All right, thank

11   you so much.  That makes me feel better.

12        THE COURT:  All right, so --

13        MS. BIANCAVILLA:  And you know, it's not feeling boxed

14   into a place where --

15        THE COURT:  Okay.

16        MS. BIANCAVILLA:  -- I don't feel that justice is

17   served.

18        THE COURT:  Okay, so as I say, you're welcome to stay

19   on the phone, but you're also excused if you want to get off.

20   Okay?

21        MS. BIANCAVILLA:  Yeah, I thank you.  I think I might

22   hang out for a little while, since it's already paid for --

23        THE COURT:  All right.

24        MS. BIANCAVILLA:  -- for forty-five minutes, and hear

25   how it goes as an icebreaker for future reference.

1          THE COURT:  Okay.  Thank you, Ms. Biancavilla.  All

2  right.

3          MS. BIANCAVILLA:  Thank you.

4          THE COURT:  All right, Mr. Wishnew, go ahead.

5          MR. WISHNEW:  Thank you, Your Honor.  Getting back to

6  the agenda, item 2 on page 6, the sixty-first omnibus

7  objection.  As noted, there are two objections or two responses

8  to the omnibus objection, one filed by Mr. Larkins, one filed

9  by Mr. Tobias.

10          I will address first the response of Mr. Tobias.

11          THE COURT:  Okay.

12          MR. WISHNEW:  Your Honor, this is simply -- this is a

13  claim that was timely filed, however it was simply a one-page

14  claim for a million dollars that purportedly relates to a

15  320,000-dollar note.  It notes -- the claim says that there's a

16  complaint yet to be filed.  Well, October 2013, seventeen

17  months after the petition date, over a year after the claim was

18  actually filed, Mr. Tobias commences litigation in a venue

19  other than this bankruptcy court, naming numerous entities,

20  including GMAC Mortgage, and makes overly broad and general

21  allegations that are not specific to any debtor specific

22  entity.

23          In his response to our objection he says well, the

24  claim shouldn't be expunged because the complaint hasn't been

25  resolved yet.  Well, Your Honor, there's a couple of fatal

1  flaws here.

2          He never sought stay relief to commence the action.

3  He never served GMAC Mortgage with the action.  GMAC Mortgage

4  has never appeared.  There are no substantial -- there are no

5  specific facts to evidence any wrongdoing or liability of a

6  specific debtor entity.  And in sum, the claim itself should

7  not be entitled to any sort of validity, because he hasn't even

8  made any allegations of fact to establish a valid claim.

9          So for all of those reasons, Your Honor, we would ask

10  that this claim be expunged and disallowed.

11          I believe Mr. Tobias is on the phone today, so --

12          THE COURT:  Yes.  Let me ask you a few questions.

13  Since no complaint was attached or filed as of the time the

14  claim was filed, I want to be sure I understand, is your

15  argument -- because as is usual and is required, I gather, a

16  request for additional information was sent to --

17          MR. WISHNEW:  Correct, Your Honor.

18          THE COURT:  -- Mr. Tobias?

19          MR. WISHNEW:  Yes.

20          THE COURT:  And his original response was, haven't yet

21  filed a complaint but I will.  Okay.  And then ultimately, in

22  response to the objection, he attached a copy of his complaint

23  to his response?

24          MR. WISHNEW:  Correct, Your Honor.

25          THE COURT:  Okay.

1          MR. TOBIAS:  Your Honor, this is Mr. Tobias.

2          THE COURT:  Mr. Tobias, I'll give you a chance after

3    I --

4          MR. TOBIAS:  Oh, okay.

5          THE COURT:  -- okay?  Don't worry.  I'll let you

6    speak.

7          So it would seem to me that there could be an issue

8    about whether he's attempted to amend his -- untimely amendment

9    to a claim and have it relate back.  That's not really

10   addressed in your papers.

11         But the issue of -- I mean, you seem -- your papers

12   focus on he filed a complaint in violation of the automatic

13   stay.  That may have been.  But he never -- you also say he's

14   never served GMAC-M.  But a complaint filed or not, attached to

15   a -- submitted to the Trust in support of a claim, I'd have to

16   evaluate whether what's asserted in that complaint was

17   sufficient to state a claim against the debtor.  Do you agree

18   or not?

19         MR. WISHNEW:  I agree, Your Honor.

20         THE COURT:  Okay.  And in prior ResCap objections to

21   claims, I think I've written that I basically apply Rule 8

22   unless it's a fraud claim, which is 9(b).  So the complaint

23   that he finally gave you -- let's put aside the late claim

24   issue -- the complaint that he finally gave you, I would have

25   to evaluate under the normal pleading standards, whether it

1    stated a claim against any of the debtors.  Do you agree?

2         MR. WISHNEW:  Yes, Your Honor.

3         THE COURT:  Okay.  Because it seemed to me, in that

4    sense, whether he filed it or filed it in violation of the

5    automatic stay is kind of a red herring issue in terms of what

6    I have to decide.  It wouldn't matter whether he filed a

7    complaint or not.  What I would have to decide is, this piece

8    of paper that he gave you that was denominated a complaint that

9    ultimately was filed, although not served --

10        MR. WISHNEW:  Um-hum.

11        THE COURT:  -- on GMAC, whether that was sufficient to

12   state a claim.

13        MR. WISHNEW:  I would agree, Your Honor.  And I

14   think -- so our objection really almost is twofold, in that --

15   not only is the point that the claim is ins -- or the claim

16   together with the complaint is insufficiently pled to state a

17   valid basis for liability.  But on top of that, you have the

18   issue of the complaint having any validity at all, because

19   it's -- it post-dates the petition date.

20        THE COURT:  Okay.  Well, whether it post-dated the

21   petition date or not, when I entered the procedures order that

22   required that the trust request additional support for claims,

23   and people provide it, that's after the petition date; that

24   doesn't matter.  I mean, it's -- he has to be -- the claim has

25   to be a pre-petition in the sense that what he's complaining

1   about has to have been conduct that occurred before the

2   petition date.

3          MR. WISHNEW:  Right.

4          THE COURT:  And he does, right?

5          MR. WISHNEW:  I'm not certain of that.

6          THE COURT:  Okay.

7          MR. WISHNEW:  It's not entirely clear for me -- I

8   think this goes back to the insufficient pleadings on the

9   facts -- whether there's actually any action pre-dating May

10  14th, 2012, that GMAC Mortgage is specifically responsible for.

11         THE COURT:  Okay.

12         MR. WISHNEW:  So that's the issues that -- multitude

13  of issues that we think are deficient here and warrant

14  expungement of the claim.

15         THE COURT:  Okay.  Let me see whether I have other

16  questions for you.  So as -- the case is going forward against

17  some nondebtor defendants in the District Court of New Jersey,

18  correct?

19         MR. WISHNEW:  Correct, Your Honor.

20         THE COURT:  And from looking at the docket, I see that

21  the action was discontinued or terminated against President

22  Obama and I think the United States of America as well.  It

23  looks like because it wasn't served within the time provided by

24  Rule 4(m).  But the action is going forward against other

25  nondebtor defendants.

RESIDENTIAL CAPITAL, LLC, ET AL.                    17

1          Mr. Tobias has filed a motion to amend the complaint.

2     The defendants moved to dismiss the complaint.  The district

3     judge has said I won't consider the motions to dismiss until I

4     decide the issue of whether to allow an amended complaint.  Is

5     that a fair statement?

6          MR. WISHNEW:  I believe so, Your Honor, yes.

7          THE COURT:  But whether or not the district court

8     allows an amended complaint, that didn't stop Mr. Tobias from

9     being more specific in what he filed in this court as the basis

10    for his claim.  You agree with that too, I take it?

11         MR. WISHNEW:  Yes.

12         THE COURT:  Okay.  All right, let me ask Mr. Tobias

13    some -- Mr. Tobias, go ahead.  You want to be heard?

14         MR. TOBIAS:  Yes, good morning, Your Honor.  You know,

15    basically if you have any questions, I'll be more than happy to

16    provide any additional information.  Essentially what I

17    heardaddressing adverse counsel, is basically correctother

18    than -- and I did serve GMAC.  They did actually -- in

19    conjunction with Ocwen, which was another one of the co-

20    defendants, they did actually answer the complaint.

21         THE COURT:  Well, you didn't serve GMAC.  Ocwen

22    answered and purported to appear on behalf of GMAC --

23         MR. TOBIAS:  Okay, I may have --

24         THE COURT:  -- in 2013, which they shouldn't have

25    done.

RESIDENTIAL CAPITAL, LLC, ET AL.                    18

1           MR. TOBIAS:  Yeah, and actually, GMAC, I believe, is

2    now represented.  And we did have discussions during a status

3    conference regarding the automatic stay in terms of now the

4    judge is reviewing my motion to amend the complaint based on

5    the previous objection.

6           THE COURT:  Okay.  Well, my real -- what I really want

7    to hear from you about, so as I understand it, you have three

8    properties on the Jersey shore.  They were damaged by Hurricane

9    Sandy.

10          MR. TOBIAS:  Yes.

11          THE COURT:  And it's the result of the damage from

12   Hurricane Sandy, that's the genesis of your claims that you're

13   asserting in the complaint in the district court or your proof

14   of claim here.  Am I right?

15          MR. TOBIAS:  That would be related.  But in addition,

16   because they do kind of reflect against properties that were

17   mortgaged, and of course, there are questions as to consumer

18   fraud and these would -- this would be conduct that pre-dates

19   the --

20          THE COURT:  Well, you don't allege --

21          MR. TOBIAS:  -- date as --

22          THE COURT:  -- any specific conduct by --

23          MR. TOBIAS:  Well, I understand --

24          THE COURT:  -- GMAC -- stop.  Mr. Tobias?

25          MR. TOBIAS:  Yes.

1      THE COURT:  Okay.  Let me finish what I'm asking --

2      MR. TOBIAS:  I'm sorry.

3      THE COURT:  -- and then I'll let you answer.  It's one

4  of the -- I let people appear by telephone, but you can't

5  interrupt me when I'm speaking.  Okay?

6      MR. TOBIAS:  Yes.  I'm sorry, sir.

7      THE COURT:  All right.  So, the problem with the

8  complaint that you attached to your response is there are no

9  specifics whatsoever about any alleged misconduct by GMAC-M.

10  That just doesn't cut it.  I mean, you -- so tell me what it is

11  that you believe that GMAC Mortgage did that you think gives

12  rise to a claim against it?

13      MR. TOBIAS:  Basically, with regards to my claim for

14  federal funds from Hurricane Sandy, flood insurer, that the

15  price that I paid for the properties was artificially inflated

16  by GMAC such that I'm not able to receive enough proceeds from

17  the flood insurer to adequately recoup my investment.

18      THE COURT:  Did you buy the property from GMAC?

19      MR. TOBIAS:  I did not.  However, they did provide

20  appraisal --

21      THE COURT:  So how can -- how can they --

22      MR. TOBIAS:  -- services.

23      THE COURT:  -- have inflated the price, if you didn't

24  buy it from them?

25      MR. TOBIAS:  Well, it is a difficult claim.  I do

1  understand that.  Basically, it's one of those hapless

2  homeowner claims that the entire market at the time was

3  manipulated.  I mean, it's hard to pin down specific facts.

4  But when one looks at the price that I paid and the price that

5  everyone in my situation paid, it seems that there should be

6  some recourse for those market manipulations.

7           THE COURT:  Who manipulated the market, Mr. Tobias?

8           MR. TOBIAS:  I believe GMAC and Ditech amongst

9  others -- other mortgage companies at the time, that would be

10 unrelated to my particular claim.

11          THE COURT:  How did they manipulate the market?

12          MR. TOBIAS:  Well, that's one of those things that I'm

13 not sure.  It's more one of those public knowledge of providing

14 excess loans that drove, you know, the entire market up.

15          THE COURT:  Did you apply for a loan?

16          MR. TOBIAS:  I did.

17          THE COURT:  And did you decide how much of a loan you

18 were going to apply for?

19          MR. TOBIAS:  I did decide that amount based on the

20 price of the property.  Of course my --

21          THE COURT:  Okay.  GMAC didn't set the price of the

22 property, right?

23          MR. TOBIAS:  They did not set the price of the

24 property, but because of their effects on the market in terms

25 of fallacious advertising --

RESIDENTIAL CAPITAL, LLC, ET AL.                    21

1          THE COURT:  So your complaint is that it was too easy

2    to get a lot of -- to borrow a lot of money, and therefore that

3    drove the price of the property up?

4          MR. TOBIAS:  That would be true.  And because I'm in a

5    position that my loans are going to be completely paid off as

6    opposed to the -- the other homeowners who were more deeply

7    defrauded in terms of having had their houses in foreclosure,

8    that while I was not damaged as much as they, I was damaged to

9    such a degree.  And I'm making a claim for that differential.

10         THE COURT:  Okay.  Anything else you want to add?

11         MR. TOBIAS:  Well, other than the -- it's similar to

12   amending the complaint in terms of my claims, that the

13   magistrate judge is additionally reviewing --

14         THE COURT:  The magistrate judge has got nothing to do

15   with what happens in my court.  Only I do.  And you had to

16   provide an appropriate basis for your claim.  And the issue is

17   whether what you've given me does that or not.  And I'll have

18   to decide that.  What the magistrate judge does with your case

19   in the District Court of New Jersey is completely up to him.

20   It doesn't affect what I do at all.

21         MR. TOBIAS:  Okay.

22         THE COURT:  Anything else you want to add?

23         MR. TOBIAS:  No, Your Honor.

24         THE COURT:  Okay.  All right, I'm going to take it

25   under submission, Mr. Wishnew.

RESIDENTIAL CAPITAL, LLC, ET AL.                    22

1          MR. WISHNEW:  Thank you, Your Honor.

2          THE COURT:  Thank you very much, Mr. Tobias.

3          MR. TOBIAS:  Okay, thank you.  Should I remain on the

4    line or --

5          THE COURT:  No, you don't have to.  You can or not,

6    it's up to you.

7          MR. TOBIAS:  Okay, thank you very much, Your Honor.

8          THE COURT:  Okay.  Thank you.

9          Mr. Wishnew?

10         MR. WISHNEW:  Thank you, Your Honor.  The next

11   response was received by Mr. Neil Larkins.  Your Honor, this is

12   an instance where the --

13         THE COURT:  Let me just -- Mr. Larkins, you're on the

14   phone?

15         MR. LARKINS:  Yes, I am.

16         THE COURT:  Thank you.  Go ahead, Mr. Wishnew.

17         MR. WISHNEW:  Thank you, Your Honor.  This is an

18   instance where the debtors' connection to the loan was all of

19   three months in 2006.  The debtors briefly held the loan in

20   connection with securitizing it.  And what is notably absent

21   from Mr. Larkins' pleadings is any sort of specific fact or

22   basis for liability against a debtor entity.  Notwithstanding

23   the fact that he has quantified his claim, what is lacking is

24   any evidence of how RFC or some other debtor entity is somehow

25   responsible for those damages.

1     All we did here was simply acquire the loan and put it

2 into a securitization trust, which was overseen by Deutsche

3 Bank.  If there are issues in terms of chain of title, clouded

4 title, ultra vires, those do not -- those are not tied in any

5 way by Mr. Larkins to a debtor entity.

6     We have done our best -- notwithstanding the fact that

7 we believe all of the questions raised by Mr. Larkins have no

8 relevance to the debtors, we've done our best in the reply to

9 address those questions.  In two separate instances in late

10 April, we provided -- we had two separate document productions

11 to Mr. Larkins, consistent with the form of omnibus objection.

12 And those documents are consistent with what is attached to

13 both our pleadings and Mr. Larkins' pleadings.

14     So in sum, Your Honor, the reason for the objection,

15 the reason we believe the claim should be disallowed, is simply

16 that RFC simply securitized this loan.  It did not have any

17 connection with the origination of the loan.  It would have no

18 power to rescind the loan, as Mr. Larkins seems to want.  And

19 if there's any present action that is proceeding against Mr.

20 Larkins, and we don't know if there is or is not, we have no

21 connection to this loan.  We haven't had a connection to this

22 loan since 2007.

23     So at this point, if he does have issues, they're not

24 against a debtor entity.  They may be against another nondebtor

25 corporate entity.  And for these reasons, there should not be a

1    claim.

2           THE COURT:  Okay.  Mr. Larkins?  First, Mr. Larkins,

3    are you a lawyer?

4           MR. LARKINS:  No, I'm not.

5           THE COURT:  Okay, go ahead.

6           MR. LARKINS:  Am I allowed to talk now, or --

7           THE COURT:  Yes, absolutely.

8           MR. LARKINS:  Oh, thank you.  This is the first time

9    I've ever been through anything like this, so I'm not real

10   familiar with the court rules or anything.

11          I just received a packet from -- regarding my claim

12   from the trust.  And I noticed that there were some papers

13   missing out of it.  This is the stuff I just received two days

14   ago.  And I noticed that there was -- on my supplemental PSA,

15   the cover page was there, the front page, but the rest of the

16   supplemental PSA is missing out of my packet here.  So I just

17   wanted to put that on record.

18          And then, the reason why I believe that RFC is still

19   liable is because they never transferred it into the trust.

20   And so I saw their objection.  And they said that they bought

21   it from National City Bank of Indiana back on 7/24.  But

22   National City Bank of Indiana went out of business prior to

23   that.  And the other issue is that on their -- on their

24   objection they said that they sold it directly to the Deutsche

25   Bank.  And then on their -- on their answer, on their reply to

1  support their claim, they changed that story.  Now all of a

2  sudden, they sold it to Residential Credit.

3       So -- and this is like the first time I've seen this

4  where they actually said that they sold it to Residential

5  Credit.  And on their objection -- omnibus sixty-first

6  objection, they said they sold it to Deutsche directly.  So

7  it's kind of changed -- their objection's kind of changed a

8  little bit here, and this is the first I've heard of this.

9       THE COURT:  May I ask you this?  I have the note -- a

10  copy of the note in front of me.  And the copy of the note that

11  I have in front of me shows three endorsements.

12       MR. LARKINS:  Right.

13       THE COURT:  One from National City Mortgage Co. to --

14  well, I guess it's actually from National City Mortgage to

15  National City Mortgage Co.  And the second endorsement is from

16  National City Mortgage Co. to Residential Funding Company, LLC.

17  And the third endorsement is from Residential Funding LLC to

18  Deutsche Bank Trust Company Americas as Trustee.  Are you

19  familiar with that document?

20       MR. LARKINS:  Yeah, I have it right in front of me.

21  And so that's the discrepancy between what they're claiming now

22  that they sold it to Funding Credit.  They're missing

23  completely on this.  And the pooling and service agreement --

24  National Credit -- I mean, Funding Credit is the depositor.

25  And the supplemental -- the PSA says that the depositor is the

1    one that sells it to the trust.

2            And I also noticed that on the note that Residential

3    Funding sold it to Deutsche Bank Americas as Trustee, but for

4    what trust?  Because they're a trustee for a lot of trusts.

5            THE COURT:  Okay.  So let me -- you said that one of

6    the prior assignees went out of business.  Which one?

7            MR. LARKINS:  National City Bank of Indiana.

8            THE COURT:  And when did it go out of business?

9            MR. LARKINS:  It went out of business on 7/22 of '06.

10           THE COURT:  And was it taken over -- do you know

11   whether it was taken over by the FDIC or what happened?

12           MR. LARKINS:  Well, what I -- I got that information

13   from the FDIC.

14           THE COURT:  Okay.

15           MR. LARKINS:  So I'm not sure what happened with it,

16   just that they were out of business as of that date.  That was

17   off the FDIC website.

18           THE COURT:  Okay.

19           MR. LARKINS:  And my main concern is that on the

20   sixty-first omnibus objection, they're making certain claims as

21   facts, and then on the ResCap Borrower Claims Trust reply in

22   support of ITS (sic), they're saying something different again.

23   So I don't know which is correct.

24           THE COURT:  So let me ask -- Mr. --

25           MR. LARKINS:  Sure.

1          THE COURT:  So it's -- Deutsche Bank Trust Company

2    Americas is trustee for one of the RALI trusts, it appears --

3          MR. LARKINS:  Yeah, the 2006 -- right.

4          THE COURT:  -- yeah, it appears as of record today to

5    be the owner of the note and mortgage.  Whether it is or not --

6    in other words, if you believe -- and RFC -- no debtor entity

7    claims any interest in the mortgage, only Deutsche Bank as

8    trustee for this RALI trust.

9          If you have a quiet title action or a declaratory

10   relief claim against -- so you claim to have an ownership

11   interest in it, and Deutsche Bank as trustee does.  And so if

12   there's a dispute between you, it's with Deutsche Bank Trust

13   Company of Americas.  And I don't see -- what I'm wondering is,

14   what's the basis for suing -- for filing a claim against

15   Residential Funding, which doesn't claim an interest in it?

16         So if you have -- I guess basically to simplify it, if

17   you've got a quiet title claim or you have -- I understand no

18   one's trying to foreclose on the property right now.  Am I

19   right on that?

20         MR. LARKINS:  Not right now, no.

21         THE COURT:  Okay.  So but if you think that title of

22   the property is clouded by this assertion that Deutsche Bank

23   Trust Company Americas as Trustee is the holder of the note and

24   mortgage, sue them.  But what's the basis for your suing -- I

25   mean, I didn't -- I looked quickly, and I understand you're not

RESIDENTIAL CAPITAL, LLC, ET AL.                              28

1    a lawyer.  Because the property's in Oregon, right?

2            MR. LARKINS:  Correct.

3            THE COURT:  Okay.  Do you know of any law that would

4    require that every party in the chain of title going back to

5    when you acquired it, be made a party to a quiet title action?

6            MR. LARKINS:  Yeah, the Supreme Court here in Oregon

7    says that they're not required to record in public records.

8    But if they want to foreclose, they would have to record.

9            THE COURT:  Sure.  So if Deutsche Bank wants to

10   foreclose, they have to record.  And I understand this whole

11   thing about MERS, because they're involved in this chain

12   arguably.  But that's not one of the debtors.  So if -- I

13   understand no one's trying to foreclose now.  If they did,

14   they'd have to have recorded it.

15           But let me assume that you believe that there's a

16   cloud on your title, so you'd have to assert your claim against

17   Deutsche Bank Trust Company Americas as Trustee.  But that

18   doesn't implicate RFC.  So that's what -- I think the basic

19   point that Mr. Wishnew has raised is, any issues about chain of

20   title, they're not tied to the debtor entity.

21           If you sue Deutsche Bank Trust Company Americas in

22   state or federal court in Oregon, and -- or elsewhere, if you

23   can -- and you're able to sort of invalidate their ownership or

24   interest, well, good luck to you.

25           MR. LARKINS:  Yeah.  If I could just get one point --

1    I just want to get one point across, and maybe --

2              THE COURT:  Sure.

3              MR. LARKINS:  -- get some feedback from you.  In their

4    assumption agreement, they put as one of their exhibits, on

5    section 2-01, it's actually -- it's on page 152 of 277 --

6    Article 2, section (d), subsection (iii) says on that whole

7    section there, that if Residential Funding did not sell the

8    loan into the trust or fulfill their part as far as their PS --

9    as their agreement goes, that it has to be recorded within

10   thirty days.  And if they don't do that, they're in default to

11   Deutsche.  And --

12             THE COURT:  Well, that's between Deutsche Bank and

13   RFC.  I mean, I understand your point there.

14             MR. LARKINS:  Yeah.

15             THE COURT:  I don't know whether it's a -- whether

16   that argument could be supported or not.  But that would be

17   between Deutsche Bank Trust Company Americas and RFC.

18             Your dispute, if you will, appears to be that you

19   don't believe that -- you believe that there's this cloud on

20   title because Deutsche Bank Trust Company Americas purports to

21   have an interest in your property, and you say it doesn't.

22   And --

23             MR. LARKINS:  Right.

24             THE COURT:  -- if you've got a dispute with Deutsche

25   Bank Trust Company Americas, resolve it with them.  I don't get

RESIDENTIAL CAPITAL, LLC, ET AL.                30

1   to -- I mean, as a bankruptcy judge, with the bankruptcy of

2   Residential Capital and its affiliates, including Residential

3   Funding, I don't -- that doesn't give me the power to deal with

4   your disputes with Deutsche Bank.

5           MR. LARKINS:  Right.

6           THE COURT:  The issue is, do you have a valid claim

7   against RFC.  That's what I'm trying to focus on.  I wanted to

8   give you a chance to explain.

9           Let me ask Mr. Wishnew a couple of questions.  I'll

10  let you speak again in a minute, Mr. Larkins, okay?

11          MR. LARKINS:  All right, thank you.

12          THE COURT:  Mr. Wishnew, looking at the promissory

13  note, the lender is identified as National City Bank of

14  Indiana.  Payments are to be made to National City Mortgage Co.

15  How is it that National City Mortgage -- I don't see any

16  endorsement from National City Bank of Indiana, to anybody

17  else.  Is that -- are the endorsements shown on the note valid?

18  I mean it doesn't --

19          MR. WISHNEW:  I believe, Your Honor, the -- so the

20  endorsement at the end of the note says, "Pay to the order of

21  National City Mortgage Co."

22          THE COURT:  So the question is, who endorsed it to

23  National City Mortgage Co.?

24          MR. WISHNEW:  My understanding would be National City

25  Bank of Indiana.

1          THE COURT:  Where does it show that?

2          MR. WISHNEW:  Well, there's an assignment -- not

3    necessarily the note, but there's the assignment of the deed of

4    trust from National City Bank of Indiana to National City

5    Mortgage Co.

6          THE COURT:  Well, isn't the law quite clear that an

7    assignment of the mortgage, unless it's expressly provided that

8    the note is transferred with it, doesn't transfer the note?

9          MR. WISHNEW:  Correct, Your Honor.

10         THE COURT:  Is there an assignment of the note from

11   National City Bank of Indiana to National City Mortgage?

12         MR. WISHNEW:  I would have to go back and check on

13   that, Your Honor.

14         THE COURT:  When National -- so do you have the note

15   in front of you?

16         MR. WISHNEW:  I do, Your Honor.

17         THE COURT:  The endorsement to Residential Funding,

18   LLC --

19         MR. WISHNEW:  Yes.

20         THE COURT:  -- it says, "Without recourse, National

21   City Mortgage Co.," and then the rest of it is illegible.  What

22   does it say?

23         MR. WISHNEW:  I believe it says, "a subsidiary of

24   National City Bank of Indiana."  Which is consistent with the

25   prior endorsement, which says, "Pay to the order of National

1    City Mortgage Co., a subsidiary of National City Bank of

2    Indiana."

3              THE COURT:  Signed by -- endorsed by whom?  I can't

4    read it.

5              MR. WISHNEW:  Endorsed by National City Bank of

6    Indiana.

7              THE COURT:  Is it?  I can't read it.

8              MR. WISHNEW:  It is, Your Honor.  They cross out

9    "National City Mortgage, a division of," and then beneath that

10   is a slightly, I'll admit, barely legible indication of

11   National City Bank of Indiana.

12             THE COURT:  Do you have a better copy?  I can't read

13   it.  That's the problem.

14             MR. WISHNEW:  I will work to get you one, Your Honor.

15             THE COURT:  Okay.  I'm not sure, at the end of the

16   day, whether that's going to be determinative here, because

17   this still comes down to whether Deutsche Bank has an interest.

18             Obviously, Residential Funding could only endorse and

19   assign that which it owned.  If the endorsements that purported

20   to give it to Residential Funding are invalid, well --

21             MR. WISHNEW:  Then it's with the predecessor, which is

22   a nondebtor entity.

23             THE COURT:  So my problem is, I can't read that first

24   endorsement.  It may well be -- and I'm not prepared -- it

25   looks like it could be National City -- I see National -- I

1    don't know what follows -- it may be that Indiana's at the end.

2    Okay?  But I can't tell.

3              MR. WISHNEW:  Understood.

4              THE COURT:  None of the endorsements are dated.  Mr.

5    Larkins --

6              MR. LARKINS:  Yes?

7              THE COURT:  Well, I'm mentioning you because Mr.

8    Larkins said that on July 22nd, 2006, National City Bank of

9    Indiana went out of business.  And do you have any information

10   about -- you're at least -- Mr. Wishnew, you're representing

11   for now that National City Bank of Indiana endorsed the note

12   first to National City Mortgage, and National City Mortgage

13   wound up endorsing it to Res Funding --

14             MR. WISHNEW:  That's correct.

15             THE COURT:  -- RFC.

16             MR. WISHNEW:  Yes, Your Honor.

17             THE COURT:  Do you have any information about when?

18   It wouldn't be the first time -- I've got to tell you, it

19   wouldn't be the first time that a defunct institution purported

20   to transfer its portfolio.  I don't know.  I've looked -- not

21   in this, but in another matter, I had to look at the documents

22   by which the FDIC took over an institution and what happened

23   with its portfolio and all that.

24             I have no reason, certainly from looking at the face

25   of the note, there's no basis for me to say that National City

1    Bank of Indiana didn't endorse the note while it still existed,

2    et cetera.  And Mr. Larkins has not presented me with any

3    evidence to the contrary.

4             MR. LARKINS:  Your Honor?

5             THE COURT:  Go ahead, Mr. Larkins.

6             MR. LARKINS:  Yes.  On the three assignments that I

7    have on record here --

8             THE COURT:  Yes.

9             MR. LARKINS:  -- those assignments they're back-dated.

10            THE COURT:  They're not dated, Mr. Larkins.

11            MR. LARKINS:  No, on the assign -- not the note.  I'm

12   talking about the recorded assignments here in the county.

13            THE COURT:  Yes.

14            MR. LARKINS:  Where National City Bank of Indiana sold

15   it to National City Mortgage, but those are recorded two months

16   after the closing date of the trust of the QS2006-14 trust.

17   And they were recorded two months after.  So why would -- this

18   is my question is, why would there need to be these entities

19   like National City Mortgage and National City Bank of Indiana,

20   doing this after the trust closed.  It doesn't make any sense.

21            THE COURT:  Well, the recording date and -- look, I

22   don't know of a requirement that the recording take place

23   contemporaneously with the assignment.  Let me finish, and I'll

24   give you a chance.

25            MR. LARKINS:  Sure, sure.

RESIDENTIAL CAPITAL, LLC, ET AL.                    35

1           THE COURT:  Where that can become important is in the

2     rights of intervening claimants, but not as to the validity of

3     a recording.  So that, I mean, the issue from -- and I'm not

4     asking you to agree with me, but ordinarily the issue is when

5     was the -- if the assignment was done while the institution

6     existed, it's not invalidated because it wasn't recorded until

7     sometime thereafter.  So you haven't presented me in what I've

8     looked at, with any evidence that the assignment wasn't validly

9     done.  I'm not faulting you for doing this.  You're putting

10    forward what you've found, which is when an assignment got

11    recorded.

12          But go ahead if you want to address it.  Go ahead.

13          MR. LARKINS:  So on the third assignment, the mortgage

14    MERS, along with National City Bank of Indiana, handwritten in

15    on this recorded assignment, was dated 8/24/2011.  And it was

16    recorded a month later.  But it was notarized by a notary on

17    8/24/2011, that MERS, along with National City Bank of Indiana

18    assigned it to Deutsche directly.  So that's what bothers me.

19          THE COURT:  Okay.  That's of the mortgage, right?

20    That's not the note, that's the mortgage?

21          MR. LARKINS:  That's the mortgage, correct.

22          THE COURT:  Okay.  So the -- Mr. Wishnew, do you have

23    the document that Mr. Larkins is referring to?

24          MR. WISHNEW:  The assignment of deed of trust, Your

25    Honor?

1          THE COURT:  Yeah.

2          MR. WISHNEW:  Yes, I do.

3          THE COURT:  Could you just -- I'm sure I have it up

4    here, but it would be simpler if you just brought a copy up to

5    me for me to look at.

6          MR. WISHNEW:  Sure, Your Honor.

7          THE COURT:  Or tell me -- I have the binders in front

8    of me.  If you'll just tell me exactly where --

9          MR. WISHNEW:  Yeah, I'm locating it, Your Honor.

10         MR. LARKINS:  It's page 31.

11         THE COURT:  Hang on.  Because I've got these binders

12   with a lot more exhibits than what you provided, okay, Mr.

13   Larkins.

14         MR. LARKINS:  Okay.

15         THE COURT:  So just bear with me, okay?

16         MR. LARKINS:  Okay.

17         MR. WISHNEW:  It's Exhibit C to the Borrower Trust

18   reply.  And within Exhibit C it is -- it begins -- the

19   assignments begin on page 31.

20         THE COURT:  Okay, let me make sure I have it.

21         MR. WISHNEW:  Your Honor, I can approach --

22         THE COURT:  I have it.  I have it in front of me.  I

23   want to trace through.

24      (Pause)

25         THE COURT:  Okay, Mr. Larkins, I have those documents

RESIDENTIAL CAPITAL, LLC, ET AL.                    37

1    in front of me.  Do you want to tell me about it?

2              MR. LARKINS:  Yeah, okay, on the first and second

3    assignments --

4              THE COURT:  Yes.

5              MR. LARKINS:  -- you notice that the -- okay, so go to

6    the first assignment.  The notary has it dated 6/20/06.

7              THE COURT:  Yeah, and then it changes it to August --

8              MR. LARKINS:  And that's -- then the person that

9    signed it, the National City Bank of Indiana, it was dated

10   5/11/06.  So how could that be different there?  I don't

11   understand that --

12             THE COURT:  Okay.

13             MR. LARKINS:  -- and then recorded in December.  And

14   then on the second assignment, same thing, the dates of the

15   notary and the date that the person executed on are different

16   dates, also recorded one minute later on December 6th.

17             THE COURT:  Okay.

18             MR. LARKINS:  Okay?  And also, on the second

19   assignment, National City Mortgage assigned it to MERS, but not

20   as nominee.

21             And then on the -- on the third assignment, the

22   notary, just everything's crossed out and then 8/24/2011 --

23   effective date 8/24/2011 and recorded about a month later.  But

24   on the third assignment, it's got Mortgage Electronic

25   Registration System as nominee.  So that changed there.  And

1  then, "National City Bank of Indiana" handwritten in also,

2  which was different -- both those are different than the

3  previous assignment.

4          And the only reason I noticed that is because I used

5  to be a title searcher and that is not appropriate what they

6  did here.  To me -- it seems like to me things were doctored up

7  here.

8          And also, I want to -- on the second assignment --

9          THE COURT:  Yes.

10          MR. LARKINS:  -- right below, it says "Space above

11  this line for recorder's use," right below that it has a pool

12  number, 0001155736.  That's a different pool number than the

13  one that Deutsche Bank supposedly has the trust, the QF214

14  trust.  That's a 40419.

15          THE COURT:  I guess what --

16          MR. LARKINS:  That --

17          THE COURT:  -- let me as you this.

18          MR. LARKINS:  Yes.

19          THE COURT:  So --

20          MR. LARKINS:  Sure.

21          THE COURT:  -- I see the issues you're raising and

22  they may be -- I'm not saying they are -- but they may raise

23  valid issues as to whether Deutsche Bank Trust Companies of

24  America (sic) as trustee for specific RALI trusts --

25          MR. LARKINS:  Um-hum.

1          THE COURT:  -- actually has an interest in the

2     mortgage.  So to -- well, an issue about the note and the

3     mortgage.  And so if what you were doing was asserting a quiet

4     title or a declaratory judgment claim against Deutsche Bank,

5     you'd come forward with this as evidence and say they don't

6     have -- they never got the interest they say they had.  Without

7     deciding the issue, I would just note -- and I haven't looked

8     specifically at Oregon law, I want to make it clear -- but, for

9     example, the law in New York and in many other states is

10    that -- we refer to it as "the mortgage follows the note."  The

11    issue is who owns the note; that's the debt.

12          MR. LARKINS:  Yeah, and I can't see where -- who owns

13    it at this point except --

14          THE COURT:  Well, you look -- to determine who owns

15    it, that's when you look to the endorsements on the note.

16    Okay.  And the reason I say it with some certainty in my voice

17    about New York law is I've written three opinions on it, and

18    New York law is quite clear that the mortgage follows the note.

19          This issue comes up with MERS pretty often.  You may

20    be aware of that if you were a title searcher before.  So --

21    but I come back to the question, I mean, you haven't -- you

22    filed a claim in the bankruptcy, and the issue for me is do you

23    have a claim against RFC.  It's not whether you have a quiet

24    title action or a declaratory judgment action that you can

25    assert against Deutsche Bank Trust Company Americas as trustee

1  for a specific trust.  Argue, well, there's no change of title

2  that shows that the trust ever -- that this trust ever acquired

3  an interest in your mortgage.

4        The problem I'm having, Mr. Larkins, is to see why you

5  have a claim against RFC.  I'm following -- I see the documents

6  you're referring to.

7        Let me -- Mr. Wishnew, can you address -- Mr. Larkins

8  has raised real issues about the assignments -- the three

9  assignments of the deed of trust.

10        MR. WISHNEW:  Um-hum.

11        THE COURT:  And I don't see anything on the face of

12  these assignments that purport to assign the note.  But do you

13  have -- can you provide an explanation for when the assignments

14  were done?  Are these dates crossed out?  New dates five years

15  later put in?

16        MR. WISHNEW:  I specifically cannot, Your Honor.  The

17  only thing I know is that the assignment -- so if we're looking

18  at specifically the assignment from National City Bank of

19  Indiana -- I'm sorry -- National City Mortgage Co. to MERS,

20  right above the signature block for National City Mortgage Co.

21  it says "Assignment executed to be effective as of 7/24/2006."

22  That is, at least, my understanding of when RFC acquired its

23  interest.

24        I mean beyond what's on these -- beyond the dates

25  that's on these documents, I don't have additional information

RESIDENTIAL CAPITAL, LLC, ET AL.                    41

1  to supplement that.

2          THE COURT:  Okay.  Mr. Larkins, anything you want to

3  add?

4          MR. LARKINS:  Yes.  The only thing that I'm trying to

5  get clear here is that I know there's different entities here

6  that had something to do with this loan and RFC is part of

7  that.  So it's, like, the way I feel about this is somebody is

8  liable for this that was a clouded title and RFC was a

9  participant in this.  And so I can't see where RFC would be off

10  the hook.  They may be -- they still may own this loan --

11          THE COURT:  No, they --

12          MR. LARKINS:  -- as the document --

13          THE COURT:  -- they clearly don't own the loan.  They

14  clearly --

15          MR. LARKINS:  They don't?

16          THE COURT:  -- affirmatively state they don't own the

17  loan.  They -- there's an endorsement from RFC to Deutsche

18  Bank.  What Deutsche Bank got, I'm not going to -- is not for

19  me to decide.  Okay.

20          MR. LARKINS:  Yeah.  Yes.

21          THE COURT:  And so --

22          MR. LARKINS:  I feel that the -- you know, the -- I

23  mean as far as the pooling and service agreement and the

24  assumption and assignment that they were supposed to have sold

25  it to Residential Accredited (sic) and they -- and apparently

1   they didn't do that.  They bypassed them completely and sold it

2   to -- to Deutsche.  But then on their answer, on the reply,

3   they're saying something different from their complaint.

4              THE COURT:  Okay.

5              MR. LARKINS:  Because their complaint clearly says

6   that they sold it directly to Deutsche, and then on the reply

7   to my answer to their objection, they're stating something

8   totally different again.

9              THE COURT:  Who's servicing your loan?  Who do you

10  make your payments to?

11             MR. LARKINS:  Pardon me?

12             THE COURT:  Who's the loan servicer?

13             MR. LARKINS:  PNC Mortgage.

14             THE COURT:  And I take it, you're current on your

15  mortgage payments?

16             MR. LARKINS:  No, because I've tried to get PNC

17  Mortgage to tell me who owns the loan and they could not tell

18  me.

19             THE COURT:  So you stopped paying?

20             MR. LARKINS:  I stopped -- and it's been three years

21  and they have not done anything.  So I -- that's why -- I mean

22  I put this -- I figured the bankruptcy thing was a -- to put a

23  claim in was a long shot anyway but I'm trying to do --

24             THE COURT:  That I'll agree with.  That I'll agree

25  with.  I'm sorry; go ahead.

RESIDENTIAL CAPITAL, LLC, ET AL.                    43

1          MR. LARKINS:  Yes.  It's a long shot but I was trying

2     to discover -- get discovery through the process.

3          THE COURT:  Well, you did.

4          MR. LARKINS:  And I got a lot more -- and I have more

5     information now than I did before.

6          THE COURT:  You do.

7          MR. LARKINS:  So --

8          THE COURT:  But the question is did what you got --

9     the discovery that you got establish a claim against

10    Residential Funding?  It may give you ammunition --

11         MR. LARKINS:  Well --

12         THE COURT:  -- if PNC commences a foreclosure action,

13    you may have gotten ammunition to defend it.  That's not for me

14    to say.

15         MR. LARKINS:  Well, yes, I believe, I did but I'd need

16    a true copy -- a certified true copy of the note because I

17    can't tell who -- who signed for National City Bank of Indiana

18    who sold it in the first place.  I'm still at a loss to that

19    and I -- you know, I know that RFC did not follow the terms of

20    the PSA because they sold it directly to Deutsche which they're

21    not supposed to do.  So I don't -- see, I'm  just a layman.  I

22    don't understand all that.  But I do -- I can read and it's,

23    like -- and I probably don't have a right to even challenge the

24    trust.

25         THE COURT:  I don't know whether you do or not.

1    That's not for me to say.  Okay.

2            MR. LARKINS:  Yeah.  And that -- you know, the problem

3    is, I know that they didn't follow their own rules on this and

4    it's kind of -- upsets me because now I have title.  If I

5    wanted to pay this loan off which I could, who do I -- who

6    would I be paying to because now the records show a different

7    pool number than the pool that supposedly it's in.

8            THE COURT:  Well, I guess you want to make sure --

9            MR. LARKINS:  So at some --

10           THE COURT:  -- I guess you want to make sure you get a

11   lien release from whoever --

12           MR. LARKINS:  Exactly.

13           THE COURT:  -- purports to have title.

14           MR. LARKINS:  Yeah.  But whoever -- I mean as far as

15   the copies, I mean the records that are in the public records,

16   I don't know who it is and neither can -- PNC can't tell me

17   either.  So I just figured that RFC had something to do with

18   the chain of title.

19           THE COURT:  So --

20           MR. LARKINS:  All of these entities did and none of

21   them are innocent.

22           I can't say that, you know, Bank of Indiana, National

23   Mortgage Co. or RFC or whatever, I don't know who's responsible

24   for this mess up in the chain of title, but I believe that RFC

25   is a contributor to this mess-up --

1          THE COURT:  Okay.

2          MR. LARKINS:  -- because --

3          THE COURT:  All right.  Mr. Wishnew --

4          MR. LARKINS:  -- it's this --

5          THE COURT:  Mr. Wishnew, I want to see a clearer copy

6     of the note with the endorsements.

7          MR. WISHNEW:  Will do, Your Honor.

8          THE COURT:  I don't know whether you're going to find

9     a better one but --

10          MR. WISHNEW:  We'll do our best.

11          THE COURT:  Somebody must have the original note.

12          MR. WISHNEW:  We will go through our servicing records

13     and see what we can pull.

14          THE COURT:  Okay.  All right.  Mr. Larkins, I'm going

15     to take the matter under submission and in due course issue an

16     opinion.  Okay?

17          MR. LARKINS:  I appreciate it.  And excuse me for --

18     if I didn't act right or say anything right.

19          THE COURT:  You did.  No, you acted entirely

20     appropriate.  Okay.

21          MR. LARKINS:  Well, thank you.

22          THE COURT:  Okay.

23          MR. LARKINS:  I just -- it's just really concerning to

24     me that these entities all acted together and just messed up my

25     paperwork.  I mean, you know, no -- I mean there's no innocent

1    party here.  I don't care how we cut it but --

2           THE COURT:  Mr. Larkins, I'm not giving any legal

3    advice.  I just tell you when you stop paying your mortgage for

4    five years, somebody's going to catch up with you at some

5    point.  You may have a defense but --

6           MR. LARKINS:  Exactly.

7           THE COURT:  -- you -- but somebody else will decide

8    that, not me.

9           MR. LARKINS:  Correct.  I agree.

10          THE COURT:  Okay.  All right.  Thank you very much,

11   Mr. Larkins.

12          MR. LARKINS:  Thank you.

13          THE COURT:  All right.  Mr. Wishnew, anything else for

14   today?

15          MR. WISHNEW:  Yes.  Two things, Your Honor.

16          One, can I -- can the Borrower Claims Trust submit a

17   form of order on the sixty-first omnibus objection except as to

18   the two matters?

19          THE COURT:  Yes, you can.

20          MR. WISHNEW:  Okay.

21          THE COURT:  The sixty-first omnibus is sustained as to

22   their remaining claims.

23          MR. WISHNEW:  Excellent.  Thank you, Your Honor.

24          THE COURT:  Okay.

25          MR. WISHNEW:  Last matter on today's agenda is a --

1   under III, adversary proceedings, a status conference for the

2   Heyward --

3            THE COURT:  Yes.

4            MR. WISHNEW:  -- v. GMAC Mortgage adversary

5   proceeding.

6            Your Honor, this was adversary -- post-petition

7   adversary proceeding.  Consistent with the supplemental

8   procedures that this Court has previously approved, there was

9   an effort by GMAC Mortgage to confer with Mr. Heyward.

10           On three separate occasions, we sent letters to him

11   trying to have an initial conference.  Those letters were sent

12   by overnight mail on March 25th, April 1st and April 15th.

13   We've never received a response to him from that.  We also

14   submitted a progress report on April 28th highlighting what has

15   transpired since the commencement of this action.

16           At this point, and over the past four weeks,

17   nothing -- there really is nothing more, no further

18   developments.

19           Consistent with -- and while admittedly, we did not

20   send a copy to Mr. Heyward of the notice of a status conference

21   today, what we would like to do, given the absence of any

22   communication from him, is to confirm with the Court whether

23   they'd be comfortable for us to submit a motion to dismiss at

24   this point to try to bring this matter to a conclusion.

25           THE COURT:  Absolutely.  Go ahead a file a motion to

RESIDENTIAL CAPITAL, LLC, ET AL.                    48

1   dismiss.

2           MR. WISHNEW:  Okay.  We will do that, Your Honor.

3           THE COURT:  And properly serve it, and we'll deal with

4   it accordingly.

5           MR. WISHNEW:  Thank you.

6           THE COURT:  Okay.

7           MR. WISHNEW:  So that brings us to the end of today's

8   calendar and we thank the Court for its time.

9           THE COURT:  Thank you very much.

10       (Whereupon these proceedings were concluded at 11:06 AM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                                **I N D E X**

3

4                                RULINGS

5                                                        Page      Line

6    Sixty-first omnibus objection sustained as to 46        21

7    All claims but Larkins and Tobias

8    Motion to dismiss may be filed in Heyward      47        25

9    adversary proceeding

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                   C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10   _____

11   PENINA WOLICKI

12   AAERT Certified Electronic Transcriber CET**D-569

13

14

15   eScribers

     700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  May 30, 2014

19

20

21

22

23

24

25