Hearing Date: July 30, 2014 at 10:00 a.m. (Prevailing Eastern Time)
Response Deadline: July 3, 2014 at 4:00 p.m. (Prevailing Eastern Time)

| | |
|---|---|
| MORRISON & FOERSTER LLP | BRADLEY ARANT BOULT CUMMINGS LLP |
| 250 West 55th St. | 1615 L Street, NW, Suite 1350 |
| New York, New York 10019 | Washington, DC 20036 |
| Telephone: (212) 468-8000 | Telephone: (202) 393-7150 |
| Facsimile: (212) 468-7900 | Facsimile: (202) 347-1684 |
| Norman S. Rosenbaum | Steven A. Pozefsky |
| Jordan A. Wishnew | Eric A. Frechtel |
| Erica J. Richards | |
| | *Special Counsel for the ResCap Borrower* |
| *Counsel for the ResCap Borrower* | *Claims Trust* |
| *Claims Trust* | |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

-------------------------------------------------------------------

**NOTICE OF OBJECTION OF THE RESCAP BORROWER CLAIMS**
**<u>TRUST TO CLAIM NUMBER 392 FILED BY KEVIN J. MATTHEWS</u>**

   **PLEASE TAKE NOTICE** that the undersigned have filed the attached *Objection*

*of the ResCap Borrower Claims Trust to Claim No. 392 Filed by Kevin J. Matthews* (the

"<u>Objection</u>").

   **PLEASE TAKE FURTHER NOTICE** that a hearing on the Objection will take

place on **July 30, 2014 at 10:00 a.m. (Eastern Time)** before the Honorable Martin

Glenn, at the United States Bankruptcy Court for the Southern District of New York,

Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-

1408, Room 501 (the "<u>Bankruptcy Court</u>").

**PLEASE TAKE FURTHER NOTICE** that responses, if any, to the Objection must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to be received no later than **July 3, 2014 at 4:00 p.m. (Eastern Time)**, upon (a) Chambers of the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408; (b) counsel to the ResCap Borrower Claims Trust, Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019 (Attention: Norman S. Rosenbaum, Jordan A. Wishnew and Erica J. Richards); (c) Co-Counsel to the ResCap Borrower Claims Trust, Bradley Arant Boult Cummings LLP, 1615 L Street, NW, Suite 1350, Washington, DC 20036 (Attention: Steven A. Pozefsky and Eric A. Frechtel); (d) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention: Linda A. Riffkin and Brian S. Masumoto); and (e) The ResCap Liquidating Trust, Quest Turnaround Advisors, 800 Westchester Avenue, Suite S-520, Rye Brook, NY 10573 (Attention: Jeffrey Brodsky).

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written response to the relief requested in the Objection, the Bankruptcy Court may deem any opposition waived, treat the Objection as conceded, and enter an order granting the relief requested in the Objection without further notice or hearing.

*[Remainder of Page Intentionally Left Blank]*

Dated:  June 12, 2014
       New York, New York

/s/  Norman S. Rosenbaum

Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards
MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street, NW, Suite 1350
Washington, DC 20036
Telephone: (202) 393-7150
Facsimile: (202) 347-1684
Steven A. Pozefsky
Eric A. Frechtel

*Counsel for The ResCap Borrower Claims Trust*

| | |
|---|---|
| MORRISON & FOERSTER LLP | BRADLEY ARANT BOULT CUMMINGS LLP |
| 250 West 55th St. | 1615 L Street, NW, Suite 1350 |
| New York, New York 10019 | Washington, DC 20036 |
| Telephone: (212) 468-8000 | Telephone: (202) 393-7150 |
| Facsimile: (212) 468-7900 | Facsimile: (202) 347-1684 |
| Norman S. Rosenbaum | Steven A. Pozefsky |
| Jordan A. Wishnew | Eric A. Frechtel |
| Erica J. Richards | |

*Counsel for the ResCap Borrower*          *Special Counsel for the ResCap Borrower*
*Claims Trust*                                             *Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------- | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ------------------------------------------------------------------------- | ) | |

**OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST**
**<u>TO CLAIM NUMBER 392 FILED BY KEVIN J. MATTHEWS</u>**

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ........................................................................1

II.    JURISDICTION, VENUE AND STATUTORY PREDICATE ...................................3

III.   BACKGROUND .....................................................................................3

    A.     Chapter 11 Case Background ...............................................................3

          (i)     General Overview ........................................................................3

          (ii)    Claim Specific Background ..............................................................4

    B.     The Matthews Loan And Foreclosure Actions ...........................................5

    C.     The Matthews Adversary Proceeding ......................................................9

    D.     The Claim ....................................................................................10

IV.    RELIEF REQUESTED .............................................................................10

V.     OBJECTION ........................................................................................10

    A.     Legal Standard ..............................................................................11

    B.     The Claim Is Barred Under The Doctrine Of Res Judicata ...........................12

    C.     The Claim Fails To State A Basis For Liability Against The Debtors ................14

          (i)     To The Extent Matthews' Causes Of Action Arise Out Of
                  GMACM's Alleged Failures To Comply With Loss Mitigation
                  Requirements And To Modify His Loan, They Fail As A Matter Of
                  Law ........................................................................................14

          (ii)    To The Extent Matthews' Causes Of Action Arise Out Of His
                  Claims That The First Foreclosure Action Was Improper, These
                  Causes Of Action Fail As A Matter Of Law ............................................16

                a.     Matthews' Claims Arising Out Of The Affidavits
                        Submitted In The First Foreclosure Action Are Barred By
                        Witness Immunity .............................................................16

                b.     GMACM Was Entitled To File The Second Foreclosure
                        Action ..........................................................................18

                c.     Matthews Cannot Use This Action To Assert Claims That
                        He Was Required To Bring In The First Foreclosure Action
                        And In An Appeal From The First Foreclosure Action ...............19

          (iii)   Matthews' Claim For Violation Of The Maryland Consumer
                  Protection Act (Count II) Fails As A Matter Of Law ...............................22

                  a.     GMACM's Alleged Failure To Tell Matthews That He
                        Was Speaking With GMACM Did Not Result In Actual
                        Harm To Matthews And Is A Claim That Cannot Be
                        Brought Under The MCPA ....................................................24

# TABLE OF CONTENTS
(continued)

**Page**

|   |   |   |   |
|---|---|---|---|
| | b. | The Purportedly "Bogus Paperwork" Submitted In The First Foreclosure Action Did Not Result In Any Actual Harm To Matthews | 26 |
| (iv) | | Matthews' Maryland Consumer Debt Collection Act Cause Of Action (Count IV) Fails To State A Claim Upon Which Relief Can Be Granted | 29 |
| (v) | | Matthews' FDCPA Cause of Action (Count V) Fails As A Matter Of Law Because GMACM Is Not A "Debt Collector" Under The FDCPA | 33 |
| (vi) | | Matthews' Two Fraud Counts Fail To State A Claim Upon Which Relief Can Be Granted | 34 |
| | a. | Matthews' Claim For Fraud And Fraudulent Concealment (Count I) Fails On Grounds That Matthews Cannot Establish The Elements Of The Claim | 35 |
| | b. | Matthews' Claim For Violation Of The Maryland Fraud Protection Act (Count III) Also Cannot Be Sustained As A Matter Of Law | 36 |

| | | |
|---|---|---|
| VI. | SUMMARY | 37 |
| VII. | NOTICE | 37 |
| VIII. | CONCLUSION | 37 |

## **Exhibit List**

Exhibit 1        Proposed Order
Exhibit 2        Delehey Declaration

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Adams v. Peck,
    415 A.2d 292 (Md. 1980) ....................................................................... 17

Akinkoye v. Wells Fargo Home Mortg.,
    No. DKC-11-2336, 2011 WL 6180210 (D. Md. Dec. 12, 2011) ........................................... 15

Allen v. Bank of Am. Corp.,
    No. CCB-11-33, 2011 WL 3654451 (D. Md. Aug. 18, 2011) ......................................... 30, 33

Anderson v. Burson,
    35 A.3d 452 (Md. 2011) ....................................................................... 28

Annapolis Urban Renewal Auth. v. Interlink, Inc.,
    405 A.2d 313 (Md. Ct. Spec. App. 1979) ....................................................... 31

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ........................................................................... 12

Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,
    459 U.S. 519 (1983) ........................................................................... 12

Bates v. Cohn,
    9 A.3d 846 (Md. Ct. App. 2010) .......................................................... 16, 26, 35

Beach v. Wal-Mart Stores, Inc.,
    No. 8:11-cv-01437-AW, 2012 WL 395316 (D. Md. Feb. 6, 2012) ....................................... 33

Bland v. Hammond,
    935 A.2d 457 (Md. Ct. Spec. App. 2007) ...................................................... 20, 21

Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.,
    402 U.S. 313 (1971) ........................................................................... 12

Bourdelais v. J.P. Morgan Chase Bank, N.A.,
    No. 3:10-CV-670-HEH, 2011 WL 1306311 (E.D. Va. Apr. 1, 2011) .................................... 15

Burgos v. Hopkins,
    14 F.3d 787 (2d Cir. 1994) .................................................................... 12

Casey v. Litton Loan Servicing LP,
    No. RDB-11-0787, 2012 WL 502886 (D. Md. Feb. 14, 2012) ....................................... 29, 36

Citaramanis v. Hallowell,
    613 A.2d 964 (Md. 1992) ....................................................................... 24

iv

Collins v. Walden,
   613 F. Supp. 1306 (N.D. Ga. 1985), aff'd, 784 F.2d 402 (11th Cir. 1986)............................17

Corbett v. Beneficial Ohio, Inc.,
   847 F. Supp. 2d 1019 (S.D. Ohio 2012) ..................................................................................36

DeReggi Constr. Co. v. Mate,
   747 A.2d 743 (Md. Ct. Spec. App. 2000)..................................................................................24

Di Blasio v. Kolodner,
   197 A.2d 245 (Md. 1964) ...........................................................................................................17

Eller v. Bolton,
   115, 895 A.2d 382 (Md. Ct. Spec. App. 2006).........................................................................19

Empire Props., LLC v. Hardy,
   873 A.2d 1187 (Md. 2005) ..................................................................................................31, 32

Exxon Mobil Corp. v. Albright,
   71 A.3d 30 (Md. Ct. App. 2013), cert. denied, 134 S. Ct. 648 (2013) ....................................35

Fairbank's Capital Corp. v. Milligan,
   234 Fed. Appx. 21 (3d Cir. 2007)...............................................................................................18

Feinberg v. Bank of N.Y. (In re Feinberg),
   442 B.R. 215 (Bankr. S.D.N.Y. 2010) ......................................................................................11

Flores v. Deutsche Bank Nat'l Trust Co.,
   No. DKC-10-0217, 2010 WL 2719849 (D. Md. Jul. 07, 2010) ...............................................34

Gambocz v. Yelencsics,
   468 F.2d 837 (3d Cir. 1972) .......................................................................................................13

Gibbs v. SLM Corp.,
   336 F. Supp. 2d 1 (D. Mass. 2004), aff'd, No. 05-1057, 2005 U.S. App. LEXIS 29462
   (1st Cir. Aug. 23, 2005)..............................................................................................................34

Glazer v. Chase Home Fin. LLC,
   704 F.3d 453, 457 (6th Cir. 2013) .............................................................................................34

Green v. Ford Motor Credit Co.,
   828 A.2d 821 (Md. Ct. Spec. App. 2003)..................................................................................21

Green v. Green,
   67 A.2d 102 (Md. Ct. Spec. App. 1976).....................................................................................21

Hall v. Lovell Regency Homes Ltd. P'ship,
   708 A.2d 344 (Md. Ct. Spec. App. 1998)..................................................................................29

Hresko v. Hresko,
    574 A.2d 24 (Md. 1990) ......................................................................21

In re Oneida Ltd.,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v.
    Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010).........10

In re Rockefeller Ctr. Props.,
    272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr.
    Props. (In re Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed.
    Appx. 40 (2d Cir. 2002) .......................................................................11

Johnson v. Riverside Healthcare Sys., LP,
    534 F.3d 1116 (9th Cir. 2008) ...............................................................11

Jones v. Fisher Law Grp., PLLC,
    334 F. Supp. 2d 847 (D. Md. 2004)......................................................20, 22

Jones v. HSBC Bank U.S.A., N.A.,
    No. 11-1197, 2011 WL 3734984 (4th Cir. Aug. 21, 2011) ....................................19

Jones v. Rosenberg,
    940 A.2d 1109 (Md. Ct. Spec. App. 2008)...................................................20

Kerpelman v. Bricker,
    329 A.2d 423 (Md. Ct. Spec. App. 1974)....................................................17

Keys v. Chrysler Credit Corp.,
    494 A.2d 200 (Md. 1985) ....................................................................17

Khepera-Bey v. Santander Consumer USA, Inc.,
    No. WDQ-11-1269, 2012 WL 1965444 (D. Md. May 30, 2012) .........................................32

Klein v. Whitehead,
    389 A.2d 374 (Md. Ct. Spec. App. 1978)....................................................19

Lawlor v. Nat'l Screen Serv. Corp.,
    349 U.S. 322 (1955) ..........................................................................13

Lloyd v. General Motors Corp.,
    916 A.2d 257 (Md. 2007) ....................................................................24

Marceau v. Blackfeet Hous. Auth.,
    540 F.3d 916 (9th Cir. 2008) ...............................................................12

Mashburn v. Wells Fargo Bank, N.A.,
    No. C11–0179–JCC, 2011 WL 2940363 (W.D. Wash. Jul. 19, 2011) ..............................26

Montana v. United States,
    440 U.S. 147 (1979) ..........................................................................13

ny-1140216

Moore v. Pomory,
620 A.2d 323 (Md. 1993) ............................................................................. 18

Navarro v. Block,
250 F.3d 729 (9th Cir. 2001) ....................................................................... 11

Norman v. Borison,
17 A.3d 697 ................................................................................................... 17

Oxendine v. SLM Capital Corp.,
915 A.2d 1030 (Md. Ct. Spec. App. 2007) ................................................. 20

Parillon v. Fremont Inv. & Loan,
No. L-09-3352, 2010 WL 1328425 (D. Md. Mar. 25, 2010) ..................... 34

Philip Morris, Inc. v. Angeletti,
752 A.2d 200 (Md. 2000) ............................................................................. 27

Polek v. J.P. Morgan Chase Bank, N.A.,
36 A.3d 399 ................................................................................................... 25

Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.,
576 F. Supp. 107 (D. Del. 1983), aff'd, 740 F.2d 958 (3d Cir. 1984) ..................... 17

Sagner v. Glenangus Farms, Inc.,
198 A.2d 277 (Md. 1964) ............................................................................. 19

Schwartz v. Merchs. Mortg. Co.,
322 A.2d 544 (Md. 1974) ......................................................................... 20, 21

Shugart v. Ocwen Loan Servicing, LLC,
747 F. Supp. 2d 938 (S.D. Ohio 2010) ...................................................... 33

St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Secs. Litig.),
536 F.3d 1049 (9th Cir. 2008) ..................................................................... 12

Todd v. Weltman, Weinberg & Reis Co.,
434 F.3d 432 (6th Cir. 2006) ...................................................................... 17

Vignolo v. Miller,
120 F.3d 1075 (9th Cir. 1997) ..................................................................... 12

Warren v. Fox Family Worldwide, Inc.,
328 F.3d 1136 (9th Cir. 2003) ..................................................................... 12

Wellington Co., Inc. Profit Sharing Plan & Trust v. Shakiba,
952 A.2d 328 (Md. Ct. Spec. App. 2008) .................................................. 19

Wells Fargo Home Mortg., Inc. v. Neal,
922 A.2d 538 (Md. 2009) ............................................................................. 16

vii

Willis v. Countrywide Home Loans Servicing, L.P.,
    No. CCB-09-1455, 2009 WL 5206475 (D. Md. Dec. 23, 2009).................................24, 25, 36

STATUTES

MD CODE REAL PROP. § 7-406(a) ............................................................................................36

11 U.S.C. 502(b)(1) ..................................................................................................................11

11 U.S.C. § 502(a) ....................................................................................................................10

15 U.S.C. § 1692a(6)(F)(iii) .....................................................................................................33

MD. CODE ANN., REAL PROPERTY § 2-103 ..............................................................................28

MD CODE COMMERCIAL LAW § 13-301, et seq...........................................................................22

MD CODE COMMERCIAL LAW § 13-408 .....................................................................................23

MD CODE COMMERCIAL  LAW  § 14-202(8) .............................................................................30

OTHER AUTHORITIES

47 Am. Jur. Judgments §720 (2011) ........................................................................................21

12 CFR Part 1024, available at http://files.consumerfinance.gov/f/201301_cfpb_final-
    rule_servicing-respa.pdf (last visited May 25, 2014)...........................................................23

Fed. R. Civ. P. 12(b)(6) ............................................................................................................11

Fed. R. Civ. P. 41(a)(1)(B) .......................................................................................................13

Maryland Rule 2-535..................................................................................................................20

Maryland Rule 2-535(b) .............................................................................................................20

RESTATEMENT (SECOND) OF JUDGMENTS § 20(1)(b) (1982) .......................................................18

ny-1140216

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Chapter 11 plan confirmed in the above captioned bankruptcy cases (the "Chapter 11 Cases") [Docket No. 6065], as successor in interest to the above-captioned debtors (collectively, the "Debtors") with respect to Borrower Claims (defined below), hereby submits this objection (the "Objection") seeking to disallow and expunge claim number 392 (the "Claim") filed by Kevin J. Matthews ("Matthews"), pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[1]  The Borrower Trust seeks the entry of an order, substantially in the form annexed hereto as Exhibit 1, granting the requested relief.  In support of the Objection, the Borrower Trust relies upon and incorporates by reference the Declaration of Lauren Graham Delehey, Chief Litigation Counsel for the ResCap Liquidating Trust, annexed hereto as Exhibit 2 (the "Delehey Declaration").   In further support hereof, the Borrower Trust respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    The Claim, which alleges $3 million in claims against Debtor GMAC Mortgage, LLC ("GMACM"), should be disallowed and expunged pursuant to section 502(b) of the Bankruptcy Code on the grounds that the Claim (a) is barred under the doctrine of res judicata, and (b) fails to state a valid claim against any of the Debtors.[2]  As discussed in detail below, Matthews has filed complaints against Debtor GMACM raising the matters at issue in the

---

[1] A copy of the Claim is attached as Exhibit A to the Delehey Declaration (defined below).

[2] The Borrower Trust reserves all of its rights to object on any other basis to the Claim not set forth in this Objection, and to amend this Objection should any further bases come to light.

Claim in both the Circuit Court for Baltimore City, Maryland (the "Maryland Court") and this Court, and voluntarily dismissed each complaint only <u>after</u> GMACM filed a motion to dismiss it. Pursuant to Federal Rule of Civil Procedure 41(a)(1)(B), the second notice of dismissal operated as an adjudication on the merits due to his earlier dismissal of his claims in state court. Notwithstanding those two prior dismissals, Matthews now seeks to prosecute the same claims (for a third time) through the claims process being administered by this Court. The Claim, which is based on the same claims brought in the Second Foreclosure Action and the Adversary Proceeding (each defined below), is precluded under the doctrine of res judicata.

2.      Moreover, the claims asserted in the Counter-Complaint (defined below), upon which the Claim is based, are without merit and fail to state any claim against the Debtors as a matter of law, much less a claim of $3 million. *First*, Matthews cannot recover on his claims that GMACM improperly denied him a loan modification because those claims represent an attempt to bring a private right of action against GMACM, which is not available to borrowers under the applicable federal statutes. Further, such claims only give rise to an affirmative defense to a pending foreclosure, and cannot be asserted as an affirmative offensive claim. In addition, Maryland case law and procedural rules dictate that Matthews cannot use the Counter-Complaint to collaterally attack the dismissal of the First Foreclosure Action, which did not affect GMACM's right to bring the Second Foreclosure Action. *Second*, Matthews has not established (and cannot establish) that allegedly "bogus paperwork" filed in a prior foreclosure proceeding or GMACM's alleged failure to disclose to Matthews that it was the servicer of, and not the investor in, Matthews' mortgage loan gave rise to an actual injury or loss, which is required to sustain a claim under the Maryland Consumer Protection Act. *Third*, Matthews' claims under the Maryland Consumer Debt Collection Act, which requires a showing that

2

GMACM attempted or threatened to enforce a right to collect on a debt with knowledge that the

right did not exist, also fail because GMACM had the right to enforce the mortgage loan debt at

the time of the Second Foreclosure Action. *Fourth*, Matthews' claims under the Fair Debt

Collection Practices Act fail because GMACM was not a "debt collector" within the meaning of

that statute. *Fifth*, Matthews' fraud claims also fail because, among other reasons, he cannot

show the requisite detrimental reliance on allegedly fraudulent statements made by GMACM in

connection with the foreclosure actions.

3.      For these reasons, as set forth below in more detail, the Claim should be

disallowed and expunged from the Claims Register (defined below) in its entirety.

## II.    JURISDICTION, VENUE AND STATUTORY PREDICATE

4.      This Court has jurisdiction over this Objection pursuant to 28 U.S.C.

§§ 157 and 1334.  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.  The

statutory predicates for the relief sought herein are Bankruptcy Code section 502(b) and

Bankruptcy Rule 3007.

## III.   BACKGROUND

### A.    Chapter 11 Case Background

#### (i)      General Overview

5.      On July 13, 2012, the Court entered the *Final Supplemental Order Under*

*Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019*

*(I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving*

*Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action;*

*(III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower*

*Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the*

*Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 774] (the "Supplemental

Servicing Order").

      6.     On December 11, 2013, the Court entered an *Order Confirming Second*

*Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official*

*Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the

Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065].

On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred, and,

among other things, the Borrower Trust and the ResCap Liquidating Trust were established

[Docket No. 6137].

      7.     The Plan provides for the creation and implementation of the Borrower

Trust, which is established for the benefit of Borrowers who filed Borrower Claims (as such

terms are defined in the Plan) to the extent such claims are ultimately allowed either through

settlement or pursuant to an order of the Court.  See Plan, Art. IV.F.  The Borrower Trust was

established to, among other things, "(i) direct the processing, liquidation and payment of the

Allowed Borrower Claims in accordance with the Plan, and the distribution procedures

established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the

assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims."  See id.

### (ii)    Claim Specific Background

      8.     On May 16, 2012, the Court entered an order [Docket No. 96] appointing

Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11

Cases.  Among other things, KCC is authorized to (a) receive, maintain, and record and

otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the

official claims register for the Debtors (the "Claims Register").

ny-1140216

9.      On August 29, 2012, this Court entered an order approving the Debtors'

motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No.

1309] (the "Bar Date Order").[3]

10.      On March 21, 2013, the Court entered an order (the "Procedures Order")

[Docket No. 3294] approving, among other things, certain procedures to be applied in connection

with objections to claims filed by current or former borrowers (collectively, the "Borrower

Claims," and the procedures relating thereto, the "Borrower Claims Procedures").    The

Procedures Order includes specific protections for borrowers and sets forth a process for the

Debtors to follow before objecting to certain categories of Borrower Claims.    For example, the

Borrower Claims Procedures require that, prior to objecting to certain categories of borrower

claims, individual borrowers must be furnished with a letter requesting additional documentation

in support of the purported claim (a "Request Letter").  (See Procedures Order at 4).

11.      Prior to the Effective Date of the Plan, the Debtors determined that no

Request Letter was required to be sent to Matthews under the Borrower Claims Procedures.

**B.    The Matthews Loan And Foreclosure Actions**

12.      Matthews was a borrower under a mortgage loan (the "Loan") that was

originated by USAA Federal Savings Bank on February 14, 2008.  See Delehey Decl. at ¶ 7.

The Loan was evidenced by a note in the amount of $150,000.00 (the "Note"), which was

secured by real property located at 3216 East Northern Parkway, Baltimore, Maryland 21214

(the "Property") pursuant to a security deed (the "Security Deed") executed contemporaneously

---

[3] The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time)
as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and
prescribing the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (Prevailing
Eastern Time) as the deadline for governmental units to file proofs of claim (the "Governmental Bar Date").  Bar
Date Order ¶¶ 2, 3.  On November 7, 2012, the Court entered an order extending the General Bar Date to November
16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093].  The Governmental Bar Date was not extended.

ny-1140216

with the Note.  <u>Id</u>.  GMACM serviced the Loan from its inception through February 15, 2013,
when servicing was transferred to Ocwen Loan Servicing, LLC.  <u>Id</u>.

13.    Matthews defaulted on the Note by failing to make his August 1, 2009
payment.  As of the date of transfer to Ocwen, he had yet to make any subsequent payments on
the Note.  <u>See</u> Delehey Decl. at ¶ 8.

14.    On March 29, 2010, GMACM, acting in its capacity as servicer for the
Loan, instituted foreclosure proceedings (the "<u>First Foreclosure Action</u>") against Matthews in the
Maryland Court, and the Property was sold at a foreclosure sale on May 21, 2010.  <u>See</u> Delehey
Decl. at ¶ 9.  On January 14, 2011, upon motion of GMACM and its agents, the Maryland Court
entered a consent order (the "<u>Dismissal Order</u>") dismissing the First Foreclosure Action without
prejudice and rescinding the May 21, 2010 foreclosure sale.  <u>Id</u>.

15.    On or about February 10, 2012, GMACM filed a new complaint with the
Maryland Court commencing foreclosure proceedings against Matthews under the caption
<u>O'Sullivan, et al. v. Matthews</u>, Case No. 24-O-12000286 (Bat. City Cir. Ct., Md.) (the "<u>Second
Foreclosure Action</u>").  <u>See</u> Delehey Decl. at ¶ 10.

16.    On March 19, 2012, Matthews filed a counter complaint (the "<u>Counter-
Complaint</u>") in the Second Foreclosure Action (<u>see</u> Delehey Declaration at ¶ 11), pursuant to
which Matthews asserted the following counterclaims against GMACM arising from GMACM's
allegedly improper and unlawful collection practices against Plaintiff:  Count I – Fraud and
Fraudulent Concealment; Count II – Violations of the Maryland Consumer Protection Act
("<u>MCPA</u>"); Count III – Violations of Maryland Mortgage Fraud Protection Act ("<u>MMFPA</u>");
Count IV – Violation of Maryland Consumer Debt Collection Act ("<u>MCDCA</u>"); and Count V –
Violation of the Fair Debt Collection Practice Act.  Each count included a claim for monetary

ny-1140216

damages, which in the aggregate exceeded $4.6 million (the "Monetary Claims").  See Counter-

Complaint, annexed to the Claim, attached as Exhibit A to Delehey Declaration.

17.    On or about April 26, 2012, GMACM filed a motion to dismiss (the

"Motion to Dismiss") the Counter-Complaint in its entirety on both procedural and substantive

grounds.  See Delehey Decl. at ¶ 12.

18.    On or about June 26, 2012, Matthews filed a *Motion for Direction*

*Concerning The Automatic Stay As To Counter Defendants Carrie Ward And Jeffrey Stephan*

*And Potential Other Parties By Amendment* ("Motion for Direction") in the Second Foreclosure

Action, pursuant to which Matthews requested clarification regarding the application of the

Supplemental Servicing Order to the Second Foreclosure Action and sought the Maryland

Court's advice as to how to proceed in the face of GMACM's bankruptcy.  See Delehey Decl. at

¶ 13.

19.    On or about June 27, 2012, Matthews filed a *Motion For Extension For*

*Counter Plaintiff To Respond To Defendants GMAC's & Carrie Ward's Motion To Dismiss Due*

*To The Automatic Stay Of Counter Defendant GMAC* ("Motion for Extension") in the Second

Foreclosure Action.  See Delehey Decl. at ¶ 14.

20.    On July 9, 2012, a foreclosure mediation took place in the Second

Foreclosure Action between Matthews and GMACM.  The foreclosure mediation was continued

until October 9, 2012.  Thereafter, on October 10, 2012, the mediator filed the following report

of the mediation proceedings:  "The parties participated in the mediation but no agreement was

reached."  See Delehey Decl. at ¶ 15.

21.    A hearing was held on the Motion for Direction and the Motion for

Extension before the Maryland Court on July 30, 2012.  See Delehey Decl. at ¶ 16.  At the

conclusion of the hearing, the Maryland Court ruled that, regardless of whether or not the Monetary Claims could be parsed from the non-monetary relief sought by Movant under the Counter-Complaint, the Maryland Court was permitted to entertain the Motion to Dismiss under the Supplemental Servicing Order.  See Exhibit F to Delehey Decl.

22.    On August 28, 2012, Matthews filed the *Motion For Relief From Stay* [Docket No. 1291] (the "Stay Relief Motion") with this Court, pursuant to which Matthews sought relief from the automatic stay to proceed with prepetition claims for monetary damages pending against GMACM and two individual non-Debtor defendants in connection with the Second Foreclosure Action.

23.    On or about September 4, 2012, Matthews filed an opposition to the Motion to Dismiss and a Notice of Dismissal of Count I of the Counter-Complaint with the Maryland Court.  See Delehey Decl. at ¶ 17.

24.    On September 20, 2012, GMACM filed an objection to the Stay Relief Motion [Docket No. 1500].

25.    Prior to the hearing on the Stay Relief Motion, Matthews and GMACM entered into a stipulation and consent order modifying the automatic stay (the "Stipulation and Order"), which was entered by this Court on October 2, 2012 [Docket No. 1697].    The Stipulation and Order provided, among other things, that:

- GMACM may prosecute the Motion to Dismiss through the adjudication thereof by the Maryland Court and any and all appeals thereof, and [Matthews] may take all actions necessary to contest the Motion to Dismiss;

- [Matthews] may prosecute the Counter-Complaint against the non-Debtor defendants named therein, including additional non-Debtor defendants named in any amended Counter-Complaint filed by [Matthews]; and

- the automatic stay remains in full force and effect with respect to the Counter-Complaint as against GMACM to the extent provided under the Supplemental Servicing Order, and, following the adjudication of the Motion to Dismiss, the

8

automatic stay applies to [Matthews'] monetary claims against GMACM; provided, that, in the event the parties do not otherwise resolve the Foreclosure Action, whether through the Foreclosure Mediation or otherwise, the Stipulation and Order is without prejudice to [Matthews'] right to renotice the Automatic Stay Motion for hearing.

26.    On or about October 24, 2012, Matthews voluntarily dismissed his remaining counter claims against GMACM (but not against the other counter defendants) in the Second Foreclosure Action.  See Delehey Decl. at ¶ 18.

27.    A review of the Docket Sheet in the Second Foreclosure Action reveals that Matthews' claims against the two other counter-defendants have since been dismissed.  See Delehey Decl. at ¶ 19.  Accordingly, none of Matthews' claims against any counter-defendant remain pending in the Second Foreclosure Action.

C.    **The Matthews Adversary Proceeding**

28.    On November 7, 2012, Matthews filed a complaint (the "Adversary Complaint") in this Court initiating an adversary proceeding against GMACM, Adv. Proc. 12-01933 (MG) (the "Adversary Proceeding").

29.    The Adversary Complaint asserted identical claims and requests for relief as those made in Counts II through IV of the Counter-Complaint, but named GMACM as the only defendant.  By the Adversary Complaint, Matthews sought monetary damages on account of alleged violations of the MCPA (Count I), the MMFPA (Count II), and the MCDCA (Count III).  See Adversary Complaint.

30.    On January 17, 2013, Matthews filed a motion for partial summary judgment on the Adversary Complaint (the "Motion for Summary Judgment").  (Adv. Proc. 12-01933, ECF #5.)

31.    On January 18, 2013, the Debtors filed a motion to dismiss the Adversary Proceeding.  (Adv. Proc. 12-01933, ECF #6.)

32.     On March 1, 2013, the Debtors filed an opposition to the Motion for Summary Judgment.  (Adv. Proc. 12-01933, ECF #12.)

33.     On April 9, 2013, just two days before the scheduled hearing on the Debtors' motion to dismiss the Adversary Complaint and the Motion for Summary Judgment, Matthews filed a notice purporting to dismiss the Adversary Proceeding without prejudice pursuant to Fed. R. Civ. P. 41(a) and Fed. R. Bankr. P. 7041.  (Adv. Proc. 12-01933, ECF# 17.)

**D.     The Claim**

34.     On August 13, 2012, Matthews filed the Claim as a general unsecured claim against GMACM in the amount of $3,000,000.00.  See Exhibit A to Delehey Decl.  The Claim identifies the dismissed Counter-Complaint as the basis for the claim, and attaches a copy of the Counter-Complaint as the only support for the claim.  See id.

**IV.     RELIEF REQUESTED**

35.     The Borrower Trust hereby files this Objection pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007, and seeks the entry of an order, substantially in the form annexed hereto as Exhibit 1, disallowing and expunging the Claim from the Claims Register because: (i) the Claim is barred under the doctrine of res judicata; (ii) the Claim fails to state a valid claim against any of the Debtors; and (iii) if such Claim is not disallowed, then Matthews may potentially receive a wholly improper recovery to the detriment of other Borrower Trust beneficiaries.

**V.     OBJECTION**

36.     A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon

10

Co. v. Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); In

re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v.

Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46

Fed. Appx. 40 (2d Cir. 2002).  Moreover, section 502(b)(1) of the Bankruptcy Code provides, in

relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable

against the debtor and property of the debtor, under any agreement or applicable law…." 11

U.S.C. 502(b)(1).  Furthermore, the burden of persuasion is on the holder of a proof of claim to

establish a valid claim against a debtor.  Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R.

215, 220-22 (Bankr. S.D.N.Y. 2010).

     37.     As explained in further detail below and in the Delehey Declaration, the

Liquidating Trust, in support of the Borrower Trust, conducted an exhaustive examination of the

Debtors' books and records to assess the allegations made in the Claim, and believes that there is

no merit with respect to Matthews's asserted claims.  Accordingly, the Borrower Trust now files

this Objection to the Claim, which addresses the merits of the allegations set forth in the

Counter-Complaint and the Claim.

**A.     Legal Standard**

     38.     Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may

be dismissed because of a "failure to state a claim upon which relief can be granted."  Fed. R.

Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal

theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Johnson v.

Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d

729, 732 (9th Cir. 2001).

     39.     In reviewing a complaint under Rule 12(b)(6), all allegations of material

fact are taken as true and construed in the light most favorable to the non-moving party.

11

Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120

F.3d 1075, 1077 (9th Cir. 1997). The Court, however, is not required to "'accept as true

allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

inferences.'" St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Secs. Litig.), 536 F.3d 1049, 1055

(9th Cir. 2008) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)).

Although they may provide the framework for a complaint, legal conclusions need not be

accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(citation omitted); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir.

2003).

40.    The process of "determining whether a complaint states a plausible claim

is context-specific, requiring the reviewing court to draw on its experience and common sense."

Ashcroft, 556 U.S. at 663-64 (citation omitted). As a result, courts do not assume (i) that

plaintiffs can prove facts that they have not alleged or (ii) that defendants have violated laws in a

manner that has not been alleged. Associated Gen. Contractors of Cal., Inc. v. Cal. State Council

of Carpenters, 459 U.S. 519, 526 (1983).

**B.    The Claim Is Barred Under The Doctrine Of Res Judicata**

41.    Res judicata provides that "a final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could have been raised

in that action." Burgos v. Hopkins, 14 F.3d 787, 789 (2d Cir. 1994) (quoting Allen v. McCurry,

449 U.S. 90 (1980)). In non-diversity cases, federal courts apply the federal rule of res judicata.

Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 325 (1971) (citing Heiser v.

Woodruff, 327 U.S. 726, 733 (1946)). To establish res judicata under federal law, the proponent

must establish three elements: (1) a final judgment on the merits; (2) that is between the same

12

parties or their privies; and (3) a subsequent suit based on the same cause of action or same nucleus of operative facts. <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979); <u>Lawlor v. Nat'l Screen Serv. Corp.</u>, 349 U.S. 322, 326 (1955) ("under the doctrine of res judicata, a judgment 'on the merits' in a prior suit involving the same parties . . . bars a second suit based on the same cause of action") (citations omitted). "Dismissal with prejudice constitutes an adjudication of the merits as fully and completely as if the order had been entered after trial." <u>Gambocz v. Yelencsics</u>, 468 F.2d 837, 840 (3d Cir. 1972) (citing <u>Lawlor</u>, 349 U.S. at 327). Here, all three elements are satisfied.

42.    The Claim asserts that it is based on the Counter-Complaint filed in the Second Foreclosure Action. However, in the Second Foreclosure Action Matthews voluntarily dismissed the Counter-Complaint. Thereafter, Matthews filed the Adversary Complaint in this Court seeking to litigate the same claims asserted in the Counter-Complaint. After the Debtors filed a motion to dismiss the Counter-Complaint, as well as an objection to Matthews' Motion for Summary Judgment, Matthews filed a notice of dismissal of that action, without warning or explanation. Although the dismissal purported to be without prejudice, the notice of dismissal operated as an adjudication on the merits under Federal Rule 41(a)(1)(B), which is made applicable to adversary proceedings pursuant to Bankruptcy Rule 7041, because of his earlier dismissal of his claims in state court. <u>See</u> F.R.C.P. 41(a)(1)(b) ("[I]f the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits."). In addition, the Claim is explicitly based on the Counter-Complaint, which was essentially identical to the Adversary Complaint, and was also asserted against GMACM.

43.     The Claim is nothing more than an attempt to recover on claims that have already been voluntarily withdrawn with prejudice and are therefore deemed to have been adjudicated on the merits pursuant to the Federal Rules of Civil Procedure.  Consequently, the Claim should be disallowed and expunged under the doctrine of res judicata.

## C.     The Claim Fails To State A Basis For Liability Against The Debtors

44.     As established above, the Claim is barred by res judicata.  As such, the Borrower Trust respectfully submits that there is no need for this Court to proceed any further in its analysis of the Claim and this Objection.  Nonetheless, if this Court were to find that the Claim is not barred by res judicata, dismissal of the Claim still would be warranted because it fails to state a basis of liability against the Debtors.

45.     The five causes of action asserted in the Counter-Complaint stem almost entirely from Matthews' allegations that GMACM failed to offer and give him a loan modification and that the First Foreclosure Action was initiated and conducted improperly.  See Counter-Complaint at ¶¶ 47-59, 76-104, and Counts I-V ¶¶ 119-187.[4]  As demonstrated below, Matthews fails to state causes of action based on these allegations.

### (i)     To The Extent Matthews' Causes Of Action Arise Out Of GMACM's Alleged Failures To Comply With Loss Mitigation Requirements And To Modify His Loan, They Fail As A Matter Of Law

46.     In the Counter-Complaint, Matthews alleges that GMACM failed to comply with loss mitigation requirements and, more specifically, failed to modify his loan under

---

[4] Matthews also alleges that the Second Foreclosure Action was initiated improperly because (i) the Affidavit Certifying Ownership of Debt Instrument and that the Copy of the Note is a True and Accurate Copy filed with the Order to Docket identifies Ginnie Mae as the owner of the loan instead of GMACM and (ii) "[t]he Order to Docket falsely states that the Matthews Property is not owner occupied . . . ." Id. at ¶¶ 115-16.  These allegations are addressed, *infra*.  Suffice it to say that, even if taken as true, Matthews cannot demonstrate how these Court filings could cause him identifiable harm given that he is the cause for his loan being in default and for the resulting foreclosure on his defaulted loan. Id. at ¶ 56.

the Home Affordable Modification Program ("HAMP"). Id. To the extent Matthews' causes of action are premised on GMACM's alleged failure to provide a modification under HAMP, they fail to state a cognizable claim because they constitute an impermissible attempt to enforce a private right of action under HAMP. See, e.g., Counter-Complaint at ¶ 52 ("Matthews' loan was never properly evaluated by GMACM for a VA HAMP modification . . . ."), ¶ 47 ("As such, the foreclosure and eviction were conducted in violation of the VA HAMP program."). It is well-established that there is no private right of action under HAMP. See Bourdelais v. J.P. Morgan Chase Bank, N.A., No. 3:10-CV-670-HEH, 2011 WL 1306311, at *3 (E.D. Va. Apr. 1, 2011) ("[H]omeowners . . . filed suit claiming entitlement to permanent modifications under HAMP itself. Courts universally rejected these claims on the ground that HAMP does not create a private right of action for borrowers against lenders and servicers.") (citing cases).

47.    Because the Property is located in Maryland, Maryland state law dictates what claims can be brought in connection with a foreclosure against the Property. Maryland courts have not recognized a cause of action for wrongful denial of loan modification under state law. See, e.g., Akinkoye v. Wells Fargo Home Mortg., No. DKC-11-2336, 2011 WL 6180210, at ** 6-7 (D. Md. Dec. 12, 2011) (rejecting argument that servicer owed a borrower a "fair and accurate review" of borrower's loan modification application and noting that, [i]n general, '[c]ourts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement.'" (quoting Parker v. Columbia Bank, 604 A.2d 521 (Md. Ct. Spec. App. 1992))).

48.    Furthermore, under Maryland law, allegations of a failure to comply with loss mitigation requirements cannot be asserted as an affirmative offensive claim, i.e. such

ny-1140216

allegations cannot be used as a "sword" in challenging a foreclosure action. Instead, under Maryland law, "aggrieved mortgagors may assert an allegation of regulatory noncompliance as a shield against unauthorized foreclosure actions." <u>Wells Fargo Home Mortg., Inc. v. Neal</u>, 922 A.2d 538, 547 (Md. 2009). Accordingly, to the extent Matthews' causes of action arise out of his allegations that GMACM failed to comply with loss mitigation requirements, Matthews was required to bring this challenge in the First Foreclosure Action, <u>not</u> as a counter-claim but "as an affirmative defense within the injunctive relief apparatus" provided for in Rule 14-211 of the Maryland Rules. <u>Id</u>., 922 A.2d at 551; <u>see also</u> <u>Bates v. Cohn</u>, 9 A.3d 846, 858 (2010) (Md. Ct. App. 2010) ("[A] lender's failure to comply with loss mitigation requirements goes to its *right* to foreclose, rather than its procedural handling of the sale. As a result, a homeowner, who wishes to use the lender's failure as the basis of his or her claim, <u>must</u> do so through Rule 14-211's pre-sale injunctive relief apparatus.") (underlined emphasis added)).

49.    Accordingly, Matthews cannot recover on his claims that GMACM allegedly improperly denied him a loan modification under HAMP because borrowers do not have standing to assert claims against servicers under HAMP and under applicable Maryland law such claims only give rise to an affirmative defense to a pending foreclosure, not an affirmative offensive claim.

**(ii)    To The Extent Matthews' Causes Of Action Arise Out Of His Claims That The First Foreclosure Action Was Improper, These Causes Of Action Fail As A Matter Of Law**

**a.    Matthews' Claims Arising Out Of The Affidavits Submitted In The First Foreclosure Action Are Barred By Witness Immunity**

50.    To the extent that Matthews' allegations rely on affidavits submitted in the First Foreclosure Action, those claims are also barred by witness immunity. <u>See</u> Counter-Complaint at ¶¶ 79, 121, 122, 124, 126, 148-151, 163, 173, 184. Maryland law has long applied

the "English" rule of witness immunity, which sets forth that witnesses, parties, and judges enjoy "absolute immunity from civil liability, even if the statement is wholly unrelated to the underlying proceeding." Norman v. Borison, 17 A.3d 697, 708 (Md. 2011); see also Keys v. Chrysler Credit Corp, 494 A.2d 200, 203 (Md. 1985) ("We [follow] the minority or 'English' rule which afford[s] the absolute privilege to witnesses and parties without the necessity of demonstrating the relevance of the statement to the pending litigation.").

51.    The scope of witness immunity is broad.  Absolute privilege applies to statements "contained in pleadings, affidavits or other documents directly related to the case." Id.  Stricken allegations and statements serving to initiate a judicial proceeding fall within the scope of the privilege.  Di Blasio v. Kolodner, 197 A.2d 245, 250–51 (Md. 1964); Kerpelman v. Bricker, 329 A.2d 423, 425 (Md. Ct. Spec. App. 1974).  The privilege extends to statements prepared for possible use in an action that were not actually introduced as part of the proceeding. Adams v. Peck, 415 A.2d 292, 294 (Md. 1980).

52.    Because GMACM cannot testify except through its employees, it is immune from civil liability for testimony given on its behalf in prior judicial proceedings.  Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp., 576 F. Supp. 107, 129 (D. Del. 1983) ("To hold that a witness testifying on behalf of a corporation is immune but that the corporation he represents may be liable would render the witness immunity rule meaningless ...."), aff'd, 740 F.2d 958 (3d Cir. 1984).  An affidavit, whether true or false, qualifies as testimony protected by the witness immunity doctrine.  Collins v. Walden, 613 F. Supp. 1306, 1314-15 (N.D. Ga. 1985), aff'd, 784 F.2d 402 (11th Cir. 1986); Todd v. Weltman, Weinberg & Reis Co., 434 F.3d 432, 439–40 (6th Cir. 2006) (collecting cases).  Matthews' claims based on GMACM's affidavit

testimony offered in Matthews' now-dismissed foreclosure case thus fail to state a claim upon which relief can be granted against GMACM.

        **b.**      **GMACM Was Entitled To File The Second Foreclosure Action**

53.     Matthews also cannot use the Second Foreclosure Action to avoid Maryland's procedural rules permitting a prior dismissal without prejudice.  See Counter-Complaint at ¶ 115.  GMACM has the contractual right to foreclose on the Property due to a subsequent default notwithstanding dismissal of a prior foreclosure over a previous default. Moore v. Pomory, 620 A.2d 323, 325 (Md. 1993) (holding that a dismissal without prejudice is a final judgment, though it does not have *res judicata* effect); Fairbank's Capital Corp. v. Milligan, 234 Fed. Appx. 21, 23 (3d Cir. 2007) (the doctrine of *res judicata* does not bar successive foreclosure suits because "the subsequent and separate alleged default created a new and independent right in the mortgagee") (internal citations omitted); see generally RESTATEMENT (SECOND) OF JUDGMENTS § 20(1)(b) (1982).  The dismissal of Matthews' prior foreclosure without prejudice in January 2011 did not relieve Matthews of his obligations to make future mortgage payments.

54.     Maryland law recognizes that a party may move a court to dismiss all or part of a claim without prejudice pursuant to Md. Rule 2-506(b).  This absolute right was exercised in the First Foreclosure Action, and the Maryland court's dismissal without prejudice did not bar the commencement of future proceedings.

55.     Matthews' mortgage documents also provide a contractual right to bring a subsequent foreclosure following a prior dismissal without prejudice.  The Deed of Trust provides in relevant part:  "Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a

18

waiver of or preclude the exercise of any right or remedy." Deed of Trust, at ¶ 12.  It goes on to provide that the Lender has a power of sale if the Borrower is to breach "any covenant or agreement in this Security Instrument ….   Neither the assent to decree nor the power of sale granted … shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument."  Id. at ¶ 22.  As discussed earlier, GMACM may enforce these rights against Matthews.

56.     Maryland law honors this contractual right. A Deed of Trust is an enforceable contract.  Wellington Co., Inc. Profit Sharing Plan & Trust v. Shakiba, 952 A.2d 328, 337 (Md. Ct. Spec. App. 2008).  Although a lender cannot recover twice, it is entitled to recover under either the Note or the Deed of Trust.  Id.  The ability to exercise this right to recover again following the prior dismissal is contractually reserved by the Deed of Trust.  The court must "give effect to [the] plain meaning and [must] not delve into what the parties may have subjectively intended." Eller v. Bolton, 115, 895 A.2d 382, 393-94 (Md. Ct. Spec. App. 2006) (citation omitted).  The court must also give effect "to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." Sagner v. Glenangus Farms, Inc., 198 A.2d 277, 283 (Md. 1964).  Matthews thus has no procedural or substantive grounds to effectively transform dismissal of his prior foreclosure from one without prejudice to one with prejudice.

### c.     Matthews Cannot Use His Claim To Assert Claims That He Was Required To Bring In The First Foreclosure Action And In An Appeal From The First Foreclosure Action

57.     The Counter-Complaint constitutes an improper collateral attack on the dismissal of the First Foreclosure Action, which is prohibited under Maryland procedural rules and case law.  See Klein v. Whitehead, 389 A.2d 374, 385–87 (Md. Ct. Spec. App. 1978); Jones

19

v. HSBC Bank U.S.A., N.A., No. 11-1197, 2011 WL 3734984, at *5 n.4 (4th Cir. Aug. 21, 2011)

("To the extent [the plaintiff] believes that the final judgment was procured by means of fraud or

false testimony, his remedy is to seek revision pursuant to Maryland Rule 2-535, not to bring a

collateral attack."); Jones v. Fisher Law Grp., PLLC, 334 F. Supp. 2d 847, 850 (D. Md. 2004)

("[Plaintiffs] request that this Court vacate the Maryland Circuit Court foreclosure judgment, but

this Court does not have jurisdiction to grant such a request.  Any review of the Maryland Circuit

Court judgment must be pursued in the appellate courts of the State of Maryland ….") (citing

Friedman's Inc. v. Dunlap, 290 F.3d 191, 196 (4th Cir. 2002)).

        58.     Maryland procedural rules expressly prohibit Matthews' collateral attack

on the dismissal of his prior foreclosure without prejudice.  See Counter-Complaint at ¶¶ 121,

148, 149, 150.  Maryland Rule 2-535(b) allows a court to revise its judgment on the basis of

fraud.  Md. Rule 2-535(b) ("On motion of any party filed at any time, the court may exercise

revisory power and control over the judgment in the case of fraud ….").  That Rule also sets

forth the procedure to reopen a Maryland judgment based on fraud.  See Md. Rule 2-535

(entitled "Revisory Power").  Maryland case law limits this revisory power to claims of extrinsic

fraud.  Jones v. Rosenberg, 940 A.2d 1109, 1120 (Md. Ct. Spec. App. 2008) (To set aside a

judgment under Rule 2-535(b), "a movant must show extrinsic fraud, not intrinsic fraud.");

Bland v. Hammond, 935 A.2d 457, 463 (Md. Ct. Spec. App. 2007) ("Only extrinsic fraud will

justify the reopening of an enrolled judgment; fraud which is intrinsic to the trial itself will not

suffice.").  Intrinsic fraud is not sufficient to reopen a judgment under Maryland Rule 2-535.

Schwartz v. Merchs. Mortg. Co., 322 A.2d 544, 548 (Md. 1974).  Moreover, a judgment may not

be opened on the basis of intrinsic fraud more than 30 days after its entry.  Oxendine v. SLM

Capital Corp., 915 A.2d 1030, 1038 (Md. Ct. Spec. App. 2007) ("It is black letter law in

Maryland that the type of fraud which is required to authorize the reopening of an enrolled

judgment is 'extrinsic' fraud and not fraud which is 'intrinsic.'"); <u>Green v. Green</u>, 67 A.2d 102,

103 (Md. Ct. Spec. App. 1976) (Plaintiff missed 30-day deadline within which to seek revision

on the basis of intrinsic fraud); <u>Bland</u>, 935 A.2d at 461-462 ("Maryland cases are legion that

recognize the principal that there must be a definite and foreseeable end to litigation, and that

ordinarily judgments should not be vacated after the passage of the 30-day review period.").

       59.    Matthews' allegation that GMACM and/or its agents fraudulently

submitted false affidavits in the First Foreclosure Action (<u>see</u> Counter-Complaint at ¶¶ 79, 82,

103, 123, 125, 127, 129, 143, 163) amounts to a claim of fraud intrinsic to the dismissal of that

action.  <u>See Green v. Ford Motor Credit Co.</u>, 828 A.2d 821, 831 (Md. Ct. Spec. App. 2003)

("Under Maryland law, it is clear that making an intentionally false statement … would not

constitute extrinsic fraud and that proof of such fraud will not suffice" to set aside a judgment.);

<u>Hresko v. Hresko</u>, 83 Md. App. 228, 231, 574 A.2d 24, 26 (1990); <u>Schwartz</u>, 322 A.2d at 546;

<u>see</u> <u>generally</u> 47 Am. Jur. Judgments §720 (2011) (defining intrinsic fraud as "perjured

testimony" or other "fabricated evidence").

       60.    By waiting more than a year to challenge the dismissal of the First

Foreclosure Action, Matthews forfeited any rights he had under Maryland Rule 2-535(b).  To be

sure, it is noteworthy that Matthews actually consented to the dismissal of the First Foreclosure

Action in which he had asserted many of the same allegations he then sought to revive and

litigate in the Second Foreclosure Action.  <u>See</u> Exhibit D to Delehey Decl.

       61.    Therefore, to the extent Matthews wanted relief from the dismissal of the

First Foreclosure Action, he was required to file a Maryland Rule 2-535(b) motion <u>in that</u>

<u>specific case</u>.  Only the court in the First Foreclosure Action, and ultimately the Maryland

appellate courts in a direct appeal from that specific case, have authority to revise the prior dismissal.  Cf. Jones v. Fisher Law Grp., 334 F. Supp. 2d at 850 ("The Jones also request that this Court vacate the Maryland Circuit Court foreclosure judgment, but this Court does not have jurisdiction to grant such a request.  Any review of a Maryland Circuit Court judgment must be pursued in the appellate courts of the State of Maryland, not in this Court.") (citing Friedman's Inc. v. Dunlap, 290 F.3d at 196).

**(iii)    Matthews' Claim For Violation Of The Maryland Consumer
Protection Act (Count II) Fails As A Matter Of Law**

62.    In Count II of the Counter-Complaint, Matthews alleges that all of the Counter Defendants violated the MCPA, MD CODE COMMERCIAL LAW § 13-301, *et seq.*, "through the unfair or deceptive prosecution, based upon incomplete and bogus responses to [his] requests for modifications of [his] loan[], or threat of prosecution of a bogus foreclosure action by Defendants directly and indirectly."   Counter-Complaint at ¶ 140.   According to Matthews, the Counter Defendants violated the MCPA because "[t]he use of the bogus affidavits in Matthews' foreclosure violated the MCPA's prohibition against the use of false or misleading written statements or other representations that have the capacity, tendency, or effect of misleading consumers like Matthews."   Id. at ¶ 150.   In addition, Matthews alleges that GMACM violated the MCPA by GMACM's alleged "failure to inform Matthews that GMACM, and not USAA, was the true servicer of his loan."  Id. at ¶ 153.

63.    With respect to his damages for the claimed MCPA violations, Matthews alleges that "[b]ut for the bogus paperwork" presented in the First Foreclosure Action, "this Court would not have had jurisdiction for the foreclosure action that was filed against Matthews [and] Matthews would not have incurred attorney's fees, losses and damages, charges, and other costs related to the foreclosure process."  Counter-Complaint at ¶ 149.   Matthews also alleges

22

that "GMACM failed to tell Matthews that he was not speaking with USAA but was speaking with GMACM" and that "[t]his fact was material" because "[h]ad Matthews known that GMACM was the true owner, he would have escalated his situation to the appropriate contacts at GMACM or even the true owner of his loan, whoever that was at the time." Id. at ¶ 152. Presumably, this would have resulted in Matthews receiving different and better "consideration of a loan modification." Id. at ¶ 137; see also, e.g., id. at ¶ 58 ("At no time during this period of communications with GMACM was Matthews ever offered a repayment plan, special forbearance, loan modification, compromise claim, deed-in-lieu, refinance, assumption, or refunding. In fact GMACM intentionally concealed these loss mitigation options from him since it had no risk in the loan.").

64.    Matthews' MCPA claim fails as a matter of law. As an initial matter, GMACM's alleged failure to disclose to Matthews that it was only the servicer, and not the investor in the loan, was not an unfair or deceptive practice. In an industry where over 60% of mortgage loans are serviced by mortgage servicers acting as the authorized agents for investors, and where such servicers apply criteria set by the investors in determining whether borrowers are eligible for loss mitigation,[5] GMACM's interactions with Matthews were undertaken in the ordinary course of GMACM's operations as an authorized agent of the investor. Delehey Dec. ¶ 5.

65.    Further, the MCPA permits a private right of action when an individual seeks "to recover for injury or loss sustained by him *as the result of* a practice prohibited by this title." MD CODE COMMERCIAL LAW § 13-408 (emphasis added). In this regard, the Maryland Court of Appeals has stated that an individual may bring a claim under the MCPA only if he can

---

[5]    See 12 CFR Part 1024, available at http://files.consumerfinance.gov/f/201301_cfpb_final-rule_servicing-respa.pdf, at 8, 13 (last visited May 25, 2014).

"establish the nature of the actual injury or loss that he or she has allegedly sustained as a result of the prohibited practice." <u>Lloyd v. General Motors Corp.</u>, 916 A.2d 257, 280 (Md. 2007) (quoting <u>Citaramanis v. Hallowell</u>, 613 A.2d 964, 968 (Md. 1992)).

66.    In other words, a plaintiff seeking recovery under the MCPA must show that he suffered actual loss of money or property as a result of the alleged violation.  <u>See</u>, <u>e.g.</u>, <u>DeReggi Constr. Co. v. Mate</u>, 747 A.2d 743, 752 (Md. Ct. Spec. App. 2000) ("to receive protection under the Consumer Protection Act, appellees must show they were actually injured by appellants' violation of the Act"); <u>Citaramanis</u>, 613 A.2d at 969 (tenants were not entitled to restitution of rents paid because they were not harmed by landlord's failure to disclose that premises were not licensed for occupancy); <u>Willis v. Countrywide Home Loans Servicing, L.P.</u>, No. CCB-09-1455, 2009 WL 5206475, at *6-7 (D. Md. Dec. 23, 2009) (dismissing MCPA claim because plaintiff "has not alleged that Countrywide's misinformation regarding loan modification programs caused him to suffer any specific harm").

67.    As set forth below, Matthews cannot establish the necessary element of actual injury or loss required to sustain a claim under the MCPA.

### a.    GMACM's Alleged Failure To Tell Matthews That He Was Speaking With GMACM Did Not Result In Actual Harm To Matthews And Is A Claim That Cannot Be Brought Under The MCPA

68.    Matthews cannot demonstrate that GMACM's purported failure to tell him "that he was not speaking with USAA but was speaking with GMACM" caused him actual harm or injury.  Counter-Complaint at ¶ 152.  Instead, Matthews alleges that "[h]ad Matthews known that GMACM was the true owner, he would have escalated his situation to the appropriate contacts at GMACM or even the true owner of his loan, whoever that was at the time." <u>Id</u>.  One is left to guess what might have happened if Matthews had "escalated his situation."  The

implication is that Matthews would have qualified for a loan modification or other assistance and would not have remained in default on his loan obligations.   Such implication, however, is conclusory and is incapable of sustaining Matthews' MCPA claim.   See, e.g., Polek v. J.P. Morgan Chase Bank, N.A., 36 A.3d 399, 418 (Md. 2012) ("This, at best, is a conjectural or potential injury, far from the 'actual' injury required by the CPA.").

69.    Willis, supra, illustrates the point.   In Willis, the borrower plaintiff alleged that the lender violated the MCPA "by engaging in deceptive trade practices when it concealed facts and misled him about his eligibility for loan modification programs."   Id. at *6.   In dismissing the borrower plaintiff's MCPA claim, the Court stated:

> Mr. Willis has not alleged that Countrywide's misinformation regarding loan modification programs caused him to suffer any specific harm, *apart from the debt that he already owed.* Accordingly, Mr. Willis is unable to establish the necessary element of injury or loss required to bring a private claim under the CPA.

Id. (emphasis added).

70.    Here, as well, Matthews cannot establish the necessary element of injury or loss required to sustain a claim under the MCPA "apart from the debt he already owed."   Id. Matthews is unable to establish that any of his purported injuries were the result of, or caused by, GMACM's alleged actions or inactions.   Matthews does not dispute that he was in default on his loan obligations.   It also cannot be disputed that GMACM did not cause or contribute to his default.   Matthews cannot establish that he would have taken other or different action with respect to this default but for GMACM's purported conduct, or that he had a plausible belief that foreclosure proceedings could not occur.   Nor has he alleged that he qualified for loss mitigation at the time of the First Foreclosure Action or thereafter.   Cf. Preliminary Loss Mitigation Affidavit accompanying the Order to Docket in the Second Foreclosure Action.   In fact, the

ny-1140216

allegations of the Counter-Complaint, stripped of unsupported modifiers, clearly demonstrate that Matthews <u>was</u> considered for loss mitigation <u>by GMACM</u> but that he did not qualify.  <u>See</u>, <u>e.g.</u>, Counter-Complaint at ¶ 83 ("Matthews contacted GMACM regarding the status of his modification he had previously sought by application.  GMACM falsely stated he was denied a modification because he . . . did not have sufficient income"); *cf., e.g,* <u>Mashburn v. Wells Fargo Bank, N.A.</u>, No. C11–0179–JCC, 2011 WL 2940363, at *6 (W.D. Wash. Jul. 19, 2011) ("Defendant's denial of the loan modification does not constitute an adverse action, because it was a refusal to extend additional credit under an existing credit arrangement where the applicant was delinquent.").

71.    Also, as established *supra*, these alleged failures of GMACM to comply with loss mitigation requirements or directives are unenforceable as a private right of action and could only have been asserted by Matthews in one way – "through Rule 14-211's pre-sale injunctive relief apparatus." <u>Bates</u>, 9 A.3d at 858.

72.    Therefore, GMACM's alleged failure to tell Matthews that he was speaking with GMACM so that Matthews might have somehow been able to modify his loan did not result in actual harm to Matthews.  Beyond this, such a claim actually seeks to enforce a private right of action under HAMP and/or an impermissible affirmative claim for alleged loss mitigation noncompliance, rather than seeking to enforce a right of action under the MCPA, and fails for this reason as well.

> **b.**    **The Purportedly "Bogus Paperwork" Submitted In The First Foreclosure Action Did Not Result In Any Actual Harm To Matthews**

73.    As part of his MCPA cause of action, Matthews alleges that "[b]ut for the bogus paperwork" presented in the First Foreclosure Action, "this Court would not have had jurisdiction for the foreclosure action that was filed against Matthews [and] Matthews would not

have incurred attorney's fees, losses and damages, charges and other costs related to the foreclosure process." Counter-Complaint at ¶ 149. Matthews further alleges that "[t]he use of the bogus affidavits in Matthews' foreclosure violated the MCPA's prohibition against the use of false or misleading written statements or other representations that have the capacity, tendency, or effect of misleading consumers like Matthews." Id. at ¶ 150. For the following reasons, these allegations also do not support a claim for damages under the MCPA.

74.    *First*, a viable claim for a false or misleading statement under the MCPA requires that the plaintiff not only establish that the defendant made a misleading statement about a material fact, but also that the plaintiff *relied* upon that statement to his detriment. Philip Morris, Inc. v. Angeletti, 752 A.2d 200, 235 (Md. 2000) (reliance by consumers is "a necessary precondition to awarding restitution or damages pursuant to the statutory consumer protection provisions" in the MCPA).

75.    In the instant case, Matthews does not allege that he took any action or refrained from taking any action in reliance on the purportedly "bogus paperwork" submitted in the First Foreclosure Action. In fact, the allegations of the Counter-Complaint establish that Matthews retained legal counsel who "appeared on his behalf in the First Foreclosure Action and timely filed exceptions to the foreclosure sale on July 19, 2010 with this Court." Counter-Complaint at ¶ 94. According to the Counter-Complaint, "[i]n those exceptions, Matthews objected to the right of GMACM and Ward to have conducted the foreclosure sale and to have even brought this action." Id. Matthews' counsel continued to actively defend against and challenge the First Foreclosure Action, including the Counter Defendants' use of the allegedly "bogus paperwork" to initiate that action, by filing a belated objection to the dismissal of the First Foreclosure Action. Id. at ¶ 102. Therefore, Matthews cannot plausibly allege that he

27

relied to his detriment on the purportedly "bogus paperwork" filed in the First Foreclosure Action.

76.    *Second*, Matthews cannot show that "bogus paperwork" caused him the requisite actual harm or injury.  To the extent Matthews suffered harm or injury, such injury or harm was caused by his failure to fulfill his loan obligations.  Again, Matthews does not dispute and, indeed, actually alleges in his Counter-Complaint that he has been in default on his loan obligations since August 2009.  Id. at ¶ 57 ("Matthews continued to contact GMACM after defaulting on the mortgage.").  He also does not dispute that the copy of the Note filed in the First Foreclosure Action – also filed in the Second Foreclosure Action – was a copy of the Note that he executed at settlement.  Nor is there an allegation that a party other than GMACM had or has the right to enforce the Note to the exclusion of GMACM.  In fact, Matthews acknowledges in his Counter-Complaint that GMACM is a party entitled to enforce the Note.  Id. at ¶ 116c. ("an examination of the Note identifies an assignment by USAA to GMACM"); see *also* Note Exhibit 1, ¶ 1 ("the Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"); MD. CODE ANN., REAL PROPERTY § 2-103 (Every valid assignment of a mortgage is sufficient to grant to the assignee every right which the assignor possessed under the mortgage at the time of the assignment.); Anderson v. Burson, 35 A.3d 452, 461 (Md. 2011)  (identifying parties having the right to enforce a note) (citing MD CODE COMMERCIAL LAW § 3-301).  Furthermore, Matthews does not allege that any of the Counter Defendants' mailings or filings in either foreclosure action had the effect of misleading him into not making a payment or payments on his loan.

77.    Therefore, regardless of the allegedly "bogus paperwork," Matthews still would have had to defend against an otherwise meritorious foreclosure action brought on by his

28

admitted failure to pay his mortgage loan, *i.e.*, because of his default, Matthews still would have "incurred attorney's fees, losses and damages, charges and other costs related to the foreclosure process." Id. at ¶ 149. As the United States District Court for the District of Maryland recently stated under almost identical circumstances:

> While the Plaintiffs have not made a plausible showing that they suffered any actual concrete injury at the hands of the Defendant, <u>it is clear that to the extent they did suffer some injury, that injury was a result of the Plaintiffs' own failure to keep current on their mortgage</u>, and not on the allegedly "bogus" documents filed by BGW in the course of the dismissed foreclosure proceeding.

<u>Casey v. Litton Loan Servicing LP</u>, No. RDB-11-0787, 2012 WL 502886, at *4 (D. Md. Feb. 14, 2012) (emphasis added).

78.     *Finally,* there is no legal authority that permits Matthews to recover "damages for emotional distress or mental anguish" under the MCPA. <u>See Hall v. Lovell Regency Homes Ltd. P'ship</u>, 708 A.2d 344, 348 (Md. Ct. Spec. App. 1998) (noting that plaintiff "could not recover damages for emotional distress or punitive damages" under the MCPA).

**(iv)     Matthews' Maryland Consumer Debt Collection Act Cause Of Action (Count IV) Fails To State A Claim Upon Which Relief Can Be Granted.**

79.     In Count IV, Matthews asserts a claim under the MCDCA. Counter-Complaint at ¶¶ 164-181. According to the Counter-Complaint, GMACM purportedly violated the MCDCA and attempted to enforce a right with knowledge that the right does not exist in two ways:  (1) by initiating the First Foreclosure Action with "bogus or insufficient papers and affidavits" and (2) "by authorizing its agents to enter Matthews' property and remove his belongings with the knowledge that it did [not] have the right to do so." Id. at ¶¶ 173, 175. Both of Matthews' claims under the MCDCA both fail as a matter of law.

80.     The MCDCA states, *inter alia*, that "[i]n collecting or attempting to collect an alleged debt a collector may not . . . [c]laim, attempt, or threaten to enforce a right

29

with knowledge that the right does not exist[.]" MD CODE COMMERCIAL LAW § 14-202(8).

As explained by the United States District Court for District of Maryland:

> For purposes of this statute, "knowledge" has been construed to include "actual knowledge or reckless disregard as to the falsity" of the existence of the right. . . . [T]o establish "reckless disregard," a plaintiff must show "the defendant either (1) made the statement with a 'high degree of awareness of ... probable falsity'; or (2) actually entertained serious doubts as to the truth of the statement."

Allen v. Bank of Am. Corp., No. CCB-11-33, 2011 WL 3654451, at *9 (D. Md. Aug. 18, 2011) (citations omitted).

81.    Matthews fails to allege facts sufficient to draw any inference that GMACM attempted to collect a debt with a high degree of awareness of its probable nonexistence or that it actually doubted its existence.  It is clear that GMACM did have the right to enforce the mortgage loan debt at the time the Second Foreclosure Action was proceeding.  As noted above, the allegations in the Counter-Complaint confirm that Matthews was several months in arrears when the First Foreclosure Action was instituted.  See Counter-Complaint ¶¶ 56, 76.  GMACM was a party entitled to enforce the Note, see id. at ¶ 116c., and, again, Matthews does not allege otherwise.  GMACM had every right to attempt to enforce the Note or, at the very least, a very reasonable belief that it had such a right.  As a matter of law, GMACM cannot be found to have violated the MCDCA for seeking to enforce a right that GMACM actually has.

82.    With respect to Matthews' claim that GMACM violated the MCDCA "by authorizing its agents to enter Matthews' property and remove his belongings," this also fails to state a claim for relief under the MCDCA.  Id. at ¶ 175.  According to the Counter-Complaint, GMACM's agents allegedly entered the Property after GMACM purchased the Property at the foreclosure sale.  Id. at ¶ 90 ("GMACM had purchased the property at the May 21, 2010 foreclosure sale"); ¶ 96 (the Property was "seized" while the exceptions to the sale were

30

pending).  As an initial matter, the assertion of this claim under any cause of action is barred by the prohibition against collateral attack based on the Dismissal Order that disposed of the First Foreclosure Action.  By its terms, the Dismissal Order did more than merely grant dismissal of the First Foreclosure Action without prejudice.  It expressly ordered that the foreclosure sale held on May 21, 2010 was rescinded.  The rescission of the foreclosure sale was a right obtained by Matthews as a consequence of the Dismissal Order.  This right went to the substance of the case. See Annapolis Urban Renewal Auth. v. Interlink, Inc., 405 A.2d 313, 318 (Md. Ct. Spec. App. 1979).  If rescission of the foreclosure sale did not provide Matthews with an adequate remedy, then it was incumbent upon Matthews to move to reopen the First Foreclosure Action to seek an equitable order restoring him to the *status quo* which existed as to his possession prior to the May 21, 2010 foreclosure sale.  Had he done so, no independent action for wrongful dispossession would have been necessary here.  Matthews' deliberate and knowing decision not to seek to enforce the rescission once he learned in 2011 that he had been dispossessed represents an impermissible splitting of his cause of action for dispossession as between the First Foreclosure Action and his Counter-Complaint in the Second Foreclosure.  Splitting of his cause of action is prohibited by the res judicata effect of the rescission portion of the Dismissal Order. See id.  Hence, the independent assertion of this claim now as a counter-claim is barred.

83.    This claim also fails because, contrary to the Counter-Complaint's misstatement of law, GMACM, as the purchaser at the foreclosure sale, did have equitable title to the Property.  *Compare* Counter-Complaint at ¶ 176 ("GMACM, Ward and its agents were aware that they had neither equitable nor legal title to the property, and were therefore not entitled to possession of the property") *with* Empire Props., LLC v. Hardy, 873 A.2d 1187, 1200 (Md. 2005) ("As stated in Union Trust, Merryman and, most recently, Simard, prior to

ratification in the Circuit Court, <u>a purchaser at a foreclosure sale has an inchoate equitable title to the property</u>.") (emphasis added)).

84.    In addition, under Maryland law, GMACM was entitled to possession of the Property post-sale and pre-ratification.  <u>See id</u>. ("Generally at this early stage a purchaser is not yet entitled to possession of the property absent sufficient reasons otherwise (*e.g.*, waste, <u>deed of trust provides for possession before judicial sale or court ratification, *i.e.,* upon default, etc</u>.)" (emphasis added)).   Here, the Deed of Trust expressly provides that upon Matthews' breach of the covenants and agreements contained in the Deed of Trust, GMACM has the right to secure and repair the Property.  <u>See</u> Deed of Trust, Exhibit 2 at ¶ 9.  The Deed of Trust further provides:

> **Possession of the Property**.  Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.

<u>Id</u>. at ¶ 25.  Accordingly, consistent with <u>Empire Properties</u> and the express language of the Deed of Trust, GMACM was entitled to possession of the Property after the foreclosure sale.

85.    Even if GMACM were not entitled to possession of the Property prior to ratification, GMACM still cannot be found to be in violation of the MCDCA for the simple reason that GMACM was not "attempting to collect a debt."  Instead, GMACM was seeking to secure or otherwise possess the Property that it had purchased at the foreclosure sale.  As such, GMACM's actions with respect to these allegations by Matthews do not fall within the purview of the MCDCA.  <u>Cf</u>. <u>Khepera-Bey v. Santander Consumer USA, Inc.</u>, No. WDQ-11-1269, 2012 WL 1965444, at *9 (D. Md. May 30, 2012) (noting that the definition of "security interest" in the MCDCA "distinguishes the interest in personal property from the obligation to pay" and "a repossessor cannot be said to be attempting to collect a debt when it takes property").

ny-1140216

86.     At the very least, given the express language of the Deed of Trust and the vesting of equitable title in GMACM as a result of its purchase of the Property, GMACM cannot be found to have had been acting to enforce a right with "'actual knowledge or reckless disregard as to the falsity'" of the existence of that right.  <u>Allen</u>, 2011 WL 3654451, at * 9 (citation omitted).

       (v)       **Matthews' FDCPA Cause of Action (Count V) Fails As A Matter Of Law Because GMACM Is Not A "Debt Collector" Under The FDCPA.**

87.     Matthews' FDCPA claim under Count V of the Counter-Complaint cannot be sustained against GMACM.  For purposes of the FDCPA, the definition of "debt collector" contains an exemption for an entity, such as a mortgage servicer, that collects debts that were "not in default at the time [they were] obtained" by the entity.  15 U.S.C. § 1692a(6)(F)(iii). Matthews alleges that he defaulted on his loan in August 2009.  Counter-Complaint ¶ 56. Matthews also alleges that GMACM was the owner and/or servicer of his loan prior to his default.  <u>Id</u>. at ¶ 46a. ("GMACM actually retained the servicing rights of his loan at the time he closed on his loan"); ¶ 5 (prior to default, "GMACM . . . omitted offering Mathews the meaningful loss mitigation alternative he was entitled to receive"); ¶ 7 (GMACM was "the true owner of the mortgage loan"); ¶ 53 ("Prior to missing any payments on his mortgage, Matthews contacted GMACM, d/b/a USAA to inform them of his circumstances").[6]  <u>See also</u> Delehey Decl. at ¶ 7.

---

[6]  In his FDCPA Count, at ¶ 183, Matthews alleges that "GMACM acquired the ownership rights and servicing rights to Matthews' mortgage during a period in which GMACM alleges the loan was in default and is therefore a 'Debt Collector' within the meaning of U.S.C. § 1692a(6)."  This allegation is an unsubstantiated and transparent attempt to bring GMACM within the purview of the FDCPA.  <u>See</u>, <u>e.g.</u>, <u>Shugart v. Ocwen Loan Servicing, LLC</u>, 747 F. Supp. 2d 938, 942-43 (S.D. Ohio 2010) ("[The] exception, which may operate to remove a loan servicer from the definition of a 'debt collector', does not apply if the loan was in default at the time it was acquired by the servicing company, or if the servicing company treated it as such …").  It also is a lone allegation that is entirely inconsistent with Matthews' other allegations in the Complaint, including those cited immediately preceding this footnote.  As such, it is not entitled to any assumption of truth.  <u>See</u>, <u>e.g.</u>, <u>Beach v. Wal-Mart Stores, Inc.</u>, No. 8:11-

88.     Therefore, GMACM is not a "debt collector" for purposes of the FDCPA,

and accordingly, Matthews' claim for violation of the FDCPA fails.  See Parillon v. Fremont Inv.

& Loan, No. L-09-3352, 2010 WL 1328425 (D. Md. Mar. 25, 2010) (dismissing claim for

alleged violation of FDCPA on ground that "[FDCPA] exempts from liability entities attempting

to collect their own debts, mortgagors, and mortgage servicing companies)" (citing Scott v.

Wells Fargo Home Mortg. Inc., 326 F. Supp. 2d 709, 718 (E.D. Va. 2003) (emphasis added));

Flores v. Deutsche Bank Nat'l Trust Co., No. DKC-10-0217, 2010 WL 2719849, at *6 (D. Md.

Jul. 07, 2010) (dismissing claim for alleged violation of the FDCPA on ground that "creditors,

mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt

from liability under the FDCPA") (citation omitted); Gibbs v. SLM Corp., 336 F. Supp. 2d 1, 13-

14 (D. Mass. 2004), aff'd, No. 05-1057, 2005 U.S. App. LEXIS 29462 (1st Cir. Aug. 23, 2005)

(granting 12(b)(6) motion to dismiss claim because loan servicer was exempt from definition of

debt collector under FDCPA); Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 457 (6th Cir.

2013) (servicer need not also be owner of debt to be exempt from definition of debt collector

under the FDCPA so long as it serviced the loan prior to the date of default).

**(vi)     Matthews' Two Fraud Counts Fail To State A Claim Upon Which
Relief Can Be Granted.**

89.     Finally, Matthews' two expressly fraud-based causes of action - Fraud and

Fraudulent Concealment (Count I) and Violations of the Maryland Mortgage Fraud Protection

Act (Count III) - fail to state a claim upon which relief can be granted.

---

cv-01437-AW, 2012 WL 395316, at * 4 (D. Md. Feb. 6, 2012) ("this allegation is not entitled to the assumption of
truth because it is inconsistent with other allegations in the Complaint").

a.     **Matthews' Claim For Fraud And Fraudulent Concealment (Count I) Fails On Grounds That Matthews Cannot Establish The Elements Of The Claim.**

90.     Matthews' fraud claim in Count I of the Counter-Complaint fails as a matter of law for the same reasons that his other claims cannot be sustained.  In Maryland, in order to state a cause of action for fraud or deceit, a plaintiff must "prove by clear and convincing evidence that '(1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.'" Exxon Mobil Corp. v. Albright, 71 A.3d 30, 49 (Md. 2013) (citation omitted), cert. denied, 134 S. Ct. 648 (2013).

91.     Matthews' fraud claim is premised on Matthews' theory that GMACM "created or continued a false impression as to its rights to collect a debt in [the] false and fraudulent manner i[t] sought to do so."   Counter-Complaint at ¶ 126.   In discerning the allegations of the Counter-Complaint, this claim seems to encompass Matthews' allegations that GMACM failed to modify his loan, initiated both foreclosure actions with allegedly "bogus paperwork," and "illegally seized control" of the Property.   See id. (incorporating prior allegations in statement of fraud claim).

92.     GMACM has addressed these allegations above and they fare no better under Matthews' fraud count.  As established, *supra*, GMACM's purported failure to modify the loan is not actionable under HAMP and could only be asserted, if at all, "through Rule 14-211's pre-sale injunctive relief apparatus."   Bates, 9 A.3d at 858.  As further established, *supra*,

35

GMACM did and does have the right to enforce the Note.  It also had the right to secure and/or possess the Property.

93.   In addition, with respect to the allegedly "bogus paperwork" filed in either or both foreclosure actions, any fraud could not be said to have been directed at Matthews.  Corbett v. Beneficial Ohio, Inc., 847 F. Supp. 2d 1019 (S.D. Ohio 2012), a case involving similar allegations of bogus affidavits and paperwork, illustrates the point.  In dismissing the borrower's fraud claims in Corbett, the Court stated:

> The Court notes that the statements at issue were contained in documents filed with the Greene County Common Pleas Court, and submitted in support of Defendants' request that the court reform the mortgage, issue a judgment of foreclosure, and schedule a sheriff's sale. If Defendants made the statements with the intent to mislead *anyone,* it would have been the court, not Corbett.

Id. at 1027 (emphasis in original).  Here, as well, any alleged fraud (and there is none) would have been perpetrated against the court, not Matthews.

94.   Also, as with his other claims, Matthews cannot show that he relied on any misrepresentation by GMACM.  Matthews actively defended against and challenged the First Foreclosure Action and the Second Foreclosure Action.  See Counter-Complaint at ¶¶ 94, 102.  And, as with his other claims, Matthews cannot show that he suffered the requisite compensable injury "apart from the debt he already owed."  Willis, 2009 WL 5206475, at * 6; see also, e.g., Casey, 2012 WL 502886, at * 4 ("it is clear that to the extent they did suffer some injury, that injury was a result of the Plaintiffs' own failure to keep current on their mortgage").

### b.   Matthews' Claim For Violation Of The Maryland Fraud Protection Act (Count III) Also Cannot Be Sustained As A Matter Of Law.

95.   Like the MCPA, the MFPA only permits a private plaintiff to pursue "an action for damages incurred *as the result of* a violation" of the MFPA.  MD CODE REAL PROP. § 7-406(a) (emphasis added).  As discussed above, and given Matthews' undeniable failure to keep

36

current on his mortgage, the Counter-Complaint lacks any allegation that, if true, would entitle Matthews to recover monetary damages.  As such, his MFPA claim also fails as a matter of law.

## VI.    SUMMARY

96.    For the reasons set forth above, the Claim is barred under the doctrine of res judicata and otherwise fails to state a basis for liability against GMACM or any other Debtor. Unless the Claim is disallowed and expunged in its entirety, Matthews—who does not hold a valid claim against the Debtors—would be entitled to recover from the Borrower Trust unjustifiably to the detriment of the Borrower Trust and its constituents.

## VII.    NOTICE

97.    The Borrower Trust has provided notice of this Objection in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141], and the Procedures Order.

## VIII.    CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of an order, substantially in the form of Exhibit 1 attached hereto, (i) disallowing and expunging the Claim and (ii) granting such other and further relief as is just and proper.

*[Signature Page to Follow]*

ny-1140216

Dated:  June 12, 2014
        New York, New York

/s/  Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards
MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*

BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street, NW, Suite 1350
Washington, DC 20036
Telephone: (202) 393-7150
Facsimile: (202) 347-1684
Steven A. Pozefsky
Eric A. Frechtel

*Special Counsel for The ResCap Borrower Claims Trust*

38