1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


RESIDENTIAL CAPITAL, LLC, et al.,


            Debtors.


- - - - - - - - - - - - - - - - - - - -x


            United States Bankruptcy Court

            One Bowling Green

            New York, New York


            June 10, 2014

            10:06 AM


B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

1

2  The ResCap Borrower Claims Trust's Sixty - Second Omnibus

3  Objection to Claims (No Liability Borrower Claims)

4

5  The ResCap Liquidating Trust's Sixty-Third Omnibus Claims

6  Objection (Purported Administrative Claims)

7

8  The ResCap Liquidating Trust's Sixty-Fourth Omnibus Claims

9  Objection (No Liability Tax Claims)

10

11  The ResCap Liquidating Trust's Sixty-Fifth Omnibus Claims

12  Objection (No Liability Claims)

13

14  ResCap Liquidating Trust's Sixty-Sixth Omnibus Objection to

15  Claims (I) Expunging Amended and Superseded Claims; (II)

16  Redesignating and Allowing Claims; (III)Reducing and Allowing

17  Claims; and (IV) Redesignating, Reducing and Allowing Claims

18

19

20  Transcribed by:  Penina Wolicki

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4      Attorneys for Post-Effective Date Debtors,

5      ResCap Liquidating Trust and ResCap Borrower

6      Claims Trust

7      250 West 55th Street

8      New York, NY 10019

9

10  BY:   JORDAN A. WISHNEW, ESQ.

11      MERYL L. ROTHCHILD, ESQ.

12

13

14  KRAMER LEVIN NAFTALIS & FRANKEL LLP

15      Attorneys for ResCap Liquidating Trust

16      1177 Avenue of the Americas

17      New York, NY 10036

18

19  BY:   JOSEPH A. SHIFER, ESQ.

20

21

22

23

24

25

```
 1
 2   BLANK ROME LLP
 3         Attorneys for PNC Bank
 4         1201 Market Street
 5         Suite 800
 6         Wilmington, DE 19801
 7
 8   BY:   ALAN ROOT, ESQ. (TELEPHONICALLY)
 9
10
11   TOMAS DIAZ (TELEPHONICALLY)
12         Pro Se
13
14
15   MICHELLE LAWSON (TELEPHONICALLY)
16         Pro Se
17
18
19   ALSO PRESENT: (TELEPHONICALLY)
20         JOSEPH MORROW, Kurtzman Carson Consultants
21
22
23
24
25
```

1                      P R O C E E D I N G S

2              THE COURT:  All right, please be seated.  We're here

3    in Residential Capital, number 12-12020.  Mr. Wishnew?

4              MR. WISHNEW:  Good morning, Your Honor.  Jordan

5    Wishnew, Morrison & Foerster, for the ResCap Borrower Claims

6    Trust.

7              Your Honor, the first contested matter on today's

8    agenda begins on the bottom of page 6.

9              THE COURT:  What I'd like to do, Mr. Wishnew, let's

10   start with the sixty-fourth --

11             MR. WISHNEW:  Okay.

12             THE COURT:  -- sixty-forth, sixty-fifth, and sixty-

13   sixth omnibus objections, which -- as to which no responses

14   were filed.  Okay?

15             MR. WISHNEW:  Very good, Your Honor.  Let me cede the

16   podium to my colleague, Ms. Rothchild.

17             THE COURT:  Thank you very much.

18             MS. ROTHCHILD:  Good morning, Your Honor.  So next --

19             THE COURT:  Just make your appearance.

20             MS. ROTHCHILD:  Oh, of course.  Meryl Rothchild of

21   Morrison & Foerster on behalf of the ResCap Liquidating Trust.

22             THE COURT:  Thank you.  Good morning.

23             MS. ROTHCHILD:  Good morning.  Next on the agenda is

24   the -- I believe item number 4, the Trust's sixty-fourth

25   omnibus objection to claims, no-liability tax claims, filed at

RESIDENTIAL CAPITAL, LLC, ET AL.                                    6

1   docket number 6846, which is going forward on an uncontested

2   basis.

3           Your Honor, through the sixty-fourth omnibus claims

4   objection, the trust seeks to expunge a total of fifty-eight

5   asserted tax claims.  In support of the objection, the trust

6   submitted a declaration by Deanna Horst, chief claims officer

7   of the ResCap Liquidating Trust, attached as Exhibit 1A to the

8   objection, and a declaration by Joseph Morrow of KCC, in

9   connection with the late-filed tax claim attached as Exhibit 1B

10  to the objection.

11          Ms. Horst is in court today and can answer any

12  questions the Court has.  And I believe Mr. Morrow has appeared

13  telephonically.

14          As the Court is aware from the papers, the purpose of

15  this objection is to disallow and expunge tax claims for which

16  the estates are not liable, as set forth in Exhibits A through

17  C attached to the proposed order.  Specifically, the trust

18  seeks to disallow and expunge, on Exhibit A, a late-filed

19  claim, filed after the governmental bar date of November 30th,

20  2012.  As set forth in the Morrow declaration, proper service

21  was provided to this claimant, and further, pursuant to Article

22  8(b) of the confirmed plan, any late-filed claim such as this

23  one, is deemed automatically disallowed without need for

24  further court order.

25          On Exhibit B, are asserted tax claims for which, upon

 1  review of the debtors' books and records, indicate no liability

 2  on the part of the debtors.  For example, the debtors were not

 3  owners of the property at issue for the time period during

 4  which the tax was asserted.

 5          On Exhibit C, there are tax claims that have already

 6  been paid and satisfied by the debtors, it states, in the

 7  ordinary course of business.

 8          Responses to the objection were due on May 22nd, and

 9  there was only one formal response docketed, the one filed by

10  Marion County Treasurer at docket number 7000.  The Trust and

11  Marion County have effectively resolved the objection as to the

12  Marion County tax claim, but have agreed to adjourn the matter

13  to July 30th, just so that the parties can properly record the

14  owner of certain deeds at issue.  The notice of this

15  adjournment was filed at docket number 7049.

16          In addition, the Trust had informal discussions with

17  claimants Galveston County and the City of El Paso.  As a

18  result of those discussions, the Trust filed a notice of

19  withdrawal of the sixty-fourth omnibus claims objection as to

20  Galveston County at docket number 7048.  The parties have

21  agreed that maintaining the objection as to the City of El Paso

22  tax claim is appropriate.  So as all matters were resolved, the

23  Trust did not file a reply, and unless the Court has any

24  questions, the Trust requests that the sixty-fourth omnibus

25  claims objection be sustained.

1          THE COURT:  All right.  Does anybody else wish to be

2     heard with respect to the sixty-fourth omnibus objection?

3          All right.  The sixty-fourth omnibus objection of the

4     ResCap Liquidating Trust seeks an order disallowing and

5     expunging the claims listed on Exhibits A, B and C.  The

6     objection is uncontested and is proceeding as to all claimants

7     except for the Marion County Treasurer, as to which it's

8     adjourned.  Additionally, the trust withdrew its objection to

9     the claim of Galveston County.

10          In support of the objection, the Trust attached the

11     declarations of Deanna Horst and P. Joseph Morrow.  The Court

12     has reviewed the objection and the supporting declarations and

13     exhibits.  The objection is well-taken.

14          For the reasons stated in the objection, the sixty-

15     fourth omnibus objection to claims is sustained and the claims

16     are expunged other than with respect to the claims by Marion

17     County and Galveston County.

18          MS. ROTHCHILD:  Thank you, Your Honor.  Next on the

19     agenda is item number 5, the Liquidating Trust's sixty-fifth

20     omnibus claims objection, no-liability claims, filed at docket

21     number 6847, which is also going forward on an uncontested

22     basis.

23          Through the sixty-fifth omnibus claims objection, the

24     Trust seeks to expunge a total of fifty-one claims that each

25     failed to sufficiently demonstrate that they are valid claims

1    for which the debtors' estates are liable.

2            In support of the objection, the Trust submits the

3    declaration by Deanna Horst, again, chief claims officer of the

4    Liquidating Trust, attached as Exhibit 1 to the objection.

5            Specifically, the Trust seeks to disallow and expunge

6    those claims on Exhibit A where a review of the debtors' books

7    and records show no amounts owing from the debtors' estates,

8    for example, because the claimant is not a documented vendor

9    with the debtors, or provided no invoices in connection with

10   the claimant's purported claim, or the claimant failed to

11   attach invoices and the like.

12           On Exhibit B, claims that were -- Exhibit B lists

13   claims that were wrongly asserted against a debtor entity where

14   such claims are the liabilities of nondebtor entities.

15           On Exhibit C, claims -- Exhibit C includes claims that

16   have already been paid and satisfied by the debtors in the

17   ordinary course of business.  And lastly, on Exhibit D, there's

18   a list of redundant claims that are substantially duplicative

19   of at least one other claim filed by that same claimant.  The

20   trust seeks to disallow these claims to avoid having those

21   claimants receive an improper double recovery from the debtors'

22   estates.

23           Responses to this objection were also due May 22nd.

24   There were no responses received in connection with this

25   objection.  So unless the Court has any further questions, the

1  Trust requests that the Court sustain the sixty-fifth omnibus

2  claims objection.

3       THE COURT:  Does anyone wish to be heard with respect

4  to the sixty-fifth omnibus objection to claims?

5       All right, hearing no one, the sixty-fifth omnibus

6  objection of the Trust seeks and order disallowing and

7  expunging the claims listed on Exhibits A, B, C, and D.  The

8  objection is proceeding as to all claimants, and is unopposed.

9       In support of the objection, the trust submitted the

10  declaration of Deanna Horst.  The Court has reviewed the

11  objection and the supporting declaration.  The objection is

12  well-taken.  For the reasons stated in the objection, the

13  sixty-fifth omnibus objection to claims is sustained and the

14  claims are expunged.

15       MS. ROTHCHILD:  Thank you, Your Honor.  The next

16  claims matter on the agenda for today is number 6, the

17  Liquidating Trust's sixty-sixth omnibus objection to claims:

18  1) expunging amended and superseded claims; 2) redesignating

19  and allowing claims; 3) reducing and allowing claims; and

20  4) redesignating, reducing, and allowing claims, filed at

21  docket number 6848, which is going forward on an uncontested

22  basis.

23       Your Honor, through the sixty-sixth omnibus claims

24  objection, the trust seeks to expunge sixty claims as amended

25  and superseded claims, and seeks to modify the other twenty-

1    four claims listed on Exhibits B through D of the -- appended

2    to the proposed order.

3            Such modification includes redesignating claims to the

4    appropriate debtor entity and allowing such claims, so as to

5    accurately reflect the liability for each debtor group, if a

6    debtor is liable for such claims; to reduce and allow claims

7    where the filed proof of claim asserts that the debtor is

8    liable for an amount greater than what is reflected in the

9    debtors' books and records, and four, effectively combining the

10   second and third, the redesignation, as well the reduction and

11   allowance of certain asserted claims.

12           In support of the objection, the Trust submitted a

13   declaration by Ms. Horst attached as Annex 1 to the objection.

14   Responses were due on May 22nd.  There was one formal response

15   docketed and that was filed by the Law Office of Robert C.

16   Dougherty at docket number 6965.

17           The Trust and the Law Office of Robert C. Dougherty

18   has resolved the objection as to the claimant's claim and have

19   agreed to reflect a modified amount of the reduced and allowed

20   claim asserted by this law firm -- by this claimant.

21   Effectively, claim number 576 shall be reduced from $2,279.23

22   to $1,666.23.  The trust will submit an updated exhibit to be

23   included in the proposed order, and we'll submit that to the

24   Court.

25           Also, based on informal discussions with claimant Wier

1   & Partners LLP, the Liquidating Trust filed a notice of

2   withdrawal as to the sixty-sixth objection as to this claim at

3   docket number 6995.  The removal of this claim will also be

4   reflected in an updated exhibit to the proposed order.

5         I believe that Kramer Levin, as co-counsel to the

6   Liquidating Trust, has some comments to note on the record in

7   connection with this omnibus objection.

8         THE COURT:  Okay.  Thank you, Ms. Rothchild.

9         MR. SHIFER:  Good morning, Your Honor.  Joseph Shifer

10  with Kramer Levin, co-counsel to the Liquidating Trust.

11        THE COURT:  Good morning.

12        MR. SHIFER:  Good morning, Your Honor.  We filed this

13  objection together with the Morrison & Foerster firm.  In

14  connection with the objection, we seek the expungement of claim

15  number 3574, by PNC Mortgage, as it is superseded by claim

16  number 6410.  We received an informal response by PNC, and in

17  consensual resolution of the response, we agreed on language to

18  be read into the record.  If I can do that?

19        THE COURT:  Sure.  Go ahead.

20        MR. SHIFER:  Okay.  Notwithstanding the expungement of

21  PNC's original claim, claim number 3574, from the claims

22  register, PNC's surviving claim, claim number 6410, to the

23  extent that it is a valid amendment of the original claim,

24  shall be deemed to be timely filed as of the date of the

25  original claim.  All other rights and arguments of the parties

1  with respect to PNC's surviving claim, including the validity

2  of the amendment, are hereby reserved.

3          THE COURT:  All right.  Thank you very much.

4          MR. SHIFER:  Thank you, Your Honor.

5          THE COURT:  Ms. Rothchild, anything else?

6          MS. ROTHCHILD:  No, Your Honor.  With that, the Trust

7  respectfully requests that the Court sustain the sixty-sixth

8  omnibus claims objection.

9          THE COURT:  All right.  Does anybody wish to be heard

10 with respect to the sixty-sixth omnibus objection to claims?

11         All right, the sixty-sixth omnibus objection of the

12 Trust seeks an order disallowing and expunging the claims

13 listed on Exhibit A and modifying, redesignating, and reducing

14 and allowing claims listed on Exhibits B, C, and D.  With the

15 exceptions noted by counsel, the objection is proceeding as to

16 all other claimants, and is unopposed.

17         In support of the objection, the trust submitted the

18 declaration of Deanna Horst.  The Court has reviewed the

19 objection and the supporting declaration.  The objection is

20 well-taken.  For the reasons stated in the objection, the

21 sixty-sixth omnibus objection to claims is sustained.  The

22 claims listed on Exhibit A are expunged.  The claims listed on

23 Exhibits B, C, and D, are reclassified, reduced and allowed in

24 the manner provided in the objection.  And I understand you'll

25 be submitting revised exhibits to reflect the agreements that

1    you've recited on the record.

2            MS. ROTHCHILD:  That's correct, Your Honor.  Thank

3    you.

4            THE COURT:  Thank you very much.

5            MR. SHIFER:  May I be excused, Your Honor?

6            THE COURT:  Yes, you can.

7            MR. SHIFER:  Thank you.

8            THE COURT:  Thank you very much.

9            MR. WISHNEW:  Just for the record, Your Honor. Jordan

10   Wishnew, Morrison & Foerster, for the ResCap Borrower Claims

11   Trust.

12           Going back to the bottom of page 6 of today's agenda,

13   item 2 is the Borrower Trust's sixty-second omnibus claims

14   objection for certain no-liability claims.

15           The objection identifies thirty claims that the

16   Borrowers Trust assert should be expunged and disallowed on the

17   basis that those claims fail to state a valid liability against

18   the debtors on account of any sort of -- on account of their

19   pre-petition actions.  Five responses were received to that

20   objection.  One matter is being adjourned, as reflected on

21   today's agenda.  The other four are going forward today.

22           With regard to the responses, we'll start with the

23   response of Scott and Linda Ewing, which is docketed at 6974.

24   This is a claim -- claim number 2152, a 100,000-dollar general

25   unsecured claim.  And essentially, the claimant asserts in its

 1  response that GMAC Mortgage overvalued his home.

 2          THE COURT:  Before you go on for a minute.

 3          MR. WISHNEW:  Sure.

 4          THE COURT:  Is anyone appearing on behalf of the

 5  Ewings?

 6          Go ahead, Mr. Wishnew.

 7          MR. WISHNEW:  Thank you, Your Honor.  And while the

 8  allegation of overvaluing by GMAC Mortgage is made, the problem

 9  is that there's no evidence in the record to support that

10  argument.  GMAC Mortgage serviced this loan.  It was originated

11  in -- by Ally Bank.  And the debtors ultimately transferred

12  their servicing rights to Ocwen.

13          Now, I understand from the response that the Ewings

14  are, I can say, disappointed with the way Ocwen has been

15  administering the loan.  But there's no liability for GMAC

16  Mortgage for Ocwen's administration of the loan, subsequent to

17  the time that servicing rights were transferred.

18          So on the basis that there has not been a stated

19  liability that could exist against GMAC Mortgage, the Borrowers

20  Trust would ask that this claim be expunged for the reasons set

21  forth in the objection.

22          THE COURT:  All right.  I take it no one is appearing

23  on behalf of the Ewings?

24          All right, with respect to the -- first off, with

25  respect to the sixty-second omnibus objection, which is filed

1    at ECF docket number 6815, in support of the objection, the

2    Trust attached the declarations of Deanna Horst and Norman

3    Rosenbaum.  The Trust also attached the form of the request

4    letters that it sent to all claimants.  And following

5    oppositions by four claimants, the Trust submitted a reply

6    which is at ECF docket number 7062, supported by the

7    supplemental declaration of Deanna Horst, which is at ECF

8    docket 7062-1.

9          With respect to the Ewing claim, claim number 2152,

10   Scott and Linda Ewing filed a 100,000-dollar claim against

11   debtor GMAC Mortgage LLC, which stated the basis as

12   "overestimated homes value/overcharged".

13         In support of their claim, the Ewings attached a

14   mortgage account statement issued by GMAC-M indicating a

15   $1,079.58 payment due by November 1, 2012, with a principal

16   balance of $199,047.58.  Responding to a request letter, the

17   Ewings further alleged that GMAC-M refused to reduce the

18   principal balance of their loan through a loan modification.

19         In its objection, the Trust treats this claim as

20   asserting liability for origination and loan modification

21   issues, and the Trust also objects on general no-liability

22   grounds.

23         The loan was originated by Ally Bank.  GMAC-M bought

24   the Ewings' loan from Ally Bank on or about March 3rd, 2011,

25   and then transferred the loan to Fannie Mae, on or about March

1   29th, 2011.  GMAC-M also serviced the Ewings' loan from March

2   3, 2011 until February 16, 2013, when it transferred the

3   servicing rights to Ocwen Loan Servicing.

4         To the extent the claim asserts liability for

5   origination issues, such as overestimating the property value,

6   the Trust notes that Ally Bank originated the loan, not GMAC-M.

7   And to the extent the claim asserts liability for refusal to

8   modify the Ewings' loan, the Trust states that the Ewings

9   contacted GMAC-M about a principal reduction on June 1, 2012,

10  but GMAC-M informed the Ewings that they did not qualify for

11  HAMP modification, because the property is not owner-occupied.

12        As already mentioned, the Trust sent a letter

13  requesting additional information from the Ewings, and they

14  responded.  And in their response to the debtors' request

15  letter, the Ewings submitted more documentation in support of

16  their claim.  They claim that their home still has a negative

17  equity balance, even after they put down 50,000 dollars.

18        They state that when they asked GMAC-M to have their

19  principal reduced, Mr. Ewing was ill and could not continue to

20  work.  GMAC-M declined to modify their loan.  Mrs. Ewing

21  describes being forced to move from their Florida residence to

22  the Georgia home, and shortly after, she asserts that she

23  suffered a heart attack.  They continued to ask -- the Ewings

24  continued to ask GMAC-M for a loan modification, but GMAC-M

25  continued to refuse.

1         The Ewings filed an opposition to the objection which

2    is at ECF 6974.  The opposition argues that GMAC-M did, in

3    fact, overvalue the price of our home and thus caused us to

4    lose tens of thousands of dollars.  The Ewings assert that due

5    to health reasons, they were forced to sell their property at a

6    great loss, partly due to the overvaluation and partly because

7    Ocwen refused to refinance the Ewings' loan, because they are

8    "a debt collection agency."  That's according to Mrs. Ewing.

9         The debtors filed a reply which is at ECF 7062.  The

10   Trust emphasizes that GMAC-M did not originate the Ewings' loan

11   so it cannot be responsible for overvaluing the Ewings'

12   property.  As for the modification issues -- loan modification

13   issues, the Trust attaches the servicing notes for the Ewings'

14   loan.  It's attached as Exhibit G to the supplemental Horst

15   declaration, which indicates that on June 1, 2012, the Ewings

16   told GMAC-M that they had been trying to move into the Georgia

17   property since 2008, but they had been unable to sell their

18   Florida property, so they only went to the Georgia property

19   three or four times a year.

20        GMAC-M informed the Ewings that this meant that they

21   did not qualify for HAMP modification, because this wasn't an

22   owner-occupied residence.  And they also did not qualify for a

23   refinance, because the property was under water.

24        The Court has carefully reviewed the objection, the

25   response that the Ewings made to the request for additional

1   information, the Ewings' opposition, and the Trust's reply.

2   The Court sustains the objection to the Ewings' claim.  The

3   Trust responded to the claim with evidence that it did not

4   originate the Ewings' loan so it cannot be held liable for

5   overvaluing the Ewings' property.

6        The Trust also provided evidence that it responded to

7   the Ewings' request for loan modification by informing the

8   Ewings that they did not qualify under the relevant statute.

9   Even if the Ewings had qualified, the evidence indicates that

10   they did not submit adequate documentation for GMAC-M to

11   process a loan modification before the servicing rights were

12   transferred to Ocwen.

13        So I am sustaining the objection.  But Mr. Wishnew, I

14   would request that you or one of your colleagues contact the

15   Ewings and see if you can put them in touch with Ocwen's

16   attorneys to learn precisely what Ocwen needs to consider the

17   Ewings for a loan modification.

18        MR. WISHNEW:  I will --

19        THE COURT:  That won't be part of the order, but I am

20   directing that --

21        MR. WISHNEW:  Understood, Your Honor.

22        THE COURT:  -- that be done.

23        MR. WISHNEW:  Absolutely.

24        THE COURT:  Okay.  So that deals with the Ewings'

25   claim, which is claim 2152.  So the objection is sustained.

1          MR. WISHNEW:  Thank you very much, Your Honor.

2          THE COURT:  And the claim is expunged.  Go ahead.

3          MR. WISHNEW:  Thank you.  The next contested matter

4    within the sixty-second omnibus claims objection is that of the

5    claim of Mr. Cozzolino, claim 1372, a general unsecured claim

6    in the amount of 193,274 dollars.

7          THE COURT:  All right.  Is anyone appearing for Mr.

8    Cozzolino?

9          Go ahead, Mr. Wishnew.

10         MR. WISHNEW:  Thank you, Your Honor.

11         Again, Your Honor, this is a loan in which the debtors

12   only touched the loan for approximately five weeks in 2007.

13   The debtors serviced the loan during that time.  They never

14   owned the loan.  It was originated by MortgageIT.

15         THE COURT:  When was it originated?

16         MR. WISHNEW:  May 17th, 2007, Your Honor.

17         THE COURT:  Go ahead.

18         MR. WISHNEW:  And essentially, what Mr. Cozzolino

19   seems to take issue with is the use of the MERS system and what

20   he believes to be purported illegal liens imposed by MERS

21   against his property.

22         Essentially, Your Honor, the Borrowers Trust objection

23   is that the issues raised by Mr. Cozzolino in his claim and in

24   his response go to the actions of nondebtor entities.  There's

25   no specific action within the five-week time frame that we

1    serviced this loan that Mr. Cozzolino points to and says the

2    debtors harmed me.  So in that regards, for the reasons stated

3    in both the objection and our reply, it's the Borrowers Trust's

4    position that the claim should be disallowed and expunged.

5            THE COURT:  I'm going to take it under submission and

6    issue a written order.

7            MR. WISHNEW:  Understood, Your Honor.

8            The next contested matter before the Court in regards

9    to the sixty-second omnibus objection, is that of Tomas Diaz.

10   I believe he is on the phone, Your Honor.

11           THE COURT:  Mr. Diaz, are you on the phone?

12           MR. DIAZ:  Yes.  Hello.

13           THE COURT:  Okay, thank you.  I'll give you an

14   opportunity to speak after Mr. Wishnew argues, okay?

15           MR. DIAZ:  Okay.

16           THE COURT:  Go ahead, Mr. Wishnew.

17           MR. WISHNEW:  Thank you, Your Honor.

18           Your Honor, this deals with a claim (sic) that was

19   originated by Platinum Capital Group back in 2006.  The debtors

20   subsequently purchased this loan and delivered it into a

21   securitization within a week, but continued servicing the loan

22   through April 1st, 2008, when Aurora Loan Servicing took over

23   servicing of this loan.  So the debtors have had no connection

24   with this loan since April 1st, 2008, at the latest.

25           The claimant, according to his submissions, is seeking

1   the 400,000-dollar down payment he made on this property back

2   from the debtors, but still -- it's the Borrowers Trust

3   position that there is no valid basis for any sort of liability

4   against a debtor entity here.  There are allegations the loan

5   was not transferred, sold, or assigned properly.  But both the

6   mortgage and the note were -- and have been -- held by Deutsche

7   Bank, especially at the time that foreclosure proceedings were

8   begun against Mr. Diaz.

9          In addition, he complains against the fact that

10  there's a lost note affidavit.  And all that basically does is

11  that represents that at a certain point in time, the debtors

12  didn't -- could not actually find a copy of the note and

13  indicated that the note with prior endorsements from Platinum

14  to RFC and from RFC to Deutsche was lost, but that copies were

15  available.

16         So basically, while there are concerns about possibly

17  transfers within MERS, the fact of the matter is that the

18  documents line up.  The documents show that these properties --

19  that both the note and the mortgage properly transferred among

20  entities; that to the extent the debtors transferred their

21  interest in the mortgage, it was done properly.  To the extent

22  that they transferred the interest in the note, it was done

23  properly.  And there is no specific allegation against

24  Residential Funding Corporation for the period of time in which

25  it dealt with the loan, of any wrongdoing.

1           If there are concerns in that Aurora Loan Servicing,

2    who dealt with the loan after April 2008, or other subsequent

3    servicers have not dealt with Mr. Diaz to his satisfaction,

4    that's between him and those parties.  But with regards to his

5    dealings with the debtor entities, there's no specific evidence

6    of wrongdoing or liability against a debtor entity.  And so for

7    those reasons, we'd ask that the claim be expunged.

8           THE COURT:  Let me ask you some questions.

9           MR. WISHNEW:  Sure.

10          THE COURT:  With -- the papers include a copy of a

11   note --

12          MR. WISHNEW:  Correct.

13          THE COURT:  -- endorsed from Platinum to RFC and from

14   RFC to Deutsche Bank.

15          MR. WISHNEW:  Yes, Your Honor.

16          THE COURT:  And yes, I've seen the affidavit of lost

17   note.  The note that's included in the papers, is that a

18   copy -- an exact copy of the note, and it was just that the

19   original couldn't be found?  Can you -- or was it a

20   replacement --

21          MR. WISHNEW:  I --

22          THE COURT:  -- actually endorsed by the parties at a

23   subsequent time?  Can you tell me?

24          MR. WISHNEW:  I believe it's as you posited in the

25   first instance, that an original could not be --

1          THE COURT:  The photocopy that's included in the

2     papers --

3          MR. WISHNEW:  That's correct, Your Honor.

4          THE COURT:  -- is a photocopy of the actual note,

5     endorsed first from Platinum to RFC and then from RFC to

6     Deutsche Bank.  Is that what you're telling me?

7          MR. WISHNEW:  That's correct, Your Honor.

8          THE COURT:  Okay.

9          MR. WISHNEW:  And so that there's two very -- let

10    me -- two identical copies of the note.  There's one if you

11    were to look at it at Exhibit J to Ms. Horst's declaration in

12    support of the reply.  That's a very clear copy of the note.

13    And then you also have the copy included among Mr. Diaz's

14    diligence response.  That's at Exhibit A3 to Ms. Horst's

15    declaration.  Again, same thing.  You've got the exact same

16    endorsements for the same adjustable-rate note.

17         So I think it's -- the evidence is clear that there

18    was certainly a transfer from Platinum to RFC, RFC to Deutsche.

19    With regards to a certain period of time when the original note

20    could not be produced, there was a lost note affidavit.

21         And I would also add, for the record, that the lost

22    note affidavit, which is also included among Mr. Diaz's

23    response, specifically says that the RFC representative -- that

24    states that the note, a copy of which is attached in a true and

25    correct photocopy of the front and back, has been lost,

RESIDENTIAL CAPITAL, LLC, ET AL.                    25

1  misplaced or destroyed and cannot be produced.  So --

2          THE COURT:  Who signed the affidavit?

3          MR. WISHNEW:  According to the signature block, it's

4  S. Seidel, and assistant secretary at Residential Funding

5  Company, LLC.

6          THE COURT:  Okay.

7          MR. WISHNEW:  And I would just also add for the

8  record, that that same lost note affidavit states in bold and

9  in caps in the middle of the page, "In the event the original

10 note is hereafter located, Residential Funding Company, LLC

11 shall deliver it to the appropriate custodian.

12         THE COURT:  All right.  Let me ask a couple of

13 additional questions.  In the papers that are before me, there

14 are copies of two recorded assignments of the mortgage.  The

15 first assignment, it's at ECF docket 7013, page 12 of 30; and

16 it was recorded on May 15th, 2006 and shows an assignment of

17 the mortgage from MERS as nominee for Platinum Capital Group to

18 Deutsche Bank Trust Company Americas as trustee.

19         The second assignment of mortgage which was recorded

20 appears at ECF docket 7013, page 24 of 30.  And again, it says

21 that it's an assignment of mortgage from MERS as nominee for

22 Platinum Capital Group to Deutsche Bank, and it is dated

23 October 28, 2013.  Why are there two assignments of a mortgage

24 from Platinum to Deutsche Bank?

25         MR. WISHNEW:  I would only posit, Your Honor, that --

RESIDENTIAL CAPITAL, LLC, ET AL.                    26

1           THE COURT:  Have you inquired?

2           MR. WISHNEW:  I have not specifically inquired as to

3    that question, Your Honor.  I certainly can.

4           THE COURT:  Ms. Horst is here.  Is she --

5           MR. WISHNEW:  May I --

6           THE COURT:  -- can you confirm with her and see

7    whether she has -- I mean, look, you argue and may well be

8    correct that if Mr. Diaz has a problem about clouds on title or

9    anything that happened when none of the debtors were on the

10   scene, he's complaining about the wrong party.

11          MR. WISHNEW:  Sure.

12          THE COURT:  Okay.  The debtors were on the scene when

13   the first assignment was recorded in May 2006.  The assignment

14   form says "return to Residential Funding Company".  And I guess

15   my question, was there some defect in the assignment that

16   someone subsequently tried to cure?  So why don't you confer

17   with Ms. Horst and see whether there's any explanation for why?

18   Let me just -- adding to that, to my questions -- give me a

19   second.

20       (Pause)

21          THE COURT:  In 2007, Deutsche Bank initiated a

22   foreclosure action in Florida State Court.  My 2008 order (and

23   Deutsche Bank's ex parte motion to reset foreclosure sale) and

24   in connection with that, Deutsche Bank asserted that it sold

25   the loan to Aurora and somehow that doesn't mesh with what

RESIDENTIAL CAPITAL, LLC, ET AL.                    27

1    appears that Deutsche Bank asserted ownership to the loan

2    through at least July 2012 as trustee for the RALI trust.

3            And sort of in between these events in September 6th,

4    2007, there was an affidavit from Cheryl Samons, who is an

5    attorney for Homecomings.  It was filed on behalf of Deutsche

6    Bank and Ms. Samons was an attorney with the Law Office of

7    David J. Stern, as to which we've had prior discussion at an

8    earlier hearing.  Mr. Stern has been disbarred for various

9    misconduct.

10           Really, I come back to why are there two assignments

11   of the mortgage from Platinum to Deutsche Bank?  Was the first

12   assignment defective and is Ms. Horst able to supply any

13   information about that?  Why don't you confer with her?

14           MR. WISHNEW:  Okay.  If I could just step away from

15   the podium for a moment.

16           THE COURT:  Yes, go ahead.  Sure.

17           MR. WISHNEW:  Thank you, Your Honor.

18       (Pause)

19           MR. WISHNEW:  Your Honor, I've had a chance to confer

20   with Ms. Horst.  Unfortunately, I don't have a good answer for

21   you as to why there are multiple -- or I'm sorry, two

22   assignments of mortgages that are nearly identical which occur

23   at two different points in time.  I'd only add -- I could

24   only --

25           THE COURT:  At least they're between the same parties.

1    MR. WISHNEW:  They are between the same parties.  And

2  consistent with Mr. Diaz's mortgage in which he acknowledges

3  that MERS is -- sorry, let me just get a copy of the mortgage

4  real quick.  In paragraph (c) on page 1 of his mortgage, he

5  does specifically acknowledge that "MERS is the mortgagee under

6  the security interest and MERS is a separate corporation acting

7  solely as nominee for lender and lender's successors and

8  assigns."

9         So MERS' role in connection with Mr. Diaz's loan is

10  clear.  The specific reason for Deutsche Bank wanting to take

11  multiple assignments of the loan at different points --

12         THE COURT:  No, this is the mortgage not the loan.

13         MR. WISHNEW:  Oh, I'm sorry.  I'm sorry, the

14  mortgage -- at different points in time, we would have to go

15  back and try and reach out to them to find that out.

16         THE COURT:  Okay.  All right.  Let me see if I have

17  any other questions for you before Mr. Diaz speaks.

18     (Pause)

19         THE COURT:  All right.  Let me hear from Mr. Diaz.  Go

20  ahead, Mr. Diaz.

21         MR. DIAZ:  Yes, Your Honor, my name is Tomas Diaz.

22  Good morning.

23         THE COURT:  Yes, go ahead.

24         MR. DIAZ:  Okay.  Your Honor, I have a clouded title.

25  Nobody give it to me, the answer to that.  It's impossible to

1   sell the property.  I lost everything because they don't have
2   original papers and they use MERS to fabricate assignment.
3   This title puts too much my life down.  I interesting to pay if
4   they give it to me original paper and the clear papers.  No
5   problem papers.  That's my position.  I lost everything because
6   they not giving to me the right papers.  They used David Stern.
7   They used Mr. -- counsel, Marshall Watson.  He's convicted,
8   conviction of guilty.  They -- Residential Capital Funding used
9   this person as counselors.  They involved in fraud papers.  And
10  that's the reason because the paper no appear.  The original
11  paper is lost.  Somebody drop it.  And I want my fee for that.
12  Thank you.
13          THE COURT:  Mr. Diaz, let me ask you a few questions,
14  okay?
15          MR. DIAZ:  Yes.
16          THE COURT:  So you did take out the loan from
17  Platinum, correct?
18          MR. DIAZ:  Yes, I got them the mortgage.
19          THE COURT:  Okay.  And when you took the loan from
20  Platinum, you signed a promissory note.  Is that correct?
21          MR. DIAZ:  I think so.
22          THE COURT:  Okay.
23          MR. DIAZ:  But I don't have original papers on it.
24          THE COURT:  All right.  What I'm having --
25          MR. DIAZ:  There's nothing -- I'm sorry.

1          THE COURT:  Okay.  What I'm having some difficulty

2    with is understanding why you think title is clouded.  I

3    understand that there are two recorded assignments of the

4    mortgage -- and I asked Mr. Wishnew about that -- one from 2006

5    and the second one from 2013.  But both of those recorded

6    assignments are for the same mortgage and between -- and the

7    assignments are between the same parties:  Platinum, from whom

8    you obtained your original loan, and Deutsche Bank, which holds

9    the note and mortgage as trustee for a securitization trust.

10          So when you say that somehow title is clouded, I don't

11    understand why you believe that to be the case because --

12          MR. DIAZ:  Well --

13          THE COURT:  -- the record seems to show that both the

14    note and the mortgage are held by Deutsche Bank as trustee for

15    a trust.  Go ahead.

16          MR. DIAZ:  Okay.  I think that's a clouded title

17    because we have it -- we don't have the original copy, original

18    paper for the notes and loan notes.  Second one, the people

19    involved, in that transaction, specifically counsel man, David

20    Stern and Marshall Watson, their involvement in difficult

21    times, they are conviction of guilty for fabricate papers and

22    doing bad things.  They be party to the Residential Capital

23    Funding.

24          And also, they sell -- Deutsche sells the loan to

25    another loan service according to the -- they say because I

RESIDENTIAL CAPITAL, LLC, ET AL.                    31

1    don't have a record of that.  Only I have the records in the

2    corporate year.  That's when we started to defend in 2006 like

3    when we want to see their paper, original paper.  We want to

4    see the transfers.  We want to see clear assignments, and they

5    no show.  They show whatever they wanted.  They wanted --

6    fabricated some assignments and you see in 2013, again they

7    presented this on this mortgage.

8              THE COURT:  Let me ask you this.

9              MR. DIAZ:  How they -- how did they lose -- I'm sorry.

10             THE COURT:  No.  Let me ask you a couple of questions

11   because you originally had bought the property for 1.4 million

12   dollars with a 400,000-dollar down payment, and you had

13   borrowed a million dollars from Bank United.  Is that correct?

14             MR. DIAZ:  Correct.

15             THE COURT:  All right.  And then in April 2006, you

16   refinanced the mortgage with Platinum Capital Group, correct?

17             MR. DIAZ:  Correct.

18             THE COURT:  And I think I've already asked you this,

19   at that time you signed a promissory note for the mortgage and

20   you signed the mortgage documents, correct?

21             MR. DIAZ:  That's correct.

22             THE COURT:  Okay.  And in your papers -- and I must

23   say, your papers were very thorough -- you attached about 140

24   pages of documents.

25             MR. DIAZ:  Yes, I'm sorry for that.

1       THE COURT:  No, don't be sorry.  You obviously kept

2  your records.  That's nothing to be sorry about.  I guess my --

3  so when you say you don't have records of the assignments or of

4  the note, so I understand you raise the issue about the lost

5  note and there was a lost note affidavit, and they found if not

6  the original, at least a copy of the note that you signed and

7  then that was to Platinum and Platinum endorsed it to RFC which

8  endorsed it to Deutsche Bank.  What is it about that note that

9  you have questions about?

10       MR. DIAZ:  Well, we asking for the original papers

11  because they send it -- I sent a copy for the papers.  We

12  signed it.  They no give the letter to me and they send it.

13  And I ask for the original papers.

14       THE COURT:  So when you --

15       MR. DIAZ:  They respond --

16       THE COURT:  -- when you took the -- when you

17  refinanced with Platinum, did they give you copies of the

18  papers that you signed:  copy of the note, copy of the

19  mortgage?

20       MR. DIAZ:  I think they signed it -- they send it to

21  me.

22       THE COURT:  Okay.  So you got -- when you originally

23  refinanced with Platinum, you received copies -- photocopies of

24  the promissory note that you had signed and of the mortgage

25  that you signed, as well, correct?

1          MR. DIAZ:  Yes, I receive it but unfortunately, when I

2     asked -- we asked them to with my lawyer, Randy Nordlund in

3     Miami, we want to see their original copy -- original papers,

4     they respond in an affidavit, we lost the papers.

5          THE COURT:  Well, they said they --

6          MR. DIAZ:  We don't have the note.

7          THE COURT:  -- lost the original --

8          MR. DIAZ:  -- original note.

9          THE COURT:  Right.  They said that they lost the

10    original note and they did a lost note affidavit.

11         MR. DIAZ:  Yeah.  And after that, they used David

12    Stern and Homecomings Financial Service be party to the -- my

13    best knowledge, to the -- to the governor and Deutsche Bank and

14    they say we have it -- we have original papers, that's what

15    Cheryl Samon say, the secretary to the -- for the whole papers

16    to the -- David Stern.  We have original papers.  When we ask

17    give them to us, we want to see it, the paper, they no -- the

18    paper no appear.  And they started to sell it to -- the

19    property to Aurora Loan Service.  It's in the Court's record.

20    They sold the loan to Aurora.

21         THE COURT:  Well they --

22         MR. DIAZ:  The papers say that.

23         THE COURT:  Well, does it say that or does it say that

24    they transferred the servicing rights to Aurora?

25         MR. DIAZ:  Well, that's -- oh, no.  That's the -- the

1  letter, they send it to me say, but when you see the paper in

2  the court -- in the court, you see it, the Aurora Loan Service,

3  they say in the papers, paragraph 4 and 6 expunge motion where

4  they set foreclosure sale, Bank America, Deutsche Bank American

5  and Trust sold a loan to Aurora Service.

6          THE COURT:  And when was that?

7          MR. DIAZ:  That one is paragraph 4 and paragraph 6.

8  It's in 200-, May 2008 --

9          THE COURT:  Hang on a second.

10          MR. DIAZ:  -- after the recording in the Court.

11          THE COURT:  Just bear with me for a moment, okay?

12          MR. DIAZ:  Okay.

13      (Pause)

14          THE COURT:  Mr. Wishnew, when did Homecoming stop

15  servicing the loan?

16          MR. WISHNEW:  April 1st, 2008, Your Honor.  I refer

17  the Court to Exhibit L to Ms. Horst's declaration in support of

18  the reply; and that is our so-called goodbye letter in which we

19  indicate to Mr. Diaz -- and this is a letter dated March 14,

20  2008, "Effective April 1st, 2008, the servicing of the above-

21  referenced account," again that is the account for 5200

22  Southwest 122nd Avenue in Miami, Florida, ZIP Code 33175, "The

23  right to collect payments from you is being assigned, sold or

24  transferred from Homecomings Financial to Aurora Loan Services.

25  The assignment, sale or transfer of servicing does not affect

1  the terms or conditions of your mortgage documents" --

2          THE COURT:  Just slow down a little bit, so Mr. Diaz

3  can understand.

4          MR. WISHNEW:  I apologize, Your Honor.

5          The second sentence in that first paragraph of the

6  letter states, "The assignment, sale or transfer of servicing

7  does not affect the terms or conditions of your mortgage

8  documents/security instruments, other than the terms directly

9  related to the servicing of your account.  Your present

10  servicer is Homecomings Financial, LLC.  Prior to April 1st,

11  2008, any questions regarding your account should be directed

12  to our customer care department."

13          New paragraph: "Your new servicer will be Aurora Loan

14  Services.  Beginning April 1, 2008, any questions you have

15  regarding your account should be directed to Aurora Loan

16  Services."

17          THE COURT:  Okay.  And did Homecomings initiate the

18  foreclosure?

19          MR. WISHNEW:  Are you referring to --

20          THE COURT:  The initial foreclosure action.  You'd

21  said -- because I'm looking at the same ex parte motion to

22  reset foreclosure sale.

23          MR. WISHNEW:  Um-hum.

24          THE COURT:  And in paragraph 1 it says, "The plaintiff

25  filed its complaint on June 1, 2007."  And at that time,

1   Homecomings was the servicer.

2           MR. WISHNEW:  I believe -- one minute, Your Honor.

3           THE COURT:  Yes.

4           MR. WISHNEW:  Yeah, I believe it was Homecomings

5   Financial that would have commenced the foreclosure.  I'll note

6   that in our reply we do say on or around My 29, 2007, Diaz's

7   loans was referred to foreclosure.

8           THE COURT:  Okay.  And Homecomings retained the Law

9   Offices of David J. Stern to commence the foreclosure action

10  against Mr. Diaz, correct?

11          MR. WISHNEW:  That's right.  And at that point in

12  time -- I'll also note for the record that Deutsche -- that

13  subsequent to the transfer of servicing, post-April 2008,

14  Deutsche Bank as trustee for the securitization continued using

15  the Stern firm in connection with the foreclosure.

16          THE COURT:  Right, and I guess a question -- and this

17  is a source of confusion to me and I think probably to Mr.

18  Diaz -- in the same document, the ex parte motion to reset

19  foreclosure sale --

20          MR. WISHNEW:  Um-hum.

21          THE COURT:  -- which is obviously after Homecomings

22  ceased being the loan servicer --

23          MR. WISHNEW:  Um-hum.

24          THE COURT:  -- in paragraph 3, it says that, "On or

25  about March 12, 2008, the plaintiff voluntarily canceled the

1    foreclosure sale.  Deutsche Bank Trust Company Americas as

2    trustee sold the loan to Aurora Loan Servicing, LLC."

3            Is there any evidence that Deutsche Bank sold the loan

4    to Aurora, as opposed to Aurora becoming the servicer?

5            MR. WISHNEW:  Not that I'm specifically aware of, Your

6    Honor.  I think, as you point out, it's a mischaracterization

7    of the facts and that the documents represent as we know them

8    to be, which is the transfer of servicing from Homecomings to

9    Aurora.

10           THE COURT:  Given that it was filed by Mr. Stern's law

11   firm, it wouldn't surprise me if it was not accurate, but it

12   also so-to-speak wasn't on your watch but --

13           MR. WISHNEW:  That's correct, Your Honor.

14           THE COURT:  -- not by much, but --

15           MR. WISHNEW:  But it still wasn't on our watch.

16           THE COURT:  Well, that's -- but it does give rise to

17   some confusion.  I could understand how Mr. Diaz could well be

18   confused by the statement in this motion that the Law Offices

19   of David J. Stern filed where they say that Deutsche Bank sold

20   the loan to Aurora Loan Servicing.  But your information is

21   that Aurora succeeded Homecomings as the servicer?

22           MR. WISHNEW:  That's correct, consistent with the

23   terms of the goodbye letter attached to Ms. Horst's

24   declaration.

25           THE COURT:  Okay.  All right.

RESIDENTIAL CAPITAL, LLC, ET AL.                                        38

1          Mr. Diaz, I interrupted you.  I apologize for that.

2    Do you want to pick up with your argument?

3          MR. DIAZ:  Well, thank you, Your Honor.  That's the

4    reason I put an affidavit of title in 2010.  That was 2010.

5    Because I saw they no have the transfer to the legally papers

6    and loan transfers for Deutsche to Aurora or the Homecomings to

7    Aurora, whatever it is.  And we asking the Court in here, we

8    want to see these papers, too; but they don't present any

9    paper.

10         THE COURT:  Let me just -- when you say you want to

11   see these papers, what papers did you want to see?

12         MR. DIAZ:  The legally transfers and assignments of

13   mortgage if I'm supposed to pay the Aurora the service, but the

14   papers they have in the records in the court, they sold the

15   loan.  I want to see it, that one, that paper, how they sold

16   it.  The -- they sold to the -- to the Aurora in the paragraph

17   6 -- 4 and 6, based on Margarita Esquiroz, Judge in book,

18   26,500 page 1777, they -- it's in the record.  They sold the

19   loan to Aurora, not the service, the loan.

20         THE COURT:  Well, other than the statement in this ex

21   parte motion to reset foreclosure sale, are there any other

22   documents that you have that would show that the loan was sold

23   by Deutsche Bank to Aurora?

24         MR. DIAZ:  Me?

25         THE COURT:  Yeah.  I'm just asking whether you have --

1   because I haven't seen -- I see in this ex parte motion to

2   reset foreclosure sale in paragraph 3 that Stern's office said

3   that Deutsche Bank sold the loan to Aurora Loan Servicing.

4   Other than this one piece of paper, have you --

5           MR. DIAZ:  No.

6           THE COURT:  -- seen any other paper that says that

7   Deutsche Bank sold the loan to Aurora?

8           MR. DIAZ:  No, no have it except to the papers in the

9   court record.

10          THE COURT:  Okay.  All right.

11          MR. DIAZ:  And that, no have it.  That's the reason we

12  ask it many, many times for five years.  We ask it Residential

13  Capital Funding or Deutsche Bank or Platinum Bank, and we ask

14  to then give me the paper because we want to see the -- the

15  chain on the assignment and the -- because it's something is

16  break in there.

17          THE COURT:  Let me ask you something, is it Nationstar

18  who is the current loan servicer of the loan?

19          MR. DIAZ:  Well, they send one letter to me and say we

20  are owner now to the service because Deutsche Bank, RALI

21  transferred to us.  And we ask you then in the court now, how

22  you produce the assignments of mortgage on 10/25/2013 if you no

23  have it, the documentation because you transferred before.  In

24  2007, they transferred.  How they doing again?  And that's what

25  we present in the court.

1        Also, they send it to me in blank.  Nobody signed it,

2   assignment of mortgage, too.

3        THE COURT:  Yeah, so --

4        MR. DIAZ:  So then --

5        THE COURT:  Okay.  Because I've seen letters from

6   Nationstar to you about the transfer of the servicing rights

7   from Aurora to Nationstar.  One of those letters is dated July

8   15, 2012, and it identifies Deutsche Bank as the owner of your

9   note.  What I have to try and parse out, Mr. Diaz, is what, if

10  any, alleged wrongdoing occurred by any of the debtors,

11  Homecomings, for example, and what, if anything, may have

12  occurred or give rise to fair questions after Homecomings no

13  longer was involved.

14       So when -- because I know -- you've asked -- you had

15  asked Aurora for information.  You had also asked Nationstar

16  for information about the loan, right?

17       MR. DIAZ:  Yes, I ask it.

18       THE COURT:  Okay.  But that -- the issue for me is

19  whether any of that's attributable to the debtors.  So things

20  that happened after Homecomings was out of the picture, after

21  Aurora or Nationstar was servicing the loan, I haven't seen

22  anything in your papers that would attribute any of that

23  conduct to Homecomings.  Are you aware of anything?

24       MR. DIAZ:  No, I no saw anything except to the papers,

25  they send it to me.  What's for me surprise, Your Honor,

1  receiving one letter to Aurora and say we are transferred with

2  the papers and transfer to us.  After that, they say -- Aurora

3  say in July 15th, 2012, we are transferring you -- when I tried

4  to ask to the counseling, they have it, Aurora have it.  He say

5  no, we don't have it -- we don't doing misconduct, anything.

6  After that, they send all the letters and say hey, Mr. Diaz,

7  remember we say to you the last letter, we something had to --

8  wrong in the paper.  We have to go and fix it.  We offer to you

9  the plan, the HUD plan.

10         THE COURT:  May I ask you this?

11         MR. DIAZ:  Uh-hum.

12         THE COURT:  Is this property your personal residence

13  or is it an investment property?

14         MR. DIAZ:  Your Honor, I live in there, my wife and

15  me.  We are starting to retire now.  And I live in -- I --

16         THE COURT:  May I ask you --

17         MR. DIAZ:  Sorry.

18         THE COURT:  -- what's the current status of the loan?

19  Have you been making mortgage payments?

20         MR. DIAZ:  No, because under -- they no finish give

21  me -- to me, the opportunity to clarify all the loans and they

22  doing everything right, we starting to pay everything.

23         THE COURT:  May I ask --

24         MR. DIAZ:  But then --

25         THE COURT:  -- when did you stop making mortgage

 1  payments?

 2          MR. DIAZ:  In 2006 -- '07, I think.

 3          THE COURT:  Okay.  Am I correct that you have not made

 4  any mortgage payments on the property since 2007?

 5          MR. DIAZ:  Yes, I no -- no give nothing.

 6          THE COURT:  Okay.

 7          MR. DIAZ:  I mean, I mentioned then until we no have

 8  it clear papers, because I know -- I believe it's possible to

 9  do nothing, since we are -- want it now residential, my house.

10  It's upside down, the loan.

11          THE COURT:  Okay.

12          MR. DIAZ:  Also, if I want to go into sell it, nobody

13  buy it because it's clouded title.  It's no clear because you

14  don't mention to anybody to say -- hey, my paper is a clear on.

15  Do you have this common situation there?

16          THE COURT:  May I ask you this?  Have you tried to

17  sell the property?

18          MR. DIAZ:  I put someone besides me in the -- in the

19  title, Mr. Jacob (ph.) runs but it's impossible because he saw

20  every paper say no, I don't intend to buy nothing.

21          THE COURT:  Well, I don't understand --

22          MR. DIAZ:  And nobody --

23          THE COURT:  Yes, what I don't understand is why the

24  title is clouded because the recorded mortgage is in the name

25  of Deutsche Bank and the note has been represented to be held

RESIDENTIAL CAPITAL, LLC, ET AL.                    43

1  by Deutsche Bank.  So I don't understand what the cloud on

2  title is. Deutsche Bank says they have the note and Deutsche

3  Bank said -- and the record shows that it's recorded in the

4  name of Deutsche Bank.  So what's the cloud on title?

5          MR. DIAZ:  Well, the complete matter between two

6  assignments in 2013 and 2007 and also did the Aurora buy the

7  loan, and that's the complete matter in the papers.  And I live

8  in the house, you say -- sorry, I didn't explain to you.  I

9  live in the house.  I a farmer now with my wife, retired.  I

10 live in the production of the -- of the land to bona fide

11 papers.  But the house its value is 567,000 and they gone.

12         And I tried to doing something, agreement with the --

13 with the entities but it's impossible to doing nothing, if they

14 no make a decision to do it.

15         THE COURT:  All right.  Let me ask, is there a current

16 foreclosure action pending against you?

17         MR. DIAZ:  Yes, they put their foreclosure action, my

18 lawyer, Mr. Randall Nordlund in this case represent to me and

19 he say -- I think I send the letter to you in those papers.  He

20 say that Nationstar no have it.  Try to foreclosure Mr. Diaz,

21 because they no present the paper clear; and after that, the

22 decision to sell the property, we go to the court and ask you

23 to serve these three to the court of appeal --

24         THE COURT:  I just want to make sure I understand --

25         MR. DIAZ:  -- because --

RESIDENTIAL CAPITAL, LLC, ET AL.                    44

1          THE COURT:  -- what you're telling me.  Do you know,

2    is there a current foreclosure action pending in Florida court

3    on behalf of Deutsche Bank brought by the loan servicer seeking

4    to foreclose on your property?

5          MR. DIAZ:  Well, yes, if we accepted to the

6    Nationstar, their on behalf to Deutsche Bank, RALI, they are --

7    Deutsche Bank is against me.

8          THE COURT:  Okay.

9          Mr. Wishnew, can you tell me, is there a current

10   foreclosure action pending and where?

11         MR. WISHNEW:  One minute, Your Honor.  I'm not

12   certain, Your Honor, given that we haven't had contact with

13   this loan for five years.

14         THE COURT:  I know.

15         MR. WISHNEW:  We just don't track in that regards.

16         THE COURT:  Okay.  All right.

17         Anything else, Mr. Diaz?  Anything else you want to

18   tell me?  Mr. Diaz, is there anything else you want to tell me?

19         MR. DIAZ:  Yes.

20         THE COURT:  Go ahead.

21         MR. DIAZ:  No, I want to say thank you again --

22         THE COURT:  Okay.

23         MR. DIAZ:  -- all of -- for doing the lot of job with

24   me and are doing respect to the best.

25         THE COURT:  All right.

1          MR. DIAZ:  And you make a decision.

2          THE COURT:  Thank you very much, Mr. Diaz.

3          Mr. Wishnew, is there anything you want to add?

4          MR. WISHNEW:  That's it, Your Honor.

5          THE COURT:  All right.  I'm going to take the matter

6  under submission.

7          MR. WISHNEW:  Thank you, Your Honor.

8          THE COURT:  Mr. Diaz, I'll be issuing an opinion and

9  you'll get a copy of it when -- do we have your current

10 address?  Mr. Wishnew, do you have his current address?

11         MR. WISHNEW:  Yes, Your Honor.

12         THE COURT:  Okay.  All right.  So whenever -- because

13 he's not on ECF, whenever I issue an opinion, you ought to

14 serve it on him.  Okay?

15         MR. WISHNEW:  As a matter of practice, Your Honor, the

16 Borrowers Trust has been routinely serving all opinions.

17         THE COURT:  Excellent.  All right.  Thank you very

18 much, Mr. Diaz.  You're --

19         MR. DIAZ:  Thank you very much, Your Honor.

20         THE COURT:  You're excused if you want.

21         MR. DIAZ:  Thank you, Your Honor.

22         THE COURT:  We still have other matters to cover but

23 you're -- if you wish to hang up, you can do that, too.  Okay?

24         MR. DIAZ:  Okay.

25         THE COURT:  All right.  Thank you.

1              Go ahead, Mr. Wishnew.

2              MR. WISHNEW:  Last contested matter in the sixty-

3    second omnibus claims objection is that of Michelle Lawson.  I

4    believe Ms. Lawson might be on the phone.

5              THE COURT:  Ms. Lawson, are you on the phone?

6              MS. LAWSON:  Yes, I am.

7              THE COURT:  Okay.  Thank you.

8              Go ahead, Mr. Wishnew.

9              MR. WISHNEW:  Thank you, Your Honor.  This deals with

10   claim 5282, a general unsecured claim in the amount of 140,000

11   dollars -- 140,967.98.  This deals with a second loan that Ms.

12   Lawson has against her home.  It was a loan that the debtors

13   held as an investor for only nine days but did continue

14   servicing the loan from 2007 until servicing transferred to

15   Ocwen in February of 2013.

16             In her claim, Ms. Lawson alleges that the loan should

17   be considered void and rescinded upon the theory that she

18   believed the loan had a fixed rate of five-and-three-quarter

19   percent and that the debtor did not disclose the presence of a

20   second loan with a balloon payment.

21             With regards to those statements, Your Honor, those

22   all go to the origination of the loan and the disclosures

23   associated with the loan at its origination.  This was a loan

24   that originated in 2004.

25             THE COURT:  It was in December of 2004.

1          MR. WISHNEW:  That's correct, Your Honor; December

2     3rd, 2004 with Trident Second Mortgage Company.   There was a

3     first loan in the amount of 273,000 dollars.   There was a

4     second in the amount of 51,300 dollars.   It's the second loan,

5     the second mortgage, that is the subject of this claim.

6          THE COURT:  Let me -- I just -- did Trident originate

7     both the first and the second?

8          MR. WISHNEW:  I believe so, Your Honor.

9          THE COURT:  Okay.  At the same time?

10         MR. WISHNEW:  Yes, Your Honor.

11         THE COURT:  Okay.  Go ahead.

12         MR. WISHNEW:  At the time the mortgages were

13    originated, Ms. Lawson signed a second mortgage note for the

14    second mortgage, a copy of which is attached to Ms. Horst's

15    supplemental declaration in support of the reply at Exhibit P

16    as in Peter.  She also signed the balloon payment rider which

17    explicitly states that the second mortgage was subject to a

18    balloon payment.  See Exhibit Q as in question, to the Horst

19    declaration in support of the reply.

20         Ms. Lawson also signed an affidavit of borrower

21    certifications that shows she acknowledged receiving copies of

22    truth-in-lending  good faith estimates, which provided

23    information about the second mortgage and the balloon payment.

24    Those certifications are attached at Exhibit R to the

25    supplemental declaration.

1        In her response, she -- Ms. Lawson seems -- asserts

2    that there are TILA issues here.  But TILA issues, one, the

3    Borrowers' Trust would assert that such issues are being raised

4    for the first time in the response and may not be timely and

5    improperly raised.  But putting that aside, we'd also argue

6    that the TILA claims against GMAC Mortgage are entirely

7    improper because to the extent she'd ever wanted to rescind her

8    loan, that's for her to deal with her -- with the investor

9    owner of the loan, not the servicer of the loan which is what

10   GMAC Mortgage was.

11       And with regards to the earlier disclosures that she

12   says were not made, they were in fact made.  And there's -- so,

13   in sum, the Borrowers' Trust is asserting that the claims

14   should be expunged because while there are some general

15   allegations of purported wrongdoing, it's exactly that.

16   They're general allegations.  They're not specific to GMAC

17   Mortgage or evidence of any wrongdoing by GMAC Mortgage.

18       To the extent that Ms. Lawson makes general statements

19   about GMAC's practices, those are simply just broad-based

20   statements that have no specific relationship to her loan.

21       So for the reasons stated in the objection, as well as

22   in the reply, and including Ms. Horst's supporting declaration,

23   we would ask that this claim be disallowed and expunged.

24       THE COURT:  Let me ask you some questions.  Do you

25   know who services the first loan -- first lien?

RESIDENTIAL CAPITAL, LLC, ET AL.                    49

1          MR. WISHNEW:  I can check on that, Your Honor.

2          THE COURT:  Let me ask two questions then.  Who is

3    servicing the first loan?  Who was servicing the second before

4    GMAC acquired it?

5          MR. WISHNEW:  If you could give me one minute, Your

6    Honor.

7          THE COURT:  Yes, go ahead.

8          MR. WISHNEW:  Thank you.

9       (Pause)

10         MR. WISHNEW:  Your Honor, I don't have that

11   information at my fingertips.  I'd have to go back into the

12   company servicing records and get some historical information.

13         THE COURT:  Let me -- am I correct that GMAC acquired

14   the second lien loan and servicing rights on February 1, 2007?

15         MR. WISHNEW:  That is correct, Your Honor.

16         THE COURT:  And it sold the loan, the second lien loan

17   on March 30th, 2007?

18         MR. WISHNEW:  That is correct, Your Honor.

19         THE COURT:  And continued servicing until the

20   servicing rights were sold to Ocwen?

21         MR. WISHNEW:  Your Honor, did you say February 1st or

22   February 21st?

23         THE COURT:  21st.

24         MR. WISHNEW:  Okay, yes.  Correct, Your Honor.  That's

25   consistent with the representations made in Exhibit A to the

RESIDENTIAL CAPITAL, LLC, ET AL.                    50

1   sixty-second omnibus objection.

2          THE COURT:  All right.  Do you have any information at

3   all that GMAC had anything to do with the origination of the

4   first or second loans in December 2004?

5          MR. WISHNEW:  No, Your Honor.

6          THE COURT:  All right.  Let me hear from Ms. Lawson.

7   Ms. Lawson?

8          MS. LAWSON:  Good morning, Your Honor.  Thank you for

9   hearing me.

10          THE COURT:  Sure.

11          MS. LAWSON:  I'm Michelle Lawson, representing

12   Michelle Lawson, et al., claim number 5282.  And we're asking

13   the Court to allow our claim to proceed and not to expunge it

14   during this bankruptcy proceeding.

15          If it may please the Court, the debtor has submitted

16   documents into evidence, but we cannot authenticate many of

17   these loan origination documents because we've never seen some

18   documents until the debtor submitted them as part of this

19   bankruptcy proceeding.

20          Documents and records in electronic or digital format

21   are suspect in this context due to the notorious predatory

22   lending and sub-prime schemes circa 2004 to 2007, the time

23   period during which the loan referenced in claim number 5282

24   was not only originated but also purchased, transferred and

25   serviced.

RESIDENTIAL CAPITAL, LLC, ET AL.                    51

1          THE COURT:  So, let me ask -- Ms. Lawson, let me ask

2   you a few questions about that.  You obtained both the first

3   and second loans at essentially the same time --

4          MS. LAWSON:  Yes.

5          THE COURT:  -- from Trident.  Am I correct in that?

6          MS. LAWSON:  Yes.

7          THE COURT:  And did you deal with anybody from GMAC-M

8   at the time that you obtained the loans from Trident in

9   December 2004?

10          MS. LAWSON:  No.

11          THE COURT:  Okay.  All right.  Go ahead.

12          MS. LAWSON:  Forgery during the digital age is a more

13   insidious act.  It is neither uncommon nor difficult to

14   surreptitiously create an image of an individual handwritten

15   signature.

16          THE COURT:  May I ask you this?  Are there specific

17   documents that you claim are forgeries?

18          MS. LAWSON:  Yes.

19          THE COURT:  Which ones?

20          MS. LAWSON:  For example, the Federal Truth-In-Lending

21   Disclosure Statements in Exhibit R.

22          THE COURT:  Those were given to you by Trident though,

23   correct?

24          MS. LAWSON:  That -- I'm looking at Exhibit R of what

25   the debtor sent out on -- it's Exhibit R of the Lawson

 1  affidavit -- affidavit, pardon -- of borrower certification and

 2  TILA disclosure statement.  And there's --

 3          THE COURT:  Right.  You received -- at the time you

 4  received the loan from Trident, did they give you disclosure

 5  statements?

 6          MS. LAWSON:  For one loan.  That's what I recall.

 7  That's what our records show.  So that's why I'm saying this

 8  second loan -- these documents, we have never seen before.

 9          THE COURT:  Go ahead.

10          MS. LAWSON:  So these electronic or digital images can

11  then be transferred to documents of anyone's choosing, and this

12  technology was in existence in 2004, and we believe that this

13  technology was used in this case.

14          As a family participating in the American dream in

15  2004, we worked hard, sacrificed and saved our money and paid

16  our debts.  We invested our life savings and work in a home.

17  We thought that we would be getting a thirty-year conventional

18  fixed-rate mortgage.  However, at the settlement table, also

19  known as closing, the principles of good faith, honest dealing

20  and freedom to contract went awry.  During the settlement

21  process, we would have been in breach of contract, as well as

22  in jeopardy of losing tens of thousands of dollars in the form

23  of a down payment and liquidated damages, had we not proceeded

24  with the transaction on that day.

25          When your life savings, goodwill, good name and

1   creditworthiness are held for ransom or are hanging in the

2   balance this is akin to duress, unconscionability, and

3   fraudulent inducement to contract.

4           THE COURT:  Did you ever bring a lawsuit against

5   Trident?

6           MS. LAWSON:  Pardon?

7           THE COURT:  Did you ever bring a lawsuit against

8   Trident?

9           MS. LAWSON:  No.

10          THE COURT:  Did you sign the affidavit of borrower

11  certifications acknowledging that you had received the Truth-

12  In-Lending Good Faith Estimate?

13          MS. LAWSON:  For one of the loans, because we received

14  an 80/20 product.  I was expecting a thirty-year conventional,

15  not a 80/20.

16          THE COURT:  Go ahead.

17          MS. LAWSON:  Given these facts, a reasonable person

18  would proceed with the belief that she will be able to seek

19  judicial relief and restitution at some later point.  However,

20  subsequent specific requests for copies of documents were

21  denied among other egregious acts or omissions to act were

22  committed.

23          Due to those constructive denials or obstructions,

24  arguably the statute of limitations not only barred our claims

25  and adversely impacted our legal rights but also absolved the

1   debtor in large part from any liability.  However, in this

2   case, the debtor we believe is liable apart from TILA and other

3   related statutes because of their individual actions, not only

4   during this proceeding but from the time they began servicing

5   the loan.

6           THE COURT:  What actions by the debtor do you claim

7   were wrongful?

8           MS. LAWSON:  We requested specific loan origination

9   documents and documents pertaining to the loan.  We never

10  received the loan application until Ocwen sent it for -- and

11  then there are other documents that I've again, never seen or

12  we have never seen before that have appeared as a part of this

13  bankruptcy proceeding.

14          So that, you know -- and then the debtor presents a

15  log with their business records, and we question whether it is

16  a truly accurate record of every call and/or request that we

17  made as evidenced by the omitted loan application and

18  production of supporting loan origination documentation.

19          THE COURT:  Did you request those documents in

20  writing?

21          MS. LAWSON:  No.  It was always by phone.

22          THE COURT:  And when did you do that?

23          MS. LAWSON:  When we -- we did it several times over

24  the course of the loan.  I can get those specific dates.  I

25  don't have them with me right now.

RESIDENTIAL CAPITAL, LLC, ET AL.                    55

1              THE COURT:  Okay.

2              MR. WISHNEW:  Your Honor, I would add for the record,

3    with regards to Ms. Lawson's allegation of not providing

4    documents.  In Exhibit A to the omnibus objection, the debtor

5    specifically states, "Claimant requested executed copies of the

6    mortgage and the note from the debtor on February 8th, 2010

7    which debtor provided to claimant on February 12th, 2010."

8              THE COURT:  Did you receive those documents from the

9    debtor, Ms. Lawson?

10             MS. LAWSON:  Yes.

11             THE COURT:  Go ahead, Ms. Lawson.

12             MS. LAWSON:  Those documents that are at issue, again,

13   the statute of limitations prevented us from actually going

14   forward with any claims against Trident.  But that aside, you

15   know, the issue here is that we question the authenticity of

16   these documents, because there is a clear pattern here from our

17   perspective, on the part of the debtor, to withhold information

18   and to only disclose it for their sole benefit.  For -- you

19   know, the copy of the loan application that we submitted was

20   taken into evidence or as an exhibit to the objection was taken

21   by telephone, if you were to read it, and it does not have the

22   signature of all parties and has several inaccuracies with

23   respect to creditor information, among other things.

24             It is likely that the debtor strategically purchased

25   the loan at the time, because they knew that the statute of

1 | limitations would likely bar any claim.  And because the debtor
2 | purchased the rights to collect on the debt, it is also likely
3 | that the purchase -- that they purchased the rights and
4 | obligations of the loan originator, as well as subsequent
5 | servicers and purchasers.
6 |         And as applied, these facts lend themselves to the
7 | conclusion that the debtor is a classic assignee.  Moreover, we
8 | believe that the debtor knowingly collected monies and/or
9 | payment on a note, a mortgage, that were created under
10 | fraudulent circumstances.  And the debtor has made a profit at
11 | our expense and to our collective detriment.
12 |         THE COURT:  All right.  Anything else you want to add,
13 | Ms. Lawson?
14 |         MS. LAWSON:  No.  Actually, I would like to say that
15 | those digital signatures and images of individual handwritten
16 | signatures were being created in 2004 and used quite
17 | frequently.  Thank you.
18 |         THE COURT:  Whose signatures?
19 |         MS. LAWSON:  Just -- it's a -- I --
20 |         THE COURT:  Are you saying that your signature was
21 | forged?
22 |         MS. LAWSON:  I -- I believe that our signatures were
23 | forged.
24 |         THE COURT:  Where?  Tell me.  I want to know exactly
25 | where you say your signature was forged.

1          MS. LAWSON:  On documents related to the second --

2          THE COURT:  Don't tell me on documents.  I want to

3    know specifically, Ms. Lawson, if there are specific --

4          MS. LAWSON:  The Truth-In --

5          THE COURT:  Stop.  Stop.  Let me finish my question.

6    Can you point me to specific documents on which you say your

7    signature was forged?

8          MS. LAWSON:  Yes.

9          THE COURT:  All right.  I want you to identify very

10   specifically which documents you claim contain a forged

11   signature of yours.

12         MS. LAWSON:  In Exhibit O, Lawson Deed of Trust, there

13   is the document with the balloon payment rider to note and

14   security agreement.  The request for default -- pardon me,

15   request for notice of default and foreclosure.  And -- and

16   under Exhibit P, the mor -- the Lawson second mortgage note,

17   that document that's attached to that.  And it's --

18         THE COURT:  You're saying that your signature is

19   forged on the Lawson second mortgage note?

20         MS. LAWSON:  Yes.

21         THE COURT:  And have you put in an affidavit to that

22   effect?

23         MS. LAWSON:  I have not.

24         THE COURT:  What's the status of the property, Ms.

25   Lawson?

1          MS. LAWSON:  We are currently paying the mortgage and

2     it has been on time since its inception or origination.

3          THE COURT:  Okay.  So both the first and second

4     mortgages are current?

5          MS. LAWSON:  Yes.

6          THE COURT:  Okay.  All right.  Anything else you want

7     to add?

8          MS. LAWSON:  As far as documents?

9          THE COURT:  Anything you want to add?

10         MS. LAWSON:  There are -- there are some other

11    forgeries, both -- the documents in which -- in Exhibit R, as

12    well.

13         THE COURT:  What's the forgery?

14         MS. LAWSON:  The signatures on those Truth-In-Lending

15    statements, two of which have different dates, as well as the

16    affidavit of borrower certification.  And we are alleging this

17    with regard -- with respect to the second loan only, not the

18    primary loan, because that is what we expected to get.

19         THE COURT:  So you're saying your signature is forged

20    on the certification -- borrower certification on the second

21    loan?

22         MS. LAWSON:  Uh-hum.

23         THE COURT:  But not on the certificate for the first

24    loan?

25         MS. LAWSON:  Right.  And I -- the one for 273 or the

1     larger jumbo loan or the first loan.

2                THE COURT:  And when did you first obtain copies of

3     the documents?

4                MS. LAWSON:  The mortgage and note, we obtained copies

5     of I believe in 2010; and actually I can double-check that.

6     But the rest of these other documents, we have just received as

7     part of this bankruptcy proceeding.  For example --

8                THE COURT:  All right.

9                MS. LAWSON:  -- the documents --

10               THE COURT:  Did you receive any documents in 2010 that

11    you believe contain forged signatures of yours?

12               MS. LAWSON:  I did.

13               THE COURT:  And did you --

14               MS. LAWSON:  I --

15               THE COURT:  -- call that to anybody's attention at the

16    time?

17               MS. LAWSON:  Not anyone in any official capacity.

18               THE COURT:  Okay.  If you received copies of documents

19    that you believed contained forged signatures, why didn't you

20    call that to the attention of the loan servicer?

21               MS. LAWSON:  I did.  But again, to me that's not in an

22    official capacity.

23               THE COURT:  All right.  Anything else you want to add?

24               MS. LAWSON:  No.

25               THE COURT:  All right.  Mr. Wishnew, anything you want

RESIDENTIAL CAPITAL, LLC, ET AL.                    60

1    to add?

2              MR. WISHNEW:  We'll stand on our papers, Your Honor.

3              THE COURT:  All right.  I'm going to take the matter

4    under submission.

5              MR. WISHNEW:  Thank you, Your Honor.

6              THE COURT:  Thank you, Ms. Lawson.

7              MS. LAWSON:  Thank you.

8              MR. WISHNEW:  I will turn the podium over to Ms.

9    Rothchild for the sixty-third omnibus objection.

10             THE COURT:  Okay.

11             MR. WISHNEW:  It should be the last contested matter

12   on today's calendar.

13             THE COURT:  All right.

14       (Pause)

15             MS. ROTHCHILD:  Good morning, again, Your Honor.

16   Meryl Rothchild of Morrison & Foerster on behalf of the ResCap

17   Liquidating Trust.

18             The next and final claims objection matter on the

19   agenda is on page 7, number 3.  The Liquidating Trust's sixty-

20   third omnibus claims objection as to purported administrative

21   claims filed at docket number 6845.

22             Your Honor, through the sixty-third omni claims

23   objection, the Trust seeks to expunge a total of thirty-one

24   claims on the bases noted on Exhibits A through D appended to

25   the proposed order because they fail to sufficiently

RESIDENTIAL CAPITAL, LLC, ET AL.                    61

1   demonstrate that they are valid administrative expense claims.

2          THE COURT:  May I ask, there were six responses.

3          MS. ROTHCHILD:  Correct.  I can walk through those,

4   Your Honor.

5          THE COURT:  No, I just want to find out on

6   appearances.

7          MS. ROTHCHILD:  Oh, of course.

8          THE COURT:  Is anybody appearing on behalf of Norma

9   Rodriguez?  No response.

10         Anybody appearing on behalf of Vicki West?  No

11  response.

12         Anyone appearing on behalf of Elda and Maria Thompson?

13         Is anyone appearing on behalf of Tom Franklin?

14         Is anyone appearing on behalf of Charles Clark?

15         Is anyone appearing on behalf of Tamara Carlson-

16  Callahan?

17         All right.  Those are the six, as I understand it, six

18  individuals who filed responses to the objection, and none of

19  them have indicated an appearance.

20         Go ahead, Ms. Rothchild.

21         MS. ROTHCHILD:  Thank you, Your Honor.

22         In support of the objection, the trust submitted two

23  declarations, one by Deanna Horst, appended to the objection as

24  Exhibit 1A and the other by Joseph Morrow of KCC, appended as

25  Exhibit 1B to the objection.

1           As an initial matter, Your Honor, a number of the

2    claimants, parties to the objection, did not expressly

3    designate their requests seeking the allowance of

4    administrative expense claims.  A number of them appeared to be

5    in response to these claimants' receipt of the administrative

6    claims bar date notice entered on December 17th, 2013 at docket

7    number 6138.  So as a result, out of an abundance of caution,

8    the Liquidating Trust treats these claims as purported

9    administrative claims.

10          So the Trust reviewed the claim submissions subject to

11   this objection and found that the claimants failed to meet

12   their burden -- his or her burden to demonstrate the validity

13   of their purported administrative expense claim under Section

14   503 of the Bankruptcy Code.

15          Specifically, in Exhibits A through D appended to the

16   proposed order, those listed on Exhibit A appear to be

17   duplicative of claims already filed as pre-petition claims by

18   the same claimant, many of those claims of which have already

19   been disallowed and expunged by order of this Court.

20          Other purported administrative claims listed on

21   Exhibit B were filed after the January 16th, 2014

22   administrative claim bar date.  As reflected in the Morrow

23   declaration, the administrative claim bar date notice was

24   timely served at the last recorded address in the debtors'

25   books and records to these claimants.

RESIDENTIAL CAPITAL, LLC, ET AL.                    63

1          Also, these submissions violate the procedures and

2     deadlines for filing administrative claims as provided in

3     Article 2(a) of the confirmed plan in these cases.

4          Exhibit C includes purported administrative claims

5     that the trust determines to be both duplicative of pre-

6     petition claims filed by the same claimants, as well as claims

7     that are late filed after the --

8          THE COURT:  Well, let me just -- since no one has

9     appeared on these, let me --

10         MS. ROTHCHILD:  Sure.

11         THE COURT:  -- ask you some specific questions.

12         MS. ROTHCHILD:  Sure.

13         THE COURT:  With respect to the Norma Rodriguez claim,

14    it's claim 7450 --

15         MS. ROTHCHILD:  Yes, Your Honor.

16         THE COURT:  -- your opening remarks indicated that

17    none of these qualified as administrative claims, but I read

18    the objection as to Rodriguez as only based on it being a late-

19    filed claim.  Are you -- what's the basis of your objection to

20    the Rodriguez claim?

21         MS. ROTHCHILD:  Your Honor, we -- our objection to the

22    Rodriguez claim is based on the timeliness of her claim.  We've

23    reserved rights as to the merits of the claim, but we believe

24    that because her claim was received by KCC and on the docket by

25    February 19th, over a month past the administrative claim bar

1   date, for that reason and her failure to sufficiently rebut the

2   presumption that she received timely service, as well as

3   showing any reasonable excuse to amount to cause for her late

4   filed claim, we think that should be dispositive of the

5   allowance of her purported administrative claim.

6        THE COURT:  So Ms. Rodriguez had filed a lawsuit in

7   federal court in Central District of California on November

8   15th, 2012, one day prior to the bar date.  What, if any,

9   effect should the Court give to the lawsuit?

10       MS. ROTHCHILD:  Your Honor, as explained, we did not

11   go into the details in the objection, but I'm happy to answer

12   these questions.

13       THE COURT:  Well, I just -- you know, because you may

14   well have had a -- the only thing I'm being asked to rule on is

15   whether it was timely proof of claim, is that right?

16       MS. ROTHCHILD:  Well, we think it should be disallowed

17   and expunged for her failure to submit a timely administrative

18   claim in accordance to the rules.

19       THE COURT:  That's the only grounds on which you're

20   moving to expunge the claim, am I correct?

21       MS. ROTHCHILD:  At this time.  Though, we have

22   reserved to raise any other claim as to the merits if the Court

23   decides not to sustain the objection.

24       THE COURT:  Okay.  All right.  With respect to the

25   claim of Tamara Carlson-Callahan, it's claim 7432, tell me what

RESIDENTIAL CAPITAL, LLC, ET AL.                    65

1    grounds you're seeking to have the claim -- the administrative

2    claim disallowed and expunged.

3            MS. ROTHCHILD:  I didn't get to this earlier, Your

4    Honor, but the Trust has since resolved the objection, both as

5    to Mr. Clark, Ms. Carlson-Callahan and also Ms. Thompson.

6            THE COURT:  And I saw the references to -- has that --

7    so those are not going forward today.

8            MS. ROTHCHILD:  Those are going forward and they

9    have -- with the discussion.  We also have e-mail written

10   confirmation that they understand the purpose of the objection

11   and --

12           THE COURT:  May I see that?

13           MS. ROTHCHILD:  The written confir -- sure.

14           THE COURT:  I mean because you're asking me to expunge

15   claims as to which a response was filed; and I know you're

16   indicating that those matters have been resolved.  I would like

17   to see -- but the claimants themselves did not file anything.

18           MS. ROTHCHILD:  In addition to, I'm sorry.  I'm not

19   sure --

20           THE COURT:  Well, did they file something --

21           MS. ROTHCHILD:  Oh, you mean that we acknow --

22           THE COURT:  -- acknowledging that their claim would be

23   expunged?

24           MS. ROTHCHILD:  No, no.  We --

25           THE COURT:  Let me see --

1            MS. ROTHCHILD:  -- I will --

2            THE COURT:  -- let me see what you've got.

3            MS. ROTHCHILD:  Absolutely.  One moment, Your Honor.

4        (Pause)

5            MS. ROTHCHILD:  May I approach?

6            THE COURT:  Yes, please and I'll give this back to

7    you.

8            MS. ROTHCHILD:  Okay.  So this is some of the --

9            THE COURT:  Well, speak up.  You'll be picked up on

10   this mic, so --

11           MS. ROTHCHILD:  Oh, okay.  Thank you. So this e-mail

12   is between myself and Mr. Charles Clark, and it indicates that

13   we had a discussion.  He understands that he still has a

14   surviving claim on the claims register; and what he filed was,

15   in fact, in response to his receipt of the administrative

16   claims bar date.  So he's comfortable knowing that he preserves

17   his rights.

18           THE COURT: All right.  Let me read it --

19           MS. ROTHCHILD:  Oh, sure; of course.

20           THE COURT:  -- and go back to my notes.

21       (Pause)

22           THE COURT:  All right.  What Ms. Rothchild just handed

23   me is an e-mail string between her and Mr. Clark.  Mr. Clark's

24   claim that's the subject of the current motion is claim 7315

25   filed on January 7th, 2014, in the amount of 19,712 dollars

RESIDENTIAL CAPITAL, LLC, ET AL.                    67

1    unsecured and 60,000 dollars secured against ResCap.

2            I've reviewed the e-mail exchange between Ms.

3    Rothchild and Mr. Clark.  In a June 4th, 2014 e-mail from Ms.

4    Rothchild to Mr. Clark, Ms. Rothchild said in part, "Pursuant

5    to our conversation this afternoon, please confirm that you

6    have agreed to let the objection ride through with respect to

7    claim number 7315, as it is based on the same claim that is

8    asserted in your previously filed pre-petition proof of claim,

9    claim number 1188.  As discussed, this will not result in any

10   prejudice to claim number 1188.  Claim number 1188 still

11   remains on the claims register and both you and the ResCap

12   Trusts reserve their rights in connection with the claim.  If

13   you agree to proceed in this fashion, please confirm by

14   responding to this e-mail to let me know.  Many thanks.

15   Meryl."  That was at 11:10 a.m.

16           At 7:55 p.m., Mr. Clark responded in an e-mail to Ms.

17   Rothchild, "I am in receipt of your e-mail and agree with the

18   discussed redundant objection regarding claim number 7315 and

19   to let it ride through and that asserted claim number 1188

20   still remains on the claims register.  Please take notice that

21   I reserve my right to the claim and all that is afforded me

22   with regard to the claim including but not limited to an

23   investigation into possible unlawful act of GMAC Mortgage

24   selling my loan to Green Tree for an incorrect and overstated

25   amount of 19,712 dollars.  Thank you.  Chuck Clark."

1        So I'll return that to you.  So with respect to Mr.

2   Clark's administrative claim 7315, the objection is sustained.

3        MS. ROTHCHILD:  Thank you, Your Honor.  The next is an

4   e-mail chain between myself and Tamara Carlson-Callahan.

5        THE COURT:  All right.

6        MS. ROTHCHILD:  You may want to start from the back.

7        THE COURT:  Okay.

8        MS. ROTHCHILD:  She, too, is in a similar situation as

9   Mr. Clark in that she still has a valid pre -- well, I don't

10  want to say valid but --

11       THE COURT:  She still has a claim pending.

12       MS. ROTHCHILD:  Exactly.  She still has a pre-petition

13  claim pending on the claims register.

14       THE COURT:  All right.  Let me read this e-mail chain.

15       MS. ROTHCHILD:  Of course.

16     (Pause)

17       THE COURT:  All right.  So what I've been shown is an

18  e-mail chain between Ms. Rothchild and Tammy Carlson; and there

19  are a whole series of e-mails.  I'll just refer to two of them

20  because I think that basically, fairly summarizes.  In an

21  e-mail on May 22, 2014, Ms. Rothchild wrote to Ms. Carlson, and

22  I'll only quote it in part, "The ResCap debtors filed an

23  objection to claim number 3887 but not to expunge the claim but

24  rather to list it as against the appropriate debtor entity.

25  This means that claim number 3887 is still on the claims

RESIDENTIAL CAPITAL, LLC, ET AL.                    69

1   register and has not been objected to on the merits as of

2   today.

3           "The second claim you filed, claim number 7432, appear

4   to be in response to your receipt of the administrative bar

5   date notice.  However, in looking at the claim it seems to be

6   asking for exactly what you're asking for in claim number 3889.

7   Because of this, it seems that it is related to a pre-petition

8   claim (meaning something that you're saying the debtor owes to

9   you, an obligation that was incurred prior to the debtors' May

10  14, 2012 bankruptcy filing date).  Since it relates to an

11  asserted pre-petition claim, it is not by definition an

12  administrative claim, which is a claim that arises after the

13  debtor files for bankruptcy.  Please let me know if this makes

14  sense.  Accordingly, at this time we're seeking to remove this

15  later filed claim from the claims register because you already

16  have a claim on the claims register seeking that very same

17  relief."

18          On May 22 at 5:40 -- and Ms. Rothchild's e-mail to Ms.

19  Carlson was at 9 a.m. -- at 5:40 p.m., Ms. Carlson responded by

20  e-mail, "Hi, Meryl:  Okay.  Yes, I completely and fully

21  understand your clarity.  Thank you so much for explaining so

22  explicitly and accurately.  Please remove the claim that does

23  not coincide with my original claim.  These lawsuits are

24  sometimes cumbersome and verbose, difficult for me to

25  understand.  Thank you for your time.  I truly appreciate your

RESIDENTIAL CAPITAL, LLC, ET AL.                    70

1   help in this matter."

2          So with respect to the claim, the administrative claim

3   of Tamara Carlson-Callahan, it's claim number 7432 against

4   ResCap filed on January 21, 2014, asserting a 60,300-dollar

5   administrative priority claim, the debtors' objection is

6   sustained and the administrative claim is expunged.

7          MS. ROTHCHILD:  Your Honor, thank you.  I appear to

8   have not included the e-mail confirmation from Ms. Thompson,

9   but I am happy, as soon as I get back to the office, to forward

10  that e-mail confirmation to the Court.

11         THE COURT:  All right.  Let me just -- and could you

12  summarize what that e-mail exchange between you and the

13  Thompsons -- it's Elda M. and Maria M. Thompson.  It's claim

14  7431, received by KCC on January 17th, 2014 and what is the

15  substance?

16         MS. ROTHCHILD:  Well, we spoke on the phone and

17  essentially they initially didn't intend to have the letter on

18  the docket.  It was more just a question towards us.  And once

19  explained, again, the purpose of the objection, she

20  understood -- Ms. Thompson understood and similar to these

21  other claimants, said that she was comfortable having the

22  objection ride through.

23         THE COURT:  All right.  So subject to the Court

24  reviewing that e-mail exchange, I'll sustain the objection.

25  Okay.

1        MS. ROTHCHILD:  Thank you, Your Honor.

2        THE COURT:  And you can forward an e-mail to one of my

3   law clerks and we'll review it.  And when you submit the order,

4   assuming that -- I'm sure you had accurately described it, but

5   I'll review that.

6        MS. ROTHCHILD:  Thank you, Your Honor.

7        THE COURT:  Okay.  All right.

8        MS. ROTHCHILD:  If the Court has any other questions,

9   I'm happy to answer them.  If not, I'll --

10       THE COURT:  Let's talk about -- hang on.  Let me -- so

11  we've dealt with the Clark claim --

12       MS. ROTHCHILD:  Correct.

13       THE COURT:  -- the Tom Franklin claim, it's claim

14  number 7335 filed on January 20th, 2014, in the amount of

15  131,000 dollars against ResCap.  And Mr. Franklin is no

16  stranger to this Court.  And your position is that Mr.

17  Franklin's two responses to the objection don't provide any

18  factual or legal arguments or evidence in support of his

19  purported administrative claim against the debtors.  Am I

20  correct in that?

21       MS. ROTHCHILD:  Yes, Your Honor.  And also that as

22  evidenced by just the face of his claim, it does not -- it also

23  seems that if anything, it would attempt to reassert his claim

24  number 1195, though again, it is completely bare.  But that is

25  the only guess that the debtors would have as to any sort of

1  claim Mr. Franklin would hold.

2         THE COURT:  All right.  And with respect to claim

3  number 1195 --

4         MS. ROTHCHILD:  The --

5         THE COURT:  -- it was filed by Mr. Franklin on October

6  12, 2012 and the claim was expunged pursuant to this Court's

7  order granting the debtors' twenty-first omnibus objection.

8  That's at ECF 4241.  That claim asserted a 134,000-dollar claim

9  against EPRE, LLC with a stated basis, "loan modification

10 refused."  No documents were attached to claim number 1195.

11 Pursuant to the procedures order, the debtor sought additional

12 information from Mr. Franklin.  He didn't respond.

13        The debtors then objected to Franklin's claim based on

14 insufficient documentation pursuant to the twenty-first omnibus

15 objection.  Mr. Franklin filed three responses:  on July 18th,

16 2013, that was at ECF 4282; on September 5th, 2013 at ECF

17 docket 4961; and on September 6th, 2013, at ECF docket 4980.

18 None of these responses provided additional documentation for

19 his claim and the Court sustained the twenty-first omnibus

20 objection.  At the September 11th, 2013 hearing, Mr. Franklin

21 did not appear in person or by telephone and accordingly, claim

22 1195 was expunged.

23        Mr. Franklin has appealed -- he did appeal the order

24 expunging his claim to the Southern District -- the District

25 Court for the Southern District of New York.  His appeal was

1    denied.  See case number 1:13-cv-08317, ECF docket number 25.

2    He's now appealed that decision to the Second Circuit.  It's

3    case number 14-00418 in the Second Circuit.

4           All right.  The information provided by Mr. Franklin

5    does not provide a basis for allowing an administrative expense

6    claim.  Therefore, claim 7335, the objection is sustained and

7    the claim is expunged.

8           MS. ROTHCHILD:  Thank you, Your Honor.

9           THE COURT:  So, we have the Vicki West claim.

10          MS. ROTHCHILD:  Yes, Your Honor.

11          THE COURT:  Vicki West filed claim 7322 against ResCap

12   on January 14th, 2014 in the amount of $29,849.85.  Claim 7322

13   contains a letter from West dated January 10th, 2014 regarding

14   claim number 995, that West had previously filed.

15          With respect to claim number 995, the stated basis

16   was, "mortgage notes."  The only documents appended to the

17   proof of claim, four more letters from GMAC-M to West informing

18   West that she was eligible for certain loan modifications and

19   it also attached the related executed loan modification

20   agreement.

21          The debtors objected to claim number 995 in debtors'

22   twenty-seventh omnibus objection to claims; it's at ECF 4735.

23   And West did not respond to that objection.  So the claim

24   was -- that earlier claim 995 was expunged pursuant to order

25   granting the debtors' twenty-seventh omnibus objection.  It's

1    at ECF 5199 and it was on the basis of insufficient

2    documentation.

3            In her purported administrative claim, West alleges

4    that GMAC-M engaged in fraudulent and deceptive behavior by

5    failing to fully explain the details and the risks of mortgage

6    loans to her before she purchased two mortgage loans.  She also

7    attaches a marked-up copy of claim 995 and showing it as,

8    "revised claim."

9            Claim number 7322 does not, however, raise any claims

10   that have arisen post-petition, nor has she appended

11   documentation to claim 7322 to demonstrate that it arose post-

12   petition.  She does not assert that her claim qualifies as an

13   administrative expense claim but instead appears to have sent

14   in her claim in response to a notice of entry of the

15   confirmation order confirming the Chapter 11 plan in these

16   cases.

17           This latest West claim is not an administrative claim

18   but it instead relates to her pre-petition claim which has

19   already been expunged.  She cannot use the administrative claim

20   process as an attempt to reassert the same claim that has

21   already been expunged.  Therefore, the debtors' objection to

22   West claim 7322 is sustained and the claim is expunged.

23           MS. ROTHCHILD:  Thank you, Your Honor.

24           There's just one other point I would like to raise,

25   but it's in connection with Mr. Franklin's filings.

1          THE COURT:  Sure.

2          MS. ROTHCHILD:  I'm not sure if now is the appropriate

3    time --

4          THE COURT:  Go ahead.

5          MS. ROTHCHILD:  -- but since he hasn't appeared

6    telephonically --

7          THE COURT:  Go ahead.  I want to hear it.

8          MS. ROTHCHILD:  So he had filed --

9          THE COURT:  He had notice of the hearing.  Go ahead.

10         MS. ROTHCHILD:  He did.  That is correct, Your Honor.

11   He did file two responses at docket numbers 6955 and 6967

12   relating to this objection that were substantially similar.  So

13   for that reason, the trust treated them as one filing.

14         But on June 3rd, Mr. Franklin did file two additional

15   documents at docket numbers 7043 and 7044 stating Mr.

16   Franklin's contentions as to certain filings that should not be

17   allowed.  Neither of those appear to relate to this sixty-third

18   omnibus claims objection; but again, the trust just wanted to

19   note for the record that they did not relate and again, since

20   Mr. Franklin isn't here to explain them --

21         THE COURT:  All right.  With respect to these two

22   additional documents, 7043 and 7044, they purport to be

23   opposition to Ally's motion to enforce this Court's order

24   regarding the plan support agreement which has been adjourned

25   to June 26, 2014, to that omnibus date and to which Mr.

RESIDENTIAL CAPITAL, LLC, ET AL.                    76

1    Franklin is not a party.

2           And the second is the debtor -- refers to the debtors'

3    sixty-first omnibus objection which the Court granted at the

4    last omnibus hearing and to which Franklin was not subject.

5    See the order granting ResCap borrowers claim trust sixty-first

6    omnibus objection to claims, no liability borrower claims.  ECF

7    docket number 7015.  Mr. Franklin hasn't appeared here today

8    and therefore -- I had intended to inquire of him about these

9    if he did, but he has not appeared in person or by telephone.

10          MS. ROTHCHILD:  Okay.  Thank you, Your Honor.  And

11   that is all with respect -- we'll submit a revised, I guess,

12   exhibits and the proposed order for signature.

13          THE COURT:  Thank you very much, Ms. Rothchild.

14          MS. ROTHCHILD:  Thank you, Your Honor.

15          THE COURT:  Thank you, Mr. Wishnew.

16          MR. WISHNEW:  Thank you, Your Honor.

17          THE COURT:  Thank you, Ms. Horst.

18          MR. WISHNEW:  One question for the record?

19          THE COURT:  Yeah.

20          MR. WISHNEW:  For the sixty-second omnibus objection,

21   may we submit the order less the claims you've taken under

22   advisement today?

23          THE COURT:  Yes, you can.

24          MR. WISHNEW:  Excellent.

25          THE COURT:  Yeah, I'll issue separate --

RESIDENTIAL CAPITAL, LLC, ET AL.                    77

1          MR. WISHNEW:  Yeah.

2          THE COURT:  -- decisions with respect to the ones I

3   took under advisement.

4          MR. WISHNEW:  Great.

5          THE COURT:  Okay.

6          MR. WISHNEW:  Thank you so much, Your Honor.

7          THE COURT:  Thank you.  All right.  We're adjourned.

8       (Whereupon these proceedings were concluded at 12:06 PM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              I N D E X

3

4                              RULINGS

5                                               Page      Line

6   Sixty-fourth omnibus objection to claims is    8        14

7   sustained and the claims are expunged other

8   than with respect to the claims by Marion

9   County and Galveston County

10  The sixty-fifth omnibus objection to claims   10        13

11  is sustained and the claims are expunged

12  The sixty-sixth omnibus objection to claims   13        21

13  is sustained

14  Objection to Ewings' claim (sixty-second      19         2

15  omnibus objection) is sustained.

16  Objection to Mr. Clark's claim 7135           68         2

17  sustained.

18  Objection to Thompson claim 7431              70         6

19  sustained

20  Objection to Tamara Carlson-Callahan          70        24

21  claim 7432 sustained

22  Objection to Franklin claim 7335              73         6

23  sustained

24  Objection to West claim 7322, sustained       74        22

25

1                              RULINGS

2                                              Page      Line

3    Sixty-second omnibus objection to claims      76        20

4    sustained, except as related to matters

5    under submission

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

80

1

2                              C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10   _____

11

12   PENINA WOLICKI

     AAERT Certified Electronic Transcriber CET**D-569

13

14

15   eScribers

16   700 West 192nd Street, Suite #607

17   New York, NY 10040

18

19   Date:  June 11, 2014

20

21

22

23

24

25