## Exhibit 1

**Delehey Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------
| )
In re:                                              | )    Case No. 12-12020 (MG)
| )
RESIDENTIAL CAPITAL, LLC, et al.,      | )    Chapter 11
| )
Debtors.      | )    Jointly Administered
| )
-------------------------------------------------------------------------

**DECLARATION OF LAUREN GRAHAM DELEHEY IN**
**SUPPORT OF RESCAP LIQUIDATING TRUST'S RESPONSE TO**
**LETTER TO JUDGE GLENN [DOCKET NOS. 6860 & 6863] AND SUPPLEMENT**
**TO BE INCORPORATED INTO BORROWER'S MOTION FOR RELIEF FROM THE**
**AUTOMATIC STAY  [DOCKET NOS. 7034, 7054 & 7071] FILED BY JORGE CERRON**

I, Lauren Graham Delehey, declare as follows:

**I.      Background and Qualifications**

1.      I serve as Chief Litigation Counsel for the ResCap Liquidating Trust (the

"**Liquidating Trust**") established pursuant to the terms of the Plan[1] in the above-captioned

chapter 11 cases.  During the chapter 11 cases, I served as Chief Litigation Counsel in the legal

department at Residential Capital, LLC ("**ResCap**"), a limited liability company organized under

the laws of the state of Delaware and the parent of the other debtors in the above-captioned

chapter 11 cases (collectively, the "**Debtors**").  I joined ResCap on August 1, 2011 as in-house

litigation counsel.

2.      In my role as litigation counsel at ResCap, I was responsible for the management

of litigation, including, among others, residential mortgage-related litigation.  I am generally

familiar with the Debtors' litigation matters, including the Foreclosure Proceeding.  In

connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional

advisors in connection with the administration of the chapter 11 cases, including borrower

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Response (as
defined below).

litigation matters pending before this Court.  In my current position as Chief Litigation Counsel

to the Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust in

connection with the claims reconciliation process.  I am authorized to submit this declaration (the

"**Declaration**") in support of the *ResCap Liquidating Trust's Response to Letter to Judge Glenn

[Docket Nos. 6860 & 6863] and Supplement to be Incorporated into Borrower's Motion for

Relief From the Automatic Stay [Docket Nos. 7034, 7054 & 7071]* (the "**Response**").

3.        Except as otherwise indicated, all facts set forth in this Declaration are based upon

my personal knowledge of the Debtors' operations, information learned from my review of

relevant documents (including litigation files) and information I have received through my

discussions with other former members of the Debtors' management or other former employees

of the Debtors and the Liquidating Trust's professionals and consultants.  If I were called upon to

testify, I could and would testify competently to the facts set forth in this Declaration on that

basis.

**II.        The History of the Note and Mortgage**

4.        On or about March 1, 2006, Movant executed an adjustable rate note (the "**Note**")

in favor of GreenPoint Mortgage Funding, Inc. in connection with Movant's purchase of an

investment property located at 5600 Beach Way, Unit 107, Sarasota, Florida 34231 (the

"**Property**").  Movant's obligations under the Note were secured by a mortgage (the

"**Mortgage**" and, together with the Note, the "**Loan**").  Subsequent to the Loan's origination,

GMAC Mortgage acted as subservicer of the Loan on behalf of a third-party investor.  According

to GMAC Mortgage's records, Movant had not made any payment on the Loan since his May

2009 payment.

2

### III.    The Foreclosure Proceeding

5.    On September 16, 2009, on account of Movant's delinquency satisfying his

contractual obligations under the Loan, GMAC Mortgage initiated a foreclosure proceeding in

the Circuit Court of the Twelfth Judicial Circuit, Sarasota County, Florida (the "**Foreclosure

Proceeding**").  A true and correct copy of the Complaint in the Foreclosure Proceeding is

attached hereto as Exhibit 1-A.

6.    On October 30, 2009, Movant filed an answer and three affirmative defenses,

alleging that GMAC Mortgage (i) failed to fulfill all contractual conditions precedent to

foreclosure, (ii) failed to provide a HUD counseling notice, and (iii) violated the Real Estate

Settlement Procedures Act.

7.    On April 11, 2011, Movant filed an amended answer (notwithstanding an order

allowing Movant until March 27, 2011 to amend his answer) with six new affirmative defenses

and three counterclaims not contained in his original answer (the "**Amended Answer**").  A true

and correct copy of the Amended Answer is attached hereto as Exhibit 1-B.

8.    On December 21, 2009, GMAC Mortgage filed a motion seeking summary

judgment in its favor in the Foreclosure Proceeding.

9.    By order dated July 5, 2011, the Trial Court granted the Debtor's motion for

summary judgment.  A true and correct copy of the Trial Court's July 5, 2011 order is attached

hereto as Exhibit 1-C.

10.    On July 11, 2011, Movant file a notice of appeal of the Trial Court's order

granting summary judgment in favor of GMAC Mortgage.

11.    On August 10, 2011, the clerk of the Trial Court executed and filed a Certificate

of Sale related to the Property.  Thereafter, on August 31, 2011, the clerk recorded a Certificate

of Title in favor of GMAC Mortgage.  A true and correct copy of the Certificate of Title is

attached hereto as Exhibit 1-D.

## IV.    The Appellate Court Decision

12.    On July 18, 2012, the District Court of Appeal of Florida, Second District (the

"**Court of Appeal**") issued an opinion reversing the Trial Court's decision on GMAC

Mortgage's summary judgment motion and remanding for further proceedings.  A true and

correct copy of the Court of Appeal's July 18, 2012 decision is attached hereto as Exhibit 1-E.

## V.    Subsequent Proceedings Before the Trial Court

13.    On October 22, 2012, GMAC Mortgage filed a Notice of Bankruptcy Filing and

Supplemental Servicing Order (the "**Notice of Bankruptcy**"), advising the Trial Court of the

Debtors' bankruptcy filings.  A true and correct copy of the Notice of Bankruptcy is attached

hereto as Exhibit 1-F.  Thereafter, Movant's counterclaims were stayed to the extent that they

sought monetary relief against GMAC Mortgage.

14.    On November 1, 2013, GMAC Mortgage filed a motion to substitute Ocwen Loan

Servicing, LLC ("**Ocwen**") as plaintiff in the Foreclosure Proceeding.  On December 17, 2013,

the Trial Court entered an order granting GMAC Mortgage's motion and substituting Ocwen as

plaintiff.  A true and correct copy of the Trial Court's December 17, 2013 order is attached

hereto as Exhibit 1-G.

15.    Ocwen continues to pursue the Foreclosure Proceeding subject to Movant's

affirmative defenses.[2]  Movant's counterclaims for monetary damages remain pending and

stayed as to GMAC Mortgage.

---

[2] Movant also filed counterclaims against Ocwen that mirror the counterclaims originally asserted against GMAC
Mortgage.  Although it is my understanding that Ocwen may contest the propriety of these counterclaims, the
Liquidating Trust does not contend that they are stayed.

16.     On May 14, 2014, Movant filed a motion seeking to cancel the Certificate of Title in favor of GMAC Mortgage and issue a new Certificate of Title in favor of Movant.  A hearing on Movant's motion has been scheduled for June 19, 2014.

**VI.     Movant's Allegations Regarding Insurance Proceeds**

17.     As far as I have been able to ascertain from a review of the Debtors' records, GMAC Mortgage did not receive any mortgage insurance proceeds with respect to the Property and does not have a record of a mortgage insurance policy covering the Loan.

5

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated:  June 12, 2014

       /s/  Lauren Graham Delehey

Lauren Graham Delehey
In-House Litigation Counsel for
The ResCap Liquidating Trust

## Exhibit 1-A

**Complaint in the Foreclosure Proceeding**

**IN THE CIRCUIT COURT OF THE TWELFTH
JUDICIAL CIRCUIT IN AND FOR SARASOTA COUNTY,
FLORIDA
CIVIL ACTION**

1932573
E-FILED: 09/16/09

GMAC MORTGAGE, LLC,
    **Plaintiff,**

vs.

    CASE NO. 2009 CA 015793 NC
    **DIVISION**         SPACE FOR RECORDING ONLY F.S.§695.26

JORGE A. CERRON; THE UNKNOWN SPOUSE OF JORGE A. CERRON; ANY AND ALL UNKNOWN
PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL
DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN
PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER
CLAIMANTS; SUNTRUST BANK; BEACH WAY CONDOMINIUM ASSOCIATION, INC.; TENANT #1,
TENANT #2, TENANT #3, and TENANT #4 the names being fictitious to account for parties in possession
    **Defendant(s).**

<u>**NOTICE OF LIS PENDENS**</u>

To the above-named Defendant(s) and all others whom it may concern:

You are notified of the institution of this action by the above-named Plaintiff, against you seeking to foreclose a

mortgage recorded on March 16, 2006, in Official Instrument # 2006049301 of the Public Records of SARASOTA

County, Florida

    UNIT G-1, BEACH WAY APARTMENTS, A CONDOMINIUM AS PER DECLARATION OF
    CONDOMINIUM RECORDED IN OFFICIAL RECORDS BOOK 846, PAGES 731 ET SEQ., AND
    ALL AMENDMENTS THERETO, AND AS PER CONDOMINIUM PLAT RECORDED IN
    CONDOMINIUM BOOK 4, PAGES 6 ET SEQ., AND ALL AMENDMENTS THERETO, OF THE
    PUBLIC RECORDS OF SARASOTA COUNTY, FLORIDA. TOGETHER WITH ANY AND ALL
    AMENDMENTS TO THE DECLARATION AND ANY UNDIVIDED INTEREST IN THE
    COMMON ELEMENTS OR APPURTENANCES THERETO.

Dated this 14th day of September, 2009.

        Florida Default Law Group, P.L.
        P.O. Box 25018
        Tampa, Florida 33622-5018
        (813) 251-4766
        By: 
        Robert Schneider
        Florida Bar No. 52854
        Nikolay Kolev
        Florida Bar No. 0028005

GMAC-CONV—abiven

FILE_NUMBER: F09095434                DOC_ID: M000105

**IN THE CIRCUIT COURT OF THE TWELFTH**
**JUDICIAL CIRCUIT IN AND FOR SARASOTA COUNTY, FLORIDA**
**CIVIL ACTION**

**GMAC MORTGAGE, LLC,**
    **Plaintiff,**

                                                **CASE NO.**
vs.                                             **DIVISION**

**JORGE A. CERRON; THE UNKNOWN SPOUSE OF JORGE A. CERRON; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; SUNTRUST BANK; BEACH WAY CONDOMINIUM ASSOCIATION, INC.; TENANT #1, TENANT #2, TENANT #3, and TENANT #4 the names being fictitious to account for parties in possession**
          **Defendant(s).**
_____ . _____/

## MORTGAGE FORECLOSURE COMPLAINT

Plaintiff, GMAC MORTGAGE, LLC, sues Defendants,    JORGE A. CERRON,  THE UNKNOWN SPOUSE OF JORGE A. CERRON; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; SUNTRUST BANK;  BEACH WAY CONDOMINIUM ASSOCIATION, INC.; TENANT #1, TENANT #2,  TENANT #3 and  TENANT #4 the names being fictitious to account for parties in possession, and alleges:

## COUNT I - MORTGAGE FORECLOSURE

1.    This is an in rem action to foreclose a mortgage on real property located and situated in SARASOTA County, Florida.

2.    This firm has complied with the notice requirement of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq, as amended.  The Notice(s) previously mailed by the firm is attached hereto and incorporated herein as an Exhibit.

FILE_NUMBER: F09095434                    DOC_ID: M000100



3.      On March 1, 2006, there was executed and delivered a Promissory Note ("Mortgage Note") and a Mortgage ("Mortgage") securing the payment of the Mortgage Note. The Mortgage was recorded on March 16, 2006, in Official Instrument # 2006049301 of the Public Records of SARASOTA County, Florida, (All subsequent recording references are to the public records of SARASOTA County, Florida) and mortgaged the real and personal property ("Property") described therein, then owned by and in possession of the Mortgagor(s). Copies of the original Mortgage Note and Mortgage are attached hereto and incorporated herein as an Exhibit.

4.      Plaintiff is now the holder of the Mortgage Note and Mortgage and/or is entitled to enforce the Mortgage Note and Mortgage.

5.      The Property is now owned of record by Defendant(s), JORGE A. CERRON.

6.      The Mortgage Note and Mortgage are in default. The required installment payment of June 1, 2009, was not paid, and no subsequent payments have been made. The Mortgage is contractually due for the June 1, 2009, payment. The last payment received was applied to the May 1, 2009, installment, and no subsequent payments have been applied to the loan.

7.      Plaintiff declares the full amount payable under the Mortgage Note and Mortgage to be now due.

8.      Plaintiff must be paid $607,361.65 in principal on the Mortgage Note and Mortgage, together with interest from May 1, 2009, late charges, and all costs of collection including title search expenses for ascertaining necessary parties to this action and reasonable attorney's fees.

9.      All conditions precedent to the acceleration of the Mortgage Note and foreclosure of the Mortgage have been performed or have occurred.

10.     Plaintiff has retained the law firm of Florida Default Law Group, P.L., in this action and is obligated to pay it a reasonable fee for its services in bringing this action as well as all costs of collection.

11.     The interests of each Defendant are subject, subordinate, and inferior to the right, title, interest, and lien of Plaintiff's Mortgage with the exception of any special assessments that are superior pursuant to Florida Statutes §159 (2006) and Florida Statutes §170.09 (2006).

12.     THE UNKNOWN SPOUSE OF JORGE A. CERRON may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of homestead rights, possession, or any right of redemption, or may otherwise claim an interest in the Property.

13.     SUNTRUST BANK may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Mortgage recorded in Instrument No. 2006167429, or may otherwise claim an interest in the Property.

2

14.    BEACH WAY CONDOMINIUM ASSOCIATION, INC. may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of any unpaid condominium assessments levied pursuant to the Declaration of Condominium and any interest acquired pursuant to Chapter 718 F.S.; a Claim of Lien recorded in Instrument No. 2009070832, or may otherwise claim an interest in the Property.

15.    TENANT #1, TENANT #2, TENANT #3 and TENANT #4, the names being fictitious to account for parties in possession may claim some interest in the Property that is the subject of this foreclosure action by virtue of an unrecorded lease or purchase option, by virtue of possession, or may otherwise claim an interest in the Property. The names of these Defendants are unknown to the Plaintiff.

WHEREFORE, Plaintiff requests that the Court ascertain the amount due Plaintiff for principal and interest on the Mortgage Note and Mortgage and for late charges, abstracting, taxes, expenses and costs, including attorney's fees, plus interest thereon; that if the sums due Plaintiff under the Mortgage Note and Mortgage are not paid immediately, the Court foreclose the Mortgage and the Clerk of the Court sell the Property securing the indebtedness to satisfy Plaintiff's mortgage lien in accordance with the provisions of Florida Statutes §45.031 (2006); that the rights, title and interest of any Defendant, or any party claiming by, through, under or against any Defendant named herein or hereafter made a Defendant be forever barred and foreclosed; that the Court appoint a receiver of the Property and of the rents, issues, income and profits thereof, or in the alternative, order sequestration of rents, issues, income and profits pursuant to Florida Statutes §697.07 (2006); and that the Court retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including the issuance of a writ of possession and the entry of a deficiency decree, when and if such deficiency decree shall appear proper, if borrower(s) has not been discharged in bankruptcy.


Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
(813) 251-4766

By: _____
Robert Schneider
Florida Bar No. 52854
Nikolay Kolev
Florida Bar No. 0028005


GMAC-CONV--abiven

3

**FLORIDA DEFAULT LAW GROUP, P.L.**
ATTORNEYS AT LAW
9119 CORPORATE LAKE DRIVE
3RD FLOOR
TAMPA, FLORIDA 33634

Please reply to:                                                                     Telephone (813) 251-4766
Post Office Box 25018                                                          Telefax (813) 251-1541
Tampa, FL 33622-5018

September 11, 2009

JORGE A. CERRON
PO BOX 18902
SARASOTA, FL  34276

Re:

| | |
|---|---|
| Loan Number: | 0307674906 |
| Mortgage Servicer | GMAC MORTGAGE, LLC |
| Creditor to whom the debt is owed: | GMAC MORTGAGE, LLC |
| Property Address: | 5600 BEACH WAY UNIT #107, SARASOTA, FL  34231 |
| Our File No.: | F09095434 |

Dear Borrower:

The law firm of Florida Default Law Group, P.L. (hereinafter referred to as "law firm") has been retained to represent GMAC MORTGAGE, LLC with regards to its interests in the promissory Note and Mortgage executed by JORGE A. CERRON  on March 1, 2006. Pursuant to the terms of the promissory Note and Mortgage, our client has accelerated all sums due and owing, which means that the entire principal balance and all other sums recoverable under the terms of the promissory Note and Mortgage are now due.

As of the date of this letter, the amount owed to our client is $620,225.60, which includes the unpaid principal balance, accrued interest through today, late charges, and other default-related costs recoverable under the terms of the promissory Note and Mortgage.   Additional interest will accrue after the date of this letter.

This correspondence is being sent to comply with the Fair Debt Collection Practices Act and should not be considered a payoff letter. Our client may make advances and incur fees and expenses after the date of this letter which are recoverable under the terms of the promissory Note and Mortgage.  Therefore, if you wish to receive figures to reinstate (bring your loan current) or pay off your loan through a specific date, please contact this law firm at (813) 251-4766 or client.services@defaultlawfl.com.

Unless you notify this law firm within thirty (30) days after your receipt of this letter that the validity of this debt, or any portion thereof, is disputed, this law firm will assume that the debt is valid.  If you do notify this law firm in writing within thirty (30) days after receipt of this letter that the debt, or any portion thereof, is disputed, this law firm will obtain verification of the debt or a copy of the judgment against you, if any, and mail it to you. Also, upon your written request within thirty (30) days after your receipt of this letter, this law firm will provide you with the name and address of the original creditor, if different from the current creditor.  Florida Default Law Group, P.L. is a debt collector.  This law firm is attempting to collect a debt, and any information obtained will be used for that purpose.

All written requests should be addressed to Robert Schneider, Florida Default Law Group, P.L., P.O. Box 25018, Tampa, Florida  33622-5018.

This law firm is in the process of filing a Complaint on the promissory Note and Mortgage to foreclose on real estate. The advice in this letter pertains to your dealings with this law firm as a debt collector. It does not affect your dealings with the Court, and in particular, it does not change the time at which you must answer the Complaint. The Summons is a command from the Court, not from this law firm, and you must follow its instructions even if you dispute the validity or amount of the debt. The advice in this letter also does not affect this law firm's relations with the Court. This law firm may file papers in the suit according to the Court's rules and the judge's instructions.

Finally, if you previously received a discharge in a bankruptcy involving this loan and did not sign a reaffirmation agreement, then this letter is not an attempt to collect a debt from you personally. This law firm is seeking solely to foreclose the creditor's lien on real estate and this law firm will not be seeking a personal money judgment against you.

If you have questions regarding this matter, please do not hesitate to contact this law firm.

Sincerely,

Florida Default Law Group, P.L.

## NOTICE

**Florida Default Law Group, P.L. is a debt collector. This Firm is attempting to collect a debt, and information obtained may be used for the purpose.**

RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2006049301 26 PGS
2006 MAR 16 01:33 PM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY,FLORIDA
MTAYLOR   Receipt#761221
Doc Stamp-Mort:      1,960.00
Intang. Tax:      1,120.00

*Return to: 170*
*ABLE TITLE COMPANY*
*1978 Tamiami Trl, S, Suite 3*
*Venice, FL 34293*

**Prepared by or under the supervision of:**

**Brenda Akers**
*[Name of Natural Person]*

**1800 Pembrook Drive Suite 190**
*[Street Address]*

**Orlando, FL 32810**
*[City, State Zip Code]*

~~After recording please return to:~~

**GreenPoint Mortgage Funding, Inc.**
*[Company Name]*

*[Name of Natural Person]*

**981 Airway Court, Suite E**
*[Street Address]*

**Santa Rosa, CA, 95403-2049**
*[City, State Zip Code]*

2060225    _____ *[Space Above This Line For Recording Data]* _____

# MORTGAGE

**MIN: 100013800889432122**

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)**    **"Security Instrument"** means this document, which is dated **March 1, 2006**, together with all Riders to this document

**(B)**    **"Borrower"** is Jorge A Cerron, An Unmarried Man

. Borrower is the mortgagor under this Security Instrument

**(C)**    **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.**   MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.



G P M W D 0 0 8 8 9 4 3 2 1 2 1 1 7

**(D)** "**Lender**" is GreenPoint Mortgage Funding, Inc..
Lender is a Corporation organized and existing under the laws of
the State of New York. Lender's address is **100 Wood Hollow Drive, Novato, CA 94945**.

**(E)** "**Note**" means the promissory note signed by Borrower and dated **March 1, 2006**. The Note states that
Borrower owes Lender **Five Hundred Sixty Thousand and 00/100ths**
                                                          Dollars (U.S. $560,000.00)
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not
later than **March 1, 2036**

**(F)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the
Property."

**(G)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due
under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower *[check box as applicable]*:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☒ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Revocable Trust Rider | |
| ☒ Other(s) *[specify]* **Occupancy & Interim Int. Rider** | | |

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable
judicial opinions.

**(J)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association or
similar organization.

**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer,
or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions; transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.

**(L)** "**Escrow Items**" means those items that are described in Section 3.

**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to,
or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance
in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)**    **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)**    **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)**    **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)**    **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County                    of Sarasota                    :
                    *[Type of Recording Jurisdiction]*          *[Name of Recording Jurisdiction]*
**As more particularly described in exhibit "A" attached hereto and made a part hereof.**

which currently has the address of 5600 Beach Way Unit 107
                    *[Street]*
**Sarasota**                    , Florida 34231                    ("Property Address"):
          *[City]*                    *[Zip Code]*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.



G P M W D 0 0 8 8 9 4 3 2 1 2 1 1 7

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the

G P M W D 0 0 8 8 9 4 3 2 1 2 1 1 7

Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or

defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.

---



G  P  M  W  D  0  0  8  8  9  4  3  2  1  2  1  1  7

If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not

limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.



G P M W D 0 0 8 8 9 4 3 2 1 2 1 1 7

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail



G P M W D 0 0 8 8 9 4 3 2 1 2 1 1 7

to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under

the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  **Hazardous Substances.**  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.


NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.  **Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the**



action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. **Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

Witnesses:

Joan Whittaker
Printed Name:    [Please Complete]

Marietta Jones
Printed Name:    [Please Complete]

_____ (Seal)
Jorge A Cerron                     -Borrower
                                   [Printed Name]

Mailing Address: **5600 Beach Way Unit 107, Sarasota, FL 34231**

_____ (Seal)
                                   -Borrower
                                   [Printed Name]

Mailing Address:

_____ (Seal)
                                   -Borrower
                                   [Printed Name]

Mailing Address:

_____ (Seal)
                                   -Borrower
                                   [Printed Name]

Mailing Address:

State of  Florida                            §
                                             §
County of  Sarasota                          §

    The foregoing instrument was acknowledged before me this   March 1,  2006                 ,
*[date]* by Jorge A Cerron

who is personally known to me or who has produced          *[name of person acknowledging]*,
*[type of identification]* as identification.        drivers license

                                    _____
                                      Signature of Person Taking Acknowledgment

                                      Joan F. Whittaker
                                      Name Typed, Printed or Stamped

JOAN E. WHITTAKER
MY COMMISSION # DD 468628
EXPIRES: December 19, 2009
Bonded Thru Budget Notary Services

                                      _____
                                      Title or Rank

                                      _____
                                      Serial Number, if any

Florida Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3010 01/01
—THE COMPLIANCE SOURCE, INC.—                    Page 15 of 15                              14304FL 04/02
www.compliancesource.com                                                              © 2000, The Compliance Source, Inc

G P M W D 0 0 8 8 9 4 3 2 1 2 1 1 7

**Schedule A**

Unit G-1, Beach Way Apartments, a Condominium as per
Declaration of Condominium recorded in Official Record
Book 846, Page 731, and as amended and as per
Condominium Plat recorded in Condominium Book 4, Page 6,
and as amended, Public Records of Sarasota County, Florida.

Loan Number: 0088943212

## INTERIM INTEREST RIDER TO
## ADJUSTABLE RATE RIDER AND MORTGAGE, DEED OF TRUST OR
## DEED TO SECURE DEBT

This Rider is made this 1st day of **March, 2006**, and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Rider (the "Rider") and the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument") of the same date herewith, given by undersigned ("Borrower") to evidence Borrower's indebtedness to **GreenPoint Mortgage Funding, Inc.** its successors and assigns ("Lender") which indebtedness is secured by a Security Instrument and covering the property described in the Security Instrument and located at:

**5600 Beach Way Unit 107, Sarasota, FL 34231**

Notwithstanding anything to the contrary set forth in the Note, Rider and Security Instrument, Lender and Borrower hereby acknowledge and agree to the following.

2.  **INTEREST**
    **(A) Interest Rate**
    Interest will be charged on unpaid principal until the full amount of Principal has been paid. Until the first day of the calendar month that immediately precedes the first payment date set forth in Section 3(A) of the Note, I will pay interest at a yearly rate of 7.375%. Thereafter, I will pay interest at a yearly rate of 1.500%, until the first Interest Change Date (as defined in Section 2(B) of the Note).

    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

All other provisions of the Note, Rider and Security Instrument are unchanged by this Addendum and remain in full force and effect.



| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| Jorge A. Cerron          -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |

G P M W D 0 0 8 8 9 4 3 2 1 2 1 4 0

Loan Number: 0088943212

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 1st day of **March, 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **GreenPoint Mortgage Funding, Inc.**

(the "Lender")

of the same date and covering the Property described in the Security Instrument and located at:

**5600 Beach Way Unit 107, Sarasota, FL 34231**

*[Property Address]*

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

**Beachway Apts**

*[Name of Condominium Project]*

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.  Condominium Obligations.**  Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code or regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B.  Property Insurance.**  So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the monthly payment to Lender of the yearly premium installments for property insurance on the

G  P  M  W  D  0  0  8  8  9  4  3  2  1  2  1  1  7

Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C.   Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D.   Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E.   Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.   Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

G P M W D 0 0 8 8 9 4 3 2 1 2 1 1 7

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
Condominium Rider.

_____ (Seal)        _____ (Seal)
Jorge A Cerrata                -Borrower                                          -Borrower

_____ (Seal)        _____ (Seal)
                               -Borrower                                          -Borrower

*[Sign Original Only]*

Multistate Condominium Rider — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3140 01/01
—THE COMPLIANCE SOURCE, INC.—                                    Page 3 of 3                                                        14342MU 08/00
www.compliancesource.com                                                                                              ©2000, The Compliance Source, Inc.

G P M W D 0 0 8 8 9 4 3 2 1 2 1 1 7

Loan Number: 0088943212

# OCCUPANCY RIDER TO MORTGAGE/
# DEED OF TRUST/SECURITY DEED

THE OCCUPANCY RIDER is made this **1st day of March, 2006**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to **GreenPoint Mortgage Funding, Inc.** (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**5600 Beach Way Unit 107, Sarasota, FL 34231**
("Property Address")

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

1. That the above-described property will be personally occupied by the Borrower as their principal residence within 60 days after the execution of the Security Instrument and Borrower shall continue to occupy the property as their principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld.

2. That if residency is not established as promised above as well as in the Security Instrument, the Lender may, without further notice, take any or all of the following actions:

   a. increase the interest rate on the Note by one-half of one percent (0.500%) per annum on a fixed-rate loan or increase the Margin on an Adjustable Rate Note by one-half of one percent (0.500%) per annum and to adjust the principal and interest payments to the amount required to pay the loan in full within the remaining term; and/or

   b. charge a non-owner occupancy rate adjustment fee of two percent (2.00%) of the original principal balance and/or

   c. require payment to reduce the unpaid principal balance of the loan to the lesser of (1) 70% of the purchase price of the property or (2) 70% of the appraised value at the time the loan was made. The reduction of the unpaid principal balance shall be due and payable within thirty (30) days following receipt of a written demand for payment, and if not paid within thirty (30) days will constitute a default under the terms and provisions of the Note and Security Instrument, and/or



G P M W D 0 0 8 8 9 4 3 2 1 2 1 1 7

d.  declare a default under the terms of the Note and Security Instrument and begin foreclosure proceedings, which may result in the sale of the above-described property; and/or

e.  refer what is believed to be fraudulent acts to the proper authorities for prosecution.  It is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements or reports for the purpose of influencing in any way the action of the Lender in granting a loan on the above property under the provisions of TITLE 18, UNITED STATES CODE, SECTIONS 1010 AND 1014.

It is further understood and agreed that any forbearance by the Lender in exercising any right or remedy given here, or by applicable law, shall not be a waiver of such right or remedy.

Should any clause, section or part of this Occupancy Rider be held or declared to be void or illegal for any reason, all other clauses, sections or parts of this Occupancy Rider which can be effected without such illegal clause, section or part shall nevertheless continue in full force and effect

It is further specifically agreed that the Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies set forth above, including but not limited to, reasonable attorney's fees.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Occupancy Rider.

_____ (Seal)          _____ (Seal)
Jorge A Cerron         -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                 -Borrower

Occupancy Rider to Mortgage/Deed of Trust/Security Deed
GreenPoint Mortgage Funding                          Page 2 of 2                          H74670MU 09/05 Rev. 01/06
March 1, 2006

G  P  M  W  D  0  0  8  8  9  4  3  2  1  2  1  1  7

Loan Number: 0088943212

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Payment and Rate Caps)

**MIN: 100013800889432122**

THIS ADJUSTABLE RATE RIDER is made this 1st day of **March, 2006**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **GreenPoint Mortgage Funding, Inc.** (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**5600 Beach Way Unit 107, Sarasota, FL 34231**
*[Property Address]*

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE BORROWER'S MONTHLY PAYMENT INCREASES MAY BE LIMITED AND THE INTEREST RATE INCREASES ARE LIMITED.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

**2.   INTEREST**
**(A)   Interest Rate**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 1.500%. The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of the Note
**(B)   Interest Change Dates**
The interest rate I will pay may change on the first day of April, 2006, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."
The new rate of interest will become effective on each Interest Change Date.
**(C)   Interest Rate Limit**



GPMWD008894321 2117

My interest rate will never be greater than 12.000%.

**(D)    The Index**

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 15 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(E)    Calculation of Interest Rate Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **Two and 750/1000ths** percentage points (**2.750%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the rounded amount will be my new interest rate until the next Interest Change Date.

**3.    PAYMENTS**

**(A)    Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on April 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on March 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 1093, Branford, CT 06405-8093 or at a different place if required by the Note Holder.

**(B)    Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $1,932.68. This amount may change.

**(C)    Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the 1st day of April, 2008, and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay the Full Payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)    Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." The Note Holder will then calculate the amount of my monthly payment due the month preceding the Payment Change Date multiplied by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, I may choose to pay the Limited Payment.

**(E)    Additions to My Unpaid Principal**

Multistate Adjustable Rate Rider (LIBOR Index)— Single Family Freddie Mac UNIFORM INSTRUMENT
GreenPoint Mortgage Funding                     Page 2 of 4                 Modified Form 3112 H62001MU 06/05
March 1, 2006                                                               Modified By GreenPoint Mortgage Funding

G P M W D 0 0 8 8 9 4 3 2 1 2 1 1 7

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder will also add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above.

    **(F)    Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to one hundred ten percent (110%) of the Principal amount I originally borrowed. My unpaid principal could exceed that maximum amount due to the Limited Payments and interest rate increases. If so, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount which would be sufficient to repay my then unpaid principal in full on the Maturity Date at my current interest rate in substantially equal payments.

    **(G)    Required Full Payment**

On April 1, 2011 and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I will also begin paying the Full Payment as my monthly payment on the final Payment Change Date.

**B.**    **TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows

    **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any Interest in the property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

    To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

    If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the

Multistate Adjustable Rate Rider (LIBOR Index)— Single Family--Freddie Mac UNIFORM INSTRUMENT
GreenPoint Mortgage Funding            Page 3 of 4            Modified Form 3112 H62001MU 06/05
March 1, 2006                                    Modified By GreenPoint Mortgage Funding

G P M W D 0 0 8 8 9 4 3 2 1 2 1 1 7

expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Jorge A Cerron                  -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

*[Sign Original Only]*

Multistate Adjustable Rate Rider (LIBOR Index)— Single Family--Freddie Mac UNIFORM INSTRUMENT
GreenPoint Mortgage Funding                Page 4 of 4              Modified Form 3112 H62001MU 06/05
March 1, 2006                                                      Modified By GreenPoint Mortgage Funding

G P M W D 0 0 8 8 9 4 3 2 1 2 1 1 7

## **Exhibit 1-B**

### **Amended Answer**

IN THE CIRCUIT COURT, TWELFTH
JUDICIAL CIRCUIT, IN AND FOR
SARASOTA COUNTY, FLORIDA
CASE NO.: 2009 CA 015793 NC
DIVISION:

GMAC MORTGAGE LLC.
        **Plaintiff,**

vs.

JORGE A. CERRON, et al,
        **Defendants.**

_____/

## FIRST AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO GMAC'S FORECLOSURE COMPLAINT AND MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT AND DEFENDANT'S MOTIONS TO ABATE AND/OR STAY
(Including a Qualified Written Request As per RESPA'S Law)

**COMES NOW**, the Defendant, GEORGE CERRON, and for his answer and affirmative defenses to the plaintiff=s complaint, states:

## ANSWERS TO COUNT I

1.    **DENIED,** plaintiff alleges in count one section number one, of its complaint against the defendants that, this is an action to foreclosure, however the plaintiff erred by filing this foreclosure action against the defendants on 09/16/2009, when at that date comes to court with out the pertinent original promissory note, the plaintiff is not allowed by the substantive law to reestablish the promissory note after or while the plaintiff is into a foreclosure process for said note, initiated by the plaintiff in the first place, **the law clearly states that the plaintiff can not cure this defect of not having the note while it is enforcing a foreclosure action**, Courts have held that a party's lack of standing is a defect that cannot be cured by acquiring the right of standing after action has already

been filed.  See _Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,_ 484 U.S.

49, 69 (1987) (Scalia, J., concurring) ("Subject matter jurisdiction depends on the state

of things at the time of the action brought).  See Also _Progressive Exp. Ins. Co._, 913

So.2d 1281.  Compare to _Dasma Investments, LLC v. Realty Assoc. Fund III, LP_, 459 F.

Supp. 2d 1294, 1302 (S.D. Fla., 2006)(Party suing on Promissory Note must be in actual

possession of the original note to have standing). The plaintiff in this instant case has

failed to show to this court that it is in  actual possession of the promissory note that it is

suing on at the time of its initial filing on 09/16/2009, the plaintiff has attached to its

original complaint a mere copy of the mortgage and note copied from the official records

computerized system which is not regarded as a valid proof or evidence to validate its

claims, that is why the plaintiff in this instant action has attempted to amended this error

by filing the mortgage and copy of the original note on 03/24/2010 making this act a

clear action of a plaintiff's amendment to its original foreclosure complaint , since said

amendment took place after the date that the Florida Rule of Civic Procedure 1.110(b)

went into affect on 02/11/2010 and the plaintiff's amendment occurred on 03/24/3010

therefore the plaintiff was legally bound to comply with said Rule, further said rule clearly

requires the verification of all foreclosure complaints, the non compliance with rule 1.110

(b) is penalize with the immediate dismissal of the unverified foreclosure complaint, this

court should dismiss the plaintiff GMAC's foreclosure complaint pursuant rule 1.110(b)

and order an immediate relief in favor of the defendant Jorge Cerron.

The plaintiff's disregards of the law is evident, because the plaintiff has failed to filed  the

original note in question before the commencement of this foreclosure action against the

defendants, in other words the plaintiff should had cured this defect by obtaining the

original note in question before the filing of the lis pendens and this foreclosure

complaint against the defendants, as a consequence of the plaintiff's disregards for the

law , the lis pendes and this foreclosure action filed by the plaintiff against the defendant

are defective, therefore unenforceable, and      null, further, the plaintiff is not the real

party in interest in this action, and as the plaintiff has admitted by its own statements,

"**the plaintiff GMAC is only the servicer**", thus it is not the owner and holder of the note

in question consequently it has no stake in this instant case, therefore it is not a real

party in interest in this action. **Standing requires that the party prosecuting the claim**

**have a sufficient stake in the outcome and that the party bringing the claim be**

**recognized in the law as being a real party in interest entitled to bring the claim.**

**This entitlement to prosecute a claim in Florida courts rests exclusively in those**

**persons granted by substantive law, the power to enforce the claim.** *Kumar Corp.*

*v. Nopal Lines, Ltd, et al*, **462 So.2d 1178 (Fla. 3d DCA 1985).**


2.      **DENIED,** The plaintiff is not, and/or **was not legally authorized to invoke the**

**jurisdiction of this court pursuant 57.011 is a nonresident plaintiff,** therefore

GMAC is an unauthorized entity to filed this instant foreclosure complaint against

the defendant. it appears that the plaintiff has failed to file the bond required by the

law, therefore the defendant would like to request to this court to dismiss this

instant case, pursuant **57.011 Costs; security by nonresidents.** When a

nonresident plaintiff begins an action or when a plaintiff after beginning an action

removes himself or herself or his or her effects from the state, he or she shall file a

bond with surety to be approved by the clerk of $100, conditioned to pay all costs

which may be adjudged against him or her in said action in the court in which the

action is brought. On failure to file such bond within 30 days after such

commencement or such removal, the defendant may, after 20 days' notice to

plaintiff (during which the plaintiff may file such bond), move to dismiss the action

or may hold the attorney bringing or prosecuting the action liable for said costs and

if they are adjudged against plaintiff, an execution shall issue against said attorney,

therefore the Plaintiff's lis pendens and foreclosure action against the defendants are

defective and null, according to the lis pendens law if any of the elements needed to file

a lis pendens is incorrect, the lis pendens becomes defective, in this instant case

GMAC's lack of capacity because it was not legally authorized in the state of Florida at

the time of the execution and filing of its foreclosure complaint against the defendant

Jorge Cerron, and the plaintiff's disregard for the substantive law has made its lis

pendens and its foreclosure complaint against the defendant **invalid and illegal,**

therefore unenforceable, as per the pertinent law for the lis pendens, it reads as follows;

"**A notice of lis pendens must contain the names of the parties, the time of the**

**action, the name of the court in which the lawsuit is pending, a description of the**

**property involved or to be affected, and a statement of the relief sought. If a notice**

**fails to include any of these elements <u>or if any of the information is incorrect, the</u>**

**<u>lis pendens is ineffective</u>**".  As per the pertinent law to the plaintiff's lack of capacity to

sue it reads as follow;

(a) Capacity. It is not necessary to aver the capacity of a party to sue or be
    sued, the authority of a party to sue or be sued in a  representative
    capacity, or the legal existence of an organized      association of
    persons that is made a party, except to the    extent required to show
    the jurisdiction of the court. (**emphasis added**). The initial pleading
    served on behalf of a minor party shall specifically aver the age of the
    minor party.

(b) When a party desires to raise an issue as to the legal      existence of
    any party, the capacity of any party to sue or        be sued, or the
    authority of a party to sue or be sued in a representative capacity, <u>that
    party shall do so by specific negative averment which shall include such
    supporting particulars as are peculiarly within the pleader's knowledge.
    The  issue of capacity to sue may be raised by motion to dismiss
    where the defect appears on the face of the complaint.</u> Coburn      v.
    Coleman, D.C.W.D.S.C., 75 F. Supp. 107; Brush v. Harkins,
    D.C.W.D.Mo., 9 F.R.D. 604. Plumbers Loc. U.N. 519, Miami Fla. V.
    Serv. Plbg., 401 F. Supp. 1008 (1975), Shaw v. Stutchman,      105

Nev. 128 (1989); 771 P.2d 156; Klebanow v. New York    Produce
Exchange, 344 F.2d 294 (2d Cir. 1965); Tractortechnic Gebrueder
Kulenkempft v. Bousman, 301 F. Supp 153 (1969).

In this specific case at hand the defendant would like to aver the fact that the plaintiff

GMAC is an unauthorized entity to filed this instant foreclosure complaint against

the defendant. it appears that the plaintiff has failed to file the bond required by the

law, therefore the defendant would like to request to this court to dismiss this

instant case, pursuant **57.011 Costs; security by nonresidents, plaintiff** was not

registered with the Secretary of State in Florida at the time of the  filing of this

foreclosure complaint between the plaintiff GMAC and the defendant Jorge Cerron, thus

clearly showing GMAC's lack of capacity to file a lis pendens and/or a foreclosure suit

against the defendants much less its lack of capacity to enforce this action based on a

mortgage and promissory note that the plaintiff neither owned nor hold in the first

place.. GMAC's lack of capacity is a fact, this fact has been proved by the plaintiff's own

exhibits attached to its complaint, said documents contradicts the plaintiff's claims of

being the real party in interest in this instant action, and because this issue of the

plaintiff's lack of capacity (defect) appears on the face of this complaint, the defendants

would like to request to this honorable court for the immediate dismiss of the plaintiff's lis

pendens and foreclosure suit filed against the defendants, just as the substantive

law observes in such cases. The issue is very simple. In any court action, if a

Plaintiff foreign corporation fails to register with the Secretary of State, the case is

dismissed pursuant to Chapter 607. (607.1501).


3.      Admit, Plaintiff alleges on count one section number three of its foreclosure

complaint against the defendants that there is a record of the mortgage in question in

the public records of Sarasota County, however the plaintiff failed to acknowledge the

true colors of truth of said records because the Mortgage and promissory note recorded

in the public records of Sarasota County clearly showed that the plaintiff GMAC is not

the owner of said Mortgage and Note , further it shows a different real party in interest as

the owner of Mortgage and the promissory note in question, however plaintiff also

contradicts itself when states in section number four of count I, that he is the holder of the Mortgage note and Mortgage the plaintiff clearly is misleading this court specially whet its exhibits attached to its complaint are conflicting with its claims of ownership of the Mortgage and Mortgage note, the law is clear in this issue : **"when the plaintiff's complaint and exhibits are conflicting the exhibits prevail"** , therefore the plaintiff have no standing to foreclose when it has not proved its ownership interest of the property it intents to foreclose. Courts have held that a party's lack of standing is a defect that cannot be cured by acquiring the right of standing after action has already been filed. *See Gwaltney of Smithfield, Ltd. v. Chesapeake  Bay Found., Inc.,* 484 U.S. 49, 69 (1987) (Scalia, J., concurring) ("Subject matter jurisdiction depends on the state of things at the time of the action brought). *See Also Progressive Exp. Ins. Co.,* 913 So.2d 1281. *Compare to Dasma Investments, LLC v. Realty Assoc. Fund III, LP,* 459 F. Supp. 2d 1294, 1302 (S.D. Fla., 2006)(Party suing on Promissory Note must be in actual possession of the original note to have standing).

4.    **DENIED,** the plaintiff contradicts itself when states in section number four of count I, that he is the holder of the Mortgage note and Mortgage the plaintiff clearly is misleading this court specially whet its exhibits attached to its complaint are conflicting with its claims of ownership of the Mortgage and Mortgage note, the law is clear in this issue : **"when the plaintiff's complaint and exhibits are conflicting the exhibits prevail"** , therefore the plaintiff have no standing to foreclose when it has not proved its ownership interest of the property it intents to foreclose. Courts have held that a party's lack of standing is a defect that cannot be cured by acquiring the right of standing after action has already been filed, thus validating the defendant claim that states that "the plaintiff does not have standing to foreclose on the defendant's property when it comes to court without a valid and coherent ownership proof of the promissory note and mortgage in question", further plaintiff is not the real party in interest in this action, the only document attached to its foreclosure complaint against the defendant is the mortgage contract between the defendants and a different real party in interest also it shows as the original mortgagee a (M.E.R.S.), please be of your complete

knowledge that M.E.R.S. is only a mortgage registration register service as its

own name states, and it does not have authority to foreclose or to perform any
assignments of mortgages for the simple reason that it does not hold or owned the
promissory note or the Mortgage at any time, keep in mind that in order to have a valid
transfer of ownership interest, the mortgage and the note must be transferred together, if
either one is not transferred at the same time or it is has a defect, then the transaction is
invalid therefore unenforceable. In Carpenter v. Longan the U.S. Supreme court stated
that a note and mortgage are inseparable.

5.    Admit, that the real owner of the subject property is the Defendant Jorge Cerron.

6.    Admit, however the plaintiff's has failed to complied with the RESPA regulations
regarding the QUALIFIED WRITTEN REQUEST'S rights that the defendant is vested by
RESPA"S law, the defendant has sent a Qualified Written Request to the plaintiff in
order to make a discovery of all the true colors of the ownership of the mortgage debt in
question as well as the futile plaintiff's claims of ownership and its **claims of default of
the Mortgage and Mortgage note**, to this date plaintiff has not complied with the
pertinent law, it has not answered to  the defendant's questions included in the
defendant's Qualified Written Request sent to the plaintiff, please see attached a copy of
said letter included in this defendant's amended answer with the purpose to have the
counsel for the plaintiff respond to the QWR as is mandated by the substantive law. it is
evident that the plaintiff's statements are very questionable and have not standing the
same as its foreclosure complaint against the defendants.

7.    **DENIED,** the defendant and this court needs a valid proof of GMAC's regarding
its claim of being the real party in interest and being the lawful owner of the debt in
question specially when appears to be a different real party in interest named by the
exhibits showed by the plaintiff GMAC and it also appears that the mortgage in question
is part of an existing trust or owned by a different entity, before GMAC can declares the
full amount payable under the Mortgage and Mortgage note as it is states by the plaintiff
in number seven of its complaint GMAC needs to answer to this court and to the
defendant's QWR.

8.    **DENIED,** the defendant disputes the amount in question, needs verification of it, and an accounting breakdown statement with fees, interest, and any other amounts added on top of the principal debt as well as receipts for every claim, for what concerns to the attorney's fees it should be solely responsibility of the plaintiff for two reasons: First, plaintiff had not reason to initiated an unverified foreclosure complaint in the first place, and secondly, the counsel for the plaintiff should had known that the defendant Jorge Cerron was approved by the plaintiff GMAC for a preventing foreclosure option as is the short sale of the subject property, if the plaintiff as followed the law  it should had not filed this instant foreclosure complaint against the defendant because a foreclosure filing was not needed in the first place and it was illegal pursuant the HAMP law enacted by the UNITED STATES TREASURY DEPARTMENT AND SIGNED INTO LAW BY THE PRESIDENT ON THE UNITED STATES OF AMERICA, also there is an existing contract signed by GMAC and the Treasury of the United States of America in said contract GMAC is bound to obey the contractual obligations in exchange of the Billions of dollars received from the treasury department, money that is a direct contribution of all the tax payers, in said contract GMAC is obligated to provide a preventing foreclosure option to its clients and to the defendant Jorge Cerron, and to stop or not to initiate or file any foreclosure complaints while their clients are considered for a preventing foreclosure option as is the short sale option opted by the defendant Jorge Cerron and approved by GMAC accordingly.

9.    **DENIED, i**n section number nine of count one of the plaintiff's complaint against the defendant, the plaintiff alleges that all conditions precedent to the acceleration of the Mortgage note and foreclosure of the Mortgage have been preformed or have occurred, again the counsel for the plaintiff is misleading this court because the true facts are that the plaintiff has failed to to obey the following precedent conditions to the acceleration of the debt in question:

> A-) Plaintiff has failed to obey F.R. of Civic P. 1.110(b)  Verification of
> Mortgage Complaint.

> B-) Plaintiff has failed to complied with **57.011 Costs; security by**

**nonresidents**.

C-)  Plaintiff has failed to complied with its contractual obligations with the
Treasury Department of the United States of America, further the
plaintiff has violated the trust of the American People the tax payers
contributors that had facilitated billions of dollars in order to bail out
GMAC of an imminent financial debt, under said contractual
obligations                (HAMP program) GMAC is bound to provide an alternative
preventing                foreclosure option to the Defendant im this instant case
and to all                other barrowers facing foreclosure.

D-)  The plaintiff's has failed to complied with the RESPA regulations
regarding the QUALIFIED WRITTEN REQUEST'S rights that the
defendant is vested by RESPA"S law, the plaintiff has not
substantiated the validation of the acceleration of the debt in question
when it does not give a valid disclosure of said debt, the
defendant has                requested this validation by means of a qualified Written
Request sent                to the plaintiff prior to the commencement of this action.

E-)  The plaintiff's Lis Pendens is defective for the reasons explained in
section number 2 of this amended answer document.

F-)  And plaintiff is not the real party in interest in this instant action
therefore It cannot justified any precedent conditions to the
acceleration                of the debt in question further it cannot invoke the jurisdiction of
the                court whent it has failed to establish its compliance with the law.


10.    **ADMIT,** however all the fees derived by this unverified and illegal foreclosure
action and further litigations were unnecessary but it has been created by the unlawful
transgressions perpetuated by the plaintiff  GMAC upon the defendant Jorge Cerron, the
plaintiff has not complied with its contractual obligations under the Home Stability Plan
and the Home Affordable Modification Program, the plaintiff has deceived the American
People by promising to help them with an alternative preventing foreclosure option in
exchange of the Billions of Dollars received under signed contract between GMAC and
the Treasury Department Of the United States of America, further the counsel for the

plaintiff is an accomplice of those unlawful acts because he should had known since it is his job to know its client background, the counsel for the plaintiff took this foreclosure case against the defendant Jorge Cerron regardless of his knowledge that the defendant was approved for a foreclosure preventing option in the first place, therefore all lawyer's fees regarding this instant action should not be allowed and if there are other fees remaining those fees should be solely responsibility of the plaintiff GMAC.

11.    **HAVE NOT KNOWLEDGE.**

12.    **HAVE NOT KNOWLEDGE.**

13.    **HAVE NOT KNOWLEDGE.**

14.    **HAVE NOT KNOWLEDGE.**

15.    **HAVE NOT KNOWLEDGE.**

**WHEREFORE,** the defendant Jorge Cerron requests to the court ascertain all the defendant's claims for being substantiated by the pertinent law and denied the plaintiff's unverified illegal foreclosure complaint and any of the unsubstantiated and frivolous claims and requests made by the counsel for the plaintiff, specially its request for the clerk of the court to sale the subject property and the issue of a deficiency decree the defendant also requests to this court (**in order to send a clear message to all those unethical law firms that are taking foreclosure cases with out proper verification of the same)**, that this court should neither allow nor validate the lawyer's fees request and that the plaintiff should pay the same amount of said fees to the defendants in retribution for the defendant's defense time and expenses., and any other benefits that the defendant may be entitle.

**Affirmative Defenses**

*First Affirmative Defense - Failure to establish subject matter jurisdiction*

16. Rule 1.140(h)(2), *Fla.R.Civ.P.* provides that the defense of lack of jurisdiction of the subject matter may be raised at any time. *Maynard v. The Florida Board of Education*, 2008 Fla. App. LEXIS 5890; 33 Fla. L. Weekly D 1110 (Fla. 2nd DCA 2008) (Standing may be raised even after a verdict is entered as long as it is preserved at the trial court).

17. The subject mortgage is payable to GREENPOINT MORTGAGE. and dated March 01, 2006. Plaintiff, GMAC Mortgage also filed an Assignment of Mortgage dated November 10, 2009 executed by Jeffrey Stephan V.P. and Brenda Staehle V.P., authorized signatory of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Greenpoint Mortgage Funding. "residing or located at 888 E. walnut Street Pasadena California 91101, said assignment of Mortgage was notarized in the State of Pennsylvania on November 10, 2009. MERS has no offices in Pennsylvania..

18. Further, the assignment from MERS to GMAC Mortgage was dated subsequent to the filing of this lawsuit, which it means that the plaintiff did not owned the mortgage and the mortgage note at the time of the filing of this instant action therefore the plaintiff was not the real party in interest on 09/16/2009 when it filed this foreclosure complaint against the defendant Jorge Cerron who is the true legal owner of the subject property. Further, assignment that is dated after filing of suit is at variance with complaint. See Exhibit 'a'

19. In Florida, the prosecution of a residential mortgage foreclosure action must be by the owner and holder of the mortgage and the note. Plaintiff is not entitled to maintain an action if it does not own and hold the note which is purportedly secured by the subject mortgage. *Your Construction Center, Inc. v. Gross*, 316 So. 2d 596 (Fl. 4th DCA 1975)

*Greenwald v. Triple D Properties, Inc*., 424 So. 2d 185, 187 (Fla. 4th DCA 1983).

(However, the Second and Third District Courts of Appeal have ruled that merely being

the holder of the note provides standing to seek enforcement in a foreclosure action if

the holder is acting for the real party in interest.) *Mortgage Electronic Registration*

*Systems, Inc. v. Revoredo*, 955 So. 2d 33 (Fl. 3d DCA 2007); *Mortgage Electronic*

*Registration Systems, In. v. Azize*, 2007 Fla. App. LEXIS 2418 (Fla. 2d DCA Case no.

2D05-4544, opinion filed, February 21, 2007.

20. Rule 1.210(a) of the Florida Rules of Civil Procedure provides, in pertinent part:

> Every action may be prosecuted in the name of the real party
> in interest, but a personal representative, administrator, guardian,
> trustee of an express trust, a party with whom or in whose name
> a contract has been made for the benefit of another, or a party
> expressly authorized by statute may sue in that person's own
> name without joining the party for whose benefit the action is
> brought...

21. Standing requires that the party prosecuting the action have a sufficient stake in the

outcome and that the party bringing the claim be recognized in the law as being a real

party in interest entitled to bring the claim. This entitlement to prosecute a claim in

Florida courts rests exclusively in those persons granted by substantive law, the power

to enforce the claim. *Kumar Corp. v Nopal Lines, Ltd, et al*, 462 So. 2d 1178, (Fla. 3d

DCA1985). A plaintiff's lack of standing at the commencement of a case is a fault that

cannot be cured by gaining standing after the case has been filed. *Progressive Express*

*Ins. Co. v. McGrath Community Chiropractic*, 913 So. 2d 1281, 1285 (Fla. 2d DCA

2005). *See also*, *Maynard*, *supra*..

22. Parties may rely on the "relation back" rule when asserting standing. *Progressive,*

*supra*.  When applying the "relation back" rule the party who did not have standing at the

time the action was filed may amend their statement of claim to show that they acquired

standing that "related back to the original statement of claim." *Id.* at 1285-1286;

*Fla.R.Civ.P.* 1.190(c). However, this rule does not allow a party to establish the right to

maintain an action retroactively by acquiring standing after the fact. *Progressive,* 913

So. 2d at 1285; *Livingston*, 774 So. 2d 716 at 717. If the party was without standing

when the suit was filed then a new lawsuit must be filed. *Progressive*, 913 So. 2d at

1285 (citing *Jeff-Ray Corp. v. Jacobson*, 566 So. 2d 885, 886 (Fla. 4th DCA 1990)

(finding that "the assignee of a mortgage could not maintain the mortgage foreclosure

action because the assignment was dated four months after the action was filed, if the

plaintiff wished to proceed on the assignment, it must file a new complaint.")

23. As a result, although GMAC Mortgage claims to be the owner of the mortgage note

and mortgage, the assignment which is the basis for this ownership claim has an

"effective" date of November 10, 2009 this date is inconsistent with the plaintiff's

foreclosure complaint which was filed September 16, 2009 , plaintiff is contradicting itself

when states that the assignment is effective 11/10/2009 and it claims to be the real party

in interest on 09/16/2009, further the plaintiff is lying when it filed a foreclosure complaint

against the defendant and in said complaint the plaintiff misrepresent to this court to be

the real party in interest on 09/16/2009 and it does not have the assignment to validate

its claim and when the plaintiff filed on 03/22/2010 the assignment of Mortgage said

document have the wrong dates to validate its claim of ownership of the note and

mortgage, the plaintiff is perpetuating fraud to the court when it had submitted a

fraudulent assignment made by the same law firm that it is representing the plaintiff in

this instant action, the one million dollars question that the court should ask to the

plaintiff is, how can you validate your claim of being the real party in interest in this

instant action when the exhibit you showed clearly shows that GMAC is not the real party

in interest at the filing of its foreclosure complaint? Also the authorized signatory signing

the assignment for MERS was located in a different part of the country than MERS.

Lastly, the assignment was not signed until after the filing of the subject foreclosure.


*Second Affirmative-Failure of Condition Precedent*

24. The Defendant Jorge Cerron reallege the allegations contained in paragraphs 47

through 62, inclusive, below and incorporate the same herein by reference.

25. GMAC Mortgage LLLC. failed to provide the Defendant with the debt management

and relief which must be made available to borrowers facing temporary financial

problems.  Such relief options must include, among other things, temporary forgiveness

of monthly payments, mortgage modification, and other foreclosure prevention loan

servicing requirements imposed on Plaintiff and the subject  mortgage by federal

regulations promulgated by HUD, pursuant to the National Housing Act, 12 U.S.C. §

1710(a). and by the U.S. Secretary of Treasury under the HOME AFFORDABLE

MODIFICATION PROGRAM. As a result, Plaintiff has failed to establish compliance with

a statutory and contractual condition precedent to this foreclosure because of Plaintiff's

failure to comply with the federal regulations as is more particularly described below.

26. The Plaintiff failed its obligation to the Defendant Jorge Cerron to pursue effective

foreclosure prevention strategies and did not evaluate the particular circumstances

surrounding his claimed default; failed to determine the Defendant's capacity to pay the

monthly payment amount or a modified payment amount; failed to ascertain the reason

for the Defendant claimed default, or the extent of their interest in keeping the subject

property.

27. Plaintiff failed to comply with the loss mitigation and foreclosure prevention servicing

guidelines by failing to contact the Defendant regarding the claimed mortgage

delinquency to determine whether they were facing a financial crisis or hardship.

Plaintiff failed to give the Defendant the opportunity to cooperate in resolving the debt.

28. Plaintiff failed to attempt to avoid filing this foreclosure action by not contacting the

Defendants by the 30th day of the claimed delinquency. The plaintiff did not timely ask

them to provide information to determine the reason for the claimed non-payment.

Plaintiff failed to inform the Defendant of the existence of the alternatives to foreclosure

prior to foreclosing.  As a result, plaintiff has denied the Defendant the required

opportunity to avoid foreclosure through early intervention upon delinquency pursuant to

the HOME AFFORDABLE MODIFICATION PROGRAM servicing requirements and

standards.

29. Plaintiff failed its duty to the defendant Jorge Cerron to manage the subject

mortgage as required by HAMP's special foreclosure prevention workout programs

which can include and allow for the  restructuring of the loan allowing the borrower to

pay out delinquent installments or advances to bring the mortgage current.  Plaintiff

further denied the defendant access to special forbearance in the form of a written

agreement that reduces or suspends their monthly mortgage payments for a specific

period to allow defendant time to recover from a financial hardship.  Such a plan can

involve changing one or more terms of the subject mortgage in order to help the

defendant to bring the claimed default current thereby preventing foreclosure.  Plaintiff's

failure to comply with the substantive law that in pertinent part states that " NO

FORCLOSURE COMPLAINT SHOULD BE FILED PRIOR TO PROVIDE A

FORCLOSURE ALTERNATIVE PREVENTION OPTION TO THE DELIQUENT

HOMEOWNER". has denied the defendant the required access to explore alternatives to

avoid foreclosure.

*Third Affirmative Defense-Unclean Hands*

 30 . Based upon a fraudulent assignment of mortgage submitted to this court on

03/22/2010 and deceptive practices by the plaintiff in given the run around to the

defendant's request for a loan modification/short sale since June 2009 to this date (April

11, 2011), plaintiff's  misrepresentation to the Court that there were no question of law to

stop plaintiff's illegal foreclosure complaint has allowed plaintiff to continue with its

unclean hands practices. See Exhibit "a" copy of the invalid assignment of Mortgage with

effective date of 11/10/2009, thus plaintiff's claim of being the real party in interest on

09/16/2009 are not true.


*Fourth Affirmative Defense-Violations of the Florida Consumer Collection Practices Act*

31. The Defendant reallege the allegations contained in paragraphs 47 through 62 ,

inclusive, below and incorporate the same herein by reference.

32. The plaintiff  violated the Florida Consumer Collection Practices Act in the course if

its collection of the defendant's consumer mortgage transaction as is more particularly

described in Paragraphs 47 through 62, inclusive, below.

33. Based upon Plaintiff's violations of this Florida consumer collection law it is not

entitled to the equitable remedy of foreclosure.

*Fifth Affirmative Defense-Violations of the Florida Deceptive and Unfair Trade Practices Act*

34. The defendant Jorge Cerron reallege the allegations contained in paragraphs 47 through 62, inclusive, below and incorporate the same herein by reference.

35. The plaintiff violated the Florida Deceptive and Unfair Trade Practices Act in the origination, servicing and collection of the Defendant consumer mortgage transaction as is more particularly described in the section title " Defendant's Jorge Cerron's claims" below.

36. The plaintiff is not entitled to the equitable remedy of foreclosure as a result of it violations of this Florida consumer credit protection statute.


*Sixth Affirmative Defense-Unconscionable Acts and Practices*

37. The plaintiff engaged in unconscionable acts and practices in the servicing and collection of the Defendant Jorge Cerron consumer mortgage transaction as is more particularly described in Paragraphs 47, through 62, below.

38. The plaintiff is not entitled to the equitable remedy of foreclosure as a result of its unconscionable acts and practices.


*Seventh Affirmative Defense-Breach of Contract*

39. The plaintiff engaged in unconscionable acts and practices in the servicing and collection of the Defendant consumer mortgage transaction as is more particularly described below.

40. **FAILURE OF CONTRACTUAL CONDITION PRECEDENT: INVALID,**

**INEFFECTIVE NOTICE OF DEFAULT:** The right of the plaintiff to accelerate the balance due on the subject promissory note pursuant to the terms of the mortgage is optional and under these circumstances, Florida law requires the Plaintiff send a notice of default and intent to accelerate before any acceleration of the subject debt is effective.

41. Plaintiff failed to provide Defendants with a Notice of Default, and  intent to accelerate that complies with applicable law As a result Defendant has been denied a good faith opportunity pursuant to the mortgage and the servicing obligations of the Plaintiff to avoid acceleration and this foreclosure.

42. Plaintiff has breached the contract when it has not comply with the contractual condition precedent to the filing of this instant foreclosure action.

43. GMAC is not entitled to the equitable remedy of foreclosure as a result of its breach

of the subject mortgage contract, specifically the pertinent part in the subject mortgage that requires by Federal Law the strict compliance of the lender with the notice of Default.


*Eighth Affirmative Defense-No HUD Counseling Notice*

44. Plaintiff failed to comply with the forbearance, mortgage modification and other foreclosure prevention loan servicing requirements imposed on Plaintiff pursuant to the National Housing Act, 12 U.S.C. 1701x(c)(5) which requires the Plaintiff to advise Defendants of any home ownership counseling Plaintiff offers together with information about counseling offered by the U.S. Department of Housing and Urban Development.

45. The U.S. Department of Housing and Urban Development  has determined that 12 U.S.C. 1701x(c)(5) creates an affirmative legal duty on the part of the Plaintiff and Plaintiff=s non-compliance with the law=s requirements is an actionable event that affects the Plaintiff=s ability to carry out this foreclosure.

46. Plaintiff cannot legally pursue foreclosure unless and until Plaintiff demonstrates compliance with 12 U.S.C. 1701x(c)(5).


WHEREFORE, the Defendant Jorge Cerron request this Answer and Amended

Affirmative Defenses be deemed sufficient; that this Court deny the Plaintiff's Complaint

and grant such other and further relief as this Court deems just and equitable.


## DEFENDANT JORGE CERRON'S CLAIMS

The Defendant Jorge Cerron's claims "Defendant/Plaintiff", against the plaintiff

GMAC Mortgage LLC., are as follow:

### Factual Allegations

47. On or about March 01, 2006, the Defendant Jorge Cerron refinance the home which

is the security for the mortgage which is the subject of the above-styled case.

48. In June, 2009, the Defendant first missed payment because Mr. Jorge Cerron

became temporarily unemployed. In June, 2009, the defendant Jorge Cerron called

GMAC the servicer for the plaintiff and one of its employee acting within the scope of the

plaintiff's authority told Mr. Jorge Cerron that the only option they had was to make a

payment, plus half of the delinquent amount owned to the plaintiff each month to catch

up the delinquency.  GMAC., through its employee acting within the scope of the

plaintiff's authority did not look at or consider the defendant Jorge Cerron's financial

circumstances or give them any other options. The Defendant could no longer make the

increased payment.

49. In JUly 2009, Mr. Jorge Cerron called to make a payment and was told by a GMAC

Mortgage. employee acting within the scope of the plaintiff's authority they could not

take advantage of the loss mitigation opportunities until she was three months behind,

she was given the impression it was in her best interest not to make a payment.

50.  When the defendant Jorge Cerron called in August, 2009, to discuss their loss

mitigation options, she was told  by a GMAC Mortgage employee acting within the scope

of the Plaintiff's authority to send in financial information and documentation needed for

this process, he had previously mailed this information and documents to Plaintiff  but

agreed to send them again. He sent this financial information and documentation to

Plaintiff several times between August, 2009 and February 2011, even thou Mr. Cerron

was previously approved for a short sale the plaintiff filed for a foreclosure disregarding

the substantive law, it is pertinent to add that because of GMAC's failure to work out an

agreement with the condominium association, a very good short sale contract with an

approved buyer whom wait more the a year to finalize the purchase contract for the

subject property was cancel, GMAC killed a very good short sale offer only because it

did not wanted to paid off the condominium association's fees. Mr Cerron never heard

anything from anyone in loss mitigation again.

51. GMAC Mortgage never responded to the loss mitigation documentation and requests

and then commenced the litigation process. Mr. Cerron had been trying to speak with

employees with GMAC lately but he could not get anyone to respond to numerous

telephone calls.

52. Because the Defendant's loan is a qualified loan under the HAMP guidelines

promulgated by the U.S. Treasury department, Plaintiff was required to comply with the

payment forbearance, mortgage modification, and other foreclosure prevention loan

servicing or collection requirements imposed on Plaintiff and the subject mortgage, the

plaintiff is also required to comply with the federal regulations promulgated by HUD,

pursuant to the National Housing Act, 12 U.S.C. §1710(a).   These requirements must

be followed before a mortgagee may commence foreclosure. 24 C.F.R. Part 203(C),

Servicing Responsibilities Mortgagee Action and Forbearance.  (Lender may, except as limited by regulations issued by the Secretary in the case of payment default....")

53. Plaintiff is required by HUD regulations to ensure that all of the servicing requirements of 54 C.F.R. Part 203(C) have been met before initiating foreclosure. 24 C.F.R.§203.606, published August 2, 1982, 47 FR 33252.

55. Plaintiff failed to carry out its federally-imposed duties which are owed to the Defendant Jorge Cerron prior to filing this instant foreclosure lawsuit. According to the regulations Plaintiff is required to adapt effective collection techniques designed to meet the Defendant's individual differences and take account of their peculiar circumstances to minimize the default in their mortgage payments as required by 24 C.F.R. §203.600.

56. Plaintiff failed to inform the Defendant that it would make loan status and payment information available to local credit bureaus and prospective creditors, failed to inform the defendant Jorge Cerron of other assistance, and failed to inform him of the names and addresses of HUD officials to whom further communication could be addressed as required by federal law.  24 C.F.R. § 203.604.

57. Plaintiff failed to perform its servicing duty to the the defndant Jorge Cerron to manage the subject mortgage as required by HAMP's special foreclosure prevention workout programs which must  include and allow for the restructuring of the loan whereby the borrower pays out the delinquency with a modified monthly mortgage payment that it must be equal to the 31% of the Defendant's monthly income, said monthly installments will help to bring the mortgage current and prevent any future damage to the defendant's credit rating.

58. Plaintiff further denied the defendant access to repayment plan or special

forbearance in the form of a written agreement that would reduce or suspend his monthly mortgage payments for a specific period to allow the defendant time to recover from the financial hardship they were suffering through no fault of her own. Such a plan can involve changing one or more terms of the subject mortgage in order to help the defendant bring the claimed default current thereby preventing foreclosure.

59. Plaintiff's failure to comply with HAMP's repayment plan or special forbearance workout programs denied the Defendant Jorge Cerron the required access to explore alternatives to avoid foreclosure prior to the addition of additional foreclosure fees and the filing of this instant action.

60. The Defendant requested that Plaintiff provide them with options to help him save his home. Plaintiff was non-responsive and only answered with threats to foreclose if reinstatement in full with all claimed fees and costs was not paid right away.

61. Plaintiff failed to comply with its mortgage servicing responsibilities and the pertinent U.S. Treasury Department Laws Federally promulgated in order to face the national foreclosure crisis affecting millions of Americans and as a proximate result, the Defendant's delinquency has been improperly inflated by mortgage foreclosure filing, service and other fees and inspections, and by foreclosure attorneys fees in the minimum amount of $1,500.00, monies that the defendant can not afford to pay. Therefore, the Defendant Jorge Cerron remain at the risk of losing their home.

62. The plaintiff filed the subject lawsuit on or about September 16, 2009 without first allowing the Defendant Jorge Cerron the right to pursue the federally-required loss mitigation opportunities.

63. Plaintiff's lawsuit had one count, count one for foreclosure on the subject note.

64. On September 16, 2009 at the filing of its original foreclosure complaint the plaintiff

did not had neither the original subject note  nor the assignment of mortgage to claim

ownership interest or to proof that GMAC Mortgage was the real party in interest in this

instant action.

65. On October 30, 2009 Defendant filed its first answer to plaintiff's complaint.

66. Plaintiff  answer to defendant on 12/07/2010

67. On March 22, 2010 the plaintiff amended its original complaint by filing the alleged

original note and assignment of mortgage.

68. Plaintiff has based its entire case on the assignment of mortgage further said

assignment of mortgage with effective date as November 10, 2009 is invalid because it

was issued way after the date of the filing of the plaintiff's foreclosure complaint on

09/16/2009, said assignment of Mortgage is the only document that the plaintiff claims to

be a factual proof of its ownership of the subject mortgage and mortgage note that it will

corroborates its alleged claim to be the real party in interest in this instant action.

69. HERE AND NOW Defendant claims that said assignment of mortgage is a

fraudulent document therefore the plaintiff is committing fraud upon the court.

70. The plaintiff's amendment to its complaint was done on March 22, 2010 after the

amendment to Rule 1.110(b) which requires verification of foreclosures complaint, said

amendment to rule 1.110(b) became effective on February 11, 2010. Pursuant rule

1.110(b) the plaintiff's complaint should be dismissed.

71. Now plaintiff is requesting a Final Summary Judgment Hearing on this instant action.


**Florida Deceptive and Unfair Trade Practices Act**

72. The Defendant Jorge Cerron reallege the allegations contained in paragraphs 47

through 62 above, and incorporates the same by reference herein.

73. This is a claim for injunctive and declaratory relief and for damages pursuant to the

Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §§ 501.201 , *et seq.*

(hereinafter "the Act").

74. At all times relevant hereto, the defendant Jorge Cerron was a "consumer" as

defined by §501.203 (7), *Fla. Stat.*.

75. At all times relevant hereto, The plaintiff GMAC Mortgage LLC. was engaged in

"trade or commerce" as defined by §501.203 (8), *Fla. Stat.*.

76. A violation of the Act may be based on "[a]ny law, statute, rule, regulation, or

ordinance which proscribes unfair methods of competition, or unfair, deceptive, or

unconscionable acts or practices." *See* §501.203 (3)(c), *Fla. Stat.*.

77. The provisions of the Act are to be liberally construed to promote the following

policies:

    (1) To simplify, clarify, and modernize the law governing consumer protection,
unfair methods of competition, and unconscionable, deceptive, and unfair trade
practices.

    (2) To protect the consuming public and legitimate business enterprises from
those who engage in unfair methods of competition, or unconscionable, deceptive, or
unfair acts or practices in the conduct of any trade or commerce.§ 501.202(1) and (2),
*Fla. Stat.*

78. The Plaintiff has violated the Act by engaging in unfair and deceptive acts and

practices including, but not limited to failing to provide the defendant Jorge Cerron with

the pre-foreclosure loss mitigation opportunities required by their mortgage contract and

federal law as more particularly stated in Paragraphs 47 through 62, inclusive, above,

adding a layer of foreclosure related fees and costs which should not have been

incurred without first providing the Defendant Jorge Cerron with the pre-foreclosure

options set out in the federal laws referenced herein and required by the subject

mortgage; and by initiating this foreclosure lawsuit and by otherwise breaching Plaintiff's

duty of good faith and fair dealing based upon standards imposed by the residential

mortgage lending and servicing industries.

79. As a direct result of the plaintiff's unfair and deceptive actions and practices, the

Defendant has been damaged.  Specifically, due to the plaintiff's giving the Defendant

Jorge Cerron the run around when they were trying to participate in the required pre-

foreclosure loss mitigation options including effective pre-foreclosure counseling and

options provided by federal law and the subject mortgage and concealing their response

in this foreclosure lawsuit, the Defendant Jorge Cerron has been threatened with the

loss of his homestead and the equity therein because he was not given the opportunity

to resolve the default before foreclosure was instituted and an additional layer of

foreclosure fees and costs were added to the delinquency and reinstatement balance

and had a judgment entered against him despite his attempts to raise legal defenses.

80. Pursuant to §768.72 (2002), *Fla. Stat.*, the Defendant Jorge Cerron reserve the right

to amend this complaint to add a prayer for punitive damages upon a showing by

evidence in the record providing a basis for recovery of such damages.

81. The Defendant has been required to expend time and money to pursue her claims

against the plaintiff GMAC for violations of the Act.  The defendant will incur costs and

other fees as a result of  self-representation.

WHEREFORE, the defendant Jorge Cerron request this Court to enter a

judgment against GMAC Mortgage LLC. pursuant to the Act as follows:

A. Declare GMAC Mortgage's practices to be in violation of the Act as provided by the Act §501.211(1), *Fla. Stat.* and declaring that GMAC Mortgage must provide the Defendant with access to the special servicing provided in the applicable federal regulations;

B. Enjoin GMAC Mortgage LLC., from engaging in deceptive and unfair trade practices as provided by §501.211(1), *Fla. Stat.* and enjoining GMAC Mortgage LLC. from charging foreclosure fees and costs and from commencing or pursuing this foreclosure until such servicing is provided;

C. Award the Defendant Jorge Cerron actual damages as provided by §501.211 (2), *Fla. Stat.*;

D. Award self-representation costs to the defendant, and

E. Grant such other and further relief as this Court deems equitable.


## Fraud and Misrepresentation

82. This is a claim for injunctive and declaratory relief, actual and compensatory damages against GMAC Mortgage LLC..

83. The Defendant hereby incorporate by reference the allegations contained in Paragraphs 47 through 62 of her factual allegations, as if fully set forth herein.

84. Plaintiff's employees knowingly made false statements of material facts as to the Defendant's specific rights under the HAMP's regulations and mortgage contract and default servicing options when she fell behind in her mortgage payments as is more particularly described in Paragraphs 47 through 62 above.

85. Plaintiff's employees intentionally engaged in the following fraudulent activities,

made the following false representations and engaged in the following specific

fraudulent activities to prevent the Defendant Jorge Cerron from salvaging the

delinquency in their mortgage payments and saving their home, with full knowledge they

were fraudulent and false:

a.     Plaintiff acting through its attorneys and authorized agents acting within the
scope of their authority, failed to allow the Defendant Jorge Cerron to
participate in pre-foreclosure loss mitigation options prior to filing the
subject foreclosure and giving them the run around when they were trying
to participate in these options as in more particularly stated in 47 through
62 above,

b.     While acting through its attorneys and authorized agents acting within the
scope of their authority, Plaintiff filed with the court on 03/22//2010 a
fraudulent assignment of mortgage for the subject property and then
wrongfully pursued a summary final judgment in foreclosure with full
knowledge that the defendant Jorge Cerron answer raised affirmative
defenses and factual issues will ultimately will show to this court that the
plaintiff is committing fraud upon the court.

86. The plaintiff knew or should have known that the defendant has the right to try to

save her home through differing pre-foreclosure loss mitigation options and only gave

them the run around. Further Plaintiff has fabricated and produced the fraudulent

assignment of mortgage to this court hopping to prevail in this instant action.

87. The Defendant reasonably relied on the actions and misrepresentations of GMAC;s

employees acting on behalf of the plaintiff GMAC Mortgage LLC. and within the scope of

their authority in trying to save his home from foreclosure and when sending them his

response to the  plaintiff's complaint.. The plaintiff, through its employees and authorized

agents acting within the scope of their authority knew or should have known it had

greater knowledge and understanding of the pre-foreclosure default servicing options

and mortgage foreclosure procedure and knew or should have known  the defendant

was depending on it to follow federal law and the mortgage contract in allowing pre-

foreclosure loss mitigation and depending on it to follow the rules governing the
members of the Florida Bar.

88. The Defendant Jorge Cerron suffered damages as a result of these false
representation and fraudulent activities including but not limited to the unnecessary
inflation of in the amounts required to cure the delinquency in their home mortgage
payments and the potential loss of his home and the equity established therein for
failure to pay these unauthorized sums.

89. The Defendant Jorge Cerron reserves the right, pursuant to Florida Statute §768.72
(1991), to amend this action to add a prayer for punitive damages upon a reasonable
showing by evidence in the record or proffered by the Defendant providing a reasonable
basis for recovery of punitive damages.

90. It has been necessary for the defendant Jorge Cerron to expend monies for himself
defense and prosecute his claims. The defendant Jorge Cerron has incurred and will
continue to incur costs and other related expenses during the course of this action.

WHEREFORE, the Defendant Jorge Cerron respectfully request this Court to
enter judgment in his  favor and therein to:

a.    declare GMAC's actions in refusing to allow the Defendant to participate
in pre-foreclosure loss mitigation prior to filing the foreclosure and producing a fraudulent
Assignment of mortgage hiding the truth from the court and committing fraud upon the
court;

b.    abating or dismissing the subject action because of GMAC's fraudulent
and misleading practices in the pre-foreclosure and foreclosure process;

c.    denying GMAC's request to foreclose upon his home;

d.    awarding the defendant actual damages; and

e.    awarding his costs and other fees, and any other and further relief as this Court deems equitable.


### Unconscionability

91. The Defendant Jorge Cerron reallege and incorporates by reference herein the allegations contained in Paragraphs 47 through 62, inclusive, of their factual allegations above.

92. Plaintiff and its employees had much superior knowledge and bargaining power as did the defendant and the plaintiff through its employees acting within the scope of their authority took advantage of the defendant by giving him the run around when he was attempting to save his home from foreclosure and when he was attempting to participate in the subject lawsuit. The Plaintiff took advantage of this unequal bargaining power in the subject transaction.

93.    The actions of the plaintiff GMAC Mortgage LLC. through its employees acting within the scope of their authority in connection with the servicing and foreclosure of the subject mortgage were  unconscionable and materially unfair to the parties of lesser bargaining power and therefore, unenforceable in the interests of equity.

94.    The defendant Jorge Cerron reserve the right, pursuant to Florida Statute §768.72 (1991), to amend this action to add a prayer for punitive damages upon a reasonable showing by evidence in the record or proffered by the defendant providing a reasonable basis for recovery of punitive damages.

95.    It has been necessary for the Defendant Jorge Cerron to expend time and money

to provide for herself defense and prosecute his claims.  The Defendant has incurred

and will continue to incur costs and other related expenses during the course of this

action.

WHEREFORE, the defendant Jorge Cerron respectfully requests this Court to

enter judgment against GMAC Mortgage LLC. in his favor and therein to:

a.       declare GMAC's actions in refusing to allow the Defendant Jorge Cerron

to participate in pre-foreclosure loss mitigation prior to filing the foreclosure and hiding

the truth from the court fraudulent;

b.       abating or dismissing the subject action because of GMAC's fraudulent

and misleading practices in the pre-foreclosure and foreclosure process;

c.       denying GMAC's request to foreclose upon his home;

d.       awarding his actual damages; and

e.       awarding his costs and other fees, and any other and further relief as this

Court deems equitable.


## I- <u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT, ALTERNATIVELY TO MAKE MORE DEFINITE AND CERTAIN</u>

1. Defendants request the Court dismiss the action pursuant to Rules 1.210 and
   1.140(b)(6) and (7) of the Florida Rules of Civil Procedure because it appears
   on the face of the complaint that a person / entity other than the Plaintiff is the
   true owner of the claim sued upon and that the Plaintiff  GMAC Mortgage is
   not the real party in interest and is not shown to be authorized to bring this
   foreclosure action and that it does not have the requisite capacity to invoke the
   jurisdiction of the Court.

2. The plaintiff **GMAC**  is a foreign corporation a nonresident entity, GMAC is an

unauthorized entity to filed this instant foreclosure complaint against the
defendant. it appears that the plaintiff has failed to file the bond required
by the law, therefore the defendant would like to request to this court to
dismiss this instant case, pursuant **57.011 Costs; security by
nonresidents, plaintiff** was not registered with the Secretary of State in
Florida at the time of the  filing of this foreclosure complaint between the
plaintiff GMAC and the defendant Jorge Cerron, thus clearly showing GMAC's
lack of capacity to file a lis pendens and/or a foreclosure suit against the
defendants much less its lack of capacity to enforce this action based on a
mortgage and promissory note that the plaintiff neither owned nor hold in the
first place.. GMAC's lack of capacity is a fact, this fact has been proved by the
plaintiff's own exhibits attached to its complaint, said documents contradicts
the plaintiff's claims of being the real party in interest in this instant action, and
because this issue of the plaintiff's lack of capacity (defect) appears on the
face of this complaint GMAC is not allowed by the pertinent law to invoke the
jurisdiction of this court. **57.011 Costs; security by nonresidents.** When a
nonresident plaintiff begins an action or when a plaintiff after beginning
an action removes himself or herself or his or her effects from the state,
he or she shall file a bond with surety to be approved by the clerk of
$100, conditioned to pay all costs which may be adjudged against him or
her in said action in the court in which the action is brought. On failure to
file such bond within 30 days after such commencement or such removal,
the defendant may, after 20 days' notice to plaintiff (during which the
plaintiff may file such bond), move to dismiss the action or may hold the
attorney
bringing or prosecuting the action liable for said costs and if they are
adjudged against plaintiff, an execution shall issue against said attorney
**In any court action, if a Plaintiff foreign corporation fails to register with**

**the Secretary of State, the case is dismissed pursuant to Chapter 607.
(607.1501).**

3.  The Plaintiff's complaint is so vague and ambiguous that the Defendant
    cannot reasonably be required to frame a responsive pleading because the
    Plaintiff has confused who or what in fact it is and has not attached any
    document that identifies who, what role, or what GMAC MORTGAGE is, that
    name of the entity GMAC Mortgage," is defective because of its failure to state
    the legal name of the real party in interest in this foreclosure action against
    defendant,  the defendant does not recognized the plaintiff in this action as the
    real party in interest, the assignment of mortgage attached to the plaintiff's
    foreclosure complaint against defendant is not valid for many reasons, one is
    the clear conflict of the dates of said document with the commencement's
    date of the plaintiff's foreclosure complaint filed on 09/16/2009, the
    assignment of Mortgage that the plaintiff has showed as proof of its ownership
    of the mortgage and promissory note is recorded in the official records of
    Sarasota County under instrument # 200961516 1PG whit a recorded date of
    12/31/2009 at 11;39 AM, copy of said document herein attached marked as
    **exhibit "a"**, the date of the signing and validation of said assignment of
    Mortgage it shows to be 11/10/2009 that is almost two months after the filing
    of the plaintiff's foreclosure complaint, the conflict between the date of the
    plaintiff's Lis Pendens/foreclosure complaint and the dates of the assignment
    of Mortgage showed by the plaintiff GMAC clearly showed that the plaintiff
    GMAC Mortgage was not and is not the real party in interest at the time of the
    filing of this foreclosure complaint, further it shows that said assignment of
    Mortgage prepared by the law firm representing the plaintiff in this instant
    action has been prepared in a futile intention to substantiate the plaintiff's
    claim of being the real party in interest in this action, thus constituting a
    plaintiff's fraud upon this court and the violation of the defendant's rights
    because the plaintiff is producing irreparable damages to the defendant by
    means of fraud and an illegal seizure of the defendant's home. The plaintiff's

other document submitted as an exhibit is the mortgage contract between the
original lender GREENPOINT MORTGAGE and the Defendant Jorge Cerron
and inside that document is no where to be found the name of the "allege" real
party in interest "GMAC", the assignment of mortgage showed by the plaintiff
is defective and a clear fraud upon the court . The Defendant can not
determine from the Plaintiff's complaint upon which facts the Plaintiff is
claiming to be the proper party in interest with legal standing to pursue this
foreclosure action on a promissory note as required by the Florida Rules of
Civil Procedure.

4.  The Plaintiff GMAC has attached a document to its complaint that identifies
    'MERS', an entity that is not the Plaintiff, as the mortgagee. This document
    confuse and conflict with and contradict the Plaintiff's allegations of material
    facts in the complaint as to the ownership of the subject note and mortgage.

5.  Plaintiff's complaint fails to contain sufficient facts to establish the Plaintiff's
    relationship to the Defendant, or the Plaintiff's relationship or connection to the
    claim for foreclosure, including failure to identify the date of any claimed
    alleged assignment or transfer of the subject mortgage and note to Plaintiff
    GMAC MORTGAGE.

6.  Plaintiff's allegations that it is the legal and/or equitable owner and holder of
    the Note and Mortgage directly conflicts with the mortgage Plaintiff attached to
    the complaint thereby rendering the complaint insufficient to identify who the
    Plaintiff is or what facts establish the standing of the Plaintiff to file and pursue
    this foreclosure. Further the original note and fraudulent assignment of
    mortgage were file and attached to the plaintiff's complaint six months after
    the original date of the filing of plaintiff's complaint, **the law clearly states
    that the plaintiff can not cure this defect of not having the note while it is
    enforcing a foreclosure action**, Courts have held that a party's lack of
    standing is a defect that cannot be cured by acquiring the right of standing

after action has already been filed. *See Gwaltney of Smithfield, Ltd. v.
Chesapeake Bay Found., Inc.,* 484 U.S. 49, 69 (1987) (Scalia, J., concurring)
("Subject matter jurisdiction depends on the state of things at the time of the
action brought). *See Also Progressive Exp. Ins. Co.,* 913 So.2d 1281.
*Compare to Dasma Investments, LLC v. Realty Assoc. Fund III, LP,* 459 F.
Supp. 2d 1294, 1302 (S.D. Fla., 2006)(Party suing on Promissory Note must
be in actual possession of the original note to have standing). The plaintiff in
this instant case has failed to show to this court that it is in actual possession
of the promissory note that it is suing on and/or to be the real party in interest,
further plaintiff's exhibits contradicts plaintiff's claims of being the real party in
interest, the blaw is very clear it reads " **when plaintiff's claims and exhibits
are in conflict the exhibits prevails".**

7. Florida Rule of Civil Procedure 1.210(a) provides in pertinent part: "Every
   action may be prosecuted in the name of the real party in interest, but a
   personal representative, administrator, guardian, trustee of an express trust, a
   party with whom or in whose name a contract has been made for the benefit
   of another, or a party expressly authorized by statute may sue in that person's
   own name without joining the party for whose benefit the action is brought."
   The Plaintiff in this action meets none of these criteria.

8. Standing requires that the party prosecuting the claim have a sufficient stake
   in the outcome and that the party bringing the claim be recognized in the law
   as being a real party in interest entitled to bring the claim. This entitlement to
   prosecute a claim in Florida courts rests exclusively in those persons granted
   by substantive law, the power to enforce the claim. *Kumar Corp. v. Nopal
   Lines, Ltd, et al*, 462 So.2d 1178 (Fla. 3d DCA 1985).

9. No Florida case holds that a separate entity can maintain suit on a note
   payable to another entity unless the requirements of Rule 1.210(a) of the
   Florida Rules of Civil Procedure and applicable Florida law are met. *Corcoran*

*v. Brody*, 347 So.2d 689 (Fla. 4th DCA 1977).

10. Fla. R. Civ. P. 1.130(a) provides in pertinent part: "All bonds, notes, bills of
exchange, contracts, accounts or documents upon which an action may be
brought or defense made, or a copy thereof or a copy of the portions thereof
material to the pleadings, shall be incorporated in or attached to the pleading."
The mortgage Plaintiff attached to the complaint clearly shows an entity other
than the Plaintiff is the owner and holder of the mortgage.

11. Florida Rule of Civil Procedure 1.130(b) provides in pertinent part: "Any exhibit
attached to a pleading shall be considered a part thereof for all purposes."
Because the facts revealed by Plaintiff's exhibit are inconsistent with Plaintiff's
allegations as to the ownership of the subject mortgage and note, those
allegations are neutralized and Plaintiff's complaint is rendered objectionable.
*Greenwald v. Triple D Properties, Inc.*, 424 So.2d 185, 187 (Fla. 4th DCA
1983).

12. When exhibits are inconsistent with the Plaintiff's allegations of material fact
as to the real party in interest, such allegations cancel each other out. *Fladell
v. Palm Beach County Canvassing Board*, 772 So.2d 1240 (Fla. 2000);
*Greenwald v. Triple D Properties, Inc.*, 424 So.2d 185, 187 (Fla. 4th DCA
1983); *Costa Bella Development Corp. v. Costa Development Corp.* 441
So.2d 1114 (Fla. 3rd DCA 1983).

13. Plaintiff is not the real party in interest and is not shown to be authorized to
bring this action. *In re: Shelter Development Group, Inc.*, 50 B.R. 588
(Bankr.S.D.Fla. 1985)[It is axiomatic that a suit cannot be prosecuted to
foreclose a mortgage which secures the payment of a promissory note, unless
the Plaintiff actually holds the original note, citing *Downing v. First National
Bank of Lake City*, 814 So.2d 486 (Fla. 1955)]; *Your Construction Center, Inc.
v. Gross*, 316 So.2d 596 (Fla. 4th DCA 1975), *See also* 37 Fla. Jur. Mortgages

and Deeds of Trust 240 (One who does not have the ownership, possession, or the right to possession of the mortgage and the obligation secured by it, may not foreclose the mortgage).

14. Because the exhibit attached to Plaintiff's complaint is inconsistent with Plaintiff's allegations as to ownership of the subject promissory note and mortgage, Plaintiff has failed to establish itself as the real party in interest and has failed to state a cause of action.

15. The Florida Rules of Civil Procedure 1.120 Pleading Special Matters provides:

  i. Capacity. It is not necessary to aver the capacity of a party to sue or be sued, the authority of a party to sue or be sued in a representative capacity, or the legal existence of an organized association of persons that is made a party, **except to the extent required to show the jurisdiction of the court.** (emphasis added). The initial pleading served on behalf of a minor party shall specifically aver the age of the minor party. **When a party desires to raise an issue as to the legal existence of any party, the capacity of any party to sue or be sued, or the authority of a party to sue or be sued in a representative capacity, that party shall do so by specific negative averment which shall include such supporting particulars as are peculiarly within the pleader's knowledge.**

16. Florida Rule 1.120 clearly requires that the capacity of both the Plaintiff and Defendants be alleged "to the extent required to show the jurisdiction of the court." By the clear language of the rule, this applies to both the Plaintiff's status and Defendant's status, i.e. "capacity of a party to sue or be sued", "authority of a party to sue or be sued." The rule also provides the specific procedures counsel must use to challenge the issue of the Plaintiff's status and Defendant have correctly done so in this case.

17. Further support for the proposition that every Plaintiff must plead its capacity to sue, its authority to sue and the legal existence of an organization is found in the author's comments to the Rules which state:

    "Nevertheless if a party involved in a suit in other than his

individual capacity, the capacity in which he is a party **should be
indicated in the caption and the pleadings.**

18. While there is little or no Florida case law which directly addresses the
question of how a Defendant raises the issue of capacity of the Plaintiff to
maintain suit, there are many Federal Court cases which interpret Federal
Rule of Civil Procedure Rule 9(a) which tracks the language of Florida Rule
1.120(a) exactly.  These cases make it quite clear that the defendant must
raise the issue of capacity in a Motion to Dismiss:

> "The defense or objection of lack of capacity to sue must be raised
> by motion prior to answer, or in the answer itself, otherwise the
> defendant is held to have waived the objection. Coburn v.
> Coleman, D.C.W.D.S.C., 75 F. Supp. 107, Trounstine v. Bauer,
> Pogue & Co., Inc., 2 Cir. 1994, 144 F.2d 379; Kucharski v. Pope &
> Talbot, D.C., 4 F.R.D. 208, at page 209; Rule 12(h), Rules of Civil
> Procedure."

> And see

> "The issue of capacity to sue may be raised by motion to dismiss
> where the defect appears on the face of the complaint. Coburn v.
> Coleman, D.C.W.D.S.C., 75 F. Supp. 107; Brush v. Harkins,
> D.C.W.D.Mo., 9 F.R.D. 604. The complaint should be dismissed
> as to plaintiff Aron Hershel Trust with leave to amend." Hershel
> California Fruit Products Co. v. Hunt Foods, (1954) 119 F. Supp.
> 603. See also Plumbers Loc. U.N. 519, Miami Fla. V. Serv. Plbg.,
> 401 F. Supp. 1008 (1975), Shaw v. Stutchman, 105 Nev. 128
> (1989); 771 P.2d 156; Klebanow v. New York Produce Exchange,
> 344 F.2d 294 (2d Cir. 1965); Tractortechnic Gebrueder
> Kulenkempft v. Bousman, 301 F. Supp 153 (1969).

19. Defendant also moves to dismiss the  plaintiff's complaint for failing to state a
cause of action by not including the promissory note under F.S. 673.3091.
This cause of action to include a promissory note must be performed at the
commencement of the foreclosure action **the law clearly states that the
plaintiff can not cure this defect of not having the note while it is
enforcing a foreclosure action**, Courts have held that a party's lack of
standing is a defect that cannot be cured by acquiring the right of standing
after action has already been filed.  *See Gwaltney of Smithfield, Ltd. v.*

_Chesapeake Bay Found., Inc.,_ 484 U.S. 49, 69 (1987) (Scalia, J., concurring)
("Subject matter jurisdiction depends on the state of things at the time of the
action brought). _See Also Progressive Exp. Ins. Co.,_ 913 So.2d 1281.
_Compare to Dasma Investments, LLC v. Realty Assoc. Fund III, LP_, 459 F.
Supp. 2d 1294, 1302 (S.D. Fla., 2006)(Party suing on Promissory Note must
be in actual possession of the original note to have standing). The plaintiff in
this instant case has failed to show to this court that it was in actual
possession of the promissory note that it is suing on at the time of the filing of
its foreclosure complaint further the assignment of mortgage showed by the
plaintiff is invalid and a fraud upon the court.

20. Until proper standing is established, the Plaintiff is not in a position pursue this
cause of action, the Plaintiff must prove the terms of the instrument and that
they have the right to enforce the instrument and they have failed to do so.

21. The Plaintiff's complaint is conflicting, rendering it vague and ambiguous and
does not meet any of the standing requirements for a residential foreclosure
action in the State of Florida.

22. The Plaintiff's failure to meet the standing requirements as of the date
of commencement of this action renders the complaint fatally
Defective.

**WHEREFORE,** The Defendant Jorge Cerron, pray that this Honorable Court
dismiss the Plaintiff's complaint as fatally defective, and for all other relief to which
the Defendants may be entitled.

## II- <u>DEFENDANT JORGE A. CERRON'S MOTION TO ABATE AND/OR STAY</u>

**Defendant Jorge A. Cerron, hereby move the court for abate and/or stay of**

**the proceedings and in support thereof state as follows:**

1.    This is an action for foreclosure upon the defendant's home filed by the plaintiff.

2.    The emergency Economic Stabilization Act of 2008 (EESA) was signed into law on October, 2008. In implementing the act the United States Treasury has instituted the "Making Home Affordable" act, capital purchase program, and capital assistance program among others, See http//www.FinancialStability.Gov/roadtostability/programs.htm

3.    Pursuant to the plans and the authority provided by H.R 1424 Title 1 section 109-110 the United States Treasury has ordered as follows: Mortgage Foreclosure Mitigation: All recipients of capital investments under the financial Stability Plan will be required to commit to participate in mortgage foreclosure mitigation programs consistent with guidelines Treasury released as part of its making Home Affordable mortgage modification program. http:www.financialstability.gov/about/transparencyaccountability.html (April 16, 2009)

4.    Plaintiff in this case is GMAC Mortgage, LLC. Pursuant to the United States Department of the Treasury Saction 105(a) Trouble Asset Relief Program (TARP) Report to Congress for the Period April 1, 2009-April 30, 2009, received $ $633,000,000 from the U.S. Government in purchases of trouble assets in October 2008.

5.    The plaintiff GMAC Mortgage, as a recipient of TARP funds, is subject to the U.S. Treasury's short sale program guidelines for the

Making Home Affordable Program.

6.      Said guidelines, promulgated on March 4, 2009 which clearly
require "Any foreclosure action...be temporarily suspended during the trial
period, or while borrowers are considered for alternative foreclosure
prevention options (short sale option). In the event that the Home
Affordable Modification or alternative foreclosure options (short sale
option) fail, the foreclosure action may be resumed".

7.      Plaintiff in this action received $633,000,000 in taxpayers funds
and pursuant the U.S. Treasury, their acceptance of same requires that
GMAC Mortgage LLC suspend all foreclosures operations against the
Defendant herein until such time as the services, tests, and potential
modification opportunities including the short sale option promulgated by
the U.S. Treasury are provided to the Defendant.

8.      The plaintiff is contractually bound to stay this action. The
Plaintiff should not be permitted to foreclosure in violation of their
obligations to the to the U.S. Treasury. The Defendant herein have been
provided rights by the U.S. Government which this Court should honor.
(Please see "Exhibit B", copy of a court's order on a similar case where
the defendants filed its motion to abate/ and/or stay, based on the plaintiff's
violation of their obligations to the to the U.S. Treasury, the said motion
was GRANTED.)

WHEREFORE, the defendant Jorge A. Cerron, hereby request this
Honorable Court GRANT this motion and order as follows:

A-)   That this action be stayed until such time as the loss
mitigation and modification opportunities have been afforded to the
Defendant herein.

B-)   In the event that the Plaintiff disputes its obligation to provide
such servicing, and/or disputes its involment with the Financial Stability Plan, the
Court should order that an evidentiary hearing be held on the matter and that no
summary judgment nor other dispositive motions be heard until such time as a
hearing can be held.

C-) Award Defendant for all other relief to which Defendant proves
themselves entitle including the Defendant's expenses on the amount of $351.00
which it has been used solely to defend from this unnecessary and illegal
foreclosure claim against the Defendant  Jorge A. Cerron, that it would had
resulted in the perpetuation of an illegal seizure of the Defendant's home, the
defendant has been greatly injured mentally, emotionally, and economically by the
plaintiff's illegal intent of foreclosing on the defendant's home, the defendant's
economic hardship is a proved fact , It is a shame that the plaintiff and the counsel
for the plaintiff had not checked the status of the defendant's mortgage before the
immediate commencement of this unnecessary foreclosure action against the
Defendant, said foreclosure action should have never been filed in the first place.

d-) Award Defendant Compensatory damages, and Exemplary
damages, the Plaintiff GMAC Mortgage LLP. has breached the Servicer
Participation Agreement with the U.S. Department of the Treasury, consequently
GMAC's breach of said contract has produce a liability, therefore the Plaintiff
GMAC is leable for the defendant's injuries and it is responsible for the following
Damages:

I – Compensatory damages for an amount of $351.00, please
see the following list:

(a) Mailing expences an avarage of $5.86 x 2=          $11.72

(b) Copy of the response to plaintiff's foreclosure complaint
33 pages at $0.10 cents each page=          $3.30

(c) Copy of first page of the response to plaintiff's foreclosure
complaint at the Sarasota County's clerk office.        $1.00

(d) Two legal envelopes $1.99 each=                        $3.98

(e) Replacement of the printer's toner, one toner=        $10.00

(f) Transportation, to go to the court, and to the USPS  $60.00

_____

Sub Total  $90.00

(g) My time expended the first time in order to research, and
respond to the plaintiff's complaint was 16 hours, and my
time expended to respond to the plaintiff's affidavit in
support of its motion to final judgment, and my motion for
final summary judgment (including my motion to abate
and/or stay) was 20 hours, my time expended up to this
moment is 36 hours, (with out counting the time that I had
expended in going to the post office and to the Sarasota's
clerk of the circuit court office to drop the answers to the
plaintiff), I had expended 36 hours of my time, and if we
multiplied it by the minimum wage of $7.25 it will give us a
total of (36X7.25)=$261.00,                               $261.00

_____

Grand Total  $351.00

II — Exemplary damages for an amount that this Court deems just,
and equitable in order to make an example of the party at fault
to discourage similar crimes.

III- **DEFENDANT JORGE A. CERRON'S MOTION TO ABATE AND/OR STAY
VIOLATION OF RESPA**

1.    A Qualified Written Request letter was sent to plaintiff on July 22, 2009 at
3:54 pm; consequently it was delivered and received by the plaintiff on July
27, 2009 at 9: 45 am.

2.    Please see exhibit "a", copy of QWR letter sent to GMAC, 6 pages. Plaintiff
answer to this request by sending a copy of the mortgage agreement
package which defendant already has because the same documents were
already given to the defendant when he did the closing on his property with
the title company.

3.    GMAC failed to answer most of the questions listed in the qualified written
request's letter sent by the defendant. furthermore GMAC failed to summit
any copy or copies of documentation requested by the defendant through
the QUALIFIED WRITTEN REQUEST'S LETTER.

4.    Said documentation requested by the defendant's QWR would had validated
the claim of the  plaintiff to be entitled to maintain this action in which it
seeks to foreclose on a note which the plaintiff do not own in the first place.

5.    Plaintiff is not the owner nor the holder of the mortgage or the note. GMAC's
answer to defendant's QWR is not valid for what was intended to be (to seek
the true). GMAC has acted in bad faith and has not answer the questions
listed in the Defeendant Jorge Cerron's QWR letter, therefore the plaintiff
has committed a clear violation of the RESPA law.


WHEREFORE, the defendant Jorge A. Cerron, hereby request this Honorable
Court GRANT this motion and order as follows:

A-)   That this action be stayed until such time as the plaintiff's
response (including the documentation requested) to the defendant's QWR letter
have been afforded to the Defendant herein.

B-)   In the event that the Plaintiff disputes its obligation to provide
such answers n documentation to the defendant's QWR letter, and/or disputes its
contractual obligations under the RESPA law , the Court should order that an
evidentiary hearing be held on the matter and that no summary judgment nor other

**dispositive motions be heard until such time as a hearing can be held.**

       **C-) Award Defendant for all other relief to which Defendant proves**

**themselves entitle.**

## IV- <u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO OBEY FLORIDA R. OF C.P. 1.100(B)</u>

1.    The main spirit of Rule 1.100(b) is to prevent the abuse and the indiscriminately use of the court's resources; fiscal budget and courts employee's work hours, so the court's system can be unclogged of unverified foreclosure complaints which violates the substantive law in the first place,

2.    This foreclosure complaint initiated by the plaintiff is contrary to the substantive law that provides in its pertinent part the defendant's right to an alternative option to a foreclosure

3.    The defendant in this action has been seeking vehemently to obtain a short sale option from the plaintiff, further if the plaintiff had finalized the short sale alternative option to a foreclosure that the defendant has been approved for, this foreclosure action could had been avoided in the first place.

4.    The plaintiff's counsel had the obligation prior to the commencement of this instant action to verify the plaintiff's compliance with all precedent conditions mandate by the substantive law.

5.    If the plaintiff GMAC Mortgage has failed to established compliance with the statutory and contractual conditions precedent to the acceleration of the debt in question, the counsel for the plaintiff is under the obligation to inform its client that pursuant Rule 1.100(b) all foreclosure complaints will be verified.

6.    Said precedent conditions states in its pertinent part that all barrowers are vested with the right to an alternative option to a foreclosure. The plaintiff in this instant action has failed to provided with said precedent conditions to the defendant and has failed to inform to its counsel that the defendant is currently approved for a short sale preventing foreclosure alternative option therefore the plaintiff has violated the pertinent law and the defendant's right which consequently has permitted the  perpetuation of the filing of this illegal and unverified foreclosure

complaint.

7.    It is extremely relevant and crucial for the plaintiff's counsel to perform such of
verification of the subject foreclosure complaint and the current status of the
borrower prior to the filing of its client's foreclosure complaint because if the
plaintiff had informed to its counsel that it had approved the borrower/defendant
for a foreclosure alternative option as is the short sale or loan modification option
prior to the filing of the plaintiff's foreclosure complaint then the counsel for the
plaintiff should had known that said foreclosure complain was not necessary to be
filed in the first place, further the filing of said complaint it is not allowed by the
pertinent law, specially when the verification of the mortgage foreclosure
complaint was not performed prior to its commencement, thus constituting a clear
violation of Florida Rule of Civic Procedures 1.100(b) which requires the
verification of all foreclosures complaints prior to its filing in the first place.


8.    Pursuant amended Florida Rule of Civic Procedure, Rule 1.100(b) issued on
02/11/2010 it requires verification of mortgage foreclosures complaints, it appears
for the content of the plaintiff's complaint that there are some highly contradictory
arguments, and that the plaintiff's complaint is an unverified complaint which
violates FR of CP 1.100(b).


9.    It is pertinent to this motion to state that the plaintiff has attached to its original
complaint a mere copy of the mortgage and note copied from the official records
computerized system which is not regarded as a valid proof or evidence to validate its
claims.


10.    That is why the plaintiff in this instant action has attempted to amended this error
by filing the mortgage and copy of the original note on 03/24/2010 making this act a
clear action of a plaintiff's amendment to its original foreclosure complaint.


11.    The plaintiff's amendment to its original complaint took place after the date that
the Florida Rule of Civic Procedure 1.110(b) went into affect on 02/11/2010 and the

plaintiff's amendment occurred on 03/24/3010 therefore the plaintiff was legally bound to
comply with said Rule.

12.    Further. said rule clearly requires the verification of all foreclosures complaints,
the non compliance with rule 1.110 (b) is penalize with the immediate dismissal of the
unverified foreclosure complaint, this court should dismiss the plaintiff GMAC's
foreclosure complaint pursuant rule 1.110(b).

    **WHEREFORE,** The Defendant Jorge Cerron, pray that this Honorable Court to
dismiss the Plaintiff's complaint pursuant amended Florida Rule of Civic Procedure, Rule
1.100(b) issued on 02/11/2010 which requires verification of mortgage foreclosures
complaints, it appears for the content of the plaintiff's complaint that there are some
highly contradictory arguments, and that the plaintiff's complaint is an unverified
complaint which violates FR of CP 1.100(b).

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been
furnished by regular U.S. Mail to the Law offices of  Florida Default Law Group, P.L.
P.O. Box 25018, Tampa, Florida, 33622-5018 Att; Nicolay Kolev, on this ___11th___ day of
April, 2011.

Respectfully submitted,

Jorge Cerron
P.O. Box 18902
Sarasota, FL, 34276

*Exhibit "A"*

RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2009161516 1 PG
2009 DEC 31 11:39 AM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY,FLORIDA
CEAGLETO Receipt#1235704

## ASSIGNMENT OF MORTGAGE

**2009161516**

FOR VALUE RECEIVED, on or before **September 09, 2009**, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ("Assignor")** whose address is _____ assigned, transferred and conveyed to: **GMAC MORTGAGE, LLC, ("Assignee")** whose address is 1100 Virginia Drive, , Fort Washington, PA 19034, its successors and/or assigns, all of the right, title, and interest of Assignor in and to that certain Mortgage (the "Mortgage") dated March 01, 2006 and recorded March 16, 2006 in Official Records Book 2006049301 at Page  of the public records of SARASOTA County, Florida, encumbering the following-described real property:

> UNIT G-1, BEACH WAY APARTMENTS, A CONDOMINIUM AS PER DECLARATION OF CONDOMINIUM RECORDED IN OFFICIAL RECORDS BOOK 846, PAGES 731 ET SEQ., AND ALL AMENDMENTS THERETO, AND AS PER CONDOMINIUM PLAT RECORDED IN CONDOMINIUM BOOK 4, PAGES 6 ET SEQ., AND ALL AMENDMENTS THERETO, OF THE PUBLIC RECORDS OF SARASOTA COUNTY, FLORIDA. TOGETHER WITH ANY AND ALL AMENDMENTS TO THE DECLARATION AND ANY UNDIVIDED INTEREST IN THE COMMON ELEMENTS OR APPURTENANCES THERETO.

as the same may have been amended from time to time; together with the Note and indebtedness secured thereby.

MORTGAGOR(S):  JORGE A. CERRON

IN WITNESS WHEREOF, Assignor has executed and delivered this instrument on
_____, 2009.

By: _____
Print Name: _____
Title: Vice President


*Jeffrey Stephan*
*Vice President*

Witness
Print Name: _____

Attest: _____
Print Name: _____
Title: _____

*BRENDA STAEHLE*
*Vice President*

Witness
Print Name:  Willie Walton

(Affix Corporate Seal)

STATE OF  PA
COUNTY OF  Montgomery

BEFORE ME, the undersigned, personally appeared _____ Jeffrey Stephan _____
and  Brenda staehle  as ____ VP ____ and ____ VP ____,
respectively, and known to me to be the persons that executed the foregoing instrument, and acknowledged that they executed the foregoing as its duly authorized officers and that such execution was done as the free act and deed of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC.** this  10  day of  NOV. , 2009.

_____
Notary Public:
My commission expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Trina Wildbank, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Sept. 10, 2013
Member, Pennsylvania Association of Notaries

Recording requested by, prepared by and return to:
Anabell Arauz
Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida  33622-5018
F09095434-GMAC MORTGAGE, LLC-

FILE_NUMBER: F09095434

DOC_ID: M001100

## *F09095434*

## *M001100*

*Exhibit B*

# IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
# IN AND FOR BROWARD COUNTY, FLORIDA
# CIVIL ACTION

U.S. BANK, NATIONAL ASSOCIATION AS
TRUSTEE FOR J.P. MORGAN MORTGAGE
ACQUISITION TRUST 2006-CH1, Asset
Backed Pass-Through Certificates, Series 2006-
CH1

Case No. 09-46856 (08)

                                         Plaintiff,

vs.

FLOYD KNIGHT, et al.,

                          Defendant(s).
_____/

## ORDER ON DEFENDANTS MOTION TO ABATE AND/OR STAY

THIS CAUSE came before the Court for consideration upon the DEFENDANTS'
MOTION TO ABATE AND/OR FOR STAY, AND FOR LOAN SERVICING PURSUANT TO
HAMP (HOME AFFORDABLE MODIFICATION PROGRAM), and the Court having been
advised heard oral argument, and being otherwise fully advised in the premises, it is:

It is therefore, **ORDERED** and **ADJUDGED**:

A) Defendant's Motion is hereby GRANTED and this Action is hereby stayed until such

   time as the loss mitigation and modification opportunities have been afforded to the

   Defendants herein;

B) Plaintiff shall file an affidavit of compliance with HAMP in the event that the

   modification fails and the Plaintiff seeks to continue with this action for any reason in

   the future;

C) _____

DONE AND ORDERED in Broward County, Florida, this _____ day of _____, 2009.

                                    RONALD J. ROTHSCHILD

                                    NOV 1 9 2009

                          _____
                          CIRCUIT COURT JUDGE

                          True Copy

Page 1 of 6

*Jorge A. Cerron*
*P.O. Box 18902*
*Sarasota, FL 34276*

April 11, 2011

Qualified Written Request
**GMAC**
Attn: Customer Care
P.O. Box 1330
Waterloo, IA 50704-

REF:  Qualified Written Request /Second notice first QWR was sent in 2009
      Loan: # 0307674906
      Borrower: Jorge Cerron
      Property 5600 Beach Way , Unit 107, Sarasota Florida 34231

Dear Sir or Madam:

I am writing to you to complain about the accounting and servicing of my mortgage and my need for understanding and clarification of various charges, credits, debits, transactions, actions, payments analyses, and records related to the servicing of my loan from its inception to the present date. As such, please treat this letter as a "Qualified Written Request" under the Real Estate Settlement Procedures Act, codified as Section 2605 (e) of Title 12 of the United States Code. As you may know, RESPA provides substantial penalties and fines for non-compliance or answers to my questions provided in this letter within sixty (60) days!

Due to the recent mortgage market meltdown and your involvement in this market, I am
concerned that my loan has not been properly credited, amortized, calculated, and serviced. I am also concerned with the ownership of my promissory note; to whom my actual obligation is owed; who is my actual lender; and your authority to collect payments and/or negotiate the purchase/repurchase/modification of my promissory note from my actual lender.

The meltdown of the mortgage market and the effects of any financial manipulation may have affected the current amount you can claim I owe as the principal balance due on my loan which may not be correct and may not have been properly amortized. In addition, I am concerned that my escrow payments and/or my monthly payments may have been adversely affected and that I may be paying more than I owe or less than is necessary to properly amortize my mortgage over its term.

Page 2 of 6

Upon receipt of this letter, please refrain from reporting any negative credit information to any credit reporting agencies until you respond to the "requests" in this letter. Due to the current economic climate, I am exploring various options to protect my property and finances. My home is a very important and valuable asset to me that I desire to protect.

Please do not infer any negative connotation from my letter, but the industry-wide practices employed in recent years trouble me and I am seeking information to not only alleviate my concerns, but to guard against future problems.

I am examining my finances and making determinations as to how best to payoff, reduce, and/or refinance my mortgage and/or sell my property to one interest or another. I executed a promissory note that is a contract between myself and whoever owns that contract now. The United State government may actually own my promissory note. If so I or investors I know, may desire to purchase back my promissory note from the government or my actual current lender, at a profit, as part of a purchase of my property and/or restructuring of my finances. I have contracted a firm to audit my mortgage loan that you service as well as explore various purchase, sale, refinancing, loan, business, and financial options for me. In order to conduct this examination and audit, I need to have full and immediate disclosure including copies of all pertinent information related to my loan. As such, please send to me, at the address above, copies of the following documents and answers to my servicing related questions below within the 50-day time frame.

# 1- DOCUMENTS NEEDED TO CONDUCT AUDIT

All "master" transaction registers/ledgers of my loan in your servicing files or backup files with you or any sub-servicer, including but not limited to the Fidelity mortgage servicing system, FiServ or any mortgage servicing system you use. Please provide all information residing in any data field in the system or any component that supports the system that deals with any of these questions listed below. (no screen or partial dumps or spread sheets please)

Also, please provide and include all descriptions and legends of all Codes use in your mortgage servicing and accounting system so that the examiners, auditors and experts I have retained to audit and review my mortgage account may properly conduct their work.

A certified copy of the front and back portion of my promissory note as it exists today along with all endorsements, affixed or un-affixed allonges, and assignments whether recorded or not.

A certified copy of the front and back portion of my deed of trust as it exists today along with all assignments whether recorded or not.

Cancelled checks, wire transmittals or other evidence of payment for each assignment of my promissory note.

All executed, recordable and "non-recordable" assignments associated with my loan
including, but not limited to assignments, transfers, alonges or other documents
evidencing a transfer, sale or assignment of my mortgage, deed of trust, promissory note
or other document that secures payment by me to my obligation in this account from the
inception of my loan to the present date.

All records, electronic or otherwise, of assignments of my mortgage, promissory note or
servicing rights to my mortgage.

All escrow analyses conducted on my account from the inception of my loan until the date of this letter.

## 2- SERVICING RELATED QUESTIONS I NEED ANSWERED

After the recent problems in the mortgage market, I have many servicing related questions in addition to the questions
enumerated above. I worry that I do not have good and proper title to my property and that the amounts you claimed
owed by me are incorrect. Please answer the following questions for me.

1. What is your actual servicing relationship with my loan? Are you the servicer, master
servicer, interim servicer, private label servicer, default servicer, sub-servicer and/or
special servicer of my loan?

2. Has my promissory note ever been securitized? If so, kindly inform me of the following information:

a. All trusts, SPVs, QSPEs, REMICS and entitles that my note has been assigned
to from inception to the current date.

b. The current trust, SPV, QSPE, SPE, REMIC or entity my note is owned by.

3. Is there any Fannie Mae, Freddie Mac, Ginnie Mae, FHA, HUD, VA or private guarantee related to my loan?

a. If yes, who has provided this guarantee and what portion of my payment goes to
this guarantee?

4. Who is the document custodian that safeguards and holds my "original" promissory note that I/we signed in ink?

5. Does my original promissory note currently have any "blank endorsements" on it? [Yes/ No]

a. If yes, can you kindly explain why?

b. If yes, can you kindly tell me as of the date written above:

1. Who owns my note and the actual current "lender" and not the servicer of my
note?

2. Who claims to be the holder of my note?

3. Has the United States government taken hold of my note?

6. Does my original promissory note properly reflect the chain of title from one interest to
another? [Yes/No]

7. Are there any missing assignments? [Yes/No]

a. If yes, can you kindly explain why?

8. Has any due diligence and/or quality control services conducted by you or any other
entity on my loan identified and red flags, frauds, misrepresentations, misstatements,
errors or problems?

a. If yes, can you kindly detail for me?

9. Has my loan ever been classified as a "scratch and dent" loan?

a. If yes, can you kindly detail for me why?

10. Will I receive my original (signed in ink) promissory note stamped "Cancelled & Paid in Full" when it is paid off
or refinanced?

a. If no, can you tell me why or why not?

11. Have any SPOs, property inspections and/or appraisals by you or any investor been
conducted on my property since the inception of my loan? [Yes/No]

a. If yes, have I been charged or assessed any fee for any SPOs, property inspections or appraisals after the inception
of my loan?

1. If yes, kindly tell me the dates of such SPOs, property inspections or appraisals, the amount paid and provide me
with copies of all documents related to each SPO, property inspection or appraisal conducted on my property
including, but not limited to reports, orders, invoices and cancelled checks for payments.

12. Who may I contact to negotiate the purchase/repurchase or modification of my
promissory note?

13. What are the name and the date of the pooling and servicing agreement that governs
your servicing of my loan?

14. Is there any power of attorney ("POA") filed in my property's county or any other county that governs your relationship with my loan?

a. If yes, kindly identify for me the county where the POA is filed and the filing number, name and date of the POA and the names of all parties, signators, witnesses, notaries or other persons who appear on the POA and the capacity in which each appears.

## 3- SUSPENCE/UNAPPLIED ACCOUNT QUESTIONS

For the purpose of this section, please treat the term "suspense account" and "unapplied account" as one in the same.

1. Has there been any suspense or unapplied account transactions on my account from the inception of my loan until present date? [Yes/No]

a. If yes, why? If no, please skip the questions in this section dealing with suspense and unapplied accounts.

b. In a spreadsheet or letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits and credits that has occurred on my account from the inception of my loan until present date.

c. What is my current suspense account balance?

d. Why was my money placed into suspense and how will it be allocated to my loan?

## 4- LATE FEE QUESTIONS

For the purpose of my questions below dealing with the late fees, please consider the terms "late fees" and "late charges" to be one in the same.

1. Have there been any late fee transactions on my account from the inception of my loan until the present date?

a. If yes, why? If no, please skip the questions in this section dealing with late fees.

b. In a spreadsheet or in a letter form in a columnar format, please detail for me each and every late fee transaction, both debits and credits that has occurred on my account from the inception of my loan until present date.

c. What is my current late fee balance?

2. Have you reported the collection of late fees on my account as interest in any statement to me or the IRS? [Yes/No]

3. Do you consider the payment of late fees as liquidated damages to you for not receiving my payment on time? [Yes/No]

4. Are late fees considered interest? [Yes/No]

5. Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.

6. Were any of these expenses or damages charged or assessed to my account in any
other way? [Yes/No]

a. If yes, please describe what expenses or charges were charged or assessed to my
account.

7. Please describe for me in writing what expenses you or others undertook due to any
payment I made that was late.

8. Please identify for me in writing the provision, paragraph, section or sentence of any
note, mortgage, deed of trust or any agreement I signed authorizing the assessment or
collection of late fees.

Thank you in advance for addressing the questions and issues above. Upon receipt of the
documents and answers, an examination and audit will be conducted that may lead to further document requests and
answers under an additional QWR letter.

It is my hope that my immediate questions and audit will validate my debt to the penny. If not, we will need to correct
and adjust any errors or abuses identified. I also want to
negotiate a purchase price or modification for my note from my actual lender. I anxiously await your prompt response
to this request.

Finally, I would like to reinstate that pursuant the law (the Real Estate Settlement Procedures Act, codified as Section
2605 (e) of Title 12 of the United States Code) you should abstain from reporting any derogatory information on my
credit report to the credit reporting agencies until this matter is solved and business is resume accordingly, also you
should include with your response a validation that the foreclosure process has been put on hold or it will be extended
until all my requests have been satisfied.

Sincerely,

_____
Jorge Cerron
P.O. Box 18902
Sarasota, FL, 34276

## **<u>Exhibit 1-C</u>**

**Trial Court's Summary Judgment Order**

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA
CIVIL ACTION

GMAC MORTGAGE, LLC,

      Plaintiff,

                  CASE NO.   2009 CA 015793 NC
vs.                DIVISION

SPACE FOR RECORDING ONLY F.S.§695.26

JORGE A. CERRON; SUNTRUST BANK; BEACH WAY
CONDOMINIUM ASSOCIATION, INC.  TENANT #1 N/K/A
RICHARD EISENBERG

      Defendant(s).
_____/

relate

## UNIFORM FINAL JUDGMENT OF MORTGAGE FORECLOSURE

*This form substantially complies with Form 1.996, adopted by the Florida Supreme Court
February 11, 2010, SC09-1579; form published in 12th Circuit on 4-5-10.*

THIS action was tried before the Court.  On the evidence presented

IT IS ORDERED AND ADJUDGED that:

1.    Plaintiff, GMAC MORTGAGE, LLC, 1100 Virginia Drive, Fort Washington, PA
19034, is due

| Description | Amount |
|---|---|
| Unpaid principal balance due on the notes secured by the mortgage foreclosed as of 07/05/2011 | $607,361.65 |
| INTEREST ON THE NOTE AND MORTGAGE FROM 05/01/2009 TO 12/22/2010 | 30,390.73 |
| PER DIEM INTEREST AT 3.25% FROM 12/22/2010 TO 07/05/2011 | 10,545.60 |
| PRE-ACCELERATED LATE CHARGES THROUGH September 09, 2009 | 973.87 |
| Title Search | 175.00 |
| Title Examination | 150.00 |

| | |
|---|---:|
| Property Taxes for the year(s) of | 8,532.18 |
| Insurance | 13,117.50 |
| Property Inspections (s) | 174.00 |
| Filing Fee | 1,975.00 |
| Service of Process<br>13 Service of Process @ $45.00<br>1 SKIP TRACE @ $90.00<br>TAXES $6.30 | 681.30 |
| BPO | 726.00 |
| NSF FEE | 25.00 |
| SUBTOTAL: | 674827.83 |
| | |
| ATTORNEY'S FEE | 1,702.50 |
| | |
| GRAND TOTAL | $676,530.33 |

that shall bear interest at the rate of 6% a year

2.    Plaintiff holds a lien for the total sum superior to all claims or estates of
defendant(s), on the following described property in SARASOTA County, Florida:

**UNIT G-1, BEACH WAY APARTMENTS, A CONDOMINIUM AS PER
DECLARATION OF CONDOMINIUM RECORDED IN OFFICIAL RECORDS
BOOK 846, PAGES 731 ET SEQ., AND ALL AMENDMENTS THERETO, AND
AS PER CONDOMINIUM PLAT RECORDED IN CONDOMINIUM BOOK 4,
PAGES 6 ET SEQ., AND ALL AMENDMENTS THERETO, OF THE PUBLIC
RECORDS OF SARASOTA COUNTY, FLORIDA. TOGETHER WITH ANY
AND ALL AMENDMENTS TO THE DECLARATION AND ANY UNDIVIDED
INTEREST IN THE COMMON ELEMENTS OR APPURTENANCES
THERETO.**

**A/K/A 5600 BEACH WAY UNIT #107SARASOTA, FL  34231**

3.    If the total sum with interest at the rate described in paragraph 1 and all costs
accrued subsequent to this judgment are not paid, the clerk of this court shall sell the
property at public sale as set forth below to the highest bidder for cash, except as
prescribed in paragraph 45, in accordance with section 45.031, Florida Statutes, using
the following method:

| Sales Information | Date (Clerk Inserts) | Time | Location |
|---|---|---|---|
| **Sarasota County** | 8/10/2011 | 9:00 a.m. | Foreclosure sales conducted via Internet: www.sarasota.realforeclose.com |
| **Manatee County** | | 11:00 a.m. | Foreclosure sales conducted via Internet: www.manatee.realforeclose.com |
| **DeSoto County** | | 11:00 a.m. | DeSoto County Courthouse |

| | | | 115 Oak Street<br>Arcadia, Florida 34266<br>www.desotoclerk.com |
|---|---|---|---|

4.     Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the clerk if plaintiff is not the purchaser of the property for sale, provided, however, that the purchaser of the property for sale shall be responsible for the documentary stamps payable on the certificate of title.  If plaintiff is the purchaser, the clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full.

5.  On filing the certificate of title the clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying:  first, all of plaintiff's costs; second, documentary stamps affixed to the certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 1 from this date to the date of the sale; and by retaining any remaining amount pending the further order of this court.

6   On filing the certificate of sale, defendant(s) and all persons claiming under or against defendant(s) since the filing of the notice of lis pendens shall be foreclosed of all estate or claim in the property, except as to claims or rights under chapter 718 or chapter 720, Florida Statutes, if any.  Upon the filing of the certificate of title, the person named on the certificate of title shall be let into possession of the property.  If any defendant remains in possession of the property, the clerk shall without further order of the court issue forthwith a writ of possession upon request of the person named on the certificate of title.
**NOTICE:  Issuance of a writ of possession does not exempt plaintiff from complying with federal law requiring notice to tenants residing on foreclosed property. To insure compliance with federal law, Plaintiff should consult with counsel before serving the writ of possession.**

7.  Jurisdiction of this action is retained to enter further orders that are proper including, without limitation, a deficiency judgment.

8.  **Additions. Modifications or Changes to Standard Form**
        Any additions, modifications or changes to the provisions above may only be set forth in this paragraph.
        a.     *The Court finds, based upon the affidavits presented and upon inquiry of counsel for the Plaintiff, that a flat-rate attorney fee of $1,702.50 is appropriate.  PLAINTIFF'S COUNSEL REPRESENTS THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH THE PLAINTIFF.  The Court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).*
        b.     If Plaintiff is the purchaser, the bid may be assigned without further Order of this Court.

    c.     If plaintiff is not limited to in rem stay relief in an active bankruptcy case and /or if borrower(s) has not been discharged in bankruptcy or constructively served, together with additional attorney's fees, if appropriate.

    d.     The Purchaser of the condominium unit at the judicial sale scheduled herein shall be responsible for assessments and other charges in accordance with Florida Statutes §718.116 (2006).

    e.     Any Homeowner Association assessments which are owed are subject to the Association's rights pursuant to Florida Statute 720.3085 (2008.)

9.    **NOTICE PURSUANT TO § 45.031, FLORIDA STATUTES (2006).**

    **If this property is sold at public auction, there may be additional money from the sale after payment of persons who are entitled to be paid from the sale proceeds pursuant to this Final Judgment.**

    **If you are a subordinate lienholder claiming a right to funds remaining after the sale, you must file a claim with the Clerk no later than sixty (60) days after the sale. If you fail to file a claim, you will not be entitled to any remaining funds.**

    **If you are the property owner, you may claim these funds yourself. You are not required to have a lawyer or any other representation and you do not have to assign your rights to anyone else in order for you to claim any money to which you are entitled. Please check with the Clerk of Court for your county within ten (10) days after the sale to see if there is additional money from the foreclosure sale that the clerk has in the registry of the Court.**

| Sarasota County Clerk of Court | Manatee County Clerk of Court | DeSoto County Clerk of Court |
|---|---|---|
| 2000 Main Street Sarasota, Florida 34237 (941) 861-7400 www.sarasotaclerk.com | 1115 Manatee Ave W Bradenton, FL 34205 (941) 749-1800 www.manateeclerk.com | 115 East Oak Street Arcadia, FL 34266 (863) 993-4876 www.desotoclerk.com |

    **If you decide to sell your home or hire someone to help you claim the additional money, you should read very carefully all papers you are required to sign, ask someone else, preferably an attorney who is not related to the person offering help to you, to make sure that you understand what you are signing and that you are not transferring your property or the equity in your property without the proper information. If you cannot afford to pay an attorney, you may contact the local legal services listed below to see if you qualify financially for their services. If they cannot assist you, they may be able to refer you to a local bar referral agency or suggest other options. If you choose to contact one of the services listed below, you should do so as soon as possible after the receipt of this notice.**

| Sarasota County | Manatee County | DeSoto County |
|---|---|---|
| **Legal Aid of Manasota Sarasota Office** 1900 Main Street, Suite 302 | **Legal Aid of Manasota** 1101 6th Avenue West Bradenton, Florida 34205 | Fla. Rural Legal Service 3210 Cleveland Avenue, Suite A |

| Sarasota, Florida  34236<br>(941) 366-0038<br>**Venice Office**<br>7810 South Tamiami Trail<br>Suite A6<br>Venice, Florida  34293 | (941) 747-1628<br>www.gulfcoastlegal.org<br><br>**Gulfcoast Legal Service**<br>430 12th Street West<br>Brandenton, Florida  34205 | Ft. Meyers, Florida  33901<br>(800) 476-8937<br>www.flrs.org |
|---|---|---|

**DONE AND ORDERED** in Chambers in  County, Florida, this _____ day of
_____, 2011.

ORIGINAL SIGNED

JUL 5 2011

CHARLES E. ROBERTS
Circuit Judge, Twelfth Judicial Circuit

CHARLES E. WILLIAMS
CIRCUIT JUDGE

*Copies furnished to all parties on the attached Service List.*

# Service List

Case Number: 2009 CA 015793 NC

Florida Default Law Group, P.L.
PO Box 25018
Tampa, FL 33622-5018

JORGE A. CERRON
8 Bay Ave
Osprey, FL  34229 9516

SUNTRUST BANK
c/o Cathy Homa Arther, Esq., R.A.
200 S. Orange Ave.
Orlando,, FL  32801

BEACH WAY CONDOMINIUM ASSOCIATION, INC.
c/o Bryan W. Sykes, Esq.
Turner, Martin & Sommer, P.L.
2002 East 4th St. Ave
Tampa, FL  33605

TENANT #1 N/K/A RICHARD EISENBERG
5600 Beach Way Unit #107
Sarasota, FL  34231

## **Exhibit 1-D**

## **Certificate of Title**

☒ IN THE CIRCUIT COURT OF THE  TWELFTH JUDICIAL CIRCUIT IN AND FOR SARASOTA
COUNTY, FLORIDA
☐ IN THE COUNTY COURT IN AND FOR SARASOTA COUNTY, FLORIDA

RECORDED IN OFFICIAL RECORDS
INSTRUMENT #2011101428    1  PG

| DIVISION: | CASE NUMBER: |
|---|---|
| **CIVIL** | **2009 CA 015793 NC** |

08/31/2011 11:11:40 AM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FLORIDA
CIVIL COURTS 3          Receipt # 1419739

Doc Stamp-Mort:   $0.00
Doc Stamp-Deed: $1134.00
Intang. Tax:        $0.00
STAMP FOR RECORDING

**PLAINTIFF(S)**
GMAC MORTGAGE, LLC,

**VS. DEFENDANT(S)**
 JORGE A. CERRON;  THE UNKNOWN SPOUSE OF JORGE A. CERRON;  ANY AND ALL UNKNOWN
PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL
DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN
PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER
CLAIMANTS;  SUNTRUST BANK;  BEACH WAY CONDOMINIUM ASSOCIATION, INC.;  TENANT #1,
TENANT #2,  TENANT #3, and  TENANT #4 the names being fictitious to account for parties in possession

## CERTIFICATE OF TITLE

The undersigned Clerk of the Circuit Court certifies that he or she executed and filed a certificate of sale
in this action on August 10, 2011 for the property described herein and that no objections to the sale have been filed
within the time allowed for filing objections pursuant to §45.031(4) Florida Statutes.

The following property located in Sarasota County, Florida:

**UNIT G-1, BEACH WAY APARTMENTS, A CONDOMINIUM AS PER
DECLARATION OF CONDOMINIUM RECORDED IN OFFICIAL RECORDS
BOOK 846, PAGES 731 ET SEQ., AND ALL AMENDMENTS THERETO, AND
AS PER CONDOMINIUM PLAT RECORDED IN CONDOMINIUM BOOK 4,
PAGES 6 ET SEQ., AND ALL AMENDMENTS THERETO, OF THE PUBLIC
RECORDS OF SARASOTA COUNTY, FLORIDA. TOGETHER WITH ANY
AND ALL AMENDMENTS TO THE DECLARATION AND ANY UNDIVIDED
INTEREST IN THE COMMON ELEMENTS OR APPURTENANCES
THERETO.**

was sold to GMAC MORTGAGE, LLC,

whose address is 1100 Virginia Drive, Fort Washington, PA 19034.

WITNESS my hand and the seal of this Court on August 31, 2011.

FILED FOR RECORD
2011 AUG 31 AM 10: 48
KAREN E. RUSHING
CLERK OF CIRCUIT COURT
SARASOTA COUNTY FLORIDA

*Sale Price* $ 162,000.00

**KAREN E. RUSHING**
**CLERK OF THE CIRCUIT COURT**

BY: _____
Deputy Clerk

☑ Doc. Stamp Paid $ 1,134.00

☐ Doc. Stamp Due  $_____
and outstanding

Case: 2009 CA 015793 NC



**<u>Exhibit 1-E</u>**

**Court of Appeal's July 18, 2012 Decision**

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

| | | |
|---|---|---|
| JORGE A. CERRON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Case No. 2D11-3425 |
| | ) | |
| GMAC MORTGAGE, LLC, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Opinion filed July 18, 2012.

Appeal from the Circuit Court for Sarasota
County; Charles E. Roberts, Judge.

Jorge A. Cerron, pro se.

Marc James Ayers and Jose D. Vega of
Bradley Arant Boult Cummings LLP,
Birmingham, Alabama, for Appellee.


NORTHCUTT, Judge.

Jorge Cerron, pro se, appeals a final summary judgment of foreclosure on

a mortgage in favor of GMAC Mortgage, LLC, the successor to the original lender.  We

reverse because GMAC failed to refute Cerron's affirmative defense alleging lack of

notice.

GMAC filed a complaint seeking to foreclose a mortgage given by Cerron,

and it alleged generally that all conditions precedent to acceleration had been

performed or had occurred.  The complaint attached a copy of the mortgage, paragraph
22 of which required the lender to give thirty days' written notice of default prior to
acceleration.  Cerron filed a pro se answer, which was not a model pleading.  The
answer set forth several pages of narrative in opposition to the foreclosure complaint
and then alleged four affirmative defenses.  The first affirmative defense asserted that
GMAC failed to give timely notice of default and of the lender's intent to accelerate as
required by the mortgage, note, and Florida law.  Cerron's answer included a plea for
the court to dismiss the action.

   GMAC subsequently filed a motion for summary judgment and asserted,
in part, that Cerron's affirmative defenses were legally insufficient.  In support of its
motion, GMAC filed an affidavit setting forth the amounts due and owing and an affidavit
regarding attorney's fees and costs.  It subsequently filed a notarized, recorded
document recounting that the mortgage had been assigned to GMAC on a date just
prior to the filing of the complaint.  GMAC also filed the note that was indorsed in blank.
None of GMAC's filings specifically addressed or refuted Cerron's affirmative defenses.

   The circuit court denied Cerron's motion to dismiss and directed him to file
an amended answer, which he did.  In the amended answer, Cerron specifically alleged
as his seventh affirmative defense that GMAC failed to give a notice of default and that
it thus failed to comply with a contractual condition precedent.  GMAC filed updated
affidavits of amounts due and attorney's fees, but it never addressed Cerron's
affirmative defenses, either by affidavit or by memorandum in support of summary
judgment.

On appeal, Cerron argues that the circuit court erred in granting summary judgment when GMAC failed to refute his affirmative defenses. Based on our de novo review of the summary judgment, we agree. See Taylor v. Bayview Loan Servicing, LLC, 74 So. 3d 1115, 1117 (Fla. 2d DCA 2011) ("The standard of review on a summary judgment is de novo."). The party moving for summary judgment must show that there are no disputed issues of material fact and that it is entitled to judgment as a matter of law. Id. at 1116-17 (citing Fla. R. Civ. P. 1.150(c)). In addition, a plaintiff moving for summary judgment must refute the nonmoving party's affirmative defenses. Id.; see also Coral Wood Page, Inc. v. GRE Coral Wood, LP, 71 So. 3d 251, 253 (Fla. 2d DCA 2011).

On appeal, GMAC maintains that Cerron had the burden to file an affidavit stating that he never received a notice of default, at which point GMAC would have been required to refute the contention with contrary evidence. That is incorrect. A plaintiff moving for summary judgment must either conclusively refute the factual bases for the defendant's affirmative defenses or show that the defenses are legally insufficient. Coral Wood Page, 71 So. 3d at 253. As in Taylor and Konsulian v. Busey Bank, N.A., 61 So. 3d 1283 (Fla. 2d DCA 2011), when Cerron alleged GMAC's failure to provide a contractually required notice of default, GMAC's burden on summary judgment was to show that it had satisfied this condition precedent. It failed to do so.

Reversed and remanded.


SILBERMAN, C.J., and CRENSHAW, J., Concur.

## Exhibit 1-F

## Notice of Bankruptcy

**IN THE CIRCUIT COURT OF THE 12TH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA**

| | | |
|---|---|---|
| GMAC MORTGAGE, LLC, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Case No.:  2009-CA-015793-NC |
| | ) | |
| JORGE CERRON, et al., | ) | |
| | ) | |
| Defendants/Counterclaimant. | ) | |

**NOTICE OF BANKRUPTCY FILING
AND SUPPLEMENTAL SERVICING ORDER**

Counterclaim Defendant and Debtor GMAC Mortgage, LLC ("GMAC"), by and through

its undersigned counsel, in accordance and consistent with section 362(a) of the United States

Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), respectfully submits this

Notice of Bankruptcy and Suggestion of Automatic Stay, and states as follows:

1.       On May 14, 2012 (the "Petition Date"), Residential Capital, LLC and certain of

its direct and indirect subsidiaries (collectively, the "Debtors"), including GMAC, filed voluntary

petitions for relief under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Filing") in the

United States Bankruptcy Court for the Southern District of New York, One Bowling Green,

New York, NY 10004-1408 (the "Bankruptcy Court").  The Debtors' Chapter 11 cases being

jointly administered, indexed at case number 12-12020 (MG).

2.       As a result of the Bankruptcy Filing, on the Petition Date, the protections of the

automatic stay codified in section 362(a) of the Bankruptcy Code arose with regard to the

Debtors.  Section 362(a), among other things, operates as an automatic stay of: (i) "the

commencement or continuation, including the issuance or employment of process, of a judicial,

administrative, or other action or proceeding" against the Chapter 11 Debtors (11 U.S.C. §

362(a)(1)); (ii) acts to "obtain possession of property" of the Debtors' Chapter 11  estates (11

U.S.C. § 362(a)(3)); and (iii) acts to "collect, assess, or recover a claim" against the Debtors

arising prior to the Petition Date (11 U.S.C. § 362(a)(6)).

3.        On July 13, 2012, the Bankruptcy Court entered a final supplemental order

granting, among other things, the Debtors' motion for limited relief from the automatic stay to

permit non-Debtor parties in foreclosure and eviction proceedings, borrower bankruptcy cases

and title disputes to continue to assert and prosecute certain defenses, claims and counter-claims

(the "Final Supplemental Order").  Paragraphs 14, 15, 16 and 17 of the Final Supplemental Order

identify the categories of defenses, claims and counter-claims for which the automatic stay has

been modified (the "Permitted Claims").   A copy of the Final Supplemental Order is attached

hereto as **Exhibit A**.

4.        As set forth in the Final Supplemental Order, Permitted Claims are those asserted

by a borrower, mortgagor, or lienholder that relate "exclusively to the property that is the subject

of the loan owned or serviced by a Debtor for the purposes of defending, unwinding, or

otherwise enjoining or precluding any foreclosure, whether in a Judicial State or a Non-Judicial

State, or eviction proceeding…" (Exh. A, ¶ 14(a)).  Claims for monetary relief of any kind or

nature and claims "for relief that if granted, would not terminate or preclude the prosecution and

completion of a foreclosure or eviction" are not Permitted Claims. (*Id*., ¶ 14(b)).

5.        To the extent that the defenses, claims and counter-claims do not constitute

Permitted Claims, they remain subject to the automatic stay and the continued prosecution of

these claims is prohibited.

6.        With regard to this matter, defendant Cerron has asserted the following

counterclaims:

a.    Cerron alleges a violation of the Florida Deceptive and Unfair Trade
Practices Act (the "FDUTPA").  This counterclaim seeks both equitable and monetary
relief.  To the extent it seeks an injunction of the foreclosure, the claim may proceed as a
Permitted Claim, with the sole remedy being a determination as to GMAC's right to
foreclose.  To the extent Cerron seeks monetary relief, his claims are <u>not</u> Permitted
Claims, they remain subject to the automatic stay, and the continued prosecution of those
claims is prohibited.

b.    Cerron alleges that GMAC committed fraud and misrepresentation.  This
counterclaim seeks both equitable and monetary relief.  To the extent it seeks an
injunction of the foreclosure, the claim may proceed as a Permitted Claim, with the sole
remedy being a determination as to GMAC's right to foreclose.  To the extent Cerron
seeks monetary relief, his claims are <u>not</u> Permitted Claims, they remain subject to the
automatic stay, and the continued prosecution of those claims is prohibited.

c.    Cerron alleges that GMAC engaged in unconscionable conduct.  This
counterclaim seeks both equitable and monetary relief.  To the extent it seeks an
injunction of the foreclosure, the claim may proceed as a Permitted Claim, with the sole
remedy being a determination as to GMAC's right to foreclose.  To the extent Cerron
seeks monetary relief, his claims are <u>not</u> Permitted Claims, they remain subject to the
automatic stay, and the continued prosecution of those claims is prohibited.

7.    Pursuant to paragraph 23 of the Final Supplemental Order, any dispute regarding
the extent, application and/or effect of the automatic stay under the Final Supplemental Order,
must be heard and determined in the United States Bankruptcy Court for the Southern District of
New York, jointly administered under Case No. 12-12020, in accordance with the Case

Management Order entered in the Debtors' case [Docket No. 141] and such other and further orders as may be entered by the United States Bankruptcy Court for the Southern District of New York.

Respectfully submitted, this the 22nd day of October, 2012,

     /s/ Marc James Ayers
Marc James Ayers (0157279)
Jonathan M. Hooks (*Bar Number Pending*)
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
mayers@babc.com
jhooks@babc.com

*ATTORNEYS for PLAINTIFF*
*GMAC MORTGAGE, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via e-mail and United States mail, postage prepaid, this 22nd day of October, 2012, to the following:

Jorge Cerron
P.O. Box 18902
Sarasota, Florida 34276

Stanley L. Martin, Esq.
Michael D. Pangia, Esq.
2002 East 4th Ave.
Tampa, FL 33605
smartin@martinaequitas.com
mpangia@martinaequitas.com

     /s/ Marc James Ayers
OF COUNSEL

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**FINAL SUPPLEMENTAL ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a), 362, 363, 502, 1107(a), AND 1108 AND BANKRUPTCY RULE 9019 (I) AUTHORIZING THE DEBTORS TO CONTINUE IMPLEMENTING LOSS MITIGATION PROGRAMS; (II) APPROVING PROCEDURES FOR COMPROMISE AND SETTLEMENT OF CERTAIN CLAIMS, LITIGATIONS AND CAUSES OF ACTION; (III) GRANTING LIMITED STAY RELIEF TO PERMIT FORECLOSURE AND EVICTION PROCEEDINGS, BORROWER BANKRUPTCY CASES, AND TITLE DISPUTES TO PROCEED; AND (IV) AUTHORIZING AND DIRECTING THE DEBTORS TO PAY SECURITIZATION TRUSTEE FEES AND EXPENSES**

Upon the motion (the "Motion")[1] of Residential Capital, LLC, and certain of its

affiliates, as debtors and debtors in possession (collectively, the "Debtors") for entry of a

supplemental order under Bankruptcy Code sections 105(a), 362, 363, 1107(a) and 1108, and

Bankruptcy Rule 9019 (i) authorizing the Debtors to continue implementing loss mitigation

programs; (ii) approving procedures for the compromise and settlement of certain claims,

litigations and causes of action in the ordinary course of the Debtors' business; (iii) granting

limited stay relief to permit (w) borrowers or their tenants, as applicable, to prosecute direct

claims and counter-claims in foreclosure and eviction proceedings (including in states in which

non-judicial foreclosure is followed), (x) borrowers to prosecute certain actions in borrower

bankruptcy cases, (y) the Debtors to prosecute foreclosure actions in those circumstances where

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion. Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

1212020120713000000000011

they service senior mortgage loans and own the junior mortgage loans on the underlying

property, and (z) third party lien holders to prosecute direct claims and counter-claims in actions

involving the amount, validity or priority of liens on properties subject to foreclosure

proceedings; and (iv) authorizing and directing the Debtors to pay certain securitization trustee

fees and expenses; and the Court having considered the Whitlinger Affidavit and the Bocresion

Declaration; and the Court having entered the Interim Supplemental Order on June 15, 2012

[Docket No. 391]; and the Court having entered a final order on June 15, 2012 granting the GA

Servicing Motion on a final basis [Docket No. 401]; and the Court having entered a final order

on June 15, 2012 granting the Non-GA Servicing Motion on a final basis [Docket No. 402]; and

it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157

and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is

proper pursuant to 28 U.S.C §§ 1408 and 1409; and it appearing that this proceeding on the

Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion

having been given and it appearing that no other or further notice need be provided; and the

National Association of Consumer Bankruptcy Attorneys, on its own behalf and in a

representative capacity, two individuals who are debtors under Chapter 13, and Edward Boltz,

counsel for those individuals, having filed jointly the Limited Omnibus Objection To The

Servicing Orders And Debtors' May 31, 2012 Motion For A Supplemental Order [Docket No.

221] (the "NACBA Objection"); and the Committee having filed the Omnibus Response And

Reservation Of Rights Of The Official Committee Of Unsecured Creditors To Certain Of The

Debtors' First Day Motions [Docket No. 240]; and the Debtors having filed the Omnibus Reply

To Objections To Entry Of Final Orders For Specific "First Day" Motions And Related Relief

[Docket. No. 254]; and upon the record of the hearing; and it appearing that the relief requested

by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and any objections to the Motion, including the NACBA Objection, having been withdrawn, resolved, or overruled on the merits; and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.       The Motion is GRANTED on a final basis, as set forth herein, and any objections to the Motion are hereby overruled;

<u>Loss Mitigation Programs</u>

2.       The Debtors are authorized, but not directed in their sole and absolute discretion and subject to available funding, to continue developing and implementing loss mitigation programs and procedures in the ordinary course of their businesses *nunc pro tunc* to the Petition Date, including, but not limited to, making incentive payments to borrowers in connection with the closing of short sales, or vacating properties in lieu of foreclosure or eviction proceedings, or in the form of borrower rebates for loan payoffs including honoring all obligations related thereto that accrued in whole or in part prior to the Petition Date (collectively, the "<u>Loss Mitigation Programs</u>"); <u>provided</u>, <u>however</u>, that the aggregate cash payments made by the Debtors to individual borrowers under the Loss Mitigation Programs that are not reimbursed to the Debtors shall not exceed $550,000 per month (the "<u>Monthly Cap</u>"), absent consent of the Committee or further order of the Court; <u>provided</u>, <u>further</u>, <u>however</u>, that to the extent the Debtors do not exceed the Monthly Cap in any month they shall be entitled to utilize the difference between the actual amount and the Monthly Cap in any succeeding month.  The Debtors shall provide monthly reports to the Committee and the Office of the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>"), which reports shall be in a

ny-1046923

form agreed to by the Debtors and the Committee and such additional information as shall be

reasonably requested by the Committee, in each case, concerning the Loss Mitigation Programs.

3.      Cash payments made by the Debtors to individual borrowers under the

Loss Mitigation Programs for which the Debtors are not reimbursed shall not exceed $4.2

million in the aggregate, absent consent of the Committee or further order of the Court.  For the

avoidance of doubt, the limitation on the amount of cash payments provided for in this paragraph

3 is in addition to the limitation on the amount of cash payments provided for in paragraph 12

hereof.

Settlement Procedures

4.      The Debtors are authorized, but not directed to compromise and settle

certain claims brought by the Debtors against any non-insider third parties in connection with

foreclosure, eviction, or borrower bankruptcy proceedings (each a "Settling Party") or by a

Settling Party against any of the Debtors (each, a "Claim") in accordance with the following two-

tiered procedures (the "Settlement Procedures"):

> Tier I:  The Debtors, in their sole discretion, may enter into,
> execute and consummate written agreements of settlement with
> respect to Claims that will be binding on the Debtors and their
> estates without further action by this Court or notice to any party
> and grant such Settling Parties cash payments or allowed
> prepetition claims in amounts not to exceed $40,000 in full
> settlement of such Claim (each, a "Tier I Settlement").

> Tier II:  The Debtors may enter into, execute and consummate
> written agreements of settlement with respect to Claims that will
> be binding on the Debtors and their estates without further action
> by this Court or notice to any party and grant such Settling Parties
> cash payments or allowed prepetition claims in amounts exceeding
> $40,000 but less than $100,000 in full settlement of such Claims
> (each, a "Tier II Settlement"); provided, that in each case:

> (a) The Debtors must provide advance written notice (by
> formal or informal means, including by e-mail correspondence) of
> the terms of any Tier II Settlement to (x) the U.S. Trustee, 33

4

Whitehall Street, 21st Floor, New York, New York 10004, Attn:
Brian S. Masumoto, (y) counsel for the Committee, Kramer Levin
Naftalis & Frankel LLP, 1177 Avenue of the Americas New York,
NY 10036, Attn: Kenneth H. Eckstein and Douglas H. Mannal;
and (z) counsel to the administrative agent for the Debtors'
providers of debtor in possession financing, Skadden, Arps, Slate,
Meagher & Flom LLP, 4 Times Square, New York, New York
10036, Attn: Kenneth S. Ziman and Jonathan H. Hofer
(collectively the "Notice Parties")

(b) Those Notice Parties wishing to object to any proposed
Tier II Settlement must serve a written objection (by formal or
informal means, including by e-mail correspondence) on the
Debtors, so that it is received by no later than 4:00 p.m. (prevailing
Eastern Time) on the day that is seven (7) calendar days from the
date the Notice Parties received written notice of such Tier II
Settlement (the "Settlement Objection Deadline"). Objections
should be addressed to the proposed attorneys for the Debtors,
Morrison & Foerster LLP, 1290 Avenue of the Americas, New
York, New York 10104, Attn: Larren M. Nashelsky
(LNashelsky@mofo.com) and Norman S. Rosenbaum
(NRosenbaum@mofo.com).

(c) If the Debtors receive a timely objection from a Notice
Party, the parties will confer and attempt to resolve any
differences. Failing that, the Debtors may petition the Court for
approval of the Tier II Settlement in accordance with any case
management orders entered in the Chapter 11 cases. An objection
by a Notice Party with respect to a given Tier II Settlement shall
not delay the finality or effectiveness of any other settlement to
which an objection has not timely been delivered.

(d) If the Debtors do not receive a written objection to a
Tier II Settlement from a Notice Party by the Settlement Objection
Deadline, then such Tier II Settlement shall be deemed approved
and the Debtors and Settling Parties may carry out the terms of
such Tier II Settlement without further notice or Court approval.

5.      The Debtors shall be required to seek approval from the Court in order to

enter into and consummate any proposed settlement of a Claim with a settlement amount in

excess of $100,000.

6.      The Debtors are authorized in their sole discretion, but not directed, to

settle claims where some or all of the consideration is being provided by a third party and/or

where the Debtors are releasing claims against creditors or third parties provided the Debtors

otherwise comply with the Settlement Procedures.

7.      The Settlement Procedures are without prejudice to the right of the

Debtors to seek an order of this Court approving additional or different procedures with respect

to specific claims or categories of claims.  For claims relating to matters specified in paragraphs

14(a) and 15(a) of this Order that were resolved pursuant to a settlement prior to the Petition

Date, but where such settlement has not been consummated, the Debtors are authorized, but not

directed to, consummate said settlements in accordance with the Settlement Procedures set forth

in this Order.

8.      Notwithstanding anything to the contrary contained herein, this Order

shall not affect, impair, impede or otherwise alter the right of the Debtors to resolve any

prepetition or postpetition controversy arising in the ordinary course of the Debtors' businesses,

or resolve any controversy authorized by any other order of the Court.

9.      Nothing in this Order or the Motion shall constitute a determination or

admission of liability or of the validity or priority of any claim against the Debtors, and the

Debtors reserve their rights to dispute the validity or priority of any claim asserted.

10.     The authority granted in this Order shall not replace or obviate the need to

comply with the Debtors' internal procedures, legal or otherwise, for authorizing the settlements

contemplated in the Motion.  All settlements made pursuant to the Settlement Procedures shall,

to the extent applicable, be made in accordance with the Debtors' settlement procedures in effect

as of the Petition Date (the "Internal Settlement Protocol") and as may be amended from time;

provided, however, that the Debtors shall provide the Committee and the U.S. Trustee with

notice of any material changes to the Internal Settlement Protocol.

11.     The Debtors shall provide monthly reports to the Committee and the U.S.

Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such

additional information as shall be reasonably requested by the Committee, in each case,

concerning settlements of any Claims pursuant to the Settlement Procedures.

12.     Cash payments made by the Debtors under the Settlement Procedures shall

not exceed $4 million in the aggregate, absent consent of the Committee or further order of the

Court.

13.     Any period prescribed or allowed by the Settlement Procedures shall be

computed in accordance with Bankruptcy Rule 9006.

Limited Relief from Automatic Stay

*Borrower Foreclosure And Eviction Proceedings*

14.     The stay imposed by section 362(a) of the Bankruptcy Code applicable to

(a) pending and future foreclosure actions initiated by the Debtors or in those states providing for

non-judicial foreclosures, by a borrower; and (b) pending and future eviction proceedings with

respect to properties for which a foreclosure has been completed or is pending, is hereby

modified pursuant to the following terms and conditions:

(a)     except as set forth herein, a borrower, mortgagor, or lienholder

(each, an "Interested Party") shall be entitled to assert and prosecute direct claims and

counter-claims relating exclusively to the property that is the subject of the loan owned or

serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or

precluding any foreclosure, whether in a Judicial State or a Non-Judicial State, or eviction

proceeding, where a final judgment (defined as any judgment where the right to appeal or

seek reconsideration has expired or has been exhausted) permitting the foreclosure or

eviction has not been awarded or, with respect to completed foreclosure sales in Non-Judicial States, where any applicable challenge period has not yet expired, and to prosecute appeals with respect to any such direct claims or counter-claims;

(b)      absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all pending and future Interested Party direct claims and counter-claims:  (i) for monetary relief of any kind and of any nature against the Debtors, except where a monetary claim must be plead in order for an Interested Party to a assert a claim to defend against or otherwise enjoin or preclude a foreclosure (each a "Mandatory Monetary Claim"); (ii) for relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction; or (iii) asserted in the form of a class action or collective action;

(c)      absent further order of the Court, the stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Interested Party on behalf of any other Interested Party or class of Interested Parties;

(d)      under no circumstances shall an Interested Party be entitled to enforce against, recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order, including, without limitation, a Mandatory Monetary Claim;

(e)      the Debtors shall retain the right, upon appropriate motion and notice to any affected Interested Party, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order and to the extent such relief is sought, the

8

Debtors will not object to the Interested Party's telephonic participation at any hearing on

the motion; and

(f)    nothing set forth herein shall preclude or limit any Interested Party

from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code

on appropriate motion and notice to the Debtors and parties in interest.

*Borrower Bankruptcy Proceedings*

15.    The automatic stay imposed by section 362(a) of the Bankruptcy Code

applicable against a borrower who currently has filed, or in the future files, for bankruptcy

protection under any chapter of the Bankruptcy Code (a "Bankruptcy Borrower"), is hereby

modified pursuant to the following terms and conditions:

(a)    except as set forth herein, a Bankruptcy Borrower or a trustee duly

appointed under the Bankruptcy Code in the Bankruptcy Borrower's bankruptcy case (a

"Bankruptcy Trustee") shall be entitled to:  (i) assert and prosecute or continue to

prosecute an objection to the Debtors' proof of claim filed in the Bankruptcy Borrower's

bankruptcy case; (ii) assert and prosecute or continue to prosecute an objection to the

Debtors' motion for relief from the automatic stay filed in the Bankruptcy Borrower's

bankruptcy case; (iii) commence or continue to prosecute against the Debtors a motion or

adversary proceeding, as applicable, to determine the validity, priority or extent of a

Debtor's lien against the Bankruptcy Borrower's property; (iv) commence or continue to

prosecute against the Debtors a motion or adversary proceeding, as applicable, to reduce

(including to reduce to $0) or fix the amount of the Debtors' claim or lien against the

Bankruptcy Borrower's property; (v) prosecute appeals with respect to items (i) through

(iv) above; (vi) seek an accounting from the Debtors with respect to the Bankruptcy

Borrower's loan; and (vii) enter into, execute and consummate a written agreement of settlement with the Debtors where the Debtors elect to enter into such settlement in their sole discretion (but subject to the Settlement Procedures), to resolve items (i) through (vi) above;

(b)      except as set forth herein, a Bankruptcy Borrower shall be entitled to (i) engage in court-supervised or court-authorized loss-mitigation programs regarding the Bankruptcy Borrower's loan; and (ii) engage in discussions with the Debtors and execute a modification of the Bankruptcy Borrower's loan or otherwise discuss, enter into and consummate settlements of claims and liens in accordance with the ordinary course of the Debtors' business and applicable law;

(c)      absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all Bankruptcy Trustee's and Bankruptcy Borrower's direct claims, counter-claims, motions or adversary proceedings:  (i) for monetary relief of any kind and of any nature against the Debtors; (ii) for violation of any local, state or federal statute or other law in connection with the origination of the Bankruptcy Borrower's loan; (iii) for relief that if granted, would have no effect on the amount, validity or priority of the Debtors' claim or lien against a Bankruptcy Borrower or the property of the Bankruptcy Borrower securing such claim or lien of the Debtors; or (iv) asserted in the form of a class action or collective action; provided however, a Bankruptcy Trustee or Bankruptcy Borrower, solely in connection with their objections to Debtors' proof of claim permitted by paragraph 15(a)(i) or proceedings permitted by 15(a)(iii), may assert claims of the type covered by subsection (i) or (ii) of this paragraph 15(c);

ny-1046923

(d)       absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to any party seeking to intervene to assert related claims

against the Debtors or any class action or collective action brought by any Bankruptcy

Borrower on behalf of any other class of borrowers;

(e)       with the sole exception of objections to Debtors' proofs of claim

permitted by paragraph 15(a)(i) above and proceedings described in 15(a)(iii) above and

solely for purposes of reducing any such claim and not for the purpose of obtaining an

affirmative recovery or award, under no circumstances shall a Bankruptcy Borrower or

Bankruptcy Trustee be entitled to recoup, setoff or collect from the Debtors any judgment

or award related to any direct claim or counter-claim for which the automatic stay has been

lifted by the terms of this Order;

(f)       the Debtors shall retain the right, upon appropriate motion and

notice to any Bankruptcy Borrower or Bankruptcy Trustee, to seek to impose any

provision of section 362(a) of the Bankruptcy Code modified by this Order and to the

extent such relief is sought, the Debtors will not object to the Interested Party's telephonic

participation at any hearing on the motion; and

(g)       nothing set forth herein shall preclude or limit any Bankruptcy

Borrower or Bankruptcy Trustee from seeking relief from the automatic stay under section

362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties

in interest.

*Foreclosures By The Debtors On Senior Loans*

16.       The stay imposed by section 362(a) of the Bankruptcy Code applicable to

pending and future foreclosure actions initiated by the Debtors in cases where they act as

ny-1046923

servicer for the Senior Loan and also own (or for which the applicable public land records

otherwise reflect that the Debtors hold an interest) the Junior Loan with respect to the underlying

property (collectively, the "Junior Foreclosure Actions") is hereby modified pursuant to the

following terms and conditions:

(a)       except as otherwise set forth herein, the Debtors shall be entitled to

assert and prosecute Junior Foreclosure Actions, whether in a Judicial State or a Non-

Judicial State;

(b)       the Debtors shall be entitled to take such actions as are necessary to

extinguish the lien with respect to a Junior Loan or to otherwise ensure clear and

marketable title with respect to the property underlying a Senior Loan in connection with

any sale or other disposition of such property;

(c)       the Debtors shall be entitled to seek all appropriate relief with

respect to a Senior Loan in connection with the bankruptcy cases of a Bankruptcy

Borrower without further order of the Court; and

(d)       the Debtors shall provide monthly reports to the Committee and the

U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee,

and such additional information as shall be reasonably requested by the Committee, in

each case, concerning Junior Foreclosure Actions.

D.       *Actions Involving Amount, Validity Or Priority Of Liens*

17.       The stay imposed by section 362(a) of the Bankruptcy Code applicable to

actions involving the amount, validity, and/or priority of liens commenced by third parties

purporting to have a lien interest or other claim ("Third Party Claimants") with respect to

properties that are subject to mortgages owned or serviced by the Debtors ("Title Disputes") is

hereby modified pursuant to the following terms and conditions:

(a)        except as otherwise set forth herein, a Third Party Claimant shall be

entitled to assert and prosecute direct claims and counter-claims relating exclusively to the

property that is the subject of the loan owned or serviced by a Debtor in connection with

any Title Dispute, and to prosecute appeals with respect to any such direct claims or

counter-claims;

(b)        absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to all pending and future Third Party Claimant direct

claims and counter-claims:  (i) for monetary relief of any kind and of any nature against the

Debtors; (ii) for relief that is not necessary for the resolution of the Title Dispute; or

(iii) asserted in the form of a class action or collective action;

(c)        absent further order of the Court, the stay shall remain in full force

and effect with respect to any party seeking to intervene to assert related claims against the

Debtors or any class action or collective action brought by any Third Party Claimant on

behalf of any other Third Party Claimant or class of Third Party Claimants;

(d)        under no circumstances shall a Third Party Claimant be entitled to

enforce against, recoup, setoff or collect from the Debtors any judgment or award related

to any direct claim or counter-claim for which the automatic stay has been lifted by the

terms of the Order;

(e)        the Debtors shall be entitled to take such actions as are necessary to

clear title with respect to property that is subject to a Title Dispute or to otherwise ensure

clear and marketable title with respect to such property in connection with any sale, foreclosure or other disposition of such property;

(f)      the Debtors shall retain the right, upon appropriate motion and notice to any affected Third Party Claimant, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by the Order; and

(g)      nothing set forth herein shall preclude or limit any Third Party Claimant from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

<u>Payment of Securitization Trustee Fees and Expenses</u>

18.      The Debtors shall continue to perform all of their respective servicing duties and servicing related duties, including, but not limited to, their duties as master servicer, under all the governing agreements (including, without limitation, pooling and servicing agreements, servicing agreements, or any other agreements concerning or relating to the Debtors' obligations to reimburse and/or indemnify for reasonable fees, costs, expenses, liabilities, and/or losses) (collectively, the "<u>Agreements</u>") relating to Debtor-sponsored securitization transactions and non-Debtor sponsored securitization transactions to which any of The Bank of New York Mellon Trust Company, N.A., Wells Fargo Bank, N.A., Deutsche Bank Trust Company Americas, Deutsche Bank National Trust Company, or U.S. Bank National Association, or any affiliate of such entities acts as trustee for which any Debtor performs servicing duties, in each of their respective capacities as trustee (collectively, the "<u>Trustees</u>") and one or more of the Debtors is a party, including but not limited to, making all principal, interest or other servicing advances (including property protection advances) and reimbursing, indemnifying, defending and holding harmless the Trustees and the securitization trusts for any liability, loss, or reasonable fees, cost

14

or expense (including fees and disbursements of counsel or agents) incurred by any of the

Trustees in the performance of their duties or their administration of the trusts or other agencies

under the Agreements to the extent required by the Agreements.  For the avoidance of doubt, the

Debtors shall pay the reasonable, actual out-of-pocket costs and expenses of the Trustees in

connection with reviewing and analyzing the request by the Debtors to approve the MBS

Settlement Agreement, and in connection with reviewing and analyzing amendments to the

Agreements as necessary or appropriate in connection with any proposed Chapter 11 plan, the

MBS Settlement Agreement or the Platform Sale.  Notwithstanding the foregoing, nothing in this

paragraph 18 shall require any Debtor (i) to repurchase any mortgage loans on the basis of

alleged breaches of representations, warranties or other requirements of the Agreements, or make

any make-whole payments with respect to any mortgage loans pursuant to the Agreements; or

(ii) to enforce, as against any other Debtor entity or any non-Debtor affiliate, any provision of the

Agreements under which such other Debtor entity or non-Debtor affiliate are required to

repurchase any mortgage loans on the basis of alleged breaches of representations, warranties or

other requirements of the Agreements, or make any make-whole payments with respect to any

mortgage loans pursuant to the Agreements; and nothing in this paragraph 18 shall be deemed to

impose liability on any Debtor with respect to such alleged breaches or make-whole payment

requirements.

   19.  The Trustees shall submit invoices to (a) counsel to the Debtors,

(b) counsel to the Committee, and (c) the U.S. Trustee, and all such invoices shall include (i) an

itemization of all professional fees by task with a detailed description of the work performed in

connection with such task, (ii) a description of related expenses, and (iii) a description of any

indemnity claims.  Thereafter, within thirty (30) days of presentment of such invoices, if no

written objections to the reasonableness of the fees and expenses charged in any such invoice (or

portion thereof) is made by the Debtors, the Committee, or the U.S. Trustee, the Debtors are

authorized and directed to pay all reasonable fees, costs and expenses and all indemnity claims

referred to in paragraph 18 (including without limitation, attorney, financial advisor, consultant

and expert fees and costs) incurred postpetition by any of the Trustees relating to the

performance of each of the Trustees' duties or the administration of the trusts or other agencies

under the Agreements (the "Trustee Expenses") that are not subject to an objection by the

Debtors, the Committee, or the U.S. Trustee without further order from the Court.  Any objection

to the payment of the Trustee Expenses shall be made only on the basis of "reasonableness," and

shall specify in writing the amount of the contested fees and expenses and a detailed basis for

such objection.  To the extent an objection only contests a portion of an invoice, the undisputed

portion thereof shall be promptly paid.  If any such objection to payment of an invoice (or any

portion thereof) is not otherwise resolved between the Debtors, the Committee, or the U.S.

Trustee and the issuer of the invoice, either party may submit such dispute to the Court for a

determination as to the reasonableness of the disputed amounts.  This Court shall resolve any

dispute as to the reasonableness of any fees and expenses.

        20.     To the extent either the Committee, or the RMBS Trustees determine that

the Trustee Expenses were improperly or mistakenly allocated to an RMBS trust or to the

Debtors' estates, the Committee and the RMBS Trustees reserve the right to seek to correct the

allocation of the Trustee Expenses as between the RMBS trusts or the Debtors' estates in

accordance with the applicable Agreement, and such adjustment shall be the Committee's and

RMBS Trustees' sole remedy arising from a misallocation.  All Trustee Expenses for which

(a) no objection under paragraph 19 has been interposed, or (b) where such an objection has been

interposed and the amount of Trustee Expenses determined by the Court to be reasonable, shall be entitled to administrative expense priority in the Debtors' Chapter 11 cases notwithstanding the entry of an order authorizing the assumption and assignment or rejection of any Agreement. However, the Debtors will not be responsible for any fees, costs and expenses incurred with respect to any Agreement after the entry of an order in the Debtors' Chapter 11 cases authorizing the rejection of such Agreement.

21.     If any or all of the provisions of this Order are hereafter reversed, modified, limited, vacated or stayed, such reversal, stay, modification or vacatur shall not affect the validity, priority or enforceability of any Trustee Expenses incurred prior to the actual receipt of written notice by the Trustees of the effective date of such reversal, stay, modification or vacatur (the "Notice Date").  Notwithstanding any such reversal, stay, modification or vacatur, the payment of any Trustee Expenses incurred prior to the Notice Date and reimbursed prior to or after the Notice Date by the Debtors shall be governed in all respects by the original provisions of this Order, and the Trustees shall be entitled to all of the rights, remedies, privileges and benefits granted in this Order with respect to payment of Trustee Expenses.

22.     Notwithstanding the Debtors' obligations set forth in paragraphs 18 and 19, nothing in this Order shall be deemed to limit, extinguish, or prejudice the Debtors' rights in any way to assume and assign or reject any Agreement in accordance with Bankruptcy Code section 365.

Other Relief

23.     Any disputes regarding the extent, application and/or effect of the automatic stay under this Order shall be heard and determined in the Debtors' jointly administered bankruptcy cases pending in the United States Bankruptcy Court for the Southern

ny-1046923

District of New York, Case No. 12-12020 in accordance with the Case Management Order

entered in the Debtors' cases [Docket No. 141] and such other and further orders as may be

entered by the Court.

24.     The Debtors are authorized and empowered to take all actions and execute

such documents as may be necessary or appropriate to carry out the relief granted herein.

25.     Nothing herein shall be deemed to limit the rights of the Debtors to

operate their business in the ordinary course, and no subsequent order shall be required to

confirm such rights.

26.     Notwithstanding the relief granted herein and any actions taken hereunder,

nothing contained herein shall constitute, nor is it intended to constitute, the assumption of any

contract or agreement under Bankruptcy Code section 365 or the waiver by the Debtors or their

non-Debtor affiliates of any of their rights pursuant to any agreement by operation of law or

otherwise.

27.     Notwithstanding anything to the contrary in this Order, any action to be

taken pursuant to the relief authorized in this Order is subject to the terms of any cash collateral

order or debtor in possession financing order entered in these chapter 11 proceedings.  All

amounts authorized to be paid pursuant to this Order are subject to the limitations and

restrictions imposed by the Approved DIP Budget (as defined in the DIP Credit Agreement).  To

the extent that there is any inconsistency between the terms of this Order and the terms of any

order relating to postpetition financing or cash collateral, the terms of the orders relating to

postpetition financing or cash collateral shall govern.

28.     Notwithstanding anything herein to the contrary, this Order shall not

modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board

of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among

AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal

Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment

entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,

(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

      29.      Nothing in this Order shall discharge, release, or otherwise preclude any

setoff or recoupment right of the United States of America, its agencies, departments, or agents.

      30.      The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

      31.      Notwithstanding the possible applicability of Bankruptcy Rules

2002(a)(3), 6004(h), 7062 or 9014, the terms and conditions of this Order shall be immediately

effective and enforceable upon its entry.

      32.      This Court shall retain jurisdiction with respect to all matters relating to

the interpretation or implementation of this Order.


Dated:      July 13, 2012
              New York, New York


                                      **/s/Martin Glenn**
                                      MARTIN GLENN
                           United States Bankruptcy Judge



*General Inquiry*

New Search

**Filing submitted on 22-oct-12 18:05:16. Your confirmation number is
37344284.**

**Case Number: 2009 CA 015793 NC**
**Party Type: Plaintiff      Full Name: GMAC MORTGAGE LLC**
**Party Type: Defendant       Full Name: CERRON, JORGE A**

**Docket: SUGGESTION OF BANKRUPTCY**

Another Filing          Logout

**<u>Exhibit 1-G</u>**

**Trial Court's December 17, 2013 Order**

**IN THE COUNTY/CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA**

6MAC Mortgage, LLC

v.

CASE NO.: 2009-CA-15793-NC

Jose A. cerrow                    /

## **ORDER**

**THIS CAUSE** having come to be heard on

December 17, 2013 on Plaintiff's Motion to substitute party
plaintiff, Defendants Motions to dismiss & Defendants Motion for summary judgment
and the court having heard argument of counsel and/or the parties and being otherwise advised in
the premises, it is hereupon

**ORDERED AND ADJUDGED** that said Motion be and the same is hereby

Plaintiff's Motion to substitute OCHW Loan servicing, LLC as party
plaintiff is GRANTED

Defendant's motion to dismiss for failure to substitute party plaintiff & failure of
filing NON-resident cost bond is DENIED

Defendant's motion for summary judgment is DENIED

**DONE AND ORDERED** in Sarasota, Sarasota County, Florida on this 17th day of
December , 20 13 .

_____
COUNTY/CIRCUIT JUDGE

Copies To:

✓ Plaintiff
✓ Defendant
_____ Other: _____

71.doc