UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

### DECLARATION OF PAMELA E. WEST IN SUPPORT OF MORRISON COHEN'S FINAL FEE APPLICATION AND IN RESPONSE TO LIMITED OBJECTION OF RESCAP LIQUIDATING TRUST

I, Pamela E. West, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1. I was a member of the Board of Directors (the "Board") of Residential Capital, LLC ("ResCap"), the parent debtor in the above-captioned Chapter 11 cases commenced on May 14, 2012 (the "Petition Date"). I became a director and served on the ResCap Board and its committees in various capacities from May 2009 through the effective date of the plan of reorganization in December 2013.

2. I received a BA in Political Science/History from Hiram College in 1967. Beginning in 1975 and continuing through January 2005, I worked in the financial services industry and held senior executive positions at major financial institutions, including Bank of America and its predecessor banks, in which I oversaw teams of personnel charged with risk management, asset/liability planning, and cash management. Since then, I have served as a director for financial service companies.

3. Based on my service on the ResCap Board and in connection with my responsibilities as member of the Board's compensation committee and Chair of the audit

#5156982 v1 \020530 \0002

1

committee, and member of the Consent Order Compliance Committee – which confirmed compliance with the incredibly complicated mortgage settlement with the Department of Justice and the states attorneys general – I am familiar with the businesses of ResCap and the other above-captioned debtors (collectively, the "Debtors"). Further, given my tenure on the Board, and involvement in these cases, I am familiar with the work performed both by the Board, the independent directors sitting on the Board (the "Independent Directors") and their counsel, Morrison Cohen LLP ("MoCo").

4. I submit this declaration to support the relief requested in the *Final Application Of Morrison Cohen LLP For Allowance Of Compensation For Professional Services Rendered And Expenses Incurred During The Period From May 14, 2012 Through December 16, 2013* filed March 3, 2014 [Docket No. 6555] and in response to the allegations in the Limited Objection of the ResCap Liquidating Trust to the Final Application of Morrison Cohen LLP for Allowance and Compensation for Professional *Services Rendered And Expenses Incurred During The Period From May 14, 2012 Through December 16, 2013*, filed June 10, 2014 [Docket No. 7084].

5. Unless otherwise indicated, all facts set forth in this declaration are based upon (i) my personal knowledge of the Debtors' operations, (ii) my personal involvement in the Debtors' chapter 11 cases, (iii) information learned from my review of relevant documents, and (iv) information that I received from the Debtors' management or advisors. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

6. I became an Independent Director of ResCap and a member of the ResCap Board in or around May 2009. At the time of my appointment, and at all relevant times thereafter, MoCo represented the Independent Directors. Over the following five years, I worked

extensively and closely with MoCo and found them to be competent, diligent, and an asset to the Board, the Independent Directors and the case as a whole.

7.  At the time of my appointment as an Independent Director, mortgage businesses like ResCap faced enormous regulatory pressures and litigation exposures, had limited access to financing, and had few options for restructuring. Nearly every significant mortgage company closed its doors or was acquired for pennies on the dollar between 2008 and 2011.

8.  Navigating the minefield of the mortgage crisis proved a Herculean task, and required an enormous effort from the entire ResCap board, especially the Independent Directors. The ResCap board explored every strategic alternative to preserve ResCap's business while other mortgage businesses failed. The ResCap board was vigilant, attentive, informed and active. The Independent Directors reviewed voluminous materials and met hundreds of times between 2008 and the Petition Date, formally and informally, in board meetings, in committee meetings and with their counsel and advisors. In addition to reviewing and approving transactions and settlements, the Independent Directors assumed critical roles in the Debtors' governance. An Independent Director was required to sit as the chair of the Debtors' audit committee. Independent Directors sat on the Debtors' compensation committee. I served as both chair of the audit committee and sat on the compensation committee and consent order compliance committee.

9.  In May 2012, having explored and pursued various strategic alternatives, the ResCap board elected to file for bankruptcy protection. On the Petition Date, the Board consisted of seven members. The four Independent Directors constituted the majority of the Board. Given the constitution of the Board, at least one Independent Director would be required for each and every vote on the direction of the Company and the cases.

#5156982 v1 \020530 \0002

10. The input required from the Independent Directors during the course was enormous. The Independent Directors were called upon to review and understand nearly every issue arising during the administration of this estate. For example, the Independent Directors were called upon to (i) oversee the filing of the cases and the successful prosecution of the Debtors' first day motions, (ii) act as declarants on a number of motions filed by the Debtors, including motions relating to employee incentive plans and the retention of a chief restructuring officer, (iii) serve as potential witnesses in the contentious litigation over potential settlements with the RMBS trusts, (iv) oversee the sale of the Debtors' portfolio of assets and its servicing business, (v) initiate and run the process for selecting Lewis Kruger as ResCap's chief restructuring officer, (vi) provide documents, interviews and other information to the court-appointed Examiner, (vii) review and approve proposed settlements and plan support agreements to resolve these Chapter 11 cases, (viii) respond to an *STN* motion by one of ResCap's creditors seeking Court approval to bring a breach of fiduciary duty lawsuit against the Independent Directors, among others, and (ix) ultimately agree to contribute D&O insurance covering the Independent Directors in order to facilitate the consensual confirmation of the Debtors' plan of reorganization. This is by no means an exhaustive list of the tasks undertaken by the Independent Directors during these Chapter 11 cases.

11. Suffice it to say, that the Independent Directors remained active participants in the Chapter 11 Cases. The Board met frequently during the course of the cases, sometimes multiple times in a week. The Independent Directors also frequently communicated with each other and with counsel. Throughout this case, the Board – the majority of which were Independent Directors – remained involved, informed, and actively drove the results achieved.

12. Following the commencement of these Chapter 11 cases, the Board and the Independent Directors remained under constant scrutiny from nearly every constituency in the case. Given the level of interaction required by the Board, and the nature of the pre-petition relationship between the Debtors and their parent Ally Financial Inc. ("AFI"), the Independent Directors suffered frequent criticism from stakeholders and even concerns expressed by the Court. As a result, the Independent Directors were especially focused on ensuring that their consideration of critical issues arising in these Cases was guided by counsel who was truly independent and who would provide the Independent Directors with their own analysis and recommendations separate and apart from ResCap's counsel.

13. To that end, the Independent Directors relied upon their long-standing counsel, MoCo. The Independent Directors affirmatively and proactively directed MoCo's activities. Where multiple MoCo attorneys were present at meetings, on calls, or in Court, it was at the direction of the their clients, the Independent Directors. The Independent Directors believed, and continue to believe, that MoCo's presence and participation was critical to the work of the Independent Directors.

14. Invariably calls or meetings covered multiple topics and were usually dealing with problems, emergencies, or matters in real time. Given the speed in which these cases moved, counsel to the Independent Directors were required to be present at all times. Moreover, it was necessary to have attorneys with skill in several disciplines such as bankruptcy, litigation, corporate governance, tax, and insurance, in order to ensure that the majority of the Board was adequately informed and advised by their chosen counsel.

15. In addition, inasmuch as the case was focused on the years of transactions that predated the filing as well as the prepetition settlements with the RMBS litigants, AFI, and

#5156982 v1 \020530 \0002

various bondholders, the presence of those attorneys from MoCo who were actually involved in those prepetition transactions was essential. Their appearance in this case –even for only a few hours – was at the express direction of the Independent Directors and necessary for the Independent Directors to perform their duties.

16. The involvement of MoCo attorneys contributed significantly to the results achieved in these Chapter 11 cases. As part of the plan of reorganization, the Independent Directors were asked to waive their right to indemnification and to forgo their right to coverage under their Directors and Officers Insurance. This contribution increased AFI's contribution to the estate by approximately $150 million. The Independent Directors would not have been able to quickly make the decision to waive such important rights had their counsel acted as a mere bystander passing along second-hand information. It was crucial to the Independent Directors, and thus to the results achieved in this case, that counsel for the Independent Director's be directly involved and up-to-date in this fast-moving case.

17. The Independent Directors understood and accepted MoCo's staffing and fee structure that dispenses with younger less valuable associates for senior attorneys who bill at rates well below the rates of associates at other firms but provide seasoned experienced counsel, which is what the directors believed the engagement required.

18. In sum, the suggestion that the Independent Directors and their sacrifice of time, energy, effort, and the substantial contribution to plan confirmation was not "central" to this case is inaccurate. The Independent Directors and their counsel worked tirelessly for nearly eighteen months to ensure that this case was an unqualified success. This result would not have been achievable without the participation and advice of the Independent Directors' counsel.

#5156982 v1 \020530 \0002

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on June 13, 2014, at Charlotte, North Carolina.

/s/ Pamela E. West
Pamela E. West

#5156982 v1 \020530 \0002