James Gadsden
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 1005
Telephone: (212) 238-8607
Facsimile: (212) 732-3232
e-mail: gadsden@clm.com

*Consultant to the Official Committee of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

| | |
|---|---|
| In re | Hearing Date: June 18, 2014 |
| | Hearing Time: 10:00 a.m. |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Case No. 12-12020 (MG) |
| | Jointly Administered |

------------------------------------x

## REPLY OF CARTER LEDYARD & MILBURN LLP
## TO THE UNITED STATES TRUSTEE'S RESPONSE TO FEE APPLICATIONS FOR FIFTH INTERIM AND FINAL AWARDS OF COMPENSATION AND REIMBURSEMENT OF OUT-OF-POCKET EXPENSES

Carter Ledyard & Milburn LLP ("***CLM***") hereby replies to the objection raised in the *Omnibus Response of the United States Trustee Regarding Fee Applications for Fifth Interim and Final Awards of Compensation and Reimbursement of Out-of-Pocket Expenses* dated June 2, 2014 (the "***Omnibus Response***") (Doc #7031) to the *First and Final Application of Carter Ledyard & Milburn LLP, Consultant to the Official Committee of Unsecured Creditors, for Final Allowance of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred as a Consultant to the Committee* dated March 3, 2014 (Doc #6569).

    1.    The United States Trustee objected to fees of $31,494.25 incurred in conducting conflict checks with respect to CLM's retention as a consultant for the purpose of engaging

7458130.2

James Gadsden, an attorney at CLM, as an expert witness. CLM should be compensated for the conflict checks because it was retained solely as a consultant and expert not as a "professional person" within the meaning of applicable provisions of the Bankruptcy Code (the "*Code*"), sections 327, 328, 330 and 1103.

## PRELIMINARY STATEMENT

2.  On May 14, 2012, Residential Capital, LLC and its affiliates (the "*Debtors*") filed voluntary petitions for relief under chapter 11 of the Code. On May 16, 2012, pursuant to section 1102 of the Code, the United States Trustee for the Southern District of New York (the "*United States Trustee*") appointed the Official Committee of Unsecured Creditors (the "*Committee*") to represent the interests of unsecured creditors in these Chapter 11 Cases. On February 28, 2013, the Committee filed an Adversary Complaint for Declaratory Judgment, Avoidance of Liens, and Disallowance of Claims against UMB Bank, N.A. and Wells Fargo Bank, N.A., captioned Official Committee of Unsecured Creditors v. UMB Bank, N.A. and Wells Fargo Bank, N.A., Ad. No. 13-01277 (MG) which was subsequently consolidated for Residential Capital, LLC v. UMB Bank, N.A., Ad. No. 13-01343 (MG) (the "*Adversary Proceedings*"). Pachulski Stang Ziehl & Jones LLP ("*Pachulski Stang*") represented the Committee in the Adversary Proceedings.

3.  On October 11, 2013, the Committee filed the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Employment and Retention of Carter Ledyard & Milburn LLP as Consultant to the Committee, Nunc Pro Tunc to August 21, 2013* (the "*Application*") (Doc # 5339) seeking authority to retain CLM under the Code sections 328 and 1103 as a consultant so as to utilize Mr. Gadsden as "an expert on trust indentures and related security agreements" and "to provide opinions as to the custom, usage and industry practice concerning the scope of property that is to be included or excluded as collateral

2

7458130.2

under security agreements when said collateral is freed from the conditions of the security agreement." Application ¶ 10, p. 3. The Application and the supporting Declaration of James Gadsden attached as Exhibit A to the Application (the "*Declaration*") specified that neither CLM nor Mr. Gadsden was being retained as counsel for any party of record and CLM was to be employed in "the limited capacity as expert consultant and witness[.]" Application ¶ 16, p. 8; Declaration ¶ 5, p. 3. The firm's engagement letter attached as Exhibit C to the Application provided that CLM would not be "giving attention to, forming professional opinions as to, or advising Pachulski Stang or the Committee with respect to, any matters . . ." involved in the administration of the Debtor's estate. Engagement Letter, p.1. The *Order Approving Retention of Carter Ledyard & Milburn LLP as Consultant to the Official Committee of Unsecured Creditors, Nunc Pro Tunc to August 21, 2013* dated October 29, 2014 (the "*Order*") (Doc #5538) authorized the Committee "to retain and employ CLM as a consultant and Mr. Gadsden as its expert witness . . . ." Order, p. 2.

    4. The United States Trustee bases his objection solely on the transcript of the September 11, 2013 hearing on Interim Fee Applications (the "*Hearing*") where the Court reduced the compensable amount in regard to conflict checks done for "fee/employment applications" by a Wilmer Cutler Pickering Hale and Dorr ("*Wilmer Hale*") which had been retained as special counsel to the Debtors under Code section 327. CLM, having acted solely as a consultant, and Mr. Gadsden, having acted solely as an expert witness, do not fall within the meaning of "professional persons" and were not required to be retained under that provision or to show disinterestedness or lack of adverse interest. Thus, the expense of conducting the conflict checks was incurred due to the demands of the specific client and does not qualify as an "overhead expense," and should therefore be compensable.

3

7458130.2

5. Even if CLM is deemed a "professional person," conflict checks that are beyond that required by professional codes of conduct, and are to establish the disinterest and disclosure required by the Code should be compensable. Because of the extensive nature of the conflict check required of CLM, at a minimum CLM should be compensated for the amount of the fees that exceed the cost of what would otherwise be required for its engagement.

## ARGUMENT

### Point I

**The Fees Incurred in the Conflict Check Should Be Compensated Because CLM Acted Only as a Consultant and Mr. Gadsden Only as an Expert Witness for the Committee**

**A.  CLM Acted Solely as a Consultant and Mr. Gadsden as an Expert Witness, Which Does Not Fall Within the Meaning of a "Professional Person" under Sections 327(a), 328 and 330.**

6. The requirements for retention under section 327(a) of the Code, disinterestedness and lack of adverse interest, and in section 1103(b) for lack of adverse interest, apply to "professional persons" and not to consultants or expert witnesses. See 11 U.S.C. 327(a). The scope of "other professional persons"[1] or attorneys or accountants to represent a committee within the meaning of sections 327(a) and 1103 of the Code has been confined to "persons in those occupations which play a central role in the administration of the debtor proceeding." Matter of Seatrain Lines, Inc., 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981); In re Palm Coast, Matanza Shores Ltd. P'ship, 101 F.3d 253, 257 (2d Cir. 1996) (noting that the Seatrain Lines definition of "professional persons" has been the "benchmark for the purposes of § 327(a)"). "Professional persons" are those who assist or represent a debtor in performing its duties, aid in "negotiating a plan, adjusting the debtor/creditor relationship, or disposing of or acquiring assets[.]" In re Johns-Manville Corp., 60 B.R. 612, 621 (Bankr. S.D.N.Y. 1986) (holding that a

---

[1] The term professional person is used in sections 327, 328 and 330 and should be construed to have the same meaning in each.

4

7458130.2

lobbyist is not a professional person). Directors who were attorneys with experience in corporate finance made decisions affecting the rehabilitation of a debtor's estate and, as such, were "intimately involved," were professional persons within the meaning of the statute. Matter of Schatz Fed. Bearings Co., Inc., 17 B.R. 780, 783 (Bankr. S.D.N.Y. 1982). Absent such influence, an individual's relationship to the administration of the debtor's estate would be too tangential to bring him within the meaning "professional persons" under section 327(a).

7.  Further, not all persons who might be considered professionals because of their education, abilities or accomplishments or who are qualified as a licensed professional, are "professional persons" for the purposes of the Code. In re Johns-Manville, 60 B.R. at 620. An accountant may not be a "professional person," even though "accountant" is listed under section 327(a), because a "person's status as a 'professional' is not determinative." In re That's Entm't Mktg. Grp., Inc., 168 B.R. 226, 230 (N.D. Cal. 1994).

**B.    There was No Requirement that CLM be Retained as a Professional Person.**

8.  Expert witnesses and consultants have no control over how or in what capacity their opinions or analyses will be used in a bankruptcy proceeding. Accordingly, "[m]ost courts have come to the conclusion that there is no requirement of prior court authorization for retention of an expert witness because an expert is not a 'professional person' within the meaning of" section 327. In re Napoleon, 233 B.R. 910, 913 (Bankr. D.N.J. 1999) (concluding that experts, one of whom was an attorney, employed to assist special counsel to an estate in litigation are not professionals required to be employed pursuant to section 327). In Seatrain Lines, the court determined that maritime engineers retained by the debtor as "consultants" were not "professional persons" despite being in an occupation ordinarily considered professional, because the engineers' duties did not play an important and integral role in the debtor's reorganization. 13 B.R. at 981; In re Babcock Dairy Co. of Ohio, Inc., 70 B.R. 691, 692 (Bankr.

5

N.D. Ohio 1987) (holding that an expert witness who testified on behalf of a Chapter 7 debtor in an adversary proceeding was not a "professional person"); In re Artra Grp., Inc., 308 B.R. 858, 860-61 (Bankr. N.D. Ill. 2003) (insurance expert witness need not be retained or be disinterested). Thus, because expert witnesses and consultants are not "professional persons," they are not required to file retention applications, to be disinterested, or to show lack of adverse interest for employment under the Code.

9.   Here, CLM clearly did not play a central role in administration of the debtor's estate. CLM was only retained as a consultant and Mr. Gadsden only as an expert witness to assist on trust indentures and related security agreements in the Adversary Proceedings. Although CLM is a law firm, its status or title does not change the determination that CLM was not a "professional person" and was not retained to represent the Committee as its attorney. Therefore, CLM was not required to demonstrate that it did not have an adverse interest, or that it was disinterested, to qualify for employment.

C.   **The Basis for the United States Trustee's Objection to the Conflict Checks Fee Can be Distinguished.**

10.  The United States Trustee objects to CLM's conflict check fees stating, "[t]his Court has previously disallowed fees incurred in checking conflicts in order to be retained in this case. See Transcript of Hearing held on 9-11-2013, at 69-72." Omnibus Response at 22 (Doc # 7031). However, the situation addressed by the Court was quite different. Wilmer Hale was a firm retained as Special Counsel for Certain Regulatory Matters to the Committee. *Order Approving Retention of Wilmer Hale* dated January 1, 2013 (Docket #2716). The role of special counsel is simply not the same as that of an expert witness. In fact, the Code provides specifically for the appointment of special counsel under section 327(e), permitting the trustee to employ "for a specified special purpose . . . an attorney[.]" 11 U.S.C. § 327(e). Special counsel

retained, other than to be in charge of the debtor's case, must demonstrate that they do "not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." Id. See also In re AroChem Corp., 176 F.3d 610, 622 (2d Cir. 1999) (interpreting adverse interest requirement of section 327(e)). An expert witness in litigation conducted by a committee is quite different from a firm acting as special counsel in representing the trustee or the committee, and the requirements for each employment under the Code are clearly distinct.

11. Additionally, the United States Trustee relies on the comments of the Court made at the Hearing to suggest that conflict checks are overhead expenses because they are a prerequisite to employment. The Court posited, "[w]hy should you be reimbursed by the estate for doing a conflicts check to determine whether you're going to be hired?" Transcript of Hearing held on 9-11-2013, at 70. Conflict checks may be a prerequisite to employment under section 327 of the Code, but for the reasons outlined above, that requirement is not applicable to CLM's retention as a consultant or to Mr. Gadsden's retention as an expert witness.

12. Overhead expenses are those costs that are consistent regardless of the specific client by whom a person is employed. The Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York (the "***General Order M-447***") address "nonreimbursable overhead" and state "[o]verhead consists of all continuous administrative or general costs incident to the operation of the applicant's office and not particularly attributable to an individual client or case. Overhead includes . . . word processing, proofreading, secretarial and other clerical services . . . ." General Order M-447 at A(5)(vii); United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Under 11 U.S.C. § 330, at (b)(5)(vii) (same).

7

7458130.2

13. CLM, and through CLM Mr. Gadsden, were not employed as "professional persons" or as an "attorney for the committee," and thus were not required by section 327 and section 1103(b) of the Code to demonstrate disinterestedness or lack of adverse interest to be employed. Further, in previous bankruptcy litigation cases where Mr. Gadsden has served as an expert witness he was not required to complete a conflict check for such a showing. Thus, the extensive conflict checks required by the Committee of over 1,000 parties and their affiliates were specific to this case and cannot be considered an overhead expense incurred as a prerequisite to employment. Therefore, CLM should be compensated for the costs of the conflict check.

## POINT II

**Even if CLM is Viewed as a "Professional Person" Within the Meaning of the Code, the Fees for the Conflict Checks Specific to Bankruptcy Retentions are Compensable**

**A.    Conflict Checks are Compensable.**

14. The United States Trustee refers to the Court's comments at the Hearing as support for the argument that conflict checks are not compensable. However, even one of the cases that the Unites States Trustee relies on to illustrate the standard of reasonableness required for compensation under section 330 of the Code holds "that payment may be made for a reasonable amount of time and expense incurred by an approved professional for performing a conflicts check." In re Bennett Funding, 213 B.R. 234, 249-50 (Bankr. N.D.N.Y. 1997).

15. In In re Bennett, attorneys were retained *nunc pro tunc* by a trustee and the United States Trustee appointed in the case objected to "any compensation for pre-retention fees or expenses." Id. at 240. The attorneys argued that the time spent relating to their retention was required because the check for conflicts was of substantial size and was also necessary in response to the objection to the attorneys' retention. Id. at 241. Further, the attorneys argued

8

7458130.2

that a denial of compensation "would effectively penalize the firm." Id. The court reasoned that "the ability to perform and file an adequate and proper conflicts check in a shorter period of time was likely beyond the reasonable control" of the attorneys, and therefore held that the conflict checks "amount is deemed reasonable." Id. at 244, 250. Services for conflict checks were also found compensable in In re Ameritex Yarn, LLC, 378 B.R. 107, 120 (Bankr. M.D.N.C. 2007).

**B.    In the Alternative, a Conflict Check should be at Least Partially Compensable.**

16.    Accepting that a conflict check is an overhead expense because it must be done in connection with any engagement, courts have made the distinction that when the extent of the conflicts check surpasses that required by professional codes of conduct and rises to "that level of analysis and *disclosure* required by the Bankruptcy Code and Rules, the activity becomes compensable[.]" In re Sterling Chemicals Holdings, Inc., 293 B.R. 701, 704 (Bankr. S.D. Tex. 2003) (emphasis in original); see also In re CDX Gas, LLC, 08-37922-H3-11, 2009 WL 1651447, at *2 (Bankr. S.D. Tex. June 9, 2009) (distinguishing the expense incurred in a conflict check as a matter of employment and a conflict check adhering to the Bankruptcy Code). Thus, the level of disinterest and disclosure necessitated by the Code which exceeds the normal requirement for employment is compensable.

17.    Here, the size and extensive nature of the conflict checks demanded by the Committee of 1,000 parties and their affiliates far exceed that which would be required of an expert engagement. Therefore, CLM, at a minimum, should be compensated for the costs incurred that are above and beyond the costs ordinarily associated with a basic conflict check that it would otherwise perform.

7458130.2

## CONCLUSION

For the reasons set forth above, the fees incurred in conducting the conflicts check should be allowed.

Dated: New York, New York
June 16, 2014

CARTER LEDYARD & MILBURN LLP

By: _____
James Gadsden
2 Wall Street
New York, New York 10005
(212) 238-8607

*Consultant to the Official Committee of Unsecured Creditors*

7458130.2