Response Deadline:  June 23, 2014 at 4:00 p.m. (Prevailing Eastern Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- )
In re:                                                         )   Case No. 12-12020 (MG)
                                                               )
RESIDENTIAL CAPITAL, LLC, et al.,                              )   Chapter 11
                                                               )
                    Debtors.                                   )   Jointly Administered
                                                               )
-------------------------------------------------------------- )

**DECLARATION OF DEANNA HORST IN FURTHER SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO ANTHONY L. DAVIDE'S CLAIM NO. 482 AS A SECURED CLAIM**

I, Deanna Horst, hereby declare as follows:

1. This declaration (the "Declaration") is filed in connection with the ResCap Borrower Claims Trust's (the "Borrower Trust") review of the proof of claim filed by Anthony L. Davide, designated as Claim No. 482 (the "Claim") in the claims register, to further validate the Debtors' (defined below) previous assertion that the Claim is a general unsecured non-priority claim and not a secured claim.  For the reasons discussed herein, the Borrower Trust, as successor in interest to the above-captioned debtors (the "Debtors") with respect to borrower claim matters, maintains the position set forth in the *Debtors' Seventeenth Omnibus Objection to Claims (Misclassified Borrower Claims)* [Docket No. 4151] (the "Seventeenth Omnibus Claims Objection") that the Claim is unsecured in nature, and no evidence points to the contrary.

    A.    **Qualifications**

2. I am the Chief Claims Officer for The ResCap Liquidating Trust (the "Liquidating Trust"),[1] and previously served as Chief Claims Officer for Residential Capital,

---

[1]  The ResCap Liquidating Trust and the Borrower Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among of things, provides the Borrower Trust with access to the books

ny-1146171

LLC and its affiliates ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors").[2] I have been employed by affiliates of ResCap since August of 2001. I began my association with ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the Debtors' responsible lending on-site due diligence program. In 2002, I became the Director of Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance—a position I held until 2006, at which time I became the Vice President of the Credit Risk Group, managing Correspondent and Broker approval and monitoring. In 2011, I became the Vice President, Business Risk and Controls, and supported GMAC Mortgage, LLC ("GMACM") and Ally Bank in this role. In June 2012, I became Senior Director of Claims Management for ResCap and in October of 2013, I became the Chief Claims Officer of ResCap. In my current position, I am responsible for Claims Management and Reconciliation and Client Recovery. I am authorized to submit this Declaration in support of the pending objection to the Claim as a secured claim.

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust and/or the Borrower Trust's employees, professionals and consultants, and/or Kurtzman Carson Consultants LLC ("KCC"), the Debtors' noticing and

---

and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

[2] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 6], dated May 14, 2012.

claims agent. If I were called upon to testify, I could and would testify competently to the facts set forth in the Declaration on that basis.

4. In my capacity as Chief Claims Officer, I am intimately familiar with the claims reconciliation process in these Chapter 11 Cases. Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' books and records that were prepared and kept in the course of their regularly conducted business activities (the "Books and Records"), the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents.

B. **Background**

(i) *Procedural History of the Claim*

5. On December 13, 2004, Mr. Davide executed mortgage loan documents for a mortgage loan in the amount of $400,000 relating to real property located at 27 Lakeside Lane, Unit 27A, Key Largo, Florida 33037. Prior to the Debtors' May 14, 2012 petition date, GMACM serviced Mr. Davide's mortgage loan. Mr. Davide failed to make a payment to GMACM for the April 1, 2010 installment due on his mortgage, and continued to default on his mortgage loan by failing to make subsequent monthly payments due under the loan documents. As a result, on or about July 26, 2010, GMACM commenced foreclosure proceedings against Mr. Davide in the Sixteenth Judicial Circuit Court in Monroe County, Florida (the "Monroe County Court"), Case No. 10-CA-583 (the "Foreclosure Action").

6. In an effort to assist Mr. Davide to become current on his mortgage loan payments, Mr. Davide and GMACM entered into an agreement, dated July 11, 2011 (and executed by Mr. Davide on July 21, 2011) (the "Foreclosure Repayment Agreement"), annexed

3

hereto as <u>Exhibit 1</u>. The Foreclosure Repayment Agreement provided for, among other things, a settlement between the parties whereby Mr. Davide would repay $68,575.05 (plus additional amounts due under the terms of the loan agreement as of the date of the Foreclosure Repayment Agreement) currently outstanding on account of his mortgage note pursuant to a payment schedule in the form of certified funds or cashier's check.[3]  <u>See id.</u> ¶¶ 3-7. GMACM, in turn, agreed to suspend, but not terminate, the foreclosure proceedings it had instituted against Mr. Davide's property that was securing the mortgage, provided the agreement was executed and Mr. Davide paid the initial installment in the amount of $15,150.24 no later than August 1, 2011. <u>See id.</u> ¶ 5. Pursuant to the Foreclosure Repayment Agreement, GMACM also retained the right to continue foreclosure activities if Mr. Davide did not make timely payments called for under the agreement. <u>See id.</u> ¶ 8. In addition, the parties agreed that payments tendered under the Foreclosure Repayment Agreement would be applied to Mr. Davide's account in the manner specified in his mortgage. <u>See id.</u> ¶ 8. No provision of the Foreclosure Repayment Agreement provides that any monies received by GMACM on account of the agreed-upon scheduled payments from Mr. Davide would be segregated (or held for Mr. Davide's benefit) in any way. <u>See generally</u>, <u>id.</u>

7.     On October 28, 2011, based on Mr. Davide's failure to make payments to his mortgage account in accordance with the Foreclosure Repayment Agreement, GMACM sent Mr. Davide a notice of default and eventually resumed foreclosure activities against Mr. Davide with the Monroe County Court.

---

[3]   The payment schedule involved six monthly payments of $15,150.24 to be made by Mr. Davide to GMACM. The sum of these payments, $90,901.44, equals the $68,575.05 owed by Mr. Davide to cure the default as of the Foreclosure Repayment Agreement date, plus six of Mr. Davide's regular monthly mortgage payments of $3,721.07.

If any payment was tendered in a form not permitted by the Foreclosure Repayment Agreement, then GMACM had the right to return the payment and invoke remedies available under the loan documents and the agreement. <u>See</u> Foreclosure Repayment Agreement ¶ 7.

8. On or about September 10, 2012, Mr. Davide timely filed the Claim against GMACM in the amount of $15,751 as a secured claim. Mr. Davide asserted that the funds he paid to GMACM towards his mortgage account under the Foreclosure Repayment Agreement were to remain segregated such that in the event of a disagreement between the parties, the monies would be returned to Mr. Davide.

9. On July 3, 2013, the Debtors filed the Seventeenth Omnibus Claims Objection, objecting to, among others, the Claim because it was improperly classified as a secured claim instead of a general unsecured non-priority claim. The Debtors sought to preserve the intended order of priority of claims as set forth by the Bankruptcy Code, and to prevent any improper recovery on the part of Mr. Davide.

10. On August 13, 2013, Mr. Davide filed an objection to the Seventeenth Omnibus Claims Objection [Docket No. 4651].

11. On August 27, 2013, the Debtors filed an omnibus reply in support of the Seventeenth Omnibus Claims Objection [Docket No. 4843].

12. On September 13, 2013, after considering the Seventeenth Omnibus Claim Objection, responses thereto, and the reply at the September 11, 2013 omnibus hearing, the Court entered a supplemental order sustaining the Seventeenth Omnibus Claim Objection as to certain claims [Docket No. 5043] (the "Reclassification Order"). Consistent with the terms of the Reclassification Order, the Claim was reclassified from a secured claim to a general unsecured non-priority claim, and preserved on the claims register.

13. On September 24, 2013, Mr. Davide filed a motion for reconsideration of the Reclassification Order [Docket No. 5236] and requested a rehearing. On October 31, 2013, the Debtors filed an objection to this motion [Docket No. 5564].

14. On November 15, 2013, the Court held a rehearing (the "Rehearing") on the Seventeenth Omnibus Claims Objection as it related to the Claim, at which Mr. Davide made a telephonic appearance. See Hearing Transcript, Nov. 15, 2013, In re Residential Capital, LLC, et al. No. 12-12020 (MG) at 62:4-8 ("Nov. 15 Transcript"), relevant portion annexed hereto as Exhibit 2. Mr. Davide stated that during a Foreclosure Action hearing, the parties "agreed and the judge ordered that the monies [that had been deposited with GMACM] were to be segregated by GMAC; and in the event that the dispute which was over a loan modification terms, were not resolved, that those monies would be returned to me." See id. at 62:22-25. Mr. Davide argued that since the loan modification was never completed and monies never returned to him – counter to the instructions of the judge and GMACM's representations to the Monroe County Court – those monies that were to be segregated and protected provide the basis for his seeking a secured claim. See id. at 63:2-10.

15. At the Rehearing, the Court directed Mr. Davide to speak with Brian Powers of SilvermanAcampora within a week from the Rehearing, and "at a minimum," Mr. Davide needed to provide "the case name, case number and court in which [the Florida State Court proceeding] is or was pending, and the date or the approximate date – the precise date, if possible, but the approximate date when [Mr. Davide] indicate[s] that the Court directed that the funds be segregated." See Nov. 15 Transcript, at 66:23-67:3. This directive was provided without the Debtors waiving their objection to Mr. Davide's reconsideration motion.

*(ii)    Post-Rehearing Activity in Connection with the Claim*

16. Subsequent to the Rehearing, Mr. Davide provided Mr. Powers with the relevant court name, case number, name of the judge, and date on which the hearing took place before the Monroe County Court at which the judge purportedly directed GMACM to segregate,

6

ny-1146171

or hold for Mr. Davide's benefit, monies paid by Mr. Davide on account of the Foreclosure Repayment Agreement. Mr. Powers proceeded to work with employees of the Liquidating Trust and/or Borrower Trust to locate any documentation to support Mr. Davide's contention.

17. On March 18, 2014, Mr. Davide filed a request to learn of the status on the matter relating to the reclassification of his Claim [Docket No. 6667] (the "Status Request"). Subsequent to the Status Request, the Borrower Trust continued to review the related payment history of Mr. Davide and events in the Foreclosure Action during the relevant time period provided by Mr. Davide. Specifically:

a. *Payment Review*: Mr. Davide made the first payment of $15,150.24 on July 27, 2011 pursuant to the Foreclosure Repayment Agreement. GMACM properly applied this installment to Mr. Davide's mortgage account. Subsequent to July 27, 2011, Mr. Davide made two additional payments to GMACM each in the amount of $15,150.24, but these payments were ultimately returned to Mr. Davide. One payment was received by GMACM and returned to Mr. Davide on September 9, 2011 because it was not in the form of certified funds as required by the Foreclosure Repayment Agreement. The other payment was received by GMACM and returned to Mr. Davide on October 17, 2011 because it was not sufficient to bring the account current as required by the Foreclosure Repayment Agreement. On November 4, 2011, GMACM offered Mr. Davide another repayment plan on substantially similar terms as the Foreclosure Repayment Agreement, but on November 8, 2011, Mr. Davide declined the offer.

7

ny-1146171

It appears that the payment made by Mr. Davide on July 27, 2011 – being the only monies received and applied in connection with the Foreclosure Repayment Agreement – is the subject of the Claim.[4]

    b.  *Foreclosure Action Review*:  Using the case reference information provided by Mr. Davide,[5] the Borrower Trust looked at the relevant dockets in the Monroe County Court to try to locate a transcript or court order that would evidence the Monroe County Court's purported directive that GMACM segregate Mr. Davide's funds.  The Borrower Trust did not find any transcript or order to that effect.

    *(iii)* *Status of Claim*

18. Subsequent to conducting further diligence in response to the Status Request, the Borrower Trust entered into settlement negotiations with Mr. Davide in an effort to resolve the Claim without further litigation.  The Borrower Trust informed Mr. Davide that it was unable to locate a court order or transcript in support of Mr. Davide's assertion that the Monroe County Court directed GMACM to segregate funds, and requested that Mr. Davide provide the same if he could.  Mr. Davide responded that he had complied fully with this Court's directive given at the Rehearing.

19. At present, the parties disagree as to the proper treatment of the Claim.

**C.** **The Borrower Trust Maintains Its Objection to the Claim as a Secured Claim**

20. Upon information and belief, the Borrower Trust, in good faith, reviewed the case information provided by Mr. Davide in order to determine whether it should withdraw

---

[4] While this sole payment of $15,150.24 appears to be the basis for the Claim, Mr. Davide does not indicate why the Claim is asserted in the amount of $15,751.

[5] The case name is *GMAC Mortgage, LLC vs. Anthony L. Davide*, Case No. 442010 CA 00583A001PK.  The matter is before the Sixteenth Judicial Circuit Court for Monroe County, Florida.  The hearing date at which Mr. Davide contends the Monroe County Court ordered GMACM to segregate funds paid in accordance with the Foreclosure Repayment Agreement purportedly occurred on October 12, 2011.

the Seventeenth Omnibus Claims Objection as to Mr. Davide's Claim. Given that the Borrower Trust (i) was unable to find a court-issued directive to support Mr. Davide's contention that GMACM was to segregate funds received from Mr. Davide under the Payment Agreement, and/or (ii) Mr. Davide has not presented any additional evidence to support the treatment of the Claim as secured, the Borrower Trust asserts that the Seventeenth Omnibus Claims Objection is well-founded and the Claim is a general unsecured non-priority claim. Therefore, the Court's order to that effect should stand.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 16, 2014

                                                          /s/ Deanna Horst
                                                          Deanna Horst
                                                          Chief Claims Officer for The ResCap Liquidating Trust