Hearing Date: May 15, 2014 at 10:00 a.m. (Prevailing Eastern Time)

| | |
|---|---|
| MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, New York 10019<br>Telephone:  (212) 468-8000<br>Facsimile:  (212) 468-7900<br>Gary S. Lee<br>Norman S. Rosenbaum<br>Adam A. Lewis<br><br>*Counsel for the ResCap Borrower Claims Trust* | BRADLEY ARANT BOULT CUMMINGS, LLP<br>One Federal Place<br>1819 Fifth Avenue North<br>Birmingham, AL 35203<br>Telephone:   205.521.8521<br>Facsimile:   205.488.6521<br>John W. Smith T<br><br>*Special Litigation Counsel to the ResCap Borrower Claims Trust* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

**RESCAP BORROWER CLAIMS TRUST'S SUPPLEMENTAL BRIEF IN
SUPPORT OF THE TRUST'S OBJECTION TO PROOF
OF CLAIM NO. 386 FILED BY BARRY AND CHERYL MACK**

sf-3423420

## TABLE OF CONTENTS

Page

BRIEF BACKGROUND ........................................................................................................... 1

THE RESPA 2605(E) CLAIM IS AN UNTIMELY AMENDMENT AND SHOULD
    NOT BE PERMITTED EVEN IF TIMELY ................................................................. 4

    A.    Applicable Law ............................................................................................... 4

    B.    The RESPA 2605(e) Claim Is an Untimely Amendment ................................ 6

    C.    Even if Timely, the Purported Amendment Should Not Be Permitted ........... 7

    D.    Damages .......................................................................................................... 9

CONCLUSION ...................................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Biggs v. Village of Dupo*,
   892 F.2d 1298 (7th Cir. 1990) ...................................................................................... 12

*F.A.A.. v. Cooper*,
   132 S. Ct. 1441 (2012) ................................................................................... 10, 11, 12

*Houston v. U.S. Bank Home Mortg. Wis. Servicing*,
   No. 10-13780, 2011 WL 4905533 (E.D. Mich. Oct. 14, 2011), *aff'd in part and rev'd
   in part on other grounds*, No. 11-2444, 2012 WL 5869918 (6th Cir. Nov. 20, 2012) .... 8, 9, 14

*Hrubec v. Nat'l R.R. Passenger Corp.*,
   829 F. Supp. 1502 (N.D. Ill. 1993), *aff'd*, 49 F. 3d 1269 (7th Cir. 1995) ................................ 12

*In re Asia Global Crossing, Ltd.*,
   324 B.R. 503 (Bankr. S.D.N.Y. 2005) ............................................................................. 5

*In re Barquet Grp. Inc.*,
   477 B.R. 454 (Bankr. S.D.N.Y.), *aff'd sub nom, ACG Credit Co. v. Barquet Grp. Inc.
   (In re Barquet Grp*.), 486 B.R. 68 (S.D.N.Y. 2012) ......................................................... 5

*In re Enron Creditors Recovery Corp.*,
   370 B.R. 90 (Bankr. S.D.N.Y. 2007) ............................................................................... 4

*In re Tomasevic*,
   273 B.R. 682 (Bankr. M.D. Fla. 2002) .............................................................. 8, 10, 14

*Integrated Res., Inc. v. Ameritrust Co. NA* (*In re Integrated Res., Inc.*),
   157 B.R. 66 (S.D.N.Y. 1993) ...................................................................................... 5, 6

*Katz v. Dime Savs. Bank, FSB*,
   992 F. Supp. 250 (W.D.N.Y. 1997) ............................................................................... 10

*Kelly v. Fairon & Assocs.*,
   842 F. Supp. 2d 1157 (D. Minn. 2012) ......................................................................... 14

*McLean v. GMAC Mortg. Corp.*,
   No. 06-22795-CIV, 2008 WL 1956285 (S.D. Fla. May 2, 2008) ................................. 10

*Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.* (*In re Enron Corp.*),
   419 F.3d 115 (2d Cir. 2005) ........................................................................................ 5, 6

*Moon v. GMAC Mortg. Corp.*,
   No. C08-969Z, 2009 WL 3185596 (W.D. Wash. Oct. 2, 2009) ................................... 14

ii

*Ploog v. Homeside Lending, Inc.*,
   209 F. Supp. 2d 863 (N.D. Ill. 2002) ................................................................................. 10

*Rawlings v. Dovenmuehle Mortg., Inc.*,
   64 F. Supp. 2d 1156 (M.D. Ala. 1999) ............................................................................... 11

*Sarsfield v. Citimortgage, Inc.*,
   667 F. Supp. 2d 461, 470 (M.D. Pa. 2009) ......................................................................... 8

*Spencer v. Hutchens*,
   471 F. Supp. 2d 548 (M.D.N.C. 2006) .............................................................................. 14

*United States v. Balistrieri*,
   981 F. 2d 916 (7th Cir. 1992) ............................................................................................ 12

**STATUTES**

12 U.S.C. § 2601 ............................................................................................................................ 10

12 U.S.C. § 2605(f)(1)(A) ............................................................................................................. 10

26 U.S.C. §§ 6103, 7341(a)(2) ...................................................................................................... 12

**OTHER AUTHORITIES**

George S. Mahaffey Jr., *A Product of Compromise: Or Why Non-Pecuniary Damages
   Should Not Be Recoverable Under Section 2605 of the Real Estate Settlement
   Procedures Act*, 28 U. DAYTON L. REV. 1 (Fall 2002) .................................................... 11

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

At the Court's request, the ResCap Borrower Claims Trust (the "Trust") hereby files this supplemental brief in support of the Borrower Claims Trust's Objection to Proof of Claim No. 386 Filed by Barry and Cheryl Mack [Dkt. No. 6763] (the "Objection"). At the conclusion of the May 15, 2015 hearing on the Objection, the Court directed the parties to submit supplemental briefs on two sets of issues. The first is whether the RESPA section 2605(e) claim on behalf of Claimant Barry Mack that first expressly appeared in Creditor Barry Mack's Response to ResCap Borrower Claims Trust's Objection to Proof of Claim No. 386 Filed by Barry and Cheryl Mack [Dkt. No. 6834] (the "Response") filed by claimant Barry Mack (the Claimant") in response to the Objection was a timely amendment to Proof of Claim No. 386 (the "Claim") and, if so, whether it nevertheless should be permitted.[1] The second issue was whether nonpecuniary damages for such alleged injuries as emotional distress, pain and suffering or mental anguish are recoverable for violations of section 2605(e).

This supplemental brief explains that the answer to both parts of the first question is "No." And the answer to the second question, though the subject of a split in authority, also should be "No."

**BRIEF BACKGROUND**

1. The Claim was filed as a general unsecured claim in the amount of $32,850,000 against GMACM arising out of GMACM's mistaken commencement of foreclosure proceedings in late August of 2009 against the Claimant and his late wife, Cheryl Mack (together

---

[1] Capitalized terms not defined in this supplemental brief shall have the meanings ascribed to them in the Objection, the Response or the ResCap Borrower Claims Trust's Reply to Claimant Barry Mack's Reply to the Trust's Objection to Proof of Claim No. 386 Filed By Barry and Cheryl Mack [Dkt. No. 6893] (the "Reply").

1

with Barry Mack, the "Macks"), as subservicer on behalf of the Bank. GMACM had discovered its mistake within days and attempted to correct it by immediately instructing its local counsel to dismiss the Action. However, local counsel failed to do so until December 2009. In the meantime, the Claimants had counter claimed against the Bank alleging various torts and claims under RESPA. After the Florida Court held an evidentiary hearing on the counterclaims, at which the Bank was not present and was unrepresented, the Claimants obtained a substantial money judgment against the Bank, including a $150,000 damage award for mental anguish under RESPA. Unaccountably, local counsel failed to inform the Bank of any of these developments. Only much later did the Bank discover what had happened and seek to have the judgment set aside. Following extensive proceedings, the Florida Court affirmed the judgment in all respects except vacating the portion of the award – including emotional distress damages -- that was based on an alleged RESPA violation, ruling that the Macks could not state a claim against the Bank under RESPA. The Claimant has collected on the judgment, as modified by the Florida Court.

2. The Claim asserts various theories against GMACM based on the events underlying the claims it made against the Bank. Based upon that fact, the Trust objected to the Claim on the grounds of res judicata, collateral estoppel, estoppel by judgment; as to all of the theories of the Claim (including the alleged RESPA claims), as well as failure to state a claim under RESPA and violation of the applicable RESPA statutes of limitations. In the Response, the Claimant alleges that, among other things, he is claiming under RESPA section 2605(e) on the grounds that GMACM as servicer failed to respond to an inquiry letter about the pending

foreclosure.[2] That section has a longer limitations period than the other RESPA sections that create a private right of action. Unlike those other RESPA sections, it also provides for claims specifically against the servicer (GMACM) rather than the lender. But to make his section 2605(e) claim to try to get around the limitations and preclusion issues he faces, the Claimant must make allegations that he not only did not make in the Claim, but that *conflict* with allegations he *did* make in the Claim: in the Claim he alleges that GMACM *responded inaccurately* to the communications from the Macks, but now he alleges that it *did not respond* to a communication in violation of section 2605(e).

        3.        Specifically, here is what the Claim says about communications with GMACM:

> The Macks wrote GMAC Mortgage, LLC and called them to complain of the foreclosure which was brought in the name of Deutsche Bank and were repeatedly told by GMAC that there was no foreclosure and Deutsche Bank had no interest in the loan.

(Claim, Rider at 1.) Nowhere in this passage is there a hint that the Macks were complaining of a *failure* by GMACM to communicate. Yet, such a complaint should have been front and center in the Claim if it was *the* RESPA claim they were intending to make and, moreover, an event that caused them identifiable separate emotional distress. In other words, it is plain that the Macks had no intention of alleging a section 2605(e) claim when they filed the Claim; rather, such a claim came to mind for them only in the face of the Objection. Instead, they preferred to allege a course of misleading conduct by GMACM in response to their communications, a picture they no doubt thought far more likely to lead to emotional distress and even punitive damages than a

---

[2] Presumably, the letter was sent sometime after GMACM commenced the foreclosure in late August of 2009 since it refers to the pending foreclosure proceedings.

3

single alleged failure to respond to a letter. The omission of the allegation of a failure to respond was, therefore, in all likelihood not a mere oversight, but a deliberate strategic choice.

4. Nor, indeed, does the Claim plead emotional distress arising from an alleged failure of GMACM to respond to the Macks' alleged qualified inquiry. Instead, the claim asserts, "*Due the prospect of losing their home through the pending foreclosure*, Mrs. Mack took an overdose of sleeping pills [resulting in her hospitalization and serious physical injury]." (Claim, Rider at 2 (emphasis added).) Thus, the Claim (implicitly) alleges emotional distress stemming from the prospective wrongful foreclosure rather than from anything else, including the newly-alleged failure of GMACM to respond to a qualified inquiry. This phenomenon is further evidence that the Claimant's alleged section 2605(e) claim is a contrived afterthought that does not fit into the structure of the Claim as alleged.

## THE RESPA 2605(e) CLAIM IS AN UNTIMELY AMENDMENT AND SHOULD NOT BE PERMITTED EVEN IF TIMELY

### A. Applicable Law

5. Federal Rule of Bankruptcy Procedure 3003(c)(3) directs a bankruptcy court "to establish a bar date beyond which proofs of claim are disallowed in a chapter 11 case." *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 94 (Bankr. S.D.N.Y. 2007). The bar date "is critically important to the administration of a successful chapter 11 case for its intended to be a mechanism providing the debtor and its creditors with finality." *Id*. (citation and internal quotations omitted). Further, a bar date order, such as the one entered in the Debtors' case in August 2012, is "an integral part of the reorganization process," as it "serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of a successful reorganization. . . ." *Id*. at 94

4

(citing *In re Keene Corp.*, 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995) (internal citations omitted)). Where the bar date has passed, and a creditor seeks to file an amended proof of claim, "the decision to allow the amendment of the claim is committed to the discretion of the bankruptcy judge." *In re Asia Global Crossing, Ltd.*, 324 B.R. 503, 507 (Bankr. S.D.N.Y. 2005) (internal citations omitted).

6.  In the Second Circuit, courts apply a two-step inquiry when considering whether to allow late and amended proofs of claim. *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.* (*In re Enron Corp.*), 419 F.3d 115, 133 (2d Cir. 2005); *In re Barquet Grp. Inc.*, 477 B.R. 454, 464 (Bankr. S.D.N.Y.), *aff'd sub nom*, *ACG Credit Co. v. Barquet Grp. Inc. (In re Barquet Grp.)*, 486 B.R. 68 (S.D.N.Y. 2012). First, the court must determine whether there was an "'assertion of a similar claim or demand evidencing an intention to hold the estate liable.'" *Enron*, 419 F.3d at 133 (quoting *Integrated Res., Inc. v. Ameritrust Co. NA* (*In re Integrated Res., Inc.*), 157 B.R. 66, 70 (S.D.N.Y. 1993)). A claim relates back to a timely filed claim if it: "1) corrects a defect of form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the original claim." *Enron*, 419 F.3d at 133 (quoting *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990)).

7.  If the "relation back" inquiry is satisfied, courts then examine whether it would be equitable to allow the amendment. *Enron*, 419 F.3d at 133; *Integrated Res., Inc. v. Ameritrust Co. NA (In re Integrated Res., Inc.)*, 157 B.R. 66, 70 (S.D.N.Y. 1993). Courts consider the following five equitable factors in determining whether to allow an amendment:

> (1) undue prejudice to the opposing party; (2) bad faith or dilatory behavior on the part of the claimant; (3) whether other creditors would receive a windfall were the amendment not allowed; (4) whether other claimants might

5

> be harmed or prejudiced; and (5) the justification for the inability to file the amended claim at the time the original claim was filed.

*Integrated*, 157 B.R. at 70 (citation omitted); *Enron*, 419 F.3d at 133. However, "the critical consideration is whether the opposing party will be unduly prejudiced by the amendment." *Enron*, 419 F.3d at 133 (citing *Integrated*, 157 B.R. at 70).

### B. The RESPA 2605(e) Claim Is an Untimely Amendment

8. The fundamental problem with the Claimant's RESPA section 2605(e) claim is not merely that it does not meet any of the criteria for a timely amendment, but actually directly conflicts with the Claimant's allegations in the Claim. In the Claim, the Claimant asserts that the Macks communicated repeatedly with GMACM after the foreclosure process began but that GMACM *in response* gave them bad information. In other words, it was not that GMACM did not respond, but that its responses were misbegotten. Now, Claimant faces insurmountable problems with the RESPA claims that he *did* make due to the applicable statutes of limitation and inability to state a claim against the Bank. Claimant has learned from his mistakes. He has figured out that he needs to add a 2605(e) claim that he did not theretofore even contemplate (or perhaps more plausibly, deliberately rejected if he did contemplate it): that GMACM did *not* respond to a qualified inquiry because such a claim has a longer statute of limitations than other RESPA claims.[3] That is akin to asking for leave to amend a complaint alleging that a defendant owing a duty to advise the plaintiff did not give the plaintiff good guidance, to alleging that the defendant did not give the plaintiff any guidance at all. Thus, there is a *direct* conflict between

---

[3] The Trust also pointed out that the Claim did not plead facts showing a violation of the other two RESPA provision giving rise to a private right of action. Thus, as the Trust argued, the Claimant could not recover under those provisions for both statute of limitations and pleading reasons, as well as because they are barred by preclusion.

6

what the Claim actually alleges and what the Claimant now peddles that it somehow implicitly asserts for the first time in the Response. Such a contradictory amendment should not be permitted under any circumstances.

9. Nor does the purported amendment to add a 2605(e) claim satisfy the three specific criteria of *Enron*'s first step : whether it relates back to a timely filed claim. It does not correct a defect in the form of the Claim. More importantly, it does not plead the Claim with more specificity and it does not add a new theory based upon the same underlying facts. It does not plead the Claim with more specificity or add a new theory based upon the same underlying facts because, as just noted, it *conflicts* with the underlying facts as pleaded in the Claim. The Claimant clearly did not add such a claim originally because it would have conflicted with the claims he wanted to and *did* make. This is a classic "do-over" that is outside the scope of the first step of the *Enron* test.

### C.    Even if Timely, the Purported Amendment Should Not Be Permitted

10. Under *Enron*, even if the amendment does relate back, the Court must next determine whether it should permit the amendment. To make this decision, the Court applies the five criteria of the second *Enron* step. That exercise compels the conclusion that the Court should nevertheless reject the purported amendment.

11. *First*, there is prejudice both to the Trust and other creditors because permitting the amendment may ultimately lead to a dividend for the Claimant under the Plan that will detract from what other creditors may receive.[4] Moreover, the Trust will have to incur

---

[4] At present, it is hard to tell how large that dividend might be. The main element of damages that the Claimant appears to have in mind are nonpecuniary: the alleged emotional distress that he and Ms. Mack supposedly suffered. Though such damages, if permissible for a RESPA violation, could be quite large, the Claimant will have
(Cont.'d)

7

expenses to litigate the 2605(e) claim on top of whatever judgment it may suffer to the extent that the Court does not otherwise sustain the Objection. Again, this burdens not only the Trust, but the other creditors. By the same token, it may substantially extend the life of the Trust while the litigation proceeds. *Second*, there is no windfall to other creditors if the Court disallows the purported amendment. The Court will be rejecting the purported amendment for good reasons. *Third*, the Claimant's behavior was dilatory and in bad faith. The Claimant manufactured the 2605(e) claim only when he faced the dismissal of all of his claims, including any other potential RESPA claims. Until he faced that prospect, to the extent that the Claim was about the Macks' inquiries of GMACM, it was about GMACM's alleged inaccurate responses to those inquiries, not about its failure to respond at all. Indeed, the Claimant apparently saw an advantage in alleging a course of inaccurate responses to a single neglected letter in terms of the damages he might receive. *Finally,* so far the Claimant has not offered any justification for or explanation of his late assertion of what should have been an obvious claim. Clearly, the Claimant preferred to allege that GMACM mislead them in response to their inquiries as a predicate for punitive damages (which, by the way, are *not* recoverable under RESPA section 2605(e))[5] in contrast to a single unanswered letter.[6]

---

to quantify what damages are traceable to GMACM's alleged failure to respond to one qualified inquiry rather than what damages might be traceable to GMACM's other alleged misconduct for which the Claimant has already recovered in the Florida Action. Moreover, the Macks initially obtained an emotional distress award of $150,000 on their alleged RESPA claims against the Bank; although the Florida Court eventually set that award aside, it is hard to imagine how the Macks could have suffered damages even approaching that figure, let alone exceeding it, for a single unanswered inquiry during the entire misconceived foreclosure process.

[5] *E.g.*, *Houston v. U.S. Bank Home Mortg. Wis. Servicing*, No. 10-13780, 2011 WL 4905533, at *5 (E.D. Mich. Oct. 14, 2011), *aff'd in part and rev'd in part on other grounds*, No. 11-2444, 2012 WL 5869918 (6th Cir. Nov. 20, 2012); *Sarsfield v. Citimortgage, Inc.*, 667 F. Supp. 2d 461, 470 (M.D. Pa. 2009); *In re Tomasevic*, 273 B.R. 682, 685-86 Bankr. M.D. Fla. 2002).

[6] Though the Court indicated it was skeptical of the theory, the Trust continues to believe that to the extent that preclusion applies to other claims in the Claim, it applies to the 2605(e) claim. It is true that the Bank could not (Cont.'d)

**D.     Damages**

12.     If the Court permits the purported amendment, the question of what kind of damages are available to the Claimant becomes paramount. In particular, it is important to know whether the Claimant can recover nonpecuniary damages, such as damages for emotional distress, for a violation of section 2605(e).

13.     Before the Trust turns to that question, however, it wishes to point out as an initial matter that, as noted above (*supra* ¶ 4), the Claim has not plead emotional distress damages *arising from the alleged violation of section 2605(e)*. Rather, to the extent Claimant has alleged emotional distress damages at all, Claimant has expressly attributed them to the wrongful foreclosure ("the prospect of losing their home through the pending foreclosure"). This is a fatal flaw in the Claim insofar as it purports now to assert a claim for a failure to respond to a qualified inquiry. *See Houston v. U.S. Bank Home Mortg. Wis. Servicing.*, 2011 WL 4905533, at * 6 (E.D. Mich. Oct. 14, 2011) ("While Plaintiff assets that she suffered damages as a result of the "wrongful" foreclosure, she presents no evidence suggesting that U.S. Bank's failure to to respond to her August 19, 2009 QWR [qualified inquiry] caused the foreclosure.").

14.     With this preliminary ground for rejecting the new section 2605(e) claim established, the Trust will now turn to the question whether the Claimant can recover for emotional distress for a violation of that statute. The damage provision of section 2605 is section 2605(f). It provides in relevant part that for violations of section 2605, a plaintiff who is an

---

have itself violated 2605(e) since it concerns only the conduct of servicers. However, that is no reason why the Macks could not have added a 2605(e) claim against the Bank. After all, in the Florida Action they collected from the Bank for GMACM conduct of which the Bank was totally innocent (and ignorant). The Superior Court in the Florida action expressly found that GMACM as servicer was the Bank's agent. This Court appeared to concur in that conclusion at the May 15 oral argument on the Objection. And as the Trust pointed out in the Reply, under both Florida law and the Restatement (Second) of Agency, a principal can be held liable for even the unauthorized conduct of its agent so long as the latter was acting within the scope of its duties (in this case, to be the servicer).

9

individual can recover "any *actual* damages to the borrower as a result of the failure [to comply with section 2605]." 12 U.S.C. § 2605(f)(1)(A) (emphasis added). Thus, Section 2605 does not expressly address the question of nonpecuniary damages such as damages for emotional distress. The question then becomes what does the term "actual damages" encompass as a matter of federal law?

15.     The Supreme Court has written that there is no single federal definition of "actual damages". *F.A.A.. v. Cooper*, 132 S. Ct. 1441, 1445 (2012) ("Because of the term's chameleon-like quality, it must be considered in the particular context in which it appears.") (citation omitted) (holding that mental and emotional distress damages are not available as "actual damages" against the federal government for claims under the Privacy Act of 1974, 5 U.S.C. § 552(a)). Thus, as counseled by the Supreme Court in *Cooper*, courts must look to the context of the statute to answer the question whether section 2605(f)(1)(A) allows for recovery of damages for emotional distress.

16.     The courts are split on whether "actual damages under section 2605(f)(1)(A)'s "actual damages" encompasses nonpecuniary damage such as emotional distress. *Compare, e.g., Katz v. Dime Savs. Bank, FSB*, 992 F. Supp. 250, 254-56 (W.D.N.Y. 1997) (RESPA's purpose to streamline industry rather than remedial, so "actual damages" does not include remedially-oriented emotional distress damages);[7] *In re Tomasevic*, 273 B.R. 682, 687 (Bankr. M.D. Fla. 2002) (no emotional distress damages under RESPA) (citing to *Katz*) *with, e.g., Ploog v. Homeside Lending, Inc.*, 209 F. Supp. 2d 863, 869-70 (N.D. Ill. 2002) (emotional

---

[7] As the court in *McLean v. GMAC Mortg. Corp.*, No. 06-22795-CIV, 2008 WL 1956285, at *11 (S.D. Fla. May 2, 2008) (also holding RESPA allows emotional distress damages) points out, *Katz* actually is mistaken in concluding that RESPA is not also a remedial statute). *See also* 12 U.S.C. § 2601 (including both industry structural and consumer remedial purposes as rationale for RESPA).

distress damages available because RESPA is a remedial statute); *Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp. 2d 1156, 166-67 (M.D. Ala. 1999) (same).

17. The cases finding for emotional distress damages outnumber those rejecting them. But that does not end the discussion by any means. Nor does the fact that the statute is remedial, as most if not all of the cases allowing emotional distress damages seem to believe. As just noted, *supra* n.7, RESPA serves both commercial *and* remedial purposes. That counsels a less exuberant interpretation of its damages provisions. By the same token, one author has argued that RESPA is a compromise statute balancing the interests of the consumer with those of the industry, once again tempering how broadly the damages provision should be read. George S. Mahaffey Jr., *A Product of Compromise: Or Why Non-Pecuniary Damages Should Not Be Recoverable Under Section 2605 of the Real Estate Settlement Procedures Act*, 28 U. DAYTON L. REV. 1 (Fall 2002). Simply put, "remedial" is not an automatic ticket to emotional distress damages. Rather, the courts must look at the whole context when trying to interpret an ambiguous statute such as section 2605(f)(1)(A). *Cooper, supra*.

18. *Cooper* itself provides an instructive example of this exercise. The issue in that case was whether the federal Right to Privacy Act of 1974's provision for the recovery of "actual damages" for violations by the federal government included emotional distress damages. The Supreme Court concurred that the statute is a remedial one, but observed that its conclusion on that point did not end the matter. Instead, another tenet of statutory interpretation was relevant. That canon states that absent specific indications by Congress otherwise, waivers of sovereign immunity by the federal government should not be interpreted broadly. In *Cooper*, the government clearly waived sovereign immunity to allow the recovery of "actual damages" against it. The issue was how broad was that waiver, i.e., did it include not only economic

11

damages, but nonpecuniary damages for such alleged injuries as emotional distress? Finding no indication that Congress expressly intended such a broad waiver, the Supreme Court determined that the plaintiff could recover only for economic injury.

19. The lesson of *Cooper* is, once again, that whether the statute has a remedial purpose does not dispose of the question whether RESPA allows for emotional distress damages if there are other considerations (such as there were in *Cooper*). And there are. As noted above, RESPA has both consumer protection and industry improvement purposes; moreover, it was a compromise between the competing interests of consumers and the industry, so that it should not be interpreted as a clear win for consumers. These other considerations argue against including emotional distress damages in the compass of "actual damages" under section 2605(f)(1)(A).

20. There is yet another reason to reject the inclusion of emotional distress damages in the extent of "actual damages" that the previous considerations amplify. It surfaces through an examination of the nature of the primary right protected. Emotional distress damages typically are associated with the predictable intense reaction to some sort of invasion of a person's rights. Thus, the federal invasion of privacy statute allowing recovery of "actual damages" against non-governmental persons (26 U.S.C. §§ 6103, 7341(a)(2)) permits the recovery of damages for emotional distress. *Hrubec v. Nat'l R.R. Passenger Corp.*, 829 F. Supp. 1502, 1505 (N.D. Ill. 1993), *aff'd,* 49 F. 3d 1269 (7th Cir. 1995). A like result was found for the Fair Housing Amendments Act (prohibiting discrimination in housing), *United States v. Balistrieri*, 981 F. 2d 916, 931 (7th Cir. 1992), and the civil rights violations under 42 U.S.C. § 1983, *Biggs v. Village of Dupo*, 892 F.2d 1298, 1304 (7th Cir. 1990). In each of those instances, the transgressor invades a very personal interest of the victim, frequently and

predictably resulting in an intense personal reaction.  By contrast, the predictable reaction to a servicer's failure to respond to an inquiry letter is simple frustration.  The very idea that ordinary, even maddening and inexcusable, human frustration such as might also be experienced as a result of late mail deliveries and jostling on crowded streets should be compensable, is overdoing it, the Trust submits.  Perhaps that point is even easier to see if the specific violation now alleged by the Claimant is separated from the rest of GMACM's alleged misconduct, as it must be for purposes of any award of damages, as the Trust will emphasize presently.  The Trust suspects that any inclination by an ordinary person to think that emotional distress damages for GMACM's alleged failure to respond to the one letter should be permissible would be considerably dampened if that were but an isolated incident between the Macks and GMACM rather than part of the more troubling wrongful commencement and continuation of a foreclosure.[8]

      21.    Further evidence that emotional distress damages are not encompassed by section 2605(f)(1)(A) is Congress' failure to provide for punitive damages for RESPA violations.  The lesson is that the conduct involved is not inherently egregious.  The availability of emotional distress damages does have an *in terrorem*, deterrent effect on violators because of the potential for large recoveries awarded by sympathetic juries.  That being so, it is a fair conclusion Congress also did not intend that every untoward consequence of a RESPA violation be compensable, either.  (Notably, Congress *did* provide for trebling of damages under 12 U.S.C. section 2607(d)(2).)

---

[8] The same may be true had the recent mortgage crisis with its reputed widespread abuses – elevating members of the mortgage industry to an unprecedented level of disrepute -- not occurred.

13

22. Finally, even if this Courts finds that section 2605(f)(1)(A) permits the Claimant to recover emotional distress damages for GMACM's alleged violation of section 2605(e), the Claimant has much to do in order to achieve such a recovery. Specifically, he must plead, prove and quantify such damages arising proximately from GMACM's failure to respond to the one letter. *E.g.*, *Houston* (failure to prove that that bank's nonresponse to qualified letter caused the wrongful foreclosure which plaintiff claims caused her emotional distress); *Tomasevic* (failure to prove violation *proximately* caused certain alleged economic injuries); *Spencer v. Hutchens*, 471 F. Supp. 2d 548, 554 (M.D.N.C. 2006) (failure to establish that violation caused losses complained of or to provide proof of losses); *Kelly v. Fairon & Assocs.*, 842 F. Supp. 2d 1157, 1161 (D. Minn. 2012) (plaintiff must plead and prove damages arising from specific violation) (plaintiff not entitled to summary judgment because she did not proven such damages); *Moon v. GMAC Mortg. Corp.*, No. C08-969Z, 2009 WL 3185596, at *5 (W.D. Wash. Oct. 2, 2009) (plaintiff must "quantify her alleged emotional distress damages" arising from alleged transgression). Whatever else may have resulted from the foreclosure process and attendant events is totally irrelevant; only that which is plead, traceable to the alleged 2605(e) violation itself and quantifiable would be permissible. Moreover, as noted earlier, *supra* ¶¶ 4, 13, the Claimant has not even plead any emotional damages originating from GMACM's alleged failure to respond to the Macks' letter. Rather, the Claim effectively alleges emotional distress from GMACM's wrongful foreclosure process, including its inaccurate responses to their repeated communications.

14

**CONCLUSION**

WHEREFORE, the Trust respectfully submits that the Claimant's alleged section 2605(e) claim is late, should not be permitted even if timely, and cannot lead to the recovery of emotional distress damages. Accordingly the Trust requests entry of the Proposed Order granting the relief requested in the Objection and such other and further relief as the Court may deem proper.

Dated: June 16, 2014

/s/ Norman S. Rosenbaum
Gary S. Lee
Norman S. Rosenbaum
Adam A. Lewis
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

-and-

BRADLEY ARANT BOULT CUMMINGS, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone:    205.521.8521
Facsimile:     205.488.6521
John W. Smith T

*Special Litigation Counsel to the ResCap Borrower Claims Trust*