GODFREY & KAHN, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, Wisconsin 53701-2719
(608) 257-3911

*Attorneys for ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Case No. 12-12020 (MG) |
| Debtors. | Joint Administration |

**DECLARATION OF JOHN S. DUBEL IN SUPPORT OF LIMITED OBJECTION OF THE RESCAP LIQUIDATING TRUST TO THE FINAL APPLICATION OF MORRISON COHEN LLP FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND EXPENSES INCURRED DURING THE PERIOD FROM MAY 14, 2012 THROUGH DECEMBER 16, 2013**

I, John S. Dubel, hereby declare that the following is true and correct to the best of my knowledge, information and belief.

1. I am the Chairman of the Board of Trustees for the ResCap Liquidating Trust. I previously served as the Co-Chair of the Official Committee of Unsecured Creditors (the "**OCC**") while I was the Chief Executive Officer of Financial Guaranty Insurance Company ("**FGIC**"), providing services through my company, Dubel & Associates, LLC.

2. I have more than 30 years of experience advising, managing, and investing in distressed businesses. I have served as Chief Executive Officer, President, Chief Operating

1

Officer, and Chief Financial officer to companies such as Cable & Wireless America, RCN Corporation, Anchor Glass Container Corporation, Acterna Corporation, and WorldCom, Inc.

3. The United States Trustee appointed FGIC to the OCC in these cases, and I represented FGIC on the OCC.

4. Prior to the commencement of these cases, the Debtor—at the direction of its Board, including the Independent Directors—had negotiated and signed a pre-bankruptcy agreement with the Debtors' parent, Ally Financial, Inc. ("**AFI**"), whereby AFI would contribute $750 million to the Debtors in exchange for general releases of all claims, including third party claims. Many interested parties, including FGIC, opposed this proposed agreement, resulting in substantial litigation and uncertainty.

5. I was the principal negotiator for FGIC with respect to the global mediation in these cases.

6. I was personally involved in all mediation sessions and negotiations on behalf of FGIC. I participated in the negotiation of the Plan Support Agreement signed on or about May 13, 2013, and the related term sheets and agreements negotiated and signed then and on May 23, 2013, as part of the overall global bankruptcy plan settlement.

7. From the perspective of the creditors, it was the failure of the Debtors' management and Board—including the Independent Directors—and the ill-advised pre-petition agreement to release claims against Ally Financial for $750 million that necessitated the appointment of an Examiner, led to extensive litigation, and required the creditors to completely re-work the pre-negotiated plan of reorganization and related settlements in these cases.

8. The OCC initially requested that the ResCap Board of Directors appoint a Chief Restructuring Officer. They subsequently appointed Lewis Kruger without consulting with the

OCC which would have given the Board comfort as to his independence. Mr. Kruger provided decades of restructuring experience and independent business advice both to the Debtors' management and to the Independent Directors. His involvement should have reduced, rather than increased, the Independent Directors' need for advice from their separate counsel.

9.  In my experience, the independent directors of a debtor play an important role in any Chapter 11 case. The role of the independent directors' separate counsel, however, is properly limited to issues wherein the independent directors' interests diverge from those of the debtors. In most instances, the legal advice of experienced bankruptcy counsel for the debtors is sufficient to protect the independent directors' interests.

10. The one area in these cases implicating the Independent Directors' need for their own separate legal counsel was with respect to the Examiner's investigation and the inquiry surrounding the Independent Directors' roles. All other tasks that Morrison Cohen performed for the Independent Directors—including attendance at hearings, asset sales, board meetings, and case monitoring—were duplicative of the role of Debtors' counsel.

11. In my view, the participation and or attendance by even one Morrison Cohen attorney at most of the court hearings and other events to which the Trust has objected was not necessary and did not add value to the estates for the benefit of its creditors. In deference to the Independent Directors' belief that their counsel's attendance was necessary, however, the Trust has chosen to object only to the presence of a second or third timekeeper at most hearings and events.

Executed on June 17, 2014 signed at Devils Tower, Wyoming.

　　　　　　　　　　　　　　　　　　　　　　　　　　_s/ John S. Dubel_　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　　　　　John S. Dubel

11645107.1

3