Judith P. Kenney
11311600
Judith P. Kenney & Associates, P.C.
16475 Dallas Parkway, Suite 330
Addison, Texas 75001-6863
Attorney, *Pro Hace Vice*, for Philip Roger Flinn, II

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al. | ) | Chapter 11 |
| | ) | |
| Debtors | ) | Jointly Administered |
| | ) | |

**PHILIP ROGER FLINN, II'S OBJECTION TO NOTICE OF ALLY FINANCIAL, INC'S MOTION FOR ORDER ENFORCING THE COURT'S ORDER GRANTING DEBTORS' MOTION FOR AN ORDER UNDER BANKRUPTCY CODE SECTIONS 105(A) AND 363(B) AUTHORIZING THE DEBTORS TO ENTER INTO A PLAN SUPPORT AGREEMENT WITH ALLY FINANCIAL INC., THE CREDITORS' COMMITTEE AND CERTAIN CONSENTING CLAIMANTS**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE

    Philip Roger Flinn, II ("Flinn"), respectfully submits this his Objection to Ally Financial, Inc.'s Motion for an Order Enforcing the Court's Order Granting Debtors' Motion for an Order under Bankruptcy Code Sections 105(A) and 363(B) Authorizing the Debtors to Enter into a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee and Certain Consenting Claimants.

---

## I. BACKGROUND FACTS

1.  On or before May 14, 2012, Ally Financial, Inc. ("Ally") and Residential Capital, LLC ("ResCap" on behalf of its subsidiaries including GMAC Mortgage, LLC) entered into a pre-petition Settlement Agreement ("original Agreement") providing for a settlement of all the claims between each other and providing full releases of the parties and their respective employees and others. *See* **Exhibit B**, Settlement and Plan Sponsor Agreement ("original Agreement").

2.  On September 20, 2012, Ally and GMAC Mortgage, LLC ("GMAC"), subsequently joined by ResCap, sued Flinn, an employee of GMAC. GMAC was a Debtor in the Residential Capital, LLC, et al. ("ResCap") bankruptcy that was filed on May 14, 2012). Ally's suit was filed in the Federal District Court in the Eastern District of Texas, Sherman Division, in Cause No. 4:12-CV-00600) (the "Texas Litigation"). *See* **Exhibit C**, Original Petition of Ally and GMAC.

3.  On May 13, 2013, Ally and ResCap (also on behalf of GMAC ) and others entered into the Plan Support Agreement ("PSA"). *See* **Exhibit D**, PSA. The Court approved the Debtors entering into the PSA on June 26, 2013.

4.  On May 14, 2013, the Debtors and Flinn (who had filed his Proof of Claim #2401 in the Bankruptcy) signed a Stipulation and Order to modify the automatic stay pursuant to Section 362(a) to authorize Flinn to file counterclaims in the Texas Litigation. *See* **Exhibit E**, Stipulation and Order. (EFC Doc.#3710). Ally was only referenced in the Stipulation and Order as a "non-debtor affiliate," but Ally and Debtors (ResCap and GMAC) are represented in the Texas Litigation by Jackson Lewis, LLP, who participated in the negotiation of the Stipulation and Order.

5. On September 13, 2013, Flinn filed counterclaims against Debtors, ResCap and GMAC, and Ally in the Texas Litigation, including a claim against Ally for breach of the release contained in the original Agreement. *See* **Exhibit F**, Flinn's Second Amended Answer and Counterclaims.

6. On December 11, 2013, the Court signed an Order Confirming the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors (the "Confirmation Order"). *See* **Exhibit G**, Confirmation Order. (EFC Doc.#6065). *See* **Exhibit H**, Plan. (EFC Doc. 6065-1). The Effective Date for all purposes was December 17, 2013. *See* **Exhibit I**, Notice of Confirmation Order and Effective Date of December 17, 2013. (EFC Doc. #6137).

7. On June 2, 2014, Ally filed in the Bankruptcy Court a Motion for an Order Enforcing the Court's Order Granting Debtors' Motion for an Order under Bankruptcy Code Sections 105(A) and 363(B) Authorizing the Debtors to Enter into a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee and Certain Consenting Claimants (the "PSA Order") requesting that the Court find that the PSA superseded in all respects the original Agreement.

## II. THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER DEFENDANT FLINN'S COUNTERCLAIM AGAINST ALLY

A. **Flinn's counterclaim is non-core, not related.**

8. Bankruptcy courts have no jurisdiction to entertain civil proceedings that are not core-related. 28 U.S.C. §§ 1334, 157(b)(1) and (c)(1).

9. Title 28 U.S.C. §1334 lists four types of matters over which the district court has jurisdiction:

    a. cases under title 11;

    b. proceedings arising under title 11;

    c. proceedings arising in a case under title 11; and

    d. proceedings related to a case under title 11.

The first category refers to the bankruptcy petition itself, while the "arising under," arising in" and "related to" language collectively identify a broad range of matters subject to the bankruptcy jurisdiction of federal courts. *See In re Wood*, 825 F.2d 90, 92 (5th Cir. 1987); *see In re OCA, Inc.*, 410 B.R. 443 (E.D. La. 2007); *see In re Gardner*, 913 F.2d 1515, 1517-19 (10th Cir. 1990). 28 U.S.C.A. § 157. Although the grant of jurisdiction is broad, the placement of that jurisdiction in non-Article III courts is limited. *See Marathon Pipe Line Company v. Marathon Pipe Lin Co.*, 458 U.S. 50, 102 S. Ct. 2858, 73 L.Ed. 598 (1982).

10. Congress therefore created a statutory distinction between core and non-core proceedings and restricted the power of the bankruptcy courts when adjudicating the latter. *See* 28 U.S.C. §§157(b)(1), (c)(1). Subsection 157(b)(1) gives bankruptcy judges the power to determine and enter orders and judgments in "all core proceedings arising under title 11, or arising in a case under title 11..." In the latter situation, the bankruptcy judge is to submit proposed findings of fact and conclusions of law to the district court for *de novo* review. *See In re Satelco*, 58 B.R. 781, 785 (Bankr. N.D.Tex. 1986).

11.     In Ally's Motion, Ally mistakenly asserts that their Motion to enforce a prior Court Order is a core proceeding by reference to 28 U.S.C. § 157. Although the statute does not define core proceedings, it does include a non-exclusive list of examples, none of which is applicable here. *See* 28 U.S.C. §157(c)(2).

12.     In aiding an analysis of the distinction between core and non-core proceedings, the Fifth Circuit observed as follows:

> "[f]irst, bankruptcy judges may exercise full judicial power over only those controversies that implicate the peculiar rights and power of bankruptcy or, in Justice Brennan's words, controversies 'at the core of the federal bankruptcy power.' Second, controversies that do not depend on the bankruptcy laws for their existence–suits that could proceed in another court even in absence of bankruptcy–are not core proceedings."

*Wood*, 825 F.2d at 96.

13.     For purposes of determining whether a particular action falls within bankruptcy jurisdiction, it is 'necessary only to determine whether a matter is at least 'related to' the bankruptcy. *Wood*, 825 F.2d at 93. Although the Act does not define "related" matters, the Tenth Circuit, quoting *Pacor, Inc.v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984), defines it as: "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Gardner*, 913 F.2d at 1518; *see Wood*, 825 F.2d at 93.

14.     Neither Flinn's breach of release counterclaim nor Ally's request for relief invokes a substantive right created by bankruptcy law. Ally and Flinn are both non-debtors, and Flinn's cause of action (as well as those of Ally) are those that could exist outside of bankruptcy (*i.e.*, breach of releases in a valid contract). Ally does not assert that Flinn's cause of action arises under the

Bankruptcy Code. Flinn's cause of action is non-core because it neither invokes a substantive right provided by title 11, nor, by its nature, could arise only in the context of a bankruptcy case. Ally makes no assertion that the Court's decision could conceivably have any effect on the bankruptcy estate being administered. *See Globaleyes Telecommunications, Inc. v. Verizon North, Inc.,* B.R. 481 (S.D. Ill. 2010). In *Globaleyes*, the Court found that because the "estate" no longer existed (after plan confirmation), the claims could not possibly be "core" proceedings under 28 U.S.C. §157(b)(2)(E). The *Globaleyes* court found that the post-confirmation claims asserting breach of contract or other state law causes of action are not core proceedings. *Globaleyes* at 497. *See*, *In re Oca, Inc.*, 410 B.R. 443 (E.D. La. 2007).

15.     The key decision in determining whether bankruptcy court has jurisdiction is whether the outcome of the pending complaint would impact administration of the estate. Thus, after the plan was confirmed, the estate no longer existed and could not possibly present core matters over which the bankruptcy court had "arising under" or "arising in" jurisdiction. *Globaleyes*, at 497. Resolution of the Motion is not integral to the restructuring and reorganization after confirmation of the Plan. *Oca* at 450.

16.     Non-core "related to" jurisdiction is only to be exercised when resolution of the dispute at hand will have a tangible effect on the bankruptcy estate or the property to be distributed to the creditors. *Id.,* at 497.   In *Globaleyes*, the Court noted that "courts have uniformly held that, if an adversary proceeding does not involve property in which the bankrupt's estate asserts an interest, and the resolution of the claim will not affect the administration of the estate, then the bankruptcy court has no subject matter jurisdiction to adjudicate the claim. *Id.*, at 497.

17. Upon review of the facts, there is no conceivable relationship that enforcement of Ally's Motion to find that the PSA superseded the original Agreement would affect in any way the administration of the Debtors' property or estate. There is no "adversarial" proceeding in this Court. Ally has not asserted that the enforcement of the Motion involves property to which the bankrupt's estate is claiming an interest. Enforcement of the PSA Order that authorized Debtors to enter into the PSA will not affect the administration of an estate, because the estate no longer exists.

18. Flinn does not consent to the Bankruptcy Court jurisdiction over Ally's Motion in compliance with that Stipulation and Order where Flinn agreed to only file his counterclaims in the Texas Litigation. *See* **Exhibit E**, Stipulation and Order. *See Southerland v. Milam*, 187, B.R.740, 743, 745 (M.D. Fla. 1995). Flinn requests that the Court, if it has jurisdiction, decline to accept this matter because Ally is simply forum shopping, and it is unnecessary for two courts to be involved in a state law case. Moreover, Flinn has requested a jury trial in the District Court, Flinn is entitled to a jury trial on a breach of the release, and Flinn has not waived that right. *Oca*, at 451.

19. Flinn requests that the Court deny Ally's Motion on the basis that this Court has no jurisdiction to hear Ally's Motion nor to enter a final judgment on Flinn's counterclaim.

## II. ALTERNATIVELY, FLINN WAS RELEASED UNDER THE ORIGINAL AGREEMENT, THE PSA AND THE PLAN

20. Alternatively, if the Court should accept jurisdiction over Ally's Motion, the Court should find that the PSA does not supersede in all respects nor void the original Agreement *ab initio*. The original Agreement is valid and enforceable. *See* **Exhibit B**, original Agreement, Section 6.3.

---

P. 14, the first page and the execution pages. There was a present release[1] of Debtors' employees among others, subject to several conditions, including the Effective Date of Plan Confirmation. All conditions precedent for the release have been satisfied. *See* **Exhibit B**, original Agreement, Article V. Termination of the original Agreement was not a condition for the release.

21.  It is an undisputed fact that Flinn was an employee pre-petition and a former employee after September 14, 2012. *See* **Exhibit J**, Ally's Third Amended Complaint, Paragraph 15, Page 4. As the manager of the Lewisville Data Center and the Shady Oak Data Center that were sold at auction in the Bankruptcy, Flinn played an important role in the Debtors' liquidation. As an employee, Flinn was released by Ally in Section 2.3 of the original Agreement. Debtors also released Ally and its employees. *See* **Exhibit B**, original Agreement, section 3.1, P. 9-10.

22.  In the PSA, even though the term "employee" was not mentioned in the provision setting out the Ally Releases,[2] the release of Debtors' employees was included in the definition of "Representatives" to which the definition of "Ally Released Parties" refers. See **Exhibit D**, PSA

---

[1] "2.3  *Ally Release.*  Subject to the Debtors' satisfaction of their obligations set forth in Section 3.1, on the Effective Date of the Plan, ***Ally shall release*** the Debtors and each of their respective members, officers, directors, agents, financial advisors, attorneys, *employees*, partners, affiliates, and representatives and their respective properties from any and all Causes of Action, whether known or unknown whether for ***tort, fraud, contract****,* violations of federal or state securities laws, or otherwise, ***arising from or related in any way to the Debtors, including those that any Ally entity would have been legally entitled to assert against any of the parties above in their own right (whether individually or collectively), other than the Allowed Claims.*** [Emphasis added].

[2] "**Ally Releases:** On and as of the Effective Date of the Plan, the following releases shall be effective: the **Ally Released Parties** shall release the Creditors' Committee, the Debtors, and the Consenting Claimants from any and all Causes of Action whatsoever, whether known or unknown, asserted or unasserted, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise arising from or related to the Debtors' liquidation, and the negotiation, formulation, or preparation of the Plan Support Agreement, the Term Sheets, the Plan, the Disclosure Statement, and any other Definitive Documents and related disclosures, as well as any counterclaims in commenced or tolled litigation with the Debtors or the Consenting Claimants." [Emphasis added].

---

Objection to Ally Financial, Inc.'s  Motion for an Order Enforcing Court's Order         Page 8
Z:\12-1302\Docs\SMJ\SMJ-Release\Objections Bankruptcy6.wpd

Term Sheet, Page 9. The term "Ally Released Parties" is defined in the PSA to include the Debtors' Representatives.[3]  See **Exhibit D**, PSA Term Sheet, P. 6-7. Debtors' Representatives is also included in the Plan definition of "Ally Released Parties."[4]  See **Exhibit H**, Plan, ¶ 21, P. 4. The term "Representatives" in the PSA expressly incorporated the identity of released persons (previously found in section 2.3 of the original Agreement) as follows:

> "*Representatives*" means a person's or entity's *former and current* officers, *former and current* directors, *former and current* principals, **employees**, agents, financial advisors, attorneys, accountants, investment bankers, consultants, and other professionals, each solely in its capacity as such; provided, that "Representatives" shall not include, in the case of Ally or the Debtors, an underwriter that is unaffiliated with Ally or the Debtors against which an Investor has a pending or tolled action." [emphasis added].

See **Exhibit D**, PSA Term Sheet, P. 7. In the Plan, the definition of the term "Representatives" is identical to the definition found in the PSA, except for the addition of the following sentence at the

---

[3] The "Ally Released Parties" means Ally, and each of Ally's and the Debtors' respective successors and assigns, members, shareholders, partners, non-Debtor affiliates, and **Representatives**, each in its capacity as such and Cap Re of Vermont, LLC and its current and former officers and directors. For the avoidance of doubt, the Ally Released Parties shall not include (i) any purchaser of any assets relating to the Debtors' servicing business that is not Ally or a Debtor, or (ii) notwithstanding any status as a shareholder of any Ally Released Party, any underwriter of RMBS that is unaffiliated with Ally, and the Representatives of such underwriter against which an Investor has a pending or tolled action, or (iii) the FHFA or the FDIC. [Emphasis added].

[4] "21. "Ally Released Parties" means (a) Ally, and each of Ally's and the Debtors' respective members, shareholders, partners, non-Debtor affiliates, and **Representatives,** including Cap Re of Vermont, LLC and its current and former members, officers, and directors and (b) each of Ally's successors and assigns, each Entity in clause (a) and (b) solely in its capacity as such. For the avoidance of doubt, and without limiting the foregoing, the Ally Released Parties shall not include (i) any purchaser of any assets relating to the Debtors' servicing business that is not Ally or a Debtor, (ii) any assignee of a Servicing Agreement that is not Ally or a Debtor, (iii) notwithstanding any status as a shareholder of any Ally Released Part, and solely in their capacity as such, any underwriter of RMBS that is unaffiliated with Ally, and the Representatives of such underwriter, against which an Investor has a pending or tolled Cause of Action , (iv) the FHFA, (v) the FDIC, (vi) any assignee of executory contracts that were assumed by the Debtors that is not Ally, (vii) any insurer that is not Ally that sold any directors & officers or errors & omissions insurance policies that cover Debtors, (viii) any party that is not Ally against whom RFC may have indemnity rights arising out of the Kessler Class Action, specifically, any successors in interest to DBNV and GNBT, (ix) the Plan Trustees, and (x) Fannie Mae."

end of the paragraph: "For the avoidance of doubt, Lewis Kruger shall be deemed to be a Representative of Debtors." *See* **Exhibit H**, Plan, ¶ 245, P. 28. That change did not affect the release of Flinn. Through the definition of Representatives, Flinn is released as one of the Ally Released Parties and as a Released Party under the Plan. *See* **Exhibit H**, Plan, ¶ 21, P. 4. *See* note 4. The term "Released Party" is defined in the Plan as follows:

> "243. "Released Party" means the Liquidating Trust and each Ally Released Party, Debtor Released Party and Exculpated Party, or the property or Estate of any Entity so released, discharged or exculpated."

*See* **Exhibit H**, Plan ¶ 243, P. 28. The definition of "Debtor Released Party" also includes the "Ally Released Parties." *See* **Exhibit H**, Plan ¶ 73, P. 10.

23.     When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectation. *M & R Rockaway, LLC, v. SK Rockaway Real Estate Company, LLC*, 74 A.D. 3rd 759, 902 N.Y.S.2d 621(Dept. 2d 2010), citing *Willsey v. Gjuraj*, 65 A.D.3d 1228, 1230, 885 N.Y.S.2d 528. In reviewing the four corners of the original Agreement in Sections 2.3 and 3.1, it is clear that the Parties intended to release each other and their respective employees . The intention to release Debtors' employees did not change when the Parties executed the PSA. Where the released employees expressly included "former" employees, it was clear that the same employees would continue to be released by the PSA. *See* **Exhibit D**, PSA Term Sheet, Pages 6-9. The Plan incorporated the releases in the original Agreement and the PSA. The PSA and the Plan release provisions did not supersede the original Agreement in all respects and were consistent with the releases in the original Agreement.

24.     In consideration of the Third Party Releases, Ally agreed to release Debtors and Debtors' former and present employees as Debtors' Representatives. *See* **Exhibit B**, original Agreement, Section 2.3, **Exhibit D**, PSA Term Sheet, P. 6-9, and **Exhibit H**, Plan, ¶ 21, P. 4. (EFC Doc. #6065-1). Ally has accepted the benefits of the Third Party Releases provided by the original Agreement, the PSA and the Plan. *See In re Residential Capital, et al., Debtors*, 508 B.R. 838 (S.D.N.Y. 2014).

25.     It is undisputed that Ally made a deliberate decision to sue Flinn while the original Agreement was in effect on September 20, 2012. Ally's lawsuit was filed ***before*** the occurrence of any alleged termination or alleged superseding agreement. *See* **Exhibit C**, Original Petition of Ally and GMAC.

26.     By suing Flinn, Ally violated its obligation under the original Agreement to exercise good faith and fair dealing, a component of all contracts under New York law. *See Goldman v. Simon Property Group, Inc.*, 58 A.D.3d 208, 869 N.Y.S.2d 125, 2008 N.Y. Slip Op. 09353 (2d Dept., 2008). In the original Agreement, the Parties expressly promised that the Parties would take no action inconsistent with the terms of the Agreement. *See* **Exhibit B**, original Agreement, Section 4.1(e). Ally breached that promise in the original Agreement as well as similar promises made in Sections 3.1(b) and 3.2 of the PSA. *See* **Exhibit D**, PSA, Sections 3.1(b) and 3.2(c), P. 9.

27.     When the bankruptcy plan was confirmed, the claims against the Released Parties, including Flinn were extinguished, and were barred. The Confirmation Order made the releases ***Res Judicata***. *See First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat*

*Enters., Inc.),* 81 F.3d 1310, 1315 (4th Cir.1996); *see In re Joint Eastern and Southern District Asbestos Litigation*, 129 B.R. 710 (E.D.N.Y. 1991). See **Exhibit G**, Confirmation Order.

28. As a Released Party, Flinn is entitled to enforce the release by injunction as authorized by the Plan. **Exhibit H**, Plan, ¶ I, Page 103. Flinn was the intended recipient of Ally's release. A party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost. *See Novak v. PV Holdings Corporation*, 742 F. Supp.2d 284, 295-296 (E.D.N.Y. 2010), *citing State of California Public Employees' Retirement System v. Shearman & Sterling*, 95 N.Y.2d 427, 435, 718 N.Y.S.2d 256, 741 N.E.2d 101 (2000). The Court in *Novak* stated that New York follows the Restatement (Second) of Contracts § 302 in allowing a third party to enforce a contract if that third party is an intended beneficiary of the contract. *Id.,* at 296.

29. Philip Roger Flinn, II was intended to be released by the original Agreement and was damaged by the prosecution by Ally of its claims against Flinn in the Texas Litigation. Ally continued to deliberately prosecute it's claims against Flinn after the PSA was executed, that released Flinn as a former employee and even after the Effective Date of December 17, 2013 when Ally's claims were barred and extinguished by the Plan and the Confirmation Order.

30. For the foregoing reasons, Philip Roger Flinn, II requests the following:

    a. The Court DENY Ally Financial, Inc.'s Motion for lack of jurisdiction pursuant to section 157 of the Bankruptcy Code.

Alternatively,

b. File findings of fact and conclusions of law in accordance with Section 157, with the Federal District Court, Eastern District of Texas, Sherman Division, in Cause No. 4:12-CV-00600, including the finding that Philip Roger Flinn, II was released by Ally Financial, Inc. as a Released Party, under the original Agreement, the PSA and the Plan;

c. Enjoin Ally Financial, Inc. from prosecuting its claims against Philip Roger Flinn, II, in the Federal District Court, Eastern District of Texas, Sherman Division in Cause No. 4:12-CV-00600;

d. Order Ally Financial, Inc. to dismiss its claims with prejudice in the Federal District Court, Eastern District of Texas, Sherman Division, in Cause No. 4:12-CV-00600, no later than fourteen (14) days from the date of the Court's Order. If Ally Financial, Inc. fails to do so, Philip Roger Flinn, II may file a motion seeking to hold Ally Financial, Inc. in contempt; and

e. Defer to the Federal District Court, Eastern District of Texas, Sherman Division, in Cause No. 4:12-CV-00600, the determination of the damages and costs, including reasonable attorneys fees to be awarded to Philip Roger Flinn, II.

June 19, 2014.

Addison, Texas                    Respectfully submitted

                                  /s/ Judith P. Kenney_____
                                  Judith P. Kenney

> judith@judithkenneylaw.com
> Judith P. Kenney & Associates, P.C.
> One Bent Tree Tower
> 16475 Dallas Parkway, Suite 330
> Addison, Texas 75001-6870
> Telephone:  (972) 713-6133
> Facsimile:  972) 818-0388
> **Counsel Pro Hace Vice for Philip Roger Flinn, II**