Karen Michele Rozier
7957 Dahlia Circle
Buena Park, CA 90620
(410) 458-3772
*Without Assistance of Counsel*

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re RESIDENTIAL CAPITAL, LLC et. al, Debtors. | ) Judge Hon. Martin Glenn, Presiding <br> ) <br> ) Case No. 12-12020 (MG) <br> ) <br> ) Chapter 11 <br> ) <br> ) **CLAIMANT'S OPPOSITION TO BORROWER** <br> ) **CLAIMS TRUST'S MOTION PRESENTMENT OF** <br> ) **MICHALE J. TALARICO AS AN EXPERT BY** <br> ) **DECLARATION [Doc 7036]** <br> ) <br> ) |

**COMES NOW THE RESCAP BORROWER CLAIMS TRUST ("the Claims Trust")** requesting relief from the court without properly noticing and serving the major affected parties or in any way attempting to communicate with the Claimant, who has the second largest and still unopposed remaining claim in the bankruptcy. Claimant has been an active participant in these proceedings [6173, 6199, 6479, 6519, 6529, 6597, 6861, 7004, 7028, 7047, 7050, 7055] so Debtors and their Claims Trust agent cannot legitimately claim they are unaware of Claimant's demands or request for prompt resolution. Instead, Debtors, through their agent the Claims Trust, appears to be asking for the Court from relief from having to address the very issue that forced them into Chapter 11 bankruptcy. Claimant legitimately requested a Judicial Review[1] of what she classified as the Debtors' illegal actions on October 28, 2008 and Debtors have moved this case from state court, to federal court in California, to federal court all the way across the country in New York to avoid having to answer.

---
[1] Case 30-2008 00217056 in the Superior Court of California, County of Orange

Claimant begs the Court to deny their motion and force them to follow the approved Confirmation Plan or in the interim, to allow the remaining Claimants to vote on any changes to the approved Plan. Claimant objects on three grounds:

(1) Failure to Serve

(2) Material Breach of the Confirmation Plan

(3) Faulty Science.

## I. Failure to Serve

1. In its Motion, the Claims Trust states it provided notice of its Motion in accordance with the Case Management Procedures Order approved by this Court on May 23, 2012 [Docket No. 141.] Under paragraph 6 Special Service Rules, subparagraph (d), "Filing relating to approval of a proposed compromise or settlement shall be served on **each entity that is a party to the compromise** and settlement". (Emphasis added)

2. Furthermore, service was to be made at least fourteen days in advance, with three days for mailing. [11a, b, f] The Claims Trust has provided no evidence or Proof of Service indicating that it served the 597-remaining and affected Claims holders. Claimant received her copy on Saturday June 14 with instructions that her response must be physically in New York no later than 4 pm on Thursday June 19, with service to 12-entities for 28 people.

3. The Claims Trust did not include a Proof of Service with its filing and the envelope is unmarked so there is no way to determine when the package was sent. As at a minimum, all affected parties should be noticed and given sufficient time to respond.

## II. Material Breach of the Confirmation Plan

4. The agreement was that they would pay claims at a certain percentage. [100% for ETS and 30.1% for GMACM] Debtors admit that have six claims over $10,000,000. Debtors were fully aware of the size of all claims when the proposed the Confirmation Plan. The Plan was voted on and approved with the agreement that approved claims would be paid if not successfully expunged. Debtor is now seeking

relief on this material matter without putting it to a vote. Debtors' request is a material change in the Plan and should be voted on by the remaining class members.

5. It would be prejudicial to allow the Borrowers Trust this relief without them demonstrating that at a minimum, these five last large Claims holders were properly served and describing the steps they have taken to resolve the last high-dollar claims.

6. Debtors have repeatedly maintained that it had until September 15, 2014 to object to or accept claims. [e.g. Doc 6706, page 2] Now comes the Debtors and Claims Trust asking for relief from the court months early. The Claims Trust's request is premature. The Claims Trust has not demonstrated that it made any effort to negotiate with the largest remaining Claimants so they are not entitled to relief. They have not objected to the second largest claim, and the Court should not allow them relief without forcing them to address the serious allegations.

7. As the holder of Claim 4738 for almost $100M, I declare under penalty of perjury in these United States that Debtors and the Borrowers Claims Trust did **not** timely serve me with their motion and request and that their deliberate delay caused me further harm. I also declare under these same penalties that **no** party from the Debtor or any associate of the Debtor has ever attempted to negotiate this claim. I further declare that as a student of the Harvard Negotiation Project, a trained facilitator, and a former industry manager that was often called upon to negotiate matters, I am capable of negotiation and willing to negotiate and have indicated my willingness to negotiate.

### III.     Faulty Science

8. The Claims Trust used junk science to make their case when they should have used generally accepted management principles[2]. The Claims Trust should have used the Pareto Principle[3], a heuristics

---

[2] Claimant is Raytheon Systems Company Six Sigma Black Belt trained [Class 6] and was the Six Sigma Champion for the Naval Sea Systems Command. Claimant was not chosen for those roles because they needed a double-token. Claimant was chosen because she had demonstrated herself at the Naval Air Systems Command on a billion-dollar program, at IBM Semiconductor Division (earned a scholarship based on identifying $30 million in savings over a summer while completing their intensive financial training program), at Hughes Aircraft where she: was head of Material Technical Liaison and implemented continuous improvement on several programs while completed Hughes' 10-months intensive Business Management Program (certificate) while teaching Junior Achievement to Orange County children as part of the company's outreach. She was routinely rewarded with tickets to L.A. Raiders season tickets, Lakers games and Super Bowls. [Claimant's Dad enjoyed that perk more than she.] Claimant also completed her **doctoral requirements** (paper and exam) **in statistics at Harvard** University Kennedy School of

CLAIMANT'S OPPOSITION TO BORROWER'S CLAIMS TRUST REQUEST - 3

principle. Pareto made the observation that where a large number of factors or agents contribute to a result, the majority (about 80 percent) of the result is due to the contributions of a minority (about 20 percent) of factors or agents. Investigations suggest, for example, that some 80 percent of the sales of a firm are generated by 20 percent of its customers, 80 percent of the inventory value is tied up in 20 percent of the items, 80 percent of problems are caused by 20 percent of reasons. Named after its proposer Vilfredo Federico Damaso Pareto (1848-1923), French-born Italian engineer and a founder of welfare economics it is the industry standard and more valid than even Murphy's law.

9. Debtors received 3,034 claims. [Declaration of Michael Talerico hereinafter referred to as "Talerico Declaration", page 5] Using the widely accepted Pareto Principle, one would expect 607 claims to actually be entitled to 80% of the total amount of all damages. Heuristically speaking, these should be the most affected Claimants. Debtors cite that 597 are actually unresolved, which is within the expected range. (597 = 607 $\pm$ 1.6%)

10. Debtor's claim they are positioned to pay $45,960,000 to the claims they were allowed to *cherry-pick* for quick resolution. Debtors have failed to provide the court with any evidence that the remaining claims are similar to the claims already reviewed. If anything, Debtors conclude that the opposite is true. Debtors concede that the court has allowed 97% of the claims it previously contested, but feel it is at best a 50/50 shot with the remaining claims. [Talerico Declaration, page 16, paragraph 29 viii] If Debtors are releasing $45,960,000 to the 80% of the easy claims, the Pareto Principle should also be applied to that amount using the formula = amount paid/0.20. If $45,960,000 is paid to settle the

---

Government. (She also completed doctoral requirements in public management at the Kennedy School. Harvard requires no more work of her before she can sit for her dissertation, but she respects Harvard enough that she would refresh her knowledge before trying.) Finally, Claimant has an MS Industrial Administration/ MBA (and BS Electrical Engineering) from Carnegie Mellon University, where she received excellent grades while taking no less than seven graduate courses every semester, and teaching karate to my graduate school classmates! [Claimant has a very (very) high IQ and Attention Deficit Disorder with Hyperactivity and Impulsiveness, but is good with it.] Claimant completed graduate level accounting courses at CMU and Harvard as well as getting A's in graduate accounting at the University of Maryland at College Park, but Claimant is not an accountant. Claimant is instead a former Navy missile engineer who is really getting sick of the crimes being perpetrated by the Debtor and its agents. Claimant **was cheated out of her profession** when the Debtors wrongfully foreclosed on her using the wrong note and wrong home, while she was paying her mortgage. To imply that the harm the Debtors caused this specific African-American Claimant in anyway compares to the harm Debtors caused any other Claimant who is not a first generation, Harvard graduate, Black female Navy rocket scientist based on junk science is absurd. With rank comes privileges, and Claimant has earned the right to make her demand. Others have not earned the right to use Claimant's angst, which is why she was forced to file a Public Notice. [7047]

[3] Also called 80/20 principle, Pareto's Law, or principle of imbalance.

cherry-picked claims, then **$229,800,000** must be set-aside under the Pareto Principle to ensure adequate reserves to pay the claims Debtors chose to save for last.

11. Debtors claim they paid $22,584 on average for 78-claims which they cherry-picked. [Talerico Declaration, page 11] It is unclear if that amount was included in the $45,960,000 total. Using the Pareto Principle, at least $112,920 must be allocated for each of the remaining claims or more than twice the $60,000 Debtors propose.  The Court should reasonably conclude the last claims are those with legitimate beefs the Debtors wish to dodge.

12. Debtors admit that the 597 claims only include five claims over $10,000,000 [Talerico Declaration, page 19, para. 34 iii] yet Debtors made no mention of any effort to negotiate with the holders of the claim. Specifically, this Claimant has repeatedly attempted to communicate with Debtors about her claims yet the Debtors' lawyer was adamant that the matter would be settled "by a judge".

For the above reasons, Claimant respectfully requests that the court deny the Borrower's Claims Trust and order them to negotiate the remaining claims in good faith.  As at a minimum, all affected parties should be noticed and given sufficient time to respond.

Dated: June 17, 2014[4]

Respectfully submitted,

Karen Michele Rozier

---

[4] Happy 16th Birthday to David Bear, the smallest baby born in Orange County, CA.  [1 ½ pounds and 12 inches]

CLAIMANT'S OPPOSITION TO BORROWER'S CLAIMS TRUST REQUEST - 5