UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: RESIDENTIAL CAPITAL, LLC, et al., <br> Debtors, <br><br> In the Matter of Order Estimating Claims and Establishing Disputed Claims Reserve: RONALD A. ERIKSEN and JULIE A. ERIKSEN <br> Claimants. | Case No. 12-12020 (MG) <br><br> Honorable Martin Glenn |

## NOTICE OF FILING

PLEASE TAKE NOTICE, that on June 19, 2014, Ron and Julie Eriksen filed before the Honorable Martin Glenn, or any Judge sitting in his stead, in room 501, or any other room so designated, in the United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10004 and his "OBJECTIONS TO ORDER ESTIMATING CLAIMS AND ESTABLISHING DISPUTED CLAIMS RESERVE, AS TO RONALD AND JULIE ERIKSEN," a copy of which is attached hereto and hereby served upon you.

Dated:  June 18, 2014

Respectfully submitted:

/s/ Ronald A. Eriksen

Ron Eriksen
2647 Kendridge Lane
Aurora, IL 60502



RECEIVED JUN 19 2014 U.S. BANKRUPTCY COURT SO DIST OF NEW YORK

# CERTIFICATE OF SERVICE

The undersigned, a non-attorney, hereby certifies under penalty of perjury pursuant to 735 ILCS 5/1-109 that on June 18, 2014, he duly served (or caused to be served) the above described "OBJECTIONS TO ORDER ESTIMATING CLAIMS AND ESTABLISHING DISPUTED CLAIMS RESERVE, AS TO RONALD AND JULIE ERIKSEN" by Hand Delivery or Ordinary First Class Mail upon the persons on the attached service list.

/s/ Ronald A. Eriksen  
Ronald A. Eriksen

## Service List

United States Bankruptcy Court  
Clerk of Court  
One Bowling Green  
New York, NY 10004

Honorable Martin Glenn  
United States Bankruptcy Court  
One Bowling Green, Room 501  
New York, NY 10004

Rules for the Southern District of New York, and the Notice, Case Management, and Administrative Procedures approved by the Bankruptcy Court on May 23, 2012 [Docket No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to be received no later than **June 19, 2014, at 4:00 p.m. (Prevailing Eastern Time)**, upon (a) counsel to the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attention: Gary S. Lee, Norman S. Rosenbaum, Jordan A. Wishnew and Samantha Martin); (b) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention: Tracy Hope Davis, Linda A. Riffkin, and Brian S. Masumoto); (c) the Office of the United States Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530-0001 (Attention: US Attorney General, Eric H. Holder, Jr.); (d) Office of the New York State Attorney General, The Capitol, Albany, NY 12224-0341 (Attention: Nancy Lord, Esq. and Enid N. Stuart, Esq.); (e) Office of the U.S. Attorney for the Southern District of New York, One St. Andrews Plaza, New York, NY 10007 (Attention: Joseph N. Cordaro, Esq.); (f) counsel for Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York, NY 10022 (Attention: Richard M. Cieri and Ray Schrock); (g) counsel for the committee of unsecured creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attention: Kenneth Eckstein, Douglas Mannal, Stephen D. Zide and Joseph A. Shifer); (h) counsel for Ocwen Loan Servicing, LLC, Clifford Chance US LLP, 31 West 52nd Street, New York, NY 10019 (Attention: Jennifer C. DeMarco and Adam Lesman); (i) counsel for Berkshire Hathaway Inc., Munger, Tolles & Olson LLP, 355 South Grand Avenue, Los Angeles, CA 90071 (Attention: Thomas Walper and Seth Goldman); (j) Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101-7346 (if by overnight mail, to

2

47603379.2

2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-5016); (k) Securities and Exchange Commission, New York Regional Office, 3 World Financial Center, Suite 400, New York, NY 10281-1022 (Attention: George S. Canellos, Regional Director); and (l) counsel for Borrowers Claims Trust, Polsinelli, 900 Third Avenue, 21st Floor, New York, NY 10022 (Attention: Daniel J. Flanigan and Jason A. Nagi).

*[Remainder of Page Intentionally Left Blank]*

47603379.2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: RESIDENTIAL CAPITAL, LLC, et al., <br> Debtors, | Case No. 12-12020 (MG) |
| In the Matter of Order Estimating Claims and Establishing Disputed Claims Reserve: RONALD A. ERIKSEN and JULIE A. ERIKSEN <br> Claimants. | Honorable Martin Glenn |

## OBJECTIONS TO ORDER ESTIMATING CLAIMS AND ESTABLISHING DISPUTED CLAIMS RESERVE, AS TO RONALD AND JULIE ERIKSEN

RONALD A. ERIKSEN ("REriksen") and JULIE A. ERIKSEN ("JEriksen") (collectively, "the Eriksens") OBJECT to the "Motion for Order Estimating Claims and Establishing Disputed Claims Reserve" (Motion) on the following grounds. The Eriksens, in support of objection, state:

1. Claimants' pleadings must be liberally construed. *Haines v. Kerner, 404 U.S. 519, 520 (1972).*[1] See also, *Erickson v. Pardus, 551 U.S. 89, 94 (2007).*

2. Further, "[l]awyers must be held to higher standards" than *pro se* parties. *In re Maurice, 69 F.3d 830 (7th Cir. 1995) at ¶16.*

### The Eriksens Claims against GMAC Mortgage, LLC

3. The Eriksens have filed valid and timely claims against Residential Capital, LLC ("RC") subsidiary GMAC Mortgage, LLC ("GMACM"), Claim Nos. 5573 and 5580.

---

[1] Since **Haines**, the Supreme Court has consistently held in its opinions that pro se litigants are to be afforded more liberal treatment than attorneys, and are not to be subjected to the same pleading and motion practices standards as attorneys. There is a broad requirements to insure that pro se litigants receive justice in our system in spite of grammatical mistakes, failure to cite proper legal authorities and confusion of legal theories. Each court must conduct, as Supreme Court Justice John Paul Stevens calls it, the **Haines test**, to insure justice in the fair administration of cases involving pro se litigants, The Eriksens are pro se litigants.

4. The Eriksens provided significant unrefuted evidence of said claims in their response (the "Response," ECF Doc. #5485) to the Debtor's Thirty-Sixth Omnibus Objection to Claims (Misclassified and Wrong Debtor Borrower Claims) (the "Objection," ECF Doc. #5138).

5. This Court granted Debtors Objection with the following stipulation: "Claim Nos. 5580 and 5573 are hereby REDESIGNATED and RECLASSIFIED as $1,000,000.00 unsecured claims against GMAC Mortgage, LLC. Nothing in this Order should be construed as a judgment on the merits of claim nos. 5580 and 5573, and the rights of all parties are preserved with respect to the newly designated claims." ("Order," ECF Doc. #6332). That Order was filed on January 22, 2014. The Debtors did not dispute any amount alleged to be owed to the Eriksens before this Order **and** have not disputed any amount alleged to be owed to the Eriksens after this Order.

6. On December 17, 2013, this Court confirmed the Second Amended Joint Chapter 11 Plan ("Plan") of RC and the Official Committee of Unsecured Creditors ("OCUC"). Under that Plan, the Eriksens are to receive 30¢ on the dollar or $300,000.00 for each Eriksen. That Plan provided RC, its successors or OCUC to dispute those amounts owed. This Court entered a reserve amount necessary to insure that valid claims like the Eriksens received their fair in consideration from the Debtor or its successors.

7. On June 2, 2014, the Debtors successors, RC Borrowers Claim Trust ("BCT") sought an order from this Court to estimate the disputed claims amounts and substantially reduce amounts held in reserve against disputed claims, pursuant to the Plan. Further, BCT states, "The Trust desires to make a distribution to the holders of

2

Allowed Borrower Claims but will be unable to do so unless the Court grants this Motion." (Motion, ¶3).

8. The Eriksens object to this Motion, as to them. The Eriksens base their objection on the fact that no dispute has been filed by RC or BCT or UCOC or other parties to their valid and timely claims against GMACM. To place the Eriksens in a disputed class at this point in the claims resolution process would severely prejudice them and their rights. Therefore, the Eriksens object to said Motion, as to them and their claims, Claim Nos. 5573 and 5580.

### Objections, and Basis for Each Objection

9. **OBJECTION #1**: BCT misrepresents the Eriksens claims, if said claims are included in the disputed claims class.

10. BCT states, "Most of the largest, most contentious Borrower Claims, held by the most tenacious Borrowers, remained unresolved...Most if not all of these claims should not be allowed and in many if not all cases are inflated to an astonishing degree...For example, Borrowers have filed Claims in the following amounts: $450,000,000; $100,000,000; $32,850,000; $26,500,000, etc." In the Michael J. Talarico Declaration ("Declaration"), the top 5 claims, in the aggregate, seek $631.8 million.

11. While the Eriksens understand the frustration of those who claimed such amounts, and that there may be a valid legal basis for said amounts claimed based on the egregious actions of those in the banking industry, they chose not to act in this manner, but presented relatively nominal amounts in comparison to the value of their home - $500,000.00+, and the emotional and other harms caused by GMACM's fraudulent and negligent actions against them.

3

12. That fraud did harm the Eriksens family, and cause them to lose their home and emotional health and stability. REriksen has been to the hospital several times as a result of said fraud and negligence, for both physical and emotional issues. REriksen has been medicated for 2+ years as a direct result of said acts by GMACM. The Eriksens daughters have also suffered, due to said fraud, psychologically. One has been placed in a care facility for extended time period, and medicated. Another was caught cutting herself. To minimize their harms by said lumping would be an egregious act.

13. BCT lumping of the Eriksens with others who have claimed extreme amounts is unfair to the Eriksens, and would severely prejudice them, for it does not accurately reflect what has been submitted to this Court. Further, BCT is seeking to place itself in an extreme negotiating position against the Eriksens by placing them in this class. BCT is essentially seeking to reduce the Eriksens claims from 30¢ on the dollar to 1¢ or 2¢ on the dollar, at the maximum. The Eriksens have already been presented a low ball offer by RC for settlement of their claims.

14. Pursuant to **Federal Rules of Bankruptcy Procedure ("FRBP") 9011**, BCT, its law firm, Polsinelli, P.C. ("Polsinelli"), and attorneys, Daniel J. Flanigan ("Flanigan") and Jason A Nagi ("Nagi"), should be sanctioned for making such an egregious misrepresentation of the facts, as to the Eriksens.

15. **OBJECTION #2**: BCT's Threatened Withholding of Payment to Claimants is an egregious violation of the Plan, and should not be allowed by this Court. Rather, it should be sanctioned under **FRBP 9011**.

16. This Court confirmed the Plan. The Plan guaranteed that the Eriksens would receive 30¢ on the dollar unless a valid dispute were raised by the Debtors. Based

4

on this understanding, the Eriksens accepted the Plan. The Eriksens were ready to move forward with their life and not be chained to long term litigation from a Debtor that acted in such an egregious fashion against so many Claimants. BCT would like this Court to forget RC's and GMACM's "Screw-Up" by rewriting the Plan through BCT's "True-Up". The Eriksens object to such a revision, as to them.

17. If the Eriksens are included in BCT's proposed True-Up, then it isn't really a True-Up but a "Cover-Up" of RC's Screw-Up. But, the Eriksens were harmed, and have provided significant evidence of said harms to this Court and to the Debtor. Further, the Eriksens claims are undisputed. No evidence has been provided demonstrating they are not entitled to the 30¢ on the dollar promised in the Plan.

18. BCT may have valid assertions as to come claimants, but not against the Eriksens. This Court should not allow the Eriksens to be held hostage by BCT's tactics.

19. **OBJECTION #3**: BCT's estimates do not accurately reflect the claims presented by the Eriksens. The Eriksens presented significant claims, supplemented those claims with further evidence of harms caused and further supplemented those claims with further evidence of harms in their Response.

20. RC's and BCT's estimates are based on claims that apparently present little to no evidence of amounts sought or claims that are ultra-inflated. The Eriksen claims are neither. Rather, the Eriksens take a Midwestern grassroots approach to those claims sought: the value of the home, $500,000.00+, plus $1,500,000.00 for those harms caused by GMACM's fraud and negligence. Under the Plan, the total amount the Eriksens receive is $600,000.00. Or, $500,000.00 for their home, plus $100,000.00 for other harms suffered. This is reasonable.

5

21. Unless a valid objection to the Eriksens claims is presented with evidence that is equal to or greater than the evidence provided by the Eriksen, the Eriksens should not be placed in the disputed claims class. To do so, would be inhumane, and cause further harms to the Eriksens.

22. Debtors like RC, and RC's successor, BCT, should not be allowed to profit from their Screw-Up. Further, the Eriksens claims should not be allowed by BCT's proposed Cover-Up of said Screw-Up. Finally, the True-Up is not an accurate reflection of the claims presented by the Eriksens. So, the True-Up isn't true, as to them. And, any estimates of the Eriksens claims based on said True-Up numbers would a flagrant misrepresentation of the Eriksen's claims.

23. **OBJECTION #4**: BCT's request is not necessary, as demonstrated by the Declaration. Exhibit 1. Essentially, BCT has lumped 597 claims together of varying categories. Once the top 5 claims are removed, the other claims are within the Plan limits, if BCT's own assumption are used. Specifically, 60 claims times an average claim amount of $893,000.00 is equal to $53,580,000, and 532 claims times an average claim amount of $264,000.00 is equal to $140,448,000.00, or a sum total of $194,028,000.00. Id. Now, taking into consideration BCT's assumption that 50% of said claims will be disallowed [BCT uses this number 14 times in its Motion], that equals $97,014,000.00. But, the Declaration's numbers do not appear to consider the reduction amount from the Plan of 30¢ on the dollar, or $29,104,200.00. This is well within the amount contained in the Plan. No valid need exists for BCT's request to revise the Plan to reduce the numbers at this stage of the claims process. This Court's prior procedures have been sufficient.

6

24. BCT's Motion appears to be nothing more than an attempt by BCT to use this Court's procedures to gain a bigger slice of the Debtor's pie for itself. Understandable, but hardly noble or necessary. BCT claims its efforts to help "the neediest of all creditors...is being thwarted." But, it is patently obvious this is a ploy and/or play on this Court's emotions. Rather, the neediest creditors were harmed by RC's Screw-Up, and RC's and BCT's Cover-Up. Now, BCT is seeking to use this Court's equitable power, with unclean hands, to do the same, again. As such, the Eriksens object to BCT's Motion on this basis.

25. **OBJECTION #5**: BCT is essentially seeking an extension of time to dispute claims, but is using this Motion as an opportunity to increase its bargaining power against Claimants. To do this, BCT has actively sought to mislead this Court by grouping Claimants together. BCT's purpose in grouping Claimants together is plainly obvious: to prejudice Claimants who's Claims could not be construed as extreme or inflated. See Objection #1. But, underlying said request predicated on said misrepresentation, is a second request, a request for more time to dispute claims that the bar date set in the Plan.

26. BCT, by dishonest means, has sought to gain an extension from this Court by placing any claims not resolved by its tactics, which are tantamount to extortion, into a disputed class, for the purpose of painting all Claimants with a broad brush stroke – "extreme", "contentious", "tenacious", "controversial", "hotly contested" and "absurdly inflated". That certainly is a lot of adjectives to describe the mild mannered Eriksen family's claims against GMACM – who fraudulently used the court system to essentially steal their home. The Eriksens should be furious, but instead have acted graciously toward GMACM by accepting the Plan. Now, the want

## LEGAL ARGUMENTS

27.  Until an answer [formal objection] is filed by the Debtors, or trustee, to the Eriksens claims; they should not be categorized as disputed nor should be placed in a disputed claims class. *Simmons v. Savell (In re Simmons, 765 F.2d 547 (5th Cir. 1985); Nortex Trading Corp. v Newfield, 311 F.2d 163 (2d Cir. 1962)*. No valid dispute exists between the Debtors and the Eriksens over the Plan.

28.  A confirmed plan of reorganization is effectively a contract between the parties and the terms of the plan describe their rights and obligations. *Ernst & Young LLP v. Baker O'Neal Holdings, Inc., 304 F.3d 753, 755 (7th Cir. 2002)*. "It is well established that a chapter 11 plan is a contract between the debtor and its creditors that is subject to the general rules governing the interpretation of contracts under the law of the state in which the plan was confirmed." Id. Pursuant to **11 U.S.C. § 1141(a)**, the effect of confirmation of a plan of reorganization is to bind all parties to the terms of the plan. *Corcstatcs Bank, N.A. v. Huls Am., Inc., 176 F.3d 187, 194 (3rd Cir. 1999)*.

29.  Further, confirmation of a plan has also been held to be "the equivalent of a final judgment in a civil litigation." *In re Rickel & Assocs:, 260 B.R. 673, 677 (Bankr. S.D.N.Y. 2001)*. As a general rule, the "confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings." *Sanders Confectionery Prods. Inc. v. Heller Fin. Inc.., 973 F.2d 474, 480 (6th Cir. 1993)*.

30.  As a general rule, a bankruptcy court's broad jurisdiction extends until the debtor's plan of reorganization has been confirmed. *In re Sunbrite Cleaners, Inc., 284 B.R. 336; 339-40 (N.D.N.Y. 2002)*. Post-confirmation bankruptcy court jurisdiction is generally limited to matters relating to plan implementation or execution. *In re Craig's Stores of Texas, Inc., 266 F.3d 388, 390 (5th Cir. 2001)*.

8

31. This Court is to enforce the Plan that was confirmed. But, BCT seeks to once against modify the contract through this Court's equitable powers, **11 USC 105(a)**. This would be inappropriate at this stage of the proceedings. It is time for BCT to Put-Up to fulfill the terms of the contract, i.e. Plan, and pay on the judgment. That is what the Eriksens want – payment.

32. New York's law, **UCC §2-209**, on contract revision, or modification, is as follows:

> (1) An agreement modifying a contract within this Article needs no consideration to be binding. (2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party. (3) The requirements of the statute of frauds section of this Article (Section 2--201) must be satisfied if the contract as modified is within its provisions. (4) Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) or (3) it can operate as a waiver. (5) A party who has made a waiver affecting an executory portion of the contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver.

33. The Eriksens accepted the Plan. The Debtor promised to pay them certain amounts under the Plan, 30¢ on the dollar. The Debtor was given a certain time period to seek allowance or disallowance of the Eriksens claims. The contract, i.e. Plan, was set. The Eriksens would be prejudice by the modification or reformation of that contract at this late point in the proceedings, especially after the Plan was confirmed.

34. Under New York contract law, BCT's modification, or reformation, of the Plan, at this point, may act as a waiver, or promissory estoppel, as to any claims that have not been disallowed, i.e. the Eriksens claims, if the Plan is reformed as requested by BCT. New York law on this point is established.

9

35. The Eriksens are in favor of keeping the Plan on track, keeping BCT on track, holding BCT to the terms of the Plan, and preventing modification or reformation of the Plan, whereby greater legal controversies would be created, thereby creating more legal issues and reducing the monies as a whole for everyone, for attorneys' fees

36. Therefore, the Eriksens object to the BCT's Motion.


Dated:   June 18, 2014                              Respectfully submitted:

                                                    Ron Eriksen


                                            By:     /s/Ron Eriksen
                                                    Defendant

Ron Eriksen
492 Asbury Dr.
Aurora, IL 60502

Dated:   June 18, 2014                              Respectfully submitted:

                                                    Julie Eriksen


                                            By:     /s/Julie Eriksen
                                                    Defendant

Julie Eriksen
492 Asbury Dr.
Aurora, IL 60502

# EXHIBIT 1



12-12020-mg    Doc 7036-2    Filed 06/02/14    Entered 06/02/14 18:32:09    Exhibit B -
Declaration of Michael J. Talarico    Pg 35 of 39

# Key Observations

**Borrower Claims Register Rationalization**

- Over 3,000 Borrower Claims were filed against the Debtors in their Chapter 11
- To date, over 2,200 Borrower Claims have been expunged through court ordered objections, settlements and withdrawals by the creditors
- All of the Class Action Borrower Claims have been resolved with some being paid outside of the Borrower Claims Trust (the Rothstein Class Action settlement has not been fully executed)
- 78 individual Borrower Claims have been allowed through negotiated settlements.
- The average amount of these allowed claims is approximately $28k. The Debtors average settlement in the recent period prior to its filing of Chapter 11 was a cash payment of $16.8k per borrower claim.
- The review of the claims register indicates that there are 49 unresolved claims that are duplicates of claims or amend claims already being considered in the analysis of the Borrower Claims Trust Disputed Claims Reserve. These claims have been disregarded in all Scenarios included in this presentation.
- There are 69 claims included on the Borrower Trust's Sixty-First Omnibus Objection where the response deadline has passed and the claimant failed to respond to the objection. These claims are excluded from the Borrower DCR.
- There are 597 claims that are part of the Disputed Claims Reserve, which are asserted by the claimants at approximately $826 million.
- The top five claims are asserted at an aggregate of $632 million; approximately 1% of the claims comprise over 75% of the asserted claims dollars. Two of these claims have been ordered expunged by the Bankruptcy Court, but the claimant has filed an appeal to this order. For conservatism, these claims have been included in the Disputed Claims Reserve calculation as part of the Claims Analyzed – Objections category; however the asserted amount has been modified to be the highest asserted amount of the claims in the Disputed Claims Reserve, when ignoring the 5 claims in excess of $10 million ($6.45 million).
- 65 of the Disputed Claims Reserve Claims have either already been identified for inclusion in a future objection. The average asserted amount for these claims is $10.5 million. When excluding the top 5 claims referenced above, the average asserted amount of the remaining 60 claims is $893k.
- 532 of the Disputed Claims Reserve Claims are still being analyzed by the Borrower Claims Trust for potential objection and/or settlement. The average asserted amount for these claims is $264k. Included in this population of Borrower DCR claims are 131 Convenience Class claims.

**Assumptions Employed**

- The analysis of the Borrower Claims Trust Disputed Claims Reserve uses the following assumptions to estimate the funds required to pay the allowed Borrower Claims and the estimated Borrower Claims at the Plan Recovery Rate:
- The percentage recovery applied to the estimated allowed claims is based on the recovery percentages for the Debtor Groups as set forth in the Debtors' Chapter 11 Plan. The recovery percentage at GMACM is 30.1%, at ETS is 100.0% and at RFC is 9.0%.
- Remaining Claims are further segregated into those that are asserted in excess of $100k (including wholly unliquidated) and those equal to or less than $100k.
- For those claims that are classified as Claims Analyzed - Objection, it is assumed that 50% of the objections will be sustained, even though ~97% of the claims included in prior objections have been ordered expunged.
- The estimated allowed claims were estimated using a variety of methodologies, including (1) 4x/3x pre-bankruptcy settlement amounts, which is used in the Scenario 1, (2) average allowed amount for resolved Individual Borrower Claims, which is used in Scenario 2, and (3) weighted-average percentage of allowed claims to asserted claims for resolved Individual Borrower Claims, which is used in Scenario 3. For claims asserted at amounts less than the estimation factors described above, the asserted amount is used as the estimate for the allowed amount.