# EXHIBIT

# F

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ALLY FINANCIAL, INC. | § | |
| RESIDENTIAL CAPITAL, LLC and | § | |
| GMAC MORTGAGE, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 4-12-CV-600 |
| v. | § | |
| | § | |
| PHILIP ROGER FLINN, II, | § | |
| RALPH ("RUSTY") CAVES, | § | |
| JOHN W. SANDSTROM and | § | |
| SANDSTROM ELECTRICAL COMPANY, | § | |
| Defendants. | § | |

## DEFENDANT PHILIP ROGER FLINN, II'S SECOND
## AMENDED ANSWER, COUNTER CLAIMS AND DECLARATORY JUDGMENT

Defendant Philip Roger Flinn, II, files this his second  amended answer to the Third

Amended Complaint of Plaintiffs Ally Financial, Inc., Residential Capital, LLC and GMAC

Mortgage, LLC, files his Counterclaims and for Declaratory Judgment as follows:

## I. PARTIES

1.      Defendant is without sufficient information to admit or deny the allegations

contained in paragraph 1.

2.      Defendant Flinn denies all the allegations made in Paragraph 2 and asserts that when

ResCap moved out of One Meridian Crossings, Minneapolis, Minnesota 55423, it moved to Dallas,

Texas at 2911 Haskell, Dallas, Texas where a number of employees are located along with

significant assets.

---

**FLINN'S SECOND AMENDED ANSWER, PAGE 1**
Z:\12-1302\Docs\Answer\Answer2v15.wpd

3.      Defendant denies that the principal place of business of GMAC Mortgage Group, LLC, the sole member of ResCap, is 3993 Howard Hughes Parkway, Suite 250, Las Vegas, Nevada 89169 because it is the same address as Wilmington Trust, an unrelated company.

4.      Defendant admits the allegations in Paragraph 4.

5.      Defendant is without sufficient information to admit or deny the allegations contained in paragraph 5.

6.      Defendant is without sufficient information to admit or deny the allegations contained in paragraph 6.

7.      Defendant is without sufficient information to admit or deny the allegations contained in paragraph 7.

## II.    JURISDICTION AND VENUE

8.      On information and belief, Defendant denies that this Court has proper subject-matter jurisdiction.

9.      Defendant denies the allegation that the Defendant may defend actions initiated by the debtor without need for relief from the stay.  In fact beginning in November, 2012, the parties began negotiating on a stipulation to lift the stay.  The stipulated Motion and Order was approved by Judge Martin Glenn, Bankruptcy Court of the Southern District of New York dated May 14, 2013 that permitted Defendant Flinn to file counter-claims as an unsecured creditor of ResCap and GMAC in this action.

10.     The Defendant admits that this Court has personal jurisdiction over Flinn because he is a resident of Texas. Defendant is without sufficient information to admit or deny the remaining allegations contained in Paragraph 10.

11.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11 of the Complaint and, therefore, denies the same.

## III.   FACTUAL ALLEGATIONS

12.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12 of the Complaint and, therefore, denies the same.

13.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13 of the Complaint and, therefore, denies the same.

14.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14 of the Complaint and, therefore, denies the same.

15.      Defendant denies the allegations of Paragraph 15.

16.     Defendant denies the allegations of Paragraph 16.

17.     The allegations contained in Paragraph 17 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies that he engaged in a kickback scheme or misappropriation of goods and services invoiced to the Lewisville Data center. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 17.

18.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18 of the Complaint.

19.     Defendant denies that "Flinn and Sandstrom often go hunting and fishing together,"
Defendant denies that Defendant used his employee discount to obtain a Cadillac for Sandstrom's
wife, and Defendant denies that he is currently three years into building a house on the land sold to
him by Sandstrom as alleged in Paragraph 19 of the Complaint.  Defendant denies that Flinn and
Sandstrom own a twin engine plane together as alleged in Paragraph 19 of the Complaint.

20.     Defendant denies that "Flinn has directed Caves to approve all of these invoices for
payment."  Defendant is without knowledge or information sufficient to form a belief as to the truth
of the remaining allegations of Paragraph 20 of the Complaint.

21.     The allegations contained in Paragraph 21 of the Complaint contain legal conclusions
to which no responsive pleading is required, but to the extent an answer may be required, Defendant
is without knowledge or information sufficient to form a belief as to the truth of the balance of the
vague allegations of Paragraph 21 of the Complaint.

22.     The allegations contained in Paragraph 22 of the Complaint contain legal conclusions
to which no responsive pleading is required, but to the extent an answer may be required, Defendant
denies the vague allegations of Paragraph 22 of the Complaint pertaining to Defendant Flinn.
Defendant Flinn  is without knowledge or information sufficient to form a belief as to the truth of
the balance of the vague allegations of Paragraph 22 of the Complaint.

23.     The allegations contained in Paragraph 23 of the Complaint contain legal conclusions
to which no responsive pleading is required, but to the extent an answer may be required, Defendant
is without knowledge or information sufficient to form a belief as to the truth of the vague
allegations of Paragraph 23 of the Complaint.

24.     The allegations contained in Paragraph 24 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations of Paragraph 24 as such allegations pertain to Defendant Flinn. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining vague allegations of Paragraph 24 of the Complaint.

25.     Defendant denies the vague allegations contained in Paragraph 25 as such allegations pertain to him. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining vague allegations of Paragraph 25 of the Complaint.

26.     Defendant denies that he "worked [with Caves] together to circumvent the expense reporting policy." Defendant denies that "similar schemes were used to purchase computer equipment and building expenses." Defendant is without knowledge or information sufficient to form a belief as to the truth of the vague remaining allegations of Paragraph 26 of the Complaint.

27.     Defendant denies the vague allegations of Paragraph 27 as such allegations pertain to Defendant Flinn. Defendant is without information sufficient to form a belief as to the truth of the vague remaining allegations of Paragraph 27 of the Complaint.

28.     Defendant Flinn denies the vague allegations of Paragraph 28, as it pertains to Defendant Flinn. Defendant Flinn is without knowledge or information sufficient to form a belief as to the truth of the balance of the vague allegations of Paragraph 28 of the Complaint.

29.     Defendant denies the vague allegations of Paragraph 29 as it pertains to Defendant Flinn. Defendant Flinn is without knowledge or information sufficient to form a belief as to the truth of the remaining vague allegations of Paragraph 29 of the Complaint.

---

## IV.   CAUSES OF ACTION

30.     The allegations contained in Paragraph 30 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 30 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

31.     The allegations contained in Paragraph 31 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 31 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

32.     The allegations contained in Paragraph 32 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 32 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

33.     The allegations contained in Paragraph 33 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 33 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

34.     The allegations contained in Paragraph 34 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 34 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

35.     The allegations contained in Paragraph 35 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 35 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

36.     The allegations contained in Paragraph 36 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 36 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

37.     The allegations contained in Paragraph 37 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 37 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

38.     The allegations contained in Paragraph 38 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 38 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

39.     The allegations contained in Paragraph 39 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 39 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

40.      The allegations contained in Paragraph 40 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 40 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

41.      The allegations contained in Paragraph 41 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 41 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

42.      The allegations contained in Paragraph 42 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 42 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

43.      The allegations contained in Paragraph 43 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 43 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

44.      The allegations contained in Paragraph 44 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 44 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

45.     The allegations contained in Paragraph 45 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 45 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

46.     The allegations contained in Paragraph 46 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 46 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

47.     The allegations contained in Paragraph 47 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 47 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

48.     The allegations contained in Paragraph 48 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 48 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

49.     The allegations contained in Paragraph 49 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 49 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

50.    The allegations contained in Paragraph 50 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 50 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

51.    The allegations contained in Paragraph 51 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 51 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

52.    The allegations contained in Paragraph 52 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 52 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

53.    The allegations contained in Paragraph 53 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 53 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

54.    The allegations contained in Paragraph 54 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 54 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

55.     The allegations contained in Paragraph 55 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 55 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

56.     The allegations contained in Paragraph 56 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 56 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

57.     The allegations contained in Paragraph 57 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 57 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

58.     The allegations contained in Paragraph 58 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 58 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

59.     The allegations contained in Paragraph 59 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 59 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

60.     The allegations contained in Paragraph 60 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 60 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

61.     The allegations contained in Paragraph 61 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 61 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

62.     The allegations contained in Paragraph 62 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 62 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

63.     The allegations contained in Paragraph 63 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 63 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

64.     The allegations contained in Paragraph 64 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 64 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

65.     The allegations contained in Paragraph 65 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 65 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

66.     The allegations contained in Paragraph 66 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 66 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

67.     The allegations contained in Paragraph 67 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 67 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

68.     The allegations contained in Paragraph 68 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 68 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

69.     The allegations contained in Paragraph 69 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 69 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

70.     The allegations contained in Paragraph 70 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 70 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

71.     The allegations contained in Paragraph 71 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 71 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

72.     The allegations contained in Paragraph 72 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 72 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

73.     The allegations contained in Paragraph 73 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 73 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

74.     The allegations contained in Paragraph 74 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 74 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

75.     The allegations contained in Paragraph 75 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 75 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

76.     The allegations contained in Paragraph 76 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 76 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

77.     The allegations contained in Paragraph 77 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 77 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

78.     The allegations contained in Paragraph 78 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 78 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

79.     The allegations contained in Paragraph 79 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 79 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

80.     The allegations contained in Paragraph 80 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 80 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

81.     The allegations contained in Paragraph 81 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 81 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

82.     The allegations contained in Paragraph 82 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 82 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

83.     The allegations contained in Paragraph 83 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 83 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

84.     The allegations contained in Paragraph 84 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 84 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

85. The allegations contained in Paragraph 85 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 85 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

86. The allegations contained in Paragraph 86 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 86 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

87. The allegations contained in Paragraph 87 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 87 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

88. The allegations contained in Paragraph 88 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 88 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

89. The allegations contained in Paragraph 89 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 89 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

90.     The allegations contained in Paragraph 90 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 90 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

91.     The allegations contained in Paragraph 91 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 91 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

92.     The allegations contained in Paragraph 92 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 92 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

93.     The allegations contained in Paragraph 93 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 93 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

94.     The allegations contained in Paragraph 94 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 94 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

95.     The allegations contained in Paragraph 95 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 95 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

96.     The allegations contained in Paragraph 96 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 96 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

97.     The allegations contained in Paragraph 97 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 97 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

98.     The allegations contained in Paragraph 98 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 98 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

99.     The allegations contained in Paragraph 99 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 99 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

100.    The allegations contained in Paragraph 100 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 100 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

101.    The allegations contained in Paragraph 101 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 101 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

102.    The allegations contained in Paragraph 102 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 102 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

103.    The allegations contained in Paragraph 103 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 103 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

104.    The allegations contained in Paragraph 104 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 104 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

105.     The allegations contained in Paragraph 105 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 105 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

106.     The allegations contained in Paragraph 106 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 106 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

107.     The allegations contained in Paragraph 107 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 107 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

108.     The allegations contained in Paragraph 108 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 108 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

109.     The allegations contained in Paragraph 109 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 109 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

110.    The allegations contained in Paragraph 110 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 110 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

111.    The allegations contained in Paragraph 111 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 111 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

112.    The allegations contained in Paragraph 112 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 112 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

113.    The allegations contained in Paragraph 113 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 113 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

114.    The allegations contained in Paragraph 114 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 114 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

115.    The allegations contained in Paragraph 115 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 115 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

116.    The allegations contained in Paragraph 116 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 116 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

117.    The allegations contained in Paragraph 117 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 117 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

118.    The allegations contained in Paragraph 118 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 118 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

119.    The allegations contained in Paragraph 119 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 119 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

120.    The allegations contained in Paragraph 120 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 120 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

121.    The allegations contained in Paragraph 121 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 121 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

122.    The allegations contained in Paragraph 122 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 122 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

123.    The allegations contained in Paragraph 123 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 123 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

124.    The allegations contained in Paragraph 124 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 124 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

125.     The allegations contained in Paragraph 125 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 125 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

126.     The allegations contained in Paragraph 126 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 126 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

127.     No response is required.

128.     No response is required.

129.     No response is required.

130.     The allegations contained in Paragraph 130 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 130 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

131.     No response is required.

132.     No response is required.

133.     No response is required.

134.     The allegations contained in Paragraph 134 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be

---

required, Defendant denies the allegations contained in Paragraph 134 of the Complaint and puts
Plaintiffs to the strict proof of all matters alleged therein.

135.   No response is required.

136.   The allegations contained in Paragraph 136 of the Complaint contain legal
conclusions to which no responsive pleading is required, but to the extent an answer may be
required, Defendant denies the allegations contained in Paragraph 136 of the Complaint and puts
Plaintiffs to the strict proof of all matters alleged therein.

137.   The allegations contained in Paragraph 137 of the Complaint contain legal
conclusions to which no responsive pleading is required, but to the extent an answer may be
required, Defendant denies the allegations contained in Paragraph 137 of the Complaint and puts
Plaintiffs to the strict proof of all matters alleged therein.

138.   The allegations contained in Paragraph 138 of the Complaint contain legal
conclusions to which no responsive pleading is required, but to the extent an answer may be
required, Defendant denies the allegations contained in Paragraph 138 of the Complaint and puts
Plaintiffs to the strict proof of all matters alleged therein.

139.   The allegations contained in Paragraph 139 of the Complaint contain legal
conclusions to which no responsive pleading is required, but to the extent an answer may be
required, Defendant denies the allegations contained in Paragraph 139 of the Complaint and puts
Plaintiffs to the strict proof of all matters alleged therein.

140.   The allegations contained in Paragraph 140 of the Complaint contain legal
conclusions to which no responsive pleading is required, but to the extent an answer may be

required, Defendant denies the allegations contained in Paragraph 140 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

141.     The allegations contained in Paragraph 141 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 141 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

142.     The allegations contained in Paragraph 142 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 142 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

143.     The allegations contained in Paragraph 143 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 143 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

144.     The allegations contained in Paragraph 144 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 144 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

145.     The allegations contained in Paragraph 145 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be

required, Defendant denies the allegations contained in Paragraph 145 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

146.    The allegations contained in Paragraph 146 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 146 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

147.    The allegations contained in Paragraph 147 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 147 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

148.    The allegations contained in Paragraph 148 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 148 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

149.    The allegations contained in Paragraph 149 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 149 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

150.    The allegations contained in Paragraph 150 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be

required, Defendant denies the allegations contained in Paragraph 150 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

151. The allegations contained in Paragraph 151 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 151 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

152. The allegations contained in Paragraph 152 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 152 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

153. The allegations contained in Paragraph 153 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 153 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

154. The allegations contained in Paragraph 154 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 154 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

155. The allegations contained in Paragraph 155 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be

required, Defendant denies the allegations contained in Paragraph 155 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

156.    The allegations contained in Paragraph 156 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 156 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

157.    The allegations contained in Paragraph 157 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 157 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

158.    The allegations contained in Paragraph 158 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 158 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

159.    The allegations contained in Paragraph 159 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 159 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

160.    The allegations contained in Paragraph 160 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be

required, Defendant denies the allegations contained in Paragraph 160 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

161.    The allegations contained in Paragraph 161 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 161 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

162.    The allegations contained in Paragraph 162 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 162 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

163.    The allegations contained in Paragraph 163 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 163 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

164.    The allegations contained in Paragraph 164 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 164 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

165.    The allegations contained in Paragraph 165 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be

required, Defendant denies the allegations contained in Paragraph 165 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

166.    The allegations contained in Paragraph 166 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 166 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

167.    The allegations contained in Paragraph 167 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 167 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

168.    The allegations contained in Paragraph 168 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 168 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

169.    The allegations contained in Paragraph 169 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 169 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

170.    The allegations contained in Paragraph 170 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be

required, Defendant denies the allegations contained in Paragraph 170 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

171.     The allegations contained in Paragraph 171 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 171 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

172.     The allegations contained in Paragraph 172 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 172 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

173.     The allegations contained in Paragraph 173 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 173 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

174.     The allegations contained in Paragraph 174 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 174 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

175.     The allegations contained in Paragraph 175 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be

required, Defendant denies the allegations contained in Paragraph 175 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

176.     The allegations contained in Paragraph 176 of the Complaint contain legal conclusions to which no responsive pleading is required, but to the extent an answer may be required, Defendant denies the allegations contained in Paragraph 176 of the Complaint and puts Plaintiffs to the strict proof of all matters alleged therein.

177.     No response is required to Paragraph 177, entitled "PRAYER FOR RELIEF."

## V.     **AFFIRMATIVE DEFENSES**

**FIRST DEFENSE - FAILURE TO STATE A CLAIM**

178.     Plaintiffs' causes of action against Defendants are barred, either in whole or in part, because they have failed to state a claim upon which relief can be granted.

179.     Plaintiffs' causes of action against Defendants are barred, either in whole or in part, because they have failed to plead with particularity required by Fed. R. Civ. P. 9(b).

180.     Plaintiffs' causes of action against Defendants are barred, either in whole or in part, because they have failed to plead all of the elements with respect to one or more of their causes of action.

**SECOND DEFENSE - RESPONDEAT SUPERIOR**

181.     Due to the conduct of their agents, employees, directors and managers, Plaintiffs are liable for their own alleged damages under the theory of respondeat superior for the acts, representations and misrepresentations committed by their employees, directors and managers.

**THIRD DEFENSE - RELEASE BY ALLY FINANCIAL, INC.**

182.     Ally's Complaint is barred in whole by Ally's release of all causes of action, including fraud, against the employees of ResCap and GMAC, including Defendant Flinn.

## FOURTH DEFENSE - FAILURE TO MITIGATE/CONTRIBUTION

183.     The Plaintiffs are barred from any recovery from Defendants, in whole or in part, due to Plaintiffs' failure to mitigate their alleged damages and their contribution to their own alleged damages.

## FIFTH DEFENSE - STATUTE OF LIMITATIONS

184.     The Plaintiffs' Complaint is barred, in whole or in part, by the applicable statute of limitations.

## SIXTH DEFENSE - CREDIT/OFFSET

185.     Any recovery by Plaintiffs must be offset against amounts owed to Defendants.

## SEVENTH DEFENSE - FAILURE TO STATE AMOUNT OF DAMAGES SOUGHT

186.     Plaintiffs' Third Amended Complaint fails to state the amount of damages sought pursuant to Fed. Rule of Civ. P. 12(e).

## EIGHTH DEFENSE - DEFENSE OF LACHES

187.     The Plaintiffs' Complaint is barred, in whole or in part, by laches.

## NINTH DEFENSE - DEFENSE OF STATUTE OF FRAUDS

188.     The Plaintiffs' Complaint is barred, in whole or in part, by the applicable statute of frauds.

## TENTH DEFENSE - DEFENSE OF EQUITY AND GOOD CONSCIENCE

189.     The Plaintiffs are not entitled to recover in equity and good conscience.

**ELEVENTH DEFENSE - DEFENSE OF EMPLOYEE AT WILL**

190.    The Plaintiffs' Complaint is barred, in whole or in part, by the Defendant's employee

at will status.

**TWELFTH DEFENSE–CORPORATE AGENTS**

191.    The Plaintiffs' Complaint is barred, in whole or in part, by the participation of their

Plaintiffs' agents in corporate action.

**THIRTEENTH DEFENSE–CONTRACT REMEDIES**

192.    The Plaintiffs' recovery from its former employees for fraud or conspiracy is barred,

in whole or in part, by breach of contract remedies.

**FOURTEENTH DEFENSE–LACK OF STANDING**

193.     Plaintiffs' Complaint is barred in whole or in part, when  the Lewisville Data Center

was sold in its entirety.

**FIFTEENTH DEFENSE–SOLE PROXIMATE CAUSE**

194.    Plaintiffs' Complaint is barred, either in whole or in part, by the affirmative defense

of sole proximate cause.

**SIXTEENTH DEFENSE - ESTOPPEL**

195.    Plaintiffs' Complaint and recovery of damages is barred, either in whole or in part

by estoppel.

**SEVENTEENTH DEFENSE - CONTRIBUTORY NEGLIGENCE AND PROPORTIONATE**

**RESPONSIBILITY**

196.    Plaintiffs' Complaint is barred in whole or in part by the affirmative defense of contributory negligence and proportionate responsibility.

**EIGHTEENTH DEFENSE - HARASSMENT**

197.    Plaintiffs' Complaint is barred in whole or in part based upon claims not recognized by Texas law and are thus baseless and constitute harassment because such claims were not brought in good faith.

**NINETEENTH DEFENSE–LACK OF KNOWLEDGE OF CAVES' CONTRACT**

198.    Plaintiffs' Complaint of tortious interference with a contract is barred in whole or in part because neither Flinn nor Flinn's counsel knew or should have known that Defendant Caves had entered into an agreement with Plaintiffs with respect to his statements in consideration of receiving compensation.

**TWENTIETH DEFENSE– ATTORNEYS' ETHICAL OBLIGATION TO RECOMMEND THAT CAVES SEEK COUNSEL**

199.    Plaintiffs' Complaint is barred in whole or in part because Flinn advised Caves to seek legal counsel as did Flinn's counsel in discharge of her ethical duty (which duty also bound Plaintiffs' counsel).

**TWENTY-FIRST DEFENSE– PLAINTIFFS' CONTRACT WITH CAVES WAS AN ILLEGAL CONTRACT AND/OR AGAINST PUBLIC POLICY**

200.    Plaintiffs Complaint is barred in whole or in part because the contract between Caves and Plaintiffs to purchase Caves' testimony against Flinn is an illegal contract and/or against public policy.

---

**TWENTY-SECOND DEFENSE– PLAINTIFFS' USE OF INTIMIDATION TO CORRUPTLY INFLUENCES WITNESS TESTIMONY**

201.    Plaintiffs' Complaint is barred in whole or in part because of intimidation and influence of the testimony of key witnesses.

**TWENTY-THIRD DEFENSE– SPOILIATION**

202.    Plaintiffs' Complaint is barred in whole or in part because evidence that would exonerate Defendant Flinn has been deliberately destroyed.

**TWENTY-FOURTH DEFENSE–BAILMENT**

203.    Plaintiffs' Complaint is barred in whole or in part by the defense of bailment.

**TWENTY-FIFTH DEFENSE–JUSTIFICATION**

204.    Plaintiffs' Complaint is barred in whole or in part by the defense of justification.

**TWENTY-SIXTH DEFENSE–WAIVER**

205.    Plaintiffs' Complaint is barred in whole or in part by the defense of  waiver.

**TWENTY-SEVENTH DEFENSE–ACCEPTANCE OF BENEFITS**

206.    Plaintiffs' Complaint is barred in whole or in part by the defense of acceptance of benefits.

**TWENTY-SEVENTH DEFENSE–ACCEPTANCE OF BENEFITS**

207.    Plaintiffs' Complaint is barred in whole or in part by unjust enrichment.

**TRIAL BY JURY**

208.    Defendant requests a trial by jury in this case on all issues so triable.

**RESERVATION OF RIGHTS**

209.    Defendant reserves the right to assert any additional Affirmative Defenses that may
be discovered during the course of additional investigation and discovery.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that Plaintiffs take nothing
and that Defendant recover costs, fees and expenses and for such other and further relief to which
he may be justly entitled, both in law and in equity.

## COUNTERCLAIMS AGAINST ALLY FINANCIAL, INC., GMAC RESIDENTIAL, LLC AND RESIDENTIAL CAPITAL, LLC

Defendant/Counterplaintiff Philip Roger Flinn, II ("Flinn") files these Counterclaims against
Ally Financial, Inc. ("Ally"), GMAC Residential, Inc. ("GMAC") and Residential Capital, LLC
("ResCap").  Ally, GMAC and ResCap are also referred to collectively as "Counterdefendants" and
individually as "Counterdefendant."

### I.    PARTIES

210.    Ally is a Delaware corporation doing business in Texas.  On information and belief,
the United States Treasury owns 73.8% of Ally.

211.    GMAC is a Delaware Limited Liability Corporation doing business in Texas.

212.    ResCap is a Delaware Limited Liability Corporation doing business in Texas.

### II.    JURISDICTION

213.    Flinn, Counterclaim Plaintiff,  respectfully alleges, based on the facts as alleged in
Ally's Third Amended Complaint that this Court has jurisdiction over these Counterclaims involving
Plaintiffs.  The amount in controversy, based upon the allegations in the Complaint answered above,
exceeds $75,000.00.

---

**FLINN'S SECOND AMENDED ANSWER, PAGE 39**
Z:\12-1302\Docs\Answer\Answer2v15.wpd

### III.    FACTUAL BASIS

214.    Flinn was an employee of GMAC who was treated also as an employee of ResCap. Flinn was an architect of the Lewisville Data Center at the outset in 2001. GMAC benefitted from Flinn's IT business contacts that he had developed during his prior ten years employment with AT&T. On or about 2007 as an accommodation to GMAC/ResCap when the position could not be filled, Flinn, who was then a networking operations manager, accepted the position of data center operations manager of two data centers located in Lewisville, Texas and Eden Prairie, Minnesota as well as some 30 other facilities of the Counterdefendants. Flinn enjoyed a national reputation through his involvement with the 24/7 Club and the Up-Time Institute where he secured awards for the Lewisville Data Center's continuous up time (and no unplanned down time) of the on line data operations. Flinn's primary job was maintaining uninterruptible power supply ("UPS") to the industrial data center, which is critically important. In the event of a power outage Flinn supervised the operation of back up generators. If the generators failed (or ran out of fuel), Counterplaintiffs would suffer a financial catastrophe, especially in the case of Ally Bank, an internet bank. Over the years Counterdefendants' managers and employees submitted glowing references to Flinn's Linked-In account referencing Flinn's knowledge, experience, vendor relations, and attention to cost savings and efficiencies. Flinn's boss at GMAC, David Face, highly recommended Flinn, as did a director of Fannie Mae and Freddie Mac and many others who joined Flinn's Linked-In account. Flinn's employment reviews were acceptable and contained notations such as "there were no audit deficiencies."

---

215.     Ally placed its indirect subsidiaries, GMAC and ResCap into bankruptcy on or about

May 14, 2012.   As part of the bankruptcy, Ally entered into a release agreement with ResCap and

GMAC that expressly fully released the agents and employees of ResCap and GMAC from all causes

of action, known and unknown, including fraud ("Release Agreement").

216.     A mere four months later, in breach of the Release Agreement, Ally sued

Counterplaintiff Flinn and caused its indirect subsidiaries, ResCap and GMAC to join in the lawsuit,

a mere month before the Court approved sale of the  Lewisville Data Center and the Eden Prairie

Data Center at auction that divested ResCap and GMAC of their interest in the data centers.

217.     On or about August 30, 2012, Flinn was abruptly placed on paid administrative leave

by Ally's human resources employee.  This occurred the same day that  several Ally investigators

traveled to the Lewisville Data Center on the very day that Flinn returned from a business trip to

GMAC/ResCap's Fort Washington office.

218.     After a brief interview with Flinn in which Ally's lead investigator refused to discuss

details of accusations against Sandstrom Electrical, and told Flinn "we know about the night vision

cameras," an armed security agent followed Flinn home to collect Flinn's work computer.  When

Flinn approached the agent's vehicle with the computer, the guard brandished his gun.

219.     Flinn has learned that Plaintiffs removed the two regular security guards  from the

Lewisville data center on August 30, 2012 and replaced them with different guards plus additional

security guards who were positioned at each exit to protect the Lewisville Data Center from the

physical threat posed by Flinn.

---

220.    Flinn has learned that one of the two regular security guards, a single attractive young woman, was permanently removed from Ally facilities because the Ally's lead investigator believed that her to be having a sexual relationship with Flinn.  This information was disseminated among the contractors and employees at the Lewisville Data Center.

221.    Flinn has learned that on or about October 29, 2012, another female, a former employee was contacted by Ally's investigator.  In the  letter that the former employee emailed to Flinn, she wrote that Flinn was "stealing from the company to boost your financial gain yet trying to 'destroy' other peoples lives."  The former employee demanded that Flinn never contact her again, and that if he did so, she would take legal action.  Flinn had scheduled a job interview with her company for three hours for the following week prior to the receipt of the letter.  Flinn did not receive a job offer.

222.    On or about September 13, 2012, at a meeting with Ally's lawyers, William Davis and Talley Parker and a representative of Ally's Global Security department, the representative greeted Flinn by shouting that Flinn had stolen "five night vision cameras."  It quickly became clear that the sole purpose of the meeting was to wring a confession out of Flinn.

223.    The day following the meeting with Flinn, Ally terminated Flinn's employment for accessing the corporate network with his personal device.

224.    Prior to Flinn's termination, Ally's CEO had announced a new policy of "bring your own device to work" in order to save  money.

225.    GMAC Mortgage Corporation of PA contested Flinn's unemployment compensation claim for Flinn's alleged accessing of  the company network.  On appeal, the Texas Workforce

Commission ruled in Flinn's favor, but GMAC Corporation of PA has requested a rehearing causing the proceeding to drag out more than a year.

226.    Flinn accessed his email through the company website using his user name and password which was not a violation of the acceptable use policy.   At Flinn's hearing with the Texas Workforce commission, Ally's human resources employee stated that persons who violated Ally's acceptable use policy were not usually terminated but instead were simply admonished.  Ally singled Flinn out for disparate treatment.

227.    Counterdefendants sued Flinn for breach of their acceptable use policy and other policies and have alleged that Flinn was conferred with fiduciary duties (by such policies) towards Counterdefendants.

228.    Upon information and belief, Flinn believes that he was terminated in retaliation for reporting  a violation of Ally's policy and banking laws protecting confidential information of bank customers and mortgage information, including account numbers and social security numbers. When Counterdefendants' management decided to leave an unprotected file server containing such confidential information  under a desk instead of following Flinn's recommendations to move the server to a secure facility, Flinn went directly to the Chief Financial Officer to report the violation. Another employee who was involved in the incident was fired.

229.    Flinn was accused of wrongfully installing a DSL line in his office in violation of Ally's policy.

230.    Flinn was accused of violating Ally's policy stating that the most senior  person should file to reimburse a meal where employees participated, when the general practice was for the

second most senior member to file for reimbursement.   Again Flinn was  singled out for disparate

treatment.

231.   Flinn was  accused of improperly badging Sandstrom Electrical Company to access

the Lewisville Data Center.

232.   Counterdefendants failed to follow their own policies that required committee

oversight of critical vendors like Sandstrom Electrical Company.  Instead Flinn was blamed for such

failure.

233.   Flinn was accused of approving subordinate employees' fraudulent expense reports

even though it was his job to approve employee expense reports.

234.   Flinn was accused of securing kickbacks from vendors of the Lewisville data center

when he purchased goods and services from them.

235.   Flinn has learned that the CCTV footage that could have exonerated him of

Defendants' complaints was destroyed by Defendants.

236.   Counterdefendants have submitted tampered emails that were sent in 2012 that are

being maintained on Ocwen's email server instead of GMAC's email server despite open court

assurances of data protection during the separation and transfer of Ally's data.

237.   Flinn's relationships with individuals with whom he was well acquainted for many

years were damaged when those acquaintances learned about the allegations of this case through the

widespread communications made by Counterdefendants.

238.   Counterdefendants initiated a series of phone calls and emails to Venture

Mechanical, Inc. ("Venture") demanding records and detailed explanations with respect to how

---

Venture had determined the amount to charge Flinn for an air conditioner that he purchased, whether there was some sort of discount, and the fair market value of the labor and materials expended. Such matters were private. After Venture voluntarily submitted its records to Counterdefendants, Counterdefendants then subpoenaed those same records expressly including all personal transactions of the Defendants. Counterdefendants have produced no records showing that they were billed for Flinn's air conditioner.

239. Counterdefendants also demanded that Liebert Corporation ("Liebert") provide records and other information about Venture, an occasional subcontractor of Liebert, Flinn , and work done at Flinn's ranch house. Liebert's counsel was compelled by Counterdefendants to conduct a thorough internal investigation of Venture, "professional gratuities," Flinn and work done at Flinn's ranch house. Liebert's attorney reported that no invoice for work done at Flinn's ranch house had been billed to Counterdefendants.

240. Prior to this lawsuit Flinn was on good terms with Liebert Corporation and had enjoyed a continuing business relationship with Liebert Corporation over a number of years. Flinn had a reasonable expectation that in the event he would ever leave his employment, his prospects for a future employment contract were excellent since Liebert Corporation is a large international company. Because of the way in which Ally's agent investigated Flinn, and the insistence on Liebert's help in such investigation, Flinn's future business contracts and relationships with Liebert were wholly or partly destroyed.

241. Prior to this lawsuit, Flinn was also on good terms Graybar, a wholesale resaler of electrical parts who supplies data centers, and is/was a vendor of Counterdefendants. Graybar was

---

an important vendor of the Lewisville Data Center. Graybar also serves the public. Graybar permits individuals who are not corporations to purchase materials that are on hand and are collected at the "will call" desk as a "miscellaneous" purchase. Counterplaintiff Flinn, acting as a private individual, made purchases from Graybar with his credit card. Flinn collected his purchases at the "will call" desk. Graybar elected to use the address of GMAC at the Lewisville Data Center for the packing slips. Flinn has learned that Graybar confirmed Flinn's purchases when Ally's investigator produced them. Counterdefendants insisted that Graybar conduct a search to locate all invoices of materials sold individually to Flinn and the other Defendants even though such a search would be overly burdensome. Counterdefendants refused to provide any dates, times or suspected invoices or transactions making such a search impossible or next to impossible. This contact damaged Flinn's future contracts with Graybar with respect to his future employment at data centers.

242. Counterdefendants falsely accused Flinn of diverting company assets to his ranch house.

243. Counterplaintiff Flnn has only recently learned that Ally allegedly began its investigation of Flinn on or about September 14, 2011, not August 9, 2012, as alleged. The investigation began as the result of an alleged "hotline" anonymous complaint that Flinn should be investigated for "kickbacks" and "hunting and fishing with vendors." Ally's lead investigator testified that all he did was contact someone at the Lewisville Data Center and close the case. Documents related to the report show that Ally began monitoring Flinn's work computer and it was forensically examined. The investigation was purportedly closed on February 1, 2012. Ally's investigator's report found "no evidence of inappropriate conduct."

---

**FLINN'S SECOND AMENDED ANSWER, PAGE 46**
Z:\12-1302\Docs\Answer\Answer2v15.wpd

244.     Both the original hotline complaint and Counterdefendants' original Complaint as amended contain the identical allegations about "kickbacks" and "hunting and fishing with vendors."

245.     Jackson/Lewis counsel announced in open court that litigation was not contemplated until September 7, 2012 so that any litigation hold would only take effect after all the documents exonerating Flinn had been destroyed. Jackson/Lewis concealed the alleged prior investigation. The summary of that report was not provided to Flinn until more than a year later.

246.     In violation of attorney ethics about not contacting individuals who are represented by counsel, Flinn received numerous voice mail messages from Jackson/Lewis's office requesting information about his relationship to the law firm. Counsel for Flinn was compelled to request Jackson/Lewis to cease and desist those contacts.

247.     At about the same time, Ally's lead investigator contacted Flinn directly on his Linked-in Account requesting that Flinn give him access to Flinn's account. It was necessary for Flinn to obtain a protective order preventing Counterdefendants' employees, and Ally's lead investigator from contacting Flinn. Notwithstanding the Court order, Ally employees continue to view Flinn's Linked-In account because of Counterdefendants' widespread communications about Flinn.

248.     Counterdefendants submitted in discovery the badge picture of a former security guard who had worked at the Lewisville Data Center. This guard made death threats against Flinn, and the lead investigator admitted to interviewing the security guard but omitted providing any notes about the interview. Viewing a page size blow up of the guard's badge photo, caused Flinn to be intimidated and in fear for his life.

---

249.     Counterdefendants influenced several employees to provide statements against Flinn. One of the witnesses is Defendant Caves who was promised health benefits and permitted to resign in return for statements accusing Flinn of misconduct.  After lengthy interrogations of Caves in the presence of Counterdefendants' counsel, Counterdefendants defaulted on an alleged contract with Caves and sued Defendant Caves for breach of contract.  Counterdefendants also alleged Flinn had interfered with the contract.

250.     Neither Counterdefendants nor Caves informed Flinn about the contract with Caves prior to Flinn's being accused of interfering with the contract.

251.     Counterdefendants influenced Caves to make misrepresentation about Flinn's conduct.

252.     Counterdefendants' second witness is a maintenance engineer of Peloton who was seen crying while leaving meetings with Ally's lead investigator.  It has been learned that the employee has complained that he was being followed by security agents of Counterdefendants.  In exchange for accusations of wrongdoing against Flinn and the other defendants, Peloton's employee who was interviewed for hours on numerous occasions obtained the following benefits:  (i) the employee was not terminated for theft, (ii) Peloton was not sued for fraud nor named as a conspirator nor designated as a responsible party in this lawsuit and (iii) no claims were made on Peloton's Master Service Agreement that expressly provided for compensation for losses and theft.

253.     Counterdefendants' summary report of the investigation contained notes that Peloton's employee had characterized Flinn as a member of a group similar to the Sovereign Citizen Movement (a terrorist group) that was structured like a white supremacy organization.

254.     Counterdefendants have characterized Flinn as a frightening individual.

255.     Ally's lead investigator represented to Liebert's employees that a reference letter submitted by Flinn in response to a request by Liebert's employee should be viewed as "threatening," even though Liebert's employees disputed that characterization.

256.     Ally's lead investigator represented that he represented a federal agency implying that he was a federal agent.

257.     Ally's lead investigator represented that it was his job to see that "everyone played by the rules."

258.     Ally's lead investigator compelled third party vendors to assist him in investigating Flinn's breaches of nonexistent corporate policies, such as a prohibition against making purchases from a vendor, and the investigator also required those vendors to turn over private transaction records relating to Flinn.

## IV.     TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
### (COUNT 1)

259.     Counterplaintiff Flinn incorporates and adopts by reference each and every allegation in Article III of these Counterclaims.

260.     Counterplaintiff Flinn had a business relationships with Peloton Real Estate Management Company, Venture Mechanical, Mechanical Partners, Liebert Corporation (a/k/a Emerson), Graybar and Rodick Electrical over a long period of time during Flinn's employment. Some of those relationships were developed from Flinn's prior experience with AT&T. Those relationships were strengthened by the various build-outs and improvements made to the Lewisville Data Center over the years. As a journeyman electrician, with many contacts in the IT world, Flinn

---

**FLINN'S SECOND AMENDED ANSWER, PAGE 49**

Z:\12-1302\Docs\Answer\Answer2v15.wpd

was well liked and respected by the vendors.  Flinn reasonably anticipated that from time to time there would be further contracts and employment opportunities with those vendors, such as Liebert Corporation.

261.    Counterdefendants Ally, GMAC and ResCap were well aware of Flinn's business relationships and accepted the benefits of those relationships.  When there were special projects, many managers would become involved in the approval process.  A number of managers previously held Flinn's position at the data center and worked with those same vendors and approved their invoices.  Thus, when Ally's lead investigator contacted the various vendors at the Lewisville data center about their alleged inappropriate dealings with Flinn and Flinn's ranch house, Counterdefendants knew that they were interfering with Flinn's prospective business contracts and relations  and Counterdefendants intended that result.

262.    Counterdefendant Ally made a conscious decision to interfere with Flinn's prospective relationship with vendors of the Lewisville Data Center.  This result was sought and not simply an "incidental" consequence of Ally's conduct.

263.    Since the vendors at the Lewisville data center all work in this highly specialized part of the information technology data center business, Counterdefendants' interference with Flinn's business relations has caused harm to Flinn's prospective business relationships and future employment contacts.

264.    In investigating Counterplaintiff Flinn, Ally's lead investigator entered into a campaign seeking to damage Flinn's prospective employment contract and business relations by making repeated contacts of vendors about vendor impropriety concerning Flinn and Flinn's ranch

house, required vendors to undertake internal investigations and demanded record production when those records (especially the material invoices and bids) were in the counterdefendants' possession and had been properly approved, performed and paid. Instead of seeking records not in Counterdefendant's possession without discussing Flinn or Flinn's ranch house, Counterdefendants insisted that the vendors to provide them with the vendor's records of Flinn's private transactions which they demanded over a lengthy time period which increased the burden on the vendors As an example, vendors, such as Graybar, who was unable to meet Counterdefendants' unreasonable demands, ran the risk of being sued by Counterdefendants.

265. Counterdefendants' communications to vendors, contractors and employees accusing Flinn (and indirectly, the vendors, including Sandstrom Electrical Company) of misappropriation and kickbacks, and their manner of investigating **lawful** purchases made by Flinn from vendors, such as Venture and Graybar, while alleging that the purpose was to investigate vendor improprieties involving Flinn, were independently tortious, and not simply unfair or unethical.

266. Counterdefendants' mischaracterized breaches of internal company policies as illegal activity by Flinn. When pressed by a Graybar employee, Ally's lead investigator stated that Flinn's actions in making purchases from Graybar were a violation of "regulations." When further pressed, Ally's lead investigator admitted that the "illegal" purchases were policy violations. Such statements were untrue because Ally policies do not prohibit employees from making purchases from vendors of the Counterdefendants. If there existed such a policy, then no employee of Counterdefendants could have an account with AT&T or Verizon. The misrepresentations of Flinn's personal transactions were deliberate and made to destroy Counterplaintiffs' future employment contracts.

---

**FLINN'S SECOND AMENDED ANSWER, PAGE 51**
Z:\12-1302\Docs\Answer\Answer2v15.wpd

267.     Counterplaintiff Flinn suffered prospective lost wages, injury to his reputation, mental anguish, damages as set out in Count 7 proximately caused by Counterdefendants' conduct.  Those damages include lost earnings, and attorneys fees as equitable damages.

268.     Because of Counterdefendants' interference with Flinn's business relations with the vendors at the Lewisville Data Center, Counterplaintiff suffered damages to his customary relationship with the Lewisville Data Center vendors that will negatively impact Flinn's future contracts if Flinn continues to work in the IT data center business where his prospective employers will have existing relationships with those same vendors.

269.     Counterplaintiff Flinn requests that the court find that Counterdefendants tortiously and intentionally interfered with Counterplaintiff's future business relationships (and continuing business relations) with vendors of Counterdefendants and that Counterplaintiff recover his damages as set out more fully in Count 7, including exemplary damages, postjudgment and prejudgment interest, court costs, lost earnings, mental anguish and injury to reputation and attorneys fees as part of Flinn's equitable damages.

## BREACH OF CONTRACT BY ALLY
## (COUNT 2)

270.     Counterplaintiff Flinn incorporates and adopts by reference each and every allegation in Article III of these Counterclaims.

271.     Counterdefendant Ally entered into an agreement dated on or about May 14, 2012 with GMAC and ResCap whereby Ally agreed to a global release of GMAC and ResCap's employees filed in Cause No. 12-12020-mg, *Residential Capital, LLC, et. al.* in the Bankruptcy Court in the Southern District of New York, Exhibit 8 (doc. 6-8) as follows:

---

"2.3   **_Ally Release._**   Subject to the Debtors' satisfaction of their obligations set forth in

Section 3.1, on the Effective Date of the Plan, Ally shall release the Debtors and each

of their respective members, officers, directors, agents, financial advisors, attorneys,

employees, partners, affiliates, and representatives and their respective properties

from any and all Causes of Action, whether known or unknown, whether for tort,

fraud, contract, violations of federal and state securities laws, or otherwise, arising

from or related in any way to the Debtors, including those that any Ally entity would

have been legally entitled to assert against any of the parties above in their own right

(whether individually or collectively), other than the Allowed Claims."

This Agreement is referred to herein as the "Release Agreement."   Counterplaintiff Flinn was an

employee of GMAC and ResCap, and was a third party beneficiary of the Release Agreement.

272.   The conditions precedent, if any, were complied with by GMAC and ResCap.

273.   A legal proceeding relating to the contract was instituted by Counterdefendant Ally

against Counterplaintiff Flinn, an employee of GMAC and/or ResCap.

274.   As an employee of GMAC and ResCap, Counterplaintiff Flinn is entitled to damages

proximately caused by Ally's breach of the Release Agreement as set out in Count 7.

275.   Counterplaintiff Flinn was represented by counsel.

276.   Counterplaintiff Flinn is entitled to attorneys fees.   Section 8.12 of the Release

Agreement expressly provides that in any action to enforce this Agreement, the prevailing Party shall

be entitled to payment of its reasonable costs and expenses (including reasonable attorneys fees).

The parties to the agreement agreed that claims for enforcement of the Agreement would not be released by any of the provisions contained in the agreement.

277. Attorneys fees were incurred by Counterplaintiff Flinn.

278. The attorneys fees incurred by Counterplaintiff Flinn were reasonable and necessary.

279. Counterplaintiff Flinn requests that the Court find that Counterdefendant Ally intentionally breached its agreement with ResCap and GMAC by suing their employee, Counterplaintiff Flinn as an employee of ResCap and its subsidiaries, that Ally attempted to insulate itself from any recovery of Counterdefendants by this cause, and that Flinn recover his actual damage proximately caused by Counterdefendant Ally's breach of contract, for mental anguish damages, prejudgment and postjudgment interest and Counterplaintiffs' reasonable attorneys fees and costs and Court costs as set out more fully in Count 7.

### DEFAMATION
### (COUNT 3)

280. Counterplaintiff Flinn incorporates and adopts by reference each and every allegation in Article III of these Counterclaims.

281. Counterplaintiff Flinn is a private person. The issues in this case are private matters.

282. The Counterdefendants published the following statements of fact:

(a) Counterdefendant Ally's lead investigator told an officer of Venture Mechanics, Inc. the following:

(1) that "there are rules to live by and make sure that everyone does the right thing." The company officer told the investigator that "Flinn did right." The investigator indicated that one transaction involving Flinn

---

was being investigated. The investigator read portions from Phil's deposition

(highlights) to the corporate officer who agreed with what Flinn had stated.

      (2)      that "Ally was a governmental entity and there were limits on

the amount of gifts that could be given to Ally." The investigator asked the

corporate officer what "professional courtesies" were given to Flinn.

The statements made to Venture's corporate officer imputed wrongdoing to Flinn. Any reasonable

person would have so concluded.

      283.      Counterdefendant Ally's investigator contacted Liebert Corporation's attorney and

in the presence of the attorney and other employees made the following statements and requests

and/or demands:

      (1)      that Liebert's employees be asked what they knew about

"professional gratuities" conferred upon Flinn and work done by Venture

Mechanical, Inc. at Flinn's ranch house."

      (2)      that Liebert Corporation review its invoices from Venture to

determine wether Venture, who sometimes performed services for Liebert as

a subcontractor, had submitted invoices to Liebert to forward for payment to

Ally so that it could be determined whether Ally had paid for the work done

at Flinn's ranch house.

The above statements imputed wrongdoing to Flinn and any reasonable person would have so

concluded.

      284.      Ally's investigator contacted an employee of Graybar and told him:

---

  (a)  Flinn was "under investigation."

  (b)  Ally's investigator told Graybar's employee that it was "illegal" for Flinn to make purchases from a vendor of Ally.

  (c)  Ally's investigator then stated that such purchases were "against regulations."

  (d)  Lastly Ally's investigator stated that such purchases were policy violations.

  (e)  Other individuals communicated to Graybar's employee that a vendor working at Flinn's ranch house had engaged in wrongdoing.

Ally's investigator could not explain to Graybar's employee why it would be wrongful for Graybar to do business with Flinn as a company open to the public.  The above statements clearly indicated that Flinn was being accused of wrongdoing by making legitimate purchases.  When Graybar could not readily provide the information that was subsequently demanded, it became necessary to conduct the next interview with the investigator in the presence of the corporate attorney.

  285.  Data center employees, contractors and possibly others were aware that Flinn was being accused of sexual misconduct with a young single security guard.

  286.  Flinn has learned that on or about October 29, 2012, another female, a former employee was contacted by Ally's investigator.  In the letter that the former employee emailed to Flinn, she wrote that Flinn was "stealing from the company to boost your financial gain."  The former employee demanded that Flinn never contact her again, and that if he did so, she would take

---

legal action. Flinn had scheduled a job interview with her company for three hours for the following week prior to the receipt of the letter. Flinn did not receive a job offer.

287. The statements made by Ally's investigator were made to third parties capable of understanding its defamatory import and in a manner that the third party understood. The statements left no doubt that Flinn was being accused of wrongdoing. Such statements were made on the basis of an alleged investigation even though what was being investigated were legitimate purchases by Counterplaintiff from companies like Graybar who served the general public. Counterdefendants failed to show why legitimate purchases were wrongful, and they knew that such imputation of wrongdoing was false.

288. Because of Defendants' allegation that Flinn misappropriated and diverted company property to himself, it is foreseeable that Flinn would be required to inform a new employer who learned of this suit of the reasons for his termination.

289. The statements were made by oral communication and by conduct, the repeated interviews and demands for records from local vendors of Flinn's personal, legitimate actions, including building a vacation home, which communication implied that Flinn's actions were wrongful.

290. The communications were published intentionally, and if negligently, where the counterdefendants' act created an unreasonable risk that the defamatory statement would be communicated to a third party, as these statements were.

291. The communications were published by Counterdefendants. Such statements were also published by the vendors to their employees and Counterdefendant's contractors because

---

Counterdefendants' actions created an unreasonable risk that the defamatory matter would be communicated to others.

292.    With regard to the truth of the statement the Counterdefendants were

(a)      Acting with actual malice,

(b)      negligent or

(c)      liable without regard to fault (strict liability); and

(d)      the Counterplaintiff suffered pecuniary injury.

293.    The deliberate and intentional disclosure of untrue statements to third parties was done with malice, because it was unnecessary and intimidating and harassing.

294.    Counterplaintiff is entitled to the presumption that the statements were false.

295.    Counterplaintiff suffered damages as set out in Count 7 proximately caused by Counterdefendants' conduct.

296.    Counterplaintiff requests that the court find that Counterdefendants communicated statements to third parties that directly or impliedly that Flinn had engaged in illegal misconduct and other wrongdoing; that the  statements were false, that because of those statements that Flinn suffered damages to his reputation and his career and impeached his honesty and integrity, his fidelity to his wife, and accused him falsely of committing a crime and that Flinn is entitled to recover actual damages, mental anguish damages and exemplary damages as set out in Count 7.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (COUNT 4)

297.    Counterplaintiff Flinn incorporates and adopts by reference each and every allegation in Article III of these Counterclaims.

---

298.    Counterplaintiff Flinn is a person.

299.    Counterdefendants acted intentionally or recklessly when Counterdefendants accused Flinn of stealing data center cameras, when they knew that he worked at home one day a week and that it was necessary to configure the cameras to interface with the CCTV network.

300.    Counterdefendants acted intentionally or recklessly when Counterdefendants accused Flinn of engaging in a crime, R.I.C.O. violations, fraud and conspiracy by simply doing his job as authorized and required by Counterdefendants. . Any approvals made by Flinn were a part of his job responsibilities.

301.    Counterdefendants acted intentionally or recklessly when they fired Flinn and sued him for alleged violations of corporate policy, alleged that Flinn had fiduciary duties to Counterdefendants that he violated by breaching corporate policies.  Moreover, Counterdefendants singled Flinn out for disparate treatment, when other employees were simply admonished for the same infractions.

302.    Counterdefendants acted intentionally or recklessly when they fired Flinn in retaliation for his reporting of Counterdefendants' failure to comply with banking laws protecting customer's social security numbers and bank account numbers, deposit information and mortgage information by leaving a file server unprotected under a desk in an unsecured office.

303.    Counterdefendants acted intentionally or recklessly when Counterdefendants imputed wrongdoing to Flinn when he simply wrote a letter of recommendation for an acquaintance at that individual's request to Liebert Corporation (Emerson).

304.     Counterdefendants acted intentionally or recklessly when they let it be known that Flinn, married to the same woman for 29 years, was having an affair with a  single attractive security guard, which was false.

305.     Counterdefendants acted intentionally or recklessly when Counterdefendants portrayed Flinn as imposing a physical threat to the Lewisville Data Center when the two usual Securitas security guards at the Lewisville data center were moved elsewhere on August 30, 2012 and replaced by other  guards plus additional security guards who were positioned at each exit.

306.     Counterdefendants acted intentionally or recklessly when Counterdefendants imputed wrongdoing to Flinn for legitimate private transactions and engaged the Lewisville data center vendors to help them investigate their case against Flinn with respect to such private transactions.

307.     Counterdefendants acted intentionally or recklessly when Counterdefendants compensated a subordinate employee and a contractor's employee to testify or provide false statements against Flinn.  Such actions were outrageous.

308.     Counterdefendants acted intentionally or recklessly when Counterdefendants falsely accused Flinn of placing a DSL line in his office to avoid detection when Counterdefendants had been surreptitiously monitoring Flinn's computer for many months.  Counterdefendants knew, should have known or could  have learned that other employees of Counterdefendants had followed company procedures in requesting, installing and utilizing the DSL line.

309.     Counterdefendants acted intentionally or recklessly when Counterdefendants mischaracterized Flinn as a frightening individual whose being placed on paid administrative leave necessitated  additional security guards to protect the Lewisville data center from Flinn.

310. Counterdefendants acted intentionally or recklessly when Counterdefendants intentionally interfered with Flinn's business relationships by placing unduly burdensome requirements on the employees of such business to aid Counterdefendants in researching their records for invoices and emails for the purpose of discrediting Flinn.

311. Because of Counterdefendants' claims of theft, Counterdefendants insisted upon inspecting Counterplaintiffs' homes to determine whether items similar to what Caves' or Peloton's employee had purchased could be located there. At the deposition of Ally's lead investigator's deposition he could only name a few "similar type" of items found at Flinn's homes.

312. When Flinn met with Counterdefendants' attorneys to complete his anticipated termination, he brought his company equipment with him in his car. The Counterdefendants' attorneys did not ask Flinn to turn over other items in his possession that they had failed to collect when Flinn turned in his keys, security badge and company computer on August 30, 2012. By not following the usual termination procedures including permitting Flinn to take possession of his own personal items and by not retrieving these other items, the attorneys could and did then accuse Flinn of theft and conversion of those company items, while retaining Flinn's personal items. This conduct towards Flinn was extreme and outrageous.

313. Counterplaintiff is aware that a former security guard was moved away from the premises of the data center by his employer following a complaint made by Flinn. Ally's lead investigator interviewed this security guard who had openly made death threats against Flinn. Counterdefendants asked Flinn a number of questions about the former security guard in the presence of Ally's lead investigator who was in attendance as a corporate representative. At the

deposition of Ally's lead investigator as the corporate representative, the corporate representative inserted the name of the former security guard even though the guard's name was not in response to any question posed by Defendants.  The security guard's picture (blown up to page size) was slipped into discovery.

314.     Ally's lead investigator engaged in misconduct in his efforts to monitor and intimidate Flinn.  See the facts set out in Count 6.

315.     The Counterdefendants conduct was extreme and outrageous.

316.     The emotional distress suffered by Flinn was severe.  Counterplaintiff suffered mental anguish beyond mere worry, with loss of appetite, weight loss, sleeplessness, nausea, depression and anxiety.  Flinn's psoriasis developed from a small spot on the side of his head to complete inflamation of his whole head,  leaving blood on his pillow at night.  Flinn's ability to handle stress has suffered.

317.     The conduct of Counterdefendants proximately caused Flinn's emotional distress.

318.     No alternative cause of action would provide an adequate remedy for the severe emotional distress caused by Counterdefendant's conduct.

319.     Counterplaintiff Flinn had worked faithfully for Counterdefendants for more than 10 years in a critically important position on call 24 hours a day, seven days a week.  If anything went wrong at the data center, Flinn would be called in the middle of the night to return to the data center to make certain that the back-up generators were working properly and that a long checklist of actions were completed to avoid a cascade of problems that could have resulted in the failure of the uninterruptible power supply. Because of the relationship of the Counterdefendants and Flinn, Flinn

trusted that Counterdefendants would back up his decisions.   Thus, it was particularly outrageous for Counterdefendants to enter into a campaign to destroy Flinn's character and reputation and business relationships that were key to his effectiveness.  That subordinates had to be compensated for their participation is particularly outrageous.  Their betrayal was emotionally devastating.

320.    Counterplaintiff is entitled to the presumption that the statements were false.

321.    Counterplaintiff requests that the court find that Counterdefendants' conduct was the proximate cause of Flinn's severe emotional distress, that such conduct was extreme and outrageous. That Counterdefendants communicated false statements to third parties that implied Flinn had committed theft and other wrongdoing; that Flinn suffered damages to his reputation and his career and impeached his honesty and integrity, his fidelity to his wife, and imputed that he had committed a crime and that the court award Flinn his damages, mental anguish damages, reputation damages, mental anguish damages and exemplary damages.

## INVASION OF PRIVACY
### (COUNT 5)

322.    Counterplaintiff Flinn incorporates and adopts by reference each and every allegation in Article III of these Counterclaims.

323.    A person is entitled to be left alone in solitude.

324.    Counterdefendants filed a motion to compel inspection of Defendant Flinn's homes for the purpose of conducting a "search" for items similar to stolen items or items purchased by Caves or Peloton's employee.  The seeking of generic household items lacking in serial numbers or any identification that would indicate that the presence of such items in Defendant Flinn's homes would be wrongful, would prove nothing and proved nothing.  The intrusion into one's homes to

---

**FLINN'S SECOND AMENDED ANSWER, PAGE 63**
Z:\12-1302\Docs\Answer\Answer2v15.wpd

search for items "similar" to stolen items would be highly offensive to a reasonable person; and Flinn and his wife suffered an injury as a result of Counterdefendants' intrusion on the privacy of their homes. Flinn and his wife were severely offended, humiliated and outraged.

325.   When Flinn was placed on paid administrative leave, Counterdefendants hired security agents to follow Flinn home to collect his company computer. When Flinn brought the computer out to the agent's car, the agent brandished his gun. Flinn's private security and space was invaded by the guard in front of his home. Flinn was severely offended, humiliated and outraged and intimidated by the agent's conduct. Any reasonable person would be find that intrusion highly offensive.

326.   When Flinn was placed on administrative leave, he was not permitted to remove his personal items from his office, nor to even step into his office. Counterdefendants retained Flinn's personal items for six weeks until counsel for Flinn demanded the return of his personal items that were packed by others, intruding on his privacy. Any ordinary person would feel severely offended, humiliated or outraged by such conduct.

327.   Jackson/Lewis attorneys' law firm unethically telephoned Flinn a number of times about a check that Flinn's counsel had submitted to Jackson Lewis. Counsel for Flinn reminded Counsel for Counterdefendants that it is unethical and improper for Counterdefendants to contact a person who they know is represented by counsel and demanded that Counterdefendants cease such contact. Counterdefendants' lawyers failed to comply with Flinn's demand, and it was necessary to obtain a protective order from this Court to compel the firm to cease and desist.    Any ordinary person would feel severely offended, humiliated or outraged by such conduct.

---

**FLINN'S SECOND AMENDED ANSWER, PAGE 64**
Z:\12-1302\Docs\Answer\Answer2v15.wpd

328.   In addition, even though Ally's lead investigator knew that he was not to communicate directly with Counterplaintiff Flinn, he did so repeatedly through Flinn's on-line "Linked-In" account.  When Counterplaintiffs' counsel tried to stop this contact by the investigator, other Ally employees began requesting to join Flinn's Linked-In Account.  Any ordinary person would feel severely offended, humiliated or outraged by such conduct.  It was necessary for the Court to sign a protective order.  Even with the protective order Ally employees continue to view Flinn's Linked-In account.  Any ordinary person would also feel severely offended, humiliated or outraged by such conduct.

329.   Counterplaintiff has learned that a former security guard was moved away from the premises of the data center by his employer as a result of a complaint by Defendant Flinn.  The investigator interviewed this security guard who had openly made death threats against Flinn. Defendant Flinn took such threats seriously.  Counterdefendants brought up that former security guard's name at Defendant Flinn's expedited deposition, brought up the name of the former security guard at the investigator's deposition even though the name was not in response to any question posed by Defendants and the security guard's picture (blown up to page size) was slipped into discovery.

330.   Because of the invasion of privacy, Flinn has suffered damages.  Flinn has suffered severe mental anguish, including severe anxiety and depression that prevented Flinn from seeking employment and required him to be hospitalized.  Flinn lost work opportunities and has found it difficult to function under stress because of the harassment and invasion of privacy by Counterdefendants.

---

331.    Counterplaintiff Flinn requests that the Court find that Counterdefendants have invaded Flinn's privacy, that such an invasion has harmed Flinn, and that as a consequence of such harm, Counterplaintiff Flinn is entitled to actual damages, mental anguish damages, loss of earning capacity, exemplary damages, equitable relief, interest, court costs and equitable attorneys fees.

## CYBERSTALKING
## (COUNT 6)

332.     Counterplaintiff Flinn incorporates and adopts by reference each and every allegation in Article III of these Counterclaims.

333.    Cyberstalking is a violation of Section 33.07(b) of the Texas Penal Code which provides as follows:

(a)    A person commits an offense if *the person uses the name or persona of another person* to create a web page on or to *post one or more messages on a commercial social networking site*:

   (1)    *without obtaining the other person's consent*; and

   (2)    *with the intent to harm, defraud, intimidate , or threaten any person*.

"(b)    A person commits an offense if the person sends an *electronic mail, instant message, text message, or similar communication that references a name*, domain address, phone number or other item of *identifying information belonging to any person*:

   (1)    *without obtaining the other person's consent*;

---

**FLINN'S SECOND AMENDED ANSWER, PAGE 66**

(2)     ***with the intent to cause a recipient of the communication to reasonably***

***believe that the other person authorized or transmitted the communication***; and

(3)     ***with the intent to harm*** or defraud any person."

Penal Code § 33.07(b).

334.     On January 20, 2013, Ally's lead investigator requested to join Defendant Flinn's on-line "Linked-In" account via an email forwarded by Linked-In.  A follow-up request was made by Linked-In on February 4, 2013 after Counsel for Counterplaintiff Flinn had requested that Ally and its agents cease and desist making any such contact.

335.     Defendant Flinn's counsel wrote William Davis of Jackson/Lewis, counsel for Counterdefendants,  on January 30, 2013 objecting to the cyberstalking of Flinn. When the investigator stopped contacting Flinn for awhile, other employees of Counterdefendants started contacting Flinn.  On June 11, 2013, the investigator again resumed  communicating with Flinn through Flinn's Linked-In account by posting the query, "What did you do as Principle Network Engineer at Allied Riser? Describe your position."  Below the query was the lead investigator's picture identifying him as the person posting the question.  The investigator repeatedly used Flinn's social networking site to send electronic communications in a manner reasonably likely to harass, annoy, alarm or offend  Flinn.  Tex. Penal Code § 42.07((7).

336.     In cyberstalking Flinn, a crime in Texas,  Counterdefendants acted  maliciously towards Flinn when they contacted Flinn directly without his permission.

337.    Counterplaintiff Flinn requests that the Court find that Counterdefendants have committed the crime of cyberstalking, that such crime establishes malice by Counterdefendants as a matter of law, that would entitle Flinn to exemplary damages.

## DAMAGES
### (COUNT 7)

338.    Counterplaintiff Flinn incorporates and adopts by reference each and every allegation in Article III of these Counterclaims.

339.    Counterplaintiff Flinn suffered financial losses, a deterioration of his health, and his life's savings as a proximate cause of Counterdefendant's interference with his business relationships.

340.    Counterplaintiff had no choice but to accept a lesser paying position with greater stress and responsibility and has suffered actual damages.  Such damages are estimated to be in excess of $75,000.00.

341.    Counterplaintiff Flinn suffered injury to his nationwide reputation for excellence in his field.  Such damage are estimated to be in excess of $75,000.00.

342.    Counterplaintiff is entitled to recover attorneys fees and costs from Ally Financial, Inc.  pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code for breach of Ally's release agreement of the agents and employees of ResCap and  GMAC.

343.    Counterplaintiff is entitled to recover attorneys fees and costs from Counterdefendants pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code for breach of the employment contract between Counterdefendants and Flinn.

344.     Counterplaintiff is entitled to recover attorneys fees  from Counterdefendants with respect to Flinn's claim for tortious interference with future business relations as equitable damages.

345.     Counterplaintiff is entitled to recover attorneys fees  from Counterdefendants with respect to Flinn's claim for tortious interference with continuing business relations as equitable damages.

346.     Counterplaintiff has sought to mitigate damages by obtaining employment at a lesser wage and not permitting an in-depth pre-employment investigation until it became absolutely necessary.  Any in-depth background check would reveal the spurious allegations made in this lawsuit which would require explanation.

347.     Counterplaintiff suffered mental anguish beyond mere worry, with loss of appetite, weight loss, sleeplessness, nausea, depression and anxiety.  Flinn's psoriasis developed from a small spot on the side of his head to complete inflamation of his whole head,  leaving blood on his pillow at night.  Flinn's ability to handle stress has suffered.

348.     Counterplaintiff Flinn has experienced strain on his relationships with colleagues with whom he has worked and been acquainted for more than 20 years.  At his level, the IT community is so small as to make the allegations of this suit known to persons who are not acquainted with him as is shown by the number of Ally employees who are viewing Flinn's Linked-In profile whose efforts to be joined to Flinn's Linked-in Account required a court order to stop them.

349.     The tortious conduct committed by Counterdefendant was aggravated by the willfulness, wantonness and malice for which the law allows the imposition of punitive damages.

---

**FLINN'S SECOND AMENDED ANSWER, PAGE 69**
Z:\12-1302\Docs\Answer\Answer2v15.wpd

Their conduct was intentional, willful, wanton and without justification or excuse. Because Counterdefendants violated Texas law on cyberstalking, actual malice is established.

350.     Counterdefendants engaged in the malicious, intentional and unjustified actions described in Flinn's counterclaims with gross indifference to Counterplainitff's rights and with the conscious desire to interfere with Flinn's future business relations and to damage his reputation, honesty and integrity and job prospects. Counterdefendants intentionally inflicted mental anguish on Counterplaintiff and communicated false allegations about him to third parties and false claims of theft. Counterdefendants invaded Flinn and Flinn's wife's privacy by searching their homes not for "stolen" items purchased by others but for "items of a type similar" to those items in order to humiliate Flinn and his wife. To punish such action and to deter others from similar wrongdoing, Counterdefendants should be assessed punitive damages in an amount determined by the trier of fact.

351.     Counterdefendants' conduct complained of herein was willful and done with malice and in reckless disregard to the rights of Counterplaintiff. Counterdefendants were further grossly negligent in their actions. Counterplaintiff is therefore entitled to recover punitive damages.

352.     Most if not all of the damages experienced by Flinn are attributable to Ally because it was Ally who fired Counterplaintiff Flinn, and whose investigator has had the contact with third parties and is the only non-bankrupt party of the Counterdefendants. Moreover, GMAC and ResCap have already received the profits and proceeds from the sale of the Lewisville and Eden Prairie data centers that included all the improvements. Flinn has little chance of recovery from GMAC and ResCap are largely insulated from the claims of creditors through the bankruptcy process.

353.    Ally should be found wholly or almost wholly liable to Counterplaintiff because Ally expressly released GMAC and ResCap's employees and agents from all causes of action, including fraud shortly before the bankruptcy as part of the bankruptcy filing on May 14, 2013.   As admitted by Ally, Flinn was an employee of GMAC and/or ResCap at the time of this lawsuit and is a third party beneficiary of that release.   Because Ally has breached the release agreement it executed, Flinn is entitled to damages in whole or in substantial part from Ally.

354.    Counterplaintiff Flinn is entitled to exemplary damages for the damages proximately caused by Counterdefendants as treble actual damages.   Counterplaintiff is entitled to such damages because of the malice shown by Counterdefendants in piling on damages beyond simply firing Counterplaintiff as set out in the causes of action, counts 1 through 6 and 8.

355.    Counterplaintiff is entitled to post judgment and prejudgment interest and court costs.

356.    Counterplaintiff is entitled to attorney fees under the equitable grounds of the attorneys fees as damages with respect to his cause of action for defamation and intentional infliction of emotional distress if the Counter plaintiff prevails and the attorney fees are found to be reasonable and necessary.

## ALTERNATIVE CAUSE OF ACTION FOR
## WRONGFUL DISCHARGE
## (COUNT 8)

357.     Counterplaintiff Flinn incorporates and adopts by reference each and every allegation in Article III of these Counterclaims.

358.    Counterplaintiff was fired on the pretext that he violated Ally's acceptable use policy forbidding the use of an employee's personal device to access the company's internal network.

---

**FLINN'S SECOND AMENDED ANSWER, PAGE 71**

359. This was a pretext firing because Flinn only accessed the company's public website to access his email which was not a violation of the acceptable use policy. As an employee who was on call 24/7 and who received hundreds of emails daily, Flinn was compelled to constantly check email while traveling, at hotels, and on the floor of the secured part of the Lewisville data center. At the time Flinn was purportedly fired for violating the policy, Ally's own CEO was promoting the policy of "bring your own device to work" as a cost savings measure.

360. Counterplaintiff was treated differently from other employees because other employees were only admonished for violating the policy, not fired.

361. Despite the fact that the reason given for termination was a pretext, GMAC contested Flinn's unemployment compensation claim which has not been resolved in more than a year.

362. On information and belief, Counterplaintiff was actually wrongfully terminated for complaining about an unprotected file server being stored on the floor under an employee's desk at Counterdefendants' facility at Charlotte, North Carolina. Another employee involved in the reporting was also terminated.

363. Within a year of Flinn's report, Counterdefendants' began investigating Flinn for "kickbacks" and "hunting and fishing with vendors" and "acceptance of vendor gratuities" purportedly based upon a purported hotline anonymous complaint made on or about September 14, 2011. The investigation was allegedly closed on or about February 1, 2012. Counterdefendants' investigator, exonerated Flinn of wrongdoing and reported that "no vendor improprieties" were discovered.

364.    During the investigation (that apparently was not closed), Flinn's computer was being monitored by Counterdefendants, without difficulty, contrary to the allegations made by Counterdefendants in this lawsuit.

365.    On September 14, 2012, Flinn was fired and within a week he was sued for "kickbacks," "vendor improprieties" and "acceptance of vendor gratuities" as originally reported in September of 2011.

366.    Counterdefendants' tried to conceal the fact to third party vendors that Flinn was being investigated for breaches of policy, and the investigator made statements such as that "it was against the rules for Ally to receive gifts." A Graybar employee was told that it was "illegal" for Counterdefendant Flinn to make purchases from a wholesaler, such as Graybar, who did business with the public.

367.    Counterdefendants have alleged that Flinn violated company policy and committed a crime by purchasing an air conditioner from Venture Mechanics, Inc., a vendor of the Counterdefendants. Counterdefendants' investigator represented that as the representative of a federal agency, he was authorized to investigate Flinn's private transactions and compelled the vendors to turn over Flinn's private records. The investigator engaged in extensive conversations with the vendor about the vendor's method of doing business and how it arrived at its pricing.

368.    Counterdefendants have sued Flinn for breach of an employment contract that purportedly restricted his right to participate in free enterprise in his individual capacity. No policy of Counterdefendants restricts such right. Therefore, Flinn's discharge (and the subsequent lawsuit) for Flinn's violation of a non-existent policy was wrongful.

369.     Counterdefendants complained that in performing his duties to operate the data center Flinn failed to properly supervise the vendors, in violation of his employment contract.

370.     Counterdefendants complained that in violation of Ally's policies  as the senior person at a meal, Flinn violated company policy by having a subordinate submit an expense report to Flinn that he approved, in effect approving his own meal, a violation of the  employment contract.

371.     Counterdefendants have accused Flinn of failing to properly audit expense reports of his subordinates, in violation of Flinn's employment contract.

372.     Flinn was accused of wrongfully installing a DSL line in his office in violation of Ally's policy and breach of his employment contract.

373.     Counterdefendants' R.I.C.O., fraud and conspiracy claims arise out of the underlying complaint  that Flinn failed to uncover the alleged misconduct of subordinates in violation of his employment contract.

374.     Counterdefendants have accused Flinn of failing to follow company policies regarding the proper badging of vendors, and that Flinn wrongfully provided a cubicle for a master electrician who serviced the Lewisville Data Center as an employee of Sandstrom Electrical Company.

375.     Counterdefendants have accused Flinn of violating Ally's policies on procurement as a violation of Flinn's employment contract.

376.     Counterdefendants have accused Flinn of violating Ally's travel policies by charging upgrades to first class under the heading of "airline fees" as a violation of Flinn's employment contract.

---

377.     Under the alleged contract, Counterdefendants have alleged that Flinn was conferred fiduciary duties that he is alleged to have  breached when he failed to discharge his contractual obligations to Counterdefendants' expectations,  include auditing vendor invoices.   The contract is only performable in a year.

378.     Based upon  Counterdefendants' allegations, Flinn was not an employee at will but contractually bound to follow Ally's policies, that he is alleged to have violated.

379.     Flinn was wrongfully terminated when others who similarly violated Ally's policies were not terminated.  Flinn was terminated for reporting a security deficiency as part of his duties to protect the confidential information stored on computers and file servers.

380.     Based upon Counterdefendant's lawsuit against Flinn for violations of Ally's policies, Counterplaintiff Flinn had an enforceable employment contract that limited the Counterdefendants' right to discharge Flinn at will.   Counterdefendants have conceded that they were required to discharge Flinn for cause.

381.     Instead of terminating Flinn for cause, Counterdefendants terminated Flinn for violating a policy that he did not violate and that others who were accused of violating the policy only received warnings.

382.     There was privity between Counterdefendants and Flinn because Ally was an indirect parent of Flinn's employer, GMAC /ResCap, and Flinn performed services that benefitted all of the Counterdefendants.

383.     Counterplaintiff performed, tendered performance of, or was excused from performing his contractual obligations through his employment for ten years at the Lewisville Data

Center, and the performance of his obligations with respect to the Eden Prairie data center and the performance of his obligations at over 30 of Counterdefendants' information technology ("IT") facilities. Flinn's performance reviews were acceptable and it was commented on more than one occasion that there were "no audit deficiencies."

384. By exonerating Flinn in the investigation that began on September 14, 2011, Counterdefendants excused Flinn from being terminated for "kickbacks" and "hunting and fishing with vendors" and "accepting vendor gratuities." Thus, Flinn's later discharge for the very reasons for which Flinn was exonerated violated the contract term of discharging Flinn for cause. The Counterdefendants waived their right to discharge Defendant Flinn under the contract for those allegations. Such exoneration shows that Flinn could only be discharged for cause.

385. The contract shown by Ally's policies were performable within one year. The policies provided are only those policies generally in effect for 2012.

386. The intention to restrict Counterdefendants' right to discharge Flinn is shown by the Counterdefendants' investigation that exonerated Flinn. Had Flinn been an employee at will, Counterdefendants could have fired him on the basis of the initial hotline complaint. Instead, Counterdefendants acknowledged that Flinn could only be fired for cause.

387. Counterdefendants breached the contract by wrongfully discharging Flinn on a pretext when under the contract, Flinn could only be discharged for cause.

388. Defendant Flinn mitigated damages by obtaining another position at a lower wage.

---

389.   The Counterdefendants' breach caused injury to Flinn as set out in Count 7, measured by the present cash value of the employment contract if it had not been breached, less any amounts that Flinn earned through other employment.

390.   Counterplaintiff Flinn requests that Counterdefendants be found, in an alternative counterclaim, to have breached their employment contract with Flinn to discharge him for cause, that Defendant Flinn is entitled to the damages set out above and as set out in Count 7, including attorneys fees under Chapter 38 of the Texas Civil Practice & Remedies Code and that Flinn be reinstated with back pay.

## XII.  PRAYER FOR RELIEF

391.   WHEREFORE, PREMISES CONSIDERED, Defendant Philip Roger Flinn, II, prays that Plaintiffs take nothing by this suit; that all relief requested by Plaintiffs be denied and that all of Plaintiffs' claims be dismissed with prejudice, and specifically that the fraud claims be dismissed or stricken; that Defendant Flinn recover damages from Plaintiffs that Plaintiffs could have mitigated; that the Court find that Defendant Counterplaintiff Flinn prevail on his causes of action as follows:

(a)   for tortious interference with business relationships,

(b)   for breach of contract by Ally,

(c)   for defamation (slander),

(d)   intentional infliction of emotional distress,

(e)   invasion of privacy,

(f)   cyberstalking; and

(g)      for wrongful discharge (alternative cause of action).

Defendant Counterplaintiff Philip Roger Flinn, II  requests that the court award his actual damages,

mental anguish damages, exemplary damages, attorneys fees, equitable attorneys fees, expenses, post

judgment and prejudgment interest, court costs and such other relief to which Defendant

Counterplaintiff Flinn has shown himself to be justly entitled.

Dated: September 13, 2013.

                           Respectfully submitted,



                            /s/ Judith P. Kenney
                           Judith P. Kenney
                           Texas Bar No. 11311600
                           Judith P. Kenney & Associates, P.C.
                           16475 Dallas Parkway, Suite 330
                           Addison, Texas 75001-6863
                           Telephone:  (972) 713-6133 and
                           (800) 862-3663
                           Fax:  (972) 818-0388
                           judith@judithkenneylaw.com
                           **ATTORNEY FOR DEFENDANT, PHILIP ROGER
                           FLINN, II**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed by electronic filing on the 13th day of September, 2013 to:

William L. Davis
Texas Bar No. 05563800
davisw@jacksonlewis.com
Talley R. Parker, Esq.
Texas Bar No. 24065872
talley.parker@jacksonlewis.com
Jackson Lewis LLP
500 N. Akard, Suite 2500
Dallas, Texas 75201
Telephone: (214 520-2400
Fax: (214) 520-2008
**Attorneys for Plaintiffs Ally financial, Inc. Residential**
**Capital, LLC and GMAC Mortgage, LLC**

William J. Dunleavy
State Bar No. 00787404
825 Market Street
Building M, Suite 250
Allen, Texas 75013
Telephone: 972/247-9200
Telecopier No. 972/247-9201
bill@williamjdunleavy.com
**Attorney for Defendant Ralph ("Rusty") Caves**

Ryan K. Geddie
Martin, Disiere, Jefferson & Wisdom
16000 N. Dallas Parkway, Suite 800
Dallas, Texas 75248
Telephone: 214/420-5500
Telecopier No. 214/420-5501
geddie@mdjwlaw.com
**Attorney for Defendants John W. Sandstrom**
**and Sandstrom Electrical Company**

By: /s/ Judith P. Kenney
Judith P. Kenney