# EXHIBIT

# J

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ALLY FINANCIAL INC., | § | |
| RESIDENTIAL CAPITAL, LLC, and | § | |
| GMAC MORTGAGE, LLC, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 4:12-CV-600-RC-ALM |
| | § | |
| v. | § | |
| | § | |
| PHILLIP ROGER FLINN, II | § | |
| RALPH "RUSTY" CAVES, | § | |
| JOHN W. SANDSTROM, and | § | |
| SANDSTROM ELECTRIC COMPANY | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' THIRD AMENDED COMPLAINT

Plaintiffs Ally Financial Inc. ("Ally"), Ally's wholly-owned subsidiary Residential Capital, LLC ("ResCap"), and ResCap's wholly-owned subsidiary GMAC Mortgage, LLC ("GMAC") (collectively, "Plaintiffs") bring this Third Amended Complaint against Defendants Phillip Roger Flinn, II ("Flinn"), Ralph "Rusty" Caves ("Caves"), John W. Sandstrom ("Sandstrom"), and Sandstrom Electric Company ("Sandstrom Electric") (collectively, "Defendants").

## I.  PARTIES

1.      Ally is a Delaware corporation with its principal place of business at 200 Renaissance Center, Detroit, Michigan 48265.

2.      ResCap is a Delaware limited liability company with its principal place of business at 1177 Avenue of the Americas, New York, New York 10036.  Its sole member, GMAC Mortgage Group, LLC, is a Delaware limited liability company with its principal place of business at 200 Renaissance Center, Detroit, Michigan 48265.

3.      GMAC is a Delaware limited liability company with its principal place of business at 1100 Virginia Drive, Fort Washington, Pennsylvania 19034. Its sole member, GMAC Residential Holding Company, LLC is a Delaware limited liability company with its principal place of business at 3993 Howard Hughes Parkway, Suite 250, Las Vegas, Nevada 89169.

4.      Flinn is a natural person who resides at 10401 Samantha Drive, Frisco, Texas 75035 and is a citizen of the State of Texas. Flinn has been served with process, and he has appeared in this lawsuit.

5.      Caves is a natural person who resides at 2311 Castle Rock Road, Arlington, Texas 76006 and is a citizen of the State of Texas. Caves has been served with process, and he has appeared in this lawsuit.

6.      Sandstrom is a natural person who resides at 6736 County Road 156, Bluff Dale, Texas 76433 and is a citizen of the State of Texas. Sandstrom's attorney accepted service on behalf of Sandstrom, and Sandstrom has appeared in this lawsuit.

7.      Sandstrom Electric is a Texas corporation with its principal place of business at 13231 Bee Street, Farmers Branch, Texas 75234. Sandstrom Electric's attorney accepted service on behalf of Sandstrom Electric, and Sandstrom Electric has appeared in this lawsuit.

## II.  JURISDICTION AND VENUE

8.      The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C § 1331 because a federal statute is at issue. More specifically, Plaintiffs allege that Defendants violated the Racketeer Influenced and Corrupt Organizations (RICO) statute, which grants subject-matter jurisdiction to the Court pursuant to 18 U.S.C. § 1964(c). The Court also has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1). Ally is a citizen of

Delaware and Michigan; ResCap is a citizen of Delaware, New York, and Michigan; and GMAC is a citizen of Delaware, Pennsylvania, and Nevada. Flinn is a citizen of Texas, Caves is a citizen of Texas, Sandstrom is a citizen of Texas, and Sandstrom Electric is a citizen of Texas. The amount in controversy exceeds $75,000, exclusive of interest and costs.

9. On May 14, 2012, ResCap and each of its subsidiaries, including GMAC, filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York. ResCap and GMAC do not need the approval of the bankruptcy court to pursue their claims against the Defendants because the filing of a petition in bankruptcy operates as a stay only as to claims brought against the debtor, i.e. claims where the debtor is in a defensive posture. *See, e.g.*, *In re Versoy*, 306 Fed. App'x 65, 68 (5th Cir. 2009) ("By the terms of 11 U.S.C. § 362(a), the automatic stay only applies to proceedings 'against the debtor.'"); *McMillan v. MBank Fort Worth, N.A.*, 4 F.3d 362, 366 (5th Cir. 1993) (same); *see also* 10 Collier on Bankruptcy P 6009.04 (16th ed. rev 2012) ("Under section 362(a), the filing of the petition operates as a stay, applicable to all entities, of actions taken *against* the debtor. Thus, the automatic stay does not apply to actions *initiated by the debtor* or the trustee such that the trustee may proceed and the defendant may defend those actions without need for relief from the stay.").

10. This Court has personal jurisdiction over Flinn, Caves, Sandstrom, and Sandstrom Electric because they are each residents of Texas.

11. Venue is proper pursuant to 28 U.S.C. § 1391(a) because, as set forth more fully below, a substantial part of the events or omissions giving rise to Plaintiffs' claims in this matter occurred in the Eastern District of Texas. As a result, a significant number of the material witnesses and relevant documents are in the Eastern District of Texas.

### III.  <u>THE FACTS</u>

12.     Ally is one of the world's largest automotive financial services companies.  Ally offers a full suite of automotive financing products and services in key markets around the world.

13.     ResCap is the holding company for most of the residential mortgage operations of Ally.  The Company originates, services, and securitizes mortgage loans in the US and abroad.  It also issues mortgage- and asset-backed securities and provides lines of credit to other residential mortgage writers.

14.     GMAC is one of the largest residential mortgage servicing companies in the US.  The company offers consumers purchasing and refinancing, FHA loans, and flexible down payment options.  GMAC is part of the ResCap mortgage arm of Ally.

15.     Flinn joined GMAC in 2001 as an Operations Manager at ResCap and GMAC's Lewisville, Texas data center.  In his role as Operations Manager, Flinn was responsible for the maintenance and upkeep at ResCap and GMAC's two data centers.[1]  Flinn was entrusted with an approximately $5 million budget to ensure that the data centers were, at all times, functioning and fully operational.

16.     Caves started working as a Project Manager for GMAC in 2002.  He was initially tasked with moving servers and applications to the Lewisville, Texas data center.  Eventually, Caves was promoted into the Data Center Manager position.  Caves reported to Flinn in this role and assisted Flinn with his job responsibilities.  One of Caves' main functions was to review and approve vendor invoices for payment.

17.     On or about August 9, 2012, Ally's Global Security Department was provided information that suggested that Flinn and Caves were engaged in an inappropriate procurement

---

[1] The two data centers are located in Lewisville, Texas and Fort Washington, Pennsylvania.

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                                      **PAGE 4**

kickback scheme. The scheme involved the misappropriation of goods and services invoiced to the Lewisville, Texas data center.

18.     After learning of the kickback scheme, two individuals in Ally's Global Security Department flew from Charlotte, North Carolina to Dallas, Texas and questioned Flinn and Caves at the Lewisville, Texas data center about their dealings with various vendors, including but not limited to Sandstrom and Sandstrom Electric.

19.     During these interviews, Ally discovered that Flinn and Sandstrom, the Vice President of Sandstrom Electric, have been friends for more than 25 years, that Flinn and Sandstrom often go hunting and fishing together, that Flinn received 10 acres of land from Sandstrom with a stated purchase price in a deed of $10.00, that Flinn is currently three years into building a house on the land sold to him by Sandstrom, and that Flinn and Sandstrom own a twin engine plane together.[2]

20.     Ally's Global Security Department also discovered that Sandstrom Electric regularly submits invoices for work performed on days that Sandstrom visits the Lewisville, Texas data center but does not actually provide any services, that Sandstrom Electric has been paid for work that it started but did not complete, that Sandstrom Electric has performed services at inflated prices, that most of Sandstrom Electric's invoices provide little to no description of the services allegedly provided to Plaintiffs, and that Flinn has directed Caves to approve all of these invoices for payment.

21.     Since filing this lawsuit on September 20, 2012, Plaintiffs have learned that, in addition to the fraudulent activities described above, Sandstrom Electric has submitted multiple invoices for what appears on the invoices to be the same work, that Flinn and Caves approved

---

[2] Plaintiffs have since learned that Flinn used his employee discount to obtain a Cadillac for Sandstrom's wife.

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                                    **PAGE 5**

several unnecessary meal and lodging expenses for Sandstrom Electric, and that Flinn and Caves approved invoices for Sandstrom for purchases for merchandise that was for personal use and not delivered to Plaintiffs. Demand has been made on Sandstrom and Sandstrom Electric to explain the questionable invoices, but they have not responded.

22. Plaintiffs have also learned that a number of products purchased by Plaintiffs – purportedly for use at the Lewisville, Texas data center – were diverted to Flinn's ranch house or Frisco house. As an example, night vision security cameras were purchased by GMAC. Flinn charged the cameras to GMAC's account with a local vendor and diverted them to his ranch house for his personal use. In addition, Caves and Flinn approved thousands of dollars of purchases through this vendor for items that were clearly not for use at the Lewisville, Texas data center. Caves observed several of these items, including tile and doors, at Flinn's ranch house. Other building materials and equipment were also diverted to Flinn's ranch house or Frisco house.

23. Caves also benefited from the vendor invoicing improprieties. Caves, for example, obtained a microwave oven through a vendor and gave it to his daughter as a graduation gift. Caves approved the invoice from the vendor showing that the microwave was paid for by GMAC, not the vendor. Caves also claims that his personal computer was given to him as a gift by Flinn. Caves, however, approved an invoice showing that the computer was purchased by GMAC. Caves also purchased a power washer and expensed it to GMAC, having Flinn approve the reimbursement. The power washer was not for use by Plaintiffs and was never provided to Plaintiffs. Caves was asked in the investigation for an explanation of the power washer, but had none. There are also thousands of dollars of receipts from Home Depot with Caves' signature on them. Caves denied any knowledge of the purchases during the

investigation, but the receipts obtained in discovery show he was not being truthful. There are also thousands of dollars of purchases from Walmart. Sandstrom claims Caves purchased these items and asked Sandstrom to bill Plaintiffs.

24.     With regard to the payment of invoices, Caves advised the Ally investigators that he was not authorized to reject invoices submitted by Sandstrom Electric and other vendors, and that if he did not immediately approve them, Flinn became agitated and demanded that they be approved and paid, regardless of whether Caves knew what goods or services were provided. Caves reported that Flinn controlled all of these types of expenses and that Flinn, rather than Caves, is ultimately responsible for approvals. Flinn denies this and claims that since Caves was approving the invoices, he must have been getting the kickbacks.

25.     In order to avoid being detected in their scheme, Flinn and Caves worked together to install non-standard computer equipment for their use at the Lewisville, Texas Data Center that could not be detected on the Ally network. By way of example, they installed a DSL line for their use with a direct connection to the internet. They were able to avoid using the VPN protocol established by Ally. They also altered computer software on their computers to avoid being monitored by Ally security. They also gave Sandstrom access to the facility without following proper security protocols.

26.     Flinn and Caves also worked together to circumvent the expense reporting policy. By way of example, Flinn would attend meal events as the most senior manager, but have a subordinate pay for the meal and submit the expense report. Instead of Flinn paying and having to have his manager approve the expense, Flinn would approve the subordinate's expense report, in effect approving his own expenses. Similar schemes were used to purchase computer equipment and building supplies. Sandstrom was also the beneficiary of these schemes. By way

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                                    **PAGE 7**

of example, he and his wife, along with Caves and his wife, expensed a hotel stay on the Riverwalk in San Antonio, along with meals. Sandstrom also benefitted from the scheme through a markup of his invoices for a purported general contractor fee. Caves also submitted receipts for meals and would cut off the address. He did this to cover up the fact that the restaurant was in a city where he was vacationing, and the expense was unrelated to work.

27.     Caves told Ally's investigators that he believes Flinn had created a barter system with Sandstrom Electric and other vendors whereby the vendors provided goods and performed services at Flinn's ranch house or Frisco, Texas home and, in turn, Flinn ensured that the vendors' invoices were paid by Plaintiffs. It appears that Caves was complicit in this scheme because Sandstrom claims that Caves was the one purchasing the thousands of dollars of merchandise from Walmart and Home Depot.

28.     Caves also told Ally's investigators that he could not explain many of the Sandstrom Electric invoices and could not verify what, if any, work was performed. Caves also told Ally's investigators that Flinn was responsible for asking Sandstrom Electric to perform work at the Lewisville, Texas Data Center. Documents uncovered to date show that both of them were involved in approving Sandstrom's invoices.

29.     The Plaintiffs' investigation remains ongoing, but GMAC has terminated Flinn and Caves' employment. Thousands of dollars of materials and equipment purchased by Plaintiffs through Flinn and Caves' efforts remain missing. Flinn and Caves have tried to cover up their wrongdoing with evasive responses to inquiries by the investigators. Demand has been made on Sandstrom to explain his invoices, but he has not produced complete information. With their scheme unraveling and thousands of dollars of payments and merchandise unaccounted for, they have started pointing fingers at each other.

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                        **PAGE 8**

## IV. CAUSES OF ACTION

### COUNT 1:
### MONEY HAD AND RECEIVED
### (ALL DEFENDANTS)

30.     Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

31.     Defendants each hold money they obtained from Plaintiffs.  Defendants are not entitled to retain the money in equity and good conscience.  The money came in to Defendants' possession through the scheme described above.  Sandstrom and Sandstrom Electric obtained money by submitting fraudulent invoices and otherwise being overpaid.  Flinn and Caves obtained the money through expense reimbursements and purchases of property through manipulating the vendors.  Defendants' conduct resulting in money had and received is the proximate cause of damages to Plaintiffs.

### COUNT 2:
### TORTIOUS INTERFERENCE WITH CONTRACTS
### AND BUSINESS RELATIONS
### (ALL DEFENDANTS)

32.     Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

33.     Flinn and Caves willfully and intentionally interfered with contracts and business relations with Plaintiffs' suppliers and vendors.  More specifically, they had vendors bill the Plaintiffs for goods or services that were either diverted to them for their personal use, that were not performed for Plaintiffs, or that were performed or provided at inflated prices.  The contract with Peloton Real Estate Management ("Peloton") provided that Peloton would make purchases for, and invoice for, materials and supplies for use in Plaintiffs' facilities.  Flinn and Caves

interfered with this agreement by having a Peloton employee make purchases for their personal use. They also interfered with the delivery of the materials and supplies to the facility. In addition, Flinn and Caves interfered with the contract with Sandstrom Electric by working with Sandstrom to cause Sandstrom Electric to submit invoices for work not performed or materials not delivered as well as overcharging. They are also interfering with Plaintiffs' Master Services Agreement (MSA) with Sandstrom Electric to facilitate the breaches set forth in Count 12 of this Third Amended Complaint.

34.     Flinn and Caves interfered with Plaintiffs' relationships with their employees by using them to facilitate the transactions complained of with the vendors. Plaintiffs' employment relationship with these employees included an understanding that these employees were being paid to work for the benefit of Plaintiffs and that they would act in the best interests of Plaintiffs and safeguard Plaintiffs' assets, and ensure that Plaintiffs received what they paid for in transactions with vendors. Flinn and Caves abused their authority by interfering with these relationships and by directing employees to take actions inconsistent with these duties. Flinn and Caves' actions are willful and malicious and intended to interfere with the relationships between Plaintiffs and their employees and vendors. These actions were without privilege or excuse and were the proximate cause of damages to Plaintiffs.

35.     Sandstrom, Sandstrom Electric, and Flinn have also interfered with Plaintiffs' contract with Caves described in the breach of contract claim against Caves asserted below. Specifically, Caves entered into a written agreement with Ally and GMAC that required him to, among other things, fully and completely cooperate with the Plaintiffs' investigation of vendor invoicing improprieties. Caves initially began to cooperate, but then began to refuse to provide truthful and complete information. Flinn, Sandstrom, and Sandstrom Electric contacted Caves

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                          **PAGE 10**

regarding the investigation and have advised him not to provide information to Plaintiffs. Caves has honored their request and has failed to provide information regarding his knowledge of the transactions at issue. By way of example, Flinn told Caves what to purchase on trips to Home Depot with James Grant. Caves knew these purchases were for Flinn's personal use but would be billed to Plaintiffs. Caves also knew that the "WM" and "HD" invoices submitted by Sandstrom and Sandstrom Electric were for purchases at Walmart and Home Depot of items that were never delivered to Plaintiffs, and that Sandstrom was invoicing Plaintiffs for these items, along with a markup. Caves has failed to provide complete information regarding his knowledge as a result of influence by Flinn, Sandstrom, and Sandstrom Electric to thwart Plaintiffs' efforts to prove their claims against them. This tortious interference has significantly increased the costs of the investigation, including attorneys' fees. Their actions are willful and malicious and intended to interfere with the relationships between Plaintiffs and their employees and vendors. These actions were without privilege or excuse and were the proximate cause of damages to Plaintiffs.

## COUNT 3:
### BREACH OF DUTY OF LOYALTY AND FIDUCIARY DUTIES
### (FLINN AND CAVES)

36.     Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

37.     As employees, Flinn and Caves had a common law duty to serve Plaintiffs faithfully and honestly. Flinn and Caves were placed in positions of trust and confidence at GMAC. As an Operations Manager responsible for several facilities, Flinn was entrusted with company assets, vendor relationships, employees, and purchasing authority. As the Data Center Manager, Caves also was entrusted with company assets, vendor relationships, employees, and

purchasing authority. Flinn and Caves breached the duty of loyalty and their fiduciary duties by using the Plaintiffs' employees and vendors for their personal gain. Further, Flinn and Caves breached their duty of loyalty and fiduciary duties by failing to safeguard company funds and assets. Flinn and Caves also diverted goods and services paid for by Plaintiffs for their personal gain. Flinn also breached his fiduciary duty and duty of loyalty by attempting to destroy evidence relating to his conduct.

38.     As a direct and proximate result of Flinn and Caves' breaches of their fiduciary duties and duties of loyalty, Plaintiffs have been damaged and are entitled to recover actual and punitive damages. Plaintiffs are further entitled to restitution of compensation paid to Flinn and Caves during any period of breach. Flinn and Caves' breaches, furthermore, were willful, malicious and intentional, entitling Plaintiffs to punitive damages.

## COUNT 4:
## CONVERSION
## (ALL DEFENDANTS)

39.     Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

40.     Flinn and Caves intentionally committed acts which constitute unlawful conversion of Plaintiffs' property. Specifically, Flinn and Caves had Plaintiffs pay for goods and services which were diverted to Flinn and Caves. Flinn and Caves used their positions of trust with Plaintiffs to derive financial benefits which belonged to Plaintiffs. Sandstrom and Sandstrom Electric also had Plaintiffs pay for goods that Sandstrom purchased from Home Depot and Walmart. Plaintiffs paid Sandstrom Electric, but the items purchased from Home Depot and Walmart were never delivered to Plaintiffs. One or more of the Defendants retained the goods purchased from Walmart and Home Depot which Sandstrom and Sandstrom Electric billed to

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                    **PAGE 12**

Plaintiffs.  These acts of conversion by Defendants are the proximate cause of damages to Plaintiffs.

<u>**COUNT 5:**</u>
**TEXAS THEFT LIABILITY ACT**
**(ALL DEFENDANTS)**

41.     Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

42.     This cause of action is brought by Plaintiffs against Flinn and Caves pursuant to the Texas Theft Liability Act, TEX. CIV. PRAC. REM. CODE §§ 134.001 *et seq.*

43.     Plaintiffs are the owners of certain personal property that has value.  Specifically, the property at issue was purchased through Peloton or by Sandstrom and Sandstrom Electric and billed to Plaintiffs.  By way of example, the property purchased at Home Depot and Walmart by Sandstrom and/or Sandstrom Electric is detailed in the fraud claims below.  Each purchase was an individual theft.  Defendants knowingly, and without Plaintiffs' effective consent, unlawfully appropriated, secured, or stole thousands of dollars of personal property from Plaintiffs.  In addition, Flinn and Caves had control over the disposition of services to which they were not entitled, and they knowingly diverted the services to their own benefit.

44.     As a result of this unlawful appropriation of Plaintiffs' property and services, Plaintiffs have suffered actual damages.  Pursuant to TEX. CIV. PRAC. REM. CODE § 134.005(a)(1), Plaintiffs are entitled to recover such actual damages, together with an additional award of $1,000.00 for each individual theft.  Although still incomplete, Sandstrom has produced over 100 receipts from Home Depot bearing Caves' signature.  Although billed to Plaintiffs, none of the items have been accounted for.  Although Defendants have thus far refused to answer which one of them ultimately received the property, if each trip to Home Depot is considered an

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                    **PAGE 13**

Case 4:12-cv-00600-RC-ALM Document 95 Filed 06/26/14 Page 15 of 82 PageID # 974
Case 4:12-cv-00600-RC-ALM Document 95-5 Filed 03/27/13 Page 14 of 85 PageID # J
Pg 15 of 82

individual violation of the statute, each Defendant who participated in the thefts are each liable for at least $100,000.00. Defendants have not produced the Walmart receipts, but Plaintiffs further request the statutory penalty for each purchase which was stolen. Pursuant to TEX. CIV. PRAC. REM. CODE § 134.005(b), Plaintiffs are also entitled to recover their court costs and reasonable and necessary attorney's fees.

**COUNT 6:**
**FRAUD**
**(SANDSTROM AND SANDSTROM ELECTRIC)**

45.      Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

46.      As delineated in more detail above, Sandstrom and Sandstrom Electric made numerous representations to Plaintiffs while Sandstrom Electric was serving as a vendor. Specifically, they represented through invoices that work had been performed or materials delivered and requested payment of the invoices based on these representations. Sandstrom and Sandstrom Electric also made misrepresentations regarding the dates that services were performed. Copies of these invoices have been provided to Sandstrom Electric with a request for records required to be maintained by Sandstrom Electric under its MSA. Sandstrom Electric has not provided complete information demonstrating that the work was performed or the materials were delivered. From the incomplete information that has been provided, the following invoices contain misrepresentations:

47.      Sandstrom and Sandstrom Electric submitted **Invoice No. 09-807**, dated October 9, 2009, making the false representation that $16,237.50 is owed by GMAC for "Data Center Support" on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on October 6, 2009, from

Sandstrom's personal e-mail account "jsand13231@gmail.com" to Flinn and Caves. Although the description is vague, and Sandstrom and Sandstrom Electric have refused repeated requests for backup documents for the work, the work represented to have been performed appears to be the same work performed by others. If Sandstrom was billing for work performed by another contractor, the entire invoice was fraudulent because GMAC did not receive the services alleged to have been performed. Sandstrom Electric's failure to provide the proof regarding the work that was performed, despite repeated demands and a contractual obligation to do so, is likely part of the scheme of fraudulent markups, as was done on the invoices relating to purchases at Walmart and Home Depot. To the extent any work was performed, there was a fraudulent representation as to the amount and value of the work and Plaintiffs believe this invoice was part of the fraudulent kickback scheme to obtain payments to Sandstrom and Sandstrom Electric. In the event the sales taxes collected were not remitted to the State of Texas, they misrepresented that sales taxes were being paid. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales taxes. Plaintiffs have suffered damages as a result of their reliance on the false representation.

48.     Sandstrom and Sandstrom Electric submitted **Invoice No. 09-809**, dated September 15, 2009, making the false representation that $3,017.27 is owed by GMAC for "Substation Repair, September 2009" on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on December 21, 2009, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to Flinn and Caves. The e-mail misrepresents that he was resubmitting the invoice because it may have been lost. Sandstrom and Sandstrom Electric have refused repeated requests for backup documents for the work, most likely because no work was performed and the original invoice

was never submitted.  Sandstrom Electric's failure to provide the proof regarding the work that was performed, despite repeated demands and a contractual obligation to do so, is likely part of the scheme of fraudulent markups and kickbacks, as was done on the invoices relating to purchases at Walmart and Home Depot.  This is evidenced by the fact that Caves responded to Sandstrom's email stating that he was increasing the amount of the invoice by over 50% to $4,641.02.  To the extent any work was performed, there was a fraudulent representation as to the amount and value of the work and Plaintiffs believe this invoice was part of the fraudulent kickback scheme to obtain payments for Sandstrom and Sandstrom Electric.  In the event the sales taxes collected were not remitted to the State of Texas, they misrepresented that sales taxes were being paid.  Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales taxes.  Plaintiffs have suffered damages as a result of their reliance on the false representation.

49.     Sandstrom and Sandstrom Electric submitted **Invoice No. 10-817**, dated October 4, 2010, making the false representation that $1,356.37 is owed by GMAC for "PTZ Camera." This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on December 4, 2010, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and to Caves.  Although the description is vague, and Sandstrom and Sandstrom Electric have refused repeated requests for backup documents for the work, they have not provided any proof that either a camera was purchased by them, or how much work was required to install the camera.  Sandstrom Electric's failure to provide the proof regarding the work that was performed, despite repeated demands and a contractual obligation to do so, is likely part of the scheme of fraudulent markups as was done on the invoices relating to purchases at Walmart and Home Depot.  To the extent any work

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                                    **PAGE 16**

was performed, there was a fraudulent representation as to the amount and value of the work and Plaintiffs believe this invoice was part of the fraudulent kickback scheme to obtain payments to Sandstrom and Sandstrom Electric. The invoice also contains a representation that state sales tax was owed in the amount of $103.37. In the event the sales taxes collected were not remitted to the State of Texas, they misrepresented that sales taxes were being paid. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales taxes. Plaintiffs have suffered damages as a result of their reliance on the false representation.

50. Sandstrom and Sandstrom Electric submitted **Invoice No. 10-818**, dated October 4, 2010, making the false representation that $5,953.75 is owed by GMAC for "Planned power outage planning and support" on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on December 4, 2010, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and to Caves. Although the description is vague, and Sandstrom and Sandstrom Electric have refused repeated requests for backup documents for the work, the work represented to have been performed appears to be the same work performed by others. If Sandstrom was billing for work performed by another contractor, the entire invoice was fraudulent because GMAC did not receive the services alleged to have been performed. Sandstrom Electric's failure to provide the proof regarding the work that was performed, despite repeated demands and a contractual obligation to do so, is likely part of the scheme of fraudulent markups, as was done on the invoices relating to purchases at Walmart and Home Depot. To the extent any work was performed, there was a fraudulent representation as to the amount and value of the work and Plaintiffs believe this invoice was part of the fraudulent kickback scheme to obtain payments to Sandstrom and Sandstrom Electric. In the event the sales taxes collected

were not remitted to the State of Texas, they misrepresented that sales taxes were being paid. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales taxes. Plaintiffs have suffered damages as a result of their reliance on the false representation.

51.     Sandstrom and Sandstrom Electric submitted **Invoice No. 10-819**, dated October 4, 2010, making the false representation that $1,884.90 is owed by GMAC for "shelving and powder coating" on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on December 4, 2010, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and to Caves. The "shelving" appears to be for an expense related to an expense reimbursement request Caves submitted to Plaintiffs on September 5, 2010. Specifically, Caves submitted an expense report requesting reimbursement for "shelving for storage room" in the amount of $543.20. He attached an invoice for C&H Distributors, LLC, with a "bill to" of GMAC Mortgage. Plaintiff's reimbursed Caves for this purchase. On October 29, 2010, Caves e-mailed that same invoice to Sandstrom stating "can you bill us for this and reimburse me" and falsely representing that Plaintiffs were not going to reimburse him. Sandstrom then submitted an invoice on December 4, 2010, via e-mail, claiming reimbursement for $778.75 for "shelving" and added sales tax (which was likely never remitted to the State of Texas). Although the description of "powder coating" is vague, and Sandstrom and Sandstrom Electric have refused repeated requests for backup documents for the work, the work represented to have been performed appears to be the same work performed by others. If Sandstrom was billing for work performed by another contractor, the entire invoice was fraudulent because GMAC did not receive the services alleged to have been performed. Sandstrom Electric's failure

to provide the proof regarding the work that was performed, despite repeated demands and a contractual obligation to do so, is likely part of the scheme of fraudulent markups, as was done on the invoices relating to purchases at Walmart and Home Depot. To the extent any work was performed, there was a fraudulent representation as to the amount and value of the work and Plaintiffs believe this invoice was part of the fraudulent kickback scheme to obtain payments to Sandstrom and Sandstrom Electric. In the event the sales taxes collected were not remitted to the State of Texas, they misrepresented that sales taxes were being paid. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales taxes. Plaintiffs have suffered damages as a result of their reliance on the false representation.

52.     Sandstrom and Sandstrom Electric submitted **Invoice Nos. 11-801 and 802**, dated January 14, 2011. **Invoice 11-801** represents that $2,897.85 is owed for "material for battery cable support." **Invoice 11-802** represents that $4,722.95 is owed for the same thing – "material for battery cable support." These representations were made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on January 16, 2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. With such vague descriptions, Sandstrom and Sandstrom Electric have been asked to provide the backup for both the materials supplied and any work performed. To date, Sandstrom has only provided an invoice for materials purportedly purchased for $1,496.39. Without any backup for any work performed, amounts billed to GMAC reflect a markup on the materials purportedly purchased of over 500%. If Sandstrom is unable to substantiate the fair market value of the work performed, these invoices are fraudulent because Sandstrom and Sandstrom Electric misrepresented the amount of work performed or materials provided. Sandstrom Electric's failure to provide the proof regarding the work that was

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                    **PAGE 19**

performed, despite repeated demands and a contractual obligation to do so, is likely part of the scheme of fraudulent markups, and double billing, as was done on the invoices relating to purchases at Walmart and Home Depot. To the extent any work was performed, there was a fraudulent representation as to the amount and value of the work and Plaintiffs believe this invoice was part of the fraudulent kickback scheme to obtain payments to Sandstrom and Sandstrom Electric. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales taxes. Plaintiffs have suffered damages as a result of their reliance on the false representation.

53. Sandstrom and Sandstrom Electric submitted **Invoice No. 11-803**, dated January 14, 2011, making the false representation that $541.68 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on January 16, 2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Sandstrom and Sandstrom Electric have only provided Home Depot receipts and invoices reflecting the purchase of $240.32, including sales tax, from Home Depot. It is likely that the items purchased from Home Depot and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. An additional unexplained amount for $200.00 and $60.08 was added to the invoice to GMAC. Although Sandstrom and Sandstrom Electric have failed to provide the backup for these amounts, they appear to be a $200.00 markup and an additional 25% of the $240.32. The invoice is further fraudulent because the markup on goods never

delivered to Plaintiffs was over 100%. The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts. Sales tax in the amount of $41.28 was added to the GMAC invoice. The representation regarding sales tax being owed is false because sales tax was already included in the $240.32 invoice. Sandstrom and Sandstrom Electric were, therefore, billing for sales tax twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed. Plaintiffs have suffered damages as a result of their reliance on the false representations.

54. Sandstrom and Sandstrom Electric submitted **Invoice No. 11-804**, dated January 14, 2011, making the false representation that $1,169.71 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on January 16, 2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Sandstrom and Sandstrom Electric have only provided Home Depot receipts and invoices reflecting the purchase of $704.45, including sales tax, from Home Depot. It is likely that the items purchased from Home Depot and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. An additional unexplained amount for $200.00 and $176.05 was added to the invoice to GMAC. Although Sandstrom and Sandstrom Electric have failed to provide the backup for these amounts, they appear to be a $200.00 markup and an additional

25% of the $704.45. The invoice is further fraudulent because the markup on goods never delivered to Plaintiffs was over 100%. The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts. Sales tax in the amount of $89.15 was added to the GMAC invoice. The representation regarding sales tax being owed is false because sales tax was already included in the $704.45 invoice. Sandstrom and Sandstrom Electric were, therefore, billing for sales tax twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed. Plaintiffs have suffered damages as a result of their reliance on the false representations.

55. Sandstrom and Sandstrom Electric submitted **Invoice No. 11-805**, dated March 14, 2011, making the false representation that $1,296.43 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on March 14, 2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Sandstrom and Sandstrom Electric have only provided Home Depot receipts and invoices reflecting the purchase of $798.11, including sales tax, from Home Depot. It is likely that the items purchased from Home Depot and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. An additional unexplained amount for $200.00 and $199.52 was added to the invoice to GMAC. Although Sandstrom and Sandstrom Electric have failed to

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                                    **PAGE 22**

provide the backup for these amounts, they appear to be a $200.00 markup and an additional 25% of the $798.11. The invoice is further fraudulent because the markup on goods never delivered to Plaintiffs was over 100%. The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts. Sales tax in the amount of $98.80 was added to the GMAC invoice. The representation regarding sales tax being owed is false because sales tax was already included in the $798.11 invoice. Sandstrom and Sandstrom Electric were, therefore, billing for sales tax twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed. Plaintiffs have suffered damages as a result of their reliance on the false representations.

56. Sandstrom and Sandstrom Electric submitted **Invoice No. 11-806**, dated March 14, 2011, making the false representation that $385.86 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on March 14, 2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Sandstrom and Sandstrom Electric have only provided Home Depot receipts and invoices reflecting the purchase of $125.16, including sales tax, and a late fee of $30.00, from Home Depot. It is likely that the items purchased from Home Depot and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. An additional unexplained amount for

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                              **PAGE 23**

$200.00 and $31.29 was added to the invoice to GMAC. Although Sandstrom and Sandstrom Electric have failed to provide the backup for these amounts, they appear to be a $200.00 markup and an additional 25% of the $125.16. The invoice is further fraudulent because the markup on goods never delivered to Plaintiffs was over 300%. Further, Sandstrom attempted to bill GMAC for the $30.00 late fee incurred by Sandstrom for failing to pay his credit card bill timely before Sandstrom had even submitted the invoice to GMAC. To add insult to injury, Sandstrom and Sandstrom Electric added the 25% markup to the late fee. The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts. Further, GMAC never agreed to pay Sandstrom's personal credit card late fees nor the 25% markup on the late fees. Sandstrom was trying to make a profit on his failure to pay his credit card bill timely. Sales tax in the amount of $29.41 was added to the GMAC invoice. The representation regarding sales tax being owed is false because sales tax was already included in the $95.16 invoice. Sandstrom and Sandstrom Electric were, therefore, billing for sales tax twice. Further, there was no basis to attempt to collect sales tax on the late fee charged by Home Depot. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed. Plaintiffs have suffered damages as a result of their reliance on the false representations.

57.     Sandstrom and Sandstrom Electric submitted **Invoice No. 11-807**, dated March 14, 2011, making the false representation that $1,004.69 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on November March 14, 2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to

"fss.rescappayables@ally.com" and to Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. A portion of the amount billed to GMAC, $582.50, was for purchases by Sandstrom and/or Sandstrom Electric at Walmart. Although they have not provided any receipts from Walmart showing the individual items purchased, it is likely that the items purchased from Walmart and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. The statement produced in discovery by Sandstrom for his Walmart Discover card shows a total of $582.50, to which Sandstrom added an additional $200.00 and $145.62 for which no backup has been provided. The $200.00 is likely a markup by Sandstrom and Sandstrom Electric. The $145.62 appears to be a 25% markup of the $582.50 Walmart purchases. The representation that these additional amounts added were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts being placed on the GMAC invoice. Further, although sales taxes were likely already paid at Walmart and included in the $1004.69, Sandstrom and Sandstrom Electric made the false representation that an additional $76.57 was owed in sales taxes and added it to the GMAC invoice. They were, therefore, billing GMAC twice for sales taxes. It is unlikely that they remitted the additional sales taxes to the State of Texas. If they failed to do so, they misrepresented that sales taxes were being paid. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales taxes not owed. Plaintiffs have suffered damages as a result of their reliance on the false representation.

58. Sandstrom and Sandstrom Electric submitted **Invoice No. 11-821**, dated May 25, 2011, making the false representation that $663.27 was owed by GMAC for either goods or

services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on May 25, 2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Sandstrom and Sandstrom Electric have only provided Home Depot receipts, with no account statements reflecting the purchase of $330.18, including sales tax, from Home Depot. It is likely that the items purchased from Home Depot and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. An additional unexplained amount for $200.00 and $82.54 was added to the invoice to GMAC. Although Sandstrom and Sandstrom Electric have failed to provide the backup for these amounts, they appear to be a $200.00 markup and an additional 25% of the $330.18. The invoice is further fraudulent because the markup on goods never delivered to Plaintiffs was over 100%. The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts. Sales tax in the amount of $50.55 was added to the GMAC invoice. The representation regarding sales tax being owed is false because sales tax was already included in the $330.18 invoice. Sandstrom and Sandstrom Electric were, therefore, billing for sales tax twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed. Plaintiffs have suffered damages as a result of their reliance on the false representations.

**PLAINTIFFS' THIRD AMENDED COMPLAINT** **PAGE 26**

59.     Sandstrom and Sandstrom Electric submitted **Invoice No. 11-822**, dated May 25,
2011, making the false representation that $1,947.53 was owed by GMAC for either goods or
services provided to GMAC on a date unknown.  This representation was made by Sandstrom
and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on May 25,
2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to
"fss.rescappayables@ally.com" and to Caves.  The representation was false because the amount
billed was for the purchasing of goods which were not delivered to GMAC, plus additional
amounts added by Sandstrom and Sandstrom Electric.  Despite repeated demands, Sandstrom
and Sandstrom Electric have not provided the receipts, invoices or any other backup for the
amounts billed, but they are believed to be part of the same scheme to make purchases at
Walmart, mark them up, add on sales tax, and bill them to GMAC.  Plaintiffs reserve the right to
plead further once the documents are provided.

60.     Sandstrom and Sandstrom Electric submitted **Invoice No. 11-823**, dated June 26,
2011, making the false representation that $1,677.12 was owed by GMAC for either goods or
services provided to GMAC on a date unknown.  This representation was made by Sandstrom
and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on June 22,
2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to
"fss.rescappayables@ally.com" and to Caves.  The representation was false because the amount
billed was for the purchasing of goods which were not delivered to GMAC, plus additional
amounts added by Sandstrom and Sandstrom Electric.  Despite repeated demands, Sandstrom
and Sandstrom Electric have not provided the receipts, invoices or any other backup for the
amounts billed, but they are believed to be part of the same scheme to make purchases at

Walmart, mark them up, add on sales tax, and bill them to GMAC. Plaintiffs reserve the right to

plead further once the documents are provided.

61.     Sandstrom and Sandstrom Electric submitted **Invoice No. 11-824**, dated June 26,

2011, making the false representation that $550.86 was owed by GMAC for either goods or

services provided to GMAC on a date unknown. This representation was made by Sandstrom

and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on July 28,

2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to

"fss.rescappayables@ally.com" and Caves. The representation was false because the amount

billed was for the purchasing of goods which were not delivered to GMAC, plus additional

amounts added by Sandstrom and Sandstrom Electric. Sandstrom and Sandstrom Electric have

only provided Home Depot receipts, with no account statements reflecting the purchase of

$247.11, including sales tax, from Home Depot. It is likely that the items purchased from Home

Depot and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They

were not for use at any of Plaintiffs' facilities. An additional unexplained amount for $200.00

and $61.77 was added to the invoice to GMAC. Although Sandstrom and Sandstrom Electric

have failed to provide the backup for these amounts, they appear to be a $200.00 markup and an

additional 25% of the $247.11. The invoice is further fraudulent because the markup on goods

never delivered to Plaintiffs was over 100%. The representation that these amounts were owed

by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing

these amounts. Sales tax in the amount of $41.98 was added to the GMAC invoice. The

representation regarding sales tax being owed is false because sales tax was already included in

the $247.11 invoice. Sandstrom and Sandstrom Electric were, therefore, billing for sales tax

twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas.

Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed.  Plaintiffs have suffered damages as a result of their reliance on the false representations.

62.   Sandstrom and Sandstrom Electric submitted **Invoice No. 11-828**, dated July 28, 2011, making the false representation that $2,881.14 was owed by GMAC for either goods or services provided to GMAC on a date unknown.  This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on July 28, 2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves.  The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric.  Sandstrom and Sandstrom Electric have only provided Home Depot receipts, with no account statements.  The receipts do not match the invoice, but Plaintiffs believe the same formula and markups were used as in other Home Depot invoices.   The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts.  Sales tax in the amount of $219.58 was added to the GMAC invoice.  The representation regarding sales tax being owed is false because sales tax was likely already paid at the register at Home Depot.  Sandstrom and Sandstrom Electric were, therefore, billing for sales tax twice.  It is unlikely that they actually remitted the additional sales tax to the State of Texas.  Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed.  Plaintiffs have suffered damages as a result of their reliance on the false representations.

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                          **PAGE 29**

63.     Sandstrom and Sandstrom Electric submitted **Invoice No. 11-829**, dated July 28, 2011, making the false representation that $1,817.90 was owed by GMAC for either goods or services provided to GMAC on a date unknown.  This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on July 28, 2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and to Caves.  The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric.  Despite repeated demands, Sandstrom and Sandstrom Electric have not provided the receipts, invoices or any other backup for the amounts billed, but they are believed to be part of the same scheme to make purchases at Walmart, mark them up, add on sales tax, and bill them to GMAC.  Plaintiffs reserve the right to plead further once the documents are provided.

64.     Sandstrom and Sandstrom Electric submitted **Invoice No. 11-830**, dated August 15, 2011, making the false representation that $1,916.80 was owed by GMAC for either goods or services provided to GMAC on a date unknown.  This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail to Caves on August 15, 2011.  The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric.  Sandstrom and Sandstrom Electric have only provided Home Depot receipts during this time frame, but they do not match the invoice.  Plaintiffs believe that Sandstrom applied the same markup scheme.  The merchandise reflected in the receipts provided was not for use at any of Plaintiffs' facilities.  The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts.

Sales tax in the amount of $146.08 was added to the GMAC invoice. The representation regarding sales tax being owed is false because sales tax was likely already paid at the register at Home Depot. Sandstrom and Sandstrom Electric were, therefore, billing for sales tax twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed. Plaintiffs have suffered damages as a result of their reliance on the false representations.

65.     Sandstrom and Sandstrom Electric submitted **Invoice No. 11-831**, dated August 15, 2011, making the false representation that $4,683.76 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on August 15, 2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and to Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Despite repeated demands, Sandstrom and Sandstrom Electric have not provided the receipts, invoices or any other backup for the amounts billed, but they are believed to be part of the same scheme to make purchases at Walmart, mark them up, add on sales tax, and bill them to GMAC. Plaintiffs reserve the right to plead further once the documents are provided.

66.     Sandstrom and Sandstrom Electric submitted **Invoice No. 11-835**, dated September 19, 2011, making the false representation that $1,382.42 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail

to Caves on March 1, 2012. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Sandstrom and Sandstrom Electric have only provided Home Depot receipts and invoices reflecting the purchase of $861.65, including sales tax, from Home Depot. It is likely that the items purchased from Home Depot and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. The items were not for use at any of Plaintiffs' facilities. An additional unexplained amount for $200.00 and $215.41 was added to the invoice to GMAC. Although Sandstrom and Sandstrom Electric have failed to provide the backup for these amounts, they appear to be a $200.00 markup and an additional 25% of the $861.65. The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts. Sales tax in the amount of $105.36 was added to the GMAC invoice. The representation regarding sales tax being owed is false because sales tax was already included in the $861.65 invoice. Sandstrom and Sandstrom Electric were, therefore, billing for sales tax twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed. Plaintiffs have suffered damages as a result of their reliance on the false representations.

67. Sandstrom and Sandstrom Electric submitted **Invoice No. 11-836**, dated September 19, 2011, making the false representation that $2,619.62 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on September 19, 2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to

"fss.rescappayables@ally.com" and Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Despite repeated demands, Sandstrom and Sandstrom Electric have not provided the receipts, invoices or any other backup for the amounts billed, but they are believed to be part of the same scheme to make purchases at Walmart, mark them up, add on sales tax, and bill them to GMAC. Plaintiffs reserve the right to plead further once the documents are provided.

68.     Sandstrom and Sandstrom Electric submitted **Invoice No. 11-837**, dated November 20, 2011, making the false representation that $1,512.27 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail to Caves on November 24, 2011. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Sandstrom and Sandstrom Electric have only provided Home Depot receipts with no invoices or backup for the difference between the amount of the receipts and the amount of the Sandstrom invoice. It is likely that the items purchased from Home Depot and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. The unexplained markups were likely the same 15% and $200.00 as was done with other invoices. The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts. Sales tax in the amount of $115.94 was added to the GMAC invoice. The representation regarding sales tax being owed is false because sales tax was already included in the register receipts. Sandstrom and Sandstrom Electric were, therefore, billing for

sales tax twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed. Plaintiffs have suffered damages as a result of their reliance on the false representations.

69.     Sandstrom and Sandstrom Electric submitted **Invoice No. 11-838**, dated November 20, 2011, making the false representation that $1,931.01 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on November 24, 2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. A portion of the amount billed to GMAC, $1,267.07, was for purchases by Sandstrom and/or Sandstrom Electric at Walmart. Although they have not provided any receipts from Walmart showing the individual items purchased, it is likely that the items purchased from Walmart and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. The items were not for use at any of Plaintiffs' facilities. The statement produced in discovery by Sandstrom for his Walmart Discover card shows a total of $1,267.09, to which Sandstrom added an additional $200.00 and $316.77 for which no backup has been provided. The $200.00 is likely a markup by Sandstrom and Sandstrom Electric. The $316.77 appears to be a 25% markup of the $1,267.09 Walmart purchases. The representation that these additional amounts added were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts being placed on the GMAC invoice. Further, although sales taxes were likely already paid at Walmart, and included in the

$1,267.07, Sandstrom and Sandstrom Electric made the false representation that an additional $147.17 was owed in sales taxes and added it to the GMAC invoice. They were, therefore, billing GMAC twice for sales taxes. It is unlikely that they remitted the additional sales taxes to the State of Texas. If they failed to do so, they misrepresented that sales taxes were being paid. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales taxes not owed. Plaintiffs have suffered damages as a result of their reliance on the false representation.

70.     Sandstrom and Sandstrom Electric submitted **Invoice No. 11-839**, dated November 20, 2011, making the false representation that $449.11 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on November 24, 2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Sandstrom and Sandstrom Electric have only provided Home Depot receipts and invoices reflecting the purchase of $171.91, including sales tax, from Home Depot. It is likely that the items purchased from Home Depot and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. An additional unexplained amount for $200.00 and $42.97 was added to the invoice to GMAC. Although Sandstrom and Sandstrom Electric have failed to provide the backup for these amounts, they appear to be a $200.00 markup and an additional 25% of the $171.91. The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts. Sales

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                              **PAGE 35**

tax in the amount of $34.23 was added to the GMAC invoice. The representation regarding sales tax being owed is false because sales tax was already included in the $171.91 invoice. Sandstrom and Sandstrom Electric were, therefore, billing for sales tax twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed. The markup on the $171.91 paid at Home Depot was over 250%. Plaintiffs have suffered damages as a result of their reliance on the false representations.

71. Sandstrom and Sandstrom Electric submitted **Invoice No. 11-840**, dated November 20, 2011, making the false representation that $499.80 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on November 24, 2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Sandstrom and Sandstrom Electric have only provided Walmart receipts and invoices reflecting the purchase of $209.37, including sales tax, from Walmart. It is likely that the items purchased from Walmart and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. Additional unexplained amounts for $200.00 and $52.34 were added to the invoice to GMAC. Although Sandstrom and Sandstrom Electric have failed to provide the backup for these amounts, they appear to be a $200.00 markup and an additional 25% of the $209.37. The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts. Sales tax in

the amount of $38.09 was added to the GMAC invoice. The representation regarding sales tax being owed is false because sales tax was already included in the $209.37 invoice. Sandstrom and Sandstrom Electric were, therefore, billing for sales tax twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed. The markup on the $209.37 paid at Walmart was over 200%. Plaintiffs have suffered damages as a result of their reliance on the false representations.

72.  Sandstrom and Sandstrom Electric submitted **Invoice Nos. 11-841 and 842**, dated November 20, 2011. **Invoice 11-841** represents that $2,993.43 is owed for "storage lighting." **Invoice 11-842** represents that $1,987.73 is owed for "meeting area power." These representations were made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on November 24, 2011 from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. With such vague descriptions, Sandstrom and Sandstrom Electric have been asked to provide the backup for both the materials supplied and any work performed. To date, Sandstrom has only provided an invoice for materials – $367.12 purportedly for Invoice 11-842 and $237.66 for Invoice 11-841. Without any backup for any work performed, amounts billed to GMAC reflect markups of over 500% and 1,000% respectively. If Sandstrom is unable to substantiate the fair market value of the work performed, these invoices are fraudulent because Sandstrom and Sandstrom Electric misrepresented the amount of work performed or materials provided. Sandstrom Electric's failure to provide the proof regarding the work that was performed, despite repeated demands and a contractual obligation to do so, is likely part of the scheme of fraudulent markups, and double billing, as was done on the invoices relating to purchases at Walmart and Home Depot.

To the extent any work was performed, there was a fraudulent representation as to the amount and value of the work and Plaintiffs believe this invoice was part of the fraudulent kickback scheme to obtain payments to Sandstrom and Sandstrom Electric. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales taxes. Plaintiffs have suffered damages as a result of their reliance on the false representation.

73.     Sandstrom and Sandstrom Electric submitted **Invoice No. 11-843**, dated December 19, 2011, making the false representation that $564.53 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on December 19, 2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Sandstrom and Sandstrom Electric have only provided Home Depot receipts and invoices reflecting the purchase of $257.21, including sales tax, from Home Depot. It is likely that the items purchased from Home Depot and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. Additional unexplained amounts for $200.00 and $64.30 were added to the invoice to GMAC. Although Sandstrom and Sandstrom Electric have failed to provide the backup for these amounts, they appear to be a $200.00 markup and an additional 25% of the $257.21. The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts. Sales tax in the amount of $43.02 was added to the GMAC invoice. The representation regarding sales tax being owed is false because sales tax was already included in the $257.21 invoice. Sandstrom

and Sandstrom Electric were, therefore, billing for sales tax twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed. The markup on the $257.21 paid at Home Depot was over 200%. Plaintiffs have suffered damages as a result of their reliance on the false representations.

74. Sandstrom and Sandstrom Electric submitted **Invoice No. 11-846**, dated December 19, 2011, making the false representation that $823.24 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on December 19, 2011, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. A portion of the amount billed to GMAC, $448.40, was for purchases by Sandstrom and/or Sandstrom Electric at Walmart. Although they have not provided any receipts from Walmart showing the individual items purchased, it is likely that the items purchased from Walmart and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. The statement produced in discovery by Sandstrom for his Walmart Discover card shows a total of $448.40, to which Sandstrom added an additional $200.00 and $112.10 for which no backup has been provided. The $200.00 is likely a markup by Sandstrom and Sandstrom Electric. The $112.10 appears to be a 25% markup of the $448.40 Walmart purchases. The representation that these additional amounts added were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts being placed on the GMAC invoice. Further,

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                    **PAGE 39**

although sales taxes were likely already paid at Walmart and included in the $448.40, Sandstrom and Sandstrom Electric made the false representation that an additional $62.74 was owed in sales taxes and added it to the GMAC invoice. They were, therefore, billing GMAC twice for sales taxes. It is unlikely that they remitted the additional sales taxes to the State of Texas. If they failed to do so, they misrepresented that sales taxes were being paid. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales taxes not owed. Plaintiffs have suffered damages as a result of their reliance on the false representation.

75.    Sandstrom and Sandstrom Electric submitted **Invoice No. 12-806**, dated February 28, 2012, making the false representation that $1,285.99 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on February 28, 2012, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Sandstrom and Sandstrom Electric have only provided Home Depot receipts and invoices reflecting the purchase of $790.39, including sales tax, from Home Depot. It is likely that the items purchased from Home Depot and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. Additional unexplained amounts for $200.00 and $197.59 were added to the invoice to GMAC. Although Sandstrom and Sandstrom Electric have failed to provide the backup for these amounts, they appear to be a $200.00 markup and an additional 25% of the $790.39. The representation that these amounts were owed by GMAC is false

because Sandstrom did not provide any services to GMAC to justify billing these amounts. Sales tax in the amount of $98.01 was added to the GMAC invoice. The representation regarding sales tax being owed is false because sales tax was already included in the $790.39 invoice. Sandstrom and Sandstrom Electric were, therefore, billing for sales tax twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed. Plaintiffs have suffered damages as a result of their reliance on the false representations.

76. Sandstrom and Sandstrom Electric submitted **Invoice No. 12-807**, dated February 28, 2012, making the false representation that $1,540.56 is owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on February 28, 2012, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. A portion of the amount billed to GMAC, $987.52, was for purchases by Sandstrom and/or Sandstrom Electric at Walmart. Although they have not provided any receipts from Walmart showing the individual items purchased, it is likely that the items purchased from Walmart and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. The statement produced in discovery by Sandstrom for his Walmart Discover card shows a total of $978.52, to which Sandstrom added an additional $200.00 and $244.63 for which no backup has been provided. The $200.00 is likely a markup by Sandstrom and Sandstrom Electric. The $244.63

appears to be a 25% markup of the $987.52 Walmart purchases. The representation that these additional amounts added were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts being placed on the GMAC invoice. Further, although sales taxes were likely already paid at Walmart and included in the $978.52, Sandstrom and Sandstrom Electric made the false representation that an additional $117.41 was owed in sales taxes and added it to the GMAC invoice. They were, therefore, billing GMAC twice for sales taxes. It is unlikely that they remitted the additional sales taxes to the State of Texas. If they failed to do so, they misrepresented that sales taxes were being paid. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales taxes not owed. Plaintiffs have suffered damages as a result of their reliance on the false representation.

77.     Sandstrom and Sandstrom Electric submitted **Invoice No. 12-810**, dated February 28, 2012, making the false representation that $801.05 is owed by GMAC for "cooling containment door removal/installation" on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on February 28, 2012, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and to Caves. The work involved removing and replacing approximately six screws in a door, while the invoice represents that $740.00 worth of work was performed. The representation was false because GMAC did not receive $740.00 worth of electrical services. Further, Sandstrom has failed to provide the proof regarding the work that was performed despite repeated demands and a contractual obligation to do so. In light of the fraudulent markups and double billing on sales tax on the invoices relating to purchases at Walmart and Home Depot for goods never provided to any of Plaintiffs' facilities, coupled with

the personal benefits received by Flinn and Caves from Sandstrom and Sandstrom Electric in exchange for approving invoices, Plaintiffs believe this invoice was part of the fraudulent scheme to obtain payments to Sandstrom and Sandstrom Electric as part of the kickback scheme. In the event the sales taxes collected were not remitted to the State of Texas, they misrepresented that sales taxes were being paid. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales taxes. Plaintiffs have suffered damages as a result of their reliance on the false representation.

78. Sandstrom and Sandstrom Electric submitted **Invoice No. 12-811**, dated February 28, 2012, making the false representation that $2,598.00 is owed by GMAC for "cut raised floor tile for new CRAC" on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on February 28, 2012 from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. Although the description is vague, and Sandstrom and Sandstrom Electric have refused repeated requests for backup documents for the work, the work represented to have been performed appears to be the same work another contractor was supposed to perform. If Sandstrom was billing for work performed by another contractor, the entire invoice was fraudulent because GMAC did not receive the services alleged to have been performed. Sandstrom Electric's failure to provide the proof regarding the work that was performed, despite repeated demands and a contractual obligation to do so, is likely part of the scheme of fraudulent markups, and double billing on sales tax, as was done on the invoices relating to purchases at Walmart and Home Depot. The cost of cutting tile is approximately $27 per tile and Sandstrom's bill reflects $150 per tile. To the extent any work was performed, there was a fraudulent representation as to the amount and value of the work and Plaintiffs believe this

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                    **PAGE 43**

invoice was part of the fraudulent kickback scheme to obtain payments to Sandstrom and Sandstrom Electric. In the event the sales taxes collected were not remitted to the State of Texas, they misrepresented that sales taxes were being paid. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales taxes. Plaintiffs have suffered damages as a result of their reliance on the false representation.

79.    Sandstrom and Sandstrom Electric submitted **Invoice No. 12-815**, dated March 1, 2012, making the false representation that $777.30 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail to Caves on March 26, 2012. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Sandstrom and Sandstrom Electric have only provided Home Depot receipts with no invoices or backup for the difference between the amount of the receipts and the amount of the Sandstrom invoice. It is likely that the items purchased from Home Depot and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. The unexplained markups were likely the same 25% and $200.00 as was done with other invoices. The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts. Sales tax in the amount of $59.24 was added to the GMAC invoice. The representation regarding sales tax being owed is false because sales tax was already included in the register receipts. Sandstrom and Sandstrom Electric were, therefore, billing for sales tax twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales

tax not owed. Plaintiffs have suffered damages as a result of their reliance on the false representations.

80.     Sandstrom and Sandstrom Electric submitted **Invoice No. 12-816**, dated March 1, 2012, making the false representation that $800.68 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on March 26, 2012, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Despite repeated demands, Sandstrom and Sandstrom Electric have not provided the receipts, invoices or any other backup for the amounts billed, but they are believed to be part of the same scheme to make purchases at Walmart, mark them up, add on sales tax, and bill them to GMAC. Plaintiffs reserve the right to plead further once the documents are provided.

81.     Sandstrom and Sandstrom Electric submitted **Invoice No. 12-821**, dated April 1, 2012, making the false representation that $1,664.76 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on April 19, 2012, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Despite repeated demands, Sandstrom and Sandstrom Electric have not provided the receipts, invoices or any other backup for the

amounts billed, but they are believed to be part of the same scheme to make purchases at Walmart, mark them up, add on sales tax, and bill them to GMAC. Plaintiffs reserve the right to plead further once the documents are provided.

82. Sandstrom and Sandstrom Electric submitted **Invoice No. 12-822**, dated April 1, 2012, making the false representation that $1,796.31 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail to Caves on April 19, 2012. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Sandstrom and Sandstrom Electric have only provided Home Depot receipts, with no invoices or backup for the difference between the amount of the receipts and the amount of the Sandstrom invoice. It is likely that the items purchased from Home Depot and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. The unexplained markups were likely the same 25% and $200.00 as was done with other invoices. The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts. Sales tax in the amount of $136.90 was added to the GMAC invoice. The representation regarding sales tax being owed is false because sales tax was already included in the register receipts. Sandstrom and Sandstrom Electric were, therefore, billing for sales tax twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed. Plaintiffs have suffered damages as a result of their reliance on the false representations.

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                          **PAGE 46**

83.     Sandstrom and Sandstrom Electric submitted **Invoice No. 12-824**, dated June 1, 2012, making the false representation that $1,724.26 was owed by GMAC for either goods or services provided to GMAC on a date unknown.  This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on June 5, 2012, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves.  The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric.  Despite repeated demands, Sandstrom and Sandstrom Electric have not provided the receipts, invoices or any other backup for the amounts billed, but they are believed to be part of the same scheme to make purchases at Walmart, mark them up, add on sales tax, and bill them to GMAC.  Plaintiffs reserve the right to plead further once the documents are provided.

84.     Sandstrom and Sandstrom Electric submitted **Invoice No. 12-825**, dated June 1, 2012, making the false representation that $777.30 was owed by GMAC for either goods or services provided to GMAC on a date unknown.  This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail to Caves on June 5, 2012.  The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric.  Sandstrom and Sandstrom Electric have only provided Home Depot receipts, with no invoices or backup for the difference between the amount of the receipts and the amount of the Sandstrom invoice.  It is likely that the items purchased from Home Depot and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn.  They were not for use at any of Plaintiffs' facilities.  The unexplained markups were likely the same 25% and

$200.00 as was done with other invoices. The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts. Sales tax in the amount of $98.78 was added to the GMAC invoice. The representation regarding sales tax being owed is false because sales tax was already included in the register receipts. Sandstrom and Sandstrom Electric were, therefore, billing for sales tax twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed. Plaintiffs have suffered damages as a result of their reliance on the false representations.

85.     Sandstrom and Sandstrom Electric submitted **Invoice No. 12-826**, dated June 1, 2012, making the false representation that $1,485.64 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail to Caves on June 5, 2012. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Sandstrom and Sandstrom Electric have only provided Home Depot receipts, with no invoices or backup for the difference between the amount of the receipts and the amount of the Sandstrom invoice. It is likely that the items purchased from Home Depot and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. The unexplained markups were likely the same 25% and $200.00 as was done with other invoices. The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts. Sales tax in the amount of $113.22 was added to the GMAC invoice. The

representation regarding sales tax being owed is false because sales tax was already included in the register receipts. Sandstrom and Sandstrom Electric were, therefore, billing for sales tax twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed. Plaintiffs have suffered damages as a result of their reliance on the false representations.

86. Sandstrom and Sandstrom Electric submitted **Invoice No. 12-834**, dated July 2, 2012, making the false representation that $2,394.63 is owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on July 16, 2012, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and to Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. A portion of the amount billed to GMAC, $1,609.71, was for purchases by Sandstrom and/or Sandstrom Electric at Walmart. Although they have not provided any receipts from Walmart showing the individual items purchased, it is likely that the items purchased from Walmart and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. The statement produced in discovery by Sandstrom for his Walmart Discover card shows a total of $1,609.71, to which Sandstrom added an additional $200.00 and $404.42 for which no backup has been provided. The $200.00 is likely a markup by Sandstrom and Sandstrom Electric. The $404.42 appears to be a 25% markup of the $1,609.71 Walmart purchases. The representation that these additional amounts added were owed by GMAC is false because Sandstrom did not

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                             **PAGE 49**

provide any services to GMAC to justify billing these amounts being placed on the GMAC invoice. Further, although sales taxes were likely already paid at Walmart and included in the $1,609.71, Sandstrom and Sandstrom Electric made the false representation that an additional $182.50 was owed in sales taxes and added it to the GMAC invoice. They were, therefore, billing GMAC twice for sales taxes. It is unlikely that they remitted the additional sales taxes to the State of Texas. If they failed to do so, they misrepresented that sales taxes were being paid. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales taxes not owed. Plaintiffs have suffered damages as a result of their reliance on the false representation.

87. Sandstrom and Sandstrom Electric submitted **Invoice No. 12-835**, dated July 2, 2012, making the false representation that $2,127.42 is owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on July 16, 2012, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. A portion of the amount billed to GMAC, $1,412.23, was for purchases by Sandstrom and/or Sandstrom Electric at Walmart. Although they have not provided any receipts from Walmart showing the individual items purchased, it is likely that the items purchased from Walmart and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. The statement produced in discovery by Sandstrom for his Walmart Discover card shows a total of $1,412.23, to which Sandstrom added an additional $200.00 and $353.05 for which no backup

has been provided.  The $200.00 is likely a markup by Sandstrom and Sandstrom Electric.  The $353.05 appears to be a 25% markup of the $1,412.23 Walmart purchases.  The representation that these additional amounts added were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts being placed on the GMAC invoice.  Further, although sales taxes were likely already paid at Walmart and included in the $1,412.23, Sandstrom and Sandstrom Electric made the false representation that an additional $162.14 was owed in sales taxes and added it to the GMAC invoice.  They were, therefore, billing GMAC twice for sales taxes.  It is unlikely that they remitted the additional sales taxes to the State of Texas.  If they failed to do so, they misrepresented that sales taxes were being paid.  Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales taxes not owed.  Plaintiffs have suffered damages as a result of their reliance on the false representation.

88.     Sandstrom and Sandstrom Electric submitted **Invoice No. 12-841**, dated August 16, 2012, making the false representation that $1,340.75 is owed by GMAC for either goods or services provided to GMAC on a date unknown.  This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on August 16, 2012, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves.  The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric.  A portion of the amount billed to GMAC, $830.86, was for purchases by Sandstrom and/or Sandstrom Electric at Walmart.  Although they have not provided any receipts from Walmart showing the individual items purchased, it is likely that the items purchased from Walmart and billed to GMAC were either retained by Sandstrom

or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. The statement produced in discovery by Sandstrom for his Walmart Discover card shows a total of $830.86, to which Sandstrom added an additional $200.00 and $207.71 for which no backup has been provided. The $200.00 is likely a markup by Sandstrom and Sandstrom Electric. The $207.71 appears to be a 25% markup of the $830.86 Walmart purchases. The representation that these additional amounts added were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts being placed on the GMAC invoice. Further, although sales taxes were likely already paid at Walmart and included in the $803.86, Sandstrom and Sandstrom Electric made the false representation that an additional $102.18 was owed in sales taxes and added it to the GMAC invoice. They were, therefore, billing GMAC twice for sales taxes. It is unlikely that they remitted the additional sales taxes to the State of Texas. If they failed to do so, they misrepresented that sales taxes were being paid. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales taxes not owed. Plaintiffs have suffered damages as a result of their reliance on the false representation.

89. Sandstrom and Sandstrom Electric submitted **Invoice No. 12-842**, dated August 16, 2012, making the false representation that $835.33 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on August 16, 2012, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Sandstrom and Sandstrom Electric have

only provided Home Depot receipts and invoices reflecting the purchase of $457.34, including sales tax, from Home Depot. It is likely that the items purchased from Home Depot and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. An additional unexplained amount for $200.00 and $114.33 was added to the invoice to GMAC. Although Sandstrom and Sandstrom Electric have failed to provide the backup for these amounts, they appear to be a $200.00 markup and an additional 25% of the $457.34. The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts. Sales tax in the amount of $63.66 was added to the GMAC invoice. The representation regarding sales tax being owed is false because sales tax was already included in the $457.34 invoice. Sandstrom and Sandstrom Electric were, therefore, billing for sales tax twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed. Plaintiffs have suffered damages as a result of their reliance on the false representations.

90.     Sandstrom and Sandstrom Electric submitted **Invoice No. 12-836**, dated July 2, 2012, making the false representation that $783.73 was owed by GMAC for either goods or services provided to GMAC on a date unknown. This representation was made by Sandstrom and Sandstrom Electric through the submission of the invoice to GMAC via e-mail on July 16, 2012, from Sandstrom's personal e-mail account "jsand13231@gmail.com" to "fss.rescappayables@ally.com" and Caves. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Sandstrom and Sandstrom Electric have

only provided Home Depot receipts and invoices reflecting the purchase of $419.20, including sales tax, from Home Depot. It is likely that the items purchased from Home Depot and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. Additional unexplained amounts for $200.00 and $104.80 were added to the invoice to GMAC. Although Sandstrom and Sandstrom Electric have failed to provide the backup for these amounts, they appear to be a $200.00 markup and an additional 25% of the $419.20. The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts. Sales tax in the amount of $59.73 was added to the GMAC invoice. The representation regarding sales tax being owed is false because sales tax was already included in the $419.20 invoice. Sandstrom and Sandstrom Electric were, therefore, billing for sales tax twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed. Plaintiffs have suffered damages as a result of their reliance on the false representations.

91. **Invoice Nos. 12-839 and 12-840** were submitted twice. The first invoice was submitted with the "sold to" as GMAC, and was dated August 16, 2012. It was later altered to change the "sold to," representing that the work was performed for Ally, with a different address. Although it was also dated August 16, 2012, it was mailed with a cover letter dated November 8, 2012, stating that the invoice was a "true and correct" copy and the invoice and was for materials supplied to Ally. Sandstrom submitted this invoice after the conspiracy to submit invoices through Caves was discovered, so Sandstrom altered the invoice in an attempt to obtain payment through the threat of a lien on the property.

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                        **PAGE 54**

92.     There are numerous other invoices submitted by Sandstrom and Sandstrom Electric in the same manner – an e-mail to fss.rescappayables@ally.com, with a copy to Caves or sometimes to Caves and Flinn.  Plaintiffs have provided Sandstrom and Sandstrom Electric with a list of the invoices at issue to give them an opportunity to explain what services were performed or what goods were delivered.  They have yet to provide the information so Plaintiffs reserve the right to amend to plead additional fraudulent invoices.

93.     At the time Sandstrom and Sandstrom Electric made the above-referenced representations, Sandstrom and Sandstrom Electric knew they were false, made them in bad faith or made them with a conscious indifference to their truth or falsity.  Sandstrom and Sandstrom Electric made these fraudulent misrepresentations and/or misrepresentations of material fact to induce Plaintiffs to, among other things, pay for goods and services that Plaintiffs did not receive or benefit from.

94.     Plaintiffs reasonably relied on these misrepresentations and/or omissions and, as a result thereof, paid monies to Sandstrom and Sandstrom Electric.  Plaintiffs would not have taken these actions, among others, had Plaintiffs known the falsity of and intentions behind Sandstrom and Sandstrom Electric's representations and/or Sandstrom Electric's omissions of material fact.  No reasonable person or entity would have interpreted the representations made by Sandstrom and Sandstrom Electric in any different way than Plaintiffs did.

95.     Plaintiffs suffered damages proximately caused by Sandstrom Electric's fraud.

## COUNT 7
## DISGORGEMENT OF PROFITS
## (ALL DEFENDANTS)

96.     Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

97. As set forth in Count 6, Sandstrom and Sandstrom Electric submitted fraudulent invoices to obtain payment for goods not provided and services not performed. They likely also collected sales taxes which were not remitted to the State of Texas. Sandstrom claims that the Walmart and Home Depot purchases were made by Caves and when asked where the merchandise went, claims Plaintiffs should ask Caves. Caves claims he does not know and that Plaintiffs should ask Flinn. Someone is not telling the truth. If Sandstrom or Sandstrom Electric kept the merchandise, the profited in the full amount of the invoices.

98. Additional invoices are still under investigation, but it is likely that Sandstrom and Sandstrom Electric engaged in the same type of markup scheme to be paid for work not performed or goods not delivered.

99. If Flinn or Caves kept the merchandise, Sandstrom and Sandstrom Electric still profited in the amount of the 25% and $200 markup and possibly the sales tax. If Flinn or Caves kept the merchandise, they profited in the amount of the value of the merchandise.

100. Caves further profited from submitting expense reimbursements for his personal purchases, such as the meals while on vacation at Sandstrom's condo, the power washer, and the microwave.

101. Although all Defendants are refusing to fully respond to discovery on these issues, Plaintiffs are entitled to an equitable award for disgorgement of profits from all Defendants who benefitted from this scheme. The breaches of duties owed to Plaintiffs – Caves and Flinn as employees and Sandstrom and Sandstrom Electric as contractors who were given access to Plaintiffs facilities – were willful and deliberate and they are not entitled to compensation even for properly performed services for which no compensation is apportioned. "[T]he possibility of forfeiture of compensation discourages an agent from taking personal advantage of his position

of trust in every situation no matter the circumstances, whether the principal may be injured or not. The remedy of forfeiture removes any incentive for an agent to stray from his duty of loyalty based on the possibility that the principal will be unharmed or may have difficulty proving the existence or amount of damages." *Burrow v. Arce*, 997 S.W.2d 229, 237-45 (Tex. 1999).

102. Plaintiffs request that the Court consider the equitable factors within the Court's discretion such as gravity and timing of the breach of duty, the level of intent or fault, as well as the adequacy of other remedies, including any punitive damages award. The Court should fashion the remedy to fit the circumstances and work to serve the ultimate goal of protecting relationships of trust.

**COUNT 8**
**FRAUD**
**(FLINN)**

103. Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

104. Flinn represented that the Plaintiffs were receiving the benefit of the goods and services they paid for when he approved the vendor invoices. Flinn also represented that expense reports submitted or approved by him were for legitimate business expenses. His submission or approval of invoices or expense reports was a representation to Plaintiffs that the submissions were proper and the amounts should be paid. He failed to disclose the fact that he was receiving a personal benefit from payment of the invoices. By way of example, as a result of payments made to Sandstrom Electric on invoices he approved, Flinn received the personal benefit of free electrical work at his ranch house, free land upon which to build the house, and building supplies purchased by Sandstrom. He also received goods purchased through Peloton for invoices he approved and a free heating and air conditioning from Venture Mechanical. At the time Flinn

made the above-referenced representations, or material omissions of fact, he knew they were false, made them in bad faith or made them with a conscious indifference to their truth or falsity. Flinn made these fraudulent misrepresentations and/or omissions of material fact to induce Plaintiffs, among other things, to pay for goods and services that Plaintiffs did not receive or benefit from.

105.    At the time Flinn made the above-referenced representations, or omissions of material fact, Flinn knew they were false, made them in bad faith or made them with a conscious indifference to their truth or falsity.  Flinn made these fraudulent misrepresentations and/or omissions of material fact to induce Plaintiffs to, among other things, pay for goods and services that Plaintiffs did not receive or benefit from.  Flinn knew that if he disclosed to Plaintiffs that he was receiving free electrical work, free heating and air conditioning systems, goods purchased through Peloton, and was expensing personal expenses, Plaintiffs would not have paid the invoices or the expense reimbursements.

106.    On October 3, 2002, Flinn sent an email to Tim Tarsi, Troy Dechant and Nona DePaul (Ally/Flinn 1548), with a copy to Sandstrom, proposing that Price Edwards, n/k/a Peloton provide maintenance for the Data Center.  He represented that parts purchased by the maintenance provider would be included in the invoice with no markup.  Flinn knew this representation was false because he would use Peloton and Sandstrom to make purchases for his personal use.  Further, Sandstrom placed a substantial markup on purchases from Home Depot and Walmart.

107.    On October 28, 2010, Flinn was asked via e-mail to confirm that he had reviewed expenses submitted by Caves for reimbursement and that they were valid and in accordance with company policy.  Flinn represented that the expenses were in order.  Flinn knew this

representation was false because Caves had been submitting expenses for purchases of items not for use in the facility.

108.     On June 8, 2011, Flinn sent a memo to Ally managers representing that certain security measures would be followed at Data Centers.  (DEF 0858).  He represented that visitors (which would have included Sandstrom) would have to sign in at the Security Desk.  This representation was false because Flinn allowed Sandstrom to enter and leave the Data Center without following this procedure.  Flinn also represented that the issuance of access cards would be done in accordance with HR new hire procedures.  This representation was false because Sandstrom was provided an access card without following these procedures.

109.     Caves told Ally's investigator that Flinn represented to Caves (on dates and times known to Caves) that he must approve Sandstrom Electric invoices and not question them.  If Flinn made this representation to Caves, the representation was false.  Plaintiffs incorporate by reference the factual allegations below in the fraud claim against Caves regarding specific approvals of the Sandstrom Electric invoices.  Plaintiff relied on the representations that the invoices were approved and suffered damages when it paid them.

110.     Plaintiffs reasonably relied on these misrepresentations and/or omissions and, as a result thereof, paid monies to the vendors and to Flinn, or others for the benefit of Flinn, through expense reimbursements.  Plaintiffs would not have taken these actions, among others, had Plaintiffs known the falsity of, and intentions behind Flinn's representations and/or Flinn's omissions of material fact.  No reasonable person or entity would have interpreted the representations made by Flinn in any different way than Plaintiffs did.

111.     Plaintiffs suffered damages proximately caused by Flinn's fraud.

## COUNT 9
### FRAUD
### (CAVES)

112.     Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

113.     Caves represented that the Plaintiffs were receiving the benefit of the goods and services they paid for when he approved the vendor invoices.  Caves also represented that expense reports submitted by him were for legitimate business expenses.  One example of a misrepresentation in an expense report was his request for reimbursement for a power washer.  He also took a template Sandstrom Electric invoice and increased the amount to be paid to Sandstrom, misrepresenting to Plaintiffs the amount Sandstrom was requesting to be paid.  He also submitted a receipt for $124.19 for "Moby Dick's" restaurant dated July 20, 2010, representing that it was for "meals with employees" for "Little Rock Plannings" in Dallas.  This representation was false because the restaurant is in Port Aransas, and the meal was with his family in connection with their free stay at Sandstrom's condo.  Caves made a similar misrepresentation in submitting his expense report requesting reimbursement for $178.12 for "meals with client" for "electrical design review" at Trout Street Bar & Grill.  This representation was false because the restaurant is in Port Aransas and the meal was in connection with his free stay at Sandstrom's condo.

114.     Caves' submission or approval of invoices or expense reports was a representation to Plaintiffs that the submissions were proper and the amounts should be paid.  He failed to disclose the fact that he was receiving a personal benefit from payment of the invoices.  By way of example, as a result of payments made to Sandstrom Electric on invoices he approved, he received the personal benefit of free travel expenses for a trip to San Antonio for his wife.  Upon

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                    **PAGE 60**

information and belief, Caves also stayed at a property belonging to Sandstrom on the Gulf Coast. He also received goods purchased through Peloton for invoices he approved. At the time Caves made the above-referenced representations, or material omissions of fact, he knew they were false, made them in bad faith or made them with a conscious indifference to their truth or falsity. Caves made these fraudulent misrepresentations and/or omissions of material fact to induce Plaintiffs to, among other things, pay for goods and services that Plaintiffs did not receive or benefit from. Caves knew that if he disclosed to Plaintiffs that he was receiving free goods purchased through Peloton, stays at Sandstrom's Gulf Coast property, and was expensing personal expenses, Plaintiffs would not have paid the invoices or the expense reimbursements.

115. Further examples of fraudulent representations by Caves are his approval of Sandstrom invoices:

116. Sandstrom and Sandstrom Electric submitted **Invoice No. 09-809**, dated September 15, 2009, for $3,017.27 to Flinn and Caves. Caves altered the invoice, increasing the amount of the invoice by over 50% to $4,641.02. Caves e-mailed the altered invoice to Raushanah Green on December 21, 2009, requesting that it be paid. To the extent any work was performed, there was a fraudulent representation as to the amount and value of the work and Plaintiffs believe this invoice was part of the fraudulent kickback scheme to obtain payments to Sandstrom and Sandstrom Electric. In the event the sales taxes collected were not remitted to the State of Texas, they misrepresented that sales taxes were being paid. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales taxes. Plaintiffs have suffered damages as a result of their reliance on the false representation.

a. As set forth in more detail above, Sandstrom and Sandstrom Electric submitted **Invoice No. 11-803**, dated January 14, 2011, making the false representation that

**PLAINTIFFS' THIRD AMENDED COMPLAINT** **PAGE 61**

$541.68 was owed by GMAC for either goods or services provided to GMAC on a date unknown. On January 19, 2011, Caves was asked via e-mail by Nikunj Chauhan, an employee of Ally Finance Shared Services, to review the invoice and check it for accuracy and code it to the proper cost center. He was asked to respond via e-mail to Nikunj Chauhan with a copy to the same e-mail address where Sandstrom and Sandstrom Electric originally sent the invoice – "fss.rescappayables@ally.com." Caves responded on January 19 via e-mail, representing that the invoice was approved and should be charged against GMAC's account and the cost center. Caves' representation was false because, as explained in more detail above in the fraud claims asserted against Sandstrom and Sandstrom Electric, the invoice was bogus, but Caves falsely represented that it was approved and should be paid. The representation was false because the amount billed was for the purchasing of goods which were not delivered to GMAC, plus additional amounts added by Sandstrom and Sandstrom Electric. Sandstrom and Sandstrom Electric have only provided Home Depot receipts and invoices reflecting the purchase of $240.32, including sales tax, from Home Depot. It is likely that the items purchased from Home Depot and billed to GMAC were either retained by Sandstrom or given to Caves or Flinn. They were not for use at any of Plaintiffs' facilities. An additional unexplained amount for $200.00 and $60.08 was added to the invoice to GMAC. Although Sandstrom and Sandstrom Electric have failed to provide the backup for these amounts, they appear to be a $200.00 markup and an additional 25% of the $240.32. The invoice is further fraudulent because the markup on goods never delivered to Plaintiffs was over 100%. The representation that these amounts were owed by GMAC is false because Sandstrom did not provide any services to GMAC to justify billing these amounts. Sales tax in the amount of $41.28 was added to the GMAC invoice. The representation regarding sales tax being owed is false because sales tax was already included in

the $240.32 invoice. Sandstrom and Sandstrom Electric were, therefore, billing for sales tax twice. It is unlikely that they actually remitted the additional sales tax to the State of Texas. Plaintiffs relied on the representations of Sandstrom and Sandstrom Electric and paid the invoice, including sales tax not owed. Plaintiffs have suffered damages as a result of their reliance on the false representations.

      b.    As evidenced by Def 253, and Ally/Flinn 003336 through 003459, Caves followed this same approval process for all of the Sandstrom invoices described in the fraud claim above asserted against Sandstrom and Sandstrom Electric. On most of the e-mails, Caves even noted that it was "urgent" to get the Sandstrom invoices approved.

      117.    Caves also misrepresented to Jim Magee, VP Senior Finance Officer – ITG, that the Data Center needed funding to pay Sandstrom $146,000.00, and to pay Peloton the sum of $218,790 for "Data Hardware." On August 12, 2010, he sent an e-mail to Mr. Magee stating that the budget should be approved. Caves knew that the representation was false because he had been involved in the scheme to purchase items from Walmart and Home Depot that were never delivered to Plaintiffs and did not constitute "Data Hardware." This occurred shortly after Caves stayed in Sandtrom's "condo" in Port Aransas.

      118.    On September 5, 2010, Caves submitted an expense report requesting reimbursement for "shelving for storage room" in the amount of $543.20. He attached an invoice from C&H Distributors, LLC, with a "bill to" of GMAC Mortgage. Plaintiffs reimbursed Caves for this purchase. On October 29, 2010, Caves e-mailed that same invoice to Sandstrom stating "can you bill us for this and reimburse me" and falsely represented that Plaintiffs were not going to reimburse him. Sandstrom then submitted an invoice on December 4, 2010, via e-mail, claiming reimbursement for $778.75 for "shelving" and added sales tax (which was likely never

remitted to the State of Texas).  On December 9, 2010, Caves e-mailed Ally's Finance Shared Services Department stating that the invoice was "approved."

119.     On August 26, 2012, Caves submitted an expense report and attendee list for a $500.70 meal at Bohanan's Prime Steaks.  In the attendee list, he represented that 17 people attended the dinner.  This representation was false because the only attendees were Caves, his wife, Sandstrom and his wife.

120.     Plaintiffs reasonably relied on these misrepresentations and/or omissions and, as a result thereof, paid monies to the vendors and to Caves, or others for the benefit of Caves, through expense reimbursements.  Plaintiffs would not have taken these actions, among others, had Plaintiffs known the falsity of, and intentions behind Caves representations and/or Caves' omissions of material fact.  No reasonable person or entity would have interpreted the representations made by Caves in any different way than Plaintiffs did.

121.     Plaintiffs suffered damages proximately caused by Caves' fraud.

## COUNT 10:
## CONSPIRACY
## (ALL DEFENDANTS)

122.     Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

123.     As more particularly described above, Defendants entered into various agreements to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.  The ultimate goal of each of these agreements was to funnel money, goods, or services to each of them through a scheme of submitting invoices or expense reimbursement requests for payment by Plaintiffs.  By way of example, Flinn and Caves agreed that certain of Flinn's personal expenses would be submitted on Caves' expense reports, then approved by Flinn, to essentially

allow Flinn to approve his own expenses and circumvent expense approval policies. Flinn and Caves also agreed that fraudulent expense reports would be submitted so they could both be reimbursed for personal expenses Plaintiffs would not have approved. Flinn and Caves also conspired to have Peloton purchase goods for Flinn and Caves' personal use and to have Plaintiffs pay the invoices. Caves and Sandstrom also agreed on at least one occasion to take an invoice submitted by Sandstrom Electric and to increase the amount to have Plaintiffs pay even more money than Sandstrom Electric originally requested. Caves and Sandstrom conspired regarding the Home Depot and Walmart purchases which were subsequently billed to Plaintiffs with markups going to Sandstrom and Sandstrom Electric. Flinn and Sandstrom agreed that Sandstrom would perform free electrical work at Flinn's ranch house, Sandstrom would give Flinn land, and fraudulent invoices would be submitted to Plaintiffs to funnel money to Sandstrom. Sandstrom, Sandstrom Electric, Flinn and Caves further conspired to push though payment of Sandstrom Electric invoices for services not performed or goods not delivered.

124.     Flinn, Caves and Sandstrom have further conspired after demands were made for preservation of evidence to thwart Plaintiffs' efforts to obtain information. They have all agreed to a strategy involving either silence, refusing to turn over information, or claiming they have no explanations for fraudulent invoices.

125.     Defendants' conspiracy has proximately caused Plaintiffs to incur actual damages.

## <u>COUNT 11</u>:
## BREACH OF CONTRACT
## (CAVES)

126.     Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

127.   Following the termination of his employment, Caves entered into a written agreement with Ally and GMAC that required him to, among other things, fully and completely cooperate with the Plaintiffs' investigation of vendor invoicing improprieties and to return all of Ally and GMAC's property, including items that were purchased by Ally or GMAC.

128.   Caves has violated, and continues to violate, this written agreement because he has failed to perform his affirmative obligations thereunder.  Specifically, Caves has failed to disclose all information he knows about the transactions which are the subject of the Plaintiffs' investigation and he has failed to provide truthful information.  In addition, there are numerous items of property purchased by the Plaintiffs that remain in Caves' possession, including but not limited to a microwave oven, a phone headset, and a camera, each of which was purchased by one of the Plaintiffs.  Further, according to Sandstrom, Caves purchased thousands of dollars of merchandise from Home Depot and Walmart and requested that they be billed to Plaintiffs. Caves was confronted regarding the "WM" and "HD" invoices noted above and claimed to have no knowledge of them.  He has failed to disclose the location or distribution of these purchases. To the extent Caves retained the merchandise, he has breached the agreement by failing to return the property to Plaintiffs.

129.   By failing to fully and completely cooperate with the Plaintiffs' investigation and to return all of the Plaintiffs' property, Caves has breached paragraphs 12 and 13 of his written agreement with Ally and GMAC.  Caves' breaches of the written agreement are a proximate cause of damages to Plaintiffs.  As a result of Caves' wrongful actions described above, Plaintiffs retained counsel to prosecute this claim.  Plaintiffs are, therefore, entitled to recover reasonable and necessary attorneys' fees and costs incurred in the prosecution of this claim pursuant to, *inter alia*, TEX. CIV. PRAC. & REM. CODE § 38.001(8).

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                    **PAGE 66**

## COUNT 12
## BREACH OF CONTRACT
## (SANDSTROM ELECTRIC)

130. Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

131. Sandstrom Electric entered into a Master Services Agreement dated January 14, 2011, with Ally (the "MSA Agreement"). Pursuant to paragraph 8.2 of the Agreement, Sandstrom Electric was required to provide Ally a contact list containing the names, telephone numbers, fax numbers, mobile and pager numbers, e-mail or internet addresses for Supplier Agents. Pursuant to paragraphs 15.1, 15.4, 15.5, 15.6, and 15.8 of the MSA Agreement, Sandstrom Electric was required to obtain certain insurance policies and provide Ally with the Certificates of Insurance for all insurance policies required by the Agreement. Pursuant to paragraph 17 of the MSA Agreement, Sandstrom Electric was required to provide Ally with access to, and assistance and information about, the services under the MSA Agreement. Specifically, Sandstrom Electric was required, pursuant to subsection (i) of paragraph 17, to allow Ally to examine all records and materials of Sandstrom Electric and "Supplier Agents" about the services. Sandstrom Electric was also required, pursuant to subsection (ii) of paragraph 17, to permit an inspection of Sandstrom's house and Flinn's Ranch House as Supplier Agents. Pursuant to subsection (x) of paragraph 17, Sandstrom Electric was required to provide Ally with an inventory of all of Sandstrom Electric's internal and external audit reports about the services. Sandstrom Electric was also required to preserve all documents related to the services. All such records were required to be made available to Ally for inspection.

132. Sandstrom Electric has breached these provisions in the MSA Agreement, most likely to cover up the fact that it submitted invoices for services not performed or goods not

delivered, which is also a breach of the MSA Agreement. It also breached the MSA Agreement by billing Plaintiffs for goods not provided, services not performed, and marking up purchases. Demand has been made for Sandstrom Electric to comply with the MSA Agreement, but the demand has been refused. Sandstrom Electric is liable for all costs and expenses incurred in the investigation of these invoices pursuant to paragraph 12.3(f) of the MSA Agreement.

133.     Ally is entitled to recover all damages proximately caused by all breaches of the MSA Agreement.

### COUNT 13
### ALTER EGO
### (SANDSTROM)

134.     Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

135.     Sandstrom is liable for the actions and agreements of Sandstrom Electric under an alter ego theory. Specifically, Sandstrom used the corporate entity of Sandstrom Electric for the purpose of perpetrating and did perpetrate an actual fraud on Plaintiffs.

### COUNT 14
### FORFEITURE AND DISGORGEMENT
### (FLINN AND CAVES)

136.     Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

137.     Flinn and Caves breached their duty of loyalty to Plaintiffs, for which breach they are required to forfeit the compensation paid to them by Plaintiffs during the period of divided loyalties. Flinn and Caves are also required to forfeit any income or property received by them "on the side" without disclosing their disloyal activities to Plaintiffs. Such forfeiture should

consist of all funds and property received by Flinn and Caves as a result of their breaches of fiduciary duty owed to Plaintiffs.

## COUNT 15
## PUNITIVE DAMAGES
## (ALL DEFENDANTS)

138.    The tortious conduct committed by Defendants was aggravated by the willfulness, wantonness, and malice for which the law allows the imposition of punitive damages.  Their conduct was intentional, willful, wanton and without justification or excuse.

139.    Defendants engaged in the malicious, intentional, and unjustified actions described above with gross indifference to Plaintiffs' rights and with the conscious desire to interfere with Plaintiffs' employee and business relationships.  To punish such action and to deter others from similar wrongdoing, Defendants should be assessed punitive damages in an amount determined by the trier of fact.

140.    Defendants' conduct complained of herein was willful and done with malice, and in reckless disregard to the rights of Plaintiffs.  Defendants were further grossly negligent in their actions.  Plaintiffs are therefore entitled to recover punitive damages.

## COUNT 16
## CONSTRUCTIVE TRUST
## (ALL DEFENDANTS)

141.    Flinn and Caves arranged for the transactions complained of herein.  The goods and services were diverted to Flinn and Caves for their personal benefit.  Further, although Sandstrom claims Caves took the Walmart and Home Depot purchases, the Home Depot account used to make the purchases is in Sandstrom Electric's name.  The Walmart account is in the name of Sandstrom's wife, Sandra Sandstrom.  Further, Flinn and Caves caused Plaintiffs to pay money to vendors, including Sandstrom Electric, for which no adequate explanation has been

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                    **PAGE 69**

provided by the vendors to insure that Plaintiffs received anything in return.  There are, therefore, funds paid and unaccounted for.  With respect to all goods and services diverted to Flinn and Caves, and any merchandise retained by Sandstrom or his wife, Plaintiffs are entitled to a constructive trust for the value of the merchandise retained.  With respect to the overpayments to Sandstrom and Sandstrom Electric, and to the extent any of the funds paid were diverted to Flinn and Caves and they retained them for their own personal gain, Plaintiffs request that the Court impose a constructive trust on all of the funds paid to these Defendants.  Plaintiffs also request that the Court impose a constructive trust on all of the funds that were paid to Sandstrom Electric for work that it was paid for but never performed, for work that it started but did not complete, for duplicate invoicing, and for work that it performed at inflated prices.  Plaintiffs further request a constructive trust on all funds paid to Sandstrom Electric which Sandstrom paid himself or to his wife.  Plaintiffs request that the constructive trust extend to all real estate and personal property (including, but not limited to Sandstrom and Flinn's airplane) to which funds, goods, or services were diverted.

## COUNT 17
## MISAPPROPRIATION
## (FLINN AND CAVES)

142.    Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

143.    During their employment with GMAC, Flinn and Caves were entrusted with Plaintiffs' confidential information, vendor relationships, credit relationships, employee relationships and the goods and services associated with these relationships and information. While employed by GMAC, Flinn and Caves used this confidential information for personal gain without Plaintiffs' authorization or consent.  In addition to misappropriating the confidential

information, Flinn and Caves also misappropriated vendor and credit relationships to divert goods and services to themselves for their personal gain. They further misappropriated the services of the Plaintiffs' employees and vendors to facilitate the diversion of goods and services for their own personal gain. They have also misappropriated the property ordered through the vendors and paid for by Plaintiffs. Flinn and Caves' misappropriation is the proximate cause of damages to Plaintiffs.

<u>**COUNT 18:**</u>
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**
**(SANDSTROM)**

144.  Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

145.  Sandstrom willfully and intentionally interfered with the business relationships between Plaintiffs and its employees, Flinn and Caves. Sandstrom submitted invoices for Sandstrom Electric for goods or services that were either not delivered or performed for Plaintiffs, or that were delivered or provided at inflated prices. He used Flinn and Caves to facilitate the transactions complained of in this Third Amended Petition, as well as breaches of the MSA Agreement. Plaintiffs' employment relationship with Flinn and Caves included an understanding that these employees were being paid to work for the benefit of Plaintiffs and that they would act in the best interests of Plaintiffs and safeguard Plaintiffs' assets and ensure that Plaintiffs received what they paid for in transactions with vendors. Sandstrom interfered with these relationships by inducing them to take actions inconsistent with these duties. Sandstrom's actions were willful and malicious and intended to interfere with the relationships between Plaintiffs and their employees. These actions were without privilege or excuse and were the proximate cause of damages to Plaintiffs.

<u>**PLAINTIFFS' THIRD AMENDED COMPLAINT**</u>                                                    **PAGE 71**

## COUNT 19
### ATTORNEYS' FEES
### (ALL DEFENDANTS)

146.     Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

147.     Pursuant to the express terms of the MSA Agreement and pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code, Sandstrom Electric is liable for reasonable attorneys' fees and costs.

148.     Pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code, Caves is liable for reasonable attorneys' fees and costs as a result of his breach of the contract set forth above.

149.     Sandstrom is liable for attorneys' fees under the MSA Agreement because he is the alter ego of Sandstrom Electric.

150.     Under 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The conduct of Defendants is indefensible.  The most egregious examples are the purchases at Walmart (on Sandstrom's wife's credit card) and Home Depot (either through Peloton or on Sandstrom's credit card).  Defendants essentially went on shopping sprees and then tried to disguise the purchases as business related and had Plaintiffs pay for them.  Plaintiffs' counsel has made numerous attempts to determine who kept the property and where the money went in an effort to streamline the issues in the case.  Defendants' counsel have responded with hundreds of discovery requests, Rule 30(b)(6) deposition notices with over 100 topics, and numerous letters trying to annoy Plaintiffs to the point of not wanting to proceed with the litigation.  They have

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                                      **PAGE 72**

also refused to completely answer discovery to avoid their clients having to admit what should have never been disputed in the first place. At the conclusion of this case, Plaintiffs will present the proof regarding this conduct and request an award under 28 U.S.C. § 1927.

**COUNT 20**
**VIOLATIONS OF RICO, 18 U.S.C. §1962 (C)**
**(ALL DEFENDANTS)**

151.    Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

152.    At all relevant times, Plaintiffs were persons within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

153.    At all relevant times, each RICO Defendant was a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c). The RICO Defendants, for purposes of these claims for relief, are Defendants Flinn, Caves, Sandstrom and Sandstrom Electric.

*The RICO Enterprise*

154.    The RICO Defendants are a group of persons associated together in fact for the common purpose of carrying out an ongoing criminal enterprise, as described in the foregoing paragraphs of this Third Amended Complaint: namely through a campaign of lies, fraud, and deception, to induce the Plaintiffs into paying substantial sums of money to the RICO Defendants by submitting and approving invoices that purported to reflect charges for services performed and goods purchased for the benefit of the Plaintiffs. In actuality, the invoices submitted, processed and approved by these Defendants were fictitious, in that the services were never performed or were grossly inflated in value, and the goods were, likewise, either never provided to the Plaintiffs or were grossly inflated in value. The proceeds of the fraud – in the form of payments, kickbacks, and the conversion of goods – were used to enrich the RICO Defendants. The RICO

Defendants have organized their operation into a cohesive group with specific responsibilities and a continuing structure for accomplishing their goals. Over the years, they have executed their scheme, with only minor changes in the roles that each played in defrauding the Plaintiffs. While some of the details of the fraudulent scheme have differed in fine detail amongst the individual acts of deception, the criminal enterprise generally has been structured to operate as a unit in order to accomplish the goals of their criminal scheme:

(a) Defendants Sandstrom and Sandstrom Electric would prepare and submit invoices through Defendants Flinn and Caves to the Plaintiff companies, in order to obtain payment for goods and services purportedly provided to the Plaintiffs. In fact, the invoices were fictitious, requesting payment for services that, depending on the circumstances, were not performed or were grossly inflated in value, and for goods that were, likewise, either not provided to the Plaintiffs or were grossly inflated in value. Defendants Sandstrom and Sandstrom Electric would provide kickbacks in the form of payments and goods to Defendants Flinn and Caves after Plaintiffs paid the invoices processed and approved by Flinn and Caves.

(b) Defendant Flinn, utilizing his position as an Operations Manager employed by the Plaintiffs, would direct and ensure that the invoices submitted by Defendants Sandstrom and Sandstrom Electric, that Flinn knew to be false, were processed and approved for payment, with the assistance of Caves. Flinn would receive payments from Sandstrom and Sandstrom Electric, in the form of a land transfer and free electrical work. Since many of the goods purchased and billed to Plaintiffs have not been accounted for, some of them may have been given to Flinn.

(c) Defendant Caves, at first at the direction of Flinn and later upon his own initiation, as well as at Flinn's direction, utilized his position as Data Center Manager for the

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                    **PAGE 74**

Plaintiffs to process invoices from Sandstrom and Sandstrom Electric that he knew to be false, and approved their payment by the Plaintiffs. Caves would then receive payments from Sandstrom and Sandstrom Electric, in the form of goods fraudulently claimed to have been purchased for the Plaintiffs, for free use of Sandstrom's vacation home, as well as good and other valuable consideration.

155.    The RICO Defendants constitute an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and in 1962(c), referred to hereinafter as the "enterprise." Each of the RICO Defendants participated in the conduct, operation or management of the enterprise.

156.    At all relevant times, the enterprise was engaged in and its activities affected interstate commerce within the meaning of 18 U.S.C. § 1962(c).

*Pattern of Racketeering Activity*

157.    The RICO Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961 (5) and in violation of 18 U.S.C. § 1962 (c), to wit:

*Pattern of Racketeering Activity: Multiple Instance of Mail Fraud and Wire Fraud in Violation of 18 U.S.C. §§ 1341,1343*

158.    At all times material to this Third Amended Complaint, Plaintiffs were engaged in interstate commerce and in an industry that affects interstate commerce.

159.    As described herein, the RICO Defendants have executed a well-organized scheme in which Sandstrom and Sandstrom Electric would submit false and fraudulent invoices, requesting payment for services and goods that they claimed had been provided for the Plaintiffs'

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                        **PAGE 75**

benefit.  In fact such services were, depending on the specific act, either not provided or the value of such services was grossly inflated, and the goods, likewise, were either never provided to the Plaintiffs or their costs were grossly inflated in value.

160.     The intent of the RICO Defendants in this scheme was to defraud the Plaintiffs by having an outside vendor submit fraudulent and fictitious invoices requesting payment from the company, and then utilizing insiders – managerial employees of the Plaintiffs, who knowingly and intentionally abused their positions of trust – to process and approve the fictitious invoices, knowing that the Plaintiffs would rely on their representations in paying the invoices.  The ultimate goal of the RICO Defendants' scheme or artifice to defraud was to deceive the Plaintiffs into making payments that would directly benefit the individual and organizational RICO Defendants.

161.     The RICO Defendants conspired with one another in the preparation, submission, processing and ultimate approval of the fraudulent invoices, the receipt and distribution of the proceeds or goods purchased from the unlawful activity, and acts intended to conceal the true nature of the transactions from the Plaintiffs.

162.     In furtherance of their scheme, and as described herein, the RICO Defendants transmitted, or caused to be transmitted, by means of wire communication in interstate or foreign commerce, communications, writings, documents, images, and instruments, and also caused matters and things to be placed in any post office or authorized depository, or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier, including, but not limited to, the following:

**PLAINTIFFS' THIRD AMENDED COMPLAINT**                                                **PAGE 76**

(a)     Mailings and/or wirings, including emails and attachments incorporating false and misleading statements regarding services provided for or goods obtained, purportedly for the benefit of the Plaintiffs.

(b)     Wirings and/or mailings between the RICO Defendants concerning the preparation of false and fraudulent invoices and/or proceeds wrongfully obtained from the Plaintiffs;

(c)     Funds transferred by the Plaintiffs to Sandstrom and Sandstrom Electric in the mistaken belief that they were payment for legitimate services or goods based on representations not known by the Plaintiffs to be false, that were made by the RICO Defendants.

163.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-125, which set forth particular uses of the mail, wire and cable communications in furtherance of the RICO Defendants' scheme or artifice to defraud that constitute violations of 18 U.S.C. §§ 1341 and 1343, and describes which individual Defendant caused the communication to be mailed or wired, when the communication was made, and how it furthered the fraudulent scheme.

164.    The RICO Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to deceive and/or defraud Plaintiffs into paying the RICO Defendants and their co-conspirators.

165.    As the RICO Defendants intended, the Plaintiffs relied upon the false statements in the invoices prepared by Sandstrom and Sandstrom Electric, as well as the wrongful statements made by Defendants Flinn and Caves in approving the payment of invoices, which they knew to be false and fraudulent.

166.    As a direct result of the RICO Defendants' scheme or artifice to defraud, the Plaintiffs have suffered an injury to their business and property.  The injuries to Plaintiffs caused

by reason of the violations of 18 USC § 1962(c) include but are not limited to the funds wrongfully obtained by the RICO Defendants, and the fees and costs incurred to investigate and recover the sums wrongfully obtained.

167.    Each of the RICO Defendants have engaged in multiple predicate acts, as described in paragraphs 19 through 149.  The conduct of each of the RICO Defendants described in paragraphs 19 through 149 constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

168.    Further, these injuries to Plaintiffs were a direct, proximate, and reasonably foreseeable result of the violation of 18 U.S.C. § 1962.  Plaintiffs are the ultimate victims of the RICO Defendants' unlawful enterprise.  Plaintiffs have been and will continue to be injured in their business and property in an amount to be determined at trial.

169.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

## COUNT 21
## CONSPIRACY TO VIOLATE OF RICO, 18 U.S.C. § 1962 (D)
### (ALL DEFENDANTS)

170.    Plaintiffs incorporate and adopt by reference each and every allegation in the preceding paragraphs of this Third Amended Complaint.

171.    The RICO Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1962(c) has described above, in violation of 18 U.S.C. § 1962(d).

172.    The RICO Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this

pattern of racketeering activity. This conduct constitutes a conspiracy to violate 18 U.S.C. §

1962(c), in violation of 18 U.S.C. § 1962(d).

173.    Upon information and belief that the RICO Defendants agreed to conduct or

participate, directly or indirectly, in the conduct, management or operation of the enterprise's

affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

174.    Each RICO Defendant knew about and agreed to facilitate the enterprise's scheme

to obtain property from Plaintiffs. It was part of the conspiracy that the RICO Defendants and

their co-conspirators would commit a pattern of racketeering activity in the conduct of the affairs

of the enterprise, including the acts of racketeering set forth in the above paragraphs.

175.    As a direct and proximate result of the RICO Defendants' conspiracy, the acts of

racketeering activity of the enterprise, the overt acts taken in furtherance of that conspiracy, and

violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business and property,

including money and property wrongfully obtained by the Defendants, and the attorneys' fees and

costs in this litigation.

176.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages

plus costs and attorneys' fees from the RICO Defendants.

## V.  **PRAYER FOR RELIEF**

Plaintiffs respectfully pray that judgment be entered in their favor against Defendants and

that they be granted the following relief:

(a)    Actual damages;

(b)    Punitive damages;

(c)    An order disgorging Flinn and Caves of their salary for the period of time

they was breaching fiduciary duties and duties of loyalty;

(d)     An equitable award for unjust enrichment and disgorgement of profits from all Defendants;

(e)     Costs of Court;

(f)     Pre-judgment interest;

(g)     Post-judgment interest;

(h)     A constructive trust;

(i)     Treble damages under RICO;

(j)     Attorneys' fees; and

(k)     Such other relief to which Plaintiffs have shown themselves justly entitled.


Dated:  March 27, 2013                           Respectfully submitted,


                                                 By: /s/ William L. Davis
                                                      William L. Davis, Esq.
                                                      Texas Bar No. 05563800
                                                      davisw@jacksonlewis.com
                                                      Talley R. Parker, Esq.
                                                      Texas Bar No. 24065872
                                                      talley.parker@jacksonlewis.com

                                                 JACKSON LEWIS LLP
                                                 500 N. Akard, Suite 2500
                                                 Dallas, Texas 75201
                                                 Telephone:  (214) 520-2400
                                                 Fax:  (214) 520-2008

                                                 **ATTORNEYS FOR PLAINTIFFS
                                                 ALLY FINANCIAL INC.,
                                                 RESIDENTIAL CAPITAL, LLC, and
                                                 GMAC MORTGAGE, LLC**

## CERTIFICATE OF SERVICE

On March 27, 2013, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2), including the following:

Judith P. Kenney
Nat M. Kenney
Judith P. Kenney & Associates, P.C.
16475 Dallas Parkway, Suite 330
Addison, Texas 75001

William J. Dunleavy
825 Market Street
Building M, Suite 250
Allen, Texas 75013

Ryan K. Geddie
Martin, Disiere, Jefferson & Wisdom, LLP
16000 N. Dallas Parkway, Suite 800
Dallas, Texas 75248

/s/ William L. Davis
William L. Davis