UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

RESIDENTIAL CAPITAL, LLC, *et al.*

Debtors.

FOR PUBLICATION

Case No. 12-12020 (MG)

Jointly Administered

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART ALLY FINANCIAL INC.'S MOTION FOR AN ORDER ENFORCING THE CHAPTER 11 PLAN INJUNCTION

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

On November 14, 2013—one month before the chapter 11 Plan of Residential Capital, LLC, and its debtor-affiliates was confirmed—sixty-nine plaintiffs (the "California Litigation Claimants") filed a state court lawsuit against non-debtors Ally Financial Inc. ("AFI"), Ally Bank, and GMAC Mortgage Group LLC ("GMAC Mortgage Group," and together with Ally Bank and AFI, "Ally"), based on the same claims they raised in proofs of claim filed against Debtors in these chapter 11 cases; in February 2014, the Debtors' objection to those claims was sustained and the claims were expunged.[1]

The confirmed Plan (defined below) includes a Third Party Release and Plan Injunction (defined below) in favor of Ally. After confirmation of the Plan, Ally's counsel requested that counsel for the California Litigation Claimants dismiss the state court lawsuit against Ally because it was precluded under the Plan; when plaintiffs' counsel stonewalled that request, Ally filed the current motion to (1) enforce the Plan Injunction and (2) impose sanctions. As

---

[1] *See Memorandum Opinion and Order Sustaining Debtors' Objections to proofs of Claim and Amended Proofs of Claim Filed By Certain Plaintiffs in California Litigation* (the "Expungement Opinion," ECF Doc. # 6439). The California Litigation Claimants filed claims against Debtors Executive Trustee Services, LLC, GMAC Mortgage, LLC ("GMACM"), GMAC-RFC Holding Company, LLC, Home Connects Lending Services, LLC, Homecomings Financial, LLC ("Homecomings"), Residential Capital, LLC ("ResCap"), Residential Funding Company, LLC, Residential Funding Real Estate Holdings, LLC, and Residential Mortgage Real Estate Holdings, LLC. (*See id.*, Schedule A.)

explained below, the Court grants the motion to enforce the Plan Injunction, but denies without prejudice the request for sanctions.

## I. BACKGROUND

### A. The Motion to Enforce the Plan Injunction

Pending before the Court is *Ally Financial Inc.'s Motion for an Order Enforcing the Chapter 11 Plan Injunction* (the "Motion," ECF Doc. # 6827). Ally seeks an order enforcing the Plan Injunction against the California Litigation Claimants, whose claims against Debtor entities in these chapter 11 cases were expunged, and who now seek a second bite at the apple. Ally additionally seeks attorneys' fees and costs associated with the Motion. In support of the Motion, Ally attaches the Declaration of Rebecca S. Saelao (the "Saelao Decl.," Motion Ex. B). The California Litigation Claimants did not respond.

The Court held a hearing on the Motion on May 15, 2014; counsel for the California Litigation Claimants did not appear, and the Court took the matter under submission. After the hearing, the Court issued an *Order Requiring Additional Submissions for Ally Financial Inc.'s Motion for an Order Enforcing the Chapter 11 Plan Injunction and Attorneys' Fees and Costs* (the "Additional Submission Order," ECF Doc. # 6961). Pursuant to the Additional Submission Order, Ally's counsel was to submit a declaration supporting Ally's request for attorneys' fees and costs by May 22, 2014; counsel for the California Litigation Claimants had until May 29, 2014 to respond. Ally's counsel filed the *Declaration of Ray C. Schrock Pursuant to the Court's Order Requiring Additional Submissions for Ally Financial Inc.'s Motion for an Order Enforcing the Chapter 11 Plan Injunction and Attorneys' Fees and Costs* (the "Schrock Decl.," ECF Doc. # 6985) on May 22, 2014. The California Litigation Claimants did not respond.

### B.    The California Litigation Claimants and these Chapter 11 Cases

Residential Capital, LLC ("ResCap") and numerous affiliates (the "Debtors") filed chapter 11 petitions on May 14, 2012 (the "Petition Date"). The general bar date for creditors to file proofs of claim, initially set as November 9, 2012, was extended to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) (the "General Bar Date"). (*See* ECF Doc. ## 1309, 2093.)

Before the Petition Date, on May 9, 2012, Brookstone Law, PC ("Brookstone"), on behalf of 41 plaintiffs, filed a complaint (the "Original Complaint") in California state court against a number of Debtor entities and non-debtor Ally. (Saelao Decl. ¶¶ 3–4.) The Original Complaint challenged the securitization, servicing, and foreclosure of residential mortgages originated and serviced by the Debtor entities, including GMACM and Homecomings. (*Id.*) The Original Complaint alleged that Ally was (1) liable as a successor-in-interest, both directly and through the actions of its subsidiaries, and (2) jointly and severally liable as an "alter ego" or as a "single, greater unified whole." (Orig. Compl. ¶ 28.) The action (the "District Court Litigation") was removed to the United States District Court, Central District of California – Western Division (the "District Court") on June 8, 2012. (Saelao Decl. ¶ 6.) Brookstone was thereafter notified of (1) the bankruptcy filing on June 12, 2012[2] and (2) the General Bar Date on September 7, 2012.[3]

On October 31, 2012, the California Litigation Claimants filed an amended complaint (the "Amended Complaint"), adding additional parties for a total of 62 named plaintiffs. (*Id.* ¶ 7.) Other than omitting a Truth in Lending Act claim, the claims asserted in the Amended Complaint remained the same. (*Id.*)

---

[2]    *See Affidavit of Service of Melissa Loomis Regarding Notice of Chapter 11 Bankruptcy Cases, Meeting of Creditors, and Deadlines*, Ex. C. p. 616 (ECF Doc. # 336) (listing Brookstone on the Creditor Matrix).

[3]    *See Affidavit of Service of Clarissa D. Cu Regarding Notice of Deadlines for Filing Proofs of Claim*, Ex. I, pp. 1189, 1522 (ECF Doc. # 1412).

On November 9, 2012, the California Litigation Claimants filed claims (the "Original Claims") against a number of Debtor entities, based on the Amended Complaint. (*See* ECF Doc. # 4200, Schedule A.) Each of the Original Claims asserted an unsecured claim in the amount of $1,300,000 for "Contingent Fraud Claim in litigation," referring to ongoing litigation and the following causes of action: (1) fraudulent concealment pursuant to California Civil Code ("Civil Code") sections 1572, 1709, and 1710; (2) intentional misrepresentations pursuant to Civil Code sections 1572, 1709, and 1710; (3) negligent misrepresentations pursuant to Civil Code sections 1572, 1709, and 1710; (4) unfair competition pursuant to California Business and Professions Code section 17200; (5) wrongful foreclosure pursuant to Civil Code section 2924; and (6) improper influence over appraiser pursuant to Civil Code section 1090.5.

The Debtors filed an objection to the Original Claims on July 10, 2013, asserting that the Original Claims failed to state any basis of Debtor liability. (*See generally* "First Objection," ECF Doc. # 4200.[4]) The Debtors argued in the First Objection that the Amended Complaint—the basis for the Original Claims—failed to: (1) satisfy basic federal pleading standards, (2) plead a basis for derivative liability, (3) state any fraud-based claim, and (4) sufficiently allege claims for wrongful foreclosure and improper influence over an appraiser. The deadline to respond to the First Objection was August 9, 2013 (the "Response Deadline").

None of the California Litigation Claimants filed a timely response to the First Objection, but on August 9, 2013—the day of the Response Deadline—fifty-eight of the California Litigation Claimants filed proofs of claim (the "Amended Claims") solely against Residential Capital, LLC ("ResCap"), each in the amount of $1,300,000. (Claim Nos. 6893–950.) The stated basis for each of the Amended Claims is: "Claims, including fraud related to mortgage

---

[4] *Debtors' Objection to Proofs of Claim filed by Certain Plaintiffs in California Litigation* (ECF Doc. # 4200).

4

origination." In support of the Amended Claims, the California Litigation Claimants attached a 250-page Amended Complaint in Support of Amended Proof of Claim (the "Second Amended Complaint"), which was never filed in state or federal court. The Second Amended Complaint asserts five causes of action, divided into twenty-four "counts," including: (1) fraudulent concealment, (2) intentional misrepresentation, (3) negligent misrepresentation, (4) negligence, (5) unfair, unlawful, and fraudulent business practices, (6) price fixing in violation of the Sherman Act, (7) improper collection of debt after electing to foreclose, (8) rescission of contract and/or restitution based on grounds of fraud and/or unconscionability, (9) breach of contract, (10) breach of the Crier Rule under California law, (11) unfair debt collection practices, and (12) wrongful foreclosure. Although the Second Amended Complaint appears to raise new legal theories for recovery, the claims are based on the same set of facts as the Original Claims, and counsel for the California Litigation Claimants represented to the Court that the nature of the two sets of claims are the same. (*See* Aug. 28, 2013 Tr. at 25:10–15.)

On August 20, 2013—eleven days after the Response Deadline—counsel for the California Litigation Claimants filed the *Hairston, et al. Creditors' Opposition to Debtors' Objection to Proofs of Claim Filed by Certain Plaintiffs in California Litigation* (the "Response," ECF Doc. # 4758). In the Response, the California Litigation Claimants' counsel asserted that the Debtors' First Objection was rendered moot upon the filing of the Amended Claims and the Second Amended Complaint in support.

On August 26, 2013, the Debtors sent a letter to the Court asserting that the Amended Claims were improper post-bar date amendments and that they should therefore be disallowed and expunged. On August 28, 2013, the Court held a hearing on the First Objection and directed that the parties agree to a scheduling order with respect to briefing whether the Amended Claims

were proper amendments and addressing the underlying merits of the Amended Claims. On November 27, 2013, the Court entered the *Scheduling Order For Objection to California Litigation Claims* (ECF Doc. # 5965) requiring: (1) the Debtors to file any objection to the Amended Claims on or before December 17, 2013, (2) the California Litigation Claimants to respond on or before January 23, 2014, and (3) the Debtors to file a reply on or before February 6, 2014, with a hearing to be held on February 20, 2014.

The Debtors filed the Second Objection[5] on December 16, 2013, arguing that (1) the Amended Claims should be disallowed as improper post-bar date amendments to the Original Claims, and (2) even if the Amended Claims are not expunged as untimely amendments, the Amended Claims fail to state a basis for liability on the part of ResCap, largely for the same reasons set forth in the First Objection, and also because ResCap neither originated nor serviced any of the California Litigation Claimants' loans. The California Litigation Claimants did not file a response to the Second Objection. The Second Objection raised sufficient legal arguments to rebut the presumptive validity of the Amended Claims; the California Litigation Claimants failed to respond and therefore failed to carry their burden of proving the validity of their claims by a preponderance of the evidence. On February 6, 2014, the Court sustained the Second Objection and disallowed the California Litigation Claims with prejudice. (ECF Doc. # 6439.) The California Litigation Claimants did not appeal the order expunging their claims, and the time to do so has expired.

---

[5] *Debtors' Objection to Amended Proofs of Claim Filed by Certain Plaintiffs in California Litigation* (ECF Doc. # 6130).

## C. ResCap Bankruptcy Plan Confirmation and Third Party Release

On December 11, 2013, the Court confirmed ResCap's *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (the "Plan," ECF Doc. # 6065-1). (*See* ECF Doc. # 6065.) Included in the Plan was a third-party release (the "Third Party Release") of Ally, the Debtors' parent company, in exchange for a contribution of $2.1 billion to the Debtors' estates (the "Ally Contribution"). The Third Party Release provides:

> On and as of the Effective Date of the Plan, the holders of Claims and Equity Interests, shall be deemed to provide a full and complete discharge and release to the Ally Released Parties and their respective property from any and all Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws, veil piercing or alto-ego theories of liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way related to RMBS issued and/or sold by the Debtors or their affiliates and/or the Chapter 11 Cases of the Plan, and any obligations under the DOJ/AG Settlement, the Consent Order and the Order of Assessment.

(Plan Art. IX.D.)[6] The Plan Injunction "permanently enjoined and precluded" the continuation of claims subject to the Third Party Release. (*Id.* Art. IX.I.)

## D. California Litigation Claimants' Action Against Ally and Non-Debtor Entities

On November 14, 2013, before the Plan was confirmed, the California Litigation Claimants filed a separate action in California state court against Ally and other non-Debtor entities (the "Ally Complaint"). (*See* Saelao Decl. ¶ 9.) The Ally Complaint, like the complaints before it, alleges fraudulent concealment, intentional misrepresentation, negligent misrepresentation, negligence, unfair business practices, price fixing in violation of the Sherman

---

[6]    Capitalized terms used but not defined herein have the meanings given to such terms in the Plan.

Act, unfair and deceptive debt collection practices, breach of contract, and wrongful foreclosure, all related to the securitization, origination, and servicing of residential mortgages. No Debtor defendants were named in the Ally Complaint "due to the automatic stay." (Ally Compl. ¶¶ 29–33.) Despite not *naming* Debtor defendants, however, the Ally Complaint contains a list of Debtor entities, including ResCap, GMAC-RFC Holding Company, LLC ("GMAC-RFC"), Residential Funding Company ("RFC"), Homecomings, Home Connects Lending Services, LLC ("HCLS"), and Executive Trustee Services ("ETS"). The California Litigation Claimants assert, as to each Debtor, that they "reserve the right to name" each respective entity "as an additional defendant in this action" as they "believe [each entity] to have engaged in the coordinated conspiracy with the other named Defendants as alleged throughout this Complaint." (*Id.* ¶¶ 29–33, 35.) The Ally Complaint describes ResCap as a subsidiary of nondebtor GMAC Mortgage Group, Inc. ("GMACM Group") that "originate[d], service[d], and securitize[d] mortgage loans" (*id.* ¶ 29); GMAC-RFC as "a wholly-owned subsidiary of Rescap [that] acquire[d] residential mortgages and loans, which it then package[d] as mortgage-backed securities and [sold] to institutional investors" (*id.* ¶ 30); RFC as "a wholly-owned subsidiary of GMAC-RFC" and the "parent and sole owner of Homecomings . . . , the originator of loans underlying some of the Plaintiffs in this complaint" (*id.* ¶ 31); Homecomings as "a wholly-owned subsidiary of RFC" and the "originator of some of the Plaintiffs['] loans included in this complaint" (*id.* ¶ 32); HCLS as a "wholly-owned subsidiary of [AFI]" that conducted appraisals for AFI and "was a necessary and integral element of Defendants' fraud" because it "artificially inflated and manipulated values of properties throughout California, including the properties of the Plaintiffs" at AFI's direction (*id.* ¶ 33); and ETS as "a wholly-owned subsidiary of [AFI]" that acted as the "foreclosing trustee on behalf of the other Defendants" named in the Ally Complaint (*id.* ¶ 35).

Indeed, the alleged facts in the Ally Complaint are tied to the actions of Debtor entities because the Ally Complaint charges violations of the law related to the origination, servicing, and foreclosure practices in which Ally took no part.

Counsel to the California Litigation Claimants at Brookstone was served with notice of the Confirmation Hearing and a copy of the proposed Plan, including the Third Party Release and Plan Injunction, but did not object to the Plan or the Third Party Release.[7] After the Plan was confirmed, Brookstone received notice of the entry of the Confirmation Order.[8]

On January 30, 2014, Ally's counsel sent a letter to Brookstone to inform it that the Court had entered the Confirmation Order. (Saelao Decl. ¶ 10.) Attached to the letter were copies of the Plan and Confirmation Order. (*Id.*) The letter explained Ally's position that the claims alleged by the California Litigation Claimants in the Ally Complaint fall within the Plan's Third Party Release, and that the Plan Injunction enjoins the California Litigation Claimants from pursuing their claims against Ally. (*Id.*) Brookstone did not respond. (*Id.*) On February 24, 2014, Ally's counsel sent a second letter reiterating its arguments concerning the Ally Complaint. (*Id.* ¶ 11.) On March 4, 2014, Brookstone contacted Ally's counsel, claiming that the Ally Complaint was not barred by the Third Party Release or Plan Injunction provisions, and requested additional time to confer with bankruptcy colleagues about the issues. (*Id.* ¶ 12.) Ally agreed but, after two weeks without a response, once again reached out to Brookstone on March 19, 2014. (*Id.* ¶ 13.) Brookstone did not respond. (*Id.*) Ally's counsel sent Brookstone a third

---

[7]   *See Affidavit of Service of P. Joseph Morrow IV Regarding Order (I) Approving Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan Proponents' Joint Chapter 11 Plan, (III) Approving the Form of Ballots, (IV) Scheduling a Hearing on Confirmation of the Plan, (V) Approving Procedures for Notice of the Confirmation Hearing and for Filing Objections to Confirmation of Plan, and (VI) Granting Related Relief*, Ex. G, Exh. L (ECF Doc. # 5196).

[8]   *See Affidavit of Service of Clarissa D. Cu Regarding Notice of Entry of Confirmation Order Confirming the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors and Occurrence of Effective Date, and Notice of Deadline and Procedures for Filing Certain Administrative Claims*, Ex. E, pp. 649, 1085, 2626, 2631, 3441 (ECF Doc. # 6187).

and final letter on April 24, 2014, again with no response. (*Id.* ¶¶ 14–15.) The California Litigation Claimants have not dismissed their claims against Ally, prompting Ally to file the Motion.

## II. DISCUSSION

### A. Enforcement of Third Party Release and Plan Injunction

#### 1. *The Third Party Release and Plan Injunction are Appropriate in these Cases*

In the Second Circuit, non-debtor releases are permissible under certain circumstances. "[A] bankruptcy court only has jurisdiction to enjoin third party non-debtor claims that directly affect the res of the bankruptcy estate." *In re Johns-Manville Corp.*, 600 F.3d 135, 152 (2d Cir. 2010) (citation omitted). Because AFI filed proofs of claim for indemnification against the Debtors, and because AFI and the Debtors shared insurance policies, third-party claims such as the ones asserted by the California Litigation Claimants would affect the *res* of the estate, satisfying the jurisdictional underpinnings for the third-party release approved by the Court.

In *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 293 (2d Cir. 1992), the Second Circuit noted that "[i]n bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan." In its decision in *In re Metromedia Fiber Network Inc.*, 416 F.3d 136 (2d Cir. 2005), the Second Circuit further clarified the standard under which it is appropriate to grant non-debtor releases. The court identified two factors that are necessary for court approval of a non-debtor release: (1) the release must itself be important to the plan; and (2) the scope of the release must be necessary to the plan. *Id.* at 143. Thus, a non-debtor release is not justifiable simply on the ground that it was offered in exchange for a monetary contribution. *Id.*

During the Plan confirmation hearing, the Court considered all of the factors under *Metromedia* and *Johns-Manville* and their progeny and determined that the Court had the jurisdiction to enter the third party non-debtor release in favor of AFI.  (*See* ECF Doc. # 6065, *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order"), ¶ UU.)  The Court found that the *Metromedia* factors, which establish a high burden before a court will grant non-debtor releases, were satisfied in this case.  The AFI Contribution was the "lynchpin of the Plan, without which the cases would devolve into endless litigation, the Plan would not be confirmable or feasible, and the recoveries currently contemplated by the Plan would not exist."  (*Id.* ¶ RR.)  As stated in the Plan, the Third Party Release was "an essential component and critical to the success of the Plan."  (Plan Art. IX.D.)  The Court found that "[t]hese facts are unprecedented and justify the approval of the Third Party Releases."  (Confirmation Order ¶ RR.)

        2.      *The Court Has Authority to Enforce the Third Party Release and Plan Injunction Against the California Litigation Claimants*

"All courts retain the jurisdiction to interpret and enforce their own orders."  *In re Charter Commc'ns*, No. 09-11435, 2010 WL 502764, at *4 (Bankr. S.D.N.Y. Feb. 8, 2010); *see also Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151 (2009) ("[A]s the Second Circuit recognized . . . the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders.").  While a bankruptcy court's jurisdiction diminishes in importance following plan confirmation, *In re General Media, Inc.*, 335 B.R. 66 (S.D.N.Y. 2005), the action in this case is "sufficiently close in time to confirmation of the Plan and sufficiently critical to the integrity of the Plan's structure that it is proper for this Court to take firm control and decide" the Motion.  *Charter Commc'ns*, 2010 WL 502764, at *4.

11

"As the court explained in *Charter Communications,* where a motion seeks to 'prevent the prosecution of causes of action expressly prohibited by the confirmation order,' it would be 'difficult to identify judicial acts that are any more critical to the orderly functioning of the bankruptcy process or more closely tethered to core bankruptcy jurisdiction.'" *In re Residential Capital, LLC*, 508 B.R. 838, 849–50 (Bankr. S.D.N.Y. 2014) (citing *In re Petrie Retail, Inc.,* 304 F.3d 223, 230 (2d Cir.2002) (finding that bankruptcy court retained core jurisdiction post-confirmation 'to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization')). The bankruptcy court and the state court may rule on the application of the Plan Injunction and Third Party Release, but the "bankruptcy court is more closely connected to the current dispute and is the proper forum to rule with respect to" enforcement of third party releases pursuant to the Plan." *Id.* at 850 n.8 (quoting *Charter Commc'ns*, 2010 WL 502764, at *3). The bankruptcy court is the most familiar with the record of the confirmation hearing; and there is a much smaller risk of erosion of its provisions and the injunction due to inconsistent interpretations across courts. *Id.*

The $2.1 billion AFI Contribution to the successful Plan in this case was a significant factor to achieving Plan confirmation and a global resolution of the Debtors' bankruptcies. A key component of Ally's willingness to provide the Contribution was the Plan Injunction and Third Party Release. The Court carefully considered the record and weighed the relevant factors. Initially, the U.S. Trustee, which rigorously enforces the law with respect to third party non-debtor releases, had objected to the Third Party Release; based on the record developed in the case, that objection was withdrawn. By the time of confirmation, there were no objections to the non-debtor release included in the Plan. After considering the applicable case law and the U.S.

Trustee's withdrawal of its objection, the Court approved the Plan, which included the Third Party Release and Injunction.

The California Litigation Claimants filed timely proofs of claim in these chapter 11 cases and those proofs of claim were expunged in February 2014. (ECF Doc. # 6439.) Despite having notice of these chapter 11 cases, the Plan, and the confirmation hearing, the California Litigation Claimants did not object to the Third Party Release or Injunction contained in the Plan.

The California Litigation Claimants' claims against Ally in the Ally Complaint relate to the origination, servicing, securitization, and attempts to foreclose upon mortgages in California. None of the actions alleged in the Ally Complaint were taken by Ally or Ally's nondebtor subsidiaries. Instead, the Ally Complaint alleges claims against Ally on alter ego theories of liability. The Ally Complaint additionally charges that "[AFI]'s public disclosures, as reflected in its filings with the SEC, make clear that [AFI] considers itself both a common enterprise operating as a greater whole and without meaningful distinctions as to its operating units, and the successor to GMAC Mortgage[9], Homecomings, RFC and its subsidiaries." (Ally Compl. ¶ 27(a).) These claims fall squarely within the Plan's Third Party Release, which releases Ally from claims "arising from or related in any way to the Debtors." (Plan Art. IX.D.)

Consequently, the California Litigation Claimants are bound by the Third Party Release and are therefore "permanently enjoin[ed] and preclude[ed]" from continuing their lawsuit against Ally. (*See* Plan Art. IX.I (enjoining all entities who hold "Claims . . . from: (a) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party whether directly, derivatively or otherwise, on account of or in connection

---

[9] It is unclear whether the "GMAC Mortgage" named in this portion of the Ally Complaint is GMAC Mortgage, LLC (a Debtor entity) or GMAC Mortgage Group, Inc. (a nondebtor entity referred to elsewhere in the Complaint as "GMACM" and described as "a wholly-owned subsidiary and the mortgage arm of Ally"). (Ally Compl. ¶ 28.) Several of the California Litigation Claimants filed proofs of claim against GMAC Mortgage, LLC in these chapter 11 cases. (*See* Expungement Opinion at 10.)

13

with or with respect to any Released Claims; . . . [and] (e) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party on account of or in connection with or with respect to any Released Claims").)

After the Plan was confirmed, Ally's counsel served counsel to the California Litigation Claimants with copies of the Plan and Confirmation Order (which the Claimants had previously received during these chapter 11 cases, before Plan confirmation), as well as letters explaining the Plan's Third Party Release and Injunction. The California Litigation Claimants have failed to dismiss their action against Ally. As "holders of Claims . . . arising from or related in any way to the Debtors," the California Litigation Claimants are bound by the Plan's Third Party Release. Therefore, Court **GRANTS** Ally's Motion and **ORDERS** the California Litigation Claimants to dismiss their action against Ally with prejudice within 14 days. Should the California Litigation Claimants fail to do so, Ally may seek an order from the Court holding them in contempt. This result should come as no surprise to counsel for the California Litigation Claimants as this Court has enforced the Plan injunction in similar circumstances. *See, e.g.*, *In re Residential Capital, LLC*, 508 B.R. 838 (Bankr. S.D.N.Y. 2014).

### B.   Attorneys' Fees and Costs

In addition to an order enforcing the Plan's Third Party Release and Injunction, Ally seeks attorneys' fees and costs related to filing the Motion under Bankruptcy Code section 105(a)[10] and 28 U.S.C. § 1927.[11] Section 1927 provides in pertinent part:

---

[10]   11 U.S.C. § 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Section 1927 "looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation process to avoid dilatory tactics." *U.S. v. Int'l Bhd. of Teamsters*, 928 F.2d 1338, 1345 (2d Cir. 1991). "Bad faith is the touchstone of an award under this statute." *Id.* "Section 1927 authorizes the imposition of sanctions *only* when there is a finding of conduct constituting or akin to bad faith." *State Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 180 (2d Cir. 2004).

### 1.  The Court Has Authority To Impose Sanctions Against Brookstone

The Court has the power to sanction Brookstone pursuant to (1) its inherent power and (2) 28 U.S.C. § 1927. "Bankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct." *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 477 (6th Cir. 1996); *In re 680 Fifth Ave. Assoc.*, 218 B.R. 305, 323 (Bankr. S.D.N.Y. 1998) ("Bankruptcy courts have the same inherent sanction authority as district courts . . . ."). Additionally, "bankruptcy courts may sanction attorneys who unreasonably and vexatiously multiply court proceedings pursuant to 28 U.S.C. § 1927." *In re Green*, 422 B.R. 469, 474 (Bankr. S.D.N.Y. 2010) (citing *In re Cohoes Indus. Terminal, Inc.*, 931 B.R. 305, 323 (Bankr. S.D.N.Y. 1998); *In re Truong*, No. 07-12194, 2008 WL 1776227, at *5 (Bankr. S.D.N.Y. Apr. 14, 2008)); *see also In re Saint Vincents Catholic Med. Ctrs. of New York*, 506

---

<sup>11</sup>   The difference between an award made under Bankruptcy Code § 105(a) and 28 U.S.C. § 1927 is "that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under [§ 105(a)] may be made against an attorney, a party, or both." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986).

B.R. 387, 401 (Bankr. S.D.N.Y. 2014) ("A bankruptcy court may exercise the power to sanction pursuant to § 1927.").

If an attorney takes actions on behalf of a client in the course of litigation, and those actions are taken in bad faith, courts may use their inherent power to sanction attorneys for those actions. *See Wilder v. GL Bus Lines*, 258 F.3d 126, 130 (2d Cir. 2001) (sanctions are appropriate under the court's inherent power "whether the attorney has acted in bad faith in the actions that led to the lawsuit or in the conduct of the litigation"); *U.S. v. Seltzer*, 227 F.3d 36, 41–42 (2d Cir. 2000); *Lubit v. Chase (In re Chase)*, 372 B.R. 142, 154–55 (Bankr. S.D.N.Y. 2007). Additionally, "[a] bankruptcy court may impose sanctions pursuant to 28 U.S.C. § 1927 if it finds that '[an] attorney's actions are so completely without merit as to require the conclusion that they must have been taken for some improper purpose such as delay." *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 230 (2d Cir. 1991) (citing *Oliveri*, 803 F.2d at 1273).

The same standard for imposition of sanctions applies to both the court's inherent powers and section 1927. *Oliveri*, 308 F.2d at 1273 (stating that "we hold today that an award made under § 1927 must be supported by a finding of bad faith similar to that necessary to involve the court's inherent power"); *In re Truong*, 2008 WL 1776227, at 5 ("There is no meaningful difference between the type of conduct that is sanctionable under the Court's inherent power and under 28 U.S.C. § 1927 because both require a similar finding of bad faith."). "To impose sanctions under either authority, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, 'motivated by improper purposes such as harassment or delay.'" *Eisemann v. Greene*, 204 F.3d 393, 395–96 (2d Cir.2000) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir.1999)). Courts must find clear evidence of bad faith. *Revson v. Cinque & Cinque*,

221 F.3d 71, 79 (2d Cir. 2000) ("[T]o impose sanctions under either authority, the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes.").

Ally argues that the California Litigation Claimants' counsel in this case, Brookstone, failed to acknowledge the Third Party Release and Plan Injunction, forcing Ally to "expend valuable time and effort communicating with Brookstone—both in writing and telephonically—and ultimately filing this motion." (Motion at 10.)  It is clear that the California Litigation Claimants' claims "aris[e] from" and are "related in any way to the Debtors"; they are based on conduct *by* the Debtors, rather than by Ally or Ally's nondebtor subsidiaries.  There was no colorable reason for Brookstone to continue litigating against Ally in California, given the clear language of the Plan.  Brookstone's failure to dismiss the Ally Complaint or respond in any way to Ally's letters or calls, or to this Motion, is indicative of the way that the California Litigation Claimants behaved when the Debtors objected to their proofs of claim in these chapter 11 cases.  Both during the claims resolution process and during this dispute, Brookstone displayed a pattern of failing to respond to communications and missing deadlines.  Brookstone's actions since Ally first sent notice explaining the effect of the Third Party Release and Plan Injunction can only be explained as delay tactics.  This is an "improper purpose" identified by the Second Circuit as an appropriate grounds on which a bankruptcy court may impose sanctions pursuant to 28 U.S.C. § 1927.  *See Oliveri*, 803 F.2d at 1273.

    2.    *The Court Does Not Have Sufficient Information to Calculate Sanctions*

Having found sanctionable conduct under section 1927, the Court must calculate the amount of sanctions to impose.  "Section 1927 expressly permits courts to require attorneys 'to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of

[their] conduct.'" *In re Green*, 422 B.R. at 477 (quoting 28 U.S.C. § 1927). "Courts may also award attorneys' fees pursuant to their inherent power to sanction for bad faith conduct." *Id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (courts have the inherent power to award attorneys' fees for a party's bad faith conduct)).

"The same standards of compensation and reimbursement apply whether sanctions are awarded under [Rule 11], 28 U.S.C. § 1927, or the Court's inherent power." *In re Spectee Grp., Inc.*, 185 B.R. 146, 160 (Bankr. S.D.N.Y. 1995). An injured party may recover attorneys' fees attributable to "investigating, researching and fighting" meritless claims and those incurred to "'research, prepare and prosecute' its sanctions motion." *Id.* (quoting *PaineWebber, Inc. v. Can Am Fin. Grp., Ltd.*, 121 F.R.D. 324, 334 (N.D. Ill. 1988)). Only fees that are *directly caused* by the sanctionable conduct may be awarded. *Id.* "The party seeking the sanction must provide the Court with contemporaneous time and expense records that specify, for each attorney, the date, amount of time, and nature of the work performed, and must also show that the fees and expenses were reasonable and necessary." *Id.* (citing *Wood v. Brosse, U.S.A., Inc.*, 149 F.R.D. 44, 52 (S.D.N.Y. 1993)). "But, courts retain discretion over the final amount awarded and typically require the submission of detailed time records to determine whether the fees incurred are reasonable." *In re Green*, 422 B.R. at 477 (citing *In re Spectee Grp.*, 185 B.R. at 160).

Here, by refusing to acknowledge the Third Party Release and Plan Injunction, Brookstone forced Ally to seek relief in this Court through the Motion. Therefore, it is appropriate that the Court order Brookstone to compensate Ally for those attorneys' fees incurred preparing the Motion.

In the Schrock Declaration, Ally's counsel laid out its fee computation as follows:

| Attorney | Position with K&E[12] and Year Admitted | | Department | Hourly Billing Rate | Total Billed Hours | Total Cost |
|---|---|---|---|---|---|---|
| Justin Bernbrock | Associate | 2012 | Restructuring | $520.00 | 5.7 | $2,964.00 |
| Judson Brown | Partner | 2004 | Litigation | $840.00 | 5.0 | $4,200.00 |
| Jacob Goldfinger | Paralegal | N/A | Restructuring | $320.00 | 5.8 | $1,856.00 |
| Ray C. Schrock, P.C. | Partner | 1998 | Restructuring | $1,060.00 | 1.0 | $1,060.00 |
| Jodi Wu | Associate | 2011 | Litigation | $665.00 | 4.7 | $3,125.50 |
| **Total** | | | | | 22.2 | $13,205.50 |

(Schrock Decl. ¶ 4.) Additionally, Ally incurred legal fees from Severson & Werson, Ally's litigation counsel in the underlying lawsuit, in the amount of $163.20 in connection with preparing the Motion. (*Id.* ¶ 5.)

These records are not sufficiently detailed for the Court to make a determination of the reasonableness of the fees. Though the Schrock Declaration asserts that these fees are directly attributable to the time spent preparing the Motion—and the Court has no reason to believe that these entries are *not* attributable to work on the Motion—it does not attach the "contemporaneous time and expense records that specify, for each attorney, the date, amount of time, and nature of the work performed" necessary for the Court to make a determination as to the reasonableness and necessity of the work performed. *See In re Spectee Grp.*, 185 B.R. at 160. Consequently, the Court does not currently have the necessary information to calculate sanctions under section 1927, and the Motion to impose sanctions against Brookstone is **DENIED** without prejudice.

---

[12]    Kirkland & Ellis LLP.

### III. CONCLUSION

For all of the foregoing reasons, the Motion is **GRANTED** in part and **DENIED** without prejudice in part. The California Litigation Claimants are **ORDERED** to dismiss their action against Ally with prejudice within 14 days of the date of this Order. Should the California Litigation Claimants fail to do so, Ally may seek an order from the Court holding them in contempt. *See* FED. R. BANKR. P. 9020, 9014. Ally may renew its motion for sanctions, supported by an appropriate declaration attaching sufficient detail for the Court to make a determination as to the reasonableness and necessity of its requested sanction amount, within 21 days of the date of this Order. In determining the amount of fees to award the Court will be guided, in part, by whether Brookstone complies with this Order without the necessity for further action by Ally. Ally is **ORDERED** to serve a copy of this Order on Brookstone and to file an affidavit of such service on the Court's Electronic Case Filing System.

**IT IS SO ORDERED.**

Dated: June 20, 2014
      New York, New York

                                               ___*Martin Glenn*___
                                               MARTIN GLENN
                                   United States Bankruptcy Judge