UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No.  12-12020  (MG) |
| RESIDENTIAL CAPITAL LLC et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**RESPONSE TO DEBTORS' OBJECTION (7017, 7018) TO PROOFS OF CLAIM**

**Claimants:  FRANK REED, CHRISTINA REED**
**Proof of Claim Nos.:  3708, 3759, 4736, 4759**

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT

II.     THE OBJECTION TO PROOFS OF CLAIM MUST BE DENIED/DISMISSED BECAUSE IT IS MANIFESTLY APPARENT FROM THE OBJECTION THAT DEBTORS FAILED TO REVIEW AND ANALYZE CLAIMANTS' FILED PROOFS

III.    RESPONSES TO SPECIFIC OBJECTIONS

    A.  No Private Right of Action Under the Fair Foreclosure Act

    B.  The Reeds Fail to Establish a Claim for Negligence

    C.  The Reeds Fail to Establish a Claim for Breach of Contract

    D.  The Reeds Fail to Establish a Claim for Actual Malice

    E.  The Reeds Fail to Establish a Claim for Malicious Use of Process

    F.  The Reeds Fail to Establish a Claim for Fraud

    G.  The Reeds Are Not Entitled to a Constructive Trust

    H.  The Reeds Had the Option of Reinstating the Loan

    I.   The Reeds Are Not Entitled to be Made Whole Under the FRB Consent Order

    J.  The Proofs of Claim Are Not Properly Asserted Against Debtor ResCap

IV.     EXISTENCE OF AND EXTENT OF DAMAGES IS NOT SPECULATIVE

V.      THE REEDS HAVE A VALID CLAIM FOR EMOTIONAL DISTRESS

VI.     CONCLUSION

Claimants/creditors Frank Reed and Christina Reed submit the following Response to the May 29, 2014 Objection (documents 7017 and 7018) of the ResCap Borrower Claims Trust (hereinafter "ResCap Trust") to their claims, numbers 3708, 3759, 4736 and 4759:

## I.    PRELIMINARY STATEMENT

1.    In 2009 it was found that the debtors committed a wrongful in act 2008. The Chancery Court of Burlington County, NJ found as a matter of fact and law that the debtors had filed a foreclosure action against the Reeds that was not allowed by law, and as it was found to be wrongful, it was appropriately dismissed in February 2009. (See the Chancery Court's order of dismissal and its corresponding opinion). However, debtors' wrongful act had both instant and far reaching consequences for the Reeds. Consequences which have wrought both instant and long term devastating financial harm to the Reeds.

2.    As a result of the debtors' wrongful foreclosure and the consequences thereof, the Reeds filed a state court action in New Jersey against GMAC and Residential Funding seeking damages based on negligence, breach of contract and other causes of action. The state court lawsuit reached the late discovery stage of litigation. Within the context of the Reeds' civil action in New Jersey, GMAC and Residential Funding attacked the Reeds' negligence and breach of contract claims via a motion to dismiss for failure to state a claim. The state court denied the motion and specifically held that the Reeds had stated a cognizable claim for both negligence and breach of contract under New Jersey law. Significant discovery was exchanged in the state court action, including the Reeds' retention of an expert witness on issues of foreseeability and damages, resulting on the provision of an expert report (see Evan Hendricks Expert Report). Indeed, GMAC challenged the Reeds' expert report via motion to strike, and the state court again disagreed with GMAC, holding that the report was valid and admissible

evidence.  The Reeds ultimately discontinued the state court action without prejudice in a good faith attempt, [as participant of the Federal Reserve Consent Order,] to conserve judicial resources and the resources of the parties.

3.      Now, as the pursuit of justice continues in this forum, it must, as a matter of necessity, be determined what kind of legal and/or equitable species of wrongful act the debtors actually perpetrated so they may be appropriately held to account for their wrongful behavior. (Was debtor's wrongful act negligence, a breach of contract, a breach of common law contract doctrines, a breach of a statute with a private right of action, or even a wrongful act - otherwise unactionable on its own – but nonetheless, the cause of the unjust enrichment of the debtors?)

4.      It is within the pages of this document, and the Reeds' previous legal and equitable filings, that both the appropriate analysis and answers lie.

5.      For the convenience of the Court and any all parties in interest an accurate summation of that analysis is as follows:

- a state court has already determined as a matter of law that the Reeds have a cognizable claim of negligence and breach of contract under New Jersey law. (See: briefs and court's order denying debtors' state court motion to dismiss the Reeds' state court action for failure to state a claim).

- additionally, the state court recognized that there also existed a cognizable claim under both the Consumer Fraud Act and Punitive Damages Act under New Jersey law.  This was determined on the state court's consideration and approval of the Reeds' opposed motion to amend their original complaint. (see state court motion to amend, objection and order)

- in addition, a state court has already determined as a matter of law that certain

evidence (in the form of the Reeds' expert report), supporting the claim of negligence, as well as the Reeds' damages resulting from debtors' wrongful acts, are indeed admissible as proof against the debtors. (See: order denying debtor's motion to strike the testimony of the Reeds' expert witness).

- the debtor's regulators have openly characterized that the very type of wrongful act committed by the debtors is negligent.

- notwithstanding the preclusive effect of the aforementioned state court rulings, there exists copious amounts of clear and convincing evidence, along with on-point controlling law, which definitively proves that the debtors have committed negligent acts, breaches of contract, breaches of common law contract doctrines, and violations of various state statutes, and that they have been unjustly enriched.

## II.    THE OBJECTION TO PROOFS OF CLAIM MUST BE DENIED/DISMISSED BECAUSE IT IS MANIFESTLY APPARENT FROM THE OBJECTION THAT DEBTORS FAILED TO REVIEW AND ANALYZE CLAIMANTS' SUBSTANTIAL AND SUBSTANTIVE FILED PROOFS

6.    It is manifestly apparent from the statements and arguments contained in the Objection that, in formulating its arguments and positions regarding the Claimants' proofs of claim, the ResCap Trust failed to review and analyze the Claimants' substantial and substantive proofs and supplemental submissions.

7.    Indeed, the Objection contains clear examples of the ResCap Trust's failure to review the proofs and documents submitted with respect to the Reeds' claims, including, even, statements in the Objection which are wholly contrary to the record.

8.    For instance, a review of the Objection, together with the Claimants' submitted proofs and the supplemental submissions requested by the ResCap Trust, reveals that the ResCap Trust either misstated or simply did not examine the following (this is a non-exhaustive listing):

5

- Numerous appraisals of the subject property and the effect thereon of the wrongful foreclosure

- below market offers to purchase the property in question

- a letter from TD Bank, required by the Equal Credit Opportunity Act, stating that the only reason that the Reeds' cash out refinance was denied was the GMAC foreclosure action

- letters from Mr. Reed's accountant and personal attorney opining to the fact that he relied on his financing relationships to buy and sell property for profit

- ignoring the fact that the Reeds in fact attempted to avail themselves of the loan modification or refinance, and inaccurately stating in their Objection, that the Reeds did not

- raising and objecting to any res judicata effect of the state court actions between the parties, where, prior to the filing of this Response, the Reeds did not specifically raise or reference res judicata, but rather, previously specifically raised collateral estoppel – which the ResCap Trust completely ignores in its Objection.

9.    It is apparent from the referenced sampling above that the ResCap Trust has carelessly filed its Objection without even having reviewed the substance and content of the Claimants' proofs and the supplemental submissions requested by ResCap and provided by Claimants in July 2013.   (See, for example, exhibits attached, consisting of supplemental submission by Claimants with respect to Claim No. 3708.)

10.    It is an unfair affront to the Claimants and the Court, and is a waste of judicial resources, to have to engage in an in-depth review of the record, the proofs and the Objection

itself in an effort to reconcile and decipher what the ResCap Trust carelessly omitted from its review prior to making its Objection – including ResCap Trust's neglecting to consider the whole of the Claimants' supplemental submission of over 300 pages and 29 multi-document exhibits.

11.      This being so, the Objection should be denied and dismissed in its entirety.

### III.      RESPONSES TO SPECIFIC OBJECTIONS

12.      Notwithstanding section II. immediately above, Claimants/creditors Frank Reed and Christina Reed submit the following Responses to the specific Objections raised by The ResCap Borrower Claims Trust:

### A. No Private Right of Action Under the Fair Foreclosure Act

13.      The ResCap Trust takes the position that the Fair Foreclosure Act does not contain or establish a private right of action, and therefore, "all of the Reeds claims fail as a matter of law".  See Objection, Section V.B., at ¶¶ 32-34.

14.      Claimants, however, have not asserted, nor do they assert now, that the Fair Foreclosure Act provides a *statutory* private right of action.  Indeed, it does not (unlike, for instance a Consumer Fraud Act statute, which generally does contain a statutory private right of action).

15.      Rather, as set forth in Claimants' proofs and as discussed herein, the debtors' undisputed violation of the Fair Foreclosure Act is a part of the factual background giving rise to Claimants' tort, contractual and common law claims against the debtors.

16.      Indeed, the debtors' violation of the Fair Foreclosure Act, and other related wrongful acts and/or omissions, set into motion a series of events which damaged the Claimants. The nature and extent of such damage has been specifically detailed in Claimants proofs and

submissions, supported by evidence, legal authority, and expert witnesses.

17.    Accordingly, it is respectfully submitted that the ResCap Trust objection regarding the Fair Foreclosure Act, as contained in Section V.B. of the Objection, is misplaced and is a moot point of law as respects the Reeds' claims.

## B. The Reeds Fail to Establish a Claim for Negligence

18.    The ResCap Trust takes the position that the Claimants' have failed to establish a claim for negligence under New Jersey law, stating in cursory fashion that: they have not established a duty of care; the debtors acted reasonable under the circumstances (in filing a lis pendens and foreclosure action without providing contractually and statutorily required notice or complying with statutory prerequisites); and that the Claimants have not provided any credible evidence to establish any damages.  See Objection, Section V.C.iv, at ¶¶ 56-60.

19.    The ResCap Trust conveniently ignores the fact that the issue of whether the Reeds have valid claim for negligence has already been determined in their favor in the parties' previous state court litigation.

20.    The ResCap Trust is barred from revisiting that issue and dispute in this bankruptcy matter by virtue of collateral estoppel, the Rooker-Feldman doctrine, and/or *res judicata*.

21.    Furthermore, assuming arguendo that the prior litigation and substantive court determinations in Claimants' favor are not binding in this bankruptcy action with respect to those issues as detailed herein, the Claimants have indeed stated and established a claim for negligence against the debtors under New Jersey law.

### *Collateral Estoppel*

22.    It is the Reeds' position that the issue of whether they have stated a valid claim

for negligence against GMAC and Residential Funding has already been litigated in state court and determined in the Reeds' favor, and so, the Debtors' challenge, via its Objection (see Objection at ¶¶ 56-60), as to whether the Reeds have stated a cause of action for negligence, should be barred by collateral estoppel.

23.    Collateral estoppel, or issue preclusion, is distinct from *res judicata* – the preclusionary doctrine which the debtors cherry picked to briefly focus on in their Objection. See Objection, Section V.C.viii, at ¶¶ 72-74.

24.    "[U]nder collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Burgos v. Hopkins, 14 F.3d 787, 789 (2d Cir. 1994). See Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 2209 (1979)(if, in the course of adjudicating a state-law question, a state court should determine factual or legal issues, then collateral estoppel would bar relitigation of those issues in the bankruptcy court). See Restatement (Second) of Judgments § 27 (1982)(collateral estoppel, or issue preclusion, it an equitable principle that arises "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim").

25.    It is well accepted that, in the case of prior state court orders or judgments, federal courts are required to give preclusive effect to state court judgments whenever the courts of the state in which the judgments were rendered would do so. See Allen v. McCurry, 449 U.S. 90, 96, 101 (1980)). In determining whether to give collateral estoppel effect to a prior state court order or judgment, federal courts look to the relevant state preclusion law. See Conopco, Inc. v.

Roll Intern., 231 F.3d 82, 87 (2d Cir. 2000), see Full Faith and Credit Act, 28 U.S.C. § 1738 (1994).

26.    In the matter at bar, the relevant state – New Jersey – applies collateral estoppel to preclude relitigation of issues that were previously decided.

27.    Under New Jersey law, the doctrine of collateral estoppel operates to foreclose relitigation of an issue if the following factors are met: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.  See Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521, 897 A.2d 1003 (2006); In re Estate of Dawson, 136 N.J. 1, 20–21, 641 A.2d 1026 (1994); Hogg's v. New Jersey, 352 Fed.Appx. 625, 629, 2009 WL 2873251 (3rd Cir. (N.J.) 2009).  See also In re Azeglio, 422 B.R. 490, 494 (Bkrtcy. D.N.J. 2010)("Like federal principles of collateral estoppel, New Jersey courts follow the collateral estoppel guidelines laid out in the Restatement (Second) of Judgments").

28.    "Fundamental to the application of estoppel is an assessment of considerations such as finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness.  Indeed, such broader notions about fairness and finality echo in the variety of considerations that equity applies in estoppel-like circumstances."  Winters v. North Hudson Regional Fire and Rescue, 212 N.J. 67, 85-87, 50 A.3d 649, 659-60 (2012)(internal citations and quotation marks omitted).

29.    "Unlike claim preclusion, the effectiveness of issue preclusion, sometimes called

collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable. As the Supreme Court of New Jersey noted in <u>Hills Dev. Co. v. Township of Bernards</u>, 103 N.J. 1, 510 A.2d 621, 652 (1986), "*res judicata* is applicable only when a final judgment is rendered, and the doctrine of collateral estoppel applies whenever an action is 'sufficiently firm to be accorded conclusive effect.' Restatement (Second) of Judgments, § 13 at 132." <u>In re Brown</u>, 951 F.2d 564, 569 (3d Cir. 1991)("*Hills Development* is strong evidence that the Supreme Court of New Jersey is in agreement with section 13 of the Restatement (Second) of Judgments. Although we have discovered no cases from that Court specifically addressing the issue, we are confident enough that the Restatement will be considered expressive of New Jersey law on issue preclusion that we apply it here"); <u>Dyndul v. Dyndul</u>, 620 F.2d 409, 412 (3d Cir. 1980)("[f]inality for purposes of issue preclusion is a more 'pliant' concept than it would be in other contexts").

30.    Further, the Restatement (Second) of Judgments § 27(d) (1982) provides that an issue can be resolved for collateral estoppel purposes even where it was decided as part of a denial of a dispositive motion or an interlocutory order:

> "An issue may be submitted and determined on a motion to dismiss for failure to state a claim, a motion for judgment on the pleadings, a motion for summary judgment[,] . . . a motion for directed verdict, or their equivalents, as well as on a judgment entered on a verdict. A determination may be based on a failure of pleading or of proof as well as on the sustaining of the burden of proof."

31.    In the matter at bar: the parties and the relevant issue are the same (*to wit*, whether the Reeds have stated a valid claim for negligence against GMAC and Residential Funding); the parties had a full and fair opportunity to litigate the failure to state a claim issue in state court; the litigation of the issue resulted in an Order denying the GMAC's and Residential Funding's motion to dismiss based on the state court's substantive finding that the Reeds had sufficiently

pled a claim for negligence against GMAC and Residential Funding under New Jersey law.

32.    Similarly, the state court granted the Reeds' motion to amend their complaint to add punitive damages and consumer fraud claims against GMAC and Residential Funding, rejecting the debtors' opposition arguments that the claims could not be sustained.

33.    Therefore, the Debtors are barred from relitigating the issue which they have raised in their Objection concerning whether the Reeds stated a valid negligence claim.

### Rooker-Feldman Doctrine

34.    In addition, it is the Reeds' position that since the issue of whether they have stated a valid claim for negligence against GMAC and Residential Funding has already been litigated in state court, the Debtors' challenge, via its Objection (see Objection at ¶¶ 56-60), as to whether the Reeds have stated a cause of action for negligence, should be barred by the Rooker-Feldman Doctrine.

35.    The Rooker-Feldman doctrine bars a federal court from reviewing a state court judgment.  In re GEL, LLC, 495 B.R. 240, 246 (Bankr. E.D.N.Y. 2012).

36.    Specifically, the doctrine bars "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 287 (2005).

37.    For Rooker-Feldman to apply, four requirements must be met: (1) the case must be brought by a state court loser; (2) the state court loser must be complaining of injuries caused by a state-court judgment; (3) the state court loser must be inviting review of the state court judgment; and (4) the judgment must have been rendered before the federal proceedings commenced.  See Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005);

<u>Green v. Mattingly</u>, 585 F.3d 97, 101 (2d Cir. 2009).

38.     Here, the four requirements are met: (1) GMAC and Residential Funding were state court losers on multiple issues, including rulings against them which held their foreclosure was wrongful, and that Reeds had cognizable claims under New Jersey law for negligence, breach of contract and punitive damages, and on the issue of whether the Reeds' expert report as to foreseeability and damages was appropriate and admissible; (2) GMAC and Residential Funding are be complaining of injuries caused by the state-court decisions in that, challenging them via their Objection, the state court decisions are injurious to them as it exposes them to further litigation and risk vis a vis potential liability and the decisions' preclusive effects in favor of the Reeds; (3) GMAC and Residential Funding de facto invite the Bankruptcy Court to review the state court decisions by their asking the Bankruptcy Court, via the Objection, to disregard the holdings of the state court; and (4) the decisions in question were rendered before these federal proceedings commenced.

39.     Accordingly, the Rooker-Feldman requirements are met, and the doctrine applies to preclude the debtors from challenging, within this bankruptcy proceeding and via their Objection, the adverse decisions made by the New Jersey state court as between these same parties.

### *Res Judicata*

40.     Furthermore, *res judicata* bars the debtors' current reargument of the claims that were litigated in the parties' previous proceedings.

41.     The doctrine has the following elements: "(1) the final judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out

of the same transaction or occurrence as the claim in the earlier one." McNeil v. Legislative Apportionment Comm'n of the State of N.J., 177 N.J. 364, 828 A.2d 840, 859 (2003).

42.     The debtors raised virtually identical arguments against the Reeds in the parties' prior New Jersey action which arose out of the debtors' wrongful foreclosure.  There, the court held that the Claimants had made cognizable claims under New Jersey law for negligence, breach of contract, punitive damages and consumer fraud.  Accordingly, *res judicata* precludes federal court review of any of these claims presented in this case.  See Hogg's v. New Jersey, 352 Fed.Appx. 625, 629, 2009 WL 2873251 (3d Cir. 2009).

### *Preclusionary Doctrines Aside, Negligence Established by Claimants*

43.     Under general principles of tort law in New Jersey, "there are two essential elements of a cause of action based on the alleged negligence of a tortfeasor which must exist in order to make that cause of action viable and a suit based thereon maintainable, namely, the act of negligence itself and a consequential injury resulting therefrom."  White v. Mattera, 175 N.J. 158, 165, 814 A.2d 627, 631-32 (2003).

44.     "In order to prevail on a negligence claim under New Jersey law a plaintiff must satisfy a three-part test. The plaintiff must show that there was a duty on the part of the defendant towards the plaintiff, a breach of that duty, and evidence that the breach was the proximate cause of the injury to the plaintiff."  MCI Worldcom Network Services, Inc. v. Glendale Excavation Corp., 224 F.Supp.2d 875, 878 (D.N.J. 2002)(holding that the defendant's failure to comply with its statutory obligation to call a utility company prior to performing excavation work was *prima facie* evidence of negligence).  See also Robinson v. Vivirito, 217 N.J. 199, 208, 86 A.3d 119, 124 (2014)("The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff

proximately caused by the breach, and damages.  The issues of whether a defendant owes a legal duty to another and the scope of that duty are generally questions of law for the court to decide. The determination of the existence of a duty of care to avoid harm to another is ultimately governed by fairness and public policy.  Foreseeability is a critical but not dispositive factor in the analysis of whether a duty of care to avoid harm to a third party is recognized")(internal citations omitted).

45.    In this matter, the debtors' duty to the Reeds is established by the foreseeability of the harm that they could cause by not acting in a prudent fashion, and by acting contrary to their contractual and statutory obligations.

46.    The Reeds' expert witness has opined in his report that it was foreseeable or should have been foreseeable by the debtors that their filing of a foreclosure action without completing all the requirements under the statutory scheme which was created for the protection of borrowers such as Mr. Reed, was imprudent behavior that would cause damage.  (see Hendirck report).

47.    The ResCap Trust has wholly ignored and disregarded the substantial evidentiary proofs submitted by the Claimants.

### *Negligence / Wrongful Act – the Regulator's Definition*

48.    Although the Reeds set forth herein the various elements in fact and law which comprise the tort of negligence, and supply various corresponding factual proofs, as well as the relevant measure to gauge the wrongfulness of the debtors' actions, one need not have to look further than the opinion of the Debtors' Primary regulator, the Federal Reserve Board (FRB), for a clear definition and conceptualization of wrongful and/or negligent behavior, relevant to Claimants' proof of claim.

49.      It is respectfully submitted that this Court should take judicial notice of the testimony before the United States Senate; testimony that is a matter of the public record and was given by and on behalf of the Debtor's regulator, the FRB.  This testimony by and on behalf of the Debtor's regulator provides a definitive definition of what actions by the Debtor, (and similarly regulated entities), constitute negligent and/or wrongful behavior.

50.      Specifically, the General Counsel of the FRB, acknowledging the patterns of misconduct and negligence in the processing of foreclosures, testified, in relevant part:

> *"The Federal Reserve's…foreclosure review process as well as…the enforcement action that the Board issued in April 2011…were taken in response to patterns of misconduct and negligence related to deficient practices in residential mortgage loan servicing and foreclosure processing…and represented significant and pervasive failure as well as unsafe and unsound practices."*

> [Statement of Scott G. Alvarez, General Counsel, Board of Governors of the Federal Reserve System: Submitted to the Senate Committee on Banking, Housing, and Urban Affairs Subcommittee On Housing, Transportation, and Community Development - U.S. Senate, Washington, D.C. - December 13, 2011].

51.      More specifically defining the actual categories of negligent acts, is the following testimony:

> *2. The servicer* ***initiated foreclosure*** *or conducted a foreclosure sale* ***in advance of the time allowed for foreclosure under*** ***the terms of the note and mortgage or applicable state law.***

> *14.* ***The servicer initiated foreclosure*** *or completed a foreclosure sale* ***without providing adequate notice as required under applicable law,***

> [Testimony of Julie L. Williams, First Senior Deputy Comptroller and Chief Counsel, Office of the Comptroller of the Currency, Before the Subcommittee on Housing Transportation, and Community Development of the Committee on Banking Housing, and Urban Affairs, United States Senate, December 13, 2011] (emphasis added).

52.    It is without question that the debtors did in fact commit the acts described in items 2 and 14 of the Testimony cited immediately above vis a vis the Reeds.    This was determined as a matter of fact and law in the 2009 dismissal of the debtors' 2008 foreclosure action against the Reeds.

53.    Additionally, the FRB found and stated publicly and before Congress the following:

> *"The reviews also revealed that __all__ of the services relied heavily on outsourcing arrangements with outside counsel and other third-party vendors to carry out foreclosure processes without adequate oversight of those arrangements."  [...]*

> *"The agencies, (FRB being one), found that the servicers reviewed, (the debtors being among those), did not properly structure, carefully conduct, or __prudently manage__ their third party vendor relationships with outside law firms (the law firms actually conducting the foreclosure litigation)".*

> [Interagency Review of Foreclosure Policies and Practices, Federal Reserve System, Office of the Comptroller of the Currency Office of Thrift Supervision, Washington, D.C., April 2011, (pp.8 and 9 respectively)] (emphasis added).

54.    Therefore, the combination of the authoritative definition provided by the debtors' regulator as to what comprises a negligent and/or wrongful act by the debtor and the factual determination by the New Jersey Chancery Court in the 2009 dismissal of the debtors' foreclosure action, in which it was necessarily determined that the foreclosure action was both untimely and in violation of New Jersey foreclosure law, the debtors', as a matter of law, have indisputably committed  both a negligent and / or a wrongful act against the Reeds.

55.    If the Court does not agree with the analysis above, Claimants respectfully submit that it should consider, at the very least, that regulator's opinion regarding the characterization of the debtors' behavior as clear and convincing evidence of negligence and/or wrongful acts.

56.    In the matter at bar, it is undisputed that the debtors wrongfully and negligently

17

(or with gross negligence) foreclosed on the Reeds' property without proper notice in violation of the Fair Foreclosure Act, and that the debtors' acts and omissions caused corresponding damage to the Reeds as described herein and as supported by their submitted proofs.

57.    "The institution of foreclosure is traumatic to the debtor mortgagor and creates a permanent court record which can be injurious to the debtor's credit.  The notice of intention is meant to give the debtor a chance to prevent acceleration and institution of Foreclosure.  Obviously giving the notice after Foreclosure has been instituted will not effectuate this legislative purpose."  30 N.J.Prac. Law of Mortgages § 24.16 (2d ed. 2008).

58.    Accordingly, it is respectfully submitted that the Objection must be denied.

## C.  The Reeds Fail to Establish a Claim for Breach of Contract

59.    The ResCap Trust takes the position that the Claimants' have failed to establish a claim for breach of contract under New Jersey law, stating in cursory fashion that the debtors' violation of the Fair Foreclosure Act does not constitute a breach of contract.  See Objection, Section V.C.v, at ¶¶ 61-62.

60.    Yet again, the ResCap Trust completely ignores the Claimants' submissions and proofs in stating its Objection.

61.    Worse, the ResCap Trust completely ignores the very contracts which are relevant to the dispute between the parties – the mortgage document and note.  See Mortgage at Doc 7017-6, pg 62-74 of Exhibit 3, Delehey Declaration; see Note at Doc 7017-6, pg 55-61 of Exhibit 3, Delehey Declaration.

62.    The Mortgage at issue explicitly required that the Reeds be provided notice at least 30 days prior to acceleration of the mortgage obligation, and required that the notice inform the Reeds of specific information as set forth therein.  Notably, the Mortgage itself explicitly and

contractually required the debtors to also provide "any other disclosure required under the Fair

Foreclosure Act. See Mortgage at Doc 7017-6, pg 72 of Exhibit 3, Delehey Declaration.

63.    Section 22 of the Mortgage states:

> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 [pertaining to transfer of the property without the lender's consent] unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, note less than 30 days from the date the notice is given to the Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may rest in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified on the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.

> [Doc 7017-6, pg 72 of 103 of Exhibit 3, Delehey Declaration].

64.    Furthermore, Section 8 of the Note states:

> 8. GIVING OF NOTICES
> Unless applicable law requires a different method, any notice that must be given to me [the Claimants] under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

> [Doc 7017-6, pg 57 of 103 of Exhibit 3, Delehey Declaration].

65.    "To establish a breach of contract claim, a plaintiff has the burden to show that

the parties entered into a valid contract, that the defendant failed to perform his obligations under

the contract and that the plaintiff sustained damages as a result." Murphy v. Implicito, 392

N.J.Super. 245, 265, 920 A.2d 678, 689 (App. Div. 2007). See Video Pipeline Inc. v. Buena

Vista Home Entm't, Inc., 210 F. Supp. 2d 552, 561 (D.N.J. 2002).

66.    Here, it is undeniable that the debtors breached their contractual obligations to the

Claimants, causing damage as described herein.

67.    *The only notice which the debtors sent to the Reeds with respect to the*

*purported default did not in any way satisfy or address any of the statutory and contractual*

*notice requirements described herein*.    See Doc 7017-6, pg 13-16 of Exhibit 3, Delehey

Declaration.

68.    Furthermore, in addition to the Mortgage's actual incorporation of the

requirements of the Fair Foreclosure Act, the provisions of the Act are implied in the parties'

contractual relations under New Jersey law.  See Chase Manhattan Mortg. Corp. v. Spina, 325

N.J.Super. 42, 51, 737 A.2d 704, 709 (N.J.Super.Ch. 1998)("The obligations of a contract long

have been regarded as including not only the express terms but also the contemporaneous state

law pertaining to interpretation and enforcement.  "This Court has said that 'the laws which

subsist at the time and place of the making of a contract, and where it is to be performed, enter

into and form a part of it, as if they were expressly referred to or incorporated in its terms.' "

This principle presumes that contracting parties adopt the terms of their bargain in reliance on

the law in effect at the time the agreement is reached")(quoting U.S. Trust Co. of New York v.

New Jersey, 431 U.S. 1, 19, 97 S.Ct. 1505, 1516 (1977)).

69.    In addition, the ResCap Trust conveniently ignores the fact that the issue of

whether the Reeds have a valid claim for breach of contract has already been established by the

prior state court actions between the parties.

70.    The ResCap Trust is barred from revisiting that issue and disputing the validity of

the breach of contract claim here in this bankruptcy matter by virtue of collateral estoppel, the Rooker-Feldman doctrine, and/or *res judicata*.  See discussion above, at ¶¶ 22-39.

71.     Accordingly, it is respectfully submitted that the Reeds have set forth a valid claim for breach of contract and the Objection must be denied.

**D. The Reeds Fail to Establish a Claim for Actual Malice in Regard to Their Claim for Punitive Damages**

72.     The ResCap Trust takes the position that the Claimants' have failed to establish a claim for actual malice under New Jersey law.  See Objection, Section V.C.i, at ¶¶ 35-40.

73.     Punitive damage claims in New Jersey are governed by statute, <u>N.J.S.A.</u> 2A:15-5.9 et seq., referred to as the Punitive Damages Act.

74.     Under the terms of the Punitive Damages Act and New Jersey law, actual malice is not required.  The ResCap Trust conveniently omits the fact that the wanton or wilful disregard of the rights of others is a legally valid alternative to actual malice.  See <u>N.J.S.A.</u> 2A:15-5.9 et seq., see also New Jersey Model Civil Jury Charges § 8.60.

75.     A punitive damages claim against the debtors is supported by the fact that a substantial part of the Reeds' damages have come from the Debtors purposeful leaving of a lis pendens in place as active on the county records for four to five years after being given notice by both the state court and the Reeds that the underlying litigation had been dismissed.

76.     Punitive damages are further supported by the wilful and gross disregard with which the debtors treated their contractual and statutory obligations to the Reeds.

77.     Additionally, as with other claims that were analyzed by the state court, the punitive damages claim is not reviewable by this Court pursuant to the legal doctrines of Collateral Estoppel and Rooker-Feldman.  See discussion above, at ¶¶ 22-39.

78.    Accordingly, it is respectfully submitted that the Objection must be denied.

**E.  The Reeds Fail to Establish a Claim for Malicious Use of Process**

79.    The ResCap Trust takes the position that the Claimants' have failed to establish a claim for malicious use of process under New Jersey law.  See Objection, Section V.C.iii, at ¶¶ 43-55.

80.    The Reeds have not actually attempted to state a claim for malicious use of process, explicitly or implicitly.

81.    Rather, the ResCap Trust itself has chosen to characterize the Reeds' claims as such, and then pointlessly expends a substantial amount time and effort in its Objection (relative to its other particular objections) to disprove and disallow the phantom 'malicious use of process' claim.  See Objection, Section V.C.iii, at ¶¶ 43-55.

82.    That said, it was wholly unreasonable for the debtors to file a foreclosure complaint against the Reeds when express statutory and contractual requirements were completely unfulfilled.

83.    The debtors' right to file a foreclosure action had not been perfected at the time that the debtors improperly proceeded with the action.

84.    It is clearly apparent that the debtors exhibited such a gross or intentional disregard for their contractual and statutory obligations to the Reeds, that liability under a cause of action for malicious use of process is warranted.

85.    Accordingly, it is respectfully submitted that the Objection must be denied.

**F.  The Reeds Fail to Establish a Claim for Fraud**

86.    The ResCap Trust takes the position that the Claimants' have failed to establish a claim for fraud under New Jersey law.  See Objection, Section V.C.vi, at ¶¶ 63-67.

22

87.    It can reasonably be inferred that the Debtors intended to defraud the Reeds into believing that their ONLY choice was to pay the note in full. The debtors blatant lack of notice required by both contract, statute and common duty and so universally seen as extremely critical, can only be seen as being motivated by an intent to force the Reeds into paying the entire note. It is clear from these proceedings that the debtors were in serious financial stress and what better way for them to alleviate that distress than to have large notes be paid in full, filling their coffers with much needed cash.

88.    In addition, the ResCap Trust again ignores the fact that the issue of whether the Reeds have a valid claim for consumer fraud has already been established by the prior state court actions between the parties.

89.    The ResCap Trust is barred from revisiting that issue and disputing the validity of the breach of contract claim here in this bankruptcy matter by virtue of collateral estoppel, the Rooker-Feldman doctrine, and/or *res judicata*. See discussion above, at ¶¶ 22-39.

90.    Accordingly, it is respectfully submitted that the Objection must be denied.

**G.  The Reeds Are Not Entitled to a Constructive Trust**

91.    The ResCap Trust takes the position that the Claimants' are not entitled to a constructive trust on the ground that the debtor did not commit a wrongful act, and because there was no unjust enrichment. See Objection, Section V.C.vii, at ¶¶ 68-71.

92.    The ResCap Trust correctly states that "[t]he right to impose a constructive trust is determined by state law", and that "New Jersey law controls this analysis because all of the critical facts in this matter stem from New Jersey". See Objection, Section V.C.vii, at ¶ 69.

93.    As specifically recognized by the Second Circuit in In re Howard's Appliance Corp., 874 F.2d 88, 94 (2d Cir. 1989), under New Jersey law, "a constructive trust should be

impressed in any case where to fail to do so will result in an unjust enrichment." Id. (internal

quotations omitted), citing Stewart v. Harris Structural Steel Co., 198 N.J.Super. 255, 486 A.2d

1265, 1271 (App. Div. 1984) and D'Ippolito v. Castoro, 51 N.J. 584, 588, 242 A.2d 617, 619

(1968).

94.      When property has been acquired or retained "in such circumstances that the

holder of the legal title may not in good conscience retain the beneficial interest, equity converts

him into a trustee." Stewart v. Harris Structural, supra. (quoting Beatty v. Guggenheim

Exploration Co., 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919)); see Hill v. Warner, Berman &

Spitz, P.A., 197 N.J.Super. 152, 484 A.2d 344, 352 (App. Div. 1984).

95.      "The Supreme Court of New Jersey has stated that, in general, "all that is required

to impose a constructive trust is a finding that there was some wrongful act, usually, though not

limited to, fraud, mistake, undue influence, or breach of a confidential relationship, which has

resulted in a transfer of property." In re Howard's Appliance Corp., 874 F.2d 88, 94 (2d Cir.

1989) citing D'Ippolito, supra., 242 A.2d at 619, 38 A.L.R.3d at 677.

96.      "**In fact, such a trust may arise "*even though the acquisition of the property*

*was not wrongful.*  It arises where the retention of the property would result in the unjust

enrichment of the person retaining it.**" (emphasis added)  In re Howard's Appliance Corp., 874

F.2d at 94, citing D'Ippolito, supra, Stretch v. Watson, 5 N.J. 268, 74 A.2d 597, 602 (1950);

Stewart, supra, 486 A.2d at 1271-72.

97.      Here, there exists a rule in the common law of contracts in New Jersey which

states:  **If a party to a contract proves that a counter-party to that contract prevented or**

**hindered the first party's performance of its obligations under the contract, the**

**counterparty cannot recover for a breach that resulted from those actions**.  See Ward v.

Merrimack Mut. Fire Ins. Co., 332 N.J.Super. 515, 522, 753 A.2d 1214, 1218 (App. Div. 2000)("A party to a contract may not avail itself of a condition precedent where by its own conduct it has rendered compliance therewith impossible"); Atlantic City v. Farmers Supply & Products, 96 N.J.L. 504, 508 (E. & A. 1929); Coastal Oil v. Eastern Trailers Seaway Corp., 29 N.J. Super. 565, 577 (App. Div. 1954); Winfield v. Middlesex Contractors, 39 N.J. Super. 92, 102 (App. Div. 1950); Abeles v. Adams Engineer Co., 64 N.J. Super. 167, 178, mod. 35 N.J. 411 (App. Div. 1960)("He who prevents a thing from being done may not avail himself of the non-performance which he himself has occasioned").  See also Creek Ranch, Inc. v. New Jersey Turnpike Authority, 75 N.J. 421, 432 (1978); Blau v. Friedman, 26 N.J. 397 (1958); see also 5 Williston on Contracts, 677 (3d ed. 1957); Restatement of Contracts § 295 (1932).

98.    In the instant case it was debtors' wrongful acts which interfered with and at least hindered the Reeds from fulfilling their "obligation" under the note and mortgage contracts.  The Reeds would have paid off their mortgage, as it was their obligation to do so through their cash out refinance with TD bank or the broker Mr. Tardamossa, and/or through a sale of the property for a price unimpeded by the debtors' wrongful lis pendens and other acts.

99.    Therefore it was debtors own wrongful acts that interfered with the Reeds rightful obligation and right to extinguish the note and its corresponding lien.

100.    Additionally it should be quite informative to this Court to take note that a wrongful act does not have to be one which, by and in itself, gives rise to an actionable independent cause of action.  It can merely be some inappropriate act that gives rise to an unjust enrichment of a party.

101.    In In Re: Howard's Appliance, cited above, it was the mere fact that the debtor in possession's' staff had misdirected a shipment of goods to be delivered to a warehouse in

another state other than the normal warehouse routinely delivered to, that was wrongful, because that act interfered with the creditor's perfection of the liens it would have otherwise had.

102.    In the Reeds' case, the affirmative defense against the debtors, created by the rule stated in paragraph 81 above, that the debtors' interference or hindrance of the Reeds' obligation to pay the note would have extinguished the note, creates a scenario whereby the debtor's would not be owed anything.

103.    Thus, the debtors would in fact be unjustly enriched if they were to be paid as if the note were not extinguished by the affirmative defense to the note.

104.    Accordingly, it is respectfully submitted that a constructive trust remedy in favor of the Reeds is warranted, and the Objection must be denied.

### H.  The Reeds Had the Option of Reinstating the Loan

105.    The ResCap Trust states that the Reeds had the option of reinstating the loan at issue at any time, and therefore have no valid damages resulting from the debtors' failure to serve a Notice of Intent and improperly filing a foreclosure action against them.  See Objection, Section V.C.ii, at ¶¶ 4, 41-42.

106.    Troublingly, at paragraph 4 and 42 of the Objection, the ResCap Trust makes false statements and representations with respect to the Reeds' efforts to obtain a loan reinstatement and/or modification – contending that the Reeds could have reinstated the loan at any point before entry of a final judgment of foreclosure and representing that GMAC made repeated efforts to assist the Reeds in that regard.

107.    In fact, the Claimants did on fact attempt to obtain reinstatement/modification of the loan and were ignored by the debtor – a fact which was admitted to the Claimants by a "ResCap GMAC" employee.  See Claimant's email correspondence with Mark Folweiler,

Community Relations Specialist for GMAC ResCap.

108.    Indeed, there is currently a three thousand dollar "un-applied" payment on the Claimants' account corresponding to their effort and payment, but GMAC NEVER LOGGED the workout

109.    The demand for a complete payoff was the ONLY communication Mr. Reed had from GMAC until the workout.

110.    In reality, and as is clear from the Reeds' claims, regardless of a potential reinstatement or modification, the damage to the Reeds was DONE THE INSTANT the improper Foreclosure was filed – which is the crux of the Reeds' claims and the proper focus of their proofs. See 30 N.J.Prac. Law of Mortgages § 24.16 (2d ed. 2008)("The institution of foreclosure is traumatic to the debtor mortgagor and creates a permanent court record which can be injurious to the debtor's credit. The notice of intention is meant to give the debtor a chance to prevent acceleration and institution of Foreclosure.  Obviously giving the notice after Foreclosure has been instituted will not effectuate this legislative purpose").

### I.    The Reeds Are Not Entitled to be Made Whole Under the FRB Consent Order

111.    Despite the fact the FRB Consent Order was modified the order and the rules promulgated under the order, there was indeed a continued OPTION to "determine whether borrowers suffered financial injury as a result of errors, misrepresentations, or other deficiencies in the foreclosure process.  (and)  Where financial injury is found, the servicers must compensate the injured borrowers."   Statement of Scott G. Alvarez, General Counsel, Board of Governors of the Federal Reserve System: Submitted to the Senate Committee on Banking, Housing, and Urban Affairs Subcommittee On Housing, Transportation, and Community Development - U.S. Senate, Washington, D.C. - December 13, 2011.

112.    Pursuant to this fact, the Reeds proposed to the debtors a course of action on August 8th and 9th 2013, (after the FRB Consent Order was amended).

113.    The Reeds proposed to the debtors a course of action that would have likely saved the estate the exposure to all of the Reeds' claims.

114.    This would have happened at NO COST to the estate, (as the Reeds would have completely funded it), and the Reeds claims would have been rendered moot by their satisfaction from a source of money outside of the estate.  (see emails to debtors' counsel James Newton).

115.    However, this was rejected by the debtors.  It is the Reeds' position that this was a breach of their fiduciary duty to the trust to preserve the res of the trust and since the Reeds were parties in interest in the trust, it was a breach of debtor in possession's fiduciary duty that harmed the Reeds.

116.    The Reeds could have been made whole out of the FRB required fund, but for the debtor in possessions' wrongful act.  Therefore the Reeds respectfully request that the debtors make the Reeds whole; and since this act was perpetrated AFTER the filing of the debtors' bankruptcy petition, it is not dischargeable or reducible under the bankruptcy and therefore must be paid in full.

117.    An additional statement verifying that the Reeds would have been made whole is as follows: W*hen independent consultants find errors, misrepresentations or other deficiencies, their next steps are to determine whether financial injury occurred and to recommend remediation when it does.  Financial injury is defined as monetary harm directly caused by servicer error."*   [Testimony of Julie L. Williams, First Senior Deputy Comptroller and Chief Counsel, Office of the Comptroller of the Currency, Before the Subcommittee on Housing Transportation, and Community Development of the Committee on Banking Housing, and Urban

Affairs, United States Senate, December 13, 2011].

### J.  The Proofs of Claim Are Not Properly Asserted Against Debtor ResCap

118.    The ResCap Trust takes the position that the Claimants' Proofs of Claim are not properly asserted against debtor ResCap since the Reeds do not have any legal claims against ResCap.  See Objection, Section V.D., at ¶¶ 79-81.

119.    The Reeds filed proofs of claim 3708 and 4759 against Residential Capital LLC ("ResCap"), and proofs of claim 3759 and 4736 against GMAC Mortgage, LLC ("GMAC").

120.    Proofs of Claim 3708 and 4759 were, in fact, intended to be filed against Residential Funding Company, LLC, a debtor entity in this bankruptcy, and the entity against which the Reeds filed their state court action and which is referenced countless times in the Reeds' submissions relevant to their Proofs of Claim in this bankruptcy.

121.    In what amounts to a technological 'scrivener's error', when entering Proofs of Claim 3708 and 4759 into the website of the appointed third-party claim administrator – Kurtzman Carson Consultants or "KCC" – the Reeds mistakenly selected debtor Residential Capital LLC from the KCC website form's drop-down menu of debtor entities, as opposed to the very similarly-named Residential Funding Company LLC.

122.    It is respectfully submitted that Proofs of Claim 3708 and 4759 should be amended, or that Claimants should be granted leave to file amended the proofs of claim, to correct the mistakenly-selected debtor entity from Residential Capital LLC to Residential Funding Company LLC.

123.    Late-filed amendments to proofs of claim are freely allowed where it will not prejudice other parties.  See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 133 (2d Cir. 2005).  Amendments, are closely scrutinized to ensure

that the amended claim is not an "attempt to file a new claim under the guise of amendment." <u>Id</u>.

124.     A late-filed claim is deemed an amendment when it relates back to a "timely assertion of a similar claim or demand evidencing an intention to hold the estate liable." <u>In re Enron</u>, 419 F.3d at 133.

125.     "In other words, a late-filed claim will be an amendment, rather than a new claim, when: (i) a timely filed claim puts the debtor on notice that a future claim will be asserted; and (ii) the late claim relates back to a timely-filed claim." <u>In re Uvino</u>, 2012 WL 892501 (Bkrtcy. S.D.N.Y. 2012).

126.     "A timely-filed claim provides notice when it apprises parties of the existence, nature, and amount of the claim and that it was the creditor's intent, expressed in the original claim, to hold the estate liable for the claim later set forth in the amendment." <u>Id</u>.

127.     A claim will relate back when it "(1) corrects a defect of form in the original claim; (2) describes the original claim with greater particularity; or (3) pleads a new theory of recovery on the facts set forth in the original claim." <u>In re Enron</u>, 419 F.3d at 133 (internal quotations and citations omitted).

128.     Ultimately, the decision to permit an amendment to a proof of claim "rests within the sound discretion of the bankruptcy judge." <u>In re McLean Indus. Inc.</u>, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990).

129.     Here, the Reeds' voluminous submissions in support of their proofs of claim are replete with references to and allegations against Residential Funding Company LLC and GMAC.

130.     The debtor estate, the ResCap Trust and all other interested parties have been on notice from the outset of the Claimants' intention to hold the debtor estate liable for the acts and

omissions of GMAC and Residential Funding.

131.    Amendment of Proofs of Claim 3708 and 4759 to correct the defect will not prejudice the parties.  The Reeds' allegations, claims, demands and proofs, and the damages sought, remain unchanged.

132.    Furthermore, there is no potential prejudice with respect to funding of the ResCap Trust, since the Reeds' Proofs were considered in the calculation and formulation of the funding amount.  See "DIRECT TESTIMONY OF WILLIAM R. THOMPSON", Doc 5713 Filed 11/12/13, at ¶¶ 22 and 28.  William R. Thompson, General Counsel for Residential Capital, LLC and its subsidiaries (collectively, the "Debtors") noted that there was a determination made that more than enough money funded the trust and that all submitted claims were considered in formulating the proper amount with which to fund it.  Id.

133.    This is not an instance of a late new claim being file under the guise of an amendment.  See, e.g. In re Residential Capital, LLC, et al., Case No. 12-12020 (Bankr. S.D.N.Y. Nov. 27, 2013)(denying amendment to claimant Pappas on the ground that, in adding 114 additional properties by amendment to his original claim concerning a single property, Pappas was in fact asserting new claims and not simply amending his original one).

134.    Amendment in this instance will merely correct a defect in the original Proofs, which misidentified the intended debtor because of a technological 'scrivener's error'.  As noted, the Reeds' filings and supplemental submissions made and make clear that they seek to impose liability against Residential Funding and GMAC – a fact of which all interested parties have been aware.

135.    Amendment will not change any other aspect of the claim, and no prejudice will result.  Furthermore, amendment to correct the Proofs' defect as to the intended entity will

clearly relate back to the timely-filed original note.

136.    As this Court has specifically held with respect to post bar date amendments of

proofs of claim:

> First, the court must determine "whether there was a timely
> assertion of a similar claim or demand evidencing an intention to
> hold the estate liable." A claim satisfies this first prong if it: "1)
> corrects a defect of form in the original claim; 2) describes the
> original claim with greater particularity; or 3) pleads a new theory
> of recovery on the facts set forth in the original claim." In other
> words, the amendment must relate back to the original proof of
> claim.
>
> If this "relation back" inquiry is satisfied, courts then examine
> whether it would be equitable to allow the amendment. Courts
> consider the following five equitable factors in determining
> whether to allow an amendment:
>
> (1) undue prejudice to opposing party; (2) bad faith or dilatory
> behavior on the part of the claimant; (3) whether other creditors
> would receive a windfall were the amendment not allowed; (4)
> whether other claimants might be harmed or prejudiced; and (5)
> the justification for the inability to file the amended claim at the
> time the original claim was filed.
>
> [In re Residential Capital, LLC, 507 B.R. 477, 493-94 (Bkrtcy.
> S.D.N.Y. 2014)(internal citations omitted)].

137.    Here, taking into account the factors above, an amendment to Proofs 3708 and

4759 to cure the mistaken selection of Residential Capital instead of Residential Funding from

the computerized drop-down menu of debtors is permissible and warranted.

138.    Amendment would not cause undue prejudice to any opposing party in light of the

limited, technical, 'scrivener's error' nature of the amendment and the fact that the parties have

been on notice, vis a vis the Claimants' supporting submissions, of the Reeds' intention to

impose liability on the debtor estate via GMAC and Residential Funding. Nor would any other

claimants be harmed or prejudiced. None of the facts, figures, claims, documents or damages are

affected.

139.   Furthermore, the Claimants' mistake was obviously not made in bad faith nor was their conduct dilatory.   Assuming the validity of the claim otherwise, if amendment is not permitted, and Proofs 3708 and 4759 are disallowed based on the Reeds' technical error, the creditors would receive an unfair windfall.

140.   As noted by the court in <u>Integrated Res., Inc. v. Ameritrust Co., N.A. (In re Integrated Res., Inc.)</u>, 157 B.R. 66, 70 (S.D.N.Y. 1993) in affirming the allowance of an amendment to a proof of claim, "[t]he critical consideration is whether the opposing party will be unduly prejudiced by the amendment."   There is no such prejudice here.   See also <u>In re Newcare Health Corp.</u>, 274 B.R. 307 (Bkrtcy. D.Mass. 2002)(holding that amendment of complaint of official committee of unsecured creditors in Chapter 11 case would relate back to date that original complaint was filed in adversary proceeding, although amendment substituted previously unnamed corporate entities for misnamed operating entities; corporate entities still had same substantive defenses as if they were properly named initially, corporate entities admitted to having actual knowledge of adversary proceedings shortly after operating entities received summons and complaint, and corporate entities should have known that, but for misnomer, they would have been named as parties).

141.   Accordingly, it is respectfully submitted that Proofs of Claim 3708 and 4759 should be amended to reflect debtor Residential Funding, or in the alternative, that Claimants should be granted leave to file amended proofs of claim to correct the mistakenly-selected debtor entity from Residential Capital LLC to Residential Funding Company LLC.

## IV.   EXISTENCE OF AND EXTENT OF DAMAGES IS NOT SPECULATIVE

142.   The ResCap Trust's Objection makes repeated references to the Claimants' allegations of being damaged and the extent of the damages as being unsupported, unestablished

and speculative.  See, e.g., Objection at ¶¶ 2, 51, 54, 67.

143.   However, as has been noted herein, it is apparent that the ResCap Trust has not considered or reviewed the Reeds' substantial submissions, and especially, the Reeds' supplemental documentation and exhibits – which were requested and received by the debtors almost a year, in July 2013.

144.   That the Reeds were damaged by the actions of the debtors is well supported by the Reeds' evidentiary submissions.

145.   Specifically, the Claimants' submissions spell out in detail, supported by documentary evidence and statements from uninterested third-parties, the consequences of the debtors' wrongful foreclosure and the specific damages caused thereby.

146.   For instance, the Reeds' property was in the midst of a cash-out refinance with TD Bank at the time of the wrongful foreclosure, which was then denied by TD Bank as a direct result of the debtors' actions.

147.   This is specifically supported by the August 20, 2012 letter correspondence between Frank Reed and TD Bank, wherein the TD Bank Market President states that the Reeds were denied because of the pending foreclosure.  The Reeds' liquidity was ruined.

148.   Furthermore, the Reeds' property was on the market at the time of the wrongful foreclosure, and because of the debtors' wrongful acts, the property could no longer be sold at its proper market value.  Thus, the property became essentially unsellable at its appropriate market value, having lost significant market value as a direct result of the wrongful foreclosure and lis pendens filing.

149.   Contrary to the position expressed in the Objection, the Claimants have submitted clear and convincing *prima facie* evidence that a wrong and harm has occurred and that they

have been damaged as a result.

150.    While it can be argued that the extent of the Claimants' damages are not certain, they do not need to be in order to be actionable and recoverable.

151.    New Jersey courts "do permit considerable speculation by the trier of fact as to damages".  V.A.L. Floors, Inc. v. Westminster Communities, Inc., 355 N.J.Super. 416, 424, 810 A.2d 625, 630 (App. Div. 2002).

152.    In Tessmar v. Grosner, 23 N.J. 193, 203, 128 A.2d 467 (1957), the New Jersey Supreme Court stated that "[t]he rule relating to the uncertainty of damages applies to the uncertainty as to the fact of damage and not as to its amount, and where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery." (citations omitted).

153.    Although New Jersey courts do require a "reasonably accurate and fair basis for the computation of alleged lost profits," (J.L. Davis & Associates v. Heidler, 263 N.J.Super. 264, 276, 622 A.2d 923 (App. Div. 1993)), the "fact that a plaintiff may not be able to fix its damages with precision will not preclude recovery of damages."  Inter Medical Supplies v. EBI Medical Systems, 181 F.3d 446, 463 (3rd Cir. 1999)(citing American Sanitary Sales Co. v. State, Dep't of Treasury, 178 N.J.Super. 429, 435, 429 A.2d 403 (App. Div.), certif. denied, 87 N.J. 420, 434 A.2d 1094 (1981)).

154.    In Stanley Co. of America v. Hercules Powder Co., 16 N.J. 295, 314, 108 A.2d 616 (1954), the New Jersey Supreme Court stated the rule as follows: "Loss of profits, where based on sound fact and not on mere opinion evidence without factual support, is recognized as a proper measure of damages if 'capable of being estimated with a reasonable degree of certainty' ".

155.    Furthermore, "[p]rofits lost by reason of breach of contract may be recovered if there are any criteria by which probable profits can be estimated with reasonable certainty." V.A.L. Floors, Inc. v. Westminster Communities, Inc., 355 N.J.Super. 416, 424, 810 A.2d 625, 630 (App. Div. 2002), citing Feldman v. Jacob Branfman & Son, Inc., 111 N.J.L. 37, 42, 166 A. 126 (E & A 1933); see also Restatement (Second) of Contracts § 352 (1981).

156.    In V.A.L. Floors, supra, the New Jersey appellate division noted with approval the methodology utilized by certain other jurisdictions:

> Judged by these criteria, we do not believe that plaintiffs were required to prove the dollar amount of their projected expenses. In *Alaska Children's Services, Inc. v. Smart,* 677 *P.*2d 899, 902 (Alaska, 1984), the contractor's proof as to lost profits was his testimony as to his normal profit margin applied to the bid price. From these figures a jury could compute the costs of the project, that being the bid price less the profit percentage. In reaching that conclusion the court cited to a number of cases from other jurisdictions that "have accepted as sufficient evidence a profit estimate made by the contractor." *Ibid.* Such an opinion as to anticipated profit by one with sufficient background constitutes "*prima facie* proof of the loss." *Nelson v. Cail,* 120 *Ariz.* 64, 583 *P.*2d 1384, 1387 (App. 1978). *See also Sir Speedy, Inc. v. L & P Graphics, Inc.,* 957 *F.*2d 1033, 1038 (2nd Cir.1992).
>
> [V.A.L. Floors, supra, 355 N.J.Super. at 425-26, 810 A.2d at 631].

157.    Here, it is respectfully submitted that the certainty and scope of the damages that resulted from GMAC and Residential Funding's actions has been established by clear and convincing evidence.

158.    "Evidence affording a basis for estimating damages with some reasonable degree of certainty is sufficient to support an award of compensatory damages." Paolicelli v. Wojciechowski, 132 N.J.Super. 274, 278-79, 333 A.2d 532 (App. Div. 1975), certif. den. 68 N.J. 153, 343 A.2d 441 (1975).

159.    As noted by the New Jersey appellate division in American Sanitary Sales Co.,

Inc. v. State, Dept. of Treasury, Division of Purchase and Property, 178 N.J.Super. 429, 435, 429
A.2d 403, 406 (App. Div. 1981):

> The ideal of a judicial system is perfect justice. However, in a case
> where, as here, absolute precision in fixing damages may not be
> attainable, we should not hesitate to seek essential justice. It would
> be a travesty to deny a plaintiff essential justice because the
> absence of means for precision precludes perfect justice.
>
> There are numerous areas in the law where damages cannot be
> unmistakably assessed to the dollar.
>
> [Id., 178 N.J.Super. at 435, 429 A.2d at 406].

160.    In making its Objection, the ResCap Trust simply failed to address or cite any of
the proofs provided to it by Claimants in their July 22, 2013 submission, which contained
extensive documentation with respect to the existence and extent of damages caused to the
Reeds.

## V.    THE REEDS HAVE A VALID CLAIM FOR EMOTIONAL DISTRESS

161.    The facts of this matter support a claim by claimant Frank Reed for infliction of
emotional distress, as previously set forth in Claimants' submissions.  See Reed July 21, 2013
Basis of Claim, ¶ 14.

162.    Specifically, claimant Frank Reed has been caused tremendous stress as a result
of GMAC's and Residential Funding's wrongful acts and omissions, and as a result of the
consequences and damages caused thereby.  Furthermore, Mr. Reed is suffering from a serious
heart ailment as a direct and proximate result of the continued stress caused by the debtors'
wrongful acts and omissions.  See Report of Dr. Sussman from Virtua Cardiology.

163.    The New Jersey Supreme Court has stated that "negligent infliction of emotional
distress" consists of "negligent conduct that is the proximate cause of emotional distress in a
person to whom the actor owes a legal duty to exercise reasonable care."  Decker v. Princeton

Packet, Inc., 116 N.J. 418, 429 (1989).

164.    Infliction of emotional distress occurs "where one suffers severe emotional trauma as a result of the tortfeasor's negligent act or omission." Gendak v. Poblete, 139 N.J. 291, 296 (1995).  In recognizing that the severity of emotional distress raises questions of both law and fact, the Court has stated that it is the trial judge who "decides whether, as a matter of law, such emotional distress can be found, and the jury decides whether it has, in fact, been proved". Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988)(finding that a cause of action for intentional infliction may lie if the plaintiff can prove that (1) the defendant acted intentionally or recklessly, (2) that the defendant's conduct was extreme and outrageous, (3) the defendant's actions were the proximate cause of plaintiff's emotional distress, and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it).

165.    It is respectfully submitted that the debtors' acts and omissions as described herein negligently and recklessly caused emotional and physical harm to Mr. Reed.

## VI.   CONCLUSION

Wherefore, claimants Frank Reed and Christina Reed respectfully submit that the

Objection of The ResCap Borrower Claims Trust to the claimants' Proofs of Claim be denied

and dismissed in its entirety, and that the claims be allowed and affirmed by the Court.

Dated: _____, New Jersey
        June 19, 2014

Respectfully Submitted,

By: _____
    Frank Reed, *pro se*

By: _____
    Christina Reed, *pro se*