

*"Real SERVICE in Real Estate"*

July 2, 2012

**Re: Below Market Offers - Reed Home - 817 Matlack Drive Moorestown, NJ 08057**

To Whom It May Concern:

I am Louise Carter. I am a Realtor for BT Edgar & Son in Moorestown, NJ, and I have been a realtor representing both buyers and sellers in Moorestown, NJ since 1986. (Please see my professional biography attached hereto). As a result, I am very familiar with the Moorestown real estate market.

In this role, I came to be the listing agent for Frank Reed's home at 817 Matlack Drive Moorestown, NJ 08057. I sold Mr. Reed that property as well, and knowing the Moorestown real estate market, Mr. Reed's property and its history, it is my professional opinion, that Mr. Reed's house value has been impacted negatively by a foreclosure action filed against him by GMAC.

Prior to GMAC's foreclosure action, Mr. Reed had a contract for sale on his house for the amount of $2,040,000, (see: contract attached hereto). However, this sale did not close.

Unfortunately for Mr. Reed, every offer on his property AFTER GMAC filed its foreclosure against him, was substantially under market value, (see: offers attached hereto); and since the potential buyers actually disclosed that the reason for their under market offer was due to their concern over the property's foreclosure status, it is clear to me that this devalued Mr. Reed's home.

Since, Mr. Reed's last offer was for $1,100,000 and his home was valued at $2,040,000 just before the GMAC foreclosure action, (see: Appraisal and sales contract attached hereto) it is my professional opinion that Mr. Reed has lost a value of $940,000.

If you have any questions, please contact me.

Sincerely,

*Louise Carter*

Louise Carter
Realtor, GRI
B.T. Edgar & Sons, Realtors

27 E. Main St.   Moorestown, NJ 08057   (856) 235-0101
Fax (856) 722-9190   Email: info@EdgarRealEstate.com        www.EdgarRealEstate.com





1 Standard Form of Real Estate Sales Contract adopted by the Burlington Camden County Association of REALTORS® and recommended for use only when (1) A Listing
2 Agreement has been signed by Seller; and (2) the real estate being sold involves a one-to-four family residential property. This form has been certified by the
3 Attorney General to be in compliance with the Plain Language Law. Approval of a consumer contract by the Attorney General only means that simple,
4 understandable and easily readable language is used. It is not an approval of the contract's terms or legality.

5
6
7

# CONTRACT FOR SALE OF A ONE-TO-FOUR FAMILY RESIDENTIAL PROPERTY

8
9
10 **THIS IS A LEGALLY BINDING CONTRACT THAT WILL BECOME FINAL IN THREE BUSINESS DAYS.**
11 **DURING THIS PERIOD YOU MAY CHOOSE TO CONSULT AN ATTORNEY WHO CAN REVIEW AND CANCEL**
12 **THIS CONTRACT.   SEE SECTION ON ATTORNEY REVIEW FOR DETAILS.**
13
14 **THIS CONTRACT FOR SALE** has been prepared on the __8th__ day of_____ December_____ , 2007 .
15
16 **BETWEEN** _____ Frank J. Reed 3rd & Christina A. Reed _____ the Seller(s)
17
18 Whose address is _____ 817 Matlack Drive, Moorestown, NJ 08057 _____ and
19
20                      Scott Jacobs and Traci Jacobs      the Buyer(s)
21
22 Whose address is _____ 350 Tom Brown Road, Moorestown, NJ 08057
23

24 **TABLE OF CONTENTS**
25

| | |
|---|---|
| 1   Attorney Review | 23   Home Inspection and Reports |
| 2   Commencement of Attorney Review | 24   Infestation and/or Damage by Wood Boring Insects |
| 3   Notices and Fax Transmission | 25   Radon Information |
| 4   Sale, Purchase and Property | 26   Lead-Based Paint Document Acknowledgment |
| 5   Personal Property and Fixtures | 27   Lead-Based Paint and/or Lead-Based Paint Hazard Contingency Clause |
| 6   Purchase Price/Manner of Payment | 28   Notice of Off-Site Conditions |
| 7   Deposit Monies | 29   Airport Safety Zone |
| 8   Sufficient Assets | 30   Megan's Law Statement |
| 9   Mortgage Contingency, Placement Fee (Points),Commitment Fee | 31   Dispute Between Seller and Buyer over Deposit |
| 10   Inspection by Lenders, Surveyors. Certifications & Repairs | 32   Failure of Buyer or Seller to Settle |
| 11   Flood Areas | 33   Brokerage Fee |
| 12   Possession, Occupancy and Tenancies | 34   Seller not Liable to Buyer after Settlement |
| 13   Dates and Time for Performance | 35   Risk of Loss |
| 14   Settlement Time and Place | 36   No Reliance on Others |
| 15   Settlement Costs and Money Adjustments | 37   Consumer Information Statement Acknowledgment |
| 16   Deed and Other Documents Required for Settlement | 38   Declaration of Licensee |
| 17   Certificate of Occupancy and Zoning Compliance | 39   No Assignment of Recording |
| 18   Condominium/Homeowners Association Documents | 40   Entire Contract, No Oral Representations |
| 19   Quality and Insurability of Title | 41   Binding on Successors |
| 20   Condition of Property | 42   Additional Contract Provisions |
| 21   Seller's Warranty and Pre-Settlement Inspection | 43   Acknowledgment of Terms of Contract |
| 22   Seller's Representation | |

50 **1.  ATTORNEY REVIEW:**
51      **A.   Study by Attorney:**
52      The Buyer or Seller may choose to have an attorney study this Contract.  If an attorney is consulted, the attorney must complete his or her
53 Review of the Contracts within a three-day period.  This Contract will be legally binding at the end of this three-day period unless an attorney
54 for the Buyer or the Seller reviews and disapproves of this Contract.
55      **B.   Counting the Time:**
56      You count the three days from the date of delivery of the signed Contract to the Buyer and Seller. You do not count Saturdays, Sundays or
57 legal holidays.  The Buyer and the Seller may agree in writing to extend the three-day period for attorney review
58      **C.   Notice of Disapproval:**
59      If an attorney for the Buyer or the Seller reviews and disapproves of the Contract, the attorney must notify the REALTOR(S)® and the other
60 party named in this Contract within the three-day period.  Otherwise, this Contract will be legally binding as written. The attorney must send
61 notice of disapproval to the REALTOR(S)® by certified mail, by telegram or by delivering it personally. The telegram or certified letter will
62 be effective upon sending.  The personal delivery will be effective upon delivery to the REALTOR(S)® office.  The attorney may also, but
63 need not, inform the REALTOR(S)® of any suggested revision(s) in the Contract that would make it satisfactory.
64
65
66 **2.  COMMENCEMENT OF ATTORNEY REVIEW:**
67      The parties acknowledge by their initials the date of delivery of this Contract signed by both Buyer and Seller to be as follows:
68
69      INITIALS AS TO BUYER                    INITIALS AS TO SELLER
70
71      DATE 12/10/07                           DATE 12/07/07
72
73
74 **3.  NOTICES AND FAX TRANSMISSIONS.**
75      **A.   Notices:**
76      All notices required in this Contract must be in writing.  All notices shall be by certified mail, by telegram, by personal delivery,
77 or by facsimile transmission (fax).  The telegram, certified letter or facsimile transmission will be effective upon sending. The
78 personal delivery will be effective upon delivery to the other party.  Each party must accept the certified mail, telegram or
79 facsimile transmission sent by the other party.  Notices to the Seller shall be addressed as indicated on Line 18 of this Contract.
80 Notices to the Buyer shall be addressed as indicated on Line 22 of this Contract.  Notices to the Realtors® shall be addressed to
81 the addresses as indicated in Paragraph 33 of this Contract.  Notwithstanding the above, this notice provision shall not apply to
82 Paragraph I, entitled "Attorney Review," which has its own methods of notice that must be strictly adhered to.
83      **B.   Contract, Counter Offer, Addendum, Amendment:**
84      The facsimile transmission (fax) of a signed copy of this Contract, any counter offer, addendum or amendment to the other party
85 or their agent, followed by faxed acknowledgment of receipt, shall constitute delivery of the signed document.  The Seller and
86 Buyer agree to confirm the faxed transmission by mailing or personally delivering a clear copy with original signatures to the
87 other party or their agent.

3 of 6

# NOTICE
## To Buyer and Seller:
### Read This Notice Before Signing the Contract

The Law requires real estate brokers to give you the following information before you sign this contract. It requires us to tell you that you must read all of it before you sign. The purpose is to help you in this purchase or sale.

1.  As a real estate broker, I represent:
    - ☒ The Seller, not the Buyer  _____ B.T. Edgar & Son
    - ☒ The Buyer, not the Seller  _____ Prudential Fox & Roach
    - ☐ Both the Seller and the Buyer _____
    - ☐ Neither the Seller nor Buyer.
    The title company does not represent either the Seller or Buyer.

2.  You will not get any legal advice unless you have your own lawyer. Neither I nor anyone from the title company can give legal advice to either the buyer or the seller. If you do not hire a lawyer, no one will represent you in legal matters now or at the closing. Neither I nor the title company will represent you in those matters.

3.  The contract is the most important part of the transaction. It determines your rights, risks, and obligations. Signing the contract is a big step. A lawyer would review the contract, help you to understand it, and negotiate its terms.

4.  The contract becomes final and binding unless your lawyer cancels it within the following three business days. If you do not have a lawyer, you cannot change or cancel the contract unless the other party agrees. Neither can the real estate broker nor the title insurance company change the contract.

5.  Another important service of a lawyer is to order a survey, title report, or other important reports. The lawyer will review them and help to resolve any questions that may arise about the ownership and condition of the property. These reports and survey can cost you a lot of money. A lawyer will also prepare the documents needed to close title and represent you at the closing.

6.  A Buyer without a lawyer runs special risks. Only a lawyer can advise a Buyer about what to do if problems arise concerning the purchase of the property. The problems may be about the Seller's title, the size and shape of the property, or other matters that may affect the value of the property. If either the broker or the title company knows about the problems, they should tell you. But they may not recognize the problem, see it from your point of view, or know what to do. Ordinarily, the broker and the title company have an interest in seeing that the sale is completed, because only then do they usually receive their commissions. So their interests may differ from yours.

7.  Whether you retain a lawyer is up to you. It is your decision. The purpose of this notice is to make sure that you have the information needed to make your decision.

SELLER _____  DATE 12/9/07

SELLER _____  DATE 12/9/07

Listing Broker _____  DATE 12/9/07
(Licensee)

BUYER _____  DATE 12/8/07

BUYER _____  DATE 12/08/07

Selling Broker _____  DATE 12/8/07
(Licensee)

**4. SALE, PURCHASE and PROPERTY.**

The Seller agrees to sell and Buyer agrees to buy under the terms of this Contract:
(a) All that land, building(s) and improvements in the Municipality of _____Moorestown_____ , County of _____Burlington_____ ,
    and State of New Jersey, being commonly known as _____817 Matlack Drive_____ identified on
    the Municipal Tax Map as Block _____03803_____ , Lot(s) No(s) _____00002_____ .
    A description of the boundaries of the land is either attached as Schedule "A" or appears in Deed Book_____ at
    page_____ , recorded in the Clerk or Register of Deed's Office of_____Burlington_____ County.
(b) All other rights of the Seller in the land.

**5. PERSONAL PROPERTY and FIXTURES.**
The property being transferred includes all fixtures permanently attached to the building(s), all shrubbery, plantings and fencing.
Also included:
All permanently attached fixtures, wall / wall carpeting, sub zero refrigerator, all window treatments.

..............................................................................................................................................
Specifically excluded:
Swing set, and bathroom hanging mirror.

**6. PURCHASE PRICE/MANNER OF PAYMENT.**
The purchase price is _____Two Million Forty Thousand_____ Dollars    $ 2,040,000
Payable as follows:
(1)   Deposit paid upon signing of the Contract ....................................................................    $ 50,000
(2)   Additional deposit to be paid on or before ....................................................................    $ 0
(3)   At settlement, by certified or cashier's check and/or mortgage company check ....................    $ 1,990,000.
In the event of assumption of existing first mortgage or by Seller taking back Buyers' mortgage
note and mortgage.   *See Additional Contract Provisions*

PURCHASE PRICE ..........................................................................................................    $ 2,040,000.

**7. DEPOSIT MONIES.**
All deposit payments made by the Buyer on account of the purchase price shall be held in a ☐ **non-interest** bearing ☒ **interest**
bearing (W-9 to be supplied to Escrow Holder with deposit) Trust Account of _____B.T. Edgar & Son_____ who
is called the Escrow Holder and shall be applied on account of the purchase price upon compliance by the Buyer with this
Contract. In the event the W-9 form is not returned or returned incomplete or unsigned, the down payment monies shall be placed
in a Non-interest bearing trust account of the Escrow Holder.

**8. SUFFICIENT ASSETS.**
Buyer represents that as of the signing of this Contract, Buyer has or will have as of the date of settlement, all necessary cash
assets, together with the mortgage loan proceeds, to complete settlement.  Should the Buyer not have sufficient cash assets at the
time of settlement, Buyer will be in breach of Contract and Seller shall be entitled to any remedies as provided by law.
Buyer further represents:
☒   the purchase of this property is NOT contingent upon the sale of any other real estate or personal property.
☐   in order to complete settlement, Buyer will require the proceeds from the sale of property located at
    _____ , which is currently under Contract.  A copy of such Contract of Sale
shall be delivered to Seller, or Seller's agent, at the time of signing of this Contract.
☐   in order to complete settlement, Buyer will require the proceeds from the sale of property located
at _____ , which is NOT currently under Contract.
A right of first refusal provision is attached and made a part of this Contract of Sale.

Seller represents that as of the date of settlement, Seller will have sufficient assets, including, but not limited to, the equity in the
property, to satisfy all liens, encumbrances and costs to complete settlement.

**9. MORTGAGE CONTINGENCY, PLACEMENT FEE (POINTS), COMMITMENT DATE:**
If payment of the purchase price requires a mortgage loan other than by the Seller or other than assumption of Seller's
mortgage, the Buyer shall apply for the loan in writing on lender's standard form within seven (7) days after the expiration of
the Attorney Review period (Paragraph 1) and use their best efforts to obtain it.  The Buyer shall supply all necessary
information and fees required by the proposed lender and shall authorize the lender to communicate with the real estate
broker(s) and involved attorney(s).  The Buyer shall obtain a written commitment from an established mortgage lender to make
a loan on the property under the following terms.

Principal Amount: $ 1,632,000.00 _____Type of Mortgage:  ( ) VA   ( ) FHA  ☒ Conventional ( ) Other.

Term of Mortgage: _____30_____ years, with monthly payments based on a _____30_____ year payment schedule.
If VA guaranteed or FHA insured, minimum amount of appraisal required: $ N/A _____ , See FHA/VA
AMENDATORY CLAUSE attached to and made part of this contract.
At settlement, Seller shall pay $ 50,000.00 _____to be applied toward Buyer's escrow items, closing costs, and/or points.
This amount shall not exceed the maximum credit permitted by Buyer's Mortgage Lender. Each "point" being 1% of Buyer's
mortgage loan.

The written mortgage commitment must be delivered to the Seller's agent who is the Listing Broker identified in Paragraph 33
no later than the_____7_____ day of _____January_____ , 20 08 . Should Buyer require additional time to obtain the written
mortgage commitment, the commitment date shall automatically be extended for a period not to exceed _____ days. If such

169 ~~extension shall cause the commitment date to extend beyond the settlement date specified in paragraph 14 then the settlement~~
170 ~~date shall be extended for____days after the revised commitment date.~~  In the event the mortgage commitment is not delivered
171 by the specified date, or any extended date permitted by the Seller, this Contract shall be deemed null and void.  In that event,
172 the deposit monies paid by the Buyer, shall be returned to the Buyer unless failure to obtain the mortgage commitment is the
173 result of the Buyer's negligence or intentional conduct or failure to diligently pursue the mortgage application.
174
175

**10. INSPECTION BY LENDERS, SURVEYORS:   CERTIFICATIONS & REPAIRS.**
177 Seller agrees to permit inspections of the property by authorized appraisers, inspectors and surveyors that may be
178 requested by Buyer and/or Buyer's mortgage lender.
179 All mandatory certifications required by the Buyer's mortgage lender shall be paid for by the Buyer, except as otherwise
180 provided in this Contract.
181 All mandatory repairs required by the Buyer's mortgage lender, or as a condition of those certifications, shall be
182 accomplished before settlement at the Sellers expense, except as otherwise noted in this Contract.  If the total cost of
183 those repairs is more than $ 200.00   , this Contract may be declared null and void at the option of the Seller and
184 all deposit monies paid by the Buyer toward the purchase price shall be refunded to the Buyer, without further liability
185 to the Seller, or the Buyer may elect to make the repairs in excess of $ 200.00_____ at the Buyer's expense and in
186 that event, this contract shall remain in full force and effect.
187

**11. FLOOD AREAS.**
189 The federal and state governments have designated certain areas as flood areas.  If the property is located in a flood area,
190 the use of the property may be limited.  The Seller is not aware that the property is in a flood area; however, this does
191 not ensure that your lender may  not require flood insurance.  If Buyer's inquiry reveals that the property is in a flood
192 area, the Buyer may cancel this Contract within ten (10) business days after the expiration of the Attorney Review
193 Period.   If the mortgage lender requires "flood insurance" then the Buyer shall be responsible for obtaining such
194 insurance on the property.
195

**12. POSSESSION, OCCUPANCY and TENANCIES.**
197 Possession and occupancy will be given to Buyer at time of settlement.  However, if the property is to be tenant
198 occupied as of the date of settlement, see **TENANCY  ADDENDUM** and leases attached and made a part of this
199 contract.
200

**13. DATES AND TIME FOR PERFORMANCE.**
202 The Seller and the Buyer agree that all dates and times for performance of this Contract are **OF THE ESSENCE.**
203 This means that the Seller and Buyer must perform what is required of them within the time limits set by this
204 this Contract, or be in default, except as provided in this Contract.
205

**14. SETTLEMENT TIME and PLACE.**
207 Settlement is the meeting at which time the Seller transfers ownership of the property by Deed to the Buyer and the
208 Buyer pays the Seller the remainder of the purchase price.
209 Settlement shall take place at _Infinity Title Co. - 33 E. Main St., Moorestown, NJ___ or at such place
210 as may be required by the mortgage lender on the_____7th_____ day of _____February____ , 2008___
211 at__4:00__ o'clock __P__.M.  The date, but not the hour, shall be of the essence.  Where there is a designated title
212 insurance company, the proceeds check will be issued by it or by its authorized agent.
213

**15. SETTLEMENT COSTS and MONEY ADJUSTMENTS.**
215 Seller shall pay for the preparation of the Deed, realty transfer fee, lien discharge fees, if any, and one-half of the title
216 company charges for disbursements and attendance allowed by the Commissioner of Insurance; but all searches, title
217 insurance premium and other conveyancing expenses are to be paid for by the Buyer, unless the Seller and the Buyer
218 provide differently in writing.
219 Seller and Buyer shall make prorated adjustments at settlement for items which have been paid by Seller or are due from
220 Seller such as taxes, water and sewer charges which could be claims against the property, rental and security deposits,
221 association and condominium dues, and fuel in Seller's tank.  Adjustments of fuel shall be based upon physical
222 inventory and pricing by the Seller's supplier; such determination shall be conclusive.
223 If Buyer is assuming Seller's mortgage loan, Buyer shall credit Seller for all monies such as taxes and insurance
224 premiums paid in advance or on deposit with Seller's mortgage lender.  Buyer shall receive a credit for monies which
225 the Seller owes to Seller's Mortgage lender, such as current interest or a deficit in the mortgage escrow account.  There
226 shall be no adjustment on any Homestead Rebate due or to become due.
227

**16. DEED and OTHER DOCUMENTS REQUIRED FOR SETTLEMENT.**
229 A Deed is a written document used to transfer ownership of property.  Seller agrees to provide and the Buyer agrees to
230 accept a Bargain and Sale Deed with Covenants against Grantor's (Seller's) acts.  This means that the Seller has done
231 nothing to encumber the title while being the owner.  If the Seller is a corporation, it will also deliver a corporate
232 resolution authorizing the sale.  The Seller shall give to the Buyer and/or title company an Affidavit of Title and
233 executed IRS 1099S form for reporting the sale.  An Affidavit of Title is a sworn statement which contains information
234 clarifying the Seller's ownership of the property, such as marital status, right of tenants, claims on record against people
235 having similar name as Seller.
236 Seller(s) state they  are, are not, foreign persons or non-resident aliens for the purpose of U.S. income taxation
237 and will, if required, provide a certificate of non-foreign status at, or before, settlement as to each Seller.
238

**17. CERTIFICATE OF OCCUPANCY AND ZONING COMPLIANCE.**
240 Seller makes no representation concerning existing zoning ordinances except that Seller's use of the property is not
241 presently in violation of any zoning ordinances and its present use as a _____single_____ family
242 dwelling may be continued.
243 Some municipalities may require a Certificate of Occupancy or Housing Code Letter to be issued.  If any is required for
244 this property, Seller shall obtain it at Seller's expense and shall be responsible to make and pay for any repairs required
245 in order to obtain the Certificate or Letter.  However, if this expense should exceed $ 300.00_____ to the Seller, then
246 the Seller may terminate this contract and refund to the Buyer all deposit monies plus Buyer's reasonable expenses, if
247 any, in preparing to make settlement.  The Buyer may elect to make repairs in excess of $ 300.00_____ at the
248 Buyer's expense.  In addition, Seller shall comply with the New Jersey State Law, and local ordinances, including but

not limited to smoke detectors, carbon monoxide detectors and indoor sprinklers, the cost of which shall not be considered as a repair cost.

**18. CONDOMINIUM/HOMEOWNERS ASSOCIATION DOCUMENTS.**

If the property is a condominium, or is subject to a homeowners' association, Seller shall prior to or at the time of the signing of this Contract, provide Buyer with a copy of the current rules, regulations and by-laws of the condominium, and/or homeowners' association. The name(s), address(s) and telephone number(s) of the Association(s) is/are:

**N/A**

Seller, if required, shall provide Buyer with written approval by the condominium or homeowners' association for Buyer's purchase of the property. Prior to settlement, Seller shall provide a "Status of Account" letter and Certificate of Insurance for the Association.

Seller represents that the current annual association fee is $ **N/A**_____ . Buyer acknowledges that associations commonly require a one-time non-refundable capital contribution or start-up fees.

**19. QUALITY and INSURABILITY OF TITLE.**

The title to be transferred shall be a marketable title and insurable at regular rates by a reputable title insurance company authorized to do business in the State of New Jersey.

The title shall be free and clear of all encumbrances including municipal liens and assessments and liabilities for future assessments for improvements constructed and completed; however, title shall be subject to liabilities for assessments for municipal improvements not completed on the date of this Contract. Seller represents that Seller☐ has ☒ has not been notified of any such assessments. All liens and encumbrances shall be satisfied at or before time of settlement. The title shall be subject to all existing utility easements and restrictions of record, provided such easement or restriction does not unreasonably limit the use of the property. Generally, an easement is a right of a person, other than the owner, of the property to use a portion of the property for a special purpose. A restriction is a recorded limitation on the use of the property. A violation of any restriction shall not be a reason for Buyer refusing to complete settlement as long as the Title Company insures the Buyer against actual loss at regular rates..

The Seller states, to the best of the Seller's knowledge, that there are no restrictions in any conveyance or plans of record that will prohibit use and/or occupancy of the property as a _____ **single** _____ family residential dwelling. The Seller states that all buildings and other improvements on the property are within its boundary lines. Also, that no improvements on adjoining properties extend across the boundary lines of this property. In the event the Seller is unable to transfer the quality of title required and if the Buyer is unwilling to accept Seller's title without a reduction of the purchase price, the monies paid by Buyer toward the purchase price shall be returned to the Buyer, together with expenses of examining the title, making survey, mortgage application fees and Buyer's other reasonable expense in preparing for settlement without further liability to the Seller.

**20. CONDITION OF PROPERTY.**

The land and buildings shall be transferred in the same condition as they now appear, reasonable wear and tear excepted. This means that the property is being sold in its present conditions unless otherwise warranted hereinafter. In addition, Seller shall leave the property free of debris and in broom-clean condition.

**21. SELLER'S WARRANTIES AND PRE-SETTLEMENT INSPECTION.**

A warranty is a promise. Seller warrants that the plumbing, electrical and heating systems together with all equipment servicing those systems, the central air-conditioning, if existing, and all appliances, at time of settlement, are in good operating condition. Buyer shall have the right to inspect the property immediately prior to settlement to ensure that these items are in working order, also that the conditions of the property are as agreed. Seller shall have all utilities in service during the 48-hour period immediately preceding settlement.

**22. SELLER'S REPRESENTATION.** (Check appropriate box)

Seller represents that the property is serviced by: ☒public ☐ private waste disposal. If private waste disposal, see attached **PRIVATE WASTE DISPOSAL ADDENDUM.**

Seller represents that the property is serviced by ☒ public ☐private drinking water source. If private drinking water source, see attached **WELL DRINKING WATER TEST ADDENDUM.**

Seller represents that to the best of Seller's knowledge there ☒is/are no underground fuel tank(s), ☐ is/are underground fuel tank(s) on the property,☐ was/were underground fuel tank(s) which was/were properly removed, ☐is/are underground fuel tank(s) which was/were properly abandoned in place pursuant to the rules and regulations of NJDEP. If an underground fuel tank(s) is present see attached **UNDERGROUND FUEL TANK ADDENDUM.**

**23. HOME INSPECTION and REPORTS.**

Although the premises is being purchased in its present condition, it is recommended that the Buyer obtain an inspection. The Seller will make the property available to the Buyer's qualified inspectors for the purpose of inspecting the property at Buyer's expense to assure that:

A. The heating, air-conditioning, plumbing and electrical systems are in good operating condition.
B. The foundation and structure of the building(s) and garage(s) are sound and that there is no water intrusion into the premises;
C. The roof and flashings do not leak and are structurally sound;
D. The doors and windows (including seals), fireplaces and chimneys are in good operating condition;
E. There are no adverse environmental conditions affecting the property, such as the presence of toxic mold, radon gas of 4.0 pCi/l or greater, air-borne asbestos fibers, toxic chemicals or other pollutants in the soil, air or water.

These inspections are to be performed within 10 business days from the expiration of the Attorney Review Period. If the reports disclose defects in the items mentioned above, Buyer shall supply to Seller or Seller's agent within that 10 day period,those portions of the reports describing said defects, together with a list of requested repairs. The Seller shall then have 5 business days to respond in writing to the Buyer or Buyer's agent. If the Seller does not respond within 5 business days, or if the Seller refuses to make the requested repairs at Seller's expense, then the Buyer may cancel this Contract by giving written notice to the Seller or Seller's agent within 3 business days thereafter. In that event, all deposit monies shall be returned to Buyer and neither party shall have any further obligation to the other.

If Buyer does not obtain and deliver these inspection reports within that 10-day period, Buyer's rights under this paragraph shall be deemed waived and this Contract shall remain binding. The time for delivery of these reports is of the essence.

"Qualified inspector" is defined as someone who is licensed or certified by a governmental authority having jurisdiction for such purposes. Where licensure or certification is not required by law for any such inspector, the term "qualified inspector" shall mean persons who are regularly engaged in the business of inspecting residential properties for a fee and who generally maintain good reputations for skill and integrity in their areas of expertise.

The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a structural element, system or subsystem is not by itself a material defect.

Maintenance and cosmetic items that are included in inspection reports are for the Buyer's information only and are not covered by the provisions of this paragraph.

Should Buyer's inspection fail to reveal existing defects in the property, Buyer's sole and exclusive remedy shall be against the inspectors providing such services.

**Attached is a Seller's disclosure statement to Buyer regarding the property    (Check appropriate box)**

☐ Yes

☒ No

## 24. INFESTATION and/or DAMAGE by WOOD BORING INSECTS.

The Buyer is permitted to have the accessible areas of the building and detached garage(s) inspected by a reputable exterminating company of Buyer's choice to determine if there is any damage caused or infestation by termites or other wood destroying insects. The Buyer will pay for this inspection. The inspection report shall be furnished to the Seller or Seller's agent no later than _____10_____ days prior to settlement. If infestation or damage is found, the Seller, at the Seller's expenses, shall have the infestation treated and have repaired or replaced any wood which is deemed to be unserviceable in the opinion of a professional engineer or building contractor. Treatment and/or repairs are to be completed before settlement. If the estimate for the treatment and/or repairs exceeds $**1,500.00**_____, Seller, at Seller's option, may cancel this Contract. If Seller elects to cancel this Contract, all deposit monies plus the Buyer's reasonable expenses, if any, in preparing to make settlement shall be refunded to the Buyer. The Buyer may agree to accept the premises without the treatment and/or repairs in which case the Seller shall allow a credit of up to $ **1,500.00**_____ against the purchase price at time of settlement. The failure of the Buyer to furnish the inspection report to the Seller or Seller's agent within the time provided will constitute a waiver by the Buyer or Buyer's rights under this clause.

## 25. RADON INFORMATION. (Check one)

☐ Seller has obtained a radon test. The results of the test are being provided to the Buyer.

☒ Seller represents that Seller is unaware of any such tests having been made.

## 26. LEAD-BASED PAINT DOCUMENT ACKNOWLEDGMENT (applies to dwellings built before 1978)

Buyer acknowledges receipt of the EPA pamphlet entitled "Protect Your Family From Lead in Your Home". Moreover, a copy of a document entitled **DISCLOSURE OF INFORMATION AND ACKNOWLEDGMENT LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS** has been fully completed and signed by Buyer, Seller and Broker(s) and is attached and made part of this Contract.

## 27. LEAD-BASED PAINT and/or LEAD-BASED PAINT HAZARD CONTINGENCY CLAUSE.

This paragraph is applicable to all dwellings built prior to 1978. Unless the Buyer and Seller agree to a longer or shorter period, Buyer has a ten (10) business day period within which to complete an inspection and/or risk assessment (the "Inspection") of the Property by a certified inspector/risk assessor for the presence of lead-based paint hazards. The Inspection shall be ordered and obtained by the Buyer at the Buyer's expense, within ten (10) business days from the expiration of the Attorney Review Period. If the Inspection indicates that no lead-based paint or lead-based paint hazard is present at the Property, this contingency clause shall be deemed to be null and void. If the Inspection indicates that lead-based paint or lead-based paint hazard is present at the Property, this contingency clause will terminate at the time set forth above unless within five business days of receiving the inspection results, the Buyer delivers a copy of the inspection and/or risk assessment report to the Seller and Broker(s) and (a) advises Seller and Broker(s), in writing that Buyer is voiding this Contract; or (b) delivers to Seller and Broker(s) a written amendment (the "Amendment") to this Contract listing the specific existing deficiencies and corrections required by the Buyer. The Amendment shall provide that the Seller agrees to (a) correct the deficiencies; and (b) furnish the Buyer with a certification from a certified inspector/risk assessor that the deficiencies have been corrected, before the date of settlement. The Seller shall have _____5_____ days after receipt of The Amendment to sign and return it to Buyer or send a written counter-proposal to Buyer. If Seller does not sign and return the amendment or fails to offer a counter-proposal, this Contract shall be null and void and all deposit monies paid by Buyer toward the purchase price shall be refunded to the Buyer, without further liability to the Seller. In the event Seller offers a counter-proposal, Buyer shall have _____5_____ days after receipt of the counter-proposal to accept it. If the Buyer fails to accept the counter-proposal within the time limit provided, this Agreement shall be null and void and all deposit monies paid by Buyer toward the purchase price shall be refunded to the Buyer, without further liability to the Seller.

## 28. NOTICE OF OFF-SITE CONDITIONS. (This statement is required by the New Jersey Real Estate Commission for Residential Resale Properties).

Pursuant to the New Residential Construction Off-Site Conditions Disclosure Act, P.L. 1995, c.253 the clerks of municipalities in New Jersey maintain lists of off-site conditions which may affect the value of residential properties in the vicinity of the off-site condition. Purchasers may examine the lists and are encouraged to independently investigate the area surrounding this property in order to become familiar with any off-site conditions that may affect the value of the property. In cases where a property is located near the border of a municipality, purchasers may wish to also examine the list maintained by the neighboring municipality. If new construction, see attached **NOTIFICATION REGARDING OFF-SITE CONDITIONS ADDENDUM.**

## 29. AIRPORT SAFETY ZONE. (Check applicable box)

Seller represents that the property identified in Paragraph 1 of this Contract ☐ is ☒ is not located in an AIRPORT SAFETY ZONE as defined by the New Jersey Air Safety and Zoning Act of 1983, amended by L1991C445.

**30. MEGAN'S LAW STATEMENT.** (This statement is required by the New Jersey Real Estate Commission.)
Under New Jersey Law, the county prosecutor determines whether and how to provide notice of the presence of convicted sex offenders in the area. In their professional capacity, real estate licensees are not entitled to notification by the county prosecutor under Megan's Law and are unable to obtain such information for you. Upon settlement, the county prosecutor may be contacted for such further information as may be disclosable to you.

**31. DISPUTE BETWEEN SELLER AND BUYER OVER DEPOSIT.**
The Escrow Holder is not required to resolve any dispute which might arise between the Seller and Buyer concerning deposit payments in the Trust Account. The Escrow Holder will require from both the Seller and Buyer their written permission to pay out the deposit payment from the Trust Account. If the dispute is not resolved, the Escrow Holder will retain the deposit money until the Buyer and/or Seller receive an order from the Court regarding distribution.

**32. FAILURE OF BUYER OR SELLER TO SETTLE: BROKER'S RIGHT TO BROKERAGE FEE:**
In the event the Seller or Buyer fails to settle in accordance with this Contract, either may commence any legal or equitable action against the other as may be permitted by law. If Seller breaches this Contract, Seller will nevertheless be liable to the Broker for a brokerage fee as otherwise set forth in the Listing Agreement Contract. If Buyer breaches this Contract, Buyer will nevertheless be liable to the Broker for damages as determined by the Court, which may be equivalent to the brokerage fee in this Contract.

**33. BROKERAGE FEE: LIEN ON PROCEEDS.**
The Seller agrees to pay the named real estate broker(s) for services rendered in procuring this sale.
This fee is payable as follows:

| | | |
|---|---|---|
| B.T. Edgar & Son | Ph#: (856) 235 0101 | As stated in Listing Agreement |
| Listing Broker | | Brokerage Fee 2% of sales pr. |
| 27 E. Main Street, Moorestown, NJ 08057 | Fax: (856)722 9190 | |
| Address and Telephone Number | | |
| Prudential Fox & Roach | Ph# (856) 234 0011 | As stated in MLS |
| Selling Broker | | Brokerage Fee 2% of sales pr. |
| 1 W. Main Street, Moorestown, NJ 08057 | Fax: (856) 234 3979 | |
| Address and Telephone Number | | |

The brokerage fee shall be due and payable at the time of actual settlement and all purchase money consideration has been received by the Seller. The Seller agrees and acknowledges that the dollar amount of the brokerage fee shall be a lien (a legal claim) on the purchase money proceeds derived from the sale of the subject property. The Seller, by this Contract, authorizes and directs the Buyer's attorney, or the title insurance company, whichever is the case, to pay to the broker(s) the full brokerage fee out of the proceeds of sale, prior to the payment of any funds to the Seller. The brokerage fee bill, duly receipted by the broker or broker's agent, or the closing attorney's or title insurance company's check in payment of such brokerage fee, shall be deemed a release and discharge of this lien.

**34. SELLER NOT LIABLE TO BUYER AFTER SETTLEMENT.**
All warranties, guarantees, representations of Seller concerning the property, the systems servicing the property, the appliances, lot lines, location of structures, driveways, fences and any other matter affecting this Contract, unless otherwise set forth in writing shall be absolutely void after settlement or delivery and acceptance of possession or occupancy, whichever is earlier. Buyer acknowledges they have the right to purchase a home warranty.

**35. RISK OF LOSS.**
The risk of loss or damage to the property by fire or otherwise, except ordinary wear and tear, is the responsibility of the Seller until settlement.

**36. NO RELIANCE ON OTHERS.**
This Contract is entered into by the Seller and Buyer based upon their full understanding of the meaning of all the provisions of this Contract, and upon the knowledge of the parties as to the value of the land and whatever buildings are upon same, and not on any representations made by either of them to the other, or by the real estate broker(s) involved. The Broker(s) named in this Contract, their personnel and associates are not to be held liable either to Seller or Buyer for the performance or non-performance of any of the terms of this Contract. Seller and Buyer agree that they are entering into this Contract without any reliance upon any representations or statements which may have been made by personnel or associates of the realty firm(s).

**37. CONSUMER INFORMATION STATEMENT ACKNOWLEDGMENT.**
By signing below the Seller(s) and Buyer(s) acknowledge they received the Consumer Information Statement on New Jersey Real Estate Relationships from the brokerage firms involved in this transactions prior to the first showing of the property.

**38. DECLARATION OF LICENSEE BUSINESS RELATIONSHIP(S).**

B.T. Edgar & Son _____ (name of firm) AND
Louise Marsh Carter _____ (name(s) of licensee(s)

AS ITS AUTHORIZED REPRESENTATIVE(S), ARE WORKING IN THIS TRANSACTION AS (choose one):
__X__ SELLER'S AGENT(S)                           _____ BUYER'S AGENTS(S)
_____ DISCLOSED DUAL AGENT(S)                     _____ TRANSACTION BROKER(S)

INFORMATION SUPPLIED BY Prudential Fox & Roach _____ (name of firm)  AND
Holly Donahue _____ (name(s) of licensee(s)

INDICATED THAT IT IS OPERATING IN THIS TRANSACTION AS A (choose one):
_____ SELLER'S AGENT(S)                           __X__ BUYER'S AGENT
_____ DISCLOSED DUAL AGENT(S)                     _____ TRANSACTION BROKER

**39. NO ASSIGNMENT OR RECORDING.**
This Contract shall not be assigned. This means that neither the Buyer nor the Seller may transfer the rights under this Contract to anyone else. Neither this Contract nor a memorandum of it shall be recorded in the County Recording Office.

**40. ENTIRE CONTRACT, NO ORAL REPRESENTATIONS.**
This contract is the entire and only Contract between Buyer and Seller and cancels and replaces any previous agreements between them. This Contract may be changed only in writing signed by both Buyer and Seller. ANY REPRESENTATIONS OR AGREEMENTS NOT CONTAINED IN THIS CONTRACT ARE OF NO EFFECT.

**41. BINDING ON SUCCESSORS.**
This Contract is binding not only on the Seller and Buyer, but also on their heirs, personal representatives, and successors.

**42. ADDITIONAL CONTRACT PROVISIONS.**
A.   Seller agrees to finish the basement bathroom, now partially finished.
B.   Contingent upon appraisal equal to or greater than sale price of $2,040,000.00

**43. ACKNOWLEDGMENT OF TERMS OF CONTRACT.**
The Seller and Buyer agree to the terms of this Contract by signing below. If a corporation is a party, this Contract is signed by its proper corporate officers pursuant to a corporate resolution, and its corporate seal is affixed.

| | | |
|---|---|---|
| Witness _Laurie M. Carta_ | Date _12/9/07_ | SELLER _____ Date _12/08/07_ |
| Witness | Date | SELLER _____ Date _12/9/07_ |
| Witness _Holly Donahue_ | Date _12/8/07_ | BUYER _____ Date _12/8/07_ |
| Witness | Date | BUYER _Jackie Jacobs_ Date _12/08/07_ |

THIS CONTRACT PREPARED BY: _____
(Individual Licensee)

# Seller's Statement
# To Buyer Regarding
# Residential Property

The following is a statement, made by the seller, of information concerning the condition of the property located at _____. This disclosure is not a warranty of any kind by the seller or any agent of the seller in this transaction, and is not a substitute for any inspections or warranties the purchaser may wish to obtain.

## To the Seller

Please complete the following form, including past history of problems, if known. Do not leave any spaces blank. If the condition is not applicable to your property, mark "NA" in the blank. Attach additional pages if additional space is required. Be sure to sign the last page.

*The following are representations made by the seller and are not the representations of seller's agents.*

The items below are in good working order.

## Appliances/Systems

| | Yes | No | Repairs within last 2 years |
|---|---|---|---|
| Range/oven | ✓ | | |
| Microwave | ✓ | | |
| Hood/fan | ✓ | | |
| Dishwasher | ✓ | | |
| Refrigerator | ✓ | | |
| Disposal | | — | |
| Washer/Dryer | | — | |

| | Yes | No | Repairs within last 2 years |
|---|---|---|---|
| Hot Water Heater | ✓ | | |
| Trash compactor | | NA | |
| Central air | ✓ | | |
| Water softener | | — | |
| Attic fan | | — | |
| Ceiling fan | ✓ | | |
| Sump pump | | ✓ | |
| TV antenna | | ✓ | |
| Garage dr opener & remote controls | ✓ | | |
| Fireplace & chimney | ✓ | | |
| Other: _____ | | | |

Explanations of "No's" and "Repair" responses, if any:

## Property Conditions & Improvements

**1. Basement:** Has there been evidence of or problems with water leakage?
[ ] Yes  [✓] No  [ ] Unknown
If yes, please explain, including the frequency and extent of the problem.

**2. Insulation:** Please describe if known

Has urea formaldehyde foam insulation (UFFI) been installed?
[ ] Yes  [✓] No  [ ] Unknown
If removed, by whom and when?

**3. Roof:** Age of roof _2_ Any leaks?
[ ] Yes  [✓] No  [ ] Unknown

**4. Water System:** Well or city water? (Please circle) If well, please describe type of well (depth/diameter) _____
If yes, please explain.

Age of well: _____ Any known problems or repairs? _____

**5. Drainage System:** Septic tanks/drain fields or city sewer system? (Please circle)
Any known problems or repairs?
[ ] Yes  [✓] No  [ ] Unknown
If yes, please describe.

Location of septic field? _____

**6. Heating System:** Type _hot air_
Age of heating system: _2_
Any known problems or repairs?
[ ] Yes  [✓] No  [ ] Unknown
If yes, please describe.

**7. Plumbing System:**
[✓] Copper  [ ] Galvanized  [ ] O
Any known problems or repairs?
[ ] Yes  [✓] No  [ ] Unknown
If yes, please describe.

**8. Electrical System:**
[ ] Yes  [✓] No  [ ] Unknown
Capacity: _____ amps
Any known problems or repairs?
[ ] Yes  [✓] No  [ ] Unknown
If yes, please describe

**9. Aluminum Wiring:**
[ ] Yes  [✓] No  [ ] Unknown

**10. Infestation:** History, if any, of termites, carpenter ants, etc.?
[ ] Yes  [✓] No  [ ] Unknown
Any treatments for infestation?
[ ] Yes  [✓] No  [ ] Unknown
If yes, please describe.

Presently under warranty?
[ ] Yes  [✓] No  [ ] Unknown
With whom? _____
Please describe any repairs

11. Asbestos: Is asbestos present in any form in or on the property?

[ ] Yes  [✓] No  [ ] Unknown

If yes, where? _____

Has it been removed or encapsulated?

[ ] Yes  [ ] No  [ ] Unknown

If removed, from where, when and by whom? _____

12. Radon: Has the property been tested for the presence of radon gas?

[ ] Yes  [✓] No  [ ] Unknown

If yes, what were the test results? _____

13. Landfill: Is the property located in close proximity to a landfill?

[ ] Yes  [✓] No  [ ] Unknown

If yes, which landfill and location? _____

15. Principal Uses: Are you aware of any principal uses of the property other than as residential property, such as commercial or farming?

[ ] Yes  [✓] No  [ ] Unknown

If yes, please describe the use _____

---

Other Items

As the seller, are you aware of any of the following:

16. Features of the property shared in common with adjoining landowners, such as walls, fences, roads or driveways whose use or responsibility for maintenance may have an effect on the property?

[ ] Yes  [✓] No  [ ] Unknown

If yes, please describe. _____

17. Rights-of-way, easements or similar matters that may affect the property?

[ ] Yes  [✓] No  [ ] Unknown

If yes, please describe. _____

18. Room additions or structural modifications?

[✓] Yes  [ ] No  [ ] Unknown

If yes, please describe the work and identify who did the work.
_Basement + bath #3 69_

19. Underground storage tanks on the property?

[ ] Yes  [✓] No  [ ] Unknown

If yes, please describe type, location and size of tank. _____

20. Setting, flooding, drainage, grading, or soil problems?

[ ] Yes  [✓] No  [ ] Unknown

If yes, please describe. _____

---

Environment: Are you aware of any environmental concerns?

[✓] Yes  [ ] No  [ ] Unknown

If yes, please describe. _____

---

21. Major damage to the property or any of the structures from fire, wind, floods or landslides?

[ ] Yes  [✓] No  [ ] Unknown

If yes, please describe. _____

22. Any zoning violations or noncon-forming uses?

[ ] Yes  [✓] No  [ ] Unknown

If yes, please describe. _____

23. Homeowners association which has any authority over the property?

[ ] Yes  [✓] No  [ ] Unknown

If yes, please describe. _____

24. Any "common areas" (facilities such as pools, tennis courts, walkways, or other areas co-owned)?

[ ] Yes  [✓] No  [ ] Unknown

If yes, please describe. _____

25. Any assessments, liens, or judgments against the property or owners?

[ ] Yes  [✓] No  [ ] Unknown

If yes, please describe. _____

---

26. Please state any other facts or information relating to this property that would be of interest to a buyer. _____

To the extent of the seller's knowledge as a property owner, the seller acknowledges that the information contained above is true and accurate for those areas of the property listed.

(Seller) _Christine Pharr_  (Date) _12/04/07_
(Seller) _____  (Date) _12/4/07_

---

To the Buyer

The buyer is urged to carefully inspect the property and, if desired, to have the property inspected by an expert. The buyer understands that there are areas of the property of which seller has no knowledge and that this disclosure statement does not encompass those areas. The buyer also acknowledges that he has read and received a signed copy of this statement from the seller or the seller's agent.

(Buyer) _Jock's Dodson_  (Date) _12/04/07_
(Buyer) _____  (Date) _12/10/07_

Revised 9/91

# RIDER TO CONTRACT FOR SALE

THIS RIDER TO CONTRACT FOR SALE ("Rider") is made this 18th day of December, 2007, by and between **SCOTT JACOBS and TRACI JACOBS**, husband and wife (the "Buyer") and **FRANK J. REED, III and CHRISTINA A. REED**, husband and wife (the "Seller") and amends that certain Contract for Sale dated as of December 8, 2007 (the "Contract") for real property known as 817 Matlack Drive, Moorestown, New Jersey 08057, being described and depicted on the Municipal Tax Map of Moorestown Township as Block 3803, Lot 2 (the "Property").

The Buyer and the Seller intending to be legally bound hereby agree to amend the Contract as follows:

1. Line 20 of the Contract shall be amended to include Miriam Jacobs.

2. Line 109 of the Contract shall be amended and restated so that the swing set and bathroom hanging mirror are specifically excluded. The Seller shall replace the bathroom hanging mirror with a standard grade mirror of comparable size; or, in the alternative, shall repair any damage to the wall after the bathroom hanging mirror is removed by Seller.

3. Line 209 of the Contract shall be amended and restated so that Settlement shall take place at the law offices of Sherman, Silverstein, Kohl, Rose & Podolsky, P.A., 4300 Haddonfield Road, Suite 311, Pennsauken, New Jersey 08109. The remainder of paragraph 14 shall be unchanged.

4. Line 323 of the Contract shall be amended to reflect that the inspections are to be performed within 10 business days from December 17, 2007.

5. Line 343-345 of the Contract shall be amended so that the block marked "yes" shall be checked by Seller. Seller's Property Disclosure Statement is attached to the Contract.

6.      Paragraph 32 of the Contract (Failure of Buyer or Seller to Settle; Broker's Right to Brokerage Fee) shall be amended so that the second and third sentences therein shall be deleted in their entirety.

7.      Paragraph 42 of the Contract (Additional Contract Provisions) shall be amended and restated as follows:

> A.      Seller agrees to finish the basement bathroom, now partially completed, at Seller's sole cost and expense (the "Basement Bathroom Work"). The Basement Bathroom Work shall be completed in a good and workmanlike manner on or before Closing. Buyer shall have an opportunity to inspect the Basement Bathroom Work on or about January 8, 2008.

> B.      Subparagraph 42.B of the Contract is deleted and replaced with the following provision:

> Buyer's obligation to purchase the property shall be contingent upon the Lender's appraisal being equal to or greater than the Purchase Price. In the event that the Lender's appraisal is less than the Purchase Price, the Buyer shall be entitled to cancel the Contract upon written notice to the Seller and Seller's agent on or before the Mortgage Commitment Date whereupon the deposit shall be returned to Buyer and neither party shall have any further liability or obligation to the other hereunder.

> C.      Seller shall, at the time of Closing, deliver to Buyer the 10-year home warranty provided by Builder.

> D.      Upon execution of this Rider by Seller, Seller shall provide Buyer, Buyer's agent and Buyer's counsel with the Seller's Owner's Title Policy of Insurance and most recent survey of the Property.

8.      Upon execution of this Rider by Buyer and Seller, the Attorney Review Period provided for in paragraph 1 of the Contract shall be concluded and the Agreement (as defined below) shall be in full force and effect and binding upon the parties hereto.

9.      Notices required under this Rider or the Contract will be accepted by recognized overnight courier or by confirmed facsimile transmission followed by postage prepaid first class mail.

10.    The Buyer and the Seller agree that if the Buyer defaults under the Contract, the Seller's damages will be difficult to determine and that the deposit represents a fair estimate of the Seller's damages.  The Seller's sole and exclusive remedy in the event of the Buyer's default under the Contract, shall be to retain the deposit as complete and liquidated damages for the Buyer's default hereunder.

11.    Except as otherwise changed by this Rider, the Contract shall continue in full force and effect.  In the event of a conflict between the provisions of this Rider and the Contract, the provisions of this Rider shall control.

12.    This Rider may be executed in any number of counterparts, each of which shall be considered an original and together shall constitute a single Agreement.  For purposes of this Rider, a counterpart transmitted by facsimile shall constitute an original.

IN WITNESS WHEREOF, the Buyer and the Seller execute this Rider the date first written above.

_____
Scott Jacobs, Buyer

_____
Traci Jacobs, Buyer

_____
Miriam Jacobs, Buyer

_____
Frank J. Reed, III, Seller

_____
Christina A. Reed, Seller

3

10.    The Buyer and the Seller agree that if the Buyer defaults under the Contract, the Seller's damages will be difficult to determine and that the deposit represents a fair estimate of the Seller's damages. The Seller's sole and exclusive remedy in the event of the Buyer's default under the Contract, shall be to retain the deposit as complete and liquidated damages for the Buyer's default hereunder.

11.    Except as otherwise changed by this Rider, the Contract shall continue in full force and effect. In the event of a conflict between the provisions of this Rider and the Contract, the provisions of this Rider shall control.

12.    This Rider may be executed in any number of counterparts, each of which shall be considered an original and together shall constitute a single Agreement. For purposes of this Rider, a counterpart transmitted by facsimile shall constitute an original.

IN WITNESS WHEREOF, the Buyer and the Seller execute this Rider the date first written above.

Scott Jacobs, Buyer

Traci Jacobs, Buyer

Miriam Jacobs, Buyer

_____
Frank J. Reed, III, Seller

_____
Christina A. Reed, Seller

File No. 08011502   #850.

This appraisal has been performed for Commerce Bank in connection with a loan request made by you. Commerce Bank makes no representations regarding the accuracy of the information contained in the appraisal and assumes no liability in connection with this appraisal.



## COMPLETE APPRAISAL SUMMARY REPORT

### LOCATED AT:
817 Matlack Drive
Block 3803  Lot 2
Moorestown, NJ  08057

### FOR:
Commerce Bank
2059 Springdale Road
Cherry Hill, NJ  08003

An Administrative Compliance Review has been completed on this report. This report has been deemed acceptable by Commerce Bank.

### AS OF:
1/21/2008

_____
(Reviewed by)          1/30/08          (Date)

### BY:
Peter R. McCaffrey
Robert M. Sapio Real Estate Appraisal & Consulting, LLC

File No. 08011502

Robert M. Sapio
Real Estate Appraisal & Consulting, LLC
314 Cherry Avenue
Voorhees, NJ 08043

Telephone No.: (856) 429-2789
Fax No. : (856) 795-2297

January 25, 2008

Joseph Graves
Commerce Bank
2059 Springdale Road
Cherry Hill, NJ 08003

RE:    Reed
       817 Matlack Drive
       Moorestown, NJ

Dear Mr. Graves:

In accordance with your request, enclosed is one copy of the appraisal report of the captioned property. The purpose of the appraisal was to estimate market value of the captioned property, as improved, in unencumbered fee simple title, subject to the Assumptions and Limiting Conditions contained in the URAR form 439, the Certification and this report.

This report is prepared in compliance with the requirements of the Code of Professional Ethics and the Standards of Professional Practice of the Appraisal Institute.

This is a complete appraisal in a summary report.

Respectfully submitted,

Peter McCaffrey, SLREA/RA 00154

File No. 08011502

| | | | |
|---|---|---|---|
| Borrower Reed 3rd, Frank & Christina | | | File No. 08011502 |
| Property Address 817 Matlack Drive | | | |
| City Moorestown | County Burlington | State NJ | Zip Code 08057 |
| Lender Commerce Bank | | | |

## APPRAISAL AND REPORT IDENTIFICATION

This Appraisal conforms to <u>one</u> of the following definitions:

☒ **Complete Appraisal**
The act or process of estimating value, or an estimate of value, performed without invoking the Departure Provision.

☐ **Limited Appraisal**
The act or process of estimating value, or an estimation of value, performed under and resulting from invoking the Departure Provision.

This Report is <u>one</u> of the following types:

☐ **Self Contained Report**
A written report prepared under Standards Rule 2-2(A) of a complete or limited appraisal performed under Standard 1.

☒ **Summary Report**
A written report prepared under Standards Rule 2-2(B) of a complete or limited appraisal performed under Standard 1.

☐ **Restricted Report**
A written report prepared under Standards Rule 2-2(C) of a complete or limited appraisal performed under Standard 1.

### Comments on Appraisal and Report Identification
Note any departures from Standards Rules 1-2, 1-3, 1-4, plus any USPAP-related issues requiring disclosure:

Robert M. Seniw MAI SRPA APPRAISERS & CONSULTANTS

File No. 08011502

# Uniform Residential Appraisal Report

File # 08011502

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

## SUBJECT

| | |
|---|---|
| Property Address **817 Matlack Drive** | City **Moorestown** State **NJ** Zip Code **08057** |
| Borrower **Reed 3rd, Frank & Christina** | Owner of Public Record **Reed 3rd, Frank & Christina** County **Burlington** |
| Legal Description **Block 3803 Lot 2** | |
| Assessor's Parcel # **03803 - 00002** | Tax Year **2007** R.E. Taxes $ **30,748** |
| Neighborhood Name **N/A** | Map Reference Census Tract **7005.051** |

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ ☐ PUD   HOA $ ☐ per year ☐ per month
Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)
Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) **Market Value**
Lender/Client **Commerce Bank**   Address **2059 Springdale Road, Cherry Hill, NJ 08003**
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  ☒ Yes ☐ No
Report data source(s) used, offering price(s), and date(s).   **The subject is currently under contract for $2,040,000.  Listed with Edgar & Son, LLC, Louise Carter-agent, (856) 235-0101.**

## CONTRACT

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.   **Contract not provided to appraiser.**

Contract Price $ _____ Date of Contract _____ Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s) _____
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.   **N/A**

## NEIGHBORHOOD

**Note: Race and the racial composition of the neighborhood are not appraisal factors.**

| Neighborhood Characteristics | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | Property Values ☐ Increasing ☒ Stable ☐ Declining | | | PRICE $ (000) | AGE (yrs) | One-Unit | 98 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | 900 Low | New | 2-4 Unit | % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | 2,900 High | 90 | Multi-Family | % |
| | | | | | 1,850 Pred. | 5 | Commercial | 2 % |
| | | | | | | | Other | % |

Neighborhood Boundaries   **are Main Street East, Westfield Road north, Cinnaminson Township west and Lenola Road south.**

Neighborhood Description   **The subject is located in a prestigious residential neighborhood of executive style single family detached dwellings. Schools, parks and recreational facilities are scattered around the Township.  Employment and shopping centers are located along State Highway Routes 38, 73 and 130.**

Market Conditions (including support for the above conclusions)   **Property values appear stable.  Demand and supply are in balance.  Marketing times for similar properties average 3-6 months.  Most sales are conventional financing with some FHA.  Conventional mortgages available at prevailing rates and discounts.  No adverse affect on Market Value.**

## SITE

Dimensions **270 x 185 x 111.42 x 156.41**   Area **26,572 Sq. Ft.**   Shape **Irregular**   View **Good**
Specific Zoning Classification **R1A**   Zoning Description **Residential**
Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street **Asphalt** | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone **C**   FEMA Map # **340105 0005B**   FEMA Map Date **9/4/1991**
Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe
**There are no known adverse easements or encroachments.  Highest and best use is continued residential.  Zoning conformance is a legal matter and an attorney's opinion should be sought to confirm the foregoing conclusion.**

## IMPROVEMENTS

| General Description | | Foundation | | Exterior Description    materials/condition | | Interior    materials/condition | |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☐ Crawl Space | | Foundation Walls **PouredConcrete/Gd.** | | Floors **Hwd,Cpt,Tile/Good** | |
| # of Stories **2.5** | | ☒ Full Basement ☐ Partial Basement | | Exterior Walls **Stucco,Wood/Good** | | Walls **Drywall/Good** | |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Area **1,820** sq.ft. | | Roof Surface **Fiberglass/Good** | | Trim/Finish **Wood/Good** | |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish **60** % | | Gutters & Downspouts **Aluminum/Good** | | Bath Floor **Tile/Good** | |
| Design (Style) **2 1/2st.Colonial** | | ☐ Outside Entry/Exit ☒ Sump Pump | | Window Type **Anderson/Good** | | Bath Wainscot **Tile/GOod** | |
| Year Built **2006** | | Evidence of ☐ Infestation | | Storm Sash/Insulated **Yes/Good** | | Car Storage ☐ None | |
| Effective Age (Yrs) **1** | | ☐ Dampness ☐ Settlement | | Screens **Yes/Good** | | ☒ Driveway # of Cars **6** | |
| Attic ☐ None | | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities ☐ Woodstove(s) # | | Driveway Surface **Asphalt** | |
| ☐ Drop Stair ☐ Stairs | | ☐ Other Fuel | | ☒ Fireplace(s) # **3** ☐ Fence | | ☒ Garage # of Cars **3** | |
| ☐ Floor ☐ Scuttle | | Cooling ☒ Central Air Conditioning | | ☐ Patio/Deck ☐ Porch | | ☐ Carport # of Cars | |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other | | ☐ Pool ☐ Other | | ☐ Att. ☐ Det. ☐ Built-in | |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☒ Washer/Dryer ☐ Other (describe)
Finished area **above** grade contains:   **14** Rooms   **7** Bedrooms   **7.5.5** Bath(s)   **6,555** Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.).   **Three zone heat and air, basement finished with full bath, bedroom and game room.  Three fireplaces and upgrades throughout the dwelling.**
Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   **The subject is in very good condition with no apparent needed repairs.  The subject is under two years old and was built by Maines, one of South Jersey's premier builders.**

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe
**There are no physical deficiencies or adverse conditions.**

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 08011502

## Uniform Residential Appraisal Report
File # 08011502

There are **9** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 1,539,000 to $ 2,150,000 .

There are **4** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 1,850,000 to $ 2,900,000 .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 817 Matlack Drive Moorestown, NJ 08057 | 804 Matlack Drive Moorestown, NJ 08057 | | 807 Riverton Road Moorestown, NJ 08057 | | 301 E. Oak Avenue Moorestown, NJ 08057 | |
| Proximity to Subject | | same street | | 1/4 mile | | 1 mile | |
| Sale Price | $ | | $ 1,850,000 | | $ 1,900,000 | | $ 2,150,000 |
| Sale Price/Gross Liv. Area | $         sq.ft. | $ 327.84 sq.ft. | | $ 343.33 sq.ft. | | $ 429.14 sq.ft. | |
| Data Source(s) | | MLS | | MLS | | MLS | |
| Verification Source(s) | | Broker | | Broker | | Broker | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | CNV | | CNV | | CNV | |
| Concessions | | None | | None | | None | |
| Date of Sale/Time | | 8/20/2007 | | 1/5/2007 | | 8/17/2006 | -103,200 |
| Location | Good | Good | | Good | | Good | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | .61 acres | .69 acres | | 2.10 acres | -20,000 | .96 acres | |
| View | Good | Good | | Good | | Good | |
| Design (Style) | 2 1/2st.Colonial | 2 1/2st.Colonial | | 2st French | | 2st Colonial | |
| Quality of Construction | Good | Good | | Good | | Superior | -50,000 |
| Actual Age | 1 | 1 | | 10 eff. 2 | | 86 eff. 10 | +50,000 |
| Condition | Good | Good | | Good | | Good | |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 14 / 7 / 7.5 | 5 / 4.5 | +50,000 | 10 / 5 / 5.5 | +25,000 | 11 / 5 / 5.5 | +25,000 |
| Gross Living Area | 6,555 sq.ft. | 5,643 sq.ft. | +71,100 | 5,534 sq.ft. | +78,200 | 5,010 sq.ft. | +115,500 |
| Basement & Finished | 1,820 Sq.Ft./Bat | Full, Bath | | Full, Bath | | Full, 1/2 Bath | |
| Rooms Below Grade | GameRm,Bed | GameRm,Bed | | GameRm | | GameRm | |
| Functional Utility | Good | Good | | Good | | Good | |
| Heating/Cooling | FHA/Central | FHA/Central | | HWBB/Central | | FHA/Central | |
| Energy Efficient Items | 3 zone heat/air | 3 zone heat/air | | 3 zone heat/air | | 3 zone heat/air | |
| Garage/Carport | 3 car | 3 car | | 3 car | | 2 car | +10,000 |
| Porch/Patio/Deck | Porch | Patio | | Deck, Patio | | Patio | |
| | 3 F/P | 1 F/P | +10,000 | 3 F/P | | Pool, Fence | -20,000 |
| | | | | | | 3 F/P | |
| Net Adjustment (Total) | | ☒ + ☐ - $ | 131,100 | ☒ + ☐ - $ | 83,200 | ☒ + ☐ - $ | 27,300 |
| Adjusted Sale Price | | Net Adj. 7.1 % | | Net Adj. 4.4 % | | Net Adj. 1.3 % | |
| of Comparables | | Gross Adj. 7.1 % $ | 1,981,100 | Gross Adj. 6.5 % $ | 1,983,200 | Gross Adj. 17.4 % $ | 2,177,300 |

☒ did  ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did  ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s)  Public Records

My research ☐ did  ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data Source(s)  Public Records

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 5/31/2006 | N/A | N/A | N/A |
| Price of Prior Sale/Transfer | 1,574,619 | | | |
| Data Source(s) | Public Records | | | |
| Effective Date of Data Source(s) | 1/21/2008 | | | |

Analysis of prior sale or transfer history of the subject property and comparable sales    The subject was purchased on 5/31/2006 as new construction. The subject is currently listed for sale with Edgar & Sons, LLC-Moorestown. The listing agent is Louise Carter. The listing is for $2,296,000 and is currently under agreement for $2,040,000.

Summary of Sales Comparison Approach    See attached addendum.

Indicated Value by Sales Comparison Approach $  2,040,000

**Indicated Value by: Sales Comparison Approach $  2,040,000    Cost Approach (if developed) $  1,946,169    Income Approach (if developed) $  N/A**

All weight is placed on the Sales Comparison Approach to value.

This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,  ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $  2,040,000 , as of   1/21/2008  , which is the date of inspection and the effective date of this appraisal.

SALES COMPARISON APPROACH

RECONCILIATION

## Uniform Residential Appraisal Report
File # 08011502

**ADDITIONAL COMMENTS**

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | | =$ | 500,000 |
|---|---|---|---|---|---|---|
| Source of cost data | DWELLING | 6,555 Sq.Ft. @ $ | 190.00 | | =$ | 1,245,450 |
| Quality rating from cost service    Effective date of cost data | Basement | 1,820 Sq.Ft. @ $ | 80.00 | | =$ | 145,600 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | 3 F/P | | | | =$ | 18,500 |
| The Reproduction Cost was derived from the Marshall and Swift | Garage/Carport | 888 Sq.Ft. @ $ | 40.00 | | =$ | 35,520 |
| Evaluation Service and cost data contained in the appraisers files. | Total Estimate of Cost-New | | | | =$ | 1,445,070 |
| | Less | Physical | Functional | External | | |
| | Depreciation | 28,901 | | | =$( | 28,901) |
| | Depreciated Cost of Improvements | | | | =$ | 1,416,169 |
| | "As-is" Value of Site Improvements | | | | =$ | 30,000 |
| Estimated Remaining Economic Life (HUD and VA only)    Years | INDICATED VALUE BY COST APPROACH | | | | =$ | 1,946,169 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No   Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # 08011502

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 08011502

# Uniform Residential Appraisal Report

File # 08011502

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Freddie Mac Form 70 March 2005 | Page 5 of 6 | Fannie Mae Form 1004 March 2005

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # 08011502

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

**APPRAISER**

Signature _Peter M. McCaffrey_

Name  Peter E. McCaffrey

Company Name   Robert M.Sapio Real Estate Appraisals

Company Address   314 Cherry Avenue, Voorhees, NJ 08043

Telephone Number   (856) 429-2789

Email Address   rms@rmsapio.com

Date of Signature and Report   January 30, 2008

Effective Date of Appraisal   1/21/2008

State Certification #

or State License #   42RA00015400

or Other (describe) _____ State # _____

State  NJ

Expiration Date of Certification or License   12/31/2009

ADDRESS OF PROPERTY APPRAISED

817 Matlack Drive

Moorestown, NJ 08057

APPRAISED VALUE OF SUBJECT PROPERTY $   2,040,000

LENDER/CLIENT

Name  Joseph Graves

Company Name   Commerce Bank

Company Address   2059 Springdale Road, Cherry Hill, NJ 08003

Email Address   joseph.graves@yesbank.com

**SUPERVISORY APPRAISER (ONLY IF REQUIRED)**

Signature _____

Name _____

Company Name _____

Company Address _____

Telephone Number _____

Email Address _____

Date of Signature _____

State Certification # _____

or State License # _____

State _____

Expiration Date of Certification or License _____

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
　　Date of Inspection _____
☐ Did inspect interior and exterior of subject property
　　Date of Inspection _____

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
　　Date of Inspection _____

Freddie Mac Form 70 March 2005 | Page 6 of 6 | Fannie Mae Form 1004 March 2005

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 08011502

**General Text Addendum**

File No. 08011502

| Borrower | Reed 3rd, Frank & Christina | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | | |
| City | Moorestown | County | Burlington | State | NJ | Zip Code | 08057 |
| Lender | Commerce Bank | | | | | | |

SCOPE

This is the extent of the process of collecting, confirming and reporting market data.

The primary source of the market data used in this report was the Multiple Listing Service in the subject County. Also, where necessary, market data from the appraiser's files and public records were utilized.

INCOME APPROACH

The Income Approach was not developed due to the lack of rental data in the local market which precludes developing a market rental estimate for the subject. Nearly all dwellings, locally, are owner occupied. This situation also causes a dearth of sold rental properties making it virtually impossible to derive a gross rent multiplier.

ZONING

A representative of the zoning office indicates the subject property building lot is legal, conforming and the existing improvements can be rebuilt if destroyed or are found to be uninhabitable.

Zoning conformance is a legal matter, we suggest an attorney's opinion be sought to confirm the appraiser's conclusion.

MORE THAN SIX MONTHS

In order to present the most similar sales, it is necessary to select sale 3, which is more than six months old, due to the low sale turnover in the subject neighborhood.

Stmt8-062701
· **Statement of Limiting Conditions :**

USE,COPIES,PUBLICATION,DISTRIBUTION OF THIS REPORT:
This appraisal report is prepared for the sole and exclusive use of Commerce Bank, N.A., to assist in determining the collateral values for mortgage financing. It is no to be relied upon by third parties for any purpose, whatsoever.

The report may not be used for any purpose by any person or party other than the client or the party to whom it is addressed or copied without the written consent of an officer of the appraisal firm (Robert M. Sapio, Real Estate Appraisal & Consulting, LLC) and then only in its entirety.

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for the analytical services only.

Neither all nor any part of the contents of this report shall be conveyed to the public through advertising, public relations efforts, news, sales, other media, without the written consent and approval of an officer of the Sapio firm, nor may any reference be made in such a public communication to the Appraisal Institute or the MAI or SRA designations.

This supersedes No. 10 on page 1 of the Statement of Limiting Conditions.

| | |
|---|---|
| Signature | Signature |
| Name Peter R. McCaffrey | Name |
| Date Signed January 30, 2008 | Date Signed |
| State Certification #          State | State Certification #          State |
| Or State License # 42RA00015400   State NJ | Or State License #          State |

Form TADD2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 08011502

**General Text Addendum**

File No. 08011502

| Borrower | Reed 3rd, Frank & Christina | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | | |
| City | Moorestown | County | Burlington | State | NJ | Zip Code | 08057 |
| Lender | Commerce Bank | | | | | | |

### Sales Comparison Approach

Sale No. 1 is 804 Matlack Drive in Moorestown.  The sale is similar to the subject located within the subject's development.  The sale is built by the same developer, Roger Maines, as the subject.  The sale is a two and a half story colonial dwelling with similar construction to the subject.  The subject has superior room count, bedroom count and bathroom count and an upward $50,000 adjustment was made for those items.  The sale has a full finished basement with a full bath.  Sale has three-zone heat, three-car garage and a patio in the rear.  The sale is in very good condition similar to the subject.  The sale has a total of 5,643 square feet of gross living area.

Sale No. 2 is 807 Riverton Road in Moorestown.  The sale is a two story French colonial style dwelling located within the several blocks of the subject.  The sale is located on a rear flag lot and has 2.10 acres.  This sale has ten rooms, five bedrooms and five and one half baths for a total gross living area of 5,534 square feet.  The sale has a full finished basement with a full bath, three-zone heat and a deck and patio in the rear.  The sale is in very good condition.

Sale No. 3 is 301 East Oak Avenue in Moorestown.  This sale is located in a downtown section of Moorestown Township.  This sale is smaller in overall building size with a total of eleven rooms, five bedrooms and five and one half baths for a total of 5,010 square feet of gross living area.  The sale has a full finished basement with a powder room.  The sale has superior construction to the subject with a slate roof, stone siding and copper gutters and downspouts.  The sale is superior with an inground pool and a fence.  The sale is in good condition with an effective age of eight to ten years.

Sale No. 3 settled on August 17, 2006 and a 4% downward time adjustment was necessary.

After adjustments the sales indicated a value range of $1,981,100 to $2,177,300.  All three sales have occurred between August 2006 and August 2007.  It is my opinion, the sales indicate a value of $2,040,000 to the subject.

| | | | | |
|---|---|---|---|---|
| Signature | *Peter McCaffrey* | | Signature | |
| Name | Peter R. McCaffrey | | Name | |
| Date Signed | January 30, 2008 | | Date Signed | |
| State Certification # | | State | State Certification # | State |
| Or State License # | 42RA00015400 | State NJ | Or State License # | State |

Form TADD2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 08011502

**Subject Photo Page**

| Borrower | Reed 3rd, Frank & Christina | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | |
| City | Moorestown | County | Burlington | State | NJ | Zip Code  08057 |
| Lender | Commerce Bank | | | | | |



### Subject Front

| 817 Matlack Drive | |
|---|---|
| Sales Price | |
| GLA | 6,555 |
| Total Rooms | 14 |
| Total Bedrms | 7 |
| Total Bathrms | 7.5.5 |
| Location | Good |
| View | Good |
| Site | .61 acres |
| Quality | Good |
| Age | 1 |



### Subject Rear



### Subject Street

## Comparable Photo Page

| Borrower | Reed 3rd, Frank & Christina | | | | |
|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | |
| City | Moorestown | County | Burlington | State NJ | Zip Code 08057 |
| Lender | Commerce Bank | | | | |



### Comparable 1
804 Matlack Drive
| | |
|---|---|
| Proximity | same street |
| Sale Price | 1,850,000 |
| GLA | 5,643 |
| Total Rooms | 11 |
| Total Bedrms | 5 |
| Total Bathrms | 4.5. |
| Location | Good |
| View | Good |
| Site | .69 acres |
| Quality | Good |
| Age | 1 |



### Comparable 2
807 Riverton Road
| | |
|---|---|
| Proximity | 1/4 mile |
| Sale Price | 1,900,000 |
| GLA | 5,534 |
| Total Rooms | 10 |
| Total Bedrms | 5 |
| Total Bathrms | 5.5 |
| Location | Good |
| View | Good |
| Site | 2.10 acres |
| Quality | Good |
| Age | 10 eff. 2 |



### Comparable 3
301 E. Oak Avenue
| | |
|---|---|
| Proximity | 1 mile |
| Sale Price | 2,150,000 |
| GLA | 5,010 |
| Total Rooms | 11 |
| Total Bedrms | 5 |
| Total Bathrms | 5.5 |
| Location | Good |
| View | Good |
| Site | .96 acres |
| Quality | Superior |
| Age | 86 eff. 10 |

File No. 08011502

THIS DOCUMENT IS PRINTED ON WATERMARKED PAPER, WITH A MULTI-COLORED
BACKGROUND AND MULTIPLE SECURITY FEATURES. PLEASE VERIFY AUTHENTICITY.

## State Of New Jersey
## New Jersey Office of the Attorney General
## Division of Consumer Affairs

THIS IS TO CERTIFY THAT THE

Real Estate Appraisers Board

HAS LICENSED

PETER R. MCCAFFREY
117 OAKMONT RD
MOUNT LAUREL NJ  08054-2310

FOR PRACTICE IN NEW JERSEY AS A(N):  Licensed Residential Appraiser

11/17/2005  TO  12/31/2007                    **42RA00015400**
VALID                                    LICENSE/REGISTRATION/CERTIFICATION #

_Peter R. McCaffrey_                      _Kimberly S. Ricketts_
Signature of Licensee/Registrant/Certificate Holder            DIRECTOR

| Borrower | Reed 3rd, Frank & Christina | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | |
| City | Moorestown | County | Burlington | State NJ | Zip Code | 08057 |
| Lender | Commerce Bank | | | | | |



NATIONAL FLOOD INSURANCE PROGRAM

# FIRM
## FLOOD INSURANCE RATE MAP

TOWNSHIP OF
## MOORESTOWN,
## NEW JERSEY
BURLINGTON COUNTY

PANEL 5 OF 10
(SEE MAP INDEX FOR PANELS NOT PRINTED)

COMMUNITY-PANEL NUMBER
340105 0005 B

MAP REVISED:
SEPTEMBER 4, 1991

Federal Emergency Management Agency

**Flood Map**

| Borrower | Reed 3rd, Frank & Christina | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | | |
| City | Moorestown | County | Burlington | State | NJ | Zip Code | 08057 |
| Lender | Commerce Bank | | | | | | |



| Borrower | Reed 3rd, Frank & Christina | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | | |
| City | Moorestown | County | Burlington | State | NJ | Zip Code | 08057 |
| Lender | Commerce Bank | | | | | | |



| Borrower | Reed 3rd, Frank & Christina | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | |
| City | Moorestown | County | Burlington | State | NJ | Zip Code | 08057 |
| Lender | Commerce Bank | | | | | |



File No. 08011502

**Floor Plan**

| Borrower | Reed 3rd, Frank & Christina | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | | |
| City | Moorestown | County | Burlington | State | NJ | Zip Code | 08057 |
| Lender | Commerce Bank | | | | | | |



817 MATLACK DRIVE
LOT 2
BLOCK 9503

REAR ELEVATION & SECTION

J. Randolph Perry
Architects
architecture | planning

505 South Lenola Road, Suite 203
Moorestown, New Jersey 08057

File No. 08011502

**Floor Plan**

| Borrower | Reed 3rd, Frank & Christina | | | | |
|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | |
| City | Moorestown | County Burlington | | State NJ | Zip Code 08057 |
| Lender | Commerce Bank | | | | |



| Borrower | Reed 3rd, Frank & Christina | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | |
| City | Moorestown | County | Burlington | State | NJ | Zip Code | 08057 |
| Lender | Commerce Bank | | | | | |



| Borrower | Reed 3rd, Frank & Christina | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | | |
| City | Moorestown | County | Burlington | State | NJ | Zip Code | 08057 |
| Lender | Commerce Bank | | | | | | |



| Borrower | Reed 3rd, Frank & Christina | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | | |
| City | Moorestown | County | Burlington | State | NJ | Zip Code | 08057 |
| Lender | Commerce Bank | | | | | | |



| Borrower | Reed 3rd, Frank & Christina | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | |
| City | Moorestown | County | Burlington | State | NJ | Zip Code 08057 |
| Lender | Commerce Bank | | | | | |



**Building Sketch**

| Borrower | Reed 3rd, Frank & Christina | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | |
| City | Moorestown | County | Burlington | State | NJ | Zip Code  08057 |
| Lender | Commerce Bank | | | | | |



# Comparable Sales Map

| Borrower | Reed 3rd, Frank & Christina | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | |
| City | Moorestown | County | Burlington | State | NJ | Zip Code | 08057 |
| Lender | Commerce Bank | | | | | |





# PROPOSAL TO PURCHASE

**THIS IS A PRELIMINARY DOCUMENT. COMPLETE TERMS AND CONDITIONS OF THE TRANSACTION SHALL BE CONTINUED IN A MUTUALLY AGREEABLE CONTRACT FOR SALE BETWEEN THE PARTIES.**

_Frank & Gina Roccisano_ _____ referred to as Buyer, authorizes
_Naoji Morinchi_ _____ to present the following proposal to purchase property situated at :
_817 Matlack Drive, Moorestown, NJ 08057_ _____

for the sum of ........................................................................................ $ _1,300,00_   ☐ Check

DEPOSIT MADE WITH THIS PROPOSAL .............................................. $ _____   ☐ Money Order
which shall be applied on account of purchase price   ☐ Cash

BUYER AGREES TO MAKE AN ADDITIONAL PAYMENT OF ............... $ _13,000_
at time of signing of Contract for Sale.

BUYER AGREES TO PAY .................................................................. $ _____
Balance Due in cash, certified check, and/or mortgagor's check at time of final settlement.

THE CONTRACT FOR SALE will be subject to Buyer obtaining a ☐ FHA ☐ VA ☒ Conventional ☐ Other Mortgage
in the amount of ............................................................................. $ _1,040,000_

**OR**

☐ Assumption of existing mortgage at a rate of _____ % maturing in approximately
_____ years with an approximate balance of .......................... $ _____

THE PROJECTED SETTLEMENT DATE is to be on or before _30 days_ _____ before 4:00 P.M. at the office of
_Foundation Infinity Title_ _____, or at the office of any reputable Title Company.

THIS PROPOSAL is made on the following Terms and Conditions:

(1) **PERSONAL PROPERTY & FIXTURES.** The Property being transferred includes all fixtures permanently attached to the building(s), all shrubbery, plantings, and fencing. Also included: _All appliances & light fixtures_ _____

Specifically excluded: _____

(2) **POSSESSION & OCCUPANCY.** Possession and Occupancy will be given to the Buyer at (check one) ☒ time of settlement or ☐ other: _____

(3) **INSPECTIONS.** The following inspections shall be ordered by the Buyer:
☒ Wood-Boring Insects Report
☐ Examination of the on-site waste disposal system   ☒ Other: _Home Inspection_   ☐ Bacteriological and chemical analysis of the private well drinking water

(4) **SUFFICIENT ASSETS.** The Buyer represents that as of the signing of this Proposal, he/she has or will have as of the date of settlement, all necessary cash assets to complete settlement. However, Buyer further represents:
☒ the purchase of this property is NOT contingent upon the sale of any other real estate or personal property
☐ he/she will require the proceeds from the sale of property located at _____
_____ in order to complete settlement.

(5) **OTHER:** _____

BY SIGNING BELOW the buyer(s) acknowledge they received the Consumer Information Statement on New Jersey Real Estate Relationships from the brokerage firms involved in this transaction prior to the first showing of the property.
_B.T. Edgar & Son Realtors_ _____, (name of firm) AND
_Naoji Morinchi_ _____ (name of licensee(s)),
AS ITS AUTHORIZED REPRESENTATIVE(S), ARE WORKING IN THIS TRANSACTION AS (choose one):
☐ SELLER'S AGENT(S)   ☐ BUYER'S AGENT(S)
☒ DISCLOSED DUAL AGENT(S)   ☐ TRANSACTION BROKER(S)
INFORMATION SUPPLIED BY _____ (name of listing firm) HAS INDICATED THAT IT IS OPERATING IN THIS TRANSACTION AS A (choose one):
☐ SELLER'S AGENT(S)   ☐ BUYER'S AGENT(S)
☐ DISCLOSED DUAL AGENT(S)   ☐ TRANSACTION BROKER(S)

THIS PROPOSAL shall be presented to the seller's agent and subject to approval by the seller. If this offer is not accepted by the Seller within _7_ days, the offer shall be considered cancelled and deposit will be returned to the Buyer upon clearance of Buyer's funds with the Broker's banking institution.

Presenting Agency: _B.T. Edgar & Son_   BUYER Signed: _X Roccisano_ _3-20-10_
Address: _27 E. Main Street_   SS#: _____
_Moorestown, NJ 08057_   Date: _____
Office Tel#: _856-235-0101_   Signed: _____
Office FAX#: _856-722-9190_   SS#: _____
Agent's Name: _Naoji Morinchi_   Date: _____
Agent's MLS Public ID: _600/2567_

FORM#001(8/98)

**From:** Lmcarts <Lmcarts@aol.com>
**To:** frankreedva <frankreedva@aol.com>
**Subject:** Fwd: (no subject)
**Date:** Mon, May 9, 2011 1:58 pm

---

Attached Message

| From: | Singh, Nina <Nina.Singh@uphs.upenn.edu> |
|-------|------------------------------------------|
| To:   | Louise Carter <lmcarts@aol.com>          |
| Subject: | |
| Date: | Sun, 8 May 2011 09:00:03 -0700 |

Hello Louise,
We would like to place the following offer on your pocket listing, Matlack.

Price $1,100,000
Down payment $220,000 (20 percent)
Deposit $60,000 upon agreement of price.

We can close as early as 30 days, but are amenable to a longer escrow if the
seller would like; however we do not want to close later than the end of
august.

Additionally, upon agreement of the sales price, **we would like a full
description of what the legal dealings are with the bank and seller, as this
may affect the closing,** from the seller's attorney. As we would like for our
attorney to review this.

Thank you, Kris and Nina

Sent from my iPhone

The information contained in this e-mail message is intended only for the
personal and confidential use of the recipient(s) named above. If the reader
of
this message is not the intended recipient or an agent responsible for
delivering it to the intended recipient, you are hereby notified that you
have
received this document in error and that any review, dissemination,
distribution, or copying of this message is strictly prohibited. If you have
received this communication in error, please notify us immediately by e-mail,
and delete the original message.