# ResCap

MORRISON | FOERSTER

## Claim Information

| Claim Number | 3708 |
|---|---|

**Basis of Claim**

Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim.

Please see the attached statement and approximately 30 additional e-mails with attached exhibits

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

Loan Number: 060 161 3576

Address of property related to the above loan number: 817 Matlock Drive Moorestown NJ 08057

City: Moorestown     State: NJ     ZIP Code: 08057

Additional resources may be found at - http://www.kccllc.net/rescap

Residential Capital, LLC   P.O. Box 385220   Bloomington, MN 55438

Claim Number: 3708
Frank Reed
Type: POC

Claimant: Frank Reed
817 Matlack Drive Moorestown, NJ 08057
P: 856.956.6950
E: FrankReedNJ@aol.com

Loan Number: 0601613576
Claim Number: 3708

Caveat: The following information is being provided under the color of Federal Rule of Civil Procedure # 408 if the application of such does not violate the Order of the Bankruptcy Court Docket # 3294, filed March 21, 2013)

## BASIS OF CLAIM

### SYNOPSIS

In 2009 GMAC was found to have violated their duty to me under New Jersey State foreclosure law by the New Jersey Superior Court, in Mount Holly, Burlington County, NJ, (the proper court of jurisdiction) and as a result of its violation of its duty to me, GMAC caused me direct financial harm.

Specifically, GMAC's acts destroyed the liquidity and market value of my home, resulting in the immediate interruption and loss of vital cash flow which wrought direct, deep and irreversible catastrophic damage to a lifetime of work and accumulated net worth. The result of this damage, if not remediated, will be the homelessness of me, my wife and our 6 children.

This scenario is recognized as remediable pursuant to, but not limited to, New Jersey State Law.

### DETAILED EXPLANATION

(NOTE: The following provides a reasonably sufficient basis in both law and fact for my claims, but I expressly reserve the right to add delete or supplement specific claims and / or proofs).

1) I, Frank Reed, had continuously bought, built, renovated, rented and sold houses for personal use and for taxable and non-taxable gain since 1990; and I always relied on my ability to borrow money to fund my projects and my cash flow. Without such borrowing ability, I would not be able to pursue this course of making a living as it would cease immediately.

   See:
   a) Exhibit 1 - Letter from CPA Stan Woodworth confirming this to be true.

   b) Exhibit 2 – Letter from attorney Jeffrey Walters confirming this to be true.

2) In 2009, the New Jersey Superior Court, in Mount Holly, Burlington County, NJ, (the proper court of jurisdiction), determined that GMAC had filed an illegal foreclosure action against me, in violation of its duty to me under New Jersey State foreclosure law.

   See: Exhibit 3 - Court order with judicial finding and opinion.

3) GMAC's illegal foreclosure action annihilated the liquid value of my primary residence, instantly destroying my cash flow.

   Both cash out refinance loans that were ready to go on my home AND the salability of my home, were completely destroyed.

   See:

   a) Exhibit 4 - Lis Pendens GMAC filed declaring its foreclosure on my home.

   b) Exhibit 2 – Letter from attorney Jeffrey Walters confirming financial effect.

   c) Exhibit 5 - Article describing value gutting EFFECT of a Lis Pendens.

   d) Exhibit 6 - Report from Federally recognized Credit Expert on effect of foreclosure filing.

   e) Exhibit 7 – New Jersey Practices Legal Treatise citing the liquidity destroying effect of filing a foreclosure and why notice is required by law. (see: page 3 of treatise).

   f) Exhibit 8 - Loan denial letter from long term lending partner citing GMAC foreclosure as the ONLY reason for the denial of a cash out refinance on my home.

   g) Exhibit 9 - Loan denial letter from mortgage broker citing GMAC foreclosure as the ONLY reason for the denial of a cash out refinance on my home.

   h) Exhibit 10 – Expert opinion and factual statement from realtor, Louise Carter, with supporting documents, opining to the lost value and ability to sell my home.

   i) Exhibit 11 - Letter from realtor, Naoji Moriuchi, opining to the fact that my home was not salable at market value.

4) GMAC's illegal foreclosure activity on my home directly caused me to lose sale value on my home. That direct financial harm has been independently determined to be $940,000. This value is the difference between my home's then appraised market value and the under market offers generated due to the house being listed as in foreclosure vis-à-vis GMAC's improper lis pendens.

   Note: I could not accept even below market offers, as they would have resulted in our immediate homelessness.

   See: Exhibit 10 - Expert opinion and factual statement from realtor, Louise Carter, with supporting documents, opining to the lost value and ability to sell my home.

5) The lost cash flow described in number 3 above, caused by GMAC's illegal foreclosure, directly caused the loss of my Virginia home. This home was already owned by me and my wife and a major 3,500 square foot expansion to it was in process.

   As described in number 1 above, I relied on loans to fund my home projects and cash flow. The unexpected interruption of our cash flow, again, caused by GMAC's illegal foreclosure, as described in number 3 above, directly prevented me from completing the home's expansion and caused its loss. Therefore, GMAC's illegal act directly caused me an additional financial loss of $1,116,600.

   See: Exhibit 12 - Letter from realtor, Stevie Watson, with supporting appraisal and documents.

6) The sudden and catastrophic loss of my cash flow, again, caused by GMAC's illegal foreclosure, as described in number 3 above, caused me to divert rental income from properties that I long owned and which were rented by a national organization since 1993. I did not pay the mortgages because I had to feed my family instead of paying the mortgages on these properties.

   The rental properties would have otherwise paid themselves off from the rental income as the national organization would have continued to rent them from me ad infinitum, but for the foreclosure. Instead, I have lost the properties.

   Again, these three rental properties would have been paid off and I would have owned them free and clear. Their value has been lost by GMAC's acts. The additional financial harm caused by GMAC in this regard is $718,000.

   See:

   a) Exhibit 13 - Letter from national organization president confirming rental history and long term intent to continue renting, but for foreclosure.

   b) Exhibit 14 - Appraisal on rental property at 52 Stone Hollow Drive Sicklerville, NJ 08081.

   c) Exhibit 15 - Appraisal on rental property at 318 Columbia Avenue Stratford, NJ 08084.

   d) Exhibit 16 - Appraisal on rental property at 21 Darien Drive Cherry Hill, NJ 08003.

7) As stated above in Number 6, I lost my rental properties due to the sudden and catastrophic loss of my cash flow, again, caused by GMAC's illegal foreclosure, as described in number 3 above. However, I not only lost their future value as expressed in number 6 above, but I am now left with a deficiency judgment by the foreclosing bank in the amount of $240,206.57 (the difference between the total judgment on the note and the setoff from the value of the property taken back by the bank, as determined by the bank.)

   See:

   a) Exhibit 17 - Recorded judgment amount with the bank's attorney's fees.

   b) Exhibit 18 - 1098 from foreclosing bank displaying offset credit for the property taken.

8) Pursuant to New Jersey Law, GMAC is responsible for the lost gain on a project in process.

   I owned a lot in a prominent subdivision and I had plans completed for the construction of a home similar in size and quality as those I historically had success with, (7 bedrooms and 10 baths - the same as the home GMAC illegally tried to foreclose on). This project was up next for completion and would have resulted in either an approximate gain of $500,000 or if we lived in it as a family, it would have been a mortgage free home.

   Therefore, I am requesting that GMAC be directed to pay either the $500,000 in financial remediation for this loss, or that GMAC release its liens on my home at 817 Matlack Drive Moorestown, NJ 08057, the home on which they illegally tried to foreclose, providing me with a replacement mortgage free home. Either of these options would remediate this particular loss.

See:

a) Exhibit 19 - New Jersey Case Law V.A.L. FLOORS, INC. AND 3L COMPANY, INC., PLAINTIFFS-APPELLANTS, v. WESTMINSTER COMMUNITIES, INC., DEFENDANT-RESPONDENT. DOCKET NO. A-6525-00T1 SUPERIOR COURT OF NEW JERSEY, APPELLATE DIVISION 355 N.J. Super. 416; 810 A.2d 625; 2002 N.J. Super. LEXIS 470

> *"Past experience of an ongoing, successful business provides a reasonable basis for the computation of lost profits "with a satisfactory degree of definiteness." Weiss v. Revenue Bldg. & Loan Ass'n, 116 N.J.L. 208, 212, 182 A. 891 (E & A 1935). 8 See also Tull v. Gundersons, Inc., 709 P.2d 940, 945 (Colo.1985) (noting that <u>"past profit experience on other projects . . . is widely accepted as relevant to a determination of damages based on lost profits"</u>); Restatement supra, § 352 comment b ("Evidence of past performance will form the basis for a reasonable prediction as to the [\*\*\*15] future")."*

b) Exhibit 20 - County Tax card showing ownership of the lot described in number 8 that I had to "fire sell" under financial duress instead of building on it as planned, and Article on "Notable Neighborhoods" featuring both my house that was lost (as described in number 5 above), and the neighborhood in which my lot (referred to herein) was located. The lot neighborhood is named: Windsor on the James.

c) Exhibit 21 - Letter from draftsman confirming that plans were already paid for and complete for use on the lot described in number 8.

9) The remediation of the financial damages I seek are appropriate under New Jersey state law as GMAC's acts were negligent, as defined by its regulator The Federal Reserve and authorized by New Jersey state law.

Now, if there are any questions that the remediation of my financial damages are appropriate, or the damages I seek are appropriate under New Jersey Law, let me be clear: This question has been settled by a court of law, and is not reviewable as a matter of law vis-à-vis collateral estoppel.

In 2010, the New Jersey Superior Court, in Mount Holly, Burlington County, NJ, (the proper court of jurisdiction), found that the financial damages I am seeking against GMAC for its illegal foreclosure action against me are legally cognizable and appropriate under New Jersey State Law.

See:

a) Exhibit 22 - The Office of the Comptroller of the Currency - Board of Governors of the Federal Reserve System - JUNE 21, 2012 - FINANCIAL REMEDIATION FRAMEWORK - FOR USE IN THE INDEPENDENT FORECLOSURE REVIEW.

b) Exhibit 23 - New Jersey Court Order declaring that the financial and equitable damages I now seek are appropriate remedies under New Jersey Law for the illegal foreclosure action GMAC filed against me; and our legal brief supporting that order.

c) Exhibit 24 – Our Complaint filed against GMAC, (the subject of Court Order Referenced herein statement number 9).

d) Exhibit 25 - Statement of Scott G. Alvarez, General Counsel, Board of Governors of the Federal Reserve System: Submitted to the Senate Committee on Banking, Housing, and Urban Affairs Subcommittee On Housing, Transportation, and Community Development - U.S. Senate, Washington, D.C. - December 13, 2011.

10) GMAC is also liable under New Jersey law for punitive damages for its behavior, which is in conformity with the opinion of the Federal Reserve:

*"the Federal Reserve believes monetary sanctions in these cases are appropriate...in response to patterns of misconduct and negligence related to deficient practices in residential mortgage loan servicing and foreclosure processing."*

Statement of Scott G. Alvarez, General Counsel, Board of Governors of the Federal Reserve System: Submitted to the Senate Committee on Banking, Housing, and Urban Affairs Subcommittee On Housing, Transportation, and Community Development - U.S. Senate, Washington, D.C. - December 13, 2011

Also, the New Jersey Superior Court, in Mount Holly, Burlington County, NJ, (the proper court of jurisdiction), found that GMAC could be liable for punitive damages under New Jersey Law based on its illegal foreclosure action against me. ( Note: Punitive damages under New Jersey Law shall not exceed $350,000).

See:
  e) Exhibit 25 - Statement of Scott G. Alvarez, General Counsel, Board of Governors of the Federal Reserve System: Submitted to the Senate Committee on Banking, Housing, and Urban Affairs Subcommittee On Housing, Transportation, and Community Development - U.S. Senate, Washington, D.C. - December 13, 2011 and Punitive damages amended complaint.

  f) Exhibit 26 – Amended complaint against GMAC seeking punitive damages, approved by the New Jersey Superior Court.

  g) Exhibit 27 – New Jersey Annotated Punitive Damages Jury Charge citing maximum award allowable by law is $350,000. (see: page 1, paragraph e).

11) GMAC is NOT entitled to collect a setoff and my claim is secured.

GMAC's illegal foreclosure against me interfered with several possible cash out refinance loans that were ready on my home. These loans would have eliminated GMAC as a lien holder on my property and provided me with cash flow and subsequent value. Notably, this value would have been above the value of the GMAC note on my home (this is detailed in numbers 4, 5, 6, 7 and 8).

Therefore, by operation of law, a "constructive trust" over my home should be recognized as being in existence as of the date of GMAC's wrongdoing eliminating its ill-gotten rights; to do otherwise would result in GMAC being "unjustly enriched" for its bad act by allowing it to reap the benefits that would be due to a properly situated lien holder, (i.e. a lien holder who possessed both legal *and equitable* rights to the lien as opposed to GMAC who has "unclean hands").

So, GMAC should not be able to claim that payments due beyond their bad act as valid payments due and payable to them and/or used as a setoff. This should be barred by an equitable order indicating so.

See: Exhibit 28 - Case citing current New Jersey law, which is:

*The Supreme Court of New Jersey has stated that, in general, "all that is required to impose a constructive trust is a finding that there was some wrongful act, usually, though not limited to, fraud, mistake, undue influence, or breach of a confidential*

> relationship, which has resulted in a transfer of property." D'Ippolito, 242 A.2d at 619, 38 A.L.R.3d at 677. In fact, such a trust may arise "even though the acquisition of the property was not wrongful. It arises where the retention of the property would result in the unjust enrichment of the person retaining it." Id. (quoting Scott on Trusts Sec. **462.2**, at 3417 (3d ed. 1967)); accord Stretch v. Watson, 5 N.J. 268, 74 A.2d 597, 602 (1950); Stewart, 486 A.2d at 1271-72.

Exhibit 29 – current Federal 2nd Circuit law citing exhibit 28 above.

12) I have incurred a great deal of legal bills that I would not have, but for GMAC's illegal foreclosure and the direct financial harm it caused. The legal fees I wish to be remediated are those fees incurred in my *direct* legal battles with GMAC as they are a direct financial harm to me caused by GMAC's bad act. These total: $44,865.13

See: Exhibit 30 - Cover letter and legal bills from my counsel.

13) Additional financial experts may be called, including but not limited to Marty Abo, a forensic Accountant.

14) I have also suffered a serious heart ailment directly a proximately caused by the continued crushing stress caused by GMAC's bad acts. Expert medical opinions and testimony will be offered into evidence.

( THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK )

# CONCLUSION

## ( SPECIFIC REMEDIATION OPTIONS REQUESTED )

Based on the above detailed 14 point factual explanation and the volume of supporting independent proofs, there are two (2) remediation plans that are appropriate, and they are listed and described below as Remediation Plan A and Remediation Plan B.

Plan A is primarily financial whereas plan B is a mixture of financial and equitable. Either plan provides appropriate remediation and would be acceptable.

### REMEDIATION PLAN A

Damages from Item Number 4: $940,000
Damages from Item Number 5: $1,160,000
Damages from Item Number 6: $718,000
Damages from Item Number 7: $240,206
Damages from Item Number 8: $500,000
Damages from Item Number 10: $350,000
Damages from Item Number 12: $44,865

**TOTAL FINANCIAL REMEDIATION REQUESTED: $3,953,071**
**AND**
**WE CONVEY TITLE OF OUR HOME TO GMAC**

OR

### REMEDIATION PLAN B

Damages from Item Number 5: $1,160,000
Damages from Item Number 6: $718,000
Damages from Item Number 7: $240,206
Damages from Item Number 10: $350,000
Damages from Item Number 12: $44,865

**TOTAL FINANCIAL REMEDIATION REQUESTED: $2,513,071**
**PLUS**
**THE RELEASE OF GMAC LIEN ON MY HOME AS DETAILED IN DAMAGES ITEM NUMER 8**

Respectfully Submitted By,

_____                                    7 /21/ 13
Frank Reed                                                                           Date
Financially Injured Homeowner / Borrower