**LAW OFFICES OF JEFFREY S. WALTERS, LLC**
3000 Atrium Way Suite 2201
Mount Laurel, NJ 08054
Telephone: (856) 552-1045
Telecopier: (856) 974-8859
Attorneys for Plaintiffs

| | |
|---|---|
| **FRANK J. REED III and CHRISTINA A. REED,** : : : : | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION** |
| Plaintiff, : : | **BURLINGTON COUNTY** |
| : | **Docket No: L-1526-10** |
| v. : : | **CIVIL ACTION** |
| **GMAC MORTGAGE LLC, RESIDENTIAL FUNDING CORP. and JOHN DOES 1-30, Individually, Jointly, Severally and in the alternative,** : : : : : : | **BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO BAR EXPERT'S REPORT** |
| Defendants. : : | |

## STATEMENT OF FACTS

On or about May 19, 2008, Defendant filed a Complaint for Foreclosure in the Superior Court of New Jersey, Chancery Division, General Equity Part, Docket No. F-19177-08, seeking to foreclose Mr. Reed's equity of redemption in his home. Prior to filing its Complaint, Defendant failed to provide Mr. Reed with the "notice of intention to foreclose" required by the Fair Foreclosure Act. As a result, the Court granted summary judgment for Mr. Reed and dismissed the foreclosure action.

Mr. Reed has filed the instant case, which asserts a cause of action against Defendant for its negligence and breach of contract in filing the improper and illegal foreclosure action prior to providing him with the Notice of Intent required by statute.

Mr. Reed contends that pursuant to the Fair Foreclosure Act, he had a right to be free from a foreclosure action until such time as he was provided with a Notice of Intent to Foreclose which

would have given him the opportunity to cure any arrearage before the matter escalated into a
foreclosure filing. Mr. Reed further contends that if he had been provided with the Notice of Intent
as he should have been, he could have easily cured the arrearage (which was only 3 months) and
avoided becoming a defendant in a foreclosure action. Specifically, the 3 missed payments did not
signify general money problems, but were simply the result of his wife's oversight or prioritizing of
funds for business reasons. Indeed, it is not unusual for individuals to prioritize one debt at the
expense of another, knowing they can easily make it up before any harm is done.

Furthermore, Defendant's Foreclosure Complaint stated that the mortgage was being
accelerated and falsely lead Mr. Reed to believe that he did not have the right to cure, and that his
only option at that point was to remit the entire principal balance and interest, which at that time was
over $1,000,000. Notably, Defendant failed to inform Mr. Reed, in a properly prepared and served
"Notice of Intention to Foreclose," that notwithstanding the foreclosure complaint, Mr. Reed had the
right to cure any mortgage default at any time prior to the entry of a final foreclosure judgment.
NJSA 2A:50-53 et seq.

By the time Defendant's Foreclosure Complaint was dismissed by the Court on February 9,
2009 for Defendant's failure to comply with the Fair Foreclosure Act, nine (9) months had elapsed
during which the improper and illegal foreclosure action had subsisted. During the nine (9) months
that Defendant's improper and illegal foreclosure action subsisted, Mr. Reed's real estate business
was destroyed since he was paralyzed of any ability to obtain any loans to preserve and conduct his
real estate business and to earn an income from same as he historically had done.

Due to the financial paralysis caused by Defendant's improper and illegal foreclosure action,
and its detrimental affect on Mr. Reed's ability to obtain credit to earn an income from his real estate
business, Mr. Reed fell behind on his other financial obligations, further harming his credit and
causing him to deplete all of his savings and cash reserves in order to live and support his household,

consisting of his spouse and 5 children. The depletion of his savings and cash reserves in order to live made him all the more incapable of conducting his business.

Furthermore, by the time Defendant's Foreclosure Complaint was dismissed by the Court on February 9, 2009 for Defendant's failure to comply with the Fair Foreclosure Act, Mr. Reed's credit and income-producing ability was destroyed and his savings and cash reserves depleted, leaving no meaningful ability to: (1) cure the mortgage arrears which by then were substantial; and (2) resume his income-producing endeavors which had been ongoing up until the point of Defendant's filing of its improper and illegal foreclosure complaint.

As a result of Defendant's negligent conduct, Mr. Reed suffered economic injury, including but not limited to:

(1) economic injury stemming from Mr. Reed's inability to consummate income-producing transactions which were in progress at the time Defendant filed its improper and illegal foreclosure action;

(2) economic injury stemming from Mr. Reed's inability to resume his income-producing endeavors which he had conducted for many years prior to Defendants' improper conduct;

(3) economic injury from the loss of at least 3 income-producing rental properties to foreclosure due to Mr. Reed's inability to service the mortgages as a result of his compromised income-producing ability;

(4) economic injury stemming from the general destruction to Mr. Reed's credit, and his compromised ability to obtain and use credit and/or the increase in cost of credit as a consequence of the direct and indirect damage done to his credit score;

(5) economic injury stemming from the awareness by third-parties of the improper foreclosure and filed lis pendens as Mr. Reed attempted to market his house, resulting in "lowball"

3

offers from potential buyers who otherwise would have made legitimate offers were it not for the perceived desperation caused by Defendant's actions; and

(6) non-economic damages, including but not limited to the distress that goes with powerlessly watching his income-producing abilities being destroyed after many years of hard work, his inability to support his family in the manner they were accustomed to, the indignity of relying on others for financial assistance for basic needs, and the general destruction of his goals and aspirations for his family.

## LEGAL ARGUMENT

**POINT I:      THE EXPERT'S REPORT OF EVAN HENDRICKS WILL ASSIST THE TRIER OF FACT TO UNDERSTAND EVIDENCE, AND IS NOT A NET OPINION**

Mr. Reed asserts that Defendant had a legal duty to exercise care and to refrain from filing a foreclosure complaint prior to providing Mr. Reed with the Notice of Intent to Foreclose required by the Fair Foreclosure Act. The Fair Foreclosure Act requires that such Notice of Intent be served, by both regular and certified mail, before instituting such proceedings. N.J.S.A. 2A:50-56. Defendant failed to serve the Notice before filing its Complaint. Furthermore, Defendant filed a Lis Pendens after improperly filing the Complaint, which broadcast to the world that the mortgage was in foreclosure when it never should have been filed without the service of a Notice of Intent. Mr. Reed alleges that Defendant deviated from the standard of care owed to him, and that Defendant's negligence proximately caused him economic injury.

Notably, the Fair Foreclosure Act provides:

The duty of the lender under this section to serve notice of intention to foreclose is independent of any other duty to give notice under the common law, principles of equity, State or federal statute, or rule of court *and of any other right or remedy the debtor may have as a result of the failure to give such notice.* N.J.S.A. 2A:50-56(e) (emphasis added).

4

Accordingly, Mr. Reed asserts a cause of action for negligence and breach of contract, and seeks

damages as a result of Defendant's failure to give such notice in outright violation of its statutory

duty under the Fair Foreclosure Act.

Defendant's quest to bar the expert's report consists of nothing more than the baseless

contention that it is a net opinion, and cites excerpts from the report and from deposition testimony

taken out of context or omitting relevant sentences that come after the cited portions.

N.J.R.E. 702 provides for expert testimony to assist the trier of fact to understand the

evidence or to determine a fact in issue. Mr. Hendricks shall assist the trier of fact in understanding

the evidence by opining on the following issues: What is credit? Why does someone need credit?

Why is it important? What is good credit? What is bad credit? How does credit get to be bad?

What are the consequences of bad credit? What is a credit report and what is its purpose? How do

lenders perceive a foreclosure when evaluating credit applications? How will a foreclosure affect

one's ability to obtain credit in the future? Mr. Hendricks opines on these issues, and nothing he

says is a "net opinion" or a bare conclusion lacking in basis.

Notably, Mr. Hendricks, in discussing the importance of the Notice of Intent prior to the

institution of foreclosure proceedings, cites to Myron Weinstein's treatise contained in the New

Jersey Practice Series. As the court may be aware, Mr. Weinstein is the former chief of the Superior

Court's Office of Foreclosure. In his treatise, Mr. Weinstein observed that "[i]nstitution of

foreclosure is traumatic to the debtor-mortgagor and creates a permanent court record which can be

injurious to the debtor's credit. The notice of intention is meant to give the debtor a chance to

prevent acceleration and institution of foreclosure."

Moreover, Mr. Hendricks opines on the standard of care, based on his experience and

qualifications. He opines that inaccurate credit reporting is a longstanding and well known problem,

and that as a mortgage lender, GMAC should have known that care was required not to file an improper foreclosure against someone because of the negative impact that it would cause on the victim. Hendricks report at 6-7.

Unfortunately for Defendant, they take their victim as they find him. If Mr. Reed's source of income was simply a job where he received a paycheck every two weeks, his damages would have been less severe. However, *Mr. Reed earned his living by purchasing, improving, and then selling real estate*. Cash flow, and the ability to obtain the necessary cash when he needed it, was vital to his income-earning ability. Defendant's improper and illegal foreclosure, brought without warning, was particularly destructive to Mr. Reed. Mr. Hendricks explains this in his report.

Defendant seems to completely misunderstand the basis of Mr. Reed's damages. While Mr. Reed does claim that part of his injury consists of <u>general</u> credit damage, the bulk of Mr. Reed's claim is that a <u>specific</u> <u>transaction</u> was in progress and that the improper filing of the foreclosure by Defendant prevented this <u>specific</u> <u>transaction</u> from being consummated. This particular transaction would have allowed Mr. Reed to extract hundreds of thousands of dollars of equity from his home, since at the time of these events, his home was worth approximately $2,000,000 and the mortgage balance was approximately $1,400,000. Defendant's illegal foreclosure filing prevented the consummation of this transaction, thereby depriving Mr. Reed of funds which he was about to use to complete improvements to another property and sell that property at a substantial profit, thereby generating income for himself and his family. In Mr. Reed's business, income which was generated was also utilized to purchase additional properties, thereby starting the process over again with another property. Such was Mr. Reed's business. By the time the illegal foreclosure was dismissed 9 months after it was unjustly filed, Mr. Reed had suffered severe economic damage and lost income

and his cash reserves were depleted. Therefore, Defendant's fixation on a comparison of Mr. Reed's pre-tort versus post-tort general credit history is specious, and misses the point entirely.

That being said, discovery is still ongoing and Mr. Reed is endeavoring to obtain historical credit reports for review by his expert. Same are not readily available from credit reporting agencies in the manner that current reports are available, and require special effort to obtain a "snapshot" for a prior point in time. Subpoenas have been served in an effort to acquire them if they can be generated.

N.J.R.E 703 provides that the facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before hearing. In the section of his report reciting what he reviewed, the expert refers to his review of discovery. Plaintiff's amended interrogatory answers set forth the identity of a witness named Robert Curley. **Exhibit "A" at #2.** At this time, Defendant has chosen not to depose Mr. Curley. As disclosed in the amended answers to interrogatories, the scope of Mr. Curley's testimony will be as follows:

1.    He had a long history of working together with Mr. Reed on many loans.

2.    He recalls communicating with Mr. Reed toward the end of 2007 or the beginning of 2008 with regard to a loan whereby Mr. Reed would extract equity from his residence at 817 Matlack Drive, Moorestown, New Jersey.

3.    Over the years, he had funded many loans for Mr. Reed in his capacity as Market President for Commerce Bank, N.A. which later became known as TD Bank, N.A. He was aware that Mr. Reed was in the business of buying, improving and selling real estate. In the past, he would approve loans for Mr. Reed which would enable him to purchase real estate, make improvements which increased its value, and sell it at a profit.

4.      In early 2008, he ordered and received an appraisal of 817 Matlack Drive pursuant to his conversations with him about a new refinance loan.  Attached hereto as **Exhibit "B."**

5.      He was aware that the loan was to be utilized to make improvements to Mr. Reed's property located at 9717 Old Dell Trace in Virginia, and he received and reviewed a "subject to" appraisal for 9717 Old Dell Trace as a result of my conversations with Mr. Reed about the loan.

6.      After he became aware of the foreclosure complaint filed by Defendant, he could no longer approve the loan.  Essentially, the filed foreclosure complaint was a deal killer.

Under N.J.R.E. 703, Mr. Hendricks may certainly base his opinion and inference on these facts which were made known to him.  Defendants are free to explore these facts on cross-examination; however, their suggestion that the expert's report does not have a factual basis is simply incorrect.

Defendant criticizes Mr. Hendricks for stating: "It's logical that a foreclosure is devastating to a consumer's creditworthiness."  Defendant argues that this is a "personal opinion" which is not "supported by a factual analysis."  This argument is simply absurd.  First, in today's economic climate, Defendant cannot seriously argue that this is a "personal opinion" as if there is any debate that a foreclosure is damaging to one's ability to obtain credit.  Second, Defendant ignores the fact that in the very next sentence, Mr. Hendricks explains his observation by observing that "a foreclosure typically means that the consumer has defaulted on the mortgage to a point that the bank has to foreclose on the home and take possession of it."  He goes on to state that most lenders have a policy of not approving or even reviewing credit applications from consumers who are in foreclosure.  He further refers to Myron Weinstein's observation, in his "Law of Mortgages" treatise in the New Jersey Practice Series, that "[i]nstitution of foreclosure is traumatic to the debtor-mortgagor and creates a permanent court record which can be injurious to the debtor's credit.  The

notice of intention is meant to give the debtor a chance to prevent acceleration and institution of foreclosure." Finally, Defendant ignores the fact that the representative of the mortgage lender himself will testify that the loan would have been consummated but for the foreclosure filing. Defendant's empty characterization of Mr. Hendricks' report as being a "net opinion" is simply without merit.

Defendant argues that Mr. Hendricks' report does not demonstrate a "causal link" between the Defendant's actions and Mr. Reed's damages. That makes no sense. It is not Mr. Hendricks' role to provide such a causal link. The causal link is established by way of Mr. Reed's testimony and the expected testimony of Mr. Curley. Specifically, Mr. Curley shall testify that the foreclosure filing was the only reason why he could not complete the loan which was in progress. Mr. Reed shall testify as to the chain of events which occurred by reason of not getting this loan.

As for Defendant's observation that Mr. Reed has other negative credit issues, this is a completely specious argument. Defendant apparently wants the court to infer that Mr. Reed had pre-existing credit issues which prevented him from obtaining the loan, and that therefore Mr. Hendricks needs to discuss a causal link. This is simply disingenuous. The credit issues which Defendant refers to were testified to by Mr. Reed himself at his deposition, and Defendant cites to same. As is clearly seen by the deposition testimony which Defendant cites to, these "credit issues" were all a result of Defendant's tortious conduct. They were not pre-existing. Mr. Reed clearly testified that these came about after the illegal foreclosure complaint was filed. As for Defendant's argument that the report lacks a comparative analysis of Mr. Reed's "before" and "after" credit, Defendant ignores Mr. Hendricks' observation that "eight accounts were rendered derogatory in 2008 alone." Hendricks report at 3. Defendant also twists Mr. Reed's words, claiming that he testified at his deposition that he "was uncertain whether or not he was past due on any of his other mortgages at

that time [in 2008]. Mr. Reed's actual testimony was "No, I don't think I was. I don't believe I was at all." Reed deposition at 36:5. And again, Defendant's fixation on a "before" and "after" comparison ignores the fact that the inability to obtain the loan was due strictly to the improper foreclosure filing, and not due to any general problem with Mr. Reed's credit. Attached hereto is evidence obtained from the proposed lender. **Exhibit "C."** As the Court will see, it is a credit memorandum completed on April 11, 2008 for a related loan, a mere month prior to the improper foreclosure filing. The loan was approved by Commerce Bank's vice president and regional vice president, as evidenced by their signatures. Obviously, whatever the status of Mr. Reed's credit at the time, it was certainly satisfactory to induce this lender to provide him with a loan at the time of Defendant's illegal foreclosure filing.

Moreover, "[t]he rule relating to the uncertainty of damages applies to the uncertainty as to the fact of damage and not as to its amount, and where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery." Tessmar v. Grosner, 23 N.J. 193, 203 (1957); Kozlowski v. Kozlowski, 80 N.J. 378, 388 (1979) ("While the damages flowing from defendant's breach of contract are not ascertainable with exactitude, such is not a bar to relief. Where a wrong has been committed, and it is certain that damages have resulted, mere uncertainty as to the amount will not preclude recovery -- courts will fashion a remedy even though the proof on damages is inexact.")

Next, Defendant seeks to bar Mr. Hendricks' report because Mr. Hendricks is not a psychologist and allegedly has no basis to report that Mr. Reed experienced mental anguish and stress. Defendant completely misreads the report. Obviously, it is up to a finder of fact to put a value on Mr. Reed's non-economic damages after listening to Mr. Reed testify about the damages he suffered as a result of Defendant's illegal foreclosure filing. This includes the distress that goes

with powerlessly watching his income-producing abilities being destroyed after many years of hard work, his inability to support his family in the manner they were accustomed to, the indignity of relying on others for financial assistance for basic needs and having one's utilities shut off, and the general destruction of his goals and aspirations for his family. Mr. Hendricks simply cited *actual cases* along with a factual recitation of the jury verdicts in those cases. Based on those cases, and a review of the facts as presented to him, Mr. Hendricks' valued Mr. Reed's non-economic damages at $350,000. See Rosenberg v. Tavorath, 352 N.J. Super. 385 (App. Div. 2002) (evidential support for an expert opinion is not limited to treatises or any type of documentary support, but may include what the witness has learned from personal experience). Nevertheless, there is no basis for Defendant to use this as an argument to bar the report, since this is a question for the finder of fact. Camaraza v. Bellavia Buick Corp., 216 N.J. Super. 263, 266 (A.D. 1987) (a jury or other trier of fact is frequently asked to place a monetary value on non-monetary consequences of a tort, such as a victim's disability, pain and suffering, personal humiliation, or emotional anguish).

## CONCLUSION

Defendants arguments are misplaced, and do not present any basis to bar the expert report of Evan Hendricks.

Respectfully submitted,

LAW OFFICES OF JEFFREY S. WALTERS, LLC

Dated: December 29, 2011              By:_____
                                        JEFFREY S. WALTERS

To the extent this brief contains factual assertions:

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

Dated: December 29, 2011

Jeffrey S. Walters
Attorney for Plaintiff

11

# EXHIBIT "A"

**LAW OFFICES OF JEFFREY S. WALTERS, LLC**
**3000 Atrium Way Suite 2201**
**Mount Laurel, NJ 08054**
**Telephone: (856) 552-1045**
**Telecopier: (856) 974-8859**
**Attorneys for Plaintiff**

|  |  |
|---|---|
| **FRANK J. REED III,** : | **SUPERIOR COURT OF NEW JERSEY** |
| : | **LAW DIVISION** |
| : | |
| **Plaintiff,** : | **BURLINGTON COUNTY** |
| : | |
| **v.** : | **Docket No: L-1526-10** |
| : | |
| **GMAC MORTGAGE LLC,** : | **CIVIL ACTION** |
| **RESIDENTIAL FUNDING CORP.** : | |
| **and JOHN DOES 1-30, Individually,** : | **PLAINTIFF'S AMENDED AND** |
| **Jointly, Severally and in the** : | **SUPPLEMENTAL ANSWERS TO** |
| **alternative,** : | **INTERROGATORIES PROPOUNDED** |
| : | **BY DEFENDANTS** |
| **Defendants.** : | |
| : | |

Plaintiff, Frank J. Reed III, by way of amended and supplemental Answers to Interrogatories, says:

1.    Frank J. Reed III, 817 Matlack Dr., Moorestown, New Jersey 08057

2.    Plaintiff Frank J. Reed III has knowledge of the fact that he was never served with a Notice of Intent to Foreclose, as described in the Complaint. He also has knowledge of the economic damage caused to him that resulted from Defendants' filing of the foreclosure complaint without Defendant first providing notice of its intention to foreclose. Plaintiff's spouse Christina A. Reed has knowledge of the fact that she was never served with a Notice of Intent to Foreclose, as described in the Complaint. Any and all representatives and/or agents of GMAC Mortgage LLC have knowledge of the fact that they neglected to mail a Notice of Intent to Foreclose, as do any attorneys who worked on the foreclosure action on behalf of Defendant. Any individuals named in any documents provided by either party in discovery have knowledge as might be set forth in those documents. Thomas Tartamosa, former mortgage loan officer of Allied Mortgage Group in Cherry Hill, NJ (no longer in business), has knowledge of my loan application and the fact that I would have received the loan that I was pursuing were it not for the foreclosure complaint and Lis Pendens prematurely filed by Defendant. Peter R. McCAffrey of Robert M. Sappio Appraising and Consulting 314 Cherry Avenue Voorhees, NJ 08043, has knowledge of the value of my property at 817 Matlack Drive, Moorestown, New Jersey, at the time I was attempting to refinance, as he performed an appraisal of the property. Alex Uminski of MG Miller and Assoc., 5316 Patterson Ave., Richmond, VA 23226, has knowledge of the value of my property at 9717 Old Dell Trace, Richmond, Virginia 23238, as he performed an appraisal.

As per February 14, 2011 informal supplemental responses, Mr. Tartamosa's address is 253 Jackson Road, Berlin, New Jersey 08009.

As per February 14, 2011 informal supplemental responses: Real estate broker Naoji Moriuchi, BT Edgar & Son, 27 East Main St., Moorestown, New Jersey 08057. Naoji Moriuchi has knowledge of the effect that the improperly filed foreclosure complaint and lis pendens had on the quality of offers to purchase the property at 817 Matlack Drive, Moorestown. Specifically, at least one prospective purchaser commented that he made a lowball offer, much lower than would normally have been made, because he saw that a lis pendens was filed which encumbered the property. The prospective purchaser indicated to Naoji Moriuchi that the lis pendens and foreclosure implied desperation to sell, accounting for the low offer.

As per February 14, 2011 informal supplemental responses: Frank and Gina Roccisano. They were the prospective purchasers who made the low offer to Naoji Moriuchi, referred to above. Unsigned Contract for Sale and Lease relating to Frank and Gina Roccisano was previously produced.

Robert Curley, Market President, TD Bank, N.A., 1701 Route 70 East, Cherry Hill, NJ 08034. Mr. Curley has knowledge that he and I had a long history of working together on many loans. Mr. Curley has knowledge that he specifically remembers communicating with me about a refinance loan on 817 Matlack Drive, Moorestown, New Jersey in the time leading up to May 19, 2008. Mr. Curley has knowledge that he was prepared to fund such a loan upon my indication that I wished to proceed. Mr. Curley specifically recalls discussing with me that I was deciding whether to proceed with the loan depending upon whether or not I was able to sell 817 Matlack Drive. Mr. Curley has knowledge that he discussed with me that the loan proceeds were going to be utilized by me to complete renovations to my real estate at 9717 Old Dell Trace, Richmond, Virginia. Mr. Curley has knowledge that I was in the business of buying, improving and selling real estate. Mr. Curley has knowledge that Mr. Curley and Commerce Bank (nka TD Bank) had funded this type of venture for me before. Mr. Curley has knowledge about the fact that Commerce Bank provided a loan to me to make improvements to 817 Matlack Drive, Moorestown, New Jersey which significantly increased its value. Mr. Curley has knowledge that he physically visited the Matlack Drive property to inspect it. Mr. Curley has knowledge that he ordered and received an appraisal of 817 Matlack Drive pursuant to my conversations with him about the refinance loan, a copy of which has been provided in response to Defendant's document request. Mr. Curley has knowledge that he received and reviewed a "subject to" appraisal for 9717 Old Dell Trace as a prelude to the project which was to be undertaken with proceeds from the refinance of 817 Matlack. Mr. Curley has knowledge that part of my intent with the refinance loan was to do the same thing that I had done many times in the past, which was to improve the Virginia property, increase its value, and sell it at a substantial profit. Mr. Curley has knowledge that after Defendant filed its foreclosure complaint, Commerce Bank could no longer fund the refinance which I had been discussing with Mr. Curley. Mr. Curley has knowledge that Commerce Bank could not refinance a property that was the subject of a filed foreclosure complaint. Mr. Curley has knowledge that Commerce Bank would have refinanced the property at 817 Matlack were it not for the foreclosure complaint filed by Defendant. Mr. Curley has knowledge that I was a long-term relationship customer in commercial banking. Mr. Curley has knowledge that, due to my relationship with Commerce Bank, Mr. Curley did not require me to submit a loan application. Mr. Curley has knowledge that Mr. Curley did not ask me to submit a loan application for other financing which Commerce Bank had extended to me prior to that time. Mr. Curley has knowledge that Commerce Bank had previously financed multiple loans for me over the years without asking me to complete an application. Mr. Curley has knowledge that credit was not the controlling factor in the commercial lending that I had been receiving, but rather, history with the customer and specifics of the deal were the important factors. Mr. Curley has knowledge of the strength of my relationship with Commerce Bank (nka TD Bank) from our past dealings.

3.      Objection. This interrogatory calls for trial strategy. Without waiving this objection, any persons with knowledge as set forth in the previous interrogatory answer may potentially be called as witnesses. See also interrogatory #18.

4.      Christopher G. Ford, Esq., ZUCKER GOLDBERG & ACKERMAN LLC, 200 Sheffield St. Ste 301, PO Box 1024, Mountainside, NJ 07092-0024.

5.      Objection. The term "default" is not defined. Without waiving said objection, I acknowledge that I was not current with my mortgage payments at the time I received the foreclosure complaint.

6.      I do not know the date of the default. Defendant agreed to a forbearance while I made effort to refinance my mortgage.

7.      I never received a Notice of Intent to Foreclose prior to being served with a foreclosure complaint. I know this because if it was mailed to me, I would have seen it when reviewing my mail. In addition, I made a motion for Summary Judgment in the foreclosure action. The basis of my motion was the failure to provide a Notice of Intent to Foreclose as provided for under the Fair Foreclosure Act. Defendant never came forward with any evidence to refute my contention, and my motion was granted by the Honorable Michael Hogan.

8.      The governing statute speaks for itself.

9.      I applied for a loan that was for 90% of what the appraised value of my property was at that time, the appraised value being $2,040,000. A copy of the appraisal is included in documents which I have produced. I had satisfied all of the lender requirements for this cash out refinance. The lender halted the refinance when they learned that I was a defendant in a foreclosure action. A copy of the Lis Pendens filed by Defendant is attached to the documents which I have produced. See also the response to Interrogatory #2. See also the transcript of my deposition.

10.     The governing documents speak for themselves. It is my understanding that any reference to Defendant's ability to foreclose which is set forth in the governing documents implies that any such foreclosure pursuant to such documents would comply with all relevant law.

11.     See answer to interrogatory #9. If Defendant would have provided the proper Notice of Intent to Foreclose before filing the Complaint, as was required by statute, it would have informed me of the time I had before a Complaint was to be filed, and I would have made sure to consummate the loan prior to the foreclosure complaint and Lis Pendens being filed.

12.     See answers to interrogatories #2, #9 and #11.

13.     Thomas Tartamosa, former Mortgage Loan Officer of Allied Mortgage Group in Cherry Hill, NJ (no longer in business). I currently do not possess documentation of my refinance efforts which were aborted by Defendant's improper filing of the foreclosure complaint and Lis Pendens. Such documents would be in the possession of the aforementioned entity. See also appraisals included in documents which I have produced. In addition, Robert Curley, Market President, TD Bank, N.A., 1701 Route 70 East, Cherry Hill, NJ 08034. Mr. Curley has knowledge that, due to my relationship with Commerce Bank (nka TD Bank, N.A.), he did not ask me to submit a loan application. Mr. Curley has knowledge that I was not asked to submit a loan application for

other financing which Commerce Bank had extended prior to that time. Also see answer to interrogatory #2. See appraisals of 817 Matlack and 9717 Old Dell Trace, previously provided pursuant to Defendant's document request. See permits and plans for contemplated improvements to 9717 Old Dell Trace, attached hereto.

14.    Great Lakes Financial, 800 Pine Street, Ambridge, PA 15003. Commerce Bank, Route 70 East, Cherry Hill, NJ 08034. See also answer to the previous interrogatory.

15.    The damages have not yet been quantified. Damages suffered include:

a.    I was rendered unable to pay off my GMAC mortgage loan. This tainted my credit and had a domino affect on my finances.

b.    I lost the use of the cash out funds which I would have acquired from the refinance and which would have allowed me to conduct business endeavors.

c.    The cash out was going to be used to complete my house at 9717 Old Dell Trace, Richmond, Virginia so that I could sell it for a profit and pay off my refinance. See appraisal provided with produced documents as to completion value. I was unable to do so. The property value has plummeted since that time. See #16.

d.    With a loss of cash flow from the refinance which would have allowed for the renovation and sale of property, it ruined my credit and my livelihood has been destroyed.

e.    I would have been able to sell 817 Matlack Drive in Moorestown for $1,800,000 to Mark Weaver, which I was not able to do because of the cloud of the Lis Pendens. The property value has plummeted since that time. See copy of contract provided with produced documents.

f.    The foreclosure filing and the blight on my credit have compromised my ability to obtain a securities license and obtain employment as a financial adviser.

g.    See #16.

h.    Lost future wages due to my inability to obtain employment as a financial adviser as a result of having had a foreclosure complaint filed against me.

i.    I described my damages in further detail during my deposition.

j.    Plaintiffs reserve the right to supplement these interrogatory answers as additional damages are identified and quantified.

16.    The damages have not yet been quantified.  However, damages include:

a.    The lost value of my aforementioned properties both in New Jersey and in Virginia.  Specifically, the difference between my equity in the New Jersey property at the time I would have consummated a cash-out refinance were it not for Defendant's improper foreclosure complaint, versus the value today. Furthermore, the diminution in value of my Virginia property from the time I would have been able to complete improvements to today.

b.    The lost profits from selling the properties, as they are not complete. Appraisals are provided with the produced documents which show value at the relevant time, as compared to current market values (to be determined).

c.    The lost future revenue of my ongoing real estate investing.

d.    The higher costs of insurances and future borrowing costs due to my ruined credit which would not have been ruined but for the actions of Defendants.

e.    The lost sale of 817 Matlack for $1,800,000 to Mark Weaver because of the Lis Pendens.

f.    Plaintiffs reserve the right to supplement these interrogatory answers as additional damages are identified and quantified.

17.    See all documents produced, which I have used and referred to in preparing these answers.  Plaintiffs reserve the right to supplement these interrogatory answers and produced documents as additional damages are identified and quantified.

18.    Dr. Avner Haya, F.S.A., E.A. (lost wages due to inability to obtain employment as a financial adviser). Evan D. Hendricks (financial effect of foreclosure filing, including but not limited to effect on credit).  See Curriculum Vitae attached.  See also any individuals who have prepared or are identified in the produced documents who can be characterized as experts. Plaintiff reserves the right to consult or retain additional experts in due course and to amend/supplement these interrogatory answers accordingly.

# EXHIBIT "B"



This appraisal has been performed for **Commerce** Bank in connection with a loan request made by you. Commerce Bank makes no representations regarding the accuracy of the information contained in the appraisal and assumes no liability in connection with this appraisal.



## COMPLETE APPRAISAL SUMMARY REPORT

### LOCATED AT:
817 Matlack Drive
Block 3803  Lot 2
Moorestown, NJ  08057

### FOR:
Commerce Bank
2059 Springdale Road
Cherry Hill, NJ  08003

An Administrative Compliance Review has been completed on this report. This report has been deemed acceptable by Commerce Bank.

**AS OF:**
1/21/2008

(Reviewed)    1/30/08    (Date)



### BY:
Peter R. McCaffrey
Robert M. Saplo Real Estate Appraisal & Consulting, LLC

File No. 08011502

Robert M. Sapio
Real Estate Appraisal & Consulting, LLC
314 Cherry Avenue
Voorhees, NJ 08043

Telephone No.: (856) 429-2789
Fax No. : (856) 795-2297

January 25, 2008

Joseph Graves
Commerce Bank
2059 Springdale Road
Cherry Hill, NJ 08003

RE:     Reed
        817 Matlack Drive
        Moorestown, NJ

Dear Mr. Graves:

In accordance with your request, enclosed is one copy of the appraisal report of the captioned property. The purpose of the appraisal was to estimate market value of the captioned property, as improved, in unencumbered fee simple title, subject to the Assumptions and Limiting Conditions contained in the URAR form 439, the Certification and this report.

This report is prepared in compliance with the requirements of the Code of Professional Ethics and the Standards of Professional Practice of the Appraisal Institute.

This is a complete appraisal in a summary report.

Respectfully submitted,

Peter McCaffrey, SLREA/RA 00754

# EXHIBIT "C "

*Policy Exceptions Checklist*

**Commerce Bank**

Commerce Bank, N.A.

| | |
|---|---|
| Date: | April 11, 2008 |
| Relationship Name: | Frank Reed |
| Relationship #: | 1915 |
| | WRITE-UP WILL SERVE AS UAM: Y [X]  N [ ] |

Frank & Christina Reed
817 Matlack Drive
Moorestown, N.J. 08057

| | | | |
|---|---|---|---|
| | | Account Officer: | Gregory B. Cieslik, VP |
| | | Lending Area: | Camden Region |
| | | R/E Loan Type: | Inv. Dev. Apt. Fixed |
| | | Borrower Risk Rating: | 8 |
| | | Facility Risk Rating: | 8 |
| Phone #: | 856-979-3035 | LIED: | 20% |
| Date of Birth: | 10/31/1966 | Agency Rating: | N/A |
| | 1967 – YOB | Last Write-up: | 12/24/2007 |
| Tax ID #: | ████-7464 | Participant: | None |
| | ███-5095 | | |
| NAICS Code: | 531110 | Agent: | None |
| Industry: | Lessors of Res. Prop. | CRA Credit: | No |
| AGI: | $264M - FY 2007 | Customer Since: | 2003 |
| Company: | Individuals | Director Related: | No |
| Asset Based: | No | Exceptions: | Yes - DSCR |
| Change in Terms: | No | Commerce Ins Srvcs.: | No |
| | | Enterprise Value Loan: | No |
| | | Leveraged Trans.: | No |
| | | Analyst: | Dan Olsen |
| Email: | N/A | Website: | N/A |
| PUBLIC OFFICIAL: | No | Position: | N/A |
| RELATED PARTY OF | | RELATIONSHIP/NAME | |
| PUBLIC OFFICIAL: | No | OF PUBLIC OFFICIAL: | N/A |

**CURRENT DIRECT EXPOSURE:**    $616,819

*Action Taken*

| | Amount | Facility | Maturity |
|---|---|---|---|
| New Loan: | $645,000 | Commercial Mortgage | 20 Year |

| | | | |
|---|---|---|---|
| Proposed Direct Exposure: | $645,000 | Direct Avg. Bal.: | $1,946 |
| Indirect Exposure: | $0 | Indirect Avg. Bal.: | $0 |
| Total Proposed Exposure: | $645,000 | Total Avg. Bal.: | $1,946 |

**Approval Recommended & Signed Off By:**

| Name | Initials | Date | Comments |
|---|---|---|---|
| Gregory B. Cieslik<br>Vice President | *(signature)* | 4/18/08 | |
| Robert E. Curley, III<br>Regional Vice President | *(signature)* | 4/21/08 | |

\\Atr110f01\VOL1\DATA\SHARED\Loan Service Credit\Camden\GBC\Reed, Frank\Loan Consolidation 4-08.doc

## CREDIT MEMORANDUM

**Summary:**

**Who:**

- On August 24, 2005 CBNA approved a $365,500 Time Note (BL # 1361520234) to Frank & Christina Reed to provide interim financing for four (4) months for the purchase of the residential property at 21 Darien St., Cherry Hill, NJ. The subject Note was extended 90 days as of February 21, 2006 to provide additional time for Frank to explore refinance options.

- As of September 1, 2005 the Borrower signed a lease with the Oxford House, a recovery house program to lease the property through August, 2010 from which the Borrower receives $2,400 / month. The Oxford House is a self-run, self-supported recovery house program for individuals recovering from alcoholism and drug addiction.

- On August 7, 2006 CBNA approved the modification of the aforementioned Time Note to a 15 year term loan with a one (1) year call (current balance is $337,951). **This loan will be refinanced with the subject request.**

- Frank Reed also maintains ownership of two (2) residential properties located at 318 Columbia Ave, Stratford, NJ and 52 Stone Hollow Dr., Sicklerville, NJ. These properties serve as part of the collateral pool and have been rented to the Oxford House for the past eleven (11) and thirteen (13) years, respectively.

- Frank Reed also maintains a $140M HELOC (CL # 980344600 with a balance of $138M) and a $140M HELOC (CL # 980344618 with a balance of $139M). **These loans will be refinanced with the subject request.**

- Mr. Reed is currently seeking approximately $350M in funds from Jeffrey S. Krum Financial Consultants, Inc. which he will use for an addition to an investment property in Richmond, Virginia. Subsequent to the addition, Mr. Reed plans on listing the property for sale.

- Additionally the Reed's primary residence in Moorestown, NJ is listed for sale i/a/o $2,100M. Should the property not sell in the next three (3) months, the Reeds have an offer to rent the home for approximately $12M a month. In either scenario, the Reeds will be moving to a smaller home in the area.

- Frank Reed has recently accepted a job with Smith Barney financial advisors that will pay him an annual salary of $65M in addition to his income received from his real estate investments.

**What:**

- This credit memorandum shall serve to approve the consolidation of the following three (3) outstanding CBNA loans:

  - CL # 980344600 i/a/o $138,868
  - CL # 980344618 i/a/o $138,683
  - BL # 1361520234 i/a/o $337,951
  - Additionally, the proposed request will provide $24M in cash out to the Reed's to alleviate their tight cash flow.

- The Loan will consist of interest only payments for six (6) months at 7.50%, followed by principal and interest payments based on a 20 year amortization at the same rate. The Loan will have a call option one (1) year from the contract date.

- The Loan will be secured by the following:

  - First mortgage on the residential property located at 21 Darien St., Cherry Hill, NJ with an appraised value of $365M.

- First mortgage on the residential property located at 52 Stone Hollow Dr., Sicklerville, NJ with an appraised value of $239M.

- LTV is 77%

**Why:**

- The proposed consolidation will save the Borrowers approximately $6M in annual debt service as well as provide $24M in cash out. The interest only period of six (6) months will allow time for one of the following avenues of revenue to come to fruition. Mr. & Mrs. Reed currently have three different pieces of property on the market. Their Moorestown, N.J. residence is listed for sale for $2,040,000. with existing debt of $1,420,000. leaving an equity position of $620,000. A buyer made an offer on this property in December 07 at full listing price however the appraisal came in below listing price. Upgrades on the property had been over looked and a new appraisal was ordered and received showing the value of the property at the listing price. Unfortunately the prospective buyer had backed out of the deal by that point in time. These issues resulted in the Reed'The property continues to be listed on the market.

- The second property is a residential property in Richmond, Va. Mr. Reed believes that its market appeal will improve substantially by adding about 3000 sq. ft. to the rear of the house. With the addition, the property will better match in size the other properties in that area, thus creating a more marketable property. The value of the property with the addition is $1,725,000., with $800,000. in existing debt and $350,000. proposed for the addition. The equity being $575,000. The last property is raw ground in Richmond in a very desirable area. It is listed at $654,000, with debt of $340,000. leaving an equity position of $314,000. The sale of any of the three properties will greatly improve their existing cash flow, purely by debt reduction, including TD Commerce .

**How:**

- Repayment is based on income received from the Oxford House.

- The Reeds demonstrate a DSCR of 1.16:1 with $39M in cash flow. This analysis includes proforma income to be received from Mr. Reed's position at Smith Barney which has been verified.

- The Facility is secured by a first mortgages on the three (3) properties resulting in a 77% LTV with $192M in net equity.

**Reward:**

- A fee of $6,000 in addition to a fee of $1,500 related to the 12/2007 request to renew the call option on BL # 1361520234 to total $7,500.

- As per the attached CPS report dated 4/10/2008, the relationship has produced a profit of $42M with a 7.43% Return-on-Assets through 2/29/2008.

**Credit Issues & Mitigants:**

- The Bank is not in receipt of an updated PFS for Frank Reed and the Reeds have FICO scores of 511 and 551, respectively. The proposed refinance will provide the Reeds $24M in cash out which will allow them to make loan payments on their outstanding debt.

| | | | |
|---|---|---|---|
| Frank J. Reed, III | | SSN: | 1▮▮▮▮-7464 |
| FICO: 511 | | | |
| Christina Reed | | SSN: | 1▮▮▮-5095 |
| FICO: 551 | | | |

| | |
|---|---|
| 817 Matlack Drive | **Financial Statement Date:** N/A |
| Moorestown, N.J. 08 057 | **Last Tax Return Year:** 2007 |
| | **Total 1040 Income:** $263,551 |
| | **Personal DSCR:** 1.16:1 |

The Reeds currently have two (2) delinquent accounts related to the mortgage on the Moorestown, NJ property and CBNA CL # 980344600.  Additionally, the Reeds report a released $34M tax lien from Mercer County, a $1,381 judgment for Medical Payment Data, and a released $31M tax lien from Burlington County.

DSCR is 1.16:1 with $39M in cash flow, as proposed.  This analysis reflects proforma income to be received from Smith Barney.