**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

RESIDENTIAL CAPITAL, LLC, *et al.*

Debtors.

**NOT FOR PUBLICATION**

Case No. 12-12020 (MG)

Jointly Administered

**MEMORANDUM OPINION AND ORDER SUSTAINING**
**OBJECTION TO CLAIM NO. 6423 OF NEIL LARKINS**

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

  Neil Larkins has not paid his mortgage for three years, yet nobody is trying to foreclose on his home.[1] The only party asserting an interest in his property is a non-Debtor that is both the noteholder and the assignee of his deed of trust. The Debtors have not asserted an interest in his property since 2006. They do not claim that Larkins owes them any money, and they do not have a recorded lien on his property. Even so, Larkins alleges that the Debtors owe him $150,000 for clouding his title. Larkins believes that the Debtors—brief owners of Larkins's loan—failed to properly assign his loan into a securitization trust in 2006 because they did not abide by the trust documents. This failure, Larkins argues, rendered the transfers of his loan void and left him with a clouded title. But Larkins lacks standing to challenge the Debtors' compliance with the securitization agreements. Moreover, the Debtors assigned Larkins's note to the non-Debtor now asserting a lien on his property, and in Oregon the deed of trust follows

---

[1]  *See* May 29, 2014 Tr. at 42:16–23.

the note, so even if the deed of trust assignments were somehow defective, the non-Debtor still owns the underlying debt and is still the party entitled to assert an interest in Larkins's property.[2]

Larkins also complains about confusing assignments of his deed of trust recorded in Oregon land records. These assignments cannot support a claim against the Debtors because the Debtors do not appear on any of the recorded assignments and did not cause any of the recordings. Additionally, Larkins alleges fraud regarding the origination of his loan, but the Debtors did not originate his loan so that claim also fails. Because Larkins cannot maintain a claim against the Debtors for clouding his title or for origination fraud, the Court **SUSTAINS** the ResCap Borrower Claims Trust's[3] objection to claim number 6423, and the claim is disallowed and expunged.

## I.    BACKGROUND

### A.    Procedural History

On May 14, 2012, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On August 29, 2012, this Court entered the Bar Date Order, which established November 9, 2012 at 5:00 p.m. as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribed the form and manner for filing proofs of claim. (ECF Doc. # 1309 ¶¶ 2, 3). On November 7, 2012, the Court entered an

---

[2]    The Debtors did not originate Larkins's loan. As discussed below, if the note evidencing his loan was not properly indorsed, then it would have remained part of the originator's portfolio until the originator merged with another entity in July 2006. If that were the case, though, the Debtors would not be responsible for any clouded title created by the failure to properly assign Larkins's note.

[3]    This opinion refers to the ResCap Borrower Claims Trust as the "Trust." The Trust is the Debtors' successor in interest with respect to claims filed by borrowers.

2

order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) (ECF Doc. # 2093). Larkins filed his claim on January 11, 2013.[4]

The Court entered an order on March 21, 2013 (the "Procedures Order," ECF Doc. # 3294), authorizing the Debtors to file omnibus objections on various grounds, including those provided in Bankruptcy Rule 3007(d) and certain additional grounds. The Procedures Order included specific protections for Borrowers,[5] and established a process for the Debtors (and now the Trust) to follow before objecting to certain categories of Borrower claims. For example, before objecting to certain Borrower claims, the Trust must send the Borrower a letter (a "Request Letter") requesting additional documentation in support of the Borrower's claim. (*See* Procedures Order at 3–4).

On December 11, 2013, the Court entered an order (ECF Doc. # 6065) confirming the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Plan," ECF Doc. # 6065-1). The Plan became effective on December 17, 2013 (the "Effective Date"). (ECF Doc. # 6137.) On the Effective Date, the Trust and the ResCap Liquidating Trust were established as successors in interest to the Debtors; the Trust is the successor in interest with respect to Borrower Claims. (*Id.*) The Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims."

---

[4] Although it appears that Larkins may have filed his proof of claim after the General Bar Date, the Trust did not object to his claim for being late-filed.

[5] As used in the Procedures Order, the term "Borrower" is defined as "a person who is or was a mortgagor under a mortgage loan originated, serviced, and/or purchased or sold by one or more of the Debtors." (*See* ECF Doc. # 3123 ¶ 21.)

3

(Confirmed Plan, Art. IV.F.)  The Trust is empowered to object to borrower claims that it believes do not reflect liability of the Debtors.

On April 11, 2014, the Trust filed the *ResCap Borrower Claims Trust's Sixty-First Omnibus Objection to Claims (No Liability Borrower Claims)* (the "Objection," ECF Doc. # 6777).  In support of the Objection, the Trust submitted the Declarations of Deanna Horst (the "Horst Decl.," Objection Ex. 1) and Norman Rosenbaum (Objection Ex. 2).  The Trust also attached form Request Letters.  Larkins filed an opposition to the Objection (the "Opposition," ECF Doc. # 6883), and the Trust submitted a reply (ECF Doc. # 7003), supported by a supplemental Declaration of Deanna Horst (the "Supp. Horst Decl," ECF Doc. # 7003-1).  The Court heard oral argument on the Objection on May 29, 2014 (the "Hearing") and took the matter under submission.

Pursuant to the Procedures Order, and before the Trust filed its Objection, the Debtors sent Larkins a Request Letter on November 13, 2013.  On November 18, 2013, Larkins responded with an e-mail stating that the Debtors' copy of documents did not reflect everything he sent them originally.  (Supp. Horst. Decl. Ex. B-1.)  Larkins stated that he would be willing to supply the missing documents if the Debtors did not have them.  (*Id.*)  There does not appear to be any further correspondence between the parties.

> B.     **Larkins' Proof of Claim**

In his proof of claim, Larkins asserts a $150,000 claim against ResCap, with the stated basis of: "[m]ortgage [n]ote [n]ot put into Trust Rali-2006-QS14 by closing date.  Basis is fraud, severe tax penalties not notified that GMAC-RESCAP . . . ."  (Supp. Horst Decl. Ex. C.)  The remainder of the text is cut off, but Larkins also submitted additional documentation in support of his claim, including:  (1) a January 6, 2013 letter from Larkins purporting to rescind Larkins's

4

home loan; (2) several assignments of the deed of trust for Larkins's property; (3) a November 19, 2012 letter from PNC Mortgage ("PNC") responding to a qualified written request from Larkins; and (4) excerpts from a prospectus supplement from the RALI Series 2006-QS14 Trust. (*Id.*)

In his letter purporting to rescind his loan, Larkins alleges appraisal fraud, "fraud and inducement," "fraud in execution," usury, and "payment." (*See id.*) Larkins asserts that PNC's response to his qualified written request indicated that "GMAC Residential Capital" is the "investor for [Larkins's] loan," and that Larkins "had a right to know that Residential Capital was an investor of a loan pool who is funding the loan, who is not identified at any stage of the loan process, and who expects a return on their investment." (*Id.*) Larkins seeks rescission of the loan and treble damages for the face value of the note. (*Id.*)

### C.     Larkins's Loan History

Larkins's claim relates to a May 2006 home loan (the "Loan") originated by National City Bank of Indiana ("NCB") with a principal amount of $142,500. (*See* Supp. Horst Decl. Ex. C.) The Loan was evidenced by a note (the "Note") and secured by a deed of trust (the "Deed") to property in Klamath Falls, Oregon. (*See id.*) No Debtor entity serviced the Loan; PNC Mortgage did. (*See* Supp. Horst Decl. ¶ 8.) Debtor Residential Funding Company, LLC ("RFC") acquired an interest in the Loan on July 24, 2006, and the Trust asserts that RFC transferred the Loan for securitization on October 30, 2006. (*Id.*) Deutsche Bank Company Americas ("Deutsche Bank") served as the trustee of the securitization trust. (*Id.* ¶ 9.)

#### 1.     The Deed

According to the Trust, after originating the Loan, NCB assigned the Deed to National City Mortgage Company ("NCM"), which then assigned the Deed to RFC. (*Id.* ¶ 9.) RFC in

5

turn assigned the Deed to Residential Accredit Loans ("RALI") on October 30, 2006, and on the same day, RALI assigned the Deed to Deutsche Bank, as trustee for the RALI 2006-QS14 Trust (the "RALI Trust"). (*Id.*) The closing date for the RALI Trust was also October 30, 2006. (*See id.* Ex. F.) This chain of assignments is not reflected in the Oregon land records. Rather, the Trust asserts that the assignments of the Deed to and from RFC and RALI were recorded within the Mortgage Electronic Registration Systems ("MERS") database. (*See id.* ¶ 10.) Larkins conceded at the Hearing that RFC and RALI were not required under Oregon law to record those assignments. (May 29, 2014 Tr. at 28:3–8.)

The Oregon land records only reflect assignments of the Deed from (1) NCB to NCM on June 20, 2006, (2) NCM to MERS on June 29, 2006, and (3) MERS to Deutsche Bank on August 24, 2011. (*Id.* Ex. H.) The second assignment lists MERS as the assignee and does not indicate that MERS was acting as a nominee for any other party, but the third assignment indicates that MERS was acting as the nominee for NCB. (*See id.*)

The final assignment reflected on the land records, from MERS to Deutsche Bank, was not recorded until August 24, 2011. (*See id.* Ex. H.) That MERS purported to assign the Deed as nominee for NCB is curious for two reasons: (1) NCB had already assigned the Deed to NCM in 2006, and (2) NCB ceased operating in July 2006.[6] The Trust asserts that the late recording of the third assignment is not dispositive of whether the Deed was indeed assigned to Deutsche Bank before the Trust closed. (*See id.* ¶ 10 ("Based on my time working with the Debtors it has been my experience that this and any other recordings in the land records subsequent to the

---

[6]   *See* May 29, 2014 Tr. at 24:20–23; 33:7–23; *see also* FDIC listing for National City Bank of Indiana, available at http://www2.fdic.gov/idasp/confirmation_outside.asp?inCert1=4347. NCB evidently merged with National City Bank on July 22, 2006, and National City Bank apparently merged with PNC Bank in November 2009. *See* FDIC listing for National City Bank, available at http://www2.fdic.gov/idasp/confirmation_ outside.asp?inCert1=6557.

6

closing date of the RALI Trust is not indicative or dispositive of an untimely transfer from RFC to Deutsche.").)

### 2. *The Note*

As for the debt underlying the Deed, the Trust produced a copy of the Note. The copy of the Note appears to show that it was indorsed from NCB to NCM, from NCM to RFC, and from RFC to Deutsche Bank. (*See* Supp. Horst Decl. Ex. E.) The name of the transferor in the Note's first endorsement is not entirely legible, but NCM's name as transferee is legible. Although it is not perfectly legible, an endorsement from NCB to NCM would make sense because (1) NCB originated the Note, so it would likely be the first transferor of the Note, and (2) NCB executed an assignment of the Deed to NCM on May 11, 2006, so it likely transferred the Note at or around the same time. If the first endorsement on the Note was not made on behalf of NCB to NCM, then the Note would have remained with NCB and would have been part of NCB's portfolio when it merged with National City Bank on July 22, 2006. RFC would not be responsible for this fault.

## II.    DISCUSSION

### A.    Claims Objections

Claims objections have a shifting burden of proof. Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under

applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 U.S. Dist. LEXIS 143957, at *12–13 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted).  If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim."  4 COLLIER ON BANKRUPTCY ¶ 502.02 (16th rev. ed. 2013).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law."  *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

### B.     Larkins Cannot Maintain a Claim Against RFC for Clouding His Title

Larkins wants to hold RFC liable for clouding his title, but his title does not appear to be clouded.  In Oregon, the trust deed follows the note.  *See Brandrup v. ReconTrust Co., N.A.*, 303 P.3d 301, 306–07, 315 (Or. 2013).  Oregon is a "lien theory" state, meaning that the mortgagee has a lien on the borrower's property, not legal or equitable title.  *See Kerr v. Miller*, 977 P.2d 438, 444 (Or. Ct. App. 1999).  Deutsche Bank recorded an assignment of Larkins's Deed in 2011, asserting a lien on his property.  Deutsche Bank is also the holder of Larkins's Note.  Thus, even if the recorded Deed assignments are flawed, Deutsche Bank is still entitled to assert a lien on Larkins's property because it is the Noteholder.

But even if Deutsche Bank is not entitled to assert a lien on Larkins's property because the Note was never properly indorsed by the originator, that is an issue between Larkins and Deutsche Bank, not between Larkins and the Debtors.  Larkins could bring an equitable quiet title action against Deutsche Bank "to obtain resolution of a dispute relating to adverse or

8

conflicting claims to real property." *Spears v. Dizick*, 234 P.3d 1037, 1039 (Or. Ct. App. 2010) (citing OR. REV. STAT. § 105.605 (2014) ("Any person claiming an interest or estate in real property not in the actual possession of another may maintain a suit in equity against another who claims an adverse interest or estate therein for the purpose of determining such conflicting or adverse claims, interests or estates."))[7] But Larkins cannot bring a quiet title claim against RFC since RFC is not asserting a lien on his property. *See Calderwood v. Young*, 315 P.2d 561, 565 (Or. 1957) ("This cannot be treated as a suit to quiet title because the persons against whom plaintiffs seek to quiet title are not parties to the case. It would appear to be hornbook law that one seeking to quiet title must sue the person against whom he seeks to quiet his title.").

Nor can Larkins assert a clouded title claim—different from a quiet title claim—against RFC. "A cloud upon title is a title, or incumbrance, apparently valid, but, in fact, invalid." *Teal v. Collins*, 9 Or. 89, 92 (1881). In a clouded title claim, a plaintiff "declares his own title, and in addition [] avers the source and nature of the defendant's claim, points out its defects, and prays that it be declared void as a cloud upon the plaintiff's estate." *Manning v. Gregoire*, 192 P. 406, 407 (Or. 1920). Here, though, RFC is not asserting any claim to Larkins's property. Thus, RFC is not the proper subject of a clouded title claim.

In his Opposition, Larkins argues that his title was clouded because (1) MERS purported to act as beneficiary in one of the recorded Deed assignments, even though Oregon does not permit MERS to be a trust deed's beneficiary (Opposition at 3–4); and (2) the parties' failure to comply with securitization agreements rendered the attempted assignments of his Loan to the

---

[7] Although even then, a quiet title action might fail because Deutsche Bank is only asserting a lien on the property, not superior title to the property. *See Staton v. BAC Home Loans Servicing, LP,* No. 6:10-cv-01306-PA, 2014 WL 1803376 (D. Or. May 6, 2014) (rejecting quiet title claim because the "[d]efendants have not asserted a superior title, but instead have attempted to foreclose a lien on the property").

9

securitization trust void. (*See* Opposition at 5–12.) As for the first theory, Larkins is correct that the Oregon Supreme Court has held that MERS cannot be a trust deed's beneficiary because it is not a mortgage lender. *See Brandrup* 303 P.3d at 304 ("[A]n entity like MERS, which is not a lender, may not be a trust deed's 'beneficiary,' unless it is a lender's successor in interest."). But the Debtors were not involved in any assignments where MERS purported to act as a beneficiary. Moreover, "the mere involvement of MERS in the loan will [not] render the lien invalid." *Staton*, 2014 WL 1803376 at *7 (following *Brandrup* and rejecting clouded title claim where MERS served as beneficiary).

And Larkins's second theory fails, too, for several reasons. First, he lacks standing to challenge RFC's compliance with securitization agreements. Larkins asserts that he may challenge the mortgage assignments under *Glaski v. Bank of Am.*, 160 Cal. Rptr. 3d 449 (Cal. Ct. App. 2013). In that case, a California state court permitted a borrower to defend a foreclosure action by challenging a mortgage assignment as void. *See id.* at 461–62. But Larkins's reliance on *Glaski* is misplaced because (1) *Glaski* was decided under California state law, which does not apply here because Larkins's property is in Oregon, and the securitization agreements are controlled by New York law; and (2) *Glaski* is an outlier. One California appellate court recently explained that "no California court has followed *Glaski*," and "many have pointedly rejected it." *Yvanova v. New Century Mortg. Corp.*, No. B247188, 2014 Cal. App. LEXIS 448, *12–13 (Cal. App. Ct. Apr. 25, 2014) (citations omitted).

Yet another California court rejected *Glaski*'s interpretation of New York trust law, citing a litany of New York appellate decisions reaching conclusions contrary to *Glaski*. *See Sandri*, 501 B.R. at 375–76. A recent Southern District of New York opinion also criticized *Glaski*, finding that assignments violating trust agreements are merely voidable, not void. *See Tran v.*

10

*Bank of New York*, No. 13 Civ. 580, 2014 U.S. Dist. LEXIS 40261, at *19–20 (S.D.N.Y. Mar. 25, 2014). And assignments that are voidable can still be ratified and become part of the trust, regardless of any objection from the borrower. Larkins cannot challenge the securitization of his Mortgage because he was a stranger to the underlying agreements.

Larkins's challenge to the securitization of his Loan also fails because, as mentioned above, the Deed follows the Note in Oregon, and Deutsche Bank is the current owner of the Note. Even if the Deed was not assigned properly during securitization, Deutsche Bank still holds the Note as trustee for the securitization trust and is therefore entitled to assert a lien on Larkins's property as the Noteholder. And as mentioned above, if the Note was never properly indorsed from NCB in the first place, then the debt would have remained with NCB. RFC cannot be faulted for that failure, so any issue relating to the securitization of Larkins's Loan stemming from the indorsement of Larkins's Note cannot support a claim against RFC.

### C. Larkins Cannot Maintain a Claim Against the Debtors for Fraud in the Origination, and He Cannot Force the Debtors to Rescind his Loan

The parties do not contest that NCB originated Larkins's Loan. In his proof of claim, Larkins attaches a letter alleging fraud in the origination and stating that he wants to rescind his Loan. Because the Debtors did not originate Larkins's Loan, he cannot maintain a claim against them for origination fraud. Larkins also cannot seek rescission of his Loan from the Debtors. The Debtors do not own or service the Loan, so they are not the proper party to contact about rescission.

### III.    CONCLUSION

Larkins either does not have a clouded title because Deutsche Bank owns his Note and is entitled to assert a lien on his property, or he has a clouded title due to actions by parties other than RFC. At the Hearing, Larkins indicated that he wanted to hold RFC responsible for its

11

involvement in the chain of assignments of his Loan (May 29, 2014 Tr. at 41: 4–10), but none of Larkins's evidence indicates that RFC is in any way at fault for what he perceives to be the cloud on his title.  Larkins also cannot seek damages for origination fraud because the Debtors did not originate his loan, and he cannot demand rescission from the Debtors since they do not own his Loan.

Larkins simply cannot maintain a claim against the Debtors.  Therefore, the Objection is **SUSTAINED**, and claim number 1467 is hereby disallowed and expunged.

**IT IS SO ORDERED.**

Dated:  June 24, 2013
          New York, New York

                                                          ___*Martin Glenn*_____
                                                               MARTIN GLENN
                                                         United States Bankruptcy Judge