Hearing Date and Time:  June 26, 2014 at 10:00 a.m. (ET)
Objection Deadline:  June 19, 2014 at 4:00 p.m. (ET)

Daniel J. Flanigan
Jason A. Nagi
**POLSINELLI**
805 Third Avenue, 21st Floor
New York, New York 10022
(212) 684-0199
*Counsel for ResCap Borrower Claims Trust*

R. Frederick Walters
**WALTERS, BENDER, STROHBEHN & VAUGHAN**
1100 Main Street, Suite 2500
Kansas City, Missouri  64105
(816) 421-6620
*Counsel for ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **RESIDENTIAL CAPITAL, LLC,** *et al.*, | Case No. 12-12020 (MG) |
| Debtors. | (Jointly Administered) |

**OMNIBUS REPLY OF RESCAP BORROWER CLAIMS TRUST
IN SUPPORT OF MOTION FOR ORDER ESTIMATING CLAIMS
AND ESTABLISHING DISPUTED CLAIMS RESERVE**

The ResCap Borrower Claims Trust (the "**Trust**"), as successor in interest to the above-captioned Debtors with respect to Borrower Claims[1], by and through its undersigned counsel, hereby submits this Reply (the "**Reply**") to the various pleadings filed in opposition to the Trust's Motion For Order Estimating Claims And Establishing Disputed Claims Reserve ("the

---

[1] Capitalized terms not otherwise defined herein shall have the meaning set forth in the ResCap Borrower Claims Trust Agreement.  Capitalized terms not otherwise defined herein or in in the Trust Agreement shall have the meaning set forth in the Plan.

**Motion"**) and in further support of the Motion.  The Borrower Trust respectfully states as follows:

1.  The Objections to the Motion fail to demonstrate that there is any fault in the very conservative methodology the Trust has used to calculate the proposed Disputed Claim Reserve ("**DCR**").  The Objections only serve to demonstrate the extreme positions held by certain holders of Borrower Claims and, thus, why the DCR is necessary if there is to be a meaningful distribution to the holders of Borrower Claims before final resolution of the remaining Claims, which could take two more years or even longer to complete.

2.  Most of the Objections focus almost solely and at length on the objecting parties' individual Claims and, for the most part, simply restate their Claims and complain vociferously that their Claims have not been processed as quickly as they desire.  But the fact that 3,034 Borrower Claims, including the very complex Borrower Class Claims, were filed in the total amount of approximately $15.4 <u>billion</u> (an average of $5.1 <u>million</u> <u>per claim</u>) and that all Borrower Class Claims were resolved as of Plan confirmation and only 597 of the individual Borrower Claims remain unresolved evidences the diligence with which the Debtors' representatives and now the Borrower Trust representatives have pursued Claims resolutions.  In this regard, it is worthwhile to emphasize the huge number of Borrower Claims that have been effectively resolved by resolution of the Class Claims--for example, just one of the multiple class settlements--the Kessler Class Settlement—resolved 44,000-plus Borrower Claims representing 70,000-plus Borrowers although it is recorded in the Claims Register as only one Claim.  The Kessler Class claim had been pending over a decade, been appealed to the Third Circuit on two separate occasions and cannot by any metric or stretch of logic be considered simple or easy to resolve. Although the remaining Borrower Claims do include some of the largest individual

Borrower Claims, not only the Borrower Class Claims but certain large individual Borrower Claims were previously resolved, resulting in a reduction of over $14 billion in filed Borrower Claim amounts. Those facts rebut the unfounded allegations of "cherry picking" leveled by certain of the objecting parties.

3. One or more of the objecting parties interpreted statements in the Motion as asserting that <u>all</u> of the 597 remaining Borrower Claims are absurdly inflated. The Trust does not believe that the statements in the Motion can be fairly so interpreted, but, in any event, that characterization was not intended. In fact, although several of the very largest individual Borrower Claims remain to be resolved, the 597 remaining Borrower Claims population also includes approximately 300 Claims, more than half of the entire population, in filed amounts of $100,000 or less (and those include 131 Borrower Convenience Class Claims).[2] Thus, it is not true that only the large complicated Borrower Claims remain to be resolved as incorrectly suggested by certain of the objecting parties.

4. Not one of the Objections effectively critiques or casts the slightest doubt upon the validity of the methodologies used to establish the DCR:

- The methodology used to establish the DCR (Scenario 1) is the same as the methodology used in the True-Up Analysis that itself has proved to be a very conservative methodology, as evidenced by the fact that the "cushion" (i.e. an amount above that necessary to make distributions at the Comparable Recovery Percentages of 30.1% at GMACM and 9% at RFC) has increased since the True-Up analysis (performed in November, 2013) from $8,400,000 to $15,700,000.

---

[2] Borrower Convenience Class Claims are those claims at GMACM with a filed amount equal to or less than $8,500 and at RFC equal to or less than $28,000.

48276304.1

- The methodology used to establish the DCR (Scenario 1) uses a Claims allowance percentage of 95% when the actual Claim allowance experience for the approximately 2,400 Borrower Claims resolved to date postpetition is 3%.

- The highest payment on any individual Claim prepetition was $412,500, which, combined with the average prepetition payment of only $16,700, is, by itself, eloquent commentary on the unreality of those remaining Borrower Claims asserted in the hundreds of thousands, millions, tens of millions, and hundreds of millions of dollars. The postpetition Claims resolution experience--the highest Allowed Claim so far being $325,000 and the average Allowed claim being $27,600--resoundingly reaffirms the prepetition experience and further shows the conservative nature of the Trust's DCR analysis.

- The Trust used two other methodologies (Scenarios 2 and 3) to test the Scenario 1 analysis by analyzing the <u>post</u>petition Claims resolution experience, both of which indicate that a substantially smaller DCR than that indicated by Scenario 1 is amply justified--$4,980,000 in the case of Scenario 2 and $5,310,000 in the case of Scenario 3.

5.    The fact that the DCR is <u>aggregate or cumulative</u> deserves special mention. Since cash held in the DCR is not allocated to specific Claims, savings from expungements or settlements of unresolved Claims at less than the assumed average of unresolved Claims (97% expungement success rate so far) will provide extra cushion for remaining unresolved Claims. That there could be Claims from the DCR that are Allowed in sufficient number or amount to cause the average Allowed Claim in the DCR to drop below the postpetition average Allowed Claim of $27,600 is very remote if not a practical impossibility:

4

- That is so because, even assuming that 100% of the claims in the DCR are Allowed, as contrasted with the actual experience of only 3% allowance, the average Allowed Claim would still be only $36,000.

- If it is assumed that the 3% Allowed Claim experience that has occurred over the approximate 2,400 Claims already resolved continues to apply to the Claims in the DCR, then the DCR has sufficient reserves for an average Allowed Claim of $1,204,000 or approximately 44 times the current average Allowed Claim.

- If it is assumed that the Claims allowance percentage in the DCR is 10 times the postpetition experience or a 30% allowance rate (179 Allowed Claims) the DCR still has sufficient reserves to provide an average Allowed Claim of $121,000 or approximately 4.4 times the current average Allowed Claim.

- If it is assumed there are 2 "outlier" Claims in the DCR that are allowed at $1,000,000 each (a very remote possibility based on all past experience), there are still sufficient reserves in the DCR to provide an average Allowed Claim for each of the remaining 595 Claims (a Claims allowance percentage of 100%, which will not occur) of $33,100, which is still higher than the current average Allowed Claim. The attached **Exhibit A** shows that, even with as many as 5 "outliers" at $1,000,000 each and a 100% Claims allowance percentage, the average Allowed Claim is still higher than the current average Allowed Claim.

6.  The foregoing overwhelmingly demonstrates that the DCR is adequate even assuming the occurrence of substantial variations from past experience as to Claims allowance frequency and/or Claims allowance amounts and even if there are a few outliers in large amounts

entirely outside of the Debtors' and Trust's historical experience and even if the allowance percentage increases exponentially from prior experience.

WHEREFORE, the Trust requests that the relief sought in the Motion be granted.

Dated: June 24, 2014
New York, New York

                                              Respectfully Submitted,

                                              POLSINELLI

                                              By: */s/ Daniel J. Flanigan*
                                                    Daniel J. Flanigan
                                                    Jason A. Nagi
                                                    900 3rd Avenue, 21st Floor
                                                    New York, New York 10022
                                                    (212) 644-2090
                                                    Fax No. (212) 684-0197
                                                    dflanigan@polsinelli.com

                                              WALTERS BENDER
                                              STROHBEHN & VAUGHAN, P.C.

                                              By: */s/ R. Frederick Walters*
                                                    R. Frederick Walters
                                                    1100 Main Street, Suite 2500
                                                    Kansas City, Missouri 64105
                                                    (816) 421-6620
                                                    (816) 421-4747 (Facsimile)
                                                    fwalters@wbsvlaw.com

                                              ATTORNEYS FOR RESCAP
                                              BORROWER CLAIMS TRUST

48276304.1