**Hearing Date: July 30, 2014 at 10:00 a.m. (Eastern Time)**
**Response Deadline: July 23, 2014 at 4:00 p.m. (Eastern Time)**

DUANE MORRIS LLP
Lawrence J. Kotler, Esq. (LK 8177)
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000
(215) 689-4951 (facsimile)
        and
1540 Broadway
New York, NY 10036
(212) 692-1000
(212) 208-4521 (facsimile)

*Attorney for The Bank of New York Mellon f/k/a*
*The Bank of New York, as Trustee for the Holders*
*of the Certificates, First Horizon Mortgage*
*Pass-Through Certificates Series FH06-FA2, by*
*First Horizon Home Loans, a Division of First*
*Tennessee Bank National Association, Master*
*Servicer, in its Capacity as Agent for the Trustee*
*under the Pooling and Servicing Agreement*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Case No. 12-12020  (MG) |
| Debtors. | Jointly Administered |

**MOTION OF THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE HOLDERS OF THE CERTIFICATES, FIRST HORIZON MORTGAGE PASS-THROUGH CERTIFICATES SERIES FH06-FA2, BY FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK NATIONAL ASSOCIATION, MASTER SERVICER, IN ITS CAPACITY AS AGENT FOR THE TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT FOR RECONSIDERATION OF THE JUNE 11, 2014 ORDER GRANTING RESCAP LIQUIDATING TRUST'S SIXTY-FIFTH OMNIBUS OBJECTION (NO LIABILITY CLAIMS)**

TO:    THE HONORABLE MARTIN GLENN
       UNITED STATES BANKRUPTCY JUDGE

DM1\4816832.1

The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Holders of the Certificates, First Horizon Mortgage Pass-Through Certificates Series FH06-FA2, by First Horizon Home Loans, a Division of First Tennessee Bank National Association, Master Servicer, in its Capacity as Agent for the Trustee under the Pooling and Servicing Agreement ("BNY Mellon"), by and through its undersigned counsel, hereby files this Motion (the "Motion") pursuant to section 502(j) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 3008 and 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3008-1 of the Local Bankruptcy Rules for the Bankruptcy Court for the Southern District of New York (the "Local Rules") for reconsideration of this Court's Order of June 11, 2014 Granting Rescap Liquidating Trust's Sixty-Fifth Omnibus Objection (No Liability Claims) [Dkt. No. 7008], dated June 10, 2014 (the "Order"). In support of the Motion, BNY Mellon respectfully states as follows:

## PRELIMINARY STATEMENT

1.      BNY Mellon, a creditor of the above-captioned Debtors, timely filed proofs of claim against the above-captioned Debtors.

2.      In particular, BNY Mellon filed: (i) claim number 5312 (the "ETS Claim") against Executive Trustee Services, LLC ("ETS"), a copy of which is attached hereto as Exhibit "A," and (ii) claim number 5355 (the "GMAC Claim[1]" and, together with the ETS Claim, the "BNY Mellon Claims") against GMAC Mortgage, LLC ("GMAC, LLC" and, together with ETS, the "Debtors"), a copy of which is attached hereto as Exhibit "B."

2

3.      On May 1, 2014, The ResCap Liquidating Trust (the "Liquidating Trust"), as successor in interest to the Debtors, filed its Sixty-Fifth Omnibus Claims Objection (No Liability Claims) [Dkt. No. 6847] (the "Objection") in which it objected to, *inter alia*, the BNY Mellon Claims on the grounds that the BNY Claims "fail[ed] to articulate any legal or factual justification to qualify as liabilities of the Debtors." Objection at ¶ 2.

4.      In the Objection, the Liquidating Trust also asserted that BNY Mellon had not been damaged as : (i) the "[p]ublic records show that there is no other lender on title since the erroneous release and the time the rescission of reconveyance was recorded on 4/19/12" and (ii) that "Claimant still has its lien position." *See, e.g.,* Exhibit A to Proposed Order attached to Objection as Exhibit 2.

5.      However, as discussed in greater detail below, the grounds for the Liquidating Trust's Objection (defined below) to the BNY Claims is without merit as the "other lender on the title" is NOT BNY Mellon but, rather, is First Tennessee Bank National Association, successor in interest by merger to First Horizon Home Loan Corporation ("FHHLC").[2]

6.      With respect to this second lien, FHHLC holds the lien in its own capacity and not as servicer for BNY Mellon.

---

(Continued...)

[1] Other than the name of the particular debtor, the ETS Claim and the GMAC Claim are identical.

[2] On May 31, 2007, First Horizon Home Loan Corporation was merged into its parent company First Tennessee Bank National Association and became a division of (*i.e.*, same legal entity as) First Tennessee Bank National Association at that time.

3

7.     As such and despite the Liquidating Trust's assertion to the contrary, BNY Mellon has suffered damage as a result of the Debtors' conduct, conduct which the Liquidating Trustee admits occurred and, as a consequence, the Debtors' estates should be held liable and accountable to BNY Mellon.

8.     In addition to the lack of merit of the Objection, BNY Mellon did not even receive notice of the Objection and therefore did not have an opportunity to respond to the merits of the Objection on a timely basis.

9.     The disallowance of the BNY Mellon Claims is fundamentally unfair and provides an unjustified windfall to the Debtors' estates that should not be countenanced.

10.     Accordingly, BNY Mellon files this Motion respectfully requesting that this Court reconsider the Order sustaining the Objection and/or allowing the BNY Mellon Claims.

## BACKGROUND

11.     On May 14, 2012 (the "Petition Date"), the Debtors in these jointly administered cases filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "Court").

12.     BNY Mellon is a creditor of the Debtors and an interested party in the Debtors' jointly administered bankruptcy cases.

13.     Prior to the Petition Date, on or about February 21, 2006, Abderrehim Mekkoudi and Andrea Mekkoudi (collectively, the "Borrowers") executed and delivered to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for First Horizon Home Loan Corporation ("FHHLC"), a Deed of Trust (the "First DOT"), pursuant to which the Borrowers

granted and conveyed to FHHLC, in trust, that certain real property commonly known as 2050-2052 17th Avenue, Santa Cruz, CA 95062 (the "Property").

14.     The First DOT was recorded in the Official Records of the County of Santa Cruz on February 28, 2006 as Instrument Number 2006-0011472. A true and correct copy of the First DOT was attached to the BNY Mellon Claims as Exhibit "A."

15.     The First DOT was to secure a loan from FHHLC to the Borrowers in the original principal amount of $735,700.00 (the "First Loan").

16.     Pursuant to that certain Pooling and Servicing Agreement dated March 1, 2006, the First Loan was sold and the First DOT was assigned to BNY Mellon. A true and correct copy of the Assignment of Deed of Trust from MERS to BNY Mellon was attached to the BNY Mellon Claims as Exhibit "B."

17.     Thus, prior to the Substitution and Reconveyance (as defined below) BNY Mellon was the holder of the First DOT.

18.     In addition to the First DOT, the Borrowers, also on or about February 21, 2006, executed and delivered to MERS, as nominee for FHHLC, a Deed of Trust and Request for Notice of Default (the "Second DOT"), pursuant to which the Borrowers granted and conveyed to FHHLC, in trust, the Property.

19.     The Second DOT was recorded in the Official Records of the County of Santa Cruz on February 28, 2006 as Instrument Number 2006-0011473. A true and correct copy of the Second DOT was attached to the BNY Mellon Claims as Exhibit "C."

20.     The Second DOT was to secure a loan from FHHLC to the Borrowers in the original principal amount of $144,300.00 (the "Second Loan").

5

21.    Upon information and belief, GMAC Mortgage Corporation  ("GMAC Corp") was the mortgage loan servicer for the Second Loan and the Second DOT at the time the Substitution and the Reconveyance (as defined below) were recorded.

22.    On or about October 26, 2006, GMAC Corp merged into GMAC, LLC.

23.    Upon information and belief, GMAC, LLC owned 100% of the equity in GMAC Corp.

24.    GMAC, LLC, as successor to GMAC Corp by merger, is liable for GMAC Corp's errors.

25.    On May 11, 2006, FHHLC refinanced the Second DOT pursuant to which the Borrowers borrowed slightly more money than the financing back in February, 2006 and FHHLC was to remain as the holder of the Second DOT.

26.    On or about June 20, 2006, GMAC Corp prepared and MERS executed a Substitution of Trustee (the "Substitution"), erroneously substituting ETS as Trustee under the First DOT rather than the refinanced Second DOT.

27.    The Substitution was recorded in the Official Records of the County of Santa Cruz on June 26, 2006 as Instrument Number 2006-0037120.  A true and correct copy of the Substitution was attached to the BNY Mellon Claims as Exhibit "D."

28.    Also on or about June 20, 2006, GMAC Corp prepared and ETS executed a Full Reconveyance (the "Reconveyance"), purportedly reconveying to the Borrowers all right, title and interest in and to the Property under the First DOT.

6

29.     The Reconveyance was recorded in the Official Records of the County of Santa Cruz on June 26, 2006 as Instrument Number 2006-0037121. A true and correct copy of the Reconveyance was attached to the BNY Mellon Claims as Exhibit "E."

30.     The Substitution and Reconveyance were prepared and recorded in error by GMAC Corp and ETS as, at the time of the recording of the Reconveyance, the First Loan was not paid in full and neither GMAC Corp nor ETS had authority to record a reconveyance with respect to the First DOT[3].

31.     In fact, as of the Petition Date, the principal balance due under the First Loan totaled $735,700.00.

32.     Rather than reconvey the First DOT, GMAC Corp was supposed to reconvey the refinanced Second DOT, but erroneously listed the Instrument Number for the First DOT.

33.     This is evidenced by the fact that the MERS Number listed in the Reconveyance (100085200571614652) relates to the Second DOT, not the First DOT.

34.     As a result of (i) GMAC Corp's errors in preparing the Reconveyance and causing the same to be executed and recorded and (ii) ETS's errors in executing and recording the Reconveyance, a controversy has arisen regarding the effect of the Reconveyance and BNY Mellon has suffered (and continues to suffer) damages.[4]

---

[3] In reality, the Borrowers refinanced the Second DOT with FHHLC and all of the filings were supposed to relate to the Second DOT, not the First DOT.

[4] As a result of the Debtors' errors, BNY Mellon filed a Complaint in the Superior Court of the State of California for the County of Santa Cruz, at Case No. CV169551, seeking declaratory relief, cancelation/reformation of the Reconveyance, an equitable lien and/or to quiet title. Unfortunately, as of the date hereof, this complaint is still pending as the borrowers had filed bankruptcy subsequent to the filing of this complaint.

7

35.    Accordingly, on November 16, 2012, BNY Mellon filed the BNY Mellon claims against the Debtors for damages in the amount of at least $735,700, representing, upon information and belief, the value of its fully-secured claim against the Borrowers at the time the First DOT was erroneously released by the Debtors.

36.    Subsequent to the filing of the claims, the Liquidating Trust filed the Objection, and on June 10, 2014, this Court granted the Objection and disallowed and expunged the BNY Mellon Claims in their entirety[5].

37.    On or about June 18, 2014, counsel for BNY Mellon received the Order disallowing, *inter alia*, the BNY Mellon Claims.

38.    This was the first time counsel for BNY Mellon received any notice that an objection to the BNY Mellon Claims had even been filed. *See* Declaration of Lawrence J. Kotler, dated June 24, 2014 (the "Kotler Declaration"), attached hereto as Exhibit "C."

## RELIEF REQUESTED

39.    Pursuant to section 502(j) of the Bankruptcy Code, Bankruptcy Rules 3008 and 9024, and Local Rule 3008-1, BNY Mellon respectfully requests that this Court reconsider the Order and enter an order substantially in the form of Exhibit "D", granting BNY Mellon a hearing to reconsider the Order as to the BNY Mellon Claims, or if the Court deems appropriate, allowing the BNY Mellon Claims.

## JURISDICTION AND VENUE

---

[5] The actual order sustaining the objection was not entered until June 11, 2014. See Docket No. 7088.

DM1\4816832.1

40.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

41.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BASIS FOR RELIEF

42.    This Court "has broad discretion to reconsider allowance or disallowance of proofs of claim 502(j) 'for cause.'" *N.Y. Community Bank v. Smith (In re Smith)*, 305 Fed. App'x 683, 684 (2d Cir. 2008) (summary order).  If the Court grants reconsideration, it "may allow or disallow the claim 'according to the equities of the case.'" Id. at 684 (quoting 11 U.S.C. § 502(j)).  "While the determination of whether cause, within the meaning of Section 502(j), is present, falls upon the equitable judgment of the court and is within the sound discretion of the court, courts generally rely upon the language and interpretation of Federal Rules of Civil Procedure 60(b)." *In re Johansmeyer*, 231 B.R. 467, 470 (Bankr. E.D.N.Y. 1999) (internal quotations omitted); *see also In re Enron Corp.*, 325 B.R. 114, 117 (Bankr. S.D.N.Y. 2005) (hereafter, "*Int'l Paper*") (citing *McDuffy v. Novak (In re DeGeorge Fin. Corp.)*, No. 3:01-cv-00009-CFD, 2002 WL 31096716, at *13 (D. Conn. July 15, 2002)).

43.    Rule 60(b) of the Federal Rules of Civil Procedure provides that:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1)    mistake, inadvertence, surprise, or excusable neglect;
> (2)    newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3)    fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4)    the judgment is void;

(5)   the judgment has been satisfied, released, or discharged; it
is based on an earlier judgment that has been reversed or vacated;
or applying it prospectively is no longer equitable; or
(6)   any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

44.   Within the Second Circuit, courts have imposed a three-part test for relief under

Rule 60(b)(1) on the grounds of excusable neglect.  "These factors include (1) whether the

failure to respond was willful, (2) whether the movant had a legally supportable defense, and (3)

the amount of prejudice that the non-movant would incur if the court granted the motion." *Int'l*

*Paper*, 325 B.R. at 118 (citing *Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d

Cir. 1996)).

45.   Moreover, there is "a strong preference that courts resolve disputes on their merits

. . [and, as such,] courts [should] resolve any doubts in favor of the movant in order to increase

the likelihood that disputes will be resolved on their merits." *Id.* at 118 (citing *Pecarsky v.*

*Galaxiworld.com Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001)).

46.   As discussed herein, BNY Mellon meets each of the requirements under Rule

60(b)(1) for reconsidering the disallowance of its claims.

47.   First, BNY Mellon's failure to respond to the Objection was not willful.  In order

for BNY Mellon's failure to respond to the Objection to be willful, the Second Circuit requires

"something more than just negligence or carelessness on the part of the movant." *In re Enron*

*Corp. ("Penn Trustees")*, 326 B.R. 46, 50-51 (Bankr. S.D.N.Y. 2005) (citing *Am. Alliance Ins.*,

92 F.3d at 59).

10

DM1\4816832.1

48.    Courts have consistently found that "[d]efaults caused by negligence may be excusable while defaults that occur as a result of deliberate conduct are not excusable." *In re Enron Creditors' Recovery Corp.*, No. 01-16034, 2007 WL 2480531, at *4 (Bankr. S.D.N.Y. Aug. 28, 2007); *see also In re Enron, Inc.*, 325 B.R. 114, 118 (Bankr. S.D.N.Y. 2005).

49.    On May 8, 2014 16, 2011, the Debtors' claims agent filed an affidavit of service stating that it mailed notice of the Objection to BNY Mellon and its counsel via first class mail. While "[i]t is a well settled principle that 'proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination,'" *Hogarth v. New York City Health and Hospitals Corp.*, No. 97-CV-0625 (DAB), 2000 WL 375242, at *4 (S.D.N.Y. 2000) (citing *Hagner v. United States*, 52 S. Ct. 417, 419 (1932)), that presumption can be rebutted. Specifically, a party rebuts that presumption when it provides "a sworn affidavit giving a detailed description of the mail procedures followed at a company for all incoming mail supporting the conclusion that the mail was never received." *Hogarth*, 2000 WL 375242, at *4 (citing *J. Gerber & Co., Inc. v. M/V Amer Shanti*, No. 89-CV-6122 (RO), 1991 WL 8468, at *2 (S.D.N.Y. Jan. 18, 1991)); *see also Gardner v. Honest Weight Food Co-op, Inc.*, 96 F. Supp. 2d 154, 159 (N.D.N.Y. 2000) (citing *Hogarth*, 2000 WL 375242, at *4).

50.    As explained in the Kotler Declaration, Mr. Kotler reviews all of his mail on a daily basis. While he admits that he received the Order sustaining the objection, he did not receive the underlying objection. *See*, Kotler Declaration at ¶¶ 6, 10, 12-13.

51.    In light of Mr. Kotler's declaration and the averments set forth therein, the presumption of receipt from the Debtors' certificate of service is overcome. *See In re Lomas Fin. Corp.*, 212 B.R. 46 (Bankr. D. Del. 1997) (granting motion for reconsideration of an order

DM1\4816832.1

granting a claim objection, even where the creditor was served with the objection, because

counsel for the creditor was not served, and rejecting debtor's argument that service on the

creditor alone was sufficient, and that the creditor should have notified counsel and sought its

advice).

52.     Accordingly, BNY Mellon's failure to respond to the Omnibus Objection was

"without the requisite knowledge of the pendency of the action to have acted in a deliberate

manner" and therefore cannot be willful. *Penn Trustees*, 326 B.R. at 52; *see also In re Bicoastal

Corp.*, 126 B.R. 613, 615 (Bankr. M.D. Fla. 1991) (reconsideration is appropriate under Rule

60(b)(1) where presumption of receipt arguably had been rebutted, there was no showing of

negligence, and reconsideration would not impede the progress of the case).

53.     Indeed, when counsel for BNY Mellon received the Order, it promptly moved to

determine what course of action it should take to preserve the BNY Mellon Claims. See Kotler

Declaration at ¶ ¶ 6-9.

54.     BNY Mellon meets the second requirement under Rule 60(b)(1) because it has a

legally supportable defense in connection with the validity of the BNY Mellon Claims.

55.     In order to satisfy the second requirement under Rule 60(b)(1), a movant must

"have a legally supportable defense or position within the underlying litigation," which "need not

be ultimately persuasive at this stage." *Penn Trustees*, 326 B.R. at 52-53 (quoting *Am. Alliance

Ins.*, 92 F.3d at 61).

56.     Section 3001(f) of the Bankruptcy Rules provides that "[a] proof of claim

executed and filed in accordance with these rules shall constitute prima facie evidence of the

validity and amount of the claim."

DM1\4816832.1

57.    In this case, there is no question that BNY Mellon timely submitted the executed BNY Mellon Claims prior to the deadline established by the Court's Bar Date Order.

58.    Each of the proof of claims forms was executed and provided sufficient information to evidence a *prima facie* claim against the Debtors based on the erroneous release of the First DOT.

59.    Indeed, even in the Objection, the Liquidating Trust does not deny the fact that there was an erroneous release of the First DOT.  Rather, the Liquidating Trust makes an erroneous statement of fact, namely, that the two lien holders are one and the same, and therefore the holder of the First DOT could not have been damaged[6].

60.    However, even the claims themselves reveal that the holder of the First DOT is a separate and distinct entity from the Second DOT.  See, BNY Mellon Claims, ¶¶ 7 and 9.

61.    Accordingly, BNY Mellon submitted sufficient information to *constitute prima facie* evidence of the validity and amount of the claims against the Debtors and would be successful in proving such valid claims exist against them.  *See* Bankruptcy Rule 3001(f); *see also Carey v. Ernst (In re Ernst)*, 333 B.R. 666, 672 (S.D.N.Y. 2005) ("A properly executed and filed proof of claim constitutes prima facie evidence of the validity of the claim.") (quoting *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000))).

62.    In contrast, the Liquidating Trust has not provided, and cannot provide, any evidence to rebut the *prima facie* evidence of the validity of the BNY Mellon Claims.

---

[6] Even if the lien holders were one and the same, the second lien was for a much smaller amount. Thus, to the extent the property is worth more than the second lien, there would be an injury as the "equity" that would have gone to the first lienholder would now go to the Borrower.

13

DM1\4816832.1

63.     Had BNY Mellon received notice of the Objection, it would have submitted a response with this Court similar to the averments set forth herein.

64.     In light of the foregoing, BNY Mellon has a legally supportable defense in connection with the validity of the BNY Mellon Claims.

65.     Finally, BNY Mellon satisfies the third requirement under Rule 60(b)(1) because there will be little, if any, prejudice to the non-movant, the Liquidating Trust, if the Court grants the Motion.

66.     Reconsideration of the disallowance of the BNY Mellon Claims will not prejudice the Liquidating Trust or the Debtors' estates.  As noted herein, the BNY Mellon Claims were timely filed.  A distribution reserve was established to deal with these claims and had counsel for BNY Mellon actually received the Objection, the parties would have been litigating the very issues raised herein.

67.     Thus, the reconsideration of the BNY Mellon Claims will not require the Liquidating Trust to restart the claims resolution process or cause further prejudice to the Debtors' estates.

68.     Second, the ultimate allowance of the BNY Mellon Claims will not prejudice the Liquidating Trust because such allowance will have no material impact on the amounts distributed to other creditors nor any impact at all on those amounts already distributed since the Liquidating Trust has already reserved sufficient assets to make distributions on the BNY Mellon Claims without having to reverse the initial distributions made to allowed claims. *See, e.g., Pro-Tec Servs., LLC v. Inacom Corp. (In re Inacom Corp.)*, No. 04-390-GMS, 2004 WL 2283599, at *4-5 (D. Del. Oct. 4, 2004) (reversing denial of reconsideration of claim determination where the

14

court found no prejudice, in part because debtor was still litigating many of the unsecured claims and distributions would not need to be reversed, even though the motion for reconsideration of the disallowance of a claim was filed nearly three years after entry of the disallowance order).

69.    In addition, while the allowance of the BNY Mellon Claims may cause creditors to receive less (although given the proposed distribution percentage to be paid to similarly situated creditors, it is questionable whether this is indeed the case), courts have found that in the context of liquidating plans, the mere reduction of the percentage each creditor would receive from the total distribution is not a sufficient basis for finding prejudice. See *In re Sacred Heart Hosp. of Norristown*, 186 B.R. 891, 897 (Bankr. E.D. Pa. 1995) (finding no prejudice from the mere change in distribution percentage in a liquidation case); *In re BuildNet, Inc.*, No. 01-82293, 2003 WL 22078079 (Bankr. M.D.N.C. Aug. 26, 2003) (noting that any depletion in the assets available for timely filed claims is unfortunate, but standing alone, is an insufficient basis to find prejudice); *In re Spring Ford Industries*, No. 02-15015-DWS, 2003 WL 21785960, *5 (Bankr. E.D. Pa. July 25, 2003).

70.    Finally, the Liquidating Trust cannot argue any prejudice on account of the passage of time from the entry of the Order to the filing of this Motion.

71.    "Generally, mere delay is not sufficient to demonstrate a sufficient level of prejudice. 'Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Penn Trustees*, 326 B.R. at 53 (quoting Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983)).

15

DM1\4816832.1

72.      As this Motion is filed within days of the hearing to consider the Objection, none

of these concerns are present here and granting reconsideration would not result in any such

prejudices.

73.      The only prejudice the Liquidating Trust could arguably suffer is that the

allowance of the BNY Mellon Claims would wipe out the unjustified windfall their estates would

obtain from the disallowance of such valid claims.

74.      However, the Debtors' estates should not benefit from an unjustified windfall at

the expense and significant prejudice of a creditor, especially where (i) the basis for the

disallowance is without merit; and (ii) BNY Mellon did not receive notice of the Objection.

75.      Accordingly, cause for reconsideration under Rule 60(b)(1) exists here because

BNY Mellon was not willful in its delay in responding to the Objection, BNY Mellon has *prima

facie* valid Proof of Claims and a meritorious defense to the Objection, and reconsideration of the

Order will not result in prejudice to the Liquidating Trust and/or the Debtors' estates.

## MEMORANDUM OF LAW

76.      Because the legal points and authorities upon which the Motion relies are

incorporated herein, BNY Mellon respectfully requests that the requirement of service and filing

of a separate memorandum of law pursuant to Local Rule 9013-1(b) be deemed satisfied.

## NOTICE

77.      BNY Mellon has served this Motion is accordance with the Order Under

Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and

9007 And Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management And

Administrative Procedures Case Management Procedures [Dkt. No. 141] entered on May 23,

DM1\4816832.1

2013, governing case management and administrative procedures for these cases. BNY Mellon submits that no other or further notice need be provided.

## NO PREVIOUS REQUEST

78.    No previous request for the relief requested herein has been made to this Court or any other court.

## CONCLUSION

For the reasons set forth above, BNY Mellon respectfully requests that this Court enter an order substantially in the form of Exhibit D (i) granting BNY Mellon a hearing on the merits of the Objection as to the BNY Mellon Claims, or, if the Court deems appropriate, allowing the BNY Mellon Claims and (ii) granting BNY Mellon such further relief as the Court deems just.

DATED: JUNE 24, 2014                     DUANE MORRIS LLP


By: /s/Lawrence J. Kotler
Lawrence J. Kotler, Esq. (LK 8177)[7]
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000
(215) 689-4951 (facsimile)
            and
1540 Broadway
New York, NY 10036
(212) 692-1000
(212) 208-4521 (facsimile)

---

[7] *Attorney for The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Holders of the Certificates, First Horizon Mortgage Pass-Through Certificates Series FH06-FA2, by First Horizon Home Loans, a Division of First Tennessee Bank National Association, Master Servicer, in its Capacity as Agent for the Trustee under the Pooling and Servicing Agreement*

DM1\4816832.1