**Exhibit A**
**Proof of Claim 5312**

Claim #5312  Date Filed: 11/16/2012

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number: **Executive Trustee Services, LLC, Case No. 12-12028**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (The person or other entity to whom the debtor owes money or property): The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Holders of the Certificates, First Horizon Mortgage Pass-Through Certificates Series FH06-FA2, by First Horizon Home Loans, a Division of First Tennessee Bank National Association, Master Servicer, in its Capacity as Agent for the Trustee Under the Pooling and Servicing Agreement

Name and address where notices should be sent:
Lawrence J. Kotler, Esquire
Duane Morris LLP
30 S. 17th Street
Philadelphia, PA 19103

Telephone number:  215-979-1514                         email: ljkotler@duanemorris.com

Name and address where payment should be sent (if different from above):



Telephone number:                                          email:

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
(If known)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

**1. Amount of Claim as of Date Case Filed:** $ at least $735,700.00 _____

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** See attached.
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** | **3a. Debtor may have scheduled account as:** (See instruction #3a) | **3b. Uniform Claim Identifier (optional):** (See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:
**Value of Property: $** _____  **Annual Interest Rate** _____ % ☐ Fixed ☐ Variable
(when case was filed)
**Amount of arrearage and other charges, as of the time case was filed, included in secured claim,**
if any: $ _____  **Basis for perfection:** _____

**Amount of Secured Claim: $** _____  **Amount Unsecured: $** _____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$ _____ (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing eviden[ce of perfection of a security interest are attached. (See instruction #8, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DC[...]

If the documents are not available, please explain:

121202812111600000000004

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ _____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**9. Signature:** (See instruction #9) Check the appropriate box.
■ I am the creditor.   ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Keri Goldstein Unowsky
Title: Senior Vice President and Counsel
Company: First Tennessee Bank National Association, Master Servicer
Address and telephone number (if different from notice address above):
165 Madison Avenue, 8th floor, Memphis, TN 38103

(Signature)  11-14-12  (Date)

**RECEIVED**
NOV 1 6 2012
KURTZMAN CARSON CONSULTANTS
**COURT USE ONLY**

Telephone number: (901) 523-4587                Email: KGUnowsky@firsthorizon.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Duane Morris·

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SAN DIEGO
BOSTON
HOUSTON
LOS ANGELES
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
BOCA RATON
LAKE TAHOE

MEXICO CITY
ALLIANCE WITH
MIRANDA & ESTAVILLO

ASHLEY A. FEDERER
PERSONAL FAX: +1 215 827 5567
E-MAIL: AFederer@duanemorris.com

www.duanemorris.com

November 15, 2012

VIA FEDEX

Residential Capital Claims Processing
Center
c/o KCC
2335 Alaska Avenue
El Segundo, CA 90245

Re:    In re Residential Capital, LLC, Case No. 12-12020 (MG)
       United States Bankruptcy Court, Southern District of New York

Dear Sir/Madam:

Enclosed for filing please find the following original Proofs of Claim on behalf of The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Holders of the Certificates, First Horizon Mortgage Pass-Through Certificates Series FH06-FA2, by First Horizon Home Loans, a Division of First Tennessee Bank National Association, Master Servicer, in its Capacity as Agent for the Trustee under the Pooling and Servicing Agreement ("BNY Mellon"):

1.    Proof of Claim by BNY Mellon to be filed against GMAC Mortgage, LLC (Case No. 12-12032); and

2.    Proof of Claim by BNY Mellon to be filed against Executive Trustee Services, LLC (Case No. 12-12028).

Also enclosed are copies of the above-referenced Proofs of Claim. Please time-stamp the copies and return them to me in the enclosed SASE. Please do not hesitate to contact me if you have any questions.

Very truly yours,

Ashley A. Federer

AAF:vc
Enclosures

DUANE MORRIS LLP

## ADDENDUM TO PROOF OF CLAIM OF
## THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS
## TRUSTEE FOR THE HOLDERS OF THE CERTIFICATES, FIRST HORIZON
## MORTGAGE PASS-THROUGH CERTIFICATES SERIES FH06-FA2, BY FIRST
## HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK NATIONAL
## ASSOCIATION, MASTER SERVICER, IN ITS CAPACITY AS AGENT FOR THE
## TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT

1.      This Addendum is attached to and made part of the proof of claim (the "Proof of Claim") of The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Holders of the Certificates, First Horizon Mortgage Pass-Through Certificates Series FH06-FA2, by First Horizon Home Loans, a Division of First Tennessee Bank National Association, Master Servicer, in its Capacity as Agent for the Trustee under the Pooling and Servicing Agreement ("BNY Mellon") filed against Executive Trustee Services, LLC (the "Debtor") in its bankruptcy case.

2.      On May 14, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "Court").

3.      BNY Mellon is a creditor of the Debtor and an interested party in the Debtor's bankruptcy case.

4.      Prior to the Petition Date on or about February 21, 2006, Abderrehim Mekkoudi and Andrea Mekkoudi (collectively, the "Borrowers") executed and delivered to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for First Horizon Home Loan Corporation ("FHHLC"), a Deed of Trust (the "First DOT"), pursuant to which the Borrowers granted and conveyed to FHHLC, in trust, that certain real property commonly known as 2050-2052 17th Avenue, Santa Cruz, CA  95062 (the "Property").

5.    The First DOT was recorded in the Official Records of the County of Santa Cruz on February 28, 2006 as Instrument Number 2006-0011472. A true and correct copy of the First DOT is marked Exhibit "A," attached hereto and made a part hereof.

6.    The First DOT was to secure a loan from FHHLC to the Borrowers in the original principal amount of $735,700.00 (the "First Loan").

7.    Pursuant to that certain Pooling and Servicing Agreement dated March 1, 2006, the First Loan was sold and the First DOT was assigned to BNY Mellon. A true and correct copy of the Assignment of Deed of Trust from MERS to BNY Mellon is marked Exhibit "B," attached hereto and made a part hereof.

8.    BNY Mellon is the current holder of the First DOT.

9.    In addition to the First DOT, the Borrowers, also on or about February 21, 2006, executed and delivered to MERS, as nominee for FHHLC, a Deed of Trust and Request for Notice of Default (the "Second DOT"), pursuant to which the Borrowers granted and conveyed to FHHLC, in trust, the Property.

10.    The Second DOT was recorded in the Official Records of the County of Santa Cruz on February 28, 2006 as Instrument Number 2006-0011473. A true and correct copy of the Second DOT is marked Exhibit "C," attached hereto and made a part hereof.

11.    The Second DOT was to secure a loan from FHHLC to the Borrowers in the original principal amount of $144,300.00 (the "Second Loan").

12.    Upon information and belief, GMAC Mortgage Corporation ("GMAC Corp") was the mortgage loan servicer for the Second Loan and the Second DOT at the time the Substitution and the Reconveyance (as such terms are defined below) were recorded.

2

13.    On or about October 26, 2006, GMAC Corp merged into GMAC Mortgage, LLC ("GMAC LLC").

14.    Upon information and belief, GMAC LLC owns 100% of the equity in the Debtor.

15.    On or about June 20, 2006, GMAC Corp prepared and MERS executed a Substitution of Trustee (the "Substitution"), purportedly substituting the Debtor as Trustee under the First DOT. The Substitution was recorded in the Official Records of the County of Santa Cruz on June 26, 2006 as Instrument Number 2006-0037120. A true and correct copy of the Substitution is marked Exhibit "D," attached hereto and made a part hereof.

16.    Also on or about June 20, 2006, GMAC Corp prepared and the Debtor executed a Full Reconveyance (the "Reconveyance"), purportedly reconveying to the Borrowers all right, title and interest in and to the Property under the First DOT. The Reconveyance was recorded in the Official Records of the County of Santa Cruz on June 26, 2006 as Instrument Number 2006-0037121. A true and correct copy of the Reconveyance is marked Exhibit "E," attached hereto and made a part hereof.

17.    The Substitution and Reconveyance were prepared and recorded in error by GMAC Corp and the Debtor as at the time of the recording of the Reconveyance, the First Loan was not paid in full and neither GMAC Corp nor the Debtor had authority to record a reconveyance with respect to the First DOT.

18.    In fact, as of the Petition Date, the principal balance due under the First Loan totaled $735,700.00.

19.    Rather than reconvey the First DOT, the Debtor was supposed to reconvey the Second DOT, but erroneously listed the Instrument Number for the First DOT.

3

DM1\3601452.3

20.     This is evidenced by the fact that the MERS Number listed in the Reconveyance
(100085200571614652) relates to the Second DOT, not the First DOT.

21.     As a result of the Debtor's errors in executing and recording the Reconveyance, a
controversy has arisen regarding the effect of the Reconveyance and BNY Mellon has suffered
(and continues to suffer) damages.[1]

22.     Accordingly, BNY Mellon files this Proof of Claim for damages in the amount of
at least $735,700.00, representing, upon information and belief, the value of its fully secured
claim against the Borrowers at the time the First DOT was erroneously released by the Debtor.

## RESERVATION OF RIGHTS/NOTICE

23.     Notwithstanding the filing of this Proof of Claim, BNY Mellon reserves and
preserves the right: (a) to assert additional claims if its claims are estimated or liquidated; (b) to
assert any other claims, contingent or otherwise, that BNY Mellon may have against the Debtor;
and (c) to amend the Proof of Claim to include additional amounts and/or contingent or
unliquidated claims that BNY Mellon may have against the Debtor or any of the Debtor's
affiliates.

24.     BNY Mellon reserves and preserves all rights to assert any and all defenses,
including setoff and/or recoupment, against the Debtor or any of the Debtor's affiliates.

25.     BNY Mellon reserves the right to amend and/or further supplement this Proof of
Claim, including, without limitation, filing an amended claim once a court of competent
jurisdiction adjudicates and determines the claim.

---

[1] As a result of the Debtor's errors, BNY Mellon filed a Complaint in the Superior Court of the State of California
for the County of Santa Cruz, at Case No. CV169551, seeking declaratory relief, cancelation/reformation of the
Reconveyance, an equitable lien and/or to quiet title.

DM1\3601452.3

26.     The filing of this Proof of Claim is not intended, and should not be construed as:
(a) an election of remedies; (b) a waiver of any past, present or future default or event of default;
(c) a waiver or limitation of BNY Mellon's rights or defenses; (d) a consent to the jurisdiction of
this Court; (d) a consent to the entry of a final order by the Court or (e) a waiver of BNY
Mellon's claims against the Debtor or any of the Debtor's affiliates.

27.     The Proof of Claim is filed as a separate claim from other claims that may be filed
by or on behalf of BNY Mellon or any of its affiliates against the Debtor and does not replace or
supersede such other claims.

28.     All notices to BNY Mellon relating to this Proof of Claim should be sent to
counsel for BNY Mellon as follows:

> Lawrence J. Kotler, Esq.
> Duane Morris LLP
> 30 South 17th Street
> Philadelphia, PA 19103
> Facsimile: 215-979-1020

29.     BNY Mellon's counsel, Lawrence J. Kotler, Esq., may be reached by telephone at
(215) 979-1000 or by electronic mail at LJKotler@duanemorris.com.

DM1\3601452.3

# EXHIBIT "A"

RECORDED AT THE R_UEST OF
SANTA CRUZ TITLE COMPANY

Recording Requested By:

FIRST HORIZON HOME LOAN CORPORATION

Return To:

FHHLC - POST CLOSING MAIL ROOM

1555 W. WALNUT HILL LN. #200 MC 6712
IRVING, TX 75038

Prepared By:

FIRST HORIZON HOME LOAN CORPORATION

2160 41ST AVENUE, SUITE 101
CAPITOLA, CA 95010

2006-0011472

| Recorded | | REC FEE | 78.00 |
| Official Records | | | |
| County of | | | |
| Santa Cruz | | | |
| GARY E. HAZELTON | | | |
| Recorder | | | |
| | | | LAH |
| 08:00AM 28-Feb-2006 | | Page 1 of 19 | |

9548654 GEA

[Space Above This Line For Recording Data]   0057124778

# DEED OF TRUST

MIN 100085200571247784

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated **February 21st, 2006**
together with all Riders to this document.
(B) "Borrower" is
ABDERRBHIM MEKKOUDI &
ANDREA MEKKOUDI, Husband & Wife As Joint Tenants

Borrower's address is 2050-2052 17TH AVENUE,
SANTA CRUZ, California 95062                    . Borrower is the trustor under this Security Instrument.
(C) "Lender" is FIRST HORIZON HOME LOAN CORPORATION

Lender is a  CORPORATION
organized and existing under the laws of  THE STATE OF KANSAS

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3005 1/01

-6A(CA) (0207)
Page 1 of 15                    Initials: _____
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 4000 Horizon Way
        Irving, Texas 75063
(D) "Trustee" is FIRST HORIZON HOME LOAN CORPORATION,
        A KANSAS CORPORATION,
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated    February 21st, 2006
The Note states that Borrower owes Lender
~~SEVEN HUNDRED THIRTY FIVE THOUSAND SEVEN HUNDRED & 00/100~~                Dollars
(U.S. $    735,700.00  ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    MARCH 1, 2036
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

0057124778
VMP® -6A(CA) (0207)                  Page 2 of 18                Initials: [signature]    Form 3005 1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY.
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of                Santa Cruz                :
          [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
All that tract or parcel of land as shown on Schedule "A" attached hereto which is incorporated herein and made a part hereof.

Parcel ID Number: County: 029-071-14 City:          which currently has the address of
2050-2052 17TH AVENUE                                                          [Street]
SANTA CRUZ                          [City], California  95062      [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

0057124778
 -6A(CA) (0207)                    Page 3 of 15          Initials:            Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: _____

-6A(CA) (0207)                    Page 4 of 16                    Form 3005   1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

Initials: _____

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: _____

-5A(CA) (0207)                          Page 6 of 15                          Form 3005 1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22, or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If** (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: _____

-6A(CA) (0207)                    Page 7 of 15                    Form 3005  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its
secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the
Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes,
eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.
Although Lender may take action under this Section 9, Lender does not have to do so and is not under any
duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions
authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower
secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of
disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting
payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.
If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender
agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan,
Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason,
the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that
previously provided such insurance and Borrower was required to make separately designated payments
toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage
substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to
the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer
selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall
continue to pay to Lender the amount of the separately designated payments that were due when the insurance
coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss
reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that
the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings
on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in
the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes
available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage
Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was
required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower
shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss
reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement
between Borrower and Lender providing for such termination or until termination is required by Applicable
Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may
incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may
enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are
on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these
agreements. These agreements may require the mortgage insurer to make payments using any source of funds
that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance
premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any
other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive
from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange
for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an
affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the
insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for
Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount
Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the
Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may
include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

-5A(CA) (0207)    Page 9 of 15    Initials:    Form 3005  1/01

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

Description: Santa Cruz,CA Document-Year.DocID 2006.11472 Page: 10 of 19
Order: SANTA CRUZ Comment:

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Description: Santa Cruz,CA Document-Year.DocID 2006.11472 Page: 11 of 19
Order: SANTA CRUZ Comment:

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6A(CA) (0207)                    Page 12 of 15          Initials: [signature]          Form 3005  1/01

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

1

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____(Seal)
                                        ABDERRAHIM MEKKOUDI            -Borrower

_____        _____(Seal)
                                        ANDREA MEKKOUDI               -Borrower

_____(Seal)  _____(Seal)
                       -Borrower                               -Borrower

_____(Seal)  _____(Seal)
                       -Borrower                               -Borrower

_____(Seal)  _____(Seal)
                       -Borrower                               -Borrower

0057124778
VMP®-6A(CA) (0207)              Page 14 of 15                Form 3005  1/01

Description: Santa Cruz,CA Document-Year.DocID 2006.11472 Page: 14 of 19
Order: SANTA CRUZ Comment:

State of California
County of      SANTA CRUZ                                          } ss.

On    2/21/04                        before me,    Joyce E Avila, notary public
                                                                            personally appeared

ABDERREHIM MEKKOUDI  ANDREA MEKKOUDI

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

JOYCE E. AVILA
COMM. # 1391365
NOTARY PUBLIC-CALIFORNIA
SANTA CRUZ COUNTY
COMM. EXP. NOV. 21, 2006

0057124778
-6A(CA) (0207)                              Page 15 of 15

Initials: _____                          Form 3005  1/01

Order Number:  09548559 JEA

EXHIBIT "A"

The land referred to herein is described as follows:

SITUATE IN THE COUNTY OF SANTA CRUZ, STATE OF CALIFORNIA AND DESCRIBED AS
FOLLOWS:

BEGINNING AT A POINT ON THE WESTERN BOUNDARY OF THE LAND CONVEYED TO
LEONARD G. MARKS, ET UX., BY DEED RECORDED OCTOBER 23, 1944 IN VOLUME 484, PAGE
279, OFFICIAL RECORDS OF SANTA CRUZ COUNTY, FROM WHICH THE NORTHWESTERN
CORNER THEREOF BEARS NORTH 13° 53' WEST 226.07 FEET FROM THE NORTHWESTERN
CORNER OF THE LAND FIRST DESCRIBED IN THE DEED TO F.D. BALDWIN AND T.G.
MCCREARY, TRUSTEES, DATED SEPTEMBER 8, 1910 AND RECORDED IN VOLUME 225 OF
DEEDS, PAGE 306, SANTA CRUZ COUNTY RECORDS; THENCE FROM SAID POINT OF
BEGINNING ALONG THE WESTERN LINE OF SAID LAND CONVEYED TO MARKS SOUTH 13°
53' WEST 76.23 FEET TO THE SOUTHWESTERN CORNER OF SAID LAND OF MARKS; THENCE
ALONG THE SOUTHERN BOUNDARY OF SAID LAND OF MARKS, BEING THE NORTHERN
BOUNDARY OF LAND, NOW OR FORMERLY OF READER, SOUTH 78° 00' EAST 173.57 FEET
TO THE WESTERN BOUNDARY OF LAND, NOW OR FORMERLY OF LOUISE JACOBS; THENCE
ALONG THE WESTERN AND NORTHERN BOUNDARY THEREOF NORTH 12° 00' EAST 25.44
FEET AND SOUTH 78° 00' EAST 125.00 FEET TO THE SOUTHEASTERN CORNER OF THE
LAND OF CROSSLIN AS HEREINAFTER MENTIONED; THENCE ALONG THE EASTERN
BOUNDARY OF SAID LAND OF CROSSLIN NORTH 12° 00' EAST 123.61 FEET TO A POINT ON
THE NORTHERN BOUNDARY OF SAID LAND CONVEYED TO MARKS; THENCE ALONG THE
LAST MENTIONED BOUNDARY NORTH 78° 37' WEST 144.78 FEET, MORE OR LESS, TO A
POINT FROM WHICH THE NORTHWESTERN CORNER OF SAID LAND OF MARKS BEARS
NORTH 78° 37' WEST 150.0 FEET DISTANT; THENCE LEAVING SAID BOUNDARY SOUTH 13°
53' WEST 70.0 FEET; THENCE SOUTH 78° 37' WEST 150.0 FEET TO THE POINT OF
BEGINNING.

BEING A PART OF THE LAND CONVEYED TO FLOYD L. CROSSLIN, ET UX., BY DEED
RECORDED JULY 5, 1946 IN VOLUME 622, PAGE 216, OFFICIAL RECORDS OF SANTA CRUZ
COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LANDS LYING WITHIN THE EXTERIOR
BOUNDARIES OF 17TH AVENUE, AS DESCRIBED IN THE DEED TO THE COUNTY OF SANTA
CRUZ, RECORDED NOVEMBER 17, 1938 IN VOLUME 316, PAGE 274, OFFICIAL RECORDS OF
SANTA CRUZ COUNTY.

APN:    029-071-14

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **21st** day of **February, 2006**
and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
**FIRST HORIZON HOME LOAN CORPORATION**

(the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:

**2050-2052 17TH AVENUE, SANTA CRUZ, California 95062**
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In
addition to the Property described in the Security Instrument, the following items now or
hereafter attached to the Property to the extent they are fixtures are added to the Property
description, and shall also constitute the Property covered by the Security Instrument:
building materials, appliances and goods of every nature whatsoever now or hereafter
located in, on, or used, or intended to be used in connection with the Property, including,
but not limited to, those for the purposes of supplying or distributing heating, cooling,
electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security
and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks,
ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm
windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors,
cabinets, paneling and attached floor coverings, all of which, including replacements and
additions thereto, shall be deemed to be and remain a part of the Property covered by the
Security Instrument. All of the foregoing together with the Property described in the Security
Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred
to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to
or make a change in the use of the Property or its zoning classification, unless Lender has
agreed in writing to the change. Borrower shall comply with all laws, ordinances,
regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not
allow any lien inferior to the Security Instrument to be perfected against the Property
without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in
addition to the other hazards for which insurance is required by Section 5.

0057124778
MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01
**VMP**-57R (0411)
Page 1 of 3        Initials: _____
VMP Mortgage Solutions, Inc.
(800)521-7291

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Section 19 is deleted.

F. BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G. ASSIGNMENT OF LEASES. Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

0057124778

VMP®-57R (0411)                         Page 2 of 3                        Initials: [signature]  Form 3170 1/01

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)            _____ (Seal)
ABDERREHIM MEKKOUDI       -Borrower        ANDREA MEKKOUDI         -Borrower

_____ (Seal)            _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)            _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)            _____ (Seal)
                          -Borrower                                -Borrower

0057124778
-57R (0411)                    Page 3 of 3                    Form 3170 1/01

# EXHIBIT "B"

Page 1 of 2

Recording requested by:

When recorded mail to:

MetLife Home Loans a division of
MetLife Bank NA
4000 Horizon Way
Foreclosure Dept. #6205
Irving, TX 75063

APN: 029-071-14
TS #: CA-10-373674-CT
Order #: 30272866

MERS Phone No. 1-888-679-6377



2010-0030563 08/05/2010 08:04:38 AM
OFFICIAL RECORDS OF Santa Cruz County
Sean Saldavia Recorder
RECORDING FEE: $21.00
COUNTY TAX: $0.00
CITY TAX: $0.00



ADTR
2 PGS
RCD152

Space above this line for recorders use

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to

The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the holders of the
Certificates, First Horizon Mortgage Pass-Through Certificates Series FH06-FA2, by First Horizon
Home Loans, a division of First Tennessee Bank National Association, Master Servicer, in its
capacity as agent for the Trustee under the Pooling and Servicing Agreement

All beneficial interest under that certain Deed of Trust dated 2/21/2006 executed by ABDERREHIM
MEKKOUDI & ANDREA MEKKOUDI, HUSBAND & WIFE AS JOINT TENANTS, as Trustor(s) to FIRST
HORIZON HOME LOAN CORPORATION, A KANSAS CORPORATION, as Trustee and recorded as
Instrument No. 2006-0011472, on 2/28/2006, in Book XXX, Page XXX of Official Records, in the office of
the County Recorder of SANTA CRUZ County, CA together with the Promissory Note secured by said
Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

**Page 2 of 2**

TS # CA-10-373674-CT
Page 2

Dated: 8·2·10

**Mortgage Electronic Registration Systems, Inc., As Nominee for First Horizon Home Loan Corporation, It's Successors and Assigns, By Quality Loan Service Corporation, As Its Authorized Agent**

By: Tim Bargenquast, Vice President

State of California          )
County of San Diego          )

On 8·2·10 before me, **Brenda Susana Perez** the undersigned Notary Public, personally appeared **Tim Bargenquast** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _Brenda Susana Perez_ (Seal)
Brenda Susana Perez

BRENDA SUSANA PEREZ
Commission # 1693771
Notary Public - California
San Diego County
My Comm. Expires Sep 16, 2010

# EXHIBIT "C"

RECORDED AT THE REQUEST OF
SANTA CRUZ TITLE COMPANY

**2006-0011473**

Recording Requested By:
FIRST HORIZON HOME LOAN CORPORATION

| | |
|---|---|
| Recorded | REC FEE 61.00 |
| Official Records | |
| County of | |
| Santa Cruz | |
| GARY E. HAZELTON | |
| Recorder | |

Return To:
FHHLC - POST CLOSING MAIL ROOM

1555 W. WALNUT HILL LN. #200 MC 6712
IRVING, TX 75038

| | |
|---|---|
| | LMH |
| 08:00AM 28-Feb-2006 | Page 1 of 13 |

Prepared By:
FIRST HORIZON HOME LOAN CORPORATION

2160 41ST AVENUE, SUITE 101
CAPITOLA, CA 95010

9GW8669 GEA                                                   0057161465

# DEED OF TRUST AND REQUEST FOR NOTICE OF DEFAULT

MIN  100085200571614652

THIS DEED OF TRUST is made this     21st     day of     February, 2006     , among the Trustor,
ABDERREHIM MEKKOUDI &
ANDREA MEKKOUDI, Husband & Wife As Joint Tenants

whose address is
2050-2052 17TH AVENUE, SANTA CRUZ, California 95062                              (herein "Borrower"),

FIRST HORIZON HOME LOAN CORPORATION,                              (herein "Trustee"), and the Beneficiary,
Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's
successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number
of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
FIRST HORIZON HOME LOAN CORPORATION

("Lender") is organized and
existing under the laws of     THE STATE OF KANSAS                              , and has an address of
4000 Horizon Way, Irving, Texas 75063
BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys
to Trustee, in trust, with power of sale, the following described property located in the County of
Santa Cruz                              , State of California:
All that tract or parcel of land as shown on Schedule "A" attached
hereto which is incorporated herein and made a part hereof.

Parcel ID Number:   County: 029-071-14 City:                              which has the address of
2050-2052 17TH AVENUE                                                   [Street]
SANTA CRUZ                              [City], California   95062    [ZIP Code] (herein "Property Address");

CALIFORNIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

VMP-76N(CA) (0406)                    Form 3805
Page 1 of 7                           Amended 8/93
                                      Initials:
VMP Mortgage Solutions, Inc. (800)521-7291

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated **February 21st, 2006** and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $ **144,300.00** , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on **March 1st, 2021** ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

0057161465

VMP -76N(CA) (0406)    Page 2 of 7    Initials: _____    Form 3805

Description: Santa Cruz,CA Document-Year.DocID 2006.11473 Page: 2 of 13
Order: SANTA CRUZ Comment:

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has a priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict

Initials:

-76N(CA) (0401)                    Page 3 of 7                    Form 3805

shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and this Deed of Trust at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender, Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender, prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such

Initials:

Form 3805

Description: Santa Cruz,CA Document-Year.DocID 2006.11473 Page: 4 of 13
Order: SANTA CRUZ Comment:

action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. **Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

21. **Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. The procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

22. **Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924b(b) of the Civil Code of California.

23. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded    23 FEB 2006    , in Book    , Page    , records of    Santa Cruz    County, or filed for record with recorder's serial number 2006-0011473    ,    Santa Cruz    County, California, executed by   ABDERREHIM MEKKOUDI ANDREA MEKKOUDI

as trustor (or mortgagor) in which
FIRST HORIZON HOME LOAN CORPORATION    is named
as beneficiary (or mortgagee) and
FIRST HORIZON HOME LOAN CORPORATION,
as trustee

be mailed to FIRST HORIZON HOME LOAN CORPORATION
at 4000 Horizon Way, Irving, Texas 75063
ATTN:  DEFAULT DEPT.

0057161465

-76N(CA) (0408)    Page 6 of 7    Form 3805

Initials: _____

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

_____

State of California
County of SANTA CRUZ
On _____, before me _____

_____, personally appeared

_____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____ (Seal)          _____ (Seal)
ABDERRAHIM MEKKOUDI          -Borrower          ANDREA MEKKOUDI          -Borrower

_____ (Seal)          _____ (Seal)
                                      -Borrower                                                -Borrower

_____ (Seal)          _____ (Seal)
                                      -Borrower                                                -Borrower

_____ (Seal)          _____ (Seal)
                                      -Borrower                                                -Borrower

[Sign Original Only]

0057161465

VMP-76N(CA) (0406)                    Page 6 of 7                    Form 3805

Description: Santa Cruz,CA Document-Year.DocID 2006.11473 Page: 6 of 13
Order: SANTA CRUZ Comment:

State of California
County of    SANTA CRUZ
On    2/22/06    , before me    *Joyce E Avila, notary public*    , personally appeared

ABDERREHIM MEKKOUDI ANDREA MEKKOUDI

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

JOYCE E. AVILA
COMM. # 1381365
NOTARY PUBLIC-CALIFORNIA
SANTA CRUZ COUNTY
COMM. EXP. NOV. 21, 2006

0057161465

VMP-76N(CA) (0405)

Page 7 of 7

Initials:

Form 3805

Jrder Number: 09548659 JEA

EXHIBIT "A"

The land referred to herein is described as follows:

SITUATE IN THE COUNTY OF SANTA CRUZ, STATE OF CALIFORNIA AND DESCRIBED AS
FOLLOWS:

BEGINNING AT A POINT ON THE WESTERN BOUNDARY OF THE LAND CONVEYED TO
LEONARD G. MARKS, ET UX., BY DEED RECORDED OCTOBER 23, 1944 IN VOLUME 484, PAGE
279, OFFICIAL RECORDS OF SANTA CRUZ COUNTY, FROM WHICH THE NORTHWESTERN
CORNER THEREOF BEARS NORTH 13° 53' WEST 226.07 FEET FROM THE NORTHWESTERN
CORNER OF THE LAND FIRST DESCRIBED IN THE DEED TO F.D. BALDWIN AND T.G.
MCCREARY, TRUSTEES, DATED SEPTEMBER 8, 1910 AND RECORDED IN VOLUME 225 OF
DEEDS, PAGE 306, SANTA CRUZ COUNTY RECORDS; THENCE FROM SAID POINT OF
BEGINNING ALONG THE WESTERN LINE OF SAID LAND CONVEYED TO MARKS SOUTH 13°
53' WEST 76.23 FEET TO THE SOUTHWESTERN CORNER OF SAID LAND OF MARKS; THENCE
ALONG THE SOUTHERN BOUNDARY OF SAID LAND OF MARKS, BEING THE NORTHERN
BOUNDARY OF LAND, NOW OR FORMERLY OF READER, SOUTH 78° 00' EAST 173.57 FEET
TO THE WESTERN BOUNDARY OF LAND, NOW OR FORMERLY OF LOUISE JACOBS; THENCE
ALONG THE WESTERN AND NORTHERN BOUNDARY THEREOF NORTH 12° 00' EAST 25.44
FEET AND SOUTH 78° 00' EAST 125.00 FEET TO THE SOUTHEASTERN CORNER OF THE
LAND OF CROSSLIN AS HEREINAFTER MENTIONED; THENCE ALONG THE EASTERN
BOUNDARY OF SAID LAND OF CROSSLIN NORTH 12° 00' EAST 123.61 FEET TO A POINT ON
THE NORTHERN BOUNDARY OF SAID LAND CONVEYED TO MARKS; THENCE ALONG THE
LAST MENTIONED BOUNDARY NORTH 78° 37' WEST 144.78 FEET, MORE OR LESS, TO A
POINT FROM WHICH THE NORTHWESTERN CORNER OF SAID LAND OF MARKS BEARS
NORTH 78° 37' WEST 150.0 FEET DISTANT; THENCE LEAVING SAID BOUNDARY SOUTH 13°
53' WEST 70.0 FEET; THENCE SOUTH 78° 37' WEST 150.0 FEET TO THE POINT OF
BEGINNING.

BEING A PART OF THE LAND CONVEYED TO FLOYD L. CROSSLIN, ET UX., BY DEED
RECORDED JULY 5, 1946 IN VOLUME 622, PAGE 216, OFFICIAL RECORDS OF SANTA CRUZ
COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LANDS LYING WITHIN THE EXTERIOR
BOUNDARIES OF 17TH AVENUE, AS DESCRIBED IN THE DEED TO THE COUNTY OF SANTA
CRUZ, RECORDED NOVEMBER 17, 1936 IN VOLUME 316, PAGE 274, OFFICIAL RECORDS OF
SANTA CRUZ COUNTY.

APN:    029-071-14

0057161465

## RIDER TO DEED OF TRUST/MORTGAGE/SECURITY DEED

Date:        2/21/2006

The escrow of taxes and insurance required in Paragraph 2 of your DEED OF
TRUST/MORTGAGE/SECURITY DEED to

**FIRST HORIZON HOME LOAN CORPORATION**
is hereby waived and you are notified that you are not required to deposit with

**FIRST HORIZON HOME LOAN CORPORATION**
any of the amounts set forth in said paragraph, provided:

  (a)    Escrows for future taxes and insurance premiums are being collected and maintained by
         the holder or servicer of the mortgage loan superior to our lien; or
  (b)    If you pay your own taxes and insurance premiums, you fulfill your obligation to keep
         taxes and insurance premiums current with respect to the property secured hereby.

This waiver does not, in any way, release you from your obligation to make escrow payments of taxes
and insurance to the holder of any prior mortgage, nor does it relieve you of your obligation to keep
taxes and insurance premiums current with respect to the secured property.

All payments will be applied first to the accrued interest and next to the unpaid principal of your loan.
The exact amount of your final payment, finance charge, and total of payments will be somewhat more
or less than the amounts shown if we do not receive each payment on the scheduled payment date.

RECEIPT ACKNOWLEDGED:

_____        _____
ABDERREHIM MEKKOUDI                  ANDREA MEKKOUDI

_____        _____

_____        _____

_____        _____

2nd Rider                                            CB6D082 Revised 8/01

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 21st    day of   February, 2006
and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
   FIRST HORIZON HOME LOAN CORPORATION

                                                                          (the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:
   2050-2052 17TH AVENUE, SANTA CRUZ, California 95062
                    [Property Address]

   1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

   A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In
addition to the Property described in the Security Instrument, the following items now or
hereafter attached to the Property to the extent they are fixtures are added to the Property
description, and shall also constitute the Property covered by the Security Instrument:
building materials, appliances and goods of every nature whatsoever now or hereafter
located in, on, or used, or intended to be used in connection with the Property, including,
but not limited to, those for the purposes of supplying or distributing heating, cooling,
electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security
and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks,
ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm
windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors,
cabinets, paneling and attached floor coverings, all of which, including replacements and
additions thereto, shall be deemed to be and remain a part of the Property covered by the
Security Instrument. All of the foregoing together with the Property described in the Security
Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred
to in this 1-4 Family Rider and the Security Instrument as the "Property."

   B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to
or make a change in the use of the Property or its zoning classification, unless Lender has
agreed in writing to the change. Borrower shall comply with all laws, ordinances,
regulations and requirements of any governmental body applicable to the Property.

   C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not
allow any lien inferior to the Security Instrument to be perfected against the Property
without Lender's prior written permission.

   D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in
addition to the other hazards for which insurance is required by Section 5.

   0057161465
MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01

VMP®-57R (0411)
Page 1 of 3          Initials: _____
VMP Mortgage Solutions, Inc.
(800)521-7291

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Section 19 is deleted.

F. BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G. ASSIGNMENT OF LEASES. Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

0057161465

VMP®-57R (0411)                    Page 2 of 3                    Initials: _____

Form 3170 1/01

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
ABDERREHIM MEKKOUDI      -Borrower          ANDREA MEKKOUDI          -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                   -Borrower

0057161465
VMP-57R (0411)                    Page 3 of 3                    Form 3170 1/01

# BALLOON PAYMENT RIDER
## TO THE SECURITY INSTRUMENT

Borrower Name:    ABDERREHIM MEKKOUDI
                  ANDREA MEKKOUDI

Property Address:  2050-2052 17TH AVENUE
                   SANTA CRUZ, CA 95062

Loan Number:    0057161465

THE TERMS OF THE LOAN CONTAIN PROVISIONS WHICH WILL REQUIRE A BALLOON PAYMENT AT MATURITY.

THE AMORTIZATION OF PRINCIPAL AND INTEREST IS BASED ON A    30    YEAR FACTOR AND WOULD AMORTIZE THE PRINCIPAL LOAN ON A    30    YEAR SCHEDULE, BUT SINCE THE FULL BALANCE IS PAYABLE IN   180   MONTHS, A BALLOON PAYMENT OF $    128,958.20   WILL BE REQUIRED ON March 1st    , 2021 .

The loan is payable in full at the end of    15    year(s).  You must repay the entire principal balance of the loan and the unpaid interest then due.  The lender is under no obligation to refinance the loan at that time. You will, therefore, be required to make payment out of other assets you may own, or you will have to find a lender willing to lend you the money at the prevailing market rate, which may be considerably higher or lower than the rate on this loan.

If you refinance this loan at maturity, you may have to pay some or all closing costs normally associated with a new loan, even if you obtain refinancing from the same lender.

I/We hereby acknowledge receipt of the above notice relating to the balloon payment provision of this loan, which have also been explained to me/us.

_____ (Seal)        _____ (Seal)
ABDERREHIM MEKKOUDI        -Borrower     ABDREA MEKKOUDI           -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                -Borrower

Balloon Payment Rider – No CRR  0605              Page 1 of 1                    FH6D03X

Description: Santa Cruz,CA Document-Year.DocID 2006.11473 Page: 13 of 13
Order: SANTA CRUZ Comment:

# EXHIBIT "D"

**2006-0037120**

|  |  |
|---|---|
| Recorded | REC FEE    7.00 |
| Official Records | |
| County of | |
| Santa Cruz | |
| GARY E. HAZELTON | |
| Recorder | |
| | HW |
| 08:10AM 25-Jun-2006 | Page 1 of 1 |

Recording Requested By:
GMAC MORTGAGE CORPORATION

When Recorded Return To:
Current Trustor:
ABDERREHIM MEKKOUDI
20502052 17TH AVENUE
SANTA CRUZ, CA 95062

## SUBSTITUTION OF TRUSTEE

GMAC MORTGAGE CORPORATION #:0359274978 "MEKKOUDI" Lender ID:40335/57161465  Santa Cruz, California PIF: 06/06/2006

MERS #: 100065208571614852  VRU #: 1-888-679-6377

Prepared By:  Gina Herman,  GMAC MORTGAGE CORPORATION 3451 HAMMOND AVENUE, PO BOX 780, WATERLOO, IA 50704-0780 1-800-766-4622

WHEREAS, the undersigned is the present Beneficiary under the Deed of Trust described below as follows:
  Original Trustor : ABDERREHIM MEKKOUDI AND ANDREA MEKKOUDI Original Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC ("MERS") Dated: 02/27/2006 Recorded: 02/28/2006 as Instrument No.: 2006-0011472 in the County of Santa Cruz and State of California.

AND WHEREAS , the undersigned desires to substitute a different Trustee for the purpose of reconveying said Deed of TRUST; NOW THEREFORE the undersigned hereby substitutes EXECUTIVE TRUSTEE SERVICES, INC. as Trustee under said Deed of Trust.

On June 20th, 2006
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")

Barb Frost, Assistant Secretary

STATE OF Iowa
COUNTY OF Black Hawk

On June 20th, 2006, before me, M. CLARK, Notary Public, personally appeared Barb Frost, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

M. CLARK
Notary Expires: 05/17/2007  #726505

M. CLARK
NOTARIAL SEAL - STATE OF IOWA
COMMISSION NUMBER 728505
MY COMMISSION EXPIRES MAY 17, 2007

(This area for notarial seal)

"GCH"GCHGMAC*06/20/2006 07:07:15 PM* GMAC01GMAC00000000000000001113160* CASANTC* 0359274978 CASTATE_TRUST_SUB "GCH"GCHGMAC*

# EXHIBIT "E"

2006-0037121

| | |
|---|---|
| | Recorded | REC FEE    9.00 |
| | Official Records |
| | County of |
| | Santa Cruz |
| | GARY E. HAZELTON |
| | Recorder |
| | |
| | 08:19PM 26-Jun-2006 | Page 1 of 1 |

Recording Requested By:
GMAC MORTGAGE CORPORATION

When Recorded Return To:
Current Trustor:
ABDERREHIM MEKKOUDI
20602052 17TH AVENUE
SANTA CRUZ, CA 95062

**FULL RECONVEYANCE**

GMAC MORTGAGE CORPORATION #10369274979 "MEKKOUDI"   Lender ID:40335/57161465   Santa Cruz, California PIF,
06/05/2006
MERS #: 1000552005715145582 VRU #: 1-888-679-6377

Prepared By:   Gina Herman, GMAC MORTGAGE CORPORATION 3451 HAMMOND AVENUE, PO BOX 780, WATERLOO, IA
50704-0780 1-800-766-4622

EXECUTIVE TRUSTEE SERVICES, INC. as present Trustee for the Deed of Trust executed by ABDERREHIM
MEKKOUDI AND ANDREA MEKKOUDI as Trustor(s), Dated: 02/27/2006 Recorded: 02/28/2006 as Instrument
No.: 2006-0011472 of official Records in the office of the County Recorder of Santa Cruz, California having been
requested in writing, by the holder of the obligations secured by said Deed of Trust, to reconvey the estate granted to
trustee under said Deed of Trust, does hereby reconvey to the person or persons legally entitled thereto, without
warranty, all the estate, title and interest acquired by Trustee under said Deed of Trust.

IN WITNESS WHEREOF, EXECUTIVE TRUSTEE SERVICES, INC. as the Trustee has caused its corporate name
to be affixed by a duly authorized officer on the date shown in the acknowledgment certificate below:

On June 20th, 2006
By: EXECUTIVE TRUSTEE SERVICES, INC. as Trustee

MARY ANN HILMER , LIMITED SIGNING OFFICER

STATE OF Iowa
COUNTY OF Black Hawk

On June 20th, 2006, before me, M. CLARK, Notary Public, personally appeared MARY ANN HILMER, personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

M. CLARK
Notary Expires: 05/17/2007 #728505

| |
|---|
| M. CLARK |
| NOTARIAL SEAL - STATE OF IOWA |
| COMMISSION NUMBER 728505 |
| MY COMMISSION EXPIRES MAY 17, 2007 |

(This area for notarial seal)

*GCH*GCHGMAC*06/20/2006 07:37:15 PM* GMAC001GMAC0000000000000001113199* CASANTC* 0369274979 CASTATE_TRUST_REL *GCH*GCHGMAC*

escription: Santa Cruz,CA Document-Year.DocID 2006.37121 Page: 1 of 1