CORRECTED

Karen Michele Rozier
7957 Dahlia Circle
Buena Park, CA 90620
(410) 458-3772
*Without Assistance of Counsel*

### UNITED STATES BANKRUPTCY COURT

### SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re RESIDENTIAL CAPITAL, LLC et. al, | ) | Judge Hon. Martin Glenn, Presiding |
| Debtors. | ) | |
| | ) | Case No. 12-12020 (MG) |
| | ) | |
| | ) | Chapter 11 |
| | ) | |
| | ) | **CLAIMANT'S OPPOSITION TO BORROWER** |
| | ) | **CLAIMS TRUST'S MOTION PRESENTMENT OF** |
| | ) | **MICHALE J. TALARICO AS AN EXPERT BY** |
| | ) | **DECLARATION [Doc 7036]** |
| | ) | |
| | ) | |

I, Karen Michele Rozier, do hereby declare, swear, or affirm:

1. I am Karen Michele Rozier, the Claimant in this matter. I am over the age of 18. I was born Karen Michele Chapman and married David Eugene Rozier on June 24, 1996 in Maryland, taking his last name. I am a resident of the State of California and a citizen of Maryland by birth. I have personal knowledge of the facts herein, and, if called as a witness, will testify competently thereto.

2. I am competent to make this declaration. I was the Manager of Raytheon System Command's Material Quality and Supplier Development group. Part of my duties was evaluating the competency of others. I was also the Command Business Manager for the Naval Sea Systems Command- Corona Division, an organization of over 1,000. Part of my duties was evaluating the competency of others. Finally, I was for nine years a member of the Undergraduate Interviewing Panel of Orange County for Harvard University for nine years. Orange County has the largest and

CORRECTED

most competitive docket, according to Harvard University. During those nine years I rigorously recommended two students to Harvard. One was accepted despite me being a novice interviewer according to the older members with 15+ years. My student graduated with honors and her younger brother is performing well at Harvard as well. My second student was not accepted into Harvard but was accepted into the #1 school in the country for his intended field of study.

3. I reviewed the DECLARTION OF MICHAEL J. TALERICO IN SUPPORT OF MOTION OF RESCAP BORROWER CLAIMS TRUST FOR ORDER ESTIMATING CLAIMS AND ESTABLISHING THE DISPUTED CLAIMS RESERVE. I reviewed each of his claims and his methodology. In my expert opinion, he is not qualified to participate in these proceedings based on the information presented.

   a. Mr. Talerico highlighted his involvement with three companies but did not provide the size of the bankruptcies or detail his effort in those cases. He provided no indication that he is trained to handle the bankruptcy given its complexity and magnitude. According to public records, he has only worked on small challenges. A request of this magnitude should have been made by someone who has actually accomplished something more meaningful than working on a billion-dollar program. At age 25 in 1989, I led the first billion-dollar procurement of an equipment program (non-platform) for the U.S. Navy. That was when a billion dollars actually meant something. Mr. Talerico's involvement in a billion-dollar program when trillions are on the table is very unimpressive. He is clearly NOT expert in large programs and should be working only under competent supervision.

      i. Tower Automotive – sold for $1 billion

      ii. Hussey Copper, LLC - $107.8 billion, and its BK is still active

      iii. NewPage Corporation -- $1.4 billion

   b. According to his own biography, his specialization is "metals and manufacturing". Additionally, he focuses on "fresh-start" accounting and valuation. [Exhibit 1] His biography

provides no indication whatsoever that he has any experience in establishing Disputed Claims Reserves in a bankruptcy of this magnitude or complexity, in an area outside of his expertise.

    c. Mr. Talerico highlights his education, but none of his schools are recognized in their field.

        i. Indiana University in Pennsylvania, or IUP. Claimant does not mean to insult everyone, but the reality is that this is a very complicated case with major consequences. IUP is at best a good liberal arts school, ranked #630 overall on the Forbes list, #187 in the Northeast..

        ii. Ohio University isn't even the best school in Ohio. It is ranked #348 Overall by Forbes, and doesn't even crack the top 50 in the Midwest … a dismal #75. Its graduate program in Financial Economics is not ranked in the top 94 internationally, the limit of the rankings.

4. In short, absent his grades and independent validation of his qualifications, this Court should reject him as an expert based on his weak skills. If the court requires further evidence, the Court need only evaluate his careless evaluation.

5. Mr. Talerico's underlying assumption is that the large claims are "grossly inflated when compared to historical experience for these types of matters" (page 20, para. 34 iv.) but he gives no basis for his statement in this declaration. Without first explaining how these large claims differ (facts of case, circumstances of Claimant, Debtors' behavior to resolve, prior litigation), he could be making an apples-to-oranges comparison so his statement is one of opinion, and not something he can declare he knows. He is assuming that the Debtors are truthful with no basis for that trust as he is supposed to be providing an independent opinion .

6. Additionally he states as fact that the amount of the claim is the outlier without discussing if the facts of the case warrant the damages requested. For the record, "outlier" is a statistical term. As Claimant has successfully completed her doctoral requirements in statistics at Harvard University and Mr. Talerico has demonstrated no special knowledge of statistics or statistical terms, the

Court must reject his assertion that the amount of the claim is the problem. If Mr. Talerico can demonstrate four candidates in the rejected and expunged pool with similar characteristics as Claimant, then his assessment would be more accurate. For the record, Claimant with the alleged outlier claim was paying her mortgage (as were millions of other Claimants); is a female (did they discriminate against women?) ; African American (or did they discriminate against Blacks?); has an undergraduate degree in electrical engineering from a top ranked school Carnegie Mellon University;, was a Navy rocket scientist; has an MSIA/ MBA from Carnegie Mellon University; has a masters from Harvard; received full tuition plus stipend to pursue a doctorate at Harvard; was the first Black female admitted into that doctoral program; healed her brain-damaged/ lung damaged/ cerebral palsied/ blind son; speaks several languages; is a first generation college graduate; is certified at the highest levels for the Department of Defense's acquisition programs; and other accomplishments where Claimant could be generating income had it not been for Debtors wrongful acts.

7. As Debtors' predecessor WMC Mortgage, LLC verified prior to the wrongful acts, Claimant and her spouse were generating over $24,000 per month in income. Claimant has been thrust into poverty by Debtors' act. Mr. Talerico provided no indication that he evaluated the circumstances of the alleged outliers before classifying them as an outlier, indicative of incompetence.

8. Mr. Talerico also relies heavily on outdated models to come to his conclusions. He attempts to extrapolate but provides no rationale why extrapolation is the correct approach. A better approach would be to use the 80/20 rule, aka the Pareto Principal. Under the Pareto rule, based on the number of claims submitted, one would expect 607-claims to generate more than 80% of the damages. In this case, there are 597 claims remaining. This is within 1.6% of 607 and therefore statistically significant. Under the 80/20 rule, these 20% of the Claims should be entitled to 80% of the damages. A competent expert educated at a quality school that has worked on programs of any serious size would reach that same conclusion.

CORRECTED

9.  Finally, Mr. Talerico claims he reviewed the documents and that the Notice and Motion were properly served (page 3, 1st paragraph). As the Claims Trust did not serve Claimant with the package and provided no Proof of Service (and package did not arrive until June 14th), and provided no proof that it served the affected parties as required by Paragraphs 6(d), 11(a) – (b) and 11(f) of the Case Management Procedures Order approved by this Court on May 23, 2012 [Docket No. 141], his statement is clearly inaccurate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 10, 2014[1]

Executed in Buena Park, California

_Karen M Rozier_
Karen Michele Rozier

# EXHIBIT 1

# EXHIBIT 1



# Michael J. Talarico

Michael J. Talarico
**Managing Director**

Tel: +1.412.818.1100
Fax: +1.412.818.1188
Email: mike.talarico@fticonsulting.com

Michael Talarico is a managing director in the FTI Corporate Finance practice and is based in Pittsburgh. For the past 12 years, Mr. Talarico has provided financial advisory services to various parties in connection with distressed and underperforming companies. These parties include debtors, creditor committees and lenders. Services he has provided include business plan review and development; cost structure analysis; analysis of restructuring strategies; bankruptcy and contingency planning; short-term liquidity forecasting; liquidation analysis; business valuations; preference and fraudulent conveyance analyses and investigative accounting.

### Experience

Mr. Talarico joined FTI Consulting in September 2002 and since that time has worked as financial advisor to Wheeling-Pittsburgh Steel and Tower Automotive in their Chapter 11 proceedings. Mr. Talarico has provided assistance to Wheeling-Pittsburgh Steel in analyzing strategic alternatives and developing a reorganization plan, which was approved by the bankruptcy court and allowed the company to exit from Chapter 11 in 2003. Mr. Talarico is currently assisting Tower Automotive in many aspects of their Chapter 11 reorganization, including facility optimization analyses, review and reconciliation of reclamation claims, analysis of executory contract and leases, and provision of general bankruptcy guidance.

Mr. Talarico's industry experience has been focused on the metals and manufacturing industries. He has also consulted on several litigation matters in bankruptcy court concerning avoidance actions and "fresh-start" accounting.

Prior to joining FTI Consulting, Mr. Talarico worked for nine years at the Pittsburgh office of PricewaterhouseCoopers ("PwC") and its predecessor, Price Waterhouse, in their Business Recovery Services practice. While at PwC, Mr. Talarico served as financial advisor to various debtors, creditor committees and lenders in the metals and manufacturing industries. Representative clients include the official creditors' committees of Gulf States Steel and Safelite Glass, the trustee of Pittsburgh Food & Beverage, Harnischfeger Industries, Acme Metals, Cincinnati Microwave, Sharon Steel, Brothers Gourmet Coffee and the Foundation for New Era Philanthropy. Earlier in his career, Mr. Talarico worked in the Audit and Assurance practice of Price Waterhouse.

Mr. Talarico holds a B.S. in accounting from Indiana University of Pennsylvania. He is a certified public accountant, a certified insolvency and restructuring advisor and a chartered financial analyst. Mr. Talarico is a member of the Pennsylvania Institute of Certified Public Accountants, the Association of Insolvency & Restructuring Advisors, the Chartered Financial Analyst Institute and the Turnaround Management Association, where he has served as treasurer of the Pittsburgh Chapter.

Mr. Talarico's civic involvement has included service as a consultant to the transition committee of the Public Defender's and Solicitor's Office as well as being part of a commission to investigate the level of investment provided by the parent company of a downtown Pittsburgh department store.

**Office**
Foster Plaza 9
750 Holiday Drive, Suite 630
Pittsburgh, PA 15220
United States
TEL +1.412.818.1100
FAX +1.412.818.1188

**Expertise**
Corporate Finance
Valuation

**Related Industries**
Metals/Mining
Industrial Manufacturing

**Certifications**
CPA
CIRA
CFA

**Education**
B.S. in Accounting, Indiana University of Pennsylvania

**Association**
Association of Insolvency & Restructuring Advisors

Chartered Financial Analyst Institute

Pennsylvania Institute of Certified Public Accountants

Turnaround Management Association