Hearing Date and Time:  August 13, 2014 at 10:00 a.m. (Prevailing Eastern Time)
Response Date and Time:  July 25, 2014 at 4:00 p.m. (Prevailing Eastern Time)

**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for The ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**NOTICE OF RESCAP BORROWER CLAIMS TRUST'S**
**SIXTY-NINTH OMNIBUS OBJECTION TO CLAIMS**
**(NO LIABILITY BORROWER CLAIMS)**

**PLEASE TAKE NOTICE** that the undersigned have filed the attached *ResCap Borrower Claims Trust's Sixty-Ninth Omnibus Objection to Claims (No Liability Borrower Claims)* (the "Omnibus Objection"), which seeks to alter your rights by disallowing your claim against the above-captioned Debtors.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Omnibus Objection will take place on **August 13, 2014 at 10:00 a.m. (Prevailing Eastern Time)** before the Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District

ny-1148506

of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Room 501.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Omnibus Objection must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to be received no later than **July 25, 2014 at 4:00 p.m. (Prevailing Eastern Time)**, upon: (a) Chambers of the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408; (b) counsel to the ResCap Borrower Claims Trust, Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019 (Attention: Norman S. Rosenbaum and Jordan A. Wishnew); (c) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention: Linda A. Riffkin and Brian S. Masumoto); and (d) The ResCap Borrower Claims Trust, Polsinelli PC, 900 Third Avenue, 21st Floor, New York, NY 10022 (Attn: Daniel J. Flanigan).

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written response to the relief requested in the Omnibus Objection, the Bankruptcy Court may deem any opposition waived, treat the Omnibus Objection as conceded, and enter an order granting the relief requested in the Omnibus Objection without further notice or hearing.

ny-1148506

Dated:  June 25, 2014
        New York, New York

                                        Respectfully Submitted,


                                        /s/ Norman S. Rosenbaum
                                        Norman S. Rosenbaum
                                        Jordan A. Wishnew
                                        **MORRISON & FOERSTER LLP**
                                        250 West 55th Street
                                        New York, New York 10019
                                        Telephone:  (212) 468-8000
                                        Facsimile:  (212) 468-7900

                                        *Counsel for The ResCap Borrower
                                        Claims Trust*

ny-1148506

**Hearing Date and Time: August 13, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Date and Time: July 25, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for The ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**RESCAP BORROWER CLAIMS TRUST'S**
**SIXTY-NINTH OMNIBUS OBJECTION TO CLAIMS**
**(NO LIABILITY BORROWER CLAIMS)**

---

**THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM. CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON EXHIBIT A ATTACHED TO THE PROPOSED ORDER.**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT THE RESCAP BORROWER CLAIMS TRUST'S COUNSEL, JORDAN A. WISHNEW, AT (212) 468-8000.**

---

ny-1147207

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "Trust"), established pursuant to the terms of the Chapter 11 plan confirmed in the above captioned bankruptcy cases (the "Chapter 11 Cases"), as successor in interest to the above-captioned debtors (collectively, the "Debtors") for Borrower Claim (defined below) matters, by and through its undersigned counsel, respectfully represents:

## RELIEF REQUESTED

1. The Trust files this sixty-ninth omnibus objection to claims (the "Objection") pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and this Court's order approving procedures for the filing of omnibus objections to proofs of claim filed in these Chapter 11 Cases (the "Procedures Order") [Docket No. 3294], and seeks entry of an order (the "Proposed Order"), in a form substantially similar to that attached hereto as Exhibit 1, to disallow and expunge the claims listed on Exhibit A[1] annexed to the Proposed Order. In support of this Objection, the Trust submits the Declaration of Deanna Horst, Chief Claims Officer for the ResCap Liquidating Trust (the "Horst Declaration," attached hereto as Exhibit 2), the Declaration of P. Joseph Morrow IV (the "Morrow Declaration"), attached hereto as Exhibit 3, and the Declaration of Norman S. Rosenbaum of Morrison & Foerster LLP, counsel to the Trust (the "Rosenbaum Declaration," attached hereto as Exhibit 4).

2. The Trust examined the proofs of claim identified on Exhibit A to the Proposed Order and determined that the proofs of claim listed on Exhibit A (collectively, the "No Liability Borrower Claims") are not liabilities of the Debtors. This determination was made

---

[1] Claims listed on Exhibit A are reflected in the same manner as they appear on the claims register maintained by KCC (defined herein).

after the holders of the No Liability Borrower Claims were given an opportunity under the Procedures Order to supply additional documentation to substantiate their respective claims. Accordingly, the Trust seeks entry of the Proposed Order disallowing and expunging the No Liability Borrower Claims from the Claims Register.

3.  The proofs of claim identified on Exhibit A annexed to the Proposed Order solely relate to claims filed by current or former borrowers (collectively, the "Borrower Claims" and each a "Borrower Claim"). As used herein, the term "Borrower" means a person who is or was a mortgagor under a mortgage loan originated, serviced, and/or purchased or sold by one or more of the Debtors.[2]

4.  The Trust expressly reserves all rights to object on any other basis to any No Liability Borrower Claim as to which the Court does not grant the relief requested herein.

## JURISDICTION

5.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

*General Case Background*

6.  On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

---

[2] The terms "Borrower" and "Borrower Claims" are identical to those utilized in the Procedures Order [Docket No. 3294].

3

ny-1147207

7. On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine member official committee of unsecured creditors [Docket No. 102] (the "Creditors' Committee").

8. On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as such term is defined in the Plan) of the Plan occurred, and, among other things, the Trust was established [Docket No. 6137].

9. The Plan provides for the creation and implementation of the Trust, which is established for the benefit of Borrowers who filed Borrower Claims to the extent such claims are ultimately allowed either through settlement with the Borrower Claims Trustee or pursuant to an Order of the Court. See Plan, at Art. IV.F. The Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying Allowed Borrower Claims." See id.

*Claims-related Background*

10. On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases. Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

4

ny-1147207

11. On August 29, 2012, this Court entered an order approving the Debtors' motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No. 1309] (the "Bar Date Order"). The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribing the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "Governmental Bar Date"). Bar Date Order ¶¶ 2, 3. On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093]. The Governmental Bar Date was not extended.

12. On March 21, 2013, the Court entered the Procedures Order, which authorizes the Debtors to, among other things, file omnibus objections to no more than 150 claims at a time, on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order. See Procedures Order at 2-3.

13. Based on substantial input from counsel to the Creditors' Committee and its special counsel for Borrower issues, SilvermanAcampora LLP ("Special Counsel"), the Procedures Order includes specific protections for Borrowers and sets forth a process for the Debtors or any successor in interest to follow before objecting to certain categories of Borrower Claims (the "Borrower Claim Procedures"). The Borrower Claim Procedures provide, *inter alia*, that prior to objecting to Borrower Claims filed with no or insufficient documentation, the Debtors must send each such Borrower claimant a letter requesting additional documentation in support of the purported claim (the "Request Letter"). See Procedures Order at 4.

14. Beginning in May of 2013, the Debtors sent Request Letters, substantially in the form as those attached as Exhibit 5, to those Borrowers who filed the No Liability

5

Borrower Claims with insufficient documentation. The Request Letters state that the claimant must respond within thirty (30) days (the "Response Deadline") with an explanation that states the legal and factual reasons why the claimant believes it is owed money or is entitled to other relief from the Debtors and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for its claim. See Request Letters at 1. The Request Letters further state that if the claimant does not provide the requested explanation and supporting documentation within 30 days, then the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged. Id.

15. The Response Deadline has passed, and the Debtors and the Trust either did not receive any response to the Request Letters or received insufficient information to establish a basis for liability with respect to the applicable No Liability Borrower Claims. See Horst Declaration at ¶ 4.

## THE NO LIABILITY BORROWER CLAIMS SHOULD BE DISALLOWED AND EXPUNGED

16. Based upon its review of the proofs of claim filed on the Claims Register, the Trust determined that the No Liability Borrower Claims identified on Exhibit A annexed to the Proposed Order do not represent valid prepetition claims against the Debtors. If the No Liability Borrower Claims are not disallowed and expunged, then the parties who filed these proofs of claim may receive a wholly improper recovery to the detriment of other Borrowers who hold valid claims. See Horst Declaration ¶ 8.

17. Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim." 11 U.S.C. § 501(a). "The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes prima facie evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)." 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer eds., 16th

ed. rev. 2013). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such a claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." 11 U.S.C. § 502(b)(1).

18.     If an objection refuting at least one of the claim's essential allegations is asserted, however, the claimant has the burden to demonstrate the validity of the claim. See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); In re Adelphia Commc'ns Corp., Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

19.     The Debtors and the Trust diligently analyzed the No Liability Borrower Claims and the allegations set forth therein and examined the Debtors' books and records in order to assess the alleged liabilities asserted. See Horst Declaration at ¶¶ 3-5. In addition, the Debtors sent Request Letters to those claimants who filed No Liability Borrower Claims with insufficient supporting documentation to allow such claimants to provide additional support for their claims. The holders of the No Liability Borrower Claims that received Request Letters either failed to respond to the letters or failed to provide sufficient information to substantiate their claims. See id. at ¶ 4.

20.     The Trust's specific factual and/or legal reason(s) for objecting to the allowance of each No Liability Borrower Claim is set forth on Exhibit A to the Proposed Order under the heading titled "*No Liability Summaries*." In general, the Trust's objection to each No Liability Borrower Claim falls under one or more of the following thirteen categories:

(i) *General No Liability*. This category includes claims:
- relating to requests to reduce or forgive outstanding loan balances or to reduce interest rates;
- asserting that a Debtor is responsible for liabilities of non-Debtor entities;
- for which the claimants have, subsequent to filing the claims, admitted to the Debtors or Special Counsel that the Debtors have no liability; or
- that otherwise do not constitute a valid obligation of the Debtors (collectively, the "General No Liability Claims").

7

ny-1147207

To assess the validity of these claims, the Trust reviewed the Debtors' books and records, including (a) the claimant's transaction history showing the payments the claimant has made and the Debtors' application of those payments to principal, interest, fees, and escrows, as applicable (the "Loan Payment History"), (b) the Debtors' records tracking the history of the servicing of the claimant's loan, including but not limited to documenting instances of i) communication with the claimant, ii) letters and notices sent by the Debtors to the claimant, and iii) the Debtors' efforts to foreclose, conduct loss mitigation efforts, inspect properties, pay taxes and insurance on behalf of the claimant, and other standard servicing activity (collectively, the "Internal Servicing Notes"), and (c) other records as applicable. See Horst Decl. at ¶ 7(i). Based on its review, the Trust has determined that the Debtors are not liable for the General No Liability Claims. See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as a General No Liability Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more[3] of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:
- Loan Payment History;
- Internal Servicing Notes currently accessible to the Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust; or
- Other documents that are relevant to the reconciliation of the claim.[4]

(ii) **_General Servicing Issues_**. This category includes claims based on general servicing issues, including assertions that a Debtor misapplied mortgage payments, provided incorrect information or reporting to the claimant, made improper collection calls, failed to release a lien on a timely basis, failed to respond to Qualified Written Requests, wrongfully transferred servicing or wrongfully sold the claimant's loan (the "General Servicing Issues Claims"). To assess the validity of these claims, the Trust reviewed Internal Servicing Notes, Loan Payment History, letters between the Debtors and the applicable Borrower(s), executed mortgage notes and deeds of trust, and other relevant documents. See Horst Decl. at ¶ 7(ii).

Based on its review, the Trust has determined that the General Servicing Issues Claims are not valid obligations of the Debtors because: (a) the alleged events involving General Servicing Issues never took place; (b) the Debtor remedied the alleged error or

---

[3] Generally, for the purpose of clarification, the Trust is not suggesting that the listed documents in the respective objection categories are relevant to every Claim; rather, the Trust will provide the claimant and the Court with copies of only those relevant documents presently in its possession that substantiate the stated reason(s) for disallowance.

[4] Generally, the production of documents by the Trust (to claimants under any of the stated objection categories) will be subject to all applicable privileges, including without limitation, attorney-client, and where necessary, will be subject to a mutually acceptable Confidentiality Agreement.

8

ny-1147207

mishandling, and as a result, the Claimant did not incur any damages or failed to provide evidence of damages; and/or (c) the Debtor acted properly in servicing the loan, in accordance with the Debtors standard policies and procedures and the terms of the executed note and deed of trust. See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as a General Servicing Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors' in the course of their regularly conducted business activities:
- Loan Payment History;
- Internal Servicing Notes currently accessible to the Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Debtors' written communications to the claimant;
- Copies of lien releases; or
- Other documents that are relevant to the reconciliation of the claim.

(iii) ***Origination Issues***. This category includes claims based on loan origination issues, which include, without limitation, claims relating to disputes regarding the loan application and closing process, disclosures, loan terms, rights of rescission or a purportedly defective title exam. To assess the validity of these claims (the "Origination Issues Claims"), the Trust reviewed the Debtors' books and records, including the claimants' executed mortgage notes, to determine whether any Debtor was involved in the origination of the applicable loans. See Horst Decl. at ¶ 7(iii).

Based on its review of the Debtors' books and records and its review of applicable state and federal law, the Trust determined that the Debtors are not liable for the Origination Issues Claims because no Debtor entity was involved in the origination of the applicable loans and vicarious liability cannot be imputed to any Debtor in its capacity as servicer or assignee of the loans.[5] See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as an Origination Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:
- Internal Servicing Notes currently accessible to the Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;

---

[5] As noted in Exhibit A, to the extent the claimant asserts statutory claims related to origination of the loan, the Trust reviewed the applicable federal and state statutes and determined that such claims against servicers or loan assignees carry no successor liability. To the extent claimant asserts common-law claims, the Trust found no case precedent establishing assignee liability when a party is not involved with the origination of the loan, and the claimant did not provide any specific legal authority to substantiate its allegation.

9

ny-1147207

- Origination File; or
- Other documents that are relevant to the reconciliation of the claim.

(iv) *Escrow Issues*. This category includes claims based on the alleged improper application or calculation of escrow amounts (the "Escrow Issues Claims"). To assess the validity of these claims, the Trust examined the Debtors' books and records, including the Debtors' escrow receipts and payments, the annual escrow analysis sent to Borrowers and any Internal Servicing Notes and written communication between the Debtors and the applicable Borrower(s).

Based on its review, the Trust determined that the Debtors are not liable for the Escrow Issues Claims. See Horst Decl. at ¶ 7(iv). In cases where a claimant asserted that they were owed a refund, the Trust determined that the mortgage payments received were all correctly applied. In cases where a claimant asserted that the escrow collected was insufficient to cover the property taxes and insurance, the Trust reviewed the escrow statements issued to the claimant, which outlined the amounts paid that year compared to what was estimated, as well as Internal Servicing Notes to the extent that there was an escrow account added to the loan, and determined that they have no liability as long as all amounts received from the Borrower were accurately recorded because the Borrowers are liable for the taxes and insurance on their real property. In cases where a claimant asserted that it was owed a refund, the Trust looked at (1) the escrow statement issued to the claimant to determine if there was a refund due, (2) the history of the loan to determine if a check was issued for the refund and (3) the internal account notes to determine if there were discussions with the claimant regarding an escrow refund not being received, and found that any refunds due were previously paid. Moreover, to the extent that the Debtors' books and records indicated that the issues asserted by a claimant occurred after the Debtors ceased servicing the underlying loan, the Trust concluded that the Debtors had no liability for the claim. See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as an Escrow Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:
- Loan Payment History;
- Internal Servicing Notes currently accessible to the Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Debtors' written communications to the claimant;
- Escrow Statement;
- Loan Modification Agreement, if applicable; or
- Other documents that are relevant to the reconciliation of the claim.

(v) *Wrongful Foreclosure*. This category includes claims based, either directly or indirectly, on allegations of wrongful foreclosure by the Debtors (the "Wrongful Foreclosure Claims"). To assess the validity of these claims, the Trust examined the Debtors' books and records to verify that the Debtors foreclosed properly and, where applicable, took the

10

ny-1147207

appropriate loss mitigation steps. Specifically, the Trust reviewed Payment History, Internal Servicing Notes, as well as, where applicable, the claimants' loan modification applications, loan modification approval letters, loan modification denial letters, compliance with loan modifications (trial and/or permanent), compliance with any other payment plans (forbearance and repayment), short sale applications and history, investor guidelines and/or direction, breach letters, and/or foreclosure related documents. Where a claimant asserted that he or she did not execute the mortgage note, the Trust also examined Internal Servicing Notes to determine whether any previous identity theft claims were alleged, and compared the signatures on other executed documents in the claimant's file, as well as examining the Loan Payment History and any other information in the Debtors' possession including tax records reflecting whether the claimant deducted interest on the mortgage. Moreover, where a Wrongful Foreclosure Claim was based on issues related to a short sale, the Trust further reviewed the Debtors' records to determine whether a short sale approval had been requested, and, if so and if such request was denied, whether the reason for denial was proper.[6] See Horst Decl. at ¶ 7(v). Based on its review, the Trust determined that the Debtors are not liable for the Wrongful Foreclosure Claims. See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as a Wrongful Foreclosure Claim on <u>Exhibit A</u> to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes currently accessible to the Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Loan Modification Agreement, if applicable;
- Debtors' written communications to Claimant, including the following, if applicable:
  - Denial Letters,
  - Missing Items Letters,
  - Loan Modification Offers,
  - Signed Modification Agreement(s),
  - Breach of Contract Notice, and
  - Trial, Forbearance, or Foreclosure Repayment Plan Letters;
- Escrow Statement, if applicable;
- Pooling and Servicing Agreements, if applicable; or
- Other documents that are relevant to the reconciliation of the claim.

(vi) ***Standing Issues***. This category includes claims alleging that the Debtors lacked the standing to service, foreclose or otherwise enforce the terms of the claimant's loan (the

---

[6] Appropriate reasons for denying a short sale request include, without limitation, a claimant's failure to submit executed sale contracts, a claimant's failure to obtain approval from second lien holders and/or a claimant's short sale request did not comply with the investor's requirements.

11

ny-1147207

"Standing Issues Claims"). To assess the validity of these claims, the Trust reviewed the Debtors' books and records, including the claimant's mortgage or deed of trust, documents relating to chain of ownership, relevant assignments of interests in the loan, Loan Payment History, and Internal Servicing Notes. See Horst Decl. at ¶ 7(vi). Based on its review, the Trust has determined that the Debtors are not liable for the Standing Issues Claims because the Debtors had proper authority to service or foreclose the loan and to enforce the terms of the claimant's loan on behalf of the owner of the loan. See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as a Standing Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:
- Loan Payment History;
- Internal Servicing Notes currently accessible to the Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Mortgage Assignments;
- Loan Modification Agreement, if applicable;
- Debtors' written communications to Claimant, if applicable; or
- Other documents that are relevant to the reconciliation of the claim.

(vii) *Interest Rates and Fees Collected*. This category includes claims based on assertions that either (a) interest rates charged to the claimant were incorrect, incorrectly adjusted, or incorrectly not adjusted (the "Interest Rates Claims") or (b) the fees charged to the claimant were incorrect or inappropriate (the "Fees Collected Claims," and together with the Interest Rates Claims, the "Interest Rates and Fees Collected Claims"). To assess the validity of these claims, the Trust reviewed the Debtors' books and records, including the claimant's note, any adjustable rate rider and related documents, notices and/or adjustment letters sent to the claimant, Loan Payment History and fees charged. See Horst Decl. at ¶ 7 (vii).

Based on its review, the Trust has determined that the Debtors are not liable for the Interest Rates and Fees Collected Claims because the interest rates and fees charged were consistent with the governing loan documents, the Debtors' servicing policies, and if applicable, investor guidelines and/or servicing agreements. To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as an Interest Rates Claim or a Fees Collected Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:
- Loan Payment History;
- Internal Servicing Notes currently accessible to the Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Loan Modification Agreement, if applicable;
- Investor guidelines, if applicable;

12

ny-1147207

- Servicing agreement(s), if applicable;
- Debtors' written communications to the claimant, including, if applicable Rate Adjustment Letters; or
- Other documents that are relevant to the reconciliation of the claim.

(viii) *__Wrong Debtor__*. This category includes claims against one or more Debtors as the obligor when such claims are properly asserted, if at all, against another Debtor in the Chapter 11 Cases (the "__Wrong Debtor Claims__"). To assess the validity of the Wrong Debtor Claims, the Trust reviewed the Debtors' books and records. See Horst Decl. at ¶ 7(viii). Based on its review, the Trust determined that the Debtors are not liable for the Wrong Debtor Claims because the alleged Debtors that are subject to the claims were not in contractual privity with the claimant or otherwise have not connection to the Claimant. See id.[7] The documents reviewed by the Trust in reaching this determination are the same documents that support the other applicable bases for the Trust's objection to each Wrong Debtor Claim.

(ix) *__Amended and Superseded__*. This category includes claims that have been amended and superseded by at least one subsequently-filed, corresponding claim by the same creditor (the "__Amended Claims__").

Claims that are amended and superseded by subsequent proofs of claim filed by the same creditor are routinely disallowed and expunged. See, e.g., In re Enron Corp., Case No. 01 B 16034 (AJG), 2005 WL 3874285, at *1 n.1 (Bankr. S.D.N.Y. Oct. 5, 2005) (noting that "[i]n as much as the Initial Claim was amended and superseded by the Amended Claim, it was disallowed and expunged . . . ."); In re Best Payphones, Inc., Case No. 01-15472, 2002 WL 31767796, at *4, 11 (Bankr. S.D.N.Y. Dec. 11, 2002) (expunging amended, duplicative claim).

To confirm that a claim was amended and superseded by subsequently-filed claims, the Trust validated that (a) the claimant's assertions in subsequently-filed claim(s) included all of the assertions made in the Amended Claim, or if applicable (b) the claimant expressly stated within the subsequently-filed claim their intention to amend or replace the Amended Claim. See Horst Decl. at ¶ 7(ix).

(x) *__Late-Filed__*. This category includes claims (the "__Late-Filed Claims__") that were filed after November 16, 2012 (the "__Bar Date__"). In order to be timely-filed, proofs of claim must have been "actually received" on or before the Bar Date. The order setting the Bar Date expressly provides, in pertinent part, that "any holder of a claim against one or more of the Debtors who is required, but fails, to file a proof of such claim in appropriate form in accordance with this Order shall forever be barred, estopped, and enjoined from asserting such claim against the Debtors (or filing a proof of claim with respect thereto)."

---

[7] Nevertheless, if a Wrong Debtor Claim is not expunged as a result of this Objection, the Trust reserves the right to redesignate the claim against the correct Debtor entity.

13

ny-1147207

To confirm that a claim was late-filed, the Trust validated that (a) Debtors received the proof of claim after November 16, 2012, (b) KCC served Claimant with notice of the Bar Date at least 35 days prior to the Bar Date, and (c) the address to which the notice was sent was Claimant's address per the Debtors' servicing records at the time the notice was delivered. See Horst Decl. at ¶ 7(x); see also Morrow Declaration at ¶ 5.

(xi) *Insufficient Documentation*. This category includes claims that either (a) fail to identify the amount of the claim and the basis for claim, or (b) identify the claim amount but do not provide an explanation or attach any supporting documentation to substantiate the claim amount (the "Insufficient Documentation Claims").

The Debtors sent Request Letters in connection with all of the Insufficient Documentation Claims to the either the property address or email address marked on the proof of claim by Claimant as the "address where notices should be sent". See Horst Decl. at ¶ 7(xi). In each instance, Claimant either failed to respond or provided insufficient information to establish a basis for liability. As a result, the Claimant has failed to satisfy its initial burden to state a claim against the Debtors and therefore, the Trust has no liability for the Insufficient Documentation Claims. See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as an Insufficient Documentation Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of the Request Letters prepared by the Debtors. See id.

(xii) *Estoppel by Waiver*.

This category includes claims (the "Waived Claims") that are barred from relief under the doctrine of judicial estoppel. Judicial estoppel applies when (i) a party asserts a position in a proceeding, but thereafter assumes a contrary position, and (ii) such inconsistences create the inference the court has been misled. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). Pursuant to 11 U.S.C. § 521(1), a debtor is required to disclose all of his/her actual or potential assets, which would include any known causes of action. See 11 U.S.C. §§ 521(1), 1306; Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116 (2d Cir. 2008) (citing 11 U.S.C. §§ 521(a)(1)(B)(i), (iii)); Rosenshein v. Kleban, 918 F. Supp. 98 (S.D.N.Y. 1996). "If the debtor has enough information … prior to confirmation to suggest that it may have a possible cause of action, then it is a 'known' cause of action such that it must be disclosed." In re Coastal Plains, 179 F.3d 197, 208 (5th Cir. 1999) (citations omitted). Undisclosed assets automatically remain property of the estate, and as a result, even after discharge of the bankruptcy estate, the debtor lacks standing to pursue a claim that he failed to disclose. See Rosenshein, 918 F. Supp. at 103.

This Court, following numerous other courts in this circuit, has applied the doctrine of judicial estoppel to disallow and expunge claims where the claimant failed to disclose the claim in their own bankruptcy proceeding. See *Memorandum Opinion and Order Sustaining Objection and Expunging Claim No. 4443 by Corla Jackson* [Docket No. 6363]. Similarly, each of the Claimants asserting a Waived Claim failed to affirmatively assert the Waived Claim in his or her respective bankruptcy cases (all of which have been closed). As a result, each Claimant effectively waived the right to assert his or her

14

Waived Claim and is estopped from bringing those same claims in the Debtors' Chapter 11 cases. See Horst Decl. at ¶ 7(xii). Additionally, even if the Waived Claims were not barred by judicial estoppel, none of the Claimant's that filed Waived Claims have standing to pursue them because the Waived Claims are property of each Claimant's bankruptcy estate. As a result, the Waived Claims are also barred for lack of standing.

With respect to the Waived Claims, the Trust examined the proofs of claims in conjunction with public bankruptcy records and validated that:
(a) Claimant filed for individual bankruptcy protection and received a discharge,
(b) the basis for claim comprising each of the Waived Claims involves assertions and alleged damages that occurred prior to either (i) Claimant's respective individual bankruptcy filing(s) or (ii) Claimant's filing of amended schedules in those cases,
(c) Claimant did not include the Waived Claims in the schedule of assets filed by Claimant in their bankruptcy case(s), and
(d) Claimant never raised such claims in any other proceeding during their individual bankruptcy case (e.g., an adversary proceeding). See id.

(xiii) **_Loan Modification_**. This category includes claims based on loan modification issues (the "Loan Modification Claims"), which allege, among other things, that the Debtors (a) failed to provide a loan modification,[8] or (b) provided a loan modification, but the claimant believes the terms of the modification were not as favorable to the claimant as those to which claimant believed he or she was entitled. To assess the validity of these claims, the Trust examined the Debtors' books and records to verify that the Debtors followed the applicable investor guidelines and policies regarding loan modifications. Specifically, the Trust reviewed Internal Servicing Notes, Loan Payment History, and, where applicable, loan modification agreements, loan modification applications, loan modification denial letters, loan modification approval letters, the claimant's compliance with modifications (trial and/or permanent) and any instructions or guidelines provided by the investor for the claimant's loan. See Horst Decl. at ¶ 7(xiii).

Based on its review, the Trust determined that the Debtors are not liable for the Loan Modification Claims because: (a) in cases where a loan modification request was denied, the Debtors complied with the applicable investor guidelines and policies governing the loan modification process; (b) in the cases where the claimant obtained a loan modification, the claimant was not damaged by the loan modification assistance provided; and (c) in the cases where the claimant disputes the terms of his or her loan modification, the Trust verified that (i) the claimant agreed to the terms by executing the underlying agreement, and (ii) the Debtors administered or serviced the loan modification

---

[8] As a regular part of the Debtors' business practices, the Debtors offered mortgage loan modifications to Borrowers in financial distress, pursuant to certain guidelines established by the investors ("Traditional Modifications"). The Home Affordable Modification Program ("HAMP") is an administrative program that was implemented in April 2009 by the United States Treasury Department to help eligible homeowners with loan modifications on their home mortgage debt. HAMP provided the Debtors with an additional type of loan modification (a "HAMP Modification") for assisting eligible Borrowers experiencing financial distress.

15

ny-1147207

in accordance with the governing loan documents, the Debtors' servicing policies, and if applicable, investor guidelines and/or servicing agreements. See id.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as a Loan Modification Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes currently accessible to the Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Loan Modification Agreement, if applicable;
- Investor guidelines, if applicable;
- Servicing agreement(s), if applicable;
- Workout Packages;
- Debtors' written communications to Claimant, including the following, if applicable:
  - Denial Letters,
  - Missing Items Letters,
  - Loan Modification Offers,
  - Signed Mod Agreement(s),
  - Breach of Contract Notice(s), and
  - Trial, Forbearance, or Foreclosure Repayment Plan Letters;
- Escrow Statement; or
- Other documents that are relevant to the reconciliation of the claim.

21. To prevent the claimants that filed the No Liability Borrower Claims from receiving improper recoveries to the detriment of other Borrowers holding valid claims, the Trust requests that the Court disallow and expunge in their entirety each of the No Liability Borrower Claims.

## NOTICE

22. The Trust has served notice of this Objection in accordance with the Case Management Procedures entered on May 23, 2012 [Docket No. 141] and the Procedures Order. The Trust submits that no other or further notice need be provided.

16

ny-1147207

## NO PRIOR REQUEST

23.　　No previous request for the relief sought herein as against the holders of the No Liability Borrower Claims has been made by the Trust to this or any other court.

## CONCLUSION

WHEREFORE, the Trust respectfully requests that the Court enter an order substantially in the form of the Proposed Order granting the relief requested herein and granting such other relief as is just and proper.

Dated: June 25, 2014
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　 /s/ Norman S. Rosenbaum
　　　　　　　　　　　　　　　　　　　　　　　　Norman S. Rosenbaum
　　　　　　　　　　　　　　　　　　　　　　　　Jordan A. Wishnew
　　　　　　　　　　　　　　　　　　　　　　　　MORRISON & FOERSTER LLP
　　　　　　　　　　　　　　　　　　　　　　　　250 West 55th Street
　　　　　　　　　　　　　　　　　　　　　　　　New York, New York 10019
　　　　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 468-8000
　　　　　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 468-7900

　　　　　　　　　　　　　　　　　　　　　　　　*Counsel for The ResCap Borrower*
　　　　　　　　　　　　　　　　　　　　　　　　*Claims Trust*