**<u>Exhibit 2</u>**

**Horst Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF DEANNA HORST IN SUPPORT OF**
**RESCAP BORROWER CLAIMS TRUST'S SIXTY-NINTH OMNIBUS**
**OBJECTION TO CLAIMS (NO LIABILITY BORROWER CLAIMS)**

I, Deanna Horst, hereby declare as follows:

1. I am the Chief Claims Officer for The ResCap Liquidating Trust (the "Liquidating Trust"),[1] and I previously served as Chief Claims Officer for Residential Capital, LLC and its affiliates ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I have been employed by affiliates of ResCap since August of 2001. In June 2012, I became Senior Director of Claims Management for ResCap and in October of 2013, I became the Chief Claims Officer. I began my association with ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the Debtors' responsible lending on-site due diligence program. In 2002, I became the Director of Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance—a position I held until 2006, at which time I became the Vice President of the Credit Risk Group, managing Correspondent and Broker approval and monitoring. In 2011, I became the Vice President, Business Risk and Controls, and supported GMAC Mortgage, LLC and Ally Bank in this role.

---

[1] The Liquidating Trust and the Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among of things, provides the Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Trust in performing its obligations.

ny-1147208

In my current position, I am responsible for Claims Management and Reconciliation and Client Recovery. I am authorized to submit this declaration (the "Declaration") in support of *ResCap Borrower Claims Trust's Sixty-Ninth Omnibus Objection to Claims (No Liability Borrower Claims)* (the "Objection").[2]

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents and information I have received through my discussions with former members of the Debtors' management or other former employees of the Debtors, the Debtors, the Liquidating Trust and the Trust's professionals and consultants, and/or Kurtzman Carson Consultants LLC ("KCC"), the Debtors' noticing and claims agent. If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

3. In my capacity as Chief Claims Officer, I am intimately familiar with the claims reconciliation process in these Chapter 11 Cases. Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' books and records, the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents. I or my designee at my direction have reviewed and analyzed the proof of claim forms and supporting documentation, if any, filed by the claimants listed on Exhibit A annexed to the Proposed Order. Since the Plan became effective and the Trust was established, I, along with other members of the Liquidating Trust's management or other employees of the Liquidating Trust have consulted with the Trust to continue the claims

---

[2] Defined terms used but not defined herein shall have the meanings ascribed to such terms as set forth in the Objection.

2

ny-1147208

reconciliation process, analyze claims, and determine the appropriate treatment of the same. In connection with such review and analysis, where applicable, I or the Liquidating Trust personnel under my supervision, and the Liquidating Trust's and the Trust's professional advisors have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Debtors' books and records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the Claims Register maintained in the Debtors' Chapter 11 Cases.

4. Under my supervision, considerable resources and time have been expended to ensure a high level of diligence in reviewing and reconciling the proofs of claim filed in these Chapter 11 Cases. The Liquidating Trust, in support of the Trust, diligently evaluated any information provided by the claimants who filed the No Liability Borrower Claims, listed on Exhibit A to the Proposed Order. In accordance with the Borrower Claim Procedures, the Debtors previously contacted those Borrowers who filed the No Liability Borrower Claims whose claims were filed with insufficient or no supporting documentation and requested that they provide additional information so that the Debtors could reconcile such claimants' filed claims with the Debtors' books and records. Beginning in May of 2013, the Debtors sent Request Letters, substantially in the form as those attached at Exhibit 4 to the Objection, to the applicable Borrowers requesting additional documentation in support of their respective No Liability Borrower Claims. The Borrowers who received the Request Letters either failed to respond to the Debtors' requests or failed to provide sufficient information to establish a basis for liability.

5. At my direction and with my oversight, the Liquidating Trust, in support of the Trust, thoroughly reviewed the No Liability Borrower Claims listed under the heading

3

ny-1147208

*"Claims to be Disallowed and Expunged"* on Exhibit A to the Proposed Order, together with information contained within the Debtors' books and records.

6. These efforts led to the conclusion and belief that there is no present liability due and owing to such claimants and the specific objections to the allowance of such claims are set forth on Exhibit A to the Proposed Order in the column titled *"No Liability Summaries."* The explanations for the requested disallowance of each claim set forth under the heading titled *"No Liability Summaries"* are incorporated by reference into this Declaration as if fully set forth herein.

7. In general, the Trust's objection to each No Liability Borrower Claim falls under one or more of the following thirteen categories:

(i) *General No Liability*. This category includes claims:
- relating to requests to reduce or forgive outstanding loan balances or to reduce interest rates;
- asserting that a Debtor is responsible for liabilities of non-Debtor entities;
- for which the claimants have, subsequent to filing the claims, admitted to the Debtors or Special Counsel that the Debtors have no liability; or
- that otherwise do not constitute a valid obligation of the Debtors (collectively, the "General No Liability Claims").

To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including (a) the claimant's transaction history showing the payments the claimant has made and the Debtors' application of those payments to principal, interest, fees, and escrows, as applicable (the "Loan Payment History"), (b) the Debtors' records tracking the history of the servicing of the claimant's loan, including but not limited to documenting instances of i) communication with the claimant, ii) letters and notices sent by the Debtors to the claimant, and iii) the Debtors' efforts to foreclose, conduct loss mitigation efforts, inspect properties, pay taxes and insurance on behalf of the claimant, and other standard servicing activity (collectively, the "Internal Servicing Notes"), and (c) other records that are specifically identified in the Objection. See Objection at pp. 7-8. Based on this review, the General No Liability Claims are not valid liabilities of the Debtors.

(ii) *General Servicing Issues*. This category includes claims based on general servicing issues, including assertions that a Debtor misapplied mortgage payments, provided incorrect information or reporting to the claimant, made improper collection calls, failed

4

ny-1147208

to release a lien on a timely basis, failed to respond to Qualified Written Requests, wrongfully transferred servicing or wrongfully sold the claimant's loan (the "General Servicing Issues Claims"). To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the Internal Servicing Notes, Loan Payment History, letters between the Debtors and the applicable Borrower(s), executed mortgage notes and deeds of trust, and other relevant documents that are specifically identified in the Objection. See Objection at pp. 8-9.

Based on this review, the General Servicing Issues Claims are not valid obligations of the Debtors because: (a) the alleged events involving General Servicing Issues never took place; (b) the Debtor remedied the alleged error or mishandling, and as a result, the Claimant did not incur any damages or failed to provide evidence of damages; and/or (c) the Debtor acted properly in servicing the loan, in accordance with the Debtors' standard policies and procedures and the terms of the executed note and deed of trust.

(iii) *Origination Issues*. This category includes claims based on loan origination issues, which include, without limitation, claims relating to disputes regarding the loan application and closing process, disclosures, loan terms, rights of rescission or a purportedly defective title exam (the "Origination Issues Claims"). To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the claimants' executed mortgage notes and other documents that are specifically identified in the Objection, see Objection at pp. 9-10, to determine whether any Debtor was involved in the origination of the applicable loans.

Based on this review and the Trust's review of applicable state and federal law, the Origination Issues Claims are not valid liabilities of the Debtors because no Debtor entity was involved in the origination of the applicable loans.

(iv) *Escrow Issues*. This category includes claims based on the alleged improper application or calculation of escrow amounts (the "Escrow Issues Claims"). To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the Debtors' escrow receipts and payments, the annual escrow analysis sent to Borrowers, and any Internal Servicing Notes and written communication between the Debtors and the applicable Borrower(s) as well as other documents that are specifically identified in the Objection. See Objection at p. 10.

Based on this review, the Escrow Issues Claims are not valid liabilities of the Debtors. In cases where a claimant asserted that they were owed a refund, the mortgage payments received were all correctly applied. In cases where a claimant asserted that the escrow collected was insufficient to cover the property taxes and insurance, the Trust reviewed the escrow statements issued to the claimant, which outlined the amounts paid that year

compared to what was estimated, as well as Internal Servicing Notes to the extent that there was an escrow account added to the loan, and determined that the Debtors have no liability as long as all amounts received from the Borrower were accurately recorded because the Borrowers are liable for the taxes and insurance on their real property. In cases where a claimant asserted that it was owed a refund, the Trust looked at (1) the escrow statement issued to the claimant to determine if there was a refund due, (2) the history of the loan to determine if a check was issued for the refund and (3) the internal account notes to determine if there were discussions with the claimant regarding an escrow refund not being received, and found that any refunds due were previously paid. Moreover, to the extent that the Debtors' books and records indicated that the issues asserted by a claimant occurred after the Debtors ceased servicing the underlying loan, the Debtors have no liability for the claim.

(v) *Wrongful Foreclosure*. This category includes claims based, either directly or indirectly, on allegations of wrongful foreclosure by the Debtors (the "Wrongful Foreclosure Claims").

To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, to verify that the Debtors foreclosed properly and, where applicable, took the appropriate loss mitigation steps. Specifically, the Trust reviewed Payment History, Internal Servicing Notes, as well as, where applicable, the claimants' loan modification applications, loan modification approval letters, loan modification denial letters, compliance with loan modifications (trial and/or permanent), compliance with any other payment plans (forbearance and repayment), short sale applications and history, investor guidelines and/or direction, breach letters, and/or foreclosure related documents. Where a claimant asserted that he or she did not execute the mortgage note, the Trust also examined Internal Servicing Notes to determine whether any previous identity theft claims were alleged, and compared the signatures on other executed documents in the claimant's file, as well as examining the Loan Payment History and any other information in the Debtors' possession including tax records reflecting whether the claimant deducted interest on the mortgage. Moreover, where a Wrongful Foreclosure Claim was based on issues related to a short sale, the Trust further reviewed the Debtors' records to determine whether a short sale approval had been requested, and, if so and if such request was denied, whether the reason for denial was proper.[3] See Objection at p. 11.

Based on this review, the Wrongful Foreclosure Claims are not valid liabilities of the Debtors.

(vi) *Standing Issues*. This category includes claims alleging that the Debtors lacked standing to service, foreclose or otherwise enforce the terms of the claimant's loan (the "Standing Issues Claims"). To assess the validity of these claims, the Liquidating Trust,

---

[3] Appropriate reasons for denying a short sale request include, without limitation, a claimant's failure to submit executed sale contracts, a claimant's failure to obtain approval from second lien holders and/or a claimant's short sale request did not comply with the investor's requirements.

6

ny-1147208

in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the claimant's mortgage or deed of trust, documents relating to chain of ownership, relevant assignments of interests in the loan, Loan Payment History, and Internal Servicing Notes. Based on this review, the Standing Issues Claims are not valid liabilities of the Debtors because the Debtors had proper authority to service or foreclose the loan and to enforce the terms of the claimant's loan on behalf of the owner of the loan. See Objection at pp. 11-12.

(vii) *Interest Rates and Fees Collected*. This category includes claims based on assertions that either (a) interest rates charged to the claimant were incorrect, incorrectly adjusted, or incorrectly not adjusted (the "Interest Rates Claims") or (b) the fees charged to the claimant were incorrect or inappropriate (the "Fees Collected Claims," and together with the Interest Rates Claims, the "Interest Rates and Fees Collected Claims"). To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the claimant's note, any adjustable rate rider and related documents, notices and/or adjustment letters sent to the claimant, Loan Payment History and fees charged, and other documents that are specifically identified in the Objection. See Objection at p. 12. Based on this review, the Interest Rates and Fees Collected Claims are not valid liabilities of the Debtors because the interest rates and fees charged were consistent with the governing loan documents, the Debtors' servicing policies, and if applicable, investor guidelines and/or servicing agreements.

(viii) *Wrong Debtor*. This category includes claims against one or more Debtors as the obligor when such claims are properly asserted, if at all, against another Debtor in the Chapter 11 Cases (the "Wrong Debtor Claims"). To assess the validity of the Wrong Debtor Claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records. Based on this review, the Wrong Debtor Claims are not valid liabilities of the Debtors because the alleged Debtors that are subject to the claims were not in contractual privity with the claimant or otherwise have no connection to the claimant. The documents that were reviewed in reaching this determination are the same documents that support the other applicable bases for the Trust's objection to each Wrong Debtor Claim. See Objection at p. 13.

(ix) *Amended and Superseded*. This category includes claims that have been amended and superseded by at least one subsequently-filed, corresponding claim by the same creditor (the "Amended Claims").

To confirm that a claim was amended and superseded by subsequently-filed claims, the Trust validated that (a) the claimant's assertions in subsequently-filed claim(s) included all of the assertions made in the Amended Claim, or if applicable (b) claimant expressly stated within the subsequently-filed claim their intention to amend or replace the Amended Claim. See Objection at p. 13.

7

(x) *Late-Filed*. This category includes claims (the "Late-Filed Claims") that were filed after November 16, 2012 (the "Bar Date").

To confirm that a claim was late-filed, the Trust validated that (a) the Debtors received the proof of claim after November 16, 2012, (b) KCC served Claimant with notice of the Bar Date at least 35 days prior to the Bar Date, and (c) the address to which the notice was sent was Claimant's address per the Debtors' servicing records at the time the notice was delivered. See Morrow Declaration ¶ 5, attached to the Objection as Exhibit 3.

(xi) *Insufficient Documentation*. This category includes claims that either (a) fail to identify the amount of the claim and the basis for claim, or (b) identify the claim amount but do not provide an explanation or attach any supporting documentation to substantiate the claim amount (the "Insufficient Documentation Claims").

The Debtors sent Request Letters in connection with all of the Insufficient Documentation Claims to the either the property address or email address marked on the proof of claim by Claimant as the "address where notices should be sent". In each instance, Claimant either failed to respond or provided insufficient information to establish a basis for liability. See Objection at p. 14.

To substantiate this determination, the Trust is prepared to provide the Court and each claimant whose claim is identified as an Insufficient Documentation Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of the Request Letters prepared by the Debtors.

(xii) *Estoppel by Waiver*.

This category includes claims barred from relief because the Claimants effectively waived their right to pursue the Claim against the Trust because the Claimant failed to affirmatively assert the Waived Claims in their respective bankruptcy cases (all of which have been closed), and therefore, it is my understanding that they are judicially estopped from bringing those same claims in the Debtors' Chapter 11 Cases (the "Waived Claims"). See Objection at pp. 14-15.

With respect to the Waived Claims, the Trust examined the proofs of claims in conjunction with public bankruptcy records and validated that:
    (a) Claimant filed for individual bankruptcy protection and received a discharge,
    (b) the basis for claim comprising each of the Waived Claims involves assertions and alleged damages that occurred prior to either (i) Claimant's respective individual bankruptcy filing(s) or (ii) Claimant's filing of amended schedules in those cases,
    (c) Claimant did not include the Waived Claims in the schedule of assets filed by Claimant in their bankruptcy case(s), and
    (d) Claimant never raised such claims in any other proceeding during their individual bankruptcy case (e.g., an adversary proceeding).

8

(xiii) **_Loan Modification_**. This category includes claims based on loan modification issues (the "Loan Modification Claims"), which allege, among other things, that the Debtors (a) failed to provide a loan modification,[4] or (b) provided a loan modification, but the claimant believes the terms of the modification were not as favorable to the claimant as those to which claimant believed he or she was entitled. To assess the validity of these claims, the Liquidating Trust, in support of the Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, to verify that the Debtors followed the applicable investor guidelines and policies regarding loan modifications. Specifically, the Trust reviewed Internal Servicing Notes, Loan Payment History, and, where applicable, loan modification agreements, loan modification applications, loan modification denial letters, loan modification approval letters, the claimant's compliance with modifications (trial and/or permanent) and any instructions or guidelines provided by the investor for the claimant's loan. See Objection at p. 15.

Based on this review, the Loan Modification Claims are not valid liabilities of the Debtors because: (a) in cases where a loan modification request was denied, the Debtors complied with the applicable investor guidelines and policies governing the loan modification process; (b) in the cases where the claimant obtained a loan modification, the claimant was not damaged by the loan modification assistance provided; and (c) in the cases where the claimant disputes the terms of his or her loan modification, the Trust verified that (i) the claimant agreed to the terms by executing the underlying agreement, and (ii) the Debtors administered or serviced the loan modification in accordance with the governing loan documents, the Debtors' servicing policies, and if applicable, investor guidelines and/or servicing agreements.

8.    If the No Liability Borrower Claims are not disallowed and expunged, the parties asserting such claims may potentially receive an improper distribution on account of the asserted liabilities to the detriment of other Borrower claimants.

9.    Before filing this Objection, to the best of my knowledge, the Trust fully complied with all applicable provisions of the Borrower Claim Procedures set forth in the Procedures Order.

---

4   As a regular part of the Debtors' business practices, the Debtors offered mortgage loan modifications to Borrowers in financial distress, pursuant to certain guidelines established by the investors ("Traditional Modifications"). The Home Affordable Modification Program ("HAMP") is an administrative program that was implemented in April 2009 by the United States Treasury Department to help eligible homeowners with loan modifications on their home mortgage debt. HAMP provided the Debtors with an additional type of loan modification (a "HAMP Modification") for assisting eligible Borrowers experiencing financial distress.

9

ny-1147208

10. Accordingly, based upon this review, and for the reasons set forth in the Objection and <u>Exhibit A</u> to the Proposed Order, I have determined that each No Liability Borrower Claim that is the subject of the Objection should be accorded the proposed treatment described in the Objection.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 25, 2014

          /s/ Deanna Horst
Deanna Horst
Chief Claims Officer for The ResCap Liquidating Trust