**Exhibit  1-C**

**Farrell  Claim  No. 1696**

**IN THE CIRCUIT COURT AND 20TH JUDICIAL DISTRICT IN AND FOR LEE CO.**

**CASE NO 07-CA-14942 AND 07-CA-16767**

**PATRICK LORNE FARRELL©,**

**PLAINTIFF, POSSESSOR, DROIT- DROIT**

**VS.**

**G.M.A.C.; WELLS FARGO,**

**IMPAC, ET AL, DEFENDANTS**

FILED LEE CO. FLORIDA
CLERK OF COURTS
2012 OCT 23 AM 10: 44
BY

### NOTICE TO PRINCIPAL IS NOTICE TO AGENT
### NOTICE TO AGENT IS NOTICE TO PRINCIPAL

IF THIS AFFIDAVIT IS NOT PROPERLY REBUTTED POINT BY POINT WITH A COUNTER-AFFIDAVIT WITHIN THIRTY (20) DAYS FROM THE DATE OF ITS MAILING, ALL PARAGRAPHS NOT DENIED SHALL BE CONFESSED, AFFIRMED, BY SUCH DEFAULT, AND ACCEPTED AS DISPOSITIVE, CONCLUSIVE FACTS WHERE RESPONDANTS/DEFENDANTS , HAD THE OPPORTUNITY AND "FAILED TO PLEAD." ALL COUNTER-AFFIDAVITS MUST BE SIGNED WITH THE VALID LEGAL NAME OF THE RESPONDENT. FICTITIOUS, COMPUTER GENERATED OR INCOMPLETE NAMES OF RESPONDENTS OR THOSE NOT CONTAINING COMPLETE LEGAL FIRST, MIDDLE, AND LAST NAMES AND EMPLOYEE NUMBER SHALL NOT CONSTITUTE A VALID RESPONSE BECAUSE NOT PROPERLY AUTHENTICATED.

### 1.   BASIS FOR CLAIMS AND RIGHT TO RESCIND A SECURITY DEED

2.   **SUMMARILY**, Plaintiff PATRICK FARRELL, asserts, by and through all averments in filings and his AFFIDAVITS, that the subject note was NEVER placed into the trust, where WELLS FARGO is purportedly the trustee, and that GMAC is purportedly the loan servicer.

3.   THAT said trust [IMPAC SECURED ASSETS-2005-2] was discharged in a bankruptcy case AHM 07-11049 in August of 2007. Any Lawyer, Law firm, alleged Judge, acting in the capacity of corporate franchise court administrator, aka revenue agent, who acts as if GMAC has a claim that the home at 2904 NW 14th TERRACE, CAPE CORAL,FL. 33993, that belongs to Plaintiff PATRICK FARRELL, that is on a duly filed SECURITY AGREEMENT, is collateral for GMAC in any way shape fashion or form, will be sued for COPYRIGHT INFRINGEMENT, FRAUD, THEFT, MONEY LAUNDERING, RACKETEERING, AND CONSPIRACY.

**RECEIVED**

OCT 3 0 2012

KURTZMAN CARSON CONSULTANTS

121202012102300000000043

1

4. GMAC is bankrupt and WELLS FARGO BANK is a fraud, that is why they were ordered by the FEDERAL RESERVE to pay Plaintiff and the FEDERAL RESERVE millions for their crimes of mortgage fraud, that Plaintiff has correctly affirmed since NOV 2007, when this case was filed.GMAC is NOT legally a loan servicer, and WELLS FARGO did NOT loan Plaintiff any money, or extend credit, because the subject note, was purportedly made by PINNACLE FINANCIAL, who is out of business, and that said subject note was discharged by AHM in case 07-11049, and later again by TARP by the U.S. Treasury. Plaintiff owes GMAC nothing, and said property is owned by Plaintiff free and clear.

5. Plaintiff correctly affirmed and proved that the subject note executed on OCT 11,2005, contained a fraud by the amount being $283,000, and a theft of $18,000, thereby a violation of RESPA, warranting rescission, pursuant to TILA. Their is no evidence on the note, that GMAC or WELLS FARGO, has any claim. Any averment that they do is a fraud and a crime.

6. **CAUSES OF ACTION IN FARRELL V. GMAC, ET AL are incorporated by reference as if fully stated herein the entire case ; DECEMBER 6TH 2010-NOTICE TO THE COURT, in Summary of the Material Issues made known at that time and at hearings.**

7. **See October 17,2011- MOTION FOR SUMMARY JUDGMENT.**

8. PLAINTIFF, PATRICK FARRELL, alleges he is secured party creditor, as of January 2008.

9. Plaintiff Farrell executed certain contracts amongst parties in above entitled action and in doing so has granted a security for lien on his property as of October 11th 2005.

10. Where the mortgage is to debt the ownership of the article is to equity. A mortgage has a notional value or payment stream called the servicing. The other piece is the basis in the loan amount which is the wire into the HUD settlement.

11. Notional is the servicing rights and the mortgages value is held at the basis in the asset.

12. The notional value equals the payment made over thirty years. The basis is the HUD 1.

13. If the debt converts to equity the transfer of legal title is necessary. In this event the encumbrance becomes a sale. If this occurs there is no loan, but a mere transfer of title.

14. Herein the Servicing payments are held as a right of repurchase.

15. 9.Therein a third element is offered called a right of repurchase or REPO.

16. Defendants as of October 11, 2005 are held to a recording of a certain mortgage Deed in the State and record such instrument in the county recorder's office in the county of LEE for the

RECEIVED

OCT 3 0 2012

KURTZMAN CARSON CONSULTANTS

domiciled property. For a bank to obtain a foreclosure via summary judgment, the judge must accept all facts asserted by the homeowner as true. See Fla.R.Civ.P. 1.510.

17. PLAINTIFF ASSERTS BELIEF FOR CLAIMS AS FACT and therefore alleges merit all facts surrounding this controversy as follows:

18. Allegations of the Bank lent credit not money cannot prevail in this economic misinterpretation of financial business dealings. A Competent court allegedly however agreed that bank deserved nothing in return. This maybe why the case was never overturned. Albeit the President of The Bank admitted that his bank created the money "out of thin air" and credit upon its own books by which it acquired or gave as consideration for the note; that this is not a reasonable standard banking practice, that the credit first came into existence when they created it; that he knew of no United States statutes which gave them the right to do this. Economics are not a universal practice of these banks. This is the first time the question has been passed in the United States.

19. Affirmative defenses that the REMIC AND SECURITIES FRAUD exists are with merit. There was not only the Farrell loan but multiple loans he is steered into an investment contract as an undisclosed layer of investors.Party beneficiary, using Farrell's note, same as money, to finance said investment co. [IMPAC SECURED ASSETS-2005-2] in the amount of $627,000, the total of the $283,000 note and 30 years of interest.

20. MY AVERMENT TO THE SUBJECT MATTER AND CONTROVERSY CITES Plaintiff does possess domain over his real property, his entire estate, and is not subject to arbitrary demands, judgments, stipulation of other imposed harassment or adverse possession claims brought by government agents with acting as collections specialists for recovery of charged off stocks and bonds used to collateralize these trust fund offerings.

21. PLAINTIFF ALLEGES IN A DEED FOR BOND the subject mortgages basis in the asset or cumulative cost to originate the mortgage is transferred into a common stock. Unlike a bond for deed where the capital is used to acquire the mortgages the reverse condition is where the deed is divested of value and used to represent the substituted value for the mortgage alleged to be in default.

22. Divestiture of assets and de-recognition of liabilities is to sale accounting and acts to eradicate the mortgages entire value substituting in the value of the common shares held in trust.

23. Plaintiff affirms the divestment of the subject mortgage, de recognition of the asset and liability, conversion of the form and substance of the original collateral held now controversy and late

RECEIVED

OCT 3 0 2012

KURTZMAN CARSON CONSULTANTS

3

contribution of value, upon having been diluted into the form and substance of another value, and then multiplying the original mortgage cost at a 10:1 ratio of cash to collateral called goodwill.

24. Allegations are that a third form of obligation, in addition to (1) the consideration formed from construction for registering common trust shares of the indenture, (2) consideration authorized by issuance of registered preferred shares, of various classes, of which both are created from (3) offering a bond as a pledge of the subject mortgages underlying value.

25. Securitization is a reversible figure that concerns the meaningful content of what is interpreted by the brain from the same static image held in a conventional mortgage. Your perception of each subset of figures, mortgages and securities tends to remain stable until you attend to different regions or contours of each offering; debt and equity. Herein certain regions and contours of the deals structure cause the party in controversy to see one over the other and then tend to favor one perception versus the others held as an the alternative.

26. A fee simple estate is superior to all lines of record whereby the encumbering senior lien takes priority over any and all other liens.

27. It is only upon a non controlling market trigger for a financial breach by the debtor household establishing a default that can cause the lien to emerge as bare legal title with a lenders right of possession. The event of a default transfers the legal title to the fee estate.

28. MersCorp is elected as a nominee to hold bare legal title to the fee estate by election of the household at time of the settlement. MersCorp is therefore presumed to act as a beneficiary for a trust asset which is puzzling to expert and something that has left US Courts in a judicial quandary.

29. CIVIL PROCEDURE IMPACT FLORIDA HOMEOWNERS Facing Foreclosure In this analysis Farrell's mortgagee is not required to supplement its right to declare a default in the name of a nominee for proposes of foreclosure and bare legal title. The presumption the lender is entitled to its claims in a foreclosure place no other demands on the foreclosing parties to seek out a debt collector for and certain purpose.

30. Funds wired into settlement or escrows are for the sole purpose of originating a mortgage as was requested by the consumer, holding to the benefit of the lender as the originating party.

31. A mortgagee, upon confirmation of recording his lien or deed will then be permitted to disperse the funds his bank has wired into the settlement on his behalf. This is mandatory prior to

RECEIVED

OCT 3 0 2012

KURTZMAN CARSON CONSULTANTS

releasing the funds held under a confirmed American Bankers Association "ABA" wire and receipt of delivery called an advice.

32. This is in fact an important factor holding to the industry's SOP for procedures mandating a condition precedent confirmation of recording by the settlement agent.

33. Funds wired into the settlement are from the ABA wire delivered by the lender drawing down on a commercial line of credit.

34. This commercial line of credit is defined by Fannie Mae and Freddie Mac as a warehouse line.

35. The warehouse line obligates the lender on behalf of the funds used to close and settle the lenders HUD 1 disburse schedule.

36. These funds are offered short term and represent a 90 day credit facility causing the lender on the note to become an obligor.

37. The FDIC member bank is the creditor until the lender delivers it loans as a seller to the mortgage buyer. The originating source of funds believed to be the "affiliate" FDIC member bank or member Federal Saving bank.

38. Member Banks will aggregate a mass of mortgage obligations into a single bulk offering called a "Mortgage Pool".

39. Parties' are deemed combinations acting as one another *"Affiliates, w*ith respect to any specified Person, any other Person controlling or controlled by or under common control with such specified Person.

40. For the purposes of this definition, *"control"* when used is with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms *"controlling"* and *"controlled"* have meanings correlative to the foregoing.

41. Each loan is represented on a spreadsheet called a secondary markets electronic "tape".

42. The tape has the date entered into it from each separate mortgage originated under the aforementioned lender warehouse bank funding scheme that aggregate these closed "whole" loans over 90 days.

43. This is understood to draw down a matching ledger for both the originating lenders financial statements and the current financial statement of the originating warehouse credit line provider, an FDIC member bank.

**RECEIVED**

OCT 3 0 2012

**KURTZMAN CARSON CONSULTANTS**

44. In this analysis is the need for the plaintiff to pay particular attention to the critical discovery which are first, the need to maintain the separate companies general ledger, to maintain the accounts payable ledger, to maintain the accounts receivable ledger, policies for how each will prepare wires and checks for signature, key person authorizing the these funds requests, need to maintain the cash disbursements journal, reconciliation of all credits issued and returned wire or in some instances allowances.

45. GENERAL LEDGER - In this analysis is further need to pay particular attention to the critical discovery which are first, the need to reconcile each separate funds control over the banks accounts

46. This involves procedures to handle and deposit cash receipts and all other detail that can resolve the matching daily interest called per Deim that both the lender is entitled to receive and for reimbursing the bank at time of cut off.

47. Under the industry's SOP are two substantive dates the lender and its warehouse bank must pay particular attention to for their own separate financial related purposes. The cut off date is the date the FDIC bank is expected to have been paid in full from the wire it is alleged to have received from the pools purchaser.

48. Each loan is reconciled as "Paid" and "Satisfied" as of the cut off date.

49. Plaintiff Farrell must consider substantive Issues to be concerned with including the fact the FDIC member bank, upon the published cut-off date found in the pooling and serving agreement, is Paid as Agreed

50. Hence, the center point of this business arrangement for transferring mortgages to the secondary purchaser called the "pools" investment "sponsor".

51. The sponsor is discovered to also be an affiliate who transfers by formal assignment these closed whole loans into pro-ration's issued by serial numbers and designated certificates. Each certificate possessing individual equitable interests used to create common and preferred stock.

52. Whereby each and every transfer of the affiliates risks and rewards are by lawful *"Assignment"*, *therein does the asset transfer from one party to the other.*

53. An assignment of Mortgage, is formal "binding" notice of any transfer or equivalent instrument, in recordable form excepting there from if applicable.

**RECEIVED**

OCT 3 0 2012

**KURTZMAN CARSON CONSULTANTS**

54. The mortgage recordation information which has not been returned by the applicable recorder's office and/or the assignee's name), which is sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect of record the sale of the Mortgage.

55. Regardless of the assignment, the plaintiff is held the borrower household who is the title holder and debtor for the promissory note. In turn it is the lender who as an obligor, owes on the warehouse line of credit.

56. Defendants' are the lender who holds the mortgage at its face value as basis in the asset entered into his books as "mortgage loans held for sale".

57. Therein offsets the loans held against the "mortgage loans held on lines".

58. It is the FDIC member bank who holds the "mortgage loans held on lines as liability as "commercial lines for loans held by others", an asset.

59. The debtor owes the lender, who holds a mortgage receivable while lender owes the FDIC member bank for a commercial loan or warehouse line obligation.

60. The lenders mortgage file is an asset held against the banks commercial receivable, also an asset. The lenders loan, an asset, eradicates the commercial obligation and together they zero one another out leaving the FDIC member bank with its ABA wire funding into settlement.

61. The wire is cash delivered to the subject title holder's estate.

62. Where the lenders obligation or "obligors' debt" is affirmed by deed as recorded in county records, the deed is technically held invalid as the ABA wire owed by the lender is used to offset the value of the deed.

63. Whereby the deed is recorded, it is merged with the ABA wire upon which time the entry into the FDIC member banks books is held to a purchase and sale under equitable "sale" accounting.

64. In other words the ABA wire is used to purchase the deed and render the title to the household's estate as the lenders "legal title".

65. MersCorp who is alleged to hold *legal title* for the beneficiary now makes sense as it must pursuant to generally accepted accounting principles or GAAP. The purchase of the property's legal title is confirmed as an asset held in a New York statutory trust.

66. MersCorp the elected nominee is intended to protect the consumer's equitable interest in his title while he remains in possession of the property.

**RECEIVED**

OCT 3 0 2012

**KURTZMAN CARSON CONSULTANTS**

67. The balance outstanding owed by the lender to the FDIC Member Bank is therefore deemed a pro ration of the aggregate amount to acquire the entire number of properties title under an economic divestiture of assets and liabilities under a mergers and acquisitions scheme.

68. The mergers and acquisitions scheme is constructed as a reverse purchase and sale that intimately ties the borrower into a compelled pass through relationship to the investors who own the common stock.

69. What prevails is in this transaction as an incentive for the mortgage loans originator is found under the IRS considered a tax payer corporation is servicing rights.

70. The transfer of the assets, title to the collateral, to the bank is in exchange for the servicing of the promissory note. The tax payer and corporation, "lender" treats the mortgages servicing rights as if it owns the mortgages. This is without having to carry the underlying long term debt attributed to the warehouse lines.

71. This is where the FBI has called phishing for the last decade.

72. The art of financial phishing is to trick somebody into providing bank or credit-card information by a fraudulent means or devises that purport to be from a bank that used this scheme in order to obtain the verification of an official account with account number for servicing purposes and CUSIP number for securities purposes.

73. From the point of the first payment calculated till the debtor household falls into arrears, then to the time until the posting of the notice of default, the title rests disturbed.

74. Legal title was confiscated in advance of the default as the legal title converted from the mortgagor's loan into mortgagee's holdings is to the mortgages obligation created from the pledge of equity to a foreign national bank.

75. The foreign national bank enters the picture as the secured party who provides the member bank the return of its capital used to acquire the plaintiffs legal title.

76. The blanket loan to the FDIC member bank is accreted under what is known as a zero coupon bond. The balance it is owed is paid down with each borrowers demand for payoff.

77. The household is the party in possession who is estimated to have a need to refinance or move up by selling the home commencing in the fifth year of the estimated life of loan.

78. Defendants are the lender, through the origination of the original mortgage held as Pinnacle Funding and wire transfer made by Impact Funding, on its behalf.

RECEIVED

OCT 3 0 2012

KURTZMAN CARSON CONSULTANTS

79. Defendants GMAC doing business as Residential Funding Corporation are alleged the successors and assigns immediately or soon after the loans origination

80. Defendants, alleged to have transferred the legal interest in the mortgage to a nominee Mers Corp. as holder in due course and beneficiary for the subject mortgage receivable, and GMAC RFC Asset.

81. **On or about the exact time and place of the passage of EMERGENCY ECONOMIC STABILIZATION ACT set forth on October 11 2008 the subject mortgage was charged off and written down to a zero balance**

82. In doing this the US Government relieved itself of a windfall of obligations and debt owed to securities holders who had purchased trust preferred shares underwritten as debt;

83. And, upon having diluted the mortgages equivalent held as common shares of the same trust indenture. Upon the instance and act of the mortgages charged off and write-down to zero by the United States Treasury a new form of economic securities held in trust were issued to the trust preferred shareholders.

84. These shares are issued under the Government names held as Fannie Mae and Freddie Mac.

85. Fannie Mae and Freddie Mac are to government Bonds and contracts held for the next five years and obligate the US tax payer and government to the balance outstanding and due these grievances for claims by investors.

86. In mortgage lending there is a requirement for debt promised by a borrower to a lender.

87. In securitization there is a promise of equitable interests into shares of proration equity into a trust and it's paid in capital account.

88. Mortgage debt is held as an asset by a lender and tendered into and converted into equity.

89. In construction of equitable interests or equity there is no concern for the obligations outstanding used to fund the equity. A loan to a debtor totaling $100K brought to equity by the obligor who borrows $100K million and then again to the federal reserve from whom the second borrows $100K are each indebted to another.

90. In equity, the investment offering is neither concerned for the indebtedness or any of the capital claims against such capital investment held by debtor to creditor.

91. To foreclose on debt is to foreclose on capital and the value of capital that is set aside by the market and not by the claims brought against the debts collateral

RECEIVED

OCT 3 0 2012

KURTZMAN CARSON CONSULTANTS

92. Under established law, a case can only be set for trial (in a foreclosure lawsuit or any other type of case) if it is "at issue."

93. This means, in layman's terms, that all motions to dismiss filed by the homeowner have been denied and the homeowner has filed an Answer to the Complaint. (It's more complicated than that, but that's the simple explanation.) See Fla.R.Civ.P. 1.440.

94. If a foreclosure case has not progressed to that point, i.e. where it is "at issue," yet the judge sets it for trial anyway, then the judge is committing legal error that should be reversed on appeal.

95. It may seem hard to believe, but if a judge sets a foreclosure lawsuit for trial prematurely, and the bank wins at trial, the appellate court would/should reverse that foreclosure.

96. It doesn't matter if, substantively, the bank was perfectly entitled to foreclosure – from a procedural perspective, the trial was set prematurely and should not have taken place. See Bennett v. Continental Chemicals, Inc., 492 So. 2d 724 (Fla. 1st DCA 1986) (en banc); Precision Constructors, Inc. v. Valtec Construction Corp., 825 So. 2d 1062 (Fla. 3d DCA 2002).

97. The reality is to preserve the equity and to be separated from the collateral to lose the right to repayment in a **bankruptcy**.

98. A case can then is made as tender for paid into capital held as equity a paid in capital.

99. In this event the paid in capital is neither concerned nor paying attention to the debt accumulated for investment purposes and contribution to occur.

100. Plaintiff is not is not concerned with the obligations outstanding or the collateral for the obligations.

101. The court cannot avoid this fact – that once again states, a loan of 100K owed by a borrower to a lender and where the lender parlays his asset the borrowers debt into a ration held at 10:1 and borrower $1.0 million, the leverage used to create this enormous creation of capital is no less Not least affected by the Equity held as paid in capital in formation of trust.

102. The amount paid into equity a paid in capital is not concerned with the obligations outstanding or the collateral for the obligations. This is why accounting is held as substance over form with respect to the law. Even though certain contours in this model are ambiguous, your perceptual change in this case does not involve figure/ground reversals.

103. A mortgage equals a note and the security which is a deed of trust.

104. Estimated date for a pay off demand, is used to create a third form of commercial obligation.

RECEIVED

OCT 3 0 2012

KURTZMAN CARSON CONSULTANTS

10

105.    Therefore, the merit for claims seeking a release of collateral for bonding and security held in bailment and for tendering common shares of a statutory indenture formed under the jurisdiction of New York laws are each substantive for meriting claims attacking the entitlements of a "Bond Issuer" and not a "Bond Holder" for certain set of obligations as follows:

106.    Negative Pledge -Trust Preferred Shares -Trust Common Share

107.    That amount alleged owed for a commercial line of credit is impossible to eradicate and reverse or cure upon taking a charge and enforcing a write down for the collective and combined elements of economic consideration

108.    This has meaning of a state resident, and US citizen for which that "person's" right to preside over the dominion of said estate.

109.    In electing to do so the Plaintiff stands his ground, exercising his rights to remain unobstructed and free of any and all oppressive and or binding implied or expressed compulsion to do otherwise, against his will, while holding himself entitled to remain in fee and to own his estate, free of duress and all other externally imposed state and federal adversities.

110.    Plaintiff brings into the court a meritable argument for moving the court to dismiss a certain frivolous action, in above entitled matter, for claims, asserting FARRELL is subject to prejudicial demands and has therefore prepared to enter his response in proper pleading format and persona and or in rem jurisdiction over the matter whereby he is not yet served with eminent domain or other Pro Tanto illegal seizure of his real property.

111.    From the time of the loan documents having been executed to the time set forth as cutoff date by Impact as Capital Financing for the HUD 1 settlement statement and ALL PARTIES held to that settlement and procedures requirement.

**112.    <u>CONCLUSION FOR AVOIDING FORECLOSURE</u>**

113.    PINNACLE FINANCIAL extended credit in a fraudulent amount of $283,000 to Plaintiff, and did not loan any money.

114.    IMPAC FUNDING turned debt into equity used the note for 10 months as collateral to loan out money to unknown others, and in JUNE of 2006, satisfied the Mortgage to BUSEY BANK in the amount of $265,000, thereby violating RESPA, warranting rescission of said note.

115.    Plaintiff is due back the amount of the note of $283,000, see AFFIDAVITS on file.

116.    IMPAC FUNDING created 30 times the value of the note, which is a fraud.

RECEIVED

OCT 3 0 2012

KURTZMAN CARSON CONSULTANTS

11

117.    Plaintiff is the consumer household, a "borrower" and known herein and ALLEGED throughout as the mortgagor.

118.    Plaintiff and "mortgagor" holds title to real property located at 2904 NW 14TH TERRACE, CAPE CORAL,FL.33993, in the county of LEE.

119.    Mortgagor receives a loan secured by real property, a mortgage, on or about 10/11/2005, in the amount of $283,000. The purpose of the mortgage is to refinance the prior loan held by lender BUSEY BANK for an amount of only $265,000, therein is an $18,000 Fraud and theft.

120.    Defendants are Residential Capital, LLC ("ResCap") and its subsidiaries, including GMAC Mortgage, the principal debtor's lender known herein as a tax payer corporation, FDIC Member Bank and its affiliates a nonprofit and taxable REIT subsidiary. GMAC Home Loans Inc. "GMAC" as "Mortgagee". The mortgage provided to the mortgagor from "GMAC" is a first and second mortgage loan.

121.    Defendants Residential Capital, LLC ("ResCap") and its subsidiaries, including GMAC Mortgage are a mortgage lender who is alleged to at all time be licensed to conduct business in accordance with the state of Florida regulated by the Office of Financial Regulation, where the corporation is domiciled and registered. The state requires a non chartered lender or non bank, to be licensed in one of a number or licenses including a Florida Licensing Consumer Lenders License and or maintain broker license under the Department of Real Estate.

122.    Defendants Residential Capital, LLC affiliates are one in the same with the mortgagee held under "shell Corporations" impact and Pinnacle Companies responsible for underwriting the subject matter mortgage loan.

123.    Defendants' the mortgagee employs an underwriter who is responsible for stipulating the conditions for funding the anticipated loan origination. Mortgagees underwriter will assure the organization has met all requirements as set forth in order the loan qualify as a marketable origination and marketable asset.

124.    Defendants Residential Capital, LLC among Residential Capital, LLC, each of the Guarantors(as defined therein) and WELLS FARGO Bank National Association, as Trustee(the "Indenture"), close the loan for the mortgagor at a place of settlement and settlement agent on or about 10/11/2005.

125.    Florida mortgage lenders often put the deeds to homes in the name of a trustee -- usually the Mortgage Establishment Registration System, or MERS.

RECEIVED

OCT 3 0 2012

KURTZMAN CARSON CONSULTANTS

12

126.    However, mortgage lenders must put the deeds in the MERS' name when they establish a mortgage; if they do not do so until after a homeowner defaults on his agreement to pay the mortgage, the mortgage lender may not have the authority to foreclose on the home.2

127.    The loan closes in advance of the loan funding. The settlement is the actual disbursement of funds recovered b the settlement agent and disbursed accordingly as shown on the mortgagors' issued mortgagee HUD-1 statement. The mortgagee was to have provided a final HUD disbursement schedule on or about

128.    The mortgage has a face value as indicated in the promissory note. The consideration for the note is the cash or wired amount into the settlement. The settlement is proof of the parties' mutual reps and warranties known to the court as the bargain.

129.    When a second party is introduced into the mix and loans the first the money for the settlement, a second receivable is created. The first is the servicing for the promissory note and the second is the commercial receivable.

130.    The HUD 1 settlement statement less cash wired in is equal to the basis or cumulative cost for the consumer receivable.

131.    The commercial warehouse line given the lender from the cash "wired out" to the lender is equal to the cumulative cost of the commercial receivable.

132.    The household receivable and the commercial receivable is all that's left standing when you merge the two businesses together.

133.    The Lenders receivables are servicing rights transferred into preferred stock called Trust Preferred shares.

134.    The lenders obligation owed to the FDIC member banks is for the wire into the settlement agent. That is IF the wire funding actually occured, which Plaintiff alleges never did.

135.    This is the basis in mortgage assets or receivables used to create the Trust Common Shares.

136.    Preferred shares have preference over common stock for purposes of revenue earned as debt, like a bond. The common shares are ownership in something or the ownership of the trusts paid in capital account. The investor's capital account is the conversion of mortgages at their basis costs. In the after math of the greatest banking collapse in world history you have the necessity to charge of the preferred shares and roll these investors into common stock taken away from the banks subsidiary management's control.

**RECEIVED**

OCT 3 0 2012

**KURTZMAN CARSON CONSULTANTS**    13

137.    This in effects destroys the promissory notes obligation in a pass through from borrower to common stock holders to investors. This also leaves the investors now holding common stock valued at the face amount of the commercial lenders note that was merged into cash holding when it combined with the seller lender.

138.    The enforcement of an investment, charged off and previously representing a collective cash basis or cumulative cost in the two receivables is equal to the real estate used as collateral.

139.    For the banks and their defunct lenders, to survive this crisis, they must show they owned the underlying collateral. The cumulative cost basis of the deed it to title of the home.

140.    This is the predominant reason why these joint ventures originated and funded 100 percent combined loan to value. In these analyses is the assumption the security in the property equals the equity and therefore the collaborative owned the underlying real property. Title to the asset being securitized is a must for the securities to function at a mark to market valuation.

141.    GEORGIA IS THE ONLY STATE IN THE UNION IS HELD TO HAVE LOST THE FORECLOSURE DEFENSE THAT ENTITLES THE REST OF THE COUNTRY TO CONSTRUCT ARGUMENT FOR THE UNLAWFUL FORMATION OF TRUST.

142.    WHAT LACKS IN COMMON WITH THE OTHER TITLE AND LIEN theory states are that Georgia permits the lender to take bare legal title in advance of the mortgages default.

143.    In Florida regulated by the Office of Financial Regulation, the title holder is the trustor in a security offering that is held incidental to trust. In a Florida mortgage, a lender does not takes bare legal title to a fee simple estate. 3This is upon the beneficiary's election to trigger a default. Only then, upon a default arising, can the lenders claims commence to recovery whereupon he will issuance a statutory NOTICE OF DEFAULT. Therein does the lender possess an affirmed right to power of sale as granted by the debtor household at the time of settlement. This is where the beneficiary may substitute in a preference as trustee for pursuit of the physical estate by way of the legal title he holds upon declaring the default. Therefore where the power of state in a civil matter that permits the government to lawfully have seized the title to real property is not a mortgage. It is and was a stock voiding AB INITIO a foreclosure sale against Plaintiff.

144.    **RE: GMAC Bankruptcy**

FASB, by their own admission has implemented initiatives whereas the primary objective of the project is to reconsider the concerns for economic recognition, measurement and display of bank and bank affiliates liability and expense, potential new elements/statements, and all

RECEIVED

OCT 3 0 2012          14

KURTZMAN CARSON CONSULTANTS

disclosures for commitments for the federal government that could potentially result in a net outflow of resources. Under GAAP, Common stock was provided the mortgage loans originator as a "Seller" and therein is sufficiency for pleading consideration and satisfaction of lien. GMAC has nothing coming to it other than good faith by Farrell.

In this Florida origination, common shares called GMAC TC Certificates were rated by agencies and marked valuable Consideration –rated by agencies and generating a worth of 20:1 dollar for dollar the sum of your mortgages cost. Do you believe the mortgage the consumers received is entitled to an Aaa and Aa rating? Of course not.

145.   You have here the substitution of a debtor whereby the creditor is converted by legal separation or bifurcation for claims into the principal debtors. The creditor is the obligor whereby the mortgages legal title is conveyed from one entity and yet to another creating an obligor held to a second obligor. The ratings are from the representations of the quality of the portfolio and strength of US power house banks backed by the Federal Reserve. In the GMAC case, this is proved to be fact.

**Fatal Alternative**-The error and chief misgiving in electing to deceive the public and the market place of institutional investors was in creating a **Deed for Bond**, not one the same with a Bond for Deed. Planes trains and automobiles are the perfect candidate for short term debt and raising capital by institutional investment in a private placement aka securitization. Herein the sponsor holds title to the shuttle. Mortgage in turn are not a suitable object of securities financing as short term debt must remain opaque and secretive and converted into a revolving line of 30 -60 and 90 day commercial paper.

146.   IN the sponsorship is the need to liquidate the subject collateral for the substituted collateral of bond financing. Raising capital by liquidating mortgages under certain exotic accounting rules are to capture capital from institutional investment in a private placement aka securitization. The scheme prima fascia fails. In other words in proper securitization the title to the assets, mortgages, cannot remain with the household even after it completes the settlement. This is a restraint on alienation. Can you imagine selecting a car and obtaining financing and the dealer providing a five year lease tells you, "here is the key and here is the original title? Herein the GMAC sponsor holds title to the ownership of the real property whereby he alleges to have provided the consumer a standard mortgage. The real property title is "silently" lifted from the household and used to collateralize a 40 year bond due at the option of the issue under

**RECEIVED**

OCT 3 0 2012

**KURTZMAN CARSON CONSULTANTS**

a roll out program callable every fifth year. A five year bond converted from equity in the households property is held long term to a future trigger or executory contract. Now by economic reversion are the claimant Farrell to believe the esoteric accounting rules enforced by exception made by the US government held under a purchase and sale method using a sale lease back of the securities is in fact another "conventional foreclosure".

Farrell's loan was alleged deleted and substituted out for a fractional share of bond as was necessary to tender the stock. The material destruction of the original note is held under the rules for recognition which deploy the devisees and instrumentalities used to restore something of value that was lost to earlier mergers and acquisition strategies and engineering.

Divestiture of mortgages and de-recognition of FDIC insured bank lines under SFAS 140-3 and current ASC 320 is material change to the SPE / SPV capitalization and REIT balance sheet and causes the covenants and warranties made b the household to be void

Now the ability to mitigate risk and overcome this shortfall of over collateralization, REPO's, and shorting the market is plagued by the 2008 TARP{ response to the ongoing current economic collapse. The fact is the Farrell loan begs the question of;

147.   **"Did GMAC at anytime willfully short the market knowing of the bad quality of loans and capitalizes by delivering yet another pool?"**

148.   This is to assume the deal structure always takes short sellers counter position going long on the credit quality of these subprime crimes.

The U.S. Federal reserve is now faced with a continuation of the most oppressive means and methods for resolving the problem of foreclosing on title they already own in the possession of a New York fiduciary. The Courts have ruled that Mers Corp. has the standing to complete intervening assignments from one assignee to another. While this is amusing it's also a sign of the debilitation of the court system where the sponsors are alleged to have altered the court of the controversy. Mers Corp. is created as a fiduciary representing the banks interest in its collateral for purpose of intervening assignments. Its blank endorsement and assignments made in blank are held to a purchase and sale commitment amongst originator and warehouse lender. Now Mers Corp serves as a legal title holder's future interest that provides he may, at his own election purchase back his title. Legal title held to a uniform instrument that was enforced in 1996 without any congressional acknowledgement is an unethical use of government's powers.

**RECEIVED**

OCT 3 0 2012

**KURTZMAN CARSON CONSULTANTS**

Should a household's title be reduced to an interest in the title then the interest must be disclosed.

**149.    If the act is a subsequent event the mortgage contract fails for lack of disclosure.**

150.    More perplexing is the revelation that the subsequent conditions for contract are held as executory contracts. Future events such as triggers held in futures positions and option trading cause the loan as delivered to fail by executory contract. Mers Corp. is no less used as the critical element for escrowing collateral in a bailment procedure.

151.    **Claims are GMAC operated outside a purchase and sale commitment amongst a obligor and second obligor. The PAS contract was to have a life of no greater than 90 days and is held under bailment laws. Yet to be brought into court is the dilemma for the foreclosing parties that reveal they have already taken legal title doing so in the absence of a recorded subsequent conveyance. A transfer of legal title by MERS Corp. is to a conveyance and sale and not to an assignment or UCC filing required for transferring debt held by a FDIC member bank as an asset.**

To acquire legal title is to have fully seized the title from a title holder by their own free will.

152.    If by consent, the agreement must be stated clearly and concise written in indubitable form.

153.    Any such transfer in advance of a default would therefore be completed by mutual consent for a sale and transfer among parties.

**154.    If not by mutual agreement then such transfer in a title state would be an unlawful conveyance for criminal purposes.**

155.    Any banker seen acting under a deceptive program that confiscated legal title in advance of the default would have to answer to why a predatory lending agenda was allowed to run as long as it did unchecked. Another conflict of interest is for differentiating a Mers Corp loan and Non Mers Corp loans.

156.    Where the loans originated over 2006 through 2007 emerge highly predatory and credit capacity is virtually unsubstantiated. Herein the flowing questions are raised:

* Were loans removed from pools during this time?

* Where were performing and non performing loans removed to?

Where problem loans are substituted out for performing loans the vulnerability of Mers Corp is substituting bad loan in for good loans in the event of a regulatory audit.

**RECEIVED**

OCT 3 0 2012

**KURTZMAN CARSON CONSULTANTS**

157.   The GMAC bankruptcy schedule of REO must be scrutinized for bait and switching weaker collateral "properties" into trust and for substituting out good assets to keep as REO. The Farrell loan should be shown as a GMAC asset on the schedule as a long term asset held in portfolio.

## CERTIFICATE OF SERVICE

158.   **I HEREBY CERTIFY, that a true and correct copy has been sent to by Mail,**

159.   BRADLEY ARANT-100 N. TRYON St. #2690-CHARLOTTE, NC 28202

160.   Residential Capital, LLC-1177 Avenue of the Americas-New York, NY 10036

161.   ResCap Claims Processing Center-c/o KCC-2335 Alaska Ave-El Segundo, CA 90245

162.   Office of the United States Trustee-Tracy Hope Davis- 33 Whitehall St 21st Fl, Region 2 New York, NY 10004-2111

163.   Counsel to the Comm. of Unsecured Creditors- Kramer Levin Naftallis & Frankel LLP 1177 6th Avenue New York, NY 10034

164.   MORRISON & FOERSTER LLP-1290 Avenue of the Americas-New York, NY 10104

## ACKNOWLEDGEMENT

Subscribed and sworn, without prejudice, and with all rights reserved,

On this 23 day of October 2012, before me, the undersigned, a Notary Public in and for THE STATE OF FLORIDA , personally appeared the below-signed, known to me to be the one whose name is signed on this instrument, and has acknowledged to me that he  executed the same.

Signed: _Bary Croteau_

**Printed Name:** _BARRY CROTEAU_

**My Commission Expires:** _3-16-2015_

**Notary Stamp** _____

BARRY CROTEAU
Notary Public - State of Florida
My Comm. Expires Mar 16, 2015
Commission # EE 74703

_Patrick Farrell_

**Patrick Lorne Farrell**

**Propria Persona-Attorney In Fact/ Sovereign/Secured Party Creditor**

**Signed "without the united states" and without prejudice/UCC 1-308**

**UCC-1 Filing # 2007-356-2344-8 [12/22/07]-Wash. St. –DOL-**

**2904 NW14th Terrace-Cape Coral, Fl. 33993**

**OCTOBER 23, 2012**

**RECEIVED**

OCT 3 0 2012

KURTZMAN CARSON CONSULTANTS

18

# IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA

## SECOND DISTRICT,POST OFFICE BOX 327,LAKELAND,FL.33802-0327

### JUNE 29,2009

### SUPREME COURT CASE NO. : SC 09-861

### 2ND D.C.A. CASE NO.: 2D09-1677

#### Lower Tribunal No.: 07-CA-16767 and 07-CA-14942

**PATRICK LORNE FARRELL©   vs.   WELLS FARGO BANK N.A.**

**Appellant/Petitioner**                    **Appellee/Respondant**

## APPELLANT'S MOTION FOR DISMISSAL FOR FRAUD

## Re: Mortgage Loan and Civil Cases no. 07-CA-14942,FARRELL V. GMAC

## and 07-CA-16767-WELLS FARGO V. FARRELL- Lee Co.Fl.20th Circuit

- Board Of Governors of Federal Reserve System-Division of Consumer & Community Affairs-20th & C Street NW-Washington DC 20551
- Federal trade Commission-Consumer Response Center-6th & Pennsylvania Avenue NW ,Washington DC 20580
- FDIC-Consumer Response Center -2345 Grand Blvd Suit # 100 -Kansas City MO 64108
- U.S.Treasury/I.R.S. Tim Geithner 1500 Pennsylvania Avenue, NW -Washington, D.C. 20220
- FEDERAL RESERVE BANK,President Dennis Lockhart, 1000 Peachtree St. NE Atlanta,Ga.30309-4470
- Thomas Hall- Fl.Supreme Court Clerk-500 So.Duval st.-Tallahassee,Fl.32399
- James Birkhold, Clerk 2nd DCA P.O. BOX 327,LAKELAND,FL.33802-0327
- Counsel for WELLS FARGO BANK,is Stanley Kurek of Fl. Default Law Group-9119 CORP. LK.DR.3RD FL. TAMPA,FL.33634.
- Counsel for BANK OF AMERICA, is Marie Potosingh, of Ben Ezra & Katz; 2901 Stirling Rd.; ste.300; Ft.Lauderdale,Fl.33312.
- Counsel for GMAC-is Alejandra Arroyave-255 Alhambra cir. #800-Coral Gables,Fl.33134.
- WELLS FARGO/ GMAC 1100 Virginia Dr. Ft.Washington,Pa. 19034
- Charlie Green Lee Co. clerk of Court P.O.BOX 310 Ft.myers,fl.33902
- United States Bankruptcy Court-801 N.Fl. Ave. ste.727-Tampa,Fl.33602-3899

1. Dear Sirs,

   I signed a fraudulently produced promissory note under UCC Article 3 and after securitization it comes under Article 8. WELLS FARGO BANK failed to record a debt to me on their liability ledger.

2. I am writing regarding, WELLS FARGO BANK being the alleged creditor in the amount of $ 283,000. WELLS FARGO BANK has waived their status as a creditor when they accepted tender of payment (note) under UCC §§3-409 (a) & (b) and UCC §3-604(a).

3. WELLS FARGO BANK did not adjust their accounting ledger to reflect settlement and closure of the accounts receivable side of the accounting ledger. All WELLS FARGO BANK has done is keep the ledgers separate. The receivables book has not been ledgered. That is why the collection agent [Fl.Default Law Group] says they have not given us credit and we still owe the money. We need to bring the knowledge of that forward to a data integrity board hearing. I disagree with everything that this Collection agent is saying, however, if you would go over to the corporate liability off balance sheet ledgers, you would find that there has been a set off deposited there and if you could see both sets of books, you would see there is a set off, which is a claim under civil rule 13, which I am timely invoking and asking you to look at both sets of books and do the offset balance and do the settlement and closure in this matter. Please Let WELLS FARGO BANK know that, one, I did not get the note back, so they are a holder, so they are liable on it. Two, this was meant as a setoff on the corporate liability books because WELLS FARGO BANK  kept my note. WELLS FARGO BANK  should have given cash receipt for the note. The collection agent in receivables is only looking at the corporate asset ledger.

4. I have an asset that the WELLS FARGO BANK  is holding of mine that they failed to give me credit for. Where they made their mistake, is that they are likely carrying our asset on a liability ledger of balance from their accounts receivable. What I am asking you to do, as a data integrity board is to investigate to determine which one of us has the most sustainable evidence.

5. Please go back to the WELLS FARGO BANK accounting ledgers and ask to see the off balance sheet liabilities ledger to check out the claim. ( discovery under civil rule 11.) Please delegate some one to find out who is responsible for the accounts payable ledger and what did WELLS FARGO BANK  do with the cash receipt for this deposit. I want to see their

2

1099-OID, statement 95 cash flow statement and balance sheet. The note was an asset to me and a liability to WELLS FARGO BANK ,who did not account for it. So, like the Mafia, WELLS FARGO BANK has a second set of books that are not available to the public. They only use the public books when they make a claim against me to determine how much I know about my claims available on the other side of the accounting. Under FASB 140, I get my setoff. When I make a deposit, it is a cash receipt, cash proceed. Everything becomes a cash proceed in commercial law under U.C.C.Article 9.

6.  WELLS FARGO BANK shows it as cash proceed. WELLS FARGO BANK gave me a credit to my account that is actually a cash receipt to me the customer or the borrower in the amount of **$283,000.**

7.  WELLS FARGO BANK took the $283,000 proceeds from the promissory note and paid off the warehouse lender [BEAR-STEARNS INVESTORS]. So the debt on the real estate is extinguished from the books,warranting dismissal of case 07-CA-16767.

8.  WELLS FARGO BANK is required to file an FR 2046, Under 12 USC 248 and 347 (required on a quarterly or weekly basis.) WELLS FARGO BANK filed these balance sheets with the Federal Reserve Board. The balance sheet shows the assets and liabilities that they use in the accounting. The liabilities would be my promissory note. It is a liability because it is an asset to me.

9.  The balance sheet, a 2046, 2049, and 2099, have OMB numbers on them that are subject to disclosure under the privacy act, Title 5 USC 552(b)(4).

10.  WELLS FARGO BANK has to give it to me.

11.  When I have given a promissory note to WELLS FARGO BANK ,they are required to give me a cash receipt. WELLS FARGO BANK owes me that money under a recoupment or asset. They call it an offset in accounting, but in the UCC it is called a recoupment. Unless I do ask or do a defense in recoupment under UCC 3-305,[which has been alleged by FARRELL since this case inception], and a claim under 3-306, I have a possessory and property claim against the cash proceeds under the liability side of the ledger.

12.  UCC 3-306, therefore, WELLS FARGO BANK cannot be a holder in due course on a promissory note after they deposit it. They do an off balance sheet entry. This means they take my note after they sell it, instead of showing it on their balance sheet, they move it over to some other entities balance sheet. This is called off balance sheet bookkeeping. They are

not showing the liability side of the ledger or the accounts payable because it has been moved over to someone else's balance sheet.

13. WELLS FARGO BANK  is not applying the correct accounting entries under GAAP. WELLS FARGO BANK  is treating the account as a trade receivable through securitization as an off balance sheet financing technique. Since WELLS FARGO BANK  has accepted the instrument that we have tendered, we have a claim or possession right in the instrument and its proceeds under 3-306 of the UCC. Any defense and any claim in recoupment under section 3-305 of the UCC, which I shall exercise at my option, if WELLS FARGO BANK does not credit my account. The 1099-OID will identify who the principal is from, which capital and interest were taken, and who the recipient or who the payer of the funds are,and who is holding the account in escrow and unadjusted.

14. Since I am reasonably sure that I can come to a peaceful resolution of this matter, as WELLS FARGO BANK does not understand commercial banking law,or simply finds criminal cohorts,like Judge John Carlin to forward and move the business, and the IASB, the FASB and GAAP principles as they apply to commercial banking.

15. Banks are mandated by Title 12 USC to follow GAAP and GAAS. Since I am legal and solution oriented, and want to show good faith, there are two ways of resolving this matter. Since WELLS FARGO BANK  has already accepted my tender of payment and has not returned it, you can instruct WELLS FARGO BANK to credit my account for the sum said in full for settlement and closure. Or, instruct WELLS FARGO BANK  to return the original instrument to me, unendorsed, and I will make an alternative form of payment,via a Bill of Exchange through my U.S.Treasury Direct Trust Account,backed by the Federal Reserve Bank of Atlanta,Ga. Otherwise, I will consider this matter settled and closed.

16. The note is not under negotiable instrument any more,it is a security.

17. I am the Secured Party Creditor on the liability side and bank/lender is debtor on the liability side, Bank/lender is creditor on receivable or their asset side that is receivable .

18.  I can use my accounts payable side as an offset or counter claim to financial asset side that is receivable.

19. Lenders are treating these notes under article 8 because it involves securities and not article 3 paper.Under article 8 I am the Grantor, corpus and holder of entitlement and possessory rights to the proceeds of the transaction because I AM the originator of first hands transfer on

the accounts payable side of the ledger.I AM entitled to the funds.UCC 1-204 says I AM considered as merchants at law.When the note is deposited by the lender it looks as if I deposited the money in the account.This is cash under Title 12 of USC.

20. So is my Birth Certificate which I have redeemed under the U.C.C. to utilize the exemption,which is the asset to offset any and all purported debt associated with the trade name PATRICK FARRELL©; Social Security no. 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, and exemption bond no. E94934511,up to $1,000,000,pursuant to IRC TITLE 26,SEC.163,H,3,B,II.

21. **WHEREFORE,** Appellant moves the court for dismissal of case 07-CA-16767.

22. Strip the lien of WELLS FARGO BANK, and direct the Lee Co. Clerk of Court to cancel the sale of the home/address of Appellant,and grant to Appellant the Certificate of Title to the subject property.

## 23. **CERTIFICATE OF SERVICE**

24. I HEREBY CERTIFY that a true and correct copy has been sent to parties by U.S. Mail on the date of JUNE 29,2009.

## 25. **Certificate of Compliance**

26. I certify that the lettering in this brief is Times New Roman 14-point Font  and complies with the font requirements of Florida Rule of Appellate Procedure 9.210(a)(2).

27. Notice to the principals is notice to the agents.

28. Notice to the agents is notice to the principals.

**Patrick Lorne Farrell in Propria Persona**
**Attorney In Fact/ Sovereign/Secured Party Creditor**
**signed "without the united states" and without prejudice/UCC 1-207**
**UCC-1 Filing # 2007-356-2344-8 [12/22/07]-Wash. St. -DOL**
**2904 NW14th Terrace-Cape Coral,Fl.33993--239-558-8393**
**JUNE 29,2009**

5



90245



1000

**ResCap Claims Processing Center**
**c/o KCC-2335 Alaska Ave**
**El Segundo, CA 90245**

PATRICK FARRELL
2904 NW 14TH TERRACE
CAPE CORAL, FL 33993