**Exhibit  1-E**

**Farrell  Claim  No. 6281**

Claim #6281 Date Filed: 12/3/2012

## IN THE CIRCUIT COURT OF THE 20TH JUDICIAL DISTRICT
## IN AND FOR LEE COUNTY FLORIDA

PATRICK LORNE FARRELL©,
**Plaintiff, vs.**
G.M.A.C.M. et al,
**Defendants**

### CASE NO.07-CA-14942

**5TH AMENDED COMPLAINT FOR MORTGAGE FRAUD, QUI TAM, QUIET TITLE, DAMAGES AND OTHER STATUTORY RELIEF**

### SHORT PLAIN STATEMENT OF FACTS

1. **Plaintiff was the victim of mortgage fraud by defendant's actions in violation of F.S. 817.545.**

2. **Defendants filed an illegal foreclosure in violation of F.S. 817.545, 895, 896 and the U.C.C.**

3. **Plaintiff seeks redress pursuant to F.S. 772, TILA, RESPA, REG.Z, HJR-192 and the U.C.C.**

4. **July 30, 2004** an inflated, fraudulent HUD-1 was made by defendant Jody Hernandez.

5. **August 2005** an inflated appraisal was made by Jody Hernandez and Gary Pruitt/Appraise-It.

6. **OCT 11,2005**, a 2nd inflated HUD-1 was made using an illegal and inflated home appraisal, and

   An investment agreement was executed with PINNACLE FINANCIAL for an inflated $286,000.

7. **JAN to JULY 2007- GMACM** illegally charged Plaintiff for Forced Placed Insurance.

8. **July 2007-** Plaintiff discovered nationwide Fraud by defendant Countrywide, the note originator.

9. **August 2007-** AHM bankruptcy case discharged the purported debt related to subject note.

10. **NOV 2007** Plaintiff filed this case for mortgage Fraud against defendants.

11. **DEC 2007**, Wells Fargo [bogus trustee] filed 07-CA-16767, a foreclosure with no note or standing.

12. **JAN 2008-** Plaintiff registered his Secured Party Creditor Status, and again discharged subject Note.

13. **JAN 2009** Plaintiff filed federal **QUI TAM 2:09-CV-FTM-16-29SPC** against defendants.

14. **JAN 2010-** Plaintiff filed state **QUI TAM** against defendants for all the issues herein.

15. **APRIL 2011-**the FEDERAL RESERVE and defendants CONSENTED to fines for issues herein.

16. **MARCH 2012-** The USA Atty. General sued defendants to support **CONSENT ORDERS**, and

17. **ORDERED** defendants pay Plaintiff for damages up to $125,000, loss of Equity fees and costs.

RECEIVED

DEC 0 3 2012

KURTZMAN CARSON CONSULTANTS

1

**18. JURISDICTION AND VENUE**

19. This is an action for damages on behalf of Plaintiff, civil penalties, injunctive and equitable relief, and costs for defendants' violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 et seq and several other laws.

20. This court has supplemental jurisdiction over all other claims, including state law Venue is proper in this district as the defendants principal place of business or residence is in this district or because defendants acts and omissions constituting violations of law occurred here.

21. Defendants, at all times material hereto, have engaged in "trade or commerce" by advertising, soliciting, offering, or distributing a good or service, within the definition of F.S. § 501.203(8), Defendants, at all times material hereto, provided goods or services as defined within §501.203(8), Defendants, at all times material hereto, solicited consumers within the definitions of §501.203(7),

**22. PLAINTIFF**

23. Plaintiff Patrick Farrell, is a Sovereign American, a Secured Party Creditor, Security Agreement #SA-080619535666-PLF, without prejudice, Pro Per,2904 NW14th Terrace; Cape Coral,Fl.33993.

24. Plaintiff is the Beneficiary of the Trust [IMPAC SECURED ASSETS-2005-2, not defendants.

**25. DEFENDANTS- ARE NOT LENDERS OR CREDITORS**

26. JODY HERNANDEZ P.O.BOX 60985 Ft. Myers Fl.33906-mortgage broker

27. PINNACLE FINANCIAL CORP. 2611 Technology dr., Orlando Fl.32804-"credit issuer'

28. COUNTRYWIDE HOME LOANS- was the note originator,

by and through TRI-STAR LENDING- doing business as -PINNACLE FINANCIAL.

29. COUNTRYWIDE SECURITIES, 450 American St. Simi Valley,Ca.93065, MBS underwriter

30. BANK OF AMERICA- 100 NO. TRYON ST. CHARLOTTE, N.C. 28202

31. Bank of America is successor in interest all of COUNTRYWIDE'S liabilities, assets, etc

32. IMPAC FUNDING CORP-purported note seller, 19500 Jamboree Road, Irvine, CA 92612

33. IMPAC SECURED ASSETS- purported note depositor 19500 Jamboree Road, Irvine, CA 92612

34. G.M.A.C. MORTGAGE – purported note servicer-1100 Virginia Dr. Ft. Washington PA.19034

35. WELLS FARGO BANK- purported trustee, 9062 Old Annapolis Road  Columbia, MD 21045

36. JOHN STUMPF/C.E.O.WELLS FARGO 420 Montgomery St. San Francisco, CA. 94163

37. Plaintiff is a "consumer" and "natural person" for the purpose of this complaint within the meaning
of The Federal Truth in Lending Act 15 U.S.C. §1601 *et seq.,* Regulation Z, § 226.2(11) and Act 15
U.S.C. § 1692, Fair Debt and Collection Practices Act.

38. Defendants at all material times hereto, are corporations doing business in the State of Florida
including the creating and servicing of mortgage loans which further constituted the collection of
consumer debts subject to the provisions of the Federal Truth In Lending Act 15 U.S.C. §1602(f)
and the Fair Debt and Collection Practices Act 15 U.S.C. §1692a and is a "creditor and collector."

39. Defendant JODY HERNANDEZ was a mortgage broker located in Ft Myers Fl. who took mortgage
applications from prospective mortgagors, qualified such applications and presented them to lending
institutions in order to induce them to loan money secured by a mortgage on residential real property

40. Defendant PINNACLE FINANCIAL, was at all times material hereto a corporation which was
doing business in the State of Florida including the origination of mortgage loans either directly or
indirectly through one or more agents, on behalf of defendant COUNTRYWIDE  and was thus
engaged in the business of extending consumer credit and the collection of consumer debts through
its agents, and is subject to the provisions as defined by the Federal Truth In Lending Act 15 U.S.C
sec. §1602(f), and is an alleged  "creditor", now known to be a Fraud.

41. Defendant IMPAC FUNDING CORP was doing business in the State of Florida including
origination of mortgage loans either directly or indirectly through agents, PINNACLE FINANCIAL

3

and COUNTRYWIDE thus engaged in the business of extending consumer credit and collection of debts through its agents, and subject to the provisions defined by Federal Truth In Lending Act 15 U.S.C sec. §1602(f), and a is "creditor" thereby definition.

42. Defendant Countrywide Financial, Countrywide Home Loans [C.H.L.] n.k.a. Bank of America

14.     Defendant Countrywide Financial is a Delaware corporation with its principal place of business in Calabasas, California.   Countrywide Financial, itself or through its subsidiary Countrywide Home Loans, was engaged in mortgage lending.   On July 1, 2008, Countrywide merged with Bank of America and is now a wholly-owned subsidiary of Bank of America. Countrywide Financial's remaining operations and employees were transferred to Bank of America, and Bank of America ceased using the Countrywide name in April 2009.

15.     Defendant Countrywide Home Loans, a wholly-owned subsidiary of Countrywide Financial, is a New York corporation with its principal place of business in Calabasas, California. Countrywide Home Loans originates and services residential home mortgage loans by itself or through its subsidiaries.   Pursuant to the merger on July 1, 2008, Countrywide Home Loans was acquired by Bank of America and now operates under the trade name "Bank of America Home Loans."

16.     Defendant Bank of America is a Delaware corporation with its principal place of business in Charlotte, North Carolina and offices and branches in New York, New York. Countrywide Financial merged with Bank of America on July 1, 2008.   As explained more fully below, Bank of America is a successor-in-interest to Countrywide and has thus assumed liability for the conduct of Countrywide alleged herein.

43. Defendants C.H.L. and GMACM is further subject to RESPA 2605 as a loan servicing agent and subject to statutory requirements under section 6 of RESPA which provides injured consumers with the ability to seek redress up to 3 years after injuries from violations.

4

44. Defendant WELLS FARGO BANK and GMACM was, at all material times hereto, a limited

    liability corporation and doing business in the State of Florida including the servicing of mortgage

    loans which constituted the collection of consumer debts, and is thus subject to the provisions of and

    as defined by the Federal Truth In Lending Act 15 U.S.C sec. §1602(f]

45. Defendants are a "Collector" as defined under Fair Debt and Collection Practices Act and is engaged

    in regular practice and collection of consumer debts pursuant to 15 U.S.C. §1692, and thus subject

    further to the provisions of a "collector and creditor" as defined by the Federal Truth In Lending Act

    15 U.S.C. §1602(f).

46. Defendant JOHN STUMPF is the C.E.O. of WELLS FARGO BANK, and is the principal decision

    maker regarding foreclosures and other relevant activities to this case.

### 47. **BACKGROUND**

48. Plaintiff incorporates by reference, as if fully stated herein, all Affidavits and pleadings in this case,

    case 07-CA-16767; case 2:09-CV-FTM-29SPC-FARRELL V. U.S.CONGRESS, et al; and case

    2:12-CV-00026-JES-DNF- FARRELL V. GEITHNER, I.M.F., I.R.S.

49. Plaintiff's QUI TAM complaints are years ahead of the United States Govt. and the FEDERAL

    RESERVE, who have agreed with Plaintiff, and sanctioned defendants for the issues in this case

    which focus on mortgage fraud to secure a note and mortgage and MBS Securitization Fraud.

50. There was never a "loan" in this case. There was the extension of Credit, made in the NAME of

    Plaintiff PATRICK FARRELL. Plaintiff's NAME carries $1,000,000 worth of Credit, by and

    through his birth certificate being registered into the Dept. of Commerce.

51. Plaintiff/Secured Party Creditor is in charge of the subject note and mortgage by way of his filed

    SECURITY AGREEMENT, which includes all chattel paper filed in JAN 2008 on a U.C.C.-1.

52. Defendants filed a fraudulent ASSIGNMENT OF MORTGAGE in JAN 2009, one year after.

53. **THEREFORE**, Defendants claims, whether true or false, are invalid pursuant to U.C.C. ART 9.

54. Plaintiff was unwittingly steered into a Mortgage Backed Security Investment Contract, without his knowledge, voiding the note and mortgage for non disclosure and Fraud.

55. Plaintiff filed this cause in NOV 2007, stating that this one home, one bank note, one alleged mortgage, had all the elements of Fraud, that are in the 60 Million mortgages in the MERS artifice.

56. Suffice it to say that MERS = Mortgage Electronic Registry System, has been the subject of litigation for confusing litigants and Courts from knowing who actually owns or holds a bank note and it's mortgage, while defendants were committing Money Laundering and Racketeering, by splitting the note from the mortgage, copying the same bank note numerous times, putting the same note into different MBS Tranche's, each MBS defendant using a copy as "evidence" of collateral to make other loans, get multiple policies of insurance on one single [albeit copied] bank note, getting fee's for fabricating bogus Mortgage Backed Securities that were NOT REMIC status investments, using the 30 year interest on the note as "collateral" thereby de-Frauding Plaintiff, investors, the Federal Reserve, the United States, and the I.R.S. by taking the bank note, and fraudulently creating 30 times the value of Financial Derivatives, all using other people's money to fund their Fraud.

57. Plaintiff "blew the whistle" on **JAN 12, 2009 in case 2:09-CV-FTM-29SPC-FARRELL V. U.S.CONGRESS,** et al, which caused the Moratorium on foreclosures all over the USA, due to the issues surrounding ROBO-SIGNING of AFFIDAVITS and other pertinent documents.

58. As a result, the FEDERAL RESERVE and defendants agreed to CONSENT ORDERS IN 2011, and the Attorney General from 49 states and the U.S. Atty. Gen. filed a lawsuit in March 2012 against defendants, who consented to the terms therein, including paying Plaintiff for damages.

59. Defendant GMAC has filed for bankruptcy in MAY 2012, and has also been ORDERED to pay Plaintiff from $40,000 to up to $100,000.

6

**60. <u>RELEVANT ISSUES OVER THE LAST SEVERAL YEARS</u>**

**61. 7/30/04 HUD-1 SETTLEMENT STATEMENT - VIOLATION F.S. 817.545**

62. Plaintiff agreed to the process of building a home in 2004, was directed by the builder to defendant

   JODY HERNANDEZ/Premier Mortgage who assisted in the bank note with BUSEY BANK.

63. On 7/30/04 a HUD-1 FINAL STATEMENT was created for the property for a total of **$280,000.**

   FARRELL paid about **$15,000+ in deposits**, resulting in a loan from Busey Bank for **$265,000.**

64. On this 3 page document were bogus calculations from defendant that Plaintiff discovered in July

   2007 to be material misrepresentations. Defendant JODY HERNANDEZ affirmed to Plaintiff that

   the figures were true and correct regarding the lot equity [$47,370.01] **added** to the sales price of

   $279,600, **that already included the lot price**, plus another fee, amounting to $328,134.21.

65. Defendant JODY HERNANDEZ affirmed to Plaintiff that "this is how BUSEY BANK wants this

   done and that the lot equity, would serve as an enhancement of your down payment."

66. <u>Plaintiff was told by HERNANDEZ that the construction loan would be converted into an end loan,</u>

   <u>which was a material misrepresentation. In fact, the end loan was a Refinanced Note which took all</u>

   <u>of Plaintiff's $18,000 deposits, AND added $7,000 in false costs and junk fees.</u>

**67. <u>SUMMARY OF FRAUDULENT PROPERTY APPRAISAL-VIOLATION F.S. 817.545</u>**

68. **AUGUST 2005** Defendant GARY PRUITT of APPRAISE-IT appraised the subject property.

69. Defendant conspired with defendant JODY HERNANDEZ to use Jody's home as a comparable, and

   falsely inflate the appraisal to $465,000 to induce Plaintiff into a defective agreement.

70. Defendant appraisal stated, ALL SALES HAVE POOLS, ALL LOTS HAVE CANALS, but omitted

   the "COMP" pools were larger, better, the canals were saltwater/gulf access worth $100,000 more,

   and the "comps" had boat lifts and docks increasing their value another $50,000 more in compared

   to Plaintiffs property, which had NO boat lift or boat dock, or access to the ocean.

**71. <u>FRAUDULENT COMPARABLES ARE MATERIAL MISREPRESENTATIONS</u>**

**72. <u>COMPARABLE NO.1-3238 NW 23RD ST. CAPE CORAL</u>**

73. This home had a much larger pool and lanai, a waterfall on the pool deck, the deck is pavers that

extend outside the pool area all the way down to the seawall, which has a concrete dock, on a very

wide salt water/Gulf access canal, with a very good view, these aspects were omitted by defendants.

The defendants claimed all this was only worth $2,000 more.

**74. <u>COMPARABLE NO.2-1243 NW 35TH AVE. HOME OF DEFENDANT HERNANDEZ</u>**

75. This home had a much larger pool and lanai area, a stamped/block impressed concrete finish, with a

Xylene topcoat. The defendant claimed the difference was "NIL". There was a boat lift the

defendant claimed was only worth $1,500. It was also on a gulf access/salt water canal. These

aspects were omitted by the defendants.

**76. <u>COMPARABLE NO.3-1026 NW32ND PL. CAPE CORAL</u>**

77. This home had a pool and lanai area that was twice the size of Plaintiffs, increasing the value.

78. The defendants claimed the difference was "NIL". This home has 2 boat lifts, and wooden docks

extending across the entire edge against the water, with walkways extending around the other side to

get on two boats from both sides, and another dock to fish off of or access a canoe or kayak!

79. The defendants claimed this was only worth an added $3,000! This home was on a salt water/gulf

access canal. These aspects were omitted by the defendants.

**80. <u>OCT 11,2005-2ND HUD-1 SETTLEMENT STATEMENT-VIOLATION F.S.817.545</u>**

81. Defendants PINNACLE FINANCIAL,IMPAC FUNDING CORP. and COUNTRYWIDE, made

material misrepresentations on the documents involved in the lending process including, note,

mortgage, deed, surveys, inspection reports, uniform residential loan applications, appraisal reports;

HUD-1 settlement statements; supporting personal documentation for loan applications such as IRS

tax return, verifications of income and employment, credit reports, bank statements, and any required disclosures which action falsely represented; that:

82. [a] Plaintiff earned a purported monthly income of $7,500 for 12 years; FALSE

83. [b] that Plaintiff had an asset of a mobile home worth $20,000; FALSE

84. [c] that the purchase price of the home was $286,029,41; FALSE

85. [d] that the appraisal of the subject property was $465,000; FALSE

86. [e] that Plaintiff was getting a "loan."

**87. Whereas, the defendant at the time knew that;**

88. [a] the Plaintiff did not earn that amount of income, and had no evidence to support that;

89. [b] the mobile home was worth only $2,360, according to tax collector records;

90. [c] the purchase price was $265,600,as defined by BUSEY BANK'S TILA note and mortgage;

91. [d] the appraisal was based on un comparable properties containing upgraded features.

92. [e] Plaintiff was fraudulently induced to invest into a Mortgage Backed Security.

93. All in which, in truth and fact, the defendant well knew at the time was false.

94. **October 11,2005**, PINNACLE FINANCIAL serving as agent for defendant and IMPAC FUNDING and COUNTRYWIDE, created a second HUD-1 for an amount of **$286,029.41**.

95. Farrell paid **$2,670.41** at closing and the end loan amount was **$283,000 not $265,000**.

96. Needless junk fees warranted the theft of Plaintiff's **$18,000** deposits, and Plaintiff was told that:

97. The fraudulent extra charges were justified; **FRAUD**

98. The $283,000 property was properly appraised for $465,000; **FRAUD INDUCED**

99. If I did not sign the documents the defendants could sell my property to another, and I would lose the money I had put in up to that point, which was **$27,499.62. DURESS.**

100.    **THEREFORE**, the note was made by Fraud, violates UCC-3-305 and Plaintiff was damaged.

**101.**    <u>OCTOBER 11, 2005- CLOSING OF THE "LOAN"- NOTE-MORTGAGE</u>

102.    <u>The note of PINNACLE FINANCIAL was NOT a loan, it was a pre-sold MBS investment into a</u>

<u>CESTUE QUE TRUST-IMPAC SECURED ASSETS-2005-2, unknown to Plaintiff when signed.</u>

103.    Plaintiff is the sole corpus and grantor of equity, and rescinded the agreement for Fraud.

104.    Plaintiff's note and mortgage was turned into equity and invested, on behalf of Plaintiff,

unknown to him at the time, by IMPAC FUNDING and COUNTRYWIDE SECURITIES.

105.    The underlying mortgage loan was not originated in accordance with the defendants stated

underwriting standards, as alleged in the MBS Prospectus or it's Pooling and Servicing Agreement.

106.    The subject note was never transferred by COUNTRYWIDE to the MBS Trust.

107.    The A.O.M. filed in JAN 2009, is evidence of that, voiding all claims by W.F.B. and GMAC.

108.    **NOV 2005**- The note was split from the mortgage, the note was destroyed upon "securitization"

and turned into stock, and the void mortgage was allegedly put into MERS.

109.    **DEC 2005**, the subject note, was purportedly placed into IMPAC SECURED ASSETS-2005-2,

subject to a Pooling and Servicing Agreement. No endorsement exists to enjoin WELLS FARGO.

110.    <u>SUBSEQUENTLY, Plaintiff has uncovered evidence from the IRS Publication 938, that</u>

<u>defendant IMPAC SECURED ASSETS-2005-2, never formed, the note never went into the trust.</u>

**111.**    **JAN 23, 2006** IMPAC SECURED ASSETS-2005-2 went out of business as per the SEC.

112.    The MBS defendants are operating on the basis of form over substance. There was no Mortgage

Backed Security, and case 07-CA-16767, is a total Fraud Upon the Court.

**113.**    **In March 2006**, Defendant GMAC began servicing the **loan #0359244301**, after agreement with

defendant COUNTRYWIDE and taking inflated mortgage payments from Plaintiff.

114.    **JULY 2006**- defendant IMPAC used my $283,000 note to pay the seller 10 months later,

BUSEY BANK who only needed $265,000. The documents show that the mortgage has not been

properly assigned and is still held by defendant PINNACLE FINANCIAL who is out of business.

115.    **Plaintiff got a Default Judgment against PINNACLE in JULY 2008.**

116.    **Satisfaction of Mortgage**, in this case executed on JULY 19, 2006, demonstrate that, at a point

in time ten months after the MBS Certificates were issued, the respective mortgage referred to herein

was fully paid off and discharged. Plaintiff's obligation is discharged by the original lender [BUSEY

BANK], or PINNACLE FINANCIAL, [its nominee], and not the Trust [IMPAC SECURED

ASSETS] providing strong evidence that the mortgage was never assigned to the Trust.

117.    **JAN 2007**-Defendant GMACM falsely inflated mortgage payments in JAN 2007, by illegal

forced placed insurance at 10 times the cost, when Plaintiff already had insurance, which is the USA

lawsuit and FEDERAL RESERVE CONSENT ORDERS ordering defendants to pay back Plaintiff.

118.    **On August 6, 2007** American Home Mortgage filed bankruptcy 07-11049, defendants IMPAC

FUNDING and IMPAC SECURED ASSETS-2005-2 was listed as **UNSECURED** CREDITORS.

119.    The claims of PINNACLE FINANCIAL, IMPAC FUNDING, IMPAC SECURED ASSETS-

2005-2, WELLS FARGO, COUNTRYWIDE now BANK OF AMERICA, GMACM was discharged

and "paid in full" and collecting again is Money Laundering and Racketeering.

120.    Creditor DEUSTCHE BANK received payment and Plaintiff herein, owes nothing on the note.

121.    Defendants received IRS tax credits and insurance payouts [CDS] for the subject MBS.

122.    These 3rd party payments were not recorded in favor of Plaintiff, Plaintiff is NOT in default.

123.    **NOV 2007** Plaintiff filed this case for various causes of Mortgage Fraud.

124.    **DEC 2007** Wells Fargo Bank filed case 07-ca-16767, without a NOTICE TO CURE, as required

by para.#22 of the mortgage, or a note, mortgage, assignment, or endorsement, voiding standing.

125.    Defendant WELLS FARGO and GMACM, filed various Fraudulent and forged "ROBO

SIGNED" documents to mislead the court regarding it's purported standing to file suit.

126.    First, defendants filed a **LOST NOTE AFFIDAVIT**.

127.    All notes were destroyed upon "securitization" to avoid double-dipping, meaning defendants are using the mortgage not the note to foreclose, without owning or holding anything of value.

128.    Once a note becomes a stock, the mortgage is Void, [to avoid double-dipping].

129.    Second, defendants filed an **AFFIDAVIT OF AMOUNTS DUE AND OWING**.

130.    A. the amounts are wrong, and B. defendants did not lend any money or anything else.

131.    Third, defendants filed an **ASSIGNMENT OF MORTGAGE**.

132.    The Assignment is outside the legal parameters of the Pooling and Servicing Agreement, as it was filed 3 years too late, and the IRS REMIC rules prohibit a defaulted or Fraudulent note from being placed into a static REMIC.

133.    All 3 filings are a ROBO-SIGNING Fraud upon the court, Perjury, and have been sanctioned by the UNITED STATES govt. and the FEDERAL RESERVE.

134.    Defendants illegally created 30 times the note in derivatives, by splitting the note from the mortgage [doubling the $283,000], and using the interest [$344,000] and insuring it 10 times.

### 135.    SOVEREIGNTY DOCUMENTATION-BILL OF EXCHANGE

136.    **DEC 22, 2007**-Plaintiff filed his Sovereignty Documentation into the public record in a series of recordings beginning DEC 2007, and continuing, as needed, to address all Commercial concerns.

137.    Plaintiff is the Holder-In-Due-Course, of the title [PATRICK FARRELL] to the vessel that flows in the sea of Admiralty Commerce. Plaintiff is in charge of all chattel paper, not any lawyers, judges or govt. agents. Anyone who uses my title, my property, my name, to take any money, equity, or property is in violation of filed COPYRIGHT AGREEMENT, and sued for $500,000.

138.    Plaintiff's SECURITY AGREEMENT and U.C.C.-1 FINANCING STATEMENTS very clearly and distinctly shows to defendants, that the subject home, bank note, mortgage, debt, equity, is held

12

as collateral against any claim, by anyone, against the debt owed to Plaintiff by the UNITED

STATES TREASURY. Defendant "banks" are nothing more then agents of the UNITED STATES,

which is a bankrupt corporation as of 1933. Plaintiff is the SECURED PARTY CREDITOR.

139.   Plaintiff rescinded his "contract" with defendants in the MBS and the UNITED STATES in JAN

2008, pursuant to 42 USC sec. 1981, due to Fraud, non-disclosure, and duress.

140.   The UNITED STATES and IMPAC SECURED ASSETS-2005-2 are both Cestue Que Trusts,

made by operation of law, BOTH without full disclosure to Plaintiff, and therefore VOID.

141.   **CASE FILE**- From JAN 2008 to APRIL 2008, Plaintiff sent defendant JOHN STUMPF, a Bill

of Exchange and Notice to Cure, to discharge the purported debt in case 07-CA-16767.

142.   This was summarily ignored by defendant JOHN STUMPF but used to claim TARP funds.

143.   **JULY 2008**- Defendant BANK OF AMERICA bought all of COUNTRYWIDE debt paper.

144.   **OCTOBER 2008**- Defendant BANK OF AMERICA used the subject note to get TARP funds

from the UNITED STATES TREASURY, then gave the same note to WELLS FARGO.

145.   <u>NOV 2008</u>-Defendant JOHN STUMPF, by and through WELLS FARGO, used the BILL OF

EXCHANGE as a TARP claim to the US TREASURY, and it satisfies the mortgage as per para. #1,

which requires payment in U.S Currency. A Bill of Exchange is U.S Currency, per HJR-192.

146.   Despite satisfaction, defendant JOHN STUMPF, ordered counsel to continue to prosecute 07-

CA-16767, causing Plaintiff Emotional Distress and financial harm.

147.   **NOVEMBER 26, 2008**- defendants WFB and GMAC filed a discharged photocopy of the note

and mortgage into the case file, thereby defrauding the Court and causing Plaintiff further damage.

### 148.   <u>ASSIGNMENT OF MORTGAGE TO WELLS FARGO BANK</u>

149.   **JAN 9, 2009**- Defendants Wells Fargo and GMACM, who used JEFFREY STEPHAN a known

ROBO SIGNER, filed a fraudulent A.O.M. back-dated to April 1st, 2008.

150.   On information and belief, defendant Wells Fargo used servicer, GMACM who used **DocX LLC** to create the document. The document purports to assign the mortgage to the MBS, 3 years after the trust closed, and thereby in violation of the Pooling and Servicing Agreement and IRS REMIC rules.

### 151.   The UNITED STATES criminally charged DocX and Lorraine Brown

**152.**   http://www.nytimes.com/2012/11/21/business/docx-founder-pleads-guilty-in-foreclosure-fraud.html?_r=0  See USDC Jacksonville, FL. case # 3:12cr-198-J-25-MLR

153.   Since the subject note was already defaulted, a note cannot be placed into the defendant "trust."

154.   Purportedly assigned from PINNACLE FINANCIAL, the original "lender."

155.   On April 1,2008,PINNACLE was no longer in business, so no genuine assignment could occur.

156.   Defendants used the mortgage for a fraudulent foreclosure, ratified on MARCH 24,2009, with a "ROCKET DOCKET" SUMMARY JUDGMENT by "judge" John Carlin.

157.   **IN RESPONSE;** Plaintiff filed bankruptcy case **09-14386-ALP.** Defendants WELLS FARGO and GMACM filed a PROOF OF CLAIM, illegally claiming they were due $331,014 for "money loaned." A Fraudulent claim is in violation of title 18 USC s.152 and 3571 and a penalty of $500,000. Plaintiff has filed a QUI TAM against defendants to the I.R.S. seeking reward.

158.   **On January 12, 2009** Farrell filed 2:09-CV-16-FTM-29SPC, a 44 page, Federal Class Action Racketeering Lawsuit, against the US CONGRESS for the TARP funds rewarding of banks Fraud, the State of Florida, all banks getting TARP funds [for fraud based home loans, inflated debt demands and Lost Note Affidavits] Law firm/foreclosure mills, and defendants for FRAUD in the origination, Securitization and Foreclosing of notes, using robo-signing, forgery, perjury, etc.

159.   Inter Alia, Farrell claimed LOST NOTE AFFIDAVITS, [robo-signed] enjoined systemic fraud, and a MORATORIUM on all foreclosures in the United States should be enjoined, therefrom.

160.   **In Jan. 2010**, Plaintiff filed QUI TAM complaint against defendants for mortgage fraud.

14

161.   **In January 2010, the Fl. Supreme Court**, made new law [thanks to Farrell] striking Lost Note

Affidavits from cases and requiring verification of documents in foreclosure cases.

162.   **In September 2010**, GMACM and BANK OF AMERICA, issued MORATORIUM on all

foreclosure cases, again thanks to Farrell's prolific complaining to EVERYBODY in the IRS,

capacity of Federal finance, Law enforcement, Dept. of Treasury and the FEDERAL RESERVE.

163.   That caused the USA and 49 A.G.'s to argue for a year and a half and force settlement.

164.   **In October 2010**, the Securities and Exchange Commission announced that Mozilo would pay a

record $22.5-million penalty to settle SEC charges that he and two other former Countrywide

executives misled investors about the quality of bank notes in their MBS's.

165.   Mozilo also agreed to repay $45 million in ill-gotten gains for a total of $67.5 million.

166.   **In December 2010-** defendants WFB and GMACM vacated their Summary Judgment of

foreclosure issued in 07-CA-16767 by judge John Carlin, due to it's inherent Fraud and invalidity.

167.   **On February 10, 2011**, the FEDERAL RESERVE issued massive financial penalties, for ALL

THE ISSUES FARRELL HAS BEEN COMPLAINING ABOUT.

168.   **ALLY BANK**, [formerly GMACM] Docket No. 12-006-CMP-HC and DEO; was fined by the

FED for $310,000,000, for **ILLEGAL ACTIONS** pled by Farrell since 2007.

169.   **BANK of AMERICA** [Countrywide] Docket No. 12-007-CMP-HC, was fined  $175,500,000,

with other issues of "Hard Money Payments" totaling $10.5 billion, for **ILLEGAL ACTIONS** pled

by Farrell since 2007

170.   **WELLS FARGO** Docket No. 12-010-CMP-HC, fined $87,000,000, other issues of "Hard

Money Payments" totaling $5 billion, for **ILLEGAL ACTIONS** pled by Farrell since 2007.

171.   **SUMMARILY,** Plaintiff was the victim of mortgage, securitization and foreclosure fraud by

defendants, and as a matter of fact and law, is due a monetary reward and injunctive relief.

## 172.   SUMMARY

173.   Defendants made numerous material representations to Plaintiff which Defendants knew to be false when made and which were made deliberately. Defendants made the material misrepresentations to Plaintiff with the specific intent that Plaintiff rely thereon. Plaintiffs did rely upon the affirmative representations of Defendants to his detriment. As a direct and proximate result of the misrepresentations made by Defendants. Plaintiff has and will continue to suffer damages.

174.   Prior to closing, Defendants failed to provide to Plaintiff the preliminary disclosures required by the Truth-In-Lending Act pursuant to 12 CFR (also known as and referred to herein as "Regulation Z) sec.226.17 and 18, and failed to provide the preliminary disclosures required by the Real Estate Settlement Procedures Act ("RESPA") pursuant to 24CFR sec. 3500.6 and 35007, known as GFE.

175.   As a direct and proximate result of these failures to disclose as required by the Truth-In–Lending Act, Defendants Fraudulently induced Plaintiff to sign the closing documents with an inflated amount of **$286,029.41** or lose the home by sale to another, without preliminary disclosure, which is a per se violation of 12 CFR sec. 226.4(a), 226.17 and 18(d) and (c)(1)(iii).

176.   Defendants were under numerous legal obligations as fiduciaries and had a responsibility for overseeing the purported loan consummation to insure that the consummation was legal, proper, and that Plaintiff received all legally required disclosures pursuant to the Truth-In-Lending Act and RESPA both before and after the closing.

177.   Plaintiff not being in the consumer lending, mortgage broker, or residential loan business, reasonably relied upon the Defendants to insure that the consumer credit transaction was legal, proper, and complied with all applicable laws, rules, and Regulations.

178.   These transactions, designated as Loan No. ████0973, extended consumer credit which was subject to a finance charge and which was initially payable to the Defendants.

179.    As part of the consumer credit transaction the subject of the closing, Defendants retained a

security interest in Plaintiffs' principal residential dwelling.

180.    Defendants engaged in a pattern and practice of defrauding Plaintiffs in that, during and after the

execution of the application for the note, and the entire life of the mortgaged note, Defendants had

actual knowledge that the Plaintiffs' accounts were not accurate but Plaintiff make further inflated

payments based on Defendants' inaccurate accounts, and illegal forced placed insurance.

181.    Until DEC 2007, Plaintiff was not aware of the purported MBS at issue- IMPAC SECURED

ASSETS-2005-2, which was a bogus, Fraudulent, illegal MBS as per IRS Publication 938.

182.    On information and belief the consumer credit transaction was a Pre-Sold Investment contract,

unknown to Plaintiff at the time OCT,11,2005 at closing, with multiple assignments as part of an

aggregation and the creation of a BOGUS REMIC tranche itself a part of a predetermined CMO

and/or CDS, all Defendants shared in the illegal proceeds of the transaction; conspired with each

other to defraud the Plaintiff out of the proceeds of the loan; acted in concert to wrongfully deprive

the Plaintiff of the residence; without providing Plaintiff reasonably equivalent value in exchange;

and conducted an illegal enterprise within the meaning of RICO statute.

183.    The MBS PSA-pooling and service agreement, makes representations and warranties that "No

loan is made greater than 100% of the loan. Herein the amount of the note with BUSEY BANK

was $265,000, yet the note with defendant's agent PINNACLE FINANCIAL was $286,000.

184.    The Representations and warranties in the PSA were violated, and a rescission and buyback of

the note is ordered, and the defendants owe Plaintiff $283,000 plus other costs and fees.

185.    Plaintiff is not a "borrower" Plaintiff is and was the investor into a security, and has rights to

subrogation as a Surety, and is due the insurance paid out on the defaulted and defective note.

186.    Wells Fargo is not a lender or creditor, but they are a Subrogation claims adjuster.

### 187.   **PRAYER FOR RELIEF**

188.   **WHEREFORE**, having set forth the above-described legally sufficient causes of actions against

the Defendants, Plaintiff prays for the entry of Final Judgment against all Defendants jointly and

severally; canceling the Note and Mortgage and rescinding the residential mortgage transaction

pursuant to TILA, RESPA, Regulation Z, an award of three times the amount of actual damages

sustained, costs and attorneys' fees; for declaratory relief as set forth above; that the Court find that

the transactions, the subject of this action be void and any further foreclosure proceedings be

permanently enjoined; and for any and all other and further relief which is just and proper.

### 189.   **Plaintiff reaffirms paragraphs 1 to 188 as if set forth more fully herein below and affirms the following causes of action;**

### 190.   **COUNT 1: HOME OWNERSHIP EQUITY PROTECTION ACT**

191.   In 1994, Congress enacted the Home Ownership Equity Protection Act("HOEPA") which is

codified at 15 USC sec. 1639 et seq. with the intention of protecting homeowners from predatory

lending practices targeted at vulnerable consumers. HOEPA requires lenders to make certain defined

disclosures and prohibits certain terms from being included in home loans. In the event of

noncompliance, HOEPA imposes civil liability for **rescission and statutory and actual damages**.

192.   Plaintiff is a "consumer" and each Defendant is a "creditor" as defined by HOEPA. In the

mortgage loan transaction at issue here, Plaintiff was required to pay excessive fees, expenses, and

costs which exceeded the amount to be financed by $18,000, then another "term" of $7,128.77.

193.   Defendants violated HOEPA by numerous acts and material omissions, including but not limited

to: failing to make correct disclosures on the HUD-1 in a conspicuous fashion; engaging in a pattern

and practice of extending credit to Plaintiff without regard to the ability to repay in violation of 15

USC sec.1639(h) and illegal junk fees made by a false HUD-1, aided by a false appraisal.

18

194.    By virtue of the Defendants' multiple violations of HOEPA, Plaintiff has a legal right to rescind

the consumer credit transaction pursuant to 15 USC sec. 1635.

195.    As a direct consequence of Plaintiffs' legal and lawful exercise of the right of rescission, the true

"lender" is required, within twenty (20) days of Notice that was initially given in DEC 2007, to:

196.    [a] desist from making any claims for finance charges in the transaction;

197.    (b) return all monies paid by Plaintiffs in connection with the transaction to the Plaintiff;

198.    (c) satisfy all security interests, including mortgages, which were acquired in the transaction.

199.    (d) return of any money or paid by Plaintiff including all payments made in the transactions;

200.    (e) an amount of money equal to twice the finance charge in connection with the transactions;

201.    (f) relinquishment of the right to retain any proceeds; and

202.    (g) actual damages in an amount to be determined at trial, including attorneys' fees'

203.    [h] The granting of quiet title to Plaintiff by lifting the lien of WELLS FARGO.

204.    Based on Defendants' HOEPA violations, each of the Defendants is liable to the Plaintiff for the

following, which Plaintiff demand as relief: rescission of the mortgage loan transactions; termination

of the mortgage and security interest in the property the subject of the mortgage loan documents

created in the transaction, costs and related fees.

### 205.    COUNT 2: REAL ESTATE SETTLEMENT PROCEDURES ACT

206.    As mortgage lenders, Defendants are subject to the provisions of the Real Estate Settlement

Procedures Act ("RESPA"), 12 USC sec. 2601 et seq. In violation of 12 USC sec. 2607 and in

connection with the mortgage loan to Plaintiff, Defendants accepted charges for the rendering of real

estate services which were in fact charges of $18,000 and $7,128 more than services actually

contracted for. As a result of the Defendants' violations of RESPA, Defendants are liable to Plaintiff

for (3) times the amount of charges paid "settlement services" pursuant to 12 USC sec. 2607(d)(2).

**207.   COUNT 3: VIOLATIONS OF FEDERAL TRUTH-IN-LENDING ACT**

208.   Defendants failed to include and disclose certain charges in the finance charge shown on the

TILA statement, which charges were imposed on Plaintiff incident to the extension of credit to the

Plaintiff and were required to be disclosed pursuant to 15 USC sec. 1605 and Regulation Z, sec.

226.4, thus resulting in an improper disclosure of finance charges in violation of 15 USC sec. 1601

et seq., Regulation Z sec. 226.18(d). Such undisclosed charges include a sum identified on the

Settlement Statement listing the amount financed which is different from the sum listed on the

**original Note, $265,600 vs. second note of $283,000, with Plaintiff depositing $18,000.**

209.   By calculating the annual percentage rate ("APR") based upon improperly calculated and

disclosed amounts, Defendants are in violation of 15 USC sec. 1601 et seq., Regulation Z sec.

226.18(c), 18(d), and 22, on each and every monthly statement sent in the U.S. Mail to Plaintiff from

March 2006 to JULY 2007, from defendant GMAC Mortgage, LLC.

210.   Defendants' failure to provide the required disclosures provides Plaintiff with the right to rescind

the transaction, and Plaintiff, through this public Complaint which is intended to be construed, for

purposes of this claim, as a formal Notice of Recission, hereby elects to rescind the transaction and

repay Plaintiff for all costs and damages, as per F.R.B.CONSENT ORDERS, and USA lawsuit.

**211.   COUNT 4: VIOLATION OF FAIR CREDIT REPORTING ACT**

212.   Defendants GMAC MORTGAGE LLC, WELLS FARGO BANK qualified as a provider of

information to the Credit Reporting Agencies, under the Federal Fair Credit Reporting Act.

213.   Defendants wrongfully, and illegally reported negative information to Credit Agencies, resulting

in negative information on the credit reports and the lowering of the FICO scores.

214.   Pursuant to 15 USC sec. 1681(s)(2)(b), Plaintiff is entitled to maintain a private cause of action

against Defendants for an award of damages in an amount to be proven at the time of trial for all

violations of the Fair Credit Reporting Act which caused actual damages to Plaintiff, including

emotional distress and humiliation.

215.    Plaintiff is entitled to recover damages from Defendants for negligent non-compliance with the

Fair Credit Reporting Act pursuant to 15 USC sec. 1681(o).

216.    Plaintiff is also entitled to an award of punitive damages against Defendants for their willful

noncompliance with the Fair Credit Reporting Act pursuant to 15 USC sec. 1681 (n)(a)(2l.

**217.    COUNT 5: FL. DECEPTIVE  AND UNFAIR AND TRADE PRACTICES ACT**

218.    In providing various advices, mortgage brokerage services, lending services, and otherwise

through its relations and communications with Plaintiff, Defendants are subject to the FDUTPA.

219.    In violation of the FDUTPA , Defendants have committed unfair, deceptive, and unconscionable

acts and practices in connection with the consumer transaction the subject of this action, including

but not limited to: [a] taking advantage of Plaintiffs' inability to protect his interests because of the

inability to fully understand the terms of the transactions due to the numerous failures of the

Defendants to disclose material information; altering of material terms; and misrepresentation of the

terms of the transaction; (b) charging Plaintiff an excessive price for the services rendered;

(c) rendering services to Plaintiffs with the knowledge that there was no reasonable probability of

repayment of the obligations in full by Plaintiff; and (d) by violations of the FDUTPA incorporated

220.    Pursuant to FDUTPA Defendants are liable to Plaintiffs for each violation of the FDUTPA in the

amount equal to three (3) times actual damages [$80,000 in NOV 2007] in addition to Plaintiffs

being entitled to injunctive relief barring any further violations pursuant to FDUTPA .

**221.    COUNT 6: MORTGAGE FRAUD-F.S.817.545**

222.    As set forth above, the Defendants knowingly concealed and misrepresented information which

is required to be disclosed pursuant to Federal Statutes and Regulations.

223.    Defendants fraudulently induced Plaintiffs into signing a mortgage loan package which included

an illegally unconscionable loan with full knowledge that same was contrary to applicable law and

public policy, by concealing the theft of Plaintiff's $18,000 deposits.

224.    The intentional concealment and material misrepresentations of defendants were made with

knowledge of falsity and, maliciously and with reckless disregard to the rights of the Plaintiff in

connection with the overall intertemporal transaction being part of the Defendants' predetermined

process of reselling the loan to an aggregator and ultimate creation of a CMO utilizing Plaintiffs'

mortgage as part of a tranche in a REMIC security, now known to be False enjoining QUI TAM.

225.    Plaintiff not being an investment banker, securities dealer, mortgage lender, mortgage broker, or

mortgage lender, reasonably relied upon the representations of the Defendants in agreeing to execute

the mortgage loan documents. Defendants are thus liable to Plaintiff for an amount of damages to be

determined at time of trial as a result of the violations.

### 226.    COUNT 7: FRAUDULENT MISREPRESENTATION

227.    Defendants knowingly and intentionally concealed material information from Plaintiff which is

required by Federal Statutes and Regulations to be disclosed both before, at, and after the closing.

228.    Defendants also materially misrepresented material information to the Plaintiff with full

knowledge by Defendants that their affirmative representations were false, fraudulent, and

misrepresented the truth at the time said representations were made. Under the circumstances, the

material omissions and material misrepresentations of the Defendants were malicious.

229.    Plaintiff not being investment banker, securities dealer, mortgage lender, mortgage broker, or

mortgage lender, reasonably relied upon the representations of the Defendants in agreeing to execute

the mortgage loan documents. Had Plaintiff known of the falsity of Defendants' representations,

Plaintiff would not have entered into the transactions the subject of this action.

230.    As a direct and proximate cause of the Defendants' material omissions and material

misrepresentations, Plaintiff has suffered damages of $100,000,plus other fees and costs.

### 231.    COUNT 8: BREACH OF FIDUCIARY DUTY

232.    Defendants, by their actions in contracting to provide mortgage loan services and a loan program

to Plaintiff which was not only to be best suited to the Plaintiff given his income and expenses

but by which Plaintiff would also be able to satisfy the obligations without risk of losing the home,

were "fiduciaries" in which Plaintiff reposed trust and confidence.

233.    Defendants breached their fiduciary duties to the Plaintiff by fraudulently inducing Plaintiff to

enter into a mortgage transaction which was contrary to the Plaintiff stated intentions; interests;

preservation of the home, and contrary to the contracted amount at the inception of this entire action,

by demanding $18,000 more than required, then took inflated mortgage payments for 22 months.

234.    Secondly, GMAC demended $7,128 more from Plaintiff for Forced Placed Insurance, when

Plaintiff had duly paid for insurance already. GMAC admitted to this error in MAY 2009.

235.    Under the totality of the circumstances, the Defendants' actions were willful, wanton,

intentional, and with a callous and reckless disregard for the rights of the Plaintiff justifying an

award of not only actual compensatory but also exemplary punitive damages to serve as a deterrent

not only as to future conduct of the named Defendants herein, but also to other persons or entities

with similar inclinations. Plaintiff thus demands restitution from the Defendants in the form of actual

damages, exemplary damages, and attorneys' fees and clear title to the home.

### 236.    COUNT 9: UNJUST ENRICHMENT

237.    Defendants had an implied contract with the Plaintiff to ensure that Plaintiff understood all fees

which would be paid to the Defendants to obtain credit on Plaintiffs' behalf and to not charge any

fees which were not related to the settlement of the loan and without full disclosure to Plaintiff.

238.    Defendants had full knowledge that a predatory mortgage with an increase of $18,000 in the

principal was not in the Plaintiffs' best interests, particularly as Plaintiff specifically requested and

was told, prior to closing and in writing in more than one document provided by the Defendants,

that the loan would be $265,600 not $283,000, plus increased interest from 5.75% to 6.25%.

239.    Defendants cannot, in good conscience and equity, retain the benefits from their actions of

charging a higher principal to the settlement services provided at closing.

**240.    E.E.S.A. UNJUST ENRICHMENT-SUBJECT TO U.S. TREASURY ENFORCEMENT**

241.    **FACT**-Plaintiff mentioned this issue of dual track illegal profits, not losses, in SEPT.15, 2008 in

Court, in related case 07-CA-16767 and a transcript is available.

242.    **Fact**: "Pooled" mortgages and NOTES are insured 30 times face value amount.

243.    **Fact**: the instruments "pooled" in the real estate "pools" are split-apart NOTES and Mortgages.

i.e., separate accounting entities, and deposited separately into separate "pools."

244.    **Fact**: the subject $283K NOTE will be deposited into "pool A"

245.    **Fact**: the $283K Mortgage will be deposited into "pool B"

246.    **Fact**: the 30 year interest on this note, $344,000, will be deposited into "pool C."

247.    The bank now has $910,000 in deposit accounts which it can "deposit multiply" by 10 times.

248.    Federal Reserve scam. (See Modern Money Mechanics by Chicago Federal Reserve Bank).

The bank now has $9.1 Million, all based on Plaintiff's signature, which has a value of $1,000,000,

based upon the Registration of his Birth Certificate into the Dept. of Commerce.

249.    The money was generated without disclosure to PLAINTIFF, the issuer of the NOTE.

250.    Defendants fabricated 30 times collateral by Fraud, forgery [ROBO-SIGNING] copying notes

and mortgage documents on a standard office copier, all to give the appearance of a legitimate

banking/business/investment, that is now known to be nothing but Common Fraud, by uncommon liars, cheaters and thieves, that are the defendants herein.

251.    **Fact**: the originating so-called "lender"[PINNACLE] already contracted to sell the instruments from the transaction with Plaintiff to [IMPAC] a so-called "loan aggregator," "investment banker" or other entity in a Special Purpose Vehicle pool (SPV) and the bank [PINNACLE] was paid for the full "loan" amount plus a 2.5% return on the "loan" for each of the instruments split-apart into separate "loan pools."

252.    Planned default occurs, by way of forced placed insurance by GMAC, who illegally changed Plaintiff's payments from $2,000 to $2,685.This is element in USA vs. Banks Lawsuit.

253.    The defendants will have been Unjustly enriched by as much as $9.1 M on a $283K transaction after default. Know that the Note should have been $265,000, Plaintiff was robbed of $18,000.

254.    The bank's successful foreclosure in the Lee County Rocket Docket, Money Laundering and Racketeering scheme, having not been allowed to be challenged by Plaintiff to prove the defendant's right to enforce the instrument in foreclosure, was NOT forced to prove STANDING pursuant to the local jurisdiction's version of UCC § 3-301, and UCC § 3-309, ignoring the fact that this paper is under U.C.C.-Art.9, then entitles the bank to sell the property again, and the bank profits several times, without EVER investing ANY of it's own hard money.

255.    Defendants have been unjustly enriched at the expense of the Plaintiff, and maintenance of the enrichment would be contrary to the rules, laws and principles of equity.

256.    Plaintiff thus demands restitution from the Defendants in the form of actual damages, exemplary damages, and attorneys' fees, and clear title to the home.

25

### 257.   COUNT 10: CIVIL RICO

258.   The conspiracy the subject of this action has existed from July 2004 to the present, with the injuries and damages resulting therefrom being continuing.

259.   Defendants' actions and use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct specifically designed to defraud Plaintiff constitutes an "enterprise", with the aim and objective of the enterprise being to perpetrate a fraud upon the Plaintiff through the use of intentional nondisclosure, material misrepresentation , and creation of fraudulent loan documents. Each of the Defendants is an "enterprise Defendant".

260.   As a direct and proximate result of the actions of the Defendants, Plaintiff has suffered damages of $100,000 actual damages, demands repayment, plus other costs and fees.

### 261.   COUNT 11:  FRAUD

262.   GMACM LLC, became the servicing agent in March 2006.

263.   From January 2007 until July 2007,GMAC added a demand to Plaintiff of $7,128 more money to be placed in escrow for forced placed insurance, when Plaintiff already had insurance.

264.   Plaintiff paid an extra $685 each month from JAN 2007 to JULY 2007.

265.   GMAC later stated in JUNE 2009, that it would refund $7,128 to Plaintiff, but never did.

266.   The UNITED STATES sued GMAC in April 2012 for this very reason, and GMAC by the FEDERAL RESERVE CONSENT ORDERS of April 2011, agreed to pay fines for this.

267.   As a result of the violations Defendants are liable to Plaintiffs in an amount equal to three (3) times the amount of $7,128 charges paid by Plaintiff, plus any and all costs for recovery.

### 268.   COUNT 12 VIOLATIONS OF TILA-RESPA-15 U.S.C.

269.   All defendants are "persons" as defined by Fl. Statute.

270.   Plaintiff is entitled to bring this action under Section 15 U.S.C. §1640(a).

271.    This Complaint is filed pursuant to the Federal Truth in Lending Act, 15 U.S.C. § 1635(b), (f)

(TILA), and other statutory authority and causes of action set forth herein.

272.    This facts set forth herein arose out of the same nexus of facts and previously pled by Plaintiff.

273.    This complaint is a TILA enforcement action with other claims against Defendants, including

those prescribed under TILA and Regulation Z and Congressional authority. This is also to enforce

causes in the UNITED STATES vs. GMAC and WELLS FARGO lawsuit in April 2012.

274.    Material disclosure provisions of the Federal Truth in Lending Act were violated in the course of

the consumer credit transaction set forth below.

275.    Defendants' TILA Material disclosure violations were "*all violations being evident upon the face

of the loan documents*", **which liability is imputed to all assigns**, with Defendants committing the

subject violations in the course of **<u>extending consumer credit</u>** as set forth herein which was

extended pursuant to the requirements of Sec.125 (a) of TILA, 15 U.S.C. § 1635 (a)(f) and 15

U.S.C. § 1641 and Regulation Z, 12 CFR sec. § 226.15 and § 226.23.

**276.**    The plaintiff has a continuing right to rescind the transaction until the third business day after the

receiving the forms and notices indispensable to constitute "Material Disclosures", pursuant to

Section 125(a) of TILA, 15 U.S.C. §1635(a) and Regulation Z, 12 C.F.R. §§ 226.15(a)(3), §

226.23(a)(3). **As Plaintiff never received such disclosures, he has a continuing right to rescind.**

277.    The "material loan disclosures" failed to disclose the true loan amount being offered, was not the

loan disclosed on the 1st HUD-1, Notice of Right to Cancel, Good Faith Estimate and Final Truth in

Lending Act Disclosures never provided the plaintiff by Defendants during the consummation of the

loan as required by Section 125(a) of TILA, 15 U.S.C. §1635(a), 15 U.S.C. §1635 (b) and 15

U.S.C. §1635(f), Regulation Z § 226.15(a)(3), § 226.23(a)(3).

278.    Defendants' loan disclosures, among other disclosure violations, were at all times hereto,

"materially deficient" with said *deficiencies presenting and evident at all time to be on the "Face of*

*the Loan Documents"*, 15 U.S.C. §1641(a), and section 130, 15 U.S.C. §1640(a).

279.    Defendants and their agents and Substitute Trustees for these Defendants accepted the Plaintiffs'

loan from the originating defendant, PINNACLE FINANCIAL, with full and actual knowledge of

said material disclosure effects which were evident at all times material hereto on *"the face of the*

*loan documents"*.

280.    The purpose of TILA, 15 U.S.C. §1601(a), is to promote informed consumer credit decisions

about the true cost of the loan being offered and to provide substantive consumer protections and

remedy provisions for violations of TILA and the imposition of strict liability upon the creditor for

noncompliance.

281.    The difference between the actual cost of the loan $265,000 vs. the resulting Fraud that produced

the subject note of $283,000, and the resulting inflated payments is the core of this controversy.

282.    Defendants stole and/or converted for their own purpose, Farrell's $18,000, at the outset of the

loan agreement, then another $7,128 by GMACM LLC during servicing in 2007.

283.    Plaintiff timely **rescinded** the transaction by sending to the Defendants, by U.S.Mail, postage

prepaid, certified mail, return receipt, a **notice of rescission** in November 2007, [this case] and again

in December 2007 and January 2008 [case 07-CA-16767].

284.    The Defendants acknowledged receipt of said timely given **rescission notice** as Defendants, by

and through counsel, replied to said **rescission notice** by written response of denial and refusal to

perform as required, or take any appropriate action therein at said time as required under the

requirements of TILA pursuant to §1635(b), §1640(a)(1) and Reg. Z, 12 C.F.R, § 226.15 and §

226.23(d)(2). Defendant WELLS FARGO is in default.

28

285.  Defendants failed to take necessary or appropriate action to reflect the termination of any security interest created under the transaction pursuant their strict liability under the law and Congress to do so as required by Section 125(b) of TILA 15 U.S.C. §1635(b) and Regulation Z § 226.15 and C.F.R. § 226.23(d)(2).

**286.  Once the court is presented with a TILA violation such as not responding to the TILA rescission letter, no matter how technical and based on the uniform application of TILA and the broad substantive consumer provisions and protections thereunder wherein TILA must be construed in favor of the consumer, it has no discretion with respect to liability.**

**287.  The Defendants Security Interest is thus void, moving the court for an injunction.**

**288.  *The substantive consumer provisions provided under TILA statute regulation specify that the security interest, promissory note or lien arising by operation of law on the property becomes automatically void, 15 U.S.C. §1635(b) and Regulation Z §§ 226.15(d)(1), § 226.23(d)(1).  As noted by the Official Staff Commentary," the creditor's interest in the property is automatically negated regardless of its status and whether or not it was recorded or perfected."***

289.  The Defendants have failed to return to the Plaintiffs' any money given by the Plaintiff to anyone, including the Defendants, as required under the strict provisions of TILA pursuant to Section 125(b) of TILA 15 U.S.C. §1635(b) and Regulation Z § 226.23(d)(2).

290.  As a result of the Defendants' violations of TILA and Regulation Z, pursuant to §§ 125(a) and 130(a) of TILA 15 U.S.C. §§ 1635(a) and §1635(f), and §1640(a) and 1641,

291.  <u>Defendants are liable to Plaintiff as set forth herein under the substantive consumer protections provided to the consumer by TILA that are to be construed in a light most favorable the consumer.</u>

292.  Pursuant to 11 U.S.C. §108(a) or (b), suit is properly brought for TILA statutory violations and enforcement for said violation through the remedy of Rescission, 15 U.S.C. §1635(b), and was

originally brought within the three years of the date of the known violations which occurred on

October 11,2005, additionally bringing of the suit is tolled within the 3 additional years extending

Farrell's timelines and right to sue for TILA, FDCPA, and RESPA Servicing Violations.

293.    Equitable tolling applies to TILA's three year extended period of rescission enforcement actions

and applies here in this case as stated above especially in view of  extensive exercise of due

diligence on behalf of Plaintiff.

294.    This TILA enforcement action, and claims under RESPA Servicer section 6 of 2605(e), and all

other causes stated herein or that may be discovered during the pendency of this lawsuit, are subject

to 11 U.S.C. §108(a) or (b) or, alternatively, under Fed Rule Civ.P 6(a) with all said causes relating

back to the same nexus of case facts.

295.    Thus, any claims herein or any other causes not yet asserted, or that may be asserted after

discovery or during trial of these facts, are more than properly brought within the 3 additional years

including the foreclosure action filed in the Lee Co. Circuit Courts by Defendants WELLS FARGO

BANK as substitute Trustees, Case No. 07-CA-16767.

296.    TILA, 15 U.S.C. §1635(a)(b)(f) is a statute of repose, and subsection §1635(f) says nothing in

terms of bringing an action but instead provides that the "extended 3 year right of rescission may be

exercised under the "Act" when  "forms or Material Disclosures" have not been made.

297.    The contract the subject this action was consummated on, 10/11/2005,and timely right of

rescission was exercised less than 3 years for so doing for TILA "Material Loan Disclosure

Violations" evident on "*The Face of the Loan Documents*" and pursuant to all assignments,

liabilities associated therewith pursuant to 15 U.S.C. §1635(b) §1641 and §1640(a)§1640 (e).

298.    The right of this consumer to enforce the right of **rescission** and recover statutory awards for

violation of TILA, and other causes of action with claims for costs and attorney fees.

299. The subject Note was table funded and Predatory per se per TILA and REG. Z.

300. **WHEREFORE,** having set forth legally sufficient causes of actions against the Defendants, Plaintiffs pray for the entry of Final Judgment against all Defendants jointly and severally, for amounts to be proven at trial, costs and attorneys' fees; that the Court find that the transactions of this action are deemed void; the foreclosure be deemed void and that further proceedings with the foreclosure be enjoined; and for any other relief which is just and proper.

### 301.   COUNT 13- PURSUANT TO 31 U.S.C §§ 3729-3732

### THE FEDERAL FALSE CLAIMS ACT,FOR T.A.R.P. AND SECURITIES FRAUD

302. **JAN 2009** Plaintiff filed QUI TAM 2:09-CV-FTM-16-29SPC against defendants.

303. **JUNE 2010** Plaintiff filed STATE QUI TAM action against these defendants.

304. **APRIL 2011**- FEDERAL RESERVE and defendants agreed in CONSENT ORDERS, to pay the FED damages for the issues Plaintiff has so eloquently elaborated upon since NOV 2007.

305. **APRIL 2012**- UNITED STATES, sued and recovered $25 BILLION damages against defendants in **Case 1:12-cv-00361-RMC** and ORDERED Plaintiff be paid damages.

306. **The only issue left, is for Plaintiff to recover his portion of the damages.**

307. **MAY 2012** GMACM filed bankruptcy 12-12020 and a court Order by the bankruptcy Judge, as a recent filing by defendants counsel, states that defendant GMACM must pay Plaintiff, between $40,000 to $100,000. Plaintiff did in fact pay GMACM about $40,000 in mortgage payments.

308. The United States of America, by and through *qui tam* relator **PATRICK LORNE FARRELL©**, brings this action under 31 U.S.C §3729, *et seq.*, as amended (False Claims Act) to recover all damages, penalties and other remedies established by the False Claims Act on behalf of the United States, regarding TARP funds to defendants.

309. This is an action to recover damages and civil penalties on behalf of the United States of America, for violations of the False Claims Act arising from false or fraudulent records, statements, or claims, or any combination thereof, made, used or caused to be made, used, or presented, or any combination thereof, by the defendants, their agents, employees, or co-conspirators, or any combination thereof, with respect to false claims for inflated Securities resulting in falsely inflated funds received by the defendants from the TARP funds for a bogus MBS, like IMPAC-2005-2.

310. IMPAC FUNDING CORP; IMPAC SECURED ASSETS-2005-2; IMPAC HOLDING 19500 Jamboree rd. Irvine, Ca. 92612 assumed the subject note, falsely made loan pool, liable for damages during loan origination, collected on insurance policy in the loan pool; Countrywide Financial had their insurance debts of $18 Billion paid off, by BANK OF AMERICA, who got $20 Billion in TARP funds. Based on inflated loans, made on inflated appraisals, made on inflated ratings, made on inflated LTV's, all material misrepresentations by defendants.

311. COUNTRYWIDE SECURITIES, underwriter of MBS at issue, now known as Bank of America. 100 NO. TRYON ST. CHARLOTTE, N.C. 28202

312. Wells Fargo Bank, N.A.-45 Broadway, 12th Floor-New York, New York 10006, made $20 billion in 2008, in part by making inflated demands to the U.S.Treasury for TARP funds of $25 Billion, and filing foreclosures, without being the party in interest, thereby collecting twice on the same paper notes and mortgagers.

313. G.M.A.C. MORTGAGE LLC 1100 Virginia Dr. Ft.Washington,PA.19034, seeks to benefit 3rd time from foreclosure sale, filed by Wells Fargo Bank in 07-CA-16767.

314. Defendants have been financially sanctioned by the FEDERAL RESERVE in April 2011, in CONSENT ORDERS, with defendant's C.E.O.'s who agreed to Plaintiff's charges.

315.    Defendants have been sanctioned by the U.S. Atty. in May 2012, in the $25 Billion lawsuit filed

against defendants, to ensure payments in CONSENT ORDERS.

**316.    These actions resulted from the filing of this case and Plaintiff's QUI TAM complaints in**

**JAN 2009, JAN 2010, JUNE 2010, and pleadings to the Fl. Supreme Court in 2009.**

317.    Defendants transacts business in the United States and; submitted or caused to be submitted

claims to the Department of the U.S.Treasury, TARP funds to restore losses due to the collapse of

the Mortgage Market. Losses they aided in creating in the first place, inter alia, by inflating Farrell's

note by about 7%, then placing it into a security pool that contained 7005 other notes that contained

the same problems, inflated values, demanding inflated amounts from TARP, and siphoning off 25-

50% of the principal pool value in admin. fee's.

318.    IMPAC filed notice to the SEC on JAN 23,2006 that they were out of business.

319.    IRS Publication 938 reveals IMPAC-2005-2 never existed beyond that date, and cannot legally

foreclose or collect TARP funds or receive any other type of assistance from the Treasury.

320.    IMPAC collected on the MBS Insurance policy, then sent my note and mortgage to Bank of

America who got TARP, then to Wells Fargo, who also collected TARP funds then using the same

note for GMACM to foreclose thereby collecting FOUR TIMES on the same DEBT PAPER, then

demanded TARP for "losses" which constitute false claims under the False Claims Act.

321.    False Claims Act liability attaches to any person who knowingly presents or causes a false or

fraudulent claim to be presented for payment, or to a false record or statement made to get a false or

fraudulent claim paid by the government. 31 U.S.C.; §3729(a)(1)&(2), in this case the "T.A.R.P.

Funds," and inflating the value of the $1.9 Billion Security known as:

**322.    IMPAC SECURED ASSETS CORPORATION,**

**MORTGAGE PASS THROUGH CERTIFICATES,SERIES 2005-2.**

323.    Under the False Claims Act, "knowing" and "knowingly" mean that a person, JOHN STUMPF

with respect to information: has actual knowledge of the information; acts in deliberate ignorance of

the truth or falsity of the information; or acts in reckless disregard of the truth or falsity of the

information, and no proof of specific intent to defraud is required. 31 U.S.C. §3729(b).

324.    The False Claims Act is violated not only by a person, who makes a false statement or a false

record to get the government to pay a claim, but also by one who engages in a course of conduct that

causes the government to pay a false or fraudulent claim for money.

### 325.    ALLEGATIONS OF RICO FOR DOUBLE BILLING FOR T.A.R.P. FUNDS

326.    By virtue of the acts described herein, defendants knowingly (a) submitted, and continue to

submit, and/or (b) caused and/or continue cause to be submitted, false or fraudulent claims to the

United States Government for payment of E.E.S.A. and TARP Fund recovery.

327.    By reason of the defendants' acts, the United States has been damaged, and continues to be

damaged, in substantial amount to be determined at trial.

328.    The second significant consequence of the failure to timely assign qualified mortgages to the

trust affects the REMIC tax status of the trust.

329.    RMBS trusts may avoid taxation at the entity level if they qualify as a REMIC under the Internal

Revenue Code and the Treasury regulations promulgated thereunder. If an RMBS trust qualifies as a

REMIC, it becomes a pass-through entity not subject to taxation on interest it collects, or gains in the

value of the collateral it holds. *See* Internal Revenue Code § 860A(a).

330.    If a trust does not qualify as a REMIC, however, then the trust is simply considered a corporation

and is taxed at the applicable corporate tax rate. *See* Internal Revenue Code §§ 11(a), 7701(i)(1),

7704(a). Certificate holders in RMBS trusts that do not qualify as REMICs are, therefore, subject to

"double taxation." Investors pay tax on the payments they receive from the trusts pursuant to their

Certificates regardless of whether the trust is a REMIC or not. However, if the trust is not a REMIC, then the trust must pay additional taxes on interest collected and gains in collateral value, which payments are made from funds that would otherwise have been distributed to investors.

331.    The Certificate holders are then taxed *again* on the income distributions they receive.

332.    To qualify as a REMIC, a trust must own assets consisting principally of "qualified mortgages" or "other investments." *See* Internal Revenue Code § 860D(a)(4). If more than a *de minimis* amount of a trust's assets are something other than qualified mortgages or other investments, the trust will not qualify as a REMIC and will be taxed as a corporation.

333.    In order to qualify as a REMIC, a trust must be a passive investment vehicle rather than an active real estate lending business. Its assets must consist of a **fixed** pool of mortgages that were assigned to the trust no later than three months after the "startup day" (*i.e.*, day interests in the trust are issued). *See* Internal Revenue Code § 860D(a)(4).

334.    **The REMIC may not receive new contributed mortgages into its pool after the startup day and may not receive any new mortgages into its pool after the three-month deadline. If any new mortgages are transferred to the trust after three months, the REMIC will lose its favorable tax status, with several adverse consequences to investors:**

335.    the trust's income will be subject to corporate double taxation;

336.    the income from the late transferred mortgages will be subject to a 100% tax; and

337.    if late transferred mortgages are received through contribution, the value of the mortgages will be subject to a 100% tax. *See* Internal Revenue Code §§ 860D, 860F(a), 860G(d).

338.    Moreover, by conducting an active business in acquiring new mortgages rather than merely passively investing in the initial fixed pool, the RMBS trust risks losing REMIC status in its entirety.

339.    If a trust that previously elected REMIC status is later found never to have qualified as a

REMIC, or is found to have ceased qualifying as a REMIC, then the trust is subject to retroactive

taxation at the prevailing corporate tax rate, and potential additional penalties for underpayment of

tax and/or fraudulently purporting to be a REMIC, *see* Internal Revenue Code §§ 6501(c), (e);

6662(a); 6663(a), which taxes and penalties are ultimately borne by the investors.

340.    In sum, the Issuer Defendants knowingly or recklessly made false representations in the Offering

Documents that all mortgages would be assigned to the Trusts prior to the issuance of the

Certificates and that the Trusts would qualify for favorable REMIC tax status.

341.    The Issuer Defendants knew this to be false because they had in fact been securitizing RMBS for

years without effecting assignments to the respective Trusts. The Issuer Defendants knew that

the Trusts therefore could not qualify for favorable REMIC tax status.

342.    A bank note into a security becomes a stock. Foreclosures are actually a Reverse REPO, which

attempts to re-capitalize the defunct, de-valued stock, that was sold to investors on the false premises

that Plaintiff has been correctly complaining about since NOV 2007.

**343.    WHEREFORE,**

344.    That this Court enter judgment against Defendants in an amount equal to three times the amount

of damages the United States has sustained because of defendants' actions, plus a civil penalty of not

less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. §3729;

345.    That Relator **PATRICK LORNE FARRELL©** be awarded the maximum amount allowed

pursuant to §3730(d) of the False Claims Act; be awarded all costs of this action, including

attorneys' fees and expenses, documented at $100,000; and;

346.    Loss of equity, costs and Attorney fees pursuant to the defendants CONSENT ORDERS

347.   Plaintiff's QUI TAM reporting of the Fraudulent BANKRUPTCY PROOF OF CLAIM filed by

GMAC with a $500,000 penalty, and a 30% reward by the IRS would be a reward of $150,000.

**348.   COUNT 14-COPYRIGHT INFRINGEMENT-WELLS FARGO BANK and GMAC**

349.   On January 9,2008,Farrell filed with the court and sent defendants a copy of a filing titled:

350.   NOTICE OF FILING OF SOVEREIGNTY DOCUMENTS, which contained; inter alia,

351.   COMMON LAW COPYRIGHT AGREEMENT, which clearly spells out that any unauthorized

use of the corporate designation, PATRICK LORNE FARRELL©, with the intent of procuring

money, warrants a charge of $500,000,per each unauthorized use.

352.   From January 16,2008, to June 13th,2008, WELLS FARGO BANK filed several motions

containing unauthorized uses of Plaintiffs private property, in an attempt to convert Plaintiffs home

to their possession, without any evidence to do so, and after a Bill of Exchange discharged the note.

353.   This is in violation of Plaintiff's Copyright agreement with a charge of $500,000.

354.   Defendant GMAC MORTGAGE LLC continues to maintain the appearance as a creditor or

lender, or now a Debtor in possession, in the recent bankruptcy case 12-12020.

355.   On 09/27/2012 BALBOA INSURANCE COMPANY, acting on behalf of defendant GMAC,

sent Plaintiff by U.S.Mail, a NOTICE OF "LENDER" FORCED PLACED INSURANCE, with an

annual charge of $4,691.43. GMAC is not a lender, in any way, shape or form.

356.   GMAC has no valid interest in this property to insure.

357.   This is in violation of Plaintiff's Copyright agreement with a charge of $500,000.

358.   **WHEREFORE**, pursuant to the Federal Copyright Act of 1978,17USC 511,Plaintiff demands

judgment against defendants and prays; To award damages against the defendants herein for a sum

of money $1,000,000 for unauthorized use of my copyrighted property.

## CERTIFICATE OF SERVICE

**I hereby Certify that a copy of this has been sent Certified Mail to the following;**

- ERIC HOLDER- USDOJ 950 Pennsylvania Avenue, NW Washington, DC 20530-0001
- Sarah Barbaccia c/o Morales Law Group 14750 NW 77 court, Ste. 303, Miami Lakes, Fl.33016
- David Brian O'Dell, One Federal Place, 1819 5th Avenue No. Birmingham, AL. 35203-2120
- Christian Hancock/Monica Wilson -100 N. TRYON St. #2690-CHARLOTTE, NC 28202
- JOHN STUMPF C.E.O. WELLS FARGO 420 Montgomery St. San Francisco, CA. 94163
- JODY HERNANDEZ, mortgage broker, P.O.BOX 60985Ft.Myers,Fl.33906
- APPRAISE-IT and Gary Pruitt , atty Andrew Bolin P.O. BOX 1531-Tampa,Fl. 33601
- ResCap Claims Processing Center-c/o KCC-2335 Alaska Ave-El Segundo, CA 90245
- U.S. Trustee-Tracy Davis- 33 Whitehall St 21st Fl, Region 2-New York, NY 10004-2111
- Mr. Edward O'Keefe-Bank of America -100 N. Tryon Street-Charlotte, North Carolina 29255
- Tammy P. Hamzehpour, – ResCap-1100 Virginia Drive-Fort Washington, PA 19034
- WELLS FARGO-Mr. Patrick Loncar-Federal Reserve Bank of San Francisco-
  101 Market Street-San Francisco, California 94105
- **Counsel to the Comm. of Unsecured Creditors- Case no. 12-12020**
  Kramer Levin Naftallis & Frankel LLP-1177 6th Avenue -New York, NY 10034
- **Proposed Counsel to the Debtors- Case no. 12-12020**
  MORRISON & FOERSTER LLP-1290 Avenue of the Americas-New York, NY 10104

**Patrick Farrell/in Propria Persona-Sovereign/Secured Party Creditor**

**UCC-1 Filing # 2007-356-2344-8 [12/22/07]**

**2904 NW14th Terrace-Cape Coral,Fl.33993**

**Signed "without the united States"  without prejudice UCC 1-308**

**NOVEMBER 28, 2012**

ACCEPTED FOR VALUE & HONOR-EXEMPT FROM LEVY
For my remedy,Release of the Proceeds, Accounts, in the
order[s] to Me in Accordance with Public Policy,HJR-192,
UCC 10-104 & UCC 1-104,UCC 3-419 Exemption I.D. & UCC
Contract Account #375585666 Deposit To U.S. Treasury &
Charge the same to:PATRICK LORNE FARRELL#375585666
VALUE: $100,000,000    DATE:   11-28-12