**Hearing Date: August 13, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
        **Response Deadline: July 23, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for The ResCap Borrower*
*Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**NOTICE OF OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST**
**TO CLAIM NUMBER 2024 FILED BY IRENE SCHMIDT**

    **PLEASE TAKE NOTICE** that the undersigned has filed the attached *Objection*

*of the ResCap Borrower Claims Trust to Claim Number 2024 Filed by Irene Schmidt* (the

"Objection").

    **PLEASE TAKE FURTHER NOTICE** that a hearing on the Objection will take

place on **August 13, 2014 at 10:00 a.m. (Prevailing Eastern Time)** before the

Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District

of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New

York 10004-1408, Room 501 (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that responses, if any, to the Objection must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to be received no later than **July 23, 2014 at 4:00 p.m. (Prevailing Eastern Time)**, upon (a) counsel for the ResCap Borrower Claims Trust, Morrison & Foerster LLP, 250 W. 55th Street, New York, NY 10019 (Attention: Gary S. Lee, Norman S. Rosenbaum and Jordan A. Wishnew); (b) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention: Linda A. Riffkin and Brian S. Masumoto); (c) the Office of the United States Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530-0001 (Attention: US Attorney General, Eric H. Holder, Jr.); (d) Office of the New York State Attorney General, The Capitol, Albany, NY 12224-0341 (Attention: Nancy Lord, Esq. and Enid N. Stuart, Esq.); (e) Office of the U.S. Attorney for the Southern District of New York, One St. Andrews Plaza, New York, NY 10007 (Attention: Joseph N. Cordaro, Esq.); (f) counsel for Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York, NY 10022 (Attention: Richard M. Cieri and Ray Schrock); (g) counsel for the committee of unsecured creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attention: Kenneth Eckstein and Douglas Mannal); (h) counsel for Ocwen Loan Servicing, LLC, Clifford Chance US LLP, 31 West 52nd Street, New York, NY 10019 (Attention: Jennifer C. DeMarco and Adam Lesman);

(i) counsel for Berkshire Hathaway Inc., Munger, Tolles & Olson LLP, 355 South Grand Avenue, Los Angeles, CA 90071 (Attention: Thomas Walper and Seth Goldman); (j) Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101-7346 (if by overnight mail, to 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-5016); and (k) Securities and Exchange Commission, New York Regional Office, 3 World Financial Center, Suite 400, New York, NY 10281-1022 (Attention: George S. Canellos, Regional Director).

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written response to the relief requested in the Objection, the Bankruptcy Court may deem any opposition waived, treat the Objection as conceded, and enter an order granting the relief requested in the Objection without further notice or hearing.

Dated:  July 2, 2014
         New York, New York

/s/ Norman S. Rosenbaum
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew

MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*

Hearing Date:  August 13, 2014 at 10:00 a.m. (Prevailing Eastern Time)
Response Deadline: July 23, 2014 at 4:00 p.m. (Prevailing Eastern Time)

MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for The ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST
TO CLAIM NUMBER 2024 FILED BY IRENE SCHMIDT**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the confirmed Chapter 11 plan in the above-captioned bankruptcy cases (the "Chapter 11 Cases") [Docket No. 6065], as successor in interest to the above-captioned debtors with respect to Borrower Claims (collectively, the "Debtors"), hereby submits, on behalf of Debtor Residential Capital, LLC ("ResCap") and its affiliated post-effective date Debtors in the Chapter 11 Cases, this objection (the "Objection") seeking to disallow and expunge claim number 2024 (the "Schmidt Claim"), a copy of which is attached hereto as Exhibit 1, filed by Irene Schmidt ("Ms. Schmidt"), pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the

ny-1147287

"Bankruptcy Rules"). In support of the Objection, the Borrower Trust relies upon and incorporates by reference the Declaration of Deanna Horst, the Chief Claims Officer for The ResCap Liquidating Trust, annexed hereto as Exhibit 2 (the "Horst Declaration").[1] In further support hereof, the Borrower Trust respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The Schmidt Claim relates to purported damages arising from a loan modification agreement that Ms. Schmidt alleges was entered into by the Debtors and her ex-husband improperly. There is nothing in the Debtors' books and records, however, suggesting any impropriety with respect to the Debtors' entry into the loan modification agreement. Ms. Schmidt has failed to provide a sufficient explanation as to why her claim represents a valid claim that should be allowed against the Debtors. As discussed herein, the Borrower Trust provides detailed explanations as to why the elements of Ms. Schmidt's claim do not provide the basis for an allowed claim against the Debtors. Accordingly, the Schmidt Claim should be disallowed and expunged in its entirety from the Claims Register (as defined below).[2]

## JURISDICTION, VENUE AND STATUTORY PREDICATE

2. This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007.

---

[1] The ResCap Liquidating Trust and the Borrower Trust are parties to an Access and Cooperation Agreement, dated December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

[2] The Borrower Trust reserves all of its rights to object on any other basis to the Schmidt Claim not set forth in this Objection, and to amend this Objection should any further bases come to light.

## BACKGROUND

### A.   Chapter 11 Case Background

*General Overview*

3. On December 11, 2013, at the conclusion of a confirmation hearing, the Bankruptcy Court entered an *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065].[3] On December 17, 2013, the Effective Date (as such term is defined in the Plan) occurred, and, among other things, the Borrower Trust and the ResCap Liquidating Trust were established [Docket No. 6137].

4. The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed Borrower Claims (as such terms are defined in the Plan) to the extent such claims are ultimately allowed either through settlement or pursuant to an order of the Court. See Plan, Art. IV.F.  The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims."  See id.

*Claim Specific Background*

5. On July 17, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases. Among other things, KCC is authorized to (a) receive, maintain, record, and otherwise

---

[3]   Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

3

ny-1147287

administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

6. On August 29, 2012, this Court entered an order approving the Debtors' motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No. 1309] (the "Bar Date Order").[4]

7. On March 21, 2013, the Court entered an order (the "Procedures Order") [Docket No. 3294] approving, among other things, certain procedures to be applied in connection with objections to claims filed by current or former borrowers (collectively, the "Borrower Claims," and the procedures relating thereto, the "Borrower Claims Procedures"). The Procedures Order includes specific protections for borrowers and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims. For example, the Borrower Claims Procedures require that, prior to objecting to certain categories of Borrower Claims, individual borrowers must be furnished with a letter requesting additional documentation in support of the purported claim (a "Request Letter"). (See Procedures Order at 4).

8. Prior to the Plan Effective Date, the Debtors determined that no Request Letter was required to be sent to Ms. Schmidt under the Borrower Claims Procedures.

**B.     The Schmidt Claim**

9. On October 30, 2012, Ms. Schmidt filed the Schmidt Claim (Claim No.

---

[4] The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribing the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "Governmental Bar Date"). Bar Date Order ¶¶ 2, 3. On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093]. The Governmental Bar Date was not extended.

4

ny-1147287

2024) as an administrative priority claim in the amount of $245,241.48 against ResCap.[5]

10. On September 20, 2013, the Debtors filed the *Debtors' Forty-Ninth Omnibus Objection to Claims (No Liability Borrower Claims – Books and Records)* [Docket No. 5161] (the "Forty-Ninth Omnibus Claims Objection") seeking to disallow and expunge various claims, including Claim No. 2024 filed by Ms. Schmidt.[6]

11. On April 1, 2014, the Borrower Trust withdrew without prejudice the Forty-Ninth Omnibus Claims Objection solely as it related to Claim No. 2024 filed by Ms. Schmidt [Docket No. 6737], and the Borrower Trust reserved all rights to object to Claim No. 2024 on any basis in the future.[7]

## RELIEF REQUESTED

12. The Borrower Trust hereby files this Objection pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007, and seeks the entry of an order, substantially in the form annexed hereto as Exhibit 3, disallowing and expunging the Schmidt Claim from the Claims Register because the Debtors' books and records do not reflect any basis or liability therefor.

## OBJECTION

13. A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If an objection refuting at least one of the claim's essential

---

[5] The Schmidt Claim left the debtor name and case number boxes blank. By default, KCC lists the Schmidt Claim as a claim against Residential Capital, LLC on the Claims Register.

[6] Ms. Schmidt interposed identical responses (together, the "Response") to the Forty-Ninth Omnibus Claims Objection [Docket Nos. 5505, 5552] on October 22, 2013 and October 25, 2013, respectively. On January 27, 2014, the Borrower Trust filed a reply to the Response [Docket No. 6369].

[7] The Borrower Trust determined that Claim No. 2024 -- unlike the other claims that were the subject of the Forty-Ninth Omnibus Claims Objection -- was not a typical loan modification claim (i.e., a claim founded on allegations that the Debtors either failed to provide a loan modification or provided a loan modification with terms that were not as favorable to the claimant as the claimant believed he or she was entitled to) and thus it was more appropriately addressed in a stand-alone claim objection.

5

ny-1147287

allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co., L.P. v. Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed. Appx. 40 (2d Cir. 2002). Moreover, section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. 502(b)(1). Furthermore, the burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor. Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

14.  As explained in further detail below and in the Horst Declaration, after the Borrower Trust conducted an exhaustive examination of the Debtors' books and records to assess the allegations made in the Schmidt Claim, the Borrower Trust believes that there is no merit to Ms. Schmidt's asserted claims. Accordingly, the Borrower Trust now files this Objection to the Schmidt Claim, which addresses the merits of the allegations set forth therein.

15.  As a preliminary matter, Ms. Schmidt incorrectly filed her claim as an administrative priority claim under section 503(b)(9) of the Bankruptcy Code. There are no documents appended to the proof of claim evidencing or demonstrating that Ms. Schmidt is entitled to an administrative priority claim under section 503(b)(9) of the Bankruptcy Code. In short, this is not a claim arising from the value of goods received by the Debtors in the ordinary course of business within 20 days of the May 14, 2012 Petition Date, nor is the claim entitled to any other administrative priority.

6

ny-1147287

16. According to the Schmidt Claim, the total claim consists of (a) $183,600.00 in damages related to "fraudulent refinancing"; (b) "Hurricane Katrina related claims" in the total amount of $38,457.75; (c) a "Hurricane Katrina related claim" in the amount of $17,433.68 (purportedly held in escrow by Debtor GMAC Mortgage, LLC ("GMACM")); and (d) a "Hurricane Isaac related claim" in the amount of $5,750.05 (purportedly held in escrow by GMACM).

17. The Schmidt Claim attaches a copy of a Petition for Damages, filed on June 27, 2012 by Ms. Schmidt against GMACM in the 24th Judicial District Court for the Parish of Jefferson in the State of Louisiana (No. 716448) (the "Petition for Damages"), that describes the purported bases for the foregoing claims. In the Petition for Damages, Ms. Schmidt essentially alleges that she was damaged because her ex-husband, Douglas Schmidt ("Mr. Schmidt", and together with Ms. Schmidt, the "Schmidts"), entered into a loan modification agreement with GMACM without her knowledge or consent, and because GMACM disbursed certain insurance proceeds related to hurricane damage to the Property (as defined below) to Mr. Schmidt rather than to her. The Petition for Damages was automatically stayed upon the Petition Date. The Schmidt Claim also attaches a copy of a Marital Property Settlement Agreement between Ms. Schmidt and Mr. Schmidt, dated November 22, 2010 (the "Marital Settlement Agreement"), as well as a copy of a Non-HAMP Loan Modification Agreement between Mr. Schmidt and GMACM, dated June 29, 2011 (the "Loan Modification Agreement").

18. Prior to filing this Objection as well as after reviewing the Response,[8] the Liquidating Trust on behalf of the Borrower Trust attempted to reconcile the Schmidt Claim with

---

[8] The Response essentially summarizes the allegations in the Petition for Damages. In the Response, Ms. Schmidt increased the amount of the "Hurricane Isaac related claim" to $9,091.29 and added a "Homeowners' claim" of $1,644.31 (purportedly held in escrow by GMACM).

7

ny-1147287

the information in the Debtors' books and records. See Horst Declaration at ¶ 6. Specifically, the Liquidating Trust reviewed, among other documents, Mr. Schmidt's note and the accompanying mortgage, the purported Marital Settlement Agreement, the Loan Modification Agreement, and various correspondence between the Schmidts and GMACM with respect to the foregoing. See id.

19. According to Ms. Schmidt, the $183,600.00 amount of the "fraudulent refinancing" component of the Schmidt Claim equals the amount of payments made by Ms. Schmidt over the course of nine years to GMACM in connection with Mr. Schmidt's mortgage loan (prior to Mr. Schmidt's loan modification). However, neither the Schmidt Claim nor the Response includes any documentary or other evidence substantiating the amount of that portion of the claim. See Horst Declaration at ¶ 7. Similarly, neither the Schmidt Claim nor the Response provides any documentary or other evidence substantiating the amount of the insurance-related claims. See id.

20. According to the Marital Settlement Agreement, (a) the Schmidts were married on April 15, 1998; (b) pursuant to the Schmidts' marriage contract referenced in the Marital Settlement Agreement (the "Marriage Contract"), Mr. Schmidt was obligated to purchase, at his own expense, the Schmidts' marital home, provided that the home would be owned one-half by each of the Schmidts; and (c) in accordance with the Marriage Contract, Mr. Schmidt purchased a home located at 3608 Wanda Lynn Drive, Metairie, Louisiana 70002 (the "Property"). See Horst Declaration at ¶ 8; see also Marital Settlement Agreement (a copy of which is included with the Schmidt Claim attached hereto as Exhibit 1) at pp. 1-2.

21. In order to finance his purchase of the Property, Mr. Schmidt obtained a loan in the principal amount of $172,000.00 (the "Loan") that was originated by North Texas

8

ny-1147287

Financial Network, Inc. on June 26, 2002. See Horst Declaration at ¶ 9. The Loan was evidenced by an adjustable rate mortgage note dated June 26, 2002 executed by Mr. Schmidt (the "Original Note" or "Original Loan"). See id.; Original Note, Exhibit A to Horst Declaration. Although title to the Property was in the name of both of the Schmidts, only Mr. Schmidt signed the Original Note. See Horst Declaration at ¶ 9; Original Note, Exhibit A to Horst Declaration. Mr. Schmidt's obligations under the Original Note were secured by a mortgage on the Property signed by both of the Schmidts and recorded on or about July 1, 2002 (the "Original Mortgage"). See Horst Declaration at ¶ 9; Original Mortgage, Exhibit B to Horst Declaration. Homecomings Financial Network, Inc. serviced the Original Loan from September 1, 2002 until servicing transferred to GMACM on or about July 1, 2009. See Horst Declaration at ¶ 9. On February 16, 2013, servicing of the Modified Loan (as defined below) was transferred to Ocwen. See id.

22. According to the Marital Settlement Agreement, the Schmidts were divorced on or about April 29, 2004. See Horst Declaration at ¶ 10; see also Marital Settlement Agreement at p. 2. The Marital Settlement Agreement (dated November 22, 2010) states, among other things, that (a) Mr. Schmidt agreed to transfer all of his right, title and interest in the Property to Ms. Schmidt; (b) Mr. Schmidt agreed to transfer to Ms. Schmidt all right, title and interest in and to insurance proceeds then held by the lender in the approximate amount of $22,000.00; (c) Mr. Schmidt agreed to bring the Original Mortgage current through March 2010; (d) Mr. Schmidt agreed to pay one-half of the sum due and owing to bring the Original Mortgage current through November 2010; (e) Mr. Schmidt agreed to execute all documents necessary to allow the lender and its successors or assigns to provide account information to Ms. Schmidt; (f) Ms. Schmidt agreed to pay one-half of the sums due and owing on the Original Mortgage from April 2010 through November 2010; and (g) Mr. Schmidt agreed to pay Ms. Schmidt one-half of

9

ny-1147287

the payoff figure for the Original Loan as of December 2010 in monthly installments that would be equal to one-half of the monthly payment as required by the lender, with Ms. Schmidt agreeing to pay the full monthly amount due to the lender. See Horst Declaration at ¶ 10; see also Marital Settlement Agreement at pp. 2-3.

23.     On June 29, 2011, Mr. Schmidt and GMACM entered into the Loan Modification Agreement, effective as of July 1, 2011, which modified the terms of the Original Loan (the "Modified Loan"). See Horst Declaration at ¶ 11.

*"Fraudulent Refinancing" Claim*

24.     Ms. Schmidt contends that she was damaged because Mr. Schmidt and GMACM entered into the Loan Modification Agreement without her knowledge or consent. GMACM, however, did not have an affirmative duty to contact Ms. Schmidt with respect to the modification of the Original Loan. See Horst Declaration at ¶ 12. Although the Original Mortgage was signed by both of the Schmidts, the Original Note was signed only by Mr. Schmidt. See id. Since Mr. Schmidt was the sole obligor under the Original Note, the request for a loan modification was negotiated only with him consistent with the terms of the Original Mortgage. See id. The Original Mortgage states, in pertinent part, that "… any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): … agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent." See id.; Original Mortgage (Section 13), Exhibit B to Horst Declaration (emphasis added). There is nothing in the Debtors' books and records, and Ms. Schmidt has provided no documentary or other evidence, to suggest that Ms. Schmidt assumed or was otherwise obligated on the Original Loan or the Modified Loan. See Horst Declaration at ¶ 12.

10

ny-1147287

The fact that Ms. Schmidt signed the Original Mortgage did not make her a borrower obligated under the Original Note. See id. Ms. Schmidt's only obligation to make payments to GMACM is found in the Marital Settlement Agreement, a purported contract between only her and Mr. Schmidt. See id.

25.     Subsequent to the date of the Loan Modification Agreement (June 29, 2011), GMACM received letters from Ms. Schmidt on a monthly basis enclosing one-half of the monthly payment due under the Modified Loan. See Horst Declaration at ¶ 13. Indeed, up until receipt of the Petition for Damages, Ms. Schmidt did not make GMACM aware of any dispute she had related to the Loan Modification Agreement since there was no communication from her that raised such an issue. See id.

26.     Lastly, any argument by Ms. Schmidt that she suffered financial damage as a result of the Loan Modification Agreement is belied by the fact that, according to GMACM's calculations, the aggregate amount of payments required under the Modified Loan until maturity is approximately $2,455.86 less than the aggregate amount of payments that would have been required under the Original Loan in the absence of the loan modification. See Horst Declaration at ¶ 14. Moreover, as noted, even if the amount paid on account of the Original Loan prior to the loan modification (which Ms. Schmidt alleges to be $183,600.00) is a cognizable claim against GMACM -- which it is not -- Ms. Schmidt fails to substantiate this amount. See id.

27.     In sum, GMACM had no contractual or other obligation to obtain Ms. Schmidt's consent to the Loan Modification Agreement, see Horst Declaration at ¶ 15, and Ms. Schmidt has failed to demonstrate how she was harmed by the Debtors' actions. Accordingly, there is no basis for Ms. Schmidt's "fraudulent refinancing" claim against GMACM.

*Insurance-Related Claim*

28.  With respect to the portion of Ms. Schmidt's claim concerning the hurricane-related insurance proceeds, because (a) only Mr. Schmidt signed the Original Note and (b) the Loan Modification Agreement was negotiated and executed only by Mr. Schmidt, GMACM only was obligated to remit any insurance proceeds, including those related to damage to the Property caused by Hurricanes Irene and Katrina, to Mr. Schmidt. See Horst Declaration at ¶ 16.  In the loan servicing industry, it is standard practice to release insurance proceeds to the loan servicer, who then inspects the property and the proposed repairs and releases the funds to the noteholder in installments until the repairs are complete.  See id.  Mr. Schmidt was the sole borrower and obligor under the Original Loan and the Modified Loan and, therefore, the only party to whom the loan servicer can deliver the proceeds of the insurance policies.  See id.

29.  In sum, GMACM had no contractual or other obligation to remit the insurance proceeds to Ms. Schmidt and rightfully remitted the proceeds to Mr. Schmidt (or rightfully held certain proceeds in escrow pending an inspection).  See Horst Declaration at ¶ 17.[9]  Accordingly, there is no basis for Ms. Schmidt's insurance-related claim against GMACM.

30.  Based on the foregoing and as further supported by the Horst Declaration, the Debtors determined that they have no liability with respect to the Schmidt Claim, and accordingly, the Borrower Trust requests that the Schmidt Claim be disallowed and expunged in its entirety.

---

[9]  As noted, Ocwen is currently servicing the Modified Loan.  The Liquidating Trust understands that Ms. Schmidt (who currently resides at the Property) has not allowed Ocwen to inspect the Property or the proposed repairs, and Ocwen will not release any insurance proceeds remaining in escrow until an inspection is completed.  See id.

## NOTICE

31. The Borrower Trust has provided notice of this Objection in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141], and the Procedures Order.

## CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of an order, substantially in the form of Exhibit 3 attached hereto, (a) disallowing and expunging the Schmidt Claim and (b) granting such other and further relief as is just and proper.

Dated: July 2, 2014  
      New York, New York

/s/ Norman S. Rosenbaum  
Gary S. Lee  
Norman S. Rosenbaum  
Jordan A. Wishnew  
MORRISON & FOERSTER LLP  
250 W. 55th Street  
New York, New York 10019  
Telephone: (212) 468-8000  
Facsimile: (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*