UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date:  July 30, 2014
Hearing Time: 10:00A.M

**<u>RESPONSE TO OBJECTION
TO CLAIM NO. 392</u>**

Case No.: 12-12020

(Chapter 11)

In Re:

RESIDENTIAL CAPITAL, LLC, et al.

Debtors

Assigned to:
Hon. Martin Glenn
Bankruptcy Judge

**OPPOSITION AND RESPONSE OF KEVIN J. MATTHEWS TO THE
OBJECTION OF THE RESCAP BORROWER CLAIM TRUST TO CLAIM
NUMBER 392**

Dated: July 3, 2014
Silver Spring, MD

Phillip Robinson
Consumer Law Center LLC
8737 Colesville Road, Suite 307
Silver Spring, MD  20910
Phone (301) 637-6270
Email: phillip@marylandconsumer.com

*Counsel for Creditor Kevin J.
Matthewsand Admitted Pro Hoc Vice*

# TABLE OF CONTENTS

Page

I.   INTRODUCTION.................................................................................1

II.  WELL PLED FACTS SUMMARY.................................................2

III. STANDARD OF REVIEW....................................................................5

IV.  ARGUMENT.......................................................................................6

A. Overview of Maryland Foreclosure Collection Law................................6

i.   *Background on Maryland's Foreclosure Collection System*......................6

ii.  *GMAC's Knowingly False Affidavit and Notarization Practices is a Material Violation of Maryland's Debt Collection Practices*....................9

iii. *A Maryland Borrower May Disclaim a Lender's Declared Default if the Lender has Not Complied with the Required Loss Mitigation Requirements Related to His Loan.*..........................11

B. Continuing to Act Without a License, GMAC's Maintaining of a Second Foreclosure Action Against Matthews is Improper and Illegal and if Completed Would Only Result in a Void Judgment.............................13

C. Objector is Judicially Estopped from Claiming GMAC's First Foreclosure Debt Collection Action was Just and Proper when GMAC Admitted and Requested to the Circuit Court that the Action Should be Dismissed as Improperly Filed and Maintained.........................................15

i.   *Matthews Requests the Court to Take Judicial Notice*.............................15

ii.  *Objector is Judicially Estopped from Arguing Alternative Facts to GMAC's Prior Position*...........................................17

D. Objector's Purported Testimony of Lauren Delehey is Not Admissible Under the Federal Rules of Evidence and Should be Disregarded and Stricken.............19

E. Matthews has Stated Proper Claims under Maryland and Federal law Which are Subject to his Proof of Claim.............................22

i.   Fraud/fraudulent concealment.............................22

# TABLE OF CONTENTS
**(continued)**

|  |  |  |
|---|---|---|
| *ii.* | MCPA | 23 |
| *iii.* | MMFPA | 26 |
| *iv.* | MCDCA | 30 |
| *v.* | FDCPA | 31 |
| F. | OTHER ARGUMENTS OF RESCAP BORROWERS CLAIMS TRUST | 33 |
| *i.* | *Objector's Res Judicata Argument is Wrong as a Matter of Law and Fact* | 33 |
| *ii.* | *Objectors are Wrong and There is No Basis for the Court to Conclude that Every Claim Involving HAMP is Preempted* | 35 |
| *iii.* | *The Witness Immunity Doctrine has No Application to the Actual Claims Before the Court* | 36 |
| V. | CONCLUSION | 37 |

# INTRODUCTION[1]

The dispute between Kevin J. Matthews' ("Matthews" or "Creditor") and GMAC Mortgage LLC ("GMAC") is not new but arose at the outset of the foreclosure crisis and continues to this day. Matthews simply requested that he be considered for loss mitigation options available and required to be given to him under the VA loan program. GMAC ignored those requests and pursued a debt collection action against Matthews and his home without the right to do so and in a manner not permitted under Maryland law. Further, GMAC admitted these facts and conclusions to the state court when it agreed to dismiss the first foreclosure action against him and hundreds of similar improper cases. GMAC also seized Matthews' personal property from his home and refused to return it to him and caused damage to his home when it took possession but failed to protect it from winter weather conditions. Finally, even after it admitted to the state court that its actions were improper, GMAC refused to return to Matthews the keys to his property for the locks it had changed and he had to break-in and face potential arrest by the Baltimore City Police when they thought he was breaking into the property illegally. As a result of GMAC's acts and omissions, Matthews sustained damages and losses which are subject to his Proof of Claim No. 392.

On June 12, 2014, the ResCap Borrower Claims Trust ("ResCap" or "Objector") filed its objection to Matthews' Proof of Claim advancing multiple arguments which are not supported by the law or facts before the Court and knowingly ignore the prior position(s) of Objector's privy GMAC Mortgage, LLC ("GMAC"). *See* Doc. 7094. Essentially the Objector makes unsupported

---

[1] The Objector filed a 37 page objection with the Court and counsel inquired of the Court's chambers if Matthews was restrict to any page limit in his memorandum response and was informed by chambers that the Court would permit him to respond with a limit of 37 pages which Matthews has followed in this response and opposition (not including the exhibits).

factual arguments which are not admissible under the federal rules and cannot overcome the presumption in favor of Matthews and focuses on incorrect legal arguments. In response Matthews puts forward actual admissible evidence and legal argument based on federal and Maryland law which ironically forecloses Objector's main contentions since it is estopped from taking a contrary position of its privy GMAC which has been adjudicated to a final order. Matthews' response and opposition also puts forward undisputed evidence that GMAC continues its illegal practices by maintaining a debt collection action against Matthews in the Circuit Court for Baltimore City, without the legal right to do so since it voluntarily has surrendered its license to operate in the State of Maryland. For the reasons stated herein, ResCap's Objection should be overruled.

## **WELL PLED FACTS SUMMARY**

Mr. Matthews will not recite and repeat his well pled facts of his detailed Proof of Claim/Counter Complaint ("CC") and will simply incorporate generally as if restated herein. In addition Mr. Matthews incorporates facts averred in his Declaration ("Matthews Declaration") attached as Exhibit 13 and the Declaration of his counsel ("Robinson Declaration") attached hereto as Exhibit 14 and other witnesses ("Dawson Declaration")("E. Matthews Declaration")("Green Declaration")("Fleming Declaration") attached hereto as Exhibits 15-18. Within this Response he does cite to specific allegations as appropriate. However, for the Court's convenience in addition to his incorporation of the well pled facts alleged in his Counter Complaint, Mr. Matthews provides this general summary of the operative facts relevant to ResCap's Objection to his Proof of Claim.

The underlying claims involve the combined collection practices and procedures of the Debtors and their agents against Mr. Matthews and his home and property and include fraudulent, unfair, and deceptive practices concerning: (1) GMAC's unfair and deceptive unfair or deceptive acts and omissions concerning Mr. Matthews' loss mitigation efforts (CC at ¶¶ 46-61, 80-88;

2

Matthews Declaration ¶¶13-17, 19-22, 24-26, 29-32); (2) GMAC's false and deceptive representations to Mr. Matthews that it was in fact USAA Federal Savings Bank ("USAA") (CC at ¶¶ 31, 46, 53, 54, 76, 84-89, 92, 109-114; Matthews Declaration ¶¶3, 12-22); (3) each of the illegal and otherwise unfair and deceptive practices in the First Foreclosure Action against Mr. Matthews, which was dismissed by GMAC and its agents, including Ward, only after he appeared and objected to the methods used by the Debtors (CC at ¶¶ 76-82, 91-94, 100-104; Matthews Declaration ¶¶16, 17, 27, 28), (4) Mr. Matthews' illegal eviction by GMAC (CC at ¶¶ 95-99, 105-108; Matthews Declaration ¶¶ 19, 20), and (5) the illegal collection practices utilized in and leading up to this action by GMAC and its authorized agents (CC at ¶¶ 109-116; Matthews Declaration ¶¶ 19, 21, 23-26, 29, 32).

GMAC's practices subject to this action are not unique to Mr. Matthews; the Court may take judicial notice that many of the same general practices at issue by GMAC and its authorized employee Stephan and attorney were also subject to public rebuke in other fora.  (CC at ¶¶ 27-36; Matthews Declaration ¶¶27-29, 34) and have been subject to this Court's involvement.

Mr. Matthews has pled specific times and other details of the misrepresentations by the GMAC and its agents and his reasonable reliance on those statements.  (CC at ¶¶ 1, 5, 7. 52-55, 57, 59, 66, 80, 82, 84-86; Matthews Declaration ¶¶13-17, 19-22, 24-26, 29-32).  He has further alleged specific damages not from any default of his mortgage loan but those arising from the Debtors' and their agents' collection practices.  (CC at ¶ 117; Matthews Declaration ¶39; Robinson Declaration ¶¶ 3,4; Fleming Declaration ¶¶4, 5; Green Declaration ¶¶ 5, 6; Ernest Matthews Declaration ¶¶7-9; Dawson Declaration ¶¶3-5). These damages include:

a.      Statutory damages available under the FDCPA[2] and MMFPA,[3]

b.      Incurring legal fees defending the bogus First Foreclosure Action when GMAC did not have the right to so in the manner it attempted to pursue,[4]

c.      fees and costs assessed to his mortgage account based upon the bogus and otherwise improper foreclosure actions,[5]

d.      damage to his credit through the public reporting of two foreclosure collection actions filed in a manner to which GMAC and its authorized agents had no right to pursue and maintain,[6]

e.      emotional damages and losses as a result of the illegal debt collection practices of GMAC and its authorized agents and employees which dramatically reduced his academic GPA while he was in fear of losing his home during the First Foreclosure Action and at risk of being put on academic probation which would have jeopardized his academic assistance package, and caused emotional damages manifested by irritability, anger,

---

[2] 15 U.S.C.A. § 1692k(a)(2).

[3] Md. Code Ann., Real Prop. § 7-406(c).

[4] *Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 370 (D. Md. 2010)("if the plaintiffs succeed in proving that [defendant] violated the MCPA and/or the MCDCA when it filed lawsuits against them, and that the expenditure of attorneys' fees to defend themselves in those actions was "reasonable and necessary," *id.,* they may be entitled to recover those costs as actual damages").

[5] *Empire Realty Co. Inc. v. Fleisher*, 269 Md. 278, 284, 305 A.2d 144, 147 (1973)("It is the general rule that one may recover only those damages that are affirmatively proved with reasonable certainty to have resulted as the natural, proximate and direct effect of the injury").

[6] *Marchese v. J.P. Morgan Chase Bank, N.A.*, 917 F.Supp.2d 452, 468 (2013)("this Court held in *Barry* that the plaintiff sufficiently pled damages under the MCPA when he averred penalties, lost credit opportunities, and emotional distress as a result of the defendant's MCPA violations. 2012 WL 3595153, at *8).

sleeping problems, stress, worry, and decreased socialization.[7]

## **STANDARD OF REVIEW**

Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of

claim." 11 U.S.C. § 501(a). A filed proof of claim is "deemed allowed, unless a party in interest

...objects." 11 U.S.C. § 502(a). If the claim is properly filed, it is *prima facie* evidence of the

validity and amount of the claim. *See* FED. R. BANKR. P. 3001(f). A party in interest may object

to a proof of claim, and once an objection is made, the court must determine whether the objection

is well founded. *See* 4 COLLIER ON BANKRUPTCY ¶ 502.02[2] (16th ed. 2013). Although

Bankruptcy Rule 3001(f) establishes the initial evidentiary effect of a filed claim…

> [t]he burden of proof for claims brought in the bankruptcy court under [section] 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "*prima facie*" valid. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal in force to the *prima facie* case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant.

*In re Allegheny Intern., Inc.*, 954 F.2d 167, 173–74 (3rd Cir. 1992) (internal citations omitted). *In*

*re MF Global Holdings Ltd*., Nos. 11-15059, 11-02790, 2012 WL 5499847, at * 3 (Bankr.

S.D.N.Y. Nov. 13, 2012)("The party objecting to the proof of claim bears the burden of "providing

evidence to show that the proof of claim should not be allowed").

---

[7] *Green v. N.B.S., Inc.*, 409 Md. 528, 530, 976 A.2d 279, 280 (2009)(recognizing that non-economic emotional distress damages are available under the Maryland Consumer Protection Act); *Hoffman v. Stamper*, 385 Md. 1, 34-35 (2005).

If the objecting party satisfies its initial burden and "the presumption of *prima facie* validity is overcome—e.g., the objecting party establishes that the proof of claim lacks a sound legal basis—the burden shifts to the claimant to support its proof of claim unless the claimant would not bear that burden outside of bankruptcy." *Id.* (citing *In re Oneida Ltd.*, 500 B.R. 384, 389 (Bankr. S.D.N.Y. 2009). Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

"What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law." *In re Hess*, 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009) (quoting *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946)).

## ARGUMENT

### A. OVERVIEW OF MARYLAND FORECLOSURE COLLECTION LAW

#### i.    *Background on Maryland's Foreclosure Collection System*

In most Maryland foreclosure actions there is no pleading;[8] however, every document filed is a "paper". Md. Rule 1-311. The state court obtains jurisdiction by the filing of specific papers, *i.e.,* by the filing of an order to docket with all mandated attachments.   MD. CODE ANN., REAL

---

[8] Md. Rule 1-202(t):   "Pleading" means a complaint, a counterclaim, a cross- claim, a third-party complaint, an answer, an answer to a counterclaim, cross-claim, or third-party complaint, a reply to an answer, or a charging document as used in Title 4.

PROP. §7-105.1(e) ("an order to docket … shall … include"); Md. Rule 14-203(b) and 14-207(a).  Every paper filed in a Maryland court must be signed by an attorney or a *pro se* party.

> Every pleading and paper of a party represented by an attorney shall be signed by at least one attorney who has been admitted to practice law in this State and who complies with Md. Rule 1-312.   Every pleading and paper of a party who is not represented by an attorney shall be signed by the party.

Maryland Md. Rule 1-311(a).  *See also, AGC v. Goldberg,* 292 Md. 650, 441 A.2d 338 (1982).

The only individual who may commence a consent decree foreclosure in Maryland is "any individual authorized to exercise a power of sale" through the filing of an Order to Docket. MD. CODE ANN., REAL PROP. § 7-105.1(d); Md. Rule 14-204(a)(1). Under Maryland statutes and Maryland Rules, every Order to Docket must be accompanied by  certain documents, including a number of affidavits. MD. CODE ANN., REAL PROP. § 7-105.1 and Md. Rule 14-207(b).   Without these papers and affidavits, a substitute trustee may not acquire the jurisdiction of the Maryland courts to commence a foreclosure and may not conduct a foreclosure action whatsoever.  *Id.*

The Maryland Court of Appeals' decision in *Maddox v. Cohn,* 36 A.3d 426 (2012), confirms the Maryland legislature's intention to move foreclosure policy in a direction that emphasizes protecting homeowners against unfair or deceptive practices  and  requiring  strict compliance with the requirements of the law.   In *Maddox,* the Court of Appeals opined on the legislature's enactments with respect to foreclosures as follows:

> It is clear that the legislative process relating to mortgage foreclosures of the last several years has been designed to slow down the mortgage foreclosure practices **to limit the abuses of past years** and **to provide additional protections to homeowners**. In our view the Legislature has effectively changed Maryland's slanted in favor of secured parties foreclosure  practices  **to one requiring compliance with  much stricter standards, tipping the playing field to protect debtors**…

The Legislature's public policy statements as exemplified by its recent enactments

persuade us a stricter adherence to the rules of procedure in mortgage foreclosure sales of residential property is required.

*Maddox* at 434  (emphasis added).

In *Maddox*, the court was faced with the issue of whether a foreclosure sale was proper where substitute trustees introduced conditions of sale not authorized by Maryland law and how strictly or loosely compliance with foreclosure procedures ought to be considered by Maryland courts.  The *Maddox* court acknowledged that the specific act at issue was relatively minor.   *Id* at 437 ("While the fee attempted to be imposed in the present case is relatively minor…").  Additionally, the fees improperly imposed in *Maddox* were neither hidden nor misrepresented; they were simply not authorized.  *Id.* at 427.

The *Maddox* court held the statutory purpose of the new reforms is not simply to better inform borrowers but also "to further protect the interests of mortgagors relating to foreclosures, especially foreclosures of residential properties." *Id.* at 430. As such, the Maryland legislature "created exhaustive and extensive processes, such as mediation, waiting periods and the like relating to additional duties that lenders have before or during the foreclosure process." *Id*. at 431.

Thus, the Maryland Court of Appeals has acknowledged that the legislative intent behind the foreclosure amendments in Maryland since 2008 was to protect homeowners by insisting upon strict compliance with procedure.   This statement of policy cannot be harmonized  ResCap's Objection and the practices described in Mr. Matthews' Proof of Claim and the Counter-Complaint which it incorporates, concerning GMAC's knowingly fraudulent and/or misstatements, omissions, or otherwise unfair and deceptive acts related to the commencement of GMAC's First Foreclosure Action against Matthews and his home.  GMAC intended the assembly line practice of filing falsely executed affidavits and other papers in the

8

state court foreclosure actions to speed up the process and to cut corners which cannot be reconciled with the strict compliance required by *Maddox*. Further abiding by the strict requirements applied to foreclosure proceedings by Maryland's legislature, governor and the judicial branches would affect the greatest benefit to Maryland state homeowners caught in the foreclosure crisis. More to the State's interest beyond simple due process for homeowners, is the minimizing of the devastating effects of foreclosures as noted in *Maddox*.

ii.    *GMAC's Knowingly False Affidavit and Notarization Practices is a Material Violation of Maryland's Debt Collection Practices*

Some of Mr. Matthews' claims that form the basis of his Proof of Claim relate to the debt collection practice of GMAC and its agents to mass produce written testimony, which is not based on personal knowledge or any review of any records (despite representations to the contrary), and knowingly present the manufactured evidence to the state courts including the First Foreclosure Action filed by GMAC's agents against Matthews. *See CC at ¶ 79 and KM Dec. at ¶¶ 26, 27* The Maryland Court of Appeals has aptly described the process as follows:

> For years, in foreclosure actions in Maryland, "courts, with good reason and really of necessity, have relied on the accuracy of affidavits, especially when filed by attorneys, unless there is something on the face of the document to suggest otherwise or the validity of the affidavit is challenged." Wilner, *supra* at 1. This system of trust collapsed with the shocking discovery that in thousands, if not tens of thousands, of residential foreclosure actions, the affidavits filed with the courts were "bogus": "the affiant either did not have sufficient knowledge of the facts stated in the affidavit to validly attest to their accuracy or did not actually read or personally sign the affidavit." *Id.* at 1, 2. This practice became known as "robo-signing"—the term that "describes mortgage servicers' response to the tremendous volume of mortgage defaults and foreclosures after 2007: assembly-line signing and notarizing of affidavits for foreclosure cases, mortgage assignments, note allonges and related documents, all filed in courts and deed recorders in counties across the United States." White, A., *supra* at 469–70.
>
> The robo-signing scandal erupted after an attorney representing a homeowner in a foreclosure action discovered that the documents in the client's file were signed by someone with a title of "limited signing officer." David Streitfeld, *From a Maine*

9

> *House, a National Foreclosure Freeze,* N.Y. Times, Oct. 14, 2010, at A 1, *available at* http://www.nytimes.com/2010/10/15/business/15maine.html. **At a deposition, this "limited signing officer" testified that, "as the team lead for the document execution team," his sole "role in the foreclosure process" was "the signing of documents." Oral Deposition of Jeffrey D. Stephan** at 20:19–24, *Fed. Nat'l Mortgage Ass'n v. Bradbury,* No. BRI–RE–09–65 (D.Me. Jun. 7, 2010), *available at* http://graphics8.nytimes. com /packages/pdf/business/15mainestephandeposition. pdf. **He signed 400 documents a day (10,000 a month), without any personal knowledge of the information contained therein, without reading them, and without a notary present**.

*Attorney Grievance Com'n of Maryland v. Dore*, 73 A.3d 161, 177 (Md. 2013) (emphasis added).

The Court will note that Jeffrey Stephan was the "limited signing officer" for several of the documents submitted in the First Foreclosure Action against Mr. Matthews. *See* CC at ¶ 79 and KM Dec. at 26, 27. In addition to the false signatures of Stephan on some of the documents in Mr. Matthews' case, a principal of the firm selected as substitute trustees by GMAC in Mr. Matthews' First Foreclosure Action, Jacob Geesing, was subject to disciplinary action for mass producing documents to be submitted to the state courts based on fraudulent, forged signatures and notarizations. On appeal of the disciplinary measures taken by the Maryland Attorney Grievance Commission, the Court of Appeals opined as follows:

> Here, clear and convincing evidence supports the hearing judge's conclusion that Geesing violated MLRPC 3.3(a)(1). Routinely, Geesing authorized one of two members of BWW Law's staff to sign his name on documents—including affidavits—in foreclosure filings. Geesing instructed the staff members (who were also notaries public) to notarize the affidavits, even though he had not signed them. A notary public properly notarizes a document only if the document is signed in the notary public's presence. *See* Md.Code Regs. ("COMAR") 01.02.08.02A(2) ("To take an acknowledgment, a notary shall ... [o]bserve the signing of the document[.]"). Thus, Geesing filed affidavits that he knew to have been falsely notarized.

*Attorney Grievance Com'n of Maryland v. Geesing*, 80 A.3d 718, 722-723 (Md. 2013).

The same and similar conduct described in *Geesing* was at play in the First Foreclosure Action brought against Mr. Matthews by GMAC and he has detailed in his proof of claim.[9] *See* Counter-Complaint attached to Mr. Matthews' Proof of Claim at ¶¶ 8, 27, 29, 32-34, 79, 82, 100.

The false, fraudulent, and deceptive affidavit practices at issue also led the Maryland Court of Appeals to revise the Maryland Rules with respect to foreclosures by enacting Rule 14-207.1 on October 20, 2010. This Rule provides for greater court oversight in the conduct of foreclosure cases and the opportunity to dismiss a case where false affiant signatures, testimony, and or notarizations are utilized.  In enacting the rule, Maryland's Standing  Committee  on  Rules  of Practice   and   Procedure (describing (i) prejudice to homeowners by  the  use  of  bogus affidavits  in foreclosure actions and (ii) audits conducted by the state courts which have shown "hundreds" or more of affidavits purporting to be based upon personal knowledge but in fact were not what there were represented to be and the state courts could no longer rely upon them since the "evidence…has shaken the confidence of the courts.").  166th Report of the Maryland's Standing Committee on Rules of Practice and Procedure (October15,2010) (available at http://www.courts.state.md.us/rules/reports/166threport.pdf).

> iii.    *A Maryland Borrower May Disclaim a Lender's Declared Default if the Lender has Not Complied with the Required Loss Mitigation Requirements Related to His Loan*

Under Maryland law and "the doctrine of clean hands, while [a mortgage borrower] technically may be said to be in default, the legal fiction that no default exists may be maintainable until such time as [lender/mortgage servicer] complies with the statutory and regulatory imperative

---

[9] Unfortunately, despite the development of the case law cited above and myriad other instances of attorney discipline and other litigation over the robo-signing issue, substitute trustees still engage in the practice. Just last month the Court of Appeals issued another opinion reprimanding two attorneys at a foreclosure firm for the same false and deceptive practices. *See generally, Attorney Grievance Com'n of Maryland v. McDowell,* 2014 WL 2766673 (Md. June 19, 2014).

to pursue loss mitigation prior to foreclosure." *Wells Fargo Home Mortgage, Inc. v. Neal*, 398 Md. 705, 730, 922 A.2d 538, 553 (2007). In addition, "a mortgagee's commencement of a foreclosure proceeding on an FHA-insured mortgage, without first having adhered to the mandatory HUD loss mitigation regulations, may invalidate the mortgagee's declaration of default." *Id.* at 398 Md. 705, 728, 922 A.2d 538, 551.[10] *See also Anderson v. Burson*, 196 Md. App. 457, 470, 9 A.3d 870, 878 (2010) aff'd, 424 Md. 232, 35 A.3d 452 (2011)("Consequently, the mortgagor in *technical payment default* was entitled to seek an injunction *without* having to admit the debt or default, which would have required that he pay all debt due into the court")(emphasis in original)(describing the holding in *Neal*); *Piotrowski v. Wells Fargo Bank, N.A.,* CIV.A. DKC 11-3758, 2013 WL 247549, *10, FN 10 (D. Md. Jan. 22, 2013).[11]

In this action Matthews has alleged and verified in is declaration that the default declared by GMAC (acting as USAA) was a legal fiction since GMAC never complied with the VA program requirements (which mirror those of the FHA program). As such the default alleged by GMAC was invalid and cannot be utilized against him—especially in these proceedings in this Court where principals of equity must be considered. Further, this Court is "required to consider…the fundamental principles of equity that creditors of a bankruptcy estate should not be disadvantaged because of the law's delay. *Nicholas,* 384 U.S. at 689, 86 S.Ct. 1674." *In re Enron Corp.*, 333 B.R. 205, 218 (Bankr. S.D.N.Y. 2005). The fact that Matthews has been delayed in pursuing his claims by the filing of debtors' bankruptcy petition does not diminish the validity of

---

[10] While *Neal* involved an FHA-Insured loan and the loan subject to these proceedings is VA insured, there can be little doubt the result is the same in this instance.

[11] This argument addresses the claims made by Debtors in their objection that they were entitled to take various actions with respect to Mr. Matthews home, including instituting foreclosure, and the illegal lock-out. *See* Obj.¶¶ 2, 53, 81, 83, 84, 92.

stated and verified claims which GMAC has not rebutted whatsoever with any admissible evidence.

**B. CONTINUING TO ACT WITHOUT A LICENSE, GMAC'S MAINTAINING OF A SECOND FORECLOSURE ACTION AGAINST MATTHEWS IS IMPROPER AND ILLEGAL AND IF COMPLETED WOULD ONLY RESULT IN A VOID JUDGMENT**

While not expressly described in Matthews' proof of claim, it is important to note that GMAC's illegal and improper collection activities have continued in the Second Foreclosure Action against Matthews which is still pending in the circuit court. *See* CC ¶¶ 115-116 and KM Dec. ¶¶35-38; Ex. 11. However, GMAC is not now licensed as either a collection agency or even a mortgage lender even though it is required to do so under Maryland law to maintain the foreclosure case against Matthews for the purposes of attempting to collect an alleged debt. KM Dec. ¶4; Ex. 6, 7

As explained last year by the Maryland Court of Special Appeals

Maryland law requires a debt collector to obtain a license. *See* MCALA, Md.Code Ann., Bus. Reg. § 7–301(a) ("a person must have a license whenever the person does business as a collection agency in the State."). The MCALA defines a "collection agency" as a "person who engages directly or indirectly in the business of: ... (ii) collecting a consumer claim the person owns, if the claim was in default when the person acquired it." *Id.* at § 7–101(c). "[A] Consumer Debt Purchaser that collects consumer claims through civil litigation is a 'collection agency' under Maryland law and required to be licensed as such regardless of whether an attorney representing the Consumer Debt Purchaser in the litigation is a licensed collection agency." Md. State Collection Agency Licensing Bd. Advisory Notice 05–10, May 5, 2010. Acting without a license is also a misdemeanor under Maryland law. *See* MCALA § 7–401(b).

*Finch v. LVNV Funding, LLC*, 212 Md. App. 748, 758 (2013), 199 *cert. denied*, 435 Md. 266, 77 A.3d 1084 (2013).

The United States District Court for the District Maryland is in accord. *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719 (D. Md. 2011; *Ademiluyi v. PennyMac Mortgage Inv. Trust*

*Holdings I, LLC*, 929 F. Supp. 2d 502 (D. Md. 2013)(applying similar claim and facts to defaulted

mortgage purchaser); *Fontell v. Hassett*, 891 F. Supp. 2d 739 (D. Md. 2012)(applying similar claim

and facts to homeowner owners association management companies); *Winemiller v. Worldwide*

*Asset Purchasing, LLC*, 1:09-CV-02487, 2011 WL 1457749 (D. Md. Apr. 15, 2011); and *Stone v.*

*Wayric Servs., Inc.*, CIV. L-10-484, 2012 WL 3678595, *3 (D. Md. Aug. 23, 2012).

Either GMAC is presently acting as collection agency by acquiring the allege debt when it

was in default (CC ¶77; KM Dec. ¶3, ; Ex. 2) (like in the *Finch* situation) or it is acting as a

mortgage lender which under Maryland law is defined as follows, "any person who: (i) Is a

mortgage broker; (ii) Makes a mortgage loan to any person; or (iii) Is a mortgage servicer." MD.

CODE ANN., FIN. INST. § 11-501(j)(1). A mortgage servicer in turn is defined under Maryland law

as "a person who: (1) Engages in whole or in part in the business of servicing mortgage loans for

others; or (2) Collects or otherwise receives payments on mortgage loans directly from borrowers

for distribution to any other person." MD. CODE ANN., FIN. INST. § 11-501(n).[12]

Like the Maryland Collection Agency Licensing Act, the Maryland Mortgage Lender law

requires a person to have a license to act as a mortgage lender. MD. CODE ANN., FIN. INST. § 11-

504. Certain persons, (but not GMAC) are exempt from the mortgage licensing requirement. MD.

CODE ANN., FIN. INST. § 11-502(b). However, by acting as an unlicensed mortgage lender, a

person is subject to criminal penalties and may only collect the principal amount of the loan. MD.

CODE ANN., FIN. INST. § 11-523. Since the Maryland Mortgage Lender Law has the same essential

---

[12] Maryland courts have held that actions pertinent to mortgage foreclosure and enforcement of a security interest in real property constitute debt collection activity. *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 523 (D. Md. 2013).

requirements as the Maryland Collection Agency Licensing Act, under *Finch* any judgment in favor of GMAC in the Second Foreclosure Action would be void and subject to collateral attack.

Given GMAC's unclean hands and violation of Maryland law as related to Matthews, it should not be permitted to object to his proof of claim. *In re Choquette*, 290 B.R. 183, 190 (Bankr. D. Mass. 2003).

Further, for nearly identical claims before the Court in this matter involving illegal and unlicensed debt collection practices through litigation, Maryland courts have routinely entered summary judgment against a party in the same position as GMAC in this matter without any consideration that any underlying debt was owed or not. In *Bradshaw v. Hilco*, the court held after a careful analysis:

> As a matter of law, therefore, [debt collector's] filing of lawsuits against the class members constitutes "a threat to take ... action that cannot legally be taken" in violation of 15 U.S.C. § 1692e(5), and summary judgment will be entered in favor of the Plaintiffs on this claim…

> This Court notes the similarities between the Maryland Consumer Debt Collection Act and Section 1692e(5) of the Fair Debt Collection Protection Act and finds that, for the reasons stated above, [debt collector] has violated Section 14–202(8) of the Maryland Consumer Debt Collection Act. In addition, because violations of the MCDCA are expressly designated as "unfair or deceptive trade practices" under the Maryland Consumer Protection Act, this Court also finds that [debt collector] has violated that statute as well. As a result, summary judgment will be entered in favor of the Plaintiffs on these claims.

*Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 731-33 (D. Md. 2011).

**C. OBJECTOR IS JUDICIALLY ESTOPPED FROM CLAIMING GMAC'S FIRST FORECLOSURE DEBT COLLECTION ACTION WAS JUST AND PROPER WHEN GMAC ADMITTED AND REQUESTED TO THE CIRCUIT COURT THAT THE ACTION SHOULD BE DISMISSED AS IMPROPERLY FILED AND MAINTAINED**

   *i.    Matthews Requests the Court to Take Judicial Notice*

15

Mr. Matthews requests that the Court take judicial notice pursuant to Fed. R. Evid. 201, of certain adjudicative facts that support his claims related to GMAC's improper debt collection practices and his Proof of Claim in this Court.

> Rule 201...provides that a Court shall take judicial notice of adjudicative facts...a Bankruptcy Court, in the exercise of its discretionary power under this federal rule, could take judicial notice of all administrative and judicial actions previously undertaken in the proceedings.

*In re Kors, Inc.*, 15 B.R. 444, 446 (Bankr. D. Vt. 1981).

Specifically, Mr. Matthews requests that this Court take judicial notice of the motion to dismiss the First Foreclosure Action filed by GMAC's local counsel.[13] In that motion, GMAC acknowledged that the actions it had taken in that case and others in Maryland courts, were subject to dismissal pursuant to Md. Rule 14-207.1 for non-compliance with the legal debt collection requirements under Maryland law. A copy of the motion is attached as **Exhibit 7** hereto. The circuit court granted GMAC's request, as shown in the order attached as **Exhibit 8**. Mr. Matthews also requests that the Court notice that the circuit court, in light of the improper actions of GMAC, ordered that no costs be assessed to Mr. Matthews or other similar Maryland homeowners in his position, as shown in **Exhibit 9**, a certified copy of the docket in the First Foreclosure action against him by GMAC.

In addition, Mr. Matthews requests that the Court take judicial notice of certain adjudicative facts pertaining to the unsafe and unsound foreclosure practices of GMAC in other proceedings, including the Office of the Comptroller of the Currency ("OCC") settlement, and the

---

[13] ResCap falsely claims that Mr. Matthews is attempting to collaterally attack the dismissal of the First Foreclosure Action. (Obj. ¶¶ 2, 57-59). Respectfully, Mr. Matthews is not making any such effort. In fact, ResCap is improperly attempting to have the Court disregard the basis upon which the First Foreclosure Action brought by its privy was at its privy's request dismissed, i.e. the unsafe and unsound lending and servicing practices subject to the multiple national enforcement efforts recounted above.

OCC amended settlement *In Re the Matter of Ally Financial, Inc. et al.* [Doc. 11-020; FDIC 11-123b][April 13, 2011 & July 26, 2013] and voluntary agreement to enter into a Consent Judgment as part of the State-Federal National Mortgage Settlement (see http://www.nationalmortgagesettlement.com/ and https://d9klfgibkcquc.cloudfront.net/Consent_Judgment_Ally-4-11-12.pdf).

"Judicial notice may be taken of documents filed in other cases and other courts." *Hinton v. Bruno*, 2014 WL 645028, *1 (D. Conn. 2014) (citing *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.* 146 F.3d 66, 70 (2d Cir. 1998)). *See also Wolson v. Reed Elsevier Inc.*, 2010 WL 334919 *1 (S.D.N.Y.2010) (taking judicial notice of settlement agreement filed in multi-district class action case in ruling on motion to dismiss).

The adjective facts and admissions of GMAC requested herein more than demonstrate the bona fides of Matthews' Proof of Claim. If GMAC's debt collection practices at issue related to the First Foreclosure were proper, then why did GMAC request through its counsel for the case to be dismissed under the affidavit rule enacted on an by emergency basis by the Maryland Court of Appeals to deal with the fraud and abuse of mortgage lenders and foreclosure attorneys alike which shook the judicial system nationwide?

> ii.   *Objector is Judicially Estopped from Arguing Alternative Facts to GMAC's Prior Position*

GMAC is presumed to have knowledge of all of its substitute trustees'/attorneys' actions taken on its behalf in the state foreclosure proceeding against Matthews even if GMAC never reviewed what its substitute trustees/attorneys did on its behalf. *Putnam v. Day,* 89 U.S. 60, 22 L. Ed. 764 (1874); *Salisbury Beauty Sch. v. State Bd. Of Cosmetologists,* 268 Md. 32, 300 A.2d 367 (1973); *Bob Holding Corp. v. Normal Realty Corp.,* 223 Md. 260, 266,164 A.2d 457, 460 (Md. 1960). Therefore GMAC's privy—i.e. ReCap—should be estopped from making factual

arguments to this Court when GMAC's authorized counsel made contrary arguments in the First

Foreclosure Action.

Further, the Second circuit has described the doctrine of judicial estoppel as follows:

A potential consequence of a conflict between two factual statements made by the
same party is judicial estoppel: 'Where a party assumes a certain position in a legal
proceeding, and succeeds in maintaining that position, he may not thereafter,
simply because his interests have changed, assume a contrary position, especially
if it be to the prejudice of the party who has acquiesced in the position formerly
taken by him.'
*DeRosa v. Nat'l Envelope Corp.,* 595 F.3d 99, 103 (2d Cir.2010) (quoting *New
Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)).
"Typically, judicial estoppel will apply if: 1) a party's later position is 'clearly
inconsistent' with its earlier position; 2) the party's former position has been
adopted in some way by the court in the earlier proceeding; and 3) the party
asserting the two positions would derive an unfair advantage against the party
seeking estoppel." *Id.,* 595 F.3d at 103 (quoting *New Hampshire,* 532 U.S. at 750–
51, 121 S.Ct. 1808). The third requirement is sometimes couched in terms of "unfair
detriment [to] the opposing party" rather than advantage to the party to be estopped.
*New Hampshire,* 532 U.S. at 751, 121 S.Ct. 1808. In this circuit, moreover, "[w]e
further limit 'judicial estoppel to situations where the risk of inconsistent results
with its impact on judicial integrity is certain.' " *DeRosa,* 595 F.3d at 103 (quoting
*Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138, 148 (2d Cir.2005)). This latter
requirement means that judicial estoppel may only apply where the earlier tribunal
accepted the accuracy of the litigant's statements. *See Simon v. Safelite Glass Corp.,*
128 F.3d 68, 72 (2d Cir.1997).

*In re Adelphia Recovery Trust,* 634 F.3d 678, 695-96 (2d Cir. 2011). *See also Simon v. Safelite*

*Glass Corp.*, 128 F.3d 68, 72 (2d Cir. 1997)("Numerous decisions have approved the application

of judicial estoppel where the prior statements were made in administrative or quasi-judicial

proceedings").

As the successor and proxy to GMAC in these proceedings, the Objector should not be

permitted to change its position in these proceedings which are contrary to the positions GMAC

took in the First Foreclosure action with Matthews and its judgments and agreements with the

OCC and the National Mortgage Settlement.  First, by seeking leave and ultimately obtaining the

relief it sought from the circuit court to dismiss the First Foreclosure action based on its non-

18

compliance with the Md. Rule 14-207.1 and Maryland debt collection practices related to foreclosure litigation, GMAC and Objector should not be permitted in this action to change course now to pursue any argument that its practices were just and proper and do not constitute violations of Maryland law.  Further, by its voluntary participation in the federal and state consent judgments against it, GMAC acknowledged that its collection actions were unsafe and unsound.  Such contentions and agreements and positions taken by GMAC directly relate to the fraudulent, unfair, and deceptive practices described in Matthews' Proof of Claim.

While Matthews does not ask the Court to enforce these third party settlements by this request, he does ask the Court to hold that the Objector is judicially estopped from arguing that its debt collection practices in the First Foreclosure action against Matthews were just and proper when it has admitted to the state court and in national consent judgments that those same practices were unsafe and unsound.  All such argument by the Objector as a proxy for GMAC should be disregarded and denied on the grounds of judicial estoppel.

### D.  OBJECTOR'S PURPORTED TESTIMONY OF LAUREN DELEHEY IS NOT ADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE AND SHOULD BE DISREGARDED AND STRICKEN

The declaration of Lauren Delehey with which Objector attempts to support its narrow version of the facts explicitly incorporates inadmissible hearsay evidence and should be disregarded by the Court.[14]  Specifically, Ms. Delehey's declaration states:

> "...all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents **and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors...**" (¶3)
>
> "...**I or other Liquidating Trust personnel have reviewed and analyzed the proof of claim form and supporting documentation filed by Kevin J. Matthews**

---

[14] Federal Rule of Bankruptcy Procedure 9017 incorporates the Federal Rules of Evidence in these proceedings: "The Federal Rules of Evidence...apply in cases under the Code."

("Matthews"). Since the Plan went effective and the Borrower Trust was established, **I, along with other members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same.** In connection with such review and analysis, where applicable, **I or other Liquidating Trust personnel, together with the Liquidating Trust's professional advisors...**" (¶4)

(emphasis added).

Federal Rule of Evidence 801 defines hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." The Delehey declaration falls squarely under this definition, as the declarant, Ms. Delehey, is not making her statements to be presented to the Court at a hearing on the objection to Mr. Matthews' Proof of Claim, and the statements contained in her declaration are being offered for their truth.

Federal Rule of Evidence 802 precludes admission of hearsay unless otherwise provided by a federal statute, the Federal Rules of Evidence or other rules prescribed by the Supreme Court. In this case, no such provision is made for the testimony in Ms. Delehey's declaration, which she admits is based on information provided by an unknown number of unnamed persons.

To the extent ResCap relies on the exception for regularly conducted activity for the admissibility of Ms. Delehey's declaration, this reliance is misplaced. Federal Rule of Evidence 803(6) does provide that a record of a regularly conducted activity is admissible as an exception to the hearsay rule. However, in order to qualify as a record of a regularly conducted activity however, the party offering the purported record must show, *inter alia*, that "the record was made at or near the time by--or from information transmitted by--someone with knowledge... the record was kept in the course of a regularly conducted activity of a business... making the record was a regular practice of that activity...[and]...neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness."

20

Here, the Delehey Declaration was not made at or near the time of the events it recounts. The declaration was executed on June 12, 2014, but purports to describe events that happened as far back as February 14, 2008. (Delehey declaration ¶7). There is no showing by ResCap that the statements in the declaration were transmitted by anyone with knowledge of the facts alleged. Indeed, ResCap does not even assert such transmission. Secondly, the declaration is not a document kept in the course of ResCap's regularly conducted business activity, and there is no showing or assertion to the contrary. Finally, the fact that the declaration explicitly states that it is based on information supplied by unnamed individuals at unspecified times, but then does not indicate at any time what particular facts were transmitted to Ms. Delehey by these persons indicates a lack of trustworthiness that should preclude the declaration's admission into evidence. How can the parties or the Court determine which of the facts in the declaration are based on Ms. Delehey's personal knowledge, and which have been supplied by the unnamed persons to which she refers? How can the parties or the Court even know that such unnamed persons actually exist? The vague, boilerplate references to unnamed sources of unspecified information indicates a lack of trustworthiness in the circumstances of this declaration's preparation that should preclude its admission.

In a similar situation where a declarant hoped to affirm the accuracy of information transmitted by an unknown number of unnamed persons at unnamed times, the Federal District Court for the Eastern District of New York stated that "[s]ignificantly, Plaintiff never identified the source for her information regarding the interaction, or lack thereof, between [other parties], and her assertion appears to be rooted in hearsay..." *Hyek v. Field Support Services, Inc.*, 702 F.Supp.2d 84, 96 (E.D.N.Y. 2010). Such is the case here. ResCap hopes to support numerous factual assertions with Ms. Delehey's declaration, which admittedly relies on information

21

transmitted by an unspecified number of unnamed people on unspecified dates. Such a declaration

is plainly inadmissible hearsay not subject to any exception to the general ban on hearsay evidence

and should be excluded, stricken, and otherwise disregarded by the Court.

### E.  MATTHEWS HAS STATED PROPER CLAIMS UNDER MARYLAND AND FEDERAL LAW WHICH ARE SUBJECT TO HIS PROOF OF CLAIM

### i.   Fraud/Fraudulent Concealment

In his Counter Complaint, Mr. Matthews sets forth ample facts demonstrating the Debtors'

liability to him for fraudulent concealment. Under Maryland common law,

> To prevail on a claim for fraud, a plaintiff must show:
> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity
> was either known to the defendant or that the representation was made with reckless
> indifference as to its truth, (3) that the misrepresentation was made for the purpose
> of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and
> had the right to rely on it, and (5) that the plaintiff suffered compensable injury
> resulting from the misrepresentation.

*Gourdine v. Crews*, 955 A.2d 769, 791 (Md. 2008).

Here, Mr. Matthews has alleged several facts which show by clear and convincing evidence

that GMAC's conduct meets each element of fraud. Matthews has alleged numerous false

representations by GMAC (CC at ¶ 122). He has shown that the falsity of these statements was

known to GMAC or that the statements were made with reckless indifference as to their truth (CC

at ¶ 124). He has shown that the misrepresentations were made for the purpose of defrauding him

(CC at ¶ 126). He has shown that he relied on GMAC's misrepresentations (CC at ¶ 130), and that

he was injured by that justifiable reliance (CC at ¶ 132).[15]

Contrarily, the Debtors have not put forward any facts controverting these well-pled

allegations, and instead rest on mere conclusory statements that mischaracterize Mr. Matthews

---

[15] Debtors claims in their Objection at ¶¶ 2, 75, 94 notwithstanding.

claims and then nakedly assert that such claims have been overcome. See Objection ¶91 "this claim **seems** to encompass Matthews' allegations that GMACM failed to modify his loan, initiated both foreclosure actions with allegedly "bogus paperwork" and "illegally seized control" of the Property." The Debtors then baldly claim that they have already successfully dispensed with these allegations and imply that they have "produce[d] evidence equal in force to [Mr. Matthews'] *prima facie* case" for fraud. Respectfully, the Debtors' conclusory arguments fall far short of rebutting the detailed factual allegations in Mr. Matthews' Counter Complaint and should be disregarded.

If the Court considers the Debtors' groundless assertions at all merited, Mr. Matthews submits that the proper course would be to set the disputed facts of the Debtors' conduct and its effect in for an evidentiary hearing to determine whether Mr. Matthews' fraud claim should go forward.

ii.    **MCPA**

The Maryland Consumer Protection Act (CPA) is remedial legislation. *State v. Cottman Transmissions Systems, Inc.,* 86 Md.App. 714, 743, 587 A.2d 1190, 1204  (Md.App.,1991)("The CPA is to be liberally construed and applied"). In enacting the CPA, the legislature stated:

> The General Assembly concludes, therefore, that it should take strong protective and preventive steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices, and to prevent these practices from occurring in Maryland. It is the purpose of this title to accomplish these ends and thereby maintain the health and welfare of the citizens of the State.

MD. CODE ANN., COM. LAW § 13-102(b)(3).

The Maryland Consumer Protection Act defines "unfair or deceptive trade practices" as "(1) False, falsely disparaging, or misleading oral or written statement[s], visual description[s], or other representation[s] of any kind which ha[ve] the capacity, tendency, or effect of deceiving or misleading consumers…[and] (3) Failure to state a material fact if the failure deceives or tends to

23

deceive." MD. CODE ANN., COM. LAW, § 13-301.

In *Hoffman v. Stamper*, 385 Md. 1 (2005), the Maryland Court of Appeals explained:

An 'unfair or deceptive trade practice' includes any false or misleading statement or representation which has the capacity, tendency, or effect of deceiving or misleading consumers and encompasses a representation that consumer realty has a characteristic that it does not have or is of a particular standard or quality that is not the case. Commercial Law Art. § 13-301. Section 13-408 of that article provides for a private cause of action to recover for loss or injury sustained as the result of a practice forbidden by the CPA.

*Id.* at 31.

The MCPA imposes obligations on parties who deal with consumers to speak and act truthfully by prohibiting any "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" and requiring the party to disclose all material facts by making the "[f]ailure to state a material fact if the failure deceives or tends to deceive" an unfair and deceptive practice. See MD. CODE ANN. COM. LAW §13-301 (1)(3).    Reliance is not a requirement under the MCPA. See MD. CODE ANN. COM. LAW § 13-302 ("Any practice prohibited by this title is a violation of this title, whether or not any consumer in fact has been misled, deceived…").

In addition, "[u]nder Maryland law...'[a] principal is *prima facie* liable for the acts of his agent done in the general course of business authorized by him.'" *Winemiller v. Worldwide Asset Purchasing, LLC*, 2011 WL 1457749, *3 (D. Md. 2011) (quoting *Carroll v. State*, 3 A. 29 (Md. 1885)). Thus the Debtors are liable for the actions of their authorized agents with respect to the foreclosure and other false and deceptive servicing on Mr. Matthews' loan and property. Notably, the Debtors do not claim anywhere in their Objection that there is not an agency relationship

24

between them and the substitute trustees or other agents involved in the actions recounted in Mr. Matthews' Counter Complaint.

Finally, a violation of the Maryland Consumer Debt Collection Act ("MCDCA") constitutes a violation of the MCPA. MD. CODE ANN., COM. LAW § 13-301(14)(iii). Because, as will be shown *infra*, the Debtors' and their agents' conduct violates the MCDCA, it also violates the MCPA.

Under Maryland law, it is not a defense by a defendant to the Maryland Consumer Protection Act violation that the defendant had simply complied with some other law or duty. These other laws may create duties on the defendant but the MCPA "establishes boundaries beyond which [the defendant] may not go, unless they wish to be liable for deceptive or unfair trade practices." *MRA Prop. Mgmt., Inc. v. Armstrong,* 426 Md. 83, 112-13, 43 A.3d 397, 414-15 (2012). *Compare Scull v. Groover, Christie & Merritt, P.C.,* 435 Md. 112, 76 A.3d 1186 (2013)(holding that a non-professional service by an otherwise exempt party to a MCPA claim, subjects that party to the scope of the MCPA).

Here, Mr. Matthews has clearly pleaded a cause of action under the MCPA in his Counter-Complaint at ¶¶ 139, 140, 143, 146-156. The Debtors' conclusory claims to the contrary in their Objection at ¶¶ 62-78 do not set forth any facts to dispute Mr. Matthews claims, and are unavailing. Finally, the Debtors claim that "there is no legal authority that permits Matthews to recover 'damages for emotional distress or mental anguish' under the MCPA" (Obj. ¶78) is simply wrong as a matter of law. Under the MCPA, statutory text provides that "any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title." MD. CODE ANN., COM. LAW § 13-408(a). In the case of *Chaires v. Chevy Chase*, 350 Md. 716 (1998), the trial court "submitted a special interrogatory to the jury that defined injury or loss

25

[under the MCPA] to include emotional distress or mental anguish." *Id*. at 722. Neither the

issuance of this "special interrogatory" nor the finding of liability under the MCPA were appealed

in that case.  Both the statutory text and the *Chaires* decision indicate that non-economic damages

are recoverable under the Consumer Protection Act. *S e e   a l s o   Green v. N.B.S., Inc.,* 409 Md.

528, 539, 976 A.2d 279, 285 (2009) (recognizing that non-economic damages are recoverable

under the MCPA). *Berg v. Byrd*, 124 Md. App. 208, 215-16, 720 A.2d 1283, 1286 (1998) (same).

*See also Franklin Credit Mgmt. Corp. v. Nefflen,* 208 Md. App. 712, 720, 57 A.3d 1015, 1020

(2012) cert. granted, 431 Md. 219, 64 A.3d 496 (2013) and aff'd, 436 Md. 300, 81 A.3d 441

(2013)(affirming this Court's award of emotional damages and losses under the MCPA).

### iii.    **MMFPA**

The Maryland Mortgage Fraud Protection Act

[i]n its broadest sense, the statute simply states "[a] person may not commit
mortgage fraud." *Id.* § 7–402. Relevant to the present action, the statute defines
mortgage fraud as:
(1) Knowingly making any deliberate **misstatement, misrepresentation, or
omission** during the mortgage lending process with the intent that the misstatement,
misrepresentation, or omission be relied on by a mortgage lender, borrower, or any
other party to the mortgage lending process;
(2) Knowingly creating or producing a document for use during the mortgage
lending process that contains a **deliberate misstatement, misrepresentation, or
omission** with the intent that the document containing the misstatement,
misrepresentation, or omission be relied on by a mortgage lender, borrower, or any
other party to the mortgage lending process;
(3) Knowingly using or facilitating the use of any **deliberate misstatement,
misrepresentation, or omission** during the mortgage lending process with the
intent that the misstatement, misrepresentation, or omission be relied on by a
mortgage lender, borrower, or any other party to the mortgage lending process;...;
or
(6) Filing or causing to be filed in the land records in the county where a residential
real property is located, any document relating to a mortgage loan that the person
knows to contain a deliberate misstatement, misrepresentation, or omission.
Md.Code Ann., Real Prop. § 7–401(d)(1)-(6). The statutory definition of the
"mortgage lending process" includes "(i) [t]he solicitation, application, origination,
negotiation, **servicing,** underwriting, signing, closing, and funding of a mortgage

loan; and (ii) **the notarizing of any document in connection with a mortgage loan.**" *Id.* § 7–401(e)(2).

*Stovall v. SunTrust Mortg., Inc.*, CIV.A. RDB-10-2836, 2011 WL 4402680. *9-10 (D. Md. Sept. 20, 2011)(emphasis added). *See also Marchese v. JPMorgan Chase Bank, N.A.,* 917 F. Supp. 2d 452, 468-469 (D. Md. 2013)("The grounds for denying the Motion to Dismiss with respect to [mortgage servicing practices] under the MMFPA involve the same analysis the Court conducted under the MCPA"); *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 531-32 (D. Md. 2013)("The plain text of the MMFPA creates a statutory duty to disclose and a related action for fraud. As noted, mortgage fraud under R.P. § 7–401(d) includes the making, knowingly and with the 'intent to defraud,' of an 'omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process'"); *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 799-800 (D. Md. 2013); *Piotrowski v. Wells Fargo Bank*, N.A., CIV.A. DKC 11-3758, 2013 WL 247549, *13 (D. Md. Jan. 22, 2013).

The MMFPA was originally passed by the Maryland Generally Assembly as emergency, remedial legislation in response to the mortgage crisis that had taken over Maryland (and the rest of the country) in 2008.    REAL PROPERTY—MARYLAND MORTGAGE FRAUD PROTECTION ACT, 2008 Maryland Laws Ch. 3 (S.B. 217).  To aid criminal enforcement of the prohibition against mortgage fraud enacted as part of the MMFPA, the legislature provided a private right of action:

> (a) In addition to any action authorized under this subtitle [including criminal enforcement pursuant to § 7-405] and any other action otherwise authorized by law, aperson may bring an action for damages incurred as the result of a violation of this subtitle.

> (b) A person who brings an action under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees.

> (c) If the court finds that the defendant violated this subtitle, the court may award damages equal to three times the amount of actual damages.

MD. CODE ANN., REAL PROP., § 7-406.

The MMFPA came about as part of a package of legislation in the 2008 session which arose from recommendations of the Maryland Homeownership Preservation Task Force, formed at the height of our current financial crisis, to develop common sense solutions to minimize the devastating effects of foreclosure for a variety of constituencies. The Task Force issued a report ("Task Force Report") which aptly summarized the effect of foreclosures on the community as follows:

> Foreclosures have a devastating effect on homeowners and the communities in which they live. Frequently, a homeowner who loses his or her home to foreclosure loses the accrued equity. A property sold in a foreclosure sale typically draws a lower price than it would in a regular market sale. In the first half of 2005, Maryland's "foreclosure discount" was 18.8 percent, according the St. Ambrose Housing Aid Center, Inc. This is a tragedy for a growing number of Maryland families.

Maryland Homeownership Preservation Task Force Report (November 29, 2007), (available online at http://www.gov.state.md.us/documents/HomePreservationReport.pdf) (last visited June 5, 2014) at Page 12 (footnotes omitted).

If the common law, including common law fraud, were sufficient to address the scope of issues intended to be addressed by the MMFPA, then there would have been no purpose of need for the legislature to enact the MMFPA. *Robinson v. State*, 353 Md. 683, 694, 728 A.2d 698, 703 (1999)("a cardinal rule of statutory construction to give effect to the intent of the Legislature" and "where a statute deals with an entire subject-matter…the statute is generally construed as abrogating the common law as to that subject). *Robinson v. State*, 353 Md. 683, 693, 728 A.2d 698, 702 (1999). Here, however as explained by the Fourth Circuit previously, "remedial

28

legislation should receive a broad interpretation to effectuate its purposes." *D.L. ex rel. K.L. v. Baltimore Bd. of Sch. Comm'rs*, 706 F.3d 256, 260 (4th Cir. 2013)(citing *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967)). *See also Pak v. Hoang*, 378 Md. 315, 324-26, 835 A.2d 1185, 1190-91 (2003) (explaining that remedial statutes under Maryland law are recognized by providing remedies and improved remedies not previously available under prior law including common law and that court should not narrowly construe the statute which would only "perpetuate the very evils to be remedied....") (internal quotations and citations omitted).

Mr. Matthews puts forward ample facts in support of his MMFPA claim in the Counter Complaint and in his Declaration. *See* Counter Complaint ¶¶1, 5, 7. 52-55, 57, 59, 66, 80, 82, 84-86; Matthews Declaration ¶¶13-17, 19-22, 24-26, 29-32. The Debtors' conclusory statements in ¶¶90-95 of their Objection are unsupported by any factual allegations and do not serve to overcome the *prima facie* case put forward by Mr. Matthews in his Proof of Claim.

Finally, if the Court finds that Mr. Matthews' claims under the MCPA are valid, it necessarily follows that his claims under the MMFPA are valid. "[B]ecause the Court previously determined that [plaintiff] sufficiently pled actual loss or injury under the MCPA, [plaintiff] also sufficiently pled a claim under the MMFPA." *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F.Supp.2d 452, 469 (D. Md. 2013). *See also Piotrowski v. Wells Fargo Bank, N.A.* 2013 WL 247549, *13 (D. Md 2013) ("Because Mr. Piotrowski states an MCPA claim based on Wells Fargo's alleged representations and omissions about its consideration of his loan modification requests, the complaint also states an MMFPA claim based on the same conduct.")

iv.   **MCDCA**

The Maryland Consumer Debt Collection Act concerns "collecting or **attempting to collect an alleged debt** [in which] a collector may not…(8) Claim, attempt, or threaten to enforce

a right with knowledge that the right does not exist." MD. CODE ANN., COM. LAW § 14-202 (emphasis added).

Mortgage loan servicers like GMAC are presumed to have knowledge of their substitute trustees'/attorneys' actions taken on their behalf in foreclosure proceedings such as that brought against Mr. Matthews, even if they never review what their substitute trustees did on their behalf. *Putnam v. Day,* 89 U.S. 60, 22 L. Ed. 764 (1874); *Salisbury Beauty Sch. v. State Bd. Of Cosmetologists,* 268 Md. 32, 300 A.2d 367 (1973); *Bob Holding Corp. v. Normal Realty Corp.,* 223 Md. 260, 266,164 A.2d 457, 460 (Md. 1960) The Court of Appeals has explained policy rationale underlying this presumption as follows:

> It is clear that the legislative process relating to mortgage foreclosures of the last several years has been designed to slow down the mortgage foreclosure practices **to limit the abuses of past years** and **to provide additional protections to homeowners**. In our view the Legislature has effectively changed Maryland's slanted in favor of secured parties foreclosure practices **to one requiring compliance with much stricter standards, tipping the playing field to protect debtors**…

> The Legislature's public policy statements as exemplified by its recent enactments persuade us a stricter adherence to the rules of procedure in mortgage foreclosure sales of residential property is required.

*Maddox* at 434.  (emphasis added).

In this case Mr. Matthews has sufficiently pleaded a cause of action under the MCDCA and supported that cause of action with ample factual assertions in the Counter Complaint and his Declaration (*see* Counter Complaint ¶¶1, 5, 7. 52-55, 57, 59, 66, 80, 82, 84-86 ¶¶171-181; Matthews Declaration ¶¶13-17, 19-22, 24-26, 29-32). These well-pled facts have gone completely un-rebutted by Debtors in their Objection, who have put forward zero factual allegations disputing those alleged by Mr. Matthews. Debtors instead hope to merely assert that GMAC was entitled to take the action it took (Obj. ¶81, 83, 84) or that GMAC was not attempting to collect a debt (*Id.*

¶85) or that GMAC did not know that the actions it was taking were wrongful (*Id.* ¶86). Respectfully, these bare assertions are amply refuted by the facts put forward by Mr. Matthews referenced above, and do not serve to rebut the *prima facie* case against debtors asserted in Matthews' Proof of Claim.

v.   **FDCPA**

The Fair Debt Collection Practices Act ("FDCPA") "prohibits a debt collector from, *inter alia,* making a "threat to take any action that cannot legally be taken," 15 U.S.C. § 1692e(5), or "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." *Id.* §1692f." *Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F.Supp.2d 502, 519 (D. Md. 2013). More broadly, the FDCPA "limits its reach to those collecting the dues "of another" and does not restrict the activities of creditors seeking to collect their own debts." *Carlson v. Long Island Jewish Medical Center*, 378 F.Supp.2d 128, 130-131 (E.D.N.Y. 2005). However:

> There is one situation specifically recognized by the FDCPA when a creditor will be deemed a debt collector and therefore subject to the strictures of the Act. That situation exists when the creditor attempts to collect its own debts by using "any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). The imposition of liability in this case recognizes the fact that when a creditor uses a name other than his own, the motivation to protect the good will in his own name is absent and the likelihood for abusive debt collections practices returns. Thus, a creditor may be found liable under section 1692(a)(6) if, in the course of collecting its own debts, it "pretends to be someone else" or "uses a pseudonym or alias."

*Id.* at 131.

In this case, GMAC repeatedly represented to Mr. Matthews while attempting to collect on his mortgage loan that it was USAA. (CC at ¶¶ 31, 46, 53, 54, 76, 84-89, 92, 109-114; Matthews Declaration ¶¶3, 12-22). This use of another name by GMAC places it's conduct squarely within the purview of section 1692(a)(6).

In addition, GMAC continues to act without a license as a debt collector as required under

31

the Maryland Collection Agency Licensing Act ("MCALA"), which constitutes a "'threat to take

any action that cannot legally be taken,' 15 U.S.C. § 1692e(5), or 'us[ing] unfair or unconscionable

means to collect or attempt to collect any debt.'" *Ademiluyi* at 519.  In *Ademiluyi*, the U.S. District

Court for the District of Maryland analyzed the interplay between state collection laws and the

FDCPA as follows:

> Violations of a state collection licensing law such as the MCALA may support a
> claim under the FDCPA. *See, e.g., Bradshaw v. Hilco Receivables, LLC,* 765
> F.Supp.2d 719, 726–27 (D.Md.2011) (Bennett, J.) (holding that a violation of the
> MCALA may support a cause of action under the FDCPA, including when an
> unlicensed debt purchaser files lawsuits to collect on debt in default, as a threat to
> take an action that cannot legally be taken); *Hauk,* 749 F.Supp.2d at 366–67 (Blake,
> J.) (indicating that a debt collector's failure to register under state collection law is
> pertinent to whether it used unfair or unconscionable means to collect a debt); *see
> also LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1200 (11th
> Cir.2010) (holding that defendant's "lack of registration with the State of Florida is
> an appropriate consideration in deciding whether [defendant's] 'means' of
> collection were 'unfair or unconscionable' ")

*Id.*

Here, GMAC and its proxt the Objector are liable to Mr. Matthews for the same reasons as

the defendant in *Ademiluyi*, i.e., failure to obtain a license while attempting to collect on a debt

from Matthews by maintaining the Second Foreclosure action against him.

Finally, the Affidavit Certifying Ownership of Debt Instrument and Truth and Accuracy of

Copy Filed Herein (**Exhibit 5**) included in the Order to Docket the First Foreclosure Action is

ambiguous as to the actual owner of the debt instrument, at once claiming that the debt instrument

"is owned by GMAC Mortgage, LLC" and that GMAC is "authorized by Government National

Mortgage Association ["Ginnie Mae"] to be the holder of the Note and Mortgage for the purposes

of all actions necessary to conduct foreclosure." Thus, either GMAC was the owner of the debt

instrument when it attempted to collect from Mr. Matthews, but used a fictitious name as described

*supra*, or it was not the owner, and was attempting to collect on behalf of Ginnie Mae. Either way,

Mr. Matthews has sufficiently stated facts to demonstrate the Debtors' liability under the FDCPA (it was collecting with a fictitious name or it acquired the debt while it was all edged and believed it to be in default). However, if the Court is unpersuaded by the facts alleged in Mr. Matthews well-pled Counter Complaint and the declarations submitted in support of this Response or the legal arguments herein, Mr. Matthews requests that the Court set this matter in for an evidentiary hearing to adjudicate disputed factual issues or certify any questions of law to the Maryland Court of Appeals.

### F. OTHER ARGUMENTS OF RESCAP BORROWERS CLAIMS TRUST

#### i.    *Objector's Res Judicata Argument is Wrong as a Matter of Law and Fact*

Objector argues to the Court that Matthews' claims are prohibited by the doctrine of *res judicata*.  Obj. at ¶¶ 2, 35, 41, 42, 44, 82, 96.  With all due respect, ResCap overlooks the actual facts and law and its argument is without application to the facts of this matter and Matthews' pending claims.

Here, Matthews pursued GMAC on March 16, 2012 in the Circuit Court for Baltimore City, Maryland by his original Counter Complaint before GMAC sought bankruptcy protection in this Court.  **Exhibit 11**.  That action was stayed in the circuit court when this action commenced by virtue of the automatic stay.  While stayed, Matthews timely filed his Proof of Claim subject to this action on August 13, 2012.  **Exhibit 1**.  The Debtors and Matthews also stipulated in this Court on October 2, 2012 that Matthews may amend his Counter Complaint in the state court to pursue third parties but not the Debtors.  *See* Doc. 1697.  Thereafter, Matthews did as was agreed with the Debtors and amended his Counter Complaint in the state court removing GMAC as a party to that action.  **Exhibit 11.**  That Amended Counter Complaint remains pending in the circuit court and is not a final judgment; nor has GMAC or any other current party ever asked the circuit court to declare any portion of the case final for appeal purposes pursuant to Md. Rule 2-602 or any other

authority available to them.  **Exhibit 11** and KM Dec. at ¶¶ 35-38.  Matthews later elected to

dismiss his adversary proceeding without prejudice, as was his right, on April 9, 2013 while his

Proof of Claim and Amended Counter Complaint were both still pending and not final judgments.

*See* Doc. 18, Adv. Proc. 12-1933.  This Court issued a minute order on April 9, 2013 advising all

parties that the adversary was "Closed Subject to the Filing of a Notice of Appeal Within Fourteen

(14) Days of Entry of the Order Terminating this Adversary Proceeding."  *See* Adv. Proc. 12-193.

Docket for Entry at April 9, 2013.  No appeal of the dismissal without prejudice was taken or

objected to by any party.  *Id.*

Respectfully, Objectors' argument concerning the doctrine of *res judicata* is easily

dispatched.

> Under Maryland Law, the requirements of *res judicata* or claim preclusion are: 1)
> that the parties in the present litigation are the same or in privity with the parties to
> the earlier dispute; 2) that the claim presented in the current action is identical to
> the one determined in the prior adjudication; and 3) **that there was a final**
> **judgment on the merits**.

*Colandrea v. Wilde Lake Cmty. Ass'n, Inc.*, 361 Md. 371, 392, 761 A.2d 899, 910 (2000)(emphasis

added).  See also *Anne Arundel Cnty. Bd. of Educ. v. Norville*, 390 Md. 93, 106-07, 887 A.2d 1029,

1037 (2005)("The doctrine of res judicata bars the relitigation of a claim if there is a **final**

**judgment** in a previous litigation where the parties, the subject matter and causes of action are

identical or substantially identical as to issues actually litigated and as to those which could have

or should have been raised in the previous litigation").

Here there is no final judgment in the now pending circuit court action.  Exhibits 8 and 9

at ¶ 2.  Nor has a scheduling order even been issued.  *Id.*  Therefore, it is a legal impossibility in

this case for Objector to argue that res judicata applies.

Further, given the facts that the Debtors stipulated in this case that Matthews may pursue

the course of action he chose to pursue in the state court with the agreement of the Debtors and

approval of this Court, Objector should be estopped from arguing any prejudice or claiming any benefit from the two dismissal rule even if it did apply (and it does not). Further the Court gave the Debtors notice that the adversary decision to appeal could be appealed by them and Debtors elected to do nothing and not even ask that the dismissal be converted with prejudice. Instead, Debtors waited over a year on their rights and did nothing to the now late alleged detriment of Matthews and under the defense of latches and waiver the Court should, if it believes the state court dismissal is a final judgment (which respectfully would be an error of law), to simply disregard and deny Objector's *res judicata* argument.

ii.   *Objectors are Wrong and There is No Basis for the Court to Conclude that Every Claim Involving HAMP is Preempted*

Objector argues that Matthews' claims which relate in any way to the Making Home Affordable Program ("HAMP") are pre-empted. Obj. at ¶¶ 2, 46-49, 92. Respectfully, this overbroad defense has been rejected and has no merit.

First, ResCap suggests that Matthews' claims are an attempt to do something it does not— i.e. to enforce HAMP. Matthews does not seek this relief. Even if his claims did relate to HAMP, two federal circuit courts of appeal have explained that Objector's argument here, i.e. that everything related to HAMP is preempted, is incorrect. *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 585-86 (7th Cir. 2012)("We predict that the Illinois courts would find some of Wigod's claims actionable under the laws of their state, and we can find no basis in the law of federal preemption that would bar those claims"); *Spaulding v. Wells Fargo Bank, N.A.*, 12-1973, 2013 WL 1694549, FN 4 (4th Cir. Apr. 19, 2013)("the mere fact that HAMP does not provide a private right of action does not mean that all state law claims affiliated with or related to an unsuccessful HAMP application are necessarily preempted")(citing *Wigod,* 673 F.3d at 581). See also *Picini v.*

35

*Chase Home Fin. LLC*, 854 F. Supp. 2d 266, 274 (E.D.N.Y. 2012)(rejecting a HAMP third party beneficiary but permitting state claims to proceed).

As the above authority makes clear, when misstatements, material omissions and misrepresentations are made to consumers and consumers are damaged by those misrepresentations, a cause of action under state or federal consumer protection statutes can lie. Nowhere in Matthews Proof of Claim is the claim made that GMAC must comply with HAMP. The claim that the Plaintiffs have made such an attempt is unavailing.

iii.    *The Witness Immunity Doctrine has No Application to the Actual Claims Before the Court*

Objector clings to the hope that Mr. Matthews' claims in common law fraud and remedial consumer protection statutes are prohibited because of Maryland's recognition of "witness immunity." Obj. at ¶¶50-52. While it is true that Maryland common law recognizes this immunity, the defense does not apply to Mr. Matthews claims before the Court (these claims are discussed in more detail *supra*). Each Maryland authority cited by Objector on this issue involved claims of libel, slander, or defamation. None of the authorities relied upon involved common law fraud or any of the remedial consumer protection statutes mentioned below. In fact in one case cited by Objector, the Court of appeals recognized that other causes of action besides defamation will have to be utilized to address the injury, damages, or losses attributable to the false testimony of a witness. *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 406, 494 A.2d 200, 204 (1985)("Thus, even the intentional and wrongful bringing or maintaining of litigation will not destroy the absolute privilege that attends the litigation, and a cause of action other than defamation must be employed to redress such a wrong"). See also *D'Aoust v. Diamond*, 424 Md. 549, 595, 36 A.3d 941, 967 (2012)(holding there is no witness immunity for acts of court appointed officers).

The rationale of *Keys* is important and consistent with the general "rule…that where a statute and the common law are in conflict, the common law yields to the statute to the extent of the inconsistency, but where the legislative intent is shown to encompass an entire area then that statute preempts the common law." *Watkins v. State*, 42 Md. App. 349, 354, 400 A.2d 464, 467 (1979). Further, to adopt ResCap's reasoning that the common law defense of witness immunity applies to Mr. Matthews' statutory claims would simply eviscerate the protections intended by the legislature which did not provide for such a defense or exemption in any of the statutes and be a violation of the Maryland Constitution's separation of powers requirement. Md. Dec. of R. art. 8.

For these reasons, Mr. Matthews requests the Court to reject Objectors' immunity arguments which are not in fact based on Maryland law and have no application to the actual claims before the Court.

## V.    CONCLUSION

As stated herein, Matthews has stated valid claims and the Objector has not put forward any admissible evidence for the Court to rebut the *prima facie* presumption in favor of Matthews and the previously determined facts already adjudicated by the circuit court. If the Court has any hesitation whatsoever, Matthews requests the Court to exercise its discretion and permit him to pursue his claims in the pending action in the Circuit Court for Baltimore City, Maryland or alternatively to appoint a special master at the Debtors' and Objector's expense to make findings of fact after a period of discovery and an evidentiary hearing/trial. Further, even though Matthews believes that Maryland law related to his claims are clear, if the Court is uncertain, Matthews requests the Court to consider those questions of law to the Maryland Court of Appeals pursuant to the Maryland Uniform Certification of Questions of Law Act, Md. Code Ann., Cts. & Jud. Proc. § 12-601, *et seq.* For these reasons Matthews requests the Court to overrule ResCap's Objection with prejudice or grant leave to pursue the alternative relief requested herein.

Respectfully,

//ss//

Phillip Robinson
Consumer Law Center LLC
8737 Colesville Road, Suite 307
Silver Spring, MD  20910
Phone (301) 637-6270
Email: phillip@marylandconsumer.com


*Counsel for Creditor Kevin J. Matthews and Admitted Pro Hoc Vice*