# Exhibit 13

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: July 30, 2014<br>Hearing Time: 10:00A.M |
| In Re:<br><br>RESIDENTIAL CAPITAL, LLC, et al.<br><br>Debtors | **RESPONSE TO OBJECTION<br>TO CLAIM NO. 392**<br><br>Case No.: 12-12020<br><br>(Chapter 11)<br><br>Assigned to:<br>Hon. Martin Glenn<br>Bankruptcy Judge |

**DECLARATION OF KEVIN J. MATTHEWS IN RESPONSE AND
OPPOSITION TO THE OBJECTION TO RESCAP
BORROWER CLAIMS TRUST TO
CLAIM NUMBER 392**

I, Kevin J. Matthews, declare as follows:

1. Through my attorneys, I authorized the filing of Claim No. 392 in this matter related to my legal claims against the debtor GMAC Mortgage, LLC. In response to my claim I received that attached acknowledgement (see **Exhibit 1**)[1] from the claims administrator that my claim was timely submitted.

2. On or about June 21, 2013 counsel for GMAC requested that I provide GMAC further documentation in support of Claim No. 392 and I did so by the requested deadline providing thousands of pages of supporting documents. Neither GMAC nor its counsel made any further requests for information or even formal discovery from me or any other person related to Claim No. 392.

---

[1] As referenced herein each numbered "Exhibit' references the Exhibits attached to my response to the Objection to my Proof of Claim which is filed contemporaneously with this declaration.

3. GMAC Mortgage, LLC presently claims to be the owner of my mortgage loan for my home and property located in the City of Baltimore known as 3216 East Northern Parkway, Baltimore, Maryland (21214)("Property"). This conclusion is based upon: (i) a copy of the recorded Assignment of Deed of Trust found in the land records for Baltimore City, Maryland at Liber 14058, Page 019 at **Exhibit 2**;[2] (ii) the statement of my new mortgage servicer, Ocwen Loan Servicing which has represented to me that the alleged debt which is owed on my mortgage loan is owed to GMAC Mortgage, LLC, as represented on **Exhibit 3**[3]; (iii) an Affidavit Certifying Ownership of Debt Instrument and that the Copy of the Note is a True and Accurate Copy filed in the Circuit Court for Baltimore City in the **Second Foreclosure** proceeding against me by GMAC Mortgage LLC's authorized agents, as represented on **Exhibit 4**[4]; and Affidavit Certifying Ownership of Debt Instrument and Truth and Accuracy of Copy Filed Herein presented to the circuit court in the First Foreclosure, as represented on **Exhibit 5**.

4. However, GMAC Mortgage, LLC is not now licensed as a mortgage lender by the State of Maryland as reported on the National Mortgage licensing System & Registry of Nationwide Multistate Licensing System (NMLS) website

---

[2] There are no further assignments of the Deed of Trust recorded as of the date of this affidavit in the land records for Baltimore City, Maryland to any other person.

[3] Unlike GMAC as discussed further *infra*, Ocwen has disclosed as exemplified on **Exhibit 3,** its interest in the loan as well as the loan's relationship with USAA. None of the similar GMAC communications to me using the USAA name and logo ever disclosed GMAC's interest in the loan.

[4] I received no notice from GMAC or Ocwen that my loan has been sold to any other entity.

(http://www.nmlsconsumeraccess.org/), as represented on **Exhibit 6**.[5]  Nor is GMAC Mortgage, LLC licensed as a Maryland Collection Agency, by the Maryland Collection Agency Licensing Board, as represented on **Exhibit 7**.

**General Background**

5. I am a lifelong resident of Baltimore, Maryland and graduated from high school in June 1998.  While in high school I was a member of the Air Force JROTC.

6. Upon graduation I enlisted in the Air Force on July 31, 1998 and was later stationed at Kadena Air base in Okinawa, Japan and Ft. Huachuca, AZ.  I also had various other deployments, including to Iraq.

7. In 2002, I returned home to Baltimore and started working as a security manger, but I still wanted to be a part of the military in some way, so I enlisted in the Maryland Army National Guard.  While with the Guard, I was stationed with the 29th Discom Unit based out of Towson, Maryland until April of 2005.  In May of 2005, I was selected to be deployed to Iraq with the 243rd Engineer Company. Our Mobilization station was Camp Atterbury, Indiana.  We officially deployed to Iraq in August 2005.

8. While in Iraq, I served in the capacity as a fuel tanker driver, ITT and liaison for state correspondence.  After returning home in 2006, I began to feel the effects of the stress of deployment had caused on me and many others like me.  I also began to suffer from chronic back pain, tinnitus, post traumatic stress disorder, and migraine headaches.  Even with all of my issues, I still continued to work.

---

[5] GMAC Mortgage LLC voluntarily surrendered its license on May 30, 2013 but has continued to maintain the Second Foreclosure action against me and my Property and attempt to collect from me through Ocwen.

9. In 2006 I married and in 2007 my son, Kevin was born.

10. In 2008, with the help of the VA Guaranty Loan Program, I purchased the Property. When I purchased my property I had a good income and could afford my loan. I was a contractor at Ft. Meade in the field of waste water.

11. I also made all my mortgage payments on time and everything was going okay, but in December of 2008, I was in a horrific car accident that made my previous injuries worse. In February of 2009, as a result of my injuries and resulting continued absence from work, I was laid off from my job while I was in the hospital.

12. Realizing the difficulty of my situation and in an effort to be proactive and rely upon the benefits entitled to me through the VA program (including the loss mitigation available to vets like myself), I contacted my mortgage servicer, whom I understood and believed at the time to be USAA,[6] to inform it of my hospitalization, disability and anticipated financial hardship before I fell behind on my mortgage. I continued to contact USAA/GMAC after my release from the hospital and during my rehabilitation in a continued effort to keep it informed of my situation and in reliance on its representatives' promises to see if I could secure any help from it while I had no income, including the possibility of a forbearance or modification.

---

[6] I later learned after I retained counsel and the public admissions of GMAC and USAA and through papers filed in this action that in fact I was never communicating with representatives from USAA but in fact GMAC had been retained, without my knowledge or any disclosure to me whatsoever, to service my mortgage loan while utilizing USAA's name and logo in all written and oral communications.

13. In reliance that USAA/GMAC would work with me if I did my part, I made every effort to keep up on my mortgage payments including draining my all of my 401k, using my tax returns, and short term disability benefits. I also did not pay any other bills in an effort to keep my mortgage current and depleted all of my savings. In July of 2009, I ran out of money and in August of 2009, I officially went thirty days late. However, I was not in legal default because USAA/GMAC never offered me any of the loss mitigation alternatives, and I had continued to contact USAA/GMAC in an effort to find a resolution to the delinquent payments on my home in reliance on USAA/GMAC's duties to me under the VA Program. I wanted desperately to save my home. I faxed hardship letters and called twice a week every month in continued reliance on USAA/GMAC's promises to work with me, but I was just given (what I know now but not what I knew then to be) wrong information and guidance, and the situation just got more negative.

14. I also informed USAA/GMAC that I applied for disability services in March of 2009 in expectation and reliance that I would be meaningfully considered for loss mitigation alternative, but it didn't want to listen. In August of 2009, I contacted USAA/GMAC about the possibility of executing a Deed in Lieu as an alternative to foreclosure, and was instructed to draft a letter stating my financial situation and asking that a Deed in Lieu be accepted. In reliance on that advice, I drafted the letter and faxed it to USAA/GMAC. However I never received a response.

15. In January of 2010, in one of my many phone calls to USAA/GMAC, I specifically asked about the status of the Deed in Lieu and was told that a Deed in

Lieu was not possible unless the house had been on the market for at least ninety days.

16. By February of 2010, the stress had finally taken a toll on my family and I was going through a divorce. That same month, I received a 45 day notice of intent to foreclose letter. However, some things did begin to turn around for me, I was approved for my disability through Social Security, and also I began school through the Veterans Administration program. In addition, I began making some additional income from tutoring, but it wasn't very much. In March of 2010, I went to the Belair Edison Neighborhood Association for assistance with my mortgage. I began working with Mr. Roy Miller who was assigned to me as a housing counselor. In March of 2010, Mr. Miller submitted with my authorization and approval a mortgage modification package to USAA/GMAC. USAA/GMAC denied my modification on the grounds of insufficient income but without considering the disability income I had disclosed to it. I appealed the decision and resubmitted a package in late April 2010. The company received the package with all required up-to-date documents on April 30th and acknowledged receipt. By this time, a foreclosure sale date had been set for May 21, 2010. However, since I had a VA loan and the package had not even been viewed and evaluated and I had not been offered any of the loss mitigation available under the VA program, it was my understanding that the date should have been pushed back or cancelled until USAA/GMAC complied with the VA program.

17. At the beginning of May, Mr. Miller contacted USAA/GMAC on my behalf to verify that the sale date had been pushed back; Mr. Miller never received a

response. On May 21, 2010, the sale date proceeded with USAA/GMAC not even looking at application for my loan modification.

18. After the sale Mr. Miller referred me to legal counsel and my attorneys filed timely exceptions to the foreclosure sale with the circuit court. While the exceptions were pending consideration of the circuit court and USAA/GMAC knew I was represented by counsel and before the lender had the legal right to acquire possession of the Property from me, I was required to go out of town for an internship related to my studies.

19. I returned home to learned that my house had been taken over by USAA/GMAC without the permission of the circuit court, that a lockbox had been placed on my front door and all of my personal belongings and property as well as that of my son's belongings had been taken from the house by the USAA/GMAC's agents who secured the house.

20. In addition, as a result of this illegal lockout, I incurred damages and losses by having to go and find an apartment and buy all new furniture and clothing for not only myself but also for my son. To this date I have never received any of those items back from USAA/GMAC or its agents.

21. After I obtained legal counsel of Civil Justice Inc. and the University of Maryland School of Law Consumer Protection Clinic (for which I have incurred hundreds of hours of legal services as a direct and proximate result of GMAC's illegal actions), I also learned in the Fall of 2010 for the first time that GMAC and not USAA owned my mortgage. Apparently, according to what USAA has told the

media, it permited GMAC to use its name for customers like me so we don't even know the loan has been transferred.

22. Had I known who owned my loan, either Mr. Miller or myself could have escalated my loss mitigation requests to the true owner. However, this information was concealed from me by USAA and GMAC and their agents with whom I communicated by phone and in writing.

23. I have also learned since the May 2010 foreclosure sale that since my loan was a VA Guaranteed Loan, the VA required my lender to undertake loss mitigation efforts prior to foreclosing on the loan including a face-to-face meeting, review of my loan and circumstances for modification, the possibility of temporarily modifying my loan to allow my conditions to improve, the exploration of the possibility of a deed in lieu as an alternative to foreclosure and as a last resort only foreclosure.

24. At no time did GMAC or USAA ever inquire about the circumstances of my missed payments, what I could afford to pay, the permanency of my condition, the possibility of a short sale or deed in lieu, or the possibility of meeting face-to-face to discuss any loss mitigation alternatives.

25. All I received was incorrect or conflicting information, denial letters to my requests for modification with no other explanation other than I had insufficient income (despite the substantial benefit income I was approved for and GMAC knew about but failed to acknowledge) and verbal statements from their representatives that I was required to pay my full payment and only my full payment would be accepted or I would be foreclosed upon.

26. In the Fall of 2010 when the national and state robo-signing scandals came to light, I learned that an individual by the name of Jeffrey Stephan had admitted under oath in a deposition that he had signed tens of thousands of bogus affidavits used to initiate foreclosure proceedings on behalf of GMAC and other lenders including my own foreclosure. Apparently, according to his sworn testimony, Mr. Stephan never reviewed the required documentation and the affidavits presented by GMAC's agents to the circuit court were falsely notarized without Mr. Stephan being present as required under the law.

27. In a further effort to undo my foreclosure sale and the pending foreclosures against hundreds of other Maryland homeowners like me based on bogus documents, I caused through my attorneys to file a request to certify a class of defendants in pending state court foreclosure cases in Maryland which were based on bogus, foreclosure affidavits signed by Stephan. I also asked the circuit court to dismiss my case and also then pending cases based on similar bogus documents presented to state courts by GMAC's agents.

28. In response to my request GMAC eventually agreed to voluntarily dismiss hundreds of similar cases in Maryland by acknowledging that it did not have a right to pursue the actions in the form it desired. This agreement occurred at a hearing in the circuit court where GMAC's local counsel stated those pending foreclosures based upon Jeffrey Stephen's signature would be dismissed. A true and accurate copy of GMAC's motion to dismiss the foreclosure foreclosure action in the circuit court by its authorized agents is attached hereto as **Exhibit 8.** To me this was not only a victory but a clear admission by GMAC of their guilt

and wrongdoing in filing these actions against me and other home owners. The circuit court granted GMAC's requested relief as identified on a certified copy of the Order of the circuit court, attached hereto as **Exhibit 9.** The circuit court further ordered that the costs of the foreclosure could not be assessed to me or my mortgage account as identified on the certified docket entries from the First Foreclosure attached hereto as **Exhibit 10.**

29. I also learned in the Fall of 2010 that the attorneys (i.e. agents for GMAC) suing me in the First Foreclosure had admitted in hundreds of Maryland foreclosure actions that they also permitted non-attorneys to impermissibly robo-sign their signatures on foreclosure papers and affidavits.

30. After the hearing where GMAC's counsel conceded that the first foreclosure action should be dismissed based upon the improper papers that it had authorized to be filed with the circuit court, I attempted through my counsel to secure the keys to the locks to my Property that GMAC had illegally placed on the door to my home. However, it never gave my counsel the keys and as a result I had to break into my own house. Unfortunately, someone called the police and I had to explain to the Baltimore City police officers an impossible story about how I was the owner of my Property and GMAC was wrong by its own admission. This situation created even more embarrassment for me and fear that I would arrested for having done nothing wrong.

31. Upon entering the house in early 2011, I found that the Property had not been properly winterized by the company hired by GMAC prior to discontinuing the utilities. As a result my sewage pipe and hot water heater cracked from the water

expansion in the cold weather, requiring me to fix both in order to move back in and use the house.

32. From early 2011 through early 2012 GMAC knowingly and falsely claimed that my Property and home were not owner occupied.  Through counsel I informed GMAC that this off-repeated representation was false but GMAC continued to false assert the statement in a continuous and harassing manner.

33. As a member of the armed service I took an oath where I rose my right hand and stated that I solemnly swore to support and defend the Constitution of the United States against all enemies, foreign and domestic; that I would bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God. I did all that was asked of me proudly and unreservedly.

34. As a licensed mortgage lender GMAC was required (before it gave up its license) to act safely and soundly in its mortgage servicing practices.  However, as exemplified by its Consent Order and Amended Consent Order with the Board of Governors of the Federal Reserve System (see *In re the Matter of Ally Financial, Inc., et al.* [Doc. 11-020; FDIC 11-123b]][April 13, 2011 & July 26, 2013]) and its voluntary agreement to enter into a Consent Judgment as part of the State-Federal National Mortgage Settlement (see http://www.nationalmortgagesettlement.com/), GMAC has admitted that its practices that include the ones subject to Proof of Claim Number 392 were unsafe and unsound.

35. GMAC filed a Second Foreclosure action against me and my Property in 2012. True, correct, and certified copies of the docket entries from the second foreclosure case are attached as **Exhibit 11**.

36. GMAC has maintained the Second Foreclosure action since its commencement but has not proceeded with a foreclosure sale of my home and Property.

37. I authorized a Counter Complaint to be filed against GMAC and other parties, including USAA, in the Second Foreclosure case in which I have asked for a jury trial. The Amended Counter Complaint is still pending and no scheduling order has been issued by the circuit court.

38. There are no final judgments from the Second Foreclosure case and no party has ever asked the circuit court to declare any portion of the case final for appeal purposes. No party to the Second Foreclosure case, including GMAC's agents, has sought any interlocutory appeal.

39. As a direct and proximate result of GMAC's actions described herein and my proof of claim, I have sustained damages and losses including (in addition and not limited to others disclosed herein):

    a. Economic damages for damage to my home and Property;

    b. Economic damages for legal fees I incurred defending the first illegal foreclosure and the second illegal foreclosure GMAC is not entitled to pursue as an unlicensed Maryland lender;

    c. Economic damage for loss of property taken by GMAC's agents;

    d. Non-economic damage to my credit showing two foreclosure actions authorized and maintained by GMAC without the legal right to do so and these public filings cannot be expunged;

    e. Non-economic damage in the form of emotional damages with physical manifestations including but not limited to depression, anxiety, sleeplessness, fear, frustration, and anger; and

    f. Statutory damages permitted by the claims identified in my proof of claim under state and federal law.

40. This dispute and GMAC's acts and omissions described in my proof of claim and the supporting documents I have provided GMAC through my counsel has also negatively impacted my graduate studies whereby my grades have suffered because of the emotional stress described above.

41. If the Court has any hesitation about any issue of Maryland law, I request that the Court consider certifying the question(s) to the Maryland Court of Appeals pursuant to the Maryland Uniform Certification of Questions of Law Act, Md. Code Ann., Cts. & Jud. Proc. § 12-601, *et seq.*

42. I also request if the Court has any hesitation concerning any of the facts in dispute that the Court permit me leave to pursue discovery a determination of those facts including the value of my claims by a jury of my peers in Amended Counter Complaint pending in the Second Foreclosure matter.  Alternatively, I request that the Court appoint a special master to conduct an evidentiary hearing in Maryland and present findings of fact for the Court's consideration.  The discovery I would request leave to pursue includes:

    a. Production of all documents, as described broadly under the federal rules in the possession and control of the Objector and Debtors related to my mortgage account (including electronic copies of the audio recordings GMAC's employees disclosed to me nearly each and every time I contacted it that were being made);

    b. Identification and depositions if necessary of all persons for whom the Objector and its purported witness(es) relied upon for the purported testimony before the Court; and

    c. Depositions and other appropriate discovery of the Debtors' employees and former employees concerning and related to their mortgage servicing practices related to my loan.

43. If the Court wishes or requires me to provide further testimony on the matters discussed, I am ready, willing and able to provide such testimony at a convenient time and place.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 2, 2014.

_____
Kevin J. Matthews