**Hearing Date: July 9, 2014 at 10:00 a.m. (ET)**

| | |
|---|---|
| **MORRISON & FOERSTER LLP** | **REED SMITH LLP** |
| 250 West 55th Street | Princeton Forrestal Village |
| New York, New York 10019 | 136 Main Street, Suite 250 |
| Telephone:    (212) 468-8000 | Princeton, New Jersey 08540 |
| Facsimile:    (212) 468-7900 | Telephone:    (609) 987-0050 |
| Norman S. Rosenbaum | Facsimile:    (609) 951-0824 |
| Jordan A. Wishnew | Diane A. Bettino |
| Meryl L. Rothchild | Kellie Lavery |

*Counsel for the ResCap Borrower Claims Trust*

*Co-Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

|  | ) | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---------------------------------------------------------------

**THE RESCAP BORROWER CLAIMS TRUST'S REPLY
IN SUPPORT OF ITS OBJECTION TO PROOFS OF CLAIM
FILED BY FRANK REED AND CHRISTINA REED PURSUANT TO
<u>SECTION 502(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3007</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

REPLY ..................................................................................................................... 3

A.    There Has Been No "Final Judgment" on the Merits of Any Claims or Issues
Raised in the Prepetition New Jersey State Court Actions ............................... 3

     i.    Neither the Doctrine of Res Judicata nor the Doctrine of Claim (or
Issue) Preclusion Bar Any of the Borrower Trust's Statements in
the Objection ....................................................................................... 5

     ii.    The Rooker-Feldman Doctrine Is Not Applicable in This Matter ............ 6

B.    The Reeds Fail to Establish Their Claim for Negligence .................................. 8

     i.    The FRB Consent Order and Related Testimony Is Not Dispositive
of Any Wrongdoing by the Debtors on the Reeds ..................................... 8

     ii.    The Reeds Fail to Provide Sufficient Evidence to Support Their
Claim for Negligence .............................................................................. 9

C.    The Reeds Fail to Substantiate Their Breach of Contract Claim, and Opted Not to
Reinstate Their Loan or Complete a Loan Modification ................................. 11

     i.    The Reeds Fail to State a Valid Claim for Breach of Contract ................ 11

     ii.    The Reeds Failed to Reinstate the Reed Loan or Complete a Loan
Modification ......................................................................................... 12

D.    The Reed Claims for Actual Malice, Fraud, Malicious Use of Process,
Constructive Trust, and Emotional Distress Are Each Unsupported by Sufficient
Evidence ......................................................................................................... 13

CONCLUSION ....................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

CASES

*Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*,
No. 12. Civ. 6074 (RJS), 2013 U.S. Dist. LEXIS 143957 (S.D.N.Y. Sept. 23, 2013) ..............9

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,
544 U.S. 280 (2005) ......................................................................................................6

*In re Allegheny International, Inc.*,
954 F.2d 167 (3d Cir. 1992) .......................................................................................9, 10

*In re Cendant Corp. Securities Litigation.*,
139 F. Supp. 2d .........................................................................................................12

*In re Estate of Dawson*,
136 N.J. 1 (1994) ........................................................................................................5

*In re Residential Capital, LLC, et al.*,
No. 12-12020 (MG) (Bankr. S.D.N.Y. June 24, 2014)........................................................10

*Mohsin Mahmud v. JTH Investment Group, LLC (In re Mahmud)*,
No. 08-10855, No. 08-0175, 2008 WL 8099115 (Bankr. E.D. Pa. Dec. 4, 2008)...................10

*Nolan v. First Colony Life Insurance Co.*,
784 A.2d 81 (N.J. Super. Cut. App, Div. 2001).............................................................5, 6

*Video Pipeline Inc. v. Buena Vista Home Entertainment, Inc.*,
210 F. Supp. 2d 552 (D.N.J. 2002) ...............................................................................12

*Wilson v. Deutsche Bank National Trust (In re Wilson)*,
410 F. App'x 409 (2d. Cir. 2011) ..................................................................................6

STATUTES

N.J.S.A. 2A:15-11.......................................................................................................14

N.J.S.A. 2A:15-14....................................................................................................14, 15

N.J.S.A. 2A:50-57(a) ..................................................................................................12

OTHER AUTHORITIES

*Black's Law Dictionary* 316 (10th ed. 2014)....................................................................4

ii

Fed. R. Evid. 801 ....................................................................................................................10

Fed. R. Evid. 803 ....................................................................................................................10

ny-1148090

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] (the "Plan")[1] confirmed in the above captioned bankruptcy cases (the "Chapter 11 Cases"), hereby submits this reply (the "Reply"),[2] together with the Supplemental Declaration of Lauren Graham Delehey, Chief Litigation Counsel for the ResCap Liquidating Trust (the "Supplemental Declaration"), annexed hereto as Exhibit 1, to the response of claimants Frank Reed and Christina Reed (together, the "Reeds") [Docket No. 7153] (the "Response") to *The ResCap Borrower Claims Trust's Objection to Proofs of Claim Filed by Frank Reed and Christina Reed Pursuant to Section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007* [Docket No. 7017] (the "Objection").  In support of the Objection, the Borrower Trust respectfully states as follows:[3]

### PRELIMINARY STATEMENT

1.    After being given yet another opportunity to substantiate their claims against the Debtors, the Reeds come up short despite inundating the Borrower Trust and this Court with hundreds of pages of prior pleadings and exhibits.  Contrary to the Reeds' assertion that the Borrower Trust "carelessly omitted from its review prior to making its Objection – including . . . the whole of the Claimants' supplemental submission of over 300 pages and 29 multi-document exhibits" in addition to the "proofs" submitted by the Reeds (*see* Response

---

[1]    The Plan was confirmed by order of this Court dated December 11, 2013 [Docket No. 6065] and the effective date of the Plan occurred on December 17, 2013.  The Plan provides for the creation and implementation of the Borrower Trust.  Among other things, the Borrower Trust is responsible for prosecuting objections to Borrower Claims, including those objections previously filed by the Debtors.  *See* Plan, Art. IV.F.

[2]    Capitalized terms not defined in this Reply shall have the meaning ascribed to such terms in the Objection.

[3]    To the extent not addressed herein, the Borrower Trust incorporates by reference all arguments made by the Borrower Trust in the Objection.

¶ 10), the Borrower Trust conducted an in-depth review of the Reed Claims, the record, the prior pleadings, and all exhibits submitted by the Reeds prior to filing the Objection. Based on the record before the Court, the Reeds not only fail to show by a preponderance of the evidence the validity of any of the legal predicates for the Reed Claims and their request for damages, but also fail to proffer admissible evidence to demonstrate any nexus between the Debtors' purported improper acts and the claimants' alleged economic damages.

2.      Two material facts notably absent from the scores of pages provided by the Reeds is an acknowledgment that their last payment on the Reed Loan was on <u>January 4, 2008</u>, as well as the fact that they have not been dispossessed of their home since foreclosure proceedings began. *See* Supplemental Declaration ¶ 5. In fact, the Reeds have not made <u>any</u> payments on the Reed Loan since January 4, 2008 to the present.4 *See id*. In a misguided attempt to support their allegations of the Debtors' purported wrongdoing, the Reeds misconstrue legal preclusion doctrines and argue that certain orders entered in the two related prepetition lawsuits filed in New Jersey contain dispositive findings as to the Debtors' liability on their asserted claims (*i.e.*, negligence, breach of contract, etc.). Similarly, the Reeds also cherry-pick excerpts from testimony provided in support of the FRB Consent Order and improperly proffer such statements as proof that the Debtors committed both "a negligent and/or a wrongful act against the Reeds" (Response ¶ 54) and are therefore liable for the Reed Claims. In sum, the Reeds fail to state valid legal and factual predicates for the Reed Claims, and are not entitled to any damages on account thereof.

---

4       The Reeds assert that they made a $3,000 payment in August of 2008 that was "un-applied" to the Reed Loan account. This payment, which was a required initial deposit for a borrower repayment plan, is addressed as part of the Borrower Trust's reply to the Reeds' contention that they did seek a loan modification. *See* Reply ¶ 22-23.

3.      The Reeds assert that a substantial part of their damages result from the Debtors' decision to maintain a lis pendens on the Reeds' real property subsequent to receiving notice that the underlying litigation – the Foreclosure Action – against the Reeds had been dismissed.  *See* Response ¶ 75.  The Debtors properly filed the lis pendens on this property when they commenced the Foreclosure Action, and were under no legal obligation to withdraw it prior to its statutory expiration because (i) there was no final judgment entered in either the Foreclosure Action or the Reed Action that required the Debtors to have the county clerk discharge the lis pendens, and (ii) the Reeds failed to complete any loan modification or loss mitigation program, through no fault of the Debtors.  Therefore, the Debtors had a reasonable basis to maintain the lis pendens on the Reeds' property since the Reed Loan remained in default, and the Reeds have failed to submit any admissible evidence to the contrary.  The Reeds' own actions (or inaction) – not that of the Debtors – caused the Reeds' failure to effectuate any remedial action to reinstate or modify the Reed Loan.

4.      Therefore, for the reasons set forth in the Objection and the Reply, the Borrower Trust respectfully requests that the Court overrule the Response and sustain the Objection5 because the Reeds fail to support the Reed Claims by a preponderance of the evidence.  Instead, the Reeds use the Response as a platform to voice unsubstantiated allegations in an attempt to distract the Court from the Reeds' baseless claims.

---

5    The Borrower Trust will treat the Reed Claims initially asserted against ResCap, Claim Nos. 3708 and 4759, as against RFC.  While the Reeds had nearly two years to file a proper amendment to their proofs of claim to correct their purported "scrivener's error" in designating those claims against ResCap, the Borrower Trust will not object to the Reeds' request to now amend the designation of these claims through their Response.  The Borrower Trust does, however, maintain its objection that these claims remain inadequately pled, regardless of the Debtor entity against which they are asserted.

ny-1148090

## <u>REPLY</u>

**A.    There Has Been No "Final Judgment" on the Merits of Any Claims or Issues Raised in the Prepetition New Jersey State Court Actions**

5.    The Reeds dedicate a large portion of the Response to arguing that the New Jersey court's denial of GMACM's motion to dismiss the Reed Complaint was a dispositive ruling in which that court determined on a *final basis* that each of the claims set forth in the Reed Complaint were meritorious. (*See, e.g.*, Response ¶¶ 5, 19, 22, 31-34, 38-39, 42). This is simply wrong. The court only found that the Reed Complaint set forth cognizable claims that could withstand a motion to dismiss. The court's ruling was not a determination as to whether GMACM had any definitive liability for those claims. A "cognizable claim" is one that meets the basic criteria of viability for being tried or adjudicated before a particular court, where such claim or controversy is within the power or jurisdiction of a particular court to adjudicate. *See Black's Law Dictionary* 316 (10th ed. 2014) (defining "cognizable" to ordinarily mean "[c]apable of being known or recognized" or "[c]apable of being judicially tried or examined before a designated tribunal"). Therefore, a finding that a plaintiff has a cognizable claim is not a determination as to the validity of such claim, only that the plaintiff may proceed with its burden of proving that claim before the appropriate court. *See id*.

6.    The Debtors and the Reeds never litigated the merits of the allegations in the Reed Complaint, and the order denying the Debtors' motion to dismiss the Reed Complaint (or any other order entered in either of the prepetition lawsuits) does not qualify as a dispositive ruling on the merits of any of the Reeds' claims set forth in the Reed Complaint that form the bases of the Reed Claims. Therefore, the Borrower Trust is not barred from raising any of the arguments in the Objection.

4

7.     The Borrower Trust respectfully requests that the Court sustain the Objection because the arguments in the Response all fail as to the applicability of the *res judicata*, collateral estoppel, and *Rooker-Feldman* doctrines.  Consequently, the Reeds fail to provide any response that would support their claims.

i.     *Neither the Doctrine of Res Judicata nor the Doctrine of Claim (or Issue) Preclusion Bar Any of the Borrower Trust's Statements in the Objection*

8.     In the Response, the Reeds assert that the Borrower Trust "is barred from revisiting [the issues of negligence and breach of contract, among others] . . . in this bankruptcy matter by virtue of collateral estoppel" and *res judicata*, respectively.  *See* Response ¶¶ 5, 18-33, 40-42.  While the Reeds properly identify the elements of each of these preclusionary doctrines, the Reeds misconstrue the law and cannot satisfy the elements.  First, collateral estoppel does not apply to the Reeds' claims for, e.g., negligence and breach of contract because these issues were neither (i) actually litigated, nor (ii) determined by a valid and final judgment.  *See, e.g., In re Estate of Dawson*, 136 N.J. 1, 20-21 (1994) (citations and parentheticals omitted) (stating the requirements for collateral estoppel to preclude a party from re-litigating finally determined issues).  When litigating the Debtors' motion to dismiss the Reed Complaint, the parties did not put on a full evidentiary case to determine the merits of the claims at issue.  *See* Supplemental Declaration ¶ 7.  Rather, the New Jersey court only determined whether the Reeds met the basic "cognizable" standard and could go forward with their burdens to prove their case.  See Order Denying Motion to Dismiss, annexed to the Delehey Declaration as Exhibit G.  There has never been a determination as to the ultimate validity and strength of the Reeds' claims by any court. Therefore, the Reeds misconstrue the law, improperly apply the doctrine of claim preclusion, and have not rebutted the Objection or proven their claims of negligence and breach of contract against the Debtors.

9.      In addition, the Reeds assert that *res judicata* bars the Borrower Trust from disputing the validity of the Reed Claims.  *See* Response ¶¶ 40-42.    Similar to the deficiencies noted above, the Reeds mistakenly assert that their claims were fully litigated in the New Jersey court and that there has been a valid, final judgment on the merits of those claims and issues.  *See* Objection ¶¶ 72-74.  Again, this is not the case.  The requirement that there be a dispositive final order on the issues raised in the state court litigation is blatantly missing from the Reeds' analysis.  *See Nolan v. First Colony Life Ins. Co.*, 784 A.2d 81, 88 (N.J. Super. Cut. App, Div. 2001) (stating that denial of a motion to dismiss was not a final judgment, and therefore, has no res judicata effect).  Therefore, as set forth in the Objection, the doctrine of *res judicata* does not preclude the Borrower Trust from raising arguments to challenge the sufficiency and validity of the Reed Claims.

ii.      *The Rooker-Feldman Doctrine Is Not Applicable in This Matter*

10.      Lastly, the Reeds posit that the Rooker-Feldman doctrine applies and should bar the Borrower Trust from challenging whether the Reeds have sufficiently stated a cause of action for negligence and their other claims.  *See* Response ¶¶ 34-39.  The Reeds fundamentally misapply this doctrine, which has no relevance in these proceedings.  The Rooker-Feldman doctrine demands that the case be brought by a "state court loser," *i.e.*, a plaintiff who lost in state court.  *See Wilson v. Deutsche Bank Nat'l Trust (In re Wilson),* 410 F. App'x 409, 410 (2d. Cir. 2011).  GMACM is not a state court loser because the Law Division Court did not dispositively determine in the Reeds' favor that all of their claims against the Debtors have merit.  This fact causes the entire application of the doctrine to fall apart.  Taking each element in turn, <u>first</u>, the Reeds wrongly contend that (i) GMACM is a state court loser for the reason stated above, and (ii) GMACM brought "the case" before this Court.  *See* Response ¶¶

34, 38-39. The Reed Claims are "the case" referenced in the doctrine, whereas the Objection is only a defensive pleading filed by the Borrower Trust in response to the Reed Claims.

11.    <u>Second</u>, the state court loser must be complaining of injuries caused by a state court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287 (2005); *see also Wilson*, 410 F. App'x at 410. This element similarly fails because the Debtors are neither state court losers, nor are they complaining of injuries caused by a state court judgment. *See* Response ¶¶ 34, 38-39. The issues in the prepetition state court lawsuits have not been fully litigated or determined on the merits in either party's favor. The Foreclosure Action was dismissed without prejudice subject to the Debtors' demonstration of mailing a NOI to the Reeds, and the Debtors retained the right to re-commence foreclosure proceedings. *See* Supplemental Declaration ¶ 8. In addition, the Reed Action was dismissed without prejudice upon the Reeds' voluntary motion for dismissal. The Objection serves to raise defenses to the numerous allegations raised in the Reed Claims, not complain about nonexistent injuries caused by a state court judgment.

12.    <u>Third</u>, the state court loser must be inviting review of the state court judgment. This element fails because there is nothing that the state court decided that warrants review, as the state courts did not review the underlying issues on the merits.

13.    <u>Fourth</u>, the judgment must have been rendered before the federal proceedings commenced. This last element fails because the Objection is not challenging any judgment entered by the state courts. Accordingly, the Reeds misconstrue the applicability of the *Rooker-Feldman* doctrine, and their argument simply lacks merit.

**B.**      **The Reeds Fail to Establish Their Claim for Negligence**

　　i.      *The FRB Consent Order and Related Testimony Is Not Dispositive of Any
Wrongdoing by the Debtors on the Reeds*

　　14.      In the Response, the Reeds cite to testimony and statements made by the
FRB as proof of the Debtors' purported misconduct and negligent acts in the processing of
foreclosures that the Reeds contend are relevant to the Reed Claims.  The Reeds also request that
the Court take judicial notice of certain testimony that purportedly provides "a definitive
definition of what actions by the Debtor (and similarly regulated entities), constitute negligent
and/or wrongful behavior."  *See* Response ¶ 49.  The Reeds assert that when this "authoritative
definition" is combined with the "factual determination by the New Jersey Chancery Court in the
2009 dismissal of the debtors' foreclosure action, in which it necessarily determined that the
foreclosure action was both untimely and in violation of New Jersey foreclosure law, the
debtors', [sic] as a matter of law, have indisputably committed both a negligent and/or a
wrongful act against the Reeds."  *Id.* ¶ 54.  The Reeds continue to assert that the FRB's
characterization of the Debtors' behavior is "clear and convincing evidence of negligence and/or
wrongful acts."  *Id.* ¶ 55.  The Reeds further argue that they could have been made whole under
the monies from the Settlement Fund established by the FRB Consent Order but for the Debtors'
rejection of this proposal.  *See* Response ¶ 112-17.

　　15.      In connection with the Consent Order Regulators' investigation of alleged
abuses in the foreclosure processes employed by companies with major mortgage servicing
operations (including the Debtors), GMACM, <u>without admitting fault</u>, agreed to pay for the FRB
Foreclosure Review and remediate any financial harm to borrowers resulting from errors or
misrepresentations of the Debtors that the FRB Foreclosure Review uncovers.  *See* Objection ¶¶
12-14, 76; *see also* Delehey Declaration ¶¶ 7-13.  The Reeds were included in the Eligible

8

Population because they were the subject of a foreclosure action during the relevant time period, and ultimately, the Reeds received a $500 settlement payment, the lowest payout of the various "potential harm" categories in the IFR Waterfall. *See* Objection ¶ 19; *see also* Delehey Declaration at ¶ 12. The determination that the Reeds should receive the lowest settlement payment offered means that there was no indication of even potential harm suffered by the Reeds that would have placed them into a higher payout category. *See* Objection ¶ 19 n.7; *see also* Delehey Declaration at ¶ 12, n.3.

16.    The payment that the Reeds received in respect of the FRB settlement does not indicate or represent any determination or acknowledgement by the Debtors that either the claims made by the Reeds have any merit or that the Reeds suffered any harm at the hands of the Debtors. *See* Objection ¶ 17; *see also* Delehey Declaration at ¶ 11. The combination of these facts, together with the 2009 dismissal of the foreclosure action without prejudice, does not amount to proof by a preponderance of the evidence of any act of negligence by the Debtors. *See* Objection ¶¶ 77-78. As stated in the Objection, the FRB Consent Order does not require the Debtors to make Borrowers, including the Reeds, whole. *See id*. Based on PwC's independent review of the Reeds' "Request for Review," the Reeds were found to fall in the lowest strata of the IFR Waterfall. *See id*. ¶ 78; *see also* Delehey Declaration ¶ 13. The Debtors have complied and completed their obligation pursuant to the settlement, and the Reeds are not entitled to any additional monies from the Settlement Fund. *See id*.

ii.    *The Reeds Fail to Provide Sufficient Evidence to Support Their Claim for Negligence*

17.    In the Objection, the Borrower Trust rebutted the presumption of the Reeds' prima facie case asserted against the Debtors. *See* Objection ¶¶ 58-60; *see also In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992) ("In practice, the objector must

9

produce evidence which, if believed, would refute at least one of the allegations that is essential

to the claim's legal sufficiency."). The Borrower Trust produced evidence equal in force to that

provided by the Reeds, and as a result, the burden shifted back to the Reeds to produce additional

evidence to prove the validity of their claims by a preponderance of the evidence. *See id*. at 174;

*see also Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12.

Civ. 6074 (RJS), 2013 U.S. Dist. LEXIS 143957, at *12-13 (S.D.N.Y. Sept. 23, 2013) (internal

quotation marks omitted) (stating an objector can negate a claim's presumptive validity and shift

the burden back to the claimant to "prove by a preponderance of the evidence that under

applicable law the claim should be allowed"); Memorandum Opinion and Order Sustaining

Objection to Claim No. 6423 of Neil Larkins, *In re Residential Capital, LLC, et al.*, No. 12-

12020 (MG) [Docket No. 7169] (Bankr. S.D.N.Y. June 24, 2014) (stating same standard). As

discussed below, many of the statements in the Reed Claims and the Response, as well as the

exhibits submitted in support thereof, are inadmissible hearsay that should not be considered by

the Court. *See, e.g.*, *Mohsin Mahmud v. JTH Inv. Grp., LLC (In re Mahmud)*, No. 08-10855, No.

08-0175, 2008 WL 8099115, at *6 (Bankr. E.D. Pa. Dec. 4, 2008) ("In general, factual

allegations made in a proof of claim are out-of-court statements under Fed. R. Evid. 801. Thus,

unless those allegations are non-hearsay under Rule 801(d) (*e.g.*, an admission by a party-

opponent), or some exception to the hearsay rule is applicable, they may be inadmissible.").

18.    The Reeds submit letters and statements from various parties as purported

proof that they received below-market offers for their real property and were declined certain

loan programs. These letters are inadmissible hearsay because (i) the declarant is not testifying

to the statements at the current trial or hearing; and (ii) the Reeds offer these letters as "evidence

to prove the truth of the matter asserted." *See generally*, Fed. R. Evid. 801. "The basis for

10

excluding hearsay evidence is the notion that statements made while not under oath and while not subject to cross-examination are inherently unreliable." *See* United States v. Lindemann, 85 F.3d 1232, 1238 (7th Cir. 1996). Further, none of these letters or statements falls within an exception to the rule against hearsay. See generally, Fed. R. Evid. 803. Therefore, the Borrower Trust contends that no weight should be given to these statements and asserts that they do not add to the legitimacy of any of the Reed Claims because such statements fail to explain how the Debtors' actions caused the third parties to value the Reeds' property. Further, the Hendricks Report is not dispositive evidence of the Debtors' purported misconduct and wrongful and/or negligent acts in connection with commencing a foreclosure action on the Reeds' property. *See* Response ¶¶ 2, 5. Moreover, even though the New Jersey court denied a motion to strike the Hendricks Report, this only means that the Debtors would have the opportunity to subject Mr. Hendricks to cross-examination, test and assess the reliability of the Hendricks Report's statements, and argue as to the appropriate weight that should be given to it.

**C.    The Reeds Fail to Substantiate Their Breach of Contract Claim, and Opted Not to Reinstate Their Loan or Complete a Loan Modification**

      i.    *The Reeds Fail to State a Valid Claim for Breach of Contract*

      19.    The Reeds contend that the Court need only look at the mortgage document and the note to see that the Debtors breached their contractual obligations to the Reeds and the Reeds suffered damages as a result of said breach. *See* Response ¶¶ 61-62. However, the Reeds fail to address the lack of contractual privity between themselves and the Debtors. <u>At no time did GMACM own the Reed Loan</u>.[6] See Supplemental Declaration ¶ 5; *see also* Note and Mortgage, annexed to the Supplemental Declaration as <u>Exhibit A</u>. Moreover, GMACM was

---

[6]    Metrocities Mortgage, LLC originated the Reed Loan in May 2006, and subsequently endorsed the note to GMAC Bank, now known as Ally Bank (a non-Debtor entity) (*see* <u>Exhibit A</u> annexed to the Supplemental Declaration). RFC acquired the Reed Loan on December 30, 2009. *See* Supplemental Declaration ¶ 5.

<u>never</u> a counterparty to the note.  *See* Supplemental Declaration ¶ 5.  For this reason alone, the breach of contract claim fails as against GMACM.

20.      Additionally, the Reeds' breach of contract claim is premised on the Debtors' purported defective notice prior to commencing the Foreclosure Action.  The breach of contract claim does not allege any issues with the Debtors' servicing of the Reed Loan.  Notwithstanding that RFC acquired the Reed Loan on December 30, 2009 (*see* Objection ¶ 20; *see also* Delehey Declaration ¶ 14), the purported breach of contract occurred <u>before</u> a Debtor entity was even party to the "very contracts [that] are relevant to the dispute between the parties – the mortgage document and the note."  Response ¶ 61.  Therefore, this claim similarly fails against RFC.

21.      More significantly, in the Reed Claims as well as the Response, the Reeds ignore the fact that in order to state a claim for breach of contract, New Jersey law requires pleading of the plaintiff's own contractual duties <u>in addition to</u> the alleged breach of a counterparty's duties.  *See* Objection ¶¶ 61-62; *see also Video Pipeline Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002) (listing the four requirements needed to state a breach of contract claim under New Jersey law, which includes that plaintiff must establish that they performed their own contractual duties); *In re Cendant Corp. Secs. Litig.*, 139 F. Supp. 2d 585, 604 n.10 (D.N.J. 2001) (noting that New Jersey law requires pleading of performance of the movant's own contractual duties).  The Reeds have not made a payment since <u>January 4, 2008</u> on the Reed Loan and have been in continuous breach of the contract.  *See* Supplemental Declaration ¶ 5.  For these reasons, the Reeds fail to meet the requirements under New Jersey law to state a valid claim for breach of contract against any of the Debtors, and accordingly, this claim fails as a matter of law.

12

ii.    *The Reeds Failed to Reinstate the Reed Loan or Complete a Loan Modification*

22.    For the past six years, the Reeds had the statutory right to "cure the default, de-accelerate and reinstate" the Reed Loan any time prior to a judgment being entered in connection with a foreclosure action.   N.J.S.A. 2A:50-57(a); *see also* Objection ¶ 41.   The Reeds' own actions (or inaction) – not that of the Debtors – caused the Reeds to fail to complete such remedy.   *See* Supplemental Declaration ¶ 6; *see also* Notice of Default Letter, annexed to the Delehey Declaration as Exhibit A.

23.    The Reeds' attempt to obtain a loan modification was not, as the Response suggests, "ignored by the debtor" (*see* Response ¶ 107).   *See* Supplemental Declaration ¶ 6.   In fact, the Reeds were required to make a $3,000 deposit to initiate a borrower repayment plan that required payments of $7,000 each month.   *See id.*   The repayment plan, if consummated, would have allowed the Reeds to catch up on past due mortgage payments.   *See id.*   The Reeds made a $3,000 deposit (*see* Response ¶ 108), but never remitted the next requisite payment of $7,000 under the repayment plan.   *See* Supplemental Declaration ¶ 7.   Accordingly, because the $3,000 was less than the $5,307.80 mortgage payment due on the Reed Loan, the Debtors could not apply those monies to the Reed Loan account until the Debtors received the next payment of $7,000.   *See id.*   As a result, the Debtors held the $3,000 deposit in a suspense account, which was ultimately transferred to 21st Mortgage Corporation in 2013, as the successor servicer and owner on the Reed Loan.   *See id.*   The Debtors no longer hold these monies.   *See id.*   In sum, the Reeds did not make the necessary payments to complete the loan modification, and therefore, the Debtors never prevented the Reeds from reinstating the Reed Loan.   *See id.*   For these reasons, this claim fails.

13

**D.      The Reed Claims for Actual Malice, Fraud, Malicious Use of Process, Constructive Trust, and Emotional Distress Are Each Unsupported by Sufficient Evidence**

24.    The Response's discussion of the Debtors' purported acts of malice, fraud, and wanton and/or willful disregard of the Reeds' statutory and contractual rights is an attempt to distract the Court from the reality that the Reeds have failed to support their claims by a preponderance of the evidence.    Evidence of the Debtors' malice, fraud, and wanton and/or willful disregard of the Reeds' rights, fraud, and malicious use of process is <u>completely absent</u> from the Reed Claims, the Response and all included exhibits.  *See* Objection ¶¶ 37-40; *see also* Delehey Declaration ¶¶ 15, 21 (the Debtors acted in good faith in filing the Foreclosure Action and attempting to comply with the FFA, and there is no evidence to show the Debtors acted with actual malice).  Furthermore, the Debtors were not unjustly enriched nor have they acquired or retained property of which the Reeds hold legal title.  It is abundantly clear that the Reeds have not made any payments on the Reed Loan in <u>over six years</u> (prior to the commencement of the foreclosure action), and the $3,000 deposit has been transferred along with the Reed Loan to 21st Mortgage Corporation, a non-Debtor entity.  *See* Supplemental Declaration ¶ 7.  Moreover, none of the preclusion doctrines bars this Court from reviewing and determining that the Reeds inadequately prove these claims and that such claims should be overruled.

25.    In the Response, the Reeds continue to assert that they should receive punitive damages on account of the Reed Claims because "a substantial part of the Reeds damages have come from the Debtors['] purposeful leaving of a lis pendens in place as active on the county records for four to five years after being given notice by both the state court and the Reeds that the underlying litigation had been dismissed."  Response ¶ 75.  GMACM filed the lis pendens on the Reeds' property on May 28, 2008 in connection with the commencement of the Foreclosure Action.  *See* Supplemental Declaration ¶ 8.  The lis pendens filed by the Debtors on

14

the Reeds' property became ineffective as of May 28, 2013,[7] five years after the Foreclosure

Action commenced.[8]   *See* Supplemental Declaration ¶ 8.   An "active" lis pendens may be

discharged when a final judgment is entered in favor of the defendant against whom the lis

pendens is filed.   *See* N.J.S.A. 2A:15-14.   Specifically, New Jersey law states:

> Whenever a final judgment is made in favor of the defendant or defendants in any
> action. . . . the county clerk or register of deeds and mortgages in whose office the
> notice has been filed shall . . . enter . . . a statement of the substance of the
> judgment. Thereafter the real estate described in the notice shall be discharged of
> all equities or claims set up in the complaint in the action, unless the plaintiff
> takes an appeal or institutes proceedings for relief from the judgment and files a
> similar notice of lis pendens in said office, stating in the notice the object of the
> appeal or proceedings. Such notice shall, during the pendency of such appeal or
> proceedings, have the effect of the notice first filed, and the real estate described
> in the notice may be discharged of all equities set up in the complaint, in the
> manner provided for the discharge of the notice first filed.

*Id.*

26.     Because there was no final judgment entered in favor of the Reeds in

either the Foreclosure Action or the Reed Action, the Debtors had no affirmative statutory

obligation to withdraw the lis pendens prior to its natural termination date.   Pursuant to the order

entered by the court in March of 2009 dismissing the Foreclosure Action without prejudice (see

the Order Granting Cross-Motion, attached to the Proofs of Claim as "Exhibit A"), the Debtors

retained the right to re-commence the Foreclosure Action upon showing that the NOI was mailed

to the Reeds.   However, at that time, the Debtors were unable to renew and continue to prosecute

a foreclosure complaint against the Reeds because all foreclosure actions were effectively on

---

[7]     A lis pendens has a five-year duration from the date of its filing unless it is discharged prior to the termination
of its lifespan.  *See* N.J.S.A. 2A:15-11.

[8]     Just prior to the expiration of the Debtors' lis pendens, on April 3, 2013, Ocwen filed a lis pendens on the
Reeds' real property.  *See* Supplemental Declaration ¶ 7 n.3.  Prior to Ocwen's discharge of its lis pendens (on
May 7, 2014), on March 14, 2014, 21st Mortgage Corp. filed a lis pendens on the Reeds' real property, which is
still active.  *See id.*

hold in New Jersey as a result of a regional targeted effort to confront mortgage fraud.[9] However, the Reeds remained in default on the Reed Loan (the last payment made in January of 2008), which provided a basis for the Debtors to maintain the lis pendens on the Reeds' real property while the Debtors considered how to proceed. Moreover, the Reeds failed to successfully complete a loan modification or any other loss mitigation program. Accordingly, the circumstances that would normally prompt the Debtors to discharge the lis pendens prior to its statutory expiration were absent in the Reeds' case.

27.    The Reeds have not put forth any evidence other than hearsay to substantiate the validity of their claims, and they do not explain how they arrive at a damages figure of $2,953,000.00 for each of the Reed Claims. The Reeds still possess their home located at 817 Matlack Drive, Moorestown, New Jersey, and have been living there without making any mortgage payments for over six years. *See* Supplemental Declaration ¶ 5. The Reeds' claims for damages have no merit, and the valid legal and factual predicates for their claims are nonexistent.

## **CONCLUSION**

WHEREFORE, the Borrower Trust respectfully request that the Court overrule the Response and grant the relief requested in the Objection by disallowing and expunging the Reed Claims in their entirety.

---

[9]    On December 20, 2010, New Jersey Chief Justice Stuart Rabner announced the entry of three orders issued to protect the integrity of the filings of foreclosures in New Jersey. Judge Grant issued an Administrative Order requiring 24 lenders and servicers to file certifications demonstrating that there existed no irregularities in their handling of foreclosure proceedings. *See* http://lsnj.org/Foreclosure122210.aspx (last visited July 2, 2014). Judge Jacobson issued an Order to Show Cause directing six foreclosure plaintiffs (including Ally Financial, Inc.) to show why the court should not suspend the processing of all foreclosure matters, and staying foreclosure activity in uncontested residential mortgage foreclosure actions involving the plaintiffs or their subsidiaries, servicers, or subservicers, pending further order of the court. *See id.*

16

ny-1148090

Dated: July 3, 2014
      New York, New York

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Meryl L. Rothchild
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*

17

**<u>Exhibit A</u>**

ny-1148090