**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

RESIDENTIAL CAPITAL, LLC, *et al*.

Debtors.

Case No. 12-12020 (MG)

Jointly Administered

**ORDER SUSTAINING IN PART AND OVERRULING WITHOUT PREJUDICE IN PART THE RESCAP BORROWER TRUST'S OBJECTION TO THE REED CLAIMS AND SETTING EVIDENTIARY HEARING**

Pending before the Court is the *ResCap Borrower Claims Trust's Objection to Proofs of Claim Filed by Frank Reed and Christina Reed Pursuant to Section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007* (the "Objection," ECF Doc. # 7017). Attached to the ResCap Borrower Claims Trust's (the "Trust") Objection is the Declaration of Lauren Graham Delehey (the "Delehey Decl.," Objection Ex. 3). Frank Reed and Christina Reed (the "Reeds")[1] filed a response (the "Response," ECF Doc. # 7153), attaching hundreds of pages of exhibits in support of Claim Nos. 3708, 3759, 4736 and 4759 (the "Claims")[2] filed in these chapter 11 cases. The Trust filed a reply (the "Reply," 7228), attaching the Supplemental Declaration of Lauren Graham Delehey (the Supp. Delehey Decl.," Reply Ex. 1). As the Court indicated at the hearing held July 9, 2014, the Objection is **SUSTAINED** in part and **OVERRULED WITHOUT PREJUDICE** in part, and the Court will hold an evidentiary hearing to determine whether the Reeds' Claims should be allowed and, if so, in what amounts. *See* 11 U.S.C. § 502(b).

[1] The Reeds retained an attorney in the state court proceedings but are appearing *pro se* in connection with the Claims.

[2] Claim Nos. 3759 and 4736 are against GMACM and Claim Nos. 3708 and 4759 are against Residential Capital LLC ("ResCap"). The Reeds claim that a "scrivener's error" led to the filing against ResCap; they intended to assert these claims against Residential Funding Company, LLC ("RFC"). (Response ¶ 120.) The Trust agreed to the Reeds' request to amend the designation of these claims. (Reply ¶ 4 n.5.) Therefore, the Court will treat Claim Nos. 3708 and 4759 as asserted against RFC.

The Claims are based on two related prepetition lawsuits filed in New Jersey state court: (1) a foreclosure action filed by GMAC Mortgage, LLC ("GMACM") on May 19, 2008 (the "Foreclosure Action") and (2) a lawsuit filed by the Reeds against GMACM and RFC on May 10, 2010 related to the Foreclosure Action (the "Reed Action"). The Foreclosure Action was eventually dismissed without prejudice because GMACM could not prove that it complied with the New Jersey Fair Foreclosure Act's (the "FFA") requirement of serving a Notice of Intent to Foreclose ("NOI") before commencing the foreclosure. Thereafter, the Reeds filed their lawsuit against GMACM and RFC, alleging damages for wrongful foreclosure (based upon GMACM's failure to send an NOI), negligence, breach of contract, and estoppel. GMACM and RFC filed a motion to dismiss the Reed Complaint, which the New Jersey court denied in July 2010. The Reeds were then permitted to file an amended complaint on January 6, 2012, adding claims for economic and non-economic losses stemming from the Foreclosure Action, punitive damages, and consumer fraud. The Reeds voluntarily dismissed their lawsuit on February 9, 2012, so they could participate in the Federal Reserve Board's (the "FRB") Independent Foreclosure Review.

The Claims stem from the Foreclosure Action and the Reed Action and appear to seek relief for the following: violation of the FFA (Claim No. 1); negligence (Claim No. 2); breach of contract (Claim No. 3); punitive damages related to actual malice (Claim No. 4); violation of the New Jersey Consumer Fraud Act (the "CFA") (Claim No. 5); malicious use of process (Claim No. 6); to establish a constructive trust to avoid alleged unjust enrichment (Claim No. 7); and to be "made whole" under the Consent Order (Claim No. 8). For the reasons that follow, the Objection is **SUSTAINED** as to claims 1 (violation of the FFA), 6 (malicious use of process), 7 (constructive trust and/or unjust enrichment), and 8 (to be "made whole" under the Consent Order). The Objection is **OVERRULED** as to claims 2 (negligence) and 4 (punitive damages

for actual malice); those claims raise a contested matter under FED. R. BANKR. P. 9014 involving disputed issues of fact and law that can only be resolved following an evidentiary hearing. Finally, the Trust's Objection to claims 3 (breach of contract) and 5 (violation of the CFA) are **SUSTAINED IN PART AND OVERRULED IN PART**, as described below. The Court will hold an evidentiary hearing on the surviving claims on September 15–16, 2014.

## I. FFA Claim

Under the FFA, before a mortgage lender may foreclose on property in New Jersey or otherwise accelerate the maturity of any residential mortgage obligation, "the residential mortgage lender shall give the residential mortgage debtor notice of such intention at least 30 days in advance of such action . . . ." N.J.S.A. 2A:50-56(a). In the Foreclosure Action, GMACM was unable to prove compliance with this provision—the Reeds claimed they did not receive the NOI, and GMACM could not locate a copy of the NOI and could not provide proof of service. GMACM made one failed effort to fix the problem, but the New Jersey state court dismissed the Foreclosure Action without prejudice. GMACM did not file a new foreclosure action. To the extent the Reeds purport to assert any cause of action under the FFA, their claim fails. The FFA does not create a private right of action for damages. *See, e.g.*, *Rickenbach v. Wells Fargo Bank, N.A.*, 635 F. Supp. 2d 389, 399 (D.N.J. 2009) (concluding that the FFA is essentially a notice provision, giving guidance to residential mortgage lenders on the steps necessary to foreclose, and the legislature did not "intend to provide homeowners the right to bring an independent action (outside of the foreclosure proceeding) based on allegedly improper attorneys' fees"); *Rivera v. Wash. Mut. Bank*, 637 F. Supp. 2d 256, 266 n.19 (D.N.J. 2009) ("[T]he Fair Foreclosure Act claim must be dismissed because the Act creates no private right of action."); *Deutsche Bank Nat'l Trust Co. v. Mazzella*, 2013 WL 3984136, at *5 (N.J. Super. Ct.

App. Div. Aug. 6, 2013) (affirming dismissal of plaintiff's claim for violation of the FFA due to failure to send an NOI before commencing a foreclosure proceeding because "nothing in the FFA or the Court's construction of the statute hints at a cause of action for damages"). Any attempt by the Reeds to assert a claim based solely on the FFA fails because no private right of action exists. The Trust's Objection to any FFA claim (Claim No. 1) is **SUSTAINED**.

## II. Negligence Claim

The Reeds claim that GMACM negligently brought the Foreclosure Action without first complying with the FFA's notice requirements, resulting in damages to the Reeds. The Reeds argue that the Debtors' statutory duty to provide notice under the FFA is sufficient to support their negligence claim. (*See* Response ¶¶ 44–45.)

Under New Jersey law, negligence has four elements: "(1) duty of care, (2) breach of duty, (3) proximate cause, and (4) actual damages." *Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 342 F. Supp. 2d 267, 278 (D.N.J. 2004) (citation omitted). "[T]he standard of care is the conduct of the reasonable person of ordinary prudence under the circumstances." *Rappaport v. Nichols*, 156 A.2d 1, 8 (N.J. 1959). "The most common test of negligence . . . is whether the consequences of the alleged wrongful act were reasonably to be foreseen as injurious to others coming in the range of such acts." *DiCosala v. Kay*, 450 A.2d 508 (N.J. 1982) (citations omitted).

In New Jersey, a "violation of a statutory duty of care is not conclusive on the issue of negligence in a civil action but it is a circumstance which the trier of fact should consider in assessing liability." *Braitman v. Overlook Terrace Corp.*, 346 A.2d 76, 85 (N.J. 1975). "[S]tatutes rarely define a standard of conduct in the language of common-law negligence." *Eaton v. Eaton*, 575 A.2d 858, 866 (N.J. 1990). The statute at issue in this case—the FFA—does

not incorporate the negligence standard of "reasonableness," and so, the Trust argues, a violation of the statute does not, alone, establish the existence of a duty of care or a breach of that duty. But even where a statute does not create a separate cause of action for its violation and does not incorporate a standard of reasonableness, the trier of fact may still consider violation of the statute as evidence possibly supporting a determination of negligence. *See Braitman*, 346 A.2d at 385.

The Reeds' negligence claim (Claim No. 2) involves disputed issues of fact and law that the Court cannot resolve on the papers alone, and the Objection is **OVERRULED WITHOUT PREJUDICE**. The Court will make a determination of the validity of the Reeds' negligence claim following an evidentiary hearing.

### III. Breach of Contract Claim

To state a claim for breach of contract under New Jersey law, the Reeds must establish: (1) the existence of a contract; (2) a breach of that contract; (3) damages flowing from that breach; and (4) that they performed their own contractual duties. *See Video Pipeline Inc. v. Buena Vista Home Entm't, Inc.*, 2010 F. Supp. 2d 552, 561 (D.N.J. 2002) (citation omitted); *see also In re Cendant Corp. Secs. Litig.*, 139 F. Supp. 2d 585, 604 n.10 (D.N.J. 2001) (stating that New Jersey law requires pleading performance of the movant's own contractual duties).

The Reeds assert that GMACM is liable for breaching the mortgage and note by filing the Foreclosure Action without first sending an NOI, as allegedly required by the terms of the mortgage. Additionally, the Reeds argue that RFC, which purchased the mortgage from GMACM in December 2009, is liable as successor-in-interest for GMACM's breach of contract.

The Trust contends that it cannot be liable for breach of contract because GMACM did not own the mortgage or note when it commenced foreclosure. At the July 9, 2014 hearing,

however, Mr. Reed correctly noted that GMACM pleaded in the Foreclosure Action that it became the "owner of the note and mortgage" on or before the date it drafted the foreclosure complaint. (*See* Foreclosure Complaint, Delehey Decl. Ex. B ¶ 4.) According to counsel for the Trust, this allegation was a mistake—GMACM was not the owner of the note; it was the holder of the note and assignee of the mortgage. If GMACM was not a party to the contract, it cannot be liable for its breach. Considering the statement in the foreclosure complaint that GMACM owned the note (now disavowed by the Trust) and mortgage, the Court concludes that the Reeds' breach of contract claim raises a contested matter. Therefore, the Court **OVERRULES** the Objection to the breach of contract claim (Claim No. 3) against GMACM; the Court will determine the validity of the claim following the evidentiary hearing. The Court cannot at this time rule on the Trust's affirmative defense to the breach of contract claim that the Reeds themselves were in material breach of contract by failing to make mortgage payments such that GMACM's performance was excused; that issue is reserved for trial.

To the extent the Reeds assert the breach of contract claim against RFC, the claim fails. The Reeds identify the contractual breach as the filing of the Foreclosure Action without having first issued an NOI. The Foreclosure Action was filed on May 19, 2008, but RFC did not acquire ownership of the loan until December 30, 2009. Therefore, the Trust's Objection to the Reeds' breach of contract claim (Claim No. 3) against RFC is **SUSTAINED**.

### IV. Punitive Damages Claim Based Upon Actual Malice

The Reeds assert claims for punitive damages premised upon claims for actual malice under New Jersey law. The Reeds justify their demand based on allegations that GMACM's noncompliance with the FFA was motivated by actual malice or accompanied by a wanton and willful disregard of the injuries that the Reeds may have suffered.

Under New Jersey law, actual malice "is nothing more or less than intentional wrongdoing, an evil minded act or an act accompanied by a wanton and willful disregard of the rights of another." *Chli Tital Ins. Co. v. Goldberg (In re Goldberg)*, 12 B.R. 180, 185 (Bankr. D.N.J. 1981) (citing *Sandler v. Lawn-a-Mat Chem. & Equip. Corp.*, 358 A.2d 805 (N.J. Super. Ct. App. Div. 1976)). To recover punitive damages under New Jersey law, the Reeds must show by clear and convincing evidence that the harm suffered was the result of GMACM's acts or omissions, and "that such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15-5:12(a). They must also first receive a compensatory damages award before they are eligible for punitive damages. *In re Estate of Stockdale*, 953 A.2d 454 (N.J. 2008).

While the merits of the Reeds' punitive damage claim (Claim No. 4) seem highly doubtful—the Reeds acknowledge they stopped making their mortgage payments before the Foreclosure Action was commenced—the Court cannot resolve the claim without an evidentiary hearing. The Court **OVERRULES** the Objection and will make a determination following the trial.

## V. Consumer Fraud Act Claim

A claim under the New Jersey CFA requires three elements: "(1) an unlawful practice, (2) an 'ascertainable loss,' and (3) a 'causal relationship between the unlawful conduct and the ascertainable loss . . . .'" *Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103, 1115 (N.J. 2011) (quoting *Lee v. Carter-Reed Co.*, 4 A.3d 561, 576 (N.J. 2010)). The CFA provides for recovery of treble damages.

The CFA defines an "unlawful practice" as

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived, or damaged thereby . . . .

N.J.S.A. 56:8-2.

The Reeds' CFA claim appears to be based on their contention that the Debtors "intended to defraud the Reeds into believing that their ONLY choice [to avoid foreclosure] was to pay the note in full." (Response ¶ 87.) The Reeds believe that the Debtors intended to circumvent the FFA's notice requirements to mislead borrowers like the Reeds—those with "large notes"—to make those borrowers repay their notes in full, infusing the Debtors with enough money to stave off bankruptcy. As the Court said at the hearing, the claim is not pled with particularity as required by both federal and New Jersey pleading standards, and the Trust's Objection to the CFA claim, as stated, is **SUSTAINED**. The substantial record already before the Court demonstrates that the Reeds' proposed theory of liability is not plausible; therefore, leave to amend (which the Reeds did not request) to elaborate in this theory is **DENIED**.

The Court said at the hearing that it was going to dismiss the CFA claim in its entirety. But upon further consideration, because the Trust's counsel acknowledged during the hearing that the complaint in the Foreclosure Action misrepresented that GMACM owned the Reeds' note, the Court will permit the Reeds to proceed with a CFA claim based on the *single misrepresentation* that GMACM owned the note. This representation in the complaint appears to have been the basis for GMACM's standing to bring the Foreclosure Action, without a certification that GMACM, as servicer, had been granted authority to enforce the terms of the

note by its actual owner. (The FFA required such a certification to be made in the NOI that GMACM has never been able to locate.) The Court is not determining at this stage whether the Reeds can recover on this theory, but it will allow the Reeds to go forward with this limited CFA claim at the evidentiary hearing.

**VI. Malicious Use of Process Claim**

To state a claim for malicious use of process under New Jersey law, a plaintiff must allege and satisfy each of the following four elements: (1) the original suit was instituted without reasonable or probable cause; (2) the original suit was motivated by malice; (3) the original suit terminated favorably in favor of the plaintiff; and (4) the plaintiff suffered a special grievance. *Baglini v. Lauletta*, 768 A.2d 825 (N.J. Super. Ct. App. Div. 2001).

As the Court said at the hearing, nothing presented in the Claims or the Response supports a claim for malicious use of process. The Foreclosure Action was instituted because the Reeds were delinquent on their mortgage payments. The Reeds have not made *any* mortgage payments on this loan since January 4, 2008. The Reeds cannot establish a claim for malicious use of process, and the Trust's Objection to this claim (Claim No. 6) is **SUSTAINED**.

## VII. Constructive Trust Claim

"The right to impose a constructive trust is determined by state law." *Tekinsight.com, Inc. v. Stylesite Mktg., Inc. (In re Stylesite Mktg., Inc.)*, 253 B.R. 503, 508 (Bankr. S.D.N.Y. 2010) (citations omitted). In New Jersey, "[a] constructive trust is a remedial device through which the conscience of equity is expressed; it will be imposed when a person has acquired possession of or title to property under circumstances which, in good conscience, will not allow the property's retention." *Thompson v. City of Atl. City*, 901 A.2d 428, 438 (N.J. Super. App. Div. 2006) (citations and quotations omitted). When evaluating whether to impose "a constructive trust, a court must find that a 'wrongful act' caused the property to come into the hands of the recipient and that the recipient will be 'unjustly enriched' if it is not returned." *Id.* (citation omitted). If those elements are established, "the court of equity converts the recipient into a trustee and requires that he account for the res in whatever manner the court deems fair and just." *Id.* at 439.

The Reeds assert that "a constructive trust should be recognized . . . over both the mortgage instrument and the real property on which the mortgage instrument exists." (Claims, Certifications of Creditors ¶ 10.) The Reeds' claim fails. The Reeds cannot claim that a "wrongful act" resulted in the mortgage; they willingly entered the mortgage agreement. Additionally, there is no evidence that GMACM has been unjustly enriched. 21st Mortgage Corp., a non-Debtor, currently owns the note and mortgage and services the loan. Finally, "constructive trusts are disfavored in bankruptcy because they alter the distribution rules provided under the Bankruptcy Code." *In re Dewey & LeBoeuf LLP*, 493 B.R. 421, 432 (Bankr. S.D.N.Y. 2013). The Trust's Objection to the Reeds' constructive trust claim (Claim No. 7) is **SUSTAINED**.

Moreover, to the extent that the Reeds assert an unjust enrichment claim independent of their constructive trust claim, that claim fails, too. The Reeds' contention that, if the Court declines to impose a constructive trust, "the Debtor [would be] unjustly enriched at the Creditor's expense despite the Debtor's grossly negligent acts" is implausible and insufficient to assert an independent unjust enrichment claim.

### VIII. Claim To Be "Made Whole" Under the Consent Order and Foreclosure Review

The Reeds contend that, under the Consent Order, the Debtors admitted and agreed that (1) they engaged in illegal behavior; (2) their behavior caused individuals, such as the Reeds, financial harm; and (3) they would make fully whole all those who have been financially harmed by their acts. (Claims, Certification of Creditors ¶ 8.)

The Reeds fundamentally misunderstand the nature of the Consent Order. GMACM and ResCap entered into the Consent Order *without admitting fault* for wrongdoing alleged by the FRB or the FDIC. The Consent Order *does not* require the Debtors to make their borrowers financially whole. Under the Consent Order, GMACM agreed to (1) "remediate, as appropriate, errors, misrepresentations, or other deficiencies in any foreclosure filing or other proceeding," (2) reimburse or provide other appropriate remediation for impermissible or unreasonable penalties, fees or expenses, or for certain other financial injuries, and (3) remediate any foreclosure sale where the foreclosure was not authorized as described in the Consent Order. GMACM retained an independent consultant to conduct a review of past foreclosure proceedings and sales pending or completed during 2009 and 2010 for all loans serviced by GMACM and its subsidiaries. (*See* Disclosure Statement, ECF Doc. # 4819 at Art. III.D.3(a).) During these chapter 11 cases, the Consent Order was modified, terminating the Independent Foreclosure Review, but substituting a method and formula for compensating borrowers who came within the

terms of the Consent Order, as modified. The Reeds were compensated $500 on account of their loan. The Reeds fail to establish any basis for entitlement to additional compensation under the terms of the Consent Order. Consequently, the Trust's Objection to the Reeds' request to be "made whole" under the Consent Order and/or Foreclosure Review is **SUSTAINED**.

**IX. Evidentiary Hearing**

The Court will hold an evidentiary hearing on the surviving causes of action asserted in the Reed Claims beginning at 9 a.m. on September 15 and 16, 2014. The Parties shall complete all fact and expert discovery by 5:00 p.m., Friday, August 22, 2014. The Court will hold a telephonic status conference at 3 p.m., Monday, August 25, 2014. The Court will hold a final pretrial conference at 10:00 a.m., September 8, 2014. All pretrial submissions, including any deposition designations and/or counter-designations, must be exchanged and provided to the Court before the final pretrial conference. The Court will enter a separate order regarding trial procedures.

The Court further **DIRECTS** counsel for the Trust, and a representative of the Trust with authority to resolve the Reed Claims, to meet with the Reeds (and, if they are represented by counsel, the Reeds' counsel) within one week of the date of this Order, at a mutually convenient location in an effort to resolve the Reed Claims by settlement. The parties shall promptly notify the Court if the matter is resolved.

**IT IS SO ORDERED.**

Dated: July 11, 2014
New York, New York

**/s/Martin Glenn**
MARTIN GLENN
United States Bankruptcy Judge