UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

RESIDENTIAL CAPITAL, LLC, *et al.*

Debtors.

NOT FOR PUBLICATION

Case No. 12-12020 (MG)

Jointly Administered

**MEMORANDUM OPINION AND ORDER SUSTAINING BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM 4702 FILED BY TOMAS DIAZ**

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Tomas Diaz filed a claim against the Debtors for clouding his title and fraudulently assigning his mortgage. But the evidence produced indicates that one of the Debtors—Residential Funding Corporation ("RFC")—owned his loan for only eight days in May 2006 and properly transferred his loan to a securitization trust. Debtor Homecomings Financial, LLC ("Homecomings") also serviced Diaz's mortgage for nearly two years, ending in 2008. No Debtor is listed as an assignor or assignee on any of the purportedly fraudulent mortgage assignments that Diaz identifies. The Court doubts whether Diaz's title is clouded at all, but if it is, the cloud is not due to the Debtors' conduct. Diaz's claim does not arise from any servicing misconduct, so Homecomings' servicing of his loan does not give rise to any liability. Diaz fails to allege a plausible basis for Debtor liability. Therefore, Diaz's claim must be disallowed and expunged.

## I. BACKGROUND

### A. Procedural History

Pending before the Court is the *Sixty-Second Omnibus Objection to Claims (No Liability Borrower Claims)* (the "Objection," ECF Doc. # 6815), filed by The ResCap Borrower Claims

Trust (the "Trust"). Through the Objection, the Trust seeks to disallow and expunge thirty-one claims. This Opinion only relates to the Objection to Claim 4702, filed by Tomas Diaz. In support of the Objection, the Trust submitted the Declarations of Deanna Horst and Norman S. Rosenbaum (Obj. Exs. 1–2). Diaz filed an opposition to the Objection (the "Opp.," ECF Doc. # 7013), along with a catalogue of his financial records regarding the property at issue.[1] The Trust filed a reply (the "Reply," ECF Doc. # 7062), supported by a supplemental Declaration of Deanna Horst (the "Supp. Horst Decl.," ECF Doc. # 7062-1). The Court heard oral argument on the Objection on June 11, 2014 (the "Hearing") and took the matter under submission.

On May 14, 2012, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The General Bar Date was originally set as November 9, 2012 at 5:00 p.m., but was extended to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) (ECF Doc. # 2093). Diaz timely filed his claim on November 14, 2012.[2] On March 21, 2013, the Court entered an order (the "Procedures Order," ECF Doc. # 3294) authorizing the Debtors to file omnibus objections on various grounds, including those provided in Bankruptcy Rule 3007(d) and certain additional grounds. The Procedures Order includes specific Borrower protections,[3] establishing procedures the Debtors (and now the Trust) must follow before objecting to certain categories of Borrower claims. For example, before objecting to certain Borrower claims, the Trust must send the Borrower a letter (a "Request Letter") requesting additional documentation supporting the Borrower's claim. (*See* Procedures Order at 3–4).

---

[1] These financial records appear at ECF Doc. ## 4328, 4328-1–13, 5507, 5662, 7059.

[2] Diaz filed an earlier claim on October 29, 2012 (Claim No. 1913), but he voluntarily withdrew that claim. (*See* ECF Doc. # 4183.)

[3] As used in the Procedures Order, the term "Borrower" is defined as "a person who is or was a mortgagor under a mortgage loan originated, serviced, and/or purchased or sold by one or more of the Debtors." (*See* ECF Doc. # 3123 ¶ 21.)

Diaz received a Request Letter in June 2013. (Supp. Horst Decl. ¶ 5 n.3.) He responded in July 2013, submitting over 150 pages of documents. (*See id.* Ex. A-3.) The Trust asserts that Diaz's response to the Request Letter still fails to allege an adequate basis for his claim. (*See* Supp. Horst Decl. ¶ 6.)

**B.  Diaz's Property, Loan Modification, and Loan Assignments**

Diaz's proof of claim asserts a $400,000 secured claim seeking full reimbursement of a down payment he made buying property in Miami, Florida (the "Property") in April 2005. (*See* ECF Doc. # 7062-1 at 277; Supp. Horst Decl. Ex. A-3.) Diaz paid $1.4 million for the Property—he made a $400,000 down payment and obtained a $1 million mortgage from Bank United. (*See* June 10, 2014 Tr. at 31:10–17.)

Roughly one year later, Diaz refinanced the Bank United loan with a new $1 million loan from Platinum Capital Group ("Platinum"), secured by a mortgage on the Property. (*See* Opp. ¶ 1; Supp. Horst Decl. Ex. I.) Diaz argues that he maintained $400,000 in equity in the property due to his initial down payment. (*See* Opp. ¶ 1.)

RFC bought the Loan from Platinum on May 24, 2006, and then transferred the Loan to Deutsche Bank Trust Company Americas ("Deutsche Bank") on June 1, 2006. (Supp. Horst Decl. ¶ 14; Obj. Ex. A.) According to the Trust, RFC was assigned the note evidencing the Loan (the "Note") along with the Mortgage, but the assignment of the Mortgage was not recorded on public land records. (Supp. Horst Delc. ¶ 14.) Instead, the land records reflect a Mortgage assignment from Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Platinum to Deutsche Bank. (*See* Opp. at 12, 24.) Curiously, the parties executed this assignment twice, once on October 26, 2006 (*see id*. at 12) and once on October 28, 2013. (*See id*. at 24.) It is unclear why the parties executed two assignments.

3

Homecomings serviced the Loan from May 24, 2006, until the servicing rights were transferred to Aurora Loan Services, LLC on April 1, 2008. (*See* Supp. Horst Decl. ¶ 15.) Aurora serviced the Loan until transferring the servicing rights to Nationstar Mortgage LLC in July 2012. (*See id*; Opp. at 17–19.)

Diaz stopped making Loan payments in October 2006. The Loan was referred to foreclosure on May 29, 2007 and the action continued until March 12, 2008. (*See id*. at 14–15.) It is unclear whether there is a currently pending foreclosure action against Diaz. (*See* June 10, 2014 Tr. at 43:14–44:16.) During the brief period when RFC owned the Loan, it apparently lost the original Note. On May 30, 2007, RFC executed an Affidavit of Lost Note, explaining that it had lost the original Note and attaching a copy of the Note. (*See* Opp. at 13; Reply ¶ 33.) This affidavit was used during foreclosure to establish ownership of the Note. The copy of the Note reflects assignments from Platinum to RFC and from RFC to Deutsche Bank. (*See* Supp. Horst Decl. Ex. J; June 10, 2014 Tr. at 23:10–24:6.)

On April 19, 2010, Diaz recorded an affidavit of title stating that the property is "under investigation due of possible Fraud on the Plaintiff's side Rule 60.B Rule 9 B" and cannot be sold or tampered because Deutsche Bank did not present the original Note. (Opp. ¶ 5.) In late 2012, Diaz submitted a qualified written request to GMACM regarding the Debtors' involvement in his Loan from 2006 to 2008. (Supp. Horst Decl. Ex. M.) The Supplemental Horst Declaration attaches GMACM's response to Diaz, which included copies of Diaz's payment history, TILA disclosures, the Note, the mortgage application, and a HUD-1 Settlement Statement. (Supp. Horst Decl. ¶ 16.)

4

### C.   Diaz's Claim

Diaz argues that his title is clouded due to the Debtors' involvement with his Loan and the chain of Mortgage assignments.  (Opp. at 3–4.)  He claims that the assignments of his Mortgage were fraudulent and improper (*Id.*) and that the clouded title deters any would-be purchasers from buying the Property.  (*See* June 10, 2014 Tr. at 42:12–20.)  The Trust responds that Mortgage assignments involving RFC were recorded within the MERS system, and the Note reflects endorsements from Platinum to RFC and from RFC to Deutsche Bank.  Thus, RFC was assigned both the Note and the Mortgage, and it then assigned both interests.  Further, the Note and Mortgage assignments are consistent because in both documents, Deutsche Bank is listed as the ultimate assignee of the interest in Diaz's property.  (*See id.* at 22:16–25.)  Moreover, to the extent Diaz complains that the two recorded Mortgage assignments contribute to a clouded title, RFC is not responsible for the double recording.  (*See id*.)

Diaz also complains that RFC lost the original Note.  (*See* Opp. at 3; June 10, 2014 Tr. at 28:24–29:12; 30:16–31:7.)  According to Diaz, by failing to produce the original Note, the Debtors violated Florida's judicial foreclosure requirements.  (*See* Opp. at 3.)  The Trust responds that RFC acted properly by filing the Lost Note Affidavit and attaching a copy of the Note.  (*See* June 10, 2014 Tr. at 22:9–25:11.)  According to the Trust, "[l]ost note affidavits frequently take the place of original notes in a foreclosure complaint/lis pendens."  (Supp. Horst Decl. ¶ 17.)

Additionally, Diaz asserts that MERS did not have the legal right to assign his Mortgage, and that RFC retained its ownership interest in his Loan until October 29, 2013, when the second assignment from MERS to Deutsche Bank was recorded.  (*See* June 10, 2014 Tr. at 30:24–31:7; 39:19–25.)  The Trust responds that RFC assigned the Note to Deutsche Bank in June 2006.

5

(*See* Obj. Ex. A; June 10, 2014 Tr. at 21:18–24.) RFC could not have held an interest in his Loan after June 2006 because it had transferred its ownership interest to Deutsche Bank.

## II.     DISCUSSION

### A.     Claims Objections

Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 U.S. Dist. LEXIS 143957, at *12–13 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4-502 COLLIER ON BANKRUPTCY ¶ 502.02 (16th rev. ed. 2013).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim. *See, e.g.*, *In re DJK Residential* LLC, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have

looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)). To state a claim Diaz must allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation marks omitted). The court must accept all factual allegations as true, discounting legal conclusions clothed in factual garb. *See, e.g.*, *Iqbal*, 556 U.S. at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true") (citing *Iqbal*, 556 U.S. at 678). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted). Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

7

statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

Additionally, Diaz has alleged fraud. To support his fraud claim, he "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); *see also Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d. 498, 503 (6th Circ. 2013) ("In order to meet the 'particularity' requirement of Rule 9(b), a plaintiff [must] allege the time, place, and content of the misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." (alteration in original) (internal quotation marks omitted)).

Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with" a fair understanding of the conduct at issue and the basis for recovery. *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013).

### B. The Trust Adequately Rebutted Diaz's Claim That RFC or Homecomings Is Responsible for Clouding His Title

The ability of a mortgagee to assign the mortgage is specifically recognized by Florida statutes.

> Any mortgagee may assign and transfer any mortgage made to her or him, and the person to whom any mortgage may be assigned or transferred may also assign and transfer it, and that person or her or his assigns or subsequent assignees may lawfully have, take and pursue the same means and remedies which the mortgagee may lawfully have, take or pursue for the foreclosure of a mortgage and for the recovery of the money secured thereby.

FLA. STAT. ANN. § 701.01 (West).

8

The assignor must demonstrate intent to assign the mortgage. *See id.*; *Hemphill v. Nelson*, 116 So. 498, 502 (Fla.1928); *McClure v. Century Estates*, 120 So. 4, 10 (Fla.1928). Here, the Trust produced sworn testimony showing that RFC transferred Diaz's Mortgage to Deutsche Bank so the Loan could be securitized. (*See* Supp. Horst Decl. ¶¶ 14–15.) The assignment of the Note from RFC to Deutsche Bank, evidenced by Exhibit I to the Objection, indicates RFC's intent to assign Diaz's Mortgage to Deutsche Bank.

The Trust's evidence also indicates that assignments of the mortgage involving RFC were recorded within the MERS database. (*See id.* ¶ 14, Ex. I.) The Trust produced sufficient evidence to demonstrate that it properly assigned Diaz's Mortgage in 2006, before the duplicative assignment was recorded, allegedly giving rise to a clouded title.

Further, Diaz's title does not appear to be clouded at all. Although the duplicative Mortgage assignments may be confusing, Deutsche Bank is the assignee in the last recorded assignment of the Mortgage, and it is the assignee of the Note. No other party has asserted an interest in the Property; the Trust has made clear that RFC has not asserted an interest in the Property since 2006. It is unclear why MERS issued a second assignment in October 2013, but the Debtors had no connection to the Property or the Mortgage at that time, and the Debtors cannot be liable for any harm Diaz alleges arising from this second assignment.

### C. Diaz Cannot Pursue a Claim Against RFC for Losing the Original Note

Diaz alleges that using the Lost Note Affidavit to commence a foreclose action on his Property instead of the original Note constituted fraud, as did the duplicative Mortgage assignments. (*See* June 10, 2014 Tr. at 28:24–29:12; 30:16–34:12.) Diaz did not allege that the Lost Note Affidavit attached a fabricated copy of his Note, or that the assignments reflected on the copy of his Note are fakes. Rather, he simply wants the original Note. The failure to

9

produce an original note does not constitute fraud. *See Gee v. U.S. Bank Nat. Ass'n*, 72 So.3d 211, 213 (discussing plaintiff's efforts to reestablish lost note in foreclosure action) (Fla. Dist. Ct. App. 2011); *Beaumont v. Bank of New York Mellon*, 81 So. 3d. 553, 555 (Fla. Dist. Ct. App. 2012) (discussing requirement to prove who lost note and when it was lost). Lost note affidavits are not unusual; the Florida legislature has enacted legislation requiring that specific elements be met if a plaintiff seeks to enforce a lost note affidavit. FLA. STAT. ANN. § 702.015 (West).

To demonstrate the sufficiency of a lost note affidavit, the affidavit must be executed under penalty of perjury and must contain details of a clear chain of all endorsements, transfers, or assignments of the note. *Id.* The affidavit must also include copies of the note as exhibits and must explain that the party in possession of the note when it was lost was entitled to enforce the obligation. *Id.* Additionally, the note cannot have been lost due to a transfer of possession or a lawful seizure. *Id.*

Here, the Lost Note Affidavit complies with the requirements of the Florida statute. *Compare* ECF Doc. # 7013 at 13 *with* FLA. STAT. ANN. §§ 673.3091, 702.015. The Lost Note Affidavit establishes a clear chain of all endorsements at the time the affidavit was prepared; it demonstrates that RFC was entitled to enforce the instrument when it lost the Note; and it establishes that the loss of possession was not the result of RFC's transfer of the Note to some other party or due to a lawful seizure. As required, the Lost Note Affidavit includes copies of the Note and evidence of its ownership.

### III.   CONCLUSION

Diaz produced evidence of an anomaly on his land records—two assignments of his Mortgage recorded between the same parties, but years apart. But the duplicative assignments do not establish any Debtor liability. The Debtors are not listed as the assignor or assignee on

either assignment, and double recording does not, on its own, indicate any fraudulent conduct. The Mortgage assignments are also consistent with the assignments of Diaz's Note—Deutsche Bank owns both the Note and the Mortgage. In any event, none of this implicates any Debtor wrongdoing.

Diaz fails to allege a plausible basis for liability on the part of any of the Debtors. The Debtors' presented evidence negating the presumptive validity of Diaz's claim. The burden then shifted back to Diaz. None of the evidence or arguments that Diaz proffered in his Opposition or at the Hearing is sufficient to support a plausible claim against the Debtors.

For the reasons explained above, the Trust's Objection to Claim 4702 is **SUSTAINED,** and the Claim is **EXPUNGED**.

    **IT IS SO ORDERED.**

Dated:    July 11, 2014
           New York, New York

                                    *Martin Glenn*
                                  MARTIN GLENN
                       United States Bankruptcy Judge