**Presentment Date and Time:  July 18, 2014 at 12:00 p.m. (ET)**
**Objection Deadline:  July 17, 2014 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------
|  |  )  |
| In re: | )  | Case No. 12-12020 (MG) |
|  | )  |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | )  | Chapter 11 |
|  | )  |  |
| Debtors. | )  | Jointly Administered |
|  | )  |  |
---------------------------------------------------------------

**NOTICE OF PRESENTMENT OF STIPULATION AND ORDER**
**WITHDRAWING AND AMENDING CERTAIN PROOFS OF CLAIM**
**<u>FILED BY THE COMMONWEALTH OF MASSACHUSETTS</u>**

**PLEASE TAKE NOTICE** that the undersigned will present the attached proposed

*Stipulation and Order Withdrawing and Amending Certain Proofs of Claim Filed by the*

*Commonwealth of Massachusetts* (the "<u>Stipulation and Order</u>"), to the Honorable Martin Glenn,

United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District

of New York (the "<u>Bankruptcy Court</u>"), Alexander Hamilton Custom House, One Bowling

Green, New York, New York 10004, Room 501, for signature on **July 18, 2014 at 12:00 p.m.**

**(Prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Stipulation and

Order must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the

Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case

Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No.

141], be filed electronically by registered users of the Bankruptcy Court's electronic case filing

system, and be served, so as to be received no later than **July 17, 2014 at 4:00 p.m. (Prevailing**

**Eastern Time)**, upon (a) Chambers of the Honorable Martin Glenn, United States Bankruptcy

Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling

Green, New York, New York 10004-1408; (b) co-counsel to the ResCap Liquidating Trust,

Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019 (Attention:  Norman S.

Rosenbaum and Jordan A. Wishnew); (c) co-counsel to the ResCap Liquidating Trust, Kramer

Levin Naftalis & Frankel, LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attention:

Kenneth H. Eckstein, Douglas H. Mannal, and Joseph A. Shifer); (d) the Office of the United

States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick

Street, Suite 1006, New York, NY 10014 (Attention: Linda A. Riffkin and Brian S. Masumoto);

(e) The ResCap Liquidating Trust, Quest Turnaround Advisors, 800 Westchester Avenue, Suite

S-520, Rye Brook, NY 10573 (Attention: Jeffrey Brodsky); and (f) counsel to the

Commonwealth of Massachusetts, Justin J. Lowe, Assistant Attorney General, Consumer

Protection Division, Office of the Attorney General, 1 Ashburton Place, Boston, MA 02108.

**PLEASE TAKE FURTHER NOTICE** that, if no objections to the Stipulation and

Order are timely filed, served and received in accordance with this Notice, the Court may enter

the Order without further notice or hearing.

Dated:  July 11, 2014
        New York, New York

Respectfully submitted,


/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------
                                                    )
In re:                                              )      Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,            )      Chapter 11
                                                    )
            Debtors.                                )      Jointly Administered
                                                    )
---------------------------------------------------------------

### STIPULATION AND ORDER WITHDRAWING AND AMENDING CERTAIN PROOFS OF CLAIM FILED BY THE COMMONWEALTH OF MASSACHUSETTS

This stipulation ("<u>Stipulation</u>") is made and entered into between The ResCap Liquidating Trust (the "<u>Liquidating Trust</u>") established pursuant to the terms of the Plan (as defined below) filed in the above-captioned bankruptcy cases (the "<u>Chapter 11 Cases</u>") and the Commonwealth of Massachusetts[1] (the "<u>Commonwealth</u>" and together with the Liquidating Trust, the "<u>Parties</u>"), through their respective counsel, to withdraw two of the Estimated Proofs of Claim (defined herein) from the Debtors' Claims Register (defined herein) and expunge and amend the third Estimated Proof of Claim.

### RECITALS

**WHEREAS**, on December 1, 2011, the Commonwealth of Massachusetts filed a complaint in the Superior Court, Suffolk County, Commonwealth of Massachusetts, Case No. 11-4363-BLS1, against a number of defendants, including GMAC Mortgage, LLC ("<u>GMACM</u>"), alleging numerous violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A (the "<u>Enforcement Action</u>");

---

[1]    The Estimated Proofs of Claim were filed for the Commonwealth through the Office of the Attorney General.

**WHEREAS,** on or about April 4, 2012, the United States District Court for the District of Columbia entered consent judgments against GMACM and several other defendants as part of a nationwide settlement between the defendants and state and federal regulatory agencies. *See* United States of America, *et al.* v. Bank of America Corp., *et al.*, Case No. 1:12-cv-00361-RMC (D.D.C.), Docket Nos. 10-14 (the "DOJ/AG Settlement"). While the DOJ/AG Settlement resolved certain of the Commonwealth's claims in the Enforcement Action, the Commonwealth and GMACM separately agreed to preserve certain claims arising out of GMACM's initiation or advancement of foreclosure proceedings where the foreclosing entity allegedly was not the actual holder of the mortgage or allegedly lacked the legal authority to foreclose on the mortgage. Further, the Commonwealth agreed to limit its potential recovery against GMACM in the Enforcement Action to injunctive relief and monetary relief of $2,000,000, including civil penalties, attorneys' fees and costs;

**WHEREAS,** on May 14, 2012 (the "Petition Date"), each of the 51 debtors in the Chapter 11 Cases, including GMACM; Residential Capital, LLC ("ResCap"); and Residential Funding Company, LLC ("RFC") (collectively, the "Debtors") filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court");

**WHEREAS,** on the Petition Date, the Court entered an order jointly administering the Chapter 11 Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules");

**WHEREAS,** on May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in the Chapter 11 Cases. Among other things, KCC is authorized to maintain an official claims register

2

for the Debtors (the "Claims Register");

**WHEREAS**, on August 29, 2012, this Court entered an order approving the Debtors' motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No. 1309] (the "Bar Date Order"). The Bar Date Order established, among other things, (a) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribed the form and manner for filing proofs of claim; and (b) November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "Governmental Bar Date"). (Bar Date Order ¶¶ 2, 3). On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093]. The Governmental Bar Date was not extended;

**WHEREAS**, on or prior to the Governmental Bar Date, the Commonwealth filed four general unsecured estimated proofs of claim against certain of the Debtors (collectively, the "Estimated Proofs of Claim"):

(i) On November 19, 2012 the Commonwealth filed a general unsecured claim in the estimated amount of $2,000,000 against GMACM relating to alleged liabilities arising from the Enforcement Action, which was designated as Claim No. 5783 on the Claims Register ("Claim No. 5783");

(ii) On November 29, 2012 the Commonwealth filed an amendment to Claim No. 5783 increasing the amount of the estimated claim against GMACM to $9,420,000. In addition to the alleged liabilities originally described in Claim No. 5783, the amendment included GMACM's obligations under the DOJ/AG Settlement and the Commonwealth's right to enforce

3

the terms of the DOJ/AG Settlement as against GMACM.[2]   This amendment was designated as

Claim No. 6025 on the Claims Register (Claim No. 6025").   Following the amendment, Claim

No. 5783 was expunged [Docket No. 3909];

(iii) On November 29, 2012 the Commonwealth filed a general unsecured proof

of claim against ResCap in the estimated amount of $7,420,000, representing ResCap's

obligations under the DOJ/AG Settlement and the Commonwealth's right to enforce the terms of

the DOJ/AG Settlement as against ResCap.   The claim was designated as Claim No. 6028 on the

Claims Register ("Claim No. 6028"); and

(iv) On November 29, 2012 the Commonwealth filed a general unsecured proof

of claim against RFC, in the estimated amount of $7,420,000, representing RFC's obligations

under the DOJ/AG Settlement and the Commonwealth's right to enforce the terms of the

DOJ/AG Settlement as against RFC.   The claim was designated as Claim No. 6033 on the

Claims Register ("Claim No. 6033").

**WHEREAS**, on August 23, 2013, the Court entered an *Order (I) Approving*

*Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to*

*Accept or Reject the Plan Proponents' Joint Chapter 11 Plan, (III) Approving the Form of*

*Ballots, (IV) Scheduling a Hearing on Confirmation of the Plan, (V) Approving Procedures for*

*Notice of the Confirmation Hearing and For Filing Objections to Confirmation of the Plan, and*

*(VI) Granting Related Relief* [Docket No. 4809] (the "Disclosure Statement Order") authorizing

the Plan Proponents (as defined in the Disclosure Statement Order) to, among other things,

solicit votes on the proposed Chapter 11 plan (as amended, the "Plan");

---

[2]   Claim No. 6025 includes an estimated claim of $7,240,000, which represents GMACM's consumer relief
obligations under the DOJ/AG Settlement, in addition to the $2,000,000 estimated unsecured claim previously
described by Claim No. 5783.

4

**WHEREAS**, on or about August 29, 2013, ballots were sent by KCC to parties-in-interest entitling the Commonwealth to vote to accept or reject the Plan;

**WHEREAS**, on October 21, 2013, the Commonwealth was among a group of state attorneys general that filed an objection to the Plan [Docket No. 5415] (the "Plan Objection"), asserting that the Plan's "Injunction" provision was overly broad and improperly limited the states' asserted enforcement rights as set forth in the DOJ/AG Settlement;

**WHEREAS**, on or about November 19, 2013, after good faith, arm's-length negotiations among the Debtors and certain states, an agreement was reached with respect to issues concerning the Plan's "Injunction" provision, the Plan Objection was resolved, and subsequently, the states agreed to withdraw the Proofs of Claim related to the DOJ/AG Settlement upon the Effective Date and the Confirmation Order becoming a final, non-appealable order;

**WHEREAS**, on December 11, 2013, following the confirmation hearing, the Bankruptcy Court entered an *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Plan filed in these Chapter 11 Cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as such term is defined in the Plan) of the Plan occurred, and, among other things, the Liquidating Trust was established [Docket No. 6137];

**WHEREAS**, the Plan provides for the creation and implementation of the Liquidating Trust. *See* Plan, Art. VI.A-D; *see also* Confirmation Order ¶ 22. Further, pursuant to the Confirmation Order:

In accordance with the provisions of the Plan, pursuant to section 363 of the

5

Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trust may compromise and settle Claims against the Debtors and Causes of Action against other Entities.

Confirmation Order ¶ 20; and

**WHEREAS**, the Liquidating Trust has determined that entering into this Stipulation is in the best interests of the Liquidating Trust, the Liquidating Trust's constituents, the Debtors, and other parties in interest.

NOW, THEREFORE, in consideration of the foregoing, the Parties hereby stipulate and agree as follows, and IT IS ORDERED:

1.    The Recitals form an integral part of this Stipulation and are incorporated fully herein.

2.    Pursuant to Bankruptcy Rule 3006, the Commonwealth hereby withdraws Claim Nos. 6028 and 6033 from the Claims Register.

3.    The Commonwealth hereby files the Amended Estimated Proof of Claim attached hereto as Exhibit 1, which amends and supersedes Claim No. 6025 ("Amended Estimated Claim").  KCC shall docket the Amended Estimated Claim and assign a new claim number in the Claims Register to the Amended Estimated Claim, with notice of the new claim number to the Commonwealth, after which point KCC shall be permitted to expunge Claim No. 6025 from the Claims Register.  The Parties' respective rights and defenses to the ultimate allowance of the Amended Estimated Claim by the Liquidating Trust are fully preserved.

4.    The Parties represent and warrant that each has full and requisite power and authority to enter into and perform its obligations under this Stipulation.  In connection therewith, the undersigned is authorized to enter into this Stipulation on behalf of their respective clients.

6

5.      This Stipulation constitutes the entire agreement and understanding between the Parties with regard to the matters addressed herein, and supersedes all prior and contemporaneous discussions, negotiations, understandings and agreements, whether oral or written, express or implied, between and among the Parties hereto regarding the subject matter of this Stipulation.

6.      This Stipulation may be executed in any number of counterparts, and each such counterpart is to be deemed an original for all purposes, but all counterparts shall collectively constitute one agreement.  Further, electronic signatures or transmissions of an originally signed document by facsimile or PDF shall be as fully binding on the Parties as an original document.

7.      This Stipulation shall be binding on the Parties as well as any successor in interest upon execution, and may not be altered, modified, changed or vacated without the prior written consent of the Parties or their respective counsel, as applicable.

8.      The Parties hereby are authorized to take any and all actions reasonably necessary to effectuate the relief granted pursuant to this Stipulation.  KCC is authorized and directed to take all actions as are necessary and appropriate to implement and effectuate the terms of this Stipulation, including updating the Claims Register to reflect first the Amended Estimated Claim and then the withdrawal (as provided above) of the Estimated Proofs of Claim.

9.      The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing this Stipulation.

7

IN WITNESS WHEREOF, and in agreement herewith, the Parties have executed and delivered this Stipulation as of the date set out below.


Dated:  July 11, 2014                           /s/ Norman S. Rosenbaum
                                                Norman S. Rosenbaum
                                                Jordan A. Wishnew
                                                **MORRISON & FOERSTER LLP**
                                                250 West 55th Street
                                                New York, New York 10019
                                                Telephone:  (212) 468-8000
                                                Facsimile:  (212) 468-7900

                                                *Counsel for The ResCap Liquidating Trust*


Dated:  July 11, 2014                           /s/ Justin J. Lowe
                                                Justin J. Lowe
                                                Assistant Attorney General
                                                Consumer Protection Division
                                                Office of the Attorney General
                                                1 Ashburton Place
                                                Boston, MA 02108
                                                Telephone: (617) 963-2912
                                                Facsimile: (617) 727-5765

                                                *Counsel for The Commonwealth of Massachusetts*

8

**SO ORDERED:**

Dated: _____, 2014

_____
HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

9

## **Exhibit 1**

**Amended Estimated Claim**

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT    Southern District of New York | Estimated **PROOF OF CLAIM** |
|---|---|

| Name of Debtor:  GMAC Mortgage, LLC | Case Number:  12-12032 | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Commonwealth of Massachusetts (Through the Office of the Attorney General)

**COURT USE ONLY**

Name and address where notices should be sent:
Justin Lowe, Esq.
Office of the Attorney General
One Ashburton Place, Boston, MA 02108

Telephone number: 6179632912    email: Justin.Lowe@state.ma.us

☑ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** 6025
  (*If known*)

Filed on: 11/29/12

Name and address where payment should be sent (if different from above):
Same

Telephone number:    email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. **Amount of Claim as of Date Case Filed:**    $    Estimated $2,000,000

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. **Basis for Claim:** Attached addendum and exhibits thereto.
   (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as:  (See instruction #3a) | 3b. Uniform Claim Identifier (optional):  (See instruction #3b) |
|---|---|---|

4. **Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

**Value of Property:** $

**Annual Interest Rate_____%** ☐ Fixed  or  ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$

**Basis for perfection:** _____

**Amount of Secured Claim:**    $

**Amount Unsecured:**    $

5. **Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**

$

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. **Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13)                                                                                                                    2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Justin Lowe
Title:  Assistant Attorney General
Company:  Commonwealth of Massachusetts
Address and telephone number (if different from notice address above):                    (Signature)                    6/25/14    (Date)
  Office of the Attorney General
  One Ashburton Place
  Boston, MA 02108
Telephone number: (617) 963-2912        email: Justin.Lowe@state.ma.us

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B10 (Official Form 10) (04/13)                                                                                                          3

_____DEFINITIONS_____                                                          _____INFORMATION_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

Addendum to the Amended Proof of Claim of the Commonwealth of
Massachusetts by Attorney General Martha Coakley

1.      On December 1, 2011, the Commonwealth of Massachusetts by and through its
Attorney General Martha Coakley (the "Commonwealth") filed a complaint (the "Complaint") in
the Superior Court, Suffolk County, Commonwealth of Massachusetts, Case No, 11-4363-BLS1.
The Complaint named five bank defendants, including GMAC Mortgage, LLC ("GMACM" or
the "Debtor"), as well as the Mortgage Electronic Registration System, Inc. and MERSCORP,
Inc. (collectively "MERS") in an enforcement action, alleging numerous violations of the
Massachusetts Consumer Protection Act, M.G.L. c. 93A (the "Enforcement Action").

2.      On or about February 9, 2012, the Commonwealth entered into an agreement with
GMACM and the other four bank defendants resolving certain claims in the Enforcement Action
(the "Massachusetts Agreement," a copy of which is attached hereto at Exhibit A).  The
agreement was reached in conjunction with a nationwide settlement between the bank defendants
and state and federal enforcement agencies, which was entered as a consent judgment by the
United States District Court for the District of Columbia on April 4, 2012. See United States of
America, et al. v. Bank of America Corp., et al., Case No. 1:12-cv-00361-RMC (D.D.C.), Docket
No. 13 (the "Consent Judgment," relevant portions[1] of which are attached at Exhibit B).

3.      Under the Massachusetts Agreement, the Commonwealth preserved its claims for
unlawful foreclosures, specifically carving out GMACM's "initiation or advancement of
foreclosure proceedings where the foreclosing entity was not the actual holder of the mortgage or
lacked the legal authority to foreclose on the mortgage." In addition, as part of the Massachusetts
Agreement, the Commonwealth agreed to limit its potential recovery under the remaining claims
to injunctive relief and no more than $2,000,000 in civil penalties, attorneys' fees, and costs for
any one defendant, including GMACM.

4.      On May 14, 2012, GMACM filed a voluntary petition for relief under Chapter 11
of title 11 of the United States Code in the United States Bankruptcy Court for the Southern
District of New York.

5.      On October 28, 2013, the Commonwealth filed and served a First Amended
Complaint, which reflects the claims asserted by the Commonwealth against various defendants,
including GMACM (the "Amended Complaint," a copy of which is attached at Exhibit C). The
Amended Complaint seeks relief for, among other things, the claims preserved in the
Massachusetts Agreement. GMACM its successors and assigns, and/or any reorganized debtor
shall hereinafter be referred to collectively as "Debtor."

6.      The Commonwealth files this Amended Estimated Proof of Claim to reflect its
potential monetary claim of up to $2,000,000 on account of attorneys' fees, costs, and non-
dischargeable civil penalties against Debtor's estate.  The Commonwealth also intends to pursue
non-dischargeable injunctive relief through its action.  The Commonwealth's claim is unsecured
and has not yet been reduced to a judgment.

---

[1] Given the length of the Consent Judgment and its attachments, the Commonwealth is attaching the main document
of the Consent Judgment entered by the Court, as well as the signature page executed by the Commonwealth.  The
remainder of the document is available upon request.

7.     To the extent the Debtor has ongoing injunctive obligations to comply with requirements it agreed to under the Consent Judgment, or the Debtor incurs additional injunctive obligations as a result of the Commonwealth's Enforcement Action, the Debtor is required to perform all such obligations.

8.     Indeed, the Debtor must comply with the mandatory injunctive requirements of any federal or state laws or regulations and of any consent decrees, final judgments or administrative orders in relation to its lending, servicing and foreclosure practices within the Commonwealth for which the Debtor has liability.

9.     It is the position of the Commonwealth, and the Commonwealth reserves its rights to argue, that the performance of any injunctive obligations and requirements under any Massachusetts laws does not constitute claims within the meaning of Section 101(5) of the Bankruptcy Code.

10.    Court ordered and regulatory obligations are mandatory injunctive obligations with which the Debtor must comply, and for which proofs of claim need not be filed under the Bankruptcy Code.  Nevertheless, this claim is filed in a protective fashion only for the court ordered and regulatory obligations identified above to protect the Commonwealth's rights with respect to any such obligations of the Debtor.  The Commonwealth reserves the right to take future actions to enforce any such obligations of the Debtor.  Nothing in this Proof of Claim constitutes a waiver of any rights of the Commonwealth or an election of remedies.

11.    The Commonwealth expressly reserves, and does not waive, any and all rights it may have under the doctrine of sovereign immunity and the Eleventh Amendment of the United States Constitution.

# Exhibit A

## AGREEMENT

WHEREAS, on December 1, 2011, the Commonwealth filed a lawsuit (the "Action") against Bank of America, N.A., JPMorgan Chase Bank, N.A., Citibank, N.A., CitiMortgage, Inc., GMAC Mortgage, LLC and Wells Fargo Bank and certain affiliated entities (the "Servicers");

WHEREAS, the Action includes allegations arising out of the Servicer's initiation or advancement of foreclosure proceedings where the foreclosing entity was not the actual holder of the mortgage or lacked the legal authority to foreclose on the mortgage (the *"Ibanez* Claims");

WHEREAS, the Action includes allegations related to the Servicer's failure to comply with the registration requirements of M. G. L. c. 185, § 67 including, without limitation, the failure to register instruments which assign, extend, discharge or otherwise deal with the mortgage, including assignments or transfers  in the beneficial interest of a mortgage secured by registered land in Massachusetts, whether such assignments or transfers were effectuated by the Servicer alone or with others, including through the use of Mortgage Electronic Registration Systems, Inc. or MERSCORP, INC. (the "Registered Land Claims");

WHEREAS, the Commonwealth and the Servicers (collectively the "Parties") will be parties to a consent judgment filed in the United States District Court for the District of Columbia (the "Settlement");

WHEREAS, the Settlement includes the release of certain claims, remedies, and penalties, and the terms of this release will be set forth in a document to be filed with the Settlement; and

WHEREAS, the Servicers neither admit nor deny the allegations in the Action;

NOW, THEREFORE, the Parties agree as follows:

1.    Notwithstanding the scope of conduct released as part of the Settlement, neither the *Ibanez* Claims nor the Registered Land Claims, as currently pleaded in the Complaint, shall be released as part of the Settlement, but Massachusetts hereby releases and agrees to dismiss with prejudice the claims in Counts II, III and IV of the Complaint against the Servicers.

2.    Massachusetts agrees not to seek to amend the Action in any way that will broaden beyond the *Ibanez* Claims and the Registered Land Claims the scope of the conduct alleged or the remedy sought.

3.    The Commonwealth shall be permitted to pursue the relief specified in the Commonwealth's Complaint, except for the relief specified in prayers for relief 2.a.vi, 2.a.vii, and 2.a.viii of the Complaint, which are hereby released by Massachusetts.

4.    The Commonwealth shall not seek in the Action to vacate any completed foreclosure or seek relief that would have the effect of or require the vacating of a

foreclosure, and the Parties agree that the current relief sought in the Complaint does not have that effect.

5.     The total monetary relief that the Commonwealth may recover in the Action shall not exceed $2,000,000 from any one Servicer, exclusive of the costs of compliance with any injunctive relief.

6.     This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall be considered the same Agreement.

BANK OF AMERICA, N.A.

Dated: _Mah 7_, 2012          By: _____

WELLS FARGO BANK, N.A.

Dated: _____, 2012          By: _____

JPMORGAN CHASE BANK, N.A.

Dated: _____, 2012          By: _____

CITIBANK, N.A. and CITIMORTGAGE, INC.

Dated: _____, 2012          By: _____

2

foreclosure, and the Parties agree that the current relief sought in the Complaint does not have that effect.

5. The total monetary relief that the Commonwealth may recover in the Action shall not exceed $2,000,000 from any one Servicer, exclusive of the costs of compliance with any injunctive relief.

6. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall be considered the same Agreement.

BANK OF AMERICA, N.A.

Dated: _____, 2012      By: _____

WELLS FARGO BANK, N.A.

Dated: __3|5__, 2012      By: _____
                                  EVP

JPMORGAN CHASE BANK, N.A.

Dated: _____, 2012      By: _____

CITIBANK, N.A. and CITIMORTGAGE, INC.

Dated: _____, 2012      By: _____

foreclosure, and the Parties agree that the current relief sought in the Complaint does not have that effect.

5. The total monetary relief that the Commonwealth may recover in the Action shall not exceed $2,000,000 from any one Servicer, exclusive of the costs of compliance with any injunctive relief.

6. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall be considered the same Agreement.

BANK OF AMERICA, N.A.

Dated: _____, 2012    By: _____

WELLS FARGO BANK, N.A.

Dated: _____, 2012    By: _____

JPMORGAN CHASE BANK, N.A.

Dated: MARCH 6, 2012    By: _____

CITIBANK, N.A. and CITIMORTGAGE, INC.

Dated: _____, 2012    By: _____

foreclosure, and the Parties agree that the current relief sought in the Complaint does not have that effect.

5.      The total monetary relief that the Commonwealth may recover in the Action shall not exceed $2,000,000 from any one Servicer, exclusive of the costs of compliance with any injunctive relief.

6.      This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall be considered the same Agreement.


                                    BANK OF AMERICA, N.A.

Dated: _____, 2012        By: _____


                                    WELLS FARGO BANK, N.A.

Dated: _____, 2012        By: _____


                                    JPMORGAN CHASE BANK, N.A.

Dated: _____, 2012        By: _____


                                    CITIBANK, N.A. and CITIMORTGAGE, INC.

Dated: 3-6 _____, 2012        By: _____

                                        CEO, Citi Mortgage, Inc.
                                        SVP, Citibank, NA

GMAC MORTGAGE, LLC

Dated: _March 6_, 2012        By: _____

MARTHA COAKLEY
Attorney General of Massachusetts

Dated: _____, 2012        By: _____

3

GMAC MORTGAGE, LLC

Dated: _____, 2012        By: _____

MARTHA COAKLEY
Attorney General of Massachusetts

Dated: March 7, 2012        By: _____

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

APR - 4 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

12 0361

|                                     |     |
| ----------------------------------- | --- |
| UNITED STATES OF AMERICA, *et al.*, | )   |
|                                     | )   |
|                                     | )   |
| Plaintiffs,                         | )   |
|                                     | )   |
| v.                                  | )   |
|                                     | )   Civil Action No. _____ |
| BANK OF AMERICA CORP. *et al.*,     | )   |
|                                     | )   |
| Defendants.                         | )   |
|                                     | )   |
|                                     | )   |
|                                     | )   |
|                                     | )   |
|                                     | )   |
|                                     | )   |

**CONSENT JUDGMENT**

WHEREAS, Plaintiffs, the United States of America and the States of Alabama, Alaska,

Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii,

Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota,

Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico,

New York, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South

Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, Wyoming,

the Commonwealths of Kentucky, Massachusetts, Pennsylvania and Virginia, and the District of

Columbia filed their complaint on March 12, 2012, alleging that Residential Capital, LLC, Ally

Financial, Inc., and GMAC Mortgage, LLC (collectively, "Defendant") violated, among other

laws, the Unfair and Deceptive Acts and Practices laws of the Plaintiff States, the False Claims

Act, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, the

Servicemembers Civil Relief Act, and the Bankruptcy Code and Federal Rules of Bankruptcy

Procedure;

WHEREAS, the parties have agreed to resolve their claims without the need for

litigation; ·

WHEREAS, Defendant, by its attorneys, has consented to entry of this Consent Judgment

without trial or adjudication of any issue of fact or law and to waive any appeal if the Consent

Judgment is entered as submitted by the parties;

WHEREAS, Defendant, by entering into this Consent Judgment, does not admit the

allegations of the Complaint other than those facts deemed necessary to the jurisdiction of this

Court;

WHEREAS, the intention of the United States and the States in effecting this settlement

is to remediate harms allegedly resulting from the alleged unlawful conduct of the Defendant;

AND WHEREAS, Defendant has agreed to waive service of the complaint and summons

and hereby acknowledges the same;

NOW THEREFORE, without trial or adjudication of issue of fact or law, without this

Consent Judgment constituting evidence against Defendant, and upon consent of Defendant, the

Court finds that there is good and sufficient cause to enter this Consent Judgment, and that it is

therefore ORDERED, ADJUDGED, AND DECREED:

## I.    JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331, 1345, 1355(a), and 1367, and under 31 U.S.C. § 3732(a) and (b), and over

Defendant.  The Complaint states a claim upon which relief may be granted against Defendant.

Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) and 31 U.S.C. § 3732(a).

2

## II.   SERVICING STANDARDS

2.     Defendant shall comply with the Servicing Standards, attached hereto as Exhibit A, in accordance with their terms and Section A of Exhibit E, attached hereto.

## III.   FINANCIAL TERMS

3.     *Payment Settlement Amounts.*  Defendant shall pay into an interest bearing escrow account to be established for this purpose the sum of $109,628,425, which sum shall be added to funds being paid by other institutions resolving claims in this litigation (which sum shall be known as the "Direct Payment Settlement Amount") and which sum shall be distributed in the manner and for the purposes specified in Exhibit B.  Defendant's payment shall be made by electronic funds transfer no later than seven days after the Effective Date of this Consent Judgment, pursuant to written instructions to be provided by the United States Department of Justice.  After Defendant has made the required payment, Defendant shall no longer have any property right, title, interest or other legal claim in any funds held in escrow.  The interest bearing escrow account established by this Paragraph 3 is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation Section 1.468B-1 of the U.S. Internal Revenue Code of 1986, as amended.  The Monitoring Committee established in Paragraph 8 shall, in its sole discretion, appoint an escrow agent ("Escrow Agent") who shall hold and distribute funds as provided herein.  All costs and expenses of the Escrow Agent, including taxes, if any, shall be paid from the funds under its control, including any interest earned on the funds.

4.     *Payments to Foreclosed Borrowers.*  In accordance with written instructions from the State members of the Monitoring Committee, for the purposes set forth in Exhibit C, the Escrow Agent shall transfer from the escrow account to the Administrator appointed under

3

Exhibit C $1,489,813,925.00 (the "Borrower Payment Amount") to enable the Administrator to

provide cash payments to borrowers whose homes were finally sold or taken in foreclosure

between and including January 1, 2008 and December 31, 2011; who submit claims for harm

allegedly arising from the Covered Conduct (as that term is defined in Exhibit G hereto); and

who otherwise meet criteria set forth by the State members of the Monitoring Committee. The

Borrower Payment Amount and any other funds provided to the Administrator for these purposes

shall be administered in accordance with the terms set forth in Exhibit C.

5.     *Consumer Relief.* Defendant shall provide $185,000,000 of relief to consumers

who meet the eligibility criteria in the forms and amounts described in Paragraphs 1-8 of Exhibit

D, and $15,000,000 of refinancing relief to consumers who meet the eligibility criteria in the

forms and amounts described in Paragraph 9 of Exhibit D, to remediate harms allegedly caused

by the alleged unlawful conduct of Defendant. Defendant shall receive credit towards such

obligation as described in Exhibit D.

## IV. ENFORCEMENT

6.     The Servicing Standards and Consumer Relief Requirements, attached as Exhibits

A and D, are incorporated herein as the judgment of this Court and shall be enforced in

accordance with the authorities provided in the Enforcement Terms, attached hereto as Exhibit E.

7.     The Parties agree that Joseph A. Smith, Jr. shall be the Monitor and shall have the

authorities and perform the duties described in the Enforcement Terms, attached hereto as

Exhibit E.

8.     Within fifteen (15) days of the Effective Date of this Consent Judgment, the

participating state and federal agencies shall designate an Administration and Monitoring

Committee (the "Monitoring Committee") as described in the Enforcement Terms. The

4

Monitoring Committee shall serve as the representative of the participating state and federal

agencies in the administration of all aspects of this and all similar Consent Judgments and the

monitoring of compliance with it by the Defendant.

## V.    RELEASES

9.      The United States and Defendant have agreed, in consideration for the terms

provided herein, for the release of certain claims, and remedies, as provided in the Federal

Release, attached hereto as Exhibit F.  The United States and Defendant have also agreed that

certain claims, and remedies are not released, as provided in Paragraph 11 of Exhibit F.  The

releases contained in Exhibit F shall become effective upon payment of the Direct Payment

Settlement Amount by Defendant.

10.     The State Parties and Defendant have agreed, in consideration for the terms

provided herein, for the release of certain claims, and remedies, as provided in the State Release,

attached hereto as Exhibit G.  The State Parties and Defendant have also agreed that certain

claims, and remedies are not released, as provided in Part IV of Exhibit G.  The releases

contained in Exhibit G shall become effective upon payment of the Direct Payment Settlement

Amount by Defendant.

## VI.    SERVICEMEMBERS CIVIL RELIEF ACT

11.     The United States and Defendant have agreed to resolve certain claims arising

under the Servicemembers Civil Relief Act ("SCRA") in accordance with the terms provided in

Exhibit H.  Any obligations undertaken pursuant to the terms provided in Exhibit H, including

any obligation to provide monetary compensation to servicemembers, are in addition to the

obligations undertaken pursuant to the other terms of this Consent Judgment.  Only a payment to

5

an individual for a wrongful foreclosure pursuant to the terms of Exhibit H shall be reduced by
the amount of any payment from the Borrower Payment Amount.

## VII.  OTHER TERMS

12.    The United States and any State Party may withdraw from the Consent Judgment
and declare it null and void with respect to that party if the Defendant does not make the
Consumer Relief Payments (as that term is defined in Exhibit F (Federal Release)) required
under this Consent Judgment and fails to cure such non-payment within thirty days of written
notice by the party.

13.    This Court retains jurisdiction for the duration of this Consent Judgment to
enforce its terms.  The parties may jointly seek to modify the terms of this Consent Judgment,
subject to the approval of this Court.  This Consent Judgment may be modified only by order of
this Court.

14.    The Effective Date of this Consent Judgment shall be the date on which the
Consent Judgment has been entered by the Court and has become final and non-appealable.  An
order entering the Consent Judgment shall be deemed final and non-appealable for this purpose if
there is no party with a right to appeal the order on the day it is entered.

15.    This Consent Judgment shall remain in full force and effect for three and one-half
years from the date it is entered ("the Term"), at which time the Defendants' obligations under
the Consent Judgment shall expire, except that, pursuant to Exhibit E, Defendants shall submit a
final Quarterly Report for the last quarter or portion thereof falling within the Term and
cooperate with the Monitor's review of said report, which shall be concluded no later than six
months after the end of the Term.  Defendant shall have no further obligations under this
Consent Judgment six months after the expiration of the Term, but the Court shall retain

6

jurisdiction for purposes of enforcing or remedying any outstanding violations that are identified

in the final Monitor Report and that have occurred but not been cured during the Term.

16.     Except as otherwise agreed in Exhibit B, each party to this litigation will bear its

own costs and attorneys' fees associated with this litigation.

17.     Nothing in this Consent Judgment shall relieve Defendant of its obligation to

comply with applicable state and federal law.

18.     The parties further agree to the additional terms contained in Exhibit I hereto.

19.     The sum and substance of the parties' agreement and of this Consent Judgment

are reflected herein and in the Exhibits attached hereto.  In the event of a conflict between the

terms of the Exhibits and paragraphs 1-18 of this summary document, the terms of the Exhibits

shall govern.

SO ORDERED this _4_ day of _April_____, 2012

_Rosemary M Coley_

UNITED STATES DISTRICT JUDGE

For The Commonwealth Of
Massachusetts:

For the Massachusetts Division of
Banks:

MARTHA COAKLEY
Attorney General

_____
AMBER ANDERSON VILLA
Mass. BBO #647566
*Assistant Attorney General*
Public Protection and Advocacy Bureau
Consumer Protection Division
One Ashburton Place
Boston, MA 02108
Tel: 617-727-2200

_____
DAVID J. COTNEY
Commissioner
Massachusetts Division of Banks
1000 Washington St., 10th Floor
Boston, MA  02118
Tel:  617-956-1510
Fax:  617-956-1599

For The Commonwealth Of
Massachusetts:

For the Massachusetts Division of
Banks:

MARTHA COAKLEY
Attorney General


_____
AMBER ANDERSON VILLA
Mass. BBO #647566
*Assistant Attorneys General*
Public Protection and Advocacy Bureau
Consumer Protection Division
One Ashburton Place
Boston, MA 02108
Tel: 617-727-2200

_____
DAVID J. COTNEY
Commissioner
Massachusetts Division of Banks
1000 Washington St., 10th Floor
Boston, MA  02118
Tel:   617-956-1510
Fax:  617-956-1599

For Ally Financial, Inc.:

_William B Solomon Jr_

William B. Solomon, Jr.
Group Vice President and General Counsel

200 Renaissance Center
Mail Code 482-B09-B11
Detroit, Michigan, 48265

For Residential Capital, LLC and GMAC
Mortgage, LLC:

_____

Tammy Hamzehpour
General Counsel

1100 Virginia Drive
Fort Washington, Pennsylvania  19034

For Ally Financial, Inc.:

For Residential Capital, LLC and GMAC
Mortgage, LLC:

_____

William B. Solomon, Jr.
Group Vice President and General Counsel

Tammy Hamzehpour
General Counsel

200 Renaissance Center
Mail Code 482-B09-B11
Detroit, Michigan, 48265

1100 Virginia Drive
Fort Washington, Pennsylvania  19034

# Exhibit C

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK COUNTY                     SUPERIOR COURT DEPARTMENT
                                   OF THE TRIAL COURT

                                   CIVIL ACTION NO. 11-4363 [BLS1]

COMMONWEALTH OF MASSACHUSETTS,        **FIRST AMENDED**
                                      **COMPLAINT**
        Plaintiff,

v.

BANK OF AMERICA, N.A., BAC HOME
LOANS SERVICING, LP, BAC GP, LLC,
JPMORGAN CHASE BANK, N.A., CITIBANK,
N.A., CITIMORTGAGE, INC., GMAC
MORTGAGE, LLC, WELLS FARGO BANK,
N.A., MORTGAGE ELECTRONIC
REGISTRATION SYSTEM, INC., and
MERSCORP, INC.,

        Defendants.



## I.   INTRODUCTION

1.      The Commonwealth of Massachusetts, by and through its Attorney

General, Martha Coakley, brings this enforcement action to hold multiple banks

accountable for their serial violations of Massachusetts law and associated unfair or

deceptive conduct amidst the foreclosure crisis that has gripped Massachusetts and the

nation since 2007.  Pursuant to the Massachusetts Consumer Protection Act, G. L. c. 93A,

§ 4, and G. L. c. 12, § 10, the Commonwealth seeks to require Defendants Bank of

America, N.A., BAC Home Loans Servicing, LP, BAC GP, LLC, JPMorgan Chase Bank,

N.A., Citibank, N.A., Citimortgage, Inc., GMAC Mortgage, LLC, and Wells Fargo Bank,

N.A. (collectively the "Bank Defendants"), to pay civil penalties, restitution and other

compensation for the harms caused by their unfair or deceptive business conduct in

Massachusetts. The Commonwealth also seeks injunctive relief in order to remedy, address, and prevent additional harm arising out of the defendants' conduct.

## II.    JURISDICTION AND VENUE

2.    The Attorney General is authorized to bring this action pursuant to G. L. c. 93A, § 4 and G. L. c. 12, § 10.  This Court has jurisdiction over the subject matter of this action pursuant to G. L. c. 93A, § 4, G. L. c. 12, § 10, and G. L. c. 223A, § 3.

3    Venue is proper in Suffolk County pursuant to G. L. c. 223, § 5 and G. L. c. 93A, § 4.

4.    The parties are properly joined in a single lawsuit pursuant to Mass. R. Civ. P. 20 due to the significant number of common issues of fact and law raised by the claims detailed below and because these claims arise out of the same series of transactions or occurrences, namely, foreclosures that failed to comply with Massachusetts law.

## III.    THE PARTIES

5.    The Plaintiff is the Commonwealth of Massachusetts, represented by the Attorney General, who brings this action in the public interest.

6.    BAC Home Loans Servicing, LP is a limited partnership organized under the laws of Texas, with a principal place of business in Calabasas, California.  From April 2009 through July 6, 2011, it was registered as a foreign limited partnership with the Secretary of the Commonwealth of Massachusetts.  Prior to April 2009, BAC Home Loans Servicing, LP did business under the name Countrywide Home Loans Servicing, LP.

7.    BAC GP, LLC is a Nevada corporation with a principal place of business in Calabasas, California.  From June 2008 through September 29, 2011, it was registered as a foreign corporation with the Secretary of the Commonwealth of Massachusetts.

Prior to April 2009, BAC GP, LLC did business as Countrywide GP, Inc. and
Countrywide GP, LLC.

8.      As subsidiaries of Bank of America, N.A., BAC Home Loans Servicing,
LP and BAC GP, LLC were responsible, in whole or in part, for Bank of America, N.A.'s
residential real estate loan servicing obligations, including servicing residential real estate
loans in Massachusetts.

9.      Bank of America, N.A. (together with BAC Home Loans Servicing, LP and
BAC GP, LLC, "Bank of America") is a national bank with a principal place of business
in Charlotte, North Carolina.  Bank of America, N.A. controlled and directed the
operations of its subsidiaries BAC Home Loans Servicing, LP and BAC GP, LLC.  At
various points, Bank of America N.A. either directly and/or indirectly through its agents,
employees, subsidiaries and/or related companies, including without limitation BAC
Home Loans Servicing, LP and BAC GP, LLC, held, serviced and/or engaged in
transactions related to, mortgages of real property within the Commonwealth.

10.     JPMorgan Chase Bank, N.A. ("Chase") is a national bank with a principal
place of business in Columbus, Ohio.  As described below, Chase, either directly and/or
indirectly through its agents, employees, subsidiaries and/or related companies, including
without limitation  Chase Home Finance LLC, held, serviced and/or engaged in
transactions related to, mortgages of real property within the Commonwealth.

11.     Citibank, N.A. is a national bank with a principal place of business in
Sioux Falls, South Dakota.

12.     CitiMortgage, Inc. (together with Citibank, N.A., "Citi") is a Delaware
corporation with its principal place of business in St. Louis, Missouri.  As described

below, Citi either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies held, serviced and/or engaged in transactions related to, mortgages of real property within the Commonwealth.

13.    Defendant GMAC Mortgage, LLC ("GMAC") is a limited liability company that has originated and serviced residential home mortgage loans in the Commonwealth. As described below, GMAC either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies serviced and/or engaged in transactions related to, mortgages of real property within the Commonwealth.

14.    Wells Fargo Bank, N.A. ("Wells Fargo") is a national bank with a principal place of business in Sioux Falls, South Dakota. As described below, Wells Fargo either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation Wells Fargo Home Mortgage, Inc.. held, serviced and/or engaged in transactions related to, mortgages of real property within the Commonwealth.

## IV.    STATEMENT OF FACTS

### A.    THE BANK DEFENDANTS ENGAGED IN UNFAIR OR DECEPTIVE FORECLOSURE PRACTICES.

#### 1.    A Party Seeking to Foreclose In Massachusetts Must Strictly Adhere With Each Aspect of the Statutory Foreclosure Scheme.

15.    Under Massachusetts law, the holder of a mortgage may foreclose the mortgagee's right of redemption by exercising the statutory power of sale, if that power is granted by the mortgage.

16.     Where the mortgage grants the mortgage holder the power of sale, it

includes by reference the power of sale set forth at G. L. c. 183, § 21, as regulated by

G. L. c. 244, §§ 11-17C, and 35A.

17.     Under G. L. c. 183, § 21, after a borrower defaults in the performance of

the underlying obligation secured by the mortgage, the mortgage holder may sell the

property at a public auction and convey the property to the purchaser in fee simple.

"[S]uch sale shall forever bar the mortgagor and all persons claim under him from all

right and interest in the mortgaged premises, whether at law or in equity." Id.

18.     Because this statutory foreclosure scheme allows the mortgage holder to

exercise this extraordinary power without first obtaining judicial authorization,

Massachusetts courts have consistently required strict compliance with the statutory

foreclosure scheme and the power of sale.  See U.S. Bank Nat. Ass'n v. Ibanez, 458

Mass. 637, 646-47 (2011) ("Recognizing the substantial power that the statutory

[foreclosure] scheme affords to a mortgage holder to foreclose without immediate

judicial oversight, we adhere to the familiar rule that 'one who sells under a power [of

sale] must follow strictly its terms. If he fails to do so there is no valid execution of the

power, and the sale is wholly void.' [Citations omitted.] One of the terms of the power of

sale that must be strictly adhered to is the restriction on who is entitled to foreclose.")

19.     The Supreme Judicial Court further held:

>   A related statutory requirement that must be strictly
>   adhered to in a foreclosure by power of sale is the notice
>   requirement articulated in G.L. c. 244, § 14. That statute
>   provides that 'no sale under such power shall be effectual to
>   foreclose a mortgage, unless, previous to such sale,'
>   advance notice of the foreclosure sale has been provided to
>   the mortgagor, to other interested parties, and by
>   publication in a newspaper published in the town where the

> mortgaged land lies or of general circulation in that town.
> [Citation omitted.] 'The manner in which the notice of the
> proposed sale shall be given is one of the important terms
> of the power, and a strict compliance with it is essential to
> the valid exercise of the power.'"

Id. at 647-48.

20.    The Supreme Judicial Court reaffirmed this requirement in Bevilacqua v.

Rodriguez:

> Our recent decision in the case of U.S. Bank Nat'l Ass'n v.
> Ibanez, 458 Mass. 637, 647 (2011), however, concluded
> that "[a]ny effort to foreclose by a party lacking
> 'jurisdiction and authority' to carry out a foreclosure under
> [the relevant] statutes is void."

460 Mass. 762, 778 (2011).

21.    Accordingly, a party seeking to foreclose by exercising the statutory power

of sale must strictly comply with each requirement of the statutory foreclosure scheme.

In Massachusetts, that statutory foreclosure scheme requires the party to:

       a.    Provide notice to the borrower of the right to cure a default prior to

accelerating the entire unpaid balance of the mortgage or otherwise enforcing the

mortgage, including by exercising the power of sale. G. L. c. 244, § 35A. In accord with

revisions to the statute in 2010, the mortgagee must provide such notice at least 150 days

prior to accelerating the debt or otherwise enforcing the mortgage. Id. Between 2007

and 2010, the mortgagee was required to provide the statutory notice at least ninety days

before taking further action to enforce the mortgage. See id.

       b.    Provide notice to the borrower at least fourteen days prior to the

proposed date of sale stating, inter alia, the redemption amount as of thirty days prior to

the date of sale and identifying the present holder of the mortgage. G. L. c. 244, § 14.

    c.  Cause notices of the sale to be published for three successive weeks in a newspaper with general circulation in the town where the mortgaged land lies. G. L. c. 244, § 14.

    d.  Provide notice to the borrower of the mortgagee's intent to collect a deficiency (if the mortgagee so intends) at least twenty-one days prior to the date of the sale. G. L. c. 244, § 17B. In addition, the party providing such notice must sign and file with the appropriate registry of deeds an affidavit attesting to its compliance with this portion of the foreclosure statute within thirty days following the foreclosure sale. See id.

    e.  Record an affidavit in the appropriate registry of deeds that "fully and particularly" states the acts taken in the course of conducting the foreclosure of the mortgage by sale and to which is attached copies of the notice of sale as published pursuant to Chapter 244, Section 14. G. L. 244, § 15.

  22.  Massachusetts law further limits who is entitled to foreclose. The statutory power of sale explicitly identifies the parties who can exercise the power. The power can only be exercised by "the mortgagee or his executors, administrators, successors or assigns." G. L. c. 183, § 21. In addition, G. L. 244, § 14 authorizes only "[t]he mortgagee or person having his estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a writing under seal, or the legal guardian or conservator of such mortgagee or a person acting in the name of such mortgagee or person" to exercise the statutory power of sale. Accordingly, as the Supreme Judicial Court held, "only a present holder of the mortgage is authorized to foreclose on the mortgaged property." U.S. Bank. N.A. v. Ibanez, 458 Mass. 637, 648 (2011).

23.    In addition, G. L. c. 244, § 14 provides that "no sale under [the statutory power of sale] shall be effectual to foreclose a mortgage, unless" advance notice of the foreclosure sale has been provided to the borrower, to other interested parties, and by publication. That notice must specifically identify the present holder of the mortgage at the time the notice is issued and the failure to do so voids any subsequent sale. G. L. c. 244, § 14; U.S. Bank, N.A. v. Ibanez, 458 Mass. 637, 648 (2011).

24.    The Supreme Judicial Court reaffirmed each of these requirements in U.S. Bank, N.A. v. Ibanez, 458 Mass. 637 (2011); see also Bevilacqua v. Rodriguez, 460 Mass. 762, 772 (2011) ("One of the terms of the power of sale that must be strictly adhered to is the restriction on who is entitled to foreclose.") (quoting Ibanez, 458 Mass. at 647). Ibanez upheld decisions issued by the Land Court invalidating two foreclosures where, in each case, the foreclosing entity, while purporting to be the holder of the mortgage, had in fact failed to obtain a valid, written assignment of the mortgage prior to commencing foreclosure proceedings.

25.    The Bank Defendants conducted invalid foreclosures by failing to strictly comply with Massachusetts foreclosure law by publishing notices of sale when they were not holders of the mortgages at the time of the publication in violation of G.L. c. 244, § 14.

26.    By failing to strictly adhere to these statutory requirements in conducting foreclosures, the Bank Defendants violated those statutes, the Massachusetts Consumer Protection Act, G.L. c. 93A, §§ 2 and 4, and conducted invalid foreclosures.

       2.      **The Bank Defendants Failed to Strictly Comply with Massachusetts Foreclosure Laws by Conducting Foreclosures as the Purported Mortgagees When They Were Not the Holders of the Mortgages**

27.      On numerous occasions, including without limitation as set forth in the illustrative examples below and on the spreadsheet annexed hereto as Exhibit A[1] and incorporated herein, the Bank Defendants repeatedly failed to strictly adhere to Massachusetts statutory requirements in conducting foreclosures, and knowingly foreclosed on mortgages secured by property within the Commonwealth even though they were neither the mortgagee, nor the holder of the mortgage, at the time they published notices of sale under c. 244, § 14 purporting to be the present holder of the mortgage.

28.      Each foreclosure initiated or advanced by a Bank Defendant when it falsely identified itself as the mortgagee when it was not the current holder of the mortgage was unlawful and is void.

29.      The Bank Defendants knew or should have known their failure to strictly comply with Massachusetts foreclosure law by failing to hold mortgages, or otherwise secure a valid, written assignment of the mortgage prior to publishing notices of sale violates G. L. c. 244, § 1, et seq., G. L. c. 183, § 21, is unfair or deceptive in violation of G. L. c. 93A, §§ 2 and 4, and voids any subsequent foreclosure.

30.      The Bank Defendants' conduct has harmed the integrity of the Massachusetts public property records, has adversely affected the title to hundreds of

---

[1] Exhibit A, attached hereto, is a list of properties where the Bank Defendants failed to strictly comply with Massachusetts foreclosure law by conducting foreclosures when they were not the holders of the mortgage.

properties in the Commonwealth, leaving homeowners unable to refinance or sell their homes.

## Illustrative Examples

## CHASE

### 38 Mascot Street, Unit 3, Boston, Massachusetts

31.     On April 26, 2007, a Boston, Massachusetts resident ("Mascot Street Borrower") borrowed $272,000 from JPMorgan Chase Bank, N.A.  The loan was secured by a mortgage granted in favor of JPMorgan Chase Bank, N.A. on property located at 38 Mascot Street, Unit 3, Boston Massachusetts (the "Mascot Street Mortgage").

32.     On March 4, 2008, March 11, 2008, and March 18, 2008, Chase Home Finance caused to be published in the Boston Herald, pursuant to M.G.L. c. 244, § 14, a Notice of Mortgagee's Sale of Real Estate stating that Chase Home Finance was "the present holder" of the Mascot Street Mortgage, and noticing March 26, 2008 as the date for a sale of the subject property at public auction.

33.     On March 26, 2008, Chase Home Finance sold the property at auction.

34.     On July 25, 2008, Chase Home Finance caused to be recorded a notarized Certificate of Entry (the "Mascot Street Certificate of Entry").  The Mascot Street Certificate of Entry states that, on March 26, 2008, "Paul Mulkerron, attorney-in-fact and agent of Chase Home Finance LLC . . . the current holder of a certain mortgage given by [the Mascot Street Borrower]" made an entry onto the property located at 38 Mascot Street, Unit 3, Boston Massachusetts "for the purpose, by him/her declared, of foreclosing said mortgage for breach of conditions thereof."

35.     Chase Home Finance was not the holder of the Mascot Street Mortgage when it: (a) caused notices of sale of the subject property to be published on March 4th,

11th, and 18th of 2008; (b) subsequently sold the property at auction on March 26, 2008;

or (c) made entry into the subject property on March 26, 2008 to foreclose the mortgage.

In fact, it was not until July 2, 2008 that JP Morgan Chase Bank, N.A., the record

mortgagee, assigned the Mascot Street Mortgage to Chase Home Finance.

## CITIBANK, N.A.

### 22 Deluca Road, Milford, Massachusetts

36.      On May 3, 2006, Milford, Massachusetts resident ("Milford Borrower")

borrowed $253,600 from Sallie Mae Home Loans, Inc. ("Sallie Mae"). The loan was

secured by a mortgage granted in favor of MERS, acting solely as a nominee for the

lender and the lender's successors and assigns, on property located at 22 Deluca Road,

Milford, Massachusetts (the "Milford Mortgage").

37.      On March 4, 2008, March 11, 2008, and March 18, 2008, Citibank, N.A.

caused to be published in the Milford Daily News, pursuant to M.G.L. c. 244, § 14, a

Notice of Mortgagee's Sale of Real Estate stating that Citibank, N.A. was "the present

holder" of the Milford Mortgage, and noticing March 25, 2008 as the date for a sale of

the subject property at public auction.

38.      On April 23, 2008, Citibank, N.A. caused the subject property to be sold at

auction.

39.      On July 18, 2008, Citibank, N.A. caused to be recorded a notarized

Certificate of Entry ("Milford Certificate of Entry"). The Milford Certificate of Entry

states that, on April 23, 2008, "John O'Hara, the attorney-in-fact and agent for Citibank,

N.A. . . . the current holder of a certain mortgage given by [the Milford Borrower]" made

an entry on the property located at 22 Deluca Road, Milford, Massachusetts "for the

purpose by him/her declared, of foreclosing said mortgage for breach of conditions thereof."

40.       Citibank, N.A. was not the holder of the Milford Mortgage when it: (a) caused notices of sale of the subject property to be published on March 4, 11, and 18 of 2008; (b) subsequently sold the property at auction on April 23, 2008; or (c) made entry on the subject property on April 23, 2008 to foreclose the mortgage. In fact, it was not until May 21, 2008 that MERS, the record mortgagee, assigned the Milford Mortgage to Citibank, N.A.

## CITIMORTGAGE, INC.

### 448 Slade Street, Fall River, Massachusetts

41.       On November 13, 2006, a Fall River, Massachusetts resident ("Fall River Borrower") borrowed $176,366 from Allied Home Mortgage Corp. ("Allied Home Mortgage"). The loan was secured by a mortgage granted in favor of MERS, acting solely as a nominee for the lender and the lender's successors and assigns, on property located at 448 Slade Street, Fall River, Massachusetts (the "Fall River Mortgage").

42.       On September 9, 2008, September 16, 2008, and September 23, 2008, CitiMortgage, Inc. caused to be published in the Fall River Herald News pursuant to M.G.L. c. 244, § 14, a Notice of Mortgagee's Sale of Real Estate, stating that CitiMortgage, Inc. was "the present holder" of the Fall River Mortgage, and noticing September 30, 2008 as the date for a sale of the subject property at public auction.

43.       On September 30, 2008, CitiMortgage, Inc. sold the property at auction.

44.       On November 13, 2008, CitiMortgage, Inc. caused to be recorded a notarized Certificate of Entry ("Fall River Certificate of Entry"). The Fall River

Certificate of Entry states that, on September 30, 2008, "John O'Hara, attorney-in-fact and agent for Citi Mortgage, Inc. . . . the present holder of a certain mortgage given by [the Fall River Borrowers]" made an entry on the property located at 448 Slade Street, Fall River, Massachusetts "for the purpose, by him/her declared, of foreclosing said mortgage for breach of conditions thereof."

45.    CitiMortgage, Inc. was not the holder of the Fall River Mortgage when it: (a) caused notices of sale of the subject property to be published on September 9, 16, and 23 of 2008; (b) subsequently sold the property at auction on September 30, 2008; or (c) made entry on the subject property on September 30, 2008 to foreclose the mortgage. In fact, it was not until October 10, 2008 that MERS, the record holder of the mortgage, assigned the Fall River Mortgage to CitiMortgage, Inc.

## GMAC

### 14 Standish Street, Unit 3 Boston, Massachusetts

46.    On October 30, 2006, a Dorchester, Massachusetts resident ("Standish Street Borrower") borrowed $260,000 from American Mortgage Network, Inc., d/b/a American Mortgage Network of MA. The loan was secured by a mortgage granted in favor of MERS, acting solely as a nominee for the lender and the lender's successors and assigns, on a property located at 14 Standish Street, Unit 3, Dorchester (Boston), Massachusetts (the "Standish Street Mortgage").

47.    On March 13, 2008, March 20, 2008, and March 27, 2008, GMAC caused Notices of Mortgagee's Sale of Real Estate to be published in the Boston Herald, representing that GMAC was "the present holder" of the Standish Street Mortgage, and noticing April 4, 2008 as the date for a sale of the subject property at public auction.

48.    On April 4, 2008, GMAC sold the property at auction.

49.      On April 15, 2008, GMAC caused to be recorded a notarized Certificate of

Entry (the "Standish Street Certificate of Entry"). The Standish Street Certificate of

Entry states that, on April 4, 2008, "Joshua Montout, attorney-in-fact and agent of

[GMAC] . . . the current holder of a certain mortgage given by [the Standish Street

Borrower]" made an entry onto the property located at 14 Standish Street, Unit 3, Boston,

Massachusetts "for the purpose, by him/her declared, of foreclosing said mortgage for

breach of conditions thereof."

50.      GMAC was not the holder of the Standish Street Mortgage when it: (a)

caused notices of sale of the subject property to be published on March 13, 20 and 27,

2008; (b) subsequently sold the property at auction on April 4, 2008; or (c) made entry

on the subject property on April 4, 2008 to foreclose on the mortgage. In fact, it was not

until April 9, 2008 that MERS, the record holder of the mortgage, assigned the Standish

Street Mortgage to GMAC.

## BANK OF AMERICA

### 15 Burning Tree Road, Swansea, Massachusetts

51.      On September 11, 2006, a Swansea resident ("Swansea Borrower")

borrowed $290,000 from Mortgage Lenders Network USA, Inc. ("MLN"). The loan was

secured by a mortgage granted in favor of MERS, acting solely as a nominee for the

lender and the lender's successors and assigns, on property located at 15 Burning Tree

Road, Swansea, Massachusetts (the "Swansea Mortgage").

52.      On October 22, 2007, October 29, 2007 and November 5, 2007, LaSalle

Bank, N.A. ("LaSalle Bank") caused to be published in the Fall River Herald News

pursuant to M.G.L. c. 244, § 14, a Notice of Mortgagee's Sale of Real Estate, stating that

LaSalle Bank was "the present holder" of the Swansea Mortgage, and noticing December 13, 2007 as the date for a sale of the subject property at public auction.

53.    On February 28, 2008, LaSalle Bank sold the property at auction.

54.    On May 16, 2008, LaSalle Bank caused to be recorded a notarized Certificate of Entry (the "Swansea Certificate of Entry"). The Swansea Certificate of Entry states that, on February 28, 2008, "Joshua Montout, attorney-in-fact and agent of [LaSalle Bank] . . . the current holder of a certain mortgage given by [the Swansea Borrowers]" made an entry onto the property located at 15 Burning Tree Road, Swansea, Massachusetts "for the purpose, by him/her declared, of foreclosing said mortgage for breach of conditions thereof." Although the Swansea Certificate of Entry claims an entry on February 28, 2008, it was signed and notarized on January 8, 2008.

55.    LaSalle Bank was not the holder of the Swansea Mortgage when it: (a) caused notices of sale of the subject property to be published on October 22, 29, 2007 and November 5, 2007; (b) subsequently sold the property at auction on February 28, 2008; or (c) made entry on the subject property on February 28, 2008 to foreclose the mortgage. It was not until May 13, 2008, that MERS, the record holder of the mortgage, assigned the Swansea Mortgage to LaSalle Bank.

56.    On or about October 1, 2007, Bank of America acquired LaSalle Bank, including all of its obligations and liabilities relating to the Swansea Mortgage arising prior to October 1, 2007, and is the successor-in-interest to LaSalle Bank with respect to all such obligations and liabilities. After October 1, 2007, Bank of America assumed custody and control of LaSalle Bank, including all conduct relating to the Swansea Mortgage, and is responsible for all aspects of the foreclosure occurring after October 1.

2007, referenced above, including publication of the notices of sale and the subsequent auction of the property.

## WELLS FARGO

### 1   Marion Place, East Boston, Massachusetts

57.    On March 31, 2005, two Boston residents ("Marion Place Borrowers") borrowed $215,000 from WMC Mortgage Corp. ("MLN"). The loan was secured by a mortgage granted in favor of MERS, acting solely as a nominee for the lender and the lender's successors and assigns, on property located at 1 Marion Place, East Boston, Massachusetts (the "Marion Place Mortgage").

58.    On April 29, 2008, May 6, 2008, and May 13, 2008, Wells Fargo, N.A. on behalf of the certificate holders of Morgan Stanley ABS Capital Inc. Trust 2005-WMC5 Mortgage Pass Through Certificates, Series 2005-WMC5 ("Wells Fargo") caused to be published in the Boston Globe pursuant to M.G.L. c. 244, § 14, a Notice of Mortgagee's Sale of Real Estate, stating that Wells Fargo was "the present holder" of the Marion Place Mortgage, and noticing May 20, 2008 as the date for a sale of the subject property at public auction.

59.    On May 22, 2008, Wells Fargo sold the property at auction.

60.    On November 24, 2008, Wells Fargo caused to be recorded a notarized Certificate of Entry (the "Marion Place Certificate of Entry"). The Marion Place Certificate of Entry states that, on May 22, 2008, "Paul Fortey, attorney-in-fact and agent for [Wells Fargo] . . . the present holder of a certain mortgage given by [the Marion Place Borrowers]" made an entry onto the property located at 1 Marion Place, East

Boston, Massachusetts "for the purpose, by him/her declared, of foreclosing said mortgage for breach of conditions thereof."

61.    Wells Fargo was not the holder of the Marion Place Mortgage when it: (a) caused notices of sale of the subject property to be published on April 29, 2008, May 6, and 13, 2008; (b) subsequently sold the property at auction on May 22, 2008; or (c) made entry on the subject property on May 22, 2008 to foreclose the mortgage. It was not until September 22, 2008, that MERS, the record holder of the mortgage, assigned the Marion Place Mortgage to Wells Fargo.

62.    The examples alleged at paragraphs 36 through 66, and the additional examples in Exhibit A hereto, are for illustrative purposes only and without limitation. Bank of America, Chase, Citi, GMAC, and Wells Fargo conducted hundreds of foreclosures where they were not the holder of the mortgage at the time of publication of notices of sale in violation of G.L. c. 244 § 14, nor at the time when entry was made to foreclose. Discovery in this action will identify the precise number of unlawful foreclosures by each of the Bank Defendants.

V.    CAUSE OF ACTION

Count I
Unfair or Deceptive Acts or Practices in Violation of G. L. c. 93A, §§ 2 and 4:
Foreclosing Without Being the Holder of the Mortgage

(as to the Bank Defendants)

63.    The allegations contained in the foregoing paragraphs are incorporated and re-alleged herein by reference.

64.    Each of the Bank Defendants initiated and completed foreclosure proceedings on properties located within Massachusetts when it was not the actual holder of the mortgage.

65.     Each of the Bank Defendants knew or should have known that it lacked the legal authority to foreclose without first becoming the holder of the mortgage.

66.     By foreclosing on properties without being the holder of the mortgage, each of the Bank Defendants knew or should have known that its conduct violated G. L. c. 244, §1, et seq., G. L. c. 183, § 21, and G. L. c. 93A, §§ 2 and 4, including, without limitation, by violating 940 C.M.R. 3.16.

## PRAYERS FOR RELIEF

WHEREFORE, the Commonwealth requests that this Court grant the following relief:

1.     After trial on the merits, enter judgment in favor of the Commonwealth and order that the defendants pay:

    a.   Civil penalties of $5,000 for each violation of G. L. c. 93A;

    b.   Attorneys' fees;

    c.   Costs; and

    d.   Other relief available under G. L. c. 93A.

2.     After a trial on the merits, enter judgment in favor of the Commonwealth including permanent injunctive and equitable relief, including:

    a.   Enjoining all defendants, and their officers, agents, servants, employees, attorneys, successors and assigns, and all other persons and entities, whether acting individually or in active participation or concert with them, directly or indirectly, or through any corporation, trust or other device, who receive actual notice of the order from initiating or advancing any foreclosure without first obtaining a valid, written assignment of the mortgage or other appropriate written documentation verifying that it is the holder of the mortgage; and

b.  Requiring each of the Bank Defendants to take all actions necessary to cure defects in title resulting from its foreclosure on mortgages secured by land within the Commonwealth where it was not the holder of such mortgages.

3.  The Commonwealth reserves the right to seek additional relief or orders, including relief available prior to the commencement of trial should the public interest so demand.

Respectfully Submitted,

COMMONWEALTH OF MASSACHUSETTS

MARTHA COAKLEY
ATTORNEY GENERAL

Amber Anderson Villa, BBO #647566
Sara Cable, BBO #667084
Justin J. Lowe, BBO #624857
*Assistant Attorneys General*
Stephanie Kahn, BBO #547477,
*Chief*, Consumer Protection Division
Public Protection and Advocacy Bureau
One Ashburton Place
Boston, MA 02108
(617) 727-2200
stephanie.kahn@state.ma.us
amber.villa@state.ma.us
sara.cable@state.ma.us
justin.lowe@state.ma.us

Christopher K. Barry-Smith, BBO #565698
*Deputy Attorney General*
Executive Bureau
One Ashburton Place

Dated: October 28, 2013
at Boston, Massachusetts.

# Exhibit A

to Commonwealth's First Amended Complaint

## EXHIBIT A

### BANK OF AMERICA

| Foreclosing Party | Property | Lender | Date of 1st Publication of Notice of Sale | Date of Purported Entry | Date of Auction | Execution Date of Assignment of Mortgage to Foreclosing Party |
|---|---|---|---|---|---|---|
| LaSalle Bank, N.A. as Trustee for MLMI Trust Series 2007-MLNI | 15 Burning Tree Road, Swansea, Bristol County | Mortgage Lenders Network USA, Inc. | 10/22/2007 | 2/28/08 | 2/28/2008 | 5/13/2008 |
| LaSalle Bank, N.A., as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2006 GSAMP Trust 2006-HE8 | 59 Vernon St., Worcester, Worcester County | SouthStar Funding LLC | 1/17/2008 | 2/7/2008 | 2/7/2008 | 5/8/2008 |
| Countrywide Home Loans, Inc. | 35 Riverwalk Way, Unit R118, Lowell, Middlesex County | Mortgage Partners, Inc. | 3/18/2008 | 4/9/2008 | 4/9/2008 | 4/15/2008[1] |
| LaSalle Bank National Association as Trustee for the C-Bass Mortgage Loan Asset-Backed Certificates | 43 Sparks Street, Lowell, Middlesex County | Fieldstone Mortgage Co. | 2/7/2008 | 2/28/2008 | 2/28/2008 | 5/14/2008 |

[1] On December 18, 2008, Countrywide Home Loans, Inc. attempted to correct the title defect by executing a "Corrective Assignment of Mortgage," which attempted to backdate the assignment of the subject mortgage to November 22, 2007.

| Series 2007-CB5 | | | | | | |
|---|---|---|---|---|---|---|
| Countrywide Home Loans, Inc. | 8 Elm Ct., Milbury, Worcester County | Countrywide Home Loans[2] | 6/18/2008 | 7/8/2008 | 7/8/2008 | 7/18/2008 |

---

[2] The holder of the mortgage at the time of the first publication of the notice of sale was MERS.

Exhibit A, page 2

CHASE

| Foreclosing Party | Property | Lender | Date of 1st Publication of Notice of Sale | Date of Purported Entry | Date of Execution of Foreclosure Deed | Execution Date of Assignment of Mortgage to Foreclosing Party |
|---|---|---|---|---|---|---|
| Chase Home Finance LLC | 38 Mascot Street, Unit 3, Boston, Suffolk County | JPMorgan Chase Bank, N.A. | 3/4/2008 | 3/26/2008 | 3/26/2008 | 7/2/2008 |
| Chase Home Finance LLC | 13 River Street, Mattapan, Suffolk County | Infinity Mortgage Co., Inc. | 9/2/2008 | 9/24/2008 | 9/24/2008 | 9/26/2008 |
| Chase Home Finance LLC | 75 Pine Hill Rd., Chelmsford, Middlesex County | JP Morgan Chase Bank, N.A. | 12/27/2007 | 1/17/2008 | 1/17/2008 | 4/29/2008 |
| Chase Home Finance LLC | 615 Nashua Rd. Unit 1, Dracut, Middlesex County | JP Morgan Chase Bank, N.A. | 7/25/2008 | 8/18/2008 | 8/18/2008 | 9/2/2008 |
| JPMorgan Chase Bank, N.A. as successor in interest to those assets of Washington Mutual | 61 Katrina Road, Middleboro, Plymouth County | American Home Mortgage | 10/9/2008 | 10/31/2008 | 10/31/2008 | 2/20/2009 |

CITIBANK, N.A.

| Foreclosing Party | Property | Lender | Date of 1st Publication of Notice of Sale | Date of Purported Entry | Date of Execution of Foreclosure Deed | Execution Date of Assignment of Mortgage to Foreclosing Party |
|---|---|---|---|---|---|---|
| Citibank, N.A. | 22 Deluca Road, Milford, Worcester County | Sallie Mae Home Loans, Inc. | 3/04/2008 | 4/23/2008 | 4/23/2008 | 5/21/2008 |
| Citibank, N.A. | 65 East India Row, Unit 31G of Harbor Towers II Condominium, Boston, Suffolk County | Washington Mutual Bank | 7/30/2008 | 8/20/2008[3] | 8/20/2008 | 11/17/2008 |
| Citibank, N.A. | 35-37 School Street, Northbridge, Worcester County | Fairfield Financial Mortgage Group, Inc. | 3/21/2008 | 4/14/2008 | 4/14/2008 | 9/4/2008 |
| Citibank, N.A. as Trustee for Structured Asset Mortgage Investments II, Inc. Bear Sters ALT-A Trust Mortgage Pass Through Certificates Series 2006-8 | 21 Fruit Street, Milford, Worcester County | Drew Mortgage Associates, Inc. | 5/12/2008 | 7/8/2008 | 7/8/2008 | 10/21/2008 |
| Citibank, N.A. | 23 Alton Drive, Dudley, Worcester County | Sallie Mae Home Loans, Inc. | 10/26/2007 | 12/20/2007 | 12/20/2007 | 5/20/2008 |

---

[3] Citibank, N.A. has since recorded a new certificate of entry that is reflects a purported date of entry of September 22, 2011, after the execution of the assignment. However, the three-year entry period has not yet run and the foreclosure by entry is not completed.

Exhibit A, page 4

## CITIMORTGAGE, INC.

| Foreclosing Party | Property | Lender | Date of 1st Publication of Notice of Sale | Date of Purported Entry | Date of Execution of Foreclosure Deed | Execution Date of Assignment of Mortgage to Foreclosing Party |
|---|---|---|---|---|---|---|
| Citimortgage, Inc. | 448 Slade Street, Fall River, Bristol County | Allied Home Mortgage Corp. | 9/9/2008 | 9/30/2008 | 9/30/2008 | 10/10/2008 |
| Citimortgage, Inc. | 8 Baker Street, Assonet (Freetown), Bristol Country | Capital One Home Loans, LLC | 4/14/2008 | 6/10/2008 | 6/10/2008 | 7/22/2008 |
| Citimortgage, Inc. | 33 Burns Street, Lowell, Middlesex County | Mortgage Master, LLC | 10/2/2008 | 10/23/2008 | 10/23/2008 | 11/7/2008 |
| Citimortgage, Inc. | 14 Bangor Street, Worcester, Worcester County | Principal Residential Mortgage, Inc. | 3/11/2008 | 4/2/2008 | 4/2/2008 | 4/16/2008 |
| Citimortgage, Inc. | 59 Autumn Circle, Holden, Worcester County | Merrimack Mortgage Co. | 7/23/2008 | 8/13/2008 | 8/13/2008 | 8/27/2008 |

Exhibit A, page 5

GMAC

| Foreclosing Party | Property | Lender | Date of 1st Publication of Notice of Sale | Date of Purported Entry | Date of Execution of Foreclosure Deed | Execution Date of Assignment of Mortgage to Foreclosing Party |
|---|---|---|---|---|---|---|
| GMAC Mortgage LLC | 14 Standish Street, Unit 3, Boston, Suffolk County | American Mortgage Network, Inc., d/b/a American Mortgage Network of MA | 3/13/08 | 4/04/08 | 4/4/2008 | 4/09/08 |
| GMAC Mortgage LLC | 4 Sumner Square, Boston, Suffolk County | 1-800 East-West Mortgage Company, Inc. | 11/21/07 | 3/12/08 | 3/12/2008 | 3/31/08 |
| GMAC Mortgage LLC | 2 Erica Lane, Auburn, Worcester County | Lendia, Inc. | 2/27/08 | 3/26/08 | 3/26/08 | 3/31/08[4] |
| GMAC Mortgage LLC | 27 Oak Street, Gardner, Worcester County | WMC Mortgage Corp. | 2/22/08 | 3/18/08 | 3/18/08 | 4/16/08[5] |
| GMAC Mortgage LLC | 14 West Chester St., Worcester, Worcester County | Mortgage Financial Inc. | 11/13/2007 | 12/27/2007 | 12/27/2007 | 3/27/2008 |

[4] On July 29, 2008, GMAC Mortgage LLC attempted to correct the title defect by executing a "Confirmatory Assignment of Mortgage," which attempted to backdate the assignment of the subject mortgage to November 12, 2007.
[5] On May 21, 2008, GMAC Mortgage LLC attempted to correct the title defect by executing a "Corrective Assignment of Mortgage," which attempted to backdate the assignment of the subject mortgage to January 14, 2008.

Exhibit A, page 6

WELLS FARGO BANK, N.A.

| Foreclosing Party | Property | Lender | Date of 1st Publication of Notice of Sale | Date of Purported Entry | Date of Execution of Foreclosure Deed | Execution Date of Assignment of Mortgage to Foreclosing Party |
|---|---|---|---|---|---|---|
| Wells Fargo, N.A. on behalf of certificateholders of Morgan Stanley ABS Capital Inc. Trust 2005-WMC5 Mortgage Pass Through Certificates, Series 2005-WMC5 | 1 Marion Place, East Boston, Suffolk County | WMC Mortgage Corp. | 4/29/2008 | 5/22/2008 | 5/22/2008 | 9/22/2008 |
| Wells Fargo Bank, N.A. as trustee for certificateholders of Bear Stearns Asset Backed Securities I LLC Asset Backed Certificates Series 2007-AC5 | 63 Festa Rd., Revere, Suffolk County | Community Lending, Inc. | 4/29/2008 | 5/21/2008 | 5/21/2008 | 11/12/2008 |
| Wells Fargo Bank, N.A. | 380-382 Elmwood Rd., Winchendon, Worcester County | Heartland Home Finance, Inc. | 12/19/2007 | 1/21/2008 | 1/21/2008 | 3/18/08[6] |

---

[6] On January 9, 2009, Wells Fargo Bank, N.A. attempted to correct the title defect by executing a "Corrective Assignment of Mortgage," which attempted to backdate the assignment of the subject mortgage to September 5, 2007.

| | | | | | | |
|---|---|---|---|---|---|---|
| Wells Fargo Bank, N.A. | 61 Bean Rd., Sterling, Worcester County | Drew Mortgage Associates, Inc. | 2/22/2008 | 3/19/2008 | 3/19/2008 | 3/31/08[7] |
| Wells Fargo, N.A. on behalf of Certificateholders Park Place Securities Inc. Asset-Backed Pass Through Certificate Series 2005-WCWI | 7 Crowningshield Road, Worcester, Worcester County | Argent Mortgage, Co. | 6/19/2008 | 7/11/2008 | 7/11/2008 | 8/27/2008 |

---

[7] On November 7, 2008, Wells Fargo Bank, N.A. attempted to correct the title defect by executing a "Corrective Assignment of Mortgage," which attempted to backdate the assignment of the subject mortgage to October 31, 2007.

Exhibit A, page 8

## CERTIFICATE OF SERVICE

I, Amber Anderson Villa, Esq., hereby certify that on this 28th day of October 2013, I caused to be served a copy of the foregoing by United States First Class mail, postage prepaid, upon the following:

R. Bruce Allensworth
Michael D. Ricciuti
Ryan M. Tosi
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950

Paul F. Ware, Jr. Esq.
Richard A. Oetheimer, Esq.
GOODWIN PROCTER, LLP
Exchange Place
53 State Street
Boston, MA 02109

Thomas F. Reilly, Esq.
Nicholas D. Stellakis, Esq.
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA 02110

Thomas M. Hefferon, Esq.
GOODWIN PROCTER, LLP
901 New York Avenue NW
Washington, DC 20001

Lucia Nale, Esq.
Thomas V. Panoff, Esq.
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606

Dana C. Lumsden, Esq.
Robert Maddox, Esq.
BRADLEY, ARANT BOULT CUMMINGS LLP
1615 L Street, N.W., Suite 1350
Washington, DC 20036

Mary Beth Hogan, Esq.
Philip A. Fortino, Esq.
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022

Matthew A. Martel, Esq.
Joseph B. Sconyers
JONES DAY
100 High Street, 21st Floor
Boston, MA 02110

Thomas O. Bean, Esq.
VERRILL DANA LLP
1 Boston Place Suite 2330
Boston, MA 02108

_____
Amber Anderson Villa, Esq.
Oct. 28, 2013