**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, | ) | Case No. 12-12020 (MG) |
| Debtor. | ) | |
| | ) | Adv. Proceeding No. 14-02008 MG |
| RESCAP LIQUIDATING TRUST, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PHH MORTGAGE CORP., | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PHH MORTGAGE CORPORATION'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO WITHDRAW**
**THE REFERENCE AND TRANSFER VENUE TO THE DISTRICT OF MINNESOTA**


Dated:  July 11, 2014                          Respectfully submitted,


  _/s/ Daniel F. Markham_                      ___/s/ David M. Souders____

Daniel F. Markham                            David M. Souders (*pro hac vice*)
Daniel S. Weinberger                          Tessa K. Somers (*pro hac vice*)
GIBBONS, P.C.                                Weiner Brodsky Kider PC
One Pennsylvania Plaza                        1300 19th Street, NW, Fifth Floor
New York, NY 10119                           Washington, D.C.  20036
(212) 613-2043                               (202) 628-2000
(212) 554-9643                               (202) 628-2011 (Fax)
dmarkham@gibbonslaw.com                       souders@thewbkfirm.com
dweinberger@gibbonslaw.com                    somers@thewbkfirm.com

***Counsel for PHH Mortgage Corporation***     ***Counsel for PHH Mortgage Corporation***

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ....................................................................................................... 1

BACKGROUND ........................................................................................................ 1

ARGUMENT ............................................................................................................. 4

    I.       Withdrawal of the Reference and Transfer to the District of Minnesota are
            Required by the Parties' Forum-Selection Clause ................................................ 4

    II.      Withdrawal of the Reference and Transfer to the District of Minnesota are
            Supported by Analysis of 28 U.S.C. § 1404(a) Factors ........................................ 8

    III.     The *Orion* Factors Favor Withdrawal of the Reference and Transfer to
            Minnesota ........................................................................................................ 11

          a.      RFC's Alleged Claims Against PHH Mortgage are Not "Core" .............. 11

          b.      Even if RFC's Alleged Claims Were "Core," the Bankruptcy
                Court Lacks Final Adjudicatory Authority Over Them ........................... 15

          c.      Adjudication of RFC's Alleged Claims in Minnesota Is the
                Most Efficient Use of Judicial Resources .................................................. 17

          d.      Litigating RFC's Alleged Claims in the Bankruptcy Court Will
                Delay Final Adjudication, Add Expense, and Hamper Access to
                Witnesses and Other Evidence ................................................................. 18

          e.      The Court Should Not Countenance RFC's Blatant Forum-Shopping ..... 19

    IV.     The Bankruptcy Court Lacks Post-Confirmation Jurisdiction Over
            RFC's Alleged Claims Against PHH Mortgage ................................................. 20

CONCLUSION ......................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl. Marine Constr. Co. v. United States Dist. Court*,
    134 S. Ct. 568 (2013) ........................................................................5, 7, 9

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
    462 B.R. 457 (S.D.N.Y. 2011) ...........................................................15, 16, 21

*DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*,
    464 B.R. 587 (S.D.N.Y. 2012) ...........................................................12

*In re Durso Supermarkets*,
    170 B.R. 211 (S.D.N.Y. 1994) ...........................................................13, 14

*Dynegy Danskammer, LLC v. Peabody COALTRADE Int'l Ltd.*,
    905 F. Supp. 2d 526 (S.D.N.Y. 2012) ................................................13, 16

*Exec. Benefits Ins. Agency v. Arkinson*,
    Case No. 12-1200, __ S. Ct. __, 2014 U.S. LEXIS 3993 (June 9, 2014) ................16

*GMAC/ Residential Funding Corp. v. Infinity Mortg., Inc.*,
    Civ. No. 02-4090, 2003 U.S. Dist. LEXIS 10289 (D. Minn. June 13, 2003) ...........6

*Goldberg Holding Corp. v. NEP Prods., Inc.*,
    93 B.R. 33 (S.D.N.Y. 1988) ...............................................................8

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989) ..........................................................................15

*Intellivision v. Microsoft Corp.*,
    484 F. App'x 616 (2d Cir. 2012) ........................................................7

*Kirschenbaum v. Fed. Ins. Co.* (*In re EMS Fin. Servs., LLC*),
    491 B.R. 196 (E.D.N.Y. 2013) ...........................................................14, 18

*Lawrence Grp. v. Hartford Cas. Ins. Co.* (*In re Lawrence Grp., Inc.*),
    285 B.R. 784 (N.D.N.Y. 2002) ...........................................................16, 18

*Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P.*,
    487 B.R. 158 (S.D.N.Y. 2013) ...........................................................11

*In re MGM Studios*,
    459 B.R. 550 (Bankr. S.D.N.Y. 2011) .................................................11, 12, 20

ii

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
   458 U.S. 50 (1982) ............................................................................12, 13, 15, 21

*New England Nat'l, LLC v. Town of East Lyme (In re New Eng. Nat'l, LLC)*,
   Case No. 02-33699 (LMW), 2012 Bankr. LEXIS 4204 (Bankr. D. Conn. Sept.
   11, 2012) ..................................................................................................................20

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ............................................................................................7, 19

*Nw. Airlines, Inc. v. Los Angeles (In re Nw. Airlines Corp.)*,
   384 B.R. 51 (S.D.N.Y. 2008) ................................................................4, 12, 14, 20

*Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*,
   4 F.3d 1095 (2d Cir. 1993) ..........................................................11, 13, 16, 17, 21

*Park Ave. Radiologists, P.C. v. Melnick (In re Park Ave. Radiologists, P.C.)*,
   450 B.R. 461 (Bankr. S.D.N.Y. 2011) ...................................................................21

*Residential Funding Co., LLC v. Terrace Mortg. Co.*,
   725 F.3d 910 (8th Cir. 2013) ..............................................................................6, 9

*RFC v. Cherry Creek Mortg. Co., Inc.*,
   13-cv-3449, 2014 U.S. Dist. LEXIS 59159 (D. Minn. Apr. 29, 2014) ............3, 7, 10

*Savoy Senior Hous. Corp. v. TRBC Ministries, LLC*,
   401 B.R. 589 (S.D.N.Y. 2009) ...............................................................................20

*Solutia Inc. v. FMC Corp.*,
   Case No. 04-cv-2842, 2004 U.S. Dist. LEXIS 14137 (S.D.N.Y. July 27, 2004) ...................16

*South St. Seaport Ltd. Pshp. v. Burger Boys (In re Burger Boys)*,
   94 F.3d 755 (2d Cir. 1996) .....................................................................................16

*Stern v. Marshall*,
   131 S. Ct. 2594 (2011) .............................................................................15, 16, 21

*In re U.S. Lines, Inc.*,
   197 F.3d 631 (2d Cir. 1999) ...................................................................................12

*VWE Grp., Inc. v. Amlicke (In re VWE Grp., Inc.)*,
   359 B.R. 441 (Bankr. S.D.N.Y. 2007) ......................................................11, 12, 15

**Statutes**

28 U.S.C. § 157(b)(2)(C) .............................................................................................13

28 U.S.C. § 157(b)(2)(O) .............................................................................................13

iii

28 U.S.C. § 157(c)(1)...........................................................................................................12

28 U.S.C. § 157(d) .........................................................................................................1, 11

28 U.S.C. § 157(e) ..............................................................................................................15

28 U.S.C. § 1334(b) ...........................................................................................................20

28 U.S.C. § 1391 .................................................................................................................10

28 U.S.C. § 1391(b)(1)-(2) ................................................................................................10

28 U.S.C. § 1391(b)(2) .....................................................................................................2, 6

28 U.S.C. § 1404 ..................................................................................................................4

28 U.S.C. § 1404(a) ...................................................................................................1, 8, 9, 10

## INTRODUCTION

Defendant PHH Mortgage Corp. respectfully submits this memorandum of law in support of its Motion, pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011(a), and Local Bankruptcy Rule 5011-1, for an order withdrawing the reference of this adversary proceeding from the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") and, pursuant to the parties' mandatory forum-selection clause and 28 U.S.C. § 1404(a), transferring venue to the United States District Court for the District of Minnesota ("District of Minnesota").  PHH Mortgage requests a hearing on this matter.

## BACKGROUND

On or about May 13, 1998, Cendant Mortgage (n/k/a PHH Mortgage Corp., hereinafter referred to as "PHH Mortgage") and Residential Funding Corporation ("RF Corp.") entered into a Client Contract, under which PHH Mortgage would sell certain mortgage loans to RF Corp. *ResCap Liquidating Trust v. PHH Mortgage Corp.*, Adv. Proc. No. 14-02008, ECF No. 1 ("Bankr. Compl."), Ex. A.  On or about September 1, 2006, the parties entered into a Mortgage Loan Flow Purchase, Sale & Servicing Agreement ("Flow Agreement"), which also provided for the sale of loans from PHH Mortgage to RF Corp.  *Id.*[1]

Residential Funding Company, LLC ("RFC") and its affiliates filed for Chapter 11 bankruptcy protection in May 2012.  Bankr. Compl. ¶ 65.  RFC alleges that its Chapter 11 bankruptcy plan ("the Plan") was confirmed by the Bankruptcy Court on December 11, 2013.  Bankr. Compl. ¶ 10.

---

[1] Because RFC has not actually identified a single loan that was originated by PHH Mortgage, PHH Mortgage expressly denies that Exhibits A and B to the Bankruptcy Complaint constitute the entire—or even the applicable—agreement between the parties.  However, insofar as RFC relies upon these documents, it is bound by their terms.

1

On or about December 14, 2013, RFC filed a complaint against PHH Mortgage in the

District of Minnesota ("Minn. Compl.," attached hereto as Attachment 1, along with Ex. A to

Minn. Compl.).  In its Minnesota Complaint, RFC alleged purely state law causes of action for

breach of contract and contractual indemnification.  *See* Minn. Compl.  RFC asserted that it is a

Delaware company with its principal place of business in Minneapolis, Minnesota, and that PHH

Mortgage is a New Jersey corporation with its principal place of business in Mount Laurel, New

Jersey. *Id.* ¶ 13-14.  Within days, RFC had filed nearly identical complaints against more than

80 other entities, almost all in the District of Minnesota.[2]  In RFC's Minnesota Complaint against

PHH Mortgage, it alleged that "[v]enue is proper in [Minnesota] pursuant to 28 U.S.C. §

1391(b)(2), in that a substantial part of the events and omissions giving rise to this Complaint

occurred in Minnesota, and because the parties have contractually agreed that Minnesota is an

appropriate venue."  Minn. Compl. ¶ 15.  RFC's Minnesota Complaint made no allegations of

proper jurisdiction or venue in the Bankruptcy Court.

RFC voluntarily dismissed its Minnesota Complaint against PHH Mortgage on February

28, 2014, and on May 13, 2014, re-filed the same claims based on the same contracts, this time

in the name of ResCap Liquidating Trust and as an adversary proceeding in the Bankruptcy

Court.  *See RFC v. PHH Mortg. Corp.*, Case No. 13-03503, ECF No. 20 (Notice of Voluntary

Dismissal) and Bankr. Compl.  No motion practice or discovery has yet occurred in this case.

PHH Mortgage does not consent to adjudication of this matter in the Bankruptcy Court.

The Client Contract RFC appended to both its Minnesota Complaint and its Bankruptcy

Complaint includes a forum-selection clause that limits proper venue to courts in Hennepin

---

[2] *See, e.g.*, *RFC v. BMO Harris Bank, N.A.*, 13-cv-3523; *RFC v. Cherry Creek Mortg. Co., Inc.*, 13-cv-3449; *RFC v. Cornerstone Home Lending, Inc.*, 13-cv-3504; *RFC v. E Trade Bank*, 13-cv3496; *RFC v. PHH Mortgage*, 13-cv-3503.

2

County, Minnesota, and waives any argument of an inconvenient forum:

> Each of the parties *irrevocably submits to the jurisdiction of any state or federal court located in Hennepin County, Minnesota*, over any action, suit or proceeding to enforce or defend any right under this Contract or otherwise arising from any loan sale or servicing relationship existing in connection with this Contract, and each of the parties irrevocably agrees that all claims in respect of any such action or proceeding may be heard or determined in such state or federal court. Each of the parties *irrevocably waives the defense of an inconvenient forum* to the maintenance of any such action or proceeding and any other substantive or procedural rights or remedies it may have with respect to the maintenance of any such action or proceeding in any such forum. . . . Each of the parties further agrees not to institute any legal actions or proceedings against the other party . . . arising out of or relating to this Contract in any court other than as hereinabove specified in this paragraph 9.

Minn. Compl. Ex. A at 4, ¶ 9 and Bankr. Compl. Ex. A at 4, ¶ 9 (emphasis added). The Client

Contract also mandates the application of Minnesota law to the parties' disputes. *Id*. ¶ 10. The

Client Contract renders RFC's choice of forum in Minnesota "irrevocable." *Id.* ¶ 9.[3]

In nearly identical motions filed on or about March 4, 2014, RFC asked numerous

District of Minnesota judges presiding over its dozens of actions, to transfer those actions to the

Southern District of New York for referral to the Bankruptcy Court. The purported basis for

RFC's about-face was that the actions "related to" its bankruptcy proceedings in the Southern

District of New York. *See, e.g.*, *RFC v. Cherry Creek Mortg. Co., Inc.*, 13-cv-3449, ECF No. 17

(RFC Memo. ISO Mot. to Transfer Venue). In at least eleven Minnesota cases, RFC's motion to

transfer was denied;[4] none of RFC's motions to transfer were granted. *See, e.g., RFC v. First*

---

[3] The parties' Flow Agreement does not contain any forum-selection clause. *See* Bankr. Compl. Ex. A at 14-127. RFC has not identified which loans on Exhibit C correlate to which contract, but a number of loans on Exhibit C predate the 2006 Flow Agreement, suggesting they are subject to the Client Guide's Minnesota forum-selection clause.

[4] *See* Orders Denying RFC's Mot. to Transfer: *RFC v. BMO Harris Bank, N.A.*, 13-cv-3523, ECF No. 41; *RFC v. Cherry Creek Mortg. Co., Inc.*, 13-cv-3449, 2014 U.S. Dist. LEXIS 59159 (D. Minn. Apr. 29, 2014); *RFC v. Cornerstone Home Lending, Inc.*, 13-cv-3504, ECF No. 30; *RFC v. E Trade Bank*, 13-cv-3496, ECF No. 41; *RFC v. First Citizens Bank and Trust Co., Inc.*,

3

*Guar. Mortg. Corp.*, 13-cv-3514, ECF No. 33 (Order Denying Transfer to Bankruptcy Court)

("RFC's Motions are easily rejected[.]").

      PHH Mortgage hereby requests a jury trial on all of RFC's purported claims, and does

not consent to a trial conducted by the Bankruptcy Court.

## ARGUMENT

**I.    Withdrawal of the Reference and Transfer to the District of Minnesota are
Required by the Parties' Forum-Selection Clause**

      In *Northwest Airlines*, faced with a motion to withdraw the reference to the Bankruptcy

Court and to transfer the proceedings to California, a court in this District noted that "[t]he

principal basis for withdrawal results from the second barrel of the City's motion, its request for

a transfer to [California] under 28 U.S.C. § 1404." *Nw. Airlines, Inc. v. Los Angeles* (*In re Nw.

Airlines Corp.*), 384 B.R. 51, 59 (S.D.N.Y. 2008).  Likewise, PHH Mortgage begins with its

request for transfer to the District of Minnesota because its arguments in favor of transfer so

strongly support both the withdrawal of the reference to the Bankruptcy Court and the transfer

itself.

      The *Northwest Airlines* court found that there were no efficiencies to be gained in having

the bankruptcy judge decide the transfer motion, as a transfer by the bankruptcy judge would

lead to the case being transferred only to another bankruptcy court, rather than to the necessary

district court.  *Id.*  There was no forum-selection clause implicated in *Northwest Airlines*, but the

court nonetheless found that withdrawal and transfer were appropriate where the adversary

proceeding "raise[d] similar issues of contractual interpretation to those in the California Action,

arising out of similar contract language," and where "[t]ransferring venue to [California] will not

---

13-cv-3514, ECF No. 33; *RFC v. First Guar. Mortg. Corp.*, 13-cv-3514, ECF No. 33; *RFC v.
First Mortg. Corp.*, 13-cv-3490, ECF No. 36; *RFC v. Fremont Bank*, 13-cv-3470, ECF No. 40;
*RFC v. Impac Funding Corp.*, 13-cv-3506, ECF No. 46; *RFC v. Mortg. Capital Associates, Inc.*,
13-cv-3492, ECF No. 49; *RFC v. Sierra Pacific Mortg. Co., Inc.*, 13-cv-3511, ECF No. 74.

'duplicate efforts or costs' already expended before the Bankruptcy Court because the

Bankruptcy Court has never had occasion to analyze or interpret the [operative contract

provisions]." *Id.* at 60-61.  The same is true of the adversary proceeding RFC has brought

against PHH Mortgage, and the case for transfer here is that much stronger because the parties'

Client Contract mandates Hennepin County, Minnesota, as the only proper forum.

According to the Supreme Court, "a valid forum-selection clause should be given

controlling weight in all but the most exceptional cases."  *Atl. Marine Constr. Co. v. United*

*States Dist. Court*, 134 S. Ct. 568, 581 (2013) (internal quotation marks, brackets, and citation

omitted).  The basis for this rule is waiver.  "When parties agree to a forum-selection clause, they

waive the right to challenge the preselected forum as inconvenient or less convenient for

themselves or their witnesses, or for their pursuit of the litigation."  *Id.* at 582.

*Atlantic Marine* thus compels the withdrawal of the reference to the Bankruptcy Court

and transfer of RFC's Complaint against PHH Mortgage to the District of Minnesota—and it

explicitly shifts the burden of avoiding this Motion to RFC.  *Atl. Marine Constr. Co.*, 134 S. Ct.

at 581 ("[A]s the party defying the forum-selection clause, *the plaintiff bears the burden of*

*establishing that transfer to the forum for which the parties bargained is unwarranted*."

(emphasis added)).  The Client Contract signed by the parties states that the PHH Mortgage and

RFC "irrevocably submit[] to the jurisdiction of any state or federal court located in Hennepin

County, Minnesota."  Bankr. Compl. Ex. A at 4, ¶ 9.  Further, the contract states that the parties

"irrevocably waive[] the defense of an inconvenient forum" in Hennepin County, Minnesota.  *Id*.

Minnesota is also the *exclusive* proper venue for RFC's action.  *Id*. ("Each of the parties further

agrees not to institute any legal actions or proceedings against the other party . . . arising out of

or relating to this Contract in any court other than as hereinabove specified.").  In bringing its

5

alleged claims in the Bankruptcy Court, then, RFC is itself in breach of contract.

In the face of on-point Supreme Court precedent, and its own contract requirements, RFC attempts to dodge its contractual obligations by re-filing its claims in the Bankruptcy Court, claiming that "litigating the case in the Bankruptcy Court is necessary to ensure the prompt administration of justice for all parties." Bankr. Compl. ¶ 16. RFC's own actions defeat this and any other argument that this is a "most exceptional case" warranting a forum outside Minnesota:

- RFC first filed a Complaint against PHH Mortgage in Minnesota that stated: "[v]enue is proper in this court pursuant to 28 U.S.C. §§ 1391(b)(2), in that a substantial part of the events and omissions giving rise to this Complaint occurred in Minnesota, and because the parties have contractually agreed that Minnesota is an appropriate venue." Minn. Compl. ¶ 15.

- RFC is currently litigating about 70 similar actions based on substantially similar contracts—in the District of Minnesota.

- In the past, RFC itself has relied upon a Minnesota forum-selection clause—*identical* to the forum-selection clause in its Client Contract with PHH Mortgage—to successfully argue against transfer out of the District of Minnesota. *See GMAC/ Residential Funding Corp. v. Infinity Mortg., Inc.*, Civ. No. 02-4090 (PAM/JSM), 2003 U.S. Dist. LEXIS 10289, at *9 (D. Minn. June 13, 2003) (Magnuson, J.) ("The Court must enforce the parties' agreement, even when one party now desires to be released from its agreement. To hold otherwise promotes uncertainty in business relationships, because it implies that a contract containing language as plain as the language in this contract can be overlooked when it is convenient to do so.").

- The PACER (Public Access to Court Electronic Records) Case Locator reveals that Residential Funding Company, LLC, has availed itself of the services of the Minnesota federal judiciary as the plaintiff in over 100 civil actions in recent years, of which about 70 similar cases filed during its bankruptcy remain open.

- *Residential Funding Co., LLC v. Terrace Mortg. Co.*, 725 F.3d 910 (8th Cir. 2013) a judicial opinion which RFC cites in its Complaint against PHH Mortgage, was the affirmation of an opinion written by District of Minnesota Judge Susan Nelson. *See* Bankr. Compl. ¶ 31. RFC litigated the *Terrace* matter based on a contract similar to that at issue here. *Compare Residential Funding Co., LLC v. Terrace Mortg. Co.*, Case No. 09-cv-03455, Docket No. 1-1 (Ex. A) *with* Bankr. Compl. Ex. A. Judge Nelson, clearly familiar with the contractual language at issue, is currently presiding over five of RFC's actions based on similar contracts. *See RFC v. Academy Mortg. Co.*, Case No. 13-3451; *RFC v. First California*

6

*Mortg. Co.*, Case No. 13-3453; *RFC v. Provident Funding Assocs., L.P.*, Case No. 13-3485; *RFC v. T.J. Fin., Inc.*, Case No. 13-3515; and *RFC v. Universal Am. Mortg. Co., LLC*, Case No. 3519.

In further support of the conclusion that RFC's Complaint against PHH Mortgage is not a "most exceptional case" warranting avoidance of the forum-selection clause, the import of this forum-selection clause has already been addressed in similar cases RFC is pursuing in the District of Minnesota.  In at least eleven of those ongoing Minnesota cases, RFC's motion to transfer to the Bankruptcy Court was denied; not a single motion to transfer was granted.[5]  Each of these decisions was rendered on forum-selection clauses identical to, or less stringent than, that found in RFC's Client Contract with PHH Mortgage.  District of Minnesota Judge Joan Erickson was the first to consider and reject RFC's arguments for a forum in the Bankruptcy Court.  *RFC v. Cherry Creek Mortg. Co., Inc.*, 13-cv-3449, 2014 U.S. Dist. LEXIS 59159 (D. Minn. Apr. 29, 2014).  Judge Erickson applied *Atlantic Marine* in denying RFC's motion to transfer.  *Id.* at *11 ("To the extent Residential Funding argued that convenience factors favor transfer, the Court rejects Residential Funding's argument[.]" (citing *Atl. Marine Constr.*)).

RFC may not now take the position that Minnesota is not the proper forum for its claims, as this is contrary to the position it has previously taken, and which has repeatedly been adopted by the Minnesota courts.  *See, e.g., New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position[.]" (internal quotation marks, brackets, and citations omitted)); *see also Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) ("Courts have uniformly recognized that the purpose of the doctrine [of judicial estoppel] is to protect the integrity of the judicial process

---

[5] *See* n.4, *supra*.

by prohibiting parties from deliberately changing positions according to the exigencies of the moment, and because judicial estoppel is designed to prevent improper use of judicial machinery, it is an equitable doctrine invoked by the court in its discretion." (quotation marks omitted)).

In RFC's original Minnesota Complaint against PHH, it argued for proper jurisdiction and venue in the District of Minnesota and made no mention of jurisdiction in the Bankruptcy Court. *See* Minn. Compl. ¶ 15. Not only did RFC make a representation of proper jurisdiction and venue in Minnesota in each of its dozens of similar complaints there, but it also forced the question by way of multiple motions to transfer out of its originally-chosen forum. RFC must not now be heard to challenge its original representations to the District of Minnesota courts and the decisions of those courts. By the terms of the parties' Client Contract, RFC's claims must be withdrawn from the Bankruptcy Court and transferred to the District of Minnesota.

## II.    Withdrawal of the Reference and Transfer to the District of Minnesota are Supported by Analysis of 28 U.S.C. § 1404(a) Factors

In those cases where there is no contractually agreed-to forum, a motion to transfer venue for an action that is merely "related to" a bankruptcy proceeding is considered under 28 U.S.C. § 1404(a). *Goldberg Holding Corp. v. NEP Prods., Inc.*, 93 B.R. 33, 33-34 (S.D.N.Y. 1988). Pursuant to § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The "interests of justice" factor requires consideration of the parties' private interests, and public interests:

> Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action . . . Public-interest factors may include 'the administrative difficulties flowing from court congestion; the

8

local interest in having localized controversies decided at home; [and] the interest
in having the trial of a diversity case in a forum that is at home with the law.

*See Atl. Marine Constr. Co.*, 134 S. Ct. at 581 n.6 (citations omitted).[6]

Even if a forum-selection clause were not implicated in RFC's Complaint against PHH

Mortgage case, considerations under 28 U.S.C. § 1404(a) of the convenience of parties and

witnesses strongly favor transfer to Minnesota.  The parties will not be inconvenienced by

litigating this matter in Minnesota; RFC is already litigating about 70 similar cases there now.

RFC has repeatedly stated that likely witnesses are domiciled in Minnesota.  *See, e.g.*,

Attachment 2, hereto (*In re ResCap*, Case No. 12-12020, ECF No. 5537, ¶ 43 ("Most of [RFC's]

former employees reside in Minnesota and Pennsylvania, beyond the reach of a trial subpoena.")

and Attachment 3, hereto (*In re ResCap*, Case No. 12-12020, ECF No. 5701, ¶ 120 ("Discovery

in the MBIA cases . . . also illustrates a number of practical problems raised by the debtors'

current circumstances: the vast majority of the debtors' employees have left the company. . . .

Most of these former employees live in Minnesota and Pennsylvania, beyond the reach of a trial

subpoena."))．

Likewise, the "interest of justice" under 28 U.S.C. § 1404(a) favors transfer of this case

to Minnesota.  The inability to compel Minnesota witnesses to appear in New York works

against the "ease of access to sources of proof" and "availability of compulsory process for

attendance of unwilling . . . witnesses."  *Atl. Marine Constr. Co.*, 134 S. Ct. at 581 n.6 (citations

omitted).  In its Minnesota Complaint, RFC alleged that "a substantial part of the events and

omissions giving rise to [its] Complaint occurred in Minnesota," making it more likely that

evidence to support and rebut the claims might be found in Minnesota.  Minn. Compl. ¶ 15.

---

[6] According to *Atlantic Marine*, the parties' forum-selection clause would preclude consideration
of private interests; nonetheless, as the private interests support transfer, they are noted here.  *See
Atl. Marine Constr. Co.*, 134 S. Ct. at 582.

9

RFC makes no allegation that the events supporting its claims occurred in New York. The
public interest factor of "having localized controversies decided at home" and "the interest in
having the trial of a diversity case in a forum that is at home with the law" favor only one forum:
Minnesota. In her *Cherry Creek* opinion, District of Minnesota Judge Erickson agreed, stating:

> The interest of justice does not favor transfer of this action to the Southern
> District of New York. Although the representations and warranties that Cherry
> Creek Mortgage allegedly breached may be similar to or the same as those that
> form the basis of Residential Funding's claims against other correspondent
> lenders, resolution of Residential Funding's claims against Cherry Creek
> Mortgage will ultimately depend on the loans that Cherry Creek Mortgage sold to
> Residential Funding. The loan-level evaluation distinguishes this action from the
> others brought by Residential Funding, as well as the bankruptcy proceedings.
> This Court is not persuaded that the familiarity with Residential Funding acquired
> by the bankruptcy court is such that transfer of this action to the Southern District
> of New York is appropriate.

*Cherry Creek Mortg. Co., Inc.*, 2014 U.S. Dist. LEXIS 59159 at *11-12.

By statute, venue is proper where the defendant resides or "a judicial district in which a
substantial part of the events or omissions giving rise to the claim occurred, or a substantial part
of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(1)-(2). RFC alleged
that "a substantial part of the events and omissions giving rise to [its] Complaint occurred in
Minnesota." Minn. Compl. ¶ 15. In addition to the parties' forum-selection clause, then, venue
in Minnesota is proper pursuant to 28 U.S.C. § 1391.

PHH Mortgage's Motion to Withdraw the Reference and to Transfer Venue to the
District of Minnesota should be granted pursuant to the parties' mandatory forum-selection
clause. Transfer is also supported by the convenience of the parties and witnesses, and the
interest of justice under 28 U.S.C. § 1404(a).

III.    The *Orion* Factors Favor Withdrawal of the Reference and Transfer to
        Minnesota

    a.    RFC's Alleged Claims Against PHH Mortgage are Not "Core"

A "district court may withdraw . . . any case or proceeding referred [to the Bankruptcy

Court] on its own motion or on the timely motion of any party, for cause shown." 28 U.S.C. §

157(d).  "There is no specific time limit for applications under 28 U.S.C. § 157(d) to withdraw a

reference to the bankruptcy court."  *VWE Grp., Inc. v. Amlicke* (*In re VWE Grp., Inc.*), 359 B.R.

441, 446 (Bankr. S.D.N.Y. 2007).

While the statute does not define "cause" for withdrawal, in this Circuit, the factors

enumerated in *In re Orion Pictures Corp.* have long informed the determination of "cause" to

withdraw the reference to the Bankruptcy Court.  According to *Orion*:

> A district court considering whether to withdraw the reference should first
> evaluate whether the claim is core or non-core, since it is upon this issue that
> questions of efficiency and uniformity will turn.  For example, the fact that a
> bankruptcy court's determination on non-core matters is subject to *de novo* review
> by the district court could lead the latter to conclude that in a given case
> unnecessary costs could be avoided by a single proceeding in the district court. . .
> . [O]nce a district court makes the core/non-core determination, it should weigh
> questions of efficient use of judicial resources, delay and costs to the parties,
> uniformity of bankruptcy administration, the prevention of forum-shopping, and
> other related factors.

*Orion Pictures Corp. v. Showtime Networks* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1101 (2d

Cir. 1993).

As to the first step of this analysis, "a core proceeding is one that invokes a substantive

right under title 11, or could only arise in the context of a bankruptcy case."  *In re MGM Studios*,

459 B.R. 550, 555 (Bankr. S.D.N.Y. 2011).  "Non-core" proceedings are those that are not

"arising in" or "arising under" bankruptcy proceedings, but rather, are merely "related to"

bankruptcy proceedings.  *See Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P.*, 487

11

B.R. 158, 161-62 (S.D.N.Y. 2013).

> By statute, a bankruptcy court cannot finally adjudicate "non-core" claims:
>
> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1); *see also N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) (plurality opinion) (holding bankruptcy courts lack jurisdiction to adjudicate state law claims "related to" matters arising under bankruptcy law).

The District Court is empowered to make the "core" / "non-core" determination even though the Bankruptcy Court has not yet addressed the issue. *In re VWE Grp., Inc.*, 359 B.R. at 448 ("Courts of this circuit have held repeatedly that district courts may determine the nature of the proceeding in the first instance."); *see also In re Nw. Airlines Corp.*, 384 B.R. at 56; *accord DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 590-91 (S.D.N.Y. 2012).

As Minnesota state law claims for breach of contract and contractual indemnification, RFC's alleged claims against PHH Mortgage are "non-core" and therefore are not susceptible to final adjudication in the Bankruptcy Court. *See* 28 U.S.C. § 157(c)(1). RFC makes no allegation that its Complaint invokes a substantive right under title 11, nor are there any allegations that RFC's purported claims could only arise in the context of a bankruptcy case, as is required to find claims to be "core." *See In re MGM Studios*, 459 B.R. at 555; *see also DeWitt Rehab.*, 464 B.R. at 592 (citing *In re U.S. Lines, Inc.*, 197 F.3d 631 (2d Cir. 1999), in holding contractual indemnification claims non-core, even if accrued in bankruptcy). RFC has previously asserted

12

that its similar claims against other mortgage loan originators were merely "related to" its

bankruptcy. *See RFC v. HSBC Mortg. Corp.*, Case No. 14-00144, ECF No. 23 at 2 (Pl.'s Mem.

ISO Transfer to Bankruptcy Court) (D. Minn. Feb. 20, 2014).

RFC's assertion in its Complaint that "[t]his adversary proceeding is a core proceeding . .

. in that PHH filed proofs of claim numbers 4462 and 7173 against RFC and . . . in that it affects

the liquidation of the assets of the estate" is incorrect. *See* Compl. ¶ 15. RFC cites 28 U.S.C. §

157(b)(2)(C), which applies to "counterclaims by the estate against persons filing claims against

the estate," and 28 U.S.C. § 157(b)(2)(O), which applies to "other proceedings affecting the

liquidation of the assets of the estate or the adjustment of the debtor-creditor or equity security

holder relationship," as the purported basis for finding its claims against PHH Mortgage to be

"core" to its bankruptcy proceedings.

First, that RFC's claims might "affect[] the liquidation of the assets of the estate" does

not render them "core" under 28 U.S.C. § 157(b)(2)(O):

> The problem with [that] approach is that it creates an exception to *Marathon* that
> would swallow the rule. Any contract action that the debtor would pursue against
> a defendant presumably would be expected to inure to the benefit of the debtor
> estate and thus 'concerns' its 'administration.' . . . [Nonetheless,] the Adversary
> Proceeding remains a pre-petition contract action that the Supreme Court held in
> *Marathon* may not be finally adjudicated by a non-Article III judge.

*In re Orion*, 4 F.3d at 1102. RFC's argument was also rejected in *In re Durso Supermarkets*:

"[Debtor's] claim . . . may, if successful, enlarge the estate; however, that fact without more does

not affect 'the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the

equity security holder relationship.'" *In re Durso Supermarkets*, 170 B.R. 211, 214 (S.D.N.Y.

1994); *accord Dynegy Danskammer, LLC v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d

526, 532 (S.D.N.Y. 2012); *see also In re Nanodata Computer Corp.*, 74 Bankr. 766, 770-71

(W.D.N.Y. 1987) (rejecting argument that the importance of the proceeding to the debtor's

reorganization efforts and the fact that defendant had filed proof of claim merited "core" label).

Second, as to the proof of claim issue, the fact that PHH Mortgage filed a proof of claim

against RFC does not change the "non-core" status of RFC's allegations against PHH Mortgage:

> A non-core adversary proceeding will only be transformed into a core proceeding by virtue of the filing of a proof of claim . . . if (1) the proceeding arises out of the same transaction as the creditor's proof of claim or setoff claim, or (2) the adjudication of the adversary proceeding claim would require consideration of issues raised by the proofs of claim or setoff claim such that the two claims are logically connected.

*In re Nw. Airlines Corp.*, 384 B.R. at 58 (internal quotations and citation omitted); *see also In re

Durso Supermarkets, Inc.*, 170 B.R. at 213-14 (rejecting "core" label where purported

"counterclaim" did not arise out of same transaction or occurrence).  Neither requirement is met

in this case.

RFC's Complaint against PHH Mortgage is based on completely different facts and law

from PHH Mortgage's proof of claim, which was based on debts RFC owed for PHH Mortgage's

loan servicing activities.  By contrast, RFC's Complaint against PHH Mortgage makes

allegations based solely on mortgage origination activities, the latest of which occurred in 2006,

according to Exhibit C to the Complaint.  The operative facts for the servicing proof of claim and

for RFC's origination claims, by their very nature, occurred years apart and implicate different

evidence.  But even if RFC's Complaint met the two requirements of *Northern Airlines* such that

it could be construed as a "counterclaim," the Bankruptcy Court is still "constitutionally barred

from finally adjudicating a claim, notwithstanding its designation as core if (1) the counterclaim

would not be resolved by adjudication of the creditor's proof of claim; (2) the counterclaim was

not completely dependent upon adjudication of a claim created by federal law; and (3) the

creditor did not truly consent to resolution in the bankruptcy court."  *Kirschenbaum v. Fed. Ins.

Co. (In re EMS Fin. Servs., LLC)*, 491 B.R. 196, 202 (E.D.N.Y. 2013) (internal quotations and

citation omitted).

Additionally, where a counterclaim involves only private rights, the party against whom it is asserted is still entitled to a jury trial under the Seventh Amendment. *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 468 (S.D.N.Y. 2011) (citing *Marathon* and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989)). A bankruptcy court may only conduct a jury trial with the consent of both parties. 28 U.S.C. § 157(e). The *Dev. Specialists* court explained that "where a jury right is asserted, any consent to final adjudication in Bankruptcy Court must be express," and that such consent is not found where adjudication of a proof of claim would not necessarily resolve the counterclaim. *Dev. Specialists, Inc.*, 462 B.R. at 470-71 (citing *Stern v. Marshall*, 131 S. Ct. 2594 (2011)).

PHH Mortgage has claimed its right to trial by an Article III jury, and does not consent to a trial conducted by the Bankruptcy Court; this is "cause" for withdrawal of the reference. *In re VWE Grp., Inc.*, 359 B.R. at 446 ("[A] finding that plaintiff's . . . claim against the defendants is non-core means that defendants have a right to a jury trial, which gives rise to 'cause' for withdrawing the reference of the claim to the bankruptcy court.").

### b. Even if RFC's Alleged Claims Were "Core," the Bankruptcy Court Lacks Final Adjudicatory Authority Over Them

The "core" label, itself, is no longer determinative of a bankruptcy court's authority to finally adjudicate a conflict. In *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the Supreme Court held that as a matter of constitutional law, the bankruptcy court could not enter final judgment on the common law claim that had been referred to it, even though the claim was categorized as "core" to the bankruptcy proceedings:

> Article III could neither serve its purpose in the system of checks and balances nor preserve the integrity of judicial decisionmaking if the other branches of the Federal Government could confer the Government's 'judicial Power' on entities

15

> outside Article III. . . .  When a suit is made of the stuff of the traditional actions
> at common law . . . and is brought within the bounds of federal jurisdiction, the
> responsibility for deciding that suit rests with Article III judges in Article III
> courts.

*Stern v. Marshall*, 131 S. Ct. at 2609 (quotation marks and citations omitted).  A bankruptcy court in such cases may, at most, only issue proposed findings of fact and conclusions of law, which then receive *de novo* review in the district court.  *Exec. Benefits Ins. Agency v. Arkinson*, Case No. 12-1200, __ S. Ct. __, 2014 U.S. LEXIS 3993 (June 9, 2014).  RFC's alleged claims against PHH Mortgage are based solely in state common law.  As such, any determinations in the matter by the Bankruptcy Court would require *de novo* review.

Keeping in mind that RFC's claims against PHH Mortgage, whether construed as "core" or "non-core," cannot be finally determined by the Bankruptcy Court, the analysis turns to the remaining *Orion* factors:[7]  (1) the most efficient use of judicial resources; (2) the delay and costs to the parties; (3) the uniform administration of bankruptcy law; (4) the prevention of forum-shopping; and (5) other related factors.  *See S. St. Seaport Ltd. Pshp. v. Burger Boys* (*In re Burger Boys*), 94 F.3d 755, 762 (2d Cir. 1996) (citing *In re Orion Pictures Corp.*).  As an initial matter, because RFC's Complaint against PHH Mortgage is "non-core," it will have very little impact on the third consideration; the uniformity of the administration of bankruptcy law.  *See Lawrence Grp. v. Hartford Cas. Ins. Co.* (*In re Lawrence Grp., Inc.*), 285 B.R. 784, 789 n.5 (N.D.N.Y. 2002); *see also Dynegy Danskammer, LLC*, 905 F. Supp. 2d at 533 ("Courts routinely find no benefit [to uniformity of bankruptcy administration] where claims are based on state law."); *Solutia Inc. v. FMC Corp.*, Case No. 04-cv-2842, 2004 U.S. Dist. LEXIS 14137 at *11

---

[7] The "core" label is not determinative post-*Stern*, but the *Orion* factors still apply to motions to withdraw the reference:  "the *Orion* standard – developed under the assumption that final adjudicative authority exists over 'core' matters – is easily adapted to the lessons of *Stern*."  *Dev. Specialists, Inc.*, 462 B.R. at 464; *accord Dynegy Danskammer, LLC*, 905 F. Supp. 2d 526.

(S.D.N.Y. July 27, 2004) ("[T]he issues in this dispute are exclusively state law matters

involving breach of contract . . .  As there are no bankruptcy-related issues here, this factor

weighs in favor of withdrawal of the reference.").  The remaining factors also strongly favor

withdrawal of the reference to the Bankruptcy Court and transfer to the District of Minnesota.

### c.  Adjudication of RFC's Alleged Claims in Minnesota Is the Most Efficient Use of Judicial Resources

Withdrawal of the reference and transfer to the District of Minnesota will result in the

most efficient adjudication of each party's rights and obligations with respect to RFC's

Complaint against PHH Mortgage.  This is particularly true because any determination of these

"non-core" claims by the Bankruptcy Court will require *de novo* review.  *See In re Orion*

*Pictures Corp.*, 4 F.3d at 1101.  As an initial matter, Minnesota law applies to RFC's claims

under the Client Contract.  Bankr. Compl. Ex. A at 4, ¶ 10.  No advantage will be gained by

litigating Minnesota law before a New York judge, rather than before a Minnesota judge.  This is

particularly true when Minnesota judges are already handling the majority of RFC's similar

actions against mortgage loan originators, based upon similar contracts.  By contrast, RFC

nowhere alleges that Bankruptcy Court Judge Martin Glenn has ever seen—let alone undertaken

meaningful analysis of—the contracts and evidence necessary to RFC's case against PHH

Mortgage.  Judge Glenn, having presided over RFC's bankruptcy, at best has some familiarity

with completely different contracts and facts surrounding RFC's sale of *securities* to investors—

not PHH Mortgage's sale of *mortgage loans* to RFC.[8]

No court need attempt to re-adjudicate RFC's bankruptcy.  But neither may RFC rely

---

[8] This distinction is not lost on RFC.  *See RFC v. UBS Real Estate Securities, Inc.*, Case No. 14-3039, ECF No. 6 at 24 (Pl.'s Opp'n to Def.'s Mot. to Withdraw the Reference) (S.D.N.Y. May 28, 2014) ("Moreover, [a case cited by UBS] concerned the statute of limitations as to repurchase claims relating to a *securitization*—not RFC's claims for breach of contract and indemnification relating to *mortgage loans*." (emphasis in original, citation omitted)).

upon its bankruptcy to supply the facts and law for its case against PHH Mortgage. The

substantive law, the contracts at issue, and the evidence required in RFC's case against PHH

Mortgage are not the same as those necessary to its bankruptcy proceeding. Because Minnesota

judges are already overseeing the great bulk of RFC's similar cases, there will be no efficiency to

be had in litigating this matter before the Bankruptcy Court.

> ### d.    Litigating RFC's Alleged Claims in the Bankruptcy Court Will Delay Final Adjudication, Add Expense, and Hamper Access to Witnesses and Other Evidence

Litigation in the Bankruptcy Court of the Southern District of New York is inconvenient

for PHH Mortgage and the likely witnesses in this case. RFC admits as much:  in its bankruptcy

proceeding, RFC's counsel testified that most of its former employees reside in Minnesota and

Pennsylvania. *See* Attachments 2-3. According to RFC, of the seventeen pre-petition private

securities cases filed against it, and which purportedly precipitated its decline, four were pursued

in Minnesota. Only three were heard in New York. *See* Attachment 2, ¶ 17-18. RFC even

specifically cites one of these Minnesota lawsuits as a basis for its Complaint against PHH

Mortgage. Bankr. Compl. ¶ 54 and 59 (citing the "Stichting complaint"). RFC's Minnesota

Complaint against PHH Mortgage alleged that "a substantial part of the events and omissions

giving rise to this Complaint occurred in Minnesota." Bankr. Compl. ¶ 16. This all suggests that

witnesses and other evidence are likely to be found in Minnesota.

In addition to the difficulty and expense—even impossibility—of bringing Minnesota

witnesses and evidence to New York, if RFC's Complaint is litigated first before the Bankruptcy

Court, this will require the District Court's *de novo* review of final rulings, which "will delay the

resolution of the contractual dispute and, consequently, the final administration of the bankruptcy

estate." *In re Lawrence Grp., Inc.*, 285 B.R. at 789 n.4; *see also In re EMS Fin. Servs., LLC*, 491

B.R. at 205.  Such duplicative effort, especially when Minnesota judges with authority to enter

final judgments are already presiding over RFC's similar actions, is properly avoided by

withdrawing the reference of this matter to the Bankruptcy Court and transferring it to the

District of Minnesota.

<b>e.   The Court Should Not Countenance RFC's Blatant Forum-Shopping</b>

After first filing its Complaint in the proper forum of the District of Minnesota, RFC now

seeks to revive its alleged claims in a forum it prefers, but which is barred by the very Client

Contract upon which it purports to seek recovery.  RFC, bankrupt or not, is bound by the

unequivocal, mandatory forum-selection clause of its Client Contract.  *See* Bankr. Compl. Ex. A

at 4, ¶ 9.  RFC's new contention that "[v]enue is proper in [the Bankruptcy Court] because these

claims relate to the bankruptcy cases of the Debtors" rings hollow in light of its prior allegation

that "[v]enue is proper in [Minnesota] . . . in that a substantial part of the events and omissions

giving rise to this Complaint occurred in Minnesota, and because the parties have contractually

agreed that Minnesota is an appropriate venue."  *Compare* Bankr. Compl. ¶ 16 *with* Minn.

Compl. ¶ 15.

Not only is the judiciary in Minnesota more familiar with the Client Contract and Client

Guide at issue here (consider the many pending cases and the *Terrace Mortgage* opinion), but

RFC itself has alleged that venue is proper in Minnesota.  *See* Minn. Compl. ¶ 16.  Prompted by

RFC's own motions, District of Minnesota judges confirmed that litigation would not be proper

in the Bankruptcy Court.[9]  RFC should not now be permitted to challenge its original

representations to the District of Minnesota judges and the decisions of those judges.  *See New

Hampshire v. Maine*, 532 U.S. at 749.  Withdrawal of the reference to the Bankruptcy Court and

---

[9] *See* n.4, *supra.*

19

transfer of this matter to Minnesota, the only proper forum, will end RFC's forum-shopping.

**IV.     The Bankruptcy Court Lacks Post-Confirmation Jurisdiction Over RFC's Alleged Claims Against PHH Mortgage**

The Bankruptcy Court not only lacks final adjudicatory authority over this matter, but also lacks jurisdiction because there is no "close nexus" between RFC's bankruptcy and its Complaint against PHH Mortgage. *See In re MGM Studios*, 459 B.R. at 556 ("[T]o invoke the bankruptcy court's post-confirmation jurisdiction a party must show that the [bankruptcy] plan provides for the retention of jurisdiction over the dispute, and the matter has a 'close nexus to the bankruptcy plan or proceeding.'"). RFC's Complaint does not allege a "close nexus;" nor does it allege that the Bankruptcy Plan retained jurisdiction over these claims. *See* Bankr. Compl.

Even where the bankruptcy plan purports to retain jurisdiction, bankruptcy case law has long recognized that after confirmation of the plan, such jurisdiction is not always proper because the bankruptcy court's jurisdiction shrinks. *In re MGM Studios*, 459 B.R. at 556; *see also In re Nw. Airlines Corp.*, 384 B.R. at 61 (noting that post-confirmation, "any presumption in favor of maintaining the venue . . . before the Bankruptcy Court is substantially weakened"). In addition, bankruptcy courts do not have constitutional authority to declare "exclusive" jurisdiction over *any* type of case, even a bankruptcy case, because district courts have original jurisdiction over each of the types of cases set forth at 28 U.S.C. § 1334(b). A bankruptcy court exists within the district court and cannot expand its own jurisdiction. *Savoy Senior Hous. Corp. v. TRBC Ministries, LLC*, 401 B.R. 589, 597 (S.D.N.Y. 2009).

As to the requirement of a "close nexus" between the alleged claims and the bankruptcy, conclusory allegations will not suffice: "[d]etermining whether the 'close nexus' test has been satisfied is a fact sensitive endeavor." *New England Nat'l, LLC v. Town of East Lyme* (*In re New Eng. Nat'l, LLC*), Case No. 02-33699 (LMW), 2012 Bankr. LEXIS 4204, at *15 (Bankr. D.

20

Conn. Sept. 11, 2012) (ordering the parties to prepare proposed findings of material fact to aid in the court's analysis of the "close nexus" test).  As explained above, RFC's alleged claims against PHH Mortgage do not share common facts or law with its bankruptcy.  There is no "close nexus" between RFC's claims against PHH Mortgage and RFC's bankruptcy, which makes jurisdiction in the Bankruptcy Court improper, as well as inefficient.

This Court's determination of the "core" / "non-core" issue *and* the "close nexus" issue are both required to establish post-confirmation jurisdiction in the Bankruptcy Court.  *Park Ave. Radiologists, P.C. v. Melnick* (*In re Park Ave. Radiologists, P.C.*), 450 B.R. 461, 468 (Bankr. S.D.N.Y. 2011) ("[S]atisfying the 'close nexus' test is necessary but not sufficient to establish post-confirmation jurisdiction.").  But even finding RFC's claims against PHH Mortgage to be "core," with a "close nexus" to RFC's bankruptcy case does not abrogate PHH Mortgage's right to a jury trial in an Article III court.  *See Stern v. Marshall*, 131 S. Ct. 2594; *see also Dev. Specialists, Inc.*, 462 B.R. at 470-71.  Just as in *Orion*, this "Adversary Proceeding remains a pre-petition contract action that the Supreme Court held in *Marathon* may not be finally adjudicated by a non-Article III judge."  *In re Orion*, 4 F.3d at 1102.

Because the Bankruptcy Court lacks jurisdiction over RFC's claims against PHH Mortgage, and additionally lacks final adjudicatory authority over the claims, the reference to the Bankruptcy Court should be withdrawn and the matter transferred to the District of Minnesota.

## CONCLUSION

Withdrawal of the reference and transfer of this case to the U.S. District Court of Minnesota is mandated by the Client Contract and Supreme Court precedent.  In addition, the United States Constitution protects PHH Mortgage from final adjudication in a bankruptcy court, and provides for trial by jury in an Article III court.  PHH Mortgage's Motion to Withdraw the Reference and to Transfer should be granted.

Dated:  July 11, 2014

Respectfully submitted,


  */s/ Daniel F. Markham*

    */s/ David M. Souders*    

Daniel F. Markham
Daniel S. Weinberger
GIBBONS, P.C.
One Pennsylvania Plaza
New York, NY 10119
(212) 613-2043
(212) 554-9643
dmarkham@gibbonslaw.com
dweinberger@gibbonslaw.com

David M. Souders (*pro hac vice*)
Tessa K. Somers (*pro hac vice*)
Weiner Brodsky Kider PC
1300 19th Street, NW, Fifth Floor
Washington, D.C.  20036
(202) 628-2000
(202) 628-2011 (Fax)
souders@thewbkfirm.com
somers@thewbkfirm.com

**Counsel for PHH Mortgage Corporation**

**Counsel for PHH Mortgage Corporation**