1

1

2 UNITED STATES BANKRUPTCY COURT

3 SOUTHERN DISTRICT OF NEW YORK

4 Case No. 12-12020-mg

5 Adversary Case Nos.: Listed on pages 2 to 7

6 - - - - - - - - - - - - - - - - - - - - -x

7 In the Matter of:

8

9 RESIDENTIAL CAPITAL, LLC, et al.,

10

11            Debtors.

12

13 - - - - - - - - - - - - - - - - - - - - -x

14

15            United States Bankruptcy Court

16            One Bowling Green

17            New York, New York

18

19            July 9, 2014

20            10:01 AM

21

22 B E F O R E:

23 HON. MARTIN GLENN

24 U.S. BANKRUPTCY JUDGE

25

1

2   Adversary proceeding: 14-01947-mg   ResCap Liquidating Trust v.

3   ACS Lending, Inc. et al.

4   Pretrial Conference

5

6   Adversary proceeding: 14-01948-mg ResCap Liquidating Trust v.

7   AEGIS USA, Inc.

8   Pretrial Conference

9

10   Adversary proceeding: 14-01950-mg ResCap Liquidating Trust v.

11   Allison Payment Systems, LLC

12   Pretrial Conference

13

14   Adversary proceeding: 14-01951-mg ResCap Liquidating Trust v.

15   Allium Partners, LLC

16   Pretrial Conference

17

18   Adversary proceeding: 14-01953-mg ResCap Liquidating Trust v.

19   RSA Security LLC d/b/a or f/k/a Archer Technologies

20   Pretrial Conference

21

22   Adversary proceeding: 14-01954-mg ResCap Liquidating Trust v.

23   Brokerpriceopinion.com, Inc.

24   Pretrial Conference

25

1

2  Adversary proceeding: 14-01955-mg ResCap Liquidating Trust v.

3  The Carlisle Group, Inc.

4  Pretrial Conference

5

6  Adversary proceeding: 14-01956-mg ResCap Liquidating Trust v.

7  Compass Group USA, Inc. d/b/a Eurest Dining Service

8  Pretrial Conference

9

10  Adversary proceeding: 14-01957-mg ResCap Liquidating Trust v.

11  Corelogic Credco, LLC d/b/a Credstar et al.

12  Pretrial Conference

13

14  Adversary proceeding: 14-01958-mg ResCap Liquidating Trust v.

15  Corelogic, Inc. f/k/a Dataquick Information System

16  Pretrial Conference

17

18  Adversary proceeding: 14-01959-mg ResCap Liquidating Trust v.

19  Document Technologies LLC d/b/a EED, a DTI Company

20  Pretrial Conference

21

22  Adversary proceeding: 14-01960-mg ResCap Liquidating Trust v.

23  First American Default Information Services LLC d/

24  Pretrial Conference

25

1

2 Adversary proceeding: 14-01961-mg ResCap Liquidating Trust v.

3 Gallup, Inc.

4 Pretrial Conference

5

6 Adversary proceeding: 14-01962-mg ResCap Liquidating Trust v.

7 Genpact International, Inc.

8 Pretrial Conference

9

10 Adversary proceeding: 14-01963-mg ResCap Liquidating Trust v.

11 Equifax Information Services LLC

12 Pretrial Conference

13

14 Adversary proceeding: 14-01964-mg ResCap Liquidating Trust v.

15 Greenway Solutions, LLC

16 Pretrial Conference

17

18 Adversary proceeding: 14-01965-mg ResCap Liquidating Trust v.

19 Hewlett-Packard Financial Services Company

20 Pretrial Conference

21

22 Adversary proceeding: 14-01967-mg ResCap Liquidating Trust v.

23 ISGN Fulfillment Services, Inc.

24 Pretrial Conference

25

1

2  Adversary proceeding: 14-01968-mg ResCap Liquidating Trust v.

3  ISGN Solutions, Inc.

4  Pretrial Conference

5

6  Adversary proceeding: 14-01969-mg ResCap Liquidating Trust v.

7  Liebert Corporation et al.

8  Pretrial Conference

9

10  Adversary proceeding: 14-01970-mg ResCap Liquidating Trust v.

11  Novitex Enterprise Solutions, Inc., f/k/a Pitney B

12  Pretrial Conference

13

14  Adversary proceeding: 14-01971-mg ResCap Liquidating Trust v.

15  Nuance Communications, Inc. f/k/a Varolii Corporat

16  Pretrial Conference

17

18  Adversary proceeding: 14-01972-mg ResCap Liquidating Trust v.

19  The Mortgage Partnership of America, L.L.C. d/b/a

20  Pretrial Conference

21

22  Adversary proceeding: 14-01973-mg ResCap Liquidating Trust v.

23  Quantitative Risk Management Incorporated

24  Pretrial Conference

25

1

2  Adversary proceeding: 14-01974-mg ResCap Liquidating Trust v.

3  Regulus Group II, LLC

4  Pretrial Conference

5

6  Adversary proceeding: 14-01975-mg ResCap Liquidating Trust v.

7  Office Environments, Inc.

8  Pretrial Conference

9  THIS MATTER IS SETTLED BUT NOT DISMISSED.

10

11  Adversary proceeding: 14-01977-mg ResCap Liquidating Trust v.

12  Streetlinks LLC d/b/a Streetlinks Lender Solutions

13  Pretrial Conference

14

15  Adversary proceeding: 14-01978-mg ResCap Liquidating Trust v.

16  Trans Union LLC

17  Pretrial Conference

18

19  Adversary proceeding: 14-01979-mg ResCap Liquidating Trust v.

20  Verint Americas Inc.

21  Pretrial Conference

22

23  Adversary proceeding: 14-01980-mg ResCap Liquidating Trust v.

24  Western Portfolio Analytics and Trading L.L.C. d/b

25  Pretrial Conference

1

2  Adversary proceeding: 14-01981-mg ResCap Liquidating Trust v.

3  Wolters Kluwer Financial Services U.S., Inc. et al

4  Pretrial Conference

5

6  Adversary proceeding: 14-01982-mg ResCap Liquidating Trust v.

7  Xerox Mortgage Services, Inc.

8  Pretrial Conference

9

10  Adversary proceeding: 14-01997-mg ResCap Liquidating Trust v.

11  Bank of America Corporation d/b/a Country Wide Home

12  Pretrial Conference

13

14  Adversary proceeding: 14-02006-mg ResCap Liquidating Trust v.

15  OCWEN Financial Corporation et al.

16  Pretrial Conference

17

18  Adversary proceeding: 14-02007-mg ResCap Liquidating Trust v.

19  Equifax Inc. d/b/a CSC Credit Services Inc.

20  Pretrial Conference

21

22

23

24

25

1

2    12-12020-mg    Residential Capital, LLC     Ch. 11

3

4    Doc# 6858 (related document(s)6817) Adjourned Hearing RE:

5    Motion for Relief from Stay filed by Jared B. Pearson on behalf

6    of Clifford Lantz.

7

8    (CC: Doc# 7020) Motion for Objection to Claim(s) Number: 7163,

9    7172, 7310, 7321, 7407, 7453, 7457, 7461, 7463 /Notice of the

10   ResCap Borrower Claims Trust's Objection to Claim Nos. 7163,

11   7172, 7310, 7321, 7407, 7453, 7457, 7461, and 7463 Filed By

12   Walter Olszewski.

13

14   (CC: Doc# 7017) Hearing RE: ResCap Borrower Claims Trusts

15   Objection to Proofs of Claim Filed By Frank Reed and Christina

16   Reed Pursuant to Section 502(b) of the Bankruptcy Code and

17   Bankruptcy Rule 3007.

18

19

20   Transcribed by:  Penina Wolicki

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

1
2  A P P E A R A N C E S :
3  MORRISON & FOERSTER LLP
4       Attorneys for ResCap Borrower Claim Trust
5       250 West 55th Street
6       New York, NY 10019
7
8  BY:   NORMAN S. ROSENBAUM, ESQ.
9
10 REED SMITH LLP
11      Attorneys for Borrower Claims Trust
12      599 Lexington Avenue
13      New York, NY 10022
14
15 BY:   SARAH K. KAM, ESQ.
16
17
18 REED SMITH LLP
19      Attorneys for Borrower Claims Trust
20      136 Main Street
21      Suite 250
22      Princeton, NJ 08540
23
24 BY:   KELLIE A. LAVERY, ESQ. (TELEPHONICALLY)
25

1

2   MORRISON & FOERSTER LLP

3          Attorneys for ResCap Liquidating Trust

4          250 West 55th Street

5          New York, NY 10019

6

7   BY:   JORDAN A. WISHNEW, ESQ.

8          JAMES A. NEWTON, ESQ.

9

10

11   PACHULSKI STANG ZIEHL & JONES

12          Attorneys for ResCap Liquidating Trust

13          780 Third Avenue

14          36th Floor

15          New York, NY 10017

16

17   BY:   JOHN A. MORRIS, ESQ.

18

19   PACHULSKI STANG ZIEHL & JONES

20          Attorneys for ResCap Liquidating Trust

21          10100 Santa Monica Boulevard

22          13th Floor

23          Los Angeles, CA 90067

24

25   BY:   JEFFREY P. NOLAN, ESQ. (TELEPHONICALLY)

1

2   TOGUT, SEGAL & SEGAL LLP

3           Attorneys for The Mortgage Partnership of America

4           One Penn Plaza

5           New York, NY 10119

6

7   BY:   JEFFREY R. GLEIT, ESQ.

8

9

10  VEDDER PRICE

11          Attorneys for Quantitative Risk Management

12          1633 Broadway

13          47th Floor

14          New York, NY 10019

15

16  BY:   MICHAEL L. SCHEIN, ESQ.

17

18  EVELAND & ASSOCIATES, PLLC

19          Attorneys for Clifford Lantz

20          8833 Redwood Road

21          West Jordan, UT 84088

22

23  BY:   JEREMY EVELAND, ESQ. (TELEPHONICALLY)

24          JARED B. PEARSON, ESQ. (TELEPHONICALLY)

25

 1

 2   NORTON & ASSOCIATES, LLC

 3          8 West 40th Street

 4          12th Floor

 5          New York, NY 10018

 6

 7   BY:   MICHAEL E. NORTON, ESQ.

 8

 9

10   SHEARMAN & STERLING LLP

11          Attorneys for Defendant Country Wide

12          599 Lexington Avenue

13          New York, NY 10022

14

15   BY:   JOHN GUELI, ESQ.

16

17

18   HUSCH BLACKWELL LLP

19          Attorneys for Defendant Liebert Corp

20          4801 Main Street

21          Suite 1000

22          Kansas City, MO 64112

23

24   BY:   BENJAMIN F. MANN, ESQ. (TELEPHONICALLY)

25

13

1

2  FRANK REED

3  PRO SE

4

5

6  FREEMAN, FREEMAN & SMILEY, LLP

7        Attorneys for Defendant AEGIS USA Inc.

8        1888 Century Park East

9        Suite 1900

10        Los Angeles, CA 90067

11

12  BY:   THEODORE B. STOLMAN, ESQ. (TELEPHONICALLY)

13

14

15  G.W. MERRICK & ASSOCIATES, LLC

16        Attorneys for Defendant Brokerpriceoption.com Inc.

17        6300 South Syracuse Way

18        Suite 220

19        Centennial, CO 80111

20

21  BY:   JOSEPH T. BERNSTEIN, ESQ. (TELEPHONICALLY)

22

23

24

25

1

2  ALSTON & BIRD LLP

3         Attorneys for Defendant Streetlinks LLC

4         1201 West Peachtree Street

5         Atlanta, GA 30309

6

7  BY:   JONATHAN T. EDWARDS, ESQ. (TELEPHONICALLY)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, ET AL.                    15

1              P R O C E E D I N G S

2          THE COURT:  Please be seated.  All right, we're here

3     in Residential Capital, number 12-12020.  It's also a number of

4     adversary proceedings, but I'll call those in order.

5          Mr. Wishnew?

6          MR. WISHNEW:  Good morning, Your Honor.  Jordan

7     Wishnew, Morrison & Foerster, counsel for the ResCap Borrower

8     Claims Trust.

9          Your Honor, the first contested matter on this

10    morning's calendar is the -- Mr. Lantz's motion for relief from

11    the automatic stay.

12         THE COURT:  All right.  I'm going to take things out

13    of order.  I want to take the objection to the claims of Walter

14    Olszewski.

15         MR. WISHNEW:  Okay.

16         THE COURT:  Is Mr. Olszewski present in the courtroom?

17         Is Mr. Olszewski present on the telephone?

18         The Olszewski matter will be taken under submission.

19         MR. WISHNEW:  Thank you very much, Your Honor.

20         Would you like to proceed, Your Honor, with the --

21         THE COURT:  Now I can go in the order of the agenda --

22    in whatever -- you want to start with Lantz?

23         MR. WISHNEW:  Okay.  I think jut for everyone in the

24    gallery's sake, we'll let Pachluski -- the Pachulski firm

25    pursue the adversary proceeding status conferences, and then

1    we'll go back to the Lantz stay relief motion.

2              THE COURT:  Okay.  That's fine.

3              Mr. Morris?

4              MR. MORRIS:  Good morning, Your Honor.  John Morris,

5    Pachulski Stang Ziehl & Jones, for the ResCap Liquidating

6    Trustee.

7              I have on the line, my colleague Jeff Nolan, who is

8    a --

9              THE COURT:  You have to speak up a little bit.

10             MR. MORRIS:  I have on the line, Your Honor, my

11   colleague Jeff Nolan, out in California.

12             THE COURT:  Okay.

13             MR. MORRIS:  Mr. Nolan has been handling these matters

14   on a day-to-day basis.  I'm here today, Your Honor, in the hope

15   that we can present to the Court a form of case management

16   order that would be used in each of the adversary proceedings.

17             THE COURT:  Okay.  Let me just read the list of case

18   numbers.

19             MR. MORRIS:  Um-hum.

20             THE COURT:  They all begin with 14, so I'll dispense

21   with the 14:  01947, 01948, 01950, 01951, 01997, 01954, 01956.

22   Am I duplicating?  No.

23             MR. MORRIS:  No, I don't believe so, Your Honor.

24             THE COURT:  No, okay.  01957, 01958, 01959, 02007,

25   01963, 01960, 01961, 01962, 01964, 01965, 01967, 01968, 01969,

RESIDENTIAL CAPITAL, LLC, ET AL.                    17

1    01970, 01971, 02006, 01975, 01973, 01974, 01953, 01977, 01955,

2    01972, 01978, 01979, 01980, 01981, 01982.  I believe that's all

3    of them.

4          MR. MORRIS:  That's correct, Your Honor.

5          THE COURT:  Okay.  So those are the group of

6    adversary -- they're all avoidance actions.  Is that correct,

7    Mr. Morris?

8          MR. MORRIS:  Preference actions, yes.

9          THE COURT:  They're all preference actions.

10         MR. MORRIS:  Um-hum.

11         THE COURT:  All right, go ahead, Mr. Morris.

12         MR. MORRIS:  So after being retained by the Trust, my

13   firm undertook a review of all potential preference claims that

14   the Trust could assert.  There were actually approximately 400

15   potential claims.  And after looking at the merits of each of

16   those claims, we wound up filing only forty complaints.  So I'd

17   like to think that we did a decent job in winnowing this down

18   to what we believe are meritorious claims.

19         About half a dozen of those suits have already been

20   settled.  So we're left, I think, with thirty-four or thirty-

21   five lawsuits.

22         THE COURT:  In the agenda you filed it showed four as

23   settled and one as matter settled but not dismissed -- settled

24   and dismissed it shows four, and one of them it shows as matter

25   settled but not dismissed.

 1          MR. MORRIS:  That's correct, Your Honor.  So I guess

 2     it's five and not six.  That fifth matter, Office

 3     Environmentalists, I believe, is the subject of a signed

 4     agreement, and they were just looking to get the stipulation

 5     filed, if it --

 6          THE COURT:  That's fine.

 7          MR. MORRIS:  -- hasn't already been filed.

 8          THE COURT:  Okay.

 9          MR. MORRIS:  So we've been in contact with counsel for

10     each of the defendants.  And we are trying to get to a place,

11     Your Honor, that would be most efficient for both the Trust,

12     the Court, and the defendants, taking into account, both the

13     flexibility that's needed to manage each individual case while

14     also trying to systematize this process in a way that we can

15     get this done quickly.

16          And so what we've done is we've taken Your Honor's

17     case management order, we've made some revisions to it.  I'd

18     like to hand up a blackline if I can, walk you through the

19     changes, and hopefully we can come to a place where each of the

20     case management orders can be entered for the adversary

21     proceedings.

22          Mr. Nolan has had a chance to speak with most of the

23     defendants or counsel to each of the defendants in these cases.

24     Everybody has either been supportive or non-oppositioned, is

25     what I'd say.

1          THE COURT:  Okay.  Why don't you hand it up?

2          MR. MORRIS:  Does anybody else want copies?

3          THE COURT:  Let me review it, okay?

4          MR. MORRIS:  You bet.

5      (Pause)

6          THE COURT:  All right, go ahead, Mr. Morris.

7          MR. MORRIS:  Your Honor, I'd like to begin in

8  paragraph 2.  What we seek in paragraph 2 is a uniform deadline

9  for responding to the complaints, a deadline that would be set

10  in early September, six or seven weeks from now.  The reason

11  for the request, Your Honor, is because several of the

12  defendants have made settlement offers.  Several of the

13  defendants have asserted a need for additional time because

14  people are on vacation.  Certain of the defendants have

15  submitted statements of position.  And we'd like to handle this

16  in a uniform way, and we hope that an extension -- a uniform

17  extension of approximately seven more weeks won't be

18  burdensome.

19          And once we begin with that date, then going back to

20  paragraph 1, we're simply extending to seventy-five days the

21  deadline for amending pleadings, so that if on September 2nd we

22  learned, for example, that we had identified a wrong subsidiary

23  of an entity, we would still have a couple of weeks to modify

24  that.

25          THE COURT:  Let me ask you, paragraph 2 --

1           MR. MORRIS:  Yes.

2           THE COURT:  -- of your proposed form of order, the two

3    sentences seem inconsistent to me.

4           MR. MORRIS:  You know, they probably ought to be

5    combined into one and to set a uniform date for service and

6    filing of any responsive pleading or motion.

7           THE COURT:  Yeah.  So I don't know what you were

8    intending with respect to the second sentence.  I'm happy to

9    set a uniform date.  Just bear with me.

10       (Pause)

11          THE COURT:  Okay, go ahead, Mr. Morris.

12          MR. MORRIS:  So we would request that that uniform

13   date be September 3rd.  And then in paragraph 3 we would ask

14   for a modest change to the Court's form of order which would

15   permit initial disclosures to be served two weeks after the

16   service of responsive pleadings, again, with the goal being

17   that if the parties are going to attempt to resolve the case

18   now, they want to minimize the cost.

19          In paragraph 4, we're extending from 120 days -- or

20   we're proposing to extend from 120 days to 180 days, the

21   completion of fact discovery.  I don't think that would be

22   necessary for each one of these cases, Your Honor, but several

23   of them -- and I could give examples if you'd like, are really

24   quite complicated, because there are multiple contracts between

25   the debtors and their vendors.  And we've got to establish how

1   each particular payment relates to each particular contract.

2            So with that additional, I guess, sixty days, and the

3   additional seven weeks at the beginning, we still expect and

4   contemplate that each of these cases would be completed within

5   a year.  But that's the basis for the request for the extension

6   from 120 to 180 is that some of these cases --

7            THE COURT:  What I would like you to do --

8            MR. MORRIS:  -- are difficult.  Um-hum?

9            THE COURT:  -- is in paragraph 4 -- what's 180 days?

10  I didn't --

11           MR. MORRIS:  Six months.

12           THE COURT:  No, I -- that I know, Mr. Morris.  That's

13  very helpful.  Do you know what date it is?

14           MR. MORRIS:  I think it's -- I think it's the end of

15  the year.  Well, if we took it --

16           THE COURT:  No, I want to know a specific date.

17           MR. MORRIS:  Right.  So if we --

18           THE COURT:  Not -- here's what I want.  Somebody have

19  their calculator or something, you can --

20           MR. MORRIS:  It's going to be approximately mid-

21  January.

22           THE COURT:  Yeah, I don't want an approximate date.  I

23  want to know what --

24           MR. MORRIS:  The only place I know to get that is in

25  the Redbook Diary.

1          THE COURT:  No.

2          MR. MORRIS:  I turned my phone off.

3          THE COURT:  January 5?

4          MR. MORRIS:  I'm told it's January 5th.  And as long

5    as that's not a Saturday or a Sunday, we're happy to take that.

6          THE COURT:  It's not.  It's a Monday.

7          What I'm going to do -- somebody might actually want

8    to take that weekend off and not have to worry about it.  So

9    I'm going to be so generous as to make it Friday January 9th at

10   5 o'clock.

11         MR. MORRIS:  Okay, thank you, Your Honor.

12         The next proposed change is --

13         THE COURT:  Wait, hold on.  Wait, stop.

14         MR. NOLAN:  I'm not sure that's right, John.

15         THE COURT:  Hold on.

16         MR. NOLAN:  I think that takes us into March.

17         THE COURT:  Hold on.

18      (Pause)

19         THE COURT:  January 5th is correct.  All right, I'm

20   going to set the date as January -- 5 p.m. on January 9th,

21   2015.

22         MR. MORRIS:  Thank you, Your Honor.

23         THE COURT:  But hold on.

24      (Pause)

25         THE COURT:  Okay, in paragraph 6(a), all expert

1  discovery shall be completed on or before 5 p.m. March 9th,

2  2015.  Sixty days fell on a weekend, so that takes us to the

3  Monday.

4           MR. MORRIS:  I appreciate the date certain, Your

5  Honor.

6           THE COURT:  And let's fix 6(b).  With this many cases

7  that it's applying to, let's have real dates for all of them,

8  okay?

9           MR. MORRIS:  Yes.  And --

10          THE COURT:  I'm going to listen -- before I finalize

11  this, I'm going to hear any of the defendants' counsel that

12  want to be heard with respect to this.  But we'll proceed as if

13  this is going to be the order.

14          So let's talk about paragraph 7, "Mediation".

15          MR. MORRIS:  If I may --

16          THE COURT:  Go ahead, Mr. Morris.

17          MR. MORRIS:  -- just one comment on 6(b)?

18          THE COURT:  Yes.

19          MR. MORRIS:  At the end it says in number 3, "all

20  expert discovery shall be completed by the date set forth in

21  6(a)."  We're going to just change that now to be the March 9th

22  date, right?

23          THE COURT:  Right.

24          MR. MORRIS:  Okay.  So paragraph 7, Your Honor, here's

25  the thought with respect to paragraph 7.  We've done -- my firm

1   has done these types of projects before in Circuit City and

2   other matters.  And it's not going to be a surprise to the

3   Court to learn that cases settle at different moments in time,

4   and some of them settle early, some of them need some

5   discovery, some of them need depositions.  And so what we're

6   trying to do here is to build in a mechanism that would allow

7   the parties, if they mutually agree, basically a sixty-day

8   time-out that would suspend the calendar and allow them to go

9   on a different path towards a consensual resolution.

10          If the Court would prefer that we used the court-

11  sanctioned mediators --

12          THE COURT:  No, here's what --

13          MR. MORRIS:  -- we would certainly be open to that.

14          THE COURT:  -- here is what I'd like to raise.  I

15  assume that some of the other people in the courtroom are

16  defendants' counsel in these cases.

17          In Chapter 11 cases where I've had large numbers of

18  preference/avoidance actions, because there's efficiency in

19  designating a limited number of mediators -- because they move

20  up on the learning curve, okay, and therefore it becomes less

21  expensive for everybody; so usually what I have done, Mr.

22  Morris, is have you propose five names.  And I'll review them

23  and you can -- defendants' counsel can review them as well.

24          I mean, there's people I don't think anybody's going

25  to have any question about their neutrality and effectiveness

1   as mediators.  I don't always -- I don't want one, because then

2   you get into the issue if somebody doesn't -- I don't like them

3   or something.  But usually, if there's five to choose from --

4   three to five, everybody -- there's got to be somebody among --

5   and then if people still object, then it'll be somebody off the

6   Court's list.

7           But there's efficiency -- particularly, there are

8   going to be common issues in these preference/avoidance

9   actions.  And a lot of them you're going to settle with -- as

10  you're done already, you're going to settle them without having

11  to go -- anybody going through the expense of a mediator.  But

12  if they actually have to go to mediation, I think it helps if

13  there's some core group of mediators that everybody is going

14  to -- most everybody is going to be satisfied that they're

15  fair.  And they just -- when they've done a couple of these,

16  you're not going to have to educate them all over again.

17          MR. MORRIS:  It's exactly what we did in --

18          THE COURT:  So I did it in Borders.  There's a

19  mediation order in Borders.  I can't -- you can talk to my

20  clerks.  We've done this in a bunch of the big cases where

21  there were lots of avoidance actions.

22          MR. MORRIS:  Okay.  Would it be helpful for us --

23          THE COURT:  You may have a precedent for it.

24          MR. MORRIS:  I have one from Circuit City.  I think

25  I'd probably look to your Borders order first, since you've

RESIDENTIAL CAPITAL, LLC, ET AL.                         26

1   already approved that.

2             If it's okay with the Court and the defendants --

3             THE COURT:  There wasn't real magic in that.

4             MR. MORRIS:  Yeah.

5             THE COURT:  Just that -- the only point I'd make is

6   that identifying a small but not too small number of

7   mediators -- if somebody's going to object to them, well, fine.

8   Then they'll come in and I'll hear an objection if you can't

9   agree.

10            I think what is generally provided -- the orders are

11  providing, select the mediators from among those.  If the

12  parties can't agree, they can agree on somebody else.  But

13  there's a benefit to being able to just -- here are the ones;

14  they know the case; they've already checked conflicts; they

15  don't believe they have conflicts.

16            Obviously, there could be a conflict because the

17  counterparty in the mediation is a client of theirs.  But

18  that's why five, I think, is a useful number.  And they don't

19  feel like they're getting crammed, because you've cherry-picked

20  three people that you think are going to be the most helpful to

21  you.  Pick five fair-minded people who do mediation.  Okay?

22            MR. MORRIS:  We'll take care of that.

23            THE COURT:  All right.  So but -- so I want you to

24  modify paragraph 7.  And I agree that it's upon -- I'm not

25  tolling a sixty-day period without actually getting a

RESIDENTIAL CAPITAL, LLC, ET AL.                          27

 1   stipulation signed that the parties agree to mediate.  I don't

 2   have a problem about tolling it for sixty days, the schedule,

 3   in a particular case, if there, in fact, is a stipulation of

 4   mediation.

 5          Okay.  Let me make clear -- it's going to take you

 6   probably a couple of days to get this ironed out.  The dates

 7   I'm giving for discovery, they're the ones that I've

 8   specifically set, even if it takes you a couple of days to get

 9   the rest of the order --

10          MR. MORRIS:  Understood --

11          THE COURT:  -- orders in place.

12          Okay, go ahead.

13          MR. MORRIS:  That takes us to I guess, some very

14   modest change to paragraph 9.  And I guess the suggestion for

15   us is to the extent we're even going to retain paragraph 9 in

16   light of the mediation provision that we're going to put in.

17          THE COURT:  You are.

18          MR. MORRIS:  Yeah?

19          THE COURT:  Yeah, I want people --

20          MR. MORRIS:  Okay.

21          THE COURT:  -- I assume you've reached out to people.

22   But there may be some of those cases where they haven't

23   responded.

24          MR. MORRIS:  Correct.

25          THE COURT:  They have to.  Okay?  They have to.

1           MR. MORRIS:  Okay.

2           THE COURT:  The one thing -- I assume that some of

3    these defendants are scattered around, they're not all in the

4    New York area?

5           MR. MORRIS:  That's correct, Your Honor.

6           THE COURT:  So you can take out in paragraph 9 the

7    "face to face".  It's my preference that you meet face-to-face,

8    but if somebody's lawyer is in Iowa, I don't want to get into a

9    dispute whether you go there or they come here.  I want good-

10   faith settlement efforts.  Face-to-face works better than

11   telephone.  There's no question.  But I generally have relented

12   on the requiring face-to-face where defendants are not in the

13   New York metropolitan area.  Okay?  So you can make that

14   change.

15          MR. MORRIS:  If I may, Your Honor, just add the word

16   "to the extent practicable"?

17          THE COURT:  That's fine.  You can add "to the extent

18   practicable".  I'm making clear, if anybody's here or on the

19   phone, it's better to meet face-to-face.  If somebody has their

20   office in the New York metropolitan area, they better meet

21   face-to-face.  I intend this to mean -- to the extent

22   practicable means that you don't have your office in the New

23   York metropolitan area, I'll permit you to do it by telephone,

24   but if you're here, you meet face-to-face.

25          MR. MORRIS:  And then the other change at the end of

1    that paragraph, Your Honor, would require the joint submission

2    of the parties, rather than a unilateral submission, for the

3    stay of --

4              THE COURT:  Yes.

5              MR. MORRIS:  Okay.

6              THE COURT:  In paragraph 10 --

7              MR. MORRIS:  I think that's just a numbering.

8              THE COURT:  No, but I have -- what I want you to do is

9    change it to "thirty days after the deadline for close of fact

10   and expert discovery", whichever is later.  I don't want

11   somebody getting into an argument, well, you finished your

12   discovery well in advance of the deadline, so it runs from --

13   okay, you follow my point?

14             MR. MORRIS:  I'm sorry, I don't, Your Honor.

15             THE COURT:  My point is this -- because the way it's

16   written -- and it may be in my standard form order, but this

17   can apply to a lot of cases -- it's "shall submit a joint pre-

18   trial order within thirty days after the close of fact and

19   expert discovery."  Not everybody's going to need 180 days for

20   fact discovery, or the sixty days for expert discovery.

21             MR. MORRIS:  Um-hum.

22             THE COURT:  I want to keep these cases pretty much on

23   the same schedule.  So it's basically to -- you can put in --

24   instead of the "thirty days after the close of fact discovery",

25   you can change it to "the later of January 9th, 2015 or March

1    9th, 2015," so it has real dates.  Okay?  It's thirty days

2    after whichever is later, close of fact discovery or expert

3    discovery, with those dates put in.  Okay?

4              MR. MORRIS:  Yes.

5              THE COURT:  Okay.

6              MR. MORRIS:  That completes --

7              THE COURT:  Well, I want to give you a date for the

8    next case management conference in paragraph 12.  What I'd like

9    you to do is, I'd like -- get a date from Deanna, my courtroom

10   deputy, for a date about thirty days before the close of fact

11   discovery.  Okay.  Because I'd like to get everybody back in to

12   see where things stand even before fact discovery closes.

13             If there are disputes -- discovery disputes or

14   anything like that, the order already provides how you deal

15   with that --

16             MR. MORRIS:  Um-hum.

17             THE COURT:  -- so, or if there are motions.  I want to

18   make clear that nobody files a summary judgment motion without

19   following our Local Rule 7056-1, which requires that you

20   request a pre-motion conference.  So that I want to make clear.

21   Okay?

22             MR. MORRIS:  We'll get that date and put it in, Your

23   Honor.  And I know that Your Honor wants to see if defense

24   counsel has any questions or comments, but --

25             THE COURT:  Yeah, I do --

1          MR. MORRIS:  -- what I --

2          THE COURT:  -- does anybody --

3          MR. MORRIS:  -- I was just going to say, what I would

4    propose is after we finish that, if you'd give us a couple of

5    days, we can file a proposed order --

6          THE COURT:  Yes.

7          MR. MORRIS:  -- with notice.

8          THE COURT:  Yes.

9          MR. MORRIS:  Okay.

10          THE COURT:  Okay.  Do any of the defense counsel in

11    any of these cases want to be heard?

12          MR. BERNSTEIN:  Your Honor, this -- can the Court hear

13    me?  I'm sorry.

14          THE COURT:  Yes, I can.  Go ahead.

15          MR. BERNSTEIN:  Okay.

16          THE COURT:  Just identify yourself.

17          MR. BERNSTEIN:  My name is Joseph Bernstein.  I'm an

18    attorney in Denver, Colorado.  I'm in regarding case number

19    14-01954.  The defendant that I represent is

20    Brokerpriceopinion.com Inc.

21          THE COURT:  Yes.

22          MR. BERNSTEIN:  I have no questions about what the

23    Court has done or about the proposed scheduling order, and I'm

24    supportive of those efforts.  The only thing I missed, and I

25    would ask as a point of clarification, what is the deadline --

1  and I just simply couldn't hear the Court earlier -- what is

2  the deadline for filing an answer to the complaint?

3        THE COURT:  September 3rd, 2014.

4        MR. BERNSTEIN:  Very good.  Thank you, Your Honor.

5        THE COURT:  Thank you very much.

6        MR. BERNSTEIN:  I appreciate your time.

7        THE COURT:  Okay.

8        MR. GLEIT:  Hi, Your Honor, good morning.  Jeff Gleit

9  with the Togut firm on behalf of the Mortgage Partnership of

10 America.

11       THE COURT:  When'd you move to Togut?

12       MR. GLEIT:  Yes, yeah, I moved two months ago.

13       THE COURT:  Okay.

14       MR. GLEIT:  So it was Mr. Togut's good work on Dewey.

15       THE COURT:  Okay.

16       MR. GLEIT:  Your Honor, just briefly, I think the

17 changes were fine to the case management order, but I just

18 would like a copy of the order sent to me if possible

19 beforehand.  Because I didn't see it before today, and I have

20 been in contact with Pachulski.

21       THE COURT:  They basically have taken my template for

22 case management and scheduling order and -- talk to Mr. Morris

23 after and get a copy.  You ought to try and circulate it to any

24 of the counsel that you know of, Mr. Morris, okay?

25       MR. MORRIS:  If I may, what I would propose, Your

 1   Honor; today, is Wednesday.  If we could file notice of

 2   proposed case management order no later than Monday and give --

 3   file it electronically, serve it, and give people until the end

 4   of next week to submit any objection?

 5          THE COURT:  No.  We're not -- I mean, the

 6   modifications that are being made to my template are not

 7   particularly significant.  The mediation provision, I don't

 8   consider controversial, frankly, other than -- the changes that

 9   I want to be made are -- so what I want you to do is make the

10   proposed changes, get it circulated.

11          I plan to -- if I get objections by next Tuesday at 5

12   o'clock, I'll consider them.  I'm not having another hearing.

13   I'm just going to enter case management orders.  I don't

14   generally modify my case management orders.  You're already --

15   given the number of cases -- normally the template has 120 days

16   for fact discovery.  Given the number of cases, it's reasonable

17   to extend that to 180.  Usually, I have forty-five days for

18   expert discovery.  You've extended it to sixty.

19          These are preference/avoidance actions.  I'm usually

20   pretty firm about sticking with the dates in my template.  So

21   we're not going through rounds of -- get it out to everybody,

22   okay?

23          MR. MORRIS:  Yes, Your Honor.

24          THE COURT:  Okay.

25          MR. GLEIT:  And to be clear, I'm sure it will be fine

```
 1   when --
 2          THE COURT:  Yeah.
 3          MR. GLEIT:  -- we get -- that's what I expect.
 4          THE COURT:  Look, Mr. Gleit, I think with respect to
 5   the mediation order, I think -- I don't remember which case --
 6   Mr. Togut has submitted -- you've got some precedents in your
 7   office where -- I think it may have been in Dewey where --
 8          MR. GLEIT:  I'll pull both Borders and Dewey, since
 9   Borders I was involved with and Dewey my firm was heavily
10   involved with --
11          THE COURT:  Right.
12          MR. GLEIT:  -- and I'll send them to Mr. Nolan on the
13   phone, and Mr. Morris.
14          THE COURT:  Thank you.  Thank you, Mr. Gleit.
15          MR. GLEIT:  Okay.  And Your Honor, just with respect
16   to the five mediators, what I'd like to do, if it's okay with
17   the Court, is just send one or two names, suggestions, on
18   behalf of the defendants --
19          THE COURT:  See if you can work out with Mr. Morris
20   the names.  This is -- frankly, has never proved to be
21   controversial.
22          MR. GLEIT:  I'm sure it won't be.
23          THE COURT:  The only time it's controversial --
24   somebody once tried to do one mediator with seventy cases or
25   something and I said no.  Because it just -- I want enough that
```

RESIDENTIAL CAPITAL, LLC, ET AL.                    35

1  people feel comfortable, a) if there's a conflict, there's

2  enough people on the list who don't have a conflict.  Okay?

3           MR. GLEIT:  Thank you very much, Your Honor.

4           THE COURT:  Thank you very much.  Okay, Mr. Gleit.

5           Anybody else want to be heard?

6           Okay, thanks very much, Mr. Gleit and Mr. Morris.

7           MR. GLEIT:  Thank you very much.

8           MR. MORRIS:  Thank you, Your Honor.

9           THE COURT:  Okay.

10          MR. BERNSTEIN:  Thank you, Your Honor.

11          THE COURT:  Thank you.  You're excused if you want to

12  be.  You're welcome to say on the phone if you want.

13          Go ahead.

14          MR. NEWTON:  Good morning, Your Honor.  James Newton,

15  Morrison & Foerster, on behalf of the ResCap Liquidating Trust.

16  The next matter on the agenda is the motion of Clifford Lantz

17  for relief from the automatic stay.  It's docket number 6817.

18  And I did not hear Mr. Lantz's counsel on the phone, but I

19  would expect that he was there.

20          THE COURT:  Mr. Lantz, or your counsel, are you on the

21  phone?

22          MR. LANTZ:  I am here, sir.

23          MR. EVELAND:  Good morning, Your Honor.  Jeremy

24  Eveland and Jared Pearson, representing Clifford Lantz.  We're

25  on the phone.  Mr. Lantz should be present in the courtroom.

RESIDENTIAL CAPITAL, LLC, ET AL.                    36

1          THE COURT:  Are you Mr. Lantz?

2          MR. LANTZ:  Yes, sir.

3          THE COURT:  He is present in the courtroom.

4          MR. LANTZ:  Right here, Your Honor?

5          THE COURT:  Yes.

6          MR. EVELAND:  Are you ready for argument, Your Honor?

7          THE COURT:  Yes, I am.

8          MR. EVELAND:  Great.  This is --

9          THE COURT:  Tell me your name again.  I'm sorry.

10          MR. EVELAND:  This is Jeremy Eveland, and Jared

11  Pearson is also here.

12          THE COURT:  Okay.  Go ahead.

13          MR. EVELAND:  This is the time and place Your Honor

14  set for hearing on Mr. Lantz's motion for relief from the

15  automatic stay.  Your Honor, I imagine you've had time to look

16  over the pleadings, the motion --

17          THE COURT:  I've read all the papers.

18          MR. EVELAND:  Great.  Okay.  Well, as the Court is

19  aware, Mr. Lantz has a pending lawsuit in the State of Utah.

20  The case is ready for trial, Your Honor.  And discovery is

21  completed.  Mr. Lantz has prevailed on his breach of contract

22  claim and obtained a preliminary injunction already in the

23  case.  This was prior to the ResCap -- and Homecomings

24  Financial, the actual entity that Mr. Lantz has filed suit

25  against -- this was all prior to the bankruptcy case filing.

RESIDENTIAL CAPITAL, LLC, ET AL.                    37

1          Your Honor, today Mr. Lantz is seeking relief from the

2     automatic stay to be able to take the Utah lawsuit to trial.

3     There's a proof of claim on file that the Court's reviewed,

4     showing that Mr. Lantz is claiming 590,000 dollars as damages.

5     And the debtor has a lien against Mr. Lantz's property in the

6     amount of approximately 150,000 dollars, Your Honor.

7          What Mr. Lantz is seeking to do through the Utah

8     court, is to obtain removal of the lien from the property in

9     lieu of obtaining monetary damages in the bankruptcy court

10    case.  We've addressed all the Sonnax factors in the reply that

11    was filed.  I believe factors number 5 and 6 are really not

12    applicable to this case.  All of the other factors, Your Honor,

13    we believe, fall in favor of Mr. Lantz.

14         Mr. Lantz, I believe, has shown cause exists to grant

15    relief, as Mr. Lantz will be harmed -- irreparably harmed if

16    relief is not granted.  He'll be left without a remedy other

17    than receiving some small fraction of a monetary damage, but

18    nowhere near what he's actually -- how he's actually been

19    damaged in this case, Your Honor.

20         THE COURT:  Tell me about the lien on the property.

21    What was the basis of the lien?

22         MR. EVELAND:  The lien, Your Honor, is a first

23    mortgage that was placed on the property.  And I don't have the

24    title in front of me, but I believe it was several years ago,

25    back in the early 2000s or late '90s.

1          THE COURT:  And what's the basis for removing the

2    lien?

3          MR. EVELAND:  The basis, Your Honor, is this.  The

4    damages that he sustained are in excess of the amount of the

5    lien.  And in lieu of obtaining damages or monetary damages

6    through the bankruptcy court proceeding, it would make sense to

7    allow lien removal as an equitable remedy rather than a legal

8    remedy.

9          THE COURT:  Except that the damage remedy would be an

10   unsecured claim which would be paid pro rata with other

11   unsecured claims in the same class.  And therefore, the

12   recovery could be less than the amount of the lien.  Where

13   damages are an adequate remedy at law, you don't get an

14   equitable remedy.

15         MR. EVELAND:  That's correct, Your Honor.  And we

16   really don't know at this point of the case how much would

17   actually be paid out on Mr. Lantz's claim.  We know this is a

18   liquidating case -- a liquidating Chapter 11, so that all

19   proceeds will be paid out.  We just have no idea how they will

20   be paid out on a general nonpriority unsecured claim.

21         THE COURT:  Well, I assume this is in the borrower

22   class?

23         MR. NEWTON:  It is.

24         MR. EVELAND:  That is correct, Your Honor.

25         THE COURT:  And the disclosure statement had a range

 1  of possible recoveries.  We don't know yet what it's going to
 2  be.
 3          MR. EVELAND:  Right.
 4          THE COURT:  So what are the damages that you contend
 5  that Mr. Lantz suffered?
 6          MR. EVELAND:  The damages, Your Honor, stem from both
 7  breach of contract and negligent infliction of emotional
 8  distress.  Mr. Lantz was -- well, Homecomings Financial
 9  attempted to foreclose on his property three separate times
10  after which he'd made all of his payments and was current on
11  the mortgage.
12          Mr. Lantz has suffered some medical bills and
13  treatment, and to this day is distraught -- mentally distraught
14  by what Homecomings Financial has done to him.  And we believe
15  those damages -- we've supplied opposing counsel with some
16  substantiation evidencing the amount of money that he spent,
17  not just in medical bills, but also in fighting Homecomings
18  Financial, Your Honor.
19          THE COURT:  So why shouldn't Mr. Lantz be required to
20  do what all other creditors generally are required to do, which
21  is, namely, if there are disputed issues of fact and law with
22  respect to his claim, such that his claim is a contested
23  matter, the Court sets a trial and you try it here?  I mean,
24  what it seems to me Mr. Lantz would not be entitled to is to
25  obtain the equitable -- I understand your desire --

1          MR. EVELAND:  Right.

2          THE COURT:  -- to have the lien discharged, but the

3    lien, it's a consensual -- it was a mortgage.

4          MR. EVELAND:  Right.

5          THE COURT:  It's a recorded --

6          MR. EVELAND:  Consensual lien, Your Honor.

7          THE COURT:  -- secured interest in the property.

8          Mr. Lantz may well have a good claim for damages on

9    which he can recover.  But why shouldn't you and he be required

10   to try that matter before me?

11         MR. EVELAND:  Well, I think, Your Honor, for starters,

12   it's cost prohibitive to my client, who's simply an individual.

13   He's not a big company.  He can't afford to continue to come up

14   to litigate in New York and afford to have an attorney in New

15   York to litigate it.

16         Not only that, it would start the entire case over

17   again.  The Utah case is ready for trial.  All discovery --

18         THE COURT:  No, if --

19         MR. EVELAND:  -- is complete.

20         THE COURT:  -- if all discovery is done, you're not

21   starting the case all over again.  I can tell you what I've

22   done in other cases, is essentially work out the ground rules

23   for an estimation hearing and we do basically a pretty

24   expedited trial in -- I'm going to ask Mr. Newton to address

25   the issues, but I'm speaking hypothetically.

1        If all discovery is essentially done, and you're ready

2   to endeavor to liquidate the amount of Mr. Lantz's claim, I can

3   give you a trial within the next two months.

4            MR. EVELAND:  Okay.

5            THE COURT:  And yes, you'll have to come here for the

6   trial.  But I don't know whether you've already been admitted

7   pro hac -- our rules for pro hac admission are quite simple.

8   You don't have to have local counsel or anything like that.

9   And I try to very efficiently try cases.  Both sides submit --

10  I don't know whether there are credibility issues.  In cases

11  where there are no credibility issues, I have written narrative

12  direct testimony submitted by each side.  The exhibits are pre-

13  marked and submitted.  And it can be tried very expeditiously.

14           But I haven't let Mr. Newton speak to the issues yet.

15           MR. EVELAND:  Right.

16           THE COURT:  But if, in fact --

17           MR. EVELAND:  Well, Your Honor, we would also have --

18  we would also have doctors and other professionals -- CPAs that

19  he has hired to do accounting work and to show that he was

20  current on his mortgage.  Those types of things --

21           THE COURT:  Have you tried -- look, I don't know.  Mr.

22  Newton, is it disputed as to whether Mr. Lantz was current on

23  his mortgage?

24           MR. NEWTON:  I believe it is, Your Honor.

25           THE COURT:  It is disputed?

1           MR. NEWTON:  Yes.

2           THE COURT:  Okay.  Let me hear from Mr. Newton.

3           MR. EVELAND:  Okay.

4           THE COURT:  I'm not making any decision yet, but let

5     me hear from Mr. Newton.

6           MR. EVELAND:  Thank you, Your Honor.

7           THE COURT:  I'll give you a chance to reply.  Okay?

8           MR. NEWTON:  Your Honor, I want to kind of clarify

9     what is at issue here, first.  Both in Mr. Lantz's motion, his

10    reply, and now at argument, there's a suggestion that all

11    discovery is done, we're ready for trial.  The Utah court has

12    dealt with one of four claims, or I guess two of four claims.

13    It's a breach of contract claim.

14          The Utah court has determined liability on that breach

15    of contract claim and also precluded Homecomings from moving

16    forward with this particular foreclosure proceeding that was

17    the subject of the dispute, as a result of Homecomings' failure

18    to issue a new notice of default after Mr. Lantz's Chapter 13

19    case.

20          What hasn't been dealt with are either of the other

21    two causes of action in the Utah court.  One is the negligent

22    infliction of emotional distress claim, and the other is a

23    breach of good faith and covenant -- or a breach of covenant of

24    good faith and fair dealing.

25          Your Honor, we disagree that discovery is complete and

 1    no --

 2            THE COURT:  What discovery do you require?

 3            MR. NEWTON:  Well, before the bankruptcy case --

 4    shortly before the bankruptcy case, Mr. Lantz was deposed.  He

 5    identified a historic -- several historical medical issues, as

 6    well as several professionals --

 7            THE COURT:  Mr. Newton?

 8            MR. NEWTON:  Yes.

 9            THE COURT:  It's not a trick question.  What discovery

10    do you require?

11            MR. NEWTON:  Well, we would want to look into the

12    medical history and the issues -- understand better what the

13    medical --

14            THE COURT:  Can I be -- I don't think I can be any

15    clearer.  Tell me what discovery you wish to take and how you

16    want to go about it.

17            MR. NEWTON:  We would want to at least request

18    document discovery from Mr. Lantz regarding his -- the doctors

19    he has seen; potentially serve interrogatories on the doctors,

20    if this went back to the Utah court.

21            However, on the other hand, we think that it's

22    possible that this could -- that this issue of negligent

23    infliction of emotional distress cause of action, could be

24    resolved as a legal matter.  As we've mentioned in our

25    objection, there is a bar on tort claims arising from

1  contractual relationships in Utah.

2          So rather than go back to Utah, have to go through the

3  process of discovery, we think that this could be dealt with

4  more expeditiously here and potentially resolved, at least the

5  negligent infliction of emotional distress claim, as a matter

6  of law.

7          THE COURT:  Anything else?

8          MR. NEWTON:  No, Your Honor.  No, Your Honor.

9          THE COURT:  No?  All right, let me hear from Mr.

10 Lantz's counsel again.  What about this issue that discovery

11 really is not complete, that the Utah court has not dealt with

12 the negligent infliction of emotional distress claim?

13         MR. EVELAND:  That is correct, Your Honor.  The

14 summary judgment motion was brought on two of the four claims.

15 The breach of good faith and fair dealing and the NIED claim

16 are still out there.  And those were going to be part of the

17 trial.

18         We need no further discovery.  And as counsel stated,

19 they've already deposed Mr. Lantz.  And they did do some

20 discovery -- some written discovery prior to that.  So I

21 believe --

22         THE COURT:  May I ask you this?

23         MR. EVELAND:  Go ahead.

24         THE COURT:  If the court has determined liability,

25 granted summary judgment in your favor on breach of contract,

1   why do you need the breach of covenant of good faith and fair

2   dealing claim?

3           MR. EVELAND:  That's a good question, Your Honor.  I

4   think that was simply pled to show that -- not just that

5   they -- not merely did they breach the contract, but they

6   lacked good faith in their dealings with Mr. Lantz.

7           THE COURT:  Well, there's no -- how is that a separate

8   cause of -- if the court determined that there's been a breach

9   of contract -- maybe I'm missing something, but I don't

10  understand what your breach of covenant of good faith and fair

11  dealing adds to the case.

12          MR. EVELAND:  Well, perhaps it doesn't add anything in

13  the terms of damages, Your Honor.  It's simply another claim

14  that was pled in the complaint.

15          THE COURT:  Well, the more you want to complicate your

16  case, the more likely you're going to be in my court.

17          MR. EVELAND:  Sure.

18          THE COURT:  Although you may wind up here anyway.  But

19  I just -- I'm trying to understand what it is that remains to

20  be resolved.  You agree, in any event, that the claim for

21  negligent infliction of emotional distress has not been

22  resolved in Utah?

23          MR. EVELAND:  No, it has not.  That has not come

24  before the court on summary judgment, because we felt that it

25  would be -- it would come up with disputed facts and we'd go to

1  trial on it anyway.

2          THE COURT:  And do you agree there has not been

3  discovery with respect to that claim?

4          MR. EVELAND:  Oh, I believe there has, Your Honor.  I

5  believe there's been discovery on all issues.

6          THE COURT:  Well, you have experts?

7          MR. EVELAND:  We have three doctors that have --

8          THE COURT:  And have --

9          MR. EVELAND:  -- treated Mr. Lantz.

10          THE COURT:  -- have they been deposed?

11          MR. EVELAND:  They have not been deposed, no.  I don't

12  believe we need to depose them, Your Honor.  They're --

13          THE COURT:  Well, maybe you don't need to depose your

14  doctors, but ResCap's certainly entitled to it.

15          MR. EVELAND:  Sure.  Sure, they could, but they

16  didn't.

17          THE COURT:  Well, but the case has been stayed.  They

18  didn't have to do anything in your case since the stay went

19  into effect.

20          MR. EVELAND:  Oh, absolutely, Your Honor.  I'm not

21  arguing that.  I'm simply arguing the case has existed for some

22  period of time, and they never, during that period of time --

23          THE COURT:  Well, the bankruptcy has existed since May

24  2012.

25          MR. EVELAND:  Right.

1          THE COURT:  And they've had a lot of their plate, and

2     there's a stay in effect in your case, which remains in effect.

3     You're trying to get me to --

4          MR. EVELAND:  No, I'm talking about before the case

5     was filed, Your Honor.  The Utah case was filed in 2006.

6          THE COURT:  Was a trial date ever set before the

7     bankruptcy was filed?

8          MR. EVELAND:  The trial was not set, no.  We had a

9     pre-trial conference to set the trial, and at that pre-trial

10    conference, counsel -- local counsel stated that Homecomings

11    had filed for bankruptcy and was included in the ResCap case,

12    and it's just been -- everything's just been postponed since

13    then.

14         I believe, if the Court finds that the proper venue is

15    in the Southern District of New York in Your Honor's courtroom,

16    for resolution through an adversary proceeding, my client will

17    obviously --

18         THE COURT:  I don't need an adversary proceeding.

19         MR. EVELAND:  -- order.

20         THE COURT:  You've -- did you file a proof of claim?

21    Yes.

22         MR. EVELAND:  There was a proof of claim filed.  Yes,

23    Your Honor.

24         THE COURT:  Okay.  I don't need an adversary

25    proceeding.  The proof of claim, particularly if the state

RESIDENTIAL CAPITAL, LLC, ET AL.                    48

1   court's determined liability on the breach of contract claim,

2   is a contested matter.

3               MR. EVELAND:  Correct.

4               THE COURT:  I resolve contested matters by, if

5   necessary, setting a trial on them.

6               MR. EVELAND:  Okay.

7               THE COURT:  And set them very quickly.  How many

8   doctors do you have?

9               MR. EVELAND:  There were three.

10              THE COURT:  You really intend to use three doctors?

11              MR. EVELAND:  Well, they each had medical reports that

12  each had treated Mr. Lantz.  And as evidence of damages, we

13  would need their reports in.  If counsel would stipulate to

14  allow their medical -- his medical records in as evidence of

15  damages and their reports in, we wouldn't need them to actually

16  testify.

17              THE COURT:  So those are all three treating

18  physicians?

19              MR. EVELAND:  Correct.

20              THE COURT:  Mr. Newton, in other matters, I believe in

21  ResCap earlier in this case -- in other matters where there

22  were pre-petition state or federal court cases pending that

23  were close to or ready for trial, the Court has, in the past,

24  and could certainly here, lift the stay to permit a damages

25  claim to be fixed, quantified, with no -- and then return

RESIDENTIAL CAPITAL, LLC, ET AL.                    49

1    here -- because there's an unliquidated proof of claim, right?

2              MR. NEWTON:  It is.

3              MR. EVELAND:  That's correct, Your Honor.

4              THE COURT:  And I could permit -- I could lift the

5    stay, send you back to Utah, try the case, liquidate the amount

6    of the claim, have the claim brought back here, and the claim

7    will be treated like all other unsecured borrower claims.

8              MR. NEWTON:  Your Honor, as I mentioned, I don't think

9    we're ready for trial.  Mr. Lantz was deposed in May of 2012,

10   so right around the time --

11             THE COURT:  So --

12             MR. NEWTON:  -- when the bankruptcy was filed.

13             THE COURT:  -- why shouldn't I lift the stay and send

14   you back to Utah with an order that permits the trial to go

15   forward to liquidate the amount of Mr. Lantz's claim?

16             My concern -- and Mr. Lantz's counsel can address

17   this -- is if the matter proceeds here, I will give both sides

18   a very short period for discovery, and you can go and depose

19   the doctors, the treating physicians and whatever other

20   discovery you're going to want on it -- but within a limited

21   period; and you'll get a very quick trial.

22             You won't get a jury.  But you'll get a very quick

23   trial.  And I'll fix the amount of the damage claim.  So that's

24   one alternative.

25             MR. NEWTON:  If I may, Your Honor.

RESIDENTIAL CAPITAL, LLC, ET AL.                    50

1          THE COURT:  I don't know what -- you may fall into a

2    dark hole if you go back to Utah.  It's obvious the case is not

3    trial ready, if ResCap has not had an opportunity -- if

4    there's -- the negligent infliction of emotional distress claim

5    has not been dealt with by the Utah court, nor has there been,

6    it sounds to me, that there has not been discovery -- I don't

7    know, what's the backlog in your court in Utah?

8          MR. EVELAND:  Your Honor, it depends on how long we

9    need.  If it's a one- or two-day, they can usually be done in

10   thirty, forty-five days.  It's usually two to three months if

11   we need three to four days, depending on the judge's actual

12   calendar.

13         The Judge on this case is Judge Hansen.  I've appeared

14   before him before.  And I'm thinking about three months.  If we

15   were to contact him and get a phone conference this week, we

16   could be on in two to three months.

17         THE COURT:  Mr. Newton?

18         MR. NEWTON:  Your Honor, I'll just say, I'm not sure

19   in terms of the time for getting a hearing date.  My

20   understanding is we would obviously need some time for

21   discovery prior to getting that hearing date.

22         THE COURT:  If you're in my court, Mr. Newton, maybe

23   you'll get sixty days at the most for discovery.

24         MR. NEWTON:  Right.  And this --

25         THE COURT:  Okay?  The case is not going to linger.

RESIDENTIAL CAPITAL, LLC, ET AL.                    51

1        MR. NEWTON:  And this is why I wanted to suggest that

2   as I mentioned, I think we can -- I think we can -- we believe

3   we can address --

4        THE COURT:  Have you tried to settle this case?

5        MR. NEWTON:  We have, Your Honor.

6        THE COURT:  Okay.

7        MR. NEWTON:  We have reached out to them.

8        THE COURT:  So --

9        MR. NEWTON:  Your Honor?

10        THE COURT:  Go ahead.

11        MR. NEWTON:  May -- we believe we could resolve the

12   negligent infliction of emotional distress claim as a legal

13   matter, and we are happy to file a claims objection to address

14   the legal issues that are involved there.  We think that would

15   certainly narrow the issues here, potentially narrow the --

16        THE COURT:  Why is it that you think that Mr. Lantz

17   has not stated a claim for negligent infliction of emotional

18   distress?

19        MR. NEWTON:  Your Honor, my understanding is -- from

20   speaking with Utah Counsel is that in cases that involve solely

21   a contractual relationship between the parties, tort damages

22   are not permitted in the absence of property damage or bodily

23   injury.

24        THE COURT:  So if I understand correctly, the

25   underlying facts are that one of the debtors -- and this has

1   been determined by the state court -- improperly attempted to

2   foreclose Mr. Lantz's home?  Am I correct?

3          MR. EVELAND:  That is correct, Your Honor.

4          MR. NEWTON:    Correct.

5          THE COURT:  Okay.  And you're saying, in that

6   circumstance, Mr. Lantz wouldn't have a claim -- couldn't have

7   a claim not -- couldn't have a claim for intentional infliction

8   of emotional distress?

9          MR. NEWTON:  I don't believe so, absent some other

10  duty on the part of Homecomings, which I'm not aware of.  The

11  only relationship between the parties is a contractual

12  relationship under the note and mortgage.

13         MR. EVELAND:  Your Honor, if I may briefly address

14  that?

15         THE COURT:  Sure, go ahead.

16         MR. EVELAND:  I don't believe that's the case here.

17  And if that was the case, I believe counsel would have filed a

18  motion to dismiss very early on and resolved that claim.  But I

19  think that my client is more than able to take that issue to

20  trial and is prepared to do so.

21         THE COURT:  So isn't it too late for you to file a

22  motion to dismiss the negligent infliction of emotional

23  distress case?  I mean, this is an issue of Utah procedural

24  law.  What would you be moving, motion for judgment on the

25  pleadings?

1          MR. NEWTON:  I'm not certain on --

2          THE COURT:  Do you have Utah counsel --

3          MR. NEWTON:  -- on the Utah --

4          THE COURT:  -- on the phone?

5          MR. NEWTON:  We don't have them on the phone, Your

6   Honor, but my understanding is that they may seek to file a

7   motion for summary judgment.

8      (Pause)

9          THE COURT:  Mr. Newton, address the issue that Mr.

10  Lantz's counsel raised about the equitable relief that he's

11  seeking as an alternative to damages.

12         MR. NEWTON:  Your Honor, I haven't seen any legal

13  authority to suggest that Mr. Lantz can convert a breach of

14  contract claim into a request for equitable --

15         THE COURT:  How much is the mortgage?  How much is the

16  recorded lien of the mortgage?

17         MR. NEWTON:  I believe it is somewhere in the

18  neighborhood of 150,000 dollars.

19         THE COURT:  Who owns the mortgage?

20         MR. NEWTON:  Well, the mortgage was transferred to

21  Berkshire Hathaway --

22         THE COURT:  Okay.

23         MR. NEWTON:  -- as part of that asset sale, and

24  servicing went to Ocwen, so that's another issue.

25         THE COURT:  Yeah, I mean --

1          MR. NEWTON:  They're not parties to the lawsuit.

2          THE COURT:  -- look, if there's an adequate remedy at

3   law, you don't get an equitable remedy.  And the debtor doesn't

4   own the mortgage, so I don't see how you can get the equitable

5   alternative that you're seeking even if it was otherwise

6   available.  They don't own the loan, so I think you've got a

7   damage claim.

8          MR. EVELAND:  Yeah, I believe you're correct, Your

9   Honor.  With that transfer to a third party, I think you are

10  correct on that.

11         THE COURT:  And the transfer of the loans to Berkshire

12  Hathaway was free and clear of all lien, claims, encumbrances.

13  So I mean, you've got a damage claim is what I think you would

14  have had anyway.

15         MR. EVELAND:  Well, your Honor, if I might?  Based on

16  that knowledge -- with that knowledge, I think the appropriate

17  remedy then would be to allow the Utah court to try the issue

18  to make the unliquidated claim a liquidated claim so there's a

19  specific amount there, and then, obviously, it comes back to

20  Your Honor in this court to be one of the borrowers -- to go

21  into the borrower class claims.

22         THE COURT:  Okay, what I would like is, I would like

23  both counsel to consent to me speaking with the judge before

24  whom the case was pending in Utah and to discuss, not the

25  merits of the case, but given the Court's docket and assuming a

1    limited period, sixty days, for remaining discovery, how

2    quickly the judge believes he would be able to try the case.

3            One of the major factors, under the Sonnax test, is

4    the effect on the efficient administration of the bankruptcy

5    case.  And I know I could get this to trial in two months.  I'm

6    not saying it has to be the two months, but realistically this

7    can't wait a year to be resolved.  So I would like each of

8    you -- do you consent to me speaking with the judge, and can

9    you provide me with his contact information?

10            MR. EVELAND:  Yeah, I'm more than happy to supply the

11    Court with the contact information for the court, and I would

12    consent to that.  I have no objection.

13            THE COURT:  Mr. Newton?

14            MR. NEWTON:  Yes.

15            THE COURT:  All right.  So provide me with the contact

16    information.  It'll either be this week or early next week when

17    I contact the judge. I'm taking the matter under submission.

18    I'm not trying -- I want to make clear, I'm not trying to

19    pressure another judge with respect to when, given his own

20    calendar demands, he believes the matter can be brought to

21    trial.  But it's important, from the administration of the

22    bankruptcy case, that this be resolved sooner rather than

23    later.

24            And, Mr. Lantz, I'm sure you want it resolved sooner

25    rather than later.

1        MR. LANTZ:  It's been over eight-and-half-years, sir.

2        THE COURT:  Yeah.

3        MR. LANTZ:  Yes, sir.

4        THE COURT:  Things don't last in my court for eight-

5   and-a-half years.  Okay?

6        MR. LANTZ:  No, sir.  And I have nothing less than

7   cosmic stamina.

8        MR. EVELAND:  Your Honor, I have Mr. -- or sorry --

9   Judge Hansen's telephone number and also --

10       THE COURT:  Why don't you --

11       MR. EVELAND:  Do you want me to submit those?

12       THE COURT:  No, why don't you give it to me.

13       MR. EVELAND:  Okay.  Judge Royal Hansen, R-O-Y-A-L,

14   Hansen, H-A-N-S-E-N.  His telephone number 801-238-7310.  His

15   clerk is Lynett McKinney, M-C, capital K-I-N-N-E-Y.  Lynett is

16   L-Y-N-E-T-T.

17       THE COURT:  Okay.

18       MR. EVELAND:  And her number is 801-238-7370.

19       THE COURT:  7370.  The first number you gave me, is

20   that just the chambers number?

21       MR. EVELAND:  That's the general chambers one.

22       THE COURT:  Okay.

23       MR. EVELAND:  Correct.

24       THE COURT:  All right.  And again, what I wish to

25   speak to Judge Hansen about is not the merits of the case, but

RESIDENTIAL CAPITAL, LLC, ET AL.                     57

1    focused on the likely time to trial.

2             Do you have a jury demand?

3             MR. EVELAND:  I believe there is a jury demand in

4    here, Your Honor, and I can double check really quick.

5             THE COURT:  Okay.  Obviously, you don't -- in

6    bankruptcy court, you don't get a jury --

7             MR. REED:  Right.

8             THE COURT:  -- on a claim.

9             MR. EVELAND:  Correct.

10            THE COURT:  Claim re --

11            MR. EVELAND:  There's been no -- there's been no jury

12   demand filed that I can --

13            THE COURT:  No jury demand, okay.  I assume under your

14   procedure it's too late to demand one now?

15            MR. EVELAND:  That is correct, Your Honor.  That would

16   have had to have been done early on in the case.

17            THE COURT:  Okay.  So either way, you're going to get

18   a bench trial?

19            MR. EVELAND:  Correct.

20            THE COURT:  Okay, I'm going to take the matter under

21   submission.  I intend to speak with Judge Hansen if he's

22   willing to speak to me.  I'll certainly tell him that both

23   counsel consented to me talking to him.  And I told you what I

24   want to talk to him about.  And then I will issue an order

25   resolving the motion.  Okay?

RESIDENTIAL CAPITAL, LLC, ET AL.                    58

1          MR. EVELAND:  Thank you, Your Honor.

2          MR. NEWTON:  Thank you.

3          THE COURT:  Thank you very much.  Okay.

4          MR. NEWTON:  I'll cede the podium to Jordan Wishnew.

5          THE COURT:  Thank you.

6          Thank you, Mr. Lantz.  Mr. Lantz, have you come from

7    Utah to be here?

8          MR. LANTZ:  Yes.  I just -- may I?

9          THE COURT:  Go ahead, yeah, speak.  Go ahead.

10          MR. LANTZ:  Just two things.  I deeply appreciated

11    your comments about meeting face-to-face, and that's why I'm

12    here.

13          THE COURT:  Okay.

14          MR. LANTZ:  And secondly, I -- I love the city.

15          THE COURT:  Enjoy New York.  It's a little warm right

16    now.  Of course, Salt Lake is not exactly --

17          MR. LANTZ:  Cold.

18          THE COURT:  -- a cold climate --

19          MR. LANTZ:  Yeah.

20          THE COURT:  -- either in the summer.

21          MR. LANTZ:  But this has been wonderful.

22          THE COURT:  Okay.

23          MR. LANTZ:  Okay.

24          THE COURT:  Thanks very much, Mr. Lantz.

25          Go ahead, Mr. Wishnew.

RESIDENTIAL CAPITAL, LLC, ET AL.                    59

1           MR. WISHNEW:  Thank you, Your Honor.  Returning to

2   today's agenda, on page 3 under IV, Claims Objections the last

3   contested matter, is the ResCap borrower claims trust's

4   objection to proofs of claim filed by Frank Reed and Christina

5   Reed filed at docket number 7017.

6           THE COURT:  Mr. Reed, come on up.

7           MR. REED:  Your Honor, I have some -- an assistant and

8   an expert witness that appeared --

9           THE COURT:  We're not having an evidentiary hearing

10  today, so your experts can stay behind, Mr. Reed.  Mr. Reed,

11  when I -- I will say as you're coming up -- and I apologize for

12  this -- I should have recognized your name immediately, because

13  you're well known to the Court.

14          MR. REED:  Well, I hope that's not a bad thing, Your

15  Honor.

16          THE COURT:  No, no, no.  That's just a comment that

17  I -- and I apologize because I didn't -- when I first read all

18  the papers, there'd been a lot of people who've appeared from

19  time to time.

20          MR. REED:  One time you made a comment, Your Honor, at

21  one of those hearings, when I was wheeling my case up then, you

22  said jeez, I hope that's not all for me.  This is the day where

23  it is somewhat all for --

24          THE COURT:  This isn't all for me, Mr. Reed, trust me.

25          Mr. Wishnew, go ahead.

RESIDENTIAL CAPITAL, LLC, ET AL.                    60

1              Why don't you have a seat, Mr. Reed?

2              MR. REED:  Your Honor, I -- I --

3              THE COURT:  No, no, just have a seat because it's

4     their claim objection, so they get to argue first, then you get

5     to argue.

6              MR. REED:  A housekeeping issue; I have a very

7     difficult time sitting.  That's why you see me standing.

8              THE COURT:  Be my guest to stand.

9              MR. REED:  Thank you.

10             THE COURT:  Okay.

11             MR. REED:  Thank you, Your Honor.

12             THE COURT:  Go ahead, Mr. Wishnew.

13             MR. WISHNEW:  Thank you, Your Honor.  Your Honor, this

14    is the Borrower Claims Trust's objection to Mr. and Mrs. Reed's

15    claims.  It's a request to disallow and expunge four general

16    unsecured claims:  two against GMAC Mortgage, two against

17    Residential Capital, each in the face amount of approximately

18    three million dollars.

19             On the phone today is Lauren Delehey, chief counsel at

20    the ResCap Liquidating Trust, as well as our co-counsel at Reed

21    Smith, Kellie Lavery.  Both are able to answer any questions

22    Your Honor might have.

23             Your Honor, this claim objection, or I'm sorry, the

24    claims that have been filed are predicated on actions taken by

25    GMAC Mortgage in its servicing of a loan first originated in

RESIDENTIAL CAPITAL, LLC, ET AL.                    61

1    2006 by Metrocities Mortgage.  The original loan amount was

2    approximately one million dollars.  The borrowers became

3    delinquent on the loan in February 2008, and approximately

4    three months later, GMAC Mortgage commenced a foreclosure

5    proceeding against Mr. and Mrs. Reed.  Contemporaneously with

6    the commencement of that action, a notice of lis pendens was

7    filed with the county clerk putting parties on notice that an

8    action was pending concerning the Reed property.

9            GMAC Mortgage never completed its foreclosure, and Mr.

10   Reed --

11           THE COURT:  That's because the court dismissed it.

12           MR. WISHNEW:  That is correct, Your Honor.  It

13   dismissed the matter without prejudice.  And even though Mr.

14   Reed pursued a separate cause of action against GMAC Mortgage,

15   he never took that to final judgment.  Mr. Reed's foreclosure

16   was ultimately included as part of the independent foreclosure

17   review, but --

18           THE COURT:  That doesn't preclude his asserting the

19   claims here, though, correct?

20           MR. WISHNEW:  Correct, Your Honor, absolutely.

21           THE COURT:  Nor does he get the benefit of any -- the

22   fact that he got a small amount of money out of the independent

23   foreclosure review it doesn't --

24           MR. WISHNEW:  Agree on that point as well, Your Honor.

25           THE COURT:  -- there's no preclusion --

1          MR. WISHNEW:  No --

2          THE COURT:  -- Mr. Reed, as a result of --

3          MR. WISHNEW:  No preclusive effect to any sort of

4    award in that regards.

5          THE COURT:  Right.

6          MR. WISHNEW:  Now, Mr. Reed -- Mr. and Mrs. Reed seek

7    to have the Court find GMAC Mortgage and Residential Funding

8    Corporation liable for his purported damages.  But there's only

9    one problem.  Mr. Reed cannot prove, by a preponderance of the

10   evidence, that he has a single valid legal basis that would

11   entitle him to monetary damages against either debtor entity.

12         Without repeating all of the points we've made in our

13   objection and reply, let me just highlight a few shortcomings

14   of Mr. Reed's claim.

15         THE COURT:  May I ask you this?  I really have read

16   everything.

17         MR. WISHNEW:  Understood, Your Honor.

18         THE COURT:  So as I understand it, Mr. Reed incurred

19   defense costs in defending against the foreclosure action that

20   GMAC commenced.  Correct?

21         MR. WISHNEW:  I believe so, Your Honor.

22         THE COURT:  All right.

23         MR. WISHNEW:  I'll just state, Your Honor, I'm not

24   quite clear how much those defense costs are.

25         THE COURT:  I understand.

1          MR. WISHNEW:  Okay.

2          THE COURT:  I understand.  That would be a matter of

3    proof.

4          MR. WISHNEW:  Correct.

5          THE COURT:  Okay.  And there may have been attorneys'

6    fees, costs that were incurred other than in the defense of the

7    foreclosure action that -- here's what I'm focusing on, okay?

8    There's a lot of causes of action that are alleged in the

9    proofs of claim.

10         MR. WISHNEW:  Um-hum.

11         THE COURT:  Let me focus, exclusively for a moment on,

12   the negligence claim.

13         MR. WISHNEW:  Sure, Your Honor.

14         THE COURT:  Okay.  And I understand your argument

15   about duty, and I think Mr. Reed has acknowledged there is no

16   cause of action under the -- the Fair Foreclosure Act.  There's

17   no implied cause of action under the state Fair Foreclosure

18   Act.  But it does seem to me that if there was a violation of

19   the Fair Foreclosure Act that the evidence of it would be

20   relevant to the negligence claim in that if a trier of fact

21   concluded that GMACM was negligent in commencing and

22   prosecuting the foreclosure action, that if Mr. Reed -- let's

23   put aside, I know he's claiming damages and a lot of other

24   things, but at a minimum if he demonstrated, and you've

25   acknowledged that he did have counsel at that time.  He's pro

RESIDENTIAL CAPITAL, LLC, ET AL.                        64

1    se here, but he had counsel in defending the foreclosure

2    action.  He was successful in getting it dismissed.  GMACM

3    tried to fix the problem, and the trial court found it didn't

4    work; the fix didn't work.  And so Mr. Reed has apparently,

5    quite successfully, lived in this house since how long without

6    mortgage payment, 2008?

7             MR. REED:  That's correct, Your Honor.

8             THE COURT:  Okay.

9             MR. REED:   But I -- I would have had a house free and

10   clear.

11            THE COURT:  Well, I don't know whether you would have

12   or not, but you've lived in this house since 200- -- Mr. Reed

13   has lived in the house since 2008 without making a single

14   mortgage payment.  But GMACM was unsuccessful in its efforts to

15   foreclose, and apparently gave up after the second effort.

16            MR. WISHNEW:  I would not say that I'd agree with that

17   statement, Your Honor.

18            THE COURT:  Is there a foreclosure action pending?

19            MR. WISHNEW:  I believe --

20            THE COURT:  I know you're not servicing the loan.

21            MR. WISHNEW:  I believe there is a foreclosure action

22   pending by Ocwen.

23            THE COURT:  Okay.  Is there, Mr. Reed?

24            MR. REED:  As of several weeks ago, there is from 21st

25   Mortgage.

RESIDENTIAL CAPITAL, LLC, ET AL.                    65

1          THE COURT:  Okay.

2          MR. WISHNEW:  Oh, I'm sorry, from 21st.

3          MR. REED:  And they had to file a new lis pendens, by

4    the way, because of that action.  Lis pendens goes with the

5    action.

6          THE COURT:  Okay.  So but I guess my point, Mr.

7    Wishnew, is that, at least with respect to the negligence

8    claim, there are disputed issues of fact and law.  It can't --

9    that I can't resolve on the debtors -- on the Trust, the

10   Borrower's Trust's claim objection, and so we need to go

11   forward from here.

12         MR. WISHNEW:  Um-hum.

13         THE COURT:  With respect -- there are a lot of claims.

14   I think I've got them all down.  But with respect to the Fair

15   Foreclosure Act claim, I think Mr. Reed has acknowledged now

16   that there is no implied right of action.

17         You cited the cases, Mr. Wishnew.  That's the case law

18   in New Jersey.  There is no implied right of action.

19         MR. REED:  And we never -- we never asserted that

20   action.

21         THE COURT:  Well, it's unclear to me, Mr. Reed, and so

22   I would sustain the objection -- I'll wait -- I'm inclined to

23   sustain the objection to the Fair Foreclosure Act claim,

24   overrule the objection as to the negligence claim, sustain the

25   objection to the breach of contract claim --

RESIDENTIAL CAPITAL, LLC, ET AL.                    66

1          MR. REED:  Your Honor,

2          THE COURT:  -- because, just -- I'm not ruling, yet,

3    Mr. Reed --

4          MR. REED:  Oh.

5          THE COURT:  -- I'm going to give you a chance to

6    argue.  I'm telling you what I'm inclined to do.

7          MR. REED:  Okay.

8          THE COURT:  Sustain the objection to the breach of

9    contract claim because GMACM never owned the Reed loan, RFC

10   acquired it December 30, 2009, but the purported breach of

11   contract occurred before RFC was a party to the contract.  So

12   I'm inclined to sustain the objection to the breach of contract

13   claim.

14          There's a claim for punitive damages, actual malice

15   claim.  I have a hard time seeing Mr. Reed recover on it, but I

16   would probably overrule the objection without prejudice, and

17   we'll go to trial, and I'll see after trial.

18          The New Jersey Consumer Fraud Act claim, I am inclined

19   to sustain the objection because Mr. Reed has failed to state a

20   claim.  And based on -- and this is -- frequently I would

21   sustain an objection with leave to amend, but given the volume

22   of paper that Mr. Reed has submitted -- which I've read, Mr.

23   Reed --

24          MR. REED:  Sorry.

25          THE COURT:  That's okay -- I would be fairly confident

1   in dismissing the Consumer Fraud Act claim with prejudice,

2   without leave to amend and likewise sustain the objection to

3   the Consumer Trust claim.  There's something -- I don't --

4           MR. WISHNEW:  Is that the --

5           THE COURT:  -- know whether it's intended as a claim.

6   There's something --

7           MR. WISHNEW:  Is that the constructive trust claim,

8   Your Honor?

9           THE COURT:  Yeah, the constructive trust claim.

10          MR. WISHNEW:  Thank you.

11          THE COURT:  Sustain the objection to the constructive

12  trust claim.  If the proof of claim, attempts to assert

13  something called a made-whole claim under the Federal Reserve

14  Board consent order, I would sustain the objection to the

15  extent that it purports to state a separate claim.  It's quite

16  clear that there can be no private right of action under the

17  consent order.

18          So what we would be left with is going to trial on the

19  negligence claim and the punitive damages, actual malice claim,

20  which I'm pretty skeptical about, but not acting on it now.

21  That's -- Mr. Wishnew, I'll let you go through -- I mean, what

22  you ought to focus on is the negligence claim in particular.

23  Mr. Reed will address others, if he wants, but that's what I

24  see this coming out of today.

25          MR. WISHNEW:  Um-hum.

1          THE COURT:  And Mr. Reed's got experts.  He's got --
2    are you ready to go to trial, Mr. Reed.
3          MR. REED:  I think we're very -- I think we're there.
4    I mean, this was based on almost two years of state court
5    litigation.  The only reason we dismissed that because we were
6    trying to -- you know, save the judg -- you know, judicial
7    economy and our opposition and ourselves fees and submit to the
8    FRB.  That -- that was the only reason --
9          THE COURT:  Can I ask you something?  Are you going to
10   have a lawyer who's going to represent you in a trial hearing?
11         MR. REED:  If we go to trial, yes.
12         THE COURT:  Okay.
13         MR. WISHNEW:  I'm sorry, Your Honor, all of sudden now
14   he has an attorney?
15         THE COURT:  I'm sorry, what?
16         MR. WISHNEW:  All of a sudden now he has an attorney?
17   He's been pro se --
18         THE COURT:  He had an attorney in state.  You're
19   lucky -- he can come forward with an attorney for trial.
20         MR. WISHNEW:  Okay.
21         THE COURT:  You think you're just going to deny him an
22   attorney?
23         MR. WISHNEW:  I'm not saying we deny him.  I'm just --
24   this is the first I'm hearing, so I'm just a bit surprised.
25         THE COURT:  If I set a schedule, the lawyer is going

1    to live with the schedule.  It's like I said in the matter just

2    before this, Mr. Reed, we're going to move forward.

3             MR. REED:  Okay.

4             THE COURT:  If you say you don't need any discovery --

5    Mr. Wishnew, do you need any discovery?

6             MR. WISHNEW:  I think I do, Your Honor, because there

7    are letters in here from realtors purporting that they gave

8    below-market offers on his property.

9             THE COURT:  I don't whether any of that's admissible,

10   but --

11            MR. WISHNEW:  That's beside the point, Your Honor.

12   But to the extent Your Honor is willing --

13            THE COURT:  How much time do you want for discovery,

14   Mr. Wishnew?

15            MR. WISHNEW:  I would request forty-five days, Your

16   Honor.

17            THE COURT:  And is there any discovery you want, Mr.

18   Reed?

19            MR. REED:  I -- I believe there is, Your Honor.

20            THE COURT:  What discovery do you want?

21            MR. REED:  I'd like to depose the -- the ResCap -- I

22   guess you would say the person who's made the declaration and

23   maybe if there's certain information from those depositions

24   or -- or document requests that we might need further

25   discovery.  I mean, I don't want to -- I don't want it, and I'm

RESIDENTIAL CAPITAL, LLC, ET AL.                    70

1   not, you know, I'm not necessarily inclined for the sake of it.

2           MR. WISHNEW:  Your Honor, may I just confirm with

3   counsel on the phone from Reed Smith that they're okay with the

4   forty-five days?  I know I've --

5           THE COURT:  Who's on the phone from Reed Smith?

6           MR. WISHNEW:  Ms. Kellie Lavery.

7           THE COURT:  Ms. Lavery?  Are you on the phone Ms.

8   Lavery?

9           MR. WISHNEW:  She might be on mute, Your Honor.

10          COURTCALL OPERATOR:  She has disconnected, Your Honor.

11          MR. WISHNEW:  Okay.

12          THE COURT:  Okay?

13       (Pause)

14          THE COURT:  Do you intend to have any expert

15   witnesses, Mr. Wishnew?

16          MR. WISHNEW:  I don't believe so, Your Honor.

17          THE COURT:  Okay.

18          COURTCALL OPERATOR:  Excuse me, Your Honor.

19          THE COURT:  Yes.

20          COURTCALL OPERATOR:  Ms. Lavery has reconnected.

21          THE COURT:  All right.  Mr. Lavery.

22          MS. LAVERY:  Sorry, Your Honor, can you hear me?

23          THE COURT:  I can hear you.

24          MS. LAVERY:  Oh, good.  I have never -- I'm sorry, I

25   have not been disconnected, I've been on the phone the whole

 1    time.

 2              THE COURT:  Okay, that's fine.

 3              MS. LAVERY:  I apologize.

 4              THE COURT:  That's fine.  Well, I'll tell you all what

 5    I'm contemplating, is setting a discovery cutoff of August 22,

 6    2014 for fact discovery.  Mr. Wishnew, Ms. Lavery, do you wish

 7    to depose Mr. Reed's experts?

 8              MR. WISHNEW:  Yes, Your Honor.

 9              MS. LAVERY:  Yes, Your Honor.

10              THE COURT:  He's already disclosed who they are, is

11    there any reason you can't do that by August 22?

12              MR. WISHNEW:  I don't see a reason why not, Your

13    Honor.

14              THE COURT:  Okay.

15              MR. WISHNEW:  As long as they make themselves

16    available.

17              THE COURT:  Your experts are here, Mr. Reed?

18              MR. REED:  On one of the issues, on duty, claims and

19    liability.

20              THE COURT:  Duty's a legal issue, I'm not sure you're

21    going to have an expert on --

22              MR. REED:  Causation.

23              THE COURT:  Causation's an issue.

24              MR. REED:  Damages, as well.

25              THE COURT:  Yes.  Can you tell me how much you

1   incurred in legal fees in defending the foreclosure action?

2          MR. REED:  I think we're at like 65-, 70,000 dollars.

3          THE COURT:  For defending the foreclosure action,

4   because you also -- you had brought your affirmative claim.

5          MR. REED:  Yes.

6          THE COURT:  I'm not sure you -- I'm not making any

7   ruling, but I'm not so clear about how you recovere those fees

8   on your affirmative claim.  Defending the foreclosure I

9   understand.  Can you -- I'm not ruling.

10          MR. REED:  I don't have that -- I don't have that

11   available.  I'd have to ask counsel, there were several

12   involved.

13          THE COURT:  Okay.  And do you believe you can have --

14   if you're going to retained counsel you can have counsel that

15   can live with this August 22 --

16          MR. REED:  Your Honor, I've got to shop and find one,

17   that's the plain truth.

18      (Pause)

19          THE COURT:  Mr. Reed, I assume you're anxious to get

20   this done with.

21          MR. REED:  I am.  I'm just -- like I said, the only --

22   I'm speaking from a practical manner, the only issue is trying

23   to select an attorney to -- or find one, that's all.  I mean,

24   that's all.  I believe I --

25          THE COURT:  You've not been a stranger to this court.

1          MR. REED:  That's correct.

2          THE COURT:  You're entitled -- if you can find a

3   lawyer, you're entitled to proceed with a lawyer, absolutely.

4          MR. REED:  I'm pretty sure someone will take it, it's

5   just a matter we want to make sure they're prepared.

6          THE COURT:  Yes.

7          MR. REED:  Any guns for hire?

8          THE COURT:  Okay.  This is going to be the schedule,

9   and I'll enter an order to this effect.

10         Discovery cutoff, August 22, 2014, 5 p.m., that's a

11  Friday.  Final pre-trial conference, September 8th, 2014, at 10

12  a.m.  Trial September 15 and 16, 2014.  Hopefully it isn't

13  going to take two days, but I'm setting aside two days.

14         So that your counsel will know what they're going to

15  have to do, I will enter written order, it's my standard order,

16  Mr. Reed, about what needs to be done before trial.  All that

17  will have to be done by September 8th when I have the final

18  pre-trial.  It's not all that cumbersome, pre-marking

19  exhibits -- exchanging, pre-marking exhibits.  You've attached

20  a lot of paper.  I'm not ruling on any of it, I've got some

21  questions about the admissibility of some of the things you're

22  proposing to use, but we'll deal with that accordingly.

23         Have you sat down and tried to settle this, Mr. Reed?

24         MR. REED:  I've called --

25         THE COURT:  I don't want to know the details of it, I

RESIDENTIAL CAPITAL, LLC, ET AL.                    74

1  just want to know--

2          MR. REED:  -- so many times.  I am the furthest thing

3  from a recalcitrant creditor.  I would say they are

4  recalcitrant debtors.

5          MR. WISHNEW:  I'll reserve comment on that, Your

6  Honor.

7          THE COURT:  It doesn't really matter for this purpose

8  so --

9          MR. WISHNEW:  Thank you.

10         THE COURT:  Okay.  I'll enter a short order, I'm not

11 going to do a written opinion at this stage.  But the order is

12 going to provide as follows.

13         The Fair Foreclosure Act claim, to the extent that the

14 proof of claim seeks to assert it, the objection is sustained.

15 There is no private right of action.  Mr. Reed has basically

16 conceded that in his papers.

17         The objection to the negligence claim is overruled.

18         MR. REED:  I have evidence for the contract claim

19 before you rule on that.

20         THE COURT:  Go ahead, and tell -- Mr. Wishnew, I

21 under -- I'll give you a chance to respond to Mr. Reed.

22         MR. WISHNEW:  Yeah, no, I'm happy just to rely on our

23 objection.

24         THE COURT:  Go ahead, Mr. Reed.  Why don't you go up

25 to the podium, so I can hear you clearer.

1          MR. REED:  Sure.  Your Honor, I'd like to point to two

2    documents that unless they can be explained to me, completely

3    rebut the fact that the debtors, GMAC Mortgage, were a party to

4    the note, and, therefore, bound by the contract.  If we can --

5    I don't know if you -- I can direct you to it, or would you

6    like to see if my copy is --

7          THE COURT:  Tell me what it is, and I'll tell you

8    whether I want you to bring it up or not.

9          MR. REED:  In the Delehey declaration, the original

10   one, page 21, of the entire document, there's a declaration or

11   statement in the foreclosure action.  It says, "The plaintiff

12   is the owner of the note and mortgage being foreclosed on."

13   And the plaintiff in this case is GMAC Mortgage.  In the

14   Delehey declaration supplemental, they say, "At no time GMAC

15   Mortgage was the owner."  So they make contradictory statements

16   to this court and the chancery court in New Jersey.

17          So I don't understand in 2008 is that no time, that

18   seems to be a time that they owned -- they owned the note, they

19   say it.  They even supply an assignment certificate that

20   they're the owner of the note, as an exhibit to their

21   foreclosure action.

22          This is the kind of discovery I was looking for.

23          THE COURT:  Which paragraph in the Delehey

24   declaration?

25          MR. REED:  Delehey declaration for the statement is --

 1                THE COURT:  Just tell me what paragraph.

 2                MR. REED:  In the supplemental it's paragraph 5, Your

 3       Honor.

 4                THE COURT:  Supplemental declaration?

 5                MR. REED:  The supplemental is the one that states

 6       that "at no time".

 7                THE COURT:  No.  Where were you reading --

 8                MR. REED:  Page 21 of the document, it's not in the

 9       statement it's in a exhibit attached to the statement, or the

10       declaration, 21 of 103.

11                THE COURT:  Yes.  Which paragraph?

12                MR. REED:  Paragraph 4.  And two pages back on 18,

13       who's the plaintiff?  I don't know if we have -- I want to make

14       sure we're on the same page.

15                THE COURT:  Yeah, no, we are.

16                MR. REED:  Literally, on the same page.

17                THE COURT:  It's docket number 7017-6, page 21 of 103,

18       paragraph 4.

19                MR. REED:  Correct.  This is an exhibit of the

20       foreclosure complaint that they supplied.  It matches my

21       records.  It's what we based our original breach of contract

22       action on them at the state court level.  They said they're the

23       owners of the note.  They should be collaterally estopped from

24       saying that now, or judicially estopped.  They made that

25       assertion.

1          And at no time in the state court action did they say

2     they were not the properly named party either.  For almost two

3     years I think that went on.  And the local rules say they would

4     have had to say that.

5          THE COURT:  I'm not sure they would have to say it,

6     they would have had to say they were the loan servicer, the

7     owner of the notes.

8          MR. REED:  But the owner is the owner.  Here they say

9     it in two different documents, and that that's the basis of

10    privity to the contract.

11         THE COURT:  Okay.  I understand you.

12         MR. REED:  And I'd like to also point you, Your Honor,

13    to the original declaration, page 84 of 103, of docket 7017-6.

14         THE COURT:  I'm sorry, which page?

15         MR. REED:  84 of 103.

16         THE COURT:  Let me turn to it.  Go ahead.

17         MR. REED:  What is that?  It's an assignment of

18    mortgage.

19         THE COURT:  Well --

20       (Pause)

21         MR. REED:  They are or not the owner, when?

22         THE COURT:  When was the foreclosure action commenced?

23         MR. REED:  2008, but they say they never owned it.

24         THE COURT:  Okay.  Go ahead, anything else?

25         MR. REED:  I would say that RFC, if they were a party,

RESIDENTIAL CAPITAL, LLC, ET AL.                    78

1    as they say in their supplemental declaration, the continued

2    lis pendens being left on the record when it's supposed to be

3    dismissed, when the action was disposed of, a lis pendens in

4    our state goes with the action, not with a cause of action, not

5    with an underlying cause of action, it goes with the action.

6    We'll have an expert witness --

7            THE COURT:  Look, you --

8            MR. REED:  So if they have a con --

9            THE COURT:  To me that's going to go to the negligence

10   claim, okay.  You say that they improperly commenced and

11   prosecuted the foreclosure action; the trial court dismissed

12   the foreclosure action.  Your argument is that the lis pendens

13   that had been discharged or removed then -- only it's a

14   separate cause of action.  If you have a breach of contract

15   claim it may or may not relate to that, but it certainly would

16   arise -- could arise under your negligence claim.  I don't

17   think there's a separate cause of action.

18           MR. REED:  I --

19           THE COURT:  You haven't pled a separate cause of

20   action.  Anything else you want to add on the breach of

21   contract claim?

22       (Pause)

23           MR. REED:  The initial stuff I had on breach of

24   contract, Your Honor, flows from the fact that they would have

25   a contract.  And I think it goes to triable issues.

1          THE COURT:  I'm sorry, what do you mean would have a

2    contract?

3          MR. REED:  I'm saying that without dispositively

4    making a ruling on whether there was a contract, or should it

5    be held over for trial, because there's a contradictory fact

6    record here, I don't think that the other issues that I wish to

7    discuss about breach of contract are relevant until we know we

8    have to go to trial to resolve this dispute in fact.

9          THE COURT:  That's a fair response.  I just want to

10   make sure if there's anything else you want to add, I'm letting

11   you speak to it.

12         MR. REED:  Some of the other ones, I would like to add

13   things about, Your Honor.

14         THE COURT:  Go ahead.

15         MR. REED:  So when we're -- you want to finish the

16   contract issue?

17         THE COURT:  Yeah, go -- no, go ahead.

18         MR. REED:  The big one is the New Jersey Consumer

19   Fraud Protection Act.  And that has to do with false

20   statements, misleading statements, things that happened during

21   the course of the servicing of the mortgage.

22         The New Jersey Supreme Court in Gonzalez v. Wilshire,

23   in 2011, and the Appellate Court in Laughlin v. Bank of America

24   and other cases, have held that the expansion of the New Jersey

25   Consumer Fraud Act to not only pertain to the origination of

1   mortgages, but the complete life cycle of the mortgage, through

2   and including foreclosure actions.

3           THE COURT:  Yeah.  But the issue for me, Mr. Reed, is

4   whether you have adequately pled a claim -- okay.  The New

5   Jersey cases say that claims under the Consumer Fraud Act claim

6   are fraud claims, and you have to satisfy the pleading

7   requirements for fraud.  And that's what, it seems to me, you

8   haven't done.

9           MR. REED:  I would like to -- okay, let me address

10  that, as a factual matter that I assert.

11          I assert that they made a demand that my only -- my

12  only choice -- first off, an act of omission not sending me a

13  notice of intent to foreclose with various vital pieces of

14  information that I needed and I was required to receive by law

15  and by contract.

16          THE COURT:  Now, you don't have a claim under the

17  state --

18          MR. REED:  I understand, I don't have it under the

19  Fair Foreclosure --

20          THE COURT:  You didn't pay your mortgage, you were in

21  default on your mortgage, you're still in default on your

22  mortgage.  You've gone -- what's the arrears?

23          MR. REED:  Your Honor, you're --

24          THE COURT:  No, Mr. Reed, answer my question.  What

25  are the arrears on the mortgage?

1          MR. REED:  Nothing.

2          THE COURT:  They're -- baloney.

3          MR. REED:  And I'd like --

4          THE COURT:  Baloney.

5          MR. REED:  Can I tell you why?  I've asserted it in

6    the papers, there's an affirmative defense against the mortgage

7    itself.

8          THE COURT:  Okay.  I --

9          MR. REED:  But for their bad acts --

10         THE COURT:  Mr. Reed -- Mr. Reed, that argument goes

11   nowhere with me.  You didn't pay your mortgage, they just blew

12   it when they filed -- they can't show that they satisfied New

13   Jersey law when they filed the mortgage foreclosure action.

14   Okay.  And you were successful in getting it dismissed.  And

15   you haven't paid your mortgage since 2008.  That's not my

16   problem today.  Okay.

17         All right.  What other arguments do you have?

18         MR. REED:  Just the various facts under the Consumer

19   Fraud Protection Act, that I alleged omissions and statements

20   from them that were misleading or omitted material facts that

21   were necessary for me, and it amounted to the fraud allowed

22   under that.

23         THE COURT:  So what you established and succeeded in

24   getting the foreclosure complaint dismissed, was that they

25   have -- they couldn't prove that they gave you the notice that

1  state law required.  You don't dispute that you didn't pay your

2  mortgage.

3          Okay.  You borrowed a million dollars, you stopped

4  paying your mortgage in 2008, you haven't paid it since, okay.

5  They blew it because they couldn't show, and they still can't

6  show that they gave you the notice that state law requires.

7  They could have fixed it, they tried -- I'll leave off the

8  adjective of what they tried.  The trial court found their

9  effort to fix it was unsuccessful.  Okay.  So here we are in

10  2014, somebody else owns the note, somebody else is ser --

11  several loan services later, you're still in possession of the

12  property.  Okay.  What you haven't established, you haven't

13  pled, is a claim under the Consumer Fraud Act in New Jersey.

14  Okay.  You want to address any of the other claims?

15          MR. REED:  the malicious prosecution claim.  Hardly

16  malicious prosecution when --

17          THE COURT:  Their fault was in not being able to

18  establish they gave you the required notice.

19          MR. REED:  Their fault was filing foreclosure

20  without --

21          THE COURT:  Nonsense.  Nonsense.  You didn't pay your

22  mortgage, that's why they filed a foreclosure.  New York -- New

23  Jersey law requires something very specific to commence a

24  foreclosure action, and they couldn't prove that they did it.

25  And so you were successful in getting the foreclosure action

1    dismissed without prejudice -- without prejudice.  It wasn't a

2    malicious use of process.

3              Anything else you want to address?

4              MR. REED:  Yes, I would like to address that, because

5    the reasonableness --

6              THE COURT:  I don't want to hear anymore about it.  If

7    you want to talk about another claim, go ahead.

8              MR. REED:  The unjust enrichment claim is intertwined

9    with the contract claim.

10             THE COURT:  Actually, if you have a contract claim,

11   you don't have an unjust enrichment claim; but that's a

12   different issue.

13             MR. REED:  The unjust enrichment claim, from what I

14   understand, Your Honor, would arise from the fact that the note

15   would have been extinguished through an affirmative defense.

16             THE COURT:  What affirmative defense?

17             MR. REED:  Under New Jersey -- it's in my papers, but

18   under New Jersey law, common law of contracts and bilateral

19   contracts, if a party to a contract interferes with or hinders

20   the obligations of the counterparty, the first party is

21   relieved of those obligations.

22             THE COURT:  You're blaming them for you're not paying

23   your mortgage?

24             MR. REED:  Yeah.  I had a -- Your Honor, I had several

25   cash out refinances established with banks that I did business

1  with for fifteen years on multiple properties.  But for their

2  bad act, they would have been paid off, that's the sickness of

3  this.  I understand what it looks like, you very well voiced

4  your opinion on what it appears to be, but it's not.

5         THE COURT:  Well, if you have a damage claim that

6  arises from their wrongful -- from their commencing and

7  prosecuting the foreclosure action, I'm not precluding you as

8  to what damages you're going to try and prove.  Okay.

9         Commencing a foreclosure action against somebody who

10  hadn't paid their mortgage is not a malicious use of process.

11  They couldn't -- the foreclosure action was dismissed without

12  prejudice because they didn't satisfy the technical requirement

13  of the foreclosure act, not that they didn't have the absolute

14  right to commence a foreclosure against you.

15         MR. REED:  Your Honor, I'm not talking about the

16  malicious -- we let that go, you said you didn't want to hear

17  anything more about that.  I'm talking about the unjust

18  enrichment.  And an affirmative defense that would have

19  extinguished the note, how is it just that they would then

20  profit from the note on an ongoing basis, if it would have been

21  extinguished as an affirmative defense to it?  And I think

22  that's an issue for trial.

23         THE COURT:  Anything else you want to add?

24         MR. REED:  Other than all the various -- and,

25  obviously, it's not -- it doesn't seem to be an issue for

1   today -- regarding the hearsay portion of their objection, but

2   we had a litany of exceptions to the hearsay rule, and, also,

3   statements to the fact that our experts, or anyone who's opined

4   to --

5           THE COURT:  That's not today's issue.

6           MR. REED:  Yeah, we'll be here, they'll be here.

7           THE COURT:  That's not today's issue.

8           All right.  Mr. Wishnew, Mr. Reed points to what is

9   tabbed as Exhibit 3, behind tab 4, a copy of the state court

10  complaint --

11          MR. WISHNEW:  Um-hum.

12          THE COURT:  -- filed on May 19th, 2008, and he points

13  to paragraph 4 in the complaint that reads, "On or before the

14  date within complaint was drafted, the plaintiff herein became

15  the owner of the note and mortgage --

16          MR. WISHNEW:  Um-hum.

17          THE COURT:  -- being foreclosed herein".

18          MR. WISHNEW:  Um-hum.

19          THE COURT:  The plaintiff is GMAC Mortgage, LLC.

20          MR. WISHNEW:  Correct, Your Honor.  So --

21          THE COURT:  Doesn't that create -- you say GMACM never

22  owned the note.  Why doesn't this allegation in the state court

23  pleading create, at a minimum, a disputed issue of fact as to

24  whether GMACM --

25          MR. WISHNEW:  Because I think if you take a closer

1    look at the underlying documents, the statement is partially

2    correct in --

3            THE COURT:  Partially correct?

4            MR. WISHNEW:  Well, I would say this, Your Honor.  In

5    order for us to have standing to commence the action in New

6    Jersey, we would have had to have had the mortgage assigned to

7    us, which we did.  And if you look, as Mr. Reed points out, to

8    page 84 of the exhibits, which is titled "Assignment of

9    Mortgage" -- this is at page 84 of 103 at docket 7017-6 -- it

10   specifically says, Your Honor, "and the said assignor" -- and

11   the assignor in this document is identified as MERS or Mortgage

12   Electronic Registration Systems, Inc., as nominee for Metro

13   City Mortgage, LLC -- "constitutes and appoints the

14   assignee" -- the assignee in this case is GMAC Mortgage, LLC --

15   "as the assignor's true and lawful attorney, irrevocable in law

16   or in equity, in the assignor's name, place and stead, but at

17   assignee's cost and expense".

18           THE COURT:  Okay.  So they were assigned the mortgage.

19   But paragraph 4 alleges that they were the owner of the note.

20           MR. WISHNEW:  I recognize that, Your Honor, and that

21   should not have said the owner of the note.

22           THE COURT:  Okay.

23           MR. WISHNEW:  It should have said the holder of the

24   note.  And if you were to look to Ms. Delehey's supplemental

25   declaration in support of the reply, at docket 7228-1, page 37

RESIDENTIAL CAPITAL, LLC, ET AL.                    87

1   of 37, nowhere, on the endorsements to the note, is GMAC

2   Mortgage, LLC.

3              THE COURT:  Okay.

4              MR. WISHNEW:  So we never --

5              THE COURT:  It's a disputed issue of fact.  So I'm

6   going to overrule the objection to the breach of contract

7   claim.  You may well prevail.

8              MR. WISHNEW:  Um-hum.

9              THE COURT:  It's too bad somebody alleged in the

10  complaint that you owned the note.

11             MR. WISHNEW:  Agreed, Your Honor.

12             MR. REED:  Your Honor, may --

13             THE COURT:  No, just a second, Mr. Reed.

14             MR. REED:  Sure.  Sure.

15             THE COURT:  Where in the proof of claim is an unjust

16  enrichment claim?

17             MR. WISHNEW:  It might be in the certification to the

18  claim, Your Honor.  Just give me one minute; I'll double check.

19             MR. REED:  It's on the face as well, Your Honor.

20             THE COURT:  Where?

21             MR. REED:  No, I don't have that -- I don't have the

22  original document.

23             THE COURT:  Mr. Reed?

24             MR. WISHNEW:  I just have the supplemental.

25             THE COURT:  Mr. Wishnew will --

RESIDENTIAL CAPITAL, LLC, ET AL.                    88

1       MR. WISHNEW:  Your Honor, this is -- look at docket

2   number -- so this is Exhibit 1 to the Borrower Trust objection,

3   page 6 of 139, docket number 7017-1, paragraph 12, "To do

4   otherwise would result in the debtor being unjustly enriched at

5   the creditors' expense" despite the creditors -- I'm sorry --

6   "despite the debtors' grossly negligent acts".

7       THE COURT:  Which one is that?

8       MR. WISHNEW:  It is page 4 of your certification in

9   support of the proof of claim.

10      THE COURT:  What ECF document page is that?

11      MR. WISHNEW:  70 -- docket 7017-1, page 6 of 139.

12      THE COURT:  6 of 139.  Okay.  I don't think it's an

13  unjust enrichment claim; I see what it says.  All right.

14      MR. REED:  Your Honor, would the supplemental --

15      THE COURT:  No, Mr. Reed, I don't want to hear from

16  you right now.

17      So I'm going to sustain the objection to the Fair

18  Foreclosure Act claim, if it was intended to be a claim, which

19  Mr. Reed acknowledges it was not.

20      I overrule the objection as to the negligence claim.

21      I'm overruling the objection to the breach of contract

22  claim, in light of paragraph 4 of the complaint that was filed

23  in state court that alleges that GMACM owned the note.

24      I'm overruling the objection to the punitive damages

25  actual malice claim.  I'm overruling it without prejudice.

RESIDENTIAL CAPITAL, LLC, ET AL.                    89

1  There are disputed issues of fact.

2          I'm sustaining the objection to the State Consumer

3  Fraud Act Claim.  It fails to plead fraud as required.

4          I'm sustaining the objection to the constructive trust

5  claim.  To the extent it purports to assert a claim under the

6  Federal Reserve Board Order to be made whole, I sustain the

7  objection, because there is no right of action under the

8  Federal Reserve Board Order.  It quite clearly sets that forth.

9          The Court establishes a discovery cutoff date of 5

10 p.m. August 22, 2014.  The Court sets a date for the final pre-

11 trial conference 10 a.m. September 8th, 2014.  The Court sets a

12 trial on the contested matter for September 15 and 16, 2014,

13 beginning at 9 a.m. each day.

14         The Court will enter an order with respect to the

15 Court's requirement for pre-marking and exchanging exhibits

16 that either side expects to use at trial.

17         To the extent that either side takes any depositions,

18 between now and the close of discovery, and proposes to use in

19 evidence any deposition designations or counter-designations,

20 the order's going to provide that those have to be provided by

21 September 8th, the final pre-trial conference.

22         MR. WISHNEW:  Your Honor, one question in that

23 regards.  Will you be proceeding such that the designations

24 will be considered direct testimony and we'll only be crossing

25 the witnesses?

RESIDENTIAL CAPITAL, LLC, ET AL.                    90

1           THE COURT:  Well, let me ask.  I think -- so Mr. Reed,

2   my usual practice is that direct testimony -- no, you know, I

3   want to hear the direct testimony live here.

4           MR. WISHNEW:  Okay.

5           THE COURT:  Okay.  We'll simplify it.  In many cases,

6   Mr. Reed, I have written direct declarations that are

7   submitted, but let's -- I think we're going to proceed here

8   with live testimony.

9           By that September 8th deadline, both sides are going

10  to have to identify their experts -- not only experts, they'll

11  have to identify all of their trial witnesses, fact and expert

12  trial witnesses, and I'm going to require short written

13  narrative descriptions of the expected direct testimony of the

14  witnesses so everybody has a pretty good idea of that.  And I'm

15  not going to permit -- you've got to identify what are the

16  subjects that each of these witnesses are going to testify

17  about.  I'm not going to let somebody get on the witness stand

18  and testify about something else.  Okay?  I want a level

19  playing field for both sides.  Okay.  But I'll enter an order

20  to that effect.

21          Anything else?

22          MR. REED:  Yes, Your Honor, I bet your indulgence for

23  one moment more about the unjust enrichment.  You look to the

24  original filing of the proof of claim; debtors asked for

25  additional documents a year ago and an additional statement

1  when that -- I'm sure you're familiar with the mailings that

2  were sent out to borrowers to help support.  There was an

3  additional statement with further clarification of that claim.

4  I just don't know the ECF docket number.  It's not in their --

5  it's not in their objection; none of the information I sent,

6  the 300, 400 pages that we sent for that supplemental was ever

7  referenced in their objection.  So I couldn't identify for you

8  in the record.  I'll gladly take it out of my binder and give

9  it to you and let you read the additional information regarding

10  the unjust enrichment.

11          THE COURT:  Why don't you bring it up to me?  You can

12  take the pages out, if it's just a few pages, and I'll give it

13  back to you.

14          MR. REED:  It's number 11, Your Honor, and 3 and 4 as

15  well.

16          THE COURT:  Okay.

17          Okay.  What Mr. Reed has shown me, in paragraph 11 --

18  I'm not sure what document it is -- really relates to the

19  constructive trust claim.  And I've already ruled that the

20  Court sustains the objection to the constructive trust claim.

21          All right.  So I will enter an order consistent with

22  what I've told you today.

23          MR. REED:  Your Honor, I have --

24          THE COURT:  We're not going to reargue what I've

25  already ruled on --

1           MR. REED:  No, no --

2           THE COURT:  -- Mr. Reed.

3           MR. REED:  -- no, it's absolutely new, Your Honor,

4    absolutely new.  In the supplemental declarations -- or I

5    believe it was of the -- of Ms. Delehey, they indicate that

6    GMAC Bank, a nondebtor entity, was the -- in the alternative to

7    the pleadings that were signed at the foreclosure -- at the

8    time of the foreclosure, they were the actual owner of the note

9    and party to the contract at the time of the wrongdoing.  What

10   I'm seeking is clarification or an order allowing me to pursue

11   GMAC Bank.

12          THE COURT:  They're not a debtor.  You're not pursuing

13   them here.

14          MR. REED:  Was there a release?  Didn't you give a

15   general release?  Would that be subject to that, Your Honor?

16          THE COURT:  I'm not giving you legal advice, Mr. Reed,

17   okay?  GMAC Bank is not a debtor in any of these cases, is not

18   a party, is not named in the proof of claim that you filed.

19   That's not a matter that is before me.  Okay.  We're going to

20   proceed on the basis of the Court's ruling today.

21          What I'd like to do -- I'd like to arrange a telephone

22   hearing for Monday August 25th at 3 o'clock in the afternoon.

23          Mr. Wishnew, you can provide a call-in number and make

24   sure that Mr. Reed has it and --

25          MR. WISHNEW:  Absolutely, Your Honor.

RESIDENTIAL CAPITAL, LLC, ET AL.                    93

1           THE COURT:  And it's going to be not on the record;

2     it's basically going to be a status conference.  It's the

3     Monday after the cutoff of all discovery, and it's two weeks

4     before the final pre-trial conference.  I just want to go over

5     with everybody -- hopefully you'll have a lawyer, Mr. Reed.

6     You're pretty good at coming up with stuff yourself.  I mean,

7     you've been active -- I mean, you're entitl -- I want to make

8     clear, I'd be happy to have --

9           MR. REED:  I don't want to be a burden on the Court,

10    Your Honor.  I'm doing the very best I can to --

11          THE COURT:  Look, Mr. Reed, I -- it's very difficult

12    for any non -- you're not a lawyer, right?

13          MR. REED:  No.

14          THE COURT:  It's very difficult for a nonlawyer to try

15    a case.  People do it.  You're entitled to do it.  There's a

16    benefit if you're able to get counsel.  But counsel -- you've

17    got to make clear to counsel this is the schedule we're

18    proceeding on.

19          MR. REED:  Abso --

20          THE COURT:  I'm not moving the dates.

21          MR. REED:  Absolutely.

22          THE COURT:  Okay.

23          MR. REED:  This is the --

24          THE COURT:  Okay.

25          MR. REED:  -- steadfast path.

1      THE COURT:  So -- but we'll have the telephone

2  conference on August 25th, and we'll just go over the status,

3  and I'll make sure that everybody's on track for what they have

4  to submit to the Court by September 8th.

5      MR. REED:  Is there any obligation of them to discuss

6  settling with me?

7      THE COURT:  Yes.  I was going to -- that was the next

8  thing on my list, Mr. Reed.  Obligation -- I'm directing --

9  okay, and Mr. Reed is not represented by counsel, and you can

10  talk to him directly.  Once he gets a lawyer, that's --

11  obviously you can get your lawyer involved.

12      MR. REED:  More money I have to spend.

13      THE COURT:  So if you can settle it before you hire a

14  lawyer, you're better off, right?  Okay.  I'm directing that

15  counsel for the Borrower's Trust -- where do you live?  Do you

16  live in New Jersey, Mr. Reed?

17      MR. REED:  I live two hours away, down near

18  Philadelphia, Your Honor.

19      THE COURT:  It's much better, Mr. Reed, if you can

20  meet face to face with them --

21      MR. REED:  I've shown my --

22      THE COURT:  -- than by telephone.

23      MR. REED:  -- willingness to do so.

24      THE COURT:  Okay.  So I'm going to direct the --

25  within one week from today, that the Borrower's Trust, counsel,

1  and a representative with authority to resolve the matter, meet

2  face to face with Mr. Reed, at a mutually convenient place, in

3  an effort to try and resolve the matter by settlement.

4          Mr. Reed, it would be -- and I know you -- if you go

5  to trial, I understand you're going to assert whatever damage

6  claim you're going to assert, and the Court will consider it.

7  But I think before you meet face to face with them, you ought

8  to provide the Borrower's Trust counsel with information in

9  which --

10          MR. REED:  I don't want them to be blind-sighted.

11          THE COURT:  No, I want -- you're -- at a minimum, I

12  want you to give them the information on the amount of

13  attorneys' fees you incurred in defense of the foreclosure

14  action.  I'm not suggesting that would be the limit of your

15  potential recovery, but as a starting point, give them what you

16  incurred in legal fees, not in prosecuting your own case --

17          MR. REED:  I understand.

18          THE COURT:  You can give them that too, but break out

19  what you incurred in defending the foreclosure action.  So let

20  me just -- has Twentieth Century or Twentieth-First Century,

21  whatever the name of the current holder of the -- and I saw the

22  information that they now are servicing the note and own the

23  note.  Have they commenced a foreclosure action?

24          MR. REED:  They have, Your Honor.  They've given a

25  notice of intent to foreclose.  They have filed a lis pendens

RESIDENTIAL CAPITAL, LLC, ET AL.                    96

1  that indicates the action number, the docket number for the

2  individual action.  We have now a scheduled -- a trial

3  scheduled.

4           THE COURT:  When's the trial?

5           MR. REED:  Trial's in January.  It's a contested

6  matter under New Jersey law.  Things -- believe it or not, more

7  crazy things have happened with them than now --

8           THE COURT:  Fortunately, I don't have to know about

9  that.

10          MR. REED:  Yeah, you don't have to know about it.  I

11  wish I didn't have to know about it.

12          THE COURT:  Okay.

13          MR. REED:  You know, up until this point in my life --

14          THE COURT:  Okay.

15          MR. REED:  -- everything was great.

16          THE COURT:  All right.  So I'm going to enter orders

17  consistent with what I've said today, and I'm sure I'll be

18  speaking to you and seeing you again, Mr. Reed.

19          MR. WISHNEW:  Thank you for your time, Your Honor.

20          MR. REED:  I hope not, Your Honor.  No offense.

21          THE COURT:  I hope you're able to settle it.

22          MR. REED:  Once again, I'm not recalcitrant.

23          THE COURT:  No, you're not; you've never been in this

24  case.  And that's not intended -- I'm not holding you in any

25  respect on that.  Okay?

1          Okay.  Mr. Wishnew, do we have anything else today?

2          MR. WISHNEW:  That's it, Your Honor.

3          THE COURT:  All right.  We're adjourned.

4          MR. WISHNEW:  Thank you for your time.

5      (Whereupon these proceedings were concluded at 12:10 PM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2                            I N D E X
 3
 4                            RULINGS
 5                                            Page     Line
 6   Scheduling order will be entered by the    73        9
 7   Court with dates as delineated
 8   Objection sustained as to Fair Foreclosure  74       4
 9   Act
10   Objection to negligence claim overruled    74       18
11   Objection to the breach of contract        88       21
12   claim overruled
13   Objection to the punitive damages actual   88       24
14   malice claim overruled, without prejudice
15   Objection to State Consumer Fraud          89        2
16   Act Claim sustained
17   Objection to constructive trust            89        4
18   claim sustained
19   Deposition designations/counter-designations 89     17
20   to be used as evidence in trial must be
21   provided by September 8, 2014
22   Trial witnesses to be identified by        90        9
23   September 8th
24   Within the week, parties are ordered       94       24
25   to meet for settlement talks
```

1

2                           C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9    _____

10   PENINA WOLICKI

11   AAERT Certified Electronic Transcriber CET**D-569

12

13   eScribers

14   700 West 192nd Street, Suite #607

15   New York, NY 10040

16

17   Date:  July 10, 2014

18

19

20

21

22

23

24

25